UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re:  TAXOTERE (DOCETAXEL)　　　　　　　　　MDL No. 2740
       PRODUCTS LIABILITY
       LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**APPLICATION OF MIKAL C. WATTS FOR
LEAD COUNSEL POSITION ON THE
PLAINTIFFS' STEERING COMMITTEE**

I, Mikal C. Watts, pursuant to Pretrial Order No. No. 1 ("PTO #1"), submit this application for the position of Lead Counsel and for membership on the Plaintiffs' Steering Committee ("PSC") for *In re: Taxotere (Docetaxel) Products Liability Litigation.* I meet the following criteria specified by the Court:

    1.    Willingness and availability to commit to a time-consuming project;

    2.    Ability to work cooperatively with others;

    3.    Professional experience in this type of litigation;

    4.    Willingness to commit the necessary resources to pursue this matter.

    **1.**    **I am Willing and Available to Commit To a Time-Consuming Process.**

I have the <u>willingness</u> to commit the time necessary to litigate this matter appropriately. A medical doctor who works on staff at my firm, Dr. Theresa Laabe, first alerted me in 2015 to the large number of incidents of permanent alopecia occurring to recipients of Taxotere. We researched it heavily and this year began collecting medical records for clients who retained us to represent them. Accordingly, my firm's staff and I have already dedicated substantial time to this litigation, as I possess the desire and the <u>willingness</u> to ensure that individuals injured by Taxotere are effectively and quickly represented.

1

Additionally, I have the availability to commit to a time-consuming process. My firm has more than twenty (20) lawyers and 100 employees. These lawyers and staff have the ability to handle the firm's daily business while I commit my time to leading and working up the Taxotere case in this MDL.

This has been the case in several recent MDL cases I have litigated. As a member of the PSC appointed by this Court in *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, MDL 1873, I headed the effort to select and develop the experts and then tried multiple bellwether cases. I then personally worked with lead defense counsel, Andrew Weinstock to achieve last chance matching of Plaintiffs and Defendants, and with all other Plaintiffs' firms to create a case-wide census of Plaintiffs' data to enable negotiated with many of the defendants to begin. Likewise, while I tried eleven (11) outside cases to verdict in 2010, I tried no outside cases in 2011 and 2012 because Hon. Carl Barbier of the Eastern District of Louisiana appointed me to the PSC of *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* MDL 2179 (BP Oil Spill MDL), and I committed all of my time to that MDL case preparing for the fault allocation trial set to begin in early-2013.[1] Recently, in late 2012, Hon. David Herndon appointed me as one of five plaintiff co-lead counsel in *In re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL 2385. Because of the advanced age of that Plaintiff population, I worked together with many others around-the-clock in order to prepare test cases for trial. I worked tirelessly with counsel for Boehinger-Ingelheim, and with court-appointed settlement masters John Perry and Randi Ellis of Baton Rouge, to secure a nationwide settlement in less than 22 months after the MDL began.

---

[1] In March, 2013, I resigned my position on the PSC due to a federal investigation into my firm's BP client base. In 2015, I was indicted; yet a federal jury exonerated me on all counts in August, 2016.

2

2.     **I Have the Ability to Work Cooperatively With Others.**

I have collaborated with my colleagues concerning many aspects of this litigation, including MDL leadership structure. Numerous phone conferences have occurred both before and after the JPML hearing in this case. My partner attended the JPML hearing, and our effort to confer with others has continued since the JPML consolidated the Taxotere litigation in this Court. I have likewise traveled out-of-state to confer with my colleagues on planning this litigation.

My partner, Ryan Thompson, has attended a meeting in Washington, D.C. before the JPML hearing, and we both will attend a meeting in Las Vegas on October 21, 2016, to discuss how to maximize the cooperative efforts on the plaintiffs' side of this litigation. Concerning the organization of this litigation, I have conferred with attorneys Gerald E. Meunier, Hugh Lambert and Emily Jeffcott in New Orleans, with attorneys Russ Abney and Sean Tracey of Texas, attorneys Pete Flowers and Mark Niemeyer from Illinois, and attorney Marc Bern from New York. I would strongly endorse any of these individuals to work on the Plaintiffs' behalf as well.

3.     **I Possess the Professional Experience Needed in This Type of Litigation.**

My professional experience in this type of litigation comes in two forms: (1) experience gained from prior memberships on PSCs, and (2) experience gained by trying the "first in the nation" trial cases for major pharmaceutical and product liability litigations, including various MDLs:

- late 1990s - coordinated 100s of Chrysler minivan liftgate latch lawsuits;
- 2000-2001 - trial of first *Ford/Firestone* tire lawsuit (see MDL 1373);
- 2001 – first *Rezulin* plaintiffs' verdict in country (see MDL 1348);
- 2001 - only plaintiffs' verdict in *Sulzer* hip implants (see MDL 1401);
- 2003 – trial of first *Baycol* case in the country (see MDL 1431);
- 2004-2006 – Plaintiffs co-liaison counsel, *In Re: Silica* (MDL 1553);
- 2007 – trial of first welding rods case in the country during MDL 1525;
- 2005-2007 – tried two bellwether cases, *In re Vioxx* (see MDL 1657)
- 2007-2009 – lead counsel, *In Re: Stand 'N Seal* (see MDL 1804);

3

- 2008-2012 – Plaintiffs' Steering Committee, *In re FEMA* (MDL 1873);
- 2010 – only Plaintiffs' verdict, *In Re: Levaquin* (see MDL 1943);
- 2009-2011 – state court settlement counsel, *In Re GMO Rice* (see MDL 1811)
- 2010-2013 – Plaintiffs' Steering Committee, *BP Oil Spill* (see MDL 2179);
- 2010 – tried only plaintiffs' verdict, *In re Levaquin* (see MDL 1943);
- 2012-2014 – Plaintiffs' Co-Lead Counsel, *In re Pradaxa* (see MDL 2385).

### 4. I Have Access to Sufficient Resources To Advance the Litigation in a Timely Manner.

In total, I have obtained over $1 billion in verdicts, and approximately $3.0 billion in settlements for my clients. As a result, I have amassed sufficient resources to advance this litigation in a timely manner. To further enable it to fund mass tort litigation, my firm has access to credit facilities exceeding $25 million, and if necessary, I will supply the Court with recent tax returns to document my ability to advance this litigation in a timely manner. In addition, I have developed relationships with other fine firms across the country involved in this litigation to enable a group of such firms to collectively fund this litigation and to advance it in a cohesive and timely manner. As stated before, time is of the essence in this litigation, and if selected by the Court, I pledge to seek the lower end of the Court's proposed timeline of 18-24 months before the first bellwether trial, and to commit all the time and resources necessary to meet that trial schedule.

Submitted this 18th day of October, 2016.

_____
Mikal C. Watts