# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEANNE BOINO, | |
| Plaintiff, | MDL NO.: 2740 |
| v. | FIRST AMENDED COMPLAINT |
| SANOFI S.A., AVENTIS PHARMA S.A., and SANOFI-AVENTIS U.S. LLC, | JURY DEMANDED |
| Defendants. | |
| This document applies to: | |
| Civil Action No.: 16-cv-16036 KDE-MBN | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Jeanne Boino ("Plaintiff"), residing in Pittsfield, Berkshire County, within the Commonwealth of Massachusetts, by and through her undersigned counsel, hereby submits the following Complaint and Demand for Jury Trial against defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC, (hereinafter collectively referred to as "Defendants") and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE ACTION

1.      This case involves the prescription, chemotherapy drug Taxotere, with the active ingredient docetaxel, ("Taxotere") which is manufactured, sold, distributed and promoted by Defendants for the treatment of various types of cancer, including breast cancer.

2.      Taxotere can cause serious medical problems, including permanent alopecia, or hair loss.  Permanent alopecia is a disfiguring condition, especially for women.

1

3.     Defendants engaged in aggressive marketing and advertising campaigns for Taxotere that misled the consumers of Taxotere and the medical community as to the drug's safety and efficacy.  As a result, consumers have suffered injuries including permanent alopecia.

## PARTIES

4.     Plaintiff is a natural person, citizen and resident of Pittsfield, Berkshire County, Massachusetts, and used the prescription drug Taxotere as prescribed and directed by her physician.

5.     Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 rue La Boétie, 75008 Paris, France.  Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC are wholly-owned subsidiaries of defendant Sanofi S.A., which owns 100% of the financial and voting member interest in these defendants.

6.     Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 avenue Raymond Aron, 92160, Antony, France.

7.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC does not have any members that are citizens, residents, or domiciles of the Commonwealth of Massachusetts.

8.     By way of background, in 1999, French company Rhône-Poulenc Rorer S.A. and its U.S. subsidiary merged with the German corporation Hoechst Marion Roussel and its U.S. subsidiary to form Aventis Pharma S.A. and Aventis Pharmaceuticals in the U.S.  In 2004,

Sanofi-Synthelabo merged with Aventis to form Sanofi-Aventis in France and the United States. In 2011, Sanofi-Aventis S.A. changed its name to Sanofi S.A.

9.      At all relevant times, Defendants acted in conjunction with other affiliated, related, jointly owned and/or controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of Taxotere.  Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as alleged herein.

10.      As the corporate parent of these wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. Accordingly, there exists, and at all relevant times herein existed, a unity of interest, ownership, and conduct between Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC, with regard to the manufacture, distribution, development, testing, and labeling of Taxotere and other related conduct, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another.

11.      Sanofi S.A., through its various affiliates, wholly-owned subsidiaries, and predecessor companies, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC, has been directly involved in and has overseen the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting Taxotere throughout the United States and the world.

12.      At all times herein mentioned, Defendants, engaged in interstate commerce when they   advertised, promoted, supplied, and sold to distributors and retailers for resale to

physicians, hospitals, medical practitioners, and the general public the pharmaceutical product, Taxotere, in this judicial district.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and because the amount in controversy between Plaintiff and Defendants exceeds $75,000, exclusive of interest and cost, and because, among other reasons, Defendants have significant contacts with this district by virtue of doing business within this judicial district.

14.     Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(1) because Plaintiff is a citizen and resides in this district and because a substantial part of the acts and/or omissions giving rise to these claims occurred within this district.

## DEVELOPMENT AND REGULATORY APPROVAL OF TAXOTERE

15.     Chemotherapy is the use of anti-cancer drugs to treat cancer.   Chemotherapy can stop the growth of a tumor, shrink the size of a tumor, kill cancer cells that have spread to other parts of the body, and decrease the chance that cancer will recur.

16.     Among the family of chemotherapy drugs are Taxanes.   Taxanes block cell growth by interfering with microtubules which are cellular structures that help move chromosomes during mitosis.   Taxane agents include Taxotere and Taxol (paclitaxel).

17.     Taxol was developed, manufactured, and distributed by Bristol-Myers Squibb. Taxol first received U.S. Food and Drug Administration ("FDA") approval in December 1992.

18.     Rhône-Poulenc Rorer S.A., a predecessor of Aventis Pharma S.A., received the initial patent for the formulation and computation of Taxotere, and initially sought FDA approval for Taxotere through its U.S. representative in 1994.   The FDA unanimously recommended

4

rejecting approval of Taxotere, because Taxotere was more toxic than Taxol, and more studies of docetaxel's side effects were needed.

19.     Ultimately, however, the FDA approved Taxotere on May 14, 1996.  Taxotere is indicated for treating locally advanced or metastatic breast cancer after prior chemotherapy treatments failed.  Defendants claimed superiority over other chemotherapy products approved for breast cancer treatment.

## MISLEADING MARKETING OF TAXOTERE IN THE UNITED STATES

20.     In marketing Taxotere, Defendants continually have made false claims of superior efficacy and omitted safety information.

### *False Claims of Superior Efficacy*

21.     On or about November 12, 2003, the FDA sent a warning letter to Aventis Pharmaceuticals North America objecting to the dissemination of three violative direct-to-consumer print advertisements for Taxotere.

22.     The FDA found the advertisements misleading because "they suggest that Taxotere is more effective than has been demonstrated by substantial evidence or substantial clinical experience."

23.     In its November correspondence, the FDA also noted that it had previously requested that a "Dear Doctor" letter be destroyed because it made misleading, effectiveness claims overstating the drug's survival benefits.  The FDA was "particularly concerned" about the "Dear Doctor" letter.

24.     In 2008, a study, *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, was published in the New England Journal of Medicine.  The study compared the efficacy of docetaxel (Taxotere) and paclitaxel (Taxol) in the adjuvant treatment of breast cancer.

25.     The study concluded that weekly paclitaxel with doxorubicin and cyclophosphamide were more effective than docetaxel in improving disease-free and overall survival in women with breast cancer.

26.     Following this study, FDA issued another letter on April 16, 2009, stating that promotional material for Taxotere again had unsubstantiated superiority claims and overstatements of efficacy.

27.     Specifically, the FDA found that the promotional material "misleadingly suggest that Taxotere is superior to paclitaxel in the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy, and overstate the efficacy of Taxotere. FDA is unaware of substantial evidence to support these claims."

28.     A Qui Tam lawsuit was also filed against Sanofi-Aventis U.S. Inc. and affiliated entities in the United States District Court for the Eastern District of Pennsylvania by a former employee.  In the lawsuit, Sanofi-Aventis, its predecessors and its affiliates are accused of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice doctors to use Taxotere.  *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc., Civil Action No. 02-2964 (E.D. Pa. 2015).*

**Omitted Safety Information**

29.     Although alopecia can be a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled physicians, health care professions and the public, including Plaintiff, in the United States regarding the risk of permanent alopecia.

30.     In the November 2003 FDA letter referenced above, the FDA states that the advertisements for Taxotere omit and minimize the risk information.  According to the FDA's

letter, the advertisements <u>do not</u> discuss common side effects associated with Taxotere, including hair loss.

31.     On or about May 27, 2008, Defendants issued a press release touting the efficacy of Taxotere based upon a clinical study, GEICAM 9805.

32.     However, Defendants failed to inform the public and health care providers that in the GEICAM 9805 study, alopecia persisted into the follow-up period (10 years and 5 months was the median follow-up time) and was observed to be ongoing in 9.2% of the patients taking Taxotere.

33.     Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports of patients who had taken Taxotere and suffered from permanent alopecia, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiff.  Defendants failed to inform physicians, healthcare providers, and the public that patients who take Taxotere are at a significantly increased risk of suffering from permanent alopecia.

34.     While Defendants did advise physicians, patients, and regulatory agencies in other countries, including Canada and the European Union, that Taxotere causes an increased risk of permanent alopecia, such warnings do not appear in information published by Defendants in the United States prior to December 2015.

**PLAINTIFF'S TREATMENT WITH TAXOTERE AND RESULTING INJURIES**

35.     Plaintiff was diagnosed with breast cancer on or around November 21, 2012 after a left breast biopsy. Subsequently, Plaintiff underwent a left partial mastectomy.

36.     Following the cancer diagnosis and mastectomy, Plaintiff met her physician to discuss chemotherapy treatment.

37.     Plaintiff underwent chemotherapy, which included Taxotere, from approximately February 2013 through April 2013.

38.     Before or during Plaintiff's treatment with Taxotere, neither Plaintiff nor her healthcare providers were aware of or informed by Defendants that permanent alopecia can occur following treatment with Taxotere.

39.     After undergoing chemotherapy with Taxotere, Plaintiff suffered from permanent alopecia as a result of receiving chemotherapy.

40.     Women who experience permanent alopecia suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

41.     There were already products on the market at least as effective as Taxotere that did not subject users to the same risk of permanent alopecia, but users of Taxotere were not presented with the opportunity to make an informed choice as to whether the benefits of Taxotere were worth its associated risks.

42.     Defendants engaged in a pattern of deception by overstating the benefits of Taxotere as compared to other alternatives while simultaneously failing to warn of the risk of permanent alopecia.

43.     As a direct result of Defendants' wrongful and deceptive acts, users of Taxotere, including Plaintiff, were exposed to the risk of permanent alopecia without any warning and without the claimed increased efficacy.

44.     As a direct result of Defendants' failure to warn patients of the risk of permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health

care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using Taxotere over other comparable products was justified.

45.     Plaintiff files this lawsuit within three (3) years of first suspecting that the Taxotere was the cause of appreciable harm sustained by Plaintiff, within three (3) years of first suspecting or having reason to suspect any wrongdoing, and within the applicable limitations period of first discovering their injuries and the wrongful conduct that cause such injuries. Plaintiff could not by the exercise of reasonable diligence have discovered any wrongdoing, nor could Plaintiff have discovered the causes of her injuries at an earlier time because some injuries occurred without initial perceptible trauma or harm, and when Plaintiff's injuries were discovered, their causes were not immediately known.

46.     Until recently, Plaintiff did not suspect, nor did she have reason to suspect, that wrongdoing had caused her injuries.  In addition, Plaintiff did not have reason to suspect the tortious nature of the conduct causing the injuries, until recently and has filed the herein action well within the applicable statute of limitations period. Plaintiff had no knowledge of the wrongful conduct of the Defendants as set forth herein, nor did Plaintiff have access to the information regarding other injuries and complaints in the possession of Defendants. Additionally, Plaintiff was prevented from discovering this information sooner because Defendant misrepresented and continued to misrepresent to the public, to the medical profession and to Plaintiff that Taxotere is safe and free from serious side effects.  Defendants have fraudulently concealed facts and information that could have led Plaintiff to an earlier discovery of potential causes of action.

47.     As alleged herein, as a direct, proximate, and legal result of Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics

9

of the drug, Plaintiff suffered severe and permanent physical and emotional injuries, including, but not limited to, permanent alopecia. Plaintiff has endured pain and suffering, has suffered economic loss, and will continue to incur such losses in the future. Plaintiff seeks actual and punitive damages from Defendants as alleged herein.

<u>**FIRST CAUSE OF ACTION**</u>
<u>**STRICT LIABILITY – FAILURE TO WARN**</u>

48.     Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

49.     Taxotere manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers, and they failed to adequately warn consumers and/or their health care providers of such risks. The Taxotere manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of Taxotere, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury.

50.     As a direct and proximate result of Plaintiff's reasonably anticipated use of Taxotere as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

51.     WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION
## NEGLIGENCE / NEGLIGENCE *PER SE*

52.     Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

53.     At all times herein mentioned, Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Taxotere.

54.     At all times herein mentioned, Defendants negligently manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold Taxotere and failed to adequately test and warn of the risks and dangers of Taxotere.

55.     Despite the fact that Defendants knew or should have known that Taxotere caused unreasonable, dangerous side effects, Defendants continued to promote and market Taxotere to consumers including Plaintiff and her healthcare providers, when there were safer alternative chemotherapy treatments available, which were just as effective.

56.     Defendants failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Taxotere.

57.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

58.     Plaintiff is within the class of persons the statutes protect and Plaintiff's injuries are of the type of harm these statutes are to prevent.

59.     Had Defendants exercise ordinary care and complied with the then existing standards of care, Plaintiff would not have been injured.

60.     Defendants' negligence was a proximate cause of Plaintiff's injuries, harm and economic loss which Plaintiff suffered, and will continue to suffer, as described and prayed for herein.

61.     WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

62.     Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

63.     Defendants are merchants with respect to goods of the kind Plaintiff received. Defendants impliedly warranted that their product was merchantable.  Defendants impliedly warranted that their product was fit for the particular purpose of being used safely as a form of chemotherapy. Plaintiff and her health care providers relied on Defendants' skill, judgment and superior access to the product's risk profile when deciding to use Defendants' product.

64.     Defendants' product was not fit for the ordinary purpose for which such goods were used.  It was defective in manufacture and its failure to provide adequate warnings and instructions, and was unreasonably dangerous.  Defendants' product was dangerous to an extent beyond the expectations of ordinary consumers with common knowledge of the product's characteristics, including Plaintiff and her medical providers.

65.     In accordance with the Massachusetts state law, Defendants owed the public, including Plaintiff, a duty to provide adequate warnings reasonably necessary to advise users like Plaintiff and Plaintiff's doctors of any dangers inherent in the use of Taxotere through timely

reporting to the FDA and public.

66.     Defendants also had a post-market duty to monitor complaints and perform surveillance on its products, including, but not limited to, scientific literature related to the long-term effects of Taxotere.

67.     Defendants failed to warn Plaintiff and her physicians of the risk of serious defects and life altering complications described herein rendering the product defective and unreasonably dangerous.

68.     Specifically, Defendants failed to update Taxotere's labeling or report to the FDA and the medical community their post-market information regarding complaints about Taxotere. Defendants also failed to revise their labeling to warn of the adverse events based upon the post-market adverse event information available to them.

69.     Plaintiff's Taxotere was defective at the time of its sale and distribution, and at the time it left the possession of Defendants, in that Defendants failed to adequately warn of the risks for permanent alopecia involved in the use of Taxotere. The accurate rate of occurrence for this injury associated with the use of Taxotere were not readily recognizable to the ordinary consumer, including Plaintiff and/or Plaintiff's physicians.

70.     The Taxotere was defective and unreasonably dangerous due to inadequate warnings and/or instruction because Defendants knew or should have known that the product created a serious risk of permanent alopecia and Defendants failed to adequately warn consumers of said risks- including Plaintiff and/or her healthcare physicians- in accordance with Massachusetts state law.

71.     The Taxotere manufactured and sold by Defendants was defective and unreasonably dangerous due to inadequate warnings and instructions because Defendants knew

or should have known that Taxotere created, among other things, a higher than expected risk for permanent alopecia, and Defendants failed to adequately warn of those risks, to monitor this risk, report them and update its labeling regarding such risk when the information became available.

72.     At all relevant times, Defendants' Taxotere was prescribed and used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

73.     The Taxotere manufactured, marketed, promoted, and sold by Defendants was expected to, and did, reach Plaintiff without substantial change to the condition in which it was sold.

74.     Despite the fact that evidence existed that the use of Taxotere was unreasonably dangerous and likely to place users at serious risk for permanent alopecia, Defendants failed to monitor and warn of the defects, health hazards and risks associated with Taxotere.

75.     At all times relevant to this action, the dangerous propensities of Taxotere were known to Defendants or were reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they distributed, supplied, or sold the product, and not known to ordinary physicians who would be expected to prescribe Taxotere for their patients.

76.     Defendants knew that physicians and other healthcare providers began commonly prescribing this product as a safe and effective chemotherapy despite its potential for serious severe and permanent side effects.

77.     Defendants were required to provide adequate warnings to consumers and the medical community under federal and Massachusetts state law, but failed to do so in a timely and responsibly manner.

78.     Had Defendants timely and adequately reported the adverse events to the FDA, it would have effectively warned physicians, including Plaintiff's physician, of those adverse events both directly and through discussion of those events that would have followed in the literature and at meetings.  Thus, additional information would have been available to the public, including Plaintiff and/or Plaintiff's physician, regarding the dangers of Taxotere that were known or knowable to Defendants at the time of distribution.

79.     Defendants' delay in timely reporting their known complications prevented the Plaintiff and her physicians from having timely information concerning the real life risks associated with Taxotere.  Had the Plaintiff received timely and adequate information of these serious risks and adverse events, she would not have agreed to Taxotere.

80.      Taxotere, which was manufactured, distributed, tested, sold, marketed, promoted, advertised, and represented defectively by Defendants, was a substantial contributing factor in

bringing about Plaintiff's injuries which would not have occurred but for the use of Taxotere.

81.     The defective warnings were a substantial contributing factor in bringing about the injuries to Plaintiff that would not have occurred but for the use of Taxotere.

82.     Taxotere was further defective because it did not conform, when it left control of Defendants, to Defendants' representations as described in the foregoing section, "Misleading Marketing of Taxotere in the United States."

83.     Plaintiff and/or her healthcare providers reasonably relied upon the skill and judgment of Defendants, and upon said representations, in using Taxotere. The warranties and representations were untrue in that Taxotere was unsafe and unsuited for the ordinary use for which it was intended.

84.     Taxotere, which was manufactured, distributed, tested, sold, promoted, marketed, advertised, and represented defectively by Defendants, was a substantial contributing factor in bringing about Plaintiff's injuries which would not have occurred but for the use of Taxotere.

85.     The defective manufacturing was a substantial contributing factor in bringing about the injuries to Plaintiff that would not have occurred but for the use of Taxotere.

86.     As a proximate result of Taxotere's defective condition at the time it was sold, Plaintiff suffered and will continue to suffer severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which she is entitled to compensatory and other damages in an amount to be proven at trial. Defendants' breach of implied warranty was a substantial contributing factor in causing Plaintiff's injuries, which were a reasonably foreseeable consequence of their conduct.

87.     WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

88.    Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

89.    Defendants expressly warranted Taxotere to be safe for use by the general public, including Plaintiff and/or her healthcare providers.

90.    Defendants also expressly warranted that Taxotere was safer and more effective than other chemotherapy drugs, such as Taxol.

91.    Defendants' express warranties as described in the foregoing section, "Misleading Marketing of Taxotere in the United States," were specifically negotiated and expressly communicated to Plaintiff in such a manner that Plaintiff understood and accepted them.

92.    Defendants' affirmations of fact or promise and descriptions of Taxotere as described in the foregoing section, "Misleading Marketing of Taxotere in the United States," regarding Taxotere created a basis of the bargain for Plaintiff and/or her physicians.

93.    At the time of the making of the express warranties, Defendants had knowledge of the purpose for which Taxotere was to be used and warranted the same to be in all respects fit, safe, effective, and proper for such purpose. Taxotere was unaccompanied by adequate warnings of its dangerous propensities and lack of effectiveness that were either known or knowable to Defendants at the time of distribution and sale.

94.    Defendants' breached their express warranties under Massachusetts state law which requires, that any warranty statements must be truthful, accurate, and not misleading.

95.    Plaintiff and/or her healthcare providers reasonably relied upon the skill and judgment of Defendants, and upon said express warranties, in using Taxotere. The warranties

17

and representations were untrue in that Taxotere was unsafe and unsuited for the use for which it was intended.

96.     As soon as the true nature of Taxotere and the fact that the warranties and representations were false was ascertained, Defendants were on notice of the breach of said warranties.

97.     As a proximate result of Defendants' warranties and Plaintiff's reliance on same, Plaintiff has suffered and continues to suffer severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which she is entitled to compensatory and other damages in an amount to be proven at trial. Defendants' breach of warranty was a substantial contributing factor in causing Plaintiff's injuries, which were a reasonably foreseeable consequence of their conduct.

98.     WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

<u>**FIFTH CAUSE OF ACTION**</u>
<u>**FRAUD**</u>

99.     Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

100.     Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Taxotere, and up to the present, willfully deceived Plaintiff by concealing from her, Plaintiff's physicians and the general public, the true facts concerning Taxotere, which the Defendants had a duty to disclose.

101.     At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Taxotere and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the benefits, health risks and consequences of using Taxotere.

Defendants knew of the foregoing, that using Taxotere is hazardous to health, that Taxotere is not more effective than safer alternatives available, and that Taxotere has a propensity to cause serious injuries to its users, including but not limited to the injuries Plaintiff suffered.

102.    Defendants concealed and suppressed the true facts concerning Taxotere with the intent to defraud Plaintiff, in that Defendants knew that Plaintiff's physicians would not prescribe Taxotere, and Plaintiff would not have used Taxotere, if they were aware of the true facts concerning its dangers.

103.    As a result of Defendants' fraudulent and deceitful conduct, Plaintiff suffered injuries and damages as alleged herein.

104.    WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## SIXTH CAUSE OF ACTION –
## (DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT, M.G.L. c. 93A, VIOLATIONS)

105.    Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

106.    Defendants engaged in trade and commerce within the Commonwealth of Massachusetts.

107.    The same actions that constitute Defendants' failure to warn, negligence, breach of warranty, breach of implied warranty of merchantability, and fraud constitute a violation of M.G.L. c. 93A.

108.    As described herein, Defendants represented that its product had characteristics, uses, and benefits that it did not have.

109.    As described herein, Defendants represented that its product was of a particular standard, quality, and grade that they either knew or should have known was not of the standard, quality, or grade described.

110.    Defendants failed to provide accurate disclosures of all material information before Plaintiff and her providers transacted to use Defendants' product.

111.    Defendants' willful and knowing withholding of important safety and efficacy information and critical product information constitutes a violation of M.G.L. c. 93A.

112.    Defendants actively, knowingly, and deceptively concealed its knowledge of its product's dangerous properties and risks and lack of efficacy. This conduct evidences bad faith and unfair and deceptive practices.

113.    Defendants engaged in the conduct as described herein that created a likelihood of confusion and misunderstanding.

114.    The practices described herein are unfair because they offend public policy as established by statutes, the common law, or otherwise and caused substantial injury to consumers.  In this regard, Defendants engaged in an unconscionable course of action.

115.    Defendants willfully, wantonly, recklessly, and with gross negligence, engaged in the conduct described herein, which it knew was deceptive, in the course of retail business, trade and commerce, and had a deleterious impact on the public interest.

116.    Defendants are liable to Plaintiff for all statutory, direct and consequential damages, fees and costs, resulting from this unfair and deceptive conduct, including multiple damages.

## DEMAND FOR PUNITIVE DAMAGES

117.    Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

118.    On September 28, 2016, Plaintiff served upon Defendants via certified mail a Notice and Demand letter pursuant to M.G.L. c. 93A ("demand letter").

119.    In her demand letter, Plaintiff described the unfair and deceptive trade practices employed by Defendants, described the injury she suffered, and demanded that Defendants make a reasonable and substantial offer to settle Plaintiff's claims.

120.    On October 21, 2016, Defendants served upon Plaintiff by certified mail a Response to Plaintiff's demand letter ("response letter").

121.    In their response letter, Defendants declined to make a voluntary settlement offer to Plaintiff's demand for relief.

122.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, were willful and malicious. Defendants committed these acts with a conscious disregard for the rights of Plaintiff and other Taxotere users and for the primary purpose of increasing Defendants' profits from the sale and distribution of Taxotere. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

123.    Prior to the manufacturing, sale, and distribution of Taxotere, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the

public, including Plaintiff and as such, Defendants unreasonably subjected consumers of said drugs to risk of serious and permanent injury from using Taxotere.

124.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Taxotere and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in Taxotere. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of Taxotere knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

125.    Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, entitling Plaintiff to exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

A. For general damages in a sum in excess of the jurisdictional minimum of this Court;

B. Medical expenses, past and future, according to proof at the time of trial;

C. For past and future mental and emotional distress, according to proof;

D. For punitive or exemplary damages according to proof;

E. For pre-judgment and post-judgment interest as provided by law;

F. Restitution, disgorgement of profits, and other equitable relief;

G. For attorneys' fees, expenses, and costs of this action; and

H. For such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and as to all issues.


Dated: <u>October 31, 2016</u>                    Respectfully submitted,

/s/ Timothy J. Becker

Timothy J. Becker, Esq. (MN Bar #256663)
Michael K. Johnson (MN Bar #258696)
**Johnson Becker, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Phone: (612) 436-1800
Fax: (612) 436-1801
Email: tbecker@johnsonbecker.com
Email: mjohnson@johnsonbecker.com

***Attorneys for Plaintiff***

23