**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA**

---------------------------------------------------------

| | | |
|---|---|---|
| **IN RE: TAXOTERE (DOCETAXEL)** | : | **MDL NO. 2740** |
| **PRODUCTS LIABILITY LITIGATION** | : | |
| | : | **SECTION "N" (5)** |
| ------------------------------------------------------- | : | |
| | : | **HON. KURT D. ENGELHARDT** |
| **THIS DOCUMENT RELATES TO** | : | |
| **ALL CASES** | : | |

---------------------------------------------------------

**COMPLAINT AND JURY DEMAND**

Plaintiff, Dorothy Malone, by and through her attorneys, respectfully submits the following Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; and Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S. ("Defendants"), and alleges the following:

**NATURE OF THE ACTION**

1.      This action seeks to recover damages for injuries sustained by Plaintiff as the direct and proximate result of the wrongful conduct of Defendants, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC, in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction pursuant to 28. U.S.C. § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000.00 exclusive of interest and costs. There is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff, at all relevant times, was a resident and citizen of the State of Louisiana.  As set forth more fully below, all

Defendants are entities organized in states other than the State of Louisiana, all Defendants have their principal place of business in a state other than the State of Louisiana, and none of the Defendants is a citizen or resident of the State of Louisiana.

3.      This Court has personal jurisdiction over Defendants, each of which is licensed to conduct and/or is systematically and continuously conducting business in the State of Louisiana, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including TAXOTERE®, to the residents in this State.

4.      As alleged *infra*, Plaintiff's injuries complained of in the instant civil action "arise out of" or "relate to" the Defendants' contacts with the State of Louisiana.

5.      Here, Defendants have sufficient "minimum contacts" with the State of Louisiana, such that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

6.      At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC has been "doing business" and has committed tortious acts, in whole or in part, within the State of Louisiana.

7.      At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC has employees in the State of Louisiana.

8.      At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC actively marketed TAXOTERE® within the State of Louisiana by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of Louisiana.

9.      At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC solicited purchases of TAXOTERE® within the State of Louisiana by soliciting purchases of TAXOTERE® from medical doctors and providers of medical treatment throughout the State of Louisiana.

10.     Upon information and belief, at all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC provided product information about TAXOTERE® to medical doctors and providers of medical treatment throughout the State of Louisiana.

11.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC sold TAXOTERE® within the State of Louisiana by selling the drug to medical doctors and providers of medical treatment throughout the State of Louisiana.

12.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC shipped TAXOTERE® to the State of Louisiana by shipping the drug to medical doctors and providers of medical treatment throughout the State of Louisiana.

13.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC expected that TAXOTERE® would be sold, purchased, and used in the State of Louisiana.

14.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC purposefully directed its activities towards the State of Louisiana.

15.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC exercised the privilege of conducting business in the State of Louisiana.

16.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC enjoyed the benefits and protections of the laws of the State of Louisiana.

17.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC's activities in the State of Louisiana were neither irregular nor casual; rather, those activities were systematic and continuous.

18.     Defendant Sanofi-Aventis U.S. LLC had fair warning that it might be subject to personal jurisdiction in the State of Louisiana and that it might be hauled into court in the State of

Louisiana with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of TAXOTERE® in the State of Louisiana.

19.     Specific personal jurisdiction over Defendant Sanofi-Aventis U.S. LLC in the State of Louisiana is reasonable.

20.     There is no burden on Defendant Sanofi-Aventis U.S. LLC in litigating the instant case in Louisiana as Defendant Sanofi-Aventis U.S. LLC, regularly, systematically and continuously solicits and conducts business in the State of Louisiana, and already enjoys the benefits and protections of the laws of the State of Louisiana.

21.     Plaintiff has a substantial interest in obtaining convenient and effective relief in the State of Louisiana – the place where Defendants purposeful activities ultimately resulted in her injuries.  On the other hand, if personal jurisdiction does not lie in Louisiana, Plaintiff will be forced to litigate her case(s) in New Jersey and/or France.

22.     At all times relevant hereto, as set forth more fully *infra*, Defendant Sanofi-Aventis U.S. LLC is a wholly-owned subsidiary of Defendant Sanofi S.A. –  100% owned and controlled by Defendant Sanofi S.A.

23.     At all times relevant hereto, as set forth more fully *infra*, Defendant Aventis-Pharma S.A. is a wholly-owned subsidiary of Defendant Sanofi S.A.

24.     At all times relevant hereto, as set forth more fully *infra*, Defendant Aventis-Pharma S.A., a wholly-owned subsidiary of Defendant Sanofi S.A., was the patent-holder of TAXOTERE®.  Indeed, Defendant Aventis-Pharma S.A., along with Defendant Sanofi-Aventis U.S. LLC, prosecutes patent infringement lawsuits with respect to docetaxel (TAXOTERE®) in the United States. *See, e.g., Aventis Pharma S.A. and Sanofi-Aventis US LLC v. Hospira, Inc.,* 743 F. Supp. 2d 305, 322 (D. Del. 2010) *aff'd,* 675 F.3d 1324 (Fed. Cir. 2012).

4

25.     At all times relevant hereto, Defendant Sanofi-Aventis US LLC was the agent of Defendant Sanofi S.A. and its wholly-owned subsidiary Defendant Aventis-Pharma S.A. – the patent-holder of TAXOTERE® for purposes of marketing, advertising, soliciting purchases, and selling TAXOTERE® in the State of Louisiana.

26.     At all times relevant hereto, Defendant Sanofi-Aventis US LLC was the alter ego of Defendant Sanofi S.A. and its wholly-owned subsidiary Defendant Aventis-Pharma S.A. – the patent-holder of TAXOTERE® for purposes of marketing, advertising, soliciting purchases, and selling TAXOTERE® in the State of Louisiana.

27.     Plaintiff's use of, and ultimately injury by, TAXOTERE® in the State of Louisiana was not an isolated occurrence, but arose from the purposeful efforts of Defendant Sanofi S.A. and Defendant Aventis-Pharma S.A., through Defendant Sanofi S.A.'s and Defendant Aventis-Pharma S.A.'s agent, Defendant Sanofi-Aventis US LLC, to create and serve the market for TAXOTERE® in the State of Louisiana by the marketing, advertising, soliciting purchases, and selling of TAXOTERE® in the State of Louisiana.

28.     Defendant Sanofi S.A. and Defendant Aventis-Pharma S.A. placed TAXOTERE® into the stream of commerce with the intent that it would be marketed, advertised, and sold by their agent and/or alter ego Defendant Sanofi-Aventis US LLC in the State of Louisiana.

29.     At all times relevant hereto, the activities of Defendant Sanofi-Aventis US LLC were of such character as to amount to doing the business of Defendant Sanofi S.A. and Defendant Aventis-Pharma S.A. – the patent-holder of TAXOTERE® – in the State of Louisiana.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because Defendants marketed, advertised, and distributed the dangerous product in this District; Plaintiff resides in this District; Plaintiff's harms, losses, and damages occurred in this District; Defendants

do substantial business in the State of Louisiana and within this District; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold TAXOTERE® in interstate commerce.

**PARTIES**

31.     Plaintiff Dorothy Malone currently resides in Lake Charles, Louisiana.  In addition, Plaintiff was at all relevant times, during the course of her treatment with TAXOTERE®, a citizen and adult resident of the city of Lake Charles within the State of Louisiana and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants, within this District. Specifically, Plaintiff was treated with TAXOTERE®, at Southwest Louisiana Hospital located in Lake Charles, Louisiana, within this District.  Plaintiff has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

32.     Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 rue La Boétie, 75008 Paris, France.

33.     Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 avenue Raymond Aron, 92160 Antony, France.

34.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi S.A. is the only member and owns 100% of the membership interest (both financial and voting) of

Defendant Sanofi-Aventis U.S. LLC. Defendant Sanofi-Aventis U.S. LLC does not have any members that are citizens, residents, or domiciliaries of the State of Louisiana.

35.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

## DEFENDANTS' OWNERSHIP AND UNITY OF INTEREST

36.     Sanofi S.A. is a French multinational pharmaceutical parent company that operates worldwide through a complex, consolidated, and intermingled web of more than 400 wholly-owned subsidiaries, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As of 2013, Sanofi S.A. was the world's fifth-largest pharmaceutical company by sales.

37.     At all times relevant, Sanofi S.A. was engaged in the business of researching, analyzing, licensing, designing, formulating, compounding, patenting, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug TAXOTERE® through its numerous wholly-owned subsidiaries in the United States and throughout the world, including Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

38.     The predecessor to the entity now known as Sanofi S.A. was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil company subsequently acquired by Total, when Elf Aquitaine took control of the Labaz group pharmaceutical company. In 1993, Sanofi entered the U.S. pharmaceutical market by first partnering with and then later acquiring Sterling Winthrop and its prescription pharmaceutical business in 1994. Sanofi was incorporated under the laws of France in 1994 as a *société anonyme*.

39.     Aventis was formed in 1999 when the French company Rhône-Poulenc S.A. merged with the German corporation Hoechst Marion Roussel, which itself was formed from the 1995 merger of Hoechst AG with Cassella, Roussel Uclaf, and Marion Merrell Dow. The merged company was based in Schiltigheim, near Strasbourg, France.

40.     Sanofi-Aventis S.A. was formed in 2004 with the merger of Aventis and Sanofi-Synthélabo, each of which had previously been formed through mergers. Sanofi-Aventis changed its name to Sanofi S.A. on May 6, 2011, after receiving approval at its annual general meeting.

41.     Sanofi S.A.'s shares are listed on the New York Stock Exchange and the NASDAQ Global Market. Sanofi S.A. is required by law to register its securities in the United States under section 12(g) of the Securities Exchange Act of 1934 on Form 20-F and to file its annual reports on Form 20-F.

42.     According to Sanofi S.A.'s Form 20-F filed with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2014, Sanofi S.A. owns 100% of the membership and voting interest of Sanofi-Aventis U.S. LLC. Therefore, Sanofi S.A. controls and directs the operations of Sanofi-Aventis U.S. LLC.

43.     Sanofi-Aventis U.S. LLC, according to Sanofi S.A.'s Form 20-F, was formed on June 28, 2000 as a Delaware limited liability company whose principal activity was identified as "Pharmaceuticals."

44.     Upon information and belief, Aventis Pharma S.A. was formed as a successor in interest to Rhone-Poulenc Rorer, S.A.

45.     At all times material to this lawsuit, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC were engaged in the business of, and/or were successors in interest to, entities engaged in the business of researching, analyzing, licensing, designing, formulating,

compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug TAXOTERE® to the general public, including Plaintiff.

46.     At all times material to this lawsuit, Defendants were authorized to do business within the State of Louisiana; did in fact transact and conduct business in the State of Louisiana; derived substantial revenue from goods and products used in the State of Louisiana; and supplied TAXOTERE® within the State of Louisiana.

47.     At all relevant times, and as more fully set forth below, Defendants acted in conjunction with other affiliated, related, jointly owned and/or controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public, including Plaintiff. Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another and are jointly liable for their misconduct and wrongful acts as alleged herein.

48.     As the corporate parent of these wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. Accordingly, there exists, and at all relevant times herein existed, a unity of interest, ownership, and conduct between Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC with regard to the manufacture, distribution, development, testing, and labeling of the TAXOTERE® in question and with regard to other related conduct, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another.

49.     Sanofi S.A., through its complicated web of various affiliates, wholly-owned subsidiaries, and predecessor companies, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC, has been directly involved in and has overseen the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting TAXOTERE® (docetaxel) throughout the world and in the United States. Sanofi S.A. markets TAXOTERE® (docetaxel) worldwide in over 100 different countries. When press releases are issued announcing the introduction, marketing, and distribution of TAXOTERE® (docetaxel) in a new country, the press releases are issued by Sanofi S.A., or before 2011 when Sanofi S.A. changed its name, by Sanofi-Aventis.

## DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE® (DOCETAXEL)

50.     TAXOTERE® is a drug used in the treatment of various forms of cancer, including, but not limited to, breast cancer. Docetaxel (TAXOTERE®) is a part of a family of drugs commonly referred to as Taxanes.

51.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (TAXOL®) and docetaxel (TAXOTERE®). Taxane agents also exist as cabazitaxel and in generic forms as well.

52.     Paclitaxel (TAXOL®), which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

53.     The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and

Pierre Potier of Rhone-Poulence Santé.  TAXOTERE® was designed as an increased potency Taxane.

54.     The initial patent disclosing the formulation and computation of docetaxel (TAXOTERE®) was issued to Rhone-Poulence Santé and subsequently assigned to Defendant Aventis Pharma S.A. in March 1989. Sanofi S.A. owns 100% of the shares or financial interest of Aventis Pharma S.A., and Sanofi S.A. therefore directs and controls the operations and activities of Aventis Pharma S.A. Since March 1989, Sanofi S.A., through its wholly-owned subsidiary, Aventis Pharma S.A., has controlled the development and been the owner, holder, or assignee of the patents related to TAXOTERE®.

55.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Polunec, Aventis Pharma S.A.'s predecessor, assigned to docetaxel.

56.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®.  Accordingly, Sanofi S.A. and Aventis Pharma S.A. have direct and personal knowledge of the results of those tests and Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiff in the United States.

57.     Rhône-Poulenc Rorer S.A., before it was acquired by or merged into Aventis Pharma S.A., initially sought FDA approval for TAXOTERE® in December 1994. The FDA's

Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of docetaxel's side effects were needed.

58.     TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

59.     After the initial FDA approval, Defendants sought and were granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Defendants claimed superiority over other chemotherapy products approved to treat breast cancer. Defendants' marketing claims included claims of superior efficacy over the lower potency Taxane product paclitaxel (TAXOL®), which was the primary competitor product to TAXOTERE®.

60.     Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent and more toxic TAXOTERE® does not in fact offer increased efficacy or benefits over other Taxanes, as Defendants have claimed and advertised. Defendants concealed the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

61.     A study of available clinical studies concerning the relative efficacy of Taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® (docetaxel) or TAXOL® (paclitaxel).

62.      A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® (paclitaxel) was

12

more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

63.     Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product paclitaxel (TAXOL®). In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus paclitaxel (TAXOL®).  Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO").  The 2005 JCO study concluded that "docetaxel (TAXOTERE®) demonstrated superior efficacy compared with paclitaxel (TAXOL®), providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

64.     Whatever the merits of the 2005 JCO study may have been, Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that docetaxel (TAXOTERE®) was not more effective than paclitaxel (TAXOL®) in the treatment of breast cancer.

65.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over paclitaxel stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical

Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

66.     A Qui Tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use docetaxel (TAXOTERE®). *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

67.     Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC and their predecessors and affiliates designed, directed, and/or engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE®  to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme,

---

[1] Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2] Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at sanofi-aventis.

Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

68.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products.

69.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including, but not limited to, disfiguring permanent alopecia (hair loss).

**DEFENDANTS' COVER UP IN THE UNITED STATES
REGARDING THE CAUSAL RELATIONSHIP BETWEEN DOCETAXEL
(TAXOTERE®) AND PERMANENT DISFIGURING HAIR LOSS**

70.     Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiff, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

71.     Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

72.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including, but not limited to, loss of work or inability to work due to significant psychological damage.

73.     Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in thousands of women being exposed to the side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

74.     Beginning in the late 1990's, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiff in the United States.

75.     In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients had stop taking TAXOTERE®.

76.     Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken TAXOTERE® and suffered from permanent disfiguring hair loss, Defendants have failed, to date, to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiff, that patients who take TAXOTERE® are at a significantly increased risk of suffering from permanent disfiguring hair loss.

77.     Defendants have chosen to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiff in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking TAXOTERE®.

78.     Users of TAXOTERE® were not presented with the opportunity to make an informed choice as to whether the benefits of TAXOTERE® were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

79.     Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to TAXOTERE® and the risk of permanent alopecia, and despite numerous U.S. label changes and safety warnings issued by Defendants since 1995, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States until, at the earliest, December 2015.

80.     As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

81.     As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

82.     Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

83.     TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

84.     Plaintiff Dorothy Malone, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## PLAINTIFF DOROTHY MALONE'S DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

85.     Plaintiff is informed and believes and thereon alleges that in or around November of 2010 Plaintiff was diagnosed with breast cancer.

86.     Plaintiff was administered her first dose of TAXOTERE® on or around February 7, 2011, and underwent six rounds of TAXOTERE® treatment, ending on or around May 23, 2011. Plaintiff was treated with TAXOTERE® at Southwest Louisiana Hospital located in Lake Charles, Louisiana. Neither Plaintiff nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

## NATURE OF THE CLAIMS

87.     Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiff, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

88.     In particular, Defendants:

(a)     failed to disclose their investigation and research from 2005, including, but not limited to, the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

(b)     failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

(c)     failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permeant alopecia;

(d)     failed to disclose in the "Warnings" Section that permeant alopecia is a frequent side effect associated with the use of TAXOTERE®;

(e)     failed to advise prescribing physicians, such as Plaintiff's physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

(f)     failed to provide adequate instructions on how to intervene and/or reduced the risk of permanent alopecia related to the use of TAXOTERE®;

(g)     failed to provide adequate warnings and information related to the increased risks of permeant alopecia;

(h)     failed to provide adequate warnings regarding the increased risk of permeant alopecia with the use of TAXOTERE® as compared to other products designed to treat the same conditions as TAXOTERE®; and

(i) failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

89.    During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect until at the earliest, December 2015.

90.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

91.    Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

92.    Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

93.    From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiff or Plaintiff's prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

94.    Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

95.    Despite issuing numerous other label changes and safety warnings, Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiff and her

healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

96.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including, but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

97.     Plaintiff incorporates by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

98.     Plaintiff is within the applicable statutes of limitations for the claims presented herein because Plaintiff did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including, but not limited to, the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

99.     In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiff has suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiff; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

100.     Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered.  Defendants breached that duty.

101.     Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' TAXOTERE® or the true risks associated with her use at the time she purchased and used Defendants' TAXOTERE®.

102.     Defendants did not notify, inform, or disclose to Plaintiff, Plaintiff's prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiff has suffered and complained of herein until a safety labeling change issued in December 2015, although this change is inadequate as it fails to warn of the true risks related to permanent alopecia.

103.     Because Defendants failed in their duty to notify Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

104.     Accordingly, Plaintiff files this lawsuit within the applicable statutes of limitations, Plaintiff could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of her injuries at an earlier time, and when Plaintiff's injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiff's injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiff may have a basis for an actionable claim.

## LIABILITY UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

105.     Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

106.    Under the Louisiana Products Liability Act, Plaintiff shows that the serious risk of developing disfiguring permanent alopecia and other injuries are the direct and proximate result of breaches of obligations owed by Defendants to Plaintiff, including defects in design, marketing, manufacture, distribution, instructions and warnings by Defendants, which breaches and defects are listed more particularly, but not exclusively, as follows:

a.  Failure to instruct and/or warn of the serious risk of developing disfiguring permanent alopecia and other injuries;

b.  Failure to adequately instruct and/or warn healthcare providers, including those healthcare providers who administered TAXOTERE® to Plaintiff, Dorothy Malone, of the serious risk of developing disfiguring permanent alopecia and other injuries;

c.  Manufacturing, producing, promotion, formulating, creating, and/or designing TAXOTERE® without adequately testing it;

d.  Failing to provide adequate warning of the dangers associated with TAXOTERE®;

e.  The defects in designing, formulating, researching, developing, manufacturing, marketing, promoting and selling a medication when it knew or reasonably should have known of the propensity to cause disfiguring permanent alopecia and other injuries;

f.  Defendants' liability under the Louisiana Products Liability Act as a result of its design, development, manufacture, marketing, and sale of a medication which is defective and unreasonably dangerous for the risk of developing disfiguring permanent alopecia and other injuries;

g. The continued production and sale of docetaxel (TAXOTERE®) given the propensity of the medication to cause disfiguring permanent alopecia and other injuries;

h. Providing inaccurate labeling and inadequate warnings and instructions;

i. Utilizing testing methods which were not accurate, sensitive, specific, and/or reproducible;

j. Other breaches and defects which may be shown through discovery or at trial; and

k. Generally, the failure of Defendants to act with the required degree of care commensurate with the existing situation.

**FIRST CLAIM FOR RELIEF**
**(Design Defect under LSA-RS 9:2800.56)**

107. Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

108. At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiff.

109. TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

110. At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

111. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation

in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

112.     The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

113.     At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

114.     Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

115.     At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

116.     Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiff.

117.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

118.     In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

119.     The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

120.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

121.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiff in particular; and Defendants are therefore liable for the injuries sustained by Plaintiff in accordance with Louisiana Products Liability Act.

122.    At the time Defendants' product left their control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of TAXOTERE®.   This was demonstrated by the existence of other breast cancer medications which had a more established safety profile and a considerably lower risk profile, namely paclitaxel (TAXOL®).

123.    Plaintiff and Plaintiff's physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

124.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects, including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

125.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

126.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement and/or permanent disfiguring alopecia, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

127.    By reason of the foregoing, Defendants are liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

128.    Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

129.    The defects in Defendants' drug TAXOTERE® were a substantial and contributing factors in causing Plaintiff's injuries.

130.    Due to the unreasonably dangerous conditions of TAXOTERE®, Defendants are liable to Plaintiff.

131.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including, but not limited to: past and future medical expenses; future psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF
### (Inadequate Warning Under LSA-RS 9:2800.57)

132.    Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

133.    Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced TAXOTERE® into the stream of commerce, and in the course of same, directly advertised or marketed TAXOTERE® to consumers or persons responsible for consumers, and therefore, had a duty to both Plaintiff directly and her physicians to warn of risks associated with the use of the product, including, but not limited to, permanent disfiguring alopecia.

134.    Defendants had/have a duty to warn of adverse drug reactions, including, but not limited to, permanent disfiguring alopecia, which they knew or should have known can be caused by the use of TAXOTERE® and/or are associated with the use of TAXOTERE®.

135.    The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective in that it failed to include adequate warnings regarding all adverse side effects,  including, but not limited to, permanent disfiguring alopecia, associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

136.    Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia

associated with TAXOTERE®, although Defendants aggressively and fraudulently promoted the product to physicians.

137.    Due to the inadequate warning regarding the serious risk for disfiguring permanent alopecia, TAXOTERE® was in a defective condition and unreasonably dangerous at the time that it left the control of Defendants.

138.    Defendants' failure to adequately warn Plaintiff and her prescribing physicians of the serious risk of disfiguring permanent alopecia prevented Plaintiff's prescribing physicians and Plaintiff herself from correctly and fully evaluating the risks and benefits of TAXOTERE®.

139.    Had Plaintiff been adequately warned of the serious risk of disfiguring permanent alopecia associated with TAXOTERE®, Plaintiff would not have taken TAXOTERE®.

140.    Upon information and belief, had Plaintiff's prescribing physicians been adequately warned of the serious risk of disfiguring permanent alopecia associated with TAXOTERE®, Plaintiff's physicians would have discussed the risks of disfiguring permanent alopecia with Plaintiff and/or would not have prescribed it.

141.    As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiff suffered disfiguring permanent alopecia.

142.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including, but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past,

present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## THIRD CLAIM FOR RELIEF
### (Breach of Express Warranty Under LSA-RS 9:2800.58)

143.    Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

144.    Defendants expressly warranted that TAXOTERE® was safe and well accepted by users.

145.    TAXOTERE® does not conform to these express representations, because TAXOTERE® is not safe and has numerous serious side effects, including, but not limited to, permanent and disfiguring alopecia, many of which were not accurately warned about by Defendants.

146.    As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, losses, and damages.

147.    Plaintiff and Plaintiff's physicians relied on Defendants' express warranties. Furthermore, the express warranties represented by Defendants were a part of the basis for Plaintiff's and Plaintiff's physicians use of TAXOTERE® and she relied upon these warranties in deciding to use TAXOTERE®.

148.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of TAXOTERE® in recommending, prescribing, and/or dispensing TAXOTERE®. Defendants breached the aforesaid express warranties, as their drug TAXOTERE® was and is defective and causes harm and injury as discussed herein.

149.     At the time of the making of express warranties, Defendants had knowledge of the purpose for which TAXOTERE® was to be used, and warranted same to be in all respects safe, effective, and proper for such use.

150.     Defendants expressly represented to Plaintiff, Plaintiff's physicians, and/or healthcare providers that TAXOTERE® was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

151.     Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that TAXOTERE® was not safe and fit for the use intended, and, in fact, TAXOTERE® produced serious injuries to the users that were not accurately identified and represented by Defendants.

152.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including, but not limited to: past and future medical expenses; past and future psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF
### (Breach of Warranty in Redhibition)

153.   Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

154.   TAXOTERE® contains a vice or defect which renders it useless or its use so inconvenient that consumers would not have purchased it had they known about the vice or defect.

155.   Pursuant to Louisiana Civil code article 2520, a seller warrants the buyer against redhibitory defects, or vices, in the thing sold.  TAXOTERE®, which was sold and promoted by Defendants, possesses a redhibitory defect because it is unreasonably dangerous, as described above, which renders TAXOTERE® useless or so inconvenient that it must be presumed that Plaintiff, Dorothy , would not have bought TAXOTERE® had she known of the defects.

156.   Defendants were aware of the substantial risks of disfiguring permanent alopecia associated with TAXOTERE® but failed to fully disclose those risks to Plaintiff.

157.   In accordance with Louisiana Civil Code article 2545, Defendants, as the manufacturers, distributors and sellers of TAXOTERE®, are deemed to be aware of its redhibitory defects.

158.   Had Plaintiff been made aware of the defects contained in TAXOTERE®, he would not have purchased TAXOTERE®.  This characteristic rendered TAXOTERE® unfit for its intended purposes.

159.   Defendants are liable to Plaintiffs under the theory of redhibition as a consequence of the sale to Plaintiff a product unfit for its intended use.

160.   Plaintiff is entitled to the return of purchase price paid for TAXOTERE®, including, but not limited to, insurance co-payments, interest on these amounts from the date of

purchase, attorneys' fees and costs, pecuniary and non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiffs may be entitled.

161.     As a result of the aforementioned breach of obligation by Defendants, Plaintiff, Dorothy Malone, suffered and continues to suffer from the following items of damage, all past, present, and future, for which she is entitled to be compensated by Defendants, *in solido*, in an amount which is just and reasonable:

        a.   Medical and related expenses;

        b.   Physical injury and disability;

        c.   Physical pain and suffering;

        d.   Mental anguish and distress;

        e.   Loss of earnings;

        f.   Impairment to earning capacity;

        g.   Loss of enjoyment of life; and

        h.   Other items of damage which may be shown through discovery or at trial.

162.     By reason of the foregoing, Plaintiff demands judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00, together with interest, costs of suit, and all such other and further relief as the Court deems proper.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff Dorothy Malone demands trial of this matter by jury and further demands judgment against Defendants Sanofi S.A.; Aventis Pharma S.A.; and Sanofi-Aventis U.S. LLC, separately and doing business as Winthrop U.S. in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted this 9th day of December, 2016.

Respectfully submitted,

GOMEZ TRIAL ATTORNEYS
  */s/Ahmed S. Diab*
John H. Gomez (CA Bar # 171485) T.A.
Ahmed S. Diab (CA Bar # 262319)
Lindsay R. Stevens (CA Bar # 256811)
655 West Broadway, Suite 1700
San Diego, California 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496
*john@thegomezfirm.com*
*adiab@thegomezfirm.com*
*lstevens@thegomezfirm.com*

***Attorneys for Plaintiff***