UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 2740  SECTION "N" (5) |
| THIS DOCUMENT RELATES TO: | : : | HON. KURT D. ENGELHARDT |
| ALL CASES | : : : : | |

**SANOFI AND AVENTIS PHARMA S.A.'S MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................... 1

II.   BACKGROUND FACTS .......................................................................... 3

III.  LEGAL STANDARDS AND ARGUMENT ........................................... 4

      A.    The Court Lacks General Personal Jurisdiction Over the French
            Defendants. ..................................................................................7

      B.    Plaintiffs Have Likewise Demonstrated No Facts Supporting Specific
            Personal Jurisdiction. ..................................................................8

      C.    No Agency or Alter-Ego Relationship Exists that Warrants Imputing
            the Contacts of Sanofi-Aventis U.S. LLC and/or Sanofi US Services
            Inc. to the French Defendants.....................................................11

      D.    The Exercise of Jurisdiction Would Not Be Fair or Reasonable.....................16

IV.   CONCLUSION ....................................................................................... 18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adams v. John M. O'Quinn & Assocs., PLLC*,
   No. 416CV00071GHDJMV, 2017 WL 1091879 (N.D. Miss. Mar. 22, 2017) ......................6

*AlixPartners, LLP v. Brewington*,
   836 F.3d 543 (6th Cir. 2016) ...................................................................................................8

*Alpine View Co. Ltd. v. Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000) .................................................................................................16

*Anzures v. Flagship Restaurant Grp.*,
   819 F.3d 1277 (10th Cir. 2016) ...............................................................................................8

*Arch v. Am. Tob., Inc.*,
   984 F. Supp. 830 (E.D. Pa. 1997) ...................................................................................12, 16

*C.W. Downer & Co. v. Biorginal Food & Science Corp.*,
   771 F.3d 59 (1st Cir. 2014) ......................................................................................................8

*Chan v. Society Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir.1994) .....................................................................................................5

*Conn v. Zakharov*,
   667 F.3d 705 (6th Cir. 2012) ...................................................................................................6

*Consol. Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) .........................................................................................11, 12

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) .................................................................................................6, 7, 11, 12

*Dalton v. R & W Marine, Inc.*,
   897 F.2d 1359 (5th Cir. 1990) ..........................................................................................11, 12, 15

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) .............................................................................................11, 12

*Donatelli v. Nat'l Hockey League*,
   893 F.2d 459 (1st Cir. 1990) ..................................................................................................12

*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ...............................................................................................5

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
  685 F.3d 376 (4th Cir. 2012) ........................................................................5

*Fastpath Inc. v. Arbela Technologies Corp.*,
  760 F.3d 816 (8th Cir. 2014) ........................................................................8

*Fund v. Ipsen, S.A.*,
  450 Fed. Appx. 326 (5th Cir. 2011).................................................12, 13, 14

*Gallelli v. Crown Imports, LLC*,
  701 F. Supp. 2d 263 (E.D.N.Y. 2010) ..........................................................15

*Goodyear Dunlop Tires Opers. v. Brown*,
  564 U.S. 915 (2011).......................................................................................6

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ....................................................................5

*Guidry v. Janssen Pharmaceuticals, Inc.*,
  206 F. Supp. 3d 1187, 1191-93, 1195-96 (E.D. La. 2016) ...........................15

*Hargrave v. Fibreboard* Corp,
  710 F.2d 1154, 1160 (5th Cir. 1983) ............................................................12

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st Cir. 2005).........................................................................17

*Hollander v. Sandoz Pharmaceuticals Corp.*,
  289 F.3d 1193 (10th Cir. 2002) ...................................................................15

*Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*,
  No. 15-CV-06478 (ALC), 2016 WL 7451306 (S.D.N.Y. Dec. 27, 2016)................6

*Imo Industries, Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998)..........................................................................5

*In re Chinese Manufactured Drywall Prods.*,
  742 F.3d 576 (5th Cir. 2014) ........................................................................5

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  No. CIV.A. H-10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) ....................5

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  959 F. Supp. 2d 476 (S.D.N.Y. 2013)...........................................................15

*Jackson v. Tanfoglio Giuseppe*,
  615 F.3d 579 (5th Cir. 2010) ........................................................5, 12, 13, 15

*Jennings v. AC Hydraulic A/S*,
   383 F.3d 546 (7th Cir. 2004) ...................................................................5

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
   No. 12-3419, 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017)......................10

*Lee v. United Parcel Serv., Inc.*,
   731 F. Supp. 2d 194 (D.P.R. 2010)............................................................9

*Lewis v. Johnson & Johnson*,
   991 F. Supp. 2d 748 (S.D.W.Va. 2014) .....................................................5

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ................................................................8

*Ltd. v. Insta-Mix, Inc.*,
   438 F.3d 465 (5th Cir. 2006) .................................................................4, 6

*Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*,
   989 F. Supp. 265 (D.D.C. 1998) .............................................................10

*Meier v. Wright Med. Tech., Inc.*,
   No. 14-cv-505, 2015 WL 1486688 (W.D. Wis. Mar. 31, 2015).................16

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir.).............................................................................5, 8

*Minnesota Min. & Mfg. Co. v. Nippon Carbide Indus. Co.*,
   63 F.3d 694 (8th Cir. 1995) ......................................................................5

*Modern Holdings, LLC v. Corning Inc.*,
   No. 13-405, 2015 WL 1481443 (E.D. Ky. Mar. 31, 2015).........................6

*Monkton v. Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ..........................................................7, 8, 17

*Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*,
   91 F.3d 790 (6th Cir. 1996) ......................................................................5

*O'Connor v. Sandy Lane Hotel Co. Ltd.*,
   496 F.3d 312 (3rd Cir. 2007) ....................................................................8

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ...............................................................4, 14

*Patent Incentives, Inc. v. Seiko Epson Corp.*,
   No. 88-1407, 1988 WL 92460 (D.N.J. Sept. 6, 1988) ..............................10

iv

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) ................................................................................7

*Perrigo Co. v. Merial Ltd.*,
    No. 1:15-CV-0013-SCJ, 2016 WL 6106744 (N.D. Ga. Oct. 6, 2016) .....................6

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ...............................................................6

*Ruston Gas Turbines, Inc. v. Donaldson Co.*,
    9 F.3d 415 (5th Cir. 1993) ................................................................17

*Sealed Appellant 1 v. Sealed Appellee 2*,
    625 Fed. Appx. 628 (5th Cir. Aug. 17, 2015) ................................................4

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ...............................................................4

*SGI Air Holdings II LLC v. Novartis Iner. AG*,
    238 F. Supp. 2d 1161 (D. Colo. 2003) .....................................................12

*Sloss Indus. Corp. v. Eurisol*,
    488 F.3d 922 (11th Cir. 2007) .............................................................5

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) ...........................................................10

*Steel Warehouse of Wisconsin, Inc. v. Leach*,
    154 F.3d 712 (7th Cir. 1998) ...............................................................8

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) ................................................................5

*Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co. Ltd.*,
    682 F.3d 292 (4th Cir.) ....................................................................8

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................15

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ..................................................................6, 8

*Whitener v. Pliva, Inc.*,
    606 Fed. Appx. 762 (5th Cir. Apr. 9, 2015) ................................................8

*Williams v. ROMARM*,
    187 F. Supp. 3d 63, 71 (D.D.C. 2013), *aff'd, Williams v. Romarm, SA*, 756
    F.3d 777 (D.C. Cir. 2014) ..................................................................8

*Williams v. Yamaha Motor Co., Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ...................................................................................8, 12, 14

*Wiwa v. Royal Dutch Petroleum*,
    226 F.3d 88 (2d Cir. 2000)..........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)...........................................................................................1, 3, 4

Defendants Sanofi[1] and Aventis Pharma S.A. (collectively, the "French Defendants") are French corporate affiliates of Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively, the "U.S. Defendants").  The French Defendants conduct no business in the United States and have no contacts with the United States that would support the exercise of personal jurisdiction in this case.  Nor can the jurisdictional contacts of the U.S. Defendants be imputed to the French Defendants; all corporate formalities are maintained between Sanofi and the U.S. Defendants, and Sanofi does not exercise day-to-day control over the activities of the U.S. Defendants.  Because Plaintiffs can demonstrate no facts that would establish personal jurisdiction over the French Defendants, all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## I.  <u>INTRODUCTION</u>

Plaintiffs in this multidistrict litigation allege that they have experienced permanent hair loss and other personal injuries resulting from their use of chemotherapy drug Taxotere®.[2] Contending that this side effect was concealed from them and the Federal Food and Drug Administration ("FDA"), Plaintiffs assert legal claims for failure to warn, misrepresentation, negligence, fraud, and breach of warranty.  *See* Doc. 312, Master Long Form Complaint and Demand for Jury Trial ("Compl.") ¶¶ 4-11, 221-312.

But in addition to suing the entity that marketed, sold, and distributed Taxotere® in the United States, and the entity that holds the New Drug Application ("NDA") for Taxotere® and is responsible for communicating with FDA regarding the drug's label—namely, Defendant sanofi-

---

[1] Plaintiffs incorrectly refer to Sanofi as Sanofi S.A.  While Sanofi is organized under French law as a Société Anonyme, the corporate designation is not part of the Company's name.

[2] Taxotere® is also known by the name of its generic equivalent, docetaxel.

1

aventis U.S. LLC[3]—Plaintiffs have also filed suit against French corporate affiliates Sanofi and Aventis Pharma S.A.  These French Defendants have no relevant contacts with any of the forums in which Plaintiffs' lawsuits were filed.  They are incorporated and have principal places of business in France.  They conduct no business whatsoever in the United States, let alone have researched, developed, tested, manufactured, labeled, advertised, marketed, promoted, sold, or distributed Taxotere® anywhere in this country.  Finally, the dismissal of these entities from this lawsuit will not prejudice Plaintiffs' ability to obtain relevant evidence related to adverse events, labeling decisions, clinical study data, marketing and promotional materials, and/or correspondence with FDA because evidence of this nature is maintained with the U.S. Defendants.

Nor does the relationship among the French Defendants, sanofi-aventis U.S. LLC, and Sanofi US Services Inc. justify imputing the jurisdictional contacts of one defendant to all of them.  Contrary to the suggestions made in Plaintiffs' complaint, Sanofi is merely the indirect parent holding company of sanofi-aventis U.S. LLC and Sanofi US Services Inc., and it observes all corporate formalities with respect to those subsidiaries.  There is likewise no support for Plaintiffs' conclusory allegations that Sanofi controls or directs the day-to-day operations of sanofi-aventis U.S. LLC or Sanofi US Services Inc. The facts instead demonstrate that Sanofi's conduct is entirely appropriate and typical of a parent company.

Sanofi-aventis U.S. LLC and Sanofi US Services Inc. have not challenged this Court's exercise of personal jurisdiction.  The French Defendants, by contrast, have no contacts with the United States sufficient to establish either general or specific personal jurisdiction over them. Accordingly, all of Plaintiffs' claims against the French Defendants must be dismissed.

---

[3] Plaintiffs have also named as a defendant Sanofi US Services Inc., which is the service provider to, and the sole shareholder of, sanofi-aventis U.S. LLC.  Exhibit A, Declaration of Claire Terrazas, ¶¶ 7, 10.

## II.   <u>BACKGROUND FACTS</u>

Sanofi is a French corporation with its principal place of business and headquarters located at 54, Rue La Boetie, Paris.   Exhibit A, Declaration of Claire Terrazas ("Terrazas Decl."), ¶ 2.   Sanofi engages in diversified corporate investments, and it currently has approximately 350 subsidiaries throughout the world.  *Id.* ¶ 3.  Sanofi has no employees in the United States.  *Id.* ¶ 12.

Aventis Pharma S.A., sanofi-aventis U.S. LLC, and Sanofi US Services Inc. are indirect wholly-owned subsidiaries of Sanofi.  *Id.* ¶¶ 8-10.  Aventis Pharma S.A. is a French corporation with its principal place of business and headquarters at 20 Avenue Raymond Aron 92160 Antony, France.  *Id.* ¶ 4.  Aventis Pharma S.A. has no employees in the United States.  *Id.* ¶ 5.

Sanofi-aventis U.S. LLC is a Delaware limited liability company with its principal place of business and headquarters in New Jersey.  *Id.* ¶ 6.   Sanofi US Services Inc. is a Delaware corporation with its principal place of business and headquarters in New Jersey.  *Id.* ¶ 7.

As a holding company, Sanofi does not own or lease any manufacturing sites, development centers, or distribution hubs in the United States.  *Id.* ¶ 17.  Likewise, it has no sales force and does not sell products or services anywhere in the world, let alone in the United States. *Id.* ¶ 13. Sanofi and Aventis Pharma S.A. do not conduct business or maintain places of business anywhere in the United States.  *Id.* ¶ 14.  They are not qualified, registered, or licensed to do business anywhere in the United States. *Id.* ¶ 15.  They do not maintain a registered agent, telephone numbers, mailing addresses, or bank accounts anywhere in the United States.  *Id.* ¶¶ 16, 18.  They do not lease or own any real or personal property located in the United States.  *Id.* ¶ 17.  They do not pay taxes in the United States. *Id.* ¶ 19.  They have not researched, developed,

tested, manufactured, labeled, advertised, marketed, promoted, sold, or distributed Taxotere® in the United States.  *Id.* ¶ 11.

Sanofi, Aventis Pharma S.A., sanofi-aventis U.S. LLC, and Sanofi US Services Inc. are separate and distinct corporate entities.  *Id.* ¶¶ 2, 4, 6-8, 10, 21-22, 26-28.  Sanofi maintains the required corporate formalities between it and Aventis Pharma S.A., sanofi-aventis U.S. LLC, and Sanofi US Services Inc.  *Id.* ¶¶ 38-40.  Sanofi does not control the day-to-day operations of sanofi-aventis U.S. LLC or Sanofi US Services Inc.  *Id.* ¶ 33.  There are no shared employees between Sanofi and sanofi-aventis U.S. LLC, or between Sanofi and Sanofi US Services Inc.  *Id.* ¶ 36.  None of the members of the Sanofi Board of Directors is also a member of the governing bodies of sanofi-aventis U.S. LLC or Sanofi US Services Inc.  *Id.* ¶¶ 26-28.[4]

## III.   LEGAL STANDARDS AND ARGUMENT

Plaintiffs bear the burden of establishing personal jurisdiction.  *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  As part of this inquiry, the court need not "credit conclusory allegations, even if uncontroverted."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  Nor will hearsay evidence defeat a motion for dismissal for lack of personal jurisdiction.  *Sealed Appellant 1 v. Sealed Appellee 2*, 625 Fed. Appx. 628, 631 (5th Cir. Aug. 17, 2015).  Instead, plaintiffs must "establish a prima facie case of personal jurisdiction through nonconclusory allegations supported by admissible evidence."  *Id.*

Personal jurisdiction over claims against a nonresident defendant exists only when the applicable state's long-arm statute confers jurisdiction and the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  *Seiferth v. Helicopteros Atuneros,*

---

[4] Additional facts related to these Defendants are contained in the Terrazas Declaration.  *See generally* Exhibit A.

4

*Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).[5]  Because this Court is sitting as an MDL transferee

court, it must apply the long-arm statute of the 42 states[6] in which each transferor court is

located.  *In re Chinese Manufactured Drywall Prods.*, 742 F.3d 576, 538 & n.8 (5th Cir. 2014);

*see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. CIV.A. H-10-

171, 2011 WL 1232352, at *3 (S.D. Tex. Mar. 31, 2011) ("A transferee court's jurisdiction over

a defendant depends on whether the transferor court had personal jurisdiction."); *Lewis v.*

*Johnson & Johnson*, 991 F. Supp. 2d 748, 752-53 (S.D.W.Va. 2014) ("[T]he law of the

transferee circuit controls pretrial issues such as whether the court has subject matter or personal

jurisdiction over the action.") (quotations omitted).  The long-arm statutes of 37 of these states

extend as far as the Due Process Clause of the Fourteenth Amendment.  Accordingly, the

overarching inquiry in this case is whether the exercise of personal jurisdiction over the French

Defendants is consistent with constitutional due process.[7]    *See, e.g., Jackson v. Tanfoglio*

*Giuseppe*, 615 F.3d 579, 587 (5th Cir. 2010).

---

[5] *See also Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994); *Metropolitan Life Ins. Co. v. Robertson-Ceco* Corp, 84 F.3d 560, 566 (2d Cir. 1996); *Imo Industries, Inc. v. Kiekert AG,* 155  F.3d 254, 258-59 (3d Cir. 1998);  *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012); *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548-49 (7th Cir. 2004); *Minnesota Min. & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 696 (8th Cir. 1995); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir.1994); *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007);  *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000).

[6] One United States territory—Puerto Rico—is also a transferor forum.  For simplicity, however, this motion refers to all underlying forums as "states."

[7] The underlying actions comprising this MDL were originally filed in the following jurisdictions: Alabama, Arizona, Arkansas, California, Colorado, Delaware, District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, New Jersey, New Mexico, New York, Ohio, Oregon, Oklahoma, Pennsylvania, Puerto Rico, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia,

Due process requires that a nonresident defendant have "certain minimum contacts" with the forum state—here, each of the various transferor jurisdictions—"such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quotations omitted). The constitution's minimum-contacts requirement gives rise to two types of personal jurisdiction: general (or all-purpose) and specific (or case-linked). *Luv N' care*, 438 F.3d at 469.[8] Because Plaintiffs have not alleged, and cannot prove, contacts with any of the transferor forums sufficient to establish either general or specific personal jurisdiction over the French Defendants, all claims against them must be dismissed.

---

and Wisconsin. *See* Exhibit B (listing all underlying actions). And while the long-arm statutes of Georgia, Mississippi, New York, Kentucky, and Ohio are more limited in scope than the requirements under federal due process, the analysis in this case remains the same because Plaintiffs must still establish compliance with that constitutional threshold even if the long-arm statutes are satisfied (a point the French Defendants do not concede). *See, e.g.*, *Perrigo Co. v. Merial Ltd.*, No. 1:15-CV-0013-SCJ, 2016 WL 6106744, at *11 (N.D. Ga. Oct. 6, 2016) (explaining that a plaintiff must satisfy both Georgia's long-arm statute and due process's minimum-contacts requirement); *Adams v. John M. O'Quinn & Assocs., PLLC*, No. 416CV00071GHDJMV, 2017 WL 1091879, at *4 (N.D. Miss. Mar. 22, 2017) (noting that Mississippi's long-arm statute is not coextensive with federal due process, and that a plaintiff must satisfy both state and federal minimum-contacts standards); *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, No. 15-CV-06478 (ALC), 2016 WL 7451306, at *3 & n.4 (S.D.N.Y. Dec. 27, 2016) (recognizing that New York's long-arm statute may not reach as far as due process and analyzing jurisdictional contacts under both the state and federal standards); *Modern Holdings, LLC v. Corning Inc.*, No. 13-405, 2015 WL 1481443, at *5 (E.D. Ky. Mar. 31, 2015) (holding that "jurisdiction must comport with both the long arm statute and federal due process, requiring a two-step analysis."); *Conn v. Zakharov*, 667 F.3d 705, 711–12 (6th Cir. 2012) ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa."). For the Court's reference, Exhibit C includes each state's long-arm statute and case law setting forth the relationship between the statute and federal due process.

[8] *See also Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). *See also Daimler*, 134 S. Ct. at 757 (referring to general personal jurisdiction as "all-purpose" jurisdiction); *id.* and *Goodyear Dunlop Tires Opers. v. Brown*, 564 U.S. 915, 918 (2011) (referring to specific personal jurisdiction as "case-linked" jurisdiction).

A.     **The Court Lacks General Personal Jurisdiction Over the French Defendants.**

General jurisdiction exists when the defendant's "affiliations with the [forum] state are so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quotations omitted).  A corporation is typically "at home" solely in its state of incorporation and the location of its principal place of business.  *Id.* at 760-61 & n.19.  Only "exceptional" cases subject defendants to general personal jurisdiction elsewhere.  *Id.*; *see also Monkton v. Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that it is "incredibly difficult" to demonstrate general jurisdiction in other forums).[9]

In this case, it is undisputed that the French Defendants are not incorporated anywhere in the United States and do not have principal places of business anywhere in the United States.  To the contrary, they are French domiciliaries organized under the laws of France with French headquarters and principal places of business.  *See* Terrazas Decl. ¶¶ 2, 4; Compl. ¶¶ 12-13.

Nor does Plaintiffs' complaint include any allegations of continuous and systematic contacts between the French Defendants and any of the transferor forums that render this an "exceptional" case justifying personal jurisdiction.  Indeed, the complaint alleges no contacts whatsoever between the French Defendants and any state that remotely suggest the French Defendants are "at home" in that state rather than in France.  And such contacts could not be plausibly alleged in any event: as set forth in the Terrazas Declaration, the French Defendants conduct no business in the United States, have no employees in the United States, maintain no mailing address in the United States, own no real or personal property in the United States, and pay no taxes in the United States.  *See* Terrazas Decl. ¶¶ 5, 12, 14, 17-19.

---

[9] As an example of an "exceptional" case, the Supreme Court identified *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), in which a Philippine corporation suspended Philippine business activity during the country's Japanese occupation and moved its temporary activities to Ohio.  The facts in this case undoubtedly do not rise to this level.

Accordingly, general personal jurisdiction does not exist over the French Defendants with respect to any of the underlying actions in this MDL. *See, e.g.*, *Whitener v. Pliva, Inc.*, 606 Fed. Appx. 762, 764-65 (5th Cir. Apr. 9, 2015) (no general personal jurisdiction over the Israeli parent of a pharmaceutical company that allegedly sold a morning sickness drug causing personal injury).

## B. Plaintiffs Have Likewise Demonstrated No Facts Supporting Specific Personal Jurisdiction.

For purposes of specific personal jurisdiction, the constitutional minimum-contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct at 1121. Jurisdiction is absent unless "the defendant's suit-related conduct . . . creates a substantial connection with the forum State." *Id.*

A three-step analysis governs the inquiry for each of the transferor jurisdictions at issue in this MDL. First, through its contacts with the forum, the defendant must have purposely directed its activities toward the forum or purposely availed itself of the privileges of conducting activities there. Second, the plaintiff's causes of action must arise out of those forum-related contacts. Third, the exercise of personal jurisdiction must be fair and reasonable.[10]

---

[10] *C.W. Downer & Co. v. Biorginal Food & Science Corp.*, 771 F.3d 59 (1st Cir. 2014); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir.); *O'Connor v. Sandy Lane Hotel Co. Ltd.*, 496 F.3d 312 (3rd Cir. 2007); *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co. Ltd.*, 682 F.3d 292 (4th Cir.); *Monkton*, 768 F.3d at 433; *AlixPartners, LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016); *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712 (7th Cir. 1998); *Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, (9th Cir. 2017); *Anzures v. Flagship Restaurant Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013); *Williams v. ROMARM*, 187 F. Supp. 3d 63, 71 (D.D.C. 2013), *aff'd*, *Williams v. Romarm, SA*, 756 F.3d 777 (D.C. Cir. 2014). Although the Eighth Circuit has established a five-factor test to determine whether a defendant's contacts are sufficient to create specific personal jurisdiction, each of those factors are subsumed within the three steps of the traditional analysis. *See Fastpath Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (the five-factor test considers "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the

In this case, the inquiry ends at the first and second steps.  *See, e.g.*, *Lee v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 194, 201 (D.P.R. 2010) ("Since Plaintiff cannot meet the relatedness inquiry, the Court finds there is no specific jurisdiction and, therefore, the Court need not address the reasonableness and purposeful availment requirements.").   The French Defendants have not directed any activity whatsoever toward any of the 42 states at issue in this litigation relating to the purported failure to warn about Taxotere's alleged side effects.   Contrary to Plaintiffs' blanket allegations, the French Defendants have not engaged in the research and development, testing, manufacturing, labeling, advertising, marketing, promoting, selling, or distributing of Taxotere® anywhere in the United States.  Compl. ¶¶ 12-13; Terrazas Decl. ¶ 11.  The French Defendants do not have "manufacturing sites," "development centers," or "distribution hubs" anywhere in the United States; the facilities identified in Plaintiffs' complaint are instead owned and operated by other entities.  Compl. ¶ 25; Terrazas Decl. ¶ 17.  The French Defendants do not have employees located in the United States.  Terrazas Decl. ¶¶ 5, 12.  The French Defendants did not submit an NDA for Taxotere® to the United States Food and Drug Administration ("FDA"), nor are they the holders of the approved NDA for Taxotere®.  *Id.* ¶¶ 11, 48.  They likewise did not submit any labeling-related applications for Taxotere® to the FDA.  *Id*. ¶¶ 47-48

Attempting to manufacture Taxotere®-related contacts where none actually exist, Plaintiffs' complaint improperly alleges various research and marketing activities taken on behalf of all "Sanofi" defendants generally and presumably occurring somewhere in the United States.  *See, e g.*, Compl. ¶¶ 121-137, 149, 151, 183, 188, 191-213.  But Plaintiffs' burden is to establish that *these particular French Defendants* engaged in suit-related conduct with respect to

relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties.").

*each of the 42 jurisdictions* at issue in this MDL.  Plaintiffs' broad-brush allegations lack the required specificity on both these fronts.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("[V]ague and conclusory allegations are . . . insufficient to establish a prima facie case of personal jurisdiction.").  Moreover, these allegations are rebutted by the Terrazas declaration, which details the total lack of contacts between either of the French Defendants and the United States.  *See generally* Terrazas Declaration.

Finally, the Court should reject Plaintiffs' suggestion that Aventis Pharma S.A.'s alleged conduct with respect to one or more Taxotere® patents is sufficient to confer personal jurisdiction over it in this matter.  *See* Compl. ¶¶ 13-14.  Plaintiffs' claims involve personal injuries allegedly resulting from the failure to warn about Taxotere's alleged side effects and thus do not arise from any patent-related contacts that Aventis Pharma S.A. may have.  *See Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265, 271 (D.D.C. 1998) (stating that it is "ludicrous" to maintain that a defendant consents to the jurisdiction of a particular forum "for all time . . . and for all purposes, simply because [it] once chose to sue [there]."); *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12-3419, 2017 WL 1113080, at *7 (S.D.N.Y. Mar. 10, 2017) ("[W]hether a foreign holding company concedes to jurisdiction in an unrelated case 'does not factor into the personal jurisdiction analysis . . . because a party's consent to jurisdiction in one case . . . extends to that case alone.") (quotations omitted); *Patent Incentives, Inc. v. Seiko Epson Corp.*, No. 88-1407, 1988 WL 92460, at *5 (D.N.J. Sept. 6, 1988) (holding that "the only acts of [the defendant] which are material to this Court's [specific] jurisdiction inquiry are those which specifically relate to plaintiff's . . . claims.").

The same is true with respect to Plaintiffs' invitation to exercise jurisdiction over Sanofi because its shares are traded on the New York Stock Exchange—a fact that, again, bears no

relationship to Plaintiffs' claims.  *See* Compl. ¶ 12; *Wiwa v. Royal Dutch Petroleum*, 226 F.3d 88, 97 (2d Cir. 2000) ("[F]oreign corporations [have] substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings . . . without thereby subjecting themselves to New York jurisdiction for unrelated occurrences.").

Put simply, the French Defendants have conducted no forum-related activities with respect to the purported failure to warn about Taxotere's alleged side effects.  They are not subject to specific personal jurisdiction in any of the underlying forums and must be dismissed from this MDL.

### C.   No Agency or Alter-Ego Relationship Exists that Warrants Imputing the Contacts of Sanofi-Aventis U.S. LLC and/or Sanofi US Services Inc. to the French Defendants.

Recognizing the total absence of relevant contacts between the French Defendants and the United States, Plaintiffs attempt to paint Sanofi as an overinvolved parent that directs the operations of, or acts vicariously through, sanofi-aventis U.S. LLC and/or Sanofi US Services Inc.  But while it may be appropriate to impute the jurisdictional contacts of a domestic subsidiary to its foreign parent in certain, limited circumstances, the relationship between Sanofi and its U.S. subsidiaries falls far short of that mark.[11]

Generally, a nonresident corporation is not subject to the jurisdiction of the foreign state merely because a subsidiary is doing business there.  *See, e.g.*, *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990); *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001), *abrogated on other*

---

[11] It appears that sanofi-aventis U.S. LLC and Sanofi US Services, Inc. are subject to specific personal jurisdiction in each of the transferor forums at issue in this MDL.  In addition, because those entities' principal places of business are in New Jersey, it appears that they are subject to both specific and general personal jurisdiction in that forum.  However, because Plaintiffs must demonstrate that jurisdiction lies in every state involved in this MDL—i.e., more than New Jersey alone—Plaintiffs' imputation-of-contacts argument must necessarily be premised on specific, rather than general, jurisdiction.  *Accord Daimler*, 134 S. Ct. at 759 n.13.

*grounds by Daimler*, 134 S. Ct. at 759. Instead, the imputation of a subsidiary's contacts are permitted—if at all—only when the relationship between the subsidiary and parent are typified by parental control of the subsidiary's internal affairs or daily operations. *See, e.g.*, *Doe*, 248 F.3d at 926; *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25, (9th Cir. 2017) ("[T]he parent company must have the right to substantially control its subsidiary's activities" for contacts to be imputed). This requires a showing that the subsidiary's "corporate existence was simply a formality, and that it was merely [the parent's] agent." *Consol Dev. Corp.*, 216 F.3d at 1294. The parent must "so dominate[] the subsidiary that they do not in reality constitute separate and distinct corporate entities." *Dalton*, 897 F.2d at 1363. Control over "day-to-day operations" is necessary. *Hargrave v. Fibreboard Corp*, 710 F.2d 1154, 1160 (5th Cir. 1983); *accord Arch v. Am. Tob., Inc.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997). In contrast, "[w]here the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Consol. Dev. Corp.*, 216 F.3d at 1293.[12] *Accord Jackson*, 615 F.3d at 586 ("The theory is that, because the two corporations . . . are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other" (quotations and alternations omitted); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990) (actual control over the subsidiary, an agency

---

[12] The imputation of jurisdictional contacts is variously analyzed in the context of both "agency" and "alter ego" theories. And while each state is governed by its own specific articulation of these concepts, the overarching analysis is substantively similar. *See Administrators of Tulane Educ.'al Fund v. Ipsen, S.A.*, 450 Fed. Appx. 326, 330 n.5 (5th Cir. 2011) (instructing a court sitting in diversity to analyze the applicable state's alter-ego test for purposes of imputing jurisdictional contacts, but noting that the various state and federal tests "are essentially the same."); *see also SGI Air Holdings II LLC v. Novartis Iner. AG*, 238 F. Supp. 2d 1161, 1166 (D. Colo. 2003) (explaining the overlap between agency and alter-ego theories for purposes of personal jurisdiction). For the Court's reference, Exhibit D sets forth the standards at issue in this MDL. Defendants reserve the right to respond to any specific arguments relating to these standards that Plaintiffs may advance in their opposition brief.

relationship, or the existence of the subsidiary "in name alone" justifies imputing the subsidiary's contacts to the parent).

In this case, Sanofi[13] maintains all corporate formalities with respect to sanofi-aventis U.S. LLC and Sanofi US Services Inc.  Plaintiffs thus have "a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Admins. of Tulan Educ.'al Fund v. Ipsen, S.A.*, 450 Fed. Appx. 326, 331 (5th Cir. Aug. 30, 2011); *see also Jackson*, 615 F.3d at 587 ("Even where some factors suggest that one entity is the alter ego of another, the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos.").  Sanofi-aventis U.S. LLC and Sanofi US Services Inc. are governed independently of Sanofi.  Terrazas Decl. ¶¶ 26-28.  None of the members of the Sanofi Board of Directors is also a member of the sanofi-aventis U.S. LLC Board of Managers or the Sanofi US Services Inc. Board of Directors.  *Id.* ¶¶ 27-28.  There are no shared employees between Sanofi and sanofi-aventis U.S. LLC, or between Sanofi and Sanofi US Services Inc.  *Id.* ¶ 36.  Sanofi maintains books and records separately from sanofi-aventis U.S. LLC and Sanofi US Services Inc., including corporate records relating to finances, taxes, salaries, and other expenses.  *Id.* ¶ 37.  Sanofi does not pay the salaries, expenses or losses of sanofi-aventis U.S. LLC or Sanofi US Services Inc.  *Id.* ¶ 41.  Sanofi-aventis U.S. LCC and Sanofi US Services Inc. manage their assets

---

[13] In contrast to Sanofi, the allegations in Plaintiffs' complaint do not suggest an agency or alter-ego relationship between Aventis Pharma S.A. and the U.S. Defendants.  Nor could such a relationship be plausibly alleged, as Aventis Pharma has no ownership interest (direct or indirect) in either of the U.S. Defendants, rendering the requisite degree of control or organizational unity inconceivable.  *See* Terrazas Decl. ¶ 8.  Instead, it appears that Plaintiffs might seek to impute the contacts of the U.S. Defendants to Sanofi, and then impute those contacts to Aventis Pharma S.A.  Undersigned counsel is unaware of authority that so stretches the bounds of personal jurisdiction.  Regardless, the U.S. Defendants' contacts cannot be imputed to Sanofi, which moots any double-counting proposal Plaintiffs might advance.

independently of Sanofi.  *Id.* ¶ 43.  And sanofi-aventis U.S. LLC and Sanofi US Services Inc. are adequately capitalized.  *Id.* ¶ 32.

Given the observance of corporate formalities, Plaintiffs are relegated to unfounded allegations regarding Sanofi's purported control over sanofi-aventis U.S. LLC and Sanofi US Services Inc.  Sanofi does not, for example, provide manufacturing advice or instructions to either sanofi-aventis U.S. LLC or Sanofi US Services Inc.  *Id.* ¶ 34; Compl. ¶ 22.   Nor does it not direct their sales forces or manage their operational risks.  Terrazas Decl. ¶ 34; Compl. ¶ 22. And Plaintiffs' assertions that Sanofi is the "alter ego" of sanofi-aventis U.S. LLC or Sanofi US Services Inc., and that these entities are "agents" of Sanofi, are conclusions of law entitled to no weight for purposes of determining personal jurisdiction.  Compl. ¶ 19; *Williams*, 851 F.3d at 1025 n.5, (allegations that "Defendants . . .  were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment" should be disregarded when determining the existence of a corporate relationship sufficient to impute jurisdictional contacts); *Panda Brandywine Corp.*, 253 F.3d at 869 (explaining that the court need not credit conclusory allegations, including those made "on information and belief").

Other allegations in the complaint simply typify a conventional parent-subsidiary relationship; they do not demonstrate the type of day-to-day managerial or operational control necessary to support a finding of agency or alter-ego status.  For example, allegations with respect to a parent's involvement in the formulation of general business strategies, establishment of human resources policies, and maintenance of a consistent marketing program applicable to the subsidiary are insufficient to impute the subsidiary's jurisdictional contacts to the parent.  *See Ranza*, 793 F.3d at 1074; *see also Ipsen*, 450 Fed. Appx. at 330 (holding that "general guidance," as well as control or oversight over the subsidiary's general operations, research, budget, and

14

purpose is insufficient to impute jurisdictional contacts to the parent); *United States v. Bestfoods*, 524 U.S. 51, 72 (1998) ("[M]onitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures" is "consistent with the parent's investor status"); *Jackson*, 615 F.3d at 587-88 (no alter-ego relationship despite the fact that the entities' "brands and products appear identical and their business relationships are deeply intertwined."); *Dalton*, 897 F.2d at 1363 (100% ownership, shared general policy, centralized bank accounts, and a benefit plan from the parent to the subsidiary's employees do not demonstrate alter ego relationship when the parent also observes corporate formalities, makes its subsidiary responsible for daily operations, and keeps separate books and records); *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263 (E.D.N.Y. 2010) ("[S]tatements of global cooperation among a parent and its subsidiaries," including an "advertising strategy deciding not to present . . . the existence of a parent-subsidiary relationship", do not support a finding of pervasive control necessary to impute jurisdictional contacts); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 492 (S.D.N.Y. 2013) ("The description of [the parent company] as an 'integrated international oil and gas company' does not stand for the proposition that [the parent] 'participates directly in the business of its subsidiaries.'").

Indeed, myriad courts have dismissed foreign parent- or holding-company defendants in analogous circumstances. *See, e.g.*, *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (no personal jurisdiction over the Swiss holding company of a drug manufacturer in product defect/failure to warn case; the Swiss holding company conducted no advertising, manufacturing, distribution, or sales activities in the United States); *Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F. Supp. 3d 1187, 1191-93, 1195-96 (E.D. La. 2016) (no

15

personal jurisdiction over a Japanese pharmaceutical company in product defect/failure to warn case; there were no allegations that the company conducted any business or signed a pharmaceutical licensing agreement in Louisiana); *Arch*, 984 F. Supp. at 835-841 (no personal jurisdiction over British and Welsh tobacco holding company; there was no evidence of anything other than a "normal holding company/subsidiary relationship" that would permit imputing the subsidiary's Pennsylvania contacts to the foreign holding company); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) (no personal jurisdiction over Swedish holding company, despite 100% stock ownership of subsidiary, when the plaintiffs had not put forth evidence that the holding company financed the operations of the subsidiary, paid the salaries and other expenses of the subsidiary, used the subsidiary's property as its own, or failed to observe corporate formalities); *Meier v. Wright Med. Tech., Inc.*, No. 14-cv-505, 2015 WL 1486688, at *6 (W.D. Wis. Mar. 31, 2015) (no personal jurisdiction over parent company when the only evidence supporting jurisdiction was simply its existence as "the parent corporation of at least one entity that designs, manufactures, markets, promotes, distributes and sells the accused products.").

At bottom, Sanofi exercises no more control over sanofi-aventis U.S. LLC and Sanofi US Services Inc. than is appropriate for an ultimate parent company.  There is no basis for finding an agency or alter-ego relationship that would permit the jurisdictional contacts of sanofi-aventis U.S. LLC and Sanofi US Services Inc. to be imputed to Sanofi.

### D.      The Exercise of Jurisdiction Would Not Be Fair or Reasonable.

Even if the French Defendants' direct or imputed contacts with the various forum states in this MDL were minimally sufficient to establish personal jurisdiction (which they are not), Plaintiffs cannot demonstrate that the exercise of jurisdiction would be fair and reasonable.  *See,*

*e.g.*, *Monkton*, 768 F.3d at 433.  "Gauging fairness requires an assessment of reasonableness for, in certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness."  *Harlow v. Children's Hosp.*, 432 F.3d 50, 66 (1st Cir. 2005). Relevant factors to the reasonableness inquiry include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* at 67; *accord Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

"The reasonableness prong of the due process inquiry evokes a sliding scale."  *Harlow*, 432 F.3d at 67 (quotations and alteration omitted).  Thus, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness."  *Id.* (quotations omitted).

In this case, there are no interests that counterbalance the burden on French Defendants if they were made to appear in the litigation.  The U.S. Defendants are adequately capitalized and have substantial assets that could satisfy any judgment in this case.  Terrazas Decl. ¶ 32. Moreover, the evidence relevant to Plaintiffs' claims is within the possession of the U.S. Defendants.

Put simply, dismissal of the French Defendants will not prejudice Plaintiffs' case because Plaintiffs can adequately prosecute their claims against the U.S. Defendants only.  The U.S. Defendants oversaw the reporting of adverse events, U.S. labeling decisions, collection of clinical study data, and creation of U.S. marketing and promotional materials.  Further, they were

the entities responsible for correspondence with FDA regarding the safety, efficacy, and warnings for the Taxotere® allegedly used by all of the plaintiffs in this MDL. Any relevant evidence related to Plaintiffs' legal claims for alleged failure to warn, misrepresentation, negligence, fraud, and breach of warranty will rest with the U.S. Defendants. Accordingly, there is no reason, let alone a reasonable one, to import the French Defendants into this litigation.

## IV.   <u>CONCLUSION</u>

Plaintiffs cannot demonstrate facts sufficient to establish personal jurisdiction over the French Defendants. They respectfully request that the Court dismiss all claims against them.

Respectfully Submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com


Harley V. Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com

*Counsel for Sanofi and Aventis Pharma S.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.


*/s/ Douglas J. Moore*