1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2
     ************************************************************
3    IN RE:  TAXOTERE (DOCETAXEL)
     PRODUCTS LIABILITY LITIGATION
4                                        MDL No. 16-2740
     VS.                                 Section "N"
5                                        New Orleans, Louisiana
                                         May 12, 2017
6    THIS DOCUMENT RELATES TO
     ALL CASES
7
     ************************************************************
8
          TRANSCRIPT OF STATUS CONFERENCE WITH STEERING COMMITTEES
9          HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                     UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12   FOR THE PLAINTIFFS:              MS. DAWN M. BARRIOS
                                      Barrios Kingsdorf & Casteix
13                                    701 Poydras Street
                                      Suite 3650
14                                    New Orleans, Louisiana  70139

15                                    MR. M. PALMER LAMBERT
                                      Gainsburgh Benjamin David
16                                      Meunier & Warshauer
                                      1100 Poydras Street
17                                    Suite 2800
                                      New Orleans, Louisiana  70163
18
                                      MR. CHRISTOPHER L. COFFIN
19                                    Pendley, Baudin & Coffin
                                      1515 Poydras Street
20                                    Suite 1400
                                      New Orleans, Louisiana  70112
21
                                      MS. KAREN B. MENZIES
22                                    Gibbs Law Group
                                      400 Continental Boulevard
23                                    6th Floor
                                      El Segundo, California  90245
24

25

```
 1                              MR. J. KYLE BACHUS
                                Bachus & Schanker
 2                              1899 Wynkoop Street
                                Suite 700
 3                              Denver, Colorado  80202

 4                              MR. LAWRENCE J. CENTOLA
                                Martzell Bickford & Centola
 5                              338 Lafayette Street
                                New Orleans, Louisiana  70130
 6
                                MS. EMILY JEFFCOTT
 7                              The Lambert Firm
                                701 Magazine Street
 8                              New Orleans, Louisiana  70130

 9                              MS. ABBY E. McCLELLAN
                                Stueve Siegel Hanson
10                              460 Nichols Road
                                Suite 200
11                              Kansas City, Missouri  64112

12                              MR. DANIEL P. MARKOFF
                                Atkins & Markoff Law Firm
13                              9211 Lake Hefner Parkway
                                Suite 104
14                              Oklahoma City, Oklahoma  73120

15                              MR. DAVID F. MICELI
                                Simmons Hanly Conroy
16                              One Court Street
                                Alton, Illinois  62002
17
                                MR. RAND P. NOLEN
18                              Fleming, Nolen & Jez
                                2800 Post Oak Boulevard
19                              Suite 4000
                                Houston, Texas  77056
20
                                MR. HUNTER J. SHKOLNIK
21                              Napoli Shkolnik
                                360 Lexington Avenue
22                              11th Floor
                                New York, New York  10017
23
                                MS. GENEVIEVE M. ZIMMERMAN
24                              Meshbesher & Spence
                                1616 Park Avenue South
25                              Minneapolis, Minnesota  55404
```

```
 1    FOR SANOFI S.A.:              MR. DOUGLAS J. MOORE
                                    Irwin, Fritchie,
 2                                     Urquhart & Moore
                                    400 Poydras Street
 3                                  Suite 2700
                                    New Orleans, LA  70130
 4

 5                                  MR. HARLEY V. RATLIFF
                                    MR. JON STRONGMAN
 6                                  Shook, Hardy & Bacon
                                    2555 Grand Boulevard
 7                                  Kansas City, Missouri  64108

 8
      FOR HOSPIRA                   MR. JOHN F. OLINDE
 9    WORLDWIDE, LLC:               Chaffe McCall
                                    2300 Energy Centre
10                                  1100 Poydras Street
                                    New Orleans, LA  70163
11

12    FOR SANDOZ, A NOVARTIS        MR. R. CLIFTON MERRELL
      DIVISION:                     Greenburg Traurig
13                                  Terminus 200
                                    3333 Piedmont Road, NE
14                                  Atlanta, GA  30305

15
      FOR ACCORD HEALTHCARE,        MR. CHAD A. SULLIVAN
16    INC.:                         Keogh Cox & Wilson
                                    701 Main Street
17                                  Baton Rouge, Louisiana  70802

18
      FOR SUN PHARMA GLOBAL,        MR. GEOFFREY COAN
19    INC.:                         Hinshaw & Culbertson
                                    28 State Street
20                                  24th Floor
                                    Boston, Massachusetts  02109
21

22    Official Court Reporter:     Lanie M. Smith, RPR, CRR
                                    500 Poydras Street, B-275
23                                  New Orleans, Louisiana 70130
                                    (504) 589-7782
24
           Proceedings recorded by mechanical stenography,
25    transcript produced via computer.
```

<u>**P R O C E E D I N G S**</u>

THE COURT:  Sorry about the delay.  I know we have a few things we want to cover here.

If you have not signed in, there should be a sign-in sheet.  Okay.  It's over there on the gallery wall there.

All right.  This is the meeting of the committees for the MDL No. 2740, *In re:  Taxotere (Docetaxel) Products Liability Litigation*.  I just met with liaison counsel briefly prior to this meeting.  We'll have this meeting with the committee members; and also after, we will have our general status conference in the courtroom.

I have gone through the draft Report No. 3 of liaison counsel.  I did not have any issues in there or items that I needed to raise with you-all.  I think it's very clear as to where we are in the case.

Since our last meeting, we had the Science Day which I greatly appreciate and was very helpful.  I have my materials from both sides actually with me here, and I'm sure I'll consult those again repeatedly as we progress in the case.

I also have received a motion and have signed an order setting dates with regard to the class certification matter.  That's Mr. Exnicios, I believe, is the plaintiffs' counsel on that matter.

1          MR. COFFIN:  Correct, Your Honor.

2          THE COURT:  Let's see.  We had previously received the

3   Master Long Form Complaint.  We have an answer date that's

4   coming up shortly, I believe.  So we'll look forward to that.

5   And I also signed or am about to sign, I believe, an order

6   relative to -- I've seen the order.  I don't recall whether it

7   was put in my little electronic signing bucket for signatures,

8   but it relates to the motions to remand that are pending on the

9   cases that have been transferred in.  So we'll go ahead and get

10  those briefed and ruled upon as promptly as possible.

11          So, with that, I'll go ahead and open the floor

12  for any items that you-all want to discuss at this juncture.

13          MR. MOORE:  Thank you.  Good morning, Your Honor.

14  Douglas Moore, defense liaison counsel and counsel for sanofi.

15          One of the issues that we brought up in the

16  liaison counsel meeting is an issue I'm going to address in

17  this meeting and it relates to Item Number 1 and that is the

18  overall case inventory.  We heard from Mr. Gordon at the

19  settlement conference that we had with the Court back last week

20  on May 3; and there was discussion by Mr. Gordon to begin to

21  think about what we should do with the unfiled inventory of

22  cases, how do we address the unfiled cases.

23          And we've had, on our side, some discussion about

24  that at sanofi; and the way our client has always looked at an

25  unfiled case is it's not a case.  And in terms of our being

1   able to process this litigation efficiently, it's important for

2   us to put our arms around or put a fence around what the actual

3   case inventory is.  And if we are getting information about

4   large, unfiled inventories that are just a big question mark

5   hanging over us, we think that impedes our ability to really

6   understand the case and how we should handle the litigation

7   decision-making on all levels.

8           So we think it's important to begin to have this

9   inventory of unfiled cases become inventory of filed cases and

10  then begin to put those litigants through the infrastructure

11  that we've built here, submission of fact sheets, giving us the

12  records and the authorizations so we can learn about those

13  claims and know how to handle them and so that's our position

14  on this question mark on this unknown.

15          We heard some comments from liaison counsel about

16  some of the struggles they've had, but it would be our desire

17  that this group of unfiled cases becomes a group of filed cases

18  so we can process them.

19          THE COURT:  Okay.  Counsel.

20          MR. COFFIN:  Your Honor, Christopher Coffin on behalf

21  of plaintiffs.

22          I'm aware somewhat what Mr. Gordon is referring

23  to and I think it's safe to say he was referring that purely in

24  a settlement context in the attempt to have cooperation between

25  the settlement committees so that there could be an

1   understanding between the settlement committees as to what

2   inventories look like, which I think is fair that that's in

3   Mr. Gordon's realm and not my realm with regards to this

4   litigation.

5          But with regards to the litigation, it's very

6   difficult for us to just agree that all cases will become filed

7   for a number of reasons, not the least of which is evaluation

8   of those cases.  And it takes time, as Your Honor knows from

9   hearing from us, to get medical records, to evaluate the case

10  fully before you file it which is what we hope happens in every

11  case.

12         You know, the other issue is whether or not you

13  want to have cases just filed without having been vetted; and

14  we don't want that.  No side wants that.  We're trying to avoid

15  that.

16         THE COURT:  Let me suggest something.  This came up

17  with liaison counsel.  If there is a way short of filing -- and

18  I'm not even talking about the short form complaint -- but

19  putting that aside, if there is a way to capture numerically or

20  simply by name and address those individuals who have retained

21  counsel -- and obviously we don't know who counsel is on cases

22  if they've never filed a case that's in the MDL.  There may be

23  an attorney out there who has one or more claims who is not in

24  the MDL and who is not a part of any mailing list.  But out of

25  all who are, presumably many of them have clients that they

1   have signed up; but they have not had -- as you point out

2   correctly -- have not had a chance to fully investigate the

3   case and evaluate the case or even put together enough to file

4   a short form complaint, much less match to the proper

5   defendant.  I understand that those are all vexations that you

6   as plaintiffs' counsel, you clear these hurdles before the

7   paper gets to the courthouse.  But I'm trying to think of a

8   way -- and I'm thinking out loud here just as I did with

9   liaison counsel, that I'm trying to think of a way that we can

10  at least have a disclosure so that we know numerically how many

11  claimants there are that have retained counsel and if possible

12  the name.

13          There's got to be some way that we can work this

14  from both sides.  Some of the questions I asked to liaison

15  counsel related to if it were possible for a defendant, given

16  the name of a patient or plaintiff -- former patient or current

17  patient who is now or will be soon a plaintiff -- to be able to

18  somehow work it backwards for the delivery of the product and

19  then use of the product.

20          Apparently that's easier said than done until you

21  get to the distributor level; and even then at the distributor

22  level, it's unlikely that the distributor would know which

23  specific patients received which particular product in many

24  cases -- maybe not all, but in many cases.

25          So I guess what I'm suggesting is if there can be

1    a flow of information -- maybe plaintiffs' counsel can with a

2    blanket e-mail submit to liaison counsel -- and I don't know if

3    this is helpful.  I expect you all to talk about this in a lot

4    more detail; but at least they would know that out of all of

5    the attorneys that are part of the MDL at this point, this

6    attorney has an additional seven claimants, this attorney has

7    an additional 38 claimants, this attorney has an additional 12.

8    And that way we get at least a numerical idea of what the

9    ballpark looks like, and it's a rolling thing because we have

10   people that are signing up plaintiffs -- I mean, I see the

11   advertisements sometimes.  But even without the advertisements,

12   given the statute of limitations that we're dealing with,

13   presumably there are people who are retaining counsel as we

14   speak and throughout the summer and months from now, there will

15   be more people in the universe of claimants.

16            So just thinking out loud, there's got to be a

17   way that we can do some sort of accounting.  I don't want to

18   get the settlement committees hung up on this on the one hand.

19   On the other hand, ultimately that will be a big factor, if not

20   the threshold factor, in deciding what can be done to try to

21   resolve the case.

22            MR. COFFIN:  I think you're right on, Your Honor; and

23   without speaking for Mr. Gordon, I have had discussions with

24   him and I know he's thinking along the same lines.  The one

25   caveat would be whether or not we would be comfortable

1   providing actual names or addresses, but numbers is a different

2   story and I think that that discussion has already begun

3   between the committees.  My suggestion would be that I go back

4   to Mr. Gordon and talk to Mr. Strongman and Ms. Lori Cohen -- I

5   had to think about Lori's name -- Ms. Cohen about them getting

6   together to figure out what process could be used on the

7   settlement side rather than litigation.

8       THE COURT:  Well, if the names are not of any use on

9   the defendants' side because they can't trace back to a

10   specific defendant, then perhaps you-all can respond to this if

11   you wish, Mr. Moore; but perhaps the numbers are more important

12   than getting particular names of claimants.  I mean, I don't

13   know what you would do with the name of a claimant who has not

14   yet filed because you wouldn't even know which defendant it is,

15   and there's no way for you to discern that with just a name --

16   correct me if I'm wrong -- but that's what I understood this

17   morning.

18       MR. MOORE:  That's right, Judge, and I think, you know,

19   providing a list of names would be a little bit better than

20   providing just numbers.  But much like we discussed when we

21   were preparing the fact sheets and discussing the kind of

22   information that we need in order to be able to evaluate a

23   claim -- not only whose claim it is, but the circumstances of

24   that person's medical history and information and when they

25   used the product.  Dates of use in and of themselves can tell

1    us in about half the cases whether it's our product and whether

2    it falls within the generic timeframe.

3           THE COURT:  Well, I'm all in favor of getting ahead of

4    the curve as you-all can tell from what I did with the fact

5    sheets.  More information sooner is obviously better than

6    delay, both for travel purposes and advancement of the MDL to

7    either settlement or remand of cases back to the respective

8    jurisdictions from which they originate.  But also for

9    settlement purposes, if we're going to settle the case, we need

10   to know what we're dealing with here on both sides.  There's

11   got to be a full disclosure.

12           Ultimately the fact sheets have the information

13   in it; but if we have several -- we could do a mini fact sheet

14   and then a sub-mini fact sheet, all the way until we have it

15   reduced down to a simple name; but at this point, we would be

16   making even more and more work.  I'm trying to get a way to get

17   you more information sooner without making it so cumbersome

18   that we wind up doing miniscule little tidbits of things that

19   ultimately wind up slowing us down rather than speeding us up.

20   There's a balance there.

21           Full blown discovery is one thing, and then we

22   retreat from that into a fact sheet that's fairly comprehensive

23   and then we retreat from that into only the information that's

24   in the complaint and then we retreat from that into the short

25   form complaint.  So we're getting kind of like -- what are the

1   Russian doll things?  One is smaller in each one.  At some

2   point, it can't get any smaller; and I thought the numbers

3   would be helpful for what Mr. Gordon was asking about.  If

4   they're not, then they're not; but I thought maybe getting a

5   numerical count.  But even then that's sliding, that's not a

6   fixed number.

7           MR. COFFIN:  Your Honor, I think this is all very

8   helpful to discuss.  I do think that it would be more

9   productive for Mr. Gordon, Ms. Cohen and Mr. Strongman to

10  discuss it in the settlement context.  I will be very upfront

11  with you.  The immediate alarm that goes off with me and then

12  will go off with every plaintiff's lawyer is, "Why am I giving

13  my client's information to the defense when we haven't even

14  determined to file a case?"

15          THE COURT:  And that's true and plus we have people who

16  may sign up with counsel and then decide -- particularly in a

17  case like this -- and they may decide, "You know what, I don't

18  want to go through this; and I don't want to be involved in

19  this.  I don't want to get e-mails because it's too upsetting,"

20  and blah, blah, blah.

21              We have that in every MDL I have had where people

22  have mixed feelings about it even if they have signed up with

23  counsel.  So that's why I'm suggesting maybe if the numerical

24  count is helpful on the settlement side, I think that is doable

25  and not burdensome to either side.  If it's not helpful, then

1   unfortunately we'll just have to wait for the filings to get

2   the name.  Hopefully when the filing is made, it will be with a

3   particular defendant and not multiple defendants based on

4   ignorance of which one it is.

5           So why don't you-all talk and see if there's a

6   way that you can have a -- when I say, "you-all," I mean, as

7   you suggest, that we have the settlement committees interface

8   and see if there's -- the best way to capture a certain level

9   of information.

10  MR. MOORE:  To answer Mr. Coffin's question of "Why

11  would we give over that information," the reason this issue

12  came up is because they brought it up in terms of the

13  discussion of what is this litigation.  And it's not just the

14  cases that we know about because there's other cases out there.

15  "I have 'X' cases or hundreds of cases"; and to us, that

16  doesn't really give us an ability to make concrete

17  decision-making, really on any level of the litigation.

18          But I do agree with the concept that we should

19  put the settlement committee members together and probably work

20  with lead counsel and come up with a game plan on what sorts of

21  information we can begin to receive on this large unknown,

22  apparently large unknown inventory of cases.

23  THE COURT:  Well, I think it's helpful and I can recall

24  and some of you who were involved in the *FEMA Trailer* case, at

25  one of our general status conferences, just as we're having

1   today in this case, we had a couple of attorneys show up well

2   into the MDL -- well into the MDL -- that had filed a few cases

3   that were in the MDL and then unbeknownst to, I guess just

4   about everybody in the courtroom said, "Oh, well, I signed up,

5   like, 8000 people."

6           "Oh, really?"

7           And it wasn't their fault that they didn't say.

8   I mean, they hadn't filed the cases for a variety of reasons.

9   Of course, we had a matching problem there as well, which I

10  made reference to.  But it was important for everybody to know

11  that when they said it, it was a critical point in the MDL

12  because it was information the defendants needed to know and

13  not even liaison counsel was aware of it.  I remember

14  Mr. Meunier coming to me after -- I mean, immediately after

15  while I was still on the bench -- and discussing it with me

16  then because I guess he realized how significant it was.

17          So if we do have a volume of cases -- that's why

18  I think maybe the number would be helpful.  And, Jon, if you

19  disagree with me, then --

20          MR. STRONGMAN:  Jon Strongman.  Yes, Your Honor.  I

21  think the number is not unhelpful.  I think part of the process

22  is that in my experience numbers alone can be -- they're not

23  really verifiable.  So it becomes -- there's a trust factor

24  involved there, which there's no reason not to trust each

25  other.  But with names, you can follow those and say, "Okay.

1    This one is on a list and now this is filed.  So we've kind of

2    got a check and a balance on that and dates of use give a

3    certain piece of information.  But I think Mr. Gordon and

4    Ms. Cohen can certainly talk about it.  But you're right,

5    numbers are not unhelpful.

6          THE COURT:  It would be better to have the specifics,

7    but you're going to get that eventually.  Like I said, I don't

8    want to get to the point where we're creating another work

9    event hurdle to saddle plaintiffs' counsel with when what they

10   should be doing is the fact sheet, the short form complaint to

11   get the claim in as opposed to a preemptory -- even just that

12   because we're dealing with a lot of people here.  And I'm

13   talking about just the attorneys, we're dealing with a lot of

14   people here, not to mention the multiple clients that each may

15   have.

16          So see what you-all can do on that.  I'm open to

17   whatever creative suggestions you have to advance the case.

18   Again, I want to strike a balance between us moving forward and

19   not burdening people with tasks that seem to defeat that

20   purpose.

21          MR. STRONGMAN:  Thank you.

22          MR. COFFIN:  Thank you, Your Honor.

23          THE COURT:  Does anybody have anything on the report,

24   by the way?

25          MR. COFFIN:  Your Honor, are you just going to run

1    through it?

2         THE COURT:  Well, I will in the other meeting.  I will

3    expect you-all to go through the report.  I didn't see anything

4    in this particular report.  I usually start with the report

5    with you-all and go through things that catch my eye.  I didn't

6    see anything in this report that causes me concern or that I

7    wish to raise with you-all.

8              So unless anybody else has anything that's in

9    these -- whatever however many pages here.  This is a ten page

10   report.  Unless anybody has anything out of the report, I'll

11   open the floor for any further discussion of issues that need

12   to be covered at the committee level.

13        MR. COFFIN:  I do have a couple of things.

14             Mr. Moore, would you like to go again and

15   then I'll --

16        MR. MOORE:  Yes.  I was just going to point out -- this

17   is something we talked about in the liaison counsel meeting --

18   on the report itself, we have a new report on the number of

19   cases.  As of May 10, 2017, we have 1,116 cases so we'll make

20   that adjustment when we send the revised version to Chynna.

21             And then we have the submission date under Item

22   Number 15 for Motion Practice was incorrect on the last item,

23   the Motion for Disclosure of Non-Party Interested Entities Or

24   Persons, we've identified as June 21.  It's actually June the

25   7th.

1          THE COURT:  Okay.  We can make those before we enter

2     them into the record.  Submit a revised and we'll sign it and

3     put it in the record.

4          Chris?

5     MR. COFFIN:  Thank you, Your Honor.

6          There are a few issues under discovery that kind

7     of bleed over into the ESI that are important.  I think the

8     first and probably top issue on our mind is the fact that the

9     defendants filed their motion to dismiss on personal

10    jurisdiction regarding French entities and we just need some

11    guidance from the Court because we do understand that we need

12    to meet and confer on jurisdictional discovery.  We do intend

13    to serve jurisdictional discovery and we'll do that and we will

14    meet and confer to work that out.

15         I think the biggest question, though, is as per

16    the schedule that we're going to submit to Your Honor -- or

17    schedules as it may be -- we're concerned about what the scope

18    of discovery is going to be in the case when we have this issue

19    with the French defendants.  Put more simply, when we serve

20    discovery, it's going to encompass the French defendants.

21         As Your Honor knows, we've set the date in

22    October to hear the issue on personal jurisdiction.

23    THE COURT:  Right.

24    MR. COFFIN:  We can't have that whole time period of

25    zero productions from the French defendants.  Quite frankly, I

1    don't know where the defendants stand on this; but if I had to

2    guess, they might say, "Well, we're not producing anything

3    related to the French defendants until the Judge rules in

4    October or November."

5         THE COURT:  Well, let's see what they have to say.

6         MR. RATLIFF:  Sure, Your Honor.  We do have a pending

7    motion to dismiss as it relates to personal jurisdiction as to

8    sanofi S.A. and Aventis Pharma S.A.  We're working on a time to

9    meet and confer with them on what they contemplate in terms of

10   jurisdictional discovery, the scope of what that discovery

11   might be.  I'm not actually sure at this time if discovery is

12   necessary; but I'm certainly willing to hear them out and see

13   if we can find something that's the least burdensome approach.

14        As it relates to discovery on those particular

15   defendants, I think it would be inappropriate to start merits

16   discovery while there is a pending motion to get those

17   individuals and those individual entities out of this case.

18        That being said, Your Honor -- and I've said this

19   repeatedly to plaintiffs and I've said it repeatedly in

20   court -- which is the documents that are going to be relevant

21   to this case -- the labeling documents, the adverse event data,

22   the IND, the NDA, the regulatory documents, the marketing that

23   took place in the United States, sales rep information,

24   anything that took place as it relates to the plaintiffs in the

25   United States -- it is all going to be housed in the

1    United States.  It's all going to be accessible to

2    sanofi-aventis U.S., LLC and so that big tranche of documents

3    that they are going to be looking for that are most relevant to

4    their failure-to-warn claims -- because ultimately this is a

5    case about failure to warn.  I know they have some other causes

6    of action; but I think even as to their other causes of

7    action -- those are all going to be accessible in the

8    United States.

9           To the extent that Your Honor decides to keep

10   those foreign entities in -- and you may, you may not -- I

11   think we could then start the process of what limited types of

12   information might be available exclusively in France and that

13   gets into issues of the Hague convention, it gets into the

14   issue of data privacy as to French individuals.  So I guess in

15   my mind it's a little bit of an imperfect bifurcation.

16          I've heard Ms. Menzies say before that she

17   believes 80 percent of the documents are in France.  I don't

18   know where she gets that figure.  I've asked her about that.

19   But the reality is I've done the due diligence, I know where

20   the documents are, I know what we produced and what they're

21   going to be looking for and what's accessible to our U.S.

22   entity.  So that would be my position on that.

23          I do not think engaging in a merits discovery as

24   to two defendants who are seeking to be dismissed for lack of

25   personal jurisdiction would be an appropriate route.

1     Otherwise, it would render our motion essentially void.

2          THE COURT:  Well, I don't know if it would render it

3     void.  The idea, as I understood it this morning in the liaison

4     counsel meetings, was that the motion was set far enough in

5     advance because it was anticipated that there would be

6     discovery -- no big surprise -- relative to the personal

7     jurisdiction and so we appreciate the consideration.

8               My first thought is whether or not we can move --

9     and this depends on the discovery you intend to do -- whether

10    we can move that hearing date up.  In so doing, we limit the --

11    it's less time to do the discovery.  I don't know what you have

12    in mind for discovery.  I don't know whether this is a typical

13    personal jurisdiction discovery mission or whether this is

14    going to be a little bit more involved and a little bit more

15    exhaustive.  So I don't know exactly which hoops you have to

16    jump through in terms of what you need to brief the issue, but

17    I'd be willing to move that up.  That's one thing.

18               The other thing is if there is discovery that is

19    dual-purpose discovery that appears to relate to jurisdiction,

20    but might also be merits discovery, then I would expect that

21    you would have to participate in that on the defendants' side.

22               I think there are some vagaries here and I don't

23    mean to just kick this thing down the road; but again I'm

24    thinking out loud as to what can be done again to not slow down

25    the case based on a single motion that pertains to a single or

1    a very limited group of defendants while we're all marking time

2    and I don't want that to happen.  So...

3         MR. COFFIN:  Your Honor, I understand the connundrum

4    we're in; and I get that.  I think what would be helpful from

5    the Court is -- and maybe we don't do this right now -- but

6    setting some sort of deadlines because what I'm concerned about

7    is we are going to meet and confer and we'll do that in good

8    faith on the jurisdictional discovery.  But my guess is we're

9    not going to agree on everything that's appropriate.

10        THE COURT:  Right.

11        MR. COFFIN:  And then we're going to have to come back

12   to Your Honor and then we're going to have to make a decision

13   and they're going to say, "Well, we're not going to start this

14   until the Judge rules."  So we can't have meet and confers

15   continuous.

16        THE COURT:  Well, what I would suggest you do is to get

17   with Magistrate North to set the parameters and set dates.  I

18   think the first thing we need to talk about is this hearing

19   date which was set with acknowledgment that there would be

20   discovery and that time was built in.  I am willing to move the

21   date up.  The downside is not to the defendants on that, it's

22   to the plaintiffs.  So I'm willing to move that date up and

23   slide it up on my docket which would -- the problem is

24   jurisdiction.

25             One of the first lessons of both lawyers and law

1    school and baby judges' school when you first get this job is

2    jurisdiction is never assumed -- subject matter or personal

3    jurisdiction.  The purpose of them raising it is to not have to

4    participate in the litigation and expend resources.  You know

5    all that.

6         So on the one hand, we've got to be able to do

7    the jurisdictional discovery and let me dispose of that issue

8    and if they're in, they're in and we can have open season on

9    discovery.  If they're not, then you wouldn't be deprived of

10   the information, you're just going to have to take a more

11   circuitous route to get it absent some cooperation that we can

12   negotiate here.

13        So I would suggest that you get with Mike North

14   sooner rather than later -- in fact, even today if you have

15   time and he has time or a telephone conference with him and

16   tell him exactly what you need and that you don't want to have

17   multiple conferences with him or multiple meet and confers.

18        MR. RATLIFF:  Your Honor, the defendants are absolutely

19   fine to do that.  In fact, I would rather not have multiple,

20   multiple meet and confers on this issue.  We are meeting with

21   Magistrate North on Tuesday.

22        At the same time, it wasn't until yesterday that

23   I got an e-mail saying we want to talk and meet and confer

24   sometime next week about this issue and I think in your

25   January 27 conference you said, particularly as it related to

1    the potential for jurisdictional discovery, meet and confer and

2    see what you can agree on and we don't have to haul everyone

3    back down here and we can get on the phone and sort it out.

4            We would be absolutely thrilled to move up the

5    date for their response time to our motion.  That was a date

6    that they requested and we consented to because they said they

7    thought they would be pursuing discovery.  We weren't assuming

8    that they would be.  And so when we set our submission date, it

9    was based off the date they wanted.  So we certainly would

10   rather have that -- I know my client would rather have this

11   issue of jurisdictional -- whether they are in this case or out

12   of this case sorted out sooner rather than later.

13           THE COURT:  Karen.

14           MS. MENZIES:  Yes.  Thank you, Your Honor.

15           We have approached this subject with Judge North

16   briefly in the context of the ESI and discovery requests

17   recognizing we do feel very strongly because we -- in

18   Science Day last week, you heard a lot of information about

19   what happened in the development and working -- the decisions

20   that Rhone-Poulenc had and eventually sanofi-aventis had in

21   eventually developing and marketing this drug and eventually

22   licensing it getting it in the U.S.

23           So to us, we believe there is very relevant

24   information in the foreign countries.  Whether the defendant,

25   the foreign entities are named as a defendant is obviously an

1    issue, whether you have jurisdiction over that.  The way we

2    approached it with Magistrate Judge North is recognizing that

3    our discovery requests will include information that will go to

4    and will be served on the foreign defendants, but also will be,

5    say they were out, in the control, custody, possession

6    potentially of the U.S. defendants.

7             If there's responsive documents and information,

8    evidence in the foreign countries, which we believe there is,

9    they should have to produce it and that Magistrate Judge North

10   said -- what I've been trying to find out with counsel for

11   sanofi is what is your position on that?  Separate from whether

12   they're named defendants or not, if they're responsive

13   evidence, are you going to search for that to see if there is

14   responsive information and if so, are you going to give it to

15   us or are you going to say it's there, but you need to go

16   through these other hurdles?

17        THE COURT:  That's right.

18        MS. MENZIES:  So we've been trying to get an answer to

19   that.  Magistrate Judge North very candidly asked Mr. Ratliff,

20   "Is it possible that there may be evidence that's relevant to

21   this case in the foreign countries"; and he had to acknowledge

22   that it is possible.

23             So from there, we've been trying to isolate how

24   we address this issue.  I can tell you that the plaintiffs

25   believe -- we've already been drafting discovery -- we do

1   believe that it will encompass information that would be

2   obtained in the other country.

3            So they have -- in the course of our meeting and

4   conferring on this issue -- have said, "We can't give you

5   information from a foreign country because of the French

6   Blocking Statute, and you'd have to go through the Hague."

7            Now, we've looked at that closer and frankly the

8   federal courts, when you're utilizing the Federal Rules of

9   Civil Procedure, have overridden that French statute on every

10  case.  The only thing that they didn't -- and this is the case

11  that they cited to me -- was a case where an individual

12  fraudulently obtained or tried to fraudulently, through a lie,

13  obtain information from the foreign country.  Federal courts

14  have distinguished that case going forward since that happened.

15           So what I'm wondering is maybe with the Court or

16  maybe with Magistrate Judge North, we can meet and confer

17  further on it.  But how do we isolate this issue?  If they are

18  going to put up the French Blocking Statute, how do we get that

19  determined by this Court without it requiring us to wait four

20  or five or six months before we know the answer to the

21  jurisdictional issue?

22           THE COURT:  Well, let me first say that it sounds like

23  they're going to conduct the discovery whether you're a

24  defendant or not a defendant -- in other words, regardless of

25  the motion.  The question is whether it's going to be available

1    and producible by a party defendant or whether it's going to be

2    obtained pursuant to -- a subpoena, but through the appropriate

3    international avenue they're supposed to pursue it in.

4         The second issue regarding the statute, is that

5    something that we can tee up on an expedited basis and rule on

6    that preemptively?  If that's going to be the hurdle,

7    regardless of whether you're a defendant or not a defendant,

8    then why don't we tackle that on the front-end?  Is there a

9    reason why we could not get a ruling on that?

10        MR. RATLIFF:  Your Honor, I think what Ms. Menzies was

11   talking about is something different than what we were talking

12   about.  But to address your questions, you're right.  If

13   sanofi S.A. is out of the case, they have to pursue discovery

14   as if they were any other type of third party who is not a

15   litigant.

16        And so we've gone back and forth on what sources

17   are you going to look for in France, how is this going to work?

18   All of this, to me, is putting the cart before the horse a

19   little bit because we're talking about it in the abstract.  I

20   don't know what their discovery is going to serve, I don't know

21   what documents I'm going to be looking for.

22        She asked me repeatedly, "What is your position

23   on this?"

24        I said, "I don't know until I see your

25   discovery."

1          That's part of the issue here and so I feel like

2    I am just sort of committing to something that I'm not totally

3    sure of until I know what the parameters and what the scope of

4    the discovery might be.  So I think the issue of this blocking

5    statute or what privacy laws might be implicated, I would be

6    real reticent to tee that up right now essentially in the

7    abstract because they may serve discovery and we may be able to

8    work through it with our client.

9          THE COURT:  That would be great.  That would have saved

10   us a lot of time this morning, and that's what I would expect

11   you-all would do.  We started off this discussion based upon

12   the motion that's pending regarding jurisdiction.  You-all have

13   slowly, during the course of that discussion, withdrawn facts

14   for me to consider to the point where you're asking me for

15   advice or to opine with fewer facts than I had ten minutes ago.

16         So the task is getting harder even though I

17   shouldn't be so opining to begin with because I don't have it

18   in front of me.  I'm responding to concerns that you have

19   without a specific thing to rule on.

20         MS. MENZIES:  Your Honor, if I can answer your

21   question.  If they're going to take the position on the

22   blocking statute, can we tee that up early?  Yes, I think we

23   can.

24         And Mr. Ratliff is correct that when the federal

25   courts look at it, they have to look at it in the context of

1    served discovery.  So we would have to serve the discovery

2    which we are prepared to do relatively soon.  The context of

3    our even discussing ahead of time is what we were trying to

4    find out is whether they were going to include in their search

5    for evidence the foreign information.

6                THE COURT:  All right.

7                MS. MENZIES:  And that was the only answer we were

8    trying to get.  So I think once we serve discovery, then we can

9    do the analysis.

10               THE COURT:  If you give him a formal discovery plea so

11   that he can look at it and he and his client can decide what

12   parts of it they can comply with, what parts of it they believe

13   to be objectionable and why and let him respond formally to you

14   and we can -- hopefully we can do this -- I know you've already

15   put the discovery together, at least for the most part have

16   already drafted something.  Obviously you've discussed it

17   because the issue has come up here today.

18                    So Mr. Ratliff, I'm sure, has done some research

19   and spoken to his client about it.  This obviously is not a new

20   issue.  Maybe we can do this in short order, but I have to have

21   a controversy in front of me -- a justiciable, as they say --

22   for me to rule on.  Serve the discovery.  And I can take that

23   one myself.  Magistrate North would be good to set the

24   parameters for your jurisdictional discovery.

25                    What you're talking about is merits-based

1    discovery.  If you want to go ahead, give them the discovery

2    pleadings, please respond and we can talk about dates for that

3    unless you want to come up with dates and tell me -- maybe you

4    want to confer after our meeting today -- tell me what dates

5    you're going to have for the discovery, tell me how long you

6    need to respond to it with your objections and then we can file

7    a motion and I'll rule on it.  Even though we still have the

8    jurisdictional issue pending, it wouldn't be executory, if it's

9    merits-based discovery, until I rule on the jurisdictional

10   issues.

11              MS. MENZIES:  Yes, Your Honor.

12              THE COURT:  Do you understand what I'm saying?

13              MR. COFFIN:  Yes, Your Honor.

14              THE COURT:  I'm respecting the fact that you have

15   raised the personal jurisdiction motion and I'm also trying to

16   do some work on the front-end with you-all in the event --

17   well, in either event, quite honestly, because your response to

18   discovery, whether it comes in the form of a request directed

19   to a party defendant or whether it comes through, like I say,

20   the more circuitous process of the Hague convention, presumably

21   your response is going to be the same as pertains to the French

22   statute and any privacy concerns and the things you mentioned

23   at the outset.

24              MR. RATLIFF:  Your Honor, if I'm following you

25   correctly, I guess my concern still is are you contemplating --

1   my concern is getting into a merits discovery for two entities

2   you don't believe that should be in the case prior to --

3          THE COURT:  What I want to rule on are the hurdles to

4   such discovery.

5          MR. RATLIFF:  Understood.

6          THE COURT:  That's what I want to rule on.

7          MR. RATLIFF:  Understood.

8          THE COURT:  I would not envision compelling

9   merits-based discovery while the jurisdictional motion is

10  pending.  What I do contemplate is tackling all of the

11  obstacles to it because it is going to be sought by the

12  plaintiffs one way or the other and you are going to urge those

13  legal hurdles as you're entitled to do one way or the other.

14          So I think that we can maybe knock some of these

15  issues out to one of the two of you's favor so that when they

16  do come up in whatever status your clients are in, we've got

17  them decided.

18          MR. COFFIN:  Thank you, Your Honor.  This is exactly

19  why we brought up the issue just to get some guidance.  If I

20  could, just to clarify, you would like us to meet with

21  Magistrate Judge North on deadlines of the jurisdictional

22  discovery?

23          THE COURT:  Yes.

24          MR. COFFIN:  You would like us to meet and confer and

25  provide you with dates as to when we will serve merits

1  discovery and when defense will provide those objections to the

2  merits discovery?

3          THE COURT:  As pertains to Mr. Ratliff's clients, the

4  foreign entities that are subject to the motion.  But also do

5  that -- if you haven't already done so, also do that with

6  regard to the other defendants who don't have these hurdles.

7          MR. COFFIN:  Can I --

8          THE COURT:  There's no reason not to.

9          MR. COFFIN:  And can I suggest that we get back with

10  you by next Wednesday with a schedule that sets forth when we

11  will serve discovery and when the defendants will respond?

12          THE COURT:  That's fine.

13          MR. COFFIN:  Thank you.

14          THE COURT:  Okay.  Anything else on the report?  I

15  think we were talking about issues out of the report.

16          MR. COFFIN:  I had one other issue, Your Honor, under

17  "Discovery of Defendants," we did indicate that we had served

18  informal discovery.  Again, this is a clarity point and I think

19  a lot of these conferences are going to be clarity because we

20  clearly have some disagreements in interpreting what Your Honor

21  has said.

22              On the informal discovery, we have served

23  informal discovery; and we've done the best we can.  We spent a

24  lot of time trying to narrow down those topics to those issues

25  that we think the pharmaceutical companies should have -- all

1    of the defendants or at least most of them we served.

2           Our understanding was that Your Honor said you

3    would like to see informal discovery on those basic sets of

4    documents that should be easy to provide from the defendants to

5    the plaintiffs.  I want to be clear on that because I think

6    there was a misunderstanding on the defendants' side and we're

7    happy to meet and confer about it, but we need a little

8    guidance on exactly what you meant.

9           MR. MOORE:  Judge, just for purposes of context, this

10   is in reference to the letters we mentioned in the liaison

11   counsel meeting that came from a random lawyer and not through

12   the liaison counsel that went to some of the defendants and not

13   all of the defendants asking for specific sets of things and in

14   it it referenced a page and line from one of the open status

15   conferences where we were talking about the possible need for

16   discovery on the issue of personal jurisdiction.

17          And we talked about exactly what has happened

18   here.  We filed a motion, then we would talk about what they

19   need and the best way to exchange that information and the

20   words you used were that we would -- I hope you would do that

21   informally and not require all sorts of request for production

22   of documents which is exactly where we still are today on the

23   issue that we were talking about in the court that day on the

24   issue of personal jurisdiction discovery.

25          The letters that we received were not related to

1   personal jurisdiction.  They were related to information that

2   is in many ways at least -- the letters weren't all consistent.

3   They related to other issues and we've responded to that

4   request -- at least sanofi has -- in writing and they've asked

5   us for a meet and confer on that and we're willing to do it.

6            As I said in the liaison counsel meeting, in drug

7   and device cases in the MDL context it is quite frequent for us

8   to make informal productions without a specific request for

9   production of documents on certain things that we know will be

10  produced -- the regulatory submissions and the standard set of

11  things that are easy to assemble that will be produced no

12  matter what survives our motion practice, but the discussion

13  has to involve the status of the case and the context of the

14  objections that we'll be making to the complaint.

15           We will be asserting or advancing a *Twombly/Iqbal*

16  basis to all of the counts with the exception of maybe one or

17  two.  We're still working through that, but the principal in

18  *Twombly/Iqbal* is that the gates of discovery don't open until

19  we have closure of the complaints.  We're not saying we're not

20  doing any discovery until you rule on the Rule 12.  We're

21  willing to start that process and to do so informally and

22  without any sort of burden and to have that discussion with

23  them.

24           So I don't think there's necessarily a

25  disagreement on the concept, at least as far as sanofi is

1    concerned.  I think there may have been a miscommunication as

2    to what the Court was asking for or what that meant beyond the

3    discussion we were having that day.

4              But that's really not here nor there for this

5    issue.  We have received their request for a meet and confer

6    and their original requests on formal discovery and we're going

7    to get a date with them soon and discuss it.

8              THE COURT:  All right.

9              MR. OLINDE:  Your Honor, for the 505(b)(2) defendants,

10   some received letters from attorneys and I found out about it

11   basically because one of the attorneys told me that it had

12   happened.  They were letters that were not through liaison

13   counsel, it was through another process, which defeats the

14   whole purpose of the MDL.

15             THE COURT:  Were they attorneys in the MDL, or were

16   they attorneys --

17             MR. OLINDE:  They were attorneys in the MDL --

18             THE COURT:  Because not every attorney handling a case

19   is in the MDL, at least not yet, presumably.

20             MR. OLINDE:  These are attorneys in the MDL; but what I

21   said to liaison counsel at the time and through lead counsel

22   is, look, we can discuss an informal discovery process which we

23   can talk about certain items, but we need to have a method by

24   which it comes through liaison counsel so we know what it is.

25             THE COURT:  Okay.

1          MR. OLINDE:  And that's what the process is, and I
2     think we're going to have a meet and confer at some point soon.
3          THE COURT:  All right.  You know, when I say things,
4     it's not with the idea that they will later need to be
5     clarified.  I guess things can be interpreted in different
6     ways, but I don't think I speak in very confusing syntax or
7     dialect.
8               But, number one, any discovery request in this
9     litigation at this point in time must go through liaison
10    counsel -- liaison counsel, okay -- unless otherwise agreed to
11    in a framework established by liaison counsel.
12              In other words, if you-all decide that a
13    committee or lead counsel would interface with someone on the
14    defense side, a particular defense counsel or Mr. Moore or
15    Mr. Ratliff or Mr. Strongman, that's fine; but all contact --
16    including exchange of discovery, formally or informally -- must
17    be made through liaison counsel unless otherwise mutually
18    agreed and that agreement should be pursuant to specific
19    parameters agreed to.  Whether it's a specific topic, whether
20    it relates to expert witness discovery or research or what have
21    you, it must be conducted through liaison counsel unless
22    otherwise agreed to by liaison counsel and designated by both
23    sides that contact will be made outside of liaison counsel and
24    even then, liaison counsel should be aware of it.
25              I understand right now we have people working,

1    interfacing in this MDL on an IT level which is fine, that's

2    not through liaison counsel.  Those are people that have

3    expertise, that thank goodness they are interfacing with each

4    other because nobody in this room probably knows what the heck

5    they're talking about.  But that's number one.

6              Number two, I always encourage informal

7    discovery.  Now, Mr. Coffin, you just mentioned personal

8    jurisdiction.  Again, I don't know whether we're still talking

9    about Mr. Ratliff's clients or whether we're talking about

10   another personal jurisdiction issue; but regardless, I always

11   encourage informal discovery.

12             You-all were chosen to be on these committees --

13   lead counsel, liaison counsel and settlement committee --

14   because you have expertise.  You know the approach of these

15   types of cases -- not only mass tort cases, but pharmaceutical

16   cases in particular; you know what the expectations are in

17   terms of what the other side is going to need; you know

18   typically what the documents are going to look like; the

19   document banks that need to be preserved on both sides; you

20   know the information the defense lawyers have asked for and

21   will expect, especially when we get into selecting bellwether

22   plaintiffs.

23             So the point of you being chosen is, among other

24   things, to be able to conduct informal discovery and informal

25   conversations about a variety of aspects of the case.  And when

1   we get closer to trial, I expect you-all to work very closely

2   together and work informally without having to file a motion on

3   every single little thing.  I mean, I don't need a waive of

4   motions *in limine* and then I get you in a conference room and I

5   find out that out of the 12 motions *in limine*, there's only two

6   of them that I need to decide because you hadn't discussed them

7   before they were filed.

8              So I expect you-all to work together on an

9   informal basis.  If there's something that is disputed, then

10  you will have to go through the process of either the subpoena

11  or the formal discovery request, whichever vehicle you choose

12  to tee it up, get a written response and do this.  You can do

13  this quickly or, if you wish, I can get on the phone with you.

14  I'm happy to do it.  I did it in the *FEMA Trailer* MDL.  Send me

15  a letter saying that we received this discovery request.  They

16  have requested the following information.  We object to it for

17  such and such a reason or they objected to it for such and such

18  a reason.  Here is my client's position, here is the supporting

19  authority for it.  I'll look at it, I'll get a letter from

20  opposing counsel, we'll get on the phone.  We can do that in 72

21  hours or quicker, and we'll have a phone conference.  I'll look

22  at the cases and look at the letters you send and that way we

23  don't have the constant briefing and notice of hearing and

24  Magistrate North or me -- I can handle it on that basis and I

25  think that's the best way to handle MDL discovery issues that

1   can't otherwise be done informally by picking up the phone or

2   shooting an e-mail and saying, "Hey, look, I'd like to see

3   this," or "Do you have anything on this?"  And see how much you

4   can produce.

5           None of you-all are babes in the woods on this

6   thing.  All of you-all, to my knowledge and I've looked at this

7   long and hard, all of you-all are very professional and I

8   expect you-all to be able to work on that level comfortably

9   with each other to get the MDL done.

10          So I don't know if that clarifies or further

11   clouds the issue.  The point is you're going to have to work

12   together on this case.  I'm here to resolve any good faith

13   disputes you have, whether it's a privilege issue, whether it's

14   an overbroad issue, I'll decide it.  I try to be as clear as I

15   can be.

16         MR. COFFIN:  It is helpful, Your Honor.  And I

17   apologize for asking for the clarity; but so the Court

18   understands, sometimes we come out of here and we do have

19   different interpretations of what Your Honor says and in order

20   for us to move the case along sometimes, unfortunately, I'm

21   going to have to ask you, at least for our side, to repeat

22   yourself.  So thank you for doing that.  We appreciate it.

23         THE COURT:  Okay.  I had one case recently where every

24   time I ruled on something in writing, every time I said

25   something in the courtroom, I got three motions to clarify

1   something.  People talk about over-lawyering things or why

2   lawyers have bad reputations; and, quite honestly, in that case

3   some of it, unlike what we're talking about here, some of it

4   was not in good faith.  It was just a blind attempt to try to

5   continue to hear what one wanted to hear and read what one

6   wanted to hear and the best way to get that was to keep asking

7   and get the Court to keep talking and I stopped doing it.  I

8   said, "Do what you think is right; and if it's wrong, I will

9   sanction you."  I didn't get any more motions.

10          At some point you've got to put your common sense

11   hat on and just say, "I think I've got to do this.  This is the

12   most reasonable course of action and therefore I will follow

13   it.  If I'm wrong, I would rather be considered reasonable than

14   defiant."

15          And, again, I'm not suggesting -- I'm just saying

16   we're going to have to go forward and you have to work

17   together.

18          MR. COFFIN:  It's helpful.  We appreciate it.  I have

19   heard you say and Magistrate Judge North has said, "Pick up the

20   phone and call me" and I've done that in other MDLs where it

21   just helps the process so much because it saves us a lot of

22   back and forth.

23          THE COURT:  I'm willing to do discovery on a letter

24   basis.  If you tell me:  "Look, we just got off the phone this

25   morning from a conference and here's a couple of things we

1    couldn't agree on and we think you're right and, Judge, if you

2    read case such and such and case such and such and look at rule

3    such and such, we think you'll agree with us."

4           And then hopefully I'll get, via e-mail, to one

5    of my clerks:  "Here is our response."

6           And then you will get an e-mail back from Chynna

7    or Jennifer that says what are you doing tomorrow at 10:30 in

8    the morning and I'll pull a court reporter up to my desk and

9    get you on the phone and we'll have a nice record and we'll

10   talk through it and I'll decide it.  That way you don't have to

11   file motions.  We can get the MDL -- keep it moving.

12          It's a little after 10:00.  Is there anything

13   else pressing that we need to talk about?  I don't want to

14   curtail it if there's something we haven't covered.

15          MR. COFFIN:  Just one thing.  Procedurally we are

16   meeting with Magistrate Judge North on Tuesday.  He's made the

17   same type of offers about moving discovery along.  Would you

18   prefer that we initially contact Magistrate Judge North if we

19   have an issue, or should we just come directly to Your Honor?

20          THE COURT:  Again, it's going to take you-all to make

21   an evaluation of the type of issue it is.  My answer is if it

22   is something that you would not be satisfied with

23   Magistrate North's ruling if it were your worst day, if you get

24   poured out, that you would want me to review, just bring it to

25   me.  If you think you're going to visit the issue upon me

1    eventually, I'll hear it and we'll cut out the middleman and I

2    will go ahead and hear it.  If it's something that you think he

3    can resolve and if he rules against you or disagrees with your

4    position, that you can live with that, that you would not want

5    that reviewed, then by all means, he's extremely competent and

6    intelligent and has a lot of experience in these cases.  Feel

7    free to contact him.  I know he's very interested in the case,

8    and I'm sure he would be happy to help.

9              But if you're going to let him decide it and then

10   he rules against you and you're going to say, "Well, I need to

11   go talk to the district judge, then just bring it to me.  I'll

12   tackle it on the front-end.

13            MR. COFFIN:  That's crystal clear, Your Honor.

14            THE COURT:  All right.  Unless there's anything else,

15   we will go ahead and reconvene in a few minutes across the

16   hall.

17            Thank you all.

18            (WHEREUPON, the proceedings were adjourned.)

19                           *  *  *  *

20                    REPORTER'S CERTIFICATE

21            I, Lanie M. Smith, CRR, RPR, Official Court
     Reporter, United States District Court, Eastern District of
22   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
23   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

24

25                          ___/s/ Lanie M. Smith_____
                            Official Court Reporter