**BEFORE THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISANA**

**IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION**

**MDL NO. 2740**

**SECTION "N" (5)**

_____

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| *Susan Fuller v. Sanofi, S.A. et al.*, | Case No. 2:17-cv-01812 |
| *Joann Pickrell v. Sanofi, S.A. et al.*, | Case No. 2:17-cv-01813 |
| *Margarett Wright v. Sanofi, S.A. et al.*, | Case No. 2:17-cv-01814 |
| *Robin Castagnola v. Sanofi S.A.*, | Case No. 2:17-cv-03864 |
| *Jenkins v. Sanofi S.A., et al.*, | Case No. 2:17-cv-03866 |
| *Gardner v. Sanofi S.A. et al.*, | Case No. 2:17-cv-03865 |
| *Ernyes-Kofler et al. v. Sanofi S.A. et al.*, | Case No. 2:17-cv-03867 |
| *McCallister et al. v. Sanofi S.A. et al.*, | Case No. 2:17-cv-02356 |
| *Celeste West et al v. Sanofi S.A. et al.,* | Case No. 2:17-cv-02067 |

**APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION TO
REMAND CERTAIN CASES TO THE SUPERIOR COURTS OF CALIFORNIA**

| Exhibit | Description |
|---------|-------------|
| A | Fuller v. Sanofi S.A., et. al. - Complaint and Demand for Jury Trial |
| B | California Taxotere MTR Case Info |
| C | Fuller v. Sanofi S.A., et al. – Defendants' Notice of Removal |
| D | Fuller v. Sanofi S.A., et al. – Proof of Service of Summons |
| E | *Hatherley v. Pfizer, Inc.*, 2013 WL 3354458 |
| F | *Rivera v. Astrazeneca Pharmaceuticals LP, et al.*, 2012 WL 2031348 |
| G | *K.E.R. v. Pfizer, Inc.*, 2013 WL 5755076; *A.S. v. Pfizer, Inc.*, 2013 WL 2384320; *Spiers v. McKesson Corp.*, 2013 WL 4671231; *Oliver v. McNeil-PPC, Inc.*, 2013 WL 459630; *Marble v. Organon USA, Inc.*, 2012 WL 2237071; *Norris v. AstraZeneca Pharms. LP*, 2012 WL 1944760; *Mendez v. AstraZeneca Pharms. LP*, 2012 WL 1911382; *Hamzey v. Bayer Corp.*, 2010 WL 2011529; *Maness v. Bayer Corp.*, 2010 WL 2011535; *Mandernach v. Bayer Corp.*, 2010 WL 532537; *Andrews v. Bayer Corp.*, 2010 WL 234808; *Moorhouse v. Bayer Healthcare Pharm. Inc.*, 2008 WL 2477389; *Gerber v. Bayer Corp.*, 2008 WL 344219; *Maher v. Novartis Pharma. Corp.*, 2007 WL 2330713; *Martin v. Merck & Co.*, 2005 WL 1984483; *Aaron v. Merck & Co.*, 2005 WL 5792361; *Alaniz v. Merck & Co.*, 2005 U.S. Dist. LEXIS 46394; *Black v. Merck & Co.*, 2004 U.S. Dist LEXIS 29860 |
| H | *A.B. ex rel. Buck v. McKesson Corp.*, No. 3:13-cv-02541-JLS-RBB, 2014 (S.D. Cal. July 29, 2014) |
| I | *J.E. ex rel. Erwin*, No. 4:13-cv-04897-KAW, 2014 (N.D. Cal. Jan. 27, 2014) |

Respectfully submitted this 19th day of May, 2017.

Respectfully submitted,

GOMEZ TRIAL ATTORNEYS

  */s/Ahmed S. Diab*
John H. Gomez (CA Bar # 171485) T.A.
Ahmed S. Diab (CA Bar # 262319)
Lindsay R. Stevens (CA Bar # 256811)
655 West Broadway, Suite 1700
San Diego, California 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496
*john@thegomezfirm.com*
*adiab@thegomezfirm.com*

*lstevens@thegomezfirm.com*
**Attorneys for Plaintiffs in 2:17-cv-1812,
2:17-cv-1813 and 2:17-cv-1814**

CUTTER LAW P.C.

 */s/C. Brooks Cutter*
C. Brooks Cutter (CA Bar # 121407) T.A.
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 290-9400
Facsimile: (916) 588-9330
*bcutter@cutterlaw.com*
**Attorney for Plaintiffs in 2:17-cv-3866,
2:17-cv-3865, 2:17-cv-3867 and 2:17-cv-
2356**

# EXHIBIT A

John H. Gomez (SBN 171485)
Ahmed S. Diab (SBN 262319)
Lindsay R. Stevens (SBN 256811)
**Gomez Trial Attorneys**
655 W Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496
john@thegomezfirm.com
adiab@thegomezfirm.com
lstevens@thegomezfirm.com

*Attorneys for Plaintiff Susan Fuller*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/16/2016** at 09:09:06 AM

Clerk of the Superior Court
By Patrick Gonzaga, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| SUSAN FULLER, <br><br>         Plaintiff, <br><br>      v. <br><br> SANOFI S.A., AVENTIS PHARMA S.A., SANOFI-AVENTIS U.S. LLC, and MCKESSON CORPORATION, <br><br>         Defendants. | Case No. 37-2016-00044267-CU-PL-CTL <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1.  Negligence <br> 2.  Strict Liability – Failure to Warn <br> 3.  Fraudulent Misrepresentation <br> 4.  Fraudulent Concealment <br> 5.  Strict Liability – Misrepresentation <br> 6.  Fraud and Deceit <br> 7.  Intentional Infliction of Emotional Distress |

Plaintiff Susan Fuller, by and through her attorneys, respectfully submits the following Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-Aventis U.S. LLC (collectively "Sanofi" or "Sanofi Defendants"); and McKesson Corporation, and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE CASE

1.      Plaintiff is a breast cancer survivor who was prescribed and administered Taxotere®, a chemotherapy drug developed, manufactured, and distributed by Defendants. Although lower potency alternatives have been available for years, Defendants misleadingly promoted Taxotere as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact, Taxotere's increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.  Although temporary hair loss is a common side effect related to chemotherapy, Taxotere's risk of permanent hair loss is not. Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiff and thousands of women to suffer permanent hair loss without any additional benefit or warning.

2.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' design, manufacture, distribution, labeling, advertising, marketing, promotion, and sale of Taxotere.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10.

4.      This Court has personal jurisdiction over Defendants, each of which is licensed to conduct and/or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including Taxotere, to the residents in this state.  Defendants have sufficient minimum contacts

1

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**CASE NO.**

in California and intentionally avail themselves of the markets within California through the promotion, sale, marketing, and distribution of their products, including Taxotere, thus rendering the exercise of jurisdiction by this Court proper and necessary.

5.     Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendant transacts business in this County and the events complained of occurred in this County.

**PARTIES**

6.     Plaintiff Susan Fuller is a citizen and adult resident of La Jolla, California, and was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

7.     Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 Rue La Boétie, 75008 Paris, France.

8.     Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 avenue Raymond Aron, 92160 Antony, France.

9.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi S.A. is the only member and owns 100% of the membership interest (both financial and voting) of Defendant Sanofi-Aventis U.S. LLC. Defendant Sanofi-Aventis U.S. LLC does not have any members that are citizens, residents, or domiciles of the State of California.

10.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

11.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson was in the business of labeling, selling, marking, packaging, repackaging, and distributing Taxotere, including upon information and belief the Taxotere administered to Plaintiff.  McKesson also owns US Oncology, which supported a significant amount of Taxotere research and promotion.  Defendant does business throughout the United States and in the State of California and regularly and continuously did business within this judicial district including manufacturing, marketing, advertising, selling, and distributing Taxotere.  For example, McKesson Specialty Health, a division of McKesson, lists Taxotere in its catalog of available products.

## SANOFI DEFENDANTS' OWNERSHIP AND UNITY OF INTEREST

12.     Defendant Sanofi S.A. is a French multinational pharmaceutical parent company that operates worldwide through a complex, consolidated, and intermingled web of more than 400 wholly-owned subsidiaries, including Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As of 2013, Sanofi was the world's fifth-largest pharmaceutical company by sales.

13.     At all relevant times, Sanofi S.A. was engaged in the business of researching, analyzing, licensing, designing, formulating, compounding, patenting, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug Taxotere through its numerous wholly-owned subsidiaries in the United States and throughout the world, including Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

14.     Sanofi was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil company, and subsequently grew through a series of international acquisitions.  In 1994, Sanofi made a significant venture into the U.S. pharmaceutical market by acquiring Sterling Winthrop and its prescription pharmaceutical business.  Sanofi now produces and sells generic products in the United States under the Winthrop label.

15.     In 2004, Sanofi acquired the competing pharmaceutical company Aventis to create Sanofi-Aventis S.A. (later shortened to Sanofi S.A.).  Sanofi S.A. owns 100% of the

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

shares or financial interest of Defendant Aventis Pharma S.A., and therefore directs and controls its operations and activities.

16.     Defendant Sanofi-Aventis U.S. LLC is also a wholly-owned U.S. subsidiary of Sanofi S.A.  Because Sanofi S.A. owns 100% of its shares or financial interest, Sanofi S.A. controls and directs its operations.

17.     At all material times, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC (collectively "Sanofi" or "Sanofi Defendants") were engaged in the business of, and/or were successors in interest to entities engaged in the business of, researching, analyzing, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug Taxotere to the general public, including Plaintiff.

18.     At all material times, Sanofi was authorized to do business within California; did in fact transact and conduct business in California; derived substantial revenue from goods and products used in California; supplied Taxotere within California; and purposefully directed these and other related activities to California.

19.     Specifically, the Sanofi sponsored and conducted clinical trials of their products in California, including clinical trials of Taxotere. For example, it sponsored a 2005 clinical trial at Stanford University on the efficacy of Taxotere for lung cancer treatment; from 2006 to 2012, Sanofi sponsored a clinical trial at Stanford on the efficacy of Taxotere for breast cancer treatment; from 2006 to 2012, Sanofi sponsored an interventional clinical trial at Stanford of Taxotere in patients with breast cancer; Sanofi also sponsored a large-scale epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern California, which terminated in 2012.  In addition, Sanofi participates in ongoing research and development collaborations with the University of California, San Francisco.

20.     Additionally, Sanofi employed sales representatives and business managers throughout California who promoted Taxotere as part of a nationwide marketing, promotion and distribution campaign targeting medical professionals and residents in California.  Sanofi also

4

contracted with Defendant McKesson Corporation, a California-based pharmaceutical distributor, to distribute, package, label, and promote Taxotere.

21.     Sanofi has also spent large sums on California politics.  For example, in 2016 Sanofi contributed $4.15 million to the political action committee Californians Against the Misleading Rx Measure.  Sanofi also contributed $1.5 million to the political action committee No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015, Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently contributed $7,300 total to five assembly-member candidates, and $2,500 to the California Republican Party. Sanofi also employs Clear Advocacy, LLC, a lobbying firm based in Sacramento.

22.     The Sanofi Defendants acted jointly at all relevant times, along with other affiliated, related, jointly owned and controlled entities, to develop, market, produce, label, promote, package, advertise, and/or sell Taxotere to the general public, including Plaintiff. Because they acted jointly, and/or within the course and scope of an agency relationship with one another, with respect to the conduct alleged in this Complaint, any individuality and separateness between them ceased and they became alter-egos of one another and are jointly liable for their misconduct and wrongful acts as alleged herein.

23.     As the corporate parent of wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As a result, a unity of interest, ownership, and conduct between the Sanofi Defendants existed at all relevant times—with regard to Taxotere's manufacture, distribution, development, testing, labeling, and related conduct—such that any individuality and separateness between the Sanofi Defendants had ceased and they became the alter-ego of one another.

24.     Through its web of affiliates, subsidiaries, and predecessor companies, Sanofi S.A. has overseen the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting Taxotere in the United States and in over 100 different countries.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

## DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE (DOCETAXEL)

25.     Taxotere is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Taxotere is a part of a family of drugs commonly referred to as taxanes.

26.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (Taxol®) and Taxotere.

27.     Taxol was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to Taxotere. It was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

28.     Designed as an increased potency taxane, Taxotere (docetaxel) was invented and developed by Rhone-Poulenc, a predecessor in interest to Sanofi.   In March 1989, Rhone-Poulenc's patent was assigned to Defendant Aventis Pharma S.A.  Since that time, Sanofi has controlled the development and been the owner, holder, or assignee of the patents related to Taxotere. Also in 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Poulenc had assigned to docetaxel.

29.     Sanofi launched Taxotere clinical trials and testing as early as 1990.  It began enrolling patients in Phase I clinical testing trials (called the "TAX 001" study) in June 1990. The TAX 001 study's results were reported in May 1994. Sanofi had direct and personal knowledge of these and other test results, and of subsequent decisions to withhold information and data from physicians, healthcare providers, patients, and Plaintiff.

30.     The initial application for FDA approval for Taxotere was unsuccessful. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended rejection because Taxotere was more toxic than already-approved competitor Taxol, and because more studies of side effects were needed.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

31.     The FDA ultimately approved Taxotere on May 14, 1996. According to its product labeling, Taxotere was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

32.     After the initial approval, Sanofi sought and received FDA approval for additional indications. Based on self-sponsored clinical trials, Sanofi claimed Taxotere's superiority over competing chemotherapy products approved for breast cancer treatment—including claiming superior efficacy over the lower potency paclitaxel (Taxol), its primary competitor.

33.     Throughout this period, Defendant McKesson Corporation distributed, packaged, labeled, and promoted Taxotere.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of Taxotere at conferences including at annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

34.     Contrary to Defendants' claims, post market surveillance demonstrates that the more potent and more toxic Taxotere does not in fact offer increased efficacy or benefits over other taxanes. In August 2007, *Cancer Treatment Reviews* published a study which found no significant differences in the efficacy and outcomes obtained with Taxotere (docetaxel) or Taxol (paclitaxel) in breast cancer treatment.  Likewise, a 2008 study in the *New England Journal of Medicine* concluded that Taxol (paclitaxel) was more effective than Taxotere (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

35.     Despite publication of these studies, Defendants continued to falsely promote the "superior efficacy" of Taxotere over competing paclitaxel (Taxol). At the June 2008 meeting for the American Society of Clinical Oncology, Sanofi distributed marketing materials comparing the efficacy of Taxotere versus paclitaxel (Taxol).  Specifically, Sanofi distributed a "reprint carrier" enclosing a 2005 study ("TAX 311") performed by researchers affiliated with Sanofi and US Oncology (which is now part of McKesson).  The cover of the reprint carrier claimed, among other things:

- "TAX 311: Taxotere demonstrated efficacy benefits vs paclitaxel"

7

- "This phase III study demonstrated that docetaxel is superior to paclitaxel in TTP, response duration, and OS [overall survival]."

- "Phase III trial demonstrated improved survival for Taxotere vs paclitaxel in metastatic breast cancer"

36.     Whatever the merits of the TAX 311 study may have been, Defendants' statements on the reprint carrier were false and/or misleading in light of the 2007 and 2008 studies finding that Taxotere was not more effective than Taxol.

37.     In response to these false and misleading statements, the FDA issued a warning letter to Sanofi in 2009 stating that claims of superiority over paclitaxel were "unsubstantiated." Sanofi's claims were misleading because the TAX 311 study had not demonstrated statistical significance and had not been replicated:

The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).

. . . .

The reference cited in support of these claims . . . does not constitute substantial evidence or substantial clinical experience to support these claims and representations because, among other factors, the study failed to demonstrate statistical significance on the primary endpoint and has not been replicated.[2]

38.     A qui tam lawsuit was also filed by a former employee accusing Sanofi and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

unlawful incentives to entice physicians to use Taxotere. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

39.     Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC and their predecessors and affiliates designed, directed, and/or engaged in a marketing scheme that promoted Taxotere for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of Taxotere to expand the market for Taxotere in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of Taxotere from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

40.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to docetaxel's (Taxotere) increased toxicity as compared to other available less toxic products.

41.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

## DEFENDANTS' COVER UP OF THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE AND PERMANENT DISFIGURING HAIR LOSS

42.     Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiff, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

43.     Defendants knew or should have known that the rate of permanent alopecia related to Taxotere was far greater than with other products available to treat the same condition.

9

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

44.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of Taxotere suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

45.     Although women might accept the possibility of permanent baldness as a result of the use of Taxotere if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in thousands of women being exposed to the side effects of Taxotere, there were already similar products on the market that were at least as effective as Taxotere and did not subject female users to the same risk of disfiguring permanent alopecia as does Taxotere.

46.     Beginning in the late 1990s, Sanofi sponsored and/or was aware of a study titled the GEICAM 9805 study. By 2005, it knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took Taxotere had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases longer. Sanofi knowingly, intentionally, and wrongfully withheld these results from physicians, healthcare providers, patients, and Plaintiff.

47.     In 2006, Sanofi knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken Taxotere suffered from permanent disfiguring hair loss for years after treatment ended.

48.     Despite Sanofi's knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken Taxotere and suffered from permanent disfiguring hair loss, Sanofi failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiff, that patients who take Taxotere are at a significantly increased risk of suffering from permanent disfiguring hair loss.

49.     Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that Taxotere causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and

Plaintiff in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking Taxotere.

50.    Patients like Plaintiff, did not have the opportunity to make an informed choice as to whether the benefits of Taxotere were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of Taxotere as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

51.    Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to Taxotere and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States for many years.

52.    In December 2015, the FDA changed the safety labeling for Taxotere (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

53.    As a direct result of Sanofi's wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

54.    As a direct result of Sanofi's failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using Taxotere over other comparable products was justified.

55.    Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

56.    Plaintiff Susan Fuller, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

**PLAINTIFF SUSAN FULLER'S DIAGNOSIS, TREATMENT, AND**
**RESULTING DISFIGURING PERMANENT ALOPECIA**

57.     Plaintiff Susan Fuller was diagnosed with breast cancer in approximately 2006.

58.     Following her diagnosis, Plaintiff Fuller met with her oncologist to discuss treatment.  Neither Plaintiff nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere. Accordingly, Plaintiff underwent chemotherapy that included Taxotere.

59.     Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent alopecia as a result of receiving chemotherapy with Taxotere.

**NATURE OF THE CLAIMS**

60.     While Sanofi disclosed Taxotere's risk of disfiguring permanent alopecia to patients and regulatory agencies in other countries, it failed to either alert Plaintiff, the public, and the scientific community in the United States or perform further investigation into Taxotere's safety. Sanofi failed to update the warnings for Taxotere, and failed to disclose results of additional studies as it learned new facts about the defects and risks of its product.

61.     In particular, Sanofi:

> (a)     failed to disclose its investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of Taxotere in response to these studies;

> (b)     failed to provide adequate warnings about the true safety risks associated with the use of Taxotere;

> (c)     failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Taxotere and its effects on the degree or severity of side effects related to permanent alopecia;

> (d)     failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of Taxotere;

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

(e)     failed to advise prescribing physicians, such as Plaintiff's physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to Taxotere;

(f)     failed to provide adequate instructions on how to intervene and/or reduced the risk of permanent alopecia related to the use of Taxotere;

(g)     failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)     failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of Taxotere as compared to other products designed to treat the same conditions as Taxotere; and

(i)     failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

62.     Although Sanofi modified the U.S. labeling and prescribing information for Taxotere on multiple occasions throughout the years, it failed to include any warning whatsoever related to permanent alopecia until December 2015, despite Sanofi's awareness of the frequency and severity of this side effect long before then.

63.     Before applying for and obtaining approval of Taxotere, Sanofi knew or should have known that consumption of Taxotere was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

64.     Despite knowing that Taxotere was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Sanofi produced, marketed, and distributed Taxotere in the United States.

65.     Sanofi failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

66.     From the date Sanofi received FDA approval to market Taxotere, it made, distributed, marketed, and sold Taxotere without adequate warning to Plaintiff and her prescribing physicians that Taxotere was associated with disfiguring permanent alopecia.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

67.     Instead, Sanofi ignored the association between the use of Taxotere and the risk of disfiguring permanent alopecia.

68.     Sanofi failed to disclose information that they possessed regarding their failure to adequately test and study Taxotere related to the side effect of disfiguring permanent alopecia. Plaintiff and her healthcare providers could not have discovered Sanofi's false representations and failures to disclose information through the exercise of reasonable diligence.

69.     As a result of the foregoing acts and omissions, Sanofi caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

70.     Plaintiff incorporates by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

71.     Plaintiff is within the applicable statutes of limitations for the claims presented herein because Plaintiff did not discover the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of Taxotere, and other acts and omissions.

72.     In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiff, Plaintiff's

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

prescribing health care professionals and the general consuming public that Defendants' Taxotere was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiff has suffered while aggressively and continually marketing and promoting Taxotere as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of Taxotere, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiff; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of Taxotere.

73. Defendants had a duty to disclose that Taxotere was defective, unreasonably dangerous and that the use of Defendants' Taxotere carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered.  Defendants breached that duty.

74. Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' Taxotere or the true risks associated with her use at the time she purchased and used Defendants' Taxotere.

75. Defendants did not notify, inform, or disclose to Plaintiff, Plaintiff's prescribing health care professionals or the general consuming public that Defendants' Taxotere was defective and that its use carried with it the serious risk of developing the injuries Plaintiff has suffered and complained of herein.

76. Because Defendants failed in their duty to notify Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that their Taxotere was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

77. Accordingly, Plaintiff files this lawsuit within the applicable statutes of limitations.  Plaintiff could not by exercise of reasonable diligence have discovered any

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

wrongdoing, nor could have discovered the causes of her injuries at an earlier time, and when Plaintiff's injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiff's injuries to Taxotere exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiff may have a basis for an actionable claim.

## **FIRST CLAIM FOR RELIEF**

### **(Product Liability for Negligence – Against All Defendants)**

78. Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

79. Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

80. Defendants failed to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into interstate commerce in that Defendants knew or should have known that using Taxotere created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

81. The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

  (a)  Selling Taxotere without disclosing its dangers and risks;

  (b)  Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of Taxotere;

16

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

(c)   Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Taxotere;

(d)   Negligently advertising and recommending the use of Taxotere without sufficient knowledge as to its dangerous propensities;

(e)   Negligently representing that Taxotere was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)   Negligently and falsely representing that Taxotere was superior to other commercially available products to treat the same forms of cancer that Taxotere was intended to treat;

(g)   Concealing information from Plaintiff, Plaintiff's physicians, the public, and the FDA in knowing that Taxotere was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)   Improperly concealing from and/or misrepresenting information to Plaintiff, Plaintiff's physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of Taxotere compared to other forms of treatment for breast cancer.

82.   Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with Taxotere.

83.   Defendants negligently conveyed that the safety risks and/or dangers of Taxotere were comparable with other forms of treatment for the same conditions for which Taxotere was prescribed to treat.

84.   Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Taxotere in that they:

(a)   Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Taxotere;

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

(b)     Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with Taxotere;

(c)     Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Taxotere;

(d)     Failed to warn Plaintiff and Plaintiff's physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(e)     Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with Taxotere.

(f)     Failed to warn Plaintiff and Plaintiff's physicians before actively encouraging the sale of Taxotere, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)     Were otherwise careless and/or negligent.

85.     Despite the fact that Defendants knew or should have known that Taxotere caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell Taxotere to consumers, including Plaintiff.

86.     Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiff, Plaintiff's physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of Taxotere as compared to other products already commercially available to treat the same types of cancer Taxotere was meant to treat.

87.     Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

18

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

88.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

89.    As a direct and proximate result of the use of Taxotere, Plaintiff experienced disfiguring permanent alopecia.

90.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

91.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

92.    The Taxotere that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of Taxotere. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

93.    Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name Taxotere, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of Taxotere. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

94.     Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with Taxotere, and Defendants aggressively and fraudulently promoted the product to physicians.

95.     As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of Taxotere, Plaintiff suffered disfiguring permanent alopecia and other conditions.

96.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## THIRD CLAIM FOR RELIEF

### (Fraudulent Misrepresentation – Against All Defendants)

97.     Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

98.     Defendants falsely and fraudulently represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

99.     When warning of safety and risks of Taxotere, Defendants fraudulently represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and/or effective for its indicated use.

100.    Defendants concealed their knowledge of docetaxel's (Taxotere's) defects from Plaintiff, Plaintiff's physicians, and the public in general and/or the medical community

20

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

specifically including, but not limited to, concealing their knowledge of the risk of developing disfiguring permanent alopecia.

101.    Defendants concealed their knowledge of the defects in their products from Plaintiff, Plaintiff's physicians, hospitals, pharmacists, and the public in general.

102.    Defendants made these false representations with the intent of defrauding and deceiving Plaintiff, Plaintiff's physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiff, Plaintiff's physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiff.

103.    Defendants made these false representations with the intent of defrauding and deceiving Plaintiff, Plaintiff's physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer.

104.    When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

105.    At the time Defendants made the aforesaid representations, and, at the time Plaintiff used Taxotere, Plaintiff and Plaintiff's physicians were unaware of the falsity of Defendants' representations, and Plaintiff and Plaintiff's physicians reasonably believed them to be true.

106.    In reliance upon Defendants' representations, Plaintiff and Plaintiff's physicians were induced to and did use and prescribe Taxotere, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

107.     Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

108.     Defendants knew or should have known that Taxotere had a potential to, could, and would cause severe and grievous injury to the users of Taxotere, including, but not limited to, the development of permanent disfiguring alopecia, and that Taxotere was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

109.     Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

110.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Concealment – Against All Defendants)

111.     Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

112.     At all times during the course of dealing between Defendants and Plaintiff and Plaintiff's healthcare providers, Defendants misrepresented the effectiveness and safety of Taxotere for its intended use.

113.     Defendants knew or were reckless in not knowing that its representations were false.

114.     In representations made to Plaintiff and Plaintiff's healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

(a)    that Taxotere was not as safe as other forms of treatment for which Taxotere was marketed and sold to cancer patients;

(b)    that the risks of adverse events with Taxotere were higher than those with other forms of treatment for which Taxotere was marketed and sold to cancer patients;

(c)    that the risks of adverse events with Taxotere were not adequately tested and/or known by Defendants;

(d)    that Defendants were aware of dangers in Taxotere, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

(e)    that Taxotere was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

115.    Defendants had a duty to disclose to Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare providers the defective nature of Taxotere, including but not limited to the heightened risks of disfiguring permanent alopecia.

116.    Defendants had sole access to material facts concerning the defective nature of Taxotere and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used Taxotere, including Plaintiff, in particular.

117.    Defendants' concealment and omissions of material facts concerning the safety of Taxotere was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, Plaintiff's physicians, hospitals, and healthcare providers into reliance on the continued use of Taxotere and to cause them to purchase, prescribe, and/or dispense Taxotere and/or use Taxotere.

118.    Defendants knew that Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding Taxotere set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

119.     Plaintiff, Plaintiff's physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

120.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF

### (Strict Product Liability for Misrepresentation – Against All Defendants)

121.     Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

122.     Defendants sold the Taxotere that Plaintiff's physician prescribed for Plaintiff and that Plaintiff used.

123.     Defendants were engaged in the business of selling the Taxotere for resale, use, or consumption.

124.     Defendants misrepresented facts as set forth herein concerning the character or quality of the Taxotere that would be material to potential prescribers and purchasers or users of the product.

125.     Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

126.     As a purchaser or user, Plaintiff reasonably relied on the misrepresentation.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

### SIXTH CLAIM FOR RELIEF

### (Fraud and Deceit – Against All Defendants)

127.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

128.    Defendants committed fraud by omission in applying for and gaining patent protection for Taxotere resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiff's exposure to the side effects of Taxotere.

129.    Defendants fraudulently claimed superior efficacy over other products intended to treat the same conditions that Taxotere was intended to treat. These fraudulent representations were the proximal cause of Plaintiff's exposure to the side effects of Taxotere.

130.    Defendants intentionally distributed false information, including but not limited to assuring Plaintiff, Plaintiff's physicians, hospitals, healthcare professionals, and/or the public that Taxotere was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

131.    Defendants intentionally omitted certain results of testing and or research to Plaintiff, Plaintiff's physicians, healthcare professionals, and the public.

132.    Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public to disseminate truthful information.

133.    Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public not to deceive Plaintiff, Plaintiff's physicians, and/or the public.

134.    The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

135.    The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug Taxotere was safe and effective for the treatment of various forms of cancer, including breast cancer.

136.    The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug Taxotere carried the

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

same risks, hazards, and/or dangers as other forms of treatment for the same conditions that Taxotere was intended to treat.

137.    The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Taxotere was not injurious to the health and/or safety of its intended users.

138.    The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Taxotere was no more injurious to the health and/or safety of its intended users than other forms of cancer treatments.

139.    These representations by Defendants were all false and misleading, as Taxotere carried with it the serious risk of developing disfiguring permanent alopecia.

140.    Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that Taxotere was not safe as a means of treatment for certain types of cancer that Taxotere was intended to treat.

141.    Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's physicians, and the public, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere not having dangerous and serious health and/or safety concerns.

142.    Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's physicians, and the public in general, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere being as safe as other products that treat the same conditions that Taxotere was intended to treat.

143.    It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiff, Plaintiff's physicians, and/or the public and to gain the confidence of Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of Taxotere and induce Plaintiff, Plaintiff's physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

144.     Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals that Taxotere was fit and safe for use as treatment for certain types of cancer, including breast cancer.

145.     Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those associated with other forms of treatment.

146.     Defendants made false claims and false representations in its documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere did not present risks related to disfigurement secondary to permanent alopecia.

147.     Defendants made false claims and false representations in its documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere did not present health or safety risks greater than other forms of treatment for the same conditions Taxotere was intended to treat.

148.     Defendants made these and other representations with the intention of deceiving and defrauding Plaintiff and Plaintiff's respective healthcare professionals.

149.     Defendants made these and other representations in order to induce Plaintiff and Plaintiff's respective healthcare professionals to rely upon the misrepresentations.

150.     Defendants' false misrepresentations caused Plaintiff and/or Plaintiff's healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Taxotere.

151.     Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Taxotere to the public at large, and Plaintiff and Plaintiff's physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

152.    Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to Taxotere.

153.    Defendants willfully and intentionally failed to disclose the truth and material facts related to Taxotere and made false representations with the purpose of deceiving and lulling Plaintiff and Plaintiff's respective healthcare professionals into a sense of security so that Plaintiff and Plaintiff's healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend Taxotere.

154.    Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiff and Plaintiff's respective healthcare professionals, would rely upon the information being disseminated.

155.    Plaintiff and her respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how Taxotere would treat certain forms of cancer that Taxotere was intended to treat.

156.    At the time Defendants' false representations were made, Plaintiff and/or Plaintiff's respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of Taxotere.

157.    Plaintiff and her healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of Taxotere, and Plaintiff and her healthcare providers with reasonable diligence could not have discovered the true facts.

158.    Had Plaintiff and her healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Taxotere, Plaintiff would not have purchased, used, and/or relied on Defendants' drug Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

159.     Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

160.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction
### of Emotional Distress – Against All Defendants)

161.     Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

162.     Defendants' conduct, as set forth above, was extreme and outrageous.

163.     Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

164.     Defendants' conduct caused Plaintiff severe emotional distress.

165.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Susan Fuller, demands judgment against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-Aventis U.S. LLC; and McKesson Corporation, in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 15, 2016                    Respectfully submitted,

                                             **GOMEZ TRIAL ATTORNEYS**


                                             By: _____
                                                    Ahmed S. Diab

                                             John H. Gomez
                                             Ahmed S. Diab
                                             Lindsay R. Stevens
                                             655 West Broadway, Suite 1700
                                             San Diego, California 92101
                                             Telephone: (619) 237-3490
                                             Facsimile: (619) 237-3496
                                             *john@thegomezfirm.com*
                                             *adiab@thegomezfirm.com*
                                             *lstevens@thegomezfirm.com*

                                             ***Attorneys for Plaintiff***

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

# EXHIBIT B

| Case Name | Plaintiff Name | Firm Name | Filing Date | Original Filing Location | Original Case Number | Current Case Location | Current Case Number | CTO # if Applicable | Plaintiff's Citizenship |
|---|---|---|---|---|---|---|---|---|---|
| Susan Fuller v. Sanofi S.A., et al. | Susan Fuller | Gomez Trial Attorneys | 12/16/2016 | San Diego Superior Court | 37-2016-00044267-CU-PL-CTL | EDLA MDL | 2:17-cv-01812-KDE-MBN | CTO #23 | La Jolla, CA |
| Joann Pickrell v. Sanofi S.A., et al. | Joann Pickrell | Gomez Trial Attorneys | 12/16/2016 | San Diego Superior Court | 37-2016-00044269-CU-PL-CTL | EDLA MDL | 2:17-cv-01813-KDE-MBN | CTO #23 | Bonsall, CA |
| Margarett Wright v. Sanofi S.A., et al. | Margarett Wright | Gomez Trial Attorneys | 12/16/2016 | San Diego Superior Court | 37-2016-00044270-CU-PL-CTL | EDLA MDL | 2:17-cv-01814-KDE-MBN | CTO #23 | San Diego, CA |
| Robin Castagnola v. Sanofi S.A. | Robin Castagnola | Gibbs Law Group | 11/22/2016 | Los Angeles Superior Court | BC 641516 | EDLA MDL | 2:17-cv-03864-KDE-MBN | CTO #19 | Valencia, CA |
| Candyse Jenkins v. Sanofi S.A., et al. | Candyse Jenkins | Cutter Law P.C. | 11/15/2016 | Alameda County Superior Court | RG16838881 | EDLA MDL | 2:17-cv-03866-KDE-MBN | CTO #19 | Oakland, CA |
| Mary Gardner v. Sanofi S.A. et al | Mary Gardner | Cutter Law P.C. | 11/14/2016 | Los Angeles County Superior Court | BC640591 | EDLA MDL | 2:17-cv-03865-KDE-MBN | CTO #19 | Compton, CA |
| Ernyes-Kofler et al v. Sanofi S.A. et al | Klara Ernyes-Kofler | Cutter Law P.C. | 12/5/2016 | Santa Clara County Superior Court | 16CV303585 | EDLA MDL | 2:17-cv-03867-KDE-MBN | CTO #19 | Mountain View, CA |
| Ernyes-Kofler et al v. Sanofi S.A. et al | Nadine Spertus | Cutter Law P.C. | 12/5/2016 | Santa Clara County Superior Court | 16CV303585 | EDLA MDL | 2:17-cv-03867-KDE-MBN | CTO #19 | San Diego, CA |
| Ernyes-Kofler et al v. Sanofi S.A. et al | Ann Buchanan | Cutter Law P.C. | 12/5/2016 | Santa Clara County Superior Court | 16CV303585 | EDLA MDL | 2:17-cv-03867-KDE-MBN | CTO #19 | Nashville, TN |
| Ernyes-Kofler et al v. Sanofi S.A. et al | Vera Sue Green | Cutter Law P.C. | 12/5/2016 | Santa Clara County Superior Court | 16CV303585 | EDLA MDL | 2:17-cv-03867-KDE-MBN | CTO #19 | Leesville, LA |
| Ernyes-Kofler et al v. Sanofi S.A. et al | Sharon M. Stewart | Cutter Law P.C. | 12/5/2016 | Santa Clara County Superior Court | 16CV303585 | EDLA MDL | 2:17-cv-03867-KDE-MBN | CTO #19 | Lake Charles, LA |
| Ernyes-Kofler et al v. Sanofi S.A. et al | Sylvia Washington | Cutter Law P.C. | 12/5/2016 | Santa Clara County Superior Court | 16CV303585 | EDLA MDL | 2:17-cv-03867-KDE-MBN | CTO #19 | Lawrenceberg, KY |
| McCallister et al v. Sanofi S.A. et al | Lisa McCallister | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | Carmichael, CA |
| McCallister et al v. Sanofi S.A. et al | Janine Hanson | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | West Covina, CA |
| McCallister et al v. Sanofi S.A. et al | Brenda Banks | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | Memphis, TN |
| McCallister et al v. Sanofi S.A. et al | Brenda Hawkins | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | LA |
| McCallister et al v. Sanofi S.A. et al | Penny Miller | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | KY |
| McCallister et al v. Sanofi S.A. et al | Carolyn Boyd | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | TN |
| McCallister et al v. Sanofi S.A. et al | Sandra Isham | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | TN |
| McCallister et al v. Sanofi S.A. et al | Ida Vincent | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | LA |
| McCallister et al v. Sanofi S.A. et al | Geraldine Jones | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | Memphis, TN |
| McCallister et al v. Sanofi S.A. et al | Josephine Hicks | Cutter Law P.C. | 12/9/2016 | Sacramento County Superior Court | 34-2016-00204609 | EDLA MDL | 2:17-cv-02356-KDE-MBN | CTO #26 | TX |
| Celeste West et al v. Sanofi S.A. et al | Celeste West | Napoli Shkolnik PLLC | 12/27/2016 | Alameda County Superior Court | HG16843464 | EDLA MDL | 2:17-cv-02067-KDE-MBN | CTO #25 | San Lorenzo, CA |

# EXHIBIT C

1    Amir M. Nassihi (SBN: 235936)
     anassihi@shb.com
2    SHOOK, HARDY & BACON L.L.P.
     One Montgomery, Suite 2700
3    San Francisco, California 94104-4505
     Telephone: 415-544-1900
4    Facsimile: 415-391-0281

5    Attorneys for Defendant
     sanofi-aventis U.S. LLC

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   SUSAN FULLER,                          CASE NO.:

12          Plaintiff,                      **NOTICE OF REMOVAL BY**
                                            **DEFENDANT SANOFI-AVENTIS**
13          v.                              **U.S. LLC**
                                            **UNDER 28 U.S.C. §§ 1332, 1441,**
14   SANOFI S.A.; AVENTIS PHARMA S.A.;      **AND 1446.**
     SANOFI-AVENTIS U.S. LLC, and
15   MCKESSON CORPORATION;                  [Removed from San Diego County
                                            Superior Court Case No. 37-2016-
16          Defendants.                     00044267-CU-PL-CTL]

17                                          [Filed concurrently with Civil Cover
                                            Sheet; Declaration of Amir Nassihi;
18                                          Notice of Party with Financial Interest
                                            and Corporate Disclosure Statement]
19
                                            Complaint filed: December 16, 2016
20

21

22

23

24

25

26

27

28
                                     1
     DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

1

## **TABLE OF CONTENTS**

2

3   I.      THE REMOVED CASE ................................................................................2

4
    II.     SANOFI-AVENTIS U.S. LLC HAS SATISFIED THE PROCEDURAL
5           REQUIREMENTS FOR REMOVAL ........................................................3

6   III.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER
7           JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441 ......................4

8           A.      Diversity of Citizenship Exists Between Plaintiff and
                   sanofi-aventis U.S. LLC, the Only Properly Joined Defendant......................4
9
            B.      The Citizenship of McKesson Does Not Defeat Diversity
10                 Jurisdiction Because McKesson is Fraudulently Joined ...............5

11          C.      The Amount-in-Controversy Requirement is Satisfied ..................................10

12
13  IV.     CONCLUSION .........................................................................................13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aronis v. Merck & Co., Inc.,*
  No. S-05-0486, 2005 WL 5518485 (E.D. Cal. May 3, 2005) ...............................7

*Ashcroft v. Iqbal,*
  536 U.S. 662 (2009)..................................................................................6

*Badon v. R J R Nabisco, Inc.,*
  224 F.3d 382 (5th Cir. 2000) ......................................................................8

*Bailey v. J.B. Hunt Transp., Inc.,*
  No. 06-240, 2007 WL 764286 (E.D. Pa. Mar. 8, 2007) ....................................11

*Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.,*
  234 F. Supp. 2d 633 (S.D. Miss. 2002) .........................................................8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................6

*Brown v. Allstate Ins.,*
  17 F. Supp. 2d 1134 (S.D. Cal. 1998)............................................................6

*Camara v. Bayer Corp.,*
  No. C 09-06084 WHA, 2010 WL 902780 (N.D. Cal. Mar. 9, 2010)....................9

*Campbell v. Bridgestone/Firestone, Inc.,*
  No. CIVF051499FVSDLB, 2006 WL 707291 (E.D. Cal. Mar. 17, 2006) ........11

*Century Assets Corp. v. Solow,*
  88 F. Supp. 2d 659 (E.D. Tex. 2000)............................................................12

*Fields v. Jay Henges Enters., Inc.,*
  No. 06-323-GPM, 2006 WL 1875457 (S.D. Ill. June 30, 2006).......................12

*Fisher v. Paul Revere Ins. Group,*
  55 Fed. Appx. 412 (9th Cir. 2002)................................................................8

*Hunter v. Philip Morris USA,*
  582 F.3d 1039 (9th Cir. 2009) ....................................................................5

ii

*In re Fluoroquinolone Prod. Liab. Litig.*,
    No. MDL 15-2642 (JRT), 2016 WL 4154338 (D. Minn. Aug. 5, 2016) ...........9

*In re Rezulin Prods. Liab. Litig.*,
    133 F. Supp. 2d 272 (S.D.N.Y. 2001) ...................................... 7, 8, 11

*In re Rezulin Prods. Liab. Litig.*,
    168 F. Supp. 2d 136 (S.D.N.Y.2001) ..................................................8

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
    MDL 2740, 2016 WL 5845996 (J.P.M.L. Oct. 4, 2016) ......................................2

*In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Relevant Prods.
    Liab. Litig.*,
    No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010)......7

*Jankins v. Bayer Corp.*,
    No. 3:10-cv-20095-DRH-PMF, MDL No. 2100, 2010 WL 1963202 (S.D.
    Ill. May 15, 2010) ................................................................................7

*Jankins v. Bayer Corp.*,
    No. 3:10-cv-20095-DRH-PMF, MDL No. 2100, 2010 WL 2402926 (S.D.
    Ill. June 15, 2010) ................................................................................6

*Johnson v. Parke Davis*,
    114 F. Supp. 2d 522 (S.D. Miss. 2000) ........................................5, 7

*Jones v. Interstate Recovery Serv.*,
    160 Cal. App. 3d 925 (1984) ....................................................10

*Lyons v. Am. Tobacco Co.*,
    No. Civ. A. 96-0881-BH-S, 1997 WL 809677 (S.D. Ala. Sept. 30, 1997)..........6

*Maffei v. Allstate California Ins. Co.*,
    412 F. Supp. 2d 1049 (E.D. Cal. 2006) ...........................................5

*Maiden v. N. Am. Stainless*,
    19 Fed. Appx. 485, 2005 WL 3557175 (6th Cir. Dec. 29, 2005)........................8

*McCabe v. General Foods Corp.*,
    811 F.2d 1336 (9th Cir. 1987) ................................................6

*McCoy v. Gen. Motors Corp.*,
    226 F. Supp. 2d 939 (N.D. Ill. 2002) ................................................11

DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

*Novelli v. Allstate Texas Lloyd's,*
  No. H-11-2690, 2012 WL 949675 (S.D. Tex. Mar. 19, 2012) ...........................8

*Oshima v. Kia Motors Corp.,*
  No. 11-CV-03349-REB-MEH, 2012 WL 1578397 (D. Colo. May 4, 2012) .......8

*Quinn v. Kimble,*
  228 F. Supp. 2d 1036 (E.D. Mo. 2002) ...........................................................11

*Roe v. Michelin N. Am., Inc.,*
  613 F.3d 1058 (11th Cir. 2010) ................................................................ 10, 12

*Salisbury v. Purdue Pharm. L.P.,*
  166 F. Supp. 2d 546 (E.D. Ky. 2001) .................................................................7

*Simmons v. PCR Tech.,*
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ...........................................................10

*Singer v. State Farm Mut. Auto. Ins. Co.,*
  116 F.3d 373 (9th Cir. 1997) ............................................................................10

*Staples v. Merck & Co., Inc.,*
  270 F. Supp. 2d 833 (N.D. Tex. 2003) ...............................................................8

*United Computer Sys., Inc. v. AT&T Corp.,*
  298 F.3d 756 (9th Cir. 2002) ..............................................................................3

*Vu v. Ortho-McNeil Pharma., Inc.,*
  602 F. Supp. 2d 1151 (N.D. Cal. 2009) .............................................................5

**STATUTES**

28 U.S.C. § 1332 ................................................................................ 2, 4, 5, 13

28 U.S.C. § 1407 ..............................................................................................2

28 U.S.C. § 1441 ............................................................................. 2, 3, 4, 13

28 U.S.C. § 1446 ............................................................................... 2, 3, 13

California Code of Civil Procedure section 425.10(b) .........................................10

## NOTICE OF REMOVAL OF CIVIL ACTION

Defendant sanofi-aventis U.S. LLC removes this action from the San Diego County Superior Court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  As set forth in more detail below, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because McKesson Corporation ("McKesson") was fraudulently joined as Plaintiff has not shown it has a connection to this case.  Moreover, Plaintiff failed to adequately plead a cause of action against McKesson.  In support of removal, sanofi-aventis U.S. LLC states as follows:

### I.    THE REMOVED CASE

1.    Plaintiff filed this civil action on December 16, 2016, in the San Diego County Superior Court, styled *Susan Fuller v. Sanofi S.A., et al.*, Case No. 37-2016-00044267-CU-PL-CTL.

2.    This case is one of more than 700 products-liability actions now pending in the federal courts in which plaintiffs allege they have permanent alopecia as a result of using Taxotere®.[1]  On October 4, 2016, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") determined that centralization was appropriate for these actions and began transferring Taxotere® cases involving allegations of permanent alopecia to Judge Kurt D. Engelhardt of the United States District Court for the Eastern District of Louisiana for consolidated pretrial proceedings.  *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL 2740, 2016 WL 5845996 (J.P.M.L. Oct. 4, 2016).   The JPML reasoned that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."  *Id.* at 1.

---

[1] In addition to this case, two additional cases currently pending in San Diego County Superior Court, *Wright v. Sanofi S.A. et al.*, No. 37-2016-00044270, and *Pickrell v. Sanofi S.A. et al.*, No. 37-2016-00044269, are also being removed to this Court today.  Once case numbers are assigned, Notices of Related Cases will be filed in all three cases.

DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

1  II.      **SANOFI-AVENTIS U.S. LLC HAS SATISFIED THE PROCEDURAL**

2          **REQUIREMENTS FOR REMOVAL**

3          3.      This removal is timely.  Sanofi-aventis U.S. LLC files this Notice of

4  Removal within 30 days of February 1, 2017, the date of service of the initial pleading

5  upon sanofi-aventis U.S. LLC.

6          4.      Pursuant to 28 U.S.C. § 1446(a), attached is a copy of all process,

7  pleadings, and orders served upon sanofi-aventis U.S. LLC.  *See* Exhibit A.[2]

8          5.      The United States District Court for the Southern District of California is

9  the proper venue for removal under 28 U.S.C. § 1441(a) because it is "the district and

10 division embracing the place where such action is pending," namely, San Diego

11 County, California.

12         6.      Pursuant to 28 U.S.C. § 1446(d), written notice of this removal has been

13 provided simultaneously to all parties and the clerk of the San Diego County Superior

14 Court.

15         7.      As discussed below, McKesson was fraudulently joined in this case.

16 Therefore, McKesson's consent is not required for removal.    28 U.S.C. §

17 1446(b)(2)(A) (requiring the consent for removal only of those defendants "who have

18 been properly joined"); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762

19 (9th Cir. 2002) ("[T]he 'rule of unanimity' does not apply to 'nominal, unknown or

20 fraudulently joined parties.'" (*quoting Emrich v. Touche Ross & Co.*, 84 F.2d 1190,

21 1193 fn. 1 (9th Cir. 1988)).

22         8.      Likewise, pursuant to 28 U.S.C. § 1446(b)(2)(A), only defendants that

23 have been properly joined and served must join in or consent to the removal of the

24 action.  Because Sanofi S.A. and Aventis Pharma S.A. have not been properly served,

25 they are not required to join in or consent to this removal.

26

27  ―――――――――――――
   [2] At the time of filing this removal, a conformed copy of the Answer and Jury
28   Demand, which was filed on February 14, 2017, was unavailable.  While an as-filed
     copy is included, a conformed copy can be lodged upon receipt if necessary.

                                                    3

III.    **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441**

9.      This  Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states. Removal under 28 U.S.C. § 1441(b) is appropriate in this matter since complete diversity of citizenship exists between Plaintiff and all <u>properly joined</u> Defendants. Specifically, the citizenship of McKesson is irrelevant for jurisdictional purposes since that Defendant, as explained below, was fraudulently joined.

A.    <u>Diversity of Citizenship Exists Between Plaintiff and sanofi-aventis U.S. LLC, the Only Properly Joined Defendant</u>

10.    This Court has diversity jurisdiction over this matter because there is complete diversity of citizenship between Plaintiff and Defendant sanofi-aventis U.S. LLC.

11.    According to the Complaint, Plaintiff Susan Fuller is a resident of California (*see* Compl. ¶ 6).

12.    Sanofi-aventis U.S. LLC is now and was at the time Plaintiff commenced this action, a Delaware limited liability company with its principal place of business in New Jersey. (Compl. ¶ 9.)  Sanofi U.S. Services Inc. is the sole member of sanofi-aventis U.S. LLC.  Sanofi U.S. Services Inc. is now and was at the time Plaintiff commenced this action, a Delaware corporation with its principal place of business in New Jersey.  Thus, for jurisdictional purposes, sanofi-aventis U.S. LLC is a citizen of Delaware and New Jersey. *See* 28 U.S.C. § 1332(c)(1).

13.    Sanofi S.A. is now and was at the time Plaintiff commenced this action, a French corporation, having its principal place of business in France and, thus, for jurisdictional purposes, is a citizen of France. (Compl. ¶ 7.)

DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

14.    Aventis Pharma S.A. is now, and was at the time Plaintiff commenced this action, a French corporation, having its principal place of business in France and, thus, for jurisdictional purposes, is a citizen of France.  (Compl. ¶ 8.)

**B.    The Citizenship of McKesson Does Not Defeat Diversity Jurisdiction Because McKesson is Fraudulently Joined**

15.    McKesson is alleged to be a citizen of California (*see* Compl. ¶ 11). "Although an action may be removed to federal court only where there is complete diversity of citizenship one exception to the requirement for complete diversity is where a non-diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (internal quotations omitted).  "Joinder is fraudulent if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.*  "When determining whether a defendant is fraudulently joined, the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Maffei v. Allstate California Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006).   Under the fraudulent joinder doctrine, the citizenship of resident defendant McKesson should be disregarded for purposes of removal pursuant to 28 U.S.C. § 1441(b)(2).  *See, e.g.*, *Vu v. Ortho-McNeil Pharma., Inc.*, 602 F. Supp. 2d 1151, 1154-55 (N.D. Cal. 2009) (disregarding a resident defendant's citizenship under the fraudulent joinder doctrine reasoning defendant was fraudulently joined because she did not market or distribute the product in question).

16.    Fraudulent joinder exists here since there is no showing that McKesson has a connection to this case. *See, e.g.*, *Vu*, 602 F. Supp. 2d at 1154–55 (finding that defendant was fraudulently joined in a products-liability action where defendant did not market or sell the product at issue to plaintiffs); *Johnson v. Parke Davis*, 114 F. Supp. 2d 522, 524 (S.D. Miss. 2000) (denying remand where plaintiffs "failed to establish any connection between themselves and the named [in-forum defendants]").

17.     The fraudulent joinder of McKesson is obvious based on the insufficient factual allegations of Plaintiff's pleadings—namely the lack of allegations related to McKesson's connection to this Plaintiff. *See, e.g., Brown v. Allstate Ins.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material allegations against [the in-state defendants] are made"); *Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them); *see also McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (upholding fraudulent joinder determination reasoning "[o]n the basis of the complaint alone, the district court could rightly conclude that no cause of action had been stated against [the defendants]").   In order to state a proper claim for relief, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions and threadbare recitals of elements, supported by mere conclusion, simply do not suffice. *Ashcroft v. Iqbal*, 536 U.S. 662, 678 (2009). The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citation omitted). Rather, Rule 8 "'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented.'" *Id.* at 556 (citation omitted). Thus, pleadings—such as Plaintiff's Complaint here—which fail to set forth factual allegations to support asserted legal conclusions should be dismissed for failure to state a claim. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 536 U.S. at 678–79 ("Rule 8 . . . does not unlock doors of discovery for a plaintiff armed with nothing more than conclusions.").

18.     In particular, a non-manufacturer defendant is fraudulently joined where the complaint does not allege that that defendant supplied the actual products used by the plaintiff. *See, e.g., Jankins v. Bayer Corp.*, No. 3:10-cv-20095-DRH-

6

1   PMF, MDL No. 2100, 2010 WL 2402926, *3 (S.D. Ill. June 15, 2010) (denying

2   reconsideration of order denying remand, explaining that the complaint's allegation

3   "that McKesson was *a* distributor of the subject matter drugs is not the equivalent of

4   alleging that McKesson was *the* distributor that supplied the drugs that allegedly

5   caused Plaintiff's injuries," and that "[a]bsent such an allegation, there can be no

6   causal connection between McKesson and Plaintiff's alleged injuries," which meant

7   that the complaint did "not sufficiently [plead] a claim against McKesson")

8   (emphasis in original); *Jankins v. Bayer Corp.*, No. 3:10-cv-20095-DRH-PMF, MDL

9   No. 2100, 2010 WL 1963202, *4 (S.D. Ill. May 15, 2010) (because plaintiff did "not

10  allege that McKesson distributed the pills that were allegedly the cause of her injury"

11  and that the "failure to plead a causal connection between McKesson and [the

12  plaintiff's] alleged injuries [was] fatal to her claims against McKesson"); *In re*

13  *Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*,

14  No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414, *18 (S.D. Ill. Oct. 4, 2010)

15  ("Absent an allegation that McKesson supplied the subject drugs, the Court has no

16  choice but to find that McKesson has been fraudulently joined."); *Aronis v. Merck &*

17  *Co., Inc.*, No. S-05-0486, 2005 WL 5518485, *1–*2 (E.D. Cal. May 3, 2005)

18  (denying remand and holding that McKesson was fraudulently joined because

19  plaintiff made "no allegation that McKesson ever handled the specific pills that were

20  allegedly the cause of her injuries"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d

21  272, 291 (S.D.N.Y. 2001) ("[T]he complaint must allege that the defendant

22  pharmacies sold or supplied Rezulin *to plaintiffs*. Without drawing that connection,

23  plaintiffs have no way of showing that the pharmacy defendants' acts proximately

24  caused the alleged injuries." (emphasis in original)); *Salisbury v. Purdue Pharm.*

25  *L.P.*, 166 F. Supp. 2d 546, 549 (E.D. Ky. 2001) ("plaintiff does not allege that any of

26  the proposed representative plaintiffs themselves (or, for that matter, any members of

27  the proposed Rule 23 classes) purchased or were otherwise supplied [the medication]

28  by the defendant pharmacies"); *see also Johnson v. Parke Davis*, 114 F. Supp. 2d

7

1    522, 524 (S.D. Miss. 2000) (denying remand where plaintiffs "failed to establish any

2    connection between themselves and the named [in-forum defendants]").

3         19.     A plaintiff cannot evade these precedents by referring to "Defendants"

4    generally and lumping the allegations against the defendants together, while making

5    no specific factual allegations about the in-state defendant's activities.  *See In re*

6    *Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 291 ("holding "plaintiffs improperly

7    joined the pharmacies as defendants" and therefore affirming diversity jurisdiction

8    when "[p]laintiffs there make no allegations specifically against the defendant

9    pharmacies, but instead lump them together with the manufacturers and attribute the

10   acts alleged-failure to warn, breach of warranty, and fraud-to the 'defendants'

11   generally"); *see also Fisher v. Paul Revere Ins. Group*, 55 Fed. Appx. 412, 414 (9th

12   Cir. 2002) (affirming fraudulent joinder ruling reasoning plaintiff "asserted only

13   'general and conclusory' claims against [defendant]").[3]

14        20.     Here, Plaintiff alleges that "McKesson was in the business of labeling,

15   selling, marking, packaging, repackaging, and distributing Taxotere, including upon

16   information and belief the Taxotere administered to Plaintiff" (*see* Compl. ¶ 11). Yet,

17

18   [3] *See also Maiden v. N. Am. Stainless*, 19 Fed. Appx. 485, 2005 WL 3557175 (6th Cir.
     Dec. 29, 2005) (finding fraudulent joinder where complaint did not seek relief directly
19   from the fraudulently joined defendant); *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382,
     391–93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiffs'
20   claims simply referred to "defendants" collectively, and where plaintiffs failed to
     allege any "particular or specific activity" on the part of each of the in-state
21   defendants); *Oshima v. Kia Motors Corp.*, No. 11-CV-03349-REB-MEH, 2012 WL
     1578397 (D. Colo. May 4, 2012) (finding fraudulent joinder where there were global
22   references to defendants collectively in the complaint); *Novelli v. Allstate Texas
     Lloyd's*, No. H-11-2690, 2012 WL 949675, *4–*5 (S.D. Tex. Mar. 19, 2012) (finding
23   fraudulent joinder where identical wrongful acts were collectively alleged against
     individual and corporate defendants); *Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d
24   833, 844 (N.D. Tex. 2003) (allegation that "Defendants committed actual fraud"
     insufficient to warrant remand); *Banger ex rel. Freeman v. Magnolia Nursing Home,
25   L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) ("conclusory and generic allegations
     of wrongdoing on the part of all Defendants … are not sufficient to show that
26   [defendant] was not fraudulently joined"); *In re Rezulin Prods. Liab. Litig.*, 168 F.
     Supp. 2d at 136, 140 & n.10 (S.D.N.Y. 2001) (remand should be denied where
27   "plaintiffs make no specific allegations against [the defendant] at all, instead [they]
     attribut[e] wrongdoing to the collective 'defendants'"); *In re Rezulin Prods. Liab.
28   Litig.*, 133 F. Supp. 2d at 291 (finding fraudulent joinder where plaintiffs "lump"
     defendants together "and attribute the acts alleged … to the 'defendants' generally").

1   McKesson has not been the exclusive distributor of Taxotere® in California.

2   Moreover, Plaintiff makes no further allegations specific to McKesson. She does not

3   allege *where* she received Taxotere®, *when* she received Taxotere®, *from whom* she

4   received Taxotere®, or any other case-specific facts that allow Defendants to

5   determine whether or not she actually received Taxotere® that was distributed by

6   McKesson.

7          21.     Sanofi-aventis U.S. LLC sought this information from Plaintiff's

8   counsel, but Plaintiff's counsel did not respond. (*See* Decl. of Amir Nassihi ¶ 2, Ex.

9   1 [Dec. 20, 2016 letter].) This information should be readily available to Plaintiff's

10  counsel and should have been including in the initial pleading.

11         22.     In the Fluoroquinolone MDL proceeding in the District of Minnesota,

12  four plaintiffs whose cases were removed to the Northern District of California and

13  then transferred to the MDL sought remand back to California state court, arguing

14  removal was improper because the court lacked diversity jurisdiction. *In re*

15  *Fluoroquinolone Prod. Liab. Litig.*, No. MDL 15-2642 (JRT), 2016 WL 4154338, at

16  *1 (D. Minn. Aug. 5, 2016). "[I]n the interests of judicial economy and for efficient

17  handling of the MDL," the MDL court deferred ruling on the motion to remand until

18  it was determined whether McKesson actually distributed the particular drugs taken

19  by the plaintiffs. *Id.* at *2. There, like here, plaintiffs' allegations that McKesson

20  distributed their drugs were entirely on "information and belief." *Id.* The MDL court

21  also noted that "the information necessary to determine if McKesson is a proper party

22  to this action should have been provided to Defendants." *Id.*

23         23.     Plaintiff's additional allegations regarding distribution of Taxotere® are

24  directed at "Defendants" collectively, or just at Sanofi. (*See, e.g.*, Compl. at ¶¶ 1, 2,

25  4, 6, 80, 84-85, 92). Plaintiff's conclusory allegations against McKesson are not

26  supported by any specific factual allegations. Plaintiff has therefore failed to allege

27  facts giving rise to a plausible claim of causation with respect to McKesson. *Camara*

28  *v. Bayer Corp.*, No. C 09-06084 WHA, 2010 WL 902780, *3 (N.D. Cal. Mar. 9,

9

1  2010) (staying case pending transfer to MDL and declining to decide motion to

2  remand because plaintiffs' complaint failed "to clearly explain the role of McKesson

3  in the injury of these specific plaintiffs"). Therefore, there is no reasonable basis to

4  recover against McKesson in this case. As such, McKesson is fraudulently joined

5  and removal is proper.

6      C.    The Amount-in-Controversy Requirement is Satisfied

7      24.    The Complaint does not expressly state the amount in controversy, as

8  California Code of Civil Procedure section 425.10(b) precludes a plaintiff from stating

9  a specific damage claim in a personal injury action. *See Jones v. Interstate Recovery*

10  *Serv.*, 160 Cal. App. 3d 925, 928 (1984). Where, as here, a complaint does not allege

11  a specific amount of damages, "the district court may consider whether it is 'facially

12  apparent' from the complaint that the jurisdictional amount has been satisfied."

13  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *see also*

14  *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (same); *accord*

15  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1063 (11th Cir. 2010) (noting that the

16  court "found no case in any other circuit that purports to prohibit a district court from

17  employing its judicial experience or common sense in discerning whether the

18  allegations in a complaint facially establish the jurisdictionally required amount in

19  controversy").

20      25.    It is facially apparent from the Complaint that the amount in controversy

21  exceeds $75,000. Plaintiff alleges that, as a result of her use of Taxotere®, she

22  "suffered serious and permanent physical and emotional injuries, including permanent

23  hair loss" (*see* Compl. ¶ 2). Plaintiff claims that Defendants caused her "to suffer

24  serious and dangerous side effects, severe and personal injuries that are permanent and

25  lasting in nature, and economic and non-economic damages, harms, and losses,

26  including but not limited to: past and future medical expenses; past and future loss of

27  earnings; past and future loss and impairment of earning capacity; permanent

28  disfigurement including permanent alopecia; mental anguish; severe and debilitating

10

1  emotional distress; increased risk of future harm; past, present, and future physical and

2  mental pain, suffering, and discomfort; and past, present, and future loss and

3  impairment of the quality and enjoyment of life" (*id.* at ¶ 165). Courts across the

4  country have routinely held that cases involving serious physical injuries, such as

5  those alleged here, satisfy the amount in controversy requirement. *See, e.g., Campbell*

6  *v. Bridgestone/Firestone, Inc.*, No. CIVF051499FVSDLB, 2006 WL 707291, *2

7  (E.D. Cal. Mar. 17, 2006) (amount-in-controversy requirement satisfied where

8  plaintiffs sought compensatory damages for wage loss, hospital and medical expenses,

9  general damage, property damage, and loss of earning capacity, and alleged "severe

10 [injuries]," including head trauma, a broken right arm, a broken wrist and a deep

11 laceration to the lower left leg); *Bailey v. J.B. Hunt Transp., Inc.*, No. 06-240, 2007

12 WL 764286, *6 (E.D. Pa. Mar. 8, 2007) (amount-in-controversy requirement satisfied

13 where complaint alleged a "litany of serious, permanent injuries," "surgeries and

14 treatments," and "the allegedly permanent impairment of [the] ability to enjoy life's

15 activities"); *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002)

16 ("courts have routinely held that when plaintiffs allege serious, permanent injuries and

17 significant medical expenses, it is obvious from the face of the complaint that the

18 plaintiffs' damages exceeded the jurisdictional amount"); *Quinn v. Kimble*, 228 F.

19 Supp. 2d 1036, 1037–38 (E.D. Mo. 2002) (holding it was "facially apparent" that

20 amount in controversy requirement satisfied "[g]iven the allegations in the complaint

21 that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and

22 will incur further such expenses; have permanent, progressive, and disabling injuries,"

23 even though plaintiffs asserted that their total damages did not exceed $75,000); *In re*

24 *Rezulin Prods. Liab. Litig.*, 133 F. Supp. at 296 (finding complaint "obviously asserts

25 a claim exceeding $75,000" where plaintiff sought damages for alleged "serious and

26 life-threatening medical conditions" and economic losses due to the use of a

27 prescription medication).

28

DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

26.     Sanofi-aventis U.S. LLC need not confirm through discovery in the State Court Action that the jurisdictional amount is satisfied. Indeed, "a defendant who wishes to remove a case to federal court cannot 'wait for discovery responses that simply confirm what was obvious from the face of the complaint; in such cases, defendants are not insulated from a remand to state court.' It is not the law that 'cases are not removable until there has been an absolute affirmation via discovery . . . that more than $75,000 [is] in issue.'" *Fields v. Jay Henges Enters., Inc.*, No. 06-323-GPM, 2006 WL 1875457, *3 (S.D. Ill. June 30, 2006) (quoting *McCoy*, 226 F. Supp. 2d at 941); *see also Roe*, 613 F.3d at 1064 ("when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate . . . . Otherwise, a defendant could wrongly be denied the removal to which it is entitled."); *Century Assets Corp. v. Solow*, 88 F. Supp. 2d 659, 661 (E.D. Tex. 2000) (holding that a complaint "can facially state a claim over the jurisdictional amount when there are *no* numbers in the [complaint] at all," and that removal was untimely where it was apparent from the complaint that an amount sufficient to satisfy the requirements of diversity jurisdiction was in controversy) (emphasis in original) (collecting cases).

DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

1   IV.   **CONCLUSION**

2        In this civil action, there is complete diversity of citizenship between Plaintiff

3   and the only properly joined Defendant, sanofi-aventis U.S. LLC.  Sanofi-aventis U.S.

4   LLC is not a citizen of California, and the amount in controversy is satisfied.  Thus,

5   this case is removable pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Defendant

6   sanofi-aventis U.S. LLC hereby removes the above-captioned action to the United

7   States District Court for the Southern District of California.

8

9   Dated:  February 15, 2017            Respectfully submitted,

10                                SHOOK HARDY & BACON L.L.P.

11

12                               By: _s/ Amir M. Nassihi_
                                    Amir M. Nassihi

13                              Attorneys for sanofi-aventis U.S. LLC
                              E-mail:  anassihi@shb.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBITS

**Exhibit A-1:**  SUMMONS ................................................................................. 15

**Exhibit A-2:**  COMPLAINT ............................................................................. 16

**Exhibit A-3:**  CIVIL CASE COVER SHEET ................................................... 47

**Exhibit A-4:**  NOTICE OF CASED ASSIGNMENT ......................................... 49

**Exhibit A-5:**  ADR INFORMATION ................................................................. 50

**Exhibit A-6:**  ANSWER AND JURY DEMAND ............................................... 53

DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

# EXHIBIT A-1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SANOFI S.A., AVENTIS PHARMA S.A., SANOFI-AVENTIS U.S. LLC, and MCKESSON CORPORATION

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SUSAN FULLER

</td><td>

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/16/2016** at 09:09:06 AM

Clerk of the Superior Court
By Patrick Gonzaga, Deputy Clerk

</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):*<br><br>Superior Court of the State of California - San Diego County<br>330 West Broadway, San Diego, CA 92101 | **CASE NUMBER:**<br>37-2016-00044267-CU-PL-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John H. Gomez (SBN 171485) 655 West Broadway, Ste. 1700, San Diego, CA 92101 Tel: (619) 237-3490

| DATE:<br>*(Fecha)* | 12/19/2016 | Clerk, by<br>*(Secretario)* | *P. Gonzaga* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|
| | | | P. Gonzaga | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* SANOFI S.A

   under: ☑ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|

Exhibit A-1

00015

# EXHIBIT A-2

John H. Gomez (SBN 171485)
Ahmed S. Diab (SBN 262319)
Lindsay R. Stevens (SBN 256811)
**Gomez Trial Attorneys**
655 W Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496
john@thegomezfirm.com
adiab@thegomezfirm.com
lstevens@thegomezfirm.com

*Attorneys for Plaintiff Susan Fuller*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/16/2016** at 09:09:06 AM
Clerk of the Superior Court
By Patrick Gonzaga, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN DIEGO

SUSAN FULLER,

                Plaintiff,

        v.

SANOFI S.A., AVENTIS PHARMA S.A.,
SANOFI-AVENTIS U.S. LLC, and
MCKESSON CORPORATION,

                Defendants.

Case No. 37-2016-00044267-CU-PL-CTL

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Negligence
2. Strict Liability – Failure to Warn
3. Fraudulent Misrepresentation
4. Fraudulent Concealment
5. Strict Liability – Misrepresentation
6. Fraud and Deceit
7. Intentional Infliction of Emotional Distress

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00016

1    Plaintiff Susan Fuller, by and through her attorneys, respectfully submits the following

2 Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-

3 Aventis U.S. LLC (collectively "Sanofi" or "Sanofi Defendants"); and McKesson Corporation,

4 and alleges the following upon personal knowledge, information and belief, and investigation of

5 counsel.

6                                    **NATURE OF THE CASE**

7    1.    Plaintiff is a breast cancer survivor who was prescribed and administered

8 Taxotere®, a chemotherapy drug developed, manufactured, and distributed by Defendants.

9 Although lower potency alternatives have been available for years, Defendants misleadingly

10 promoted Taxotere as having superior efficacy based on self-sponsored clinical trials, even

11 though the FDA called these claims "unsubstantiated." In fact, Taxotere's increased potency

12 only makes it more toxic than alternatives and causes more severe side effects, including a

13 significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a

14 common side effect related to chemotherapy, Taxotere's risk of permanent hair loss is not.

15 Defendants concealed this information from physicians, healthcare providers, and patients,

16 causing Plaintiff and thousands of women to suffer permanent hair loss without any additional

17 benefit or warning.

18    2.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff

19 suffered serious and permanent physical and emotional injuries, including permanent hair loss,

20 and seek damages relating to Defendants' design, manufacture, distribution, labeling,

21 advertising, marketing, promotion, and sale of Taxotere.

22                                  **JURISDICTION AND VENUE**

23    3.    This Court has jurisdiction over this action pursuant to Article 6, § 10 of the

24 California Constitution and California Code of Civil Procedure § 410.10.

25    4.    This Court has personal jurisdiction over Defendants, each of which is licensed to

26 conduct and/or is systematically and continuously conducting business in the State of California,

27 including, but not limited to, the marketing, advertising, selling, and distributing of drugs,

28 including Taxotere, to the residents in this state. Defendants have sufficient minimum contacts

Exhibit A-2
00017

1   in California and intentionally avail themselves of the markets within California through the

2   promotion, sale, marketing, and distribution of their products, including Taxotere, thus rendering

3   the exercise of jurisdiction by this Court proper and necessary.

4        5.        Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5.

5   Defendant transacts business in this County and the events complained of occurred in this

6   County.

7                                      **PARTIES**

8        6.        Plaintiff Susan Fuller is a citizen and adult resident of La Jolla, California, and

9   was prescribed and administered Taxotere, which was developed, manufactured, promoted,

10  marketed, distributed, and sold by Defendants. Plaintiff has suffered damages as a result of

11  Defendants' illegal and wrongful conduct alleged herein.

12       7.        Defendant Sanofi S.A. is a corporation or Société Anonyme organized and

13  existing under the laws of France, having its principal place of business at 54 Rue La Boétie,

14  75008 Paris, France.

15       8.        Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized

16  and existing under the laws of France, having its principal place of business at 20 avenue

17  Raymond Aron, 92160 Antony, France.

18       9.        Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company,

19  which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

20  Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi

21  S.A. is the only member and owns 100% of the membership interest (both financial and voting)

22  of Defendant Sanofi-Aventis U.S. LLC. Defendant Sanofi-Aventis U.S. LLC does not have any

23  members that are citizens, residents, or domiciles of the State of California.

24       10.       Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

25  sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S.,

26  which is not a separately existing legal entity but rather is a business unit or division operating

27  within and part of Sanofi-Aventis U.S. LLC.

28

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00018

1      11.     Defendant McKesson Corporation is a Delaware corporation with its principal

2 place of business at One Post Street, San Francisco, California 94104.  At all relevant times,

3 McKesson was in the business of labeling, selling, marking, packaging, repackaging, and

4 distributing Taxotere, including upon information and belief the Taxotere administered to

5 Plaintiff.  McKesson also owns US Oncology, which supported a significant amount of Taxotere

6 research and promotion.  Defendant does business throughout the United States and in the State

7 of California and regularly and continuously did business within this judicial district including

8 manufacturing, marketing, advertising, selling, and distributing Taxotere.  For example,

9 McKesson Specialty Health, a division of McKesson, lists Taxotere in its catalog of available

10 products.

11            **SANOFI DEFENDANTS' OWNERSHIP AND UNITY OF INTEREST**

12      12.     Defendant Sanofi S.A. is a French multinational pharmaceutical parent company

13 that operates worldwide through a complex, consolidated, and intermingled web of more than

14 400 wholly-owned subsidiaries, including Defendants Aventis Pharma S.A. and Sanofi-Aventis

15 U.S. LLC. As of 2013, Sanofi was the world's fifth-largest pharmaceutical company by sales.

16      13.     At all relevant times, Sanofi S.A. was engaged in the business of researching,

17 analyzing, licensing, designing, formulating, compounding, patenting, testing, manufacturing,

18 producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting,

19 packaging, advertising, and/or selling the prescription drug Taxotere through its numerous

20 wholly-owned subsidiaries in the United States and throughout the world, including Defendants

21 Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

22      14.     Sanofi was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil

23 company, and subsequently grew through a series of international acquisitions.  In 1994, Sanofi

24 made a significant venture into the U.S. pharmaceutical market by acquiring Sterling Winthrop

25 and its prescription pharmaceutical business.  Sanofi now produces and sells generic products in

26 the United States under the Winthrop label.

27      15.     In 2004, Sanofi acquired the competing pharmaceutical company Aventis to

28 create Sanofi-Aventis S.A. (later shortened to Sanofi S.A.).  Sanofi S.A. owns 100% of the

3

1    shares or financial interest of Defendant Aventis Pharma S.A., and therefore directs and controls

2    its operations and activities.

3         16.    Defendant Sanofi-Aventis U.S. LLC is also a wholly-owned U.S. subsidiary of

4    Sanofi S.A. Because Sanofi S.A. owns 100% of its shares or financial interest, Sanofi S.A.

5    controls and directs its operations.

6         17.    At all material times, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-

7    Aventis U.S. LLC (collectively "Sanofi" or "Sanofi Defendants") were engaged in the business

8    of, and/or were successors in interest to entities engaged in the business of, researching,

9    analyzing, licensing, designing, formulating, compounding, testing, manufacturing, producing,

10   processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging,

11   advertising, and/or selling the prescription drug Taxotere to the general public, including

12   Plaintiff.

13        18.    At all material times, Sanofi was authorized to do business within California; did

14   in fact transact and conduct business in California; derived substantial revenue from goods and

15   products used in California; supplied Taxotere within California; and purposefully directed these

16   and other related activities to California.

17        19.    Specifically, the Sanofi sponsored and conducted clinical trials of their products

18   in California, including clinical trials of Taxotere. For example, it sponsored a 2005 clinical trial

19   at Stanford University on the efficacy of Taxotere for lung cancer treatment; from 2006 to 2012,

20   Sanofi sponsored a clinical trial at Stanford on the efficacy of Taxotere for breast cancer

21   treatment; from 2006 to 2012, Sanofi sponsored an interventional clinical trial at Stanford of

22   Taxotere in patients with breast cancer; Sanofi also sponsored a large-scale epidemiological

23   study on its drug Lantus at Kaiser Permanente in Northern and Southern California, which

24   terminated in 2012. In addition, Sanofi participates in ongoing research and development

25   collaborations with the University of California, San Francisco.

26        20.    Additionally, Sanofi employed sales representatives and business managers

27   throughout California who promoted Taxotere as part of a nationwide marketing, promotion and

28   distribution campaign targeting medical professionals and residents in California. Sanofi also

4

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

1   contracted with Defendant McKesson Corporation, a California-based pharmaceutical

2   distributor, to distribute, package, label, and promote Taxotere.

3       21.    Sanofi has also spent large sums on California politics.  For example, in 2016

4   Sanofi contributed $4.15 million to the political action committee Californians Against the

5   Misleading Rx Measure.  Sanofi also contributed $1.5 million to the political action committee

6   No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015, Sanofi gave

7   $115,000 to a campaign against Measure 15-009. Sanofi has also recently contributed $7,300

8   total to five assembly-member candidates, and $2,500 to the California Republican Party.

9   Sanofi also employs Clear Advocacy, LLC, a lobbying firm based in Sacramento.

10       22.    The Sanofi Defendants acted jointly at all relevant times, along with other

11   affiliated, related, jointly owned and controlled entities, to develop, market, produce, label,

12   promote, package, advertise, and/or sell Taxotere to the general public, including Plaintiff.

13   Because they acted jointly, and/or within the course and scope of an agency relationship with

14   one another, with respect to the conduct alleged in this Complaint, any individuality and

15   separateness between them ceased and they became alter-egos of one another and are jointly

16   liable for their misconduct and wrongful acts as alleged herein.

17       23.    As the corporate parent of wholly-owned subsidiaries, Sanofi S.A. directs and

18   controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As a result, a

19   unity of interest, ownership, and conduct between the Sanofi Defendants existed at all relevant

20   times—with regard to Taxotere's manufacture, distribution, development, testing, labeling, and

21   related conduct—such that any individuality and separateness between the Sanofi Defendants

22   had ceased and they became the alter-ego of one another.

23       24.    Through its web of affiliates, subsidiaries, and predecessor companies, Sanofi

24   S.A. has overseen the invention, development, clinical trials, and strategy for marketing,

25   distributing, selling, and promoting Taxotere in the United States and in over 100 different

26   countries.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00021

## DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE (DOCETAXEL)

25.     Taxotere is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Taxotere is a part of a family of drugs commonly referred to as taxanes.

26.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (Taxol®) and Taxotere.

27.     Taxol was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to Taxotere. It was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

28.     Designed as an increased potency taxane, Taxotere (docetaxel) was invented and developed by Rhone-Poulenc, a predecessor in interest to Sanofi.   In March 1989, Rhone-Poulenc's patent was assigned to Defendant Aventis Pharma S.A.  Since that time, Sanofi has controlled the development and been the owner, holder, or assignee of the patents related to Taxotere. Also in 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Poulenc had assigned to docetaxel.

29.     Sanofi launched Taxotere clinical trials and testing as early as 1990.  It began enrolling patients in Phase I clinical testing trials (called the "TAX 001" study) in June 1990. The TAX 001 study's results were reported in May 1994. Sanofi had direct and personal knowledge of these and other test results, and of subsequent decisions to withhold information and data from physicians, healthcare providers, patients, and Plaintiff.

30.     The initial application for FDA approval for Taxotere was unsuccessful. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended rejection because Taxotere was more toxic than already-approved competitor Taxol, and because more studies of side effects were needed.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00022

31.     The FDA ultimately approved Taxotere on May 14, 1996. According to its product labeling, Taxotere was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

32.     After the initial approval, Sanofi sought and received FDA approval for additional indications. Based on self-sponsored clinical trials, Sanofi claimed Taxotere's superiority over competing chemotherapy products approved for breast cancer treatment—including claiming superior efficacy over the lower potency paclitaxel (Taxol), its primary competitor.

33.     Throughout this period, Defendant McKesson Corporation distributed, packaged, labeled, and promoted Taxotere.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of Taxotere at conferences including at annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

34.     Contrary to Defendants' claims, post market surveillance demonstrates that the more potent and more toxic Taxotere does not in fact offer increased efficacy or benefits over other taxanes. In August 2007, *Cancer Treatment Reviews* published a study which found no significant differences in the efficacy and outcomes obtained with Taxotere (docetaxel) or Taxol (paclitaxel) in breast cancer treatment.  Likewise, a 2008 study in the *New England Journal of Medicine* concluded that Taxol (paclitaxel) was more effective than Taxotere (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

35.     Despite publication of these studies, Defendants continued to falsely promote the "superior efficacy" of Taxotere over competing paclitaxel (Taxol). At the June 2008 meeting for the American Society of Clinical Oncology, Sanofi distributed marketing materials comparing the efficacy of Taxotere versus paclitaxel (Taxol).  Specifically, Sanofi distributed a "reprint carrier" enclosing a 2005 study ("TAX 311") performed by researchers affiliated with Sanofi and US Oncology (which is now part of McKesson).  The cover of the reprint carrier claimed, among other things:

- "TAX 311: Taxotere demonstrated efficacy benefits vs paclitaxel"

1    • "This phase III study demonstrated that docetaxel is superior to paclitaxel in TTP,

2       response duration, and OS [overall survival]."

3    • "Phase III trial demonstrated improved survival for Taxotere vs paclitaxel in

4       metastatic breast cancer"

5    36.    Whatever the merits of the TAX 311 study may have been, Defendants'

6    statements on the reprint carrier were false and/or misleading in light of the 2007 and 2008

7    studies finding that Taxotere was not more effective than Taxol.

8    37.    In response to these false and misleading statements, the FDA issued a warning

9    letter to Sanofi in 2009 stating that claims of superiority over paclitaxel were "unsubstantiated."

10   Sanofi's claims were misleading because the TAX 311 study had not demonstrated statistical

11   significance and had not been replicated:

12      The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology,

13      which describes the TAX 311 study. This reprint carrier is false or misleading

14      because it presents unsubstantiated superiority claims and overstates the efficacy

15      of Taxotere. Therefore, this material misbrands the drug in violation of the

16      Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n).

17      *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).

18      . . . .

19      The reference cited in support of these claims . . . does not constitute substantial

20      evidence or substantial clinical experience to support these claims and

21      representations because, among other factors, the study failed to demonstrate

22      statistical significance on the primary endpoint and has not been replicated.[2]

23   38.    A qui tam lawsuit was also filed by a former employee accusing Sanofi and its

24   affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other

25

26   [1]    Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel

27   compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
     [2]    Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the

28   FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion,
     Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

8

1   unlawful incentives to entice physicians to use Taxotere. *See U.S. ex rel. Gohil v. Sanofi-Aventis*

2   *U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

3       39.      Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S.

4   LLC and their predecessors and affiliates designed, directed, and/or engaged in a marketing

5   scheme that promoted Taxotere for off-label uses not approved by the FDA. The scheme took

6   two forms: first, Defendants trained and directed their employees to misrepresent the safety and

7   effectiveness of the off-label use of Taxotere to expand the market for Taxotere in unapproved

8   settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham

9   grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and

10  free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off-

11  label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants

12  dramatically increased revenue on sales of Taxotere from $424 million in 2000 to $1.4 billion in

13  2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

14      40.      As a direct result of their wrongful conduct and illegal kickback schemes,

15  Defendants directly caused thousands of individuals to be exposed to docetaxel's (Taxotere)

16  increased toxicity as compared to other available less toxic products.

17      41.      As a direct result of their aforementioned conduct, Defendants caused thousands

18  of individuals to be exposed to increased frequency and more severe side effects, including but

19  not limited to disfiguring permanent alopecia (hair loss).

20      **DEFENDANTS' COVER UP OF THE CAUSAL RELATIONSHIP BETWEEN**

21          **TAXOTERE AND PERMANENT DISFIGURING HAIR LOSS**

22      42.      Although alopecia, or hair loss, is a common side effect related to chemotherapy

23  drugs, permanent alopecia is not. Defendants, through their publications and marketing

24  materials, misled Plaintiff, the public, and the medical community to believe that, as with other

25  chemotherapy drugs that cause alopecia, patients' hair would grow back.

26      43.      Defendants knew or should have known that the rate of permanent alopecia

27  related to Taxotere was far greater than with other products available to treat the same condition.

28

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00025

44.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of Taxotere suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

45.     Although women might accept the possibility of permanent baldness as a result of the use of Taxotere if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in thousands of women being exposed to the side effects of Taxotere, there were already similar products on the market that were at least as effective as Taxotere and did not subject female users to the same risk of disfiguring permanent alopecia as does Taxotere.

46.     Beginning in the late 1990s, Sanofi sponsored and/or was aware of a study titled the GEICAM 9805 study. By 2005, it knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took Taxotere had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases longer. Sanofi knowingly, intentionally, and wrongfully withheld these results from physicians, healthcare providers, patients, and Plaintiff.

47.     In 2006, Sanofi knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken Taxotere suffered from permanent disfiguring hair loss for years after treatment ended.

48.     Despite Sanofi's knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken Taxotere and suffered from permanent disfiguring hair loss, Sanofi failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiff, that patients who take Taxotere are at a significantly increased risk of suffering from permanent disfiguring hair loss.

49.     Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that Taxotere causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and

10

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00026

1    Plaintiff in the United States only with the generic, vague, and insufficient warning that "hair

2    generally grows back" after taking Taxotere.

3         50.    Patients like Plaintiff, did not have the opportunity to make an informed choice as

4    to whether the benefits of Taxotere were worth its associated risks. Defendants engaged in a

5    pattern of deception by overstating the benefits of Taxotere as compared to other alternatives

6    while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

7         51.    Although Defendants publish information in other countries to individual patients

8    as well as regulatory agencies related to Taxotere and the risk of permanent alopecia, the words

9    permanent alopecia or permanent hair loss do not appear in any information published by

10   Defendants in the United States for many years.

11        52.    In December 2015, the FDA changed the safety labeling for Taxotere (docetaxel),

12   to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on

13   page 33 of the label, in the Full Prescribing Information. On the first page, which is the

14   Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction;

15   "permanent alopecia" is not.

16        53.    As a direct result of Sanofi's wrongful and deceptive acts, thousands of women

17   were exposed to the risk of disfiguring permanent alopecia without any warning and without any

18   additional benefit.

19        54.    As a direct result of Sanofi's failure to warn patients of the risk of disfiguring

20   permanent alopecia in the United States, thousands of women, including Plaintiff, as well as

21   their health care providers, were deprived of the opportunity to make an informed decision as to

22   whether the benefits of using Taxotere over other comparable products was justified.

23        55.    Defendants preyed on one of the most vulnerable groups of individuals at the

24   most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

25   the expense of unwary cancer victims simply hoping to survive their condition and return to a

26   normal life.

27        56.    Plaintiff Susan Fuller, as well as numerous other women, were the innocent

28   victims of Defendants' greed, recklessness, and willful and wanton conduct.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00027

1

## PLAINTIFF SUSAN FULLER'S DIAGNOSIS, TREATMENT, AND

2

## RESULTING DISFIGURING PERMANENT ALOPECIA

3    57.    Plaintiff Susan Fuller was diagnosed with breast cancer in approximately 2006.

4    58.    Following her diagnosis, Plaintiff Fuller met with her oncologist to discuss

5  treatment. Neither Plaintiff nor her treating healthcare providers were aware of or informed by

6  Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.

7  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.

8    59.    Following the completion of chemotherapy, Plaintiff suffered from disfiguring

9  permanent alopecia as a result of receiving chemotherapy with Taxotere.

10    ## NATURE OF THE CLAIMS

11    60.    While Sanofi disclosed Taxotere's risk of disfiguring permanent alopecia to

12  patients and regulatory agencies in other countries, it failed to either alert Plaintiff, the public,

13  and the scientific community in the United States or perform further investigation into

14  Taxotere's safety. Sanofi failed to update the warnings for Taxotere, and failed to disclose

15  results of additional studies as it learned new facts about the defects and risks of its product.

16    61.    In particular, Sanofi:

17    (a)    failed to disclose its investigation and research from 2005, including but

18        not limited to the results of the GEICAM 9805 study, and failed to further

19        investigate, research, study, and define fully and adequately the safety

20        profile of Taxotere in response to these studies;

21    (b)    failed to provide adequate warnings about the true safety risks associated

22        with the use of Taxotere;

23    (c)    failed to provide adequate warning regarding the pharmacokinetic and

24        pharmacodynamic variability of Taxotere and its effects on the degree or

25        severity of side effects related to permanent alopecia;

26    (d)    failed to disclose in the "Warnings" Section that permanent alopecia is a

27        frequent side effect associated with the use of Taxotere;

28

12

(e)    failed to advise prescribing physicians, such as Plaintiff's physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to Taxotere;

(f)    failed to provide adequate instructions on how to intervene and/or reduced the risk of permanent alopecia related to the use of Taxotere;

(g)    failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)    failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of Taxotere as compared to other products designed to treat the same conditions as Taxotere; and

(i)    failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

62.    Although Sanofi modified the U.S. labeling and prescribing information for Taxotere on multiple occasions throughout the years, it failed to include any warning whatsoever related to permanent alopecia until December 2015, despite Sanofi's awareness of the frequency and severity of this side effect long before then.

63.    Before applying for and obtaining approval of Taxotere, Sanofi knew or should have known that consumption of Taxotere was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

64.    Despite knowing that Taxotere was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Sanofi produced, marketed, and distributed Taxotere in the United States.

65.    Sanofi failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

66.    From the date Sanofi received FDA approval to market Taxotere, it made, distributed, marketed, and sold Taxotere without adequate warning to Plaintiff and her prescribing physicians that Taxotere was associated with disfiguring permanent alopecia.

13

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

67.   Instead, Sanofi ignored the association between the use of Taxotere and the risk of disfiguring permanent alopecia.

68.   Sanofi failed to disclose information that they possessed regarding their failure to adequately test and study Taxotere related to the side effect of disfiguring permanent alopecia. Plaintiff and her healthcare providers could not have discovered Sanofi's false representations and failures to disclose information through the exercise of reasonable diligence.

69.   As a result of the foregoing acts and omissions, Sanofi caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE**

70.   Plaintiff incorporates by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

71.   Plaintiff is within the applicable statutes of limitations for the claims presented herein because Plaintiff did not discover the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of Taxotere, and other acts and omissions.

72.   In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiff, Plaintiff's

14

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

1  prescribing health care professionals and the general consuming public that Defendants'

2  Taxotere was defective, unreasonably dangerous and carried with it the serious risk of

3  developing the injuries Plaintiff has suffered while aggressively and continually marketing and

4  promoting Taxotere as safe and effective.  This includes, but is not limited to, Defendants'

5  failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

6  Defendants to result from use of Taxotere, for example, and not by way of limitation, internal

7  concern about reports and studies finding an increased risk of disfiguring permanent alopecia;

8  suppression of information about these risks and injuries from physicians and patients, including

9  Plaintiff; use of sales and marketing documents and information that contained information

10  contrary to the internally held knowledge regarding the aforesaid risks and injuries; and

11  overstatement of the efficacy and safety of Taxotere.

12      73.     Defendants had a duty to disclose that Taxotere was defective, unreasonably

13  dangerous and that the use of Defendants' Taxotere carried with it the serious risk of developing

14  disfiguring permanent alopecia as the Plaintiff has suffered.  Defendants breached that duty.

15      74.     Plaintiff, Plaintiff's prescribing health care professionals and the general

16  consuming public, had no knowledge of, and no reasonable way of discovering, the defects

17  found in Defendants' Taxotere or the true risks associated with her use at the time she purchased

18  and used Defendants' Taxotere.

19      75.     Defendants did not notify, inform, or disclose to Plaintiff, Plaintiff's prescribing

20  health care professionals or the general consuming public that Defendants' Taxotere was

21  defective and that its use carried with it the serious risk of developing the injuries Plaintiff has

22  suffered and complained of herein.

23      76.     Because Defendants failed in their duty to notify Plaintiff, Plaintiff's prescribing

24  health care professionals and the general consuming public that their Taxotere was defective

25  and, further, actively attempted to conceal this fact, Defendants should be estopped from

26  asserting defenses based on statutes of limitation or repose.

27      77.     Accordingly, Plaintiff files this lawsuit within the applicable statutes of

28  limitations.  Plaintiff could not by exercise of reasonable diligence have discovered any

1  wrongdoing, nor could have discovered the causes of her injuries at an earlier time, and when

2  Plaintiff's injuries were discovered, their causes were not immediately known or knowable

3  based on the lack of necessary information, which was suppressed by the Defendants.  Further,

4  the relationship of Plaintiff's injuries to Taxotere exposure through the Defendants' drug was

5  inherently difficult to discover, in part due to the Defendants' knowing suppression of important

6  safety information.  Consequently, the discovery rule should be applied to toll the running of the

7  statutes of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should

8  have discovered, that Plaintiff may have a basis for an actionable claim.

9  **FIRST CLAIM FOR RELIEF**

10  **(Product Liability for Negligence – Against All Defendants)**

11  78.  Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with

12  the same force and effect as if fully set forth herein.

13  79.  Defendants had a duty to exercise reasonable care in the marketing, supplying,

14  promoting, packaging, sale, and/or distribution of Taxotere into the stream of commerce,

15  including a duty to assure that the product would not cause users to suffer unreasonable,

16  dangerous side effects.

17  80.  Defendants failed to exercise reasonable care in the marketing, supplying,

18  promoting, packaging, sale, and/or distribution of Taxotere into interstate commerce in that

19  Defendants knew or should have known that using Taxotere created a high risk of unreasonable,

20  disfiguring side effects, including personal injuries that are permanent and lasting in nature such

21  as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic

22  loss, and loss of economic opportunity.

23  81.  The negligence of Defendants, their agents, servants, and/or employees, included

24  but was not limited to the following acts and/or omissions:

25  (a)  Selling Taxotere without disclosing its dangers and risks;

26  (b)  Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs'

27  physicians, the public, and the medical and healthcare profession of the

28  dangers of Taxotere;

16

Exhibit A-2
00032

(c)   Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Taxotere;

(d)   Negligently advertising and recommending the use of Taxotere without sufficient knowledge as to its dangerous propensities;

(e)   Negligently representing that Taxotere was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)   Negligently and falsely representing that Taxotere was superior to other commercially available products to treat the same forms of cancer that Taxotere was intended to treat;

(g)   Concealing information from Plaintiff, Plaintiff's physicians, the public, and the FDA in knowing that Taxotere was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)   Improperly concealing from and/or misrepresenting information to Plaintiff, Plaintiff's physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of Taxotere compared to other forms of treatment for breast cancer.

82.   Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with Taxotere.

83.   Defendants negligently conveyed that the safety risks and/or dangers of Taxotere were comparable with other forms of treatment for the same conditions for which Taxotere was prescribed to treat.

84.   Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Taxotere in that they:

(a)   Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Taxotere;

17

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00033

 (b) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with Taxotere;

 (c) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Taxotere;

 (d) Failed to warn Plaintiff and Plaintiff's physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

 (e) Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with Taxotere.

 (f) Failed to warn Plaintiff and Plaintiff's physicians before actively encouraging the sale of Taxotere, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

 (g) Were otherwise careless and/or negligent.

85. Despite the fact that Defendants knew or should have known that Taxotere caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell Taxotere to consumers, including Plaintiff.

86. Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiff, Plaintiff's physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of Taxotere as compared to other products already commercially available to treat the same types of cancer Taxotere was meant to treat.

87. Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

88.     Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

89.     As a direct and proximate result of the use of Taxotere, Plaintiff experienced disfiguring permanent alopecia.

90.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

91.     Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

92.     The Taxotere that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of Taxotere. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

93.     Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name Taxotere, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of Taxotere. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00035

1    94.    Defendants failed to provide adequate warnings to physicians and users,

2 including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent

3 alopecia associated with Taxotere, and Defendants aggressively and fraudulently promoted the

4 product to physicians.

5    95.    As a direct and proximate result of Defendants' failure to warn of the potentially

6 severe adverse effects of Taxotere, Plaintiff suffered disfiguring permanent alopecia and other

7 conditions.

8    96.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to

9 suffer serious and dangerous side effects, severe and personal injuries that are permanent and

10 lasting in nature, and economic and non-economic damages, harms, and losses, including but not

11 limited to: past and future medical expenses; past and future loss of earnings; past and future

12 loss and impairment of earning capacity; permanent disfigurement including permanent

13 alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

14 harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

15 present, and future loss and impairment of the quality and enjoyment of life.

16                    **THIRD CLAIM FOR RELIEF**

17            **(Fraudulent Misrepresentation – Against All Defendants)**

18    97.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with

19 the same force and effect as if fully set forth herein.

20    98.    Defendants falsely and fraudulently represented to Plaintiff, Plaintiff's

21 physicians, the medical and healthcare community, and the public in general that Taxotere had

22 been tested and was found to be safe and effective for the treatment of certain forms of cancer.

23    99.    When warning of safety and risks of Taxotere, Defendants fraudulently

24 represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the

25 public in general that Taxotere had been tested and was found to be safe and/or effective for its

26 indicated use.

27    100.    Defendants concealed their knowledge of docetaxel's (Taxotere's) defects from

28 Plaintiff, Plaintiff's physicians, and the public in general and/or the medical community

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00036

1   specifically including, but not limited to, concealing their knowledge of the risk of developing

2   disfiguring permanent alopecia.

3       101.   Defendants concealed their knowledge of the defects in their products from

4   Plaintiff, Plaintiff's physicians, hospitals, pharmacists, and the public in general.

5       102.   Defendants made these false representations with the intent of defrauding and

6   deceiving Plaintiff, Plaintiff's physicians, the public in general, and the medical and healthcare

7   community in particular, and were made with the intent of inducing Plaintiff, Plaintiff's

8   physicians, the public in general, and the medical community in particular, to recommend,

9   dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer,

10   including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

11   wanton, and depraved indifference to the health, safety, and welfare of Plaintiff.

12       103.   Defendants made these false representations with the intent of defrauding and

13   deceiving Plaintiff, Plaintiff's physicians, as well as the public in general, and the medical and

14   healthcare community in particular, and were made with the intent of inducing the public in

15   general, and the medical community in particular, to recommend, dispense, and/or purchase

16   Taxotere for use in the treatments of various forms of cancer, including but not limited to breast

17   cancer.

18       104.   When Defendants made these representations, Defendants knew those

19   representations were false, and Defendants willfully, wantonly, and recklessly disregarded

20   whether the representations were true.

21       105.   At the time Defendants made the aforesaid representations, and, at the time

22   Plaintiff used Taxotere, Plaintiff and Plaintiff's physicians were unaware of the falsity of

23   Defendants' representations, and Plaintiff and Plaintiff's physicians reasonably believed them to

24   be true.

25       106.   In reliance upon Defendants' representations, Plaintiff and Plaintiff's physicians

26   were induced to and did use and prescribe Taxotere, which caused Plaintiff to sustain severe,

27   permanent, and disfiguring personal injuries.

28

107.   Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

108.   Defendants knew or should have known that Taxotere had a potential to, could, and would cause severe and grievous injury to the users of Taxotere, including, but not limited to, the development of permanent disfiguring alopecia, and that Taxotere was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

109.   Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

110.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### FOURTH CLAIM FOR RELIEF

**(Fraudulent Concealment – Against All Defendants)**

111.   Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

112.   At all times during the course of dealing between Defendants and Plaintiff and Plaintiff's healthcare providers, Defendants misrepresented the effectiveness and safety of Taxotere for its intended use.

113.   Defendants knew or were reckless in not knowing that its representations were false.

114.   In representations made to Plaintiff and Plaintiff's healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

22

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00038

1     (a)     that Taxotere was not as safe as other forms of treatment for which

2              Taxotere was marketed and sold to cancer patients;

3     (b)     that the risks of adverse events with Taxotere were higher than those with

4              other forms of treatment for which Taxotere was marketed and sold to

5              cancer patients;

6     (c)     that the risks of adverse events with Taxotere were not adequately tested

7              and/or known by Defendants;

8     (d)     that Defendants were aware of dangers in Taxotere, in addition to and

9              above and beyond those associated with other forms of treatment for

10             cancer patients;

11     (e)     that Taxotere was defective in that it caused dangerous side effects as well

12              as other severe and permanent health consequences in a much more and

13             significant rate than other forms of treatment for cancer patients;

14     115.     Defendants had a duty to disclose to Plaintiff, Plaintiff's physicians, hospitals,

15 and/or healthcare providers the defective nature of Taxotere, including but not limited to the

16 heightened risks of disfiguring permanent alopecia.

17     116.     Defendants had sole access to material facts concerning the defective nature of

18 Taxotere and its propensity to cause serious and dangerous side effects, including, but not

19 limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used

20 Taxotere, including Plaintiff, in particular.

21     117.     Defendants' concealment and omissions of material facts concerning the safety of

22 Taxotere was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff,

23 Plaintiff's physicians, hospitals, and healthcare providers into reliance on the continued use of

24 Taxotere and to cause them to purchase, prescribe, and/or dispense Taxotere and/or use

25 Taxotere.

26     118.     Defendants knew that Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare

27 providers had no way to determine the truth behind Defendants' concealment and omissions,

28 including the material omissions of facts surrounding Taxotere set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00039

119.   Plaintiff, Plaintiff's physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

120.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF

### (Strict Product Liability for Misrepresentation – Against All Defendants)

121.   Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

122.   Defendants sold the Taxotere that Plaintiff's physician prescribed for Plaintiff and that Plaintiff used.

123.   Defendants were engaged in the business of selling the Taxotere for resale, use, or consumption.

124.   Defendants misrepresented facts as set forth herein concerning the character or quality of the Taxotere that would be material to potential prescribers and purchasers or users of the product.

125.   Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

126.   As a purchaser or user, Plaintiff reasonably relied on the misrepresentation.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00040

## SIXTH CLAIM FOR RELIEF

### (Fraud and Deceit – Against All Defendants)

127.   Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

128.   Defendants committed fraud by omission in applying for and gaining patent protection for Taxotere resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiff's exposure to the side effects of Taxotere.

129.   Defendants fraudulently claimed superior efficacy over other products intended to treat the same conditions that Taxotere was intended to treat. These fraudulent representations were the proximal cause of Plaintiff's exposure to the side effects of Taxotere.

130.   Defendants intentionally distributed false information, including but not limited to assuring Plaintiff, Plaintiff's physicians, hospitals, healthcare professionals, and/or the public that Taxotere was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

131.   Defendants intentionally omitted certain results of testing and or research to Plaintiff, Plaintiff's physicians, healthcare professionals, and the public.

132.   Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public to disseminate truthful information.

133.   Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public not to deceive Plaintiff, Plaintiff's physicians, and/or the public.

134.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

135.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug Taxotere was safe and effective for the treatment of various forms of cancer, including breast cancer.

136.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug Taxotere carried the

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00041

1   same risks, hazards, and/or dangers as other forms of treatment for the same conditions that

2   Taxotere was intended to treat.

3       137.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the

4   public intentionally included false representations that Taxotere was not injurious to the health

5   and/or safety of its intended users.

6       138.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the

7   public intentionally included false representations that Taxotere was no more injurious to the

8   health and/or safety of its intended users than other forms of cancer treatments.

9       139.   These representations by Defendants were all false and misleading, as Taxotere

10   carried with it the serious risk of developing disfiguring permanent alopecia.

11       140.   Defendants intentionally suppressed, ignored, and disregarded test results not

12   favorable to Defendants and that demonstrated that Taxotere was not safe as a means of

13   treatment for certain types of cancer that Taxotere was intended to treat.

14       141.   Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's

15   physicians, and the public, including the medical profession, regarding the safety of Taxotere,

16   specifically but not limited to Taxotere not having dangerous and serious health and/or safety

17   concerns.

18       142.   Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's

19   physicians, and the public in general, including the medical profession, regarding the safety of

20   Taxotere, specifically but not limited to Taxotere being as safe as other products that treat the

21   same conditions that Taxotere was intended to treat.

22       143.   It was Defendants' intent and purpose in making these false representations to

23   deceive and defraud Plaintiff, Plaintiff's physicians, and/or the public and to gain the confidence

24   of Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals to falsely ensure

25   the quality and fitness for use of Taxotere and induce Plaintiff, Plaintiff's physicians, and the

26   public, including the medical profession, to purchase, request, dispense, prescribe, recommend,

27   and/or continue to use Taxotere.

28

144.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals that Taxotere was fit and safe for use as treatment for certain types of cancer, including breast cancer.

145.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those associated with other forms of treatment.

146.    Defendants made false claims and false representations in its documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere did not present risks related to disfigurement secondary to permanent alopecia.

147.    Defendants made false claims and false representations in its documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere did not present health or safety risks greater than other forms of treatment for the same conditions Taxotere was intended to treat.

148.    Defendants made these and other representations with the intention of deceiving and defrauding Plaintiff and Plaintiff's respective healthcare professionals.

149.    Defendants made these and other representations in order to induce Plaintiff and Plaintiff's respective healthcare professionals to rely upon the misrepresentations.

150.    Defendants' false misrepresentations caused Plaintiff and/or Plaintiff's healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Taxotere.

151.    Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Taxotere to the public at large, and Plaintiff and Plaintiff's physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00043

152. Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to Taxotere.

153. Defendants willfully and intentionally failed to disclose the truth and material facts related to Taxotere and made false representations with the purpose of deceiving and lulling Plaintiff and Plaintiff's respective healthcare professionals into a sense of security so that Plaintiff and Plaintiff's healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend Taxotere.

154. Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiff and Plaintiff's respective healthcare professionals, would rely upon the information being disseminated.

155. Plaintiff and her respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how Taxotere would treat certain forms of cancer that Taxotere was intended to treat.

156. At the time Defendants' false representations were made, Plaintiff and/or Plaintiff's respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of Taxotere.

157. Plaintiff and her healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of Taxotere, and Plaintiff and her healthcare providers with reasonable diligence could not have discovered the true facts.

158. Had Plaintiff and her healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Taxotere, Plaintiff would not have purchased, used, and/or relied on Defendants' drug Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00044

159.    Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

160.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction
### of Emotional Distress – Against All Defendants)

161.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

162.    Defendants' conduct, as set forth above, was extreme and outrageous.

163.    Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

164.    Defendants' conduct caused Plaintiff severe emotional distress.

165.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00045

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Susan Fuller, demands judgment against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-Aventis U.S. LLC; and McKesson Corporation, in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 15, 2016

Respectfully submitted,

**GOMEZ TRIAL ATTORNEYS**

By:  _____

Ahmed S. Diab

John H. Gomez
Ahmed S. Diab
Lindsay R. Stevens
655 West Broadway, Suite 1700
San Diego, California 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496
*john@thegomezfirm.com*
*adiab@thegomezfirm.com*
*lstevens@thegomezfirm.com*

*Attorneys for Plaintiff*

30

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A-2
00046

# EXHIBIT A-3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John H. Gomez (171485); Ahmed S. Diab (262319); Lindsay R. Stevens (256811)<br>GOMEZ TRIAL ATTORNEYS<br>655 West Broadway, Ste. 1700<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 237-3490     FAX NO.: (619) 237-3496<br>ATTORNEY FOR *(Name):* Susan Fuller, Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/16/2016** at 09:09:06 AM<br><br>Clerk of the Superior Court<br>By Patrick Gonzaga,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego | |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101 | |
| BRANCH NAME: Central - Civil Division | |

| CASE NAME:<br>Fuller v. Sanofi S.A. et al. | |
|---|---|

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>37-2016-00044267-CU-PL-CTL |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Gregory W Pollack<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☑ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 15, 2016

Ahmed S. Diab (SBN 262319)
_____
(TYPE OR PRINT NAME)                            ▶  _____
                                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

Exhibit A-3

00047

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto).*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]                     **CIVIL CASE COVER SHEET**                     Exhibit A-3   Page 2 of 2

00048

# EXHIBIT A-4

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:    330 W Broadway
MAILING ADDRESS:    330 W Broadway
CITY AND ZIP CODE:    San Diego, CA 92101-3827
BRANCH NAME:    Central
TELEPHONE NUMBER:  (619) 450-7071

PLAINTIFF(S) / PETITIONER(S):    SUSAN FULLER

DEFENDANT(S) / RESPONDENT(S):  Sanofi SA et.al.

FULLER VS SANOFI SA [E-FILE]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE | CASE NUMBER: 37-2016-00044267-CU-PL-CTL |
|---|---|

**CASE ASSIGNMENT**

Judge:  Gregory W Pollack                                    Department: C-71

**COMPLAINT/PETITION FILED:** 12/16/2016

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/19/2017 | 01:00 pm | C-71 | Gregory W Pollack |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.



IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFILE program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com.  Refer to General Order 051414 at www.sdcourt.ca.gov for guidelines and procedures.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See Local Rule 5.1.8

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

Exhibit A-4
00049

# EXHIBIT A-5



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

### ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2016-00044267-CU-PL-CTL        CASE TITLE: Fuller vs Sanofi SA [E-FILE]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
  (1) this **Alternative Dispute Resolution (ADR) Information** form (SDSC form #CIV-730),
  (2) the **Stipulation to Use Alternative Dispute Resolution (ADR)** form (SDSC form #CIV-359), *and*
  (3) the **Notice of Case Assignment** form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

Exhibit A-5

00050

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, Individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:      330 West Broadway | |
| MAILING ADDRESS:     330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:      Central | |

| PLAINTIFF(S):   SUSAN FULLER |
|---|
| DEFENDANT(S): Sanofi SA et.al. |
| SHORT TITLE:    FULLER VS SANOFI SA [E-FILE] |

| STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2016-00044267-CU-PL-CTL |
|---|---|

Judge: Gregory W Pollack                                     Department: C-71

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)                    ☐  Non-binding private arbitration

☐  Mediation (private)                                ☐  Binding private arbitration

☐  Voluntary settlement conference (private)      ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)                     ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (specify e.g., private mini-trial, private judge, etc.): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                    Date: _____

_____                 _____
Name of Plaintiff                                Name of Defendant

_____                 _____
Signature                                        Signature

_____                 _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____                 _____
Signature                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  12/19/2016                          _____
                                            JUDGE OF THE SUPERIOR COURT

Exhibit A-5
00052

SDSC CIV-359 (Rev 12-10)                                                    Page: 1

# EXHIBIT A-6

1 SHOOK, HARDY & BACON L.L.P.
  Naoki S. Kaneko (SBN: 252285)
2 Jamboree Center
3 5 Park Plaza, Suite 1600
  Irvine, California 92614-2546
4 Telephone:   949-475-1500
  Facsimile:   949-475-0016
5
6 Attorney for Defendant
  sanofi-aventis U.S. LLC
7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF SAN DIEGO

10 SUSAN FULLER,
                                          Case   No.   37-2016-00044267-CU-PL-
11       Plaintiff,                        CTL

12       v.
                                          **DEFENDANT**
13 SANOFI S.A.; AVENTIS PHARMA S.A.;      **SANOFI-AVENTIS U.S. LLC'S**
   SANOFI-AVENTIS U.S. LLC, and           **ANSWER AND JURY DEMAND**
14 MCKESSON CORPORATION,

15       Defendants.

16

17       Defendant sanofi-aventis U.S. LLC responds to Plaintiff's Complaint as follows:

18                              **GENERAL DENIAL**

19       Under California Code of Civil Procedure section 431.30(d), sanofi-aventis U.S. LLC

20 generally denies all of the allegations in Plaintiff's Complaint, filed December 16, 2016 (the

21 "Complaint").   Sanofi-aventis U.S. LLC further denies that Plaintiff sustained any injury,

22 damage, or loss by reason of any act or omission by sanofi-aventis U.S. LLC.  Thus, sanofi-

23 aventis U.S. LLC denies that Plaintiff is entitled to recover any damages or relief.

24                    **AFFIRMATIVE AND OTHER DEFENSES**

25       Sanofi-aventis U.S. LLC affirmatively asserts the following defenses:

26

27

28
                                          1
      DEFENDANT SANOFI-AVENTIS U.S. LLC'S ANSWER AND JURY DEMAND
                                                        Exhibit A-6
                                                        00053

1

## FIRST AFFIRMATIVE DEFENSE

2     Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can

3  be granted.

4

## SECOND AFFIRMATIVE DEFENSE

5     Sanofi-aventis U.S. LLC hereby raises, asserts, and preserves its right to invoke the

6  doctrine of *forum non conveniens* to the extent supported by the record.

7

## THIRD AFFIRMATIVE DEFENSE

8     Sanofi-aventis U.S. LLC hereby raises, asserts, and preserves its defense of lack of

9  personal jurisdiction to the extent supported by the record.

10

## FOURTH AFFIRMATIVE DEFENSE

11    Venue may not be proper in San Diego County.

12

## FIFTH AFFIRMATIVE DEFENSE

13    Plaintiff's claims are barred, in whole or in part, because some or all of the parties

14  have been improperly joined in this action.

15

## SIXTH AFFIRMATIVE DEFENSE

16    If any loss, damage, injury, harm, expense, diminution, or deprivation alleged by

17  Plaintiff was caused by any product manufactured or distributed by sanofi-aventis U.S. LLC,

18  which sanofi-aventis U.S. LLC denies, the same was attributable to Plaintiff's understanding

19  and acceptance of the risks inherent in the taking of pharmaceutical products such as

20  Taxotere®, including but not limited to the following:

21          (a)    the risks in particular persons of adverse side effects or
            reactions from pharmaceutical products;

22

23          (b)    the risks in particular persons that a pharmaceutical
            product will not effectively treat the condition for which the
            product was prescribed;

24

25          (c)    the risks inherent in the use of the referenced medication;

26          (d)    the side effects and risks associated with the medication
            which are contained in sanofi-aventis U.S. LLC's FDA-approved
            package insert for Taxotere®, and

27

28

2

Exhibit A-6
00054

(e)     the risks and warnings given to Plaintiff by health care provider(s) prior to initiation of the medication.

## SEVENTH AFFIRMATIVE DEFENSE

If any loss, damage, injury, harm, expense, diminution, or deprivation alleged by Plaintiff was caused by any product manufactured or distributed by sanofi-aventis U.S. LLC, which sanofi-aventis U.S. LLC denies, the same was caused in whole or in part or was contributed to by Plaintiff's negligence, including but not limited to the following:

(a)     failing to seek timely medical advice and care;

(b)     failing to inform treating physicians and health care providers as to the true and complete nature of Plaintiff's conditions;

(c)     failing to follow medical advice and instruction;

(d)     failing to take other medications in the manner and dosage prescribed;

(e)     failing to use ordinary care for Plaintiff's own safety;

(f)     failing to seek and/or follow the advice of friends and family concerning Plaintiff's mental and/or physical conditions;

(g)     failing to seek and/or follow professional advice concerning Plaintiff's mental and/or physical conditions;

(h)     failing to utilize available and appropriate public and private interventional agencies concerning Plaintiff's mental and/or physical conditions;

(i)     failing to follow the package insert and prescriber's information for Taxotere®; and

(j)     being otherwise negligent or contributorily negligent.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages, if any, were caused by misuse or abuse of Taxotere®, including but not limited to the following:

(a)     failing to seek timely medical advice and care;

3

(b)   failing to inform treating physicians and health care providers as to the true and complete nature of Plaintiff's conditions;

(c)   failing to follow medical advice and instruction;

(d)   failing to take other medications in the manner and dosage prescribed;

(e)   failing to follow the package insert and prescriber's information for Taxotere®; and

(f)   failing to otherwise properly care for and preserve Plaintiff's physical health.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff was negligent or contributorily negligent, and her comparative negligence or fault equals or exceeds the negligence, if any, of sanofi-aventis U.S. LLC and bars or reduces Plaintiff's recovery as provided by law.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's causes of action are barred, in whole or in part, and the recoverable damages, if any, should be apportioned or diminished, because the fault, negligence and culpable conduct of parties or non-parties over whom sanofi-aventis U.S. LLC has no control and no responsibility caused or contributed to the injuries and damages allegedly sustained.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against sanofi-aventis U.S. LLC are barred as Plaintiff's alleged injuries and/or damages, if any, were proximately caused by intervening events attributable to persons, firms, or entities other than sanofi-aventis U.S. LLC, and any action or omission on the part of sanofi-aventis U.S. LLC was not the proximate cause of the alleged injuries and/or damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages, if any, were caused by misuse or abuse of Taxotere®, failure to use Taxotere® properly, and/or alteration or negligent use of Taxotere®.

DEFENDANT SANOFI-AVENTIS U.S. LLC'S ANSWER AND JURY DEMAND
Exhibit A-6
00056

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages, if any, were caused by an idiosyncratic reaction, without any negligence, failure, or fault on the part of sanofi-aventis U.S. LLC or any defect attributable to Taxotere®.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages, if any, were caused, or contributed to, by Plaintiff's own negligence, intentional conduct, consent, or by express or implied assumption of all risks.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of primary and secondary assumption of the risk and/or informed consent.   Plaintiff knowingly and voluntarily assumed any and all risks associated with the use of Taxotere®.  Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks.   Specifically, on information and belief, Plaintiff Susan Fuller gave informed consent to the prescribing physician before her alleged ingestion of Taxotere®.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to lack of standing.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred by the applicable California statutes of limitations and/or repose, including California Code of Civil Procedure § 335.1 and § 338 (a), (d), and (h).

## EIGHTEENTH AFFIRMATIVE DEFENSE

This action and any relief thereon are barred by public policy.

## NINETEENTH AFFIRMATIVE DEFENSE

Sanofi-aventis U.S. LLC acts were at all times done in good faith and without malice, with respect to each and every purported cause of action in Plaintiff's Complaint.

1      ### TWENTIETH AFFIRMATIVE DEFENSE

2      Plaintiff has unclean hands in relation to this action, including that Plaintiff is

3  willfully using this action to accomplish a purpose for which it was not designed, and

4  otherwise is abusing the legal process, to the injury of sanofi-aventis U.S. LLC.

5      ### TWENTY-FIRST AFFIRMATIVE DEFENSE

6      Plaintiff's Complaint fails to state a claim upon which relief can be granted because

7  the methods, standards, and techniques utilized by sanofi-aventis U.S. LLC in

8  manufacturing, distributing, marketing, or labeling Taxotere®, and in issuing warnings and

9  instructions with respect to its use, conformed with the generally recognized, reasonably

10  available, and reliable state of knowledge at the time the medication was manufactured and

11  distributed.

12      ### TWENTY-SECOND AFFIRMATIVE DEFENSE

13      At all relevant times during which Taxotere®, was manufactured and sold, it was

14  reasonably safe and reasonably fit for its intended use, was not defective or unreasonably

15  dangerous, and was accompanied by proper warnings, information, and instructions, all

16  pursuant to generally recognized prevailing industry standards and the state of the art in

17  existence at the time.

18      ### TWENTY-THIRD AFFIRMATIVE DEFENSE

19      Plaintiff's claims are barred because the benefits of Taxotere® outweigh any potential

20  risk involved in using the medication.

21      ### TWENTY-FOURTH AFFIRMATIVE DEFENSE

22      Taxotere® is a prescription medical product that is neither defective nor unreasonably

23  dangerous because it falls within the comment j and comment k exceptions to strict tort

24  liability as defined by § 402A of the *Restatement (Second) of Torts*. Further, Plaintiff's strict

25  liability claims are barred because California does not recognize a distinct cause of action for

26  strict liability in the prescription drug context beyond any subject to the limitations of

27  comment j and comment k as defined by § 402A of the *Restatement (Second) of Torts*.

28

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages were the result of an unavoidable accident.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims of product defect are or may be barred by the doctrines described in § 4 and/or other applicable sections of the *Restatement (Third) of Torts: Products Liability*, including because sanofi-aventis U.S. LLC and Taxotere® complied with applicable product-safety statutes and administrative regulations.  Taxotere®, an FDA-approved prescription medication, was prepared and labeled in accordance with applicable statutes and regulations.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the learned intermediary doctrine, the sophisticated user doctrine, and/or similar applicable laws.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's fraud-based claims, including for fraudulent or intentional misrepresentation, fraudulent concealment, and/or negligent misrepresentation, must be dismissed due to Plaintiff's failure to plead such causes of action with the particularity required under California law.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

If any loss, damage, injury, harm, expense, diminution, or deprivation alleged by Plaintiff was caused by any product manufactured or distributed by sanofi-aventis U.S. LLC, which sanofi-aventis U.S. LLC denies, the actions or omissions of other persons and the independent knowledge and awareness of such other persons of the risks inherent in the use of such products and other independent causes, such as idiosyncratic reactions, pre-existing or co-existing medical conditions, constitute intervening and/or superseding causes between Plaintiff's alleged injuries and/or damages and any alleged acts, conduct, or omissions of sanofi-aventis U.S. LLC.

### THIRTIETH AFFIRMATIVE DEFENSE

Responsibility for any injuries and/or damages sustained by Plaintiff should be apportioned among all parties and all relevant non-parties whose fault contributed to Plaintiff's alleged injuries and/or damages.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint is defective for failure to join indispensable parties.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering against sanofi-aventis U.S. LLC because Plaintiff's claims are preempted in accordance with the supremacy clause of the United States Constitution and by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq.* Taxotere® has been approved for marketing in the United States by the FDA and has been manufactured and labeled in accordance with all applicable FDA standards and requirements.  Further, there is no private cause of action provided for by the Food, Drug & Cosmetic Act, and accordingly, Plaintiff's claims are preempted.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because sanofi-aventis U.S. LLC complied with all applicable statutes and with FDA requirements and regulations.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Taxotere® complied with all federal, state and administrative regulations and applicable industry standards at the time of its manufacture.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because a reasonable purchaser and/or consumer would have been aware of the risks associated with Taxotere®.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages, if caused by Taxotere®, which sanofi-aventis U.S. LLC denies, were caused by an inherent characteristic of Taxotere® that is a generic aspect of the medication that could not be eliminated without substantially

compromising Taxotere®'s usefulness or desirability and that is recognized by the ordinary person with the ordinary knowledge common to the community.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's product liability causes of action are barred because, at the time Taxotere® left the control of sanofi-aventis U.S. LLC, there was no practical and technically feasible alternative design or formulation available that would have prevented Plaintiff's alleged injuries and/or damages without substantially impairing the usefulness or intended purpose of Taxotere®.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

To the extent there was any violation at all, which sanofi-aventis U.S. LLC denies, the violation was not intentional and resulted from a bona fide error made notwithstanding sanofi-aventis U.S. LLC's maintenance of procedures reasonably adopted to avoid such an error.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Based on the state of scientific, medical, and technological knowledge at the time Taxotere® was marketed, Taxotere® was reasonably safe for normal and foreseeable use at all relevant times.

### FORTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the Taxotere® allegedly used by Plaintiff may have been substantially modified and/or altered after leaving sanofi-aventis U.S. LLC's possession, custody, and control.

### FORTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel, and laches.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of release, accord, and satisfaction.

### FORTY-THIRD AFFIRMATIVE DEFENSE

9

Exhibit A-6
00061

1      While denying any alleged representations or misrepresentations as stated in

2 Plaintiff's Complaint, Plaintiff's claims are barred as a result of failure to plead with

3 particularity Plaintiff and/or her treating and prescribing physicians' reliance on any such

4 alleged representations.

5 **FORTY-FOURTH AFFIRMATIVE DEFENSE**

6      Plaintiff's claims are barred by the doctrines described in § 6(c) and § 6(d) of the

7 *Restatement (Third) of Torts: Products Liability*.  Reasonable physicians knowing of the

8 reasonably foreseeable risks and therapeutic benefits associated with Taxotere® would have

9 prescribed and did prescribe Taxotere® for classes of patients.  In addition, sanofi-aventis

10 U.S. LLC provided prescribing physicians with reasonable instructions or warnings

11 regarding reasonably foreseeable risks of harm.

12 **FORTY-FIFTH AFFIRMATIVE DEFENSE**

13      Sanofi-aventis U.S. LLC had no actual or constructive notice of the alleged defects

14 referred to in Plaintiff's Complaint.

15 **FORTY-SIXTH AFFIRMATIVE DEFENSE**

16      Plaintiff's damages are limited by her failure to reasonably mitigate damages.

17 **FORTY-SEVENTH AFFIRMATIVE DEFENSE**

18      Plaintiff's claims are subject to reduction for payments from collateral sources.  Any

19 recovery by Plaintiff must be reduced or offset by amounts Plaintiff has received or will

20 receive from others for the same injuries claimed in this lawsuit.

21 **FORTY-EIGHTH AFFIRMATIVE DEFENSE**

22      Plaintiff's damages are restricted by applicable limits on recovery for non-economic

23 loss or injury.

24 **FORTY-NINTH AFFIRMATIVE DEFENSE**

25      Plaintiff's claims are barred, in whole or in part, because the commercial speech of

26 sanofi-aventis U.S. LLC relating to Taxotere® is protected under the First Amendment to the

27 United States Constitution and under the California constitution.

28

10
Exhibit A-6
00062

1

## FIFTIETH AFFIRMATIVE DEFENSE

2      Plaintiff's claims are barred by the doctrine of immunity for prescription drugs, by the

3   Commerce Clause, Article 1, Section 8 of the United States Constitution as an undue burden

4   upon interstate commerce in that Plaintiff has asserted claims for relief which, if granted,

5   would constitute an impermissible burden on federal laws, regulations and policy relating to

6   the development and marketing of prescription drugs in violation of the Supremacy Clause,

7   Article IV, Clause 2 of the United States Constitution.

8

## FIFTY-FIRST AFFIRMATIVE DEFENSE

9      Some or all of Plaintiff's claims are barred by collateral estoppel and res judicata.

10

## FIFTY-SECOND AFFIRMATIVE DEFENSE

11      While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this

12   case (hereinafter "such damages"), to the extent Plaintiff intends to seek such damages,

13   sanofi-aventis U.S. LLC further states that any award of such damages cannot be sustained

14   because an award of such damages by a jury that

15   16      (a)   is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, an award of such damages;

17   18      (b)   is not adequately instructed on the limits of such damages imposed by the applicable principles of deterrence and punishment;

19   20   21      (c)   is not expressly prohibited from awarding such damages, or determining the amount of an award of such damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and status of sanofi-aventis U.S. LLC;

22   23   24      (d)   is permitted to award such damages under a standard for determining liability for such damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes such damages permissible;

25   26      (e)   is not properly instructed regarding Plaintiff's burden of proof with respect to each and every element of a claim for such damages; and

27   28      (f)   is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards

11

DEFENDANT SANOFI-AVENTIS U.S. LLC'S ANSWER AND JURY DEMAND

Exhibit A-6
00063

1 would violate sanofi-aventis U.S. LLC's due process and equal protection rights guaranteed

2 by the Fifth and the Fourteenth Amendments to the United States Constitution and cognate

3 provisions of the California constitution.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

5 While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this

6 case, to the extent Plaintiff intend to seeks punitive damages, sanofi-aventis U.S. LLC states

7 that Plaintiff's claims for such damages cannot be sustained because an award of such

8 damages, subject to no predetermined limit, such as a maximum multiple of compensatory

9 damages or a maximum amount, on the amount of such damages that a jury may impose and

10 providing no protection against multiple awards for the same course of conduct, would

11 violate sanofi-aventis U.S. LLC's due process rights guaranteed by the Fifth and Fourteenth

12 Amendments to the United States Constitution, would violate sanofi-aventis U.S. LLC's

13 right not to be subjected to an excessive award in violation of the Eighth Amendment to the

14 United States Constitution, and would violate cognate provisions of the California

15 constitution.

### FIFTY-FOURTH AFFIRMATIVE DEFENSE

17 While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this

18 case, to the extent Plaintiff intends to seek punitive damages, Plaintiff's claims for such

19 damages cannot be sustained because any award of such damages, which are penal in nature,

20 without according to sanofi-aventis U.S. LLC the same protections that are accorded to

21 criminal defendants, including the protection against unreasonable searches and seizures,

22 self-incrimination, and the right to confront adverse witnesses, a speedy trial, and the

23 effective assistance of counsel, would violate sanofi-aventis U.S. LLC's rights guaranteed by

24 the Fourth, Fifth, and Sixth Amendments as incorporated into the Fourteenth Amendment to

25 the United States Constitution and cognate provisions of the California constitution.

26

27

28

### FIFTY-FIFTH AFFIRMATIVE DEFENSE

While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this case, Plaintiff's claims for such damages cannot be sustained because an award of such damages, which allows Plaintiff to prejudicially emphasize the status of sanofi-aventis U.S. LLC, violates sanofi-aventis U.S. LLC's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and cognate provisions of the California constitution.

### FIFTY-SIXTH AFFIRMATIVE DEFENSE

While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this case, Plaintiff's claims for such damages cannot be sustained because an award of such damages would violate sanofi-aventis U.S. LLC's rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and cognate provisions of the California constitution. The Due Process Clause requires that adversarial proceedings be fundamentally fair. It would violate fundamental fairness to permit sanofi-aventis U.S. LLC to be punished by way of an award of such damages in this action.

### FIFTY-SEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff intends to seek punitive damages, sanofi-aventis U.S. LLC specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards, including but not limited to, those standards of limitation which arose in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 530 U.S. 408 (2003), and *Philip Morris v. Williams*, 127 S. Ct. 1057 (2007).

### FIFTY-EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's claims are based on alleged misrepresentations made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341 (2001).

### FIFTY-NINTH AFFIRMATIVE DEFENSE

1   Plaintiff's claims are barred, in whole or in part, because FDA has exclusive or
2   primary jurisdiction over the matters asserted in the Complaint.

3   ### SIXTIETH AFFIRMATIVE DEFENSE

4   The statutes upon which Plaintiff bases her Complaint are unconstitutionally vague
5   and ambiguous on their face as applied to sanofi-aventis U.S. LLC.  The statutes do not
6   provide sufficient notice as to what constitutes a violation.  sanofi-aventis U.S. LLC was
7   justified in relying on a reasonable interpretation of the statutes.  A finding of liability
8   against sanofi-aventis U.S. LLC based upon the application of the facts at bar would violate
9   sanofi-aventis U.S. LLC's rights under the Due Process Clause of the Fourteenth
10  Amendment to the United States Constitution and cognate provisions of the California
11  constitution.

12  ### SIXTY-FIRST AFFIRMATIVE DEFENSE

13  While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this
14  case, to the extent Plaintiff intends to seek punitive damages, sanofi-aventis U.S. LLC
15  further states that the correct standard for submitting Plaintiff's burden of proof for punitive
16  damages is "clear and convincing evidence."  Any lesser standard is in violation of the due
17  process clause of the Fourteenth Amendment of the United States Constitution and cognate
18  provisions of the California constitution.

19  ### SIXTY-SECOND AFFIRMATIVE DEFENSE

20  While sanofi-aventis U.S. LLC denies that it is liable for any punitive damages in this
21  case, to the extent Plaintiff intends to seek punitive damages, the Sixth Amendment to the
22  United States Constitution and equivalent protections provided by the California constitution
23  prohibit any award of punitive damages unless there is a unanimous verdict.

24  ### SIXTY-THIRD AFFIRMATIVE DEFENSE

25  To the extent Plaintiff seeks joint and several liability, sanofi-aventis U.S. LLC's
26  liability, if any, for non-economic damages is several rather than joint and should be prorated
27  according to California Civil Code § 1431.2.

28

Exhibit A-6
00066

## SIXTY-FOURTH AFFIRMATIVE DEFENSE

The liability of sanofi-aventis U.S. LLC, if any, in this action is subject to the limitations set forth in California's Fair Responsibility Act of 1986. Cal. Civ. Code §§ 1431-1431.5.

## SIXTY-FIFTH AFFIRMATIVE DEFENSE

Sanofi-aventis U.S. LLC is entitled to an offset of any prejudgment monies received by Plaintiff from any settling defendant pursuant to California Code of Civil Procedure § 877(a).

## SIXTY-SIXTH AFFIRMATIVE DEFENSE

Sanofi-aventis U.S. LLC asserts any and all defenses that might apply to this action by virtue of applicable California law.

## SIXTY-SEVENTH AFFIRMATIVE DEFENSE

Sanofi-aventis U.S. LLC reserves the right to assert and rely on all defenses available under the law of any state other than California if the law of such state other than California is deemed applicable in this action.

## SIXTY-EIGHTH AFFIRMATIVE DEFENSE

Sanofi-aventis U.S. LLC incorporates all affirmative defenses asserted by all other defendants in this matter. Sanofi-aventis U.S. LLC also reserves the right to rely upon such other defenses as may become available or appear during the course of discovery proceedings in this case and hereby reserves the right to amend this Answer to assert such defenses.

## PRAYER FOR RELIEF

Sanofi-aventis U.S. LLC prays for entry of judgment in its favor and against Plaintiff as follows:

1.      That the Complaint be dismissed in its entirety with prejudice;

2.      That Plaintiff takes nothing by way of the Complaint;

3.      That sanofi-aventis U.S. LLC recover its costs, disbursements and attorneys' fees in this action; and

4.      For such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Sanofi-aventis U.S. LLC demands a trial by jury of all issues so triable.

Dated: February 10, 2017                              Respectfully submitted,

                                                      SHOOK, HARDY & BACON L.L.P.


                                                      By: _____
                                                          Naoki S. Kaneko
                                                          Attorney for Defendant
                                                          sanofi-aventis U.S. LLC

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1600, Irvine, California  92614.

On February 10, 2017, I served on the interested parties in said action the within:

**DEFENDANT SANOFI-AVENTIS U.S. LLC'S ANSWER AND JURY DEMAND**

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☒ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (E-MAIL) I caused such document(s) to be served via email on the interested parties at their e-mail addresses listed.

☐ (HAND DELIVERY) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered by hand to the addressee(s) designated.

☐ (ELECTRONIC FILING) I provided the document(s) listed above electronically through the CM/ECF system pursuant to the instructions set forth in the Local Rules for the United States District Court for the Central District of California.

☐ (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, to be delivered by their next business day delivery service to the addressee designated.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.   Executed on February 10, 2017, at Irvine, California.

Heather Keresztes
(Type of print name)

(Signature)

1

## SERVICE LIST

2

*Susan Fuller v. Sanofi S.A., et al.*
SDSC Case No: 37-2016-00044267-CU-PL-CTL

3

4  John H. Gomez, Esq.
   Ahmed S. Diab, Esq.

5  Lindsay R. Stevens, Esq.
   GOMEZ TRIAL ATTORNEYS

6  655 W. Broadway, Suite 1700

7  San Diego, CA  92101

8  Tel:  619-237-3490

9  Fax: 619-237-3496
   Email: john@thegomezfirm.com

10 Email: adiab@thegomezfirm.com

11 Email: lstevens@thegomezfirm.com
   **Attorneys for Plaintiff**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Erin M. Bosman, Esq.
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130

Tel:  858-720-5100
Fax: 858-720-5125
Email: EBosman@mofo.com
**Attorney for Defendant**

370885 v1

Exhibit A-6
00070



# EXHIBIT D

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| JOHN H. GOMEZ (SBN 171485); AHMED S. DIAB (SBN 262319); LINDSAY R. STEVENS (SBN 256811) **GOMEZ TRIAL ATTORNEYS** 655 W. BROADWAY, SUITE 1700 SAN DIEGO, CA 92101 TELEPHONE NO.: (619) 237-3490    FAX NO. *(Optional)*: (619) 237-3496 E-MAIL ADDRESS *(Optional)*: john@thegomezfirm.com; adiab@thegomezfirm.com; lstevens@thegomezfirm.com ATTORNEY FOR *(Name)*: PLAINTIFF | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 WEST BROADWAY
MAILING ADDRESS: SAME AS ABOVE
CITY AND ZIP CODE: SAN DIEGO, CA 92101
BRANCH NAME: CENTRAL - CIVIL DIVISION

| | |
|---|---|
| PLAINTIFF/PETITIONER: SUSAN FULLER DEFENDANT/RESPONDENT: SANOFI S.A., et al. | CASE NUMBER: **37-2016-00044267-CU-PL-CTL** |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: GOMTR-0099408.SL |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) information
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ Other *(specify documents)*: **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE**
3. a. Party served *(specify name of party as shown on documents served)*:
      **SANOFI S.A.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      **DAVID MEEKER or MAZAMMIL MANSURI, AGENT FOR SERVICE**
4. Address where the party was served: **500 KENDALL STREET, CAMBBRIDGE, MA 02142**
5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed item 2 to the party or person authorized to receive service of process for the party  (1) on *(date)*:    (2) at *(time)*:
   b. ☑ **by substituted service.** On *(date)*: 01/17/2017  at *(time)*: 3:30 PM  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:
      **JENNIFER SMITH, EMPLOYEE**
      (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☑ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ.Proc., § 415.20). I mailed the documents on *(date)*:    from *(city)*:    or ☑ a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: SUSAN FULLER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: SANOFI S.A., et al. | 37-2016-00044267-CU-PL-CTL |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*               (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt).* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):* **SANOFI S.A.**

    under the following Code of Civil Procedure section:

      ☑ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)

      ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)

      ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

      ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

      ☐ 416.50 (public entity)            ☐ 415.46 (occupant)

                                    ☐ other:

7. **Person who served papers**

  a. Name: **CYNTHIA PARIS (Massachusetts State Process Server)**

  b. Address: PO Box 861057, Los Angeles, California 90086

  c. Telephone number: (213) 975-9850

  d. **The fee** for service was: $ 304.25

  e. I am:

    (1) ☑ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ registered California process server:

      (i) ☐ owner ☐ employee ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **1/18/2017**

| **CYNTHIA PARIS** | ► *(signature)* |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | (SIGNATURE) |

| SUPERIOR COURT FOR THE STATE OF CALIFORNIA<br>FOR THE COUNTY OF   SAN DIEGO          CENTRAL - CIVIL DIVISION | FOR COURT USE ONLY |
|---|---|
| **SHORT TITLE OF CASE:**<br>SUSAN FULLER          vs.   SANOFI S.A., et al. | |
| **ATTORNEY (S) NAME & ADDRESS**<br>JOHN H. GOMEZ (SBN 171485); AHMED S. DIAB (SBN 262319); LINDSAY R. STEVENS (SBN 256811)<br>GOMEZ TRIAL ATTORNEYS<br>655 W. BROADWAY, SUITE 1700<br>SAN DIEGO, CA 92101<br>(619) 237-3490                          (619) 237-3496<br>GOMTR-0099408.SL | |
| **DECLARATION OF DUE DILIGENCE** | **CASE #:** 37-2016-00044267-CU-PL-CTL |

At the time of service attempt(s), I was at least 18 years old and not a party to the action

On   January 17, 2017 , Express Network received the following document(s):

SUMMONS; COMPLAINT; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; CIVIL CASE COVER
SHEET; NOTICE OF CASE ASSIGNMENT AND CASE MANAGMENT CNFERENCE on MANDATORY eFILE CASE

to be served on  SANOFI S.A.                                              at the following address:

**BUSINESS           500 KENDALL STREET, CAMBBRIDGE, MA 02142**

01/17/2017 AT 03:30 PM          I SERVED JENNIFER SMITH, PERSON APPARENTLY IN CHARGE, BY
                                LEAVING DOCUMENTS AT FRONT DESK AND ANNOUNCING
                                SERVICE.

Person serving:
CYNTHIA PARIS
EXPRESS  NETWORK
P.O. BOX 861057
LOS ANGELES, CALIFORNIA 90086
(213) 975-9850

Fee for Service: 304.25
☒ Not A Registered California Process Server
☐ Registered California Process Server
(1) Employee or Independent Contractor
(2) Registration No.:
(3) County:

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date:  January 18, 2017

Proof of Service complies with CRC 982(a)(23) as required by CCP 417.10

**DECLARATION OF DUE DILIGENCE**

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (name and Address)

JOHN H. GOMEZ (SBN 171485); AHMED S. DIAB (SBN 262319); LINDSAY R. STEVENS (SBN 256811)

(619) 237-3490

GOMEZ TRIAL ATTORNEYS
655 W. BROADWAY, SUITE 1700
SAN DIEGO, CA 92101

Attorney(s) for: PLAINTIFF
Ref: GOMTR-0099408.SL

**FOR COURT USE ONLY**

SUPERIOR COURT FOR THE STATE OF CALIFORNIA FOR THE
COUNTY OF SAN DIEGO , CENTRAL - CIVIL DIVISION

SUSAN FULLER
vs. SANOFI S.A., et al.

| PROOF OF MAILING | DATE: | TIME: | DEPT | CASE NUMBER: 37-2016-00044267-CU-PL-CTL |
|---|---|---|---|---|

**At the time of mailing, I was at least 18 years old and not a party to the action**

1. I mailed the following documents:
   SUMMONS; COMPLAINT; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; CIVIL CASE
   COVER SHEET; NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE or
   MANDATORY eFILE CASE

2. (a) Addressed as follows:
   SANOFI S.A., Attn: DAVID MEEKER or MAZAMMIL MANSURI
   500 KENDALL STREET
   CAMBBRIDGE, MA 02142

   (b) ☒ Business   ☐ Residence   ☐ Other

3. On: 01/18/2017

4. Place: Los Angeles, California

5. Type of mailing: First Class

6. Person mailing:
   JESSE VILLALTA
   EXPRESS NETWORK
   P.O. BOX 861057
   LOS ANGELES, CALIFORNIA 90086
   (213) 975-9850

7. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 01/18/2017

PROOF OF MAILING

# EXHIBIT E

2013 WL 3354458
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

Amanda HATHERLEY, individually, and as personal
representative of the estate of B.H.L., Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation; Pfizer
International LLC, a New York Limited Liability
Corporation; McKesson Corporation, individually
and d/b/a Northstar RX LLC, a Delaware
Corporation; Wyeth Pharmaceuticals, Inc. and
Does 1 through 100, inclusive, Defendants.

No. CIV. 2:13–00719 WBS CKD.
|
July 3, 2013.

**Attorneys and Law Firms**

Karen Barth Menzies, Mark P. Robinson, Jr., Robinson,
Calcagnie, Robinson, Shapiro, Davis, Inc., Newport
Beach, CA, for Plaintiffs.

Marshall Mayes Searcy, III, Quinn, Emanuel, Urquhart
& Sullivan, LLP, Los Angeles, CA, for Defendants.

*MEMORANDUM AND ORDER RE:*
*MOTIONS TO REMAND AND STAY*

WILLIAM B. SHUBB, District Judge.

**\*1** Plaintiff Amanda Hatherley, individually and
as personal representative of the estate of B.H.L.,
brings this wrongful death products liability action
against defendants Pfizer, Inc.; Pfizer International LLC
(together, "Pfizer"); McKesson Corporation, individually
and doing business as Northstar RX LLC ("McKesson");
Wyeth Pharmaceuticals, Inc. ("Wyeth"); and Does one
through one hundred.

Plaintiffs allege that B.H.L. died as a result of serious birth
defects caused by Hatherley ingesting Effexor, a brand-
name prescription drug, during her pregnancy. (Notice
of Removal Ex. A ("Compl.") ¶¶ 1, 31 (Docket No. 1–
1).) Pfizer allegedly manufactures Effexor, and McKesson
allegedly distributed the Effexor that was dispensed to
Hatherley. (*Id.* ¶¶ 9, 11–12.) The crux of plaintiffs'

allegations is that defendants failed to adequately warn
Hatherley, her physicians, and her health care providers
of the true risks of using Effexor while pregnant. (*Id.* ¶¶
58–61.)

Hatherley is a resident of Shasta County, California. (*Id.* ¶
2.) McKesson is a Delaware corporation with its principal
place of business in San Francisco, California. (*Id.* ¶ 1;
Notice of Removal ¶¶ 7–10 (Docket No. 1).)

Plaintiffs filed this action in the Superior Court of Shasta
County, California on March 8, 2013. (Notice of Removal
¶ 1.) They bring claims for: (1) strict liability for failure
to warn; (2) negligence; (3) breach of implied warranty;
(4) breach of express warranty; (5) deceit by concealment
in violation of California Civil Code sections 1709, 1710;
(6) negligent misrepresentation; (7) fraud and fraudulent
concealment; (8) survival; and (9) wrongful death.

Pfizer and Wyeth ("defendants") removed the action to
this court on April 12, 2013. (Docket No. 1.) Plaintiffs
now move to remand this action, (Docket No. 11), while
defendants move to stay pending resolution of a motion
before the Judicial Panel on Multidistrict Litigation
seeking establishment of a multidistrict litigation for
federal cases alleging birth defects due to Effexor, (Docket
No. 10).

**I.** *Legal Standard*
The Ninth Circuit requires district courts "to strictly
construe the removal statute against removal jurisdiction"
and reject federal jurisdiction "if there is any doubt
as to the right of removal in the first instance." *Gaus
v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). "The
'strong presumption' against removal jurisdiction means
that the defendant always has the burden of establishing
that removal is proper." *Id.* "If at any time before final
judgment it appears that the district court lacks subject
matter jurisdiction, the case shall be remanded." 28 U.S.C.
§ 1447(c); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 932 (9th
Cir.2001).

**II.** *Analysis*
Jurisdiction in this case is based on diversity of
citizenship. Such jurisdiction requires complete diversity.
*See Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 267, 2
L.Ed. 435 (1806). Both plaintiff Hatherley and defendant
McKesson are citizens of California for purposes of

determining diversity jurisdiction. *See* 28 U.S.C. § 1332(c). Where a non-diverse defendant is fraudulently joined, however, the presence of that defendant will not defeat diversity jurisdiction. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001).

**\*2** In their Notice of Removal, defendants argued that McKesson should be disregarded for purposes of establishing the court's jurisdiction over this action because it is fraudulently joined. (Notice of Removal ¶ 13.) Thus, to determine whether the court has subject matter jurisdiction over this action, it must determine whether McKesson is a sham defendant.

"Fraudulent joinder is a term of art." *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987). Joinder of a non-diverse defendant is fraudulent where "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state ...." *Id; Hunter v. Philip Morris USA,* 582 F.3d 1039, 1043 (9th Cir.2009); *see Mireles v. Wells Fargo Bank, N.A.,* 845 F.Supp.2d 1034, 1063 (C.D.Cal.2012) ("In the Ninth Circuit, a non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff *could not possibly recover* against the party whose joinder is questioned." (internal quotation marks and citations omitted)). Defendant carries the burden of proving fraudulent joinder and it is heavy, as "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007). "If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand." *Macey v. Allstate Prop. & Cas. Ins. Co.,* 220 F.Supp.2d 1116, 1117 (N.D.Cal.2002).

In their Notice of Removal, defendants contend that "[p]laintiffs' claims against McKesson fail both as a matter of law and under the allegations of the Complaint." (Notice of Removal ¶ 13.) Most of defendants' arguments are now old hat, however, as versions of them have been rejected by numerous district courts in cases involving the same purportedly fraudulent defendant-McKesson. This court again addresses these arguments, but notes that other district courts in California have already remanded three cases related to this action. [1] *See Taha v. Pfizer, Inc.,* CV 13–02577–MWF

(FFMx), slip op. (C.D.Cal. July 1, 2013); *I.L. v. Pfizer, Inc.,* 2:13–cv–02578–RGK–PJW, slip op. (C.D. Cal. June 6, 2013); *A.S. v. Pfizer, Inc.,* 1:13–CV–00524–LJO, 2013 WL 2384320 (E.D.Cal. May 30, 2013) (Thurston, M.J.).

A. *Distributor Liability for Failure to Warn*
To show that McKesson is not a fraudulent defendant and secure a remand, plaintiffs need to state only one viable claim against McKesson. Plaintiffs contend that their strict liability failure-to-warn claim against McKesson is not foreclosed under California law. (Brief in Supp. 5:7–7:7 (Docket No. 11).)

The California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for failure to warn of knowable risks. *Brown v. Superior Court,* 44 Cal.3d 1049, 1069, 245 Cal.Rptr. 412, 751 P.2d 470 (1988). In contrast, California courts have not expressly addressed the potential liability of distributors and other parties in the chain of distribution in prescription drug cases. *See Mendez v. AstraZeneca Pharmaceuticals LP,* 1:12–CV–00535–LJO, 2012 WL 1911382, at \*2 (E.D.Cal. May 25, 2012) (citing *Hanzey v. Bayer Corp.,* 10CV0526 JM CAB, 2010 WL 2011529, at \*4 (S.D.Cal. May 19, 2010), for the proposition that there is no well-established law in California that creates an exception in strict liability for distributors of prescription drugs). Under California law, however, the general rule is that "[i]n a product liability action, every supplier in the stream of commerce or chain of distribution, from manufacturer to retailer, is potentially liable." *Edwards v. A.L. Lease & Co.,* 46 Cal.App.4th 1029, 1033, 54 Cal.Rptr.2d 259 (1st Dist.1996); *see O'Neil v. Crane Co.,* 53 Cal.4th 335, 342, 135 Cal.Rptr.3d 288, 266 P.3d 987 (2012) ("California law has long provided that manufacturers, distributors, and retailers have a duty to ensure the safety of their products, and will be held strictly liable for injuries caused by a defect in their products."); *Bostick v. Flex Equip. Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007) ("The doctrine of strict products liability imposes strict liability in tort on all of the participants in the chain of distribution of a defective product.").

**\*3** In view of this case law, it appears as though a strict liability failure-to-warn claim against a pharmaceutical drug distributor remains viable. *See Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.,* 08–01831 SBA, 2008 WL 2477389, at \*5 (N.D.Cal. June 18, 2008) ("In light

of the general rule under California law that distributors of defective products are strictly liable, the lack of any authority exempting distributors from liability for failure to warn in the prescription drug context inclines this Court against a finding of frivolity." (internal citation omitted)). Defendants, however, raise two arguments as to why McKesson cannot be liable for a failure-to-warn claim.

### 1. *Comment K*

Comment k of the Restatement (Second) of Torts § 402A sets forth a test that "would impose liability on a drug manufacturer only if it failed to warn of a defect of which it either knew or should have known." [2] *Brown,* 44 Cal.3d at 1059, 245 Cal.Rptr. 412, 751 P.2d 470. Defendants cite a lone unpublished case, *Skinner v. WarnerLambert Co.,* CV 03–1643–R(RZX), 2003 WL 25598915 (C.D.Cal. Apr. 28, 2003), for the proposition that pursuant to comment k, a non-manufacturer supplier cannot be held liable under a products liability theory. *Skinner,* which also involved a claim that the distributor defendant was a sham defendant, devoted the following analysis to the issue: "Pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability." *Skinner,* 2003 WL 25598915, at *1. As explained by another court in the Central District of California that declined to follow *Skinner,* however, comment k "does not exempt distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given." [3] *Black v. Merck & Co., Inc.,* CV 03–8730 NMAJWX, 2004 WL 5392660, at *4 (C.D.Cal. Mar.3, 2004). Accordingly, because plaintiffs allege here that proper warning was not given, comment k does not preclude strict liability for McKesson.

### 2. Learned Intermediary Doctrine

Under California law, the learned intermediary doctrine provides that manufacturers do not have a duty to warn the ultimate consumers of a drug's potential dangers if adequate warning has been given to physicians (i.e., the "intermediaries"). *Carlin v. Superior Court,* 13 Cal.4th 1104, 1116, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996) ("[I]n the case of prescription drugs, the duty to warn runs to the physician, not to the patient."); *see Martin v. Merck & Co., Inc.,* S–05–750 LKK/PAN, 2005 WL 1984483,

at *4 (E.D.Cal. Aug.15, 2005) (noting that the learned intermediary doctrine is a defense to a cognizable cause of action). Defendants argue that the doctrine precludes the court from finding that McKesson had any duty to warn consumers directly and thus precludes plaintiffs from establishing the element of causation. (Opp'n at 8:8–20, 9:1–18 (Docket No. 17).) Defendants' reliance on the learned intermediary doctrine is misplaced for two reasons.

**\*4** First, the learned intermediary doctrine "applies only if a manufacturer provided *adequate* warnings to the intermediary." *Hill v. Novartis Pharmaceuticals Corp.,* —— F.Supp.2d ——, 2013 WL 1953753, at *6 (E.D.N.Y. May 10, 2013) (quoting *Stewart v. Union Carbide Corp.,* 190 Cal.App.4th 23, 29, 117 Cal.Rptr.3d 791 (2d Dist.2010)) (emphasis added). So "where a manufacturer provides inadequate warnings, or no warning at all, it '[cannot] rely upon the intermediary, even if [learned], to pass on or give warnings.' " *Id.* (quoting *Stewart,* 190 Cal.App.4th at 29, 117 Cal.Rptr.3d 791). Plaintiffs allege that defendants knew the risks to women who ingested Effexor while pregnant. (Compl.¶ 58.) They further allege that "[d]efendants failed to adequately inform physicians and misled physicians about the risks associated with Effexor ...." (*Id.* ¶ 58, 117 Cal.Rptr.3d 791; *see id.* ¶¶ 27–28, 59–61, 117 Cal.Rptr.3d 791.) Thus, the learned intermediary doctrine appears to be inapplicable here. [4] *See Wendell v. Johnson & Johnson,* C 09–04124 CW, 2012 WL 3042302, at *7 (N.D.Cal. July 25, 2012) ("A [drug] manufacturer ... discharges its duty to warn if it provides an adequate warning to the physician about any known or reasonably knowable dangerous side effects of a medicine, regardless of whether the warning reaches the patient. A plaintiff asserting causes of action for failure to warn must prove not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of a warning caused the plaintiff's injury." (internal citations omitted)); *Brown,* 44 Cal.3d at 1062, 245 Cal.Rptr. 412, 751 P.2d 470 ("The manufacturer cannot be held liable if it has provided appropriate warnings and the doctor fails in his duty to transmit these warnings to the patient or if the patient relies on inaccurate information from others regarding side effects of the drug."); *Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51, 65, 107 Cal.Rptr. 45, 507 P.2d 653 (1973) ("In the case of medical prescriptions, '*if* adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer

to insure that the warning reaches the doctor's patient for whom the drug is prescribed." (quoting *Love v. Wolf,* 226 Cal.App.2d 378, 395, 38 Cal.Rptr. 183 (3d Dist.1964) (emphasis added))).

Second, even if the learned intermediary doctrine were to apply in this case to preclude finding any duty to warn plaintiffs on behalf of McKesson, it would likewise apply to preclude such a finding for the remaining manufacturer defendants. Where " 'a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit.' " *Hunter,* 582 F.3d at 1044 (quoting *Smallwood v. Ill. Cent. R. Co.,* 385 F.3d 568, 574 (5th Cir.2004)). In such instances, " 'it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper.' " *Id.* (quoting *Smallwood,* 385 F.3d at 574). The learned intermediary doctrine does not provide a basis, therefore, to find that McKesson is a fraudulent defendant. *See Smallwood,* 385 F.3d at 575 ("When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made.").

**\*5** Defendants also note that under California law pharmacies cannot be subject to supplier liability for dispensing FDA-approved medicines in accordance with physician's prescriptions. (Opp'n at 8 n. 3 (citing *Murphy v. E.R. Squibb & Sons, Inc.,* 40 Cal.3d 672, 681, 221 Cal.Rptr. 447, 710 P.2d 247 (1985)).) They argue that "there is no basis under California law to distinguish pharmacies, who supply medicines to patients, from distributors, who supply medicines to pharmacies, in this context." (*Id.*) Whether that is so, California courts have not yet extended the exception to distributors.

Even though defendants note that plaintiffs have not cited a single case in which a distributor of prescription medicines was held liable for failure to warn under California law, (Opp'n at 9:19–20), the foregoing analysis demonstrates that California law does not foreclose such liability under either a negligence or strict liability theory. Accordingly, it is not obvious that plaintiffs have no claim against McKesson under California law.

### B. *Preemption*

Plaintiffs do not dispute that defendants' preemption defense applies only to McKesson. But they contend that the Ninth Circuit has made clear that the court should not make a fraudulent defendant determination based on a defendant's possible defenses. (Reply at 6:13–15 (citing *Hunter,* 582 F.3d at 1045) (Docket No. 19).) It is not obvious, however, whether the Ninth Circuit in *Hunter* meant that the defendants' preemption defense would not overcome the strong presumption against removal jurisdiction because it went to the merits of the plaintiff's claim and because it applied to all the defendants, or merely because it went to the merits. *See Hunter,* 582 F.3d at 1043. The court did explain that "[w]hen a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.' " *Id.* at 1045 (quoting *Hamilton Materials, Inc.,* 494 F.3d at 1206).

Even if the court properly considers McKesson's preemption defense on a motion to remand, defendants would not meet their burden of showing that McKesson is a fraudulent defendant.[5] In *PLIVA v. Mensing,* ––– U.S. ––––, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011), the Supreme Court held that certain federal drug regulations preempt state-law claims brought against generic drug manufacturers for failure to warn about the dangers of the drugs they made. *Mensing,* 131 S.Ct. at 2577–78. This is because state law imposes a duty on the generic drug manufacturers to change the drugs' warning labels and federal law bars them from taking that action. *See id.* at 2581. Consequently, a generic manufacturer cannot simultaneously comply with both state and federal law. In contrast, in *Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), the Supreme Court held that a state-law failure-to-warn claim against a brand drug manufacturer is not preempted by federal law. *Wyeth,* 555 U.S. at 573. Unlike a generic manufacturer, a brand manufacturer may "unilaterally strengthen its warning." *Id.*

**\*6** Just days ago, in *Mutual Pharmaceutical Co., Inc. v. Bartlett,* –––S.Ct. ––––, 2013 WL 3155230 (U.S. June 24, 2013), the Supreme Court held that, under *Mensing,* state-law design-defect claims based on inadequate warnings against generic manufacturers are also preempted by

federal law. *Bartlett,* 2013 WL 3155230, at *10. The court noted that because the drug at issue could not be redesigned (it would be a new drug), the only way for the manufacturer to escape liability was to redesign the drug's label, which it cannot do under federal law. *Id.* at *9–10. It also rejected the argument that the manufacturer could evade the impossibility of complying with both federal- and state-law duties by not making a drug at all. *Id.* at *10.

Defendants contend that under *Mensing,* "the doctrine of implied preemption applies directly to bar claims against manufacturers and distributors of generic drugs." (Opp'n at 12:14–15.) They argue that like the manufacturers of generic drugs, the distributors of generic and branded drugs would violate federal law by changing the label accompanying a drug. (*Id.* at 13:3–7.) In concluding their argument as to why *Mensing* precludes failure-to-warn claims against the distributors of brand-name drugs, defendants state: "In short, the reasoning of *Mensing* applies with equal force to both distributors and generic manufacturers, as both are equally powerless to change the labeling of prescription drugs, without violating federal law." (*Id.* at 16:18–20.)

The court recognizes the logic of defendants' argument, but its articulation reveals an accompanying weakness. Both *Mensing* and *Bartlett* dealt with manufacturers of generic drugs, not distributors. To find plaintiffs' failure-to-warn claims preempted, the court would have to extend *Mensing* and *Bartlett;* that is, it would have to hold that the reasoning the Supreme Court used in those cases to preempt state-law claims against generic manufacturers compels the conclusion that state-law claims against brand-name drug distributors are also preempted. The parties do not identify any binding authority or authority from California extending *Mensing* or *Bartlett* in that way. [6] Thus, while the argument that distributors of brand name drugs are the same as generic manufacturers may be persuasive, "unless and until this rationale *is* extended," it is not obvious that plaintiffs have no claim against McKesson under California law because of a preemption defense. *Taha,* CV 13–02577–MWF (FFMx), slip op. at 5 (internal quotation marks and citation omitted).

C. *Pleading Deficiencies*
"[A] defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim

against the non-diverse defendant." *Padilla v. AT & T Corp.,* 697 F.Supp.2d 1156, 1159 (C.D.Cal.2009). Such a "defendant must also show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant. Remand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Id.* (internal quotation marks and citations omitted) (alteration in original). To the extent pleading standards are relevant to this analysis, courts have looked to state law. [7] In *Hunter,* the Ninth Circuit did not find fraudulent joinder after determining that the plaintiff's complaint sufficiently alleged a strict products liability claim under Alaska state law. *Hunter,* 582 F.3d at 1043 ("Construing Hunter's pleadings liberally, as required by Alaska's notice pleading rules, the complaint sufficiently alleges a strict products liability claim under Alaska law."). It explained that " 'if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' " *Id.* (quoting *Tillman v. R.J. Reynolds Tobacco,* 340 F.3d 1277, 1279 (11th Cir.2003)).

**\*7** Defendants first contend that plaintiffs have not alleged any fact from which it could be determined that McKesson actually distributed the Effexor allegedly used by Hatherley during her pregnancy. (*See* Opp'n at 17:9–12.) They cite several cases finding fraudulent joinder where the plaintiff failed to allege that the distributor sold or supplied the drug he or she used. In contrast, here plaintiffs allege based on information and belief that defendant McKesson distributed the Effexor that was dispensed to Hatherley. (Compl.¶ 9.)

Under California law, a " '[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.' " *Doe v. City of Los Angeles,* 42 Cal.4th 531, 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (2007) (quoting *Pridonoff v. Balokovich,* 36 Cal.2d 788, 792, 228 P.2d 6 (1951)). "When a plaintiff lacks knowledge and the means of obtaining knowledge of facts material to his or her cause of action because the matters are peculiarly within the knowledge of the adverse party, and the pleader can learn of them only from statements of others, he or she may plead what he or she believes to be true as a result of information (hearsay) the pleader

has received." *Dey v. Cont'l Cent. Credit,* 170 Cal.App.4th 721, 725 n. 1, 88 Cal.Rptr.3d 241 (4th Dist.2008) (internal quotations and citations omitted).

Plaintiffs appear to base their allegation that McKesson distributed the Effexor Hatherley ingested on their knowledge that McKesson is the largest single distributor of Pfizer's pharmaceutical products, including those sold in California, and that fourteen percent of Pfizer's profits the year Hatherley was pregnant were sales to McKesson. (*See* Compl. ¶ 10.) These facts are at least sufficient to provide plaintiffs with a belief that McKesson was the distributor of Hatherley's Effexor. Moreover:

> Whether McKesson distributed the [Effexor] ingested by [Hatherley] is not a fact plaintiffs would have reason to know directly. Information regarding the identity of the pharmacy or health care facility where [Hatherley] obtained the [Effexor] is within plaintiffs' knowledge. However, whether McKesson distributed the drug to the pharmacy or health care facility is information plaintiffs would have to obtain from McKesson or a third party, *i.e.,* the pharmacy or health care facility. Thus, this is not information within plaintiffs' personal knowledge.

*Mendez,* 2012 WL 1911382, at *3.

Numerous other district courts have found similar, if not identical, allegations sufficient to defeat a finding of fraudulent joinder of a distributor defendant. *See Rivera v. AstraZeneca Pharmaceuticals LP,* CV 12–02921 GAF JEMX, 2012 WL 2031348, at *5 (C.D.Cal. June 5, 2012) (listing cases). The court agrees and finds that plaintiffs' allegation based upon information and belief that McKesson distributed the Effexor Hatherley ingested is sufficient to survive defendants' opposition to remand based on fraudulent joinder.

**\*8** Defendants argue more broadly that plaintiffs' claims against McKesson are inadequate because they are targeted only at "defendants" generally, rather than McKesson in particular. (*See* Opp'n at 20:9–23:12.) Unlike in other cases finding such allegations to counsel

against remand, here "[p]laintiffs [did not] fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants." *Shah v. Wyeth Pharmaceuticals, Inc.,* CV 04–8652 DT MANX, 2005 WL 6731641, at *3 (C.D.Cal. Jan.18, 2005). Plaintiffs alleged that McKesson in particular distributed the Effexor Hatherley ingested. (Compl. ¶ 9 .) Other allegations are directed only at the Pfizer and Wyeth.

Further, under California law, "a pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim." *Elder v. Pac. Bell Tel. Co.,* 205 Cal.App.4th 841, 858, 141 Cal.Rptr.3d 48 (1st Dist.2012) (internal quotation marks and citations omitted). In other words, allegations are sufficient to defeat a demurrer where "the complaint states facts sufficient to constitute a cause of action." *Blank v. Kirwan,* 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58 (Cal.1985); *see* Cal.Code Civ. P. § 425.10(a)(1) (requiring complaint to contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language"). The elements of a strict liability failure to warn claim are:

> (1) the defendant manufactured, distributed, or sold the product; (2) the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3) that the potential risks presented a substantial danger to users of the product; (4) that ordinary consumers would not have recognized the potential risks; (5) that the defendant failed to adequately warn of the potential risks; (6) that the plaintiff was harmed while using the product in a reasonably foreseeable way; (7) and that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm.

*Rosa v. City of Seaside,* 675 F.Supp.2d 1006, 1011 (N.D.Cal.2009), *aff'd sub nom. Rosa v. Taser Int'l, Inc.,* 684 F.3d 941 (9th Cir.2012), (quoting Jud. Council of Cal. Civ. Jury Instruction No. 1205).

Defendants have not argued that plaintiffs failed to allege any of these elements as to McKesson and a quick perusal of the Complaint suggests that they have alleged each

element.[8] (*See* Compl. ¶¶ 9, 26, 37, 39, 70–73.) Even if plaintiffs' strict liability claim is technically deficient, defendants do not argue that there is no possibility that plaintiffs would not be granted leave to amend the Complaint. *See Padilla,* 697 F.Supp.2d at 1159. Moreover, any ambiguities in the pleadings must be resolved in favor of remand. *Charlin v. Allstate Ins. Co.,* 19 F.Supp.2d 1137, 1140 (C.D.Cal.1998) ("Doubt arising from inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand.") It is therefore not obvious that plaintiffs did not state a claim against McKesson under California law. *See Hunter,* 582 F.3d at 1043.

**\*9** With this conclusion and the foregoing analysis, the court cannot find that McKesson is a fraudulently joined defendant. It remains a party and destroys complete diversity between plaintiffs and defendants. Accordingly, the court lacks subject matter jurisdiction over this action.

IT IS THEREFORE ORDERED that plaintiffs' motion to remand this case be, and the same hereby is, GRANTED. This matter is hereby REMANDED to the Superior Court of California, in and for the County of Shasta.

IT IS FURTHER ORDERED that defendants' motion to stay be, and the same hereby is, DENIED as MOOT. Defendants' motion to file a sur-reply be, and the same hereby is, DENIED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3354458

Footnotes

1   Pfizer filed a motion for leave to file a sur-reply. (Docket No. 27.) The court denies the motion because the court has reviewed the sur-reply and found nothing in it that would alter this order.

2   Comment K of the Restatement (Second) of Torts Section 402A provides:

    There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

    Restatement (Second) of Torts § 402A (1965).

3   A "seller" of a product is "any person engaged in the business of selling products for use or consumption. It therefore applies to any ... wholesale or retail dealer or distributor[.]" Restatement (Second) Torts § 402A, cmt. f.

4   Defendants have provided no authority for the proposition that the learned intermediary doctrine applies regardless of the adequacy of the warnings. Further, the court has found no district court to have considered the argument to approve it. *See, e.g., In re Avandia Mktg., Sales Practices & Products Liab. Litig.,* 624 F.Supp.2d 396, 419–20 (E.D.Pa.2009) ("[There are] rulings of multiple federal district courts considering California law that the learned intermediary defense simply does not apply where a plaintiff alleges 'that the manufacturer failed to adequately warn doctors of the danger of the drug' ...." (quoting *In re Fosamax Products Liab. Litig.,* 1:06–MD–1789 (JFK), 2008 WL 2940560, at \*7 (S.D.N.Y. July 29, 2008)); *Martin,* 2005 WL 1984483, at \*4 (E.D.Cal. Aug.15, 2005) (explaining that where the doctor was not warned, liability may still extend to the manufacturer); *Maher v. Novartis Pharmaceuticals Corp.,* 07CV852 WQH (JMA), 2007 WL 2330713, at \*4 (S.D.Cal. Aug. 13, 2007) (learned intermediary doctrine did prevent plaintiff from stating claim against drug distributor because plaintiff alleged that distributor failed to properly warn physicians, including plaintiff's physician).

5   It is not quite accurate to call the defense McKesson's, as McKesson has not yet appeared before this court, much less raised the defense. A problem with applying affirmative defenses in the fraudulent defendant analysis is that the

court must consider the application of a defense to a particular defendant who might—for a variety of reasons—not have wanted to raise it.

6    Defendants cite only to *In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II),* MDL 2243 JAP–LHG, 2012 WL 181411 (D.N.J. Jan.17, 2012), a district court case from New Jersey in which the court held on a motion to dismiss that because a brand-name distributor could not initiate a change in the drug's labeling, it could not " 'independently do under federal law what state law requires of it,' " and thus plaintiff's state-law claims that emanated from a failure-to-warn theory were preempted. *In re Fosamax,* 2012 WL 181411, at *1.

7    Indeed, "[t]he test for fraudulent joinder is whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed under state law. It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards." *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.,* 889 F.Supp.2d 931, 940 (E.D.Ky.2012) (internal quotation marks omitted).

8    Defendants contend that plaintiffs do not dispute Pfizer's showing in its notice of removal that plaintiffs failed to sufficiently allege any misrepresentation-based claim against McKesson because plaintiffs have not satisfied the pleading requirements of Federal Rule of Civil Procedure 9(b). Although, as the court noted above, federal pleading standards are not relevant to the fraudulent joinder analysis—and the case defendants cite fails to support their contention otherwise—plaintiffs need to have stated only one viable claim against McKesson to compel this court to remand.

---

**End of Document**                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT F

2012 WL 2031348
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Ruperto C. RIVERA et al.

v.

ASTRAZENECA PHARMACEUTICALS LP et al.

Thomas E. Walker et al.

v.

Astrazeneca Pharmaceuticals LP et al.

Merrilee Nestande et al.

v.

Astrazeneca Pharmaceuticals LP et al.

Nos. CV 12–02921 GAF (JEMx), CV 12–00493
GAF (JEMx), CV 12–00495 GAF (JEMx).
|
June 5, 2012.

**Attorneys and Law Firms**

Lowell W. Finson, Phillips Webster, Los Angeles,
CA, Marc Grossman, Sanders Viener Grossman LLP,
Mineola, NY, for Ruperto C. Rivera et al.

Megan Ritsu Nishikawa, Peter A. Strotz, William Edward
Steimle, King and Spalding LLP, San Francisco, CA,
Steven D. Park, King and Spalding LLP, Los Angeles,
CA, for Astrazeneca Pharmaceuticals LP et al.

*ORDER REMANDING CASE*

GARY ALLEN FEESS, District Judge.

**\*1**  Renee Fisher Deputy Clerk

**I.**

**INTRODUCTION**

These putative class actions arise out of personal
injuries allegedly sustained as a result of using Crestor,
a cholesterol-lowing drug manufactured by Defendant
AstraZeneca Pharmaceuticals LP ("AstraZeneca") and
distributed by Defendant McKesson Corporation
("McKesson"). (Docket No. 1, Not., Ex. 1 [Compl.].) [1]

On April 3 and 4, 2012, Defendants removed each
action to federal court on the purported basis of
diversity of citizenship, 28 U.S.C. § 1332(a), and
federal question jurisdiction, 28 U.S.C. § 1331. (Docket
No. 1, Not.) Notwithstanding McKesson's California
citizenship, Defendants claimed that the company had
been fraudulently joined purely for the purpose of
destroying diversity jurisdiction. (Not.¶¶ 14–21.) Plaintiffs
have now filed motions to stay and to remand the actions
to state court. (Docket Nos. 20, 21.) Defendants have filed
motions to dismiss various causes of action contained in
each complaint, and motions to sever the multi-plaintiff
complaints into separate cases. (Docket Nos. 15, 16,
17.) Because the Court concludes that Defendants have
failed to meet their burden of demonstrating fraudulent
joinder, and that the state law claims contained in the
complaints do not raise substantial federal questions,
the motions to remand are **GRANTED,** and the actions
are **REMANDED** to Los Angeles County and Riverside
County Superior Courts. Accordingly, the motions to
dismiss, to stay, and to sever are **DENIED as moot.**

**II.**

**BACKGROUND**

The United States Food and Drug Administration
("FDA") first approved Crestor® ("Crestor") as a
cholesterol-lowering drug in 2003. (*Id.* ¶ 35.) According to
the complaint, "recent news has come to light that casts a
shadow on the safety of using Crestor ." (*Id.*) In particular,
Plaintiffs allege that the early results of studies looking
into the risks of using Crestor are "not encouraging,"
as the drug has been linked to serious side effects, such
as heart muscle disease and deterioration, heart attacks,
sudden cardiac death, muscle deterioration, kidney and
liver damage, and diabetes. (*Id.*)

Plaintiffs allege that Defendants "manufactured, tested,
sold, offered for sale, supplied or placed [Crestor]
in the stream of commerce, or in the course of
business materially participated with others in so doing",
despite knowing the drug "to be defective, unreasonably
dangerous and hazardous, and ... substantially certain
to cause injury to persons within the State of
California ...." (*Id.* ¶ 36.) Moreover, Plaintiffs allege
that "through ... funding and control of certain
studies concerning the effects of Crestor", and

"their control over trade publications", among other things, Defendants "cooperated with and/or assisted in the wrongful suppression, active concealment, and/or misrepresentation of the true relationship between Crestor and various diseases ...." (*Id.* ¶¶ 38–40.) According to the complaint, Defendants also made a series of "statements, representations and promotional schemes ... [that] were deceptive, false, incomplete, [and/or] misleading", notwithstanding the fact that they knew, or should have known that such statements were false or misleading. (*Id.* ¶ 41.) Plaintiffs allege that they reasonably relied on these representations, that they were directly and proximately injured as a result, and that had they been adequately warned of the drug's potential side effects, they would have requested other medications and/or avoided Crestor. (*Id.* ¶¶ 42–43.)

**\*2** Plaintiffs further allege that Defendants "negligently, recklessly and wantonly failed to warn [them] and the general public of the risks associated with taking Crestor ... [notwithstanding] studies, including their own, show [ing] that there were problems concerning" various health risks. (*Id.* ¶ 45.) Accordingly, Plaintiffs allege that, "as designed, manufactured, distributed, sold and/or supplied by Defendants," Crestor was defective because it had been inadequately tested and because the drug contained inadequate warnings, instructions, and/or labeling. (*Id.* ¶¶ 48–49.)

On the basis of these facts, Plaintiffs bring claims for [1] strict liability; [2] negligence; [3] breach of express warranty; [4] breach of implied warranty; [5] fraud; [6] fraudulent concealment; and [7] loss of consortium. (*Id.* ¶¶ 59–95.)

### III.

### DISCUSSION

#### A. MOTION TO REMAND
In removing the actions to federal court, Defendants contend that jurisdiction is proper under both 28 U.S.C. §§ 1332(a) and 1331. (Not.¶¶ 9–26, 27–37.) The Court conducts these jurisdictional inquiries in turn.

#### 1. LEGAL STANDARDS GOVERNING REMOVAL AND REMAND

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). "[A] court may raise the question of subject matter jurisdiction, *sua sponte,* at any time during the pendency of the action ...." *Snell v. Cleveland, Inc.,* 316 F.3d 822, 826 (9th Cir.2002); *see also United Investors Life Ins. Co. v. Waddell & Reed, Inc.,* 360 F.3d 960, 966 (9th Cir.2004) ("Here the district court had a duty to establish subject matter jurisdiction over the removed action *sua sponte,* whether the parties raised the issue or not.").

Under 28 U.S.C. § 1441, a defendant may remove to federal court any state court action between citizens of different states, and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 1332(a). "It is well established that for a case to come within this statute there must be complete diversity and that diversity is not complete if any plaintiff is a citizen of the same state as any defendant." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68 (2nd Cir.1990) (citation omitted). A person's state of citizenship is "determined by her state of domicile, not her state of residence." *Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 857 (9th Cir.2001). A corporation is a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

"Under the longstanding well-pleaded complaint rule, ... a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon federal law.' " *Vaden v. Discover Bank,* 556 U.S. 49, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)) (alteration omitted). Thus, "[a] federal law defense to a state-law claim does not confer jurisdiction on a federal court." *Valles v. Ivy Hill Corp.,* 410 F.3d 1071, 1075 (9th Cir.2005) (citing *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Rather, a case may "arise under" federal law only where the "well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.,* 463 U.S. at 28–29. Nevertheless, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of La.,*

522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (citation omitted). "If a court concludes that a plaintiff has "artfully pleaded" claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Id.*

**\*3** "Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure." *Flatwire Solutions, LLC v. Sexton,* 2009 WL 5215757, at \*1 (C.D.Cal. Dec.29, 2009) (citing 28 U.S.C. § 1447(c)). Moreover, "[c]ourts strictly construe the removal statutes against removal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal." *Id.* (citing *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992)). "The party seeking removal bears the burden of establishing federal jurisdiction." *Id.* (citing *Prize Frize, Inc. v. Matrix, Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." *Id.* (citation omitted).

## 2. FRAUDULENT JOINDER OF MCKESSON CORPORATION

"[T]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder [of a non-diverse defendant] to be fraudulent." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987). Fraudulent joinder is a "term of art." *Id.* When the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.*

The parties do not dispute that McKesson is a corporation organized and existing under the laws of the State of Delaware, nor that the company maintains its principal place of business in San Francisco, California. (Compl. ¶ 24; Not. ¶ 13.) Nor do they dispute that Plaintiff Rivera is a citizen of the State of California. (Compl. ¶ 1; Not. ¶ 10(a).) Accordingly, for purposes of diversity jurisdiction, McKesson is a citizen of both Delaware and California, and its joinder, if proper, clearly precludes a finding of complete diversity under 28 U.S.C. § 1332(a).

Jurisdiction over these actions thus turns on whether McKesson's citizenship is properly considered in conducting that inquiry. In their complaints, Plaintiffs allege, "upon information and belief," that McKesson distributed the Crestor they later ingested. (Compl.¶

34.) Defendants, however, contend that "the allegations made against McKesson are included solely to defeat diversity jurisdiction." (Not.¶ 15.) First, Defendants contend that McKesson is fraudulently joined because the mere distribution of Crestor cannot give rise to liability under California law. (*Id.* ¶ 18.) Moreover, Defendants contend that Plaintiffs have no evidentiary basis for making that allegation. In particular, Defendants contend that "Plaintiffs' allegations are particularly implausible considering the number of pharmaceutical distributors of Crestor during the period at issue," and the fact that McKesson is named in a number of other actions filed by Plaintiffs' counsel on behalf of eighty-two (82) plaintiffs spanning five California counties. (*Id.* ¶ 15.)

**\*4** This precise issue has received extensive treatment by other district courts in this jurisdiction, with the overwhelming weight of authority supporting McKesson's joinder. As numerous other courts have found, the scope of liability for distributors of pharmaceutical products has not been clearly established under California law. *See Mendez v. AstraZeneca Pharmaceuticals LP,* 2012 WL 1911382, at \*2 (E.D.Cal. May 25, 2012) ("California Courts have yet to address the liability of distributors and other potential defendants in the commercial chain in prescription drug cases. However, given that a plaintiff's failure to state a cause of action in the context of a motion to remand must be 'obvious according to the settled rules of the state,' this Court cannot say that a cause of action for strict liability against a prescription drug distributor or others in the chain of distribution is not viable under California law.") (internal citations omitted); *Norris v. AstraZeneca Pharmaceuticals LP,* 2012 WL 1944760, at \*2–3 (S.D.Cal. May 30, 2012) ("[T]he court concludes that the complaint adequately establishes that a distributor of pharmaceuticals may be liable under California law."); *Andrews v. Bayer Corp.,* 2010 WL 234808, at \*3 (C.D.Cal. Jan.12, 2010) ("Because no California court has ever held that distributors of pharmaceuticals are exempt from the general rule of strict liability for failure to warn, the Bayer Defendants have failed to carry their burden of establishing that 'the plaintiff fails to state a cause of action against [McKesson], and the failure is obvious according to settled rules of the state.' "); *Black v. Merck & Co., Inc.,* 2004 WL 5392660, at \*3 (C.D.Cal. Mar.3, 2004) ("Because state law is unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn, the court cannot rule that there is 'absolutely no possibility' Plaintiffs could prevail on

this claim against McKesson. Thus, Merck has not met its 'heavy burden' of demonstrating that a non-diverse defendant was fraudulently joined.") (internal citations omitted); *Maher v. Novartis Pharmaceuticals Corp.,* 2007 WL 2330713, at *4 (S.D.Cal. Aug.13, 2007) ("This Court has been unable to find, nor has either party cited, a case under California law which creates an exception in strict liability for distributors in prescription drug cases. This Court cannot conclude that it is obvious that the general rule of distributor liability does not apply under the allegations in this case. The Court further concludes that the learned intermediary doctrine does not prevent Plaintiff from stating a claim against McKesson because Plaintiff has alleged that McKesson failed to properly warn physicians, including Plaintiff's physician.") (internal citation omitted); *Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.,* 2008 WL 2477389, at *6 (N.D.Cal. Jun.18, 2008) ("The Court finds that it is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn.") (citation omitted); *Aaron v. Merck & Co., Inc.,* 2005 WL 5792361, at *2 (C.D.Cal. Jul.26, 2005) ("Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined.")

**\*5** Accordingly, the Court cannot conclude that claims were brought against McKesson solely for the purposes of destroying diversity jurisdiction. Even if such claims were later found to fail as a matter of law, that failure would not, in light of the above authorities, be so "obvious" as to support a finding that the Defendant against which they are brought was fraudulently joined.

The only remaining issue, therefore, is whether at this stage of the proceedings the factual allegations concerning McKesson are so bare as to require a finding of fraudulent joinder. This Court follows the numerous other district courts in this jurisdiction which have found similar, if not identical allegations sufficient to state a viable claim against the distributor of the drug in question. *See Mendez,* 2012 WL 1911382, at *2–3 (finding that, for purposes of fraudulent joinder analysis,

plaintiffs were entitled to allege that McKesson had distributed the Crestor they ingested "upon information and belief," because whether McKesson did so was "not a fact plaintiffs would have reason to know directly"); *Norris,* 2012 WL 1944760, at *2–3 ("As Plaintiffs may not have purchased Crestor from McKesson, AstraZeneca concludes that McKesson is not a proper defendant. Based upon the complaint's allegations, the Notice of Removal, the evidence submitted by the parties and construing the complaint in the light most favorable to the plaintiff, accepting as true all material undisputed allegations in the complaint, as well as reasonable inferences to be drawn from them, the court cannot conclude that it is 'obvious' that McKesson did not distribute the Crestor ingested by Plaintiffs. Moreover, given the doubts concerning McKesson's role in distributing Crestor to Plaintiffs, any doubts concerning diversity jurisdiction are construed against the exercise of jurisdiction and in favor of remand.") (internal citations omitted); *Moorhouse,* 2008 WL 2477389, at *6 (finding allegation that McKesson distributed the relevant drug, and that McKesson distributed the drugs giving rise to the plaintiffs' injuries sufficient to state a viable claim); *Aaron,* 2005 WL 5792361, at *2 (finding allegation that McKesson is a "wholesale distributor of all Merck Products, including Vioxx," and "marketed, sold and distributed Vioxx which was ingested by the Plaintiffs and Plaintiffs' decedents" sufficient to state a viable claim); *Black,* 2004 WL 5392660, at *2–3 (finding allegations that McKesson "was in the business of promoting and distributing the pharmaceutical Vioxx" and that plaintiffs had "been prescribed and supplied with, received, and [had] taken and ingested and consumed the prescription drug Vioxx, as ... distributed, marketed, labeled, promoted, packaged ... or otherwise placed in the stream of interstate commerce by Defendants Merck & Company, Inc. [and] McKesson," sufficient to state a viable claim).

The circumstances of this case do not compel a different conclusion. Plaintiffs allege, "upon information and belief," that McKesson distributed the Crestor they later ingested. (Compl.¶ 34.) Notwithstanding Defendants' evidence concerning the number of Crestor distributors, that allegation is clearly sufficient to survive a fraudulent joinder analysis. [2]

**\*6** The Court will therefore consider McKesson's citizenship for purposes of determining jurisdiction.

Because both Plaintiff Rivera and Defendant McKesson are citizens of California, complete diversity of citizenship is lacking, and the Court cannot entertain subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332.

### 3. FEDERAL QUESTION JURISDICTION

Defendants also contend that this Court may maintain federal question jurisdiction over these actions pursuant to 28 U.S.C. § 1331. (Not.¶ 28.) In particular, Defendants contend that Plaintiffs' strict liability and negligence claims require construction and application of the Federal Food, Drug and Cosmetic Act ("FDCA") and its implementing regulations, because the FDA has plenary and exclusive authority over the regulation of prescription drugs. (*Id.* ¶¶ 28–32.)

A district court in the Southern District of California recently rejected precisely the same contention. *See Norris,* 2012 WL 1944760, at *3 (finding that nearly identical claims contained in nearly identical complaint "do not implicate the existence of a substantial federal question" and "are not preempted by federal law even if approved for sale by the FDA and potentially implicate the FDA's drug labeling regulations.") As the *Norris* court found, none of Plaintiffs' state law claims raise a "substantial federal question" under governing Ninth Circuit law, which requires that they be an "inherently federal claim" articulated in state law terms, or that the "the right to relief depend[ ] on the resolution of a substantial, disputed federal question." *Lippitt v. Raymond James Financial Services, Inc.,* 340 F.3d 1033, 1044 (9th Cir.2003). Defendants have offered no explanation as to how, in light of the Supreme Court's recent holding that state law failure to warn cases may proceed in the face of FDA regulation, either of these standards are met here. *See Wyeth v. Levine,* 555 U.S. 555, 581, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) ( "In short, Wyeth has not persuaded us that failure-to-warn claims like Levine's

obstruct the federal regulation of drug labeling. Congress has repeatedly declined to pre-empt state law, and the FDA's recently adopted position that state tort suits interfere with its statutory mandate is entitled to no weight.") Indeed, Defendants do not even argue the point in opposition.

### 4. CONCLUSION RE: SUBJECT MATTER JURISDICTION

For the foregoing reasons, the Court finds that neither 28 U.S.C. §§ 1331 nor 1332(a) provide a basis for federal jurisdiction over these actions. Accordingly, the actions are **REMANDED** to Los Angeles County and Riverside Superior Courts.

### IV. CONCLUSION

The Court **REMANDS** each of the above actions to state court. *Ruperto C Rivera et al v. AstraZeneca Pharmaceuticals LP et al,* CV 12–02921–GAF–JEM is **REMANDED** to Los Angeles County Superior Court. *Thomas E. Walker et al. v. AstraZeneca Pharmaceuticals LP et al.,* CV 12–00493–GAF–JEM, and *Merrilee Nestande et al. v. AstraZeneca Pharmaceuticals LP et al.,* CV 12–00495–GAF–JEM are **REMANDED** to Riverside County Superior Court. Defendants' motions to dismiss and to sever, and Plaintiffs' motions to stay are **DENIED as moot.** The hearings presently scheduled on these motions for June 11, 2012, at 9:30 a.m. are hereby **VACATED.**

**\*7 IT IS SO ORDERED.**

#### All Citations

Not Reported in F.Supp.2d, 2012 WL 2031348

---

Footnotes

1    Except with respect to the plaintiffs named, the three actions are identical, as are each of the pending motions addressed in this Order. For the sake of simplicity, the Court will refer throughout this Order to the docket numbers referenced in *Ruperto C. Rivera et al. v. AstraZeneca Pharmaceuticals LP et al.,* CV 12–02921 GAF (JEMx).

2    *Bockrath v. Aldrich Chemical Co., Inc.,* cited by Defendants, is inapposite, as that case, along with the heightened pleading standards it articulated, were aimed at lawsuits involving "complicated and possibly esoteric medical causation issues," in which "prospecting plaintiffs ... sue multiple defendants on speculation that their products may have caused harm over time through exposure to toxins in them, and who thereafter try to learn through discovery whether their speculation was well-founded." 21 Cal.4th 71, 86 Cal.Rptr.2d 846, 980 P.2d 398, 404–405 (Cal.1999). In this case, as in the numerous

cases cited above, Plaintiffs are merely alleging that McKesson distributed the only product alleged to have caused their injury.

**End of Document**                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT G

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 142 of 245

**K.E.R. ex rel. Riley v. Pfizer, Inc., Slip Copy (2013)**

2013 WL 5755076

2013 WL 5755076
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

K.E.R., a child under the age of 18 years,
by Ingrid M. RILEY, her mother and
Guardian ad Litem, and Michael R. Riley
and Ingrid M. Riley, individually, Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation; Pfizer
International, LLC, a New York Limited Liability
Corporation; McKesson Corporation, individually
and d/b/a Northstar Rx LLC, a Delaware
Corporation; Wyeth Pharmaceuticals, Inc.,
and Does 1 through 100, inclusive, Defendants.

No. CIV. S–13–1401 LKK/AC.    |    Oct. 23, 2013.

**Attorneys and Law Firms**

Mark P. Robinson, Jr., Robinson Calcagnie Robinson Shapiro Davis, Inc., Newport Beach, CA, for Plaintiffs.

Karin Kramer, Quinn Emanuel Urquart & Sullivan LLP, San Francisco, CA, for Defendants.

**ORDER**

LAWRENCE K. KARLTON, Senior District Judge.

**\*1** Plaintiffs K.E.R. (a child under the age of 18, by her mother and guardian ad litem Ingrid M. Riley), Michael R. Reilly, and Ingrid M. Riley sue defendants Pfizer, Inc., Pfizer International LLC, Wyeth Pharmaceuticals, Inc., and McKesson Corporation d/b/a Northstar RX LLC, alleging that K.E.R. was born with congenital abnormalities as a result of Ingrid's ingestion of prescription medication Effexor during pregnancy.

Plaintiffs commenced this action in Sacramento County Superior Court, case no. 34–2013–00145082, on May 17, 2013. On July 15, 2013, defendants removed the matter to this court. (ECF No. 2.) Presently before the court are plaintiffs' motion to remand (ECF No. 11) and defendants' motion to stay this action pending a potential transfer to federal multidistrict litigation [1] (ECF No. 15). The motions

are currently set for hearing on November 4, 2013 at 10:00 a.m. Having reviewed the parties' filings in support of, and in opposition to, these motions, the court will grant plaintiffs' motion to remand and deny defendants' motion to stay.

At least five other district courts in California have considered cases presenting exactly this procedural posture: *A.S. v. Pfizer, Inc.,* No. 1:13–CV–00524–LJO–JLT, 2013 WL 2384320, 2013 U.S. Dist. LEXIS 76307 (E.D.Cal. May 29, 2013); *I.L. v. Pfizer, Inc.,* 2:13–cv–02578–RGK–PJW, slip op. (C.D.Cal. Jun. 6, 2013) (Klausner, J.); *Taha v. Pfizer, Inc.,* No. 2:13–cv02577–MWF–FFM, slip op. (C.D.Cal. July 1, 2013) (Fitzgerald, J.); *Hatherley v. Pfizer, Inc.,* No. CIV. 2:13–00719–WBS–CKD, 2013 WL 3354458, 2013 U.S. Dist. LEXIS 93943 (E.D.Cal. Jul.3, 2013) (Shubb, J.); *D.R. v. Pfizer, Inc.,* No. 8:13–cv–00591–AG–JPR (C.D .Cal. Jul. 23, 2013) (Guilford, J.). [2] To wit, the plaintiffs in each of these actions brought suit in California state court against Pfizer, Inc., Pfizer International LLC, Wyeth Pharmaceuticals, Inc., and McKesson Corporation, alleging a minor's injury or wrongful death due to the mother's prenatal ingestion of Effexor; the defendants removed each action to federal court, contending that plaintiffs fraudulently joined defendant McKesson Corporation in order to defeat diversity jurisdiction; plaintiffs moved to remand on the basis that the joinder was not fraudulent, and therefore, federal jurisdiction on the basis of complete diversity did not exist; and defendants moved to stay pending transfer to the MDL. And in each of these cases, the district court remanded the action. [3]

Having carefully reviewed the parties' filings herein, the court sees no reason to order otherwise. In reaching this conclusion, the court follows *Hatherley, supra,* in which Judge Shubb, after a thorough analysis, concluded that the plaintiffs had sufficiently alleged a cause of action against McKesson Corporation for strict liability under a "failure to warn" theory, thereby destroying complete diversity and divesting the federal courts of diversity jurisdiction. Defendants herein have failed to adduce any arguments not addressed in Judge Shubb's order, and the court therefore finds no reason to reach a different conclusion.

**\*2** Accordingly, the court hereby orders as follows:

   [1] Plaintiffs' motion to remand is GRANTED. This matter is hereby REMANDED to the Superior Court of California for the County of Sacramento.

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 143 of 245

**K.E.R. ex rel. Riley v. Pfizer, Inc., Slip Copy (2013)**

2013 WL 5755076

[2] Defendants' motion to stay the proceedings is DENIED.

[3] The clerk of the court is DIRECTED to close this case.

IT IS SO ORDERED.

Footnotes

1   *See In re Effexor (Venlafaxine Hydrochloride) Products Liability Litigation,* MDL No. 2458, currently assigned to the Hon. Cynthia M. Rufe, District Judge for the United States District Court for the Eastern District of Pennsylvania. Plaintiffs have filed a notice with the court regarding a similar consolidation of state court cases in California. *See In re Effexor Drug Cases,* Judicial Council Coordination Proceeding No. 4753, currently assigned to the Hon. Kenneth R. Freeman, Judge of the Los Angeles County Superior Court.

2   Orders in several other cases with virtually-identical procedural postures are still pending. *See J.M.J. v. Pfizer,* Inc., No. 3:13–cv–03226–EMC (N.D.Cal.) (Chen, J.); *K.P.P. v. Pfizer,* Inc., No. 3:13–cv–01674–JLS–WMC (S.D.Cal.) (Benitez, J.); *L.C.V. v. Pfizer, Inc.,* No. 3:13–cv–01686–JAH–BLM (S.D.Cal.) (Houston, J.).

3   Defendants point to three California cases which were transferred to the Effexor MDL. *See C.D.J.E. v. Pfizer, Inc.,* No. 4:13–cv–03037–PJH (N.D.Cal.); *A.B. v. McKesson Corp.,* No. 4:13–cv–03039–PJH (N.D.Cal.); *M.M.R. v. Pfizer, Inc.,* No. 3:13–cv–01675–JAH–KSC (S.D.Cal.). However, the plaintiffs in these actions neither sought remand nor opposed transfer to the MDL. Accordingly, the court does not find the fact of transfer in these matters to have any precedential value.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

A.S. v. Pfizer, Inc., Not Reported in F.Supp.2d (2013)

2013 WL 2384320, Prod.Liab.Rep. (CCH) P 19,127

2013 WL 2384320
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

A.S., by and through his guardian
ad litem, Ellen Scusa, Plaintiff,
v.
PFIZER, INC., et al., Defendants.

No. 1:13–cv–00524–LJO–JLT.  |  May 30, 2013.

**Attorneys and Law Firms**

Karen Barth Menzies, Mark P. Robinson, Jr., Robinson Calcagnie Robinson Shapiro Davis, Inc., Newport Beach, CA, for Plaintiff.

Marshall Mayes Searcy, III, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, for Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION
TO REMAND THE ACTION TO KERN
COUNTY SUPERIOR COURT (Doc. 7)**

**ORDER DENYING LEAVE TO
FILE SUR–REPLIES (Docs.22, 23)**

**ORDER DIRECTING THE CLERK
OF COURT TO CLOSE THE ACTION**

JENNIFER L. THURSTON, United States Magistrate Judge.

**\*1** Plaintiff A.S., by and through his guardian ad litem Ellen Scusa ("Plaintiff"), seeks remand of the action Kern County Superior Court. (Doc. 7). Plaintiff argues this Court lacks diversity jurisdiction because Defendant McKesson is a citizen of California.

Defendants Pfizer Inc. and Pfizer International LLC (collectively, "Pfizer"), as well as Wyeth Pharmaceuticals Inc., oppose the motion to remand (Doc. 16). Pfizer argues this Court has jurisdiction because Defendant McKesson was fraudulently joined. Moreover, Pfizer requests the Court stay the action pending resolution of a motion before the Judicial Panel on Multidistrict Litigation. (Doc. 12).

For the reasons set forth below, Plaintiff's motion to remand is **GRANTED,** and Defendants' motion to stay is **MOOT.**

## I. Factual and Procedural History

Plaintiff initiated this action by filing a complaint on January 13, 2013, in Kern County Super Court, Case No. S–1500–CV–278692–LHB. (Doc. 1 at 2; Doc. 1–1 at 8). Plaintiff alleges his mother was prescribed "venlafaxine," which "is manufactured, promoted, distributed, labeled and marketed ... under the trade name Effexor" by Defendants Pfizer; McKesson Corporation, individually and doing business as Northstar RX LLC ("McKesson"); and Wyeth Pharmaceuticals, Inc. (collectively, "Defendants"). (Doc. 1–1 at 10, 13). Effexor "is a member of the class of drugs known as 'serotoninnorepinephrine reuptake inhibitors' or 'SNRIs,' " and is used to treat anxiety and depressive disorders. Id. at 10–11, ¶ 24.Plaintiff alleges his mother took the medication while pregnant, which resulted in Plaintiff having a "life-threatening congenital heart defect called pulmonary artery stenosis."Id. at 14, ¶ 29.Plaintiff claims McKesson distributed the Effexor which his mother took.Id. at 11 ¶ 7.

Plaintiff asserts his heart defect"was a direct result of his mother's ingestion of Effexor during her pregnancy," and that prior to the time she ingested the medication, "Defendants knew through animal studies and post-marketing reports that Effexor was associated with a significant increased risk of cardiac defects in babies whose mothers ingested Effexor during pregnancy."(Doc. 1–1 at 14, ¶¶ 26, 31). In addition, Plaintiff alleges that "the Pfizer Defendants knew or should have known that Effexor was associated with an increased risk of congenital heart defects and other birth defects in babies of mothers who ingest Effexor during pregnancy."Id. at 14, ¶ 31.Plaintiff contends that despite this knowledge, Defendants aggressively and actively promoted Effexor," and that "[t]he Pfizer Defendants touted Effexor as being a safe alternative for pregnant women."Id., ¶ 27.

Plaintiff alleges that "Defendants failed to warn Ms. Scusa, her health care providers, or the public and the medical community" of the risks involved with Effexor (Doc. 1–1 at 15, ¶ 36). Plaintiff contends, "[a]s manufacturers and distributors of prescription drug products, specifically Effexor and/or generic venlafaxine, each of the Defendants has a duty to adequately communicate warnings to physicians and the medical community (or to patients who could be expected to take the drug) and to exercise due care to conduct safety surveillance for the drug and otherwise ensure that the warnings they are required to disseminate about the drug are

2013 WL 2384320, Prod.Liab.Rep. (CCH) P 19,127

accurate and adequate, and that these warnings are effectively communicated to physicians, pharmacists, and patients using the drug ."*Id.* at 19, ¶ 62.However, Plaintiff contends, "The Pfizer Defendants have never informed doctors of these serious risks, even though third-party research shows the association between Effexor and cardiac defects and several other types of birth defects."*Id.* at 14 ¶ 28.Specifically, Plaintiff asserts each of the Defendants breached its duties because they failed to:

*2 a. ensure Effexor and/or venlafaxine warnings to the medical community, physicians, and Ms. Scusa's physician were accurate and adequate, despite having extensive knowledge of the risks associated with using the drug during pregnancy;

b. ensure that Effexor and/or venlafaxine warnings were effectively communicated to the medical community, physicians and Ms. Scusa, despite having extensive knowledge of the inappropriate use of the drug during pregnancy;

c. conduct post market safety surveillance and report that information to the FDA, the medical community, Ms. Scusa's physicians, Ms. Scusa and other foreseeable users;

d. review all adverse drug event (ADE) information for Effexor and/or venlafaxine, and to report information bearing significantly upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Effexor and/or venlafaxine products to the FDA, medical community, Ms. Scusa's physicians, Ms. Scusa and other like foreseeable users;

e. periodically review all medical literature regarding Effexor and/or venlafaxine products and report to the FDA, the medical community, or other interested individuals significant data concerning the efficacy or safety of Effexor and/or venlafaxine products;

f. independently monitor sales of Effexor and/or venlafaxine products, and the medical literature, which would have alerted them to the fact that Effexor was widely over prescribed, and was being prescribed to pregnancy women and women in their childbearing years owing to the inadequate warnings provided to doctors;

g. engage in responsible testing, research, and pharmacovigilance practices regarding their Effexor and/or venlafaxine products. including a failure to perform studies and/or monitor, which would accurately determine the risks attendant to using Effexor during pregnancy, and failed to engage in marketing practices designed to minimize the risks associated with Effexor and/or venlafaxine.

(Doc. 1–1 at 19–20, ¶ 63). Rather, Plaintiff asserts "Defendants falsely and fraudulently represented to Plaintiff's mother, her prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general that Effexor was safe and effective for its indicated use during pregnancy."*Id.* at 16, ¶ 43.Notably, however, Plaintiff alleges "Effexor has never been approved by the FDA for use in pregnant women."*Id.* at 14 ¶ 24.

For the foregoing acts, Plaintiff raises the following causes of action: (1) strict liability—failure to warn; (2) negligence; (3) breach of implied warranty; (4) breach of express warranty; (5) deceit by concealment pursuant to Cal. Civil Code §§ 1709, 1710; (6) negligent misrepresentation; and (7) fraud and fraudulent concealment. (*See generally* Doc. 1–1 at 9, 22–28).

Plaintiff filed a proof of service on March 21, 2013, indicating McKesson Corporation was served on February 25, 2013. [1] In addition, Plaintiff filed proofs of service for Pfizer, Inc. and Pfizer International, indicating the companies were served on March 28, 2013. However, Plaintiff filed a "declaration of non-service" as to Wyeth Pharmaceuticals on April 9, 2013.

*3 On April 12, 2013, Pfizer filed a Notice of Removal, thereby initiating the action in this Court. (Doc. 1). Pfizer asserted the action was properly removed pursuant to 28 U.S.C. §§ 1332 and 1441"because this is a civil action between citizens of different States, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest."*Id.* at 3. In addition, Pfizer filed a "Statement of Corporate Disclosure" pursuant to Rule 7.1 of the Federal Rules of Civil Procedure in which counsel Daniel Rygorsky certified Wyeth Pharmaceuticals, Inc. is "an indirect wholly-owned subsidiary of Defendant Pfizer Inc." (Doc. 5 at 2). Pfizer filed its answer to the complaint on April 18, 2013. (Doc. 7).

Plaintiff filed the motion to remand the action on April 18, 2013, asserting removal is not proper because there is not complete diversity among the parties. (Doc. 7). Pfizer filed its opposition to the motion on April 8, 2013 (Doc. 16), to which Plaintiff replied on May 18, 2013.[2] (Doc. 18).

Pfizer filed a motion to stay proceedings in the action pending resolution of a motion before the Judicial Panel on Multidistrict Litigation regarding establishment of a multidistrict litigation proceeding for federal actions in which the plaintiffs alleged birth defects due to Effexor. (Doc. 12). Plaintiff filed his opposition to the motion on May 15, 2013 (Doc. 17), to which Pfizer filed a reply on May 22, 2013. (Doc. 21).

On May 29, 2013, the Court held a hearing Plaintiff's motion to remand the action to Kern County Superior Court and Pfizer's motion to stay the action.

## II. Motion to Remand

In the Notice of Removal, Pfizer asserted the Court has diversity jurisdiction over the action because "McKesson has been fraudulently joined [and] its citizenship should be disregarded."(Doc. 1 at 4). According to Pfizer, "Plaintiff's claims against McKesson fail as both a matter of law and under the allegations of the Complaint."*Id.* at 5. On the other hand, Plaintiff contends that "[t]he overwhelming majority of Courts in California have rejected arguments that removal is proper in cases where a California resident has named McKesson Corporation ... as a defendant and, instead, have determined that remand is appropriate."(Doc. 7–1 at 9; *see also* Doc. 7–1 at 26). Further, Plaintiff asserts the notice of removal "is procedurally defective" "because the Notice fails to demonstrate that McKesson joined or consented to removal."*Id.* at 10, 27.

## A. Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams,* 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**\*4** 28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."*Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir.1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996); *Abrego v. Dow Chem. Co.,* 443 F.3d 676, 683–85 (9th Cir.2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute")."[A]ny doubt about the right of removal requires resolution in favor of remand."*Moore–Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241, 1244 (9th Cir.2009) (citing *Gaus,* 980 F.2d at 566).

## B Diversity Jurisdiction

The District Court has original jurisdiction over actions in which there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a). Plaintiff alleges he is a California resident; Pfizer, Inc. is a Delaware Corporation with its principal place of business in New York; and Pfizer International LLC is a New York Corporation. (Doc. 1–1 at 11). In addition, Plaintiff asserts McKesson is a Delaware Corporation with its principal place of business in California. *Id.* Pfizer has established diversity jurisdiction between its companies and Plaintiff, and asserts the requirement of 28 U.S.C. § 1332(a) is satisfied because McKesson is a sham defendant whose presence does not destroy the diversity jurisdiction. As explained by the Ninth Circuit, an exception to the requirement for complete diversity exists when a non-diverse defendant is "fraudulently joined." *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

"Fraudulent joinder is a term of art," and does not require an ill motive by a plaintiff. *McCabe,* 811 F.2d at 1339. The Court need not find the joinder was for the purpose of preventing removal. *Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1296 (C.D.Cal.2000). Rather, joinder is deemed fraudulent if the plaintiff cannot state a cause of action against the non-diverse defendant. *Nasrawi v. Buck Consultants, LLC,* 776 F.Supp.2d 1166, 1175 (E.D.Cal.2011). The Court must determine that "the plaintiff could not possibly recover

against the party whose joinder is questioned."*Id.; see also Briano,* 126 F.Supp.2d at 1296 (explaining a court must find "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court"). When evaluating whether a plaintiff can prevail on the merits of his claim against a defendant who is alleged to have been fraudulently joined, "all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor."*Nasrawi,* 776 F.Supp.2d at 1170 (citing *Kruso v. Int'l Tel. & Tel. Corp.,* 972 F.2d 1416, 1426 (9th Cir.1989).

**\*5** The Court may look beyond the pleadings to determine if a defendant has been fraudulently joined, but " 'a plaintiff need only have one potentially valid claim against a non-diverse defendant' to survive a fraudulent joinder challenge."*Nasrawi,* 776 F.Supp.2d at 1170 (citing *Knutson v. Allis–Chalmers Corp.,* 358 F.Supp.2d 983, 993–95 (D.Nev.2005); *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998)). The party alleging fraudulent joinder has the "heavy burden" of demonstrating by clear and convincing evidence, the non-diverse party has been joined fraudulently. *Hamilton Materials, Inc. v. Down Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007); *Padilla v. AT & T Corp.,* 697 F.Supp.2d 1156, 1159 (C.D.Cal.2009).

Where the moving party must resort to defenses to the merits of the action to demonstrate the defendant was fraudulently named, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state."*Hamilton Materials Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007). In this event, the defendant has failed to "overcome the " 'strong presumption against removal jurisdiction.' " *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

## C. Discussion and Analysis

Pfizer contends: "Plaintiff has joined his failure-to-warn claims against Pfizer and Wyeth Pharmaceuticals Inc.— which meet all of the requirements for federal diversity jurisdiction—with claims against a non-diverse distributor, McKesson Corp." (Doc. 16 at 9). According to Pfizer, Plaintiff's claims against McKesson fail because (1) a pharmaceutical medicine distributor cannot be held liable for failure to warn under California law, (2) Plaintiff fails to plead facts that establish a causal nexus between McKesson and his alleged injury. (See *id.* at 2).

### 1. Learned Intermediary Doctrine

According to Pfizer, "California's learned intermediary doctrine precludes any duty to warn consumers directly," and as such Plaintiff is unable to "establish that McKesson had a duty to warn with respect to the medication."(Doc. 16 at 16). In addition, Pfizer asserts that "the learned intermediary doctrine precludes Plaintiff from establishing the necessary element of causation against McKesson."*Id.*

Under the learned intermediary doctrine, the duty to warn of risks involved with the use of prescription drugs "runs to the physician, not the patient."*Carlin v. Superior Court,* 13 Cal.4th 1104, 1116, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996) (emphasis omitted). The California Court of Appeal explained that the rationale behind the learned intermediary doctrine as follows:

> (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient.

**\*6** *Carmichael v. Reitz,* 17 Cal.App.3d 958, 989, 95 Cal.Rptr. 381 (1971) (citation omitted). The doctrine, "where it applies at all, applies *only* if a *manufacturer* provided adequate warnings to the intermediary ."*Stewart v. Union Carbide Corp.,* 190 Cal.App.4th 23, 29, 117 Cal.Rptr.3d 791 (2010); *see also Love v. Wolf,* 226 Cal.App.2d 378, 395, 38 Cal.Rptr. 183 (1964) (explaining that with medication, "if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed").

2013 WL 2384320, Prod.Liab.Rep. (CCH) P 19,127

Notably, "[t]he learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder."*Martin v. Merck & Co.,* 2005 WL 1984483, at *4 (E.D.Cal. Aug.15, 2005) (citing *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318–19 (9th Cir.1998)). In any event, the argument that the learned intermediary doctrine should apply by analogy to McKesson as a distributor—rather than a manufacturer—is a tacit admission that this defense does not "obviously" preclude a cause of action against McKesson. On the other hand, the defense applies only where the warning given was adequate based upon "what was scientifically knowable." *Id.* Where the warning fails to provide the doctor with known or knowable information which militates against use of the drug by certain patients, the learned intermediary doctrine does not preclude imposition of liability. *Id.* In California, this includes liability imposed on the distributor. *Id.*

Here, as stated above, Plaintiff alleges Defendants knew of the risks to pregnant women the drug posed and failed to warn of these risks. Despite this, Plaintiff alleges Defendants "touted Effexor as being a safe alternative for pregnant women" despite that the FDA had never approved the drug for use by pregnant women. (Doc. 1–1 at 14, ¶¶ 24, 26, 27) Thus, based upon these factual allegations, the learned intermediary doctrine would not preclude a cause of action against McKesson.

### 2. Comment k and strict liability under California law

Pfizer argues, "Regardless of how Plaintiff couches his claims, this is a failure-to-warn action, and all of Plaintiff's claims rely on his allegation that a purported 'increased risk of congenital heart defects and other birth defects' was not disclosed."(Doc. 26 at 9). Pfizer asserts, "McKesson had neither a duty to warn patients directly nor a duty or the opportunity to provide warnings to prescribing physicians," and as a result "it cannot be held liable for failure to warn under California law."*Id.*

According to Pfizer, "the California Supreme Court's adoption of comment k of the Restatement (Second) of Torts Section 402A precludes liability for prescription medicines based on any theory other than manufacturing defect, which has not been alleged here, or failure to warn." [3] (Doc. 16 at 15) (citing *Skinner v. Warner Lambert Co.,* 2003 WL 25598915 [4] (C.D.Cal. Apr. 28, 2003); *Brown v. Superior Court,* 44 Cal.3d 1049, 1061–62, 245 Cal.Rptr. 412, 751 P.2d 470 (Cal.1988)).

*7 On the other hand, Plaintiff argues "it is well-established under California law that distributors may be held in strict liability for failure to warn."(Doc. 7–1 at 13) (emphasis omitted) (citing *Martin v. Merck & Co., Inc.,* 2005 WL 1984483, *3 (E.D.Cal., Aug.15, 2005); *Maher v. Novartis Pharm. Corp.,* 2007 WL 2330713 at *4 (S.D.Cal. Aug.13, 2007); *Anderson v. Owens–Corning Fiberglass Corp.,* 53 Cal.3d 987, 994, 281 Cal.Rptr. 528, 810 P.2d 549 (1991); *Daly v. General Motors Corp.,* 20 Cal.3d 725, 739, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 262–63, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); *Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007); *Moorhouse v. Bayer,* 2008 WL 2477389, *5 (N.D.Cal., Jun.17, 2008); *Alaniz v. Merck,* 2005 WL 6124308 (C.D.Cal., Jun.3, 2005)). Plaintiff asserts this Court "confirmed that 'strict products liability imposes liability in tort on all participants in the chain of distribution of a defective product."(Doc. 7–1 at 14) (quoting *Mendez,* 2012 WL 1911382, at *2)). Further, Plaintiff contends "no California court has held that distributors are immune from liability for failure to warn."*Id.* (citing *Maher,* 2007 WL 2330713 at *4).

Generally, under California law, "a defendant involved in the marketing/distribution process has been held strictly liable if three factors are present: (1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process."*Bay Summit Cmty. Ass'n v. Shell Oil Co.,* 51 Cal.App.4th 762, 773, 59 Cal.Rptr.2d 322 (1996) (citing *Kasel v. Remington Arms Co.,* 24 Cal.App.3d 711, 724, 101 Cal.Rptr. 314 (1972)). Accordingly, California law provides a distributor may be held strictly liable.

Importantly, in *Brown* the California Supreme Court did not address the liability of a distributor of prescription drugs, but only the liability of a manufacturer. The court observed:

> The test stated in comment k *is to be distinguished from strict liability for failure to warn.*Although both concepts identify failure to warn as the basis of liability, comment k imposes liability only if the manufacturer knew or should have known of the defect at the time the product was sold

or distributed. Under strict liability, the reason why the warning was not issued is irrelevant, and the manufacturer is liable even if it neither knew nor could have known of the defect about which the warning was required. Thus, *comment k, by focussing (sic) on the blameworthiness of the manufacturer, sets forth a test which sounds in negligence, while imposition of liability for failure to warn without regard to the reason for such failure is consistent with strict liability* since it asks only whether the product that caused injury contained a defect.

**\*8** *Brown,* 44 Cal.3d at 1059, n. 4, 245 Cal.Rptr. 412, 751 P.2d 470 (emphasis added). The court determined "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution."*Id.* at 1069, 245 Cal.Rptr. 412, 751 P.2d 470. Accordingly, *Brown* does not necessarily preclude Plaintiff's claim for strict liability against McKesson as a distributor of Effexor. Indeed, because Plaintiff claims that the label failed to warn of known or knowable risks to pregnant women, *Brown* does not preclude liability even for the manufacturer.

After considering *Brown,* this Court observed previously, "In the prescription drug context, the California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for a failure to warn of knowable risks. [Citation] The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product."*Mendez,* 2012 WL 1911382, at \*2 (citing *Bostick v. Flex Equip. Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007). California courts have not addressed whether a distributor in prescription drug cases may be held strictly liable. *Id.* Therefore, in *Mendez* the Court declined to find the plaintiff's claim for strict liability against McKesson was not viable under California law. Likewise, in *Hinds v. Zimmer,* the Court concluded *Brown* has not foreclosed strict liability for distribution of a product. *Id.,* 2009 WL 1517893, at \*4 (E.D.Cal. June 1, 2009).

Significantly, this Court's rulings are consistent with other courts within the Ninth Circuit which have examined the issue. *See, e.g., Norris v. AstraZeneca Pharmaceuticals LP,* 2012 WL 1944760, at \*2–3 (S.D.Cal. May 30, 2012) ("the court concludes that the complaint adequately establishes that a distributor of pharmaceuticals may be liable under California law"); *Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.,* 2008 WL 2477389, at \*6 (N.D.Cal. Jun.18, 2008) ("it is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn"). Further, as Plaintiff notes, the Central District determined, after *Skinner* was decided that, comment k of the Restatement (Second) of Torts *"does not exempt distributors from strict liability."Black v. Merck & Company, Inc.,* 2004 WL 5392660 at \*4 (C.D.Cal., Mar.3, 2004) (emphasis added). Notably, *Black*[5] held that comment k provides refuge for sellers—which includes distributors—only *"if* the products are properly prepared and marketed, and proper warning is given."*Id.* at 4, n. 6. Thus, the defendants failed to establish that it was obvious the plaintiff could not state a claim and, as a result, the court determined complete diversity was lacking. *Id.* at 4;*see also Rivera v. AstraZeneca Pharms. LP,* 2012 WL 2031348 (C.D.Cal. June 5, 2012) (collecting cases and finding it was not obvious the plaintiff's claims against McKesson would fail). Thus, the Court cannot find it is obvious Plaintiff's strict liability claim against McKesson fails as a matter of law.

### 3. Preemption

**\*9** According to Pfizer, McKesson "had no authority to alter the warnings that accompanied Effexor."(Doc. 16 at 20). Pfizer asserts "any attempt by a distributor to change the label would violate federal law, and therefore, state law requiring them to do so is preempted."*Id.* at 21 (citing *PLIVA v. Mensing,* ___ U.S. ___, ___, 131 S.Ct. 2567, 2579, 180 L.Ed.2d 580 (2011)[6] ). Thus, Pfizer contends that "failure-to-warn claims against the distributor of an FDA-approved prescription medicine necessarily fail as they are preempted by federal law."*Id.* (citing *In re Fosamax,* 2012 WL 181411 at \*3–4 (D.N.J. Jan.17, 2012)).

Importantly, however, the Supreme Court has explained that federal preemption is a defense to a claim. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13–14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Further, the Ninth Circuit has determined it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on

a motion to remand. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1045 (2009). The Court explained:

> The preemption defense ... goes to the merits of the plaintiff's case. When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, **it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'** *Hamilton Materials,* 494 F.3d 1203, 1206 (2007). Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. **In such a case, the defendant has failed to overcome the 'strong presumption against removal jurisdiction.'** *Gaus,* 980 F.2d at 566.

*Id.* (emphasis added). Consequently, it is inappropriate to determine whether Plaintiff's claims against McKesson are preempted by federal law.

### 4. Adequacy of the complaint

Finally, Pfizer contends Plaintiff's complaint does not establish a causal connection between McKesson and he "has not alleged any fact from which it could be determined that McKesson actually distributed the Effexor allegedly used by his mother during her pregnancy."(Doc. 16 at 25). Pfizer notes this Court determined McKesson was fraudulently joined in an action when the plaintiff "based her claims on the mere fact that 'McKesson is a major distributor of the drug.'"*Id.* at 25–26 (quoting *Aronis v. Merck & Co.,* 2005 WL 5518485, at *1 (E.D.Cal. May 3, 2005)). Pfizer asserts this finding is consistent with other courts that have determined a distributor was fraudulently joined because the plaintiffs failed to allege a causal link between the distributor and the injury alleged. *Id.* (citing, *e.g., In re Rezulin Products Liability Litigation,* 133 F.Supp.2d 272, 291 (S.D.N.Y.2001)).

Here, however, Plaintiff has not only asserted that McKesson is a major distributor of Effexor, but has alleged also that "Plaintiff is informed and believes Defendant McKesson *distributed the Effexor that was dispensed to Ms. Scusa.*(Doc.

1–1 at 11, ¶ 7) (emphasis added). Such an allegation was absent from the complaint in *Aronis.*Moreover, this Court has recently explained: "The fact that Plaintiff's allegations based on information and belief does not make it 'obvious according to the settled rules of the state' that the complaint fails to state a claim."*Oliver v. McNeil–PPC, Inc.,* 2013 WL 459630, at *6 (citing *McCabe,* 811 F.2d at 1339; *Mendez v. AstraZeneca Pharmaceuticals LP,* 2012 WL 1911382, at *3 (E.D.Cal. May 25, 2012)).

**\*10** Under California law, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language."Cal.Code Civ. Pro. § 425.10(a)(1). This requires "only general allegations of ultimate fact."*McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1469–1470, 49 Cal.Rptr.3d 227 (2006). The Court of Appeal explained: "The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim. *Id.* (internal citations omitted). Consequently, contrary to Pfizer's assertion, Plaintiff is not required to allege facts such as from which pharmacy his mother received the Effexor to support his allegation that McKesson was the distributor of the Effexor that his mother ingested.

Plaintiff alleges that "McKesson was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, supplying, distributing, marketing, promoting, advertising, selling and/or warranting Effexor."(Doc. 1–1 at 11, ¶ 7). In addition, Plaintiff contends the defendants, including McKesson, knew or should have known of the serious health risks associated with the use of Effexor during pregnancy, but "failed to warn Ms. Scusa, her health care providers, or the public and the medical community of said serious risks."(Id. at 15, ¶ 38, 49 Cal.Rptr.3d 227). According to Plaintiff, "as a direct and proximate result of Effexor's defects and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, Plaintiff has suffered significant harm."(Id. at 16, ¶ 41, 49 Cal.Rptr.3d 227). Thus, Plaintiff has alleged a causal link between McKesson and his injuries.

### IV. Conclusion and Order

Plaintiff has articulated a valid theory of liability under California law, and Pfizer has failed to meet the burden of establishing with "clear and convincing evidence" that

Defendant McKesson was fraudulently joined in this action. *See Hamilton Materials,* 494 F.3d at 1206. Consequently, the Court lacks diversity jurisdiction over the matter, and remand of the action is appropriate.

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion to remand (Doc. 7) is **GRANTED;**

2. Defendants' motion to stay (Doc. 12) is **MOOT;**

3. This matter is **REMANDED** to Kern County Superior Court; and

4. The Clerk of Court is **DIRECTED** to close this matter, because this Order terminates the action in its entirety.

IT IS SO ORDERED.

**Parallel Citations**

Prod.Liab.Rep. (CCH) P 19,127

---

Footnotes

1    The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.,* 828 F.2d 1385, 1388 n. 9 (9th Cir.1987); *Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd,*645 F.2d 699 (9th Cir.1981); *see also Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir.1989); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980). Therefore, judicial notice is taken of the court's docket and records in Kern County Case No. S–1500–CV–278692.

2    Both parties then sought leave to file sur-replies on May 22, 2013 and May 23, 2013 as to the two motions. (Docs.22, 23) These requests are **DENIED.**

3    Comment k of the Restatement (Second) of Torts Section 402A provides: "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

4    The Court declines to follow *Skinner.*First, the *Skinner* court failed to provide any analysis of *Brown.*Second, the Central District refused to follow *Skinner* in *Black v. Merck & Company, Inc.,* 2004 WL 5392660 at *4, n. 6 (C.D.Cal., Mar.3, 2004), in which the court recognized that comment k applied to "sellers" which includes distributors.

5    As here, *Black* involved a claim that despite knowledge that the drug VIOXX posed significant enumerated risks, Defendants failed to disclosed these risks. *Id.* at *1.

6    Notably, *Mensing* did not involve a distributor but, instead, involved manufacturers of a generic medication who had gained FDA approval to manufacture the drug based upon the Hatch–Waxman Amendments. *Id.* at 2574–2575.These defendants, therefore, were precluded for any effort to modify the warning labels because they were required to exactly reflect that provided on the name brand medication. *Id.* at 2575.Here, at issue is a name brand medication whose manufacturer was permitted to make modifications to the warning label through the CBE ("changes-being effected") process. *Id.*

    The facial appeal of the argument that *Mensing* should be extended to distributors of generic and name brand drugs, such to invoke federal pre-emption, is not lost on the Court. However, unless and until this rationale *is* extended, this Court does not conclude that it is obvious that Plaintiff has not stated a claim under California law.

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4671231
Only the Westlaw citation is currently available.
United States District Court, N.D. California

Carlie Spiers, et al., Plaintiffs,
v.
McKesson Corporation, a California corporation,
Smithkline Beecham Corporation d/b/
a/ GlaxoSmithKline LLC, a corporation,
and Does 1–100, inclusive, Defendants.

No. C 13–03046 WHA   |   Filed August 29, 2013

**Attorneys and Law Firms**

Barrett Beasley, Natchitoches, LA, Sin-Ting Mary Liu, Law Offices of Sin-Ting Mary Liu, San Clemente, CA, for Plaintiffs.

Michael Kevin Brown, Reed Smith LLP, Los Angeles, CA, Sonja S. Weissman, Steven J. Boranian, Reed Smith LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO STAY

WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE

### INTRODUCTION

**\*1** In this pharmaceutical products-liability action, plaintiffs move to remand to state court for lack of federal jurisdiction while defendants move to stay all proceedings pending potential transfer to an MDL. For the reasons stated below, plaintiffs' motion to remand is **GRANTED** and defendants' motion to stay is **DENIED**.

### STATEMENT

Plaintiffs filed a complaint in the Superior Court of the State of California for the County of San Francisco in June 2013 for alleged injuries from the use of Avandia, a prescription pharmaceutical used to treat type–2 diabetes. Among other defendants, plaintiffs filed suit against McKesson Corporation, a California-based pharmaceutical distributor. Defendant GlaxoSmithKline LLC removed the action to federal court on fraudulent joinder grounds and moved to stay this action pending transfer to the Avandia MDL in the United States District Court for the Eastern District of Pennsylvania. Plaintiffs then filed a motion to remand, arguing that this Court should first consider the merits of its motion before entertaining any stay of these proceedings.

This order follows full briefing and oral argument.

### ANALYSIS

Our court of appeals has not yet addressed whether courts must first decide the merits of a motion to remand before determining whether to stay the proceedings. Generally speaking, a stay is warranted if this would serve judicial economy. *See, e.g.,* *In re Iphone Application Litig.,* No. 10–5878, 2011 WL 2149102, at *2 (N.D. Cal. May 31, 2011) (Judge Lucy Koh). In similar actions involving Avandia, courts in this district have granted a stay. Those courts found that doing so would promote judicial economy because the MDL judge has addressed issues of "fraudulent joinder, fraudulent misjoinder of plaintiffs, the forum defendant rule, and questions relating to removal by defendants who have not yet been served." *See, e.g.,* *Poff v. McKesson,* No. 13–3115, 2013 WL 3949207, at *2 (N.D.Cal. July 30, 2013) (Judge Jeffrey White); *see also Flores v. McKesson,* No. 13–3153 (N.D.Cal. Aug. 2, 2013) (Judge Jon Tigar); *Alvarez v. McKesson,* No. 13–3112 (N.D.Cal. July 24, 2013) (Judge Thelton Henderson). Given, however, the circumstances of the instant action, namely that the MDL has already remanded similar actions because it found that McKesson had not been fraudulently joined, this order finds differently.

The question of whether a motion to stay, pending transfer to an MDL, should be decided before a motion to remand occurs frequently. It is best to rule in the way that most furthers judicial economy, unless this would unreasonably prejudice one of the parties. Thus, when a jurisdictional issue has not yet arisen before the MDL, a motion to stay has been denied and the action remanded to state court because burdening the MDL with a new jurisdictional issue would not be in the interest of judicial economy. *Marble v. Organon,* No. 12–2213, 2012 WL 2237271, at *3 (N.D. Cal. June 15, 2012). Where, however, other cases pending before the MDL have raised the same jurisdictional issue, a stay was granted because it would be in the interest of judicial economy to have all these issues decided together. *See, e.g.,* *Addison v. Bristol–*

*Meyers Squibb Co.,* No. 13–2166, 2013 WL 3187859, at *1 (N.D. Cal. June 21, 2013).

**\*2** Here, the MDL *has already ruled* on the jurisdictional issue at stake. Defendant GSK removed the action to federal court on July 2, 2013. Plaintiffs' supplemental briefing shows, however, that no defendant had been served on that date. The MDL found that "when no defendant has been served, but a forum defendant has been named, the citizenship of the forum defendant may not be ignored for purposes of Section 1441(b)" and removal is proper. *In re Avandia,* 624 F.Supp.2d 396, 411 (E.D.Pa.2009) (Judge Cynthia Rufe). Under these circumstances, judicial economy would not be served by a transfer to the MDL only to have the MDL court remand the action back to state court.

GSK concedes that it had not been served with the complaint when it removed the case and that upon its information and belief, McKesson had also not been served (Dkt. No. 1 at 4). MDL Judge Cynthia Rufe has already found that in this specific fact pattern, a remand is proper: "[b]ecause removal occurred before any Defendant was served, the Court will ... remand the action." *In re Avandia,* 624 F.Supp.2d at 422.

GSK's removal in violation of the forum defendant rule alone is sufficient basis to grant a remand. The forum defendant rule states that "a civil action otherwise removable ... may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. 1441(b)(2). Remand would only have been proper if GSK had been served before McKesson, the forum defendant. In the present action, however, GSK removed before *any* defendant was served. As noted above, MDL Judge Cynthia Rufe has already held that this constitutes improper removal and GSK has failed to show any likelihood that she may now rule differently.

GSK nonetheless raises three arguments in support of its motion to stay. It argues that McKesson has been fraudulently joined in this action because (1) no viable claim can be stated against McKesson and (2) since 2009, no action was allegedly taken against McKesson in the proceedings previously remanded by MDL Judge Cynthia Rufe. It also argues that (3) there is federal jurisdiction under CAFA. Even assuming, *arguendo,* that GSK could remove the action despite the forum defendant rule, these arguments fail to persuade for the following reasons.

*First,* GSK argues that plaintiffs can state no viable claim against McKesson. During oral argument, counsel for GSK supported this argument by citing *Brown v. Superior Court,* 44 Cal.3d 1049 (1988). That decision concerned product liability for manufacturers of pharmaceuticals. Under California law, however, distributors can also be liable for design defects. *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 262–263 (1964). It is thus plausible that plaintiffs may have a claim against McKesson. GSK failed to cite any binding authority to the contrary.

This conclusion is not altered by the Supreme Court's decision in *PLIVA, Inc. v. Mensing,* 131 S.Ct. 2567 (2011). According to GSK, that decision preempts any state-law claim plaintiffs may have against McKesson, meaning McKesson was fraudulently joined in this action. Not so. A preemption defense goes to the merits of a plaintiff's case and cannot overcome the strong presumption against removal jurisdiction. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1045 (9th Cir.2009). GSK failed to cite any binding authority that would suggest otherwise.

*Second,* GSK contends that McKesson was fraudulently joined because in the actions previously remanded by MDL Judge Cynthia Rufe, allegedly no action was taken against McKesson. The removal took place over four years ago and since then, GSK contends, the plaintiffs in those actions have not actively pursued any claims against McKesson. GSK argues this shows that McKesson has been fraudulently joined in the present action. This argument, too, must be rejected. During oral argument, counsel for plaintiffs disputed GSK's allegation that no action was taken against McKesson in those actions. But even if GSK's contention were true, that does not alter the conclusion for *this* action. The fact that no action was taken against McKesson in separate litigation, involving different plaintiffs and different counsel, cannot lead to the conclusion that McKesson, against which plaintiffs may have an otherwise viable claim, was fraudulently joined in *this* action.

**\*3** *Third,* GSK contends that there is removal jurisdiction under CAFA in this action, an issue not yet addressed by MDL Judge Cynthia Rufe. But removal of a mass action under CAFA requires that the action involves at least 100 plaintiffs. 28 U.S.C. 1332(d)(11)(B)(i). That requirement is not met in the present action. Furthermore, Section 1332(d)(1 1)(C) explicitly precludes transfer of mass actions, removed pursuant to CAFA, to an MDL unless a majority of the plaintiffs request such transfer. Even if the action

were removable under CAFA, GSK's motion to stay would therefore still be denied.

This order is not persuaded by GSK's contention that it would suffer prejudice if a stay is denied when it removed the action from state court despite the MDL's ruling that such removal is improper. To the contrary, it would cause undue prejudice to plaintiffs to be forced to file and argue motions to remand in two different courts before being sent back to square one – state court, where this action belongs.

### CONCLUSION

GSK will not be granted a stay since the MDL has already made clear this action should be remanded. GSK's motion to stay is therefore **DENIED** and plaintiffs' motion to remand is **GRANTED**. The Clerk shall **REMAND** this action to the Superior Court for the County of San Francisco.

**IT IS SO ORDERED.**

Dated: August 23, 2013

---

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 459630

2013 WL 459630
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

Theresa OLIVER, et al., Plaintiffs,

v.

McNEIL–PPC, INC., et al., Defendants.

No. 1:12–cv–01865–AWI–SAB.  |  Feb. 4, 2013.

### FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION TO REMAND

**Attorneys and Law Firms**

Lowell W. Finson, Phillips Webster, Los Angeles, CA, for Plaintiffs.

Betty Campbell, PHV, Butler Snow O'Mara Stevens & Cannada, PLLC, Memphis, TN, Taylor Mayes, PHV, Butler Snow O'Mara Stevens & Cannada, PLLC, Nashville, TN, Mollie Fleming Benedict, Su-Lyn Combs, William Henry Dance, Tucker Ellis & West LLP, Los Angeles, CA, for Defendants.

### OBJECTIONS DUE WITHIN FIFTEEN DAYS

STANLEY A. BOONE, United States Magistrate Judge.

### I.

### *PROCEDURAL HISTORY*

**\*1** Plaintiffs Theresa Oliver and Bruce Anderson filed this action on October 9, 2012, in Fresno County Superior Court alleging negligence; strict liability for failure to warn; strict liability for defective design; breach of express warranty; breach of implied warranty for a particular purpose; breach of implied warranty of merchantability; violation of California Business and Professions Code, section 17200, et seq.; violation of California Business and Professions Code, section 17500, et seq.; deceit by concealment in violation of California Civil Code, sections 1709 and 1710; negligent misrepresentation; violation of California Civil Code, sections 1750 et seq.; wrongful death; and a survival

action. (ECF No. 1.) Generally, Plaintiffs contend that Daniel Oliver and Mildred Barta ingested Tylenol, which is exclusively marketed by Defendant Johnson & Johnson, and were subsequently diagnosed with liver failure which resulted in their death.

Defendants removed the action to the Eastern District of California on November 13, 2012, under 28 U.S.C. §§ 1332 and 1441 contending that diversity jurisdiction exists in this action under the doctrine of fraudulent joinder. Defendants allege that Defendant McKesson Corporation ("Defendant McKesson") has been fraudulently joined and there is no possibility Plaintiff's can recover from Defendant McKesson based on the allegations in the complaint. (Notice of Removal 2, ECF No. 1.) Defendants filed a motion to dismiss and motion to sever and transfer the case on November 20, 2012. (ECF Nos. 4, 5.) On November 28, Plaintiff filed a first amended complaint addressing several allegations not included in the original complaint. (ECF No. 6.)

On November 30, 2012, Plaintiff filed the instant motion to remand to state court and a motion to stay the proceedings pending remand. (ECF Nos. 10, 11.)Defendants filed a second motion to dismiss, motion for change of venue, and renewed motion to sever on December 7, 2012. (ECF Nos. 16, 17.)Defendants' motions to dismiss, motions to sever, and motion to transfer venue were denied by the district judge without prejudice on January 25, 2012, due to the pending motion to remand. (ECF No. 25.) The district judge referred the motion for remand to the undersigned for findings and recommendations. On January 17, 2013, Defendants filed an opposition to the motion to remand. (ECF No. 27.) Plaintiff filed a reply on January 25, 2013.

This Court conducted a hearing on Plaintiff's motion to remand and motion to stay on February 1, 2013. Counsel Lowell Finson appeared by telephone for Plaintiffs Oliver and Anderson and counsel Sue Lyn Combs appeared by telephone for Defendants McNeil–PPC, Inc., Johnson & Johnson, and McKesson Corporation. The Court has read and reviewed the Plaintiffs' moving papers and Defendants' opposition, including all supporting documents. The Court further considered the arguments of counsel on the record. The following findings and recommendation hereby issues recommending granting Plaintiffs' motion to remand. [1]

### II.

2013 WL 459630

*MOTION TO REMAND LEGAL STANDARD*

**\*2**  "[A]ny civil action brought in a State Court of which the district courts of the United States have original jurisdiction may be removed by the defendant ... to the district court of the United States for the district ... where such action is pending." 28 U.S.C. § 1441(a). A notice of removal must be filed within thirty days of receiving the initial pleading setting forth the claim for relief, 28 U.S.C. § 1446(b), and in a case based upon diversity jurisdiction, the notice of removal must be filed within thirty days from which it was ascertained the case was removable, but not more than one year after the commencement of the action, 28 U.S.C. §§ 1446(b)(2)(C) and (c)(1).

District courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 679 (9th Cir.2006) (citations omitted). For the purposes of establishing diversity of citizenship, a corporation is deemed to be a citizen of every state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

"The removal statute is strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque,* 582 F.3d at 1087. If the district court determines that it lacks jurisdiction, the action should be remanded back to the state court. *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 134, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).

## III.

### DISCUSSION

#### A. Diversity of the Parties

The residency of the parties is undisputed. Plaintiff Oliver is a resident of California and Plaintiff Bruce is a resident of Texas. (Compl. ¶¶ 2, 4, ECF No. 1.) Therefore, diversity jurisdiction will not exist if any named defendant is a resident of the States of California or Texas. Defendant McNeil–PPC is a resident of Pennsylvania and Defendant Johnson & Johnson is a resident of New Jersey. (Notice Of Removal ¶¶ 11, 12, ECF No. 1.) Defendant McKesson is incorporated in the State of Delaware, with a principal place of business in California, and is therefore a citizen of Delaware and California for diversity purposes. (ECF No. 1 at ¶ 13; Notice of Removal ¶ 16.) Since Plaintiff Oliver and Defendant McKesson are both residents of California, diversity jurisdiction does not exist. Accordingly, if Defendant McKesson is properly joined in this action, the Court does not have diversity jurisdiction, and this action must be remanded to State court. [2]

#### B. Position of the Parties

Defendants removed this matter to federal court alleging fraudulent joinder. Plaintiff now seeks remand to state court arguing that Defendant McKesson was not fraudulently joined and this court does not have subject matter jurisdiction over the action. (Mot. and Memo. of P. & A. In Support of Mot. to Remand to State Court 8–11, ECF No. 10–1.) Plaintiffs contend that Defendant McKesson had a direct role in distributing the Tylenol to the decedents which caused their demise.

**\*3**  Defendants argue that Plaintiffs have not provided any basis for the conclusion that Defendant McKesson distributed the drugs at issue here or in any way contributed to the alleged injuries, failing to provide a causal nexus between Defendant McKesson and the injuries alleged. (Defs.' Opp. To Pls.' Mot. To Remand to State Court 8, ECF No. 27.) Further, Defendants contend that the allegations to be considered by the court are those alleged in the complaint that was in existence at the time the case was removed to federal court, not the first amended complaint filed after the removal. (*Id.* at 9.) Defendants allege that, even if the court were to consider the first amended complaint, Plaintiffs have still failed to state a claim against Defendant McKesson.(*Id.* at 11–12.)Alternately, Defendants request that, should the Court find that jurisdiction is not apparent on the current record, they be allowed to conduct targeted discovery on whether Defendant McKesson was the distributor of the product which the decedents ingested. (*Id.* at 14.)

Plaintiffs reply that the issue of fraudulent joinder as argued by Defendants has been considered by numerous other courts and remand has been granted. (Plaintiffs' Reply in Support of Mot. to Remand 2–3, ECF No. 30.) Further, Plaintiffs argue that when analyzing the issue of fraudulent joinder, the

Court considers the first amended complaint in determining the motion to remand.(*Id.* at 3–5.)Plaintiffs assert they are not required to provide proof of their allegations at the pleading stage and the allegations in the complaint are sufficient to state a claim. (*Id* . at 6–8.)Finally, Plaintiffs contend that since this court does not have subject matter jurisdiction in this action, Defendants' request for limited discovery on the issue of Defendant McKesson's liability cannot be granted. (*Id.* at 9.)

### C. Fraudulent Joinder Legal Standard

This case centers on Defendants' allegation that Defendant McKesson is fraudulently joined in this action, and the parties dispute the legal standard to be applied by this court. At the hearing on this motion, Defendants concede that their argument is that Plaintiff has failed to allege sufficient facts to determine if Defendant McKesson is the distributor of the medication at issue in this action. Defendants argue that since the bare allegations in the complaint are insufficient to state a claim, joinder of Defendant McKesson is fraudulent.

An exception to the requirement of complete diversity exists where a defendant has been fraudulently joined to defeat diversity. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001).*"If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is deemed fraudulent."*Hamilton Materials, Inc. v. Dow Chemical Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007)* (*quoting McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)). Where joinder is deemed fraudulent, the defendant's presence is ignored for the purposes of determining diversity. *Morris,* 236 F.3d at 1067. The claim of fraudulent joinder must be supported by "clear and convincing evidence." *Hamilton Materials, Inc.,* 494 F.3d at 1206. The party seeking removal bears a heavy burden in proving that joinder of the in-state defendant is improper. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1044 (9th Cir.2009).

**\*4**  In addressing the issue of fraudulent joinder, the Ninth Circuit looks to whether the facts in the complaint would preclude the plaintiff's recovery against the non-diverse defendant. *See Morris,* 236 F.3d. at 1067–68 ("abundantly obvious that [plaintiff] could not possibly prevail on her negligent representation claim"). [3]  While Defendants rely on out of circuit cases which have found fraudulent joinder based on the failure to state a claim, district courts in this circuit,

which have considered the standard, apply the fraudulent-joinder rule in cases only where it is "indisputably clear" that the plaintiff will be unable to state a cause of action against the non-diverse defendant in state court. [4] *See Tahoe Keys Marina & Yacht, LLC v. Merkelback,* No. 2:12–cv–02582–GEB–AC, 2013 WL 221510, at \*1 (E.D.Cal. Jan.18, 2013). [5] It is not for the court to determine if the plaintiff will prevail on the merits of the claim, but to evaluate whether there is any possibility that the plaintiff may prevail. *Board of St. Mary's Holy Apostolic Catholic Church of the East v. Addai,* No. 1:12–cv–1448–AWIBAM, 2012 WL 4764411, at \*2 (E.D.Cal. Oct.5, 2012). [6] If there is any possibility that the plaintiff would be able to establish liability against the defendant the joinder is not fraudulent. *Bear Valley Family v. Bank Midwest, N.A.,* 2010 WL 3369600, at \*2 (C.D.Cal. Aug.23, 2010) (*citing* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 2:672 (The Rutter Group 2009)).

The Ninth Circuit has endorsed the view that the court may consider facts outside the complaint to identify "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."*Hunter,* 582 F.3d at 1044. If the state court would grant the plaintiff leave to amend the complaint to cure a pleading defect, the deficiencies in the complaint are not obvious under the settled rules of the state. *Burris v. AT & T Wireless, Inc.,* No. 3:06–cv–02904–JSW, 2006 WL 2038040, at \*2 (N.D.Cal. July 19, 2006)."[A]ny ambiguity of law or fact must be resolved in favor of remand."*Hattox v. State Farm Mut. Auto. Ins. Co.,* 2013 WL 314953, at \*4 (S.D.Cal. Jan.25, 2013) (*citing Bear Valley Family, L.P.,* 2010 WL 3369600). Therefore, this court finds that the standard to apply in this action in determining if there has been fraudulent joinder is whether it is "indisputably clear" that the plaintiff will be unable to state a cause of action against Defendant McKesson in state court.

### D. Whether Defendant McKesson is Fraudulently Joined in this Action

#### 1. Complaint to be Reviewed

Plaintiffs are incorrect in arguing that the Court is to consider the amended complaint in determining if Defendant McKesson was fraudulently joined in this action. In determining whether the removal was proper, the court is to consider the pleadings filed at the time of removal. *Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083, 1085 n. 5 (9th Cir.2009); *Williams v. Costco Wholesale Corp.,*

471 F.3d 975, 976 (9th Cir.2006); *Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1426 n. 12 (9th Cir.1989).

### 2. *Allegations in Complaint*

**\*5** Plaintiff's complaint alleges that Defendant McKesson claims to be:

> 1) the largest pharmaceutical distributor in North America distributing one-third of the medications used daily in North America, 2) the nation's leading health care information technology company, and 3) a provider of "decision support" software to help physicians determine the best possible clinical diagnosis and treatment plans for patients.

(Compl. ¶ 13, ECF No. 1.) Plaintiff also alleges that Defendant McKesson "conducted regular and sustained business in California by selling and distributing its products and services in California and engaged in substantial commerce and business activity in the County of San Francisco."(*Id.* at ¶ 14.)

Among other things, Plaintiffs allege that the defendants knew that Tylenol[7] was associated with liver and/ or caused liver damage and continued to distribute it to consumers, including the decedents. (*Id.* at ¶ 26.)Additionally, Plaintiffs state that the Tylenol supplied by Defendants was defective due to inadequate post-marketing warnings and/or instructions and was unreasonably dangerous due to the inadequate warnings. (*Id.* at ¶¶ 37, 38.)Defendants failed to warn the decedents or their prescribing physicians of preclinical studies on the risk of liver damage and had they been adequately warned the decedents would not have used Tylenol. (*Id.* at ¶¶ 39–40.)In marketing and distributing Tylenol, the defendants falsely represented that it was fit for the purpose for which it was intended. (*Id.* at ¶¶ 88–89.)

### 3. *Whether Failure to State a Claim is Obvious According to the Settled Rules of the State*

Defendants argue that Plaintiffs have presented no factual basis for bringing a claim against Defendant McKesson in this action and the claims are merely speculative. In opposing the motion, Defendants fail to argue or present evidence that

Defendant McKesson did not provide the Tylenol that was ingested by the decedents, but argue that Plaintiffs do not have sufficient facts to show that Defendant McKesson provided the Tylenol.

The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product. *Bostick v. Flex Equip. Co ., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007). District courts have found that both manufacturers and distributors may be held strictly liable under California law for injuries caused by a prescription drug. See *Mendez v. AstraZeneca Pharmaceuticals LP,* No. 1:12–cv–00535–LJO–DLB, 2012 WL 1911382, at *2 (E.D.Cal. May 25, 2012).[8] While Defendants argue that the allegations in the complaint are too bare to state a claim that Defendant McKesson distributed the medication at issue in this action, they do not show by clear and convincing evidence that the failure to state a claim according to the settled rules of the state. *McCabe,* 811 F.2d at 1339.

**\*6** Defendants' argument is that the facts alleged are insufficient to prove that Defendant McKesson distributed the medication that was ingested by the decedents. In deciding whether Defendant McKesson is fraudulently joined, this court is not to determine if Plaintiff can prevail on the merits of the claim, but whether there is any possibility Plaintiffs will prevail on the claim.*Board of St. Mary's Holy Apostolic Catholic Church of the East,* 2012 WL 4764411, at *2. Defendants would have the allegations directed toward all defendants disregarded in deciding the issue of fraudulent joinder. However, the fact that the allegations are directed at all defendants does not preclude the court from determining whether there is any possibility Plaintiffs could prevail on a claim under state law against Defendant McKesson. *See Smith v. Southern Pac. Co.,* 187 F.2d 397, 401 (9th Cir.1951) ("No specific charge in the complaints refer to [defendant] alone. We have no doubt that the complaints as they stand would be subject to a motion to make more definite and certain. But this is not the test in removal cases").

In this action, Plaintiffs claim that the decedents ingested Tylenol manufactured and distributed by the defendants which caused their demise, that the Tylenol was unreasonably dangerous, and defendants failed to warn the decedents and their treating physicians of the danger. The claims which are alleged are viable under California state law. Since there is a possibility that Plaintiffs will be able to establish liability against Defendant McKesson, joinder is not fraudulent. *See*

2013 WL 459630

*Widder v. State Farm Fire and Cas. Co.,* No. 2:10–cv–02221–WBS–KJN, 2010 WL 4386698, at *3 (E.D.Cal. Oct.28, 2010) ("plaintiff may be able to explain or expand on his allegations.... The court cannot conclude that it is impossible or fanciful that Plaintiff can establish liability against [the defendant.]").

Defendants also argue that Plaintiffs allegations are insufficient because they are based upon information and belief. Under California law, a plaintiff may allege upon information and belief any matters that are not within his personal knowledge as long as he has information leading him to believe that the allegations are true. *Doe v. City of Los Angeles,* 42 Cal.4th 531, 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (2007) (citation omitted). The fact that Plaintiff's allegations are based on information and belief does not make it "obvious according to the settled rules of the state" that the complaint fails to state a claim. *McCabe,* 811 F.2d at 1339; *Mendez,* 2012 WL 1911382, at *3.

While Defendants argue that Plaintiffs allegations are insufficient to state a claim against Defendant McKesson, the defects alleged are curable by amendment and Plaintiffs have articulated a valid theory of liability under California law. *Lantz v. DaimlerChrysler Corp.,* No. 3:05–cv–02698–CRB, 2005 WL 1629937, at * 2 n. 2 (N.D.Cal. July 8, 2005). The Court finds that Defendants have failed to meet their burden of establishing that Defendant McKesson was fraudulently joined in this action and remand is appropriate.

**E. Defendants' Request for Targeted Discovery**

 *7 Alternately, Defendants request that they be allowed to conduct targeted discovery on whether Defendant McKesson was the distributor of the product which the decedents ingested. Given the findings of this Court, that Defendant McKesson is not fraudulently joined, there are insufficient grounds to allow discovery to be conducted prior to remanding this action to state court. The district court lacks jurisdiction over this action and the parties will be able to conduct discovery in the state court proceedings. Should Defendant McKesson be dismissed from this action during the state court proceedings, Defendants will have the ability to remove this action within the statutory period. *See* 28 U.S.C. § 1446(c). The Court recommends that Defendants' request to allow discovery prior to remanding this action be denied.

**IV.**

*CONCLUSION AND RECOMMENDATION*

For the reasons stated, Defendants have not met their burden of establishing that removal is proper and the Court recommends that Plaintiff's motion to remand be granted.

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for remand to state court be GRANTED; and

2. This action be REMANDED to Fresno County Superior Court from which it was removed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.*Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Footnotes

1   An order addressing Plaintiff's motion to stay shall issue separately.

2   Plaintiffs do not argue that the amount in controversy is insufficient to meet the jurisdictional requirement, it is solely the diversity of the parties that is at issue in this motion.

3   *See also Hunter v. Philip Morris USA,* 582 F.3d 1039, 1044 (9th Cir.2009) (defense that claim is preempted by federal law is attack on the merits, not a basis for attacking the removal from state court); *Hamilton Materials, Inc.,* 494 F.3d at 1206 (plaintiff's claims against non-diverse defendants were time barred); *United Computer Systems, Inc. v. AT & T Corp.,* 298 F.3d 756, 761 (9th Cir.2002) (non-diverse defendant "is not a party to any relevant contract on which plaintiff could predicate a claim against her").

2013 WL 459630

4 Defendants cite *Aronis v. Merck Co., Inc.,* No. 2:05–cv–00486, 2005 WL 5518485 (E.D.Cal. May 3, 2005), in which the court found that McKesson Corp. was fraudulently joined based on the failure to state a claim for relief. However, this court does not find *Aronis* to be persuasive authority on the issue of fraudulent joinder as the facts there were less detailed then here and the court did not apply the standard used subsequently by courts of this circuit.

5 *See also Gonzalez v. J.S Paluch Co., Inc.,* No. 2:12–cv–08696–DDP (FMOx), 2013 WL 100210, at *4 (C.D.Cal. Jan. 7, 2013); *Morrow v. Wells Fargo Bank,* No. 3:12–cv–03045–LB, 2012 WL 5471133, at * 4 (N.D.Cal. Nov.9, 2012).

6 *See also Longmire v. HMS Host USA, Inc.,* No. 3:12–cv–02203 AJB (DHB), 2012 WL 5928485, at *4 (S.D.Cal. Nov. 26, 2012); *Dunn v. Infosys Ltd.,* No. 3:12–cv–03561, 4:12–cv–03561, 2012 WL 4761901, at *2 (N.D.Cal. Oct.5, 2012); *London v. CBS,* No. 2:12–cv–06605–GAF (FMOx), 2012 WL 4372280, at *4 (C.D.Cal. Sept. 25, 2011).

7 At oral argument, Defendants contend that Plaintiffs have failed to state a claim because the allegations in the complaint regarding the use of Tylenol make it impossible to determine the specific medication used by the decedents. However, this is a curable defect and goes to the merits of the claim, not to whether Plaintiffs' failure to state a claim against Defendant McKesson is obvious under the settled rules of the state. *Board of St. Mary's Holy Apostolic Catholic Church of the East,* 2012 WL 4764411, at *2.

8 *See also Hamzey v. Bayer Corp.,* No. 3:10–cv–00526–JM (CAB), 2010 WL 2011529, at *3 (S.D.Cal. May 19, 2010); *Andrews v. Bayer Corp.,* No. 2:09–cv–08762–DDP (FFMx), 2010 WL 234808, at *3 (C.D.Cal. Jan. 12, 2010).

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2237271
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Byra MARBLE, Richard Langhart and Karen
Langhart, individually and as successors-
in-interest on behalf of the Estate of Erika
Langhart; Michelle Rowe, Daniel Rowe, Tonya
Strange, Demitress Thompson–Mccauley,
Jerome Mccauley, Crystal O'Briskie., Plaintiffs,
v.
ORGANON USA, INC.; Organon Pharmaceutical
USA, Inc.; Organon International, Inc.; Organon
Biosciences NV, Akzo Nobel NV, Schering–Plough
Corporation, Merck & Company, Inc.; Mckesson
Corporation and Does 1–100., Defendants.

No. C 12–02213 WHA.   |   June 15, 2012.

**Attorneys and Law Firms**

Kelly Ann McMeekin, Napoli Bern Ripka Shkolnik &
Associates LLP, El Segundo, CA, Hunter Shkolnik, Napoli
Bern Ripka Shkolnik, New York, NY, for Plaintiffs.

Steven J. Boranian, Lynn Ann Combs, Reed Smith LLP, San
Francisco, CA, Thomas Joonyul Yoo, Reed Smith LLP, Los
Angeles, CA, for Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION
TO REMAND AND DENYING DEFENDANTS'
MOTION TO STAY PROCEEDINGS**

WILLIAM ALSUP, District Judge.

**INTRODUCTION**

**\*1** In this pharmaceutical products-liability case, defendants
Organon USA, Inc., Organon Pharmaceutical USA, Inc.,
Organon International, Inc., and Merck & Company, Inc.
("Merck defendants") move to stay this action pending a
potential transfer to a multidistrict litigation proceeding.
Plaintiffs move to remand this action to state court for
lack of subject-matter jurisdiction due to the absence of
complete diversity. Defendants' motion to stay pending

transfer to MDL is **DENIED.**Plaintiffs' motion to remand is
**GRANTED.**

**STATEMENT**

Merck defendants are pharmaceutical companies that
manufacture the prescription hormonal contraceptive device
commonly known as NuvaRing®. This products-liability
case is one of a large number of actions filed against
defendants for the alleged personal injury caused by
NuvaRing®. On August 22, 2008, an MDL panel transferred
eleven actions pending at the time to MDL No.1964 in United
States District Court for the Eastern District of Missouri
for coordinated consolidated pretrial proceedings before
the Honorable Rodney Sippel. *In re NuvaRing® Products
Liability Litigation,* 572 F.Supp.2d 1382 (J.P.M.L.2008). As
of April 30, 2012, nine hundred additional actions have been
transferred to MDL No.1964 (Remand Opp. Br. 4). Plaintiffs
filed a state court action for personal injury allegedly caused
by NuvaRing® on April 30, 2012, in the Superior Court
of California for the City and County of San Francisco. In
the complaint, plaintiffs allege claims of: (1) strict products
liability; (2) strict liability for manufacturing defect; (3)
negligence; (4) breach of implied warranty; (5) breach of
express warranty; (6) violation of California Civil Code
Sections 1709 and 1710; (7) negligent misrepresentation; (8)
fraud by concealment; (9) violation of California Business
and Professions Code Section 17200; (10) violation of
California Business and Professions Code Section 17500;
(11) violation of California Civil Code Section 1750; (12)
wrongful death; and (13) loss of consortium.

On May 2, 2012, Merck defendants removed this action to
federal court, alleging that defendant McKesson, a citizen
of California, was fraudulently joined in an effort to avoid
federal jurisdiction. On May 4, 2012, Merck defendants filed
a letter with the JPML identifying this case as a tag-along
action to MDL No.1964 (Boranian Decl. ¶ 7). On May 8,
2012, a conditional transfer order was issued for the instant
action (*id.* ¶ 8). Merck defendants now move for a stay of this
action, pending a transfer to MDL No.1964.

On May 10, 2012, plaintiffs filed a motion to remand this
action to state court, claiming lack of complete diversity.
Plaintiffs contend that under 28 U.S.C. 1332, this Court lacks
subject-matter jurisdiction because both defendant McKesson
and plaintiff Marble are citizens of California (Remand Mot.
1). Merck defendants argue that McKesson was fraudulently

2012 WL 2237271

joined and should be ignored for purposes of determining diversity jurisdiction (Remand Opp. Br. 3–4).

## ANALYSIS

### 1. THE MOTION TO STAY REQUIRES CASE–SPECIFIC ANALYSIS.

**\*2** The power to grant a temporary stay "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Whether a motion to remand or a motion to stay should be decided first, however, is "extremely sensitive to the facts of the case." *Burse v. Purdue Pharma Co.,* 2004 WL 1125051 at \*1 (N.D.Cal.2004) (Conti, J.). In prior pharmaceutical products-liability actions involving similar facts, the undersigned judge has deferred ruling on the plaintiffs' motions to remand and has granted the defendants' motions to stay pending the decisions of MDL panels to transfer those actions to designated MDL courts. *See Johnson v. Merck & Co., Inc.,* 2007 WL 754882 (N.D.Cal.2007); *Nielsen v. Merck & Co., Inc.,* 2007 WL 755298 (N.D.Cal.2007); *Camara v. Bayer Corp.,* 2010 WL 902780 (N.D.Cal.2010). However, the rationale underlying those decisions revolved around considerations of judicial economy and preventing inconsistency; concerns that are not present in the instant case.

*Johnson* and *Nielsen* were both pharmaceutical products-liability actions in which the plaintiffs sued Merck in California state court for alleged harms arising out of the use of the anti-inflammatory drug VIOXX®. In those actions, the plaintiffs joined McKesson as a defendant based on its potential liability as a VIOXX® distributor. This Court granted the defendants' motions to stay pending the potential transfer of those actions to an MDL proceeding because several other federal courts had stayed VIOXX®-related actions from California that faced the same issue: whether the distributor defendants were fraudulently joined to defeat diversity. *See Johnson,* 2007 WL 754882 at \*2; *Nielsen,* 2007 WL 755298 at \*2. Because the transferee judge would "undoubtedly face most (if not all) of the same issues in dealing with the other pending remand motions," staying the proceedings "best serve[d] the interests of judicial economy" and avoided "the possibility of inconsistent rulings." *Johnson,* 2007 WL 754882 at \*2; *Nielsen,* 2007 WL 755298 at \*2.

Likewise, in *Camara,* this Court deferred ruling on the plaintiffs' motion to remand and granted the defendants' motion to stay pending the potential transfer of that action to an MDL proceeding. The *Camara* plaintiffs also sued the defendants in California state court by joining McKesson as a defendant based on its potential liability as a distributor of prescription contraceptives. *Camara,* 2010 WL 902780 at \*1. This Court granted the defendants' motion to stay because eight motions to stay pending transfer to MDL had already been granted for Yasmin® and YAZ®-related actions in the Northern and Central Districts of California despite pending motions to remand (*id.* at \*2). Because the transferee court was already deciding eight similar motions to remand, addressing the motion to remand in this Court would "unnecessarily duplicate work and could lead to inconsistent results" with the transferee judge, who was already "well-equipped to make an informed an uniform decision"(*ibid.*).

**\*3** The same reasoning governed Judge Martin Jenkins' order to stay proceedings in *Nielsen v. Merck,* as well as Judge Sandra Armstrong's order to stay proceedings in *Blalock v. Depuy Orthopaedics, Inc. See* 2007 WL 806510 at \*2 (N.D.Cal.2007); 2011 WL 6217540 at \*2 (N.D.Cal.2011). In both of those cases, the respective MDL courts were already deciding several of the exact same state law and fraudulent joinder claims from related actions. With one possible exception, neither plaintiffs nor Merck defendants have cited to any case decided in this district where a defendant's motion to stay has been granted absent the fact that an MDL court was already deciding remand motions based on the exact same issues in related actions. In *Freitas v. McKesson,* Judge James Ware denied the plaintiffs' motion to remand and granted the defendants' motion to stay pending that action's potential transfer to MDL because the MDL court was already presiding over "100 cases involving allegations of harm resulting from the ingestion of medications containing propoxyphene."2012 WL 161211 at \*2 (N.D.Cal.2012). However, Judge Ware's order did not clarify whether the MDL was already addressing other motions to remand based on the same issues (*ibid.*). In contrast, Judge Armstrong denied a motion to stay and granted a motion to remand in *Moorhouse v. Bayer,* even though four other cases pending before MDL also involved remand issues. *See* 2008 WL 2477389 at \*4 (N.D.Cal.2008). Because the defendants neither "specif [ied] the nature of the remand issues nor whether the cases involve[d] California distributors," Judge Armstrong decided that it was not appropriate to defer to the MDL court on the plaintiffs' motion to remand (*ibid.*).

Whereas *Johnson, Camara* and both *Nielsen* cases all involved situations where the MDL judge was already deciding numerous motions to remand to California state court based on McKesson's potential liability as a distributor of VIOXX®, Yasmin® or YAZ®, "no other plaintiff has ever named McKesson Corporation or any other distributor in a NuvaRing® lawsuit anywhere in the country" (Remand Opp. Br. 1). Therefore, deciding on plaintiffs' motion to remand would not unnecessarily duplicate the work of Judge Sippel or lead to results inconsistent with the MDL as Judge Sippel has not considered the liability of NuvaRing® distributors or the validity of their joinder as defendants. Because no other case in the MDL thus far has presented the McKesson issue, there is no economy in sending this action to MDL for resolution.

"A district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation."*Rivers v. Walt Disney Co., 980 F.Supp. 1358, 1360 (C.D.Cal.1997).*"When considering a motion to stay, the district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated"(*ibid.*). As previously discussed, denying Merck defendants' motion to stay would not lead to duplicative litigation. Nor would it unfairly prejudice Merck defendants. Merck defendants argue that if individual federal district courts allowed cases to proceed during the period between their removal and their "inevitable" transfer to MDL No.1964, they would face "death by a thousand cuts" as "plaintiffs would be free to pursue a strategy of aggressively litigating, and getting discovery in, hundreds of individual cases for the period of weeks that it takes for cases that inarguably meet the § 1407 transfer standard to be transferred" by the MDL panel (Stay Mot. 4–5). However, the reason this Court is denying Merck defendants' motion to stay is because it is granting plaintiffs' motion to remand this action to California state court where it belongs. Therefore, plaintiffs will not be able to pursue a strategy of "aggressively litigating" and "getting discovery" in federal court before an "inevitable" transfer to MDL No.1964 as all litigation pursuant to this action will occur in state court. Moreover, as Merck defendants highlight in their briefs, this is the first time in nearly one thousand actions that any NuvaRing® plaintiffs have joined McKesson or any other distributor as a defendant in NuvaRing® litigation. Why Merck defendants assume that they will face "death by a thousand cuts" in various federal

district courts is puzzling, as the considerations underlying this Court's decision to deny defendants' motion to stay are specific and unique to this action. For the forgoing reasons, Merck defendants' motion to stay is **DENIED.**

## 2. MOTION TO REMAND.

**\*4** This Court may remand a case to state court for lack of subject-matter jurisdiction. 28 U.S.C. 1447(c). Diversity jurisdiction pursuant to 28 U.S.C. 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.2001).* Citizenship of fraudulently joined parties should be ignored in analyzing diversity (*ibid.*). [I]f plaintiff fails to state a claim against resident defendant, and the failure is obvious according to the settled rules of the state, then joinder of the resident defendant is fraudulent (*ibid.*). Here, Merck defendants argue that plaintiffs have fraudulently joined McKesson in order to defeat diversity jurisdiction. Merck defendants justify removing this action to federal court because discounting McKesson, there would be complete diversity and this Court would have subject matter jurisdiction. However, "[t]he 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."*Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992)* (citations omitted). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance (*ibid.*).

Merck defendants claim that McKesson "cannot be liable to plaintiff on any theory alleged in the complaint" (Remand Opp. Br. 8). However, an examination of the complaint suggests the opposite is true, and Merck defendants have failed to meet their heavy burden of establishing that removal was proper in this action. While Merck defendants argue that plaintiffs have failed to allege any viable claims against McKesson, plaintiffs have actually stated multiple viable claims against McKesson, including strict liability for failure to warn and negligence. Merck defendants argue that plaintiffs' claims are inadequate for three reasons: (1) plaintiffs have failed to establish a sufficient factual connection between McKesson and plaintiffs' alleged injuries; (2) plaintiffs' claims against McKesson are "irreconcilable with the "gravamen" of their complaint; and (3) plaintiffs' claims against McKesson are deficient because "under California law, drug distributors have no duty to warn" (Remand Opp. Br. 9–15). Each of these arguments will be addressed separately below.

## A. Factual Nexus Between McKesson and Plaintiffs' Injuries.

Under California law, a complaint must contain a "statement of facts constituting the cause of action, in ordinary and concise language."CAL.CODE CIV. PROC. § 425.10(a) (1)."In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."CAL.CODE CIV. PROC. § 452. In order to prevail on a strict liability cause of action in California, a plaintiff must establish that a defendant's "failure to warn was a legal cause of the injury."*Torres v. Xomox,* 49 Cal.App.4th 1, 15, 56 Cal.Rptr.2d 455 (Ct.App.1996).

 **\*5**  In their complaint, plaintiffs lay out allegations that state a sufficient cause of action against McKesson for failure to warn. *First,* plaintiffs allege that McKesson distributed NuvaRing® to the consuming public, including NuvaRing® plaintiffs (Compl.¶ 41). Next, plaintiffs allege that NuvaRing® "was defective and unsafe for its intended purpose in that implantation of NuvaRing® causes serious injuries and/or death" (Compl.¶ 70). Plaintiffs further allege that defendants, including McKesson, "knew or should have known that the product created a serious risk of harm to consumers" (Compl.¶ 73). Finally, plaintiffs allege that defendants failed to warn consumers, including NuvaRing® plaintiffs, of these risks, and that due to "the lack of adequate use instructions and warnings, said Plaintiffs were caused to suffer the herein described injuries and damages" (Compl.¶¶ 79–84). Merck defendants characterize plaintiffs' complaint as "cursory, non-specific" and "devoid of any facts concerning any plaintiff" because plaintiffs have not alleged "when or where, or to whom, McKesson allegedly distributed products" or that "McKesson distributed NuvaRing® products that Plaintiffs actually used" (Remand Opp. Br. 11). However, Merck defendants' claim that plaintiffs have failed to allege that McKesson distributed NuvaRing® products to them is inconsistent with paragraph 41 of the complaint.

Moreover, Merck defendants fail to cite any binding authority to support their claim that plaintiffs must allege "when or where" McKesson distributed their products to plaintiffs in order for plaintiffs to state a viable claim against McKesson. In order to state a viable claim for strict liability for failure to warn in California, all a plaintiff must establish is that a defendant's "failure to warn was a legal cause of the injury."*See Torres,* 49 Cal.App.4th at 15, 56 Cal.Rptr.2d 455. Here, plaintiffs have provided enough detail in their complaint to meet this burden. The pleading standards set forth in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* do not apply in state court. *See*550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In light of California's requirement that pleadings be construed liberally, this Court is not inclined to adopt Merck defendants' position and demand more detail from plaintiffs than is actually required for them to state a claim against McKesson. *See*CAL.CODE CIV. PROC. § 452.

## B. Consistency of Plaintiffs' Claims.

Merck defendants also argue that plaintiffs have failed to state a claim against McKesson because their "purported allegations against McKesson cannot be reconciled with the Merck defendants" (Remand Opp. Br. 13). Merck defendants argue that the only safety and warning information McKesson possessed about NuvaRing® came from Merck defendants "in the form of FDA-approved packaging and labeling"(*ibid.*). According to Merck defendants, "under [p]laintiff's theory of their case as they have framed it in their own complaint, McKesson knew only as much as the [p]laintiffs themselves knew," and "[t]his inconsistency is reason enough to find McKesson fraudulently joined"(*id.* at 14). However, Merck defendants have misstated the way that plaintiffs have framed their case. Merck defendants do not cite to any part of the complaint that implies McKesson relied on "FDA approved packaging and labeling" as its only source of information about NuvaRing® or "knew only as much as the plaintiffs themselves knew" about the contraceptive (*ibid.*). Plaintiffs actually assert the opposite in their complaint, claiming that "[d]efendants, *and each of them,* from the time that the NuvaRing® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and *distributed"* were "in a unique position of knowledge, which was not possessed by NuvaRing® [p]laintiffs or their physicians, concerning the safety and effectiveness of the drug" (Compl.¶ ¶ 111–113). Plaintiffs claim that both McKesson and Merck defendants had knowledge of risks of NuvaRing® beyond those listed on the FDA-approved label, and Merck defendants fail to show how it would be inconsistent or impossible for both themselves and McKesson to be aware of this information.

## C. Legal Sufficiency of Plaintiffs' Claims.
 **\*6**  Finally, Merck defendants argue that McKesson is fraudulently joined because "under California law distributors of prescription drug products have no duty to

warn" (Remand Opp. Br. 15). However, Merck defendants overstate their case. No California law exempts distributors of prescription drugs from California's general rule that holds distributors strictly liable for failure to warn in defective products cases. *See Bostick v. Flex Equip. Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (Ct.App.2007). Merck defendants cite to the California Supreme Court's decision in *Brown v. Superior Court* to argue that as a distributor, McKesson cannot be held strictly liable under California law for failure to warn (Remand Opp. Br. 15). However, *Brown* only reaches the issue of strict liability for prescription drug *manufacturers* for failure to warn, and it holds manufacturers strictly liable as long as they had "actual or constructive knowledge of the risk as of the time the product was sold or distributed."*Brown v. Superior Court,* 44 Cal.3d 1049, 1066, 245 Cal.Rptr. 412, 751 P.2d 470 (1988)."[T]he lack of any authority exempting distributors from liability for failure to warn in the prescription drug context inclines this Court against a finding of frivolity."*Moorhouse,* 2008 WL 2477389 at *5.

Merck defendants also argue that because federal law prohibits drug distributors from altering any part of a drug's FDA-approved label, McKesson cannot be held strictly liable for failing to warn NuvaRing® plaintiffs about any risks of NuvaRing® not contained on its FDA-approved label (Remand Opp. Br. 16). While Merck defendants characterize this argument as an "inescapable conclusion," it is merely a policy argument and is not grounded in either California or federal law. The federal statute prohibiting drug manufacturers and distributors from altering FDA-approved labels does not exempt manufacturers and distributors from strict liability under state law for failure to warn consumers about a drug's defects. *See*21 U.S.C. 331(k). In *Wyeth v. Levine,* the Supreme Court held that state law failure-to-warn claims against an antihistamine manufacturer were not preempted by federal law. 555 U.S. 555, 581, 129 S.Ct. 1187,

173 L.Ed.2d 51 (2009). In its holding, the Court explicitly rejected the same arguments that Merck defendants advance in their briefs. Specifically, the Court concluded that it is "not impossible" for a drug manufacturer to comply with both its state law duty-to-warn obligations and its federal labeling duties, and that state law failure-to-warn claims "do not stand as an obstacle to the accomplishment of Congress' purposes" in imposing federal drug labeling regulations through the FDA (*ibid.*).

In order to meet the heavy burden required to justify removal based on fraudulent joinder, Merck defendants must establish that "there is no possibility of recovery against a resident defendant according to the settled rules of the state."*Morris,* 236 F.3d at 1067. Merck defendants have failed to establish that there is no possibility a California court will hold distributors liable for failure to warn consumers of the risks of a prescription drug. Merck defendants cannot rely on a policy argument rejected by the Supreme Court as a substitute for the "settled rule" they must cite to show McKesson was fraudulently joined. Because Merck defendants have not met their burden, this Court cannot retain jurisdiction over this action and must remand it to state court.

## CONCLUSION

**\*7** For the foregoing reasons, defendants' motion to stay pending the potential transfer of this action is **DENIED,** and this action will be remanded to the Superior Court of the State of California for the City and County of San Francisco without prejudice. Defendants may seek to dismiss McKesson in Superior Court and remove this action again if successful.

**IT IS SO ORDERED.**

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1911382
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

Joseph MENDEZ, et al., Plaintiffs,

v.

ASTRAZENECA PHARMACEUTICALS
LP, et al., Defendants.

No. 1:12–CV–00535–LJO–
DLB. | May 25, 2012.

**Attorneys and Law Firms**

Lowell W. Finson, Phillips Webster, Los Angeles, CA, for
Plaintiffs.

Megan Ritsu Nishikawa, William Edward Steimle, Peter A.
Strotz, King and Spalding LLP, San Francisco, CA, Steven
D. Park, King & Spalding LLP, Los Angeles, CA, for
Defendants.

## ORDER ON MOTION TO REMAND (Doc. 11)

LAWRENCE J. O'NEILL, District Judge.

## INTRODUCTION

**\*1** Plaintiffs filed suit against AstraZeneca, [1] McKesson
Corporation ("McKesson"), and Does 1–50, (collectively
referred to as "defendants") in state court. Defendants
removed the action to this Court on the basis that McKesson
was fraudulently joined. Now pending before the Court
is plaintiffs' motion to remand. Plaintiffs contend that
McKesson was not fraudulently joined thus, diversity
jurisdiction does not exist. Defendants oppose the motion.
For the reasons discussed below, this Court VACATES the
hearing set for May 31, 2012 and GRANTS plaintiffs' motion
to remand.

## BACKGROUND

On March 19, 2012, plaintiffs commenced this action in
Fresno County Superior Court. (Doc. 1–1, p. 4). The
complaint alleges personal injury claims resulting from the
use of Crestor® ("Crestor"), a cholesterol lowering drug.
Plaintiffs consist of twenty one individuals, fifteen who were
physically injured and six named spouses. (Doc. 1–1, p.
5–7). Plaintiffs reside in five different states. (Doc. 1–1,
p. 5–7). Plaintiff Joseph Mendez is a citizen and resident
of California. (Doc. 1–1, p. 5). Defendant AstraZeneca
is a Delaware corporation and Defendant McKesson is a
Delaware corporation with its principle place of business in
San Francisco. (Doc. 1–1, p. 7).

On April 5, 2012, defendants removed the action to this
Court on the basis of diversity jurisdiction. (Doc. 1).
Defendants argued that McKesson was fraudulently joined
thus, its citizenship must be ignored for purposes of
determining diversity. (Doc. 1, p. 7). Defendants maintained
that McKesson was fraudulently joined because: (1) the
allegation that McKesson and McKesson alone distributed the
Crestor ingested by all fifteen plaintiffs is implausible; (2)
McKesson cannot be liable as a mere distributor of Crestor;
and (3) McKesson bears no duty to warn plaintiffs based on
the "learned intermediary" doctrine. (Doc. 1, p. 7–11).

On April 25, 2012, plaintiffs filed the instant motion to
remand (Doc. 11) to which defendants filed an opposition
(Doc. 14). Pursuant to Local Rule 230(g), this Court
VACATES the May 31, 2012, hearing or oral argument.
Having considered the parties' arguments and the relevant
law, this Court issues this order.

## DISCUSSION

### A. Legal Standard
A case removed from state court should be remanded if
it appears that it was removed improvidently. 28 U.S.C. §
1447(c). The removal statute is strictly construed against
removal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566
(9th Cir.1992) (per curiam). Thus, "[f]ederal jurisdiction must
be rejected if there is any doubt as to the right of removal
in the first instance." Id. "The 'strong presumption' against
removal jurisdiction means that the [party seeking to preserve
removal] always has the burden of establishing that removal
is proper." Id.

Diversity jurisdiction under 28 U.S.C. § 1332 requires
complete diversity, i.e., every plaintiff must be diverse from
every defendant. An action may nonetheless be removed, if
joinder of the non-diverse party is fraudulent. McCabe v. Gen.
Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987). The Ninth

Circuit has explained that "fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."*Id.;Mercado v. Allstate Ins. Co.,* 340 F.3d 824, 826 (9th Cir.2003). In determining whether a non-diverse defendant has been improperly joined, the Court does not review the merits of the claim but only determines whether a cause of action is viable under state law. *Brazina v. Paul Revere Life Ins. Co.,* 271 F.Supp.2d 1163, 1167 (N.D.Cal.2003). In making this determination courts may look beyond the pleadings and examine the factual record. *McCabe,* 811 F.2d at 1339. However, review of the complaint is constrained to the facts actually alleged therein, it does not extend to facts or causes of action that could be alleged via an amended complaint. *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 n. 12 (9th Cir.1989).

**B. Analysis**

**\*2** Plaintiffs contend that McKesson was not fraudulently joined because California imposes strict liability on all participants in the chain of distribution of a defective product and here McKesson marketed, distributed, promoted, and designed *Crestor.* Defendants focus on plaintiffs' distribution argument and assert that plaintiffs' claim that McKesson distributed the *Crestor* actually ingested by plaintiffs is factually insufficient because the allegation is based "upon information and belief."

The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product. *Bostick v. Flex Equip. Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007). In the prescription drug context, the California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for a failure to warn of knowable risks. *Brown v. Superior Court,* 44 Cal.3d 1049, 1069, 245 Cal.Rptr. 412, 751 P.2d 470 (1988). California Courts have yet to address the liability of distributors and other potential defendants in the commercial chain in prescription drug cases. *See Hamzey v. Bayer Corp.,* 2010 WL 2011529, at \*3–4 (S.D.Cal. May 19, 2010) (recognizing that there is no well-established law in California that creates an exception in strict liability for distributors in prescription drug cases); *Andrews v. Bayer Corp.,* 2010 WL 234808, at \*3 (C.D.Cal. Jan.12, 2010) (stating that "no California court has ever held that distributors of pharmaceuticals are exempt from the general rule of strict liability for failure to warn"). However, given that a plaintiff's failure to state a cause of

action in the context of a motion to remand must be "obvious according to the settled rules of the state,"*McCabe,* 811 F.2d at 1339, this Court cannot say that a cause of action for strict liability against a prescription drug distributor or others in the chain of distribution is not viable under California law. *See Little v. Purdue Pharma, L.P.,* 227 F.Supp.2d 838, 849 (S.D.Cal.2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts").

Defendants maintain that plaintiffs have failed to state a claim against McKesson under California law because plaintiffs' allegation that McKesson distributed the *Crestor* ingested by plaintiffs is alleged solely "upon information and belief" which is factually insufficient. Under California law, a " 'plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.'"*Doe v. City of Los Angeles,* 42 Cal.4th 531, 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (2007) (quoting *Pridonoff v. Balokovich,* 36 Cal.2d 788, 792, 228 P.2d 6 (1951))."When a plaintiff lacks knowledge and the means of obtaining knowledge of facts material to his or her cause of action because the matters are peculiarly within the knowledge of the adverse party, and the pleader can learn of them only from statements of others, the pleader may plead what he or she believes to be true as a result of information (hearsay) the pleader has received."*Dey v. Cont'l Cent. Credit,* 170 Cal.App.4th 721, 725 n. 1, 88 Cal.Rptr.3d 241 (2008) (internal quotation marks omitted). A plaintiff may not allege facts "upon information and belief" when he has reason to know them directly. *See City of Santa Cruz v. Mun. Court,* 49 Cal.3d 74, 87, 260 Cal.Rptr. 520, 776 P.2d 222 (1989) (recognizing that "courts have long held that affidavits on information and belief may be sufficient in a variety of contexts where the facts would otherwise be difficult or impossible to establish"); *Searcy v. Hemet Unified Sch. Dist.,* 177 Cal.App.3d 792, 802, 223 Cal.Rptr. 206 (1986) ("facts that are ascertainable from public records may not properly be pleaded on information and belief"); *Thompson v. Sutton,* 50 CA.2d 272, 279, 122 P.2d 975 (1942) (holding that whether plaintiff owns an easement is a fact "peculiarly within the knowledge of the party" and thus, cannot be alleged on information and belief).

**\*3** In plaintiffs' response to defendants' interrogatories, plaintiffs explain that they believe McKesson distributed the *Crestor* they ingested because: (1) McKesson's website provides that "McKesson is heavily involved in the

marketing, manufacturing, distributing, testing, and patient-contact aspects of drug distribution," (Doc. 14–1, p. 5:26–6:1), and (2) "McKesson has not denied that it could have distributed the Crestor ingested by Plaintiffs," (Doc. 14–1, p. 6:2–3). The fact that McKesson distributes Crestor and has not denied that it could have distributed the Crestor ingested by plaintiffs does not show that McKesson distributed the Crestor ingested by plaintiffs, especially in light of the fact that from November 2008 until the present AstraZeneca distributed Crestor through thirty six different distributors in the United States (Doc. 1–2, p. 4, ¶ 2).

Nevertheless, whether McKesson distributed the Crestor ingested by plaintiffs is not a fact plaintiffs would have reason to know directly. Information regarding the identity of the pharmacy or health care facility where plaintiffs obtained the Crestor is within plaintiffs' knowledge. However, whether McKesson distributed the drug to the pharmacy or health care facility is information plaintiffs would have to obtain from McKesson or a third party, *i.e.,* the pharmacy or health care facility. Thus, this is not information within plaintiffs' personal knowledge. *See Doe,* 42 Cal.4th at 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (recognizing that a "plaintiff may allege on information and belief any matters that are not within his personal knowledge"). Accordingly, this Court cannot say that it is obvious under California law that plaintiffs' allegations based "upon information and belief" are insufficient to state a claim under California law. *See McCabe,* 811 F.2d at 1339 (in order to show fraudulent joinder plaintiff's failure to state a cause of action against the resident defendant must be obvious according to the settled rules of the state).

Defendants further argue that under *Bockrath v. Aldrick Chem. Co., Inc.,* 21 Cal.4th 71, 86 Cal.Rptr.2d 846, 980 P.2d 398 (1999), plaintiffs were required to name McKesson as a Doe defendant because under *Bockrath* plaintiffs are required to name Doe defendants where they do not have sufficient evidence to support their allegation that a particular defendant manufactured or supplied the injury causing product. *Id.* at 81, 86 Cal.Rptr.2d 846, 980 P.2d 398. Although defendants correctly articulate the holding in *Bockrath,* defendants fail to explain how this holding interplays with the general rule that a "plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true." *Doe,* 42 Cal.4th at 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (internal quotation marks omitted).

Given that plaintiffs' alleged failure to state a cause of action against McKesson is not "obvious according to the settled rules of the state," *McCabe,* 811 F.2d at 1339, coupled with the fact that any doubts about removal are to be resolved in favor of remand, *Gaus,* 980 F.2d at 566, this Court GRANTS plaintiffs' motion to remand. [2]

### CONCLUSION AND ORDER

**\*4** For the reasons discussed above, this Court:

1. VACATES the May 31, 2012, hearing or oral argument, pursuant to Local Rule 230(g) and

2. GRANTS plaintiffs' motion to remand.

3. This action is REMANDED to the Fresno County Superior Court of California, for all further proceedings. This order terminates this action in its entirety. The clerk is directed to close this action.

IT IS SO ORDERED.

Footnotes

1    The following entities will be referred to collectively as "AstraZeneca": (1) AstraZeneca LP; (2) AstraZeneca Pharmaceuticals LP, the general partner of AstraZeneca LP; (3) AstraZenecalp, the general partner of AstraZeneca LP and AstraZeneca Pharmaceuticals LP; and (4) AstraZeneca PLC.

2    In light of the Court's decision, and defendants' concession that they never argued as a basis for removal that plaintiffs were fraudulently joined, there is no need to address plaintiffs' joinder and learned intermediary arguments.

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2011529

2010 WL 2011529
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. California.

Paula HAMZEY, Plaintiff,

v.

BAYER CORPORATION; Bayer Healthcare
Pharmaceuticals Inc.; Bayer Healthcare LLC;
Berlex Laboratories International Inc.; Bayer
Schering Pharma AG; Bayer AG; Schering
AG; McKesson Corporation, Defendants.

No. 10cv0526 JM(CAB).   |   May 19, 2010.

**Attorneys and Law Firms**

Raymond P. Boucher, Helen E. Zukin, Kiesel Boucher & Larson, Beverly Hills, CA, for Plaintiff.

Catherine Marie Valerio Barrad, Brendan P. Sheehey, Sidley Austin, Los Angeles, CA, Julie E. Schwartz, Squire Sanders & Dempsey LLP, San Francisco, CA, for Defendants.

**ORDER DENYING MOTION TO STAY;
GRANTING MOTION TO REMAND;
DENYING REQUEST FOR COSTS AND FEES**

JEFFREY T. MILLER, District Judge.

*1 Defendants Bayer Corporation, Bayer HealthCare LLC, and Bayer HealthCare Pharmaceuticals Inc. (collectively "Bayer") move to stay this proceeding pending transfer by the Judicial Panel on Multidistrict Litigation ("JPMDL") to MDL 2100. Plaintiff Paula Hamzey opposes the motion to stay and separately moves to remand this action to state court and requests an award of fees and costs associated with the filing of the motion to remand this action. Bayer and McKesson Corporation ("McKesson") oppose the motion to remand. Defendants Berlex Laboratories International, Bayer Schering Pharma AG, Bayer AG, and Schering AG have not filed a response to the motions. For the reasons set forth below, the court denies the motion to stay, grants the motion to remand, and denies the motion for an award of fees and costs.

**BACKGROUND**

On December 24, 2009, Plaintiff commenced this personal injury action in the Superior Court of California, County of San Diego. (Notice of Removal ¶ 1). The complaint alleges ten state law causes of action arising from the central allegation that Plaintiff's injuries were caused by her use of Yasmin, a prescription medication manufactured by Bayer and distributed by McKesson in California. (Weitz Decl. ¶ 3). Plaintiff alleges that use of the oral contraceptive Yaz/Yasmin caused, among other things, pancreatitis and gallbladder disease. [1]

On March 11, 2010, Bayer removed the action to this court based upon diversity jurisdiction under 28 U.S.C. § 1332. In order to allege diversity jurisdiction, Bayer argues that McKesson, a California citizen with its principal place of business in California, was fraudulently joined as a Defendant to prevent the court from exercising removal jurisdiction over the action. (Notice of Removal ¶ 15). Defendants Berlex Laboratories International Inc., Bayer Schering Pharma AG, Bayer AG and Schering AG have yet to be served, id. ¶ 7, and therefore have not taken any position with respect to removal. The only other defendant, McKesson, joins in the Notice of Removal.Id. ¶ 6.

Allegations concerning the marketing, sales practices, and products liability issues are subject to both federal and state consolidated proceedings. On October 1, 2009, the JPMDL ordered the transfer of the Yasmin related actions pending in federal court to the *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL NO. 2100, pending in the United States District Court for the Southern District of Illinois. On March 16, 2010 the Bayer Defendants filed with the JPMDL a notice identifying this action as a tag-along action and on April 1, 2010 this court received a conditional transfer order to the JPMDL panel. Plaintiff opposes transfer to the JPMDL. Until the receipt of the final transfer order, this court retains jurisdiction to decide all issues.

On January 11, 2010 the "Yaz, Yasmin and Ocella Contraceptive Cases" were coordinated by the state of California JCCP and assigned to Judge Carolyn Kuhl, Los Angles County Superior Court. According to Plaintiff,

coordinated state judicial efforts have also commenced in New Jersey and Pennsylvania.

**\*2** Bayer moves to stay this action pending transfer to the MDL and Plaintiff moves to remand the action to state court where it will be coordinated with "hundreds of other actions already coordinated in the State of California."(Motion to Remand at pp. 1:21–2:1).

## DISCUSSION

### The Motion to Stay

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Notwithstanding, a stay is an extraordinary remedy to be granted sparingly where the applicant makes a strong showing of success on the merits and demonstrates an irreparable injury. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The court also considers injuries to other interested parties and the public interest. *Id.*

In so many words, Bayer argues that it is in the interests of wise judicial administration to stay this action. Bayer argues that a stay will advance the purposes of the MDL, further judicial economy, eliminate the potential for conflicting pretrial rulings, "ensure that this action proceeds in an orderly, coordinated fashion under the direction of the MDL Court and will facilitate the MDL's efficient, uniform resolution of pretrial issues common to all coordinated Yasmin/YAZ cases."(Motion to Stay at p. 3:18–20). Bayer also cites several district court cases in the Northern and Central Districts of California that have stayed similar actions under nearly identical circumstances pending transfer to the MDL panel. While appealing, Bayer's arguments give short shrift to the court's subject matter jurisdiction.

Bayer seeks to stay this action prior to the court deciding the threshold issue of the court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94,

118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, federal courts are under a continuing duty to confirm their jurisdictional power and are even "obliged to inquire *sua sponte* whenever a doubt arises as to [its] existence...."*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (citations omitted).

Here, for the below-stated reasons, the court concludes that it lacks subject matter jurisdiction. Accordingly, the court lacks the power to grant the relief requested by Bayer. The only option available to this court is to remand the action to state court.

### The Motion to Remand

A civil action brought in state court may be removed to federal court by a defendant when federal courts have original jurisdiction over the matter. 28 U.S.C. § 1441. Where jurisdiction is based upon diversity of citizenship, joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored, for purposes of determining diversity "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."*McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)."[T]he question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question."*Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1296 (C.D.Cal.2000). The party who invokes federal removal jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Gaus v. Miles, Inc.* 980 F.2d 564, 566 (9th Cir.1992); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981). In determining whether joinder is fraudulent, the court considers the complaint, facts identified in the Notice of Removal and any pertinent affidavits or declarations submitted by the removing party or in rebuttal. *See Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998). Any doubts regarding removal jurisdiction are construed against removal and in favor of remanding the case to state court. *See Gaus,* 980 F.2d at 566.

**\*3** The Complaint alleges that McKesson

> was engaged in the business
> of researching, designing,
> developing, licensing, compounding,
> testing, producing, manufacturing,

assembling, processing, packaging, inspecting, labeling, selling and/or warranting Yasmin/Yaz in the State of California.

(Compl.¶ 13). Further, Plaintiff alleges that McKesson participated in, authorized and directed the production and promotion of Yasmin and that it knew, or should have known, of the increased risk of serious adverse effects. (Compl.¶ 32). Plaintiff also alleges that McKesson failed to properly disclose risks associated with Yazmin, (Compl.¶ 50), and that it failed to properly warn of such risks. (Compl.¶ 52). McKesson also represents that it purchases Yazmin from Bayer and that it distributes the medication to pharmacies, which then sell it to consumers. (Yonko Decl. ¶ 5). Further, Plaintiff's counsel declares that McKesson "is the only California distributor of Yaz/Yasmin of which plaintiff and her counsel are aware."(Zukin Decl. ¶ 3).

Bayer argues that McKesson was fraudulently joined because (1) there is no allegation that Plaintiff actually purchased the medication distributed by McKesson and (2) there is no reasonable probability that a mere distributor of prescription medications could be held liable under California law for Plaintiff's injuries. These arguments are insufficient to establish that McKesson was fraudulently joined as a defendant. First, there is a legitimate inference that Plaintiff, a citizen of California, purchased Yazmin from the distributor of Yazmin in the state of California, McKesson. As noted by Bayer, Plaintiff's complaint is not a model of clarity as it makes numerous group and conclusory pleading allegations. (Compl.¶¶ 33–42, 58, 61–66, 77, 83). However, Plaintiff adequately sets forth a factual basis for her claim that the prescription medication consumed by Plaintiff was distributed by McKesson. Further, Bayer acknowledges that "McKesson purchases Yasmin and then sells the medication to pharmacies," (Oppo at p. 1:13–15). Discovery will permit the parties to determine the contours of the distribution channel. Consequently, this argument is not persuasive. [2]

Second, virtually every court that has considered the precise legal issue now before the court has concluded that California state law recognizes a products claim against a distributor. The general rule in California is that both manufacturers and distributors are strictly liable for injuries caused by a defective product. *Maher v. Novartis Pharmaceuticals Corp.,* 2007 U.S. Dist Lexis 58984 at *7–8, 2007 WL 2330713 (citing *Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007)); *Black v. Merck &*

*Co. Inc.,* U.S. District LEXIS 29860 at *10, 2004 WL 5392660 (C.D.Cal.2004) (strict liability for failure to warn extends beyond manufacturers to retailers and wholesalers); *Andrews v. Bayer Corp.,* Case No. CV 09–08762 DDP (FFMx); *Holland v. Bayer Corp,* CASE No. SACV 09–1350 DOC (RNBx) (finding that Bayer fails to demonstrate that McKesson is fraudulently joined); *Mandernach v. Bayer Corp,* Case No. 5:09–cv02306 JHN (Opx) (same); *Grove v. Bayer Corp,* Case No. SADV 09–1509 AG (MLGx).

**\*4** In *Maher v. Novartis Pharmaceuticals Corp.,* No. 07cv0852 WQH (JMA), Judge Hayes granted the plaintiff's motion to remand an action commenced against a pharmaceutical manufacturer and its distributor, McKesson. The court noted the general rule in California that distributors and other "participants in the chain of distribution" are strictly liable in defective products cases.*Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007). The court then noted:

> This court has been unable to find, nor has either party cited, a case under California law which creates an exception in strict liability for distributors in prescription drug cases. This court cannot conclude that it is obvious that the general rule of distributor liability does not apply under the allegations of this case.

LEXIS U.S. Dist., Lexis 58984 at *12.

While eleven district court cases have remanded improvidently removed actions involving Yaz/Yasmin where McKesson was a named Defendant, *see* Cases Cited Reply at p. 2:7–16, 54 Cal.Rptr.3d 28, one district court case found distributors could not be held strictly liable under the Restatement (Second) of Torts § 402A. *Skinner v. Warner Lambert Co.,* 2003 WL 2558915 (C.D.Cal.2005). The court concludes that this single authority is insufficient to firmly establish that there is no basis for a claim against McKesson.

In light of the authorities cited, the court cannot conclude that there is no basis to state a cause of action against McKesson for distributor liability under well-established state law. Under these circumstances, the court remands the action to state court.

**Motion for Costs and Fees**

Plaintiff moves for an award of costs and fees associated with this motion to remand. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Here, the court denies the motion for an award of costs and fees because several courts have granted motions to stay in actions of similar procedural posture and at least one court has acknowledged that McKesson was a fraudulently joined defendant. *Skinner v. Warner Lambert Co.,* 2003 WL 2558915 (C.D.Cal.2005).

In sum, the court grants the motion to remand for lack of subject matter jurisdiction, denies the motion to stay, and denies the motion for costs and fees.

**IT IS SO ORDERED.**

Footnotes

1    Plaintiff alleges causes of action for negligence, strict products liability, breach of warranty, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and fraud.

2    On May 16, 2010 Bayer submitted a recent additional authority to the court. In *Jankins v. Bayer Corp.,* Case MP/ 10–cv–20095–DRH–PMF, (S.D.Ill, May 14, 2010) the district court found that the complaint at issue there failed to adequately allege that the plaintiff purchased the Yaz/Yasmin from McKesson. (Docket No. 30). The district court then found McKesson fraudulently joined and denied the motion to remand. As set forth above, based upon the complaint's allegations, the Notice of Removal, the evidence submitted by the parties and construing the complaint in the light most favorable to the plaintiff, *Concha v. London,* 62 F.3d 1493, 1500 (9th Cir.1995), *cert. dismissed,* 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996), and accepting as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, *Holden v. Hagopian,* 978 F.2d 1115, 1118 (9th Cir.1992), the court cannot conclude that it is "obvious" that Plaintiff fails to state a claim against McKesson. Moreover, like here, any doubts concerning diversity are construed against the exercise of jurisdiction and in favor of remand. *Gaus,* 980 F.2d at 566.

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2011535
Only the Westlaw citation is currently available.
United States District Court,
S.D. California.

Brandy MANESS, Plaintiff,

v.

BAYER CORPORATION; Bayer Healthcare
Pharmaceuticals Inc.; Bayer Healthcare LLC;
Berlex Laboratories International Inc.; Bayer
Schering Pharma AG; Bayer AG; Schering
AG; McKesson Corporation, Defendants.

No. 10cv0726 JM(CAB).  |  May 19, 2010.

**Attorneys and Law Firms**

Helen E. Zukin, Kiesel Boucher Larson LLP, Beverly Hills, CA, for Plaintiff.

Catherine Marie Valerio Barrad, Brendan P. Sheehey, Sidley Austin, Los Angeles, CA, Julie E. Schwartz, Squire Sanders & Dempsey LLP, San Francisco, CA, for Defendants.

**ORDER DENYING MOTION TO STAY;
GRANTING MOTION TO REMAND;
DENYING REQUEST FOR COSTS AND FEES**

JEFFREY T. MILLER, District Judge.

**\*1** Defendants Bayer Corporation, Bayer HealthCare LLC, and Bayer HealthCare Pharmaceuticals Inc. (collectively "Bayer") move to stay this proceeding pending transfer by the Judicial Panel on Multidistrict Litigation ("JPMDL") to MDL 2100. Plaintiff Brandy Maness opposes the motion to stay and separately moves to remand this action to state court and requests an award of fees and costs associated with the filing of the motion to remand this action. Bayer and McKesson Corporation ("McKesson") oppose the motion to remand. Defendants Berlex Laboratories International, Bayer Schering Pharma AG, Bayer AG, and Schering AG have not filed a response to the motions. For the reasons set forth below, the court denies the motion to stay, grants the motion to remand, and denies the motion for an award of fees and costs.

**BACKGROUND**

On December 24, 2009, Plaintiff commenced this personal injury action in the Superior Court of California, County of San Diego. (Notice of Removal ¶ 1). The complaint alleges ten state law causes of action arising from the central allegation that Plaintiff's injuries were caused by her use of Yasmin, a prescription medication manufactured by Bayer and distributed by McKesson in California. Plaintiff alleges that use of the oral contraceptive Yaz/Yasmin caused, among other things, pancreatitis and gallbladder disease. [1]

On April 7, 2010, Bayer removed the action to this court based upon diversity jurisdiction under 28 U.S.C. § 1332. In order to allege diversity jurisdiction, Bayer argues that McKesson, a California citizen with its principal place of business in California, was fraudulently joined as a Defendant to prevent the court from exercising removal jurisdiction over the action. (Notice of Removal ¶ 15). Defendants Berlex Laboratories International Inc., Bayer Schering Pharma AG, Bayer AG and Schering AG have yet to be served, *id.* ¶ 7, and therefore have not taken any position with respect to removal. The only other served defendant, McKesson, joins in the Notice of Removal. *Id.* ¶ 6.

Allegations concerning the marketing, sales practices, and products liability issues are subject to both federal and state consolidated proceedings. On October 1, 2009, the JPMDL ordered the transfer of the Yasmin related actions pending in federal court to the *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL NO. 2100, pending in the United States District Court for the Southern District of Illinois. On March 16, 2010 the Bayer Defendants filed with the JPMDL a notice identifying this action as a tag-along action and on April 1, 2010 this court received a conditional transfer order to the JPMDL panel. Plaintiff opposes transfer to the JPMDL. Until the receipt of the final transfer order, this court retains jurisdiction to decide all issues.

On January 11, 2010 the "Yaz, Yasmin and Ocella Contraceptive Cases" were coordinated by the state of California JCCP and assigned to Judge Carolyn Kuhl, Los Angles County Superior Court. According to Plaintiff, coordinated state judicial efforts have also commenced in New Jersey and Pennsylvania.

2010 WL 2011535

**\*2**  Bayer moves to stay this action pending transfer to the MDL and Plaintiff moves to remand the action to state court where it will be coordinated with "hundreds of other actions already coordinated in the State of California."(Motion to Remand at pp. 1:21–2:1).

## DISCUSSION

### The Motion to Stay

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Notwithstanding, a stay is an extraordinary remedy to be granted sparingly where the applicant makes a strong showing of success on the merits and demonstrates an irreparable injury. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The court also considers injuries to other interested parties and the public interest. *Id.*

In so many words, Bayer argues that it is in the interests of wise judicial administration to stay this action. Bayer argues that a stay will advance the purposes of the MDL, further judicial economy, eliminate the potential for conflicting pretrial rulings, "ensure that this action proceeds in an orderly, coordinated fashion under the direction of the MDL Court and will facilitate the MDL's efficient, uniform resolution of pretrial issues common to all coordinated Yasmin/YAZ cases."(Motion to Stay at p. 3:18–20). Bayer also cites several district court cases in the Northern and Central Districts of California that have stayed similar actions under nearly identical circumstances pending transfer to the MDL panel. While appealing, Bayer's arguments give short shrift to the court's subject matter jurisdiction.

Bayer seeks to stay this action prior to the court deciding the threshold issue of the court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, federal courts are under a continuing duty to

confirm their jurisdictional power and are even "obliged to inquire *sua sponte* whenever a doubt arises as to [its] existence...."*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (citations omitted).

Here, for the below-stated reasons, the court concludes that it lacks subject matter jurisdiction. Accordingly, the court lacks the power to grant the relief requested by Bayer. The only option available to this court is to remand the action to state court.

### The Motion to Remand

A civil action brought in state court may be removed to federal court by a defendant when federal courts have original jurisdiction over the matter. 28 U.S.C. § 1441. Where jurisdiction is based upon diversity of citizenship, joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored, for purposes of determining diversity "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."*McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)."[T]he question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question."*Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1296 (C.D.Cal.2000). The party who invokes federal removal jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Gaus v. Miles, Inc.* 980 F.2d 564, 566 (9th Cir.1992); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981). In determining whether joinder is fraudulent, the court considers the complaint, facts identified in the Notice of Removal and any pertinent affidavits or declarations submitted by the removing party or in rebuttal. *See Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998). Any doubts regarding removal jurisdiction are construed against removal and in favor of remanding the case to state court. *See Gaus,* 980 F.2d at 566.

**\*3**  The Complaint alleges that McKesson

> was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or

warranting Yasmin/Yaz in the State of California.

(Compl.¶ 13). Further, Plaintiff alleges that McKesson participated in, authorized and directed the production and promotion of Yasmin and that it knew, or should have known, of the increased risk of serious adverse effects. (Compl.¶ 32). Plaintiff also alleges that McKesson failed to properly disclose risks associated with Yazmin, (Compl.¶ 50), and that it failed to properly warn of such risks. (Compl.¶ 52). McKesson also represents that it purchases Yazmin from Bayer and that it distributes the medication to pharmacies, which then sell it to consumers. (Yonko Decl. ¶ 5). Further, Plaintiff's counsel declares that McKesson "is the only California distributor of Yaz/Yasmin of which plaintiff and her counsel are aware."(Zukin Decl. ¶ 3).

Bayer argues that McKesson was fraudulently joined because (1) there is no allegation that Plaintiff actually purchased the medication distributed by McKesson and (2) there is no reasonable probability that a mere distributor of prescription medications could be held liable under California law for Plaintiff's injuries. These arguments are insufficient to establish that McKesson was fraudulently joined as a defendant. First, there is a legitimate inference that Plaintiff, a citizen of California, purchased Yazmin from the distributor of Yazmin in the state of California, McKesson. As noted by Bayer, Plaintiff's complaint is not a model of clarity as it makes numerous group and conclusory pleading allegations. (Compl.¶¶ 33–42, 58, 61–66, 77, 83). However, Plaintiff adequately sets forth a factual basis for her claim that the prescription medication consumed by Plaintiff was distributed by McKesson. Further, Bayer acknowledges that "McKesson purchases Yasmin and then sells the medication to pharmacies," (Oppo at p. 1:13–15). Discovery will permit the parties to determine the contours of the distribution channel. Consequently, this argument is not persuasive. [2]

Second, virtually every court that has considered the precise legal issue now before the court has concluded that California state law recognizes a products claim against a distributor. The general rule in California is that both manufacturers and distributors are strictly liable for injuries caused by a defective product. *Maher v. Novartis Pharmaceuticals Corp.,* 2007 U.S. Dist Lexis 58984 at *7–8, 2007 WL 2330713 (citing *Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007)); *Black v. Merck & Co. Inc.,* U.S. District LEXIS 29860 at* 10, 2004 WL 5392660 (C.D.Cal.2004) (strict liability for failure to warn

extends beyond manufacturers to retailers and wholesalers); *Andrews v. Bayer Corp.,* Case No. CV 09–08762 DDP (FFMx); *Holland v. Bayer Corp,* CASE No. SACV 09–1350 DOC (RNBx) (finding that Bayer fails to demonstrate that McKesson is fraudulently joined); *Mandernach v. Bayer Corp,* Case No. 5:09–cv–02306 JHN (Opx) (same); *Grove v. Bayer Corp,* Case No. SADV 09–1509 AG (MLGx).

**\*4** In *Maher v. Novartis Pharmaceuticals Corp.,* No. 07cv0852 WQH (JMA), Judge Hayes granted the plaintiff's motion to remand an action commenced against a pharmaceutical manufacturer and its distributor, McKesson. The court noted the general rule in California that distributors and other "participants in the chain of distribution" are strictly liable in defective products cases.*Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007). The court then noted:

> This court has been unable to find, nor has either party cited, a case under California law which creates an exception in strict liability for distributors in prescription drug cases. This court cannot conclude that it is obvious that the general rule of distributor liability does not apply under the allegations of this case.

LEXIS U.S. Dist., Lexis 58984 at *12, 2007 WL 2330713.

While eleven district court cases have remanded improvidently removed actions involving Yaz/Yasmin where McKesson was a named Defendant, see Cases Cited Reply at p. 2:7–16, 54 Cal.Rptr.3d 28, one district court case found distributors could not be held strictly liable under the Restatement (Second) of Torts § 402A. *Skinner v. Warner Lambert Co.,* 2003 WL 25598915 (C.D.Cal.2003). The court concludes that this single authority is insufficient to firmly establish that there is no basis for a claim against McKesson.

In light of the authorities cited, the court cannot conclude that there is no basis to state a cause of action against McKesson for distributor liability under well-established state law. Under these circumstances, the court remands the action to state court.

**Motion for Costs and Fees**

Plaintiff moves for an award of costs and fees associated with this motion to remand. "Absent unusual circumstances,

courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Here, the court denies the motion for an award of costs and fees because several courts have granted motions to stay in actions of similar procedural posture and at least one court has acknowledged that McKesson was a

fraudulently joined defendant. *Skinner v. Warner Lambert Co.,* 2003 WL 25598915 (C.D.Cal.2003).

In sum, the court grants the motion to remand for lack of subject matter jurisdiction, denies the motion to stay, and denies the motion for costs and fees.

**IT IS SO ORDERED.**

---

Footnotes

1    Plaintiff alleges causes of action for negligence, strict products liability, breach of warranty, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and fraud.

2    On May 16, 2010 Bayer submitted a recent additional authority to the court. In *Jankins v. Bayer Corp.,* Case MP/ 10–cv–20095–DRH–PMF, (S.D.Ill, May 14, 2010) the district court found that the complaint at issue there failed to adequately allege that the plaintiff purchased the Yaz/Yasmin from McKesson. (Docket No. 30). The district court then found McKesson fraudulently joined and denied the motion to remand. As set forth above, based upon the complaint's allegations, the Notice of Removal, the evidence submitted by the parties and construing the complaint in the light most favorable to the plaintiff, *Concha v. London,* 62 F.3d 1493, 1500 (9th Cir.1995), *cert. dismissed,* 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996), and accepting as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, *Holden v. Hagopian,* 978 F.2d 1115, 1118 (9th Cir.1992), the court cannot conclude that it is "obvious" that Plaintiff fails to state a claim against McKesson. Moreover, like here, any doubts concerning diversity are construed against the exercise of jurisdiction and in favor of remand. *Gaus,* 980 F.2d at 566.

---

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 532537
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
C.D. California.

Stephanie MANDERNACH, Plaintiff,

v.

BAYER CORPORATION et. al., Defendants.

No. 5:09-cv-02306-JHN-OPx.   |   Feb. 8, 2010.

**Attorneys and Law Firms**

Kristin Marie Lucey, Luke Ellis, Gillin, Jacobson, Ellis and Larsen, Orinda, CA, Mark P. Robinson, Jr., Robinson, Calcagnie & Robinson, Newport Beach, CA, for Plaintiff.

David A. Gabianelli, Julie Erin Schwartz, Mark C. Goodman, Squire, Sanders & Dempsey, San Francisco, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DISMISSING AS MOOT DEFENDANTS' MOTION TO STAY CASE

JACQUELINE H. NGUYEN, District Judge.

**\*1** On February 8, 2010, the Court held a hearing on Plaintiff Stephanie Mandernach's ("Plaintiff") Motion to Remand Case to San Bernardino County Superior Court (docket no. 9), and Defendant Bayer Corporation, Bayer Healthcare LLC, and Defendant Bayer Healthcare Pharmaceuticals Inc.'s ("Bayer Defendants") Motion to Stay Case Pending Transfer By The Judicial Panel on Multi district Litigation ("Motion to Stay," docket no. 13). The Court has read and considered the moving, opposing, and reply documents submitted in connection with these motions. For the reasons set forth below, Plaintiff's Motion to Remand Case is GRANTED and Bayer Defendants' Motion to Stay is DISMISSED as MOOT. This matter is hereby REMANDED to the San Bernardino County Superior Court.

## I. FACTS AND LEGAL PROCEEDINGS

On or about November 27, 2007, Plaintiff suffered a stroke resulting in permanent physical deficits and sequelea. (Compl., ¶ 30). During this time period, Plaintiff was using an oral contraceptive known as Yaz or Yasmin ("Yaz"). (Compl., ¶¶ 5, 6). Plaintiff filed suit in San Bernardino County Superior Court on November 19, 2009, against Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer HealthCare LLC, Berlex Laboratories, Bayer Schering Pharma AG, Bayer AG, Bayer HealthCare Pharmaceuticals Inc., Berlex, Inc. and Berlex Laboratories, Inc. and McKesson. Plaintiff alleged that "Defendants designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold" Yaz and that their failure to warn about risks associated with the product were the proximate cause of her injury. (Compl., ¶¶ 6, 31, 32). Plaintiff's complaint contained the following California state law causes of action: Strict Liability-Failure to Warn; Strict Liability-Manufacturing Defect; Negligence; Breach of Implied Warranty; Breach of Express Warranty; Deceit by Concealment-California Civil Code §§ 1709, 1710; Negligent Misrepresentation; Violation of California Business & Professions Code § 17200; Violation of California Business & Professions Code § 17500; and Violation of California Civil Code §§ 1750 et. seq.

Bayer Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1441 on December 21, 2009 on the grounds that "[c]omplete diversity exists, no properly joined Defendant is a citizen of the State of California" because "McKesson Corporation is fraudulently joined and therefore is not required to join in the removal."(Docket no. 1, ¶ 2, 6). Plaintiff timely filed a Motion to Remand on December 23, 2009. (Docket no. 9). While this motion was pending, Bayer Defendants filed a Motion to Stay. (Docket no. 13). Plaintiff filed an opposition to this motion on January 11, 2009. (Docket no. 17). Bayer Defendants filed an opposition to the Motion to Remand and request for oral argument on January 14, 2010. (Docket no. 21).

## II. DISCUSSION

### A. The Motion to Remand

### 1. Legal Standard

Removal to federal court is governed by 28 U.S.C. § 1441, which in relevant part states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed

by the defendant or the defendants[.]"28 U.S.C. § 1441(a). The Court may remand a case to state court for lack of subject matter jurisdiction or defects in removal procedure. 28 U.S.C. § 1447(c)."The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction."*U.S. v. Marks,* 530 F.3d 799, 810 (9th Cir.2008). Federal courts "strictly construe a removal statute against removal jurisdiction."*Oregon Bureau of Labor and Industries ex rel. Richardson v. U.S. West Communications, Inc.,* 288 F.3d 414, 417 (9th Cir.2002). Removal based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001).

**2. Fraudulent Joinder**

**\*2** Removal is not permitted where one of the defendants "is a citizen of the State in which such action is brought."28 U.S.C. § 1441(b). However, "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.' "*Morris,* 236 F.3d at 1067."If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent and 'the defendant's presence in the lawsuit is ignored for purposes of determining diversity.'"*United Computer Systems, Inc. v. AT & T Corp.,* 298 F.3d 756, 762 (9th Cir.2002) (quoting *Morris,* 236 F.3d at 1067).

Bayer Defendants contend that Defendant McKesson Corporation-a Delaware corporation with its principal place of business at One Post Street, San Francisco, California-is fraudulently joined for three independent reasons: (1) Plaintiff fails to allege that McKesson supplied the medication that she specifically ingested, an element essential to establishing that McKesson proximately caused Plaintiff's alleged injuries; (2) there is no reasonable basis for a claim against a distributor of FDA-approved medication where the distributor did not manufacture or design the product; and (3) the allegations against McKesson are lumped together with those against the alleged pharmaceutical manufacturer and include numerous allegations that do not apply to McKesson. (Notice of Removal, ¶ 26).

*Alleged Deficiencies in Plaintiff's Complaint*

Bayer Defendants acknowledge that many courts have held that McKesson was not fraudulently joined in other products liability actions. *See, e.g., Maher v. Novartis Pharms.,* No. 07CV852 WQH (JMA), 2007 WL 2330713 (S.D.Cal. Aug.13, 2007); *Martin v. Merck & Company, Inc.,* No. S-05-750 LKK/PAN, 2005 WL 1984483 (E.D.Cal. Aug.15, 2005); *Aaron v. Merck & Co., Inc.,* No. CV 05-4073 JFWMANx, 2005 WL 5792361 (C.D.Cal. July 26, 2005); *Black v. Merck & Co., Inc.,* No. CV 03-8730 NMAJWx, 2004 WL 5392660 (C.D.Cal. March 3, 2004); *In re Fosamax Prods. Liab. Litig.,* No. 1:06-MD-1789 (JFK), 2008 WL 2940560 (S.D.N.Y. July 29, 2008). Bayer Defendants attempt to distinguish this matter from the cases cited because of the generality of Plaintiff's complaint. Bayer Defendants quote Plaintiff's allegation that *"Defendants* designed, developed, manufactured, promoted, marketed distributed, tested, warranted and sold" the medication. (Emphasis added by Bayer Defendants.) Whereas in *Maher,* for example, "Plaintiff allege[d] that Defendants Novartis and Mckesson, or their representatives, 'manufactured, marketed, distributed and sold' Tegretol to Plaintiff."*Maher,* 2007 WL 2330713, at \*1. While perhaps Plaintiff could have aimed for more precision in their pleadings, McKesson was nevertheless listed as one of the "Defendants." (Compl.¶ 25). The Complaint explained that McKesson's liability "is so intertwined with the liability of the other Defendants ... that no claims arising out of use of the [Yaz] can be severed or removed."(Compl., ¶ 86.) Furthermore, Plaintiff alleged that McKesson "[a]t all times relevant ... was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting [Yaz] in the State of California."(Compl.¶ 23.) "Doubt arising from inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand."*Charlin v. Allstate Ins. Co.,* 19 F.Supp.2d 1137, 1140 (C.D.Cal.1998). The Court resolves this pleading ambiguity in favor of Plaintiff because the complaint draws a sufficient connection between McKesson's role as distributor and Plaintiff's injury.

*Supplier Liability*

**\*3** Bayer Defendants contend that "there is no reasonable basis for a claim against a supplier of FDA-approved medication where the supplier did not manufacture or design the product" and that "[t]his conclusion is consistent with the well-established rule in California, and around the country, that pharmacists are not liable for dispensing FDA-approved prescription medications."(Notice of Removal ¶ 28). Bayer

2010 WL 532537

Defendants rely on the following holding in *Murphy v. E.R. Squibb & Sons, Inc.,* 40 Cal.3d 672, 680-81, 221 Cal.Rptr. 447, 710 P.2d 247 (1985): "If pharmacies were held strictly liable for the drugs they dispense, some of them, to avoid liability, might restrict availability by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients."However, this argument fails because *Murphy* addresses pharmacies and pharmacists, not commercial distributors like McKesson. Bayer Defendants also ignore the California products liability doctrine that "imposes strict liability in tort on *all of the participants* in the chain of distribution of a defective product."*Bostick v. Flex Equip. Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007) (emphasis added); *see also, Black* 2004 WL 5392660, at \*4 (rejecting removal argument that "[p]laintiffs cite no case holding a pharmaceutical supplier like McKesson liable for distributing an FDA-approved medication").

In addition to Bayer Defendants' failure to establish fraudulent removal, their Notice of Removal does not sufficiently prove the requisite amount in controversy.

### 3. Amount in Controversy

Removal on the basis of diversity jurisdiction pursuant to 28 U.S .C. § 1332(a), requires that the amount in controversy exceed $75,000. The amount of damages Plaintiff seeks is unclear from the complaint and defendants bear the burden of "proving the *facts* to support jurisdiction, including the jurisdictional amount .... by a preponderance

of evidence."*Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir.1992) (emphasis added and removed). A "mere averment" that the amount in controversy exceeds $75,000 is insufficient.*Id.* at 567.Neither does an allegation based on information and belief constitute proof by a preponderance of the evidence. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir.2004)."If the amount in controversy is not clear on the face of the complaint ... defendant must ... submit summary-judgment type evidence to establish that the actual amount in controversy exceeds $75,000."*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp.2d 993, 1001 (C.D.Cal.2002) (quotations omitted). Bayer Defendants' Notice of Removal does not prove facts to support the amount in controversy, but rather makes a conclusory statement that the severity of Plaintiff's injuries and the request for punitive damages constitute a "good faith" basis for the amount in controversy. (Notice of Removal, ¶ 20). Bayer Defendants have presented no evidence or facts either as to the amount of damages sought or likely to be awarded.

**\*4** For the foregoing reasons, this action is REMANDED to the San Bernardino County Superior Court. *See,*28 U.S.C. § 1447(c).

### B. The Motion to Stay

Because this case is not subject to federal jurisdiction, Bayer Defendants' Motion to Stay Proceedings is DISMISSED as MOOT.

IT IS SO ORDERED.

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Andrews v. Bayer Corp., Not Reported in F.Supp.2d (2010)

2010 WL 234808

2010 WL 234808
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
C.D. California.

Sudria ANDREWS, Plaintiff,

v.

BAYER CORPORATION, Bayer Healthcare
Pharmaceuticals Inc.; Bayer Healthcare, LLC;
McKesson Corporation Corporation, Defendants.

No. CV 09-08762 DDP (FFMx).   |   Jan. 12, 2010.

**Attorneys and Law Firms**

Adriana Suarez, Steven J. Skikos, Skikos Crawford Skikos Joseph & Millican LLP, Mark G. Crawford, Lopez Hodes Restaino Milman Skikos & Polos, San Francisco, CA, for Plaintiff.

David A. Gabianelli, Julie Erin Schwartz, Mark C. Goodman, Squire Sanders & Dempsey LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANTS' MOTION TO STAY**

DEAN D. PREGERSON, District Judge.

 **\*1** This matter comes before the Court on (1) a Motion to Stay Proceedings Pending Transfer by the Judicial Panel on Multidistrict Litigation to MDL 2100 filed by the defendants Bayer Corporation, Bayer Healthcare LLC, and Bayer Healthcare Pharmaceuticals, Inc. (the "Bayer Defendants") and (2) a Motion to Remand filed by the plaintiff Sudria Andrews ("Plaintiff"). Having reviewed the papers submitted by the parties, the Court GRANTS the motion to remand, DENIES as moot the motion to stay, and adopts the following Order.

**I. BACKGROUND**

Plaintiff filed suit in Los Angeles Superior Court on October 31, 2007, alleging that she suffered a pulmonary embolism as a proximate result of ingesting Yasmin, an oral contraceptive created and produced for public consumption by the Bayer Defendants and distributed by McKesson Corporation ("McKesson"). (Compl.¶¶ 4-18.) Plaintiff is a California citizen who resides in Los Angeles County. (*Id.* ¶ 3.) None of the Bayer Defendants is a citizen of California for purposes of diversity jurisdiction. [1] (Notice of Removal ¶ 8.) McKesson is a Delaware corporation with its principal place of business in California. (*Id.* ¶ 9.) On November 25, 2009, the Bayer Defendants removed to this Court, arguing that McKesson was fraudulently joined in order to defeat removal and that its citizenship should therefore be disregarded for purposes of diversity jurisdiction. (*Id.* ¶ 16.)

On October 1, 2009, the Judicial Panel on Multidistrict Litigation established MDL No. 2100,*In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation.*The Bayer Defendants identified this action as a potential "tag-along" to MDL No. 2100, and a conditional transfer order was filed on December 17, 2009. Plaintiff filed an opposition to the conditional transfer order on January 4, 2010.

On December 8, 2009, the Bayer Defendants filed a motion to stay all proceedings in this action and to vacate all existing dates and deadlines pending transfer of this action to MDL No. 2100.On December 17, 2009, Plaintiff filed a motion to remand, arguing that there is no diversity jurisdiction because McKesson, a properly joined defendant, is a California corporation.

**II. DISCUSSION**

"[F]ederal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues."*Potter v. Hughes,* 546 F.3d 1051, 1061 (9th Cir.2008). The Supreme Court has held that "engaging subject-matter jurisdiction at the outset of a case is often the most efficient way of going," and that in removal actions "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first."*Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 587-88, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (internal quotation marks and citation omitted). The Court therefore addresses the motion to remand prior to the motion to stay. [2]

**A. Legal Standard**

2010 WL 234808

 **\*2** A defendant who seeks to remove a case from state to federal court has the burden of establishing federal subject matter jurisdiction. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Furthermore, courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). Removal is governed by substantive and procedural requirements. Pursuant to 28 U.S.C. § 1441(a), an action brought in state court may be removed to federal court if the civil action is one "of which the district courts of the United States have original jurisdiction."

Section 1332 provides that district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs and is between citizens of different States." 28 U.S.C. § 1332(a) (1). Complete diversity of citizenship is required, meaning each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

Nevertheless, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.' " *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001). "Fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998). "[T]here is a general presumption against fraudulent joinder," *Hamilton Materials, Inc. v. Dow Chemical Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007), but fraudulent joinder will be found "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to settled rules of the state." *Ritchey,* 139 F.3d at 1318.

The party asserting fraudulent joinder bears the burden of proof, *United Computer Systems, Inc. v. AT & T Corp.,* 298 F.3d 756, 763 (9th Cir.2002), and remand must be granted unless the defendant establishes that there is no possibility that the plaintiff could prevail on any cause of action it asserted against the non-diverse defendant. *See Levine v. Allmerica Financial Life Ins. & Annuity Co.,* 41 F.Supp.2d 1077, 1078 (C.D.Cal.1999).

**B. Analysis**

The Bayer Defendants assert that diversity jurisdiction exists because McKesson, the only non-diverse defendant named in the Complaint, was fraudulently joined. First, the Bayer Defendants argue that Plaintiff's claims against McKesson are not cognizable under California law. Second, they argue that, even if a claim could stand against McKesson, the Complaint fails to plead sufficient facts against McKesson.

**1.** *Cognizable Cause of Action*

The Bayer Defendants assert that Plaintiff's claims against McKesson are based on a failure to warn about the purported risks of Yasmin. According to the Bayer Defendants, this claim necessarily fails because California law does not impose a duty to warn on pharmaceutical distributors.

 **\*3** It is a well-settled principle of California law that manufacturers of prescription drugs are strictly liable for a failure to warn. *Carlin v. Superior Court,* 13 Cal.4th 1104, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (Cal.1996). The general rule in California is that strict liability for failure to warn runs to distributors as well as manufacturers. *Anderson v. Owens-Corning Fiberglas Corp.,* 53 Cal.3d 987, 281 Cal.Rptr. 528, 810 P.2d 549, 552 (Cal.1991). Retailers are also strictly liable for a failure to warn. *Soule v. Gen. Motors Corp.,* 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298, 303 (Cal.1994).

The Bayer Defendants nevertheless argue that the general rule does not apply to distributors when the product at issue is a pharmaceutical product. In support of this argument, they point out that pharmacists are not subject to liability based upon a failure to warn theory. *See, e.g., Murphy v. E.R. Squibb & Sons, Inc.,* 40 Cal.3d 672, 221 Cal.Rptr. 447, 710 P.2d 247, 252 (Cal.1985). Although McKesson is not a pharmacist, the Bayer Defendants argue that the rationale for exempting pharmacists from strict liability applies equally to distributors. The Bayer Defendants cite no California authority supporting this position, instead arguing that exempting pharmaceutical distributors from strict liability for failure to warn is good public policy. (*See* Opp'n to Pl.'s Mot. to Remand 8:11-14 (noting that the same reasoning that applies to pharmacies' exemption from strict liability should apply to distributors because "if McKesson and other distributors that supply pharmacies with FDA-approved medications were strictly liable, they, too, might restrict the availability of such medications").)

However, California's public policy rationale for exempting pharmacists from strict liability is that they provide services. *Murphy,* 221 Cal.Rptr. 447, 710 P.2d at 251 ("A key factor [justifying the exemption] is that the pharmacist who fills a prescription ... is providing a service to the doctor and acting as an extension of the doctor in the same sense as a technician

who takes an X-ray or analyzes a blood sample on a doctor's order."). Unlike pharmacists, McKesson does not provide the public with an analogous service. Furthermore, the Bayer Defendants' reliance on public policy is a essentially a concession that such a cause of action is not currently barred under California law.

Because no California court has ever held that distributors of pharmaceuticals are exempt from the general rule of strict liability for failure to warn, the Bayer Defendants have failed to carry their burden of establishing that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to settled rules of the state." *Ritchey,* 139 F.3d at 1318.

**2.** *Pleading Deficiencies*

Alternatively, the Bayer Defendants argue that Plaintiff's motion should be denied because the Complaint fails to allege specific facts showing that McKesson is connected to the actual pills Plaintiff ingested. (Opp'n to Pl.'s Mot. to Remand 3:18-20.) They also assert that the Complaint " 'lump[s]' McKesson with the Bayer Defendants, making vague allegations against 'Defendants' generally rather than directing the allegations against any specific defendant or defendants in particular."(*Id.* 5:4-8.)

**\*4** Under California law, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language."*Cal.Code Civ. P. § 425.10*(a)(1). This requires "only general allegations of ultimate fact. The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim."*McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227, 238 (Ct.App.2006) (internal citations omitted). In order to prevail on a strict liability cause of action, the plaintiff must establish that

the defendant's failure to warn "was a legal cause of the injury."*Torres v. Xomox Corp.,* 49 Cal.App.4th 1, 56 Cal.Rptr.2d 455, 465 (Ct.App.1996)

The Complaint alleges that "McKesson supplies Defendant's prescription drugs Yasmin and Yaz to health care providers in California" and that "McKesson had supply agreements to distribute the prescription birth control pills Yasmin and Yaz to the health care providers of Plaintiff."(Compl.¶ 13.) Plaintiff alleges "damages associated with her ingestion" of Yasmin and that she was diagnosed with a pulmonary embolism as a "direct result of her use of Yasmin."(*Id.* ¶ 19, 56 Cal.Rptr.2d 455.)Furthermore, the Bayer Defendants acknowledge that "[a]s relevant to the plaintiff's claims in this case, McKesson purchases YAZ, Yasmin, and Ocella from the Bayer Defendants and sells the medications to pharmacies." [3] (Opp'n to Pl.'s Mot. to Remand, Yonko Decl. ¶ 5.)

Plaintiff's allegations that McKesson supplied Yasmin to pharmacies in California and that it had a supply agreement with Plaintiff's health care provider are sufficient to "apprise[ ] the defendant[s] of the factual basis for the plaintiff's claim."*McKell,* 49 Cal.Rptr.3d at 238 (internal citations omitted). Because Plaintiff has properly alleged a viable cause of action against McKesson, the Bayer Defendants have not carried their burden of establishing that the joinder of McKesson was fraudulent.

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand and DENIES as moot the Bayer Defendants' motion to stay.

IT IS SO ORDERED.

Footnotes

1  Bayer Corporation is an Indiana corporation, with its principal place of business in Pennsylvania. (Notice of Removal ¶ 8.) Bayer HealthCare Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business in New Jersey. (*Id.*) Bayer HealthCare LLC is a Delaware limited liability company whose sole member is Bayer Corporation, meaning that it is a citizen of Indiana and Pennsylvania for diversity purposes. (*Id.*)

2  Some district courts within the Ninth Circuit follow a test set forth in *Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1049 (E.D.Wis.2001), which indicates that the court should consider a motion to stay prior to a motion to remand "only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred [to an MDL venue] ...." Under this approach, it is appropriate to address the motion to remand prior to the motion to stay because the jurisdictional issue is straightforward.

**Andrews v. Bayer Corp., Not Reported in F.Supp.2d (2010)**

2010 WL 234808

3    Courts may look beyond the pleadings and examine the factual record in order to determine whether a non-diverse defendant has been fraudulently joined. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

**End of Document**         © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2477389
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Carol MOORHOUSE and
James Moorhouse, Plaintiffs,
v.

BAYER HEALTHCARE PHARMACEUTICALS,
INC.; Bayer Healthcare LLC; General Electric
Company; GE Healthcare, Inc.; Covidien, Inc.;
Mallinckrodt, Inc.; Bracco Diagnostics, Inc.;
McKesson Corporation; Merry X-Ray Chemical
Corp; and Does 1 through 35, Defendants.

No. 08-01831 SBA. | Docket
Nos. 17, 21. | June 18, 2008.

**Attorneys and Law Firms**

Debra Irwin Decarli, Lawrence J. Gornick, Levin, Simes, Kaiser & Gornick LLP, San Francisco, CA, for Plaintiffs.

Stephanie Achsah Hingle, Deborah C. Prosser, Kutak, Rock LLP, Aggie Byul Lee, Tucker, Ellis & West LLP, Los Angeles, CA, Frank C. Rothrock, Thomas Andrew Woods, Shook, Hardy & Bacon, Irvine, CA, Rodney Michael Hudson, Esq., Drinker, Biddle & Reath LLP, Michael L. Fox, Charles Todd Sheldon, Marc Brainich, Sedgwick, Detert, Moran & Arnold LLP, Galen Driscoll Bellamy, Skadden, Arps, Slate, Meagher & Flom LLP, San Francisco, CA, for Defendants.

**ORDER**

SAUNDRA BROWN ARMSTRONG, District Judge.

**\*1** Currently before the Court is Plaintiffs' Motion to Remand [Docket No. 17]. Opposition memoranda have been filed by defendants General Electric Company and GE Healthcare Inc. [Docket No. 32] and defendant Bracco Diagnostics Inc. [Docket No. 37]. Plaintiffs have filed a reply [Docket No. 39]. Defendant Bracco Diagnostics Inc. has also filed an Application for Leave to File a Sur-Reply [Docket No. 40].

Also before the Court is defendants General Electric Company's and GE Healthcare Inc's Application to Stay all Proceedings Pending Transfer to MDL [Docket No.

21].[1] Plaintiffs have filed an opposition [Docket No. 31]. Defendants Electric Company and GE Healthcare Inc have filed a reply [Docket No. 38].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing pursuant to Rule 78(b).

**BACKGROUND**

Plaintiff Carol Moorhouse allegedly suffers from Nephrogenic Systemic Fibrosis, an incurable and life-threatening disease. She allegedly contracted the disease as a result of receiving gadolinium based contrast agents ("GBCA") in connection with MRI and MRA procedures. The GBCAs were allegedly manufactured by General Electric Company, GE Healthcare Inc. (collectively "GE"), Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC ("Bayer"), Covidien Inc., Mallinckrodt, Inc., and Bracco Diagnostics Inc., and distributed by McKesson Corporation ("McKesson") and Merry X-Ray Chemical Corporation ("Merry X-Ray").

On March 5, 2008, Plaintiffs Carol Moorhouse and James Moorhouse ("Plaintiffs" or "Moorhouse") filed a complaint in the Superior Court of California, San Francisco County captioned as *Moorhouse, et al. v. Bayer Healthcare Pharmaceuticals, Inc., et al.*, Case No. CGC-08-472978 (the "Complaint"). The Complaint was against two in-state defendants (McKesson and Merry X-Ray) and seven out-of-state defendants (GE, Bayer, Covidien Inc., Mallinckrodt, Inc. and Bracco Diagnostics Inc.). The GE defendants (sometimes referred to as "Removing Defendants") removed this matter to Federal Court on April 4, 2008 [Docket No. 1].

Removing defendants allege in their removal that the two in-state defendants, McKesson and Merry X-Ray (the "Distributor Defendants") are fraudulently joined and, therefore, their California residencies should be ignored for purposes of determining diversity jurisdiction. Plaintiffs filed a Motion for Remand on April 22, 2008.

On April 24, 2008, the GE Defendants filed their Application to Stay All Proceedings Pending Transfer to the MDL. The MDL, known as *In re: Gadolinium Contrast Dyes Products Liability Litigation* ("Gadolinium MDL"), was created on

February 27, 2008 and is presided over by the Honorable Dan A. Polster of the Northern District of Ohio.

On April 23, 2008, this case was subjected to a Conditional Transfer Order No. 5 (the "CTO"). Plaintiffs filed a Notice of Opposition to the CTO on May 7, 2008. No date for hearing on plaintiffs' Motion and Brief to Vacate the Conditional Transfer Order has been set by the Panel. Pursuant to Rule 7.4(c) of the Rule of Procedure for the Judicial Panel on Multidistrict Litigation, the CTO is stayed pending futher order of the Panel.

### APPLICABLE STANDARDS

**\*2** A federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over the case as originally brought by the plaintiff. *Snow v. Ford Motor Co.,* 561 F.2d 787, 789 (9th Cir.1977); *see also* 28 U.S.C. § 1441. Removal based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity of citizenship (i.e., all plaintiffs must be of different citizenship than all defendants). *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001); *see also* 28 U.S.C. § 1332. Removal is not permitted where one of the defendants "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

The party seeking removal has the burden of establishing federal jurisdiction, *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir.1989), and there is a "strong presumption against removal jurisdiction." *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 685 (9th Cir.2006). In determining the existence of removal jurisdiction, a court may ignore a "fraudulently joined" defendant. *Morris v. Princess Cruise Lines,* 236 F.3d 1061, 1067-68 (9th Cir.2001). "Fraudulent joinder is a term of art"-when a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987); *TPS Utilicom Servs. v. AT & T Corp.,* 223 F.Supp.2d 1089, 1102 (C.D.Cal.2002) ("There is fraudulent joinder when there is no possibility of recovery against a resident defendant according to the settled rules of the state.").

In determining whether a defendant was joined fraudulently, "the courts must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Plute v. Roadway Package Sys.,* 141

F.Supp.2d 1005, 1008 (N.D.Cal.2001). Moreover, "all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." *Id.; see also Little v. Purdue Pharma,* LP, 227 F.Supp.2d 838, 849 (S.D.Ohio 2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts.").

### DISCUSSION

According to defendants, federal jurisdiction over this lawsuit is proper because, they argue, there is complete diversity between plaintiffs and defendants. [2] Although Moorhouse has included two in-state defendants in the lawsuit, which would ordinarily defeat diversity jurisdiction, defendants argue that the California defendants were fraudulently joined and should therefore be disregarded for jurisdictional purposes.

In the Ninth Circuit, a defendant is fraudulently joined, for purposes of diversity jurisdiction, when a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state ..." *McCabe,* 811 F.2d at 1339. [3] Defendants argue that 1) Moorhouse has failed to state a viable claim against the California defendants; and 2) there is no factual nexus between the Distributor Defendants and the products named in this case.

**\*3** The Supreme Court of California has recognized a cause of action against drug manufacturers for failure to warn of the risks of a prescription drug. *Brown v. Superior Court,* 44 Cal.3d 1049, 1057, 1061, 245 Cal.Rptr. 412, 751 P.2d 470 (1988). The general rule under California law is that distributors of defective products are strictly liable. *Bostick v. Flex Equipment Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (Cal.App.2d Dist.2007); *Maher v. Novartis Pharms. Corp.,* 2007 U.S. Dist. LEXIS 58984, 2007 WL 2330713, (S.D.Cal.2007). Moorhouse has sued the Distributor Defendants for their alleged failure to warn consumers and healthcare providers about the risks of using GBCA. However, defendants argue that such a cause of action is not viable under California law. Defendants attempt to support their position in two ways, each of which will be addressed separately below. First, they argue that "[i]n the context of prescription drugs, no published California opinion has recognized a cause of action against

2008 WL 2477389

distributors for failure to warn."They contend that "[t]o rule that there may be viable failure to warn claims against the Distributor Defendants under state law would be tantamount to fabricating state law out of thin air."Second, defendants argue that the policy rationale behind liability for failure to warn in the prescription drug context suggests that a failure to warn cause of action against distributors is inappropriate.

## I. Lack of California Authority

Defendants contend that no California case has held a distributor liable for failure to warn in the prescription drug context. However, even if true, that fact alone does not suggest that it is *obvious* according to the *settled* rules of California that a failure to warn cause of action is not viable. Defendants, for their part, have not cited any case holding that a distributor *cannot* be held liable under any circumstances for failure to warn of the risks of prescription drugs. Defendants must do more than observe that the California courts have yet to find a distributor liable for failure to warn in the prescription drug context; they must establish that "there is no *possibility* of recovery against a resident defendant according to the settled rules of the state."*TPS*, 223 F.Supp.2d at 1102. In other words, defendants must establish that there is no possibility that a California court will hold distributors liable for failure to warn consumers or healthcare providers of the risks of a prescription drug.

In *Aaron v. Merck & Co.,* 2005 U.S. Dist. LEXIS 40745, 2005 WL 5792361, (C.D.Cal.2005), defendant Merck advanced the same argument as defendants in this case to establish that in-state distributor defendant McKesson (the same distributor defendant in the present case) was fraudulently joined. In particular, Merck argued that the lack of a decision holding distributors liable for a failure to warn in the prescription drug context established that such a claim is not viable under California law. *Aaron,* 2005 U.S. Dist. LEXIS 40745 at *7, 2005 WL, 5792361.Holding that there was no fraudulent joinder and remanding the case back to state court, the *Aaron* court rejected Merck's argument explaining that:

> **\*4** Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be

able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined.

*Id.* at 7-8.

Defendants purport to provide authority for their claim that "most California federal district courts have ruled on remand motions that there is no viable cause of action against non-diverse distributor defendants."However, defendants misstate the holdings of the cases they cite. In four of the decisions cited by defendants, Judge Lawrence K. Karlton held that the question of fraudulent joinder was not unique to the pending cases but existed in 55 other California cases that had been transferred to the MDL *In re Vioxx Prods. Liab. Litig.,* 360 F.Supp.2d 1352 (J.P.M.L.2005) ("Vioxx MDL"). As such, Judge Karlton did not address the merits of defendant Merck's fraudulent joinder claim, nor the concomitant issue of whether plaintiffs stated a viable cause of action against the in-state distributors. Rather, he stayed the proceedings to allow the MDL to resolve the issues. *See Beatty v. Merck & Co.,* 2006 U.S. Dist. LEXIS 77260, 2006 WL 2943090, (E.D.Cal.2006), *Vantine v. Merck & Co.,* 2007 U.S. Dist. LEXIS 14531, 2007 WL 516389, (E.D.Cal.2007), *Cline v. Merck & Co.,* 2006 U.S. Dist. LEXIS 34417, 2006 WL 1409555, (E.D.Cal.2006), and *English v. Merck & Co.,* 2007 U.S. Dist. LEXIS 14493, 2007 WL 1023519, (E.D.Cal.2007). Thus, these cases do not establish, as defendants incorrectly contend, the inviability of a cause of action against distributor defendants.

In *Leeson v. Merck & Co.,* 2006 U.S. Dist. LEXIS 3096, 2006 WL 513872, (E.D.Cal.2006), also cited by defendants, the court stated that "only a handful of judges have found that California law does not clearly exempt distributors from strict liability for failure to warn"*Id .* at *8. However, the *Leeson* court provided no authority for this conclusion and defendants cite not a single case so holding. Moreover, the *Leeson* court did not hold that California law exempts distributors from liability for failure to warn. Rather, it found, as did Judge Karlton, that because the jurisdictional issues were present in other Vioxx cases before the MDL panel, staying the proceeding pending transfer of the case to the Vioxx MDL was appropriate. *Leeson,* 2006 U.S. Dist. LEXIS at *11.

Unlike the Merck cases, where the identical issue of fraudulent joinder under California law was present in many cases before or pending transfer to the Vioxx MDL,

Case 2:16-md-02740-JTM-MBN  Document 469-3  Filed 05/19/17  Page 187 of 245
Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc., Not Reported in F.Supp.2d (2008)
2008 WL 2477389

defendants in the present case have only identified four cases before or pending transfer to the Gadolinium MDL which involve "remand issues." Defendants do not specify the nature of the remand issues nor whether the cases involve California distributors. Despite their burden of establishing fraudulent joinder, *see Holcomb,* 871 F.2d at 110, defendants have failed to identify even one other case involving the fraudulent joinder issue presently before this Court.

**\*5** In light of the general rule under California law that distributors of defective products are strictly liable, *Bostick,* 147 Cal.App.4th at 88, 54 Cal.Rptr.3d 28, the lack of any authority exempting distributors from liability for failure to warn in the prescription drug context inclines this Court against a finding of frivolity. *See Purdue Pharma,* LP, 227 F.Supp.2d at 849 ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts.").

## II. Policies Behind Failure to Warn Liability

Defendants argue that the general rule subjecting distributors to liability for failure to warn is inapplicable in the prescription drug context because of the unique policies supporting liability in the prescription drug context. Under *Brown,* cited by defendants in support of their policy-based argument, "a *manufacturer* is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution."*Id.* at 1069, 245 Cal.Rptr. 412, 751 P.2d 470 (emphasis added). The California Supreme Court explained that such a formulation for liability, "which rings of negligence," is necessary in the prescription drug context "because of the public interest in the development, availability, and reasonable price of drugs."*Id.* at 1061, 245 Cal.Rptr. 412, 751 P.2d 470.

While according to *Brown,* there is a public interest in basing liability of a prescription drug manufacturer on negligence principles, that does not necessarily preclude subjecting *distributors* of such drugs to strict liability, given the different public policies applicable to distributors. In *Elmore v. American Motors Corp.,* 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1969), the California Supreme Court explained the public policies which justify subjecting distributors to strict liability:

> In some cases the retailer may be the only member of that enterprise

> reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety ... [and] affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship.

*Id.* at 587, 75 Cal.Rptr. 652, 451 P.2d 84.

Thus, the Court cannot conclude that Moorhouse has "obviously" failed to state a cause of action against the Distributor Defendants. *McCabe,* 811 F.2d at 1339 (there is fraudulent joinder when a "plaintiff fails to state a cause of action and the failure is obvious according to the settled rules of the state ....."; *Plute v. Roadway Package Sys.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) ("In determining whether a defendant was joined fraudulently, the courts must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.").

**\*6** Other courts faced with the same cause of action in the fraudulent joinder context have reached the same conclusion. In *Maher,* plaintiff alleged that defendant McKesson distributed the prescription drug Tegretol, yet failed to warn physicians and patients of the drug's dangerous propensities. *Maher,* 2007 U.S. Dist. LEXIS 58984 at *12, 2007 WL 2330713.After considering strict liability jurisprudence in California generally and the California Supreme Court's holding in *Brown,* the *Maher* court held that "[t]his Court cannot conclude that it is obvious that the general rule of distributor liability does not apply under the allegations in this case."*Id.; see also Aaron,* 2005 U.S. Dist. LEXIS 40745 at *8, 2005 WL 5792361 ("Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined."); *Black,* 2004 U.S. Dist. LEXIS 29860 at *13-14 ("it is Merck's 'heavy burden' to show absolutely no possibility that Plaintiffs could prevail on their strict liability

claim against McKesson. As Merck has not met this burden, it has failed to demonstrate that McKesson was fraudulently joined. Thus, this matter must be remanded because complete diversity of citizenship is lacking.").

The Court finds that it is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn. See *McCabe,* 811 F.2d 1336.

### III. Factual Nexus Between Products and California Defendants

Defendants argue that there is no factual nexus between the Distributor Defendants and the prescription drugs named in this case. Defendants contend that "[i]n the absence of concrete allegations that these two Distributors actually did distribute each and every CBCA product administered to Mrs. Moorhouse," there is no factual predicate for liability against the Distributor Defendants. The Court disagrees.

In determining whether a defendant was joined fraudulently, "any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand." *Aaron,* 2005 U.S. Dist. LEXIS 40745 at *5, 2005 WL 5792361, *Aaron,* 2005 U.S. Dist. LEXIS 40745 at *8, 2005 WL 5792361. In her Complaint, Moorhouse alleges that "Defendant McKesson Corporation distributes Omniscan and, on information and belief, other gadolinium-based contrast agents. [Moorhouse] allege[s] on information and belief that McKesson distributed the Omniscan and/or other gadolinium-based contrast agents that were injected into Mrs. Moorhouse." Moorhouse pleads nearly identical facts concerning Merry X-Ray. Contrary to defendants' position, these allegations are sufficient to state a cause of action under California pleading requirements and for purposes of determining whether Distributor Defendants were properly joined. See *Cal.Code Civ. Proc. § 425.10; Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1270 (9th Cir.Cal.2006) ("Pleading requirements differ between federal law and California law. California law requires that a complaint contain "a statement of the facts constituting the cause of action, in ordinary and concise language.").

 *7  In *Aaroe,* the court was faced with nearly identical factual allegations. The court rejected defendant Merck's assertion that the plaintiffs' allegations were insufficient concluding: Defendant Merck argues that Defendant McKesson was fraudulently

joined because 'Plaintiffs' factual allegations against McKesson are vague at best, including only the nonspecific and ambiguous allegations that McKesson distributed and sold Vioxx in and throughout California ... However, contrary to Defendant Merck's assertions, these allegations are sufficient to allege an actual connection between the defendant's alleged conduct and the plaintiff's purported injury ....

*Id.*

In light of the "strong presumption against removal jurisdiction," *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 685 (9th Cir.2006), and resolving all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading, in favor of the non-moving party, *Plute,* 141 F.Supp.2d at 1008, the Court finds that Moorhouse has sufficiently pled a factual nexus between Distributor Defendants and the prescription drugs at issue.

Because the Court finds that Moorhouse's cause of action against the in-state Distributor Defendants is not obviously nonviable under California law and finds that Moorhouse has adequately pled facts connecting the Distributor Defendants to the products in this case, the Court finds that the Distributor Defendants have not been fraudulently joined. Defendants have not overcome the "strong presumption against removal jurisdiction." *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 685 (9th Cir.2006). Accordingly, Moorhouse's Motion to Remand is GRANTED. Defendant's Motion to Stay is DENIED as moot.

### CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Moorhouse's Motion to Remand [Docket No. 17] is GRANTED;

2. Defendants' Motion to Stay [Docket No. 21] is DENIED as moot; and

3. This action is remanded to San Francisco Superior Court.

IT IS SO ORDERED.

Footnotes

1    The following defendants have filed a joinder in application to stay all proceedings: McKesson Corporation [Docket No. 27]; Covidien, Inc. and Mallinckrodt, Inc. [Docket No. 28]; Bracco Diagnostics Inc. [Docket No. 30].

2    It is undisputed that the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1332.

3    Defendant Bracco Diagnostics Inc. ("BDI") has filed an Application for Leave to File a Sur-Reply [Docket No. 40]. In its Sur-Reply, BDI argues that *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) sets forth the applicable standard for determining whether in-state defendants have been fraudulently joined. Under *Twombly,* to state a legally sufficient claim, a plaintiff must state a claim that is "plausible" not merely conceivable. *Twombly,* 127 S.Ct. at 1974. BDI further argues that "numerous courts, including those in California, have affirmed that the [*Twombly* ] standard applies in determining fraudulent joinder for purposes of diversity jurisdiction."However, none of the California cases to which BDI cites adopts the *Twombly* standard for purposes of determining fraudulent joinder. Fraudulent joinder is not even addressed in *Maloney v. Scottsdale Ins. Co.,* 256 Fed .Appx. 29 (Ninth Cir.2007), and in *Williams v. Boston Scientific Corp.,* 2008 WL 2051021 (N.D.Cal.2008), the court uses the *McCabe* test, explaining that "[t]o prove fraudulent joinder, a defendant must show that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to settled rules of the state."Because Moorhouse discusses *Twombly* for the first time in her reply brief and the Court has opted to consider her argument, BDI's request for leave to file a sur-reply is GRANTED.

---

**End of Document**                                   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 344219
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Peter Jay GERBER, et al., Plaintiffs,

v.

BAYER CORPORATION, et al., Defendants.

No. C 07-05918 JSW.   |   Feb. 6, 2008.

**Attorneys and Law Firms**

Lawrence J. Gornick, Debra Irwin Decarli, Levin Simes
Kaiser & Gornick LLP, San Francisco, CA, Bruce W.
Blakely, Flaxman & Blakely, An Association, Mill Valley,
CA, for Plaintiffs.

Annette Stepanian, Kenneth P. Conour, Drinker Biddle &
Reath LLP, Carol C. Sleeth, Lewis Brisbois et al, Michael L.
Fox, Sedgwick Detert Moran & Arnold LLP, San Francisco,
CA, Deborah C. Prosser, Kutak Rock LLP, Stephanie Achsah
Hingle, Los Angeles, CA, for Defendant.

**ORDER (1) GRANTING PLAINTIFF'S
MOTION TO REMAND AND (2)
DENYING MOTION TO STAY AS MOOT**

JEFFREY S. WHITE, District Judge.

**\*1** Now before the Court are the motions to remand and
to stay this action pending a ruling on a motion to transfer
the action by the Judicial Panel on Multidistrict Litigation
("MDL"). Having considered the parties' arguments, relevant
legal authority, and having had the benefit of oral argument,
the Court GRANTS the motion to remand and DENIES AS
MOOT the motion to stay. [1]

**BACKGROUND**

On October 26, 2007, plaintiffs Peter Jay Gerber and Miriam
Goldberg ("Plaintiffs") filed this action in San Francisco
Superior Court against Bayer Corporation and Bayer
Healthcare Pharmaceuticals, Inc. (collectively, "Bayer"),
BMC Diagnostics, Inc. and California Pacific Medical Center
(collectively, "Imaging Facility Defendants"), General
Electric Company, GE Healthcare, Inc ., and GE Healthcare

Bio-Sciences Corp. (collectively, "GE"), McKesson
Corporation and Merry X-Ray Chemical Corporation
(collectively, "Distributor Defendants"). Plaintiffs assert
the following causes of action: (1) strict liability against
Bayer and GE (collectively, "Manufacturing Defendants")
and the Distributor Defendants; (2) negligence against the
Manufacturing Defendants and the Distributor Defendants;
(3) negligence against the Imaging Facility Defendants; (4)
breach of express warranty against the Imaging Facility
Defendants; (5) breach of implied warranty against the
Imaging Facility Defendants; (6) fraud and misrepresentation
against the Manufacturing Defendants; (7) fraud and
concealment or omission the Manufacturing Defendants;
(8) negligent misrepresentation against the Manufacturing
Defendants; (9) violation of the Consumers Legal Remedy
Act ("CLRA"), California Civil Code section 1750 et seq.
against all defendants; and (10) loss of consortium against all
defendants.

On November 21, 2007, the Manufacturing Defendants
removed on the basis of diversity jurisdiction. They asserted
that diversity jurisdiction exists because the Imaging Facility
and Distributor Defendants were fraudulently joined and thus
should be disregarded for purposes of determining diversity
jurisdiction.

Plaintiffs now move to remand this action and Manufacturing
Defendants move to stay this action pending a ruling on a
motion to transfer the action by the MDL. Both parties argue
that the Court should address their motion first.

**ANALYSIS**

"Generally, jurisdiction is a preliminary matter that should
be resolved before all others." *Leeson v. Merck & Co.,
Inc.,* 2006 WL 3230047, \*2 (E.D.Cal. Jan.27, 2006); *see
also Villarreal v. Chrysler Corp.,* 1996 WL 116832, at
\*1 (N.D.Cal. Mar.12, 1996) ("Judicial economy will best
be served by addressing the remand issue [before a party's
motion to stay] because a determination on this issue will
facilitate litigation in the appropriate forum."). However,
some courts have held that "the calculus changes somewhat
when deference to a MDL court will further 'the uniformity,
consistency, and predictability in litigation that underlies the
MDL system.' " *Leeson,* 2006 WL 3230047, \*2 (quoting
*Conroy v. Fresh Del Monte Produce Inc.,* 325 F.Supp.2d
1049, 1053 (N.D.Cal.2004)). "In deciding whether to rule on
the motion to remand, courts consider whether the motion

2008 WL 344219

raises issues likely to arise in other actions pending in the MDL transferee court." *Conroy,* 325 F.2d 1053.Here, the Court finds that the pending motion to remand has not raised issues that are likely to arise in other actions even if the MDL grants the motion to transfer. Therefore, the Court will address the motion to remand first.

### A. Legal Standards Relevant to Removal.

 **\*2**  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending."*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 7-8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (citation omitted); *see also*28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir.2004); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992)."Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*Gaus,* 980 F.2d at 566.

While diversity jurisdiction under 28 U.S.C. § 1332 ordinarily requires complete diversity of the parties, removal is proper despite the presence of a non-diverse defendant when that defendant was fraudulently joined, in other words, where that defendant is merely a "sham" defendant. *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). In this circuit, a non-diverse defendant is deemed a sham and will not defeat jurisdiction if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.*Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1426 (9th Cir.1989). The failure to state claim against the non-diverse defendant must be "obvious according to the well-settled rules of the state."*United Computer Systems v. AT & T Corp.,* 298 F.3d 756, 761 (9th Cir.2002). The party asserting the fraudulent joinder bears the burden of proof and remand must be granted unless the defendant can show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant. *See Levine v. Allmerica*

*Financial Life Ins. & Annuity Co.,* 41 F.Supp.2d 1077, 1078 (C.D.Cal.1999).

### B. Manufacturing Defendants Fail to Demonstrate Other Defendants Were Fraudulently Joined.

Manufacturing Defendants argue that all of Plaintiffs' claims against the Imaging Facility and Distributor Defendants are time-barred and that Plaintiffs' CLRA claims are jurisdictionally barred based on Plaintiffs' failure to comply with the statutory notice provisions. The Court will address each argument in turn.

### 1. Statute of Limitations.

To demonstrate at the pleading stage that a statute of limitations has run, a defendant must show that the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. *Jablon v. Dean Witter,* 614 F.2d 677, 682 (9th Cir.1980). Under California law, a statute of limitations can be tolled by the discovery rule which delays the accrual of the date of a cause of action until the plaintiff is aware of her injury and its negligent cause. *Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1120 (9th Cir.1994) (citing *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 751 P.2d 923 (1988)). Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing. *Jolly,* 44 Cal.3d at 1110, 245 Cal.Rptr. 658, 751 P.2d 923.

 **\*3**  Plaintiffs plead that the "nature of Plaintiffs' injuries and damages, and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiffs until a time less than two years before the filing of this Complaint."(Compl., ¶ 67.) Manufacturing Defendants contend that Plaintiffs failed to plead specific facts regarding the circumstances of their delayed discovery. However, assuming, without deciding, that Plaintiffs have not sufficiently alleged facts to establish that the discovery rule applies, Manufacturing Defendants have not shown that Plaintiffs could not as a matter of law allege such facts if given an opportunity to amend their complaint.

Plaintiffs also argue that Defendants' violations of the CLRA are ongoing, and that therefore, these claims are not time-barred. (Mot. to Remand at 4.) Manufacturing Defendants failed to address this argument and, thus, for this additional

2008 WL 344219

reason, fail to demonstrate that all of Plaintiffs' claims are time-barred.

**2. Compliance with CLRA's Statutory Notice Provisions.**

Section 1782 of the California Civil Code provides that a plaintiff shall provide notice of his or her claims at least thirty days before filing an "an action for damages" under the CLRA. Cal. Civ.Code § 1782(a). The statute clarifies that such notice is not required for claims seeking only injunctive relief. Cal. Civ.Code § 1782(d). As Plaintiffs highlight, they only seek injunctive relief pursuant to their CLRA claim. (Compl., ¶¶ 120-122.) Accordingly, the notice provisions of the CLRA are inapplicable.

Manufacturing Defendants did not argue in opposition to the motion to remand that Plaintiffs did not allege fact sufficient to state a CLRA claim against the Imaging Facility and Distributor Defendants. Instead, they merely asserted that

Plaintiffs' CLRA claim is time-barred and failed to satisfy the statutory notice provisions. Because the Court finds that Manufacturing Defendants have failed to show that the CLRA claim is time-barred or deficient based on the statutory notice requirements, they have not demonstrated that there is no possibility that Plaintiffs could prevail on any cause of action it brought against the non-diverse defendants. *See Levine,* 41 F.Supp.2d at 1078. Accordingly, the Court GRANTS Plaintiffs' motion to remand.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED and this matter shall be remanded to the Superior Court for the City and County of San Francisco. Because this Court is remanding the case, Defendants' motion to stay is DENIED AS MOOT.

Footnotes

1    Defendants' request for judicial notice is granted. *See*Fed.R.Evid. 201. Plaintiffs objected to and moved to strike paragraphs 2 and 3 and the exhibits A and B to the Declaration of Carol Sleeth. At the hearing on the pending motions, the parties informed the Court that they reached a stipulation to strike paragraph 3 and exhibit B to the Sleeth Declaration. Based on the parties' stipulation, the Court GRANTS the motion to strike in part as to paragraph 3 and exhibit B to the Sleeth Declaration. However, because the Court did not need to consider the remainder of the Sleeth Declaration in resolving the pending motions to remand and to stay, the Court DENIES in part as MOOT the motion strike as to paragraph 2 and Exhibit A to the Sleeth Declaration.

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2330713
Only the Westlaw citation is currently available.
United States District Court,
S.D. California.

Elizabeth MAHER, Plaintiff,

v.

NOVARTIS PHARMACEUTICALS
CORPORATION, et al., Defendants.

No. 07CV852 WQH (JMA).  |  Aug. 13, 2007.

**Attorneys and Law Firms**

Robert F. Clarke, Phillips & Associates, Phoenix, AZ, for Plaintiff.

Karen Shichman Crawford, John Peter Cooley, Duane Morris, San Diego, CA, Mark D. Petersen, Farella Braun & Martel LLP, San Francisco, CA, for Defendants.

### ORDER GRANTING PLAINTIFF'S
### MOTION TO REMAND

HAYES, Judge.

 **\*1** Pending before the Court is Plaintiff's motion to remand to state court. (Docs.# 11). The Court finds this matter suitable for submission on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1).

### BACKGROUND

On March 23, 2007, Plaintiff Elizabeth Maher (Plaintiff) filed a Complaint in the Superior Court of California against Defendants Novartis Pharmaceuticals Corporation (Novartis), Novartis Corporation [1] and McKesson Corporation (McKesson). Notice of Removal (Doc. # 1), ¶ 1. The Complaint alleges state law claims against Novartis and McKesson for injuries sustained by Plaintiff when Plaintiff ingested the prescription drug Tegretol, an anti-seizure medication. Notice of Removal, Ex. 1 (Complaint), ¶ 3. Specifically, the Complaint alleges state law claims for (1) strict products liability, (2) common law fraud, (3) negligence, (4) negligent misrepresentation, (5) misrepresentation, (6) express warranty, (7) implied

warranty, and (8) violations of the California Business & Professions Code. Compl., ¶¶ 42-70.

Plaintiff is a resident of the State of California. Notice of Removal, ¶ 4; Compl., ¶ 2. Defendant Novartis is a Delaware corporation with its principal place of business in the State of New Jersey. Compl., ¶ 4; Notice of Removal, ¶ 5. Plaintiff alleges that Novartis, "[a]t all times relevant ... was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Tegretol, and other products for use by the mainstream public, including Plaintiff."Compl., ¶ 10. Defendant McKesson is a Delaware corporation with its principal place of business in the State of California. Compl., ¶ 7; Notice of Removal, ¶ 7. Plaintiff alleges that McKesson, "[a]t all times relevant ... was in the business of labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Tegretol, and other products for use by the mainstream public, including Plaintiff ."Compl., ¶ 11.

Plaintiff alleges that Defendants Novartis and Mckesson, or their representatives, "manufactured, marketed, distributed and sold" Tegretol to Plaintiff. Compl., ¶ 13. Plaintiff further alleges that Defendants Novartis and McKesson knew that Tegretol was a dangerous drug and failed to adequately warn physicians and patients about its dangers. Compl., ¶ 17. Plaintiff alleges that Defendants made false statements about Tegretol and improperly promoted the Tegretol taken by Plaintiff for off-label uses. Compl., ¶ 19.

On April 11, 2007, Plaintiff served Defendant Novartis with the Complaint. Notice of Removal, ¶ 2. On May 11, 2007, Novartis filed Notice of Removal pursuant to 28 U.S.C. § 1441(b). Notice of Removal (Doc. # 1). The Notice of Removal asserts diversity jurisdiction and contends that the citizenship of Defendant McKesson is irrelevant because McKesson is a sham Defendant fraudulently joined. Notice of Removal, ¶ 7. The amount in controversy exceeds $75,000. Notice of Removal, ¶¶ 9-10; Compl., ¶¶ 75, 84, 87-88.

 **\*2** On June 1, 2007, Plaintiff moved to remand for lack of subject matter jurisdiction. (Docs.# 8, 11).

### STANDARD OF REVIEW

"A federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over [the case] as

originally brought by the plaintiff." *Snow v. Ford Motor Co.,* 561 F.2d 787, 789 (9th Cir.1977); *see also* 28 U.S.C. § 1441. Removal based on diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001); *see also* 28 U.S.C. § 1332. Removal is not permitted where one of the defendants "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

The party seeking removal has the burden of establishing federal jurisdiction, *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir.1989), and there is a "strong presumption against removal jurisdiction." *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 685 (9th Cir.2006), *citing Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). In determining the existence of removal jurisdiction, a court may ignore a "fraudulently joined" defendant. *Morris v. Princess Cruise Lines,* 236 F.3d 1061, 1067-68 (9th Cir.2001). "Fraudulent joinder is a term of art"-when a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

A district court evaluating fraudulent joinder properly considers the allegations of the complaint and any evidence submitted by the parties showing the joinder is fraudulent. *Ritchey v. UpJohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998); *McCabe,* 811 F.2d at 1339. "All disputed questions of fact and all ambiguities in the controlling state law" must be resolved in favor of the non-removing party, and "any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand." *Aaron,* CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *5-6 (C.D.Cal. July 26, 2005); *see also Little v. Purdue Pharma, LP,* 227 F.Supp.2d 838, 849 (S.D.Ohio 2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts.").

## DISCUSSION

Plaintiff moves for remand to state court for lack of federal subject matter jurisdiction. Plaintiff, a citizen of the State of California, contends that there is no diversity jurisdiction because Defendant McKesson is a legitimate defendant with its place of business in the State of California. Plaintiff

contends that a distributor such as Defendant McKesson is liable under California law if it fails to properly warn physicians and patients of a prescription drug's dangerous propensities.

*3 Defendant Novartis contends that Plaintiff has not and cannot state a claim against Defendant McKesson under California law. Defendant Novartis asserts that Defendant McKesson is fraudulently joined in this action to defeat diversity and that removal is proper based on diversity jurisdiction when one ignores Defendant McKesson's citizenship. Defendant Novartis contends that Defendant McKesson is "fraudulently joined to this action as a 'sham' defendant" and "there is no possible way that Plaintiff can prove a cause of action against McKesson." Notice of Removal, ¶ 7. Defendant Novartis contends that a distributor of prescription drugs cannot be held liable for damages in a products liability claim under California law and that the learned intermediary doctrine precludes Plaintiff from stating a claim against Defendant McKesson. Defendant Novartis explains that Plaintiff's claims of inadequate warning, negligence, fraud, negligent misrepresentation and misrepresentation against Defendant McKesson are not viable because a distributor of prescription drugs has no duty to warn under California law.

The general rule under California law is that both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product. *Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007); *Anderson v. Owens-Corning Fiberglass Corp.,* 53 Cal.3d 987, 994, 281 Cal.Rptr. 528, 810 P.2d 549 (1991); *see also Daly v. General Motors Corp.,* 20 Cal.3d 725, 739, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 262-63, 37 Cal.Rptr. 896, 391 P.2d 168 (1964). In *Brown v. Superior Court,* 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988), the California Supreme Court examined strict liability for drug manufacturers and concluded that "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069, 245 Cal.Rptr. 412, 751 P.2d 470. In prescription drug cases, liability under California state law is premised on a defendant's failure to warn of knowable risks. [2] *Id.* The California Supreme Court has recognized an exception in strict liability for pharmacists in prescription drug cases, *see Murphy v. E.R. Squibb & Sons, Inc.,* 40 Cal.3d

672, 681, 221 Cal.Rptr. 447, 710 P.2d 247 (1985) [3], however, it has not addressed liability in prescription drug cases for distributors and other potential defendants in the "commercial chain." *Daly,* 20 Cal.3d at 739, 144 Cal.Rptr. 380, 575 P.2d 1162 ("Regardless of the identity of a particular defendant or of his position in the commercial chain the basis of his liability remains that he has marketed or distributed a defective product."). Defendant Novartis contends that Plaintiff cannot maintain her claims against Defendant McKesson because the principles that the California Supreme Court relied upon to explain liability for drug manufacturers in *Brown* and to create an exception in strict liability for pharmacists in prescription drug cases apply to prevent recovery against distributors in products liability cases involving prescription drugs. Defendant's Opp. To Mot. To Remand at 3-6.

**\*4** In the context of fraudulent joinder, a number of federal district courts have addressed whether a California distributor can be liable in a prescription drug case for failure to warn, and concluded that distributor defendants were not fraudulently joined because a distributor could possibly be liable for failure to warn in prescription drug cases under California law. *See Aaron,* CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, \*8 (C.D.Cal. July 26, 2005) (defendant failed to meet heavy burden of demonstrating that there is no possibility that plaintiffs will be able to prevail); *Black,* CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, \*13-14 (C.D.Cal. Mar. 3, 2004) (defendant failed to meet heavy burden to show "absolutely no possibility" that plaintiffs could prevail); *Martin,* No. S-05-750, 2005 WL 1984483, \*3-4 (E.D.Cal. Aug.17, 2005) (defendant failed to meet heavy burden to show to a near certainty that cause of action is precluded under California law); *see also Becraft v. Ethicon,* No. C 00-1474 CRB, 2000 U.S. Dist. LEXIS 17725 (N.D.Cal. Nov.2, 2000) (concluding that a distributor can be liable under California law for defective sutures); *but see Aronis v. Merck,* NO. CIV. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531, \*3 (E.D.Cal. May 3, 2005) (plaintiff did not state claim against distributor under California law because plaintiff failed to allege causal connection); *Skinner v. Warner-Lambert Co.,* Case No CV-03-1643-R (Rzx) (C.D.Cal. Apr. 28, 2003) (distributor of prescription drugs is not subject to strict liability). On or about May 22, 2006, a California State Superior Court Judge refused to exempt distributors from strict liability in a prescription drug case involving the drug Vioxx. The Superior Court Judge stated "Defendants point to no authority that makes an exception to the doctrine of strict liability for distributors in an industry analogous to the prescription pharmaceutical industry. This

court will not be the first to make such an exception at the pleading stage." *See Declaration of Robert Clarke in Support of Plaintiff's Motion to Remand,* Ex. 3 at 40-49 (*In re Vioxx Cases,* Case No. JCCP 4247 "Revised Ruling on Request for Reconsideration," May 16, 2006)

The general rule under California law is that distributors and other "participants in the chain of distribution" are strictly liable in defective products cases. *Bostick,* 147 Cal.App.4th at 88, 54 Cal.Rptr.3d 28. This Court has been unable to find, nor has either party cited, a case under California law which creates an exception in strict liability for distributors in prescription drug cases. This Court cannot conclude that it is obvious that the general rule of distributor liability does not apply under the allegations in this case. *McCabe,* 811 F.2d at 1339. The Court further concludes that the learned intermediary doctrine does not prevent Plaintiff from stating a claim against McKesson because Plaintiff has alleged that McKesson failed to properly warn physicians, including Plaintiff's physician. *Brown,* 44 Cal.3d at 1062, 245 Cal.Rptr. 412, 751 P.2d 470; *see also Carlin v. Superior Court,* 13 Cal.4th 1104, 1118, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996).

**\*5** In the Complaint, Plaintiff alleges that Defendant McKesson distributed, promoted, labeled, and marketed Tegretol to Plaintiff, and that Plaintiff was injured when she used Tegretol. Plaintiff further alleges that Defendant McKesson knew that Tegretol was dangerous, yet failed to warn physicians and patients of the drug's dangerous propensities. The Court concludes that it is not "obvious" that Plaintiff has failed to state a claim against Defendant McKesson under settled California law, *McCabe,* 811 F.2d at 1339, and that Defendant Novartis has not met its "heavy burden" to show that McKesson has been fraudulently joined. *Plute v. Roadway Package Sys., Inc.,* 141 F.Supp.2d 1005, 1008 (N.D. Cal.2001; *see also Black,* CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, \*13-14 (C.D.Cal. Mar. 3, 2004), *citing Purdue Pharma, LP,* 227 F.Supp.2d at 849 ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts."). Accordingly, this matter is remanded to state court.

## CONCLUSION

IT IS HEREBY ORDERED that (1) Plaintiff's motion to remand (Doc. # 11) to state court is GRANTED; (2)

2007 WL 2330713

Defendant's evidentiary objections are DENIED as moot; and

(3) this case is hereby remanded to the California Superior Court.

Footnotes

1    Plaintiff voluntarily dismissed Defendant Novartis Corporation on June 11, 2007. (Doc. # 10).

2    Though the rule articulated in *Brown* uses the words "strict liability," the California Supreme Court noted that the rule "rings of negligence" and distinguished the rule from pure strict liability.*Brown,* 44 Cal.3d at 1058-59, 245 Cal.Rptr. 412, 751 P.2d 470. The Court concluded that "a drug manufacturer's liability for a defectively designed drug should not be measured by the standards of strict liability."*Id.* at 1061, 245 Cal.Rptr. 412, 751 P.2d 470.

3    The California Supreme Court created the pharmacy exception articulated in *Murphy* and applicable in strict liability cases before it decided *Brown* and held that there was no pure strict liability in prescription drug cases, only a hybrid (negligence/strict liability) form of liability for failure to warn. *Brown,* 44 Cal.3d at 1058-1061, 245 Cal.Rptr. 412, 751 P.2d 470.

---

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1984483
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

John MARTIN, Plaintiff,
v.
MERCK & COMPANY, INC.; and
McKesson Corporation, Defendants.

No. S-05-750 LKK/PAN. | Aug. 15, 2005.

**Attorneys and Law Firms**

C. Jean Cain, Clayeo C. Arnold, Clifford Lee Carter, Clayeo C. Arnold, A Professional Law Corporation, Sacramento, CA, for Plaintiff.

Susan B. Altman, Reed Smith LLP, San Francisco, CA, for Defendants.

*ORDER*

KARLTON, Senior J.

**\*1** On April 1, 2005, plaintiff John Martin ("plaintiff") filed an action against defendants Merck & Co., Inc. ("Merck") and McKesson Corporation ("McKesson") alleging injuries from his use of the prescription drug Vioxx. Plaintiff brings numerous state causes of action including a strict liability claim based on a failure to warn and claims for breach of both express and implied warranties.

On April 15, 2005, Merck removed the action to this court based on diversity jurisdiction. Plaintiff now moves to remand, asserting that removal was improper and that this court lacks jurisdiction. Defendant Merck, on the other hand, moves to stay pending a decision by the judicial panel on multidistrict litigation ("MDL Panel") regarding whether to transfer this action. I decide the motions based on the papers and pleadings filed herein and after oral argument.

**I.**

**BACKGROUND**

Plaintiff is a California resident. Defendant Merck, the manufacturer of Vioxx, is incorporated and has its principal place of business in New Jersey. Defendant McKesson is a promoter and distributor of Vioxx, is incorporated in Delaware, and has its principal place of business in California.

On February 16, 2005, pursuant to 28 U.S.C. § 1407, the MDL Panel issued a transfer order establishing MDL proceeding No. 1657, In re Vioxx Products Liability Litigation. That order centralized 148 cases that the MDL panel found had overlapping questions of fact. The Panel also held that nearly 300 potentially-related actions then pending in multiple federal districts will be treated as potential tag-along actions. Merck's moving papers indicate that the company "intends to provide notice to (the MDL Panel) of the pendency of this 'tag-along.' '

**II.**

**ANALYSIS**

Merck contends that "the policies of justice and efficiency" compel this court to address its motion to stay before addressing plaintiff's motion to remand. Plaintiff, on the other hand, insists that the proper procedure requires the court to first address the jurisdictional issue. I address these contentions below.

**A. STANDARD FOR COMPETING MOTIONS TO STAY AND TO REMAND**

While judicial economy will normally favor deciding a remand motion prior to a stay pending transfer, *Quincy Cmty Servs Dist. v. Atlantic Richfield,* No. CIV. S-03-2582 at *7 (E.D.Cal.2004) (Karlton, J.), existing legal authority does not provide concrete guidance on how a district court should address these competing motions. This court has, however, previously addressed this question and has adopted a three step methodology set forth in *Meyers v. Bayer AG,* 143 F.Supp.2d 1044 (E.D.Wis.2001).*Id.* That test provides that:

[A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or

similar jurisdictional issues have been raised in any other cases that have been or may be transferred to the MDL proceeding.

**\*2** Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

*Quincy Cmty Servs Dist.,* No. CIV S-03-2582 (quoting *Meyers,* 143 F.Supp.2d at 1049).

## B. PRELIMINARY ASSESSMENT OF THE JURISDICTIONAL ISSUE

I first make a preliminary assessment of the jurisdictional issue. A preliminary review of plaintiff's motion to remand suggests that removal of this action from state court was improper because the presence of defendant McKesson defeats complete diversity of citizenship. 28 U.S.C. § 1332(a). Furthermore, as I explain below, Merck's position that McKesson was fraudulently joined appears to be without merit. Accordingly, the Court will complete its assessment of the motion to remand.

## C. MOTION TO REMAND

### 1. *Fraudulent Joinder Standard*

Civil actions not involving a federal question are removable to a federal district court only if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1).Section 1332 requires that there be complete diversity; that is, each plaintiff's citizenship must be diverse as to each defendant's citizenship. *Id.* A defendant may remove a civil action that alleges claims against a non-diverse defendant when the plaintiff has no basis for suing that defendant, or in other words, when that defendant has been fraudulently joined. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

"[F]raudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."*Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998) (quoting *McCabe,* 811 F.2d at 1339) (citations omitted)). Where a non-diverse defendant has been "fraudulently joined" to an otherwise completely diverse case, that defendant is disregarded for diversity jurisdiction

purposes. *See,e.g.,Calero v. Unisys Corp.,* 271 F.Supp.2d 1172, 1176 (N.D.Cal.2003).

On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403-404 (9th Cir.1996); *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992). Thus, the defendant carries a high burden of establishing that the non-diverse party was fraudulently joined. *SeeGaus,* 980 F.2d at 564. 28 U.S.C. § 1447(c) provides that a case removed from state court should be remanded if it appears that the case was removed improvidently or without jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Gaus,* 980 F.2d at 566.

In determining whether a non-diverse defendant has been improperly joined, courts may look beyond the pleadings and examine the factual record. *McCabe,* 811 F.2d at 1339.

### 2. *Analysis*

**\*3** Merck asserts that diversity jurisdiction exists in this action because the only non-diverse defendant named in the complaint, McKesson, was fraudulently joined. It first asserts that plaintiff has not asserted a viable claim against McKesson. Second, it argues that, even if a claim could stand against McKesson, plaintiff's complaint fails to plead sufficient facts against McKesson and any general allegations do not support a properly pleaded claim.

### a. *Viable Cause of Action*

I first address Merck's contention that plaintiff has failed to state a viable claim against McKesson as a distributor. Merck asserts that plaintiff's claims against McKesson are based on a failure to warn about the purported risks of Vioxx. According to Merck, however, this claim necessarily fails because California law does not impose such a duty to warn on distributors.

While it is well-known that manufacturers of prescription drugs in California can be held strictly liable for a failure to warn, *Carlin v. Superior Court,* 13 Cal.4th 1104, 1110, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996), the court must determine whether distributors of such drugs can be similarly liable. The answer is readily at hand. The general rule is that strict liability for failure to provide adequate warnings runs to distributors as well as manufacturers. *Anderson v. Owens-*

*Corning Fiberglas Corp.,* 53 Cal.3d 987, 994, 281 Cal.Rptr. 528, 810 P.2d 549 (1991). Such liability may also extend to retailers. *Soule v. Gen. Motors Corp.,* 8 Cal.4th 548, 560, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994).

Merck argues that the general rule does not apply to distributors when the product at issue is a pharmaceutical product. To support its position, Merck directs the court to California law providing that pharmacists are not subject to liability based on a failure to warn theory. *See,e.g.Murphy v. E.R. Sguibb & Sons, Inc.,* 13 Cal.4th 1104, 1117, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996). While the state courts have carved out an exception for pharmacists, however, they have not addressed whether prescription drug distributors are similarly exempt from strict liability for failure to warn.

It is undisputed that McKesson is not a pharmacist. Still, Merck insists that the rationale for exempting pharmacists from strict liability applies equally to distributors. It does not cite to any authority to support its position, however, and instead argues that such an outcome is good public policy. This argument necessarily fails. First, California's public policy justification for exempting pharmacists from strict liability is that pharmacists provide services. *Murphy,* 40 Cal.3d at 679, 221 Cal.Rptr. 447, 710 P.2d 247 ("a key factor" in exempting pharmacies from liability is "that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor.... He is providing a service to the doctor."). McKesson, unlike pharmacists, does not provide the public with an analogous service. More importantly however, by relying primarily on public policy arguments, Merck effectively concedes that such a cause of action is not presently precluded under California law. Therefore, Merck fails to meet its heavy burden to show to "a near certainty" that McKesson's joinder was fraudulent. *Lewis v. Time, Inc.,* 83 F.R.D. 455, 466 (E.D.Cal.1979), *aff'd,*710 F.2d 549 (9th Cir.1983).

 **\*4**  Merck also argues that Martin's claim against McKesson cannot stand because pharmaceutical drug distributors are exempt from liability under the learned intermediary doctrine. McKesson points out that physicians are "learned intermediaries" whose advice consumers follow when deciding what medications to take. According to Merck, this means that the duty to warn runs from the manufacturer to the physician, and from the physician to the ultimate consumer. I cannot agree.

First, the learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder. *SeeRitchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318-19 (9th Cir.1998). However, even if the court considered the defense, it would not necessarily bar recovery. California law exempts from liability those in the chain of prescription drug distribution when adequate warning has been given to physicians about the potential dangers of the medication. *Carlin,* 13 Cal.4th at 1118, 56 Cal.Rptr.2d 162, 920 P.2d 1347. Where, as plaintiff alleges here, the dangers of the drug were scientifically knowable to the manufacturer, but the doctor was not warned, liability may still extend to the manufacturer.*Id.*

As a last ditch effort, Merck argues that attaching liability to McKesson for failure to warn is problematic because, by providing additional warnings on Vioxx containers, the distributor would violate federal law prohibiting alteration of Federal Drug Administration ("FDA") approved labels. The California Supreme Court has rejected this argument and explained that strict liability for failure to warn is not necessarily inconsistent with FDA policy.*Carlin,* 13 Cal.4th at 1113, 56 Cal.Rptr.2d 162, 920 P.2d 1347 ("as numerous courts have concluded, Congress evinced no intention of preempting state tort liability for injuries from prescription drugs."). Accordingly, Merck cannot show that plaintiff's cause of action against a prescription drug distributors is precluded under state law.

Again, the established general rule in California is that drug distributors may be strictly liable under a failure to warn theory. *Anderson,* 53 Cal.3d at 994, 281 Cal.Rptr. 528, 810 P.2d 549. Because California courts have not specifically addressed the issue, at the very least, it is an unsettled question of law. Therefore, Merck cannot meet its heavy burden so as to defeat plaintiff's motion to remand. *SeeGaus,* 980 F.2d at 566.

**b.** *Properly Pleaded Complaint*
Alternatively, Merck argues that plaintiff's motion to remand should be denied because his general allegations against the defendants cannot substitute properly pleaded claims against McKesson specifically. In other words, Merck objects to the propriety of the claims against McKesson on the grounds that the complaint lumps McKesson with Merck together, making it difficult for McKesson to determine the allegations upon which plaintiff seeks to hold it liable. According to Merck, plaintiff's failure to distinguish the specific factual allegations against McKesson amounts to an "admission" of

fraudulent joinder. Below, I examine whether plaintiff has alleged sufficient facts to support his cause of action against McKesson.

 **\*5** A strict liability cause of action requires a plaintiff to prove injury. *Carlin,* 12 Cal.4th at 1110.Plaintiff avers in his complaint that:

> [He] took the prescription medication Vioxx and Vioxx was the legal and proximate cause of his coronary disease/ bypass. The coronary disease/bypass has led to the aforementioned damages. Vioxx is ... is distributed by McKesson Corporation.

Compl. at 4. While plaintiff has clearly alleged an injury, Merck insists that, by failing to allege that McKesson distributed the Vioxx that Martin actually ingested, he does not allege facts to establish causation.

Martin presents pharmacy records to show that he filled his prescription for Vioxx at a Safeway store during the time in which McKesson was that store's "primary supplier of branded, generic and repackaged pharmaceutical products" in all 733 Safeway locations in the United States. Cain Decl. at ¶ 7, Ex. 4. Merck objects that the Court cannot consider Martin's purported evidence of causation because it is not contained in Martin's complaint. It is well-known, however, that in determining whether a non-diverse defendant has been improperly joined, courts may look beyond the pleadings and examine the factual record. *McCabe,* 811 F.2d at 1339. Accordingly, plaintiffs allegations, if true, are sufficient to establish causation. [1]

Because plaintiff has properly alleged a viable state law cause of action against McKesson, the court cannot find fraudulent joinder. [2]

### D. AUXILIARY CONSIDERATION OF THE MOTION TO STAY

As noted, the court is not obligated to consider Merck's motion to stay. However, since it insists that it will be heavily prejudiced if the court ignores its motion, the court briefly addresses this contention below.

The power to stay proceedings is within the court's discretion and is incidental to the "power inherent in every court to

manage the schedule of cases on its docket to ensure fair and efficient adjudication."*Quincy Cmty. Servs.Dist.,*No. CIV. S-03-2582, \*6 (quoting *Landis v. North America Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

In considering a motion to stay pending a possible MDL Panel transfer order, the district court considers three factors: (1) "potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed and (3) the judicial resources that would be saved by avoiding duplicative litigation if cases are in fact consolidated."*Id.* at \*6.

As plaintiff points out, defendant cannot be prejudiced by the remand of this action because a coordinated Vioxx proceeding is pending in the Los Angeles Superior Court, where this matter will ultimately be resolved. Therefore, because Merck is already involved in and must defend such matters in California, its contentions regarding prejudice are unfounded.

### E. ATTORNEY'S FEES

Martin requests an award of attorney's fees incurred in bringing its remand motion. 28 U.S.C. § 1447(c) provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."*Id.* Costs may be awarded for an improper removal even absent a finding of bad faith. *Moore v. Permanente Med. Group, Inc.,* 981 F.2d 443, 446 (9th Cir.1992). The award of fees is within the jurisdiction of the district court. *Id.*

 **\*6** An award of attorney's fees and costs is not warranted in the instant matter. Although ultimately unconvincing, Merck's contentions are not frivolous, and there is nothing showing that removal was motivated by bad faith. Moreover, defendant's removal does not appear to have resulted in unreasonable delay or prejudice.

### III.

### CONCLUSION

1. Plaintiff's motion to remand is GRANTED.

   2. Defendant Merck's motion to stay is DENIED as moot.

3. Plaintiff's motion for attorney's fees is DENIED.     IT IS SO ORDERED.

Footnotes

1    Merck cites a recent Eastern District of California Vioxx decision, *Aronis v. Merck & Co.,* No. CIV S-05-0486, 2005 WL 5518485
     (E.D. Cal., May 3, 2005; Shubb, J.), which concluded that defendant McKesson was fraudulently joined. In *Aronis,* the court found
     the complaint to be deficient, noting that "plaintiff [did] not allege that McKesson contributed in any way to her injuries, only
     that McKesson is a distributor."*Id.* (emphasis in the original). That case is distinguishable from the instant matter, in that Martin's
     allegations do establish a sufficient causal link between the medication distributed by McKesson and ingested by Martin, since
     plaintiff presents evidence showing that McKesson was the primary distributor of prescription medications at the pharmacy where
     Martin obtained the Vioxx.

2    The *Meyers* test indicates that the court should consider the motion to stay "only if the jurisdictional issue is both difficult and similar
     or identical to those in cases transferred (to a MDL venue)."*Meyers,* 143 F.Supp.2d at 1049. This is not the case here. Although
     Merck argues that the jurisdictional issue is both factually and legally complex, it does not state why this is so. Consideration of
     plaintiff's motion to remand actually suggests that the jurisdictional issue is simple and that this case belongs in state court. While
     Merck argues that the MDL judge will review jurisdictional questions, it offers no evidence that such questions will be similar or
     identical to the one before the court here.

---

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 5792361
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Doris AARON, et al.

v.

MERCK & CO., INC., et al.

No. CV 05-4073-JFW (MANx). | July 26, 2005.

**Attorneys and Law Firms**

James G. O'Callahan, Thomas V. Girardi, Girardi & Keese, Los Angeles, CA, for Doris Aaron, et al.

Gary Yunchian Chen, Michael K. Brown, Steven J. Boranian, Thomas J. Yoo, Reed Smith, Anthony G. Brazil, Kanika D. Corley, Morris Polich & Purdy, Los Angeles, CA, for Merck & Co., Inc., et al.

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [filed 7/11/05; Docket No. 12];**

**ORDER REMANDING ACTION TO LOS ANGELES COUNTY SUPERIOR COURT;**

**ORDER DENYING DEFENDANT MERCK & CO., INC.'S MOTION TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AS MOOT [filed 7/1/05; Docket No. 11]**

Honorable JOHN F. WALTER, United States District Judge.

**\*1** On July 11, 2005, Plaintiffs filed a Motion to Remand. On July 18, 2005, Defendant Merck & Co., Inc. ("Merck") filed its Opposition. On July 25, 2005, Plaintiffs filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for August 1, 2005 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

On February 15, 2005,134 individuals (collectively "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants Merck, McKesson Corporation and Amerisourcebergen Drug Corporation alleging the following ten causes of action: (1) Strict liability-failure to warn, design defect; (2) Negligence per se; (3) Negligence; (4) Wrongful death; (5) Breach of implied warranty; (6) Breach of express warranty; (7) Deceit by concealment; (8) Negligent misrepresentation; (9) Violation of Business and Professions Code § 17200; and (10) Violation of Business and Professions Code § 17500. On June 6, 2005, Defendant Merck filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal").

In its Notice of Removal, Defendant Merck claims that this Court has subject matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because aii Plaintiffs are completely diverse from Defendant Merck, and the amount in controversy exceeds $75,000. Defendant Merck argues that the citizenship of Defendant McKesson Corporation ("McKesson"), a Delaware corporation with its principal place of business in California, and the citizenship of Defendant Amerisourcebergen Drug Corporation ("Amerisourcebergen"), a Delaware corporation with its principal place of business in Pennsylvania, should not be considered in determining whether this Court has jurisdiction because both McKesson and Amerisourcebergen have been fraudulently joined. In its Opposition to Plaintiffs' Motion, Defendant Merck also argues that, in the event the Court decides that Defendants McKesson and Amerisourcebergen are properly joined, the Court should sever the thirty-eight Plaintiffs who are citizens of California and the two Plaintiffs who are citizens of Delaware on the grounds of fraudulent misjoinder. Plaintiffs filed the present Motion to Remand on the grounds that the parties are not completely diverse, none of the parties have been fraudulently joined or misjoined, and this Court therefore lacks subject matter jurisdiction over this action.

The basic requirement for jurisdiction in diversity cases is that all plaintiffs be of different citizenship than all defendants. See Strawbridge v. Curtiss, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806); see also Munoz v. Small Business Administration, 644 F.2d 1361, 1365 (9th Cir.1981) (noting that "[d]iversity jurisdiction requires that the plaintiffs and each defendant be citizens of different states"). Even where the complete diversity requirement is met, removal is not permitted where one of the defendants is a "citizen of the State in which

2005 WL 5792361

such action is brought."28 U.S.C. § 1441(b). However, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled* rules of the state, the joinder of the resident defendant is fraudulent."*McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc. .,* 236 F.3d 1061, 1067 (9th Cir.2001).

 **\*2** "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion."*Plute v. Roadway Package Sys., Inc.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001). A claim of fraudulent joinder should be denied if there is *any possibility* that the plaintiffs may prevail on the cause of action against the in-state defendant. *See id.* at 1008, 1012."The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a *possibility* that they may do so."*Lieberman v. Meshkin, Mazandarani,* 1996 WL 732506, at \*3 (N.D.Cal. Dec.11, 1996) (emphasis added)."In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'"*Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42-43 (5th Cir.1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

Defendant Merck argues that Defendant McKesson was fraudulently joined "because plaintiffs have failed to allege that it distributed or supplied the VIOXX they allegedly ingested."*See* Opposition at 12-13. To the contrary, Plaintiffs specifically allege in their Complaint that Defendant McKesson is a "wholesale distributor of all Merck Products, including Vioxx," and "marketed, sold and distributed Vioxx which was ingested by the Plaintiffs and Plaintiffs' decedents." [1] Complaint at ¶ 146. This allegation not only connects Defendant McKesson to Plaintiffs' alleged injuries, it forms the foundation for Plaintiffs' claims against Defendant McKesson. Although the remainder of Plaintiffs' allegations are stated against all "Defendants," including McKesson, under the liberal pleading requirements, such general allegations against all "Defendants" are sufficient to charge Defendant McKesson with the alleged wrongful conduct. *See, e.g., Plute v. Roadway Package Sys., Inc.,* 141

F.Supp.2d at 1010, n. 4 (citing *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir.1994).

Defendant Merck also argues that Defendant McKesson was fraudulently joined because Plaintiffs have failed to state a viable cause of action against Defendant McKesson. *See* Opposition at 17-20. Defendant Merck contends that each of the causes of action alleged in Plaintiffs' Complaint are based on "an alleged failure to warn about the purported risks of Vioxx," and that "under California law, [McKesson] has no duty to warn."*Id.* at 17.However, Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined. Accordingly, this matter must be remanded because complete diversity of citizenship is lacking. [2]

 **\*3** In a final attempt to remain in federal court, Defendant Merck claims that the forty Plaintiffs who are citizens of California and Delaware have been "fraudulently misjoined," and argues that the Court should sever those Plaintiffs from the action and retain jurisdiction over the remaining ninety-four Plaintiffs who are completely diverse from Defendants. *Id.* at 21-23.In support of its argument, Defendant Merck relies primarily on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996). In *Tapscott,* the Eleventh Circuit held that while "mere misjoinder" does not constitute fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as to constitute fraudulent joinder."*Tapscott,* 77 F.3d at 1360. However, the Ninth Circuit has not found the occasion to address, nor adopt, the Eleventh Circuit's holding in *Tapscott.See Brazina v. Paul Revere Life Ins. Co.,* 271 F.Supp.2d 1163, 1172 (N.D.Cal.2003); *Osborn v. Metropolitan Life Ins. Co.,* 341 F.Supp.2d 1123, 1127 (E.D.Cal.2004). Moreover, as the Northern District noted in *Brazina, Tapscott*"concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds."*Id.* That is simply not the situation that this Court is presented with here, and the Court declines to adopt and apply the theory set forth in *Tapscott* to this case.

For all of the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED.**This action is hereby **REMANDED** to Los

2005 WL 5792361

Angeles County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

In light of the Court's Order remanding this action to Los Angeles County Superior Court, Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel oh Multidistrict Litigation, which is currently on calendar for August 1, 2005, is **DENIED as moot.**

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on ail parties to this action.

**Footnotes**

1    The Court understands that counsel for Defendant Merck is handling several Vioxx related personal injury cases, and that they have had to file a number of similar oppositions to motions to remand. However, that is not an excuse for failing to read the allegations of the specific complaint which is the subject of the motion to remand. The Court would advise counsel in the future to draft their papers to address the issues raised by the complaint.

2    In light of the Court's finding that Defendant McKesson is properly joined as a Defendant in this action and the joinder of Defendant McKesson defeats diversity, the Court need not specifically address whether Defendant Amerisourcebergen was fraudulently joined.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PRIORITY-SEND

### CIVIL MINUTES -- GENERAL

Case No.   **CV 05-2487-JFW (MANx)**                    Date:  June 3, 2005

Title:     ELIDA ALANIZ, et al. -v- MERCK & CO., INC., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

ENTERED
CLERK, U.S. DISTRICT COURT

JUN 3 - 2005

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
                    None                                                None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [filed 5/4/05; Docket No. 9];**

**ORDER REMANDING ACTION TO LOS ANGELES COUNTY SUPERIOR COURT;**

**ORDER DENYING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AS MOOT [filed 5/5/05; Docket No. 12]**

On May 4, 2005, Plaintiffs filed a Motion to Remand.  On May 23, 2005, Defendant Merck & Co., Inc. ("Merck") filed its Opposition.  Plaintiffs filed a Reply.

On May 5, 2005, Defendant Merck filed a Motion to Stay All Proceedings Pending the Transfer Decision by the Judicial Panel on Multidistrict Litigation.  Plaintiffs filed an Opposition.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  The hearing calendared for June 6, 2005 is hereby vacated and the matters taken off calendar.  After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

DOCKETED ON CM

JUN 3 - 2005

BY

On January 24, 2005, 121 individuals (collectively "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants Merck and McKesson Corporation alleging the following six causes of action: (1) Negligence; (2) Strict product liability - failure to warn; (3) Breach of express warranty; (4) Breach of implied warranty; (5) Negligent misrepresentation; and (6) Fraud. On April 4, 2005, Defendant Merck filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal").

In its Notice of Removal, Defendant Merck claims that this Court has subject matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because all 121 Plaintiffs are completely diverse from Defendant Merck, and the amount in controversy exceeds $75,000. Defendant Merck argues that Defendant McKesson Corporation ("McKesson") should not be considered in determining whether this Court has jurisdiction because Defendant McKesson has been fraudulently joined.[1] Defendant further argues that, in the event the Court decides that Defendant McKesson is properly joined, the Court should sever the 109 Plaintiffs who are California citizens on the grounds of fraudulent misjoinder and retain jurisdiction over the 12 Plaintiffs who are not citizens of California. Plaintiffs filed the present Motion to Remand on the grounds that the parties are not completely diverse, none of the parties have been fraudulently joined or misjoined, and this Court therefore lacks subject matter jurisdiction over this action.

The basic requirement for jurisdiction in diversity cases is that all plaintiffs be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *see also Munoz v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir. 1981) (noting that "[d]iversity jurisdiction requires that the plaintiffs and each defendant be citizens of different states"). Even where the complete diversity requirement is met, removal is not permitted where one of the defendants is a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled* rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. *See id.* at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." *Lieberman v. Meshkin, Mazandarani*, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing

---

[1] Defendant Merck is a New Jersey corporation with its principal place of business in New Jersey. Defendant McKesson is a Delaware corporation with its principal place of business in California. 109 of the 121 Plaintiffs are California citizens.

Initials of Deputy Clerk _sr_

party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

Defendant Merck argues that Defendant McKesson was fraudulently joined because Plaintiffs failed to allege an actual connection between their alleged injuries and any conduct by Defendant McKesson. *See* Opposition at 2, 12-15. To the contrary, Plaintiffs allege in their Complaint that Defendant McKesson "distributed and sold Vioxx in and throughout the State of California, including Los Angeles County" and "purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Vioxx." Complaint at ¶¶ 3, 141. Plaintiffs further allege, *inter alia*, that both Defendants "actually knew of Vioxx's defective nature . . . but continued to design, manufacture, market, and sell the drug so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs." *Id.* at ¶ 177. Based on this allegation and the other allegations contained in Plaintiffs' Complaint, Plaintiffs specifically allege that "[a]s a result of . . . McKesson's conduct, Plaintiff suffered injuries and damages." *Id.* at ¶ 179. These allegations clearly connect Defendant McKesson to Plaintiffs' alleged injuries. Although the majority of Plaintiffs' allegations are stated against all "Defendants," including McKesson, under the liberal pleading requirements, such general allegations against all "Defendants" are sufficient to charge Defendant McKesson with the alleged wrongful conduct. *See, e.g., Plute*, 141 F. Supp. 2d at 1010, n.4 (citing *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

Defendant Merck also argues that Defendant McKesson was fraudulently joined because Plaintiffs have failed to state a viable claim for relief against Defendant McKesson. Defendant Merck contends that each of the causes of action alleged in Plaintiffs' Complaint are based on "an alleged failure to warn about the purported risks of Vioxx," and that "under California law, [McKesson] has no duty to warn." Opposition at 17. Defendant further argues that "any cause of action against McKesson based on a theory of failure to warm is barred by the Supremacy Clause." *Id.* However, Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined. Accordingly, this matter must be remanded because complete diversity of citizenship is lacking.

In a final attempt to remain in federal court, Defendant Merck claims that the Plaintiffs who are citizens of California have been "fraudulently misjoined," and argues that the Court should sever those 109 Plaintiffs from the action and retain jurisdiction over the remaining 12 Plaintiffs who are completely diverse from Defendants. *See* Notice of Removal at ¶¶ 26-27. In support of its argument, Defendant Merck relies primarily on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996).[2] In *Tapscott*, the Eleventh Circuit held that while "mere misjoinder" does not constitute fraudulent joinder, a party's attempt to misjoin

---

[2] Defendant Merck also cites district court decisions from the Eastern District of Pennsylvania and the Southern District of New York.

Initials of Deputy Clerk _sr_

parties may be "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360. However, the Ninth Circuit has not found the occasion to address, nor adopt, the Eleventh Circuit's holding in *Tapscott*. *See Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Moreover, as the Northern District noted in *Brazina*, *Tapscott* "concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds." *Id.* That is simply not the situation that this Court is presented with here, and the Court declines to adopt and apply the theory set forth in *Tapscott* to this case.

For all of the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED**. This action is hereby **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

In light of the Court's Order remanding this action to Los Angeles County Superior Court, Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation is **DENIED as moot**.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

Initials of Deputy Clerk _sr_

150TJD

**Time of Request:** Friday, April 03, 2015   18:15:09 EST
**Client ID/Project Name:** 5555-99999
**Number of Lines:** 317
**Job Number:**      1827:507723309

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 2004 U.S. Dist LEXIS 29860

**Send to:**  KERNER, KATIE
            JANET, JENNER & SUGGS, LLC
            1829 REISTERSTOWN RD STE 320
            BALTIMORE, MD 21208-7112





Positive
As of: Apr 03, 2015

**TIMOTHY BLACK, et. al., Plaintiffs, v. MERCK & COMPANY, INC., a corporation; MCKESSON CORPORATION, a corporation; and DOES 1-100, inclusive, Defendants.**

**CASE NO. CV 03-8730 NM (AJWx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2004 U.S. Dist. LEXIS 29860*

**March 3, 2004, Decided**
**March 3, 2004, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patients sued defendants, a drug manufacturer, drug distributor, and unnamed parties, in state court, alleging that they were injured by taking a prescription drug under, inter alia, *Cal. Bus. & Prof. Code §§ 17200, 17500*, and *Cal. Civ. Code § 1750*. The manufacturer removed the case based on diversity per *28 U.S.C.S. § 1332*. Pending before the federal district court was the patients' motion to remand based on *28 U.S.C.S. § 1441(b)*.

**OVERVIEW:** The manufacturer asserted that diversity jurisdiction existed because the only non-diverse defendant named in the complaint, the distributor, was fraudulently joined. In the alternative, the manufacturer argued that the district court should extend the doctrine of fraudulent joinder to apply where plaintiffs were misjoined. The district court remanded. The patients had alleged that they had taken the prescription drug as it was placed in the stream of commerce by both the

manufacturer and the distributor. Further, while state case law had carved out an exception for service providers such as pharmacists, it had not addressed whether prescription drug distributors could be strictly liability for failure to warn. Because state law was unsettled in that area, the district court could not rule that there was absolutely no possibility that the patients could prevail on their claim against the distributor. Thus, the manufacturer had not met its heavy burden of demonstrating that a non-diverse defendant was fraudulently joined, and the matter had to be remanded. Further, the district court declined to adopt the theory of misjoinder of plaintiffs.

**OUTCOME:** The district court granted the patients' motion to remand.

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Corporations > Formation*

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 211 of 245

Page 2
2004 U.S. Dist. LEXIS 29860, *

> *Place of Incorporation > Principal Office*
*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > Business Entities*
*Civil Procedure > Removal > Basis > Diversity of Citizenship*
*Civil Procedure > Removal > Elements > Removability*
*Civil Procedure > Parties > Joinder > Fraudulent Joinder*

[HN1] For removal based on diversity, *28 U.S.C.S. § 1332* requires complete diversity of citizenship. Even if the complete diversity requirement is met, removal is not allowed where one of the defendants is a citizen of the state in which such action is brought. *28 U.S.C.S. § 1441(b)*. But if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent. "Fraudulent joinder" is a term of art and does not impugn the integrity of the plaintiffs or their counsel and does not refer to an intent to deceive. Where joinder of a non-diverse defendant is deemed fraudulent, the defendant's presence in the lawsuit is ignored for purposes of determining diversity. A corporation is deemed a citizen of its state of incorporation and its principal place of business. *28 U.S.C.S. § 1332(c)(1)*.

*Civil Procedure > Removal > Basis > Diversity of Citizenship*
*Civil Procedure > Removal > Postremoval Remands > General Overview*
*Civil Procedure > Parties > Joinder > Fraudulent Joinder*
*Evidence > Inferences & Presumptions > Presumptions > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*

[HN2] There is a presumption against finding fraudulent joinder, and the defendants who assert that a plaintiff has fraudulently joined a party carry a heavy burden of persuasion. Courts have denied claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on a cause of action against an in-state defendant. In determining whether the defendant was joined fraudulently, a district court must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand; a

lack of clear precedent does not render the joinder fraudulent.

*Civil Procedure > Pleading & Practice > Pleadings > General Overview*

[HN3] Courts must interpret general allegations to embrace whatever specific facts might be necessary to support them.

*Torts > Products Liability > Duty to Warn*
*Torts > Products Liability > Manufacturing Defects*
*Torts > Products Liability > Strict Liability*
*Torts > Strict Liability > General Overview*

[HN4] Under California law, manufacturers can be held strictly liable for failure to warn. Generally, such liability extends beyond manufacturers to retailers and wholesalers. A retailer includes anyone who is involved in the sale of a product short of the housewife who, on occasion, sells to her neighbor a jar of jam or a pound of sugar. In contrast to manufacturers of prescription drugs who are subject to strict liability for failure to warn, pharmacists cannot be held strictly liable for failure to warn. Courts have traditionally maintained a distinction between those rendering services and those selling products, holding that those providing services are not subject to strict liability. As the California Supreme Court has explained, a key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor. He is providing a service to the doctor. California law is unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn.

*Torts > Products Liability > Duty to Warn*
*Torts > Products Liability > Manufacturing Defects*
*Torts > Products Liability > Strict Liability*
*Torts > Strict Liability > General Overview*

[HN5] *Restatement (Second) of Torts § 402A cmt. k* does not exempt drug distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given. Under the "learned intermediary" doctrine, a drug manufacture has no duty to warn the ultimate consumer, the patient, so long as adequate warnings are given to the doctor. A "seller" of a product is any person engaged in the business of selling products for use or consumption. It

therefore applies to any wholesale or retail dealer or distributor. *Restatement (Second) of Torts § 402A cmt. f.*

*Civil Procedure > Parties > Joinder > Fraudulent Joinder*

*Civil Procedure > Parties > Joinder > Misjoinder*

[HN6] The U.S. Court of Appeals for the Eleventh Circuit has held that misjoinder of plaintiffs may be just as fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no claim. While "mere misjoinder" is not fraudulent joinder, a party's attempt to misjoin parties may be so egregious as to constitute fraudulent joinder. However, the U.S. Court of Appeals for the Ninth Circuit has not found occasion to address the Eleventh Circuit's holding and no other circuit has adopted its rationale. Because the Ninth Circuit has not adopted the Eleventh Circuit's novel theory, the U.S. District Court for the Central District of California declines to do so.

**COUNSEL:** [*1] For Timothy Black, Fred Brusso, Imelda Clark, Patricia Conklin, Gary Daley, Barbara Green, Timothy Green, Bea Harrington, Willie Beatrice Harris, Connie Hess, Bobby Home, Glenda Jacobs, Michael Limberg, Kim McIntosh, Jack Melton, William Morgan, Elaine Morgan, Frank Mosley, Marcia Napoli, Paul Sader, Roque Salcedo, Ageline Self, Shelli Shaw, Ronnie Lee Smith, Joanne Sumler, Gregory Teasley, Tracy Thacker, Richard Tracy, Danny Warren, Charlotte Wooten, Paulette Wessel, Shirley Wilson-Trass, Jamie Worstell, Richard Yost, Ursula A Yost, an individual, Plaintiffs: Joy Lynn Robertson, Walter J Lack, Engstrom Lipscomb & Lack, Los Angeles, CA; Thomas V Girardi, Girardi & Keese, Los Angeles, CA.

For Merck & Company Inc, a corporation, Defendant: Michael K Brown, Thomas J Yoo, Reed Smith Crosby & Heafey, Los Angeles, CA; Norman C Kleinberg, Theodore V H Mayer, Hughes Hubbard & Reed, New York, NY.

**JUDGES:** Nora M. Manella, United States District Judge.

**OPINION BY:** Nora M. Manella

**OPINION**

**ORDER GRANTING PLAINTIFFS' MOTION TO**

**REMAND**

**I. INTRODUCTION**

On November 25, 2003, 35 plaintiffs residing in 20 states, including California but not including New Jersey ("Plaintiffs"), sued Merck & Company, [*2] Inc. ("Merck"), McKesson Corporation ("McKesson"), and Does 1-100, inclusive (collectively, "Defendants"), in Los Angeles County Superior Court. [1] Thirty-two of the Plaintiffs allege they were injured by taking VIOXX, a prescription drug; the remaining three plaintiffs allege loss of consortium. Compl. PP 13-47. [2]

> 1  *Local Rule 19-1* provides that "[n] o complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties."
> 2  Plaintiffs allege thirteen claims: (1) strict liability for failure to warn; (2) negligence; (3) negligence per se; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by concealment; (7) negligent misrepresentation; (8) violation of *Cal. Bus. & Prof. Code § 17200*; (9) violation of *Cal. Bus. & Prof. Code § 17500*; (10) violation of *Cal. Civ. Code § 1750*; (11) wrongful death; (12) survival action; and (13) loss of consortium.

On December 1, 2003, Merck [*3] removed the case based on diversity. Merck is incorporated in and has its principal place of business in New Jersey. Id. P 49. McKesson is incorporated in Delaware and has its principal place of business in California. Notice of Removal P 12; Mot. at 1. Merck asserts that diversity jurisdiction exists because the only non-diverse defendant named in the Complaint, McKesson, was fraudulently joined. Notice of Removal P 8; Mot. at 1. In the alternative, Merck argues the court should extend the doctrine of fraudulent joinder to apply where plaintiffs were misjoined. Mot. at 11-12. Merck contends that because the four California plaintiffs were misjoined, the court should disregard their citizenship and sever them from the case. *Id.* Now pending is Plaintiffs' Motion to Remand on the grounds that: (1) diversity jurisdiction is lacking, and (2) Merck's request to sever the California plaintiffs is contrary to law and to standards of efficiency.

**II. FACTS**

Merck, a pharmaceutical company, tested, manufactured, marketed, labeled, and distributed

VIOXX. Compl. PP 48-49. Merck sells VIOXX to wholesale distributors, hospitals, pharmacies, and other suppliers of prescription drugs. Layton [*4] Decl. PP 2-3. McKesson, a wholesale distributor, promoted and distributed VIOXX. *Id.* P 3; Compl. P 50. Currently, Merck sells VIOXX to approximately 33 wholesalers (including McKesson), 1,000 hospitals, 1,500 small pharmacies, and three warehouse chain pharmacies. Layton Decl. P 3.

VIOXX is a prescription drug used for the treatment of painful menstrual cramps, the management of acute pain in adults, and the relief of signs and symptoms of osteoarthritis. Compl. P 55. VIOXX has allegedly been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure, heart attacks, strokes, seizures, kidney and liver damage, pregnancy complications, and death. *Id.* P 58. Plaintiffs allege these risks were not disclosed to them. *Id.* Plaintiffs further allege Defendants aggressively marketed their product through advertisements and other promotional materials while misleading potential users and failing to protect consumers from serious dangers of which Defendants knew or should have known. *Id.* PP 59-64.

## III. DISCUSSION

### A. Fraudulent Joinder

[HN1] For removal based on diversity, *28 U.S.C. § 1332* [*5] requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001)* (citation omitted). Even if the complete diversity requirement is met, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought." *28 U.S.C. § 1441(b).* [3] But if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)* (citation omitted). "Fraudulent joinder" is a term of art and does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. *Id.*; *DaCosta v. Novartis AG, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001)* (citation omitted). Where joinder of a non-diverse defendant is deemed fraudulent, the defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Morris, 236 F.3d at 1067.*

3 A corporation is deemed a citizen of its state of incorporation and its principal place of business. *See 28 U.S.C. § 1332(c)(1).*

[*6] [HN2] "There is a presumption against finding fraudulent joinder, and defendants who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)* (citations omitted); *see also, Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 712 n. 3 (9th Cir. 1990)* ("removal statute is strictly construed against removal jurisdiction"); *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)* (same). Courts have denied claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant. *Plute, 141 F. Supp. 2d at 1008, 1012*; *see Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995)* ("The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.") (citation and internal quotations omitted). "In determining whether a defendant [*7] was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Plute, 141 F. Supp. 2d at 1008* (quoting *Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 (5th Cir. 1992)*); *Little v. Purdue Pharma, LP, 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002)* ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts").

Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does not render the joinder fraudulent. *Plute, 141 F. Supp. 2d at 1008* (citation omitted); *see Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994)* (courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them"); *Little, 227 F. Supp. 2d at 847 n. 12* ("in light of the heavy burden on defendants to show the non-diverse [*8] defendants were fraudulently joined, it seems to this Court that a finding of fraudulent joiner should not be based on factual deficiencies within the pleadings which

2004 U.S. Dist. LEXIS 29860, *8

are correctable by amendment").

Merck contends that McKesson was fraudulently joined on two grounds: (1) Plaintiffs have failed to allege an actual connection between their purported injuries and McKesson's conduct, and (2) Plaintiffs have failed to state a viable claim against McKesson. With respect to the first ground, Merck argues Plaintiffs must allege the VIOXX they ingested was distributed by McKesson to the pharmacies from which Plaintiffs purchased VIOXX. Opp. at 5-6. Merck argues that McKesson is one of numerous distributors and Plaintiffs have failed to plead that McKesson received a benefit from the sale of the product, that its role was integral to the business of the manufacturer, or that McKesson had control over or ability to influence the manufacturing or distribution process. *Id.* at 7.

Plaintiffs, however, allege McKesson "was in the business of promoting and distributing the pharmaceutical Vioxx." Compl. P 50. Plaintiffs also allege they have "been prescribed and supplied with, received, and [have] [*9] taken and ingested and consumed the prescription drug Vioxx, as . . . distributed, marketed, labeled, promoted, packaged . . . or otherwise placed in the stream of interstate commerce by Defendants Merck & Company, Inc., McKesson, and Defendants Does 1 through 100." Id. P 1. [4]

> 4   Most of the remaining allegations are against "Defendants," including McKesson. General allegations against "Defendants" are sufficient to charge McKesson with the alleged wrongful conduct. *See Plute, 141 F. Supp. 2d at 1007, 1010 n. 4* (any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand); *Peloza, 37 F.3d at 521* ([HN3] courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them").

Next, Merck contends Plaintiffs have failed to state a viable claim against McKesson. Plaintiffs argue they have stated a claim against McKesson for strict liability for failure [*10] to warn. [HN4] Under California law, manufacturers can be held strictly liable for failure to warn. *Brown v. Superior Court, 44 Cal. 3d 1049, 1065, 245 Cal. Rptr. 412, 751 P.2d 470 (1988).* Generally, such liability extends beyond manufacturers to retailers and wholesalers. *Johnson v. Standard Brands Paint Co., 274 Cal. App. 2d 331, 337, 79 Cal. Rptr. 194 (1969); Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 560, 34 Cal. Rptr. 2d 607, 882 P.2d 298 (1994).* A retailer includes anyone involved in the sale of a product short of "the housewife who, on occasion, sells to her neighbor a jar of jam or a pound of sugar." *Pan-Alaska Fisheries. Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1135 (9th Cir. 1977)* (citations omitted).

In contrast to manufacturers of prescription drugs who are subject to strict liability for failure to warn, pharmacists cannot be held strictly liable for failure to warn. *See Murphy v. E. R. Squibb & Sons. Inc., 40 Cal. 3d 672, 679, 221 Cal. Rptr. 447, 710 P.2d 247 (1985); Carlin v. Superior Court, 13 Cal. 4th 1104, 1117, 56 Cal. Rptr. 2d 162, 920 P.2d 1347 (1996).* "Courts have traditionally maintained a distinction between those rendering services and those selling products, holding that those providing services are not subject [*11] to strict liability [.] " *San Diego Hospital Assn. v. Superior Court, 30 Cal. App. 4th 8, 13, 35 Cal. Rptr. 2d 489 (1994).* As the California Supreme Court has explained: "A key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor. . . . [H] e is providing a service to the doctor." *Murphy, 40 Cal. 3d at 679.*

Although California case law has carved out an exception for service providers such as pharmacists, it has not addressed whether distributors of prescription drugs can be strictly liable for failure to warn. Because state law is unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn, the court cannot rule that there is "absolutely no possibility" Plaintiffs could prevail on this claim against McKesson. *See Plute, 141 F. Supp. 2d at 1008, 1012; Cavallini, 44 F.3d at 259.* Thus, Merck has not met its "heavy burden" of demonstrating that a non-diverse defendant was fraudulently joined. *See Plute, 141 F. Supp. 2d at 1012; Little, 227 F. Supp. 2d at 849.* [*12]

Merck argues the rationale for exempting pharmacists from strict liability applies equally to distributors. Citing case law from Pennsylvania, Maryland, and Mississippi, Merck contends courts have not held pharmacists strictly liable because to do so would interfere with the doctor-patient relationship. Obviously, McKesson is not a pharmacist, and there is no potential for interference with any doctor-patient

relationship. Moreover, the California Supreme Court has distinguished pharmacists from others in the chain of distribution on the ground that pharmacists provide services. *See Murphy, 40 Cal. 3d at 679.* Unlike a pharmacist, McKesson provides no service.

Next, Merck argues that under the "learned intermediary" doctrine, distributors have no duty to warn and thus cannot be held strictly liable, citing two unpublished district court cases where the court concluded that a distributor of a prescription drug is not subject to liability. See *Barlow v. Warner-Lambert Co.*, CV 03-1647-R, [slip op.] at 2 (C.D. Cal. 2003); *Skinner v. Warner-Lambert Co.*, CV 03-1643-R, slip op. at 2 (C.D. Cal. 2003). [5] However, both cases relied solely on [HN5] comment k of the Restatement [*13] (Second) of Torts, which does not exempt distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given. [6]

> 5   Under the "learned intermediary" doctrine, a drug manufacture has no duty to warn the ultimate consumer, the patient, so long as adequate warnings are given to the doctor. *Carlin, 13 Cal. 4th at 1108-09, 1116*; *Carmichael v. Reitz, 17 Cal. App. 3d 958, 994, 95 Cal. Rptr. 381 (1971)*.
> 6   A "seller" of a product is "any person engaged in the business of selling products for use or consumption. It therefore applies to any . . . wholesale or retail dealer or distributor [.]" *Restatement (Second) Torts § 402A, cmt. f.*

Finally Merck argues that "Plaintiffs cite no case holding a pharmaceutical supplier like McKesson liable for distributing an FDA-approved medication [.]" Opp. at 10. However, it is Merck's "heavy burden" [*14] to show "absolutely no possibility" that Plaintiffs could prevail on their strict liability claim against McKesson. *See Plute 141 F. Supp. 2d at 1008*; *Cavallini, 44 F.3d at 259*; *Little, 227 F. Supp. 2d at 849.* As Merck has not meet this burden, it has failed to demonstrate that McKesson was fraudulently joined. [7] Thus, this matter must be remanded because complete diversity of citizenship is lacking. *See Morris, 236 F.3d at 1067.*

> 7   In light of the court's determination that Plaintiffs may have a cause of action against McKesson based on strict liability for failure to warn, the court need not address the viability of

the remaining claims against McKesson.

### B. Misjoinder of Plaintiffs

[HN6] The Eleventh Circuit has held that misjoinder of plaintiffs may be just as fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no claim. *Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996)*, [*15] *overruled on other grounds, Cohen v. Office Depot. Inc., 204 F.3d 1069, 1072 (11th Cir. 2000)*. In *Tapscott*, the court explained that while "mere misjoinder" is not fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as to constitute fraudulent joinder." *Tapscott, 77 F.3d at 1360.* [8] However, the Ninth Circuit "has not found occasion to address *Tapscott*, and no other circuit has adopted its rationale." *Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003)*. Because the Ninth Circuit has not adopted this novel theory, the court declines to do so here. [9]

> 8   *Tapscott* "concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds." *Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003)* (citing *Tapscott, 77 F.3d at 1360*).
> 9   Even under the *Tapscott* theory, it is unclear whether the joinder of the California plaintiffs is "so unrelated as to constitute egregious misjoinder." *See Brazina, 271 F. Supp. 2d at 1172*; *Tapscott, 77 F. 3d at 1360*; *In re Norplant Contraceptive Prods. Liab. Litig., 168 F.R.D. 579, 581 (E.D. Tex. 1996)* (finding joinder of plaintiffs proper where defendants failed to adequately warn plaintiffs of risks and severity of side effects of prescription contraceptives, even though plaintiffs had different doctors).

[*16] **IV. CONCLUSION**

Accordingly, the court **GRANTS** Plaintiffs' Motion to Remand.

IT IS SO ORDERED.

DATED: March 3, 2004

Nora M. Manella

United States District Judge

150TJD

********** Print Completed **********

Time of Request: Friday, April 03, 2015  18:15:09 EST

Print Number:    1827:507723309
Number of Lines: 317
Number of Pages: 6

Send To:  KERNER, KATIE
          JANET, JENNER & SUGGS, LLC
          1829 REISTERSTOWN RD STE 320
          BALTIMORE, MD 21208-7112

# EXHIBIT H

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10  ALEXA BUCK, a minor by and          CASE NO. 13CV2541 JLS (RBB)
    through her Guardian Ad Litem,
11  MICHELLE BUCK, and MICHELLE        **ORDER (1) GRANTING MOTION**
    BUCK individually,                 **TO REMAND TO STATE COURT;**
12                                      **AND, (2) DENYING AS MOOT**
                          Plaintiffs,  **MOTION FOR JUDGMENT ON**
13                                      **THE PLEADINGS**
          vs.
14                                      (ECF Nos. 10, 12)

15  McKESSON CORPORATION,
    SMITHKLINE BEECHAM
16  CORPORATION D/B/A
    GLAXOSMITHKLINE, and DOES 1
17  through 100, inclusive,

18                          Defendants.

19

20          Presently before the Court is Plaintiffs Alexa Buck and Michelle Buck's

21  ("Plaintiffs") Motion to Remand to State Court.  (Mot. to Remand, ECF No. 10.)

22  Also before the Court is Defendant GlaxoSmithKline LLC's ("GSK") response in

23  opposition, (Resp. in Opp'n, ECF No. 18), and Plaintiffs' reply in support.  (Reply

24  in Supp., ECF No. 20.)  The hearing on the motion that was set for January 9, 2014

25  was vacated and the matter taken under submission without oral argument pursuant

26  to Civil Local Rule 7.1(d)(1).  Having considered the parties' arguments and the law,

27  the Court **GRANTS** the motion.

28                              **BACKGROUND**

          Plaintiff Michelle Buck took the prescription drug Paxil during her pregnancy

13cv2541

with her daughter, Alexa Buck, which resulted in severe birth defects.[1]  Plaintiffs allege that Alexa Buck was diagnosed at birth with craniosynostosis and left frontal plagiocephaly and subsequently had to undergo corrective surgery.

On July 31, 2013, Plaintiffs filed suit for these injuries against Defendants GSK and McKesson in the Superior Court of California for the County of San Diego.  GSK is a pharmaceutical company based in Pennsylvania that manufactures Paxil.  McKesson is a corporation organized in Delaware with its headquarters in San Francisco, California.  According to Plaintiffs, McKesson packaged, marketed, distributed, promoted, and sold Paxil in California and San Diego County at all relevant times.  Plaintiffs reside in Ramona, California.

Plaintiffs bring claims against GSK and McKesson for (1) negligence and negligence per se, (2) negligent pharmaco-vigilance, (3) strict liability, (4) failure to warn, (5) breach of express warranty, (6) breach of implied warranty, (7) fraud, (8) negligent infliction of emotional distress, (9) negligent design, (10) deceit by concealment, (11) negligent misrepresentation, (12) violation of California Business and Professions Code § 17200, (13) violation of California Business and Professions Code § 17500, and (14) violation of California Civil Code § 1750.  GSK subsequently removed the case to this Court on October 22, 2013.

**LEGAL STANDARD**

In cases brought in a State court of which the district courts of the United States have original jurisdiction, a defendant may remove the case to federal district court.  28 U.S.C. § 1441(a).  Courts "strictly construe the removal statute against removal jurisdiction," however.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).  The removing party

---

[1] The facts set forth in this section are drawn entirely from Plaintiffs' state court complaint.  (*See* Notice of Removal, Ex. C., ECF No. 1.)

1     bears the burden of establishing that federal subject matter jurisdiction exists.

2     *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

3         Removal is proper  pursuant to 28 U.S.C. § 1332's grant of diversity

4     jurisdiction despite the presence of a non-diverse defendant if that defendant is a

5     fraudulently joined, or sham, defendant.  *Ritchey v. Upjohn Drug Co.*, 139 F.3d

6     1313, 1318 (9th Cir. 1998).  In the Ninth Circuit, a non-diverse defendant is deemed

7     a sham and will not defeat jurisdiction if, after all disputed questions of fact and all

8     ambiguities in the controlling state law are resolved in the plaintiff's favor, the

9     plaintiff could not possibly recover against the party whose joinder is questioned.

10    *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir.

11    1989).  The failure to state a claim against the non-diverse defendant must be

12    "obvious according to the well-settled rules of the state."  *United Computer Sys. v.*

13    *AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).  The party asserting the fraudulent

14    joinder bears the burden of proof and remand must be granted unless the defendant

15    can show that there is no possibility that the plaintiff could prevail on any cause of

16    action it brought against the non-diverse defendant.  *See Levine v. Allmerica*

17    *Financial Life Ins. & Annuity Co.*, 41 F. Supp. 2d 1077, 1078 (C.D. Cal. 1999).  In

18    other words, remand must be granted unless the defendant shows that the plaintiff

19    would not be afforded leave to amend his complaint to cure any purported

20    deficiency.  *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1170 (E.D.

21    Cal. 2011).

22                          **ANALYSIS**

23         GSK removed this action to this Court pursuant to 28 U.S.C. § 1332's grant of

24    diversity jurisdiction, alleging that McKesson was fraudulently joined as a

25    defendant, such that its non-diverse citizenship should be ignored for purposes of

26    establishing federal subject matter jurisdiction.  (*See* Notice of Removal ¶¶ 24,

27    30–43, ECF No. 1.)  Plaintiffs now move to remand, arguing that Defendants have

28    failed to meet their heavy burden of demonstrating by clear and convincing evidence

1   that it is obvious under California law that Plaintiffs cannot possibly state a viable

2   claim against McKesson.  (Mot. to Remand 3–5, ECF No. 10.)

3          District courts within the Ninth Circuit have consistently rejected attempts to

4   invoke fraudulent joinder to remove products liability actions involving McKesson

5   to a federal forum.  *See, e.g.*, *J.E. ex rel. Erwin v. SmithKline Beecham Corp. d/b/a*

6   *GlaxoSmithKline*, Case No. CV 13-04897-KAW, slip op. at 5–6 (N.D. Cal. Jan. 27,

7   2014);  *J.F. ex rel. Moore v. McKesson Corp.,* 1:13-CV-01699-LJO-JLT, 2014 WL

8   202737 at *10  (E.D. Cal. Jan. 17, 2014); *D.A. ex rel. Wilson v. McKesson Corp.*,

9   1:13-cv-01700-LJO-JLT, 2014 WL 202738 at *10 (E.D. Cal. Jan. 17, 2014);

10  *Hatherley v. Pfizer, Inc.*, CIV. 2:13-00719 WBS, 2013 WL 3354458 at * (E.D. Cal.

11  Jul. 3, 2013); *Mendez v. AstraZeneca Pharms. LP*, 1:12-CV-00535-LJO-DLB, 2012

12  WL 1911382 at *3 (E.D. Cal. May 25, 2012).  GSK attempts to distinguish this

13  unfavorable line of cases by pointing to evidence that it claims is unique to this

14  action.  According to GSK, the evidence presented here affirmatively demonstrates

15  that McKesson did not distribute the Paxil that allegedly gave rise to Plaintiffs'

16  injuries.  (*See* Resp. in Opp'n 1, ECF No. 18 ("[McKesson] is fraudulently joined

17  because *McKesson did not distribute* the Paxil [that] Michelle Buck took during her

18  pregnancy with A.B. and Plaintiffs could not have received any marketing or other

19  promotional material from McKesson relating to the Paxil Michelle Buck

20  ingested.").)  Because McKesson is definitively "outside the chain of distribution,"

21  GSK contends that McKesson is a sham defendant against whom it is impossible for

22  Plaintiffs to state a claim.  (*Id.* at 2.)

23          Yet, as GSK concedes, California law imposes liability on entities outside the

24  chain of distribution in limited circumstances.  (*See* Resp. in Opp'n 20, ECF No. 18

25  ("A defendant outside the chain of distribution may . . . be held liable under a strict

26  liability theory").)  Even if GSK's evidence is fully credited, GSK fails to show that

27  it is obvious that Plaintiffs cannot state a claim against McKesson under applicable

28  California law, such that all of their claims would be dismissed without leave to

1    amend.  GSK's alternative arguments invoke pleading standards and affirmative

2    defenses that lack merit or that are not pertinent to establishing removal jurisdiction.

3    The Court elaborates on each of these holdings in turn.

4    **1.      Defendants Fail to Show That It Is Obvious Under Well-Settled**

5    **California Law That McKesson Cannot Be Held Liable If It is Outside**

6    **the Chain of Distribution**

7        California law has long provided that manufacturers, distributors, and retailers

8    have a duty to ensure the safety of their products and will be held strictly liable for

9    injuries caused by a defect in their products.  *O'Neil v. Crane Co.*, 53 Cal. 4th 335,

10   342 (2012).  Strict liability extends to non-manufacturing parties outside the vertical

11   chain of distribution of a product that play an integral role in the producing and

12   marketing enterprise of a defective product and that profit from placing the product

13   into the stream of commerce.  *Bay Summit Cmty. Ass'n v. Shell Oil Co.*, 59 Cal.

14   Rptr. 2d 322, 328 (1996).  "The imposition of strict liability depends on whether the

15   facts establish a sufficient causative relationship or connection between the

16   defendant and the product so as to establish that the policies underlying the strict

17   liability doctrine are satisfied."  *Id.* at 330.  "Specifically, a defendant involved in the

18   marketing/distribution process has been held strictly liable if three factors are

19   present: (1) the defendant received a direct financial benefit from its activities and

20   from the sale of the product; (2) the defendant's role was integral to the business

21   enterprise such that the defendant's conduct was a necessary factor in bringing the

22   product to the initial consumer market; and (3) the defendant had control over, or a

23   substantial ability to influence, the manufacturing or distribution process.  *Id.*

24       Here, GSK's primary argument is that the factors identified in *Bay Summit*

25   *Community Association v. Shell Oil Co.* do not apply in this case because McKesson

26   did not distribute the Paxil that caused Plaintiffs' injuries.  (Resp. in Opp'n 19–21,

27   ECF No. 18.)  As the Central District of California recently noted in *W.W. v.*

28   *McKesson Corp.*, however, GSK's argument is inapposite, as the *Shell Oil* case

- 5 -

13cv2541

specifically provides for liability for entities *outside* the chain of distribution. Case No. SACV 13-1649 AG (DFMx), slip op. at 4–5 (C.D. Cal. Jan. 31, 2014). Although GSK raises potentially valid concerns regarding the underlying merits of Plaintiffs' efforts to impose strict liability on McKesson on the basis of the theory articulated in *Shell Oil*, GSK has nonetheless failed to show that Plaintiffs' claims are obviously without merit under California law, such that they would be dismissed without leave to amend.

As the court emphasized in *W.W.*, "that a defendant might be dismissed, particularly after a close call in an evolving area of state law, does not mean that the defendant was fraudulently joined." *Id.* Rather, these are "complex issues of state law" that should be decided in the first instance by state, not federal, courts. *Id.*

**2. Defendants' Other Arguments Invoke Pleading Standards and Affirmative Defenses That Lack Merit or That May Not Be Considered For Purposes of Establishing Removal Jurisdiction**

*A. Allegations Based on Information and Belief*

GSK contends that Plaintiffs' complaint is inadequate because the allegations against McKesson are made solely upon information and belief. (Resp. in Opp'n 11–12, ECF No. 18.) According to GSK, the California rule is that a plaintiff "lacking sufficient evidentiary support to allege in the complaint that a particular defendant manufactured or supplied an injury-causing product must name Doe defendants, rather than naming an actual defendant on information and belief." (*Id.* (citing *Bockrath v. Aldrich Chem. Co.*, 21 Cal. 4th 71, 81 (1999)).)

GSK's argument regarding the applicability of the *Bockrath* rule has been previously rejected by other district courts within the Ninth Circuit. *See, e.g.*, *Bartal v. AstraZeneca Pharms. LP*, No. 5:12-cv-02548 (PSG) RMW, 2012 WL 3201241 at *3 (N.D. Cal. Aug. 3, 2012). In any case, even if the *Bockrath* rule applies, Plaintiffs' allegation that McKesson is liable under *Shell Oil* as a result of its involvement in the marketing and promotion of Paxil is an independent basis for

1    joining McKesson by name rather than as a Doe defendant, as McKesson's role on

2    this point is not in doubt. *See id.* ("[P]laintiffs contend that McKesson was involved

3    in the marketing and promotion of [the allegedly defective drug] and, therefore, is

4    liable even if it did not distribute the particular [drug] plaintiffs took. Thus, it was

5    proper for plaintiffs to join McKesson by name rather than as an additional Doe

6    defendant.").

7    B.    *Learned Intermediary Doctrine*

8         GSK further argues that, pursuant to the "learned intermediary doctrine," the

9    duty to warn runs only from drug manufacturers to prescribing physicians, and from

10    physicians to patients, such that McKesson, as a mere distributor, cannot be held

11    liable. (Resp. in Opp'n 21, ECF No. 18.) The Court agrees with Plaintiffs, however,

12    that the learned intermediary doctrine is an affirmative defense that may not serve as

13    a basis for federal removal jurisdiction. *See W.W.*, Case No. SACV 13-1649 AG

14    (DFMx), slip op. at 5 ("[A]ffirmative defenses that go to the merits of a plaintiff's

15    case[] do not support removal" (citing *Hunter v. Philip Morris USA*, 582 F.3d 1030,

16    1044–45 (9th Cir. 2009))). In any case, in light of Plaintiffs' additional claims for

17    strict liability pursuant to *Shell Oil*, GSK fails to show that invoking the "learned

18    intermediary doctrine" would result in dismissal of all of Plaintiffs' claims against

19    McKesson with prejudice.

20    C.    *Federal Preemption*

21         GSK also contends that federal drug labeling requirements preempt any

22    negligence or strict liability cause of action based on McKesson's role as a

23    distributor. (See Resp. in Opp'n 23, ECF No. 18.) Federal preemption is an

24    affirmative defense, however, and may not serve as the basis for removing an action

25    to federal court. *See W.W.*, Case No. SACV 13-1649 AG (DFMx), slip op. at 5.

26    D.    *Other Grounds Raised in the Notice of Removal*

27         GSK cited several other grounds for removal in its original Notice of

28    Removal. (Notice of Removal ¶¶ 32, 28, 41, 42, 43, ECF No. 1.) Although

1  Plaintiffs explicitly challenge these other arguments in their motion to remand, GSK

2  fails to address them at all in its opposition.  Accordingly, the Court does not discuss

3  those additional grounds for removal here, except to note that none of them

4  undermines the Court's conclusion that GSK has failed to show that all of Plaintiffs'

5  claims against McKesson obviously fail under well-settled California law, such that

6  they would be dismissed without leave to amend.

7          In sum, GSK's fraudulent joinder argument lacks merit.  As the Court lacks

8  jurisdiction over this action due to the presence of McKesson, a non-diverse

9  defendant, the Court **GRANTS** Plaintiffs' motion to remand this action to state

10  court.

                                    **CONCLUSION**

12          For the reasons stated above, the Court **GRANTS** Plaintiffs' motion and

13  remands this action to the Superior Court of California for the County of San Diego.

14  McKesson's pending motion for judgment on the pleadings, (ECF No. 12), is

15  **DENIED AS MOOT**.

16          This order concludes the litigation in this matter.  The Clerk shall close the

17  file.

18          **IT IS SO ORDERED.**

19

20  DATED:  July 29, 2014

21                                    Honorable Janis L. Sammartino
                                      United States District Judge

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 226 of 245

D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)

2014 WL 202738

2014 WL 202738
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

D.A., a minor by and through his
guardian ad litem, April WILSON, and
April Wilson, individually, Plaintiffs,
v.
McKESSON CORPORATION and Smithkline
Beecham Corporation d/b/a Glaxosmithkline,
and Does 1 through 100, inclusive, Defendants.

No. 1:13–cv–01700–LJO–JLT.   |   Jan. 17, 2014.

**Attorneys and Law Firms**

Adam D. Peavy, PHV, Bailey Peavy Bailey, PLLC, Houston, TX, James Paul Sizemore, Ruth Thi Rizkalla, Sizemore Law Firm, El Segundo, CA, John Hamilton Gomez, John Paul Fiske, Stephanie S. Poli, Gomez Iagmin Trial Attorneys, San Diego, CA, for Plaintiffs.

Peter A. Strotz, Donald Frederick Zimmer, Jr., Kendra L. Orr, King & Spalding, LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING PLAINTIFFS'
MOTION TO REMAND THE ACTION TO
TULARE COUNTY SUPERIOR COURT**

**ORDER DIRECTING THE CLERK
OF COURT TO CLOSE THE ACTION**

JENNIFER L. THURSTON, United States Magistrate Judge.

**\*1** D.A., by and through his guardian ad litem April Wilson, and April Wilson, as an individual (collectively, "Plaintiffs"), seek remand of this action Kern County Superior Court. (Doc. 6.) Plaintiffs argue this Court lacks diversity jurisdiction because Defendant McKesson is a citizen of California. SmithKline Beecham Corporation, doing business as GlaxoSmithKline, LLC ("GSK" or "Defendant") opposes the motion to remand, arguing this Court has jurisdiction because Defendant McKesson was fraudulently joined. (Doc. 19.)

The Court found the matter suitable for decision without oral arguments, and Plaintiffs' motion was taken under submission pursuant to Local Rule 230(g) on January 14, 2014. For the reasons set forth below, Plaintiffs' motion to remand is **GRANTED.**

*I. Factual and Procedural History*

Plaintiffs initiated this action by filing a complaint on August 9, 2013, in Tulare County Superior Court, Case No. S–1500–CV–279990–DRL. (Doc. 1 at 2; Doc. 1–1 at 3.) D.A. alleges his mother was prescribed "paroxetine" which "is manufactured, promoted, distributed, labeled and marketed by GSK under the trade name[s] Paxi l®, Paxi 1 Oral Suspension ®, and Paxi 1 CR®."(Doc. 1–1 at 6, ¶¶ 20–21.) Paroxetine"is a member of the class of drugs known as 'selective serotonin reuptake inhibitors' or 'SSRIs,'" and is used to treated depression in adults. (*Id.,* ¶ 20.)Plaintiffs allege Ms. Wilson took Paxi while pregnant, and that upon Plaintiffs' "information and belief, McKesson supplied the Paxil® pills ingested by April Wilson that caused injury to [D.A.]"(*Id.* at 5–6, ¶¶ 12, 21.)

According to Plaintiffs, as a result of his mother's use of Paxi l, D.A. "has been diagnosed with Aortic Valve Stenosis and Abnormal Aortic Valve, which are severe heart defects from which he continues to suffer."(Doc. 1–1 at 4, ¶ 1.) Plaintiffs allege that "[a]t the time Paxi l® was prescribed to Ms. Wilson, GSK knew through pre-market studies and post-marketing studies and reports that Paxil® was associated with a significant increased risk of cardiac birth defects in babies whose mothers ingested Paxi l® during pregnancy."(*Id.* at 6, ¶ 22.)Plaintiffs allege GSK and McKesson are liable for:

(a)   Carelessly and negligently designing, researching, developing, testing, inspecting, producing, manufacturing, analyzing, merchandising, advertising, promoting, labeling, distributing, marketing and selling PAX I L®;

(b) Failing to fully disclose the results of the testinand other information in its possessing regardi ng the possi bi l ity that PAX I L can interfere with the proper development of an unborn fetus;

(c) Being careless and negligent in that Defendants knew or should have known that PAXIL was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

2014 WL 202738

(d) Negligently and carelessly failing to adequately warn the medical community, the general public, and Plaintiffs of the dangers of using PAX I L during pregnancy;

**\*2** (e) Negligently and carelessly representing that PAX I L® was safe for use during pregnancy, when, in fact, Defendants knew or should have known that it was unsafe for this use;

(f) Negligently and carelessly promoting, advertising, marking, distributing, and selling PAXI L® as safe and effective for use by pregnant women when, in fact, it was unsafe;

(g) Negligently and carelessly failing to act as a reasonable prudent drug manufacturer;

(h) Negligently and carelessly over-promoting PAXIL® in a zealous and unreasonable way, without regard to the potential danger that it poses for an unborn fetus; and

(i) [Promoting PAXIL] for use with pregnant women, despite the fact that GSK knew or should have known that PAXIL® is associated with an increased risk of congenital cardiovascular abnormalities.

(Doc. 1–1 at 10–11.) In addition, Plaintiffs allege that in spite of the dangers shown by the studies, "GSK aggressively and actively promoted Paxil® for use with pregnant women" and "even suggested that was safer and more efficacious than other SSRIs on the market, such as Prozac and Zoloft."(*Id.* at 6, ¶ 23.)However, Paxil was "never approved by the FDA for use with pregnant women."(*Id.,* ¶ 20.)

For the foregoing acts, Plaintiffs raise the following causes of action: (1) negligence and negligence per se, (2) negligent pharmaco-vigi l ance, (3) strict liability, (4) failure to warn, (5) breach of express warranties, (6) breach of implied warranties, (7) fraud, (8) negligent infliction of emotional distress, (9) negligent design, (10) deceit by concealment in violation of Cal. Civ.Code §§ 1709 and 1710, (11) negligent misrepresentation, (12) violations of Cal. Bus. & Prof.Code § 17200, (13) violations of Cal. Bus. & Prof.Code § 17500, (14) and a violation of the Consumer Legal Remedies Act as set forth in Cal. Civ.Code § 1750. (*See generally* Doc. 1–1 at 3, 10–29.)

On October 23, 2013, GSK filed a Notice of Removal, thereby initiating the action in this Court. (Doc. 1.) GSK asserted

the action was properly removed pursuant to 28 U.S.C. §§ 1332 and 1441 because this is "an action between citizens of different states in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."(Doc. 1 at 2, ¶ 4.) According to GSK, "McKesson has not been properly joined in this lawsuit," and as such McKesson's consent to removal was not required. (*Id.* at 3, ¶¶ 11, 13.)

Plaintiffs filed the motion to remand now pending before the Court on November 21, 2013, asserting removal was not proper because there is not complete diversity among the parties. (Doc. 6.) GSK filed its opposition to remand on December 30, 2013 (Doc. 19), to which Plaintiffs filed a reply on January 10, 2013. (Doc. 20).

## *II. Removal Jurisdiction*

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams,* 482 U.S. 286, (1987). Specifically,

> **\*3** Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."*Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles,* 980 F.2d 564, 566 (9th Ci r.1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Ci r.1996); *Abrego v. Dow Chem. Co.,* 443 F.3d 676, 683–85 (9th Ci r.2006); *see also Calif. ex. rel. Lockyer v. Dynegy,* 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute")."[A] ny doubt about the right of removal requires resolution in favor of remand."*Moore–Thomas v. Alaska*

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 228 of 245

D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)

2014 WL 202738

*Airlines, Inc.,* 553 F.3d 1241, 1244 (9th Ci r.2009) (citing *Gaus,* 980 F.2d at 566).

### III. Diversity Jurisdiction and Fraudulent Joinder

The District Court has original jurisdiction over actions in which there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a). Plaintiffs allege they are California residents; SmithKline Beecham (GSK) is a corporation with its principal place of business in Pennsylvania; and McKesson is a Delaware corporation with its principal place of business in San Francisco, California. (Doc. 1–1 at 4–5). GSK established diversity jurisdiction between its company and Plaintiffs, and asserts the requirement of 28 U.S.C. § 1332(a) is satisfied because McKesson is a sham defendant whose presence does not destroy the diversity jurisdiction. (Doc. 1 at 2–3.) As explained by the Ninth Circuit, an exception to the requirement for complete diversity exists if a non-diverse defendant is "fraudulently joined." *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

"Fraudulent joinder is a term of art," and does not require an ill motive by a plaintiff. *McCabe,* 811 F.2d at 1339. The Court need not find the joinder was for the purpose of preventing removal. *Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1296 (C.D.Cal.2000). Joinder is deemed fraudulent if the plaintiff cannot state a cause of action against the non-diverse defendant. *Nasrawi v. Buck Consultants, LLC,* 776 F.Supp.2d 1166, 1175 (E.D.Cal.2011). The Court must determine that "the plaintiff could not possibly recover against the party whose joinder is questioned." *Id.; see also Briano,* 126 F.Supp.2d at 1296 (explaining a court must find "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court"). When evaluating whether a plaintiff can prevail on the merits of his claim against a defendant who is alleged to have been fraudulently joined, "all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor." *Nasrawi,* 776 F.Supp.2d at 1170 (citing *Kruso v. Int'l Tel. & Tel. Corp.,* 972 F.2d 1416, 1426 (9th Cir.1989).

**\*4** The Court may look beyond the pleadings to determine if a defendant has been fraudulently joined, but " 'a plaintiff need only have one potentially valid claim against a non-diverse defendant' to survive a fraudulent joinder challenge." *Nasrawi,* 776 F.Supp.2d at 1170 (citing *Knutson v. AllisChalmers Corp.,* 358 F.Supp.2d 983, 993–95 (D.Nev.2005); *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Ci r.1998)). The party alleging fraudulent

joinder has the "heavy burden" of demonstrating by clear and convincing evidence, the non-diverse party has been joined fraudulently. *Hamilton Materials, Inc. v. Down Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007); *Padilla v. AT & T Corp.,* 697 F.Supp.2d 1156, 1159 (C.D.Cal.2009).

Where the moving party must resort to defenses to the merits of the action to demonstrate the defendant was fraudulently named, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir.2007). In this event, the defendant has failed to "overcome the 'strong presumption against removal jurisdiction.' " *Gaus,* 980 F.2d at 566.

### IV. Discussion and Analysis

In the Notice of Removal, GSK asserted the Court has diversity jurisdiction over the action because McKesson has been fraudulently joined and its citizenship "must be ignored." (Doc. 1 at 7, emphasis omitted.) According to GSK, Plaintiffs' claims against McKesson fail because: "(1) Plaintiffs have failed to allege any factual basis for the claims asserted against McKesson and (2) there is no legal basis for the claims Plaintiffs seek to bring against McKesson as pleaded." (*Id.*) On the other hand, Plaintiffs argue "GSK fails to prove by clear and convincing evidence that McKesson was fraudulently joined," and that "GSK's fraudulent joinder arguments have been rejected time and time again by district Courts in the Ninth Circuit and other Circuits. (Doc. 6–1 at 12, citing, e.g., *Hatherley v. Pfizer, Inc.,* 2013 U.S. Dist. LEXIS 93943, at \*5, 2013 WL 3354458 (E.D.Cal. July 3, 2013); *K.E.R. v. Pfizer, Inc.,* 2013 U.S. Dist. LEXIS 153747, at \*3–5 (E.D.Cal. Oct. 23, 2013); *A.S. v. Pfizer, Inc.,* 2013 U.S. Dist. LEXIS 76307, at \* 30–31 (E .D.Cal. May 30, 2013).

### A. Adequacy of the Complaint

As an initial matter, GSK contends Plaintiffs fail to "make any material allegations" against McKesson. (Doc. 1 at 7.) GSK notes Plaintiff states upon "information and belief" that McKesson distributed the Paxil ingested by Ms. Wilson, and argues Plaintiffs fail to allege facts to support this allegation. (*Id.;* Doc. 19 at 7.) Consequently, GSK argues Plaintiffs fail to state adequate facts to support a claim against McKesson under California pleading standards. (Doc. 19 at 7, citing *Bockrath v. Aldrich Chem. Co., Inc.,* 21 Cal.4th 71, 81, 86 Cal.Rptr.2d 846, 980 P.2d 398 (1999)).

D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)

2014 WL 202738

Case 2:16-md-02740-JTM-MBN Document 469-3 Filed 05/19/17 Page 229 of 245

**\*5** Previously, this Court determined McKesson was fraudulently joined in an action when the plaintiff based her claims only on the fact that "McKesson is a major distributor of the drug.' " *Aronis v. Merck & Co.,* 2005 WL 5518485, at * 1 (E.D.Cal. May 3, 2005)). Here, however, Plaintiffs have not only asserted that McKesson is a major distributor of Paxil, but have alleged also that it "packaged, marketed, distributed, promoted and sold Paxil® in California and Kern County" and that "[u]pon in formation and belief, *McKesson supplied the Paxil®pills ingested by April Wilson.*" (Doc. 1– 1 at 5, ¶¶ 10 and 12, emphasis added). Such allegations were absent from the complaint in *Aronis.*Furthermore, this Court has explained: "The fact that Plaintiff's allegations based on information and belief does not make it 'obvious according to the settled rules of the state' that the complaint fails to state a claim."*Oliver v. McNeil–PPC, Inc.,* 2013 WL 459630, at * 6 (citing *McCabe,* 811 F.2d at 1339; *Mendez v. AstraZeneca Pharmaceuticals LP,* 2012 WL 1911382, at * 3 (E.D.Cal. May 25, 2012)).

Under California law, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language."Cal.Code Civ. Pro. § 425.10(a)(1). This requires "only general allegations of ultimate fact."*McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1469–1470, 49 Cal.Rptr.3d 227 (2006). The Court of Appeal explained: "The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim."*Id.* (internal citations omitted). Moreover, a " 'plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.' "*Doe v. City of Los Angeles,* 42 Cal.4th 531, 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (2007)."When a plaintiff lacks knowledge and the means of obtaining knowledge of facts material to his or her cause of action because the matters are peculiarly within the knowledge of the adverse party, and the pleader can learn of them only from statements of others, the pleader may plead what he or she believes to be true as a result of information (hearsay) the pleader has received." [1] *Dey v. Cont'l Cent. Credit,* 170 Cal.App.4th 721, 725 n. 1, 88 Cal.Rptr.3d 241 (2008) (internal quotation marks omitted).

Plaintiffs allege GSK and McKesson were involved with "designing, researching, developing, testing, inspecting, producing, manufacturing, analyzing, merchandising, advertising, promoting, labeling, distributing, marketing, and selling PAXIL.®" (Doc. 1–1 at 10, ¶ 40.) In addition, Plaintiffs contend the defendants, including McKesson, "knew or should have known that PAXIL® could be dangerous and unsafe for pregnant women and the developing fetus," yet the defendants "failed to adequately warn of said risks."(*Id.* at 11, ¶ 43, 88 Cal.Rptr.3d 241; 14, ¶ 48.) According to Plaintiffs, "as a direct and proximate result" of the defendants' actions, the plaintiffs "incurred past and future general and special damages."(*See id.* at 12, ¶ 46, 88 Cal.Rptr.3d 241). Whether McKesson distributed the drug which caused the alleged injuries is not information within the Plaintiffs' knowledge. Instead, they must obtain this information from McKesson, the pharmacy or other third party. Thus, the allegation that McKesson distributed the drug at issue, based upon information and belief, is sufficient. As a result, the Court finds Plaintiffs have sufficiently alleged a causal link between McKesson and the injuries suffered.

**B. Learned Intermediary Doctrine**

**\*6** According to GSK, "there is no legal basis for the causes of action that Plaintiffs assert against McKesson because the claims are based on an alleged failure to warn that is premised, for McKesson, on a non-existent duty to warn."(Doc. 1 at 11.) GSK argues that "McKesson bears no duty to warn based upon the learned intermediary doctrine, which provides that the duty to warn about a drug's risks runs from the manufacturer to the physician (the 'learned intermediary') and then from the physician to the patient."(*Id.,* citing *Brown v. Superior Court,* 44 Cal.3d 1049, 1061–62 & 1061 n. 9, 245 Cal.Rptr. 412, 751 P.2d 470 (1988); *Carlin v. Superior Court,* 13 Cal.4th 1104, 1116, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996)).

Specifically, under the learned intermediary doctrine, the duty to warn of risks involved with the use of prescription drugs "runs to the physician, not the patient."*Carlin,* 13 Cal.4th at 1116, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (emphasis omitted). The California Court of Appeal explained that the rationale behind the learned intermediary doctrine as follows:

> (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the

D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)

2014 WL 202738

adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient.

*Carmichael v. Reitz,* 17 Cal.App.3d 958, 989, 95 Cal.Rptr. 381 (1971) (citation omitted). The doctrine, "where it applies at all, applies only if a manufacturer provided adequate warnings to the intermediary."*Stewart v. Union Carbide Corp.,* 190 Cal.App.4th 23, 29, 117 Cal.Rptr.3d 791 (2010); *see also Love v. Wolf,* 226 Cal.App.2d 378, 395, 38 Cal.Rptr. 183 (1964) (explaining that with medication, "if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed").

Importantly, "[t]he learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder."*Martin v. Merck & Co.,* 2005 WL 1984483, at *4 (E.D.Cal. Aug.15, 2005) (citing *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318–19 (9th Cir.1998)). In any event, the argument that the learned intermediary doctrine should apply by analogy to McKesson as a distributor rather than a manufacturer is a tacit admission that this defense does not "obviously" preclude a cause of action against McKesson. On the other hand, the defense applies only where the warning given was adequate based upon "what was scientifically knowable." *Id.* Where the warning fails to provide the doctor with known or knowable information which militates against use of the drug by certain patients, the learned intermediary doctrine does not preclude imposition of liability. *Id.* In California, this includes liability imposed on the distributor. *Id.*

**\*7** Here, as stated above, Plaintiffs alleges Defendants knew of the risks to pregnant women that Paxi l posed and failed to warn of these risks. Further, Plaintiffs allege Defendants represented Pax i l as being a safe alternative for pregnant women-and more safe than Prozac or Zoloft—despite the fact that the FDA had never approved the drug for use by pregnant women. (Doc. 1–1 at 1 1, ¶¶ 20, 23.) Thus, based upon these factual allegations, the learned intermediary doctrine would not preclude a cause of action against McKesson.

### C. Products liability under California law

GSK argues McKesson is fraudulently joined because the company "cannot be held liable under a products liability theory."(Doc. 19 at 18.) GSK observes that in *Skinner v. Warner–Lambert Co.,* the Central District opined "pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability.'(*Id.,* quoting *Skinner,* 2003 WL 25598915 (C.D.Cal. Apr.28, 2003)). [2] Thus, GSK appears to argue comment k precludes a products liability claim against McKesson.

On the other hand, Plaintiffs observe that following *Skinner,* the Central District "expressly rejected" its holding and determined: "[C]omment k ... does not exempt distributors from strict liability. Rather, comment k states a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given."(Doc. 6–1 at 24, quoting *Black v. Merck & Co, Inc.,* 2004 U.S. Dist. LEXIS 29860 at *12–13, 2004 WL 5392660 (C.D.Cal. Mar. 3, 2004)). Therefore, Plaintiffs conclude "comment k does not foreclose any liability against McKesson" because "Plaintiffs allege that Paxil was not properly marketed and that proper warnings were not given."(*Id.*)

Generally, under California law, "a defendant involved in the marketing/distribution process has been held strictly liable if three factors are present: (1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process."*Bay Summit Cmty. Ass'n v. Shell Oil Co.,* 51 Cal.App.4th 762, 773, 59 Cal.Rptr.2d 322 (1996) (citing *Kasel v. Remington Arms Co.,* 24 Cal.App.3d 711, 724, 101 Cal.Rptr. 314 (1972)). Accordingly, California law provides a distributor may be held strictly liable. *See, e.g., Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 262–63, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); *Daly v. General Motors Corp.,* 20 Cal.3d 725, 739, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Anderson v. Owens–Corning Fiberglass Corp.,* 53 Cal.3d 987, 994, 281 Cal.Rptr. 528, 810 P.2d 549 (1991); *Bostick v. Flex Equipment Co.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007).

**D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)**

2014 WL 202738

Importantly, in *Brown* the California Supreme Court did not address the liability of a distributor of prescription drugs, but only the liability of a manufacturer. The court observed:

> **\*8** The test stated in comment k *is to be distinguished from strict liability for failure to warn.* Although both concepts identify failure to warn as the basis of liability, comment k imposes liability only if the manufacturer knew or should have known of the defect at the time the product was sold or distributed. Under strict liability, the reason why the warning was not issued is irrelevant, and the manufacturer is liable even if it neither knew nor could have known of the defect about which the warning was required. Thus, *comment k, by focussing (sic) on the blameworthiness of the manufacturer, sets forth a test which sounds in negligence, while imposition of liability for failure to warn without regard to the reason for such failure is consistent with strict liability* since it asks only whether the product that caused injury contained a defect.

*Brown,* 44 Cal.3d at 1059, n. 4, 245 Cal.Rptr. 412, 751 P.2d 470 (emphasis added). The court determined "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069, 245 Cal.Rptr. 412, 751 P.2d 470. Thus, Brown does not necessarily preclude Plaintiffs' claim for strict liability against McKesson as a distributor of Pax i l. Indeed, because Plaintiffs claim that the label failed to warn of known or knowable risks to pregnant women, *Brown* does not preclude liability even for the manufacturer.

After considering *Brown,* this Court observed previously, "In the prescription drug context, the California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for a failure to warn of knowable risks. [Citation] The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product." *Mendez,*

2012 WL 1911382, at \* 2 (citing *Bostick v. Flex Equip. Co., Inc.,* 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007). California courts have not addressed whether a distributor in prescription drug cases may be held strictly liable. *Id.* Therefore, in *Mendez* the Court declined to find the plaintiff's claim for strict liability against McKesson was not viable under California law. Likewise, in *Hinds v. Zimmer,* the Court concluded *Brown* has not foreclosed strict liability for distribution of a product. *Id.,* 2009 WL 1517893, at \* 4 (E.D.Cal. June 1, 2009).

Significantly, this Court's rulings are consistent with other courts within the Ninth Circuit that have examined the issue. *See, e.g., Smith v. Amylin Pharmaceuticals, LLC,* 2013 WL 3467442, at \* 6 (S.D.Cal. July 10, 2013) ("because Plaintiff alleges that Defendants did not provide the appropriate warnings, comment k does not absolutely preclude a finding of strict liability against McKesson); *Norris v. AstraZeneca Pharmaceuticals LP,* 2012 WL 1944760, at \* 2–3 (S.D.Cal. May 30, 2012) (concluding "the complaint adequately establishes that a distributor of pharmaceuticals may be liable under California law"); *Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.,* 2008 WL 2477389, at \*6 (N.D.Cal. Jun.18, 2008) ("it is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn"); *Black,* 2004 WL 5392660 at \* 4 (finding comment k "does not exempt distributors from strict liability"); *Rivera v. AstraZeneca Pharms. LP,* 2012 WL 2031348 (C.D.Cal. June 5, 2012) (collecting cases and finding it was not obvious the plaintiff's claims against McKesson would fail). Thus, the Court cannot find it is obvious Plaintiffs' strict productions liability claim against McKesson fails as a matter of law.

**D. Preemption**

**\*9** According to GSK, "Plaintiffs also have no valid claims against McKesson because, under *Mutual Pharm. Co. v. Bartlett,* 133 S.Ct. 2466 (2013) and *PLIVA v. Mensing,* ––– U.S. ––––, ––––, 131 S.Ct. 2567, 2579, 180 L.Ed.2d 580 (2011), those claims are preempted by federal law." (Doc. 19 at 19.) GSK contends that "McKesson could not legally change or add warnings to the FDA-approved labeling, just like the generic drug manufacturer defendants in *Bartlett* and *Mensing.*" (*Id.*)

Notably, neither *Bartlett* nor *Mensing* involved a distributor but, instead, as GSK recognizes, involved manufacturers of a generic medication. In *Mensing,* the manufacturer gained FDA approval to manufacture the drug based upon the

D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)

2014 WL 202738

Hatch–Waxman Amendments. *Id.,* 131 at 2574–2575.These defendants, therefore, were precluded from any effort to modify the warning labels because they were required to exactly reflect that provided on the name brand medication. *Id.* at 2575.Recently, the Court referred to this ruling in *Bartlett,* stating that *PLIVA v. Mensing* "made clear, federal law prevents generic drug manufactures from changing their labels." *Bartlett,* 133 S.Ct. at 2476.The Court explained that because the drug at issue could not be redesigned without being considered a new drug, the only way for the generic manufacturer to escape liability was to redesign the drug's label, which is impermissible under federal law. *Id.* at 2476–78.

Here, however, at issue is a *brand* name medication whose manufacturer was permitted to make modifications to the warning label through the CBE ("changes being effected") process, which permits labels to be changed to add or strengthen warnings. *See Mensing,* 131 S.Ct at 2675. Previously, this Court declined to find a plaintiff's failure-to-warn claims in a similar action in which the brand name manufacturer asserted the plaintiffs' claims against McKesson were preempted, explaining:

> To find plaintiffs' failure-to-warn claims preempted, the court would have to extend *Mensing* and *Bartlett;* that is, it would have to hold that the reasoning the Supreme Court used in those cases to preempt state-law claims against generic manufacturers compels the conclusion that state-law claims against brand-name drug distributors are also preempted.

*Hatherley v. Pfizer, Inc.,* 2013 U.S. Dist. L EX IS 93943 at * 19, 2013 W L 3354458 at *6. (E.D.Cal. July 3, 2013). Therefore, the Court concluded that "unless and until this rationale is extended, it is not obvious that plaintiffs have no claim against McKesson under California law because of a preemption defense." *Id.* (internal quotation marks and citation omitted). Likewise, the Southern District has declined to extend *Mensing* and *Bartlett* to pharmaceutical distributors such as McKesson. *See, e.g., Smith v. Amylin Pharms., LLC,* 2013 U.S. Dist. LEXIS 96612 at * 12, 2013 WL 3467442 at *4 (S.D.Cal. July 10, 2013) (recognizing "the logic of [the defendant's] argument," but concluding "unless and until this rationale is extended to distributors, it is not obvious, accordingly to the well settled rules of this state, that Plaintiff has absolutely no claim against McKesson").

**\*10** Moreover, the Supreme Court has explained that federal preemption is a defense to a claim. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13–14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Further, the Ninth Circuit has determined it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on a motion to remand. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1045 (2009). The Court explained:

> The preemption defense ... goes to the merits of the plaintiff's case. When a defendant asserts that the plaintiff's claim is i m pl iedly preempted by federal l aw, **it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'** *Hamilton Materials,* 494 F.3d 1203, 1206 (2007). Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. **In such a case, the defendant has failed to overcome the 'strong presumpti on against removal jurisdiction.'** *Gaus,* 980 F.2d at 566.

*Id.* (emphasis added). Consequently, it is inappropriate to determine whether Plaintiffs' claims against McKesson are preempted by federal law.

### IV. Conclusion and Order

Plaintiffs have articulated a valid theory of liability under California law, and GSK has failed to meet the burden of establishing with "clear and convincing evidence" that Defendant McKesson was fraudulently joined in this action. *Hamilton Materials,* 494 F.3d at 1206.Because the Court lacks diversity jurisdiction over this matter, it would be improper to permit the parties to conduct discovery as requested by GSK. *See Smallwood v. Ill. Cent. R.R Co.,* 385 F.3d 568, 573–74 (5th Cir.2004) (observing the request for jurisdictional discovery "itself points an inability of the removing party to carry its burden").

Based upon the foregoing, **IT IS HEREBY ORDERED**:

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 233 of 245

D.A. ex rel. Wilson v. McKesson Corp., Slip Copy (2014)

2014 WL 202738

1. Plaintiffs' motion to remand (Doc. 6) is **GRANTED;**

2. This matter is **REMANDED** to Tulare County Superior Court; and

3. The Clerk of Court is **DIRECTED** to close this matter, because this Order terminates the action in its entirety.

IT IS SO ORDERED.

Footnotes

1    As in *Bartal v. AstraZeneca Pharm. LP,* 2012 WL 3201241 at *3 (N.D.Cal. Aug.3, 2012), the Court does not find *Bockrath v. Aldrich Chem. Co., Inc.,* 21 Cal.4th 71, 81–86, 86 Cal.Rptr.2d 846, 980 P.2d 398 (1999) requires a different result. In *Bockrath,* the plaintiff listed numerous toxins to which he may or may not have been exposed and which may have caused him to develop cancer. *Id.* at 80, 86 Cal.Rptr.2d 846, 980 P.2d 398.There was no factual allegation that the plaintiff was exposed to any particular toxin which he alleged actually caused the injury. *Id.* In remanding the matter for another opportunity to plead his case, to demonstration which of the toxins caused his injury and to identify who manufactured or supplied the toxin. *Id.* In doing so, the Court urged the plaintiff to avail himself of Doe pleading as appropriate but held, "If plaintiffs do not have a sufficient basis to allege that a particular internalized injury-causing toxin was manufactured or supplied by a specific person or entity, their complaints must name Doe defendants ...*Id.* at 80–81, 86 Cal.Rptr.2d 846, 980 P.2d 398.However, "Plaintiffs who know more should, of course, allege additional facts that are important in apprising the defendant of the basis for the claim ..."*Id.* at 80, 86 Cal.Rptr.2d 846, 980 P.2d 398.Indeed, the Court rejected one defendant's argument that the plaintiff should have named Doe defendants rather than naming the defendants. The Court rejected this argument and observed that naming a Doe defendant is proper *only when* the "plaintiff is ignorant of the identities of those who allegedly caused him to contract multiple myeloma. [Citation] As we have explained, he told the trial court otherwise [Citation] and his complaint avers otherwise."Here, Plaintiffs allege McKesson distributed the drug which caused the harm and have alleged why they think so. This is sufficient even under *Bockrath .*

2    Comment k of the Restatement (Second) of Torts Section 402A provides: "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 234 of 245

J.P. ex rel. Plummer v. McKesson Corp., Slip Copy (2014)

2014 WL 3890326

2014 WL 3890326
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

J.P., a minor by and through his Guardian
Ad Litem, Alice Plummer, and Alice
Plummer Individually, Plaintiffs,

v.

McKESSON CORPORATION and SmithKline
Beecham Corporation d/b/a, GlaxoSmithKline,
and Does 1 through 100, inclusive, Defendants.

No. 2:13–cv–02207–TLN–DAD.   |
Signed Aug. 6, 2014.   |   Filed Aug. 7, 2014.

**Attorneys and Law Firms**

James Paul Sizemore, Ruth Thi Rizkalla, Sizemore Law Firm,
El Segundo, CA, for Plaintiffs.

Peter A. Strotz, Kendra L. Orr, Donald Frederick Zimmer, Jr.,
King & Spalding, LLP, San Francisco, CA, for Defendants.

### ORDER

TROY L. NUNLEY, District Judge.

**\*1** This matter is before the Court on a Motion to Remand
filed by Plaintiffs J.P., a minor by and through his guardian
ad litem, Alice Plummer ("Plaintiffs"). (ECF No. 6.) For the
reasons set forth below, Plaintiffs' motion is GRANTED and
the action is REMANDED.

### BACKGROUND

This action asserts claims predicated on Plaintiff Alice
Plummer's alleged use of paroxetine hydrochloride
("Paxil"). Paxil is a prescription anti-depressant manufactured
by Defendant GlaxoSmithKline LLC ("GSK") [1] and
allegedly packaged, marketed, distributed, promoted, and
sold by Defendant McKesson Corporation ("McKesson").
Plaintiff Alice Plummer alleges her ingestion of Paxil during
her pregnancy with Plaintiff J.P. caused serious birth defects
and injury to him including left ventricular hypertrophy and
pulmonary stenosis. (ECF No. 1 at 7.) Plaintiffs seek past and
future economic damages, including medical expenses, loss
of earnings and impaired earning capacity, and mental and
emotional distress. (ECF No. 1 at 4.)

Plaintiffs filed their complaint in Sacramento County
Superior Court alleging various theories sounding in
negligence, strict liability, failure to warn, breach of
express and implied warranties, fraud and deceit, negligent
misrepresentation, and violations of California's unfair
competition law, false advertising law, and Consumer Legal
Remedies Act. Defendant GSK removed the action to this
Court on the basis of diversity jurisdiction. (ECF No. 1.)
Plaintiffs then filed the instant motion to remand. (ECF No.
6.)

### LEGAL STANDARD

A defendant may remove an action from state court to
federal court if it was a case of which the district court
would have original jurisdiction. 28 U.S.C. § 1441(a). There
are two bases for federal subject matter jurisdiction: (1)
federal question jurisdiction under 28 U.S.C. § 1331, and (2)
diversity jurisdiction under 28 U.S.C. § 1332. A district court
has diversity jurisdiction "where the matter in controversy
exceeds the sum or value of $75,000, ... and is between
citizens of different states." Id. at § 1332(a)(1). Complete
diversity of citizenship requires each plaintiff to be a citizen
of a different state from each defendant. Caterpillar Inc. v.
Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437
(1996).

"[O]ne exception to the requirement of complete diversity
is where a non-diverse defendant has been 'fraudulently
joined[ ]' " to defeat diversity. Morris v. Princess Cruises,
Inc., 236 F.3d 1061, 1067 (9th Cir.2001); see also McCabe
v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987).
Allegations of fraudulent joinder can succeed only on a
showing that the "plaintiff fails to state a cause of action
against [the] defendant, and the failure is obvious according
to the well-settled rules of the state [.]" United Computer
Sys., Inc. v. AT & T Corp., 298 F.3d 756, 761 (9th Cir.2002)
(citing Morris, 236 F.3d at 1067; McCabe, 811 F.2d at 1339.
The removing defendant has the burden to show that the
nondiverse defendant is a sham or was fraudulently joined by
"clear and convincing" evidence. Hamilton Materials, Inc. v.
Dow Chemical Corp., 494 F.3d 1203, 1206 (9th Cir.2007).

2014 WL 3890326

**\*2** Fraudulent joinder is not evaluated under the more exacting *Iqbal/Twombly* pleading standards. Rather, courts employ the pre-*Twombly* "no set of facts" standard of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), to determine whether under the facts alleged, the plaintiff can state a claim for relief for purposes of determining fraudulent joinder.*Wong v. Michaels Stores, Inc.,* No. 1:11–cv–00162 AWI JLT, 2012 WL 718646, at \*5 (E.D.Cal. Mar.5, 2012) ("*Twombly* and *Iqbal* clarify the federal pleading standard set forth by Rule 8(a) but make no comment as to the propriety of pleading under California law. For this reason, courts have refused to apply the *Twombly* and *Iqbal* standards to determine whether a defendant was fraudulently joined."); *accord Velasquez v. HMS Host USA, Inc.,* No. 2:12–cv–02312–MCE–CKD, 2012 WL 6049608, at \*3 (E.D.Cal. Dec.5, 2012).[2]

In determining whether a defendant was joined fraudulently, the courts must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party."*Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992), *cited approvingly in Hamilton Materials,* 494 F.3d at 1206. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Indeed, "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."*Hunter v. Philip Morris USA,* 582 F.3d 1039, 1044 (9th Cir.2009) (internal quotation marks and citations omitted) (citing *Smallwood v. Illinois Central R.R. Co.,* 385 F.3d 573–74 (5th Cir.2003)).

## ANALYSIS

The amount in controversy and the parties' citizenship are not in dispute. The parties agree that Plaintiffs seek well in excess of $75,000; Plaintiffs are domiciled in California, Defendant GSK is a citizen of Delaware, and Defendant McKesson is a citizen of Delaware and California. (ECF No. 1 at 5.) Therefore the only issue is whether McKesson is a proper defendant. The parties agree that if McKesson is a proper defendant, then diversity of citizenship would not exist. However, GSK claims that McKesson is fraudulently

joined and therefore can be disregarded for diversity of citizenship purposes.[3]

## A. GSK's Argument that Plaintiffs' Complaint is Factually Inadequate

GSK argues that Plaintiffs' claims against McKesson have no factual basis because (1) Plaintiffs do not adequately plead McKesson's involvement in the distribution of Paxil because their allegations are directed at "Defendants" in general; and (2) Plaintiffs' allegations are improperly based upon information and belief whereas California pleading standards require Plaintiffs to name Doe defendants when Plaintiffs do not have a sufficient basis to identify the actual entity.

### 1. Allegations Against Defendants Generally

**\*3** GSK argues that there are no "material allegations against McKesson" and that Plaintiffs do not adequately plead McKesson's involvement in the distribution of Paxil because their allegations are directed at "Defendants" in general and are improperly based upon information and belief. However, the fact that allegations refer to Defendants generally does not prevent the Court from finding that there is a possibility that Plaintiffs could prevail on a claim against McKesson. *Oliver v. McNeil–PPC, Inc.,* No. 1:12–cv–01865–AWI–SAB, 2013 WL 459630, at \*6 (E.D.Cal. Feb.4, 2013); *see Smith v. Southern Pac. Co.,* 187 F.2d 397, 401 (9th Cir.1951) ("No specific charge in the complaints refer to [defendant] alone. We have no doubt that the complaints as they stand would be subject to a motion to make more definite and certain. But this is not the test in removal cases."). Here, Plaintiffs allege that McKesson distributed the Paxil ingested by Alice Plummer, and that "Defendants knew or should have known that Paxil could be dangerous and unsafe for pregnant women and the developing fetus[,]" and "Defendants failed to adequately warn doctors[.]" (ECF No. 1–1 at 9, 13.) Therefore, the claims Plaintiffs allege generally against all Defendants are viable under California law. Since Plaintiffs can possibly establish liability against McKesson, joinder is not fraudulent on the grounds that claims were alleged against "Defendants" generally.

### 2. Allegations Based on Information and Belief

GSK notes that Plaintiffs state upon information and belief that McKesson distributed the Paxil ingested by Alice Plummer and contends that Plaintiffs fail to assert facts supporting this contention. GSK argues that simply stating "upon information and belief" fails to state a claim.

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 236 of 245

J.P. ex rel. Plummer v. McKesson Corp., Slip Copy (2014)

2014 WL 3890326

Specifically, GSK asserts that the "Plaintiff fails to plausibly allege facts indicating that McKesson distributed the Paxil at issue in the case."(ECF No. 16 at 7.) Additionally, GSK asserts that "Plaintiff's claim against McKesson is based solely on speculation and does not plausibly allege that McKesson distributed Paxil allegedly taken by Alice Plummer."(*Id.*) However, GSK's argument incorrectly applies the *Twombly* and *Iqbal* plausibility standard. As stated above, the correct standard for reviewing remand is the "no set of facts" standard as set out in *Conley.*GSK has completely failed to demonstrate how the *Conley* standard applies in this case and as such fails to present a valid argument against Plaintiffs' pleading.

Assuming the rest of GSK's argument meets the applicable standard under *Conley,* the fact that a plaintiff's allegations are based on information and belief does not prove that the complaint fails to state a claim. *See Oliver,* 2013 WL 459630, at *6. Moreover, a "plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true."*Doe v. City of Los Angeles,* 42 Cal.4th 531, 550, 67 Cal.Rptr.3d 330, 169 P.3d 559 (2007). Plaintiffs sufficiently allege McKesson's possible involvement by stating "McKesson packaged, marketed, distributed, promoted and sold Paxil in California and in Elk Grove," and "[u]pon information and belief, McKesson supplied the Paxil pills ingested by Alice Plummer that caused injury to Jacob Plummer."(ECF No. 1–1 at 3.) Additionally, the knowledge of whether or not McKesson supplied Alice Plummer the Paxil she allegedly ingested is not within Plaintiffs' control. Thus, Plaintiffs adequately assert claims against McKesson.

**\*4** GSK further argues that California pleading standards require Plaintiffs to name Doe defendants instead of actual entities when Plaintiffs do not have a sufficient basis to identify the actual entity. GSK relies on the California Supreme Court's holding in *Bockrath v. Aldrich Chemical Co., Inc.,* 21 Cal.4th 71, 81, 86 Cal.Rptr.2d 846, 980 P.2d 398 (1999), that if a plaintiff does not have enough information to allege that a particular injury-causing toxin was manufactured or supplied by a specific entity, the complaint must name Doe defendants. However, Defendants appear to have ignored the remainder of the *Bockrath* case. Specifically, *Bockrath* goes on to state that a plaintiff should only identify defendants by fictitious names when the plaintiff is ignorant of those who allegedly caused him harm and not when the plaintiff asserts they know the entity's identity. *Id.* at 83, 86 Cal.Rptr.2d 846,

980 P.2d 398. Plaintiffs allege they are not ignorant of the name of the entity they believe caused their injury. Therefore, Plaintiffs were not required to use a fictitious name and did in fact properly allege "upon information and belief" that McKesson supplied the Paxil.

## B. GSK's Argument that Plaintiffs' Complaint Lacks an Adequate Legal Basis

GSK further argues that Plaintiffs' claims against McKesson have no legal basis because (1) they cannot state a claim for failure to warn, (2) no duty to warn exists based on the learned intermediary doctrine, and (3) federal law preempts Plaintiffs' failure to warn claim because McKesson could not legally change the labeling. [4]

### 1. *Failure to Warn*

GSK asserts that Plaintiffs fail to state a claim for failure to warn because McKesson as a distributor of prescription medications does not owe a duty to warn and, thus, cannot be held strictly liable for injuries caused by a defective product. In their opposition, GSK relies on comment k of the Restatement (Second) of Torts § 402A by arguing that comment k precludes distributors of prescription drugs from strict liability. [5] (ECF No. 16 at 12 (citing *Skinner v. Warner Lambert Co.,* Case No. CV 031643–R (RZx), 2003 WL 25598915 (C.D.Cal. Apr.28, 2003)).) Comment k of the Restatement (Second) of Torts Section 4024 provides:

There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

However, comment k does not explicitly reference distributors, but instead refers to manufacturers and sellers. Other federal courts acknowledge that there is no California law that precludes distributors from strict liability.*See Mendez v. AstraZeneca Pharmaceuticals LP,* No. 1:12–CV–00535–LJO–DLB, 2012 WL 1911382, at \*2 (E.D.Cal. May 25, 2012) ("California Courts have yet to address the liability of distributors and other potential

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 237 of 245

J.P. ex rel. Plummer v. McKesson Corp., Slip Copy (2014)

2014 WL 3890326

defendants in the commercial chain in prescription drug cases."); *Hinds v. Zimmer, Inc.,* No. 1:09cv0442 AWI DLB, 2009 WL 1517893, at *4 (E.D.Cal. June 1, 2009) ("[U]nder California law, both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product."). Therefore, GSK cannot show that this claim fails according to well-settled state law, and the Court refuses GSK's invitation to extend comment k to distributors at this juncture.

**\*5** Even if comment k applied to distributors, comment k qualifies that liability is avoided only if the drug is properly prepared and marketed.Restatement (Second) Torts § 420A cmt. k (1977). Here, Plaintiffs assert that the drug was *not* properly marketed or labeled, which precludes GSK's argument that comment k prevents McKesson from being strictly liable. (ECF No. 1–1 at ¶ 71.)

GSK further asserts that as a distributor McKesson cannot be held strictly liable because it does not meet the three factors necessary under *Bay Summit* to establish liability. (ECF No. 16 at 11 (quoting *Bay Summit Cmty. Ass'n v. Shell OilCo.,* 51 Cal.App.4th 762, 776, 59 Cal.Rptr.2d 322 (1996).) Under California law, a defendant involved in the marketing/ distribution process may be held strictly liable if the following three factors are present: "(1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process."*Bay Summit,* 51 Cal.App.4th at 776, 59 Cal.Rptr.2d 322.

GSK asserts that "[n]one of the three factors required to impose liability on a defendant outside the chain of distribution are met."(ECF No. 16 at 12.) However, GSK does not provide any evidence, much less clear and convincing evidence, that the *Bay Summit* factors are not met. Compare *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1068 (9th Cir.2001). ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgmenttype evidence such as affidavits and deposition testimony.") (internal citations and quotation marks). [6] For example, GSK merely states that McKesson "did not play an 'integral' role in bringing paroxetine to the market," without providing any support that would establish why McKesson was not an integral party. (ECF No. 16 at 12). Therefore, GSK has not shown that it is obvious under "well-settled" California law that McKesson could not be held strictly liable

for failure to warn and the Court is obligated to resolve this issue against removal.

**2.** *Learned Intermediary Doctrine and Federal Preemption*
GSK argues that the learned intermediary doctrine and federal preemption prevent Plaintiffs from asserting claims against McKesson . [7] (ECF No. 16 at 12–13.) Under the learned intermediary doctrine, a prescription drug manufacturer's duty to warn runs to the physician and not the patient. *Conte v. Wyeth, Inc.,* 168 Cal.App.4th 89, 98 n. 5, 85 Cal.Rptr.3d 299 (2008)."The learned intermediary doctrine is a defense to a cognizable cause of action, which courts do not ordinarily consider in determining fraudulent joinder."*Martin v. Merck & Co.,* No. S–05–750 LKK/PAN, 2005 WL 1984483, at *4 (E.D.Cal. Aug.15, 2005). Similarly, GSK's argument that Plaintiffs' claims are preempted by federal law that prohibits drug manufacturers from independently changing their drugs' labels is an affirmative defense that goes to the merits of the case and thus does not support removal under the fraudulent joinder analysis. *Hunter,* 582 F.3d at 1045 ("When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'") (quoting *Hamilton Materials,* 494 F.3d at 1206)). Therefore, because preemption and the learned intermediary doctrine are affirmative defenses and speak to the merits of the case, they do not support GSK's removal. [8]

**C. Costs Under 28 U.S.C. § 1447(c)**
**\*6** The removal statute permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."28 U.S.C. § 1447(c). Plaintiffs did not request the Defendants' payment of costs; however, GSK's obvious forum shopping and prolonging of the case gives the undersigned pause. Plaintiffs petitioned the Judicial Council of California to coordinate this action with five other cases also seeking relief against Defendants for injuries arising out of plaintiffs' ingestion of Paxil during pregnancy. (ECF No. 6–1 at 2:22–24.) Subsequently, GSK attempted to remove all six cases to three separate federal district courts on October 22, 2013. (ECF No. 6–1 at 2:24.) Since then, Plaintiffs have filed several Notices of Supplemental Authorities, in which the district courts have remanded their respective cases to state court. (ECF Nos. 21, 22, 23, 24.)At this time, the Court exercises its discretion not to award costs under § 1447.

Case 2:16-md-02740-JTM-MBN   Document 469-3   Filed 05/19/17   Page 238 of 245

J.P. ex rel. Plummer v. McKesson Corp., Slip Copy (2014)

2014 WL 3890326

**CONCLUSION**

For the foregoing reasons, the Court HEREBY ORDERS:

1. Plaintiffs' Motion to Remand (ECF No. 6) is GRANTED. This action is HEREBY REMANDED to the Superior Court of the County of Sacramento.

2. Defendant McKesson's Motion for Judgment (ECF No. 7) is DENIED as MOOT.

3. The Clerk of this Court shall transmit forthwith a certified copy of this order to the Clerk of the Superior Court and close this case.

**IT IS SO ORDERED.**

Footnotes

1    GSK is formerly known as SmithKline Beecham Corporation d/b/a GlaxoSmithKline. (Notice of Removal, ECF No. 1 at 2)

2    GSK argues that the Ninth Circuit has not adopted a "no possibility" standard for fraudulent joinder analyses. While the Ninth Circuit may not have expressly adopted this language, GSK does not argue how the standard articulated in *Hamilton Materials* differs from the "no possibility" standard articulated by the federal courts in the Eastern District of California.

3    Because GSK contends that McKesson is improperly joined, its consent to the removal is not required. *See* 28 U.S.C. § 1441(b); *see also Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 at n. 1 (9th Cir.1988) ("[A]ll defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties."); *Hewitt v. City of Stanton,* 798 F.2d 1230, 1233 (9th Cir.1986) (holding co-defendants who are fraudulently joined need not join in a removal).

4    GSK also argues that Alice Plummer's claims are barred by a two-year statute of limitations in its Notice of Removal (but omits discussion of the issue in its opposition to Plaintiffs' motion to remand). Even if the statute of limitations issue was properly before the Court (and it is not clear that it is), the Court is still not persuaded by GSK. Although a successful statute of limitations defense may demonstrate a sham defendant, *see Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1319 (9th Cir.1998), GSK fails to provide any supporting evidence that Alice Plummer should have discovered J.P.'s injuries were caused by wrongdoing earlier than she did. Without more, this is insufficient to meet GSK's burden to show clear and convincing evidence of fraudulent joinder. *See Hamilton Materials,* 494 F.3d at 1206.

5    Plaintiffs argue in their reply that GSK waived its argument that comment k precludes distributors of prescription drugs from strict liability. (ECF No. 19 at 9.) Because the Court finds that GSK's argument is unpersuasive it need not decide whether GSK forfeited this argument by failing to raise it in its Notice of Removal.

6    Furthermore, given California's liberal rules on amendment of pleadings, it is likely that Plaintiffs would be permitted leave to amend their complaint, allowing them to address the deficiencies GSK asserts. *See* Cal.Civ.Proc.Code § 473.

7    It is unclear from GSK's briefing whether its argument is that all of Plaintiffs' claims are precluded or only Plaintiffs' failure to warn claims. However, the Court need not decide this issue because, as discussed, the arguments address the merits of the claims, which is an improper consideration at this stage.

8    GSK also states that it has been subject to hundreds of lawsuits regarding Paxil use in pregnancy and McKesson has only been named in a handful of California lawsuits even though it does business in many other states. (*See* ECF No. 6–1 at 21.) Although the Court agrees with GSK that McKesson's joinder could be intentional in order to defeat diversity jurisdiction, the intent of the parties is not at issue in a fraudulent joinder analysis. *See Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1296 (C.D.Cal.2000) ("[I]t does not have to be shown that the joinder was for the purpose of preventing removal.").

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

United States District Court
Northern District of California

J.E., a minor by and through his Guardian Ad Liten, KATY ERWIN, and KATY ERWIN, Individually ,

        Plaintiffs,

    v.

SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, and MCKESSON CORPORATION, and DOES 1 through 100, inclusive,

        Defendants.

Case No.: CV 13-04897-KAW

ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

(Dkt. No. 25)

On July 26, 2013, Plaintiffs J.E. and Katy Erwin filed this case against Defendants SmithKline Beecham Corporation (d/b/a GlaxoSmithKline, hereafter referred to as "GSK") and McKesson Corporation in San Francisco Superior Court. (Compl., Dkt. No. 22, Ex. A.) On October 22, 2013, GSK removed the case to federal court on the grounds that McKesson was fraudulently joined, such that there is complete diversity of citizenship between the parties. On November 21, 2013, Plaintiffs filed a motion to remand the case to state court.

Upon review of the moving papers,[1] the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and finds that McKesson was not fraudulently joined, such that Plaintiffs' motion to remand is GRANTED.

## I.  BACKGROUND

The Complaint alleges that Paxil is a drug that was designed and manufactured by GSK and marketed, sold, and distributed by McKesson. (Compl. ¶¶ 4, 10.) Paxil (paroxetine) was first approved for use in the United States by the U.S. Food and Drug Administration (FDA) in 1992

---

[1] Plaintiffs submitted supplemental briefing on January 17, 2014 (Dkt. No. 52), which was unsolicited and was, therefore, not considered.

for the treatment of depression in adults. (Compl. ¶ 20.) Paxil has never been approved by the FDA for use with pregnant women. *Id.* GSK is alleged to have actively promoted Paxil to pregnant women, despite knowing that it was associated with a significant increased risk of cardiac birth defects in babies whose mothers ingested Paxil during pregnancy. (Compl. ¶¶ 22-23.) Katy Erwin took Paxil as prescribed by her treating physician in Grass Valley, California while pregnant with her daughter J.E. (Compl. ¶ 21.) J.E. was born on January 16, 2003, and was diagnosed with Bicuspid Aortic Valve and Aortic Insufficiency. (Compl. ¶ 33.) These severe heart defects allegedly arose from her mother's use of Paxil as designed and manufactured by GSK and marketed, sold, and distributed by McKesson. (*See* Compl. ¶¶ 4, 10, 34.) Plaintiffs also contend that GSK should have issued a stronger warning. (Compl. ¶ 35.) GSK did not revise their warning until the FDA issued a Public Health Advisory in 2005 concluding that paroxetine use in the first trimester of pregnancy may increase the risk for congenital malformations, particularly cardiac malformations. (Compl. ¶ 25.)

Based on the above allegations, the Plaintiffs have asserted the following claims: (1) negligence and negligence per se; (2) negligent pharmaco-vigilance; (3) strict liability; (4) failure to warn; (5) breach of express warranty; (6) breach of implied warranty; (7) fraud; (8) negligent infliction of emotional distress; (9) negligent design; (10) deceit by concealment; (11) negligent misrepresentation; (12) violation of California Business & Professions Code § 17200; (13) violation of California Business & Professions Code § 17500; (14) violation of California Civil Code § 1750; and (15) punitive damages.

On October 22, 2013, GSK removed the case to federal court on the grounds that McKesson was fraudulently joined to defeat complete diversity of citizenship and divest the federal court of jurisdiction. (Am. Not. of Removal, Dkt. No. 13.) Plaintiffs and McKesson share California citizenship, while GSK is a citizen of Delaware. (Am. Not. of Removal ¶¶ 23-27.)

On November 21, 2013, Plaintiffs filed a motion to remand the case to San Francisco Superior Court. (Pls.' Mot. to Remand, "Pls.' Mot.," Dkt. No. 25.)

///

///

## II. LEGAL STANDARD

District courts have jurisdiction in civil actions where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). There is a "strong presumption against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). This principle dictates that the removal statute be "strictly construed against removal jurisdiction." *Id.* "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," and that the court resolves all ambiguity in favor of remand to state court. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1042 (9th Cir.2009).

The Ninth Circuit has specified that "[j]oinder is fraudulent [i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1042 (9th Cir. 2009)(internal quotation marks omitted); *see also Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir. 1992) (stating that, "[t]o prove their allegation of fraudulent joinder [the defendants] must demonstrate that there is no possibility that [the plaintiff] would be able to establish a cause of action against them in state court"). Or, as stated in the Moore's treatise, "[j]oinder will not be deemed fraudulent unless there clearly can be no recovery under state law on the cause alleged or on the facts as they exist when the petition to remand is heard." 15-102 Moore's Fed. Practice - Civil § 102.21; *see also Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)("Courts have denied a claim of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant.")

## III. DISCUSSION

### A. Legal bases that may preclude claims against McKesson, but are not obvious to establish fraudulent joinder.

#### 1. Preemption

GSK argues that Plaintiffs have no viable claims against McKesson because they are preempted by federal law pursuant to *Mut. Pharm. Co., Inc. v. Bartlett*, ——U.S. ——, 133 S. Ct. 2466, 2477, 186 L. Ed. 2d 607 (2013) and *PLIVA, Inc. v. Mensing,* ——U.S. ——, 131 S.Ct.

United States District Court
Northern District of California

2567, 180 L. Ed. 2d 580 (2011). (Def.'s Opp'n at 13.) These cases involved the impossibility preemption against generic drug manufacturers. In *PLIVA*, the Supreme Court held that "state failure-to-warn claims were pre-empted by the [Federal Drug, Food, and Cosmetic Act] because it was impossible for drug manufacturers [ ] to comply with both the state-law duty to label their products in a way that rendered them reasonably safe and the federal-law duty not to change their drugs' labels." *PLIVA,* 131 S.Ct. at 2577–2578. Similarly, *Bartlett* found that state design defect claims were preempted because it imposed affirmative duties on generic drug manufacturers that conflicted with the FDCA requirement that "a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Bartlett*, 133 S. Ct. at 2475.

Here, GSK argues that the impossibility preemption should be extended to distributors of brand name pharmaceuticals. GSK contends that the claims here are, in essence, state law claims for failure to warn but that McKesson, as distributor, "could not legally change or add warnings to the FDA-approved labeling, just like the generic drug manufacturer defendants in *Bartlett* and *Mensing*." (Def.'s Opp'n at 13.)

In support of its preemption argument, GSK points to the exemption of pharmacies, which under California law cannot be held strictly liable for failure to warn. *See Murphy v. E.R. Squibb & Sons,* 40 Cal. 3d 672, 679-81 (1985). In carving out this exception, the California Supreme Court acknowledged that a pharmacist filling a prescription is providing a service rather than making a sale. *Id.* at 680. In contrast, California case law "has not addressed whether distributors of prescription drugs can be strictly liable for failure to warn." *Black v. Merck & Co., Inc.*, 2004 U.S. Dist. LEXIS 29860, 11 (C.D. Cal. Mar. 3, 2004).

In addition, the preemption defense goes to the merits of the case, so "[w]hen a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'" *Hunter*, 582 F.3d at 1045. Here, GSK asks this Court to adopt a rationale that has not been extended to distributors, let alone to distributors of brand name drugs,

United States District Court
Northern District of California

4

1   and GSK provides no authority that distributors, such as McKesson, are hamstrung by federal and

2   state law resulting in the same impossibility preemption that plagues generic drug manufacturers.

3   　　　　Accordingly, while GSK's argument may be persuasive, "unless and until this rationale is

4   extended to distributors, it is not obvious, accordingly to the well settled rules of this state, that

5   Plaintiff has absolutely no claim against McKesson." *Smith v. Amylin Pharms.*, LLC, 2013 U.S.

6   Dist. LEXIS 96612, at *12 (S.D. Cal. July 10, 2013)(citations omitted).  Thus, whether Plaintiffs'

7   claims against McKesson are preempted by federal law is not appropriately addressed in a motion

8   for remand.

9   　　　　2.　Comment K of the Restatement (Second) of Torts § 402A

10  　　　　Additionally, GSK argues that McKesson, as a distributor of prescription medicines,

11  "owes no duty to warn the ultimate users of the medicines, [and] cannot be held liable under a

12  products liability theory. (Def.'s Opp'n at 12.)  In support of this proposition, GSK cites *Skinner*

13  *v. Warner-Lambert Co.*, 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003), in which a motion to

14  remand was denied on the grounds that, pursuant to Comment K, "a distributor of a prescription

15  drug is not subject to strict liability."  *Skinner*, however, relied solely on Comment K, which does

16  not exempt distributors from strict liability, but rather "states that a seller of pharmaceuticals is

17  not strictly liable if the products are properly prepared and marketed, and proper warning is

18  given." *Black*, 2004 U.S. Dist. LEXIS 29860, at *12-13 (declined to follow *Skinner* in a case with

19  a cause of action for failure to warn).

20  　　　　Accordingly, because Plaintiffs allege that a proper warning was not given, Comment K

21  does not definitively preclude strict liability for McKesson.

22  **B.  Fraudulent Joinder**

23  　　　　GSK maintains that McKesson was fraudulently joined based on Plaintiffs' failure to

24  allege that Katy Erwin ingested Paxil that was actually distributed by McKesson, as opposed to

25  another company.  This argument is not persuasive. While Plaintiffs could have made clearer

26  allegations to that effect, the allegations that they have in the complaint are sufficient. They have

27  alleged:

28  　　　　This is a products liability case arising out of the severe personal injuries of [J.E.],

United States District Court
Northern District of California

5

and the resulting emotional distress of her mother, Katy Erwin, as a result of
serious birth defects caused by Katy Erwin's digestion of Paxil, a prescription
drug manufactured and marketed by defendants, during her pregnancy with [J.E.].

(Compl. at 2.)  Thereafter, Plaintiffs allege that "McKesson packaged, marketed, distributed,

promoted and sold Paxil in Calfornia and in Grass Valley." (Compl. ¶ 10.)  As a result, Plaintiffs

allege, "[u]pon information and belief, McKesson supplied the Paxil pills ingested by Katy Erwin

that caused injury to [J.E.]." (Compl. ¶ 12.)

GSK argues that Plaintiffs naming of McKesson as the distributor "upon information and

belief" was improper because Plaintiffs lacked evidentiary support at the time of filing the

complaint and were hoping to obtain evidence of liability during the discovery process.  (Def.'s

Opp'n at 4.)  Citing *Bockrath v. Aldrich Chemical Co.*, 21 Cal. 4th 71, 81 (Cal. 1999), GSK

argues that Plaintiffs should have properly named doe defendants instead of individually naming

McKesson. (Def.'s Opp'n at 7.)  Unlike this action, however, *Bockrath* involved a single plaintiff

who sued 55 defendants alleging that the combined long-term exposure to their products caused

his cancer. *Bockrath*, 21 Cal. 4th at 77.  Here, Plaintiffs are alleging that a single product, which

McKesson allegedly distributed in Katy Erwin's city of residence, caused J.E.'s birth defects.

(Compl. ¶ 34.)  The *Bockrath* court expressly discouraged naming fictitious defendants when the

plaintiff is not ignorant of their true identities. 21 Cal. 4th at 83.  In fact, at the pleading stage,

only an actual belief is required when naming individual defendants. *Id.*  This does not require

Plaintiffs to plead all evidentiary facts to conclusively prove that McKesson distributed the Paxil

ingested by Katy Erwin. *See Bartal v. Astrazeneca Pharms. LP*, 2012 U.S. Dist. LEXIS 109215, 8

(N.D. Cal. Aug. 3, 2012).  Indeed, a "[p]laintiff may allege on information and belief any matters

that are not within his personal knowledge, if he has information leading him to believe that the

allegations are true.'" *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 550 (2007) (quoting *Pridonoff

v. Balokovich*, 36 Cal.2d 788, 792 (1951)).  Plaintiffs' allegation that McKesson distributed Paxil

in Grass Valley, California is sufficient to lead them to believe that the ingested Paxil was

distributed by McKesson.

Accordingly, Plaintiffs have sufficiently alleged that their damages arose from Katy

Erwin's ingestion of Paxil distributed by McKesson.  The fact that Paxil has distributors other

than McKesson is not controlling, as Plaintiffs are not required to sue all distributors. *Caouette v. Bristol-Myers Squibb Co.*, C-12-1814 EMC, 2012 WL 3283858, at *5 (N.D. Cal. Aug. 10, 2012).

## IV. CONCLUSION

For the reasons set forth above, GSK has not met its burden of showing that McKesson was fraudulently joined to defeat complete diversity of citizenship in this case. Therefore, Plaintiffs' motion for remand is GRANTED.

IT IS SO ORDERED.

Dated: January 27, 2014

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California