# EXHIBIT C

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBRA GRADNEY AND<br>VICTOR GRADNEY,<br><br>       Plaintiffs,<br><br>     v.<br><br>SANOFI U.S. SERVICES INC., formerly<br>known as SANOFI-AVENTIS U.S., INC;<br>SANOFI-AVENTIS U.S. LLC, separately<br>and doing business as WINTHROP U.S.;<br>SANOFI S.A.; AVENTIS PHARMA S.A.;<br>and DOES, INC.,<br><br>       Defendants. | C.A. No. _____ |

## DEFENDANT SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL

Defendant sanofi-aventis U.S. LLC[1] hereby files this Notice of Removal pursuant to 28

U.S.C. §§ 1332, 1441, and 1446 and states as follows:

## THE REMOVED ACTION

1.     On November 9, 2016, Plaintiffs Debra Gradney and Victor Gradney

("Plaintiffs") filed a Complaint and Demand for Jury Trial in the Superior Court of the State of

Delaware, which was assigned Civil Action No. N16C-11-090-VLM.  Pursuant to 28 U.S.C. §

1446(a), a true and legible copy of Plaintiffs' Civil Action Complaint is attached hereto as

"Exhibit A."

---

[1] No Defendant has been served in this matter.  Regardless, this Notice of Removal is solely on
sanofi-aventis U.S. LLC's behalf and not on behalf of Sanofi U.S. Services Inc., Sanofi S.A., or
Aventis Pharma S.A.  This Notice of Removal does not waive the rights of Sanofi U.S. Services
Inc., Sanofi S.A. or Aventis Pharma S.A.

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

2.      This action is a pharmaceutical product liability case in which Ms. Gradney alleges that she sustained injuries as a result of receiving Taxotere.  *See* Complaint ("Ex. A") ¶ 34.  Mr. Gradney alleges that he has suffered the loss of Ms. Gradney's companionship and society and has been caused great mental anguish.  *Id.* at ¶ 129.

3.      Neither sanofi-aventis U.S. LLC nor any other Defendant has been served yet in this matter.  This Removal is thus timely pursuant to 28 U.S.C. § 1446(b).  Sanofi-aventis U.S. LLC has not previously filed a Notice of Removal of this matter in this Court.

4.      No further pleadings have been filed, and no proceedings have yet occurred in the state court action.

## GROUNDS FOR REMOVAL

5.      Under 28 U.S.C. § 1332, this Court has original jurisdiction over Plaintiffs' action.  As explained below, there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.  Thus, removal is proper pursuant to 28 U.S.C. § 1441.

## DIVERSITY OF CITIZENSHIP EXISTS

6.      Diversity of citizenship exists when a suit is between citizens of different states or citizens of a state and citizens of a foreign state.  28 U.S.C. § 1332 (a)(1)-(2).

7.      There is complete diversity of citizenship between Plaintiffs and all Defendants:

    a)      Plaintiffs are citizens of the State of Kansas.  *See* Ex. A ¶¶ 1-2.

    b)      Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . ."  For purposes of diversity jurisdiction, the citizenship of an LLC is that of its members.  *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (stating that every circuit court to have considered the

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

issue has held that the citizenship of an LLC is determined by the citizenship of its members, and joining in that holding).

c)      Defendants are all alleged to be citizens of states other than Kansas.  *See* Ex. A ¶¶ 3, 12, 16, 22.

d)      Defendant sanofi-aventis U.S. LLC is a Delaware limited liability company with its principal place of business in New Jersey.  Sanofi U.S. Services Inc. is the sole member of sanofi-aventis U.S. LLC.  Sanofi U.S. Services Inc. is a Delaware corporation with its principal place of business in New Jersey.

e)      Sanofi S.A. is a French corporation with its principal place of business in France.

f)      Aventis Pharma S.A. is a French corporation with its principal place of business in France.

8.      Because Plaintiffs and Defendants are citizens of different states, there is complete diversity of citizenship for jurisdiction purposes.

9.      Further, as stated above, no Defendant has been served at the time of the filing of this Notice.  Therefore, consent from the other above named Defendants is unnecessary.  *Lewis v. Rego Co.*, 757 F.2d 66, 68-69 (3d Cir. 1985) (finding that defendant who has not been served need not consent to removal).

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

10.      Although the Complaint seeks unspecified compensatory and punitive damages, it is apparent that the amount in controversy exceeds $75,000.00.  *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.").

3

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

Ms. Gradney alleges that she suffered various injuries, serious physical pain and suffering, medical, and hospital expenses as a direct result of her use of Taxotere. Mr. Gradney alleges he has suffered the loss of Ms. Gradney's companionship and society and has been caused great mental anguish. Plaintiffs seek all compensatory and punitive damages to which they are entitled under applicable law. *See* Ex. A.

11.     Given the nature and extent of Plaintiffs' alleged injuries and damages, Plaintiffs' Complaint places at issue more than $75,000, exclusive of interest and costs. *See Aloise v. Giant of Md., LLC*, No. CIV. 12-00897-LPS, 2013 WL 1222776, at *2 (D. Del. Mar. 26, 2013) (although plaintiff sought "an indeterminate amount of damages," amount in controversy satisfied when plaintiff alleged "painful, permanent, and disabling injuries . . . [and] substantial medical expenses").

12.     Plaintiffs' claim for damages therefore exceeds the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## REMOVAL IS PROPER BECAUSE NO FORUM DEFENDANT HAS BEEN SERVED WITH PROCESS

13.     Pursuant to 28 U.S.C. § 1441(b), this action is removable because no party in interest properly joined and served as a defendant is a citizen of the State of Delaware, the state in which this action was brought (a "forum defendant"). *See* 28 U.S.C. § 1441(b) (providing that non-federal question cases "shall be removable only if none of the parties in interest properly joined ***and served*** as defendants is a citizen of the State in which the action is brought") (emphasis added).

14.     No Defendant, including any forum defendant, has been served. Removal is proper where there is complete diversity, but no forum defendant has been served. Certain decisions from this Court and other District Courts in this Circuit have applied the plain language

4

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

of the removal statute to permit removal of an action before a forum defendant is served.  *See Munchel v. Wyeth LLC*, No. CIV.A. 12-906-LPS, 2012 WL 4050072, at *4 (D. Del. Sept. 11, 2012) (denying plaintiff's motion to remand when forum defendant removed case prior to being served); *Hutchins* v. *Bayer Corp.*, No. 08-640-LPS, 2009 WL 192468, at *11 (D. Del. Jan. 23, 2009) (denying plaintiffs' motion to remand when non-forum defendant removed case prior to forum defendant being served stating "the language of § 1441(b) is plain and unambiguous: a case involving diversity jurisdiction 'shall be removable' if none of the forum defendants have been 'properly joined and served.'"); *see also Valido-Shade v. Wyeth, LLC,* No. 12-2003, 2012 WL 2861113, at *2 (E.D. Pa. Jul. 11, 2012); *Boyer v. Wyeth Pharm., Inc.*, No. 12–739, 2012 WL 1449246, at *2 (E.D. Pa. Apr. 26, 2012).  *But see Stefan v. Bristol-Myers Squibb Co.*, No. 13-1662-RGA, 2013 WL 6354588, at *3-5 & n.2 (D. Del. Dec. 6, 2013); *Laugelle v. Bell Helicopter Textron*, No. 10-1080-GMS, 2012 WL 368220, at *2-3 (D. Del. Feb. 2, 2012) (both remanding upon holding that removal prior to service on forum defendants was improper).

15.     Congress has enacted legislation reaffirming that an action may be removed on the basis of diversity jurisdiction when a forum defendant is not properly joined or served at the time of removal.  The Federal Courts Jurisdiction and Venue Clarification Act of 2011 amended the removal and remand procedures in 28 U.S.C. § 1441, but retained the language in section 1441(b) that bars removal only if any "of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought." *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 § 103, 125 Stat. 758, 760 (2011) (emphasis added).

16.     Relying on the language of Section 1441(b), in *Hutchins v. Bayer Corp.*, the District of Delaware denied plaintiffs' motion for remand where a properly joined and served

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

non-forum defendant removed the action before the alleged forum defendant had been properly joined and served. 2009 WL 192468, at *11; *see also Valido-Shade*, 2012 WL 2861113, at *4; *Vanderwerf v. GlaxoSmithKline, PLC*, No. 05-1315, 2005 WL 6151369, at *1 (E.D. Pa. May 5, 2005); *Thomson v. Novartis Pharms. Corp.*, No. 06-6280, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007). The *Hutchins* court found that "nothing about permitting removal in the circumstances presented here disrupts [the purpose of § 1441(b)]" or "conflict[s] with Congressional intent." 2009 WL 192468, at *7.

17.     In *Munchel v. Wyeth LLC*, this District Court considered whether removal was proper when a forum defendant removed the action before any forum defendant had been properly joined and served. Relying on the plain language of Section 1441(b) and Congress's amendment of the removal statute, the court denied the plaintiff's motion for remand. 2012 WL 4050072, at *3-4 ("The undersigned judge continues to adhere to the views expressed in *Hutchins* [on the plain language of Section 1441(b)] . . . . [T]he amendment reinforces the conclusion that Congress intended for the plain language of the statute to be followed.").

18.     Here, because Plaintiffs have not served any Defendant, any such Defendant's alleged citizenship in Delaware is not an impediment to removal under 28 U.S.C. § 1441(b).

## REMOVAL IS OTHERWISE PROPER

19.     Removal to this District is proper because the Superior Court of the State of Delaware is within the District of Delaware. 28 U.S.C. §§ 1441(a), 1446(a).

20.     Pursuant to 28 U.S.C. § 1446(d), sanofi-aventis U.S. LLC shall give Plaintiffs written notice of the filing of this Notice of Removal.

21.     Pursuant to 28 U.S.C. § 1446(d), sanofi-aventis U.S. LLC shall file the written notice of the filing of this Notice of Removal with the Superior Court of the State of Delaware,

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

attaching as Exhibit A thereto a copy of this Notice of Removal and the documents attached to this Notice of Removal.

WHEREFORE, sanofi-aventis U.S. LLC hereby gives notice that the above entitled state court action, formerly pending in the Superior Court of the State of Delaware, has been removed to the United States District Court for the District of Delaware.

Dated: November 17, 2016

Respectfully submitted,

GIBBONS P.C.

By:   /s/ Christopher Viceconte
Christopher Viceconte (#5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Tel.: (302) 518-6322
Fax: (302) 397-2050
cviceconte@gibbonslaw.com
*Attorneys for Defendant*
*sanofi-aventis U.S. LLC*

OF COUNSEL:

SHOOK, HARDY & BACON L.L.P.
Harley V. Ratliff, Esq.
2555 Grand Blvd.
Kansas City, Missouri 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
hratliff@shb.com

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## CERTIFICATION OF FILING AND SERVICE

I, Christopher Viceconte, hereby certify that, on this 17th day of November 2016, two (2) true and correct copies of Defendant's Notice of Removal, along with a Notice to Adversary of Filing of Notice of Removal and a Notice of Filing of Notice of Removal in the forms attached to the Notice of Removal as Exhibit B, and Copies of All Process, Pleadings and Orders in State Court, as attached to the Notice of Removal as Exhibit A, were served via Federal Express overnight delivery upon counsel of record for Plaintiffs as follows:

James D. Heisman (#2746)
NAPOLI SHKOLNIK LLC
919 North Market Street, Suite 1801
Wilmington, Delaware 19801
*Attorneys for Plaintiffs*

I further certify that a true and correct courtesy copy of the foregoing Notice of Removal, and its attached Exhibits, will be filed with the Clerk of the United States District Court for the District of Delaware in accordance with Local Civil Rule 5.3.

I further certify that a copy of the foregoing Notice of Removal, and its attached Exhibits, will be filed with the Clerk of the Superior Court of the State of Delaware upon receipt of the same from the United States District Court for the District of Delaware.

GIBBONS P.C.

By:     /s/ Christopher Viceconte
        Christopher Viceconte (#5568)
        300 Delaware Avenue, Suite 1015
        Wilmington, Delaware 19801
        Tel.: (302) 518-6322
        Fax: (302) 397-2050
        cviceconte@gibbonslaw.com
Dated: November 17, 2016        *Attorneys for Defendant*
        *sanofi-aventis U.S. LLC*

8

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

# EXHIBIT A

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

**EFiled: Nov 09 2016 05:14PM EST**
**Transaction ID 59816273**
**Case No. N16C-11-090 VLM**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DEBRA GRADNEY AND VICTOR GRADNEY, | ) |
| | ) |
| Plaintiffs, | )   C.A. No. |
| | )   Jury Trial Demanded |
| v. | ) |
| | ) |
| SANOFI U.S. SERVICES INC., formerly known as | ) |
| SANOFI-AVENTIS U.S., INC; SANOFI-AVENTIS | ) |
| U.S. LLC, separately and doing business as | ) |
| WINTHROP U.S.; SANOFI S.A.; AVENTIS | ) |
| PHARMA S.A.; and DOES, INC. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

## COMMON ALLEGATIONS

### A. PARTIES

1.    At all times relevant hereto, Plaintiff Debra Gradney ("Plaintiff" or "Debra Gradney") was a resident of the State of Kansas.

2.    At all times relevant hereto, Plaintiff Victor Gradney ("Spousal Plaintiff"), was a resident of the State of Kansas and the spouse of Plaintiff.

3.    Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

4.    Upon information and belief, Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is one of the largest pharmaceutical companies in the United States.

5.    Sanofi U.S. Services Inc. develops products in therapeutic areas including

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

cardiovascular disease, central nervous systems, internal medicine, metabolic disorder, oncology, ophthalmology, and thrombosis.

6.      The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

7.      Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes pharmaceutical products in the United States.

8.      Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

9.      Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

10.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals.

11.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, Taxotere (docetaxel).

12.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

13.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States.

14.     Upon information and belief, Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for Taxotere.

15.     Upon information and belief, Defendant Sanofi-Aventis U.S. LLC sometimes

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

16.      Defendant Sanofi S.A. is a corporation, or "Société Anonyme," under the laws of France, with its principal place of business located at 54 rue La Boétie, 75008 Paris, France.

17.      Upon information and belief, Sanofi S.A. is a global pharmaceutical parent company that operates in the United States, through an intricate network of approximately 400 wholly owned subsidiaries, including Aventis Pharma S.A. and Sanofi-Aventis U.S.

18.      Upon information and belief, Sanofi S.A.'s predecessor was from a subsidiary of a French oil company that acquired the Labaz Group Pharmaceutical Company. This entity, in or about May of 1999, merged with a Delaware incorporated pharmaceutical company named Synthélabo Inc.

19.      Upon information and belief, at all relevant times hereto, Synthélabo had its principal place of business located at 90 Park Avenue, New York, New York 10016.

20.      Upon information and belief, Aventis was formed when a French company, Rhone-Poulenc S.A., merged with a German corporation Hoechst Marion Roussel.

21.      Upon information and belief, Aventis merged with Sanofi-Synthélabo, to become Sanofi-Aventis S.A. which later changed its name to Sanofi S.A. on or about May 6, 2011.

22.      Defendant Aventis Pharma S.A. is a corporation, or "Société Anonyme," under the laws of France, with its principal place of business located at 20 avenue Raymond Aron, 92160 Antony, France.

23.      Upon information and belief, on or about March of 1989, Sanofi S.A. acquired 100% of the shares and/or financial interest of Aventis Pharma S.A. and has directed and

3

Case 2:16-md-02740-JTM-MBN Document 4731-7 Filed 05/22/17 Page 14 of 43
Case 1:16-cv-01067-SLR-MBN Document 11 Filed 11/17/16 Page 5 of 26 PageID #: 13
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

controlled the operations and activities of Aventis Pharma S.A. and since March of 1989, Aventis Pharma S.A. has been a wholly owned subsidiary of Sanofi S.A.

24.     Defendant Sanofi-Aventis U.S. LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807.

25.     Upon information and belief, Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws of the State of Delaware.

26.     At all times relevant hereto, according to Sanofi S.A.'s Form 20-F filed with the U.S. Securities and Exchange Commission for the fiscal year ending on December 31, 2014, Defendant Sanofi-Aventis U.S. was a wholly owned subsidiary of Defendant Sanofi S.A. and was the only member and owned 100% of the membership interest of Sanofi-Aventis U.S.

27.     Upon information and belief, Taxotere (docetaxel) was invented and developed by the predecessor to Aventis Pharma S.A. and also was the holder of the initial patent disclosing the formulation and computation of Taxotere (docetaxel).

28.     At all times relevant hereto, Defendants Sanofi S.A., Aventis Pharma S.A., and/or Sanofi-Aventis U.S., LLC were engaged in transactions and conducted business within the State of Delaware and has derived substantial revenue from goods and products disseminated and used in the State of Delaware.  At all times relevant hereto, as part of its business, Sanofi S.A., Aventis Pharma S.A., and/or Sanofi-Aventis U.S. LLC were involved in researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as Taxotere (docetaxel) to the public, including the Plaintiff.

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

29.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as Taxotere (docetaxel).

30.     Defendants Sanofi S.A.; Aventis Pharma S.A.; and Sanofi-Aventis U.S. LLC, shall be referred to herein individually by name or jointly as "Defendants."

31.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

32.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

33.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Delaware, either directly or indirectly through third parties, subsidiaries or related entities, the drug Taxotere.

**B.     NATURE OF THE CASE**

34.     Plaintiffs brings this case against Defendants for damages associated with the Plaintiff's infusion of the pharmaceutical drug Taxotere, which was designed, manufactured, marketed, sold and distributed by Defendants. Specifically, Plaintiff suffered various injuries,

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

serious physical pain and suffering, medical, and hospital expenses as a direct result of Plaintiff's use of Taxotere.

35.     At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Taxotere (docetaxel) to treat various forms of cancer, including but not limited to breast cancer.

36.     Taxotere (docetaxel) was developed, manufactured, researched, marketed, tested, advertised, promoted, and sold by Defendants and began enrolling test patients in or about 1990 in the Phase 1 clinical trial also known as "TAX 001" study.

37.     Taxotere is a part of the chemotherapy family of drugs known as "Taxanes." Taxanes are a type of chemicals called "diterpenoids," which specifically contain a taxadiene core within the molecule, which is produced by yew trees.

38.     Taxanes are widely used as chemotherapy agents, and several taxanes are available for cancer treatment, including but not limited to Taxol, generically known as paclitaxel, Jevtana, generically known as cabazitaxel, and of course Taxotere, generically known as docetaxel.

39.     Upon information and belief, the TAX 001 study concluded in or about May 1992 and subsequently reported in or about May 1994.

40.     Taxol (paclitaxel) was developed, manufactured, distributed, and marketed by Bristol Meyers Squibb (BMS) and was first approved by the U.S. Food and Drug Administration (FDA) in December of 1992.

41.     Upon information and belief, Aventis Pharma S.A., sought FDA approval for Taxotere in or about December of 1994 and the FDA's Oncologic Drugs Advisory Committee Panel had unanimously recommended the rejection of the approval for Taxotere because the

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

Taxotere was more toxic than Taxol, and recommended more testing and studies for Taxotere's side effects.

42.    On or about May 14, 1996, Defendants obtained FDA approval for the "treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

43.    Defendants continued to seek additional indications for Taxotere and based on self-sponsored clinical trials, Defendants alleged superiority over other chemotherapy products approved for the treatment of breast cancer. Defendants' marketing claims included superior efficacy over the lower potency Taxanes, including Taxol.

44.    Despite Defendants' claims of superior efficacy, post market surveillance demonstrated that the more potent and more toxic Taxotere, in fact, did not have higher efficacy or benefits compared to the other Taxanes and Defendants concealed the existence of studies from the FDA, physicians, patients, and the public that refuted Defendants' claims and advertisements of superior efficacy.

*45.*    In or about August of 2007, the journal, Cancer Treatment Review, published a comparison of the relative efficacy of Taxanes in the treatment of breast cancer. This study concluded that there were no significant differences between the efficacy and outcomes obtained from Taxotere treatment and Taxol treatment.

*46.*    In or about April of 2008, the New England Journal of Medicine published a study titled, *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, which concluded that Taxol was more effective than Taxotere for patients undergoing the standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

47.     Defendants continued to make false and misleading statements, promoting the "superior efficacy" of Taxotere over the competing product Taxol, despite the studies that concluded otherwise. Specifically, in or about June 2008, Sanofi-Aventis used a "reprint carrier" citing a clinical study published in August of 2005 from the Journal of Clinical Oncology that concluded Taxotere had superior efficacy compared to Taxol "providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities" in the marketing and promotional materials for Taxotere.

48.     Defendants' statements in the "reprint carrier" materials highlighting the conclusions of the 2005 study were false and/or misleading due to the 2007 and 2008 studies finding Taxotere was not more effective than Taxol in the treatment of breast cancer.

49.     Consequently, on or about April 16, 2009, Keith Olin, from the FDA Division of Drug Marketing, Advertising, and Communications (DDMAC), issued a warning letter to MaryRose Salvacion, the Director of US Regulatory Affairs Marketed Products for Sanofi-Aventis, regarding the NDA #20-449, Taxotere (docetaxel). In this letter, the DDMAC stated:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi- aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii)

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

50.     In addition, a Qui Tam lawsuit was filed against Sanofi-Aventis and its affiliates

in the U.S. District Court for the Eastern District of Pennsylvania, by a former employee stating

Sanofi-Aventis and its affiliates engaged in fraudulent marketing schemes, paid kickbacks, and

provided other unlawful incentives to entice physicians to use docetaxel. *See U.S. dx rel. Ghoil*

*v. Sanofi-Aventis U.S. Inc.,* CA No. 02-2964 (E.D. Pa. 2015).

51.     Beginning in or around 1996, Sanofi S.A., Aventis Pharma S.A., Sanofi-Aventis

U.S., LLC, Sanofi U.S. Services, Inc., ad their predecessors and affiliates, designed, directed,

and/or engaged in a marketing plot that promoted Taxotere for indications not approved by the

FDA, also known as off label promotion. The plot had two prongs. The first prong was training

and directing employees to misrepresent the safety and effectiveness of the off-label use of

Taxotere, to get a foothold in other types of cancer treatment markets.  The other prong was

paying healthcare providers illegal kickbacks in the form of grants, speaker fees, travel,

entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance

to incentivize healthcare providers to prescribe Taxotere for off label treatment.

52.     The Defendants fraudulent marketing and illegal kickback scheme increased the

Taxotere the revenue of sales by approximately one billion dollars from 2000's $424 million to

2004's $1.4 billion. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D.

Pa. 2015).

53.     Defendants' fraudulent and illegal conduct drastically increased the number of

victims to be exposed to a more toxic chemotherapy treatment with no better efficacy than less

toxic chemotherapy treatments already available.

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 20 of 43
Case 1:16-cv-01067-SLR Document 7 Filed 11/17/16 Page 11 of 20 PageID #: 19
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

54.     Defendants' fraudulent and illegal conduct caused thousands of individuals to be exposed to more frequent and/or more severe side effects, including but not limited to disfiguring and permanent alopecia (hair loss).

## C.     DEFENDANTS' COVER UP OF THE KNOWN RISK OF PERMANENT HAIR LOSS

55.     It is well known that cancer treatments like radiation and chemotherapy can cause temporary hair loss during treatment. However, permanent alopecia is not common place. Defendants, through their marketing and promotional materials, misled the medical community, the public, and the Plaintiff, to believe Taxotere, as with other chemotherapy treatment, would cause temporary hair loss, but that the hair would grow back.

56.     Defendants knew, or should have known, that the rate of permanent alopecia related to Taxotere was far greater than with other chemotherapy treatments for the same condition as Defendants' product.

57.     Permanent alopecia, hair loss, is disfiguring, especially for women. Women who experienced this disfigurement as a result of the use of Taxotere suffered and continue to suffer great mental anguish, as well as economic damage, including but not limited to, loss of work or inability due to work due to significant psychological damage.

58.     Women might have accepted the possibility of permanent baldness as a result of exposure to Taxotere if no other treatment were available for their cancer. However, this is not the case.

59.     There were similar products on the market that were at least as effective as Taxotere and did not subject the female users to the same risk of disfiguring levels of alopecia.

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 21 of 43
Case 1:16-cv-01067-SLR Document 9 Filed 11/17/16 Page 11 of 20 PageID #: 20
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

60.     Plaintiff would not have agreed to Taxotere treatment if the true risk of permanent alopecia was made available to her.

61.     Beginning in the late 1990's, Defendants sponsored, and/or were aware of the GEICAM 9805 study. By 2005, Defendants' knew that the GEICAM 9805 study demonstrated that 9.2% of patients who were administered Taxotere, had persistent alopecia for up to 10 years and 5 months and in some cases even longer. Despite this knowledge, Defendants purposefully and unjustly withheld these results contained in the GEICAM 9805 study from the physicians, healthcare providers, and patients in the U.S., including Plaintiff.

62.     By 2006, Defendants knew, or should have known, that a Denver based oncologist in the U.S. had observed that an increased percentage, 6.3% specifically, of his patients who had Taxotere treatment suffered from permanent and disfiguring hair loss for years after the patient had ended their Taxotere treatment.

63.     Defendants knew of relevant findings from GEICAM 9805 and knew of the patient reports from the Denver oncologist, and failed, to date, to provide accurate information and proper warnings to the physicians, healthcare providers, and patients in the U.S., including Plaintiff, that Taxotere has a significantly increased risk of experiencing permanent and disfiguring alopecia.

64.     Defendants chose to withhold this information from the U.S. market despite physicians, patients, and regulatory agencies in other countries, including, but not limited to, the European Union and Canada, that Taxotere caused an increased risk of permanent and disfiguring alopecia. Defendants continued to tell the U.S. physicians, healthcare providers, patients, and Plaintiff, that "hair generally grows back" after taking Taxotere.

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 22 of 43
Case 1:16-cv-01067-SLR Document 9 Filed 11/17/16 Page 13 of 289 PageID #: 21
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

65.     Taxotere consumers were not given the opportunity to make an informed decision because they were unable to perform a risk benefit analysis due to the systematic and continuous deception perpetrated by Defendants by overstating and/or misrepresenting the benefits and failing to warn of the true risks of permanent and disfiguring alopecia while other less potent but equally effective alternatives were available.

66.     It is notable that Defendants publish information in other countries to individual patients, as well as regulatory agencies, informing patients of a risk of permanent alopecia relating to Taxotere use, however despite the numerous U.S. label changes and safety warnings issued by Defendants during the near, two decades Taxotere has been on the U.S. market, the words "permanent alopecia" or "permanent hair loss" did not appear in any published information from Defendants until December 2015.

67.     As a direct result of Defendants' surreptitious acts and deceptive marketing, thousands of women were exposed to the risk of disfiguring and permanent alopecia without any warning, and without any additional benefit.

68.     Defendants' failure to warn patients of the true risk of disfiguring and permanent alopecia in the U.S., to healthcare providers, physicians, and patients, including Plaintiff, deprived them of the chance to make an informed decision as to exposing oneself to Taxotere when other comparably effective products were available.

69.     Defendants took advantage of vulnerable groups of individuals during one of the most difficult times of their lives. Defendants made billions of dollars in increased revenues at the expense of unwary cancer victims who wanted a chance at a normal life again.

70.     Taxotere was defective in its design. Taxotere was designed as a more potent Taxane. This increased potency resulted in increased toxicity, which can be directly related to

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

the increased adverse events. The most likely reason Defendants designed a more potent Taxane was to enable them to obtain a patent, and grab the current market, on a patent that was, in fact, not novel, but only more dangerous.

71.     Defendants' reckless, willful, and wanton conduct permanently disfigured Plaintiff, as well as many other innocent victims to satisfy the Defendants' avarice.

**D.      THE PLAINTIFF'S USE OF TAXOTERE AND RESULTING INJURIES**

72.     By reason of the foregoing acts and omissions, the Plaintiff suffered permanent alopecia, as well as other severe and personal injuries, physical pain and mental anguish, including diminished enjoyment of life, and medical treatment.

73.     Upon information and belief, despite the permanent alopecia findings in studies and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

74.     Upon information and belief, from the date Defendants received FDA approval to market Taxotere, Defendants made, distributed, marketed, and sold Taxotere without adequate warning to Plaintiff's prescribing physicians or Plaintiff that Taxotere was associated with and/or could cause permanent hair loss in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Taxotere with regard to permanent nature of the alopecia.

75.     Upon information and belief, Defendants concealed and failed to completely disclose their knowledge that Taxotere was associated with or could cause permanent alopecia as well as their knowledge that they had failed to fully test or study said risk.

76.     Upon information and belief, Defendants ignored the association between the use

13

Case 2:16-md-02740-JTM-MBN   Document 473-7   Filed 05/22/17   Page 24 of 43
Case 1:16-cv-01067-SLR   Document 9   Filed 11/17/16   Page 15 of 299 PageID #: 23
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

of Taxotere and the risk of developing permanent and disfiguring alopecia.

77. Upon information and belief, Defendants failed to warn Plaintiff and Plaintiff's healthcare providers regarding true risk of permanent hair loss but similar efficacy compared to less potent products.

78. Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Taxotere for permanent hair loss risk further rendered warnings for this medication inadequate.

79. By reason of the forgoing acts and omissions, Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

## FACTUAL ALLEGATIONS

80. On or about March 26, 2011, Plaintiff was first prescribed and began taking Taxotere upon the direction of her physician for the treatment of breast cancer. Subsequently, as a direct result of being exposed to Taxotere, on or about October 13, 2016, Plaintiff was diagnosed with permanent and severe alopecia at St. Luke's Medical Group located in Overland Park, Kansas.

81. As a direct result of being prescribed Taxotere for this period of time, Plaintiff suffered significant injuries, such as those described above.

82. As a proximate result of Defendants' acts and omissions, Plaintiff suffered the injuries described hereinabove due to Plaintiff's exposure to Taxotere. Plaintiff accordingly seeks damages associated with these injuries.

83. Plaintiff would not have used Taxotere had Defendants properly disclosed the risks associated with its use.

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## COUNT I: STRICT LIABILITY

84.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

85.     At all times relevant times hereto, Defendants were engaged in the business of designing, manufacturing, testing, marketing, and placing into the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Taxotere at issue in this lawsuit.  The Taxotere manufactured by Defendants reached Plaintiff without substantial change and was infused as directed.  The Taxotere was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

86.     Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of permanent alopecia and other injuries associated with the use of Taxotere were inadequate.

87.     Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's treating physicians.

88.     Defendants had a continuing duty to provide consumers, including Plaintiff, and Plaintiff's physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Taxotere, as it became or could have become available to Defendants.

89.     Defendants marketed, promoted, distributed and sold an unreasonably dangerous

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 26 of 43
Case 1:16-cv-01067-SLR-TMB Document 13-17/16 Page 17 of 269 PageID #: 25
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

and defective prescription drug, Taxotere, to health care providers empowered to prescribe and dispense Taxotere to consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Defendants misled the medical community about the risk and benefit balance of Taxotere, which resulted in injury to Plaintiff.

90.     Despite the fact that Defendants knew or should have known that Taxotere caused unreasonable and permanent side effects, they continued to promote and market Taxotere without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

91.     Defendants knew or should have known that consumers, Plaintiff specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures.

92.     Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiff and to Plaintiff's intermediary physicians, in the following ways:

    a.  Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of Taxotere including, among other things, permanent alopecia;

    b.  Defendants failed to provide adequate post-marketing warnings and instructions after the Defendants knew or should have known of the significant risks of, among other things, permanent alopecia;

    c.  Defendants continued to aggressively promote and sell Taxotere, even after they knew or should have known of the unreasonable risks of permanent alopecia

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 27 of 43
Case 2:16-cv-01067-SLR Document 9 Filed 11/17/16 Page 18 of 26 PageID #: 26
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

from this drug.

93.    Defendants had an obligation to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Taxotere, and/or that there existed safer and more or equally effective alternative drug products.

94.    By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Taxotere, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

95.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiff and the public.

96.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to Taxotere and suffered the injuries and damages set forth hereinabove.

## COUNT II: STRICT LIABILITY – DESIGN DEFECT, MARKETING DEFECT AND MANUFACTURING DEFECT

97.    Plaintiffs incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

98.    Taxotere was unreasonably defective in design and marketing, considering the utility of the product and the risk involved in its use, because as designed and marketed, Taxotere could cause injuries such as those suffered by Plaintiff during foreseeable use. This fact was known to Defendants at the time Taxotere was placed into the stream of commerce, but was not readily recognizable to an ordinary consumer, including Plaintiff. Nonetheless,

Case 2:16-md-02740-JTM-MBN Document 473-17 Filed 05/22/17 Page 28 of 43
Case 1:16-cv-01067-SLR Document 11-17 Filed 11/17/16 Page 19 of 29 PageID #: 27
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

Defendants failed to warn that Taxotere as designed and marketed was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use. Such a failure to warn rendered the Taxotere unreasonably dangerously defective as designed and marketed.

99. At all times material to these allegations, Defendants manufactured, distributed, tested, packaged, promoted, marketed, labeled, designed and sold Taxotere, as alleged herein.

100. Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field.

101. The Taxotere administered to Plaintiff was defective in design or formulation in the following respects:

    a. When it left the hands of Defendants, this drug was unreasonably dangerous to the extent beyond that which could reasonably be contemplated by Plaintiff or Plaintiff's physicians;

    b. Any benefit of this drug was outweighed by the serious and undisclosed risks of its use when prescribed and used as Defendants intended;

    c. The dosages and/or formulation of Taxotere sold by Defendants was unreasonably dangerous;

    d. There are no patients for whom the benefits of Taxotere outweighed the risks;

    e. The subject product was not made in accordance with Defendants' specifications or performance standards;

    f. There are no patients for whom Taxotere is a safer and more efficacious drug than other drug products in its class; and/or

    g. There were safer alternatives that did not carry the same risks and dangers

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 29 of 43
Case 2:16-cv-01067-SLR Document 1 Filed 11/17/16 Page 20 of 28 PageID #: 28

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

that Defendants' Taxotere had.

102.    The Taxotere administered to Plaintiff was defective at the time it was distributed by Defendants or left their control.

103.    The Taxotere administered to Plaintiff was expected to reach the user without substantial change in the condition in which it was sold.

104.    The Taxotere administered to Plaintiff reached Plaintiff without substantial change in the condition in which it was sold.

105.    There were safer alternative methods and designs for Defendants' Taxotere.

106.    Plaintiff was a patient who Defendants reasonably expected would be administered Taxotere.

107.    Defendants were at liberty to withdraw Taxotere from the market at any time, but failed to do so.

108.    The defective and unreasonably dangerous design and marketing of Taxotere was a direct, proximate and producing cause of Plaintiff's injuries and damages.  Under strict products liability theories set forth in Restatement (Second) of Torts, Defendants are liable to Plaintiff for all damages claimed in this case, including punitive damages.

109.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Taxotere, Plaintiff was injured as described herein.  All of said injuries caused Plaintiff's damages, for which Plaintiff is entitled to damages.

110.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Taxotere, Plaintiff was required to obtain reasonable and necessary healthcare treatment and services and incurred expenses for which Plaintiff is entitled to damages.

Case 2:16-md-02740-JTM-MBN   Document 473-7   Filed 05/22/17   Page 30 of 43
Case 1:16-cv-01067-SLR   Document 9   Filed 11/17/16   Page 21 of 29 PageID #: 29
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

111.    As a direct and proximate result of the design, marketing and manufacturing defects of Defendants' product, Taxotere, Plaintiff suffered the injuries as previously alleged herein.

## COUNT III: NEGLIGENCE

112.    Plaintiffs incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

113.    Defendants owed a duty to the general public and specifically to the Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Taxotere at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Taxotere because as designed, it was capable of causing serious and permanent personal injuries such as those suffered by Plaintiff during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Taxotere because they failed to warn, that as designed, Taxotere was capable of causing serious and permanent personal injuries such as those suffered by Plaintiff during foreseeable use.

114.    Defendants breached their duty and were negligent by, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiff:

   a.  Failing to use due care in developing, testing, designing and manufacturing Taxotere so as to avoid the aforementioned risks to individuals when Taxotere was being used for treatment;

   b.  Failing to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health risks associated with the use of Taxotere and the comparative severity and duration of such adverse effects;

Case 2:16-md-02740-JTM-MBN   Document 473-7   Filed 05/22/17   Page 31 of 43
Case 1:16-cv-01067-SLR   Document 11-7   Filed 11/17/16   Page 22 of 28 PageID #: 30
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

c.  In disseminating information to Plaintiff and Plaintiff's physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiff;

d.  Failing to accompany their products with proper or adequate rate of incidence or prevalence of permanent hair loss;

e.  Failing to provide warnings or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks;

f.  Failing to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Taxotere;

g.  Failing to warn Plaintiff, the medical and healthcare community, and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative medications available to Plaintiff and other consumers;

h.  Failing to provide adequate training or information to medical care providers for appropriate use and handling of Taxotere and patients taking Taxotere;

i.  Failing to adequately test and/or warn about the use of Taxotere, including, without limitations, the possible adverse side effects and health risks caused by the use of Taxotere;

j.  Failing to design and/or manufacture a product that could be used safely;

k.  In designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable use, which Defendant knew or should have known could cause injury to Plaintiff;

l.  Failing to remove Taxotere from the market when Defendants' knew or should have known of the likelihood of serious and permanent side effects and injury to

Case 2:16-md-02740-JTM-MBN   Document 473-7   Filed 05/22/17   Page 32 of 43
Case 2:16-cv-01067-SLR   Document 1   Filed 11/17/16   Page 23 of 209 PageID #: 31
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

its users;

m.  Failing to adequately warn users, consumers and physicians about the severity, scope and likelihood of permanent hair loss and related conditions to individuals taking Taxotere; and

n.  Representing to physicians, including but not limited to Plaintiff's prescribing physicians, that this drug was safe and effective for use.

115.  The Taxotere that injured Plaintiff was in substantially the same condition when Plaintiff was infused with it as it was in when it left the control of Defendants. Taxotere's ability to cause serious and permanent personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff. Plaintiff was infused the Taxotere as directed and without change in its form or substance.

116.  Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Taxotere was a proximate cause of Plaintiff's injuries and damages.

117.  Plaintiff seeks all damages to which Plaintiff may be justly entitled.

**COUNT IV: BREACH OF WARRANTY - BREACH OF EXPRESS WARRANTY**

118.  Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

119.  Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Taxotere, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiff, or persons responsible for consumer.

Case 2:16-md-02740-JTM-MBN Document 473-7 Filed 05/22/17 Page 33 of 43
Case 1:16-cv-01067-SLR Document 11-17 Filed 11/17/16 Page 24 of 289 PageID #: 32
PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

120.     Taxotere materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Taxotere, respectively manufactured and/or distributed and sold by Defendants, and which Plaintiff purchased and was infused with in direct or indirect reliance upon these express representations. Such failures by Defendants constituted a material breach of express warranties made, directly or indirectly, to Plaintiff concerning Taxotere sold to Plaintiff.

121.     As a direct, foreseeable and proximate result of Defendants' breaches of express warranties, Plaintiff suffered permanent and grievous bodily injury and consequent economic and other loss, as described above, when Plaintiff's physician, in reasonable reliance upon such express warranties, prescribed for Plaintiff the use of Taxotere.  Plaintiff purchased and was infused with Taxotere as prescribed and instructed by Plaintiff's physician, leading to Plaintiff's injuries.

## COUNT V: BREACH OF WARRANTY – BREACH OF IMPLIED WARRANTY

122.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

123.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Taxotere, in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiff, or persons responsible for consumer.

124.     Defendants impliedly warranted their Taxotere product, which they manufactured and/or distributed and sold, and which Plaintiff purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

125.     Defendants breached their implied warranties of the Taxotere product sold to Plaintiff because this product was not fit for its common, ordinary, and intended use.

126.     As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiff suffered permanent and grievous bodily injury and consequential economic and other losses, as described above, when Plaintiff was infused with Taxotere, in reasonable reliance upon the implied warranties.

## COUNT VI: LOSS OF CONSORTIUM

127.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth and further alleges as follows:

128.     Victor Gradney, was at all times relevant hereto the spouse of Debra Gradney.

129.     For the reasons set forth herein, Victor Gradney has been caused presently and in the future, to suffer the loss of Debra Gradney's companionship and society, and accordingly, Victor Gradney has been caused great mental anguish.

**WHEREFORE**, Plaintiffs demand judgment against each of the Defendants jointly and severally for such sums, including, but not limited to prejudgment and post-judgment interest, as would be necessary to compensate the Plaintiffs for the injuries Plaintiffs have and or will suffer. Plaintiffs further demand judgment against each of the Defendants for punitive damages. Plaintiffs further demand payment by each of the Defendants jointly and severally of the costs and attorney fees of this action.  Plaintiffs further demand payment by each Defendant jointly and severally of interest on the above and such other relief as the Court deems just.

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

**NAPOLI SHKOLNIK LLC**

**By:** <u>/s/ James D. Heisman</u>
James D. Heisman (#2746)
919 North Market Street, Suite 1801
Wilmington, DE 19801
(302) 330-8025
JHeisman@NapoliLaw.com

Dated: November 9, 2016          *Attorney for Plaintiffs*

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

# EXHIBIT B

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DEBRA GRADNEY AND<br>VICTOR GRADNEY,<br><br>       Plaintiffs,<br><br><br>       v.<br><br>SANOFI U.S. SERVICES INC., formerly<br>known as SANOFI-AVENTIS U.S., INC;<br>SANOFI-AVENTIS U.S. LLC, separately<br>and doing business as WINTHROP U.S.;<br>SANOFI S.A.; AVENTIS PHARMA S.A.;<br>and DOES, INC.<br><br>       Defendants. | C.A. No. N16C-11-090 VLM |

### NOTICE OF FILING OF NOTICE OF REMOVAL

**TO:**   **Clerk of the Court,**
       **Superior Court of the State of Delaware**

PLEASE TAKE NOTICE that, on November 17, 2016, Defendant sanofi-aventis U.S. LLC filed in the United States District Court for the District of Delaware a Notice of Removal in the above-captioned action, a copy of which is attached hereto as Exhibit 1 and which was served contemporaneously with this Notice.

                                   GIBBONS P.C.

                     By:    /s/ Christopher Viceconte
                                Christopher Viceconte (#5568)
                                300 Delaware Avenue, Suite 1015
                                Wilmington, Delaware 19801
                                Tel.: (302) 518-6322
                                Fax: (302) 397-2050
                                cviceconte@gibbonslaw.com
                                *Attorneys for Defendant*
Dated:  November 17, 2016          *sanofi-aventis U.S. LLC*

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

OF COUNSEL:

SHOOK, HARDY & BACON L.L.P.
Harley V. Ratliff, Esq.
2555 Grand Blvd.
Kansas City, Missouri  64108
Tel.:  (816) 474-6550
Fax:  (816) 421-5547
hratliff@shb.com

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher Viceconte, hereby certify that, on this 17th day of November 2016, a true and correct copy of Defendant sanofi-aventis U.S. LLC's Notice of Filing of Notice of Removal was served via File and ServeXpress upon Plaintiffs' counsel of record as follows:

James D. Heisman, Esq.
NAPOLI SHKOLNIK LLC
919 North Market Street, Suite 1801
Wilmington, Delaware 19801
*Attorneys for Plaintiffs*

**GIBBONS P.C.**

By:     /s/ Christopher Viceconte
        Christopher Viceconte, Esq.  (#5568)
        300 Delaware Avenue, Suite 1015
        Wilmington, Delaware 19801
        Tel.: (302) 518-6322
        Fax: (302) 397-2050
        cviceconte@gibbonslaw.com
        *Attorneys for Defendant*
Dated:  November 17, 2016      *sanofi-aventis U.S. LLC*

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DEBRA GRADNEY AND
VICTOR GRADNEY,

        Plaintiffs,

    v.

SANOFI U.S. SERVICES INC., formerly
known as SANOFI-AVENTIS U.S., INC;
SANOFI-AVENTIS U.S. LLC, separately
and doing business as WINTHROP U.S.;
SANOFI S.A.; AVENTIS PHARMA S.A.;
and DOES, INC.,

        Defendants.

Civil Action No.

**NOTICE TO ADVERSARY OF
FILING OF NOTICE OF REMOVAL**

**TO:**    James D. Heisman (#2746)
        NAPOLI SHKOLNIK LLC
        919 North Market Street, Suite 1801
        Wilmington, Delaware 19801
        *Attorneys for Plaintiffs*

       **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §1446(d), you are hereby notified

that a Notice of Removal has this day been filed in the United States District Court for the

District of Delaware, a copy of which is attached hereto as Exhibit 1, and that the undersigned

has this day also filed a copy of the said Notice of Removal with the Clerk of the Superior Court

of the State of Delaware.

Dated: November 17, 2016

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

Respectfully submitted,

GIBBONS P.C.

By:    /s/ Christopher Viceconte
        Christopher Viceconte (#5568)
        300 Delaware Avenue, Suite 1015
        Wilmington, Delaware 19801
        Tel.: (302) 518-6322
        Fax:  (302) 397-2050
        cviceconte@gibbonslaw.com
        *Attorneys for Defendant*
        *sanofi-aventis U.S. LLC*

OF COUNSEL:

SHOOK, HARDY & BACON L.L.P.
Harley V. Ratliff, Esq.
2555 Grand Blvd.
Kansas City, Missouri  64108
Tel.:  (816) 474-6550
Fax:  (816) 421-5547
hratliff@shb.com

PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

## **CERTIFICATE OF SERVICE**

I, Christopher Viceconte, hereby certify that, on this 17th day of November 2016, a true

and correct copy of Defendant sanofi-aventis U.S. LLC's Notice to Adversary of Filing of Notice

of Removal was served by Federal Express overnight delivery upon Plaintiffs' counsel of record

as follows:

> James D. Heisman, Esq.
> NAPOLI SHKOLNIK LLC
> 919 North Market Street, Suite 1801
> Wilmington, Delaware 19801
> *Attorneys for Plaintiffs*

**GIBBONS P.C.**

By:   /s/ Christopher Viceconte
      Christopher Viceconte, Esq.  (#5568)
      300 Delaware Avenue, Suite 1015
      Wilmington, Delaware 19801
      Tel.: (302) 518-6322
      Fax:  (302) 397-2050
      cviceconte@gibbonslaw.com
      *Attorneys for Defendant*
Dated:  November 17, 2016          *sanofi-aventis U.S. LLC*

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

## PLAINTIFFS' EXHIBIT "C" TO THE LOPALO DECLARATION

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

DEBRA GRADNEY AND VICTOR GRADNEY

### DEFENDANTS

SANOFI U.S. SERVICES INC., et al.

**(b)** County of Residence of First Listed Plaintiff      State of Kansas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James D. Heisman, Esq. - Napoli Shkolnik LLC
919 N. Market Street, Suite 1801
Wilmington, DE  19801      (302) 330-8025

Attorneys *(If Known)*
Christopher Viceconte, Esq. - Gibbons P.C.
300 Delaware Avenue, Suite 1015
Wilmington, DE  19801      (302) 518-6322

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☒ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1   Original Proceeding
- ☒ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332, 1441, 1446
Brief description of cause:
Product liability causes of action (strict liability, negligence, warranty, etc.)

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Hon. Kurt D. Engelhardt   DOCKET NUMBER   MDL 2740

DATE   11/17/2016

SIGNATURE OF ATTORNEY OF RECORD
/s/ Christopher Viceconte (#5568)

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE