**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                  MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                                    SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO DISMISS PLAINTIFFS' MASTER LONG FORM COMPLAINT</u>**

Defendants sanofi-aventis U.S. LLC, Sanofi US Services Inc., Sandoz Inc., Hospira, Inc.,

Hospira Worldwide, LLC, Pfizer Inc., Actavis Pharma, Inc., Accord Healthcare, Inc., Sun

Pharma Global Inc.,[1] and McKesson Corporation move to dismiss Plaintiffs' Master Long Form

Complaint ("Master Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

**I.      INTRODUCTION**

This product liability action involves an FDA-approved prescription chemotherapy

medication known as "Taxotere[®]" and various other FDA-approved "docetaxel" products

(collectively "docetaxel").    Plaintiffs allege that they were prescribed docetaxel by their

physicians to treat breast cancer and that they subsequently sustained permanent hair loss.[2]

Plaintiffs do not allege that docetaxel was not effective for them.    Nor do they claim that

Defendants failed to disclose the risk of hair loss, which is a well-known and common side effect

---

[1] At the time of filing this Motion, Sun Pharma Global Inc. and Plaintiffs have agreed to a voluntary dismissal without prejudice and have further agreed to substitute and accept streamlined service of process for Sun Pharmaceutical Industries, Inc. f/k/a Caraco Laboratories, Ltd.  Plaintiffs have also named Sun Pharma Global FZE in this litigation but Sun Pharma Global FZE is a foreign company incorporated under the laws of the United Arab Emirates and has not been served with process, has not agreed to accept service of process in this litigation and consequently, Sun Pharma Global FZE is not appearing in this matter or joining in this Motion.
[2] Plaintiffs define "permanent" alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."  Compl. ¶ 181.

of docetaxel.  As Plaintiffs acknowledge, Defendants have included multiple warnings about alopecia in the docetaxel labeling at all pertinent times.  *See* Compl. ¶¶ 46, 60, 72, 84, 94, 106, 129.  Plaintiffs allege only that they were not told that hair loss might be permanent.

Plaintiffs' Master Complaint asserts eight causes of action against Defendants: (1) strict products liability – failure to warn, (2) strict products liability for misrepresentation, (3) negligence, (4) negligent misrepresentation, (5) fraudulent misrepresentation, (6) fraudulent concealment, (7) fraud and deceit, and (8) breach of express warranty (against sanofi-related entities only).  These causes of action are facially deficient as a matter of law, or lack factual allegations sufficient to state a plausible cause of action, or, in some instances, both.

First, the Master Complaint lacks the requisite factual allegations sufficient to state the elements of each claim asserted.  Causation, for example, is an essential element of each of Plaintiffs' claims.  However, Plaintiffs do not allege that docetaxel itself, or that any alleged failure to warn their physicians about a purported risk of permanent hair loss, actually caused them personal injury.  Thus, the Master Complaint should be dismissed because it fails to meet the federal pleading requirements of Rule 8(a)(2) and *Twombly*, obliging Plaintiffs to provide "more than labels and conclusions [because] a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, Plaintiffs' various fraud-based claims must be dismissed under the heightened pleading standard of Rule 9(b), which requires such claims to be pled with particularity.  Here, the Master Complaint does not contain a single factual allegation identifying actionable conduct, including any specific event, statement, or conduct by any individual Defendant, when and where the conduct occurred, who engaged in the conduct, to whom it was directed, why it was improper, or how it relates to any alleged injury.

The foundational pleading in a case should not force Defendants and the Court to guess at Plaintiffs' theory of liability or the factual basis of the claims. Before discovery, Defendants have a right to be fairly informed of the specific claims against each of them so that they may ask the appropriate questions at deposition and develop an adequate factual record for any trial.

In MDLs, as in any other case, courts repeatedly hold that "the price of entry, *even to discovery,* is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, No. 08-cv-1905, 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009) (emphasis in original) (citation omitted), *aff'd* sub nom. 623 F.3d 1200 (8th Cir. 2010). Plaintiffs have failed to adequately plead a viable claim, and they should not be permitted to drag Defendants through a costly and time consuming discovery process.

Accordingly, Defendants respectfully request that this Court grant their motion and dismiss the Master Complaint in its entirety.

## II.   LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, plausibility requires more than a mere "possibility that a defendant has acted unlawfully." *Id.* Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A proper pleading "requires more than labels and conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Similarly, "naked assertions devoid of further factual enhancement" are insufficient and must be disregarded.  *Id.* (internal marks omitted).

Under Rule 9(b), claims for fraud must be pled with particularity.  FED. R. CIV. P. 9(b).  At a minimum, Rule 9(b) requires the "who, what, when, where, and how" of the alleged fraud.  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citing *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 179 (5th Cir. 1997)).  "The heightened pleading standard for fraud claims supplies defendants with the information they need to prepare responses, prevents discovery intended as a mere fishing expedition, and protects the defendants' reputations from baseless allegations."  *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 n.2 (5th Cir. 2013); *see also Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674, 681 (5th Cir. 2014) (finding plaintiff failed to allege sufficient facts for his fraud claim to survive in a pharmaceutical product liability case).

MDL courts in this and other circuits also regularly hold plaintiffs to their Rule 9(b) pleading burden for fraud-based causes of action in "master" or "consolidated" complaints. *See, e.g.*, *In re Ford Motor Co. Vehicle Paint Litig.*, No. MDL 1063, 1996 WL 426548 (E.D. La. July 30, 1996) (dismissing fraudulent misrepresentation claim in master complaint for failure to plead reliance); *see also In re McNeil Consumer Healthcare, Mktg. & Sales Practices Litig.*, No. 2:10-md-02190, 2011 WL 2802854 (E.D. Pa. July 15, 2011) (dismissing consolidated complaint for lack of standing and finding fraud claims were not pled with particularity).[3]

---

[3] *See also In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, No. 05-md-01718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007); *In re Bridgestone/Firestone, Inc. Prods. Liab. Litig.*, No. 00-ip-9373, 2001 WL 34136021 (S.D. Ind. Sept. 6, 2001); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997), *aff'd* sub nom. *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999);

## III.    ARGUMENT

<u>SHOTGUN PLEADING</u>

### A.  Plaintiffs' "Shotgun Pleading" Violates Rule 8 Pleading Standards

Plaintiffs' Master Complaint engages in several types of shotgun pleading in violation of the Federal Rules of Civil Procedure.

First, Plaintiffs' Master Complaint impermissibly incorporates long narrative sections into each cause of action by reference, making it virtually impossible for Defendants to identify what facts are part of which cause of action.  *See, e.g.*, *Martin v. Tesoro Corp.*, No. 2:11-cv-1413, 2012 WL 1866841, at *2 (W.D. La. May 21, 2012) ("A shotgun pleading is one that sets forth an excessive number or facts and then asserts in a conclusory fashion that each of those facts supports a number of legal claims, with the result that 'each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.'") (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).  This type of shotgun pleading places a burden on defendants responding to the pleading, and on the court interpreting it.  More than two-thirds of Plaintiffs' Master Complaint is devoted to an "extended narrative" describing supposed misconduct by Defendants.  Plaintiffs follow this narrative with eight causes of action, formulaically outlining the elements of each claim without the factual support required by federal pleading standards.

Second, Plaintiffs compound this problem by asserting seven of their eight causes of action (all except breach of express warranty) against "All Defendants," collectively.  Plaintiffs allege that Defendants communally did or did not do certain things, but they fail to specify what

---

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-02419-RWZ, 2014 WL 4322409 (D. Mass. Aug. 29, 2014).

conduct they allege <u>each</u> Defendant did or did not do.  In cases where "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of," a complaint that references all defendants collectively is an improper "shotgun pleading" because it is impossible for the court, and parties, to determine which defendant allegedly engaged in which acts.  *Martin*, 2012 WL 1866841, at \*2 (citing *Magluta*, 256 F.3d at 1284).  Plaintiffs bear the burden "to provide fair notice of the grounds for the claims made against each of the defendants."  *Fox v. Ca. Franchise Tax Bd.*, 443 F. App'x 354, 362 (10th Cir. 2011) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

No such notice is provided here.  Plaintiffs' negligence claim, for example, alleges a laundry list of purported "acts and/or omissions" by "Defendants, their agents, servants, and/or employees," including generic allegations directed to all Defendants of misconduct related to "manufacturing, producing, promoting, formulating, creating, and/or designing [docetaxel]."  Compl. ¶ 243.[4]  Similarly, their strict products liability for misrepresentation claim alleges that "Defendants misrepresented facts as set forth herein concerning the character or quality of [docetaxel]" and that "Defendants' misrepresentations were made to potential prescribers and/or purchasers or users of the public at large."  *Id.* at ¶¶ 235-36.  They do not allege what purported misrepresentation any single Defendant allegedly made to any person at any time.

When, as here, a complaint "use[s] . . .  the collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular [] acts they are alleged to have committed."  *Fox*, 443 F. App'x at

---

[4] To the extent Plaintiffs allege a design defect claim, courts have repeatedly held that such claims are preempted. *See, e.g.*, *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 298-99 (6th Cir. 2015); *see also Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 612-13 (5th Cir. 2014); *Eckhardt*, 751 F.3d at 678-79; *Utts v. Bristol-Myers Squibb Co.*, No. 16-cv-5668, 2016 WL 7429449, at \*12 (S.D.N.Y. Dec. 23, 2016); *but see In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. MDL 2592, 2017 WL 1395312, at \*3-4 (E.D. La. Apr. 13, 2017) (Fallon, J.). Defendants reserve the right to more fully brief preemption arguments to the extent this litigation proceeds.

362.  Because Plaintiffs' pleading does not give Defendants fair notice of the claims against them as required by Rule 8, the Court should dismiss the Master Complaint.

<u>CAUSATION</u>

**B.  All of Plaintiffs' Claims Must be Dismissed Because Plaintiffs Fail to Allege Causation**

Plaintiffs' claims should be dismissed because Plaintiffs do not allege causation, an essential element of each claim.  To state a products liability claim based on an alleged personal injury, a plaintiff must plead and prove that the product caused physical harm to the plaintiff and that defendant's alleged misconduct proximately caused plaintiff's alleged injury.  *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 402A(1),[5] 402B, 430, 557A (1965) (causation is an element of claims for strict liability for product defect, strict liability for misrepresentation, negligence, and fraudulent misrepresentation); *Pa. Employees Ben. Trust Fund v. Astrazeneca Pharm. LP*, No. 6:09-cv-5003, 2009 WL 2231686, at *4 (M.D. Fla. July 20, 2009) (express warranty); *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 394 (M.D. Pa. 2004) (same).

Plaintiffs do not even allege that docetaxel caused their alleged permanent hair loss. They allege only that they "are women who were diagnosed with breast cancer, underwent chemotherapy using Taxotere, Docetaxel Injection, Docetaxel Injection Concentrate, and/or Docefrez, and now suffer from permanent hair loss, a side effect for which they were not warned and were wholly unprepared."  Compl. ¶ 5; *see also id.* at ¶ 231.  Plaintiffs fail to actually allege that absent their use of docetaxel, they would not have experienced permanent hair loss.

---

[5] Except for the states that have rejected the strict products liability doctrine, each of the states in which Plaintiffs reside evaluate strict liability claims under the framework set forth in Section 402A or substantially equivalent state law.  *See, e.g.*, *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) ("[Pursuant to the Tennessee Products Liability Act, a] manufacturer or seller of a product shall not be liable for any injury to person . . . caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.") (quoting TENN. CODE ANN. § 29–28–105(a)); *see also Keck v. Dryvit Sys., Inc.*, 830 So.2d 1, 5 (Ala. 2002) ("The [Alabama Extended Manufacturer's Liability Doctrine] is a judicially created accommodation of Alabama law to the doctrine of strict liability for damage or injuries caused by allegedly defective products.") (citation omitted).

Nor is it enough to allege that a manufacturer failed to warn of a particular risk.  Rather, a plaintiff must plead and prove that the failure to warn was a "producing cause" of injury. *Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 208 (5th Cir. 2008) (citing *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467-68 (5th Cir. 1999)).  Here, where the "learned intermediary doctrine" applies, "the manufacturer has no duty to warn the patient, but need only warn the patient's physician."  *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991); *Ackermann*, 526 F.3d at 207-08.  A prescription-drug manufacturer "discharge[s] its duty . . . when it has reasonably informed prescribing physicians of the dangers of harm from such a drug." *Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir. 1987) (citing *Cobb v. Syntex Labs., Inc.,* 444 So.2d 203, 203 (La. Ct. App. 1983)).  It follows that causation in this context requires a showing that "a proper warning would have changed the decision of the treating physician, *i.e.,* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343 (5th Cir. 1994) (quoting *Willett,* 929 F.2d at 1099).  Among other things, Plaintiffs fail to allege the following:

- That another drug would have successfully treated Plaintiffs' breast cancer;

- That another drug would have been free from all risk of permanent alopecia (to do so would be contrary to scientific fact and resort to total speculation);

- That Plaintiffs' respective prescribing physicians even read the relevant docetaxel labeling;[6] or

- That, had the labeling said something different about alopecia, Plaintiffs' prescribing physicians would have made a different prescribing decision.

Because Plaintiffs do not allege facts sufficient to establish causation, their claims should be dismissed.  *See, e.g.*, *Aston v. Johnson & Johnson*, No. 16-cv-0086, 2017 WL 1214399, at *7

---

[6] While it is possible that Plaintiffs' physicians could have reviewed the docetaxel labeling prior to prescribing the drug to Plaintiffs, a showing that causation is merely possible – as opposed to plausible – is insufficient to sustain Plaintiffs' pleading burden at this stage.  *See Ashcroft*, 556 U.S. at 678.

(D.D.C. Mar. 31, 2017) (dismissing failure-to-warn claim for not pleading causation where plaintiffs did not allege "'facts about the timing of [each plaintiff's] use of [the drug], the onset of [their injuries],' . . . . and why they think [the drug] was the cause of these injuries—let alone why they think inadequate *warnings* contributed to their injuries") (first and third alterations in original) (quoting *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 752 (W.D. Pa. 2011)).

STRICT PRODUCTS LIABILITY FOR MISREPRESENTATION

**C.  Plaintiffs' Strict Products Liability for Misrepresentation Claim Fails**

Plaintiffs' "Strict Products Liability for Misrepresentation" claim should be dismissed for several other, independent reasons.  First, many states do not recognize a cause of action based in strict liability for misrepresentation.  Since the claim is not common to Plaintiffs, it should not be included in the Master Complaint, which is intended to consist of "common allegations."  Compl. ¶¶ 1-2.[7]  Second, even in states that do recognize this claim, a plaintiff must allege an express misrepresentation.  Omissions alone are insufficient.  Here, the Master Complaint asserts that Defendants failed to disclose the alleged risk of permanent alopecia, but it does not, as required, identify any express misrepresentation.  Third, as discussed more fully in Section E., *infra*, this cause of action incorporates by reference Plaintiffs' fraud allegations, which Plaintiffs have not pled with the particularity required by Rule 9(b).  As a result, Plaintiffs' strict liability for misrepresentation claim fails.

---

[7] At a minimum, to provide Defendants with fair notice of the claims being asserted, Plaintiffs should list the states for which they believe this cause of action is viable.

### 1. Plaintiffs' Strict Products Liability for Misrepresentation Claim is Not Actionable in Many States

In addition to the states that do not recognize strict liability causes of action at all,[8] many other states do not recognize a claim for strict products liability based on misrepresentation.  For example, there are more than 450 MDL plaintiffs that reside in either Alabama or Louisiana, yet these states do not permit such a claim.  *See Barnhill v. Teva Pharm. USA, Inc.*, No. 06-cv-0282, 2007 WL 6947996, at *7 (S.D. Ala. Apr. 24, 2007); *Vitatoe v. Mylan Pharm., Inc.*, 696 F. Supp. 2d 599, 606 (N.D. W.Va. 2010).  In *Barnhill*, the plaintiff alleged that she developed Stevens-Johnson-Syndrome after taking a prescription antibiotic.  The district court dismissed her claim for "strict liability under § 402B, Restatement (Second) of Torts," explaining that "Alabama has not adopted the no-fault concept embodied in the Restatement but, instead, has retained a negligence-based concept of liability in products liability cases."  2007 WL 6947996 at *7 (citing *Griggs v. Combe, Inc.*, 456 So.2d 790, 792 (Ala. 1984)).

Similarly, in *Vitatoe*, in which plaintiff alleged that her son was injured by a prescription antiepileptic medicine, the court held that under the Louisiana Products Liability Act ("LPLA"), claims for "strict liability, negligence, breach of implied warranty, § 402B misrepresentation, intentional conduct, reckless indifference, and malice, emotional distress, and loss of consortium do not survive."  696 F. Supp. 2d at 606; *see also Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d

---

[8] For example, North Carolina, Massachusetts, Virginia, and Michigan, among others, do not recognize claims for strict liability.  *See* N.C. GEN. STAT. § 99B-1.1 (1996) ("There shall be no strict liability in tort in product liability actions."); *Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 109 (D.D.C. 2007) ("[I]n product liability cases, Massachusetts does not have a strict liability tort apart from liability for breach of warranty under the Uniform Commercial Code."); *Sneath v. Conair Corp.*, 35 Va. Cir. 127, 127 (1994) ("Virginia law has not adopted [Section] 402A of the Restatement (Second) of Torts and does not permit tort recovery on a strict-liability theory in products-liability cases."); *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977) ("In Michigan, two theories of recovery are recognized in product liability cases; negligence and implied warranty.  Strict liability has not been recognized as a third theory of recovery.").

1245, 1251 (5th Cir. 1997) ("A plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA.").

Other states, including New York, Florida, and California, also do not recognize Plaintiffs' claim for strict liability based on misrepresentation. *See, e.g.*, *Hawkins v. Medtronic, Inc.*, 62 F. Supp. 3d 1144, 1162 (E.D. Cal. 2014) (dismissing "strict products liability—misrepresentation" claim because it "no longer appears to be viable under California law"); *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 623 (S.D.N.Y. 2012) ("'New York has never adopted the strict liability approach set forth in Section 402B of the Restatement.'") (quoting *Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 3d 422, 447-48 (W.D.N.Y. 2001)); *Sobkowski v. Wyeth, Inc.*, No. 5:04-cv-96, 2004 WL 3569704, at *6 (M.D. Fla. May 17, 2004) ("[N]o Florida court has ever adopted Restatement (Second) of Torts § 402B."), *report and recommendation adopted as modified*, No. 5:04-cv-96, 2004 WL 3581799 (M.D. Fla. June 24, 2004).

Accordingly, because Plaintiffs' claim does not "generally pertain" to Plaintiffs, the Court should dismiss it.

### 2. Plaintiffs Have Not Identified an *Express* Misrepresentation as Required for a Strict Products Liability for Misrepresentation Claim

Where states have recognized claims for strict liability for misrepresentation, they have relied on Section 402B of the Restatement (Second) of Torts, which provides:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though . . . it is not made fraudulently or negligently.

RESTATEMENT (SECOND) OF TORTS § 402B (1965).

Such claims are derived from express warranty claims and require express misrepresentations. *See  Am. Safety Equip. Corp. v. Winkler*, 640 P.2d 216, 218-21 (Colo. 1982)

("[T]he rule stated in section 402B stems from the concept of express warranty by advertising."); *accord Baughn v. Honda Motor Co., Ltd.*, 727 P.2d 655, 667 (Wash. 1986). In addition, because Section 402B does not require scienter, courts have held that an express misrepresentation is necessary to prevent the cause of action from becoming a form of absolute liability or displacing other causes of action. *See Franks v. Nat'l Dairy Prods. Corp.*, 282 F. Supp. 528 (W.D. Tex. 1968) *aff'd,* 414 F.2d 682 (5th Cir. 1969); *see also Am. Safety Equip. Corp.*, 640 P.2d at 221 ("Strict tort liability for misrepresentation does not impose an insurer status upon the manufacturer.").

Courts also reject strict liability claims based on implicit misrepresentations. *See Franks*, 282 F. Supp. at 533-34; *English v. Suzuki Motor Co., Ltd.*, 120 F.3d 270 (10th Cir. 1997) (unpublished) (Section 402B requires "an affirmative representation of material fact regarding the character or quality of the product."); *Adkins v. Ford Motor Co.*, 446 F.2d 1105, 1108 (6th Cir. 1971) ("[A]t the least, Tennessee law requires reliance on a particular and specific statement concerning quality or fitness as the foundation for an action of misrepresentation under Section 402B."); *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 573 (E.D. Pa. 2011) (dismissing misrepresentation claim where plaintiff failed "to identify any specific misrepresentation on the labels about the quality of the product itself"); David M. Holliday, American Law of Products Liability § 26:12 (3d ed. 2017) ("Since the rule is concerned with the express misstatement of a material fact by the manufacturer, it does not apply to representations inferred from the nondisclosure of facts, such as the absence of a warning, that allegedly causes injury.").

As demonstrated above, Plaintiffs' strict liability for misrepresentation claim fails to allege an express misrepresentation. Plaintiffs allege only that Defendants omitted a purported risk of permanent alopecia, but that does not amount to an actionable Section 402B claim. To

the extent that Plaintiffs have alleged that "Defendants misrepresented to the public, the FDA, and the medical profession that Taxotere [and docetaxel] are free from permanent side effects," (Compl. ¶ 11), the allegation is implausible.  The very labeling on which they rely contains no such statement.   Indeed, the labeling for docetaxel has always included warnings about potentially serious risks, including death.  *See, e.g.*, Taxotere Label, Dec. 23, 1999 (Ex. A at 1).[9] Thus, Plaintiffs' allegation is not plausible on its face.  *See Iqbal*, 556 U.S. at 678.

### 3. Plaintiffs Have Not Satisfied Rule 9(b) in Pleading a Strict Products Liability for Misrepresentation Claim

As set forth more fully in Section E, *infra*, a heightened pleading standard applies to averments of fraud when used to support non-fraud claims.  *See Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 749-51 (N.D. Tex. 2005).  Plaintiffs' strict liability for misrepresentation and negligent misrepresentation claims are based on the same common allegations, incorporated by reference, that Defendants made false and misleading statements and omissions.  *See, e.g.*, Compl. ¶ 235.  But those allegations fail to satisfy Rule 9(b) because Plaintiffs do not identify with particularity to whom, when, or how those statements were made.

If possible, courts should "disregard" or "strip from the claim" improperly pled allegations of fraud, and determine whether remaining non-fraud claims survive under regular pleading standards.  *Am. Realty Trust, Inc.*, 362 F. Supp. 2d at 751-52.  But if the relevant allegations are intertwined or if a "line-by-line redaction" would be required, dismissal is

---

[9] The Court may take judicial notice of the Taxotere Label.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating that judicial notice was appropriate for "publicly available documents and transcripts produced by the FDA, which were matters of public record and directly relevant to the issue at hand"); *Pramann v. Janssen Pharm., Inc.*, No. 16-cv-12413, 2017 WL 58469, at *2 (E.D. La. Jan. 5, 2017) (taking judicial notice of "FDA approved Risperidone label" attached to defendant's motion to dismiss); *Cooper v. Pfizer, Inc.*, No. 14-cv-3705, 2015 WL 2341888, at *2 (S.D. Tex. May 13, 2015) (considering "the contents of the FDA approved label" attached to defendant's motion to dismiss); *Elmazouni v. Mylan, Inc.*, No. 16-cv-00574, 2016 WL 7105021, at *3 (N.D. Tex. Dec. 1, 2016) (same).

warranted.  *See id.* at 752-53 (dismissing negligent misrepresentation claim where it was not possible to "strip away inadequate allegations of fraud without 'rewrit[ing] . . . [the] deficient complaint'") (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)).

For example, in *Berry v. Indianapolis Life Ins. Co.*, the court dismissed a claim for negligent misrepresentation under Rule 9(b) where plaintiffs "pled negligent misrepresentation as a lesser-included offense to their fraud claims," and "the factual allegations underlying the claims [we]re verbatim."  No. 3:08-cv-0248, 2010 WL 3422873, at *14 (N.D. Tex. Aug. 26, 2010).  The same analysis applies and warrants dismissal here.  As Plaintiffs have made no effort to distinguish which allegations apply to which claims or which Defendants, the Court need not engage in a line-by-line redaction to determine whether the misrepresentation claims survive.

<u>BREACH OF EXPRESS WARRANTY</u>

### D.  Plaintiffs' Breach of Express Warranty Claim Against the sanofi Defendants Fails

Plaintiffs' breach of express warranty claim is also deficient.  First, the sanofi Defendants cannot be liable for any express warranties made by other Defendants.  While this cause of action is made only against "Sanofi-Related Entities" it alleges those Defendants made express warranties with regard to docetaxel products not made or sold by sanofi, including "Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate."  Compl. ¶ 313.  The sanofi Defendants, however, cannot be held liable for how any product, other than their own, was allegedly "warranted."  *See Johnson v. Teva Pharm. USA, Inc.,* 758 F.3d 605, 616 & n.3 (5th Cir. 2014) (finding no liability against a name-brand manufacturer for injuries caused by ingestion of a generic drug under Louisiana law and observing that "[o]ur decision is consistent with other circuit decisions that have held (under the laws of several different states) that brand-name

manufacturers are not liable for injuries caused by a plaintiffs ingestion of generic products"). Thus, any claims regarding alleged express warranties with regard to Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate must be dismissed.

Second, Plaintiffs' Master Complaint fails to allege facts sufficient to support their claim that the sanofi Defendants breached any alleged express warranties for Taxotere. *See* Compl. ¶¶ 312-319. Plaintiffs formulaically recite the elements of a breach of warranty action, without any factual support. *See id.* at ¶¶ 313-315. Plaintiffs do not identify what or how any information was "expressly warranted" to Plaintiffs or their prescribing physicians. *See Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 395 (6th Cir. 2013) (affirming dismissal of express warranty claims where "[t]he plaintiffs' allegations . . . do not identify any affirmation of fact made on the product labeling that they allege to be *false;* rather, they allege that the labeling was *inadequate*"); *Utts*, 2016 WL 7429449, at *13 (dismissing express warranty claim in pharmaceutical failure-to-warn case where "[t]he complaint does not identify the express warranties on which this claim relies, including whether they appeared in the labeling and package inserts for the drug, which were approved by the FDA, whether they appeared in an advertising campaign for the drug, or how the particular warranty was breached"). Like the strict liability for misrepresentation claim, Plaintiffs' breach of express warranty claim requires an express warranty – not simply an alleged omission. Because Plaintiffs do not allege any express statement by sanofi, instead arguing omission of the warning they allege should have been included, this claim must be dismissed. *See Young v. Bristol-Myers Squibb Co.*, No. 4:16-cv-00108, 2017 WL 706320, at *15 n.10 (N.D. Miss. Feb. 22, 2017) ("In reaching this conclusion, the Court notes that, while not raised by the defendants, [the plaintiff's] breach of express warranty claim must fail to the extent it is based on alleged omissions in [the defendant's]

prescribing information. An omission is neither an affirmation of fact nor a promise. *See generally Sidco Prods. Mktg. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988) ('Omissions, however, are not affirmative representations of any sort and thus cannot support a warranty claim, because express warranties must be explicit.') (applying Texas law)."); *see also Strayhorn*, 737 F.3d at 395 (holding "express-warranty claims are without merit because the labels never explicitly warranted that metoclopramide was safe for long-term use").

Finally, even if an express warranty existed (it did not), Plaintiffs do not identify how they or their prescribing physicians supposedly relied on any express warranty. This Court is not bound to accept legal conclusions couched as factual allegations as true. *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). Therefore, Plaintiffs' breach of express warranty claim must be dismissed for failure to state a claim. *See, e.g.*, *Parra v. Coloplast Corp.*, No. 16-cv-14696, 2017 WL 24794, at *5 (E.D. La. Jan. 3, 2017); *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 394-95 (M.D. Pa. 2004).

## FRAUD

### E. Plaintiffs' Fraud Claims Fail to Meet the Requisite Pleading Standard

#### 1. Rule 9(b) Applies to Plaintiffs' Claims for Strict Products Liability for Misrepresentation, Negligent Misrepresentation, Fraudulent Misrepresentation, Fraudulent Concealment, and Fraud and Deceit

Plaintiffs' Master Complaint includes five claims premised on alleged misrepresentations: strict products liability-misrepresentation, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. These claims must satisfy Rule 9(b). All of these claims are premised on the assertion that Defendants made false and misleading statements and omissions. *See, e.g.*, Compl. ¶¶ 235, 254, 261, 268, 278.

16

Because these claims allege knowing conduct, they sound in fraud and must satisfy Rule 9(b). *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003), *opinion modified on denial of reh'g,* 355 F.3d 356 (5th Cir. 2003); *Lone Star Ladies Inv. Club*, 238 F. 3d at 368 ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *In re Ford Motor Co. Vehicle Paint Litig.*, 1996 WL 426548, at *29 (holding plaintiffs failed to plead fraudulent concealment claim with sufficient particularly required by Rule 9(b)); *see also Hawkins v. Medtronic, Inc.*, No. 1:13-cv-00499, 2014 WL 346622, at *17 (E.D. Cal. Jan. 30, 2014) (dismissing strict liability for misrepresentation claim for failing to satisfy Rule 9(b)).

### 2. Plaintiffs' Conclusory Fraud-Based Allegations Do Not Satisfy Rule 9(b)'s Heightened Pleading Requirements

As Plaintiffs fail even to plead facts sufficient to meet the basic plausibility pleading standard under Rule 8(a)(2), their fraud-based claims fall that much further short of satisfying the heightened standard required by Rule 9(b) and  must be dismissed.

Rule 9(b) is only satisfied if the plaintiff supplies "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the who, what, when, where, and how of the alleged fraud."  *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (internal citations and quotation marks omitted). Rule 9(b) is designed "to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs."  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993) (citing *Guidry v. Bank of LaPlace* ("*Guidry I*"), 740 F. Supp. 1208, 1216 (E.D. La. 1990)); *see also House v. Bristol-Myers Squibb Co.*, No. 3:15-cv-00894, 2017 WL 55876, at *9 (W.D. Ky.

Jan. 4, 2017) (applying Rule 9(b) heightened pleading requirements to fraud claims made in personal injury action involving prescription medications).

Plaintiffs allege no factual basis for their fraud claims, but rather assert only general allegations that Defendants made representations about docetaxel through marketing or labeling. *See* Compl. ¶ 260 ("Defendants represented to Plaintiffs . . . that [the products at issue] had been tested and [were] found to be safe and effective . . ."); *id.* at ¶ 268 ("Defendants misrepresented the design characteristics and safety of [the products at issue] for their intended use."); *id.* at ¶ 279 ("Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which Taxotere was designed to treat.").

But Plaintiffs do not identify with particularity what, to whom, when, or how these representations were made or specify which Defendant or Defendants made them, even though a plaintiff "must allege specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F. 3d 333, 339 (5th Cir. 2008). The Fifth Circuit "interprets Rule 9(b) strictly," and, in order to avoid dismissal, a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.*; *see also Eckhardt*, 751 F.3d at 681 (finding plaintiff failed to allege sufficient facts for his fraud claim to survive in a pharmaceutical product liability case). Plaintiffs have alleged none of the specific facts required, only claiming that the unspecified representations were "material and false." Compl. ¶ 162. This is not enough to satisfy Rule 9(b). *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1019 (5th Cir. 1996).

For all of these reasons, Plaintiffs' claims for strict liability for misrepresentation, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit should be dismissed.

## IV.    CONCLUSION

For the reasons mentioned above, Defendants request that this Court grant their Motion to Dismiss Plaintiffs' Master Long Form Complaint.

Respectfully Submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: /s/ Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

SHOOK, HARDY & BACON L.L.P.

Harley V. Ratliff
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com

*Counsel for sanofi-aventis U.S. LLC and
Sanofi US Services Inc.*

GREENBERG TRAURIG, LLP

By: /s/ Lori G. Cohen
Lori G. Cohen
R. Clifton Merrell
Evan Holden
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
cohenl@gtlaw.com
merrellc@gtlaw.com
holdene@gtlaw.com

*Attorneys   for   Defendant   Sandoz   Inc.*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Mark S. Cheffo
Mark S. Cheffo
Mara Cusker Gonzalez
51 Madison Ave., 22nd Floor
New York, NY 10010
Phone: (212) 849-7000
Fax: (212) 849-7100
markcheffo@quinnemanuel.com
maracuskergonzalez@quinnemanuel.com

CHAFFE MCCALL, L.L.P.

By: /s/ John F. Olinde
John F. Olinde (LA Bar #1515)
Peter J. Rotolo (LA Bar #21848)
1100 Poydras Street
New Orleans, LA 70163
Phone:  (504) 585-7000
Fax:  (504) 585-7075
olinde@chaffe.com
rotolo@chaffe.com

*Attorneys for Defendants Hospira, Inc.,
Hospira Worldwide, LLC, formerly doing
business as Hospira Worldwide, Inc., and
Pfizer Inc.*

ULMER & BERNE LLP

By: /s/ Michael J. Suffern
Michael J. Suffern
Jeffrey F. Peck
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: (513) 698-5064
Facsimile: (513) 698-5065
msuffern@ulmer.com

*Attorneys for Defendant Actavis Pharma,
Inc.*

KEOGH, COX & WILSON, LTD.

By: */s/John P. Wolff, III*
John P. Wolff, III, TA #14504
Nancy B. Gilbert, Bar #23095
Chad A. Sullivan, Bar #27657
Richard W. Wolff, Bar #34844
701 Main Street
Post Office Box 1151
Baton Rouge, Louisiana  70821
Telephone:  (225) 383-3796
Fax: (225) 343-9612
jwolff@keoghcox.com
ngilbert@keoghcox.com
csullivan@keoghcox.com
rwolff@keoghcox.com

AND
Via *Pro Hac Vice* Admission

TUCKER ELLIS LLP

By: */s/ Julie A. Callsen*
Julie A. Callsen, TA, OH Bar #0062287
Brandon D. Cox, OH Bar #0089815
950 Main Ave.; Suite 1100
Cleveland, OH   44113-7213
Telephone: (216) 696-2286
Fax: (216) 592-5009
Julie.Callsen@TuckerEllis.com
Brandon.Cox@TuckerEllis.com

*Attorneys for Defendant Accord Healthcare Inc.*

LEAKE & ANDERSSON LLP

By: */s/ Stanton E. Shuler, Jr.*
Stanton E. Shuler, Jr. (Bar No. 19152)
1100 Poydras Street, Suite 1700
New Orleans, LA  70163-1701
Telephone: 504-585-7500
Facsimile:  504-585-7775
sshuler@leakeandandersson.com

HINSHAW & CULBERTSON LLP

By: */s/ Geoffrey M. Coan*
Kathleen E. Kelly
28 State Street
Boston, MA 02109
Telephone: 617-213-7000
Facsimile:  617-213-7001
gcoan@hinshawlaw.com
kekelly@hinshawlaw.com

*Attorneys for Defendant Sun Pharma Global Inc.*

MORRISON & FOERSTER LLP

BY: *Erin M. Bosman*
Erin M. Bosman (Bar No. 204987)
Julie Y. Park (Bar No. 259929)
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858-720-5100
Facsimile: 858-720-5125
EBosman@mofo.com
JuliePark@mofo.com

*Attorneys    for    Defendant    McKesson Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*<u>/s/ Douglas J. Moore</u>*