## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

───────────────────────────────────

### DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI US SERVICES INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS CLAIMS BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

───────────────────────────────────

This Court should dismiss the claims of Plaintiffs identified in **Exhibit A** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because they are barred by the applicable statutes of limitations.[1]

Plaintiffs claim that their injury—incomplete hair regrowth six months after finishing chemotherapy—was caused by the chemotherapy drug Taxotere®. The majority of Plaintiffs in this MDL, however, finished their chemotherapy treatment many years ago (in some instances, decades ago), and their causes of action have long since expired. Though states vary on the number of years they allow a plaintiff to file a lawsuit, all states require a plaintiff to file within a prescribed period of time after the alleged injury. In special circumstances, some states allow plaintiffs more time to file if their injury is hidden or unknown, or if the cause is not apparent.

---

[1] The cases that were filed outside the statute of limitations are included in a set of charts attached as **Exhibit A**. The charts are organized by the applicable state statute of limitations and include: 1) each untimely Plaintiff's name; 2) the date her chemotherapy treatment ended; 3) the date her cause of action accrued; 4) the last day she could have timely filed her lawsuit; and 5) the date she did file her lawsuit. Each Plaintiff is listed according to the state of her alleged injury or, if none is specified at the time of filing, her state of treatment, diagnosis, or residence. These charts are current as of May 23, 2017, and Defendants reserve the right to supplement them in light of further filings.

1

Such is not the case here.

In each of these cases, the alleged injury is known and obvious—the obviousness of hair loss being one of Plaintiffs' fundamental complaints—and Plaintiffs have always associated this alleged injury with chemotherapy. Indeed, under Plaintiffs' own definition of their alleged injury, the permanency of their hair loss was evident "six months after completion of chemotherapy."[2] *See* Compl. ¶ 181. No Plaintiff alleges that she believed something *other* than chemotherapy caused her hair loss. And no Plaintiff plausibly alleges that she was unaware of her hair loss at any time, only to discover it later.

Still, hundreds of Plaintiffs in this litigation waited until the formation of this MDL to file their lawsuits—long after their alleged injury was apparent and long after the deadline imposed by law—in hopes of avoiding close scrutiny. *See In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-md-2004, 2016 WL 4705827, at *2 (M.D. Ga. Sept. 7, 2016) ("Some lawyers seem to think that their case will be swept into the MDL where global settlement will be reached, allowing them to obtain recovery without the individual merit of their case being scrutinized as closely as it would if it proceeded as a separate, individual action."). But because relief cannot be granted on a claim that has expired as a matter of law, Plaintiffs' Complaints should be dismissed. *See* FED. R. CIV. P. 12(b)(6).

## BACKGROUND

This MDL is comprised of hundreds of cases in which the plaintiff allegedly lost her hair many years ago. Taxotere® was first approved by the Federal Food & Drug Administration in

---

[2] Defendants use Plaintiff's six-month definition because, for purposes of a 12(b)(6) motion to dismiss, Plaintiffs' factual allegations are treated as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But even if the Court extended the definition of "permanent" alopecia beyond six months, the result would be largely the same. For example, if the alleged injury were defined as incomplete hair regrowth one or even two years after the end of chemotherapy, most Complaints in **Exhibit A** would still be time barred.

2

1996.  Initially indicated for treatment of the most advanced breast cancer, Taxotere® was later approved by FDA for first- and second-line treatment in different types of breast cancers and various other cancers.  Plaintiffs in this MDL claim to have undergone chemotherapy treatment with Taxotere® throughout this 21-year history, with some Plaintiffs completing Taxotere® treatment as far back as 1998.[3]

Hair loss is a well-known side effect of chemotherapy.  *See, e.g.*, Compl. ¶ 174.  And hair loss, or "alopecia," has always been identified in Taxotere's FDA-approved product label.  *See, e.g.*, Compl. ¶ 129.  Plaintiffs acknowledge that they expected to develop alopecia during chemotherapy treatment but claim that Taxotere® caused it to be permanent.[4]  Plaintiffs define "permanent" alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."  *See* Compl. ¶ 181.  Permanent alopecia, they claim, is so apparent that it has stigmatized Plaintiffs and negatively affected their body image, social relationships and emotional well-being.  *See* Compl. ¶¶ 214–20.

Plaintiffs also claim that there has been more than a decade of public discussion about the very injury they allege.  *See* Compl. ¶¶ 149-162 (citing sources from 1998-2015 discussing chemotherapy, Taxotere® and permanent alopecia).[5]  For example, more than a decade ago,

---

[3] *See, e.g.*, Patricia Hollis Complaint ¶ 305 (treatment September 1998); Carol Ford Complaint ¶ 95 (same); Carolyn Purdue Complaint ¶ 55 (1999); Annie Marbury Complaint ¶ 95 (same).

[4] The statutes of limitation governing personal injury and/or product liability actions are the only limitations statutes relevant to this Motion. In all of these cases, personal injury resulting from product liability is the sole harm alleged, regardless of the multiple (and cumulative) formal counts stated in the Master Complaint.  Each of the eight counts—no matter how styled—seeks damages for bodily injuries and related medical, mental and emotional costs. *See* Compl. ¶¶ 231; 239; 247; 258; 266; 276; 311; 319; 320.

[5] Defendants do not pass judgment on the merits, credibility or validity of these publications, but discuss them merely to demonstrate that Plaintiffs have been on notice of their alleged claims for many years.  *Cf. Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) ("Whether appellants read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."); *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (affirming dismissal where "the district

Taxotere® patient and self-proclaimed "Taxoterrorist" Shirley Ledlie publicly alleged that Taxotere® caused permanent alopecia, forming an advocacy group called the "Taxotears."[6] Plaintiffs' Master Complaint further cites numerous news stories and published case studies relating to the use of Taxotere® and alleged reports of permanent hair loss.  *See* Compl. ¶ 150.

Despite the fact that Plaintiffs knew that they had lost their hair during chemotherapy and that they had allegedly developed permanent hair loss six months after they finished treatment with Taxotere®, the majority waited years—and in some cases decades—before filing their lawsuits.  Nearly all of these filings came shortly after the formation of this MDL in October 2016.  *See* Transfer Order (Doc. 81), *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (Oct. 4, 2016) (transferring 33 cases with 56 tag-along actions).  Indeed, in the seven months since the formation of this MDL, more than 1,000 additional cases have been filed, and more than half of them are too late.  *See In re Mentor Corp.*, 2016 WL 4705827, at *2 (lamenting that many long-expired cases are filed after MDL formation).

## LEGAL STANDARD

"Although one of the purposes of MDL consolidation is to allow for more efficient pretrial management of cases with common issues of law and fact," it has often provided an

---

court took judicial notice of an extensive record of documents—all publicly available during the relevant limitations periods—which discussed Pfizer's unpublished clinical trials and the allegation that Zoloft was no more effective than a placebo."); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1117 (N.D. Ill. 1998) (disposing of claims where "the pervasive media coverage and publicity surrounding the issue…leads the court to the inescapable conclusion that a reasonable person in [plaintiffs'] situation should have known of their claim.").

[6] *See* Compl. ¶ 155 (referencing Jim Edwards, *Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald*, CBS News (March 6, 2010), http://www.cbsnews.com/news/sanofis-latest-challenge-women-who-say-its-chemotherapy-left-them-permanently-bald/); *see also* Taxotears Turns Ten, aheadofourtime.org (April 4, 2016), http://aheadofourtime.org/taxotears-turns-ten/.  This Court may properly consider these materials because they are incorporated into the complaint by reference.  *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (Apr. 12, 2017) (on motion to dismiss under Rule 12(b)(6), a Court "may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (internal quote marks omitted).

incentive for plaintiffs to file cases that "otherwise would not be filed if they had to stand on their own merit as a stand-alone action." *Id*. "This attitude explains why many cases are filed with little regard for the statute of limitations." *Id.*

Hiding behind the sheer number of cases in an MDL, plaintiffs often try to avoid resolving threshold legal issues—such as statutes of limitations—until late in the process, which results in an MDL "populated with many non-meritorious cases that must nevertheless be managed by the transferee judge—cases that likely never would have entered the federal court system without the MDL." *Id.* Thus, "transferee judges should be aware that they may need to consider approaches that weed out non-meritorious cases early, efficiently, and justly." *Id.* One key mechanism for achieving this important result is ruling on dispositive motions, such as this one, *at the start* of the MDL and *not the end. See In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 359 (S.D.N.Y. 2014) (dismissing MDL Plaintiff's claims as barred by the statute of limitations); *In re Mirena IUD Prod. Liab. Litig.*, No. 13-cv-3383, 2015 WL 144214, at *11 (S.D.N.Y. Jan. 9, 2015), *aff'd sub nom. Medinger v. Bayer Healthcare Pharm. Inc.*, 667 F. App'x 321 (2d Cir. 2016) (dismissing additional MDL claims from Louisiana, California, Oklahoma, and Ohio under reasoning of previous order).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Relief cannot be granted if the plaintiff's claim is barred by the statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling

or the like."). Thus, "[w]hen the dates listed and the allegations contained in the complaint facially suggest that the limitations period had been exceeded," then "the plaintiff must, to avoid dismissal, 'sketch a factual predicate' that provides a basis for avoiding the statute of limitations, concluding that the limitation period has not run, or finding that a different statute of limitations applies." *Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 206 n.1 (1st Cir. 2015) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)); *see also Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). If the plaintiff cannot do so, the complaint must be dismissed for failure to state a claim. *See, e.g.*, *Jones v. Bock*, 549 U.S. at 215.

## LAW AND ARGUMENT

Each of Plaintiffs' Complaints listed in **Exhibit A** to this Motion facially exceed the applicable limitations periods[7] and should be dismissed because (1) no state would toll the statute of limitations for Plaintiffs' alleged hair loss; and (2) Plaintiffs' cause of action, by their own admission, accrued six months after the end of chemotherapy. All Plaintiffs listed in **Exhibit A** filed their lawsuit after the time to file expired.

---

[7] Timeliness is governed not by Louisiana law but by the law of the jurisdiction where the alleged injury occurred or, if none has been specified, Plaintiff's place of treatment or diagnosis or, if none has been specified, Plaintiff's place of residence. *See In re Avandia Mktg.*, *Sales Prac. & Prods. Liab. Litig.*, No. 07-md-1871, MDL No. 1871, 2014 WL 2011239, at *1 (E.D. Pa. May 16, 2014) (applying state of limitations of place of injury); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) (law of place of purchase and prescription applies).

## I.      No State Would Toll The Statute of Limitations By Applying the Discovery Rule

Generally, a cause of action accrues, and the statute of limitations clock begins to tick, on the date of the alleged injury.  *See In re Avandia Mktg.*, 2014 WL 2011239, at *1.  Some states, however, toll the statute of limitations for personal injury actions if the injury, or its potential cause, is unknown for some time (the "discovery rule").  *Id.*  In those states, the cause of action does not accrue until a reasonable person would have had notice of the injury, its potential cause, or both.  *Id.*  Though only some states adopt this so-called "discovery rule" and they often apply it differently, the rule—in any form—is inapplicable here.

In general, the discovery rule applies in cases where the injury is hidden or, in some instances, so ubiquitous that its potential cause is unknown.  *See, e.g., Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (discovery rule inapplicable where plaintiff had reason to suspect injury and cause).  The rule developed out of the need to provide a remedy for plaintiffs who were exposed—often unknowingly—to products that caused undetectable disease over the course of many years.[8]  Take, for example, a plaintiff exposed to asbestos: there, a plaintiff may not know of the exposure, may not have symptoms of an illness until years after the exposure, and may not be diagnosed with an illness until several more years after that.  *See Trieschock*, 511 A.2d at 865 (concluding that date of accrual was "simply not ascertainable" in an asbestos case because the disease developed "over years without symptoms").  But that is not the case here.

---

[8] *See, e.g.*, Alex J. Grant, *When Does the Clock Start Ticking?: Applying the Statute of Limitations in Asbestos Property Damage Actions*, 80 Cornell L. Rev. 695, 696–97 (1995) (describing asbestos litigation as the "mother of invention" because it prompted "the widespread adoption of the discovery rule for applying the statute of limitations."); Susan D. Glimcher, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law*, 43 U. Pitt. L. Rev. 501, 522 (1982); *see also Trieschock v. Owens Corning Fiberglas Co., Inc.*, 511 A.2d 863, 865 (Pa. Sup. Ct. 1986) (describing asbestosis as a "creeping disease.").

7

In each of these cases, Plaintiffs lost their hair during chemotherapy and the hair loss was physically apparent.  *See, e.g.*, Compl. ¶ 6 (describing hair loss as "the universal cancer signifier").  Unlike a disease affecting internal organs, the permanency of Plaintiffs' hair loss was, by their own contention, obvious six months after their chemotherapy treatment because their hair allegedly did not grow back even though they expected it to.  *See* Compl. ¶ 181 (defining permanent alopecia as the partial or non-existent hair regrowth six months after chemotherapy).

And unlike a latent or ubiquitous disease caused by exposure to an unknown toxin, hair loss during chemotherapy is an issue both common to chemotherapy and unique to it.  *See In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d at 355 ("There simply was no mystery regarding the possible connection between Plaintiff's injuries and the Mirena [intrauterine contraceptive system ("IUS")]—*i.e.*, the connection was sufficiently obvious that a diligent individual in Plaintiff's position would have inquired into whether she had a claim regarding her Mirena.").  Because of this, the fact that the statute of limitations was triggered six months after chemotherapy treatment is unavoidable.  *Id.* (statute of limitations triggered when plaintiff learned that IUS perforated her uterus).

And such an outcome requires no specific analysis or discovery in individual cases because the necessary facts are pled in Plaintiffs' own allegations.  In their respective Short Form Complaints, each Plaintiff provides the last day she was treated with Taxotere®.  And in the Master Complaint, every Plaintiff alleges that her permanent hair loss developed six months after that date.  *See* Compl. ¶ 181.

## II.   Under Any Statute of Limitations, Each of Plaintiffs' Causes of Action Accrued Six Months After Chemotherapy Treatment

The statutes of limitations here fall into three categories.  Some start the clock on the

**date of injury**, others on the date of **knowledge of the injury**, and others on the **date that**

**Plaintiffs should have known** of the cause of the injury or the alleged wrongdoing.

Though those dates can be different in a case involving a latent, hidden, or non-unique

injury, they are not here.  Accepting Plaintiffs' allegations as true, they each lost their hair during

chemotherapy and six months after finishing chemotherapy: (1) the alleged injury (permanent

hair loss) occurred;[9] (2) Plaintiffs knew of their hair loss, which was outwardly apparent;[10] and

(3) Plaintiffs attributed or reasonably should have attributed their hair loss to chemotherapy.[11]

---

[9] *See* Compl. ¶ 181.

[10] *See* Compl. ¶¶ 6; 214-220. Courts regularly impute knowledge of an obvious injury to a Plaintiff, so as to start the running of the statute of limitations.  *See, e.g., Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 888 (10th Cir. 2005) (declining to toll limitations under Colorado's discovery rule in defective breast implant case, where plaintiff was aware something was not "normal" and sought corrective treatment thirteen years earlier); *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991) *holding modified on other grounds by Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993) (declining to toll limitations under Florida's discovery rule, noting that "[t]his is not a case where a drug was ingested and the alleged effects did not manifest themselves until years later [….] Rather, in this case, the alleged effects of methotrexate manifested within months of [patient's] last treatment."); *Snell v. Columbia Gun Exch.*, Inc., 278 S.E.2d 333, 335 (S.C. 1981) (finding that an obvious injury itself places an injured party on notice of a potential product defect cause of action, and that "[s]ix years is ample time to discover any such cause.").

[11] *See* Compl. ¶¶ 4; 6; 149-184.  Courts regularly conclude that causes alleged by plaintiffs invoking the discovery rule were discoverable as a matter of law when the injury occurred or shortly thereafter, so as to preclude tolling.  *See, e.g., Plumlee*, 664 F. App'x at 653 (dismissing untimely pharmaceutical product liability claims where the face of the pleadings showed the plaintiff had reason to suspect injury and wrongdoing more than four years prior to filing suit); *Ziots v. Stryker Corp.*, 655 F. App'x 622, 626 (10th Cir. 2016) (applying Utah discovery rule to medical product liability case, and finding as a matter of law that "[d]uly diligent inquiry would have revealed [defendant] as the manufacturer of the pain pump long before [two years prior to filing]); *King v. Nashua Corp.*, 763 F.2d 332, 333 (8th Cir. 1985) (measuring limitations period from date of injury despite plaintiff's ignorance, because "the medical community was aware of the causation link" at the time the injury manifested); *Quintana Lopez v. Liggett Grp., Inc.*, 336 F. Supp. 2d 153, 158 (D.P.R. 2004) (granting motion to dismiss where "the health risks associated with smoking are 'common knowledge' to the general public"); *Carter v. R.J. Reynolds Tobacco Co.*, No. CIV.A. 03-330, 2004 WL 1497770, at *4 (E.D. La. July 1, 2004) (dismissing product liability claims where "the decedent had knowledge—actual or constructive—that she was being injured by defendants' products"); *Martinez v. Showa Denko, K.K.*, 964 P.2d 176, 182 (N.M. Ct. App. 1998) ("Even applying the discovery rule, we hold as a matter of law that the information known by Plaintiff concerning the possible

9

Thus, for each Plaintiff, the statute of limitations clock started six months after they finished chemotherapy treatment. Each Plaintiff listed in **Exhibit A** filed her Complaint after that clock had expired. As such, those cases should be dismissed because they do not state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

> **a.** <u>Date of Injury</u>**: The Court Should Dismiss All Complaints in These 15 States That Were Not Filed Within the Appropriate Time After the Date of Injury**

Under Alabama, Arizona, Idaho, Kentucky, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, New Mexico, Oklahoma, Tennessee, Texas, and Virginia law, a plaintiff's cause of action accrues on the date of injury. None of these states apply the discovery rule when the injury, like here, is neither latent nor unknown. In this MDL, Plaintiffs claim that their injury, which they state was obvious, occurred six months after they finished chemotherapy treatment because that is when they allege their hair loss became "permanent." *See* Compl. ¶ 181. Thus, on that date, Plaintiffs' respective causes of action accrued in these states and the statute of limitations clock started. Plaintiffs had the following amounts of time to file their lawsuits:

- **Alabama:** Two years. *See* ALA. CODE § 6-2-38(l); *see also Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) (declining to adopt discovery rule).

  All Alabama Plaintiffs in Exhibit A-1 filed their Complaints more than two years and six months after they finished chemotherapy treatment.

---

connection between her condition and her use of [the pharmaceutical drug] was sufficient to activate the commencement of the statute of limitations *more than three years* before the filing of her complaint.") (emphasis in original); *Waters v. Rosenbloom*, 490 S.E.2d 73, 75 (Ga. 1997) (declining to toll limitations under Georgia's discovery rule where plaintiff knew of causal connection between drug and alleged injury shortly after treatment began, which was 20 years before suit was filed); *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 950 (Okla. 1984) (declining to toll limitations under Oklahoma's discovery rule where product's "toxicity potential was known and connected to plaintiff's maladies soon after exposure."); *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) (declining to apply discovery rule where, "as a matter of law, the cause of action was discoverable by the exercise of diligence in the use of means within reach of [the plaintiff].").

- **Arizona:** Two years.  *See* ARIZ. REV. STAT. ANN. § 12-542; *see also Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (Ariz. 1995) (discovery rule "does not apply" in "cases where the plaintiff's injury is open and obvious.").

  All Arizona Plaintiffs in Exhibit A-2 filed their Complaints more than two years and six months after they finished chemotherapy treatment.

- **Idaho:** Two years.  *See* IDAHO CODE ANN. § 5-219(4) ("the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of.").

  All Idaho Plaintiffs in Exhibit A-3 filed their Complaints more than two years and six months after they finished chemotherapy treatment.

- **Kentucky:** One year.  *See* KY. REV. STAT. ANN. § 413.140(1)(a); *see also Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010) ("the discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses.").

  All Kentucky Plaintiffs in Exhibit A-4 filed their Complaints more than one year and six months after they finished chemotherapy treatment.

- **Maine:** Six years.  *See* ME. REV. STAT. tit. 14, § 752; *see also Johnston v. Dow & Coulombe, Inc.*, 686 A.2d 1064, 1066 (Me. 1996) ("We have limited the application of the discovery rule to three discrete areas: legal malpractice, foreign object and negligent diagnosis medical malpractice, and asbestosis.").

  All Maine Plaintiffs in Exhibit A-5 filed their Complaints more than six years and six months after they finished chemotherapy treatment.

- **Michigan:** Three years.  *See* MICH. COMP. LAWS ANN. § 600.5805(13); *see also Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 670 (Mich. 2007) ("the statutory scheme is exclusive and thus precludes this common-law practice of tolling accrual based on discovery in cases where none of the statutory tolling provisions apply.").

  All Michigan Plaintiffs in Exhibit A-6 filed their Complaints more than three years and six months after they finished chemotherapy treatment.

- **Minnesota:** Six years.  MINN. STAT. ANN. § 541.05; *see also Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999) (declining to adopt a discovery rule).

  All Minnesota Plaintiffs in Exhibit A-7 filed their Complaints more than six years and six months after they finished chemotherapy treatment.

- **Missouri:** Five years.  MO. ANN. STAT. § 516.120(4); *see also Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. 1999) (statute of limitations begins to run when injury is ascertainable).

  All Missouri Plaintiffs in Exhibit A-8 filed their Complaints more than five years and six months after they finished chemotherapy treatment.

- **Mississippi:** Three years.  *See* MISS. CODE. ANN. § 15-1-49; *see also Angle v. Koppers, Inc.*, 42 So. 3d 1, 7 (Miss. 2010) (discovery rule applies only in cases with latent or hidden injuries).

  All Mississippi Plaintiffs in Exhibit A-9 filed their Complaints more than three years and six months after they finished chemotherapy treatment.

- **Montana:** Three years.  *See* MONT. CODE ANN. § 27-2-204(1); *see also id*. at § 27-2-102(a) ("a claim or cause of action accrues when all elements of the claim or cause exist or have occurred").

  All Montana Plaintiffs in Exhibit A-10 filed their Complaints more than three years and six months after they finished chemotherapy treatment.

- **New Mexico:** Three years.  *See* N.M. STAT. ANN. § 37-1-8; *see also Crumpton v. Humana, Inc.*, 661 P.2d 54, 55 (N.M. 1983) ("the statute of limitations commences running from the *date of injury*") (emphasis in original).

  All New Mexico Plaintiffs in Exhibit A-11 filed their Complaints more than three years and six months after they finished chemotherapy treatment.

- **Oklahoma:** Two years.  *See* OKLA. STAT. ANN. tit. 12, § 95(3); *see also Weathers v. Fulgenzi*, 884 P.2d 538, 540 (Okla. 1994) ("Typically, a cause of action arises and the statute of limitations begins to run on that cause of action when harm occurs to the plaintiff whether the plaintiff knew of the injury or not.").

All Oklahoma Plaintiffs in Exhibit A-12 filed their Complaints more than two years and six months after they finished chemotherapy treatment.

- **Tennessee:** One year.   TENN. CODE ANN. § 28-3-104(a)(1)(A) (cause of action accrues on date of injury).

  All Tennessee[12] Plaintiffs in Exhibit A-13 filed their Complaints more than one year and six months after they finished chemotherapy treatment.

- **Texas:** Two years.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003; *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455-56 (Tex. 1996) (discovery rule applies only "where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.").

  All Texas Plaintiffs in Exhibit A-14 filed their Complaints more than two years and six months after they finished chemotherapy treatment.

- **Virginia:** Two years.  VA. CODE ANN. § 8.01-243(A); *see also id.* at § 8.01-230 ("the prescribed limitation period shall begin to run from the date the injury is sustained.").

  All Virginia Plaintiffs in Exhibit A-15 filed their Complaints more than two years and six months after they finished chemotherapy treatment.

Because all Alabama, Arizona, Idaho, Kentucky, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, New Mexico, Oklahoma, Tennessee, Texas, and Virginia Complaints listed in Exhibit A-1 through A-15 facially exceed the applicable limitations period, they should be dismissed for failure to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6); *see also Quality Cleaning Prod.*, 794 F.3d 206 at n.1 (claims should be dismissed when "the dates listed and the allegations contained in the complaint facially suggest that the limitations period ha[s] been exceeded."); *Jones*, 339 F.3d at 366 (claims should be dismissed

---

[12] Plaintiff Karen Deberry provides an illustrative example.  She alleges that her injury occurred "6 months after" she completed chemotherapy treatment in April 2004, yet she did not file her complaint until November 2016—more than 12 years after her alleged injury occurred.  *See* Deberry Compl. ¶¶ 10, 12.

where "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.")

  **b.** <u>**Knowledge of Injury**</u>**: The Court Should Dismiss All Complaints in These Seven States That Were Not Filed Within the Appropriate Time After Plaintiffs Knew of Their Injury**

  Under Florida, Indiana, Kansas, Nevada, New York, North Carolina, and South Carolina law, a plaintiff's cause of action accrues on the date the plaintiff knows of her injury.  Here, Plaintiffs claim that their injury—permanent hair loss—was plainly apparent.  *See* Compl. ¶¶ 214–20.  Further, by their own definition, Plaintiffs were on notice that their alleged hair loss was permanent when, six months after chemotherapy treatment, it did not fully grow back.  *See* Compl. ¶ 181.  Unlike latent diseases—such as mesothelioma or asbestosis, which can go undetected for many years—Plaintiffs here knew about their injury six months after finishing chemotherapy.  Thus, on that date, Plaintiffs' causes of action accrued and the statute of limitations clock started.  Plaintiffs had the following amount of time to file their lawsuits:

- **Florida:** Four years.  *See* FLA. STAT. ANN. § 95.11(3).

   By statute, the limitations period on products liability begins "running from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." *Id*. at § 95.031(2)(b); *see also Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991) *holding modified on other grounds by Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993) ("[p]laintiffs need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights.").

   All Florida Plaintiffs in Exhibit A-16 filed their Complaints more than four years and six months after they finished chemotherapy treatment and their injuries were apparent.

- **Indiana:** Two years.  *See* IND. CODE ANN. § 34-20-3-1.

   "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should

have known of the injury." *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). "For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Id*.

All Indiana Plaintiffs in Exhibit A-17 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries were apparent.

■ **Kansas:** Two years. *See* KAN. STAT. ANN. § 60-513 (a)(4).

The statute begins to run when at the time of the alleged injury or when the injury becomes reasonably ascertainable to the injured party. *See id*. at § 60-513(b).

All Kansas Plaintiffs in Exhibit A-18 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries were apparent.

■ **Nevada:** Two years. *See* NEV. REV. STAT. ANN. § 11.190(4).

In a tort action, the statute runs from the date "the aggrieved party knew, or reasonably should have known, of the facts giving rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev. 1997).

All Nevada Plaintiffs in Exhibit A-19 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries were apparent.

■ **New York:** Three years. *See* N.Y. C.P.L.R. 214.

The limitations period "shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." *See id*. at 214-c(2); *see also Vasilatos v. Dzamba*, 49 N.Y.S.3d 194, 197 (N.Y. App. Div. 2017) (discovery rule not applicable with patent injuries).

All New York Plaintiffs in Exhibit A-20 filed their Complaints more than three years and six months after they finished chemotherapy treatment and their injuries were apparent.

- **North Carolina:** Three years.  *See* N.C. GEN. STAT. ANN. § 1-52(5).

   The statute begins to run when "bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs."  *Id*. at § 1-52(16).

   All North Carolina Plaintiffs in Exhibit A-21 filed their Complaints more than three years and six months after they finished chemotherapy treatment and their injuries were apparent.

- **South Carolina:** Three years.  *See* S.C. CODE ANN. § 15-3-530.

   The statute begins running when the plaintiff "knew or by the exercise of reasonable diligence should have known that he had a cause of action."  *Id*. at § 15-3-535; *see also Tollison v. B & J Mach. Co.*, 812 F. Supp. 618, 620 (D.S.C. 1993); *Wiggins v. Edwards*, 442 S.E.2d 169, 170 (S.C. 1994) ("The important date under the discovery rule is the date that a plaintiff discovers the injury . . .").

   All South Carolina Plaintiffs in Exhibit A-22 filed their Complaints more than three years and six months after they finished chemotherapy treatment and their injuries were apparent.

Because all Florida, Indiana, Kansas, Nevada, New York, North Carolina, and South Carolina Complaints listed in Exhibit A-17 through A-22 facially exceed the applicable limitations period, they should be dismissed for failure to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).

### c.  <u>Notice of Potential Cause of Injury</u>: The Court Should Dismiss All Complaints in These 15 States That Were Not Filed Within the Appropriate Time After Plaintiffs Knew of the Potential Cause of Their Hair Loss

Under California, Colorado, Georgia, Iowa, Illinois, Louisiana, Maryland, New Jersey, Ohio, Oregon, Pennsylvania, Puerto Rico, West Virginia, Utah, and Wisconsin law, a plaintiff's cause of action accrues on the date that both the injury and its cause are known or should be known to the plaintiff.  Here, Plaintiffs knew—even before they suffered their alleged injury— that chemotherapy treatment could cause hair loss.  *See* Compl. ¶ 174.  Thus, when they lost their

hair during chemotherapy and their hair did not grow back six months after finishing their chemotherapy treatment, they should have known by the exercise of reasonable diligence that, at the very least, a potential cause was chemotherapy.

The MDL court's analysis in *In re Mirena IUD* is instructive.  There, the plaintiffs alleged that a birth control system that is inserted into the uterus had migrated outside the uterus and caused harm.  *In re Mirena IUD*, 29 F. Supp. 3d at 348.  The court concluded that the statute of limitations was triggered—at the latest—when the plaintiff knew of the migration.  *Id.* at 355. At that point, the plaintiff was on notice of the facts "which would have prompted a reasonably diligent individual to inquire into why the Mirena perforated the uterus." *Id.* at 357.

The court rejected the plaintiff's argument that the statute of limitations should not be triggered until she "saw a commercial that linked the injuries she suffered to Mirena" even though she initially attributed the migration to medical malpractice, not the device itself.  *Id.* There was simply "no mystery regarding the *possible connection* between Plaintiff's injuries and the Mirena."  *Id.* at 355 (emphasis added); *see also Weger v. Shell Oil Co.*, 966 F.2d 216, 219 (7th Cir. 1992) (disposing of toxic exposure claims where causal connection had been theorized, but not confirmed, noting that "[t]he limitations period will not await commencement until a plaintiff has assurance of the success of an action.").

Likewise, hair loss during chemotherapy is a well-known issue leaving no mystery regarding at least a potential connection between Plaintiffs' alleged injury and that chemotherapy treatment itself.[13]  Plaintiffs acknowledge as much in their Complaint.  *See, e.g.*, Compl. ¶ 174.[14]

---

[13] Indeed, numerous Plaintiffs have filed shortly after chemotherapy treatment and within the statute of limitations.  *See* Blumlo Compl. ¶ 60 (diagnosed Feb. 2016, filed suit Dec. 2016); Hartzog Compl. ¶ 86 (treatment ended March 2016, filed suit Oct. 2016); D. Hall Compl. ¶ 60 (treatment ended April 2016, filed suit Dec. 2016); Fulcher Compl. ¶ 86 (treatment ended Feb. 2016, filed suit Oct. 2016); Zenon Compl. ¶ 339 (treatment ended March 2016, filed suit Dec. 2016); B. Reed  Compl. ¶ 56 (treatment ended 2016, filed suit Dec. 2016); C. Turner Compl. ¶ 339 (treatment ended Feb. 2016, filed suit Dec. 2016).

They further allege that, for more than a decade, there has been public discussion about whether Taxotere® was potentially associated with permanent hair loss.  *See* Compl. ¶ 4 (describing "permanent hair loss" as a "well-documented side effect that for years has been publicized in numerous scientific studies, articles, and presentations").  To that end, Plaintiffs cite sources such as CBS News, Globe and Mail, various published studies, and a consumer group called the "Taxotears."  *See id*. ¶¶ 149-162.

This information—which appeared in common, public sources—coupled with the obvious fact that hair loss is associated with chemotherapy treatment, make it clear that a reasonably diligent individual, who first lost her hair during chemotherapy, would have inquired into why her hair had not fully grown back six months later.  *In re Mirena IUD*, 29 F. Supp. 3d at 357 ("Once Plaintiff learned that the Mirena had perforated her uterus . . . she had clearly suffered an injury from the device's perforation and migration, which would have prompted a reasonably diligent individual to inquire into why the Mirena perforated her uterus."); *see also Martin v. Dalkon Shield Claimants Trust*, No. 93-cv-2652, 1994 WL 649248, at *4 (E.D. Pa. Nov. 16, 1994), *aff'd*, 65 F.3d 162 (3d Cir. 1995) ("The due diligence requirement necessitates that a plaintiff question a doctor as to the cause of an injury.").[15]

---

[14] Defendants do not concede that Taxotere® caused or substantially contributed to Plaintiffs' alleged injury.  Rather, Defendants, *in arguendo*, treat such allegations of causation as true for purposes of this Motion only.  *See Iqbal*, 556 U.S. at 678.  These allegations taken on their face demonstrate that Plaintiffs' claims are untimely.

[15] Plaintiffs may argue that they were not on notice of their cause of action until the Taxotere® label was amended in 2015 to state that "cases of permanent hair loss have been reported," and that "[i]n some cases (frequency not known) permanent hair loss has been observed."  But that is the precise reasoning rejected by *In re Mirena IUD* and other cases.  *In re Mirena IUD*, 29 F. Supp. 3d at 357; *Weger*, 966 F.2d at 219.  Moreover, by Plaintiffs' own contention, the fact that "cases of permanent alopecia have been reported" following use of Taxotere® has been publicly available for more than a decade.  *See* Compl. ¶ 4; 149-162; 184-187; *see also Benak*, 435 F.3d at 401; *Plumlee*, 664 F. App'x at 653; *Carey*, 999 F. Supp. at 1117.

Therefore, even in states which require a plaintiff to have notice of the injury *and* its potential cause, Plaintiffs' respective causes of action accrued six months after finishing their chemotherapy.  Plaintiffs had the following amount of time to file their lawsuits:

- **California:** Two years.  *See* Cal. Civ. Proc. Code § 335.1.

   "[T]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on *inquiry* . . . . A plaintiff need not be aware of the specific 'facts' necessary to establish the claim."  *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923 (Cal. 1988).[16]

   All California Plaintiffs in Exhibit A-23 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Colorado:** Two years.  *See* Colo. Rev. Stat. Ann. § 13-80-106.

   By statute, "a cause of action for injury to person . . . shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  Colo. Rev. Stat. Ann. § 13-80-108.

   All Colorado Plaintiffs in Exhibit A-24 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Georgia:** Two years.  *See* Ga. Code Ann. § 9-3-33.

   Even in cases where the injury develops over an extended period of time—which is not the case here—"Georgia courts have consistently held that . . . a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof."  *Waters v. Rosenbloom*, 490 S.E.2d 73, 75 (Ga. 1997) (collecting cases); *see also Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988).

---

[16] To benefit from California's discovery rule a plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Plumlee*, 664 F. App'x at 653 (quoting *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007)).

All Georgia Plaintiffs in Exhibit A-25 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Iowa:** Two years. *See* IOWA CODE ANN. § 614.1(2).

  "The statute begins to run when the person gains knowledge sufficient to put him on inquiry" of "the allegedly wrongful act." *Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 351 (Iowa 1987) (internal quote marks omitted).

  All Iowa Plaintiffs in Exhibit A-26 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Illinois:** Two years. *See* 735 ILL. COMP. STAT. ANN. 5/13-202.

  "The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981).

  All Illinois Plaintiffs in Exhibit A-27 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Louisiana:** One year. *See* LA. CIV. CODE ANN. art. 3492;

  The statute runs, at the very latest, from the date plaintiff knew facts suggesting both injury and cause. *See Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 974.[17]

  All Louisiana[18] Plaintiffs in Exhibit A-28 filed their Complaints more than one year and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.[19]

---

[17] Compelling Louisiana authority suggests that the statute of prescription in fact begins running from the date of injury, or of the plaintiff's knowledge thereof. *See* LA. CIV. CODE ANN. art. 3492 ("This prescription commences to run from the day injury or damage is sustained."); *Asbestos*, 726 So. 2d at 975 ("Clearly, prescription begins to run when a plaintiff has actual knowledge of an injury."). Nevertheless, Defendants categorize Louisiana as a "notice of potential cause" state in an abundance of caution and because Plaintiffs undeniably had notice of their alleged injuries *and* a potential cause six months after they finished chemotherapy treatment.

[18] Louisiana plaintiff Linda Sibley provides another illustrative example of the kinds of cases filed in response to the formation of this MDL. She claims that she developed "disfiguring permanent alopecia"

- **Maryland:** Three years.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101.

  In a medical products liability action, a plaintiff is put "on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged tort."  *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1163 (Md. 1988) (internal alterations and quote marks omitted).

  All Maryland Plaintiffs in Exhibit A-29 filed their Complaints more than three years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **New Jersey:** Two years.  *See* N.J. STAT. ANN. § 2A:14-2(a).

  A cause does not accrue "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim."  *Lapka v. Porter Hayden Co.*, 745 A.2d 525, 526 (N.J. 2000).

  All New Jersey Plaintiffs in Exhibit A-30 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.[20]

- **Ohio:** Two years.  *See* OHIO REV. CODE ANN. § 2305.10.

  "[A] cause of action for bodily injury…caused by exposure to . . . ethical drugs . . . accrues upon the date on which the plaintiff is informed by competent medical

---

after being treated with Taxotere® from March 29 to July 5, 2005.  Sibley Compl. ¶¶ 10, 12.  By her own allegations, her injury was clinically defined and ascertainable no later than January 5, 2006.  *See* Compl. ¶ 181.  Yet she did not file suit until almost 11 years later, on December 9, 2016—two months after this MDL was formed.  It is simply untenable to suppose that over that decade Ms. Sibley either did not know that she had lost her hair or did not associate her hair loss with her chemotherapy treatment.

[19] *See In re Mirena IUD Prod. Liab. Litig.*, No. 13-cv-3383, 2015 WL 144214, at *3 (S.D.N.Y. Jan. 9, 2015) (dismissing claims of 12 plaintiffs under Louisiana law without discovery because, like here, the unique nature of the injuries alleged itself implicated the product, and noting that "[u]nder Louisiana law . . . it is Plaintiff's burden to demonstrate the timeliness of a facially time-barred claim.").

[20] *See Millian v. Organon USA Inc.*, No. A-4115-10T2, 2012 WL 3101306, at *5 (N.J. Super. Ct. App. Div. Aug. 1, 2012) (New Jersey discovery rule does not save claims that a reasonable person exercising ordinary diligence would have discovered before learning of pending litigation).

authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first." *Id*.

All Ohio Plaintiffs in Exhibit A-31 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Oregon:** Two years. *See* OR. REV. STAT. ANN. § 30.905.

  The limitation period begins to run when "plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of the defendant." *Id*.

  All North Carolina Plaintiffs in Exhibit A-32 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Pennsylvania:** Two years. *See* 42 PA. STAT. AND CONS. STAT. ANN. § 5524.

  Pennsylvania courts apply a discovery rule where "the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). Where reasonable minds would agree that on the date of injury, "a party knew or should have known on the exercise of reasonable diligence of his injury and its cause," then "the discovery rule does not apply as a matter of law." *See id*.

  All Pennsylvania Plaintiffs in Exhibit A-33 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Puerto Rico:** One year. *See* 31 L.P.R.A. § 5298.

  The limitations period on an action for such an injury begins to run "from the time the aggrieved person had knowledge thereof." *Id*. "In computing that period, knowledge

consists of notice of the injury, plus notice of the person who caused it." *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 856 (1st Cir. 2016) (internal quote marks omitted).[21]

All Puerto Rico Plaintiffs in Exhibit A-34 filed their Complaints more than one year and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Utah:** Two years. *See* UTAH CODE ANN. § 78B-6-706.

The statute runs from the date the party claiming injury "discovered, or in the exercise of due diligence should have discovered, both the harm and its cause." *Id.*

All Utah Plaintiffs in Exhibit A-35 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **West Virginia:** Two years. *See* W. VA. CODE ANN. § 55-2-12.

"In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury." *Goodwin v. Bayer Corp.*, 624 S.E.2d 562, 567 (W. Va. 2005).

All West Virginia Plaintiffs in Exhibit A-36 filed their Complaints more than two years and six months after they finished chemotherapy treatment and their injuries, and a potential cause, were apparent.

- **Wisconsin:** Three years. *See* WIS. STAT. ANN. § 893.54.

The statute of limitations begins to run when "the plaintiff discovers, or in the exercise of reasonable diligence, should have discovered his or her injury and that the injury may have been caused by the defendant's conduct." *Doe v. Archdiocese of Milwaukee*, 565 N.W.2d 94, 102 (Wis. 1997).

All Wisconsin Plaintiffs in Exhibit A-37 filed their Complaints more than three years and six months after they finished chemotherapy treatment and their injuries, and a

---

[21] As in California, a plaintiff invoking Puerto Rico's discovery rule must plead facts sufficient to demonstrate diligent efforts to gain knowledge of the facts underlying the cause of action during the limitations period. *See Quintana*, 336 F. Supp. 2d at 158.

potential cause, were apparent.

Because all California, Colorado, Georgia, Illinois, Iowa, Louisiana, Maryland, New Jersey, Ohio, Oregon, Pennsylvania, Puerto Rico, West Virginia, Utah, and Wisconsin Complaints listed in Exhibit A-24 through A-37 facially exceed the applicable limitations period, they should be dismissed for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

## CONCLUSION

The statute of limitations issue is easily resolved as an "early, efficient[], and just[]" way of weeding out the numerous non-meritorious cases that fill this MDL. *See In re Mentor Corp.*, 2016 WL 4705827, at *2. The date a statute of limitations is triggered is a question of law for the Court to decide. *See In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, MDL No. 1871, 2014 WL 2011239, at *2 (E.D. Pa. May 16, 2014) (dismissing 117 cases because a reasonable person would have been on notice that Avandia could have been a potential cause of their injury). No discovery is needed because all of the facts needed to answer this question are alleged in Plaintiffs' Complaints.

Plaintiffs lost their hair during chemotherapy, knew they had developed permanent hair loss six months later, and knew a potential source—their chemotherapy treatment. Indeed, no Plaintiff here alleges that she believed that something other than chemotherapy caused her hair loss. And no Plaintiff plausibly alleges that she was unaware of her hair loss only to discover it later. Discovery would therefore only reveal what is already alleged in the Complaints: six months after finishing chemotherapy, Plaintiffs allegedly developed permanent hair loss and they attributed it to their chemotherapy treatment, which allegedly included Taxotere®. Therefore—

under any state's law—Plaintiffs' cause of action accrued six months after finishing their chemotherapy treatment when their hair did not grow back.

Applying that straight-forward analysis, hundreds of cases in this MDL should be dismissed for failure to state a claim. All Plaintiffs in **Exhibit A** failed to file their Complaints within the amount of time allowed by the various states' statutes of limitations. Those Plaintiffs have failed to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). The Court should therefore dismiss these cases.

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

***Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*