UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOERE (DOCETAXEL)      MDL NO. 2740
      PRODUCTS LIABILITY
      LITIGATION                                  SECTION "N" (5)

**THIS DOCUMENT RELATES TO:**
**ALL CASES**

## MEMORANDUM IN OPPOSITION TO MOTION FOR DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### INTRODUCTION

Defendant sanofi-aventis U.S. LLC's (Sanofi's) motion is an unfounded and unseemly attempt to smear both breast cancer survivors now suffering from permanent alopecia because of Taxotere *and* the attorneys who zealously represent them. To hear Sanofi tell it, the number of suits against it, an e-mail describing a client-referral proposal, and about one minute of a podcast together suggest that something nefarious is afoot: women are suing Sanofi in droves because attorneys are driving this litigation, and the attorneys themselves are being controlled by undisclosed financers. Make no mistake, Sanofi is being sued by so many women because it injured so many women. And, consistent with binding rules of professional conduct, attorneys representing these victims on a contingency-fee basis are assuming the financial burden of prosecuting their clients' suits because that is the foundation of this country's contingency-fee practice, in which these attorneys bear the risk of advancing litigation expenses regardless of whether a recovery is made on their clients' suits.

There is no good reason—and Sanofi identifies none—to allow discovery into the financing of these women's suits. Attorneys are bound by ethics rules requiring that these women—and only these women—have the final say in the prosecution of their cases. Sanofi has

1

not even a scintilla of evidence that Plaintiffs' attorneys are giving up control of their clients' cases to anyone; *they are not*. And yet Sanofi strives mightily to hint this could be rampant, in hopes the Court will bite. Quite obviously, Sanofi wants financial disclosures from Plaintiffs for tactical reasons, specifically, so that it can know which women's suits are capitalized to go the distance. This information is not relevant to any claim or defense; Sanofi has no basis to suggest any plaintiffs' counsel is inadequate because he or she lacks the capital to investigate, prepare for trial, and try these cases; and, it would be unduly prejudicial to plaintiffs to reveal such information.

Since Sanofi's motion is based entirely on innuendo that is pure McCarthyism, the Court should in its discretion consider whether Sanofi should be sanctioned for filing it. Sanctions may be particularly suitable here because Sanofi's motion serially plagiarizes a Law360 op-ed authored by the former president of the International Association of Defense Counsel,[1] repeatedly quoting the article verbatim without so signifying—an inescapable irony given Sanofi's insistence on unnecessary and immaterial disclosure by the Plaintiffs' bar.

## FACTS

The primary source for Sanofi's "facts" concerning controlling litigation investors is the Law360 op-ed. Otherwise, Sanofi's motion is premised on four items, all of which Sanofi mischaracterizes.

The first is an e-mail from Persist Communications, a marketing company. Br. at 3. Persist Communications also licenses software designed to facilitate client communications. *See id.* Persist inadvertently sent to one of Sanofi's attorneys an e-mail in which Persist offers client leads, through its advertisement and intake services, in exchange for fixed payments. Br. at 3-4. The letter

---

[1] Law360 is an online legal news publication. A copy of this article is attached herewith as Ex. A. Passages that Sanofi plagiarized are highlighted.

does not mention any ongoing financial relationship with Persist Communications. *Id.* at 4. In fact, there is no indication that Persist Communications retains any financial stake in any case after a lead is generated and provided under private contract. *See id.* Nor does the letter suggest that any attorney who accepts such a lead would control the litigation or owe any duty whatsoever to Persist Communications. *See id.*

Second, Sanofi transcribes about one minute of a podcast episode in which two attorneys, Mr. Michael Papantonio and Mr. Benjamin Gordon, discuss how Taxotere has severely injured many of its users and the suits they are filing on behalf of their clients. Br. at 5-6. In the podcast, Mr. Papantonio praises the lawyers at Bachus and Schanker, and Mr. Gordon says he is working with lawyers at that firm. *Id.* at 5. The podcast excerpt mentions nothing concerning funding arrangements, much less any funding arrangements or future financial interest concerning Persist Communications or any outside control of the litigation. *See id*. at 5-6.

Third, Sanofi states that Mr. Papantonio has "prais[ed]" Persist Communications. Br. at 5. Similarly, Sanofi states that Mr. Marc Grossman appeared in a video testimonial that was published on Persist Communications' website. Br. at 6. According to Mr. Grossman, in that video he discusses his experience with client referrals provided by Gacovino, Lake & Associates, P.C. Also according to Mr. Grossman, the video, filmed in April 2012, predates both this litigation and Persist Communication's founding in 2016 and thus does not mention either.

Lastly, Sanofi states that Mr. Grossman, Mr. Papantonio, and Mr. Gordon and their firms, and the attorneys at Bachus and Schanker, have filed individual cases in this MDL, and that Mr. Bachus is a member of the PEC. Br. at 5-6. Sanofi, however, does not say that any of these attorneys have engaged in any impropriety. There is a suggestion in Sanofi's brief that Mr. Grossman and his firm, Baker Sanders, has filed fourteen cases in the MDL which are associated

3

with Persist Communications. *Id.* at 6 & n.25. The PEC is informed that none of the cases listed in footnote 25 of Sanofi's brief have any association with Persist Communications.

**ARGUMENT**

I. **Sanofi Has No Basis to Demand Financial Disclosures—and Certainly Not on its False Premise That Financiers Are Controlling This Litigation.**

Sanofi's brief begins with the premise that some unknown entity, separate from Plaintiffs and their counsel, is in control of the litigation. This premise is wholly unsubstantiated, false, and offensive. The hundreds of suits in the MDL are not a result of nefarious funding. Defendants' violations of product liability and other applicable laws injured many women, which is why many women have filed suit against them. These women are being zealously—and ethically—represented by counsel, including Court-appointed Plaintiffs' counsel, and Sanofi has no basis to suggest otherwise.

Sanofi points to no litigation financing arrangement, much less one that would violate ethics rules, yield non-client control, or run afoul of any attorney advertising laws. Plaintiffs alone control this litigation. In fact, attorneys are prohibited from allowing outside funding to cloud their judgment or to subsume their clients' interest. *Evans v. Jeff D.*, 475 U.S. 717, 728 n.14 (1986) ("a lawyer is under an ethical obligation to exercise independent professional judgment on behalf of his client; he must not allow his own interests, financial or otherwise, to influence his professional advice"). These clear ethical obligations extend to client leads; lawyers "shall not permit a person who . . . pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." American Bar Ass'n Model Rule of Prof'l Conduct 5.4(c). In addition, many state bar ethics opinions expressly permit outside litigation funding with express safeguards against funder influence. For example, some states require that the client be informed of such arrangements, while others prohibit referral fees or disclosure of

confidential information to a referral supplier without the client's informed consent.[2] Litigation financing, then, does not evince an unprotected client or unethical attorney, either generally or in the context of this MDL.

By accusing Plaintiffs' counsel of exchanging control of the litigation for money, Sanofi's narrative improperly suggests that Plaintiffs' counsel have violated clear ethical rules. Courts do not tolerate "unfounded accusations of impropriety" or "attribut[ing] bad motives or improper conduct to other counsel . . . unless such matters are legitimately at issue in the proceeding." *Pigford v. Veneman*, 215 F.R.D. 2, 5 (D.D.C. 2003) (quoting D.C. Bar Voluntary Standards for Civility in Professional Conduct); *see also Eagan v. CSX Transp., Inc.*, 271 F. Supp. 2d 993, 1000-01 (E.D. Mich. 2003) (attorneys "will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety" (quoting Civility Principles of the United States District Court for the Eastern District of Michigan, Administrative Order No. 96-AO-024, Attorneys' Responsibilities to Other Counsel)).

More disturbingly, Sanofi has filed a motion rank with unfounded accusations. The plagiarized op-ed, the referral offer e-mail from Persist Communications, unspecified attorney website testimonials, and a podcast together reveal absolutely nothing improper and are a thinly veiled attempt to harass Plaintiffs (and their counsel) and to distract this MDL from the common issues it has been formed to address. And certainly, these references provide nothing to support that any financer controls this litigation, which is Sanofi's purported reason for seeking disclosure.

---

[2] *See Report on the Ethical Implications of Third-Party Litigation Funding*, Ethics Committee of the Commercial and Federal Litigation Section of the New York State Bar Association 6-7 (April 16, 2013), *available at* https://www.benthamimf.com/docs/default-source/default-document-library/nys-bar---opinion-of-ethical-implications-04-16-13.pdf?sfvrsn=2.

The Persist Communications e-mail does not evince litigation financing with Persist; it is a generic offer to enter into a case lead generation relationship. *See* Br. at 4. It does not propose any arrangement under which Persist Communications would fund litigation, let alone "control" this MDL. There is simply no basis for Sanofi to suggest that there is a nefarious litigation funding relationship between any Plaintiffs' counsel and Persist Communications.

The podcast excerpt is a conversation among attorneys involved in the Taxotere litigation. Br. at 5-6. It evinces little more than that hundreds of women are understandably upset that Taxotere caused permanent alopecia, and that attorneys are filing cases against the drug manufacturers on their clients' behalves. Again, there is no reference to a litigation financing arrangement, nor any suggestion that anyone aside from Plaintiffs and their counsel control the litigation.

In short, Sanofi has not provided any reason to believe that there is any unethical, unlawful, or otherwise improper financing arrangement.

II. **Sanofi Is Not Entitled to Discovery Related to Litigation Financing Because It Is Neither Relevant to Any Claims or Defenses Under Rule 26(b) Nor a Proper Application of Rule 7.1.**

Sanofi's request for disclosure of all financial relationships behind Plaintiffs' contingency-fee representations should be seen for what it is—a request for discovery concerning how individual Plaintiff's suits are capitalized. This request must be denied because it is irrelevant and unduly prejudicial; none of Sanofi's evidence suggests that any Plaintiffs' counsel is inadequate, nor that this information would provide it with anything but an unfair tactical advantage.

Federal courts considering this issue perform relevance analyses under Federal Rule of Civil Procedure 26(b), just as they would in any discovery dispute. *See, e.g.*, *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 728 (N.D. Ill. 2014); *Doe v. Soc'y of Missionaries of Sacred*

*Heart*, No. 11–cv–02518, 2014 WL 1715376, at *2 (N.D. Ill. May 1, 2014); *United States v. Homeward Residential, Inc.*, No. 4:12-CV-4612016 WL 1031154, at *4-*5 (E.D. Tex. Mar. 15, 2016); *Rhew v. Norfolk S. Ry. Co.*, No. 2:12–CV–526, 2013 WL 5308803, at *3 (N.D. Ind. Sept. 18, 2013); *Kaplan v. S.A.C. Capital Advisors, L.P*, No. 12–CV–9350 (VM) (KNF), 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015); *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wa. Sept. 8, 2016). Even in this context, relevance is a "precondition to discovery" that "should be firmly applied." *Miller UK*, 17 F. Supp. 3d at 721 (citing *Herbert v. Lando*, 441 U.S. 153, 199 (1979)).

Courts have found the details of litigation funders relevant only in rare circumstances, none of which apply here. For instance, financing materials were relevant to a statute of limitations defense because they could "shed light" on when a plaintiff discovered his injury. *Doe*, 2014 WL 1715376, at *2. Whether a financing agreement transferred ownership of a patent at issue in a litigation could be relevant to the issue of plaintiff's standing to bring a claim. *See, e.g.*, *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, No.: 05–61225–CIV–MARRA/MATTHEWMAN, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013). Similarly, medical costs throughout a litigation were relevant when calculating damages. *See* Boston Scientific Corporation's Motion to Compel, *In re Boston Sci. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2326, ECF No. 729 at *2 (S.D. W.Va. Mar. 12, 2014) ("[T]he amount plaintiffs' surgeons and surgical centers were actually paid, and the amount plaintiffs' expenses were adjusted at each step of the 'funding' process, is directly relevant to these women's actual damages."). Sanofi nowhere argues that Plaintiffs' litigation financing is relevant to any claim or defense, and any such argument cannot be made for the first time in reply. *See, e.g.*, *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 179 (5th Cir. 2000) (deeming waived arguments "*not* raised in the parties' opening briefs" (emphasis in original)).

7

Not only is Sanofi's discovery request irrelevant to any claim or defense, but the information requested would be extremely prejudicial to Plaintiffs because learning of the financial resources behind each case would provide Sanofi with unfair tactical advantages. For example, if Sanofi learns that a small firm or solo practitioner are self-funding Plaintiff's litigation, that information would inform Sanofi's defensive strategy. It may also inform any settlement offers Sanofi makes. Without sensitive information about Plaintiff's counsel's financial wherewithal, Sanofi would certainly approach a Plaintiff's case differently. Or, put another way, without this sensitive information, Sanofi would approach a Plaintiff's case as any defendant would, because defendants simply are not entitled to financial disclosures from Plaintiffs' counsel in personal injury cases.

Rather than discuss relevance, Sanofi attempts to couch its request within Federal Rule of Civil Procedure 7.1. That rule requires a "nongovernmental *corporate* party" to disclose certain information so that judges may evaluate whether to disqualify themselves. *Id.* (emphasis added); Advisory Committee Notes (2002). Plaintiffs have complied with this rule, insofar as it applies to them.

Nor does the Northern District of California's Standing Order provide support for Sanofi's request. For one thing, the Standing Order's disclosure rule mandates additional disclosure concerning litigation funding only in "class, collective, or representative" actions—not in personal injury cases.[3] This disclosure requirement may reflect a concern in the class context that class counsel have the necessary "resources [to] . . . commit to representing" absent class members before appointment. Fed. R. Civ. P. 23(g)(1)(A)(iv). Putting aside whether a special disclosure rule

---

[3] The 2017 Standing Order, which Movant failed to attach as Exhibit B to its filing, is available at https://www.cand.uscourts.gov/filelibrary/373/Standing_Order_All_Judges_1.17.2017.pdf.

is necessary in the class context, the concern is not evident in individual suits, and there has been no suggestion by Sanofi that any Plaintiff's attorney is inadequate due to under-capitalization.

For another, as a district-wide Standing Order, it was approved by a majority of a court's district judges and subject to public notice and an opportunity for comment. *See* 28 U.S.C. § 2071(a)-(b); Fed. R. Civ. P. 83(a). Sanofi's request for a similar rule is inappropriately addressed to a single judge and does not provide any opportunity for public comment.

The two main cases on which Sanofi relies do not support its disclosure argument; instead, they reinforce that relevance is the first hurdle. In the first, *Gbarabe v. Chevron Corp.*, No. 14-cv-00173, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016), which was a class action, the court expressly noted that the non-movant "concede[d] the relevance of the funding agreement" to "the class certification adequacy determination," including whether counsel's resources would be sufficient under Rule 23. *Gbarabe*, 2016 WL 4154849, at *2. Further, a specific financing agreement existed, and plaintiff's only qualm about production was a confidentiality clause. *Id.*

The second, *Abu-Ghazaleh v. Chaul*, 36 So. 3d 691 (Fla. Dist. Ct. App. 2009), was rejected by a federal district court as inapplicable at the pleadings stage. *See Miller UK Ltd.*, 17 F. Supp. 3d at 722. The *Miller UK* court explained that *Abu-Ghazaleh* did not "have anything to do with pretrial discovery of a funding agreement" but rather "involved an appeal of the trial court's denial of the plaintiff's *post-trial* motion for attorney's fees and costs against [non-parties] who funded and controlled the plaintiffs' case." *Id.*

In sum, the information Sanofi seeks is not discoverable under Rule 26, nor should it be disclosed under Rule 7.1. Rather, it is both irrelevant to the claims and defenses in this litigation and highly prejudicial to Plaintiffs.

### III. The Court May Sanction Sanofi for Presenting a Frivolous Argument for an Improper Purpose.

Sanofi's irrelevant and improper discovery request suggests unethical and illegal acts without any basis. Sanofi is neither earnestly pursuing discovery concerning claims or defenses, nor even attempting to unearth unethical practices. As discussed, Sanofi's disclosure request instead improperly seeks information that would be unduly prejudicial to Plaintiffs, namely, information relating to *how much* money supports each Plaintiff's case. Sanofi's motive is improper and disingenuous, especially in light of its baseless, generalized, and plagiarized argument in support of the disclosures. It is also inappropriate to waste court resources and Plaintiffs' time simply to give an association of defense attorneys a platform to expound on its slanted views of plaintiffs-side litigation—and to do so without being candid with the Court.

Federal courts possess "inherent power . . . to manage their own affairs," *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962), which includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). The Court may wish to use Sanofi's motion to demonstrate that filing a baseless motion that suggests attorney misconduct via extensive plagiarism is not only abusive and intended to harass, but indecent and vexatious and thus merits imposing sanctions on Sanofi.

### CONCLUSION

For the foregoing reasons, the Court should deny Sanofi's proposed discovery order and consider imposing sanctions on it for bringing this motion.

Dated: May 30, 2017

Respectfully submitted:

*/s/ Christopher L. Coffin*
Christopher L. Coffin (LA Bar # 27902)
Pendley, Baudin & Coffin, L.L.P.
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: 504-355-0086
Facsimile: 504-523-0699
E-Mail: ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
E-Mail: kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
**Gainsburgh Benjamin David Meunier & Warshauer, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT

11