

Portfolio Media. Inc. | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

## The Missing Key To 3rd-Party Litigation Funding

Law360, New York (February 7, 2017, 12:48 PM EST) -- Civil litigation, once a realm confined to rules-based conflict resolution between adverse parties, has become profitable commerce in the United States. Where commerce thrives, investors looking for healthy returns follow. Unlike other forms of commerce and unlike other nations, litigation investment and funding in the U.S. is largely unregulated with few disclosure requirements. Where darkness exists, ignorance and mistrust breed. Disclosure and transparency in litigation investment and funding is the first and proper step to better understand this opaque dynamic in the U.S. civil justice system.

### Background on the TPLF Industry



Tripp Haston

[Sanofi Br. at 2] The litigation investment and funding industry's (also known as "third-party litigation funding" or TPLF) business model is relatively simple: advance money to advance litigation in exchange for a share and sometimes control of litigation outcomes. Among other marketing strategies, TPLF industry participants routinely sponsor litigation-generation mass tort seminars and plaintiffs counsel-only social and education events.

Born in Australia and the U.K., the TPLF industry has become firmly entrenched in the U.S. civil litigation system in a short period of time. Indeed, the CEO of a leading TPLF entity recently declared that the industry has become "ubiquitous" in "many quarters of the legal market"[1] and that its use by lawyers had "quadrupled since 2013."[2]

[Sanofi Br. at 2] Although the full sweep of their operations are poorly understood due to lack of disclosure, a lawsuit filed in late 2015 confirms the industry does not operate in small dollars. In Shenaq v. Akin a former officer of a Texas plaintiffs firm sued the firm over its failure to pay him $4 million for 14,000 pelvic mesh suits he allegedly acquired for the firm. In the suit, the former officer claimed that he helped secure $93 million from a then-leading TPLF participant, Gerchen Keller Capital (GKC), to fund the firm's television advertisements and direct purchase of mass-tort suits from other plaintiffs attorneys.[3] Per the suit, these efforts were expected to yield his former employer between $130 to $200 million in fees.[4] In December 2016, GKC was acquired by another TPLF participant, Burford Capital Ltd., for $160 million. At the time of acquisition, GKC reported roughly $1.3 billion in assets under management and roughly $300 million in new funds being raised.

[Sanofi Br. at 3] Unlike the TPLF industry, other interested participants in the U.S. civil justice system are routinely disclosed and subject to regulation. Attorneys and judges in a given litigation are subject to ethical and procedural rules and parties to a given litigation are similarly subject to disclosure and procedural rules.

[Sanofi Br. at 3] The TPLF industry's participation in U.S. civil litigation is almost entirely unregulated and is rarely the subject of disclosure to the court or other parties. Its opaque nature is at odds with the transparency that defines the U.S. civil justice system. Until disclosure of its role becomes the rule, rather than the exception, questions and doubts about its operations and impact will continue to propagate.

### A First Step Toward Disclosure

[Sanofi Br. at 7] Last month, the U.S. District Court for the Northern District of California became the first court in the nation to require routine disclosure of TPLF involvement in a broad class of cases. Specifically, under the new rule, parties will now be required to disclose "any person or entity that is funding the prosecution of any claim or counterclaim" in cases involving a proposed class action, collective or representative action. [5]

[Sanofi Br. at 8] The rule followed an August 2015 court-ordered disclosure of TPLF involvement in a class action against Chevron pending in the Northern District of California. The disclosure revealed the involvement of a U.K.-based TPLF entity's $1.7 million dollar investment in the class action. Subsequently, the Northern District's Civil Rules Committee proposed a much broader disclosure requirement for all matters involving a TPLF, but ultimately the current, more limited disclosure rule was adopted by the court.

While the court's disclosure could have been broader to sweep in all forms of TPLF activity as originally proposed, it is an initial step toward greater transparency and is likely to lead other courts around the nation to consider appropriate forms of TPLF disclosure. Moreover, the court's move mirrors other TPLF disclosure developments around the globe.

### Global TPLF Disclosure Trend

While the United States often considers our civil justice system to be an example for the world to follow, it lags behind numerous other legal systems with regard to TPLF oversight. In the past few years, several countries have adopted or recommended various forms of TPLF disclosure and regulation.

[Sanofi Br. at 8] In China, the Hong Kong Law Reform Commission recently recommended both disclosure as well as a "Code of Practice" for TPLF entities[6]. Similarly, on Dec. 30, 2016, the Singapore International Arbitration Centre released new investment arbitration rules that allow tribunals to order disclosure of the TPLF entities' identity and arrangements.[7]

[Sanofi Br. at 8] Australia requires disclosure of a TPLF's identity and portions of its agreement in class action cases.[8] In New Zealand, courts have recently ordered disclosure of TPLF identities as well as certain aspects of their funding agreements in both representative (class) cases as well as nonrepresentative cases.[9] Finally, several provinces in Canada routinely require TPLF arrangements be disclosed and judicially approved, particularly in class action cases, but in certain nonclass cases as well.[10]

### FRCP 7.1

[Sanofi Br. at 6-7] Requiring disclosure of a litigant's financial relationships in a case is not an original concept. Since 2002, the Federal Rules of Civil Procedure have required nongovernmental corporate entities to disclose "any parent corporation and any publicly held corporation owning 10 percent or more of its stock."[11] As explained in the rule's "Committee Notes" section, this disclosure provides judges the information they need to consider whether they have a conflict of interest in handling a case so as to comply with the financial interest standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges. The Committee Notes to the rule explain further that:

[Sanofi Br. at 7] > Rule 7.1 does not prohibit local rules that require disclosures in addition to those required by Rule 7.1. Developing experience with local disclosure practices ... may provide a foundation for adopting more detailed disclosure requirements by future amendments of Rule 7.1.

[Sanofi Br. at 7] Thus, local federal courts may advance broader disclosure requirements to keep pace with the reality of today's legal marketplace. Moreover, numerous state courts have similar disclosure requirements as well.

[Sanofi Br. at 12] As some TPLF entities are multibillion- and multimillion-dollar publicly traded entitels, requiring disclosure of their role will allow judges to determine whether they have a conflict of interest in administering a case. And for privately held TPLF entities, the web of personal relationships judges have could be impacted as well, leading to unintentional appearances of impropriety.

[Sanofi Br. at 7] Without disclosure, not only will courts be subject to unknown conflicts of interest, but the courts and all parties will be potentially unaware of the real parties in interest. Knowing "who" is really in court with a direct stake in a case's outcome is critical to facilitate control and resolution by the court. This disclosure rationale is particularly compelling in class action or mass tort cases where TPLF entities may stand to be the largest beneficiary of any recovery and far larger than any individual plaintiff or class member.

**Conclusion**

[Sanofi Br. at 12] We live in an increasingly transparent world; witness Wikileaks, Edward Snowden and the Ashley Madison membership reveal. Disclosure and transparency breed accountability. Our civil justice system regularly requires such transparency in all manner of discovery of the parties and in candor with the court by counsel. Requiring routine TPLF disclosure in the U.S. civil justice system will ensure courts are conflict-free and will better facilitate their management of control and resolution of litigation.

—By Tripp Haston, Bradley Arant Boult Cummings LLP

*Tripp Haston is a partner at Bradley Arant. He is co-chairman of the firm's life sciences industry team and represents a spectrum of clients on regional, national and international engagements. He is the former president of the International Association of Defense Counsel.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] The State of The Litigation Finance Industry in 2017, Christopher P. Bogart, Burford Capital LLC. Law 360 (Jan. 28, 2017).

[2] Id.

[3] See Shenaq v. Akin, No. 2015-57942 (Dist. Ct. Harris County, Tex., filed Sept. 29, 2015).

[4] Id.

[5] Standing Order for All Judges of the Northern District of California - Contents of Joint Case Management Statement (eff. Jan. 17, 2017).

[6] See http://www.hkreform.gov.hk/en/publications/rtpf.htm

[7] See http://www.siac.org.sg/images/stories/press_release/SIAC%20Announces%20Official%20Release%20of%20the%20SIAC%20Investment%20Arbitration%2

[9] See Federal Court of Australian, Practice Note CM 17, paragraph 3.6. http://www.fedcourt.gov.au/law-and-practice/practice-documents/practice-notes/cm17

[9] See http://www.lexology.com/library/detail.aspx?g=934ec8ba-2b77-42a9-9d39-4d7443bf4ed3

[10] See Bayens et al. v. Kinross Gold Corporation, 2013 ONSC 4974 (CanLII) (Ontario); Stanway v. Wyeth Canada Inc., 2013 BCSC 369 (CanLII) (British Columbia); Schneider v. Royal Crown Gold Reserve Inc, 2012 SKQB 111 (CanLII) (Saskatchewan); Hayes v. The City of Saint John et al, 2016 NBQB 125 (CanLII) (New Brunswick); MacQueen v. Sydney Steel Corp. (Nova Scotia 2012); Hobshawn v. Atco Gas & Pipelines Ltd. (Alberta 2009).

[11] Fed. R. Civ. Proc. 7.1(a)(1) (2007)

All Content © 2003-2017, Portfolio Media, Inc.