UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)      MDL No. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO THE FOLLOWING CASES:

*Bickley, et al. v. Sanofi S.A., et al.*, 2:17-cv-01073-KDE-MBN (E.D. La.)
*Vinson, et al. v. Sanofi S.A., et al.*, 2:17-cv-04030-KDE-MBN (E.D. La.)

**SANOFI-AVENTIS U.S. LLC'S OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION TO REMAND**

Sanofi-aventis U.S. LLC[1] submits this memorandum of law in opposition to Plaintiffs' Omnibus Motion to Remand.[2]

**INTRODUCTION**

The exact issues raised by Plaintiffs' Motion to Remand have been decided previously by the Eastern District of Missouri in *Addelson v. Sanofi*, No. 4:16-cv-01277, 2016 WL 6216124 (E.D. Mo. Oct. 25, 2016). In *Addelson*, a Missouri plaintiff and a New Jersey plaintiff filed suit against Sanofi S.A., Aventis Pharma S.A., Sanofi U.S. Services Inc., and sanofi-aventis U.S. LLC in the Circuit Court of the City of St. Louis, Missouri. *Id.* at *1. Defendants removed the case and filed a motion to dismiss for lack of personal jurisdiction and improper venue, a motion to sever, and a motion to stay pending transfer to multidistrict litigation. Plaintiffs filed a motion to remand nearly identical to the one filed in this MDL, arguing that the Eastern District of Missouri lacked subject-matter jurisdiction because there was a lack of complete diversity.

---

[1] Only sanofi-aventis U.S. LLC has been served in these matters. This pleading is solely on its behalf and not on behalf of the foreign entities.

[2] Sanofi-aventis U.S. LLC incorporates by reference as if fully set forth herein its previously filed Notices of Removal, Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and Motions to Sever. *See Bickley, et al. v. Sanofi S.A., et al.*, 2:17-cv-01073 (E.D. La. Aug. 10, 2016), ECF Nos. 1, 5-8; *Vinson, et al. v. Sanofi S.A., et al.*, 4:16-cv-02137 (E.D. Mo. Dec. 22, 2016), ECF Nos. 1, 5-8 (MDL docket unavailable at time of filing this Opposition).

In his Order, Judge Richard Webber first addressed the issue of personal jurisdiction before subject-matter jurisdiction because "[t]he personal jurisdiction question is straightforward, while the issue of subject matter jurisdiction is more complicated, due to the doctrine of fraudulent misjoinder." *Id.* at *2. Next, Judge Webber found that the non-Missouri plaintiff had not established general jurisdiction over Defendants because Defendants were incorporated in Delaware and had their principal places of business in New Jersey and because "there are no facts to establish continuous and systematic contacts with Missouri to make Defendants at home in Missouri." *Id.* at *3. Judge Webber further noted that plaintiffs' allegations—that Defendants distributed, marketed, promoted, and sold Taxotere® (hereafter "Taxotere") in St. Louis and Missouri—were "not enough to establish general jurisdiction as outlined in *Daimler* [*AG v. Bauman*, 134 S. Ct. 746 (2014)]." *Id.*

Judge Webber also found that specific jurisdiction was lacking. He first noted that "[t]he specific personal jurisdiction inquiry must be conducted separately from the claims of each individual plaintiff." *Id.* He next stated that the non-Missouri plaintiff failed to allege any facts connecting her claims to Defendants' Missouri contacts. *Id.* at *4. Citing *Keeley v. Pfizer Inc.*, No. 4:15-cv-00583, 2015 WL 3999488, at *3 (E.D. Mo. Jul. 1, 2015), Judge Webber held that "simply marketing, promoting, and selling a pharmaceutical drug in Missouri does not establish specific jurisdiction" and "plaintiff's injury must be connected to defendant's contacts **with the forum state.**" *Id.* (emphasis added). Because the non-Missouri plaintiff failed to allege any facts connecting the conduct of the Defendants in Missouri to any of her claims, Judge Webber ruled that the Eastern District of Missouri did not have specific jurisdiction over the non-Missouri plaintiff. *Id.*

Finally, because Judge Webber granted dismissal of the non-Missouri plaintiff's claims, there was complete diversity between the Missouri plaintiff and all Defendants. Thus, plaintiffs' motion to remand was denied. *Id.* at *5. The case was then stayed pending transfer to the MDL, "to conserve judicial resources and promote efficiency." *Id.*

The MDL Court should follow the *Addelson v. Sanofi* ruling and deny Plaintiffs' Omnibus Motion to Remand.[3]

## BACKGROUND

Plaintiffs' Petitions allege that each Plaintiff, following the completion of chemotherapy, suffered from permanent alopecia as a result of taking Taxotere. Bickley Petition at ¶¶ 28-79; Vinson Petition at ¶¶ 1-12. Although the Petitions provide nearly no Plaintiff-specific facts, the *Vinson* Petition does allege that the unrelated Plaintiffs received Taxotere for different periods of time and for different durations. Vinson Petition at ¶¶ 1-12. Aside from these sparse case-specific facts, Plaintiffs' Petitions are pled at a generic level, masking the true individuality of these claims.

Plaintiffs' Motion to Remand does not dispute that the amount-in-controversy requirement is satisfied, or that there is complete diversity among 60 of the 64 Plaintiffs and all Defendants.[4] Thus, the only questions presented by Plaintiffs' Motion are whether the Court

---

[3] Remand is additionally unwarranted because, as argued in Defendants' Motion to Dismiss Plaintiffs' Master Complaint (Doc. # 489), the above named Plaintiffs have failed to state claims under applicable federal and state law. Moreover, as argued in Defendants' Motion to Dismiss Claims Barred by the Applicable Statutes of Limitations (Doc. # 494), the claims of Plaintiffs in *Vinson, et al. v. Sanofi S.A., et al.* (2:17-cv-04030) are time-barred by the applicable statutes of limitations. Because of gross pleading deficiencies in *Bickley, et al. v. Sanofi S.A., et al.* (2:17-cv-01073), the timeliness of the claims purportedly presented therein cannot be determined at this time.

[4] For purposes of determining diversity jurisdiction, sanofi-aventis U.S. LLC is a Delaware limited liability company with its principal place of business in New Jersey. Sanofi U.S. Services Inc. is the sole member of sanofi-aventis U.S. LLC. Sanofi U.S. Services Inc. is a Delaware corporation with its principal place of business in New Jersey. Thus, for jurisdictional purposes, sanofi-aventis U.S. LLC is a citizen of Delaware and New Jersey. *See* 28 U.S.C. § 1332(c)(1). Sanofi S.A. is a French corporation, having its principal place of business in France and, thus,

should reach the issue of personal jurisdiction first and dismiss the claims of the non-Missouri Plaintiffs and whether Plaintiffs have engaged in fraudulent joinder giving rise to removal.

## ARGUMENT

**I.     This Court May Address Defendant's Personal Jurisdiction Arguments First**

This Court is empowered to determine personal jurisdiction first.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 584-87 (1999) (holding that "in cases removed from state court to federal court, . . . there is no unyielding jurisdictional hierarchy," and affirming the district court's decision to resolve the "straightforward" issue of personal jurisdiction before addressing subject matter jurisdiction).; *Addelson*, 2016 WL 6216124.[5]   In circumstances precisely like those presented here, the issue of personal jurisdiction is straightforward and easily resolved by a federal court.  *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012) ("[W]e see no error in the district court's decision to dispose of the personal jurisdiction issue first . . ."); *In re Bard IVC Filters Prods. Liab. Lit.,* No. 15-cv-2641, 2016 WL 6393596 (D. Ariz. Oct. 28, 2016); *Aclin v. PD-RX Pharms., Inc.*, No. 5:15-cv-00561, 2016 WL 3093246 (W.D. Okla. June 1, 2016); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 1:15-cv-13760, 2016 WL 2349105 (D. Mass. May

---

for jurisdictional purposes, is a citizen of France.  Aventis Pharma S.A. is a French corporation, having its principal place of business in France and, thus, for jurisdictional purposes, is a citizen of France.

[5] *See also Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) ("*Ruhrgas* held that there is no mandatory sequencing of jurisdictional issues."); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("[T]here is no unyielding jurisdictional hierarchy."); *Guillette v. PD-RX Pharm. Inc.*, No. 5:15-cv-00564, 2016 WL 3094073, at *2 (W.D. Okla. June 1, 2016) ("The personal jurisdiction question presents straightforward issues regarding the sufficiency of contacts and the consequences of registration to do business.  Conversely, subject-matter jurisdiction presents complex issues, including the doctrine of fraudulent misjoinder . . . ."); *Gilmor v. Preferred Credit Corp.*, No. 10-cv-0189, 2011 WL 111238, at *1 n. 1 (W.D. Mo. 2011) (stating that "it is permissible to address personal jurisdiction before addressing subject matter jurisdiction"); *Locke v. Ethicon*, C.A. 4:14-cv-02648, 2014 WL 5819824, at *2 (S.D. Tex. Nov. 10, 2014) (addressing the question of personal jurisdiction before subject matter jurisdiction because doing so "leads to a more efficient result without offending principles of federalism"); *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 899 (N.D. Iowa 2000) (addressing issue of personal jurisdiction before improper joinder question).

4, 2016); *Beard v. Smithkline Beecham Corp.*, No. 4:15-cv-1833, 2016 WL 1746113 (E.D. Mo. May 3, 2016)[6].

Here, because the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the Court should address personal jurisdiction first. The resolution of the subject-matter jurisdiction question involves an assessment of Defendant's contention that the non-Missouri Plaintiffs were procedurally (or fraudulently) misjoined. The application of the doctrine of procedural misjoinder involves more complicated and nuanced questions of law. Moreover, the joinder deficiency is based not on the merits of the underlying claim, but on the ability of the Court to exercise personal jurisdiction over Defendants. *See Addelson*, 2016 WL 6216124, at *2 (dismissing claims of out-of-state plaintiff for lack of personal jurisdiction before considering whether complete diversity existed because "[t]he personal jurisdiction question is straightforward, while the issue of subject matter jurisdiction is more complicated, due to the doctrine of fraudulent misjoinder."); *Aclin*, 2016 WL 3093246, at *2 (same because "the personal jurisdiction question presents straightforward issues regarding the sufficiency of contacts and the consequences of registration to do business" while "subject-matter jurisdiction presents complex issues, including the doctrine of fraudulent misjoinder"); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 2016 WL 2349105, at *2 (MDL court applying same analysis to multi-plaintiff City of St. Louis case removed to the Eastern District of Missouri and determining personal jurisdiction issue first).

---

[6] Nothing in *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613 (8th Cir. 2010) cited by Plaintiffs, suggests that this Court cannot or should not decide personal jurisdiction first. Judicial economy and efficiency weigh heavily in favor of the Court addressing personal jurisdiction now. Moreover, had the Eighth Circuit considered the issues in *Prempro* under the *Daimler* analysis, it likely would have found the personal jurisdiction issue to be simple and straightforward and would not have needed to consider whether the attempt to avoid federal court by joining many out-of-state plaintiffs with a few in-state plaintiffs was "egregious."

By contrast, the issue of personal jurisdiction is straightforward under recent decisions of both the United State Supreme Court and the Missouri Supreme Court. *See BNSF Ry. Co. v. Tyrrell*, No. 16-405, 2017 WL 2322834 (U.S. May 30, 2017). In *Tyrrell*, two plaintiffs sued the defendant for personal injuries under the Federal Employees Liability Act ("FELA") in Montana state court despite: (1) neither plaintiff being a Montana resident; (2) neither plaintiff being injured in Montana; and (3) the defendant being neither a Montana corporation nor headquartered in Montana. On May 30, 2017, the Supreme Court held 8-1 that there was no personal jurisdiction:

> [T]he business [defendant] does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims like [plaintiffs'] that are unrelated to any activity occurring in Montana.

*BNSF Ry. Co.*, 2017 WL 2322834, at *10; *see also Daimler*, 134 S. Ct. at 762 (specific jurisdiction focuses on whether the in-state activities of the corporate defendant "gave rise to the liabilities sued on."); *see also State ex rel. Norfolk Southern Railway Company v. Dolan*, No. SC 95514, 2017 WL 770977 (Mo. Feb. 28, 2017) (Missouri Supreme Court rejecting the argument that Missouri courts have specific jurisdiction over the claims of a non-resident who was allegedly injured by a non-Missouri defendant outside of Missouri).[7]

The non-Missouri Plaintiffs make no allegation of any real relationship between their claims and Defendants' Missouri contacts, in fact admitting that "at all relevant times" they resided *outside* of Missouri. Accordingly, all of the factual allegations necessary to establish

---

[7] *See also Matthews v. BNSF Railway Co.*, No. 16-cv-03211, 2017 WL 2266891 (W.D. Mo. May 23, 2017) (relying on *Dolan* and granting defendant's motion for reconsideration of motion to dismiss for lack of jurisdiction or for improper venue); *MacCormack v. Adel Wiggins Grp.*, No. 4:16-cv-414, 2017 WL 1426009, at *5 (E.D. Mo. Apr. 21, 2017) (same).

their claims are based on Defendants' conduct outside of Missouri. Defendant's conduct, therefore, clearly does not connect them to Missouri in a meaningful way to allow for this Court to exercise specific jurisdiction over them as to the non-Missouri Plaintiffs' claims. *See Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010) ("Specific jurisdiction [] requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action."*); see also Addelson*, 2016 WL 6216124, at *4 (finding the Eastern District of Missouri did not have specific jurisdiction over the non-Missouri plaintiff because "simply marketing, promoting, and selling a pharmaceutical drug in Missouri does not establish specific jurisdiction" and "plaintiff's injury must be connected to defendant's contacts with the forum state."); *Keeley*, 2015 WL 3999488, at *2-4 (holding that Missouri court lacked specific jurisdiction over drug manufacturer as to claims brought by Georgia plaintiff when there were "no facts suggesting [p]laintiff was prescribed the medication in Missouri, purchased the medication in Missouri, saw the advertisements in Missouri, or in any way was injured in Missouri"); *Neeley v. Wolters Kluwer Health, Inc.*, No. 4:11-cv-325, 2013 WL 3929059, at *4 (E.D. Mo. July 29, 2013) (holding that Missouri courts lacked specific jurisdiction over generic drug manufacturer for claims brought by Kentucky plaintiffs because such claims were "<u>entirely unrelated to</u>" manufacturer's "activities in Missouri" and that Kentucky plaintiffs' "cause of action 'arises out of' and 'relates to' activities in the State of Kentucky") (emphasis added); *see also Dolan*, 2017 WL 770977.

In addition, the personal jurisdiction inquiry must be addressed first to ensure due process. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore,* 134 S. Ct.

1115, 1123 (2014). A defendant's contacts with the forum must make being sued there foreseeable so that the defendant could reasonably anticipate the suit. *Clemens*, 615 F.3d at 378 ("The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state.") (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The forum contacts must also be significant enough so as not to "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

Defendants could not "reasonably anticipate" being sued in Missouri by Plaintiffs outside the state with whom they had no alleged contact in Missouri. As such, allowing the non-Missouri Plaintiffs to join this action is fundamentally unfair. *See, e.g.*, *Affordable Healthcare, LLC v. Protus IP Sols., Inc.*, No. 4:08-cv-502, 2009 WL 749536, *3 (E.D. Mo. Mar. 19, 2009) (finding that "there is no evidence that [the defendant] would reasonably anticipate being haled into court in Missouri to defend claims regarding its activities outside the State of Missouri. As a result, it would offend the notions of fair play and substantial justice to allow the out-of-state Plaintiffs to pursue their claims in Missouri courts").

## II. Following Dismissal of the non-Missouri Plaintiffs' Claims, There is Complete Diversity Over the Remaining Parties

Only 4 of the 64 Plaintiffs — who were at all relevant times citizens and residents of New Jersey — are not diverse from all Defendants. Upon the Court's dismissal of the 4 New Jersey Plaintiffs' claims (as well as the other non-Missouri Plaintiffs' claims who also at all relevant times were citizens and resided *outside of* Missouri) for lack of personal jurisdiction, complete diversity exists over the remaining parties. Therefore, the Court can retain jurisdiction and deny this Motion to Remand. *See In re Bard IVC Filters Prods. Liab. Lit.*, 2016 WL

6393596; *Addelson*, 2016 WL 6216124; *Aclin*, 2016 WL 3093246; *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 2016 WL 2349105.

### III.  Plaintiffs' Claims Are Improperly Misjoined, and Diversity Jurisdiction is Proper

The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Masonry Sols. Int'l, Inc. v. DWG & Assocs., Inc.*, No. 15-cv-2450, 2015 WL 6696790, at *2-3 (E.D. La. Nov. 2, 2015) (quoting *Smallwood v. Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). For the second method, the Fifth Circuit held that the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* Here, Plaintiffs cannot establish a cause of action against the non-diverse parties in state court, as evidenced by the following:

#### A.  There Is No "Real Connection" Among Plaintiffs

Federal Rule of Civil Procedure 20(a)(1) permits joinder only where multiple plaintiffs assert claims "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is sufficient commonality in questions of law or fact. FED. R. CIV. P. 20(a)(1)).[8]  Here, Plaintiffs cannot satisfy the same transaction or occurrence requirement for permissive joinder.

---

[8] The result is the same under Missouri procedure, which likewise requires that claims share common questions and arise out of the same transaction or occurrence. *See* MO. SUP. CT. R. 52.05; *see also In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, No. 11-cv-3045, 2012 WL 1118780, *3 (D.N.J. Apr. 3, 2012), *aff'd,* 751 F.3d 150 (3d Cir. 2014).) (observing that "Missouri's permissive joinder rule is substantively identical to Fed. R. Civ. P. 20(a)"); *see also Brown v. Walgreens Co.*, No. 1022-CC00765, slip op. at 4 (Mo. Cir. Ct. St. Louis Nov. 15, 2010) (attached as **Ex. A**) (granting motion to sever claims of multiple pharmaceutical product liability plaintiffs because "[e]ach Plaintiff has his or her own individual combination of facts and evidence surrounding his or her ingestion of different medications" and recognizing that "[t]he fact that all Plaintiffs ingested Reglan or its generic equivalent is not sufficient to meet the 'transaction or occurrence' requirement"); *Ballard v. Wyeth*, No. 042-07388A, slip op. at 4

9

For example, the court in *Boschert v. Pfizer, Inc.*, No. 4:08-cv-1714, 2009 WL 1383183 (E.D. Mo. May 14, 2009), held that the same transaction or occurrence requirement was not satisfied where four plaintiffs, only one of which was a resident of Missouri, sued Pfizer for alleged injuries resulting from the use of the smoking cessation drug Chantix. 2009 WL 3531802, at *1-2; *see also Alday v. Organon USA, Inc.*, 4:09-cv-1415, 2009 WL 3531802, at *1 (E.D. Mo. Oct. 27, 2009).[9] Other recent decisions have found improper joinder and denied motions to remand in multi-plaintiff pharmaceutical cases originally filed in Missouri state court. For instance, in *Fosamax*, the District of New Jersey explained that plaintiffs were egregiously misjoined due to the "divergent questions of law and fact" raised by plaintiffs' claims, including different injuries to different bones, variations in dosage of the medication, how long each plaintiff took the medication, and the purpose of the prescription for each plaintiff. *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, No. 11-cv-3045, 2012 WL 1118780, *4 (D.N.J. Apr. 3, 2012), *aff'd,* 751 F.3d 150 (3d Cir. 2014).

More recently, in *In re Propecia (Finasteride) Prod. Liab, Litig.*, MDL No. 2331, 2013 WL 3729570 (E.D.N.Y. May 17, 2013), which involved the personal injury claims of 54 plaintiffs from 24 states, the Eastern District of New York found misjoinder and denied plaintiffs' motion to remand because "the injuries [alleged would] greatly vary from plaintiff to plaintiff based on factors like age, physical state at the time of taking the drug, and dosage." *Id.* at *13; *see also Cumba v. Merck & Co.*, No. 08-cv-2328, 2009 WL 1351462, at *1 (D.N.J. May 12, 2009); *In re Seroquel Prod. Liab. Litig.*, No. 6:06-md-1769, 2007 U.S. Dist. LEXIS 17603, at

---

(Mo. Cir. Ct. St. Louis Aug. 24, 2005) (attached as **Ex. B**) (granting motion to sever in similar action, finding "[t]he fact that all Plaintiffs ingested HRT drugs is not sufficient to meet the 'transaction or occurrence' requirement").

[9] While *Alday* and *Boschert* pre-date *Prempro*, relied upon by Plaintiffs, their holdings are consistent with its reasoning; they interpreted "transaction or occurrence" in the same manner as the Eighth Circuit.

*115-22 (M.D. Fla. Mar. 7, 2007); *McNaughton v. Merck & Co.*, No. 04-cv-8297, 2004 WL 5180726, at *2-3 (S.D.N.Y. Dec. 17, 2004).[10]

Here, as in each of those cases, there is no "real connection" among these Plaintiffs under the permissive joinder rules. In their original pleadings, Plaintiffs attempted to draw direct parallels between their claims and those at issue in *Prempro* – a case involving hormone replacement therapy drugs. However, to equate the scientific art of oncology and the complex decisions regarding which combination of chemotherapy products to administer during the course of a cancer patient's oftentimes weeks-long chemotherapy with the routine decision to prescribe a stand-alone pill to treat the symptoms of menopause is a gross over simplification of an oncologist's role and the administration of chemotherapy. Because of cancer's genetic and environmental characteristics, individualized determinations are made in the treatment of each patient; even if patients are prescribed some of the same medications.[11] In this case, these individualized determinations are relevant to determining issues of specific causation and the adequacy of the warnings and cannot be shoehorned into the same "transaction."

Plaintiffs also ignore the fact that, over the course of the many years Taxotere has been available for cancer treatment, prescribing information has changed and developed. The labeling applicable to one Plaintiff may very well be different than the labeling at issue when another Plaintiff received her treatment. Plaintiffs attempt to glom their individual cases together with

---

[10] *See also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 294 F. Supp. 2d 667, 678 (E.D. Pa. 2003)*; In re Baycol Prod. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002); *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 146-48 (S.D.N.Y. 2001); *In re Diet Drugs*, No. 1203, 1999 WL 554584, *3 (E.D. Pa. July 16, 1999).

[11] For example, Plaintiffs Charlotte Bumgarner, Delores Howard, and Shaunna Kobilis are all included in the *Bickley* case. Ms. Bumgarner underwent six cycles of Taxotere after receiving Cyclophamide. She then took Tamoxifen for four years followed by Femera and is presently taking Femera. *See* relevant portions of Ms. Bumgarner's PFS attached as **Ex. C**. Ms. Howard underwent four cycles of the combination regimen Cyclophosphamide, Doxorubicin, and Taxotere (referred to as the TAC regimen). This regimen was followed by seven months of Tamoxifen. *See* relevant portions of Ms. Howard's PFS attached as **Ex. D**. Ms. Kobilis underwent six cycles of Taxotere, in combination with Carboplatin and Herceptin. This regimen was followed by an Arimidex and Tamofen regimen which she is presently taking. *See* relevant portions of Ms. Kobilis's PFS attached as **Ex. E**.

the thin paste of an allegedly insufficient warning, despite the fact that the warnings upon which each of their physicians may have relied might have been different.

Likewise, Plaintiffs attempt to redirect this Court's focus away from the individualized causation questions that will need to be evaluated in each Plaintiff's case.  The degree to which each Plaintiff experienced alleged hair loss is individualized to each woman, and cancer treatment and hair loss do not occur in a vacuum.  Women who take Taxotere to treat breast cancer face many of the alternative causes of alleged persistent alopecia that non-Taxotere users face including age, genetic predisposition, diet, stress, and exposure to many other medications known to cause hair loss such as remedies to treat arthritis, depression, heart problems, and high blood pressure as well as birth control medications.  *See Diseases and Conditions–Hair loss– Causes*, MAYO CLINIC (available at http://www.mayoclinic.org/diseases-conditions/hair-loss/basics/causes/con-20027666) (last accessed May 20, 2017).  Plaintiffs and cancer patients alike also come from a variety of cultural and ethnic backgrounds, some of which are more prone to hair loss.

Plaintiffs attempt to align their own highly individualized claims by arguing that all of Plaintiffs' claims, questions of law and fact, damages, and causation arise out of the ingestion of one medication and as such, Plaintiffs' claims arise out of the same "transaction."  In the context of chemotherapy and the diverse population to whom Taxotere is prescribed and with an understanding of the variability in the extent to which Plaintiffs each experienced their alleged hair loss, this interpretation of "transaction" goes too far.

Unlike the ingestion of a single pill, the fact that Plaintiffs consumed one medication in the course of an entire regimen of potent and lifesaving chemotherapy medicines cannot amount to the same "transaction."  If Plaintiffs' arguments were valid, all consumers across the country

could join together in a hodgepodge of legal theories and alleged damages on the simple premise that their claims all stem from ingesting the same medication regardless of context. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, No. 16-cv-466, 2017 WL 215687 (U.S. Jan. 19, 2017) (United States Supreme Court granting certiorari in case where 661 plaintiffs were joined in a single, California state court action, claiming they had been injured by ingesting a pharmaceutical drug, when only 86 of the plaintiffs lived in California and the remaining 575 neither lived in California nor sustained any injury there.).

### B. Plaintiffs' Misjoinder of Claims is Improper

Courts have long recognized that fraudulent joinder may be premised on a lack of personal jurisdiction.[12] For example, in *Villar v. Crowley Mar. Corp.*, 780 F. Supp. 1467 (S.D. Tex. 1992), the defendants asserted fraudulent joinder based not "on the substantive merits of the plaintiff's claim," but rather on the fact that Plaintiffs cannot prevail in state court because they cannot establish personal jurisdiction." 780 F. Supp. at 1473. The court noted that the effect of predicating fraudulent joinder on lack of personal jurisdiction was burden-shifting: while it is normally the plaintiff who is "required to make a *prima facie* showing that personal jurisdiction exists," a fraudulent joinder theory would require the defendant to "prove that there is no possibility that the Plaintiffs can establish personal jurisdiction." *Id.* The *Villar* court then stated, as an alternative ground for upholding removal, that the non-diverse codefendants were fraudulently joined because there was "no possibility that Plaintiffs could establish personal jurisdiction over the Codefendants." *Id.* at 1481 n.21.[13] The Fifth Circuit affirmed, stating that

---

[12] *See, e.g.*, *Villar v. Crowley Mar. Corp.*, 780 F. Supp. 1467 (S.D. Tex. 1992), *aff'd,* 990 F.2d 1489 (5th Cir. 1993); *Thomas v. Mitsubishi Motor N. Am., Inc.*, 436 F. Supp. 2d 1250 (M.D. Ala. 2006); *Martino v. Viacao Aerea Riograndense, S.A.*, No. 90-cv-1883, 1991 WL 13886 (E.D. La. Jan. 25, 1991) (unpublished); *Nolan v. Boeing Co.*, 736 F. Supp. 120 (E.D. La. 1990).

[13] The primary basis for the district court's denial of remand in *Villar* was its finding, affirmed by the Fifth Circuit, that issues of personal jurisdiction could be decided before subject matter jurisdiction where they would dispose of

jurisdiction could be predicated on the district court's finding "that there was no possibility that the Villars could prove that the court had personal jurisdiction over the foreign defendants." *Villar v. Crowley Mar. Corp.*, 990 F.2d 1494-95 (5th Cir. 1993). As evidenced in Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Missouri Courts do not have personal jurisdiction over Defendants as to the non-Missouri Plaintiffs' claims. Therefore, their joinder is fraudulent.

Moreover, Plaintiffs' fraudulent joinder reflects an egregious attempt on the part of the Plaintiffs to frustrate removal. As described above, the striking factual differences between these Plaintiffs reveal their claims do not arise out of the same transaction or occurrence as required by the federal rules. Here, it is abundantly clear that Plaintiffs joined their claims solely to avoid diversity jurisdiction. Unlike the very few Missouri Plaintiffs, the remaining Plaintiffs do not allege they took Taxotere in Missouri or that they were injured by some action that took place in Missouri. They do not allege that they shared treating physicians with the Missouri Plaintiffs, that they were even prescribed the same chemotherapy regimen, or that their respective physicians relied on the same information when prescribing Taxotere. Nor do the non-Missouri Plaintiffs allege any other fact that would explain why they belong in a lawsuit filed in Missouri by Missouri residents allegedly injured in Missouri. On the face of the Petition, the non-Missouri Plaintiffs' inclusion in this matter might seem puzzling.

But the presence of the non-Missouri Plaintiffs, <u>and specifically the 4 New Jersey Plaintiffs</u>, does serve one obvious, albeit inappropriate purpose: it allows their counsel to try to avoid the jurisdiction of the MDL. Notably, Plaintiffs' counsel representing *Bickley* and *Vinson*,

---

questions of subject matter jurisdiction. *See Villar v. Crowley Mar. Corp.*, 990 F.2d 1489, 1494-95 (5th Cir. 1993). Though the Fifth Circuit's decision in *Villar* was abrogated by *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998), which held that "district courts should decide issues of subject-matter jurisdiction first," *id.* at 214, that decision was reversed by the Supreme Court in *Ruhrgas*, 526 U.S. 575, discussed above.

14

collectively, has filed at least 400 other similar complaints in federal court against the same Defendants.  In each of those single-plaintiff cases, the case was filed in the jurisdiction in which the plaintiff resides and where she claims she was injured.  Not surprisingly, it is only in these cases,[14] originally filed by Plaintiffs' Counsel in Missouri state court, where these unrelated non-Missouri Plaintiffs appear with Missouri Plaintiffs.  And of the more than 1,220 plaintiffs that have filed Taxotere cases, there are only eight plaintiffs from New Jersey.  Remarkably, six of those New Jersey plaintiffs just happened to file their lawsuit not in the state they were allegedly injured (New Jersey), but in Missouri state court – a jurisdiction to which they have no connection.[15]  *See also Addelson, et al. v. Sanofi S.A., et al.*, No. 4:16-cv-01277 (E.D. Mo. Aug. 4, 2016), ECF No. 1 (involving Missouri plaintiff improperly joined with New Jersey plaintiff); *Bickley, et al. v. Sanofi S.A., et al.*, No. 4:16-cv-01307 (E.D. Mo. Aug. 10, 2016), ECF No. 1 (involving three Missouri and forty-seven other plaintiffs improperly joined with two New Jersey plaintiffs); *Vinson, et al. v. Sanofi S.A., et al.*, No. 4:16-cv-02127 (E.D. Mo. Dec. 22, 2016), ECF No. 1 (involving four Missouri and six other plaintiffs improperly joined with two New Jersey plaintiffs); *Whitted, et al. v. Sanofi S.A., et al.*, No. 4:17-cv-00769 (E.D. Mo. Feb. 21, 2017), ECF No. 1 (involving nine Missouri and sixteen other plaintiffs improperly joined with 1 New Jersey plaintiff).

Moreover, there are several attorneys in both *Bickley* and *Vinson* that hold leadership positions in this MDL.  For example, Christopher Coffin and J. Kyle Bachus are attorneys in

---

[14] The same attorneys who filed *Bickley*, Pendley, Baudin & Coffin, L.L.P. and Bachus & Schanker, also filed *Whitted*, a multi-plaintiff case, in the City of St. Louis.  *Whitted, et al. v. Sanofi S.A., et al.*, No. 4:17-cv-00769 (E.D. Mo. Feb. 21, 2017), ECF No. 1.  *Whitted* includes twenty-six plaintiffs, including one from New Jersey.  Nearly identical briefing was filed in *Addelson*, *Bickley*, *Vinson*, and *Whitted*.  On May 25, 2015, the JPML determined the transfer of *Whitted*.  *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL No. 2740 (J.P.M.L. Apr. 13, 2017), ECF No. 358.  On May 31, 2017, *Whitted* was ordered transferred to this MDL.  *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL No. 2740 (J.P.M.L. May 31, 2017), ECF No. 363.  Because the same issues in *Bickley* and *Vinson* apply to *Whitted*, the Court's ruling on Plaintiffs' Motion to Remand should apply to *Whitted*.

[15] The other two New Jersey plaintiffs filed suit in Delaware.

both *Bickley* and *Vinson*, and David Miceli is an attorney in *Bickley*. Yet, all three of them serve on the Plaintiffs' Executive Committee in the MDL. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. Dec. 28, 2016), ECF No. 154. These facts make clear that the joinder of the New Jersey Plaintiffs in these lawsuits is for no other reason than jurisdictional gamesmanship meant to create tactical leverage at the expense of a streamlined MDL.[16]

## CONCLUSION

For all of the reasons stated above, this Court should deny Plaintiffs' omnibus motion to remand.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

***Counsel for sanofi-aventis U.S. LLC***

---

[16] Severance of non-diverse claims and denial of remand is the proper remedy for misjoinder. *See Boschert*, 2009 WL 1383183, at *3; *In re Seroquel*, 2007 U.S. Dist. LEXIS 17603, at *115–22.

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ <i>Douglas J. Moore</i>