# EXHIBIT C

1  Amir M. Nassihi (SBN: 235936)
   anassihi@shb.com
2  SHOOK, HARDY & BACON L.L.P.
   One Montgomery, Suite 2700
3  San Francisco, California 94104-4505
   Telephone: 415-544-1900
4  Facsimile: 415-391-0281

5  *Attorneys for*
   *Specially Appearing Defendant* sanofi S.A.

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  VERA SMITH,                        Case No.: 2:17-cv-00870-R-RAO

12       Plaintiff,                    **SANOFI S.A.'S NOTICE OF**
                                        **MOTION AND MOTION TO**
13       v.                            **DISMISS FOR INSUFFICIENT**
                                        **SERVICE OF PROCESS AND LACK**
14  SANOFI S.A.; AVENTIS PHARMA        **OF PERSONAL JURISDICTION**
    S.A.; SANOFI-AVENTIS U.S. LLC;
15  MCKESSON CORPORATION; and          Judge: Hon. Manuel L. Real
    DOES 1-100,                        Date:  April 17, 2017
16                                      Time:  10:00 a.m.
         Defendants.                    Courtroom: 880
17

18

19

20  **TO ALL PARTIES AND ATTORNEYS OF RECORD HEREIN:**

21       **NOTICE IS HEREBY GIVEN THAT** on April 17, 2017, at 10:00 a.m. before

22  the Honorable Manuel L. Real, in Courtroom 880 of the United States District Court

23  for the Central District of California, located at 255 East Temple Street, Los Angeles,

24  California 90012, specially appearing defendant SANOFI S.A. will and hereby moves

25  the Court for an Order dismissing Plaintiff's complaint.

26       This motion is made pursuant to Rule 12(b)(2) and Rule 12(b)(5) of the Federal

27  Rules of Civil Procedure and is based on the following grounds:

28  ───────────────────────────────────────────────────
    DEF.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND
                        LACK OF PERSONAL JURISDICTION
                        Case No.: 2:17-cv-00870-R-RAO

    388151 v1

(1) Plaintiff's attempted service on sanofi S.A. was improper; and

(2) The Court lacks personal jurisdiction over sanofi S.A.

This motion is made following meet and confer discussions that took place pursuant to Local Rule 7-3, as set forth in the Declaration of Amir M. Nassihi, filed concurrently with this motion.

This Motion is based on the Notice of Motion, the accompanying Brief in Support, Declaration of Amir M. Nassihi and exhibits thereto, the pleadings on file, and such argument as the Court may allow.

Dated: March 10, 2017

SHOOK, HARDY & BACON L.L.P.

By: ___/s/ Amir M. Nassihi_____
     Amir M. Nassihi

Attorney for
*Specially Appearing
Defendant* sanofi S.A.

DEF.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND
LACK OF PERSONAL JURISDICTION
Case No.: 2:17-cv-00870-R-RAO

388151 v1

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ................................................................. 5

*S.J. v. Issaquah School Dist. No. 411*,
   470 F.3d 1288 (9th Cir. 2006) ................................................................. 6

*Sec. Exch. Comm'n v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ................................................................. 5

*Sefton v. Jew*,
   201 F. Supp. 2d 730 (W.D. Tex. 2001) ................................................. 17

*Sonora Diamond Corp. v. Super. Ct.*,
   83 Cal. App. 4th 523 (2000) ................................................................. 15

*Tejada v. Sugar Foods Corp.*,
   No. CV 10-05186 MMM, 2010 WL 4256242 (C.D. Cal. Oct. 18, 2010)
   (Morrow, J.) ........................................................................................... 6

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ................................................................. 7

*White v. Comm'r of Soc. Sec.*,
   2014 WL 1027523 (E.D. Cal. Mar. 17, 2014) ........................................ 4

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007) ................................................................. 6

STATUTES

CAL. CODE. CIV. PROC. § 413.10(c) .......................................................... 10

CAL. CODE. CIV. PROC. § 416.10(b) ....................................................... 8, 9

California Code of Civil Procedure section 415.40 ................................... 8

California Code of Civil Procedure section 416.10 ................................... 8

California Corporations Code section 2110 .............................................. 8

SANOFI'S BRIEF ISO MOT. TO DISMISS FOR INSUFFICIENT SERVICE AND LACK OF PERSONAL JURISDICTION
CASE NO.: 2:17-CV-00870-R-RAO

1  Amir Nassihi (SBN: 235936)
   anassihi@shb.com
2  SHOOK, HARDY & BACON L.L.P.
   One Montgomery, Suite 2700
3  San Francisco, California 94104
   Telephone: (415) 544-1900
4  Facsimile: (415) 391-0281

5  *Attorneys for*
   *Specially Appearing Defendant* sanofi S.A.
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 VERA SMITH,                          Case No.: 2:17-cv-00870-R-RAO

12         Plaintiff,                    Judge: Hon. Manuel L. Real
                                         Courtroom: 880
13         v.
                                         **DECLARATION OF AMIR ASSIHI**
14 SANOFI S.A.; AVENTIS PHARMA           **IN SUPPORT OF MOTION TO**
   S.A.; SANOFI-AVENTIS U.S. LLC;        **DISMISS BY SPECIALLY**
15 MCKESSON CORPORATION; and             **APPEARING DEFENDANT SANOFI**
   DOES 1-100,                           **S.A. FOR INSUFFICIENT SERVICE**
16                                       **OF PROCESS AND LACK OF**
           Defendants.                   **PERSONAL JURISDICTION**
17

18

19

20         I, Amir M. Nassihi, hereby declare:

21         1.    I am an attorney licensed to practice before all Courts of the State of

22 California and am an attorney with Shook, Hardy & Bacon LLP, counsel of record for

23 Defendant sanofi S.A.

24         2.    Attached as Exhibit A is a true and correct copy of the Summons and

25 Complaint, filed December 21, 2016, before the Superior Court of State of California,

26 Los Angeles, for this case.

27         3.    Attached hereto as Exhibit B is a true and correct copy of a paycheck

28 stub for David P. Meeker from Genzyme Corporation, dated January 20, 2017.

---

DECLARATION OF AMIR NASSIHI IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:17-CV-00870-R-RAO

388150 V1

4.      Attached hereto as Exhibit C is a true and correct copy of a paycheck stub for Muzammil Mansoor Mansuri from Sanofi U.S. Services, Inc., dated January 20, 2017.

5.      In January 2017, counsel for Sanofi (incorrectly sued as sanofi S.A.) met and conferred with plaintiff's counsel regarding the improper service of sanofi S.A. via telephone and email correspondence.  Counsel for sanofi S.A. explained, among other things, that plaintiff had attempted to serve employees who were not officers or directors of sanofi S.A. and that the attempted service was not in compliance with the Hague Service Convention.

6.      On March 2, 2017, counsel for sanofi S.A. again reached out to meet and confer regarding sanofi S.A.'s motion to dismiss.  The parties originally agreed to extend sanofi S.A.'s deadline to dismiss.  But on March 10, 2017, the Court denied the parties' stipulation to extend sanofi S.A.'s deadline to respond.  That same day, Counsel for sanofi S.A. contacted plaintiff's counsel regarding the motion to dismiss, but the parties were not able to resolve the issues raised in sanofi S.A.'s motion.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct, and this Declaration is executed on March 10, 2017, in San Francisco, CA.


                                        _____*/s/ Amir M. Nassihi*_____
                                        Amir M. Nassihi

DECLARATION OF AMIR NASSIHI IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:17-CV-00870-R-RAO

388150 V1

Case 2:17-cv-00870-R-RAO Document 41-3 Filed 03/10/17 Page 1 of 65 Page ID #:1273

# Exhibit A

*[handwritten notes, illegible]*

Exhibit A
00003



ANNE ANDREWS
JOHN C. THORNTON
SEAN T. HIGGINS
LILA RAZMARA
LAUREN R. DAVIS
TIN BRIAN NGUYEN

2 CORPORATE PARK, SUITE 110
IRVINE, CALIFORNIA 92606
T 949.748.1000
F 949.315.3540
INFO@ANDREWSTHORNTON.COM
ANDREWSTHORNTONBLOG.COM
ANDREWSTHORNTON.COM

January 4, 2017

## VIA PERSONAL SERVICE

Muzammil Mansuri, Ph.D.
Executive Vice President, Sanofi S.A.
① 270 Albany Street
Cambridge, MA 02139

David Meeker, M.D.
Executive Vice President, Sanofi S.A.
270 Albany Street
Cambridge, MA 02139

Muzammil Mansuri, Ph.D.
Executive Vice President, Sanofi S.A.
② 500 Kendall Street
Cambridge, MA 02142

David Meeker, M.D.
Executive Vice President, Sanofi S.A.
500 Kendall Street
Cambridge, MA 02142

Re: _Smith v. Sanofi S.A., et al._
Los Angeles Superior Court No. MC026778

We represent Plaintiff referenced in the attached summons and complaint. We are writing to you as an Executive Vice President for Sanofi S.A.

We hereby are serving the attached summons, complaint and related documentation on Sanofi S.A. pursuant to California Code of Civil Procedure section 416.10(b) which authorizes service on a corporation through a vice president. This service is implemented in conformity with California Code of Civil Procedure section 415.40 which permits service outside of California. We request that you, as an officer of the corporation, apprise Sanofi S.A. of the service.

We hereby are serving the attached summons, complaint and related documentation on Aventis Pharma S.A. Through Sanofi S.A.'s whole and undivided ownership and voting interests in Aventis Pharma S.A., Sanofi S.A. and its officers act as general managers of Aventis Pharma S.A. We request that you, as an officer of the Sanofi S.A., apprise your subsidiary Aventis Pharma S.A. of the service.

Please note that under California Code of Civil Procedure section 413.10, this service is not subject to the Hague Service Convention.

Should you or Sanofi S.A. have any questions about the manner of service of process please do not hesitate to contact me.

Very truly yours,

Sean Thomas Higgins, Esq.

## ANDREWS THORNTON HIGGINS RAZMARA LLP

Exhibit A
00004



# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** SANOFI S.A., AVENTIS PHARMA S.A.,
*(AVISO AL DEMANDADO):* SANOFI-AVENTIS U.S. LLC, MCKESSON
CORPORATION, and DOES 1-100,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 21 2016

Sherri R. Carter, Executive Officer/Clerk
By: Cheri Grant, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:** VERA SMITH
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>(El nombre y dirección de la corte es:)<br>Superior Court of California, Los Angeles County<br>42011 4th Street West<br>Lancaster, CA 93534<br>Michael Antonovich Antelope Valley Courthouse | CASE NUMBER:<br>(Número del Caso):<br>MC026778 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Anne Andrews, Esq., SBN: 103280          (949) 748-1000   (949) 315-3540
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, California 92606

DATE: DEC 21 2016          Clerk, by _____, Deputy
(Fecha)                    (Secretario)                    (Adjunto)

Sherri R. Carter, Executive Officer/Clerk          CHERI GRANT

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): SANOFI S.A.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal
Solutions
& Plus

Code of Civil Procedure §§ 412.20, 465

Exhibit A
00005

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 21 2016

Sherri R. Carter, Executive Officer/Clerk.
By: Cheri Grant, Deputy

1 Anne Andrews (SBN 103280)
Sean Thomas Higgins (SBN 266888)
2 **ANDREWS THORNTON HIGGINS RAZMARA, LLP**
2 Corporate Park, Suite 110
3 Irvine, California 92606
4 Telephone: (800) 664-1734
aa@andrewsthornton.com
5 shiggins@andrewsthornton.com

6 Jeffrey Bogert (SBN 132778)
7 **LAW OFFICES OF JEFFREY BOGERT**
2121 Rosecrans Ave, Suite 3375
8 El Segundo, California 90245
Telephone: (310) 322-9050
9 bogertlaw@outlook.com

10 Gabriel A. Assaad (*pro hac vice to be submitted*)
11 **KENNEDY HODGES, LLP**
4409 Montrose Blvd., Suite 200
12 Houston, Texas 77006
Telephone: (713) 523-0001
13 gassaad@kennedyhodges.com

14
*Attorneys for Plaintiff*
15

16 SUPERIOR COURT OF THE STATE OF CALIFORNIA

17 FOR THE COUNTY OF LOS ANGELES

18 VERA SMITH,                          Case No. MC026778
19                  Plaintiff,          COMPLAINT AND DEMAND FOR JURY
20       v.                             TRIAL
21 SANOFI S.A., AVENTIS PHARMA S.A.,    1.  Negligence
22 SANOFI-AVENTIS U.S. LLC, MCKESSON    2.  Strict Liability – Failure to Warn
CORPORATION, and DOES 1-100,           3.  Fraudulent Misrepresentation
23                                      4.  Fraudulent Concealment
                 Defendants.           5.  Strict Liability – Misrepresentation
24                                      6.  Fraud and Deceit
25                                      7.  Intentional Infliction of Emotional
                                            Distress
26
27
28

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00006

1    Plaintiff Vera Smith, by and through her attorneys, respectfully submits the following

2    Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-

3    Aventis U.S. LLC (collectively "Sanofi" or "Sanofi Defendants"); McKesson Corporation, and

4    DOES 1-100 alleges the following upon personal knowledge, information and belief, and

5    investigation of counsel.

6

7                              **NATURE OF THE CASE**

8        1.      Plaintiff is a breast cancer survivor who was prescribed and administered

9    Taxotere®, a chemotherapy drug developed, manufactured, and distributed by Defendants.

10   Although lower potency alternatives have been available for years, Defendants misleadingly

11   promoted Taxotere as having superior efficacy based on self-sponsored clinical trials, even

12   though the FDA called these claims "unsubstantiated."  In fact, Taxotere's increased potency

13   only makes it more toxic than alternatives and causes more severe side effects, including a

14   significantly increased risk of disfiguring *permanent* hair loss.  Although temporary hair loss is a

15   common side effect related to chemotherapy, Taxotere's risk of permanent hair loss is not.

16   Defendants concealed this information from physicians, healthcare providers, and patients,

17   causing Plaintiff and thousands of women to suffer permanent hair loss without any additional

18

19   benefit or warning.

20       2.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiff

21   suffered serious and permanent physical and emotional injuries, including permanent hair loss,

22   and seeks damages relating to Defendants' design, manufacture, distribution, labeling,

23   advertising, marketing, promotion, and sale of Taxotere.

24

25                            **JURISDICTION AND VENUE**

26       3.      This Court has jurisdiction over this action pursuant to Article 6, § 10 of the

27

28

                                        1

                     COMPLAINT AND DEMAND FOR JURY TRIAL
                                   CASE NO.

Exhibit A
00007

California Constitution and California Code of Civil Procedure § 410.10.

4.     This Court has personal jurisdiction over Defendants, each of which is licensed to conduct and/or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including Taxotere, to the residents in this state. Defendants have sufficient minimum contacts in California and have purposefully availed themselves of the privilege of conducting business in California; in particular, exploiting the markets within California through the promotion, sale, marketing, and distribution of their products, including Taxotere, thus rendering the exercise of jurisdiction by this Court proper and necessary.

5.     Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendant transacts business in this County and the events complained of occurred in this County.

**PARTIES**

6.     Plaintiff Vera Smith is and at all relevant times was a citizen and adult resident of Lancaster, California, and was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

7.     Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 Rue La Boétie, 75008 Paris, France.

8.     Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 avenue Raymond Aron, 92160 Antony, France.

2

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00008

9.      Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi S.A. is the only member and owns 100% of the membership interest (both financial and voting) of Defendant Sanofi-Aventis U.S. LLC. Defendant Sanofi-Aventis U.S. LLC does not have any members that are citizens, residents, or domiciles of the State of California.

10.      Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

11.      Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104. At all relevant times, McKesson was in the business of labeling, selling, marketing, packaging, repackaging, and distributing Taxotere, including upon information and belief the exact Taxotere administered to Plaintiff. McKesson also owns US Oncology, which supported and directed a significant amount of Taxotere research and promotion. Defendant does business throughout the United States and in the State of California and regularly and continuously did business within this judicial district including manufacturing, marketing, advertising, selling, and distributing Taxotere. For example, McKesson Specialty Health, a division of McKesson, lists Taxotere in its catalog of available products.

12.      The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiff who is therefore ignorant of the true names and sues said Defendants by such fictitious names. Plaintiff believes and

3

COMPLAINT AND DEMAND FOR JURY TRIAL<br>CASE NO.

Exhibit A
00009

alleges that each of the Defendants designated herein by fictitious names is in some manner

legally responsible for the events and happenings herein referred to and caused damages

proximately and foreseeably to Plaintiff as alleged herein. At all times hereinafter alleged, "All

DEFENDANTS" include all herein named Defendants as well as Defendants DOES 1 through

500, inclusive.

### SANOFI DEFENDANTS' OWNERSHIP AND UNITY OF INTEREST

13.     Defendant Sanofi S.A. is a French multinational pharmaceutical parent company

that operates worldwide through a complex, consolidated, and intermingled web of more than

400 wholly-owned subsidiaries, including Defendants Aventis Pharma S.A. and Sanofi-Aventis

U.S. LLC. As of 2013, Sanofi was the world's fifth-largest pharmaceutical company by sales.

14.     At all relevant times, Sanofi S.A. was engaged in the business of researching,

analyzing, licensing, designing, formulating, compounding, patenting, testing, manufacturing,

producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting,

packaging, advertising, and/or selling the prescription drug Taxotere through its numerous

wholly-owned subsidiaries in the United States and throughout the world, including Defendants

Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

15.     Sanofi was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil

company, and subsequently grew through a series of international acquisitions.  In 1994, Sanofi

made a significant venture into the U.S. pharmaceutical market by acquiring Sterling Winthrop

and its prescription pharmaceutical business.  Sanofi now produces and sells generic products in

the United States under the Winthrop label.

16.     In 2004, Sanofi acquired the competing pharmaceutical company Aventis to

create Sanofi-Aventis S.A. (later shortened to Sanofi S.A.).  Sanofi S.A. owns 100% of the

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00010

shares or financial interest of Defendant Aventis Pharma S.A., and therefore directs and controls its operations and activities.

17.    Defendant Sanofi-Aventis U.S. LLC is also a wholly-owned U.S. subsidiary of Sanofi S.A. Because Sanofi S.A. owns 100% of its shares or financial interest, Sanofi S.A. controls and directs its operations.

18.    At all material times, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC (collectively "Sanofi" or "Sanofi Defendants") were engaged in the business of, and/or were successors in interest to entities engaged in the business of, researching, analyzing, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug Taxotere to the general public, including Plaintiff.

19.    At all material times, Sanofi was authorized to do business within California; did in fact transact and conduct business in California; derived substantial revenue from goods and products used in California; supplied Taxotere within California; and purposefully directed these and other related activities to California.

20.    Specifically, Sanofi sponsored and conducted clinical trials of their products in California, including clinical trials of Taxotere. For example, it sponsored a 2005 clinical trial at Stanford University on the efficacy of Taxotere for lung cancer treatment; from 2006 to 2012, Sanofi sponsored a clinical trial at Stanford on the efficacy of Taxotere for breast cancer treatment; from 2006 to 2012, Sanofi sponsored an interventional clinical trial at Stanford of Taxotere in patients with breast cancer; Sanofi also sponsored a large-scale epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern California, which

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00011

1   terminated in 2012. In addition, Sanofi participates in ongoing research and development

2   collaborations with the University of California, San Francisco.

3        21.     Additionally, Sanofi employed sales representatives and business managers

4   throughout California who promoted Taxotere as part of a nationwide marketing, promotion and

5   distribution campaign targeting medical professionals and residents in California. Sanofi also

6   contracted with Defendant McKesson Corporation, a California-based pharmaceutical

7

8   distributor, to distribute, package, label, and promote Taxotere.

9        22.     Sanofi has also spent large sums on California politics. For example, in 2016

10   Sanofi contributed $4.15 million to the political action committee Californians Against the

11   Misleading Rx Measure. Sanofi also contributed $1.5 million to the political action committee

12   No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015, Sanofi gave

13

14   $115,000 to a campaign against Measure 15-009. Sanofi has also recently contributed $7,300

15   total to five assembly-member candidates, and $2,500 to the California Republican Party.

16   Sanofi also employs Clear Advocacy, LLC, a lobbying firm based in Sacramento.

17

18        23.     The Sanofi Defendants acted jointly at all relevant times, along with other

19   affiliated, related, jointly owned and controlled entities, to develop, market, produce, label,

20   promote, package, advertise, and/or sell Taxotere to the general public, including Plaintiff.

21   Because they acted jointly, and/or within the course and scope of an agency relationship with

22   one another, with respect to the conduct alleged in this Complaint, any individuality and

23

24   separateness between them ceased and they became alter-egos of one another and are jointly

25   liable for their misconduct and wrongful acts as alleged herein.

26        24.     At all times herein alleged, each of the acts of the employees of Sanofi-Aventis

27

28   U.S. LLC were on behalf of, for the benefit of, at the direction of, and at the behest of Sanofi

6

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00012

S.A. and Aventis Pharma S.A. and were ratified by said Defendants. Further, each of the acts of the employees of Sanofi-Aventis U.S. LLC were done pursuant to and in accordance with corporate policy of Sanofi S.A. and Aventis Pharma S.A.

25. Adherence to the fiction of the separate existence of the Sanofi Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction fraud and promote injustice. The alter ego entities were formed for the purpose of selling pharmaceutical products, including Taxotere, which carried a high risk of causing serious personal injuries, without being responsible to the injured customers.

26. As the corporate parent of wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As a result, a unity of interest, ownership, and conduct between the Sanofi Defendants existed at all relevant times—with regard to Taxotere's manufacture, distribution, development, testing, labeling, and related conduct—such that any individuality and separateness between the Sanofi Defendants had ceased and they became the alter-ego of one another.

27. Through its web of affiliates, subsidiaries, and predecessor companies, Sanofi S.A. has overseen and directed the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting Taxotere in the United States and in over 100 different countries.

## DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE (DOCETAXEL)

28. Taxotere is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Taxotere is a part of a family of drugs commonly referred to as taxanes.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00013

29. Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (Taxol®) and Taxotere.

30. Taxol was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to Taxotere. It was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

31. Designed as an increased potency taxane, Taxotere (docetaxel) was invented and developed by Rhone-Poulenc, a predecessor in interest to Sanofi. In March 1989, Rhone-Poulenc's patent was assigned to Defendant Aventis Pharma S.A. Since that time, Sanofi has controlled the development and been the owner, holder, or assignee of the patents related to Taxotere. Also in 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Poulenc had assigned to docetaxel.

32. Sanofi launched Taxotere clinical trials and testing as early as 1990. It began enrolling patients in Phase I clinical testing trials (called the "TAX 001" study) in June 1990. The TAX 001 study's results were reported in May 1994. Sanofi had direct and personal knowledge of these and other test results, and of subsequent decisions to withhold information and data from physicians, healthcare providers, patients, and Plaintiff.

33. The initial application for FDA approval for Taxotere was unsuccessful. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended rejection because Taxotere was more toxic than already-approved competitor Taxol, and because more studies of side effects were needed.

8

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00014

34. The FDA ultimately approved Taxotere on May 14, 1996. According to its product labeling, Taxotere was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

35. After the initial approval, Sanofi sought and received FDA approval for additional indications. Based on self-sponsored clinical trials, Sanofi claimed Taxotere's superiority over competing chemotherapy products approved for breast cancer treatment—including claiming superior efficacy over the lower potency paclitaxel (Taxol), its primary competitor.

36. Throughout this period, Defendant McKesson Corporation distributed, packaged, labeled, and promoted Taxotere. U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of Taxotere at conferences including at annual meetings for the American Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology in 2010.

37. Contrary to Defendants' claims, post market surveillance demonstrates that the more potent and more toxic Taxotere does not in fact offer increased efficacy or benefits over other taxanes. In August 2007, *Cancer Treatment Reviews* published a study which found no significant differences in the efficacy and outcomes obtained with Taxotere (docetaxel) or Taxol (paclitaxel) in breast cancer treatment. Likewise, a 2008 study in the *New England Journal of Medicine* concluded that Taxol (paclitaxel) was more effective than Taxotere (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

38. Despite publication of these studies, Defendants continued to falsely promote the "superior efficacy" of Taxotere over competing paclitaxel (Taxol). At the June 2008 meeting for the American Society of Clinical Oncology, Sanofi distributed marketing materials comparing

9

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00015

the efficacy of Taxotere versus paclitaxel (Taxol). Specifically, Sanofi distributed a "reprint carrier" enclosing a 2005 study ("TAX 311") performed by researchers affiliated with Sanofi and US Oncology (which is now part of McKesson). The cover of the reprint carrier claimed, among other things:

- "TAX 311: Taxotere demonstrated efficacy benefits vs paclitaxel"

- "This phase III study demonstrated that docetaxel is superior to paclitaxel in TTP, response duration, and OS [overall survival]."

- "Phase III trial demonstrated improved survival for Taxotere vs paclitaxel in metastatic breast cancer"

39.    Whatever the merits of the TAX 311 study may have been, Defendants' statements on the reprint carrier were false and/or misleading in light of the 2007 and 2008 studies finding that Taxotere was not more effective than Taxol.

40.    In response to these false and misleading statements, the FDA issued a warning letter to Sanofi in 2009 stating that claims of superiority over paclitaxel were "unsubstantiated." Sanofi's claims were misleading because the TAX 311 study had not demonstrated statistical significance and had not been replicated:

The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n).

*Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).

---

[1]    Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

10

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

. . . .

The reference cited in support of these claims . . . does not constitute substantial evidence or substantial clinical experience to support these claims and representations because, among other factors, the study failed to demonstrate statistical significance on the primary endpoint and has not been replicated.[2]

41.     A qui tam lawsuit was also filed by a former employee accusing Sanofi and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use Taxotere. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

42.     Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC and their predecessors and affiliates designed, directed, and/or engaged in a marketing scheme that promoted Taxotere for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of Taxotere to expand the market for Taxotere in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of Taxotere from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

---

[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00017

43.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to docetaxel's (Taxotere) increased toxicity as compared to other available less toxic products.

44.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

<u>**DEFENDANTS' COVER UP OF THE CAUSAL RELATIONSHIP BETWEEN**</u>

<u>**TAXOTERE AND PERMANENT DISFIGURING HAIR LOSS**</u>

45.     Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiff, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

46.     Defendants knew or should have known that the rate of permanent alopecia related to Taxotere was far greater than with other products available to treat the same condition.

47.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of Taxotere suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

48.     Although women might accept the possibility of permanent baldness as a result of the use of Taxotere if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in thousands of women being exposed to the side effects of Taxotere, there were already similar products on the market that were at least as

12

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00018

effective as Taxotere and did not subject female users to the same risk of disfiguring permanent alopecia as does Taxotere.

49.     Beginning in the late 1990s, Sanofi sponsored and/or was aware of a study titled the GEICAM 9805 study. By 2005, it knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took Taxotere had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases longer. Sanofi knowingly, intentionally, and wrongfully withheld these results from physicians, healthcare providers, patients, and Plaintiff.

50.     In 2006, Sanofi knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken Taxotere suffered from permanent disfiguring hair loss for years after treatment ended.

51.     Despite Sanofi's knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken Taxotere and suffered from permanent disfiguring hair loss, Sanofi failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiff, that patients who take Taxotere are at a significantly increased risk of suffering from permanent disfiguring hair loss.

52.     Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that Taxotere causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiff in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00019

53.     Patients like Plaintiff, did not have the opportunity to make an informed choice as to whether the benefits of Taxotere were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of Taxotere as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

54.     Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to Taxotere and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States for many years.

55.     In December 2015, the FDA changed the safety labeling for Taxotere (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

56.     As a direct result of Sanofi's wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

57.     As a direct result of Sanofi's failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using Taxotere over other comparable products was justified.

58.     Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00020

the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

59.     Plaintiff Vera Smith, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## PLAINTIFF VERA SMITH'S DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

60.     Plaintiff Vera Smith was diagnosed with breast cancer in approximately December 2013 and began using Taxotere. In or about early 2016, Plaintiff realized her hair loss from use of Taxotere was permanent.

61.     Following her diagnosis, Plaintiff Smith met with her oncologist to discuss treatment. Neither Plaintiff nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere. Accordingly, Plaintiff underwent chemotherapy that included Taxotere, distributed and sold by Defendants, and each of them.

62.     Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent alopecia as a result of receiving chemotherapy with Taxotere.

## NATURE OF THE CLAIMS

63.     While Sanofi disclosed Taxotere's risk of disfiguring permanent alopecia to patients and regulatory agencies in other countries, it failed to either alert Plaintiff, the public, and the scientific community in the United States or perform further investigation into Taxotere's safety. Sanofi failed to update the warnings for Taxotere, and failed to disclose results of additional studies as it learned new facts about the defects and risks of its product.

64.     In particular, Sanofi:

15

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00021

(a)    failed to disclose its investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of Taxotere in response to these studies;

(b)    failed to provide adequate warnings about the true safety risks associated with the use of Taxotere;

(c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Taxotere and its effects on the degree or severity of side effects related to permanent alopecia;

(d)    failed to disclose in the "Warnings" Section that permeant alopecia is a frequent side effect associated with the use of Taxotere;

(e)    failed to advise prescribing physicians, such as Plaintiff's physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to Taxotere;

(f)    failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of Taxotere;

(g)    failed to provide adequate warnings and information related to the increased risks of permeant alopecia in certain genome groups;

(h)    failed to provide adequate warnings regarding the increased risk of permeant alopecia with the use of Taxotere as compared to other products designed to treat the same conditions as Taxotere; and

(i)    failed to include a "**BOXED WARNING**" related to permanent or persistent alopecia.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00022

65. Although Sanofi modified the U.S. labeling and prescribing information for Taxotere on multiple occasions throughout the years, it failed to include any warning whatsoever related to permanent alopecia until December 2015, despite Sanofi's awareness of the frequency and severity of this side effect long before then.

66. Before applying for and obtaining approval of Taxotere, Sanofi knew or should have known that consumption of Taxotere was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

67. Despite knowing that Taxotere was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Sanofi produced, marketed, and distributed Taxotere in the United States.

68. Sanofi failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

69. From the date Sanofi received FDA approval to market Taxotere, it made, distributed, marketed, and sold Taxotere without adequate warning to Plaintiff and her prescribing physicians that Taxotere was associated with disfiguring permanent alopecia.

70. Instead, Sanofi ignored the association between the use of Taxotere and the risk of disfiguring permanent alopecia.

71. Sanofi failed to disclose information that they possessed regarding their failure to adequately test and study Taxotere related to the side effect of disfiguring permanent alopecia. Plaintiff and her healthcare providers could not have discovered Sanofi's false representations and failures to disclose information through the exercise of reasonable diligence.

72. As a result of the foregoing acts and omissions, Sanofi caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00023

nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

73. Plaintiff incorporates by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

74. Plaintiff is within the applicable statutes of limitations for the claims presented herein because Plaintiff did not discover the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of Taxotere, and other acts and omissions.

75. In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that Defendants' Taxotere was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiff has suffered while aggressively and continually marketing and

18

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00024

promoting Taxotere as safe and effective. This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of Taxotere, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiff; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of Taxotere.

76.     Defendants had a duty to disclose that Taxotere was defective, unreasonably dangerous and that the use of Defendants' Taxotere carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

77.     Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' Taxotere or the true risks associated with her use at the time she purchased and used Defendants' Taxotere.

78.     Defendants did not notify, inform, or disclose to Plaintiff, Plaintiff's prescribing health care professionals or the general consuming public that Defendants' Taxotere was defective and that its use carried with it the serious risk of developing the injuries Plaintiff has suffered and complained of herein.

79.     Because Defendants failed in their duty to notify Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that their Taxotere was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00025

80.     Accordingly, Plaintiff files this lawsuit within the applicable statutes of limitations. Plaintiff could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of her injuries at an earlier time, and when Plaintiff's injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiff's injuries to Taxotere exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiff may have a basis for an actionable claim.

## FIRST CLAIM FOR RELIEF

### (Product Liability for Negligence – Against All Defendants)

81.     Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

82.     Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

83.     Defendants failed to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into interstate commerce in that Defendants knew or should have known that using Taxotere created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00026

as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

84.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)    Selling Taxotere without disclosing its dangers and risks;

(b)    Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of Taxotere;

(c)    Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Taxotere;

(d)    Negligently advertising and recommending the use of Taxotere without sufficient knowledge as to its dangerous propensities;

(e)    Negligently representing that Taxotere was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)    Negligently and falsely representing that Taxotere was superior to other commercially available products to treat the same forms of cancer that Taxotere was intended to treat;

(g)    Concealing information from Plaintiff, Plaintiff's physicians, the public, and the FDA in knowing that Taxotere was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)    Improperly concealing from and/or misrepresenting information to Plaintiff, Plaintiff's physicians, other healthcare professionals, and/or the

21

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00027

FDA concerning the severity of risks and dangers of Taxotere compared to other forms of treatment for breast cancer.

85.     Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with Taxotere.

86.     Defendants negligently conveyed that the safety risks and/or dangers of Taxotere were comparable with other forms of treatment for the same conditions for which Taxotere was prescribed to treat.

87.     Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Taxotere in that they:

(a)     Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Taxotere;

(b)     Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with Taxotere;

(c)     Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Taxotere;

(d)     Failed to warn Plaintiff and Plaintiff's physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(e)     Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with Taxotere.

22

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00028

(f)    Failed to warn Plaintiff and Plaintiff's physicians before actively encouraging the sale of Taxotere, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)    Were otherwise careless and/or negligent.

88.    Despite the fact that Defendants knew or should have known that Taxotere caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell Taxotere to consumers, including Plaintiff.

89.    Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiff, Plaintiff's physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of Taxotere as compared to other products already commercially available to treat the same types of cancer Taxotere was meant to treat.

90.    Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

91.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

92.    As a direct and proximate result of the use of Taxotere, Plaintiff experienced disfiguring permanent alopecia.

23

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

93.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability -- Failure to Warn -- Against All Defendants)

94.     Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

95.     The Taxotere that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of Taxotere. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

96.     Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name Taxotere, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of Taxotere. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

Exhibit A
00030

97. Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with Taxotere, and Defendants aggressively and fraudulently promoted the product to physicians.

98. As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of Taxotere, Plaintiff suffered disfiguring permanent alopecia and other conditions.

99. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### THIRD CLAIM FOR RELIEF

#### (Fraudulent Misrepresentation – Against All Defendants)

100. Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

101. Defendants falsely and fraudulently represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and effective for the treatment of certain forms of cancer; that it was superior in efficacy to other chemotherapy drugs intended to treat the same forms of

25

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00031

1    cancer; and by downplaying the frequency, severity or permanency of alopecia caused by use of

2    Taxotere.

3         102.    When warning of safety and risks of Taxotere, Defendants fraudulently

4    represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the

5    public in general that Taxotere had been tested and was found to be safe and/or effective for its

6
7    indicated use.

8         103.    Defendants concealed their knowledge of docetaxel's (Taxotere's) defects from

9    Plaintiff, Plaintiff's physicians, and the public in general and/or the medical community

10   specifically including, but not limited to, concealing their knowledge of the risk of developing

11
     disfiguring permanent alopecia as well as the frequency and severity of such reaction, as well as
12
13   the fact that the drug was not more effective than other chemotherapy agents used to treat the

14   same forms of cancer.

15        104.    Defendants concealed their knowledge of the defects in their products from

16   Plaintiff, Plaintiff's physicians, hospitals, pharmacists, and the public in general.
17
18        105.    Defendants made these false representations with the intent of defrauding and

19   deceiving Plaintiff, Plaintiff's physicians, the public in general, and the medical and healthcare

20   community in particular, and were made with the intent of inducing Plaintiff, Plaintiff's

21   physicians, the public in general, and the medical community in particular, to recommend,
22
23   dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer,

24   including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

25   wanton, and depraved indifference to the health, safety, and welfare of Plaintiff.

26        106.    Defendants made these false representations with the intent of defrauding and

27   deceiving Plaintiff, Plaintiff's physicians (whom Defendants knew would share the false
28

26

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00032

representations directly with Plaintiff), as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer.

107.    When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

108.    At the time Defendants made the aforesaid representations, and, at the time Plaintiff used Taxotere, Plaintiff and Plaintiff's physicians were unaware of the falsity of Defendants' representations, and Plaintiff and Plaintiff's physicians reasonably believed them to be true.

109.    In reliance upon Defendants' representations, Plaintiff and Plaintiff's physicians were induced to and did use and prescribe Taxotere, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

110.    Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

111.    Defendants knew or should have known that Taxotere had a potential to, could, and would cause severe and grievous injury to the users of Taxotere, including, but not limited to, the development of permanent disfiguring alopecia, and that Taxotere was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

112.    Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00033

113.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Concealment – Against All Defendants)

114.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

115.    At all times during the course of dealing between Defendants and Plaintiff and Plaintiff's healthcare providers, Defendants misrepresented the effectiveness and safety of Taxotere for its intended use.

116.    Defendants knew or were reckless in not knowing that its representations were false.

117.    In representations made to Plaintiff and Plaintiff's healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

(a)    that Taxotere was not as safe as other forms of treatment for which Taxotere was marketed and sold to cancer patients;

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00034

(b)    that the risks of adverse events with Taxotere were higher than those with other forms of treatment for which Taxotere was marketed and sold to cancer patients;

(c)    that the risks of adverse events with Taxotere were not adequately tested and/or known by Defendants;

(d)    that Defendants were aware of dangers in Taxotere, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

(e)    that Taxotere was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

118.    Defendants had a duty to disclose to Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare providers the defective nature of Taxotere, including but not limited to the heightened risks of disfiguring permanent alopecia.

119.    Defendants had sole access to material facts concerning the defective nature of Taxotere and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used Taxotere, including Plaintiff, in particular.

120.    Defendants' concealment and omissions of material facts concerning the safety of Taxotere was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, Plaintiff's physicians, hospitals, and healthcare providers into reliance on the continued use of Taxotere and to cause them to purchase, prescribe, and/or dispense Taxotere and/or use Taxotere.

29

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00035

121.    Defendants knew that Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding Taxotere set forth herein.

122.    Plaintiff, Plaintiff's physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

123.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF

### (Strict Product Liability for Misrepresentation – Against All Defendants)

124.    Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

125.    Defendants sold the Taxotere that Plaintiff's physician prescribed for Plaintiff and that Plaintiff used.

126.    Defendants were engaged in the business of selling the Taxotere for resale, use, or consumption.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00036

127.    Defendants misrepresented facts as set forth herein concerning the character or quality of the Taxotere that would be material to potential prescribers and purchasers or users of the product.

128.    Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

129.    As a purchaser or user, Plaintiff reasonably relied on the misrepresentation.

### SIXTH CLAIM FOR RELIEF

### (Fraud and Deceit – Against All Defendants)

130.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

131.    Defendants committed fraud by omission in applying for and gaining patent protection for Taxotere resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiff's exposure to the side effects of Taxotere.

132.    Defendants fraudulently claimed superior efficacy over other products intended to treat the same conditions that Taxotere was intended to treat. These fraudulent representations were the proximal cause of Plaintiff's exposure to the side effects of Taxotere.

133.    Defendants intentionally distributed false information, including but not limited to assuring Plaintiff, Plaintiff's physicians, hospitals, healthcare professionals, and/or the public that Taxotere was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

134.    Defendants intentionally omitted certain results of testing and or research to Plaintiff, Plaintiff's physicians, healthcare professionals, and the public.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00037

135.   Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public to disseminate truthful information.

136.   Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public not to deceive Plaintiff, Plaintiff's physicians, and/or the public.

137.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

138.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug Taxotere was safe and effective for the treatment of various forms of cancer, including breast cancer.

139.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug Taxotere carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions that Taxotere was intended to treat.

140.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Taxotere was not injurious to the health and/or safety of its intended users.

141.   The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Taxotere was no more injurious to the health and/or safety of its intended users than other forms of cancer treatments.

142.   These representations by Defendants were all false and misleading, as Taxotere carried with it the serious risk of developing disfiguring permanent alopecia.

32

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00038

143.    Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that Taxotere was not safe as a means of treatment for certain types of cancer that Taxotere was intended to treat.

144.    Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's physicians, and the public, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere not having dangerous and serious health and/or safety concerns.

145.    Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's physicians, and the public in general, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere being as safe as other products that treat the same conditions that Taxotere was intended to treat.

146.    It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiff, Plaintiff's physicians, and/or the public and to gain the confidence of Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of Taxotere and induce Plaintiff, Plaintiff's physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use Taxotere.

147.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals that Taxotere was fit and safe for use as treatment for certain types of cancer, including breast cancer.

148.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and healthcare professionals

33

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00039

that Taxotere was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those associated with other forms of treatment.

149.    Defendants made false claims and false representations in its documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere did not present risks related to disfigurement secondary to permanent alopecia.

150.    Defendants made false claims and false representations in its documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that Taxotere did not present health or safety risks greater than other forms of treatment for the same conditions Taxotere was intended to treat.

151.    Defendants made these and other representations with the intention of deceiving and defrauding Plaintiff and Plaintiff's respective healthcare professionals.

152.    Defendants made these and other representations in order to induce Plaintiff and Plaintiff's respective healthcare professionals to rely upon the misrepresentations.

153.    Defendants' false misrepresentations caused Plaintiff and/or Plaintiff's healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Taxotere.

154.    Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Taxotere to the public at large, and Plaintiff and Plaintiff's physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

155.    Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00040

156.   Defendants willfully and intentionally failed to disclose the truth and material facts related to Taxotere and made false representations with the purpose of deceiving and lulling Plaintiff and Plaintiff's respective healthcare professionals into a sense of security so that Plaintiff and Plaintiff's healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend Taxotere.

157.   Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiff and Plaintiff's respective healthcare professionals, would rely upon the information being disseminated.

158.   Plaintiff and her respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how Taxotere would treat certain forms of cancer that Taxotere was intended to treat.

159.   At the time Defendants' false representations were made, Plaintiff and/or Plaintiff's respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of Taxotere.

160.   Plaintiff and her healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of Taxotere, and Plaintiff and her healthcare providers with reasonable diligence could not have discovered the true facts.

35
COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00041

161.   Had Plaintiff and her healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Taxotere, Plaintiff would not have purchased, used, and/or relied on Defendants' drug Taxotere.

162.   Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

163.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction

### of Emotional Distress – Against All Defendants)

164.   Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

165.   Defendants' conduct, as set forth above, was extreme and outrageous.

166.   Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

167.   Defendants' conduct caused Plaintiff severe emotional distress.

36

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00042

As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

<u>Punitive Damages Allegations</u>

(Against Sonofi Defendants)

168.    Plaintiff repeats, reiterates, and realleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

169.    At all times material hereto, Sanofi Defendants, and each of them, knew that Taxotere could cause permanent hair loss. Said Defendants knew that Taxotere was not more efficacious than Taxol or other taxanes for treatment of cancer.

170.    At all times material hereto, Sanofi Defendants, and each of them, engaged conduct that constitutes malice, oppression or fraud, including without limitation the misrepresentations, warranties, fraud and omissions set forth herein.

171.    Sanofi Defendants continued to aggressively market Taxotere to consumers, including Plaintiff, without disclosing that Taxotere was not more effective than Taxol or other taxanes and that it could cause permanent hair loss and alopecia.

172.    Sanofi Defendants went further than failing to warn of Taxotere's defective and dangerous nature. They intentionally and falsely represented and warranted that Taxotere was

37

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00043

safe and only caused temporary hair loss. They intentionally and falsely represented that Taxotere was more efficacious than Taxol for treatment of certain kinds of cancer. They concealed the true risks and efficacy of Taxotere. Worse, they decided it was acceptable to warn Europe and Canada consumers about the risk of permanent hair loss but not American consumers. Such conduct constitutes malice, oppression and fraud.

173.    Sanofi Defendants' acts of malice, oppression and fraud were on the part of corporate officers, directors or managing agents, or were on the part of employees and were ratified or authorized by Sanofi Defendants, respectively.

174.    Sanofi Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff of necessary information to enable Plaintiff to weigh the true risks of Taxotere against the benefits in making her decision to use Taxotere.

175.    As a direct and proximate result of the Sanofi Defendants' conscious and deliberate disregard for the rights and safety of consumers, Plaintiff suffered severe injury and loss.  Plaintiff seeks actual and punitive damages from Sanofi Defendants as alleged herein.

176.    The aforesaid conduct of the Sanofi Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff herein, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Sanofi Defendants and deter them from similar conduct in the future.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a.    As to all Counts and all DEFENDANTS, damages to the Plaintiffs according to proof including as applicable:

i.    Past and future medical and care expenses of Plaintiffs according to proof;

38

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

1         iii.  Past and future loss of earnings (and/or profits) of Plaintiffs according to

2  proof;

3         iii.  Other economic loss;

4         b.  As to all Counts and all DEFENDANTS, Non-economic damages

5  according to proof including as applicable:

6

7           i.  Compensation for physical pain and discomfort

8           ii.  Compensation for fright, nervousness, anxiety, worry, and

9  apprehension

10          iii.  Loss of consortium;

11

12        c.  As to all Counts and all DEFENDANTS, Awarding pre-judgment and post-

13 judgment interest to the Plaintiffs according to proof;

14        d.  As to Counts and all DEFENDANTS, Awarding reasonable costs to the Plaintiffs

15 as provided by law;

16        e.  As to Counts 3-4 and 6-7 and Sanofi DEFENDANTS, Awarding Plaintiffs

17 punitive and treble damages; and

18        f.  As to all Counts and all DEFENDANTS, Granting all such other relief as the

19 Court deems necessary, just and proper.

20

21

22

23

24

25

26

27

28

39

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00045

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 16, 2016

Respectfully submitted,

By: *[signature]*

Anne Andrews (SBN 103280)
Sean Thomas Higgins (SBN 266888)
**ANDREWS THORNTON HIGGINS
RAZMARA, LLP**
2 Corporate Park, Suite 110
Irvine, California 92606
Telephone: (800) 664-1734
aa@andrewsthornton.com
shiggins@andrewsthornton.com

Jeffrey Bogert (SBN 132778)
**LAW OFFICES OF JEFFREY BOGERT**
2121 Rosecrans Ave, Suite 3375
El Segundo, California 90245
Telephone: (310) 322-9050
bogertlaw@outlook.com

Gabriel A. Assaad (*pro hac vice to be submitted*)
**KENNEDY HODGES, LLP**
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (713) 523-0001
gassaad@kennedyhodges.com

*Attorneys for Plaintiff*

40

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

Exhibit A
00046

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Anne Andrews, Esq., SBN: 103280<br>Andrews Thornton Higgins Razmara, LLP<br>2 Corporate Park, Suite 110<br>Irvine, California 92606 | CONFORMED<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>DEC 21 2016<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Cheri Grant, Deputy |

TELEPHONE NO: (949) 748-1000  FAX NO: (949) 315-3540
ATTORNEY FOR *(Name):* Plaintiff, Vera Smith

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 42011 4th Street West
MAILING ADDRESS:
CITY AND ZIP CODE: Lancaster, CA 93534
BRANCH NAME: Michael Antonovich Antelope Valley Courthouse

CASE NAME: Smith v. Sanofi S.A., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | MC 026778 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400-3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [X] Product liability (24) | Real Property | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | Enforcement of Judgment |
| [ ] Civil rights (08) | Unlawful Detainer | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | Miscellaneous Civil Complaint |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties        d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel    e. [X] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve                   in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence           f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action *(specify):* 7

5. This case [ ] is  [X] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 21, 2016

Anne Andrews, Esq., SBN: 103280
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 (Rev. July 1, 2007) | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

Exhibit A
00047

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the*
*case involves an uninsured*
*motorist claim subject to*
*arbitration, check this item*
*instead of Auto*)
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability (*not asbestos or*
*toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice—
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) (*not civil*
*harassment*) (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
(*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer*
*or wrongful eviction*)
Contract/Warranty Breach—Seller
Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case—Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage (*not provisionally*
*complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent*
*domain, landlord/tenant, or*
*foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal*
*drugs, check this item; otherwise,*
*report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ—Administrative Mandamus
Writ—Mandamus on Limited Court
Case Matter
Writ—Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal—Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
(*arising from provisionally complex*
*case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment (*non-*
*domestic relations*)
Sister State Judgment
Administrative Agency Award
(*not unpaid taxes*)
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified*
*above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-*
*harassment*)
Mechanics Lien
Other Commercial Complaint
Case (*non-tort/non-complex*)
Other Civil Complaint
(*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition (*not specified*
*above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late
Claim
Other Civil Petition

Exhibit A
00048

| SHORT TITLE: Smith v. Sanofi S.A., et al. | CASE NUMBER: MC 026778 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**VIA FAX**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases -- unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☒ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice – Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4
LA-CV109

Exhibit A
00049

| SHORT TITLE: Smith v. Sanofi S.A., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels ___ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)  
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**  
**AND STATEMENT OF LOCATION**

Local Rule 2.3  
Page 2 of 4

Exhibit A
00050

| SHORT TITLE: Smith v. Sanofi S.A., et al. | | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement<br>of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 6 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation<br>Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121 Civil Harassment | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Exhibit A
00051

| SHORT TITLE: Smith v. Sanofi S.A., et al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: □1. □2. □3. □4. □5. □6. □7. □8. □9. □10. [X]11. | ADDRESS: 42011 4th Street West |
|---|---|

| CITY: Lancaster | STATE: CA | ZIP CODE: 93534 | |
|---|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the North Judicial District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 12/21/2016

(SIGNATURE OF ATTORNEY/FILING PARTY)

Anne Andrews, Esq., SBN:103280

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 4 of 4

Exhibit A
00052

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE
Case Number _____

MC 026776

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Brian C. Yep | A-14 | 3010 | | | |
| Hon. Randolph A. Rogers | A-15 | 3210 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on DEC 2 1 2016 SHERRI R. CARTER, Executive Officer/Clerk

Sherri R. Carter, Executive Officer/Clerk

CHERI GRANT , Deputy Clerk

LACIV PI 190 (Rev01/16)
LASC Approved 05-06

### NOTICE OF CASE ASSIGNMENT

### UNLIMITED CIVIL CASE

Exhibit A
00053

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California**
**County of Los Angeles**



**Los Angeles County**
**Bar Association**
**Litigation Section**

**Los Angeles County**
**Bar Association Labor and**
**Employment Law Section**



**Consumer Attorneys**
**Association of Los Angeles**



**Southern California**
**Defense Counsel**



**Association of**
**Business Trial Lawyers**



**California Employment**
**Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

Exhibit A
00054

<table>
<tr><td colspan="2">NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:</td><td>STATE BAR NUMBER</td><td>Reserved for Clerk's File Stamp</td></tr>
<tr><td colspan="2">TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):</td><td>FAX NO. (Optional):</td><td></td></tr>
</table>

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

Exhibit A
00055

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*", and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    (INSERT DATE)                                                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR PLAINTIFF)
Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)
Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)
Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)
Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)
Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)
Date:

_____                    >  _____
(TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)

LACIV 229 (Rev 02/15)          **STIPULATION – EARLY ORGANIZATIONAL MEETING**          Page 2 of 2
LASC Approved 04/11

Exhibit A
00056

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

Exhibit A
00057

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.   Be filed within two (2) court days of receipt of the Request; and

      iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

Exhibit A
00058

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ (ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➢ (ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➢ (ATTORNEY FOR _____ )

Exhibit A
00059

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):  E-MAIL ADDRESS (Optional):  ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a **Request for Informal Discovery Conference**, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an **Answer to Request for Informal Discovery Conference**, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

Exhibit A
00060

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

Exhibit A
00061

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

Exhibit A
00062

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| General Order Re | ) | ORDER PURSUANT TO CCP 1054(a), |
| Use of Voluntary Efficient Litigation | ) | EXTENDING TIME TO RESPOND BY |
| Stipulations | ) | 30 DAYS WHEN PARTIES AGREE |
| | ) | TO EARLY ORGANIZATIONAL |
| | ) | MEETING STIPULATION |
| | ) | |

Whereas the Los Angeles Superior Court and the Executive Committee of the

Litigation Section of the Los Angeles County Bar Association have cooperated in

drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los

Angeles County Bar Association Labor and Employment Law Section; the Consumer

Attorneys Association of Los Angeles; the Association of Southern California Defense

Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

Employment Lawyers Association all "endorse the goal of promoting efficiency in

litigation, and ask that counsel consider using these stipulations as a voluntary way to

promote communications and procedures among counsel and with the court to fairly

resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

Exhibit A
00064

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_                          _Carolyn B. Kuhl_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

Exhibit A
00065

**FILED**

LOS ANGELES SUPERIOR COURT

OCT 2 4 2016

SHERRI R. CARTER, EXECUTIVE OFFICER/CLERK

BY C. CASAREZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| In re Personal Injury Cases Assigned to the Personal Injury and General Jurisdiction Courts; (NORTH DISTRICT) | Case No.: MC 026778<br><br>SECOND AMENDED GENERAL ORDER RE PERSONAL INJURY COURT ("PI Court") PROCEDURES, NORTH DISTRICT (Effective as of October 19, 2016) |

DEPARTMENT:    A-14    A-15

FINAL STATUS CONFERENCE ("FSC"):

•  Date: _____ at 8:30 a.m.

TRIAL:

•  Date: _____ at 8:30 a.m.

OSC re DISMISSAL (Code Civ. Proc., § 583.210):

•  Date: _____ at 8:30 a.m.

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules of Court, and the Los Angeles County Court Rules ("Local Rules"), the Los Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES ALL PREVIOUS AMENDED GENERAL ORDERS AND GENERALLY ORDERS AS

1

North District
10/19/16

Exhibit A
00066

# Exhibit B

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

Genzyme
500 Kendall Street
Cambridge, MA 02142

Check No :
Page Number :  1 of 1
Check Date :   1/20/2017
Period Beg/End : 1/1/2017-1/14/2017
Pay Frequency :  Bi-weekly

MEEKER, DAVID P

ID Number:
Base Rate:

Status    Exempt    Tax Adjustments          State and Local Codes
FED:                 FED:                   ST1:  PRI:   MA  LOC1:        LOC3:
ST1:                 DI/UC:                                    SEC:        LOC2:        LOC4:
ST2:                 Local:                 ST2:                          LOC5:

Important Message

EXEMPT EMP HOURS SHOWN FOR TIME-OFF BANK ACCOUNTING PURPOSES ONLY . FOR PAYROLL QUESTIONS PLEASE CONTACT (855)305-0039

| Hours and Earnings | | | | Taxes and Deductions | | | Special Information | |
|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Description | Cur Amt | YTD Amt | Description | Amount |
| Current Earnings | | | | | | | GRP TERM LF | |
| SALARY | | | | SO SEC TAX | | | | |
| HOLIDAY | | | | MEDICARE TAX | | | | |
| DEFERRED COMP | | | | FED INC TAX | | | | |
| Total Current Hours/Earnings | | | | PRI-STATE TAX | | | | |
| | | | | Total Taxes | | | | |
| Year-To-Date Earnings | | | | | | | | |
| SALARY | | | | | | | | |
| HOLIDAY | | | | | | | | |
| SHUT DOWN | | | | | | | | |
| DEFERRED COMP | | | | | | | | |
| Total Year-To-Date Hours/Earnings | | | | | | | | |

| Pre-Tax Items | | | After Tax Deductions | | Current Net Pay Distribution | |
|---|---|---|---|---|---|---|
| Description | Cur Amt | YTD Amt | PARKING | | XXXXXXXXXXXXX | |
| DENTAL | | | Total Deds | | | |
| MEDICAL | | | | | Total Current Net Pay | |
| VISION | | | | | | |
| 401K | | | | | | |
| Total Pre-tax Items | | | | | | |

| | Gross | Pre-Tax | Taxable Wages | Less Taxes | Less Deds | EQ Net Pay |
|---|---|---|---|---|---|---|
| Current | | | | | | |
| YTD | | | | | | |

Exhibit B
00067

# Exhibit C

Case 2:16-md-02740-JTM-MBN Document 5163 Filed 06/02/17 Page 75 of 108
Case 2:17-cv-07449-JTM-MBN Document 4 Filed 08/10/17 Page 2 of 2 Page ID #:341
Ceridian HR/Payroll Latitude
Page 1 of 1

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

SANOFI US SERVICES INC
55 Corporate Dr
Bridgewater, NJ 08807

Check No :
Page Number : 1 of 1
Check Date : 1/20/2017
Period Beg/End : 1/2/2017-1/15/2017
Pay Frequency : Bi-weekly

MANSURI, MUZAMMIL MANSOOR

ID Number:
Base Rate:

Status  Exempt
FED:
ST1:
ST2:

Tax Adjustments
FED:
DI/UC:
Local:

State and Local Codes
ST1:  PRI:  MA  LOC1:  LOC3:
SEC:  LOC2:  LOC4:
ST2:  LOC5:

Important Message

EXEMPT EMP HOURS SHOWN FOR TIME-OFF BANK ACCOUNTING PURPOSES ONLY . FOR PAYROLL QUESTIONS PLEASE CONTACT (855)305-0039

| Hours and Earnings | | | | Taxes and Deductions | | | Special Information | |
|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Description | Cur Amt | YTD Amt | Description | Amount |
| Current Earnings | | | | SO SEC TAX | | | GRP TERM LF | |
| SALARY | | | | MEDICARE TAX | | | | |
| HOLIDAY | | | | FED INC TAX | | | | |
| EXEC AUTO | | | | PRI-STATE TAX | | | | |
| Total Current Hours/Earnings | | | | Total Taxes | | | | |
| Year-To-Date Earnings | | | | | | | | |
| SALARY | | | | | | | | |
| HOLIDAY | | | | | | | | |
| SHUT DOWN | | | | | | | | |
| VACATION | | | | | | | | |
| EXEC AUTO | | | | | | | | |
| Total Year-To-Date Hours/Earnings | | | | | | | | |

| Pre-Tax Items | | | | | | Current Net Pay Distribution | |
|---|---|---|---|---|---|---|---|
| Description | Cur Amt | YTD Amt | | | | XXXXXXXXXXXXX. | |
| DENTAL | | | | | | | |
| MEDICAL | | | | | | | |
| VISION | | | | | | Total Current Net Pay | |
| 401K | | | | | | | |
| Total Pre-tax Items | | | | | | | |

| | Gross | Pre-Tax | Taxable Wages | Less Taxes | Less Deds | EQ Net Pay | Payroll Contact Phone# | |
|---|---|---|---|---|---|---|---|---|
| Current | | | | | | | (855) 305-0039 | |
| YTD | | | | | | | | |

Exhibit B
00068

1   Amir M. Nassihi (SBN: 235936)
    anassihi@shb.com
2   SHOOK, HARDY & BACON L.L.P.
    One Montgomery, Suite 2700
3   San Francisco, California 94104-4505
    Telephone: 415-544-1900
4   Facsimile: 415-391-0281

5   *Attorneys for*
    *Specially Appearing Defendant* sanofi S.A.

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  VERA SMITH,                          Case No.: 2:17-cv-00870-R-RAO

12          Plaintiff,                   Judge: Hon. Manuel L. Real
                                         Courtroom: 880
13          v.
                                         **DECLARATION OF CLAIRE**
14  SANOFI S.A.; AVENTIS PHARMA          **TERRAZAS**
    S.A.; SANOFI-AVENTIS U.S. LLC,
15  MCKESSON CORPORATION; and
    DOES 1-100,
16
            Defendants.
17

18

19      1.    My name is Claire Terrazas. I am employed as Vice President and Head

20  of Corporate Legal Affairs of sanofi S.A. ("Sanofi"). I have held this position since

21  November 2013. Through my position and experience with Sanofi, I am

22  knowledgeable about Sanofi's business and operations and have knowledge about the

23  subjects set forth in this Declaration, which I have confirmed through appropriate

24  investigation. In particular, I am familiar with, among other matters, interactions

25  between Sanofi and certain of its foreign subsidiaries and affiliates, including sanofi-

26  aventis U.S. LLC and Aventis Pharma S.A. (hereinafter "Aventis Pharma"). In such

27  capacity, I have knowledge of the statements herein, or make them after and based

28

369650 v1

1 | upon appropriate investigation. I am authorized to make this Declaration on behalf of
2 | Sanofi.

3 |     2.      Sanofi is a corporation organized under the laws of France and is
4 | domiciled in France. Its headquarters and principal place of business is located at 54,
5 | Rue La Boetie, in Paris. Sanofi's headquarters facility is not shared with sanofi-
6 | aventis U.S. LLC or Aventis Pharma.

7 |     3.      Aventis Pharma is a corporation organized under the laws of France and
8 | is domiciled in France. Its headquarters is located at 20 Avenue Raymond Aron
9 | 92160 Antony, France. Aventis Pharma's headquarters facility is not shared with
10 | sanofi-aventis U.S. LLC or Sanofi.

11 |     4.      Sanofi and Aventis Pharma do not conduct business in California, nor do
12 | they maintain places of business in California. Sanofi and Aventis Pharma also do not
13 | target or direct business activities in California.

14 |     5.      Sanofi and Aventis Pharma are not qualified, registered, or licensed to do
15 | business in California.

16 |     6.      Sanofi and Aventis Pharma do not maintain a registered agent in
17 | California.

18 |     7.      Sanofi and Aventis Pharma do not lease or own any real or personal
19 | property located in California.

20 |     8.      Sanofi and Aventis Pharma do not maintain telephone numbers, mailing
21 | addresses, or bank accounts in California.

22 |     9.      Sanofi and Aventis Pharma do not pay taxes in California.

23 |     10.    Sanofi and Aventis Pharma certify annually to tax authorities in the
24 | United States that it was not, during the preceding year, "engaged in a trade or
25 | business in the United States."

26
27
28

2

DECLARATION OF CLAIRE TERRAZAS
CASE NO. 2:17-cv-00870-R-RAO

369650 v1

11.     Sanofi-aventis U.S. LLC is a Delaware limited liability company, with its corporate headquarters in Bridgewater, New Jersey, and is a separate, distinct and independent entity from both Sanofi and Aventis Pharma.

12.     Sanofi-aventis U.S. LLC, Sanofi, and Aventis Pharma are governed by their separate Boards of Directors.  None of the members of the board of sanofi-aventis U.S. LLC is also a member of the Sanofi Board of Directors or Aventis Pharma Board of Directors.

13.     The directors of sanofi-aventis U.S. LLC act independently in the interest of the company.

14.     Sanofi-aventis U.S. LLC operates within the United States and, as such, transacts business separately and independently of Sanofi and Aventis Pharma. Sanofi-Aventis U.S. LLC cannot bind Sanofi or Aventis Pharma to contracts or other agreements to which it may enter.

15.     Sanofi-aventis U.S. LLC has thousands of employees in United States and does substantial business there.  Additionally, sanofi-aventis U.S. LLC is solvent, financially independent, and adequately capitalized.  It has substantial assets that could satisfy any judgment in this case.

16.     Control of the day-to-day operations of sanofi-aventis U.S. LLC resides within the management of the company and not with Sanofi or Aventis Pharma. Sanofi and Aventis Pharma do not have legal control of the ordinary business, personnel, financial, reserve, or other operations of sanofi-aventis U.S. LLC.

17.     There are no shared employees between Sanofi or Aventis Pharma, on the one hand, and sanofi-aventis U.S. LLC on the other.

18.     Sanofi-aventis U.S. LLC maintains books, bank accounts, and financial records separately from Sanofi and Aventis Pharma, including corporate records relating to finances, taxes, salaries, and other expenses.

3

1       19.    Sanofi-aventis U.S. LLC maintains the required corporate formalities for
2  a limited liability company.

3       20.    Neither Sanofi nor Aventis Pharma pays the salaries, expenses or losses
4  of sanofi-aventis U.S. LLC.

5       21.    Sanofi does not directly own sanofi-aventis U.S. LLC; rather, sanofi-
6  aventis U.S. LLC is an indirect subsidiary of Sanofi. Sanofi US Services Inc. is the
7  sole shareholder of sanofi-aventis U.S. LLC.  Sanofi-aventis U.S. LLC is not
8  considered a department or division of Sanofi.

9       22.    Sanofi US Services, Inc. is an indirect wholly owned subsidiary of
10  Sanofi.

11       23.    Aventis Pharma is an indirect wholly owned subsidiary of Sanofi.

12       24.    Aventis Pharma does not have an ownership interest, direct or indirect,
13  in sanofi-aventis U.S. LLC.

14       25.    Neither Sanofi nor Aventis Pharma manufacture Taxotere$^{®}$ (docetaxel).

15       26.    Neither Sanofi nor Aventis Pharma have ever sold Taxotere$^{®}$ (docetaxel)
16  in the United States, let alone California.

17       27.    Sanofi is a holding company with diversified corporate investments. It
18  has approximately 350 subsidiaries operating throughout the world.

19       28.    Sanofi did not design, formulate, manufacture, market, advertise, or sell
20  Taxotere$^{®}$ (docetaxel) in the United States.

21       29.    Aventis Pharma did not design, formulate, manufacture, market,
22  advertise, or sell Taxotere$^{®}$ (docetaxel) in the United States.

23       30.    Sanofi and Aventis Pharma did not engage in any conduct or transact
24  any business in California through sanofi-aventis U.S. LLC.

25       31.    Sanofi-aventis U.S. LLC is not an agent of Aventis Pharma and Sanofi
26  for purposes of selling and marketing Taxotere$^{®}$ (docetaxel) in California.

27

28
                             4

369650 v1

1     32.    Sanofi and Aventis Pharma did not place Taxotere® (docetaxel) into the

2  stream of commerce to be marketed and sold by sanofi-aventis U.S. LLC.

3     33.    Neither Sanofi nor Aventis Pharma was involved in the label development

4  for Taxotere® (docetaxel) in the United States.

5     34.    Neither Sanofi nor Aventis Pharma submitted a new drug application for

6  Taxotere® (docetaxel) to the United States Food and Drug Administration (FDA).

7  Nor did Sanofi nor Aventis Pharma submit any labeling-related applications for

8  Taxotere® (docetaxel) to the FDA. Sanofi-aventis U.S. LLC holds the approved new

9  drug application for Taxotere® in the United States, and sanofi-aventis U.S. LLC

10  corresponds with the FDA on labeling issues for the same.

11     I declare under penalty of perjury under the laws of the United States that the

12  foregoing is true and correct.

13     Executed March _2__, 2017

15     _____

16     Claire Terrazas
       Vice President and Head of Corporate

17     Legal Affairs of Sanofi

5

369650 v1

1  Amir M. Nassihi (SBN: 235936)
   anassihi@shb.com
2  SHOOK, HARDY & BACON L.L.P.
   One Montgomery, Suite 2700
3  San Francisco, California 94104-4505
   Telephone: 415-544-1900
4  Facsimile: 415-391-0281

5  *Attorneys for*
   *Specially Appearing Defendant* sanofi S.A.
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 VERA SMITH,                          Case No.: 2:17-cv-00870-R-RAO

12          Plaintiff,                   **NOTICE OF ERRATA**

13          v.                           Judge: Hon. Manuel L. Real
                                         Courtroom: 880
14 SANOFI S.A.; AVENTIS PHARMA
   S.A.; SANOFI-AVENTIS U.S. LLC;
15 MCKESSON CORPORATION; and
   DOES 1-100,
16
            Defendants.
17

18

19

20      Defendant sanofi S.A. hereby submits this Notice of Errata to correct an error

21 on its Notice of Motion and Motion to Dismiss for Insufficient Service of Process and

22 Lack of Personal Jurisdiction (ECF 41). Sanofi S.A.'s Brief In Support of Motion to

23 Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction was

24 erroneously filed – the wrong document was inadvertently filed.

25

26

27

28

388152 v1

1          Attached as exhibit 1 is sanofi S.A.'s Brief In Support of Motion to Dismiss for

2   Insufficient Service of Process and Lack of Personal Jurisdiction.

3

4   Dated:  March 10, 2017                              SHOOK, HARDY & BACON L.L.P.

5

6                                                       By:  ___/s/ Amir M. Nassihi_____
                                                             Amir M. Nassihi
7

8                                                       Attorney for
                                                        *Specially Appearing*
9                                                       *Defendant* sanofi S.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                2

388152 v1

Case 2:17-cv-00870-R-RAO   Document 42-1   Filed 03/16/17   Page 1 of 269   Page ID #:1349

# Exhibit 1

1   Amir M. Nassihi (SBN: 235936)
    anassihi@shb.com
2   SHOOK, HARDY & BACON L.L.P.
    One Montgomery, Suite 2700
3   San Francisco, California 94104-4505
    Telephone: 415-544-1900
4   Facsimile: 415-391-0281

5   *Attorneys for*
    *Specially Appearing Defendant* sanofi S.A.

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  VERA SMITH,                          Case No.: 2:17-cv-00870-R-RAO

12        Plaintiff,                     **SPECIALLY APPEARING
                                         DEFENDANT SANOFI S.A. BRIEF
13        v.                             IN SUPPORT OF MOTION TO
                                         DISMISS FOR INSUFFICIENT
14  SANOFI S.A.; AVENTIS PHARMA          SERVICE OF PROCESS AND LACK
    S.A.; SANOFI-AVENTIS U.S. LLC;       OF PERSONAL JURISDICTION**
15  MCKESSON CORPORATION; and
    DOES 1-100,                          Judge: Hon. Manuel L. Real
16                                       Date: April 17, 2017
          Defendants.                    Time: 10:00 a.m.
17                                       Courtroom: 880

18

19

20

21

22

23

24

25

26

27

28

                                       1

1

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................1

II.    BACKGROUND ......................................................................................3

    A.   Facts Underlying Insufficient Service of Process on Sanofi S.A. ...............3

    B.   Facts Underlying Lack of Personal Jurisdiction as to Sanofi S.A. ...............4

III.   LEGAL STANDARDS ...........................................................................5

    A.   Service of Process ..................................................................................5

    B.   Personal Jurisdiction .............................................................................6

IV.   ARGUMENT ..........................................................................................7

    A.   Plaintiff's Attempted Service on Sanofi S.A. was Improper......................7

        1.   Neither Drs. Meeker Nor Mansuri Are Persons Authorized To Receive Service of Process on Sanofi S.A.'s Behalf ..................8

        2.   The Hague Convention Governs Service Upon Sanofi S.A. ............10

    B.   The Court Lacks Personal Jurisdiction Over Sanofi S.A. .........................11

        1.   The Court Lacks General Jurisdiction Over Sanofi S.A. Because It Is Not "At Home" in California ....................................11

        2.   The Court Lacks Specific Jurisdiction Over Sanofi S.A. Because Plaintiff's Alleged Causes of Action Do Not Arise from Sanofi S.A.'s California Contacts ..................................12

        3.   The Court Does Not Have Personal Jurisdiction Over Sanofi S.A. Under An Alter-Ego or Agency Theory ...........................14

        4.   Plaintiff's Remaining Allegations are Either Conclusory, and Thus Not Entitled to a Presumption or Truth, or They are Irrelevant .......17

V.    CONCLUSION .....................................................................................18

i

SANOFI'S BRIEF ISO MOT. TO DISMISS FOR INSUFFICIENT SERVICE AND LACK OF PERSONAL JURISDICTION
CASE NO.: 2:17-CV-00870-R-RAO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*,
    44 F. Supp. 3d 974 (S.D. Cal. 2014) ................................................16

*Asahi Metal Indus. Co. v. Superior Ct.*,
    480 U.S. 102 (1987)..........................................................................7

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) ...........................................................6

*Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013) ......................................15, 16

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008)..........................................................6

*Bristol-Myers Squibb Co. v. Superior Court*,
    1 Cal. 5th 783 (2016) ....................................................................14

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
    2016 WL 5904964 (U.S. Oct. 7, 2016) ..........................................13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
    No. 16-466, 2017 WL 215687 (U.S. Jan. 19, 2017) .......................13

*Brockmeyer v. May*,
    383 F.3d 798 (9th Cir. 2004)...........................................................5

*Buchanan v. Soto*,
    241 Cal. App. 4th 1353 (2015).......................................................10

*Daimler AG v. Bauman*
    134 S. Ct. 746 (2014) ..............................................................11, 12

*Dill v. Berquist Constr. Co.*,
    24 Cal. App. 4th 1426 (1994)..........................................................9

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001).........................................................12

ii

*Doe v. Unocal Corp.*,
   27 F. Supp. 2d 1174 (C.D. Cal. 1998) ................................................................ 16

*Duran v. Macias-Price*,
   No. 07-CV-01209-AWI-SMS, 2007 WL 4554390 (E.D. Cal. Dec. 20, 2007) .. 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011) ............................................................................... 7, 11

*Gordy v. Daily News, L.P.*,
   95 F.3d 829 (9th Cir. 1996) ........................................................................... 13

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ....................................................................... 14

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408 (1984) ........................................................................................ 7

*In re Lyondell Chem. Co.*,
   543 B.R. 127 (S.D.N.Y. 2016) ...................................................................... 17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ........................................................................................ 6

*Kott v. Superior Court*,
   45 Cal. App. 4th 1126 (1996) ........................................................................ 10

*Lee v. City of Beaumont*,
   12 F.3d 933 (9th Cir. 1993) ............................................................................. 6

*Modesto City Sch. v. Riso Kagaku Corp.*,
   157 F. Supp. 2d 1128 (E.D. Cal. 2001) ......................................................... 16

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) .......................................................................................... 5

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952) ...................................................................................... 12

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ...................................................................... 11

*Reddick v. Truong*,
   No. CV 07-6586-RGK (RC), 2008 WL 2001915 (C.D. Cal. May 5, 2008) ...... 10

iii

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ........................................................................5

*S.J. v. Issaquah School Dist. No. 411*,
    470 F.3d 1288 (9th Cir. 2006) ........................................................................6

*Sec. Exch. Comm'n v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ........................................................................5

*Sefton v. Jew*,
    201 F. Supp. 2d 730 (W.D. Tex. 2001) ......................................................17

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000) .........................................................................15

*Tejada v. Sugar Foods Corp.*,
    No. CV 10-05186 MMM, 2010 WL 4256242 (C.D. Cal. Oct. 18, 2010)
    (Morrow, J.) ...................................................................................................6

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ........................................................................7

*White v. Comm'r of Soc. Sec.*,
    2014 WL 1027523 (E.D. Cal. Mar. 17, 2014) ...............................................4

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ........................................................................6

STATUTES

CAL. CODE. CIV. PROC. § 413.10(c) .....................................................................10

CAL. CODE. CIV. PROC. § 416.10(b) .................................................................8, 9

California Code of Civil Procedure section 415.40 ...............................................8

California Code of Civil Procedure section 416.10 ...............................................8

California Corporations Code section 2110 ...........................................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 4 ............................................................................6

Federal Rule of Civil Procedure 12(b)(2) .........................................................1, 2

Federal Rule of Civil Procedure 12(b)(5) ...............................................................1

Specially Appearing Defendant sanofi S.A.[1] (a French corporation) makes this special appearance for the limited purpose of filing this Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(5), because Plaintiff did not properly serve sanofi S.A. In the event this Court determines service was proper, sanofi S.A. also moves to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2), because this Court lacks personal jurisdiction over it.

## I.   INTRODUCTION

In this product liability suit, Plaintiff has sued three separate Sanofi entities, as well as McKesson Corporation and Does 1-100, claiming that she suffered permanent hair loss as a result of her use of Taxotere®, an FDA-approved prescription chemotherapy, which she was prescribed to treat her breast cancer.

At the core of Plaintiff's Complaint is the claim that Taxotere®'s FDA-approved label failed to adequately warn her of the potential risks of permanent hair loss following use of this life-saving product. Defendant sanofi-aventis U.S. LLC— which is the holder of the approved New Drug Application ("NDA") for Taxotere® in the United States and is the entity responsible for corresponding with FDA on labeling issues central to Plaintiff's allegations—marketed, sold, and distributed Taxotere® in the United States during the time Plaintiff took the medication.

Despite this fact, Plaintiff continues to pursue two foreign French Defendants, sanofi S.A. and Aventis Pharma S.A., neither of which manufacturers nor sells Taxotere® in the United States or has any relevant contacts with California. As demonstrated by the declaration attached to this brief, the French Defendants are "at home" in France (not California), where they are incorporated and have their principal places of business. Decl. of Claire Terrazas ("Terrazas Decl.") ¶¶ 2–3. Likewise, sanofi S.A. and Aventis Pharma S.A. do not conduct, target, engage in, or direct

---

[1] Plaintiff incorrectly refers to Sanofi as sanofi S.A. While Sanofi is organized under French law as a Société Anonyme, the corporate designation is not part of the company's name.

business in California, nor do they have any business license, registration, address, accounts, or agents in California, such that this Court could exercise specific jurisdiction over them. *Id.* ¶¶ 4–10. It is for these reasons that, although the Court may have jurisdiction over sanofi-aventis U.S. LLC—the entity that markets, sells and has regulatory and labeling responsibility for Taxotere[®] in the United States—the Court lacks both general and specific personal jurisdiction over Specially Appearing Defendant sanofi S.A. and Aventis Pharma S.A.[2]

In addition, sanofi-aventis U.S. LLC is not a mere alter ego of the French Defendants such that sanofi-aventis U.S. LLC's contacts with California can be imputed to sanofi S.A. and Aventis Pharma S.A. In order to rebut the presumption of corporate separateness, Plaintiff must show that the French Defendants exerted day-to-day control over sanofi-aventis U.S. LLC amounting to complete domination of that company. Plaintiff incorrectly pleads that sanofi-aventis U.S. LLC is a wholly-owned subsidiary of sanofi S.A. In truth, however, sanofi-aventis U.S. LLC is an *indirect* wholly-owned subsidiary of sanofi S.A. It is well established that mere ownership of a subsidiary—even direct, complete ownership, which is not even present here—is insufficient to establish an alter ego relationship. Moreover, the facts set forth in the Terrazas Declaration demonstrate that sanofi-aventis U.S. LLC is not "dominated" by sanofi S.A or Aventis Pharma S.A. Sanofi-aventis U.S. LLC is instead a separate legal entity. Consistent with its separate status, it maintains the corporate formalities specific to an LLC, has its own employees, shares no board members or executives with the French Defendants, and is adequately capitalized. In other words sanofi-aventis U.S. LLC is not an alter ego or agent of sanofi S.A. or Aventis Pharma S.A. in a manner to justify the presence of either French Defendant in this lawsuit.

---

[2] To Sanofi's knowledge, Aventis Pharma S.A. has not been served in this case. To the extent that it has, the same arguments apply. *See* Terrazas Decl.

## II. BACKGROUND

Plaintiff Vera Smith filed this product liability action on December 21, 2016. On February 2, 2017, Defendant sanofi-aventis U.S. LLC removed this action from the Superior Court of the State of California for the County of Los Angeles to this Court. *See* Notice of Removal (Dkt. No. 1).

### A. Facts Underlying Insufficient Service of Process on Sanofi S.A.

On January 4, 2017, a process server attempted to serve Sanofi US Services Inc. Senior Corporate Paralegal Jennifer Smith with the Vera Smith Summons and Complaint. *See* Decl. of Amir Nassihi ("Nassihi Decl."), Ex. A [Smith Summons and Complaint]. Service was attempted at Genzyme Corporation, a Delaware corporation, with its corporate headquarters in Cambridge, Massachusetts. The document states "VIA PERSONAL SERVICE" to "Muzammil Mansuri, Ph.D. Executive Vice President, Sanofi S.A." and "David Meeker, M.D. Executive Vice President, Sanofi S.A." Jennifer Smith declined to accept the documents and informed the process server that he was serving the incorrect corporate entity (Genzyme Corporation, and not named Defendant sanofi S.A.), but the process server left the documents anyway.

On January 5, 2017, Jennifer Smith and the process server had a phone conversation. Because Jennifer Smith was out of the office on that date, the process server stated there was no point in leaving personal service copies of the Vera Smith Summons and Complaint as he "had served [Jennifer Smith] yesterday." Jennifer Smith informed the process server he had "left a Complaint on the counter, not served sanofi S.A." On January 6, 2017, personal service copies of the Vera Smith Summons and Complaint were left at Genzyme Corporation. The process server dropped the two envelopes on the reception desk and walked out of the building without speaking with Jennifer Smith, Dr. Meeker, or Dr. Mansuri. On January 20, 2017, a copy of the Vera Smith Summons and Complaint was received by Dr. Meeker's office via regular U.S. mail. On January 23, 2017, a further copy of the Vera Smith Summons and

Complaint was received by Dr. Meeker's office via priority U.S. mail. Dr. Mansuri has not received copies of the Vera Smith Summons and Complaint via mail.

Dr. Meeker is the Executive Vice President and General Manager of Genzyme Corporation. Genzyme Corporation is a separate and independent entity from sanofi S.A. Dr. Meeker is not a Vice President for sanofi S.A., as Plaintiff claims. Dr. Mansuri is the Executive Vice President, Strategy and Business Development of Sanofi U.S. Services Inc. Dr. Mansuri is also not a Vice President for sanofi S.A., as Plaintiff claims.

Attorneys for sanofi S.A. have met and conferred with Plaintiff's counsel on several occasions to relay this information, in an effort to resolve this informally, without the Court's involvement. Nassihi Decl. ¶¶ 5, 6. Notwithstanding these facts, Plaintiff's counsel contends service was proper. In the event this Motion is granted, sanofi S.A. requests Plaintiff pay its costs. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 2014 WL 1027523, at *3 (E.D. Cal. Mar. 17, 2014) (imposing monetary sanctions on plaintiff for failing to effect proper service of process).

### B. Facts Underlying Lack of Personal Jurisdiction as to Sanofi S.A.

Sanofi S.A. is a French corporation with its principal place of business in France. Terrazas Decl. ¶ 2. It engages in diversified corporate investments, and it currently has approximately 350 subsidiaries throughout the world. *Id.* ¶ 27. Sanofi S.A. is headquartered at 54, Rue La Boetie, Paris. *Id.* ¶ 2. Its headquarters facility is not shared with sanofi-aventis U.S. LLC and/or Aventis Pharma S.A. *Id.*

Aventis Pharma S.A. and sanofi-aventis U.S. LLC are indirect wholly-owned subsidiaries of sanofi S.A. *Id.* ¶¶ 21, 23. Sanofi-aventis U.S. LLC is a Delaware limited liability company with its principal place of business and headquarters in New Jersey. *Id.* ¶ 11. Aventis Pharma S.A., on the other hand, is a French corporation with its principal place of business and headquarters at 20 Avenue Raymond Aron 92160 Antony, France. *Id.* ¶ 3.

Sanofi S.A. and sanofi-aventis U.S. LLC are separate and distinct corporate entities. *Id.* ¶ 14. Sanofi S.A. does not control the day-to-day operations of sanofi-aventis U.S. LLC. Rather, sanofi-aventis U.S. LLC independently transacts business. Sanofi S.A. and sanofi-aventis U.S. LLC do not share employees, board members, or executives. *Id.* ¶¶ 13–17.

At all times relevant to this lawsuit, sanofi S.A. did not manufacture, design, market, or sell Taxotere® in the United States, including California, nor did it perform these functions through sanofi-aventis U.S. LLC. *Id.* ¶¶ 26, 28, 30. More specifically, sanofi S.A. did not design, manufacture, market, or sell the product that Plaintiff claims to have ingested and on which Plaintiff's claims are based. Sanofi S.A. does not conduct business in California, nor does it maintain places of business in California. *Id.* ¶ 4. Further, sanofi S.A. does not maintain registered agents in California, own any real or personal property in California, maintain telephone numbers, mailing addresses, or bank accounts in California, or pay taxes to California. *Id.* ¶¶ 5–10.

## III. LEGAL STANDARDS

### A. Service of Process

"[S]ervice of process is the means by which a court asserts its jurisdiction over the person." *Sec. Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A method of service of process must comport with constitutional notions of due process, and must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid[.]" *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If service of process is

deemed to be insufficient, the district court has discretion to dismiss the action or quash service. *S.J. v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006).

"The issue of the sufficiency of service of process prior to removal is strictly a state law issue." *Lee v. City of Beaumont*, 12 F.3d 933, 936-37 (9th Cir. 1993) (overruled on other grounds). In determining whether service of process was proper, courts look to the law of the jurisdiction where the action was filed. *Tejada v. Sugar Foods Corp.*, No. CV 10-05186 MMM (JEMx), 2010 WL 4256242, at *3 (C.D. Cal. Oct. 18, 2010) (Morrow, J.) (citing *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003)). Here, since Plaintiff improperly attempted to serve Sanofi S.A. prior to removal, California substantive law regarding process of service applies instead of Federal Rule of Civil Procedure 4, which governs the contents of a summons and manner of service for a federal court proceeding. *See Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.")

## B. Personal Jurisdiction

Plaintiff has the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing that the exercise of jurisdiction is proper by demonstrating "facts that if true would support jurisdiction over the defendant." *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted).

California's long-arm statute "is coextensive with federal due process requirements, [so] the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800-01. The Constitutional due process inquiry for exercising personal jurisdiction consists of a two-prong analysis: first, there must be minimum contacts such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

1  (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Second, the defendant's
2  minimum contacts must be sufficient to establish general or specific personal
3  jurisdiction.  *OMI Holdings, Inc.*, 149 F.3d at 1090–91.

4       The Court may exercise general personal jurisdiction over a non-resident
5  defendant if the defendant has "substantial" or "continuous and systematic" contacts
6  with California.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th
7  Cir. 2006) (citation omitted).  General jurisdiction over a non-resident defendant may
8  be asserted only when the nonresident defendant's "affiliations with the State are so
9  'continuous and systematic' as to render them ***essentially at home in the forum***
10 ***state***."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851
11 (2011) (emphasis added).

12      Specific personal jurisdiction, on the other hand, exists only when the defendant
13 has purposefully availed itself of the privilege of conducting activities within the state
14 and plaintiff's cause of action arises out of the defendant's contacts within the forum.
15 *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  If
16 general jurisdiction does not lie, a court may exercise specific jurisdiction only when
17 the plaintiff's cause of action "arises out of" or is related to the non-resident
18 defendant's contacts with California *and* the defendant "purposefully avails itself of
19 the privilege of conducting activities within the forum State . . . ."  *See Tuazon*, 433
20 F.3d at 1169 (emphasis and citation omitted).  Even if these conditions are met, the
21 Court still must determine whether the exercise of jurisdiction offends "traditional
22 notions of fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Ct.*,
23 480 U.S. 102, 113 (1987).

## IV.  ARGUMENT

### A.  Plaintiff's Attempted Service on Sanofi S.A. was Improper

26      Plaintiff's claims against sanofi S.A. should be dismissed because Plaintiff's
27 attempted service of the Summons and Complaint on sanofi S.A. was improper.
28 Plaintiff bypassed the Hague Service Convention and instead attempted to serve two

7

SANOFI'S BRIEF ISO MOT. TO DISMISS FOR INSUFFICIENT SERVICE AND LACK OF PERSONAL JURISDICTION
CASE NO.: 2:17-CV-00870-R-RAO

individuals within the United States not employed by sanofi S.A. or otherwise authorized to accept service on its behalf. Dismissal is warranted.

### 1. Neither Drs. Meeker Nor Mansuri Are Persons Authorized To Receive Service of Process on Sanofi S.A.'s Behalf

Assuming for purposes of argument only that Plaintiff could serve sanofi S.A. inside the United States without following the Hague Service Convention, Plaintiff's attempted service here was improper because neither individual whom Plaintiff tried to serve is authorized by sanofi S.A. to accept service of process on its behalf. California Code of Civil Procedure section 416.10 governs service of process on a corporation. Section 416.10(b) authorizes service by the following method that Plaintiff apparently was attempting to invoke here: "To the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." CAL. CODE. CIV. PROC. § 416.10(b).

Pursuant to California Corporations Code section 2110, valid service on a corporation generally includes "[d]elivery by hand of a copy of any process against a foreign corporation (a) to any officer of the corporation or its general manager *in this state* [i.e., California] . . . , (b) to any natural person designated by it as agent for the service of process, or (c), if the corporation has designated a corporate agent, to any person named in the latest certificate of the corporate agent [.]" CAL. CORP. CODE § 2110. On its face, this statute is inapplicable here because sanofi S.A. does not have any officer, general manager, or designated agent for the service of process within the State of California.[3]

---

[3] California Code of Civil Procedure section 415.40 does not change this result. Under that provision, "[a] summons may be served on a person outside [California] *in any manner provided by this article* or by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." CAL. CODE. CIV. PROC. § 415.40 (emphasis added). As noted, consistent with the procedures set forth in Section 2110, there was no officer

8

1    Under California law, to effect proper service, the summons and complaint
2    must be served on "a person authorized by the corporation to receive service of
3    process." CAL. CODE. CIV. PROC. § 416.10(b). "Agents are not fungible," and a
4    "person who is authorized to perform one function on behalf of a principal may have
5    no authority at all regarding a different function." *Dill v. Berquist Constr. Co.*, 24
6    Cal. App. 4th 1426, 1438 (1994). Here, Plaintiff served Dr. Meeker, Executive Vice
7    President and General Manager of Genzyme Corporation. Service upon Dr. Meeker
8    was improper because he is not employed by sanofi S.A. *See* Nassihi Decl., Ex. B
9    [Meeker paycheck stub from Genzyme Corporation]. Dr. Meeker holds no position
10   within sanofi S.A. recognized as even conceivably authorizing him to accept service
11   on behalf of sanofi S.A. under California law. He is not its chief executive officer.
12   He is not its vice president, secretary or assistant secretary. He is not its treasurer or
13   assistant treasurer. He is not its controller or chief financial officer. He is not its
14   general manager, nor is he authorized by sanofi S.A. to receive service of process.
15   Rather, Dr. Meeker is employed by Genzyme Corporation, a separate and distinct
16   entity from sanofi S.A. *Id.* Thus, Dr. Meeker cannot accept service on behalf of
17   sanofi S.A.

18   Plaintiff also attempted to serve Dr. Mansuri, Executive Vice President of
19   Strategy and Business Development of Sanofi U.S. Services Inc. Like Dr. Meeker,
20   Dr. Mansuri also is not an employee of sanofi S.A., nor does Dr. Mansuri occupy any
21   position that would render him authorized to accept service on sanofi S.A.'s behalf in
22   the United States. *See* Nassihi Decl., Ex. C [Mansuri paycheck stub from Sanofi U.S.
23   Services Inc.]. Dr. Mansuri instead is employed by Sanofi U.S. Services Inc., a
24   separate and distinct entity from sanofi S.A. *Id.* Thus, Dr. Mansuri also was not and
25   is not authorized to accept service on behalf of sanofi S.A.

26
27   or general manager of sanofi S.A. "in this state" to be served. As to service by mail,
     for the reasons set forth below, Plaintiff's attempted service by mail was not
28   effective because the individual whom Plaintiff sought to serve (Dr. Meeker) was
     not authorized to accept service for sanofi S.A.

Pursuant to California law, neither Drs. Meeker nor Mansuri are persons authorized to receive service of process on sanofi S.A.'s behalf. *See Duran v. Macias-Price*, No. 07-CV-01209-AWI-SMS, 2007 WL 4554390, at *1 (E.D. Cal. Dec. 20, 2007) ("The manner of service may be improper, for example, where the wrong person is served or where a person who is not authorized to accept service is served."); *Reddick v. Truong*, No. CV 07-6586-RGK (RC), 2008 WL 2001915, at *4 (C.D. Cal. May 5, 2008) ("Merely throwing papers at an individual not authorized to accept them does not constitute effective service of process."). Plaintiff's attempted service upon them was improper and should be dismissed.

## 2. The Hague Convention Governs Service Upon Sanofi S.A.

California law controlling service on foreign defendants is expressly subject to the Hague Service Convention. CAL. CODE. CIV. PROC. § 413.10(c). "The Hague Service Convention is a multilateral treaty that provides procedures for the service of process to defendants living in foreign jurisdictions." *Buchanan v. Soto*, 241 Cal. App. 4th 1353, 1366 (2015). It applies in civil cases "where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id*. "The only method of service under California law which does not require the transmission of documents abroad, and consequently does not implicate the Hague Service Convention, is service of summons by publication where the party's address remains unknown during the publication period despite the exercise of reasonable diligence." *Kott v. Superior Court*, 45 Cal. App. 4th 1126, 1136 (1996).

In this instance, sanofi S.A. is a corporation organized under the laws of France with its principal place of business in France. The method of service prescribed by the Hague Service Convention is implicated because France is a signatory to the Convention, and this is a civil case that would require transmittal of documents abroad. Plaintiff also knows sanofi S.A.'s address in France, as evidenced by the allegations in the Complaint. Compl. ¶ 7. As such, Plaintiff should have served

1    sanofi S.A. through the Hague Service Convention, as other plaintiffs in this litigation

2    have done.

3         **B.    The Court Lacks Personal Jurisdiction Over Sanofi S.A.**

4         Plaintiff's Complaint does not support a finding that this Court has jurisdiction

5    over sanofi S.A.  Plaintiff cannot establish that sanofi S.A. has sufficient contacts with

6    California to establish either general or specific jurisdiction.  Further, Plaintiff cannot

7    impute sanofi-aventis U.S. LLC's contacts to sanofi S.A. because sanofi S.A. does not

8    exercise control over sanofi-aventis U.S. LLC such as to render sanofi-aventis U.S.

9    LLC its agent and/or alter-ego.

10        **1.    The Court Lacks General Jurisdiction Over Sanofi S.A.
          Because It Is Not "At Home" in California**

11

12        This Court lacks general jurisdiction over sanofi S.A., a French corporation

13   with its principal place of business in France.  A court's exercise of jurisdiction over a

14   defendant exposes the defendant "to the State's coercive power, and is therefore

15   subject to review for compatibility with the Fourteenth Amendment's Due Process

16   Clause." *Goodyear*, 131 S. Ct. at 2850.  In this way, the Due Process Clause under

17   the Fourteenth Amendment "sets the outer boundaries of a state tribunal's authority to

18   proceed against a defendant." *Id.* at 2853.

19        In *Daimler AG v. Bauman*, the Supreme Court substantially narrowed and

20   clarified the standard for a court to exercise general jurisdiction over a corporation.  It

21   held that the Due Process Clause limits the exercise of general jurisdiction over non-

22   resident corporations to instances where the defendant's "affiliations with the [forum]

23   state are so 'continuous and systematic' as to render [it] essentially at home in the

24   forum state." *Daimler AG v. Bauman* 134 S. Ct. 746, 761 (2014) (quoting *Goodyear*,

25   131 S. Ct. at 2851).  According to the Supreme Court, the paradigmatic locations

26   "where general jurisdiction is appropriate over a corporation are its place of

27   incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059,

28

                                          11

1069 (9th Cir. 2015) (citing *Daimler*, 134 S.Ct. at 760). Only in an exceptional case is general jurisdiction available elsewhere. *Daimler*, 134 S.Ct. at 761 n.19.[4]

This Court lacks general jurisdiction over sanofi S.A. It is undisputed that sanofi S.A. is a French corporation with its principal place of business in France. *See* Terrazas Decl. ¶¶ 2–3; *see* Compl. ¶ 7. Accordingly, under the Supreme Court's decision in *Daimler*, sanofi S.A. is at home in France, not California. Therefore, the Court lacks general jurisdiction over sanofi S.A.

## 2. The Court Lacks Specific Jurisdiction Over Sanofi S.A. Because Plaintiff's Alleged Causes of Action Do Not Arise from Sanofi S.A.'s California Contacts

Plaintiff's Complaint does not support a finding that her causes of action arose from sanofi S.A.'s <u>contacts with California.</u> As a result, this Court does not have specific jurisdiction over sanofi S.A. with respect to her causes of action.

A court may exercise specific jurisdiction over a foreign defendant if its contacts with the forum give rise to the cause of action. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). The decisive question is "whether the cause of action arises out of or has a substantial connection with that activity." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958)). In determining whether a non-resident defendant may be subjected to specific jurisdiction, the Ninth Circuit has established a three-part test to evaluate the nature and quality of a defendant's contacts:

---

[4] In *Daimler*, the Supreme Court identified only one exceptional case, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952). In *Perkins*, the Supreme Court held that Ohio Courts had general jurisdiction over a nonresident Philippine corporation even though the corporation was incorporated in the Philippines and had its principal place of business there. The Philippine corporation's president was forced to conduct business in Ohio because Japanese wartime occupation of the Philippines halted all company operations in the Philippines. The Supreme Court observed that because business activity in the Philippines was suspended, "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 134 S. Ct. at 756 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n. 11 (1984)). The Court also noted that these bases have the benefit of identifying "unique" and "easily ascertainable" forums that provide plaintiffs with "one clear and certain forum in which a corporate defendant may be sued." *Daimler*, 134 S. Ct. at 760.

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Gordy v. Daily News, L.P.*, 95 F.3d 829, 831-32 (9th Cir. 1996).

Sanofi S.A. has not purposely availed itself of the privilege of doing business in California. *See* Terrazas Decl. ¶ 30. Sanofi S.A. has no facilities in California, owns no property in California, is not registered to do business in California, and most importantly, does not market or sell Taxotere® in California, or anywhere else in the United States. *Id.* ¶¶ 5, 7, 26.[5] To the contrary, it is Defendant sanofi-aventis U.S. LLC, which is headquartered in New Jersey and has thousands of U.S.-based employees, that is responsible for the marketing, selling, and conducting regulatory activities associated with Taxotere® in the United States. Unlike sanofi S.A., sanofi-aventis U.S. LLC is the holder of the NDA for Taxotere® and is responsible for communicating with the FDA regarding the product, including its safety profile and its label—the same label that Plaintiff now asserts was inadequate and upon which her entire lawsuit is premised. Thus, while the Court may well have jurisdiction over sanofi-aventis U.S. LLC, sanofi S.A. does not have even minimal contacts with California, let alone "suit-related" contacts warranting an exercise of specific personal jurisdiction.[6]

---

[5] Sanofi S.A. specifically "certifies annually to tax authorities in the United States that it was not, during the preceding year, 'engaged in a trade or business in the United States.'" Terrazas Decl. ¶ 10.

[6] The Supreme Court of the United States recently granted certiorari in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, No. 16-466, 2017 WL 215687 (U.S. Jan. 19, 2017). In *Bristol-Myers Squibb Co.*, 661 plaintiffs were joined in a single, California state court action, claiming they had been injured by ingesting Plavix, a pharmaceutical drug. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 2016 WL 5904964, *5 (U.S. Oct. 7, 2016). Only 86 of the 661 plaintiffs lived in California, and the remaining 575 plaintiffs neither lived in California nor sustained any injury there. *Id.* Moreover, Bristol-

13

Plaintiff does not meaningfully dispute this. Aside from a few conclusory allegations that allege vague and generalized contacts by sanofi S.A. with California, Plaintiff alleges only that sanofi S.A.—acting through sanofi-aventis U.S. LLC— purposefully availed itself of the forum. *See* Compl. ¶ 14. Specific jurisdiction, however, is determined on a defendant-by-defendant basis. Each defendant's contacts with the forum must be analyzed individually and each defendant's suit-related conduct in the forum must give rise to Plaintiff's causes of action on their own. Here, there are no well-pled jurisdictional facts in Plaintiff's Complaint establishing that Plaintiff's causes of action arose from any suit-related contacts with California by sanofi S.A. (as opposed to the separate and U.S.-based Defendant sanofi-aventis U.S. LLC). Absent an exceptional showing of alter-ego and/or agency, therefore, Plaintiff cannot impute sanofi-aventis U.S. LLC's California contacts onto sanofi S.A.

### 3. The Court Does Not Have Personal Jurisdiction Over Sanofi S.A. Under An Alter-Ego or Agency Theory

It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for purposes of establishing general or specific personal jurisdiction. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citations omitted). However, there are two exceptions to this rule: (1) a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or (2) where the subsidiary acts as the general agent of the parent. *Id.* Neither exception applies here.

Sanofi-aventis U.S. LLC is not an alter ego of sanofi S.A. "To demonstrate that a nonresident company is the alter ego of an entity with a presence in the forum, such that the latter's jurisdictional contacts are properly imputed to the former, plaintiff

Myers Squibb ("BMS") was neither incorporated nor headquartered in California and none of the Plavix at issue was manufactured in California. *Bristol-Myers Squibb Co. v. Superior Court*, 1 Cal. 5th 783, 788-89 (Aug. 29, 2016). Notwithstanding these facts, the Supreme Court of California held that it had specific personal jurisdiction over BMS as to all of the plaintiffs' claims.

14

must make a *prima facie* showing (1) that there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist, and (2) that failure to disregard the separate identities of the two would result in fraud or injustice." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 987-88 (C.D. Cal. 2013) (citing *Harris Rutsky & Co.,* 328 F.3d at 1134). Plaintiff must also show that the parent exercises so much control over the subsidiary that it "render[s] the latter [a] mere instrumentality of the former." *Id.* (quoting *Harris Rutsky*, 328 F.3d at 1135).

Sanofi-aventis U.S. LLC is also not the agent of sanofi S.A. To establish agency, a plaintiff must show the services being performed by the subsidiary are of special importance to the parent. *Barantsevich*, 954 F. Supp. 2d at 984 (citing *Bauman,* 644 F.3d at 920). Specifically, the plaintiff must show: (1) that the subsidiary "functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services," and (2) that the parent corporation has a right to control the subsidiary's activities. *Id.* The ultimate question is whether, "in the truest sense," the subsidiary's presence substitutes for the presence of the parent. *Id.* (quoting *Unocal Corp.*, 248 F.3d at 929).

In her Complaint, Plaintiff alleges sanofi-aventis U.S. LLC is a wholly-owned subsidiary of sanofi S.A. Compl. ¶ 17. Plaintiff claims that because sanofi S.A. owns 100% of its shares or financial interest, sanofi S.A. "controls and directs its operations." *Id.* While it is true that sanofi S.A. indirectly owns 100% of the voting interest in sanofi-aventis U.S. LLC, *see* Terrazas Decl. ¶¶ 21– 22, it is well settled that the mere ownership of a subsidiary (even 100% ownership) does not support a finding of jurisdiction. *See, e.g.*, *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 542 (2000) ("As a practical matter [to establish an agency relationship], the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's

day-to-day operations in carrying out that policy."); *see also Modesto City Sch. v. Riso Kagaku Corp.*, 157 F. Supp. 2d 1128, 1134 (E.D. Cal. 2001) (noting the importance of day-to-day control with reference to establishing jurisdiction over parent of an autonomous manufacturer based on agency); *Barantsevich*, 954 F. Supp. 2d at 987-88 (rejecting personal jurisdiction because plaintiff failed to meet his burden of establishing an alter ego relationship between defendants); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1188 (C.D. Cal. 1998) (same).

If a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parent acts, or nothing more than an incorporated department of the parent, the subsidiary will be deemed to be the alter ego or agent of the parent. *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 982–83 (S.D. Cal. 2014) (quotation omitted). This degree of control "must be over and above that to be expected as an incident of the parent's ownership of the subsidiary." *Id.* Therefore, the mere fact that sanofi S.A. owns 100% of the membership and voting interest in sanofi-aventis U.S. LLC is not sufficient to establish that it dominates the activities of sanofi-aventis U.S. LLC. Plaintiff's speculation that sanofi S.A.'s ownership interest in sanofi-aventis U.S. LLC automatically translates to complete control over sanofi-aventis U.S. LLC despite the complete lack of facts demonstrating such control cannot be used as a basis for establishing personal jurisdiction.

The remaining factors, many of which Plaintiff does not even address in her Complaint, also undercut Plaintiff's alter ego and agency theories. As Ms. Terrazas states in her declaration:

- Sanofi-aventis U.S. LLC and sanofi S.A. do not have common directors or officers. Terrazas Decl. ¶ 12.

- Sanofi-aventis U.S. LLC is adequately capitalized. *Id.* ¶ 15.

- Sanofi-aventis U.S. LLC is an independent corporate entity with its own assets. *Id.* ¶¶ 11, 15.

16

- Sanofi-aventis U.S. LLC does business with numerous companies throughout the United States, not just sanofi S.A. *Id.* ¶ 14.

- Sanofi S.A. does not pay the salaries, expenses or losses of sanofi-aventis U.S. LLC. *Id.* ¶ 20.

- In the papers of sanofi S.A., and in the statements of its officers, sanofi-aventis U.S. LLC is referred to as a subsidiary and not a department or division. *Id.* ¶ 21.

- Sanofi-aventis U.S. LLC members and executives act independently in the interest of the subsidiary sanofi-aventis U.S. LLC. *Id.* ¶ 13.

- Sanofi-aventis U.S. LLC maintains the required corporate formalities for a limited liability company. *Id.* ¶ 19.

Given the remote nature of the relationship between sanofi S.A. and sanofi-aventis U.S. LLC, Plaintiff has not, and cannot, establish personal jurisdiction under alter ego and agency theories.

### 4. Plaintiff's Remaining Allegations are Either Conclusory, and Thus Not Entitled to a Presumption or Truth, or They are Irrelevant

Here, the bulk of Plaintiff's purported jurisdictional allegations are no more than legal conclusions masquerading as factual allegations. Specifically, Plaintiff alleges that all "Sanofi Defendants acted jointly at all relevant times," and thus, "any individuality and separateness between them ceased and they became alter-egos of one another." Compl. ¶ 23. Similarly, Plaintiff asserts that sanofi S.A. "directs" the activities of sanofi-aventis U.S. LLC, *id.* ¶ 16, and that Sanofi made "purposefully directed" business efforts in California. *See id.* ¶ 19. Such allegations are conclusory and not entitled to a presumption of truth. *See Sefton v. Jew*, 201 F. Supp. 2d 730, 743 (W.D. Tex. 2001) ("A conclusory statement that [a CEO] and [his company] are alter egos is not sufficient to attribute [the company's]'s contacts with Texas to [the CEO]."); *In re Lyondell Chem. Co.*, 543 B.R. 127, 146 (S.D.N.Y. 2016) ("The conclusory allegation in the Complaint that 'upon information and belief, [the corporate subsidiary] was operated as a mere department of both [the parent company]

17

1 and [its] shareholders' is insufficient to make a *prima facie* showing of jurisdiction.").
2 The Court should disregard these boilerplate and meaningless allegations.

3      Elsewhere in the Complaint, Plaintiff contends that sanofi S.A. is a holding
4 company with more than 400 subsidiaries. Compl. ¶ 13. This fact undercuts
5 Plaintiff's jurisdictional claim rather than supporting it. As the accompanying
6 Declaration from sanofi S.A. makes clear, sanofi S.A. is a diversified healthcare
7 company encompassing approximately 350 subsidiaries. *See* Terrazas Decl. ¶ 27.
8 Sanofi S.A.'s numerous individual subsidiaries are engaged in many fields including
9 pharmaceuticals, consumer health care, generics, rare diseases, and vaccines, among
10 others. *Id.* The notion that one holding company could possibly exercise the
11 pervasive control necessary to constitute an alter ego of some 350 often unrelated
12 companies spanning many different fields and industries is untenable and without any
13 concrete factual support in the Complaint.

14      In sum, Plaintiff's formulaic assertions of alter-ego and agency theories amount
15 to nothing more than an attempt to confuse the independent contacts and activities of
16 each of the multiple named Defendants in an effort to impute the contacts of U.S.-
17 based sanofi-aventis U.S. LLC on to the French corporation sanofi S.A. Such
18 allegations are meritless and should be rejected.

19 **V.    CONCLUSION**

20      For the foregoing reasons, Plaintiff failed to serve sanofi S.A. properly with the
21 Summons and Complaint, and Plaintiff's claims should be dismissed. In addition,
22 Plaintiff failed to allege sufficient facts to establish this Court's personal jurisdiction

23

24

25

26

27

28

over sanofi S.A., and for this separate and independent reason, Plaintiff's claims against sanofi S.A. should be dismissed.

Dated:  March 10, 2017

Respectfully submitted,

SHOOK HARDY & BACON L.L.P.

By: */s/ Amir M. Nassihi*
    Amir M. Nassihi

Attorneys for Specially
Appearing Defendant sanofi S.A.