**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                       SECTION "N" (5)

THIS DOCUMENT RELATES TO
Case #2:16-cv-17731

---

## DEFENDANT SANOFI-AVENTIS U.S. LLC'S OPPOSITION
## TO PLAINTIFFS' MOTION TO CERTIFY CLASS

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii

LIST OF EXHIBITS ........................................................................................................ vi

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL ARGUMENT .......................................................................................... 5

      A.     CLASS CERTIFICATION STANDARDS ..................................................5

      B.     PLAINTIFFS' COMPLAINT DOES NOT SUFFICIENTLY PLEAD CLASS ALLEGATIONS UNDER L.R. 23.1.............................................7

      C.     PLAINTIFFS HAVE ADDITIONALLY FAILED TO SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23 ..................................................8

            1.     Commonality.......................................................................................... 8

            2.     Typicality ............................................................................................. 10

            3.     Adequacy ............................................................................................. 11

            4.     Predominance....................................................................................... 13

            5.     Superiority ........................................................................................... 19

III.    CONCLUSION................................................................................................... 20

CERTIFICATE OF SERVICE ......................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abraham v. WPX Prod. Prods., LLC*,
    317 F.R.D. 169 (D.N.M. 2016)...............................................................................................7

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ..............................................................................................17

*Altier v. Worley Catastrophe Response,*
    LLC, 2011 WL 3205229 (E.D. La. July 26, 2011).......................................................13, 19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................................12, 13

*Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc.*,
    2013 WL 6072702 (E.D. La. Nov. 18, 2013) ...........................................................9, 13, 17

*Benner v. Becton Dickinson & Co.*,
    214 F.R.D. 157 (S.D.N.Y. 2003) ...........................................................................................7

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ..............................................................................................12

*Brandner v. Abbott Laboratories, Inc.*,
    2012 WL 195540 (E.D. La. Jan. 23, 2012)..............................................................14, 16, 17

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ..............................................................................................6, 19

*Coleman v. Sears Home Improvement Prods., Inc.*,
    2017 WL 1064965 (E.D. La. Mar. 20, 2017) .......................................................................13

*Corley v. Entergy Corp.*,
    220 F.R.D. 478 (E.D. Tex. 2004).........................................................................................17

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
    829 F.3d 370 (5th Cir. 2016) .........................................................................................15, 17

*Ditcharo v. United Parcel Service*,
    2009 WL 3199167 (E.D. La. Sept. 30, 2009) ........................................................................8

*Foster v. St. Jude Med., Inc.*,
    229 F.R.D. 599 (D. Minn. 2005).......................................................................................9, 19

*Gasoline Prods. Co. v. Champion Refining Co.*,
    283 U.S. 494 (1931) ...........................................................................................................20

*Haley v. Merial, Ltd.*,
   292 F.R.D. 339 (N.D. Miss. 2013)......................................................................................9, 18

*In re Am. Comm'l Lines, LLC*,
   2002 WL 1066743 (E.D. La. May 28, 2002)......................................................6, 7, 12, 15, 20

*In re Am. Med. Sys.*,
   75 F.3d 1069 (6th Cir. 1996) ............................................................................7, 8, 14, 15

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   2017 WL 1421627 (E.D. La. Apr. 21, 2017) ..........................................................................18

*In re Conagra Peanut Butter Prod. Liab. Litig.*,
   251 F.R.D. 689 (N.D. Ga. 2008)...............................................................................................7

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
   2008 WL 5423488 (E.D. La. Dec. 29, 2008)...............................................6, 11, 12, 15, 19, 20

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   194 F.R.D. 484 (D.N.J. 2000) ................................................................................................10

*In re Katrina Canal Breaches Consol. Litig.*,
   258 F.R.D. 128 (E.D. La. 2009)................................................................................18, 19, 20

*In re Panacryl Sutures Prods. Liab. Cases*,
   263 F.R.D. 312 (E.D.N.C. 2009) ....................................................................................14, 16

*In re Phenylpropanolamine (PPA) Products Liab. Litig.*,
   208 F.R.D. 625 (W.D. Wash. 2002) .......................................................................................15

*In re Vioxx Prods. Liab. Litig.*,
   239 F.R.D. 450 (E.D. La. 2006).......................................................7, 11, 12, 14, 15, 17, 20

*Kemp v. Metabolife Int'l Inc.*,
   No. 00-3513, 2002 WL 113894 (E.D. La. Jan. 25, 2002)...................................................7, 14

*Madison v. Chalmette Refining, L.L.C.*,
   637 F.3d 551 (5th Cir. 2011) ...........................................................................................5, 13

*Majoria v. United Parcel Service, Inc.*,
   2008 WL 169776 (E.D. La. Jan. 17, 2008).........................................................................8, 11

*Martin v. Home Depot U.S.A., Inc.*,
   225 F.R.D. 198 (W.D. Tex. 2004) ..........................................................................................10

*McKinney v. Covidien, Inc.*,
   No. 2:12-cv-01242, Doc. 55 (E.D. La. Apr. 25, 2013) .......................................................5, 8

*Shepherd v. Vintage Pharmaceuticals, LLC*,
    310 F.R.D. 691 (N.D. Ga. 2015)................................................................11, 15, 18

*Shular v. LVNV Funding LLC*,
    2016 WL 685177 (S.D. Tex. Feb. 18, 2016) ............................................................11

*Steering Comm. v. Exxon Mobil Corp.*,
    461 F.3d 598 (5th Cir. 2006) ...........................................13, 15, 17, 18, 20

*Stuckenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) ..............................................................9, 10

*Ticknor v. Rouse's Enterprises, LLC*,
    592 Fed. Appx. 276 (5th Cir. Nov. 18, 2014)....................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................6, 9

*Welch v. Atlas Roofing Corp.*,
    2007 WL 3245444 (E.D. La. Nov. 2, 2007) .............................................17, 18

*Willett v. Baxter Intern., Inc.*,
    929 F.2d 1094 (5th Cir. 1991) ...............................................................15

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................7

## RULES

Fed. R. Civ. P. 12 ..................................................................................................5

Fed. R. Civ. P. 23 ............................................2, 5, 6, 8, 9, 10, 11, 19, 20

Local Rule 23.1 ..............................................................................2, 8, 20

## STATUTES

La. Rev. Stat. Ann. § 9:2800.54............................................................14, 16

La. Civ. Code Ann. art. 2520 ..............................................................16

La. Civ. Code Ann. art. 3492 ..............................................................16

## <u>LIST OF EXHIBITS</u>

A.  Plaintiff Fact Sheet, Emily Barre, Plaintiff ID 1097

B.  Plaintiff Fact Sheet Supplemental Answers, Emily Barre, Plaintiff ID 1097

C.  Plaintiff Fact Sheet, Debra Chetta, Plaintiff ID 1411

D.  Plaintiff Fact Sheet, Sheila Matthews, Plaintiff ID 1474

## I.     INTRODUCTION

Sanofi-aventis U.S. LLC markets and sells the prescription chemotherapy agent Taxotere® or docetaxel.[1]  Alleging some unidentified defect in Taxotere's formulation, Plaintiffs Sheila Matthews, Debra Chetta, and Emily Barre seek to represent a proposed class of Louisiana women who have permanent hair loss and other injuries resulting from their use of the drug.  *See* Motion to Certify Class (Doc. 342) ("Motion") at 15, 26.[2]  Specifically, Plaintiffs assert claims under the Louisiana Products Liability Act and for redhibition, and they seek damages for personal harm, emotional distress, past and future medical expenses, past and future psychological counseling and therapy expenses, past and future loss of earnings, and impairment of the quality and enjoyment of life, among other claimed injuries.  Class Action Complaint for Damages, No. 2:16-md-02740, Doc. 1-1 ("Compl."), at ¶¶ II.2, XI.25, XII.11, XIII.10, XIV.9.

But Plaintiffs' formulaic recitation of the elements of class certification, accompanied by only the most scant and passing references to the particular facts and claims at issue in the case at bar, does not come close to satisfying the rigorous and case-specific analysis prescribed by Local

---

[1] Plaintiffs have also named Sanofi S.A. and Aventis Pharma S.A. as defendants.  Those entities have filed a motion to dismiss for lack of personal jurisdiction, *see In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740, Doc. 346 (Apr. 28, 2017), and they do not appear here as part of this opposition.

[2] In contrast, Plaintiffs' complaint defines the putative class as:

> All persons domiciled of and/or within the State of Louisiana, except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels, who sustained legally cognizable injuries and/or damages, including but not limited, economic and non-economic damages, harms, and losses, and including but not limited to: serious and dangerous side effects; severe personal injuries that are permanent and lasting in nature; past and future medical expenses; past and future psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life as a result of the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

Class Action Complaint for Damages, No. 2:16-md-02740, Doc. 1-1 ("Compl."), at ¶ II.2.

Rule 23.1 and Federal Rule of Civil Procedure 23. This should come as no surprise, however, given the well-nigh universal acceptance that personal injury cases like this one are particularly ill-suited for class treatment. Indeed, issues with respect to alleged product defectiveness, injuries, causation, and damages in such cases are highly individualized, defeating findings of commonality, typicality, adequacy, predominance, and superiority that are required under Rule 23.

Here, too, the members of Plaintiffs' putative class are anything but homogenous. Each individual has had a unique experience with Taxotere®; there is no evidence common to all class members that is sufficient to prove the elements of Plaintiffs' substantive claims with respect to the class as a whole or to demonstrate damages for every single class member. Plaintiff Barre, for example, is unsure whether she was treated with Taxotere® or simply another docetaxel manufactured by a different manufacturer, not sanofi-aventis U.S. LLC,[3] requiring collection and review of additional individual medical records. Regardless, she contends that she underwent chemotherapy treatment with several other agents during a six-month period in 2015,[4] and that she first experienced hair loss after treatment with those other agents.[5] She claims to have thinning or loss of hair on her scalp and other parts of her body.[6] She seeks damages for mental or emotional harm,[7] along with out-of-pocket expenses of approximately $2,600 for wigs, hair

---

[3] Plaintiff Fact Sheet, Emily Barre, Plaintiff ID 1097 (hereinafter "Barre PFS") (attached as Ex. A), p. 6.

[4] *Id.*, p. 6, 12-13.

[5] *Id.* p. 19.

[6] *Id.* p. 15-16.

[7] *Id.* p. 17.

regrowth products, and titanium eyeglasses in response to headaches caused by wearing wigs.[8] She does not seek medical expenses or damages for lost wages or lost earning capacity.[9]

Plaintiff Debra Chetta, in contrast, claims to have been treated with brand-name Taxotere®—not any of its generic equivalents—in 2013.[10]  Her dosage and number of treatment cycles allegedly differ from those of Plaintiff Barre.[11]  Both women, however, contend that they were administered other chemotherapy agents, though those agents were unique to each individual.[12]  Plaintiff Chetta claims to have thinning or loss of hair on her scalp and body, although she describes it differently than Plaintiff Barre.[13]  Plaintiff Chetta also contends that she first experienced that hair loss after being administered Taxotere®, whereas Plaintiff Barre experienced it after a different chemotherapy drug.[14]  Finally, Plaintiff Chetta seeks damages for mental or emotional harm, medical costs associated with hair restoration dermatology, and out-of-pocket expenses of approximately $790 for hair growth and thickening products.[15]  Like Plaintiff Barre, she does not seek damages for lost wages or lost earning capacity.[16]

Plaintiff Sheila Matthews claims that she was treated with Taxotere® in 2005 and 2009.[17] Her dosage allegedly differed from both Plaintiff Chetta and Plaintiff Barre.[18]  Plaintiff

---

[8] *Id.* p. 18; Plaintiff Fact Sheet Supplemental Answers, Emily Barre, Plaintiff ID 1097 (attached as Ex. B), ¶ 9.

[9] Barre PFS at p. 18.

[10] Plaintiff Fact Sheet, Debra Chetta, Plaintiff ID 1411 (hereinafter "Chetta PFS") (attached as Ex. C), p. 6, 13.

[11] *Compare id.* p. 13 (6 cycles, 80 mg dosage) *with* Barre PFS at p. 13 (4 cycles, 100 mg / 1.86 m2 dosage).

[12] *Compare* Chetta PFS p. 12 (Carboplatin (Paraplatin)) *with* Barre PFS p. 12 (Cyclophosphamide (Neosar); Doxorubicin (Adriamycin, Doxil)).

[13] *Compare* Chetta PFS p. 15-16 *with* Barre PFS pp. 15-16.

[14] *Compare* Chetta PFS p. 19 *with* Barre PFS p. 19.

[15] Chetta PFS p. 18-19, 23

[16] *Id.* p. 18.

[17] Plaintiff Fact Sheet, Sheila Matthews, Plaintiff ID 1474 (hereinafter "Matthews PFS"), Ex. D, p. 6, 12.

[18] *Compare id.* p. 12 (10 cycles, 120 mg / 135 mg dosage) *with* Chetta PFS p. 13 (6 cycles, 80 mg dosage) *and* Barre PFS at p. 13 (4 cycles, 100 mg / 1.86 m2 dosage).

Matthews also contends that other chemotherapy drugs were part of her 2009 treatment (but not her 2005 treatment), and she lists the same drugs for that 2009 treatment as does Plaintiff Barre (but not Plaintiff Chetta).[19]  She says that she has experienced hair loss on her scalp and body, but describes it differently than both Plaintiff Barre and Plaintiff Chetta.[20]  Also unlike either of her putative co-Plaintiffs, it is unclear what damages Plaintiff Matthews seeks, as she claims no lost wages, no mental or emotional harm, no medical expenses, and no out-of-pocket costs.[21]

Clearly, then, a host of individual issues permeate Plaintiffs' underlying claims.  For example, each putative class member:

- Experienced differing pre-existing health conditions;[22]
- Received different diagnoses and prognoses;
- Underwent varying courses of treatment with different combinations of drugs;
- Was prescribed different quantities and concentrations of Taxotere®;
- Exhibited varying degrees of awareness of, and aversions to, treatment risks;
- Received different advice from his or her treating physician(s);
- Relied on the treating physicians' advice in varying degrees and respects;
- Responded to Taxotere® and other treatment in unique ways, with different degrees of success;
- Experienced differing post-treatment events; and
- Incurred unique, personalized damages (if any), from emotional harm to economic losses.

Plaintiffs' motion ignores these realities, providing no explanation for how each individual's claim and damages can be proven with common evidence.  Indeed, Plaintiffs' complaint and motion for class certification are presented in nearly the same generic fashion as those made in a prior case in which this Court appropriately rejected class treatment.[23]  Because

---

[19] *Compare id.* p. 11 ((Cyclophosphamide (Neosar); Doxorubicin (Adriamycin, Doxil)) *with* Barre PFS p. 12 (Cyclophosphamide (Neosar); Doxorubicin (Adriamycin, Doxil)).

[20] *Compare* Matthews PFS p. 14-15 *with* Chetta PFS p. 15-16 *and* Barre PFS pp. 15-16.

[21] Matthews PFS p. 14, 17-18.

[22] *See, e.g.,* Barre PFS p. 19 (low iron levels); Chetta PFS p. 20 (thyroid condition); Matthews PFS p. 18-19 (none).

[23] *See McKinney et al. v. Covidien, Inc.*, No. 2:12-cv-01242-KDE-DEK (E.D. La.), Motion to Certify Class (Doc. 9, Aug. 15, 2012); Amended Complaint (Doc. 37, Feb. 5, 2013).  Given the Court's familiarity with the governing Rule 23 standards and applicability to personal-injury cases, many of the arguments advanced in *McKinney* are similarly presented here.

Plaintiffs again have failed to meet their burden to explain how this personal-injury litigation can be resolved on a classwide basis, class certification should be denied.[24]

## II.  LEGAL ARGUMENT

### A.  CLASS CERTIFICATION STANDARDS

Rule 23(a) sets forth four requirements that plaintiffs must establish in order to proceed as a class.  *See Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 554-55 (5th Cir. 2011) (noting that the party seeking certification bears the burden to demonstrating compliance with Rule 23).   Under 23(a), a class must: "(1) be so numerous that joinder of all members is impracticable [numerosity]; (2) have common questions of fact or law [commonality]; (3) have representative parties with typical claims or defenses [typicality]; and (4) have representative parties that will fairly and adequately protect the interests of the proposed class [adequacy]."  *In re Am. Comm'l Lines, LLC*, 2002 WL 1066743, at *2 (E.D. La. May 28, 2002).  "If the Rule 23(a) criteria are satisfied, the plaintiffs must show that class treatment is appropriate under one of three alternative class categories prescribed by Rule 23(b)."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008).  In this case, Plaintiffs seek certification under Rule 23(b)(3), which requires them to show that common questions of law or fact predominate over individual questions, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  *Id.* at *3.

Class certification is not warranted in every case.  Thus, "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  Part of this "rigorous analysis" entails a review of the merits of Plaintiffs' claims because "the class determination generally involves considerations

---

[24] Sanofi-aventis U.S. LLC reserves the right to challenge the sufficiency of Plaintiffs' complaint under PTO No. 1 and Fed. R. Civ. P. 12.

that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quotations and alterations omitted). *See also id.* at 350 ("Rule 23 does not set forth a mere pleading standard."); *In re Am. Comm'l Lines, LLC*, 2002 WL 1066743, at *2 ("The court may look past the pleadings to the record and any other completed discovery to make a determination as to the class certification issue.").

Given these instructions, courts have long concluded that personal-injury cases— including those in medical products liability litigation—raise a host of individualized issues that preclude class certification.  *See, e.g.*, *In re FEMA*, 2008 WL 5423488, at *16 ("[T]he very nature of a personal injury case is that it is personal (*i.e.*, the alleged injury varies from person to person, as well as what caused or contributed to the alleged injury) [and therefore] individualized issues . . . predominate over common issues."); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 463 (E.D. La. 2006) (denying class certification in personal-injury case against manufacturer of prescription pain reliever); *In re Am. Comm'l Lines, LLC*, 2002 WL 1066743, at *12  (plaintiffs' personal-injury claims "focus . . . almost entirely on facts and issues specific to individuals, rather than as to the class as a whole."); *Kemp v. Metabolife Int'l Inc.*, No. 00-cv-3513, 2002 WL 113894, at *5 (E.D. La. Jan. 25, 2002) (denying class certification as to claims regarding appetite suppressant and noting that "personal injuries are claimed, implicating numerous individual issues of causation, affirmative defenses and damages"); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (affirming denial of class certification involving allegedly defective pacemakers in part because "it is inescapable that many triable individualized issues may be presented [regarding] causation and damages"); *In re Am. Med. Sys.*, 75 F.3d 1069, 1074 (6th Cir. 1996) (certification of class of users of penile implants was improper because "complications . . . may be due to a variety of factors, including surgical error, improper use of

the device, anatomical incompatibility, infection, device malfunction, or psychological problems."); *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 231 (D.N.M. 2016) (given the individualized issues with respect to personal injury claims, "class certification of mass tort claims is now exceedingly rare."); *In re Conagra Peanut Butter Prod. Liab. Litig.*, 251 F.R.D. 689, 698 (N.D. Ga. 2008) (noting "the enormous hurdle" to certification of personal-injury classes given the "significant individualized questions going to liability and the need for individualized assessments of damages."); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 168 (S.D.N.Y. 2003) ("All relevant Court of Appeals and the bulk of relevant district court cases have rejected class certification in products liability cases.") (quotations and alterations omitted).

B.   **PLAINTIFFS' COMPLAINT DOES NOT SUFFICIENTLY PLEAD CLASS ALLEGATIONS UNDER L.R. 23.1**

As an initial matter, however, Plaintiffs' complaint does not satisfy Local Rule 23.1—let alone provide a basis for certification under Fed. R. Civ. P. 23. Rather than set forth any grounds for a finding of adequacy, commonality, and predominance, *see* L.R. 23.1(A)(2)-(4), the complaint essentially parrots those legal standards. *See* Compl. Part II, ¶¶ 2-4. This Court has dismissed similar pleadings under L.R. 23.1 because they only assert that a class should be certified. *See McKinney v. Covidien, Inc.*, No. 2:12-cv-01242, Doc. 55 (E.D. La. Apr. 25, 2013); *Ditcharo v. United Parcel Service*, No. 2:08-cv-03648, 2009 WL 3199167, at *2-3 (E.D. La. Sept. 30, 2009); *Majoria v. United Parcel Service, Inc.*, No. 06-cv-11266, 2008 WL 169776, at *1-2 (E.D. La. Jan. 17, 2008). Moreover, given that Plaintiffs' counsel was also counsel in the *McKinney* action, counsel was presumably aware of the complaint's deficiency in this case. Dismissal of the class allegations should thus be with prejudice. *See Ditcharo*, 2009 WL 3199167, at *2 ("[G]iven the procedural background of this dispute, the Court declines to allow

Plaintiffs an opportunity to amend [to bring the complaint into compliance with Local Rule 23.1].").[25]

### C.   PLAINTIFFS HAVE ADDITIONALLY FAILED TO SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23

But even if the Court accepts Plaintiffs' ill-pleaded complaint, they have failed to demonstrate that their class should in fact be certified.  To the contrary, their motion merely sets forth generalizations about Rule 23, without any corresponding facts or analysis as to why each of their four substantive claims are capable of classwide resolution.  *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 ("Mere repetition of the language of Rule 23(a) is not sufficient.  There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled."); *Foster v. St. Jude Med., Inc.*, 229 F.R.D. 599, 603 (D. Minn. 2005) (denying class certification when plaintiffs' motion was "much like a map that identifies the destination (*i.e.*, the relief) but lacks the directions (*i.e.*, the legal theories)").  The appropriately "rigorous analysis" of the certification standards in light of Plaintiffs' claims demonstrates why certification is wholly inappropriate in this case.

### 1.   Commonality

A class may only be certified if there are one or more issues of law or fact that are common to the class as a whole.  Fed. R. Civ. P. 23(a)(2).  But the commonality requirement demands more from Plaintiffs than a mere recitation of a question that is purportedly common to the class "because any competently crafted class complaint literally raises common questions." *Stuckenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Dukes*, 564 U.S. at 349). Instead, "the claims of every class member must 'depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means the determination of its truth or

---

[25]  Repleading would also be futile.  As explained in Part III.C., class certification is factually and legally inappropriate in this case irrespective of how Plaintiffs have pleaded the certification requirements.

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Dukes*, 564 U.S. at 350).

Here, Plaintiffs simply recite the same litany of purported "common" questions that are insufficient under *Stuckenberg* and *Dukes*.[26]  *See, e.g.*, *Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc.*, No. 11-cv-2777, 2013 WL 6072702, at *5 (E.D. La. Nov. 18, 2013) ("Most of the plaintiffs' proffered common questions fail the test for commonality under *Dukes*."); *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 348 (N.D. Miss. 2013) ("[T]he recitation of questions . . . alone does not satisfy commonality.").  For example, "[w]hether Defendants' conduct violates the Louisiana Products Liability Act," *see* Mot. at 20, is hardly an issue that can be answered on a classwide basis, as liability will turn on individualized proof regarding each class member's decision-making process and personal injuries.  *See also Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 200 (W.D. Tex. 2004) (no commonality, even when all class members owned the allegedly defective products and had a shared interest in resolving questions of liability, because "the individualized nature of [the class members'] claims prevents the simultaneous resolution of all or a significant portion of the potential class's complaints.") (quotations omitted).

Similarly, questions regarding whether sanofi-aventis U.S. LLC knew of or warned against Taxotere's alleged risks, *see* Mot. at 20, are also insufficient to demonstrate commonality because the issue is whether Taxotere® in fact caused harm to particular class members.  As one court has explained:

> Resolution of the . . . question of whether the subject [products] are capable of causing the damage alleged by [plaintiffs] does not show commonality . . . [because] the question is not whether [the products] have

---

[26] Plaintiffs further and erroneously cite to pre-*Dukes* case law to argue that the test for both commonality and typicality are "not demanding."  Mot. at 21.  This proposition is no longer good law after *Dukes*.  *See Stuckenberg*, 675 F.3d at 839-40.

> the capacity to cause harm, but rather the highly individualistic inquiry of
> whether [they] did cause harm and to whom.

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 490 (D.N.J. 2000).[27]

Finally, "'[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the *same* injury.'" *Stukenberg*, 675 F.3d at 840 (emphasis added). But the Plaintiffs in this case assert various injuries, from emotional harm to loss of wages to medical expenses. That the named Plaintiffs themselves exhibit unique harm underscores the point. For all of these reasons, commonality is not satisfied in this case.

### 2. Typicality

Rule 23(a)(3) requires the claims or defenses of the class representatives be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement "focuses on the similarities between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *In re FEMA*, 2008 WL 5423488, at *7. To satisfy typicality, "a class representative must be a part of the class and possess the same interest and suffer the same injury as class members." *Id.* A class may not be certified when Plaintiffs make only "conclusory assertion[s] that their claims are typical of those of the class." *Majoria*, 2008 WL 169776, at *1.

Here, the causation and injury elements of Plaintiffs' claims involve various individual issues. There is no question that each of these cases will present different medical histories, different product use histories, different prescriber testimony, different expert opinions (especially on specific causation), and different damages, among other differences.

---

[27] Plaintiffs also mistakenly include a purported common question with respect to unjust enrichment, a claim that is not pleaded in their complaint. Mot. at 20.

Causation in these cases hinges on numerous individual factors: family history, hair care, age and hormonal status, other medical conditions, stress, diet, plaintiff's chemotherapy regimen, and exposure to other drugs.

Contrary to Plaintiffs' blanket assertion that "Plaintiffs and Class Members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law," *see* Mot. at 22, these issues require an examination of evidence on a member-by-member basis. *See In re FEMA*, 2008 WL 5423488, at *8 (finding no typicality because the lawsuit "involves factual variations as to each Plaintiff and proposed class representative which spawn individual issues relating to injury and causation as to each individual"); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 460 (no typicality in a prescription-drug personal-injury case because it involved a vast number of persons who took different medicine dosages at different times and possibly concomitantly with other drugs); *Shular v. LVNV Funding LLC*, 2016 WL 685177, at *11 (S.D. Tex. Feb. 18, 2016) ("Absent evidentiary showing of similarity between his claims and the claims of the putative class members, plaintiff has failed to establish that the legal and remedial theories applicable to his claim would also be applicable to the claims of the class members. Accordingly, plaintiff has failed to establish Rule 23(a)'s typicality requirement."). Moreover, none of the named Plaintiffs claim any damages for lost wages or earning capacity, making their circumstances atypical of those putative class members who do assert such injuries. *See Shepherd v. Vintage Pharmaceuticals, LLC*, 310 F.R.D. 691, 698 (N.D. Ga. 2015) (no typicality when the class representative alleges different injuries than those of other putative class members).

### 3.    Adequacy

The adequacy inquiry seeks to limit the conflicts of interest between the class representatives and other members of the putative class, as well as ensure the zeal and

competency of class counsel.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 460.   Plaintiffs must demonstrate that the class representatives will prosecute the action vigorously, and that their interests are sufficiently similar to those of the class as a whole.  *See In re FEMA*, 2008 WL 5423488, at *9-10. Differences between the named plaintiffs and class members that create conflicts as to their respective interests preclude a determination of adequacy.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).   In this way, the adequacy requirement is linked to the typicality requirement.  *See In re FEMA*, 2008 WL 5423488, at *11 (holding that Plaintiffs' failure to establish typicality also precludes a finding of adequacy); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 460 ("[T]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members.")

In this case, the same differences among putative class members that preclude findings of commonality and typicality also bar a determination of adequacy.  *See In re FEMA*, 2008 WL 5423488, at *11 ("Because the Court finds that the proposed class representatives do not have claims typical of class members' claims, the representatives cannot be said to adequately represent those same members.").  Importantly, "[a]dequacy of the representation of the class cannot be presumed."  *In re Am. Comm'l Lines, LLC*, 2002 WL 1066743, at *9.  Yet Plaintiffs here have failed to put forth sufficient evidence or explanation that would demonstrate the requisite degree of similarities between the proposed class representatives and all other putative class members.  They have likewise not established that the proposed class representatives will be adequately engaged in the litigation.  *See Baricuatro*, 2013 WL 6072702, at *8 (determining that adequacy requirement was not satisfied when "the plaintiffs have pointed the Court to no

evidence whatsoever that any of the three proposed class representatives [will] take an active role in controlling the litigation and prosecuting it in a manner that will protect the interests of all class members."). *See also Coleman v. Sears Home Improvement Prods., Inc.*, 2017 WL 1064965, at *6 (E.D. La. Mar. 20, 2017) (no adequacy when plaintiffs' counsel "displayed a lack of competency in preparing the case on behalf of the class) (quotations omitted).

### 4.    Predominance

The predominance inquiry "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Madison*, 637 F.3d at 555.  This "prevents the class from degenerating into a series of individual trials." *Id.* (quotations omitted).  "To predominate, common issues must constitute a significant part of the individual cases." *Altier v. Worley Catastrophe Response,* LLC, 2011 WL 3205229, at *15 (E.D. La. July 26, 2011) (quotations omitted).  The predominance requirement is a "demanding" standard "because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601-02 (5th Cir. 2006) (quoting *Amchem*, 521 U.S. at 623-24).  Similarly, whether a question is common, and whether common questions predominate, entail "rigorous" analyses. *Id.* (commonality); *Steering Comm.*, 461 F.3d at 603 (predominance).

This case—as with most pharmaceutical or medical device products liability cases—presents a vast array of individualized factual and legal issues that eclipse any claimed common issues and defeat a finding of predominance. *See In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312, 323 (E.D.N.C. 2009) ("Courts have generally found that common questions of fact do not predominate in medical products liability cases.") (citing cases); *Kemp*, 2002 WL 113894, at *3 (E.D. La. Jan. 25, 2002) (in diet supplement case, stating that "product liability class actions generally do not meet the predominance requirement."); *In re Vioxx*, 239 F.R.D. at 461

13

("[C]ourts have almost invariably found that common questions of fact do not predominate in pharmaceutical drug cases."); *In re Am Med. Sys.*, 75 F.3d at 1084-85 ("[I]n medical device products liability litigation . . . the factual and legal issues often do differ dramatically from individual to individual because there is no common cause of injury.").

Each of Plaintiffs' three theories of liability under the LPLA, for example, requires proof that Taxotere® is (1) unreasonably dangerous and (2) is the proximate cause of (3) each putative class member's injuries.  La. Rev. Stat. Ann. § 9:2800.54.  This proof, however, will be unique to each individual.  *See Brandner v. Abbott Laboratories, Inc.*, 2012 WL 195540, at *5 (E.D. La. Jan. 23, 2012) (a determination of specific causation under the LPLA involves individualized issues such as "an individual's family and medical history; age; gender; diet; the timing of ingestion of the product; whether that individual suffered an injury, [and] when the injury occurred," which predominate over any common issues) (alterations omitted).  For example, individualized evidence will be necessary to show that each putative class member was in fact administered Taxotere®,[28] her specific dosage and course of treatment with Taxotere®, the extent to which other chemotherapy drugs were also part of that treatment, and any other risk factors for alopecia.  *In re FEMA*, 2008 WL 5423488, at *11-14 (individual issues regarding exposure and degree of physical injury predominated over any common issues); *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 208 F.R.D. 625, 633 (W.D. Wash. 2002) ("[T]he number of individual questions posed by the proposed classes clearly overwhelm any common ones," such as whether PPA contains a defect and when the defendants should have been aware of an association between any defects and the class members' injuries); *Shepherd*, 310 F.R.D. at 698 (no predominance because "[e]ach plaintiff must show in an individualized manner which

---

[28] Plaintiff Barre, for example, is unsure whether she was treated with Taxotere® or simply another docetaxel manufactured by an entity unrelated to sanofi-aventis U.S. LLC.  *See* Barre PFS at p. 6.

physical symptoms she suffered, her medical history, and whether he use of any allegedly defective product resulted in these physical symptoms"); *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 377 (5th Cir. 2016) (individual questions regarding causation predominated in case involving property damage and emotional harm from flooding); *In re Am. Comm'l Lines*, 2002 WL 1066743, at *12 (individual issues relating to causation and damages, including extent of exposure to the alleged toxin, defeated predominance notwithstanding any common issues concerning the defendant's conduct); *Steering Comm.*, 461 F.3d at 603 (concluding that predominance is lacking because each individual "must meet his or her own burden of medical causation").

In addition, Plaintiffs' failure-to-warn claim hinges on the knowledge of each putative class member's treating physician, as well as the reasons that her physician prescribed Taxotere®. *See Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1098-99 (5th Cir. 1991). This adds another layer of individualized proof that cannot be employed classwide. *Accord In re Am. Med. Sys.*, 75 F.3d at 1085 (no predominance when each class member received different information from his treating physician); *In re Vioxx*, 239 F.R.D. at 461 (holding that plaintiffs' failure-to-warn allegations turn on individualized issues, such the manufacturer's knowledge of the risks of the Plaintiffs' alleged injury, what the manufacturer told physicians and consumers about those risks, what the plaintiffs' physicians knew about these risks, and whether the plaintiffs' physicians would still have prescribed the product had stronger warnings been given); *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. at, 324 (no predominance because "Plaintiffs' failure to warn claims will . . . involve individualized issues such as the nature of each plaintiff's alleged injury, the warning provided with respect to each injury, and the knowledge of each class member's surgeon with respect to the risks of [the product]").

Similarly, Plaintiffs' breach-of-warranty claim requires evidence of: (1) the existence of an express warranty; (2) the falsity of that warranty; (3) the warranty induced the putative class member to use the product; and (4) proximate damage.  *See* La. Rev. Stat. Ann. § 9:2800.58. Again, this calls for individual proof, this time relating to communications between sanofi-aventis U.S. LLC and each putative class member, along with the unique reasons why each putative class member decided to accept treatment with Taxotere®.[29]  And Plaintiffs' claim for redhibition is no more amenable to class treatment.  A redhibitory defect is one that renders the product useless or so diminishes its value that it can be presumed that a buyer would not have bought it or would have bought it at a lesser price, La. Civ. Code Ann. art. 2520, which depends on the effectiveness and side effects of Taxotere® for each putative class member.  *See, e.g.*, *Brandner*, 2012 WL 195540, at *8 (no predominance with respect to claim for redhibition because individual proof is required to show that each class member purchased a defective product).

In addition, affirmative defenses—including whether each putative class member's claim is barred by the statute of limitations—injects more individuality in this case, further demonstrating the lack of predominance.  This individuality is aptly demonstrated by the named Plaintiffs here.  Plaintiff Matthews, for example, claims to have been treated with Taxotere®— and therefore to have suffered injury—as far back as 2005.  *See* Matthews PFS p. 12-13.  Her claims have therefore long been time-barred by Louisiana's one-year statute of prescription.  *See* La. Civ. Code Ann. art. 3492.  The same is true of Plaintiff Chetta, who claims treatment ending in 2013.  *See* Chetta PFS p. 13-14.  But Plaintiff Barre alleges that her treatment occurred as

---

[29] The differences among the named Plaintiffs emphasizes the point: Unlike Plaintiffs Barre and Chetta, Plaintiff Matthews does not claim she ever saw any advertisements or written instructions for Taxotere®.  *Compare* Matthews PFS p. 16 *with* Chetta PFS p. 17 *and* Barre PFS p. 17.

recently as June 2015, potentially bringing her 2016 Complaint within the prescription period. *See* Barre PFS p. 13-14.  However resolved, these questions of timeliness turn on individual inquiries and are necessarily unsuitable for class treatment.  *See Welch v. Atlas Roofing Corp.*, 2007 WL 3245444, at *7 (E.D. La. Nov. 2, 2007) ("[I]ndividual determinations [regarding Louisiana's prescriptive period] would clearly predominate over issues common to the class."); *Corley v. Entergy Corp.*, 220 F.R.D. 478, 487 (E.D. Tex. 2004) ("[A] statute of limitations defense is fact-intensive and individualized.  The presence of this affirmative defense and its varying applicability may defeat predominance and thus preclude class certification.") (citations omitted).

Finally, the scope of alleged injuries and claimed damages in this case are so varied as to further defeat predominance.  *See Baricuatro*, 2013 WL 6072702, at *10 ("[W]hen the issue of damages is brought into the mix, the predominance of individualized issues over common ones is so overwhelming as to be beyond the  bounds of reasonable debate.").  The extent of each putative class member's alleged hair loss, her accompanying emotional harm (if any), the amount of her lost wages or future earning capacity (which hinge on her particular job), the amount any out-of-pocket costs, and the degree of medical expenses she incurred are entirely unique to each putative class member.  Courts have recognized predominance is lacking when individualized inquiries such as these pervade the calculation of damages.  *See, e.g.*, *Brandner*, 2012 WL 195540, at *5 (individual issues with respect to emotional damages predominate over any common ones); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1998) (damages for emotional harm "implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy."); *Steering Comm'ee*, 461 F.3d at 602 (damages for emotional and other intangible injuries implicate subjective and individualized

proof, and contribute to a lack of predominance); *In re Vioxx*, 239 F.R.D. at 462 (damages for emotional harm weighs against a finding of predominance); *Crutchfield*, 829 F.3d at 378 (economic damages could not be calculated using a single formulaic approach, and the fact that emotional distress damages were also sought further undermined a determination of predominance); *Steering Comm'ee*, 461 F.3d at 602 (no predominance when "in addition to the personal injury claims, separate types of proof would be necessary for the [economic loss] claims."); *In re Katrina Canal Breaches Consol. Litig.*, 258 F.R.D. 128, 134-36 (E.D. La. 2009) (putative class seeking damages for personal injury, emotional harm, and loss to personal property did not satisfy predominance requirement). *Accord In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, No. 2:09-md-02047, 2017 WL 1421627, at *15-20 (E.D. La. Apr. 21, 2017) (distinguishing drywall products liability case from other personal injury products liability class actions, and noting that property damage could be proved classwide via statistical modeling).

Damages claimed under Plaintiffs' redhibition theory are likewise incapable of class resolution. Plaintiffs seek a refund of the purchase price of Taxotere®, including any insurance co-payments. Given the unique proof required in support of these alleged damages, any common issues cannot be said to predominate. *Welch v. Atlas Roofing Corp.*, No. 2:07-cv-2711, 2007 WL 3245444, at *6 (E.D. La. Nov. 2, 2007) (because redhibition entitles a plaintiff to either rescission or a reduction of the purchase price, depending on the product's usefulness to that particular plaintiff, individual damages analysis defeat a finding of predominance). *Accord Haley*, 292 F.R.D. at 356, 360 (individualized proof regarding price paid and whether class members received the benefit of their bargain defeat a finding of predominance); *Shepherd*, 310 F.R.D. at 701 (same, regarding pharmaceutical product).

As this Court has explained:

> Each [putative class member] has suffered an individual physical injury that is specific to that particular individual, precluding the predominance of issues relating to the Plaintiffs themselves.  Also, the personal injury claims among Plaintiffs vary greatly.  Considering the foregoing, this Court concludes that Plaintiffs' claims will, to a significant degree, be individualized with respect to causation and will include individual issues of exposure, susceptibility to illness, and types of physical injuries.

*In re FEMA*, 2008 WL 5423488, at *13.  For all these reasons, Plaintiffs have not satisfied their burden to demonstrate that any common issues predominate over individual ones.

### 5.    Superiority

Rule 23(b)(3) requires "that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."  Four nonexclusive factors are relevant to this analysis: the interest of class members in individually controlling the litigation; the extent of any litigation already commenced by members of the class; the desirability of concentrating the litigation in this particular forum; and the likely difficulties in managing the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Again, Plaintiffs offer nothing but conclusory statements in support of this requirement, which is insufficient to satisfy their burden.  *See Altier*, 2011 WL 3205229, at *16 ("[P]urely conclusory assertions" that a class action "would not present any managerial or administrative complexities" is insufficient to demonstrate superiority); *Foster v. St. Jude Medical, Inc.*, 229 F.R.D. 599, 606 (D. Minn. 2005) (similar "hyperbole" from plaintiffs was insufficient to establish superiority; plaintiffs had failed to include "any specificity of how class adjudication is the superior method in this particular case").

Regardless, it is clear that superiority is in fact lacking here.  First, "[t]he most compelling rationale for finding superiority in a class action – the existence of a negative value suit – is missing in this case."  *Castano*, 84 F.3d at 748; *Ticknor v. Rouse's Enterprises, LLC*,

592 Fed. Appx. 276, 279 (5th Cir. Nov. 18, 2014); *In re Katrina Canal Breaches Conosl. Litig.*, 258 F.R.D. at 142 (noting that individuals have a high interest in controlling their the litigation of personal-injury claims).  Instead, class members assert personal injury and lost wages claims that can be pursued on individual bases.

Second, a class trial on the merits would raise intractable manageability problems given the plethora of individual issues necessary to establish each class member's claims.  *See Steering Comm'ee*, 461 F.3d at 704-05 ("[T]he predominance of individual issues relating to the plaintiffs' claims . . . detracts from the superiority of the class action device in resolving those claims."); *In re FEMA*, 2008 WL 5423488, at *15 (same); *In re Vioxx*, 239 F.R.D. at 463 (same); *In re Katrina Canal Breaches Colso. Litig.*, 258 F.R.D. at 142 (the need to individually provide causation and damages precludes a finding of superiority).  And Plaintiffs' suggestion that individual issues can be resolved in subsequent follow-up proceedings is hardly a panacea.  *See* Mot. at 24.  The Seventh Amendment entitles parties to have facts and issues decided by one jury and prohibits a second jury from re-examining those facts and issues.  *Gasoline Prods. Co. v. Champion Refining Co.*, 283 U.S. 494, 499-501 (1931); *see also In re FEMA*, 2008 WL 5423488, at *15 (noting this concern in finding a class action was not the superior method of adjudication); *In re Am. Comm'l Lines*, 2002 WL 1066743, at *13 (same).

## III.   CONCLUSION

Plaintiffs have failed to adequately plead the circumstances supporting class certification under L.R. 23.1, let alone satisfy the rigorous burden imposed by Fed. R. Civ. P. 23.  Innumerable individual inquiries regarding alleged defectiveness, causation, injury, and damages swamp common issues—to the extent any even exist in this case—which preclude findings of typicality, adequacy, predominance, and superiority.  For all of the foregoing reasons, class certification is entirely inappropriate here.  Plaintiffs' motion should be denied.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE  URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
SHOOK, HARDY& BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone:  816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

**Counsel for sanofi-aventis U.S. LLC**

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 12, 2017, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

<u>/s/ *Douglas J. Moore*</u>

22