# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 2740 |
| | : | SECTION "N" (5) |
| THIS DOCUMENT RELATES TO ALL CASES | : : : : | HON. KURT D. ENGELHARDT |

### FIRST REQUESTS FOR PRODUCTION TO DEFENDANT AVENTIS PHARMA S.A.

TO:    Aventis Pharma S.A.
       Through liaison counsel of record
       Douglas Moore
       IRWIN FRITCHIE URQUHART & MOORE LLC
       400 Poydras Street
       Suite 2700
       New Orleans, Louisiana  70130

Pursuant to Rules 34 of the Federal Rules of Civil Procedure, Plaintiffs, through undersigned counsel, propound the following First Requests for Production to Defendant Aventis Pharma S.A. ("Defendant").

Answers to these Requests for Production, or objections in lieu thereof, shall be served within thirty days after service of this document.

Under Federal Rule of Civil Procedure 26(e), these Requests for Production are continuing in nature.  Defendant, therefore, is required to supplement their responses as new or different information becomes available.

### DEFINITIONS

1. "Documents" as used herein is coextensive with the meaning of the terms "documents", "electronically stored information", and "things", as used in Federal Rule of Civil

Procedure 34 and shall have the broadest possible meaning and interpretation ascribed to those terms under Rule 34.

2. Consistent with the above definition, the term "document" shall include electronic data, electronic databases, electronic media, and any written, printed, typed, photo static, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, tests, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications (as defined below) of any type (including video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, PowerPoints, tapes, discs, data cells, drums, printouts, all other compiled data that can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether

produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody, or control of you or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

3. "Taxotere" is used to refer, as broadly as possible, to docetaxel (TAXOTERE®), a chemotherapy agent used in the treatment of cancer.

4. "You", "your", and "Defendant", refer to Aventis Pharma S.A. as well as all parents, subsidiaries, affiliates, partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors, or other representatives, including all corporations and affiliated entities. The terms "you", "your", and "Defendant" also include all predecessor business entities (including Rhone-Poulenc, Rhone-Poulenc Rorer S.A. Aventis S.A., Aventis Pharmaceuticals, Inc., Aventis Pharmaceuticals Inc., and Aventis Inc.), as well as the predecessor's parents, subsidiaries, affiliates, partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors, or other representatives. The terms "you", "your", and "Defendant" also include all domestic or foreign subsidiaries, affiliates, or parent companies, as well as any respective parents, subsidiaries, affiliates, partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives.

5. "Communication" means and refers to any oral, written, spoken, or electronic transmission of information including meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between you or between you and any other person or entity.

6.  "Relating to", "relate to", "relating", "referring to", "refer to", "regarding", "concerning", or "concern" means evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

7.  "Study" includes any research, analysis or examination, inspection or investigation (including clinical investigations), or other activity by which data or information is acquired for the purpose of analysis or understanding. The term is intended to include studies that have been completed and studies still in progress regardless of whether such activity took place within or outside the United States. It should include information and data acquired from such study regardless of the stated or original purpose of the study.

8.  "Test" includes every kind of examination, experiment, scientific analysis, or other inquiry or undertaking seeking to develop or acquire information or data. It should include information and data acquired from such tests regardless of the stated or original purpose of the test. The term is intended to include tests that have been completed and tests still in progress regardless of whether such activity took place within or outside the United States. The term "test" is often used in conjunction with the term "study" defined herein. A request for information concerning a test or study should be construed as including the following documents: the protocol for the conduct of the test or study; a statement of the conditions under which the test or study was intended to be conducted; a statement of the conditions under which the test or study was actually conducted;

documents requesting that the test or study be performed; documents ordering that the test or study be performed; documents containing the original raw test or study data; documents containing the written test or study report and all attachments thereto; documents containing the test or study specifications, including the pass-fail criteria; every summary, abstract, analysis, compilation, including evaluation or interpretation of the test or study; and all investigators or entities, universities, and laboratories involved in the testing.

9. "FDA" means the United States Department of Health & Human Services, United States Food & Drug Administration, any committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof.

10. "Foreign Regulatory Body" means any organization, including the regulatory bodies or authorities or organizations, in any country (or other jurisdictional entity such as the European Union) other than the United States, that regulates medical drugs such as Taxotere.

11. "Identify" or "identity" with respect to natural persons or entities means to give, to the extent known, the person or entity's full name, present or last known address, telephone numbers, and email addresses. When referring to a natural person, the present or last known place of employment should also be provided. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. When referring to documents, the term "identify" or "identity" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s); (v) its present location; (vi) the name and

address of its custodian; (vii) for documents stored electronically, such as in a computer, PDA, or other type of portable electronic device, provide the location of the electronic device on which the document is located, the computer program by which the document was created, and the computer program on which the document currently exists; and (viii) the Bates stamp number assigned to such document.

12. "Possession, custody, or control" mean and refers to any documents in your possession, custody, or control. A document is deemed to be in your "possession, custody, or control" if it is in your physical custody or if it is in the physical custody of another person or entity and you: (a) own such document in whole or in part; (b) have a right by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you have sought to do so. Such documents shall include documents that are in the custody of your attorney(s), employees, staff, representatives, or agents.

13. "Person" means any natural person, as well as any business, corporate, legal, or governmental entity or association.

14. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The use of the singular includes the plural and vice versa.

16. Unless otherwise indicated, the relevant time period (sometimes referred to herein as the "Relevant Time Period") for the information sought for each request is January 1, 1997 to the present.

## **INSTRUCTIONS**

1. Each request hereinafter set forth not only calls for your knowledge, but also for all knowledge that is available to you by reasonable inquiry, including inquiry of your employees, representatives, agents, and attorneys.

2. If you cannot answer the following demands in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions and to the best of your knowledge the names, addresses, and telephone numbers of all persons and organizations where such information is, will be, or is believed to be.

3. In answering these requests, you are requested to answer each subdivision fully, completely, and separately. These requests are to be regarded as continuing in nature, including those to which you claim an inability to answer fully and completely for the reason that discovery is continuing. On acquiring any information responsive to these request after the service of answers hereto, you are required to serve supplemental answers containing such later acquired information, and you may be precluded at the trial of this action from introducing evidence relating to the subject matter of these demands that you have not disclosed by these answers or by supplemental answers thereto.

4. All information requested shall include all information that relates in whole or in part to the Relevant Time Period or to events or circumstances during such Relevant Time

Period, even though dated, prepared or generated, or received prior to the Relevant Time Period.

5.  If any request is deemed to call for the production of privileged or otherwise protected information or materials, you must provide the following information in a written response, designating and identifying such information withheld from production on grounds of privilege:

   a.  The reason for withholding the document or information;

   b.  A statement of the legal basis for the claim of privilege, work product, or other ground for non-disclosure;

   c.  A brief description of the document or information, including:

   d.  The date of the document;

   e.  The number of pages, attachments, and appendices of a document;

   f.  The name(s) of the source(s) or preparer(s) of the information and identification by employment and title of each such person;

   g.  The name of each person who was involved with or has had access to or custody of the document or information, together with an identification of each such person;

   h.  The present custodian(s); and

   i.  The subject matter of the document or information, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

6. Failure to properly identify any withheld documents may result in the waiver of any right to assert a privilege later.

7. In responding to these requests, you are required to produce all documents known and or reasonably available to you, regardless of whether such documents are in your possession, custody, or control, or in the possession, custody, or control of your agents, consignees, representatives, or investigators, including your attorneys or their agents, employees, representatives, or investigators.

8. If any of the documents or information requested cannot be produced in full, you are required to specify, to the extent possible, the reasons for your inability to produce the remainder and the approximate date when you expect to produce such documents.

9. This request imposes a continuing obligation upon you. If after producing documents or information responsive to this request additional information or documents become available to you, you are required to produce such additional documents or information.

10. With respect to each document requested that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, you shall provide the following information separately as to each such document:

    a. A general description of the subject matter, author, recipient(s), date;

    b. The identity of each person who has received a copy or had an opportunity to receive a copy thereof;

    c. The last custodian of the document or copies thereof; and

    d. The full particulars or circumstances whereby the document was disposed of, destroyed, or otherwise lost.

11. All documents produced in response to these requests herein shall be either:

    a.  Organized and labeled to correspond with the number of the specific requests to which the documents are responsive;

    b.  Produced in the order and in the manner that they are kept in the usual course of business; or

    c.  In the manner as agreed by the parties.

12. All documents that exist in electronic form are to be produced in electronic form and in their native electronic format, not in an electronic form that is merely a picture of a document such as a TIFF file, a TIF file, or a PDF file, with the Bates number applied in a manner that does not alter the document's metadata or its optical character recognition ("OCR") in any way. Plaintiffs reserve the right to negotiate with Defendants a manner of production of the documents.

13. The headings used herein are not intended to limit in any way the scope of the requests.

## **PLEASE PRODUCE:**

1.  YOUR Regulatory Files as it relates to TAXOTERE.

2.  All study protocols relating to TAXOTERE, regardless of whether the study was ever completed or whether human patients were ever enrolled.

3.  Documents sufficient to identify all Countries in which TAXOTERE has been approved for sale and the date on which each was approved.

4.  Documents sufficient to identify any other pharmaceutical product containing docetaxel, taxanes and/or other microtubule inhibitors (MTI) developed by or for Defendants, whether or not ultimately submitted to a regulatory agency or marketed in any country, other than TAXOTERE.

5.   All agreements among and between any of the Defendants relating to the manufacturing of TAXOTERE.

6.   All agreements among and between any of the Defendants relating to the marketing of TAXOTERE.

7.   All agreements among and between any of the Defendants relating to the sale of TAXOTERE.

8.   All agreements among and between any of the Defendants and any other entity relating to the manufacturing of TAXOTERE.

9.   All agreements among and between any of the Defendants and any other entity relating to the marketing of TAXOTERE.

10. All agreements among and between any of the Defendants and any other entity relating to the sale of TAXOTERE.

11. All final Core Data Sheets relating to TAXOTERE approved to be distributed.

12. All communications between YOU or any Co-Defendant and the FDA regarding any and all TAXOTERE Core Data Sheets or proposed changes to any Core Data Sheets.

13. All draft Core Data Sheets pertaining to TAXOTERE, whether submitted to the FDA or not.

14. All communications regarding Core Data Sheets for TAXOTERE.

15. All correspondence or communications to or from any regulatory agency and/or government relating to TAXOTERE and any English translations that exist.

16. All DOCUMENTS in YOUR possession, custody, or control relating to any causal connection or association (including suspected, potential, and or actual associations) of TAXOTERE with persistent and/or permanent and/or prolonged alopecia or hair loss.

17. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding correspondence with any division of the U.S. Department of Health and/or any regulatory agency outside of the United States and/or foreign governmental entity in any country other than the United States pertaining to safety, adverse events, problems, and complications regarding TAXOTERE, including, but not limited to, adverse event reports and responses thereto, and or post-approval clinical trials and any English translations that exist if the DOCUMENTS are written in any language other than English.

18. All DOCUMENTS that identify or list (including in summary format) any completed, proposed, planned, considered, or conceived preclinical studies as well as clinical trials that assess or otherwise have data relevant to the alleged association between TAXOTERE and persistent and/or permanent and/or prolonged alopecia or hair loss.

19. All Preclinical and Clinical Study reports relating to TAXOTERE, including all drafts of the same.

20. All Preclinical and Clinical Study protocols relating to TAXOTERE, including all drafts of the same.

21. All DOCUMENTS that reflect written procedures for the collection, evaluation or dissemination of adverse event reports concerning TAXOTERE.

22. All electronic database, electronic spreadsheet, or other electronic program in YOUR possession, custody, or control concerning or comprising adverse event reports generated concerning the use of TAXOTERE.

23. All scientific, clinical, and medical literature in YOUR possession, custody or control concerning any and all purported association between or the capacity of TAXOTERE and/or

docetaxel based medications to cause and/or contribute to cause persistent and/or permanent and/or prolonged alopecia or hair loss.

24. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding any communication, journals, authors, or publications of articles or studies referencing a potential or actual relationship or association between TAXOTERE and persistent and/or permanent and/or prolonged alopecia or hair loss.

25. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding all published and unpublished medical and scientific articles, abstracts, posters, presentations, and research papers pertaining to TAXOTERE.

26. A bibliography of all medical or scientific articles, presentations, posters, or abstracts known to defendant, published or unpublished, relating in any respect to TAXOTERE or docetaxel.

27. All DOCUMENTS relating, referring to or embodying any epidemiological studies and or statistical analysis relating to TAXOTERE or docetaxel and the actual or possible effects of such drugs on humans and/or animals.

28. All DOCUMENTS relating, referring to or embodying any epidemiological studies and or statistical analysis relating to TAXOTERE or docetaxel and their actual or possible association with alopecia in humans and/or animals.

29. All DOCUMENTS in YOUR possession, custody or control containing any data or information relating to published studies, articles, cases studies, or similar scientific writings (whether sponsored by YOU or not sponsored by YOU) involving TAXOTERE or docetaxel.

30. All DOCUMENTS in YOUR possession, custody or control containing any data or information relating to unpublished and discontinued studies (whether sponsored by YOU or not sponsored by YOU) involving TAXOTERE or docetaxel.

31. All DOCUMENTS in YOUR possession, custody or control containing any data or information relating to ongoing, past, future, or potential studies (whether sponsored by YOU or not sponsored by YOU) involving TAXOTERE or docetaxel.

32. All DOCUMENTS in YOUR possession, custody or control related to pre-clinical testing conducted that involves TAXOTERE and or docetaxel including but not limited to all data concerning animal studies, *in vitro* studies, competitive studies, scientific studies, head-to-head studies, systematic studies, same assay studies, parallel studies, and or double blind studies.

33. All DOCUMENTS, including, but not limited to, notebooks and electronic notebooks in YOUR possession, custody or control, provided to clinical investigators or scientists that pertain to past, present, and future pre-clinical and clinical studies of TAXOTERE or docetaxel.

34. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to TAXOTERE and any causal connection with or actual or potential association to with persistent and/or permanent and/or prolonged alopecia or hair loss.

35. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to TAXOTERE and persistent and/or permanent and/or prolonged alopecia or hair loss.

36. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to TAXOTERE and the need to advise health care

professionals and/or TAXOTERE users about the associated risk of persistent and/or permanent and/or prolonged alopecia or hair loss.

37. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to TAXOTERE and any label or label changes anywhere in the world related in any way to persistent and/or permanent and/or prolonged alopecia or hair loss.

38. All DOCUMENTS in YOUR possession, custody or control regarding studies, analysis or data monitoring of TAXOTERE polytherapy with other chemotherapy agents causing persistent and/or permanent and/or prolonged alopecia or hair loss.

39. All DOCUMENTS in YOUR possession, custody or control regarding studies, analysis or data monitoring of TAXOTERE monotherapy use causing or being associated with persistent and/or permanent and/or prolonged alopecia or hair loss.

40. All DOCUMENTS in YOUR possession, custody, or control comprising or concerning data collected during all phases of the TAXOTERE clinical and pre-clinical trials.

41. All Division of Drug Marketing, Advertising and Communications (DDMAC) and Office of Prescription Drug Promotion (OPDP) communications and or documents received by YOU or any Co-Defendant's relating to TAXOTERE.

42. All DOCUMENTS in YOUR possession, custody, or control that were provided to physicians or other healthcare professionals that were intended for distribution to patients concerning TAXOTERE.

43. All communications concerning what information should be provided to consumer, physicians or other healthcare professionals concerning TAXOTERE use causing or being

associated with persistent and/or permanent and/or prolonged alopecia or hair loss, including, but not limited to, approved informed consent forms.

44. All DOCUMENTS in YOUR possession, custody, or control constituting minutes from meetings, summaries of the minutes of such meetings, agendas for such meetings, presentations made at any such meetings (in their native format) and/or summaries of such meetings with any and all physicians and investigators involved with clinical and pre-clinical trials for TAXOTERE.

45. All DOCUMENTS in YOUR possession, custody, or control from physicians and/or investigators concerning all TAXOTERE clinical or pre-clinical trials, whether provided to the FDA or not.

46. All DOCUMENTS in YOUR possession, custody or control regarding any post-marketing studies, seeding studies, cohort studies, case control studies, randomized studies, protocols, or surveillance conducted in the United States and/or outside of the United States pertaining to TAXOTERE.

47. All DOCUMENTS in YOUR possession, custody, or control comprising or regarding the retention and/or use of any third-parties utilized to analyze TAXOTERE and its causal connection or association, whether actual or potential, with persistent and/or permanent and/or prolonged alopecia or hair loss.

48. All DOCUMENTS concerning changes to the manufacturing process utilized in making TAXOTERE in YOUR possession, custody, or control.

49. All DOCUMENTS discussing or otherwise referring to changes, both proposed and actual, to the formulation of TAXOTERE in YOUR possession, custody, or control.

50. All DOCUMENTS concerning the design of TAXOTERE in YOUR possession, custody, or control.

51. All DOCUMENTS related in any way to the decisions made regarding the solvents utilized for TAXOTERE solutions.

52. All DOCUMENTS concerning changes to the design of TAXOTERE and/or docetaxel solutions in YOUR possession, custody, or control.

53. All DOCUMENTS concerning any governmental agency in any country worldwide that declined to approve an application to market TAXOTERE for any indication, including, but not limited to, communications between the sponsor of TAXOTERE and the agency, and any English translations that exist in YOUR possession, custody, or control.

54.  All DOCUMENTS that concern, or involve discussion about, the potential or actual submission of TAXOTERE for approval and/or the approval of TAXOTERE in another country other than the U.S. including, but not limited to, communications regarding foreign governmental agencies and their drug approval procedures, rules and/or standards, and including any English translations that exist if the DOCUMENTS are written in any language other than English in YOUR possession, custody, or control.

55. All DOCUMENTS concerning deferred approval of TAXOTERE in any country, including any English translations that exist if the DOCUMENTS are written in any language other than English in YOUR possession, custody, or control.

56. All DOCUMENTS concerning a comparison of the safety and/or toxicity between TAXOTERE and other breast cancer chemotherapy medicines in YOUR possession, custody, or control.

57. All DOCUMENTS concerning a comparison of the risk profiles as between TAXOTERE and other chemotherapy medicines concerning persistent and/or permanent and/or prolonged alopecia or hair loss in YOUR possession, custody, or control.

58. All DOCUMENTS discussing or otherwise referencing whether or how the risk profile for TAXOTERE is impacted or otherwise affected by concurrent use along with other chemotherapy medicines in YOUR possession, custody, or control.

59. All DOCUMENTS discussing or otherwise referencing whether or how the risk profile for TAXOTERE is impacted or otherwise affected by use in patients with any autoimmune disease, including, but not limited to, those autoimmune diseases listed in the Plaintiff Fact Sheet in this MDL in Section VII.10 in YOUR possession, custody, or control.

60. All DOCUMENTS discussing or otherwise referencing whether or how the risk profile for TAXOTERE is impacted or otherwise affected by the hair care or treatments received by patients, including, but not limited to, the hair care and or treatments listed in the Plaintiff Fact Sheet in this MDL in Section VII.13 and VII.14 in YOUR possession, custody, or control.

61. All DOCUMENTS discussing how YOU or any Co-Defendant define, grade, or otherwise classify a diagnosis, whether actual or suspected, of permanent with persistent and/or permanent and/or prolonged alopecia or hair loss in YOUR possession, custody, or control.

62. All DOCUMENTS concerning the relationship between Defendants and any outside person or entity involved in the market analysis, marketing, advertising, or promotion of TAXOTERE, including but not limited to the contracts between Defendants and such person or entity, communications, and any invoices for services rendered in YOUR possession, custody, or control.

63. All DOCUMENTS concerning or relating to any studies, including but not limited to all phases, drafts, protocols, notes, comments, interim reports, final reports, and versions thereof, whether published or not, that suggest, raise question about, indicate or demonstrate a result that evaluates TAXOTERE's safety and or risk profile in relation to another taxanes in YOUR possession, custody, or control.

64. All DOCUMENTS and/or Information received or obtained from any source that relate in any way to any causal connection or association of TAXOTERE with persistent and/or permanent and/or prolonged alopecia or hair loss, which were provided by YOU or any Co-Defendant to the FDA or any other regulatory agency in the world in YOUR possession, custody, or control.

65. All DOCUMENTS and/or Information received or obtained from any source that relate in any way to any causal connection or association of TAXOTERE with persistent and/or permanent and/or prolonged alopecia or hair loss, which were disclosed by YOU or any Co-Defendant to the medical community in YOUR possession, custody, or control.

66. All DOCUMENTS and/or Information received or obtained from any source that relate in any way to any causal connection or association of TAXOTERE with persistent and/or permanent and/or prolonged alopecia or hair loss, which were disclosed by YOU or any Co-Defendant to customers, consumers, users and potential TAXOTERE users in YOUR possession, custody, or control.

67. All consulting agreements, engagement agreements, employment agreements, research agreements, grants, research grants or any other agreement, however titled, relating in any way to the testing, research, development, and/or evaluation of TAXOTERE in YOUR possession, custody, or control.

68. All DOCUMENTS, content of any kind, notes, videos, and all other forms of information relating to TAXOTERE on Defendants sponsored, supported, edited, and/or linked websites, FaceBook pages, Instagram pages, Twitter pages, social media of any kind, Wikipedia or pages on any other websites with YOUR content in YOUR possession, custody, or control.

69. All DOCUMENTS identifying which clinical research companies, organizations, and or individuals who were used to study TAXOTERE, together with any contracts whereby Defendants engaged the services of such companies, groups or persons, along with any study protocols given to, used, or developed by such clinical research companies, as well as any study summaries and results provided by such clinical research companies in YOUR possession, custody, or control.

70. All documents related in any way to the December 2015 FDA announcement concerning safety labeling changes approved by the FDA related to TAXOTERE in YOUR possession, custody, or control.

71. Please produce all documents evidencing each and every action taken by YOU or any Co-Defendant in response to any communication from a patient, healthcare provider, or regulator regarding Taxotere and permanent and/or persistent and/or prolonged alopecia and/or hair loss in YOUR possession, custody, or control.

72. Please produce all published and unpublished studies (worldwide) YOU or any Co-Defendant funded, participated in, reviewed, or sponsored related to Taxotere in YOUR possession, custody, or control.

73. Please produce all published and unpublished studies (worldwide) YOU or any Co-Defendant funded, participated in, reviewed, or sponsored related to Taxotere and side effects other than hair loss in YOUR possession, custody, or control.

74. Please produce all Clinical Trials relating to Taxotere, including all raw data, protocols, case report forms, annual reports, source records, monitoring reports, and monitoring plans in YOUR possession, custody, or control.

75. Please produce all Clinical Trials relating to Taxotere and permanent and/or persistent and/or prolonged alopecia and/or hair loss, including all raw data, protocols, case report forms, annual reports, source records, monitoring reports, and monitoring plans in YOUR possession, custody, or control.

76. All DOCUMENTS related in any way to the research, design, testing, marketing and/or patenting of TAXOTERE as an increased potency taxane.

77. All DOCUMENTS of any kind related to Taxotere efficacy compared to Taxol efficacy.

78. All documents related in any way to the following studies:

   a) Joseph A. Sparano et al., *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, 358 NEW ENG. J. MED. 1663, 1663-1671 (2008), *available at* http://www.nejm.org/doi/full/10.1056/nejmoa0707056#t=article

   b) Wei-Xiang Qi, et al., *Paclitaxel-based Versus Docetaxel-based Regimens in Metastatic Breast Cancer: A Systemic Review and Meta-analysis of Randomized Controlled Trials*, Curr. Med. Res. Opin. Volume 29 Issue 2:117-125 (2013), *available at* http://dx.doi.org/10.1185/03007995.2012.756393

   c) Martin M, Seguí MA, Antón A, Ruiz A, Ramos M, Adrover E, et al. GEICAM 9805

   d) S.M. Sedlacek, *Persistent Significant Alopecia (PSA) from Adjuvant Docetaxel after Doxorubicin/Cyclophosphamide (AC) Chemotherapy in Women with Breast Cancer*, Presented at at San Antonio Breast Cancer Symposium (Dec. 14, 2006), *available at* http://theproductlawyers.com/wp-content/uploads/2016/07/Sedlacek-Taxotere-Alopecia-Study-2006.pdf

   e) Ben Tallon, et al., *Permanent Chemotherapy-Induced Alopecia: Case Report and Review of the Literature*, J. Am. Acad. Dermatol., Volume 63 Issue 2: 333-336 (2010), *available at* https://www.ncbi.nlm.nih.gov/pubmed/20471136

f)  N. Kluger, et al., *Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel: a prospective study of 20 patients*, Ann. Oncol. Volume 23 Issue 11: 2879-2884 (2012), *available at* https://www.ncbi.nlm.nih.gov/pubmed/22571858

g)  Nicola J.Thorp et al., *Long Term Hair Loss in Patients with Early Breast Cancer Receiving Docetaxel Chemotherapy*, P5-17-04 San Antonio Breast Cancer Symposium at 1111 (2014), *available at* http://www.sabcs.org/Portals/SABCS/Documents/2014SABCSCall4Abstracts.pdf

79.  All DOCUMENTS and/or databases in YOUR possession, custody, or control regarding the work of any person, committee, task force, or group to address or handle questions or concerns related to the association or causal connection, whether potential or actual, between TAXOTERE and with persistent and/or permanent and/or prolonged alopecia or hair loss.

80.  All DOCUMENTS in YOUR possession, custody, or control comprising or regarding any communications, proposed or actual, by and between YOU and any user of Taxotere, patient support groups, patient advocacy groups, cancer organizations, or alopecia related organizations to address or handle questions or concerns related to the association or causal connection, whether potential or actual, between TAXOTERE and with persistent and/or permanent and/or prolonged alopecia or hair loss.

81.  All DOCUMENTS in YOUR possession, custody, or control comprising or regarding the retention and/or use of any third-parties utilized to analyze TAXOTERE and its causal connection or association, whether actual or potential, with persistent and/or permanent and/or prolonged alopecia or hair loss.

82.  All DOCUMENTS in YOUR possession, custody or control regarding any post-marketing studies, seeding studies, cohort studies, case control studies, randomized studies,

protocols, or surveillance conducted in the United States and worldwide pertaining to TAXOTERE.

83.    All DOCUMENTS constituting and/or summarizing YOUR or any Co-Defendant's post-marketing adverse event reports for TAXOTERE.

84.    Any charts (to be produced in color) created by YOU or any Co-Defendant relating to adverse event reports for TAXOTERE, including comparisons to other chemotherapy medicines such as Taxol.

85.    Please produce any and all media and/or photographs provided to YOU from Taxotere users or others evidencing hair loss outside of photos provided to YOU by Plaintiffs in this MDL.

86.    Please produce all communications from patients, healthcare providers, and regulators regarding Taxotere hair loss side effects.

87.    Please produce all documents evidencing any action taken by YOU in response to any communication from a patient, healthcare provider, or regulator regarding Taxotere and hair loss.

88.    Please produce all minutes, communications, and documents from YOUR meetings regarding Taxotere label changes.

89.    All DOCUMENTS relating to materials left or intended to be left by sales representatives in the offices of healthcare professionals relating to TAXOTERE in YOUR possession, custody, or control.

90.    All DOCUMENTS that index, catalog, compile, or otherwise list any of Defendants' approved or draft advertising, sales and marketing materials, and print and broadcast advertisements, sales aids, visuals, sales scripts, sales guides, reminder pieces and any other

materials referenced in 21 C.F.R. 202.1, subdivisions (l)(1) and (l)(2) regarding or relating to TAXOTERE in YOUR possession, custody, or control.

91.     All DOCUMENTS that evidence, refer to, or otherwise reflect marketing plans for TAXOTERE in YOUR possession, custody, or control.

92.     Documents sufficient to identify all advertising agencies or public relations firms utilized by Defendants in connection with TAXOTERE in the United States in YOUR possession, custody, or control.

93.     Screenshots of all Internet based advertisements (including but not limited to Web sites, blogs, bulletin boards, and pod-casts) or e-commerce information relating to TAXOTERE sponsored by or on behalf of Defendants, including every screen within any Website in YOUR possession, custody, or control.

94.     DOCUMENTS sufficient to identify Defendants' thought leaders and/or key opinion leaders including doctors, healthcare professionals, and healthcare providers who were offered and/or received payment or honoraria from Defendants for preparation of scientific papers, posters, medical articles, speeches, lectures, and/or presentations regarding TAXOTERE in YOUR possession, custody, or control.

95.     DOCUMENTS sufficient to identify all doctors, healthcare professionals, and healthcare providers who were offered and/or received any payments, including but not limited to payments to reimburse travel or meal expenses, or honoraria from Defendants for attendance at any speeches, lectures, and/or presentations regarding TAXOTERE in YOUR possession, custody, or control.

96.     All package inserts intended for dissemination in any country other than the U.S. for TAXOTERE and English translations thereof in YOUR possession, custody, or control.

97.    All patient information sheets intended for dissemination in any country other than the U.S. regarding TAXOTERE and for each the English translations thereof in YOUR possession, custody, or control.

98.    All consumer information sheets intended for dissemination in any country other than the U.S. regarding TAXOTERE and English translations thereof in YOUR possession, custody, or control.

99.    All Dear Doctor/Healthcare Provider Letters intended for dissemination in any country other than the U.S. regarding TAXOTERE and English translations thereof in YOUR possession, custody, or control.

100.    All DOCUMENTS relating to, demonstrating, or showing Defendants' direct or indirect contact with third party contractors and/or vendors who provide computerized or other data on drug patient instructions for use by pharmacies (including but not limited to all records relating to, demonstrating, or showing whether Defendants sought to ascertain what the third party drug information vendors were stating about TAXOTERE, and any and all efforts to change any statements about TAXOTERE contained in patient information handouts generated by pharmacies using information generated by the third party vendors) in YOUR possession, custody, or control.

101.    All marketing materials since January 1, 1996 of any kind where YOU disclosed permanent and/or persistent and/or prolonged alopecia and/or hair loss to patients, healthcare providers, or regulators relating to Taxotere use in YOUR possession, custody, or control.

102.    Please produce all consumer market research related to hair loss in YOUR possession, custody, or control.

103.   ALL DOCUMENTS concerning any document retention policy or policies maintained by YOU or any Co-Defendant including, but not limited to, the policies themselves and any communications regarding the policies and/or changes thereto.

104.   All DOCUMENTS concerning the relationship between Defendants and any outside person or entity involved in the market analysis, marketing, advertising, or promotion of TAXOTERE, including but not limited to the contracts between YOU or any Co-Defendant and such person or entity, communications, and any invoices for services rendered.

105.   All insurance policies, excess coverage policies, or any other type of insurance coverage, including any self-insured retention policies, that YOU believe may potentially cover claims related to TAXOTERE for policy years 2006 until the present.  This request also calls for the production of the policy declaration sheet.

106.   All DOCUMENTS and or email that reflect the policies and procedures that YOU or any Co-Defendant had and/or have in place for the storage, deletion, and back-up of DOCUMENTS and emails generated by Defendants employees and agents regarding TAXOTERE.

107.   All logs, ledgers, and other such indices that reflect the identity and location of DOCUMENTS regarding TAXOTERE.

108.   All DOCUMENTS concerning the steps taken by YOU to preserve all DOCUMENTS concerning, regarding, or pertaining to TAXOTERE.

109.   Complete corporate organizational charts that show the legal relationships between or among Sanofi S.A., Aventis Pharma S.A., Sanofi Aventis U.S., LLC, Sanofi Aventis, Aventis, Rhône-Poulenc Rorer S.A., Hoechst AG, and Sanofi Synthelabo between 1990 and 2016.

110.    All DOCUMENTS sufficient to demonstrate all coordination of operations of any nature between or among Sanofi, Aventis Pharma S.A., Sanofi-aventis U.S. LLC, and Sanofi US Services Inc.

111.    All DOCUMENTS related in any way to the assignment of any and/or all Taxotere related patents including but not limited to the assignment made by Rhône-Poulenc Rorer S.A. to Aventis Pharma S.A.

Dated: May 26, 2017

Respectfully submitted:

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com
***Plaintiffs' Co-Liaison Counsel***

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
**Gainsburgh Benjamin David Meunier & Warshauer, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com
***Plaintiffs' Co-Liaison Counsel***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on counsel for defendant Aventis Pharma S.A. and Defendants' Liaison Counsel via electronic mail this 26th day of May, 2017.

*/s/M. Palmer Lambert*
M. PALMER LAMBERT