# EXHIBIT B

(Slip Opinion)         OCTOBER TERM, 2016         1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BNSF RAILWAY CO. *v.* TYRRELL, SPECIAL ADMINISTRATOR FOR THE ESTATE OF TYRRELL, DECEASED, ET AL.

### CERTIORARI TO THE SUPREME COURT OF MONTANA

No. 16–405.   Argued April 25, 2017—Decided May 30, 2017

The Federal Employers' Liability Act (FELA), 45 U. S. C. §51 *et seq.*, makes railroads liable in money damages to their employees for on-the-job injuries.  Respondent Robert Nelson, a North Dakota resident, brought a FELA suit against petitioner BNSF Railway Company (BNSF) in a Montana state court, alleging that he had sustained injuries while working for BNSF.  Respondent Kelli Tyrrell, appointed in South Dakota as the administrator of her husband Brent Tyrrell's estate, also sued BNSF under FELA in a Montana state court, alleging that Brent had developed a fatal cancer from his exposure to carcinogenic chemicals while working for BNSF.  Neither worker was injured in Montana.  Neither incorporated nor headquartered there, BNSF maintains less than 5% of its work force and about 6% of its total track mileage in the State.  Contending that it is not "at home" in Montana, as required for the exercise of general personal jurisdiction under *Daimler AG* v. *Bauman*, 571 U. S. ___, ___, BNSF moved to dismiss both suits.  Its motion was granted in Nelson's case and denied in Tyrrell's.  After consolidating the two cases, the Montana Supreme Court held that Montana courts could exercise general personal jurisdiction over BNSF because the railroad both "d[id] business" in the State within the meaning of 45 U. S. C. §56 and was "found within" the State within the compass of Mont. Rule Civ. Proc. 4(b)(1).  The due process limits articulated in *Daimler*, the court added, did not control because *Daimler* did not involve a FELA claim or a railroad defendant.

*Held*:

   1. Section 56 does not address personal jurisdiction over railroads. Pp. 4–9.

Syllabus

(a) Section 56's first relevant sentence provides that "an action may be brought in a district court of the United States," in, among other places, the district "in which the defendant shall be doing business at the time of commencing such action." This Court has comprehended that sentence as a venue prescription, not as one governing personal jurisdiction. *Baltimore & Ohio R. Co.* v. *Kepner*, 314 U. S. 44, 52. Congress generally uses the expression, where suit "may be brought," to indicate the federal districts in which venue is proper, see, *e.g.*, 28 U. S. C. §1391(b), while it typically provides for the exercise of personal jurisdiction by authorizing service of process, see, *e.g.*, 15 U. S. C. §22. Nelson and Tyrrell contend that the 1888 Judiciary Act provision that prompted §56's enactment concerned both personal jurisdiction and venue, but this Court has long read that Judiciary Act provision to concern venue only, see, *e.g., Green* v. *Chicago, B. & Q. R. Co.*, 205 U. S. 530, 532–533. Pp. 5–7.

(b) The second relevant sentence of §56—that "[t]he jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States"—refers to concurrent *subject-matter* jurisdiction of state and federal courts over FELA actions. See *Second Employers' Liability Cases*, 223 U. S. 1, 55–56. Congress added this clarification after the Connecticut Supreme Court held that Congress intended to confine FELA litigation to federal courts, and that state courts had no obligation to entertain FELA claims. Pp. 7–8.

(c) None of the cases featured by the Montana Supreme Court in reaching its contrary conclusion resolved a question of personal jurisdiction. *Pope* v. *Atlantic Coast Line R. Co.*, 345 U. S. 379; *Miles* v. *Illinois Central R. Co.*, 315 U. S. 698; *Kepner*, 314 U. S. 44; and *Denver & Rio Grande Western R. Co.* v. *Terte*, 284 U. S. 284, distinguished. Moreover, all these cases, save *Pope*, were decided before this Court's transformative decision on personal jurisdiction in *International Shoe Co.* v. *Washington*, 326 U. S. 310. Pp. 8–9.

2. The Montana courts' exercise of personal jurisdiction under Montana law does not comport with the Fourteenth Amendment's Due Process Clause. Only the propriety of general personal jurisdiction is at issue here because neither Nelson nor Tyrrell alleges injury from work in or related to Montana.

A state court may exercise general jurisdiction over out-of-state corporations when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler,* 571 U. S., at ___. The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business, *e.g., id.*, at ___, but in an "exceptional case," a corporate defendant's operations in another fo-

Cite as: 581 U. S. ____ (2017)          3

Syllabus

rum "may be so substantial and of such a nature as to render the corporation at home in that State," *id*., at ___, n. 19.  *Daimler* involved no FELA claim or railroad defendant, but the due process constraint described there applies to all state-court assertions of general jurisdiction over nonresident defendants; that constraint does not vary with the type of claim asserted or business enterprise sued.

Here, BNSF is not incorporated or headquartered in Montana and its activity there is not "so substantial and of such a nature as to render the corporation at home in that State." *Ibid.*  Pp. 9–12.

383 Mont. 417, 373 P. 3d 1, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, BREYER, ALITO, KAGAN, and GORSUCH, JJ., joined.  SOTOMAYOR, J., filed an opinion concurring in part and dissenting in part.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–405

_____

## BNSF RAILWAY CO., PETITIONER *v.* KELLI TYRRELL, SPECIAL ADMINISTRATOR FOR THE ESTATE OF BRENT T. TYRRELL, DECEASED, ET AL.

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF MONTANA

[May 30, 2017]

JUSTICE GINSBURG delivered the opinion of the Court.

The two cases we decide today arise under the Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U. S. C. §51 *et seq.*, which makes railroads liable in money damages to their employees for on-the-job injuries. Both suits were pursued in Montana state courts although the injured workers did not reside in Montana, nor were they injured there.  The defendant railroad, BNSF Railway Company (BNSF), although "doing business" in Montana when the litigation commenced, was not incorporated in Montana, nor did it maintain its principal place of business in that State.  To justify the exercise of personal jurisdiction over BNSF, the Montana Supreme Court relied on §56, which provides in relevant part:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be do-ing business at the time of commencing such action. The jurisdiction of the courts of the United States un-

der this chapter shall be concurrent with that of the courts of the several States."

We hold that §56 does not address personal jurisdiction over railroads. Its first relevant sentence is a venue prescription governing proper locations for FELA suits filed in federal court. The provision's second relevant sentence, using the term "concurrent" jurisdiction, refers to subject-matter jurisdiction, not personal jurisdiction. It simply clarifies that the federal courts do not have exclusive subject-matter jurisdiction over FELA suits; state courts can hear them, too.

Montana's Supreme Court, in the alternative, relied on state law, under which personal jurisdiction could be asserted over "persons found within . . . Montana." Mont. Rule Civ. Proc. 4(b)(1) (2015). BNSF fit that bill, the court stated, because it has over 2,000 miles of railroad track and employs more than 2,000 workers in Montana. Our precedent, however, explains that the Fourteenth Amendment's Due Process Clause does not permit a State to hale an out-of-state corporation before its courts when the corporation is not "at home" in the State and the episode-in-suit occurred elsewhere. *Daimler AG* v. *Bauman*, 571 U. S. ___, ___ (2014) (slip op., at 8) (internal quotation marks omitted). We therefore reverse the judgment of the Montana Supreme Court.

## I

In March 2011, respondent Robert Nelson, a North Dakota resident, brought a FELA suit against BNSF in a Montana state court to recover damages for knee injuries Nelson allegedly sustained while working for BNSF as a fuel-truck driver. 383 Mont. 417, 419, 373 P. 3d 1, 3 (2016). In May 2014, respondent Kelli Tyrrell, appointed in South Dakota as the administrator of her husband Brent Tyrrell's estate, similarly sued BNSF under FELA in a Montana state court. *Id.*, at 419–420, 373 P. 3d, at 3.

Opinion of the Court

Brent Tyrrell, his widow alleged, had developed a fatal kidney cancer from his exposure to carcinogenic chemicals while working for BNSF. *Id.*, at 420, 373 P. 3d, at 3. Neither plaintiff alleged injuries arising from or related to work performed in Montana; indeed, neither Nelson nor Brent Tyrrell appears ever to have worked for BNSF in Montana. *Id.*, at 419–420, 373 P. 3d, at 3.

BNSF is incorporated in Delaware and has its principal place of business in Texas. *Id.*, at 419, 373 P. 3d, at 3. It operates railroad lines in 28 States. No. DV 14–699 (13th Jud. Dist., Yellowstone Cty., Mont., Oct. 7, 2014), App. to Pet. for Cert. 63a. BNSF has 2,061 miles of railroad track in Montana (about 6% of its total track mileage of 32,500), employs some 2,100 workers there (less than 5% of its total work force of 43,000), generates less than 10% of its total revenue in the State, and maintains only one of its 24 automotive facilities in Montana (4%). *Ibid.* Contending that it is not "at home" in Montana, as required for the exercise of general personal jurisdiction under *Daimler AG* v. *Bauman*, 571 U. S. ___, ___ (2014) (slip op., at 8) (internal quotation marks omitted), BNSF moved to dismiss both suits for lack of personal jurisdiction. Its motion was granted in Nelson's case and denied in Tyrrell's. 383 Mont., at 419, 373 P. 3d, at 2.

After consolidating the two cases, the Montana Supreme Court held that Montana courts could exercise general personal jurisdiction over BNSF. *Id.*, at 429, 373 P. 3d, at 9. Section 56, the court determined, authorizes state courts to exercise personal jurisdiction over railroads "doing business" in the State. *Id.*, at 426, 373 P. 3d, at 7 (internal quotation marks omitted). In addition, the court observed, Montana law provides for the exercise of general jurisdiction over "[a]ll persons found within" the State. *Id.*, at 427, 373 P. 3d, at 8 (quoting Mont. Rule Civ. Proc. 4(b)(1) (2015)). In view of the railroad's many employees and miles of track in Montana, the court concluded, BNSF

is both "doing business" and "found within" the State, such
that both FELA and Montana law authorized the exercise
of personal jurisdiction. 383 Mont., at 426, 428, 373 P. 3d,
at 7–8 (internal quotation marks omitted). The due pro-
cess limits articulated in *Daimler*, the court added, did not
control, because *Daimler* did not involve a FELA claim or
a railroad defendant. 383 Mont., at 424, 373 P. 3d, at 6.

Justice McKinnon dissented. Section 56, she wrote, is a
federal-court venue prescription, and also confers subject-
matter jurisdiction on state courts in FELA cases, concur-
rent with federal courts. *Id.*, at 435–437, 373 P. 3d, at 13.
But §56, she maintained, does not touch or concern per-
sonal jurisdiction. *Ibid.* Furthermore, she concluded,
*Daimler* controls, rendering the Montana courts' exercise
of personal jurisdiction impermissible because BNSF is
not "at home" in Montana. 383 Mont., at 433–434, 373
P. 3d, at 11–12.

We granted certiorari, 580 U. S. ___ (2017), to resolve
whether §56 authorizes state courts to exercise personal
jurisdiction over railroads doing business in their States
but not incorporated or headquartered there, and whether
the Montana courts' exercise of personal jurisdiction in
these cases comports with due process.

## II

Nelson and Tyrrell contend that §56's first relevant
sentence confers personal jurisdiction on federal courts, and
that the section's second relevant sentence extends that
grant of jurisdiction to state courts. Neither contention
is tenable. Section 56's first relevant sentence concerns
venue; its next sentence speaks to subject-matter jurisdiction.[1]

---

[1] Section 56's first sentence, which provides a time bar for FELA claims,
is not relevant to the issue at hand. For ease of reference, we hereinafter
refer to the first relevant sentence, describing where suit "may be brought,"
as the provision's "first" sentence, and the sentence that immediately
follows, referring to "concurrent" jurisdiction, as the "second."

## A

The first sentence of §56 states that "an action may be brought in a district court of the United States," in, among other places, the district "in which the defendant shall be doing business at the time of commencing such action." In *Baltimore & Ohio R. Co.* v. *Kepner*, 314 U. S. 44 (1941), we comprehended this clause as "establish[ing] venue" for a federal-court action. *Id.*, at 52. Congress, we explained, designed §56 to expand venue beyond the limits of the 1888 Judiciary Act's general venue provision, which allowed suit only "in districts of which the defendant was an inhabitant." *Id.*, at 49; see Act of Aug. 13, 1888, §1, 25 Stat. 434. Nowhere in *Kepner* or in any other decision did we intimate that §56 might affect personal jurisdiction.

Congress generally uses the expression, where suit "may be brought," to indicate the federal districts in which venue is proper. See, *e.g.*, 28 U. S. C. §1391(b) (general venue statute specifying where "[a] civil action may be brought"); J. Oakley, ALI, Fed. Judicial Code Rev. Project 253–290 (2004) (listing special venue statutes, many with similar language). See also *Kepner*, 314 U. S., at 56 (Frankfurter, J., dissenting) ("The phrasing of [§56] follows the familiar pattern generally employed by Congress in framing venue provisions.").

In contrast, Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process. See, *e.g.*, 15 U. S. C. §22 (Clayton Act provision stating that "all process in [cases against a corporation arising under federal antitrust laws] may be served in the district of which [the defendant] is an inhabitant, or wherever [the defendant] may be found"); §53(a) (under Federal Trade Commission Act, "process may be served on any person, partnership, or corporation wherever it may be found"). See also *Omni Capital Int'l, Ltd.* v. *Rudolf Wolff & Co.*, 484 U. S. 97, 106–107 (1987) (discussing statutes that authorize (or fail to authorize) nation-

wide service of process).  But cf. *Schlanger* v. *Seamans*, 401 U. S. 487, 490, n. 4 (1971) (though "Congress has provided for nationwide service of process" in 28 U. S. C. §1391(e) (1964 ed., Supp. V), that statute was meant to expand venue, not personal jurisdiction).  Congress uses this terminology because, absent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction.  See *Omni Capital*, 484 U. S., at 104.

Nelson and Tyrrell, however, argue that §56 relates to personal jurisdiction.  In their view, the 1888 Judiciary Act provision that prompted §56's enactment, 25 Stat. 434, concerned *both* personal jurisdiction and venue.  According to House and Senate Reports, they contend, two cases had brought to Congress' attention the problem with the prior provision—namely, that in federal-question cases it authorized suit only in the district of the defendant's residence.  Brief for Respondents 16–18.  See H. R. Rep. No. 513, 61st Cong., 2d Sess., 6 (1910) (citing *Macon Grocery Co.* v. *Atlantic Coast Line R. Co.*, 215 U. S. 501 (1910); *Cound* v. *Atchison, T. & S. F. R. Co.*, 173 F. 527 (WD Tex. 1909)); S. Rep. No. 432, 61st Cong., 2d Sess., 4 (1910) (same).  In both cases, the courts had dismissed FELA suits for "want of jurisdiction."  *Macon Grocery*, 215 U. S., at 510; *Cound*, 173 F., at 534.  To avert such jurisdictional dismissals, they urge, Congress enacted §56.

Legislative history "throws little light" here.  *Kepner*, 314 U. S., at 50.[2]  Driving today's decision, we have long read the 1888 Judiciary Act provision to concern venue only.  See *Green* v. *Chicago, B. & Q. R. Co.*, 205 U. S. 530, 532–533 (1907) (analyzing personal jurisdiction separately,

---

[2]We note, moreover, that Nelson and Tyrrell overlooked the Senate Report's explicit reference to the first sentence of §56 as a venue provision, with no mention of personal jurisdiction.  S. Rep. No. 432, 61st Cong., 2d Sess., 3 (1910).

Opinion of the Court

after concluding that venue was proper under 1888 Judiciary Act provision). See also *Lee* v. *Chesapeake & Ohio R. Co.*, 260 U. S. 653, 655 (1923) (noting that materially identical successor to 1888 Judiciary Act provision, Act of Mar. 3, 1911, §51, 36 Stat. 1101, "relates to the venue of suits"). Indeed, reading the 1888 Judiciary Act provision to authorize the exercise of personal jurisdiction would have yielded an anomalous result: In diversity cases, the provision allowed for suit "in the district of the residence of either the plaintiff or the defendant." 25 Stat. 434. Interpreting that clause to provide for jurisdiction would have allowed a plaintiff to hale a defendant into court in the plaintiff's home district, even if the district was one with which the defendant had no affiliation, and the episode-in-suit, no connection.

### B

The second §56 sentence in point provides that "[t]he jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States." Nelson and Tyrrell argue that this sentence extends to state courts the first sentence's alleged conferral of personal jurisdiction on federal courts. But, as just discussed, the first sentence concerns federal-court venue and confers no personal jurisdiction on any court.

We have understood §56's second sentence to provide for the concurrent *subject-matter* jurisdiction of state and federal courts over actions under FELA. See *Second Employers' Liability Cases*, 223 U. S. 1, 55–56 (1912). As Nelson and Tyrrell acknowledge, Congress added the provision to confirm concurrent subject-matter jurisdiction after the Connecticut Supreme Court held that Congress intended to confine FELA litigation to federal courts, and that state courts had no obligation to entertain FELA claims. See Brief for Respondents 23 (citing *Hoxie* v. *New York, N. H. & H. R. Co.*, 82 Conn. 352, 73 A. 754 (1909)).

As Justice McKinnon recognized in her dissent from the
Montana Supreme Court's decision in Nelson's and Tyr-
rell's cases, "[t]he phrase 'concurrent jurisdiction' is a well-
known term of art long employed by Congress and courts
to refer to subject-matter jurisdiction, not personal juris-
diction."  383 Mont., at 436, 373 P. 3d, at 13.  See, *e.g.*,
*Mims* v. *Arrow Financial Services, LLC*, 565 U. S. 368, 372
(2012) ("federal and state courts have concurrent jurisdic-
tion over private suits arising under the [Telephone Con-
sumer Protection Act of 1991, 47 U. S. C. §227]"); *Claflin*
v. *Houseman*, 93 U. S. 130, 133–134 (1876) (State courts
retain "concurrent jurisdiction" over "suits in which a
bankrupt" party is involved, notwithstanding exclusive
federal jurisdiction over bankruptcy matters).

C

Pointing to a quartet of cases, the Montana Supreme
Court observed that this Court "consistently has inter-
preted [§]56 to allow state courts to hear cases brought
under FELA even where the only basis for jurisdiction is
the railroad doing business in the forum [S]tate."  383
Mont., at 421–423, 425–426, 373 P. 3d, at 4–7 (citing *Pope*
v. *Atlantic Coast Line R. Co.*, 345 U. S. 379 (1953); *Miles* v.
*Illinois Central R. Co.*, 315 U. S. 698 (1942); *Kepner*, 314
U. S. 44; *Denver & Rio Grande Western R. Co.* v. *Terte*, 284
U. S. 284 (1932)).

None of the decisions featured by the Montana Supreme
Court resolved a question of personal jurisdiction.  *Terte*
held that a FELA plaintiff, injured in Colorado, could
bring suit in Missouri state court against a railroad incor-
porated elsewhere.  284 U. S., at 286–287.  The dispute,
however, was over the Dormant Commerce Clause, not
personal jurisdiction; the railroad defendants argued that
the suit would unduly burden interstate commerce, and
the decision rested on two Commerce Clause decisions,
*Michigan Central R. Co.* v. *Mix*, 278 U. S. 492 (1929), and

*Hoffman* v. *Missouri ex rel. Foraker*, 274 U. S. 21 (1927), not on an interpretation of §56. See *Terte*, 284 U. S., at 285, 287. In *Kepner* and *Miles*, this Court held that a state court may not, based on inconvenience to a railroad defendant, enjoin its residents from bringing a FELA suit in another State's federal (*Kepner*) or state (*Miles*) courts. *Kepner*, 314 U. S., at 54; *Miles*, 315 U. S., at 699–700, 704. *Pope* held that 28 U. S. C. §1404(a)'s provision for transfer from one federal court to another did not bear on the question decided in *Miles*: A state court still could not enjoin a FELA action brought in another State's courts. 345 U. S., at 383–384.

Moreover, all these cases, save *Pope*, were decided before this Court's transformative decision on personal jurisdiction in *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945). See *Daimler*, 571 U. S., at ___, n. 18 (slip op., at 20, n. 18) (cautioning against reliance on cases "decided in the era dominated by" the "territorial thinking" of *Pennoyer* v. *Neff*, 95 U. S. 714 (1878)).

## III

Because FELA does not authorize state courts to exercise personal jurisdiction over a railroad solely on the ground that the railroad does some business in their States, the Montana courts' assertion of personal jurisdiction over BNSF here must rest on Mont. Rule Civ. Proc. 4(b)(1), the State's provision for the exercise of personal jurisdiction over "persons found" in Montana. See *supra*, at 2–3. BNSF does not contest that it is "found within" Montana as the State's courts comprehend that rule. We therefore inquire whether the Montana courts' exercise of personal jurisdiction under Montana law comports with the Due Process Clause of the Fourteenth Amendment.

In *International Shoe*, this Court explained that a state court may exercise personal jurisdiction over an out-of-state defendant who has "certain minimum contacts with

[the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U. S., at 316. Elaborating on this guide, we have distinguished between specific or case-linked jurisdiction and general or all-purpose jurisdiction. See, *e.g.*, *Daimler*, 571 U. S., at ___ (slip op., at 8); *Goodyear Dunlop Tires Operations, S. A.* v. *Brown*, 564 U. S. 915, 919 (2011); *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408, 414, nn. 8, 9 (1984). Because neither Nelson nor Tyrrell alleges any injury from work in or related to Montana, only the propriety of general jurisdiction is at issue here.

*Goodyear* and *Daimler* clarified that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U. S., at ___ (slip op., at 8) (quoting *Goodyear*, 564 U. S., at 919). The "paradigm" forums in which a corporate defendant is "at home," we explained, are the corporation's place of incorporation and its principal place of business. *Daimler*, 571 U. S., at ___ (slip op., at 18–19); *Goodyear*, 564 U. S., at 924. The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U. S., at ___, n. 19 (slip op., at 20, n. 19). We suggested that *Perkins* v. *Benguet Consol. Mining Co.*, 342 U. S. 437 (1952), exemplified such a case. *Daimler*, 571 U. S., at ___, n. 19 (slip op., at 20, n. 19). In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio. 342 U. S., at 447–448. Because Ohio then became "the center of the corporation's wartime activities," *Daimler*, 571 U. S., at ___, n. 8 (slip op., at 12, n. 8), suit

was proper there, *Perkins*, 342 U. S., at 448.

The Montana Supreme Court distinguished *Daimler* on the ground that we did not there confront "a FELA claim or a railroad defendant." 383 Mont., at 424, 373 P. 3d, at 6. The Fourteenth Amendment due process constraint described in *Daimler*, however, applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued.[3]

BNSF, we repeat, is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana "as to render [it] essentially at home" in that State. See *Daimler*, 571 U. S., at \_\_\_ (slip op., at 8) (internal quotation marks omitted). As earlier noted, BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana. But, as we observed in *Daimler*, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.*, at \_\_\_, n. 20 (slip op., at 21, n. 20) (internal quotation marks and alterations omitted). Rather, the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Ibid.* In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims like Nelson's and Tyrrell's that are unrelated

——————

[3]The Montana Supreme Court also erred in asserting that "Congress drafted the FELA to make a railroad 'at home' for jurisdictional purposes wherever it is 'doing business.'" 383 Mont. 417, 425, 373 P. 3d 1, 6 (2016). As discussed, *supra*, at 5–7, in §56's first sentence, Congress dealt with venue only, not personal jurisdiction.

to any activity occurring in Montana.[4]

## IV

Nelson and Tyrrell present a further argument—that BNSF has consented to personal jurisdiction in Montana. See Brief for Respondents 50–51. The Montana Supreme Court did not address this contention, see 383 Mont., at 429, n. 3, 373 P. 3d, at 9, n. 3, so we do not reach it. See *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005) ("[W]e are a court of review, not of first view.").

\*    \*    \*

For the reasons stated, the judgment of the Montana Supreme Court is reversed, and the cases are remanded

─────────

[4] JUSTICE SOTOMAYOR, dissenting in part, renews a debate comprehensively aired in *Daimler AG* v. *Bauman*, 571 U. S. ___ (2014). There, as again here, JUSTICE SOTOMAYOR treats the assertion of jurisdiction by the State of Washington courts in *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), as an exercise of general, dispute-blind, jurisdiction, *post*, at 3, thereby overlooking the fundamental difference between *International Shoe* and these cases. In *International Shoe*, the defendant corporation's in-state activities had "not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on." 326 U. S., at 317. The state courts there asserted jurisdiction not over claims that had nothing to do with the State; instead, they exercised adjudicatory authority to hold the defendant corporation accountable for activity pursued within the State of Washington. *Daimler*, 571 U. S., at ___, ___, n. 10 (slip op., at 7, 14, n. 10). This Court, therefore, had no occasion in *International Shoe* to "engage in a comparison between International Shoe's contacts within the State of Washington and the other States in which it operated." *Post*, at 3. In marked contrast to *International Shoe*, Nelson's and Tyrrell's claims have no relationship to anything that occurred or had its principal impact in Montana.

This Court's opinion is not limited to §56 because the Montana Supreme Court went on to address and decide the question: Do "Montana courts have personal jurisdiction over BNSF under Montana law?" 383 Mont., at 426, 373 P. 3d, at 7. See also *id.*, at 429, 373 P. 3d, at 9 ("Under Montana law, Montana courts have general personal jurisdiction over BNSF.").

Cite as:  581 U. S. ____ (2017)                    13

Opinion of the Court

for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Opinion of SOTOMAYOR, J.

# SUPREME COURT OF THE UNITED STATES
_____

No. 16–405
_____

BNSF RAILWAY CO., PETITIONER *v.* KELLI TYRRELL,
SPECIAL ADMINISTRATOR FOR THE ESTATE OF BRENT T.
TYRRELL, DECEASED, ET AL.

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
MONTANA

[May 30, 2017]

JUSTICE SOTOMAYOR, concurring in part and dissenting in part.

I concur in the Court's conclusion that the Federal Employers' Liability Act (FELA), 45 U. S. C. §51 *et seq.*, does not confer personal jurisdiction over railroads on state courts. I also agree that the Montana Supreme Court erred when it concluded that the nature of the claim here—a FELA claim against a railroad—answers the question whether the Due Process Clause allows the exercise of personal jurisdiction over BNSF. But my agreement with the majority ends there. I continue to disagree with the path the Court struck in *Daimler AG* v. *Bauman,* 571 U. S. ___ (2014), which limits general jurisdiction over a corporate defendant only to those States where it is "'essentially at home,'" *id.,* at ___ (slip op., at 8). And even if the Court insists on adhering to that standard, I dissent from its decision to apply it here in the first instance rather than remanding to the Montana Supreme Court for it to conduct what should be a fact-intensive analysis under the proper legal framework. Accordingly, I join Parts I and II of the Court's opinion, but dissent from Part III and the judgment.

The Court would do well to adhere more faithfully to the direction from *International Shoe Co.* v. *Washington,* 326

U. S. 310 (1945), which instructed that general jurisdic-
tion is proper when a corporation's "continuous corporate
operations within a state [are] so substantial and of such a
nature as to justify suit against it on causes of action
arising from dealings entirely distinct from those activi-
ties." *Id.*, at 318. Under *International Shoe*, in other
words, courts were to ask whether the benefits a defend-
ant attained in the forum State warranted the burdens
associated with general personal jurisdiction. See *id.*, at
317–318. The majority itself acknowledges that *Interna-
tional Shoe* should govern, describing the question as
whether a defendant's affiliations with a State are suffi-
ciently "'continuous and systematic'" to warrant the exer-
cise of general jurisdiction there. *Ante,* at 10. If only its
analysis today reflected that directive. Instead, the major-
ity opinion goes on to reaffirm the restrictive "at home"
test set out in *Daimler*—a test that, as I have explained,
has no home in our precedents and creates serious inequi-
ties. See 571 U. S., at ___–___ (SOTOMAYOR, J., concurring
in judgment) (slip op., at 8–19).

    The majority's approach grants a jurisdictional windfall
to large multistate or multinational corporations that
operate across many jurisdictions. Under its reasoning, it
is virtually inconceivable that such corporations will ever
be subject to general jurisdiction in any location other
than their principal places of business or of incorporation.
Foreign businesses with principal places of business out-
side the United States may never be subject to general
jurisdiction in this country even though they have contin-
uous and systematic contacts within the United States.
See *id.*, at ___–___ (slip op., at 17–18). What was once a
holistic, nuanced contacts analysis backed by considera-
tions of fairness and reasonableness has now effectively
been replaced by the rote identification of a corporation's

principal place of business or place of incorporation.[1]  The result?  It is individual plaintiffs, harmed by the actions of a farflung foreign corporation, who will bear the brunt of the majority's approach and be forced to sue in distant jurisdictions with which they have no contacts or connection.

Moreover, the comparative contacts analysis invented in *Daimler* resurfaces here and proves all but dispositive.  The majority makes much of the fact that BNSF's contacts in Montana are only a percentage of its contacts with other jurisdictions.  *Ante*, at 3, 11.  But *International Shoe*, which the majority agrees is the springboard for our modern personal jurisdiction jurisprudence, *ante,* at 9, applied no comparative contacts test.  There the Court analyzed whether the Delaware corporation had "by its activities in the State of Washington rendered itself amenable to proceedings" in the State.  326 U. S., at 311.  The Court evaluated whether the corporation had offices in the forum State, made contracts there, delivered goods there, or employed salesmen there.  See *id.*, at 313.  Despite acknowledging that the corporation maintained places of business in several States, *ibid.*, the Court did not engage in a comparison between International Shoe's contacts within the State of Washington and the other States in which it operated.[2]  The Court noted that the corporation

---

[1] As many commentators have observed, lower courts adhered to the continuous-and-systematic standard for decades before *Daimler*, and its predecessor *Goodyear Dunlop Tires Operations, S. A.* v. *Brown*, 564 U. S. 915 (2011), wrought the present sea change.  See, *e.g.,* Cornett & Hoffheimer, Good-Bye Significant Contacts: General Personal Jurisdiction after *Daimler AG* v. *Bauman*, 76 Ohio St. L. J. 101 (2015); Parry, Rethinking Personal Jurisdiction after *Bauman* and *Walden*, 19 Lewis & Clark L. Rev. 607 (2015); Doernberg, Resoling *International Shoe*, 2 Tex. A&M L. Rev. 247 (2014); Feder, *Goodyear*, "Home," and the Uncertain Future of Doing Business Jurisdiction, 63 S. C. L. Rev. 671 (2012).

[2] The majority responds that the language from *International Shoe*

employed 11 to 13 salesmen in Washington but did not query how that number compared to the number of salesmen in other States. *Ibid.* As well it should not have; the relative percentage of contacts is irrelevant. The focus should be on the quality and quantity of the defendant's contacts in the forum State.[3]

The majority does even *Daimler* itself a disservice, paying only lipservice to the question the Court purported to reserve there—the possibility of an "exceptional case" in which general jurisdiction would be proper in a forum State that is neither a corporate defendant's place of incorporation nor its principal place of business. See 571 U. S., at ___, n. 19 (slip op., at 20, n. 19). Its opinion here could be understood to limit that exception to the exact facts of *Perkins* v. *Benguet Consol. Mining Co.*, 342 U. S. 437 (1952). See *ante*, at 10–11. That reading is so narrow as to read the exception out of existence entirely; certainly a defendant with significant contacts with more than one State falls outside its ambit. And so it is inevitable under its own reasoning that the majority would conclude that BNSF's contacts with Montana are insufficient to justify the exercise of personal jurisdiction here. This result is perverse. Despite having reserved the possibility of an "exceptional case" in *Daimler*, the majority here has re-

───────────

informs only a specific jurisdiction case. *Ante*, at 12, n. 4. But the majority's view of *International Shoe* is overly restrictive. The terms "specific jurisdiction" and "general jurisdiction" are nowhere to be found in that opinion. And I continue to believe, as I noted in *Daimler*, that there is no material difference between the "continuous and systematic" terminology *International Shoe* used for what we now call specific jurisdiction and the "continuous" and "substantial" terminology it used for what we now call general jurisdiction. See *Daimler*, 571 U. S., at ___, n. 6 (SOTOMAYOR, J., concurring in judgment) (slip op., at 8, n. 6).

[3] Indeed, in neither *Perkins* v. *Benguet Consol. Mining Co.*, 342 U. S. 437 (1952), nor *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408 (1984), did the Court engage in a comparative-contacts analysis.

Opinion of SOTOMAYOR, J.

jected that possibility out of hand.

Worse, the majority reaches its conclusion only by departing from the Court's normal practice.[4]  Had it remanded to the Montana Supreme Court to reevaluate the due process question under the correct legal standard, that court could have examined whether this is such an "exceptional case."  Instead, with its ruling today, the Court unnecessarily sends a signal to the lower courts that the exceptional-circumstances inquiry is all form, no substance.

I respectfully concur in part and dissent in part.

---

[4]The Montana Supreme Court reached this question only by wrongly assuming that 45 U. S. C. §56 is a jurisdictional statute and that a defendant's unique status as a railroad company is dispositive of the jurisdictional question.  A remand rather than an outright reversal is this Court's traditional practice where a lower court applies the incorrect legal standard; we have done it repeatedly just this Term.  See, *e.g., Bethune-Hill* v. *Virginia State Bd. of Elections*, 580 U. S. \_\_\_ (2017); *Bolivarian Republic of Venezuela* v. *Helmerich & Payne Int'l Drilling Co., ante,* p. \_\_\_; *McLane Co.* v. *EEOC, ante,* p. \_\_\_; *Moore* v. *Texas, ante,* p. \_\_\_.