# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2740 SECTION "N" (5) HON. KURT D. ENGELHARDT HON. MICHAEL B. NORTH |

**ESI PROTOCOL**
**THIS DOCUMENT RELATES TO ALL CASES**

Requesting Party and Producing Party, by and through undersigned counsel, have conferred regarding the production of electronically stored information ("ESI") in their possession, custody, or control, agree to the following, and respectfully move the Court to enter an Order approving the same.

**I.    GENERAL**

A.    As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" means the party that may be producing documents in response to the request of requesting party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

B.    This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Insofar as it relates to ESI, this Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule, in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the

1

provision of Rule 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

C.   The Parties agree that this Protocol will serve as a guideline for any document request issued to a Producing Party in this matter. The Parties shall meet and confer regarding the appropriateness of this Protocol with respect to any document requests to a Producing Party. Nothing in this Protocol shall be deemed to prevent any Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

D.   Nothing in this protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

E.   Nothing in this Protocol shall be deemed to prevent a Party from seeking the Court's intervention with respect to any issues that may arise regarding the application of this Protocol to a document request issued to Producing Party and/or any objections Producing Party may have with respect to any such subpoena if the Parties are unable to resolve any such issues or objections without the Court's assistance. Likewise, nothing in this Protocol shall be deemed to prevent any other Party from opposing relief sought from the Court.

## II.   COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's E-discovery Guidelines. In particular, Guideline 2.03 states:

The Court strongly encourages an informal discussion about the discovery of ESI at the earliest reasonable state of the discovery process.  Counsel, or others knowledgeable about the Parties' electronic systems, including how potentially relevant data is stored and retrieved, should be involved or made available as necessary.  Such a discussion will help the Parties be more efficient in framing and responding to ESI discovery issues, reduce costs, and assist the Parties and the Court in the event of a dispute involving ESI issues.

## III.   E-DISCOVERY LIAISON

To promote communication and cooperation between the Parties, each Party shall designate an individual through whom all e-discovery requests and responses are coordinated ("e-discovery liaison"). Regardless of whether the e-discovery liaison is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, he or she must be: (a) Familiar with the Party's electronic systems and capabilities in order to explain these systems and answer relevant questions; (b) Knowledgeable about the technical aspects of e-discovery, including but

not limited to electronic document storage, organization, and format issues; (c) Prepared to participate in eDiscovery dispute resolutions; and (d) Responsible for organizing the Party's eDiscovery efforts to insure consistency and thoroughness.  To that extent:

- Plaintiffs' Steering Committee's e-discovery liaison is Genevieve Zimmerman.
- Sanofi's e-discovery liaison is Patrick Oot.
- Hospira/Pfizer's e-discovery liaison is Mara Cusker Gonzalez.
- Sandoz's e-discovery liaison is Beth Toberman.
- Actavis's e-discovery liaison is Jeff Schaefer.
- Sun's e-discovery liaison is Kathy Kelly.
- McKesson's e-discovery liaison is Julie Y. Park.

## IV.    SCOPE OF ESI

A.    This ordered ESI Protocol is consistent with Rule 26(b)(1) and limits the scope of discovery to discovery regarding any non-privileged data that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

B.    The Parties agree that Producing Party may redact information relating solely to other products and need not produce other-products attachments.  For each other-products attachment not produced, the producing party will provide a slip sheet with the basis for non-production either on the face of the document or in a data field (e.g., other products, privilege).

C.    Data Sources do not include ESI outside the custody and/or control of the Producing Party.

D.    Data sources do not include discovery regarding ESI that is not reasonably accessible.

1.    One example of not reasonably accessible data includes Orphaned Data; which may include unknown or unindexed orphaned data which could be unknown or unindexed materials retained in tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purposes as well as archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are not used in the ordinary course of a party's business operations (e.g. archives created for disaster recovery purposes).

3

2.      Accordingly, the categories of ESI deemed not reasonably accessible or outside the scope of permissible discovery need not be preserved by the Parties.  Parties need not preserve the following categories of ESI for this litigation:

   a.      Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows unless it is the only known source of potentially relevant data;

   b.      Information deemed as junk and/or irrelevant ESI outside the scope of permissible discovery in this or other matters;

   c.      Server, system, or network logs, electronic data temporarily stored by scientific equipment or attached devices;

   d.      Documents collected from custodians that cannot be processed with known or available processing tools;

   e.      ESI sent to or from mobile devices provided a copy of that data is routinely saved elsewhere; and

   f.      Data stored on photocopiers, scanners, and fax machines.

3.      Nothing in this order shall require a party to preserve data that is routinely deleted or over-written in accordance with an established routine records management information governance or system maintenance practice.

4.      Nothing in in this order shall relieve a party from their obligation to preserve data sources accessed in the ordinary course of business, including disaster recovery media and systems used for archival purposes where such data source is the unique source of that data.

E.      Pursuant to a scheduling order of the Court, the Parties agree to exchange in writing the information listed in items (1) through (5) below. The Parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response, and each Party agrees to amend or supplement its responses in a timely manner if it learns that in some material respect its response is incomplete or incorrect.

4

1.   A list of custodians (including current employees, former employees and any other individuals or companies) likely to have discoverable information, including job title and a brief description of job responsibilities and employment period for each individual to the extent that it exists and is reasonably accessible.

2.   A general description of systems for electronic communications and ESI storage ("non-custodial sources") likely to contain discoverable information (e.g. shared network storage and shared electronic work spaces). For databases identified, the Producing Party should provide the following information (to the extent that it is reasonably available):

> Database Name
> Type of Database
> Software Platform
> Software Version
> Business Purpose
> A list of existing relevant reports used in the ordinary course of business
> Currently known Database Owner or Administrator's Name
> Field List within the scope of permissible discovery

The Parties will meet and confer to discuss Field Definitions (including field type, size and use) for fields within the scope of permissible discovery.

3.   A general description or, at the Producing Party's option, copies of the Party's operative document retention policies, throughout the relevant time period, pertaining to known data within the scope of discovery.

4.   If unique, non-duplicative ESI within the scope of discovery is lost or destroyed after the legal hold obligations have been triggered in this case, if known.

5.   A description of any ESI within the scope of discovery that the Producing Party contends is inaccessible or only of limited accessibility and, hence, not producible by that Party without undue burden and/or expense, including:

a.   The reasons for the Party's contention regarding accessibility; and

5

       b.     The proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

F.     After a reasonable inquiry, the Parties will exchange a suggested list of Sources that may be searched depending upon the scope of RFPs and the Producing Party's specific objections to certain requests.

G.     Nothing in this protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under 26(b)(1).

## V.    SEARCH METHODOLOGY

A.     The Parties have begun, and will continue, to meet-and-confer to discuss and attempt to reach an agreement on the appropriate scope and limitations of both preservation and production of ESI. The Parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, the possible use of testing and sampling, relevant date ranges, possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, and the timing of productions. This section governs materials that have been collected for processing and review.

B.     The Parties may employ an electronic search to locate relevant electronic documents. The Producing Party may use a reasonable electronic search of the electronic documents so long as such searches meet the standard of care promulgated in FRCP 26(g).

C.     The Parties recognize the intrinsic value of available tools to expedite review and minimize the expenses associated with eDiscovery. These tools include, but are not limited to, limiting the scope of the electronic search (through the use of search terms, cull terms, time frames, fields, document types, and custodian limitations), predictive coding, technology-assisted review ("TAR"), de-duplication and near de-duplication, e-mail threading, date restrictions, and domain analyses. The Producing Party may deploy these tools and technological methodologies to speed up document review, including global de-duplication within their own productions, using near de-duplication technology, predictive coding and computer assisted review. Producing Parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

D.     The Parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production,

minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. Agreement on a search methodology does not relieve a Party of its obligations under the Federal Rules to conduct a reasonable search and produce all known relevant and responsive documents of which it is aware. The Parties agree that there may be certain categories of relevant ESI that may not require automated searches. Nothing herein waives a Party's ability to object under Rule 34.

E.   <u>Keyword Search Terms.</u>

1.   If used, prior to implementing search terms against collected ESI, the Producing Party will provide a list of proposed search terms to the Requesting party.

2.   The Parties will meet and confer regarding any additional terms proposed by the Requesting Party.

3.   If there is no dispute as to the terms, the Producing Party may proceed. If the Parties are unable to resolve any disputes over search terms through the meet and confer process (which may include statistical sampling of disputed terms), the Parties will submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the search terms in dispute.

4.   The Producing Party agrees to quality check the data for an agreed set of custodial documents that do not hit on any terms (the Null Set) by selecting a statistically valid random sample of the Null Set. The Producing Party agrees to produce the responsive documents from the QC review separate and apart from the regular review, if any. The Parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

F.   <u>Technology Assisted Review.</u>

1.   If used, prior to using predictive coding/technology-assisted-review for the purpose of identifying or culling the documents to be reviewed or produced, or deciding not to use such technology, the Producing Party will notify the Requesting Party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives.

7

2.      While no specific benchmarks or stabilization percentages are agreed to by the parties undertaking TAR processes, it is agreed that the Producing Party has an obligation to make their best efforts to ensure that the process meets a Rule 26(g) standard.

G.      <u>Deficiency Procedure.</u>  If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

1.      As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process.

2.      The Parties will consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, including, but not limited to, one or more of the following:

a.      The Producing Party providing high-level process descriptions demonstrative of the quality controls employed as part of its preservation, collection and review efforts.

b.      The Producing Party conducting a quality control evaluation of its responsiveness review process.

c.      If technology-assisted review was employed, the Producing Party providing a description of the protocol used.

d.      If search terms were used to identify responsive documents, the Producing Party providing the search terms used and considering reasonable requests for additional search terms proposed by the Requesting Party.

e.      If technology-assisted review was employed, a high level description of the sampling/testing procedure to validate the search method.

3.      If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court in the form of a joint discovery letter.

H.    A Producing Party may also utilize search methodology to identify and redact certain documents and page ranges that otherwise require HIPAA redactions, redactions of personally protected information (e.g. tax identification numbers or materials that would permit identity theft) or redactions pursuant to 21 C.F.R. § 314.430(e) and 21 C.F.R. § 20.63(f) for documents produced.

I.    If a Party contends that the production of materials sought from one or more sources are outside the scope of Rule 26(b)(1), the Parties agree, if necessary, to meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

## VI.    TIMING OF DISCOVERY

Discovery of documents shall proceed in the following fashion:

A.    After receiving requests for document production and upon reaching agreement regarding the scope, the Parties shall search and review their documents and produce responsive electronic documents on a rolling basis, until such production is complete.

B.    The Parties will meet and confer at least monthly regarding production status.

## VII.    FORMAT OF PRODUCTION

The Parties will produce ESI in accordance with the following protocol:

A.    <u>Non-Database ESI.</u>

1.    All non-database ESI shall be produced in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size.  Logically unitized document-level PDF may also be acceptable subject to the Parties meeting and conferring provided that agreed upon metadata fields (see paragraph VII.A.8), if they exist, and associated extracted text (see paragraph VII.A.4) are included in the production.

2.    A unitization file, in standard format (*e.g.*, Opticon, Summation DII) showing the Bates number of each page, the appropriate unitization of the documents and the entire family range, will accompany each TIFF document.

3.      A delimited text file that contains agreed upon metadata fields (see paragraph VII.A.8), if those fields exist, and associated extracted (or OCR for paper-based or redacted documents) text (see paragraph VII.A.4) should also be produced and use the following delimiters:

> Field Separator, ASCII character 020: ""
> Quote Character, ASCII character 254 "þ"
> Multi-Entry Delimiter, ASCII character 059: ";"

If the Producing Party requests alternate delimiters, the Parties shall agree on alternate delimiters.

4.      Extracted, searchable full text will be produced for each non-redacted electronic document having extractable text. Each extracted full text file will be named according to the first Bates number of the corresponding electronic document.

5.      Each TIFF or .TIF version of an unredacted electronic document will be created directly from the corresponding native file.

6.      <u>Unredacted spreadsheets.</u>

a.      All unredacted spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields.

b.      The file name should match the Bates number assigned to the file.

c.      The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form.

d.      A slipsheet with the words "File Produced Natively" with Bates number and Confidentiality designation shall be placed to mark where the original Native file was found in the normal course.

e.      The Parties agree to work out a future protocol governing the use and format of documents produced pursuant to paragraph VII.A.6 at trial, depositions or hearings (such as converting to tiff images in accordance with paragraphs VII.A.1-5).

7.     Redacted spreadsheets.

    a.     For redacted spreadsheet files (*e.g.*, Microsoft Excel), TIFF or .TIF versions, if produced, shall include all hidden rows, cells, worksheets as well as any headers or footers associated with the spreadsheet file.

    b.     A Party may elect to produce spreadsheet files as native rather than image files.  In the event that a Producing Party has native redaction capability or seeks to remove a column or row from a spreadsheet for redaction purposes, the Producing Party will identify the natively redacted spreadsheet as redacted in the associated "Redacted" field.

8.     Metadata.

    a.     The following metadata fields associated with each electronic document will be produced, to the extent they exist as electronic metadata associated with the original electronic documents. No Party will have the obligation to manually generate information to populate these fields.

    b.     The following fields will be produced by the Parties:

| FIELD | FORMAT | DESCRIPTION |
|---|---|---|
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| CUSTODIAN | Multiple Choice | Custodian name |
| ALL CUSTODIANS | Multiple Choice | If global deduplication is used, this field will be populated with the custodians who also had a copy of this document or document family, but which is not being produced because of deduplication. |
| DATE_CREATION | Date (date:time) | Creation Date File System |
| DATESENT | Date (date:time) | Sent Date for email |

11

| Date Received | Date (date:time) | Received Date for email |
|---|---|---|
| DATELASTMOD | Date (date:time) | Last Modified File System |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (efiles) |
| File Size | Number field | File size, in megabytes |
| HASHVALUE | Fixed-Length Text | Algorithmic based Hash Value generated by accepted method such as MD5 or SHA1 (or CONTROL_ID for scanned paper) |
| Original File Path | Long Text | Location where the document was kept in the normal course of business |
| Email Folder Path | Long Text | Location where the email was kept in the normal course of business |
| FILEPATH | Fixed-Length Text | Relative Path to any natively produced documents. |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| PAGECOUNT | Whole Number | Page count |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |
| Redacted | Yes or No | Indicates whether the file has been redacted |
| Conversation Index | Fixed-Length Text | The conversation index value for email (e.g. MS Exchange message id) |
| Embedded | Yes or No | File embedded in native file |

       c.    The Parties agree that system metadata dates may or may not be accurate, but Parties will do their best to preserve accuracy of system metadata (e.g. forensics are not required).

       d.    A Producing Party may withhold metadata fields for redacted documents.

    9.    <u>Embedded Files.</u>

a. If a document has another responsive file embedded in it, (*e.g.*, PowerPoint with a spreadsheet in it), the Producing Party may extract and produce the documents as a separate document and treat such documents as attachments to the document.

b. The Producing Party may also choose to have the Requesting Party request that the embedded file be produced as a standalone file pursuant to the following protocol:

    i. The Requesting Party shall provide a list referencing, by Bates numbers, files they believe contain responsive embedded files.

    ii. The Producing Party shall have 10 days to produce the requested embedded files as standalone files, or respond in writing why it will not produce the requested files.

    iii. A Party will have no obligation to produce any embedded file as a standalone file if the embedded file was not processed as a standalone file through the normal processes of the Producing Party's vendor.

    iv. The Parties will not object to the authenticity or admissibility of an embedded document produced pursuant to paragraph VII.A.9.b on grounds relating to the process used to produce the embedded document. All other objections shall be preserved, including but not limited to completeness.

    v. The Producing Party need not produce embedded files as separate files that do not have user created content, including but not limited to irrelevant inline image files (e.g., signatures and company logos).

B. <u>Native Files.</u>

1. The Parties agree that documents will be produced in the imaged format as set forth in paragraph VII.A and that no Requesting Party may request or seek to compel the production of ESI in native format on a wholesale basis, with the exception of spreadsheets as detailed in paragraphs VII.A.6 and 7, although the Producing Party retains the option to produce ESI in native file format.

13

2.     Subsequent to the production of the imaged documents, however, and according to the following protocol, a Requesting Party may request for good cause from a Producing Party that certain imaged files be produced in native format because the files are not reasonably usable in an imaged form.

   a.     The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

   b.     The Producing Party shall have 10 days to produce the native files previously identified as not reasonably usable, or it may object to the demand as unreasonable as follows:

      i.     Within 10 days of receiving a request to produce native files, the Producing Party will respond in writing, setting forth its objection(s) to the production of the files.

      ii.     The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of such files in native format within 10 days of submission of the Responding Party's objection(s), the Parties will submit the matter to the Court.

   c.     Any produced native files will be assigned a unique file name and hash value and will include a cross reference to the Bates number it was originally produced with.

C.     <u>Production Of Documents Collected as Paper.</u> For documents that have been collected in paper format, the same specifications should be used as the production of ESI in paragraph VII.A with the following clarifications:

   1.     A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages.

   2.     To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.

   3.     A text cross reference load file should also be included with the production delivery that lists the beginning Bates number of the document

and the relative path to the text file for that document on the production media.

4. A Producing Party will make best efforts to unitize documents collected as paper prior to scanning. However, the Parties agree that legacy scanned documents in electronic form scanned prior to this litigation will be unitized as they are collected in the ordinary course of business.

D. <u>Production of Databases and Other Structured Data.</u>

1. Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

2. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format described in paragraph VII.A. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form.

3. Nothing herein shall obligate a Producing Party to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

E. <u>Other.</u>  The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

## VIII. DE-DUPLICATION

A. <u>De-Duplication and Near De-Duplication.</u>

1. Parties may de-duplicate globally. If Parties de-duplicate globally, it is agreed that for each production, an updated metadata overlay file will be produced with "All Custodians" data provided as detailed in paragraph VII.A.8.b.

2.     The Parties agree that an e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an otherwise identical e-mail that does not include content in the "bcc" or other blind copy field.

3.     The Parties also agree that the use of near-de-duplication protocols can reduce the cost of the review and production of ESI.

4.     A Party may also de-duplicate "near duplicate" email threads as follows:

    a.     In an email thread, only the final-in-time document need be produced, provided that:

        b.     All previous emails in the thread are contained within the final message.

        c.     The software used to identify these "near-duplicate" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced.

        d.     Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

5.     To the extent that deduplication is used, the Parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial.

B.     <u>E-mail Threads & Attachments.</u>

1.     Producing Party may produce e-mail solely as part of an inclusive e-mail thread, even though such e-mail were transmitted by themselves or as part of a non-inclusive shorter e-mail thread, provided that any otherwise duplicate e-mail thread having a previous e-mail in the thread deleted or modified will be identified as a separate inclusive e-mail.

2.     Requesting Party agrees that Producing Party may produce e-mail messages only as part of an e-mail chain, provided that:

a.    Producing Party will make reasonable efforts to correct any errors that occur as part of its efforts to produce e-mail chains, as described above, including but not limited to incomplete production of attachments.

b.    If any issues arise from Producing Party's production of e-mail chains, even if not strictly production "errors," Producing Party and the Requesting Party will meet and confer in good faith to resolve or address such issues.

c.    If Producing Party wishes to proceed with the production of e-mail messages only as part of an e-mail chain, as described above, the Requesting Party and Producing Party will meet and confer to attempt to resolve the issue. If Producing Party and the Requesting Party cannot resolve the issue, the Parties may seek relief.

3.    E-mails (with or without attachments) may be introduced into evidence as separate documents without other e-mails or attachments in the e-mail chain or with other e-mails or attachments in the chain redacted:

a.    Without an objection based on authenticity or admissibility on the grounds that the e-mails or attachments have been removed from an e-mail chain in the process of producing ESI; and

b.    Without prejudice to an objection based on Federal Rule of Evidence (FRE) 106 that additional documents or e-mails should be admitted in evidence as the remainder of or related writings or statements.

The Parties reserve all other objections to the relevance, authenticity or admissibility of ESI.

## IX.    PRIVILEGE AND REDACTIONS

A.    <u>Privileged Information and Attorney Work Product.</u>  Electronic documents that contain privileged information or attorney work product shall be returned or destroyed if they reasonably appear to have been inadvertently produced or if there is notice of the inadvertent production. The Parties will meet and confer to the extent there is a disagreement on the privileged nature of the document. Otherwise, all copies shall be returned or destroyed by the Requesting Party. To the extent that there is a conflict of law in regards to the Requesting Party's obligation to return or destroy privileged documents, the law most favorable to

the inadvertent Producing Party shall apply.   Nothing herein will prevent a receiving Party's right to object to the privileged nature of the document.

B.    <u>Redactions.</u>

1.    The Parties need not log redacted documents on a privilege log. The privilege designation will be available on the face of the document. A Requesting Party may request additional information if the nature of the privilege is not apparent on the face of the document.

2.    A Producing Party may redact ESI that the Producing Party claims is subject to attorney client privilege, work product protection, contains information that relates to other products, or any ESI for which there is a legal prohibition against disclosure.

3.    The Producing Party shall mark each redaction with the bases for each redaction (e.g., other products, privilege).

4.    The Producing Party shall preserve an un-redacted version of the item.

C.    <u>Claims of Privilege and Privilege Log.</u>

1.    The Producing Party must furnish a log of all documents withheld from production on the basis of attorney-client or work-product privilege ("Privilege Log") within seventy-five (75) days. To the extent a Producing Party needs more time, the Parties will meet and confer.

2.    Consistent with Fed. R.Civ. P. 26(b)(5), the Producing Party's Privilege Log will contain the following information:

a.    Date of document or communication (including month, day, and year)
b.    Type of document
c.    Author of document
d.    Sender of document (if different from author), including email address
e.    Recipient names (including email addresses)
f.    CC names (including email addresses)
g.    BCC names (including email addresses)
h.    Bates range of the privileged documents
i.    Indication of the privilege
j.    File name
k.    If produced, family member designation within the production

l.     A description of the subject matter of the document or communication with information sufficient to demonstrate the existence of a privilege

3.     A Party need only log the topmost e-mail in a thread so long as the description of the subject matter includes enough information sufficient to demonstrate the privilege.

4.     To the extent a Party seeks to use categorical logs in lieu of providing the information above, the Producing Party will initiate a meet and confer with the Requesting Party.  However, documents comprising attorney-client communications and/or attorney work product relating to the litigation and dated after the start of the litigation need not be included on a privilege log.

5.     To the extent available, individuals should be identified with enough information to identify why the privilege attaches, such as name and job title or other justification for assertion of privilege.

6.     If the Requesting Party objects to a document (or part of it) being withheld or redacted as privileged, it shall meet and confer with the Producing Party.  Should the Parties not be able to agree to a resolution of the dispute, the Requesting Party shall submit the dispute to the Court.

## X.     FEDERAL RULE OF EVIDENCE 502.

A.     The production of privileged or work-product protected documents, ESI or other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal proceeding.

B.     This ESI Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502 and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

C.     Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## XI.     COSTS

The Parties agree that the Producing Party bears the burden of discovery costs absent agreement or court order pursuant to Rule 26(c)(1)(B).

**XII.    DESTRUCTION AND RETURN OF ESI**

    A.    Within sixty (60) days after dismissal or entry of final judgment not subject to further appeal, all discovery materials produced must be either destroyed or returned to the Producing Party.

    B.    If destroyed, an affidavit by the Requesting Party with an attached certificate of destruction must be produced to the Producing Party no later than 30 days after the termination of this MDL.  Failure to provide the affidavit and certificate of destruction shall be deemed as a violation of the Court's order.

SO ORDERED:

_____
HON. MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE