EXHIBIT A

(Slip Opinion)          OCTOBER  TERM,  2016                 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BRISTOL-MYERS SQUIBB CO. *v.* SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY, ET AL.

CERTIORARI TO THE SUPREME COURT OF CALIFORNIA

No. 16–466.  Argued April 25, 2017—Decided June 19, 2017

A group of plaintiffs, most of whom are not California residents, sued
Bristol-Myers Squibb Company (BMS) in California state court, al-
leging that the pharmaceutical company's drug Plavix had damaged
their health.  BMS is incorporated in Delaware and headquartered in
New York, and it maintains substantial operations in both New York
and New Jersey.  Although it engages in business activities in Cali-
fornia and sells Plavix there, BMS did not develop, create a market-
ing strategy for, manufacture, label, package, or work on the regula-
tory approval for Plavix in the State.  And the nonresident plaintiffs
did not allege that they obtained Plavix from a California source, that
they were injured by Plavix in California, or that they were treated
for their injuries in California.

The California Superior Court denied BMS's motion to quash ser-
vice of summons on the nonresidents' claims for lack of personal ju-
risdiction, concluding that BMS's extensive activities in the State
gave the California courts general jurisdiction.  Following this
Court's decision in *Daimler AG* v. *Bauman*, 571 U. S. ___, the State
Court of Appeal found that the California courts lacked general juris-
diction.  But the Court of Appeal went on to find that the California
courts had specific jurisdiction over the claims brought by the nonres-
ident plaintiffs.  Affirming, the State Supreme Court applied a "slid-
ing scale approach" to specific jurisdiction, concluding that BMS's
"wide ranging" contacts with the State were enough to support a find-
ing of specific jurisdiction over the claims brought by the nonresident
plaintiffs.  That attenuated connection was met, the court held, in
part because the nonresidents' claims were similar in many ways to
the California residents' claims and because BMS engaged in other
activities in the State.

*Held*: California courts lack specific jurisdiction to entertain the nonresidents' claims. Pp. 4–12.

(a) The personal jurisdiction of state courts is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S. A.* v. *Brown*, 564 U. S. 915, 918. This Court's decisions have recognized two types of personal jurisdiction: general and specific. For general jurisdiction, the "paradigm forum" is an "individual's domicile," or, for corporations, "an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*, at 924. Specific jurisdiction, however, requires "the suit" to "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Daimler*, *supra*, at ___ (internal quotation marks omitted).

The "primary concern" in assessing personal jurisdiction is "the burden on the defendant." *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286, 292. Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. At times, "the Due Process Clause, acting as an instrument of interstate federalism, may . . . divest the State of its power to render a valid judgment." *Id.*, at 294. Pp. 4–7.

(b) Settled principles of specific jurisdiction control this case. For a court to exercise specific jurisdiction over a claim there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear*, *supra*, at 919 (internal quotation marks and brackets omitted). When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. The California Supreme Court's "sliding scale approach"—which resembles a loose and spurious form of general jurisdiction—is thus difficult to square with this Court's precedents. That court found specific jurisdiction without identifying any adequate link between the State and the nonresidents' claims. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California does not allow the State to assert specific jurisdiction over the nonresidents' claims. Nor is it sufficient (or relevant) that BMS conducted research in California on matters unrelated to Plavix. What is needed is a connection between the forum and the specific claims at issue. Cf. *Walden* v. *Fiore*, 571 U. S. ___. Pp. 7–9.

(c) The nonresident plaintiffs' reliance on *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770, and *Phillips Petroleum Co.* v. *Shutts*, 472 U. S. 797, is misplaced. *Keeton* concerned jurisdiction to determine

Cite as: 582 U. S. ____ (2017)     3

Syllabus

*the scope of a claim* involving in-state injury and injury to residents of the State, not, as here, jurisdiction to entertain claims involving no in-state injury and no injury to residents of the forum State. And *Shutts*, which concerned the due process rights of *plaintiffs,* has no bearing on the question presented here. Pp. 9–11.

(d) BMS's decision to contract with McKesson, a California company, to distribute Plavix nationally does not provide a sufficient basis for personal jurisdiction. It is not alleged that BMS engaged in relevant acts together with McKesson in California or that BMS is derivatively liable for McKesson's conduct in California. The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State. Pp. 11–12.

(e) The Court's decision will not result in the parade of horribles that respondents conjure up. It does not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS. Alternatively, the nonresident plaintiffs could probably sue together in their respective home States. In addition, since this decision concerns the due process limits on the exercise of specific jurisdiction by a State, the question remains open whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court. P. 12.

1 Cal. 5th 783, 377 P. 3d 874, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, BREYER, KAGAN, and GORSUCH, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion.

Cite as: 582 U. S. ____ (2017)               1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
_____

No. 16–466
_____

BRISTOL-MYERS SQUIBB COMPANY, PETITIONER *v.* SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY, ET AL.

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF CALIFORNIA

[June 19, 2017]

JUSTICE ALITO delivered the opinion of the Court.

More than 600 plaintiffs, most of whom are not California residents, filed this civil action in a California state court against Bristol-Myers Squibb Company (BMS), asserting a variety of state-law claims based on injuries allegedly caused by a BMS drug called Plavix. The California Supreme Court held that the California courts have specific jurisdiction to entertain the nonresidents' claims. We now reverse.

I

A

BMS, a large pharmaceutical company, is incorporated in Delaware and headquartered in New York, and it maintains substantial operations in both New York and New Jersey. 1 Cal. 5th 783, 790, 377 P. 3d 874, 879 (2016). Over 50 percent of BMS's work force in the United States is employed in those two States. *Ibid.*

BMS also engages in business activities in other jurisdictions, including California. Five of the company's research and laboratory facilities, which employ a total of

around 160 employees, are located there. *Ibid.* BMS also
employs about 250 sales representatives in California and
maintains a small state-government advocacy office in
Sacramento. *Ibid.*

One of the pharmaceuticals that BMS manufactures and
sells is Plavix, a prescription drug that thins the blood and
inhibits blood clotting. BMS did not develop Plavix in
California, did not create a marketing strategy for Plavix
in California, and did not manufacture, label, package, or
work on the regulatory approval of the product in Califor-
nia. *Ibid.* BMS instead engaged in all of these activities
in either New York or New Jersey. *Ibid.* But BMS does
sell Plavix in California. Between 2006 and 2012, it sold
almost 187 million Plavix pills in the State and took in
more than $900 million from those sales. 1 Cal. 5th, at
790–791, 377 P. 3d, at 879. This amounts to a little over
one percent of the company's nationwide sales revenue.
*Id.,* at 790, 377 P. 3d, at 879.

                              B

A group of plaintiffs—consisting of 86 California resi-
dents and 592 residents from 33 other States—filed eight
separate complaints in California Superior Court, alleging
that Plavix had damaged their health. *Id.,* at 789, 377
P. 3d, at 878. All the complaints asserted 13 claims under
California law, including products liability, negligent
misrepresentation, and misleading advertising claims.
*Ibid.* The nonresident plaintiffs did not allege that they
obtained Plavix through California physicians or from any
other California source; nor did they claim that they were
injured by Plavix or were treated for their injuries in
California.

Asserting lack of personal jurisdiction, BMS moved to
quash service of summons on the nonresidents' claims, but
the California Superior Court denied this motion, finding
that the California courts had general jurisdiction over

Opinion of the Court

BMS "[b]ecause [it] engages in extensive activities in California." App. to Pet. for Cert. 150.  BMS unsuccessfully petitioned the State Court of Appeal for a writ of mandate, but after our decision on general jurisdiction in *Daimler AG* v. *Bauman*, 571 U. S. ___ (2014), the California Supreme Court instructed the Court of Appeal "to vacate its order denying mandate and to issue an order to show cause why relief sought in the petition should not be granted." App. 9–10.

The Court of Appeal then changed its decision on the question of general jurisdiction.  228 Cal. App. 4th 605, 175 Cal. Rptr. 3d 412 (2014).  Under *Daimler*, it held, general jurisdiction was clearly lacking, but it went on to find that the California courts had specific jurisdiction over the nonresidents' claims against BMS.  228 Cal. App. 4th 605, 175 Cal. Rptr. 3d, at 425–439.

The California Supreme Court affirmed.  The court unanimously agreed with the Court of Appeal on the issue of general jurisdiction, but the court was divided on the question of specific jurisdiction.  The majority applied a "sliding scale approach to specific jurisdiction." 1 Cal. 5th, at 806, 377 P. 3d, at 889.  Under this approach, "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." *Ibid.* (internal quotation marks omitted). Applying this test, the majority concluded that "BMS's extensive contacts with California" permitted the exercise of specific jurisdiction "based on a less direct connection between BMS's forum activities and plaintiffs' claims than might otherwise be required." *Ibid.*  This attenuated requirement was met, the majority found, because the claims of the nonresidents were similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested). *Id.*, at 803–806, 377 P. 3d, at 887–889.  The court noted that "[b]oth the resident and nonresident plaintiffs' claims are based on the same alleg-

edly defective product and the assertedly misleading
marketing and promotion of that product." *Id.*, at 804, 377
P. 3d, at 888. And while acknowledging that "there is no
claim that Plavix itself was designed and developed in
[BMS's California research facilities]," the court thought it
significant that other research was done in the State.
*Ibid.*

Three justices dissented. "The claims of . . . nonresi-
dents injured by their use of Plavix they purchased and
used in other states," they wrote, "in no sense arise from
BMS's marketing and sales of Plavix in California," and
they found that the "mere similarity" of the residents' and
nonresidents' claims was not enough. *Id.*, at 819, 377
P. 3d, at 898 (opinion of Werdegar, J.). The dissent ac-
cused the majority of "expand[ing] specific jurisdiction to
the point that, for a large category of defendants, it be-
comes indistinguishable from general jurisdiction." *Id.*, at
816, 377 P. 3d, at 896.

We granted certiorari to decide whether the California
courts' exercise of jurisdiction in this case violates the Due
Process Clause of the Fourteenth Amendment. 580 U. S.
___ (2017).[1]

## II

### A

It has long been established that the Fourteenth
Amendment limits the personal jurisdiction of state
courts. See, *e.g.*, *Daimler*, *supra*, at ___–___ (slip op., at 6–
13); *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S.
286, 291 (1980); *International Shoe Co.* v. *Washington*, 326
U. S. 310, 316–317 (1945); *Pennoyer* v. *Neff*, 95 U. S. 714,

----

[1] California law provides that its courts may exercise jurisdiction "on
any basis not inconsistent with the Constitution . . . of the United
States," Cal. Civ. Proc. Code Ann. §410.10 (West 2004); see *Daimler AG*
v. *Bauman*, 571 U. S. ___, ___ (2014) (slip op., at 6).

Opinion of the Court

733 (1878). Because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power," it is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause," *Goodyear Dunlop Tires Operations, S. A.* v. *Brown*, 564 U. S. 915, 918 (2011), which "limits the power of a state court to render a valid personal judgment against a nonresident defendant," *World-Wide Volkswagen*, *supra*, at 291. The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State. See *Walden* v. *Fiore*, 571 U. S. ___, ___–___ (2014) (slip op., at 5–8); *Phillips Petroleum Co.* v. *Shutts*, 472 U. S. 797, 806–807 (1985).

Since our seminal decision in *International Shoe,* our decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Goodyear*, 564 U. S., at 919. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*, at 924. A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. *Id.*, at 919. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *Daimler*, 571 U. S., at ___ (slip op., at 18).

Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, "the *suit*" must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Id.*, at ___ (slip op., at 8) (internal quotation marks omitted; emphasis added); see *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 472–473 (1985); *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408, 414 (1984). In other words, there must be "an affiliation between the forum and the underlying controversy, princi-

pally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U. S., at 919 (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.* (internal quotation marks omitted).

## B

In determining whether personal jurisdiction is present, a court must consider a variety of interests. These include "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice." *Kulko* v. *Superior Court of Cal., City and County of San Francisco*, 436 U. S. 84, 92 (1978); see *Daimler*, *supra*, at ___–___, n. 20 (slip op., at 21–22, n. 20); *Asahi Metal Industry Co.* v. *Superior Court of Cal., Solano Cty.*, 480 U. S. 102, 113 (1987); *World-Wide Volkswagen*, 444 U. S., at 292. But the "primary concern" is "the burden on the defendant." *Id.*, at 292. Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. As we have put it, restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Hanson* v. *Denckla*, 357 U. S. 235, 251 (1958). "[T]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States." *World-Wide Volkswagen*, 444 U. S., at 293. And at times, this federal-

Opinion of the Court

ism interest may be decisive.  As we explained in *World-Wide Volkswagen*, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.*, at 294.

## III

### A

Our settled principles regarding specific jurisdiction control this case.  In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U. S., at 919 (internal quotation marks and brackets in original omitted).  When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.  See *id.*, at 931, n. 6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

For this reason, the California Supreme Court's "sliding scale approach" is difficult to square with our precedents.  Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims.  Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction.  For specific jurisdiction, a defendant's general connections with the forum are not enough.  As we have said, "[a] corporation's

'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.*, at 927 (quoting *International Shoe*, 326 U. S., at 318).

The present case illustrates the danger of the California approach. The State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims. As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California— and allegedly sustained the same injuries as did the non-residents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdic-tion." *Walden*, 571 U. S., at ___ (slip op., at 8). This re-mains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. Nor is it sufficient—or even relevant—that BMS conducted research in California on matters unrelated to Plavix. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

Our decision in *Walden*, *supra*, illustrates this require-ment. In that case, Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a plane bound for Nevada. We held that the Nevada courts lacked specific jurisdiction even though the plain-tiffs were Nevada residents and "suffered foreseeable harm in Nevada." *Id.*, at ___ (slip op., at 11). Because the "*relevant* conduct occurred entirely in Georgi[a] . . . the mere fact that [this] conduct affected plaintiffs with con-

Opinion of the Court

nections to the forum State d[id] not suffice to authorize jurisdiction." *Id.*, at ___ (slip op., at 14) (emphasis added).

In today's case, the connection between the nonresidents' claims and the forum is even weaker. The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, as in *Walden*, all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction. See *World-Wide Volkswagen*, *supra*, at 295 (finding no personal jurisdiction in Oklahoma because the defendant "carr[ied] on no activity whatsoever in Oklahoma" and dismissing "the fortuitous circumstance that a single Audi automobile, sold [by defendants] in New York to New York residents, happened to suffer an accident while passing through Oklahoma" as an "isolated occurrence").

B

The nonresidents maintain that two of our cases support the decision below, but they misinterpret those precedents.

In *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770 (1984), a New York resident sued Hustler in New Hampshire, claiming that she had been libeled in five issues of the magazine, which was distributed throughout the country, including in New Hampshire, where it sold 10,000 to 15,000 copies per month. Concluding that specific jurisdiction was present, we relied principally on the connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State. We noted that "[f]alse statements of fact harm both the subject of the falsehood and the readers of the statement." *Id.*, at 776 (emphasis deleted). This factor amply distinguishes *Keeton* from the present case, for here the nonresidents' claims involve no harm in California and no harm to California residents.

The nonresident plaintiffs in this case point to our holding in *Keeton* that there was jurisdiction in New Hampshire to entertain the plaintiff's request for damages suffered outside the State, *id.*, at 774, but that holding concerned jurisdiction to determine *the scope of a claim* involving in-state injury and injury to residents of the State, not, as in this case, jurisdiction to entertain claims involving no in-state injury and no injury to residents of the forum State. *Keeton* held that there was jurisdiction in New Hampshire to consider the full measure of the plaintiff's claim, but whether she could actually recover out-of-state damages was a merits question governed by New Hampshire libel law. *Id.*, at 778, n. 9.

The Court's decision in *Phillips Petroleum Co.* v. *Shutts*, 472 U. S. 797 (1985), which involved a class action filed in Kansas, is even less relevant. The Kansas court exercised personal jurisdiction over the claims of nonresident class members, and the defendant, Phillips Petroleum, argued that this violated the due process rights of these class members because they lacked minimum contacts with the State.[2] According to the defendant, the out-of-state class members should not have been kept in the case unless they affirmatively opted in, instead of merely failing to opt out after receiving notice. *Id.*, at 812.

Holding that there had been no due process violation, the Court explained that the authority of a State to entertain the claims of nonresident class members is entirely different from its authority to exercise jurisdiction over an out-of-state defendant. *Id.*, at 808–812. Since *Shutts* concerned the due process rights of *plaintiffs*, it has no

---

[2] The Court held that the defendant had standing to argue that the Kansas court had improperly exercised personal jurisdiction over the claims of the out-of-state class members because that holding materially affected the defendant's own interests, specifically, the res judicata effect of an adverse judgment. 472 U. S., at 803–806.

bearing on the question presented here.

Respondents nevertheless contend that *Shutts* supports their position because, in their words, it would be "absurd to believe that [this Court] would have reached the exact opposite result if the petitioner [Phillips] had only invoked its own due-process rights, rather than those of the non-resident plaintiffs." Brief for Respondents 28–29, n. 6 (emphasis deleted). But the fact remains that Phillips did not assert that Kansas improperly exercised personal jurisdiction over it, and the Court did not address that issue.[3] Indeed, the Court stated specifically that its "discussion of personal jurisdiction [did not] address class actions where the jurisdiction is asserted against a *defendant* class." *Shutts*, *supra*, at 812, n. 3.

## C

In a last ditch contention, respondents contend that BMS's "decision to contract with a California company [McKesson] to distribute [Plavix] nationally" provides a sufficient basis for personal jurisdiction. Tr. of Oral Arg. 32. But as we have explained, "[t]he requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction." *Rush* v. *Savchuk*, 444 U. S. 320, 332 (1980); see *Walden*, 571 U. S., at ___ (slip op, at 8) ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction"). In this case, it is not alleged that BMS engaged in relevant acts together with McKesson in California. Nor is it alleged that BMS is derivatively liable for McKesson's conduct in California. And the nonresidents "have adduced no evidence to show how or by whom the

--------

[3] Petitioner speculates that Phillips did not invoke its own due process rights because it was believed at the time that the Kansas court had general jurisdiction. See Reply Brief 7, n. 1.

Plavix they took was distributed to the pharmacies that dispensed it to them." 1 Cal. 5th, at 815, 377 P. 3d, at 895 (Werdegar, J., dissenting) (emphasis deleted). See Tr. of Oral Arg. 33 ("It is impossible to trace a particular pill to a particular person . . . .  It's not possible for us to track particularly to McKesson").  The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State.

## IV

Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up.  See Brief for Respondents 38–47.  Our decision does not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS.  BMS concedes that such suits could be brought in either New York or Delaware.  See Brief for Petitioner 13.  Alternatively, the plaintiffs who are residents of a particular State—for example, the 92 plaintiffs from Texas and the 71 from Ohio—could probably sue together in their home States.  In addition, since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.  See *Omni Capital Int'l, Ltd.* v. *Rudolf Wolff & Co.*, 484 U. S. 97, 102, n. 5 (1987).

\*      \*      \*

The judgment of the California Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

1

SOTOMAYOR, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————

No. 16–466

————

## BRISTOL-MYERS SQUIBB COMPANY, PETITIONER *v.* SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY, ET AL.

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF CALIFORNIA

[June 19, 2017]

JUSTICE SOTOMAYOR, dissenting.

Three years ago, the Court imposed substantial curbs on the exercise of general jurisdiction in its decision in *Daimler AG* v. *Bauman*, 571 U. S. ___ (2014). Today, the Court takes its first step toward a similar contraction of specific jurisdiction by holding that a corporation that engages in a nationwide course of conduct cannot be held accountable in a state court by a group of injured people unless all of those people were injured in the forum State.

I fear the consequences of the Court's decision today will be substantial. The majority's rule will make it difficult to aggregate the claims of plaintiffs across the country whose claims may be worth little alone. It will make it impossible to bring a nationwide mass action in state court against defendants who are "at home" in different States. And it will result in piecemeal litigation and the bifurcation of claims. None of this is necessary. A core concern in this Court's personal jurisdiction cases is fairness. And there is nothing unfair about subjecting a massive corporation to suit in a State for a nationwide course of conduct that injures both forum residents and nonresidents alike.

I

Bristol-Myers Squibb is a Fortune 500 pharmaceutical

company incorporated in Delaware and headquartered in
New York.   It employs approximately 25,000 people
worldwide and earns annual revenues of over $15 billion.
In the late 1990's, Bristol-Myers began to market and sell
a prescription blood thinner called Plavix.   Plavix was
advertised as an effective tool for reducing the risk of
blood clotting for those vulnerable to heart attacks and to
strokes.   The ads worked: At the height of its popularity,
Plavix was a blockbuster, earning Bristol-Myers billions of
dollars in annual revenues.

Bristol-Myers' advertising and distribution efforts were
national in scope.   It conducted a single nationwide adver-
tising campaign for Plavix, using television, magazine,
and Internet ads to broadcast its message.   A consumer in
California heard the same advertisement as a consumer in
Maine about the benefits of Plavix.   Bristol-Myers' distri-
bution of Plavix also proceeded through nationwide chan-
nels: Consistent with its usual practice, it relied on a small
number of wholesalers to distribute Plavix throughout the
country.   One of those distributors, McKesson Corporation,
was named as a defendant below; during the relevant time
period, McKesson was responsible for almost a quarter of
Bristol-Myers' revenue worldwide.

The 2005 publication of an article in the New England
Journal of Medicine questioning the efficacy and safety of
Plavix put Bristol-Myers on the defensive, as consumers
around the country began to claim that they were injured
by the drug.   The plaintiffs in these consolidated cases are
86 people who allege they were injured by Plavix in Cali-
fornia and several hundred others who say they were
injured by the drug in other States.[1]   They filed their suits

——————

[1] Like the parties and the majority, I refer to these people as "resi-
dents" and "nonresidents" of California as a convenient shorthand.   See
*ante,* at 2; Brief for Petitioner 4–5, n. 1; Brief for Respondents 2, n. 1.

SOTOMAYOR, J., dissenting

in California Superior Court, raising product-liability claims against Bristol-Myers and McKesson.  Their claims are "materially identical," as Bristol-Myers concedes.  See Brief for Petitioner 4, n. 1.  Bristol-Myers acknowledged it was subject to suit in California state court by the residents of that State.  But it moved to dismiss the claims brought by the nonresident plaintiffs—respondents here— for lack of jurisdiction.  The question here, accordingly, is not whether Bristol-Myers is subject to suit in California on claims that arise out of the design, development, manufacture, marketing, and distribution of Plavix—it is.  The question is whether Bristol-Myers is subject to suit in California only on the residents' claims, or whether a state court may also hear the nonresidents' "identical" claims.

II

A

As the majority explains, since our pathmarking opinion in *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), the touchstone of the personal-jurisdiction analysis has been the question whether a defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Id.,* at 316 (quoting *Milliken* v. *Meyer*, 311 U. S. 457, 463 (1940)).  For decades this Court has considered that question through two different jurisdictional frames: "general" and "specific" jurisdiction.  See *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408, 414, nn. 8–9 (1984).  Under our current case law, a state court may exercise general, or all-purpose, jurisdiction over a defendant corporation only if its "affiliations with the State are so 'continuous and systematic' as

———————

For jurisdictional purposes, the important question is generally (as it is here) where a plaintiff was injured, not where he or she resides.

to render [it] essentially at home in the forum State."
*Goodyear Dunlop Tires Operations, S. A.* v. *Brown*, 564
U. S. 915, 919 (2011).[2]

If general jurisdiction is not appropriate, however, a
state court can exercise only specific, or case-linked, juris-
diction over a dispute. *Id.,* at 923–924. Our cases have
set out three conditions for the exercise of specific jurisdic-
tion over a nonresident defendant. 4A C. Wright, A. Mil-
ler, & A. Steinman, Federal Practice and Procedure §1069,
pp. 22–78 (4th ed. 2015) (Wright); see also *id.,* at 22–27,
n. 10 (collecting authority). First, the defendant must
have "'purposefully avail[ed] itself of the privilege of con-
ducting activities within the forum State'" or have pur-
posefully directed its conduct into the forum State. *J.
McIntyre Machinery, Ltd.* v. *Nicastro*, 564 U. S. 873, 877
(2011) (plurality opinion) (quoting *Hanson* v. *Denckla*, 357
U. S. 235, 253 (1958)). Second, the plaintiff's claim must
"arise out of or relate to" the defendant's forum conduct.
*Helicopteros*, 466 U. S., at 414. Finally, the exercise of
jurisdiction must be reasonable under the circumstances.
*Asahi Metal Industry Co.* v. *Superior Court of Cal., Solano
Cty.*, 480 U. S. 102, 113–114 (1987); *Burger King Corp.* v.
*Rudzewicz*, 471 U. S. 462, 477–478 (1985). The factors
relevant to such an analysis include "the burden on the
defendant, the forum State's interest in adjudicating the
dispute, the plaintiff's interest in obtaining convenient

───────────

[2]Respondents do not contend that the California courts would be able
to exercise general jurisdiction over Bristol-Myers—a concession that
follows directly from this Court's opinion in *Daimler AG* v. *Bauman*,
571 U. S. ___ (2014). As I have explained, I believe the restrictions the
Court imposed on general jurisdiction in *Daimler* were ill advised. See
*BNSF R. Co.* v. *Tyrrell*, 581 U. S. ___, ___ (2017) (SOTOMAYOR, J.,
concurring in part and dissenting in part); *Daimler*, 571 U. S., at ___
(SOTOMAYOR, J., concurring in judgment). But I accept respondents'
concession, for the purpose of this case, that Bristol-Myers is not
subject to general jurisdiction in California.

and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.*, at 477 (internal quotation marks omitted).

## B

Viewed through this framework, the California courts appropriately exercised specific jurisdiction over respondents' claims.

First, there is no dispute that Bristol-Myers "purposefully avail[ed] itself," *Nicastro*, 564 U. S., at 877, of California and its substantial pharmaceutical market. Bristol-Myers employs over 400 people in California and maintains half a dozen facilities in the State engaged in research, development, and policymaking. *Ante,* at 1–2. It contracts with a California-based distributor, McKesson, whose sales account for a significant portion of its revenue. *Supra,* at 2. And it markets and sells its drugs, including Plavix, in California, resulting in total Plavix sales in that State of nearly $1 billion during the period relevant to this suit.

Second, respondents' claims "relate to" Bristol-Myers' in-state conduct. A claim "relates to" a defendant's forum conduct if it has a "connect[ion] with" that conduct. *International Shoe*, 326 U. S., at 319. So respondents could not, for instance, hale Bristol-Myers into court in California for negligently maintaining the sidewalk outside its New York headquarters—a claim that has no connection to acts Bristol-Myers took in California. But respondents' claims against Bristol-Myers look nothing like such a claim. Respondents' claims against Bristol-Myers concern conduct materially identical to acts the company took in California: its marketing and distribution of Plavix, which it undertook on a nationwide basis in all 50 States. That respondents were allegedly injured by this nationwide course of conduct in Indiana, Oklahoma, and Texas, and

not California, does not mean that their claims do not
"relate to" the advertising and distribution efforts that
Bristol-Myers undertook in that State. All of the plain-
tiffs—residents and nonresidents alike—allege that they
were injured by the same essential acts. Our cases require
no connection more direct than that.

Finally, and importantly, there is no serious doubt that
the exercise of jurisdiction over the nonresidents' claims is
reasonable. Because Bristol-Myers already faces claims
that are identical to the nonresidents' claims in this suit,
it will not be harmed by having to defend against respond-
ents' claims: Indeed, the alternative approach—litigating
those claims in separate suits in as many as 34 different
States—would prove far more burdensome. By contrast,
the plaintiffs' "interest in obtaining convenient and effec-
tive relief," *Burger King*, 471 U. S., at 477 (internal quota-
tion marks omitted), is obviously furthered by participat-
ing in a consolidated proceeding in one State under shared
counsel, which allows them to minimize costs, share dis-
covery, and maximize recoveries on claims that may be too
small to bring on their own. Cf. *American Express Co.* v.
*Italian Colors Restaurant*, 570 U. S. ___, ___ (2013)
(KAGAN., J., dissenting) (slip op., at 7) ("No rational actor
would bring a claim worth tens of thousands of dollars if
doing so meant incurring costs in the hundreds of thou-
sands"). California, too, has an interest in providing a
forum for mass actions like this one: Permitting the non-
residents to bring suit in California alongside the resi-
dents facilitates the efficient adjudication of the residents'
claims and allows it to regulate more effectively the con-
duct of both nonresident corporations like Bristol-Myers
and resident ones like McKesson.

Nothing in the Due Process Clause prohibits a Califor-
nia court from hearing respondents' claims—at least not
in a case where they are joined to identical claims brought
by California residents.

SOTOMAYOR, J., dissenting

### III

Bristol-Myers does not dispute that it has purposefully availed itself of California's markets, nor—remarkably—did it argue below that it would be "unreasonable" for a California court to hear respondents' claims. See 1 Cal. 5th 783, 799, n. 2, 377 P. 3d 874, 885, n. 2 (2016). Instead, Bristol-Myers contends that respondents' claims do not "arise out of or relate to" its California conduct. The majority agrees, explaining that no "adequate link" exists "between the State and the nonresidents' claims," *ante,* at 8—a result that it says follows from "settled principles [of] specific jurisdiction," *ante,* at 7. But our precedents do not require this result, and common sense says that it cannot be correct.

### A

The majority casts its decision today as compelled by precedent. *Ibid.* But our cases point in the other direction.

The majority argues at length that the exercise of specific jurisdiction in this case would conflict with our decision in *Walden* v. *Fiore,* 571 U. S. ___ (2014). That is plainly not true. *Walden* concerned the requirement that a defendant "purposefully avail" himself of a forum State or "purposefully direc[t]" his conduct toward that State, *Nicastro,* 564 U. S., at 877, not the separate requirement that a plaintiff's claim "arise out of or relate to" a defendant's forum contacts. The lower court understood the case that way. See *Fiore* v. *Walden,* 688 F. 3d 558, 576–582 (CA9 2012). The parties understood the case that way. See Brief for Petitioner 17–31, Brief for Respondent 20–44, Brief for United States as *Amicus Curiae* 12–18, in *Walden* v. *Fiore,* O. T. 2013, No. 12–574. And courts and commentators have understood the case that way. See, *e.g.,* 4 Wright §1067.1, at 388–389. *Walden* teaches only that a defendant must have purposefully availed itself of the forum, and that a plaintiff cannot rely solely on a

defendant's contacts with a forum resident to establish the necessary relationship.  See 571 U. S., at ___ (slip op., at 8) ("[T]he plaintiff cannot be the only link between the defendant and the forum").  But that holding has nothing to do with the dispute between the parties: Bristol-Myers has purposefully availed itself of California—to the tune of millions of dollars in annual revenue.  Only if its language is taken out of context, *ante,* at 8–9, can *Walden* be made to seem relevant to the case at hand.

By contrast, our decision in *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770 (1984), suggests that there should be no such barrier to the exercise of jurisdiction here.  In *Keeton*, a New York resident brought suit against an Ohio corporation, a magazine, in New Hampshire for libel.  She alleged that the magazine's nationwide course of conduct—its publication of defamatory statements—had injured her in every State, including New Hampshire.  This Court unanimously rejected the defendant's argument that it should not be subject to "nationwide damages" when only a small portion of those damages arose in the forum State, *id.,* at 781; exposure to such liability, the Court explained, was the consequence of having "continuously and deliberately exploited the New Hampshire market," *ibid.*  The majority today dismisses *Keeton* on the ground that the defendant there faced one plaintiff's claim arising out of its nationwide course of conduct, whereas Bristol-Myers faces many more plaintiffs' claims.  See *ante,* at 10.  But this is a distinction without a difference: In either case, a defendant will face liability in a single State for a single course of conduct that has impact in many States.  *Keeton* informs us that there is no unfairness in such a result.

The majority's animating concern, in the end, appears to be federalism: "[T]erritorial limitations on the power of the respective States," we are informed, may—and today do—trump even concerns about fairness to the parties.  *Ante,*

at 6. Indeed, the majority appears to concede that this is
not, at bottom, a case about fairness but instead a case
about power: one in which "'the defendant would suffer
minimal or no inconvenience from being forced to litigate
before the tribunals of another State; . . . the forum State
has a strong interest in applying its law to the contro-
versy; [and] the forum State is the most convenient location
for litigation'" but personal jurisdiction still will not lie.
*Ante,* at 7 (quoting *World-Wide Volkswagen Corp.* v. *Wood-
son,* 444 U. S. 286, 294 (1980)). But I see little reason to
apply such a principle in a case brought against a large
corporate defendant arising out of its nationwide conduct.
What interest could any single State have in adjudicating
respondents' claims that the other States do not share? I
would measure jurisdiction first and foremost by the
yardstick set out in *International Shoe*—"fair play and
substantial justice," 326 U. S., at 316 (internal quotation
marks omitted). The majority's opinion casts that settled
principle aside.

## B

I fear the consequences of the majority's decision today
will be substantial. Even absent a rigid requirement that
a defendant's in-state conduct must actually cause a plain-
tiff's claim,[3] the upshot of today's opinion is that plaintiffs

_____

[3] Bristol-Myers urges such a rule upon us, Brief for Petitioner 14–37,
but its adoption would have consequences far beyond those that follow
from today's factbound opinion. Among other things, it might call into
question whether even a plaintiff *injured* in a State by an item identical
to those sold by a defendant in that State could avail himself of that
State's courts to redress his injuries—a result specifically contemplated
by *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U. S. 286, 297 (1980).
See Brief for Civil Procedure Professors as *Amici Curiae* 14–18; see also
*J. McIntyre Machinery, Ltd.* v. *Nicastro,* 564 U. S. 873, 906–907 (2011)
(GINSBURG, J., dissenting). That question, and others like it, appears to
await another case.

cannot join their claims together and sue a defendant in a
State in which only some of them have been injured.  That
rule is likely to have consequences far beyond this case.

First, and most prominently, the Court's opinion in this
case will make it profoundly difficult for plaintiffs who are
injured in different States by a defendant's nationwide
course of conduct to sue that defendant in a single, consol-
idated action.  The holding of today's opinion is that such
an action cannot be brought in a State in which only some
plaintiffs were injured.  Not to worry, says the majority:
The plaintiffs here could have sued Bristol-Myers in New
York or Delaware; could "probably" have subdivided
their separate claims into 34 lawsuits in the States in which
they were injured; and might have been able to bring a
single suit in federal court (an "open . . . question").  *Ante,*
at 12.  Even setting aside the majority's caveats, what is
the purpose of such limitations?   What interests are
served by preventing the consolidation of claims and
limiting the forums in which they can be consolidated?
The effect of the Court's opinion today is to eliminate
nationwide mass actions in any State other than those in
which a defendant is "'essentially at home.'"[4]  See *Daim-
ler*, 571 U. S., at ___ (slip op., at 8).  Such a rule hands one
more tool to corporate defendants determined to prevent
the aggregation of individual claims, and forces injured
plaintiffs to bear the burden of bringing suit in what will
often be far flung jurisdictions.

Second, the Court's opinion today may make it impossi-

---

[4]The Court today does not confront the question whether its opinion
here would also apply to a class action in which a plaintiff injured in
the forum State seeks to represent a nationwide class of plaintiffs, not
all of whom were injured there.  Cf. *Devlin* v. *Scardelletti*, 536 U. S. 1,
9–10 (2002) ("Nonnamed class members . . . may be parties for some
purposes and not for others"); see also Wood, Adjudicatory Jurisdiction
and Class Actions, 62 Ind. L. J. 597, 616–617 (1987).

SOTOMAYOR, J., dissenting

ble to bring certain mass actions at all. After this case, it is difficult to imagine where it might be possible to bring a nationwide mass action against two or more defendants headquartered and incorporated in different States. There will be no State where both defendants are "at home," and so no State in which the suit can proceed. What about a nationwide mass action brought against a defendant not headquartered or incorporated in the United States? Such a defendant is not "at home" in any State. Cf. *id.,* at ___–___ (SOTOMAYOR, J., concurring in judgment) (slip op., at 18–19). Especially in a world in which defendants are subject to general jurisdiction in only a handful of States, see *ibid.*, the effect of today's opinion will be to curtail—and in some cases eliminate—plaintiffs' ability to hold corporations fully accountable for their nationwide conduct.

The majority chides respondents for conjuring a "parade of horribles," *ante,* at 12, but says nothing about how suits like those described here will survive its opinion in this case. The answer is simple: They will not.

*       *       *

It "does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe*, 326 U. S., at 316, to permit plaintiffs to aggregate claims arising out of a single nationwide course of conduct in a single suit in a single State where some, but not all, were injured. But that is exactly what the Court holds today is barred by the Due Process Clause.

This is not a rule the Constitution has required before. I respectfully dissent.