UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)   *     Civil Action No. 16-MD-2740
PRODUCTS LIABILITY LITIGATION *
                               *     Section N
* * * * * * * * * * * * * * * *


REPORTER'S OFFICIAL TRANSCRIPT OF THE
MOTION HEARING HELD BEFORE THE
HONORABLE KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE
JULY 6, 2017

Appearances:


FOR THE PLAINTIFFS            Barrios Kingsdorf & Casteix, LLP
                              BY:  DAWN M. BARRIOS, ESQ.
                              701 Poydras Street, Suite 3650
                              New Orleans, LA 70139
                              504.524.3300

                              Gainsburgh Benjamin David Meunier
                                & Warshauer, LLC
                              BY:  M. PALMER LAMBERT, ESQ.
                              1100 Poydras Street, Suite 2800
                              New Orleans, Louisiana 70163
                              504.522.2304


FOR THE CALIFORNIA            Gomez Trial Attorneys
PLAINTIFFS                    BY:  AHMED S. DIAB, ESQ.
                              655 West Broadway
                              Suite 1700
                              San Diego, CA  92101
                              619.237.3490


FOR THE DELAWARE              Napoli Shkolnik, PLLC
PLAINTIFFS                    BY:  HUNTER J. SHKOLNIK, ESQ.
                              400 Broadhollow Road
                              Suite 305
                              Melville, NY  11747
                              212.397.1000

```
 1   Appearances:

 2   FOR SANDOZ, A NOVARTIS          Greenburg Traurig, LLP
     DIVISION                        BY:  R. CLIFTON MERRELL, ESQ.
 3                                   Terminus 200
                                     3333 Piedmont Road, NE
 4                                   Atlanta, GA  30305
                                     678.925.6600
 5
     FOR SANOFI S.A.                 Irwin Fritchie Urquhart
 6                                     & Moore, LLC
                                     BY:  DOUGLAS MOORE, ESQ.
 7                                   400 Poydras Street, Suite 2700
                                     New Orleans, LA  70130
 8                                   504.310.2163

 9   FOR SANOFI S.A.                 Shook, Hardy & Bacon
                                     BY:  JON STRONGMAN, ESQ.
10                                   1155 F. Street NW
                                     Suite 200
11                                   Washington, DC  20004
                                     202.472.6576
12
     FOR HOSPIRA                     Chaffe McCall, LLP
13                                   BY:  JOHN F. OLINDE, ESQ.
                                     1100 Poydras Street, Suite 2300
14                                   New Orleans, LA  70163
                                     504.585.7241
15

16

17

18

19

20

21   Official Court Reporter:       Tana J. Hess, CCR, FCRR
                                     500 Poydras Street, Room B-275
22                                   New Orleans, LA 70130
                                     504.589.7781
23

24
     Proceedings recorded by mechanical stenography using
25   computer-aided transcription software.
```

**PROCEEDINGS**

**(July 6, 2017)**

(Call to order of the Court.)

**THE COURT:**  Good morning.  As you were.

The Court has on its docket this morning in the In Re Taxotere Docetaxel Products Liability Litigation, MDL 2740, two motions.  One is the Delaware Plaintiffs' Motion to Remand to the Superior Court of Delaware, which is record document 473, and also the Plaintiffs' Omnibus Motion to Remand Certain Cases to the Superior Courts of California, record document number 469.

Counsel, those of you who will be arguing this motion, if you would make your appearances, please.

**MR. SHKOLNIK:**  Good morning, Your Honor.  Hunter Shkolnik.  Law firm is Napoli Shkolnik on behalf of plaintiffs in the Delaware motion.

**THE COURT:**  All right.

**MR. DIAB:**  Good morning, Your Honor.  Ahmed Diab, Gomez Trial Attorneys on behalf of the California folks.

**MR. MOORE:**  Good morning, Your Honor.  Douglas Moore on behalf of the Sanofi.  I'll be addressing the Delaware motion.

**THE COURT:**  Okay.

**MR. STRONGMAN:**  And good morning.  Jon Strongman on behalf of Sanofi, and I will addressing the California motion.

10:26AM  1       **THE COURT:**  Okay.  Counsel, I had already advised

10:26AM  2   that I would give each side a total of 20 minutes per side, and

10:26AM  3   that's what I intend to do today.  So I assume that although

10:26AM  4   two attorneys will be addressing the Court on each side on

10:26AM  5   behalf of both of these motions, you've made plans to divide

10:26AM  6   your time accordingly.  So if we can go ahead and begin with

10:26AM  7   the movants.  You can divide it however you want.  You can

10:26AM  8   spend as much time talking about whichever one you'd like to

10:26AM  9   talk about.  Some may require more time than others, but I will

10:26AM  10  be using my trusty timekeeper here.  If I thought that longer

10:26AM  11  than 40 minutes would somehow cause one side or the other to

10:27AM  12  surrender, I would give you more time.  However, I suspect that

10:27AM  13  after 40 minutes we'll be no closer to a resolution of these

10:27AM  14  issues amicably than we are at this time.

10:27AM  15       I have read all of the materials you've

10:27AM  16  submitted.  I appreciate your briefing.  All of it was

10:27AM  17  outstanding and very clear.  I'm familiar with the relevant

10:27AM  18  case law that you've cited in your briefs, so if you would take

10:27AM  19  that into account and tailor your remarks accordingly, that

10:27AM  20  will be fine.

10:27AM  21       Why don't we go ahead and begin?  Mr. Shkolnik,

10:27AM  22  are you going to go ahead and begin?

10:27AM  23       **MR. SHKOLNIK:**  Thank you, Your Honor.

10:27AM  24       **THE COURT:**  All right.

10:27AM  25       **MR. SHKOLNIK:**  If it please the Court, Your Honor,

I'm going to try to cut this very short --

        **THE COURT:**  Sure.

        **MR. SHKOLNIK:**  -- given the time constraints.  We're dealing with a situation -- sorry -- in Delaware which is -- is fairly unique to that jurisdiction, and it's something that we're seeing on a regular basis, not just in Taxotere litigation, but in many other cases that are being filed in that state.  The problem that we face as a plaintiff is you file what we would call our summons and complaint with the clerk, and there is a delay where the clerk does not issue the summons.  Then it has to go to a sheriff.  And what we're seeing -- and we're seeing it more since the *Bristol-Myers Squibb* case was working its way up the appellate channel to the Supreme Court.  We were seeing the in-state defendants who -- who clearly have general jurisdiction there, immediately tracking the filings with the Court.  Even though plaintiff still can't file yet, they're tracking them with the Court and literally within sometimes hours, in this case within days, removing the case to federal court, and then as quickly as they file the remand, the tag-along notices are filed into the federal -- into the JPML.

        This -- this process has a name, and as we spell it out in the papers, this snap removal flies in the face of the statute.  There are situations where I guess it could be argued and I think the courts in Texas have found where it's

10:29AM 1      appropriate if it's an out-of-state defendant who's doing the

10:29AM 2      snap removal, because it wouldn't have made a difference, and

10:29AM 3      it doesn't thwart the purpose of the removal statute or the

10:29AM 4      diversity jurisdiction requirements.

10:29AM 5           Here what we're facing is two in-state

10:29AM 6      defendants, ones who are subject to general jurisdiction in the

10:29AM 7      state of Delaware, tracking the filings and removing, and this

10:29AM 8      couldn't be any more glaring a situation of gamesmanship to

10:29AM 9      thwart a statute and gamesmanship to divest the state court of

10:30AM 10      jurisdiction.  And from our standpoint, the idea of the snap

10:30AM 11      removal from an in-state defendant should not be condoned.

10:30AM 12          **THE COURT:**  Is there any argument that I'm missing

10:30AM 13      about diversity otherwise other than this provision regarding

10:30AM 14      the service issue and the timing of service?  Is there any

10:30AM 15      other diversity consideration that could be made or has been

10:30AM 16      made?  And I'm not talking about just in this case.  You

10:30AM 17      referenced the problem generally.  Or is this happening on

10:30AM 18      cases that otherwise there would be no diversity whatsoever,

10:30AM 19      and it's just being done as a matter of practice as a --

10:30AM 20      somewhat of an entre into federal court based upon the

10:30AM 21      misfortunes of service or the timing of service.

10:30AM 22          **MR. SHKOLNIK:**  It is limited -- there is no other

10:30AM 23      basis for a -- of a failure of jurisdiction.

10:30AM 24          **THE COURT:**  Okay.

10:30AM 25          **MR. SHKOLNIK:**  There -- it's just not there.  And we

10:30AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:31AM
10:32AM
10:32AM
10:32AM
10:32AM
10:32AM
10:32AM
10:32AM
10:32AM

1   even cite in our papers, there's a series of New Jersey cases,

2   because this is where it first came up where many of the

3   pharmaceutical companies that are based in New Jersey were

4   engaging in snap removal, and it was plaintiff from out of

5   state, New Jersey corporation, and literally the day of filing

6   there is removal, and then the decisions for the most part all

7   remand back.

8            Here it's -- it's a little bit different because

9   we have the diverse defendants also in the case, but they never

10  joined.  They never did anything in relation to the removal.

11           So I just think the Court has to look at the

12  underlying rationale for the statute and the removal and basis

13  of jurisdiction here, and it's just not here.  It's not fair,

14  and gamesmanship should not be condoned.

15           The second point which I think is important and

16  it was addressed by this Court in the *Gonzalez* case was the

17  issue of assuming values in excess of $75,000.  Here we see the

18  boilerplate language utilized by the defendant in the removal.

19  That was something that was done in the *Gonzalez* case, too, and

20  we don't think that's sufficient.  If the defendants want to

21  come forward and allege that there are facts to support damages

22  in excess of $75,000 by a preponderance of the evidence, they

23  have an obligation to do that, and they failed here.

24           The pleadings -- we're not suggesting the

25  plaintiff could not be awarded more than $75,000, but that's a

10:32AM 1    decision of a jury down the road.  It could be less.  It could

10:32AM 2    be more.  And I don't think they met their burden.

10:32AM 3              Your Honor, rather than just repeating what's in

10:32AM 4    the papers --

10:32AM 5              THE COURT:  Well, I appreciate that.  And I have six

10:32AM 6    pages that you all have provided me I believe as an Exhibit B

10:32AM 7    to one of the declarations.  Are all of the plaintiffs in the

10:32AM 8    these six pages Delaware residents that have sued the Delaware

10:32AM 9    company?

10:33AM 10             MR. SHKOLNIK:  No, they are not -- they are

10:33AM 11   non-Delaware plaintiffs.

10:33AM 12             THE COURT:  Okay.  Are any of them Delaware

10:33AM 13   plaintiffs?

10:33AM 14             MR. SHKOLNIK:  Your Honor, I don't want to say off

10:33AM 15   the top of my head.  I'm not sure if there's any Delaware

10:33AM 16   plaintiffs.

10:33AM 17             THE COURT:  Okay.

10:33AM 18             MR. SHKOLNIK:  I don't have that answer.  I

10:33AM 19   apologize.  I can get that and provide it to the Court --

10:33AM 20             THE COURT:  Okay.

10:33AM 21             MR. SHKOLNIK:  -- after I defer to counsel for the

10:33AM 22   next argument.

10:33AM 23             THE COURT:  Okay.  All right.

10:33AM 24             MR. SHKOLNIK:  Thank you.

10:33AM 25             THE COURT:  Thank you.  Let's see.  Are we still

10:33AM  1   on --

10:33AM  2              MR. MOORE:  Do you want to do both motions?

10:33AM  3              THE COURT:  Do you want to do it this way, or do you

10:33AM  4   want to argue both of them?  I can --

10:33AM  5              MR. MOORE:  Whatever the Court prefers.

10:33AM  6              THE COURT:  I'd just as soon go ahead and let them

10:33AM  7   have their say, and then I'll hear from both of you, and then

10:33AM  8   the remaining time will be for rebuttal on plaintiffs' side.

10:33AM  9              MR. MOORE:  Thank you, Your Honor.

10:33AM  10             THE COURT:  Thank you.  And you've used about 5:45,

10:33AM  11  so you may go ahead and proceed.

10:33AM  12             MR. DIAB:  Good morning, Your Honor.  Ahmed Diab on

10:33AM  13  behalf of the California folks.  May it please the Court, we

10:33AM  14  appreciate Your Honor giving us some time here to clarify some

10:33AM  15  of the arguments made in the papers.

10:33AM  16             Your Honor, what I thought I'd do today is sort

10:33AM  17  of provide the Court with sort of the four guiding principles

10:34AM  18  as I'd call them in terms of looking at the California remands,

10:34AM  19  and I think there's four key points to keep in mind.

10:34AM  20             First of all, there's a strong presumption

10:34AM  21  against removal.

10:34AM  22             Second of all, there's -- all disputed questions

10:34AM  23  of fact must be resolved in the plaintiff's favor.

10:34AM  24             Third, Your Honor, the defense carries a heavy burden

10:34AM  25  of showing that there's absolutely no possibility the plaintiff

1  will be able to establish a cause of action in state court or

2  that there's been outright fraud in the plaintiff's pleading of

3  jurisdictional facts.  And, Your Honor, because we're talking

4  about a fraudulent joinder standard here, as the Court is

5  aware, this must be proved by clear and convincing evidence and

6  with particularity.

7          THE COURT:  Well, let's go back to Number 2, your

8  statement about the fact.  You allege -- I believe it says in

9  the briefs on all of these matters -- and I think there are

10  about 23 or 24 cases that we're talking about here, individual

11  plaintiffs I should say.  You allege on information and belief.

12  What is the information?  Like let's take, for instance, the

13  first one here, Susan Fuller.  What is the information upon

14  which the allegation is made against McKesson with regard to

15  Miss Fuller?

16          MR. DIAB:  Your Honor, it is on an information and

17  belief standard, and as I highlighted in my papers, that's a

18  pleading standard that's allowed in California.

19          THE COURT:  Sure.

20          MR. DIAB:  But to answer your question directly, Your

21  Honor, we've got the usual sort of marketing, packaging,

22  distributing that McKesson undoubtedly did in this case.

23          THE COURT:  Well, now you say undoubtedly did.  Is

24  this a general allegation, or do we know that Miss Fuller or

25  her physician or someone involved in her case factually based

10:35AM 1  on the investigation of counsel under Rule 11 or its state

10:35AM 2  court equivalent in California, that there is a claim against

10:35AM 3  McKesson in this case, or is this just a notion?

10:35AM 4          MR. DIAB:  Your Honor, I think it's more than a

10:35AM 5  notion, but Your Honor, I can't sit here today, because the

10:35AM 6  defendants have superior knowledge in terms of what was

10:35AM 7  distributed to whom and tell you --

10:35AM 8          THE COURT:  Yeah, but didn't they ask you for the

10:35AM 9  specific locations though in order that an inquiry can be made?

10:36AM 10 There was some email exchanges and things I believe attached to

10:36AM 11 the memoranda.  Didn't they inquire of plaintiffs?  I mean, the

10:36AM 12 plaintiff does have an obligation.  You can't just say "on

10:36AM 13 information and belief" when you don't have any information.

10:36AM 14         MR. DIAB:  Well, Your Honor, you know, I would point

10:36AM 15 to a couple of facts.  Number 1, McKesson is the largest

10:36AM 16 distributor of pharmaceutical products in the United States.

10:36AM 17 On their own website, they say --

10:36AM 18         THE COURT:  Let me stop you, because I understand all

10:36AM 19 of that, but I'm talking about Miss Fuller here right now.  I

10:36AM 20 want to know about Miss Fuller's case.  Pick any one of the

10:36AM 21 other 23 or 24 and let me know what is the information

10:36AM 22 specifically that applies to that plaintiff that warranted on

10:36AM 23 information and belief McKesson did blankity blankity blank?

10:36AM 24         MR. DIAB:  Well, Your Honor, for one of the

10:36AM 25 plaintiffs, Josephine Hicks, that's a lady who was in the

10:36AM
10:36AM
10:36AM
10:36AM
10:36AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM
10:37AM

1   military when she received treatment, and the research

2   indicates that McKesson had a contract for example with the

3   Department of Defense to provide pharmaceuticals and other

4   supplies to the military.

5          But, Your Honor, I think what the Court is sort

6   of looking at here is applying a heightened pleading standard.

7   I understand that from a jurisdictional perspective it's

8   probably convenient to the defense and maybe even to this Court

9   to find out this information on the front end, but it sort of

10  ignores the law in terms of what our pleadings requirements are

11  in California.  We've alleged more than the usual.  McKesson is

12  traditionally in these pharmaceutical cases known to be sort of

13  a distributor.  They pass through, and they're in the stream of

14  commerce.  In this case, Your Honor, we've got a different sort

15  of activity by McKesson.  For example, we've got McKesson

16  Specialty Health, which lists Taxotere in the catalog of

17  available products.  McKesson actually has its own NDC codes,

18  which based on my understanding means they actually manufacture

19  the product.  They've also supported promotion of Taxotere

20  through U.S. Oncology, including research and marketing and

21  things like that.  And so we actually have much more

22  involvement than the traditional litany of cases that we cited

23  to in our brief, Your Honor, that showed a McKesson joinder is

24  proper in these cases, and I think it would contradict all of

25  the California Federal Court's decisions in this regard --

10:37AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:38AM
10:39AM
10:39AM
10:39AM
10:39AM
10:39AM
10:39AM
10:39AM

1    **THE COURT:**  But what of the authority that the Court

2    on jurisdictional inquiry can actually go beyond the pleadings

3    standard and have like a limited mini summary judgment type

4    consideration, and counsel has made an effort to find out the

5    very basics of that information in order to determine

6    jurisdiction.  I understand the California pleading standard.

7    I think it's much like the standard in Louisiana.  But on

8    questions of jurisdiction, on motions to remand when in fact

9    there's an issue of possible improper joinder, the Court is

10   entitled to actually pierce the pleading to some extent to

11   determine jurisdiction; isn't it?

12       **MR. DIAB:**  Your Honor, I would respectfully disagree.

13   The main case that the defense cites for that proposition is

14   the *Smallwood* case *v. the Central Railroad*, and in that

15   particular case where it talks about a 12(b)(6) type analysis

16   and when it can pierce that sort of pleading and do a

17   jurisdictional inquiry, that was a case where the plaintiff was

18   struck by a train.  One of the defendants alleged the

19   preemption defense that would apply to all defendants, and they

20   brought a fraudulent joinder motion.  And so, Your Honor, the

21   Court in that case at Page 576 said, and I quote, "But our

22   holding today's narrow.  It applies only in that limited range

23   of cases where the allegation of improper joinder rests only on

24   a showing that there is no reasonable basis for predicting that

25   state law would allow recovery against the in-state defendant,

10:39AM 1  and that showing is equally dispositive of all defendants."
10:39AM 2  And so, Your Honor, I would respectfully say that the Fifth
10:39AM 3  Circuit Court of Appeals said that that's a narrow holding that
10:39AM 4  doesn't apply here.
10:39AM 5         And, Your Honor, the Court actually went on sort
10:39AM 6  of in a cautionary tale on this slippery slope, and it said
10:39AM 7  quote, "Attempting to proceed beyond this summary process
10:39AM 8  carries a heavy risk of moving the Court beyond jurisdiction
10:39AM 9  and into resolution of the merits as distinguished from
10:39AM 10 analysis of the Court's diversity jurisdiction by a simple and
10:39AM 11 quick exposure of the chances of the claim against the in-state
10:39AM 12 defendant to be improperly joined.  Indeed, the inability to
10:39AM 13 make the requisite decision in a summary matter itself points
10:40AM 14 to an inability of the removing party to carry its burden."
10:40AM 15        And so, Your Honor, the basis on the *Smallwood*
10:40AM 16 case and -- is not founded here, Your Honor.  We don't have
10:40AM 17 that situation where there's sort of a silver bullet defense
10:40AM 18 that can eliminate all the defendants' liability.
10:40AM 19        The only other sort of authority I think the
10:40AM 20 Court would have is under the general complex manual in terms
10:40AM 21 of managing and the Court's discretion to manage its docket,
10:40AM 22 but I think sort of skipping to that, as the Court did in the
10:40AM 23 *Fluoroquinolone* case -- which I had the pleasure of briefing.
10:40AM 24 I did not argue that case, but Judge Tunheim there had a much
10:40AM 25 different situation when McKesson was involved.  You had a case

10:40AM 1  where the plaintiffs admittedly could not necessarily track

10:40AM 2  whether a particular pill, a fluoroquinolone antibiotic, was

10:40AM 3  taken by a plaintiff, and similarly on McKesson's side, they

10:40AM 4  couldn't really tell if you a pill was distributed to that

10:40AM 5  pharmacy, and so we sort of had this rule-out process where

10:40AM 6  they would say, "Well, McKesson, we distributed from March of

10:40AM 7  this year to June of that year, and that's all we know."  Here

10:41AM 8  we're talking about an intravenous chemotherapy drug where

10:41AM 9  they're going to have very specific information on that matter.

10:41AM 10          THE COURT:  Okay.  All right.  Thank you.

10:41AM 11          MR. DIAB:  I'd like to reserve what time is left for

10:41AM 12  rebuttal.  Thank you.

10:41AM 13          THE COURT:  Sure.  You all have about six and a half

10:41AM 14  minutes left collectively on the plaintiff's side.  Mr. Moore?

10:41AM 15          MR. MOORE:  Good morning, Your Honor.  Douglas Moore

10:41AM 16  on behalf of Sanofi addressing the Delaware motion.

10:41AM 17              I'd like to begin sort of where I think the

10:41AM 18  Court left off, and that is to try and understand who it is

10:41AM 19  who's asking to be remanded to Delaware state court.  None of

10:41AM 20  these plaintiffs are Delaware residents.  None of these

10:41AM 21  plaintiffs allege that they were treated in Delaware and now

10:41AM 22  reside somewhere else such that --

10:41AM 23          THE COURT:  But you're the in-state defendant though.

10:41AM 24  You understand that that comes with certain not only benefits,

10:41AM 25  but some detriments as well in terms of jurisdiction, depending

10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:42AM
10:43AM
10:43AM
10:43AM
10:43AM
10:43AM
10:43AM
10:43AM

1   on how you view it.  I mean, the in-state defendant is the

2   issue of what we're talking about removing, not just simply a

3   question of diversity.

4        MR. MOORE:  That's correct.  In fact, I think there

5   is no question of diversity at all.  In fact, I don't think

6   it's a jurisdictional issue.  As Judge Feldman stated in the

7   decision that we cited to Your Honor, this is strictly a

8   procedural issue under 1441.

9        THE COURT:  Yeah, I have that one.  That's *Harvey v.*

10  *Shelter Insurance Company*, but that case doesn't involve a --

11  the in-state defendant itself removing; does it?

12       MR. MOORE:  It does not, Your Honor, and that --

13       THE COURT:  Do you have any cases that -- I'll take

14  them from anywhere in the country, district or circuit cases --

15  that involve removal as was done here by the in-state defendant

16  itself?

17       MR. MOORE:  Yes.  The *Munchel v. Wyeth* decision,

18  which is directly on point with this litigation.  It involved a

19  pharmaceutical case.  The plaintiff was from Maryland.  The

20  Defendant Wyeth was a Delaware corporation with its principal

21  place of business in New Jersey.  The other defendant was

22  Pfizer which is a Delaware corporation with its principal

23  business -- place of business in New York.  And that specific

24  question was addressed by the judge in Delaware, and what the

25  judge concluded was that there is no requirement under 1441(b)

1  that there be a non-forum defendant to remove the case.  Under

2  the plain language of the statute, the forum defendant rule

3  prevents removal if a forum defendant has been properly joined

4  and served.  There is no requirement in the statute that the

5  forum defendant itself cannot remove if it has not been served.

6  That particular case was the most recent case from the district

7  of Delaware that we cited to Your Honor.

8          And we also think that decision is important,

9  Your Honor, because what the Court notes is that this issue --

10  and we cite in our papers that Sixth Circuit decision from 2001

11  that addressed this issue; not the principle issue, but it was

12  mentioned in the decision.  And what the Court there notes is

13  that this very section, 1441(b), was amended in 2011 through

14  the Federal Court's Jurisdiction and Venue Clarification Act,

15  this very provision, and Congress decided to keep the "properly

16  joined and served" language in that provision for an issue that

17  has been raised for over a decade at that point in time.  And

18  what the Court in Delaware -- this was Judge Stark.  What he

19  concluded was that by retaining the "properly joined and

20  served" language, the amendment reinforces the conclusion that

21  Congress intended for the plain language of the statute to be

22  followed and in that case concluded that Delaware corporations

23  with their principal places of business in other state had

24  every right to remove a case if complete diversity existed, and

25  that's the exact circumstance that we have here.

10:45AM  1          Your Honor, I would also point out that --

10:45AM  2          **THE COURT:**  Well, doesn't this just 1, discourage

10:45AM  3   Plaintiff's counsel from ever sending a courtesy copy to

10:45AM  4   opposing counsel?  Number 2, encourage companies or law firms

10:45AM  5   to simply station someone at the courthouse intake desk with

10:45AM  6   removal proceeding in hand and filling it out rotundus rotundi

10:46AM  7   and filing it right behind a petition?

10:46AM  8          **MR. MOORE:**  Your Honor, I would answer that question

10:46AM  9   the way Judge Feldman answered it in the decision that we

10:46AM  10  cited, and he stated, "The forum defendant rule codified in

10:46AM  11  1441(b)(2) plainly provides that a civil action may not be

10:46AM  12  removed if any defendant that has been joined and served is a

10:46AM  13  forum defendant.  The plain language of the statute must

10:46AM  14  prevail over plaintiff's policy arguments to the contrary."

10:46AM  15          What I do think applying the plain language of

10:46AM  16  the statute would do, it would prevent what has happened here.

10:46AM  17  Your Honor, we had our first status conference in November of

10:46AM  18  2016.  Mr. Shkolnik made an application to be on the

10:46AM  19  Plaintiffs' Steering Committee.  You approved that application

10:46AM  20  over other very qualified candidates.  We then began

10:46AM  21  negotiating a direct file order with the Plaintiffs' Steering

10:46AM  22  Committee of which Mr. Shkolnik was a member, and that direct

10:47AM  23  filing order was entered on December 9 of 2016.  Within one

10:47AM  24  week of the entry of that direct filing order, Mr. Shkolnik's

10:47AM  25  firm from New York filed 86 cases -- or beginning one week

after the entry of the direct filing, 86 cases in state court
in Delaware.  People from Alabama.  People from Louisiana who
probably live within a couple of miles of this courthouse, who
probably saw a television advertisement and returned the phone
call and then got referred to a lawyer in the northeast; takes
that case as a member of the leadership of this MDL and files
it up there.

        We think that applying the plain language of the
statute avoids -- we're the ones being accused of gamesmanship.
We think that the gamesmanship is really a shoe on the other
foot here, Your Honor, and we think that Your Honor should
apply the plain language of the statute.  Every case that has
reached a contrary conclusion has required some intellectual
leap to impart some sort of additional requirement into the
statute that is simply not there.

        And so we think we should apply the plain
language of the statute and maintain these cases in Federal
Court, because no forum defendant was served at the time that
they were removed.

        I'll make 30 seconds on the issue of whether or
not the amount in controversy is met.  The allegations of
injury in this case, in these Delaware cases, are no different
than the allegations of every other case that was direct filed
in this MDL and in federal courts all across the country.  Your
Honor saw the picture that they showed during information day.

10:48AM  1        **THE COURT:**  Yeah.  I'm not in any way convinced that

10:48AM  2  that's an impediment to removal, the amount in controversy.

10:48AM  3        **MR. MOORE:**  Thank you, Your Honor.

10:48AM  4        **THE COURT:**  Okay.  All right.  Mr. Strongman?

10:48AM  5        **MR. STRONGMAN:**  Good morning, and may it please the

10:48AM  6  Court.

10:48AM  7        **THE COURT:**  Good morning.

10:48AM  8        **MR. STRONGMAN:**  The Court has hit upon in its

10:48AM  9  questioning of Mr. Diab the issues directly at hand in this

10:49AM  10  California removal setting.  The plaintiffs here have employed

10:49AM  11  the same kind of California strategy that has been employed

10:49AM  12  repeatedly in pharmaceutical litigation, which is you bring a

10:49AM  13  California plaintiff, you lop on non-California plaintiffs, you

10:49AM  14  add McKesson, and you file that case in California state court

10:49AM  15  with vague allegations based on information and belief.  And as

10:49AM  16  we just saw, I don't believe that the plaintiffs sitting here

10:49AM  17  today still have any factual information and belief to support

10:49AM  18  a claim against McKesson.

10:49AM  19        And, in fact, not only did we send those letters

10:49AM  20  asking for any kind of information regarding the -- simply

10:49AM  21  asking where did the plaintiff receive their chemotherapy

10:49AM  22  treatment?  It's a very basic question with an answer that most

10:49AM  23  certainly the plaintiffs know.  We only got one response, and

10:49AM  24  of course that one response identified a facility that

10:49AM  25  McKesson did not distribute to.

10:49AM  1    So as this Court pointed out, at the very least,
10:50AM  2  Your Honor has the power under *Smallwood* and other Fifth
10:50AM  3  Circuit cases, other cases in this district, to make a summary
10:50AM  4  inquiry when -- and I think the language in *Smallwood* is when
10:50AM  5  the complaint omitted discrete facts that would determine the
10:50AM  6  proprietary nature of the joinder, which is exactly what we
10:50AM  7  have at issue here.
10:50AM  8    One other -- one other point I want to make.
10:50AM  9  When you look at the trend of what has been going on, courts
10:50AM 10  have been increasingly moving towards disallowing this kind of
10:50AM 11  joinder of McKesson.  And I think the *Bristol-Myers* case in
10:50AM 12  front of the US Supreme Court as well as the *Zoloft* case and
10:50AM 13  the *In Re Fluoroquinolone* case that we cite are indicative of
10:50AM 14  this trend.
10:50AM 15    And in this circumstance, the cases presented
10:50AM 16  before this Court fall into two buckets, and we would make two
10:50AM 17  requests based on which bucket the cases fall in.
10:50AM 18    The first bucket would be the multi-plaintiff
10:50AM 19  cases where the plaintiffs have named a California resident
10:51AM 20  along with -- and there's two of them; a California resident
10:51AM 21  along with a handful of non-California residents.  Under the
10:51AM 22  *Bristol-Myers Squibb* decision, the non-California plaintiffs do
10:51AM 23  not have personal jurisdiction over Sanofi in the case as it
10:51AM 24  was filed.  So our first request would be that those cases, the
10:51AM 25  non-California plaintiffs, be dismissed.  They could refile

10:51AM 1   under the direct filing order in this court, and they could

10:51AM 2   name McKesson if they so choose.  McKesson is a defendant

10:51AM 3   in the master complaint and is listed on the short form

10:51AM 4   complaint, and that is a much more efficient process than

10:51AM 5   ultimately having to deal with those plaintiffs back in the

10:51AM 6   state court.

10:51AM 7          The second bucket would be the California

10:51AM 8   plaintiffs, and that is where we would simply make the request

10:51AM 9   that the Court do a summary inquiry; ask the plaintiffs to

10:51AM 10  provide -- simply do a fact sheet.  That would be enough, and

10:51AM 11  we would have the information needed to know whether there was

10:52AM 12  any kind of valid claim, and that's certainly within the

10:52AM 13  authority of this Court.

10:52AM 14         The last point I wanted to make, Mr. Diab made a

10:52AM 15  point about US Oncology, I believe, which is a separate

10:52AM 16  company.  It's a subsidiary, and the US Supreme Court has made

10:52AM 17  very clear that absent some sort of alter ego theory, which has

10:52AM 18  not been pled, the actions of a subsidiary are not impugned

10:52AM 19  upon any kind of parent.  And, of course, US Oncology is based

10:52AM 20  in Texas.  Plaintiffs very well know -- as we have seen, they

10:52AM 21  can name defendants in these lawsuits.  They haven't sued US

10:52AM 22  Oncology.  They could.

10:52AM 23         **THE COURT:**  In none of those is US Oncology named as

10:52AM 24  a defendant?

10:52AM 25         **MR. STRONGMAN:**  No, and they're in Texas, which of

course defeats the California strategies.  So, Your Honor, we would simply make the request that the non-California plaintiffs be dismissed and refile in this court, and that the California plaintiffs be put under a just very basic summary inquiry to determine the propriety of naming McKesson.  Thank you.

**THE COURT:**  Thank you.  Okay.  You got about six and a half minutes left, if you'd like to go ahead and resume.

**MR. SHKOLNIK:**  Thank you, Your Honor.  Counsel answered the Court's question regarding Delaware plaintiffs to the best of what I had.  I agree with counsel, there is no Delaware plaintiffs.  However, the issue of Delaware plaintiffs I think is more appropriate for the BMS inquiry and not where there is general -- it's more appropriate where it's specific jurisdiction as opposed to general jurisdiction.  And here, as the Court properly pointed out, these defendants have chose that forum, and they are home there.

And counsel did cite to the one case out of Delaware recently where the judge allowed removal to occur, but we also cite in our papers the Delaware decision of *Laugelle v. Bell Helicopter*, and in that case, Your Honor, the Court went through a very detailed analysis of the Third Circuit law, and it's clear -- and by the way, granted remand in this setting, and in outlining the Third Circuit law was clear that the decision handed down recently flies in the face of the analysis

10:54AM  1   in terms of the 1441(b).  And since that is a case which is

10:54AM  2   probably never going to see appellate review, I guess we won't

10:54AM  3   know what the Third Circuit will do with that, but the

10:54AM  4   consistent decisions out of Delaware and out of the Third

10:54AM  5   Circuit Courts, including New Jersey, and we've cited to New

10:54AM  6   Jersey cases as well on this issue, are that --

10:54AM  7              THE COURT:  I'm just curious -- and this may not

10:54AM  8   pertain to the principles involved in the motion, but I'm just

10:54AM  9   curious in light of Mr. Moore's comments why a plaintiff from

10:54AM  10  say Louisiana or Tennessee or pick your state, a non-Delaware

10:54AM  11  plaintiff, unless one is close by Delaware, would choose, elect

10:55AM  12  to file a state court lawsuit in Delaware against an in-state

10:55AM  13  defendant in Delaware when the existence of the MDL was already

10:55AM  14  known and created, and the ability to resolve cases in the MDL

10:55AM  15  process might be one that's more attractive than having a

10:55AM  16  pending state court case in Delaware state court for someone

10:55AM  17  let's say who lives in Destrehan, Louisiana.

10:55AM  18             MR. SHKOLNIK:  Your Honor, the answer to that

10:55AM  19  question, we have -- and counsel mentioned, "Mr. Shkolnik is

10:55AM  20  from New York."  My firm has a substantial Delaware office and

10:55AM  21  practice, pharmaceutical practice.  So it's not that they're

10:55AM  22  picking a New York lawyer to go to Delaware.  We have found and

10:55AM  23  we have been fairly successful at litigating pharmaceutical

10:55AM  24  mass torts in Delaware as one of the options.  And our clients

10:55AM  25  are aware of that, and the attorneys that may happen to refer a

10:55AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:56AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM

1  case to us are aware of that.  There are other reasons.  We're

2  not looking to avoid the MDL.  We have cases that are in the

3  MDL.

4          THE COURT:  Well, MDL aside, you have witnesses here,

5  treating physicians and oncologists and family members and

6  people who might be involved in the litigation who would be

7  here in Destrehan or somewhere in metropolitan New Orleans who

8  I guess would have to travel to Delaware, but it just

9  doesn't -- it's -- well --

10         MR. SHKOLNIK:  Your Honor, that same argument would

11 apply when defendants seek to remove these cases to Minnesota

12 when many of our plaintiffs may be from Florida or New York,

13 and there are -- or New Jersey and where they've wanted to

14 remove them to federal court.  It is a thought -- it is a

15 factor we do take into consideration.  We're not looking to

16 avoid an MDL.  I'm here working with my colleagues, and it's

17 just some cases get filed in Delaware, some in New Jersey, some

18 will be in the MDL, but we are certainly litigating very

19 aggressively before you.

20         THE COURT:  I understand.  It's just that in a

21 typical removal type of case, the defendant is removing to the

22 sitting district court; for instance, the folks in Delaware if

23 the case were to have been removed would be now coming down the

24 road to this courthouse.  In a typical non-MDL case, it's not

25 such a geographical reach to satisfy some venue consideration.

10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:57AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM
10:58AM

1    So I'm just curious.  Like I said, it has nothing to do with

2    the legal principles in this case.  It just seems like a bit of

3    a reach from a practice point of view, but that's fine.

4         MR. SHKOLNIK:  And just as a side note before I sit

5    down and defer to counsel, BMS was my case, so I was there for

6    the arguments.  I just wanted to add that to the record.

7         THE COURT:  Okay.  Thank you.

8         MR. SHKOLNIK:  You're welcome.

9         THE COURT:  Counsel?

10        MR. DIAB:  Thank you, Your Honor.  So to address

11   Mr. Strongman's sort of arguments that he raised here, I think

12   again one thing, it's very convenient to leap to this, "Let's

13   just do a fact sheet.  Let's just go to jurisdictional

14   discovery here," but what I think that completely ignores, Your

15   Honor, is their heavy burden that they've got to carry when

16   they allege fraudulent joinder, and I don't think they've done

17   that.  In the cases that they've cited in support --

18        THE COURT:  But he asks you for information; doesn't

19   he?  I mean, he's entitled to some information that -- he can't

20   just be struck in the dark like a crop of mushrooms and told,

21   you know, that, "By golly, we have a claim."  He's entitled to

22   ask for certain information.  What if there was -- seemed like

23   the claims were prescribed or barred by statute of limitations?

24   Prescribed is a word we here in the outpost of New Orleans use,

25   but what if the claims were time barred, and he asked for some

10:58AM  1   -- the date of occurrences in which case he would could show

10:58AM  2   that there was an improper joinder?  I mean, is he not entitled

10:58AM  3   to an answer to that information?

10:58AM  4          **MR. DIAB:**  If this Court has subject matter

10:58AM  5   jurisdiction.  I think sort of that's the threshold inquiry

10:58AM  6   that we're skipping over.

10:58AM  7          **THE COURT:**  Well, that's the answer I'm trying to get

10:58AM  8   to, is whether or not I have it.

10:58AM  9          **MR. DIAB:**  And, Your Honor, what I would say is that

10:59AM  10  under the *Smallwood* case, I would invite the Court to review

10:59AM  11  that.  Again it's a very limited sort of application.

10:59AM  12          The only other case they cite for their support

10:59AM  13  of this alleged trend of McKesson being dismissed is the

10:59AM  14  *Martinez* case, and there you had a declaration by McKesson

10:59AM  15  that they never manufactured the product.  They can't do that

10:59AM  16  here, and the declaration definitively showing they only

10:59AM  17  distributed to facilities operated by the federal government,

10:59AM  18  and so it was a very limited set.  Instead in the one case that

10:59AM  19  they sort of flaunt here, which is that *West* case, they provide

10:59AM  20  a two paragraph declaration.  We've had no opportunity to

10:59AM  21  cross-examine it.  We have no basis for where that information

10:59AM  22  came from.  I have no idea.  You know, the maxim kind of comes

10:59AM  23  to mind is trust but verify.  And so I appreciate their

10:59AM  24  declaration, but what it also shows is there will be cases that

10:59AM  25  McKesson distributed.

10:59AM 1       And again, if we sort of take a step back and
10:59AM 2  look at the California pleading standards, we're allowed to do
10:59AM 3  it on information and belief.  They may not like it.  The
10:59AM 4  federal courts may not like it, but it's what we're allowed to
10:59AM 5  do.
10:59AM 6       THE COURT:  Well, you're allowed to do it, but it has
10:59AM 7  to be on information.  It says "on information and belief".
11:00AM 8  What information do you have that you believe?
11:00AM 9       MR. DIAB:  That McKesson distributed the product,
11:00AM 10 that they definitively manufactured the product, that they
11:00AM 11 supported the marketing, promotion and research of the product.
11:00AM 12 And again, that's far more than it's been shown in the litany
11:00AM 13 of cases that we appended to our original motion where
11:00AM 14 McKesson was simply just a distributor.  We've alleged far
11:00AM 15 more than that here, Your Honor.
11:00AM 16      THE COURT:  Okay.  All right.
11:00AM 17      MR. DIAB:  And, Your Honor, do I have a couple of
11:00AM 18 minutes to address the --
11:00AM 19      THE COURT:  No, you've already gone over the
11:00AM 20 20-minute time period, so --
11:00AM 21      MR. DIAB:  Okay.  Fair enough, Your Honor.
11:00AM 22      THE COURT:  All right.
11:00AM 23      With regard to the Delaware Motion to Remand,
11:00AM 24 I'm going to take that one under advisement.  I will tell you
11:00AM 25 that I -- I have concerns about it.  Although it does have

11:00AM
11:00AM
11:00AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:01AM
11:02AM
11:02AM
11:02AM
11:02AM
11:02AM
11:02AM
11:02AM
11:02AM
11:02AM

1  the -- the language seems to be unqualified, I do have some

2  concerns about it, an in-state defendant taking advantage of a

3  timeline for a service to occur, but I'll take a look at that

4  one in light of the cases that have been cited.

5              It also concerns me in the opposite direction;

6  that cases are being filed that are non-Delaware -- it would be

7  easy if it was a Delaware plaintiff and a Delaware defendant.

8  I think the policy concerns would not be there, but the statute

9  says what it says, and I'll take another look at the cases that

10  have been argued here today.

11             With regard to the California remand and the

12  issue of McKesson, I would like to get within seven days --

13  why don't we say by noon next Thursday -- an individualized

14  statement of what information and belief -- for each of these

15  plaintiffs, what is the information that would suggest that

16  Susan Fuller or -- these little tiny numbers -- or letters

17  here.  Joann Pickrell or Margarett Wright or any of these 24

18  names -- I think there are 24.  I'm referring to document

19  number 469-3, Page 37 out of 245, if you -- to be specific in

20  the record.  I would like to know what McKesson has to do with

21  each of these plaintiffs in these cases.  In other words, what

22  is the information that indicates that a bona fide claim exists

23  other than the general proposition that McKesson did a lot of

24  business along generally the lines of distributing a product?

25             I'm sure that California has -- in addition to

11:02AM 1  the notice pleading also has an equivalent to Rule 11 that

11:02AM 2  would suggest that some investigation or some other particular

11:02AM 3  reason exists per plaintiff to suggest that an individual

11:02AM 4  plaintiff has such a claim.  On the one hand, the pleading

11:03AM 5  requirements might be somewhat liberal.  On the other hand, we

11:03AM 6  have cases where we add defendants -- and I'm sure they do this

11:03AM 7  in California with equal if not more frequency -- where we add

11:03AM 8  defendants based upon discovery.  So there's a balance there

11:03AM 9  between what you can allege on information and belief and on

11:03AM 10  what you can find out through discovery and then allege in an

11:03AM 11  amended pleading.  I don't think we can just broad brush

11:03AM 12  McKesson into these cases to satisfy some jurisdictional

11:03AM 13  recipe, and that's my concern with regard to the California

11:03AM 14  Motion to Remand.

11:03AM 15          So by noon on Thursday, the 13th, if I can be

11:03AM 16  provided with that as to each of the plaintiffs in the remand

11:03AM 17  of the California cases, we'll go from there.  Okay?  All

11:03AM 18  right.

11:03AM 19          Counsel, thank you.  We'll see you all tomorrow

11:03AM 20  with regard to the status conferences set to start tomorrow

11:04AM 21  morning.

11:04AM 22          THE CASE MANAGER:  All rise.

11:04AM 23

11:04AM 24          PROCEEDINGS CONCLUDED

25

**CERTIFICATE**

I, Tana J. Hess, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

Tana J. Hess, CCR, FCRR, RMR
Official Court Reporter