**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                          SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS'</u>
<u>MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION</u>

Plaintiffs submit this memorandum in support of their motion to compel Defendants Sanofi and Aventis Pharma S.A. (collectively, "French Defendants"), and respectfully request that this Court grant their motion pursuant to Rule 37 to compel responses to their requests for production of documents. The Plaintiffs' Steering Committee certifies that it has conferred in good faith with counsel for the French Defendants,[1] and the parties have been unable to resolve the dispute contained in this motion.

## INTRODUCTION

The French Defendants have moved to dismiss for lack of personal jurisdiction.[2] "When the defendant disputes the factual bases for jurisdiction … the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

---

[1] The parties met and conferred on June 2, and numerous times thereafter to resolve this dispute.
[2] *See* Sanofi and Aventis Pharma S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Rec. Doc. No. 346.

Accordingly, Plaintiffs resorted to the "normal methods of the Federal Rules of Civil Procedure" to obtain jurisdictional discovery from the French Defendants. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 542 (1987). Specifically, Plaintiffs served the French Defendants with Plaintiffs' First Set of Personal Jurisdiction Discovery on May 26, 2017 consisting of the First Set of Interrogatories and Requests for Production.

The French Defendants disagree that jurisdictional discovery may proceed under the Federal Rules, and thus have not produced a single document. Instead, on June 30th, the French Defendants provided objections and responses to the served personal jurisdictional discovery, including general objections.[3] The French Defendants object to these Requests for Production on three primary grounds. First, the French Defendants object because Plaintiffs served them on counsel rather than pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").[4] Second, Defendants object to each Request for Production for failing to comply with the French Statute No. 68 – 678 of July 26, 1968 ("French Blocking Statute"), the European Data Protection Directive 95/46/EC ("European Directive"), and the French Law No. 78 – 17 of January 6, 1978 on Information Technology, Data Files and Civil Liberties ("FDPA").[5]  Finally, the French Defendants object to each Request for Production as "vague, overly broad, unduly burdensome, and not relevant to the establishment of personal jurisdiction" without further specificity.

For the reasons that follow, these objections should be overruled, and jurisdictional discovery should proceed in accordance with the Federal Rules.

---

[3] *See* Ex. A, Sanofi and Aventis Pharma S.A.'s Objections and Responses to Plaintiffs' First Set of Personal Jurisdiction Discovery.
[4] *See* Ex. A at 5-6.
[5] *See* Ex. A at 6-7.

**ARGUMENT**

I.     **The Hague Evidence Convention, the French Blocking Statute, the European Directive, and the FDPA Create No Immunity from Ordinary Discovery Requests**

The Hague Evidence Convention "prescribes certain procedures by which a judicial authority in one contracting nation may request evidence located in another contracting state." *Societe Nationale*, 482 U.S. at 524. However, these procedures are not mandatory or exclusive; they are neither "intended to establish optional procedures that would facilitate the taking of evidence abroad," nor do they "deprive the District Court of its jurisdiction to order, under the Federal Rules of Civil Procedure, a foreign national party to the proceeding to produce evidence physically located within its territory." *Id*. at 538–40.

In *Societe Nationale*, the United States Supreme Court rejected the argument that the Hague Evidence Convention "provide[s] exclusive procedures for obtaining documents and information located in a foreign signatory nation's territory." *Id*. at 529 (internal quotation omitted). The Court also rejected the notion that the French Blocking Statute can prevent discovery or require first resort to the Hague Evidence Convention:

> The French "blocking statute" does not alter our conclusion. It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute. Nor can the enactment of such a statute by a foreign nation require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts. It is clear that American courts are not required to adhere blindly to the directives of such a statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality, even simple requests for admissions or interrogatories that the party could respond to on the basis of personal knowledge.

*Id.* at 544 n. 29 ("We therefore decline to hold as a blanket matter that comity requires resort to Hague Evidence Convention procedures without prior scrutiny in each case of the particular facts, sovereign interest, and likelihood that resort to those procedures will prove effective."). Rather than require parties to resort first to the Hague Evidence Convention, the Supreme Court instructed district courts to engage in a case-by-case comity analysis based on five factors:

> (1) the importance to the…litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n. 28 (citing Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986)).

In the Fifth Circuit, courts "routinely" apply the five-factor test derived from the Third Restatement, *see, e.g.*, *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2016 WL 3923873, at *8 (E.D. La. July 21, 2016), including requests for jurisdictional discovery. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 302 (3d Cir. 2004) ("[W]e see no legal barrier to exercising the discretion given to trial courts by *Societe Nationale* in cases of jurisdictional discovery."); *Trueposition, Inc. v. LM Ericsson Tel. Co.*, No. CIV.A. 11-4574, 2012 WL 707012, at *3 (E.D. Pa. Mar. 6, 2012).

The comity factors favor compliance with Plaintiffs' document requests. The French Defendants, as the proponents of the Hague Evidence Convention procedures, bear the burden of persuasion as to their optional use. *Id.* (collecting cases); *In re Vitamins Antitrust Litig.,* 120 F. Supp. 2d 45, 51 & n.7 (D.D.C. 2000) (collecting cases); *see also Madden v.*

*Wyeth*, No. 3-03-CV-0167, 2006 WL 7284528, at *2 (N.D. Tex. Jan. 12, 2006) (same). The French Defendants cannot make the requisite showing.

Documents in the possession of the French Defendants are important. *See Adams v. Unione Mediterranea Di Sicurta*, No. 94-1954, 2002 WL 472252 (E.D. La. March 28, 2002) (noting that personal jurisdiction is an "important issue" that warrants discovery under the *Societe Nationale* comity analysis). This Court has instructed the parties to proceed with personal jurisdictional discovery in light of the French Defendants' motion to dismiss, and Plaintiffs have narrowly tailored the discovery requests to elicit evidence relevant to the jurisdictional analysis.[6] Certain documents undoubtedly originated in the United States. However, the French Defendants communicated internally and generated documents that will not be in the possession of other defendants or third parties and important documents may not be physically located in a United States office. Nonetheless, this Court has found the location of the documents "carries limited weight" when, as here, a foreign corporation voluntarily enters into a commercial partnership with an American corporation. *In re Xarelto*, 2016 WL 3923873, at *16.

Moreover, a search of documents physically located in the United States, or reliance on documents in the possession of others, would prevent Plaintiffs from learning the French Defendants' conduct in the United States and the nature of its relationship with U.S. Defendants. Further, resorting to the Hague Evidence Convention would also impede Plaintiffs' ability to gather evidence in a timely manner so that Plaintiffs have sufficient

---

[6] Absent an opportunity for personal jurisdiction discovery, Plaintiffs are required only to present a *prima facie* case for personal jurisdiction. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

opportunity to review and consider the documents prior to responding to the French Defendants' Motion to Dismiss.

Finally, the interests of Louisiana—and the United States—are paramount. There is a strong national interest in the enforcement of tort and product liability law to provide compensation to those injured here, as well as a national interest in the disclosure of information regarding jurisdictional contacts of a foreign entity alleged to have injured persons in the United States. *See Trueposition*, 2012 WL 707012, at *5 (permitting jurisdictional discovery of French defendant). The Taxotere litigation is "a nationwide MDL, [in which] the rights of thousands of American citizens hinge on the timely production of materials that fall within the scope of the Federal Rules of Civil Procedure." *Xarelto*, 2016 WL 3923873 at *18. "Short of the United States entering this litigation or matters of national security at issue, few changes to the facts could result in greater United States interests in document production." *Id.*

France's interests are secondary. As explained in a 2012 antitrust case, "[t]he French sovereign interest in managing access to information within its borders, as well as attempting to protect its citizens from discovery in foreign litigation, pales in comparison to the interests at stake for the United States." *Trueposition,* 2012 WL 707012, at *6. The French Defendants nevertheless maintain that a French Blocking Statute, "which is a French criminal statute that prescribes sanctions for French nationals who disclose information during foreign discovery without using the procedures established under the Hague Evidence Convention," *Trueposition*, 2012 WL 707012, at *3, requires resort to the Hague Evidence Convention's procedures. However in *Societe Nationale*, the Supreme Court held that blocking statutes—and specifically, the French Blocking Statute—"do not deprive an American court of the power to order a party

subject to its jurisdiction to produce evidence even though the act of production may violate that statute." 482 U.S. at 544 n. 9.

The 2007 decision in France upholding a criminal conviction for violation of the French Blocking Statute has not changed the analysis.  The French case, known case as *"Christopher X,"* involved false statements by a French attorney to obtain information from a witness—not an ordinary discovery request.  *See In re Air Cargo Shipping Servs. Antitrust Litig.,* 278 F.R.D. 51, 54 (E.D.N.Y. 2010) (summarizing facts of *Christopher X*). Accordingly, "numerous courts have discounted the fear of criminal prosecution in light of the ruling in *Christopher X* as a basis for permitting French litigants to invoke the Hague Evidence Convention." *Trueposition,* 2012 WL 707012, at \*6 n. 6 (citing cases). As the *Air Cargo* court observed, "the legislative history of the statute gives strong indications that it was never expected or intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts." 278 F.R.D. at 54 (citation and internal quotation omitted). The *Christopher X case* is not regarded as evidence that a French defendant faces a "significant risk of prosecution" for compliance with a discovery request issued in conformity with rules of procedure. *Trueposition,* 2012 WL 707012, at \*6. Indeed, even counsel for the French Defendants have published that  "U.S. courts have noted that blocking statutes have not been regularly enforced." Patrick Oot, Data Privacy Laws and Blocking States: Practical Strategies for Counsel,      http://www.insidecounsel.com/2016/12/12/data-privacy-laws-and-blocking-statutes-practical?ref=footer-insights&slreturn=1499781355#!.

The French Defendants also maintain that the European Directive and the French Data Protection Act ("FDPA") are impediments to discovery.  The FDPA codifies the European

Directive and "reflects France's interest in protecting the privacy rights of individuals," and prohibits the disclosure of "personal data." *In re Activision Blizzard, Inc.*, 86 A.3d 531, 538 (Del. Ch. 2014).  To minimize the gathering and disclosure of personal data, the FDPA requires that certain steps be taken, including limiting the gathering of information to only information that is "relevant and necessary" and redacting personal data.

However, many courts question whether discovery, in and of itself, threatens a foreign country's interest in protecting the privacy of its citizens.  *See Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 423–24 (S.D.N.Y. 2016) ("whether the DPA and duty of confidentiality are actually implicated here, and therefore, whether any UK interest is actually threatened—is not entirely clear."); *see also St. Jude Med. S.C., Inc. v. Janssen–Counotte*, 104 F. Supp. 3d at 1150, 1162–64 (D. Or. 2015) ("[T]he variety of ... provisions [in Germany's Federal Data Protection Law] permitting disclosure—several of which appear on their face to encompass disclosure under court order for litigation purposes—demonstrate that [Germany's data privacy] interest is not all-consuming."); *Tansey v. Cochlear Ltd.*,   No. 13-CV-4628, 2014 WL 4676588 at *5 (E.D.N.Y. Sept 18, 2014).  Often, courts look to whether the foreign government has objected to the discovery sought, and here, no objections have been raised by the French Government. *See Laydon*, 183 F. Supp 3d at 424. "[A] foreign government's failure to express a view that the disclosure at issue threatens its national interests militates against a finding that strong national interests of the foreign country are at stake." *See Alfadda v. Fenn*, 149 F.R.D. 28, 35 (S.D.N.Y. 1993) ("[W]hen foreign governments ... have considered their vital national interest threatened, they have not hesitated to make known their objections ...."); *S.E.C. v. Gibraltar Glob. Sec.*, Inc., No. 13 Civ. 2575, 2015 WL 1514746 at *5 (S.D.N.Y April 1, 2015) ("The Bahamian government ... voiced no objection to the requested discovery, a fact that 'militates against a

finding that strong national interests of the foreign country are at stake.'" (citation omitted));
*Gucci America, Inc. v. Curveal Fashion*, No. 09 Civ. 8459, 2010 WL 808639 at *6 (S.D.N.Y.
Mar. 8 2010) (finding the United States' interest outweighed Malaysia's interests where "the
Malaysian government has not voiced any objections to disclosure in this case").

Further, France's interest in protecting the privacy of its citizens is mitigated by Pre Trial
Order 50 ("PTO 50"). PTO 50 is the protective order that governs disclosure of information in
this litigation, which permits the French Defendants to designate documents as "Confidential."
*See Laydon*, 183 F. Supp 3d at 424; *In re Activision Blizzard, Inc.*, 86 A.3d 531, 538 (Del. Ch.
2014) (ordering that discovery proceed pursuant to the Federal Rules because "[s]teps can
readily be taken to accommodate the French interests reflected in the Data Protection Act,"
including redacting personal information and using a confidentiality order); *See St. Jude Med.
S.C., Inc. v. Janssen–Counotte*,  104 F. Supp. 3d at 1164 (denying application for use of the
Hague Evidence Convention and directing that "all documents containing personal data be
restricted to attorneys' eyes only unless otherwise agreed upon by all affected parties"); *Pershing
Pac. W., LLC v. MarineMax, Inc.*, No. 10–CV–1345–L DHB, 2013 WL 941617, at *9 (S.D.Cal.
Mar. 11, 2013) ("Any personal information of German citizens contained in any documents for
which Defendant cannot obtain can be redacted, subject to a subsequent in camera review if
necessary. Alternatively, a protective order can be requested."); *Bodner v. Paribas*, 202 F.R.D.
370, 376 (E.D.N.Y.2000) ("[T]he use of an appropriate protective order should address the
confidentiality concerns of defendants (and any concerns expressed by French law) with regard
to the materials produced.").

As a result, the comity factors favor the interests of the United States and the French
Defendants should be compelled to comply with Plaintiffs' requests.

## II.    Defendants' Generic Objections Fail to Meet the Specificity Test Required by the Federal Rules of Civil Procedure

Rule 34(b)(2)(B) of the Federal Rules of Civil Procedure requires that, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34. As explained by the Fifth Circuit, the "party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Here, in addition to objecting for the reasons described above, the French Defendants assert the same generic objection in response to Plaintiffs' fifteen jurisdictional requests for production:

> Plaintiffs' jurisdictional theory is that the French Defendants have relevant Taxotere related contacts in the United States, or that relevant Taxotere-related contacts of the U.S. Defendants can be imputed to the French Defendants-specifically, Sanofi. *See* Master Complaint ¶ 19; *see also* Sanofi and Aventis Pharma S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, MDL No. 2740, Doc. 346-1, at n.13 (April 28, 2017). **Therefore, the French Defendants object to this <u>Request as vague, overly broad, unduly burdensome, and not relevant to the establishment of personal jurisdiction.</u>** To the extent this Request seeks information related to the U.S. Defendants, it is simply not relevant to the establishment of personal jurisdiction over the French Defendants. *See, e.g., Jackson*, 615 F.3d at 587-88 (no alter-ego relationship despite the fact that the entities' "business relationships are deeply intertwined"); *Ipsen*, 450 Fed. Appx. at 330 (no alter-ego relationship despite "general guidance" and oversight over "general operations, research, budget, and purpose").

This objection fails to detail the precise basis explaining how Plaintiffs' request is vague, overly broad, unduly burdensome, or irrelevant. Instead, the French Defendants refer to Plaintiffs' purported theory of jurisdiction without any explanation as to how this would specifically render the requests objectionable. Moreover, the cases cited by the French Defendants—*Jackson* and *Ipsen*—do not allow them to avoid their discovery obligations. In fact, both cases permitted

discovery in addressing the issue of personal jurisdiction. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 583 (5th Cir. 2010) ("The parties engaged in considerable discovery."); *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 326 (5th Cir. 2011) (deciding the issue of personal jurisdiction following limited discovery).  As such, the French Defendants' generic objections to Plaintiffs' Requests for Productions are insufficient.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Compel the responses to Plaintiffs' Requests for Production pertaining to personal jurisdiction over the French Defendants.


Dated: July 11, 2017

Respectfully submitted:

*/s/ Christopher L. Coffin*
Christopher L. Coffin (LA Bar # 27902)
Pendley, Baudin & Coffin, L.L.P.
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: 504-355-0086
Facsimile: 504-523-0699
E-Mail: ccoffin@pbclawfirm.com

***Plaintiffs' Co-Lead Counsel***

*/s/ Dawn M. Barrios*
Dawn M. Barrios (#2821)
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com


***Plaintiffs' Co-Liaison Counsel***

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
E-Mail: kbm@classlawgroup.com

***Plaintiffs' Co-Lead Counsel***

*/s/ M. Palmer Lambert*
M. Palmer Lambert (#33228)
Gainsburgh Benjamin David Meunier & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com

***Plaintiffs' Co-Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *M. Palmer Lambert*
M. PALMER LAMBERT