UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOERE (DOCETAXEL)     MDL NO. 2740
       PRODUCTS LIABILITY
       LITIGATION

                                               SECTION "N" (5)

THIS DOCUMENT RELATES TO:
ALL CASES

## PLAINTIFFS' OPPOSITION TO DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI US SERVICES INC.'S MOTION TO DISMISS CLAIMS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS, AND ALTERNATIVELY, PLAINTIFF'S REQUEST TO CONTINUE THE SUBMISSION DATE

On May 26, 2017, Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. moved to dismiss, under F.R.C.P. 12(b)(6), 848 member cases in this multidistrict litigation on a theory that each is time-barred by various statutes of limitation. Defendants ask the Court to assume, hypothetically, that every cause of action of every Plaintiff in this MDL accrued six months after the end of chemotherapy. Dismissal under Rule 12(b)(6) is not available because the Master Complaint, which must be read in the light most favorable to Plaintiffs, nowhere alleges or even remotely suggests a blanket six-month accrual period for each Plaintiff. In any event, Plaintiffs could not have suggested such an accrual period because there is no scientific support for it.

The formidable task of definitively ruling on Defendants' prescription (limitations) defenses in 848 member cases cannot be undertaken until this litigation matures. Limitations issues are not common issues but instead require an examination of the individual facts of each individual's claim. At this preliminary stage, there is no record of facts necessary to answer these complex issues.

1

Not only should the Court deny Defendants' motion without prejudice, it may wish to instruct the parties to meet and confer before Defendants file any summary judgment motion raising a statute-of-limitations defense. That will allow the parties to consider whether these affirmative defenses can be presented in a more digestible manner, such as by addressing first the individual facts of the bellwether Plaintiffs' claims. Alternatively, Plaintiffs request that the Court continue the submission date of the instant motion until a record is prepared.

Unfortunately, Defendants filed the instant motion without meeting and conferring with Plaintiffs. Plaintiffs' counsel have since informed the PSC that they may amend Short Form Complaints as another means of rejecting Defendants' misreading of the Master pleadings. Such prophylactic measures should be entirely unnecessary given the premature posture of this legal dispute and Defendants' contrived reading of the Master pleading. The PSC, however, feels obliged to bring this to the Court's attention, so that it may consider whether to deny the motion post haste or provide other guidance.

## **ARGUMENT**

**I.  THE MASTER COMPLAINT DOES NOT SUPPORT A UNIVERSAL ACCRUAL DATE FOR ALL PLAINTIFFS; RATHER, THE QUESTION OF LIMITATIONS TURNS ON INDIVIDUAL FACTS OF EACH PLAINTIFF'S CLAIM**

As recognized previously by this Court, the question of prescription (limitation) entails a legal and factual analysis specific to each plaintiff. Indeed, this Court in the *FEMA Trailer MDL* refused to address the issue of statute of limitation, noting that the issue was not properly before the Court and that such an analysis is more appropriately assumed by the transferee court:

> [T]he record is devoid of the facts necessary to decide the multiple questions inherent in the limitations issue as to each of the individual movants, including the question of which state's choice-of-law rules apply, which state's limitations period applies to the individual plaintiff, when the limitations period began to run

2

(and whether it runs against minors), the applicability or not of *contra non valentem* or other equitable tolling, and the effect of the plaintiff's filing of a complaint in this Court. Because these are not common issues, but rather turn on the individual facts of each plaintiff's claim, because venue is not proper here, and because of the posture of this MDL, the question of prescription (limitation) will be litigated, if at all, in the transferee Court, who will likely "apply whatever law it would have applied had the action been properly commenced there.

*In re FEMA Trailer Formaldehyde Prods. Liab. Lit.*, No. 07-1873, 2012 WL 1580761, at * 2 (E.D. La. May 4, 2012).

In an attempt to sidestep this fact-intensive analysis and convert the question of prescription to a "common issue" appropriate for MDL adjudication, Defendants claim that Plaintiffs' Master Complaint affirmatively demonstrates an accrual date of six months after the end of chemotherapy. Nowhere does the Master Complaint affirmatively demonstrate a six-month accrual timeline. Defendants' six-month trigger is a product of their imagination, not scientific fact. It would not even be possible to craft a bright-line accrual date given the uniqueness of each plaintiffs' circumstances pre- and post-chemotherapy.

A. <u>Plaintiffs Have Not Alleged that Their Claims Accrued Six Months after Cessation of Chemotherapy Treatment, or Any Other Facts to Support the Same.</u>

According to Defendants, "Plaintiffs' cause of action, by their own admission, accrued six months after the end of chemotherapy." (Defs' Mem., Doc. 494-1 at 6.) Plaintiffs have not "admitted" or pleaded any such thing.

Defendants' proposed six-month accrual period is based on a misreading of a single subordinate clause in a 67-page Master Complaint. The paragraph states in full:

> Unlike the temporary and reversible alopecia that ordinarily results from chemotherapy, Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate cause Permanent Chemotherapy Induced Alopecia, which is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy. The Permanent Chemotherapy Induced Alopecia caused by

3

> Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate is not limited to the scalp and can affect hair follicles throughout the body.

(Master Complaint, Doc. 312 at ¶ 181.) With this allegation, Plaintiffs provided some detail regarding the alopecia-related injuries alleged in this MDL—that is, one way that the condition of permanent alopecia might commonly be described. What Plaintiffs have by no means alleged, however, is that all Plaintiffs *developed* permanent alopecia exactly six months after completing chemotherapy, or that all Plaintiffs' alopecia in fact *became permanent* six months after completing chemotherapy. There is simply no six-month "onset date" applicable to all Plaintiffs—neither in the complaint, nor in reality. When individual Plaintiffs' injuries occurred is not one inflexible date across all cases, but rather an individualized question based on the facts of each case.

The same applies to the issue of when each Plaintiff's injuries became known or knowable to her. There is no support in the pleadings or elsewhere for Defendants' position that, after six months without chemotherapy, each and every Plaintiff's permanent alopecia became known or evident to her. While Defendants' theories based on the generally observable nature of baldness may have some surface allure, that argument does not logically follow from the allegations in the Master Complaint. This is for the simple reason that, although hair loss or baldness may be observable or evident to laypersons like Plaintiffs, the permanent nature of hair loss or baldness is not. Many Plaintiffs may have understood their hair loss as only temporary and waited for its regrowth. Some may have required testing and diagnosis to know of their permanent alopecia. It is highly probable that an investigation into when each MDL Plaintiff actually discovered the permanence of her hair loss would result in a wide spectrum of dates, and Plaintiffs' Master Complaint contains no allegations to the contrary. Accordingly, it is both

4

inappropriate and unfair to impose one objective date by which to impute knowledge of permanent baldness to each and every Plaintiff.

Even Defendants do not seriously believe that the Master Complaint states a six-month accrual period. Rather, Defendants invite the Court to adopt some other date, such as "one or even two years after the end of chemotherapy," as the cut off for accrual of Plaintiffs' claims. (Defs' Mem., Doc. 494-1 at 2 n. 2.) This admission only serves to highlight the abstractness of this legal dispute, as well as the arbitrary nature of the universal date Defendants currently advance.

> B. <u>Defendants Have Not Met Their Burden for Dismissal at the Pleadings Stage Because Plaintiffs' Master Complaint, on Its Face, Alleges Discovery-Accrual and Tolling.</u>

A plain look at Plaintiffs' Master Complaint shows that it more than sufficiently alleges, on behalf of all Plaintiffs, the basic facts giving rise to delayed accrual of their claims, where applicable:

> Plaintiffs file these lawsuits within the applicable statute of limitations period of first suspecting that these drugs caused the appreciable harm they sustained. Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of their injuries as the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did they have reason to suspect that they had been injured, the cause of their injuries, or the tortious nature of the conduct causing their injuries until a date prior to the filing of these actions, which is less than the applicable limitations period for filing suit.

(Master Complaint, Doc. 312 at ¶ 10.) Plaintiffs have likewise alleged tolling of those limitations periods because of Defendants' misrepresentations and concealments:

> Additionally, Plaintiffs were prevented from discovering this information at an earlier date because: (1) Defendants misrepresented to the public, the FDA, and the medical profession that Taxotere, Docetaxel Injection, Docetaxel Injection Concentrate, and Docefrez, are free form permanent side effects; (2) Defendants failed to disclose to the public, the FDA, and the medical profession their knowledge of the risk of permanent side effects; and (3) Defendants fraudulently

concealed facts and information that could have led Plaintiffs to discover the liability of the Defendants.

(*Id.* at ¶ 10.)

These allegations suffice to foreclose the availability of any Rule 12(b)(6) dismissal on statute of limitations grounds. *See Jones v. ALCOA, Inc.,* 339 F.3d 359, 361 (5th Cir. 2003) (motion appropriate only where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like); *see also, e.g.*, *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) ("[W]hen plaintiffs raise an equitable tolling argument, a court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled."); *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 2013 WL 212908 (N.D. Ill., Jan. 18, 2013) ("Here, Plaintiffs have not pleaded themselves out of court by alleging facts that are sufficient to establish a statute-of-limitations defense [….]") (collecting appellate authorities). For this reason, consideration of Defendants' statute of limitations defense is inappropriate at the pleadings stage.

**II.   DEFENDANTS' MOTION OVERSIMPLIFIES THE LEGALLY AND FACTUALLY INTENSIVE PROCESS OF EVALUATING THE STATUTE OF LIMITATION FOR EACH PLAINTIFF**

Defendants' Motion, which contains negligible briefing of the states' laws and repeatedly conflates separate, complex analyses[1], downplays the enormity of the undertaking it advances—that is, the determination of timeliness of nearly 850 individual lawsuits, each containing multiple claims, through application of the laws of 37 jurisdictions. Proper opposition and resolution of the complex but scantly supported issues raised in the Motion would create an unreasonable burden on Plaintiffs and the Court when taken as a whole, whether at this time or

---

[1] Indeed, the laws of 37 states and territories are briefed and applied to what should be multi-step inquiries, all in fewer than 14 pages. (Defs' Mem., Doc. 494-1 at 11-24.)

with a continuance.[2] For the reasons set forth *infra*, Plaintiffs respectfully suggest that the Court, in addition to denying the instant motion without prejudice, may wish to order the parties to meet and confer before these limitations defenses are raised at a later stage in the case. This will allow the parties to present a plan for the Court's consideration of the merits of these defenses, such as by presenting manageable subsets of Plaintiffs, issues, or jurisdictions.

Defendants' Motion misleadingly frames the legal analysis to be applied as far simpler, and at a lower level of detail, than that actually required under *Erie* and its progeny. For example, the brief collects a handful of select federal opinions decided under individual states' laws regarding the "discovery rule" to construct what amounts to one legal standard on the issue. Defendants then apply *one analysis* for all Plaintiffs on the issue of accrual. (Defs. Mem., Doc. 494-1 at 7-8 ("No State Would Toll The Statute of Limitations By Applying the Discovery Rule").) Defendants then apply the outcome of that single analysis to 37 different jurisdictions' statutory limitations periods. That is, Defendants essentially craft language from cherry-picked state-law decisions into what they seek to pass off as something akin federal common law. This is simply not the approach taken by federal courts. Rather, any motion based on a statute of limitations defense requires full and individual consideration of each state's applicable laws, which include those related to any applicable "discovery rule."

This is the course taken (and explicitly stated) by this Court in the analogous summary judgment motions in the Vioxx MDL:

---

[2] Faced with a summary judgment motion on the issue of timeliness in the *Vioxx* multidistrict litigation, this Court has warily observed:

> Given that this MDL currently contains cases transferred from every State in the Union, and that federal jurisdiction in these cases is premised on diversity of citizenship, the Court could conceivably be faced with the task of applying each state's statute of limitations in this multidistrict litigation. For purposes of the present motion, however, the Court is asked to examine only three cases.

*In re Vioxx Prods. Liab. Litig.*, 478 F.Supp.2d 897, 902 (E.D.La. 2007).

7

> Accordingly, the Court will examine the following details of Pennsylvania and Puerto Rico law: the length of the limitations periods for each of the plaintiffs' claims; when the limitations periods began to run, giving effect to various versions of the discovery rule and fraudulent concealment doctrine; and whether any of the limitations periods were tolled, either by the pendency of the class actions or otherwise.

*In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at 814.

This analysis properly begins with a determination, for each individual case subject to the motion, not of which state's law applies, as Defendants argue, but rather of which state's *choice-of-law provision* applies. *See Wahl v. General Elec. Co.*, 786 F. 3d 491 (6th Cir. 2015) (ruling that, for direct-file cases, the applicable choice-of-law provision is not that of the state in which the MDL court sits, but where the case would have originated if not directly filed in the MDL court); *see, e.g.*, *Bellew v. Ethicon, Inc.*, 2014 WL 6886129, at *2 (S.D.W.V., Nov. 24, 2014) ("Arizona is the originating jurisdiction, and the court must consult Arizona's choice-of-law principles [….]").

"After deciding what state's choice-of-law provisions apply," the Court "would then use those provisions to determine which state's substantive law to apply." *In re Boston Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.* 2014 WL 3495977, at *2 (S.D. W.Va., July 11, 2014). Such choice-of law provisions can vary from state-to-state and involve many factors. *See, e.g.*, *Bellew*, 2014 WL 6886129, at *3 ("To make this determination, the court should consider the following: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any between the parties is centered.").

Once the Court has determined the proper substantive state law to apply in each case, "the Court must select the appropriate limitations periods within that body of law *for each of the plaintiff's claims*." *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, n.9 (emphasis added). It

is not necessarily the case, as Defendants argue, that the "statutes of limitation governing personal injury and/or product liability actions are the only limitations statutes relevant" to their Motion. (Defs' Mem., Doc. 494-1 at 3, n. 4.) Rather:

> Most product liability suits are pleaded in more than one count. Breach of warranty (implied, or express, or both), negligence, strict liability in tort, and perhaps fraud or deceit are possible bases for the suit ….] The elements of each cause of action are different, as are the seller's possible defenses, and there is no uniformity as to the length of the limitation periods that apply.

*In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at n. 9; *see also In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d at 908-09 (discussing various statutes of limitations under Alabama and Tennessee law).

Likewise, and as stated *supra*, any questions of when a statute of limitations accrued or whether it was tolled must also be evaluated separately under each state's laws. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 907 ("In diversity cases, where state law provides the rules of decision, a federal court should apply not only state statutes of limitation but also any companying tolling rules.") (internal quotations and citations omitted). This includes questions of notice and discovery of causes of action and injuries. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 522 F.Supp.2d at 808. A look to this Court's analyses in its *Vioxx* summary judgment opinions illustrates that these issues can be more nuanced than Defendants' one- or sometimes two-sentence blurbs suggest. For instance, this Court has recognized that, although Alabama does not recognize the discovery rule, allegations of fraudulent concealment may work to toll all claims under the state's laws, even those that are not fraud-based. *Id.* at 908 (denying summary judgment because a question existed whether the "discovery of the […] right of action" had been concealed by some activity of the drugmaker). Further, federal courts sitting in diversity will consider states' provisions regarding the overall appropriateness of dismissal or summary

9

judgment on timeliness issues. *See, e.g.*, *id.* at 910 (citing Tennessee law) ("Tennessee courts recognize that determining when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question of fact for the trier of fact [. . . .] Whether or not Tennessee's fraudulent concealment doctrine tolls a plaintiff's claims is also a factual question for the jury."); *see also*, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, Prods. Liab. Litig.*, 2010 WL 6419562, at *3 (C.D. Cal., Dec. 9, 2010) (citing California law).

## II. DETERMINATION OF THE TIMELINESS OF PLAINTIFFS' CLAIMS WILL REQUIRE DISCOVERY AND IS THEREFORE PREMATURE.

As this Court acknowledged in the FEMA MDL, the question of prescription turns on "individual facts of each plaintiff's claim," which are not "common issues" traditionally handled by the transferor court. *In re FEMA Trailer Formaldehyde Prods. Liab. Lit.*, No. 07-1873, 2012 WL 1580761, at * 2 (E.D. La. May 4, 2012). Judge Fallon in the Vioxx MDL similarly noted that evaluating the issue of prescription in the MDL context is "a daunting task and one not to be undertaken until the litigation had matured." *In re Vioxx Prods. Liab. Litig.*, 522 F.Supp. 2d 799, 801 (E.D.La. 2007). Indeed, the three summary judgment motions taken up in *Vioxx MDL* occurred only after two years and five bellwether trials, once the "litigation ha[d…] matured to a point at which it [was] appropriate to consider these issues in greater detail." *In re Vioxx Prods. Liab. Litig.*, 522 F.Supp. 2d 799, 801 (E.D.La. 2007).[3] This maturity came in very large part from a feature not applicable or instructive to the instant case: the Court's ability to adopt a hard-line accrual date for all cases, based on the highly publicized withdrawal of Vioxx from the U.S.

---

[3] Further, these three summary judgment motions considered only the laws of a total 8 jurisdictions. *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799 (E.D.La. 2007) (considering Pennsylvania, Puerto Rico, and Illinois); *In re Vioxx Prods. Liab. Litig.*, 2007 WL 3334339 (E.D.La. Nov. 8, 2007) (considering Texas, California, and Indiana); *In re Vioxx Prods. Liab. Litig.*, 2007 WL 3353404 (E.D.La. Nov. 8, 2007) (considering Kentucky and Tennessee). In these cases, multiple plaintiffs from each state were considered together only where they had filed their claims together in one lawsuit.

10

market. *Id.* Even then, the disposition of these motions appears to have been necessitated by the entry of a Master Settlement Agreement the very next day, *see In re Vioxx Prods. Liab. Litig.*, 388 Fed. Appx. 391, 393 (5th Cir. 2010).

While Defendants are certainly entitled to pursue their statute of limitations defenses at an appropriate stage in the case and through an appropriate motion—but not a Rule 12(b)(6) motion—it does not follow that Defendants may rely on minimal and oversimplified briefing to do so. Defendants' statute of limitations defenses should be resolved—at the very earliest—after sufficient discovery has been exchanged,[4] and the parties should work cooperatively in suggesting ways in which the Court can address these issues without unnecessarily burdening the Court or wasting party and judicial resources.

## **CONCLUSION**

For the foregoing reasons, the Court should deny without prejudice Defendants' motion to dismiss the claims of 848 Plaintiffs' as time-barred, and it should defer consideration of the merits of any statute-of-limitations defense until the facts have been sufficiently developed through discovery. Alternatively, the Court should continue the submission date of the instant motion until a record is prepared.

Date:   July 20, 2017

---

[4] Although much of the necessary discovery will likely relate to individual Plaintiffs' notice or knowledge of the injuries and/or their causes, discovery from Defendants will be necessary to resolve questions of tolling due to misrepresentation and concealment.

Respectfully submitted:

| | |
|---|---|
| */s/ Christopher L. Coffin* | */s/ Karen B. Menzies* |
| Christopher L. Coffin (LA Bar # 27902) | Karen Barth Menzies (CA Bar #180234) |
| Pendley, Baudin & Coffin, L.L.P. | Gibbs Law Group LLP |
| 1515 Poydras Street, Suite 1400 | 400 Continental Boulevard, 6th Floor |
| New Orleans, LA 70112 | El Segundo, CA 90245 |
| Telephone: 504-355-0086 | Telephone: 510-350-9700 |
| Facsimile: 504-523-0699 | Facsimile: 510-350-9701 |
| E-Mail: ccoffin@pbclawfirm.com | E-Mail: kbm@classlawgroup.com |
| *Plaintiffs' Co-Lead Counsel* | *Plaintiffs' Co-Lead Counsel* |

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
**Gainsburgh Benjamin David Meunier & Warshauer, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

| | |
|---|---|
| *Plaintiffs' Executive Committee* | *Plaintiffs' Steering Committee* |
| Christopher L. Coffin | Anne Andrews |
| Karen Barth Menzies | J. Kyle Bachus |
| J. Kyle Bachus | Lawrence J. Centola, III |
| David F. Miceli | Christopher L. Coffin |
| Dawn M. Barrios, *ex officio* | Alexander G. Dwyer |
| M. Palmer Lambert, *ex officio* | Emily C. Jeffcott |
| | Andrew Lemmon |
| | Daniel Markoff |
| | Abby E. McClellan |
| | Karen Barth Menzies |
| | David F. Miceli |
| | Rand P. Nolen |
| | Hunter J. Shkolnik |
| | Genevieve Zimmerman |

12

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/M. Palmer Lambert*
M. PALMER LAMBERT