# EXHIBIT A

E-FILED
12/5/2016 2:12:05 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
16CV303585
Reviewed By:R. Walker

C. Brooks Cutter, SBN 121407
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone:     (916) 290-9400
Facsimile:     (916) 588-9330
Email:          bcutter@cutterlaw.com

*Attorney for Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR SANTA CLARA COUNTY -UNLIMITED JURISDICTION-

| | |
|---|---|
| KLARA ERNYES-KOFLER, NADINE SPERTUS, ANN BUCHANAN, VERA SUE GREEN, SHARON M. STEWART, SYLVIA WASHINGTON<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI S.A.; AVENTIS PHARMA S.A.; SANOFI-AVENTIS U.S. LLC; MCKESSON CORPORATION; and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No.   **16CV303585**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.    Negligence<br>2.    Strict Liability – Failure to Warn<br>3.    Fraudulent Misrepresentation<br>4.    Fraudulent Concealment<br>5.    Strict Liability – Misrepresentation<br>6.    Fraud and Deceit<br>7.    Intentional Infliction of Emotional Distress |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiffs by and through their attorney, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-Aventis U.S. LLC; and McKesson Corporation, and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE CASE

1.      Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and distributed by Defendants.  Although lower potency alternatives have been available for years, Defendants misleadingly promoted Taxotere as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact, Taxotere's increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.  Although temporary hair loss is a common side effect related to chemotherapy, Taxotere's risk of permanent hair loss is not.  Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

2.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, promotion, and sale of Taxotere.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10. The amount in controversy exceeds the jurisdictional limit of $25,000.

4.      This Court has personal jurisdiction over Defendants, each of which is licensed to conduct or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including Taxotere, to the residents in this state.  Defendants have sufficient minimum contacts

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

1   in California and intentionally avail themselves of the markets within California through the

2   promotion, sale, marketing, and distribution of their products, including Taxotere, thus rendering

3   the exercise of jurisdiction by this Court proper and necessary.

4       5.      Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5.

5   Defendants transact business in this County and the events complained of occurred in this

6   County.

7                                           **PARTIES**

8       6.      Plaintiff Klara Ernyes-Kofler is a resident of Mountain View, California, and

9   received chemotherapy treatment with Taxotere in Santa Clara County. She was prescribed and

10  administered Taxotere, which was developed, manufactured, promoted, marketed, packaged,

11  distributed, and sold by Defendants. Ms. Ernyes-Kofler has suffered damages as a result of

12  Defendants' illegal and wrongful conduct alleged herein.

13      7.      Plaintiff Nadine Spertus is a resident of San Diego, California, and received

14  chemotherapy treatment with Taxotere in San Diego County. She was prescribed and

15  administered Taxotere, which was developed, manufactured, promoted, marketed, packaged,

16  distributed, and sold by Defendants. Ms. Spertus has suffered damages as a result of Defendants'

17  illegal and wrongful conduct alleged herein.

18      8.      Plaintiff Ann Buchanan is a resident of Nashville, Tennessee, and received

19  chemotherapy treatment with Taxotere in Nashville. She was prescribed and administered

20  Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and

21  sold by Defendants. Ms. Buchanan has suffered damages as a result of Defendants' illegal and

22  wrongful conduct alleged herein.

23      9.      Plaintiff Vera Sue Green is a resident of Leesville, Louisiana, and received

24  chemotherapy treatment with Taxotere in Louisiana. She was prescribed and administered

25  Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and

26  sold by Defendants. Ms. Green has suffered damages as a result of Defendants' illegal and

27  wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

10.     Plaintiff Sharon M. Stewart is a resident of Lake Charles, Louisiana, and received chemotherapy treatment with Taxotere in Louisiana. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. Stewart has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11.     Plaintiff Sylvia Washington is a resident of Lawrenceburg, Kentucky, and received chemotherapy treatment with Taxotere in Kentucky. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Ms. Washington has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

12.     Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 Rue La Boétie, 75008 Paris, France.

13.     Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 Avenue Raymond Aron, 92160 Antony, France.

14.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi S.A. is the only member and owns 100% of the membership interest (both financial and voting) of Defendant Sanofi-Aventis U.S. LLC.

15.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

16.     Sanofi S.A. is a French multinational pharmaceutical parent company that operates worldwide through a complex, consolidated, and intermingled web of more than 400

wholly-owned subsidiaries, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As of 2013, Sanofi S.A. was the world's fifth-largest pharmaceutical company by sales.

17.     At all times relevant, Sanofi S.A. was engaged in the business of researching, analyzing, licensing, formulating, compounding, patenting, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and selling the prescription drug Taxotere through its numerous wholly-owned subsidiaries in the United States and throughout the world, including Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

18.     The predecessor to the entity now known as Sanofi S.A. was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil company subsequently acquired by Total, when Elf Aquitaine took control of the Labaz group pharmaceutical company. In 1993, Sanofi entered the U.S. pharmaceutical market by first partnering with and then later acquiring Sterling Winthrop and its prescription pharmaceutical business in 1994. Sanofi was incorporated under the laws of France in 1994 as a *société anonyme*.

19.      Aventis was formed in 1999 when the French company Rhône-Poulenc S.A. merged with the German corporation Hoechst Marion Roussel, which itself was formed from the 1995 merger of Hoechst AG with Cassella, Roussel Uclaf, and Marion Merrell Dow. The merged company was based in Schiltigheim, near Strasbourg, France.

20.     Sanofi-Aventis S.A. was formed in 2004 with the merger of Aventis and Sanofi-Synthélabo, each of which had previously been formed through mergers. Sanofi-Aventis changed its name to Sanofi S.A. on May 6, 2011, after receiving approval at its annual general meeting.

21.     Sanofi S.A.'s shares are listed on the New York Stock Exchange and the NASDAQ Global Market. Sanofi S.A. is required by law to register its securities in the United States under section 12(g) of the Securities Exchange Act of 1934 on Form 20-F and to file its annual reports on Form 20-F.

22.     According to Sanofi S.A.'s Form 20-F filed with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2014, Sanofi S.A. owns 100% of

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

the membership and voting interest of Sanofi-Aventis U.S. LLC. Therefore, Sanofi S.A. controls and directs the operations of Sanofi-Aventis U.S. LLC.

23.     Sanofi-Aventis U.S. LLC, according to Sanofi S.A.'s Form 20-F, was formed on June 28, 2000 as a Delaware limited liability company whose principal activity was identified as "Pharmaceuticals."

24.     Upon information and belief, Aventis Pharma S.A. was formed as a successor in interest to Rhone-Poulenc Rorer, S.A.

25.     At all times material to this lawsuit, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC were engaged in the business of, and were successors in interest to, entities engaged in the business of researching, analyzing, licensing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and selling the prescription drug Taxotere to the general public, including Plaintiffs.

26.     At all times material to this lawsuit, the Sanofi Defendants were authorized to do business within the State of California; did in fact transact and conduct business in the State of California; derived substantial revenue from goods and products used in the State of California; and supplied Taxotere within the State of California.

27.     At all relevant times, and as more fully set forth below, the Sanofi Defendants acted in conjunction with other affiliated, related, jointly owned and controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of Taxotere to the general public, including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between them had ceased and these Defendants became the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as alleged herein.

28.     As the corporate parent of these wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. Accordingly,

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

there exists, and at all relevant times herein existed, a unity of interest, ownership, and conduct between Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC with regard to the manufacture, distribution, development, testing, and labeling of the Taxotere in question and with regard to other related conduct, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another.

29. Sanofi S.A., through its complicated web of various affiliates, wholly-owned subsidiaries, and predecessor companies, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC, has been directly involved in and has overseen the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting Taxotere throughout the world and in the United States. Sanofi S.A. markets Taxotere worldwide in over 100 different countries. When press releases are issued announcing the introduction, marketing, and distribution of Taxotere in a new country, the press releases are issued by Sanofi S.A., or before 2011 when Sanofi S.A. changed its name, by Sanofi-Aventis. Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC are hereinafter collectively referred to as "Sanofi" or "the Sanofi Defendants."

30. The Sanofi Defendants transact substantial business in California. The Sanofi Defendants have sponsored or conducted clinical trials of their products in California, including trials of Taxotere. For example, in 2005 Aventis sponsored a clinical trial at Stanford University of the efficacy of Taxotere for lung cancer treatment; from 2006 to 2012 Sanofi sponsored a clinical trial at Stanford on the efficacy of Taxotere for breast cancer treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford of Taxotere in patients with breast cancer; Sanofi also sponsored a large-scale epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern California, which terminated in 2012.  In addition, Sanofi participates in ongoing research and development collaborations with the University of California, San Francisco.

31. Sanofi maintains an office at 185 Berry Street, San Francisco, and employs sales representatives and area business managers throughout the state. Sanofi's vaccine division, Sanofi-Pasteur, Inc. is registered to do business in California.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

32.     In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales represented the majority, at €29.8 billion. Although generic docetaxel is now available, Taxotere continues to be extremely profitable for Sanofi; in 2015 sales of Taxotere alone were €222 million.

33.     Sanofi spends large sums on California politics, mainly via four entities that share the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-Aventis; and Sanofi-Aventis Group.

34.     For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying in the state.

35.     Sanofi US contributes to political campaigns in California. Specifically, in 2016 Sanofi US contributed $4.15 million to the Californians Against the Misleading RX Measure, and $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015 Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently contributed $7,300 total to five assembly-member candidates, and $2,500 to the California Republican Party.

36.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson was in the business of labeling, selling, marking, packaging, repackaging, and distributing Taxotere, including the Taxotere used by Plaintiffs.  McKesson also owns US Oncology, which supported a significant amount of Taxotere research and promotion. Defendant does business throughout the United States and in the State of California and regularly and continuously did business within this judicial district including marketing, advertising, warning about, selling, and distributing Taxotere. For example, McKesson Specialty Health, a division of McKesson, lists Taxotere in its catalog of available products.

37.     Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

capacities when ascertained. Plaintiffs are informed and believes and thereon allege that each of the fictitiously named Defendants is a related entity, joint venturer, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

### DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE (DOCETAXEL)

38.     Taxotere is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Taxotere is a part of a family of drugs commonly referred to as taxanes.

39.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (TAXOL®) and docetaxel (TAXOTERE®). Taxane agents also exist as cabazitaxel and in generic forms as well.

40.     Taxol, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to Taxotere, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

41.     The drug and chemical compound that would become known as Taxotere was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. Taxotere was conceived as an increased potency taxane.

42.     The initial patent disclosing the formulation and computation of Taxotere was issued to Rhone-Poulence Santé and subsequently assigned to Defendant Aventis Pharma S.A in March 1989. Sanofi S.A. owns 100% of the shares or financial interest of Aventis Pharma S.A., and Sanofi S.A. therefore directs and controls the operations and activities of Aventis Pharma S.A. Since March 1989, Sanofi S.A., through its wholly-owned subsidiary, Aventis Pharma S.A., has controlled the development and been the owner, holder, or assignee of the patents related to Taxotere.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

43.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Polunec, Aventis Pharma S.A.'s predecessor, assigned to docetaxel.

44.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound Taxotere (docetaxel), but Sanofi was also directly involved in the clinical trials and testing of the compound Taxotere (docetaxel). Accordingly, Sanofi S.A. and Aventis Pharma S.A. have direct and personal knowledge of the results of those tests and Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

45.     Rhône-Poulenc Rorer S.A., before it was acquired by or merged into Aventis Pharma S.A., initially sought FDA approval for Taxotere in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of Taxotere, because Taxotere was more toxic than its competing drug Taxol, which had already received FDA approval, and because more studies of Taxotere's side effects were needed.

46.     Taxotere was ultimately approved by the FDA on May 14, 1996. According to its product labeling, Taxotere was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

47.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for Taxotere. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product paclitaxel (Taxol), which was the primary competitor product to Taxotere.

48.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted Taxotere in California throughout this period.  U.S. Oncology, a specialty drug distributor now

9

owned by McKesson, supported research and the subsequent promotion of Taxotere at conferences including the annual meetings for the American Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology in 2010.

49.    Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent Taxotere does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

50.    A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with Taxotere (docetaxel) or Taxol (paclitaxel).

51.    A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that Taxol (paclitaxel) was more effective than Taxotere (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

52.    Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of Taxotere over the competing product paclitaxel (Taxol). In June 2008, Sanofi-Aventis utilized marketing and promotional materials for Taxotere at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of Taxotere versus paclitaxel (Taxol).  Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy compared with paclitaxel (TAXOL®), providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

53.    Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that Taxotere was not more effective than paclitaxel (Taxol) in the treatment of breast cancer.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

54.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over paclitaxel stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

55.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use Taxotere. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

56.     Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC and their predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted Taxotere for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of Taxotere to expand the market for Taxotere in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of Taxotere from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

57.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to docetaxel's increased toxicity as compared to other available less toxic products such as paclitaxel.

58.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

## DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE AND PERMANENT DISFIGURING HAIR LOSS

59.     Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

60.     Defendants knew or should have known that the rate of permanent alopecia related to Taxotere was far greater than with other products available to treat the same condition as Defendants' product.

61.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of Taxotere suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

62.     Although women might accept the possibility of permanent baldness as a result of the use of Taxotere if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of Taxotere, there were already similar products on the market that were

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

at least as effective as Taxotere and did not subject female users to the same risk of disfiguring permanent alopecia as does Taxotere.

63.     Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took Taxotere had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking Taxotere. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

64.     In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken Taxotere suffered from permanent disfiguring hair loss for years after the patients had stopped taking Taxotere.

65.     Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken Taxotere and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take Taxotere are at a significantly increased risk of suffering from permanent disfiguring hair loss.

66.     Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that Taxotere causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking Taxotere.

67.     Users of Taxotere were not presented with the opportunity to make an informed choice as to whether the benefits of Taxotere were worth its associated risks. Defendants

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

engaged in a pattern of deception by overstating the benefits of Taxotere as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

68.     In other countries, Defendants published information to individual patients and regulatory agencies about Taxotere and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

69.     In December 2015, the FDA changed the safety labeling for Taxotere (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

70.     As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

71.     As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using Taxotere over other comparable products was justified.

72.     Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

73.     Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

74.     Plaintiff Klara Ernyes-Kofler was diagnosed with stage I ductal carcinoma in her left breast in 2012.  Following her diagnosis, Plaintiff met with her oncologist to discuss

14

treatment. Neither Ms. Ernyes-Kofler nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

75.     Ms. Ernyes-Kofler received Taxotere manufactured and/or distributed by Winthrop U.S., which is a business unit of or division within Sanofi-Aventis U.S. LLC.  As the holder for the reference listed drug (RLD) of brand-name Taxotere, Defendant Sanofi-Aventis U.S. LLC supplied the labeling for Winthrop U.S.'s generic version of Taxotere.

76.     Ms. Ernyes-Kofler received Taxotere packaged and distributed by Defendant McKesson Corporation.

77.     Plaintiff Nadine Spertus was diagnosed with stage II breast cancer in 2007. Neither Ms. Spertus nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere. Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere. Ms. Spertus is bald, with thinning eyelashes and no eyebrows. To conceal her baldness she got implants for hair growth.

78.     Plaintiff Ann Buchanan was diagnosed with breast cancer in 2009. Neither Ms. Buchanan nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

79.     Plaintiff Vera Sue Green was diagnosed with breast cancer in 2006. Neither Ms. Green nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

80.     Plaintiff Sharon M. Stewart was diagnosed with breast cancer in 2008. Neither Ms. Stewart nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

81.     Plaintiff Sylvia Washington was diagnosed with stage I breast cancer in 2010. Neither Ms. Washington nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere. Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

## **NATURE OF THE CLAIMS**

82.     Despite the fact that Defendants disclosed risks associated with Taxotere and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of Taxotere regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for Taxotere, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

83.     In particular, Defendants:

(a)     failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of Taxotere in response to these studies;

16

(b)     failed to provide adequate warnings about the true safety risks associated with the use of Taxotere;

(c)     failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Taxotere and its effects on the degree or severity of side effects related to permanent alopecia;

(d)     failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of Taxotere;

(e)     failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to Taxotere;

(f)     failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of Taxotere;

(g)     failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)     failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of Taxotere as compared to other products intended to treat the same conditions as Taxotere; and

(i)     failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

84.     During the years since first marketing Taxotere in the U.S., Defendants modified the U.S. labeling and prescribing information for Taxotere on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

85.     Before applying for and obtaining approval of Taxotere, Defendants knew or should have known that consumption of Taxotere was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

86.     Despite knowing that Taxotere was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed Taxotere in the United States.

87.     Defendants failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

88.     From the date Defendants received FDA approval to market Taxotere, Defendants made, distributed, marketed, and sold Taxotere without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that Taxotere was associated with disfiguring permanent alopecia.

89.     Defendants ignored the association between the use of Taxotere and the risk of disfiguring permanent alopecia.

90.     Defendants failed to disclose information that they possessed regarding their failure to adequately test and study Taxotere related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

91.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## **ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE**

92.     Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

93.     Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of Taxotere, and other acts and omissions.

94.     In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' Taxotere was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting Taxotere as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of Taxotere, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of Taxotere.

95.     Defendants had a duty to disclose that Taxotere was defective, unreasonably dangerous and that the use of Defendants' Taxotere carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.  Defendants breached that duty.

96.     Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects

found in Defendants' Taxotere or the true risks associated with their use at the time she purchased and used Defendants' Taxotere.

97.     Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' Taxotere was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have suffered and complained of herein.

98.     Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their Taxotere was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

99.     Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiffs' injuries to Taxotere exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information.  Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

100.    After Defendants changed the Taxotere prescription information in the United States to include information about permanent alopecia in December 2015, there ensued publicity and advertising related to permanent alopecia caused by Taxotere. Plaintiffs, as a result of the publicity and advertising, became aware of the failure to warn about permanent alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug. Plaintiffs acted with all reasonable diligence and speed upon discovering this information and timely files the present complaint.

20

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

## **FIRST CLAIM FOR RELIEF**

### **(Product Liability for Negligence – Against All Defendants)**

101. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

102. Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

103. Defendants failed to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into interstate commerce in that Defendants knew or should have known that using Taxotere created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

104. The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)     Selling Taxotere without disclosing its dangers and risks;

(b)     Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of Taxotere;

(c)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Taxotere;

(d)     Negligently advertising and recommending the use of Taxotere without sufficient knowledge as to its dangerous propensities;

(e)     Negligently representing that Taxotere was safe for use for its intended purpose, when, in fact, it was unsafe;

21

(f)    Negligently and falsely representing that Taxotere was superior to other commercially available products to treat the same forms of cancer that Taxotere was intended to treat;

(g)    Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that Taxotere was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)    Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of Taxotere compared to other forms of treatment for breast cancer.

105.    Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with Taxotere.

106.    Defendants negligently conveyed that the safety risks and/or dangers of Taxotere were comparable with other forms of treatment for the same conditions for which Taxotere was prescribed to treat.

107.    Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Taxotere in that they:

(a)    Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Taxotere;

(b)    Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with Taxotere;

(c)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Taxotere;

(d)    Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

(e)     Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with Taxotere.

(f)     Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of Taxotere, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)     Were otherwise careless and/or negligent.

108.     Despite the fact that Defendants knew or should have known that Taxotere caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell Taxotere to consumers, including Plaintiffs.

109.     Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of Taxotere as compared to other products already commercially available to treat the same types of cancer Taxotere was meant to treat.

110.     Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

111.     Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

112.     As a direct and proximate result of the use of Taxotere, Plaintiffs experienced disfiguring permanent alopecia.

113.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

23

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### SECOND CLAIM FOR RELIEF

**(Strict Products Liability – Failure to Warn – Against All Defendants)**

114.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

115.    The Taxotere that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of Taxotere. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

116.    Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name Taxotere, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of Taxotere. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

117.    Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent alopecia associated with Taxotere, and Defendants aggressively and fraudulently promoted the product to physicians.

118.    As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of Taxotere, Plaintiffs suffered disfiguring permanent alopecia and other conditions.

119.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

24

lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## THIRD CLAIM FOR RELIEF

### (Fraudulent Misrepresentation – Against All Defendants)

120.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

121.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

122.    When warning of safety and risks of Taxotere, Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and/or effective for its indicated use.

123.    Defendants concealed their knowledge of docetaxel's (Taxotere's) defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically including, but not limited to, concealing their knowledge of the risk of developing disfiguring permanent alopecia.

124.    Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

125.    Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer,

including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

126.     Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer.

127.     When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

128.     At the time Defendants made the aforesaid representations, and, at the time Plaintiffs used Taxotere, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

129.     In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe Taxotere, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

130.     Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

131.     Defendants knew or should have known that Taxotere had a potential to, could, and would cause severe and grievous injury to the users of Taxotere, including, but not limited to, the development of permanent disfiguring alopecia, and that Taxotere was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

132.     Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

133.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Concealment – Against All Defendants)

134.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

135.    At all times during the course of dealing between Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of Taxotere for its intended use.

136.    Defendants knew or were reckless in not knowing that its representations were false.

137.    In representations made to Plaintiffs and Plaintiffs' healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

> (a)     that Taxotere was not as safe as other forms of treatment for which Taxotere was marketed and sold to cancer patients;
>
> (b)     that the risks of adverse events with Taxotere were higher than those with other forms of treatment for which Taxotere was marketed and sold to cancer patients;
>
> (c)     that the risks of adverse events with Taxotere were not adequately tested and/or known by Defendants;
>
> (d)     that Defendants were aware of dangers in Taxotere, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

27

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

(e)     that Taxotere was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

138.    Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of Taxotere, including but not limited to the heightened risks of disfiguring permanent alopecia.

139.    Defendants had sole access to material facts concerning the defective nature of Taxotere and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used Taxotere, including Plaintiffs, in particular.

140.    Defendants' concealment and omissions of material facts concerning the safety of Taxotere was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of Taxotere and to cause them to purchase, prescribe, and/or dispense Taxotere and/or use Taxotere.

141.    Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding Taxotere set forth herein.

142.    Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

143.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF

### (Strict Product Liability for Misrepresentation – Against All Defendants)

144. Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

145. Defendants sold the Taxotere that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

146. Defendants were engaged in the business of selling the Taxotere for resale, use, or consumption.

147. Defendants misrepresented facts as set forth herein concerning the character or quality of the Taxotere that would be material to potential prescribers and purchasers or users of the product.

148. Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

149. As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF

### (Fraud and Deceit – Against All Defendants)

150. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

151. Defendants committed fraud by omission in applying for and gaining patent protection for Taxotere resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of Taxotere.

29

152.    Defendants fraudulently claimed superior efficacy over other products intended to treat the same conditions that Taxotere was intended to treat. These fraudulent representations were the proximal cause of Plaintiffs' exposure to the side effects of Taxotere.

153.    Defendants intentionally distributed false information, including but not limited to assuring Plaintiffs, Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that Taxotere was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

154.    Defendants intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians, healthcare professionals, and the public.

155.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public to disseminate truthful information.

156.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

157.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

158.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug Taxotere was safe and effective for the treatment of various forms of cancer, including breast cancer.

159.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug Taxotere carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions that Taxotere was intended to treat.

160.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Taxotere was not injurious to the health and/or safety of its intended users.

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

161.     The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Taxotere was no more injurious to the health and/or safety of its intended users than other forms of cancer treatments.

162.     These representations by Defendants were all false and misleading, as Taxotere carried with it the serious risk of developing disfiguring permanent alopecia.

163.     Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that Taxotere was not safe as a means of treatment for certain types of cancer that Taxotere was intended to treat.

164.     Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere not having dangerous and serious health and/or safety concerns.

165.     Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere being as safe as other products that treat the same conditions that Taxotere was intended to treat.

166.     It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of Taxotere and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use Taxotere.

167.     Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that Taxotere was fit and safe for use as treatment for certain types of cancer, including breast cancer.

168.     Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals

31

that Taxotere was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those associated with other forms of treatment.

169.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere did not present risks related to disfigurement secondary to permanent alopecia.

170.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere did not present health or safety risks greater than other forms of treatment for the same conditions Taxotere was intended to treat.

171.    Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

172.    Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

173.    Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Taxotere.

174.    Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Taxotere to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

175.    Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to Taxotere.

176.    Defendants willfully and intentionally failed to disclose the truth and material facts related to Taxotere and made false representations with the purpose of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so

32

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend Taxotere.

177.    Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

178.    Plaintiffs and their respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how Taxotere would treat certain forms of cancer that Taxotere was intended to treat.

179.    At the time Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of Taxotere.

180.    Plaintiffs and their healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of Taxotere, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

181.    Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Taxotere, Plaintiffs would not have purchased, used, and/or relied on Defendants' drug Taxotere.

182.    Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

183.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent

33

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)

184.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

185.    Defendants' conduct, as set forth above, was extreme and outrageous.

186.    Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

187.    Defendants' conduct caused Plaintiffs severe emotional distress.

188.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants Sanofi S.A., Aventis Pharma S.A., Sanofi-Aventis U.S. LLC, and McKesson Corp. The extreme and outrageous conduct of the Defendants, and each of them, was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages, costs, expert witness fees, attorneys' fees,

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 5, 2016                    Respectfully submitted,

**CUTTER LAW P.C.**

By: _____

C. Brooks Cutter
*Attorney for Plaintiffs*

35

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO.

C. Brooks Cutter, SBN 121407
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone:   (916) 290-9400
Facsimile:   (916) 588-9330
Email: bcutter@cutterlaw.com



FILED/ENDORSED

FEB - 3 2017

By: _____ R. San Miguel
Deputy Clerk

*Attorney for Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR SACRAMENTO COUNTY -UNLIMITED JURISDICTION-

| | |
|---|---|
| LISA MCCALLISTER, JANINE HANSON, BRENDA BANKS, BRENDA HAWKINS, PENNY MILLER, CAROLYN BOYD, SANDRA ISHAM, IDA VINCENT, GERALDINE JONES, JOSEPHINE HICKS<br>Plaintiffs,<br>v.<br><br>SANOFI S.A.; AVENTIS PHARMA S.A.; SANOFI-AVENTIS U.S. LLC; MCKESSON CORPORATION; and DOES 1 through 30, inclusive,<br><br>Defendants | Case No. 34-2016-00204609<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Negligence<br>2. Strict Liability – Failure to Warn<br>3. Fraudulent Misrepresentation<br>4. Fraudulent Concealment<br>5. Strict Liability – Misrepresentation<br>6. Fraud and Deceit<br>Intentional Infliction of Emotional Distress |

1

FIRST AMENDED COMPLAINT CASE NO 34-2016-00204609

Plaintiffs by and through their attorney, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; Sanofi-Aventis U.S. LLC; and McKesson Corporation, and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE CASE

Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and distributed by Defendants.  Although lower potency alternatives have been available for years, Defendants misleadingly promoted Taxotere as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact, Taxotere's increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, Taxotere's risk of permanent hair loss is not.  Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, promotion, and sale of Taxotere.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10. The amount in controversy exceeds the jurisdictional limit of $25,000.

This Court has personal jurisdiction over Defendants, each of which is licensed to conduct or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including Taxotere, to the residents in this state.  Defendants have sufficient minimum contacts in California and intentionally avail themselves of the markets within California through the

promotion, sale, marketing, and distribution of their products, including Taxotere, thus rendering the exercise of jurisdiction by this Court proper and necessary.

Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendants transact business in this County and the events complained of occurred in this County.

## PARTIES

Plaintiff Lisa McCallister is a resident of Carmichael, California, and received chemotherapy treatment with Taxotere in Sacramento County. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. McCallister has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Janine Hanson is a resident of West Covina, California, and received chemotherapy treatment with Taxotere in Fullerton, California. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. Hanson has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Brenda Banks is a resident of Memphis, Tennessee, and received chemotherapy treatment with Taxotere in Memphis. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. Banks has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Brenda Hawkins is a resident of Louisiana, and received chemotherapy treatment with Taxotere in Baton Rouge. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. Hawkins has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Penny Miller is a resident of Kentucky, and received chemotherapy treatment with Taxotere in Glasgow, Kentucky. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants.

Ms. Miller has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Carolyn Boyd is a resident of Tennessee, and received chemotherapy treatment with Taxotere in Chattanooga. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. Boyd has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Sandra Isham is a resident of Tennessee, and received chemotherapy treatment with Taxotere in Knoxville, Tennessee. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Ms. Isham has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Ida Vincent is a resident of Louisiana, and received chemotherapy treatment with Taxotere in Lake Charles, Louisiana. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Ms. Vincent has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Geraldine Jones is a resident of Memphis, Tennessee, and received chemotherapy treatment with Taxotere in Memphis. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. Ms. Banks has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

Plaintiff Josephine Hicks is a resident of Texas, and received chemotherapy treatment with Taxotere in Washington state. She was prescribed and administered Taxotere, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants.

Ms. Hicks has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

/ / /

/ / /

Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 Rue La Boétie, 75008 Paris, France.

Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 Avenue Raymond Aron, 92160 Antony, France.

Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi S.A. is the only member and owns 100% of the membership interest (both financial and voting) of Defendant Sanofi-Aventis U.S. LLC.

Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

Sanofi S.A. is a French multinational pharmaceutical parent company that operates worldwide through a complex, consolidated, and intermingled web of more than 400 wholly-owned subsidiaries, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As of 2013, Sanofi S.A. was the world's fifth-largest pharmaceutical company by sales.

At all times relevant, Sanofi S.A. was engaged in the business of researching, analyzing, licensing, formulating, compounding, patenting, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and selling the prescription drug Taxotere through its numerous wholly-owned subsidiaries in the United States and throughout the world, including Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

The predecessor to the entity now known as Sanofi S.A. was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil company subsequently acquired by Total, when Elf Aquitaine took control of the Labaz group pharmaceutical company. In 1993, Sanofi entered the U.S. pharmaceutical market by first partnering with and then later acquiring Sterling Winthrop

and its prescription pharmaceutical business in 1994. Sanofi was incorporated under the laws of France in 1994 as a *société anonyme*.

Aventis was formed in 1999 when the French company Rhône-Poulenc S.A. merged with the German corporation Hoechst Marion Roussel, which itself was formed from the 1995 merger of Hoechst AG with Cassella, Roussel Uclaf, and Marion Merrell Dow. The merged company was based in Schiltigheim, near Strasbourg, France.

Sanofi-Aventis S.A. was formed in 2004 with the merger of Aventis and Sanofi-Synthélabo, each of which had previously been formed through mergers. Sanofi-Aventis changed its name to Sanofi S.A. on May 6, 2011, after receiving approval at its annual general meeting.

Sanofi S.A.'s shares are listed on the New York Stock Exchange and the NASDAQ Global Market. Sanofi S.A. is required by law to register its securities in the United States under section 12(g) of the Securities Exchange Act of 1934 on Form 20-F and to file its annual reports on Form 20-F.

According to Sanofi S.A.'s Form 20-F filed with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2014, Sanofi S.A. owns 100% of the membership and voting interest of Sanofi-Aventis U.S. LLC. Therefore, Sanofi S.A. controls and directs the operations of Sanofi-Aventis U.S. LLC.

Sanofi-Aventis U.S. LLC, according to Sanofi S.A.'s Form 20-F, was formed on June 28, 2000 as a Delaware limited liability company whose principal activity was identified as "Pharmaceuticals."

Upon information and belief, Aventis Pharma S.A. was formed as a successor in interest to Rhone-Poulenc Rorer, S.A.

//

At all times material to this lawsuit, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC were engaged in the business of, and were successors in interest to, entities engaged in the business of researching, analyzing, licensing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and selling the prescription drug Taxotere to the

general public, including Plaintiffs. Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC are hereinafter collectively referred to as "Sanofi" or "the Sanofi Defendants."

At all times material to this lawsuit, the Sanofi Defendants were authorized to do business within the State of California; did in fact transact and conduct business in the State of California; derived substantial revenue from goods and products used in the State of California; and supplied Taxotere within the State of California.

At all relevant times, and as more fully set forth below, the Sanofi Defendants acted in conjunction with other affiliated, related, jointly owned and controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of Taxotere to the general public, including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between them had ceased and these Defendants became the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as alleged herein.

As the corporate parent of these wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. Accordingly, there exists, and at all relevant times herein existed, a unity of interest, ownership, and conduct between Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC with regard to the manufacture, distribution, development, testing, and labeling of the Taxotere in question and with regard to other related conduct, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another.

Sanofi S.A., through its complicated web of various affiliates, wholly-owned subsidiaries, and predecessor companies, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC, has been directly involved in and has overseen the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting Taxotere throughout the world and in the United States. Sanofi S.A. markets Taxotere worldwide in over 100 different countries. When press releases are issued announcing the introduction, marketing, and distribution of Taxotere in a new country, the press releases are issued by Sanofi S.A., or before 2011 when Sanofi S.A. changed its name, by Sanofi-Aventis.

The Sanofi Defendants transact substantial business in California. The Sanofi Defendants have sponsored or conducted clinical trials of their products in California, including trials of Taxotere. For example, in 2005 Aventis sponsored a clinical trial at Stanford University of the efficacy of Taxotere for lung cancer treatment; from 2006 to 2012 Sanofi sponsored a clinical trial at Stanford on the efficacy of Taxotere for breast cancer treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford of Taxotere in patients with breast cancer; Sanofi also sponsored a large-scale epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern California, which terminated in 2012. In addition, Sanofi participates in ongoing research and development collaborations with the University of California, San Francisco.

Sanofi maintains an office at 185 Berry Street, San Francisco, and employs sales representatives and area business managers throughout the state. Sanofi's vaccine division, Sanofi-Pasteur, Inc. is registered to do business in California.

In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales represented the majority, at €29.8 billion. Although generic docetaxel is now available, Taxotere continues to be extremely profitable for Sanofi; in 2015 sales of Taxotere alone were €222 million.

Sanofi spends large sums on California politics, mainly via four entities that share the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-Aventis; and Sanofi-Aventis Group.

For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying in the state.

Sanofi US contributes to political campaigns in California. Specifically, in 2016 Sanofi US contributed $4.15 million to the Californians Against the Misleading RX Measure, and $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015 Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently contributed $7,300 total to five assembly-member candidates, and $2,500 to the California Republican Party.

Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson was in the business of labeling, selling, marking, packaging, repackaging, and distributing Taxotere, including the Taxotere used by Plaintiffs.  McKesson also owns US Oncology, which supported a significant amount of Taxotere research and promotion.  Defendant does business throughout the United States and in the State of California and regularly and continuously did business within this judicial district including marketing, advertising, warning about, selling, and distributing Taxotere. For example, McKesson Specialty Health, a division of McKesson, lists Taxotere in its catalog of available products.

Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believes and thereon allege that each of the fictitiously named Defendants is a related entity, joint venturer, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

## DEFENDANTS' INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE (DOCETAXEL)

Taxotere is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Taxotere is a part of a family of drugs commonly referred to as taxanes.

Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (TAXOL®) and docetaxel (TAXOTERE®). Taxane agents also exist as cabazitaxel and in generic forms as well.

Taxol, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to Taxotere, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

FIRST AMENDED COMPLAINT CASE NO 34-2016-00204609

The drug and chemical compound that would become known as Taxotere was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. Taxotere was conceived as an increased potency taxane.

The initial patent disclosing the formulation and computation of Taxotere was issued to Rhone-Poulence Santé and subsequently assigned to Defendant Aventis Pharma S.A in March 1989. Sanofi S.A. owns 100% of the shares or financial interest of Aventis Pharma S.A., and Sanofi S.A. therefore directs and controls the operations and activities of Aventis Pharma S.A. Since March 1989, Sanofi S.A., through its wholly-owned subsidiary, Aventis Pharma S.A., has controlled the development and been the owner, holder, or assignee of the patents related to Taxotere.

In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Polunec, Aventis Pharma S.A.'s predecessor, assigned to docetaxel.

Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound Taxotere (docetaxel), but Sanofi was also directly involved in the clinical trials and testing of the compound Taxotere (docetaxel). Accordingly, Sanofi S.A. and Aventis Pharma S.A. have direct and personal knowledge of the results of those tests and Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

Rhône-Poulenc Rorer S.A., before it was acquired by or merged into Aventis Pharma S.A., initially sought FDA approval for Taxotere in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of Taxotere, because Taxotere was more toxic than its competing drug Taxol, which had already received FDA approval, and because more studies of Taxotere's side effects were needed.

Taxotere was ultimately approved by the FDA on May 14, 1996. According to its product labeling, Taxotere was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for Taxotere. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product paclitaxel (Taxol), which was the primary competitor product to Taxotere.

Defendant McKesson Corporation distributed, packaged, labeled, and promoted Taxotere in California and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of Taxotere at conferences including the annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent Taxotere does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with Taxotere (docetaxel) or Taxol (paclitaxel).

 A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that Taxol (paclitaxel) was more effective than Taxotere (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of Taxotere over the competing product paclitaxel (Taxol). In June 2008, Sanofi-Aventis utilized marketing and promotional materials for Taxotere at the annual meeting for the American Society of Clinical Oncology, comparing

the efficacy of Taxotere versus paclitaxel (Taxol). Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology. The study concluded that "TAXOTERE® demonstrated superior efficacy compared with paclitaxel (TAXOL®), providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that Taxotere was not more effective than paclitaxel (Taxol) in the treatment of breast cancer.

As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over paclitaxel stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

---

[1]    Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2]    Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use Taxotere. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC and their predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted Taxotere for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of Taxotere to expand the market for Taxotere in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of Taxotere from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to docetaxel's increased toxicity as compared to other available less toxic products such as paclitaxel.

As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

## **DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE AND PERMANENT DISFIGURING HAIR LOSS**

Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

Defendants knew or should have known that the rate of permanent alopecia related to Taxotere was far greater than with other products available to treat the same condition as Defendants' product.

Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of Taxotere suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

Although women might accept the possibility of permanent baldness as a result of the use of Taxotere if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of Taxotere, there were already similar products on the market that were at least as effective as Taxotere and did not subject female users to the same risk of disfiguring permanent alopecia as does Taxotere.

Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took Taxotere had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking Taxotere. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken Taxotere suffered from permanent disfiguring hair loss for years after the patients had stopped taking Taxotere.

Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken Taxotere and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who

take Taxotere are at a significantly increased risk of suffering from permanent disfiguring hair loss.

Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that Taxotere causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking Taxotere.

Users of Taxotere were not presented with the opportunity to make an informed choice as to whether the benefits of Taxotere were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of Taxotere as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

In other countries, Defendants published information to individual patients and regulatory agencies about Taxotere and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

In December 2015, the FDA changed the safety labeling for Taxotere (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using Taxotere over other comparable products was justified.

Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

Plaintiff Lisa McCallister was diagnosed with breast cancer in 2012.  Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Ms. McCallister nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Ms. McCallister received Taxotere manufactured and/or distributed by Winthrop U.S., which is a business unit of, or division within Sanofi-Aventis U.S. LLC.  As the holder for the reference listed drug (RLD) of brand-name Taxotere, Defendant Sanofi-Aventis U.S. LLC supplied the labeling for Winthrop U.S.'s generic version of Taxotere.

Ms. McCallister underwent her chemotherapy treatment at Kaiser Permanente in Sacramento, California. On information and belief, McKesson Corporation distributed the Taxotere that Ms. McCallister received.

Plaintiff Janine Hanson was diagnosed with breast cancer in 2008. Neither Ms. Hanson nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Brenda Banks was diagnosed with stage II breast cancer in 2014. Neither Ms. Banks nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Brenda Hawkins was diagnosed with breast cancer in 2013. Neither Ms. Hawkins nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Penny Miller was diagnosed with breast cancer in 2013. Neither Ms. Miller nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Carolyn Boyd was diagnosed with breast cancer in 2008. Neither Ms. Boyd nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Sandra Isham was diagnosed with breast cancer in 2010. Neither Ms. Isham nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy,

Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Ida Vincent was diagnosed with breast cancer in 2011. Neither Ms. Vincent nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Geraldine Jones was diagnosed with breast cancer in 2012. Neither Ms. Jones nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

Plaintiff Josephine Hicks was diagnosed with breast cancer in 2012. Neither Ms. Hicks nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with Taxotere.  Accordingly, Plaintiff underwent chemotherapy that included Taxotere.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with Taxotere.

## NATURE OF THE CLAIMS

Despite the fact that Defendants disclosed risks associated with Taxotere and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of Taxotere regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for Taxotere, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

In particular, Defendants:

FIRST AMENDED COMPLAINT CASE NO 34-2016-00204609

failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of Taxotere in response to these studies;

failed to provide adequate warnings about the true safety risks associated with the use of Taxotere;

failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Taxotere and its effects on the degree or severity of side effects related to permanent alopecia;

failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of Taxotere;

failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to Taxotere;

failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of Taxotere;

failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of Taxotere as compared to other products intended to treat the same conditions as Taxotere; and

failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

During the years since first marketing Taxotere in the U.S., Defendants modified the U.S. labeling and prescribing information for Taxotere on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

Before applying for and obtaining approval of Taxotere, Defendants knew or should have known that consumption of Taxotere was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

Despite knowing that Taxotere was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed Taxotere in the United States.

Defendants failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

From the date Defendants received FDA approval to market Taxotere, Defendants made, distributed, marketed, and sold Taxotere without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that Taxotere was associated with disfiguring permanent alopecia.

Defendants ignored the association between the use of Taxotere and the risk of disfiguring permanent alopecia.

Defendants failed to disclose information that they possessed regarding their failure to adequately test and study Taxotere related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' Taxotere and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of Taxotere, and other acts and omissions.

In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' Taxotere was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting Taxotere as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of Taxotere, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of Taxotere.

Defendants had a duty to disclose that Taxotere was defective, unreasonably dangerous and that the use of Defendants' Taxotere carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.  Defendants breached that duty.

Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' Taxotere or the true risks associated with their use at the time she purchased and used Defendants' Taxotere.

FIRST AMENDED COMPLAINT CASE NO 34-2016-00204609

Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' Taxotere was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have suffered and complained of herein.

Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their Taxotere was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiffs' injuries to Taxotere exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information.  Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

After Defendants changed the Taxotere prescription information in the United States to include information about permanent alopecia in December 2015, there ensued publicity and advertising related to permanent alopecia caused by Taxotere. Plaintiffs, as a result of the publicity and advertising, became aware of the failure to warn about permanent alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug. Plaintiffs acted with all reasonable diligence and speed upon discovering this information and timely files the present complaint.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

22

Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

Defendants failed to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of Taxotere into interstate commerce in that Defendants knew or should have known that using Taxotere created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

Selling Taxotere without disclosing its dangers and risks;

Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of Taxotere;

Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Taxotere;

Negligently advertising and recommending the use of Taxotere without sufficient knowledge as to its dangerous propensities;

Negligently representing that Taxotere was safe for use for its intended purpose, when, in fact, it was unsafe;

Negligently and falsely representing that Taxotere was superior to other commercially available products to treat the same forms of cancer that Taxotere was intended to treat;

Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that Taxotere was unsafe, dangerous, and/or non-conforming with FDA regulations; and

23

Improperly concealing from and/or misrepresenting information to Plaintiffs,

Plaintiffs' physicians, other healthcare professionals, and/or the FDA

concerning the severity of risks and dangers of Taxotere compared to

other forms of treatment for breast cancer.

Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with Taxotere.

//

Defendants negligently conveyed that the safety risks and/or dangers of Taxotere were comparable with other forms of treatment for the same conditions for which Taxotere was prescribed to treat.

Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Taxotere in that they:

Failed to accompany their product with proper and/or accurate warnings

regarding all possible adverse side effects associated with the use of

Taxotere;

Failed to accompany their product with proper warnings regarding all possible

adverse side effects concerning the risks and dangers associated with

Taxotere;

Failed to accompany their product with accurate warnings regarding the risks of

all possible adverse side effects concerning Taxotere;

Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of

such adverse effects, as the warnings given did not accurately reflect the

symptoms, or severity, of the side effects;

Failed to conduct adequate post-marketing surveillance, to determine the safety,

dangers, and risks associated with Taxotere.

Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging

the sale of Taxotere, either directly or indirectly, orally or in writing,

about the need for more comprehensive and regular medical monitoring

than usual to ensure early discovery of potentially serious side effects; and

24

Were otherwise careless and/or negligent.

Despite the fact that Defendants knew or should have known that Taxotere caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell Taxotere to consumers, including Plaintiffs.

Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of Taxotere as compared to other products already commercially available to treat the same types of cancer Taxotere was meant to treat.

Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

As a direct and proximate result of the use of Taxotere, Plaintiffs experienced disfiguring permanent alopecia.

As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

**(Strict Products Liability – Failure to Warn – Against All Defendants)**

Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

The Taxotere that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of Taxotere. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name Taxotere, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of Taxotere. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent alopecia associated with Taxotere, and Defendants aggressively and fraudulently promoted the product to physicians.

As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of Taxotere, Plaintiffs suffered disfiguring permanent alopecia and other conditions.

As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### THIRD CLAIM FOR RELIEF

### (Fraudulent Misrepresentation – Against Sanofi Defendants)

Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

Sanofi Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

When warning of safety and risks of Taxotere, Sanofi Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that Taxotere had been tested and was found to be safe and/or effective for its indicated use.

Sanofi Defendants concealed their knowledge of docetaxel's (Taxotere's) defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically including, but not limited to, concealing their knowledge of the risk of developing disfiguring permanent alopecia.

Sanofi Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

Sanofi Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

Sanofi Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase

Taxotere for use in the treatments of various forms of cancer, including but not limited to breast cancer.

When Sanofi Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

At the time Sanofi Defendants made the aforesaid representations, and, at the time Plaintiffs used Taxotere, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

In reliance upon Sanofi Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe Taxotere, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

Sanofi Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

Sanofi Defendants knew or should have known that Taxotere had a potential to, could, and would cause severe and grievous injury to the users of Taxotere, including, but not limited to, the development of permanent disfiguring alopecia, and that Taxotere was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

Sanofi Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**FOURTH CLAIM FOR RELIEF**

**(Fraudulent Concealment – Against Sanofi Defendants)**

Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

At all times during the course of dealing between Sanofi Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of Taxotere for its intended use.

Sanofi Defendants knew or were reckless in not knowing that its representations were false.

In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi Defendants fraudulently concealed and intentionally omitted the following material information:

> that Taxotere was not as safe as other forms of treatment for which Taxotere was marketed and sold to cancer patients;

> that the risks of adverse events with Taxotere were higher than those with other forms of treatment for which Taxotere was marketed and sold to cancer patients;

> that the risks of adverse events with Taxotere were not adequately tested and/or known by Defendants;

> that Defendants were aware of dangers in Taxotere, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

> that Taxotere was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of Taxotere, including but not limited to the heightened risks of disfiguring permanent alopecia.

Sanofi Defendants had sole access to material facts concerning the defective nature of Taxotere and its propensity to cause serious and dangerous side effects, including, but not

limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used Taxotere, including Plaintiffs, in particular.

Sanofi Defendants' concealment and omissions of material facts concerning the safety of Taxotere was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of Taxotere and to cause them to purchase, prescribe, and/or dispense Taxotere and/or use Taxotere.

Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding Taxotere set forth herein.

Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF
### (Strict Product Liability for Misrepresentation – Against All Defendants)

Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

Defendants sold the Taxotere that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

Defendants were engaged in the business of selling the Taxotere for resale, use, or consumption.

Defendants misrepresented facts as set forth herein concerning the character or quality of the Taxotere that would be material to potential prescribers and purchasers or users of the product.

Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against Sanofi Defendants)

Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

Sanofi Defendants committed fraud by omission in applying for and gaining patent protection for Taxotere resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of Taxotere.

Sanofi Defendants fraudulently claimed superior efficacy over other products intended to treat the same conditions that Taxotere was intended to treat. These fraudulent representations were the proximal cause of Plaintiffs' exposure to the side effects of Taxotere.

Sanofi Defendants intentionally distributed false information, including but not limited to assuring Plaintiffs, Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that Taxotere was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

Sanofi Defendants intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians, healthcare professionals, and the public.

Sanofi Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public to disseminate truthful information.

Sanofi Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug Taxotere was safe and effective for the treatment of various forms of cancer, including breast cancer.

The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug Taxotere carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions that Taxotere was intended to treat.

The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Taxotere was not injurious to the health and/or safety of its intended users.

The information Sanofi Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Taxotere was no more injurious to the health and/or safety of its intended users than other forms of cancer treatments.

These representations by Sanofi Defendants were all false and misleading, as Taxotere carried with it the serious risk of developing disfiguring permanent alopecia.

Sanofi Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that Taxotere was not safe as a means of treatment for certain types of cancer that Taxotere was intended to treat.

Sanofi Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere not having dangerous and serious health and/or safety concerns.

Sanofi Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of Taxotere, specifically but not limited to Taxotere being as safe as other products that treat the same conditions that Taxotere was intended to treat.

FIRST AMENDED COMPLAINT CASE NO 34-2016-00204609

It was Sanofi Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of Taxotere and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use Taxotere.

Sanofi Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that Taxotere was fit and safe for use as treatment for certain types of cancer, including breast cancer.

Sanofi Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those associated with other forms of treatment.

Sanofi Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere did not present risks related to disfigurement secondary to permanent alopecia.

Sanofi Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that Taxotere did not present health or safety risks greater than other forms of treatment for the same conditions Taxotere was intended to treat.

Sanofi Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

Sanofi Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

Sanofi Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe Taxotere.

Sanofi Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Taxotere to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

Sanofi Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to Taxotere.

Sanofi Defendants willfully and intentionally failed to disclose the truth and material facts related to Taxotere and made false representations with the purpose of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend Taxotere.

Sanofi Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

Plaintiffs and their respective healthcare professionals did in fact rely on and believe Sanofi Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how Taxotere would treat certain forms of cancer that Taxotere was intended to treat.

At the time Sanofi Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of Taxotere.

Plaintiffs and their healthcare providers did not discover the true facts with respect to Sanofi Defendants' false representations and the dangerous and serious health and/or safety concerns of Taxotere, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of Taxotere, Plaintiffs would not have purchased, used, and/or relied on Sanofi Defendants' drug Taxotere.

Sanofi Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF
### (Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)

Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

Defendants' conduct, as set forth above, was extreme and outrageous.

Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

Defendants' conduct caused Plaintiffs severe emotional distress.

As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present,

and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants Sanofi S.A., Aventis Pharma S.A., Sanofi-Aventis U.S. LLC, and McKesson Corp. The extreme and outrageous conduct of the Defendants, and each of them, was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  February 3, 2017                    Respectfully submitted,

                                            **CUTTER LAW P.C.**

                                            By: _____

                                            C. Brooks Cutter
                                            *Attorney for Plaintiffs*

FIRST AMENDED COMPLAINT CASE NO 34-2016-00204609