UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 2740 SECTION "N" (5) |
| THIS DOCUMENT RELATES TO: | : : | HON. KURT D. ENGELHARDT |
| ALL CASES | : : : : | |

**DEFENDANTS' OPPOSITION ON FRENCH LAW GROUNDS TO PLAINTIFFS'
MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION**

Pursuant to Pretrial Order No. 52 (Doc. 661), Defendants Sanofi and Aventis Pharma S.A. (collectively, the "French Defendants") file this Opposition to Plaintiff's motion to compel relating to: (1) the Hague Convention, (2) the French Blocking Statute, and (3) the French Data Protection Act.[1]

On April 28, 2017, nearly three months ago, the French Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction.  (Doc. 346.)  Rather than respond to that motion, Plaintiffs insisted on the need for jurisdictional discovery in order to support their "alter ego" theory of personal jurisdiction over the French Defendants.  Plaintiffs failed to provide narrowly tailored discovery limited to the issue of personal jurisdiction and instead served 45 interrogatories and 15 requests for production on each defendant seeking a broad set of information well beyond the confines of any personal jurisdiction theory.  The French Defendants, faced with these broad discovery requests, provided full responses to 22 of Plaintiffs' interrogatories—near the maximum allowed by the Federal Rules for general merits discovery—and objected to the remaining requests on various grounds.

---

[1] This opposition is directed to Judge Engelhardt for his consideration.  Defendants are also concurrently filing a separate opposition to Plaintiffs' motion to compel before Magistrate Judge North relating to issues other than French law.

Specifically, as it relates to this opposition,  the French Defendants objected that the requests failed to comply with the legal prerequisites for production from foreign jurisdictions, in particular, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, the French Blocking Statute, and the French Data Protection Act.   Plaintiffs subsequently filed their motion to compel.

Plaintiffs' motion to compel rests on the false premise that they do not already have the relevant information necessary to oppose the French Defendants' pending Motion to Dismiss for Lack of Personal Jurisdiction.   To the contrary, the French Defendants have provided information to Plaintiffs' jurisdictional allegations through affidavits, motions, and full responses to 22 of Plaintiffs' interrogatories.   Additionally, sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively, the "U.S. Defendants") are willing to locate and provide responsive documents based on the reasonable rewording of Plaintiffs' broad jurisdictional requests for production, an issue currently pending before Magistrate Judge North.[2]  *See* Defendants' Discovery Opposition to Plaintiffs' Motion to Compel Responses to Requests for Production.

Stated differently, Plaintiffs have what they need to try to prove their narrow "alter ego" theory of personal jurisdiction over the French Defendants.   The French Defendants should not be compelled to violate French law by providing information or documents in response to Plaintiffs' unnecessary and irrelevant requests for production.

---

[2] To that end, the Parties have met and conferred numerous times over the last two month to discuss and attempt to appropriately narrow Plaintiffs' requests.  Defendants' counsel has repeatedly explained that the French Defendants' responses to interrogatories should be sufficient to satisfy Plaintiffs' narrow theory of jurisdictional theory, without exposing the French Defendants to both civil and criminal sanctions under the Hague Convention, French Data Protection Act, and the French Blocking Statute. Indeed, compliance with these requests, as served, would force the French Defendants to violate French criminal law by producing documents located in France outside the channels authorized by the French government.

## ARGUMENT

Plaintiffs' motion to compel should be denied because (1) Plaintiffs already have, or are going to get from the U.S. Defendants, the information necessary to respond to the French Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; and (2) the Hague Convention, the French Blocking Statute, and the French Data Protection Act apply and impose additional requirements that are inconsistent with Plaintiffs' jurisdictional discovery requests.

### A.      Discovery on Foreign Defendants Triggers Additional Requirements

Parties and courts must treat discovery on foreign corporations differently.  The United States Supreme Court recognizes that "[w]hen it is necessary to seek evidence abroad . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 543 (1987).

To that end, when, as here, a party's obligations under foreign law <u>directly conflict</u> with discovery requests in U.S. litigation, a court must address whether international comity calls for resort to foreign procedures in a particular case.  *Id.* at 544.  In deciding whether to use foreign discovery procedures, district courts must "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest express by a foreign state."  *Id.* at 546.  In this case, Plaintiffs' Requests trigger application of: 1) the Hague Convention; 2) the French Blocking Statute; and 3) the French Data Protection Act.

**<u>The Hague Convention</u>:**  Under French law, the Hague Convention—which has been effective in both the United States and France for more than 40 years—is the <u>exclusive</u> means through which foreign judicial authorities can secure evidence in France.  *See* Decl. of Kami

Haeri Ex. A, at ¶¶ 14, 19-23.  Pursuant to the Hague Convention, discovery may be obtained by a party through two primary mechanisms.  The first method is a Letter of Request sent by a court in the requesting state.  23 U.S.T. 2555, Art. 1; *see also* Decl. of Kami Haeri Ex. A, at ¶ 11. ("[A] judicial authority of a Contracting State, may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.").  French law requires French courts to enforce letters of request. *See* Brief of Amicus Curiae the Republic of France at *23, *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987) (No. 85-1695) (hereinafter "*Aérospatiale Amicus*") (France will execute a letter of request seeking pre-trial discovery "provided that the documents requested are enumerated in the letter of request and have a direct and clear nexus with the subject matter of the litigation"); Decl. of Kami Haeri Ex. A, at ¶¶ 12-13.

The second mechanism authorizes diplomatic officers, consular agents, or appointed commissioners of the requesting state to collect evidence.  *See* 23 U.S.T. 2555, Arts. 15-16, 23; Decl. of Kami Haeri Ex. A, at ¶ 11.  While the convention itself does not discuss written discovery *per se*, it is the long-standing practice in France to handle such requests expeditiously in a manner similar to that approved for depositions.  *See Aérospatiale Amicus*, 1986 WL 727501, at *26.

**The French Blocking Statute:**  The French Blocking Statute works in tandem with the Hague Convention, prohibiting the disclosure in foreign judicial proceedings of documents or information[3] of an economic, commercial, industrial, financial or technical nature except in

---

[3] The term "information" as used in Article 1 *bis* is broad, and refers to any kind of statement, orally or by other means.  This would include, for example, an oral statement concerning the substance of a discussion or electronic data.

accordance with French domestic law or international treaties and agreements.  *See* Law No. 80-538 of July 16, 1980, Art. 1 *bis*; Decl. of Kami Haeri Ex. A, at ¶¶ 4, 5-10.[4]  Any violation of the French Blocking Statute is a criminal offense punishable by imprisonment of up to six months and a substantial monetary fine.  *Id.*; Decl. of Kami Haeri Ex. A, at ¶¶ 6-10, 14.[5]  Specifically, Article 1A of the French Blocking Statute, French Penal Code No. 80-538, makes it a <u>crime</u> "for any person to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith."  *See Aérospatiale*, 482 U.S. at 526 n.6 (quoting French Blocking Statute); Decl. of Kami Haeri Ex. A, at ¶ 7.  Put simply, the French Blocking Statute prohibits the collection and production of materials in France for use outside of France in civil discovery, except in compliance with French law or an international convention such as the Hague Convention.  *See* Decl. of Kami Haeri Ex. A, at ¶¶ 4-10, 14.[6]

**The French Data Protection Act:**  Finally, while the Hague Convention and the French Blocking Statute touch on the manner in which discovery may be sought from French entities—including the French Defendants in this case—the European Data Protection Directive 95/46/EC (the "European Directive") and the French law n 78-17 of January 6, 1978 (the "French Data Protection Act" or "FDPA") provide rules relating to the type of information that can be lawfully

---

[4] Article 2 requires that persons subject to the French Blocking Statute "promptly inform the competent Minister, upon the receipt of any request concerning such communications."  *Id.*; Decl. of Kami Haeri Ex. A, at ¶ 9.

[5] Violation of this provision is a criminal offense punishable by up to six months imprisonment and a fine of 18,000 euros for an individual *See* Decl. of Kami Haeri Ex. A, at ¶¶ 8, 18.  Legal entities also may be held liable for violating the French Blocking Statute and may be sentenced to up to five times the fine provided for individuals (*i.e.*, 90,000 euros).  *See id.*

[6] Pursuant to Article 2 of Law No. 69-678 of 26 July 1968 and Article 1 of Decree No. 81-550 of May 12, 1981, the French Foreign Ministry was notified of these requests and further guidance requested.  *See* Decl. of Claire Terrazas Ex. C; *see also* Decl. of Kami Haeri Ex. A, at ¶ 9 (setting forth the requirement)

shared.  In particular, the FDPA prohibits the disclosure of "personal data," which is defined broadly to include any information that can directly or indirectly identify an individual.  *See* Decl. of Pierre-Yves Lastic Ex. B, at ¶ 5; Decl. of Kami Haeri Ex. A, at ¶¶ 24-25.  The FDPA requires that certain limiting steps be taken to minimize the gathering and disclosure of personal information.  On July 23, 2009, the French data protection authority, Commission Nationale de l'Informatique et des Libertés (the "CNIL"), issued guidance on how the discovery process should be organized in light of French and EU data protection law (the "CNIL Recommendation").  *See* CNIL, Deliberation No. 2009-474 of 23 July 2009, concerning recommendations for the transfer of personal data in the context of American court proceedings known as "Discovery."[7]  The CNIL Recommendation describes the measures that a French company must take when providing documents in the context of U.S. discovery.[8]  The FDPA restricts a French company's ability to collect, process, review, export, and produce business-

---

[7]  An English version of the CNIL Recommendation can be found at https://www.cnil.fr/sites/default/files/typo/document/D-Discovery_EN.pdf.  A courtesy copy is attached as Ex. D.

[8] Those measures include:

- **Data minimization**:  Personal data must be minimized before being transferred outside of France.  Any personal data that is not strictly necessary for the litigation should be redacted or encoded prior to disclosure.

- **Proportionality**:  Where personal data is disclosed in discovery, the amount and kind of personal data produced should be proportionate, i.e. relevant and necessary to the adjudication of the U.S. litigation.

- **Security and confidentiality**: Technical and organization measures should be implemented so that personal data is disclosed only to persons who need to have access to the data for purposes of the U.S. litigation, and those persons are bound by confidentiality obligations.

- **Purpose limitation**:  Personal data disclosed in discovery should be sued only for purposes of the U.S. litigation.

- **Inform data subjects**:  Individuals whose personal data are disclosed in the context of discovery should be informed of the disclosure.

*See id.*; *see also* Decl. of Kami Haeri Ex. A, at ¶¶ 28-29.

oriented documents like e-mails, memoranda, and agreements that would inevitably contain personal data, including names, for employees and other individuals.  *See* Decl. of Kami Haeri Ex. A, at ¶¶ 25-2, 28.

Here, Plaintiffs' Requests will require the collection, processing, exporting and production of material that will necessarily involve the disclosure of "personal data," as defined by the FDPA.  *See* Decl. of Pierre-Yves Lastic Ex. B, at ¶¶ 2, 6-7.  The fact that the French Defendants are headquartered in France automatically renders their documents, employees, custodians, and lawyers subject to the strictures of the FDPA.  *See id.* at ¶ 3.  Accordingly, the French Defendants must ensure that any transfer of personal data, including transfers to the United States as part of pretrial discovery proceedings, must take place in accordance with the specific provisions of the FDPA.  *See id.* at ¶ 4.  Compliance with the FDPA is mandatory even if discovery is conducted through the Hague Convention.  *See* Decl. of Kami Haeri Ex. A, at ¶¶ 25-26, 28.

### 1.    Plaintiffs Should Pursue Jurisdictional Discovery Under The Hague Convention And The Procedures of the FDPA

Discovery on foreign entities is not automatic.  Just as U.S. courts would object to foreign litigants propounding disclosure laws of a different country within U.S. borders, U.S. courts must honor the sovereignty of the laws of other countries.  To determine whether foreign discovery procedures are appropriate, district courts must scrutinize "the particular facts, sovereign interests, and likelihood that resort to these procedures would prove effective."  *In re Anschuetz & Co., GmbH*, 838 F.2d 1362, 1364 (5th Cir. 1988).  "District courts in the Fifth Circuit have consistently implemented this command by applying the five factors of the Third Restatement."  *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2016 WL 3923873, *14 (E.D. La. July 21, 2016) (collecting cases).  Those five factors are:

a.   The importance to the litigation of the documents or other information requested;

b.   The degree of specificity of the request;

c.   Whether the requested documents or information originated in the United States;

d.   The availability of other means of securing the information; and

e.   The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987).[9]

The five comity factors dictate that both (1) the Hague Convention procedures for the service of discovery and (2) the separate FDPA data privacy mandates apply to the jurisdictional discovery sought in this case.

> ### a.   Plaintiffs already have the information necessary for their opposition to the French Defendants motion to dismiss

The first and fourth factors of the post-*Aérospatiale* comity analysis weigh in favor of the French Defendants, as Plaintiffs already have the information needed to provide a fulsome opposition to the pending motion to dismiss.  The French Defendants provided full responses to 22 of Plaintiffs' jurisdictional discovery interrogatories.   In their responses, the French Defendants provided information to Plaintiffs regarding: (1) how Sanofi S.A. allocates and mitigates losses between it and its U.S. subsidiaries, as well as its foreign exchange risk management system; (2) how Sanofi S.A. manages the "operational risk" of its U.S. subsidiaries; (3) how Sanofi S.A. manages any cash surplus and/or cash pooling arrangement with its U.S. subsidiaries; (4) whether any of  Sanofi S.A.'s executives or board of directors have held the same position with their U.S. subsidiaries (and *vice versa*); and (5) how Sanofi S.A. defines

---

[9] In addition to these factors, some courts have also considered "the good faith of the party resisting discovery."  *S.E.C. v. Stanford Int'l Bank, LTD*, 776 F. Supp. 2d 323, 330 (N.D. Tex. 2011) (quoting *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987)).  There is no dispute that the French Defendants have acted in good faith here.  They have already responded to a significant number of Plaintiffs' jurisdictional discovery interrogatories and have told Plaintiffs that the U.S. Defendants are prepared to locate and produce responsive documents based on a reasonable rewording of Plaintiffs' requests.

strategic priorities or coordinates work with its U.S. subsidiaries, among information.  Based on Plaintiffs' Master Complaint, Plaintiffs should not need more information to file an opposition to a motion they have had for nearly three months to review, analyze, and assemble a cogent response to.

Plaintiffs' requests for production directed to the French Defendants seek irrelevant information of little importance to personal jurisdiction.  For example, Plaintiffs seek production of all policies related to medical publications (Request No. 10(c)), human resources (Request No. 14), and compensation (Request No. 15).  Additionally, Plaintiffs seek irrelevant information such as all communications regarding adverse event reporting related to Taxotere® (Request No. 11) and the marketing of Taxotere® in the United States (Request No. 12).  These documents are not related to the establishment of personal jurisdiction over the French Defendants under any theory, much less the one advanced by Plaintiffs here.

Where, as here, the most potentially relevant information has already been provided and the remaining discovery is not necessary, courts are hesitant to order discovery that violates foreign law.  *See, e.g.*, *In re Vitamins Antitrust Litigation*, 2001 WL 1049433, *10 n.20 (D. D.C. June 20, 2001) ("[G]iven the significant comity concerns of requiring disclosure of information that could conceivable [sic] violate foreign countries' privacy laws, the Court is wary of ordering such discovery until it is clear that the requested discovery is necessary."; *Moore v. Publicis Groupe & MSL Group*, 287 F.R.D. 182, 186 (S.D.N.Y. 2012) (because defendant's France-based CEO corresponded with U.S. custodians, "and [his] emails stored in France likely would be covered by the French privacy and blocking laws" the CEO should not be a "first-phase custodian").

Indeed, the Texas Supreme Court denied a motion to compel production of a foreign corporation's records where (1) the materials sought were covered by a foreign country's data privacy law, (2) the record indicated that it was likely that "alternative methods for obtaining the information exist," and (3) the materials sought were of little importance in the context of the case. *Volkswagen, A.G. v. Valdez*, 909 S.W.2d 900, 903 (Tex. 1995). Because "the information sought can easily be obtained elsewhere, there is little or no reason to require [the French Defendants] to violate foreign law." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). The fact that the French Defendants have already provided the necessary information in their interrogatory responses weighs strongly in favor of at least requiring further discovery be in conformity with the Hague Convention procedures.

### b.    Plaintiffs' requests are broad and lack specificity

"A second consideration in evaluating a discovery request is how burdensome it will be to respond to that request. Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged." *Richmark*, 959 F.2d at 1475; *see also In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 355 (D. Conn. 1991) (resorting to Hague Convention procedures where "plaintiffs' discovery requests are not narrowly tailored inquires designed solely to target discreet and material information"). This consideration is particularly germane here and, like the first and fourth factors, weighs in favor of the French Defendants' requested relief.

Rather than serve narrowly-tailored jurisdictional discovery requests, Plaintiffs instead propounded 15 "generalized" Requests for Production on each of the French Defendants. Despite exhaustive efforts by defense counsel to limit the scope of Plaintiffs' requests, Plaintiffs made no attempt to narrow such requests to documents or information uniquely relevant to Plaintiffs' theory of personal jurisdiction. Indeed, Plaintiffs' requests seek: (1) documents and

information from Aventis Pharma S.A., despite the fact that Plaintiffs' Master Complaint only alleges that Sanofi S.A. (and not Aventis Pharma S.A.) is the "alter-ego" of the U.S. Defendants; (2) documents and information related to Sanofi's entire "prescription drug business," rather than information specific to Taxotere® or the U.S. Defendants; and (3) documents and information from a time period of more than twenty years.

The broad nature of these requests distinguishes this case from the two cited in Plaintiffs' motion.[10]  Both *Trueposition, Inc v. LM Ericsson Telephone Co.*, No. 11-4574, 2012 WL 707012 (E.D. Pa. Mar. 6, 2012) and *Adams v. Unione Mediterranea Di Sicurta*, No. 94-1954, 2002 WL 472252 (E.D. La. Mar. 28, 2002) involved truly limited jurisdictional discovery—not the type of broad requests at issue here.  *See Trueposition*, 2012 WL 70712 at *5 ("The discovery requests are specific and adequately tailored to the jurisdictional issue at hand."); *Adams*, 2002 WL 472252 at *3 (noting that the discovery requests at issue were "specifically tailored to" personal jurisdiction).  Notably, counsel in the *Adams* case did precisely what Plaintiffs' counsel here have refused to do—narrowed the scope of their discovery requests to properly focus on jurisdictional discovery.   *Adams*, 2002 WL 472252 at *3 ("The personal jurisdiction issue is an important one in this litigation, and the various discovery requests, particularly as narrowed in the movants' supplemental memoranda, are specifically tailored to that issue.").  For example, counsel in the *Adams* case narrowed the requested time period applicable to its requests to four years.  *Id.* at *4.  The French Defendants have repeatedly requested that Plaintiffs limit the 20-

---

[10] The broad nature of these requests also necessarily contemplates the production of personal information clearly protected by the FDPA.  Without taking the measures required under the FDPA, the requests will violate the FDPA "proportionality" rule, which requires that discovery searches be circumscribed as to ensure that "only the information legally authorized is transmitted to the adverse party and to the foreign judge in the framework of the proceeding." CNIL, Deliberation No. 2009-474 of 23 July 2009.

year timeframe they claim is relevant to their jurisdictional discovery requests, but Plaintiffs have refused to do so.

In this instance, Plaintiffs' jurisdictional discovery requests are the exact type of "unnecessary, or unduly burdensome, discovery" that could place the French Defendants "in a disadvantageous position." *Aérospatiale*, 482 U.S. at 546. Indeed, the French Blocking Statute was specifically designed to prevent this type of discovery abuse. *See* CNIL, Deliberation No. 2009-474 of 23 July 2009 ("[The French Blocking Statute] is a 'shielding' law adopted to defend French economic interests and to protect strategic data of companies against abusive actions undertaken by foreign authorities to collect economic information."). Because Plaintiffs' requests create the real concern about discovery abuse and the improper use of discovery, this factor counsels in favor of any production being consistent with the procedures set forth in the Hague Convention and the FDPA.

c.    **The balance of national interests favors use of the Hague Convention and FDPA procedures**

The respective interests of France and the United States relating to this motion also strongly favor use of Hague Convention and FDPA procedures for the production of documents from the French Defendants. France has a substantial sovereignty interest in limiting legal actions on French territory to those carried out only in accordance with French law, which would be undermined if this Court were to order production of documents from France outside of the Hague Convention and FDPA procedures.

The Fifth Circuit recognizes that the existence of foreign blocking statutes and data protection laws are important to consider as part of comity analysis. *See In re Anschuetz & Co., GmbH*, 838 F.2d 1362, 1364 (5th Cir. 1988) ("[W]e emphasize that it is most important that the district court should consider, with due caution, that many foreign countries, particularly civil

law countries, do not subscribe to our open-ended views regarding pretrial discovery, and in some cases may even be offended by our pretrial procedures.").  France's adoption of both the FDPA and the Blocking Statute demonstrate its strong interest in protecting the personal information of its citizens as well as protecting its citizens from obtrusive American discovery. Indeed, "France has been among the most emphatic" of civil law nations who have "expressed their disfavor of private litigants' use of [American] procedures within [their] borders" and without their supervision or consent.  *In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 355 (D. Conn. 1991).

France's compelling sovereignty interest is also seen in its enforcement of the FDPA and the French Blocking Statute.  For example, France's highest civil court, the *Cour de cassation*, has upheld criminal sanctions for violation of the French Blocking Statute.  In *In re Advocate Christopher X*, Cour de Cassation [Cass. Crim.], Paris, Dec. 12, 2007, Juris-Data No. 2007-83228 (Fr.),[11] a criminal court in Paris found a Paris lawyer guilty of violating the French Blocking Statute and fined him 10,000 euros for circumventing the Hague Convention and soliciting information directly from a former officer of one of the companies involved.

The Paris court determined that the accused French counsel "sought, although he was devoid of any warrant authorized by [the Hague Convention], for information of an economic, commercial or financial nature. . . ." Paris Court of Appeal, 9th Chamber, Section B, Mar. 28, 2007 No. 06/06275.  Finding no error, the *Cour de cassation* affirmed the Paris court's judgment, making clear that the Hague Convention is the exclusive means of securing information in France for use in foreign litigation and that parties caught in France bypassing the Hague Convention may expect to be prosecuted under the French Blocking Statute.  *See also*

---

[11] An English translation of the decision is available at 7 Digital Evidence & Elec. Signature L. Rev. 130 (2010), available online at http://sas-space.sas.ac.uk/5427/1/1937-2737-1-SM.pdf.

Decl. of Kami Haeri Ex. A, at ¶ 18. Plaintiffs miss this important point in their attempt to discount the *Christopher X* case. The Hague Convention is the exclusive means of securing information in France for use in foreign litigation, and an order that compels the French Defendants to produce information outside the confines of the Hague Convention carries with it the real risk of penalties associated with such production.

Likewise, the CNIL, the French body that enforces the FDPA, has issued at least a dozen decisions imposing monetary sanctions.[12]  *See In re Activision Blizzard, Inc.*, 86 A.3d 531, 538 (Del. Ch. 2014). If, as here, "compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure." *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087, 2013 WL 2661037, at *15 (S.D.N.Y. Jun. 12, 2013); *see also Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958) ("fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign").

Finally, while the French Defendants recognize that the United States has an interest in adjudicating the rights of American plaintiffs, that interest is lessened given the ancillary nature of the materials sought from the French Defendants—the vast majority of which have nothing to do with the Plaintiffs' theory of personal jurisdiction. *See In re Xarelto*, 2016 WL 3923813, at *18 ("Materials that are 'vital to the case-in-chief' produce more substantial national interests than ancillary materials.").

---

[12] A first violation of the FDPA is punishable by criminal sanctions of up to 150,000 euros and imprisonment of up to five years, with a subsequent violation punishable by sanctions of up to 300,000 euros. FDPA, Art. 47; Decl. of Kami Haeri Ex. A, at ¶ 29. The CNIL has characterized the sanctions for violation of the FDPA as even "more serious than those provided for in the case of a failure to observe the [French] Blocking Statute of 1968." CNIL, Deliberation No. 2009-474. The CNIL has enforced violations of the FDPA on numerous occasions with fines as high as 150,000 euros. *See In re Activision*, 86 A.3d at 538.

**d.    Whether the information originated in the United States is not a compelling factor here**

This factor "directs the court to consider whether the information originated in the United States.  If the information originated in the United States and is simply being stored abroad or was taken there, then the American origins of the information and its prior presence in the United States counsel in favor of production."  *In re Activision*, 86 A.3d at 545.   The rationale behind this factor – and the reason that it typically weighs in favor of production – is because a "company or individual should not be able to evade discovery in American courts by secreting information offshore."  *Id.*

Here, however, there is no evidence (or even assertion) that the U.S. Defendants "secreted information" to France in an attempt evade discovery in American courts.  To the contrary, the U.S. Defendants have (or have access to) the information most relevant to the personal jurisdiction issue.  It would make little sense to compel the French Defendants to produce documents that did not originate in France in violation of French law when alternative means for such production are available.

With respect to any French-only documents, those documents were created in the ordinary course of business in a country that grants extensive protection to the personal data of its employees.  This weighs against production.  *See In re Xarelto*, 2016 WL 3923873, at *16; *see also In re Activision*, 86 A.3d at 546 ("For documents and communications that originated and remained in France, this factor counsels against conducting discovery under this court's rules.").

**B.** **The Procedures Set Forth In the Hague Convention and FDPA Are Simple and Efficient Means To Produce French-located Documents Without Violating French Law**

Nor will Plaintiffs suffer prejudice through use of the Hague Convention and FDPA procedures. Indeed, Plaintiffs offer no support for their position that the Hague Convention would "impede Plaintiffs' ability to gather evidence in a timely manner." (Doc. 626-1 at 5.) Counsel for Plaintiffs in this MDL are sophisticated attorneys with experience litigating cases involving national and multinational corporations. And they are clearly familiar with the procedures set forth in the Hague Convention, having successfully utilized it on at least nine occasions to serve their complaints on the French Defendants.[13] As a result, they cannot now credibly argue that those procedures are either unnecessary or too complex when it comes to the service of discovery.

In any event, the Hague Convention procedures for obtaining evidence abroad are well-established and well-understood. "Letters of request," which are enforceable under French law, are the most common method to obtaining evidence under the Hague Convention. 23 U.S.T. 2555, Arts. 1-14; *see also Aérospatiale Amicus*, 1986 WL 727501, at *23 (France will execute a letter of request seeking pre-trial discovery "provided that the documents requested are enumerated in the letter of request and have a direct and clear nexus with the subject matter of the litigation"). Disclosure of covered documents under the letter of request procedure is likely to occur in a timely manner, permitting Plaintiffs with the opportunity to secure requested information without needlessly delaying discovery in the MDL.[14]

---

[13] *See, e.g.*, *Gahan v. Sanofi S.A., et al.*, No. 2:16-cv-15282.

[14] The second mechanism authorizes diplomatic officers, consular agents, or appointed commissioners of the requesting state to collect evidence. *See* 23 U.S.T. 2555, Arts. 15-17.

Of course, if these procedures prove unworkable, the Court retains the discretion to reconsider the issue.  Indeed, numerous courts have ordered first resort to foreign discovery procedures, while expressly reserving the right to revisit American procedures if foreign procedures prove unduly protracted or burdensome.  *See, e.g.*, *In re Activision*, 86 A.3d at 550-51; *Husa v. Laboratoires Servier SA*, 740 A.2d 1092, 1097 (N.J. Sup. Ct. App. Div. 1999); *Knight v. Ford Motor Co.*, 615 A.2d 297, 302 (N.J. Sup. Ct. Law Div. 1992); *In re Perrier*, 138 F.R.D. at 356; *Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D, 33. 39 (N.D.N.Y. 1987). At this point, however, it is most appropriate to begin with application of the Hague Convention and the FDPA.  *See In re Perrier*, 138 F.R.D. at 355 ("[T]here is no reason, on the record before the Court, to believe that Convention procedures will be ineffective in producing the discovery to which plaintiffs are entitled.").

## CONCLUSION

The French Defendants have already provided Plaintiffs with the information needed to oppose the pending motion to dismiss.  The French Defendants should not be compelled to respond further to Plaintiffs' unnecessary and irrelevant jurisdictional discovery in contravention of the Hague Convention and French law.  Accordingly, the French Defendants respectfully request that Plaintiffs' motion to compel be denied.

Respectfully Submitted:

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-310-2100
Facsimile:  504-310-2120
E-Mail:  dmoore@irwinllc.com

Harley V. Ratliff
Adrienne Byard
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone:  816-474-6550
Facsimile:  816-421-5547
E-Mail:  hratliff@shb.com


**Counsel for Sanofi and Aventis Pharma S.A.**


## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.


/s/ *Douglas J. Moore*
Douglas J. Moore