# EXHIBIT A



# DECLARATION

**Executive Summary**

Established in 1968 and amended in 1980, the French blocking statute (hereinafter "the blocking statute") imposes criminal sanctions on the transfer of certain categories of documents or information notably in the scope of foreign administrative or judicial proceedings. Under French law, discovery requests must be submitted through the Hague Convention on the taking of evidence abroad of 18 March 1970 (hereinafter "the Hague Convention"). Evidence can be collected by authorities in the requested state pursuant to a Letter of Request sent by a court in the requesting state. Evidence can also be collected by the diplomatic or consular personnel, or by an appointed commissioner. French law permits Letters of Request issued for the purposes of pre-trial discovery provided that the requested documents are enumerated restrictively in the Letter of Request and have a direct and precise link with the object of the procedure.

Since the entry into force of the blocking statute, French courts have enforced its provisions on several occasions. They confirmed that evidence should be collected through the mechanisms set forth by the Hague Convention.

Likewise, the French Data Protection Authority (hereinafter "the CNIL") has issued a guidance on how to transfer data in the course of discovery proceedings giving the main steps to be taken by companies to do so in compliance with the French Data Protection Act.

1. I, Kami Haeri, aged 45, have been admitted to the Paris Bar as an attorney since 1997. I am a former member of the Paris Bar Council (*Conseil de l'Ordre*). I chair the Litigation Arbitration White-Collar practice group at August Debouzy in Paris. I advise French and foreign clients on matters involving commercial and corporate dispute as well as white collar crime with a focus on international investigations. I teach "Dispute resolution" at Sciences Po Paris, "Litigation Strategies and Tactics" at the Paris Bar School and "Criminal Procedure" at the University of Cergy. I work as an expert in criminal law of the French think tank Institut Montaigne. I also participate on a regular basis in conferences and seminars focusing on white collar crime, dispute resolution and international compliance.

**AUGUST DEBOUZY**
6-8, avenue de Messine
75008 Paris - France

2.  The present declaration relates to the rules laid down together by the French blocking statute, the Hague Convention and the French Data Protection Act. It was issued at the request of Harley Ratliff, attorney at law at Shook Hardy & Bacon.

3.  This declaration focuses on 3 sections (Section 1 – Overview of the blocking statute and the Hague Convention, Section 2 – Implementation of the blocking statute, Section 3 – Data protection in case of a transfer of data in the framework of pre-trial discovery) and is divided into 30 paragraphs.

   I.   **Overview of the blocking statute and the Hague Convention**

4.  Under French law, two legal instruments may be used to respond to pre-trial discovery initiated abroad: first, the blocking statute which prohibits the communication of certain documents and/or information to foreign authorities **(1.1)** and second, the Hague Convention which provides formal procedures for the collection of evidence **(1.2)**.

   1.1  **Genesis and functions of the blocking statute**

5.  Enacted in 1968 and amended in 1980, the blocking statute[1] aimed at *(i)* blocking the enforcement in France of foreign discovery disputes and *(ii)* urging foreign authorities to use the procedures laid down by international treaties[2], notably by the Hague Convention which establishes mechanisms for provision of documents and/or information between contracting States for use in judicial proceedings[3] (see below, 1.2).

6.  The blocking statute imposes criminal sanctions on parties that communicate certain categories of documents and/or information to foreign public authorities. In this respect, Article 1 sets forth:

    *"Subject to treaties or international agreements, it is prohibited for any individual of French nationality or who usually resides on French territory and for any officer, representative, agent or employee of any entity having a head office of establishment in France to communicate to foreign public authorities, in writing, orally or by any other means, anywhere, documents or information relating to economic, commercial,*

---

[1] Law No. 68-678 of 26 July 1968 relating to communication of economical, commercial, industrial, financial or technical documents and information to foreign natural and legal persons, as amended by Law No. 80-538 of 16 July 1980.

[2] A. Mayoud (MP), Report on the draft bill relating to production of documents and information to foreign authorities in maritime trade and air transport matters, 19 June 1980, No. 1814, pp. 5 and 26; B. Carayon (MP), Report on the draft bill relating to the sanctions in the event of infringement of business confidentiality, 11 January 2012, No. 4159, sec. I. B. 3° a).

[3] Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, adopted at the 11th Session of the Hague Conference of Private International Law, entered into force in both the United States and France, respectively on 7 October 1972 and 6 October 1974.

> *industrial, financial of technical matters, the communication of which is capable of harming the sovereignty, security or essential economic interests of France or contravening public policy, specified by the administrative authorities as necessary."*[4]

7. Article 1 bis imposes sanctions on any person who requests or investigates such documents and/or information leading to the establishment of proof in view of foreign administrative or judicial proceedings or in relation thereto. The essential purpose of Article 1 bis is to urge foreign litigants to respect French laws governing the taking of evidence abroad[5]. It sets forth:

> *"Subject to treaties or international agreements and the laws and regulations in force, it is prohibited for any person to request, to investigate or to communicate in writing, orally or by any other means, documents or information relating to economic, commercial, industrial, financial or technical matters leading to the establishment of proof with a view to foreign administrative or judicial proceedings or as a part of such proceedings"* .[6]

8. According to Article 3 of the blocking statute, any violation of the provisions of Articles 1 and 1 bis shall be punished by a sentence up to 6 months of imprisonment and/or a fine up to EUR 18,000 for natural persons or EUR 90,000 for legal persons:

> *"Without prejudice to any greater penalties provided by law, any violation of the provisions of article 1 and 1 bis of this law will be punished by imprisonment of six months and by a fine of 18,000 euros or by only one of these two penalties"*[7].

---

[4] Law No. 68-678, Article 1 : *"Sous réserve des traités ou accords internationaux, il est interdit à toute personne physique de nationalité française ou résidant habituellement sur le territoire français et à tout dirigeant, représentant, agent ou préposé d'une personne morale y ayant son siège ou un établissement de communiquer par écrit, oralement ou sous toute autre forme, en quelque lieu que ce soit, à des autorités publiques étrangères, les documents ou les renseignements d'ordre économique, commercial, industriel, financier ou technique dont la communication est de nature à porter atteinte à la souveraineté, à la sécurité, aux intérêts économiques essentiels de la France ou à l'ordre public, précisés par l'autorité administrative en tant que de besoin"*.

[5] Parliamentary Q&A, Question No. 35893 from R. Chinaud (MP) to the Ministry of Justice, Official Journal of the National Assembly (JOAN) of 26 January 1981, p. 373.

[6] Law No. 68-678, Article 1 bis: *"Sous réserve des traités ou accords internationaux et des lois et règlements en vigueur, il est interdit à toute personne de demander, de rechercher ou de communiquer, par écrit, oralement ou sous toute autre forme, des documents ou renseignements d'ordre économique, commercial, industriel, financier ou technique tendant à la constitution de preuves en vue de procédures judiciaires ou administratives étrangères ou dans le cadre de celles-ci"*.

[7] Law No. 68-678, Article 3 : *"Sans préjudice des peines plus lourdes prévues par la loi, toute infraction aux dispositions des articles 1er et 1er bis de la présente loi sera punie d'un emprisonnement de six mois et d'une amende de 18000 euros ou de l'une de ces deux peines seulement"*. Please note that under French law, fines are multiplied by 5 for legal persons according to Article 131-38 of the French code of criminal procedure.

3

9. In addition, the requested parties must inform the French Minister of Foreign Affairs upon receipt of the request of documents. They may also inform the Ministry of Justice, the Ministry of Economic Affairs or the Ministry to which they are affiliated[8]. Article 2 of the blocking statute provides that:

   *"Persons aimed at by articles 1 and 1 bis are required to inform without delay the relevant minister when they are in receipt of any request concerning such communication"* [9].

10. The aforementioned provisions clearly suggest that the intent of the law was to protect the interests of French parties in cross-border litigation. This issue remains crucial under French law as well as in the EU. Recently, the European legislator has reiterated his attachment thereto: following a proposal from the European Commission, the European Parliament and the Council have indeed adopted a Directive that aims to standardise the national laws in EU countries against the unlawful acquisition, disclosure and use of trade secrets[10]. The directive must have been fully transposed into national laws of the Member states by 9 June 2018.

   **1.2 <u>Mechanisms of the Hague Convention</u>**

11. The Hague Convention offers several mechanisms for collecting evidence abroad. Evidence can be collected in the requested state by several means: (*i*) pursuant to a Letter of Request sent by a court in the requesting state[11] or (*ii*) by a diplomatic officer, a consular agent or an appointed commissioner of the requesting state[12]. In any case, the collection of evidence must be conducted in compliance with the laws of the requested state.

12. France permits Letters of Request issued for the purposes of pre-trial discovery provided that "*the requested documents are enumerated limitatively in the Letter of Request and have a direct and precise link with the object of the procedure*"[13].

13. The French code of civil procedure does not provide for a timeframe in which to address such Letters of Request but this could be conducted in a timely

---

[8] Decree No. 81-550 of 12 May 1981 on the application of Law No. 68-678, Article 1.
[9] Law No. 68-678, Article 2 : "" (*"Les personnes visées aux articles 1er et 1er bis sont tenues d'informer sans délai le ministre compétent lorsqu'elles se trouvent saisies de toute demande concernant de telles communications"*).
[10] Directive (EU) 2016/943 of the European Parliament and of the Council of 8 June 2016 on the protection of undisclosed know-how and business information (trade secrets) against their unlawful acquisition, use and disclosure.
[11] Hague Convention, articles 1 to 14.
[12] Hague Convention, articles 15 to 22.
[13] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=501&disp=resdn.

4

manner with the full cooperation of the French and American judicial authorities.

## II. Implementation of the blocking statute

14. Since the entry into force of the blocking statute, French courts have enforced its provisions on several occasions **(2.1)**. Recently, they recalled that the Hague Convention is the exclusive means to collect evidence abroad **(2.2)**.

### 2.1 Application by French courts

15. Article 1 bis has been invoked in different cases before French courts. In each of the following cases, the judges ensure that the interests of French individuals and companies are safeguarded.

16. In 1993, a French judge rejected the request filed by a former Head of State seeking "any useful documents" from French companies which would allow him to testify before a non-judicial authority or to take legal action before a foreign court[14]. In this case, the blocking statute was invoked by the French companies to challenge the request filed with the French court.

17. In 2005, another French judge ruled that the order issued by an American judge ordering a French financial institution to communicate documents was contrary to French economic and financial public policy pursuant to the blocking statute and the French provisions on bank secrecy[15]. In this case, the blocking statute was invoked by the French financial institution to challenge the effects in France of a US decision ordering such communication.

18. Furthermore, the application of the blocking statute has already led to a criminal conviction. In 2007, a French criminal court enforced the provisions relating to the violation of the blocking statute (article 3 thereof) for the first time[16]. The court found a French lawyer guilty and sentenced him to a EUR 10,000 fine. In this case, the lawyer was accused of attempting to obtain information relating to economic, commercial and financial matters leading to the establishment of proof in view of legal proceedings in the United States. The Court of appeal ruled that the prohibition laid down by the blocking statute "*aims at limiting possible abuses in the collection of evidence and does not constitute a disproportionate obstacle for the rights of the defense, given the fact that the exercise of such rights is ensured by the procedures laid down by the Hague Evidence Convention*"[17]. Having found

---

[14] Tribunal de grande instance de Nanterre, Ordonnance de référé, 22 December 1993, No. 93-4436.
[15] Tribunal de commerce de Paris, 20 July 1995, No. 2005044060.
[16] Cour d'appel de Paris, 28 March 2007, No. 06/06272 ("Christopher X case").
[17] *Id.*

5

no ground to challenge such decision, the *Cour de cassation* dismissed the appeal lodged by the lawyer[18].

### 2.2 Primacy of the Hague Convention

19. In the aforementioned case, the French criminal courts (both the Supreme and the lower court) made it clear that **the Hague Convention is the exclusive means of securing information in France for use in foreign litigation and that any person bypassing the Hague Convention may be subject to criminal prosecution pursuant to the blocking statute.**

20. Recently, in 2014, The Nancy Court of appeal confirmed that **any request of documentation in the framework of a pre-trial discovery should be made through the mechanism set forth by the Hague Convention and confirmed the application of the reservation made by France under article 23.**

21. For its part, the position of the French authorities on the blocking statute remains firm. The Ministry of Justice recently recalled that the spirit of the statute was – and still is – to challenge pre-trial discovery which enables broad taking of evidence and whose almost unlimited scope of application represent a genuine threat to the interests of French companies[19].

22. Moreover, members of the French National Assembly have recently issued an information report on extraterritoriality which confirms that some foreign authorities tend to directly address French entities instead of resorting to mechanisms set forth by international conventions. The report insists on the fact that such conventions are the traditional channels of judicial cooperation which should be used to collect evidence in the framework of foreign administrative or judicial proceedings[20].

23. Lastly, in the very specific field of anticorruption monitorship imposed by foreign regulators, the French legislator has recently enacted a reform setting forth that the new French anticorruption agency will be in charge of enforcing the blocking statute in corruption matters. Despite the very specific character of this measure, it demonstrates that the blocking statute remains an enforceable regulation[21].

### III. Data protection in case of a transfer of data in the framework of pre-trial discovery

24. Based on the increase in the number of requests made to French-based companies involved in US litigations to disclose information or documents for the

---

[18] Cour de cassation, Chambre criminelle, 12 December 2007, No. 07-83.228.
[19] Parliamentary Q&A, Question No. 19296 from J.-C. Danglot (Senator) to the Ministry of Justice, Official Journal of the Senate of 6 October 2011.
[20] P. Lellouche (MP) and K. Berger (MP), Information report on extraterritoriality of US legislation, 5 October 2016, No.4082, p. 59.
[21] Law No. 2016-1691 of 9 December 2016, Article 3, 5°.

purposes of civil pre-trial discovery, the French Data Protection Authority (hereinafter the "CNIL") has issued a guidance No. 2009-479 dated 23 July 2009 (hereinafter "the Guidance") together with a press release[22]. Such Guidance provides recommendations for transferring data to the US in the course of discovery proceedings in compliance with the French Act No. 78-17 dated 6 January 1978 (hereinafter the "French Data Protection Act")[23].

25. Indeed, disclosing information or documents during discovery proceedings may imply transfers of personal data[24] within the meaning of the French Data Protection Act and therefore the applicability of all the provisions of said act. It means that the data controller (*i.e.* the person, public authority, department or any other organization who determines the purposes and means of the data processing), has to comply with the provisions of the French Data Protection Act when responding to requests made in the course of discovery proceedings.

26. The Guidance clearly indicates that the existence of Letters of Requests does not prevent the French company from its obligation to comply with the French Data Protection Act. Indeed, one of the main roles of the CNIL is to protect data subjects in relation to the processing of their personal data by companies. In the Guidance, the CNIL insists on the fact that transfers of personal data during pre-trial discovery proceedings can only occur if the interests, rights and freedoms of the data subjects are preserved. It is therefore important for French-based companies to comply with all their obligations provided for by the French Data Protection Act before transferring said data.

27. The CNIL Guidance clarifies its position on this topic, and summarizes all the requirements to be fulfilled by companies to comply with French and European laws and regulations when responding to discovery proceedings, including to preserve data subjects' rights and freedoms. **In this context, the CNIL recalls that the data controller must necessarily comply with the principles of Articles 6 and 7 of the French Data Protection Act** (proportionality of data collected, lawfulness of the processing, data

---

[22] Link to the free translation in English made by the CNIL of said Guidance:
https://www.cnil.fr/sites/default/files/typo/document/D-Discovery_EN.pdf
[23] French version of the text:
https://www.legifrance.gouv.fr/affichTexte.do?cidTexte=JORFTEXT000000886460
Link to the latest version of the free translation in English made by the CNIL of the French Data Protection Act (please note that this translation is not up-to-date, the French Data Protection Act having been amended several time since 2014):
https://www.cnil.fr/sites/default/files/typo/document/Act78-17VA.pdf
[24] Personal data is defined by the French Data Protection as *"any information relating to a natural person who is or can be identified, directly or indirectly, by reference to an identification number or to one or more factors specific to him. In order to determine whether a person is identifiable, all the means that the data controller or any other person uses or may have access to should be taken into consideration"*. The CNIL has a really broad interpretation of what is to be considered as personal data. In this context, are notably considered to be personal data: IP addresses, employees' identification numbers and any information attached to an individual, even if the information is publicly available.

retention periods, etc.) **and recommends anonymizing the data transferred and relying for these purposes on a trusted third party.**

28. Indeed, the following principles must be observed by any French corporation if the documents transferred to the US as part of pre-trial discovery proceedings contain personal data:

    - Lawfulness of the processing of personal data (*i.e.* the legal basis being here (*i*) either the legitimate interest of the data controller provided that the provisions of the French blocking statute and the Hague Convention are complied with (*ii*) or the consent of the data subjects on really limited cases, due to the difficulty to obtain an informed, specific and freely given consent[25] in such circumstances);

    - Compliance with professional secrecy rules;

    - Proportionality of the data collected and transferred (*i.e.* the data collected must be relevant and not excessive in relation to the purposes for which they were obtained and further processed. Therefore, the filtering of data at a local level could be necessary prior to transferring the data to the US. The CNIL particularly insists on this point in its Guidance by indicating that a serious check regarding the proportionality, quality and adequacy of the data collected and to be transferred is fundamental. To do so, the CNIL recommends to perform this check objectively, in order to guarantee that only the elements legally entitled to be communicated are actually transferred to the other party and to the foreign judge as part of the discovery proceedings);

    - Data retention periods need to be implemented;

    - Data security measures need to be implemented;

    - Data subjects concerned by the proceedings need to be informed, including of their right to oppose for legitimate reasons, to access and rectify any personal data about them;

    - Rules regarding international transfers of personal data need to be complied with. The data controller needs to have a legal basis for transferring data outside the EU: this being (*i*) either the exception provided for by Article 69-3° of the French Data Protection Act (*i.e.* the transfer is necessary to comply with obligations to defend claims in a court of law), provided that it is a unique and not massive

---

[25] This being the conditions to obtain a valid consent as per CNIL appreciation and European laws.

8

transfer of relevant data, (*ii*) or the execution of Standard Contractual Clauses[26];

- Rules regarding formalities to be filed with CNIL in the context of data transfers to the US need to be complied with. This being either a notification to the CNIL, or a prior authorization (which can take from a few weeks to usually 2 months) depending on the legal basis of data transfers.

29. Non-compliance with the provisions of the French Data Protection Act is subject to:
    - administrative sanctions, imposed by the CNIL: the CNIL can impose warnings (public or non-public) and fines up to EUR 3 million (public or non-public decision). The amount of the fine will be increased as of 25 May 2018 because of the entry into force of the New European General Data Protection Regulation[27]. There will be two levels of fine, depending on the seriousness of the infringement: (*i*) up to EUR 10 million or 2% of the total worldwide annual turnover of the preceding year (whichever is higher), or (*ii*) up to EUR 20 million or 4% of the total worldwide annual turnover of the preceding year (whichever is higher);
    - criminal sanctions, imposed by French criminal courts (public decision) : up to five years' imprisonment and a fine up to EUR 300,000 (or EUR 1,5 million for legal persons).

30. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

In Paris, on 13 June 2017

Kami Haeri

---

[26] Standard Contractual Clauses is a template of contract for the transfer of personal data to third countries. Such template of contract has been approved by the European Commission as providing adequate safeguard with respect to the protection of the privacy and fundamental rights and freedoms of individuals and as regards exercise of the corresponding rights. It is one of the legal basis for transferring data outside of the European Union lawfully in compliance with the applicable data protection rules. It has to be executed between the data exporter (the data controller, here any entity that is requested to transfer data to the US as part of a discovery proceedings) and a data importer (here the recipient of the data in the course of the discovery proceedings).
[27] Regulation (EU) 2016-679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing directive 95/46/EC (General Data Protection Regulation): http://eur-lex.europa.eu/legal-content/EN/TXT/HTML/?uri=CELEX:32016R0679&from=FR