# EXHIBIT D



# Deliberation No. 2009-474 of 23 July 2009 concerning recommendations for the transfer of personal data in the context of American court proceedings known as "Discovery"

NOR: CNIA0900018X

The National Commission on Data Processing and Liberties,

Considering Convention No. 108 of the Council of Europe of 28 January 1981 concerning the protection of individuals with regard to automated processing of personal data;

Considering Directive 95/46/CE of the European Parliament and of the Council of Europe of 24 October 1995 concerning the protection of individuals with regard to processing of personal data and the free circulation of such data;

Considering Article 1bis of Law No. 68-678 of 27 July 1968, created by Law No. 80-538 of 16 July 1980 concerning the transmission of documents or information of an economic, commercial or technical character to foreign individuals or legal entities;

Considering Article 23 of the Hague Convention of 18 March 1970;

Considering Law No. 78-17 of 6 January 1978 concerning data processing, computer files and liberties, amended by Law No. 2004-801 of 6 August 2004 concerning the protection of individuals with regard to processing of personal data;

Considering Decree No. 2005-1309 of 20 October 2005 adopted in application of Law No. 78-17 of 6 January 1978 concerning data processing, computer files and liberties, amended by Law No. 2004-801 of 6 August 2004;

Considering the deliberation of the National Commission on Data Processing and Liberties No. 2005-213 of 11 October 2005 regarding the adoption of a recommendation concerning the methods of electronic archiving of personal data in the private sector;

Considering Opinion WP 158 of the working group known as "Article 29" adopted on 11 February 2009;

After having heard the report of Mssrs. Bernard Peyrat and Georges de La Loyère and the observations of Ms. Elisabeth Rolin, Commissioner of the Government,

The National Commission on Data Processing and Liberties notes an increase in the number of matters concerning the transfer of personal data to the United States, filed principally either by French subsidiaries of American companies or by French companies that have commercial ties with the United States, in the context of "Discovery" proceedings before American courts.



It shall be recalled that the proceedings known as "Discovery" or "pre-trial Discovery" are a phase of inquiry and investigation prior to a civil or commercial trial, which are essential for all judicial actions in the United States and which require each party to reveal to the other all the evidence that it possesses relevant to the dispute, even if such information is contrary to its interests and regardless of the location or form of the evidence. The disclosure of information in the context of criminal cases is thus excluded.

The scope of such exchanges of information may be very wide, and a refusal to disclose may lead to an unfavorable judgment for the party opposing such disclosure.

The Hague Convention provides for the transmission between Contracting States of evidence located abroad in the context of national court proceedings. This Convention provides that "*in civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the laws of that State, request the competent authority of another Contracting State, via means of a Letter of Request, to obtain evidence, or to perform some other judicial act (…)*" (Article 1).

The Hague Convention is the sole international agreement connecting France and the United States and constitutes a bridge between the Romano-Germanic legal systems and those deriving from the Common Law.

In particular, as concerns relations with the United States, it is provided that "a Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries." (Article 23).

In France, the execution of Letters of Request in the case of "pre-trial Discovery of documents" is authorized only "if the documents are enumerated limitatively in the letter of request and have a direct and specific connection with the subject of the dispute" (declaration made by France on 19 January 1987 in the context of Article 23 cited above).

In such a situation, the court to which the Letter of Request is transmitted must rule on the admissibility of the requests to obtain evidence, in accordance with the provisions of Articles 743 *et seq*. of the Code of Civil Procedure.

It is then up to the judge to rule, in accordance with Articles 138 *et seq*. of the New Code of Civil Procedure, on the production of the documents (including non-tangible documents) held by a third party or by a party, by ordering the production of the act or the document "*under the conditions and subject to the guarantees which he shall set, subject to penalty*" (1).

The majority of the countries that have ratified the Hague Convention have also issued reservations or have refused to transmit information in the context of "pre-trial Discovery" (Article 23).

Where this procedure has not been respected in France, the orders issued by American authorities concerning evidence located in France are thus without force.

---

[1] Article 139 of the NCPC [New Code of Civil Procedure].

CNIL - 8 rue Vivienne –CS 30223 - 75083 Paris Cedex 02 France

phone : +33 (0)1 53 73 22 22 - Fax : +33 (0)1 53 73 22 00

RÉPUBLIQUE FRANÇAISE



Indeed, the failure to observe the Hague Convention will, in France, cause the application of Law No. 68-678 of 26 July 1968 concerning the transmission of documents and information of an economic, commercial, industrial, financial or technical nature to foreign individuals or legal entities.

The Law of 26 July 1968 is a "shielding" law adopted to defend French economic interests and to protect strategic data of companies against abusive actions undertaken by foreign authorities to collect economic information.

This law provides that "subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally, or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith." The failure to observe this provision is sanctioned by a penalty of six months imprisonment and/or a fine of € 18,000.

Since the transmission of personal data in the context of a foreign proceeding may cause the summons of the person in question before a foreign court, it is essential to ensure that all of the legal rules applicable to this type of situation, and particularly the conflict-of-laws rules of international private law, are observed in order to better protect French citizens and to guarantee them due process.

In this regard, the Hague Convention and Law No. 68-678 of 26 July 1968, concerning the transmission of documents or information of an economic, commercial or technical nature to foreign individuals or legal entities, which govern the transmission of information to foreign authorities, must be observed in the case of a search for information on French territory. Any transmission of information in the context of a "Discovery" procedure must be conducted in accordance with the Hague Convention.

Further, the CNIL does not have the authority to evaluate the compliance of a "Discovery" transfer with regard to the Hague Convention or the Law of 1968 known as the "Blocking Statute".

Similarly, obtaining an authorization from a French judge to send documents to the United States (the "letter of request" procedure addressed to the Minister of Justice) does not release the French entity from the obligation to observe the provisions of the Law on Data Processing and Liberties, particularly as regards the question of the flow of personal data outside of the European Union, as the two regulations are complementary. We recall that, in France, criminal sanctions are provided for failure to observe the principles of the Law of 6 January 1978 as amended, which are significantly more serious than those provided for in the case of a failure to observe the Blocking Statute of 1968.

The transmission of personal data in the context of "Discovery" proceedings, which are necessarily conducted in the context of the Hague Convention, must also be in accordance with the principles of the Law of 6 January 1978, as amended. However, any requests for the transmission of personal data must not lead to the creation of databases intended to respond specifically to American proceedings. Indeed, they must be dealt with as operations with specific purposes, such as human resource management or files on prospective clients.

The Law of 6 January 1978, as amended, applies to "Discovery" proceedings when they involve transfers of personal data; however, it is not necessary to make specific "Discovery" notifications if these data were previously subject to notifications for their principal purposes in which a period of



retention by type of data collected and processed was stated. Finally, technical applications intended to select data in the context of "Discovery" procedures do not have to be subject to notifications.

Nevertheless, the international flow of data must be subject to notifications to the CNIL, which may re-classify such notifications as requests for authorization on the basis of the legal framework of such transfers.

Finally, the Commission notes that companies have an interest in having "data protection officers" appointed to assist them in resolving these types of problems.

This recommendation does not deal with cases connected with investigations conducted by the American federal authorities, such as the Securities and Exchange Commission (SEC) or the Federal Trade Commission (FTC); further, it does not consider issues connected with sanctions by the American authorities concerning the premature destruction of data.

1. Controllership of the Processing

In accordance with Article 5 of the Law on Data Processing and Liberties, the data controller is the legal entity or the individual that decides to transmit the personal data in the context of an American court proceeding and, therefore, the purpose and means of processing.

The data controller may be a French or foreign entity established on French territory or a foreign entity using processing means on French territory, according to Article 5 of the Law on Data Processing and Liberties.

2. Legitimacy of Processing and Purposes

      Concerning the legitimacy of processing:

In addition to observance of the Hague Convention and the Law of 1968, the CNIL considers that the legitimate interest of the data controller is a ground for allowing processing of personal data as long as personal rights are observed.

Indeed, in accordance with Article 7-5 of the Law on Data Processing and Liberties, the transmission of personal data for the legitimate interest of the data controller may occur only if the fundamental interests or rights and liberties of the person concerned are ensured. Thus, the observance of international agreements and applicable national provisions, such as the Hague Convention and the Law of 26 July 1968, is necessary in order to protect the fundamental rights of the person concerned.

Further, in accordance with Article 38 of the Law on Data Processing and Liberties, the person concerned has, in all circumstances, a right to object on the basis of legitimate grounds concerning the transmission of his personal data in the context of a legal proceeding in the United States.

In exceptional cases, the Commission recognizes that there may be situations when the person has the possibility to grant free, informed and specific consent and is himself involved in the litigation procedure. His consent may then constitute a legal basis in the sense of Article 7 of the Law on Data Processing and Liberties. However, proof of such free, informed and specific consent must be provided. Consent



will be considered to have been freely given when it was obtained without pressure or risk of repercussions for the person concerned.

   Concerning processing of sensitive data:

According to Article 8 of the Law on Data Processing and Liberties, processing of sensitive data is prohibited in principle and may not be carried out unless the person concerned has given his specific consent or if it is necessary to establish, safeguard or defend a right in legal proceedings for the data controller. Specific measures, particularly as regards security, must be implemented in order to appropriately protect such information.

As concerns consent for processing of sensitive data, proof of free, specific and informed consent must be provided.

3. Quality and Proportionality of the Data

In accordance with Article 6 of the Law on Data Processing and Liberties, the data collected in the context of a "Discovery" proceeding must be appropriate, relevant and not excessive with regard to the purposes for which processing was implemented.

A serious verification of the proportionality and the quality of the data collected and transmitted is fundamental and must be carried out objectively in order to guarantee that only the information legally authorized is transmitted to the adverse party and to the foreign judge in the framework of the proceeding.  This may be done by implementing a filter using key words defined in partnership with the legal department and specialized advisors.  This filtering operation must take place at the local level, *i.e.*, in the country where the personal data are located.

This balance of interests must take into consideration issues of proportionality and relevance of the data in the context of the proceeding and the consequences for the persons concerned.

The transmission may take place only in observance of legal obligations of secrecy and confidentiality such as professional secrecy and the Law of 26 July 1968.

The CNIL also recommends relying on a trusted third party in evaluating the proportionality of the data processed in the context of the proceedings.

Finally, in numerous cases, the transmission of information does not require the transmission of personal data.  In this regard, the team responsible for finding and transmitting the information must implement procedures to anonymize and pseudonymize (which allow later re-identification) the data in order to avoid transmitting personal data that are unnecessary or ancillary to the proceeding.

If the transmission of data is limited, the anonymization of the data will not be necessary.  On the other hand, if there is a large transmission of data, the anonymization of the data must be considered.

It has occurred, in the course of hearings, that an American authority (in this instance, the Securities and Exchange Commission) had requested a French company to transmit a very large amount of personal data.  After discussion with the SEC, it came out that the SEC did not need the personal data; the French company was able to send the SEC redacted data.



If, however, personal data are necessary, the categories of personal data that may be transmitted must be limited to:

the identity, responsibilities, and contact information of the person concerned;

information that is strictly related to the litigation in progress.

Moreover, the data must be exact and complete.

The American proceeding includes the principle of proportionality.  Indeed, when an American judge issues "*stipulative court orders*", he does so by assessing the quality of the data that are necessary in the context of the proceeding in question.

"*Stipulative court orders*" are orders issued by an American judge, which guarantee that the documents transmitted in the context of the "Discovery" proceeding shall be used according to conditions defined by the parties and retained in a confidential manner.  They may limit the scope of the documents to be disclosed and may be used to limit the collection of personal data, depending on the specific case; specify the conditions connected with the use and transmission of the personal data collected to third parties; and provide terms for security and confidentiality to be observed.

4.  Retention Period

In accordance with Article 6 of the Law on Data Processing and Liberties, data relating to the person in question may be retained only for a period that is relevant to the purpose of processing that justified the procedure.

Therefore, the data used in the context of a "Discovery" proceeding shall be retained for the duration of the proceeding.  It is thus recommended not to create a new limitations period.

5. Recipients of the Data

In accordance with Articles 6 and 34 of the Law on Data Processing and Liberties, the persons within the adverse party who are specifically assigned by the data controller to collect or process the personal data in the context of the "Discovery" proceeding are only the recipients of all or part of the data cited above to the extent that such data are necessary to accomplish their assignments and for the purpose of processing.

6. Informing the Persons Concerned

General, clear and complete information to any person who is potentially concerned, must be provided prior to the implementation of data processing that may be subject to a transfer of his personal data abroad in the context of court procedures.  Moreover, specific information must be provided at the time of a transfer of data outside of the European Union.

Consequently, according to Articles 6 and 32 of the Law of 6 January 1978, the person who is the subject of a search is to be informed by the data controller as soon as the data concerning him are recorded, whether in computerized form or not, in order to allow him to object on legitimate grounds to the processing of his data.



This provision of information, which is conducted in a way that ensures its correct delivery to the person concerned, must specify in particular the entity responsible for processing, the facts of the proceedings and the existing connection that requires the transmission of his personal data, whether or not processing is optional, the consequences for the person in question in the case of a refusal to disclose, the departments that may be assigned to the search, the possible transfer of personal data to a State that is not a member of the European Community as well as the methods for exercising his rights to access, opposition and correction.

Except in exceptional cases as provided in Article 32-III of the Law on Data Processing and Liberties, the persons must also be informed when the data are collected by a third party and indirectly.  In such a case, the persons concerned must be informed by the data controller as soon as circumstances allow, following processing of the data.

An exception to the principle of transparency must however be taken into account in certain exceptional cases.  Indeed, when there is a risk that informing the person concerned will endanger the ability of the party to the proceedings to conduct an investigation or to assemble proof, the provision of information to the person concerned may be conducted after this risk has been averted.

Therefore, when conservatory measures are necessary, particularly in order to prevent the destruction of evidence, the person may be informed after the adoption of these measures.

7. Observance of Rights of Access and Correction

According to Articles 39 and 40 of the Law of 6 January 1978, as amended, the data controller must guarantee any person concerned the right to access to the data concerning him and to request, if the data are inexact, incomplete, ambiguous or out-of-date, the right to correct or delete them.  However, a judge, including a judge deciding emergency interim proceedings, may be requested to prohibit the transmission and/or the destruction of such information in order to preserve the confidentiality of an investigation.

8. Security Measures

According to Articles 34 and 35 of the Law on Data Processing and Liberties, access to personal data must be limited to only the persons who may, in the framework of their responsibilities, have legitimate knowledge with regard to the purpose of processing.

The data controller must therefore take all necessary precautions to preserve the security of these data.

In this regard and in accordance with Recommendation No. 2005-213 of 11 October 2005 relating to the adoption of a recommendation concerning the methods of electronic archiving of personal data in the private sector, the CNIL recommends:

as concerns intermediary archives (data that still have an administrative interest for the departments in question), the access to such data must be limited to a specific department (for example, a litigation department) and, at least, be isolated from archived data by means of a logical separation (management of access rights and authorizations);



as concerns final archiving (exclusively for data presenting a historical, scientific or statistical interest that justifies their not being destroyed), such data must be preserved on a separate medium that is not accessible by production systems, thus authorizing only separate, occasional and specifically justified access by a department specifically authorized to consult this type of archives (for example, the company's head of archiving).

Moreover, in order to guarantee the reliability of the archived data, the CNIL recommends implementing security measures at the time of any change of media for storing the archived data.

Finally, it recommends implementing measures to allow record-keeping of the consultations of the archived data.

Where a service-provider is employed to manage all or part of this process, the data controller must, by contractual means, prevent the service provider from using the data for other purposes, ensure the confidentiality of the data, observe the limited retention period for the data and undertake the destruction or the return of any manual or computerized media containing personal data following the expiration of its service contract.

In all cases, the persons responsible for collecting and processing the data are to be limited in number, specifically trained and subject to a strict obligation of defined contractual confidentiality.

9. Formalities Regarding the Transfer of Personal Data to the United States

The transfer of personal data must take place in accordance with the specific provisions of the Law of 6 January 1978, as amended, concerning the international transfer of data, and in particular with its Articles 68 and 69.  On this point, it must be recalled that the United States does not provide an adequate level of protection in terms of the protection of personal data within the meaning of the European Directive of 24 October 1995.

Two cases must be distinguished:

1.  The case where the personal data are located in France and directly transferred to the United States for purposes of litigation:

As concerns a one-time and non-massive transfer of relevant information, the exception of Article 69-3° may be used to justify the transfer of personal data for purposes of findings, safeguard or defense of a legal right for the data controller.  To the extent that this transfer is covered by the exception set out in the Article noted above, the transfer need not be authorized by the CNIL, but it must, nonetheless, be notified.

When the transfer is massive and recurring, *the transfer of personal data may take place*:

when the recipient of the personal data is an entity established in the United States that adheres to the principles of Safe Harbor;

when the recipient of the personal data has signed standard contractual clauses, as adopted by the European Commission, with the data controller in France;



when the recipient of the personal data has implemented strict internal regulations (or *"Binding Corporate Rules"*) within its group.

2. The case where the personal data have already been transferred to American territory or to a territory that does not offer adequate protection for a legitimate previously authorized purpose (e.g., the centralization of a human resources data base of a French subsidiary of an American group):

*When the data are subject to an onward transfer to a judicial authority*, the data controller must provide adequate protection for the data transmitted to the American authorities and to the adverse party by implementing appropriate limitative tools such as entering into a "stipulative court order", which takes into consideration the protection of personal data.

*When the data are subject to an onward transfer to a party to the proceeding or to a third party*, appropriate contractual clauses must be signed with the party receiving the information, or, if necessary, an undertaking by the party to observe the principles concerning onward transfers such as are provided by the Safe Harbor agreement.

Indeed, the Safe Harbor program provides that in order to disclose information to a third party in the context of an onward transfer, companies are required to apply principles of notification and choice. Organizations that wish to do so may transfer information to a third party acting as an agent if they certify in advance that the third party has adhered to the principles of Safe Harbor or is subject to the provisions of the directive or to another mechanism that attests to the adequate level of protection or if it has concluded a written agreement with the third party by which the third party undertakes to ensure at least the same level of protection as provided by the principles.

According to the provisions of the standard contractual clauses adopted by the European Commission and the principles of Safe Harbor, it is essential that thorough work be carried out by a data controller that is located abroad as concerns the relevance, the legitimacy and the accuracy of the data that must be transferred in the context of the proceedings.

Moreover, the person concerned must be informed of this in a clear manner and must have the possibility to refuse the transfer on the basis of legitimate grounds.

The present deliberation shall be published in the Official Journal of the French Republic.

The Chairman:  A. TÜRK



CNIL - 8 rue Vivienne –CS 30223 - 75083 Paris Cedex 02 France

phone : +33 (0)1 53 73 22 22 - Fax : +33 (0)1 53 73 22 00

RÉPUBLIQUE FRANÇAISE