# EXHIBIT A

**DEFENDANTS' ADDITIONAL RESPONSES TO
PLAINTIFFS' REQUESTS FOR PRODUCTION**

**Request No. 1:** Produce tax returns for years 1997-2016 for your U.S. subsidiaries involved in the manufacture, distribution, or sale of Taxotere.

*Suggested Rephrasing:* *Produce the tax returns from 2009-2016 for sanofi-aventis U.S. LLC and Sanofi US Services Inc.*

**Response:** The tax returns of every U.S. subsidiary for a twenty-year period will not show that the U.S. Defendants are an "alter-ego" of the French Defendants. Rather than "all" U.S. subsidiaries, this request should also be limited to the U.S. *Defendants*, and the timeframe should be limited to the IRS retention period for federal tax purposes. With this understanding in mind, the U.S. Defendants will endeavor to make relevant portions of their Federal tax returns from 2009-2016 available for inspection.

**Request No. 2:** Produce all documents regarding your cash pooling arrangement with U.S. subsidiaries involved in the prescription drug business, including as described in the Sanofi 2015 20-F § C Organization Structure, page 73: "The Sanofi [sic] parent company operates a cash pooling arrangement under which any surplus cash held by subsidiaries is managed centrally."

*Suggested Rephrasing:* *Produce documents sufficient to describe the cash pooling arrangement between Sanofi and the U.S. Defendants, as described in Sanofi 2015 20-F § C Organization Structure, page 73: "The Sanofi [sic] parent company operates a cash pooling arrangement under which any surplus cash held by subsidiaries is managed centrally."*

**Response:** Any cash pooling arrangement or other cash management technique with Sanofi's U.S. subsidiaries does not establish that the U.S. Defendants are the "alter-ego" of the French Defendants (nor is this Request limited or specific to Taxotere®). Moreover, Defendants already provided detailed information responsive to this Request under Plaintiffs' Interrogatory No. 13. As indicated, Sanofi US Services Inc. from time to time

transfers cash surpluses to one of its U.S. affiliates.  This U.S. affiliate pools the cash from its subsidiary into one U.S. bank account, which provides better interest rates given its larger volume.  These surpluses, if any, may eventually be transferred to Sanofi, and held and reported to shareholders.  Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of these arrangements to the extent reasonably practicable.

**Request No. 3:** **Produce all documents regarding the shifting, sharing, commingling, or allocating of costs, fees, profits, awards, or liabilities between or among you and your U.S. subsidiaries involved in the prescription drug business.**

*Suggested Rephrasing:*  *Produce documents sufficient to describe the general sharing of costs or liabilities between Sanofi and the U.S. Defendants.*

**Response:**   Defendants suggest Plaintiffs withdraw this Request, because, as best can be understood, it seeks the same information as Request No. 2.

**Request No. 4:** **Produce all documents regarding the financial relationship between or among you and your U.S. subsidiaries involved in the prescription drug business, including documents showing or indicating inter-company financing or capital funds flow between or among entities.**

*Suggested Rephrasing:*  *Produce documents sufficient to describe Sanofi's use of inter-company financing or cash surplus management between Sanofi and the U.S. Defendants.*

**Response:**   As previously noted in response to Request No. 2, even if Sanofi uses some cash management technique or inter-company financing, this will not establish that the U.S. Defendants are an "alter-ego" of the French Defendants (nor is this Request limited or specific to Taxotere®).  Besides, the French Defendants provided detailed information responsive to this Request under Interrogatory No. 12, explaining that, consistent with typical parent holding company responsibilities, Sanofi manages cash surpluses of its subsidiaries and finances certain activity of its subsidiaries, as necessary.  For example, Sanofi may issue term loans to Aventis Inc.  Such loans are repaid with income derived

from the subsidiaries' business activities, including their cash surpluses. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of such financing to the extent reasonably practicable.

**Request No. 5:** Produce all documents regarding the financing and cash surplus management provided by Sanofi to any of its U.S. subsidiaries involved in the prescription drug business, including as described in Sanofi 2011 20-F § Organization structure, page 82: "For most Group subsidiaries, Sanofi provides financing and centrally manages their cash surpluses."

**Response:** Defendants suggest Plaintiffs withdraw this Request, as it seeks the same information as Request No. 4.

**Request No. 6:** Produce all documents regarding your managing the operational risks of U.S. subsidiaries involved in the prescription drug business, including as described in the Sanofi Aventis 2008 20-F § C Organization Structure, page 66: "the holding company also operates a centralized foreign exchange risk management system, which enters into positions to manage the operational risks of its main subsidiaries."

*<u>Suggested Rephrasing</u>: Produce documents sufficient to describe Sanofi's approach to the management of operational risks, if any, of the U.S. Defendants.*

**Response:** Even if Sanofi manages the operational risks of its U.S. subsidiaries, this information has nothing to do with Plaintiffs' allegations that the U.S. Defendants are the alter-ego of the French Defendants (nor is this Request limited or specific to Taxotere®). In addition, the Request is clearly outside the scope of jurisdictional discovery, as it seeks "all documents" related to all "U.S. subsidiaries." Besides, the French Defendants provided detailed information responsive to this Request under Interrogatory No. 11, explaining that Sanofi's centralized foreign exchange risk management system consists of contracting hedges, when permissible by law, if there is a risk of currency fluctuation between the date a subsidiary agrees to a contract and the date the payment is due to the

3

subsidiary. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of this system to the extent reasonably practicable.

**Request No. 7:** Produce all contracts, agreements, commitments, and arrangements between you and U.S. subsidiaries regarding the sales, marketing, or business of Taxotere.

*Suggested Rephrasing: Produce documents sufficient to reflect contracts or agreements between Sanofi and the U.S. Defendants regarding the sale, marketing, or business of Taxotere in the United States.*

> **Response:** As set forth in its Motion to Dismiss and supporting documents, Sanofi never researched, developed, tested, manufactured, labeled, advertised, marketed, promoted, sold, and/or distributed Taxotere® (docetaxel) in the United States. Sanofi-aventis U.S. LLC is the holder of the approved New Drug Application (NDA) 020-449 for the active ingredient docetaxel, which has the proprietary name Taxotere®. Further, neither Sanofi-Aventis U.S. LLC nor Sanofi United States Services Inc. can bind Sanofi to contracts or other agreements to which it may enter, all of *which is dispositive of Plaintiffs' personal jurisdiction theory*.

**Request No. 8:** Produce all documents that refer to or discuss the ownership or licensing of intellectual property rights, patents, or trademarks related to Taxotere in the United States.

*Suggested Rephrasing: Produce documents sufficient to describe the ownership or licensing of intellectual property rights, patents, or trademarks related to Taxotere® in the United States by the U.S. Defendants.*

> **Response:** Licensing of intellectual property will not establish an alter-ego relationship. Further, Defendants have provided detailed information relevant to this Request in response to Interrogatories No. 27, explaining that there was no agreement between the French Defendants and Sanofi US Services Inc. or sanofi-aventis U.S. LLC related to the

4

licensing of Taxotere®. In 1999, Rhone-Poulenc Rorer S.A. assigned ownership of the Taxotere® patents to Aventis Pharma S.A., via a name change conveyance. Pursuant to this transfer, Aventis Pharma S.A. became the sole owner of the Taxotere® patents. Sanofi-aventis U.S. LLC is the entity authorized to market and sell Taxotere® in the United States. In addition, this Request is duplicative of Plaintiffs' general discovery requests, which seek all documents relating to the application or assignment of Taxotere® patents, and all licensing agreements. *See* Plaintiffs First Set of Requests for Production, Request Nos. 135-137. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of this assignment to the extent reasonably practicable.

**Request No. 9:** Produce all of your communications with a regulatory agency in the United States regarding Taxotere.

**Response:** Defendants suggest that Plaintiffs withdraw this Request, as it has nothing to do with personal jurisdiction, namely, whether the U.S. Defendants are the alter-ego of the French Defendants, and will not establish that the French Defendants have any Taxotere®-related contacts with the forum state as required for specific jurisdiction. As Defendants indicated in responding to Interrogatory Nos. 31 and 33, sanofi-aventis U.S. LLC is the entity responsible for communicating information related to Taxotere to the FDA, the documents related to which will be produced in general discovery. For example, Plaintiffs' general discovery requests seek Defendants' entire "regulatory file relating to Taxotere," and "all documents" evidencing "communications between you and FDA relating to Taxotere." *See* Plaintiffs' First Set of Requests for Production, Request Nos. 2-3.

**Request No. 10:** Produce all operational policies, international or otherwise, including standard operating procedures or other policy documents written or used by you, that have been used or followed by U.S. subsidiaries involved in the prescription drug business, in whole or in part, including policies regarding:

5

a. labelling, including global labelling committee, policies regarding changes in labels, and instructions for use;

b. studies, including study selection and management, documentation, investigator agreements, investigator sponsored studies, structure and content of clinical study reports, or other documents related to handling of studies;

c. pharmacovigilance, including policies on detecting or processing of safety signals, medical affairs handling of adverse events, handling of spontaneous reports, and reporting required between entities to comply with FDA's or Foreign Regulator Body's regulatory agency requirements;

d. medical publications, including information related to global publication clearance or procedures for publications of clinical studies;

e. regulatory, including any approval of products, compilation, or submission of information to the FDA or other regulatory bodies; and

f. corporate compliance or governance policies.

**Response:** Defendants suggest Plaintiffs' withdraw this Request, as it has no bearing on personal jurisdiction over the French Defendants. General "policies" or "standard operating procedures" relating to such categories as "medical publications" or "corporate compliance," will not establish that the U.S. Defendants are the alter-ego of the French Defendants. In addition, documents related to this request will likely be produced in general discovery. For example, Plaintiffs' First Set of Requests seek "all documents" reflecting "standard operating procedures, policies, and guidance relating to" labelling, adverse event collection, communication with healthcare providers, and corporate compliance. *See, e.g.*, Plaintiffs' First Set of Requests for Production, Request Nos. 153-159. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of such policies regarding a, b, and e, to the extent reasonably practicable.

**Request No. 11:** Produce all communications between you and U.S. subsidiaries regarding adverse event report related to Taxotere.

6

> **Response:** Defendants suggest that Plaintiffs withdraw this Request, as information regarding *any* adverse event worldwide will not establish that the U.S. Defendants are the "alter-ego" of the French Defendants. As Defendants indicated in responding to Interrogatory Nos. 31 and 33, sanofi-aventis U.S. LLC communicates with the FDA about Taxotere®, including reporting adverse events consistent with applicable regulations. Otherwise, more generally, documents related to this Request will be produced in general discovery. For example, Plaintiffs' general discovery requests seek "all internal communications" relating to adverse event report submissions for Taxotere®. *See, e.g.*, Plaintiffs' First Set of Requests for Production, Request No. 19.

**Request No. 12:** Produce your communications regarding the marketing of Taxotere in the United States.

> **Response:** As indicated on multiple occasions, the French Defendants have not engaged in the research and development, testing, manufacturing, labeling, advertising, marketing, promoting, selling, or distributing of Taxotere® anywhere in the United States. "Communications" regarding said marketing are far too broad to be probative of this more important point. Otherwise, more generally, documents related to this Request will be produced in general discovery.

**Request No. 13:** Produce all documents regarding your oversight of research and development activities in the United States, including as described in the Sanofi Aventis 2008 20-F § C. Organization Structure, page 66: "within the Group, the holding company oversees research and development activities, by defining strategic priorities, coordinating work, and taking out the industrial property rights under its own name and at its own expense."

***Suggested Rephrasing:*** *Produce documents sufficient to identify Sanofi's oversight of the U.S. Defendants' Taxotere®-related research and development activities in the United States.*

> **Response:** Defendants provided Plaintiffs with information relevant to this request in response to Interrogatory No. 20, explaining that Sanofi observes developments amongst

7

its various subsidiaries related to its subsidiaries' research and development activities, workflow, strategic priorities, and industrial property rights. Sanofi did not research or develop Taxotere®, or take out industrial property rights under its own name for Taxotere®. Historically, as an indirect parent company, Sanofi helped define general business strategies related to Taxotere® with its various subsidiaries, including its subsidiaries in the United States. The local subsidiary was responsible for the actual implementation of any such general business strategy.

**Request No. 14:** Produce all documents regarding the implementation of One Sanofi, One HR system in U.S. subsidiaries involved in the prescription drug business, including as described in the Sanofi 2015 Corporate Responsibility Report § A Single HR System Solution, page 65: "the new One Sanofi, One HR [sic] system is being phased in gradually and its related harmonized processes will ultimately support every manager and employee to better drive individual development, career management and business performance."

***Suggested Rephrasing:*** *Produce documents sufficient to describe the implementation of One Sanofi, One HR system as it relates to the U.S. Defendants.*

**Response:** A global HR policy is entirely irrelevant to showing that the U.S. Defendants are the "alter-ego" of the French Defendants. Nor is it relevant to Taxotere®-related contact with the forum states by Defendants, as necessary to establish specific personal jurisdiction. *See, e.g.*, *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990). Nevertheless, the U.S. Defendants will produce information sufficient to describe the "One Sanofi, One HR" policies, as they relate to the U.S. Defendants.

**Request No. 15:** Produce all documents regarding your attempt to offer superior compensation to employees of U.S. subsidiaries involved in the prescription drug business, including as described in the 2004 Sanofi Aventis Sustainable Development Report, page 38: "The Group aims to offer all employees in all subsidiaries compensation that is superior to the average salary for the pharmaceutical market."

**Response:** Defendants suggest that Plaintiffs withdraw this Request, as the compensation programs of U.S. subsidiaries has nothing to do with whether or not the U.S. Defendants

8

are the "alter-ego" of the French Defendants. *See, e.g.*, *Dalton*, 897 F.2d at 1363. Nor, again, will this information establish Taxotere®-related contact with the forum states by Defendants, as required toe stablish specific personal jurisdiction.