**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                    **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                              **SECTION "N" (5)**

THIS DOCUMENT RELATES TO
ALL CASES

**MEMORANDUM IN OPPOSITION TO SANOFI'S MOTION**
**FOR DISCLOSURE OF NON-PARTY ENTITIES OR PERSONS**

The matter before the Court is nothing more than a fishing expedition and an apparent attempt to distract from the merits of Plaintiffs' claims. Defendant sanofi-aventis U.S. LLC ("Sanofi") admits that it has no knowledge whatsoever that any counsel's duties of independence, undivided loyalty, candor, and confidentiality have been compromised in any way. Sanofi also acknowledges it has no evidence of any pay-for-control, pay-for-diagnosis, or kickback-from-success arrangements in this litigation which would be unethical or even illegal. Yet Sanofi demands that counsel and their firms disclose *any* interest, including financial interests, that could be substantially affected by the outcome of this proceeding. Under Sanofi's ill-defined proposal, this could include all sources of capital, such as a bank loan or line of credit, and attorneys self-funding a case under a contingent-fee arrangement could be required to disclose this fact by indicating they personally have such a stake in this proceeding.  Sanofi's overbroad request, tied to no claim or defense, is disproportionate, without basis, and should be denied.

## **INTRODUCTION**

Sanofi rests its request on a story of corrupt doctors and lawyers from litigations past. To hear Sanofi tell it, these corrupt actors wrested control of other lawsuits in order to take advantage of plaintiffs for financial gain. These examples—Sanofi's main "authority"—are taken from defense bar op-eds and proposals from defense-bar associations. But in truth, Sanofi's proposal is an untoward, irresponsible attempt to paint all Plaintiffs' counsel as unethical.

To date, the Advisory Committee on Civil Rules of Procedure has declined to adopt any proposal seeking to expand, through rulemaking, Federal Rule of Civil Procedure 26's initial disclosure obligations,[1] and it has warned against additional disclosures for judicial disqualifications beyond those already contemplated by the Federal Rules because "more detailed disclosure . . . place[s] a burden on the parties and on courts." Fed. R. Civ. P. 7.1 Advisory Committee Notes (2002). As such, the Court should not give Sanofi's proposal its imprimatur—particularly when Sanofi presents no concrete facts related to wrongdoing, and the litigation-specific facts it does recite are slim, incomplete, and unrelated to its extraordinary request for disclosure.[2]

Especially problematic, granting such a request could raise tensions among the Bar and between Plaintiffs and their counsel because adopting such a disclosure requirement based on Sanofi's speculation would unfairly tarnish all Plaintiffs' counsel in this litigation as being under suspicion for engaging in practices that Sanofi suggests run counter to ethics rules—including,

---

[1] Dec. 2, 2014 Report of Advisory Committee on Civil Rules, at 3-4, available at https://perma.cc/T59D-GTZK (last accessed July 25, 2017).

[2] It also bears mentioning that this Court has ordered that discovery on all MDL Plaintiffs, other than Plaintiffs selected for trial, shall be limited to the Court-approved Plaintiff Fact Sheets (PFSs). Defendants chose not to include such a disclosure request in their proposed PFS and, therefore, should not now be allowed to expand the already comprehensive PFS.

according to Sanofi, the relinquishing of control of client cases to others for personal financial gain.

This misalignment among facts presented, story told, and action requested belie Sanofi's true goal—to cast doubt on and detract from the strength of Plaintiffs' claims and the seriousness of their injuries, and to gain information that will provide Sanofi with an unfair advantage moving forward. Because Sanofi's motion purports to solve a nonexistent corruption problem with an overbroad and irrelevant discovery request, the Court should reject it.

## **ARGUMENT**

Seeking improperly to add to this Court's already comprehensive Plaintiff Fact Sheet, Sanofi requests that Plaintiffs (and their attorneys) be ordered to identify:

> [A]ny persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Although not couched as a discovery request, that is precisely what Sanofi's request is—a motion to compel disclosure. By its terms, Sanofi's requested disclosure is practically boundless and sweeps up any form of capital used to finance a lawsuit, including a bank loan or line of credit, and also any consumer of pharmaceutical products who relies upon the truthfulness of pharmaceutical corporation representations to consumers, their doctors, and the FDA. This is evident because the term "financial interest" is not defined by Sanofi and does not have an obvious common meaning or limiting principle.[3] Attorneys who fund cases out-of-pocket

---

[3] In support of its sweeping language, Sanofi cites the U.S. District Court for the Northern District of California's Civil Local Rule 3-15. This local rule, however, defines "financial interest" as it is defined in 28 U.S.C. § 455, which is the judicial recusal statute and does not cover "litigation funders." *See* U.S. District Court Website for Northern District of California, Notice Regarding Civil LR 3-15, *available at* http://www.cand.uscourts.gov/news/210 (last visited July 25, 2017) (last visited July 24, 2017). Moreover, Local Rule 3-15 was adopted only after a notice-and-comment period—one that received the

pursuant to a contingent-fee arrangement would need to self-identify as having an interest in the litigation.

Rather than serve a discovery request for such information, Sanofi has filed a motion. But it cannot evade the requirements applicable under the federal rules. It still must show entitlement to this discovery under the familiar standards set forth by Federal Rules of Civil Procedure Rule 26. *See, e.g.*, *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 728 (N.D. Ill. 2014); *Rhew v. Norfolk S. Ry. Co.*, No. 2:12–CV–526, 2013 WL 5308803, at *3 (N.D. Ind. Sept. 18, 2013); *Kaplan v. S.A.C. Capital Advisors, L.P*, No. 12–CV–9350 (VM) (KNF), 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015); *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wa. Sept. 8, 2016). Specifically, under Rule 26(b)(1), discovery requests must be both "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, "the party seeking disclosure must make a showing of the requested information's relevance to its claims or defenses." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701, 2013 WL 1896934, at *2 (S.D.N.Y. May 7, 2013); *see also Mirror Worlds Technologies, LLC v. Apple Inc*., 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) ("The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.").

## I.  Sanofi Fails to Establish Its Entitlement to the Discovery It Seeks From All Plaintiffs, Plaintiffs' Counsel and Their Firms.

Contrary to Sanofi's suggestion, courts do not routinely require the disclosure of financial or other interests of non-parties nor is there a growing trend towards disclosure.  Rather, courts

---

barest of attention. *See* U.S. District Court for the Northern District of California Civil Local Rule 3-15, public comments *available at* https://www.cand.uscourts.gov/news/23 (last visited July 25, 2017).

have identified specific situations in which limited disclosure is relevant and proper—but only upon a proper showing. Indeed, none of the cases or rules cited by Sanofi stand for the proposition that is presented to this Court—namely, that a blanket and far-reaching disclosure is warranted simply because a defendant speculates without a scintilla of support that foul play or a conflict of interest could theoretically exist.[4]

### A.      Sanofi Fails to Submit Credible Evidence of Foul Play.

Courts have allowed discovery after evidence of foul play but have limited discovery to only those involved in wrongdoing.  *See In re Boston Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 1922755, at *1 (S.D.W. Va. May 14, 2014) (granting discovery into MedStar, a medical receivables factoring entity, after a medical consultant learned that MedStar engaged in a scheme to fraudulently inflate the value of transvaginal mesh cases); Lester Brickman, *An Analysis of the Financial Impact of S. 852: The Fairness in Asbestos Injury Resolution Act of 2005*, 27 Cardozo L. Rev. 991, 1026 (2005) (describing Judge Jack's decision to grant discovery of screening principals and B-readers in the silica MDL where "thousands of plaintiffs" claimed to have both asbestosis and silicosis—a "clinical rarity").

Here, Sanofi's request for disclosure is neither limited in scope nor supported by credible evidence of wrongdoing. Instead, Sanofi relies on a handful of litigation-specific facts tied to a parade of horribles from past litigations.  Sanofi buttresses this "evidence" with a biased report on TV advertising authored by Rustin Silverstein, a member of the defense bar, and other

---

[4] As if evidence of guilt, Sanofi repeatedly comments on Plaintiffs' refusal to disclose whether third-parties maintain an interest in this litigation.  (Defs. Memo, Doc. 559-1 at 1 ("Their silence only further warrants this disclosure"); *Id.* At 13 (Plaintiffs' counsel refusal to make straightforward disclosures, foreclose impropriety, and proceed in the litigation with transparency is *curious*". (emphasis added)).) Plaintiffs "decision" to remain silent is just that: silence. Plaintiffs are under no obligation to share such information nor does Plaintiffs' refusal to disclose "only further warrant[ ] this disclosure." *Id.* at 1. Quite the opposite, Plaintiffs sensibly refuse to bless Sanofi's fishing expedition with any disclosure, and they *must* resist because of the prejudice that disclosure would cause. *See infra* Sec. II.

published defense advocacy pieces. None of this "evidence," whether taken together or separately, is sufficient to render Sanofi's request relevant to this litigation.[5]

> ### 1.   *Sanofi Exaggerates the Content of an Auto-Generated Email from Persist Communications*

The crux of Sanofi's argument rests on an auto-generated email inadvertently sent to defense counsel by Persist Communications that, according to Sanofi, raises "serious questions about the involvement of third parties." (Defs. Memo, Doc. 559-1 at 3; Ex. A, Doc 559-2 at 1.) Persist Communications is a company that provides IT services, including cloud and server administration, automated lead communication software, and marketing services.[6] In the email, Persist Communications offered client leads in exchange for up-front, predetermined fees. Under this arrangement, an attorney pays a fee for a possible client lead without any further allegiance to Persist. Nothing in this email suggests a continued relationship following the transaction. Sanofi focuses on the phrase "co-counsel has to get diagnosis. If negative we will replace" as implicating a pay-for-diagnosis scheme.  To the contrary, the e-mail indicates that Persist Communications seeks to make money by referring clients to lawyers, who would pay Persist different amounts depending on the level of investigation performed. Otherwise, and contrary to Sanofi's suggestion, Persist Communications does not "solicit" client leads by calling, email, and leaving voicemails as suggested by Defendants.[7] (Defs. Memo, Doc. 559-1 at 3 n. 3).

---

[5] Plaintiffs' discussion of these entities is based on public information.

[6] http://forpersist.com/ (last visited July 24, 2017).

[7] *Id.* ("Persist Communications, Inc. does not perform cold calls. All leads generated and contacted by Persist Communications, Inc. are obtained though internet, social media or mass media.") (all-caps removed).

### 2. Sanofi Inappropriately Relies on Biased Reports and Articles Authored by Members or Advocates of the Defense Bar

In addition, Sanofi also attaches a report by Rustin Silverstein, President of Ante X LLC. This report purports to provide an independent, non-biased analysis of TV advertising of ongoing mass tort litigation. (Defs. Memo, Doc. 559-1 at 5 n. 9; Ex. B, Defs. Memo, Doc. 559-3.) In reality, Mr. Silverstein and his company work with defense counsel "to argue that mass tort advertising—not product defects—drove adverse event reporting and lawsuit filings."[8] X Ante helps "medical device manufacturer[s] subject to sizeable litigation" by "monitor[ing] advertising to forecast litigation reserves for future litigation and settlement negotiations."[9]

Plaintiffs have notified Sanofi's counsel of their intent to notice the deposition of Mr. Silverstein to explore the basis for the opinions expressed in his report, but initial research indicates that Mr. Silverstein harbors an extreme bias against plaintiffs' attorneys—particular those that advertise. In a paper presented to the Corporate College of the International Association of Defense Counsel, Mr. Silverstein analogized advertising by plaintiffs' firms to robbing banks and highlighted that his services can be used to "combat advertising by plaintiff's firms."[10] In another paper presented to the 2016 Annual Meeting International Association of Defense Counsel, Mr. Silverstein partnered with an attorney at Irwin Fritchie Urquhart & Moore LLC—a law firm representing Sanofi in this litigation. In this paper, these attorneys provide tips "as defense attorneys" on using plaintiffs' attorney advertising to provide "alternative explanations" for product complaints, poor product performance, product defect, etc.[11] In other

---

[8] http://www.x-ante.com/#xante (last visited July 13, 2017).

[9] http://www.x-ante.com/#xante (last visited July 13, 2017).

[10] Silverstein, Social Media, Advertising, & Litigation Financing, IADC Corporate Counsel College, *available at* www.iadclaw.org/assets/1/7/5.6-_Mass_Tort_Advertising.pdf. (last visited July 24, 2017)

[11] Myers & Silverstein, Legal Jiu Jitsu: How to Turn the Tables on the Plaintiff Bar's Advertising Juggernaut, 2016 IADC Annual Meeting, *available at*

words, misdirection. Mr. Silverstein's strong and overt ties to the defense bar and hostility towards plaintiff's attorney advertising renders his opinions suspect at best.

What's more, Sanofi has failed even to disclose Mr. Silverstein's connections with Irwin Fritchie—the very firm that serves as its liaison counsel in this litigation. Sanofi has also failed to disclose that this motion is predicated on the "alternative explanations" approach Mr. Silverstein and Irwin Fritchie have authored and taught to defense counsel in multiple forums. Not only are these concerted actions deeply concerning given the duty of candor, they are also hypocritical given Sanofi's insistence on full disclosure of "any interest" from the Plaintiffs' bar.

Similarly, Sanofi relies heavily on a Law360 article by Tripp Haston, former president of the International Association of Defense Counsel, that summarizes many of the defense bar positions on third-party financing, including those discussed in this brief. (Defs. Memo, Doc. 559-1 at 13-15 n. 37-41, 43-44.) Articles authored by defense bar advocates, much like Mr. Silverstein's report, are not indicative of a "trend" in legal practice.  Likewise, reference to defense bar commentary on Rule 26 is not evidence that "disclosure of third party funding is also gaining favor as a default rule nationally."[12] (Defs. Memo, Doc. 559-1 at 16.) Nor are such

---

www.irwinllc.com/publications/Stephen_Myers_Rustin_Silverstein_-
_Legal_Jiu_Jitsu_Attorney_Advertising.pdf (last visited July 24, 2017); Myers & Silverstein, The Impact of Plaintiffs' Lawyer Advertising on Mass Tort Litigation, 2015 Trial Attorneys of America Annual Meeting, *available at*
http://trialattorneysofamerica.com/documents/TheImpactOfPlaintiffsLawyerAdvertisingOnMassTortLitigation. PDF (last visited July 24, 2017)

[12] Sanofi claims that the Advisory Committee on Civil Rules "previously indicated its intent to monitor third-party litigation funding." (Defs. Memo, Doc. 559-1 at 16 & n.52.) In support, Sanofi references Exhibit E to its Motion (Doc. 559-6), which is a letter to the Secretary of the Committee from advocates of the defense requesting an amendment to Rule 26(a)(1)(A) requiring automatic disclosure of third-party litigation funding.  This letter does not constitute "proof" that Advisory Committee intended to monitor third-party funding. Sanofi also cites to the passage of the Fairness in Class Action Litigation Act of 2017 in the United States House of Representatives.  (Defs. Memo, Doc. 559-1 at 16.) As Sanofi states, the bill is now in the Senate, meaning it is not law.

statements even accurate.  Indeed, the Advisory Committee on Civil Rules was asked by the U.S. Chamber of Commerce to amend Rule 26(a)(1)(A)(iv) in 2014 to require automatic initial disclosure of third-party litigation financing agreements—a proposal that was novel, not any sort of soon-to-be default rule—but expressly declined to do so.

Regardless, Mr. Silverstein's report or the articles authored by defense advocates fail to suggest that anything untoward or extraordinary is occurring with advertising concerning Taxotere lawsuits.  Mr. Silverstein's report states that Xarelto's and Praxada's advertisements dwarf ad spending and placement for Taxotere.  In fact, according to the report, there have been approximately four times the number of advertisements and ad spending on Xarelto than on Taxotere. (Ex. B, Defs. Memo, Doc. 559-3 at 3-4.)  Further, Sanofi's contention that these advertising companies have a financial stake or control in the litigation finds no support in the mere existence of television advertising. To call this a thin read on which to base such a dubious proposal would be generous.

> ### 3. Sanofi's Speculative References to Other Third-Parties that "May" be Involved in this Litigation Are Unpersuasive

Contrary to Sanofi's contentions, Plaintiffs and their counsel—and no one else—are controlling this litigation. For instance, Sanofi implies that Record Reform, a medical record review company, may offer improper medical diagnosis by selectively quoting from Record Reform's website without describing its services. (Defs. Memo, Doc. 559-1 at 4 n. 6.) According to its website, Record Reform will review "medical records, bills and expenses," create chronologies, and organize and review digital files "for $35 per hour."[13] Record Reform also purchases medical liens "from physicians, facilities and hospitals nationwide," rather than from

---

[13] *See* https://www.medquestltd.com/record-reform/pharmaceutical-mass-tort/ (accessed July 13, 2017); https://www.medquestltd.com/record-reform/demand-letters/ (accessed July 13, 2017).

patients.[14] None of these services suggest continued involvement in a given case, much less involvement that constitutes an ongoing financial stake.

Sanofi also points to Knightline Legal as a source of "non-law firm money" that, according to Mr. Silverstein's report, accounted for almost 10% of dollars spent on Taxotere (Defs. Memo, Doc. 559-1 at 5 n. 8.) While Knightline Legal is not a law firm or referral service, it is "an advertising group that represents lawyers jointly advertising their services"—in essence, a network of attorneys that participate in group advertising.[15] Knightline Legal offers advertising solely on a cost per lead basis,[16] and as such, Knightline Legal retains no stake in the litigation following lead generation.

In addition, Sanofi mentions Law Street Capital, a company that provides what its website describes as *nonrecourse* loans to plaintiffs. Sanofi's selective quoting from Law Street Capital's website fails to acknowledge this point: "If for any reason your cases does [*sic*] not settle, there is no obligation for repayment."[17] Arguably (though perhaps unclear) the U.S. Chamber of Commerce's most recent proposal to amend Rule 26—which appears to be the same as the proposal the Advisory Committee declined to consider in 2014—could be read to exclude such contingent-fee arrangements from its scope. (Ex. E, Defs. Memo, Doc. 559-6 at 34) ("other than an attorney permitted to charge a contingent fee representing a party"). Regardless of the breadth of the Chamber's proposal, Sanofi's proposal may be even broader, for it does not

---

[14] https://www.medquestltd.com/medical-liens-administration/ (accessed July 13, 2017)

[15] http://www.knightlinelegal.com/disclaimer/ (accessed July 13, 2017)

[16] LinkedIn Profile of Knightline Legal, *available at* https://www.linkedin.com/company-beta/3885073/ (last visited July 24, 2017).

[17]  Available  at  http://lawstreetcapital.com/2016/09/taxotere-hair-loss-plaintiffs-benefit-lawsuit-funding/ (accessed July 13, 2017).

include this language. Apart from being irrelevant, then, this information is not proportional to any need in this case.

In sum, none of the "evidence" cited by Sanofi is indicative of foul-play nor is the information sought by Sanofi limited to any of the particular entities that Sanofi loosely implies are engaged in wrongdoing.

**B.      Sanofi's Claim that Disclosure Is Necessary to Ascertain Conflicts of Interest Is Based Entirely on Speculation**

Sanofi asserts that disclosure is also necessary to eliminate possible conflicts of interest. In the context of class actions, courts have permitted discovery of interested non-parties to determine intra-class conflicts and the adequacy of class counsel under Rule 23 of the Federal Rules of Civil Procedure.  Even in these cases, however, defendants are required to provide a nonspeculative basis for raising its concerns.  *See Kaplan v. S.A.C. Capital Advisors, L.P*, No. 12–CV–9350 (VM) (KNF), 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) ("[T]he defendants have provided no non-speculative basis for raising such concerns." (internal quotation omitted)); *see also Gbarabe v. Chevron Corp*., No. 14-cv-00173, 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5, 2016).  Here, Sanofi relies only on speculation.

Sanofi also references Rule 7.1 of the Federal Rules of Civil Procedure and a local rule from the Northern District of California.  Neither rule supports the additional disclosures Sanofi seeks. For one thing, Rule 7.1 requires financial disclosures for nongovernmental corporate parties; it has no application, however, to private individuals. *See* Fed. R. Civ. P. 7.1. What's more, the rule was designed "to reach a majority of the circumstances that are likely to call for disqualification on the basis of financial information that a judge may not know or recollect." Fed. R. Civ. P. 7.1 Advisory Committee Notes (2002). The drafters have already determined that disclosures broader than those listed in Rule 7.1 would be unhelpful, as "more detailed disclosure

11

. . . place[s] a burden on the parties and on courts," and creates risks of both "unnecessary disqualifications" and overlooked salient details. *Id*.

Quite obviously, the disclosures Sanofi seeks would place a burden on the parties and the Court. But neither are such disclosures merited, for surely it is unimaginable that the Court has any interest in any attorney advertising firm or litigation financing group. As Professor W. Bradley Wendell of Cornell University Law School has explained: "there is no need to impose a rule requiring disclosure of litigation financing on the off chance that a judge may have a financial interest in a litigation financing firm, because Canon 3(C)(3)(c)(i) [of the U.S. Judicial Code] defines 'financial interest' to exclude passive ownership of shares of a mutual fund or similar common investment fund."[18] Moreover, "[i]t seems unlikely that judges would have investments in anything other than a common investment fund, given what would otherwise be the hassle of complying with Canon 3(C)." *Id*.

Finally, although Sanofi's proposal appears to copy the language of part of the Northern District of California's Local Rule 3-15—specifically, civil local rule 3-15(a)(1)—Sanofi's proposal does not adopt any other aspect of that rule, including local rule's definition of "financial interests," which is based on the recusal statute.[19] Sanofi also does not define this term. This appears to be a calculated decision, because much of Sanofi's discussion of the interests it wants disclosed is broader than what is covered by this local rule. (Defs. Mem. At 5 n. 10 ("business interest").

Critically, the Northern District of California's local rule does not cover "litigation funders." This is evident because in June 2016 the Northern District of California proposed to

---

[18] Plfs. Ex. I, July 21, 2016 Letter of Professor Wendell to Clerk of Court, U.S. District Court, Northern District of California.

[19] *See supra* n. 4.

amend the local rule to include such language but the proposal was rejected after notice and comment, including from Professor Wendell. *See* U.S. District Court Website, Northern District California, Notice Regarding Civil LR 3-15.[20] Instead, the district revised its standing order to require certain disclosures in class actions only. *Id*.

Of course, even though Sanofi does not define "financial interests" or other terms, there is no mystery that Sanofi desires the broadest form of disclosure imaginable, including disclosure of litigation funders that are clearly not covered by the local rule from which is has drawn inspiration. This is evident because Sanofi singles out co-counsel arrangements and referral agreements as potentially problematic; these do not appear to be covered by the Northern District of California's local rule and its narrow definition of "financial interests." Sanofi's proposal, then, read literally and without the benefit of any limiting definition of "financial interests," could require the disclosure of all sources of capital, even bank lines of credit for contingent-fee arrangements. In that event, potentially every single attorney and firm in the MDL would have to disclose financing arrangements or declare themselves an interested party if self-financing.

Ultimately, however, the Northern District's local rule is an outlier; no other district has adopted has adopted such a rule. This may be because the rule is too experimental or the Advisory Committee on Civil Rules itself has not acted on similar proposals. That the Northern District of California adopted this disclosure requirement by local rule also suggests that it should not be adopted by a single court as a discovery or pre-trial order. Local rules must be approved by a majority of a court's district judges and are subject to public notice and an opportunity for comment, *see* 28 U.S.C. § 2071(a)-(b); Fed. R. Civ. P. 83(a), a process that this District has not undergone.

---

[20] Available at http://www.cand.uscourts.gov/news/210.

Given these circumstances, it would be inappropriate to adopt a special disclosure rule for this multidistrict litigation only, not least because Sanofi's expansive disclosure rule is being proposed in the heat of litigation and the reasons given for disclosure are based entirely on one party's unfounded speculation that nefarious financing and unethical conduct is afoot.

### C.    Sanofi Cannot Show Any Other Basis For These Disclosures, Which Are Entirely Disproportionate To Any Needs of This Case

Sanofi mentions two other possible justifications that are even more tenuous.  Sanofi suggests, with no explanation, that the email from Persist Communications relates to statutes of limitations. (Defs. Memo, Doc. 559-1 at 15 n. 45.) Although the Persist email mentions a period of "6 months," nothing about Persist's offer implicates any calculation of a limitations period. In any event, Persist Communications' opinions on this matter are irrelevant. Further, there is no basis for concerns regarding fee-splitting arrangements and champerty because Sanofi has presented no hint of an underlying problem in the first instance.  (Defs. Memo, Doc. 559-1 at 17.)

Sanofi's argument that responses would not be burdensome is also unavailing.  Setting aside that Sanofi's request is not "relevant to any party's claim or defense," as explained above, Federal Rule of Civil Procedure 26(b)(1) also requires that discovery be "proportional to the needs of the case," accounting for, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." The Advisory Committee has already counseled against adopting broader disclosures, such as for judicial disqualification. And as discussed above, Sanofi's proposal, read against the backdrop of memorandum, seemingly would require the disclosure of all sources of capital, even bank lines of credit for contingent-fee arrangements. In that event, potentially every single attorney and firm in the MDL would have to disclose financing arrangements or declare themselves an interested party if self-financing.

On the issue of burden, Sanofi contends that Marc Grossman has already satisfied these disclosure requirements, and that this shows that all other attorneys can too. Sanofi's description of this correspondence as reflecting counsel's willingness to comply with its disclosure request is baffling. The correspondence Sanofi attaches addresses a potential motion for sanctions under Federal Rule of Civil Procedure 11. Nowhere does this correspondence suggest any effort to comply with Sanofi's request for disclosure. The letters instead describe inappropriate and unsupported statements by Sanofi about Mr. Grossman, which Sanofi made in its prior motion seeking disclosure. There is another letter not disclosed by Sanofi, in which Mr. Grossman, through counsel, notes Sanofi's admission that it "do[es] not know if [financial] interests exist[ ]."[21] Mr. Grossman then states that Sanofi has no objectively reasonable basis to be making such assertions in court filings.[22]

That remains the case. Sanofi still has no basis to say that any inappropriate financial interest exists. (Defs. Memo, Doc. 559-1 at 13 (stating Sanofi "does not purport to know—*that is why it has filed this Motion*."). Because Sanofi has no objectively reasonable basis for its unseemly suggestions of impropriety, the possibility of requests for sanctions cannot be discounted.

Apart from the irrelevancy of this information, imposing such a broad disclosure requirement on all counsel and their firms is disproportionate to any legitimate need of the case. As discussed, because the proposed disclosure rule could conceivably cover contingent-fee arrangements, depending on how financial interests is understood, it could effectively require all counsel to respond, whether they have a bank loan or line of credit or are self-funding.

---

[21] Plfs. Ex. II at 1 (quoting May 31, 2017 Letter of Mr. Ratliff, at 2, Ex. C, Defs. Memo, Doc. 559-3, at 3).

[22] *Id.*

Swamping the Court with such disclosures would waste scarce judicial and party resources. It is also highly likely to result in satellite litigation over the completeness of any disclosures, not least because Sanofi's proposal is subject to interpretation and uses undefined terms.

## II.    Sanofi's Requests and Supporting Arguments are Prejudicial to Plaintiffs.

Not only is Sanofi's discovery request irrelevant to any claim or defense, but the information requested would be extremely prejudicial to Plaintiffs because learning of the financial resources behind each case would provide Sanofi with unfair tactical advantages. For example, if Sanofi learns that a small firm or solo practitioner is self-funding litigation, that information would inform Sanofi's defensive strategy. It may also inform any settlement offers Sanofi makes. Without sensitive information about Plaintiff's counsel's financial wherewithal, Sanofi would certainly approach a Plaintiff's case differently. Or, put another way, without this sensitive information, Sanofi would approach a Plaintiff's case as any defendant would, because defendants simply are not entitled to financial disclosures from Plaintiffs' counsel in personal injury cases.

Also worrisome, if the Court were to bless Sanofi's proposal, it would turn the presumption of good-faith on its head. Courts do not presume that counsel is ignoring ethics rules or giving up control of litigation for personal financial gain. Nor do courts tolerate "unfounded accusations of impropriety" or "attribut[ing] bad motives or improper conduct to other counsel . . . unless such matters are legitimately at issue in the proceeding." *Pigford v. Veneman*, 215 F.R.D. 2, 5 (D.D.C. 2003) (quoting D.C. Bar Voluntary Standards for Civility in Professional Conduct); *see also Eagan v. CSX Transp., Inc.*, 271 F. Supp. 2d 993, 1000- 01 (E.D. Mich. 2003) (attorneys "will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety"

16

(quoting Civility Principles of the United States District Court for the Eastern District of Michigan, Administrative Order No. 96-AO-024, Attorneys' Responsibilities to Other Counsel)). But a rule of disclosure that effectively paints Plaintiffs' attorneys as suspect and requires them to disclose in order to prove ethical regularity would send the wrong message to the Bar and the public. For one, it would further harm perceptions of the judiciary and attorneys generally, and plaintiffs' attorneys in particular. For another, such an order would create tensions among Plaintiffs' counsel and their clients, as it would all but suggest that their counsel are the ones with the financial stakes in litigation. Of course, Plaintiffs' counsel already must abide by professional responsibility rules, including those regulating retainer agreements and contractual relationships with clients. But to suggest that the lawyers are the real stakeholders and adversaries here—not the many women harmed by Sanofi—and thus the lawyers must disclose because they cannot be trusted—is deeply prejudicial to Plaintiffs and their counsel, not to mention the sound administration of justice.

Although Sanofi attempts to soften the suggestions nascent in this request, Sanofi's request is an accusation of unethical conduct, baseless though it may be. (*See* Defs. Memo, Doc. 559-1 at 9 ("*any* third-party interests . . . may affect the integrity of these proceedings . . ."), 10 (agreements could be "germane to the Court's appointment of leadership positions in this MDL"). In the end, however, Sanofi can point to no litigation financing arrangement, much less one that would violate ethics rules, yield non-client control, or run afoul of any attorney advertising laws. Plaintiffs alone control this litigation.

In fact, attorneys are prohibited from allowing outside funding to cloud their judgment or to subsume their clients' interest. *Evans v. Jeff D.*, 475 U.S. 717, 728 n.14 (1986) ("a lawyer is under an ethical obligation to exercise independent professional judgment on behalf of his client;

he must not allow his own interests, financial or otherwise, to influence his professional advice"). Many state bar ethics opinions expressly permit outside litigation funding with express safeguards against funder influence. *See generally* Am. Bar Ass'n Comm'n on Ethics 20/20, Informational Report to the House of Delegates (2012) (explaining how attorneys should handle any third-party litigation funding to comply with existing professional responsibility and ethics rules).[23] For example, some states require that the client be informed of such arrangements, while others prohibit referral fees or disclosure of confidential information to a referral supplier without the client's informed consent. *See id*. at 4. Litigation financing, then, does not evince an unprotected client or unethical attorney, either generally or in the context of this MDL.

## III.    Unavailable to Past Litigations, Software Such as MDL Centrality Provides the Parties and the Court With Real-Time Access and the Ability to Flag Improper Activity

Sanofi devotes many pages to reminding the Court of dishonest actions taken by bad apples in prior litigations. Sanofi cites to articles describing improper fee arrangements by lawyers with doctors in the breast implant litigation, "echo mills" in the diet drug litigation, and improper medical funding in the mesh litigation.  Of course unethical, highly suspect, and sanctionable behavior should never be condoned.  Whatever may have occurred in those cases, unethical and illegal arrangements are not the norm—the far majority of attorneys do not engage in this behavior and should not be required to comply with Sanofi's misguided disclosure request.

Further, disclosure of this information is not necessary to oversee and prevent the unethical behavior that Sanofi believes may follow this litigation.  The parties and this Court

---

[23] *Available at*:
http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/20111212_ethics
_20_20_alf_white_paper_final_hod_informational_report.authcheckdam.pdf

already have the means in which to identify unscrupulous activity: MDL Centrality.  Unlike past litigations that relied on collating and organizing thousands of paper copies of Plaintiff Fact Sheets, the modern era allows us to quickly discern unusual patterns in litigation.  Through software like MDL Centrality, the Court and the parties can quickly identify unusual activity by a particular doctor or at a particular location or hospital.

## **CONCLUSION**

In the final analysis, Sanofi's motion is an unfounded and unseemly attempt to smear both breast cancer survivors now suffering from permanent alopecia because of Taxotere and the attorneys who zealously represent them. The number of suits against Sanofi are not the result of any illegal or unethical financial arrangements or advertising or diagnoses. Make no mistake, Sanofi is being sued by so many women because it injured so many women. And, consistent with binding rules of professional conduct, attorneys representing these victims on a contingency-fee basis are assuming the financial burden of prosecuting their clients' suits because that is the foundation of this country's contingency-fee practice, in which these attorneys bear the risk of advancing litigation expenses regardless of whether a recovery is made on their clients' suits.

Sanofi's request is overbroad, untethered to any claim or defense, disproportionate, and without basis.  The discovery Sanofi seeks would severely prejudice Plaintiffs and provide Sanofi with a strategic upper hand in all future stages of this litigation. Sanofi has no basis to suggest that pay-for-control, pay-for-diagnosis, or kickback-from-success is occurring here. Sanofi's incredibly broad request would not provide it with information about these practices even if they were happening.  Rather, this motion is part of a broader defense bar push toward requiring broader disclosures from future plaintiffs that would benefit them strategically.

For these reasons, the Court should deny Sanofi's motion.

Dated: July 25, 2017

Respectfully submitted:

/s/ Christopher L. Coffin
Christopher L. Coffin (LA Bar # 27902)
Pendley, Baudin & Coffin, L.L.P.
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: 504-355-0086
Facsimile: 504-523-0699
E-Mail: ccoffin@pbclawfirm.com

**Plaintiffs' Co-Lead Counsel**

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
E-Mail: kbm@classlawgroup.com

**Plaintiffs' Co-Lead Counsel**

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com

**Plaintiffs' Co-Liaison Counsel**

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
**Gainsburgh Benjamin David Meunier & Warshauer, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com

**Plaintiffs' Co-Liaison Counsel**

**Plaintiffs' Executive  Committee**
Christopher L. Coffin
Karen Barth Menzies
J. Kyle Bachus
David F. Miceli
Dawn M. Barrios, *ex officio*
M. Palmer Lambert, *ex officio*

**Plaintiffs' Steering Committee**
Anne Andrews
J. Kyle Bachus
Lawrence J. Centola, III
Christopher L. Coffin
Alexander G. Dwyer
Emily C. Jeffcott
Andrew Lemmon
Daniel Markoff
Abby E. McClellan
Karen Barth Menzies
David F. Miceli
Rand P. Nolen
Hunter J. Shkolnik
Genevieve Zimmerman

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT