

**W. BRADLEY WENDEL**
*Professor of Law*

106 Myron Taylor Hall
Ithaca, New York 14853-4901
**T:** 607.255.9719
**F:** 607.255.7193
**E:** wbw9@cornell.edu

21 July 2016

**<u>SENT VIA E-MAIL</u>**

Susan Y. Soong, Clerk of Court
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102-3489

   Re:  <u>Proposed Amendment to Civil Local Rule 3-15</u>

Dear Committee Members:

   I write to offer a professional responsibility perspective on the proposed amendment to the Northern District's Civil Local Rule 3-15. By way of disclosure, from time to time I have provided paid legal services to law firms entering into litigation financing transactions, as well as to commercial litigation funders Bentham IMF and Longford Capital Management on legal ethics. In my academic work at Cornell Law School, I also study and write on judicial ethics and authored a casebook entitled *The Law and Ethics of Lawyering*, which covers judicial conduct.

   <u>The ABA Commission on Ethics 20/20 Report on Alternative Litigation Finance</u>

   Perhaps more relevantly, I served as co-Reporter to the Working Group on Alternative Litigation Financing, which was part of the American Bar Association's Commission on Ethics 20/20. Members of the Commission were drawn from a diversity of practice settings, including plaintiffs' lawyers, members of large law firms, judges, and academics. The Commission was formed to consider changes to the Model Rules of Professional Conduct arising from the globalization of the legal profession, including alternative litigation financing, among other topics.

   After receiving comments and testimony, and following extensive deliberation, the Working Group concluded that the existing Model Rules of Professional Conduct, and other applicable law governing the lawyer-client relationship, were adequate to address the professional responsibility issues related to litigation financing. The Working Group concluded that litigation financing does not create new duties for lawyers, nor should the Model Rules be amended in response to the emergence of litigation financing. It considered amendments to the Model Rules and comments to

Northern District of California
Local Rules Committee
July 21, 2016
Page 2

remind lawyers of their obligations under existing law, but decided that any additional language would be so general as to be unhelpful.

Instead, the Working Group issued a Report to the ABA House of Delegates, known as the White Paper on Alternative Litigation Financing, released on December 27, 2011.[1] It includes several hypothetical case studies, illustrating the professional responsibility issues that may arise in connection with third-party litigation financing. The White Paper has since been cited hundreds of times in law reviews and national, state, and local bar publications.

<u>The Proposed Amendment to the Local Civil Rules</u>

The proposed Local Civil Rule requiring disclosure of litigation funding is not, in my opinion, justified by the interest in ensuring that attorneys' independent judgment is not compromised by the presence of litigation funders in a case. A significant motivation for the Ethics 20/20 Commission producing the White Paper as opposed to amended rules or comments is the necessarily fact-specific analysis of ethical issues raised by litigation financing. Rules on conflicts of interest and independent judgment are similarly, and necessarily, context-specific.

As the Commission acknowledged in its Report, although some funders state they take an entirely passive role in litigation, funders "may seek to exercise some measure of control over the litigation, including the identity of lawyers pursing the claims, litigation strategy to be employed, and whether to accept a settlement offer or refuse it and continue to trial."[2] However, the Commission concluded that the issues raised by litigation funding are not necessarily unique, and that Model Rule 5.4(c), which requires a lawyer to exercise independent professional judgment, adequately addresses those issues.

In addition, various forms of financing may have an impact on attorneys' independence and capacity to exercise judgment on behalf of their clients. As is well understood, contingent fee financing may, in some cases, create a serious misalignment of interests between lawyers and clients. In those cases, however, there are not additional rules prescribing specific actions by lawyers. Rather, attorneys are expected to fulfill their obligations to clients, including that of competent and diligent representation, notwithstanding the financial pressure to do otherwise.

Here is how the Supreme Court described the duties of an attorney when faced with a situation in which his or her personal financial interest would be at odds with the best interests of the client:

---

[1] Available from the ABA Ethics 20/20 Commission website at http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/20111212_ethics_20_20_a lf_white_paper_final_hod_informational_report.authcheckdam.pdf

[2] *Id.* at 22-23.

> [A] lawyer is under an ethical obligation to exercise independent professional judgment on behalf of his client; he must not allow his own interests, financial or otherwise, to influence his professional advice. Accordingly, it is argued that a lawyer is required to evaluate a settlement offer on the basis of his client's interest, without considering his own interest in obtaining a fee; upon recommending settlement, he must abide by the client's decision whether or not to accept the offer.

*Evans v. Jeff D*, 475 U.S. 717 (1986). This is self-regulation in action. Lawyers have obligations under the rules of professional conduct to seek the best result for their client, and to provide independent advice. If there is a potentially interfering adverse financial incentive, that's just tough luck for the lawyer, and one way in which the obligations of being a professional can occasionally be demanding.

For similar reasons, whether the Court removes the policy statement regarding judges' conflicts from the Local Civil Rule or not, mandatory disclosure of litigation financing is not needed to ensure that <u>judges</u> comply with applicable rules of judicial ethics. Although the parties may, in an appropriate case, file a motion for a judge's disqualification, in most cases judges are expected to recuse themselves when their impartiality may reasonably be questioned.

Just as the ABA Model Rules of Professional Conduct rely on attorneys to comply with their ethical responsibilities, the ABA Model Code of Judicial Conduct, as adopted by state courts, and the Code of Conduct for United States Judges rely on judges to be aware of their ethical obligations and take appropriate steps to comply with the Code. Canon 3(C)(1) of the U.S. Judicial Code, for example, states that "[a] judge shall *disqualify himself or herself* in a proceeding in which the judge's impartiality might reasonably be questioned," including cases in which the judge has a financial interest that might affect the judge's impartiality. The italicized language indicates that judges are expected to engage in self-monitoring for compliance with the rule, and in fact Canon 3(C)(2) further provides that "[a] judge should keep informed about the judge's personal and fiduciary financial interests."

Moreover, there is no need to impose a rule requiring disclosure of litigation financing on the off chance that a judge may have a financial interest in a litigation financing firm, because Canon 3(C)(3)(c)(i) defines "financial interest" to exclude passive ownership of shares of a mutual fund or similar common investment fund. It seems unlikely that judges would have investments in anything other than a common investment fund, given what would otherwise be the hassle of complying with Canon 3(C).

For all of these reasons, I submit that the proposed amendment is not likely to be needed, and should in any case be the product of a more considered process of research and inquiry, similar to that employed by the ABA Commission on Ethics 20/20.

Northern District of California
Local Rules Committee
July 21, 2016
Page 4


Very truly yours,

Brad Wendel

W. Bradley Wendel
Professor of Law