# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

|  |  |  |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 2740 |
|  | : | SECTION "N" (5) |
| THIS DOCUMENT RELATES TO ALL CASES | : : : | HON. KURT D. ENGELHARDT |

---

**PLAINTIFFS' FIRST SET OF REQUESTS
FOR PRODUCTION TO SANOFI DEFENDANTS**

TO:  Sanofi
Aventis Pharma S.A.
sanofi-aventis U.S. LLC
Sanofi US Services Inc.
Through Counsel of record:
Douglas J. Moore, Esq.
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana  70130

Pursuant to Rules 34 of the Federal Rules of Civil Procedure, Plaintiffs, through undersigned counsel, propound the following First Discovery Requests upon Defendants Sanofi-Aventis U.S. LLC, Sanofi S.A, Sanofi U.S. Services Inc., and Aventis Pharma S.A.  Answers to these Requests for Production, or objections in lieu thereof, shall be served within thirty days after service of this document.   These Requests for Production are continuing in nature. Defendants, therefore, are required to supplement their responses as new or different information becomes available to them pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

### DEFINITIONS

1. "YOU" and "DEFENDANT" refer to Sanofi-Aventis U.S. LLC, Sanofi S.A., Sanofi U.S. Services Inc., and/or Aventis Pharma S.A. as well as all affiliates, partners, directors, officers, employees, servants, agents, third-party contractors working on your behalf.

The terms "YOU" and "DEFENDANTS" also include all predecessor business entities (including, but not limited to, Rhone-Poulenc S.A., Rhone-Poulenc Rorer S.A., Rhone-Poulenc Rorer Pharmaceuticals Inc., Aventis S.A., Aventis Pharmaceuticals Inc., Aventis Pharma AG, and Aventis Inc.), as well as the predecessor's affiliates, partners, directors, officers, employees, servants, agents, and third-party contractors acting on the predecessor's behalf.

2. "TAXOTERE" refers to, as broadly as possible, docetaxel, a chemotherapy agent used in the treatment of cancer.

3. "TAXANE" refers to any chemotherapy agent that can be included in the class of drugs known and referred to as taxanes, including, but not limited to, Taxol (paclitaxel) and docetaxel.

4. "HAIR LOSS" refers to alopecia, any and all types of loss of hair, whether temporary or permanent, on any part of the body, and any terms used to identify, describe or quantify the diminution, impairment or loss of hair.

5. "STUDY" refers to any research, analysis or examination, inspection or investigation (including clinical investigations), or other activity by which data or information is acquired for the purpose of analysis or understanding. The term "STUDY" includes studies at all stages, including, but not limited to, proposed, ongoing, completed, or withdrawn studies regardless of whether the studies took place within or outside the United States. The term includes information and data acquired from studies regardless of the stated or original purpose of the studies.  Further, the term "STUDY" includes, but is not limited to, all clinical trials, observational studies, meta analyses, survey studies, case reports, market research, or other epidemiological studies by whatever name known.

6. "FDA" refers to the United States Department of Health & Human Services, United States Food & Drug Administration, any committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof.

7. "FOREIGN REGULATORY AGENCY" refers to any organization, including regulatory bodies or authorities, in any country (or other jurisdictional entity such as the European Union) other than the United States that regulates prescription drugs such as TAXOTERE.

8. "DOCUMENT" means every original, draft, and duplicate of any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form as those terms are defined and used in Rule 34 of the Federal Rules of Civil Procedure.

9. "COMMUNICATION" means any oral, written, spoken, or electronic transmission of information including meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, presentations or any other exchange of information within YOUR organization, or between YOU and any other PERSON, representative, or entity.

10. "RELATING TO", "relate to", "relating", "referring to", "refer to", "regarding", "concerning", or "concern" means evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with,  referring to in any way or manner, or in any way logically or factually connecting with the matter described in the  request or paragraph of

these demands, including DOCUMENTS attached to or used in the preparation of or concerning the preparation of the DOCUMENTS.

11. "IDENTIFY" or "IDENTITY" with respect to natural persons or entities means to give, to the extent known, the person's or entity's full name, present or last known address, telephone numbers, and email addresses. When referring to a natural person, the present or last known place of employment should also be provided. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

12. HEALTHCARE PROVIDER(S) means any physician or other individual healthcare provider, health care facility, clinic, hospital or hospital pharmacy.

13. "PERSON" means any natural person, as well as any business, corporate, legal, or governmental entity or association.

14. The use of the singular includes the plural and vice versa.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16. Unless otherwise indicated, the relevant time period (sometimes referred to herein as the "Relevant Time Period") for the information sought for each request is January 1, 1989 to the present.

## **INSTRUCTIONS**

1. Each request hereinafter set forth not only calls for YOUR knowledge, but also for all knowledge that is available to any third party working or acting on YOUR behalf, and

available by reasonable inquiry, including inquiry of YOUR employees, representatives, agents, and attorneys.

2. If YOU cannot answer the following requests in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance YOUR inability to answer the remainder and stating whatever information or knowledge YOU have concerning the unanswered portions and to the best of knowledge the names, addresses, and telephone numbers of all persons and organizations where such information is, will be, or is believed to be.

3. In answering these requests, YOU are requested to answer each subdivision fully, completely, as required by Fed. R. Civ. P. 26(e)(1) and (g). These requests are to be regarded as continuing in nature, including those to which YOU claim an inability to answer fully and completely for the reason that discovery is continuing. On acquiring any information responsive to these request after the service of answers hereto, YOU are required to serve supplemental answers containing such later acquired information, and YOU may be precluded at the trial of this action from introducing evidence RELATING TO the subject matter of these demands that YOU have not disclosed by these answers or by supplemental answers thereto.

4.  All information requested includes all information that relates, in whole or in part, to the Relevant Time Period, or to events or circumstances during such Relevant Time Period even though dated, prepared or generated, or received prior to the Relevant Time Period.

5. If any request is deemed to call for the production of privileged or otherwise protected information or materials, consistent with Fed. R. Civ. P. 26(b)(5) and the Protective Order entered in this case, YOU must provide the following information in a written

response, designating and identifying such information withheld from production on grounds of privilege:

    a.  Date of DOCUMENT or COMMUNICATION (including month, day, and year);

    b.  Type of DOCUMENT;

    c.  Author of DOCUMENT;

    d.  Sender of DOCUMENT (if different from author), including email address;

    e.  Recipient names (including email addresses);

    f.  CC names (including email addresses);

    g.  BCC names (including email addresses);

    h.  Bates range of the privileged DOCUMENTS;

    i.  Indication of the privilege asserted;

    j.  File name;

    k.  If produced, family member designation within the production; and

    l.  A description of the subject matter of the DOCUMENT or COMMUNICATION with information sufficient to demonstrate the existence of a privilege.

6.  If any of the DOCUMENTS or information requested cannot be produced in full, YOU are required to specify, to the extent possible, the reasons for YOUR inability to produce the remainder and the approximate date when YOU expect to produce such DOCUMENTS.

7.  The DOCUMENTS and INFORMATION shall be produced in accordance with the ESI Protocol and Protective Order entered in this litigation.

8.  The headings used herein are not intended to limit in any way the scope of the requests.

## REQUESTS FOR PRODUCTION

1.  INDs, NDAs, and SNDAs for TAXOTERE.

2.  YOUR FDA regulatory file RELATING TO TAXOTERE.

3.  All DOCUMENTS that evidence COMMUNICATIONS between YOU and FDA RELATING TO TAXOTERE. Include in YOUR production, and without limitation, the following:

    a.  YOUR COMMUNICATION log with FDA;

    b.  All DOCUMENTS evidencing COMMUNICATIONS (whether formal or informal) from FDA to YOU concerning TAXOTERE, whether from the Center for Drug Evaluation and Research (CDER), Office of Prescription Drug Promotion (OPDP), formerly known as the Division of Drug Marketing and Communication (DDMAC), an advisory committee, or otherwise, concerning the review of any NDA, SNDA, marketing materials (proposed, approved, or published), data or other materials RELATING TO TAXOTERE.

    c.  YOUR response to any request for information, data or response, RELATING TO COMMUNICATIONS IDENTIFIED in sub-paragraph (b) above;

    d.  All DOCUMENTS evidencing a complete distribution list of all PERSONS copied on any COMMUNICATIONS identified in sub-paragraph (b) as well as PERSONS consulted to contribute to any response pursuant to sub-paragraph (c) above.

4.  For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, the STUDY protocols, including but not limited to informed consent forms,

RELATING TO TAXOTERE, regardless of whether the STUDY was ever completed or whether human patients were ever enrolled.

5.   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all applications for approval to an Institutional Review Board (IRB) RELATING TO TAXOTERE.

6.   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all responses by the Institutional Review Board (IRB) to the STUDY applications made by YOU RELATING TO TAXOTERE.

7.   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all STUDY reports and supporting data sets RELATING TO TAXOTERE.

8.   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, the clinical investigator manual or brochure or similar DOCUMENT that provides instruction to study centers regarding the collection of clinical and non-clinical data.

9.   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all investigator reports RELATING TO TAXOTERE.

10. All DOCUMENTS RELATING TO investigator initiated research applications or requests RELATING TO TAXOTERE and HAIR LOSS.

11. All DOCUMENTS RELATING TO changes to the formulation of taxol.

12. All DOCUMENTS RELATING TO changes to the formulation of TAXOTERE.

13. All DOCUMENTS RELATING TO the solvent(s) utilized in TAXOTERE solutions.

14. All DOCUMENTS IDENTIFYING clinical research companies, organizations, and/or individuals YOU used to STUDY TAXOTERE.

15. All DOCUMENTS RELATING TO FDA's rejection and/or request for supplementation or further study of any NDA or sNDA RELATING TO TAXOTERE.

16. All Periodic Safety Update Reports (PSURs) RELATING TO TAXOTERE.

17. All Periodic adverse drug experience reports (PADERs) RELATING TO TAXOTERE.

18. All Periodic Benefit-Risk Evaluation Reports (PBRERs) RELATING TO TAXOTERE.

19. All internal COMMUNICATIONS RELATING TO PSUR, PADER, and PBRER submissions for TAXOTERE.

20. All DOCUMENTS submitted by YOU to National Cancer Institute (NCI) in support of YOUR application for a Cooperative Research and Development Application (CRADA) RELATING TO the technology transfer of the taxol molecule.

21. All DOCUMENTS RELATING TO any comparison of the efficacy between TAXOTERE and other chemotherapy medicines, including, but not limited to, the chemotherapy medicines identified in the Plaintiff Fact Sheet in this MDL in Section V.11.

22. All DOCUMENTS that support YOUR contention that the chemotherapy medicines identified in the Plaintiff Fact Sheet in this MDL in Section V.11 are associated with HAIR LOSS.

23. All DOCUMENTS RELATING TO TAXOTERE efficacy compared to Taxol (paclitaxel) efficacy.

24. All DOCUMENTS RELATING TO the following studies:

    a. Joseph A. Sparano et al., *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, 358 New Eng. J. Med. 1663, 1663-1671 (2008), *available at* http://www.nejm.org/doi/full/10.1056/nejmoa0707056#t=article

b.  Wei-Xiang Qi, et al., *Paclitaxel-based Versus Docetaxel-based Regimens in Metastatic Breast Cancer: A Systemic Review and Meta-analysis of Randomized Controlled Trials*, Curr. Med. Res. Opin. Volume 29 Issue 2:117-125 (2013), *available at* http://dx.doi.org/10.1185/03007995.2012.756393

c.  Jones, S.E., et al., *Randomized Phase III Study of Docetaxel Compared With Paclitaxel in Metastatic Breast Cancer.*, J.Clin.Oncol. 2005, 23(24):5542-51.

25. All DOCUMENTS RELATING TO any inquiries or investigations by governmental or regulatory organizations within the United States (either state or federal) RELATING TO TAXOTERE and the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion.

26. All labels, including package inserts, user guides and patient information, for TAXOTERE approved by FDA.

27. All drafts of labels for TAXOTERE, whether submitted to the FDA or not, RELATING TO HAIR LOSS.

28. All drafts of labels for TAXOTERE, whether submitted to the FDA or not, RELATING TO efficacy.

29. All drafts of labels for TAXOTERE, whether submitted to the FDA or not, RELATING TO cardio-toxicity.

30. All COMMUNICATIONS RELATING TO U.S. labeling for TAXOTERE and HAIR LOSS.

31. All COMMUNICATIONS RELATING TO U.S. labeling for TAXOTERE and efficacy.

32. All COMMUNICATIONS RELATING TO U.S. labeling for TAXOTERE and cardio-toxicity.

33. All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and HAIR LOSS, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.

34. All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and efficacy, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.

35. All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and cardio-toxicity, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.

36. All DOCUMENTS RELATING TO the December 2015 FDA announcement concerning safety labeling changes approved by the FDA RELATING TO TAXOTERE.

37. Produce an exact duplicate of the data, information, DOCUMENTS, files, codes and other materials YOU provided to the FDA in response to the February 12, 1999 facsimile YOU received from the FDA.

38. All labels, including package inserts, user guides and patient information, for TAXOTERE approved by FOREIGN REGULATORY AGENCIES from 2005 to the present.

39. All COMMUNICATIONS to or from any FOREIGN REGULATORY AGENCY RELATING TO TAXOTERE and HAIR LOSS and any English translations that exist.

40. All DOCUMENTS RELATING TO the application for a variation submitted by Aventis Pharma S.A. to the European Medicines Agency on February 19, 2016 RELATING TO TAXOTERE, including, but not limited to, the application itself and all supporting information.

41. All COMMUNICATIONS RELATING TO the application for a variation submitted by Aventis Pharma S.A. to the European Medicines Agency on February 19, 2016 RELATING TO TAXOTERE.

42. YOUR "Sanofi global pharmacovigilance database" as described in the February 19, 2016 type II variation report from European Medicines Agency (EMA) that IDENTIFIES to present date all cases of HAIR LOSS in patients who received TAXOTERE.

43. All DOCUMENTS RELATING TO any FOREIGN REGULATORY AGENCY inquiry or investigation RELATING TO the safety of TAXOTERE, including, but not limited to, a French regulatory agency's 2017 investigation into deaths of patients receiving TAXOTERE.

44. All DOCUMENTS RELATING TO the preclinical and clinical STUDIES RELATING TO TAXOTERE conducted by YOU or on YOUR behalf outside of the United States prior to 2001.

45. All Company Core Data Sheets (CCDS) RELATING TO TAXOTERE.

46. All COMMUNICATIONS RELATING TO TAXOTERE Company Core Data Sheets (CCDS) and HAIR LOSS.

47. All Company Core Safety Information (CCSI) RELATING TO TAXOTERE.

48. All COMMUNICATIONS RELATING TO Company Core Safety Information for TAXOTERE and HAIR LOSS.

49. All draft Dear Doctor/HEALTHCARE PROVIDER letters RELATING TO TAXOTERE and HAIR LOSS.

50. All COMMUNICATIONS RELATING TO any Dear Doctor/HEALTHCARE PROVIDER letter RELATING TO TAXOTERE and HAIR LOSS.

51. All DOCUMENTS RELATING TO an actual or potential signal between TAXOTERE and HAIR LOSS.

52. All internal COMMUNICATIONS and DOCUMENTS RELATING TO an actual or potential signal or association between TAXOTERE and HAIR LOSS.

53. All DOCUMENTS RELATING TO any causality assessments (including suspected, potential, and/or actual associations) between TAXOTERE and HAIR LOSS.

54. All DOCUMENTS that IDENTIFY or list (including in summary format) any completed, proposed, planned, or considered preclinical or clinical STUDIES that assess whether TAXOTERE can cause HAIR LOSS.

55. The adverse event database RELATING TO TAXOTERE.

56. All COMMUNICATIONS and DOCUMENTS RELATING TO any TAXOTERE adverse event report and HAIR LOSS, including all follow up documentation.

57. All DOCUMENTS RELATING TO scientific, clinical, and medical publications, posters and any other publication RELATING TO TAXOTERE as defined in 21 C.F.R. 310.305 and the corresponding Guidance for Industry and Investigator, Safety Reporting Requirements for INDs and BA/BEs, Section IV., V., pp. 7-8 (Dec. 2012).

58. All published and unpublished medical and scientific articles, abstracts, posters, presentations, and research papers RELATING TO TAXOTERE and HAIR LOSS and efficacy.

59. All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and any researchers, authors or editors involved in STUDIES, articles, abstracts, presentations, publications or posters regarding TAXOTERE and HAIR LOSS or efficacy.

60. All DOCUMENTS RELATING TO any epidemiological STUDIES and/or statistical analyses RELATING TO TAXOTERE and HAIR LOSS.

61. All DOCUMENTS and COMMUNICATIONS RELATING TO Scot Sedlacek, M.D. and/or Rocky Mountain Cancer Center.

62. All DOCUMENTS RELATING TO ongoing, past, future, or potential STUDIES, whether sponsored by YOU or not, involving TAXOTERE and HAIR LOSS.

63. All DOCUMENTS that support YOUR contention of alternative causes of HAIR LOSS (other than TAXOTERE), including articles, book chapters, treatises or other publications.

64. All SAS data or data files RELATING TO TAXOTERE and HAIR LOSS.

65. All DOCUMENTS RELATING TO any comparison between TAXOTERE and other chemotherapy medicines concerning HAIR LOSS.

66. All DOCUMENTS RELATING TO whether a patient's HAIR LOSS, after using TAXOTERE may be impacted by the use of any endocrine or hormonal therapies.

67. All DOCUMENTS RELATING TO whether a patient's HAIR LOSS, after using TAXOTERE may be impacted by an autoimmune disease, including those autoimmune diseases listed in the Plaintiff Fact Sheet in this MDL in Section VII.10.

68. All DOCUMENTS RELATING TO whether a patient's HAIR LOSS after using TAXOTERE may be impacted by hair care products or treatments, including the hair care products and/or treatments listed in the Plaintiff Fact Sheet in this MDL in Section VII.13 and VII.14.

69. All DOCUMENTS RELATING TO how YOU define, grade, or otherwise classify HAIR LOSS.

70. All DOCUMENTS RELATING TO social media, website, blog, online message board or other internet posting, discussing TAXOTERE and HAIR LOSS.

71. All COMMUNICATIONS from patients, healthcare professionals, and/or HEALTHCARE PROVIDERS RELATING TO TAXOTERE and HAIR LOSS.

72. All DOCUMENTS RELATING TO patient advocacy or support groups/organizations RELATING TO TAXOTERE and HAIR LOSS.

73. All DOCUMENTS RELATING TO YOUR response to any COMMUNICATIONS from patients RELATING TO TAXOTERE and HAIR LOSS.

74. All DOCUMENTS RELATING TO the following studies, including but not limited to COMMUNICATIONS with the study authors:

    a. Martin M, Seguí MA, Antón A, Ruiz A, Ramos M, Adrover E, et al. GEICAM 9805.

    b. S.M. Sedlacek, *Persistent Significant Alopecia (PSA) from Adjuvant Docetaxel after Doxorubicin/Cyclophosphamide (AC) Chemotherapy in Women with Breast Cancer*, Presented at San Antonio Breast Cancer Symposium (Dec. 14, 2006), *available at* http://theproductlawyers.com/wp-content/uploads/2016/07/Sedlacek-TAXOTERE-Alopecia-Study-2006.pdf

    c. Ben Tallon, et al., *Permanent Chemotherapy-Induced Alopecia: Case Report and Review of the Literature*, J. Am. Acad. Dermatol., Volume 63 Issue 2: 333-336 (2010), *available at* https://www.ncbi.nlm.nih.gov/pubmed/20471136

    d. N. Kluger, et al., *Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and*

*docetaxel: a prospective STUDY of 20 patients*, Ann. Oncol. Volume 23 Issue 11: 2879-2884 (2012), *available at* https://www.ncbi.nlm.nih.gov/pubmed/22571858

e.   Nicola J. Thorp et al., *Long Term Hair Loss in Patients with Early Breast Cancer Receiving Docetaxel Chemotherapy*, P5-17-04 San Antonio Breast Cancer Symposium at 1111 (2014), *available at*

http://www.sabcs.org/Portals/SABCS/Documents/2014SABCSCall4Abstracts.pdf

75. All DOCUMENTS and COMMUNICATIONS summarizing and/or analyzing post-marketing adverse event reports RELATING TO TAXOTERE and HAIR LOSS.

76. All MedWatch forms, including follow up DOCUMENTS, RELATING TO TAXOTERE and HAIR LOSS.

77. All DOCUMENTS RELATING TO marketing plans, strategic plans, situation analyses or tactical plans regarding TAXOTERE.

78. All DOCUMENTS RELATING TO the implementation of the marketing strategy for TAXOTERE.

79. All DOCUMENTS RELATING TO core/key messages, tactics, Plan of Action (POA), SWOT (Strengths, Weaknesses, Opportunities and Threats) analyses, competitive issues, barriers/obstacles or customer beliefs regarding TAXOTERE.

80. All DOCUMENTS RELATING TO marketing strategies, plans, and/or messages RELATING TO the "Unsubstantiated Superiority Claims and Overstatement of Efficacy Claims" referred to in the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion.

81. All DOCUMENTS RELATING TO DEFENDANTS' implementation of the corrective measures RELATING TO the "Unsubstantiated Superiority Claims and Overstatement of

Efficacy Claims" referred to in the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion, including materials used to train, educate, inform and/or update employees regarding this violation.

82. All DOCUMENTS RELATING TO marketing strategies, plans, and/or messages RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".

83. All DOCUMENTS RELATING TO the training and/or COMMUNICATIONS to YOUR field representatives and any other employees RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".

84. All DOCUMENTS RELATING TO approved messaging for COMMUNICATIONS to HEALTHCARE PROVIDERS RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".

85. All DOCUMENTS RELATING TO the hiring or retention of private/independent contractors or other consulting firms RELATING TO the marketing, market research, branding, promotion and public relations of TAXOTERE.

86. All DOCUMENTS RELATING TO YOUR standardized operating procedures (SOPs), codes of conduct, and/or ethical standards, whether formal or informal, with respect to the promotion, sales, marketing, commercialization of YOUR products, including TAXOTERE.

87. All DOCUMENTS RELATING TO the procedural process for review and approval of promotional material for TAXOTERE.

88. All IMS Health data RELATING TO TAXOTERE.

89. All data RELATING TO physicians' prescribing practices of competitor products compared to TAXOTERE in the treatment of breast cancer.

90. All DOCUMENTS RELATING TO DEFENDANTS' targeting of HEATHCARE PROVIDERS and facilities for promotion of TAXOTERE.

91. All DOCUMENTS reflecting the annual Return On Investment (ROI) or related metric for each marketing strategy RELATING TO the promotion of TAXOTERE.

92. All DOCUMENTS RELATING TO the training of YOUR sales organization responsible for the promotion TAXOTERE.

93. The database(s) that contains draft and final promotional materials for TAXOTERE.

94. All DOCUMENTS that index, catalog, compile, or otherwise list any of YOUR approved advertising, sales and marketing materials, and print and broadcast advertisements, sales aids, visuals, sales scripts, sales guides, reminder pieces and any other materials referenced in 21 C.F.R. 202.1, subdivisions (l)(1) and (l)(2) regarding or RELATING TO TAXOTERE.

95. All final, company-approved promotional materials for TAXOTERE (including sales aids, physician brochures, patient brochures, samples, vouchers, symposia, teleconference and video conference materials, CD-ROMs, lunch and learn materials, dinner or other event program materials, hospital, insurance or other formulary presentations, seminars, websites, interactive web sessions, web supported promotional presentations, e-detailing promotional presentations).

96. All DOCUMENTS RELATING TO coupon programs, vouchers and samples for TAXOTERE.

97. All DOCUMENTS RELATING TO vouchers for discounted taxi services, coupons for wigs, gift packages for patients (e.g., Connection Card Gift Package).

98. All audio and/or video COMMUNICATIONs (both in audio file format and a transcript of the same) between YOU and YOUR sales force RELATING TO TAXOTERE.

99. All email or other written COMMUNICATIONs by and or between YOU and YOUR sales force RELATING TO TAXOTERE.

100.    Call note or other types of databases reflecting information recorded by or communicated among field representatives regarding TAXOTERE.

101.    Call note or other types of databases reflecting field representatives' COMMUNICATIONS with HEALTHCARE PROVIDERS about TAXOTERE.

102.    All DOCUMENTS that reflect written procedures or guidelines for field representatives associated with the sales, marketing, and/or promotion of TAXOTERE RELATING TO recording information about HEALTHCARE PROVIDER COMMUNICATIONS.

103.    Any agreements between YOU and any other company to co-promote TAXOTERE.

104.    Any agreements between YOU and any entity to provide contract sales representatives to promote TAXOTERE.

105.    All DOCUMENTS RELATING TO cross-product promotion, co-promotions, or product bundling involving TAXOTERE.

106.    All COMMUNICATIONS between YOU and the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding TAXOTERE.

107.    All DOCUMENTS regarding any COMMUNICATIONS between YOU and the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising and Communications (DDMAC) regarding TAXOTERE.

108.    All DOCUMENTS RELATING TO DEFENDANTS' implementation of the corrective measures RELATING TO any identified or alleged violations brought to YOUR attention by the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising, and Communications (DDMAC), including materials used to train, educate, inform and/or update employees regarding these identified or alleged violations.

109.    DOCUMENTS sufficient to IDENTIFY YOUR speaker bureau members, thought leaders and/or key opinion leaders including doctors, researchers, academics, medical or healthcare professionals, and HEALTHCARE PROVIDERS who received remuneration from YOU for preparation of scientific papers, posters, medical articles, speeches, lectures, and/or presentations regarding TAXOTERE.

110.    All DOCUMENTS RELATING TO medical seminars, presentations, conferences, lectures, slide decks, medical educational materials RELATING TO TAXOTERE and the treatment of breast cancer.

111.    All DOCUMENTS RELATING TO any Advisory Boards utilized by YOU RELATING TO TAXOTERE and/or the treatment of breast cancer.

112.    ALL DOCUMENTS RELATING TO YOUR membership, sponsorship, funding or payment made to organizations RELATING TO breast cancer treatment, including, but not limited to, the American Breast Cancer Foundation, Susan G. Komen, National

Breast Cancer Foundation, Breast Cancer Research Foundation, Breast Cancer Association, or other similar cancer organizations.

113.     All DOCUMENTS RELATING TO YOUR publication of articles RELATING TO TAXOTERE and the treatment of breast cancer.

114.     All DOCUMENTS RELATING TO YOUR use of Medical Writing Services for the authorship of journal articles, abstracts, posters and/or other publications RELATING TO TAXOTERE.

115.     Video files (in video format) of all television advertisements and/or information videos (branded or unbranded), including drafts, RELATING TO TAXOTERE and/or the treatment of breast cancer.

116.     Audio files (in audio format) of all radio advertisements, and/or informational audio files, including drafts, RELATING TO TAXOTERE.

117.     All DOCUMENTS showing each TAXOTERE advertisement which was aired on either television or radio, including affidavits received from the media outlets, media buyers, or YOUR advertising agencies or public relations firms.

118.     A color copy of each direct to consumer and/or direct to customer (physicians, cancer treatment facilities, distributors, insurance companies) advertisement regarding TAXOTERE and/or the treatment of cancer.

119.     All DOCUMENTS regarding any branded and/or unbranded website, webpage, blog, social media, twitter, YouTube or other similar media containing content created for or maintained by or on behalf of YOU regarding TAXOTERE and/or the treatment of cancer.

120.     All DOCUMENTS RELATING TO keyword search terms and domain registrations RELATING TO the promotion of TAXOTERE.

121.     All DOCUMENTS RELATING TO YOUR SEO (Search Engine Optimization) strategies RELATING TO the promotion of TAXOTERE.

122.     All DOCUMENTS (including screenshots) RELATING TO TAXOTERE on DEFENDANTS' sponsored, supported, edited, and/or linked websites, Facebook pages, Instagram pages, Twitter pages, social media of any kind, Wikipedia or pages on any other websites (e.g., www.cancerinfo.net, www.fightwomenscancer.com, www.cancerinformation.com).

123.     All DOCUMENTS RELATING TO analysis of market share, projection of future sales, marketing strategies, sales targets (i.e., HEALTHCARE PROVIDERS, cancer treatment facilities, managed care, private or public business and organizations) and/or promotional plans for TAXOTERE and the treatment of breast cancer.

124.     All DOCUMENTS RELATING TO market research regarding TAXOTERE, including HEALTHCARE PROVIDER or patient beliefs, focus groups, testing of messages to HEALTHCARE PROVIDERS or patients, and/or any other research RELATING TO the use of TAXOTERE and the treatment of breast cancer.

125.     All DOCUMENTS RELATING TO consumer market research regarding HAIR LOSS, including temporary and/or persistent or permanent.

126.     All DOCUMENTS RELATING TO the TAXOTERE market share domestically and globally for each year TAXOTERE has been on the market.

127.     All DOCUMENTS RELATING TO Winthrop's docetaxel market share domestically and globally for each year YOU have marketed Winthrop's docetaxel.

128.	All DOCUMENTS RELATING TO the annual budgets (by domestic region and globally) for the promotion, sales and/or marketing of TAXOTERE for each year that TAXOTERE has been on the market.

129.	All DOCUMENTS RELATING TO YOUR actual expenditure for the promotion, sales and/or marketing of TAXOTERE for each year that TAXOTERE has been on the market.

130.	All DOCUMENTS RELATING TO agreements between YOU and Winthrop regarding the manufacture, sale, marketing or distribution of TAXOTERE in its generic form (docetaxel).

131.	All DOCUMENTS RELATING TO any state, federal or foreign investigation, action, judgment, injunction, Corporate Integrity Agreement, memorandum of understanding, and/or settlement agreements that were entered or executed in connection with the promotion of TAXOTERE.

132.	All DOCUMENTS RELATING TO TAXOTERE that have been produced in the Qui Tam case, *U.S. ex rel. Gohil v. Sanofi Aventis U.S. Inc. et al.*, USDC ED PA Case No. 02-2964, RELATING TO THE sales and promotion of TAXOTERE.

133.	All DOCUMENTS sufficient to IDENTIFY any pharmaceutical product other than TAXOTERE, containing TAXANES and/or other microtubule inhibitors (MTI) developed by YOU.

134.	All DOCUMENTS RELATING TO comparisons between TAXOTERE and Jevtana (cabazitaxel).

135.     All DOCUMENTS RELATING TO the assignment of any TAXOTERE patents, including but not limited to, the assignment made by Rhône-Poulenc Rorer S.A. to Aventis Pharma S.A.

136.     All DOCUMENTS RELATING TO licensing agreements for TAXOTERE.

137.     All applications for patents RELATING TO TAXOTERE that YOU have submitted to the United States Patent and Trademark Office.

138.     All DOCUMENTS RELATING TO TAXOTERE that have been produced in the case filed *Bristol-Myers Squibb Company v. Rhone-Poulenc Rorer, Inc. and Rhone-Poulenc Rorer, S.A.*, USDC SD NY Case Nos., 95-CV-8833, 96-CV-2346, 98-CV-356, 2002WL59429(SDNY Jan. 16, 2002) and 2001 WL 126399 (SDNY Oct. 19, 2001).

139.     All insurance policies, excess coverage policies, or any other type of insurance coverage, including any self-insured retention policies, that may cover claims against YOU RELATING TO TAXOTERE for policy years 2004 until the present.  This request also calls for the production of the policy declaration sheet.

140.     All of YOUR annual reports from 1996 to the present.

141.     All of YOUR Form 20-F reports from 1996 to the present.

142.     All DOCUMENTS RELATING TO YOUR past and/or present market share and/or sales of TAXOTERE in the United States.

143.     All DOCUMENTS RELATING TO YOUR projections of future market share and/or sales of TAXOTERE in the United States.

144.     All DOCUMENTS RELATING TO YOUR sales of TAXOTERE in the United States compared to the worldwide sales of TAXOTERE for each year from 1996 to the present.

145.     All DOCUMENTS RELATING TO YOUR market share of TAXOTERE in the United States compared to other chemotherapy products for each year from 1996 to the present.

146.     All DOCUMENTS RELATING TO YOUR annual sales revenue derived from TAXOTERE in the United States broken down by State for each year from 1996 to the present.

147.     All DOCUMENTS RELATING TO YOUR annual profits derived from TAXOTERE in the United States, annually from 1996 to present.

148.     All DOCUMENTS RELATING TO YOUR annual profits derived from TAXOTERE worldwide, annually from 1996 to present.

149.     All DOCUMENTS RELATING TO what percentage of YOUR gross revenues was derived from TAXOTERE United States sales, annually, from 1996 to present.

150.     All DOCUMENTS RELATING TO what percentage of YOUR net income was derived from TAXOTERE sales in the United States annually from 1996 to present.

151.     All DOCUMENTS RELATING TO YOUR actual expenditures on an annual basis for design, research and development of TAXOTERE to obtain market approval by FDA in the United States.

152.     All DOCUMENTS RELATING TO YOUR actual expenditures on an annual basis from 1996 to present for monitoring post-market adverse events and pharmacovigilence.

153.     All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO the content and format of labeling of YOUR prescription drug products, including TAXOTERE.

154.    All DOCUMENTS reflecting standard operating procedures, policies and guidance for Adverse Event collection, analysis, follow-up, and reporting for YOUR prescription drug products, including TAXOTERE.

155.    All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO Dear HEALTHCARE PROVIDER or Health Advisory Letters for YOUR prescription drug products, including TAXOTERE.

156.    All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO requests for information from HEALTHCARE PROVIDERS (e.g., Physician Information Requests – (PIRs)) and the public about YOUR prescription drug products, including TAXOTERE.

157.    All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO COMMUNICATIONS by YOUR employees with HEALTHCARE PROVIDERS or patients about YOUR prescription drug products, including TAXOTERE.

158.    YOUR Ethics Codes from 1996 to the present.

159.    All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO corporate compliance in YOUR prescription drugs from 1996 to the present.

160.    All DOCUMENTS sufficient to demonstrate the coordination of operations between or among DEFENDANTS.

161.    All DOCUMENTS sufficient to demonstrate YOUR organization and structure of the departments and personnel involved with TAXOTERE from 1985 to present.

162.    For each year in which YOU designed, tested, manufactured, sold, marketed, licensed or distributed TAXOTERE, produce all charts or other DOCUMENTS RELATING TO:

   a.  General corporate organizational structure;

   b.  Business unit organizational structure;

   c.  Corporate compliance organizational structure;

   d.  Pharmacovigilence and safety organizational structure;

   e.  Sales department organizational structure;

   f.  Marketing department organizational structure;

   g.  Market research department organizational structure;

   h.  Distribution department organizational structure;

   i.  Research and development department organizational structure;

   j.  Medical department organizational structure;

   k.  Regulatory department organizational structure; and

   l.  Pharmaceutical drug labeling department organizational structure.

163.    ALL DOCUMENTS RELATING TO litigation holds concerning TAXOTERE, whether instituted for purposes of this litigation or prior litigation.   If a litigation hold was initiated pursuant to prior litigation RELATING TO TAXOTERE please state if, and if so when, any such hold was lifted.

164.    YOUR document retention policies from 1996 to the present, including all policies RELATING TO the assimilation of information from acquired or merged companies.

Dated: July 11, 2017


Respectfully submitted:


*/s/Christopher L. Coffin*
Christopher L. Coffin (# 27902)
**Pendley, Baudin & Coffin, LLP**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone: 504-355-0086
Facsimile: 504-523-0699
E-Mail: ccoffin@pbclawfirm.com
***Plaintiffs' Co-Lead Counsel***

*/s/Karen Barth Menzies*
Karen Barth Menzies (CA Bar #180234)
**Gibbs Law Group, LLP**
400 Continental Boulevard, 6th Floor
El Segundo, California 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
E-Mail: kbm@classlawgroup.com
***Plaintiffs' Co-Lead Counsel***


*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com
***Plaintiffs' Co-Liaison Counsel***

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
**Gainsburgh Benjamin David Meunier & Warshauer, LLC**
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com
***Plaintiffs' Co-Liaison Counsel***


***Plaintiffs' Executive  Committee***
Christopher L. Coffin
Karen Barth Menzies
J. Kyle Bachus
David F. Miceli
Dawn M. Barrios, *ex officio*
M. Palmer Lambert, *ex officio*

***Plaintiffs' Steering Committee***
Anne Andrews
J. Kyle Bachus
Lawrence J. Centola, III
Christopher L. Coffin
Alexander G. Dwyer
Emily C. Jeffcott
Andrew Lemmon
Daniel Markoff
Abby E. McClellan
Karen Barth Menzies
David F. Miceli
Rand P. Nolen
Hunter J. Shkolnik
Genevieve Zimmerman

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on counsel for defendants Sanofi S.A., Aventis Pharma S.A., sanofi-aventis U.S. LLC, Sanofi US Services Inc. and Defendants' Liaison Counsel via electronic mail this 11th day of July, 2017.

/s/M. Palmer Lambert
M. PALMER LAMBERT