UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　SECTION "N" (5)

THIS DOCUMENT RELATES TO　　　　　　　　JUDGE NORTH
ALL CASES

**REPLY TO PLAINTIFFS' MOTION TO COMPEL
RESPONSES RELATED TO DISCOVERY[1]**

MAY IT PLEASE THE COURT:

　　Defendants' response is replete with inaccurate and grossly generalized statements concerning Plaintiffs' allegations and the law of personal jurisdiction. Worse, Defendants are ignoring Judge Engelhardt's authorization and issuance of deadlines for jurisdictional discovery in this matter (Pre-Trial Order 52, Doc. 661), which as described below, is based on widely-recognized jurisprudence.

　　Moreover, Plaintiffs are entitled to more than the "facts" laid bare by Defendants in the self-serving Declaration of Claire Terrazas, which Defendants attached to their motion to dismiss. Defendants' "full responses" to less than half of Plaintiffs' interrogatories fair no better. Overly generalized and often referring to the same self-serving declaration, these responses provide Plaintiffs with no meaningful information.

---

[1] Plaintiffs object to Defendants' bifurcation of their opposition to Plaintiffs' Motion to Compel through the filing two separate responses. (*See* Doc. 694; Doc. 685.)  This has necessitated the filing of two reply memoranda by Plaintiffs—one to address French Impediments to discovery and the other to address general objections. Given the overlap of certain issues present in both responses (as evidenced by duplicative language), Plaintiffs contend that Defendants could have submitted a single response, saving the parties and the Court substantial time.

1

Finally, and contrary to Defendants' suggestion, Plaintiffs are not required to rebut these "facts" as a condition to receiving discovery. (Defs. Opp., Doc. 694 at 8 ("Plaintiffs do not contest the facts laid out by Defendants...").) With Defendants' answers to discovery overdue by a month—and with Plaintiffs' deadline for responding to the motion to dismiss just two months away—it is imperative that Defendants be compelled to promptly to Plaintiffs' jurisdictional discovery requests.

I. **PLAINTIFFS ARE ENTITLED TO JURISDICTIONAL DISCOVERY**

As with other types of discovery, trial courts have broad discretion in deciding whether to grant jurisdictional discovery, and on what terms. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000). Where the record leaves in doubt questions about the basis for jurisdiction, a plaintiff is not required to depend exclusively upon defendant's affidavit for answers, but has the right to conduct additional discovery to develop the necessary facts. *See Blanco v. Carigulf Lines*, 632 F.2d 656, 657 (5th Cir. 1980). In *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981*)*, the Fifth Circuit found that "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Id*. at 407.

The Fifth Circuit has indicated that a party seeking jurisdictional discovery has the burden of making "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). This is a low threshold showing, with several cases supporting the conclusion that a qualified right to jurisdictional discovery exists. *See Williamson*, 645 F.2d 404, 414; *Blanco*, 632 F.2d at 657; *Chatham Condo. Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979). If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts, jurisdictional discovery should be granted. *Fielding*, 415 F.3d at 429. In other words, if a plaintiff can show that jurisdictional

discovery would not be wholly futile, the plaintiff is entitled to discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

Here, Plaintiffs' Master Complaint easily meets the low threshold showing of a "possible" existence of jurisdiction. Contrary to Defendants' assertion, Plaintiffs do not rely on a "bare assertion" in their Master Complaint to establish personal jurisdiction over the French Defendants. Rather, Plaintiffs' Master Complaint details public statements and actions by Sanofi and its predecessor entities demonstrating the control or central management of its subsidiaries, including Aventis Pharma SA, the U.S. Defendants, and predecessor entities, and describing Sanofi's orchestrated expansion into the U.S. prescription drug market, which allowed Taxotere's market share to increase exponentially. (Compl. ¶¶ 12-31, Doc. 312.)  These allegations provide the requisite preliminary showing of jurisdiction that entitles Plaintiffs to their requested limited jurisdictional discovery.

Defendants nonetheless argue that Plaintiffs cannot establish sufficient jurisdictional contacts *even if* Defendants produce responsive documents showing ownership, shared general policies, centralized bank accounts, compensation programs, and the like. (Defs. Disc. Opp., Doc. 694 at 9.) As such, Defendants resist any discovery request that would reveal such evidence. This argument is doubly flawed.

First, none of Defendants' cases suggest evidence of this nature is irrelevant to any jurisdictional analysis. (*See id*.) The Supreme Court's opinion in *United States v. Bestfoods*, 524 U.S. 51 (1998), is inapposite and did not concern personal jurisdiction at all, but rather a parent corporation's liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 and Michigan veil-piercing law. In any event, less stringent standards apply to jurisdiction than to liability. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir.

1983) (noting "less stringent standard for alter ego jurisdiction than for alter ego liability"). While the case of *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990), concerned personal jurisdiction, it imposed no bright-line rule for when a parent-subsidiary relationship will support the assertion of jurisdiction over a foreign parent. Lastly, the unpublished decision in *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 332 (5th Cir. 2011), only supports Plaintiffs' inquiry into ownership, shared general policies, centralized bank accounts, and compensation programs because such evidence is relevant to the corporate relationship between the French and U.S. Defendants.

Second, and most critically, it is not appropriate to decide—in the context of a relevancy objection in a discovery dispute no less—which potential evidence, standing alone or cumulatively, may ultimately demonstrate a sufficient jurisdictional basis over the French Defendants. "[Q]uestions of personal jurisdiction do not lend themselves to categorical determinations." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1224–25 (3d Cir. 1992). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); *accord Seghers v. El Bizri*, 513 F. Supp. 2d 694, 702 (N.D. Tex. 2007). Defendants' attempt to foreclose even an inquiry into certain aspects of its corporate relationship with U.S. entities thus fails, as Defendants cannot show that any of Plaintiffs' requests seek irrelevant information.

## II. DEFENDANTS VASTLY OVERSTATE THE INFORMATION THEY HAVE PROVIDED TO PLAINTIFFS

In their Opposition, the French Defendants claim they have already provided "full responses" to 22 out of 45 interrogatories and are therefore unclear as to what "additional

4

information Plaintiffs <u>actually</u> need." (Defs. Disc. Opp., Doc. 694 at 8 (original emphasis).)  To the contrary, closer examination reveals that the information provided is hardly complete. For instance, no U.S. Defendant has responded to Plaintiffs' Interrogatories despite their agreement to following Judge Engelhardt's instruction at the July 2017 status conference. In addition, the French Defendants have unilaterally decided not to answer *any* of Plaintiffs' Interrogatories on behalf of predecessor entities, claiming that these entities are not relevant to the jurisdictional analysis. This position ignores well-established precedent that where a successor entity is considered to be a mere continuation of a predecessor entity, the liabilities and contacts of the predecessor entity are imputed to successor entities.  *See, e.g., Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999; *Minnesota Mining & Mfg. Co. v. Eco Chem. Inc.*, 757 F.2d 1256, 1264–65 (Fed. Cir. 1985); *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939, 945–46 (D.Del. 1977).

The prejudicial effect of Defendants' refusal to answer on behalf of predecessor entities is evidenced by the Response to Interrogatory No. 5, which requests the identity of officers and directors common to the French Defendants, the U.S. Defendants, [2] and their predecessor entities. Through separate investigation, Plaintiffs have learned of multiple instances in 2002 alone in which an officer or director of one of the French Defendants or their predecessor entities concurrently served as an officer or director of a predecessor entity to one the U.S. Defendants. For example, Theirry Soursac served as Chairman of the Supervisory Board of Aventis Pharma

---

[2] *See* Ex. B, Defs' Resp. to Plfs. Jurisdictional Req. for Prod. 1, June 30, 2017. Originally, Interrogatory No. 5 was broader, seeking this information for all U.S. subsidiaries (and their predecessor entities) involved in the prescription drug business. Through the meet and confer process, Plaintiffs agreed to limit this and other interrogatories to the U.S. Defendants with the caveat that they request encompass predecessor entities. Despite this attempt at compromise, the French Defendants elected not to respond on behalf of predecessor entities.

5

S.A. (a French Defendant) while also serving on the Board of Directors of Aventis Pharmaceuticals Inc. (U.S. predecessor entity). Similarly, Igor Landau served as Chairman of the Management Board of Aventis SA (French predecessor entity) while also serving on the Board of Directors of Aventis Inc. (U.S. predecessor entity).  Despite this, the French Defendants swear in response to Plaintiffs' Interrogatory No. 5 that:

> [N]o past officers or directors of Sanofi have gone on to serve as officers or directors of Sanofi US Services Inc. or sanofi-aventis U.S. LLC. Likewise, no past officers or directors of Sanofi US Services Inc. or sanofi-aventis U.S. LLC have gone on to serve as officers or directors of Sanofi.[3]

Had the French Defendants responded on behalf of predecessor entities as requested by Plaintiffs, Mr. Soursac and Mr. Landau, among others, would have been disclosed to Plaintiffs. Defendants' Response to Interrogatory No. 5 is additionally deficient in that it is limited to officers and directors that have "gone on to serve" as officer or director for another Sanofi Defendant and does not disclose individuals that may have concurrently served as officers or directors for multiple Sanofi Defendants.  Finally, the French Defendants' response, on its face, does not answer on behalf of Aventis Pharma S.A.

Notably, the French Defendants highlight in their Opposition their blatantly incomplete Response to Interrogatory No. 5 as a basis for claiming that Plaintiffs require no additional information to respond to the motion to dismiss. (Defs. Disc. Opp., Doc. 694 at 7-8.)  The French Defendants also point to other information allegedly provided to Plaintiffs—namely, information regarding:

> (1) how Sanofi S.A. allocates and mitigates losses between it and its U.S. subsidiaries, as well as its foreign exchange risk management system; (2) how Sanofi S.A. manages aspects of the "operational risk" of its U.S. subsidiaries; (3) how Sanofi S.A. manages any cash surplus and/or cash pooling arrangement with its U.S. subsidiaries; (4) whether any of their executives or board of directors have

---

[3] *Id.* at 21.

> held the same position with their U.S. subsidiaries (and *vice versa*); and (5) how Sanofi S.A. defines strategic priorities or coordinates work with its subsidiaries, among other information.

(Defs. Disc. Opp., Doc. 694 at 7.) Again, closer inspection reveals that the information provided by Defendants is qualified in nearly every single aspect to the point that it is virtually meaningless and avoids large portions of information requested in Plaintiffs' Interrogatories. To further demonstrate this for the Court, Plaintiffs address each point below in turn:

> (1) The French Defendants claim they have provided information on "(1) how Sanofi S.A. allocates and mitigates losses between it and its U.S. subsidiaries, as well as its foreign exchange risk management system"

Plaintiffs' Interrogatories Nos. 9 and 10 address this topic, requesting an explanation as to how (a) the French Defendants and their predecessors, have allocated and mitigated their losses between the U.S. Defendants and their predecessors and (b) how the French Defendants and their predecessors have allocated and mitigated their losses amongst themselves.[4] In response, the French Defendants improperly limit their response to Sanofi without addressing predecessor entities or Aventis Pharma S.A., providing that "Sanofi states that its accounting practices, including the allocation and mitigation of losses, comport with all laws governing Sanofi. Additionally, Sanofi subsidiaries sanofi-aventis U.S. LLC and Sanofi US Services Inc. allocate and mitigate their losses, if any, independently of Sanofi."[5] No other information is provided. This bare statement does not allow Plaintiffs to traverse its accuracy or validity.

> (2) The French Defendants claim they have provided information on "(2) how Sanofi S.A. manages aspects of the "operational risk" of its U.S. subsidiaries"

This topic pertains to Plaintiffs' Interrogatories Nos. 11 which requests that Defendants provide the following information:

---

[4] *Id.* at 23-24.
[5] *Id.*

7

> Describe the foreign exchange risk management system, including as identified in the Sanofi Aventis 2008 20-F § C. Organization Structure, page 66, and describe any positions entered into to manage the operational risks of U.S. subsidiaries involved in the prescription drug business:
>
>> "The holding company also operates a centralized foreign exchange risk management system, which enters into positions to manage the operational risks of its main subsidiaries." [6]

In response, the French Defendants admit that Sanofi operates a "centralized foreign exchange risk management system … to address potential foreign exchange risk movements between the transactional currency and the functional currency of its subsidiaries."[7] This Response does not answer on behalf of predecessor entities, describe any positions entered to manage the operational risks of the U.S. Defendants and their subsidiaries, or address how, when, or by whom the operational risk management system was created or operated; who makes decisions regarding the system; when it is used; how frequently it is used; and who owns, operates governs, or controls the system.

> (3) The French Defendants claim they have provided information on (3) how Sanofi S.A. manages any cash surplus and/or cash pooling arrangement with its U.S. subsidiaries

Plaintiffs' Interrogatory No. 13 is applicable to this topic, specifically requesting that Defendants:

> Describe the cash pooling arrangement operated by Sanofi during the Relevant Time Period, including as identified in the Sanofi 2015 20-F § C. Organization Structure, page 73, and identify U.S. subsidiaries involved in the prescription drug business that have participated in this cash pooling arrangement:
>
>> "The Sanofi [*sic*] parent company operates a cash pooling arrangement under which any surplus cash held by subsidiaries is managed centrally."[8]

---

[6] *Id.* at 24-25.
[7] *Id.* at 25.
[8] *Id.* at 26-27.

8

Defendants' Response to this interrogatory acknowledges the existence of a cash pooling arrangement but contains only general information regarding that pooling arrangement which is allegedly "consistent with those of a typical parent holding company."[9] This program is obviously relevant to proving jurisdiction, was not revealed in the motion or declaration, and must be fully explored.  Defendants' Response does not describe how, when, or by whom the program was created or operated; who makes decisions regarding the program and when it is used; how frequently it is used; who owns, operates governs, or controls the money once it is pooled; how the money is redistributed; etc.

> (4) The French Defendants claim they have provided information on (4) whether any of their executives or board of directors have held the same position with their U.S. subsidiaries (and *vice versa*)

This topic is covered in Plaintiffs' Interrogatory No. 5, and the inadequacy of Defendants' response is described *supra* on page 5.

> (5) The French Defendants claim they have provided information (5) how Sanofi S.A. defines strategic priorities or coordinates work with its subsidiaries, among other information.

Plaintiffs' Interrogatory No. 5 addresses this topic and requests that Defendants:

> Describe how you interacted with U.S. subsidiaries involved in the prescription drug business in defining strategic priorities, coordinating work, or taking out the industrial property rights, including as described in the Sanofi Aventis 2008 20-F § C. Organization Structure, page 66:
>
>> "Within the Group, the holding company oversees research and development activities, by defining strategic priorities, coordinating work, and taking out the industrial property rights under its own name and at its own expense."[10]

---

[9] *Id.* at 27.
[10] *Id.* at 33-34.

9

Defendants' Response to Interrogatory No. 20 essentially regurgitates the language of the request, stating that Sanofi "observed" research and development activities, workflow, strategic priorities, and industrial property rights with respect to its subsidiaries, but then acknowledges that "Sanofi helped define general business strategies related to Taxotere."[11] No other additional information is provided regarding the extent and nature of Sanofi's "observations" nor does the Response provide any information on the "general business strategies" defined by Sanofi.

In addition, Defendants attempt to rely upon the Declaration of Claire Terrazas in responding to Interrogatory Nos. 3, 14, 19, 23, 24, 25, 32 and 34. According to her declaration, Ms. Terrazas is "employed as Vice President and Head of Corporate Legal Affairs of Sanofi."[12] Largely, Ms. Terrazas' Declaration contains self-serving statements regarding the structure and activities of the French Defendants. However, the statements contained in the Declaration are not responsive to information sought by Plaintiffs' specific Requests for Production. Notably, Ms. Terrazas' affirmative declarations specifically exclude information concerning any predecessor entities. Therefore, Defendants' attempts to rely on Ms. Terrazas' Declaration is misplaced and unresponsive. For example, Plaintiffs' Interrogatory No. 14 requests that Defendants:

> Identify all investments, holdings, or assets of any kind, including bank accounts, real estate, and personal property located in the United States in which you have or had any direct, indirect or beneficial ownership interest.[13]

In response, Defendants referenced "Paragraphs 14, 17-20, 24-25, 37, and 43-44 of the Declaration of Claire Terrazas."[14] These paragraphs, however, provide no responsive information to Plaintiffs' Interrogatory. Instead, the Terrazas Declaration provides a narrowly-tailored, self-serving listing

---

[11] *Id*.
[12] Ex. C, Terrazas Declaration ¶ 1, April 28, 2017.
[13] *Id.* at 28.
[14] *Id*.; *see also* Ex. C ¶¶ 14, 17-20, 24-25, 37, & 43-44

of Sanofi and Aventis Pharma S.A.'s activities in the U.S. The paragraphs cited specifically ignore predecessor entities and do not address the French Defendants' "direct, indirect or beneficial ownership interest" in any "investments, holdings or assets of any kind". Not surprisingly, Defendants' response *does not* simply state that no such ownership or interests exists. Instead, they attempt to parse terms and provide only that information they see fit.

Similarly, in response to Interrogatory No. 19, which requests that Defendants "[i]dentify any and all circumstances in which you have or had participation or veto power over the business decisions for its U.S. subsidiaries involved in the prescription drug business,"[15] Defendant cite to the Terrazas Declaration—specifically paragraphs 14, 22-25, 27, 29-30, 33, 35-37.[16] However, none of information contained in these cited paragraphs is responsive to Interrogatory No. 19. Terrazas' Declaration excludes predecessor entities and the general, self-serving statements concerning what Ms. Terrazas "considers" to be the corporate structure, the locations of business headquarters, contracting practices, etc., do not provide information which is responsive. Curiously, once again, Defendants *do not* simply assert they, nor their predecessors, had any "participation or veto power over the business decisions for its U.S. subsidiaries."."

As shown above, Defendants' discovery responses and opposition briefing are a naked attempt to pick and choose the discovery to which they would like to respond while likewise claiming that Plaintiffs have been given everything they need to oppose the motion to dismiss. This proposed method to respond to discovery violates basic principles of litigation. Defendants are not the decider of whether Plaintiffs have been provided sufficient information nor are Defendants permitted to ignore Plaintiffs' discovery.

---

[15] *Id.* at 32.
[16] *Id.* at 33; *see also* Ex. C ¶¶ 14, 22-25, 27, 29-30, 33, 35-37.

### III. PLAINTIFFS' REQUESTS ARE SUFFICIENTLY TAILORED TO PERSONAL JURISDICTION.

Lastly, Defendants suggest that Plaintiffs' discovery requests overlap with discovery that could be sought on the merits, and thus should be denied or curtailed. To the contrary, Plaintiffs' jurisdictional discovery is appropriately tailored to the jurisdictional inquiry. This includes the timeframe of Plaintiffs' inquiry. Though not mentioned by Defendants, the parties have met and conferred on the timeframe and Plaintiffs verbally agreed to limit their requests to the U.S. Defendants and predecessor entities, and for most requests, between 1997 and 2011.

As further shown in Exhibit A attached hereto, Defendants gamely attempt to rewrite Plaintiffs' requests so that these requests are limited to proving only an alter-ego jurisdictional theory. This is not how litigation works. As Judge North has observed, Plaintiffs are "entitled to do discovery on their theories as long as they're filing motions and they're trying to advance those theories with the district judge. Whether [Defendants] agree with them or not, if they're colorable, then [Plaintiffs are] going—they have to be able to do some discovery to support it." Disc. Hr'g, Tr. 18:1-6 (July 16, 2017). Plaintiffs' discovery requests match their jurisdictional theories and allegations in the Master Complaint. As such, the Court should compel Defendants to respond to the appropriate jurisdictional discovery Plaintiffs served on them.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Compel the responses to Plaintiffs' jurisdictional discovery requests.

Dated: August 1, 2017                              Respectfully submitted,

*/s/ Christopher L. Coffin*                         */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)              Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.     GIBBS LAW GROUP LLP

| | |
|---|---|
| 1515 Poydras Street, Suite 1400<br>New Orleans, LA 70112<br>Phone: 504-355-0086<br>Fax: 504-523-0699<br>ccoffin@pbclawfirm.com | 400 Continental Boulevard, 6th Floor<br>El Segundo, CA 90245<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com |
| *Plaintiffs' Co-Lead Counsel* | *Plaintiffs' Co-Lead Counsel* |
| */s/M. Palmer Lambert*<br>M. Palmer Lambert (#33228)<br>GAINSBURGH, BENJAMIN, DAVID,<br>MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com | */s/Dawn M. Barrios*<br>Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com |
| *Plaintiffs' Co-Liaison Counsel* | *Plaintiffs' Co-Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Anne Andrews<br>Andrews Thornton Higgins Razmara, LLP<br>2 Corporate Park, Suite 110<br>Irvine, CA 92606<br>Phone: (800) 664-1734<br>aa@andrewsthornton.com | Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@atkinsandmarkoff.com |
| J. Kyle Bachus<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>kyle.bachus@coloradolaw.net | Abby E. McClellan<br>Stueve Siegel Hanson LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>Phone: (816) 714-7100<br>Fax: (816) 714-7101<br>mcclellan@stuevesiegel.com |
| Lawrence J. Centola, III<br>Martzell, Bickford & Centola<br>338 Lafayette Street<br>New Orleans, LA 70130<br>Phone: (504) 581-9065 | Karen Barth Menzies<br>Gibbs Law Group LLP<br>400 Continental Boulevard, 6th Floor<br>El Segundo, CA 90245<br>Phone: 510-350-9700 |

Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Phone: (504) 355-0086
Fax: (504) 523-0699
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
The Lambert Firm, PLC
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
ejeffcott@thelambertfirm.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
Simmons Hanly Conroy
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2251
dmiceli@simmonsfirm.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 1, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

               */s/ M. Palmer Lambert*
               M. PALMER LAMBERT