# EXHIBIT A

**RESPONSES TO DEFENDANTS' PROPOSED
REPHRASING OF PLAINTIFFS' REQUESTS FOR PRODUCTION**

**Plaintiffs' Request No. 1:** Produce tax returns for years 1997-2016 for your U.S. subsidiaries involved in the manufacture, distribution, or sale of Taxotere.

> ***Defendants' Suggested Rephrasing:*** *Produce the tax returns from 2009-2016 for sanofi-aventis U.S. LLC and Sanofi US Services Inc.*

> **Defendants' Reasoning:** The tax returns of every U.S. subsidiary for a twenty-year period will not show that the U.S. Defendants are an "alter-ego" of the French Defendants. Rather than "all" U.S. subsidiaries, this request should also be limited to the U.S. Defendants, and the timeframe should be limited to the IRS retention period for federal tax purposes. With this understanding in mind, the U.S. Defendants will endeavor to make relevant portions of their Federal tax returns from 2009-2016 available for inspection.

**Plaintiffs' Response:**

Plaintiffs' request is sufficiently narrow in that it seeks tax returns from only those U.S. Defendants and their predecessors during the time in which Taxotere has been approved for sale in the U.S.[1] Based on meet and confers with Defendants, Plaintiffs understand Defendants' primary objections to be: (1) the requests seeks tax returns from predecessor entities and (2) the 19-year timeframe of the request.

Regarding Defendants' first objection, it is well established that where a successor entity is considered to be a mere continuation of a predecessor entity, the liabilities and contacts of the predecessor entity may be imputed to the successor. *See, e.g. Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999; *Minnesota Mining & Mfg. Co. v. Eco Chem. Inc.*, 757 F.2d 1256, 1264–65 (Fed.Cir. 1985); *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939, 945–46 (D.Del. 1977). Defendant's argument that the tax returns "will not show that the U.S. Defendants are an 'alter-ego' of the French Defendants"

---

[1] During a prior meet and confer, Plaintiffs agreed to limit this Request to the U.S. Defendants and their predecessors.

reflects an overly constricted view of the term "relevant" under Rule 26(b)(1). As the Supreme Court has stated, the term "relevant" under Rule 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Defendants have not suggested that the tax returns themselves could not reasonably lead to other facts that "*could* bear on *any* issue that is *or may be*" relevant to personal jurisdiction. *Id.* Nor have Defendants argued that the tax returns themselves are irrelevant under this broad definition.

Regarding Defendants' second objection, the 19-year timeframe requested by Plaintiffs is relevant as it encompasses the years in which Defendants, including their predecessor entities, marketed Taxotere in the United States.  Defendants seek to arbitrarily restrict the timeframe to the past seven years (2009-2016).  This timeframe is inappropriate as Defendants lost U.S. market exclusivity of Taxotere in 2011, which resulted in a significant reduction of Taxotere sales. Accordingly, Plaintiffs' are willing to limit this Request to the U.S. Defendants and their predecessor entities and to a narrower timeframe of 1997-2011.

**Plaintiffs' Request No. 2**: Produce all documents regarding your cash pooling arrangement with U.S. subsidiaries involved in the prescription drug business, including as described in the Sanofi 2015 20-F § C Organization Structure, page 73: "The Sanofi [sic] parent company operates a cash pooling arrangement under which any surplus cash held by subsidiaries is managed centrally."

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to describe the cash pooling arrangement between Sanofi and the U.S. Defendants, as described in Sanofi 2015 20-F § C Organization Structure, page 73: "The Sanofi [sic] parent company operates a cash pooling arrangement under which any surplus cash held by subsidiaries is managed centrally."*

> **Defendants' Reasoning:** Any cash pooling arrangement or other cash management technique with Sanofi's U.S. subsidiaries does not establish that the U.S. Defendants are the "alter-ego" of the French Defendants (nor is this Request limited or specific to Taxotere®). Moreover, Defendants already provided detailed information responsive to this Request under Plaintiffs' Interrogatory No. 13. As indicated, Sanofi US Services Inc. from time to

time transfers cash surpluses to one of its U.S. affiliates. This U.S. affiliate pools the cash from its subsidiary into one U.S. bank account, which provides better interest rates given its larger volume. These surpluses, if any, may eventually be transferred to Sanofi, and held and reported to shareholders. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of these arrangements to the extent reasonably practicable.[2]

**Plaintiffs' Response:**

Plaintiffs' request is sufficiently narrow in that it seeks documents regarding the Defendants' cash pooling arrangement under which the parent company manages cash for its subsidiaries.  Defendants claim that they have already "provided detailed information responsive to this Request under Plaintiffs' Interrogatory No. 13" is unfounded. The last paragraph of Defendants' Response to Interrogatory No. 13 admits the existence of this cash pooling arrangement but provides only general information regarding the arrangement which is allegedly "consistent with those of a typical parent holding company." Defendants' response to Interrogatory No. 13 does not describe the how, when, or by whom the program was created or operated; who makes decisions regarding the program and when it is used; how frequently it is used; who owns, operates governs, or controls the money once it is pooled; how the money is redistributed; etc.

Next, regarding Defendants' objection to producing on behalf of predecessor entities and the relevancy of Plaintiffs' request to "alter-ego," Plaintiffs refer Your Honor to paragraph 2 of Plaintiffs' response to Request No. 1, and further note that Plaintiffs theories of jurisdiction are not limited to "alter-ego" despite Defendants' contentions otherwise.

Finally, Plaintiffs are willing to limit this Request to the French Defendants, the U.S. Defendants, and their predecessor entities.  In addition, Plaintiffs are willing to further narrow

---

[2] Defendants frequently state that they "will endeavor to produce … to the extent reasonably practicable."  Defendants deadline to respond is more than 30 days overdue with not one document produced to Plaintiffs.  Furthermore, Plaintiffs are unclear as to the meaning of "extent reasonably practical" and object inasmuch as it seeks to eliminate any requirement that Defendants fully respond to Plaintiffs' discovery requests.

Request No. 2 to following topics related to Defendants' cash pooling arrangement with the caveat

that Plaintiffs be permitted to supplement these topics depending upon the documents received:

1.      Start date and duration of the cash pooling arrangement

2.      Frequency of transactions under the arrangement by U.S. Defendants and their predecessor entities since the inception of the arrangement;

3.      Amount of money pooled on an annual basis from each U.S. Defendant and their predecessor entities since the inception of the arrangement;

4.      Circumstances triggering use of the arrangement.

5.      Management and use of the pooled monies

6.      Management and use of interest or losses earned on pooled monies.

7.      Amount of money earned (or lost) as a result of the arrangement

8.      All past and current operational policies and instructions regarding the use and purpose of the arrangement; and

9.      Documents, including communications and financial transactions, reflecting use of the arrangement by Sanofi and the U.S. Defendants for the last 5 years.

**Plaintiffs' Request No. 3**: Produce all documents regarding the shifting, sharing, commingling, or allocating of costs, fees, profits, awards, or liabilities between or among you and your U.S. subsidiaries involved in the prescription drug business.

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to describe the general sharing of costs or liabilities between Sanofi and the U.S. Defendants.*

> **Defendants' Reasoning:** Defendants suggest Plaintiffs withdraw this Request, because, as best can be understood, it seeks the same information as Request No. 2.

**Plaintiffs' Response:**

Defendants take the position Request No. 3 should be withdrawn because it seeks the same

information sought by Request No. 2.  A simple reading of the requests reveals that Request No.

2 focuses on the cash pooling arrangements whereas Request No. 3 seeks documents related to

how the entities shift, share or allocate costs, fees, profits, award and/or liabilities.  While there

may some overlap between information responsive to Request Nos. 2 and 3, this Request clearly

seeks distinct, discoverable information.

Further, Defendants assert that Request No. 3 is subsumed by the information sought in Request No. 2. However, Defendants' response to Request No. 2 relies on their deficient Response to Interrogatory No. 13, which in no way addresses how the entities shift, share or allocate costs, fees, profits, award and/or liabilities. Consequently, any reliance on their Response to Request No. 2—which relies on Interrogatory Response No. 13—is entirely misplaced.

Importantly, Plaintiffs' Interrogatories No. 9 and 10 address some of the topics for which Plaintiffs seek documents in Request No. 3—specifically, the Interrogatories seek information regarding the allocation and mitigation of losses. Defendants' response to these Interrogatories likewise fails to provide complete information. Defendants merely state that they follow the law and the U.S. entities allocate their losses independently of Sanofi. This bare statement does not allow Plaintiffs to traverse its accuracy or validity. Moreover, Defendants' response does not provide any information regarding the "shifting, sharing, commingling, or allocating" of "costs, fees, profits, awards, or liabilities" other than the allocation of losses.

Moreover, Defendants have not suggested that the Request could not reasonably lead to the discovery of information which could bear on an issue relevant to personal jurisdiction. Nor have Defendants argued that production of this information is burdensome. Plaintiffs are willing to limit this Request to a narrower timeframe from 1997-2011. Defendants should be required to respond fully to this narrower Request.

**Plaintiffs' Request No. 4:** Produce all documents regarding the financial relationship between or among you and your U.S. subsidiaries involved in the prescription drug business, including documents showing or indicating inter-company financing or capital funds flow between or among entities.

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to describe Sanofi's use of inter-company financing or cash surplus management between Sanofi and the U.S. Defendants.*

> **Defendants' Reasoning:** As previously noted in response to Request No. 2, even if Sanofi

uses some cash management technique or inter-company financing, this will not establish that the U.S. Defendants are an "alter-ego" of the French Defendants (nor is this Request limited or specific to Taxotere®). Besides, the French Defendants provided detailed information responsive to this Request under Interrogatory No. 12, explaining that, consistent with typical parent holding company responsibilities, Sanofi manages cash surpluses of its subsidiaries and finances certain activity of its subsidiaries, as necessary. For example, Sanofi may issue term loans to Aventis Inc. Such loans are repaid with income derived from the subsidiaries' business activities, including their cash surpluses. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of such financing to the extent reasonably practicable.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks documents regarding the financial relationship between the French and U.S. Defendants in this matter, including inter-company financing and the flow of capital funds. Defendants' claim that this Request has been adequately addressed by the "detailed information" allegedly supplied in response to Interrogatory No. 12 is unfounded. Defendants' Response to Interrogatory No. 12 admits that such financing and capital funds flow exists between the Defendants but contains only general information regarding its management of cash surpluses and financing of its subsidiaries which is allegedly "consistent with the responsibilities of a typical parent holding company." Interrogatory Response No. 12 does not describe how, when, or by whom the inter-company financing and/or capital funds flow activities are accomplished; when Defendant began to undertake these activities; who makes decisions regarding these activities; when it is used; how frequently it is used; who owns, operates governs, or controls the financing and/or flow of capital funds; etc.

Consequently, Defendants should not be allowed to unilaterally limit the production to only those "illustrative" documents it might choose to produce. Defendants have not suggested the documents sought could not reasonably lead to the discovery of information which could bear on any issue relevant to personal jurisdiction. Nor have Defendants argued that production of these inter-company financing and capital funds flow documents is burdensome.

Moreover, Defendants have not suggested that the Request could not reasonably lead to the discovery of information which could bear on an issue relevant to personal jurisdiction. Nor have Defendants argued that production of this information is burdensome. Plaintiffs are willing to limit this Request to a narrower timeframe from 1997-2011. Defendants should be required to respond fully to this narrower Request.

**Plaintiffs' Request No. 5**: Produce all documents regarding the financing and cash surplus management provided by Sanofi to any of its U.S. subsidiaries involved in the prescription drug business, including as described in Sanofi 2011 20-F § Organization structure, page 82: "For most Group subsidiaries, Sanofi provides financing and centrally manages their cash surpluses."

> **Defendants' Reasoning:** Defendants suggest Plaintiffs withdraw this Request, as it seeks the same information as Request No. 4.

**Plaintiffs' Response:**

Defendants take the position Request No. 5 should be withdrawn because it seeks the same information sought by Request No. 4. A simple reading of the requests reflects Request No. 4 focuses on "inter-company financing or capital funds flow between or among the entities" while Request No. 5 seeks documents related to all financing arrangements and the management of cash surpluses. While there may some overlap between information responsive to Request Nos. 4 and 5, this Request clearly seeks distinct, discoverable information. Sanofi has apparent control over the profits, cash, fees, financing and loans of its subsidiaries, and the right to exercise that control impacts the whether it is subject to U.S. jurisdiction.

Further, Defendants attempt to assert Request No. 5 is subsumed by the information sought in Request No. 4. However, their response to Request No. 4 attempts to rely on their Response to Interrogatory No. 12 which generally addresses inter-company loans and their repayment. Interrogatory No. 12 does not address all financing arrangements nor the management of cash surpluses.

Moreover, Defendants have not suggested that the Request could not reasonably lead to the discovery of information which could bear on an issue relevant to personal jurisdiction. Nor have Defendants argued that production of this information is burdensome. Plaintiffs are willing to limit this Request to a narrower timeframe from 1997-2011. Defendants should be required to respond fully to this narrower Request.

**Plaintiffs' Request No. 6**: Produce all documents regarding your managing the operational risks of U.S. subsidiaries involved in the prescription drug business, including as described in the Sanofi Aventis 2008 20-F § C Organization Structure, page 66: "the holding company also operates a centralized foreign exchange risk management system, which enters into positions to manage the operational risks of its main subsidiaries."

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to describe Sanofi's approach to the management of operational risks, if any, of the U.S. Defendants.*
>
> **Defendants' Reasoning:** Even if Sanofi manages the operational risks of its U.S. subsidiaries, this information has nothing to do with Plaintiffs' allegations that the U.S. Defendants are the alter-ego of the French Defendants (nor is this Request limited or specific to Taxotere®). In addition, the Request is clearly outside the scope of jurisdictional discovery, as it seeks "all documents" related to all "U.S. subsidiaries." Besides, the French Defendants provided detailed information responsive to this Request under Interrogatory No. 11, explaining that Sanofi's centralized foreign exchange risk management system consists of contracting hedges, when permissible by law, if there is a risk of currency fluctuation between the date a subsidiary agrees to a contract and the date the payment is due to the subsidiary. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of this system to the extent reasonably practicable.

**Plaintiffs' Response:**

Plaintiffs' request is sufficiently narrow in that it seeks documents regarding the Defendants' management of the subsidiaries' operational risk including the operation of a centralized foreign exchange risk management system. Defendants nonetheless take the position they have "provided detailed information responsive to this Request under Plaintiffs' Interrogatory No. 11.

As an initial matter, Defendants' suggested rephrasing limiting documents that describe "*Sanofi's approach to the management of operational risks*" would omit documents detailing the

full extent of the program and Sanofi's authority thereunder.   That suggestion again avoids answering part of the question that is relevant to the jurisdictional inquiry.

Further, Defendants' reliance upon the "detailed information" allegedly supplied in response to Interrogatory No. 11 is unfounded. The only substantive paragraph of Defendants' Response to Interrogatory No. 11 states that Sanofi operates a "centralized foreign exchange risk management system … to address potential foreign exchange risk movements between the transactional currency and the functional currency of its subsidiaries."   This system is relevant to the jurisdictional analysis and must be fully explored.  Interrogatory Response No. 11 does not describe how, when, or by whom the operational risk management system was created or operated; who makes decisions regarding the system; when it is used; how frequently it is used; and who owns, operates governs, or controls the system.

Moreover, Defendants have not suggested that the Request could not reasonably lead to the discovery of information which could bear on an issue relevant to personal jurisdiction.  Nor have Defendants argued that production of this information is burdensome. Plaintiffs are willing to limit this Request to a narrower timeframe from 1997-2011.  Defendants should be required to respond fully to this narrower Request.

**Plaintiffs' Request No. 7**: Produce all contracts, agreements, commitments, and arrangements between you and U.S. subsidiaries regarding the sales, marketing, or business of Taxotere.

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to reflect contracts or agreements between Sanofi and the U.S. Defendants regarding the sale, marketing, or business of Taxotere in the United States.*
>
> **Defendants' Reasoning:** As set forth in its Motion to Dismiss and supporting documents, Sanofi never researched, developed, tested, manufactured, labeled, advertised, marketed, promoted, sold, and/or distributed Taxotere® (docetaxel) in the United States. Sanofi-aventis U.S. LLC is the holder of the approved New Drug Application (NDA) 020-449 for the active ingredient docetaxel, which has the proprietary name Taxotere®. Further, neither Sanofi- Aventis U.S. LLC nor Sanofi United States Services Inc. can bind Sanofi to contracts or other agreements to which it may enter, all of which is dispositive of Plaintiffs'

personal jurisdiction theory.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently limited to documentation of "all contracts, agreements, commitments, and arrangements between you and U.S. subsidiaries regarding the sales, marketing, or business of Taxotere." Instead of producing any responsive documents (the deadline for which was over thirty days ago), the Defendants attempt to split geographic hairs and refuse to produce documentation of predecessor entities.  Further, Plaintiffs are willing to limit this Request to the French Defendants, the U.S. Defendants, and their predecessor entities and to a narrower timeframe from 1997-2011.  Defendants should be required to respond fully to this narrower Request.

**Plaintiffs' Request No. 8**: Produce all documents that refer to or discuss the ownership or licensing of intellectual property rights, patents, or trademarks related to Taxotere in the United States.

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to describe the ownership or licensing of intellectual property rights, patents, or trademarks related to Taxotere® in the United States by the U.S. Defendants.*
>
> **Defendants' Reasoning:** Licensing of intellectual property will not establish an alter-ego relationship. Further, Defendants have provided detailed information relevant to this Request in response to Interrogatories No. 27, explaining that there was no agreement between the French Defendants and Sanofi US Services Inc. or sanofi-aventis U.S. LLC related to the licensing of Taxotere®. In 1999, Rhone-Poulenc Rorer S.A. assigned ownership of the Taxotere® patents to Aventis Pharma S.A., via a name change conveyance. Pursuant to this transfer, Aventis Pharma S.A. became the sole owner of the Taxotere® patents. Sanofi- aventis U.S. LLC is the entity authorized to market and sell Taxotere® in the United States. In addition, this Request is duplicative of Plaintiffs' general discovery requests, which seek all documents relating to the application or assignment of Taxotere® patents, and all licensing agreements. See Plaintiffs First Set of Requests for Production, Request Nos. 135-137. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of this assignment to the extent reasonably practicable.

**Plaintiffs' Response:**

Plaintiffs' Request seeks documentation related to "the ownership or licensing of

intellectual property rights, patents, or trademarks related to Taxotere in the United States." Instead of producing any responsive documents, the Defendants again attempt to split geographic hairs and refuse to produce documentation of predecessor entities.

Defendants' reliance upon the "detailed information" allegedly supplied in response to Interrogatory No. 27 is unfounded. Defendants' Response to Interrogatory No. 27 contains and admission that Aventis Pharma S.A. owns the Taxotere patent after assignment from Rhone-Poulenc Rorer S.A. and licensed it to Sanofi-aventis U.S. LLC. This arrangement is obviously relevant to proving personal jurisdiction and must be fully explored. Defendants should not be permitted to arbitrarily limit their response by producing only "illustrative" documents and ignoring predecessor and related entities.

Moreover, whether this Request is duplicative of Plaintiffs' general discovery requests is of no moment. Defendants fail to explain why they should not produce the information merely because it has been requested in general discovery. Indeed, by refusing to produce documents until general discovery, the French Defendants have essentially confirmed that responsive information exists that they are intentionally delaying the production of.

Nonetheless, Plaintiffs' are willing to adopt the French Defendants proposed rephrasing as modified below:

> Produce documents sufficient to describe the ownership or licensing of intellectual property rights, patents, or trademarks related to Taxotere® in the United States ~~by the U.S. Defendants~~ and communications by the French Defendants or their predecessors regarding the same.

**Plaintiffs' Request No. 9**: Produce all of your communications with a regulatory agency in the United States regarding Taxotere.

**Defendants' Reasoning:** Defendants suggest that Plaintiffs withdraw this Request, as it

has nothing to do with personal jurisdiction, namely, whether the U.S. Defendants are the alter-ego of the French Defendants, and will not establish that the French Defendants have any Taxotere®- related contacts with the forum state as required for specific jurisdiction. As Defendants indicated in responding to Interrogatory Nos. 31 and 33, sanofi-aventis U.S. LLC is the entity responsible for communicating information related to Taxotere to the FDA, the documents related to which will be produced in general discovery. For example, Plaintiffs' general discovery requests seek Defendants' entire "regulatory file relating to Taxotere," and "all documents" evidencing "communications between you and FDA relating to Taxotere." *See* Plaintiffs' First Set of Requests for Production, Request Nos. 2-3.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks communication with U.S. regulatory agencies regarding Taxotere, which is relevant to the level of control and involvement of the French Defendants and their predecessors in the development and approval of Taxotere—specifically, representations made to U.S. regulatory agencies regarding same.

Further, Defendants' reliance upon the information supplied in their responses to Interrogatory Nos. 31 and 33 is misplaced. Defendants' Responses to Interrogatory Nos. 31 and 33 contains only general information regarding communication with U.S. regulatory agencies. However, no detailed information concerning all Defendants and their predecessor entities' communications has not been provided.

Moreover, whether this Request is duplicative of Plaintiffs' general discovery requests is of no moment. Defendants fail to explain why they should not produce the information merely because it has been requested in general discovery. Indeed, by refusing to produce documents until general discovery, the French Defendants have essentially confirmed that responsive information exists that they are intentionally delaying the production of.

Nonetheless, Plaintiffs' are willing to limit this Request to the French Defendants, the U.S. Defendants, and their predecessor entities and to a narrower timeframe of 1997-2011.

**Plaintiffs' Request No. 10**: Produce all operational policies, international or otherwise, including

standard operating procedures or other policy documents written or used by you, that have been used or followed by U.S. subsidiaries involved in the prescription drug business, in whole or in part, including policies regarding:

>    a.    labelling, including global labelling committee, policies regarding changes in labels, and instructions for use;
>
>    b.    studies, including study selection and management, documentation, investigator agreements, investigator sponsored studies, structure and content of clinical study reports, or other documents related to handling of studies;
>
>    c.    pharmacovigilance, including policies on detecting or processing of safety signals, medical affairs handling of adverse events, handling of spontaneous reports, and reporting required between entities to comply with FDA's or Foreign Regulator Body's regulatory agency requirements;
>
>    d.    medical publications, including information related to global publication clearance or procedures for publications of clinical studies;
>
>    e.    regulatory, including any approval of products, compilation, or submission of information to the FDA or other regulatory bodies; and
>
>    f.    corporate compliance or governance policies.

**Defendants' Reasoning:** Defendants suggest Plaintiffs' withdraw this Request, as it has no bearing on personal jurisdiction over the French Defendants. General "policies" or "standard operating procedures" relating to such categories as "medical publications" or "corporate compliance," will not establish that the U.S. Defendants are the alter-ego of the French Defendants. In addition, documents related to this request will likely be produced in general discovery. For example, Plaintiffs' First Set of Requests seek "all documents" reflecting "standard operating procedures, policies, and guidance relating to" labelling, adverse event collection, communication with healthcare providers, and corporate compliance. *See, e.g.*, Plaintiffs' First Set of Requests for Production, Request Nos. 153-159. Nevertheless, the U.S. Defendants will endeavor to produce documents illustrative of such policies regarding a, b, and e, to the extent reasonably practicable.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks operational policies *written* by the French

Defendants and predecessors, including standard operating procedures utilized by the U.S.

subsidiaries in labeling, studies, pharmacovigilance, medical publications and regulatory

activities.  This information is directly related to the level of control and involvement of the French

entities in the development, approval, marketing, etc.,

14

Moreover, whether this Request is duplicative of Plaintiffs' general discovery requests is of no moment.  Defendants fail to explain why they should not produce the information merely because it has been requested in general discovery.  Indeed, by refusing to produce documents until general discovery, the French Defendants have essentially confirmed that responsive information exists that they are intentionally delaying the production of.

Nonetheless, Plaintiffs are willing to limit this Request to a narrower timeframe from 1997-2011.  Defendants should be required to respond fully to this narrower Request.

**Plaintiffs' Request No. 11**: Produce all communications between you and U.S. subsidiaries regarding adverse event report related to Taxotere.

> **Defendants' Reasoning:** Defendants suggest that Plaintiffs withdraw this Request, as information regarding *any* adverse event worldwide will not establish that the U.S. Defendants are the "alter-ego" of the French Defendants. As Defendants indicated in responding to Interrogatory Nos. 31 and 33, sanofi-aventis U.S. LLC communicates with the FDA about Taxotere®, including reporting adverse events consistent with applicable regulations. Otherwise, more generally, documents related to this Request will be produced in general discovery. For example, Plaintiffs' general discovery requests seek "all internal communications" relating to adverse event report submissions for Taxotere®. *See, e.g.*, Plaintiffs' First Set of Requests for Production, Request No. 19.

**Plaintiffs' Response:**

Plaintiffs' Request seeks communication with the U.S. subsidiaries regarding adverse event reports related to Taxotere.  This information is directly related to the level of control and involvement of the French entities in the monitoring of adverse events related to Taxotere and could demonstrate the control and flow of adverse event information and data by Sanofi to its US counterpart.

Further, Defendants' reliance upon the information supplied in response to Interrogatory Nos. 31 and 33 is unpersuasive.  Defendants' Responses to Interrogatory Nos. 31 and 33 contains only general information regarding communication with U.S. regulatory agencies.

15

Moreover, whether this Request is duplicative of Plaintiffs' general discovery requests is of no moment. Defendants fail to explain why they should not produce the information merely because it has been requested in general discovery. Indeed, by refusing to produce documents until general discovery, the French Defendants have essentially confirmed that responsive information exists that they are intentionally delaying the production of.

Nonetheless, Plaintiffs' are willing to limit this Request to the French Defendants, the U.S. Defendants, and their predecessor entities and to a narrower timeframe of 1997-2011.

**Plaintiffs' Request No. 12**: Produce your communications regarding the marketing of Taxotere in the United States.

> **Defendants' Reasoning:** As indicated on multiple occasions, the French Defendants have not engaged in the research and development, testing, manufacturing, labeling, advertising, marketing, promoting, selling, or distributing of Taxotere® anywhere in the United States. "Communications" regarding said marketing are far too broad to be probative of this more important point. Otherwise, more generally, documents related to this Request will be produced in general discovery.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks communications *regarding* the marketing of Taxotere in the United States. This information is directly related to the level of control and involvement of the French entities in the marketing of Taxotere in the United States. While the French Defendants may not have directly engaged in marketing, their involvement is nonetheless relevant for purposes of personal jurisdiction. The French Defendants fail to explain how Plaintiffs' Request is "far too broad." Given that that Sanofi SA includes sales data from all world regions, including the US in its annual reports, the French Defendants' position is peculiar in that Sanofi S.A. now takes the position that it has no involvement in the marketing and sales of Taxotere in the US.

Moreover, whether this Request is duplicative of Plaintiffs' general discovery requests is

of absolutely no moment.  Defendants make no attempt to explain why they should not produce

the information merely because it has been requested in general discovery.  Indeed, by refusing to

produce documents until general discovery, the French Defendants have essentially confirmed that

responsive information exists that they are intentionally delaying the production of.

Nonetheless, Plaintiffs' are willing to limit this Request to the French Defendants, the U.S.

Defendants, and their predecessor entities and to a narrower timeframe of 1997-2011.

**Plaintiffs' Request No. 13**: Produce all documents regarding your oversight of research and development activities in the United States, including as described in the Sanofi Aventis 2008 20-F § C. Organization Structure, page 66: "within the Group, the holding company oversees research and development activities, by defining strategic priorities, coordinating work, and taking out the industrial property rights under its own name and at its own expense."

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to identify Sanofi's oversight of the U.S. Defendants' Taxotere®-related research and development activities in the United States.*

> **Defendants' Reasoning:**  Defendants provided Plaintiffs with information relevant to this request in response to Interrogatory No. 20, explaining that Sanofi observes developments amongst its various subsidiaries related to its subsidiaries' research and development activities, workflow, strategic priorities, and industrial property rights. Sanofi did not research or develop Taxotere®, or take out industrial property rights under its own name for Taxotere®. Historically, as an indirect parent company, Sanofi helped define general business strategies related to Taxotere® with its various subsidiaries, including its subsidiaries in the United States. The local subsidiary was responsible for the actual implementation of any such general business strategy.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks information concerning the French

Defendants and their predecessors' oversight of research and development activities in the United

States. Defendants' reliance upon the information supplied in response to Interrogatory No. 20 is

unpersuasive.   Interrogatory Response No. 20 states that Sanofi "observed" research and

development activities, workflow, strategic priorities, and industrial property rights with respect

to its subsidiaries, but later states that "Sanofi helped define general business strategies related to

Taxotere."  No other additional information is provided regarding the extent and nature of Sanofi's

"observations" nor does the Response provide any information on the "general business strategies"

defined by Sanofi.

Moreover, Defendants have not suggested that the Request could not reasonably lead to

the discovery of information which could bear on an issue relevant to personal jurisdiction.  Nor

have Defendants argued that production of this information is burdensome. Consequently,

Defendants should be required to fully and completely respond.

**Plaintiffs' Request No. 14**: Produce all documents regarding the implementation of One Sanofi, One HR system in U.S. subsidiaries involved in the prescription drug business, including as described in the Sanofi 2015 Corporate Responsibility Report § A Single HR System Solution, page 65: "the new One Sanofi, One HR [sic] system is being phased in gradually and its related harmonized processes will ultimately support every manager and employee to better drive individual development, career management and business performance."

> ***Defendants' Suggested Rephrasing:*** *Produce documents sufficient to describe the implementation of One Sanofi, One HR system as it relates to the U.S. Defendants.*

> **Defendants' Reasoning:** A global HR policy is entirely irrelevant to showing that the U.S. Defendants are the "alter-ego" of the French Defendants. Nor is it relevant to Taxotere®-related contact with the forum states by Defendants, as necessary to establish specific personal jurisdiction. See, e.g., Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1363 (5th Cir. 1990). Nevertheless, the U.S. Defendants will produce information sufficient to describe the "One Sanofi, One HR" policies, as they relate to the U.S. Defendants.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks information regarding implementation of

One Sanofi, One HR system in U.S. subsidiaries.  Notably, Defendants have likewise ***refused*** to

respond to Plaintiffs' Interrogatory No. 39 regarding the same topic. This information sought in

this Request and Interrogatory No. 39 is directly related to the level of control and involvement of

the French entities.

Moreover, Defendants have not suggested the documents sought could not reasonably lead

to the discovery of information which could bear on any issue relevant to personal jurisdiction.

Nor have Defendants argued that production of these HR system documents is burdensome. Consequently, Defendants should be required to fully and completely respond.

**Plaintiffs' Request No. 15**: Produce all documents regarding your attempt to offer superior compensation to employees of U.S. subsidiaries involved in the prescription drug business, including as described in the 2004 Sanofi Aventis Sustainable Development Report, page 38: "The Group aims to offer all employees in all subsidiaries compensation that is superior to the average salary for the pharmaceutical market."

> **Defendants' Reasoning:** Defendants suggest that Plaintiffs withdraw this Request, as the compensation programs of U.S. subsidiaries has nothing to do with whether or not the U.S. Defendants are the "alter-ego" of the French Defendants. *See, e.g.*, *Dalton*, 897 F.2d at 1363. Nor, again, will this information establish Taxotere®-related contact with the forum states by Defendants, as required toe stablish specific personal jurisdiction.

**Plaintiffs' Response:**

Plaintiffs' Request is sufficiently narrow in that it seeks information regarding Sanofi's attempt to offer superior compensation to employees of U.S. subsidiaries. Notably, Defendants have likewise ***refused*** to respond to Plaintiffs' Interrogatory No. 41 regarding the same topic. The information sought in this Request and Interrogatory No. 41 is directly related to the level of control and involvement of the French entities in day-to-day activities.

Moreover, Defendants have not suggested that the Request could not reasonably lead to the discovery of information which could bear on an issue relevant to personal jurisdiction. Nor have Defendants argued that production of these employee compensation documents is burdensome. Consequently, Defendants should be required to fully and completely respond.