**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                    **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGATION**

**SECTION "N" (5)**

**THIS DOCUMENT RELATES TO**
**ALL CASES**

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

## INTRODUCTION

Having inadvertently received information evidencing non-party financial involvement in MDL 2740—and discovering additional such entities from publicly available sources— Defendant requests the simple disclosure by Plaintiffs of any other non-parties interested in this litigation.  *See* Motion for Disclosure of Non-Party Interested Entities or Persons (Rec. Doc. 559) ("Mot."); Memorandum of Law in Support of Motion for Disclosure of Non-Party Interested Entities or Persons (Rec. Doc. 559-1) ("Memo") 1, 17.

Contrary to Plaintiffs' assertions, <u>Defendant has not requested general capitalization or financial information, such as bank accounts or lines of credit, about the law firms representing Plaintiffs.</u>  Memo 17-18.  Defendant has <u>not</u> accused Plaintiffs or their counsel of any unethical or illegal conduct, including relinquishing control of cases to others.  Memo 17. Defendant has also <u>not</u> requested adoption of a local rule requiring disclosure of all plaintiffs in all matters, but seeks a case-specific order arising out of the unique (though not unprecedented) circumstances of this litigation.  Memo 18.

In response, Plaintiffs have not denied the involvement of interested non-parties in this MDL—and in fact indicate that such involvement may be extensive.  *See* Memorandum in

1

Opposition to Sanofi's Motion for Disclosure of Non-Party Entities or Persons (Rec. Doc. 696) ("Opp.") 16.  Plaintiffs have not alleged that such disclosure would be infeasible, inconvenient, or unduly burdensome.  *See* Opp. 15.  Plaintiffs have not even intelligibly disputed that such a disclosure would promote transparency and integrity in these proceedings.

Instead, Plaintiffs' response is to insist that Defendant's Motion is, in fact, "an accusation of unethical conduct," and to assert that Defendant has not proven its case.  *See* Opp. 17; *see also, e.g.*, Opp. at 5 ("Sanofi Fails to Submit Credible Evidence of Foul Play").  Essentially, Plaintiffs treat Defendant's Motion as if it is a bar complaint, or a criminal charge, and vehemently dispute the sufficiency of the "evidence" to find them "guilty."  *See, e.g.*, Opp. 5 n.4 (characterizing attempts to meet and confer on disclosure as "evidence of guilt").  Plaintiffs steadfastly insist that the mere *request* for identification of financially-interested non-parties is prejudicial, *see* Opp. 16, and that granting it would "harm perceptions of the judiciary and attorneys generally, and plaintiffs' attorneys in particular," "create tensions among Plaintiffs' counsel and their clients," and indicate that the lawyers "cannot be trusted," *see* Opp. 17.  Reviewing the parade of horribles that Plaintiffs predict would result from disclosure, one cannot help but wonder—*what is it they would have to disclose?*

Paradoxically, while adamant that Defendant's request "is an accusation of unethical conduct," Plaintiffs also insist that Defendant's Motion is a surreptitious discovery request.  *See* Opp. 3 ("Although not couched as a discovery request, that is precisely what Sanofi's request is.").  In this light, Plaintiffs' demand for direct evidence of "foul play" prior to disclosure is even <u>more</u> out of place—such a showing is not a prerequisite for discovery, whether of third-party litigation funders ("TPLF") or of insurers, corporate parents or subsidiaries, lienholders,

other financial interest-holders, or any other discoverable information.[1]  Moreover, Plaintiffs' proposed standard for disclosure is circular: in order to discover whether and to what extent third parties are involved in pending litigation, a party would have to prove that they are involved and that their involvement is improper, unethical, or even illegal.

The upshot is that Plaintiffs' Opposition is generally nonresponsive to Defendant's Motion, either misapprehending or intentionally mischaracterizing the nature of the relief requested and Defendant's arguments in support thereof.  To the extent it is considered at all, Plaintiff's vehement protestations of innocence, dire predictions about the consequences of disclosure, and the conduct that they do not deny, but insist cannot be proven—pay-for-diagnosis, lien purchasing, solicitation, fee-splitting, kickbacks, control ceded to non-lawyers, conflicts of interest, etc.—underscore the value of transparency because of what may be at stake. For these reasons and those stated in Defendant's original Memo, this Court should order disclosure of non-party interested entities and persons in MDL 2740.

## LAW AND ARGUMENT

### I.  Defendant Requests Simple Disclosure of Limited, Relevant Information

Because the activities of the interested non-parties identified in Defendant's Memo implicate Plaintiffs' diagnoses, treatment and medical expenses, the disclosure Defendant requests is at very least relevant to Plaintiffs' claims of injury, causation and damages.  *See* Memo 4.  It is also relevant to Defendant's statute of limitations defenses and—as discussed at length by Plaintiffs—to the identification of potential conflicts of interest by this Court, and the dozens of transferee courts upon remand.  *See* Memo 13; Opp. 2, 11-12.

---

[1] Although purporting to require some threshold evidentiary showing before disclosure, Plaintiffs elsewhere state (without citation) that "this Court has ordered that discovery on all MDL Plaintiffs, other than Plaintiffs selected for trial, shall be limited to the Court-approved Plaintiff Fact Sheets (PFSs)," and that Defendants should have included a non-party disclosure request in their proposed PFS.  *See* Opp. 2 n.2.  This contention suggests that Plaintiffs' objection is procedural, not substantive, and that the information would be discoverable if requested via PFS.

The requested disclosure would not, however, require disclosure of Plaintiffs' firms detailed operational finances, direct contingency arrangements with clients, or professional interest in the outcome of the litigation. *See* Memo 17-18. Lawyers and law firms representing named parties are not "nonparties" or "third parties" under any fair reading of the Motion or Memo—which discusses contingency fee and other arrangements only with respect to financiers, physician witnesses, and other similarly nonrepresentative entities. See, e.g., Memo 3 (referring to "third-party solicitors, funders, medical providers, and/or non-record 'co-counsel'" as the entities about which disclosure is sought). As counsel of record, Plaintiffs' attorneys' identity and interest in the pending litigation has already been disclosed. For the removal of doubt, Defendant disclaims any request for disclosure of contingency fee arrangements between clients and their counsel of record.

As noted below, however, notwithstanding Defendant's specific request and Proposed Order, the Court is squarely within its discretion to craft any number of broader or narrower disclosure obligations on the facts presented here. *See infra* pp. 7-8.

## II.     Uncontested Facts and Abundant Legal Authority Support Disclosure

### A.  Plaintiffs Present No Meaningful Factual Dispute

Although targeted disclosure such as Defendant's requires no threshold evidentiary showing, Defendant does present factual predicate for its Motion based on the limited information to which it has access. Importantly, Plaintiffs never deny these facts:

- There are non-parties with financial interests in MDL 2740.
- At least one of these entities—Persist Communications—has offered "Guaranteed diagnosis (alopecia)" for a fee in this litigation.
- A huge amount of money has been spent on advertising soliciting Taxotere-related claims, with particular focus in Louisiana.
- Historically, the combination of third-party funding, lien transactions and aggressive solicitation has resulted in diagnosis of compensable injuries that did not actually exist.

4

Rather than dispute any of these factual assertions, Plaintiffs focus their efforts on alleging bias on the part of advertising researcher Rustin Silverstein and lodging vague, inapposite quibbles with Defendant's descriptions of the identified third parties—descriptions drawn from the limited public information available to Defendant.

Plaintiffs' criticism of Mr. Silverstein is ineffectual.  Mr. Silverstein's research, based on widely accepted and reliable databases, demonstrated an incredible expenditure on attorney advertising in these cases, focused on New Orleans, and far out-pacing the individual case filing numbers.  *See* Memo 4-5.  Plaintiffs' allegations about Mr. Silverstein's views on mass tort abuse[2] do not pretend to counter (i) the facts, (ii) the method, or (iii) the results presented in his report.  Ultimately, it is the straightforward data which counsels in favor of disclosure and with which Plaintiffs take issue, not Mr. Silverstein.[3]

Likewise, Plaintiffs' indignant assertions about the roles actually played by Persist Communications, Record Reform, Knightline Legal, and Law Street Capital underscore the need for further disclosure.  *See* Opp. at 6, 9-10.  Some of Plaintiffs' contentions are downright nonsensical; for example, Plaintiffs explain that Record Reform "purchases medical liens 'from physicians, facilities and hospitals nationwide,' rather than from patients."  But it is precisely the liens created by physicians, purchased by third parties, and claimed *against* plaintiff patients that led to the well-documented, artificial inflation of compensable medical costs in the recent (and ongoing) mesh litigation.  *See* Memo 8 and sources cited therein.[4]

---

[2] Plaintiffs repeatedly accuse Mr. Silverstein of bias, which the Court can take into account when evaluating the relevance of the data submitted, as it does for any expert.

[3] It is not without irony, then, that Plaintiffs request Mr. Silverstein's deposition.  Somehow, discovery on a report on plaintiffs' advertising funding is appropriate, but discovery on the funding of the advertising itself is not?

[4] In the case of Persist Communications, Plaintiffs attempt to explain its operations by citing language from the Persist website that has been added since the inadvertent email to defense counsel was disclosed.  *See* Opp. 6, n.7 (citing cold call disclaimer); *compare* http://web.archive.org/web/20170426072254/http://forpersist.com/ (archived April 26, 2017) (making no disclaimer regarding cold calls) *with* http://forpersist.com/ (last accessed July 26, 2017)

Unlike Plaintiffs, <u>Defendant does not purport to have personal knowledge of these entities' functions or involvement in this litigation</u>. All Defendant knows—and has presented in its Motion—comes either from the entities' own representations of their activities on their public websites, or from the inadvertent email to defense counsel. Plaintiffs' effective admission that third party entities are involved—but steadfast refusal to provide further, meaningful details—raises substantially more questions than it answers.

### B. Plaintiffs' Cited Cases Are Unhelpful

Plaintiffs' legal contentions similarly miss the mark. The few cases cited by Plaintiffs are uninstructive. For example, in *Rhew v. Norfolk S. Ry. Co.*, No. 2:12-cv-526, 2013 WL 5308803, at *3 (N.D. Ind. Sept. 18, 2013), the Court declined to order disclosure to support defendant's arguments on damage offsets and mitigation where such inquiry was otherwise barred by the "collateral source rule." Such issues are not presented here. Moreover, in that case, the plaintiff had produced a signed affidavit addressing litigation financing and the Court was satisfied that bias and outside pecuniary interest had been ruled out. By contrast, Plaintiffs here implore the Court to take their equivocal briefing as the final word on third-party funding issues.[5] Plaintiffs' other cases fare no better. *See, e.g.*, *VHT, Inc. v. Zillow Grp., Inc*, No. 15-cv-1096, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (declining disclosure request related to question of standing in a copyright suit—issues absent here); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350, 2015 WL 5730101, at *3 (S.D.N.Y. Sept. 10, 2015) (declining disclosure request

---

(including cold call disclaimer). As previously noted, Persist has also removed testimonials from Plaintiffs' counsel involved in this case since defense counsel first disclosed the email. *See* Memo 11. What influence Persist is having on the present litigation remains to be uncovered; but by all appearances the litigation is having an effect on Persists' own public representations.

[5] *Compare* Opp. 19 ("attorneys representing these victims on a contingency-fee basis are assuming the financial burden of prosecuting their clients' suits") *and* Opp. 17 ("Plaintiffs alone control this litigation") *with* Opp. 16 ("if Sanofi learns that a small firm or solo practitioner are self-funding Plaintiff's litigation, that information would inform Sanofi's defensive strategy.").

related to adequate capitalization arguments—which Defendant does not make here); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 719 (N.D. Ill. 2014) (declining disclosure where the defendant alleged that the TPLF agreement was illegal—an allegation Defendant has repeatedly disclaimed here).[6]  In this MDL, Defendant has not claimed that any funding agreements are illegal.  Indeed, what Defendant seeks is the fundamental disclosure of *whether such agreements exist*. No case cited by Plaintiffs supports denial of this simple, formulaic request—and Plaintiff offers no rebuttal to the cases supporting disclosure cited by Defendant.  *See, e.g.*, Memo 14-15.

### C.  Plaintiffs' Textual Analysis is Misleading

Grasping for legal support, Plaintiffs erroneously state that the Committee Notes to Rule 7.1 discourage disclosures beyond those enumerated in the Rule.  *See* Opp. 11-12, 14 (claiming that [t]he drafters have already determined that disclosures broader than those listed in Rule 7.1 would be unhelpful.").  On the contrary, the Notes expressly acknowledge that the Rule "does not cover all of the circumstances that may call for disqualification under the financial interest standard, and does not deal at all with other circumstances that may call for disqualification." FED. R. CIV. P. 7.1 advisory committee's note to 2002 adoption.  Plaintiffs' reasoning wrongly suggests that individual Courts are discouraged (if not disabled) from identifying any such disqualifying circumstances—in effect, that any potential conflicts beyond those revealed by the minimum disclosures of Rule 7.1 should just be ignored.  *See* Opp. 11-12, 14.  Such reasoning flies in the face of a district court's imperative to avoid "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455.  Though the Committee declined, at the time, to require broader default disclosures *for all cases under all circumstances*, the Notes make

---

[6] Some four months after Magistrate Judge Jeffrey Cole's opinion in *Miller* was announced, the case was narrowly read by his Northern District of Illinois colleague, District Judge Andrea R. Wood, who declined to follow its reasoning.  *See Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-cv-02518, 2014 WL 1715376, at *2 (N.D. Ill. May 1, 2014) (distinguishing *Miller* because it involved allegations also absent here).

no suggestion that a broader disclosure order by an individual Court, in an individual case, would be inappropriate.[7]  In fact, the Notes expressly contemplate that local practice will vary from the limited disclosures required for all cases in all Courts, and that experience from this practice may inform future amendments to the Rule.  *See id.*; *see also* Memo 13-14.[8]

Compounding their misstatements, Plaintiffs claim that 28 U.S.C. § 455, the judicial recusal statute, "does not cover 'litigation funders.'"  Opp. 3, n.3.  Not so.  Nothing in the definition of "financial interest" or any other provision of 28 U.S.C.A. § 455 in any way excepts or implies exclusion of litigation funders from its disqualification analysis.  *See* 28 U.S.C.A. § 455. Certainly, a Judge with a financial interest in a third-party litigation funding entity would be disqualified under 28 U.S.C.A. § 455.[9]  Besides, Defendant's request has very little to do with concerns about disqualification, as this Court is surely aware.

In another instance of selective (legislative) history, Plaintiffs contend that following public notice and comment, the Northern District of California declined to amend Local Rule 3-

---

[7] That the Rule does not in any way limit the disclosures for the purpose of identifying conflicts is clear enough from the fact that the judicial canon and recusal statute long predated the Rule, and nothing in the Rule or Notes suggests any intent to circumscribe the Court's existing power to identify and avoid conflicts.  *See* Memo 13.

[8] If there be any real doubt of the Court's broad discretion to order specific disclosures or discovery according to the needs of a particular case, additional authority is found in Fed. R. Civ. P. 16(c)(2) (empowering the court to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems"); Fed. R. Civ. P. 16 advisory committee's note (1983) (noting that "[e]xtensive guidance" for managing complex cases is offered in the Manual for Complex Litigation); *Prediscovery Disclosure*, Ann. Manual Complex Lit. § 11.13 (4th ed.); and *Limitations*, Ann. Manual Complex Lit. § 11.422 (4th ed.) (advising that "[p]hased, sequenced, or targeted discovery" may usefully "be targeted at information that might facilitate settlement negotiations [....]").

[9] Plaintiffs' statement that "it is unimaginable that the Court has any interest in any attorney advertising firm or litigation financing group," Opp. 12, is also misguided.  Plaintiffs' imagination appears to be limited by their failure to consider the dozens if not hundreds of courts across the country to whom the cases in this MDL may be remanded—not to mention any mediators or other tribunals.  Such conflicts are not hypothetical: one prominent U.K. litigation funder recently announced that it had retained former U.S. District Judge (and current JAMS arbitrator and mediator) Shira Scheindlin to advise on its lawsuit investments in the U.S. Market.  *See* Friedman, "UK Litigation Funder Eyes Untapped Parts of US Market," Bloomberg Big Law Business, https://bol.bna.com/uk-litigation-funder-eyes-untapped-parts-of-us-market/ (July 24, 2016).  The funder's CEO noted that although current rules (which do not require TPLF disclosures in all cases) would not foreclose conflicts, Judge Scheindlin herself would identify and disclose any conflicts—which she would presumably know about due to her direct involvement in selecting cases for investment.  *Id.*  Thus, as even funders readily admit, non-parties can create conflicts of interest for judges and other arbiters—and the only way to prevent such conflicts is to know who is involved.

15 to cover "litigation funders."  Opp. 12-13.  In fact, the Court received exactly four comments on its proposal to add a parenthetical "(including litigation funders)" to its description of covered entities—two from major TPLF entities, one from a paid TPLF consultant, and a fourth from an independent practitioner (who supported the change).[10]  Notably, billion-dollar litigation funder Burford Capital argued that the amendment was unnecessary because "[t]he existing rule already requires disclosure of litigation funders (e.g., as entities that have an interest that could be substantially affected by the outcome of the proceeding)," and that as such, the rule was sufficient to allow judges to address potential conflicts.[11]  Thus, the Northern District's Decision not to add the parenthetical could signal acceptance of this argument.

In any event, the reasoning of the Northern District of California rule—whether it applies in all civil cases, or only "class, collective, or representative actions"—applies equally in an MDL characterized by collective pre-trial proceedings and discovery and representative bellwether trials.  Moreover, while appearing to critique the notice-and-comment process itself—despite the fact that it was heavily slanted in favor of TPLF interests—Plaintiffs have certainly not identified any public notice-and-comment rule against disclosure.  *See* Opp. 3-4, n.3.  Indeed, Plaintiffs themselves fail to present any substantive policy argument against the disclosure requested here.[12]

### III.    Plaintiffs Articulate No Burden Imposed by the Requested Disclosure

Plaintiffs do not identify any financial, logistical, or other burden—substantial or otherwise—that would be imposed by the requested disclosure.  Plaintiffs' arguments regarding

---

[10] *See* "Draft Revision of Civil Local Rule 3-15 (Disclosure of Non-party Interested Entities or Persons)," *available at* http://www.cand.uscourts.gov/news/23 (last accessed July 27, 2017).

[11] *Id.*

[12] Plaintiffs provide no explanation whatsoever of how MDL Centrality might remedy the pitfalls of past MDLs—especially given that the third parties connected with the abuses identified are not registered with, or disclosed by, MDL Centrality.

Mr. Grossman suggest that Plaintiffs and their counsel may promptly and substantially comply with Defendant's request without even intending to.  *See* Opp. 15.

The closest Plaintiffs come to identifying a burden is arguing that disclosure would be "prejudicial" by offering defendant "tactical advantages."  Opp. 16.  The "advantages" suggested are the same that are afforded by the automatic disclosure of insurance policies and corporate parentage—namely, that unnecessary and wasteful litigation can be avoided where the actual amount that a plaintiff stands to recover is limited by some entity or agreement external to the litigation.  This is an advantage not to Defendant in particular, but to all parties and the Court itself; a basic tenet of our discovery-based civil justice system is that transparency among all interested parties promotes forthright assessment of and risk and merit and facilitates the just and speedy resolution of disputes.  *See* Fed. R. Civ. P. 1.

Finally, as Plaintiffs reiterate, and Defendant agrees, Plaintiffs' counsel is bound to act in their clients' best interests, regardless of their own financial interests or the involvement of any third party entities.  Knowledge of all the entities involved in the litigation would not and could not enable Defendant to unilaterally resolve Plaintiffs' claims without the consent and participation of the Plaintiffs and counsel whom, as Plaintiffs impress, remain in control of this litigation.  Accordingly, the simple disclosure Defendant requests would not burden the Plaintiffs, but would provide the parties and the Court with the information necessary to ensure transparent, just, and efficient proceedings in MDL 2740.

## **CONCLUSION**

For the foregoing reasons, the Court should GRANT Defendant's Motion and order disclosure of non-party interested entities or persons in MDL 2740.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com

*Counsel for sanofi-aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2017, I electronically filed the foregoing with the Clerk of the

Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

11