UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI US SERVICES, INC.'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS CLAIMS BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS**

Introduction

Statute of limitations analysis is not a quagmire, or the shifting, impossible feat that Plaintiffs suggest. Even if it is taxing, it is absolutely critical to this MDL because so many claims are *so old* and *so many* claims are time-barred. Timeliness concerns affect over three quarters of the cases pending in MDL 2740 at the time of Defendants' motion.[1] Stale claims should not be allowed to hide in their numbers, though.

Statutes of limitations run from a trigger date, which is most often the date of injury and a concrete, recognizable moment. To be sure, some jurisdictions' laws are more straightforward than others. Thus, this Court's analysis is simple where the limitations period is triggered by a plaintiff's injury[2] or knowledge thereof.[3] But Plaintiffs do not address such claims.

---

[1] *See* Defendants' Motion to Dismiss Claims Barred by the Applicable Statutes of Limitations (Rec. Doc. 494) ("Mot.") Exhibit A (identifying 848 of some 1100 then pending cases as untimely). This trend continues in cases filed since that time, as Defendants will identify in supplement.

[2] *See* Mot. 10, Ex. A (listing 420 total claims from Alabama, Arizona, Idaho, Kentucky, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, New Mexico, Oklahoma, Tennessee, Texas, and Virginia).

[3] *See* Mot. 14, Ex. A (listing 60 total claims from Florida, Indiana, Kansas, Nevada, New York, North Carolina, and South Carolina).

1

Instead, Plaintiffs misapply discovery rule theory to the element of "injury," which conflates separate legal concepts.  In reality, Plaintiffs do not single out a sole case that was timely.  *See* Plaintiffs' Opposition to Defendants' Motion (Rec. Doc. 663) ("Opp.").  And ultimately, Plaintiffs do not dispute that <u>6 months after completing treatment, any reasonable plaintiff would have known of her hair loss</u>, known that it was persisting, and had notice that such persistence <u>may have been caused by chemotherapy treatment</u>.  <u>No Plaintiff claims that she thought something other than chemotherapy caused her initial hair loss</u>, or that she was not warned hair loss might happen.  Mot. 9–10.

This analysis easily bars untimely cases in the majority of MDL-relevant jurisdictions turning on knowledge of injury or knowledge of cause.  The Court should dispose of such states' cases at the outset.  But even claims in the third category of states, where Plaintiffs expend all of their analysis, also have an ascertainable trigger and may be adjudicated.  Even if a Plaintiff questioned whether her hair might eventually regrow, or questioned whether something else might contribute to her hair not regrowing, that Plaintiff was on inquiry notice.  Either her claim accrued long ago, or it has never accrued.  There cannot be a claim without a trigger.

Without support in their own pleadings or in the substantive law, Plaintiffs instead focus on a procedural morass of their own creation. According to Plaintiffs, there are simply too many facially untimely and factually deficient complaints for this Court to apply the statutes and dismiss *any* pending case from this MDL—*including hundreds of cases which have no legal possibility of success*.  Plaintiffs even argue that dismissal on statute of limitations grounds is categorically inappropriate by an MDL Court or at the pleadings stage—a position plainly out of line with the federal rules, the law of every circuit,[4] and sound MDL practice.[5]

---

[4] *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 206 n.1 (1st Cir. 2015); *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015); *Brown v. Montgomery*

The Court should not reward such self-serving obfuscation. Effective management of complex litigation requires the parties and the Court to draw lines and establish common procedures to efficiently resolve threshold issues. The absurd outcome of Plaintiffs' position would be that at some late date, this Court (or dozens of transferor courts) would resolve this issue on a case-by-case basis. The irony of Plaintiffs' position is that they would insist on case-specific discovery in approximately 850 cases for statute of limitations purposes, when they have resisted case-specific discovery in all individual cases on the merits, ultimately agreeing to work up only ten, and then only under court-order. Plaintiffs cannot on one hand file a mass of similar cases, successfully consolidate them in this MDL, swell the MDL with hundreds more untimely cases to increase litigation costs and leverage, and then avoid the application or even analysis of the statutes of limitation that bar stale actions. Nor can Plaintiffs intentionally omit specific dates of injury or discovery—facts which, if relevant at all, are already known to them—only to assert that further investigation is needed to determine the timeliness of their claims.

## Roadmap

As set forth in **Section I**, Plaintiffs' own allegations establish that 848 claims in this MDL are time-barred. As in subpart (a), namely, Plaintiffs' own Master Complaint alleges facts time barring their claims. First, Plaintiffs unequivocally allege that they were injured based on

---

*Cty.*, 470 F. App'x 87, 90 (3d Cir. 2012); *Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, No. 16-1384, 2017 WL 1533263, at *3 (4th Cir. Apr. 28, 2017); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

[5] As the Court is aware, Plaintiffs' reliance on *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. 25292, 2012 WL 1580761, at *1 (E.D. La. May 4, 2012) is misplaced. In that case, plaintiffs asserted a tolling defense via a motion to sever cases that all parties and the Court agreed lacked venue in the MDL. *See id*. This Court's sound decision not to address timeliness in cases not properly before it, on a motion not related to limitations, has no application here. Where, as here, timeliness is squarely presented in a motion to dismiss, an MDL Court is well within its power to dismiss all identified untimely claims with prejudice. *See, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d 654, 656 (E.D. Pa. 2013) (granting defendants' motion to dismiss 41 categories of state claims asserted in MDL as untimely under the laws of 21 jurisdictions); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 707 (N.D. Ohio 2010), *aff'd sub nom. In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013) (dismissing various categories of claims as untimely in MDL consisting of 10 putative state class actions and 3 putative nationwide class actions); *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 111 F. Supp. 3d 79, 86–87 (D. Mass. 2015) (dismissing claims as incurably untimely in MDL).

the dates of their treatment and a period of persisting hair loss afterwards. Second, Plaintiffs fail to dispute that they had actual notice of their injury and its alleged cause. As in subpart (b), Plaintiffs' complaints also fail to plead any facts warranting tolling. As in subpart (c), Plaintiffs' Opposition fails to identify any actual conflicts of laws—or any other reason that any identified case is timely. Accordingly, this Court should dismiss the 848 untimely claims identified in Defendants' Motion.

Alternately, as in **Section II**, the Court should immediately issue show cause orders and rule on the legal issues presented by the Motion to guide limitations analysis in the MDL.

I. <u>The Court Should Dismiss the 848 Facially Untimely Claims in MDL 2740</u>

A plaintiff fails to state a claim when the complaint's allegations facially suggest that the claims are barred by the statute of limitations. *See Bock*, 549 U.S. at 215. *See also In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d at 711 ("[…] from the face of the complaint, nearly all of the claims appear time-barred. Thus, plaintiffs bear the burden of establishing that their claims may nonetheless proceed.").[6] Here, Plaintiffs' claims should be dismissed as untimely because (1) the facts alleged *by them* would bar their claims under the applicable statute of limitations; (2) Plaintiffs do not plead any facts to toll the statutes; and (3) Plaintiffs provide no reason to believe that a conflicts-of-law problem exists in any of these cases.

---

[6] *See also, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d at 658 ("a plaintiff must allege a specific tolling date in order to plausibly suggest that she did not learn of her claims until a time within the limitations period"); *Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611, 613 (9th Cir. 2016) ("To take advantage of the discovery rule, a plaintiff must 'specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'") (quotations omitted); *Training Inst., Inc. v. City of Chicago*, 937 F. Supp. 743, 750–51 (N.D. Ill. 1996) (dismissal where plaintiff "does not plead any facts—in violation of Fed.R.Civ.P. 9(f)—to support its position that it 'discovered' the […] injuries within the [limitations period]"); *Stewart Coach Indus., Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981) (when facially untimely, "it becomes the duty of the plaintiff who seeks to rely on the 'discovery rule' to affirmatively and particularly plead the date of discovery, as a material averment under F.R.C.P. 9(b), (f), or face dismissal of the complaint.").

    a. <u>The Facts Alleged in the Master Complaint Facially Suggest that Plaintiffs' Claims are Barred by the Applicable Statutes of Limitation</u>

        1. <u>Plaintiffs' Alleged Injuries Occurred Six Months After Completion of Chemotherapy</u>

Plaintiffs allege that Taxotere®—a drug used during their chemotherapy treatment—caused them persistent hair loss. *See* Am. Compl. ¶ 5.[7] According to Plaintiffs, this injury "is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." Am. Compl. ¶ 180. This definition is the linchpin of Plaintiffs' case: distinguishing "*temporary*" or "*reversible*" alopecia (a side effect about which Plaintiffs were warned) from "*persistent*" alopecia (which was later added to the medicine's label as having been reported). *See* Am. Compl. ¶¶ 128, 162, 165, 173.[8] Plaintiffs make no other allegation about the onset of injury.

But in their Opposition, Plaintiffs claim that "six months" was merely a *description* of their "alopecia-related injuries," not a definition. Opp. 4. Plaintiffs suggest that "[t]here is simply no six-month 'onset date' applicable to all Plaintiffs," and that any such date is an "arbitrary" resolution to an "abstract[…] legal dispute." Opp. 4–5. This flies in the face of Plaintiffs' Master Complaint and the nature of Plaintiffs' claims. Am. Compl. ¶ 179–80.[9] While the Court need not even turn to Plaintiffs' individual Short Form Complaints, those that actually *do* specify an injury date as called for by the Form, support Defendants' Motion. *See* Exhibit 1 (listing Plaintiffs whose SFCs confirm a common six-month onset date). Plaintiffs offer no other

---

[7] By its own terms, the Master Complaint presents "certain common allegations and common questions of fact and law" pertaining to the Plaintiffs who adopt it. Am. Compl. ¶ 2. Thus, Plaintiffs' insistence that the limitations issues arising from the Complaint are "not common issues," *see, e.g.*, Opp. 1, must fail.

[8] In this effort, Plaintiffs cite scientific research that "temporary" alopecia lasts 3 to 6 months—rebutting the contention that a six-month onset date is unsupported by science. *See* Am. Compl. ¶ 179; Opp. 1, 3.

[9] Though Plaintiffs seek to deny the plain statements in their own Master Complaint, the Amended Master Complaint of July 25, 2017 (Rec. Doc. 689) contained no alterations to the cited allegations.

date of injury or explain how one should be determined, individually or collectively.[10] ***Accepting Plaintiffs' allegations as true, the Court should find that Plaintiffs' injuries allegedly occurred six months after completion of chemotherapy treatment.***

      2.  <u>Plaintiffs Were On Notice of Their Injuries and Alleged Causes When Injured</u>

Plaintiffs concede "the generally observable nature of baldness" and admit that "hair loss or baldness may be observable or evident to laypersons like Plaintiffs."[11] Opp. 4. Logically, this should end the analysis because it is the observations of laypersons, including Plaintiffs, which form the basis for Plaintiffs' damages claims. As Plaintiffs state in their Complaint:

> As a result of [permanent hair loss], Plaintiffs have struggled to return to normalcy, even after surviving cancer because an integral element of their identities, their hair, never returned. Plaintiffs are stigmatized with the universal cancer signifier—baldness—long after they underwent cancer treatment, and their hair loss acts as a permanent reminder that they are cancer victims. This permanent change has altered Plaintiffs' self-image, negatively impacted their relationships, and others' perceptions of them, leading to social isolation and depression even long after fighting cancer.

Am. Compl. ¶ 6. An injury cannot, on one hand, be so obvious that it interferes with a Plaintiff's identity, self-image, and social relationships, and, at the same time, be undiscoverable to her. Thus, this Court's analysis is simple where the limitations period is triggered by a plaintiff's injury or knowledge thereof.[12] Plaintiffs fail to address such claims.

Instead, Plaintiffs erroneously apply discovery rule concepts to the element of injury, suggesting that what matters for limitations purposes is when injuries "*became permanent*" or "when each MDL Plaintiff actually discovered the permanence of her hair loss." Opp. 4

---

[10] Also, if "persistent" alopecia is not defined by persistence for a set duration of time, then it is arguably just an extended degree of alopecia. In that case, Plaintiffs' injuries would date from first loss of hair, not six months after treatment. *See Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (limitations triggered by first injury, not subsequent "permanent scarring and disfigurement," because "[a] plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause.").

[11] Defendants dispute that this is an even remotely accurate description of the vast majority of the Plaintiffs, but Plaintiffs' hyperbole only counts against them, whether true or not.

[12] *See supra* notes 2–3.

(emphasis in original). This is nonsensical: Plaintiffs' alleged damages are based on others' perceptions of *hair loss*, not *permanence*.[13] If Plaintiffs' injuries must be permanent, they have no standing to sue even today, as no one knows what is permanent or not, least of all with hair.[14] In other words, Plaintiffs would tell this Court that the only trigger date for their claims is one that will never occur—an unascertainable past date or an unknown future date, when what has persisted becomes "permanent."

Additionally, this position is wholly inconsistent with the nature of the harm alleged by Plaintiffs: *it is the alleged visibility of the injury which creates the alleged harm.* There is simply no such thing as an "invisible disfigurement." Likewise, Plaintiffs' pleadings inextricably link their claimed injury to the "universal" association of hair loss with cancer treatment. *See* Am. Compl. ¶ 6 (describing Plaintiffs' hair loss as the "universal cancer signifier" and a "permanent reminder" of the disease, "long after they underwent cancer treatment").[15] The fact that hair loss is persisting is necessarily as apparent and discoverable as the alleged hair loss itself.

Besides the subjective, Plaintiffs plead that public allegations have linked Taxotere with persistent hair loss for years. *See* Mot. 18; Am. Compl. ¶ 4 (describing permanent hair loss as a "well-documented side effect that for years has been publicized in numerous scientific studies, articles, and presentations."); ¶¶ 148–61 (listing articles publicly linking Taxotere and hair loss as early as 2006). Thus, Plaintiffs cannot claim to have lacked notice of any potential association

---

[13] Such an argument makes even less sense in the context of a loss of consortium claim. A disfigurement cannot be so apparent that it interferes with marital relationships and at the same time undetectable. The 150+ such claims in this litigation underscore the inherent discoverability of the alleged injuries.

[14] Allusions to testing and diagnosis, *see* Opp. 4, do not help Plaintiffs. Plaintiffs do not identify anyone who was diagnosed within the applicable limitations period. Further, under a theory of 'permanence-as-injury,' a Plaintiff whose hair returned after filing suit would not only no longer be injured, *they would never have been injured at all*. By this logic, Plaintiffs' claims would still not have accrued—a position plainly contradicted by the fact that they have filed suit. <u>The notice required for a claim to accrue cannot be more than that required to assert that very claim in a lawsuit.</u>

[15] *See also* Am. Compl. ¶¶ 128, 162, 165, 173 (noting that Taxotere® labels consistently warned of hair loss).

7

between hair loss and cancer treatment. *See In re Avandia Mktg.*, 2014 WL 2011239, at *1 (publicly available information put any reasonable plaintiff suffering the injury alleged on notice of potential causes). Thus, Plaintiffs' pleadings establish an ascertainable trigger date for their claims, whether one looks to reasonable individual notice, or public dialogue. Accordingly, Plaintiffs' own pleadings "show that relief is barred by the applicable statute of limitations," and are subject to dismissal for failure to state a claim. *Bock*, 549 U.S. at 215.

      b. <u>Plaintiffs Have Not Pled Any Facts Sufficient to Warrant Tolling</u>

Equally unconvincing is the argument that boilerplate invocations of tolling or fraudulent concealment can save a claim. *See* Opp. 5–6. Not so. Plaintiffs' rote statements that their suits are "within the applicable statute of limitations period" and that their claims did not accrue "until a date prior to the filing of these actions, which is less than the applicable limitations period for filing suit" are quintessential legal conclusions.[16] *See* Am. Compl. ¶ 10. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must state *facts* supporting tolling to avoid dismissal of facially untimely claims.[17] *See Quality Cleaning Prod. R.C.*, 794 F.3d at 206 n.1 ("When the dates listed and the allegations contained in the complaint facially suggest that the limitations period had been exceeded, the plaintiff must, to avoid dismissal, sketch a factual predicate that provides a basis for avoiding the statute of limitations, concluding

---

[16] These conclusory recitals are also contradicted by the specific factual allegations that are, as noted, essential to Plaintiffs' effort to state plausible claims. *Compare* Am. Compl. ¶ 6 ("Plaintiffs are stigmatized with the universal cancer signifier—baldness—long after they underwent cancer treatment") *with* Am. Compl. ¶ 10 ("Plaintiffs did not suspect, nor did they have reason to suspect that they had been injured").

[17] Plaintiffs do not allege such facts either in the Master Complaint nor in their Short Form Complaints ("SFCs"), which provide this precise opportunity. *See In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 1:15-MD-2657, 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017) (plaintiff-specific allegations "should normally be set forth in the individual short-form complaint."). Plaintiffs do not identify a single SFC that alleges facts warranting tolling, nor do they hypothesize such a specific fact. Thus, Plaintiffs have not only failed to provide any factual basis to avoid dismissal, but have failed to suggest how any such basis might be revealed through extended discovery.

that the limitation period has not run, or finding that a different statute of limitations applies.") (internal quotes omitted); *In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d at 656 (rejecting MDL plaintiffs' reliance on the discovery rules and fraudulent concealment doctrines of 21 jurisdictions where no tolling dates were pled); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d at 711 ("plaintiffs bear the burden of establishing that their [facially untimely] claims may nonetheless proceed."). Having failed to plead facts to support tolling, Plaintiffs' claims should be dismissed.[18]

### c. Plaintiffs Present No Actual Conflict of Law Precluding Limitations Analysis

In another slight-of-hand, Plaintiffs argue that the sheer number of jurisdictions and laws at play in the MDL make the analytical task before the Court too enormous. *See* Opp. 6. Plaintiffs suggest that choice of law analyses alone would be prohibitively complex, not to mention application of substantive laws. *Id*. at 8–9. Plaintiffs even insist that showing that each case *they chose to file* is timely "would create an unreasonable burden" for them, even at some later point in the litigation. *Id*. at 6–7.[19]

Such arguments miss the mark. Plaintiffs do not identify a single case where the statute of limitations identified by Defendants is wrong. Even assuming that were true, an individual

---

[18] Though citing conclusory legal statements regarding "misrepresentations and concealments," *see* Opp. 5–6, Plaintiffs present no facts or argument on how fraudulent concealment might apply in this case. Details constituting fraudulent concealment, including the circumstances of discovery of the alleged fraud, must be pled with particularity. *See, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d at 661–62 (collecting cases, and dismissing 41 categories of MDL claims as untimely under Rule 9(b) and the fraudulent concealment doctrines of 17 jurisdictions); *see also* 51 Am. Jur. 2d Limitation of Actions § 163 ("One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he or she fails to plead or offer evidence as to when he or she discovered the alleged fraud."). Plaintiffs' stated need for discovery on such matters, *see* Opp. 11, n.4, is also unavailing. *See In re Zofran*, 2017 WL 1458193, at *5 ("it is not appropriate to plead fraud claims in general terms, in the hope that discovery will reveal greater particularity as to the actual misrepresentation.").

[19] With this and other arguments, Plaintiffs essentially admit that no independent investigation into the timeliness of their claims was undertaken prior to filing their suits. *See, e.g.*, Opp. 4 ("It is highly probable that an investigation into when each MDL Plaintiff actually discovered the permanence of her hair loss would result in a wide spectrum of dates"). Plaintiffs should not receive the benefit of their own failure to plead material facts known to them, or their counsels' apparent failure to investigate such facts.

Plaintiff could show why her claim ought not to be dismissed based on another state's law. Nor do Plaintiffs identify a single state law under which a claim identified by Defendants is, in fact, timely. And Plaintiffs certainly do not show how such considerations prohibit statutes of limitations analysis by an MDL Court.

MDL Courts routinely face disputes regarding timeliness, from multiple plaintiffs under multiple applicable statutes of limitation. *See supra*, note 2; *see also, e.g.*, *In re Avandia Mktg.*, 2014 WL 2011239, at *1 (disposing of 115 plaintiffs' claims under 31 applicable statutes of limitation, finding any differences in statutes and tolling doctrines irrelevant in light of plaintiffs' common allegations and circumstances); *see also In re Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 804 (E.D. La. 2007) (approving Defendants' argument that claims were "time-barred pursuant to any conceivably applicable statutes of limitations," and disposing of claims under Pennsylvania and Puerto Rico law); *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2007 WL 3334339, at *2 (E.D. La. Nov. 8, 2007) (same under Texas, California, and Indiana law); *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2007 WL 3353404, at *4 (E.D. La. Nov. 8, 2007) (same under Tennessee and Kentucky law).

Regardless of any nuances in relevant choice- and conflict-of-law analyses,[20] the vast majority of personal injury cases are governed by the law of the place of injury—as Plaintiffs' own cited authority demonstrates. *See Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 499 (6th Cir. 2015) (finding that the law of the place of injury applies under any choice-of-law analysis); *Bellew v. Ethicon, Inc.*, No. 2:13-CV-22473, 2014 WL 6886129, at *3 (S.D.W. Va. Nov. 24, 2014) (same); *In re Boston Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-4078, 2014 WL

---

[20] Though insisting such differences defeat Defendants' Motion, Plaintiffs cite only a single choice of law test, drawn from the widely adopted Restatement (Second) of Conflict of Laws (1971). Restatement § 146 establishes a presumption that "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties."

3495977, at *2 (S.D.W. Va. July 11, 2014) (same).  Thus, an MDL court may simply apply the law of the jurisdiction where Plaintiffs have pled injury.  *See In re Avandia Mktg.*, 2014 WL 2011239, at *1. What's more, Plaintiffs' SFCs suggest only a small minority of cases in which a salient conflict is even theoretically possible: of the 848 facially untimely cases, Plaintiffs plead different states of injury and treatment in only 19.  Of these, *only a single case* is untimely by less than the difference between potentially applicable statutes.[21]  Thus, even if the Court should decline to apply the law of the place of injury in all cases, the fraction of cases which *might* present a meaningful choice of law cannot spare hundreds of other plainly untimely cases from dismissal.  *Cf. In re Boston Sci. Corp.*, 2014 WL 3495977, at *2 (foregoing choice-of-law determination where claims are untimely under any applicable statute of limitations).

In addition, as argued thoroughly in Defendants' Motion and above, choice of law is irrelevant because no state would toll claims where, as here, Plaintiffs' allege an open and obvious injury and an alleged cause necessarily known to them.  *See* Mot. 7–8; *supra* part I.a. All states determine accrual according to objective, "reasonable" or "diligent" plaintiff standards. *See In re Avandia Mktg.*, 2014 WL 2011239, at *1 (E.D. Pa. May 16, 2014); *see also* Mot. 7, 14–24.  Plaintiffs fail to cite even a *single* claim of a *single* Plaintiff that is timely under a *single* statute of limitations—or any case interpreting it—in any applicable jurisdiction.

II. <u>Short of Dismissal, the Court Should Issue a Show Cause Order or Immediate Statute of Limitations Discovery</u>

With anything short of dismissing with prejudice these 848 facially untimely claims, the Court should exercise its authority to bring the statute of limitations issue to a head in MDL 2740.  Namely, it is paramount that the Court adopt a process to streamline any timeliness determinations for specific Plaintiffs in this MDL—whether as individuals or in groups.  The

---

[21] *See* Exhibit 2.

Court could issue an order to Plaintiffs to show cause why their claims should not be dismissed. Alternatively, and at the very least, the Court should authorize a limitations-specific Plaintiff Fact Sheet and an immediate discovery order requiring Plaintiffs to promptly produce evidence of timeliness, as at least one other Court has recently done. *See* Order (Doc. 37), *Clarke, et al. v. Bayer*, No. 2:16-cv-01645 (E.D. Pa. March 23, 2017) (attached hereto as Exhibit 3).

In either circumstance, the Court should definitively rule on the legal issues presented by the parties' briefing. These issues include:

- Whether Plaintiffs' alleged hair loss is a "patent" rather than a "latent" injury.

- Whether, as Plaintiffs themselves allege, Plaintiffs' injuries occurred six months after completion of chemotherapy treatment.

- Whether any reasonable Plaintiff would have known of her hair loss, known that it was persisting, and had notice that such persistence may have been caused by chemotherapy treatment six months after completing treatment.

- Whether Plaintiffs' Complaint sufficiently alleges facts to support tolling or fraudulent concealment as a matter of law.

In sum, with any relief short of dismissal of the 848 facially untimely cases pending in MDL 2740, the Court should immediately impose mechanisms for identifying untimely cases against legal findings consistent with Plaintiffs' own allegations.

Dated: August 24, 2017

Respectfully submitted,

| /s/ *Douglas J. Moore* | Harley Ratliff |
| Douglas J. Moore (Bar No. 27706) | Adrienne L. Byard |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | **SHOOK, HARDY & BACON L.L.P.** |
| 400 Poydras Street, Suite 2700 | 2555 Grand Boulevard |
| New Orleans, LA 70130 | Kansas City, Missouri 64108 |
| Telephone: 504-310-2100 | Telephone: 816-474-6550 |
| Facsimile: 504-310-2120 | Facsimile: 816-421-5547 |
| dmoore@irwinllc.com | hratliff@shb.com |
| | abyard@shb.com |

*Counsel for sanofi-aventis U.S. LLC and sanofi US Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*