1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA
2
   ******************************************************
3  IN RE:   TAXOTERE (DOCETAXEL)
   PRODUCTS LIABILITY LITIGATION
4                                    MDL No.  16-2740
   VS.                               Section "N"
5                                    New Orleans,  Louisiana
                                     September 8,  2017
6  THIS DOCUMENT RELATES TO
   ALL CASES
7
   ******************************************************
8
      TRANSCRIPT OF STATUS CONFERENCE WITH STEERING COMMITTEES
9         HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
              UNITED STATES DISTRICT JUDGE
10

11 APPEARANCES:

12 FOR THE PLAINTIFFS:          MS. DAWN M.  BARRIOS
                                Barrios Kingsdorf & Casteix
13                              701 Poydras Street
                                Suite 3650
14                              New Orleans, Louisiana  70139

15                             MR. M. PALMER LAMBERT
                               Gainsburgh Benjamin David
16                                 Meunier & Warshauer
                               1100 Poydras Street
17                             Suite 2800
                               New Orleans, Louisiana  70163
18
                               MR. CHRISTOPHER L. COFFIN
19                             Pendley, Baudin & Coffin
                               1515 Poydras Street
20                             Suite 1400
                               New Orleans, Louisiana  70112
21
                               MS. KAREN B. MENZIES
22                             Gibbs Law Group
                               400 Continental Boulevard
23                             6th Floor
                               El Segundo, California  90245
24

25

1
2
3

MR. J. KYLE BACHUS
Bachus & Schanker
1899 Wynkoop Street
Suite 700
Denver, Colorado  80202

4
5
6

MR. LAWRENCE J. CENTOLA
Martzell Bickford & Centola
338 Lafayette Street
New Orleans, Louisiana  70130

7
8
9

MS. ABBY E. McCLELLAN
Stueve Siegel Hanson
460 Nichols Road
Suite 200
Kansas City, Missouri  64112

10
11
12

MR. DANIEL P. MARKOFF
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway
Suite 104
Oklahoma City, Oklahoma  73120

13
14

MR. DAVID F. MICELI
Simmons Hanly Conroy
One Court Street
Alton, Illinois  62002

15
16
17

MR. RAND P. NOLEN
Fleming, Nolen & Jez
2800 Post Oak Boulevard
Suite 4000
Houston, Texas  77056

18
19
20

MR. HUNTER J. SHKOLNIK
Napoli Shkolnik
360 Lexington Avenue
11th Floor
New York, New York  10017

21
22
23

MR. BENJAMIN W. GORDON
Levin Papantonio Thomas
    Mitchell Rafferty & Proctor
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502

24
25

```
 1                                    MR. ANDREW LEMMON
                                      Lemmon Law Firm
 2                                    650 Poydras Street
                                      Suite 2335
 3                                    New Orleans, LA 70130

 4                                    MR. ALEXANDER G. DWYER
                                      Kirkendall Dwyer
 5                                    440 Louisiana
                                      Suite 1901
 6                                    Houston, Texas 77002

 7                                    MS. ANNE ANDREWS
                                      Andrews Thornton Higgins
 8                                        Razmara
                                      2 Corporate Park
 9                                    Suite 110
                                      Irvine, California 92606
10
     FOR SANOFI S.A.:                 MR. DOUGLAS J. MOORE
11                                    Irwin, Fritchie,
                                          Urquhart & Moore
12                                    400 Poydras Street
                                      Suite 2700
13                                    New Orleans, LA  70130

14                                    MR. HARLEY V. RATLIFF
                                      MR. JON STRONGMAN
15                                    Shook, Hardy & Bacon
                                      2555 Grand Boulevard
16                                    Kansas City, Missouri  64108

17   FOR PFIZER, INC., AND           MR. MARK S. CHEFFO
     HOSPIRA WORLDWIDE, LLC:          Quinn Emanuel Urquhart &
18                                        Sullivan
                                      51 Madison Avenue.
19                                    22nd Floor
                                      New York, New York 10010
20
     FOR ACTAVIS PHARMA, INC.:        MR. MICHAEL J. SUFFERN
21                                    Ulmer & Berne, LLP
                                      600 Vine Street
22                                    Suite 2800
                                      Cincinnati, OH 45202
23
     FOR HOSPIRA                      MR. JOHN F. OLINDE
24   WORLDWIDE, LLC:                  Chaffe McCall
                                      2300 Energy Centre
25                                    1100 Poydras Street
                                      New Orleans, LA  70163
```

```
 1   FOR SANDOZ, A NOVARTIS           MR. R. CLIFTON MERRELL
     DIVISION:                        Greenburg Traurig
 2                                    Terminus 200
                                      3333 Piedmont Road, NE
 3                                    Atlanta, GA  30305

 4   FOR ACCORD HEALTHCARE,           MS. JULIE A. CALLSEN
     INC.:                            Tucker Ellis
 5                                    950 Main Avenue
                                      Suite 1100
 6                                    Cleveland, OH 44113

 7   FOR McKESSON CORPORATION         MS. ERIN M. BOSMAN
     D/B/A MCKESSON PACKAGING:        Morrison Foerster
 8                                    12531 High Bluff Drive
                                      Suite 100
 9                                    San Diego, CA 92130-2040

10   FOR SUN PHARMA GLOBAL,           MR. GEOFFREY COAN
     INC.:                            Hinshaw & Culbertson
11                                    28 State Street
                                      24th Floor
12                                    Boston, Massachusetts  02109

13   Official Court Reporter:         Lanie M. Smith, RPR, CRR
                                      500 Poydras Street, B-275
14                                    New Orleans, Louisiana 70130
                                      (504) 589-7782
15

16

17

18

19

20

21

22

23

24
             Proceedings recorded by mechanical stenography,
25   transcript produced via computer.
```

P R O C E E D I N G S

THE COURT:   These are nicer surroundings than what
we're used to for this meeting.  Maybe we should use this all
the time until a new judge comes and takes it, which hopefully
will be soon.

First of all, good morning to you-all.  We're
going to go ahead on the record.  This is the meeting of the
committees in the *In Re Taxotere (Docetaxel) Products Liability*
*Litigation*, MDL 16-2740.  I met earlier with liaison counsel,
again another very positive meeting.  I will say at the outset
that since our last committee meeting and our last general
status conference -- and I forget the exact date of it --
approximately two months ago, I think we've come a long way in
the MDL.  This has probably been the most significant progress
between our committee meetings that we've made in the MDL.  So
I think it's a significant advancement of the case in terms of
your work and in terms of the pending issues, so that's very
encouraging.

Having said that, I know there's a lot of work to
be done particularly with regard to the trial dates that we've
picked.  And we're going to commence that or get further into
it, I should say, because I know you've already started work on
those plaintiffs' claims.  But I think we have a good framework
to start finding out a lot of valuable information about the

1    claims in the case.

2           I also mentioned to liaison counsel this morning

3    that one of the important things about handling an MDL from a

4    judge's point of view is to not only enjoy the intellectual

5    rigors of handling an MDL in a mass tort fashion, but to also

6    not lose sight of the fact that there are really people on the

7    plaintiffs' side, real plaintiffs, real women who have suffered

8    the damages that they allege in their petitions and seek relief

9    through the Court system and need to have their claims

10   adjudicated as promptly as possible.

11          And there are real defendants who didn't want to

12   get sued in the first place and now they find themselves having

13   to defend a multitude of claims nationwide and seek some

14   efficiency in the resolution of those claims so that their

15   product and their reputation also can be defended adequately in

16   court.

17          I think we've come a long way toward getting to

18   that point as opposed to doing what we as lawyers and judges

19   do.  And what I'm saying is some of the intellectual exercise

20   about jurisdiction, not that those aren't important about the

21   foreign law and the protective orders and things of that sort,

22   not that those are not important; but they're a whole lot more

23   important to us as lawyers and court system personnel than they

24   are to the real people who are home right now and who have

25   suffered damages or are a cancer survivor or people who are

1    operating a company that go to work every day and try to

2    improve on products and develop products that help real people.

3              So I think we're getting to the point where we're

4    actually addressing what these cases are going to be about, and

5    I'm anxious to move in that direction.  I've been trying to

6    push us in that direction.  I really think that since the last

7    status conference that we've had, we have really taken -- the

8    progress we've made has been pretty dramatic since the last

9    time we were here.  So thank you all for that.  I know

10   everybody has worked hard, and everybody has had to give a

11   little.  I understand particularly on the motions that have now

12   been resolved, I've been advised have been resolved, I realize

13   that there's a little bit of a sacrifice on each side that

14   maybe you didn't quite get what you wanted.  It's not a perfect

15   world, but I do appreciate that you-all were able to come

16   together and reconcile some of these issues as opposed to

17   battling it out on each and every little thing.

18             Having said that, we would like to find out

19   what's next, discuss what's next, identify any issues.  We can

20   get those teed up for decision sooner rather than later.  So

21   who would like to begin.

22             Chris, go ahead.

23             And by the way, as always with the court reporter

24   since she doesn't know all of your names -- we do have a

25   sign-in sheet.  Make certain that you have signed in.  If you

1  are here in this room, you absolutely must sign in.  If your

2  name is not on that sheet, you shouldn't be in the room.  I

3  hate to be rude, but we'll ask you to step outside except for

4  Ken, who I personally asked to come to this meeting and he'll

5  be in the big meeting and will address the group later.  But

6  please sign in and identify yourself if you do speak so we know

7  on the record.

8          Chris, go ahead.

9          MR. COFFIN:   Thank you, Your Honor.   Chris Coffin on

10  behalf of the plaintiffs.

11          Just to follow-up on what Your Honor was saying,

12  as you well know, the personal jurisdiction issue was extremely

13  difficult for both sides.   We spent a significant amount of

14  time meeting and conferring.   We have come to an agreement that

15  will make the motion to compel moot that the plaintiffs have

16  filed.   The motion for protective order is moot, the motion to

17  dismiss based on personal jurisdiction involving the French

18  entities is now moot.   And also we have taken off the table --

19  the defendants have taken off the table the third-party funding

20  motion, so that is now -- will be withdrawn.

21          We do have an agreement that we have written out.

22  We plan to -- Mr. Strongman and I have talked about this this

23  morning -- we plan to put the agreement that we have in the

24  form of a stipulation.

25          THE COURT:   Okay.

1          MR. COFFIN:  We'll prepare that over the course of the

2     next week or so and submit it to Your Honor for review.  But as

3     you know, we struggled quite a bit and I'll give some credit to

4     Mr. Strongman, Mr. Ratliff, and their team for taking the time

5     to sit down with myself and Ms. Menzies and to work through the

6     issues.  As you said, we both had to give a little; and I'm

7     proud to say that we came to an agreement that will help us to

8     move the case along.

9               From our standpoint you asked where we're heading

10    next.  Merits discovery, we have already served quite a bit of

11    merits discovery.  I'll say that Magistrate Judge North on the

12    personal jurisdiction issues has been fantastic.  He has made

13    himself available most any time for us and we've appeared in

14    front of him multiple times, as I'm sure Your Honor is aware.

15         THE COURT:  I am.  In fact, I just talked to him on the

16    phone between the liaison counsel meeting and walking over

17    here.  I've got up-to-the-minute information.

18         MR. COFFIN:  I think maybe only second to you and maybe

19    us, he was probably the most thrilled to hear that we're done

20    with the personal jurisdiction issues.  We've used a lot of his

21    time to resolve a lot of issues on discovery, and he's really

22    been great to help us get through that.

23              We now are ready to, as you say, move into the

24    next phase, which is the merits discovery.  And that was a big

25    part for the plaintiffs to move into that phase and to move

1   past the personal jurisdiction so we can get to the heart of

2   the discovery.  I think we'll be in front of Magistrate

3   Judge North assuming we can't work issues out to get that

4   discovery rolling.  We've had many meet and confers on ESI, the

5   way the documents are going to be produced from our side, we're

6   getting our document review teams ready for when we start

7   getting substantial amounts of documents from the defendants;

8   and then, of course, depositions will start moving forward.  So

9   I think we are well prepared to move into the next phase and

10  we'll be working with Magistrate Judge North to keep the

11  discovery rolling.

12          THE COURT:  Okay, great.  Sounds good.  Thank you

13  Chris.

14          MR. COFFIN:  I don't know if you want us to go through

15  this and the joint report and point out anything.

16          THE COURT:  I don't have any questions about anything

17  in here.  One thing that I would like to, I guess, highlight at

18  this point is I did speak with liaison counsel this morning and

19  I don't have a disposition for you one way or the other about

20  the pending statute of limitations motion and how best to

21  confront that issue either by way of the motion that's already

22  been filed, which I think is sort of an *in globo* motion that

23  attempts to address the entirety of the cases on a

24  state-by-state basis; but in particular as I appreciate arguing

25  for a triggering date, a mechanism that we can use to calculate

1    the commencement of a statute of limitations and then apply the

2    various state laws.  We discussed that this morning.

3                I think it's important that we confront the issue

4    of which claims are time-barred however many they are, and I

5    think some in this case are probably going to be.  I wouldn't

6    even hazard to guess, and I don't know the means to calculate

7    them yet.  I understand the theories that have been offered and

8    argued.  I don't see it as very productive right now to get

9    dozens of opposition memos.  I understand the plaintiffs'

10   position that they are more singularly considered, and I don't

11   see the benefit in confronting these on an individualized

12   basis.

13               Palmer suggested earlier that perhaps we confront

14   the issue in connection with the plaintiffs who have been

15   chosen as trial plaintiffs since it would be raised anyway in

16   that context.  And a ruling in any of those cases could

17   certainly be extrapolated into any of the other cases out there

18   that might have some similarity.

19               Now, I realize that's not what the defendants

20   want and I think ultimately we're going to have to get to a

21   point -- at some point in the future we are going to have to be

22   able if we are going to try to resolve this MDL if we ever get

23   to the point where we're all in that mind-set where the

24   defendants are going to have to be able to know what they're

25   dealing with numerically.

1       I just saw Ben Gordon sitting out in hallway.  As

2  you-all know, he started the process -- I signed the order

3  yesterday that was designed to create a census on who's out

4  there.  But likewise on the defendant's side, they're not bound

5  to accept that number; and their position is and has been very

6  clear that some of these claims would not survive a statute of

7  limitations argument.

8       So at some point we will have to know that there

9  are X number of claims out there minus Y number of claims that

10 are not viable or at least we think probably aren't viable if

11 they haven't been ruled on to give us Z number of claims that

12 need to be settled for however you want to categorize those

13 claims in terms of value.

14      So I haven't come to a decision yet as to how I

15 would like to take up the statute of limitations.  I understand

16 both arguments.  I'm going to give that some further thought.

17 I wish I could tell you right now here's how we're going to do

18 it, you know; but I want to give it some further thought

19 before.

20      Right now, don't file anything in terms of

21 individualized responses.  If I decide to take it up sooner

22 rather than later, you'll be given notice of that and a date

23 when you can file and likewise a reply memo on the defendants'

24 side.  But right now, let's kind of put that one on ice.  I

25 think I continued it for 60 days, and I'm still in that window

1  of time when I can think about this.

2      MR. COFFIN:  Your Honor, on that subject, I think it

3  would be helpful for all plaintiffs' counsel to hear you say

4  what you just said meaning that they don't need to file

5  individual --

6      THE COURT:  I will.  I will say that for protection of

7  everyone including my court personnel and especially my court

8  personnel.

9      MR. COFFIN:  As you probably know, we've received a

10  number of inquiries as to -- and some of them panicked

11  inquiries:  "Do we need to be filing something with the Court?"

12  And we just need to be able to go back to them and say that the

13  Judge said on the record that you don't need to do this now.  I

14  think Palmer's suggestion is a good one.  Obviously we need to

15  know the specifics of the case before we can argue statute of

16  limitations issues.  And so --

17      THE COURT:  Well, and I understand that position.  The

18  defense argues the opposite that what we need to know is when

19  do the stat prescription or statute of limitations start so

20  that we can figure out how many are time-barred.

21          I told liaison counsel I wish that this was

22  something that could be just fed into a machine, whether we

23  call it -- into a computer, you know, MDL Centrality or

24  something where we could put all of the different factors in

25  and it would spit out a list of claims that are time-barred.

1    But it's probably not going to be that simple, and I don't

2    think the defendants expect it to be that simple.  However,

3    they do seek some type of proclamation as to when a

4    time-barred -- when a statute of limitations would be

5    triggered.  So we're going to have to get there one way or

6    another; and at some time or another, we're going to have to

7    get there.  I just need to figure out when and how we're going

8    to do it, and you-all might want to give some further thought

9    to that.  Like I said, I heard Palmer's suggestion this

10   morning; and, you know, I'll give it some thought and we'll go

11   from there.

12           MR. COFFIN:  On the census order, since you brought it

13   up, we were aware that Ben and his committee were working with

14   Mr. Strongman with the 505(b)(2) committee on that as well.  We

15   have a little bit of an issue with the date that is in there.

16   I think it's September 30th for when a submission should be

17   made.  I did mention that to Ben.  I think he will probably

18   bring that up to Your Honor.

19           THE COURT:  Okay.

20           MR. COFFIN:  I think we're going to need some more

21   time.  There are some firms that have a significant number of

22   cases.  We're not opposed to the process whatsoever.  We agreed

23   with the idea.  It's just allowing plaintiffs' lawyers enough

24   time.  We'll get a lot of heat --

25           THE COURT:  Why don't you-all talk to them about that?

1   As I understand it, the defendants, as long as it didn't

2   preclude them from conducting further discovery when

3   appropriate, I don't think the defendants had much of a

4   position with regard to that.  I think it's more for

5   plaintiffs' purposes -- plaintiffs' settlement committee

6   purposes is what I understood Ben's presentation to me when he

7   made it to me in the phone conference.

8           MR. COFFIN:  I'll speak to him.

9           THE COURT:  If you need more time and he's amenable to

10  it, I'm sure that would be -- we need the information.  So I

11  would rather you take more time to get the information than

12  impose a date and then have a lot of straggling information

13  because the information submitted timely wasn't accurate.

14          MR. COFFIN:  Agreed.  And, again, we agree with the

15  process.  We appreciate what Ben and his committee and the

16  other committees have done to put it together.

17          THE COURT:  Yeah.  We need an inventory.  I think it's

18  important to start building an inventory, and he's got a good

19  idea of how to do that.

20          MR. COFFIN:  Okay.  I'll talk to Ben right after this

21  to make sure we're on the same page.

22          THE COURT:  Okay.  Insofar as the report is concerned,

23  the only thing that I wanted to raise, which I did with liaison

24  and now with you-all, was the issue of the pending motion on

25  the statute of limitations.  Everything else on here seems

1    pretty clear to me.

2            Now, having said that, would anyone here like to

3    raise any issue either related to what's in this report or any

4    other issue that's not in the report that we need to talk about

5    at the committee level prior to the big meeting?

6            MR. MOORE:  Yes, Your Honor.  Douglas Moore on behalf

7    of sanofi and defense liaison counsel.

8            One of the things we didn't touch on this morning

9    was something that Dawn, Palmer and I had talked about briefly

10   in the hallway right before coming into your chambers was the

11   issue of the severance of the California cases in which you

12   made your ruling on the motion to remand.

13           THE COURT:  Right.

14           MR. MOORE:  You had asked us or you had asked someone

15   because we went back and read the transcript.  We weren't clear

16   who was supposed to --

17           THE COURT:  Whoever wants to offer edification.

18           MR. MOORE:  About whether or not Your Honor had the

19   authority to sever the multi-plaintiff cases, retain the ones

20   that you determined had federal subject matter jurisdiction and

21   then remand the ones where you determined that diversity does

22   not exist.

23           And in our research, we think under Rule 21,

24   misjoined cases can easily be severed, that you have the

25   authority to do it, that other MDLs have done it.  And we

1    proposed a stipulation to their side, and we thought the

2    deadline to file it was today.   Dawn mentioned to us yesterday

3    that it was actually Monday because you don't count the day

4    where you set it.   We were prepared to file our paper, but Dawn

5    suggested that we exchange what information we have because

6    what we're now hearing is that the position may be that -- from

7    them that you don't have the authority to do it.   We have not

8    seen what they would submit on that.   But the reason I bring it

9    up is I wanted to make sure that we could do the submission or

10   whatever it is on Monday.

11        THE COURT:   Monday is fine.   If you can't agree,

12   obviously go ahead and submit authority on both sides.   My

13   appreciation was that I could sever them; but, again, I want to

14   read what you-all with your fine research suggest is the

15   Court's authority rather than me sit here and do something that

16   either I think or that, you know -- I mean, I can obviously --

17   we can obviously research it, but I would rather have heard

18   from you-all first on it.

19             As I said when I ruled on it, my preference --

20   again, it's not a perfect world -- but the law according to

21   Judge Engelhardt, who, if we disregard the Constitution and all

22   statutory and jurisprudential authority, I would like to have

23   the cases here.   That's just me, you know, getting up in the

24   morning and going about my business, yeah, sure, I would like

25   to have them here.   But, again, as I said, jurisdiction is not

1  a trifling matter; and I would like to see what guidance

2  you-all can offer in terms of authority to do that.

3          My suspicion was that I could sever them since

4  they are not so factually intertwined.  They are independent

5  cases that happen to have been alleged because they are the

6  same cause of action against common defendants.  The cases

7  themselves -- correct me if I'm wrong -- are really not

8  related.  But let me take a look at what you-all have, and

9  we'll do obviously what we're bound to do.

10          Yes, Karen?

11          MS. MENZIES:  Karen Menzies with the plaintiffs also.

12          I did speak with counsel for California that have

13  the cases that were grouped.  I spoke to him yesterday.  My

14  understanding is he had talked to counsel for defendants as

15  well and is planning on submitting something this Monday.

16          THE COURT:  Okay.  I don't know.  We'll save that.

17          Anything else that you-all would like to talk

18  about either in the report, the joint report or otherwise?

19          Dawn?

20          MS. BARRIOS:  Thank you, Your Honor.  Dawn Barrios for

21  the plaintiffs.

22          We just wanted to let Your Honor know something

23  else that liaison counsel and Mr. Lambert and I were talking

24  about.  And that is your orders on the remand motions, there

25  will be future cases that we'll file motions for remand; and

1    we're going to work on a procedure that we define exactly what

2    has to qualify for a remand.

3              THE COURT:  Okay.

4              MS. BARRIOS:  And then any cases outside of those

5    parameters, outside of those boxes, then we would submit some

6    sort of streamline procedure where they could piggy-back on the

7    previous pleadings and just tell you the individual facts of

8    the case.  But we're going to work on that with defense liaison

9    counsel.

10             THE COURT:  Okay, great.

11             Let me ask, I guess, with regard to the cases

12   that have been remanded, is counsel in each of those cases

13   willingly participating in -- and by that, I mean like any

14   other plaintiffs' counsel -- in the MDL in terms of

15   submissions?  Or do they view it as sort of like, "Well, I'm

16   back in state court.  To heck with the judge in New Orleans, to

17   heck with all you committee people.  I'm in state court, and I

18   want to litigate in front of my judge down the street"?

19             MS. BARRIOS:  Dawn Barrios again for liaison counsel.

20             Your Honor, everyone is cooperating.

21             THE COURT:  Okay.

22             MS. BARRIOS:  We know of no one who is outside of your

23   realm, and I'm going to say this at the regular status

24   conference.  The cases physically have not been remanded yet,

25   so we don't have judges that we can reach out to at this point

1    in time.

2            THE COURT:   Okay.

3            MS. BARRIOS:   But obviously we plan on doing that, but

4    it's going to be my job and responsibility to make sure that

5    everything is coordinated and I pledge to do that.

6            THE COURT:   Okay, great.

7            MR. SHKOLNIK:   If I may, Your Honor.

8            THE COURT:   Yes, sir.

9            MR. SHKOLNIK:   Good morning.   Hunter Shkolnik on behalf

10   of plaintiffs.   I'm counsel for the Delaware-remanded cases,

11   and we are certainly cooperating with this Court fully.   The

12   one issue that we're going to be discussing with defense

13   counsel is a trial slot for a Delaware case, but not any

14   duplicative discovery working as part of the team that I'm a

15   part of, but not to forget that they should be able to try a

16   case, my clients, in Delaware state court, not to disrupt the

17   court.   And since you've laid out a series of slots and in the

18   past in other cases, we've worked out that one of the slots

19   where a defendant is not -- especially in a case like this

20   where there's multiple defendants -- so that where a defendant

21   is not being put to trial in this Court, that slot could

22   potentially be utilized for a Delaware trial.   But other than

23   that, we're fully cooperating on the Delaware side.   Thank you.

24           THE COURT:   Okay.

25                Yes.   Chris.

1          MR. COFFIN:  One other issue that I don't believe y'all

2    discussed in the liaison counsel meeting, we've had a question

3    come up about initial disclosures under 26(a).  It came up in

4    the context of a hearing before Magistrate Judge North, but I

5    think we need to talk about it in a broader sense because we

6    need some guidance from Your Honor.

7              And that is there have not been 26(a) disclosures

8    in the case thus far.  Our position is that the defense should

9    be disclosing documents and information pursuant to the initial

10   disclosures under the Federal Rules.  That being said, in CMO3,

11   which in our view related to the ten trial plaintiffs, there is

12   a phrase that says the parties have stipulated that initial

13   disclosures pursuant to 26(a)(1) will not be conducted in this

14   case.

15             The question and the guidance we need from

16   Your Honor is we interpreted that on the plaintiffs' side as

17   applying to these ten plaintiffs, not the whole case.  And

18   we've been asking for the 26(a) disclosures so that we can move

19   things along with discovery, and we've run into a brick wall.

20   So we need your guidance.

21          THE COURT:  Well, the part that you cited in that order

22   does apply to those cases.  I don't think that we've discussed

23   it in terms as a general proposition in the MDL.  Now, we spent

24   a lot of time on the fact sheets in terms of disclosing

25   evidence, but are you talking about disclosures generally?

1             MR. COFFIN:  I appreciate --

2             THE COURT:  I'm trying to make a distinction here

3      between what the expectation is above and beyond what the fact

4      sheet disclosures are.  And I'm sure there are some

5      differences, but --

6             MR. COFFIN:  I think with regard to the plaintiffs, I

7      don't know what else they would be providing outside what's in

8      the fact sheet on the initial disclosures.  With regard to the

9      defendants, in any pharmaceutical MDL, the defendants know and

10     we know right away that an NDA should be provided,

11     communications with FDA.  They know we're going to ask for

12     communications.  Insurance policies.  Let's talk about very

13     basic bare bones, insurance policies.  Everybody knows -- we

14     haven't received a single insurance policy.

15             So we believe under the Federal Rules we are

16     entitled to this from both sanofi and 505(b)(2).  We have not

17     seen one single document produced pursuant to Rule 26(a).

18             THE COURT:  Has that been part of your initial wave of

19     discovery requests, let alone 26(a)?

20             MR. COFFIN:  What we did is since we had this dispute

21     with regard to sanofi, we went ahead and issued discovery.  Our

22     concern is that they're going to have objections now, and

23     they're entitled to have their objections.  But 26(a) is a

24     different vehicle, as Your Honor well knows.  And we feel like

25     that we're entitled to those documents under the Federal Rules

1    and we shouldn't have to go through the formal procedures.

2    That's on sanofi.

3              On the 505(b)(2)s, we haven't seen document one;

4    but, of course, we haven't served any discovery because we

5    haven't gotten there yet.  So --

6              THE COURT:  Well, let me let them respond to that

7    point.

8              MR. RATLIFF:  Thank you, Your Honor.  Harley Ratliff on

9    behalf of sanofi.

10             I believe there was one of the very first PTOs in

11   which you stayed the obligations for any party to submit

12   26(a)(1) disclosures.

13             THE COURT:  Right.

14             MR. RATLIFF:  The party then negotiated CMO3 where we

15   stipulated there would be no 26(a)(1) disclosure.  They don't

16   require the production of documents.  And at least as to the

17   sanofi defendants, I think we are well past that road -- the

18   documents that Mr. Coffin was referencing, the MDA.  We've

19   produced 400,000 pages of that in the last two weeks.  I think

20   another 400- to 500,000 pages is going out today.  Insurance

21   policies were produced as part of the jurisdictional discovery.

22   We haven't withdrawn those documents and said, "Well, this is

23   off the table.  Please give us all our tax returns back.  Keep

24   those tax returns and the insurance policies."

25             So I think from a procedural standpoint where we

1    find ourselves, we're arguing over something that we've all

2    since moved past from just a practical standpoint.  The

3    documents are rolling out, we are working with them, the

4    marketing documents are going out today, SOPs relating to

5    clinical trials, regulatory documents, labeling documents.  We

6    produced distributor information from 1999 to the present.

7    That was produced earlier.  And so, to me, I feel like we're

8    putting a little bit form over substance as we talked about

9    this 26(a)(1) disclosures.

10              The other part of this is this was raised

11   significantly as a lot of discussion before Magistrate North;

12   and he said:  "I disagree with you plaintiffs.  This does not

13   apply.  Move off this issue and let's move forward with the

14   merits of these cases and the merits of discovery and getting

15   documents out the door."

16              And his admonition to me and his admonition to

17   plaintiffs was, "Defendants, you have a lot of work to do.  At

18   the same time, plaintiffs, you need to be more calculated and

19   think about what you really need given the time frame that

20   Judge Engelhardt expects these cases to be tried."

21              So our position is we're beyond that.  I can only

22   speak for sanofi; but I feel like we're starting to talk about

23   something that if it was going to be addressed, it should have

24   been addressed a year and a half ago, not while we're already

25   in the throes of discovery.

1        THE COURT:  Well, John, did you want to respond also?

2        MR. OLINDE:  Yes, Your Honor.  Your Honor, with respect

3    to the 505(b)(2) defendants, this was brought up with

4    Magistrate North; and, again, he said that he saw the orders.

5    There was no Rule 26 disclosure requirement.  He also said that

6    he understands that we're working or going to be working on a

7    discovery plan with the plaintiffs, and he specifically ordered

8    that there was not going to be any sort of disclosure discovery

9    with respect to the 505(b)(2) defendants until such time as we

10   have the discovery plan knowing that in this instance that the

11   first trial was going to be as to sanofi only.  We are still

12   working on that particular discovery plan.

13        In fact, if you look at Rule 26, what it says is

14   you wouldn't even have a disclosure obligation until you have a

15   discovery plan or are working on one.  And we haven't got to

16   that point.  We're still working, we will get to one and this

17   will be something which will happen.

18        We also have some other issues with regard to

19   which we brought up before Magistrate North, which is we have

20   several defendants who don't even have any plaintiff fact

21   sheets which even identify them as being a party in this case

22   of somebody who would be usage.

23        So I think from our standpoint, it is a situation

24   where the Rule 26 disclosures really have not triggered yet

25   especially with a standpoint of where Judge North has indicated

1  that we need to work on a discovery plan.  We're going to get

2  to it.  I mean, we're going to get to that point.  It just

3  seems at this point we're not there.

4         And with respect to the plaintiffs, of course,

5  you know, they would have a similar obligation to have some

6  disclosures.  The PFS only goes so far with respect to

7  disclosures.  You also have things such as witnesses and who

8  are you going to do -- again, something which can be done later

9  on.

10        So I think Magistrate North was entirely correct

11  that we can do this, but it's going to come at another date.

12        THE COURT:  Well, with regards to discovery and in

13  general in Rule 26 in particular, it's been the practice in

14  this district I think almost uniformly with maybe one or two

15  exceptions for those matters to be the bailiwick of the

16  assigned magistrate.  So it doesn't surprise me that it's come

17  up in your conversations with Magistrate North, and I would

18  certainly refer to him.

19        Now, I realize this is an MDL and I'm keeping a

20  little closer quarter on it and he and I communicate very

21  frequently about this case more so than any other regular case

22  on the docket.  But I would expect that he would be the one to

23  tackle the issue of information to be gathered pursuant to

24  Rule 26(a) if and when that comes into play.  I understood from

25  Doug Moore that there was a production -- at least in terms of

1    documents and I realize 26(a) is broader than that.  But there

2    was a production that was occurring on a rolling basis, and I

3    think Harley just mentioned there was some documents that are

4    being produced today -- a voluminous set of documents that were

5    produced maybe in the last two weeks.

6            So if there's a shortcoming in that production, I

7    would suggest that you go ahead and raise that with

8    Magistrate North; and if necessary, he and I will talk about

9    it.

10    MR. COFFIN:  Thank you, Your Honor.  We can do that.  I

11    just want to clear one thing up.  And that is it is correct

12    that Magistrate Judge North did give his interpretation.  The

13    second part was he said, "I suggest you bring it up with

14    Judge Engelhardt to see what his interpretation is," which is

15    exactly why I brought it to you.

16    THE COURT:  I understand that.  I understand.

17    MR. COFFIN:  To be fair, look, we are trying to get the

18    discovery going.  We just feel like we should have had it going

19    six months ago.  And so --

20    THE COURT:  I think it's going now.  From what Doug

21    tells me, there's a lot more to go.  Like I said at the outset,

22    we've got a long way to go; but at least I think from what Doug

23    described -- tell me if I'm wrong -- but I think there is a

24    rolling production going on from what he's told me.

25    MR. MOORE:  It is happening, Your Honor.  And one thing

1    that I did want to point out and this may fall into the form

2    over substance category, but I think the reason this issue is

3    being raised on their side is to view 26(a)(1) disclosure

4    responsibilities as a mechanism to have production of

5    documents.   And in virtually every case I've had in the Eastern

6    District, the Rule 26(a)(1) disclosures get waived.   And the

7    reason they get waived is because you can satisfy them not by

8    producing documents, but by simply giving a description and

9    location of the documents.   So it's the idea that we had some

10   responsibility to begin turning over things in response to

11   26(a)(1) when the rule says you can satisfy it by giving a list

12   of description things that they're already going to know

13   about -- the NDA, the IND, the communications and so forth.

14             But as Mr. Ratliff says and as Your Honor points

15   out, these documents are rolling out.   Now, we've committed

16   to --

17        THE COURT:   Chris has mentioned some things with

18   specificity.   Can you identify by marking -- I don't know

19   whether they are Bates-marked or whatever, however they are

20   correlated -- but can you identify the specific things he's

21   mentioned?   When you say that's 400,000 pages, he may be

22   talking about documents that consist of 8,000 pages.   Is there

23   a way to categorize those documents to specifically identify

24   what he's just mentioned?

25        MR. MOORE:   I think we are producing them identifying

1    them by Bates ranges.

2         THE COURT:  Is there an index or something that he

3    could go specifically -- rather than saying, "Okay, well, it's

4    somewhere in the 400,000; but I'm pretty sure we produced it,"

5    maybe you can be more specific?

6         MR. RATLIFF:  Sure, Your Honor.  And all these

7    productions come with a production log that identify the Bates

8    label, what the documents are.  When we talk about the IND,

9    Investigational New Drug application, and the NDA, those are

10   terms of art; but they encompass a volume of types of documents

11   that they're looking for.  So things like what are known as

12   PSURs, which are sort of quarterly annual reports that go to

13   regulatory bodies; the PBREs.  Core safety data sheets, that's

14   another thing that Ms. Menzies and Mr. Coffin said, "Well, we

15   want those."  Those are going to be in the NDA.

16        The NDA is not a stagnant document.  It is a

17   living document that really encompasses a broad category of

18   individual-type documents.  It really is the core of anything

19   that involves a prescription drug with FDA -- so communications

20   with FDA, changes to the label, rationales for why the label

21   was being changed.

22        And so, yes, to answer your question, there are

23   production logs; but it would be a very onerous task to go

24   through each one and say this one is there, this one is there,

25   it's going to be there.  All of these folks are sophisticated

attorneys who have been involved in these types of litigations.
They know that's what they're going to find in these particular
documents.  For example, like with the IND, it would be all of
the preclinical toxicology, the toxicology testing, the animal
testing, that stuff that has already rolled out.

And then there will be other productions.  Like I
said, marketing documents are going out today in accordance
with the timeline that we discussed and was ordered by
Magistrate North.  And so we are doing everything we can to
meet those rolling productions.  And we want to get them out
the door as quickly as possible because what I don't want to do
from a personal standpoint is to have to come in before you or
before Magistrate North and explain why more documents are not
going out the door.

THE COURT:  What about he mentioned insurance?

MR. RATLIFF:  Insurance policies were produced, in
fact, in reference in open court I think by Mr. Lemmon before
Magistrate North that were produced as part of the personal
jurisdiction discovery.

So I was a little taken aback to hear that those
haven't been produced when we've talked about it in open court
on the record with Magistrate North.

THE COURT:  Okay.

MR. COFFIN:  Look, Your Honor, our main point is we
feel like we're behind the eight ball.  And if 26(a)

1    disclosures were intended by this Court, we wanted that to be

2    enforced.  It's simple.  We understand that documents are

3    rolling out now, but we are way behind where we felt like we

4    should have gotten documents month ago.

5         THE COURT:  Well, I will tell you that

6    Magistrate North's interpretation will be honored by me.  He

7    and I talk, as I said, frequently about the case.  He did not,

8    in my conversations with him, he has not suggested that there

9    was any confusion on his part about 26(a) either in terms of my

10   application or waiver of it or in general the Court's en banc

11   position regarding it.  So his instructions to you are good

12   with me.

13        MR. COFFIN:  Okay.  Thank you.

14        THE COURT:  Okay.  All right.  Anything else?  The

15   floor is open for discussion.  John?

16        MR. OLINDE:  Your Honor, with respect to these, we

17   discussed in the liaison counsel meeting, had to do with two of

18   the cases which were set for the trial.  Two cases --

19   Deborah Johnson and Barbara Earnest, which had 505(b)(2)

20   defendants in it.

21             Just so everyone knows and I think it's been

22   discussed already, but in the Deborah Johnson case, we worked

23   it out where they're going to dismiss the 505(b)(2) defendants

24   in that case.  And I appreciate Dawn and I know that

25   Morris Bart's firm is involved.

1              With respect to the Barbara Earnest case, we're

2     going to continue to discuss that case to try to get the

3     505(b)(2) defendants out because if there is a 505(b)(2)

4     defendant usage in the case, the case drops out of the trial

5     pool.  So we're going to continue to work for the next couple

6     of weeks.  If we can't resolve it, we'll come back to

7     Your Honor on that.  Thank you.

8              THE COURT:  Okay.  Sounds good.

9              Anything else before we migrate over next door?

10    Anybody?  Complaints, comments, criticisms, gripes, fears?

11             All right.  Well, thank you-all.  I will see you

12    shortly in the big courtroom, the big conference in the other

13    courtroom.

14             (WHEREUPON, the proceedings were adjourned.)

15                            * * * *

16                    REPORTER'S CERTIFICATE

17             I, Lanie M. Smith, CRR, RPR, Official Court
      Reporter, United States District Court, Eastern District of
18    Louisiana, do hereby certify that the foregoing is a true and
      correct transcript, to the best of my ability and
19    understanding, from the record of the proceedings in the
      above-entitled and numbered matter.

20

21                            ___/s/ Lanie M. Smith_____
                              Official Court Reporter

22

23

24

25