1
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
2
     *****************************************************
3
     IN RE:   TAXOTERE (DOCETAXEL)
     PRODUCTS LIABILITY LITIGATION
4
                                        MDL No.  16-2740
     VS.                                Section "N"
5                                       New Orleans, Louisiana
                                        September 8,  2017
6
     THIS DOCUMENT RELATES TO
     ALL CASES
7
     *****************************************************
8
                TRANSCRIPT OF GENERAL STATUS CONFERENCE
9          HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                    UNITED STATES DISTRICT JUDGE
10

11   FOR THE PLAINTIFFS:          MS.  DAWN M.  BARRIOS
                                  MR.  ZACHARY WOOL
12                                Barrios Kingsdorf & Casteix
                                  701 Poydras Street
13                                Suite 3650
                                  New Orleans, Louisiana  70139
14
                                  MR.  M.  PALMER LAMBERT
15                                Gainsburgh Benjamin David
                                    Meunier & Warshauer
16                                1100 Poydras Street
                                  Suite 2800
17                                New Orleans, Louisiana  70163

18                                MR.  CHRISTOPHER L.  COFFIN
                                  Pendley, Baudin & Coffin
19                                1515 Poydras Street
                                  Suite 1400
20                                New Orleans, Louisiana  70112

21                                MS.  KAREN B.  MENZIES
                                  Gibbs Law Group
22                                400 Continental Boulevard
                                  6th Floor
23                                El Segundo, California  90245

24

25

1                    MR. IRVING J. WARSHAUER
                     Gainsburgh Benjamin David
2                      Meunier & Warshauer
                     1100 Poydras Street
3                     Suite 2800
                     New Orleans, Louisiana 70163
4

5                     MR. J. KYLE BACHUS
                     Bachus & Schanker
6                     1899 Wynkoop Street
                     Suite 700
7                     Denver, Colorado 80202

8                     MR. LAWRENCE J. CENTOLA
                     Martzell Bickford & Centola
9                     338 Lafayette Street
                     New Orleans, Louisiana 70130

10                   MS. ABBY E. McCLELLAN
                     Stueve Siegel Hanson
11                   460 Nichols Road
                     Suite 200
12                   Kansas City, Missouri 64112

13                   MR. DANIEL P. MARKOFF
                     Atkins & Markoff Law Firm
14                   9211 Lake Hefner Parkway
                     Suite 104
15                   Oklahoma City, Oklahoma 73120

16                   MR. DAVID F. MICELI
                     Simmons Hanly Conroy
17                   One Court Street
                     Alton, Illinois 62002
18

19                   MR. RAND P. NOLEN
                     Fleming, Nolen & Jez
                     2800 Post Oak Boulevard
20                   Suite 4000
                     Houston, Texas 77056
21

22                   MR. HUNTER J. SHKOLNIK
                     Napoli Shkolnik
                     360 Lexington Avenue
23                   11th Floor
                     New York, New York 10017
24

25

```
 1                              MR. VAL PATRICK EXNICIOS
                                Liska, Exnicios & Nungesser
 2                              1515 Poydras Street
                                Suite 1400
 3                              New Orleans, LA 70112

 4                              MR. BENJAMIN W. GORDON
                                Levin Papantonio Thomas
 5                                  Mitchell Rafferty & Proctor
                                316 S. Baylen Street, Suite 600
 6                              Pensacola, Florida 32502

 7                              MR. ANDREW LEMMON
                                Lemmon Law Firm
 8                              650 Poydras Street
                                Suite 2335
 9                              New Orleans, LA 70130

10                              MR. DAVID BONNIN
                                The Law Offices of
11                                  A. Craig Eiland, PC
                                2211 The Strand
12                              Suite 201
                                Galveston, Texas 77550
13
                                MR. ALEXANDER G. DWYER
14                              Kirkendall Dwyer
                                440 Louisiana
15                              Suite 1901
                                Houston, Texas 77002
16
                                MS. ANNE ANDREWS
17                              Andrews Thornton Higgins
                                    Razmara
18                              2 Corporate Park
                                Suite 110
19                              Irvine, California 92606

20                              MS. BETSY J. BARNES
                                MR. JOHN ENOCHS
21                              MS. LAUREN E. GODSHALL
                                Morris Bart
22                              Pan America Life Center
                                601 Poydras Street
23                              24th Floor
                                New Orleans, Louisiana 70130
24

25
```

```
 1    FOR SANOFI S.A.:                MR. DOUGLAS J. MOORE
                                      Irwin, Fritchie,
 2                                        Urquhart & Moore
                                      400 Poydras Street
 3                                    Suite 2700
                                      New Orleans, LA  70130
 4
                                      MR. HARLEY V. RATLIFF
 5                                    MR. JON STRONGMAN
                                      Shook, Hardy & Bacon
 6                                    2555 Grand Boulevard
                                      Kansas City, Missouri  64108
 7
      FOR PFIZER, INC., AND           MR. MARK S. CHEFFO
 8    HOSPIRA WORLDWIDE, LLC:         Quinn Emanuel Urquhart &
                                          Sullivan
 9                                    51 Madison Avenue.
                                      22nd Floor
10                                    New York, New York 10010

11    FOR ACTAVIS PHARMA, INC.:       MR. MICHAEL J. SUFFERN
                                      Ulmer & Berne, LLP
12                                    600 Vine Street
                                      Suite 2800
13                                    Cincinnati, OH 45202

14    FOR HOSPIRA                     MR. JOHN F. OLINDE
      WORLDWIDE, LLC:                 Chaffe McCall
15                                    2300 Energy Centre
                                      1100 Poydras Street
16                                    New Orleans, LA  70163

17    FOR SANDOZ, A NOVARTIS          MR. R. CLIFTON MERRELL
      DIVISION:                       MS. LORI G. COHEN
18                                    Greenburg Traurig
                                      Terminus 200
19                                    3333 Piedmont Road, NE
                                      Atlanta, GA  30305
20
                                      MS. DEBORAH B. ROUEN
21                                    Adams & Reese
                                      701 Poydras Street
22                                    Suite 4500
                                      New Orleans, Louisiana  70139
23

24

25
```

```
1    FOR ACCORD HEALTHCARE,           MS. JULIE A. CALLSEN
     INC.:                            Tucker Ellis
2                                     950 Main Avenue
                                      Suite 1100
3                                     Cleveland, OH 44113

4    FOR McKESSON CORPORATION:        MS. ERIN M. BOSMAN
                                      Morrison Foerster
5                                     12531 High Bluff Drive
                                      Suite 100
6                                     San Diego, CA 92130-2040

7    FOR SUN PHARMA GLOBAL,           MR. GEOFFREY COAN
     INC.:                            Hinshaw & Culbertson
8                                     28 State Street
                                      24th Floor
9                                     Boston, Massachusetts  02109

10   Official Court Reporter:         Lanie M. Smith, RPR, CRR
                                      500 Poydras Street, B-275
11                                    New Orleans, Louisiana 70130
                                      (504) 589-7782
12

13

14

15

16

17

18

19

20

21

22

23

24
             Proceedings recorded by mechanical stenography,
25   transcript produced via computer.
```

P R O C E E D I N G S

(Call to order of the court.)

THE COURT:   Good morning.   You may be seated.

For the record, we are convening a status conference here in court in the *In Re:   Taxotere (Docetaxel) Products Liability Litigation,* MDL No. 2740.

Also for the record, I previously met this morning, as I usually do on days when we have these conferences, with liaison counsel and had a very productive meeting with them; and we just concluded a short while ago a meeting with the committees working in the MDL, the appointed committees.

So this is the general status conference.   My intent is to have counsel walk us through the joint report and present all of that information to those who are present and those who may be listening in on the phone hookup so that they can be apprised of what's going on in the MDL.   I will then afford whoever wishes to raise an issue, those of you here in the courtroom, for further discussion whether it's part of the report or whether it's a new issue that hasn't been discussed as part of the presentation of the report.   So you'll have an opportunity to raise new issues if there's a concern.

I would encourage counsel who are here if you have any questions for any of the liaison counsel or lead

1    counsel who are making comments here today, please feel free at

2    that time to so indicate and we'll take those questions as

3    we're on a particular topic rather than hold them to the end.

4                 Okay, who would like to begin.   Ms. Barrios?

5         MS. BARRIOS:   Thank you, Your Honor.   Dawn Barrios,

6    co-liaison counsel.

7                 For the benefit of the more than 50 attorneys on

8    the phone, I would just like to explain to them that the joint

9    report to which you referred is something that has not been on

10   the website.   It will be placed on the website when it's

11   finalized at the beginning of next week.   So if they are

12   feverishly trying to find it, I wanted them to know that it's

13   not there.

14                Number 1 on the joint report, Your Honor, is the

15   report of claims and case inventory.   As of September 5, 2017,

16   including the voluntary dismissals, there are 1,652 cases

17   before Your Honor.

18                With regard to Item Number 2, which is

19   federal/state coordination, you had issued a ruling earlier

20   that remanded cases to both California and to Delaware.   And we

21   have checked with the clerk's office and those cases have not

22   been formally and physically sent back, so we didn't have an

23   opportunity to talk to the judges and invite them to the

24   conference.   But we appreciate the fact that you're going to

25   allow us to work together with the defense liaison counsel for

1    any future remand motions so that your rulings in this case

2    that you've already handed down may be applicable to future

3    remand motions.

4            THE COURT:  Right.

5            MS. BARRIOS:  With regard particularly to the

6    California State Court, the Court granted in part and denied in

7    part the plaintiffs' motion to remand.  And we have

8    supplemental briefing on the authority with the Court to sever

9    some cases, and that will be due on Monday from both parties.

10           THE COURT:  Okay.

11           MS. BARRIOS:  On the Missouri state cases, Missouri

12   counsel, Mr. Miceli, who is in the courtroom, has agreed to

13   withdraw his motion to remand.  And with regard to the Delaware

14   cases, Mr. Hunter Shkolnik made a presentation to Your Honor

15   earlier in the committee meetings and he pledged his full

16   cooperation with this Court, but would like to have

17   consideration of a trial in Delaware in state court there.

18           THE COURT:  On that note, let me say that for any

19   plaintiffs' counsel who happens to have a case in state court

20   that is remanded, I would strongly encourage counsel to

21   participate in the MDL to the full extent as though the case

22   were pending here.  You know, because there's been a

23   jurisdictional ruling doesn't in any way preclude participation

24   in every aspect of the MDL, certainly from a cooperation point

25   of view, but also in terms of merits-based litigation here.  So

1    I don't want anyone to be under the impression that because a

2    case has been remanded that somehow it should be considered

3    separate from the MDL for any purpose other than the fact that

4    it's pending in a different jurisdiction.

5           MS. BARRIOS:  Yes, Your Honor.  And so that you have a

6    full understanding of the cooperation that we've gotten from

7    attorneys across the country, I did want to let you know that

8    Mr. Lambert and I routinely communicate with everyone.  In

9    fact, my IT guy said I send out too many mass e-mails to the

10   plaintiffs.  We have 77 plaintiffs' attorneys who are not

11   court-appointed that are attending this status conference

12   either by telephone or in court.  And last week we had an

13   all-plaintiffs call in which the co-lead counsel contributed,

14   along with Mr. Lambert and myself; and we did a presentation

15   for 90 minutes to over 160 law firms to what's been happening

16   in the MDL.

17           So I can honestly say in my many stints as

18   federal/state coordinator, I've never seen a case that's been

19   so coordinated; and I want to keep it that way.

20           THE COURT:  Okay, good.  Thank you.

21           MS. BARRIOS:  Your Honor, the pretrial orders are

22   attached as Appendix A to the joint report.  The pretrial

23   orders that have been issued since the last status conference,

24   Pretrial Order 53, which are amendments to the plaintiffs' long

25   form complaint, exemplar short form complaint and fact sheet,

1    there is another pretrial order that should be read along with

2    that and that's Pretrial Order 55.  The reason these orders

3    were entered was because we had to correct defendants' names in

4    there.  And I caution everyone to review the pretrial orders

5    because you do not have to file an amended complaint.  You do

6    not have to amend your plaintiffs' fact sheet to name the

7    correct defendants, which is very helpful, and you do not have

8    to issue a new summons.

9             THE COURT:  Okay.

10            MS. BARRIOS:  Pretrial Order 59 that you issued

11   yesterday, Your Honor, deals with the defendants' motion to

12   dismiss based upon statute of limitations.  And it's my

13   understanding from prior conversations that you do not want

14   individual counsel to file any individual responses on the

15   individual cases at the present time and you will alert

16   leadership and we will tell the attorneys when it's time if

17   it's ever time to file those individual complaints.

18            THE COURT:  Yes.  Let me be clear on that.  There was

19   and is pending a motion filed by sanofi regarding the statute

20   of limitations and it is a motion that is general or *in globo*

21   in terms of its arguments to claims pending in the MDL, of

22   course, recognizing the different state laws that might apply.

23                 And that's one way to handle it and I've read

24   through that motion with great curiosity and I understand the

25   need -- it's a very important issue that will need to be

1   confronted in this case in some way, shape or form at the

2   appropriate time.  It was noticed for hearing.  I continued it

3   for 60 days.  At that time my understanding was that contrary

4   to the defendants' presentation, plaintiffs' counsel sought to

5   file not only a general opposition memorandum, but that also

6   individual plaintiffs' counsel would seek to file memoranda on

7   behalf of particular clients or groups of clients.

8           And at this point I'm not quite sure how I would

9   like to best handle it, and so I'd like to pretermit that

10  decision still subject to the -- I continued it for 60 days,

11  and I'll keep you posted as to where we are on it.  I don't

12  want to have, you know, some 80 opposition memoranda filed and

13  then, of course, the reply from the defendant.

14          So let me give that some further thought.  I've

15  discussed it in detail this morning with liaison counsel, and I

16  understand the concerns on both sides as well as the

17  suggestions on both sides as to how best to handle it.  I will

18  say that it will need to be handled.  There will need to be

19  consideration on both sides of which claims remain viable and

20  which claims are time-barred.

21          When we get to that inquiry and when we get to a

22  ruling on that, that's the concern that I have is when's the

23  optimum time to do that based on information that we have and

24  the need to have it decided.  But it will be something that

25  will have to be considered at some point before we get this MDL

1    resolved.   Certainly before we have even probably some serious

2    discussions when we get past the concept of resolution of the

3    MDL, I think the defendants are going to have to know what the

4    Court's position is if there's no agreement between counsel

5    what the Court's position is with regard to the time-barred

6    nature of certain claims because we do have claims that go

7    back, I believe, to the mid to late Nineties all the way up.

8    And I understand there's arguments about when certain notices

9    were given and certain representations were changed and

10   labeling and things of that sort, plus we have different

11   protocols of treatment that we used.

12            But we will have to confront those.   One of the

13   suggestions that Mr. Lambert made was maybe confronting some of

14   those in the context of the trial plaintiffs, those that have

15   already been identified with specificity and that rulings in

16   that context could be extrapolated out.   And that's one way to

17   do it.

18            I suspect that if I rule on one, however,

19   everyone else is going to be distinguished.   If I wind up

20   granting the motion, there will be obviously an argument that

21   mine is not like that one.   Or if I deny a statute of

22   limitations motion on that one, then the defendants would

23   certainly say, well, that may be one; but there are large

24   swaths of other plaintiffs who clearly do have time-barred

25   claims.

1    And those are all good arguments, so let me give

2    some further thought to that.  But in the meantime to be clear,

3    on the plaintiffs' side, do not submit an opposition memorandum

4    at this time.  You will be given full notice of the Court's

5    mode of procedure.  You will also be given a full opportunity

6    to file opposition memoranda or if it can be done in a single

7    memorandum, that will happen and the defendants will also be

8    given an opportunity to file a reply to whatever is filed in

9    response to their original motion.

10   MS. BARRIOS:  Thank you, Your Honor.  I appreciate the

11   clarification on whether they have to file an opposing

12   memorandum.

13   The last pretrial order that you issued was

14   issued yesterday.  It's Pretrial Order 60 and it emanated from

15   the settlement committee that you have appointed and at a later

16   point in the joint report, Mr. Gordon will make a presentation

17   and review the contents of that order.

18   THE COURT:  Do you want to go ahead and do that now?

19   MS. BARRIOS:  That's fine.

20   THE COURT:  Mr. Gordon is here.  And we had a telephone

21   conversation some weeks ago when Mr. Gordon and a few others --

22   Mr. Strongman was on the line at the time.  And our attempt as

23   I understand it from Mr. Gordon is to try to -- I'm going to

24   let him explain in detail because I think it's a great idea.

25   But basically we're talking about generating a census of sorts

1    that would be of valuable use to the settlement committees.

2              And so if you would like to go ahead, Mr. Gordon,

3    along with your other counsel involved.

4         MR. GORDON:   Thank you, Your Honor.   Ben Gordon for the

5    Plaintiffs' Settlement Committee, Jon Strongman for sanofi and

6    Ms. Cohen for the 505(b)(2) Committees.

7              We had an opportunity to meet with members of

8    their respective committees, including the entire sanofi

9    committee a couple of weeks ago in New York.   And this was one

10   of the issues that was discussed along with others that I won't

11   get into any detail unless the Court wants.   I'll just talk

12   about the census PTO issue.

13             One thing I want to say first having talked to

14   leadership moments ago and to use the modern parlance to avoid

15   lawyers from "freaking out" -- I'm not sure that's an

16   appropriate term -- but I think a concern has been raised that

17   this September 30th date that we put in the order is a little

18   ambitious perhaps and that some folks are concerned that it

19   might be too onerous given their numbers of punitive claimants

20   to fully comply by September 30th.

21             I thought what I would do is go through what the

22   order does require and doesn't require -- and thank you, by the

23   way, for entering it.   But if the Court is receptive to some

24   minimal extension, perhaps toward the end of October or

25   something like that, we could certainly submit a proposed

1    modification by Monday.

2         THE COURT:  Well, that's fine; and I don't have any

3    issue with it.  I think the goal is to try to get the

4    information as accurate and as complete as possible to uphold a

5    deadline that's going to generate information that might be

6    infirm in some respect or outrightly incorrect doesn't serve

7    any purpose.  So if you would like to add 30 days to that or

8    pick another date after you confer with leadership on the

9    plaintiffs' side, that will be fine.

10        MR. GORDON:  Thank you, Your Honor.  We'll do that.

11   I'll go through just briefly what the order requires so that

12   those on the phone understand the burden and that we think it's

13   not a terribly great burden, but depending on numbers of cases,

14   we understand that things take time.

15             The purpose of the order, as the Court has stated

16   and as we know is simply to identify all potential claimants

17   that are represented right now of folks who have confirmed

18   proof of use of a docetaxel product, any docetaxel product and

19   an injury, whatever level of injury.  We're not asking them to

20   define that in any way like a PFS might or something that could

21   be established once the case is in litigation.  In fact, it

22   doesn't require them to say definitively which docetaxel they

23   have used.

24             Now, if it's known under, I think it's Column J

25   or K of the spreadsheet, then they are to identify the

1  particular manufacturer or manufacturers they know about.  But
2  if it's unknown, they can say that for the time being.  And,
3  again, it's an iterative process.  The idea is that folks will
4  update the form periodically.  We have a 90-day sort of
5  interval set up.  And I want to say now I think liaison counsel
6  or leadership may say this in a follow-up e-mail to all known
7  plaintiffs' counsel; but people are encouraged to update it
8  regularly.  They don't have to wait for the 90 days.
9           The idea is that while this may initially -- and
10  the defendants may want to speak to this -- may not be as
11  robust a process as we would hope, we're hoping that people, as
12  they get more information and continue to update it, it will
13  gradually become a very helpful process in terms of really
14  predicting what the universe of claimants against all the
15  manufacturers will be.  And because that necessarily takes time
16  and because it will necessarily involve an underreporting, we
17  think at the beginning the sooner the process reasonably can
18  start from our point of view, the better.
19           But in terms of what is actually required, let me
20  say before that one other thing that people have raised a
21  concern about, the data initially -- and the defendants have
22  agreed to this -- is only going to the settlement committee.
23  It's going through BrownGreer.  And folks, if they haven't
24  already, they can register by e-mail at -- I think it's
25  taxotere@browngreer.com.

1          Do I have that right?

2          MS. BARRIOS:   Yes.

3          MR. GORDON:   And they can register for MDL centrality

4     if they don't or haven't already.  But it will only go to a

5     portal that will be accessed and information reported only to

6     the Plaintiffs' Settlement Committee at this time.  And we will

7     protect that information, that raw data, inviolate unless and

8     until there's some point in time in the future where the Court

9     and the parties agree to change that.  But for now, the

10    information will be protected from any further disclosure.  And

11    the idea, again, is that we only want to collect the numbers of

12    cases of confirmed docetaxel use of any kind and confirmed

13    injury of any kind.

14          And so under Paragraph 4 of this order -- and,

15    again, the liaison counsel will make this very clear in an

16    e-mail -- the only thing that is required is to identify claims

17    for people who have confirmed docetaxel use and some level of

18    confirmed injury.  So if counsel doesn't know definitively any

19    specifying docetaxel use yet or if they don't know of a

20    specific injury yet, if they don't have photographs, for

21    example, or other evidence of an actual injury, then the onus

22    is not on them to report that case under this PTO yet.  And, in

23    fact, unconfirmed cases shouldn't be reported because we don't

24    want people to have to come in -- although it will happen --

25    and have to take them off of the list.  We would rather have

1   folks wait until they confirm the manufacturer of docetaxel and

2   have some confirmation that the case meets their criteria for

3   understanding that there is a level of injury of some kind.

4              So we think with those caveats that are spelled

5   out in Paragraph 4, the burden is much less cumbersome than

6   folks may initially think when they see the order.

7              MR. STRONGMAN:  Good morning.  Jon Strongman on behalf

8   of sanofi.

9              And obviously as Mr. Gordon said, this is a

10  process at this point that is focused almost solely on the

11  Plaintiffs' Settlement Committee side.  The information won't

12  be shared with us.  So it's a process that we discussed, but at

13  this point it's largely in their boat.  So in terms of the

14  details of it, we certainly don't have any objection.

15  Hopefully at some point, that's the kind of information that we

16  will need and we will need to be able to look at and discuss

17  and until then, you know, it's just in their boat and it's a

18  first step.  But we continue to talk about it and move forward.

19             THE COURT:  Okay.

20             MS. COHEN:  Good morning, Your Honor.  Lori Cohen on

21  behalf of the 505(b)(2) defendants.

22             And I echo what Mr. Strongman said.  The only

23  thing I would add there is we had some discussions about the

24  census form before it was submitted to Your Honor in the past

25  week.  We have worked collaboratively with Mr. Gordon looking

1    at it.  And as Mr. Strongman said, we decided on behalf of all

2    the defendants, that we wouldn't chime in and give specific

3    revisions.  However, we did sort of expressly, as I think you

4    probably saw the e-mail, reserve the right later to come back,

5    offer thoughts and revisions and suggestions.  So to the extent

6    that later it's going to be a tool that we can use or that can

7    be used perhaps to help further discussions, whether they be

8    settlement discussions or otherwise, you know, we would

9    probably want to at that point look at the order perhaps, you

10   know, add additional comments and revisions to it.

11             THE COURT:  Okay.  All right.

12             MS. COHEN:  But, otherwise, we have no objections to

13   the additional time.  As Your Honor said, if it's going to

14   yield helpful information and more accurate information that

15   helps them winnow down the cases, perhaps; then that's to our

16   benefit as well.

17             THE COURT:  And I think it will.  I remember

18   Mr. Strongman saying several conferences ago the concern about

19   what the universe of cases were out there, the great unknown at

20   this point.  And I think Mr. Gordon has identified a very

21   effective way and a way that will be efficient, too, for us to

22   know that.  Of course, we do have the fact sheets; but I mean,

23   there's a different standard there and a different -- you know,

24   we have some people that are in the litigation already; we have

25   some people who have claims that have yet to be filed.  So we

1    will know what claims are out there even if they're not yet in

2    the MDL.  And I think that this is wise to get this done now

3    rather than slow down the process once we do have a trial or

4    two of finding out what's out there.

5              So I really thank Mr. Gordon and his committee

6    for putting this -- scheduling this now and attempting to get

7    this done now and I do think it will be helpful; so let's go

8    ahead and proceed with that.

9              MS. COHEN:   Thank you.

10             MR. GORDON:   Your Honor, if I might just say in closing

11   I did want to mention that Mr. Niemeyer joined me in New York

12   for the meetings with counsel for both committees.  And I don't

13   want to get into the substance of issues discussed; but I think

14   on behalf of all committees we wanted to say to Your Honor that

15   if there is an opportunity at which you wish at some point, we

16   would be willing to talk to you privately about these

17   particular issues that we discussed and flesh those out a bit.

18             THE COURT:   Okay.   Thank you.

19             MR. GORDON:   Thank you, Your Honor.

20             MR. COFFIN:   Your Honor, Chris Coffin on behalf of the

21   plaintiffs.

22             THE COURT:   Go ahead.

23             MR. COFFIN:   With regard to CMO 60, the census order

24   that Mr. Gordon just spoke about, the concern about lawyers

25   freaking out could be attributed to the leadership.  I just

1    want to reiterate for all the lawyers on the phone especially

2    and those in the courtroom, that we're going to work with

3    Mr. Gordon to submit a new deadline for the census information.

4    That will be done by early next week.  So the deadline that is

5    in CMO 60 will not stick.  You will have more time.  I need to

6    work that out with Mr. Gordon and his committee.  We clearly

7    support what they are doing.  I just want to be sure that

8    everybody has a little bit more time.

9            THE COURT:  Okay.  All right.  That's fair enough.

10                All right.  Ms. Barrios?

11           MS. BARRIOS:  One last thing with regard to Pretrial

12   Order 60, we will send out an e-mail to all counsel explaining

13   it.  And we will let them know when the centrality feature

14   becomes live because I don't think it's live at the present

15   time.  So it may take Mr. Woody a few days to put it up on the

16   centrality website.

17           THE COURT:  Okay.

18           MS. BARRIOS:  But everybody will be notified.

19           THE COURT:  Okay, great.

20           MS. BARRIOS:  Under Item 4, the case management orders,

21   these are the orders that deal with the trial dates that have

22   been set by Your Honor in 2018.  We have Case Management Order

23   3; and in that case management order, the ten plaintiffs were

24   identified, the cases against sanofi only.  And the plaintiff

25   had to have jurisdiction of venue proper in the Eastern

1       District.

2              THE COURT:   Right.

3              MS. BARRIOS:   Case Management 4 talks about the

4       case-specific discovery, that plan that we've worked out with

5       sanofi.

6                     No. 5 is a general discovery protocol for use

7       with the sanofi defendants and that was crafted by Magistrate

8       Judge North and we'd like to extend our appreciation for all of

9       his help with this.

10                    And Case Management Order 6 sets the bellwether

11      trials in 2019.

12             THE COURT:   Right.   Okay.

13             MS. BARRIOS:   There are a couple of orders that the

14      parties are still working on, Your Honor.   We have to do case

15      management order for general discovery with the 505(b)(2)s.

16      We've been exchanging information on that and also a case

17      management order for the second trial.   So you should be

18      getting those within the next week or two.

19             THE COURT:   Okay.

20             MS. BARRIOS:   Item Number 5 is the counsel contact

21      information form.   This is a form that is vital to any

22      plaintiff who has a case in the MDL.   It emanates from Pretrial

23      Order Number 7.   It's a very simple form to fill out, and we

24      use it in my office to send out e-mails.   But most importantly

25      it's Mr. Woody's way to serve everyone in the MDL.   So please

1    fill out the counsel contact form.

2            Item Number 6 is the master complaint and the

3    short form complaint.  As I indicated earlier with regard to

4    PTOs, there were amendments of these; and we have put those as

5    Record Doc. 642.  We have done stipulation that Your Honor has

6    adopted.  It's PTO 55 and it's at Record Doc. 688.  Again,

7    there's no need for any plaintiffs' counsel to do anything to

8    amend complaints or to amend the plaintiff fact sheets.

9            The only exception is that under streamline

10   service order, they must serve Sun Pharmaceuticals, formerly

11   known as Caraco Laboratories, Inc., under Pretrial Order 53 and

12   the information is contained in that order.

13           THE COURT:  We did have a discussion regarding the

14   master complaint and the Court's ruling on the Rule 12 motions

15   that there would be -- plaintiffs would be afforded an

16   opportunity to amend as to two counts, two causes of action.

17   And so when that is forthcoming, of course, defendants will

18   have an opportunity to consider further Rule 12 motion practice

19   along the lines of what's already been argued.  If they choose

20   to do so, the Court will then, of course, take those issues up.

21   So there may be -- we'll cross that bridge when we get to it --

22   but there may be reason to have a short extension of the

23   deadline for answering -- filing the full-blown answer to the

24   master complaint.

25           As I said, we'll take a look at what is filed in

1   response to the Court's order as well as what the defendants'

2   position is with regard to that.

3        MS. BARRIOS:   Thank you, Your Honor.

4        Any plaintiff who is filing in the MDL at this

5   time or in the future must use the short form complaint.  If a

6   plaintiff is amending a complaint and does not include on the

7   amendment all the defendants that were on the original

8   complaint, the clerk's office will terminate all the defendants

9   not named.  So it's important for everyone to realize that the

10   clerk's office is going to take those defendants' names out of

11   your case.

12        The relevant PTOs for the short form complaint

13   are PTO 15, which is Record Doc. 230; PTO 37, which is Record

14   Doc. 318; PTO 41, which is Record Doc. 331.  We caution all

15   plaintiffs who are filing the short form complaint to make

16   reference to the master complaint for more detailed

17   information.

18        If a plaintiff in this MDL wants to amend their

19   complaint, they must follow local Rule 7.6, which means that

20   they must contact defense liaison counsel to seek permission,

21   to see if there is any opposition to the amendment.  Defense

22   liaison counsel has asked that they provide the proposed motion

23   and order as well as the amended pleading; and if they have

24   documentation of product ID, if that's the reason that they are

25   amending to add a new defendant, defense liaison counsel has

1    asked for that.

2         So there is a local rule that many attorneys are

3    not aware of and many have had things kicked back to them from

4    the clerk's office and I would caution them to check local

5    Rule 7.6.  And in the joint report when it's filed, we will

6    have the Court's website, the exact cite for that local rule.

7         THE COURT:  Okay.

8         MS. BARRIOS:  In Pretrial Order 54, this is another

9    procedural matter that the plaintiffs' counsel need to be aware

10   of.  If you're entering a voluntary dismissal of the entire

11   case, there are procedural steps that you must take under

12   Pretrial Order 54.  I stress that it relates only to if you are

13   dismissing the entire case.  If you're just dismissing a

14   defendant, you do not need to go through all the steps of

15   Pretrial Order 54.

16        With regard to Item Number 7, which is the

17   plaintiff and defendant fact sheets, there are key pretrial

18   orders that counsel must consult.  It's Amended Pretrial

19   Order 22, which is Record Doc. 325.  This is a very important

20   order.  I'm sure all plaintiffs' counsel have read it numerous

21   times.

22        Pretrial Order 23, which is Record Doc. 280,

23   amends Exhibit A, which are the authorizations to the plaintiff

24   fact sheets.

25        Pretrial Order 24 provides additional details on

1    the service of fact sheets and authorizations.

2           And Pretrial Order 55 grants the filing of an

3    amended plaintiff fact sheet.

4           Again, Amended Pretrial Order 22 gives you the

5    timeline of when you must file the plaintiff fact sheet.  It

6    also triggers when a defendant fact sheet is due.  Because this

7    order was amended, there was some ambiguity on what the, quote,

8    date of this order really meant because the term "date of this

9    order" triggered the different time lines.  And, Your Honor has

10   indicated that the date of the order refers to the initial

11   Pretrial Order 22, which -- and the date of that order is

12   March 10th, 2017.

13          THE COURT:  Okay.

14          MS. BARRIOS:  As of September 5th, the plaintiffs have

15   served 822 plaintiff fact sheets and 437 plaintiff fact sheets

16   are in progress.  Based upon the plaintiff fact sheets received

17   as of that date, they are divided among the defendants as

18   follows:  441 against the sanofi defendants, 62 against

19   Hospira, 12 against Sandoz, 12 against Accord, 172 unknown, 50

20   blank and 79 have checked off "other miscellaneous."

21          The parties are working together to come up with

22   practical solutions in order to help plaintiffs' counsel get

23   the requisite information so that the proper defendant is

24   actually named.  And we appreciate Your Honor's thoughts about

25   that in liaison counsel that you may be able to enter an order

1    or something of a like nature that would require the actual

2    infusion center to provide the NDC codes that we constantly ask

3    for and that take us very long to get.

4             THE COURT:  Right.  If you-all can discuss the proper

5    procedural vehicle, I would certainly be willing to enter an

6    order in order to get some compliance from third parties as to

7    some of this.  It is very basic information that ought to

8    be -- and, of course, I don't know what all of the vexations

9    might be -- but ought to be easily recoverable and could be

10   provided.  And that would certainly help advance the MDL a

11   great deal; so if you-all can discuss that and come up with

12   some type of resolution, I would be willing to do it.  If

13   you're able to get it either through defense counsel or

14   otherwise, then that's fine as well and actually preferable

15   rather than going through the Court process; but I'm willing to

16   do it if we need to.

17            MS. BARRIOS:  Yes, Your Honor.  We do appreciate that

18   because all parties know how important it is to have the proper

19   defendants.

20            THE COURT:  Right.

21            MS. BARRIOS:  With regard to the next several

22   paragraphs in the joint report, I think it's important for

23   those plaintiffs' counsel to understand that the operative

24   deficiency notice is the letter from sanofi's counsel, Shook,

25   Hardy; and they have issued those deficiency notices to many

1    plaintiffs' counsel.  Adrienne Byard with Shook, Hardy has come

2    up with a procedure in which she sends Mr. Lambert and I an

3    Excel spreadsheet indicating which plaintiffs either have no

4    plaintiff fact sheets, they didn't file one or they have not

5    responded to the deficiency notice.  We sent that out and I'm

6    very pleased to announce that we've been able to cut down the

7    number of plaintiffs who have deficiencies to about 50 percent

8    of what they were before.

9         So we're continuing to massage this project if we

10   can think of anything to make it better, but counsel will be

11   getting e-mails from Mr. Lambert and myself reminding them of

12   the letter they got from either the 505(b)(2) counsel or from

13   sanofi's counsel that they must comply with the Court's orders

14   regarding the plaintiff fact sheets.

15        With regard --

16        THE COURT:  Yes, go ahead.

17        MR. OLINDE:  Your Honor, I think Dawn has corrected it;

18   but just for the record, she had mentioned a letter from sanofi

19   counsel.  Well, also the 505(b)(2) defendants may also have

20   those same letters just so we know that.

21        THE COURT:  Yes.  And I'm really happy to hear that

22   you-all have established a procedure for remedying deficiencies

23   because this is something that comes up in every MDL, certainly

24   the ones that I've had, but the ones that I'm familiar with,

25   there's got to be a constant process of identification of

1    deficiencies on the fact sheets and remedying those as promptly

2    as possible.  Again, we don't want to get the MDL bogged down

3    and missing fields of information that are important in order

4    to advance the case.  So I'm really pleased that you-all have

5    been able to come up with some sort of protocol that you can

6    employ for each and every defendant and each and every

7    plaintiff.

8            MS. BARRIOS:  Yes, Your Honor.  And we'll continue to

9    update that procedure if we find anything better.  But I do

10   want to caution plaintiffs' counsel listening on the phone and

11   those in the courtroom that if they get a letter from any

12   defense counsel regarding a deficiency, they must pay attention

13   to it.  If they have any questions, of course, they can contact

14   Mr. Lambert or myself.

15           THE COURT:  Go ahead, Doug.

16           MR. MOORE:  Your Honor, Douglas Moore on behalf of

17   sanofi.

18               I would echo the comments made by Dawn that we do

19   have a procedure, that it is resulting in a reduction of the

20   number of cases that we were placing on Exhibits C and

21   Exhibit D.  I think the final numbers are 35 cases on --

22           MS. BARRIOS:  33.  Put your glasses on.

23           MR. MOORE:  33 cases on Exhibit C and 40 on Exhibit D.

24   In accordance with PTO 22, we are requesting for those cases

25   that a Show Cause Order be issued for the next status

1   conference.

2          THE COURT:   Okay.

3          MS. BARRIOS:   Your Honor, and the procedure that we use

4   with sanofi, as I said, we're using it with the 505(b)(2)s and

5   because their list has not been complete and given to us yet,

6   they have very kindly passed on placing any plaintiffs on a

7   Rule to Show Cause list at this status conference.

8              Item Number 8 is MDL Centrality.   I believe

9   everybody should know now that MDL Centrality is a critical

10  feature of this MDL.   It not only provides service of every

11  pleading; but it also holds the plaintiff fact sheets,

12  defendant fact sheets, et cetera.   Mr. Woody has also agreed to

13  put on the home page of Centrality a link that only plaintiffs'

14  counsel can access through their own portal of all the prior

15  e-mails that Mr. Lambert and I have sent out giving advice and

16  suggestions and explaining orders of the Court.   So if we have

17  any new counsel who come in, they have a repository of all the

18  e-mails as well as all the Court's orders on MDL Centrality.

19             With regard -- Your Honor, just to let you know,

20  we talked to Mr. Woody; and there was really nothing for him to

21  come here to report.   So we thought it was okay to pass.

22         THE COURT:   That's fine, and he's very accessible

23  otherwise.   So that's fine.   I don't think he has to be here at

24  each and every meeting unless there is a specific presentation

25  or instruction that he'd like to give, that's fine.

1          MS. BARRIOS:   Thank you, Your Honor.

2                Item Number 7 is service on the defendants and

3     this really hasn't changed since our last status conference,

4     but there are many pretrial orders which provide streamline

5     service for the various defendants.   The streamline service

6     order for sanofi is PTO 9, which is Record Doc. 160.

7                For Accord Healthcare, it's PTO 29,

8     Record Doc. 303.

9                For sanofi, it's PTO 30, Record Doc. 304.

10               For Actavis Pharma, Inc., it's in Pretrial

11    Order 32A, Record Doc. 710.

12               For McKesson, in Pretrial Order 33,

13    Record Doc. 308.

14               For Sun Pharma, Inc., it is in Pretrial

15    Order 39A, Record Doc. 711.

16               And for Hospira Worldwide, LLC, it is PTO 40A,

17    which is Record Doc. 509.

18               And, Counsel, please note that two of these have

19    been amended; so please make note that you look at the amended

20    pretrial order.

21               Early on in the litigation, Your Honor, there

22    were three defendants who have been dismissed from the MDL.

23    Those entities are Apotex, Northstar and Eagle Pharmaceuticals.

24    And those reference documents dismissing those defendants are

25    at Record Docs. 320, 324, 333, 335, 319, 332, 336, 219, 224 and

1   225.

2           Because the parties are uniquely aware of the

3   need to name the proper defendant and following Your Honor's

4   admonition that we work very hard to do so, we think we've come

5   up with a process in order to try to make that happen sooner

6   rather than later; and that involves almost the same process

7   with the plaintiff fact sheets and defendant fact sheets.  The

8   defendants will send us a list of cases where they believe they

9   should be dismissed, they provide us with a reason and we go to

10  the individual counsel and we can't tell them to dismiss, but

11  we provide the information and suggest to them how important it

12  is to have the proper defendant.

13          And we've only been doing that for about a week;

14  and in the past week, I've seen many, many dismissals that have

15  come through.  So hopefully that is really working out.

16          THE COURT:  Well, that's right.  And if you have

17  information on the plaintiffs' side that would tend to

18  contradict or traverse what defense counsel has provided, then

19  we can handle that on the front-end rather than get mired in

20  the business of motion practice.  Maybe we can kind of hash

21  that out so that we can fine-tune which defendant it is that

22  plaintiff has a claim against.

23          MS. BARRIOS:  Yes, Your Honor.  And the defendants are

24  very good at providing us information.  They are able to get

25  the NDC codes rather easily, so they will perhaps give us that.

1    THE COURT:  Right.

2    MS. BARRIOS:  There is a checklist with all the NDC

3    codes and the defendants' names that they've utilized and had a

4    pharmacist or someone from an infusion center sign that.  And

5    based upon that document, they're seeking dismissals.  So we're

6    working on it and I just want to again ask all plaintiffs'

7    counsel to please be on the lookout of e-mails from all counsel

8    in this MDL and to be cognizant of the fact that

9    Judge Engelhardt really wants to move the MDL as do all of the

10   parties.  So please don't ignore those letters.

11          Item Number 11 is the preservation order.  In

12   Your Honor's first pretrial order, you set forth all of the

13   requirements of preservation.  And as a result of ESI

14   negotiations, the defendants wanted us to send another letter

15   reminding the plaintiffs' counsel preservation and we have sent

16   that.

17          Item Number 12 is the protective order.

18   Magistrate Judge North entered the protective order on July 5;

19   and it is PTO 50, Record Doc. 612-1 and 613.  Similarly for ESI

20   discovery, Magistrate Judge North has issued a protocol on

21   July 5th, 2017; and it is found at PTO 49, Record Doc. 611-1

22   and Record Doc. 613.

23          I'm very pleased to report to Your Honor on

24   Item 14 that Mr. Coffin, Ms. Menzies and Mr. Strongman and

25   Mr. Ratliff have worked very, very hard over the long Labor Day

1    weekend and have been able to resolve major pleadings that have

2    been filed here.   The defendants will withdraw the motion to

3    dismiss based upon lack of personal jurisdiction.   The

4    plaintiffs will dismiss the foreign defendants.   The plaintiffs

5    will withdraw as moot the motion to compel.   The defendants

6    will withdraw as moot the motion for protective order, and

7    we've also resolved the issue of the interested parties funding

8    motion, that that will be withdrawn as well.   The parties have

9    reduced it to writing, a very informal MOU; but they plan on

10   putting something together and presenting it to Your Honor in

11   the form of a stipulation within the next week or two.

12              Anything from y'all?

13   THE COURT:   Okay.   That's good.   And just to be clear,

14   the dismissal of the foreign defendant is without prejudice as

15   I understand the agreement.

16   MS. BARRIOS:   Yes, Your Honor.

17   THE COURT:   Okay.

18   MS. BARRIOS:   Item Number 15 regards motion practice.

19   The defendant had filed a motion to dismiss the long form

20   complaint.   Argument was held before the Court on August 30th.

21   The Court denied defendant's motion with regard to Counts 1 and

22   Counts 3 through 7 of the master complaint.   With regard to

23   Count 2 and Count 8, the Court granted the plaintiffs 14 days

24   to amend the master complaint or otherwise file pleadings to

25   address the issues that you had raised at the conclusion of

1    that hearing.

2            On May 26th, sanofi had filed a motion to dismiss

3    claims barred by the applicable statute of limitations; and

4    that's the motion which you addressed earlier in the status

5    conference.

6            Item Number 16 is the class certification.

7    Your Honor denied class treatment to a putative Louisiana class

8    of plaintiffs on July 17th, which is at Record Doc. 647.   And

9    with the Court's permission, we'll be removing this agenda item

10   for future joint reports.

11           THE COURT:   Okay.

12           MS. BARRIOS:   Item Number 17 relates to settlement

13   committee, and the chairs of the various settlement committees

14   have made that presentation to Your Honor earlier.

15           THE COURT:   Did you-all wish to add anything other than

16   our conversation about the census, Mr. Gordon, Ms. Cohen or

17   Mr. Strongman -- anything further?

18           MR. STRONGMAN:   Nothing further from me.

19           MS. COHEN:   No, Your Honor.   Thank you.

20           MR. GORDON:   Not at this time, Your Honor.   Thank you.

21           THE COURT:   Okay.

22           MS. BARRIOS:   Your Honor, Item Number 8 is Special

23   Master Kenneth DeJean for plaintiffs' time and expenses.   And

24   Mr. DeJean is in the Court and I believe would like to address.

25           THE COURT:   Yes, I would like him to have that

1    opportunity.

2              Mr. DeJean, if you would come forward, please.

3              For those of you who are not familiar with

4    Mr. DeJean, he is our court-appointed Special Master with

5    regard to the time and expense admissions on the plaintiffs'

6    side.

7         MR. DEJEAN:   Good morning, Your Honor.

8              Just briefly, I'll introduce myself.  I think

9    I've met most of the people in the room.  But for those on the

10   phone, I just want to kind of give them a few pointers that if

11   you are going to submit time and -- common benefit, time and

12   expense charges, please comply with the protocol set forth by

13   Your Honor.  That is in Pretrial Order 19.  I think it's very

14   specific.  I'm available by e-mail or phone if you have any

15   questions.  I'll be reviewing time and expense submissions.

16   You will probably get calls from me or e-mails, and please

17   don't panic.  I'm not the IRS.  I'm calling for a reason.  It's

18   to be able to talk to you, to explain something.  I firmly

19   believe in cutting to the chase and addressing things

20   immediately, so it could be an e-mail or a phone call.  Please

21   don't panic.

22             I do wish to caution those on the phone that you

23   must comply and become participating counsel as required by the

24   pretrial order.  There won't be any time and expense

25   considered, unless I believe Judge Engelhardt authorizes it

1   specifically, that is not submitted in compliance with his

2   pretrial order.

3        THE COURT:  Yeah.  And we intend to follow -- the

4   pretrial order, as you just said, is very, very specific; and

5   I've always adopted the position both in this MDL and the

6   others that I've had that if you don't comply with the order in

7   terms of timeliness or in terms of the form or what the order

8   requires, what Mr. DeJean said is very true.  It's not going to

9   be considered.  I always said it didn't happen.  If it's not in

10  his records and properly kept and properly submitted, then it

11  just didn't happen.

12        So it's critical if you do expect to be

13  compensated at some point regarding common benefit work, that

14  you read that order very carefully and comply with it and

15  respond, as you say, to the phone calls or the e-mails -- if

16  the Special Master does contact you with a question, that you

17  respond as promptly as possible.

18        MR. DEJEAN:  Your Honor, one thing I wish to caution

19  everybody about is documentation.  All of us hate to keep

20  receipts.  We hate to keep minutia.  If you're going to submit

21  it, please have the proper backup in accord with the Judge's

22  Pretrial Order 19.

23        THE COURT:  Right.

24        MR. DEJEAN:  Your Honor, that's all I have unless the

25  Court has something.

1      THE COURT:  Okay.  Anybody have any questions for

2  Mr. DeJean?  He's here now and is very informative.  If you

3  have any questions for him, you can ask them now for the

4  benefit of the group.  And for those on the phone, if you have

5  any questions that you think of later, I'm sure that he will be

6  happy to answer whatever you have.

7      MR. DEJEAN:  Any questions?

8      THE COURT:  Anybody?

9      MR. DEJEAN:  How about the defendants?  Any questions?

10      THE COURT:  Thank you.

11      MR. COFFIN:  Your Honor, Chris Coffin on behalf of the

12  plaintiffs.  If I could just add, the plaintiffs' side does

13  have a time and expense committee that is co-chaired by

14  Mr. Stan Baudin at my firm, Pendley, Baudin & Coffin, and also

15  Mr. Palmer Lambert.  If any plaintiffs' counsel have any

16  questions, before they go to Mr. DeJean about time and expense

17  submissions or about the specifics of Your Honor's common

18  benefit order, they can contact Mr. Baudin or Mr. Lambert.

19      THE COURT:  Okay, good.  That's helpful, too.  Thank

20  you.

21      MS. BARRIOS:  Your Honor, I would like to particularly

22  thank Special Master DeJean because he made a presentation to

23  the whole PSC yesterday.  We had a full-day meeting, and so he

24  came in.  After he spoke with Your Honor, he met with us.  So I

25  think he has us all in line with Pretrial Order 19.

1        THE COURT:   Okay, good.

2        MS. BARRIOS:   Item Number 19 is upcoming deadlines and

3 important dates.   And Your Honor has already addressed the

4 issue about the date of the master answer to be filed, so I

5 don't think there's anything else that we need to remark about

6 that.

7        And Item Number 20 is the next status conference.

8 And I know that Your Honor had given us several dates and --

9        THE COURT:   I gathered from our discussion that the

10 consensus was that the November 3rd date was best.

11        Is that correct, Counsel?

12        MR. OLINDE:   I think, Your Honor, and I had mentioned

13 this at the time, but I'm going to be out on the 3rd visiting

14 my son in Purdue.

15        THE COURT:   Oh, okay.

16        MR. OLINDE:   So anyway, the 27th, I think was the date

17 we were talking about, October.

18        THE COURT:   Okay.   That works for you, Mr. Moore?

19        MR. MOORE:   Yes.

20        THE COURT:   Okay.   I didn't recall that, but I do

21 remember you mentioning you had some travels.

22        MR. MOORE:   Yes.   I'll be back on the 24th.

23        THE COURT:   Okay.   And that works for liaison counsel

24 as well, lead counsel?

25        MS. BARRIOS:   Your Honor, we haven't had a chance to

1    check our phones with our calendars, so if we could get back to

2    you on that.

3            THE COURT:  Sure, and that's fine.  You can let me know

4    maybe one day early next week if the 27th -- it would be Friday

5    the 27th, following the same time schedule -- 8:30, 9:00 and

6    10:00 and the same procedure.  If that date does not work, I

7    typically like to do these on Fridays.  It's not a rule that it

8    has to be done on a Friday, but I typically like to do them on

9    Fridays.  I had offered the 20th, the 27 or the 3rd.  If those

10   don't work, then we'll find another Friday.  My intent, I think

11   what we'd like to do is have one in late October, early

12   November time frame and then another one prior to the end of

13   the year sometime in December, mid-December.  So let's try to

14   work toward that end.

15           Okay.  Anything else with regard to the report?

16           MS. BARRIOS:  No, Your Honor, nothing from plaintiffs.

17           THE COURT:  Okay.  Mr. Moore or Mr. Olinde, anything

18   that you would like to cover in the report?

19           MR. MOORE:  Nothing else, Your Honor.

20           MR. OLINDE:  Nothing, Your Honor.  I appreciate it.

21           THE COURT:  Okay.  Does anybody have any questions for

22   counsel regarding anything covered in the report?  Nobody

23   raised their hand during the course of their presentations.

24   And if not, does anybody have any item that was not in the

25   report, has not been part of our discussion that you would like

1        to discuss at this time?  The floor is open.

2              Okay.  Hearing none, I will say that my

3        impression of where we are in the MDL today, I think we've made

4        a great deal of progress, probably greater strides since our

5        July 7th conference to this one than we have ever made between

6        status conferences.  So I think we are well immersed in the

7        MDL, much more so than we were the last time we convened.  And

8        I think that's very positive.  I'm excited about the fact that

9        I think we're getting to what we need to get to in this case.

10             And I've mentioned to the committees this morning

11       and I told liaison counsel this really from the very beginning

12       that when an MDL is created, it's easy I suppose from a lawyer

13       and judge point of view to start envisioning all of the

14       different types of issues that can come up that fascinate us as

15       professionals, such as jurisdiction or the discovery, the

16       foreign discovery, things of that sort.  And those really are

17       interesting issues and things that we could spend a lot of time

18       discussing and I could spend a lot of time ruling on and

19       writing opinions on and whatnot.

20             But we also must keep in mind notwithstanding the

21       fact that this is an MDL and a sizable one, that we do have

22       real people involved, people who are in their homes right now,

23       cancer survivors, people on the plaintiffs' side who obviously

24       have claims, that they seek recompense.  And those are the

25       people that you are here for.  You are not here particularly

1   for a particular motion or to confront an issue that happens to

2   be of burning interest to you.

3           Likewise on the defendant's side, we have people

4   that are trying to participate in the pharmaceutical business,

5   develop products that would be helpful to people's health.

6           So the goal of the MDL is to try to address them,

7   to give the plaintiffs and the defendants their day in court

8   and try to resolve this either by way of trial, a judgment,

9   review on appeal if necessary or by resolution.  And the sooner

10  we're able to accomplish that, the better.  And I'm very

11  encouraged from what we've done since the July 7th date, that

12  we are more moving in that direction as opposed to nibbling

13  around the edges of some issues that might be of interest to us

14  as lawyers in a court system and we're focusing back on

15  actually accomplishing the goal of resolving disputes for real

16  people.

17          And so I would like to see us continue to work

18  toward that end.  And my compliments to all counsel who have, I

19  know, worked very hard.  And I also this morning noted the fact

20  that there's give and take, you know.  It's not a perfect

21  world.  And in order to resolve things like the motion to

22  compel and the protective order, sometimes you have to forgo

23  some things that you think would be within the scope of your

24  zealous representation in order to accomplish a greater goal on

25  behalf of your client.  And I appreciate the fact that you-all

1    have worked in that vein particularly since the last

2    conference.

3              So let's continue to do that, and let me know on

4    the date for the next conference.  I will meet with liaison

5    counsel probably within the next three or four weeks.  And if

6    anything comes up in the meantime, I trust that you-all will

7    let us know by e-mail or call; and if we need to convene

8    sooner, we will certainly do that, okay?

9              All right.  Thank you-all very much.

10   MS. BARRIOS:  Thank you, Your Honor.

11   MR. COFFIN:  Thank you, Judge.

12   MR. MOORE:  Thank you.

13   (WHEREUPON, the proceedings were adjourned.)

14   * * * *

15   REPORTER'S CERTIFICATE

16             I, Lanie M. Smith, CRR, RPR, Official Court
     Reporter, United States District Court, Eastern District of
17   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
18   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

19

20                          ___/s/ Lanie M. Smith_____
                             Official Court Reporter

21

22

23

24

25