1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

IN RE:   TAXOTERE (DOCETAXEL)      *
5          PRODUCTS LIABILITY        *    Docket No.: 16-MD-2740
         LITIGATION                *    Section N
6                                    *    July 7, 2107
*This Document Relates To All Cases*  *  New Orleans, Louisiana
7        * * * * * * * * * * * * * * * * * *

8

         TRANSCRIPT OF STEERING COMMITTEE STATUS CONFERENCE
9        HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
               UNITED STATES DISTRICT JUDGE

10

11

APPEARANCES:
12

For the Plaintiffs:          Pendley, Baudin & Coffin, LLP
13                             BY:  CHRISTOPHER COFFIN, ESQ.
                             1515 Poydras Street, Suite 1400
14                             New Orleans, Louisiana 70112

15

16                             Barrios, Kingsdorf & Casteix, LLP
                             BY:  DAWN BARRIOS, ESQ.
17                             701 Poydras Street, Suite 3650
                             New Orleans, Louisiana 70139

18

19                             Gainsburgh, Benjamin, David,
20                               Meunier & Warshauer, LLC
                             BY:  PALMER LAMBERT, ESQ.
21                             2800 Energy Centre
                             1100 Poydras Street
22                             New Orleans, Louisiana 70163-2800

23

24

25

OFFICIAL REALTIME TRANSCRIPT

```
 1   APPEARANCES:

 2   For Plaintiffs:              Gibbs Law Group, LLP
                                  BY:  KAREN BARTH MENZIES, ESQ.
 3                                400 Continental Boulevard
                                  6th Floor
 4                                El Segundo, California 90245

 5

 6   For Sanofi S.A.:             Irwin Fritchie Urquhart
                                    & Moore, LLC
 7                                BY:  DOUGLAS J. MOORE, ESQ.
                                  400 Poydras Street, Suite 2700
 8                                New Orleans, Louisiana 70130

 9

10                                Shook, Hardy & Bacon
                                  BY:  JON STRONGMAN, ESQ.
11                                2555 Grand Boulevard
                                  Kansas City, Missouri 64108
12

13   For Hospira Worldwide,
14   Inc.:                        Chaffe McCall
                                  BY:  JOHN F. OLINDE, ESQ.
15                                2300 Energy Centre Building
                                  1100 Poydras Street
16                                New Orleans, Louisiana 70163

17

18   Official Court Reporter:     Jodi Simcox, RMR, FCRR
                                  500 Poydras Street
19                                Room B-406
                                  New Orleans, Louisiana 70130
20                                (504) 589-7780

21

22   Proceedings recorded by mechanical stenography, transcript

23   produced by computer.

24

25
```

OFFICIAL REALTIME TRANSCRIPT

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
| 08:50 | 1  | **PROCEEDINGS**                                                       |
| 08:50 | 2  | **(July 7, 2017)**                                                    |
| 08:50 | 3  | **\*\*\*\*\*\***                                                     |
| 08:50 | 4  |                                                                       |
| 08:50 | 5  | (COURT CALLED TO ORDER)                                               |
| 09:15 | 6  | **THE COURT:**  Good morning.  You all can be seated.                 |
| 09:15 | 7  | We can go ahead and start our committee meeting.                      |

THE COURT:  Good morning.  You all can be seated.

We can go ahead and start our committee meeting. I did just meet with liaison counsel in this case, and for the record, this is the committee meeting in the MDL No. 2740, *In re:  Taxotere (Docetaxel) Products Liability Litigation*.  We do a sign-in sheet.  If you have not signed in, please do so.  If you are not on the sign-in sheet, which means you are not a duly appointed member of a committee, you should not be here. You should wait until the 10:00 meeting across the hallway.

I met with liaison counsel this morning.  I went through the Joint Report No. 4.  I did not see any particular issues there.  Everything was pretty straightforward as far as I'm concerned.  We did discuss a couple of things, one of which is scheduling of potential trials in this case.  So let me give you the "in a nutshell" version of the product of our discussion.

I have asked liaison counsel to confer and come up with four more trial dates, all of which will be in 2019. In other words, quarterly.  Each of those dates will have associated with it eight plaintiffs for the first two of those.

OFFICIAL REALTIME TRANSCRIPT

09:17 1      In other words, those would be -- I hate to use
09:17 2  the word *bellwether*, but trial dates Nos. 2 and 3 will have
09:17 3  eight plaintiffs identified as potential trial plaintiffs, and
09:17 4  trial dates Nos. 4 and 5, which are the third and fourth trials
09:17 5  in 2019.  The first one being the one that is currently
09:17 6  established for the September 2018 trial date.  So four and
09:17 7  five will each have seven plaintiff names associated with those
09:17 8  dates.
09:17 9      All right.  What we will do with regard to the
09:17 10 September 2018 trial date, which is trial No. 1, we already
09:17 11 have ten nominations, or potential plaintiffs, for that trial
09:17 12 date.
09:17 13     We are going to do discovery in two stages.  The
09:17 14 first stage will be pursuant to a protocol established by
09:17 15 counsel that will establish some guidelines and basically allow
09:18 16 discovery within whatever breadth you decide in that protocol,
09:18 17 but the primary purpose of it will be to determine four off of
09:18 18 that list of ten who will then be tagged 1 through 4, or A
09:18 19 through D, however you want to do it, for the
09:18 20 September 28th trial date.  Okay?
09:18 21     What's going to happen to the other six,
09:18 22 assuming that none of the other six get washed out or for some
09:18 23 reason no longer wish to pursue claims, the remainder would be
09:18 24 under consideration to fill in the trial dates two, three, four
09:18 25 and five in 2019.  So that's why we only picked eight for the

OFFICIAL REALTIME TRANSCRIPT

1  next two trial dates and seven for the following trial dates

2  because we are going to be accruing -- hopefully accruing cases

3  that have been the subject of some discovery but not yet set

4  for a trial date.

5           That will give you, assuming -- and I realize

6  that every day is an adventure, but by the end of 2019,

7  according to this plan -- of course, reality is what happens

8  after plans are made, but at the end of 2019, you will have had

9  a total of 40 plaintiffs who will have been the subject of some

10  discovery.

11          You will have had a total of five plaintiffs who

12  have had -- at least five plaintiffs, if we don't try more than

13  one plaintiff in a trial -- which I'm very open to maybe trying

14  two, possibly even three, plaintiffs' claims at the same

15  time -- you will have at least five plaintiffs whose cases have

16  been presented to a jury.

17          There are several wrinkles that are not possible

18  to anticipate at this time in terms of scheduling, in terms of

19  at some point in time if you wish to defer a trial date because

20  you are having some substantive discussions with one or more

21  defendants pertinent to settlement.  So this is always subject

22  to some adjustment.

23          However, each of the scheduling orders for each

24  of those five trial dates, including the September 28th, 2018

25  trial date, will feature two phases of discovery.  The first

being the discovery pursuant to this protocol that we're going
to establish -- hopefully, you're going to establish -- and the
second phase will be the full-blown run-up to trial type
discovery, including expert reports, depositions on a broader
scale.  So you'll be working on four cases, each one of which
should be ready for trial on September 28th, 2018.

All right.  So that's one thing that we did
discuss in the conference with liaison counsel.

We also discussed -- Palmer brought up the issue
of the personal jurisdiction relative to some discovery,
personal jurisdiction discovery.  Apparently, this issue
surfaced -- it actually surfaced before, but maybe we should
say it blossomed in the last 48 hours or 72 hours, perhaps,
when you all exchanged information.  So I've asked them to
confer.  I will have a telephone conference with liaison
counsel next Wednesday morning to discuss that issue, and by
Tuesday they will submit to me e-mails of what their respective
positions are with regard to that.

I assume that you all probably -- probably
everyone in this room is more familiar with that than I am at
this point.  That's why I've asked them to try and confer and
flesh this out, and then present it to me so that I can discuss
it with them on Wednesday of the next week.  But apparently it
is of some urgency, at least on the plaintiffs' side, to have
docketed that issue for decision in whatever form it presents

OFFICIAL REALTIME TRANSCRIPT

09:21 1    itself.

09:21 2                  Yes, Palmer?

09:22 3         MR. LAMBERT:  Judge, it may be helpful -- sorry,

09:22 4    Palmer Lambert for the plaintiffs.  It may be helpful if the

09:22 5    lead person on the sanofi side and on plaintiffs' side be on

09:22 6    that call as well --

09:22 7         THE COURT:  Okay.

09:22 8         MR. LAMBERT:  -- since they're the ones that have

09:22 9    been negotiating that.

09:22 10        THE COURT:  Anybody have any objection to that?

09:22 11        MR. MOORE:  No, Your Honor.

09:22 12        THE COURT:  Okay.  As long as it's productive, then

09:22 13   the addition of those people for that purpose, I don't have any

09:22 14   objection to on my side.  So that's fine.  But you need to let

09:22 15   us know in your e-mail who all is on and what their role will

09:22 16   be.

09:22 17        MR. LAMBERT:  Yes, Your Honor.

09:22 18        MR. COFFIN:  Your Honor, if I can just ask a

09:22 19   question.

09:22 20        THE COURT:  Yes.

09:22 21        MR. COFFIN:  Chris Coffin on behalf of the

09:22 22   plaintiffs.  With regard to the call you might have next

09:22 23   Wednesday, my understanding is that involves the jurisdictional

09:22 24   discovery and the merits discovery and the issues surrounding

09:22 25   those two and teeing up the -- basically the French Blocking

09:22  1   Statute and other issues Your Honor asked us to tee up.  Is
09:22  2   that --
09:22  3          THE COURT:  Well, in the brief exposure that I got to
09:22  4   the issue this morning, which was very limited, and
09:22  5   purposefully so, yes, that's what I understand it to be.
09:23  6          Palmer raised it this morning as we were about
09:23  7   to adjourn and indicated that it was something that the Court
09:23  8   needed to tend to sooner rather than later.  I assume you are
09:23  9   going to have some discussions with defense counsel, but, yes,
09:23  10  it's of that nature.  Sure.
09:23  11         MR. COFFIN:  Understood.  Okay.  The reason I ask is
09:23  12  we were going to ask you about a briefing schedule.  I assume
09:23  13  you want us to wait until we have that call.
09:23  14         THE COURT:  Well, the first thing I want you to do is
09:23  15  discuss a possible resolution or a workaround if there are
09:23  16  particular issues that can be resolved.  If not, then, yes, we
09:23  17  would need to identify which particular issues I need to rule
09:23  18  on, and if you can agree on a briefing schedule that works for
09:23  19  everybody, then I will docket it accordingly.
09:23  20         File the motion.  On the call we'll discuss
09:23  21  filing the motion, setting it on the docket, with or without
09:23  22  oral argument, however we want to do it, but we'll try to get
09:23  23  it resolved as quickly as possible.
09:23  24         So, yeah, I would expect you all to discuss a
09:24  25  possible workaround or a resolution and also narrow the issues

OFFICIAL REALTIME TRANSCRIPT

| | |
|---|---|
| 09:24 | 1 |
| 09:24 | 2 |
| 09:24 | 3 |
| 09:24 | 4 |

down so that on Wednesday morning you tell me what I need to
decide and how you intend to present it both scheduling-wise
and motion-wise via which procedural vehicle is the best.

        **MR. COFFIN:**  Understood.  Thank you.

        **THE COURT:**  Okay.  All right.  So let me get back to
the Joint Report.  Does anyone have anything to raise on the
Joint Report that we're going to present in the big conference
at 10:00?

        **MR. COFFIN:**  Well, Your Honor, if I could, I would
like to go back and get a little more clarification on the
ideas for moving forward with the trial pace.

        **THE COURT:**  Yes.

        **MR. COFFIN:**  My understanding of what Your Honor
would like to do is take the ten that we have, have phase one
of limited discovery --

        **THE COURT:**  Right.

        **MR. COFFIN:**  -- for us to try to work out.

        **THE COURT:**  Right.

        **MR. COFFIN:**  And then the second phase would be after
Your Honor chooses which plaintiffs will go forward for trial,
then there will be full discovery on, I think you said four.
Correct?

        **THE COURT:**  Yeah.  What I would call trial discovery,
preparation for trial discovery.

        **MR. COFFIN:**  Understood.

09:25    1          THE COURT:  Right.

09:25    2          MR. COFFIN:  Okay.  I just wanted to make sure I'm

09:25    3   clear on that.

09:25    4                Do you anticipate one plaintiff going to trial

09:25    5   out of those four or multiple?

09:25    6          THE COURT:  For the first, one I would think it would

09:25    7   be preferable to focus on one plaintiff.  And insofar as which

09:25    8   of the four are chosen -- or lined up after the initial phase

09:25    9   of discovery, I will let you all discuss that.  If you come to

09:25   10   me with a list of four and it's A through D and that's the

09:25   11   order you want to present them, I'll take A.  If A doesn't wash

09:25   12   out, we'll go to B.

09:25   13                So it will be your decision.  I defer to you all

09:25   14   as to what you think will be the best trial for your purposes.

09:25   15   I'm not going to just look at the ten and have you dump all of

09:25   16   your product of your discovery on me and then I pick four.  I

09:25   17   would like to get input from you all.

09:26   18                You all successfully came up with the ten, which

09:26   19   is what I wanted.  And I was somewhat distressed with regard to

09:26   20   the initial attempt at it when we had the trial date in 2019,

09:26   21   and I understand all of the other considerations.  But we are

09:26   22   doing it now the way that I had hoped it would be done, which

09:26   23   was:  You all decide which universe of plaintiffs would be

09:26   24   helpful, and you all put together a schedule that I can put on

09:26   25   my calendar.

OFFICIAL REALTIME TRANSCRIPT

09:26   1    We have ten now, ten candidates.  We will know a
09:26   2  lot more about those ten -- and when I say a date for the end
09:26   3  of the first phase, it will probably be like January or
09:26   4  February.
09:26   5    Again, I'll let you all -- I'm flexible on that
09:26   6  date, but you decide what the parameters of the first phase of
09:26   7  discovery are going to be:  What should it include; what is
09:26   8  burdensome and should wait until that case is actually put on
09:26   9  the trial calendar.  And then come that date in January or
09:26   10 February, hopefully you'll come to me jointly and say, "We've
09:27   11 looked at these ten people and we've done some discovery on it
09:27   12 pursuant to our protocol.  These are the four, and this is the
09:27   13 order that we think they should be put on the calendar."
09:27   14    My thought is for the first one, we would try
09:27   15 one plaintiff's claim simply because it's sort of a shakedown
09:27   16 cruise in terms of experts.  I'm certainly not adverse to the
09:27   17 idea of trying more than one plaintiff at that time on one of
09:27   18 the other four trial dates.
09:27   19    MR. COFFIN:  And that's -- we will attempt to work
09:27   20 that out again.  I want Your Honor to understand we have done
09:27   21 this and tried to work stuff out.  We've worked very
09:27   22 diligently.
09:27   23    THE COURT:  Oh, I understand.
09:27   24    MR. COFFIN:  We probably likely will have -- I think
09:27   25 we will have a disagreement on whether or not we have multiple

OFFICIAL REALTIME TRANSCRIPT

1   plaintiffs.  We believe the second trial should have two to
2   three plaintiffs in it.  I think probably Mr. Moore is going to
3   disagree with that.
4           THE COURT:  Maybe so.  Well, we'll --
5           MR. MOORE:  Cross that bridge --
6           THE COURT:  -- cross that bridge when we get to it.
7   Let's just get our first one lined up.  We will have -- even
8   for the first trial date, we will have four cases, hopefully.
9   Assuming something unforeseen doesn't happen, we will have four
10  plaintiffs ready to go to trial.  I do think if we do try more
11  than one plaintiff, it should be against a single defendant.
12  It would just be crazy to have two different defendants in two
13  different claims.  I mean, what would be the point of that.
14          MR. COFFIN:  In the second CMO, do you anticipate
15  kind of it being all sanofi as well?
16          THE COURT:  I think we're going to have to try cases
17  involving each of the defendants at some point, so maybe not.
18  Maybe not.
19          MR. COFFIN:  We'll just work that out.
20          THE COURT:  You all confer and tell me what you
21  think.  We can't constantly be trying cases against sanofi
22  because we're going to get diminishing returns on those cases.
23  I realize that there are other market players here on the
24  defendants' side.  You have some that are smaller players in
25  the market than others.

OFFICIAL REALTIME TRANSCRIPT

09:29  1          So out of the named defendants, it seems to me

09:29  2  there would be more benefit to try a case involving one as

09:29  3  opposed to another of those.  I don't know the parameters of

09:29  4  that yet because I'm not involved in your discussions and as

09:29  5  familiar with all of what you know about them.

09:29  6          MR. COFFIN:  Okay.  What about the pool of plaintiffs

09:29  7  that we're selecting from for the additional CMOs?  In other

09:29  8  words, you asked us just to focus on Eastern District of

09:29  9  Louisiana cases because of jurisdiction/venue issues.  Do you

09:29 10  want us to choose from a larger pool; and then if we do that, I

09:29 11  assume we need to have a discussion --

09:29 12          THE COURT:  Well, yeah.  One thing we did talk about

09:29 13  is the possibility of a state court case being tried at some

09:29 14  point instead of a case here, or I can go and try a case in

09:29 15  another jurisdiction if we do something -- I think Judge Fallon

09:29 16  is actually trying a case in Mississippi coming up.  We could

09:30 17  possibly do that.  So not necessarily, but obviously it's

09:30 18  easier to do it here.

09:30 19          But, again, we want to get useful information,

09:30 20  and if the returns are diminishing by trying a third or fourth

09:30 21  or fifth Eastern District case, then obviously, we don't want

09:30 22  to try an Eastern District case.

09:30 23          MR. COFFIN:  Okay.  And should we -- I assume you all

09:30 24  talked about this.  Unfortunately, we didn't have enough time

09:30 25  before Your Honor came in, but are we resubmitting a revised

09:30   1   CMO for the first trial --

09:30   2           THE COURT:  Yes.

09:30   3           MR. COFFIN:  -- and then -- okay.  We'll have

09:30   4   additional time for the second CMO.

09:30   5           THE COURT:  Right.  Correct.  Correct.  We're not

09:30   6   going to pick all of the people in each of the CMOs in the next

09:30   7   30 days.  Okay?  Because there are going to be some people who

09:30   8   we don't know about right now who we would like to see in a

09:30   9   trial setting, let's say, for the second trial in 2019.  It's

09:30   10  hard to know what information we're going to need as we sit

09:30   11  here in the middle of 2017.

09:30   12          So we will have CMOs in there, but the nominees

09:31   13  for those trial dates, we're going to defer a little bit on

09:31   14  until we get a little bit more information.  Because you all

09:31   15  still are doing fact sheets, which they desperately need.  You

09:31   16  all are also just starting to get some documents, I understand,

09:31   17  which you desperately need.

09:31   18          So the complexion of cases that we want to try

09:31   19  may change.  And if I tell you to go pick eight more plaintiffs

09:31   20  for the second trial date in January of 2019, we may not be

09:31   21  interested in seven of those eight come the middle of next

09:31   22  year.

09:31   23          MR. COFFIN:  I agree, and that was my concern.  So

09:31   24  thank you for stressing that.

09:31   25          THE COURT:  Yeah.  We're not going to tie ourselves

OFFICIAL REALTIME TRANSCRIPT

09:31  1    to plaintiffs from now until the end of 2019.  But we have the
09:31  2    ten for the first one.  We will get around to picking eight for
09:31  3    the second trial date obviously sooner than for the third,
09:31  4    fourth and fifth.
09:31  5                    MR. COFFIN:  Thank you, Judge.
09:31  6                    MR. MOORE:  Your Honor, for a point of clarity, given
09:31  7    that we need to make this submission to you by next Wednesday,
09:31  8    in terms -- in order to, hopefully, preempt disagreement, the
09:32  9    issue of the limited discovery for the phased discovery
09:32  10   approach, the way it was addressed in the liaison counsel
09:32  11   meeting was that Dawn was concerned that we would be doing 30
09:32  12   depositions on every case, and gave as an example what was done
09:32  13   in *Xarelto* where the depositions during the workup phase was
09:32  14   limited to the plaintiff and the prescriber and other
09:32  15   physicians, sales representatives, those sorts of things.
09:32  16                    So just for a point of clarity, in terms of what
09:32  17   will be done in that first phase, obviously, it's our position
09:32  18   that include depositions -- relevant depositions consistent
09:32  19   with what's done for this kind of phase.
09:32  20                    THE COURT:  Well, you have to identify what are the
09:32  21   key pieces of information on both sides that you need in order
09:32  22   to determine whether you wish to advance that plaintiff's case
09:32  23   all the way to trial, on both sides.  If you need the
09:33  24   plaintiff's deposition and the oncologist's deposition and
09:33  25   whatnot, and likewise on their side.

OFFICIAL REALTIME TRANSCRIPT

09:33  1          They're going to identify the key pieces of

09:33  2  discovery information that they're going to need between now

09:33  3  and, let's say, the end of January, whatever date you choose,

09:33  4  in order to make a decision that you think out of those ten

09:33  5  names, you think, "Gee, these three maybe aren't quite as a

09:33  6  attractive to us as the other seven."

09:33  7          And then maybe another deposition or two that

09:33  8  may single out two more.  They can say, "Well, you know, those

09:33  9  aren't as good as we thought they were."  And then, hopefully,

09:33  10  we have four cases that you both agree -- or at least two or

09:33  11  three, and then I'll have to decide on the remainder, but that

09:33  12  you agree are suitable for trial that you wish to go forward

09:33  13  with full-blown expert reports and spending the kind of money

09:33  14  that's involved in working a case up to the morning of trial.

09:33  15          **MR. MOORE:**  Right.  What I was trying to avoid was

09:34  16  any misunderstanding as to what the word *limited* means.

09:34  17          **THE COURT:**  No.  The point of the two stages is to

09:34  18  prevent spending a lot of resources early working up a case

09:34  19  that we decide is probably not one of our better cases for

09:34  20  trial.  I'm not particularly concerned about what is or is not

09:34  21  included in the first stage of discovery as long as it serves

09:34  22  your purposes.

09:34  23          Yes, we want to avoid what Dawn described as,

09:34  24  "Well, gee, now I've got ten cases to try, so let's get

09:34  25  started.  I need to depose these 20 people on this one, and

OFFICIAL REALTIME TRANSCRIPT

09:34  1   these 20 people on this one," and start sending subpoenas out

09:34  2   all over the place.  It becomes unmanageable.

09:34  3        MR. MOORE:  Right.

09:34  4        THE COURT:  What we'd like to do -- and we will do

09:34  5   that with regard to the ones that are going to trial.  You will

09:34  6   have every opportunity to depose -- I don't want to say as many

09:34  7   people as you want.  I'm going to be more careful.  But you'll

09:34  8   have every opportunity to depose lots more people.  I'm going

09:35  9   to get quoted on this in somebody's brief.

09:35  10        MR. MOORE:  We don't want --

09:35  11        THE COURT:  My term of *lots* is not that expansive, so

09:35  12   don't misunderstand me.  But you will get a chance to depose

09:35  13   lots more people for a case that's going to trial than you

09:35  14   would pursuant to these parameters.  We just want to make sure

09:35  15   that this first phase of discovery serves the purpose of

09:35  16   limiting the number of candidates for trial from ten to four.

09:35  17        MR. MOORE:  Well, but there will be depositions

09:35  18   during that phase.

09:35  19        THE COURT:  There will be depositions during that

09:35  20   time.

09:35  21        MR. COFFIN:  I appreciate what Mr. Moore is getting

09:35  22   at.  I think said more directly:  We've done this before, and

09:35  23   we had a disagreement on the number of depositions and what

09:35  24   *limited* means, Your Honor.

09:35  25        THE COURT:  Exactly.  Exactly.

09:35   1          **MR. COFFIN:**  So without dancing around it, we're

09:35   2  going to have to try to negotiate that again.  I hear Your

09:35   3  Honor saying, "Look, go back to the table and if the

09:35   4  plaintiffs' side thinks there should only be two depositions,

09:35   5  say to the defense why you think that.  They're going to say

09:36   6  there should be seven or eight."  And we may have to present

09:36   7  that to you.  I think that's what Doug's getting to.

09:36   8          **THE COURT:**  And I want you to say who it is you think

09:36   9  you would need to depose.  It's probably going to be the

09:36   10  same -- except for a few little wrinkles, it's probably going

09:36   11  to be the same person, at least on the defendants' side.

09:36   12          You're going to know the three or four

09:36   13  depositions that you're going to want to take in every case,

09:36   14  and that you probably have taken on any stand-alone case

09:36   15  involving a product liability claim, pharmaceutical claim.  You

09:36   16  probably have your standard list of four got-to-have

09:36   17  depositions.  Okay.

09:36   18          And on the plaintiffs' side, you're probably

09:36   19  going to have the four or five got-to-have depositions that you

09:36   20  know you're going to take.  So identify those, and let's do

09:36   21  that before we get too far into the weeds of each particular

09:36   22  case.

09:36   23          **MR. COFFIN:**  Understood.

09:36   24          **THE COURT:**  We know with that basic discovery you're

09:36   25  not going to be ready to try a case, but you're going to be

09:36  1  able to distinguish between the ten that are there as being
09:36  2  some better for trial than others.
09:36  3       MR. COFFIN:  The point was well taken.  I think both
09:36  4  sides understand.  It's going to come down, so Your Honor
09:37  5  understands, to what we believe that appropriate number is.
09:37  6       THE COURT:  I'm not interested in the number so much
09:37  7  as I am interested in the quality of the discovery.
09:37  8            And it may be different.  It may be that you
09:37  9  say, well, they should be allowed to take five, and you take
09:37  10  three.  It doesn't have to be an equivalence; it has to be
09:37  11  useful information.  What do you need?  Talk among your teams.
09:37  12  What do you need to be able to make a decision on which cases
09:37  13  you think should be worked up, all the way to trial, to the
09:37  14  morning of trial.
09:37  15            If you can do it in three depositions, that
09:37  16  would be great.  If you want to make it equal -- what I don't
09:37  17  want to have is, "Well, now you're saying you need six, so now
09:37  18  I need six.  Well, six isn't enough, and I need this many
09:37  19  interrogatories, and I need" -- you know, I'm not so much
09:37  20  concerned about the number as I am about you getting the
09:37  21  information that you need to narrow this list of ten down to
09:37  22  four.
09:37  23       MR. MOORE:  Your Honor, just one other point of
09:38  24  clarification.  When we talked in the liaison counsel meeting
09:38  25  about placing names on the CMOs for the second, third, fourth

1   and fifth trial dates, one thing we discussed was entering the

2   CMO and including in there a date certain for those

3   nominations.

4           THE COURT:  Correct.

5           MR. MOORE:  Our thinking being that we would want to

6   get past the staging of the fact sheet submissions because we

7   have a robust number of plaintiffs to be able to do that.  So

8   that's something we'll work on in the discussions.  And

9   obviously that would involve our colleagues on the generic

10  side.

11          THE COURT:  CMOs 2 through 5 will not have named

12  plaintiffs on them when I enter those orders, but they will

13  have a date in each that requires the submission of eight names

14  on two and three, and seven more names on four and five.

15          Out of the six that don't get chosen for

16  full-blown discovery -- or even out of the nine, assuming we

17  don't lose anybody, you'll have three cases worked up.  You'll

18  have six more that you've decided not to work up.  Assuming

19  none of those -- you've decided that none of those are

20  stinkaroos, then you'll have nine more names to add to the

21  eight that you're going to give me for the second trial date.

22          So if you have two in there that you both agree,

23  "Well, there's no way we should try these two," then you'll

24  have seven names.  Out of the first ten, you'll have seven that

25  you can roll over.  Then you'll give me eight new ones, plus

09:39  1   you'll have seven.  Then you'll have 15 to choose from for the
09:39  2   second trial date.
09:39  3            MR. MOORE:  Thank you, Judge.
09:39  4            MR. COFFIN:  Your Honor, another point of
09:39  5   clarification.  With regard to the first phase, we're talking
09:39  6   about some number of depositions that each side will get to
09:39  7   take.
09:39  8            THE COURT:  Right.
09:39  9            MR. COFFIN:  Based on the extensiveness of the
09:39  10  plaintiff's fact sheet, we assume that in that first phase the
09:39  11  plaintiff's fact sheet serves as the written discovery; and
09:40  12  then in the second phase, we can talk about whether or not we
09:40  13  have additional discovery.
09:40  14           THE COURT:  It depends on what more they could
09:40  15  possibly want beyond the fact sheet.
09:40  16           MR. COFFIN:  Well, that's a great question.
09:40  17           THE COURT:  I made the fact sheet when you all could
09:40  18  not agree on one.  I included a lot of things that the
09:40  19  plaintiffs at that time did not think should have been on the
09:40  20  fact sheet, and I did the same on the defendants' side.  But
09:40  21  now is the time that, hopefully, that pays some benefit.  What
09:40  22  more do you need than what's on the fact sheet?  I indulged you
09:40  23  on the fact sheet.
09:40  24           If you come back and say, "Well, now that's just
09:40  25  not enough, and I need" -- so the answer to your question is:

OFFICIAL REALTIME TRANSCRIPT

09:40 1   No, they're not precluded from asking for another thing on the

09:40 2   planet.  But, yes, they have a generous amount of information

09:40 3   on the fact sheet that they sought up front that you have now,

09:40 4   if you do the fact sheets correctly and you respond correctly,

09:40 5   that they will have the benefit of.  So it cuts down on what I

09:40 6   would expect plaintiffs would need to provide as part of this

09:41 7   discovery phase.

09:41 8          MR. COFFIN:  Frankly, Your Honor, from our position,

09:41 9   as you mentioned, it is extensive.  And we would -- we

09:41 10  disagree, assuming the defendants want additional written

09:41 11  discovery, we can't imagine what else.  Now, I'm sure they can

09:41 12  come up with something, but --

09:41 13         THE COURT:  I can't either, but if they have a need

09:41 14  for something, then we'll take it up.  What I don't want to do

09:41 15  is have a -- you can do it this way if you like, but you get

09:41 16  this many requests for production.  Once I say you get ten more

09:41 17  requests for production, well guess how many are going to be

09:41 18  propounded?  Ten.  All right.

09:41 19         What do you really need?  I mean, we went

09:41 20  through the fact sheets, on both sides.  I was pretty generous

09:41 21  on what I wanted produced up front.  Nobody was unscathed and

09:41 22  was allowed to really lay in the gap on this thing.

09:41 23         So if you need another request for production,

09:41 24  or if you need to subpoena third-party documents, which also is

09:41 25  not somewhat addressed in the plaintiff fact sheets, that's

09:42 1    another story.  But if I say that you have ten more, then

09:42 2    you'll probably propound ten.  If you really need three more

09:42 3    things, then I think you should get three more things.

09:42 4         MR. MOORE:  Yeah.  Your Honor, there will be no

09:42 5    intention on our part to be duplicative or be onerous in --

09:42 6    unnecessarily onerous in our approach to discovery as the

09:42 7    plaintiffs were trying to identify for these very important

09:42 8    trials.  There were things that we voluntarily removed from the

09:42 9    fact sheets that we --

09:42 10        THE COURT:  Uh-huh.  That you might still want.

09:42 11        MR. MOORE:  -- and there's things that you didn't

09:42 12   think were appropriate for the fact sheet as well.  But we

09:42 13   understand what you're saying, and any requests that we would

09:42 14   make would obviously be in keeping with those.

09:42 15        THE COURT:  Well, and likewise, interrogatories.  I

09:42 16   mean, the fact sheet is just a -- assuming it's filled out

09:42 17   correctly and completely, I can't imagine a need for an

09:42 18   interrogatory at this point, unless it's a very pointed

09:43 19   specific question that the fact sheet does not address.  I

09:43 20   mean, you know, the fact sheet tells you a lot about a

09:43 21   plaintiff's claim, a lot.

09:43 22        MR. MOORE:  Yes.

09:43 23        MR. COFFIN:  It's extensive, no doubt about it.

09:43 24   We're concerned about the continuing burden that will pile up

09:43 25   if we allow more written discovery.  So I just wanted to bring

OFFICIAL REALTIME TRANSCRIPT

09:43  1    that to the Court's attention.  Hopefully, it won't be an
09:43  2    issue.
09:43  3                 The other thing is that we need to conduct
09:43  4    corporate discovery on the defense.  We're going to need to do
09:43  5    some of that discovery before even doctor depositions are
09:43  6    taken.
09:43  7                 **THE COURT:**  Right.
09:43  8                 **MR. COFFIN:**  And so we're going to try to work that
09:43  9    out with them, but that's going to be probably an issue that
09:43  10   we're going to need to work out for scheduling-wise of the
09:43  11   depositions.
09:43  12                **THE COURT:**  Okay.
09:43  13                **MR. COFFIN:**  Because, admittedly, they should be able
09:43  14   to take the deposition of the treating oncologist who
09:43  15   administered the Taxotere.  We'd like to know some information,
09:43  16   Your Honor.  I can't say we haven't gotten a single document
09:43  17   now, because they did send us some labels.
09:43  18                **THE COURT:**  Right.
09:43  19                **MR. COFFIN:**  But we have no real substantive
09:44  20   discovery yet.  So that --
09:44  21                **THE COURT:**  Oh, I understand.
09:44  22                **MR. COFFIN:**  -- that needs to occur before we can be
09:44  23   taking the doctors' depositions.
09:44  24                **THE COURT:**  You know what, if you all discuss the
09:44  25   stages, the order in which you want to proceed, and if you

1    can't resolve it, then we'll get on the phone.

2            At this point in time, in order to decide things

3    quicker, now that we have ten potential plaintiffs, we will

4    decide things on a quicker basis, and we'll do a lot of it on

5    phone conference things with the court reporter sitting in my

6    office and you all on the phone.

7            MR. COFFIN:  That would be great, Judge.

8            THE COURT:  We have up to this point because of the

9    motion practice being such as it is, we've followed the

10   briefing schedule and the notice of hearing and all.  But once

11   we get off to the races on this thing, we're going to need to

12   resolve things quicker.

13           You e-mail my clerk, each tell me what the issue

14   is, what your position is, and propose a reasonable solution --

15   it's very important to propose a reasonable solution -- I read

16   the e-mails, we e-mail you back, "What are you doing at

17   10:00 on Friday morning?  Okay.  Great.  Expect a phone call

18   from the Court," and we'll discuss it, and I'll tell you how

19   we're going to do it, and we'll have a record of it with a

20   transcript.

21           MR. COFFIN:  That's very much appreciated.  From our

22   side, we want Your Honor to understand we have diligently

23   worked to try to get to resolutions, and sometimes the reality

24   is we just need your input, and to be able to pick up the phone

25   or write an e-mail would be excellent.  So thank you for that.

OFFICIAL REALTIME TRANSCRIPT

09:45  1    **THE COURT:**  All right.  Anything else -- well, we

09:45  2  kind of got back into this trial schedule, but I asked about

09:45  3  the report.  Is there anything about the proposed report that

09:45  4  we need to discuss before we present this in the big meeting?

09:45  5    **MR. MOORE:**  There are two items, Judge, that we

09:45  6  received updated information on since we submitted this to you.

09:45  7    The first is the last full paragraph in

09:45  8  Section 8 on page 5 that pertains to the number of fact sheets

09:46  9  that have been received.  We got updated information on that as

09:46  10  of July 6th.

09:46  11    **THE COURT:**  Okay.

09:46  12    **MR. MOORE:**  We will make those adjustments.  And the

09:46  13  reporting as to the breakdown is based on the full number of

09:46  14  fact sheets that have been received.  You'll note in the

09:46  15  original draft, we only have the breakdown as of June 21st, and

09:46  16  total number of fact sheets as of June 30th.  Now we have both

09:46  17  sets of figures for July 6th, and that will be contained in the

09:46  18  adjustment.

09:46  19    Also, since we submitted the fact sheet -- or

09:46  20  since we submitted the Joint Report, Judge North entered the

09:46  21  ESI protocol and the protective order.  Those are identified as

09:46  22  pending in here.  So we'll make that adjustment as well so that

09:46  23  the report is up to date.

09:46  24    **THE COURT:**  Okay.

09:46  25    **MR. COFFIN:**  Your Honor, one issue on the plaintiff

09:46 1  fact sheets.  Some firms have received correspondence from the
09:46 2  defendants on the staggering issue.  You might recall in the
09:47 3  implementation order Your Honor entered an order allowing for
09:47 4  the staggering for those firms who had more than, I think it
09:47 5  was 50 cases.
09:47 6          The language of PTO 22 says that if a single law
09:47 7  firm has more than, I believe it's 50 cases, then they could be
09:47 8  staggered in groups of 25.  The defendants have taken the
09:47 9  position that if there are more than one law firm on the
09:47 10  filings; in other words, if a Louisiana lawyer has served as
09:47 11  local counsel for a New York lawyer who has over 50 cases,
09:47 12  that's not a single law firm so they don't get to stagger.
09:47 13          We think that that's not the intent of Your
09:47 14  Honor in granting some relief to the plaintiffs in order to
09:47 15  submit them in staggered groups of 25.
09:47 16          We'd like to hear what Your Honor has to say
09:47 17  about that.
09:47 18          MR. MOORE:  I think our objection was just to get the
09:47 19  fact sheets in given that we were approaching the process where
09:47 20  we were working on the CMOs and the identification of potential
09:48 21  probable cases was to get them in earlier rather than later.
09:48 22  And we didn't want to have a circumstance where, you know, a
09:48 23  representative sample of cases was being collected through the
09:48 24  process and loaded into MDL Centrality at the time that we're
09:48 25  making the pick.

09:48  1          We were cognizant of their concerns.  But, you
09:48  2  know, part of our feeling was similar to Your Honor's comments
09:48  3  that, "If you're not going to use your army, can I borrow it?"
09:48  4  You know, if there's two firms associated with a single case,
09:48  5  it would be our position that they would have the resources to
09:48  6  do it.
09:48  7          But, nonetheless, it's, you know -- I think the
09:48  8  discussions on the CMO now and our placing of we have ten
09:48  9  picked for the first one and we're going to select dates for
09:48 10  the selections of the next ones.  So long as those selection
09:48 11  dates account for getting the fact sheets in, then this is
09:48 12  probably less of a concern now than it was before.
09:49 13          THE COURT:  Well, obviously, we want to get them as
09:49 14  quickly as we can.  If it's an out-of-state counsel with local
09:49 15  counsel and they together are working on cases and they have
09:49 16  more than 50, then they should get the benefit of the 25
09:49 17  because they're working as a single effort.
09:49 18          All right.  Now, that local firm, I don't know
09:49 19  to what extent it is that a local firm may have its own
09:49 20  plaintiffs here from Louisiana.  Those cases would actually not
09:49 21  count towards the 50.
09:49 22          Don't over-lawyer this thing.  Don't over-lawyer
09:49 23  this.  We need them as soon as we can.  We're trying to give a
09:49 24  break to plaintiffs' counsel, to do them in ways, recognizing
09:49 25  that they are burdensome, there's a great deal of information

09:49   1   in it, and that it's almost impossible to do them within the
09:49   2   time parameter.  We're trying to give you the benefit.
09:50   3               If it's two firms and one of them serves only as
09:50   4   local counsel, then that should count as one counsel.  But,
09:50   5   again, if that local firm has its own set of plaintiffs that
09:50   6   the out-of-town firm is not -- the out-of-state law firm is not
09:50   7   involved in, well, then those have to be considered separate,
09:50   8   and they have to work those as though they are primary counsel
09:50   9   because they are.
09:50  10         MR. COFFIN:  That makes good sense, Your Honor.
09:50  11         THE COURT:  All right.
09:50  12         MR. COFFIN:  We just wanted to clarify the intent of
09:50  13   the order.  Thank you.
09:50  14         THE COURT:  Yes.  Anything else on the report?
09:50  15               Doug, you were talking about the -- you said you
09:50  16   had a couple of things, page 5, paragraph -- the last paragraph
09:50  17   under No. 8, we've covered.  Was that the second thing, what
09:50  18   you just pointed out?
09:50  19         MR. MOORE:  The second thing was the ESI order and
09:50  20   the protective order have been now entered, and they were
09:50  21   reflected as pending in this report.  We will make that
09:50  22   adjustment, and, of course, make the final version.
09:50  23         THE COURT:  All right.  Anything else on the report
09:50  24   that we need to talk about before we go across the hall?
09:50  25         MR. COFFIN:  Your Honor, Ms. Menzies wanted to

OFFICIAL REALTIME TRANSCRIPT

1    clarify something, I believe, on -- to do with the California

2    issue, the remand issue, No. 2.

3            THE COURT:  Okay.  Yes.  Go ahead, Karen.

4            MS. MENZIES:  Karen Menzies for the plaintiffs.

5            So from the hearing yesterday, we just wanted to

6    seek some clarification.  I believe I understand what your

7    instruction was with regard to us presenting to you the basis

8    of our information and belief factually for the general claims

9    related to our allegations against McKesson.

10           What I needed clarification was:  Is there also

11   an expectation by the Court that we will be able to establish

12   related to the distributor claims, which as we've put out in

13   the complaint are separate and in addition to our claims

14   against -- generally against McKesson?  If we -- because the

15   distributor information, as the Court is aware, the plaintiffs

16   don't have access to that; sanofi or McKesson does.

17           And so I guess I would request if the Court is

18   intending for us to do that, a week is probably not enough time

19   for us to do that.  And, I mean, should we be granted a little

20   limited discovery on McKesson related to that issue?  That's

21   the --

22           THE COURT:  No.  My interest is, and I think what I

23   said yesterday is that for a plaintiff out of the 24 that we

24   know of, for each of those plaintiffs that includes McKesson as

25   a defendant, what is the factual basis that relates that

09:52  1    plaintiff to a viable claim against McKesson.

09:52  2            MS. MENZIES:  Okay.  For all our allegations, the

09:52  3    general allegations; and if we have distributor liability, the

09:52  4    extent --

09:52  5            THE COURT:  Yes.  Why does that plaintiff --

09:52  6    factually what is the basis for the claim against McKesson?

09:52  7    When you say, "on information and belief," what is the

09:52  8    information?

09:52  9            MS. MENZIES:  Okay.

09:52  10           THE COURT:  If the information is only general

09:52  11   information that we -- you know, then that's the information.

09:52  12           MS. MENZIES:  I understand.

09:52  13           THE COURT:  That's what the attorney yesterday, I

09:52  14   think, told me at least originally to my question.  I'm

09:52  15   interested in more than what he said generally.  But if that's

09:53  16   what you have, then that's what you have.

09:53  17           MS. MENZIES:  Okay.  So there's not an expectation

09:53  18   that we would be able to or need to do discovery against

09:53  19   McKesson to --

09:53  20           THE COURT:  No, no.

09:53  21           MS. MENZIES:  -- find out their distribution

09:53  22   agreements with the facilities --

09:53  23           THE COURT:  No.  I'm interested in what plaintiff's

09:53  24   counsel for each of those 24 plaintiffs has that causes him or

09:53  25   her to assert a claim on behalf of that plaintiff against

OFFICIAL REALTIME TRANSCRIPT

09:53  1  McKesson.

09:53  2        MS. MENZIES:  I understand.  Okay.

09:53  3        THE COURT:  Information and belief, not other

09:53  4  information you'd like to have.  I would like to know why there

09:53  5  is a claim against McKesson.

09:53  6        MS. MENZIES:  I appreciate that.  Thank you.

09:53  7        THE COURT:  Okay.  All right.  Anything else?

09:53  8            Yes, Chris?

09:53  9        MR. COFFIN:  Under No. 16, motion practice, I don't

09:53  10  know whether you all discussed this in this liaison counsel

09:53  11  meeting, but one of the motions that has been filed by the

09:53  12  defense is on statute of limitations.  Your Honor, this is a

09:54  13  far reaching motion that on the plaintiffs' side we feel is

09:54  14  inappropriate to be heard at this stage in the litigation

09:54  15  because of all the individual facts, and looking back at what

09:54  16  we did in the *FEMA Trailer*, some of the language that you had

09:54  17  in *FEMA Trailer* about the appropriateness or not

09:54  18  appropriateness of addressing the statute of limitations issues

09:54  19  in an MDL context.

09:54  20        THE COURT:  Which one on this list are you talking

09:54  21  about?

09:54  22        MR. COFFIN:  It's May 26th, 2017, sanofi filed a

09:54  23  motion to dismiss claims barred by the applicable statute of

09:54  24  limitations.

09:54  25        THE COURT:  Okay.  I got it.

09:54  1          **MR. COFFIN:**  This is -- I think they filed this in
09:54  2    the omnibus statute of limitations motion, and it outlined what
09:54  3    all 50 states have, and what their arguments might be for
09:54  4    dismissing cases on the statute of limitations.
09:54  5                 It's our position that it's not appropriate at
09:54  6    this time to be addressing that because we just don't have
09:54  7    enough information, what state laws would apply, what
09:54  8    individual facts apply to each specific plaintiff.  Even choice
09:55  9    of law issues, something which in one of our opinions I read in
09:55 10    *FEMA Trailer*, you specifically addressed.
09:55 11                 The plaintiffs believe this should be put off
09:55 12    until -- certainly a later date.  I'm not sure when it would be
09:55 13    appropriate within the context of an MDL.  But for us to be
09:55 14    conducting the discovery we are, trying to get cases ready for
09:55 15    trial, the fact that we have no documents, next to no documents
09:55 16    yet, no depositions, and we're at such an early stage to be
09:55 17    addressing this.
09:55 18                 So it's very concerning to have us putting our
09:55 19    time and resources into a 50-state analysis on facts that we
09:55 20    don't even have from the plaintiffs through depositions.  So
09:55 21    we'd like some relief from having to put our resources into
09:55 22    responding to that 100-some page motion.
09:55 23          **THE COURT:**  Well, I could have oral argument on it
09:55 24    right now without the benefit of any briefing.  I guess I can
09:56 25    rule on your request right now, you know, or I can deny the

OFFICIAL REALTIME TRANSCRIPT

09:56  1   motion without prejudice to it being urged at a later date once
09:56  2   you do file an opposition, but that's in August.  The
09:56  3   submission date is August the 30th.
09:56  4           What would like me to do, boot it off of the
09:56  5   calendar right now?  Is that what you're asking me to do?
09:56  6           MR. COFFIN:  Yes, Your Honor.  If you'd like some
09:56  7   briefing on it, I'd be happy to cite some cases.
09:56  8           THE COURT:  I take it from the way Mr. Moore is
09:56  9   standing, and the way Mr. Strongman is looking at him and you,
09:56 10   that they don't agree.
09:56 11           MR. COFFIN:  I'm sure they don't or they wouldn't
09:56 12   have filed the motion.  Well, I guess my point is, at the very
09:56 13   least before we engage in this exercise of analyzing each
09:56 14   state's laws and looking at choice of law issues, perhaps we
09:56 15   should consider whether it's appropriate at all.
09:56 16           THE COURT:  Why don't we do this, since we had agreed
09:56 17   to this schedule before -- and I understand what your concern
09:56 18   is -- why don't you go ahead and file a motion to continue this
09:57 19   submission date.  And I'll be honest with you, I have not read
09:57 20   this motion because I've been reading motions to remand and
09:57 21   cases that are cited in motions to remand, among other things,
09:57 22   in this MDL, and other cases that I've recently tried that have
09:57 23   been all consuming.
09:57 24           So I haven't read the motion that you're talking
09:57 25   about.  If you file a motion to continue this submission date

OFFICIAL REALTIME TRANSCRIPT

09:57  1   and set forth -- you don't need to go into detail, but tell me
09:57  2   in the motion why this is not a good hearing date, I will go
09:57  3   through the motion and evaluate it along the lines of what your
09:57  4   grievance is.
09:57  5               MR. COFFIN:  Understood.
09:57  6               THE COURT:  If you want to oppose it, you can.  We
09:57  7   can move the hearing date if there's a good reason to do it and
09:57  8   you're articulating reasons that might be -- when I look at the
09:57  9   motion, I'll understand your reasons better, but I haven't read
09:57 10   this motion yet.  It's on the list, as you can see, under
09:58 11   No. 16, and it just hadn't quite --
09:58 12               MR. COFFIN:  You might want to set aside a few hours.
09:58 13               THE COURT:  -- it hadn't quite made my stack of
09:58 14   pleadings to read on my desk yet.  But I will pull it and put
09:58 15   it near the top once you file a motion to continue this hearing
09:58 16   date.  And if you want to weigh in on it as to why you think it
09:58 17   shouldn't be continued, or if you think additional time is
09:58 18   acceptable, but you don't want to continue it as long as
09:58 19   plaintiffs want to continue it, that's fine too.
09:58 20               I hear what you're saying.  I just don't want to
09:58 21   start kicking these dates around on the basis of a conversation
09:58 22   at a committee meeting.  This is obviously a significant
09:58 23   motion, and it's one that I -- I don't want to start moving
09:58 24   dates at committee meetings simply on the basis of somebody
09:58 25   raising their hand even as legitimate as the complaint may be.

OFFICIAL REALTIME TRANSCRIPT

09:58  1          MR. COFFIN:  That's fine.  We're happy to file a

09:58  2     motion to do that.

09:58  3          MR. MOORE:  Judge, we did discuss this issue at our

09:58  4     liaison counsel meeting on June 23rd.  Obviously, we do

09:58  5     disagree that these individualized issues that are being put

09:59  6     forward on their side would in any way warrant a delay in

09:59  7     consideration of what -- I mean, we flagged this issue in our

09:59  8     very first report to the Court.

09:59  9              We don't -- we base the motion on the

09:59 10     allegations contained in the complaint.

09:59 11          THE COURT:  Right.

09:59 12          MR. MOORE:  And we think -- I think what Your Honor

09:59 13     said to plaintiffs' liaison counsel on this issue going forward

09:59 14     is, "Well, they're looking for a trigger date on the statute of

09:59 15     limitations."  We had talked about some ways to address that

09:59 16     without getting into some of these granular, what would

09:59 17     otherwise be defenses to claims that are on their face time

09:59 18     limited.  But we can address that within whatever they submit

09:59 19     to the Court.

09:59 20          THE COURT:  I need to read the motion and the memo in

09:59 21     order to decide whether the date should be maintained or pushed

09:59 22     back, and I'll do that.  You're raising it again, I'll do it.

09:59 23              There are a lot of ways to rule on such a motion

10:00 24     generally.  I'm not talking about this particular motion, but

10:00 25     in some cases, as I've said, and as Doug just mentioned, some

OFFICIAL REALTIME TRANSCRIPT

1  dates -- sometimes these motions are looking for a trigger date

2  under a particular state law, and other cases are going to be

3  very fact intensive per plaintiff.

4          So if it's a motion that I can't give a

5  meaningful ruling on, then I probably would wind up denying it

6  without prejudice to urge it in connection with particular

7  cases.  I don't know until I read the motion to see what it is

8  the defendants are presenting and what their expectation is in

9  terms of a ruling, and thus what I would expect in terms of an

10 opposition.

11         MR. COFFIN:  Okay.

12         THE COURT:  So file it, your motion, I'll take a look

13 at it.  As soon as we get it, I'll take a look at it, and we'll

14 see if this date remains viable, or if we want to add in some

15 extra time and defer it.  We'll see.  All right.

16         Anything else?  John, anything?

17         MR. OLINDE:  No, Your Honor.  Just one thing.  I

18 think in the liaison counsel meeting, you had mentioned that

19 liaison counsel were to get together and to select dates in

20 January and in the spring and then the fall and then the winter

21 for those trial dates by Wednesday end of business.

22         THE COURT:  Right.  I would hope that our trial date

23 No. 2 would be perhaps in January of 2019; and trial date No. 3

24 would be sometime in the April/May time frame; trial date No. 4

25 would be in the back half of the summer time frame; and trial

10:01  1    date No. 5 would be perhaps in the October time frame.

10:01  2              Again, you all can look at it.  As I told

10:01  3    liaison counsel, my calendar for 2019 is very light as I sit

10:01  4    here today.  So pick a Monday and chances are, unless the

10:01  5    Saints are playing on Monday Night Football, I could probably

10:02  6    do -- or it's a federal holiday, I could probably do the

10:02  7    Monday.  Or Tuesday.  If it's a federal holiday, we'd start it

10:02  8    on Tuesday.  So the calendar is pretty open, so you have a

10:02  9    pretty wide variety of dates to pick for trial dates.

10:02  10             Okay.  All right.  If there's nothing else,

10:02  11   we'll adjourn and reconvene across the hall.

10:39  12             (WHEREUPON, the proceedings were concluded.)

13                                 *****

14                            <u>CERTIFICATE</u>

15             I, Jodi Simcox, RMR, FCRR, Official Court Reporter

16   for the United States District Court, Eastern District of

17   Louisiana, do hereby certify that the foregoing is a true and

18   correct transcript, to the best of my ability and

19   understanding, from the record of the proceedings in the

20   above-entitled and numbered matter.

21

22                            <u>*s/Jodi Simcox, RMR, FCRR*</u>
                               Jodi Simcox, RMR, FCRR
23                             Official Court Reporter

24

25

OFFICIAL REALTIME TRANSCRIPT