UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL No. 2740  SECTION: "N" (5) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF A PROTOCOL REGARDING *EX PARTE* CONTACT WITH PHYSICIANS

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively "sanofi" or "Defendants"), respectfully request this Court to enter Defendants' Proposed Pretrial Order ("PTO") governing the parties' interactions with any MDL Plaintiff's prescribing or treating physician(s). *See* **Exhibit A**.

### ARGUMENT AND AUTHORITY

Plaintiffs in this MDL allege permanent alopecia (hair loss) from using Taxotere®. Their theory is grounded in highly specialized areas of medicine—breast cancer oncology and hair loss dermatology—and will undoubtedly require the consultation with and use of experts at trial. As such, properly-credentialed physicians will need to be retained to review records, form opinions, and testify at trial. Following an unsuccessful meet-and-confer with Plaintiffs' counsel, Defendants now seek an Order permitting them to engage in limited *ex parte* communications with physicians who prescribed or treated an MDL Plaintiff ("Plaintiff's prescribing or treating physician") for the purpose of retaining such physicians as consulting or testifying experts in this litigation. To ensure that all contact with such physicians adequately protects the parties' interests, Defendants further propose procedural safeguards to govern all parties' contact with these physicians.

As an initial matter, Defendants recognize Plaintiffs' interest in communicating with their treating physicians regarding care and treatment, including the diagnosis, prognosis, and causation of the specific Plaintiff's medical condition. Plaintiffs may also have ongoing medical needs that require such contact—and Defendants' proposed Order expressly contemplates and permits that contact. *See* **Exhibit A**, ¶ 1. At the same time, Defendants' proposed Order ensures that Plaintiffs' legitimate *medical* interests do not become a pretext for Plaintiffs or counsel to inappropriately advance their *legal* interests—in particular, by attempting to influence physicians' medical opinions with materials produced or uncovered in the course of this litigation. *See id.*; *see also In re Pelvic Mesh/Gynecare Litig.*, 43 A.3d 1211, 1224 (N.J. App. Div. 2012) ("Although the 'medical interests' of a patient may be consistent or overlap with the patient's 'litigation interests," such a determination should be made as a matter of professional judgment by the treating physician, not by the patient's lawyers [….]"). This Order is necessary to preserve the reliability of each physician as a fact witness in this litigation and, perhaps more importantly, to ensure that litigation interests do not influence the medical opinions and practices of physicians still responsible for important ongoing treatment decisions regarding Plaintiffs and other patients.

Defendants' Proposed Order seeks to govern *ex parte* communications between any party and a prescribing or treating physician; and requires disclosure of such communications to the opposing party before such physician is deposed as a fact witness in this litigation. *See* **Exhibit C**, ¶¶ 1, 3(c). For Defendants, such *ex parte* contact is limited to (1) the scheduling of depositions by non-lawyer staff for Defendants' counsel, and (2) retaining physician experts for trial pool cases. *See id.*, ¶¶ 2–3. The Proposed Order specifically restricts defense counsel from communicating with treating physicians about specific patients they have treated. *See id.*, ¶ 3(d).

Moreover, Defendants may not use any physician as an expert in a case where that physician's present or former patient is a Plaintiff in that case, and may not use the physician of any trial pool Plaintiff at all until that case is disposed of.  *See id.*, ¶ 3(b), (e).  As to Plaintiffs, *ex parte* contact with prescribing and treating physicians is limited to discussions involving a particular Plaintiff's treatment, condition and needs; however, Plaintiffs are prohibited from disclosing to the physicians any materials the physician has not previously seen outside the scope of litigation, including medical literature and materials produced by Defendants in discovery.  *See id.*, ¶ 1.

Other MDL courts—including those coordinating pharmaceutical drug litigation—have followed an approach similar to that proposed by Defendants here.  *See, e.g.*, *In re Ortho Evra Prod. Liab. Litig.*, MDL No. 1742, No. 1:06-40000, 2010 WL 320064, at *2 (N.D. Ohio Jan. 20, 2010); *In re Chantix (Varenicline) Prod. Liab. Litig.*, MDL No. 2092, No. 2:09-CV-2039, 2011 WL 9995561, at *4 (N.D. Ala. June 30, 2011); *In re Pelvic Mesh/Gynecare Litigation*, No. ATL-L-6341-10, at 6 (N.J. Super. Ct. Law Div. Dec. 3, 2013);[1] *Actos Prod. Liab. Cases*, No. BC411687, 2015 WL 1387938, at *8 (Cal. Super. Ct. Mar. 20, 2015).  For example, in the *Ortho Evra* MDL, the Court imposed similar restrictions on plaintiffs' physician contact to those requested here.  Specifically, the Court permitted plaintiffs' counsel to meet *ex parte* with treating physicians to discuss records, course of treatment and related matters, but prohibited plaintiff's counsel from discussing liability issues or theories, product warnings, defendant research documents, or materials designed to "lobby[] their theories of liability and causation upon the treating physicians during the *ex parte* contact."  *In re Ortho Evra*, 2010 WL 320064, at *1-*2.

---

[1] For the Court's convenience, a copy of the New Jersey Superior Court's Order of December 3, 2013, is attached as **Exhibit B**.

Similarly, the *Chantix* MDL court ruled that plaintiffs' communications with treating physicians be "limited to the individual care of the individual plaintiffs, such as the plaintiffs' treatment, medical records and conversations with their health care providers." *In re Chantix*, 2011 WL 9995561, at *4. The *Chantix* court also held that "Plaintiffs' counsel shall not discuss defendant's internal documents with plaintiffs' health care providers outside of a deposition or other on the record setting." *Id.*; *see also In re Pelvic Mesh/Gynecare Litig.*, No. ATL-L-6341-10, at 6 (noting that "[t]he primary goal of the court is to ensure that no witnesses are unduly swayed by either side to modify their testimony," and limiting plaintiffs' counsel to discussions of the facts of individual plaintiffs' treatment while prohibiting use of internal documents produced by the defendant except at the treating physicians' deposition); *Actos*, 2015 WL 1387938, at *8 (limiting plaintiffs' counsel's *ex parte* contact with treating physicians "to a discussion of the physicians' records, course of treatment and related issues such as diagnosis and prognosis" and prohibiting discussion or disclosure of "liability issues or theories, product warnings, Defendants' research documents, medical literature, or related materials").

Likewise, recognizing the vital role of some treating physicians as potential experts, the *Zimmer* knee implant MDL court held that a restriction on treating physicians serving as expert witnesses against their own patients—as Defendants propose here—was sufficient to safeguard the physician-patient relationship. *See In re Zimmer NexGen Knee Implant Prod. Liab. Litig.*, 890 F. Supp. 2d 896, 906 (N.D. Ill. 2012) (permitting defendant to have *ex parte* communication with treating physicians and to retain such physicians as expert witnesses); *see also In re Seroquel Prod. Liab. Litig.*, No. 606MD-1769-ORL-22DAB, 2008 WL 821889, at *4 (M.D. Fla. Mar. 21, 2008) (approving defendants' communication with treating physicians for the purpose of retaining experts); *In re Prempro Prods. Liab. Litig.*, No. 4:03-cv-1507, Doc. No. 942, at 1

4

(E.D. Ark. Dec. 7, 2005) (authorizing defendants to retain treating physicians as experts under similar restrictions as proposed here).[2]

The Proposed Order is fully in line with—if not essential to—the efficient, accurate, and fair adjudication of the claims in MDL 2740.  *See Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047, 2005 WL 1799509, at *5 (S.D. Ind. July 25, 2005) (declining to adopt a rule "that allows one side unfettered and unsupervised access to important witnesses, yet prohibits such contact for the other side," noting that it "is a matter of fairness and symmetry" and that "[n]either side owns these witnesses."); *In re Pelvic Mesh/Gynecare Litig.*, 43 A.3d at 1227 (reversing trial court's order prohibiting defendants from using a plaintiff's treating physician as an expert, because "[b]oth sides in this litigation should have the opportunity to present evidence from the most qualified physicians who can serve as experts.").

Defendants' Proposed Order also tracks the outcome and reasoning of Judge Fallon's recent decision involving a similar (though distinct) request for guidance on *ex parte* physician contact in the *Xarelto* litigation.  *See In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, MDL No. 2592, 2016 WL 915288, at *4 (E.D. La. Mar. 9, 2016).  Noting the nuance and subtlety with which skilled advocates can exert influence, Judge Fallon held that an attempt to completely prohibit or prevent counsel from "woodshedding" physicians through *ex parte* contact "'would be both unenforceable and unreasonable."  *See id*. at *4-*5 ("The Court lacks the ability to surgically remove delicate insinuations from the individual sentences of Plaintiffs' counsel."). Instead, the Court prescribed "a strong dose of cross-examination as the cure" for attempts to improperly influence physicians through *ex parte* contact and, to that end, ordered the plaintiffs' counsel to document the date, duration, location, participants, and materials provided in

---

[2] For the Court's convenience, a copy of *Prempro* Doc. No. 942 is attached as **Exhibit C**.

connection with any *ex parte* contact with treating physicians, and to provide such information to Defendants at least forty-eight hours prior to that physician's deposition. *See id*. at *6.

Accordingly, Defendants' Proposed Order focuses on the *documentation and disclosure* of Plaintiffs' contacts with treating physicians and suggests straightforward, readily enforceable restrictions on the use of novel medical literature and materials produced by Defendants in discovery with treating physicians. The Proposed Order would allow the parties to self-police and explore potential bias through deposition and cross examination. These restrictions appropriately comport with Judge Fallon's ruling and reasoning in the *Xarelto* case. *Compare id*. at *6 *with* **Exhibit A**, ¶ 1(a)-(e).

The *Xarelto* decision is also instructive on the matter of *ex parte* contact between defense counsel and treating physicians for the purpose of identifying and retaining experts. In that case, Judge Fallon approved the defendants' request for such contact on substantially similar terms to those proposed by Defendants here. *See In re Xarelto*, 2016 WL 915288, at *9 (E.D. La. Mar. 9, 2016) (authorizing defendants to engage in a limited number of *ex parte* contacts with potential physician-experts and limiting the timing of substantive discussions and retainer agreements, the cases in which the physicians may appear as experts, and the content of communications—i.e., prohibiting discussion of individual patients).[3] To assure equitable and appropriate access to potential expert witnesses, this Court should grant Defendants' motion and enter the Proposed Order governing *ex parte* contact with MDL Plaintiffs' prescribing and treating physicians.

---

[3] Judge Fallon's initial Order in the *Xarelto* MDL required physicians to disclose any proposed physician-expert arrangement to all current patients who were taking or had taken Xarelto, prior to agreeing to provide expert services. *See id*. But after further briefing by the parties, the Court entered Pretrial Order No. 28, which omitted any such requirement. *See In re Xarelto*, Case No. 2:14-md-02592, Pretrial Order No. 28 (Regarding Contact with Physicians), Doc. No. 3156 (E.D. La. April 28, 2016) (attached as **Exhibit D**); *see also In re: Benicar (Olmesartan) Prod. Liab. Litig.*, No. 15-2606, 2016 WL 1370998, at *8 (D.N.J. Apr. 6, 2016) (citing *Xarelto* in approving *ex parte* contacts concerning expert retention, but omitting any patient disclosure requirement).

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request this Court to grant their motion and enter Defendants' Proposed Pretrial Order to govern interactions with MDL Plaintiff's prescribing or treating physician(s).

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*