UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "N" (5) |
| THIS DOCUMENT RELATES TO ALL CASES | |

**MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively "Defendant" or "Sanofi") move to compel production of Plaintiffs' electronically stored information ("ESI") pursuant to Fed. R. Civ. P. 37(a) and request that the Court enter the proposed order, attached as **Exhibit A**. The proposed order is necessary because the vast majority of Plaintiffs in this MDL have failed to produce electronic documents and information as required by the Plaintiff Fact Sheet ("PFS") and ESI Protocol (PTO No. 49). Their demonstrated failure raises concerns about Plaintiffs' collection efforts and necessitates a global order from this Court addressing the issue.

In short, Defendants' proposed order requires the Plaintiff Steering Committee ("PSC") to provide individual plaintiffs' counsel with the "ESI Guidance"[1] and instruct them to follow it. Individual counsel are required (1) to make a reasonable inquiry into specific sources where electronic information may be stored, (2) comply with specific provisions of the ESI Protocol, and (3) cure ESI deficiencies within 30 days.

---

[1] The ESI Guidance is a document that suggests ways to preserve and collect electronic information from Plaintiffs that might otherwise be ignored. *See* Guidance Regarding Potential Sources of Electronically Stored Information ("ESI Guidance"), attached as **Exhibit B**.

## PLAINTIFFS' ESI OBLIGATIONS

The Court ordered Plaintiffs to produce certain electronic information including emails, messages, and social media posts about their cancer, chemotherapy treatment, hair loss, and Taxotere®. *See* Amended PTO No. 22 (Doc. 325); PTO No. 38 (Doc. 326), at § IX. The Court also required Plaintiffs to produce photographs showing their hair composition before, during and after treatment and any "other media" showing their alleged injury or its effect in Plaintiffs' lives. *Id.* Under the ESI Protocol, Plaintiffs are to produce the digital versions of those photographs with the "available metadata fields." *See* PTO 49 (Doc. 611) ("ESI Protocol"), at VII.A.8. Further, in an effort to guide the numerous individual Plaintiffs' counsel in preserving, collecting, and producing all of this electronic information (and its associated metadata) the Court directed the PSC to provide an "ESI Guidance" to individual counsel directing them to take certain steps to guide their reasonable inquiry for responsive ESI. *See* **Ex. B**.

As part of that inquiry, the ESI Protocol requires Plaintiffs to provide Defendants with additional information about potentially responsive ESI in Plaintiffs' possession. Plaintiffs must provide Defendants with:

(1) a list of other witnesses or custodians likely to have discoverable electronic information;

(2) a general description of electronic sources, systems, or devices likely to contain discoverable information;

(3) a description of non-duplicative electronic information that has been lost or destroyed after the legal hold obligations arose; and

(4) a description of any ESI that plaintiff contends in inaccessible, including the reason for that contention. *See* ESI Protocol, at § IV.E.

## **PLAINTIFFS' FAILURE TO PRODUCE ESI**

Despite these Orders, the vast majority of Plaintiffs have failed to produce responsive ESI. Of the 1,179 Plaintiffs that have submitted a PFS, only 21 (less than 2%) have produced emails, text messages, social media posts, or other electronic information; and only 298 Plaintiffs have produced electronic photographs. Most of those photographs do not have associated metadata, which is particularly important here because the date of the photographs is of central significance for assessing Plaintiffs' alleged cosmetic injury. And, the poor-quality, non-digital photographs Plaintiffs are currently submitting make it difficult – if not impossible – for Defendants to assess the alleged hair loss. Even more alarming are many of Plaintiffs' demonstrably false responses to PFS questions regarding Plaintiffs' computer use and the existence of relevant and responsive photographs.

### A. Existence of Relevant and Responsive Electronic Information

Implausibly, over 1,000 Plaintiffs (almost 85%) claimed to have ***never*** used an electronic device to communicate about their hair loss, cancer, or chemotherapy – three of the most significant events in these Plaintiffs' lives. But even initial workup of the trial cases shows that such responses lack credibility.

For example, bellwether Plaintiff Elizabeth Kahn initially claimed in her PFS responses (submitted before she was selected as a bellwether Plaintiff) that she never commented or posted on a blog regarding her chemotherapy.[2] She also checked "no" in her initial PFS as to whether she possessed any journals, diaries, or information posted on the internet related to Taxotere®, her hair loss, or her claims. *Id.*, at § IX. But after her case was selected as a bellwether on June 30, 2017, Mrs. Kahn changed her responses and revealed that she dedicated an entire blog to documenting her chemotherapy treatment – a fact not disclosed to Defendants when she was

---

[2] *See* Excerpts from Elizabeth Kahn's PFS, attached as **Exhibit C**, at § II.18.

selected for the trial pool.[3]  Even then, Mrs. Kahn only produced a black-and-white, poor-quality PDF of her blog with none of the digital photographs from it.[4]  Given the dearth of ESI produced by Plaintiffs to date and the sheer number of Plaintiffs that claim not to have any, Sanofi reasonably believes that the ESI production in Mrs. Kahn's case is representative of a much larger pool of Plaintiffs in this MDL who simply have not made the effort to identify, preserve, collect, and produce ESI.

Each Plaintiff in this MDL – no matter whether her case has been selected for trial – has an obligation to preserve, collect, and produce relevant ESI.  *See* Amended PTO No. 22 (Doc. 325); PTO No. 38 (Doc. 326), at § IX; *see* PTO 49 (Doc. 611) ("ESI Protocol"), at § VII.A.8.  To the extent Plaintiffs wait to do any work on this front until they are selected for trial, it is possible that much of that ESI will no longer exist – a fact that even Plaintiffs' leadership recognizes.  *See* September 20, 2017 letter from Zachary Wool, attached as **Exhibit F** (claiming that Plaintiffs may not have ESI because "a plaintiff may have emailed about her hair loss during chemotherapy treatment from an email account that no longer exists.").  Enforcement of Plaintiffs' obligation to produce relevant and responsive ESI is necessary as a result.

### B.   Photographs

The number of Plaintiffs claiming not to have *any* photographs – much less digital photographs – of themselves at particular times is likewise implausible.  For example, among the 1,179 Plaintiffs who provided a PFS, Defendants received the following responses:

---

[3] *See* Excerpts from Elizabeth Kahn's First Amended PFS, attached as **Exhibit D**, at § II.18 & § IX.
[4] *See* Copy of Blog Produced by Elizabeth Kahn, attached as **Exhibit E**. After pointing out the discrepancy between Mrs. Kahn's PFS photographic productions and what Defendants could find publically available on the internet, her counsel's response was not to produce digital photographs from Mrs. Kahn's blog (or any other digital photographs).  Instead, she argued that because Defendants had access to the blog and Facebook, Plaintiff was not obligated to produce the photographs.  Counsel's positions exemplifies Plaintiffs' apparent belief that they do not see a need to comply with their discovery obligations if *they* decide Defendants have access to sufficient information.

4

- Photographs of your hair composition **before** treatment.
    - **138** claim to have no photographs
    - **141** did not respond

- Photographs of your hair composition **during** treatment.
    - **714** claim to have no photographs
    - **169** did not respond

- Photographs of your hair composition **six months after** treatment.
    - **562** claim to have no photographs
    - **167** did not respond

- Photographs of your hair composition **in present day**.
    - **117** claim to have no photographs
    - **130** did not respond

- Photographs, drawings, slides, videos, recordings, DVDs, or any other media that show your alleged injury or its effect in your life.
    - **252** claim to have no media
    - **115** did not respond

- **100** Plaintiffs either did not respond or claimed to have no photographs at all.

Put differently, for any given request for production of photographs in the PFS, anywhere from one to three quarters of Plaintiffs either did not respond at all or *claimed not to have a single photograph of themselves, digital or otherwise*. It is simply not plausible for so many Plaintiffs to have no photographs of themselves before chemotherapy. Nor is it believable that a similar amount of Plaintiffs do not have *current* photographs of themselves (in any format).

Furthermore, of the photographs that Plaintiffs have produced, few are in digital format with the associated metadata, even though the digital photograph clearly exists. Digital cameras have been commonly used for well over a decade with the vast majority of people now taking most, if not all, photographs on their cell phones. Despite Plaintiffs' obligations to produce

photographs with the "associated metadata fields,"[5] the common practice of Plaintiffs is to produce PDF versions of digital photographs *without* metadata.[6] For example,

- Plaintiff Deborah Reeves took a picture of herself in the mirror with a cell phone but did not produce the digital photograph with metadata; rather, she produced PDF-printed copy. *See* **Ex. G**.

- Plaintiff Margarette Nevilus took a picture on a cell phone, then took a picture of the cell phone and printed a copy of that picture to produce it, but she did not produce the digital photograph with the associated metadata. *See* **Ex. H**.

These types of responses and productions are common and call into question Plaintiffs' efforts to comply with their discovery obligations to produce digital photographs.

Clear digital photographs with accurate dates are essential in this litigation as Plaintiffs' only claimed injury is that Taxotere® or docetaxel changed the appearance of their hair. To accurately assess that claim, Defendants need clear photographs in each of the relevant time periods so they can assess the nature and extent of the alleged injury and determine if and how it presented itself over time. Such an assessment is not only essential so Defendants can defend themselves in is litigation but also so they can select representative cases for future trail pools.

Plaintiff Pamela Abshire provides an illustrative example of the problem.[7] To date, she has produced one *digital* photograph, even though the other non-digital photographs she submitted appear to be taken or stored on a digital device. *See* **Ex. I**. She also has not produced any photographs *before* chemotherapy treatment. Using only the "after" photographs she produced (Defendants assume they are "after" photographs because the PDF is labeled as such), it is impossible to tell whether she has any hair loss. With no "before" photographs and poor-

---

[5] *See* ESI Protocol (PTO 49), at § VII.A.8.
[6] *See* Photographs of Plaintiff Deborah Reeves, attached as **Exhibit G**; Photographs of Plaintiff Margarette Nevilus, attached as **Exhibit H**.
[7] *See* Photographs of Pamela Abshire, attached as **Exhibit I**.

quality, non-digital "after" photographs, Defendants are left not knowing whether Mrs. Abshire's hair composition has changed at all over the years.

Plaintiffs Kahn, Reeves, Nevilus, and Abshire are not unique. With the poor-quality, non-digital submissions Plaintiffs are currently making, the appearance of their hair is nearly impossible to make out, and it is even more difficult to determine if that composition has changed. As such, a Court order enforcing Plaintiffs' obligations to produce digital photographs with the associated metadata is critical.

### C. Overdue PFSs

Not only are a large percentage of Plaintiffs refusing to respond to specific, key requests and questions in the PFS, many more are simply ignoring their obligations entirely. The Court ordered Plaintiffs to produce a completed and verified PFS, signed and dated Authorizations, and all responsive documents in Plaintiffs' possession within 75 days from the date the case was docketed. *See* Amended PTO 22 (Doc. 325), at ¶ 3. Yet over 200 PFSs are still outstanding and past due.

### D. Plaintiffs' Failure to Cure

Counsel for Sanofi has attempted to address this issue several times with the PSC[8] and individual Plaintiffs' counsel[9] but to no avail. Individual Plaintiffs have been slow – or failed entirely – to produce responsive ESI as required by Court Orders. And the PSC has mostly deflected, claiming that though this is an inventory-wide problem, it does not call for any

---

[8] *See, e.g.,* May 11, 2017 letter from Harley Ratliff to PSC; June 13, 2017 email from Harley Ratliff to Jennifer Heck; July 19, 2017 letter from Harley Ratliff to PSC; August 4, 2017 letter from Harley Ratliff to PSC; September 11, 2017 letter from Harley Ratliff to PSC; September 22, 2017 letter from Harley Ratliff to PSC; September 29, 2017 letter from Patrick Oot to Zachary Wool, attached collectively as **Exhibit J**.

[9] Sanofi has sent hundreds of deficiency notices in individual cases regarding Plaintiffs' failure to produce ESI.

inventory-wide solution.[10] The solution, the PSC claims, is for Defendants to have thousands of meet-and-confers with individual plaintiffs' counsel regarding their failure to produce ESI. That solution, however, is neither practical nor efficient and would undercut the very purpose of consolidated proceedings. Manual for Complex Litigation, § 10.1 (describing the need for courts to promptly enter "case-management procedures [tailored] to the needs of the particular litigation" to resolve global issues "as speedily, inexpensively, and fairly as possible."). Plaintiffs also flatly reject their obligations under the Court-ordered ESI Protocol, despite its neutral language making it applicable to the "parties."

## **REQUESTED RELIEF**

Plaintiffs' pattern to date exhibits a widespread disregard for their discovery obligations imposed by the PFS, ESI Guidance, and ESI Protocol. Because preservation and collection of ESI can be particularly time sensitive – a fact recognized by the Eastern District of Louisiana's ESI Guidelines – Defendants raise this issue now to disrupt Plaintiffs' troubling pattern "at the earliest possible opportunity." E.D. La. ESI Guideline 2.04; *see also* Manual for Complex Litigation, § 11.424 ("Few aspects of litigation management are more important than the prompt and inexpensive resolution of [discovery] controversies.").

The Court has broad authority to compel production of documents and enforce its previous orders. *See* Fed. R. Civ. P. 37(a) & (b). The Court's authority to enforce compliance with its orders is particularly important in an MDL where the court is charged with efficiently moving a large number of cases toward resolution. *See* 28 U.S.C. § 1407(a); *see, e.g.*, *In re Neurontin Prods. Liab. Litig.*, No. 04-10981-PBS, 2011 WL 1326407, at *6 (dismissing cases in an MDL for failure to provide basic discovery responses).

---

[10] *See* **Ex. F**, September 20, 2017 letter from Zachary Wool (claiming the PSC does not need to address this issue).

The Court should exercise its authority to enforce compliance with its previous orders and compel production of relevant ESI by entering Defendants' proposed order. *See* **Ex. A**. The proposed order requires the PSC to provide individual plaintiffs' counsel with the ESI Guidance and instruct them to follow it. This is something that, according the direction of the Court, the PSC should already be doing. Unfortunately, the PSC continually discredited the ESI Guidance during the meet and confer process, suggesting they are not providing it to individual counsel or working with them to appropriately preserve ESI. *See* **Ex. F**, September 20, 2017 letter from Zachary Wool. As such, the Court's intervention is needed.

Under the proposed order, individual counsel are required to (1) make a reasonable inquiry into specific sources where electronic information may be stored, (2) comply with specific provisions of the ESI Protocol, and (3) cure ESI deficiencies within 30 days. As shown in further detail above, these provisions are necessary because Plaintiffs' failure to produce suggests that they are not searching these sources for relevant and responsive ESI. And Plaintiffs have made no effort to comply with the other provisions of the ESI Protocol, flatly rejecting their obligation to do so. *See* **Ex. J**, September 29, 2017 letter from Patrick Oot. Therefore, the Court should enter Defendant's proposed order, attached as **Exhibit A**.

Respectfully Submitted:

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-310-2100
Facsimile:  504-310-2120
E-Mail:  dmoore@irwinllc.com

>Harley V. Ratliff
>Adrienne Byard
>SHOOK, HARDY & BACON L.L.P.
>2555 Grand Blvd.
>Kansas City, MO 64108-2613
>Telephone:  816-474-6550
>Facsimile:  816-421-5547
>E-Mail:  hratliff@shb.com
>
>*Counsel for Sanofi and Aventis Pharma S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>/s/ *Douglas J. Moore*
>Douglas J. Moore

## **RULE 37 CERTIFICATION**

I hereby certify that on various occasions since May 2017, I and/or another of my defense counsel colleagues have, in good faith, conferred with Plaintiffs' counsel about the subject of this motion.

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
E-Mail: dmoore@irwinllc.com