UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)      MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

### PLAINTIFFS' OPPOSITION TO SANOFI DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONICALLY STORED INFORMATION

### INTRODUCTION

In the teeth of this Court's case management and pre-trial orders, Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. have filed a motion to compel production of electronically stored information—specifically, digital photographs of the plaintiffs before, during, and after treatment, and associated metadata, as well as e-mails, blogs, chat rooms, online forums, cloud services, and all social media posts about their cancer, chemotherapy treatment, hair loss, and Taxotere—from "over 1,000 [unidentified] plaintiffs" in this MDL within 30 days. Defs.' Mem. in Supp. of Mot. to Compel at 3 (hereinafter "Defs.' Br."), Rec. No. 918-1.[1] Defendants filed this motion without meaningfully conferring with members of the Plaintiffs' Steering Committee, and their papers—144 pages long—clearly disregard this Court's streamlined procedure for resolving a discovery dispute. *See* Case Management Order ("CMO") No. 5, at 3, Rec. No. 762 (requiring a good-faith meet and confer, allowing letter briefing "not to exceed three pages single-spaced," but prohibiting further submissions without leave of Court).

---

[1] Defendants never identify these plaintiffs, so these numbers are impossible to verify. Defendants' unsupported estimation is accepted here only for argument's sake.

1

These errors, unfortunately, are the least of it. Regarding allegedly deficient productions from plaintiffs who have not been selected for trial, the motion to compel threatens to upend the Plaintiff Fact Sheet ("PFS") deficiency process that the Court ordered in Amended Pre-Trial Order ("PTO") No. 22, Rec. No. 325. And for trial plaintiffs, the motion is an end-run around the expedited deficiency process that Judge Engelhardt ordered in CMO No. 4, Rec. No. 670.

Defendants also seek to compel ESI disclosures from all plaintiffs, but this argument misreads CMO No. 5 and the ESI Protocol (PTO No. 49). Contrary to Defendants' submission, the ESI Protocol applies in its entirety only to the Defendants. A plain reading of these orders, and common sense, bear this out.

In all, Defendants should not be permitted to short-circuit Judge Engelhardt's orders by asking the Magistrate Judge to compel a PFS and ESI production from over 1,000 plaintiffs in 30 days, a result which would effectively amend the disclosures required by the PFS and drastically alter the deficiency process. Even though Defendants' motion fails, plaintiffs repeat what they have told Defendants time and again: the PSC is willing to work with Defendants to address any purported deficiencies in a trial plaintiff's PFS provided Defendants identify the trial plaintiff *and* the deficiency. For non-trial plaintiffs, however, it is unrealistic to expect the PSC to interface with plaintiffs' counsel on every purported deficiency in a PFS. Even so, the PSC has passed along general guidance about the Court's orders—just as Defendants have asked and the PSC said it would.[2]

---

[2] Without providing commentary on the accusation that the PSC purposefully negotiated ESI "guidance" and intentionally never distributed it, the PSC can confirm that the "guidance" has been sent to all known plaintiffs' counsel on two occasions. Should this Court like, the PSC can provide hard copies of the transmittal correspondence (which is PSC work product protected from disclosure) for *in camera* inspection.

No more is required of the PSC. And no less is required of Defendants than adherence to the deficiency process that Judge Engelhardt has established to address the issues they raise. Accordingly, Defendants' motion to compel should be denied.

## ARGUMENT

**I.  Defendants Failed to Meet and Confer and Disregarded this Court's Process for Resolving a Discovery Dispute.**

From the start, Defendants have been critical of PFS productions—and plaintiffs have been critical of Defendants' injudicious tagging of PFSs as deficient. But it was not until September 28 that the PSC (Chris Coffin and Zachary Wool) and Defendants (Harley Ratliff and Patrick Oot) held a telephonic conference to address Defendants' concerns.

On that call, Defendants identified two issues: (1) the general non-production by plaintiffs of responsive ESI, and (2) the failure of trial plaintiffs to make ESI disclosures purportedly required by PTO 49 (as made operative by the order governing discovery on Defendants). The PSC responded that the Court's deficiency process addressed Defendants' concern with any supposed non-production by plaintiffs. The PSC also offered to assist with any deficiencies by trial plaintiffs, and asked Defendants to identify these plaintiffs and any deficiencies. In addition, the PSC explained that, in their view, the entire ESI order applied only to Defendants. Even so, plaintiffs asked Defendants to explain what disclosure, above what the PFS requires be disclosed, they were seeking from the trial plaintiffs.

Defendants then expressed more dissatisfaction with the deficiency process and stated that they wanted an order entered compelling compliance with the requirements of the PFS to produce ESI responsive to the PFS. Mr. Coffin asked Mr. Ratliff to provide a proposed order, which he agreed to provide. Defendants agreed to identify what disclosures they believed were needed above and beyond the PFS disclosures.

Rather than providing this information as promised, Defendants sent a copy of the instant Motion and demanded that the PSC acquiesce within hours, lest the motion would be filed. Upon reading Defendants' motion, the PSC learned for the first time of specific issues raised by Defendants with respect to a handful of plaintiffs. Defendants' Motion also expanded their position with respect to the scope of the ESI order, arguing now that it applies to all plaintiffs rather than just the disclosure requirements applying to only the trial plaintiffs.

Defendants' motion should never have been filed. CMO No. 5 provides a streamlined process for bringing a discovery dispute to the Magistrate Judge's attention. The parties must "meet and confer in good faith regarding any discovery disputes before seeking the Court's intervention." *Id*. at 2. They must also provide the Magistrate Judge "with a list of topics being submitted for decision, discussion, or informal guidance . . ." *Id*. at 3. Disputes may be presented by letter briefs "not to exceed three pages single-spaced." *Id*. "No further submissions regarding an issue may be submitted without leave of the Court." *Id*.

Defendants' motion to compel fails at every turn. They did not meaningfully confer with the PSC, and they ignored this Court's preferred means of raising and resolving discovery disputes by filing an unauthorized motion to compel. These deviations from the Court's procedures is ample reason to deny Defendants' motion to compel. Still, the Court may wish to deny the motion on the merits for the reasons provided below.

**II.   Defendants Improperly Filed a Motion to Compel in Lieu of Complying with the PFS Deficiency Process Set by Judge Engelhardt.**

Defendants allege that over 1,000 plaintiffs failed to provide responsive documents or have provided insufficient documents in response to requests in the PFS for representative photos before, during, and after treatment, as well as e-mails, blogs, chat rooms, online forums, cloud services, and social media posts about their cancer, chemotherapy treatment, hair loss, and

4

Taxotere. Defendants' sweeping motion to compel—which targets over 1,000 unidentified plaintiffs—is *not* the process by which Judge Engelhardt has ordered the parties to challenge, cure, or resolve *individual* deficiencies for non-trial or trial plaintiffs.

Rather, under the deficiency process applicable to non-trial plaintiffs, a plaintiff who fails to provide responsive documents in the PFS "shall be given notice of deficiency via MDL Centrality." Amended PTO 22, at 3. Defense counsel "shall [also] bring any and all deficiencies to the attention of opposing counsel in one letter …" *Id*. at 3 n.3. If non-trial plaintiffs fail to cure the deficiencies within thirty days, Defendants "may add the name and case number of any plaintiff … to the agenda for the next Status Conference." *Id*. at 3. Any non- trial plaintiff who remains deficient at the Status Conference "will be subject to an Order to Show Cause, returnable at the next Status Conference, which will require plaintiff to show cause why her Complaint should not be dismissed with prejudice." *Id*. In addition, under the deficiency process applicable to trial plaintiffs, the parties must resolve any disputes about the deficiencies by engaging in a "meet and confer" and scheduling a "brief telephonic hearing before the Honorable Judge North." CMO No. 4, at 1.

Defendants have expressed dissatisfaction with these procedures and the amount of time plaintiffs are given to cure deficiencies. The PSC disagrees with Defendants' broad and unsupported criticisms of the system Judge Engelhardt put in place, but regardless, Defendants cannot use a motion to compel to end-run around Judge Engelhardt's orders on how individual deficiencies are to be addressed.

Defendants nevertheless argue that their motion is warranted because plaintiffs globally have not produced photographs of their hair loss before, during, and after treatment. This is not true. As Defendants themselves acknowledge, many hundreds of plaintiffs have produced

5

photographs. *See* Defs.' Br. at 3. Defendants also cherry pick an unrepresentative, small sample of productions they deem deficient and paint all plaintiffs with the same deficiency brush.

Among those chosen examples, though, Defendants do not give a full picture of what has transpired. Take the example of Ms. Kahn's blog. Counsel for Defendants had a call with counsel for Ms. Kahn regarding, *inter alia*, the black-and-white nature in which Ms. Kahn's blog was produced. As Ms. Kahn's counsel understood the issue, Defendants wanted the pictures in color. So, she pointed them to the publicly-available blog where the color photographs could be found. At the conclusion of her response to Defendants, she offered to further discuss the issue if necessary and in the event she misunderstood what Defendants wanted. *See* Exhibit A, September 29, 2017 E-mail from Perez to Bieri. Defendants' response to that offer was to file this Motion.

Defendants further suggest that all deficiencies can be addressed *en masse*. Defendants' individualized issues with plaintiffs' production, however, make clear why the Court adopted a process that requires the parties to identify specific deficiencies attributable to a specific plaintiff and to send that deficiency to the plaintiff's individual counsel, rather than permit the parties to move to compel production of documents within thirty days from thousands of plaintiffs without the benefit of knowing the precise deficiency at issue.[3]

---

[3] If anything, the nature of Defendants' objections demonstrates the necessity of individualized consideration. Even among the plaintiffs who submitted the required photographs, Defendants maintain that some photographs are deficient because they do not include metadata; but others have produced all required photographs with sufficient metadata. Defs.' Br. at 3. Defendants also point out that some photographs are of poor-quality, but others are clear. *Id*. Likewise, Defendants acknowledge that a number of plaintiffs have produced emails, texts, social media posts, or other electronic information that discuss their experience with Taxotere, but others haven't. Even among the plaintiffs that have produced said electronic documents, Defendants object to the quality of the production. *Id*. at 4.

In sum, Defendants' motion to compel defies the considered, measured, and orderly, approach Judge Engelhardt ordered to assess individualized deficiencies on an individualized basis within a timeframe acceptable to the Court. Because Judge Engelhardt has already decided on a procedure to address the Defendants' view of alleged deficiencies, their motion to compel should be denied.

**III.   Defendants Mischaracterize the ESI Protocol and Its Applicability To Plaintiffs.**

Defendants also argue that the ESI Protocol applies to all plaintiffs in an attempt to impose additional discovery obligations and burdens on thousands of plaintiffs—discovery which Judge Engelhardt has never authorized. This argument is doubly flawed. First, the ESI Protocol, which establishes technical procedures and obligations to ensure orderly production of millions of pages of documents, was clearly never intended to apply to individual plaintiffs, whose discovery obligations are limited to those specified in the PFS.[4]

The ESI Protocol was always intended primarily to apply to Defendants, as evidenced by Case Management Order No. 5 (General Discovery Protocol – Sanofi Defendants), which repeatedly references its applicability. Aug. 23, 2017, Doc. 762 ("CMO No. 5") *compare with* Amended PTO 22, at 2 ("Plaintiffs shall complete and serve upon Defendants a PFS… in the form set forth in [the PFS]") *and* Pretrial Order No. 8 [Amending the Plaintiff Fact Sheet and Defendant Fact Sheet], April 14, 2017, Doc. 326 ("PFS") (does not reference the ESI Protocol or, at that time,

---

[4] Defendants had previously raised this issue (i.e., whether the order applied to all plaintiffs) during the negotiation of the ESI Protocol. The PSC put forth its position that it did not. The PSC understood this issue to have been put to bed when it agreed to send out "guidance" to individual plaintiffs' counsel. If Defendants indeed had a different understanding all along, then they have waited months to bring this to the Court's attention.

7

potential ESI Protocol once).[5] The PSC would never have agreed to a protocol that would require thousands of individual plaintiffs to have individual meet and confers with the various Defendants, and it never would have agreed to obligate every plaintiff's counsel to hire a vendor to collect, search, and produce a relatively small number of documents (with a corresponding load file) in the format the ESI Protocol requires.[6]

Provisions within the ESI Protocol itself illustrate that it is not intended to apply to the plaintiffs at issue. Section IV (E), for example, imposes various obligations on a "Producing Party" to provide custodial and non-custodial information, document retention policies, and the like—categories of documents that are clearly directed at Defendants which an individual does not have. And a "Producing Party" is defined as a "party that may be producing documents in response to the request of requesting party." [sic] ESI Protocol, at 1. The PFS is not discovery from another party.

What's more, the ESI Protocol has its own meet-and-confer protocols distinct from those involving the PFS, which Defendants' motion does not address. *See* ESI Protocol, at 8. Taken to its logical conclusion, then, Defendants' argument would require every individual plaintiff in the MDL to "meet and confer to discuss Field Definitions (including field type, size and use) for

---

[5] The PFS already requires that individual plaintiffs disclose their use of various electronic media commonly used by individuals. Thus, this is not a situation where Defendants have no information about the use of electronic media by plaintiffs. In fact, the PFS requires that each plaintiff log and produce every time she has used some sort of electronic medium to discuss information that may potentially be relevant to her claims. See PTO 18, Exhibit A, at 6.

[6] The commentary to the Federal Rules explicitly contemplates asymmetrical productions and notes that such situations are common and perfectly appropriate. "One Party – often an individual plaintiff – may have very little discoverable information. The other party may have vast amount of information…. In practice, these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." Rule 26 Committee Notes on Rules – 2015 Amendment. Thus, just because Defendants must produce documents in a certain format does not, *per se*, require that individual plaintiffs do the same.

[database] fields within the scope of permissible discovery… an agreement on the appropriate scope and limitations of both preservation and production of ESI… [and] an agreement on search methodologies… [and] search terms…" ESI Protocol, at 5-7.[7] Surely Mr. Oot, Defendants' ESI liaison, does not want to have a meet and confer with each plaintiff's counsel on ESI search methodologies and the appropriate scope of discovery from each plaintiff.

Defendants now argue that the ESI Protocol applies to individual plaintiffs and cherry picks select provisions they want enforced. Why? Defendants want additional, *new* discovery from plaintiffs above and beyond what Judge Engelhardt authorized in the PFS.[8] If Defendants *truly* believed the ESI Protocol to apply to every plaintiff in the MDL, why didn't Defendants comply with the Deficiency Procedure outlined in Paragraph V (G) and meet and confer with every plaintiff to discuss deficiencies? ESI Protocol, at 8. Why didn't Defendants ask every plaintiff for "high-level process descriptions demonstrative of the quality controls employed as part of its preservation, collection and review efforts… evaluation[s] of [his/her] responsiveness review process… description of the [technology-assisted review] protocol used… the search terms used… [and] a high level description of the sampling/testing procedure to validate the search method"? *Id*. And why didn't Defendants "submit the dispute to the Court in the form of a joint discovery letter"? *Id*.

---

[7] Further evidence that the Parties never intended the ESI Protocol to apply to the plaintiffs is the statement that "The Parties have begun, and will continue, to meet-and-confer to discuss and attempt to reach agreement on the appropriate scope and limitations of both preservation and production of ESI." ESI Protocol, at 6. By the time Your Honor entered the ESI Protocol, the scope of what plaintiffs had to produce had already been set by Judge Engelhardt.

[8] This assertion is not supposition. The Defendants have also filed Motion to Issue Written Discovery (Rec. Doc. 904), and they have generally lamented the fact that Judge Engelhardt has not authorized discovery above and beyond what the PFS allows.

Defendants should not be allowed to seek additional discovery (in the form of disclosures) and place additional burden on plaintiffs (in the form of production format) based on an order that clearly does not contemplate applicability to individuals, especially when a process already exists for Defendants to mark pictures they deem unusable as deficient.

**IV.   Defendants' Request to Re-Distribute ESI Guidance is Unnecessary, and Procedures Already Exist to Address their Concerns on Deficiencies.**

Finally, Defendants argue that this Court should compel the PSC to distribute ESI Guidance and instruct plaintiffs' individual counsel to follow it, effectively making it a binding addition to the ESI Protocol, because the PSC has allegedly "suggest[ed] they are not providing it to all individual counsel or working with them to appropriately preserve ESI." Defs.' Br. at 9. The communication with the PSC cited by Defendants in support of this contention, however, indicates nothing of the sort. The PSC only responded to Defendants' assertion that the counsel of individual plaintiffs violated the ESI Guidance by stating that the ESI Guidance "…is not binding on individual counsel… And no plaintiff or her counsel can be in violation of non-binding guidance on a suggested *process*." Wool Letter, at p. 3. Contrary to Defendants' baseless accusations, the PSC has distributed the ESI Guidance to plaintiffs' counsel twice in response to specific requests by Defendants. See fn.2. If plaintiffs have not produced certain documents, it is not due to the lack of ESI Guidance; plaintiffs cannot produce documents that are no longer available or do not exist. Defendants provide no basis for this Court to formalize the ESI Guidance into additional discovery obligations that will give rise to future meritless and time-consuming discovery disputes; therefore, Defendants' motion to compel should be denied.

To be clear, the PSC's position is not one of "hide the ball." The PSC agrees that information Judge Engelhardt requires be produced with the PFS through Centrality should be produced. In setting forth what must be disclosed and produced, Judge Engelhardt also ordered a

10

process to cure what Defendants believe are deficiencies, even allowing an expedited procedure for trial plaintiffs. And even though the PSC does not agree that the ESI order applies to all plaintiffs, it has offered to cooperate and work with Defendants on productions from the trial plaintiffs, should they in some way be deficient or should certain metadata be required that is not produced. Such proposals, which directly address their concerns, are for inexplicable reasons not good enough.

## CONCLUSION

Defendants came to the PSC with a perceived problem. The PSC proposed a tailored, workable solution: to act as intermediary between Defendants and counsel for trial plaintiffs to ensure production of the disclosures and ESI required by the PFS and to assist in producing metadata (as needed) for those ten trial plaintiffs. Defendants have rejected that cooperative approach. Instead, they seek overly-broad and sweeping relief that would upend orderly processes created by Judge Engelhardt and set out unnecessary and overly burdensome requirements for thousands of plaintiffs to meet in an unworkable, 30-day time-frame. They now improperly seek Your Honor's assistance in evading Judge Engelhardt's orders on the PFS and deficiency process.

For all the reasons discussed—both procedural and substantive—Defendants' motion to compel production of ESI should be denied.

Dated: October 17, 2017                                             Respectfully submitted,

| | |
|---|---|
| */s/ Christopher L. Coffin* | */s/ Karen B. Menzies* |
| Christopher L. Coffin (#27902) | Karen Barth Menzies (CA Bar #180234) |
| PENDLEY, BAUDIN & COFFIN, L.L.P. | Andre Mura (on the brief) |
| 1515 Poydras Street, Suite 1400 | GIBBS LAW GROUP LLP |
| New Orleans, LA 70112 | 400 Continental Boulevard, 6th Floor |
| Phone: 504-355-0086 | El Segundo, CA 90245 |
| Fax: 504-523-0699 | Telephone: 510-350-9700 |

ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

| | |
|---|---|
| Christopher L. Coffin<br>Pendley, Baudin & Coffin, L.L.P.<br>1515 Poydras Street, Suite 1400<br>New Orleans, LA 70112<br>Phone: (504) 355-0086<br>Fax: (504) 523-0699<br>ccoffin@pbclawfirm.com | David F. Miceli<br>Simmons Hanly Conroy<br>One Court Street<br>Alton, IL 62002<br>Phone: (618) 259-2222<br>Fax: (618) 259-2251<br>dmiceli@simmonsfirm.com |
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |
| Emily C. Jeffcott<br>The Lambert Firm, PLC<br>701 Magazine Street<br>New Orleans, LA 70130<br>Phone: (504) 581-1750<br>Fax: (504) 529-2931<br>ejeffcott@thelambertfirm.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                          */s/ Dawn M. Barrios*
                                          Dawn M. Barrios