UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**REPLY MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

   This MDL suffers from an inventory-wide problem that needs to be addressed with a generally-applicable Court order: the vast majority of Plaintiffs are not producing all responsive electronic information and photographs. Plaintiffs do not dispute that there is a problem; nor do they offer a realistic solution. Instead, they fault Defendants for not meeting and conferring with hundreds of attorneys in more than a thousand cases (a number that will climb as more cases are filed and more PFSs come due) on the same issue.

   The absurdity of what Plaintiffs demand demonstrates why an order addressing the issue is necessary. Defendants are entitled to all responsive electronic information in Plaintiffs' possession, custody, or control – particularly electronic photographs, which are the only way for Defendants to assess Plaintiffs' alleged injury. But Defendants will, as a practical matter, be blocked from getting that discovery if the status quo is maintained. Non-trial Plaintiffs will continue to do perfunctory Plaintiff Fact Sheet ("PFS") collections while crucial photographs and ESI are ignored, misplaced, or otherwise lost. Thus, the Court should enter Defendants' proposed order as a necessary and reasonable solution to Plaintiffs' cursory ESI collection and production efforts.

1

**ARGUMENT**

The Court should grant Defendants' Motion and enter the proposed ESI order.[1]  The Court ordered Plaintiffs to produce responsive ESI and photographs in the PFS.  But a review of the inventory demonstrates that nearly all Plaintiffs are not producing the Court-ordered documents.  A global solution is necessary because Plaintiffs – and their leadership – dispute the scope of their common ESI obligation, and it would be prohibitively expensive and inefficient to engage in thousands of meet-and-confers over the same problem.  The proposed order is an efficient way to ensure that *all* Plaintiffs preserve, collect, and produce Court-ordered responsive ESI and photographs.

**I.    The Court ordered Plaintiffs to produce responsive ESI and photographs in the PFS**

In the PFS, the Court ordered Plaintiffs to produce documents – including ESI – related to their cancer, chemotherapy, and hair loss.  *See* Amended PTO No. 22 (Doc. 325); PTO No. 38 (Doc. 326) ("PFS"), at § IX ("Produce all documents in your possession" including documents in "electronic form").  The Court also required Plaintiffs to disclose all use of electronic mediums to communicate about cancer, chemotherapy, or hair loss and provide a short description of other individuals that might have documents in their possession.  *Id.*, at § II.18; § IX.  Defendants' proposed order seeks only to clarify the extent to which Plaintiffs must comply with these PFS provisions.  Such clarification is necessary because Plaintiffs refuse to accept that the ESI Protocol already provides that clarification.

The ESI Protocol requires that ESI – which the Court already required Plaintiffs to produce in the PFS – be produced with "available metadata fields."  *See* PTO No. 49 (Doc. 611) ("ESI Protocol"), at § VII.A.8.  It also requires the parties to make specific disclosures about ESI sources and destruction.  *Id.*, at § IV.E.  Despite its neutral language, Plaintiffs quibble

---

[1] *See* Exhibit A to Defs.' Motion to Compel (Doc. No. 918).

extensively about whether the ESI Protocol applies to them, arguing that because some provisions can only apply to companies and not individuals, the entire ESI Protocol was not intended for Plaintiffs.  *See* Pls.' Br., at 7–9.  In other words, their argument is that only Defendants should be required make disclosures about where responsive ESI is stored, whether it was destroyed, and who else might have it.  And only Defendants need to go to extensive efforts to preserve, collect, and produce responsive ESI with associated metadata.  But these positions thumb their nose at the guidance already provided by this Court.  *See* March 16, 2017 Hr'g Tr., at 64:16–18 ("And I agree with that.  ***It does need to be a two-way street***.  And there needs to be transparency as to what's going on, ***on both sides***.") (emphasis added).

The technical applicability of the ESI Protocol, however, is beside the point.[2]  Plaintiffs' obligations to produce ESI arise under the PFS.  The scope of that obligation is apparently unclear to Plaintiffs as almost none of them have produced digital photographs or responsive electronic documents.  *See* Defs.' Motion, at 3–5.  Plaintiffs' refusal to accept the applicable, clarifying provisions of the ESI Protocol just demonstrates the need for a generally-applicable order that specifies Plaintiffs' ESI obligations – obligations which are time sensitive and important.

In the year 2017, much of the discoverable information in an individual's possession is electronic.  People now use cell phones instead of film to take pictures, send emails instead of letters, store documents in the cloud instead of boxes, connect with others in chatrooms instead of coffee shops, and talk to family and friends on social media instead of the phone.  That electronic information includes important, discoverable metadata that provides dates and other

---

[2] Plaintiffs claim that they thought the issue of the ESI Protocol's applicability to Plaintiffs was "put to bed" when the parties agreed that the PSC would send out the ESI Guidance to individual plaintiffs' counsel.  *See* Pls.' Br., at 7, n. 4.  Defendants, however, have always clearly stated their position that the ESI Protocol applies to Plaintiffs.  *See* May 25, 2017 email from Patrick Oot to PSC, attached as **Exhibit B** (agreeing to the PSC's ESI Guidance revisions but stating that the ESI Protocol applies to Plaintiffs).

key information about the communication or photograph. Plaintiffs were ordered to produce that information because it is important, but they are not. A Court order addressing that failure is therefore necessary.

## II. Plaintiffs' productions to date demonstrate that the failure to collect and produce ESI is an inventory-wide problem

Plaintiffs argue that the lack of ESI and photograph productions is not as wide-spread as Defendants suggest because Defendants have unfairly "cherry picked an unrepresentative, small sample of productions." *See* Pls.' Br., at 6. But a look at the trial Plaintiffs – who are supposed to be "representative" of Plaintiffs in this MDL – makes it clear that Plaintiffs' failures are indeed wide spread.

The Court ordered ***all*** Plaintiffs to produce digital photographs representative of their hair composition before chemotherapy treatment. *See* PFS, at § IX. Numerous clear, dated, digital photographs before treatment (at different times, at different angles, and in different lighting) are essential for Defendants and their experts to assess Plaintiffs' alleged hair loss. Yet before being selected for trial, ***none*** of the trial Plaintiffs produced clear, dated, digital photographs. Instead, their productions included – at most – a few poor-quality, non-digital photographs most of which were not dated.

Before being selected for trial, the bellwether Plaintiffs produced the following "before treatment" photographs:

- Pearl Ray: **1** copy of her driver's license from 1979 and **1** non-digital, undated photograph
- Tanya Francis: **0**
- Deborah Johnson: **4** non-digital photographs (**2** were not dated)
- Antoinette Durden: **1** non-digital, undated photograph

- Debra Chetta: **4** undated photographs
- Elizabeth Kahn: **1** non-digital, undated photograph
- Barbara Earnest: **4** non-digital photographs (**2** were not dated)
- Lisa Tuyes: **1** non-digital, undated photograph
- Cynthia Thibodeaux: **2** non-digital, undated photographs
- Della Martin: **0**[3]

The uselessness of the poor-quality photographs is compounded by the fact that many of them are from years or even decades before Plaintiffs began chemotherapy treatment. Pearl Ray produced an almost indecipherable copy of her driver's license from 1979, and Cynthia Thibodeaux and Antoinette Durden produced pictures from the '90s[4] – well over a decade before their chemotherapy treatment. Of the ten trial Plaintiffs, only two produced a dated photograph of themselves before their treatment, and none produced a digital photograph with the associated metadata. These representative productions show that non-trial Plaintiffs either (1) do not understand their discovery obligations, or (2) do not see the urgency and necessity in complying.

The same analysis applies to ESI generally. An implausibly high number of responding Plaintiffs (85%) claim to have never used an electronic device to communicate about their chemotherapy, cancer, or hair loss. *See* Defs.' Memo in Support, at 3–4. The explanation for that unbelievably high number is not that Plaintiffs live in the stone-age with no digital devices

---

[3] *See* Compilation of "before treatment" photographs produced by Plaintiffs before June 30, 2016 (before being selected for trial), attached as **Exhibit A**.

[4] These dates are only known because Plaintiffs dated the photographs after being selected for trial.

but that Plaintiffs either (1) do not understand what ESI is responsive and where it might be stored, or (2) do not see the urgency in complying.[5] The proposed order addresses both.

To be sure, some of these trial Plaintiffs produced additional photographs and ESI after being selected for trial. But that just illustrates the necessity of a generally-applicable order: non-trial Plaintiffs are not complying.

The Court ordered *all* Plaintiffs to produce ESI and photographs representative of their hair composition for good reason. Defendants need these photographs for general case assessment and bellwether nominations. And responsive ESI is particularly vulnerable to being deleted or otherwise destroyed – a fact Plaintiffs acknowledge. *See* Pls.' Br., at 10 ("plaintiffs cannot produce documents that are no longer available or do not exist."). Thus, an order addressing this inventory-wide problem is necessary now.

### III. Plaintiffs across-the-board failure to produce all responsive ESI and photographs requires a global solution

Plaintiffs' widespread failure to produce responsive ESI and photographs requires a generally-applicable order because it cannot be resolved through the PFS "deficiency process." *See* Pls.' Br., at 5 (arguing that the PFS "deficiency process" is sufficient to resolve the problem). The PFS deficiency process outlined by Plaintiffs in their Opposition first assumes the parties agree on the scope of Plaintiffs' obligations and thus results in for-cause orders being issued on deficient cases without any argument. Such a process only works for deficiencies where Plaintiffs agree that they are obligated to produce the information (*e.g.*, responses to all questions, full names and addresses of prescribers, and dates). It does not, however, work in resolving a general, global dispute about what Plaintiffs' obligations are.

---

[5] The bellwether Plaintiffs provide another illustrative example in Elizabeth Kahn. *See* Defs.' Br., at 3–4. Before being selected for trial, she did not disclose that she dedicated an entire blog to her chemotherapy treatment that detailed her hair loss and regrowth. *Id*. Plaintiffs do not address or explain Mrs. Kahn's post-trial-selection PFS reversal.

Nor does it make sense to attempt resolution of such an issue on a case-by-case basis. Thousands of individual meet and confers that address the same issue would be enormously time consuming and expensive for Defendants. And the result would be meaningless because the parties have a general disagreement about the scope of Plaintiffs' obligation to preserve, collect, and produce ESI.[6] As a matter of efficiency, it makes no sense for the Court to address a common dispute through hundreds of individual motions after countless hours of meet and confers. And it is unrealistic to expect Defendants to meet and confer with hundreds of individual Plaintiffs on the same issue. The Steering Committee knows that. *See* Pls.' Br., at 2 ("it is unrealistic to expect the PSC to interface with plaintiffs' counsel on every purported deficiency"). And they know that if the Court fails to address the issue now, the practical effect will be that Defendants will not get compliant ESI and photograph productions from non-trial Plaintiffs.

Plaintiffs spend much of their Opposition arguing about the form of Defendants' Motion,[7] the sufficiency of Defendants' repeated attempts to meet and confer, and the technical applicability of the ESI Protocol to Plaintiffs. All of this avoids the central issue: Plaintiffs are not producing all responsive ESI and photographs as required by Court Orders. And the Court has authority to solve that problem, despite any procedural diversions raised by Plaintiffs. *See* Fed. R. Civ. P. 37(a) & (b). Endless meet and confers and motion practice is not the solution to

---

[6] Plaintiffs' contention that Defendants failed to properly meet and confer with the PSC on this issue is baseless. Defendants attached *seven* letters to their Motion showing that they have raised this issue numerous times over several months. *See* **Ex. J** to Defs.' Motion to Compel. The September 22, 2017 letter makes clear that Defendants have attempted to resolve this issue for months with little cooperation from Plaintiffs. *See id.* ("We have requested meet-and-confers on this issue twice before with no response…this is our third and final attempt.").

[7] Plaintiffs mischaracterize Defendants' nine-page Motion as "144 pages long" and non-compliant with CMO No. 5. Unlike the routine discovery issues on which the parties seek "informal guidance" at the monthly discovery conference, this serious and pervasive issue required a formal motion for entry of an order to resolve it.

this inventory-wide problem. The Court should, instead, address Plaintiffs' failures to produce ESI with a generally-applicable order.

## CONCLUSION

Defendants' proposed order addresses the two issues with Plaintiffs' ESI productions. It first ensures that individual Plaintiffs and their counsel understand the type of ESI that is responsive and where it might be stored by (1) requiring the Plaintiff Steering Committee to distribute the ESI Guidance; and (2) ordering Plaintiffs to conduct a Rule 26(g) reasonable inquiry into specific ESI sources. The proposed order also ensures that non-trial Plaintiffs comply with their ESI obligations *regardless* of whether they have been selected for trial. Because Defendants' proposed order is an efficient way to resolve the inventory-wide problem of Plaintiffs failing to produce responsive ESI and photographs, the Court should grant Defendants' Motion and enter the proposed order.

Dated: October 20, 2017

Respectfully Submitted:

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
E-Mail: dmoore@irwinllc.com

8

>Harley V. Ratliff
>Adrienne Byard
>SHOOK, HARDY & BACON L.L.P.
>2555 Grand Blvd.
>Kansas City, MO 64108-2613
>Telephone:  816-474-6550
>Facsimile:  816-421-5547
>E-Mail:  hratliff@shb.com
>
>*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>/s/ *Douglas J. Moore*
>Douglas J. Moore