**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                     SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO ISSUE
WRITTEN DISCOVERY**

---

Case-specific, written discovery is necessary to explore information about the bellwether plaintiffs' claims that either requires clarification or is not covered in the PFS. Plaintiffs do not dispute that. Instead, they argue that the normal discovery procedures should be flipped on their head and the Court should be required to approve each and every potential discovery request in the ten bellwether cases. Such a process is not only inefficient, it is also practically impossible to accomplish under the Phase I discovery schedule.

The Court recognized in its PFS Order that the discovery sought through the PFS would be "without prejudice to Defendants' right to serve additional discovery." Amended PTO No. 22, at ¶ 9. Indeed, case-specific discovery is, by its very nature, difficult to predict. *See* Manual for Complex Litigation, at § 11.422 ("the need for discovery may become known only through later developments."). Thus, limiting ***all*** Plaintiff discovery to ***only*** the PFS would unnecessarily bind Defendants in perpetuity to a series of questions authorized by this Court before a single fact was known about any individual Plaintiff. To be sure, Plaintiffs should provide a lot of information about their claims in the PFS, but the universe of discoverable facts and necessary follow-up are impossible to accurately forecast in a given case – particularly in the abstract.

1

That unpredictability, combined with the tight schedule of Phase I and the inefficiency of seeking a Court order *every time* written discovery is necessary, is why the Court should authorize written discovery now.

## ARGUMENT

I.   **The Court should allow Defendants to serve targeted, case-specific discovery not covered in the PFS**

Plaintiffs argue that it is "highly improbable" that written discovery will be necessary in the bellwether cases. *See* Pls.' Br., at 3. While Defendants appreciate Plaintiffs' decidedly-one-sided discovery analysis, common sense suggests otherwise. For example, Plaintiffs in the PFS are supposed to check a series of "yes" or "no" boxes that seek information about their medical history. But "yes" or "no" boxes could not possibly provide all the potentially-relevant details about a plaintiff's medical history. At her deposition, it is entirely possible that a plaintiff will provide further, currently-unknown details about her history or disclose certain conditions or medications for the first time – something that routinely happens in these types of depositions. Each of those things could require follow up with targeted, written discovery. Furthermore, seemingly-irrelevant details about a plaintiff's medical history may become relevant only after the depositions of the plaintiff's doctors, who will likely provide more context about the nature and course of the plaintiff's treatment. Either way, Defendants should be allowed to follow up through written discovery with "a very pointed, specific question that the fact sheet does not address." *See* July 7, 2017 Steering Comm. Status Conf. Tr., at 23:17–21. Such an outcome hardly seems controversial.

Likewise, some plaintiff-specific information – family history of hair loss for example – is not covered in the PFS. As a result, details about a plaintiff's family history could require Defendants to request relevant documents, including photographs of particular family members

2

at particular times.  Certain details about Plaintiffs' hair treatment and styling are also not covered in the PFS and could require follow-up discovery.  Indeed, the list of examples is as unique as the plaintiffs themselves.

And this all assumes that Plaintiffs have "correctly and completely" filled out the PFS and produced the appropriate documents.  *See* July 7, 2017 Steering Comm. Status Conf. Tr., at 23:15–21 (noting that the PFS provides a lot of information "assuming it's filled out correctly and completely.").  But, as shown in further detail in Defendants' Motion to Compel Electronically Stored Information (Doc. No. 918), the vast majority of Plaintiffs are barely complying with their PFS obligations.  Many fail to produce clear photographs at the relevant times, others provide no information related to their use of electronic devices, and still others provide incomplete or, frankly, misleading answers to the PFS questions.  Thus, the need for clarifying, non-duplicative written discovery is almost certain.

Still, Plaintiffs continue to suggest that the PFS is the beginning and end of all discovery from Plaintiffs, repeatedly arguing that Defendants are ***only*** entitled to what is in the PFS – and nothing more.  This, of course, ignores the normal discovery procedures of the Federal Rules. *See, e.g.*, Fed. R. Civ. P. 34(a) ("a party may serve on any other party a request within the scope of Rule 26(b)").  And it ignores that Defendants – like Plaintiffs – also have fact sheet obligations.  Yet Plaintiffs do not suggest that discovery on Defendants should be limited to those fact sheets.  Indeed, Plaintiffs have, to date, served more than 160 request for production, may depose as many as 30 company witness, and have received highly-detailed and onerous disclosures about Defendants' electronically stored information (while producing none themselves). Plaintiffs' position thus would result in a disproportionate discovery framework, where Defendants get only a fact sheet and Plaintiffs get – or at least request – everything under

the sun.  The plain language of the PFS Order makes clear that the PFS does not constitute the complete universe of Plaintiff discovery.  Amended PTO No. 22, at ¶ 9 (Defendants' use of the PFS and Authorizations is "without prejudice to Defendants' right to serve additional discovery.").  Given the unpredictability and necessity of case-specific discovery, the Court should authorize Defendants to exercise their right to serve additional discovery on the bellwether Plaintiffs.

## II.     The tight time frame for Phase I discovery requires an efficient, flexible order authorizing written discovery of the bellwether Plaintiffs

Plaintiffs argue that Defendants' request for written discovery is "premature" because Defendants do not provide a specific list of document requests, interrogatories, or requests for admission for each of the ten cases.  *See* Pls.' Br., at 2–3.  The inefficiency of Plaintiffs' demand only demonstrates the necessity of a general order authorizing written discovery on bellwether Plaintiffs.

Under Plaintiffs' approach, Defendants would have to bring each specific request for production, interrogatory, and request for admission to Plaintiffs.  Plaintiffs, as the ultimate arbiters of discovery, would then be allowed time to review and consider each request before providing Defendants their "yay" or "nay" (Defendants certainly have not been offered the same courtesy by Plaintiffs).  Even then, the proposed discovery would have to go to the Court for approval in each of the ten cases. Such an approach is a waste of the parties' and the Court's resources.

Plaintiffs' position is also entirely unworkable under the tight time frame of Phase I discovery.  *See* Defs.' Supp. Memo (Doc. No. 934), at 4–5.  And it reverses the process contemplated by the Federal Rules of Civil Procedure, requiring the Court to spend unnecessary time and resources approving every written discovery request.  The Federal Rules allow the

4

parties autonomy in written discovery for a reason: parties are expected to conduct discovery in a reasonable manner without wasting scarce judicial resources.

Plaintiffs' inefficient approach also fails to consider the realities of the holistic discovery process where the facts of a particular case develop throughout discovery. Suppose, for instance, that a plaintiff's prescribing oncologist is deposed before the plaintiff and provides previously unknown-details regarding plaintiff's treatment, medical condition, or hair loss – details that were not called for in the PFS. Plaintiffs' approach to written discovery would prohibit Defendants from requesting such additional materials identified by the oncologist through a subpoena duces tecum to Plaintiff. Defendants would, instead, be required to confer with Plaintiffs and get the Court's approval for these otherwise ordinary discovery requests. Plaintiffs provide no substantive reason for implementing such an inefficient and unnecessary process.

## CONCLUSION

As bellwethers, these ten cases are of upmost importance to the litigation as a whole. *See* Manual for Complex Litigation, at § 22.315 ("If individual [bellwether trials] are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases."). Certainly knowing more about these individuals than less is to the benefit of all parties. But Plaintiffs, as they have done at every step in this MDL, want to provide less information about their clients – not more.

Complete, reliable Phase I discovery is necessary in the bellwether cases, so the parties can make Phase II nominations in February 2018. The current framework, however, effectively prohibits complete discovery. As such, the Court should enter Defendants' proposed order authorizing written discovery in the bellwether cases.

Dated: October 24, 2017

Respectfully Submitted:

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-310-2100
Facsimile:  504-310-2120
E-Mail:  dmoore@irwinllc.com

Harley V. Ratliff
Adrienne Byard
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone:  816-474-6550
Facsimile:  816-421-5547
E-Mail:  hratliff@shb.com

*Counsel for sanofi-aventis U.S. LLC and sanofi U.S. Services Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore