UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL No. 2740 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: "N" (5) |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| ALL ACTIONS | ) | |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CASE SUBSTITUTION PROTOCOL

Defendants sanofi-aventis U.S. LLC, Sanofi US Services Inc., Sandoz Inc., Hospira, Inc., Hospira Worldwide, LLC, Pfizer Inc., Actavis Pharma, Inc., Accord Healthcare, Inc., Sun Pharmaceuticals Industries, Inc., and McKesson Corporation ("Defendants") submit the instant Reply Memorandum in Support of their Motion for Entry of Case Substitution Protocol in order to briefly respond to the arguments raised in Plaintiffs' Opposition Memorandum. (Rec. Doc. No 975). For the following reasons, this Court should grant Defendants' Motion and enter the Defendants' Proposed Case Management Order ("CMO") governing substitution of cases subject to the Court's trial scheduling orders ("trial pool cases"). (Rec. Doc. No. 888-2). Plaintiffs assert three primary arguments in opposition to Defendants' proposal, each of which are addressed individually.

### I. A Bellwether Trial Pool Substitution Protocol is Necessary.

Plaintiffs' Opposition characterizes Defendants' proposed CMO as "unnecessary" on the grounds that the possibility of attrition has already been taken into account by this Court. *See* Plaintiffs' Opposition to Motion for a Case Substitution Protocol, p.1 (Rec. Doc. No. 975). The Opposition further argues that the proposed CMO would "effectively give them [Defendants]— and *only* them—carte blanche to strike trial plaintiffs." *Id.* (emphasis in the original). The irony of this statement, of course, is that counsel for Plaintiffs has the unilateral authority to dismiss

1

any case, including those in the bellwether trial pool, at any time. And although Defendants generally do not oppose the dismissal of an MDL plaintiff's claims against them, the unfettered ability of counsel for Plaintiffs to dismiss any of the cases in the bellwether trial pool—at any given time—calls for the adoption of a procedure to address such issues if, and only if, those issues arise.

Defendants' proposed CMO is thus intended to serve as a procedural safeguard that would serve the dual purposes of: (1) deterring the potential for gamesmanship by strategic dismissal of trial pool plaintiffs; and (2) implementing an objective and efficient procedure for addressing significant changes to the representative nature of the bellwether trial pool, *in the event that* the dismissal of trial pool plaintiffs results in such a change. This proposal seeks to strike a balance between Plaintiffs' ability to dismiss their own cases unilaterally and the mutual interest of the parties and the Court in maintaining a representative bellwether trial pool.

**II.     Defendants Have Ample Justification for the Proposed Protocol.**

Notwithstanding Plaintiffs' arguments in opposition to the entry of Defendants' proposed protocol, Plaintiffs' Opposition offers sparse examples of how, specifically, they would be prejudiced by the entry of the proposed CMO. In fact, the *only* provisions of Defendants' proposed protocol with which Plaintiffs' Opposition takes issue are those that apply to dismissals during Phase I discovery. In other words, the provisions of the protocol that Plaintiffs characterize as "unfair and punitive" only apply to those cases dismissed during Phase I discovery. It is during this phase of discovery, however, that there is the most apparent need for the implementation of a protocol due to Plaintiffs' superior ability—at this specific point in the litigation—to evaluate and determine the relative strength of each of their own cases. Accordingly, and so as to ensure that a representative trial pool may be considered for Phase II

discovery, the procedure proposed by Defendants is not only justified, but necessary. Further, because Defendants' proposed CMO is intended to serve as a procedural safeguard, and considering Plaintiffs' insistence that trial pool cases will not be dismissed for tactical reasons, it is unlikely that the provisions of the proposed protocol will ever go into effect; however, the CMO is nonetheless needed so that a procedure is established in the event that this issue does, in fact, arise.

Plaintiffs also take the position that the approach proposed by Defendants is inconsistent with approaches taken by other MDL courts. *See* Plaintiffs' Opposition to Motion for a Case Substitution Protocol, p.3 (Rec. Doc. No. 975). And while Plaintiffs are correct that no Court has adopted the *precise procedure* that Defendants propose here, it is not disputed that the cases cited in Defendants' Memorandum in Support of the instant Motion demonstrated that the respective MDL courts were each ultimately required to either (1) address the procedure for replacing discovery pool cases in the event of dismissals early in the litigation;[1] or (2) remedy the problems caused by them later in the proceedings.[2]

Notwithstanding Plaintiffs' attempts to distinguish the specific actions taken by other MDL courts in addressing tactical dismissals of plaintiffs' claims, there is still additional support for Defendants' position on this issue. For example, in the *In re Mirena* MDL, the Southern District of New York entered CMO 24, which addressed the manner in which cases that were selected to the disposition pool, worked up, and then voluntarily dismissed by plaintiffs were to be treated and replaced. *See In re Mirena IUD Prod. Liab. Litig.*, No. 2:13-md-02434, CMO No. 24, at ¶¶ 4-12 (S.D.N.Y. April 20, 2015), attached as Exhibit "A." In fact, Section II of CMO 24

---

[1] S*ee In re Invokana*, MDL No. 2750, CMO No. 20, at ¶ II.H (D.N.J. July 27, 2017) (Rec. Doc. No. 888-3).
[2] *See See In re Norplant Contraceptive Prod. Litig.* , No. MDL 1038, 1996 WL 571536, at *1 (E.D. Tex. Aug. 13, 1996); *In re Cook Medical, Inc. Pelvic Repair System Products Liability Litigation*, MDL 2440, PTO No. 59, at p.2 (S.D. W. Va. May 19, 2015) (Rec. Doc. No. 888-4)

3

provides specific guidelines for voluntary dismissal of cases, including a procedure for the replacement of cases dismissed by plaintiffs depending on the timing of the dismissal and the party who initially nominated the case for the disposition pool. *Id.* at pp. 2-3.

Further, the Southern District of Illinois recently entered an Order denying five Motions to Dismiss Without Prejudice in the Depakote mass action, which involves over 580 cases. *See Rhealyn Alexander, et al. v. Abbott Laboratories, Inc. et al.*, No. 3:12-cv-0052, (S.D. Ill. October 10, 2017), attached as Exhibit "B." In denying the plaintiffs' Motions, the Court analyzed a number of factors in order to determine whether the defendant would suffer legal prejudice if the cases were dismissed. *Id.* The Court highlighted the fact that the cases the plaintiffs sought to dismiss were "selected based on a meticulous selection process to best advance the mass litigation as a whole, and each was advancing through full discovery." *Id.* at p.4. Because discovery was well underway, the Court reasoned, the defendants had "expended an enormous amount of time and expense advancing this far in the mass litigation." *Id.* at p.5. The Court further reasoned that granting the dismissals would "frustrate the Court's ability to manage its docket as well as its strategy for advancing the mass action." *Id.* at p. 6.

For the same reasons articulated by the *Alexander* Court with regard to the Depakote mass action, it is necessary to "facilitate the *efficient disposition* of a number of universal and fundamental substantive questions applicable to all or most Plaintiffs' cases . . . ." *Id.* at p. 8 (internal citations omitted). The efficient and timely administration of justice is the primary goal of the MDL, and this goal will be frustrated if there is no procedure in place to ensure that a representative bellwether pool is maintained throughout the discovery process.

4

### III. Defendants' Proposed Bellwether Trial Pool Substitution Protocol is Timely.

Plaintiffs' Opposition also argues that the entry of a proposed Case Substitution Protocol at this time would be premature, as there is currently no need for the "adjudication of a present right" and, further, so as not to encourage Defendants to continue to engage in "unnecessary motion practice." *See* Plaintiffs' Opposition to Motion for a Case Substitution Protocol, p.4 (Rec. Doc. No. 975). Despite this assertion by Plaintiffs, Defendants are not seeking the "adjudication" of any "right"; rather, Defendants propose a procedural protocol to address the potential bias that may be created by voluntary dismissal of bellwether trial pool plaintiffs.

Plaintiffs' Opposition then offers a counterproposal whereby Defendants would be permitted to seek relief in the event that they learn of "a good-faith basis to believe that a dismissal is tactical." *See* Plaintiffs' Opposition to Motion for a Case Substitution Protocol, p.4 (Rec. Doc. No. 975). This counterproposal is unworkable and inappropriate for a number of reasons.

First, and most importantly, the procedure proposed by Plaintiffs would be inefficient, time consuming, and burdensome for both parties. It would take counsel for Plaintiffs and Defendants several weeks—if not months—to brief and argue the "appropriate motion" in the event that Defendants believe that a dismissal is tactical, as suggested by Plaintiffs' Opposition. In light of the deadlines in place pursuant to the Case Management Orders entered into this Court's docket, it would be impossible to comply with this Court's discovery deadlines while ensuring that a representative trial pool is maintained.

Furthermore, Plaintiffs' counterproposal would defeat the entire purpose of the protocol contained in Defendants' proposed CMO, which is to provide an objective, efficient, and expedient protocol for a scenario that is common in mass litigation, such as this MDL. This

5

protocol will allow counsel for both sides to continue with discovery and trial preparation without the risk of squandering their respective resources, and without having to expend additional resources on briefing this issue on a case-by-case basis. Such an outcome would be burdensome—not just to Defendants, but also to Plaintiffs and the Court.

Finally, Plaintiffs' proposal would effectively require Defendants to "prove" that the dismissal of a trial pool Plaintiff was, in fact, tactical in order to obtain relief on the "appropriate motion" that Plaintiffs would suggest Defendants bring. Such an outcome would be incredibly prejudicial to Defendants, who should not be required to bear this fictitious burden of proving a strategic dismissal. Conversely, the protocol set forth in Defendants' CMO proposes an objective and concrete procedure for maintaining the representative nature of the bellwether trial pool if, and only if, this issue arises.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter Defendants' Proposed CMO governing substitution of bellwether cases subject to the Court's trial scheduling orders.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

/s/ *Lori G. Cohen*
Lori G. Cohen
R. Clifton Merrell
Evan Holden
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2100
cohenl@gtlaw.com
merrellc@gtlaw.com
holdene@gtlaw.com

/s/ *Deborah B. Rouen*
Deborah B. Rouen
E. Paige Sensenbrenner
**ADAMS AND REESE LLP**
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
debbie.rouen@arlaw.com
paige.sensenbrenner@arlaw.com

*Counsel for Defendant Sandoz, Inc.*

/s/ *Mark S. Cheffo*
Mark S. Cheffo
Mara Cusker Gonzalez
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Ave., 22nd Floor
New York, NY 10010
Phone: (212) 849-7000
Fax: (212) 849-7100
markcheffo@quinnemanuel.com
maracuskergonzalez@quinnemanuel.com

/s/ *John F. Olinde*
John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com
rotolo@chafe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc., and Pfizer Inc.*

/s/ *Michael J. Suffern*
Michael J. Suffern
Jeffrey F. Peck
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5064
Facsimile: (513) 698-5065
msuffern@ulmer.com

*Counsel for Defendant Actavis Pharma, Inc.*

/s/ *John P. Wolff, III*
John P. Wolff, III, TA #14504
Nancy B. Gilbert, Bar #23095
Chad A. Sullivan, Bar #27657
Richard W. Wolff, Bar #34844
**KEOGH, COX & WILSON, LTD.**
701 Main Street
Post Office Box 1151
Baton Rouge, LA 70821
Phone: (225) 383-3796
Fax: (225) 343-9621
jwolff@keoghcox.com
ngilbert@keoghcox.com
csullivan@keoghcox.com
rwolff@keoghcox.com

AND
Via *Pro Hac Vice* Admission

/s/ *Julie A. Callsen*
Julie A. Callsen, TA, OH Bar #0062287
Brandon D. Cox, OH Bar #0089815
**TUCKER ELLIS LLP**
950 Main Ave., Suite 1100
Cleveland, OH 44113-7213
Phone: (216) 696-2286
Fax: (216) 592-5009
Julie.Callsen@TuckerEllis.com
Brandon.Cox@TuckerEllis.com

*Counsel for Defendant Accord Healthcare Inc.*

/s/ *Stanton E. Shuler, Jr.*
Stanton E. Shuler, Jr. (Bar No. 19152)
**LEAKE & ANDERSSON LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
Phone: 504-585-7500
Facsimile: 504-585-7775
sshuler@leakeandersson.com

/s/ *Geoffrey M. Coan*
Geoffrey M. Coan
Kathleen E. Kelly
**HINSHAW & CULBERTSON LLP**
28 State Street
Boston, MA 02109
Phone: 617-213-7000
Fax: 617-213-7001
gcoan@hinshawlaw.com
kekelly@hinshawlaw.com

*Counsel for Defendant Sun Pharmaceuticals Industries, Inc. f/k/a Caraco Laboratories, Ltd.*

/s/ *Erin M. Bosman*
Erin M. Bosman (Bar No. 204987)
Julie Y. Park (Bar No. 259929)
**MORRISON & FOERSTER LLP**
12531 High Bluff Dr.
San Diego, CA 92130-2040
Phone: 858-720-5100
Fax: 858-720-5125
ebosman@mofo.com
juliepark@mofo..com

*Counsel for Defendant McKesson Corporation d/b/a McKesson Packaging Service*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*