# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3     ****************************************************************

 4     IN RE:  TAXOTERE
       (DOCETAXEL) PRODUCTS
 5     LIABILITY LITIGATION

 6                                  CIVIL ACTION NO. 16-MD-2740 "N"
                                    NEW ORLEANS, LOUISIANA
 7                                  WEDNESDAY, AUGUST 30, 3017, 9:30 A.M.

 8     THIS DOCUMENT RELATES TO:

 9     ALL CASES

10     ****************************************************************

11
                     TRANSCRIPT OF MOTION HEARING PROCEEDINGS
12             HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                       UNITED STATES DISTRICT JUDGE
13

14     APPEARANCES:

15

16     FOR THE PLAINTIFFS:        BARRIOS KINGSDORF & CASTEIX
                                  BY:  DAWN M. BARRIOS, ESQ.
17                                      BRUCE S. KINGSDORF, ESQ.
                                  701 POYDRAS STREET, SUITE 3650
18                                NEW ORLEANS, LOUISIANA 70139

19

20                                GAINSBURGH BENJAMIN DAVID
                                  MEUNIER & WARSHAUER
21                                BY:  M. PALMER LAMBERT, ESQ.
                                  1100 POYDRAS STREET, SUITE 2800
22                                NEW ORLEANS, LOUISIANA 70163

23

24                                PENDLEY BAUDIN & COFFIN
                                  BY:  CHRISTOPHER L. COFFIN, ESQ.
25                                1515 POYDRAS STREET, SUITE 1400
                                  NEW ORLEANS, LOUISIANA 70112
```

*OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3                                GIBBS LAW GROUP
                                 BY:  KAREN B. MENZIES, ESQ.
 4                               400 CONTINENTAL BOULEVARD
                                 6TH FLOOR
 5                               EL SUGUNDO, CALIFORNIA 90245

 6

 7    FOR SANOFI S.A.:           IRWIN FRITCHIE URQUHART & MOORE
                                 BY:  DOUGLAS J. MOORE, ESQ.
 8                               400 POYDRAS STREET, SUITE 2700
                                 NEW ORLEANS, LOUISIANA 70130
 9

10

      FOR ACTAVIS PHARMA,
11    INC.:                      ULMER & BERNE
                                 BY:  MICHAEL J. SUFFERN, ESQ.
12                               600 VINE STREET
                                 SUITE 2800
13                               CINCINNATI, OHIO 45202

14

15    FOR SANDOZ, A NOVARTIS
      DIVISION:                  GREENBURG TRAURIG
16                               BY:  R. CLIFTON MERRELL, ESQ.
                                 TERMINUS 200
17                               3333 PIEDMONT ROAD, NE
                                 ATLANTA, GEORGIA 30305
18

19

      FOR HOSPIRA, INC.,
20    HOSPIRA WORLDWIDE, LLC,
      FORMERLY DOING BUSINESS
21    AS HOSPIRA WORLDWIDE,
      INC., AND PFIZER INC.:     CHAFFE MCCALL
22                               BY:  JOHN F. OLINDE, ESQ.
                                 2300 ENERGY CENTRE
23                               1100 POYDRAS STREET
                                 NEW ORLEANS, LOUISIANA 70163
24

25

                         *OFFICIAL TRANSCRIPT*
```

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR PFIZER, INC., AND
      HOSPIRA WORLDWIDE,
 4    LLC:                         QUINN EMANUEL URQUHART & SULLIVAN
                                    BY:  MARA C. GONZALEZ, ESQ.
 5                                  51 MADISON AVENUE, 22ND FLOOR
                                    NEW YORK, NEW YORK 1001
 6

 7

 8    FOR ACCORD HEALTHCARE,
      INC.:                        KEOGH COX & WILSON
                                    BY:  CHAD A. SULLIVAN, ESQ.
 9                                  701 MAIN STREET
                                    BATON ROUGE, LOUISIANA 70802
10

11

12    OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                    CERTIFIED REALTIME REPORTER
13                                  REGISTERED MERIT REPORTER
                                    500 POYDRAS STREET, ROOM B-275
14                                  NEW ORLEANS, LOUISIANA  70130
                                    (504) 589-7779
15                                  Cathy_Pepper@laed.uscourts.gov

16

17    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

18

19

20

21

22

23

24

25

                      OFFICIAL TRANSCRIPT
```

1                           **I N D E X**

2

3                                                            <u>PAGE</u>

4

5     RECORD DOCUMENT NUMBER 489...........................   6

6     DEFENDANTS' MOTION TO DISMISS THE MASTER LONG FORM

7     COMPLAINT...........................................   6

8     PLAINTIFFS' OMNIBUS MOTION TO REMAND CERTAIN CASES

9     TO THE SUPERIOR COURTS OF CALIFORNIA................  26

10    RECORD DOCUMENT 469.................................  26

11    DELAWARE PLAINTIFFS' MOTION TO REMAND TO THE

12    SUPERIOR COURT OF DELAWARE..........................  30

13    RECORD DOCUMENT 673.................................  30

14

15

16

17

18

19

20

21

22

23

24

25

                        *OFFICIAL TRANSCRIPT*

1                        **P-R-O-C-E-E-D-I-N-G-S**

2                    M O R N I N G   S E S S I O N

3                    WEDNESDAY, AUGUST 30, 2017

4                    (COURT CALLED TO ORDER)

5

6

09:34:56  7          THE DEPUTY CLERK:  All rise.

09:34:57  8          THE COURT:  You may be seated.

09:34:58  9              Before we begin with our docket in the *In re:*

09:35:03 10  *Taxotere (Docetaxel) Products Liability Litigation*, MDL 2740, I

09:35:08 11  want to welcome some guests here to our Court.

09:35:12 12              Yesterday, Judge Barbier and Judge Fallon and I

09:35:16 13  had the pleasure of meeting and discussing a variety of things

09:35:21 14  about our court system, but, in particular, multidistrict

09:35:25 15  litigation, with Judge Kang, Judge Mo and Dr. Lee from

09:35:31 16  South Korea.

09:35:32 17              We had a very positive discussion with them about

09:35:36 18  the benefits and detriments of the multidistrict litigation

09:35:41 19  practice.  They are here to gather information.

09:35:44 20              If you gentlemen could stand up, please.  We all

09:35:47 21  welcome you here today.

09:35:48 22              I do have a few things for you.  Well, two

09:35:53 23  different types of Eastern District Court pins, and, of course,

09:35:57 24  our United States Court tumbler for your visit here.

09:36:01 25              Cherie, would you go ahead and give these to

                         ***OFFICIAL TRANSCRIPT***

09:36:03 1    Dr. Lee, Judge Mo, and Judge Kang.

09:36:06 2              While you're doing that, let me tell you that

09:36:10 3    Judge Kang is the presiding judge of the Seoul High Court.  He

09:36:15 4    is Chief Researcher of the Judicial Policy Research Institute.

09:36:19 5              Judge Mo is also with the Judicial Policy

09:36:22 6    Research Institute, and Dr. Le is also with the Judicial Policy

09:36:28 7    Research Institute, with the Supreme Court of Korea.

09:36:32 8              So we certainly welcome them to our Court, both

09:36:37 9    for this hearing today, and hopefully they will have pleasant

09:36:41 10   travels, notwithstanding the inclement weather that we've

09:36:44 11   experienced.  It looks like things are clearing up a little

09:36:47 12   bit.

09:36:48 13             Welcome, gentlemen.  We appreciate your visit.

09:36:52 14   Also, if there is anything that we could do while you're here,

09:36:54 15   as I said yesterday, to make your visit more pleasant,

09:36:57 16   certainly please call on us.

09:37:04 17             Okay.  We are here today for Record Document

09:37:09 18   Number 489, which is the Defendants' Motion to Dismiss the

09:37:14 19   Master Long Form Complaint.

09:37:16 20             That motion was opposed -- let me make sure I

09:37:23 21   recite all of my relevant documentation -- at

09:37:26 22   Record Document 663, and a reply memo was filed at

09:37:32 23   Record Document 773.

09:37:34 24             Now, counsel, if you would go ahead and make your

09:37:38 25   appearances.  I will tell you, before you do so, that I have

*OFFICIAL TRANSCRIPT*

09:37:41  1    read all of the briefing in this case, which is very clear and

09:37:45  2    outstanding.  I understand the issues in it.  Then I'll give

09:37:48  3    you a chance to make some remarks.

09:37:50  4              Why don't we go ahead and make our appearances

09:37:53  5    real quick.  Then, Mr. Moore, you can begin.

09:37:54  6         MR. MOORE:  Douglas Moore, defense liaison counsel and

09:37:58  7    counsel for Sanofi.

09:37:59  8         MR. MERRELL:  Cliff Merrell, on behalf of Sandoz, Inc.

09:38:02  9         MR. OLINDE:  Your Honor, it's John Olinde, representing

09:38:06  10   the liaison for the 505(b)(2).  I will not be addressing the

09:38:11  11   Court today.  It will be Mr. Merrell here.

09:38:15  12        MR. COFFIN:  Good morning, Your Honor.  Chris Coffin on

09:38:17  13   behalf of the plaintiffs.

09:38:18  14             Mr. Bruce Kingsdorf will be presenting the

09:38:20  15   argument on behalf of plaintiffs today.

09:38:22  16        THE COURT:  All right.

09:38:23  17        MS. MENZIES:  Good morning, Your Honor.  Karen Menzies,

09:38:24  18   also on behalf of plaintiffs.

09:38:26  19        THE COURT:  Good morning.

09:38:27  20        MR. LAMBERT:  Good morning, Your Honor.

09:38:27  21   Palmer Lambert, co-liaison counsel for the plaintiffs.

09:38:32  22        MS. BARRIOS:  Dawn Barrios, co-liaison counsel for

09:38:35  23   plaintiffs.

09:38:35  24        THE COURT:  Good morning.

09:38:35  25             I would like to follow the usual rule of no

*OFFICIAL TRANSCRIPT*

09:38:39  1    longer than 20 minutes.  Will that be necessary for me to be

09:38:43  2    the timekeeper up here, or do we believe that we can tackle

09:38:47  3    this without challenging those time limits?

09:38:51  4         MR. MOORE:  I believe that we're going to finish much

09:38:53  5    earlier than that, Judge, at least on the defendants' side.

09:38:56  6         I believe you had indicated during our last

09:38:59  7    liaison counsel meeting that we had 15 minutes, so we have

09:39:01  8    divided our time between myself and Mr. Merrell to meet those

09:39:05  9    restrictions.

09:39:05 10         I think the reason we are able to make our

09:39:10 11    comments in that timeframe is because, obviously, the Court has

09:39:13 12    read our papers, and you're not expecting from me an esoteric

09:39:17 13    discussion on *Twombly* or *Iqbal* or what constitutes plausibility

09:39:22 14    under those Supreme Court decisions.

09:39:24 15         I'd like to focus my remarks this way:  We raised

09:39:28 16    issues in the complaint -- with the complaint in our motion to

09:39:34 17    address all of the counts, issues related to shotgun pleading

09:39:39 18    and whether there are plausible allegations related to

09:39:41 19    causation.

09:39:42 20         I wanted to focus on the allegations of liability

09:39:48 21    for my remarks today.  I think our motion ultimately boils down

09:39:51 22    to this:  This is a failure to warn case.  That's all that it

09:39:56 23    is.

09:39:56 24         The factual allegations in this complaint,

09:39:59 25    Your Honor, begin at page 22, at paragraph 112.  Then they

*OFFICIAL TRANSCRIPT*

09:40:05  1   conclude on page 46, at paragraph 212.  So roughly 24 pages and

09:40:11  2   a hundred paragraphs of factual allegations related to

09:40:15  3   liability.

09:40:15  4          Each of the eight counts, each of the eight

09:40:19  5   causes of action that are articulated in the complaint, all

09:40:22  6   start off the same way.  They incorporate by reference all of

09:40:25  7   those factual allegations.  I'm not going to recite what the

09:40:29  8   eight counts are because Your Honor is aware of what they are.

09:40:32  9          But what I want to focus on is what I think we're

09:40:36 10   supposed to be doing in the context of a Rule 12 motion raised

09:40:40 11   under Rules 8 and 9, and that is analyze whether those facts

09:40:46 12   alleged support and set forth a plausible claim for relief

09:40:50 13   under the various causes of action that have been asserted.

09:40:53 14          So I really want to focus on two points.  The

09:40:56 15   first is the causes of action that require an express statement

09:41:00 16   by the defendant in order to render liability.  The

09:41:03 17   misrepresentation, the strict liability for misrepresentation

09:41:06 18   claim, the breach of warranty claim, claims that require

09:41:10 19   express statements that are false by the defendant.

09:41:13 20          Then I also want to talk about the claims that

09:41:17 21   require -- that must survive the Rule 9(b) hurdle.

09:41:21 22          So those are the two points I'm going to address.

09:41:24 23          When we look at the factual allegations,

09:41:26 24   paragraphs 112 through 189 are essentially the failure to warn

09:41:34 25   allegations.  It is a recounting of what the science is, what

*OFFICIAL TRANSCRIPT*

the clinical trial data shows, what was on the internet, on
CBS, and all of those things the plaintiffs take the position
establish that there was this increased risk of permanent or
persistent alopecia with the use of this medicine, and, as a
consequence, we had some obligation to change our warning.

        We disagree with those allegations, we refute
them, but we do not make an argument today that those
allegations are insufficient under Rules 8 or 9 -- or Rule 8 to
set forth a plausible claim for failure to warn, whether it's
under a Products Liability Act, or whether it's part of a
negligence count.

        What we do take issue with, Your Honor, are the
allegations related to the specific statements that are
articulated in paragraphs beginning at 190 and going through
212.  Those are the paragraphs that relate to the affirmative
misstatements that we are alleged to have made, upon which they
base their misrepresentation and breach of warranty claims.
Whether it's strict liability misrepresentation or negligent --
or fraudulent misrepresentation, there has to be an express
misstatement.

        The statements that are contained in the
complaint relate to, by my count, about four warnings letters
from DDMAC.  DDMAC is the Division of Drug Marketing,
Advertising and Communication.  It's called something else now.

        Without getting too far afield, there is a bunch

*OFFICIAL TRANSCRIPT*

09:43:02  1   of things in the complaint that talk about FDA concluded this,

09:43:07  2   and FDA determined that.  They said it was false and

09:43:10  3   misleading.

09:43:12  4          A DDMAC letter is not an agency determination,

09:43:14  5   which will be an issue we'll probably have to litigate a

09:43:16  6   Rule 56 or in the context of the motions in limine.  But I did

09:43:19  7   want to make that comment, that even though these letters have

09:43:22  8   this talismanic language of false and misleading, lacks fair

09:43:26  9   balance, constitutes misbranding -- this language that's in

09:43:30 10   every single DDMAC letter that I've ever seen -- that doesn't

09:43:32 11   mean that the statement that's at issue is untrue, but that's

09:43:37 12   an issue that we'll have to litigate in the case.

09:43:40 13          What I want to focus on is whether these alleged

09:43:43 14   misstatements -- one of them had to do with off-label use of

09:43:45 15   the medicine in combination with other chemotherapy agents.

09:43:50 16   The remainder focus on increased efficacy, greater efficacy for

09:43:56 17   Taxotere versus Taxol or other chemotherapy regimens.

09:44:03 18          The argument is that you took the position that

09:44:05 19   this medicine would be better at eliminating my cancer, and

09:44:08 20   that's the mistake.  That statement alone, in our view,

09:44:12 21   Your Honor, does not set forth a plausible claim for a

09:44:16 22   misrepresentation or warranty count.  That's because those

09:44:19 23   allegations can't stand on their own and establish liability

09:44:24 24   for the injuries that are at issue in this case.

09:44:26 25          This is not a consumer class action, where they

*OFFICIAL TRANSCRIPT*

09:44:29  1   are taking the position that we overstated some characteristic

09:44:31  2   of the product.  These plaintiffs aren't coming into court

09:44:36  3   saying, you told me this was going to cure my cancer because it

09:44:40  4   was the most potent therapy, and it didn't; and, therefore, I

09:44:43  5   still have cancer, and I'm suing.  That's not what this case is

09:44:46  6   about.

09:44:46  7          These allegations are not related to the side

09:44:49  8   effect that these individuals claim to have suffered.

09:44:52  9          I think the point is best made in looking at the

09:44:56  10  plaintiffs' opposition.  When we raised the point that they

09:44:59  11  don't refer to material misrepresentations -- because they are

09:45:03  12  referring to this issue with the efficacy -- what they state

09:45:06  13  is:  "Plaintiffs have clearly conveyed that defendants did not

09:45:10  14  merely omit warnings about the known risk of permanent

09:45:15  15  alopecia, but specifically positioned Taxotere as a safe and

09:45:20  16  effective treatment that had greater efficacy and survival

09:45:21  17  outcome than its competitors."

09:45:23  18          What they are doing there is, in order to support

09:45:26  19  their misrepresentation or warranty counts, they are coupling

09:45:31  20  it with a failure to warn claim; that the misrepresentation

09:45:35  21  claim cannot stand on its own legs, it has to be coupled with a

09:45:40  22  failure to warn.

09:45:41  23          If there is no failure to warn in this case, the

09:45:45  24  question becomes can they recover for the injuries that are at

09:45:50  25  issue in this case because of the alleged misstatements that

*OFFICIAL TRANSCRIPT*

09:45:52  1    were made.

09:45:52  2          I would give you an example of the point I'm

09:45:55  3    trying to make.  If I sold a car to someone and told that

09:45:59  4    person, express warranty -- express statement, you can put five

09:46:04  5    suitcases in the trunk of this car, and it turns out you can

09:46:07  6    only put four, so it was a false statement.  It was a breach of

09:46:09  7    an express warranty when I said five suitcases in the trunk.

09:46:13  8          Then that person crashes the car, and the air

09:46:16  9    bags don't go off, and they get injured.  Could they then sue

09:46:20 10    me for breach of an express warranty for the injuries they

09:46:22 11    suffered because of defective air bags because you can't put

09:46:24 12    five suitcases in the trunk?

09:46:25 13          I think that's the point that we're trying to

09:46:27 14    make here is that these allegations of increased efficacy and

09:46:34 15    their argument that there is no better survivability, we do not

09:46:37 16    believe they established a plausible claim for relief for the

09:46:42 17    misrepresentation claims.

09:46:43 18          The warranty claim, Your Honor, I would make one

09:46:45 19    more point, and that is this:  When we look at the plaintiffs'

09:46:50 20    opposition, we point out that they have not -- there is no

09:46:54 21    warranties in medicine.  There is no guarantees in

09:46:57 22    pharmaceutical products.

09:47:01 23          The argument they make is that the defendants

09:47:03 24    expressly warranted that the medicine was safe and fit for the

09:47:08 25    use for the purposes intended, that they did not produce any

**_OFFICIAL TRANSCRIPT_**

09:47:12 1    dangerous side effects in excess of those risks associated with

09:47:16 2    other forms of treatment for cancer, and the side effects that

09:47:19 3    they did produce were accurately reflected in the warnings.

09:47:22 4    There is no facts supporting -- saying that we said any of

09:47:26 5    those things.

09:47:26 6                 Of the 46 pages and 100 paragraphs of their

09:47:29 7    factual allegations, they are not pointing to an express

09:47:32 8    statement, or something in our labeling, or something in our

09:47:35 9    materials, or a promotional item, or something somebody said,

09:47:38 10   that matches what they claim the express warranty was.

09:47:41 11               So for those reasons, Your Honor, we think that

09:47:44 12   the misrepresentation of warranty claims fail under Rule 8.

09:47:48 13               Then I'll quickly make a comment on Rule 9.  We

09:47:52 14   think that bar is set very high for a reason; that, while this

09:47:56 15   claim -- this case -- there is a dispute in this MDL about

09:48:01 16   whether or not the information that was available to the

09:48:06 17   defendant warranted some different warning with respect to this

09:48:09 18   medicine, we do not believe that these allegations come

09:48:12 19   anywhere close to approaching intentional fraudulent conduct,

09:48:17 20   and we don't believe that these allegations satisfy Rule 9(b)

09:48:21 21   in that regard.

09:48:22 22               So I will turn it over to Mr. Merrell.

09:48:24 23               THE COURT:  Thank you, Mr. Moore.

09:48:25 24               Mr. Merrell.

09:48:27 25               MR. MERRELL:  Thank you, Your Honor.  Cliff Merrell on

*OFFICIAL TRANSCRIPT*

09:48:32 1   behalf of Sandoz, Inc.

09:48:34 2          Sandoz is one of the non-Sanofi 505(b)(2)

09:48:37 3   defendants, so I'm here to provide a few remarks just on behalf

09:48:40 4   of all of the 505(b)(2) defendants, and I don't want to retread

09:48:45 5   any ground either in the brief or what Mr. Moore has already

09:48:48 6   ably covered.

09:48:48 7          I think the important part from our perspective

09:48:52 8   is to understand how the complaint differs in a number of

09:48:54 9   degrees, the Master Complaint, in the allegations as to Sanofi,

09:48:57 10  as opposed to the other 505(b)(2) defendants.

09:49:00 11         If you look at the Master Complaint, there are

09:49:02 12  215 factual allegations preceding the causes of action.  Of

09:49:05 13  those, 75 relate to these six 505(b)(2) defendants.  So there

09:49:10 14  are really only about 13 or 14 total factual allegations as to

09:49:14 15  each 505(b)(2) defendant.

09:49:16 16         These allegations cover issues of when the NDA

09:49:19 17  approval was; the labeling that was provided, the FDA approved

09:49:24 18  labeling; and, where they were incorporated and their principal

09:49:26 19  place of business.  That's really it.  There are no allegations

09:49:28 20  about misrepresentations about FDA warning letters or FDA

09:49:32 21  actions.  None of that is there.

09:49:34 22         There is no allegations about knowledge or

09:49:36 23  participation in the particular studies that are referenced in

09:49:39 24  the complaint.

09:49:39 25         There is really very little in terms of what the

*OFFICIAL TRANSCRIPT*

09:49:41  1    allegations are as to the 505(b)(2) defendants.  So I wanted to

09:49:45  2    just cover briefly the misrepresentation and fraud issues

09:49:48  3    specifically, and how that deficiency presents an issue, and

09:49:53  4    Motion to Dismiss should be granted here.

09:49:55  5          If you look at the plaintiffs' opposition,

09:49:58  6    particularly at misrepresentation, the portion of the complaint

09:50:01  7    they cite is 190 to 215, which Mr. Moore just discussed.  That

09:50:06  8    particular portion of the complaint deals entirely with Sanofi

09:50:07  9    and its marketing and advertising.  There is no sort of

09:50:11 10    marketing or advertising factual allegations as to the

09:50:17 11    505(b)(2) defendants, and there is nowhere any sort of

09:50:20 12    allegation about FDA warning letters or anything like that.

09:50:23 13          So with respect to the 505(b)(2) defendants,

09:50:27 14    those factual allegations are missing, and that's a substantial

09:50:30 15    deficiency in their complaint.

09:50:31 16          With respect to fraud, similar issue, they raised

09:50:34 17    two issues in their opposition.  One is the -- again, the

09:50:38 18    paragraphs 109 to 215, which discuss actions by Sanofi.  Again,

09:50:44 19    nothing related to advertising, marketing by any of the

09:50:46 20    505(b)(2) defendants.

09:50:48 21          Then the other portion they raise are various

09:50:50 22    studies that were published or news stories that were in the --

09:50:53 23    that were out in the public, but there is no allegation,

09:50:56 24    specific allegation as to a specific 505(b)(2) defendant that

09:51:01 25    they had knowledge, were aware or participated in any of those

*OFFICIAL TRANSCRIPT*

09:51:03  1    studies.

09:51:04  2           So, Your Honor, we would present that there is --

09:51:07  3    that there is -- that the motion should be granted as to all

09:51:11  4    defendants; but, particularly as to the 505(b)(2) defendants,

09:51:14  5    there simply are not the factual allegations that are necessary

09:51:17  6    to support their causes of action.

09:51:19  7           Thank you, Your Honor.

09:51:19  8       THE COURT:  Thank you, Mr. Merrell.

09:51:22  9           Mr. Kingsdorf.

09:51:25 10       MR. KINGSDORF:  Good morning, Your Honor.  Bruce

09:51:32 11    Kingsdorf on behalf of the plaintiffs.

09:51:34 12           Until I heard Mr. Moore, I was under the belief

09:51:38 13    that defendants were seeking dismissal of all counts of the

09:51:47 14    Master Complaint.  I guess I'm relieved to note that they are

09:51:51 15    not seeking dismissal of all counts.

09:51:53 16           But this case is more than just a failure to warn

09:51:59 17    case.  I think we have gone to great lengths to point out to

09:52:05 18    Your Honor what the misrepresentations were, what the causes of

09:52:09 19    action are and the validity of those causes of action, and the

09:52:14 20    facts at this point which support those causes of action.

09:52:17 21           Your Honor, I know that you have handled a motion

09:52:25 22    to dismiss a master complaint in the past.  It's a slightly

09:52:28 23    different case.  It involved the FEMA trailer litigation, and

09:52:33 24    the laws of only four states were involved, Alabama,

09:52:38 25    Mississippi, Louisiana, and Texas.

*OFFICIAL TRANSCRIPT*

09:52:41  1          The Court, in that analysis, went through

09:52:46  2   whether, for example, the plaintiffs had standing to bring the

09:52:50  3   particular claims at issue, whether the economic loss rule

09:52:56  4   barred, under the laws of those particular states, the claims

09:53:00  5   that were brought.

09:53:00  6          But what came out of Your Honor's reasoning in

09:53:03  7   that case was two points that hit me that I think are pertinent

09:53:07  8   to this litigation.  One of them is that the level of proof

09:53:15  9   that's required to get beyond the speculative level is

09:53:20 10   contextual.  It varies with the complexity of the case.  The

09:53:27 11   more complex the case, the laxer the standard is to get beyond

09:53:34 12   the speculative level.

09:53:36 13          Again, as Your Honor well knows, we don't have to

09:53:38 14   get beyond speculative to probable.  We only have to get to

09:53:46 15   plausible.  We firmly believe that in the 220 fact paragraphs

09:53:52 16   of the complaint, we have gone well beyond the speculative to

09:53:57 17   the plausible.

09:53:59 18       THE COURT:  Well, it has to be a little more than

09:54:02 19   plausible though.  You have to have a reasonable basis to

09:54:05 20   believe each and every allegation.  Isn't that a better way to

09:54:10 21   state what the pleading standard is?  I mean, plausibility is

09:54:15 22   possibility, but it's got to be something that's based upon a

09:54:19 23   reasonable belief.

09:54:22 24       MR. KINGSDORF:  Well, we haven't just simply said that

09:54:26 25   they had a marketing campaign that was defective.  We have said

                        *OFFICIAL TRANSCRIPT*

09:54:30  1  that they had a marketing campaign that was based upon this

09:54:32  2  drug being efficacious, that the drug had no greater side

09:54:40  3  effects than other drugs of the same nature.

09:54:42  4       So there are cases cited by the defendants in

09:54:45  5  their reply brief which talk about -- I think it was the Zofran

09:54:50  6  in particular -- that talk about a marketing campaign that

09:54:55  7  simply said this drug is a bad drug, and that was their fraud

09:54:59  8  claim.  That was their representation -- or their

09:55:02  9  misrepresentation.

09:55:03 10       We have gone well beyond that.  We've cited

09:55:07 11  chapter and verse with regard to the advertisements.  We've

09:55:11 12  talked about the letters from the FDA, the DDMAC letters, I

09:55:18 13  believe that were referred to by Mr. Moore.  We've talked about

09:55:20 14  the aggressive marketing campaign that they embarked upon to

09:55:25 15  make sure that the doctors, the learned intermediaries in this

09:55:32 16  case, prescribed this drug without any warning on the label

09:55:36 17  that it led to permanent alopecia.

09:55:41 18       We've also described the fact that all along they

09:55:46 19  had studies, they had adverse event reports, they had

09:55:51 20  information from clinical trials to the effect that, in fact,

09:55:56 21  there was a high percentage of permanent alopecia, none of

09:56:01 22  which was disclosed by either the Sanofi defendants or the

09:56:07 23  505(b)(2) defendants.

09:56:09 24       So, Your Honor, we think we have gone well beyond

09:56:12 25  the merely speculative into the plausible, and almost to the

*OFFICIAL TRANSCRIPT*

09:56:17 1   probable.

09:56:17 2          The second thing that I've gleaned from your FEMA

09:56:24 3   trailer case is that when issues are fact dependent at the

09:56:31 4   motion to dismiss phase, it's inappropriate to dismiss the

09:56:37 5   claim.  As long as the allegations are made, and properly made,

09:56:41 6   at that point in time, the Court should allow discovery to take

09:56:47 7   place.  Especially in a circumstance where defendants have

09:56:49 8   most, if not all, of the documents, discovery should take

09:56:53 9   place.  Then, at the motion for summary judgment phase, then

09:56:58 10  the Court should entertain the issue of whether there has been

09:57:01 11  a sufficient factual basis to go to the jury, not at the motion

09:57:07 12  to dismiss phase.

09:57:08 13          THE COURT:  Okay.  Thank you.

09:57:11 14          MR. KINGSDORF:  Thank you, Your Honor.

09:57:11 15          THE COURT:  All right.  I don't know if anybody wants

09:57:15 16  to add anything at this point.  Like I said, I understand the

09:57:18 17  issues, I understand the briefing, and I appreciate your

09:57:21 18  remarks here today.

09:57:23 19          Now is the time to speak up.  Otherwise, I'm

09:57:28 20  prepared to go ahead and rule on this motion.

09:57:30 21          All right.  This is with regard to the Motion to

09:57:34 22  Dismiss Plaintiffs' Master Long Form Complaint,

09:57:37 23  Record Document 489, which is presently before the Court.  The

09:57:41 24  Court is prepared to rule on the motion seeking dismissal of

09:57:45 25  the Plaintiffs' Master Long Form Complaint pursuant to Federal

*OFFICIAL TRANSCRIPT*

09:57:49 1   Rules of Civil Procedure 12(b)(6) and 9(b).

09:57:52 2          Having carefully considered both parties'

09:57:56 3   supporting and opposing submissions, as well as the arguments

09:58:00 4   presented to the Court today, and, of course, the key cases

09:58:02 5   upon which those arguments are based, it's ordered that the

09:58:05 6   Motion is denied with respect to Count 1 and Counts 3 through 7

09:58:08 7   for essentially the reasons contained in the plaintiffs'

09:58:11 8   memorandum in opposition to the defendants' motion to dismiss

09:58:14 9   the long form complaint.

09:58:16 10         However, with respect to Counts 2 and 8 of the

09:58:20 11  Master Long Form Complaint, which allege strict liability for

09:58:24 12  misrepresentation and a breach of express warranty

09:58:29 13  respectively, it's ordered that the plaintiffs shall have

09:58:32 14  14 days to provide counsel and the Court with supplemental

09:58:34 15  briefing or, preferably, an amendment to the Master Long Form

09:58:38 16  Complaint clearly identifying what express statements or

09:58:41 17  language constitute the alleged misrepresentation or warranty.

09:58:45 18         Let me recap the eight claims as I've identified

09:58:50 19  them.  I'm going to state them cryptically, simply by title:

09:58:55 20  One was failure to warn; two, misrepresentation; three,

09:58:58 21  negligence; four, negligent misrepresentation; five, fraudulent

09:59:03 22  misrepresentation; six, fraudulent concealment; seven, fraud

09:59:07 23  and deceit; and, eight, breach of express warranty.  Those are

09:59:10 24  the eight identified claims set forth in the Master Long Form

09:59:13 25  Complaint.

*OFFICIAL TRANSCRIPT*

As a threshold matter, just as the Court in *In re: Zofran* multi-district litigation, which is Multi-District Case Number 2657, noted when explaining the framework or the context within which to consider allegations of fraud within an MDL, "It is true that this case, like most MDL proceedings, employs the device of a master complaint supplemented by individual short form complaints that adopt the master complaint in whole or in part.

"It is also true that a master complaint could not possibly be expected to include every case-specific detail such as a particular misleading statement made by a particular sales representative to the physician of an individual plaintiff."

The court further explained that "the complaint in each action in this proceeding consists of the master complaint and the individual short form complaint, taken together."  The Court in this case likewise considers, insofar as pleading is concerned, not only the Master Long Form Complaint, but also the short form complaints that have been and will be filed in this case to flesh out the allegations made with regard to particular plaintiffs.

While this Court will not allow a lower pleading standard in the matter generally, purely because of the consolidated nature of these proceedings, it is necessary for the Court to recognize the limitations and restrictions on

*OFFICIAL TRANSCRIPT*

10:00:40 1  plaintiffs' counsel in formulating allegations within a Master

10:00:45 2  Long Form Complaint, as well as the administrative function of

10:00:47 3  a master complaint.

10:00:49 4          However, with that being said, specific

10:00:51 5  allegations, particularly with respect to any allegations of

10:00:54 6  fraud, should be perfected within the short form complaints

10:00:59 7  filed in the individual member cases.

10:01:01 8          However, also at this point in the litigation,

10:01:03 9  allowing plaintiffs' claims in Count 1 and Counts 3 to 7 to

10:01:10 10 proceed serves the goals of the MDL.  Just as the Court noted

10:01:12 11 in the *In re:  Trasylol Product Liability Litigation* -- you can

10:01:22 12 find that at 2009 Westlaw 577726 -- this Court finds that it is

10:01:28 13 in the best interest of justice to allow these claims to go

10:01:32 14 forward, and to more appropriately be addressed when we move to

10:01:38 15 the summary judgment phase of the case.

10:01:39 16         Now, with respect to Counts 2 and 8, which allege

10:01:44 17 strict liability for misrepresentation and breach of an express

10:01:47 18 warranty respectively, the Court requires additional

10:01:52 19 information from plaintiffs.

10:01:53 20         The defendants are correct in stating that the

10:01:55 21 plaintiffs have not provided any express statement by the

10:01:57 22 defendants that was either misleading or an express warranty

10:02:01 23 and relied upon by a plaintiff or a particular group of

10:02:05 24 plaintiffs.

10:02:06 25         The Court agrees that plaintiffs cannot state a

*OFFICIAL TRANSCRIPT*

10:02:08  1    breach of express warranty claim by vaguely referring to a

10:02:14  2    manufacturer's representations about safety and effectiveness,

10:02:16  3    side effects or adequate testing.

10:02:18  4            Therefore, the Court would like the plaintiffs to

10:02:19  5    supplement their complaint with the express language that they

10:02:23  6    reference in Counts 2 and 8 of the master complaint within

10:02:27  7    14 days of today's date.

10:02:28  8            Let me put a little finer point on that.  What I

10:02:32  9    am interested in and what I think the purpose of the Motion to

10:02:35 10    Dismiss is, and the reason the Court is granting it, is that

10:02:40 11    surely, both based upon the individual complaints that have

10:02:44 12    been filed in this case by individual plaintiffs, as well as

10:02:47 13    set forth in the Master Long Form Complaint, plaintiffs'

10:02:50 14    counsel have identified specific statements that were made by

10:02:55 15    the defendants, not by the doctor treating an individual

10:03:00 16    plaintiff -- because we may have doctors who said to a patient,

10:03:04 17    I have used this product on six patients or eight patients, and

10:03:09 18    I have gotten a positive result, or there have been no side

10:03:13 19    effects or -- but that would not be what I'm talking about

10:03:16 20    here.  What I'm talking about here are isolating specific --

10:03:20 21    especially express warranties that plaintiffs have identified

10:03:25 22    and were relied upon by a plaintiff or group of plaintiffs or

10:03:30 23    all plaintiffs in connection with Counts 2 through 8 -- 2 and

10:03:39 24    8, I should say.

10:03:39 25            So we would like those set forth.  Again, those

**OFFICIAL TRANSCRIPT**

10:03:43   1   have to be statements that were relied upon by plaintiffs or,
10:03:45   2   like you said, the learned intermediary.  I think we ought to
10:03:49   3   be able to identify those statements, since a component part of
10:03:52   4   those claims is reliance.  This would not be something that we
10:03:56   5   could say, well, we're going to go through discovery, and then
10:03:58   6   we're going to find out what the defendant said, and then come
10:04:01   7   back and tell you we relied on it when we made the decision to
10:04:07   8   proceed with use of that particular product.  So I'm interested
10:04:07   9   in identifying those statements.
10:04:11  10           It need not be long.  It could be a list.  I just
10:04:13  11   want to know, and I think the defendants are entitled to know,
10:04:16  12   what specific statements are the basis for Counts 2 and 8.
10:04:21  13           All right.  At this time, I would like to go
10:04:26  14   ahead and rule on a couple of motions that were argued
10:04:30  15   previously relative to jurisdiction.
10:04:33  16           With regard to the remand motions, let me state
10:04:38  17   at the outset that my personal preference, as the presiding
10:04:43  18   judge, would be to have all of the claims in this case here in
10:04:46  19   the MDL.  I think it makes management of the MDL easier.  It
10:04:51  20   makes it easier for counsel to work on the MDL.  It's a
10:04:55  21   preferred vehicle on which to consider all claims, both for
10:05:00  22   litigation purposes, discovery purposes and settlement
10:05:03  23   purposes.
10:05:03  24           However, subject matter jurisdiction is not a
10:05:09  25   mere trifle, and, the Court's preference notwithstanding,

*OFFICIAL TRANSCRIPT*

10:05:13 1    subject matter jurisdiction is a hurdle that must be cleared.

10:05:16 2    It also must be clear on the record that the Court has the

10:05:20 3    authority, the very authority to have such a case pending

10:05:24 4    before it.

10:05:25 5            That's the approach, of course, that I and any

10:05:27 6    federal court, I believe, in courts of limited jurisdiction

10:05:30 7    take in considering subject matter jurisdiction.

10:05:34 8            The Court would rule on the Plaintiffs' Omnibus

10:05:40 9    Motion to Remand Certain Cases to the Superior Courts of

10:05:42 10   California, which is Record Document 469.

10:05:45 11           I note that on July 6th, 2017, the Court held

10:05:49 12   oral argument on the plaintiffs' motion and ordered that the

10:05:51 13   plaintiffs provide the Court with individualized statements

10:05:54 14   regarding what information exists as to McKesson's alleged

10:05:59 15   connection to each plaintiff involved.  That was Record

10:06:04 16   Document 620.

10:06:04 17           In compliance with this Court's order, the

10:06:05 18   plaintiffs filed the Plaintiffs' Supplemental Memorandum in

10:06:08 19   Support of Motion to Remand, which is Record Document 469,

10:06:13 20   which was the plaintiffs' statements on each case regarding

10:06:17 21   McKesson, as ordered by the Court, Record Document 628, to

10:06:20 22   which Sanofi-Aventis US, LLC filed a response at Record

10:06:28 23   Document 646.

10:06:29 24           Having carefully considered the entirety of the

10:06:31 25   parties' supporting and opposing written submissions, the

*OFFICIAL TRANSCRIPT*

10:06:32 1    parties' oral arguments, the record and the applicable law,

10:06:35 2    it's ordered that the motion is granted in part and denied in

10:06:38 3    part.

10:06:39 4          It's further ordered that counsel shall have ten

10:06:41 5    days to submit supplemental briefing on two of the

10:06:45 6    multi-plaintiff cases, the *Ernys-Kofler v. Sanofi* case and the

10:06:49 7    *McCallister v. Sanofi* case, which I'll discuss in further

10:06:55 8    detail.

10:06:55 9          With regard to plaintiffs Joann Pickrell,

10:06:58 10   Candyse Jenkins and Vera Smith, the Motion to Remand is

10:07:02 11   granted.  It is ordered that these plaintiffs' claims be

10:07:05 12   remanded to California state court.

10:07:08 13         In the plaintiffs' supplemental memorandum filed

10:07:10 14   in response to this Court's order, counsel has provided

10:07:10 15   sufficient information connecting McKesson to the

10:07:14 16   aforementioned plaintiffs, such as evidence that McKesson did

10:07:18 17   distribute Taxotere or generic Docetaxel to the facility in

10:07:22 18   which a particular plaintiff received chemotherapy treatment.

10:07:28 19         While the defendants argue that this information

10:07:28 20   is still insufficient to establish that McKesson actually

10:07:33 21   distributed the Taxotere or Docetaxel that was administered to

10:07:34 22   those particular plaintiffs, the Court finds that this

10:07:38 23   information provided is sufficient to satisfy California's

10:07:42 24   "upon information and belief" pleading standard.

10:07:45 25         However, with respect to the plaintiff Susan

**OFFICIAL TRANSCRIPT**

10:07:49  1   Fuller, Margarett Wright, Robin Castagnola, Mary Gardner and

10:07:52  2   Judy Johnson, the Motion to Remand is denied.  Counsel failed

10:07:56  3   to provide any individualized information as to how McKesson is

10:08:00  4   connected to each of these remaining plaintiffs.  Rather,

10:08:03  5   counsel provided the Court with generalized statements

10:08:05  6   regarding the dates in which McKesson has distributed Taxotere

10:08:10  7   or generic Docetaxel throughout the United States.  These types

10:08:13  8   of nonspecific statements are insufficient to satisfy even the

10:08:18  9   liberal "upon information and belief" pleading standard that is

10:08:20 10   utilized in the state of California.

10:08:22 11          Plaintiffs have not convinced the Court that

10:08:26 12   McKesson's connection to each of these remaining plaintiffs

10:08:28 13   rises above a speculative level.  Therefore, the Court finds

10:08:32 14   that McKesson has been improperly joined in these particular

10:08:35 15   cases, and remand is not appropriate under such circumstances.

10:08:37 16          Within ten days of this order, counsel shall file

10:08:40 17   a Motion to Dismiss without prejudice as to McKesson.

10:08:46 18          Finally, with respect to the two multi-plaintiff

10:08:49 19   cases -- that's, again, *Ernys-Kofler* and the *McCallister*

10:08:53 20   matters -- it is ordered that counsel shall submit supplemental

10:08:56 21   briefing within ten days of today's date regarding the

10:08:59 22   severance of these multi-plaintiff actions.

10:09:02 23          While it is the Court's desire at this time to

10:09:04 24   sever and remand the claims of plaintiffs Klara Ernys-Kofler,

10:09:11 25   Lisa McCallister, Sandra Isham and Josephine Hicks, a reading

**OFFICIAL TRANSCRIPT**

of 28 USC Section 1332 and 28 USC Section 1441 may well limit the Court's ability to sever and remand the claims of only those plaintiffs who have alleged individualized information as to how McKesson is connected to them.

These sections of the United States Code may require that these actions be remanded in their entirety. Therefore, counsel are directed to submit additional briefing in that regard.

The Court would also encourage counsel to meet and confer regarding a potential resolution as to remand or not of all or parts of these two multi-plaintiff actions.

Again, to put a finer point on it, I am inquiring, the purpose of the additional briefing is for you to tell me whether it is appropriate or whether the Court is authorized to sever plaintiffs in the context of a motion to remand.

I've indicated the plaintiffs that I think I would otherwise remand, and, if permitted to do so under the law, if you convince me that I'm authorized to do it under these provisions, my inclination would be to sever those plaintiffs and have their cases remanded, and retain the rest of them here, but I'll leave that up to you for further briefing.

Furthermore, in light of the Supreme Court's decision in *Bristol-Myers Squibb v. Superior Court of*

*OFFICIAL TRANSCRIPT*

*California, San Francisco Cty.*, the defendants have urged the Court to dismiss the claims of the nine California plaintiffs in the multi-plaintiff actions.  However, the Court declines to do so at this time, as it will first need to address the issues relating to subject matter jurisdiction as a threshold matter. That argument, of course, can also be made in state court under the jurisprudence that would be equally controlling on the judges there.

With regard to the Delaware Plaintiffs' Motion to Remand to the Superior Court of Delaware, which is Record Document 673, the plaintiffs' motion seeks remand, arguing, among other things, that the snap removal effectuated by the defendant was an effort to circumvent the forum defendant rule found in Section 1441(b)(2) of Title 28.

On July 6, 2017, the Court held oral argument on this motion as well and took it under advisement.  Having carefully considered the entirety of the parties' supporting and opposing submissions, the comments made in oral argument, the record and the applicable law, including the variety of cases that discuss that type of removal, it's ordered that the motion is granted.  The member cases listed in the schedule attached to plaintiffs' motion shall be remanded to the Superior Court of Delaware.

In so finding in favor of remand, the Court places emphasis on the limited jurisdiction of federal courts.

**OFFICIAL TRANSCRIPT**

10:12:03  1    As you all well know, it is axiomatic that federal courts are

10:12:09  2    courts of limited jurisdiction, possessing only that power

10:12:12  3    authorized by Constitution and statutes.

10:12:17  4         Looking to 28 USC Section 1441(b), these

10:12:21  5    provisions relate to the procedure of removal.  In particular,

10:12:24  6    28 USC Section 1441(b)(2) is temporal in nature, relating to

10:12:28  7    the time period in which a matter can be removed to federal

10:12:31  8    court.  However, this provision does not provide jurisdiction

10:12:34  9    to federal courts in excess of the diversity jurisdiction that

10:12:39  10   Congress had expressly and has expressly provided in

10:12:42  11   Section 1332 of Title 28.

10:12:45  12        In other words, this provision is not an add-on

10:12:47  13   or a clever extension to Congress' provision of diversity

10:12:52  14   jurisdiction.  Section 1441(b) is written with the idea and, in

10:12:56  15   fact, the practice that a defendant can and will be promptly

10:13:01  16   served with process via the provisions of state court

10:13:05  17   procedure.

10:13:05  18        In most states, this process involves the

10:13:08  19   plaintiff having to first request service, court personnel then

10:13:14  20   having to process the proper documentation, and then an

10:13:16  21   authorized person, such as a sheriff, a courthouse employee or

10:13:20  22   a private process server appointed by the Court, having to

10:13:23  23   physically serve the defendant.

10:13:25  24        However, Section 1441(b) does not contemplate a

10:13:28  25   person or entity monitoring court filings by the minute, either

*OFFICIAL TRANSCRIPT*

10:13:33 1    in person or electronically, so as to always have an immediate

10:13:37 2    back door to federal jurisdiction not otherwise provided by

10:13:40 3    Congress.

10:13:41 4              Plaintiffs here have not neglected, delayed,

10:13:46 5    pretermitted or indefinitely postponed or failed to promptly

10:13:48 6    seek service.  Quite to the contrary, had they acted in such a

10:13:53 7    dilatory fashion, that Court might view this issue quite

10:13:57 8    different.

10:13:57 9              By removing the case in the manner that the

10:13:59 10   defendant has done here, the defendant has effectively defeated

10:14:00 11   the plaintiffs' ability to even effectuate service on it.

10:14:04 12   Moreover, by preventing service, the local removing defendant

10:14:08 13   thus creates new grounds for federal jurisdiction for which

10:14:10 14   Congress has made no specific provision.

10:14:13 15             The Court notes that it finds the district

10:14:15 16   court's reasoning and analysis in *Smethers v. Bell Helicopter*

10:14:22 17   *Textron* -- I think these cases are cited in your briefing --

10:14:25 18   2017 WL 1277512 -- that's a case from earlier this year from

10:14:30 19   our friends in the Southern District of Texas; *Laugelle v. Bell*

10:14:39 20   *Helicopter Textron*, 2012 WL 368220 -- that is a district court

10:14:44 21   opinion from Delaware; and *Hawkins v. Cottrell*, 785 F.Supp.2d

10:14:49 22   1361, from the Northern District of Georgia, persuasive.

10:14:53 23             The Court in *Laugelle* explained that "other

10:14:56 24   district courts that have considered this issue have concluded

10:14:59 25   that Congress could not have intended removability to hinge on

*OFFICIAL TRANSCRIPT*

10:15:02  1   the timing of service... this conclusion makes particular sense

10:15:06  2   today, given the shift to electronic docketing and the

10:15:10  3   increased potential for gamesmanship by savvy defendants who

10:15:15  4   may monitor state court dockets."  That's a quote from the

10:15:17  5   *Laugelle* opinion.  This Court agrees.  Therefore, the motion is

10:15:20  6   granted, and these member cases must be remanded to the

10:15:23  7   Superior Court of Delaware.

10:15:24  8              All right.  I had three other motions pending

10:15:28  9   that I would like to clear and was hoping to clear today.  I

10:15:32 10   know you all have been in e-mail communication with the Court.

10:15:35 11   Those three motions that are pending would be

10:15:41 12   Record Document 559, the motion for disclosure of nonparty

10:15:44 13   interested entities or persons filed by the defendant,

10:15:48 14   Sanofi-Aventis US, LLC; and, also, plaintiffs' motion to compel

10:15:53 15   responses to request for production, at Record Document 626;

10:15:58 16   and, the defendants', Sanofi and Aventis Pharma SA, motion for

10:16:03 17   protective order, at Record Document 542.

10:16:08 18              A couple of weeks ago, I had a status conference

10:16:11 19   with liaison counsel.  I discussed all three of these motions

10:16:17 20   in, I think, very clear terms, insofar as what the Court's

10:16:19 21   belief was at the time.  My opinion that I expressed on that

10:16:23 22   occasion hasn't changed with regard to the likelihood of

10:16:26 23   success, such as it is, on either side of those three motions.

10:16:35 24              Counsel, I understand you all, as late as

10:16:38 25   yesterday, were continuing to discuss resolution of those

**OFFICIAL TRANSCRIPT**

10:16:40 1   motions based upon the Court's statements.  What is the status

10:16:43 2   of those discussions?

10:16:45 3          MR. COFFIN:  Your Honor, Chris Coffin on behalf of the

10:16:51 4   plaintiffs.

10:16:51 5              You are correct, Your Honor.  We have endeavored

10:16:53 6   to reach a resolution on those motions.  At this time, we have

10:16:58 7   not.

10:17:00 8              I can tell you, Your Honor, Ms. Menzies and

10:17:05 9   myself and Mr. Ratliff spent no less than five hours together,

10:17:10 10  the three of us.  It was either yesterday or the day before.

10:17:15 11  We have spoken yesterday as well.  We have a planned call again

10:17:19 12  today.

10:17:19 13             It's not for lack of effort, I can assure you,

10:17:24 14  Your Honor.  Ms. Menzies flew in from Los Angeles, Mr. Ratliff

10:17:29 15  flew in from Kansas City, specifically for the three of us to

10:17:33 16  sit in a room and hash out the details of what could be an

10:17:38 17  agreement.

10:17:40 18             Unfortunately, it is a very important issue on

10:17:43 19  both sides.

10:17:43 20         THE COURT:  Are you making progress?  I understand the

10:17:45 21  importance of all of the issues in this case.  Are you making

10:17:49 22  progress, or am I going to rule on this in two weeks or a week

10:17:52 23  from now?

10:17:54 24             I would have ruled on it today but for the fact

10:17:56 25  that I understand you all are meeting -- I want you to meet,

**OFFICIAL TRANSCRIPT**

10:17:59  1    but I also want you to come to an agreement, if it's at all

10:18:04  2    possible, instead of constantly telling me, we're still

10:18:07  3    talking, we're still talking, we're still talking.  Talking

10:18:11  4    isn't cheap, but I can rule on these things, and I tried to

10:18:19  5    give you a heads-up on how I would rule on them.

10:18:22  6         MR. COFFIN:  I think we have made progress in that

10:18:24  7    we've started talking about concrete agreements that we will

10:18:28  8    put in writing.

10:18:29  9         You know, a lot of our discussions have been

10:18:32 10    around basic concepts of what's the -- we didn't understand the

10:18:37 11    plaintiffs' side, what's the real issue.  So Mr. Ratliff

10:18:42 12    explained that to us.  That has helped Ms. Menzies and I go

10:18:46 13    back and say, okay, we understand the real issue.  Let's see if

10:18:48 14    we can come up with some terms that can help get around those

10:18:52 15    issues.

10:18:53 16         So, yes, we've made some progress.  I will say

10:18:56 17    this, Your Honor -- and perhaps this will give the Court some

10:18:59 18    comfort -- and that is, we have agreed that if we haven't

10:19:01 19    reached an agreement by the end of this week, then we'll tell

10:19:07 20    the Court.

10:19:08 21         THE COURT:  Yes, and I'll go ahead and rule.  I mean,

10:19:11 22    that's what I'm here for.

10:19:12 23         In an MDL setting -- and I've said this to

10:19:16 24    liaison counsel, and I will say in it the big meeting -- you

10:19:20 25    know, your opponent is not your enemy.  We expect zealous

**OFFICIAL TRANSCRIPT**

10:19:25  1    representation, but your opponent is also your partner in

10:19:29  2    developing the case to the point where it can be presented to a

10:19:33  3    jury or to the judge, if there are certain issues.  But your

10:19:36  4    opponent isn't your enemy.

10:19:38  5         I'm speaking generally, not about this particular

10:19:42  6    discussion.  But we need to come out of our trenches and meet

10:19:47  7    somewhere in the middle, and discuss these issues and try to

10:19:49  8    resolve them, because when we get into an exchange of

10:19:54  9    motions -- I'm here to rule on motions.  I'm happy to rule on

10:19:57 10    whichever ones you want me to rule on.  I'm happy to rule on

10:20:01 11    these.  But at some point, we have got to be able to, as you

10:20:05 12    say, identify what specifically you need from the defendants.

10:20:09 13         I understand that you all have been before the

10:20:11 14    Magistrate.  Let's get to the point where we're exchanging

10:20:14 15    information on a more informal basis, as opposed to battling it

10:20:20 16    out with motions pending and oppositions and protective orders.

10:20:25 17    I'm commenting to everybody that we are at a point in this MDL

10:20:29 18    where we should be able to do this a little easier.

10:20:32 19         MR. COFFIN:  Understood, Your Honor.  We appreciate

10:20:35 20    that, we really do, because we, from the plaintiffs'

10:20:41 21    perspective, couldn't agree more.  We would like things to move

10:20:45 22    along.  We would like to be able to get documents more quickly.

10:20:48 23    We would like to get over this hurdle of either coming to an

10:20:51 24    agreement or having Your Honor rule on the issue of the French

10:20:56 25    entity being in or out.  So let me assure you that by the end

*OFFICIAL TRANSCRIPT*

10:20:57 1    of this week, we will either have an agreement, or we will not.

10:21:01 2            If Your Honor wants us to give you status along

10:21:05 3    the way, I'm happy to do that as well.  I just want you to know

10:21:08 4    that we have made an earnest effort, in good faith tried to

10:21:13 5    reach an agreement, and we just aren't there yet, and maybe we

10:21:18 6    won't.

10:21:18 7            THE COURT:  What about the motion regarding the

10:21:23 8    disclosure of nonparty interested entities, 559?

10:21:29 9            MR. COFFIN:  That motion has been discussed in the

10:21:31 10   context of how we might reach some larger agreement on all the

10:21:36 11   issues.  But, quite frankly, Your Honor, when Ms. Menzies and

10:21:41 12   Mr. Ratliff and I met a day or two days ago, we did not discuss

10:21:46 13   that motion specifically.  We were focused mostly on the French

10:21:52 14   entity issues.

10:21:53 15           THE COURT:  I take it liaison counsel has conveyed to

10:21:57 16   you my thoughts on that motion?  All parties are aware of what

10:22:01 17   I thought a fair resolution was?

10:22:01 18           MR. COFFIN:  Yes.

10:22:02 19           THE COURT:  If I rule on it, that's exactly what it's

10:22:05 20   going to be.  I've thought about it a great deal.

10:22:08 21           MR. COFFIN:  We understand that.  One of the issues is

10:22:12 22   whether or not our agreement on the other two motions has

10:22:17 23   anything to do with the agreement on the third, so.

10:22:21 24           THE COURT:  But it shouldn't.  You see, that's the

10:22:23 25   thing, it shouldn't.

*OFFICIAL TRANSCRIPT*

10:22:24 1        MR. COFFIN:  Understood.

10:22:25 2        THE COURT:  Get some other people involved on the

10:22:27 3    disclosure issue, and you all keep working on the discovery.

10:22:32 4    It shouldn't.  It's a completely separate issue as far as I'm

10:22:35 5    concerned.  I mean, and this business of, well, you know, I'll

10:22:39 6    trade this for you -- it's an unrelated motion.  In other

10:22:45 7    words, it's going to be granted in part and denied in part.

10:22:48 8    It's going to be pretty much what I told liaison counsel.

10:22:53 9            I'll rule on it now, if you'd like.

10:22:54 10       MR. COFFIN:  I expect that by Friday we will have dealt

10:22:54 11   with that motion as well, and we can determine whether or not

10:22:54 12   we're going to have an agreement on all of it.

10:22:59 13       THE COURT:  That's an easy one.  That's an easy one.  I

10:23:01 14   would think you could get some people from each side to hammer

10:23:05 15   out parameters consistent with what I've said to liaison

10:23:10 16   counsel, and get that one done.

10:23:14 17       MR. COFFIN:  We will focus on that as well, Your Honor.

10:23:17 18       THE COURT:  Ms. Menzies.

10:23:19 19       MS. MENZIES:  Yes.  Ms. Menzies for the plaintiffs.

10:23:19 20           Just to add something here too.  We had talked

10:23:27 21   with Mr. Ratliff, as well, about potentially seeking some

10:23:29 22   guidance from you.  This has been somewhat of a complicated

10:23:35 23   negotiation and discussion, and so we had asked your

10:23:37 24   availability for Monday.  We may seek your availability, maybe

10:23:40 25   as early as tomorrow, for some guidance, if we deem it

*OFFICIAL TRANSCRIPT*

10:23:45  1    necessary.

10:23:45  2              THE COURT:  Yes, I'm willing to do that.  I don't know

10:23:47  3    about my availability, but you can certainly e-mail my clerk,

10:23:51  4    and I'll try to make myself available.

10:23:54  5              As far as guidance is concerned, if there is a

10:23:57  6    particular knot, a Gordian knot that I can help cut, that's

10:24:03  7    fine.  I have given guidance with liaison counsel, I believe,

10:24:06  8    as to what my thoughts were on the motion for protective order

10:24:09  9    and the motion to compel.

10:24:11 10              So I can help you try to fine tune it, but there

10:24:17 11    are certain limits to that.  You know, you're going to have to

10:24:21 12    present both sides to me, and give me some time to think about

10:24:25 13    it.  It's not going to be one of these things where I can just

10:24:28 14    pick up the phone, and I'll give you these pearls of wisdom,

10:24:32 15    and everyone will be happy.  I like to give it some thought.

10:24:35 16              If you do run into a particular problem or set of

10:24:38 17    problems that you think I can tell you one way or the other, do

10:24:40 18    it this way, or do it that way, I'll be happy to do that.

10:24:44 19    Otherwise, I might as well rule.

10:24:47 20         MS. MENZIES:  Certainly.  We wouldn't be looking for

10:24:49 21    some form of resolution from the Court in the context of the

10:24:52 22    negotiated agreement, but just -- even by way of update.

10:24:54 23         THE COURT:  Yes, I'll do whatever I can to help.

10:24:56 24         MS. MENZIES:  Thank you for your time.

10:24:56 25         MR. MOORE:  Your Honor, very briefly.  I was not at the

**OFFICIAL TRANSCRIPT**

10:24:58  1    meeting with Mr. Coffin, but the report that I got is very

10:25:01  2    consistent with his remarks, is that we have gotten away from

10:25:04  3    sort of extraneous demands, and are focusing kind of on what

10:25:09  4    the issues are.

10:25:10  5              That has been a two-way street, that we're --

10:25:15  6    they are getting an understanding of why this is important to

10:25:18  7    us, we're getting an important understanding of why this is an

10:25:22  8    issue for them.

10:25:23  9              It's always been -- and I think it's been

10:25:24 10    discussed in court -- really, accessibility to evidence outside

10:25:28 11    the United States.  So that's where the discussion, I think, is

10:25:30 12    focused, and we're hopeful that we'll be able to tell the Court

10:25:34 13    later this week that we've worked it out.

10:25:36 14         THE COURT:  Good.  Well, we'll wait to hear from you.

10:25:40 15              Mr. Olinde, did you want to say something?  I

10:25:43 16    think you were about to get up.

10:25:43 17         MR. OLINDE:  No, Your Honor, I was just moving in my

10:25:45 18    chair.

10:25:46 19         THE COURT:  Okay.  Well, good.  Thank you all for the

10:25:48 20    briefing on the material we did cover today.  I really

10:25:52 21    appreciate it.  As always in the case, the briefing has been

10:25:54 22    very helpful and very well prepared and researched.  I

10:25:58 23    appreciate that.

10:25:59 24              All right.  Thank you all very much.

         25         (WHEREUPON, at 10:26 a.m., the Court was in recess.)

                              *OFFICIAL TRANSCRIPT*

1                       REPORTER'S CERTIFICATE

2

3          I, Cathy Pepper, Certified Realtime Reporter, Registered

4    Merit Reporter, Certified Court Reporter in and for the State

5    of Louisiana, Official Court Reporter for the United States

6    District Court, Eastern District of Louisiana, do hereby

7    certify that the foregoing is a true and correct transcript to

8    the best of my ability and understanding from the record of the

9    proceedings in the above-entitled and numbered matter.

10

11                              _s/Cathy Pepper_____

12                              Cathy Pepper, CRR, RMR, CCR
                                Certified Realtime Reporter
13                              Registered Merit Reporter
                                Official Court Reporter
14                              United States District Court
                                Cathy_Pepper@laed.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25

                       *OFFICIAL TRANSCRIPT*

## 1

**1** [2] - 21:6, 23:9
**100** [1] - 14:6
**1001** [1] - 3:5
**109** [1] - 16:18
**10:26** [1] - 40:25
**1100** [2] - 1:21, 2:23
**112** [2] - 8:25, 9:24
**12** [1] - 9:10
**12(b)(6** [1] - 21:1
**1277512** [1] - 32:18
**13** [1] - 15:14
**1332** [2] - 29:1, 31:11
**1361** [1] - 32:22
**14** [3] - 15:14, 21:14, 24:7
**1400** [1] - 1:25
**1441** [1] - 29:1
**1441(b** [3] - 31:4, 31:14, 31:24
**1441(b)(2** [2] - 30:14, 31:6
**15** [1] - 8:7
**1515** [1] - 1:25
**16-MD-2740** [1] - 1:6
**189** [1] - 9:24
**190** [2] - 10:14, 16:7

## 2

**2** [6] - 21:10, 23:16, 24:6, 24:23, 25:12
**20** [1] - 8:1
**200** [2] - 2:16
**2009** [1] - 23:12
**2012** [1] - 32:20
**2017** [4] - 5:3, 26:11, 30:15, 32:18
**212** [2] - 9:1, 10:15
**215** [3] - 15:12, 16:7, 16:18
**22** [1] - 8:25
**220** [1] - 18:15
**22ND** [1] - 3:5
**2300** [1] - 2:22
**24** [1] - 9:1
**26** [2] - 4:9, 4:10
**2657** [1] - 22:3
**2700** [1] - 2:8
**2740** [1] - 5:10
**28** [6] - 29:1, 30:14, 31:4, 31:6, 31:11
**2800** [2] - 1:21, 2:12

## 3

**3** [2] - 21:6, 23:9
**30** [4] - 1:7, 4:12, 4:13, 5:3
**3017** [1] - 1:7
**30305** [1] - 2:17
**3333** [1] - 2:17
**3650** [1] - 1:17
**368220** [1] - 32:20

## 4

**400** [2] - 2:4, 2:8
**45202** [1] - 2:13
**46** [2] - 9:1, 14:6
**469** [2] - 26:10, 26:19
**469....................................
....** [1] - 4:10
**489** [2] - 6:18, 20:23
**489..........................
** [1] - 4:5

## 5

**500** [1] - 3:13
**504** [1] - 3:14
**505(b)(2** [12] - 15:2, 15:4, 15:10, 15:13, 15:15, 16:1, 16:11, 16:13, 16:20, 16:24, 17:4, 19:23
**505(b)(2)** [1] - 7:10
**51** [1] - 3:5
**542** [1] - 33:17
**559** [2] - 33:12, 37:8
**56** [1] - 11:6
**577726** [1] - 23:12
**589-7779** [1] - 3:14

## 6

**6** [3] - 4:5, 4:7, 30:15
**600** [1] - 2:12
**620** [1] - 26:16
**626** [1] - 33:15
**628** [1] - 26:21
**646** [1] - 26:23
**663** [1] - 6:22
**673** [1] - 30:11
**673............................
....** [1] - 4:13
**6TH** [1] - 2:4
**6th** [1] - 26:11

## 7

**7** [2] - 21:6, 23:9
**701** [2] - 1:17, 3:9
**70112** [1] - 1:25
**70130** [2] - 2:8, 3:14
**70139** [1] - 1:18
**70163** [2] - 1:22, 2:23
**70802** [1] - 3:9
**75** [1] - 15:13
**773** [1] - 6:23
**785** [1] - 32:21

## 8

**8** [10] - 9:11, 10:8, 14:12, 21:10, 23:16, 24:6, 24:23, 24:24, 25:12

## 9

**9** [3] - 9:11, 10:8, 14:13
**9(b** [2] - 9:21, 14:20
**9(b)** [1] - 21:1
**90245** [1] - 2:5
**9:30** [1] - 1:7

## A

**a.m** [1] - 40:25
**A.M** [1] - 1:7
**ability** [3] - 29:2, 32:11, 41:8
**able** [6] - 8:10, 25:3, 36:11, 36:18, 36:22, 40:12
**ably** [1] - 15:6
**above-entitled** [1] - 41:9
**accessibility** [1] - 40:10
**ACCORD** [1] - 3:7
**accurately** [1] - 14:3
**Act** [1] - 10:10
**ACTAVIS** [1] - 2:10
**acted** [1] - 32:6
**ACTION** [1] - 1:6
**action** [10] - 9:5, 9:13, 9:15, 11:25, 15:12, 17:6, 17:19, 17:20, 22:15
**actions** [6] - 15:21, 16:18, 28:22, 29:6, 29:11, 30:3
**add** [3] - 20:16, 31:12,

38:20
**add-on** [1] - 31:12
**additional** [3] - 23:18, 29:7, 29:13
**address** [3] - 8:17, 9:22, 30:4
**addressed** [1] - 23:14
**addressing** [1] - 7:10
**adequate** [1] - 24:3
**administered** [1] - 27:21
**administrative** [1] - 23:2
**adopt** [1] - 22:7
**adverse** [1] - 19:19
**advertisements** [1] - 19:11
**Advertising** [1] - 10:24
**advertising** [3] - 16:9, 16:10, 16:19
**advisement** [1] - 30:16
**afield** [1] - 10:25
**aforementioned** [1] - 27:16
**agency** [1] - 11:4
**agents** [1] - 11:15
**aggressive** [1] - 19:14
**ago** [2] - 33:18, 37:12
**agree** [1] - 36:21
**agreed** [1] - 35:18
**agreement** [11] - 34:17, 35:1, 35:19, 36:24, 37:1, 37:5, 37:10, 37:22, 37:23, 38:12, 39:22
**agreements** [1] - 35:7
**agrees** [2] - 23:25, 33:5
**ahead** [6] - 5:25, 6:24, 7:4, 20:20, 25:14, 35:21
**AIDED** [1] - 3:17
**air** [2] - 13:8, 13:11
**Alabama** [1] - 17:24
**ALL** [1] - 1:9
**allegation** [4] - 16:12, 16:23, 16:24, 18:20
**allegations** [32] - 8:18, 8:20, 8:24, 9:2, 9:7, 9:23, 9:25, 10:6, 10:8, 10:13, 11:23, 12:7, 13:14, 14:7, 14:18, 14:20, 15:9, 15:12, 15:14, 15:16, 15:19, 15:22, 16:1, 16:10, 16:14, 17:5, 20:5, 22:4, 22:20, 23:1, 23:5

**allege** [2] - 21:11, 23:16
**alleged** [7] - 9:12, 10:16, 11:13, 12:25, 21:17, 26:14, 29:3
**allow** [3] - 20:6, 22:22, 23:13
**allowing** [1] - 23:9
**almost** [1] - 19:25
**alone** [1] - 11:20
**alopecia** [4] - 10:4, 12:15, 19:17, 19:21
**amendment** [1] - 21:15
**analysis** [2] - 18:1, 32:16
**analyze** [1] - 9:11
**AND** [2] - 2:21, 3:3
**Angeles** [1] - 34:14
**APPEARANCES** [3] - 1:14, 2:1, 3:1
**appearances** [2] - 6:25, 7:4
**applicable** [2] - 27:1, 30:19
**appointed** [1] - 31:22
**appreciate** [5] - 6:13, 20:17, 36:19, 40:21, 40:23
**approach** [1] - 26:5
**approaching** [1] - 14:19
**appropriate** [2] - 28:15, 29:14
**appropriately** [1] - 23:14
**approval** [1] - 15:17
**approved** [1] - 15:17
**argue** [1] - 27:19
**argued** [1] - 25:14
**arguing** [1] - 30:12
**argument** [9] - 7:15, 10:7, 11:18, 13:15, 13:23, 26:12, 30:6, 30:15, 30:18
**arguments** [3] - 21:3, 21:5, 27:1
**articulated** [2] - 9:5, 10:14
**AS** [1] - 2:21
**asserted** [1] - 9:13
**associated** [1] - 14:1
**assure** [2] - 34:13, 36:25
**ATLANTA** [1] - 2:17
**attached** [1] - 30:22
**AUGUST** [2] - 1:7, 5:3
**authority** [1] - 26:3
**authorized** [4] - 29:15, 29:19, 31:3, 31:21

*OFFICIAL TRANSCRIPT*

**availability** [3] - 38:24, 39:3
**available** [2] - 14:16, 39:4
**Aventis** [3] - 26:22, 33:14, 33:16
**AVENUE** [1] - 3:5
**aware** [3] - 9:8, 16:25, 37:16
**axiomatic** [1] - 31:1

## B

**B-275** [1] - 3:13
**bad** [1] - 19:7
**bags** [2] - 13:9, 13:11
**balance** [1] - 11:9
**bar** [1] - 14:14
**Barbier** [1] - 5:12
**barred** [1] - 18:4
**BARRIOS** [3] - 1:16, 1:16, 7:22
**Barrios** [1] - 7:22
**base** [1] - 10:17
**based** [5] - 18:22, 19:1, 21:5, 24:11, 34:1
**basic** [1] - 35:10
**basis** [4] - 18:19, 20:11, 25:12, 36:15
**BATON** [1] - 3:9
**battling** [1] - 36:15
**BAUDIN** [1] - 1:24
**becomes** [1] - 12:24
**BEFORE** [1] - 1:12
**begin** [3] - 5:9, 7:5, 8:25
**beginning** [1] - 10:14
**behalf** [8] - 7:8, 7:13, 7:15, 7:18, 15:1, 15:3, 17:11, 34:3
**belief** [5] - 17:12, 18:23, 27:24, 28:9, 33:21
**Bell** [2] - 32:16, 32:19
**benefits** [1] - 5:18
**BENJAMIN** [1] - 1:20
**BERNE** [1] - 2:11
**best** [3] - 12:9, 23:13, 41:8
**better** [3] - 11:19, 13:15, 18:20
**between** [1] - 8:8
**beyond** [6] - 18:9, 18:11, 18:14, 18:16, 19:10, 19:24
**big** [1] - 35:24
**bit** [1] - 6:12
**boils** [1] - 8:21

**BOULEVARD** [1] - 2:4
**breach** [8] - 9:18, 10:17, 13:6, 13:10, 21:12, 21:23, 23:17, 24:1
**brief** [2] - 15:5, 19:5
**briefing** [11] - 7:1, 20:17, 21:15, 27:5, 28:21, 29:7, 29:13, 29:23, 32:17, 40:20, 40:21
**briefly** [2] - 16:2, 39:25
**bring** [1] - 18:2
**Bristol** [1] - 29:25
**Bristol-Myers** [1] - 29:25
**brought** [1] - 18:5
**BRUCE** [1] - 1:17
**Bruce** [2] - 7:14, 17:10
**bunch** [1] - 10:25
**BUSINESS** [1] - 2:20
**business** [2] - 15:19, 38:5
**BY** [12] - 1:16, 1:21, 1:24, 2:3, 2:7, 2:11, 2:16, 2:22, 3:4, 3:8, 3:16, 3:17

## C

**California** [5] - 26:10, 27:12, 28:10, 30:1, 30:2
**CALIFORNIA** [1] - 2:5
**California's** [1] - 27:23
**CALIFORNIA..............
... [1] - 4:9
**CALLED** [1] - 5:4
**campaign** [4] - 18:25, 19:1, 19:6, 19:14
**cancer** [4] - 11:19, 12:3, 12:5, 14:2
**Candyse** [1] - 27:10
**cannot** [2] - 12:21, 23:25
**car** [2] - 13:3, 13:5, 13:8
**carefully** [3] - 21:2, 26:24, 30:17
**Case** [1] - 22:3
**case** [32] - 7:1, 8:22, 11:12, 11:24, 12:5, 12:23, 12:25, 14:15, 17:16, 17:17, 17:23, 18:7, 18:10, 18:11, 19:16, 20:3, 22:5, 22:10, 22:17, 22:20, 23:15, 24:12, 25:18,

26:3, 26:20, 27:6, 27:7, 32:9, 32:18, 34:21, 36:2, 40:21
**case-specific** [1] - 22:10
**cases** [11] - 19:4, 21:4, 23:7, 27:6, 28:15, 28:19, 29:21, 30:20, 30:21, 32:17, 33:6
**CASES** [2] - 1:9, 4:8
**Cases** [1] - 26:9
**Castagnola** [1] - 28:1
**CASTEIX** [1] - 1:16
**Cathy** [2] - 41:3, 41:12
**CATHY** [1] - 3:12
**Cathy_Pepper@laed .uscourts.gov** [1] - 41:14
**cathy_Pepper@laed. uscourts.gov** [1] - 3:15
**causation** [1] - 8:19
**causes** [8] - 9:5, 9:13, 9:15, 15:12, 17:6, 17:18, 17:19, 17:20
**CBS** [1] - 10:2
**CCR** [2] - 3:12, 41:12
**CENTRE** [1] - 2:22
**certain** [2] - 36:3, 39:11
**CERTAIN** [1] - 4:8
**Certain** [1] - 26:9
**certainly** [4] - 6:8, 6:16, 39:3, 39:20
**CERTIFICATE** [1] - 41:1
**CERTIFIED** [1] - 3:12
**Certified** [3] - 41:3, 41:4, 41:12
**certify** [1] - 41:7
**CHAD** [1] - 3:8
**CHAFFE** [1] - 2:21
**chair** [1] - 40:18
**challenging** [1] - 8:3
**chance** [1] - 7:3
**change** [1] - 10:5
**changed** [1] - 33:22
**chapter** [1] - 19:11
**characteristic** [1] - 12:1
**cheap** [1] - 35:4
**chemotherapy** [3] - 11:15, 11:17, 27:18
**Cherie** [1] - 5:25
**Chief** [1] - 6:4
**Chris** [2] - 7:12, 34:3
**CHRISTOPHER** [1] - 1:24

**CINCINNATI** [1] - 2:13
**circumstance** [1] - 20:7
**circumstances** [1] - 28:15
**circumvent** [1] - 30:13
**cite** [1] - 16:7
**cited** [3] - 19:4, 19:10, 32:17
**City** [1] - 34:15
**CIVIL** [1] - 1:6
**Civil** [1] - 21:1
**claim** [15] - 9:12, 9:18, 10:9, 11:21, 12:8, 12:20, 12:21, 13:16, 13:18, 14:10, 14:15, 19:8, 20:5, 24:1
**claims** [18] - 9:18, 9:20, 10:17, 13:17, 14:12, 18:3, 18:4, 21:18, 21:24, 23:9, 23:13, 25:4, 25:18, 25:21, 27:11, 28:24, 29:2, 30:2
**class** [1] - 11:25
**clear** [5] - 7:1, 26:2, 33:9, 33:20
**cleared** [1] - 26:1
**clearing** [1] - 6:11
**clearly** [2] - 12:13, 21:16
**CLERK** [1] - 5:7
**clerk** [1] - 39:3
**clever** [1] - 31:13
**Cliff** [2] - 7:8, 14:25
**CLIFTON** [1] - 2:16
**clinical** [2] - 10:1, 19:20
**close** [1] - 14:19
**co** [2] - 7:21, 7:22
**co-liaison** [2] - 7:21, 7:22
**Code** [1] - 29:5
**COFFIN** [12] - 1:24, 1:24, 7:12, 34:3, 35:6, 36:19, 37:9, 37:18, 37:21, 38:1, 38:10, 38:17
**Coffin** [2] - 7:12, 34:3
**coffin** [1] - 40:1
**combination** [1] - 11:15
**comfort** [1] - 35:18
**coming** [1] - 12:2, 36:23
**comment** [2] - 11:7, 14:13
**commenting** [1] - 36:17
**comments** [2] - 8:11,

30:18
**communication** [1] - 33:10
**Communication** [1] - 10:24
**compel** [2] - 33:14, 39:9
**competitors** [1] - 12:17
**Complaint** [12] - 6:19, 15:9, 15:11, 17:14, 20:22, 20:25, 21:11, 21:16, 21:25, 22:19, 23:2, 24:13
**complaint** [23] - 8:16, 8:24, 9:5, 10:22, 11:1, 15:8, 15:24, 16:6, 16:8, 16:15, 17:22, 18:16, 21:9, 22:6, 22:8, 22:9, 22:14, 22:16, 23:3, 24:5, 24:6
**COMPLAINT..............
..........................** [1] - 4:7
**complaints** [4] - 22:7, 22:19, 23:6, 24:11
**completely** [1] - 38:4
**complex** [1] - 18:11
**complexity** [1] - 18:10
**compliance** [1] - 26:17
**complicated** [1] - 38:22
**component** [1] - 25:3
**COMPUTER** [1] - 3:17
**COMPUTER-AIDED** [1] - 3:17
**concealment** [1] - 21:22
**concepts** [1] - 35:10
**concerned** [3] - 22:18, 38:5, 39:5
**conclude** [1] - 9:1
**concluded** [2] - 11:1, 32:24
**conclusion** [1] - 33:1
**concrete** [1] - 35:7
**conduct** [1] - 14:19
**confer** [1] - 29:10
**conference** [1] - 33:18
**Congress** [4] - 31:10, 32:3, 32:14, 32:25
**Congress'** [1] - 31:13
**connected** [2] - 28:4, 29:4
**connecting** [1] - 27:15
**connection** [1] - 24:23, 26:15, 28:12
**consequence** [1] -

10:5
**consider** [2] - 22:4, 25:21
**considered** [4] - 21:2, 26:24, 30:17, 32:24
**considering** [1] - 26:7
**considers** [1] - 22:17
**consistent** [2] - 38:15, 40:2
**consists** [1] - 22:15
**consolidated** [1] - 22:24
**constantly** [1] - 35:2
**constitute** [1] - 21:17
**constitutes** [2] - 8:13, 11:9
**Constitution** [1] - 31:3
**consumer** [1] - 11:25
**contained** [2] - 10:21, 21:7
**contemplate** [1] - 31:24
**context** [6] - 9:10, 11:6, 22:4, 29:15, 37:10, 39:21
**contextual** [1] - 18:10
**CONTINENTAL** [1] - 2:4
**CONTINUED** [2] - 2:1, 3:1
**continuing** [1] - 33:25
**contrary** [1] - 32:6
**controlling** [1] - 30:7
**conveyed** [2] - 12:13, 37:15
**convince** [1] - 29:19
**convinced** [1] - 28:11
**correct** [3] - 23:20, 34:5, 41:7
**Cottrell** [1] - 32:21
**counsel** [25] - 6:24, 7:6, 7:7, 7:21, 7:22, 8:7, 21:14, 23:1, 24:14, 25:20, 27:4, 27:14, 28:2, 28:5, 28:16, 28:20, 29:7, 29:9, 33:19, 33:24, 35:24, 37:15, 38:8, 38:16, 39:7
**Count** [2] - 21:6, 23:9
**count** [3] - 10:11, 10:22, 11:22
**counts** [6] - 8:17, 9:4, 9:8, 12:19, 17:13, 17:15
**Counts** [7] - 21:6, 21:10, 23:9, 23:16, 24:6, 24:23, 25:12
**couple** [2] - 25:14, 33:18

**coupled** [1] - 12:21
**coupling** [1] - 12:19
**course** [4] - 5:23, 21:4, 26:5, 30:6
**Court** [61] - 5:11, 5:23, 5:24, 6:3, 6:7, 6:8, 7:11, 8:11, 8:14, 18:1, 20:6, 20:10, 20:23, 20:24, 21:4, 21:14, 22:1, 22:17, 22:22, 22:25, 23:10, 23:12, 23:18, 23:25, 24:4, 24:10, 26:2, 26:8, 26:11, 26:13, 26:21, 27:22, 28:5, 28:11, 28:13, 29:9, 29:14, 29:25, 30:2, 30:3, 30:10, 30:15, 30:23, 30:24, 31:22, 32:7, 32:15, 32:23, 33:5, 33:7, 33:10, 35:17, 35:20, 39:21, 40:12, 40:25, 41:4, 41:5, 41:6, 41:13, 41:14
**COURT** [26] - 1:1, 3:12, 4:12, 5:4, 5:8, 7:16, 7:19, 7:24, 14:23, 17:8, 18:18, 20:13, 20:15, 34:20, 35:21, 37:7, 37:15, 37:19, 37:24, 38:2, 38:13, 38:18, 39:2, 39:23, 40:14, 40:19
**court** [13] - 5:14, 12:2, 22:14, 26:6, 27:12, 30:6, 31:8, 31:16, 31:19, 31:25, 32:20, 33:4, 40:10
**Court's** [8] - 25:25, 26:17, 27:14, 28:23, 29:2, 29:24, 33:20, 34:1
**court's** [1] - 32:16
**courthouse** [1] - 31:21
**courts** [6] - 26:6, 30:25, 31:1, 31:2, 31:9, 32:24
**COURTS** [1] - 4:9
**Courts** [1] - 26:9
**cover** [3] - 15:16, 16:2, 40:20
**covered** [1] - 15:6
**COX** [1] - 3:8
**crashes** [1] - 13:8
**creates** [1] - 32:13
**CRR** [2] - 3:12, 41:12
**cryptically** [1] - 21:19
**Cty** [1] - 30:1

**cure** [1] - 12:3
**cut** [1] - 39:6

# D

**dangerous** [1] - 14:1
**data** [1] - 10:1
**date** [2] - 24:7, 28:21
**dates** [1] - 28:6
**DAVID** [1] - 1:20
**Dawn** [1] - 7:22
**DAWN** [1] - 1:16
**days** [6] - 21:14, 24:7, 27:5, 28:16, 28:21, 37:12
**DDMAC** [5] - 10:23, 11:4, 11:10, 19:12
**deal** [1] - 37:20
**deals** [1] - 16:8
**dealt** [1] - 38:10
**deceit** [1] - 21:23
**decision** [2] - 25:7, 29:25
**decisions** [1] - 8:14
**declines** [1] - 30:3
**deem** [1] - 38:25
**defeated** [1] - 32:10
**defective** [2] - 13:11, 18:25
**defendant** [14] - 9:16, 9:19, 14:17, 15:15, 16:24, 25:6, 30:13, 30:14, 31:15, 31:23, 32:10, 32:12, 33:13
**defendants** [25] - 12:13, 13:23, 15:3, 15:4, 15:10, 15:13, 16:1, 16:11, 16:13, 16:20, 17:4, 17:13, 19:4, 19:22, 19:23, 20:7, 23:20, 23:22, 24:15, 25:11, 27:19, 30:1, 33:3, 36:12
**DEFENDANTS'** [1] - 4:6
**Defendants'** [1] - 6:18
**defendants'** [3] - 8:5, 21:8, 33:16
**defense** [1] - 7:6
**deficiency** [2] - 16:3, 16:15
**degrees** [1] - 15:9
**Delaware** [5] - 30:9, 30:10, 30:23, 32:21, 33:7
**DELAWARE** [1] - 4:11
**DELAWARE............. .............** [1] - 4:12
**delayed** [1] - 32:4

**demands** [1] - 40:3
**denied** [4] - 21:6, 27:2, 28:2, 38:7
**dependent** [1] - 20:3
**DEPUTY** [1] - 5:7
**described** [1] - 19:18
**desire** [1] - 28:23
**detail** [2] - 22:10, 27:8
**details** [1] - 34:16
**determination** [1] - 11:4
**determine** [1] - 38:11
**determined** [1] - 11:2
**detriments** [1] - 5:18
**developing** [1] - 36:2
**device** [1] - 22:6
**different** [4] - 5:23, 14:17, 17:23, 32:8
**differs** [1] - 15:8
**dilatory** [1] - 32:7
**directed** [1] - 29:7
**disagree** [1] - 10:6
**disclosed** [1] - 19:22
**disclosure** [3] - 33:12, 37:8, 38:3
**discovery** [5] - 20:6, 20:8, 25:5, 25:22, 38:3
**discuss** [6] - 16:18, 27:7, 30:20, 33:25, 36:7, 37:12
**discussed** [4] - 16:7, 33:19, 37:9, 40:10
**discussing** [1] - 5:13
**discussion** [5] - 5:17, 8:13, 36:6, 38:23, 40:11
**discussions** [2] - 34:2, 35:9
**Dismiss** [5] - 6:18, 16:4, 20:22, 24:10, 28:17
**dismiss** [6] - 17:22, 20:4, 20:12, 21:8, 30:2
**DISMISS** [1] - 4:6
**dismissal** [3] - 17:13, 17:15, 20:24
**dispute** [1] - 14:15
**distribute** [1] - 27:17
**distributed** [2] - 27:21, 28:6
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [7] - 5:23, 22:2, 32:19, 32:22, 41:6, 41:14
**district** [4] - 22:2, 32:15, 32:20, 32:24
**diversity** [2] - 31:9,

31:13
**divided** [1] - 8:8
**Division** [1] - 10:23
**DIVISION** [1] - 2:15
**DOCETAXEL** [1] - 1:4
**Docetaxel** [4] - 5:10, 27:17, 27:21, 28:7
**docket** [1] - 5:9
**docketing** [1] - 33:2
**dockets** [1] - 33:4
**doctor** [1] - 24:15
**doctors** [2] - 19:15, 24:16
**DOCUMENT** [4] - 1:8, 4:5, 4:10, 4:13
**Document** [13] - 6:17, 6:22, 6:23, 20:23, 26:10, 26:16, 26:19, 26:21, 26:23, 30:11, 33:12, 33:15, 33:17
**documentation** [2] - 6:21, 31:20
**documents** [2] - 20:8, 36:22
**DOING** [1] - 2:20
**done** [2] - 32:10, 38:16
**door** [1] - 32:2
**DOUGLAS** [1] - 2:7
**Douglas** [1] - 7:6
**down** [1] - 8:21
**Dr** [3] - 5:15, 6:1, 6:6
**Drug** [1] - 10:23
**drug** [5] - 19:2, 19:7, 19:16
**drugs** [1] - 19:3
**during** [1] - 8:6

# E

**e-mail** [2] - 33:10, 39:3
**early** [1] - 38:25
**earnest** [1] - 37:4
**easier** [3] - 25:19, 25:20, 36:18
**Eastern** [2] - 5:23, 41:6
**EASTERN** [1] - 1:1
**easy** [2] - 38:13
**economic** [1] - 18:3
**effect** [2] - 12:8, 19:20
**effective** [1] - 12:16
**effectively** [1] - 32:10
**effectiveness** [1] - 24:2
**effects** [5] - 14:1, 14:2, 19:3, 24:3, 24:19
**effectuate** [1] - 32:11

**effectuated** [1] - 30:12
**efficacious** [1] - 19:2
**efficacy** [5] - 11:16, 12:12, 12:16, 13:14
**effort** [3] - 30:13, 34:13, 37:4
**eight** [7] - 9:4, 9:8, 21:18, 21:23, 21:24, 24:17
**either** [8] - 15:5, 19:22, 23:22, 31:25, 33:23, 34:10, 36:23, 37:1
**EL** [1] - 2:5
**electronic** [1] - 33:2
**electronically** [1] - 32:1
**eliminating** [1] - 11:19
**EMANUEL** [1] - 3:4
**embarked** [1] - 19:14
**emphasis** [1] - 30:25
**employee** [1] - 31:21
**employs** [1] - 22:6
**encourage** [1] - 29:9
**end** [2] - 35:19, 36:25
**endeavored** [1] - 34:5
**enemy** [2] - 35:25, 36:4
**ENERGY** [1] - 2:22
**ENGELHARDT** [1] - 1:12
**entertain** [1] - 20:10
**entirely** [1] - 16:8
**entirety** [3] - 26:24, 29:6, 30:17
**entities** [2] - 33:13, 37:8
**entitled** [2] - 25:11, 41:9
**entity** [3] - 31:25, 36:25, 37:14
**equally** [1] - 30:7
**Ernys** [3] - 27:6, 28:19, 28:24
**Ernys-Kofler** [3] - 27:6, 28:19, 28:24
**esoteric** [1] - 8:12
**especially** [2] - 20:7, 24:21
**ESQ** [11] - 1:16, 1:17, 1:21, 1:24, 2:3, 2:7, 2:11, 2:16, 2:22, 3:4, 3:8
**essentially** [2] - 9:24, 21:7
**establish** [3] - 10:3, 11:23, 27:20
**established** [1] - 13:16
**event** [1] - 19:19

**evidence** [2] - 27:16, 40:10
**exactly** [1] - 37:19
**example** [2] - 13:2, 18:2
**excess** [2] - 14:1, 31:9
**exchange** [1] - 36:8
**exchanging** [1] - 36:14
**exists** [1] - 26:14
**expect** [2] - 35:25, 38:10
**expected** [1] - 22:10
**expecting** [1] - 8:12
**experienced** [1] - 6:11
**explained** [2] - 22:14, 32:23, 35:12
**explaining** [1] - 22:3
**express** [18] - 9:15, 9:19, 10:19, 13:4, 13:7, 13:10, 14:7, 14:10, 21:12, 21:16, 21:23, 23:17, 23:21, 23:22, 24:1, 24:5, 24:21
**expressed** [1] - 33:21
**expressly** [3] - 13:24, 31:10
**extension** [1] - 31:13
**extraneous** [1] - 40:3

### F

**F.Supp.2d** [1] - 32:21
**facility** [1] - 27:17
**fact** [6] - 18:15, 19:18, 19:20, 20:3, 31:15, 34:24
**facts** [3] - 9:11, 14:4, 17:20
**factual** [11] - 8:24, 9:2, 9:7, 9:23, 14:7, 15:12, 15:14, 16:10, 16:14, 17:5, 20:11
**fail** [1] - 14:12
**failed** [2] - 28:2, 32:5
**failure** [8] - 8:22, 9:24, 10:9, 12:20, 12:22, 12:23, 17:16, 21:20
**fair** [2] - 11:8, 37:17
**faith** [1] - 37:4
**Fallon** [1] - 5:12
**false** [4] - 9:19, 11:2, 11:8, 13:6
**far** [3] - 10:25, 38:4, 39:5
**fashion** [1] - 32:7
**favor** [1] - 30:24
**FDA** [7] - 11:1, 11:2,

15:17, 15:20, 16:12, 19:12
**Federal** [1] - 20:25
**federal** [7] - 26:6, 30:25, 31:1, 31:7, 31:9, 32:2, 32:13
**FEMA** [2] - 17:23, 20:2
**few** [2] - 5:22, 15:3
**file** [1] - 28:16
**filed** [8] - 6:22, 22:20, 23:7, 24:12, 26:18, 26:22, 27:13, 33:13
**filings** [1] - 28:18
**finally** [1] - 28:18
**fine** [2] - 39:7, 39:10
**finer** [2] - 24:8, 29:12
**finish** [1] - 8:4
**firmly** [1] - 18:15
**first** [3] - 9:15, 30:4, 31:19
**fit** [1] - 13:24
**five** [5] - 13:4, 13:7, 13:12, 21:21, 34:9
**flesh** [1] - 22:20
**flew** [2] - 34:14, 34:15
**FLOOR** [2] - 2:4, 3:5
**focus** [7] - 8:15, 8:20, 9:9, 9:14, 11:13, 11:16, 38:17
**focused** [2] - 37:13, 40:12
**focusing** [1] - 40:3
**follow** [1] - 7:25
**FOR** [7] - 1:16, 2:7, 2:10, 2:15, 2:19, 3:3, 3:7
**foregoing** [1] - 41:7
**form** [6] - 21:9, 22:7, 22:16, 22:19, 23:6, 39:21
**Form** [9] - 6:19, 20:22, 20:25, 21:11, 21:15, 21:24, 22:18, 23:2, 24:13
**FORM** [1] - 4:6
**FORMERLY** [1] - 2:20
**forms** [1] - 14:2
**formulating** [1] - 23:1
**forth** [6] - 9:12, 10:9, 11:21, 21:24, 24:13, 24:25
**forum** [1] - 30:13
**forward** [1] - 23:14
**four** [4] - 10:22, 13:6, 17:24, 21:21
**framework** [1] - 22:3
**Francisco** [1] - 30:1
**frankly** [1] - 37:11
**fraud** [6] - 16:2, 16:16, 19:7, 21:22, 22:4,

23:6
**fraudulent** [4] - 10:19, 14:19, 21:21, 21:22
**French** [2] - 36:24, 37:13
**Friday** [1] - 38:10
**friends** [1] - 32:19
**FRITCHIE** [1] - 2:7
**Fuller** [1] - 28:1
**function** [1] - 23:2
**furthermore** [1] - 29:24

### G

**GAINSBURGH** [1] - 1:20
**gamesmanship** [1] - 33:3
**Gardner** [1] - 28:1
**gather** [1] - 5:19
**generalized** [1] - 28:5
**generally** [2] - 22:23, 36:5
**generic** [2] - 27:17, 28:7
**gentlemen** [2] - 5:20, 6:13
**Georgia** [1] - 32:22
**GEORGIA** [1] - 2:17
**GIBBS** [1] - 2:3
**given** [2] - 33:2, 39:7
**gleaned** [1] - 20:2
**goals** [1] - 23:10
**GONZALEZ** [1] - 3:4
**Gordian** [1] - 39:6
**granted** [7] - 16:4, 17:3, 27:2, 27:11, 30:21, 33:6, 38:7
**granting** [1] - 24:10
**great** [2] - 17:17, 37:20
**greater** [3] - 11:16, 12:16, 19:2
**GREENBURG** [1] - 2:15
**ground** [1] - 15:5
**grounds** [1] - 32:13
**group** [2] - 23:23, 24:22
**GROUP** [1] - 2:3
**guarantees** [1] - 13:21
**guess** [1] - 17:14
**guests** [1] - 5:11
**guidance** [4] - 38:22, 38:25, 39:5, 39:7

### H

**hammer** [1] - 38:14
**handled** [1] - 17:21
**happy** [5] - 36:9, 36:10, 37:3, 39:15, 39:18
**hash** [1] - 34:16
**Hawkins** [1] - 32:21
**heads** [1] - 35:5
**heads-up** [1] - 35:5
**HEALTHCARE** [1] - 3:7
**hear** [1] - 40:14
**heard** [1] - 17:12
**HEARD** [1] - 1:12
**hearing** [1] - 6:9
**HEARING** [1] - 1:11
**held** [2] - 26:11, 30:15
**Helicopter** [2] - 32:16, 32:20
**help** [4] - 35:14, 39:6, 39:10, 39:23
**helped** [1] - 35:12
**helpful** [1] - 40:22
**hereby** [1] - 41:6
**Hicks** [1] - 28:25
**high** [2] - 14:14, 19:21
**High** [1] - 6:3
**hinge** [1] - 32:25
**hit** [1] - 18:7
**Honor** [31] - 7:9, 7:12, 7:17, 7:20, 8:25, 9:8, 10:12, 11:21, 13:18, 14:11, 14:25, 17:2, 17:7, 17:10, 17:18, 17:21, 18:13, 19:24, 20:14, 34:3, 34:5, 34:8, 34:14, 35:17, 36:19, 36:24, 37:2, 37:11, 38:17, 39:25, 40:17
**Honor's** [1] - 18:6
**HONORABLE** [1] - 1:12
**hopeful** [1] - 40:12
**hopefully** [1] - 6:9
**hoping** [1] - 33:9
**HOSPIRA** [4] - 2:19, 2:20, 2:21, 3:3
**hours** [1] - 34:9
**hundred** [1] - 9:2
**hurdle** [3] - 9:21, 26:1, 36:23

### I

**idea** [1] - 31:14

identified [4] - 21:18, 21:24, 24:14, 24:21
identify [2] - 25:3, 36:12
identifying [2] - 21:16, 25:9
immediate [1] - 32:1
importance [1] - 34:21
important [4] - 15:7, 34:18, 40:6, 40:7
improperly [1] - 28:14
IN [1] - 1:4
inappropriate [1] - 20:4
INC [6] - 2:11, 2:19, 2:21, 3:3, 3:8
Inc [2] - 7:8, 15:1
inclement [1] - 6:10
inclination [1] - 29:20
include [1] - 22:10
including [1] - 30:19
incorporate [1] - 9:6
incorporated [1] - 15:18
increased [4] - 10:3, 11:16, 13:14, 33:3
indefinitely [1] - 32:5
indicated [2] - 8:6, 29:17
individual [7] - 22:7, 22:12, 22:16, 23:7, 24:11, 24:12, 24:15
individualized [3] - 26:13, 28:3, 29:3
individuals [1] - 12:8
informal [1] - 36:15
information [13] - 5:19, 14:16, 19:20, 23:19, 26:14, 27:15, 27:19, 27:23, 27:24, 28:3, 28:9, 29:3, 36:15
injured [1] - 13:9
injuries [3] - 11:24, 12:24, 13:10
inquiring [1] - 29:13
insofar [2] - 22:17, 33:20
instead [1] - 35:2
Institute [3] - 6:4, 6:6, 6:7
insufficient [3] - 10:8, 27:20, 28:8
intended [2] - 13:25, 32:25
intentional [1] - 14:19
interest [1] - 23:13
interested [4] - 24:9, 25:8, 33:13, 37:8
intermediaries [1] -

19:15
intermediary [1] - 25:2
internet [1] - 10:1
involved [4] - 17:23, 17:24, 26:15, 38:2
involves [1] - 31:18
Iqbal [1] - 8:13
IRWIN [1] - 2:7
Isham [1] - 28:25
isolating [1] - 24:20
issue [20] - 10:12, 11:5, 11:11, 11:12, 11:24, 12:12, 12:25, 16:3, 16:16, 18:3, 20:10, 32:7, 32:24, 34:18, 35:11, 35:13, 36:24, 38:3, 38:4, 40:8
issues [17] - 7:2, 8:16, 8:17, 15:16, 16:2, 16:17, 20:3, 20:17, 30:4, 34:21, 35:15, 36:3, 36:7, 37:11, 37:14, 37:21, 40:4
item [1] - 14:9

## J

Jenkins [1] - 27:10
Joann [1] - 27:9
JOHN [1] - 2:22
John [1] - 7:9
Johnson [1] - 28:2
joined [1] - 28:14
Josephine [1] - 28:25
judge [4] - 6:3, 6:5, 25:18, 36:3
Judge [8] - 5:12, 5:15, 6:1, 6:3, 8:5
JUDGE [1] - 1:12
judges [1] - 30:8
judgment [2] - 20:9, 23:15
Judicial [3] - 6:4, 6:5, 6:6
Judy [1] - 28:2
July [2] - 26:11, 30:15
jurisdiction [13] - 25:15, 25:24, 26:1, 26:6, 26:7, 30:5, 30:25, 31:2, 31:8, 31:9, 31:14, 32:2, 32:13
jurisprudence [1] - 30:7
jury [2] - 20:11, 36:3
justice [1] - 23:13

## K

Kang [3] - 5:15, 6:1, 6:3
Kansas [1] - 34:15
KAREN [1] - 2:3
Karen [1] - 7:17
keep [1] - 38:3
KEOGH [1] - 3:8
key [1] - 21:4
kind [1] - 40:3
KINGSDORF [5] - 1:16, 1:17, 17:10, 18:24, 20:14
Kingsdorf [3] - 7:14, 7:9, 17:11
Klara [1] - 28:24
knot [2] - 39:6
knowledge [2] - 15:22, 16:25
known [1] - 12:14
knows [1] - 18:13
Kofler [3] - 27:6, 28:19, 28:24
Korea [2] - 5:16, 6:7
KURT [1] - 1:12

## L

label [2] - 11:14, 19:16
labeling [2] - 14:8, 15:17, 15:18
lack [1] - 34:13
lacks [1] - 11:8
LAMBERT [2] - 1:21, 7:20
Lambert [1] - 7:21
language [4] - 11:8, 11:9, 21:17, 24:5
larger [1] - 37:10
last [1] - 8:6
late [1] - 33:24
Laugelle [3] - 32:19, 32:23, 33:5
LAW [1] - 2:3
law [3] - 27:1, 29:19, 30:19
laws [2] - 17:24, 18:4
laxer [1] - 18:11
Le [1] - 6:6
learned [2] - 19:15, 25:2
least [1] - 8:5
leave [1] - 29:22
led [1] - 19:17
Lee [2] - 5:15, 6:1
legs [1] - 12:21
lengths [1] - 17:17

less [1] - 34:9
letter [2] - 11:4, 11:10
letters [6] - 10:22, 11:7, 15:20, 16:12, 19:12
level [4] - 18:8, 18:9, 18:12, 28:13
liability [8] - 8:20, 9:3, 9:16, 9:17, 10:18, 11:23, 21:11, 23:17
LIABILITY [1] - 1:5
Liability [3] - 5:10, 10:10, 23:11
liaison [11] - 7:6, 7:10, 7:21, 7:22, 8:7, 33:19, 35:24, 37:15, 38:8, 38:15, 39:7
liberal [1] - 28:9
light [1] - 29:24
likelihood [1] - 33:22
likewise [1] - 22:17
limine [1] - 11:6
limit [1] - 29:1
limitations [1] - 22:25
limited [3] - 26:6, 30:25, 31:2
limits [2] - 8:3, 39:11
Lisa [1] - 28:25
list [1] - 25:10
listed [1] - 30:21
litigate [2] - 11:5, 11:12
Litigation [2] - 5:10, 23:11
LITIGATION [1] - 1:5
litigation [7] - 5:15, 5:18, 17:23, 18:8, 22:2, 23:8, 29:22
LLC [4] - 2:20, 3:4, 26:22, 33:14
local [1] - 32:12
LONG [1] - 4:6
look [4] - 9:23, 13:19, 15:11, 16:5
looking [3] - 12:9, 31:4, 39:20
looks [1] - 6:11
Los [1] - 34:14
loss [1] - 18:3
LOUISIANA [9] - 1:1, 1:6, 1:18, 1:22, 1:25, 2:8, 2:23, 3:9, 3:14
Louisiana [3] - 17:25, 41:5, 41:6
lower [1] - 22:22

## M

MADISON [1] - 3:5

Magistrate [1] - 36:14
mail [2] - 33:10, 39:3
MAIN [1] - 3:9
management [1] - 25:19
manner [1] - 32:9
manufacturer's [1] - 24:2
MARA [1] - 3:4
Margarett [1] - 28:1
marketing [7] - 16:9, 16:10, 16:19, 18:25, 19:1, 19:6, 19:14
Marketing [1] - 10:23
Mary [1] - 28:1
MASTER [1] - 4:6
master [7] - 17:22, 22:6, 22:7, 22:9, 22:15, 23:3, 24:6
Master [12] - 6:19, 15:9, 15:11, 17:14, 20:22, 20:25, 21:11, 21:15, 21:24, 22:18, 23:1, 24:13
matches [1] - 14:10
material [2] - 12:11, 40:20
materials [1] - 14:9
matter [9] - 22:1, 22:23, 25:24, 26:1, 26:7, 30:5, 31:7, 41:9
matters [1] - 28:20
MCCALL [1] - 2:21
McCallister [3] - 27:7, 28:19, 28:25
McKesson [9] - 26:21, 27:15, 27:16, 27:20, 28:3, 28:6, 28:14, 28:17, 29:4
McKesson's [2] - 26:14, 28:12
MDL [10] - 5:10, 14:15, 22:5, 23:10, 25:19, 25:20, 35:23, 36:17
mean [4] - 11:11, 18:21, 35:21, 38:5
MECHANICAL [1] - 3:16
medicine [6] - 10:4, 11:15, 11:19, 13:21, 13:24, 14:18
meet [4] - 8:8, 29:9, 34:25, 36:6
meeting [5] - 5:13, 8:7, 34:25, 35:24, 40:1
member [3] - 23:7, 30:21, 33:6
memo [1] - 6:22

*OFFICIAL TRANSCRIPT*

**memorandum** [2] - 21:8, 27:13
**Memorandum** [1] - 26:18
**menzies** [4] - 34:14, 35:12, 37:11, 38:18
**MENZIES** [5] - 2:3, 7:17, 38:19, 39:20, 39:24
**Menzies** [3] - 7:17, 34:8, 38:19
**mere** [1] - 25:25
**merely** [2] - 12:14, 19:25
**MERIT** [1] - 3:13
**Merit** [2] - 41:4, 41:13
**Merrell** [7] - 7:8, 7:11, 8:8, 14:22, 14:24, 14:25, 17:8
**MERRELL** [3] - 2:16, 7:8, 14:25
**met** [1] - 37:12
**MEUNIER** [1] - 1:20
**MICHAEL** [1] - 2:11
**middle** [1] - 36:7
**might** [2] - 32:7, 37:10, 39:19
**minute** [1] - 31:25
**minutes** [2] - 8:1, 8:7
**misbranding** [1] - 11:9
**misleading** [4] - 11:3, 11:8, 22:11, 23:22
**misrepresentation** [19] - 9:17, 10:17, 10:18, 10:19, 11:22, 12:19, 12:20, 13:17, 14:12, 16:2, 16:6, 19:9, 21:12, 21:17, 21:20, 21:21, 21:22, 23:17
**misrepresentations** [3] - 12:11, 15:20, 17:18
**missing** [1] - 16:14
**Mississippi** [1] - 17:25
**misstatement** [1] - 10:20
**misstatements** [3] - 10:16, 11:14, 12:25
**mistake** [1] - 11:20
**Mo** [3] - 5:15, 6:1, 6:5
**Monday** [1] - 38:24
**monitor** [1] - 33:4
**monitoring** [1] - 31:25
**Moore** [7] - 7:5, 7:6, 14:23, 15:5, 16:7, 17:12, 19:13
**MOORE** [5] - 2:7, 2:7, 7:6, 8:4, 39:25

**moreover** [1] - 32:12
**morning** [6] - 7:12, 7:17, 7:19, 7:20, 7:24, 17:10
**most** [4] - 12:4, 20:8, 22:5, 31:18
**mostly** [1] - 37:13
**MOTION** [1] - 1:11, 4:6, 4:8, 4:11
**Motion** [11] - 6:18, 16:4, 20:21, 21:6, 24:9, 26:9, 26:19, 27:10, 28:2, 28:17, 30:9
**motion** [31] - 6:20, 8:16, 8:21, 9:10, 17:3, 17:21, 20:4, 20:9, 20:11, 20:20, 20:24, 21:8, 26:12, 27:2, 29:15, 30:11, 30:16, 30:21, 30:22, 33:5, 33:12, 33:14, 33:16, 37:7, 37:9, 37:13, 37:16, 38:6, 38:11, 39:8, 39:9
**motions** [13] - 11:6, 25:14, 25:16, 33:8, 33:11, 33:19, 33:23, 34:1, 34:6, 36:9, 36:16, 37:22
**move** [2] - 23:14, 36:21
**moving** [1] - 40:17
**MR** [21] - 7:6, 7:8, 7:9, 7:12, 7:20, 8:4, 14:25, 17:10, 18:24, 20:14, 34:3, 35:6, 36:19, 37:9, 37:18, 37:21, 38:1, 38:10, 38:17, 39:25, 40:17
**MS** [5] - 7:17, 7:22, 38:19, 39:20, 39:24
**multi** [6] - 22:2, 27:6, 28:18, 28:22, 29:11, 30:3
**Multi** [1] - 22:2
**multi-district** [1] - 22:2
**Multi-District** [1] - 22:2
**multi-plaintiff** [5] - 27:6, 28:18, 28:22, 29:11, 30:3
**multidistrict** [2] - 5:14, 5:18
**must** [4] - 9:21, 26:1, 26:2, 33:6
**Myers** [1] - 29:25

**N**

**nature** [3] - 19:3, 22:24, 31:6
**NDA** [1] - 15:16
**NE** [1] - 2:17
**necessary** [4] - 8:1, 17:5, 22:24, 39:1
**need** [4] - 25:10, 30:4, 36:6, 36:12
**neglected** [1] - 32:4
**negligence** [2] - 10:11, 21:21
**negligent** [2] - 10:18, 21:21
**negotiated** [1] - 39:22
**negotiation** [1] - 38:23
**NEW** [9] - 1:6, 1:18, 1:22, 1:25, 2:8, 2:23, 2:5, 3:14
**new** [1] - 32:13
**news** [1] - 16:22
**nine** [1] - 30:2
**NO** [1] - 1:6
**non** [1] - 15:2
**non-Sanofi** [1] - 15:2
**none** [2] - 15:21, 19:21
**nonparty** [1] - 33:12, 37:8
**nonspecific** [1] - 28:8
**Northern** [1] - 32:22
**note** [2] - 17:14, 26:11
**noted** [2] - 22:3, 23:10
**notes** [1] - 32:15
**nothing** [1] - 16:19
**notwithstanding** [2] - 6:10, 25:25
**NOVARTIS** [1] - 2:15
**nowhere** [1] - 16:11
**NUMBER** [1] - 4:5
**Number** [2] - 6:18, 22:3
**number** [1] - 15:8
**numbered** [1] - 41:9

**O**

**obligation** [1] - 10:5
**obviously** [1] - 8:11
**occasion** [1] - 33:22
**OF** [4] - 1:1, 1:11, 4:9, 4:12
**off-label** [1] - 11:14
**Official** [2] - 41:5, 41:13
**OFFICIAL** [1] - 3:12
**OHIO** [1] - 2:13

**OLINDE** [3] - 2:22, 7:9, 40:17
**Olinde** [2] - 7:9, 40:15
**omit** [1] - 12:14
**OMNIBUS** [1] - 4:8
**Omnibus** [1] - 26:8
**one** [12] - 11:14, 13:18, 15:2, 16:17, 18:8, 21:20, 37:21, 38:13, 38:16, 39:13, 39:17
**ones** [1] - 36:10
**opinion** [3] - 32:21, 33:5, 33:21
**opponent** [3] - 35:25, 36:1, 36:4
**opposed** [3] - 6:20, 15:10, 36:15
**opposing** [3] - 21:3, 26:25, 30:18
**opposition** [5] - 12:10, 13:20, 16:5, 16:17, 21:8
**oppositions** [1] - 36:16
**oral** [4] - 26:12, 27:1, 30:15, 30:18
**ORDER** [1] - 5:4
**order** [7] - 9:16, 12:18, 26:17, 27:14, 28:16, 33:17, 39:8
**ordered** [9] - 21:5, 21:13, 26:12, 26:21, 27:2, 27:4, 27:11, 28:20, 30:20
**orders** [1] - 36:16
**ORLEANS** [7] - 1:6, 1:18, 1:22, 1:25, 2:8, 2:23, 3:14
**otherwise** [4] - 20:19, 29:18, 32:2, 39:19
**ought** [1] - 25:2
**outcome** [1] - 12:17
**outset** [1] - 25:17
**outside** [1] - 40:10
**outstanding** [1] - 7:2
**overstated** [1] - 12:1
**own** [2] - 11:23, 12:21

**P**

**page** [2] - 8:25, 9:1
**PAGE** [1] - 4:3
**pages** [2] - 9:1, 14:6
**PALMER** [1] - 1:21
**Palmer** [1] - 7:21
**papers** [1] - 8:12
**paragraph** [2] - 8:25, 9:1

**paragraphs** [7] - 9:2, 9:24, 10:14, 10:15, 14:6, 16:18, 18:15
**parameters** [1] - 38:15
**part** [8] - 10:10, 15:7, 22:8, 25:3, 27:2, 27:3, 38:7
**participated** [1] - 16:25
**participation** [1] - 15:23
**particular** [19] - 5:14, 15:23, 16:8, 18:3, 18:4, 19:6, 22:11, 22:21, 23:23, 25:8, 27:18, 27:22, 28:14, 31:5, 33:1, 36:5, 39:6, 39:16
**particularly** [3] - 16:6, 17:4, 23:5
**parties** [1] - 37:16
**parties'** [4] - 21:2, 26:25, 27:1, 30:17
**partner** [1] - 36:1
**parts** [1] - 29:11
**past** [1] - 17:22
**patient** [1] - 24:16
**patients** [2] - 24:17
**pearls** [1] - 39:14
**pending** [4] - 26:3, 33:8, 33:11, 36:16
**PENDLEY** [1] - 1:24
**people** [2] - 38:2, 38:14
**Pepper** [3] - 41:3, 41:11, 41:12
**PEPPER** [1] - 3:12
**percentage** [1] - 19:21
**perfected** [1] - 23:6
**perhaps** [1] - 35:17
**period** [1] - 31:7
**permanent** [4] - 10:3, 12:14, 19:17, 19:21
**permitted** [1] - 29:18
**persistent** [1] - 10:4
**person** [5] - 13:4, 13:8, 31:21, 31:25, 32:1
**personal** [1] - 25:17
**personnel** [1] - 31:19
**persons** [1] - 33:13
**perspective** [2] - 15:7, 36:21
**persuasive** [1] - 32:22
**pertinent** [1] - 18:7
**PFIZER** [2] - 2:21, 3:3
**Pharma** [1] - 33:16
**PHARMA** [1] - 2:10
**pharmaceutical** [1] - 13:22

**phase** [4] - 20:4, 20:9, 20:12, 23:15
**phone** [1] - 39:14
**physically** [1] - 31:23
**physician** [1] - 22:12
**pick** [1] - 39:14
**Pickrell** [1] - 27:9
**PIEDMONT** [1] - 2:17
**pins** [1] - 5:23
**place** [3] - 15:19, 20:7, 20:9
**places** [1] - 30:25
**plaintiff** [13] - 22:13, 23:23, 24:16, 24:22, 26:15, 27:6, 27:18, 27:25, 28:18, 28:22, 29:11, 30:3, 31:19
**PLAINTIFFS** [1] - 1:16
**plaintiffs** [39] - 7:13, 7:15, 7:18, 7:21, 7:23, 10:2, 12:2, 12:13, 17:11, 18:2, 21:13, 22:21, 23:19, 23:21, 23:24, 23:25, 24:4, 24:12, 24:21, 24:22, 24:23, 25:1, 26:13, 26:18, 27:9, 27:16, 27:22, 28:4, 28:11, 28:12, 28:24, 29:3, 29:15, 29:17, 29:21, 30:2, 32:4, 34:4, 38:19
**Plaintiffs'** [5] - 20:22, 20:25, 26:8, 26:18, 30:9
**plaintiffs'** [17] - 12:10, 13:19, 16:5, 21:7, 23:1, 23:9, 24:13, 26:12, 26:20, 27:11, 27:13, 30:11, 30:22, 32:11, 33:14, 35:11, 36:20
**PLAINTIFFS'** [2] - 4:8, 4:11
**planned** [1] - 34:11
**plausibility** [2] - 8:13, 18:21
**plausible** [9] - 8:18, 9:12, 10:9, 11:21, 13:16, 18:15, 18:17, 18:19, 19:25
**pleading** [6] - 8:17, 18:21, 22:18, 22:22, 27:24, 28:9
**pleasant** [2] - 6:9, 6:15
**pleasure** [1] - 5:13
**point** [17] - 12:9, 12:10, 13:2, 13:13, 13:19, 13:20, 17:17,

17:20, 20:6, 20:16, 23:8, 24:8, 29:12, 36:2, 36:11, 36:14, 36:17
**pointing** [1] - 14:7
**points** [3] - 9:14, 9:22, 18:7
**Policy** [3] - 6:4, 6:5, 6:6
**portion** [3] - 16:6, 16:8, 16:21
**position** [3] - 10:2, 11:18, 12:1
**positioned** [1] - 12:15
**positive** [2] - 5:17, 24:18
**possessing** [1] - 31:2
**possibility** [1] - 18:22
**possible** [1] - 35:2
**possibly** [1] - 22:10
**postponed** [1] - 32:5
**potent** [1] - 12:4
**potential** [2] - 29:10, 33:3
**potentially** [1] - 38:21
**power** [1] - 31:2
**POYDRAS** [6] - 1:17, 1:21, 1:25, 2:8, 2:23, 3:13
**practice** [2] - 5:19, 31:15
**preceding** [1] - 15:12
**preferably** [1] - 21:15
**preference** [2] - 25:17, 25:25
**preferred** [1] - 25:21
**prejudice** [1] - 28:17
**prepared** [3] - 20:20, 20:24, 40:22
**prescribed** [1] - 19:16
**present** [2] - 17:2, 39:12
**presented** [2] - 21:4, 36:2
**presenting** [1] - 7:14
**presently** [1] - 20:23
**presents** [1] - 16:3
**presiding** [2] - 6:3, 25:17
**pretermitted** [1] - 32:5
**pretty** [1] - 38:8
**preventing** [1] - 32:12
**previously** [1] - 25:15
**principal** [1] - 15:18
**private** [1] - 31:22
**probable** [2] - 18:14, 20:1
**problem** [1] - 39:16
**problems** [1] - 39:17

**procedure** [2] - 31:5, 31:17
**Procedure** [1] - 21:1
**proceed** [2] - 23:10, 25:8
**proceeding** [1] - 22:15
**PROCEEDINGS** [3] - 1:11, 3:16, 5:1
**proceedings** [3] - 22:5, 22:24, 41:9
**process** [4] - 31:16, 31:18, 31:20, 31:22
**produce** [2] - 13:25, 14:3
**PRODUCED** [1] - 3:17
**Product** [1] - 23:11
**product** [3] - 12:2, 24:17, 25:8
**production** [1] - 33:15
**PRODUCTS** [1] - 1:4
**products** [1] - 13:22
**Products** [2] - 5:10, 10:10
**progress** [4] - 34:20, 34:22, 35:6, 35:16
**promotional** [1] - 14:9
**promptly** [2] - 31:15, 32:5
**proof** [1] - 18:8
**proper** [1] - 31:20
**properly** [1] - 20:5
**protective** [3] - 33:17, 36:16, 39:8
**provide** [5] - 15:3, 21:14, 26:13, 28:3, 31:8
**provided** [7] - 15:17, 23:21, 27:14, 27:23, 28:5, 31:10, 32:2
**provision** [4] - 31:8, 31:12, 31:13, 32:14
**provisions** [3] - 29:20, 31:5, 31:16
**public** [1] - 16:23
**published** [1] - 16:22
**purely** [1] - 22:23
**purpose** [2] - 24:9, 29:13
**purposes** [4] - 13:25, 25:22, 25:23
**pursuant** [1] - 20:25
**put** [6] - 13:4, 13:6, 13:11, 24:8, 29:12, 35:8

**Q**

**quick** [1] - 7:5
**quickly** [2] - 14:13,

36:22
**QUINN** [1] - 3:4
**quite** [3] - 32:6, 32:7, 37:11
**quote** [1] - 33:4

**R**

**raise** [1] - 16:21
**raised** [4] - 8:15, 9:10, 12:10, 16:16
**Rather** [1] - 28:4
**Ratliff** [5] - 34:9, 34:14, 35:11, 37:12, 38:21
**re** [3] - 5:9, 22:2, 23:11
**RE** [1] - 1:4
**reach** [3] - 34:6, 37:5, 37:10
**reached** [1] - 35:19
**read** [2] - 7:1, 8:12
**reading** [1] - 28:25
**real** [3] - 7:5, 35:11, 35:13
**really** [7] - 9:14, 15:14, 15:19, 15:25, 36:20, 40:10, 40:20
**REALTIME** [1] - 3:12
**Realtime** [2] - 41:3, 41:12
**reason** [3] - 8:10, 14:14, 24:10
**reasonable** [2] - 18:19, 18:23
**reasoning** [2] - 18:6, 32:16
**reasons** [2] - 14:11, 21:7
**recap** [1] - 21:18
**received** [1] - 27:18
**recess** [1] - 40:25
**recite** [2] - 6:21, 9:7
**recognize** [1] - 22:25
**record** [6] - 26:2, 27:1, 30:19, 41:8
**Record** [13] - 6:17, 6:22, 6:23, 20:23, 26:10, 26:15, 26:19, 26:21, 26:22, 30:11, 33:12, 33:15, 33:17
**RECORD** [3] - 4:5, 4:10, 4:13
**RECORDED** [1] - 3:16
**recounting** [1] - 9:25
**recover** [1] - 12:24
**refer** [1] - 12:11
**reference** [2] - 9:6, 24:6
**referenced** [1] - 15:23

**referred** [1] - 19:13
**referring** [2] - 12:12, 24:1
**reflected** [1] - 14:3
**refute** [1] - 10:6
**regard** [9] - 14:21, 19:11, 20:21, 22:21, 25:16, 27:9, 29:8, 30:9, 33:22
**regarding** [6] - 26:14, 26:20, 28:6, 28:21, 29:10, 37:7
**regimens** [1] - 11:17
**REGISTERED** [1] - 3:13
**Registered** [1] - 41:3
**registered** [1] - 41:13
**relate** [4] - 10:15, 10:22, 15:13, 31:5
**related** [6] - 8:17, 8:18, 9:2, 10:13, 12:7, 16:19
**RELATES** [1] - 1:8
**relating** [2] - 30:5, 31:6
**relative** [1] - 25:15
**relevant** [1] - 6:21
**reliance** [1] - 25:4
**relied** [4] - 23:23, 24:22, 25:1, 25:7
**relief** [2] - 9:12, 13:16
**relieved** [1] - 17:14
**remainder** [1] - 11:16
**remaining** [2] - 28:4, 28:12
**Remand** [5] - 26:9, 26:19, 27:10, 28:2, 30:10
**remand** [9] - 25:16, 28:15, 28:24, 29:2, 29:10, 29:16, 29:18, 30:11, 30:24
**REMAND** [2] - 4:8, 4:11
**remanded** [5] - 27:12, 29:6, 29:21, 30:22, 33:6
**remarks** [6] - 7:3, 8:15, 8:21, 15:3, 20:18, 40:2
**removability** [1] - 32:25
**removal** [3] - 30:12, 30:20, 31:5
**removed** [1] - 31:7
**removing** [2] - 32:9, 32:12
**render** [1] - 9:16
**reply** [2] - 6:22, 19:5
**report** [1] - 40:1

**REPORTER** [3] - 3:12, 3:12, 3:13
**Reporter** [7] - 41:3, 41:4, 41:5, 41:12, 41:13, 41:13
**REPORTER'S** [1] - 41:1
**reports** [1] - 19:19
**representation** [2] - 19:8, 36:1
**representations** [1] - 24:2
**representative** [1] - 22:12
**representing** [1] - 7:9
**request** [2] - 31:19, 33:15
**require** [4] - 9:15, 9:18, 9:21, 29:6
**required** [1] - 18:9
**requires** [1] - 23:18
**Research** [3] - 6:4, 6:6, 6:7
**researched** [1] - 40:22
**Researcher** [1] - 6:4
**resolution** [5] - 29:10, 33:25, 34:6, 37:17, 39:21
**resolve** [1] - 36:8
**respect** [9] - 14:17, 16:13, 16:16, 21:6, 21:10, 23:5, 23:16, 27:25, 28:18
**respectively** [2] - 21:13, 23:18
**response** [2] - 26:22, 27:14
**responses** [1] - 33:15
**rest** [1] - 29:21
**restrictions** [2] - 8:9, 22:25
**result** [1] - 24:18
**retain** [1] - 29:21
**retread** [1] - 15:4
**rise** [1] - 5:7
**rises** [1] - 28:13
**risk** [2] - 10:3, 12:14
**risks** [1] - 14:1
**RMR** [2] - 3:12, 41:12
**ROAD** [1] - 2:17
**Robin** [1] - 28:1
**room** [1] - 34:16
**ROOM** [1] - 3:13
**ROUGE** [1] - 3:9
**roughly** [1] - 9:1
**rule** [19] - 7:25, 18:3, 20:20, 20:24, 25:14, 26:8, 30:14, 34:22, 35:4, 35:5, 35:21, 36:9, 36:10, 36:24,

37:19, 38:9, 39:19
**Rule** [7] - 9:10, 9:21, 10:8, 11:6, 14:12, 14:13, 14:20
**ruled** [1] - 34:24
**Rules** [3] - 9:11, 10:8, 21:1
**run** [1] - 39:16

**S**

**S.A** [1] - 2:7
**s/Cathy** [1] - 41:11
**SA** [1] - 33:16
**safe** [2] - 12:15, 13:24
**safety** [1] - 24:2
**sales** [1] - 22:12
**San** [1] - 30:1
**Sandoz** [3] - 7:8, 15:1, 15:2
**SANDOZ** [1] - 2:15
**Sandra** [1] - 28:25
**Sanofi** [11] - 7:7, 15:2, 15:9, 16:8, 16:18, 19:22, 26:22, 27:6, 27:7, 33:14, 33:16
**SANOFI** [1] - 2:7
**Sanofi-Aventis** [2] - 26:22, 33:14
**satisfy** [3] - 14:20, 27:23, 28:8
**savvy** [1] - 33:3
**schedule** [1] - 30:21
**science** [1] - 9:25
**seated** [1] - 5:8
**second** [1] - 20:2
**Section** [7] - 29:1, 30:14, 31:4, 31:6, 31:11, 31:24
**section** [1] - 31:14
**sections** [1] - 29:5
**see** [2] - 35:13, 37:24
**seek** [2] - 32:6, 38:24
**seeking** [4] - 17:13, 17:15, 20:24, 38:21
**seeks** [1] - 30:11
**sense** [1] - 33:1
**Seoul** [1] - 6:3
**separate** [1] - 38:4
**serve** [1] - 31:23
**served** [1] - 31:16
**server** [1] - 31:22
**serves** [1] - 23:10
**service** [4] - 31:19, 32:6, 32:11, 32:12
**service..** [1] - 33:1
**set** [8] - 9:12, 10:9, 11:21, 14:14, 21:24, 24:13, 24:25, 39:16

**setting** [1] - 35:23
**settlement** [1] - 25:22
**seven** [1] - 21:22
**sever** [4] - 28:24, 29:2, 29:15, 29:20
**severance** [1] - 28:22
**shall** [5] - 21:13, 27:4, 28:16, 28:20, 30:22
**sheriff** [1] - 31:21
**shift** [1] - 33:2
**short** [4] - 22:7, 22:16, 22:19, 23:6
**shotgun** [1] - 8:17
**shows** [1] - 10:1
**side** [10] - 8:5, 12:7, 14:1, 14:2, 19:2, 24:3, 24:18, 33:23, 35:11, 38:14
**sides** [2] - 34:19, 39:12
**similar** [1] - 16:16
**simply** [4] - 17:5, 18:24, 19:7, 21:19
**single** [1] - 11:10
**sit** [1] - 34:16
**six** [3] - 15:13, 21:22, 24:17
**slightly** [1] - 17:22
**Smethers** [1] - 32:16
**Smith** [1] - 27:10
**snap** [1] - 30:12
**sold** [1] - 13:3
**someone** [1] - 13:3
**somewhat** [1] - 38:22
**somewhere** [1] - 36:7
**sort** [3] - 16:9, 16:11, 40:3
**South** [1] - 5:16
**Southern** [1] - 32:19
**speaking** [1] - 36:5
**specific** [9] - 10:13, 16:24, 22:10, 23:4, 24:14, 24:20, 25:12, 32:14
**specifically** [5] - 12:15, 16:3, 34:15, 36:12, 37:13
**speculative** [6] - 18:9, 18:12, 18:14, 18:16, 19:25, 28:13
**spent** [1] - 34:9
**spoken** [1] - 34:11
**Squibb** [1] - 29:25
**stand** [3] - 5:20, 11:23, 12:21
**standard** [5] - 38:11, 18:21, 22:23, 27:24, 28:9
**standing** [1] - 18:2
**start** [1] - 9:6

**started** [1] - 35:7
**state** [10] - 12:12, 18:21, 21:19, 23:25, 25:16, 27:12, 28:10, 30:6, 31:16, 33:4
**State** [1] - 41:4
**statement** [8] - 9:15, 11:11, 11:20, 13:4, 13:6, 14:8, 22:11, 23:21
**statements** [14] - 9:19, 10:13, 10:21, 21:16, 24:14, 25:1, 25:3, 25:9, 25:12, 26:13, 26:20, 28:5, 28:8, 34:1
**STATES** [2] - 1:1, 1:1
**states** [3] - 17:24, 18:4, 31:18
**States** [6] - 5:24, 28:7, 29:5, 40:11, 41:5, 41:14
**stating** [1] - 23:20
**status** [3] - 33:18, 34:1, 37:2
**statutes** [1] - 31:3
**STENOGRAPHY** [1] - 3:16
**still** [5] - 12:5, 27:20, 35:2, 35:3
**stories** [1] - 16:22
**street** [1] - 40:5
**STREET** [8] - 1:17, 1:21, 1:25, 2:8, 2:12, 2:23, 3:9, 3:13
**strict** [4] - 9:17, 10:18, 21:11, 23:17
**studies** [4] - 15:23, 16:22, 17:1, 19:19
**subject** [4] - 25:24, 26:1, 26:7, 30:5
**submissions** [3] - 21:3, 26:25, 30:18
**submit** [3] - 27:5, 28:20, 29:7
**substantial** [1] - 16:14
**success** [1] - 33:23
**sue** [1] - 13:9
**suffered** [2] - 12:8, 13:11
**SUFFERN** [1] - 2:11
**sufficient** [3] - 20:11, 27:15, 27:23
**SUGUNDO** [1] - 2:5
**suing** [1] - 12:5
**suitcases** [3] - 13:5, 13:7, 13:12
**SUITE** [5] - 1:17, 1:21, 1:25, 2:8, 2:12
**SULLIVAN** [2] - 3:4,

3:8
**summary** [2] - 20:9, 23:15
**SUPERIOR** [2] - 4:9, 4:12
**Superior** [5] - 26:9, 29:25, 30:10, 30:23, 33:7
**supplement** [1] - 24:5
**supplemental** [4] - 21:14, 27:5, 27:13, 28:20
**Supplemental** [1] - 26:18
**supplemented** [1] - 22:6
**support** [4] - 9:12, 12:18, 17:6, 17:20
**Support** [1] - 26:19
**supporting** [4] - 14:4, 21:3, 26:25, 30:17
**supposed** [1] - 9:10
**Supreme** [3] - 6:7, 8:14, 29:24
**surely** [1] - 24:11
**survivability** [1] - 13:15
**survival** [1] - 12:16
**survive** [1] - 9:21
**Susan** [1] - 27:25
**system** [1] - 5:14

**T**

**tackle** [1] - 8:2
**talismanic** [1] - 11:8
**Taxol** [1] - 11:17
**TAXOTERE** [1] - 1:4
**Taxotere** [6] - 5:10, 11:17, 12:15, 27:17, 27:21, 28:6
**temporal** [1] - 31:6
**ten** [3] - 27:4, 28:16, 28:21
**TERMINUS** [1] - 2:16
**terms** [3] - 15:25, 33:20, 35:14
**testing** [1] - 24:3
**Texas** [2] - 17:25, 32:19
**Textron** [2] - 32:17, 32:20
**THE** [28] - 1:12, 1:16, 4:6, 4:9, 4:11, 5:7, 5:8, 7:16, 7:19, 7:24, 14:23, 17:8, 18:18, 20:13, 20:15, 34:20, 35:21, 37:7, 37:15, 37:19, 37:24, 38:2,

*OFFICIAL TRANSCRIPT*

38:13, 38:18, 39:2,
39:23, 40:14, 40:19
**therapy** [1] - 12:4
**therefore** [5] - 12:4,
24:4, 28:13, 29:7,
33:5
**third** [1] - 37:23
**THIS** [1] - 1:8
**thoughts** [2] - 37:16,
39:8
**three** [7] - 21:20, 33:8,
33:11, 33:19, 33:23,
34:10, 34:15
**threshold** [2] - 22:1,
30:5
**throughout** [1] - 28:7
**timeframe** [1] - 8:11
**timekeeper** [1] - 8:2
**timing** [1] - 33:1
**Title** [2] - 30:14, 31:11
**title** [1] - 21:19
**TO** [7] - 1:8, 4:6, 4:8,
4:9, 4:11, 5:4
**today** [14] - 5:21, 6:9,
6:17, 7:11, 7:15,
8:21, 10:7, 20:18,
21:4, 33:2, 33:9,
34:12, 34:24, 40:20
**today's** [2] - 24:7,
28:21
**together** [2] - 22:17,
34:9
**tomorrow** [1] - 38:25
**took** [2] - 11:18, 30:16
**total** [1] - 15:14
**trade** [1] - 38:6
**trailer** [2] - 17:23, 20:3
**transcript** [1] - 41:7
**TRANSCRIPT** [2] -
1:11, 3:16
**TRANSCRIPTION** [1] -
3:17
**Trasylol** [1] - 23:11
**TRAURIG** [1] - 2:15
**travels** [1] - 6:10
**treating** [1] - 24:15
**treatment** [3] - 12:16,
14:2, 27:18
**trenches** [1] - 36:6
**trial** [1] - 10:1
**trials** [1] - 19:20
**tried** [2] - 35:4, 37:4
**trifle** [1] - 25:25
**true** [3] - 22:5, 22:9,
41:7
**trunk** [3] - 13:5, 13:7,
13:12
**try** [3] - 36:7, 39:4,
39:10
**trying** [2] - 13:3, 13:13

**tumbler** [1] - 5:24
**tune** [1] - 39:10
**turn** [1] - 14:22
**turns** [1] - 13:5
**two** [13] - 5:22, 9:14,
9:22, 16:17, 18:7,
21:20, 27:5, 28:18,
29:11, 34:22, 37:12,
37:22, 40:5
**two-way** [1] - 40:5
**Twombly** [1] - 8:13
**type** [1] - 30:20
**types** [2] - 5:23, 28:7

## U

**ULMER** [1] - 2:11
**ultimately** [1] - 8:21
**under** [13] - 8:14, 9:11,
9:13, 10:8, 10:10,
14:12, 17:12, 18:4,
28:15, 29:18, 29:19,
30:6, 30:16
**understood** [2] -
36:19, 38:1
**unfortunately** [1] -
34:18
**United** [6] - 5:24, 28:7,
29:5, 40:11, 41:5,
41:14
**UNITED** [2] - 1:1, 1:12
**unrelated** [1] - 38:6
**untrue** [1] - 11:11
**up** [9] - 5:20, 6:11, 8:2,
20:19, 29:22, 35:5,
35:14, 39:14, 40:16
**update** [1] - 39:22
**urged** [1] - 30:1
**URQUHART** [2] - 2:7,
3:4
**US** [2] - 26:22, 33:14
**USC** [4] - 29:1, 31:4,
31:6
**usual** [1] - 7:25
**utilized** [1] - 28:10

## V

**vaguely** [1] - 24:1
**validity** [1] - 17:19
**varies** [1] - 18:10
**variety** [2] - 5:13,
30:19
**various** [2] - 9:13,
16:21
**vehicle** [1] - 25:21
**Vera** [1] - 27:10
**verse** [1] - 19:11

**versus** [1] - 11:17
**via** [1] - 31:16
**view** [2] - 11:20, 32:7
**VINE** [1] - 2:12
**visit** [3] - 5:24, 6:13,
6:15

## W

**wait** [1] - 40:14
**wants** [2] - 20:15, 37:2
**warn** [8] - 8:22, 9:24,
10:9, 12:20, 12:22,
12:23, 17:16, 21:20
**warning** [5] - 10:5,
14:17, 15:20, 16:12,
19:16
**warnings** [3] - 10:22,
12:14, 14:3
**warranted** [2] - 13:24,
14:17
**warranties** [2] - 13:21,
24:21
**warranty** [16] - 9:18,
10:17, 11:22, 12:19,
13:4, 13:7, 13:10,
13:18, 14:10, 14:12,
21:12, 21:17, 21:23,
23:18, 23:22, 24:1
**WARSHAUER** [1] -
1:20
**weather** [1] - 6:10
**WEDNESDAY** [2] -
1:7, 5:3
**week** [4] - 34:22,
35:19, 37:1, 40:13
**weeks** [2] - 33:18,
34:22
**welcome** [4] - 5:11,
5:21, 6:8, 6:13
**Westlaw** [1] - 23:12
**WHEREUPON** [1] -
40:25
**whichever** [1] - 36:10
**whole** [1] - 22:8
**willing** [1] - 39:2
**WILSON** [1] - 3:8
**wisdom** [1] - 39:14
**WL** [2] - 32:18, 32:20
**words** [2] - 31:12,
38:7
**WORLDWIDE** [3] -
2:20, 2:21, 3:3
**Wright** [1] - 28:1
**writing** [1] - 35:8
**written** [2] - 26:25,
31:14

## Y

**year** [1] - 32:18
**yesterday** [5] - 5:12,
6:15, 33:25, 34:10,
34:11
**YORK** [2] - 3:5

## Z

**zealous** [1] - 35:25
**Zofran** [2] - 19:5, 22:2