UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)   *      16-MD-2740
PRODUCTS LIABILITY LITIGATION  *
                               *      Section N
                               *
Relates to:  All Cases         *      October 26, 2017
* * * * * * * * * * * * * * * *


STATUS CONFERENCE BEFORE
THE HONORABLE MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE


Appearances:


For the Plaintiffs:          Barrios Kingsdorf & Casteix, LLP
                             BY:  ZACHARY L. WOOL, ESQ.
                             701 Poydras Street, Suite 3650
                             New Orleans, Louisiana 70139


For the Plaintiffs:          Gainsburgh Benjamin David Meunier
                                & Warshauer, LLC
                             BY:  M. PALMER LAMBERT, ESQ.
                             1100 Poydras Street, Suite 2800
                             New Orleans, Louisiana 70163


For the Plaintiffs:          Pendley Baudin & Coffin, LLP
                             BY:  CHRISTOPHER L. COFFIN, ESQ.
                             1515 Poydras Street, Suite 1400
                             New Orleans, Louisiana 70112


For the Plaintiffs:          Gibbs Law Group, LLP
                             BY:  KAREN BARTH MENZIES, ESQ.
                             400 Continental Boulevard
                             El Sugundo, California 90245

<u>Appearances</u>:

For the Plaintiffs:           Bachus & Schanker, LLC
                              BY:  J. KYLE BACHUS, ESQ.
                              1899 Wynkoop Street, Suite 700
                              Denver, Colorado 80202


For the Sanofi Defendants:    Shook Hardy & Bacon, LLP
                              BY:  HARLEY V. RATLIFF, ESQ.
                              2555 Grand Boulevard
                              Kansas City, Missouri 64108


For the Sanofi Defendants:    Shook Hardy & Bacon, LLP
                              BY:  PATRICK OOT, ESQ.
                              1155 F Street NW, Suite 200
                              Washington, DC 20004


For the Sanofi Defendants:    Irwin Fritchie Urquhart
                                & Moore, LLC
                              BY:  DOUGLAS J. MOORE, ESQ.
                              400 Poydras Street, Suite 2700
                              New Orleans, Louisiana 70130


For Hospira Worldwide,        Chaffe McCall, LLP
LLC:                          BY:  JOHN F. OLINDE, ESQ.
                              1100 Poydras Street, Suite 2300
                              New Orleans, Louisiana 70163


Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                              500 Poydras Street, Room B-275
                              New Orleans, Louisiana 70130
                              (504) 589-7778


Proceedings recorded by mechanical stenography using
computer-aided transcription software.

1    <u>**PROCEEDINGS**</u>

2    **(October 26, 2017)**

3        **THE COURT:**  Good afternoon everybody.  Y'all can stay

4    seated.  Have a seat.  Good to see y'all again.

5            I first want to address this motion to compel.

6    Why did we file a motion to compel?  I don't think that it's

7    appropriate to file a discovery motion under the circumstances.

8    We have other procedures in place to more expeditiously resolve

9    discovery disputes.

10       **MR. RATLIFF:**  Your Honor, the reason we filed the

11   motion to compel is that this is an issue that we have raised,

12   reraised, and reraised with the plaintiffs' leadership over the

13   last five or six months with no success whatsoever to get any

14   type of movement on this.  We have also raised it with

15   individual counsel, including counsel in this room.  We have

16   had no success on this.

17           This is a systematic-wide or system-wide failure

18   across the entire inventory of this litigation -- all 3,000

19   plaintiffs and growing day by day -- of not producing

20   electronically sorted information, emails, failing to disclose

21   social media posts, failing to produce representative

22   photographs that are useful and helpful to the defense.

23           The option that was presented to us by the

24   plaintiffs' leadership committee is that we should be meeting

25   and conferring with every single, individual counsel who has

1   failed to cure these types of deficiencies.

2           THE COURT:  This is all information that's ordered to

3   be produced by the district judge in the plaintiff fact sheets.

4           MR. RATLIFF:  Right.

5           THE COURT:  You haven't raised this issue with me yet

6   until you filed this motion.  Have you raised it with the

7   district judge?

8           MR. RATLIFF:  Yes, Your Honor, we have raised it with

9   the district judge.

10          THE COURT:  What was the outcome?

11          MR. RATLIFF:  We raised it in liaison counsel.

12  Mr. Moore raised it as this was an ongoing issue, particularly

13  as it related to the photographs.  My understanding is that

14  Judge Engelhardt said, "If this continues to be an issue, then

15  I will enter an order making sure that this type of information

16  is produced to the defendants."

17          THE COURT:  There's a procedure in place for you all

18  to raise what you consider to be deficiencies with the fact

19  sheets.

20          MR. RATLIFF:  There is, Your Honor.  We have been

21  raising those deficiencies through that process with all of the

22  counsel on all of the individual issues.  The problem is these

23  are the most relevant documents in the fact sheets and they are

24  not being produced.  What we have found and what we continue to

25  find across all of these cases is that people are saying -- or

03:11

1    plaintiffs are saying, "I don't have this type of information,"

2    and then we go look and we find out, yes, there is all kinds of

3    information that they have not disclosed to us.

4          So our options would be continue to work on

5    something that is not just a case-by-case basis -- there may be

6    plaintiffs that have individualized deficiencies that we worked

7    through that deficiency process, but this has become a

8    pervasive problem across the entire inventory of cases.  It is

9    only getting worse, and it will only continue to get worse.

10          So curing a deficiency that relates to "Well,

11   you didn't give us an authorization," we would never raise a

12   motion to compel on something like that.  We would go through

13   the deficiency process.  "You didn't provide us the dates of

14   your treatment," we go through the deficiency process, but this

15   is a global issue that is of utmost concern to us, particularly

16   as it relates to our ability to get emails about Taxotere,

17   about chemotherapy, about hair loss --

18          THE COURT:  All of that information has been ordered

19   to be produced via the plaintiff fact sheets.

20          MR. RATLIFF:  I agree, Your Honor.  It's just it's

21   not.  It's not being produced.  More concerning to us,

22   Your Honor, is not only is it not being produced, but what is

23   being represented on these fact sheets, on the face of these

24   fact sheets, ends up being patently false.

25          THE COURT:  And what am I supposed to do about that?

03:12

1      **MR. RATLIFF:**  Well, we would like extraordinary
2   relief, an order compelling the plaintiffs in this litigation
3   to produce these types of documents within 30 days, because it
4   is clear that they are not.

5      **THE COURT:**  If they are misrepresenting the truth in
6   their fact sheets, doing it sooner isn't going to change the
7   fact that they are misrepresenting the truth.

8      **MR. RATLIFF:**  It might invite them or encourage them
9   to actually go out and figure out whether this information
10  exists or does not exist.  We have been told by the plaintiffs'
11  counsel that we just were cherrypicking examples.  We could
12  spend five hours in here going through example after example
13  after example.  And my concern, Your Honor, is not only just
14  getting the information, but the fact that we then have to vet
15  to find out whether what is being said or what is being
16  represented is truthful or not.  What my concern is --

17     **THE COURT:**  Well, you are going to have to do that
18  anyway.  You were always going to have to do that.

19     **MR. RATLIFF:**  But we shouldn't have to do that on
20  every single case.

21     **THE COURT:**  Yeah, you should.

22     **MR. RATLIFF:**  Well, we are doing that, as well.

23     **THE COURT:**  What choice do you have?

24     **MR. RATLIFF:**  Well, the choice is, I think, that the
25  plaintiffs should be producing that type of information to us.

03:13

1   They should be making truthful representations in these fact

2   sheets.

3           THE COURT:  If that doesn't happen, you have a remedy

4   under Pretrial Order 22 to raise that with the district judge,

5   and the consequences are potentially severe.  Right?

6           MR. RATLIFF:  They are --

7           THE COURT:  Dismissal of claims.  A show cause order

8   will be issued as to any of those individual plaintiffs as to

9   why their case shouldn't be dismissed.

10          MR. RATLIFF:  Your Honor, I agree with that.  We have

11  been going through that process.  My concern is we are at a

12  point where I feel like we need something beyond that.  We need

13  something that compels these plaintiffs to produce this type of

14  information.

15          THE COURT:  They have been ordered to do it already.

16  They have been ordered to do it by the district judge, and he

17  set in place a remedy if they don't.

18          MR. RATLIFF:  I think that remedy, though, at this

19  point is causing us more work on our end, more work on the

20  plaintiffs' end versus a ruling from this Court saying you are

21  delinquent on this information or you are not doing the right

22  sort of due diligence to find this information and produce it

23  to us.

24          THE COURT:  Well, procedurally even if I wanted to do

25  that, I wouldn't because I'm not going to massage, work around,

03:14

1    or amend the procedure that the district judge has put in

2    place.

3              **MR. RATLIFF:**  So, Your Honor, is this a motion that

4    we should raise with Judge Engelhardt?

5              **THE COURT:**  I'm not sure you should file it in the

6    form of a motion to compel -- that's up to you -- because I

7    don't think his expectation is to receive discovery motions.

8              **MR. RATLIFF:**  I agree with that, Your Honor.

9              **THE COURT:**  Yeah, because I'm not in a position to

10   alter the process that he has put in place even if I thought it

11   needed to be altered.

12              I'm not insensitive to your concern that you

13   have thousands of plaintiffs' fact sheets and you think that

14   some of them are deficient in this regard, but I'm not the one

15   who crafted the process for raising those issues and flagging

16   them for the district judge.  I'm never going to tell anybody

17   not to raise the issue with the district judge, and I'm not

18   punting it.  I think that will be clear to him.  I'm not going

19   to fool around with his pretrial order and the system that he

20   has put in place for addressing these concerns.

21              **MR. RATLIFF:**  Understood, Your Honor.

22              **THE COURT:**  Just to be clear, it's my understanding

23   from the plaintiffs' pleadings they have represented to the

24   Court that they have sent the ESI guidance to every one of

25   these plaintiffs that they are aware of at least once.

03:16

1          Is that true?

2      **MS. MENZIES:**  That's correct.

3      **THE COURT:**  Because one of the things that you are

4  asking me to do and presumably will ask Judge Engelhardt to do

5  is to order them to do that which they have already done.  I

6  have no doubt that that guidance has been forwarded by counsel

7  here.  The problem that you are having I don't think is that

8  they haven't received the guidance; it's that you are not

9  satisfied with the work the individual plaintiffs and their

10  lawyers have done to respond.  As I said, there is a process in

11  place to address that.

12      **MR. RATLIFF:**  I think the other part of that,

13  Your Honor, there was the ESI guidance part of it.  There was

14  the part where we feel like there is an inventory-wide problem

15  on these two essential issues.  The third part of it, though,

16  related to the disclosures under PTO 49.

17          PTO 49, the ESI protocol applied equally with

18  both sides, in other words, to be transparency on both sides

19  about what type of information should be provided in terms of

20  something that is complementary to the fact sheet.  So there

21  was the four categories of information, what other custodians

22  might have relevant information.

23          **THE COURT:**  See, the problem is, first of all, it was

24  never my appreciation that the ESI protocol was to apply to the

25  individual plaintiffs.  There is guidance for that reason.  If

03:17

1    you read the ESI protocol, it says it applies to document

2    requests.  So I've got to interpret that to mean plaintiffs'

3    fact sheets.  They are not document requests.  In fact, they

4    exist in lieu of document requests.

5                **MR. RATLIFF:**  Well, Your Honor, there is a section --

6                **THE COURT:**  The language and the provisions of the

7    ESI protocol, in many regards common sense would tell us that

8    they would not apply to an individual litigant.

9                **MR. RATLIFF:**  So there are certainly provisions of

10   the ESI protocol, I will agree, they do not apply to an

11   individual litigant, but the fact sheets have a whole section

12   called "Requests for Production."  Those would be requests for

13   production.  Those would be us as a requesting party.

14               **THE COURT:**  Again, there is a provision for you to

15   object to those responses or to raise what you believe to be

16   deficiencies.  It has never been my view that that ESI protocol

17   was drafted to apply in all respects to the plaintiffs.

18               **MR. RATLIFF:**  Understood, Your Honor.

19               **THE COURT:**  That's what the guidance exists for.  We

20   had a status conference in this courtroom where I directed the

21   plaintiffs' counsel to provide the draft guidance to you all so

22   that you would see exactly what it was that they were sending

23   to all these other lawyers.  I ordered them to do that.  It's

24   been finalized.  You know exactly what they are asking for.  It

25   was done by agreement.

1    **MR. RATLIFF:**  Right.

2    **THE COURT:**  No one has ever objected to the ESI

3  guidance that these lawyers have sent to the other lawyers.

4    **MR. RATLIFF:**  I guess, Your Honor, our understanding

5  and our position from day one was that the ESI protocol was a

6  two-way street, that it applied equally to both sides.  It

7  talked about:  the parties do this, the parties do that; the

8  parties shall make these types of disclosures; requesting

9  parties, producing parties.

10         So the disclosure element is not something that

11  is contained in the fact sheet.  It's separate and apart from

12  the fact sheet.  That's why we view it as something that's

13  complementary, that lets us know:  Are there other custodians

14  that they have this type of data?  Is there information that

15  has been lost and destroyed by individual plaintiffs?  What

16  types of email systems do they use?  Do they use Gmail?  Do

17  they use Yahoo?  Do they store their documents in the Cloud?

18  Part of the reason we don't know that is because none of that

19  has been produced to us.

20    **THE COURT:**  But it's required to be produced.

21    **MR. RATLIFF:**  I agree with that.

22    **THE COURT:**  The district judge has required all of

23  that information to be produced.

24    **MR. RATLIFF:**  Your Honor, I feel like I know where

25  you are going on this, so we will raise it with

03:20

1    Judge Engelhardt.

2         **THE COURT:**   Okay.   Look, if this is a problem with

3    the system that's in place, I welcome you to talk about the

4    system that's in place with the person who put it in place

5    because, frankly, he is the only one who is going to alter it.

6              I have not talked to Judge Engelhardt about

7    altering it.   I will, after the hearing, to let him know that

8    it's an issue and that you all raised it with me and how I

9    handled it, and that he can likely expect you all to raise it

10   with him.

11        **MR. RATLIFF:**   I think, from a procedural standpoint,

12   when we got the guidance from Judge Engelhardt that if this

13   became an issue, there would be an order entered -- and because

14   this technically is discovery, it seemed like it was

15   appropriate to file it or have it directed to you, which is why

16   we did that.

17        **THE COURT:**   That's fine.   I feel like most of what we

18   have talked about since I have been involved in this case has

19   been inventory-wide issues.   In that regard it's not any

20   different than a lot of the other things we have been

21   discussing.   I think that the system that we have in place --

22   in terms of immediately informing either myself or

23   Judge Engelhardt of these problems in letter briefs and

24   expeditious resolution -- anticipates inventory-wide or large

25   concerns and issues.   In the future, so that we can get these

03:21

1   issues resolved or addressed more efficiently and quickly, I

2   would urge you to stick to that procedure.

3           **MR. RATLIFF:**  Understood, Your Honor.

4           **THE COURT:**  I'm assuming that's what Judge Engelhardt

5   is going to expect if you want to raise it with him.

6           **MR. RATLIFF:**  We will take it up with him tomorrow

7   and find a mechanism for getting this back in front of

8   Judge Engelhardt.

9           **THE COURT:**  I will let him know that it's coming.

10          **MR. RATLIFF:**  Thank you, Your Honor.

11          **MR. WOOL:**  Your Honor, if you are going to talk to

12  Judge Engelhardt, there's just one point I would like to make.

13  Zachary Wool for the PSC.

14          **THE COURT:**  I just ruled in your favor.

15          **MR. WOOL:**  The only point I want to make is they talk

16  about it being an inventory-wide problem.

17          **THE COURT:**  I know what they mean.

18          **MR. WOOL:**  The first wave of plaintiff fact sheets

19  have come through.  They have gone through the deficiency

20  process.  They have gone through most of the rule to show cause

21  process.  For that first wave there are only nine people who

22  are on the list for a rule to show cause.

23          **THE COURT:**  Well, how many people are we talking

24  about?

25          **MR. WOOL:**  All I know, there are hundreds of -- the

03:22

1    way that the deadlines worked is that if you had filed a case

2    before a certain date, your plaintiff fact sheet was due, and I

3    know that there were hundreds of cases on file like that.  So

4    we have gotten, one, down to nine --

5            **THE COURT:**  That's an argument for Judge Engelhardt.

6    Really, I just ruled in your favor.

7            **MR. WOOL:**  Thank you.

8            **MR. MOORE:**  Your Honor, Douglas Moore, liaison

9    counsel for Sanofi.  Just briefly on this issue to sort of

10   recount how we got here, we didn't file the motion for you.  We

11   just filed the motion.  It was referred to you.

12           **THE COURT:**  That's how it happens.  It just happens

13   automatically.

14           **MR. MOORE:**  The context in which this issue was

15   raised in the liaison counsel meeting was with respect to

16   photographs.  We brought the issue to the judge's attention

17   that the photographs we were getting were -- one person gave us

18   a copy of their driver's license from 1979.  Somebody gave us

19   their preschool graduation picture where she was wearing a hat

20   and when she was six years old.  So we raised that issue, and

21   we made some comments in the steering committee and the general

22   status --

23           **THE COURT:**  Preschool graduation picture?

24           **MR. MOORE:**  Kindergarten.  It was a cute picture, but

25   it didn't really help us figuring before and after.

03:23

1        So we raised this in the context with the Court,

2   and this issue has grown.  We will bring it up with

3   Judge Engelhardt.  We don't think the deficiency process really

4   addresses this.  We have a finite time to file deficiency

5   notices.  There's a process where the deficiency has to be

6   corrected.  What we are discovering is that there is necessary

7   information that isn't being given to us.  Maybe if the motion

8   to compel isn't the right mechanism, maybe it's a motion for

9   contempt for not providing the information as opposed to a

10  deficiency.

11       **THE COURT:**  Maybe it's the same process you have been

12  going through.

13       So here's what we are going to do.  I'm going to

14  alert Judge Engelhardt that this motion was filed.  It was

15  referred to me because that's what happens when these motions

16  get filed.  That probably could have been avoided if y'all had

17  just raised it directly with Judge Engelhardt by a letter memo

18  or something along these lines.

19       You all are going to see him tomorrow?

20       **MR. MOORE:**  Yes, sir.

21       **THE COURT:**  Hopefully -- well, I don't know by the

22  time we are finished -- hopefully he will be prepared to give

23  you all some guidance.  I seriously doubt that he has seen any

24  of this.  I generally don't read other people's motions.  I

25  doubt that he has looked at it, but I will try to get him up to

03:24   1   speed.

2                        What time are y'all meeting with him tomorrow?

3            **MR. MOORE:**  Our liaison counsel meeting is at 8:30.

4            **THE COURT:**  I will try to bring him up to speed.  You

5   make a good point that you didn't file the motion to be heard

6   by me.  That's just the way that it happens.

7            **MR. MOORE:**  Thank you, Judge.

8            **THE COURT:**  So the agenda has you all -- this is the

9   good part where I don't have to do anything but listen,

10   hopefully -- giving me a status report on noncustodial

11   discovery.

12            **MR. OOT:**  Good afternoon, Your Honor.  Patrick Oot

13   for the Sanofi defendants.

14                        I would like to acknowledge the Court probably

15   doesn't want to hear a tit for tat from the status reports.

16   You might remember back in March when I was here and I was

17   objecting to Ms. Barrios' two pages of complaining about our

18   lack of cooperation.  There are several things in plaintiffs'

19   letter that I would really like to set the record straight on

20   because they are really not making accurate representations of

21   what's happened so far, just starting with a couple of

22   examples.

23                        Organizational charts and how they were produced

24   on September 29, well, that's not accurate.  We produced the

25   majority of organizational charts on August 16, with an

agreement if we found additional work charts that we would produce them subsequently.  So we produced over 1,600 pages in August, and then we had some dribs and drabs based upon custodial interviews.

More importantly, though, is something that I mentioned to plaintiffs on September 5, that Sanofi doesn't have a traditional org chart retention process.  I said to them, "If you want reporting out of Sanofi's HR database, why don't we sit down and talk about business units and roles, and we will do those reports for you."  So I offered that meet-and-confer on September 5; no response.

So then jumping to litigation holds, plaintiffs have consistently asked for copies of our litigation hold, which you know that we objected to.  Page 2 of the report, they say that Sanofi revealed this week that they believe 12 of the custodians they identify with no ESI.

What we have done is exactly what we have done in every other case, including the *Gohil* case -- which we will be talking about today, I'm sure -- where if we don't have ESI for somebody, we will tell them the date of departure.  It's sometimes decades prior to the issuance of litigation holds in this case.  So it's not really fair to them to say we don't have ESI when we never should have had ESI in the first place because the person is gone before the obligations accrued in this case.

03:27

1      **THE COURT:**  So I want to understand that.  Are there,
2  in fact, 12 people who have been identified as potential
3  custodians -- by one side or the other or both -- that you all
4  have already determined don't have ESI?

5      **MR. OOT:**  So we are in the process -- so what we have
6  actually said is that we are still conducting a reasonable
7  inquiry.  What that means is we have gone to the traditional
8  sources -- like we have gone to the email system, we have gone
9  to network drives, we have gone to prior collections -- and we
10  have determined that we don't have ESI for those folks, but we
11  agree that we will still continue to look at nontraditional
12  sources.

13      **THE COURT:**  One of the reasons I ask that is because
14  if you have a dozen of those people, then the issue with too
15  many custodians becomes less of a problem.

16      **MR. OOT:**  Exactly.  That's what we are talking about.
17  How it has worked in *Gohil* in front of Judge Stengel is that we
18  came up with 16 joint custodians.  Then we were ordered to
19  produce another 16, and that was some university custodians in
20  that case.  If we don't have inventory for a particular
21  custodian, we would go back to relators in that case and we
22  would say, "This is what we have got," and they would say, "No,
23  we want to pick another.  Let's move on," and the process
24  worked efficiently.  That's what we are trying to do here and
25  trying to accomplish here, but instead, you know, we are trying

03:28

1  to walk down this road of *Actos* and spoliation, which just

2  isn't happening here.

3            So I just want to be very clear we have been

4  really transparent on dates of departure for employees.  We

5  provided that to them already.  We have been transparent.  We

6  gave them to the date of the litigation hold, which arguably

7  they are not entitled to because it's privileged, and we have

8  really been cooperative on this.  Then to come in and see a

9  report saying that information is gone or lost -- and we

10  continued to make our PTO 49 disclosure that we are unaware of

11  information that has been lost after the legal hold obligations

12  in the case accrued.

13            So really what we are saying here is that we

14  would like the same sort of process that we have in *Gohil* to

15  occur here because we think it's efficient and we think that

16  that's --

17            **THE COURT:**  Well, I have something like that in

18  mind --

19            **MR. OOT:**  Okay.

20            **THE COURT:**  -- so let's talk about that.  I have read

21  everything you all gave me, and I have an idea of how I want to

22  handle these issues.

23            First of all, let's talk about a deadline for

24  the search terms.  Do we have another status conference

25  scheduled?  I looked on my calendar.  I didn't see one.

03:30

1          **MS. MENZIES:**  I don't think so.

2          **THE COURT:**  We don't?  We are going to have y'all do

3     that in 30 days or so.  Is there any reason that we can't, as

4     plaintiffs have suggested, have a resolution of that issue in

5     15 days, by Friday, November 10?

6          **MR. OOT:**  Yes.  Agreed.

7          **THE COURT:**  We can do that?

8          **MR. OOT:**  We can do that.

9          **MS. MENZIES:**  I actually think we might be able to do

10    it sooner.

11         **THE COURT:**  Great.  That's just a deadline.

12         **MS. MENZIES:**  Okay.  Good.  We'll let you run through

13    yours and --

14         **THE COURT:**  I'm hoping not to keep y'all here all

15    day, and you might actually be able to get some work done while

16    you are all here together.

17         **MS. MENZIES:**  You will be happy to know we already

18    did this morning.  We might be able to accelerate some of these

19    deadlines.

20         **THE COURT:**  I would hate to start making rulings on

21    things that I don't have to rule on after you all have agreed.

22              So we are going to set a 15-day deadline for the

23    agreement on search terms.

24              I think what I'm going to do as to custodians --

25    you all, I guess, nominated -- when I say "you all," the

defendants nominated 33 people originally.  I think the number
is 39 additional or suggested.  Here's what we are going to do.

I'm going to let the plaintiffs select 40
custodians.  I'm not suggesting that I'm going to do what the
judge did in the other case and say then I will let you have
another 40.  Whether it includes all of the 33 that were
originally nominated or not, we are going to initially let them
do discovery on 40 custodians.  They get to select who they
are.  I do not anticipate having to go beyond that number.

Obviously y'all won't go beyond that number
except by agreement or with leave of Court.  So if the
plaintiffs believe they have identified one or two individuals
that are not in the original set, then I would suggest you all
discuss that.  That's certainly something that is conceivable.
If you can't agree, then you will come to me and explain why
you need to do that.  So that's how we are going to handle the
custodians.

We are going to talk about a deadline for the
request for production generally, but let's jump ahead to the
litigation hold information.  The record at this point does not
support me compelling the production of that information.  What
I'm going to say is where the plaintiffs have a legitimate
concern that there might be a spoliation or litigation hold
problem, then the plaintiffs should raise that concern as to
that particular custodian with the defendants, at which point I

03:33

1  fully expect that the defendants are going to attempt to
2  explain or document why that particular custodian doesn't have
3  what they don't have.  We will address issues of potential
4  spoliation or litigation hold information on a case-by-case
5  basis if those problems arise.
6                  So to the extent that you all, plaintiffs, think
7  that you have a concern about one or more custodians now, then
8  have Mr. Oot try to document why they don't have the discovery
9  that you expected, and we will go from there.
10             **MR. OOT:**  That's exactly how we have been handling it
11  so far.
12             **THE COURT:**  I think that's reasonable.  Like I said,
13  for me to start wading into having them produce that kind of
14  information, I need a more robust record than what I have.  We
15  are going to handle it that way.
16                  One of the other issues that the plaintiffs have
17  asked is for the Court to set a deadline for the first set of
18  requests for production.  So where do you all come down on
19  that?  Is that something that you all discussed?
20             **MR. OOT:**  So we had a meet-and-confer earlier today.
21  What I asked of them is:  Give us your first 10.  Assuming we
22  have the data processed and we are ready to go, we can start
23  review hopefully on Monday and really try and get the keyword
24  search terms that we can agree to and really try and trench it
25  so we can start producing information hopefully a week from

next Friday.

          THE COURT:  Are you all okay handling that without my intervention for the time being?

          MS. MENZIES:  Not exactly.

          THE COURT:  What do you want me to do?

          MS. MENZIES:  Well, there's a couple things, if I can address some of the others.  For this particular one, we have been hearing -- and we are getting documents being produced. We understand that a lot of the redaction is taking time to process through.  Frankly, Your Honor, even from what happened today, this morning, the progress we experienced this morning was leaps and bounds to what --

          THE COURT:  I'm going to start making y'all just fly to New Orleans and meet in the courthouse.

          MS. MENZIES:  I'm telling you, when you set deadlines for us, even if it's a hearing, things happen.  So our concern is -- and I think even for the client and the vendor purposes, if we have a date by which the substantial production should be made, should be substantially complete --

          THE COURT:  I start to worry about those things because I don't know what that means.

          MS. MENZIES:  Neither do we.  However, it is a date by which we can work towards, and if there are reasons why they can't meet that for some -- because you originally said 60 days subject to objections and meet-and-confers.  That was back on

03:35   1    August 23.  Even if we did 60 days from today, we are looking

2    at December, so that's our concern.

3              **THE COURT:**  We are not going to do that.  Here's what

4    we are going to do instead.

5              **MR. OOT:**  Hold on a second, Your Honor.  You have to

6    remember that part of the position they have taken is that

7    there's been a huge delay on our part.

8              **THE COURT:**  I understand that.

9              **MR. OOT:**  That's not true.

10             **THE COURT:**  I understand --

11             **MR. OOT:**  I actually went through and made a

12   chronology --

13             **THE COURT:**  I understand the parties' respective

14   positions.

15             **MR. OOT:**  -- about what happened.

16             **THE COURT:**  I understand.  I have two separate

17   chronologies, or they are the same chronologies with a

18   different explanation about what was going on during that time.

19   I get it.  I'm really not that concerned right now about what's

20   happened.  I'm concerned about what happens next.

21             Here's what we are going to do next.  Rather

22   than set a deadline today, we are going to schedule our next

23   status conference sooner rather than later.  Even if I waited

24   30 days, we would be into Thanksgiving, and I don't want to do

25   that.  Let me look at my calendar while everybody is here.  We

03:37　1　will pick a time.

2　　　　　Do you all have anything in New Orleans in the

3　next two or three weeks?

4　　　　　MS. MENZIES:  We do.  I think the week of --

5　　　　　MR. COFFIN:  I'm sorry.  I don't mean to interrupt

6　you all.  I happen to know the answer.

7　　　　　THE COURT:  Okay.

8　　　　　MR. COFFIN:  If we came back on the 10th, I think

9　that could work, which is a Friday and just so happens to be

10　two weeks from tomorrow.

11　　　　　THE COURT:  It's Veterans Day.  The courthouse is

12　closed.

13　　　　　MR. COFFIN:  That's a terrible date.

14　　　　　THE COURT:  It's the Marine Corps birthday too.

15　　　　　MR. RATLIFF:  Your Honor, what about the week of the

16　13th through 17th?

17　　　　　THE COURT:  That's a better week for me.

18　　　　　MR. OOT:  Earlier in the week would be better.

19　　　　　THE COURT:  Yes, let's do it early in the week.

20　　　　　Hold on.

21　　　　　MR. OOT:  Maybe the 14th?

22　　　　　THE COURT:  We will do the 14th at 2:30.

23　　　　　MR. OLINDE:  Your Honor, I'm not able to make it.

24　I'm with Judge Fallon in the *Xarelto* litigation.  We have set

25　up something at that time.

03:38

1    **THE COURT:**  How long does that take?

2    **MR. OLINDE:**  Well, it's set for 1:30 that we have a

3    call with him, and I don't know how long it's going to last.

4    If it lasts till 2:30, I'm here.  If we go to 3:00, if we can

5    push it till 3:00 --

6    **THE COURT:**  We will do it at 3:00.

7           So what we are going to do is we are going to

8    have you all effectuate the agreement that you have just made

9    today -- and perhaps put a finer point on later today -- and I

10   will be prepared to address the matter of setting a deadline at

11   the next status conference.

12          I want you all to anticipate that I will do that

13   and talk about what that deadline ought to be.  I may not, but

14   plan on me doing that so maybe you all can agree on a deadline;

15   if not, we can at least have a narrow range.

16   **MR. OOT:**  Yes, Your Honor.

17   **THE COURT:**  Yes.

18   **MS. MENZIES:**  If I can follow up -- I'm sorry.  Karen

19   Menzies for the plaintiffs -- just on a couple of items that he

20   said.  So the record is clear, there's a number of things that

21   were said we don't agree with.  We won't get into that.

22   **THE COURT:**  I get that.

23   **MS. MENZIES:**  Thank you.

24   **THE COURT:**  I accept that you all disagree on a

25   number of things.

03:39

1      **MS. MENZIES:**  Thank you, Your Honor.  I appreciate

2   that.

3          Moving this forward a little bit, we just want

4   to kind of confirm on the record today some of the agreements

5   that I believe we made this morning so we have dates that we

6   are working towards.

7      **THE COURT:**  Okay.

8      **MS. MENZIES:**  One of those goes to when you mentioned

9   the 40 custodians.  We will work towards that.  Counsel for

10  Sanofi has said that they will provide for us information

11  about -- obviously, for us, we want to get custodians that

12  actually have a fair amount of information available and have

13  an understanding what information is available, what date

14  ranges that covers.  They said they will provide that to us, I

15  think, sometime next week.  That will help us in this process.

16          If we can get that on the record --

17     **MR. OOT:**  We agree to that.

18     **MS. MENZIES:**  Thank you.

19     **THE COURT:**  We don't want to wind up with having them

20  have to guess and pick 12 people who don't have any ESI.

21     **MS. MENZIES:**  And then along that same vein, if there

22  are ones that we choose that turn out that they really don't

23  have much of anything, maybe we can replace those to reach the

24  40.

25     **THE COURT:**  I think that would be reasonable.

03:40

1    Obviously I'm limiting the custodians so that I limit the

2    burden on the defendants of having to do the work to retrieve

3    that information.  If some number of these folks don't have any

4    information and there's been no burden really associated with

5    finding that out, then it would be reasonable to look

6    elsewhere.

7            **MS. MENZIES:**  Thank you.  And then the other thing we

8    talked about this morning was on the prior litigation -- the

9    *qui tam* cases and the patent cases -- there was an agreement

10   this morning that they will provide to us the list of

11   custodians that were collected in the course of those

12   litigations.  And they will give us, I think, the date ranges

13   on what they had available for those.

14            Is that right?  Did I get that right, Patrick?

15           **MR. OOT:**  We agreed that we would produce the list of

16   produced custodians in the cases plus the earliest date of

17   content that we had and the latest date.

18           **THE COURT:**  Okay.

19           **MS. MENZIES:**  And they would do that by Monday, is

20   when they said they could do it.

21           **MR. OOT:**  At least for the *Gohil* case --

22           **THE COURT:**  Right.

23           **MR. OOT:**  -- we have that.  What's online and posted,

24   that's easy.

25            For some of the more legacy cases it will take a

03:42   1    little bit more time.

2              THE COURT:  It will take a little bit more time.

3    Okay.

4              MS. MENZIES:  So where we have a disagreement still

5    is on the litigation hold.  We will deal with that witness by

6    witness.  That's fine.

7              THE COURT:  Yes.

8              MS. MENZIES:  I'm just making sure I have my notes.

9              Am I missing anything?

10             Oh, the search terms.  We actually think we

11   could do that a little bit sooner.

12             I think, Patrick, we talked about this morning

13   maybe even for the first round -- we actually talked this

14   morning about giving them an identification of around 10

15   custodians as early as tomorrow.

16             THE COURT:  Okay.

17             MS. MENZIES:  Mr. Oot is going to give us some

18   information about the search terms by tomorrow so that we can

19   really just get this process rolling.  We may not need the

20   15 days, but we will keep working towards that.

21             THE COURT:  I'm just going to set the deadline.

22             MS. MENZIES:  Okay.  Great.

23             THE COURT:  Obviously the sooner you can get these

24   things done, even if it's on a rolling or progressive basis,

25   the better.

1   **MS. MENZIES:**  Okay.  Great.

2   **THE COURT:**  Yes.

3   **MR. OLINDE:**  Your Honor, I have just one thing I

4   would like to bring to the Court's attention from the 505(b)(2)

5   defendant, and that was your comments about the ESI protocol.

6   We believe that it does apply to the plaintiffs

7   in certain respects; that if indeed they have ESI information,

8   the protocol basically tells you in what form it needs to be

9   presented to the other side, the producing side.  For example,

10  if there is something within which you have a PFS and it's

11  determined that you have some ESI, this tells you basically

12  what it is that you are supposed to do.

13  What I am concerned about in the comments is

14  that this does not apply to the plaintiffs, because that was

15  not the intent.  If we have to come back another day to try to

16  talk about that, I'm willing to do that.

17  **THE COURT:**  If there is a concern or an issue with

18  the manner in which that information is being produced, then my

19  suggestion at this point would be to raise that particular

20  issue with plaintiffs.  Whether you need to amend the ESI

21  guidance, whether you need to do something along those lines,

22  it continues to be an issue that these lawyers cannot direct

23  the other lawyers.

24  **MR. OLINDE:**  I understand that.

25  **THE COURT:**  When I say that the ESI protocol doesn't

03:44

1    apply to the plaintiffs, what I mean is I don't want every

2    plaintiff in this case and every other lawyer in this case from

3    coast to coast to receive a copy of the ESI protocol and think

4    that they have to use that in lieu of the guidance that they

5    have because that is never going to work.

6            MR. OLINDE:  I understand.  It's really designed --

7            THE COURT:  It wasn't written for them.

8            MR. OLINDE:  I understand.  Well, it was written from

9    the standpoint that if they do have ESI, this is what you need

10   to do if indeed you have that.

11           THE COURT:  If you all think that that further detail

12   needs to be communicated to the plaintiffs beyond what's in the

13   guidelines, then I would suggest that you talk to plaintiffs'

14   counsel about that as quickly as possible.  If we need to amend

15   it or append to it, I don't have a problem with that.  If we

16   are having a problem with the format or the way some of this

17   information is being produced, we can handle that.

18           What I'm saying is it's not let's send this ESI

19   protocol to every one of these lawyers and expect them to

20   understand it and abide by it because it's going to be a

21   catastrophe.

22           MR. OOT:  You might remember, Your Honor, that I

23   brought up that the goal of ESI protocol is also to prevent

24   spoliation on the other side.  We have been getting printouts

25   of pictures with the date written on it.  So we are trying to

03:46

1    avoid the evidence-handling issues on both sides of the fence.

2    We thought the ESI protocol was doing that.  I guess perhaps at

3    our next meet-and-confer we suggest an ESI protocol that's

4    specifically targeted to the plaintiffs so we are getting

5    evidence the way that we would expect to get it.

6            THE COURT:  Why don't you talk about how to handle

7    that.  It has never been my expectation, and I don't think that

8    it was -- I'm not going to speak for anyone else.  It's never

9    been my expectation that every lawyer representing one or more

10   of these claimants across the country is in receipt of that ESI

11   protocol and has been told that they are expected to abide by

12   it.

13           MR. OLINDE:  You do have situations -- I don't want

14   to take a lot of time here.  For example, we have a pool of

15   plaintiffs which are going to be set for the first trial and

16   for the second trial.  Those particular plaintiffs obviously

17   have information or might have information which is ESI.

18   That's another subset of people that we need to have the

19   information, and we need to have it quickly.

20           We also have an issue -- and you asked the

21   question about why it is that it needs to be done.  It is

22   because as part of the process of a trial, we have to select

23   plaintiffs, and the only way we can get the information is if

24   we get good information.

25           THE COURT:  Right.

03:47

1        **MR. OLINDE:**  Garbage in, garbage out, and that's why

2   we need to have the information itself.  We will talk with

3   Judge Engelhardt about that, but I didn't want to have the

4   misimpression that this document doesn't apply to the

5   plaintiffs; because I believe the discussion that was had, it

6   does apply.  It's just a question of it may not -- all the

7   particular parts of it may not be applicable in a particular

8   case, but they do have to provide information in the format and

9   the type of information which is here.  We can work on that.

10        **THE COURT:**  I suggest that you all do that so that we

11   can not have an argument or a disagreement about what is

12   expected of these plaintiffs in terms of how they are to

13   produce their ESI.

14        **MR. OLINDE:**  Thank you, Your Honor.

15        **THE COURT:**  There are a couple of other matters on

16   the agenda:  deadlines for submission and hearing date for

17   resolution of any outstanding issues on the deposition

18   protocol.

19        **MR. RATLIFF:**  Yeah, Your Honor.  I spoke with --

20   sorry.  I spoke with --

21        **THE COURT:**  Don't kick anything in here because it's

22   probably going to break.  It all breaks whether you kick it or

23   not.

24        **MR. RATLIFF:**  I may have wanted to kick a few things.

25        **THE COURT:**  Just ask the people on the telephone who

03:48   1   can't speak to us.

2        **MR. RATLIFF:**  No, Your Honor.  I spoke with

3   Mr. Bachus before -- and I don't know if he speaks on behalf of

4   the whole plaintiffs' leadership committee -- and we were sort

5   of in line with what we envisioned there.  We are certainly a

6   little bit delinquent in getting them back a draft of some

7   final redlines, but we are as interested in getting it done as

8   they are.

9        What Mr. Bachus and I talked about was can we

10  get this done within the next week, so a week deadline.  If

11  it's not done by then, submit simple letter submissions with

12  where the disputes are, and either you pick and choose which

13  ones you want or we set up a short telephonic hearing to go

14  through those.  It's something, at least in my mind, there

15  doesn't need to be extensive motion practice on.

16       **THE COURT:**  Let's handle it that way.  We are going

17  to be back here in a couple weeks.  If there are issues that

18  you all can't resolve and you want me to resolve them and you

19  pass them along to me in that form, I will either make a

20  decision before the next status conference or, if I feel like I

21  need to talk to you about it, we will do it then.

22       **MR. BACHUS:**  Your Honor, Kyle Bachus.  Just to

23  clarify, can we do a submission to you on Friday if we are

24  unable to -- for those topics that we are unable to agree on by

25  Wednesday, we would submit to you by Friday of next week?

03:49

1          **THE COURT:**  Sure.

2          **MR. BACHUS:**  Thank you, Your Honor.

3          **THE COURT:**  If I need to talk to you all about that,

4    if I want to have a telephone conference, who am I including in

5    that conference?

6               Let the record reflect that half the lawyers in

7    the room raised their hand.

8          **MR. RATLIFF:**  Can we designate one for each party?

9          **THE COURT:**  No.  We will just do it the way we have

10   been doing it.  If I need to set something, we will set it and

11   have a call in like we did the last time.  We will handle it

12   that way.

13              **MR. BACHUS:**  Your Honor, I'm happy to handle it.

14         **THE COURT:**  I was foolishly thinking I could just

15   have a couple of lawyers on the phone.  That's okay.

16              The last issue on the agenda is outstanding

17   discovery motions.  There is a motion pending.  Is it some

18   third party discovery?  I have a discovery motion that's

19   pending next week or the week after.

20         **MR. MOORE:**  I think that was a motion to compel

21   compliance by a third party to Ochsner.  It was filed by

22   Val Exnicios.  That was something that Judge Engelhardt

23   suggested be done so we can receive certain records from that

24   facility.

25         **THE COURT:**  Okay.

03:51   1          **MR. OLINDE:**  I believe that's next Wednesday.

2          **THE COURT:**  Yeah, I think it's set for hearing next

3     Wednesday.

4          **MR. COFFIN:**  Your Honor, Chris Coffin on behalf of

5     plaintiffs.  That's correct.  Mr. Exnicios filed that.  I

6     actually talked to him this morning.  He has received,

7     miraculously, some response from Ochsner.

8          **THE COURT:**  That's usually what happens.

9          **MR. COFFIN:**  Yeah.  Amazing how it happened.  I'm not

10    sure that it solves the problem, but I know he is aware that

11    Your Honor would like to know whether or not that motion to

12    compel is still needed on the calendar.  I will confer with him

13    and make sure he gets back in touch with you.

14         **THE COURT:**  Okay.  Would you let him know that --

15    obviously that is not an unusual phenomenon.  Oftentimes that

16    happens, and then I don't learn about it until the day of the

17    hearing.  And now we are arguing about the adequacy of what was

18    produced as opposed to the fact that nothing was produced, and

19    I'm not prepared to address it.

20              He needs to let us know if he is going to moot

21    the motion or if he needs to raise other issues, and he will

22    need to let Ochsner know the same thing.  Normally in a case

23    where the motion says, "We sent the subpoena and got nothing,"

24    and I find out that now you have gotten something, I moot the

25    motion and we start over again.  I don't want to do that in

03:52

1    this case, obviously.  We are in a different sort of framework

2    here.

3              Communicate all that to him.  If I still have to

4    make a decision on any of that, he is going to have to quickly

5    file some sort of supplemental -- I can't hold Ochsner -- I

6    can't hold a third party to the same set of rules we set here

7    in terms of letter briefs and everything else.  If they are not

8    a party to the litigation, I have to give them their

9    opportunity to be heard.

10             So just communicate all that to him and ask him

11   to let us know what the fate of that motion is going to be.

12             MR. COFFIN:  Understood, Your Honor.  I will do that.

13   For Your Honor's benefit, this potentially could be an ongoing

14   issue.  We are trying to resolve this product ID issue on a

15   larger scale.  As you can imagine, with all of the defendants

16   involved and the 505(b)(2)s coming onto the market in 2011,

17   there's major product ID issues here, which Judge Engelhardt

18   has been trying to address, but this unfortunately will

19   continue to happen until we get that resolved.

20             So we do have that as an issue in front of

21   Judge Engelhardt, but I wanted you to know that because I'm

22   going to convey that to Mr. Exnicios.  Hopefully this one will

23   be moot.  But we recognize now, from the plaintiffs' side, once

24   we actually have filed a motion that we get some response.  We

25   hate to go down that path, but unfortunately it's worked.

03:54

1       **THE COURT:**  Normally I'm not dealing with an

2  unlimited or unknown number of nonparties.  Right?  When this

3  happens once in a case, I get the parties in and tell them how

4  it's going to be, and it doesn't happen again.

5       **MR. COFFIN:**  Right.

6       **THE COURT:**  When we are dealing with nonparties, it's

7  hard to craft a solution that we know is going to work in the

8  future, but I'll try.

9       **MR. COFFIN:**  Right.  Well, we have a solution that we

10  are going to propose to Judge Engelhardt.

11       **THE COURT:**  Okay.

12       **MR. COFFIN:**  So hopefully we will get it done.

13       **THE COURT:**  Okay.  I'll stand by on this.

14           Anything else?

15       **MR. RATLIFF:**  Your Honor, one last thing, at the very

16  real risk of over-lawyering this.

17           On our motion to compel, when Mr. Wool got up,

18  you said, "I have ruled in your favor."  I just wanted to

19  clarify where we stood procedurally on that, which is maybe

20  that you are not denying the motion, but it should be referred

21  to Judge Engelhardt or we should take it up with

22  Judge Engelhardt, in which case we would rather withdraw the

23  motion and address that with Judge Engelhardt tomorrow.

24       **THE COURT:**  The record will reflect that your motion

25  is withdrawn.

03:55

1    **MR. RATLIFF:**  Thank you, Your Honor.

2    **THE COURT:**  I was going to deny it, but I was going

3  to deny it with a statement in a minute entry as to why.  I

4  think probably that is a better solution, just to withdraw the

5  motion and address it to Judge Engelhardt.  I'm going to let

6  him know.  To the extent that I can talk to him before y'all

7  see him, I'm going to let him know what's coming.

8    **MR. RATLIFF:**  It is an issue of maybe paramount

9  importance for certainly Sanofi and I think the other

10  defendants.

11    **THE COURT:**  Okay.  Mr. Lambert has something.

12    **MR. LAMBERT:**  Palmer Lambert, plaintiffs' liaison

13  counsel.

14         Can we also set the December date while we are

15  all here?  We will be before Judge Engelhardt on December 15.

16  If we could have the 14th, the day before, if that works.

17    **THE COURT:**  How do you all set dates with him if he

18  won't let you bring your phones in the courtroom?

19    **MR. LAMBERT:**  It's tough.  It's very difficult.

20    **THE COURT:**  You all will be with him on the 15th?

21    **MR. LAMBERT:**  Yes, Your Honor.

22    **THE COURT:**  Y'all keep picking weeks when I have

23  criminal duty, which impacts the time.  So what time are you

24  with him on that day?

25    **MR. LAMBERT:**  I believe we are 8:30 through about

03:56   1   11:00 in the morning.

2                THE COURT:   How about the morning before that day?

3   How about the morning of the 14th?  Okay?  We will meet at

4   10:00.  We will set it for 10:00 on December 14.

5                MR. LAMBERT:   Thank you, Your Honor.

6                THE COURT:   I'm going to try and get in touch with

7   Judge Engelhardt.  See you in a few weeks.

8                (Proceedings adjourned.)

9                               * * *

10                           <u>CERTIFICATE</u>

11                I, Toni Doyle Tusa, CCR, FCRR, Official Court

12   Reporter for the United States District Court, Eastern District

13   of Louisiana, certify that the foregoing is a true and correct

14   transcript, to the best of my ability and understanding, from

15   the record of proceedings in the above-entitled matter.

16

17

18                               <u>*s/ Toni Doyle Tusa*</u>
                                 Toni Doyle Tusa, CCR, FCRR
19                               Official Court Reporter

20

21

22

23

24

25