## EXHIBIT A

### Supplemental Guidance Regarding Potential Sources of Electronically Stored Information

This document contains guidance on how a lawyer and her client can comply with their shared discovery obligations relating to Electronically Stored Information ("ESI"). Individual Counsel are reminded of their obligations under Federal Rule of Civil Procedure (FRCP) 26(g) to conduct a "reasonable inquiry" into ESI. Individual Counsel are reminded of the preservation requirements of PTO 1.

As a reminder, the Plaintiff Fact Sheet requires that you produce with the fact sheet certain documents and/or ESI. Specifically, you must produce ["Social media or internet posts to or through any site (including, but not limited to, Facebook. MySpace, LinkedIn, Google Plus, Windows Live, YouTube, Twitter, Instagram, Pinterest, blogs, and Internet chat rooms/message boards) relating to Taxotere or Docetaxel or any of your claims in this lawsuit."] (see PFS [Document Request 18]) and representative photographs of your client from before her treatment, during her treatment, 6 months after her treatment, and how your client looks today (see [Document Requests 24-28]).

Keep in mind, this guidance does not provide an exhaustive list of sources that any individual may have, but it provides guidance on how you may discuss the information with your clients. The most important thing is to try and get your clients to think about how they use their computers, phones, and other technology so that you may then search those sources for potentially discoverable information.

Many times, individuals may not know what you mean with questions like "does your phone automatically synch with the cloud?" because relatives might have helped them set up their devices. When planning to talk with a client about these potential sources of discoverable information, it can be helpful if the individual brings along her own personal "tech nerd" (which may be a family member) to assist in answering questions.

Throughout your conversations with your client, you should keep in mind that your goal is to get that person to think about how they use technology now and how they have used technology in the past. If you get pushback from your client, it often helps to remind her that these are typical questions asked to everyone on both sides of the lawsuit. Assure your client of her privacy and that both sides have a legal obligation to protect confidential information produced during the course of the litigation.

Another important area to cover with your clients is replacing the hardware they use, like computers or phones. Individuals will often be involved in a case over many years and may not realize that the desktop computers, phones or other devices they want to upgrade may contain discoverable information. Have a discussion about future upgrades to devices and the importance of keeping your office informed about hardware changes. Let them know that an upgrade is fine, as long as the correct steps are taken to preserve the potentially discoverable information on the device.

Finally, you only need to concern yourself with sources of information within the scope of discovery. This can get confusing to people that are not accustomed to participating in litigation. One example is for an individual that currently works and has a work email address. You should only be interested in that email source IF the person sends or receives discoverable emails using that account.

With regard to specific sources, here are some helpful points to consider when helping your clients think about how they communicate and store information.

**Traditional Electronically Stored Information**. Email and user created documents are what we often associate with ESI. You should consider discussing with your clients the various email accounts they may use or may have used in the past that may contain information that may be discoverable. Also, be sure to ask about old accounts that your clients may or may not have access to anymore. In addition to email, be sure to ask your clients about where they save documents that they may create, like journals or letters. It may be on a physical device or in some cloud storage location.

If your client says that she has emailed about her hair loss, it may be easiest to walk her through searching that email for certain terms, like (by way of example), (a) breast cancer; (b) cancer; (c) chemotherapy; (d) chemo; (e) hair loss; (f) hair; (g) bald; (h) taxotere; (i) docetaxel; (j) taxane; (k) alopecia; (l) sanofi; (m) pharmaceutical; (n) side effect; (o) warning; and any other terms likely to retrieve a ESI response to a request for production. Remember, your client has probably never had to search for and turn emails over to a lawyer. So, you should do more than tell your client she needs to send you emails and pictures relating to her chemotherapy and hair loss.

**Social Media**. More and more individuals communicate about their lives using social media. Exploring the individual's use of social media is important. In addition to the usual questions about Facebook and twitter, try and consider asking about applications that the person might not realize are social media, like LinkedIn or Flickr. Keep in mind that some clients may say that they do not use social media, but during the course of the conversation will realize that they do. You should identify both current and past accounts that your client may have used.

**Text or Instant messages**. Younger people may utilize text messaging more often than older people, but you should still discuss the use of these services with everyone.

**Photographs**. The Plaintiff Fact Sheets calls for the production of certain photographs. Photographs that your client may have to produce with the PFS may be in electronic format. You should make every effort to collect those photographs from your client in a way that preserves the metadata with the photographs, such as the date taken. This guidance also applies to other documents or information your client may have. To the extent it is proportional and not unduly burdensome, you should try to get the information in an electronic format that preserves the information's metadata and upload that through MDL Centrality.

Many attorneys have been uploading PDFs of pictures with dates written or typed on the PDF. Where possible, you should upload to Centrality a copy of the original digital file, for example a .jpeg file and use a different method of indicating the date (such as putting the date in

the file name).  It is not helpful to print a picture that was originally in electronic form and scan it back in, or take a picture of an electronic picture and submit that file because all potential date information is lost.  Often times, the digital version of the picture will retain in its metadata the "date taken."  We have confirmed with the Centrality administrator that Centrality leaves this metadata information intact.  If you want to be sure that the date information is uploaded, you can also put the date of the photograph in the name of the picture file and the "document type description" on MDL Centrality.

The Court has made clear that it is the Plaintiff's obligation to provide photographic evidence which accurately and adequately reflects Plaintiff's hair loss injuries.  Providing sufficient photographs within 5 years prior to chemotherapy, which depict Plaintiff's hair prior to treatment with Taxotere, and providing sufficient current photographs, which demonstrate plaintiff's current hair loss following treatment with Taxotere, is needed to prove the client's claim.

Technology has become so pervasive in our world that oftentimes people forget about how much they use it to communicate with their community of friends, family and others. It is incumbent on each attorney to gently but firmly probe the responses to the PFS.  If a client indicates that she has no or very few photographs, probe beyond that initial answer.  Were her children or spouse with her at her chemotherapy treatments?  Might they have pictures on their phones from before, during or after chemotherapy treatments?  Does a parent, child, or spouse have recent picture on their phones?  It should be helpful if you explain to your client *why* these pictures are crucial to her case – so she understands that they are an important part of proving her case.

Having a conversation with your clients about how they communicate and store information up front will help focus your clients on areas that may need to be searched to see if they have potentially discoverable information. This process will help your clients help themselves by enabling the collection and production of the information now so as to avoid a spoliation issue down the road.  **Also, as lawyers, you have all seen defense counsel ask a plaintiff about how they communicate in depositions and whether they have information that they have not given you.**  Use your experience as a lawyer, having seen what defendants look for, to also help guide you through this process.

> **The PSC has lawyers who can assist your office if your staff has general questions on how to talk to your clients about ESI, how to retrieve ESI, how to upload it to Centrality, and how to respond to deficiencies.  Please use these lawyers as a resource.  For ESI-related questions, you can contact Zachary L. Wool at (504) 524-3300 or zwool@bkc-law.com, or you can contact Abby McClellan at (816) 714-7123 or mcclellan@stuevesiegel.com.**