1      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF LOUISIANA
2
  ************************************************************
3  IN RE:   TAXOTERE (DOCETAXEL)
   PRODUCTS LIABILITY LITIGATION
4                                  MDL No. 16-2740
   VS.                             Section "N"
5                                  New Orleans, Louisiana
                                   December 15, 2017
6  THIS DOCUMENT RELATES TO
   ALL CASES
7
  ************************************************************
8
   **TRANSCRIPT OF THE STATUS CONFERENCE WITH THE STEERING COMMITTEES**
9       **HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT,**
              **UNITED STATES DISTRICT JUDGE.**
10
11 **APPEARANCES:**

12 FOR THE PLAINTIFFS:              MS. DAWN M. BARRIOS
                                    Barrios Kingsdorf & Casteix
13                                  701 Poydras Street
                                    Suite 3650
14                                  New Orleans, Louisiana  70139

15                                  MR. M. PALMER LAMBERT
                                    Gainsburgh Benjamin David
16                                    Meunier & Warshauer
                                    1100 Poydras Street
17                                  Suite 2800
                                    New Orleans, Louisiana  70163
18
                                    MR. CHRISTOPHER L. COFFIN
19                                  Pendley, Baudin & Coffin
                                    1515 Poydras Street
20                                  Suite 1400
                                    New Orleans, Louisiana  70112
21
                                    MS. KAREN B. MENZIES
22                                  Gibbs Law Group
                                    400 Continental Boulevard
23                                  6th Floor
                                    El Segundo, California  90245
24

25

**OFFICIAL TRANSCRIPT**

```
 1                    MR. J. KYLE BACHUS
                      Bachus & Schanker
 2                    1899 Wynkoop Street
                      Suite 700
 3                    Denver, Colorado  80202

 4                    MR. LAWRENCE J. CENTOLA
                      Martzell Bickford & Centola
 5                    338 Lafayette Street
                      New Orleans, Louisiana  70130
 6
                      MS. ABBY E. McCLELLAN
 7                    Stueve Siegel Hanson
                      460 Nichols Road
 8                    Suite 200
                      Kansas City, Missouri  64112
 9
                      MR. DANIEL P. MARKOFF
10                    Atkins & Markoff Law Firm
                      9211 Lake Hefner Parkway
11                    Suite 104
                      Oklahoma City, Oklahoma  73120
12
                      MR. DAVID F. MICELI
13                    Simmons Hanly Conroy
                      One Court Street
14                    Alton, Illinois  62002

15                    MR. RAND P. NOLEN
                      Fleming, Nolen & Jez
16                    2800 Post Oak Boulevard
                      Suite 4000
17                    Houston, Texas  77056

18                    MR. ANDREW LEMMON
                      Lemmon Law Firm
19                    650 Poydras Street
                      Suite 2335
20                    New Orleans, LA 70130

21                    MR. ALEXANDER G. DWYER
                      Kirkendall Dwyer
22                    440 Louisiana
                      Suite 1901
23                    Houston, Texas 77002

24

25
```

**OFFICIAL TRANSCRIPT**

```
 1                                   MS. GENEVIEVE ZIMMERMAN.
                                     Meshbesher & Spence
 2                                   800 Lasalle Ave
                                     Suite 2800
 3                                   Minneapolis, MN  55402

 4

 5   FOR SANOFI S.A.:                MR. DOUGLAS J. MOORE
                                     Irwin, Fritchie,
 6                                      Urquhart & Moore
                                     400 Poydras Street
 7                                   Suite 2700
                                     New Orleans, LA  70130
 8
                                     MR. HARLEY V. RATLIFF
 9                                   MR. JON STRONGMAN
                                     Shook, Hardy & Bacon
10                                   2555 Grand Boulevard
                                     Kansas City, Missouri  64108
11
     FOR ACTAVIS PHARMA, INC.:       MR. MICHAEL J. SUFFERN
12                                   Ulmer & Berne, LLP
                                     600 Vine Street
13                                   Suite 2800
                                     Cincinnati, OH 45202
14
     FOR HOSPIRA                     MR. JOHN F. OLINDE
15   WORLDWIDE, LLC:                 Chaffe McCall
                                     2300 Energy Centre
16                                   1100 Poydras Street
                                     New Orleans, LA  70163
17
     FOR SANDOZ, A NOVARTIS          MR. R. CLIFTON MERRILL
18   DIVISION:                       Greenburg Traurig
                                     Terminus 200
19                                   3333 Piedmont Road, NE
                                     Atlanta, GA  30305
20
     FOR ACCORD HEALTHCARE,          MS. JULIE A. CALLSEN
21   INC.:                           Tucker Ellis
                                     950 Main Avenue
22                                   Suite 1100
                                     Cleveland, OH 44113
23

24

25
```

**OFFICIAL TRANSCRIPT**

```
 1   FOR SUN PHARMA GLOBAL,          MR. GEOFFREY COAN
     INC.:                          Hinshaw & Culbertson
 2                                  28 State Street
                                    24th Floor
 3                                  Boston, Massachusetts  02109

 4

 5

 6

 7

 8   Official Court Reporter:    Mary V. Thompson, RPR, FCRR
                                 500 Poydras Street, B-275
 9                               New Orleans, Louisiana 70130
                                 (504) 589-7782
10

11

12

13
             Proceedings recorded by mechanical stenography;
14           transcript produced via computer.

15

16

17

18

19

20

21

22

23

24

25
```

**OFFICIAL TRANSCRIPT**

# P R O C E E D I N G S

THE COURT:  Y'all can be seated.

MR. COFFIN:  Morning, Your Honor.

THE COURT:  Good morning.  Let's go ahead and begin.

We have a little bit of a -- we're running a little bit late, and there are a couple of things I wanted to cover with you after meeting with liaison counsel just now.

For the record, this is the meeting of the committees in Multidistrict Litigation No. 2740, *In Re:  Taxotere (Docetaxel) Products Liability Litigation.*

I did look at Joint Report No. 7, which was submitted in draft form in connection with our conference today, our 10:00 conference, and I think it's very complete and comprehensive.  I didn't have any particular issues with it that I wanted to raise. We'll get to that in a second if any of you have any topics you want to raise.

A couple of housekeeping things that I'll go ahead and mention at the outset.

Number one, I have your submissions for the reappointment for the committees and whatnot.  I will send something out on that hopefully by the end of the year.  You should not expect any significant changes.

If you don't hear something from me by the end of the year, please keep doing what you're doing in the capacity you're

**OFFICIAL TRANSCRIPT**

1   in.   Nobody here turns into a pumpkin on January 1st so you

2   should continue to serve in the capacities that you serve in and

3   not expect any significant changes.

4          There are a couple of things I do want to do on that,

5   but we'll get to that.

6          The other thing is, the last time we discussed the

7   electronically stored information, there was a conversation --

8   which is reflected on the record -- and it related specifically

9   to the recovery of e-mails, blog posts, and whatnot by plaintiffs

10  which are required to be produced in connection with the

11  Plaintiff Fact Sheet submissions.

12         And at the time of the conversation last time, I asked

13  for letter submissions of what modifications could be made to the

14  protocol that plaintiffs had employed.   I did receive submissions

15  from both sides on it, and I have -- I should sign -- I wanted to

16  get it out yesterday, but we'll get it out today.   I will sign

17  it.   It will be in order form.   It will -- in my opinion, it is a

18  hybrid -- although I'm sure plaintiffs are going to say, Well,

19  gee, you agreed with defendants.   And defendants are going to

20  say, Well, gee, you took out stuff so you didn't really agree

21  with us.

22         At any rate, I do think it needs to be in an order form

23  as opposed to a simple revision.   Plaintiffs had submitted a new

24  and improved protocol for counsel -- or notification to counsel,

25  and I did use that as an Exhibit A instructive to plaintiffs'

**OFFICIAL TRANSCRIPT**

1  counsel, but I made it Exhibit A to an order which is
2  substantially, but not precisely, what the defendants had
3  submitted.
4      The reason why I think it needs to be in an order --
09:18:57  5  and I'm telling you this orally so that it can repeated both
6  orally, in e-mail, and when my order is transmitted to other
7  plaintiffs' counsel.  It needs to have the weight of the Court's
8  authority, because I think the natural proclivity of busy lawyers
9  is to maybe defer -- and I'm not casting aspersions on anybody's
09:19:24  10  diligence or professionalism.  It's just that we're dealing with
11  volume here, and I know lawyers are busy so maybe there's sort of
12  an institutional imperative -- for all lawyers, not just
13  plaintiffs' lawyers -- but you work on what's in front of you,
14  and if you can defer things, and you're really busy, then chances
09:19:43  15  are you get to things when you can get to them.
16      But we really do need this information.  Plaintiffs'
17  counsel -- as I said last time, it seems like plaintiffs' counsel
18  would want this information more than anybody since it's your
19  clients' information and it might, to some extent, maybe even
09:19:58  20  greatly impact the plaintiffs' cases.
21      So it's going to be in the form of an order, which I
22  would like you-all to have transmitted.  Plus the order makes --
23  puts the Court in a better position to enforce this obligation if
24  it's not complied with.  Then it's a violation of this order as
09:20:19  25  opposed to simply not substantially satisfying the Plaintiff Fact

**OFFICIAL TRANSCRIPT**

1    Sheet obligation.

2            So you'll be receiving that probably later today.

3            Let's see.  We did get the order -- the proposed

4    pretrial order regarding procedures for withdrawal of plaintiffs'

*09:20:37*    5    counsel, and it's fine.  I'll enter that one, too, if we can get

6    it to you today or early next week.

7            And that was a product of negotiation from both sides

8    so we'll enter that one.  Appreciate that.

9            I spoke to liaison counsel about where we were.  I know

*09:20:54*    10   you-all have been very busy with regard to the trial prep and

11   depositions and discovery that's taking place.  Without getting

12   into the day-by-day, blow-by-blow of the discovery, I understand

13   there's even discovery going on as I speak, or sometime today,

14   which is, I think, excellent.  And y'all have a schedule of

*09:21:13*    15   things coming up discovery-wise for the next several weeks with

16   an eye towards getting our nominee plaintiffs not only submitted

17   but also decide on which case we're going to try as our first

18   trial in the bellwether.

19           With that, let me ask Counsel, is there anything

*09:21:33*    20   you-all want to bring up with regard to what's in this draft

21   report first?

22           MR. RATLIFF:  Good morning, Judge Engelhardt.

23   Harley Ratliff on behalf of Sanofi.

24           THE COURT:  By the way, not to interrupt you, but we

*09:21:46*    25   did have a sign-in sheet.  If you have not signed in, please do

**OFFICIAL TRANSCRIPT**

1  so.  If your name is not on that sign-in sheet -- not to be ugly

2  about it, but you probably shouldn't be in here.  This is a

3  meeting for the committee members, and we try to keep the names

4  on the sign-in sheet.

*09:22:04*

5          Every once in a while -- not just in this case --

6  somebody sneaks in and I find out later.  You know, Who the heck

7  was that?  So you really need to be on the sheet.  And that's why

8  we try to ask beforehand, Let us know if you're coming.

9          Your name should be on the sheet.  And if you are on

*09:22:18*

10  the sheet, you should sign in so that we have a record of your

11  appearance.

12          I'm sorry.  Go ahead, Harley.

13          MR. RATLIFF:  Just a couple of items, Your Honor.

14          We talked with counsel before on sort of what was on

*09:22:29*

15  our agenda.  I think one thing important to me is that I know

16  you've seen probably in the last month, month and a half, the

17  uptake in filings.  They've gone from 2,000 to roughly 6500.

18          And where we've started to see filings in the last

19  several weeks, about 350 of those are in New Jersey where Sanofi

*09:22:47*

20  is based.  Most of those are multi-defendant cases so they won't

21  be removed by Sanofi.

22          In terms of federal/state coordination, which I know is

23  very important to Ms. Barrios, almost all of those cases have

24  been filed by Hunter Shkolnik's firm.  And I know the last

*09:23:03*

25  time -- I think he has all of the Delaware cases as well.  And so

**OFFICIAL TRANSCRIPT**

1  I know at the last hearing he came up and said, Yes, the Delaware

2  cases will fall in line with the MDL; we'll track the MDL; we

3  don't plan to get those Delaware cases out in front of the MDL.

4           I was hoping Mr. Shkolnik would be here today because I

09:23:21  5  would like to get the same representation as it relates to all of

6  the New Jersey cases that have been filed.

7           THE COURT:  I think he e-mailed -- did he have a --

8  yesterday we got an e-mail from him.  He was planning on being

9  here today.  What was the e-mail again?

09:23:36  10           THE LAW CLERK:  It was weather-related travel delays.

11           MR. RATLIFF:  So that's one issue I just wanted to

12  preview for the Court as it relates to federal/state

13  coordination.

14           The other issue that has come up that's along the same

09:23:48  15  lines that we'll talk with Mr. Coffin and Ms. Menzies about is

16  there was a handful of cases filed in Cook County also by

17  Mr. Shkolnik's firm that have hundreds of plaintiffs in four

18  cases, all with no product ID from what we can tell.

19           We're not necessarily sure why those were filed, but

09:24:05  20  that's something that we would need to get addressed with

21  plaintiffs' counsel fairly soon.

22           And at this stage, because so many cases have been

23  coming in so rapidly, there may be cases in other state court

24  venues that I'm not aware of, but that's something that is, sort

09:24:20  25  of, of paramount importance to us.

**OFFICIAL TRANSCRIPT**

1    THE COURT:  Yeah.  And this is going to continue to be

2  a problem in terms of jurisdiction.  We've already encountered

3  this, particularly with regard to the California cases, where we

4  have multiple plaintiffs -- dozens of plaintiffs, or even more

09:24:37    5  than dozens, maybe hundreds of plaintiffs that are joined

6  together and we're going to have to sort through those.

7    We did discuss, with liaison counsel, the idea of

8  putting together an order that allows filing here before product

9  ID can be accomplished such that if it is such that a plaintiff

09:25:02    10  belongs in state court -- in other words, there's a non-diverse

11  situation -- that plaintiff can go back and refile.

12    In other words, like a tolling agreement, which I think

13  would serve everybody's interest in having those here to take

14  advantage of the mechanism -- we've spent a lot of time in trying

09:25:19    15  to discern the proper defendant, at which point the plaintiff

16  would have the opportunity, if, in fact, there is state court

17  jurisdiction, to go back and file in state court knowing who the

18  proper defendant is rather than having to get into state court

19  with multiple defendants and then sort out there whether or not

09:25:39    20  the case is one that could have been removed.

21    So it's a headache, and I hope Mr. Shkolnik would agree

22  to your suggestion regarding the other states, that they at least

23  work through the MDL as opposed to getting out in front in state

24  court.

25    I have sent the letter to the one state court judge

09:25:57

**OFFICIAL TRANSCRIPT**

1  that Ms. Barrios had identified, and she has given me the names

2  of the others apparently now assigned cases.  I'll send the same

3  letter.

4          I don't know how they're received.  If I were a state

09:26:13

5  court judge that received the letter that we had all -- I think

6  you-all had all had input in, I think the natural inclination of

7  busy state court judges is that they kind of like the idea of the

8  MDL tackling a lot of issues because that takes it off of their

9  docket, so I'm hoping that that would be the same in this case.

09:26:33

10         MR. RATLIFF:  We will encourage them to do that as

11  well, Your Honor.

12         I think the other two issues -- and I'll touch on these

13  very briefly because I think they were probably touched on by

14  liaison counsel.

09:26:43

15         Because we are in a much different standpoint than we

16  were in November when we had 2,000 cases, and now we have

17  6700 cases, I would think that maybe by the end of today or

18  Monday, we'll have probably a good idea of maybe what the size is

19  of this litigation.

09:26:58

20         But as it relates to PTO 70, there are just so many

21  more plaintiffs than there were at that time.  There was probably

22  a little bit of confusion as to what the plaintiffs thought that

23  applied to and what we thought that applied to, and also maybe

24  some unintended consequences of some of the provisions in there.

09:27:15

25  So they sent us some revisions to PTO 70; we sent some to them.

**OFFICIAL TRANSCRIPT**

1    Hopefully we can get that worked out.

2             But that is somewhat of a time-sensitive matter and so

3    if we don't, we'll probably be back in front of you relatively

4    shortly on that.

5             THE COURT:  Okay.  We did discuss that in the liaison

6    committee meeting.  We spent some time talking about it and I

7    understand the difficulties of it, so see what you can do to work

8    that out.  And if you can't, then we'll be looking for you to

9    bring that forward soon.

10            MR. RATLIFF:  I guess the last thing on our agenda --

11   and hopefully not too terribly controversial -- is hopefully

12   we're close to getting some sort of product ID order that has a

13   beginning date and an end date.

14            We're getting to the point where we're almost to an

15   equilibrium of cases with product ID and cases without product

16   ID.  And as this goes forward, I think we're going to hit a

17   tipping point where there will be more cases without product ID.

18   So when we have cases without product ID that have been pending

19   for a year, a year and a half, that's something we want to get

20   resolved as quickly as possible.

21            THE COURT:  Right.

22            MR. RATLIFF:  Hopefully we're close on that.  It's a

23   fairly comprehensive order.  It's probably going to cause some

24   administrative tracking headaches with our paralegals, but we're

25   hopefully close on that.

*09:27:28*
*09:27:43*
*09:27:57*
*09:28:13*
*09:28:24*

**OFFICIAL TRANSCRIPT**

1       THE COURT:  Okay.  Good.  Good.

2       What do you-all have in mind -- and maybe I shouldn't

3 ask this right now, but maybe -- what do you-all have in mind in

4 terms of those where there is no ID after we employ the

*09:28:41*  5 procedure?

6       I mean, are there not going to be cases where we just

7 don't know?

8       I mean, the normal process would be a summary judgment

9 motion, but we certainly don't want to get an avalanche of such

*09:28:53*  10 motions.

11       I mean, do we think there are going to be a lot of

12 cases where we just don't know as a result --

13       MR. COFFIN:  Your Honor, Chris Coffin on behalf of the

14 plaintiffs.

*09:29:02*  15       To attempt to directly answer your question, I think

16 the reality is we really don't know.  However, we've worked hard

17 to add into that product ID order the processes that we think

18 will flesh out what the product ID is.

19       THE COURT:  Right.

*09:29:17*  20       MR. COFFIN:  So our hope is there are very few, if any,

21 at the end of the process.  I think I would be just guessing if I

22 gave you numbers.

23       THE COURT:  Okay.  All right.  Like I said, maybe we'll

24 get -- and I don't want to get too far ahead of ourselves because

*09:29:30*  25 we're in the middle of it now.

**OFFICIAL TRANSCRIPT**

1    MR. MOORE:  Yes.  The order we have under advisement,

2    the provisions in it address that circumstance.

3          We don't know how many cases will go through this

4    process and have a subpoena issued, a subpoena that can be

09:29:47    5    enforced by the Court, to produce this evidence.

6          We've seen where that kind of resistance has occurred

7    with one facility, and the subpoena, we're told, worked.  And

8    we -- the information was obtained and the adjustments to the

9    pleadings are able to be made there.

09:30:02    10          But the order that we have has an end point for this

11    process, which the defendants would be able to bring a motion if

12    no product ID exists at the end of that.

13          We certainly wouldn't flood the Court with an avalanche

14    of summary judgment motions on product ID, and we would work with

09:30:24    15    the other side to figure out the best way to process those once

16    we got to that point.

17          THE COURT:  Okay.

18          MR. MOORE:  But it's sort of in the abstract as there

19    may be none, there may be a hundred.  Who knows.

09:30:34    20          THE COURT:  Okay.

21          Go ahead, Mr. Coffin.

22          MR. COFFIN:  Thank you, Your Honor.  I'll just address

23    a couple things the Court addressed and Mr. Ratliff addressed.

24          The cases in New Jersey, those cases -- I know from my

09:30:48    25    firm in particular, we had some plaintiffs who are New Jersey

**OFFICIAL TRANSCRIPT**

1    residents.  We had positive product ID for Sanofi.  We don't have

2    any choice but to file those in New Jersey.  There are hundreds

3    of those cases, is my understanding, having just heard from

4    Mr. Ratliff who confirmed that.

09:31:05    5         I learned about the cases in Illinois for the first

6    time this morning.  But, as I told Mr. Ratliff before we started,

7    we'll work with him to try to figure out, do those cases need to

8    be there; is there some type of tolling agreement we can enter

9    into.

09:31:21    10        As the Court has suggested -- I will say we have

11    attempted to reach tolling agreements with Sanofi in the past and

12    they have flatly refused.  Perhaps they'll change their mindset

13    at this point, but we've not been able to overcome the idea of a

14    tolling agreement in the past.

09:31:39    15        I will go back and talk to Mr. Shkolnik about the cases

16    he filed in Illinois and talk to Mr. Ratliff and see if we can

17    work something out.

18        On the topic of tolling agreements, we have come to

19    agreements with some of the 505(b)(2) defendants so that we can

09:31:55    20    toll those cases and that they aren't being filed in state courts

21    all over the country.  So we've had some success there.

22        The Delaware -- I understand there have been a few more

23    Delaware state court cases.  You're aware of, you know, the

24    actions going forward there.

09:32:11    25        One of the things that we hadn't talked about, and I

**OFFICIAL TRANSCRIPT**

1  don't think it's -- today is when we might tee up the Delaware

2  state court trial in the succession of what we're doing here.  I

3  did not talk to Mr. Ratliff about that, but that's something that

4  just came to mind when we talked about the state court cases.  So

09:32:28  5  I think we'll be bringing that to you at some point.

6          THE COURT:  Okay.

7          MR. COFFIN:  Kind of in that vein -- not to be argued

8  today, but I did tell Mr. Ratliff that I do think that, if the

9  defense is going to bring the lexicon argument to Your Honor with

09:32:43  10  regard to the second waive of trials, we need to do that sooner

11  rather than later.  There are -- I think five of the picks are

12  from outside of the Eastern District of Louisiana.

13         You know, quite frankly, we don't see the lexicon issue

14  the same way the defense does, but we'd like to know what the

09:33:03  15  Court thinks about that, after we've done some briefing and

16  argument on it, because we will be starting to expend resources

17  to work up those cases very soon.  And if -- you know, those

18  cases -- if Your Honor decides those cases can't be tried here, I

19  think the parties' efforts and resources could be spent in a

09:33:22  20  better way.

21         THE COURT:  Okay.  Do you want to put together a

22  briefing schedule on it?  I know you're busy with the discovery

23  right now, and I think you're right, it's not a front-burner

24  issue, but if it is one that we're going to have to rule on, then

09:33:35  25  maybe we should put together some kind of briefing schedule.  If

**OFFICIAL TRANSCRIPT**

1  you want to talk about that --

2      MR. COFFIN:  I think that would be a good idea.  Again,

3  I had not discussed that with Mr. Ratliff, so maybe we should do

4  that and come back to the Court with a suggestion.

09:33:48

5      THE COURT:  No, I understand the issue.

6      MR. OLINDE:  I think you also need to discuss it

7  with -- it's the second trial so you have some with

8  the 505(b)(2)'s.  So we haven't had any discussions yet.  I think

9  we have to be part of that same discussion.

09:34:01

10      MR. COFFIN:  I recognize that.  Thank you, Mr. Olinde.

11  I'll be happy to talk to you about that.

12      We'll get together and come up with a briefing schedule

13  and come back to you on it.

14      THE COURT:  Okay.

09:34:10

15      MR. RATLIFF:  Your Honor, we haven't talked with our

16  client about the lexicon issue.  It's something we will do in

17  short order and try and get a briefing schedule if needed.  We

18  have eight plaintiffs total in Flight 2.

19      MR. COFFIN:  I don't know if it's eight or ten.

09:34:24

20      MR. RATLIFF:  There are eight or ten that have that

21  issue.  There were four that were picked by the plaintiffs that

22  are not within the Fifth Circuit.  There were four picked by the

23  defendants in the Eastern District of Louisiana.  So it is an

24  issue that is important to us because we've already started to

09:34:35

25  expend resources on investigating their picks as well as our

**OFFICIAL TRANSCRIPT**

1  picks which are in this district.

2      So we'll obviously meet and confer with them on that,

3  but it's something we would like to get resolved.

4      THE COURT:  Yes.  And there are a few ways around it.

09:34:48   5  I mean, I don't think it's a huge stumbling block, but it is an

6  issue we're going to have to encounter and decide how to handle

7  it sooner rather than later.

8      John.

9      MR. OLINDE:  I just wanted to say the same thing, which

09:35:00   10  is that it's Trial 2 so it's just one thing that we'll have to

11  get back to with the 505(b)(2) defendants and their clients

12  before we can have a discussion, but we will have a discussion.

13      THE COURT:  Okay.  Anything else?

14      MR. COFFIN:  Just the last thing was the product ID

09:35:17   15  order.  We worked really hard to try to get there, and the sooner

16  the better for us so we hope to finish it up.

17      THE COURT:  Okay.  Great.  Thank you.

18      Anybody have anything else with regard to the report?

19      MR. OLINDE:  One thing, Your Honor.  Just so that --

09:35:31   20  and we discussed this at the liaison counsel meeting, which is

21  the motions to amend, that we will be working with the plaintiffs

22  about amending PTO 37 so that there will be, for those even

23  unserved defendants, the motion to amend or leave to amend.  That

24  they will -- the attorney who is trying to seek leave to amend

09:35:56   25  will get in contact with a person at the defendants so that we

**OFFICIAL TRANSCRIPT**

 1   can try to avoid some unnecessary motions before the Court, just

 2   so you know.

 3          THE COURT:  Okay.  Good.

 4          Do we have any idea -- and I realize we still

 5   have to -- we have a ways to go on this matching issue,

 6   product -- I should say the proper defendant, but do we have any

 7   idea, percentage-wise, of -- if we have a population of, let's

 8   just say, 10,000 claimants, how they break down among the

 9   defendants in this case percentage-wise?

10          MR. RATLIFF:  Your Honor, I can address that.

11          I think some of that may be unclear to the -- if there

12   is a tolling agreement with some of the other defendants, I don't

13   know what cases would be their cases that have not been disclosed

14   to us and put into that bucket.

15          On last check earlier this week, we had about

16   3700 cases that named Sanofi only.  We had about 2800 that had

17   multiple defendants, so that I would call no product ID.  And

18   then about 500-plus that were purely non-Sanofi cases.

19          THE COURT:  Okay.

20          MR. RATLIFF:  So a big chunk of Sanofi cases, a big

21   chunk of who knows, and then I would say an unknown as it relates

22   to the 505's.

23          THE COURT:  Do we know -- well, it may be hard to tell

24   because not every market factor is necessarily reflected as a

25   claimant here.

**OFFICIAL TRANSCRIPT**

1    I guess I'm trying to get a feel for, if we did a pie

2    chart of Sanofi versus each of the 505(b) defendants -- and I

3    realize we don't know that now because we have so many -- as you

4    just pointed out, we have so many, 2- or 3,000 that have not yet

09:37:45   5    been discerned, but I'm just curious.

6         MR. RATLIFF:  The other statistic I had pulled from MDL

7    centrality, at least as of the fact sheets that we've received

8    where people have been able to mark product ID, about 45 percent

9    are Sanofi cases and then the rest break down amongst the various

09:38:03   10   other defendants.

11        THE COURT:  Okay.  And amongst the other defendants --

12   maybe Mr. Olinde, do you know how they are in terms of ranking

13   them by way of volume?  Do we know --

14        MR. OLINDE:  I think in the joint report we had put

09:38:19   15   down what the various -- from the fact sheets.  And it's in here

16   listed as to which ones have positive ID as to a particular

17   defendant.

18        THE COURT:  I'm just wondering if we have maybe one or

19   two players here on the defendants' side that are so minor

09:38:40   20   numerically --

21        MR. OLINDE:  There are some that I believe have less

22   than five identified cases in the MDL, but I haven't looked at

23   the last count, and of course there are a number of which are

24   unknown.

09:38:56   25        THE COURT:  That's right, the -- somewhere in the

**OFFICIAL TRANSCRIPT**

1   unknown there may be another two dozen.

2          MR. OLINDE:  To answer your question, Your Honor, I

3   think there are several -- more than one -- who have very, very

4   few.

09:39:07    5          THE COURT:  Okay.  Okay.

6          Anybody have anything else, even if it's not on the

7   report, that we need to talk about?

8          Mr. Lambert?

9          MR. LAMBERT:  Your Honor, Palmer Lambert for the

09:39:19   10   plaintiffs.

11          We spoke about a couple of things in the liaison

12   meeting.  The California streamline service order, we're very

13   close on that.  It's related to Section 2.

14          And we've filed -- actually Mr. Moore's office filed

09:39:35   15   last night the amended exemplar short form complaint.

16          We will be filing a motion to dismiss the French sanofi

17   entities pursuant to the stipulation that has been entered into.

18          So those are just updates from last night.

19          THE COURT:  Good.  Okay.

09:39:54   20          MR. OLINDE:  Your Honor, I have one important matter

21   here, which is that I know this is Ms. Lee's last time with us,

22   and I think for all liaison counsel we wanted to recognize her

23   service because it is above and beyond what she was doing in the

24   clerk's office with these cases.

09:40:11   25          THE COURT:  I would certainly lead a round of applause

**OFFICIAL TRANSCRIPT**

1    for her.

2              (Applause.)

3              THE COURT:  She is going, but she's not going far.  She

4    is going to be working for Magistrate Judge Roby, so it is

09:40:25   5    Magistrate Roby's gain and our loss at least.

6              I was trying to entice her, on the walk over here, with

7    some contract incentives and a no-trade clause and things of that

8    sort.

9              But I'm sure she will do a great job for Magistrate

09:40:39  10    Judge Roby, and at least she will still be here in the building

11    that we can call upon her when we have many questions about

12    what's going on, especially in these last few weeks with all of

13    the filings -- you mentioned the uptick in filings -- so we've

14    put her through the ringer here these last few weeks.

09:40:55  15              So we really appreciate all the fine work she's done on

16    the MDL.  And she's been such a critical player and she will be

17    very, very difficult to replace.

18              So we thank her for all of her hard work.

19              Anything else that we need to cover before we have our

09:41:10  20    big meeting across the hall?  Questions.  Comments.  Criticisms.

21              (No response.)

22              THE COURT:  Gripes.

23              MR. COFFIN:  None.

24              THE COURT:  Holiday spirit.

09:41:22  25              Okay.  Good.  Well, then, we'll see you-all at 10:00 or

**OFFICIAL TRANSCRIPT**

1  thereabouts across the hallway.

2      And thank you-all again for all your work.  I know you

3  have been very, very busy.  I think we've finally entered a phase

4  in the MDL where we're getting a lot of substantive work --

09:41:37  5  trial-type work done, and I know that's a lot of the trench work.

6  We really appreciate all your time and effort in that regard.

7      All right.  We'll see you-all shortly.

8                          (Proceedings adjourned.)

9

10                   *  *  *  *

11              CERTIFICATE

12

13      I hereby certify this 19th day of December, 2017, that

14  the foregoing is, to the best of my ability and understanding, a

15  true and correct transcript of the proceedings in the

16  above-entitled matter.

17

18                              /s/ Mary V. Thompson

19                     _____
                          Official Court Reporter

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**