**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABLITY LITIGATION | MDL NO. 2740 |
| | SECTION "N" (5) |
| TAWANA BENNETT, | JUDGE ENGELHARDT |
| Plaintiff, | |
| | MAG. JUDGE NORTH |
| vs. | |
| | CIV. No. 2:17-cv-14737 |
| SANOFI S.A., AVENTIS PHARMA S.A., and SANOFI-AVENTIS U.S. LLC, separately, and doing business as WINTHROP U.S., et al. | |
| Defendants. | |

- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION**
**FOR VOLUNTARY DISMISSAL WITH PREJUDICE**

Despite filing suit in the Taxotere MDL, and alleging that she suffered from disfiguring permanent alopecia as a result of Taxotere manufactured by Sanofi, Plaintiff Tawana Bennett now admits she was <u>not</u> treated with Taxotere, but was instead treated with Taxol. Taxol is a different type of taxane, and one which plaintiffs in this MDL paint as a "competitor" of Taxotere, contending that it does not cause permanent alopecia. *See e.g.* Rec Doc. 689; Rec Doc. 1750. Prior to filing suit, Plaintiff (and her counsel) had an obligation to conduct an investigation into the basic facts at issue. At the most fundamental level, this entails investigating (1) if Plaintiff was administered Taxotere, and (2) if Taxotere caused Plaintiff's persistent hair loss. Here, there is no indication that Plaintiff made any effort to conduct such an investigation. And this is not an isolated incident. To the contrary, this is at least the second case in a one month span involving Plaintiff's counsel, Pulaski Law Firm, in which dismissal has been sought on the basis the plaintiff actually received Taxol, not Taxotere. *See* January 26,

1

2018 e-mail from LaMacchia to Bieri regarding dismissal of *Myrtis Betton v Sanofi S.A., et al.*, 2:17-cv-15010 (E.D. La.), attached as **Exhibit 1**. And, it is not limited to a single law firm. Sanofi has received numerous requests from various law firms with cases in the MDL for dismissals based on lack of use of docetaxel/use of Taxol. The even greater irony here is that these plaintiffs' firms *advertise* Taxotere lawsuits by telling women, either directly or indirectly, that another option would have saved their lives and their hair. Pulaski Law Firm itself makes such veiled references, presumably to chemotherapies like Taxol[1];

**PULASKI LAW FIRM**    ABOUT    PHARMACEUTICALS    MEDICAL DEVICES    ASBESTOS    OTHER PRAC

... that Sanofi-Aventis engaged in illegal activities to increase sales of the chemotherapy medication while hiding the side effects from the public. In fact, some patients are alleging that the company knew in the 1990s that the drug carries an increased risk of permanent hair loss.

**Have you or a loved one suffered permanent hair loss after taking the breast cancer chemotherapy drug Taxotere?**

**TAXOTERE LAWSUITS**

A whistleblower lawsuit filed in 2015 by a former employer who claims that the drug maker engaged in fraudulent marketing tactics. The claim alleges that the company misrepresented the safety and efficacy of the drug for off-label uses, and provided kickbacks to physicians to incentivize them to use the drug. As a result of these schemes sales revenue of the drug increased from nearly $424 million to $1.4 billion in four years, while potentially thousands if not millions of patients were exposed to the increased toxicity and side effects of Taxotere over other less toxic chemotherapy medications.

A breast cancer survivor filed a lawsuit in 2016 alleging Sanofi-Aventis engaged in fraudulent marketing tactics to increase sales and accused the company of increasing revenues at the expense of cancer victims who were unaware of the serious side effects of the drug, including increased toxicity and permanent hair loss. The plaintiff claims that she would not have used Taxotere if she knew of the side effects.

The fallacy of plaintiffs' narrative about Taxotere versus Taxol and its negative impact on public health is underscored by a more pragmatic problem. By failing to exercise due diligence in investigating her claims before filing suit, Plaintiff has wasted both Sanofi and this

---

[1] *Taxotere Lawsuit*, PULASKI LAW FIRM, https://pulaskilawfirm.com/practice-areas/pharmaceutical-medical-device/taxotere-lawsuit/.

Court's time and resources. Sanofi opposes Plaintiff's Motion for Dismissal because uninvestigated lawsuits such as this one have a detrimental effect on the parties, the Court, and the MDL process. Accordingly, before granting dismissal, the Court should require some affirmative proof of Plaintiff's pre-suit investigation.

As early as March 10, 2017, this Court entered Pretrial Order No. 22, governing the process for submitting Plaintiff Fact Sheets ("PFS"). Rec. Doc. 279. Product identification information is explicitly called for in the Court-approved PFS and requires production of records demonstrating use of Taxotere (or other docetaxel). Plaintiff, however, failed to submit a PFS.[2] Here, before the Court entertains her request for dismissal, Plaintiff should be required to submit her "proof of use" records, specifically including any such records in her possession prior to filing suit, and the Court should impose sanctions for Plaintiff's abuse of the judicial process if it is not satisfied with Plaintiff's showing.[3]

## ARGUMENT

The gravamen of plaintiffs' allegations in MDL 2740 is that Taxotere (docetaxel) caused them disfiguring permanent alopecia and that they would have chosen an alternative – Taxol – that allegedly does not cause persistent hair loss "had Plaintiffs and Plaintiffs' healthcare providers known that permanent hair loss could result" from Taxotere. *See* Rec. Doc. 689 at ¶

---

[2] Before attaching the "Statement Regarding Chemotherapy Drug Administered" as an exhibit to the instant motion, Plaintiff provided no proof of use. *See* Rec. Doc. 1750, Exhibit 1.

[3] Counsel for Sanofi can submit a bill of fees and expenses to the Court for *in camera* review if it will aid the Court in determining a proper sanction.

5.[4]    Indeed, Plaintiff Steering Committee representatives (and plaintiffs' counsel) have emphasized this position in recent depositions:

- Q. Taxotere carries with it a risk of permanent hair loss, whereas Taxol does not. . . . And it's our client's position that she was not given that choice of taking Taxol or Taxotere. And it's our client's position that the manufacturer of Taxotere didn't tell you or didn't tell the doctors of that risk [of permanent hair loss].   (Deposition of Shevonda Thomas at 140:3-4; 140:16-21 (chemotherapy nurse for bellwether plaintiffs Elizabeth Kahn and Cynthia Thibodeaux)) (relevant portion of deposition transcripts attached as **Exhibit 2**).

- Q. If you were given the option of taking Taxol, which is in the same class of drugs as Taxotere, and told that Taxol did not carry the increased risk of permanent alopecia or loss of hair, and given the option, would you have chosen to take Taxol over Taxotere? (Deposition of Lisa Tuyes 329:12-17 (bellwether plaintiff), **Exhibit 2**).

- Q. . . . [I]f Della Martin had refused Taxotere because of permanent hair loss, you would have substituted Taxol as a single agent?  (Deposition of Dr. Dat Pham at 21:8-11 (prescribing oncologist for bellwether plaintiff Della Martin), **Exhibit 2**).

- Q. Would you disagree if an expert were to give an opinion that the risk of permanent hair loss is associated with Taxotere but is not likewise associated with Taxol? (Deposition of Dr. Cherian Verghese at 110:1-4 (prescribing oncologist for bellwether plaintiff Tanya Francis), **Exhibit 2**).

Here, Plaintiff Tawana Bennett filed a lawsuit specifically claiming Taxotere was the cause of her persistent/permanent hair loss.  Dkt. 1.  But now, a few months after filing suit, and

---

[4] Plaintiffs' firms are also making such representations on their websites.  *See e.g.*, *Taxotere Lawsuit - Permanent Hair Loss Injuries*, LEVIN PAPANTONIO, https://www.levinlaw.com/taxotere-lawsuit-lawyer-side-effects-recall-settlement ("Claims are being filed against Sanofi-Aventis by women who have suffered permanent hair loss as a result of being prescribed Taxotere.  Attorneys states that if the manufacturer had properly warned of the risks, patients would have been prescribed a different chemotherapy drug called Taxol, which is more effective than Taxotere, and does not result in permanent hair loss."); *Taxotere*, CARR & CARR ATTORNEYS AT LAW, https://www.carrcarr.com/taxotere/ ("To make matters worse, there are other medications, such as Taxol (paclitaxel) that have been provide to be just as effective for treating cancer without putting patients at risk for permanent hair loss.  Had physicians and patients been appropriately warned, they would have had the opportunity to choose an alternative cancer treatment that doesn't cause permanent alopecia."); *The Alternative to Taxotere: Taxol*, REICH & BINSTOCK, https://www.reichandbinstock.com/Pharmaceutical-Injury/Taxotere/The-Alternative-To-Taxotere-Taxol.shtml (claiming that "Taxol is just as effective as Taxotere in irradiating cancer" but that "Taxol does not cause permanent hair loss.").

almost a decade after having received chemotherapy, she admits that she never took Taxotere but instead took only Taxol – the chemotherapy drug plaintiffs hold out as an alternative that does not cause permanent hair loss. The timeline of this case is as follows:

- December 2008 – April 2009: Plaintiff allegedly undergoes chemotherapy with Taxotere. Dkt. 1.

- December 5, 2017: Plaintiff files suit directly in MDL 2740 alleging she suffered from disfiguring permanent alopecia as a result of Taxotere manufactured by Sanofi. *Id.*

- January 11, 2018: Plaintiff receives statement from infusion center noting she was not administered Taxotere/docetaxel, but instead was administered Taxol/paclitaxel. *See* Rec. Doc. 1750, Exhibit 1.

- February 12, 2018: Plaintiff's counsel e-mails counsel for Sanofi seeking consent for dismissal revealing "the product identification was Paclitaxel only." *See id.*, Exhibit 2.

- February 22, 2018: Sanofi's counsel e-mails Plaintiff's counsel stating "[p]rior to the filing of this lawsuit, we believe you had an obligation to conduct a sufficient investigation in to what product your client took, whether she had the injury actually alleged in their complaint (disfiguring permanent alopecia), and whether there was a good faith, plausible basis that the alleged injury was caused by the identified product. It seems you failed to do so." *See* February 22, 2018 e-mail from Bieri to LaMacchia, attached as **Exhibit 3**. Plaintiff's counsel does not respond to the e-mail.

- February 27, 2018: Plaintiff files motion for voluntary dismissal with prejudice in MDL 2740.

By filing suit, Plaintiff represented that her factual contentions had evidentiary support. *See* FED. R. CIV. P. 11(b). But Plaintiff now admits she was never treated with Taxotere. And, there is nothing in the record to suggest that Plaintiff had a reasonable basis to assert claims against Sanofi or any other manufacturer of docetaxel at any time – let alone *prior* to filing suit. Notably, Plaintiff has not disputed her lack of pre-suit investigation either in response to an e-mail in which counsel for Sanofi explicitly raised this concern or in Plaintiff's Motion to Dismiss. *See* **Exhibit 3**.

Here, Plaintiff's chemotherapy occurred almost a decade ago and she could have easily contacted her infusion facility before filing suit. Such a pre-filing investigation could have been conducted without much difficulty and would have revealed that Plaintiff only received Taxol, not Taxotere. Indeed, there is no reason to believe that the infusion facility would not have provided such records in the approximately ten years before Plaintiff filed suit. Plaintiff's failure to make a request has caused unnecessary litigation expenses and created an unnecessary burden. Presumably, even a simple pre-suit review of Plaintiff's medical records would have revealed the same. However, because Plaintiff failed to timely submit a PFS – as required by Amended Pretrial Order No. 22 (Rec. Doc. 325) – neither the Court nor Sanofi has the benefit of Plaintiff's proof of use documentation. Here, before the Court entertains her request for dismissal, Plaintiff should be required to submit her PFS-required "proof of use" records, specifically including any such records in her possession prior to filing suit, and should impose sanctions for Plaintiff's abuse of the judicial process if the Court is not satisfied with Plaintiff's showing.

Plaintiff's draft stipulation for dismissal, which was provided to counsel for Sanofi for the first time on February 22, contemplated "each party to bear its own fees and costs." *See* **Exhibit 4**. While Sanofi agrees that this case should be dismissed with prejudice, it cannot agree to the language of the stipulation as drafted. Pretrial Order No. 4 provides that for direct filed cases such as this one "plaintiff shall, by signing and filing . . ., certify compliance with FRCP Rule 11, and be prepared to demonstrate due specific factual inquiry sufficient to immediately participate in discovery and/or substantive mediation, and demonstrate as much to this Court upon inquiry by [Judge Engelhardt]." Rec. Doc. 122. Here, Sanofi is spending significant time and resources responding to daily requests to dismiss and amend because plaintiffs in this litigation failed to correctly identify the proper docetaxel product and manufacturer before filing

suit. However, the instant situation is not one in which counsel investigated the claim and determined docetaxel but could not verify the manufacturer until later. To the contrary, this evidences an even greater lack of due diligence as this Plaintiff was never even administered docetaxel.

Federal courts are vested with the inherent power to impose sanctions for abuse of the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Using this inherent power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45-46 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)). A federal court may also use its inherent power to fashion a sanction not contemplated by Federal Rule of Civil Procedure 11. *See id.* at 46-48. Thus, this Court should require Plaintiff to submit her (now deficient) PFS-mandated proof of use documents, including what information – if any – documents supporting Taxotere use she had prior to filing suit. When that pertinent information is revealed, sanctions may be appropriate.

## CONCLUSION

For the foregoing reasons, Sanofi respectfully requests that this Court deny Plaintiff's Motion for Voluntary Dismissal with Prejudice until and unless Plaintiff submits what information she had prior to filing suit regarding product identification, and for such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**

400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for sanofi-aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*