UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)          *     16-MDL-2740
PRODUCTS LIABILITY LITIGATION         *
                                      *
                                      *     Section N
                                      *
Relates To All Cases                  *     March 28, 2018
                                      *

*******************************************************************

REPORTER'S OFFICIAL TRANSCRIPT OF THE

**TELEPHONIC STATUS CONFERENCE**

BEFORE THE HONORABLE MICHAEL B. NORTH,
UNITED STATES MAGISTRATE JUDGE.

*******************************************************************


**APPEARANCES:**

**For the Plaintiffs:**

Karen Menzies,Esq.                    Daniel Markoff, Esq.
Palmer Lambert, Esq.                  Andrew Lemmon, Esq.
David Miceli, Esq.                    Jessica P. Reynolds, Esq.
Christopher Coffin, Esq.              Andre Mura, Esq.
Dawn Barrios, Esq.                    Kyle Bachus, Esq.


**For the Defendants:**

Harley Ratliff, Esq.                  Geoff Coan, Esq.
Patrick Oot, Esq.                     Kimberly Beck, Esq.
Kelly Bieri, Esq.                     Julie Callsen, Esq.
Kelly Brilleaux, Esq.                 Mara Cusker Gonzalez, Esq.
John Olinde, Esq.                     Beth Toberman, Esq.


**REPORTED BY:**      Mary V. Thompson, RMR, FCRR
                      500 Poydras Street, Room B-275
                      New Orleans, Louisiana  70130
                      (504)589-7783


**OFFICIAL TRANSCRIPT**

# P R O C E E D I N G S

THE COURT:  Do I have everybody on the phone?

MR. RATLIFF:  Yes, Your Honor.

THE COURT:  All right.  I'm speaking to the issues raised in Sanofi's March 23, 2018 letter, two issues in particular, the written discovery that was sent to the trial plaintiffs and the issue with the preliminary witness list.

The first thing I want to do is address the use of general objections in responding to written discovery.

General objections are in every way inadequate to successfully object to any request.  They have long been prohibited.  And I'm going to direct both sides to cease and desist using them in this litigation because they are a waste of time and space and ink.

If you are interested in any of the case law and my views on the subject, there's an opinion I wrote a while back called *Chevron v Settoon*.  It's 2015 WL 269051.

I don't expect to continue to see general objections polluting these pleadings going back and forth on written discovery.

Next, in my mind there is no doubt that additional written discovery on the individual plaintiffs is appropriate.  There's no question in my mind that Judge Engelhardt made that clear.  The issue that we appear to be having is that the PSC

**OFFICIAL TRANSCRIPT**

1   seems to believe that that discovery is more limited than I

2   believe that it is.

3           The objection that has been repeated in response to

4   every request that I've read is really no better than a general

*01:06:16*   5   objection or some sort of boilerplate, and I don't think that it

6   accurately reflects the anticipated scope of the additional

7   discovery that Judge Engelhardt ordered.

8           The areas that are referred to in that objection are

9   examples of additional types of discovery or issues that might be

*01:06:36*   10   addressed in discovery that were set forth in a footnote to

11   Judge Engelhardt's order, and they were specifically and

12   expressly referred to as examples.

13           So there's no need to continue to include that

14   objection in future written discovery responses because I don't

*01:06:53*   15   believe that it adequately addresses what the intent and scope of

16   additional discovery is as far as Judge Engelhardt or I are

17   concerned.

18           I'm going to go down these particular requests.  What

19   I'm going to do is I'm going to speak directly to the Durden

*01:07:13*   20   discovery because that's the most pressing one.  I know that

21   Sanofi has included somewhat different requests as to some of

22   these other individual plaintiffs.  I'm only going to address

23   specifically the requests to Ms. Durden, and I'm going to just

24   direct you-all to take what I give you on the Durden discovery

*01:07:38*   25   and employ that in both your requests and your responses going

**OFFICIAL TRANSCRIPT**

1    forward.

2         All right.  I think Request for Admission No. 1 is

3    appropriate.  And in Ms. Durden's case it was admitted so I don't

4    know that it even is an issue, but for future reference I think

01:07:55    5    that is sort of a request for admission of fact that is

6    appropriate.

7         I think Request for Admission No. 2 is argumentative.

8    I don't think that that is a matter that's appropriate for a

9    request for admission, and I think it is better suited for a

01:08:11    10   deposition request.

11        Request for Admission No. 3 I think is also

12   appropriate, which I believe is reflected in the fact that it has

13   been answered.  So I think for future reference, that sort of

14   request for admission is appropriate and should be answered.

01:08:26    15   All right.  Request for Production No. 1.  Again, the

16   responses are overloaded with boilerplate objections, and those

17   objections are overruled for the same reasons the general

18   objections were overruled.

19        And I don't expect to continue to see those in future

01:08:47    20   responses.  To the extent that the request for production seeks

21   information that was not previously disclosed in a plaintiff fact

22   sheet, it is appropriate.  It's really that simple.  And this

23   Court does not have the time to referee disputes on every single

24   additional discovery request with every single plaintiff who has

01:09:08    25   been designated for trial.

**OFFICIAL TRANSCRIPT**

1       In my view there are two acceptable ways to answer this
2   discovery.  The first is "there is no additional information to
3   produce beyond that that has already been produced."  The second
4   is "here is some additional information that was not previously
5   produced."  That's it.  Those are the two manners in which those
6   requests for production should be answered.
7       Request for Production No. 2 I think is an acceptable
8   request, and it is appropriately limited by the fact that it
9   references only Taxotere, docetaxel, or the plaintiff's claims.
10  I think that sufficiently narrows the request and it is an
11  appropriate request and should be answered.
12      I also think that Request for Production No. 3 is
13  appropriate, and those similar requests should be responded to
14  without objection going forward.
15      Request for Production No. 4 is appropriate for the
16  same reason as I stated as to Request for Production No. 2.
17      Request for Production Nos. 5 and 6, I think those are
18  appropriate and should be answered without objections, and I'm
19  going to use this as an example of why I think these general
20  objections are inappropriate.
21      The PSC objected that this request was duplicative and
22  then it went and produced a bunch of photos that had not been
23  previously produced.  So that, to me, is a ridiculous objection.
24  And I'm going to tell you-all -- because this is taking far too
25  much time out of my schedule to have to wade through these

**OFFICIAL TRANSCRIPT**

1   hundreds of pages of documents you-all are giving me every two

2   weeks.  Future ridiculous objections, I'm going to start to meet

3   them with increasingly serious consequences.

4           Request for Production No. 7 is an appropriate inquiry,

*01:10:59*   5   and I think that should be responded to going forward.

6           Request for Production No. 8, to the extent that any

7   documents are referred to in any of the interrogatories that I

8   believe are appropriate, as I'll address below, if those

9   documents haven't previously been produced, then they should be

*01:11:16*   10   produced.

11           Request for Production No. 9, I want to ask somebody

12   from Sanofi why this information is relevant.

13           MR. RATLIFF:  Thank you, Your Honor.  This is

14   Harley Ratliff.  I'm going to turn this over to my partner

*01:11:30*   15   Kelly Bieri who is in charge of putting together our written

16   discovery on this matter.  I know you have not met with her

17   before, she hasn't appeared in your court, but she has a much

18   more closer concept of these particular requests.

19           MS. BIERI:  Good afternoon, Your Honor.

*01:11:48*   20           THE COURT:  Good afternoon.  Let me just say --

21           MS. BIERI:  No. 9 --

22           THE COURT:  Hold on.  Let me interrupt you for a

23   second.

24           I just don't think, given the press of time and the

*01:11:59*   25   information that is necessary to try this case, and try these

**OFFICIAL TRANSCRIPT**

1  cases, that this information is particularly relevant.

2       MR. RATLIFF:  Your Honor, if that's your ruling, we're

3  fine with that.  And we understand we are under an enormous time

4  crunch in trying to pull together the relevant information, and

01:12:21  5  we agree with your rulings so far.  If that is how you are

6  inclined to come out on this particular RFP, we don't want to

7  waste any more of Your Honor's time debating it.

8       THE COURT:  Well, good, because you were going to have

9  a hard time convincing me that you needed that information at

01:12:37  10  this stage of the game.

11       For future reference, that request for production need

12  not be responded to.

13       And I guess for future reference, to the extent they

14  haven't been propounded yet, you can take that one off of your

01:12:47  15  list of discovery requests to be propounded.

16       All right.  The interrogatories.

17       MR. RATLIFF:  Understood, Your Honor.  Thank you for

18  the guidance.

19       THE COURT:  On the interrogatories, Interrogatory

01:12:56  20  Nos. 1 through 3 I think are appropriate, and they should be

21  answered.

22       Interrogatory No. 4, I think that the date upon which

23  plaintiff retained counsel is not privileged.  And I think that

24  that interrogatory should be responded to just with the limited

01:13:15  25  information of the date that the particular plaintiff retained

**OFFICIAL TRANSCRIPT**

1    counsel and who that counsel is.  And I don't think that it's

2    necessary to provide anything more than that.

3              Interrogatory No. 5 I'm going to skip for a minute and

4    come back to.

01:13:31   5              Interrogatory No. 6, I don't think, given the nature of

6    these claims -- which in my understanding seek primarily

7    non-pecuniary damages -- that the plaintiffs are required to

8    compute an amount of damages that they seek in any sort of exact

9    fashion beyond what they've done.

01:13:51   10             I don't know how they would do it, and I think the case

11   law directs that in a case like this, with the sort of damages

12   that are being claimed -- I don't think that Rule 26 requires any

13   sort of specific calculation or computation.  I'm going to direct

14   that that particular interrogatory need not be answered and that

01:14:14   15   you-all take that one out of your hopper in terms of what you ask

16   these future plaintiffs.

17             And Interrogatory No. 7 --

18             MR. RATLIFF:  We'll remove that.  I think the intent of

19   serving that interrogatory was just for largely the benefit of

01:14:28   20   the work of our settlement committee so we had an idea of what

21   the value for -- what the anticipated value of the plaintiff's

22   side was for the particular cases because they largely deal with

23   emotional damages, but we understand your ruling.

24             THE COURT:  Well, I think, Mr. Ratliff, that -- I

01:14:46   25   understand that.  And I certainly don't want to do anything

**OFFICIAL TRANSCRIPT**

1    that's going to stand in the way of efficiently preparing some of

2    these cases for resolution.  I think in the context of the

3    settlement committee, that that information can be gathered from

4    the individual plaintiffs for settlement purposes only.

01:15:06  5         My concern --

6         MR. RATLIFF:  Understood, Your Honor.

7         THE COURT:  My concern is that that's not necessarily

8    the sort of thing that can be computed with any sort of

9    certainty, and to require the plaintiffs to do so in a pleading

01:15:16  10   in the litigation could potentially prejudice them down the road.

11   I don't think that that's appropriate.

12        So in the context of settlement, I think that you-all

13   can set up separately to exchange that information, and obviously

14   it will be protected as being part and parcel of the settlement

01:15:35  15   negotiation.

16        All right.  Given my ruling on Request for Production

17   No. 9, we're going to go ahead and strike Interrogatory No. 7 and

18   the information that you-all seek in that interrogatory.

19        All right.  I want to go back to Interrogatory No. 5.

01:15:53  20        The way that I'm viewing this is that, in responding to

21   Interrogatory No. 5, none of the plaintiffs identified a single

22   individual who might have relevant knowledge or relevant

23   information to support their claims, and then two weeks later

24   you-all sent a preliminary witness list in Ms. Durden's case with

01:16:17  25   250 names on it.  I'm trying to figure out why somebody thought

**OFFICIAL TRANSCRIPT**

1   that was a good idea.

2         So somebody from the PSC explain that decision to me,

3   please.

4         MR. COFFIN:  Your Honor, Chris Coffin.  I'll address

01:16:30   5   that on behalf of the PSC.

6         The preliminary witness lists were provided obviously

7   to the Court --

8         THE COURT:  Chris, we can't hear you.  See if you can

9   speak up.

01:16:43   10        MR. COFFIN:  Hold on just a second.

11                           (A pause in the proceedings.)

12        MR. COFFIN:  Okay.  How is that?  Still faint?

13        THE COURT:  No, it's good.

14        MR. COFFIN:  Okay.  I'll just speak up.

01:16:56   15        The preliminary witness list that was provided in

16   *Durden* and the other trial cases was done pursuant to the order

17   that I believe Judge Engelhardt issued, and it specifically said

18   that if you do not include witnesses on this list, you will not

19   be entitled to call them at trial.

01:17:14   20        THE COURT:  What I'm asking you --

21        MR. COFFIN:  The reason --

22        THE COURT:  Mr. Coffin, I'm asking a separate question.

23        They sent an interrogatory that asked you to identify

24   individuals with relevant knowledge of the claim, and you gave

01:17:28   25   them nothing and then waited two weeks to give them the

**OFFICIAL TRANSCRIPT**

1    information simply because that's what the deadline for

2    preliminary witness lists was.  And we've been down this road.

3    Why in the world did they have to wait two weeks to get one

4    single name when they asked you in an interrogatory?

01:17:46    5        MR. COFFIN:  Well, I hear your point, Your Honor, and

6    perhaps we shouldn't have delayed the entire witness list.

7        But they do have plenty of names from the plaintiff

8    fact sheet which is extremely comprehensive in terms of all the

9    providers.  And plus they've taken the witnesses' depositions.

01:18:03   10    They've taken four depositions at this point.

11        So we weren't purposefully trying to hide the ball.

12    The preliminary witness list, though, was something we thought

13    was going to be -- and was -- overinclusive.  And we didn't -- we

14    just didn't think that we needed to provide all that information

01:18:19   15    in this interrogatory based on what had already been provided in

16    the PFS and they have gotten through the depositions.

17        THE COURT:  Well, they've taken four depositions so

18    that leaves about 250 left that they could take based on the

19    people that you've listed on your witness list.  So how are they

01:18:35   20    supposed to decide in the next 25 days who they are going to

21    depose?  That's the practical problem that we have.

22        MR. COFFIN:  Well, I understand.  And we have the same

23    practical problem, Your Honor, because we don't know who the heck

24    a lot of these Sanofi witnesses are that they've put on their

01:18:50   25    preliminary witness list.  They didn't provide us any information

**OFFICIAL TRANSCRIPT**

1    about them, and we've been searching for months and months trying

2    to figure out who some of these people are.

3            So I agree it's a problem for both of us, and we need

4    to figure out a solution to it.  But we had the same problem,

01:19:07    5    Judge.  We need them to tell us who on this witness list that

6    they provided -- who they are.  Some of these people, we're

7    looking trying to figure out why in the world did they list this

8    person when we have no information about them other than they

9    were listed on a witness list.

01:19:21    10            THE COURT:  All right.  I'm going to --

11            MR. COFFIN:  I agree with you.

12            THE COURT:  I'm going to make two observations.

13            The first is as it regards the plaintiff's response to

14    Interrogatory No. 5 and how it fits into this overall issue, I

01:19:36    15    think not identifying a single person in response to that

16    interrogatory and unleashing an avalanche of boilerplate

17    objections is gamesmanship and it needs to end.

18            I'm going to leave it at that and I'm going to expect

19    that sort of gamesmanship to end.

01:19:53    20            Now, the larger --

21            MR. COFFIN:  Understood.

22            THE COURT:  The larger problem is you-all have a

23    deadline of sorts for, quote, unquote, fact discovery to end

24    that's coming up at the end of April.  And, I don't know, you-all

01:20:10    25    have identified jointly somewhere in the neighborhood of 400

**OFFICIAL TRANSCRIPT**

1  witnesses.

2  How do you-all propose to complete fact discovery in

3  the next month under those circumstances?  What's the plan?

4  MR. RATLIFF:  Your Honor, this is Harley Ratliff on

*01:20:24*  5  behalf of Sanofi.

6  I think the issue is maybe a little bit more acute in

7  the sense that we served this discovery in January of this year

8  basically at the close of Phase I discovery, and in particular to

9  Interrogatory No. 5 in the effort to find additional

*01:20:43*  10  case-specific individuals who might have relevant knowledge that

11  the plaintiffs know that we cannot discern through medical

12  records or necessarily through depositions.

13  We thought that that was a fairly plain, standard

14  interrogatory that might help us understand what the scope of

*01:21:00*  15  Phase II discovery was.

16  That interrogatory should have come due and a full

17  response to that in February of this year so we could have

18  already been looking at that list, researching those names --

19  whether they are family members, whether they are additional

*01:21:15*  20  providers, whether they are friends of Ms. Durden or any of the

21  other plaintiffs -- so that we could orderly schedule the

22  depositions or maybe not schedule some of these depositions so we

23  could complete Phase II discovery in a way that was both timely,

24  efficient, and maybe didn't require a scorched-Earth approach to

*01:21:34*  25  the discovery process which neither side wants -- at least

**OFFICIAL TRANSCRIPT**

1    certainly not what Sanofi wants.

2         We're sitting here now on March 28th with all of these

3    new names in addition to the names that we had identified and

4    we're trying to schedule -- trying to schedule -- on our own

01:21:53    5    before April 20th.  At this point we don't even know who these

6    individuals are in terms of the case-specific individuals that

7    relate to Ms. Durden and the other bellwether plaintiffs.

8         So we are in a horrible bind on how to get this done.

9    In my mind I don't have a good solution other than I think we

01:22:13    10    should be given more time to complete the process and get these

11    depositions scheduled or I think there needs to be some type of

12    ramifications on behalf of the plaintiffs.

13         And, Your Honor, one additional point on this, which

14    makes it to me even more egregious, is in trying to schedule

01:22:32    15    these depositions for Phase II discovery for these four

16    plaintiffs, we were informed yesterday that plaintiffs believe

17    that -- or at least their position is we only get ten depositions

18    total.  We've already taken four so we only get six more per case

19    even though they have now disclosed numerous additional witnesses

01:22:53    20    beyond those that we've identified in their medical records or

21    during depositions.

22         And so to me we have sort of this compounding issue of

23    holding this information back -- holding this information back

24    for no reason, objecting to interrogatories, not meeting and

01:23:09    25    conferring with us, and then at the last minute, when we're

**OFFICIAL TRANSCRIPT**

1 trying to schedule the depositions of the witnesses we already
2 knew about, being told, no, you're limited to ten even though we
3 have a deposition protocol and numerous CMOs that take this MDL
4 out of the typical, standard federal rules.

01:23:28
5          And so I feel like we're being hemmed in by the
6 plaintiffs by, one, a lack of information, and then trying to
7 curtail the type of discovery we need to do.  This is not just a
8 standard one-off case.  This is a massive MDL with 8,000 or 9,000
9 plaintiffs with a lot at stake.

01:23:47
10          And so in terms of some sort of remedy, it's hard for
11 me to come up with one that is useful beyond just allowing us
12 additional time or imposing some sort of burden on the
13 plaintiffs -- some sort of cost burden on the plaintiffs to what
14 seems to be their inability to respond to the most basic of
01:24:10
15 discovery requests.

16          MR. COFFIN:  Your Honor, Chris Coffin.  If I might
17 respond?

18          THE COURT:  Yes.

19          MR. COFFIN:  Your Honor?

01:24:18
20          THE COURT:  Yes.  Go ahead.

21          MR. COFFIN:  A couple things Mr. Ratliff said.  We are
22 in this conundrum equally because of the way that we both
23 submitted our preliminary witness lists.

24          It's not accurate that we haven't met and conferred.  I
01:24:36
25 never got a request -- and specific to Durden.  I'm just talking

**OFFICIAL TRANSCRIPT**

1   about Durden.  I'm not aware of the other trial plaintiffs.

2        But I got a request on Monday of this week for

3   additional witnesses, and not all of them were brand-new

4   witnesses who they had never heard of.

01:24:54
5        So I have met-and-conferred, very briefly as it was,

6   today.  And I think the reality is we both need to provide some

7   information on who these witnesses are, because we have the same

8   problem, Judge.  We've gotten a list of 75 witnesses, and there

9   are a lot of those witnesses who we don't know who they are.  And

01:25:17
10   that's because that's the format in which Sanofi presented their

11   preliminary witness list and admittedly the way we presented

12   ours.

13        So I think we're going to have to exchange information

14   on who these people are and whether they're likely to have

01:25:32
15   discoverable information or what type of discoverable

16   information.

17        THE COURT:  All right.  Here's what I'm going to do.

18        MR. COFFIN:  We probably have -- go ahead.  Sorry.

19        THE COURT:  Here's what I'm going to do.  I'm going to

01:25:43
20   order you-all to meet-and-confer in person if necessary.  And by

21   the close of business Monday next week, you-all are to exchange,

22   as to the initial trial, the first trial, the names of witnesses

23   who you reasonably expect to testify for the purpose of trying to

24   achieve the completion of fact discovery within the schedule.

01:26:09
25        MR. COFFIN:  Understood.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  All right.  If I have to make some of y'all

2   move to New Orleans so I can do this every day, I'm about ready

3   to do it.

4          All right?

01:26:20   5          You have known of whatever limitations or issues there

6   have been with the schedule since the schedule was put out, and

7   exchanging preliminary witness lists for a single plaintiff's

8   trial with 400 people on it is not constructive.  And every day

9   that goes by when that is the state of things is a day that's

01:26:47  10  wasted.

11          So I'm going to order you-all to meet to attempt to

12  resolve this issue and have a resolution and report it to me by

13  the close of business on Monday next week.  And if I --

14          MR. COFFIN:  We can do that.

01:27:03  15          THE COURT:  -- decide at the close of business Monday

16  next week that some additional time for fact discovery is

17  appropriate, I will have had that discussion with

18  Judge Engelhardt and I'll be able to address it at that point.

19          And I don't need 15 people or 50 people on the phone.

01:27:18  20  I need someone to inform me by e-mail copied to everyone what the

21  status of this resolution of this issue is.  All right?

22          MR. COFFIN:  Yes, sir.

23          MR. RATLIFF:  Understood, Your Honor.

24          THE COURT:  Now, the next thing.  The last two times

01:27:37  25  we've been together, we have talked at some length, and in some

**OFFICIAL TRANSCRIPT**

1   detail, about how we were going to conduct these status

2   conferences going forward.  More importantly, how you-all were

3   going to tee issues up for me and prepare me to be able to have a

4   meaningful conversation with you-all about whatever issues needed

01:27:54   5   to be addressed.  We've done that twice now and it still isn't

6   working.

7          So as to this issue with the documents and the format

8   of the documents that were just produced on the -- I think it's

9   on the clinical trials, I'm not having a conversation with y'all

01:28:12   10  about that today.  I'm not prepared to it do it and you're not

11  prepared to do it because you haven't apparently met and

12  conferred about it yet.

13         The other thing is, to go back to the beginning, I'm

14  supposed to have an agenda.  I don't have an agenda.  I don't

01:28:27   15  know why.  But the agenda is supposed to be what we discuss in

16  these meetings -- the court reporter is showing me an agenda.  I

17  didn't see it.

18         In any event, the agenda is what is going to determine

19  what we talk about.  It needs to be put together before you-all

01:28:47   20  start sending e-mails flying across the ether landing on my desk

21  an hour and a half before the status conference.

22         I have other things to do, which may come as a surprise

23  to you-all, but it's not at all helpful to getting a meaningful

24  conversation or resolution of these issues.  And it's not a

01:29:07   25  reasonable good use of my time to have to stop what I'm doing and

**OFFICIAL TRANSCRIPT**

1    continue to try to pick up bits and pieces of these problems when
2    I'm getting e-mails left and right on the morning of the status
3    conference.
4            So for the final time, that needs to end.  All right?
01:29:23
5    Everybody onboard?
6            MR. RATLIFF:  Yes, Your Honor.
7            MR. MICELI:  Your Honor, yes, we're onboard.  This is
8    David Miceli.  And I'm sorry because I'm the one that sent you a
9    letter -- or insisted we send you a letter on the clinical trial
01:29:39
10   data.
11           However, we received the latest production -- and it's
12   not a format issue.  And I don't want to talk about the substance
13   of it.  I was taking a deposition in London last Friday, and by
14   the time I got notice of that, the next business day that I had
01:29:59
15   to communicate with the Court was Monday.
16           And I will not discuss the substance of it, but,
17   however, because of what we discussed the last time we were
18   together and the utter importance of this information -- because
19   you ordered a meet-and-confer in person, perhaps on the other
01:30:16
20   issues I would ask that you order a meet-and-confer in person in
21   New Orleans next Monday or Tuesday on this issue.  And, if
22   necessary, set aside some time in New Orleans for us to have an
23   officiated meet-and-confer with you.
24           Because this has gotten to a point where our expert
01:30:36
25   reports are in serious jeopardy because we don't have necessary

**OFFICIAL TRANSCRIPT**

1  data to provide to our experts, and it jeopardizes --

2         THE COURT:  I'm going to interrupt you.  We're going

3  right down the path I just said we weren't going down.

4         Now you want me to have another conference on Monday in

01:30:54   5  New Orleans, and I'm not doing it because you-all haven't even

6  met yet.

7         MR. MICELI:  Your Honor, I understand.  This is an

8  issue that we've been meeting on since last September.  To have

9  yet another meet-and-confer on the issue that's been hashed out

01:31:12  10  and an order has been made for production is -- I will gladly

11  have that meet-and-confer on Monday or Tuesday with opposing

12  counsel, but if we wait another two weeks for a conference with

13  Your Honor, I think we're going to be that much deeper in a hole

14  that we can't climb out of.

01:31:31  15         THE COURT:  Well, see, I have a couple of problems with

16  that.  The first one is you assume that nothing is going to come

17  out of the meet-and-confer which doesn't give me a lot of

18  confidence that you're going into this with the right mindset.

19         You-all will meet and confer because a production has

01:31:49  20  been made.  If there's something inadequate or troublesome or

21  problematic about that production, you are going to sit down with

22  each other on the telephone or face to face and work it out so

23  that when you bring the issue to me, it's not in this willy-nilly

24  way and giving me 24 hours' notice and your opponent no

01:32:11  25  opportunity to be heard other than to send me an e-mail response

**OFFICIAL TRANSCRIPT**

1    an hour and a half before the meeting.

2            We're not going to do it that way.

3            MR. MICELI:  Understood.  I understand.  I will take

4    that to heart.

01:32:22   5            I would only ask that you at least encourage us to do

6    that first thing next week, and I would suggest we do it in

7    person, Your Honor --

8            THE COURT:  Well --

9            MR. MICELI:  -- with Your Honor just --

01:32:32   10           THE COURT:  -- you-all work that out.  I'm not -- I'm

11   not here to tell you-all how to run your case on a day-to-day

12   basis.  I expect attorneys who have this much experience in these

13   matters can figure out how to schedule a meeting and get this

14   kind of thing sorted out.  And if you have to agree to disagree,

01:32:54   15   that's fine.  But I want to be --

16           MR. RATLIFF:  Your Honor, Harley Ratliff on behalf of

17   Sanofi.  We're happy to meet-and-confer with Mr. Miceli first

18   thing next week.

19           THE COURT:  All right.  Very good.

01:33:04   20           MR. MICELI:  Thank you.

21           THE COURT:  Is there anything else?

22           MR. RATLIFF:  Nothing else on Sanofi's end, Your Honor.

23           MR. COFFIN:  No, Your Honor.  Nothing else.

24           THE COURT:  The next in-person status conference will

01:33:17   25   be April 10th at 3:00 p.m.  Obviously, particularly with the

**OFFICIAL TRANSCRIPT**

01:33:44

1   defendants who are not currently on the list -- when I say "in

2   person," I'm expecting everyone to show up.  If there is a reason

3   that you can't, as has been the practice, you can let me know and

4   you can attend by phone.

5              MR. RATLIFF:  Your Honor, Harley Ratliff again.

6              There is a company witness deposition of a senior

7   oncologist at Sanofi scheduled for April 10th in Cambridge,

8   Massachusetts.  I would anticipate that a number of the

9   individuals on this call will probably be at that deposition.

01:34:02

10  There's obviously plenty of attorneys on both sides that can be

11  there in person, but I wanted to give you just a heads up, not

12  just on behalf of myself, but on behalf of a number of the

13  individuals who are likely on the plaintiffs' side.

14             THE COURT:  Okay.  Well, for those of you who are

01:34:17

15  there, why don't you schedule a break in the deposition for that

16  time and you can get on the phone.

17             MR. RATLIFF:  Okay.  Thank you, Your Honor.

18             THE COURT:  Okay.  Thank you-all.

19                         (Proceedings adjourned.)

20

21                         **CERTIFICATE**

22       **I hereby certify this 29th day of March, 2018, that the
    foregoing is, to the best of my ability and understanding, a true**

23  **and correct transcript of the proceedings in the above-entitled
    matter.**

24

25                              */s/ Mary V. Thompson*
                         _____
                              **Official Court Reporter**

**OFFICIAL TRANSCRIPT**