

1  Jennifer Liakos, Esq. (SBN 207487)
   JLiakos@NapoliLaw.com
2  NAPOLI SHKOLNIK PLLC
   525 South Douglas St., Suite 260
3  El Segundo, CA 90245
   Telephone: 310-331-8224
4  Facsimile: 310-736-2877
   *Attorney for Plaintiffs*
5

**FILED**
Superior Court of California
County of Los Angeles

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk
By _____ , Deputy
    Marion Gomez

6

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8              **IN AND FOR LOS ANGELES COUNTY**

9  RENISHA BROWN; LINDA D. ABRAMS;        Case No.   **BC 686740**
   FERIAL ALAWAR; CATHY ANDERSON;
10 JERRY ANDERSON; LORETTA               **COMPLAINT AND DEMAND FOR**
   ANDERSON; ROSE ANDERSON; VIRGIE
11 ANDERSON; GLORIA ARGEL;               **JURY TRIAL**
   CAROLYN BELIN; HARRIET                                    BY FAX
12 BENJAMIN; SALLY M. BERNETT;      1.   Negligence
   JANET ANNE BLOOM; JUDY BONB;     2.   Strict Liability – Failure to Warn
13 GENEVA BOUNDS; BEVERLY           3.   Intentional Misrepresentation
   BREAUX; LINDA BROADIE; VANETTA   4.   Concealment
14 BROWN; PHYLLIS E. BRUNER; DELLA  5.   Negligent Misrepresentation
   BUCKLEY; HELEN BUNCHE; FRANCIS   6.   Intentional Infliction of Emotional
15 CARROLL; LINDA CARROLL; CLARA         Distress
   CARSON; BRENDA K. CARTER; MARY   7.   Loss of Consortium
16 K. CARTER; PAULETTE CARTER;
   JUANITA CHAMBERS; CYNTHIA
17 CHAPMAN; GLORIA J. CHARETTE;
   MARY Y. CHARLESTON; MELODY
18 CLARK; MARY COLLINS; ASHLEY
   CONWAY; MAXINE CRAFTON; DAWN
19 CREECH; CHRISTIANNA CROCKETT;
   VIVIAN L. CROSBY; CAROL A.
20 CRUMBLIN; YOLANDA DANKINS;
   SANDRA DANTZLER; MARY B
21 DAVENPORT; DOROTHY L. DAVIS;
   JENNIFER DAVIS; LUWANDA DAVIS;
22 REGINA DAVIS; RUBY L. DAVIS;
   CHARMAINE DIXON; DOROTHY
23 DIXON; AND SELINA M. DIXON,

24
25               Plaintiffs,
26
27       v.
28

COMPLAINT AND DEMAND FOR JURY TRIAL

**ORIGINAL**

D93

PSC: 05 / 28 / 2019 TRIAL: 06 / 12 / 2019 OSC: 12 / 14 / 2020

CIT/CASE: BC686740
LEA/DEF#:

RECEIPT #: CCH621759150
DATE PAID: 12/12/17  04:27 PM
PAYMENT: $435.00
RECEIVED:
       CHECK:    $435.00
       CASH:      $0.00
       CHANGE:    $0.00
       CARD:      $0.00

310



1  SANOFI U.S. SERVICES INC., formerly
2  known as SANOFI-AVENTIS U.S. INC,
   SANOFI-AVENTIS U.S. LLC, separately
3  and doing business as WINTHROP U.S.,
4  SANDOZ, INC., McKESSON
   CORPORATION doing business as
5  McKESSON PACKAGING, HOSPIRA,
   INC., HOSPIRA WORLDWIDE, LLC f/k/a
6  HOSPIRA WORLDWIDE, INC., SANDOZ,
7  INC., and ACCORD HEALTHCARE, INC.,

8
9      Defendants.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT AND DEMAND FOR JURY TRIAL

1        All plaintiffs who are residents of California respectfully submit the following Complaint

2  and Jury Demand against all Defendants, including SANOFI U.S. SERVICES INC., formerly

3  known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing

4  business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business

5  as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a

6  HOSPIRA WORLDWIDE, INC., SANDOZ, INC., and ACCORD HEALTHCARE, INC.,

7  (herein collectively referred to as the "Defendants") , and allege the following upon personal

8  knowledge, information, belief, and investigation of counsel.

9        All plaintiffs who are residents outside of California respectfully submit the following

10  Complaint and Jury Demand against Defendants McKESSON CORPORATION doing business

11  as McKESSON PACKAGING, only, and allege the following upon personal knowledge,

12  information, belief, and investigation of counsel.

13                    **NATURE OF THE CASE**

14      1.     Plaintiffs are breast cancer survivors who were prescribed and injected with

15  TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

16  distributed by Defendants. Although lower potency alternatives have been available for years,

17  Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-

18  sponsored clinical trials, even though the FDA called these claims "unsubstantiated." In fact,

19  TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more

20  severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.

21  Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s

22  risk of permanent hair loss is not. Defendants concealed this information from physicians,

23  healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer

24  permanent hair loss without any additional benefit or warning.

25      2.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

26  suffered serious and permanent physical and emotional injuries, including permanent hair loss,

27  and seek damages relating to Defendants' distribution, labeling, advertising, marketing,

28  manufacturing, promotion, and sale of TAXOTERE®.

<div align="center">1</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to Article 6, §10 of the California Constitution and California Code of Civil Procedure § 410.10. The amount in controversy exceeds the jurisdictional limit of $25,000.

4. This Court has personal jurisdiction over Defendants, each of which is licensed to conduct or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including TAXOTERE®, to the residents in this state. Defendants have sufficient minimum contacts in California and intentionally avail themselves of the markets within California through the promotion, sale, marketing, and distribution of their products, including TAXOTERE®, thus rendering the exercise of jurisdiction by this Court proper and necessary.

5. Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendants transact business in Los Angeles County and the events complained of occurred in Los Angeles County.

**PARTIES**

6. Plaintiff RENISHA BROWN is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. RENISHA BROWN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

7. Plaintiff LINDA D. ABRAMS is a natural person currently residing in Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LINDA D. ABRAMS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

8. Plaintiff FERIAL ALAWAR is a natural person currently residing in North Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

2

COMPLAINT AND DEMAND FOR JURY TRIAL

1    packaged, distributed, and sold by Defendants. FERIAL ALAWAR has suffered damages as a

2    result of Defendants' illegal and wrongful conduct alleged herein.

3          9.      Plaintiff CATHY ANDERSON is a natural person currently residing in

4    Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

5    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6    packaged, distributed, and sold by Defendants. CATHY ANDERSON has suffered damages as a

7    result of Defendants' illegal and wrongful conduct alleged herein.

8         10.      Plaintiff JERRY ANDERSON is a natural person currently residing in South

9    Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11    packaged, distributed, and sold by Defendants. JERRY ANDERSON has suffered damages as a

12    result of Defendants' illegal and wrongful conduct alleged herein.

13         11.      Plaintiff LORETTA ANDERSON is a natural person currently residing in

14    Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16    packaged, distributed, and sold by Defendants. LORETTA ANDERSON has suffered damages

17    as a result of Defendants' illegal and wrongful conduct alleged herein.

18         12.      Plaintiff ROSE ANDERSON is a natural person currently residing in Maryland,

19    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21    distributed, and sold by Defendants. ROSE ANDERSON has suffered damages as a result of

22    Defendants' illegal and wrongful conduct alleged herein.

23         13.      Plaintiff VIRGIE ANDERSON is a natural person currently residing in Illinois,

24    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

25    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

26    distributed, and sold by Defendants. VIRGIE ANDERSON has suffered damages as a result of

27    Defendants' illegal and wrongful conduct alleged herein.

28

<div align="center">3

COMPLAINT AND DEMAND FOR JURY TRIAL</div>

14. Plaintiff GLORIA ARGEL is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GLORIA ARGEL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

15. Plaintiff CAROLYN BELIN is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CAROLYN BELIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16. Plaintiff HARRIET BENJAMIN is a natural person currently residing in North Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. HARRIET BENJAMIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

17. Plaintiff SALLY M. BERNETT is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SALLY M. BERNETT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18. Plaintiff JANET ANNE BLOOM is a natural person currently residing in Illinois, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JANET ANNE BLOOM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

19. Plaintiff JUDY BONB is a natural person currently residing in Minnesota, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

4

COMPLAINT AND DEMAND FOR JURY TRIAL

1   distributed, and sold by Defendants. JUDY BONB has suffered damages as a result of

2   Defendants' illegal and wrongful conduct alleged herein.

3       20.   Plaintiff GENEVA BOUNDS is a natural person currently residing in Texas, and

4   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6   distributed, and sold by Defendants. GENEVA BOUNDS has suffered damages as a result of

7   Defendants' illegal and wrongful conduct alleged herein.

8       21.   Plaintiff BEVERLY BREAUX is a natural person currently residing in Texas,

9   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11  distributed, and sold by Defendants. BEVERLY BREAUX has suffered damages as a result of

12  Defendants' illegal and wrongful conduct alleged herein.

13      22.   Plaintiff LINDA BROADIE is a natural person currently residing in North

14  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16  packaged, distributed, and sold by Defendants. LINDA BROADIE has suffered damages as a

17  result of Defendants' illegal and wrongful conduct alleged herein.

18      23.   Plaintiff VANETTA BROWN is a natural person currently residing in Illinois,

19  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21  distributed, and sold by Defendants. VANETTA BROWN has suffered damages as a result of

22  Defendants' illegal and wrongful conduct alleged herein.

23      24.   Plaintiff PHYLLIS E. BRUNER is a natural person currently residing in

24  California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26  packaged, distributed, and sold by Defendants. PHYLLIS E. BRUNER has suffered damages as

27  a result of Defendants' illegal and wrongful conduct alleged herein.

28

<center>5</center>
<center>COMPLAINT AND DEMAND FOR JURY TRIAL</center>

1      25.     Plaintiff DELLA BUCKLEY is a natural person currently residing in

2  Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

3  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

4  packaged, distributed, and sold by Defendants. DELLA BUCKLEY has suffered damages as a

5  result of Defendants' illegal and wrongful conduct alleged herein.

6      26.     Plaintiff HELEN BUNCHE is a natural person currently residing in South

7  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

8  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

9  packaged, distributed, and sold by Defendants. HELEN BUNCHE has suffered damages as a

10  result of Defendants' illegal and wrongful conduct alleged herein.

11      27.     Plaintiff FRANCIS CARROLL is a natural person currently residing in

12  Pennsylvania, and received chemotherapy treatment with TAXOTERE®. She was prescribed

13  and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

14  packaged, distributed, and sold by Defendants. FRANCIS CARROLL has suffered damages as a

15  result of Defendants' illegal and wrongful conduct alleged herein.

16      28.     Plaintiff LINDA CARROLL is a natural person currently residing in

17  Connecticut, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

18  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

19  packaged, distributed, and sold by Defendants. LINDA CARROLL has suffered damages as a

20  result of Defendants' illegal and wrongful conduct alleged herein.

21      29.     Plaintiff CLARA CARSON is a natural person currently residing in Florida, and

22  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

23  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

24  distributed, and sold by Defendants. CLARA CARSON has suffered damages as a result of

25  Defendants' illegal and wrongful conduct alleged herein.

26      30.     Plaintiff BRENDA K. CARTER is a natural person currently residing in District

27  of Columbia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

28  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6

COMPLAINT AND DEMAND FOR JURY TRIAL

1  packaged, distributed, and sold by Defendants. BRENDA K. CARTER has suffered damages as
2  a result of Defendants' illegal and wrongful conduct alleged herein.

3        31.    Plaintiff MARY K. CARTER is a natural person currently residing in Indiana,
4  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6  distributed, and sold by Defendants. MARY K. CARTER has suffered damages as a result of
7  Defendants' illegal and wrongful conduct alleged herein.

8        32.    Plaintiff PAULETTE CARTER is a natural person currently residing in
9  Pennsylvania, and received chemotherapy treatment with TAXOTERE®. She was prescribed
10  and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
11  packaged, distributed, and sold by Defendants. PAULETTE CARTER has suffered damages as a
12  result of Defendants' illegal and wrongful conduct alleged herein.

13        33.    Plaintiff JUANITA CHAMBERS is a natural person currently residing in
14  Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
15  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
16  packaged, distributed, and sold by Defendants. JUANITA CHAMBERS has suffered damages
17  as a result of Defendants' illegal and wrongful conduct alleged herein.

18        34.    Plaintiff CYNTHIA CHAPMAN is a natural person currently residing in
19  Wisconsin, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
20  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
21  packaged, distributed, and sold by Defendants. CYNTHIA CHAPMAN has suffered damages as
22  a result of Defendants' illegal and wrongful conduct alleged herein.

23        35.    Plaintiff GLORIA J. CHARETTE is a natural person currently residing in North
24  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
25  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
26  packaged, distributed, and sold by Defendants. GLORIA J. CHARETTE has suffered damages
27  as a result of Defendants' illegal and wrongful conduct alleged herein.

28

<div align="center">7</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

36. Plaintiff MARY Y. CHARLESTON is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARY Y. CHARLESTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

37. Plaintiff MELODY CLARK is a natural person currently residing in Indiana, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MELODY CLARK has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38. Plaintiff MARY COLLINS is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARY COLLINS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

39. Plaintiff ASHLEY CONWAY is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ASHLEY CONWAY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

40. Plaintiff MAXINE CRAFTON is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MAXINE CRAFTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41. Plaintiff DAWN CREECH is a natural person currently residing in Nevada, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

COMPLAINT AND DEMAND FOR JURY TRIAL

1  distributed, and sold by Defendants. DAWN CREECH has suffered damages as a result of

2  Defendants' illegal and wrongful conduct alleged herein.

3      42.    Plaintiff CHRISTIANNA CROCKETT is a natural person currently residing in

4  Oklahoma, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

5  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6  packaged, distributed, and sold by Defendants. CHRISTIANNA CROCKETT has suffered

7  damages as a result of Defendants' illegal and wrongful conduct alleged herein.

8      43.    Plaintiff VIVIAN L. CROSBY is a natural person currently residing in Missouri,

9  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11  distributed, and sold by Defendants. VIVIAN L. CROSBY has suffered damages as a result of

12  Defendants' illegal and wrongful conduct alleged herein.

13      44.    Plaintiff CAROL A. CRUMBLIN is a natural person currently residing in

14  Illinois, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16  packaged, distributed, and sold by Defendants. CAROL A. CRUMBLIN has suffered damages

17  as a result of Defendants' illegal and wrongful conduct alleged herein.

18      45.    Plaintiff YOLANDA DANKINS is a natural person currently residing in Texas,

19  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21  distributed, and sold by Defendants. YOLANDA DANKINS has suffered damages as a result of

22  Defendants' illegal and wrongful conduct alleged herein.

23      46.    Plaintiff SANDRA DANTZLER is a natural person currently residing in

24  Arizona, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26  packaged, distributed, and sold by Defendants. SANDRA DANTZLER has suffered damages as

27  a result of Defendants' illegal and wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 12 - Doc ID = 1720728882 - Doc Type = OTHER

47.     Plaintiff MARY B DAVENPORT is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARY B DAVENPORT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

48.     Plaintiff DOROTHY L. DAVIS is a natural person currently residing in District of Columbia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DOROTHY L. DAVIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

49.     Plaintiff JENNIFER DAVIS is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JENNIFER DAVIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

50.     Plaintiff LUWANDA DAVIS is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LUWANDA DAVIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

51.     Plaintiff REGINA DAVIS is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. REGINA DAVIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

52.     Plaintiff RUBY L. DAVIS is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

10

COMPLAINT AND DEMAND FOR JURY TRIAL

1    distributed, and sold by Defendants. RUBY L. DAVIS has suffered damages as a result of
2    Defendants' illegal and wrongful conduct alleged herein.
3         53.    Plaintiff CHARMAINE DIXON is a natural person currently residing in South
4    Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
5    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
6    packaged, distributed, and sold by Defendants. CHARMAINE DIXON has suffered damages as
7    a result of Defendants' illegal and wrongful conduct alleged herein.
8         54.    Plaintiff DOROTHY DIXON is a natural person currently residing in Texas, and
9    received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
10   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
11   distributed, and sold by Defendants. DOROTHY DIXON has suffered damages as a result of
12   Defendants' illegal and wrongful conduct alleged herein.
13        55.    Plaintiff SELINA M. DIXON is a natural person currently residing in Ohio, and
14   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
15   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
16   distributed, and sold by Defendants. SELINA M. DIXON has suffered damages as a result of
17   Defendants' illegal and wrongful conduct alleged herein.
18        56.    Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under
19   the laws of the State of Delaware, with its principal place of business located at 55 Corporate
20   Dr., Bridgewater, NJ 08807.
21        57.    Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is
22   one of the largest pharmaceutical companies in the United States.
23        58.    SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S.
24   INC, and SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S.,
25   shall be referred to herein individually by name or jointly as "Sanofi Defendants ."
26        59.    Sanofi U.S. Services Inc. develops products in therapeutic areas including
27   cardiovascular disease, central nervous systems, internal medicine, metabolic disorder,
28   oncology, ophthalmology, and thrombosis.

11

COMPLAINT AND DEMAND FOR JURY TRIAL

60.     The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

61.     Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes pharmaceutical products in the United States.

62.     Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

63.     Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

64.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals.

65.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, TAXOTERE®.

66.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

67.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States.

68.     Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for TAXOTERE®.

69.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

70.     Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws of the State of Delaware.

71.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC engaged in transactions and conducted business within the State of Delaware and has derived substantial revenue from goods and products disseminated and used in the State of Delaware.  At all times

12

COMPLAINT AND DEMAND FOR JURY TRIAL

1    relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching,

2    analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing,

3    assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising

4    and/or selling the prescription drug known as TAXOTERE® to the public, including the

5    Plaintiff.

6          72.      Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

7    sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S.,

8    which is not a separately existing legal entity but rather is a business unit or division operating

9    within and part of Sanofi-Aventis U.S. LLC.

10         73.      At all times material to this lawsuit, the Sanofi Defendants were authorized to do

11   business within the State of California; did in fact transact and conduct business in the State of

12   California; derived substantial revenue from goods and products used in the State of California;

13   and supplied TAXOTERE® within the State of California.

14         74.      At all relevant times, and as more fully set forth below, the Sanofi Defendants

15   acted in conjunction with other affiliated, related, jointly owned and controlled entities or

16   subsidiaries, including each other, in the development, marketing, production, labeling,

17   promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public,

18   including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within

19   the course and scope of the agency, with respect to the conduct alleged in this Complaint, such

20   that any individuality and separateness between them had ceased and these Defendants became

21   the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as

22   alleged herein.

23         75.      The Sanofi Defendants transact substantial business in California. The Sanofi

24   Defendants have sponsored or conducted clinical trials of their products in California, including

25   trials of TAXOTERE®. For example, in 2005 Aventis sponsored a clinical trial at Stanford

26   University of the efficacy of TAXOTERE® for lung cancer treatment; from 2006 to 2012 Sanofi

27   sponsored a clinical trial at Stanford on the efficacy of TAXOTERE® for breast cancer

28   treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford

13

COMPLAINT AND DEMAND FOR JURY TRIAL

1   Unoversity of TAXOTERE® in patients with breast cancer; Sanofi also sponsored a large-scale

2   epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern

3   California, which terminated in 2012.  In addition, Sanofi participates in ongoing research and

4   development collaborations with the University of California, San Francisco.

5          76.     In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales

6   represented the majority, at €29.8 billion. Although generic docetaxel is now available,

7   TAXOTERE® continues to be extremely profitable for Sanofi; in 2015 sales of TAXOTERE®

8   alone were €222 million.

9          77.     Sanofi spends large sums on California politics, mainly via four entities that share

10  the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-

11  Aventis; and Sanofi-Aventis Group.

12         78.     For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in

13  lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying

14  in the state.

15         79.     Sanofi US contributes to political campaigns in California. Specifically, in 2016

16  Sanofi US contributed $4.15 million to the Californians against the Misleading RX Measure, and

17  $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015

18  Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently

19  contributed $7,300 total to five assembly-member candidates, and $2,500 to the California

20  Republican Party.

21         80.     Defendant McKesson Corporation is a Delaware corporation with its principal

22  place of business at One Post Street, San Francisco, California 94104.

23         81.     Upon investigation and belief, Plaintiffs are informed and believe that McKesson

24  was involved in the manufacture, distribution, marketing sale, labeling and design of

25  TAXOTERE® as detailed below. Specifically, McKesson is the 16th largest industrial

26  corporation in America, with over $800 billion in revenue every year. McKesson is the sole

27  supplier of numerous pharmaceuticals to both the largest pharmacies and drug suppliers in the

28

14

COMPLAINT AND DEMAND FOR JURY TRIAL

1  nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest

2  independent and community pharmacies.

3       82.    McKesson Corporation is a distributor of pharmaceutical and health care products

4  that provides health information technology, medical supplies and care management tools.  Upon

5  information and belief, McKesson Corporation manufactured and supplied TAXOTERE®,

6  among other products to both hospitals and pharmacies.

7       83.    Upon investigation and belief, McKesson does business throughout the United

8  States and in the State of California, and regularly and continuously did business within this

9  judicial district including manufacturing, marketing, advertising, warning and precautions

10  attendant to its use, selling, and distributing of TAXOTERE®. For example, McKesson

11  Specialty Health, a division of McKesson, lists TAXOTERE® in its catalog of available

12  products.

13       84.    Upon investigation and belief, McKesson manufactured marketed, sold and

14  distributed TAXOTERE® administered to Plaintiffs.

15       85.    Upon information and belief, McKesson was the actor engaged in the acts herein

16  alleged, acting through its agents and employees, at all times, the actions and omissions asserted

17  in this pleading were committed by agents or employees acting within the purpose and scope of

18  said agency and employment.

19       86.    At all relevant times, McKesson owns US Oncology, which supported a

20  significant amount of TAXOTERE® research and promotion.

21       87.    Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is

22  incorporated under the laws of the State of Delaware, with its principal place of business located

23  at 275 N. Field Drive, Lake Forest, Illinois 60045.

24       88.    Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of

25  Colorado, with its principal place of business located at 100 College Road West, Princeton, New

26  Jersey 08540.

27

28

15

COMPLAINT AND DEMAND FOR JURY TRIAL

89.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

90.     Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

91.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

92.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

93.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

94.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes California, either

16

COMPLAINT AND DEMAND FOR JURY TRIAL

1 directly or indirectly through third parties, subsidiaries or related entities, the drug

2 TAXOTERE®.

3 **DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING,**

4 **MARKETING, AND SALE OF TAXOTERE®**

5     95.     TAXOTERE® is a drug used in the treatment of various forms of cancer,

6 including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs

7 commonly referred to as taxanes.

8     96.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews)

9 featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents

10 include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic

11 forms as well.

12     97.· ·   TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers

13 Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food

14 and Drug Administration (FDA) in December 1992.

15     98.     The drug and chemical compound that would become known as TAXOTERE®

16 was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

17 and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased

18 potency taxane.

19     99.     The initial patent disclosing the formulation and computation of TAXOTERE®

20 was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in

21 March 1989.

22     100.    In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental*

23 *Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec

24 assigned to docetaxel.

25     101.    Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990.

26 The study reporting on these trials was called the "TAX 001" study, which continued until May

27 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly,

28 Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®,

<div align="center">17</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

1    but Sanofi was also directly involved in the clinical trials and testing of the compound

2    TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and

3    data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United

4    States.

5       102.    Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in

6    December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously

7    recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of

8    TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®,

9    which had already received FDA approval, and because more studies of TAXOTERE®'s side

10    effects were needed.

11       103.    TAXOTERE® was ultimately approved by the FDA on May 14, 1996.

12    According to its product labeling, TAXOTERE® was "indicated for the treatment of patients

13    with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

14       104.    After the initial FDA approval, Sanofi sought and was granted FDA approval for

15    additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed

16    superiority over other chemotherapy products approved to treat breast cancer. These marketing

17    claims included claims of superior efficacy over the lower potency taxane product TAXOL®,

18    which was the primary competitor product to TAXOTERE®.

19       105.    Defendant McKesson Corporation distributed, packaged, labeled, and promoted

20    TAXOTERE® in California and around the country throughout this period. U.S. Oncology, a

21    specialty drug distributor now owned by McKesson, supported research and the subsequent

22    promotion of TAXOTERE® at conferences including the annual meetings for the American

23    Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology

24    in 2010.

25       106.    Contrary to Defendants' claims of superior efficacy, post market surveillance has

26    shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits

27    over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the

28    existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

<div align="center">18</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

107.    A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

108.    A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

109.    Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus TAXOL®.  Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

110.    Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

111.    As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE®  (docetaxel) Injection Concentrate, Intravenous Infusion (TAXOTERE® ) submitted under cover of

19

COMPLAINT AND DEMAND FOR JURY TRIAL

Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

112.    A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

113.    Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

114.    As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products such as TAXOL®.

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

20

COMPLAINT AND DEMAND FOR JURY TRIAL

115.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

**DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS**

116.     Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

117.     Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

118.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

119.     Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

120.     Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly,

21

COMPLAINT AND DEMAND FOR JURY TRIAL

1   intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from

2   physicians, healthcare providers, patients, and Plaintiffs in the United States.

3       121.   In 2006, Defendants knew or should have known that a Denver-based oncologist

4   in the United States had observed that an increased percentage (6.3%) of his patients who had

5   taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients

6   had stopped taking TAXOTERE®.

7       122.   Despite Defendants' knowledge of the relevant findings from the GEICAM 9805

8   study, as well as reports from patients who had taken TAXOTERE® and suffered from

9   permanent disfiguring hair loss, Defendants failed to provide accurate information and proper

10  warnings to physicians, healthcare providers, and patients in the United States, including

11  Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering

12  from permanent disfiguring hair loss.

13      123.   Defendants chose to withhold this information in the United States despite

14  advising physicians, patients, and regulatory agencies in other countries, including the European

15  Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair

16  loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

17  and Plaintiffs in the United States only with the generic, vague, and insufficient warning that

18  "hair generally grows back" after taking TAXOTERE®.

19      124.   Users of TAXOTERE® were not presented with the opportunity to make an

20  informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

21  Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as

22  compared to other alternatives while simultaneously failing to warn of the risk of disfiguring

23  permanent alopecia.

24      125.   In other countries, Defendants published information to individual patients and

25  regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until

26  December 2015, the words permanent alopecia or permanent hair loss did not appear in any

27  information published by Defendants in the United States.

28

<div align="center">22</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

126.   In December 2015, the FDA changed the safety labeling for TAXOTERE® (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

127.   As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

128.   As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

129.   Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

130.   Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

131.   Plaintiff RENISHA BROWN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RENISHA BROWN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 26 - Doc ID = 1720728882 - Doc Type = OTHER

1  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
2  suit against Defendants was tolled by such delayed discover.

3      132.    Plaintiff RENISHA BROWN underwent her chemotherapy treatment. On
4  information and belief, McKesson Corporation distributed the TAXOTERE® that RENISHA
5  BROWN received.

6      133.    Plaintiff LINDA D. ABRAMS was diagnosed with breast cancer. Following her
7  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA D.
8  ABRAMS nor her treating healthcare providers were aware of or informed by Defendants that
9  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
15  suit against Defendants was tolled by such delayed discover.

16      134.    Plaintiff LINDA D. ABRAMS underwent her chemotherapy treatment. On
17  information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA D.
18  ABRAMS received.

19      135.    Plaintiff FERIAL ALAWAR was diagnosed with breast cancer. Following her
20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff FERIAL
21  ALAWAR nor her treating healthcare providers were aware of or informed by Defendants that
22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
28  suit against Defendants was tolled by such delayed discover.

24

COMPLAINT AND DEMAND FOR JURY TRIAL

136.    Plaintiff FERIAL ALAWAR underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that FERIAL ALAWAR received.

137.    Plaintiff CATHY ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CATHY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

138.    Plaintiff CATHY ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CATHY ANDERSON received.

139.    Plaintiff JERRY ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JERRY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

25

COMPLAINT AND DEMAND FOR JURY TRIAL

140.    Plaintiff JERRY ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JERRY ANDERSON received.

141.    Plaintiff LORETTA ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LORETTA ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

142.    Plaintiff LORETTA ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LORETTA ANDERSON received.

143.    Plaintiff ROSE ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROSE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

<div align="center">26</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

144.   Plaintiff ROSE ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ROSE ANDERSON received.

145.   Plaintiff VIRGIE ANDERSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VIRGIE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

146.   Plaintiff VIRGIE ANDERSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that VIRGIE ANDERSON received.

147.   Plaintiff GLORIA ARGEL was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GLORIA ARGEL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 30 - Doc ID = 1720728882 - Doc Type = OTHER

1    148.    Plaintiff GLORIA ARGEL underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that GLORIA

3  ARGEL received.

4    149.    Plaintiff CAROLYN BELIN was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CAROLYN

6  BELIN nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14    150.    Plaintiff CAROLYN BELIN underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that CAROLYN

16  BELIN received.

17    151.    Plaintiff HARRIET BENJAMIN was diagnosed with breast cancer. Following

18  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff HARRIET

19  BENJAMIN nor her treating healthcare providers were aware of or informed by Defendants that

20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

28

COMPLAINT AND DEMAND FOR JURY TRIAL

152.     Plaintiff HARRIET BENJAMIN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that HARRIET BENJAMIN received.

153.     Plaintiff SALLY M. BERNETT was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SALLY M. BERNETT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

154.     Plaintiff SALLY M. BERNETT underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SALLY M. BERNETT received.

155.     Plaintiff JANET ANNE BLOOM was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JANET ANNE BLOOM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

29

COMPLAINT AND DEMAND FOR JURY TRIAL

156.   Plaintiff JANET ANNE BLOOM underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JANET ANNE BLOOM received.

157.   Plaintiff JUDY BONB was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JUDY BONB nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

158.   Plaintiff JUDY BONB underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JUDY BONB received.

159.   Plaintiff GENEVA BOUNDS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GENEVA BOUNDS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

160.   Plaintiff GENEVA BOUNDS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that GENEVA BOUNDS received.

30

COMPLAINT AND DEMAND FOR JURY TRIAL

1     161.   Plaintiff BEVERLY BREAUX was diagnosed with breast cancer. Following her

2 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BEVERLY

3 BREAUX nor her treating healthcare providers were aware of or informed by Defendants that

4 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

5 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

6 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

7 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

8 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

9 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

10 suit against Defendants was tolled by such delayed discover.

11     162.   Plaintiff BEVERLY BREAUX underwent her chemotherapy treatment. On

12 information and belief, McKesson Corporation distributed the TAXOTERE® that BEVERLY

13 BREAUX received.

14     163.   Plaintiff LINDA BROADIE was diagnosed with breast cancer. Following her

15 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA

16 BROADIE nor her treating healthcare providers were aware of or informed by Defendants that

17 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

19 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23 suit against Defendants was tolled by such delayed discover.

24     164.   Plaintiff LINDA BROADIE underwent her chemotherapy treatment. On

25 information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA

26 BROADIE received.

27     165.   Plaintiff VANETTA BROWN was diagnosed with breast cancer. Following her

28 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VANETTA

31

COMPLAINT AND DEMAND FOR JURY TRIAL

1   BROWN nor her treating healthcare providers were aware of or informed by Defendants that

2   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

4   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8   suit against Defendants was tolled by such delayed discover.

9        166.   Plaintiff VANETTA BROWN underwent her chemotherapy treatment. On

10   information and belief, McKesson Corporation distributed the TAXOTERE® that VANETTA

11   BROWN received.

12        167.   Plaintiff PHYLLIS E. BRUNER was diagnosed with breast cancer. Following her

13   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PHYLLIS E.

14   BRUNER nor her treating healthcare providers were aware of or informed by Defendants that

15   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

17   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21   suit against Defendants was tolled by such delayed discover.

22        168.   Plaintiff PHYLLIS E. BRUNER underwent her chemotherapy treatment. On

23   information and belief, McKesson Corporation distributed the TAXOTERE® that PHYLLIS E.

24   BRUNER received.

25        169.   Plaintiff DELLA BUCKLEY was diagnosed with breast cancer. Following her

26   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DELLA

27   BUCKLEY nor her treating healthcare providers were aware of or informed by Defendants that

28   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 35 - Doc ID = 1720728882 - Doc Type = OTHER

1   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

2   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

3   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

4   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

5   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

6   suit against Defendants was tolled by such delayed discover.

7         170.   Plaintiff DELLA BUCKLEY underwent her chemotherapy treatment. On

8   information and belief, McKesson Corporation distributed the TAXOTERE® that DELLA

9   BUCKLEY received.

10        171.   Plaintiff HELEN BUNCHE was diagnosed with breast cancer. Following her

11  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff HELEN

12  BUNCHE nor her treating healthcare providers were aware of or informed by Defendants that

13  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

14  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

15  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

16  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

17  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

18  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

19  suit against Defendants was tolled by such delayed discover.

20        172.   Plaintiff HELEN BUNCHE underwent her chemotherapy treatment. On

21  information and belief, McKesson Corporation distributed the TAXOTERE® that HELEN

22  BUNCHE received.

23        173.   Plaintiff FRANCIS CARROLL was diagnosed with breast cancer. Following her

24  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff FRANCIS

25  CARROLL nor her treating healthcare providers were aware of or informed by Defendants that

26  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

27  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

28  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

Doc# 1 Page# 36 - Doc ID = 1720728882 - Doc Type = OTHER

1  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4  suit against Defendants was tolled by such delayed discover.

5      174.   Plaintiff FRANCIS CARROLL underwent her chemotherapy treatment. On

6  information and belief, McKesson Corporation distributed the TAXOTERE® that FRANCIS

7  CARROLL received.

8      175.   Plaintiff LINDA CARROLL was diagnosed with breast cancer. Following her

9  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA

10 CARROLL nor her treating healthcare providers were aware of or informed by Defendants that

11 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

13 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17 suit against Defendants was tolled by such delayed discover.

18     176.   Plaintiff LINDA CARROLL underwent her chemotherapy treatment. On

19 information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA

20 CARROLL received.

21     177.   Plaintiff CLARA CARSON was diagnosed with breast cancer. Following her

22 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CLARA

23 CARSON nor her treating healthcare providers were aware of or informed by Defendants that

24 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

26 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

34

COMPLAINT AND DEMAND FOR JURY TRIAL

1  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2  suit against Defendants was tolled by such delayed discover.

3       178.  Plaintiff CLARA CARSON underwent her chemotherapy treatment. On

4  information and belief, McKesson Corporation distributed the TAXOTERE® that CLARA

5  CARSON received.

6       179.  Plaintiff BRENDA K. CARTER was diagnosed with breast cancer. Following her

7  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BRENDA K.

8  CARTER nor her treating healthcare providers were aware of or informed by Defendants that

9  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15  suit against Defendants was tolled by such delayed discover.

16       180.  Plaintiff BRENDA K. CARTER underwent her chemotherapy treatment. On

17  information and belief, McKesson Corporation distributed the TAXOTERE® that BRENDA K.

18  CARTER received.

19       181.  Plaintiff MARY K. CARTER was diagnosed with breast cancer. Following her

20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY K.

21  CARTER nor her treating healthcare providers were aware of or informed by Defendants that

22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28  suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 38 - Doc ID = 1720728882 - Doc Type = OTHER

1    182.   Plaintiff MARY K. CARTER underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that MARY K.

3  CARTER received.

4    183.   Plaintiff PAULETTE CARTER was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PAULETTE

6  CARTER nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14    184.   Plaintiff PAULETTE CARTER underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that PAULETTE

16  CARTER received.

17    185.   Plaintiff JUANITA CHAMBERS was diagnosed with breast cancer. Following

18  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JUANITA

19  CHAMBERS nor her treating healthcare providers were aware of or informed by Defendants

20  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

36

COMPLAINT AND DEMAND FOR JURY TRIAL

186.     Plaintiff JUANITA CHAMBERS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JUANITA CHAMBERS received.

187.     Plaintiff CYNTHIA CHAPMAN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CYNTHIA CHAPMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

188.     Plaintiff CYNTHIA CHAPMAN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CYNTHIA CHAPMAN received.

189.     Plaintiff GLORIA J. CHARETTE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GLORIA J. CHARETTE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

37

COMPLAINT AND DEMAND FOR JURY TRIAL

190.    Plaintiff GLORIA J. CHARETTE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that GLORIA J. CHARETTE received.

191.    Plaintiff MARY Y. CHARLESTON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY Y. CHARLESTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

192.    Plaintiff MARY Y. CHARLESTON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY Y. CHARLESTON received.

193.    Plaintiff MELODY CLARK was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MELODY CLARK nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

38
COMPLAINT AND DEMAND FOR JURY TRIAL

194. Plaintiff MELODY CLARK underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MELODY CLARK received.

195. Plaintiff MARY COLLINS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY COLLINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

196. Plaintiff MARY COLLINS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY COLLINS received.

197. Plaintiff ASHLEY CONWAY was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ASHLEY CONWAY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

39

COMPLAINT AND DEMAND FOR JURY TRIAL

198.    Plaintiff ASHLEY CONWAY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ASHLEY CONWAY received.

199.    Plaintiff MAXINE CRAFTON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MAXINE CRAFTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

200.    Plaintiff MAXINE CRAFTON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MAXINE CRAFTON received.

201.    Plaintiff DAWN CREECH was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DAWN CREECH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

40

COMPLAINT AND DEMAND FOR JURY TRIAL

1       202.   Plaintiff DAWN CREECH underwent her chemotherapy treatment. On

2 information and belief, McKesson Corporation distributed the TAXOTERE® that DAWN

3 CREECH received.

4       203.   Plaintiff CHRISTIANNA CROCKETT was diagnosed with breast cancer.

5 Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

6 CHRISTIANNA CROCKETT nor her treating healthcare providers were aware of or informed

7 by Defendants that disfiguring permanent alopecia can occur following treatment with

8 TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

9 Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

10 loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

11 conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

12 to her injuries, including, but not limited to, her development of alopecia. Accordingly,

13 Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

14       204.   Plaintiff CHRISTIANNA CROCKETT underwent her chemotherapy treatment.

15 On information and belief, McKesson Corporation distributed the TAXOTERE® that

16 CHRISTIANNA CROCKETT received.

17       205.   Plaintiff VIVIAN L. CROSBY was diagnosed with breast cancer. Following her

18 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VIVIAN L.

19 CROSBY nor her treating healthcare providers were aware of or informed by Defendants that

20 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26 suit against Defendants was tolled by such delayed discover.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

206.  Plaintiff VIVIAN L. CROSBY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that VIVIAN L. CROSBY received.

207.  Plaintiff CAROL A. CRUMBLIN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CAROL A. CRUMBLIN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

208.  Plaintiff CAROL A. CRUMBLIN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CAROL A. CRUMBLIN received.

209.  Plaintiff YOLANDA DANKINS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff YOLANDA DANKINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

42

COMPLAINT AND DEMAND FOR JURY TRIAL

210.    Plaintiff YOLANDA DANKINS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that YOLANDA DANKINS received.

211.    Plaintiff SANDRA DANTZLER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SANDRA DANTZLER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

212.    Plaintiff SANDRA DANTZLER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SANDRA DANTZLER received.

213.    Plaintiff MARY B DAVENPORT was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY B DAVENPORT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

43

COMPLAINT AND DEMAND FOR JURY TRIAL

214.   Plaintiff MARY B DAVENPORT underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY B DAVENPORT received.

215.   Plaintiff DOROTHY L. DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DOROTHY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

216.   Plaintiff DOROTHY L. DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DOROTHY L. DAVIS received.

217.   Plaintiff JENNIFER DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JENNIFER DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

44

COMPLAINT AND DEMAND FOR JURY TRIAL

1    218.    Plaintiff JENNIFER DAVIS underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that JENNIFER

3  DAVIS received.

4    219.    Plaintiff LUWANDA DAVIS was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LUWANDA

6  DAVIS nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14    220.    Plaintiff LUWANDA DAVIS underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that LUWANDA

16  DAVIS received.

17    221.    Plaintiff REGINA DAVIS was diagnosed with breast cancer. Following her

18  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff REGINA

19  DAVIS nor her treating healthcare providers were aware of or informed by Defendants that

20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

45

COMPLAINT AND DEMAND FOR JURY TRIAL

222.    Plaintiff REGINA DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that REGINA DAVIS received.

223.    Plaintiff RUBY L. DAVIS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RUBY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

224.    Plaintiff RUBY L. DAVIS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that RUBY L. DAVIS received.

225.    Plaintiff CHARMAINE DIXON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CHARMAINE DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

46

COMPLAINT AND DEMAND FOR JURY TRIAL

226.  Plaintiff CHARMAINE DIXON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CHARMAINE DIXON received.

227.  Plaintiff DOROTHY DIXON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DOROTHY DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

228.  Plaintiff DOROTHY DIXON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DOROTHY DIXON received.

229.  Plaintiff SELINA M. DIXON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SELINA M. DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

47
COMPLAINT AND DEMAND FOR JURY TRIAL

230. Plaintiff SELINA M. DIXON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SELINA M. DIXON received.

## NATURE OF THE CLAIMS

231. Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

232. In particular, Defendants:

    (a)    failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

    (b)    failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

    (c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permanent alopecia;

    (d)    failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of TAXOTERE®;

    (e)    failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

    (f)    failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of TAXOTERE®;

48

COMPLAINT AND DEMAND FOR JURY TRIAL

(g)    failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)    failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i)    failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

233.    During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

234.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

235.    Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

236.    Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

237.    From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

238.    Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

239.    Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered

49

COMPLAINT AND DEMAND FOR JURY TRIAL

1 | Defendants' false representations and failures to disclose information through the exercise of
2 | reasonable diligence.

3 |     240.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

4 | suffer serious and dangerous side effects, severe and personal injuries that are permanent and

5 | lasting in nature, and economic and non-economic damages, harms, and losses, including but not

6 | limited to: past and future medical expenses; past and future loss of earnings; past and future

7 | loss and impairment of earning capacity; permanent disfigurement including permanent

8 | alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

9 | harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

10 | present, and future loss and impairment of the quality and enjoyment of life.

11 | **<center>ESTOPPEL FROM PLEADING STATUTES OF<br>LIMITATIONS OR REPOSE</center>**
12 |

13 |     241.   Plaintiffs incorporate by reference the averments of the preceding paragraphs of

14 | the Complaint as if fully set forth at length herein.

15 |     242.   Plaintiffs are within the applicable statutes of limitations for the claims presented

16 | herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of

17 | Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

18 | permanent alopecia, and could not reasonably have discovered the defects and unreasonably

19 | dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to

20 | the Defendants' failure to warn, suppression of important information about the risks of the

21 | drug, including but not limited to the true risk benefit profile, and the risk of disfiguring

22 | permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®,

23 | and other acts and omissions.

24 |     243.   In addition, Defendants are estopped from relying on any statutes of limitations or

25 | repose by virtue of their acts of Concealment, affirmative misrepresentations and omissions,

26 | which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health

27 | care professionals and the general consuming public that Defendants' TAXOTERE® was

28 | defective, unreasonably dangerous and carried with it the serious risk of developing the injuries

<center>50</center>
<center>COMPLAINT AND DEMAND FOR JURY TRIAL</center>

1  Plaintiffs have suffered while aggressively and continually marketing and promoting

2  TAXOTERE® as safe and effective. This includes, but is not limited to, Defendants' failure to

3  disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

4  Defendants to result from use of TAXOTERE®, for example, and not by way of limitation,

5  internal concern about reports and studies finding an increased risk of disfiguring permanent

6  alopecia; suppression of information about these risks and injuries from physicians and patients,

7  including Plaintiffs; use of sales and marketing documents and information that contained

8  information contrary to the internally held knowledge regarding the aforesaid risks and injuries;

9  and overstatement of the efficacy and safety of TAXOTERE®.

10      244.    Defendants had a duty to disclose that TAXOTERE® was defective,

11  unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

12  serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.

13  Defendants breached that duty.

14      245.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general

15  consuming public, had no knowledge of, and no reasonable way of discovering, the defects

16  found in Defendants' TAXOTERE® or the true risks associated with their use at the time she

17  purchased and used Defendants' TAXOTERE®.

18      246.    Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing

19  health care professionals or the general consuming public that Defendants' TAXOTERE® was

20  defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have

21  suffered and complained of herein.

22      247.    Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing

23  health care professionals and the general consuming public that their TAXOTERE® was

24  defective and, further, actively attempted to conceal this fact, Defendants should be estopped

25  from asserting defenses based on statutes of limitation or repose.

26      248.    Accordingly, Plaintiffs file this lawsuit within the applicable statutes of

27  limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any

28  wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 54 - Doc ID = 1720728882 - Doc Type = OTHER

1   when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable

2   based on the lack of necessary information, which was suppressed by the Defendants.  Further,

3   the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug

4   was inherently difficult to discover, in part due to the Defendants' knowing suppression of

5   important safety information.  Consequently, the discovery rule should be applied to toll the

6   running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable

7   diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

8        249.    After Defendants changed the TAXOTERE® prescription information in the

9   United States to include information about permanent alopecia in December 2015, there ensued

10  publicity and advertising related to permanent alopecia caused by TAXOTERE®. Plaintiffs, as a

11  result of the publicity and advertising, became aware of the failure to warn about permanent

12  alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug.

13  Plaintiffs acted with all reasonable diligence and speed upon discovering this information and

14  timely files the present complaint.

### FIRST CLAIM FOR RELIEF

### (Product Liability for Negligence – Against All Defendants)

17       250.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

18  same force and effect as if fully set forth herein.

19       251.    Defendants had a duty to exercise reasonable care in the marketing, supplying,

20  promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce,

21  including a duty to assure that the product would not cause users to suffer unreasonable,

22  dangerous side effects.

23       252.    Defendants failed to exercise reasonable care in the marketing, supplying,

24  promoting, packaging, sale, and/or distribution of TAXOTERE® into interstate commerce in

25  that Defendants knew or should have known that using TAXOTERE® created a high risk of

26  unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting

27  in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of

28  life, economic loss, and loss of economic opportunity.

COMPLAINT AND DEMAND FOR JURY TRIAL

253.   The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)   Selling TAXOTERE® without disclosing its dangers and risks;

(b)   Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

(c)   Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

(d)   Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

(e)   Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)   Negligently and falsely representing that TAXOTERE® was superior to other commercially available products to treat the same forms of cancer that TAXOTERE® was intended to treat;

(g)   Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h)   Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

254.   Defendants underreported, underestimated and downplayed the serious dangers and risk associated with TAXOTERE®.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 56 - Doc ID = 1720728882 - Doc Type = OTHER

255.   Defendants negligently conveyed that the safety risks and/or dangers of TAXOTERE® were comparable with other forms of treatment for the same conditions for which TAXOTERE® was prescribed to treat.

256.   Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

(a)   Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of TAXOTERE®;

(b)   Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with TAXOTERE®;

(c)   Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

(d)   Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(e)   Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®.

(f)   Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)   Were otherwise careless and/or negligent.

257.   Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiffs.

54

COMPLAINT AND DEMAND FOR JURY TRIAL

258.     Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was meant to treat.

259.     Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

260.     Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

261.     As a direct and proximate result of the use of TAXOTERE®, Plaintiffs experienced disfiguring permanent alopecia.

262.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

263.     Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

264.     The TAXOTERE® that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 58 - Doc ID = 1720728882 - Doc Type = OTHER

1   by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity,

2   or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

3        265.    Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for

4   the Reference Listed Drug ("RLD") of brand-name TAXOTERE®, the Sanofi Defendants

5   supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. All of the labeling

6   for the generic version was also defective because it failed to adequately warn of the risk of

7   disfiguring permanent alopecia.

8        266.    Defendants failed to provide adequate warnings to physicians and users,

9   including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent

10  alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently

11  promoted the product to physicians.

12       267.    As a direct and proximate result of Defendants' failure to warn of the potentially

13  severe adverse effects of TAXOTERE®, Plaintiffs suffered disfiguring permanent alopecia and

14  other conditions.

15       268.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

16  suffer serious and dangerous side effects, severe and personal injuries that are permanent and

17  lasting in nature, and economic and non-economic damages, harms, and losses, including but not

18  limited to: past and future medical expenses; past and future loss of earnings; past and future

19  loss and impairment of earning capacity; permanent disfigurement including permanent

20  alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

21  harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

22  present, and future loss and impairment of the quality and enjoyment of life.

## THIRD CLAIM FOR RELIEF
### (Intentional Misrepresentation)

24       269.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

25  same force and effect as if fully set forth herein.

26

27       270.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs'

28  physicians, the medical and healthcare community, and the public in general that TAXOTERE®

1 │ had been tested and was found to be safe and effective for the treatment of certain forms of

2 │ cancer.

3 │     271.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently

4 │ represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

5 │ public in general that TAXOTERE® had been tested and was found to be safe and/or effective

6 │ for its indicated use.

7 │     272.    Defendants concealed their knowledge of TAXOTERE®'s defects from

8 │ Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

9 │ specifically including, but not limited to, concealing their knowledge of the risk of developing

10 │ disfiguring permanent alopecia.

11 │     273.    Defendants concealed their knowledge of the defects in their products from

12 │ Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

13 │     274.    Defendants made these false representations with the intent of defrauding and

14 │ deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare

15 │ community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs'

16 │ physicians, the public in general, and the medical community in particular, to recommend,

17 │ dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer,

18 │ including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

19 │ wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

20 │     275.    Defendants made these false representations with the intent of defrauding and

21 │ deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and

22 │ healthcare community in particular, and were made with the intent of inducing the public in

23 │ general, and the medical community in particular, to recommend, dispense, and/or purchase

24 │ TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to

25 │ breast cancer.

26 │     276.    When Defendants made these representations, Defendants knew those

27 │ representations were false, and Defendants willfully, wantonly, and recklessly disregarded

28 │ whether the representations were true.

<div align="center">57</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

277.     At the time Defendants made the aforesaid representations, and, at the time Plaintiffs used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

278.     In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

279.     Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

280.     Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE®, including, but not limited to, the development of permanent disfiguring alopecia, and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

281.     Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

282.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF
### (Concealment – Against Sanofi Defendants)

283.     Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

58

COMPLAINT AND DEMAND FOR JURY TRIAL

284.  At all times during the course of dealing between Sanofi Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of TAXOTERE® for its intended use.

285.  Sanofi Defendants knew or were reckless in not knowing that its representations were false.

286.  In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi Defendants fraudulently concealed and intentionally omitted the following material information:

> (a)   that TAXOTERE® was not as safe as other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;
>
> (b)   that the risks of adverse events with TAXOTERE® were higher than those with other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;
>
> (c)   that the risks of adverse events with TAXOTERE® were not adequately tested and/or known by Defendants;
>
> (d)   that Defendants were aware of dangers in TAXOTERE®, in addition to and above and beyond those associated with other forms of treatment for cancer patients;
>
> (e)   that TAXOTERE® was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

287.  Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

288.  Sanofi Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 62 - Doc ID = 1720728882 - Doc Type = OTHER

289. Sanofi Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

290. Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

291. Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

292. As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against All Defendants)

293. Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

294. Defendants sold the TAXOTERE® that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

295. Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

60

COMPLAINT AND DEMAND FOR JURY TRIAL

296.     Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

297.     Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

298.     As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)

299.     Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

300.     Defendants' conduct, as set forth above, was extreme and outrageous.

301.     Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

302.     Defendants' conduct caused Plaintiffs severe emotional distress.

303.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Loss of Consortium)

61

COMPLAINT AND DEMAND FOR JURY TRIAL

304.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

305.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

306.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

307.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

308.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

309.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as hereinafter set forth.

**PRAYER FOR RELIEF**

WHEREFORE, all California Plaintiffs demand judgment against Defendants SANOFI U.S. SERVICES INC., formerly known as SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., SANDOZ, INC.,  McKESSON CORPORATION doing business as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC. All non-California plaintiffs demand judgment against Defendant McKESSON CORPORATION doing business as McKESSON PACKAGING. The extreme and outrageous conduct of the Defendants

62

COMPLAINT AND DEMAND FOR JURY TRIAL

1  was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of

2  exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her

3  injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages,

4  costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other

5  injuries and damages as shall be proven at trial, and such other further relief as the Court may

6  deem appropriate, just, and proper.

7  **JURY DEMAND**

8      Plaintiff demands a trial by jury on all issues so triable.

9

10  DATED:  December 12, 2017                    Respectfully submitted,

11

12                                             NAPOLI SHKOLNIK, PLLC

13                                             By:

14                                             Jennifer Liakos
15                                             *Attorney for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

63

COMPLAINT AND DEMAND FOR JURY TRIAL

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, ar number, and address):* | FOR COURT USE ONLY |
|---|---|

Jennifer Liakos, Esq., SBN 207487
Napoli Shkolnik
525 S. Douglas St., Suite 260
Los Angeles, CA 90245
TELEPHONE NO.: 212-397-1000    FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff, Renisha Brown

**FILED**
Superior Court of California
County of Los Angeles

**DEC 12 2017**

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Marion Gomez

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District

CASE NAME:
Renisha Brown v. Sanofi U.S. Services, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **BC686740** |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☑ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary    b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is ☑ is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/11/2017

Jennifer Liakos
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

BY FAX

ORIGINAL

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: Brown v. Sanofi U.S. Services Inc., et al. | CASE NUMBER BC686740 |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

BY FAX

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A<br>Civil Case Cover Sheet<br>Category No. | | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☑ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 2, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

ORIGINAL



| SHORT TITLE: | | CASE NUMBER |
|---|---|---|
| Brown v. Sanofi U.S. Services Inc., et al. | | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

Doc# 1 Page# 70 - Doc ID = 1720728882 - Doc Type = OTHER



| SHORT TITLE: Brown v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

| SHORT TITLE: Brown v. Sanofi U.S. Services Inc., et al. | CASE NUMBER: |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☐ 2. ☐ 3. ☑ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐  9. ☐ 10. ☐ 11. | ADDRESS:<br>1302 N. Magdalena St., Apt. 349 |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __12/11/2017__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 4 of 4

Doc# 1 Page# 72 - Doc ID = 1720728882 - Doc Type = OTHER

Jennifer Liakos, Esq. (SBN 207487)
JLiakos@NapoliLaw.com
NAPOLI SHKOLNIK PLLC
525 South Douglas St., Suite 260
El Segundo, CA 90245
Telephone: 310-331-8224
Facsimile: 310-736-2877

*Attorney for Plaintiffs*

**FILED**
Superior Court of California
County of Los Angeles

**DEC 12 2017**

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shaunya Bolden

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR LOS ANGELES COUNTY

RAMONA GIBSON; DOLLETHEA FOX;
PHYLLIS DUPREE; JENNIFER W.
EDWARDS; GEORGETTE ENWRIGHT;
CAROLYN K. ESTES; ERMA
FARRINGTON; MARY FAULKNER;
MARTHA A. FOSTER; AUDREY FRIDIA;
LINDA FULLMORE; MIKKI GARZA;
JEANNIE GERBER; PAMELA GERVIN;
VERTHAVIA GIBBS; PHYLLIS M. GILL;
SHANNA GIVENS; SALLIE R. GORE;
SHELBY GRANT; AMELIA GREEN;
ROBYN GREER; CHARLOTTE GUNN;
TANYA GURNEY; DORCILLE HADLEY;
GLENDA HAMNER; BEVERLY
HARCOURT; BETTY HAWKINS;
NANCY HEARNE; ADELFA HEVENER;
MOVELL HOLLOWAY; BENDETTA
HOSNEY; ANNIE L. JACKSON; PEGGY
JACKSON; WANDA JACKSON; ANITA
JACOBS; ARLENE JEFFERSON
THROWER; CASSANDRA JOHNSON;
TANYA JOHNSON; DEBORAH JOLLA;
LILLIE JONES; CLEDELL KEMP; MARIE
LACKEY; ANGELA ANITA LAMB;
GWEN LANCE; RACINE LESTER;
SHAUNTEL MAXWELL; FELICIA
MCCLINTON; BRITTANY J. MEECE;
KIMBERLY MENDOZA; AND
DEBORAH MEYERS,

        Plaintiffs,

Case No. **BC 686616**

**COMPLAINT AND DEMAND FOR**

**JURY TRIAL**

**BY FAX**

1. Negligence
2. Strict Liability – Failure to Warn
3. Intentional Misrepresentation
4. Concealment
5. Negligent Misrepresentation
6. Intentional Infliction of Emotional Distress
7. Loss of Consortium

COMPLAINT AND DEMAND FOR JURY TRIAL

ORIGINAL

FSC: 05/28/2019 TRIAL: 06/12/2019 OSC: 12/14/2020 JAL

CIT/CASE: BC686616
LEA/DEF#:

RECEIPT #: CCH465980165
DATE PAID: 12/12/17 04:17 PM
PAYMENT: $435.00 310
RECEIVED:
CHECK: $435.00
CASH: $0.00
CHANGE: $0.00
CARD: $0.00

Doc# 1 Page# 2 - Doc ID = 1720859215 - Doc Type = OTHER

v.

SANOFI U.S. SERVICES INC., formerly
known as SANOFI-AVENTIS U.S. INC,
SANOFI-AVENTIS U.S. LLC, separately
and doing business as WINTHROP U.S.,
SANDOZ, INC., McKESSON
CORPORATION doing business as
McKESSON PACKAGING, HOSPIRA,
INC., HOSPIRA WORLDWIDE, LLC f/k/a
HOSPIRA WORLDWIDE, INC., SANDOZ,
INC., and ACCORD HEALTHCARE, INC.,

Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2          All plaintiffs who are residents of California respectfully submit the following Complaint

3   and Jury Demand against all Defendants, including SANOFI U.S. SERVICES INC., formerly

4   known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing

5   business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business

6   as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a

7   HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC.,

8   (herein collectively referred to as the "Defendants") , and allege the following upon personal

9   knowledge, information, belief, and investigation of counsel.

10         All plaintiffs who are residents outside of California respectfully submit the following

11  Complaint and Jury Demand against Defendants McKESSON CORPORATION doing business

12  as McKESSON PACKAGING, only, and allege the following upon personal knowledge,

13  information, belief, and investigation of counsel.

14                              **NATURE OF THE CASE**

15         1.     Plaintiffs are breast cancer survivors who were prescribed and injected with

16  TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

17  distributed by Defendants.  Although lower potency alternatives have been available for years,

18  Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-

19  sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact,

20  TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more

21  severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.

22  Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s

23  risk of permanent hair loss is not.  Defendants concealed this information from physicians,

24  healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer

25  permanent hair loss without any additional benefit or warning.

26         2.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

27  suffered serious and permanent physical and emotional injuries, including permanent hair loss,

28

---

I

COMPLAINT AND DEMAND FOR JURY TRIAL

1    and seek damages relating to Defendants' distribution, labeling, advertising, marketing,

2    manufacturing, promotion, and sale of TAXOTERE®.

3

4                        **JURISDICTION AND VENUE**

5        3.        This Court has jurisdiction over this action pursuant to Article 6, §10 of the

6    California Constitution and California Code of Civil Procedure § 410.10. The amount in

7    controversy exceeds the jurisdictional limit of $25,000.

8        4.        This Court has personal jurisdiction over Defendants, each of which is licensed to

9    conduct or is systematically and continuously conducting business in the State of California,

10   including, but not limited to, the marketing, advertising, selling, and distributing of drugs,

11   including TAXOTERE®, to the residents in this state.  Defendants have sufficient minimum

12   contacts in California and intentionally avail themselves of the markets within California

13   through the promotion, sale, marketing, and distribution of their products, including

14   TAXOTERE®, thus rendering the exercise of jurisdiction by this Court proper and necessary.

15       5.        Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5.

16   Defendants transact business in Los Angeles County and the events complained of occurred in

17   Los Angeles County.

18                             **PARTIES**

19       1.        Plaintiff RAMONA GIBSON is a natural person currently residing in California,

20       and received chemotherapy treatment with TAXOTERE®. She was prescribed and

21       administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

22       packaged, distributed, and sold by Defendants. RAMONA GIBSON has suffered damages

23       as a result of Defendants' illegal and wrongful conduct alleged herein.

24       2.        Plaintiff DOLLETHEA FOX is a natural person currently residing in California,

25   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

26   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

27   distributed, and sold by Defendants. DOLLETHEA FOX has suffered damages as a result of

28   Defendants' illegal and wrongful conduct alleged herein.

                                   2
                  COMPLAINT AND DEMAND FOR JURY TRIAL

3.    Plaintiff PHYLLIS DUPREE is a natural person currently residing in New Jersey, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. PHYLLIS DUPREE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

4.    Plaintiff JENNIFER W. EDWARDS is a natural person currently residing in Alabama, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JENNIFER W. EDWARDS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

5.    Plaintiff GEORGETTE ENWRIGHT is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GEORGETTE ENWRIGHT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

6.    Plaintiff CAROLYN K. ESTES is a natural person currently residing in Arizona, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CAROLYN K. ESTES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

7.    Plaintiff ERMA FARRINGTON is a natural person currently residing in North Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ERMA FARRINGTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

8.    Plaintiff MARY FAULKNER is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

3

COMPLAINT AND DEMAND FOR JURY TRIAL

1  distributed, and sold by Defendants. MARY FAULKNER has suffered damages as a result of

2  Defendants' illegal and wrongful conduct alleged herein.

3       9.    Plaintiff MARTHA A. FOSTER is a natural person currently residing in Alaska,

4  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6  distributed, and sold by Defendants. MARTHA A. FOSTER has suffered damages as a result of

7  Defendants' illegal and wrongful conduct alleged herein.

8       10.    Plaintiff AUDREY FRIDIA is a natural person currently residing in Texas, and

9  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11  distributed, and sold by Defendants. AUDREY FRIDIA has suffered damages as a result of

12  Defendants' illegal and wrongful conduct alleged herein.

13       11.    Plaintiff LINDA FULLMORE is a natural person currently residing in Georgia,

14  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16  distributed, and sold by Defendants. LINDA FULLMORE has suffered damages as a result of

17  Defendants' illegal and wrongful conduct alleged herein.

18       12.    Plaintiff MIKKI GARZA is a natural person currently residing in Texas, and

19  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21  distributed, and sold by Defendants. MIKKI GARZA has suffered damages as a result of

22  Defendants' illegal and wrongful conduct alleged herein.

23       13.    Plaintiff JEANNIE GERBER is a natural person currently residing in West

24  Virginia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26  packaged, distributed, and sold by Defendants. JEANNIE GERBER has suffered damages as a

27  result of Defendants' illegal and wrongful conduct alleged herein.

28

<div align="center">4</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   14.   Plaintiff PAMELA GERVIN is a natural person currently residing in Ohio, and

2   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

3   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

4   distributed, and sold by Defendants. PAMELA GERVIN has suffered damages as a result of

5   Defendants' illegal and wrongful conduct alleged herein.

6   15.   Plaintiff VERTHAVIA GIBBS is a natural person currently residing in

7   California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

8   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

9   packaged, distributed, and sold by Defendants. VERTHAVIA GIBBS has suffered damages as a

10  result of Defendants' illegal and wrongful conduct alleged herein.

11  16.   Plaintiff PHYLLIS M. GILL is a natural person currently residing in Florida,

12  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

13  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

14  distributed, and sold by Defendants. PHYLLIS M. GILL has suffered damages as a result of

15  Defendants' illegal and wrongful conduct alleged herein.

16  17.   Plaintiff SHANNA GIVENS is a natural person currently residing in New

17  Jersey, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

18  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

19  packaged, distributed, and sold by Defendants. SHANNA GIVENS has suffered damages as a

20  result of Defendants' illegal and wrongful conduct alleged herein.

21  18.   Plaintiff SALLIE R. GORE is a natural person currently residing in South

22  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

23  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

24  packaged, distributed, and sold by Defendants. SALLIE R. GORE has suffered damages as a

25  result of Defendants' illegal and wrongful conduct alleged herein.

26  19.   Plaintiff SHELBY GRANT is a natural person currently residing in South

27  Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

28  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 8 - Doc ID = 1720859215 - Doc Type = OTHER

1  packaged, distributed, and sold by Defendants. SHELBY GRANT has suffered damages as a

2  result of Defendants' illegal and wrongful conduct alleged herein.

3      20.    Plaintiff AMELIA GREEN is a natural person currently residing in Illinois, and

4  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6  distributed, and sold by Defendants. AMELIA GREEN has suffered damages as a result of

7  Defendants' illegal and wrongful conduct alleged herein.

8      21.    Plaintiff ROBYN GREER is a natural person currently residing in Oklahoma,

9  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11  distributed, and sold by Defendants. ROBYN GREER has suffered damages as a result of

12  Defendants' illegal and wrongful conduct alleged herein.

13      22.    Plaintiff CHARLOTTE GUNN is a natural person currently residing in Ohio,

14  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16  distributed, and sold by Defendants. CHARLOTTE GUNN has suffered damages as a result of

17  Defendants' illegal and wrongful conduct alleged herein.

18      23.    Plaintiff TANYA GURNEY is a natural person currently residing in Florida, and

19  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21  distributed, and sold by Defendants. TANYA GURNEY has suffered damages as a result of

22  Defendants' illegal and wrongful conduct alleged herein.

23      24.    Plaintiff DORCILLE HADLEY is a natural person currently residing in Texas,

24  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

25  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

26  distributed, and sold by Defendants. DORCILLE HADLEY has suffered damages as a result of

27  Defendants' illegal and wrongful conduct alleged herein.

28

6

COMPLAINT AND DEMAND FOR JURY TRIAL

25.     Plaintiff  GLENDA HAMNER is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GLENDA HAMNER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

26.     Plaintiff  BEVERLY HARCOURT is a natural person currently residing in Iowa, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BEVERLY HARCOURT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

27.     Plaintiff  BETTY HAWKINS is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BETTY HAWKINS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

28.     Plaintiff  NANCY HEARNE is a natural person currently residing in Louisiana, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. NANCY HEARNE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

29.     Plaintiff ADELFA HEVENER is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ADELFA HEVENER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

30.     Plaintiff  MOVELL HOLLOWAY is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

7

COMPLAINT AND DEMAND FOR JURY TRIAL

1 | packaged, distributed, and sold by Defendants. MOVELL HOLLOWAY has suffered damages
2 | as a result of Defendants' illegal and wrongful conduct alleged herein.

3 |     31.     Plaintiff BENDETTA HOSNEY is a natural person currently residing in Texas,
4 | and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6 | distributed, and sold by Defendants. BENDETTA HOSNEY has suffered damages as a result of
7 | Defendants' illegal and wrongful conduct alleged herein.

8 |     32.     Plaintiff ANNIE L. JACKSON is a natural person currently residing in
9 | Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
10 | administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
11 | packaged, distributed, and sold by Defendants. ANNIE L. JACKSON has suffered damages as a
12 | result of Defendants' illegal and wrongful conduct alleged herein.

13 |     33.     Plaintiff PEGGY JACKSON is a natural person currently residing in Mississippi,
14 | and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
15 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
16 | distributed, and sold by Defendants. PEGGY JACKSON has suffered damages as a result of
17 | Defendants' illegal and wrongful conduct alleged herein.

18 |     34.     Plaintiff WANDA JACKSON is a natural person currently residing in Arkansas,
19 | and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
20 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
21 | distributed, and sold by Defendants. WANDA JACKSON has suffered damages as a result of
22 | Defendants' illegal and wrongful conduct alleged herein.

23 |     35.     Plaintiff ANITA JACOBS is a natural person currently residing in Maryland, and
24 | received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
25 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
26 | distributed, and sold by Defendants. ANITA JACOBS has suffered damages as a result of
27 | Defendants' illegal and wrongful conduct alleged herein.

28 |

8

COMPLAINT AND DEMAND FOR JURY TRIAL

36.     Plaintiff ARLENE JEFFERSON THROWER is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ARLENE JEFFERSON THROWER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

37.     Plaintiff CASSANDRA JOHNSON is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CASSANDRA JOHNSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38.     Plaintiff TANYA JOHNSON is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TANYA JOHNSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

39.     Plaintiff DEBORAH JOLLA is a natural person currently residing in Arizona, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DEBORAH JOLLA has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

40.     Plaintiff LILLIE JONES is a natural person currently residing in Indiana, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LILLIE JONES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41.     Plaintiff CLEDELL KEMP is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

9

COMPLAINT AND DEMAND FOR JURY TRIAL

1    distributed, and sold by Defendants. CLEDELL KEMP has suffered damages as a result of

2    Defendants' illegal and wrongful conduct alleged herein.

3        42.    Plaintiff MARIE LACKEY is a natural person currently residing in California,

4    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6    distributed, and sold by Defendants. MARIE LACKEY has suffered damages as a result of

7    Defendants' illegal and wrongful conduct alleged herein.

8        43.    Plaintiff ANGELA ANITA LAMB is a natural person currently residing in

9    Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11   packaged, distributed, and sold by Defendants. ANGELA ANITA LAMB has suffered damages

12   as a result of Defendants' illegal and wrongful conduct alleged herein.

13       44.    Plaintiff GWEN LANCE is a natural person currently residing in North Carolina,

14   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16   distributed, and sold by Defendants. GWEN LANCE has suffered damages as a result of

17   Defendants' illegal and wrongful conduct alleged herein.

18       45.    Plaintiff RACINE LESTER is a natural person currently residing in Ohio, and

19   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21   distributed, and sold by Defendants. RACINE LESTER has suffered damages as a result of

22   Defendants' illegal and wrongful conduct alleged herein.

23       46.    Plaintiff SHAUNTEL MAXWELL is a natural person currently residing in

24   California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26   packaged, distributed, and sold by Defendants. SHAUNTEL MAXWELL has suffered damages

27   as a result of Defendants' illegal and wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 13 - Doc ID = 1720859215 - Doc Type = OTHER



47.     Plaintiff FELICIA MCCLINTON is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. FELICIA MCCLINTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

48.     Plaintiff BRITTANY J. MEECE is a natural person currently residing in Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRITTANY J. MEECE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

49.     Plaintiff KIMBERLY MENDOZA is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KIMBERLY MENDOZA has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

1.     Plaintiff DEBORAH MEYERS is a natural person currently residing in Colorado, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DEBORAH MEYERS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

2.     The aforementioend Plaintiffs request to be coordinated for discovery purposes only to the Judicial Council Consolidated Proceeding 4908.

3.     Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

4.     Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is one of the largest pharmaceutical companies in the United States.

11

COMPLAINT AND DEMAND FOR JURY TRIAL

1      5.      SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S.

2  INC, and SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S.,

3  shall be referred to herein individually by name or jointly as "Sanofi Defendants ."

4      6.      Sanofi U.S. Services Inc. develops products in therapeutic areas including

5  cardiovascular disease, central nervous systems, internal medicine, metabolic disorder,

6  oncology, ophthalmology, and thrombosis.

7      7.      The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006,

8  was known as Sanofi-Aventis U.S. Inc.

9      8.      Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes

10  pharmaceutical products in the United States.

11      9.      Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater,

12  NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

13      10.    Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a

14  manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

15      11.    Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its

16  substantial number of field sales professionals.

17      12.    One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug,

18  TAXOTERE®.

19      13.    Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of

20  the State of Delaware, with its principal place of business located at 55 Corporate Dr.,

21  Bridgewater, NJ 08807.

22      14.    Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and

23  discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in

24  the United States.

25      15.    Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug

26  Application ("NDA") and supplemental NDAs for TAXOTERE®.

27

28

12

COMPLAINT AND DEMAND FOR JURY TRIAL



16.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

17.     Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws of the State of Delaware.

18.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC engaged in transactions and conducted business within the State of Delaware and has derived substantial revenue from goods and products disseminated and used in the State of Delaware.  At all times relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE® to the public, including the Plaintiff.

19.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

20.     At all times material to this lawsuit, the Sanofi Defendants were authorized to do business within the State of California; did in fact transact and conduct business in the State of California; derived substantial revenue from goods and products used in the State of California; and supplied TAXOTERE® within the State of California.

21.     At all relevant times, and as more fully set forth below, the Sanofi Defendants acted in conjunction with other affiliated, related, jointly owned and controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public, including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between them had ceased and these Defendants became

13

COMPLAINT AND DEMAND FOR JURY TRIAL

1  the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as

2  alleged herein.

3      22.    The Sanofi Defendants transact substantial business in California. The Sanofi

4  Defendants have sponsored or conducted clinical trials of their products in California, including

5  trials of TAXOTERE®. For example, in 2005 Aventis sponsored a clinical trial at Stanford

6  University of the efficacy of TAXOTERE® for lung cancer treatment; from 2006 to 2012 Sanofi

7  sponsored a clinical trial at Stanford on the efficacy of TAXOTERE® for breast cancer

8  treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford

9  Unoversity of TAXOTERE® in patients with breast cancer; Sanofi also sponsored a large-scale

10  epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern

11  California, which terminated in 2012.  In addition, Sanofi participates in ongoing research and

12  development collaborations with the University of California, San Francisco.

13      23.    In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales

14  represented the majority, at €29.8 billion. Although generic docetaxel is now available,

15  TAXOTERE® continues to be extremely profitable for Sanofi; in 2015 sales of TAXOTERE®

16  alone were €222 million.

17      24.    Sanofi spends large sums on California politics, mainly via four entities that share

18  the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-

19  Aventis; and Sanofi-Aventis Group.

20      25.    For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in

21  lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying

22  in the state.

23      26.    Sanofi US contributes to political campaigns in California. Specifically, in 2016

24  Sanofi US contributed $4.15 million to the Californians against the Misleading RX Measure, and

25  $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015

26  Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently

27  contributed $7,300 total to five assembly-member candidates, and $2,500 to the California

28  Republican Party.

<center>14</center>

27.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

28.     Upon investigation and belief, Plaintiffs are informed and believe that McKesson was involved in the manufacture, distribution, marketing sale, labeling and design of TAXOTERE® as detailed below. Specifically, McKesson is the 16th largest industrial corporation in America, with over $800 billion in revenue every year. McKesson is the sole supplier of numerous pharmaceuticals to both the largest pharmacies and drug suppliers in the nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest independent and community pharmacies.

29.     McKesson Corporation is a distributor of pharmaceutical and health care products that provides health information technology, medical supplies and care management tools.  Upon information and belief, McKesson Corporation manufactured and supplied TAXOTERE®, among other products to both hospitals and pharmacies.

30.     Upon investigation and belief, McKesson does business throughout the United States and in the State of California, and regularly and continuously did business within this judicial district including manufacturing, marketing, advertising, warning and precautions attendant to its use, selling, and distributing of TAXOTERE®. For example, McKesson Specialty Health, a division of McKesson, lists TAXOTERE® in its catalog of available products.

31.     Upon investigation and belief, McKesson manufactured marketed, sold and distributed TAXOTERE® administered to Plaintiffs.

32.     Upon information and belief, McKesson was the actor engaged in the acts herein alleged, acting through its agents and employees, at all times, the actions and omissions asserted in this pleading were committed by agents or employees acting within the purpose and scope of said agency and employment.

33.     At all relevant times, McKesson owns US Oncology, which supported a significant amount of TAXOTERE® research and promotion.

15

COMPLAINT AND DEMAND FOR JURY TRIAL



1     34.    Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is

2 incorporated under the laws of the State of Delaware, with its principal place of business located

3 at 275 N. Field Drive, Lake Forest, Illinois 60045.

4     35.    Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of

5 Colorado, with its principal place of business located at 100 College Road West, Princeton, New

6 Jersey 08540.

7     36.    Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the

8 laws of the State of North Carolina with its principal place of business located at 1009 Slater

9 Road, Suite 210B, Durham, North Carolina 27703.

10     37.    Plaintiffs are presently without knowledge of the true names and capacities of the

11 defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such

12 fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and

13 capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of

14 the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-

15 conspirator, agent, employee or affiliate of one or more of the named Defendants, and is

16 responsible for the unlawful conduct herein alleged, and that said Defendants proximately

17 caused the harm alleged herein.

18     38.    At all times relevant hereto, Defendants worked in conjunction with each other

19 and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during

20 the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing,

21 processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging,

22 advertising and/or selling the prescription drug known as TAXOTERE®.

23     39.    At all times alleged herein, Defendants include and included any and all parents,

24 subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of

25 any kind, their predecessors, successors and assigns and their officers, directors, employees,

26 agents, representatives and any and all other persons acting on their behalf.

27     40.    At all times herein mentioned, each of the Defendants was the agent, servant,

28 partner, predecessors in interest, and joint venture of each of the remaining Defendants herein

16

COMPLAINT AND DEMAND FOR JURY TRIAL

 

1    and was at all times operating and acting with the purpose and scope of said agency, service,

2    employment, partnership, and joint venture.

3        41.     At all times relevant, Defendants were engaged in the business of developing,

4    designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into

5    interstate commerce throughout the United States, which necessarily includes California, either

6    directly or indirectly through third parties, subsidiaries or related entities, the drug

7    TAXOTERE®.

8    **DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING,**

9    **MARKETING, AND SALE OF TAXOTERE®**

10       42.     TAXOTERE® is a drug used in the treatment of various forms of cancer,

11    including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs

12    commonly referred to as taxanes.

13       43.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews)

14    featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents

15    include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic

16    forms as well.

17       44.     TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers

18    Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food

19    and Drug Administration (FDA) in December 1992.

20       45.     The drug and chemical compound that would become known as TAXOTERE®

21    was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

22    and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased

23    potency taxane.

24       46.     The initial patent disclosing the formulation and computation of TAXOTERE®

25    was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in

26    March 1989.

27

28

<div align="center">

17

COMPLAINT AND DEMAND FOR JURY TRIAL

</div>

47.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

48.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

49.     Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

50.     TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

51.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®, which was the primary competitor product to TAXOTERE®.

52.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in California and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent

18

COMPLAINT AND DEMAND FOR JURY TRIAL

1　promotion of TAXOTERE® at conferences including the annual meetings for the American

2　Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology

3　in 2010.

4　　　53.　Contrary to Defendants' claims of superior efficacy, post market surveillance has

5　shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits

6　over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the

7　existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

8　　　54.　A study of available clinical studies concerning the relative efficacy of taxanes in

9　the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*,

10　concluded that no significant differences were found in the efficacy and outcomes obtained with

11　TAXOTERE® or TAXOL®.

12　　　55.　A study published in 2008 in the New England Journal of Medicine, titled

13　*Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was

14　more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy

15　with doxorubicin and cyclophosphamide.

16　　　56.　Despite the publication of these studies, Defendants continued to make false and

17　misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing

18　product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials

19　for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology,

20　comparing the efficacy of TAXOTERE® versus TAXOL®. Specifically, Sanofi-Aventis

21　utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the

22　Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi

23　and US Oncology. The study concluded that "TAXOTERE® demonstrated superior efficacy

24　compared with TAXOL®, providing significant clinical benefit in terms of survival and time to

25　disease progression, with a numerically higher response rate and manageable toxicities."

26　　　57.　Defendants' statements in the "reprint carrier" marketing the conclusions of the

27　2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that

28　TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

19

COMPLAINT AND DEMAND FOR JURY TRIAL

58.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (TAXOTERE® ) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false and misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). Cf. 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

59.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc., Civil Action No. 02-2964 (E.D. Pa. 2015).

60.     Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

20

COMPLAINT AND DEMAND FOR JURY TRIAL

1  assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a

2  direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased

3  revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex*

4  *rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

5       61.    As a direct result of their wrongful conduct and illegal kickback schemes,

6  Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased

7  toxicity as compared to other available less toxic products such as TAXOL®.

8       62.    As a direct result of their aforementioned conduct, Defendants caused thousands

9  of individuals to be exposed to increased frequency and more severe side effects, including but

10  not limited to disfiguring permanent alopecia (hair loss).

11      **DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING**

12  **THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE®  AND PERMANENT**

**DISFIGURING HAIR LOSS**

13

14       63.    Although temporary alopecia, or hair loss, is a common side effect related to

15  chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and

16  marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as

17  with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

18       64.    Defendants knew or should have known that the rate of permanent alopecia

19  related to TAXOTERE® was far greater than with other products available to treat the same

20  condition as Defendants' product.

21       65.    Permanent baldness (permanent alopecia) is a disfiguring condition, especially for

22  women. Women who experienced disfiguring permanent alopecia as a result of the use of

23  TAXOTERE® suffer great mental anguish as well as economic damages, including but not

24  limited to loss of work or inability to work due to significant psychological damage.

25       66.    Although women might accept the possibility of permanent baldness as a result of

26  the use of TAXOTERE® if no other product were available to treat their cancer, this was not the

27  case. Before Defendants' wrongful conduct resulted in tens of thousands of women being

28  exposed to the adverse side effects of TAXOTERE®, there were already similar products on the

21

COMPLAINT AND DEMAND FOR JURY TRIAL

1   market that were at least as effective as TAXOTERE® and did not subject female users to the

2   same risk of disfiguring permanent alopecia as does TAXOTERE®.

3        67.    Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored

4   and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis

5   Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took

6   TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some

7   cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly,

8   intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from

9   physicians, healthcare providers, patients, and Plaintiffs in the United States.

10        68.    In 2006, Defendants knew or should have known that a Denver-based oncologist

11   in the United States had observed that an increased percentage (6.3%) of his patients who had

12   taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients

13   had stopped taking TAXOTERE®.

14        69.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805

15   study, as well as reports from patients who had taken TAXOTERE® and suffered from

16   permanent disfiguring hair loss, Defendants failed to provide accurate information and proper

17   warnings to physicians, healthcare providers, and patients in the United States, including

18   Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering

19   from permanent disfiguring hair loss.

20        70.    Defendants chose to withhold this information in the United States despite

21   advising physicians, patients, and regulatory agencies in other countries, including the European

22   Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair

23   loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

24   and Plaintiffs in the United States only with the generic, vague, and insufficient warning that

25   "hair generally grows back" after taking TAXOTERE®.

26        71.    Users of TAXOTERE® were not presented with the opportunity to make an

27   informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

28   Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as

<div align="center">22</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

1  compared to other alternatives while simultaneously failing to warn of the risk of disfiguring

2  permanent alopecia.

3      72.    In other countries, Defendants published information to individual patients and

4  regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until

5  December 2015, the words permanent alopecia or permanent hair loss did not appear in any

6  information published by Defendants in the United States.

7      73.    In December 2015, the FDA changed the safety labeling for TAXOTERE®

8  (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence

9  appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is

10  the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction;

11  "permanent alopecia" is not.

12      74.    As a direct result of Defendants' wrongful and deceptive acts, tens of thousands

13  of women were exposed to the risk of disfiguring permanent alopecia without any warning and

14  without any additional benefit.

15      75.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring

16  permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as

17  their health care providers, were deprived of the opportunity to make an informed decision as to

18  whether the benefits of using TAXOTERE® over other comparable products was justified.

19      76.    Defendants preyed on one of the most vulnerable groups of individuals at the

20  most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

21  the expense of unwary cancer victims simply hoping to survive their condition and return to a

22  normal life.

23      77.    Plaintiffs, as well as numerous other women, were the innocent victims of

24  Defendants' greed, recklessness, and willful and wanton conduct.

25           **PLAINTIFFS' DIAGNOSIS, TREATMENT, AND**

26       **RESULTING DISFIGURING PERMANENT ALOPECIA**

27      78.    Plaintiff DOLLETHEA FOX was diagnosed with breast cancer. Following her

28  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DOLLETHEA

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 26 - Doc ID = 1720859215 - Doc Type = OTHER

1  FOX nor her treating healthcare providers were aware of or informed by Defendants that

2  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

4  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8  suit against Defendants was tolled by such delayed discover.

9        79.    Plaintiff DOLLETHEA FOX underwent her chemotherapy treatment. On

10  information and belief, McKesson Corporation distributed the TAXOTERE® that

11  DOLLETHEA FOX received.

12       80.    Plaintiff PHYLLIS DUPREE was diagnosed with breast cancer. Following her

13  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PHYLLIS

14  DUPREE nor her treating healthcare providers were aware of or informed by Defendants that

15  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

17  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21  suit against Defendants was tolled by such delayed discover.

22       81.    Plaintiff PHYLLIS DUPREE underwent her chemotherapy treatment. On

23  information and belief, McKesson Corporation distributed the TAXOTERE® that PHYLLIS

24  DUPREE received.

25       82.    Plaintiff JENNIFER W. EDWARDS was diagnosed with breast cancer.

26  Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

27  JENNIFER W. EDWARDS nor her treating healthcare providers were aware of or informed by

28  Defendants that disfiguring permanent alopecia can occur following treatment with

COMPLAINT AND DEMAND FOR JURY TRIAL

1    TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

2    Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

3    loss as a result of receiving chemotherapy with TAXOTERE®.Due to Defendants' wrongful

4    conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

5    to her injuries, including, but not limited to, her development of alopecia. Accordingly,

6    Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

7         83.    Plaintiff JENNIFER W. EDWARDS underwent her chemotherapy treatment. On

8    information and belief, McKesson Corporation distributed the TAXOTERE® that JENNIFER

9    W. EDWARDS received.

10        84.    Plaintiff GEORGETTE ENWRIGHT was diagnosed with breast cancer.

11   Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

12   GEORGETTE ENWRIGHT nor her treating healthcare providers were aware of or informed by

13   Defendants that disfiguring permanent alopecia can occur following treatment with

14   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

15   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

16   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

17   conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

18   to her injuries, including, but not limited to, her development of alopecia. Accordingly,

19   Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

20        85.    Plaintiff GEORGETTE ENWRIGHT underwent her chemotherapy treatment. On

21   information and belief, McKesson Corporation distributed the TAXOTERE® that

22   GEORGETTE ENWRIGHT received.

23        86.    Plaintiff CAROLYN K. ESTES was diagnosed with breast cancer. Following her

24   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CAROLYN K.

25   ESTES nor her treating healthcare providers were aware of or informed by Defendants that

26   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

27   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

28   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 28 - Doc ID = 1720859215 - Doc Type = OTHER

1   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4   suit against Defendants was tolled by such delayed discover.

5        87.    Plaintiff CAROLYN K. ESTES underwent her chemotherapy treatment. On

6   information and belief, McKesson Corporation distributed the TAXOTERE® that CAROLYN

7   K. ESTES received.

8        88.    Plaintiff ERMA FARRINGTON was diagnosed with breast cancer. Following

9   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ERMA

10   FARRINGTON nor her treating healthcare providers were aware of or informed by Defendants

11   that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

13   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17   suit against Defendants was tolled by such delayed discover.

18        89.    Plaintiff ERMA FARRINGTON underwent her chemotherapy treatment. On

19   information and belief, McKesson Corporation distributed the TAXOTERE® that ERMA

20   FARRINGTON received.

21        90.    Plaintiff MARY FAULKNER was diagnosed with breast cancer. Following her

22   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY

23   FAULKNER nor her treating healthcare providers were aware of or informed by Defendants that

24   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

26   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 29 - Doc ID = 1720859215 - Doc Type = OTHER

1 | including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2 | suit against Defendants was tolled by such delayed discover.

3 |     91.    Plaintiff MARY FAULKNER underwent her chemotherapy treatment. On

4 | information and belief, McKesson Corporation distributed the TAXOTERE® that MARY

5 | FAULKNER received.

6 |     92.    Plaintiff MARTHA A. FOSTER was diagnosed with breast cancer. Following her

7 | diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARTHA A.

8 | FOSTER nor her treating healthcare providers were aware of or informed by Defendants that

9 | disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10 | Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

11 | completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12 | of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13 | herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14 | including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15 | suit against Defendants was tolled by such delayed discover.

16 |     93.    Plaintiff MARTHA A. FOSTER underwent her chemotherapy treatment. On

17 | information and belief, McKesson Corporation distributed the TAXOTERE® that MARTHA A.

18 | FOSTER received.

19 |     94.    Plaintiff AUDREY FRIDIA was diagnosed with breast cancer. Following her

20 | diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff AUDREY

21 | FRIDIA nor her treating healthcare providers were aware of or informed by Defendants that

22 | disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23 | Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

24 | completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25 | of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26 | herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27 | including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28 | suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 30 - Doc ID = 1720859215 - Doc Type = OTHER

95.     Plaintiff AUDREY FRIDIA underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that AUDREY FRIDIA received.

96.     Plaintiff LINDA FULLMORE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA FULLMORE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

97.     Plaintiff LINDA FULLMORE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA FULLMORE received.

98.     Plaintiff MIKKI GARZA was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MIKKI GARZA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

99.     Plaintiff MIKKI GARZA underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MIKKI GARZA received.

28

COMPLAINT AND DEMAND FOR JURY TRIAL.

1       100.    Plaintiff JEANNIE GERBER was diagnosed with breast cancer. Following her

2    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JEANNIE

3    GERBER nor her treating healthcare providers were aware of or informed by Defendants that

4    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

5    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

6    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

7    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

8    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

9    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

10    suit against Defendants was tolled by such delayed discover.

11       101.    Plaintiff JEANNIE GERBER underwent her chemotherapy treatment. On

12    information and belief, McKesson Corporation distributed the TAXOTERE® that JEANNIE

13    GERBER received.

14       102.    Plaintiff PAMELA GERVIN was diagnosed with breast cancer. Following her

15    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PAMELA

16    GERVIN nor her treating healthcare providers were aware of or informed by Defendants that

17    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

19    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23    suit against Defendants was tolled by such delayed discover.

24       103.    Plaintiff PAMELA GERVIN underwent her chemotherapy treatment. On

25    information and belief, McKesson Corporation distributed the TAXOTERE® that PAMELA

26    GERVIN received.

27       104.    Plaintiff VERTHAVIA GIBBS was diagnosed with breast cancer. Following her

28    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VERTHAVIA

<div align="center">29

COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   GIBBS nor her treating healthcare providers were aware of or informed by Defendants that

2   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

4   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8   suit against Defendants was tolled by such delayed discover.

9          105.   Plaintiff VERTHAVIA GIBBS underwent her chemotherapy treatment. On

10  information and belief, McKesson Corporation distributed the TAXOTERE® that

11  VERTHAVIA GIBBS received.

12         106.   Plaintiff RAMONA GIBSON was diagnosed with breast cancer. Following her

13  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RAMONA

14  GIBSON nor her treating healthcare providers were aware of or informed by Defendants that

15  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

17  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21  suit against Defendants was tolled by such delayed discover.

22         107.   Plaintiff RAMONA GIBSON underwent her chemotherapy treatment. On

23  information and belief, McKesson Corporation distributed the TAXOTERE® that RAMONA

24  GIBSON received.

25         108.   Plaintiff PHYLLIS M. GILL was diagnosed with breast cancer. Following her

26  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PHYLLIS M.

27  GILL nor her treating healthcare providers were aware of or informed by Defendants that

28  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

<center>30</center>
<center>COMPLAINT AND DEMAND FOR JURY TRIAL</center>

1   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

2   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

3   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

4   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

5   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

6   suit against Defendants was tolled by such delayed discover.

7        109.    Plaintiff PHYLLIS M. GILL underwent her chemotherapy treatment. On

8   information and belief, McKesson Corporation distributed the TAXOTERE® that PHYLLIS M.

9   GILL received.

10        110.    Plaintiff SHANNA GIVENS was diagnosed with breast cancer. Following her

11   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHANNA

12   GIVENS nor her treating healthcare providers were aware of or informed by Defendants that

13   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

14   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

15   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

16   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

17   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

18   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

19   suit against Defendants was tolled by such delayed discover.

20        111.    Plaintiff SHANNA GIVENS underwent her chemotherapy treatment. On

21   information and belief, McKesson Corporation distributed the TAXOTERE® that SHANNA

22   GIVENS received.

23        112.    Plaintiff SALLIE R. GORE was diagnosed with breast cancer. Following her

24   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SALLIE R.

25   GORE nor her treating healthcare providers were aware of or informed by Defendants that

26   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

27   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

28   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

1  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4  suit against Defendants was tolled by such delayed discover.

5      113.   Plaintiff SALLIE R. GORE underwent her chemotherapy treatment. On

6  information and belief, McKesson Corporation distributed the TAXOTERE® that SALLIE R.

7  GORE received.

8      114.   Plaintiff SHELBY GRANT was diagnosed with breast cancer. Following her

9  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHELBY

10  GRANT nor her treating healthcare providers were aware of or informed by Defendants that

11  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18      115.   Plaintiff SHELBY GRANT underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that SHELBY

20  GRANT received.

21      116.   Plaintiff AMELIA GREEN was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff AMELIA

23  GREEN nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

<div align="center">32</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2   suit against Defendants was tolled by such delayed discover.

3       117.   Plaintiff AMELIA GREEN underwent her chemotherapy treatment. On

4   information and belief, McKesson Corporation distributed the TAXOTERE® that AMELIA

5   GREEN received.

6       118.   Plaintiff ROBYN GREER was diagnosed with breast cancer. Following her

7   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROBYN

8   GREER nor her treating healthcare providers were aware of or informed by Defendants that

9   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15  suit against Defendants was tolled by such delayed discover.

16      119.   Plaintiff ROBYN GREER underwent her chemotherapy treatment. On

17  information and belief, McKesson Corporation distributed the TAXOTERE® that ROBYN

18  GREER received.

19      120.   Plaintiff CHARLOTTE GUNN was diagnosed with breast cancer. Following her

20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CHARLOTTE

21  GUNN nor her treating healthcare providers were aware of or informed by Defendants that

22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28  suit against Defendants was tolled by such delayed discover.

<div align="center">33</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1        121.   Plaintiff CHARLOTTE GUNN underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that

3  CHARLOTTE GUNN received.

4        122.   Plaintiff TANYA GURNEY was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff TANYA

6  GURNEY nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14        123.   Plaintiff TANYA GURNEY underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that TANYA

16  GURNEY received.

17        124.   Plaintiff DORCILLE HADLEY was diagnosed with breast cancer. Following her

18  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DORCILLE

19  HADLEY nor her treating healthcare providers were aware of or informed by Defendants that

20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

<div align="center">34</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

125.   Plaintiff DORCILLE HADLEY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DORCILLE HADLEY received.

126.   Plaintiff GLENDA HAMNER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GLENDA HAMNER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

127.   Plaintiff GLENDA HAMNER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that GLENDA HAMNER received.

128.   Plaintiff BEVERLY HARCOURT was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BEVERLY HARCOURT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 38 - Doc ID = 1720859215 - Doc Type = OTHER

1    129.    Plaintiff BEVERLY HARCOURT underwent her chemotherapy treatment. On
2  information and belief, McKesson Corporation distributed the TAXOTERE® that BEVERLY
3  HARCOURT received.

4    130.    Plaintiff BETTY HAWKINS was diagnosed with breast cancer. Following her
5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BETTY
6  HAWKINS nor her treating healthcare providers were aware of or informed by Defendants that
7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
13  suit against Defendants was tolled by such delayed discover.

14    131.    Plaintiff BETTY HAWKINS underwent her chemotherapy treatment. On
15  information and belief, McKesson Corporation distributed the TAXOTERE® that BETTY
16  HAWKINS received.

17    132.    Plaintiff NANCY HEARNE was diagnosed with breast cancer. Following her
18  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff NANCY
19  HEARNE nor her treating healthcare providers were aware of or informed by Defendants that
20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.
21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the
22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result
23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged
24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,
25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file
26  suit against Defendants was tolled by such delayed discover.
27
28

36

COMPLAINT AND DEMAND FOR JURY TRIAL

1    133.    Plaintiff NANCY HEARNE underwent her chemotherapy treatment. On

2  information and belief, McKesson Corporation distributed the TAXOTERE® that NANCY

3  HEARNE received.

4    134.    Plaintiff ADELFA HEVENER was diagnosed with breast cancer. Following her

5  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ADELFA

6  HEVENER nor her treating healthcare providers were aware of or informed by Defendants that

7  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14    135.    Plaintiff ADELFA HEVENER underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that ADELFA

16  HEVENER received.

17    136.    Plaintiff MOVELL HOLLOWAY was diagnosed with breast cancer. Following

18  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MOVELL

19  HOLLOWAY nor her treating healthcare providers were aware of or informed by Defendants

20  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 40 - Doc ID = 1720859215 - Doc Type = OTHER

137. Plaintiff MOVELL HOLLOWAY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MOVELL HOLLOWAY received.

138. Plaintiff BENDETTA HOSNEY was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BENDETTA HOSNEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

139. Plaintiff BENDETTA HOSNEY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BENDETTA HOSNEY received.

140. Plaintiff ANNIE L. JACKSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANNIE L. JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

38

COMPLAINT AND DEMAND FOR JURY TRIAL

1    141.    Plaintiff ANNIE L. JACKSON underwent her chemotherapy treatment. On

2    information and belief, McKesson Corporation distributed the TAXOTERE® that ANNIE L.

3    JACKSON received.

4    142.    Plaintiff PEGGY JACKSON was diagnosed with breast cancer. Following her

5    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PEGGY

6    JACKSON nor her treating healthcare providers were aware of or informed by Defendants that

7    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10   of receiving chemotherapy with TAXOTERE®.

11   143.    Plaintiff PEGGY JACKSON underwent her chemotherapy treatment. On

12   information and belief, McKesson Corporation distributed the TAXOTERE® that PEGGY

13   JACKSON received.

14   144.    Plaintiff WANDA JACKSON was diagnosed with breast cancer. Following her

15   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff WANDA

16   JACKSON nor her treating healthcare providers were aware of or informed by Defendants that

17   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

19   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23   suit against Defendants was tolled by such delayed discover.

24   145.    Plaintiff WANDA JACKSON underwent her chemotherapy treatment. On

25   information and belief, McKesson Corporation distributed the TAXOTERE® that WANDA

26   JACKSON received.

27   146.    Plaintiff ANITA JACOBS was diagnosed with breast cancer. Following her

28   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANITA

39

COMPLAINT AND DEMAND FOR JURY TRIAL

1    JACOBS nor her treating healthcare providers were aware of or informed by Defendants that

2    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

4    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8    suit against Defendants was tolled by such delayed discover.

9        147.    Plaintiff ANITA JACOBS underwent her chemotherapy treatment. On

10   information and belief, McKesson Corporation distributed the TAXOTERE® that ANITA

11   JACOBS received.

12       148.    Plaintiff ARLENE JEFFERSON THROWER was diagnosed with breast cancer.

13   Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

14   ARLENE JEFFERSON THROWER nor her treating healthcare providers were aware of or

15   informed by Defendants that disfiguring permanent alopecia can occur following treatment with

16   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

17   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

18   loss as a result of receiving chemotherapy with TAXOTERE®.

19       149.    Plaintiff ARLENE JEFFERSON THROWER underwent her chemotherapy

20   treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that

21   ARLENE JEFFERSON THROWER received.

22       150.    Plaintiff CASSANDRA JOHNSON was diagnosed with breast cancer. Following

23   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

24   CASSANDRA JOHNSON nor her treating healthcare providers were aware of or informed by

25   Defendants that disfiguring permanent alopecia can occur following treatment with

26   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

27   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

28   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

<center>40</center>

COMPLAINT AND DEMAND FOR JURY TRIAL

1    conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

2    to her injuries, including, but not limited to, her development of alopecia. Accordingly,

3    Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

4          151.    Plaintiff CASSANDRA JOHNSON underwent her chemotherapy treatment. On

5    information and belief, McKesson Corporation distributed the TAXOTERE® that

6    CASSANDRA JOHNSON received.

7          152.    Plaintiff TANYA JOHNSON was diagnosed with breast cancer. Following her

8    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff TANYA

9    JOHNSON nor her treating healthcare providers were aware of or informed by Defendants that

10   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

11   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

12   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

13   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

14   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

15   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

16   suit against Defendants was tolled by such delayed discover.

17         153.    Plaintiff TANYA JOHNSON underwent her chemotherapy treatment. On

18   information and belief, McKesson Corporation distributed the TAXOTERE® that TANYA

19   JOHNSON received.

20         154.    Plaintiff DEBORAH JOLLA was diagnosed with breast cancer. Following her

21   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DEBORAH

22   JOLLA nor her treating healthcare providers were aware of or informed by Defendants that

23   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

24   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

25   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

26   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

27   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

28

<center>41</center>

<center>COMPLAINT AND DEMAND FOR JURY TRIAL</center>

1    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2    suit against Defendants was tolled by such delayed discover.

3         155.    Plaintiff DEBORAH JOLLA underwent her chemotherapy treatment. On

4    information and belief, McKesson Corporation distributed the TAXOTERE® that DEBORAH

5    JOLLA received.

6         156.    Plaintiff LILLIE JONES was diagnosed with breast cancer. Following her

7    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LILLIE

8    JONES nor her treating healthcare providers were aware of or informed by Defendants that

9    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15   suit against Defendants was tolled by such delayed discover.

16        157.    Plaintiff LILLIE JONES underwent her chemotherapy treatment. On information

17   and belief, McKesson Corporation distributed the TAXOTERE® that LILLIE JONES received.

18        158.    Plaintiff CLEDELL KEMP was diagnosed with breast cancer. Following her

19   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CLEDELL

20   KEMP nor her treating healthcare providers were aware of or informed by Defendants that

21   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

22   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

23   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

24   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

25   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

26   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

27   suit against Defendants was tolled by such delayed discover.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 45 - Doc ID = 1720859215 - Doc Type = OTHER

159.    Plaintiff CLEDELL KEMP underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CLEDELL KEMP received.

160.    Plaintiff MARIE LACKEY was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARIE LACKEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

161.    Plaintiff MARIE LACKEY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARIE LACKEY received.

162.    Plaintiff ANGELA ANITA LAMB was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANGELA ANITA LAMB nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

43

COMPLAINT AND DEMAND FOR JURY TRIAL

163.   Plaintiff ANGELA ANITA LAMB underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ANGELA ANITA LAMB received.

164.   Plaintiff GWEN LANCE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GWEN LANCE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

165.   Plaintiff GWEN LANCE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that GWEN LANCE received.

166.   Plaintiff RACINE LESTER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff RACINE LESTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

167.   Plaintiff RACINE LESTER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that RACINE LESTER received.

44

COMPLAINT AND DEMAND FOR JURY TRIAL

1    168.    Plaintiff SHAUNTEL MAXWELL was diagnosed with breast cancer. Following

2  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

3  SHAUNTEL MAXWELL nor her treating healthcare providers were aware of or informed by

4  Defendants that disfiguring permanent alopecia can occur following treatment with

5  TAXOTERE®.   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

6  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

7  loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

8  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

9  to her injuries, including, but not limited to, her development of alopecia. Accordingly,

10  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

11    169.    Plaintiff SHAUNTEL MAXWELL underwent her chemotherapy treatment. On

12  information and belief, McKesson Corporation distributed the TAXOTERE® that SHAUNTEL

13  MAXWELL received.

14    170.    Plaintiff FELICIA MCCLINTON was diagnosed with breast cancer. Following

15  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff FELICIA

16  MCCLINTON nor her treating healthcare providers were aware of or informed by Defendants

17  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

19  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23  suit against Defendants was tolled by such delayed discover.

24    171.    Plaintiff FELICIA MCCLINTON underwent her chemotherapy treatment. On

25  information and belief, McKesson Corporation distributed the TAXOTERE® that FELICIA

26  MCCLINTON received.

27    172.    Plaintiff BRITTANY J. MEECE was diagnosed with breast cancer. Following

28  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

45

COMPLAINT AND DEMAND FOR JURY TRIAL

1   BRITTANY J. MEECE nor her treating healthcare providers were aware of or informed by

2   Defendants that disfiguring permanent alopecia can occur following treatment with

3   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

4   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

5   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

6   conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

7   to her injuries, including, but not limited to, her development of alopecia. Accordingly,

8   Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

9        173.   Plaintiff BRITTANY J. MEECE underwent her chemotherapy treatment. On

10   information and belief, McKesson Corporation distributed the TAXOTERE® that BRITTANY

11   J. MEECE received.

12        174.   Plaintiff KIMBERLY MENDOZA was diagnosed with breast cancer. Following

13   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

14   KIMBERLY MENDOZA nor her treating healthcare providers were aware of or informed by

15   Defendants that disfiguring permanent alopecia can occur following treatment with

16   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

17   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

18   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

19   conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

20   to her injuries, including, but not limited to, her development of alopecia. Accordingly,

21   Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

22        175.   Plaintiff KIMBERLY MENDOZA underwent her chemotherapy treatment. On

23   information and belief, McKesson Corporation distributed the TAXOTERE® that KIMBERLY

24   MENDOZA received.

25        176.   Plaintiff DEBORAH MEYERS was diagnosed with breast cancer. Following her

26   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DEBORAH

27   MEYERS nor her treating healthcare providers were aware of or informed by Defendants that

28   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

<div align="center">46</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

2   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

3   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

4   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

5   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

6   suit against Defendants was tolled by such delayed discover.

7       177.    Plaintiff DEBORAH MEYERS underwent her chemotherapy treatment. On

8   information and belief, McKesson Corporation distributed the TAXOTERE® that DEBORAH

9   MEYERS received.

10

11                              **NATURE OF THE CLAIMS**

12      178.    Despite the fact that Defendants disclosed risks associated with TAXOTERE®

13  and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed

14  to either alert Plaintiffs, the public, and the scientific community in the United States or perform

15  further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring

16  permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed

17  to disclose the results of additional studies as Defendants learned new facts regarding the defects

18  and risks of their product.

19      179.    In particular, Defendants:

20          (a)     failed to disclose their investigation and research from 2005, including but

21                  not limited to the results of the GEICAM 9805 study, and failed to further

22                  investigate, research, study, and define fully and adequately the safety

23                  profile of TAXOTERE in response to these studies;

24          (b)     failed to provide adequate warnings about the true safety risks associated

25                  with the use of TAXOTERE®;

26          (c)     failed to provide adequate warning regarding the pharmacokinetic and

27                  pharmacodynamic variability of TAXOTERE® and its effects on the

28                  degree or severity of side effects related to permanent alopecia;

                                    47
                    COMPLAINT AND DEMAND FOR JURY TRIAL

1      (d)    failed to disclose in the "Warnings" Section that permanent alopecia is a

2                frequent side effect associated with the use of TAXOTERE®;

3      (e)    failed to advise prescribing physicians, such as Plaintiffs' physicians, to

4                instruct patients that permanent alopecia was a side effect, much less a

5                frequent side effect, linked to TAXOTERE®;

6      (f)    failed to provide adequate instructions on how to intervene and/or reduce

7                the risk of permanent alopecia related to the use of TAXOTERE®;

8      (g)    failed to provide adequate warnings and information related to the

9                increased risks of permanent alopecia in certain genome groups;

10     (h)    failed to provide adequate warnings regarding the increased risk of

11               permanent alopecia with the use of TAXOTERE® as compared to other

12               products intended to treat the same conditions as TAXOTERE®; and

13     (i)    failed to include a **"BOXED WARNING"** related to permanent or

14               persistent alopecia.

15     180.    During the years since first marketing TAXOTERE® in the U.S., Defendants

16 modified the U.S. labeling and prescribing information for TAXOTERE® on multiple

17 occasions. Defendants failed, however, to include any warning whatsoever related to permanent

18 alopecia despite Defendants' awareness of the frequency and severity of this side effect.

19     181.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew

20 or should have known that consumption of TAXOTERE® was associated with and/or would

21 cause disfiguring side effects including disfiguring permanent alopecia.

22     182.    Despite knowing that TAXOTERE® was likely to result in increased rates of

23 alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed

24 TAXOTERE® in the United States.

25     183.    Defendants failed to adequately conduct complete and proper testing of

26 TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

27     184.    From the date Defendants received FDA approval to market TAXOTERE®,

28 Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to

<div align="center">48</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with

2    disfiguring permanent alopecia.

3        185.    Defendants ignored the association between the use of TAXOTERE® and the

4    risk of disfiguring permanent alopecia.

5        186.    Defendants failed to disclose information that they possessed regarding their

6    failure to adequately test and study TAXOTERE® related to the side effect of disfiguring

7    permanent alopecia. Plaintiffs and their healthcare providers could not have discovered

8    Defendants' false representations and failures to disclose information through the exercise of

9    reasonable diligence.

10       187.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

11   suffer serious and dangerous side effects, severe and personal injuries that are permanent and

12   lasting in nature, and economic and non-economic damages, harms, and losses, including but not

13   limited to: past and future medical expenses; past and future loss of earnings; past and future

14   loss and impairment of earning capacity; permanent disfigurement including permanent

15   alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

16   harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

17   present, and future loss and impairment of the quality and enjoyment of life.

18                    **ESTOPPEL FROM PLEADING STATUTES OF**

19                    **LIMITATIONS OR REPOSE**

20       188.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of

21   the Complaint as if fully set forth at length herein.

22       189.    Plaintiffs are within the applicable statutes of limitations for the claims presented

23   herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of

24   Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

25   permanent alopecia, and could not reasonably have discovered the defects and unreasonably

26   dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to

27   the Defendants' failure to warn, suppression of important information about the risks of the

28   drug, including but not limited to the true risk benefit profile, and the risk of disfiguring

49

COMPLAINT AND DEMAND FOR JURY TRIAL

1  permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®,

2  and other acts and omissions.

3        190.   In addition, Defendants are estopped from relying on any statutes of limitations or

4  repose by virtue of their acts of Concealment, affirmative misrepresentations and omissions,

5  which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health

6  care professionals and the general consuming public that Defendants' TAXOTERE® was

7  defective, unreasonably dangerous and carried with it the serious risk of developing the injuries

8  Plaintiffs have suffered while aggressively and continually marketing and promoting

9  TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to

10  disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

11  Defendants to result from use of TAXOTERE®, for example, and not by way of limitation,

12  internal concern about reports and studies finding an increased risk of disfiguring permanent

13  alopecia; suppression of information about these risks and injuries from physicians and patients,

14  including Plaintiffs; use of sales and marketing documents and information that contained

15  information contrary to the internally held knowledge regarding the aforesaid risks and injuries;

16  and overstatement of the efficacy and safety of TAXOTERE®.

17        191.   Defendants had a duty to disclose that TAXOTERE® was defective,

18  unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

19  serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.

20  Defendants breached that duty.

21        192.   Plaintiffs, Plaintiffs' prescribing health care professionals and the general

22  consuming public, had no knowledge of, and no reasonable way of discovering, the defects

23  found in Defendants' TAXOTERE® or the true risks associated with their use at the time she

24  purchased and used Defendants' TAXOTERE®.

25        193.   Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing

26  health care professionals or the general consuming public that Defendants' TAXOTERE® was

27  defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have

28  suffered and complained of herein.

<div align="center">50</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

194. Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

195. Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

196. After Defendants changed the TAXOTERE® prescription information in the United States to include information about permanent alopecia in December 2015, there ensued publicity and advertising related to permanent alopecia caused by TAXOTERE®. Plaintiffs, as a result of the publicity and advertising, became aware of the failure to warn about permanent alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug. Plaintiffs acted with all reasonable diligence and speed upon discovering this information and timely files the present complaint.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

197. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

198. Defendants had a duty to exercise reasonable care in the marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce,

51

COMPLAINT AND DEMAND FOR JURY TRIAL

1   including a duty to assure that the product would not cause users to suffer unreasonable,

2   dangerous side effects.

3         199.   Defendants failed to exercise reasonable care in the marketing, supplying,

4   promoting, packaging, sale, and/or distribution of TAXOTERE® into interstate commerce in

5   that Defendants knew or should have known that using TAXOTERE® created a high risk of

6   unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting

7   in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of

8   life, economic loss, and loss of economic opportunity.

9         200.   The negligence of Defendants, their agents, servants, and/or employees, included

10   but was not limited to the following acts and/or omissions:

11         (a)     Selling TAXOTERE® without disclosing its dangers and risks;

12         (b)     Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs'

13                 physicians, the public, and the medical and healthcare profession of the

14                 dangers of TAXOTERE®;

15         (c)     Failing to provide adequate instructions regarding safety precautions to be

16                 observed by users, handlers, and persons who would reasonably and

17                 foreseeably come into contact with, and more particularly, use,

18                 TAXOTERE®;

19         (d)     Negligently advertising and recommending the use of TAXOTERE®

20                 without sufficient knowledge as to its dangerous propensities;

21         (e)     Negligently representing that TAXOTERE® was safe for use for its

22                 intended purpose, when, in fact, it was unsafe;

23         (f)     Negligently and falsely representing that TAXOTERE® was superior to

24                 other commercially available products to treat the same forms of cancer

25                 that TAXOTERE® was intended to treat;

26         (g)     Concealing information from Plaintiffs, Plaintiffs' physicians, the public,

27                 and the FDA in knowing that TAXOTERE® was unsafe, dangerous,

28                 and/or non-conforming with FDA regulations; and

<div align="center">52</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

1          (h)     Improperly concealing from and/or misrepresenting information to

2                 Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the

3                 FDA concerning the severity of risks and dangers of TAXOTERE®

4                 compared to other forms of treatment for breast cancer.

5       201.    Defendants underreported, underestimated and downplayed the serious dangers

6 and risk associated with TAXOTERE®.

7       202.    Defendants negligently conveyed that the safety risks and/or dangers of

8 TAXOTERE® were comparable with other forms of treatment for the same conditions for

9 which TAXOTERE® was prescribed to treat.

10      203.    Defendants were negligent in the researching, supplying, promoting, packaging,

11 distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

12         (a)     Failed to accompany their product with proper and/or accurate warnings

13               regarding all possible adverse side effects associated with the use of

14               TAXOTERE®;

15         (b)     Failed to accompany their product with proper warnings regarding all

16               possible adverse side effects concerning the risks and dangers associated

17               with TAXOTERE®;

18         (c)     Failed to accompany their product with accurate warnings regarding the

19               risks of all possible adverse side effects concerning TAXOTERE®;

20         (d)     Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and

21               duration of such adverse effects, as the warnings given did not accurately

22               reflect the symptoms, or severity, of the side effects;

23         (e)     Failed to conduct adequate post-marketing surveillance, to determine the

24               safety, dangers, and risks associated with TAXOTERE®.

25         (f)     Failed to warn Plaintiffs and Plaintiffs' physicians before actively

26               encouraging the sale of TAXOTERE®, either directly or indirectly, orally

27               or in writing, about the need for more comprehensive and regular medical

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 56 - Doc ID = 1720859215 - Doc Type = OTHER

1    monitoring than usual to ensure early discovery of potentially serious side

2    effects; and

3        (g)    Were otherwise careless and/or negligent.

4        204.    Despite the fact that Defendants knew or should have known that TAXOTERE®

5    caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring

6    permanent alopecia, Defendants continued and continue to market, manufacture, distribute,

7    and/or sell TAXOTERE® to consumers, including Plaintiffs.

8        205.    Defendants negligently and improperly failed to perform sufficient post-market

9    tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety

10   information that did not accurately represent the risks and benefits associated with the use of

11   TAXOTERE® as compared to other products already commercially available to treat the same

12   types of cancer TAXOTERE® was meant to treat.

13       206.    Defendants knew or should have known that consumers such as Plaintiffs would

14   use their product and would foreseeably suffer injury as a result of Defendants' failure to

15   exercise reasonable care, as set forth above.

16       207.    Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms,

17   damages, and losses.

18       208.    As a direct and proximate result of the use of TAXOTERE®, Plaintiffs

19   experienced disfiguring permanent alopecia.

20       209.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

21   suffer serious and dangerous side effects, severe and personal injuries that are permanent and

22   lasting in nature, and economic and non-economic damages, harms, and losses, including but not

23   limited to: past and future medical expenses; psychological counseling and therapy expenses;

24   past and future loss of earnings; past and future loss and impairment of earning capacity;

25   permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

26   emotional distress; increased risk of future harm; past, present, and future physical and mental

27   pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

28   and enjoyment of life.

<div align="center">54

COMPLAINT AND DEMAND FOR JURY TRIAL</div>

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

210.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

211.   The TAXOTERE® that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

212.   Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

213.   Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

214.   As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffered disfiguring permanent alopecia and other conditions.

215.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

COMPLAINT AND DEMAND FOR JURY TRIAL

harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### THIRD CLAIM FOR RELIEF
#### (Intentional Misrepresentation)

216.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

217.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

218.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

219.    Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically including, but not limited to, concealing their knowledge of the risk of developing disfiguring permanent alopecia.

220.    Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

221.    Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

56

Doc# 1 Page# 59 - Doc ID = 1720859215 - Doc Type = OTHER

222. Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

223. When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

224. At the time Defendants made the aforesaid representations, and, at the time Plaintiffs used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

225. In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

226. Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

227. Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE®, including, but not limited to, the development of permanent disfiguring alopecia, and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

228. Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

229. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not

<div align="center">57</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   limited to: past and future medical expenses; past and future loss of earnings; past and future

2   loss and impairment of earning capacity; permanent disfigurement including permanent

3   alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

4   harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

5   present, and future loss and impairment of the quality and enjoyment of life.

### FOURTH CLAIM FOR RELIEF

6

7   **(Concealment – Against Sanofi Defendants)**

8       230.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

9   same force and effect as if fully set forth herein.

10      231.    At all times during the course of dealing between Sanofi Defendants and

11  Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and

12  safety of TAXOTERE® for its intended use.

13      232.    Sanofi Defendants knew or were reckless in not knowing that its representations

14  were false.

15      233.    In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi

16  Defendants fraudulently concealed and intentionally omitted the following material information:

17          (a)    that TAXOTERE® was not as safe as other forms of treatment for which

18                 TAXOTERE® was marketed and sold to cancer patients;

19          (b)    that the risks of adverse events with TAXOTERE® were higher than

20                 those with other forms of treatment for which TAXOTERE® was

21                 marketed and sold to cancer patients;

22          (c)    that the risks of adverse events with TAXOTERE® were not adequately

23                 tested and/or known by Defendants;

24          (d)    that Defendants were aware of dangers in TAXOTERE®, in addition to

25                 and above and beyond those associated with other forms of treatment for

26                 cancer patients;

27

28

<div align="center">58</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

(e)     that TAXOTERE® was defective in that it caused dangerous side effects
as well as other severe and permanent health consequences in a much
more and significant rate than other forms of treatment for cancer patients;

234.    Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians,
hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not
limited to the heightened risks of disfiguring permanent alopecia.

235.    Sanofi Defendants had sole access to material facts concerning the defective
nature of TAXOTERE® and its propensity to cause serious and dangerous side effects,
including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to
persons who used TAXOTERE®, including Plaintiffs, in particular.

236.    Sanofi Defendants' concealment and omissions of material facts concerning the
safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to
mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the
continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense
TAXOTERE® and/or use TAXOTERE®.

237.    Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or
healthcare providers had no way to determine the truth behind Defendants' concealment and
omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

238.    Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably
relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or
purposefully did not include facts that were concealed and/or omitted by Defendants.

239.    As a result of the foregoing acts and omissions, Sanofi Defendants caused
Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are
permanent and lasting in nature, and economic and non-economic damages, harms, and losses,
including but not limited to: past and future medical expenses; past and future loss of earnings;
past and future loss and impairment of earning capacity; permanent disfigurement including
permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 62 - Doc ID = 1720859215 - Doc Type = OTHER

1  future harm; past, present, and future physical and mental pain, suffering, and discomfort; and

2  past, present, and future loss and impairment of the quality and enjoyment of life.

3  ### FIFTH CLAIM FOR RELIEF

4  ### (Negligent Misrepresentation – Against All Defendants)

5  240.   Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the

6  same force and effect as if fully set forth herein.

7  241.   Defendants sold the TAXOTERE® that Plaintiff's physician prescribed for

8  Plaintiffs and that Plaintiffs used.

9  242.   Defendants were engaged in the business of selling the TAXOTERE® for resale,

10  use, or consumption.

11  243.   Defendants misrepresented facts as set forth herein concerning the character or

12  quality of the TAXOTERE® that would be material to potential prescribers and purchasers or

13  users of the product.

14  244.   Defendants' misrepresentations were made to potential prescribers and/or

15  purchasers or users as members of the public at large.

16  245.   As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

17

18  ### SIXTH CLAIM FOR RELIEF

19  ### (Extreme and Outrageous Conduct / Intentional Infliction
     ### of Emotional Distress – Against All Defendants)

20

21  246.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

22  same force and effect as if fully set forth herein.

23  247.   Defendants' conduct, as set forth above, was extreme and outrageous.

24  248.   Defendants' actions were done recklessly or with the intent of causing Plaintiff

25  severe emotional distress; and

26  249.   Defendants' conduct caused Plaintiffs severe emotional distress.

27  250.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

28  suffer serious and dangerous side effects, severe and personal injuries that are permanent and

---

60

COMPLAINT AND DEMAND FOR JURY TRIAL

1    lasting in nature, and economic and non-economic damages, harms, and losses, including but not

2    limited to: past and future medical expenses; past and future loss of earnings; past and future

3    loss and impairment of earning capacity; permanent disfigurement including permanent

4    alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

5    harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

6    present, and future loss and impairment of the quality and enjoyment of life.

7

8                              **SEVENTH CLAIM FOR RELIEF**

9                                    **(Loss of Consortium)**

10

11          251.    Spouse plaintiffs complain of defendants, and each of them and for a cause of

12    action for loss of consortium allege as follow:

13          252.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this

14    Complaint as if fully set forth herein and further allege as follows:

15          253.    This cause of action is asserted by the Spouse Plaintiffs identified previously

16    whose spouses suffered personal injuries as a result of using Defendants product, who at all

17    times relevant to this action were, and are now, husband and wife.

18          254.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the

19    necessary duties as a spouse and the work service usually performed in the care, maintenance

20    and management of the family home.

21          255.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by

22    TAXOTERE® until within two years of filing this Complaint.

23          256.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have

24    been and will continue to be deprived of the loss of love, companionship, comfort, care,

25    assistance, protection, affection, society, and moral support of their spouses, as to their damage,

26    in an amount presently unknown but which will be proved at the time of trial.

27          WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as

28    hereinafter set forth.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 64 - Doc ID = 1720859215 - Doc Type = OTHER

1

2                                    **PRAYER FOR RELIEF**

3          WHEREFORE, all California Plaintiffs demand judgment against Defendants SANOFI

4    U.S. SERVICES INC., formerly known as SANOFI U.S. SERVICES INC., formerly known as

5    SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as

6    WINTHROP U.S., SANDOZ, INC.,  McKESSON CORPORATION doing business as

7    McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

8    WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC. All non-

9    California plaintiffs demand judgment against Defendant McKESSON CORPORATION doing

10   business as McKESSON PACKAGING. The extreme and outrageous conduct of the Defendants

11   was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of

12   exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her

13   injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages,

14   costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other

15   injuries and damages as shall be proven at trial, and such other further relief as the Court may

16   deem appropriate, just, and proper.

17                                      **JURY DEMAND**

18          Plaintiff demands a trial by jury on all issues so triable.

19

20   DATED:  December 12, 2017                  Respectfully submitted,

21

22                                             **NAPOLI SHKOLNIK, PLLC**

23

24                                             By:

25                                             Jennifer Liakos
                                               *Attorney for Plaintiffs*
26

27

28

                                               62
                      COMPLAINT AND DEMAND FOR JURY TRIAL

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, S...* ...r number, and address):* | FOR COURT USE ONLY |
|---|---|

Jennifer Liakos, Esq., SBN 207487
Napoli Shkolnik
525 S. Douglas St., Suite 260
El Segundo. CA 90245
TELEPHONE NO.: 310-331-8224    FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff

**FILED**
Superior Court of California
County of Los Angeles

**DEC 12 2017**

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shawnra Bolden

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District

CASE NAME:
Gibson v. Sanofi U.S. Services Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | **BC 686616** |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties     d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is  ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You ma...*

Date: 12/11/2017

Jennifer Liakos
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SHORT TITLE: Gibson v. Sanofi U.S. Services Inc., et al. | CASE NUMBER: BC 686616 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

BY FAX

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☑ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 3, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

**ORIGINAL**

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

Doc# 1 Page# 68 - Doc ID = 1720859215 - Doc Type = OTHER

| SHORT TITLE: | Gibson v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3. 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3. 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Doc# 1 Page# 69 - Doc ID = 1720859215 - Doc Type = OTHER

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Gibson v. Sanofi U.S. Services Inc., et al. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Doc# 1 Page# 70 - Doc ID = 1720859215 - Doc Type = OTHER

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Gibson v. Sanofi U.S. Services Inc., et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☑ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | 244 W. 49th St. |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Los Angeles | CA | 90037 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 12/11/2017

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

Doc# 1 Page# 71 - Doc ID = 1720859215 - Doc Type = OTHER

1  Jennifer Liakos, Esq. (SBN 207487)
   JLiakos@NapoliLaw.com
2  NAPOLI SHKOLNIK PLLC
   525 South Douglas St., Suite 260
3  El Segundo, CA 90245
   Telephone: 310-331-8224
4  Facsimile: 310-736-2877

5      *Attorney for Plaintiffs*

6

7

**FILED**
Superior Court of California
County of Los Angeles

**DEC 12 2017**

Sherri R. Carter, Executive Officer/Clerk
By _____M. Soto_____, Deputy
         Moses Soto

8       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
           **IN AND FOR LOS ANGELES COUNTY**

9

10  SAIMA SHAJAHAN; CHARLENE
    PAVKOVICH; SHEILA MOORE; GAYLA
11  MORGAN; SYLVIA MORRIS; EVELYN
    MOSLEY; LINDA MOSSMAN; MARTHA
12  MUNDELL; ANNE NAMISHIA; LORI
    NAVA; KELLY F. NELUM; PATRICIA A.
13  NICHOLS; SHEILA OWENS; DELILAH
    PAM; DENISE PATTERSON; BERNICE
14  PEACHES; CARLA PHELPS; ROSLYNN
    PINKNEY; JOYCE POTTER; THERESA
15  PRAG; SHEILA RIVERS; LILIAN
    ROBERTS; BRENDA ROBINSON;
16  JANETTE ROBINSON; TAISHA
    ROBINSON; CYNTHIA M. RODGERS;
17  SUSAN RUBY; WINIFRED RUGGERI;
    PAULA RUPP; VALENCIA A.
18  SCHOFIELD; THERESIA SCOTT;
    VALERIE SEABROOKS; GRACIE
19  SELDON; JOAN F. SHIRLEY; BARBARA
    SHORLEY; SYLVIA L. SINGH;
20  CLAUDINE SINGLETARY;
    JACQUELINE SMITH; JACQUELINE
21  SNOWDEN; ALISA STEPTOE; VALERIE
    STEWART; SHARON TATE; DEBORAH
22  TATUM; BARBARA TAYLOR;
    ANTONETTE THOMAS; MARY
23  THOMAS; MAVIS V. THORNTON;
    ALICE TIDWELL; BETTY J TILLMAN;
24  AND BETTY TUCKER,

25

26                        Plaintiffs,

27

28

Case No. **BC 686723**

**COMPLAINT AND DEMAND FOR**

**JURY TRIAL**
                          **BY FAX**
1.  Negligence
2.  Strict Liability – Failure to Warn
3.  Intentional Misrepresentation
4.  Concealment
5.  Negligent Misrepresentation
6.  Intentional Infliction of Emotional
    Distress
7.  Loss of Consortium

**ORIGINAL**

COMPLAINT AND DEMAND FOR JURY TRIAL

CIT/CASE:  BC696723
LEA/DEF#:

RECEIPT #: CCH524880152
DATE PAID: 12/12/17  04:22 PM
PAYMENT:  $435.00          310
RECEIVED:
      CHECK:           $435.00
      CASH:              $0.00
      CHANGE:            $0.00
      CARD:              $0.00

Doc# 1 Page# 2 - Doc ID = 1720726459 - Doc Type = OTHER

v.

SANOFI U.S. SERVICES INC., formerly
known as SANOFI-AVENTIS U.S. INC,
SANOFI-AVENTIS U.S. LLC, separately
and doing business as WINTHROP U.S.,
SANDOZ, INC.,  McKESSON
CORPORATION doing business as
McKESSON PACKAGING, HOSPIRA,
INC., HOSPIRA WORLDWIDE, LLC f/k/a
HOSPIRA WORLDWIDE, INC., SANDOZ,
INC.,  and ACCORD HEALTHCARE, INC.,

       Defendants.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2          All plaintiffs who are residents of California respectfully submit the following Complaint

3    and Jury Demand against all Defendants, including SANOFI U.S. SERVICES INC., formerly

4    known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing

5    business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business

6    as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a

7    HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC.,

8    (herein collectively referred to as the "Defendants") , and allege the following upon personal

9    knowledge, information, belief, and investigation of counsel.

10         All plaintiffs who are residents outside of California respectfully submit the following

11   Complaint and Jury Demand against Defendants McKESSON CORPORATION doing business

12   as McKESSON PACKAGING, only, and allege the following upon personal knowledge,

13   information, belief, and investigation of counsel.

14                              **NATURE OF THE CASE**

15         1.      Plaintiffs are breast cancer survivors who were prescribed and injected with

16   TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

17   distributed by Defendants.  Although lower potency alternatives have been available for years,

18   Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-

19   sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact,

20   TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more

21   severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.

22   Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s

23   risk of permanent hair loss is not.  Defendants concealed this information from physicians,

24   healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer

25   permanent hair loss without any additional benefit or warning.

26         2.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

27   suffered serious and permanent physical and emotional injuries, including permanent hair loss,

28

1

COMPLAINT AND DEMAND FOR JURY TRIAL

1  and seek damages relating to Defendants' distribution, labeling, advertising, marketing,

2  manufacturing, promotion, and sale of TAXOTERE®.

4  **JURISDICTION AND VENUE**

5  3.      This Court has jurisdiction over this action pursuant to Article 6, §10 of the

6  California Constitution and California Code of Civil Procedure § 410.10. The amount in

7  controversy exceeds the jurisdictional limit of $25,000.

8  4.      This Court has personal jurisdiction over Defendants, each of which is licensed to

9  conduct or is systematically and continuously conducting business in the State of California,

10  including, but not limited to, the marketing, advertising, selling, and distributing of drugs,

11  including TAXOTERE®, to the residents in this state.  Defendants have sufficient minimum

12  contacts in California and intentionally avail themselves of the markets within California

13  through the promotion, sale, marketing, and distribution of their products, including

14  TAXOTERE®, thus rendering the exercise of jurisdiction by this Court proper and necessary.

15  5.      Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5.

16  Defendants transact business in Los Angeles County and the events complained of occurred in

17  Los Angeles County.

18  **PARTIES**

19  1.      Plaintiff SAIMA SHAJAHAN is a natural person currently residing in California,

20  and received chemotherapy treatment with TAXOTERE®. She was prescribed and

21  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

22  packaged, distributed, and sold by Defendants. SAIMA SHAJAHAN has suffered damages as a

23  result of Defendants' illegal and wrongful conduct alleged herein.

24  2.      Plaintiff CHARLENE PAVKOVICH is a natural person currently residing in

25  California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

26  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

27  packaged, distributed, and sold by Defendants. CHARLENE PAVKOVICH has suffered

28  damages as a result of Defendants' illegal and wrongful conduct alleged herein.

2

COMPLAINT AND DEMAND FOR JURY TRIAL

3.      Plaintiff SHEILA MOORE is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SHEILA MOORE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

4.      Plaintiff GAYLA MORGAN is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GAYLA MORGAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

5.      Plaintiff SYLVIA MORRIS is a natural person currently residing in Wisconsin, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SYLVIA MORRIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

6.      Plaintiff EVELYN MOSLEY is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. EVELYN MOSLEY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

7.      Plaintiff LINDA MOSSMAN is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LINDA MOSSMAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

8.      Plaintiff MARTHA MUNDELL is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

3

COMPLAINT AND DEMAND FOR JURY TRIAL

1  packaged, distributed, and sold by Defendants. MARTHA MUNDELL has suffered damages as

2  a result of Defendants' illegal and wrongful conduct alleged herein.

3       9.    Plaintiff ANNE NAMISHIA is a natural person currently residing in Tennessee,

4  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6  distributed, and sold by Defendants. ANNE NAMISHIA has suffered damages as a result of

7  Defendants' illegal and wrongful conduct alleged herein.

8       10.    Plaintiff LORI NAVA is a natural person currently residing in Texas, and

9  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

10  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

11  distributed, and sold by Defendants. LORI NAVA has suffered damages as a result of

12  Defendants' illegal and wrongful conduct alleged herein.

13       11.    Plaintiff KELLY F. NELUM is a natural person currently residing in California,

14  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16  distributed, and sold by Defendants. KELLY F. NELUM has suffered damages as a result of

17  Defendants' illegal and wrongful conduct alleged herein.

18       12.    Plaintiff PATRICIA A. NICHOLS is a natural person currently residing in

19  California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

20  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

21  packaged, distributed, and sold by Defendants. PATRICIA A. NICHOLS has suffered damages

22  as a result of Defendants' illegal and wrongful conduct alleged herein.

23       13.    Plaintiff SHEILA OWENS is a natural person currently residing in Texas, and

24  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

25  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

26  distributed, and sold by Defendants. SHEILA OWENS has suffered damages as a result of

27  Defendants' illegal and wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 7 - Doc ID = 1720726459 - Doc Type = OTHER

14.    Plaintiff DELILAH PAM is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DELILAH PAM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

15.    Plaintiff DENISE PATTERSON is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DENISE PATTERSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16.    Plaintiff BERNICE PEACHES is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BERNICE PEACHES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

17.    Plaintiff CARLA PHELPS is a natural person currently residing in Alabama, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CARLA PHELPS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18.    Plaintiff ROSLYNN PINKNEY is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ROSLYNN PINKNEY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

19.    Plaintiff JOYCE POTTER is a natural person currently residing in Nebraska, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

5

COMPLAINT AND DEMAND FOR JURY TRIAL

1   distributed, and sold by Defendants. JOYCE POTTER has suffered damages as a result of

2   Defendants' illegal and wrongful conduct alleged herein.

3       20.    Plaintiff THERESA PRAG is a natural person currently residing in New York,

4   and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6   distributed, and sold by Defendants. THERESA PRAG has suffered damages as a result of

7   Defendants' illegal and wrongful conduct alleged herein.

8       21.    Plaintiff SHEILA RIVERS is a natural person currently residing in South

9   Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11   packaged, distributed, and sold by Defendants. SHEILA RIVERS has suffered damages as a

12   result of Defendants' illegal and wrongful conduct alleged herein.

13       22.    Plaintiff LILIAN ROBERTS is a natural person currently residing in North

14   Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16   packaged, distributed, and sold by Defendants. LILIAN ROBERTS has suffered damages as a

17   result of Defendants' illegal and wrongful conduct alleged herein.

18       23.    Plaintiff BRENDA ROBINSON is a natural person currently residing in

19   Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

20   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

21   packaged, distributed, and sold by Defendants. BRENDA ROBINSON has suffered damages as

22   a result of Defendants' illegal and wrongful conduct alleged herein.

23       24.    Plaintiff JANETTE ROBINSON is a natural person currently residing in

24   Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25   administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26   packaged, distributed, and sold by Defendants. JANETTE ROBINSON has suffered damages as

27   a result of Defendants' illegal and wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 9 - Doc ID = 1720726459 - Doc Type = OTHER

25.    Plaintiff TAISHA ROBINSON is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TAISHA ROBINSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

26.    Plaintiff CYNTHIA M. RODGERS is a natural person currently residing in Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CYNTHIA M. RODGERS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

27.    Plaintiff SUSAN RUBY is a natural person currently residing in Colorado, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SUSAN RUBY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

28.    Plaintiff WINIFRED RUGGERI is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. WINIFRED RUGGERI has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

29.    Plaintiff PAULA RUPP is a natural person currently residing in Kansas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. PAULA RUPP has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

30.    Plaintiff VALENCIA A. SCHOFIELD is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

7

COMPLAINT AND DEMAND FOR JURY TRIAL

1    packaged, distributed, and sold by Defendants. VALENCIA A. SCHOFIELD has suffered

2    damages as a result of Defendants' illegal and wrongful conduct alleged herein.

3         31.     Plaintiff THERESIA SCOTT is a natural person currently residing in Nebraska,

4    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6    distributed, and sold by Defendants. THERESIA SCOTT has suffered damages as a result of

7    Defendants' illegal and wrongful conduct alleged herein.

8         32.     Plaintiff VALERIE SEABROOKS is a natural person currently residing in

9    California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11    packaged, distributed, and sold by Defendants. VALERIE SEABROOKS has suffered damages

12    as a result of Defendants' illegal and wrongful conduct alleged herein.

13         33.     Plaintiff GRACIE SELDON is a natural person currently residing in Mississippi,

14    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

15    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

16    distributed, and sold by Defendants. GRACIE SELDON has suffered damages as a result of

17    Defendants' illegal and wrongful conduct alleged herein.

18         34.     Plaintiff JOAN F. SHIRLEY is a natural person currently residing in Montana,

19    and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20    TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21    distributed, and sold by Defendants. JOAN F. SHIRLEY has suffered damages as a result of

22    Defendants' illegal and wrongful conduct alleged herein.

23         35.     Plaintiff BARBARA SHORLEY is a natural person currently residing in

24    Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

25    administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

26    packaged, distributed, and sold by Defendants. BARBARA SHORLEY has suffered damages as

27    a result of Defendants' illegal and wrongful conduct alleged herein.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 11 - Doc ID = 1720726459 - Doc Type = OTHER

36.     Plaintiff SYLVIA L. SINGH is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SYLVIA L. SINGH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

37.     Plaintiff CLAUDINE SINGLETARY is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CLAUDINE SINGLETARY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38.     Plaintiff JACQUELINE SMITH is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JACQUELINE SMITH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

39.     Plaintiff JACQUELINE SNOWDEN is a natural person currently residing in Pennsylvania, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JACQUELINE SNOWDEN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

40.     Plaintiff ALISA STEPTOE is a natural person currently residing in California, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ALISA STEPTOE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41.     Plaintiff VALERIE STEWART is a natural person currently residing in Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

<center>9</center>

COMPLAINT AND DEMAND FOR JURY TRIAL

1 | packaged, distributed, and sold by Defendants. VALERIE STEWART has suffered damages as a

2 | result of Defendants' illegal and wrongful conduct alleged herein.

3 |     42.    Plaintiff SHARON TATE is a natural person currently residing in California, and

4 | received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6 | distributed, and sold by Defendants. SHARON TATE has suffered damages as a result of

7 | Defendants' illegal and wrongful conduct alleged herein.

8 |     43.    Plaintiff DEBORAH TATUM is a natural person currently residing in

9 | Wisconsin, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

10 | administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

11 | packaged, distributed, and sold by Defendants. DEBORAH TATUM has suffered damages as a

12 | result of Defendants' illegal and wrongful conduct alleged herein.

13 |     44.    Plaintiff BARBARA TAYLOR is a natural person currently residing in North

14 | Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

15 | administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

16 | packaged, distributed, and sold by Defendants. BARBARA TAYLOR has suffered damages as a

17 | result of Defendants' illegal and wrongful conduct alleged herein.

18 |     45.    Plaintiff ANTONETTE THOMAS is a natural person currently residing in Ohio,

19 | and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

20 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

21 | distributed, and sold by Defendants. ANTONETTE THOMAS has suffered damages as a result

22 | of Defendants' illegal and wrongful conduct alleged herein.

23 |     46.    Plaintiff MARY THOMAS is a natural person currently residing in Texas, and

24 | received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

25 | TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

26 | distributed, and sold by Defendants. MARY THOMAS has suffered damages as a result of

27 | Defendants' illegal and wrongful conduct alleged herein.

28 |

10

COMPLAINT AND DEMAND FOR JURY TRIAL

1   47.   Plaintiff MAVIS V. THORNTON is a natural person currently residing in

2   Pennsylvania, and received chemotherapy treatment with TAXOTERE®. She was prescribed

3   and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

4   packaged, distributed, and sold by Defendants. MAVIS V. THORNTON has suffered damages

5   as a result of Defendants' illegal and wrongful conduct alleged herein.

6   48.   Plaintiff ALICE TIDWELL is a natural person currently residing in Indiana, and

7   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

8   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

9   distributed, and sold by Defendants. ALICE TIDWELL has suffered damages as a result of

10  Defendants' illegal and wrongful conduct alleged herein.

11  49.   Plaintiff BETTY J TILLMAN is a natural person currently residing in

12  Mississippi, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

13  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

14  packaged, distributed, and sold by Defendants. BETTY J TILLMAN has suffered damages as a

15  result of Defendants' illegal and wrongful conduct alleged herein.

16  50.   Plaintiff BETTY TUCKER is a natural person currently residing in Utah, and

17  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

18  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

19  distributed, and sold by Defendants. BETTY TUCKER has suffered damages as a result of

20  Defendants' illegal and wrongful conduct alleged herein.

21  51.   The aforementioend Plaintiffs request to be coordinated for discovery purposes

22  only to the Judicial Council Consolidated Proceeding 4908.

23  52.   Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under

24  the laws of the State of Delaware, with its principal place of business located at 55 Corporate

25  Dr., Bridgewater, NJ 08807.

26  53.   Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is

27  one of the largest pharmaceutical companies in the United States.

28

11

COMPLAINT AND DEMAND FOR JURY TRIAL

54.     SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, and SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants ."

55.     Sanofi U.S. Services Inc. develops products in therapeutic areas including cardiovascular disease, central nervous systems, internal medicine, metabolic disorder, oncology, ophthalmology, and thrombosis.

56.     The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

57.     Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes pharmaceutical products in the United States.

58.     Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

59.     Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

60.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals.

61.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, TAXOTERE®.

62.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

63.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States.

64.     Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for TAXOTERE®.

12

COMPLAINT AND DEMAND FOR JURY TRIAL

65.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

66.     Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws of the State of Delaware.

67.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC engaged in transactions and conducted business within the State of Delaware and has derived substantial revenue from goods and products disseminated and used in the State of Delaware.  At all times relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE® to the public, including the Plaintiff.

68.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

69.     At all times material to this lawsuit, the Sanofi Defendants were authorized to do business within the State of California; did in fact transact and conduct business in the State of California; derived substantial revenue from goods and products used in the State of California; and supplied TAXOTERE® within the State of California.

70.     At all relevant times, and as more fully set forth below, the Sanofi Defendants acted in conjunction with other affiliated, related, jointly owned and controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public, including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between them had ceased and these Defendants became

13

COMPLAINT AND DEMAND FOR JURY TRIAL

1   the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as

2   alleged herein.

3         71.    The Sanofi Defendants transact substantial business in California. The Sanofi

4   Defendants have sponsored or conducted clinical trials of their products in California, including

5   trials of TAXOTERE®. For example, in 2005 Aventis sponsored a clinical trial at Stanford

6   University of the efficacy of TAXOTERE® for lung cancer treatment; from 2006 to 2012 Sanofi

7   sponsored a clinical trial at Stanford on the efficacy of TAXOTERE® for breast cancer

8   treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford

9   Unoversity of TAXOTERE® in patients with breast cancer; Sanofi also sponsored a large-scale

10   epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern

11   California, which terminated in 2012. In addition, Sanofi participates in ongoing research and

12   development collaborations with the University of California, San Francisco.

13         72.    In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales

14   represented the majority, at €29.8 billion. Although generic docetaxel is now available,

15   TAXOTERE® continues to be extremely profitable for Sanofi; in 2015 sales of TAXOTERE®

16   alone were €222 million.

17         73.    Sanofi spends large sums on California politics, mainly via four entities that share

18   the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-

19   Aventis; and Sanofi-Aventis Group.

20         74.    For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in

21   lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying

22   in the state.

23         75.    Sanofi US contributes to political campaigns in California. Specifically, in 2016

24   Sanofi US contributed $4.15 million to the Californians against the Misleading RX Measure, and

25   $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015

26   Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently

27   contributed $7,300 total to five assembly-member candidates, and $2,500 to the California

28   Republican Party.

<div align="center">14</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

76.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

77.     Upon investigation and belief, Plaintiffs are informed and believe that McKesson was involved in the manufacture, distribution, marketing sale, labeling and design of TAXOTERE® as detailed below. Specifically, McKesson is the 16th largest industrial corporation in America, with over $800 billion in revenue every year. McKesson is the sole supplier of numerous pharmaceuticals to both the largest pharmacies and drug suppliers in the nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest independent and community pharmacies.

78.     McKesson Corporation is a distributor of pharmaceutical and health care products that provides health information technology, medical supplies and care management tools. Upon information and belief, McKesson Corporation manufactured and supplied TAXOTERE®, among other products to both hospitals and pharmacies.

79.     Upon investigation and belief, McKesson does business throughout the United States and in the State of California, and regularly and continuously did business within this judicial district including manufacturing, marketing, advertising, warning and precautions attendant to its use, selling, and distributing of TAXOTERE®. For example, McKesson Specialty Health, a division of McKesson, lists TAXOTERE® in its catalog of available products.

80.     Upon investigation and belief, McKesson manufactured marketed, sold and distributed TAXOTERE® administered to Plaintiffs.

81.     Upon information and belief, McKesson was the actor engaged in the acts herein alleged, acting through its agents and employees, at all times, the actions and omissions asserted in this pleading were committed by agents or employees acting within the purpose and scope of said agency and employment.

82.     At all relevant times, McKesson owns US Oncology, which supported a significant amount of TAXOTERE® research and promotion.

Doc# 1 Page# 18 - Doc ID = 1720726459 - Doc Type = OTHER

83.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

84.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

85.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

86.     Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Docs 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

87.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

88.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

89.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein

16

COMPLAINT AND DEMAND FOR JURY TRIAL

1  and was at all times operating and acting with the purpose and scope of said agency, service,

2  employment, partnership, and joint venture.

3      90.    At all times relevant, Defendants were engaged in the business of developing,

4  designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into

5  interstate commerce throughout the United States, which necessarily includes California, either

6  directly or indirectly through third parties, subsidiaries or related entities, the drug

7  TAXOTERE®.

8  **DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING,**

9  **MARKETING, AND SALE OF TAXOTERE®**

10      91.    TAXOTERE® is a drug used in the treatment of various forms of cancer,

11  including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs

12  commonly referred to as taxanes.

13      92.    Taxanes are diterpenes produced by the plants of the genus Taxus (yews)

14  featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents

15  include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic

16  forms as well.

17      93.    TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers

18  Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food

19  and Drug Administration (FDA) in December 1992.

20      94.    The drug and chemical compound that would become known as TAXOTERE®

21  was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

22  and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased

23  potency taxane.

24      95.    The initial patent disclosing the formulation and computation of TAXOTERE®

25  was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in

26  March 1989.

27

28

<div align="center">17</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

96. In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

97. Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

98. Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

99. TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

100. After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®, which was the primary competitor product to TAXOTERE®.

101. Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in California and around the country throughout this period. U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent

1   promotion of TAXOTERE® at conferences including the annual meetings for the American

2   Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology

3   in 2010.

4       102.    Contrary to Defendants' claims of superior efficacy, post market surveillance has

5   shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits

6   over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the

7   existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

8       103.    A study of available clinical studies concerning the relative efficacy of taxanes in

9   the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*,

10  concluded that no significant differences were found in the efficacy and outcomes obtained with

11  TAXOTERE® or TAXOL®.

12      104.    A study published in 2008 in the New England Journal of Medicine, titled

13  *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was

14  more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy

15  with doxorubicin and cyclophosphamide.

16      105.    Despite the publication of these studies, Defendants continued to make false and

17  misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing

18  product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials

19  for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology,

20  comparing the efficacy of TAXOTERE® versus TAXOL®.  Specifically, Sanofi-Aventis

21  utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the

22  Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi

23  and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy

24  compared with TAXOL®, providing significant clinical benefit in terms of survival and time to

25  disease progression, with a numerically higher response rate and manageable toxicities."

26      106.    Defendants' statements in the "reprint carrier" marketing the conclusions of the

27  2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that

28  TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

<div align="center">

19

COMPLAINT AND DEMAND FOR JURY TRIAL

</div>

107.   As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (TAXOTERE® ) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false and misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

108.   A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

109.   Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement

---

[1]   Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]   Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

Doc# 1 Page# 23 - Doc ID = 1720726459 - Doc Type = OTHER

1   assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a

2   direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased

3   revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex*

4   *rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

5       110.    As a direct result of their wrongful conduct and illegal kickback schemes,

6   Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased

7   toxicity as compared to other available less toxic products such as TAXOL®.

8       111.    As a direct result of their aforementioned conduct, Defendants caused thousands

9   of individuals to be exposed to increased frequency and more severe side effects, including but

10  not limited to disfiguring permanent alopecia (hair loss).

11      **DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING**
12  **THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT**
    **DISFIGURING HAIR LOSS**
13
14      112.    Although temporary alopecia, or hair loss, is a common side effect related to

15  chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and

16  marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as

17  with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

18      113.    Defendants knew or should have known that the rate of permanent alopecia

19  related to TAXOTERE® was far greater than with other products available to treat the same

20  condition as Defendants' product.

21      114.    Permanent baldness (permanent alopecia) is a disfiguring condition, especially for

22  women. Women who experienced disfiguring permanent alopecia as a result of the use of

23  TAXOTERE® suffer great mental anguish as well as economic damages, including but not

24  limited to loss of work or inability to work due to significant psychological damage.

25      115.    Although women might accept the possibility of permanent baldness as a result of

26  the use of TAXOTERE® if no other product were available to treat their cancer, this was not the

27  case. Before Defendants' wrongful conduct resulted in tens of thousands of women being

28  exposed to the adverse side effects of TAXOTERE®, there were already similar products on the

21

COMPLAINT AND DEMAND FOR JURY TRIAL

1  market that were at least as effective as TAXOTERE® and did not subject female users to the

2  same risk of disfiguring permanent alopecia as does TAXOTERE®.

3      116.    Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored

4  and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis

5  Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took

6  TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some

7  cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly,

8  intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from

9  physicians, healthcare providers, patients, and Plaintiffs in the United States.

10      117.    In 2006, Defendants knew or should have known that a Denver-based oncologist

11  in the United States had observed that an increased percentage (6.3%) of his patients who had

12  taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients

13  had stopped taking TAXOTERE®.

14      118.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805

15  study, as well as reports from patients who had taken TAXOTERE® and suffered from

16  permanent disfiguring hair loss, Defendants failed to provide accurate information and proper

17  warnings to physicians, healthcare providers, and patients in the United States, including

18  Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering

19  from permanent disfiguring hair loss.

20      119.    Defendants chose to withhold this information in the United States despite

21  advising physicians, patients, and regulatory agencies in other countries, including the European

22  Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair

23  loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

24  and Plaintiffs in the United States only with the generic, vague, and insufficient warning that

25  "hair generally grows back" after taking TAXOTERE®.

26      120.    Users of TAXOTERE® were not presented with the opportunity to make an

27  informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

28  Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as

<center>22</center>

COMPLAINT AND DEMAND FOR JURY TRIAL

1   compared to other alternatives while simultaneously failing to warn of the risk of disfiguring

2   permanent alopecia.

3       121.   In other countries, Defendants published information to individual patients and

4   regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until

5   December 2015, the words permanent alopecia or permanent hair loss did not appear in any

6   information published by Defendants in the United States.

7       122.   In December 2015, the FDA changed the safety labeling for TAXOTERE®

8   (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence

9   appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is

10   the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction;

11   "permanent alopecia" is not.

12       123.   As a direct result of Defendants' wrongful and deceptive acts, tens of thousands

13   of women were exposed to the risk of disfiguring permanent alopecia without any warning and

14   without any additional benefit.

15       124.   As a direct result of Defendants' failure to warn patients of the risk of disfiguring

16   permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as

17   their health care providers, were deprived of the opportunity to make an informed decision as to

18   whether the benefits of using TAXOTERE® over other comparable products was justified.

19       125.   Defendants preyed on one of the most vulnerable groups of individuals at the

20   most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

21   the expense of unwary cancer victims simply hoping to survive their condition and return to a

22   normal life.

23       126.   Plaintiffs, as well as numerous other women, were the innocent victims of

24   Defendants' greed, recklessness, and willful and wanton conduct.

25                     **PLAINTIFFS' DIAGNOSIS, TREATMENT, AND**

             **RESULTING DISFIGURING PERMANENT ALOPECIA**

27       127.   Plaintiff CHARLENE PAVKOVICH was diagnosed with breast cancer.

28   Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL

1  CHARLENE PAVKOVICH nor her treating healthcare providers were aware of or informed by

2  Defendants that disfiguring permanent alopecia can occur following treatment with

3  TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

4  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

5  loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

6  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

7  to her injuries, including, but not limited to, her development of alopecia. Accordingly,

8  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

9      128.  Plaintiff CHARLENE PAVKOVICH underwent her chemotherapy treatment. On

10  information and belief, McKesson Corporation distributed the TAXOTERE® that CHARLENE

11  PAVKOVICH received.

12      129.  Plaintiff SHEILA MOORE was diagnosed with breast cancer. Following her

13  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHEILA

14  MOORE nor her treating healthcare providers were aware of or informed by Defendants that

15  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

17  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21  suit against Defendants was tolled by such delayed discover.

22      130.  Plaintiff SHEILA MOORE underwent her chemotherapy treatment. On

23  information and belief, McKesson Corporation distributed the TAXOTERE® that SHEILA

24  MOORE received.

25      131.  Plaintiff GAYLA MORGAN was diagnosed with breast cancer. Following her

26  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GAYLA

27  MORGAN nor her treating healthcare providers were aware of or informed by Defendants that

28  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

24

COMPLAINT AND DEMAND FOR JURY TRIAL

1  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

2  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

3  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

4  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

5  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

6  suit against Defendants was tolled by such delayed discover.

7    132.    Plaintiff GAYLA MORGAN underwent her chemotherapy treatment. On

8  information and belief, McKesson Corporation distributed the TAXOTERE® that GAYLA

9  MORGAN received.

10    133.    Plaintiff SYLVIA MORRIS was diagnosed with breast cancer. Following her

11  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SYLVIA

12  MORRIS nor her treating healthcare providers were aware of or informed by Defendants that

13  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

14  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

15  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

16  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

17  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

18  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

19  suit against Defendants was tolled by such delayed discover.

20    134.    Plaintiff SYLVIA MORRIS underwent her chemotherapy treatment. On

21  information and belief, McKesson Corporation distributed the TAXOTERE® that SYLVIA

22  MORRIS received.

23    135.    Plaintiff EVELYN MOSLEY was diagnosed with breast cancer. Following her

24  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff EVELYN

25  MOSLEY nor her treating healthcare providers were aware of or informed by Defendants that

26  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

27  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

28  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

COMPLAINT AND DEMAND FOR JURY TRIAL

1  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4  suit against Defendants was tolled by such delayed discover.

5      136.    Plaintiff EVELYN MOSLEY underwent her chemotherapy treatment. On

6  information and belief, McKesson Corporation distributed the TAXOTERE® that EVELYN

7  MOSLEY received.

8      137.    Plaintiff LINDA MOSSMAN was diagnosed with breast cancer. Following her

9  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA

10  MOSSMAN nor her treating healthcare providers were aware of or informed by Defendants that

11  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18      138.    Plaintiff LINDA MOSSMAN underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that LINDA

20  MOSSMAN received.

21      139.    Plaintiff MARTHA MUNDELL was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARTHA

23  MUNDELL nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

26

COMPLAINT AND DEMAND FOR JURY TRIAL

1    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2    suit against Defendants was tolled by such delayed discover.

3        140.    Plaintiff MARTHA MUNDELL underwent her chemotherapy treatment. On

4    information and belief, McKesson Corporation distributed the TAXOTERE® that MARTHA

5    MUNDELL received.

6        141.    Plaintiff ANNE NAMISHIA was diagnosed with breast cancer. Following her

7    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANNE

8    NAMISHIA nor her treating healthcare providers were aware of or informed by Defendants that

9    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15    suit against Defendants was tolled by such delayed discover.

16        142.    Plaintiff ANNE NAMISHIA underwent her chemotherapy treatment. On

17    information and belief, McKesson Corporation distributed the TAXOTERE® that ANNE

18    NAMISHIA received.

19        143.    Plaintiff LORI NAVA was diagnosed with breast cancer. Following her

20    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LORI NAVA

21    nor her treating healthcare providers were aware of or informed by Defendants that disfiguring

22    permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff

23    underwent chemotherapy that included TAXOTERE®.  Following the completion of

24    chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving

25    chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein,

26    Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including,

27    but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against

28    Defendants was tolled by such delayed discover.

<div align="center">27</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

144. Plaintiff LORI NAVA underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LORI NAVA received.

145. Plaintiff KELLY F. NELUM was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff KELLY F. NELUM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

146. Plaintiff KELLY F. NELUM underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that KELLY F. NELUM received.

147. Plaintiff PATRICIA A. NICHOLS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PATRICIA A. NICHOLS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

148. Plaintiff PATRICIA A. NICHOLS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that PATRICIA A. NICHOLS received.

COMPLAINT AND DEMAND FOR JURY TRIAL

1    149.    Plaintiff SHEILA OWENS was diagnosed with breast cancer. Following her

2    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHEILA

3    OWENS nor her treating healthcare providers were aware of or informed by Defendants that

4    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

5    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

6    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

7    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

8    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

9    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

10    suit against Defendants was tolled by such delayed discover.

11    150.    Plaintiff SHEILA OWENS underwent her chemotherapy treatment. On

12    information and belief, McKesson Corporation distributed the TAXOTERE® that SHEILA

13    OWENS received.

14    151.    Plaintiff DELILAH PAM was diagnosed with breast cancer. Following her

15    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DELILAH

16    PAM nor her treating healthcare providers were aware of or informed by Defendants that

17    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

18    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

19    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

20    of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

21    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

22    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

23    suit against Defendants was tolled by such delayed discover.

24    152.    Plaintiff DELILAH PAM underwent her chemotherapy treatment. On

25    information and belief, McKesson Corporation distributed the TAXOTERE® that DELILAH

26    PAM received.

27    153.    Plaintiff DENISE PATTERSON was diagnosed with breast cancer. Following

28    her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DENISE

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 32 - Doc ID = 1720726459 - Doc Type = OTHER

1  PATTERSON nor her treating healthcare providers were aware of or informed by Defendants

2  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

3  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

4  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

5  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

6  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

7  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

8  suit against Defendants was tolled by such delayed discover.

9       154.  Plaintiff DENISE PATTERSON underwent her chemotherapy treatment. On

10  information and belief, McKesson Corporation distributed the TAXOTERE® that DENISE

11  PATTERSON received.

12       155.  Plaintiff BERNICE PEACHES was diagnosed with breast cancer. Following her

13  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BERNICE

14  PEACHES nor her treating healthcare providers were aware of or informed by Defendants that

15  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

16  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

17  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

18  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

19  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

20  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

21  suit against Defendants was tolled by such delayed discover.

22       156.  Plaintiff BERNICE PEACHES underwent her chemotherapy treatment. On

23  information and belief, McKesson Corporation distributed the TAXOTERE® that BERNICE

24  PEACHES received.

25       157.  Plaintiff CARLA PHELPS was diagnosed with breast cancer. Following her

26  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CARLA

27  PHELPS nor her treating healthcare providers were aware of or informed by Defendants that

28  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

30

COMPLAINT AND DEMAND FOR JURY TRIAL

1  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

2  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

3  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

4  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

5  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

6  suit against Defendants was tolled by such delayed discover.

7       158.    Plaintiff CARLA PHELPS underwent her chemotherapy treatment. On

8  information and belief, McKesson Corporation distributed the TAXOTERE® that CARLA

9  PHELPS received.

10      159.    Plaintiff ROSLYNN PINKNEY was diagnosed with breast cancer. Following her

11  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROSLYNN

12  PINKNEY nor her treating healthcare providers were aware of or informed by Defendants that

13  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

14  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

15  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

16  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

17  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

18  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

19  suit against Defendants was tolled by such delayed discover.

20      160.    Plaintiff ROSLYNN PINKNEY underwent her chemotherapy treatment. On

21  information and belief, McKesson Corporation distributed the TAXOTERE® that ROSLYNN

22  PINKNEY received.

23      161.    Plaintiff JOYCE POTTER was diagnosed with breast cancer. Following her

24  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JOYCE

25  POTTER nor her treating healthcare providers were aware of or informed by Defendants that

26  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

27  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

28  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

31

COMPLAINT AND DEMAND FOR JURY TRIAL

1  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

2  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

3  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

4  suit against Defendants was tolled by such delayed discover.

5      162.   Plaintiff JOYCE POTTER underwent her chemotherapy treatment. On

6  information and belief, McKesson Corporation distributed the TAXOTERE® that JOYCE

7  POTTER received.

8      163.   Plaintiff THERESA PRAG was diagnosed with breast cancer. Following her

9  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff THERESA

10  PRAG nor her treating healthcare providers were aware of or informed by Defendants that

11  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18      164.   Plaintiff THERESA PRAG underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that THERESA

20  PRAG received.

21      165.   Plaintiff SHEILA RIVERS was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHEILA

23  RIVERS nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

<div align="center">32</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

1    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2    suit against Defendants was tolled by such delayed discover.

3         166.    Plaintiff SHEILA RIVERS underwent her chemotherapy treatment. On

4    information and belief, McKesson Corporation distributed the TAXOTERE® that SHEILA

5    RIVERS received.

6         167.    Plaintiff LILIAN ROBERTS was diagnosed with breast cancer. Following her

7    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LILIAN

8    ROBERTS nor her treating healthcare providers were aware of or informed by Defendants that

9    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15   suit against Defendants was tolled by such delayed discover.

16        168.    Plaintiff LILIAN ROBERTS underwent her chemotherapy treatment. On

17   information and belief, McKesson Corporation distributed the TAXOTERE® that LILIAN

18   ROBERTS received.

19        169.    Plaintiff BRENDA ROBINSON was diagnosed with breast cancer. Following her

20   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BRENDA

21   ROBINSON nor her treating healthcare providers were aware of or informed by Defendants that

22   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

24   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28   suit against Defendants was tolled by such delayed discover.

33

COMPLAINT AND DEMAND FOR JURY TRIAL

170. Plaintiff BRENDA ROBINSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BRENDA ROBINSON received.

171. Plaintiff JANETTE ROBINSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JANETTE ROBINSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

172. Plaintiff JANETTE ROBINSON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JANETTE ROBINSON received.

173. Plaintiff TAISHA ROBINSON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff TAISHA ROBINSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

34
COMPLAINT AND DEMAND FOR JURY TRIAL

1   174.   Plaintiff TAISHA ROBINSON underwent her chemotherapy treatment. On

2   information and belief, McKesson Corporation distributed the TAXOTERE® that TAISHA

3   ROBINSON received.

4   175.   Plaintiff CYNTHIA M. RODGERS was diagnosed with breast cancer. Following

5   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CYNTHIA

6   M. RODGERS nor her treating healthcare providers were aware of or informed by Defendants

7   that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13   suit against Defendants was tolled by such delayed discover.

14   176.   Plaintiff CYNTHIA M. RODGERS underwent her chemotherapy treatment. On

15   information and belief, McKesson Corporation distributed the TAXOTERE® that CYNTHIA

16   M. RODGERS received.

17   177.   Plaintiff SUSAN RUBY was diagnosed with breast cancer. Following her

18   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SUSAN

19   RUBY nor her treating healthcare providers were aware of or informed by Defendants that

20   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26   suit against Defendants was tolled by such delayed discover.

27   178.   Plaintiff SUSAN RUBY underwent her chemotherapy treatment. On information

28   and belief, McKesson Corporation distributed the TAXOTERE® that SUSAN RUBY received.

35

COMPLAINT AND DEMAND FOR JURY TRIAL

179.     Plaintiff WINIFRED RUGGERI was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff WINIFRED RUGGERI nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

180.     Plaintiff WINIFRED RUGGERI underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that WINIFRED RUGGERI received.

181.     Plaintiff PAULA RUPP was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff PAULA RUPP nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

182.     Plaintiff PAULA RUPP underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that PAULA RUPP received.

183.     Plaintiff VALENCIA A. SCHOFIELD was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VALENCIA A. SCHOFIELD nor her treating healthcare providers were aware of or informed

36

COMPLAINT AND DEMAND FOR JURY TRIAL

1   by Defendants that disfiguring permanent alopecia can occur following treatment with

2   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

3   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

4   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

5   conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

6   to her injuries, including, but not limited to, her development of alopecia. Accordingly,

7   Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

8        184.   Plaintiff VALENCIA A. SCHOFIELD underwent her chemotherapy treatment.

9   On information and belief, McKesson Corporation distributed the TAXOTERE® that

10  VALENCIA A. SCHOFIELD received.

11       185.   Plaintiff THERESIA SCOTT was diagnosed with breast cancer. Following her

12  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff THERESIA

13  SCOTT nor her treating healthcare providers were aware of or informed by Defendants that

14  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

15  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

16  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

17  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

18  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

19  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

20  suit against Defendants was tolled by such delayed discover.

21       186.   Plaintiff THERESIA SCOTT underwent her chemotherapy treatment. On

22  information and belief, McKesson Corporation distributed the TAXOTERE® that THERESIA

23  SCOTT received.

24       187.   Plaintiff VALERIE SEABROOKS was diagnosed with breast cancer. Following

25  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VALERIE

26  SEABROOKS nor her treating healthcare providers were aware of or informed by Defendants

27  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

28  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 40 - Doc ID = 1720726459 - Doc Type = OTHER

1   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

2   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

3   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

4   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

5   suit against Defendants was tolled by such delayed discover.

6        188.   Plaintiff VALERIE SEABROOKS underwent her chemotherapy treatment. On

7   information and belief, McKesson Corporation distributed the TAXOTERE® that VALERIE

8   SEABROOKS received.

9        189.   Plaintiff GRACIE SELDON was diagnosed with breast cancer. Following her

10   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff GRACIE

11   SELDON nor her treating healthcare providers were aware of or informed by Defendants that

12   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

13   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

14   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

15   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

16   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

17   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

18   suit against Defendants was tolled by such delayed discover.

19        190.   Plaintiff GRACIE SELDON underwent her chemotherapy treatment. On

20   information and belief, McKesson Corporation distributed the TAXOTERE® that GRACIE

21   SELDON received.

22        191.   Plaintiff SAIMA SHAJAHAN was diagnosed with breast cancer. Following her

23   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SAIMA

24   SHAJAHAN nor her treating healthcare providers were aware of or informed by Defendants that

25   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

26   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

27   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

28   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

Doc# 1 Page# 41 - Doc ID = 1720726459 - Doc Type = OTHER

1    herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

2    including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

3    suit against Defendants was tolled by such delayed discover.

4         192.    Plaintiff SAIMA SHAJAHAN underwent her chemotherapy treatment. On

5    information and belief, McKesson Corporation distributed the TAXOTERE® that SAIMA

6    SHAJAHAN received.

7         193.    Plaintiff JOAN F. SHIRLEY was diagnosed with breast cancer. Following her

8    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JOAN F.

9    SHIRLEY nor her treating healthcare providers were aware of or informed by Defendants that

10   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

11   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

12   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

13   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

14   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

15   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

16   suit against Defendants was tolled by such delayed discover.

17        194.    Plaintiff JOAN F. SHIRLEY underwent her chemotherapy treatment. On

18   information and belief, McKesson Corporation distributed the TAXOTERE® that JOAN F.

19   SHIRLEY received.

20        195.    Plaintiff BARBARA SHORLEY was diagnosed with breast cancer. Following

21   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

22   BARBARA SHORLEY nor her treating healthcare providers were aware of or informed by

23   Defendants that disfiguring permanent alopecia can occur following treatment with

24   TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

25   Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

26   loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

27   conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

28

39

COMPLAINT AND DEMAND FOR JURY TRIAL

1   to her injuries, including, but not limited to, her development of alopecia. Accordingly,

2   Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

3       196.   Plaintiff BARBARA SHORLEY underwent her chemotherapy treatment. On

4   information and belief, McKesson Corporation distributed the TAXOTERE® that BARBARA

5   SHORLEY received.

6       197.   Plaintiff SYLVIA L. SINGH was diagnosed with breast cancer. Following her

7   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SYLVIA L.

8   SINGH nor her treating healthcare providers were aware of or informed by Defendants that

9   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15  suit against Defendants was tolled by such delayed discover.

16      198.   Plaintiff SYLVIA L. SINGH underwent her chemotherapy treatment. On

17  information and belief, McKesson Corporation distributed the TAXOTERE® that SYLVIA L.

18  SINGH received.

19      199.   Plaintiff CLAUDINE SINGLETARY was diagnosed with breast cancer.

20  Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

21  CLAUDINE SINGLETARY nor her treating healthcare providers were aware of or informed by

22  Defendants that disfiguring permanent alopecia can occur following treatment with

23  TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

24  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

25  loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

26  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

27  to her injuries, including, but not limited to, her development of alopecia. Accordingly,

28  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

<div align="center">40

COMPLAINT AND DEMAND FOR JURY TRIAL</div>

200.    Plaintiff CLAUDINE SINGLETARY underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CLAUDINE SINGLETARY received.

201.    Plaintiff JACQUELINE SMITH was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JACQUELINE SMITH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

202.    Plaintiff JACQUELINE SMITH underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JACQUELINE SMITH received.

203.    Plaintiff JACQUELINE SNOWDEN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JACQUELINE SNOWDEN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

41

COMPLAINT AND DEMAND FOR JURY TRIAL

1    204.    Plaintiff JACQUELINE SNOWDEN underwent her chemotherapy treatment. On

2    information and belief, McKesson Corporation distributed the TAXOTERE® that

3    JACQUELINE SNOWDEN received.

4    205.    Plaintiff ALISA STEPTOE was diagnosed with breast cancer. Following her

5    diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ALISA

6    STEPTOE nor her treating healthcare providers were aware of or informed by Defendants that

7    disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9    completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13   suit against Defendants was tolled by such delayed discover.

14   206.    Plaintiff ALISA STEPTOE underwent her chemotherapy treatment. On

15   information and belief, McKesson Corporation distributed the TAXOTERE® that ALISA

16   STEPTOE received.

17   207.    Plaintiff VALERIE STEWART was diagnosed with breast cancer. Following her

18   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff VALERIE

19   STEWART nor her treating healthcare providers were aware of or informed by Defendants that

20   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26   suit against Defendants was tolled by such delayed discover.

27

28

42

COMPLAINT AND DEMAND FOR JURY TRIAL

208.   Plaintiff VALERIE STEWART underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that VALERIE STEWART received.

209.   Plaintiff SHARON TATE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHARON TATE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

210.   Plaintiff SHARON TATE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SHARON TATE received.

211.   Plaintiff DEBORAH TATUM was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DEBORAH TATUM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

43

COMPLAINT AND DEMAND FOR JURY TRIAL

212. Plaintiff DEBORAH TATUM underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DEBORAH TATUM received.

213. Plaintiff BARBARA TAYLOR was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BARBARA TAYLOR nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

214. Plaintiff BARBARA TAYLOR underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BARBARA TAYLOR received.

215. Plaintiff ANTONETTE THOMAS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANTONETTE THOMAS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 47 - Doc ID = 1720726459 - Doc Type = OTHER

216. Plaintiff ANTONETTE THOMAS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ANTONETTE THOMAS received.

217. Plaintiff MARY THOMAS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARY THOMAS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

218. Plaintiff MARY THOMAS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARY THOMAS received.

219. Plaintiff MAVIS V. THORNTON was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MAVIS V. THORNTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

45

COMPLAINT AND DEMAND FOR JURY TRIAL

220.   Plaintiff MAVIS V. THORNTON underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MAVIS V. THORNTON received.

221.   Plaintiff ALICE TIDWELL was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ALICE TIDWELL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

222.   Plaintiff ALICE TIDWELL underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ALICE TIDWELL received.

223.   Plaintiff BETTY J TILLMAN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BETTY J TILLMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

46

COMPLAINT AND DEMAND FOR JURY TRIAL

224.   Plaintiff BETTY J TILLMAN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BETTY J TILLMAN received.

225.   Plaintiff BETTY TUCKER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BETTY TUCKER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

226.   Plaintiff BETTY TUCKER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BETTY TUCKER received.

## **NATURE OF THE CLAIMS**

227.   Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

228.   In particular, Defendants:

    (a)   failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further

47

COMPLAINT AND DEMAND FOR JURY TRIAL

1      investigate, research, study, and define fully and adequately the safety

2      profile of TAXOTERE® in response to these studies;

3          (b)      failed to provide adequate warnings about the true safety risks associated

4                   with the use of TAXOTERE®;

5          (c)      failed to provide adequate warning regarding the pharmacokinetic and

6                   pharmacodynamic variability of TAXOTERE® and its effects on the

7                   degree or severity of side effects related to permanent alopecia;

8          (d)      failed to disclose in the "Warnings" Section that permanent alopecia is a

9                   frequent side effect associated with the use of TAXOTERE®;

10         (e)      failed to advise prescribing physicians, such as Plaintiffs' physicians, to

11                  instruct patients that permanent alopecia was a side effect, much less a

12                  frequent side effect, linked to TAXOTERE®;

13         (f)      failed to provide adequate instructions on how to intervene and/or reduce

14                  the risk of permanent alopecia related to the use of TAXOTERE®;

15         (g)      failed to provide adequate warnings and information related to the

16                  increased risks of permanent alopecia in certain genome groups;

17         (h)      failed to provide adequate warnings regarding the increased risk of

18                  permanent alopecia with the use of TAXOTERE® as compared to other

19                  products intended to treat the same conditions as TAXOTERE®; and

20         (i)      failed to include a **"BOXED WARNING"** related to permanent or

21                  persistent alopecia.

22     229.    During the years since first marketing TAXOTERE® in the U.S., Defendants

23     modified the U.S. labeling and prescribing information for TAXOTERE® on multiple

24     occasions. Defendants failed, however, to include any warning whatsoever related to permanent

25     alopecia despite Defendants' awareness of the frequency and severity of this side effect.

26     230.    Before applying for and obtaining approval of TAXOTERE®, Defendants knew

27     or should have known that consumption of TAXOTERE® was associated with and/or would

28     cause disfiguring side effects including disfiguring permanent alopecia.

48

COMPLAINT AND DEMAND FOR JURY TRIAL

231.    Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

232.    Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

233.    From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

234.    Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

235.    Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

236.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

237.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

49

COMPLAINT AND DEMAND FOR JURY TRIAL

238. Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug. including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

239. In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of Concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective. This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

240. Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered. Defendants breached that duty.

Doc# 1 Page# 53 - Doc ID = 1720726459 - Doc Type = OTHER

241.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' TAXOTERE® or the true risks associated with their use at the time she purchased and used Defendants' TAXOTERE®.

242.    Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have suffered and complained of herein.

243.    Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

244.    Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information.  Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

245.    After Defendants changed the TAXOTERE® prescription information in the United States to include information about permanent alopecia in December 2015, there ensued publicity and advertising related to permanent alopecia caused by TAXOTERE®. Plaintiffs, as a result of the publicity and advertising, became aware of the failure to warn about permanent alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 54 - Doc ID = 1720726459 - Doc Type = OTHER

1    Plaintiffs acted with all reasonable diligence and speed upon discovering this information and

2    timely files the present complaint.

3

4                                  **FIRST CLAIM FOR RELIEF**

5                    **(Product Liability for Negligence – Against All Defendants)**

6         246.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

7    same force and effect as if fully set forth herein.

8         247.    Defendants had a duty to exercise reasonable care in the marketing, supplying,

9    promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce,

10   including a duty to assure that the product would not cause users to suffer unreasonable,

11   dangerous side effects.

12        248.    Defendants failed to exercise reasonable care in the marketing, supplying,

13   promoting, packaging, sale, and/or distribution of TAXOTERE® into interstate commerce in

14   that Defendants knew or should have known that using TAXOTERE® created a high risk of

15   unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting

16   in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of

17   life, economic loss, and loss of economic opportunity.

18        249.    The negligence of Defendants, their agents, servants, and/or employees, included

19   but was not limited to the following acts and/or omissions:

20             (a)    Selling TAXOTERE® without disclosing its dangers and risks;

21             (b)    Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs'

22                    physicians, the public, and the medical and healthcare profession of the

23                    dangers of TAXOTERE®;

24             (c)    Failing to provide adequate instructions regarding safety precautions to be

25                    observed by users, handlers, and persons who would reasonably and

26                    foreseeably come into contact with, and more particularly, use,

27                    TAXOTERE®;

28

                                              52

Doc# 1 Page# 55 - Doc ID = 1720726459 - Doc Type = OTHER

(d)     Negligently advertising and recommending the use of TAXOTERE®
without sufficient knowledge as to its dangerous propensities;

(e)     Negligently representing that TAXOTERE® was safe for use for its
intended purpose, when, in fact, it was unsafe;

(f)     Negligently and falsely representing that TAXOTERE® was superior to
other commercially available products to treat the same forms of cancer
that TAXOTERE® was intended to treat;

(g)     Concealing information from Plaintiffs, Plaintiffs' physicians, the public,
and the FDA in knowing that TAXOTERE® was unsafe, dangerous,
and/or non-conforming with FDA regulations; and

(h)     Improperly concealing from and/or misrepresenting information to
Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the
FDA concerning the severity of risks and dangers of TAXOTERE®
compared to other forms of treatment for breast cancer.

250.    Defendants underreported, underestimated and downplayed the serious dangers
and risk associated with TAXOTERE®.

251.    Defendants negligently conveyed that the safety risks and/or dangers of
TAXOTERE® were comparable with other forms of treatment for the same conditions for
which TAXOTERE® was prescribed to treat.

252.    Defendants were negligent in the researching, supplying, promoting, packaging,
distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

(a)     Failed to accompany their product with proper and/or accurate warnings
regarding all possible adverse side effects associated with the use of
TAXOTERE®;

(b)     Failed to accompany their product with proper warnings regarding all
possible adverse side effects concerning the risks and dangers associated
with TAXOTERE®;

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 56 - Doc ID = 1720726459 - Doc Type = OTHER

(c)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

(d)    Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(e)    Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®.

(f)    Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(g)    Were otherwise careless and/or negligent.

253.    Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiffs.

254.    Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was meant to treat.

255.    Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

256.    Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

54

COMPLAINT AND DEMAND FOR JURY TRIAL

257.   As a direct and proximate result of the use of TAXOTERE®, Plaintiffs experienced disfiguring permanent alopecia.

258.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

259.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

260.   The TAXOTERE® that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

261.   Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for the Reference Listed Drug ("RLD") of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. All of the labeling for the generic version was also defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

262.   Defendants failed to provide adequate warnings to physicians and users, including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 58 - Doc ID = 1720726459 - Doc Type = OTHER

1  alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently

2  promoted the product to physicians.

3    263.   As a direct and proximate result of Defendants' failure to warn of the potentially

4  severe adverse effects of TAXOTERE®, Plaintiffs suffered disfiguring permanent alopecia and

5  other conditions.

6    264.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

7  suffer serious and dangerous side effects, severe and personal injuries that are permanent and

8  lasting in nature, and economic and non-economic damages, harms, and losses, including but not

9  limited to: past and future medical expenses; past and future loss of earnings; past and future

10  loss and impairment of earning capacity; permanent disfigurement including permanent

11  alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

12  harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

13  present, and future loss and impairment of the quality and enjoyment of life.

14  **THIRD CLAIM FOR RELIEF**

15  **(Intentional Misrepresentation)**

16    265.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

17  same force and effect as if fully set forth herein.

18    266.   Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs'

19  physicians, the medical and healthcare community, and the public in general that TAXOTERE®

20  had been tested and was found to be safe and effective for the treatment of certain forms of

21  cancer.

22    267.   When warning of safety and risks of TAXOTERE®, Defendants fraudulently

23  represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

24  public in general that TAXOTERE® had been tested and was found to be safe and/or effective

25  for its indicated use.

26    268.   Defendants concealed their knowledge of TAXOTERE®'s defects from

27  Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

28

56

COMPLAINT AND DEMAND FOR JURY TRIAL

1   specifically including, but not limited to, concealing their knowledge of the risk of developing

2   disfiguring permanent alopecia.

3       269.   Defendants concealed their knowledge of the defects in their products from

4   Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

5       270.   Defendants made these false representations with the intent of defrauding and

6   deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare

7   community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs'

8   physicians, the public in general, and the medical community in particular, to recommend,

9   dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer,

10   including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

11   wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

12       271.   Defendants made these false representations with the intent of defrauding and

13   deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and

14   healthcare community in particular, and were made with the intent of inducing the public in

15   general, and the medical community in particular, to recommend, dispense, and/or purchase

16   TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to

17   breast cancer.

18       272.   When Defendants made these representations, Defendants knew those

19   representations were false, and Defendants willfully, wantonly, and recklessly disregarded

20   whether the representations were true.

21       273.   At the time Defendants made the aforesaid representations, and, at the time

22   Plaintiffs used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of

23   Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them

24   to be true.

25       274.   In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians

26   were induced to and did use and prescribe TAXOTERE®, which caused Plaintiffs to sustain

27   severe, permanent, and disfiguring personal injuries.

28

57

COMPLAINT AND DEMAND FOR JURY TRIAL

275.     Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

276.     Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE®, including, but not limited to, the development of permanent disfiguring alopecia, and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

277.     Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

278.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF
### (Concealment – Against Sanofi Defendants)

279.     Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

280.     At all times during the course of dealing between Sanofi Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of TAXOTERE® for its intended use.

281.     Sanofi Defendants knew or were reckless in not knowing that its representations were false.

282.     In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi Defendants fraudulently concealed and intentionally omitted the following material information:

58
COMPLAINT AND DEMAND FOR JURY TRIAL

(a)     that TAXOTERE® was not as safe as other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

(b)     that the risks of adverse events with TAXOTERE® were higher than those with other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

(c)     that the risks of adverse events with TAXOTERE® were not adequately tested and/or known by Defendants;

(d)     that Defendants were aware of dangers in TAXOTERE®, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

(e)     that TAXOTERE® was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

283.     Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

284.     Sanofi Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

285.     Sanofi Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

286.     Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

<div align="center">59</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

287.    Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

288.    As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF

### (Negligent Misrepresentation – Against All Defendants)

289.    Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

290.    Defendants sold the TAXOTERE® that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

291.    Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

292.    Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

293.    Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

294.    As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF

60

COMPLAINT AND DEMAND FOR JURY TRIAL

**(Extreme and Outrageous Conduct / Intentional Infliction
of Emotional Distress – Against All Defendants)**

295.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

296.    Defendants' conduct, as set forth above, was extreme and outrageous.

297.    Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

298.    Defendants' conduct caused Plaintiffs severe emotional distress.

299.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Loss of Consortium)

300.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

301.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

302.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 64 - Doc ID = 1720726459 - Doc Type = OTHER

303. Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

304. Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

305. By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as hereinafter set forth.

**PRAYER FOR RELIEF**

WHEREFORE, all California Plaintiffs demand judgment against Defendants SANOFI U.S. SERVICES INC., formerly known as SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC., SANDOZ, INC., and ACCORD HEALTHCARE, INC. All non-California plaintiffs demand judgment against Defendant McKESSON CORPORATION doing business as McKESSON PACKAGING. The extreme and outrageous conduct of the Defendants was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

62

COMPLAINT AND DEMAND FOR JURY TRIAL

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 12, 2017              Respectfully submitted,

**NAPOLI SHKOLNIK, PLLC**

By:

Jennifer Liakos
*Attorney for Plaintiffs*

63

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 66 - Doc ID = 1720726459 - Doc Type = OTHER

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, S  · number, and address):* | FOR COURT USE ONLY |
|---|---|

Jennifer Liakos, Esq., SBN 207487
Napoli Shkolnik
525 S. Douglas St., Suite 260
El Segundo, CA 90245
TELEPHONE NO.: 310-331-8224     FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District

CASE NAME:
Shajahan v. Sanofi U.S. Services Inc., et al.

**FILED**
Superior Court of California
County of Los Angeles

**DEC 12 2017**

Sherri R. Carter, Executive Officer/Clerk
By _M. Soto_, Deputy
Moses Soto

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✓ Unlimited (Amount demanded exceeds $25,000) | Limited (Amount demanded is $25,000 or less) | Counter | Joinder | **BC 686723** |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ✓ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ✓ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is ✓ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/11/2017

Jennifer Liakos
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

BY FAX

ORIGINAL

**CM-010**

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
  domain, landlord/tenant, or
  foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

| SHORT TITLE: Shajahan v. Sanofi U.S. Services Inc., et al. | CASE NUMBER: BC 686723 |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.    BY FAX

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| Product Liability (24) | ☑ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 6, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

ORIGINAL

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Shajahan v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
| --- | --- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
| --- | --- | --- | --- |
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 2 of 4

Doc# 1 Page# 70 - Doc ID = 1720726459 - Doc Type = OTHER

| SHORT TITLE: Shajahan v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Shajahan v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: 610 S. Main St. |
|---|---|
| ☐ 1. ☐ 2. ☐ 3. ☑ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90014 |
|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __12/11/2017__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 4 of 4

Doc# 1 Page# 72 - Doc ID = 1720726459 - Doc Type = OTHER

1   Jennifer Liakos, Esq. (SBN 207487)
    JLiakos@NapoliLaw.com
2   NAPOLI SHKOLNIK PLLC
    525 South Douglas St., Suite 260
3   El Segundo, CA 90245
    Telephone: 310-331-8224
4   Facsimile: 310-736-2877

5   *Attorney for Plaintiffs*

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
                  IN AND FOR LOS ANGELES COUNTY
9

10  EUNICE VILLEGAS; DELMA ACOSTA-        | Case No.  **BC 686617**
    DOMINGUEZ; MARILYN BING; DIANE        |
11  BOROVIC; ROSE BURNHAM; CHERYL         | **COMPLAINT AND DEMAND FOR**
    CAMPBELL; CECILIA CHEVES;             |
12  ANTOINETTE CLARK; SONIA               | **JURY TRIAL**
    COLLINS; BIANCA CONKLIN; LYNELL       |                    **BY FAX**
13  DAGGS; MADELEINE DWOLAKOWSKI;         | 1.  Negligence
14  KAREN GILYARD; NICOLE C.              | 2.  Strict Liability – Failure to Warn
    GORMAN; DAWN V. GRAVES;               | 3.  Intentional Misrepresentation
15  MARJORIE HUNT-BLUFORD;                | 4.  Concealment
    GWENDOLYN JACKSON- FORTUNE;           | 5.  Negligent Misrepresentation
16  LENORA JOHNSON; LINDA JONES;          | 6.  Intentional Infliction of Emotional
17  TRACY JORDAN-STEELE; IVA              |     Distress
    MEDLER; ROBERTA VIRTS; BRENDA         | 7.  Loss of Consortium
18  WARD; HELEN WARD; LEJUNE              |
    WASHINGTON; SHARON WATSON;            |
19  BONITA WEBSTER; JEAN WHITE;           |
20  DEBRA WILDER; AND DIANNE              |
    WILLIAMS,                             |
21                                        |
22                       Plaintiffs,      |
23          v.                            |
24  SANOFI U.S. SERVICES INC., formerly   |
25  known as SANOFI-AVENTIS U.S. INC,     |
    SANOFI-AVENTIS U.S. LLC, separately   |
26  and doing business as WINTHROP U.S.,  |
    SANDOZ, INC., McKESSON                |
27  CORPORATION doing business as         |
    McKESSON PACKAGING, HOSPIRA,          |
28  INC., HOSPIRA WORLDWIDE, LLC f/k/a    |

COMPLAINT AND DEMAND FOR JURY TRIAL

ORIGINAL

FILED
Superior Court of California
County of Los Angeles

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
        Shaunya Bolden

020

FSO: 05 / 28 / 2019 TRIAL: 06 / 12 / 2019 OSC: 12 / 14 / 2020

ORIGINAL

CIT/CASE: BC686617
LEA/DEF#:

RECEIPT #: CCH465980166
DATE PAID: 12/12/17  04:19 PM
PAYMENT: $435.00        310
RECEIVED:
        CHECK:   $435.00
        CASH:      $0.00
        CHANGE:    $0.00
        CARD:      $0.00

HOSPIRA WORLDWIDE, INC., SANDOZ,
INC., and ACCORD HEALTHCARE, INC.,

       Defendants.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2        All plaintiffs who are residents of California respectfully submit the following Complaint

3 and Jury Demand against all Defendants, including SANOFI U.S. SERVICES INC., formerly

4 known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing

5 business as WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business

6 as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a

7 HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC.,

8 (herein collectively referred to as the "Defendants") , and allege the following upon personal

9 knowledge, information, belief, and investigation of counsel.

10        All plaintiffs who are residents outside of California respectfully submit the following

11 Complaint and Jury Demand against Defendants McKESSON CORPORATION doing business

12 as McKESSON PACKAGING, only, and al*l*ege the following upon personal knowledge,

13 information, belief, and investigation of counsel.

14 <div align="center">**NATURE OF THE CASE**</div>

15     1.     Plaintiffs are breast cancer survivors who were prescribed and injected with

16 TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

17 distributed by Defendants.  Although lower potency alternatives have been available for years,

18 Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-

19 sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact,

20 TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more

21 severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss.

22 Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s

23 risk of permanent hair loss is not.  Defendants concealed this information from physicians,

24 healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer

25 permanent hair loss without any additional benefit or warning.

26     2.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

27 suffered serious and permanent physical and emotional injuries, including permanent hair loss,

28

<div align="center">1</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   and seek damages relating to Defendants' distribution, labeling, advertising, marketing,

2   manufacturing, promotion, and sale of TAXOTERE®.

4   **JURISDICTION AND VENUE**

5   3.      This Court has jurisdiction over this action pursuant to Article 6, §10 of the

6   California Constitution and California Code of Civil Procedure § 410.10. The amount in

7   controversy exceeds the jurisdictional limit of $25,000.

8   4.      This Court has personal jurisdiction over Defendants, each of which is licensed to

9   conduct or is systematically and continuously conducting business in the State of California,

10  including, but not limited to, the marketing, advertising, selling, and distributing of drugs,

11  including TAXOTERE®, to the residents in this state.  Defendants have sufficient minimum

12  contacts in California and intentionally avail themselves of the markets within California

13  through the promotion, sale, marketing, and distribution of their products, including

14  TAXOTERE®, thus rendering the exercise of jurisdiction by this Court proper and necessary.

15  5.      Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5.

16  Defendants transact business in Los Angeles County and the events complained of occurred in

17  Los Angeles County.

18  **PARTIES**

19  6.      Plaintiff EUNICE VILLEGAS is a natural person currently residing in California,

20  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

21  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

22  distributed, and sold by Defendants. EUNICE VILLEGAS has suffered damages as a result of

23  Defendants' illegal and wrongful conduct alleged herein.

24  7.      Plaintiff  DELMA ACOSTA-DOMINGUEZ is a natural person currently residing

25  in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

26  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

27  packaged, distributed, and sold by Defendants. DELMA ACOSTA-DOMINGUEZ has suffered

28  damages as a result of Defendants' illegal and wrongful conduct alleged herein.

2

COMPLAINT AND DEMAND FOR JURY TRIAL

8. Plaintiff RICHARD DOMINGUEZ is a natural person and spouse of Plaintiff DELMA ACOSTA-DOMINGUEZ.

9. Plaintiff MARILYN BING is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARILYN BING has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

10. Plaintiff NORMAN BING is a natural person and spouse of Plaintiff MARILYN BING.

11. Plaintiff DIANE BOROVIC is a natural person currently residing in Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DIANE BOROVIC has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

12. Plaintiff STEPHEN BOROVIC is a natural person and spouse of Plaintiff DIANE BOROVIC.

13. Plaintiff ROSE BURNHAM is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ROSE BURNHAM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

14. Plaintiff JOHN BURNHAM is a natural person and spouse of Plaintiff ROSE BURNHAM.

15. Plaintiff CHERYL CAMPBELL is a natural person currently residing in Wyoming, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CHERYL CAMPBELL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

<div align="center">3</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1  16. Plaintiff MYRL CAMPBELL is a natural person and spouse of Plaintiff

2 CHERYL CAMPBELL.

3  17. Plaintiff CECILIA CHEVES is a natural person currently residing in Florida, and

4 received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

5 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6 distributed, and sold by Defendants. CECILIA CHEVES has suffered damages as a result of

7 Defendants' illegal and wrongful conduct alleged herein.

8  18. Plaintiff TROY CHEVES is a natural person and spouse of Plaintiff CECILIA

9 CHEVES.

10  19. Plaintiff ANTOINETTE CLARK is a natural person currently residing in

11 Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

12 administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

13 packaged, distributed, and sold by Defendants. ANTOINETTE CLARK has suffered damages as

14 a result of Defendants' illegal and wrongful conduct alleged herein.

15  20. Plaintiff VERNON R. CLARK is a natural person and spouse of Plaintiff

16 ANTOINETTE CLARK.

17  21. Plaintiff SONIA COLLINS is a natural person currently residing in Ohio, and

18 received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

19 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

20 distributed, and sold by Defendants. SONIA COLLINS has suffered damages as a result of

21 Defendants' illegal and wrongful conduct alleged herein.

22  22. Plaintiff EARNEST COLLINS is a natural person and spouse of Plaintiff SONIA

23 COLLINS.

24  23. Plaintiff BIANCA CONKLIN is a natural person currently residing in Kansas,

25 and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

26 TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

27 distributed, and sold by Defendants. BIANCA CONKLIN has suffered damages as a result of

28 Defendants' illegal and wrongful conduct alleged herein.

<div align="center">4</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

24. Plaintiff JOHN CONKLIN is a natural person and spouse of Plaintiff BIANCA CONKLIN.

25. Plaintiff LYNELL DAGGS is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LYNELL DAGGS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

26. Plaintiff MICHAEL DAGGS is a natural person and spouse of Plaintiff LYNELL DAGGS.

27. Plaintiff MADELEINE DWOLAKOWSKI is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MADELEINE DWOLAKOWSKI has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

28. Plaintiff VICTOR H. MUSMANNO is a natural person and spouse of Plaintiff MADELEINE DWOLAKOWSKI.

29. Plaintiff KAREN GILYARD is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KAREN GILYARD has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

30. Plaintiff DAVID A. GILYARD is a natural person and spouse of Plaintiff KAREN GILYARD.

31. Plaintiff NICOLE C. GORMAN is a natural person currently residing in Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. NICOLE C. GORMAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

5

COMPLAINT AND DEMAND FOR JURY TRIAL

32.    Plaintiff MICHAEL GORMAN is a natural person and spouse of Plaintiff NICOLE C. GORMAN.

33.    Plaintiff DAWN V. GRAVES is a natural person currently residing in Maryland, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DAWN V. GRAVES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

34.    Plaintiff GRETCHEN GRAVES is a natural person and spouse of Plaintiff DAWN V. GRAVES.

35.    Plaintiff MARJORIE HUNT-BLUFORD is a natural person currently residing in Texas, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MARJORIE HUNT-BLUFORD has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

36.    Plaintiff ACY BLUFORD is a natural person and spouse of Plaintiff MARJORIE HUNT-BLUFORD.

37.    Plaintiff GWENDOLYN JACKSON- FORTUNE is a natural person currently residing in South Carolina, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GWENDOLYN JACKSON-FORTUNE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38.    Plaintiff WILLIE FORTUNE is a natural person and spouse of Plaintiff GWENDOLYN JACKSON- FORTUNE.

39.    Plaintiff LENORA JOHNSON is a natural person currently residing in Georgia, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

6

COMPLAINT AND DEMAND FOR JURY TRIAL

1  distributed, and sold by Defendants. LENORA JOHNSON has suffered damages as a result of

2  Defendants' illegal and wrongful conduct alleged herein.

3      40.    Plaintiff EDWARD JOHNSON is a natural person and spouse of Plaintiff

4  LENORA JOHNSON.

5      41.    Plaintiff LINDA JONES is a natural person currently residing in Pennsylvania,

6  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

7  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

8  distributed, and sold by Defendants. LINDA JONES has suffered damages as a result of

9  Defendants' illegal and wrongful conduct alleged herein.

10      42.    Plaintiff WAYNE JONES is a natural person and spouse of Plaintiff LINDA

11  JONES.

12      43.    Plaintiff TRACY JORDAN-STEELE is a natural person currently residing in

13  Ohio, and received chemotherapy treatment with TAXOTERE®. She was prescribed and

14  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

15  packaged, distributed, and sold by Defendants. TRACY JORDAN-STEELE has suffered

16  damages as a result of Defendants' illegal and wrongful conduct alleged herein.

17      44.    Plaintiff CHARLES STEELE is a natural person and spouse of Plaintiff TRACY

18  JORDAN-STEELE.

19      45.    Plaintiff IVA MEDLER is a natural person currently residing in California, and

20  received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

21  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

22  distributed, and sold by Defendants. IVA MEDLER has suffered damages as a result of

23  Defendants' illegal and wrongful conduct alleged herein.

24      46.    Plaintiff LARRY MEDLER is a natural person and spouse of Plaintiff IVA

25  MEDLER.

26      47.    Plaintiff ROBERTA VIRTS is a natural person currently residing in Maryland,

27  and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered

28  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,

Doc# 1 Page# 10 - Doc ID = 1720725971 - Doc Type = OTHER

1   distributed, and sold by Defendants. ROBERTA VIRTS has suffered damages as a result of
2   Defendants' illegal and wrongful conduct alleged herein.

3       48.    Plaintiff BRENDA WARD is a natural person currently residing in Ohio, and
4   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
5   TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
6   distributed, and sold by Defendants. BRENDA WARD has suffered damages as a result of
7   Defendants' illegal and wrongful conduct alleged herein.

8       49.    Plaintiff HELEN WARD is a natural person currently residing in Florida, and
9   received chemotherapy treatment with TAXOTERE®. She was prescribed and administered
10  TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged,
11  distributed, and sold by Defendants. HELEN WARD has suffered damages as a result of
12  Defendants' illegal and wrongful conduct alleged herein.

13      50.    Plaintiff LEJUNE WASHINGTON is a natural person currently residing in New
14  York, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
15  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
16  packaged, distributed, and sold by Defendants. LEJUNE WASHINGTON has suffered damages
17  as a result of Defendants' illegal and wrongful conduct alleged herein.

18      51.    Plaintiff SHARON WATSON is a natural person currently residing in New
19  York, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
20  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
21  packaged, distributed, and sold by Defendants. SHARON WATSON has suffered damages as a
22  result of Defendants' illegal and wrongful conduct alleged herein.

23      52.    Plaintiff BONITA WEBSTER is a natural person currently residing in
24  Wisconsin, and received chemotherapy treatment with TAXOTERE®. She was prescribed and
25  administered TAXOTERE®, which was developed, manufactured, promoted, marketed,
26  packaged, distributed, and sold by Defendants. BONITA WEBSTER has suffered damages as a
27  result of Defendants' illegal and wrongful conduct alleged herein.

28

<div align="center">8</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

53.     Plaintiff JEAN WHITE is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JEAN WHITE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

54.     Plaintiff DEBRA WILDER is a natural person currently residing in Florida, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DEBRA WILDER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

55.     Plaintiff DIANNE WILLIAMS is a natural person currently residing in Missouri, and received chemotherapy treatment with TAXOTERE®. She was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DIANNE WILLIAMS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

56.     The aforementioend Plaintiffs request to be coordinated for discovery purposes only to the Judicial Council Consolidated Proceeding 4908.

57.     Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

58.     Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is one of the largest pharmaceutical companies in the United States.

59.     SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, and SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants ."

60.     Sanofi U.S. Services Inc. develops products in therapeutic areas including cardiovascular disease, central nervous systems, internal medicine, metabolic disorder, oncology, ophthalmology, and thrombosis.

9

COMPLAINT AND DEMAND FOR JURY TRIAL

1   61.   The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006,

2   was known as Sanofi-Aventis U.S. Inc.

3   62.   Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes

4   pharmaceutical products in the United States.

5   63.   Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater,

6   NJ, Malvern, PA, Cambridge MA, and Tucson, AZ.

7   64.   Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a

8   manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

9   65.   Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its

10  substantial number of field sales professionals.

11  66.   One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug,

12  TAXOTERE®.

13  67.   Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of

14  the State of Delaware, with its principal place of business located at 55 Corporate Dr.,

15  Bridgewater, NJ 08807.

16  68.   Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and

17  discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in

18  the United States.

19  69.   Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug

20  Application ("NDA") and supplemental NDAs for TAXOTERE®.

21  70.   Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

22  sells, distributes pharmaceutical products, and does business under the name Winthrop U.S.,

23  which is a division within Sanofi-Aventis U.S. LLC.

24  71.   Sanofi-Aventis U.S. LLC was formed on or about June 28, 2000 under the laws

25  of the State of Delaware.

26  72.   At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC engaged in

27  transactions and conducted business within the State of Delaware and has derived substantial

28  revenue from goods and products disseminated and used in the State of Delaware.  At all times

<div align="center">10</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

1   relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching,

2   analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing,

3   assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising

4   and/or selling the prescription drug known as TAXOTERE® to the public, including the

5   Plaintiff.

6       73.   Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets,

7   sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S.,

8   which is not a separately existing legal entity but rather is a business unit or division operating

9   within and part of Sanofi-Aventis U.S. LLC.

10      74.   At all times material to this lawsuit, the Sanofi Defendants were authorized to do

11  business within the State of California; did in fact transact and conduct business in the State of

12  California; derived substantial revenue from goods and products used in the State of California;

13  and supplied TAXOTERE® within the State of California.

14      75.   At all relevant times, and as more fully set forth below, the Sanofi Defendants

15  acted in conjunction with other affiliated, related, jointly owned and controlled entities or

16  subsidiaries, including each other, in the development, marketing, production, labeling,

17  promoting, packaging, advertising, and/or selling of TAXOTERE® to the general public,

18  including Plaintiffs. The Sanofi Defendants acted jointly and/or as each other's agents, within

19  the course and scope of the agency, with respect to the conduct alleged in this Complaint, such

20  that any individuality and separateness between them had ceased and these Defendants became

21  the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as

22  alleged herein.

23      76.   The Sanofi Defendants transact substantial business in California. The Sanofi

24  Defendants have sponsored or conducted clinical trials of their products in California, including

25  trials of TAXOTERE®. For example, in 2005 Aventis sponsored a clinical trial at Stanford

26  University of the efficacy of TAXOTERE® for lung cancer treatment; from 2006 to 2012 Sanofi

27  sponsored a clinical trial at Stanford on the efficacy of TAXOTERE® for breast cancer

28  treatment; from 2006 to 2012 Sanofi sponsored an interventional clinical trial at Stanford

11

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Unoversity of TAXOTERE® in patients with breast cancer; Sanofi also sponsored a large-scale

2    epidemiological study on its drug Lantus at Kaiser Permanente in Northern and Southern

3    California, which terminated in 2012. In addition, Sanofi participates in ongoing research and

4    development collaborations with the University of California, San Francisco.

5          77.    In 2015, Sanofi's net sales exceeded €34 billion, of which pharmaceutical sales

6    represented the majority, at €29.8 billion. Although generic docetaxel is now available,

7    TAXOTERE® continues to be extremely profitable for Sanofi; in 2015 sales of TAXOTERE®

8    alone were €222 million.

9          78.    Sanofi spends large sums on California politics, mainly via four entities that share

10    the same entity identification number (1278441): Sanofi US; Sanofi US Services Inc.; Sanofi-

11    Aventis; and Sanofi-Aventis Group.

12          79.    For example, Sanofi US Services Inc., a subsidiary of Sanofi, engages in

13    lobbying elected officials in California, and has recently spent at least $1.2 million on lobbying

14    in the state.

15          80.    Sanofi US contributes to political campaigns in California. Specifically, in 2016

16    Sanofi US contributed $4.15 million to the Californians against the Misleading RX Measure, and

17    $1.5 million to No On Prop 61 Californians Against the Deceptive Rx Proposition. In 2015

18    Sanofi gave $115,000 to a campaign against Measure 15-009. Sanofi has also recently

19    contributed $7,300 total to five assembly-member candidates, and $2,500 to the California

20    Republican Party.

21          81.    Defendant McKesson Corporation is a Delaware corporation with its principal

22    place of business at One Post Street, San Francisco, California 94104.

23          82.    Upon investigation and belief, Plaintiffs are informed and believe that McKesson

24    was involved in the manufacture, distribution, marketing sale, labeling and design of

25    TAXOTERE® as detailed below. Specifically, McKesson is the 16th largest industrial

26    corporation in America, with over $800 billion in revenue every year. McKesson is the sole

27    supplier of numerous pharmaceuticals to both the largest pharmacies and drug suppliers in the

28

<div align="center">12</div>

<div align="center">COMPLAINT AND DEMAND FOR JURY TRIAL</div>

1   nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest

2   independent and community pharmacies.

3        83.    McKesson Corporation is a distributor of pharmaceutical and health care products

4   that provides health information technology, medical supplies and care management tools.  Upon

5   information and belief, McKesson Corporation manufactured and supplied TAXOTERE®,

6   among other products to both hospitals and pharmacies.

7        84.    Upon investigation and belief, McKesson does business throughout the United

8   States and in the State of California, and regularly and continuously did business within this

9   judicial district including manufacturing, marketing, advertising, warning and precautions

10   attendant to its use, selling, and distributing of TAXOTERE®. For example, McKesson

11   Specialty Health, a division of McKesson, lists TAXOTERE® in its catalog of available

12   products.

13        85.    Upon investigation and belief, McKesson manufactured marketed, sold and

14   distributed TAXOTERE® administered to Plaintiffs.

15        86.    Upon information and belief, McKesson was the actor engaged in the acts herein

16   alleged, acting through its agents and employees, at all times, the actions and omissions asserted

17   in this pleading were committed by agents or employees acting within the purpose and scope of

18   said agency and employment.

19        87.    At all relevant times, McKesson owns US Oncology, which supported a

20   significant amount of TAXOTERE® research and promotion.

21        88.    Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is

22   incorporated under the laws of the State of Delaware, with its principal place of business located

23   at 275 N. Field Drive, Lake Forest, Illinois 60045.

24        89.    Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of

25   Colorado, with its principal place of business located at 100 College Road West, Princeton, New

26   Jersey 08540.

27

28

<div align="center">13

COMPLAINT AND DEMAND FOR JURY TRIAL</div>

90.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

91.     Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 30, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

92.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

93.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

94.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

95.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes California, either

14

COMPLAINT AND DEMAND FOR JURY TRIAL

1  directly or indirectly through third parties, subsidiaries or related entities, the drug

2  TAXOTERE®.

3  **DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING,**
4  **MARKETING, AND SALE OF TAXOTERE®**

5      96.     TAXOTERE® is a drug used in the treatment of various forms of cancer,

6  including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs

7  commonly referred to as taxanes.

8      97.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews)

9  featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents

10  include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic

11  forms as well.

12      98.     TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers

13  Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food

14  and Drug Administration (FDA) in December 1992.

15      99.     The drug and chemical compound that would become known as TAXOTERE®

16  was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

17  and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased

18  potency taxane.

19      100.    The initial patent disclosing the formulation and computation of TAXOTERE®

20  was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in

21  March 1989.

22      101.    In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental*

23  *Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec

24  assigned to docetaxel.

25      102.    Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990.

26  The study reporting on these trials was called the "TAX 001" study, which continued until May

27  13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly,

28  Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®,

15

COMPLAINT AND DEMAND FOR JURY TRIAL

1  but Sanofi was also directly involved in the clinical trials and testing of the compound

2  TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and

3  data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United

4  States.

5      103.   Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in

6  December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously

7  recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of

8  TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®,

9  which had already received FDA approval, and because more studies of TAXOTERE®'s side

10 effects were needed.

11     104.   TAXOTERE® was ultimately approved by the FDA on May 14, 1996.

12 According to its product labeling, TAXOTERE® was "indicated for the treatment of patients

13 with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

14     105.   After the initial FDA approval, Sanofi sought and was granted FDA approval for

15 additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed

16 superiority over other chemotherapy products approved to treat breast cancer. These marketing

17 claims included claims of superior efficacy over the lower potency taxane product TAXOL®,

18 which was the primary competitor product to TAXOTERE®.

19     106.   Defendant McKesson Corporation distributed, packaged, labeled, and promoted

20 TAXOTERE® in California and around the country throughout this period. U.S. Oncology, a

21 specialty drug distributor now owned by McKesson, supported research and the subsequent

22 promotion of TAXOTERE® at conferences including the annual meetings for the American

23 Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology

24 in 2010.

25     107.   Contrary to Defendants' claims of superior efficacy, post market surveillance has

26 shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits

27 over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the

28 existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

16

COMPLAINT AND DEMAND FOR JURY TRIAL

108.    A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

109.    A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

110.    Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus TAXOL®.  Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

111.    Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

112.    As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (TAXOTERE® ) submitted under cover of

17

COMPLAINT AND DEMAND FOR JURY TRIAL

Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

113.    A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

114.    Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

115.    As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products such as TAXOL®.

---

[1]    Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]    Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

18
COMPLAINT AND DEMAND FOR JURY TRIAL

116.   As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

### DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

117.   Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

118.   Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

119.   Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

120.   Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

121.   Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly,

19

COMPLAINT AND DEMAND FOR JURY TRIAL

1  intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from

2  physicians, healthcare providers, patients, and Plaintiffs in the United States.

3       122.    In 2006, Defendants knew or should have known that a Denver-based oncologist

4  in the United States had observed that an increased percentage (6.3%) of his patients who had

5  taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients

6  had stopped taking TAXOTERE®.

7       123.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805

8  study, as well as reports from patients who had taken TAXOTERE® and suffered from

9  permanent disfiguring hair loss, Defendants failed to provide accurate information and proper

10  warnings to physicians, healthcare providers, and patients in the United States, including

11  Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering

12  from permanent disfiguring hair loss.

13       124.    Defendants chose to withhold this information in the United States despite

14  advising physicians, patients, and regulatory agencies in other countries, including the European

15  Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair

16  loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

17  and Plaintiffs in the United States only with the generic, vague, and insufficient warning that

18  "hair generally grows back" after taking TAXOTERE®.

19       125.    Users of TAXOTERE® were not presented with the opportunity to make an

20  informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

21  Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as

22  compared to other alternatives while simultaneously failing to warn of the risk of disfiguring

23  permanent alopecia.

24       126.    In other countries, Defendants published information to individual patients and

25  regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until

26  December 2015, the words permanent alopecia or permanent hair loss did not appear in any

27  information published by Defendants in the United States.

28

<div align="center">20</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

127.    In December 2015, the FDA changed the safety labeling for TAXOTERE®

(docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence

appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is

the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction;

"permanent alopecia" is not.

128.    As a direct result of Defendants' wrongful and deceptive acts, tens of thousands

of women were exposed to the risk of disfiguring permanent alopecia without any warning and

without any additional benefit.

129.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring

permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as

their health care providers, were deprived of the opportunity to make an informed decision as to

whether the benefits of using TAXOTERE® over other comparable products was justified.

130.    Defendants preyed on one of the most vulnerable groups of individuals at the

most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

the expense of unwary cancer victims simply hoping to survive their condition and return to a

normal life.

131.    Plaintiffs, as well as numerous other women, were the innocent victims of

Defendants' greed, recklessness, and willful and wanton conduct.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND
## RESULTING DISFIGURING PERMANENT ALOPECIA

132.    Plaintiff EUNICE VILLEGAS was diagnosed with breast cancer. Following her

diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff EUNICE

VILLEGAS nor her treating healthcare providers were aware of or informed by Defendants that

disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

21

COMPLAINT AND DEMAND FOR JURY TRIAL

1  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2  suit against Defendants was tolled by such delayed discover.

3      133. Plaintiff EUNICE VILLEGAS underwent her chemotherapy treatment. On

4  information and belief, McKesson Corporation distributed the TAXOTERE® that EUNICE

5  VILLEGAS received.

6      134. Plaintiff DELMA ACOSTA-DOMINGUEZ was diagnosed with breast cancer.

7  Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

8  DELMA ACOSTA-DOMINGUEZ nor her treating healthcare providers were aware of or

9  informed by Defendants that disfiguring permanent alopecia can occur following treatment with

10  TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

11  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

12  loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

13  conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

14  to her injuries, including, but not limited to, her development of alopecia. Accordingly,

15  Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

16      135. Plaintiff DELMA ACOSTA-DOMINGUEZ underwent her chemotherapy

17  treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that

18  DELMA ACOSTA-DOMINGUEZ received.

19      136. Plaintiff MARILYN BING was diagnosed with breast cancer. Following her

20  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MARILYN

21  BING nor her treating healthcare providers were aware of or informed by Defendants that

22  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

23  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the

24  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

25  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

26  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

27  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

28  suit against Defendants was tolled by such delayed discover.

<center>22</center>

<center>COMPLAINT AND DEMAND FOR JURY TRIAL</center>

137. Plaintiff MARILYN BING underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MARILYN BING received.

138. Plaintiff DIANE BOROVIC was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DIANE BOROVIC nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

139. Plaintiff DIANE BOROVIC underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DIANE BOROVIC received.

140. Plaintiff ROSE BURNHAM was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROSE BURNHAM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

23

COMPLAINT AND DEMAND FOR JURY TRIAL

1    141.    Plaintiff ROSE BURNHAM underwent her chemotherapy treatment. On

2   information and belief, McKesson Corporation distributed the TAXOTERE® that ROSE

3   BURNHAM received.

4    142.    Plaintiff CHERYL CAMPBELL was diagnosed with breast cancer. Following

5   her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CHERYL

6   CAMPBELL nor her treating healthcare providers were aware of or informed by Defendants that

7   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13   suit against Defendants was tolled by such delayed discover.

14    143.    Plaintiff CHERYL CAMPBELL underwent her chemotherapy treatment. On

15   information and belief, McKesson Corporation distributed the TAXOTERE® that CHERYL

16   CAMPBELL received.

17    144.    Plaintiff CECILIA CHEVES was diagnosed with breast cancer. Following her

18   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff CECILIA

19   CHEVES nor her treating healthcare providers were aware of or informed by Defendants that

20   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23   of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24   herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25   including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26   suit against Defendants was tolled by such delayed discover.

27

28

24

COMPLAINT AND DEMAND FOR JURY TRIAL

145.    Plaintiff CECILIA CHEVES underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that CECILIA CHEVES received.

146.    Plaintiff ANTOINETTE CLARK was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ANTOINETTE CLARK nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

147.    Plaintiff ANTOINETTE CLARK underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that ANTOINETTE CLARK received.

148.    Plaintiff SONIA COLLINS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SONIA COLLINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

25

COMPLAINT AND DEMAND FOR JURY TRIAL

149. Plaintiff SONIA COLLINS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that SONIA COLLINS received.

150. Plaintiff BIANCA CONKLIN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BIANCA CONKLIN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

151. Plaintiff BIANCA CONKLIN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that BIANCA CONKLIN received.

152. Plaintiff LYNELL DAGGS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LYNELL DAGGS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

26

COMPLAINT AND DEMAND FOR JURY TRIAL

153.    Plaintiff LYNELL DAGGS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that LYNELL DAGGS received.

154.    Plaintiff MADELEINE DWOLAKOWSKI was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff MADELEINE DWOLAKOWSKI nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

155.    Plaintiff MADELEINE DWOLAKOWSKI underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that MADELEINE DWOLAKOWSKI received.

156.    Plaintiff KAREN GILYARD was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff KAREN GILYARD nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

27

COMPLAINT AND DEMAND FOR JURY TRIAL

157. Plaintiff KAREN GILYARD underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that KAREN GILYARD received.

158. Plaintiff NICOLE C. GORMAN was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff NICOLE C. GORMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

159. Plaintiff NICOLE C. GORMAN underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that NICOLE C. GORMAN received.

160. Plaintiff DAWN V. GRAVES was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DAWN V. GRAVES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

Doc# 1 Page# 31 - Doc ID = 1720725971 - Doc Type = OTHER

1     161.    Plaintiff DAWN V. GRAVES underwent her chemotherapy treatment. On

2     information and belief, McKesson Corporation distributed the TAXOTERE® that DAWN V.

3     GRAVES received.

4     162.    Plaintiff MARJORIE HUNT-BLUFORD was diagnosed with breast cancer.

5     Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff

6     MARJORIE HUNT-BLUFORD nor her treating healthcare providers were aware of or informed

7     by Defendants that disfiguring permanent alopecia can occur following treatment with

8     TAXOTERE®.    Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.

9     Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair

10    loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful

11    conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed

12    to her injuries, including, but not limited to, her development of alopecia. Accordingly,

13    Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

14    163.    Plaintiff MARJORIE HUNT-BLUFORD underwent her chemotherapy treatment.

15    On information and belief, McKesson Corporation distributed the TAXOTERE® that

16    MARJORIE HUNT-BLUFORD received.

17    164.    Plaintiff GWENDOLYN JACKSON- FORTUNE was diagnosed with breast

18    cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither

19    Plaintiff GWENDOLYN JACKSON- FORTUNE nor her treating healthcare providers were

20    aware of or informed by Defendants that disfiguring permanent alopecia can occur following

21    treatment with TAXOTERE®.    Accordingly, Plaintiff underwent chemotherapy that included

22    TAXOTERE®.    Following the completion of chemotherapy, Plaintiff suffered from disfiguring

23    permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to

24    Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that

25    TAXOTERE® directly contributed to her injuries, including, but not limited to, her development

26    of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such

27    delayed discover.

28

29

COMPLAINT AND DEMAND FOR JURY TRIAL

1    165.   Plaintiff GWENDOLYN JACKSON- FORTUNE underwent her chemotherapy

2   treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that

3   GWENDOLYN JACKSON- FORTUNE received.

4    166.   Plaintiff LENORA JOHNSON was diagnosed with breast cancer. Following her

5   diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LENORA

6   JOHNSON nor her treating healthcare providers were aware of or informed by Defendants that

7   disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

8   Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

9   completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

10  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

11  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

12  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

13  suit against Defendants was tolled by such delayed discover.

14   167.   Plaintiff LENORA JOHNSON underwent her chemotherapy treatment. On

15  information and belief, McKesson Corporation distributed the TAXOTERE® that LENORA

16  JOHNSON received.

17   168.   Plaintiff LINDA JONES was diagnosed with breast cancer. Following her

18  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LINDA

19  JONES nor her treating healthcare providers were aware of or informed by Defendants that

20  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

21  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

22  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

23  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

24  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

25  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

26  suit against Defendants was tolled by such delayed discover.

27   169.   Plaintiff LINDA JONES underwent her chemotherapy treatment. On information

28  and belief, McKesson Corporation distributed the TAXOTERE® that LINDA JONES received.

<center>30</center>

COMPLAINT AND DEMAND FOR JURY TRIAL

170.   Plaintiff TRACY JORDAN-STEELE was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff TRACY JORDAN-STEELE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

171.   Plaintiff TRACY JORDAN-STEELE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that TRACY JORDAN-STEELE received.

172.   Plaintiff IVA MEDLER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff IVA MEDLER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

173.   Plaintiff IVA MEDLER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that IVA MEDLER received.

174.   Plaintiff ROBERTA VIRTS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff ROBERTA VIRTS nor her treating healthcare providers were aware of or informed by Defendants that

31

COMPLAINT AND DEMAND FOR JURY TRIAL

1  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

2  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

3  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

4  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

5  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

6  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

7  suit against Defendants was tolled by such delayed discover.

8       175.    Plaintiff ROBERTA VIRTS underwent her chemotherapy treatment. On

9  information and belief, McKesson Corporation distributed the TAXOTERE® that ROBERTA

10  VIRTS received.

11       176.    Plaintiff BRENDA WARD was diagnosed with breast cancer. Following her

12  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BRENDA

13  WARD nor her treating healthcare providers were aware of or informed by Defendants that

14  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

15  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

16  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

17  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

18  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

19  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

20  suit against Defendants was tolled by such delayed discover.

21       177.    Plaintiff BRENDA WARD underwent her chemotherapy treatment. On

22  information and belief, McKesson Corporation distributed the TAXOTERE® that BRENDA

23  WARD received.

24       178.    Plaintiff HELEN WARD was diagnosed with breast cancer. Following her

25  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff HELEN

26  WARD nor her treating healthcare providers were aware of or informed by Defendants that

27  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

28  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

Doc# 1 Page# 35 - Doc ID = 1720725971 - Doc Type = OTHER

1  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

2  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

3  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

4  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

5  suit against Defendants was tolled by such delayed discover.

6       179.   Plaintiff HELEN WARD underwent her chemotherapy treatment. On information

7  and belief, McKesson Corporation distributed the TAXOTERE® that HELEN WARD received.

8       180.   Plaintiff LEJUNE WASHINGTON was diagnosed with breast cancer. Following

9  her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff LEJUNE

10  WASHINGTON nor her treating healthcare providers were aware of or informed by Defendants

11  that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

12  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

13  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

14  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

15  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

16  including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

17  suit against Defendants was tolled by such delayed discover.

18       181.   Plaintiff LEJUNE WASHINGTON underwent her chemotherapy treatment. On

19  information and belief, McKesson Corporation distributed the TAXOTERE® that LEJUNE

20  WASHINGTON received.

21       182.   Plaintiff SHARON WATSON was diagnosed with breast cancer. Following her

22  diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff SHARON

23  WATSON nor her treating healthcare providers were aware of or informed by Defendants that

24  disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

25  Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

26  completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

27  of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

28  herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

33

COMPLAINT AND DEMAND FOR JURY TRIAL

1 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

2 suit against Defendants was tolled by such delayed discover.

3     183.    Plaintiff SHARON WATSON underwent her chemotherapy treatment. On

4 information and belief, McKesson Corporation distributed the TAXOTERE® that SHARON

5 WATSON received.

6     184.    Plaintiff BONITA WEBSTER was diagnosed with breast cancer. Following her

7 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff BONITA

8 WEBSTER nor her treating healthcare providers were aware of or informed by Defendants that

9 disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

10 Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®.  Following the

11 completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result

12 of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged

13 herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries,

14 including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file

15 suit against Defendants was tolled by such delayed discover.

16     185.    Plaintiff BONITA WEBSTER underwent her chemotherapy treatment. On

17 information and belief, McKesson Corporation distributed the TAXOTERE® that BONITA

18 WEBSTER received.

19     186.    Plaintiff JEAN WHITE was diagnosed with breast cancer. Following her

20 diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff JEAN WHITE

21 nor her treating healthcare providers were aware of or informed by Defendants that disfiguring

22 permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, Plaintiff

23 underwent chemotherapy that included TAXOTERE®.  Following the completion of

24 chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving

25 chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein,

26 Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including,

27 but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against

28 Defendants was tolled by such delayed discover.

<div align="center">34</div>

COMPLAINT AND DEMAND FOR JURY TRIAL

187.    Plaintiff JEAN WHITE underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that JEAN WHITE received.

188.    Plaintiff DEBRA WILDER was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DEBRA WILDER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

189.    Plaintiff DEBRA WILDER underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DEBRA WILDER received.

190.    Plaintiff DIANNE WILLIAMS was diagnosed with breast cancer. Following her diagnosis, Plaintiff met with her oncologist to discuss treatment. Neither Plaintiff DIANNE WILLIAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, Plaintiff underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, Plaintiff suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. Due to Defendants' wrongful conduct, alleged herein, Plaintiff did not fully ascertain that TAXOTERE® directly contributed to her injuries, including, but not limited to, her development of alopecia. Accordingly, Plaintiff's date to file suit against Defendants was tolled by such delayed discover.

191.    Plaintiff DIANNE WILLIAMS underwent her chemotherapy treatment. On information and belief, McKesson Corporation distributed the TAXOTERE® that DIANNE WILLIAMS received.

35

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## NATURE OF THE CLAIMS

2

3       192.    Despite the fact that Defendants disclosed risks associated with TAXOTERE®

4  and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed

5  to either alert Plaintiffs, the public, and the scientific community in the United States or perform

6  further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring

7  permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed

8  to disclose the results of additional studies as Defendants learned new facts regarding the defects

9  and risks of their product.

10      193.    In particular, Defendants:

11          (a)    failed to disclose their investigation and research from 2005, including but

12                 not limited to the results of the GEICAM 9805 study, and failed to further

13                 investigate, research, study, and define fully and adequately the safety

14                 profile of TAXOTERE® in response to these studies;

15          (b)    failed to provide adequate warnings about the true safety risks associated

16                 with the use of TAXOTERE®;

17          (c)    failed to provide adequate warning regarding the pharmacokinetic and

18                 pharmacodynamic variability of TAXOTERE® and its effects on the

19                 degree or severity of side effects related to permanent alopecia;

20          (d)    failed to disclose in the "Warnings" Section that permanent alopecia is a

21                 frequent side effect associated with the use of TAXOTERE®;

22          (e)    failed to advise prescribing physicians, such as Plaintiffs' physicians, to

23                 instruct patients that permanent alopecia was a side effect, much less a

24                 frequent side effect, linked to TAXOTERE®;

25          (f)    failed to provide adequate instructions on how to intervene and/or reduce

26                 the risk of permanent alopecia related to the use of TAXOTERE®;

27          (g)    failed to provide adequate warnings and information related to the

28                 increased risks of permanent alopecia in certain genome groups;

36

COMPLAINT AND DEMAND FOR JURY TRIAL

(h)  failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i)  failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

194.  During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

195.  Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

196.  Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

197.  Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

198.  From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

199.  Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

200.  Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

37

COMPLAINT AND DEMAND FOR JURY TRIAL

1    201.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

2  suffer serious and dangerous side effects, severe and personal injuries that are permanent and

3  lasting in nature, and economic and non-economic damages, harms, and losses, including but not

4  limited to: past and future medical expenses; past and future loss of earnings; past and future

5  loss and impairment of earning capacity; permanent disfigurement including permanent

6  alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

7  harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

8  present, and future loss and impairment of the quality and enjoyment of life.

<div align="center">

**ESTOPPEL FROM PLEADING STATUTES OF**
**LIMITATIONS OR REPOSE**

</div>

11    202.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of

12  the Complaint as if fully set forth at length herein.

13    203.    Plaintiffs are within the applicable statutes of limitations for the claims presented

14  herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of

15  Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

16  permanent alopecia, and could not reasonably have discovered the defects and unreasonably

17  dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to

18  the Defendants' failure to warn, suppression of important information about the risks of the

19  drug, including but not limited to the true risk benefit profile, and the risk of disfiguring

20  permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®,

21  and other acts and omissions.

22    204.    In addition, Defendants are estopped from relying on any statutes of limitations or

23  repose by virtue of their acts of Concealment, affirmative misrepresentations and omissions,

24  which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health

25  care professionals and the general consuming public that Defendants' TAXOTERE® was

26  defective, unreasonably dangerous and carried with it the serious risk of developing the injuries

27  Plaintiffs have suffered while aggressively and continually marketing and promoting

28  TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to

<div align="center">

38

COMPLAINT AND DEMAND FOR JURY TRIAL

</div>

1  disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

2  Defendants to result from use of TAXOTERE®, for example, and not by way of limitation,

3  internal concern about reports and studies finding an increased risk of disfiguring permanent

4  alopecia; suppression of information about these risks and injuries from physicians and patients,

5  including Plaintiffs; use of sales and marketing documents and information that contained

6  information contrary to the internally held knowledge regarding the aforesaid risks and injuries;

7  and overstatement of the efficacy and safety of TAXOTERE®.

8       205.    Defendants had a duty to disclose that TAXOTERE® was defective,

9  unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

10  serious risk of developing disfiguring permanent alopecia as the Plaintiffs have suffered.

11  Defendants breached that duty.

12       206.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general

13  consuming public, had no knowledge of, and no reasonable way of discovering, the defects

14  found in Defendants' TAXOTERE® or the true risks associated with their use at the time she

15  purchased and used Defendants' TAXOTERE®.

16       207.    Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing

17  health care professionals or the general consuming public that Defendants' TAXOTERE® was

18  defective and that its use carried with it the serious risk of developing the injuries Plaintiffs have

19  suffered and complained of herein.

20       208.    Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing

21  health care professionals and the general consuming public that their TAXOTERE® was

22  defective and, further, actively attempted to conceal this fact, Defendants should be estopped

23  from asserting defenses based on statutes of limitation or repose.

24       209.    Accordingly, Plaintiffs file this lawsuit within the applicable statutes of

25  limitations. Plaintiffs could not by exercise of reasonable diligence have discovered any

26  wrongdoing, nor could she have discovered the causes of their injuries at an earlier time, and

27  when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable

28  based on the lack of necessary information, which was suppressed by the Defendants. Further,

COMPLAINT AND DEMAND FOR JURY TRIAL

Doc# 1 Page# 42 - Doc ID = 1720725971 - Doc Type = OTHER

1   the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug

2   was inherently difficult to discover, in part due to the Defendants' knowing suppression of

3   important safety information.  Consequently, the discovery rule should be applied to toll the

4   running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable

5   diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

6        210.    After Defendants changed the TAXOTERE® prescription information in the

7   United States to include information about permanent alopecia in December 2015, there ensued

8   publicity and advertising related to permanent alopecia caused by TAXOTERE®. Plaintiffs, as a

9   result of the publicity and advertising, became aware of the failure to warn about permanent

10  alopecia by Sanofi, and the availability of an equally efficacious and less toxic alternative drug.

11  Plaintiffs acted with all reasonable diligence and speed upon discovering this information and

12  timely files the present complaint.

13

14                         **FIRST CLAIM FOR RELIEF**

15            **(Product Liability for Negligence – Against All Defendants)**

16       211.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

17  same force and effect as if fully set forth herein.

18       212.    Defendants had a duty to exercise reasonable care in the marketing, supplying,

19  promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce,

20  including a duty to assure that the product would not cause users to suffer unreasonable,

21  dangerous side effects.

22       213.    Defendants failed to exercise reasonable care in the marketing, supplying,

23  promoting, packaging, sale, and/or distribution of TAXOTERE® into interstate commerce in

24  that Defendants knew or should have known that using TAXOTERE® created a high risk of

25  unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting

26  in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of

27  life, economic loss, and loss of economic opportunity.

28

214. The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a) Selling TAXOTERE® without disclosing its dangers and risks;

(b) Negligently failing to adequately and correctly warn Plaintiffs, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

(c) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

(d) Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

(e) Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

(f) Negligently and falsely representing that TAXOTERE® was superior to other commercially available products to treat the same forms of cancer that TAXOTERE® was intended to treat;

(g) Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

(h) Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

215. Defendants underreported, underestimated and downplayed the serious dangers and risk associated with TAXOTERE®.

41

COMPLAINT AND DEMAND FOR JURY TRIAL

216. Defendants negligently conveyed that the safety risks and/or dangers of TAXOTERE® were comparable with other forms of treatment for the same conditions for which TAXOTERE® was prescribed to treat.

217. Defendants were negligent in the researching, supplying, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

    (a)    Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of TAXOTERE®;

    (b)    Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with TAXOTERE®;

    (c)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

    (d)    Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

    (e)    Failed to conduct adequate post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®.

    (f)    Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

    (g)    Were otherwise careless and/or negligent.

218. Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, namely the serious risk of developing disfiguring permanent alopecia, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiffs.

42

COMPLAINT AND DEMAND FOR JURY TRIAL

219.    Defendants negligently and improperly failed to perform sufficient post-market tests and surveillance, forcing Plaintiffs, Plaintiffs' physicians, and hospital to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was meant to treat.

220.    Defendants knew or should have known that consumers such as Plaintiffs would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

221.    Defendants' negligence was the proximate cause of Plaintiffs' injuries, harms, damages, and losses.

222.    As a direct and proximate result of the use of TAXOTERE®, Plaintiffs experienced disfiguring permanent alopecia.

223.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn – Against All Defendants)

224.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

225.    The TAXOTERE® that Defendants sold, marketed, distributed, supplied and placed into the stream of commerce was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given

Doc# 1 Page# 46 - Doc ID = 1720725971 - Doc Type = OTHER

1    by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity,

2    or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

3          226.    Winthrop U.S. is a business unit or division operating of Sanofi. As the holder for

4    the Reference Listed Drug ("RLD") of brand-name TAXOTERE®, the Sanofi Defendants

5    supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. All of the labeling

6    for the generic version was also defective because it failed to adequately warn of the risk of

7    disfiguring permanent alopecia.

8          227.    Defendants failed to provide adequate warnings to physicians and users,

9    including Plaintiffs' physicians and Plaintiffs, of the increased risk of disfiguring permanent

10    alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently

11    promoted the product to physicians.

12          228.    As a direct and proximate result of Defendants' failure to warn of the potentially

13    severe adverse effects of TAXOTERE®, Plaintiffs suffered disfiguring permanent alopecia and

14    other conditions.

15          229.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

16    suffer serious and dangerous side effects, severe and personal injuries that are permanent and

17    lasting in nature, and economic and non-economic damages, harms, and losses, including but not

18    limited to: past and future medical expenses; past and future loss of earnings; past and future

19    loss and impairment of earning capacity; permanent disfigurement including permanent

20    alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future

21    harm; past, present, and future physical and mental pain, suffering, and discomfort; and past,

22    present, and future loss and impairment of the quality and enjoyment of life.

23                                **THIRD CLAIM FOR RELIEF**

24                               **(Intentional Misrepresentation)**

25          230.    Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the

26    same force and effect as if fully set forth herein.

27          231.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs'

28    physicians, the medical and healthcare community, and the public in general that TAXOTERE®

Doc# 1 Page# 47 - Doc ID = 1720725971 - Doc Type = OTHER

1    had been tested and was found to be safe and effective for the treatment of certain forms of

2    cancer.

3       232. When warning of safety and risks of TAXOTERE®, Defendants fraudulently

4    represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

5    public in general that TAXOTERE® had been tested and was found to be safe and/or effective

6    for its indicated use.

7       233. Defendants concealed their knowledge of TAXOTERE®'s defects from

8    Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

9    specifically including, but not limited to, concealing their knowledge of the risk of developing

10   disfiguring permanent alopecia.

11      234. Defendants concealed their knowledge of the defects in their products from

12   Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

13      235. Defendants made these false representations with the intent of defrauding and

14   deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare

15   community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs'

16   physicians, the public in general, and the medical community in particular, to recommend,

17   dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer,

18   including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

19   wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

20      236. Defendants made these false representations with the intent of defrauding and

21   deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and

22   healthcare community in particular, and were made with the intent of inducing the public in

23   general, and the medical community in particular, to recommend, dispense, and/or purchase

24   TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to

25   breast cancer.

26      237. When Defendants made these representations, Defendants knew those

27   representations were false, and Defendants willfully, wantonly, and recklessly disregarded

28   whether the representations were true.

<div align="center">

45

COMPLAINT AND DEMAND FOR JURY TRIAL
</div>

238.   At the time Defendants made the aforesaid representations, and, at the time Plaintiffs used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

239.   In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiffs to sustain severe, permanent, and disfiguring personal injuries.

240.   Defendants knew and were aware or should have been aware that lacked adequate and/or sufficient warnings.

241.   Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE®, including, but not limited to, the development of permanent disfiguring alopecia, and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

242.   Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

243.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF

### (Concealment – Against Sanofi Defendants)

244.   Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

46

COMPLAINT AND DEMAND FOR JURY TRIAL

245.    At all times during the course of dealing between Sanofi Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the effectiveness and safety of TAXOTERE® for its intended use.

246.    Sanofi Defendants knew or were reckless in not knowing that its representations were false.

247.    In representations made to Plaintiffs and Plaintiffs' healthcare providers, Sanofi Defendants fraudulently concealed and intentionally omitted the following material information:

    (a)    that TAXOTERE® was not as safe as other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

    (b)    that the risks of adverse events with TAXOTERE® were higher than those with other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

    (c)    that the risks of adverse events with TAXOTERE® were not adequately tested and/or known by Defendants;

    (d)    that Defendants were aware of dangers in TAXOTERE®, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

    (e)    that TAXOTERE® was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

248.    Sanofi Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

249.    Sanofi Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, including, but not limited to, disfiguring permanent alopecia, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

47

COMPLAINT AND DEMAND FOR JURY TRIAL

250. Sanofi Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

251. Sanofi Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

252. Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Sanofi Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

253. As a result of the foregoing acts and omissions, Sanofi Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation – Against All Defendants)

254. Plaintiffs repeat, reiterate, and re-allege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

255. Defendants sold the TAXOTERE® that Plaintiff's physician prescribed for Plaintiffs and that Plaintiffs used.

256. Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

48

COMPLAINT AND DEMAND FOR JURY TRIAL

257. Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

258. Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

259. As a purchasers or users, Plaintiffs reasonably relied on the misrepresentation.

## SIXTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)

260. Plaintiffs repeat, reiterate, and reallege all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

261. Defendants' conduct, as set forth above, was extreme and outrageous.

262. Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

263. Defendants' conduct caused Plaintiffs severe emotional distress.

264. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF

### (Loss of Consortium)

49

COMPLAINT AND DEMAND FOR JURY TRIAL

265.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

266.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

267.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

268.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

269.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

270.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, all California Plaintiffs demand judgment against Defendants SANOFI U.S. SERVICES INC., formerly known as SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., SANDOZ, INC.,  McKESSON CORPORATION doing business as McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC., SANDOZ, INC.,  and ACCORD HEALTHCARE, INC. All non-California plaintiffs demand judgment against Defendant McKESSON CORPORATION doing business as McKESSON PACKAGING. The extreme and outrageous conduct of the Defendants

50

COMPLAINT AND DEMAND FOR JURY TRIAL

1  was done with conscious disregard for causing Plaintiffs to suffer injury, justifying an award of

2  exemplary and punitive damages in an amount to be determined at trial by the trier of fact for her

3  injuries, harms, damages, and losses as set forth above. Plaintiffs also seek special damages,

4  costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other

5  injuries and damages as shall be proven at trial, and such other further relief as the Court may

6  deem appropriate, just, and proper.

7  <div align="center">**JURY DEMAND**</div>

8      Plaintiff demands a trial by jury on all issues so triable.

9

10  DATED:  December 12, 2017        Respectfully submitted,

11

12          **NAPOLI SHKOLNIK, PLLC**

13          By:

14

15          Jennifer Liakos
        *Attorney for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">51

COMPLAINT AND DEMAND FOR JURY TRIAL</div>

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, S   ·number, and address):*
Jennifer Liakos, Esq., SBN 207487
Napoli Shkolnik
525 S. Douglas St., Suite 260
El Segundo, CA 90245
TELEPHONE NO.: 310-331-8224        FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff

FOR COURT USE ONLY

**FILED**
Superior Court of California
County of Los Angeles

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shahna Golden

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District

CASE NAME:
Villegas v. Sanofi U.S. Services Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC 686617 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/11/2017
Jennifer Liakos
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Doc# 1 Page# 55 – Doc ID = 1720725971 – Doc Type = OTHER

BY FAX

ORIGINAL

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SHORT TITLE: Villegas v. Sanofi U.S. Services Inc., et al. | CASE NUMBER BC 6 8 6 6 1 7 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☑ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 2, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| LACIV 109 (Rev 2/16)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM**<br>**AND STATEMENT OF LOCATION** | Local Rule 2.3<br>Page 1 of 4 |
|---|---|---|



| SHORT TITLE: | Villegas v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)          **CIVIL CASE COVER SHEET ADDENDUM**          Local Rule 2.3
LASC Approved 03-04          **AND STATEMENT OF LOCATION**          Page 2 of 4

Doc# 1 Page# 58 - Doc ID = 1720725971 - Doc Type = OTHER

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Villegas v. Sanofi U.S. Services Inc., et al. | |

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

Doc# 1 Page# 59 - Doc ID = 1720725971 - Doc Type = OTHER

| SHORT TITLE: Villegas v. Sanofi U.S. Services Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☐ 2. ☐ 3. ☒ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: 1617 257th St., Apt. 3 |
|---|---|

| CITY: Harbor City | STATE: CA | ZIP CODE: 90710 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the <u>Central</u> District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 12/11/2017

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

Doc# 1 Page# 60 - Doc ID = 1720725971 - Doc Type = OTHER