ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
CALENDAR: D
PAGE 1 of 85
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| VIRGIE ANDERSON; FERIAL ALAWAR; LINDA D. ABRAMS; CATHY ANDERSON; JERRY ANDERSON; LORETTA ANDERSON; ROSE ANDERSON; JANET ANNE BLOOM; JUDY BONB; GENEVA BOUNDS; BEVERLY BREAUX; LINDA BROADIE; VANETTA BROWN; DELLA BUCKLEY; HELEN BUNCHE; FRANCIS CARROLL; LINDA CARROLL; CLARA CARSON; BRENDA K. CARTER; MARY K. CARTER; PAULETTE CARTER; JUANITA CHAMBERS; CYNTHIA CHAPMAN; GLORIA J. CHARETTE; MARY Y. CHARLESTON; MELODY CLARK; MARY COLLINS; ASHLEY CONWAY; MAXINE CRAFTON; DAWN CREECH; CHRISTIANNA CROCKETT; VIVIAN L. CROSBY; CAROL A. CRUMBLIN; YOLANDA DANKINS; SANDRA DANTZLER; MARY B DAVENPORT; DOROTHY L. DAVIS; JENNIFER DAVIS; REGINA DAVIS; RUBY L. DAVIS; CHARMAINE DIXON; DOROTHY DIXON; SELINA M. DIXON; FRANCES M. DOUGAN; JENNIFER W. EDWARDS; GEORGETTE ENWRIGHT; CAROLYN K. ESTES; ERMA FARRINGTON; MARY FAULKNER; and MARTHA A. FOSTER, <br><br> Plaintiffs, <br><br> v. <br><br> SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC.; SANOFI-AVENTIS U.S. LLC, separately, and doing business as WINTHROP U.S.; HOSPIRA, INC.; HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.; McKESSON CORPORATION doing business as McKESSON PACKAGING; SANDOZ INC.; ACCORD HEALTHCARE LTD.; ACCORD HEALTHCARE, INC.; and DOES, INC., <br><br> Defendants. | C.A. No. <br> Jury Trial Demanded <br><br> **COMPLAINT AND** <br> **JURY DEMAND** |

## COMPLAINT

Plaintiffs who are residents of Illinois, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

Plaintiffs who are not Illinois residents, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., and allege the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE ACTION

1.      This action seeks to recover damages for injuries sustained by Plaintiffs as the direct and proximate result of the wrongful conduct of Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing business as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

2.      Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 2 of 85

2

distributed by Defendants. Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated." In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not. Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

3.       As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, manufacturing, promotion, and sale of TAXOTERE®.

## JURISDICTION AND VENUE

4.       Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over the Defendants, because Defendants are present in the State of Illinois, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

5.       This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

   a)  Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 3 of 85

3

b) Defendants committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

c) Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

d) Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

e) Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and;

f) Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

6.      Defendants marketed, promoted, and sold Taxotere throughout the United States, including Cook County, Illinois. Accordingly, venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

7.      Venue is proper in Cook County pursuant to 735 ILCS 5/2-101(2), because the transactions occurred out of which the causes of action arose were located in Cook County. Defendants marketed, advertised, and distributed the dangerous Taxotere product in Cook County, the County in which Plaintiff Virgie Anderson resides. Plaintiff's harms, losses, and damages occurred in Cook County; Defendants do substantial business in the State of Illinois and within Cook County; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold TAXOTERE® in interstate commerce.

8.      Complete diversity of citizenship does not exist because multiple Plaintiffs are citizens and residents of the same state in which Defendants have located and maintain their principal place of business.

9.      The amount in controversy exceeds fifty thousand dollars ($50,000.00), exclusive of interest and costs, the jurisdictional minimum of this Court.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 4 of 85

4

## COMMON ALLEGATIONS

A.     PARTIES

10.     Upon investigation and belief, Plaintiff VIRGIE ANDERSON is and was at arelevant times a citizen and resident of the State of Illinois, County of Cook, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff VIRGIE ANDERSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11.     Upon investigation and belief, Plaintiff FERIAL ALAWAR is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.FERIAL ALAWAR has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

12.     Upon investigation and belief, Plaintiff LINDA D. ABRAMS is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC. LINDA D. ABRAMS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

13.     Upon investigation and belief, Plaintiff CATHY ANDERSON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 5 of 85

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CATHY ANDERSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

14.     Upon investigation and belief, Plaintiff JERRY ANDERSON is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JERRY ANDERSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

15.     Upon investigation and belief, Plaintiff LORETTA ANDERSON is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.LORETTA ANDERSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

16.     Upon investigation and belief, Plaintiff ROSE ANDERSON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.ROSE ANDERSON has suffered damages as a result

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 6 of 85

6

of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

17. Upon investigation and belief, Plaintiff JANET ANNE BLOOM is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff JANET ANNE BLOOM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18. Upon investigation and belief, Plaintiff JUDY BONB is and was at all relevant times a citizen and resident of the state of Minnesota, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JUDY BONB has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

19. Upon investigation and belief, Plaintiff GENEVA BOUNDS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.GENEVA BOUNDS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

20. Upon investigation and belief, Plaintiff BEVERLY BREAUX is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 7 of 85

7

TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.BEVERLY BREAUX has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

21.     Upon investigation and belief, Plaintiff LINDA BROADIE is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.LINDA BROADIE has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

22.     Upon investigation and belief, Plaintiff VANETTA BROWN is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff VANETTA BROWN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

23.     Upon investigation and belief, Plaintiff DELLA BUCKLEY is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DELLA BUCKLEY has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 8 of 85

8

WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

24.    Upon investigation and belief, Plaintiff HELEN BUNCHE is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.HELEN BUNCHE has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

25.    Upon investigation and belief, Plaintiff FRANCIS CARROLL is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.FRANCIS CARROLL has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

26.    Upon investigation and belief, Plaintiff LINDA CARROLL is and was at all relevant times a citizen and resident of the state of Connecticut, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.LINDA CARROLL has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

27.    Upon investigation and belief, Plaintiff CLARA CARSON is and was at all

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 9 of 85

9

relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CLARA CARSON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

28.    Upon investigation and belief, Plaintiff BRENDA K. CARTER is and was at all relevant times a citizen and resident of the state of District of Columbia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.BRENDA K. CARTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

29.    Upon investigation and belief, Plaintiff MARY K. CARTER is and was at all relevant times a citizen and resident of the state of Indiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY K. CARTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

30.    Upon investigation and belief, Plaintiff PAULETTE CARTER is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 10 of 85

10

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.PAULETTE CARTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

31.    Upon investigation and belief, Plaintiff JUANITA CHAMBERS is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JUANITA CHAMBERS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

32.    Upon investigation and belief, Plaintiff CYNTHIA CHAPMAN is and was at all relevant times a citizen and resident of the state of Wisconsin, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CYNTHIA CHAPMAN has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

33.    Upon investigation and belief, Plaintiff GLORIA J. CHARETTE is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.GLORIA J. CHARETTE has suffered damages as a

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 11 of 85

11

result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

34.    Upon investigation and belief, Plaintiff MARY Y. CHARLESTON is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY Y. CHARLESTON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 12 of 85

35.    Upon investigation and belief, Plaintiff MELODY CLARK is and was at all relevant times a citizen and resident of the state of Indiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MELODY CLARK has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

36.    Upon investigation and belief, Plaintiff MARY COLLINS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY COLLINS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

12

37. Upon investigation and belief, Plaintiff ASHLEY CONWAY is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.ASHLEY CONWAY has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

38. Upon investigation and belief, Plaintiff MAXINE CRAFTON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MAXINE CRAFTON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

39. Upon investigation and belief, Plaintiff DAWN CREECH is and was at all relevant times a citizen and resident of the state of Nevada, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DAWN CREECH has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

40. Upon investigation and belief, Plaintiff CHRISTIANNA CROCKETT is and was at all relevant times a citizen and resident of the state of Oklahoma, and was prescribed and

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 13 of 85

13

administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CHRISTIANNA CROCKETT has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

41.     Upon investigation and belief, Plaintiff VIVIAN L. CROSBY is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.VIVIAN L. CROSBY has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

42.     Upon investigation and belief, Plaintiff CAROL A. CRUMBLIN is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff CAROL A. CRUMBLIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

43.     Upon investigation and belief, Plaintiff YOLANDA DANKINS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.YOLANDA DANKINS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 14 of 85

14

illegal and wrongful conduct alleged herein.

44.    Upon investigation and belief, Plaintiff SANDRA DANTZLER is and was at all relevant times a citizen and resident of the state of Arizona, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.SANDRA DANTZLER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

45.    Upon investigation and belief, Plaintiff MARY B DAVENPORT is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY B DAVENPORT has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

46.    Upon investigation and belief, Plaintiff DOROTHY L. DAVIS is and was at all relevant times a citizen and resident of the state of District of Columbia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DOROTHY L. DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

47.    Upon investigation and belief, Plaintiff JENNIFER DAVIS is and was at all

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 15 of 85

15

relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JENNIFER DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

48.     Upon investigation and belief, Plaintiff REGINA DAVIS is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.REGINA DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

49.     Upon investigation and belief, Plaintiff RUBY L. DAVIS is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.RUBY L. DAVIS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

50.     Upon investigation and belief, Plaintiff CHARMAINE DIXON is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 16 of 85

16

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CHARMAINE DIXON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

51.     Upon investigation and belief, Plaintiff DOROTHY DIXON is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.DOROTHY DIXON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

52.     Upon investigation and belief, Plaintiff SELINA M. DIXON is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.SELINA M. DIXON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

53.     Upon investigation and belief, Plaintiff FRANCES M. DOUGAN is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.FRANCES M. DOUGAN has suffered damages as a result of Defendants

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 17 of 85

17

HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

54.     Upon investigation and belief, Plaintiff JENNIFER W. EDWARDS is and was at all relevant times a citizen and resident of the state of Alabama, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.JENNIFER W. EDWARDS has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

55.     Upon investigation and belief, Plaintiff GEORGETTE ENWRIGHT is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.GEORGETTE ENWRIGHT has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

56.     Upon investigation and belief, Plaintiff CAROLYN K. ESTES is and was at all relevant times a citizen and resident of the state of Arizona, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.CAROLYN K. ESTES has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 18 of 85

18

57. Upon investigation and belief, Plaintiff ERMA FARRINGTON is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.ERMA FARRINGTON has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

58. Upon investigation and belief, Plaintiff MARY FAULKNER is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARY FAULKNER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

59. Upon investigation and belief, Plaintiff MARTHA A. FOSTER is and was at all relevant times a citizen and resident of the state of Alaska, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.MARTHA A. FOSTER has suffered damages as a result of Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

60. Defendant Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 19 of 85

19

at 55 Corporate Dr., Bridgewater, NJ 08807.

61. Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

62. Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

63. Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc, and Sanofi-Aventis U.S. LLC, separately and doing business as Winthrop U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants."

64. Defendant Hospira, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

65. Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

66. Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

67. Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

68. Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.Defendant Sanofi-Aventis U.S. LLC is a

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 20 of 85

20

Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

69.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

70.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

71.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

72.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

73.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 21 of 85

21

agents, representatives and any and all other persons acting on their behalf.

74.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

75.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 22 of 85

## DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE®

76.     TAXOTERE® is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs commonly referred to as taxanes.

77.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic forms as well.

78.     TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

79.     The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein,

22

and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased potency taxane.

80. The initial patent disclosing the formulation and computation of TAXOTERE® was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March 1989.

81. In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

82. Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

83. Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

84. TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 23 of 85

23

to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

85.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®, which was the primary competitor product to TAXOTERE®.

86.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in California and around the country throughout this period. U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of TAXOTERE® at conferences including the annual meetings for the American Society of Clinical Oncology. McKesson continued this activity after it acquired U.S. Oncology in 2010.

87.     Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

88.     A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

89.     A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 24 of 85

24

more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

90.     Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus TAXOL®.  Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology. The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

91.     Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

92.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC)
> of the U.S. Food and Drug Administration (FDA) has reviewed a professional
> reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection
> Concentrate, Intravenous Infusion (docetaxel) submitted under cover of Form
> FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of
> Clinical Oncology annual meeting in June 2008. The reprint carrier includes a

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 25 of 85

25

reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

93.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

94.     Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 26 of 85

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.
[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

95.     As a direct result of their wrongful conduct and illegal kickback schemes,

Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased

toxicity as compared to other available less toxic products such as TAXOL®.

96.     As a direct result of their aforementioned conduct, Defendants caused

thousands of individuals to be exposed to increased frequency and more severe side effects,

including but not limited to disfiguring permanent alopecia (hair loss).

## B.     GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT

97.     Hospira Defendants filed for a NDA with the FDA for a generic non-

bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted

Hospira's NDA on or about March 8, 2011 and Hospira put the docetaxel anhydrous on the

market on or about March 8, 2011.

98.     Defendant McKesson filed an NDA with the FDA for a generic non-

bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted

McKesson's NDA on or about June 8, 2011, and McKesson put docetaxel anhydrous on the

market on or about June 8, 2011.

99.     Defendant Sandoz filed an NDA with the FDA for a generic non-

bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA

on or about July 22, 2015 and Sandoz put docetaxel on the market on or about July 22, 2015.

100.    Upon information and belief, Defendant Accord filed for two (3) NDAs

with the FDA for generic non-bioequivalents of Taxotere (docetaxel).

101.    Upon information and belief, Defendant Accord was approved by the

FDA for the first generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel on

or about June 30, 2011 and Accord put docetaxel on the market on or about June 30, 2011.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 27 of 85

27

102.     Defendant Accord was approved by the FDA for the second generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous (20 mg/0.5 mL and 80 mg/2 mL) on or about July 1, 2012 and Accord put docetaxel anhydrous on the market on or about July 1, 2012.

103.     Upon information and belief, Defendant Accord was approved by the FDA for the third generic non-bioequivalent of Taxotere (docetaxel) in another form of docetaxel anhydrous in a more concentrated form, on or about May 15, 2013 and Accord put the mor concentrated docetaxel anhydrous on the market on or about May 15, 2013.

## DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

104.     Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

105.     Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

106.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

107.     Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this

28

was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

108.    Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

109.    In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients had stopped taking TAXOTERE®.

110.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken TAXOTERE® and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering from permanent disfiguring hair loss.

111.    Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 29 of 85

29

Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking TAXOTERE®.

112.    Users of TAXOTERE® were not presented with the opportunity to make an informed choice as to whether the benefits of TAXOTERE® were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

113.    Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to TAXOTERE® and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States.

114.    As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

115.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

116.    Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 30 of 85

30

revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

117.    TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

118.    In other countries, Defendants published information to individual patients and regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

119.    In December 2015, the FDA changed the safety labeling for TAXOTERE® (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

120.    As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

121.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 31 of 85

31

decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

122.    Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

123.    Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## NATURE OF THE CLAIMS

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 32 of 85

124.    Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

125.    In particular, Defendants:

(a)    failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

(b)    failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

(c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permanent alopecia;

32


(d) failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of TAXOTERE®;

(e) failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

(f) failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of TAXOTERE®;

(g) failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h) failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i) failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 33 of 85

126. During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

127. Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

128. Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

129. Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

130. From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to

Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

131.    Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

132.    Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

133.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

134.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

135.    Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 34 of 85

34

permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

136.   In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective. This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

137.   Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

35

serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

138.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' TAXOTERE® or the true risks associated with her use at the time she purchased and used Defendants' TAXOTERE®.

139.    Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs has suffered and complained of herein.

140.    Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

141.    Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations, Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the

36

statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND
## RESULTING DISFIGURING PERMANENT ALOPECIA

142.    Plaintiff VIRGIE ANDERSON was diagnosed with breast cancer. Neither VIRGIE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VIRGIE ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VIRGIE ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

143.    Plaintiff LINDA D. ABRAMS was diagnosed with breast cancer. Neither LINDA D. ABRAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA D. ABRAMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA D. ABRAMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

144.    Plaintiff FERIAL ALAWAR was diagnosed with breast cancer. Neither FERIAL ALAWAR nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 37 of 85

37

Accordingly, FERIAL ALAWAR underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, FERIAL ALAWAR suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

145.    Plaintiff CATHY ANDERSON was diagnosed with breast cancer. Neither CATHY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CATHY ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CATHY ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

146.    Plaintiff JERRY ANDERSON was diagnosed with breast cancer. Neither JERRY ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JERRY ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JERRY ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

38

147.    Plaintiff LORETTA ANDERSON was diagnosed with breast cancer. Neither LORETTA ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LORETTA ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LORETTA ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

148.    Plaintiff ROSE ANDERSON was diagnosed with breast cancer. Neither ROSE ANDERSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ROSE ANDERSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ROSE ANDERSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

149.    Plaintiff JANET ANNE BLOOM was diagnosed with breast cancer. Neither JANET ANNE BLOOM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JANET ANNE BLOOM underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JANET ANNE BLOOM suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 39 of 85

39

As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

150. Plaintiff JUDY BONB was diagnosed with breast cancer. Neither JUDY BONB nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JUDY BONB underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JUDY BONB suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

151. Plaintiff GENEVA BOUNDS was diagnosed with breast cancer. Neither GENEVA BOUNDS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GENEVA BOUNDS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GENEVA BOUNDS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

152. Plaintiff BEVERLY BREAUX was diagnosed with breast cancer. Neither BEVERLY BREAUX nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with

40

TAXOTERE®. Accordingly, BEVERLY BREAUX underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BEVERLY BREAUX suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

153. Plaintiff LINDA BROADIE was diagnosed with breast cancer. Neither LINDA BROADIE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA BROADIE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA BROADIE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

154. Plaintiff VANETTA BROWN was diagnosed with breast cancer. Neither VANETTA BROWN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VANETTA BROWN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VANETTA BROWN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 41 of 85

41

155.   Plaintiff DELLA BUCKLEY was diagnosed with breast cancer. Neither DELLA BUCKLEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DELLA BUCKLEY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DELLA BUCKLEY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

156.   Plaintiff HELEN BUNCHE was diagnosed with breast cancer. Neither HELEN BUNCHE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, HELEN BUNCHE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, HELEN BUNCHE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

157.   Plaintiff FRANCIS CARROLL was diagnosed with breast cancer. Neither FRANCIS CARROLL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, FRANCIS CARROLL underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, FRANCIS CARROLL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 42 of 85

42

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

158.    Plaintiff LINDA CARROLL was diagnosed with breast cancer. Neither LINDA CARROLL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA CARROLL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA CARROLL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

159.    Plaintiff CLARA CARSON was diagnosed with breast cancer. Neither CLARA CARSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CLARA CARSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CLARA CARSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

160.    Plaintiff BRENDA K. CARTER was diagnosed with breast cancer. Neither BRENDA K. CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, BRENDA K. CARTER underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, BRENDA K. CARTER suffered

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 43 of 85

from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

161.    Plaintiff MARY K. CARTER was diagnosed with breast cancer. Neither MARY K. CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY K. CARTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY K. CARTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

162.    Plaintiff PAULETTE CARTER was diagnosed with breast cancer. Neither PAULETTE CARTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, PAULETTE CARTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PAULETTE CARTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

163.    Plaintiff JUANITA CHAMBERS was diagnosed with breast cancer. Neither JUANITA CHAMBERS nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 44 of 85

44

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JUANITA CHAMBERS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JUANITA CHAMBERS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

164.    Plaintiff CYNTHIA CHAPMAN was diagnosed with breast cancer. Neither CYNTHIA CHAPMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CYNTHIA CHAPMAN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CYNTHIA CHAPMAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

165.    Plaintiff GLORIA J. CHARETTE was diagnosed with breast cancer. Neither GLORIA J. CHARETTE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GLORIA J. CHARETTE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GLORIA J. CHARETTE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 45 of 85

45

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

166.     Plaintiff MARY Y. CHARLESTON was diagnosed with breast cancer. Neither MARY Y. CHARLESTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.     Accordingly, MARY Y. CHARLESTON underwent chemotherapy that included TAXOTERE®.     Following the completion of chemotherapy, MARY Y. CHARLESTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

167.     Plaintiff MELODY CLARK was diagnosed with breast cancer. Neither MELODY CLARK nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.     Accordingly, MELODY CLARK underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MELODY CLARK suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

168.     Plaintiff MARY COLLINS was diagnosed with breast cancer. Neither MARY COLLINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 46 of 85

46

Accordingly, MARY COLLINS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY COLLINS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

169.   Plaintiff ASHLEY CONWAY was diagnosed with breast cancer. Neither ASHLEY CONWAY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ASHLEY CONWAY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ASHLEY CONWAY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

170.   Plaintiff MAXINE CRAFTON was diagnosed with breast cancer. Neither MAXINE CRAFTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MAXINE CRAFTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MAXINE CRAFTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 47 of 85

47

171.    Plaintiff DAWN CREECH was diagnosed with breast cancer. Neither DAWN CREECH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DAWN CREECH underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DAWN CREECH suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

172.    Plaintiff CHRISTIANNA CROCKETT was diagnosed with breast cancer. Neither CHRISTIANNA CROCKETT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHRISTIANNA CROCKETT underwent chemotherapy that included TAXOTERE®.    Following the completion of chemotherapy, CHRISTIANNA CROCKETT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

173.    Plaintiff VIVIAN L. CROSBY was diagnosed with breast cancer. Neither VIVIAN L. CROSBY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VIVIAN L. CROSBY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VIVIAN L. CROSBY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 48 of 85

48

As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

174.    Plaintiff CAROL A. CRUMBLIN was diagnosed with breast cancer. Neither CAROL A. CRUMBLIN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CAROL A. CRUMBLIN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CAROL A. CRUMBLIN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

175.    Plaintiff YOLANDA DANKINS was diagnosed with breast cancer. Neither YOLANDA DANKINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, YOLANDA DANKINS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, YOLANDA DANKINS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

176.    Plaintiff SANDRA DANTZLER was diagnosed with breast cancer. Neither SANDRA DANTZLER nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 49 of 85

49

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SANDRA DANTZLER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SANDRA DANTZLER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

177.   Plaintiff MARY B DAVENPORT was diagnosed with breast cancer. Neither MARY B DAVENPORT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY B DAVENPORT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY B DAVENPORT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

178.   Plaintiff DOROTHY L. DAVIS was diagnosed with breast cancer. Neither DOROTHY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DOROTHY L. DAVIS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DOROTHY L. DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 50 of 85

50

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

179.   Plaintiff JENNIFER DAVIS was diagnosed with breast cancer. Neither JENNIFER DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, JENNIFER DAVIS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JENNIFER DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

180.   Plaintiff REGINA DAVIS was diagnosed with breast cancer. Neither REGINA DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, REGINA DAVIS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, REGINA DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

181.   Plaintiff RUBY L. DAVIS was diagnosed with breast cancer. Neither RUBY L. DAVIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, RUBY L. DAVIS underwent chemotherapy that included TAXOTERE®.

ELECTRONICALLY FILED 12/13/2017 1:33 PM 2017-L-012694 PAGE 51 of 85

51

Following the completion of chemotherapy, RUBY L. DAVIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

182.    Plaintiff CHARMAINE DIXON was diagnosed with breast cancer. Neither CHARMAINE DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHARMAINE DIXON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CHARMAINE DIXON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

183.    Plaintiff DOROTHY DIXON was diagnosed with breast cancer. Neither DOROTHY DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DOROTHY DIXON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DOROTHY DIXON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 52 of 85

52

184.    Plaintiff SELINA M. DIXON was diagnosed with breast cancer. Neither SELINA M. DIXON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SELINA M. DIXON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SELINA M. DIXON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

185.    Plaintiff FRANCES M. DOUGAN was diagnosed with breast cancer. Neither FRANCES M. DOUGAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, FRANCES M. DOUGAN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, FRANCES M. DOUGAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

186.    Plaintiff JENNIFER W. EDWARDS was diagnosed with breast cancer. Neither JENNIFER W. EDWARDS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.    Accordingly, JENNIFER W. EDWARDS underwent chemotherapy that included TAXOTERE®.    Following the completion of chemotherapy, JENNIFER W. EDWARDS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 53 of 85

53

with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

187. Plaintiff GEORGETTE ENWRIGHT was diagnosed with breast cancer. Neither GEORGETTE ENWRIGHT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GEORGETTE ENWRIGHT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GEORGETTE ENWRIGHT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

188. Plaintiff CAROLYN K. ESTES was diagnosed with breast cancer. Neither CAROLYN K. ESTES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CAROLYN K. ESTES underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CAROLYN K. ESTES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

189. Plaintiff ERMA FARRINGTON was diagnosed with breast cancer. Neither ERMA FARRINGTON nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 54 of 85

54

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ERMA FARRINGTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ERMA FARRINGTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

190. Plaintiff MARY FAULKNER was diagnosed with breast cancer. Neither MARY FAULKNER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY FAULKNER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY FAULKNER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

191. Plaintiff MARTHA A. FOSTER was diagnosed with breast cancer. Neither MARTHA A. FOSTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARTHA A. FOSTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARTHA A. FOSTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 55 of 85

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

192.    Plaintiffs repeat, reiterates, and re-alleges all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

193.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

194.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of TAXOTERE® into interstate commerce in that Defendants knew or should have known that using TAXOTERE® created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

195.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

> a) Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without thoroughly testing it;
>
> b) Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without adequately testing it;
>
> c) Not conducting sufficient testing programs to determine whether or not TAXOTERE® was safe for use in that Defendants knew or should have known that TAXOTERE® was unsafe and unfit for use by reason of the dangers to its users;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 56 of 85

56

d) Selling TAXOTERE® without disclosing its dangers and risks and/or making proper and sufficient tests to determine the dangers and risks to its users;

e) Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

g) Failing to test TAXOTERE® and/or failing to adequately, sufficiently, and properly test TAXOTERE®;

h) Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

i) Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

j) Negligently and falsely representing that TAXOTERE® was superior to other commercially available products designed to treat the same forms of cancer TAXOTERE® was designed to treat;

k) Negligently designing TAXOTERE® in a manner that was dangerous to its users;

l) Negligently manufacturing TAXOTERE® in a manner that was dangerous to its users;

m) Negligently producing TAXOTERE® in a manner that was dangerous to its users;

n) Negligently assembling TAXOTERE® in a manner that was dangerous to its users;

o) Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

p) Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 57 of 85

57

196.    Defendants underreported, underestimated, and downplayed the serious dangers

and risk associated with TAXOTERE®.

197.    Defendants negligently conveyed that the safety risks and/or dangers of

TAXOTERE® were comparable with other forms of treatment for the same conditions for which

TAXOTERE® was prescribed to treat.

198.    Defendants were negligent in the designing, researching, supplying,

manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and

selling of TAXOTERE® in that they:

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 58 of 85

a)  Failed to use due care in designing and manufacturing TAXOTERE® so as to avoid
    the aforementioned risks to individuals when TAXOTERE® was used for the
    treatment of breast cancer;

b)  Failed to accompany their product with proper and/or accurate warnings regarding all
    possible adverse side effects associated with the use of TAXOTERE®;

c)  Failed to accompany their product with proper warnings regarding all possible
    adverse side effects concerning the risks and dangers associated with TAXOTERE®;

d)  Failed to accompany their product with accurate warnings regarding the risks of all
    possible adverse side effects concerning TAXOTERE®;

e)  Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of
    such adverse effects, as the warnings given did not accurately reflect the symptoms,
    or severity, of the side effects;

f)  Failed to conduct adequate testing, including pre-clinical and clinical testing and
    post-marketing surveillance, to determine the safety, dangers, and risks associated
    with TAXOTERE®;

g)  Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the
    sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the
    need for more comprehensive and regular medical monitoring than usual to ensure
    early discovery of potentially serious side effects; and

h)  Were otherwise careless and/or negligent.

199.     Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiff.

200.     Defendants negligently and improperly failed to perform sufficient tests, forcing Plaintiffs, Plaintiffs' physicians, and/or hospitals to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was designed to treat.

201.     Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

202.     Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

203.     As a direct and proximate result of the use of TAXOTERE®, Plaintiff experienced disfiguring permanent alopecia.

204.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 59 of 85

## SECOND CLAIM FOR RELIEF
### (Strict Products Liability – Design and Manufacturing Defects – Against All Defendants)

205. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

206. At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiffs.

207. TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

208. At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

209. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

210. TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

211. At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

212. Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 60 of 85

60

213. At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

214. Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiffs.

215. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

216. In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

217. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

218. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

219. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiffs in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs.

220. Plaintiffs and Plaintiffs' physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

221. The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 61 of 85

61

222.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

223.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

224.    By reason of the foregoing, Defendants are strictly liable to Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

225.    Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

226.    The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiffs' injuries.

227.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 62 of 85

62

## THIRD CLAIM FOR RELIEF
**(Strict Products Liability – Failure to Warn– Against All Defendants)**

228.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

229.   The TAXOTERE® designed, formulated, produced, manufactured, sold,

marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was

defective in that it failed to include adequate warnings regarding all adverse side effects

associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently

and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and,

in particular, the risks of disfiguring permanent alopecia. As the holder for the RLD of brand-

name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic

version of TAXOTERE®. This labeling was defective because it failed to adequately warn of the

risk of disfiguring permanent alopecia.

230.   Defendants failed to provide adequate warnings to physicians and users,

including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent

alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted

the product to physicians.

231.   As a direct and proximate result of Defendants' failure to warn of the

potentially severe adverse effects of TAXOTERE®, Plaintiffs suffer from disfiguring permanent

alopecia and other conditions.

232.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff

to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

lasting in nature, and economic and non-economic damages, harms, and losses, including but not

limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 63 of 85

63

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty – Against All Defendants)

233.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

234.    Defendants expressly warranted that TAXOTERE® was safe and well accepted by users.

235.    TAXOTERE® does not conform to these express representations, because TAXOTERE® is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.

236.    As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, harms, and losses.

237.    Plaintiffs relied on Defendants' express warranties.

238.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of TAXOTERE® in recommending, prescribing, and/or dispensing TAXOTERE®. Defendants breached the aforesaid express warranties, as their drug TAXOTERE® was and is defective.

239.    Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, and/or healthcare providers that TAXOTERE® was safe and fit for use for the purposes intended, that it

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 64 of 85

64

was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

240.    Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that TAXOTERE® was not safe and fit for the use intended, and, in fact, TAXOTERE® produced serious injuries to the users that were not accurately identified and represented by Defendants.

241.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 65 of 85

## FIFTH CLAIM FOR RELIEF
### (Breach of Implied Warranty – Against All Defendants)

242.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

243.    At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® and/or have recently acquired the entities that have manufactured, compounded, portrayed, distributed,

65

recommended, merchandized, advertised, promoted, and sold TAXOTERE® for the treatment of various forms of cancer.

244. At the time Defendants marketed, sold, and distributed TAXOTERE® for use by Plaintiff, Defendants knew of the use for which TAXOTERE® was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

245. Defendants impliedly represented and warranted to the users of TAXOTERE® and their physicians, and/or healthcare providers that TAXOTERE® was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

246. Defendants' aforementioned representations and warranties were false, misleading, and inaccurate in that TAXOTERE® was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

247. Plaintiffs, Plaintiffs' physicians, members of the medical community, and healthcare professionals relied on this implied warranty of merchantability of fitness for a particular use and purpose.

248. Plaintiffs, Plaintiffs' physicians, and Plaintiff's healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether TAXOTERE® was of merchantable quality and safe and fit for its intended use.

249. TAXOTERE® was placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 66 of 85

66

250.    TAXOTERE® was expected to and did reach users, handlers, and persons coming into contact with TAXOTERE® without substantial change in the condition in which it which it was sold.

251.    Defendants breached the aforementioned implied warranties, as their drug TAXOTERE® was not fit for its intended purposes and uses.

252.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 67 of 85

## SIXTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation – Against All Defendants)

253.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

254.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

255.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

67

public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

256.     Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

257.     Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

258.     Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

259.     Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

260.     When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

68

261. At the time Defendants made the aforesaid representations, and, at the time Plaintiff used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

262. In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

263. Defendants knew and were aware or should have been aware that TAXOTERE® had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

264. Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE® and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

265. Defendants brought TAXOTERE® to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

266. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 69 of 85

69

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality
and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF
## (Fraudulent Concealment – Against All Defendants)

267. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

268. At all times during the course of dealing between Defendants and Plaintiffs and

Plaintiffs' healthcare providers, Defendants misrepresented the design characteristics and safety

of TAXOTERE® for its intended use.

269. Defendants knew or were reckless in not knowing that its representations were

false.

270. In representations made to Plaintiffs and Plaintiffs' healthcare providers,

Defendants fraudulently concealed and intentionally omitted the following material information:

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 70 of 85

q) that TAXOTERE® was not as safe as other forms of treatment for which
TAXOTERE® was marketed and sold to cancer patients;

r) that the risks of adverse events with TAXOTERE® were higher than those
with other forms of treatment for which TAXOTERE® was marketed and
sold to cancer patients;

s) that the risks of adverse events with TAXOTERE® were not adequately
tested and/or known by Defendants;

t) that Defendants were aware of dangers in TAXOTERE®, in addition to and
above and beyond those associated with other forms of treatment for cancer
patients;

u) that TAXOTERE® was defective in that it caused dangerous side effects as
well as other severe and permanent health consequences in a much more and
significant rate than other forms of treatment for cancer patients;

v) that TAXOTERE® was manufactured negligently;

70

w) that TAXOTERE® was manufactured defectively;

x) that TAXOTERE® was manufactured improperly;

y) that TAXOTERE® was designed negligently;

z) that TAXOTERE® was designed defectively; and

aa) that TAXOTERE® was designed improperly.

271.    Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

272.    Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

273.    Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

274.    Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 71 of 85

71

275. Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

276. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer from serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## EIGHTH CLAIM FOR RELIEF
### (Negligence Misrepresentation – Against All Defendants)

277. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

278. Defendants had a duty to represent to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and found to be safe and effective for the treatment of various forms of cancer.

279. When warning of safety and risks of TAXOTERE®, Defendants negligently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

72

280.    Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

281.    Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

282.    Defendants misrepresented the novel nature of their product in order to gain a market advantage resulting in billions of dollars in revenues at the expense of vulnerable cancer victims such as Plaintiffs.

283.    Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

284.    Defendants failed to exercise ordinary and reasonable care in their representations of TAXOTERE® while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented TAXOTERE®'s high risk of unreasonable, dangerous side effects.

285.    Defendants breached their duty in misrepresenting TAXOTERE®'s serious side effects to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, the FDA, and the public in general.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 73 of 85

73

286.    Plaintiffs and Plaintiffs' physicians reasonably relied on Defendants to fulfill their obligations to disclose all facts within their knowledge regarding the serious side effects of TAXOTERE®.

287.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 74 of 85

## NINTH CLAIM FOR RELIEF
**(Strict Product Liability for Misrepresentation – Against All Defendants)**

288.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

289.    Defendants sold the TAXOTERE® that Plaintiffs' physicians prescribed for Plaintiffs and that Plaintiffs used.

290.    Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

291.    Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

292.    Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

293.    As a purchaser or user, Plaintiffs reasonably relied on the misrepresentation.

294.    Plaintiffs are persons who would reasonably be expected to use, consume, or be affected by the TAXOTERE®.

295.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 75 of 85

## TENTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against All Defendants)

296.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

297.    Defendants committed fraud by omission in applying for and gaining patent protection for TAXOTERE® resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of TAXOTERE®.

298.    Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which TAXOTERE® was designed to treat. These fraudulent

representations were the proximal cause of Plaintiff's exposure to the side effects of TAXOTERE®.

299. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally distributed false information, including but not limited to assuring Plaintiffs, Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that TAXOTERE® was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

300. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians, healthcare professionals, and/or the public.

301. Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public to disseminate truthful information.

302. Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

303. The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

304. The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug TAXOTERE® was safe and effective for the treatment of various forms of cancer, including breast cancer.

305. The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug TAXOTERE®

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 76 of 85

76

carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions for which TAXOTERE® was designed to treat.

306.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was not injurious to the health and/or safety of its intended users.

307.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was no more injurious to the health and/or safety of its intended users as other forms of cancer treatments for which TAXOTERE® was designed to treat.

308.    These representations by Defendants were all false and misleading.

309.    Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that TAXOTERE® was not safe as a means of treatment for certain types of cancer for which TAXOTERE® was designed to treat.

310.    Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® not having dangerous and serious health and/or safety concerns.

311.    Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® being as safe as other products designed to treat the same conditions TAXOTERE® was designed to treat.

312.    It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 77 of 85

77

confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of TAXOTERE® and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use TAXOTERE®.

313.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment for certain types of cancer, including breast cancer.

314.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for which TAXOTERE® was designed to treat.

315.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present risks related to disfigurement secondary to permanent alopecia.

316.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present health and/or safety risks greater than other forms of treatment for the same conditions TAXOTERE® was designed to treat.

317.    Defendants made these and other representations with a pretense of actual knowledge when Defendants had no knowledge of the truth or falsity of these representations, and Defendants made these representations recklessly and without regard to the actual facts.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 78 of 85

78

318.    Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

319.    Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

320.    Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe TAXOTERE®.

321.    Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of TAXOTERE® to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

322.    Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to TAXOTERE®.

323.    Defendants willfully and intentionally failed to disclose the truth and material facts related to TAXOTERE® and made false representations with the purpose and design of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend TAXOTERE®.

324.    Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public,

ELECTRONICALLY FILED 12/13/2017 1:33 PM 2017-L-012694 PAGE 79 of 85

including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

325.    Plaintiffs and/or Plaintiffs' respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how TAXOTERE® would treat certain forms of cancer for which TAXOTERE® was designed to treat.

326.    At the time Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of TAXOTERE®.

327.    Plaintiffs and their healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of TAXOTERE®, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

328.    Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of TAXOTERE®, Plaintiffs would not have purchased, used, and/or relied on Defendants' drug TAXOTERE®.

329.    Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

330.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 80 of 85

past and future loss of earnings; past and future loss and impairment of earning capacity;

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

and enjoyment of life.

## ELEVENTH CLAIM FOR RELIEF
**(Violation of the Illinois Consumer Protection Act – Against All Defendants)**

331. Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

332. Defendants have a statutory duty to refrain from making false and/or fraudulent

representations and/or from engaging in deceptive acts or practices in the sale and promotion of

TAXOTERE® pursuant to the Illinois Consumer Protection Act, 815 ILCS 505 *et seq.*

333. Defendants engaged in unfair, deceptive, false, and/or fraudulent acts and/or trade

practices in violation of the Illinois Consumer Protection Act, including but not limited to:

> bb) Publishing instructions and product material containing inaccurate and incomplete factual information regarding TAXOTERE®;
>
> cc) Misrepresenting the nature, quality, and characteristics of TAXOTERE®;
>
> dd) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding;
>
> ee) Misrepresenting the alleged benefits of TAXOTERE®;
>
> ff) Failing to disclose material information concerning known side effects of TAXOTERE®;
>
> gg) Misrepresenting the quality of TAXOTERE®; and
>
> hh) Uniformly communicating the purported benefits of TAXOTERE® while failing to disclose the serious and dangerous side-effects related to the use of TAXOTERE® and its safety, efficacy, and usefulness.

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 81 of 85

334.     Defendants' conduct in connection with TAXOTERE® was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of TAXOTERE®.

335.     These deceptive trade practices occurred in the course of Defendants' business.

336.     These deceptive trade practices significantly impacted Plaintiff and the public as actual or potential consumers of Defendants' product TAXOTERE®.

337.     Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

338.     Plaintiffs were an actual consumer of Defendants' product TAXOTERE®.

339.     Defendants' conduct as described above was a material cause of Plaintiffs decisions to purchase TAXOTERE®.

340.     As a direct, foreseeable, and proximate cause of Defendants' deceptive trade practices, Plaintiffs suffered actual damages, including personal injuries, economic damages, and non-economic damages.

341.     Defendants' conduct was wanton, egregious, and reckless.

342.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity;

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 82 of 85

82

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

343.     As a result of the foregoing acts, omissions, and wrongful conduct of Defendants, Plaintiffs are entitled to treble damages, attorneys' fees, and costs.

## TWELFTH CLAIM FOR RELIEF
### (Loss of Consortium)

344.     Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

345.     Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

346.     This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

347.     Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

348.     Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

349.     By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care,

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 83 of 85

assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, instate Plaintiffs demand judgment against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper. Out of state Plaintiffs demand judgment against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

84

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  December 13, 2017                    Respectfully submitted,

**NAPOLI SHKOLNIK, PLLC**

By: /s/ Paul J. Napoli
Paul J. Napoli, #6307568
Mark Twain Plaza II
103 West Vandalia Street, Suite 125
Edwardsville, IL 62025
Tel: (618) 307-4528
PNapoli@NapoliLaw.com
**ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
12/13/2017 1:33 PM
2017-L-012694
PAGE 85 of 85

85

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
CALENDAR: R
PAGE 1 of 84
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| AMELIA GREEN; AUDREY FRIDIA; LINDA FULLMORE; MIKKI GARZA; JEANNIE GERBER; PAMELA GERVIN; PHYLLIS M. GILL; SALLIE R. GORE; SHELBY GRANT; ROBYN GREER; CHARLOTTE GUNN; TANYA GURNEY; DORCILLE HADLEY; GLENDA HAMNER; BEVERLY HARCOURT; BETTY HAWKINS; NANCY HEARNE; LILLY HICKS; MOVELL HOLLOWAY; BENDETTA HOSNEY; ANNIE L. JACKSON; PEGGY JACKSON; WANDA JACKSON; ANITA JACOBS; CASSANDRA JOHNSON; TANYA JOHNSON; DEBORAH JOLLA; LILLIE JONES; CLEDELL KEMP; ANGELA ANITA LAMB; GWEN LANCE; MARY ANN LEACH; RACINE LESTER; CARMELITA LOVE; FELICIA MCCLINTON; REBECCA MCCOMBS; BRITTANY J. MEECE; DEBORAH MEYERS; CHERRITA MITCHELL; SHEILA MOORE; SYLVIA MORRIS; LINDA MOSSMAN; MARTHA MUNDELL; ANNE NAMISHIA; LORI NAVA; SHEILA OWENS; DELILAH PAM; MARY K. PAPOCCIA; BERNICE PEACHES; and CARLA PHELPS, | C.A. No.<br>Jury Trial Demanded<br><br>**COMPLAINT AND**<br>**JURY DEMAND** |

Plaintiffs,

v.

SANOFI U.S. SERVICES INC., formerly known as
SANOFI-AVENTIS U.S. INC.; SANOFI-AVENTIS
U.S. LLC, separately, and doing business as
WINTHROP U.S.; HOSPIRA, INC.; HOSPIRA
WORLDWIDE, LLC f/k/a HOSPIRA
WORLDWIDE, INC.; McKESSON
CORPORATION doing business as McKESSON
PACKAGING; SANDOZ INC.; ACCORD
HEALTHCARE LTD.; ACCORD HEALTHCARE,
INC.; and DOES, INC.,

Defendants.

## COMPLAINT

Plaintiffs who are residents of Illinois, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

Plaintiffs who are not Illinois residents, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., and allege the following upon personal knowledge, information and belief, and investigation of counsel.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 2 of 84

### NATURE OF THE ACTION

1.     This action seeks to recover damages for injuries sustained by Plaintiffs as the direct and proximate result of the wrongful conduct of Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing business as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

2.     Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

distributed by Defendants.  Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not.  Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 3 of 84

3.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, manufacturing, promotion, and sale of TAXOTERE®.

## JURISDICTION AND VENUE

4.      Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over the Defendants, because Defendants are present in the State of Illinois, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

5.      This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

a)  Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

3

b) Defendants committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

c) Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

d) Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

e) Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and;

f) Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

6.     Defendants marketed, promoted, and sold Taxotere throughout the United States, including Cook County, Illinois. Accordingly, venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

7.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101(2), because the transactions occurred out of which the causes of action arose were located in Cook County. Defendants marketed, advertised, and distributed the dangerous Taxotere product in Cook County, the County in which Plaintiff Amelia Green resides. Plaintiff's harms, losses, and damages occurred in Cook County; Defendants do substantial business in the State of Illinois and within Cook County; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold TAXOTERE® in interstate commerce.

8.     Complete diversity of citizenship does not exist because multiple Plaintiffs are citizens and residents of the same state in which Defendants have located and maintain their principal place of business.

9.     The amount in controversy exceeds fifty thousand dollars ($50,000.00), exclusive of interest and costs, the jurisdictional minimum of this Court.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 4 of 84

4

## COMMON ALLEGATIONS

A.   **PARTIES**

10.   Upon investigation and belief, Plaintiff AMELIA GREEN is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff AMELIA GREEN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11.   Upon investigation and belief, Plaintiff AUDREY FRIDIA is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. AUDREY FRIDIA has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

12.   Upon investigation and belief, Plaintiff LINDA FULLMORE is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LINDA FULLMORE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

13.   Upon investigation and belief, Plaintiff MIKKI GARZA is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 5 of 84

5

and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MIKKI GARZA has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

14.    Upon investigation and belief, Plaintiff JEANNIE GERBER is and was at all relevant times a citizen and resident of the state of West Virginia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. JEANNIE GERBER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

15.    Upon investigation and belief, Plaintiff PAMELA GERVIN is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. PAMELA GERVIN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

16.    Upon investigation and belief, Plaintiff PHYLLIS M. GILL is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. PHYLLIS M. GILL has suffered damages as a result of Defendant

ELECTRONICALLY FILED 12/13/2017 2:04 PM 2017-L-012697 PAGE 6 of 84

6

HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

17.   Upon investigation and belief, Plaintiff SALLIE R. GORE is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SALLIE R. GORE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

18.   Upon investigation and belief, Plaintiff SHELBY GRANT is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHELBY GRANT has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

19.   Upon investigation and belief, Plaintiff ROBYN GREER is and was at all relevant times a citizen and resident of the state of Oklahoma, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ROBYN GREER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 7 of 84

7

20.     Upon investigation and belief, Plaintiff CHARLOTTE GUNN is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CHARLOTTE GUNN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

21.     Upon investigation and belief, Plaintiff TANYA GURNEY is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. TANYA GURNEY has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

22.     Upon investigation and belief, Plaintiff DORCILLE HADLEY is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DORCILLE HADLEY has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

23.     Upon investigation and belief, Plaintiff GLENDA HAMNER is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 8 of 84

8

administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. GLENDA HAMNER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

24.     Upon investigation and belief, Plaintiff BEVERLY HARCOURT is and was at all relevant times a citizen and resident of the state of Iowa, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BEVERLY HARCOURT has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

25.     Upon investigation and belief, Plaintiff BETTY HAWKINS is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BETTY HAWKINS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

26.     Upon investigation and belief, Plaintiff NANCY HEARNE is and was at all relevant times a citizen and resident of the state of Louisiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 9 of 84

9

LLC f/k/a HOSPIRA WORLDWIDE, INC.. NANCY HEARNE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

      27.    Upon investigation and belief, Plaintiff LILLY HICKS is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff LILLY HICKS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 10 of 84

      28.    Upon investigation and belief, Plaintiff MOVELL HOLLOWAY is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MOVELL HOLLOWAY has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

      29.    Upon investigation and belief, Plaintiff BENDETTA HOSNEY is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BENDETTA HOSNEY has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

      30.    Upon investigation and belief, Plaintiff ANNIE L. JACKSON is and was at all

relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ANNIE L. JACKSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

31.    Upon investigation and belief, Plaintiff PEGGY JACKSON is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. PEGGY JACKSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

32.    Upon investigation and belief, Plaintiff WANDA JACKSON is and was at all relevant times a citizen and resident of the state of Arkansas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. WANDA JACKSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

33.    Upon investigation and belief, Plaintiff ANITA JACOBS is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-01269?
PAGE 11 of 84

11

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ANITA JACOBS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

34.    Upon investigation and belief, Plaintiff CASSANDRA JOHNSON is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CASSANDRA JOHNSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

35.    Upon investigation and belief, Plaintiff TANYA JOHNSON is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. TANYA JOHNSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

36.    Upon investigation and belief, Plaintiff DEBORAH JOLLA is and was at all relevant times a citizen and resident of the state of Arizona, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DEBORAH JOLLA has suffered damages as a result of Defendant

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 12 of 84

12

HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

37.     Upon investigation and belief, Plaintiff LILLIE JONES is and was at all relevant times a citizen and resident of the state of Indiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LILLIE JONES has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

38.     Upon investigation and belief, Plaintiff CLEDELL KEMP is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CLEDELL KEMP has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

39.     Upon investigation and belief, Plaintiff ANGELA ANITA LAMB is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ANGELA ANITA LAMB has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 13 of 84

40.     Upon investigation and belief, Plaintiff GWEN LANCE is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. GWEN LANCE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

41.     Upon investigation and belief, Plaintiff MARY ANN LEACH is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff MARY ANN LEACH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

42.     Upon investigation and belief, Plaintiff RACINE LESTER is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. RACINE LESTER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

43.     Upon investigation and belief, Plaintiff CARMELITA LOVE is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff CARMELITA LOVE has suffered

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 14 of 84

14

damages as a result of Defendants' illegal and wrongful conduct alleged herein.

44.     Upon investigation and belief, Plaintiff FELICIA MCCLINTON is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. FELICIA MCCLINTON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

45.     Upon investigation and belief, Plaintiff REBECCA MCCOMBS is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff REBECCA MCCOMBS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

46.     Upon investigation and belief, Plaintiff BRITTANY J. MEECE is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BRITTANY J. MEECE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

47.     Upon investigation and belief, Plaintiff DEBORAH MEYERS is and was at all relevant times a citizen and resident of the state of Colorado, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 15 of 84

15

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DEBORAH MEYERS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

48.     Upon investigation and belief, Plaintiff CHERRITA MITCHELL is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff CHERRITA MITCHELL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

49.     Upon investigation and belief, Plaintiff SHEILA MOORE is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHEILA MOORE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

50.     Upon investigation and belief, Plaintiff SYLVIA MORRIS is and was at all relevant times a citizen and resident of the state of Wisconsin, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SYLVIA MORRIS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 16 of 84

16

51.     Upon investigation and belief, Plaintiff LINDA MOSSMAN is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LINDA MOSSMAN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

52.     Upon investigation and belief, Plaintiff MARTHA MUNDELL is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MARTHA MUNDELL has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 17 of 84

53.     Upon investigation and belief, Plaintiff ANNE NAMISHIA is and was at all relevant times a citizen and resident of the state of Tennessee, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ANNE NAMISHIA has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

54.     Upon investigation and belief, Plaintiff LORI NAVA is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered

17

TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LORI NAVA has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

   55. Upon investigation and belief, Plaintiff SHEILA OWENS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHEILA OWENS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

   56. Upon investigation and belief, Plaintiff DELILAH PAM is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DELILAH PAM has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

   57. Upon investigation and belief, Plaintiff MARY K. PAPOCCIA is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff MARY K. PAPOCCIA has suffered

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 18 of 84

18

damages as a result of Defendants' illegal and wrongful conduct alleged herein.

58.      Upon investigation and belief, Plaintiff BERNICE PEACHES is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BERNICE PEACHES has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

59.      Upon investigation and belief, Plaintiff CARLA PHELPS is and was at all relevant times a citizen and resident of the state of Alabama, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CARLA PHELPS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

60.      Defendant Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

61.      Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

62.      Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 19 of 84

19

within and part of Sanofi-Aventis U.S. LLC.

63.     Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc, and Sanofi-Aventis U.S. LLC, separately and doing business as Winthrop U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants."

64.     Defendant Hospira, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

65.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

66.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

67.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

68.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

69.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 20 of 84

20

advertising and/or selling the prescription drug known as TAXOTERE®.

70.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

71.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

72.    At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

73.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

74.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

75.    At all times relevant, Defendants were engaged in the business of developing,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 21 of 84

designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

## DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE®

76.     TAXOTERE® is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs commonly referred to as taxanes.

77.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic forms as well.

78.     TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

79.     The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased potency taxane.

80.     The initial patent disclosing the formulation and computation of TAXOTERE® was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March 1989.

81.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental*

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 22 of 84

22

*Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec assigned to docetaxel.

82.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

83.     Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

84.     TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

85.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 23 of 84

which was the primary competitor product to TAXOTERE®.

86.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in Illinois and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of TAXOTERE® at conferences including the annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

87.     Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

88.     A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

89.     A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

90.     Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 24 of 84

24

comparing the efficacy of TAXOTERE® versus TAXOL®.   Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.   The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

91.   Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

92.   As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 25 of 84

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (docetaxel) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

---

[1]   Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2]   Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

25

93.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

94.     Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

95.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products such as TAXOL®.

96.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 26 of 84

26

## B.   GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT

97.   Hospira Defendants filed for a NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted Hospira's NDA on or about March 8, 2011 and Hospira put the docetaxel anhydrous on the market on or about March 8, 2011.

98.   Defendant McKesson filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted McKesson's NDA on or about June 8, 2011, and McKesson put docetaxel anhydrous on the market on or about June 8, 2011.

99.   Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA on or about July 22, 2015 and Sandoz put docetaxel on the market on or about July 22, 2015.

100.   Upon information and belief, Defendant Accord filed for two (3) NDAs with the FDA for generic non-bioequivalents of Taxotere (docetaxel).

101.   Upon information and belief, Defendant Accord was approved by the FDA for the first generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel on or about June 30, 2011 and Accord put docetaxel on the market on or about June 30, 2011.

102.   Defendant Accord was approved by the FDA for the second generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous (20 mg/0.5 mL and 80 mg/2 mL) on or about July 1, 2012 and Accord put docetaxel anhydrous on the market on or about July 1, 2012.

103.   Upon information and belief, Defendant Accord was approved by the FDA for the third generic non-bioequivalent of Taxotere (docetaxel) in another form of

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 27 of 84

docetaxel anhydrous in a more concentrated form, on or about May 15, 2013 and Accord put the

mor concentrated docetaxel anhydrous on the market on or about May 15, 2013.

### DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

104.    Although temporary alopecia, or hair loss, is a common side effect related

to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and

marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as

with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

105.    Defendants knew or should have known that the rate of permanent

alopecia related to TAXOTERE® was far greater than with other products available to treat the

same condition as Defendants' product.

106.    Permanent baldness (permanent alopecia) is a disfiguring condition,

especially for women. Women who experienced disfiguring permanent alopecia as a result of the

use of TAXOTERE® suffer great mental anguish as well as economic damages, including but

not limited to loss of work or inability to work due to significant psychological damage.

107.    Although women might accept the possibility of permanent baldness as a

result of the use of TAXOTERE® if no other product were available to treat their cancer, this

was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women

being exposed to the adverse side effects of TAXOTERE®, there were already similar products

on the market that were at least as effective as TAXOTERE® and did not subject female users to

the same risk of disfiguring permanent alopecia as does TAXOTERE®.

108.    Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A.

sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 28 of 84

Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

109.    In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients had stopped taking TAXOTERE®.

110.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken TAXOTERE® and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering from permanent disfiguring hair loss.

111.    Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking TAXOTERE®.

112.    Users of TAXOTERE® were not presented with the opportunity to make an informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 29 of 84

29

Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

113.   Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to TAXOTERE® and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States.

114.   As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

115.   As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

116.   Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

117.   TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 30 of 84

30

increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

118.     In other countries, Defendants published information to individual patients and regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

119.     In December 2015, the FDA changed the safety labeling for TAXOTERE® (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

120.     As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

121.     As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

122.     Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 31 of 84

31

123.    Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## NATURE OF THE CLAIMS

124.    Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

125.    In particular, Defendants:

(a)    failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

(b)    failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

(c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permanent alopecia;

(d)    failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of TAXOTERE®;

(e)    failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

(f)    failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of TAXOTERE®;

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 32 of 84

32

(g) failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h) failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i) failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

126. During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

127. Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

128. Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

129. Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

130. From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

131. Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 33 of 84

33

132.    Defendants failed to disclose information that they possessed regarding their

failure to adequately test and study TAXOTERE® related to the side effect of disfiguring

permanent alopecia. Plaintiffs and their healthcare providers could not have discovered

Defendants' false representations and failures to disclose information through the exercise of

reasonable diligence.

133.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to

suffer serious and dangerous side effects, severe and personal injuries that are permanent and

lasting in nature, and economic and non-economic damages, harms, and losses, including but not

limited to: past and future medical expenses; past and future loss of earnings; past and future loss

and impairment of earning capacity; permanent disfigurement including permanent alopecia;

mental anguish; severe and debilitating emotional distress; increased risk of future harm; past,

present, and future physical and mental pain, suffering, and discomfort; and past, present, and

future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 34 of 84

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

134.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of

the Complaint as if fully set forth at length herein.

135.    Plaintiffs are within the applicable statutes of limitations for the claims presented

herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of

Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring

permanent alopecia, and could not reasonably have discovered the defects and unreasonably

dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to

the Defendants' failure to warn, suppression of important information about the risks of the drug,

including but not limited to the true risk benefit profile, and the risk of disfiguring permanent

34

alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other

acts and omissions.

136.    In addition, Defendants are estopped from relying on any statutes of limitations or

repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and

omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs'

prescribing health care professionals and the general consuming public that Defendants'

TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of

developing the injuries Plaintiffs have suffered while aggressively and continually marketing and

promoting TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants'

failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by

Defendants to result from use of TAXOTERE®, for example, and not by way of limitation,

internal concern about reports and studies finding an increased risk of disfiguring permanent

alopecia; suppression of information about these risks and injuries from physicians and patients,

including Plaintiffs; use of sales and marketing documents and information that contained

information contrary to the internally held knowledge regarding the aforesaid risks and injuries;

and overstatement of the efficacy and safety of TAXOTERE®.

137.    Defendants had a duty to disclose that TAXOTERE® was defective,

unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the

serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered.

Defendants breached that duty.

138.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general

consuming public, had no knowledge of, and no reasonable way of discovering, the defects

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 35 of 84

found in Defendants' TAXOTERE® or the true risks associated with her use at the time she

purchased and used Defendants' TAXOTERE®.

139.   Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing

health care professionals or the general consuming public that Defendants' TAXOTERE® was

defective and that its use carried with it the serious risk of developing the injuries Plaintiffs has

suffered and complained of herein.

140.   Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing

health care professionals and the general consuming public that their TAXOTERE® was

defective and, further, actively attempted to conceal this fact, Defendants should be estopped

from asserting defenses based on statutes of limitation or repose.

141.   Accordingly, Plaintiffs file this lawsuit within the applicable statutes of

limitations, Plaintiffs could not by exercise of reasonable diligence have discovered any

wrongdoing, nor could have discovered the causes of their injuries at an earlier time, and when

Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based

on the lack of necessary information, which was suppressed by the Defendants.   Further, the

relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was

inherently difficult to discover, in part due to the Defendants' knowing suppression of important

safety information.   Consequently, the discovery rule should be applied to toll the running of the

statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence

should have discovered, that Plaintiffs may have a basis for an actionable claim.

<div style="text-align:center">

**PLAINTIFFS' DIAGNOSIS, TREATMENT, AND**
**RESULTING DISFIGURING PERMANENT ALOPECIA**

</div>

142.   Plaintiff AMELIA GREEN was diagnosed with breast cancer. Neither AMELIA

GREEN nor her treating healthcare providers were aware of or informed by Defendants that

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 36 of 84

<div style="text-align:center">36</div>

disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, AMELIA GREEN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, AMELIA GREEN suffered from disfiguring permanent hair loss as a result of recciving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

143.    Plaintiff AUDREY FRIDIA was diagnosed with breast cancer. Neither AUDREY FRIDIA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, AUDREY FRIDIA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, AUDREY FRIDIA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

144.    Plaintiff LINDA FULLMORE was diagnosed with breast cancer. Neither LINDA FULLMORE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA FULLMORE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA FULLMORE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 37 of 84

37

145.     Plaintiff MIKKI GARZA was diagnosed with breast cancer. Neither MIKKI GARZA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MIKKI GARZA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MIKKI GARZA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

146.     Plaintiff JEANNIE GERBER was diagnosed with breast cancer. Neither JEANNIE GERBER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, JEANNIE GERBER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JEANNIE GERBER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

147.     Plaintiff PAMELA GERVIN was diagnosed with breast cancer. Neither PAMELA GERVIN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, PAMELA GERVIN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PAMELA GERVIN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 38 of 84

result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

148.    Plaintiff PHYLLIS M. GILL was diagnosed with breast cancer. Neither PHYLLIS M. GILL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, PHYLLIS M. GILL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PHYLLIS M. GILL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

149.    Plaintiff SALLIE R. GORE was diagnosed with breast cancer. Neither SALLIE R. GORE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SALLIE R. GORE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SALLIE R. GORE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

150.    Plaintiff SHELBY GRANT was diagnosed with breast cancer. Neither SHELBY GRANT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 39 of 84

39

Accordingly, SHELBY GRANT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHELBY GRANT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

151.    Plaintiff ROBYN GREER was diagnosed with breast cancer. Neither ROBYN GREER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ROBYN GREER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ROBYN GREER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

152.    Plaintiff CHARLOTTE GUNN was diagnosed with breast cancer. Neither CHARLOTTE GUNN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHARLOTTE GUNN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CHARLOTTE GUNN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 40 of 84

153. Plaintiff TANYA GURNEY was diagnosed with breast cancer. Neither TANYA GURNEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, TANYA GURNEY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, TANYA GURNEY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

154. Plaintiff DORCILLE HADLEY was diagnosed with breast cancer. Neither DORCILLE HADLEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DORCILLE HADLEY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DORCILLE HADLEY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

155. Plaintiff GLENDA HAMNER was diagnosed with breast cancer. Neither GLENDA HAMNER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GLENDA HAMNER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GLENDA HAMNER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 41 of 84

41

As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

156.    Plaintiff BEVERLY HARCOURT was diagnosed with breast cancer. Neither BEVERLY HARCOURT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BEVERLY HARCOURT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BEVERLY HARCOURT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

157.    Plaintiff BETTY HAWKINS was diagnosed with breast cancer. Neither BETTY HAWKINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BETTY HAWKINS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BETTY HAWKINS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

158.    Plaintiff NANCY HEARNE was diagnosed with breast cancer. Neither NANCY HEARNE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 42 of 84

42

Accordingly, NANCY HEARNE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, NANCY HEARNE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

159.   Plaintiff LILLY HICKS was diagnosed with breast cancer. Neither LILLY HICKS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LILLY HICKS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LILLY HICKS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

160.   Plaintiff MOVELL HOLLOWAY was diagnosed with breast cancer. Neither MOVELL HOLLOWAY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MOVELL HOLLOWAY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MOVELL HOLLOWAY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 43 of 84

43

161. Plaintiff BENDETTA HOSNEY was diagnosed with breast cancer. Neither BENDETTA HOSNEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BENDETTA HOSNEY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BENDETTA HOSNEY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 44 of 84

162. Plaintiff ANNIE L. JACKSON was diagnosed with breast cancer. Neither ANNIE L. JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ANNIE L. JACKSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ANNIE L. JACKSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

163. Plaintiff PEGGY JACKSON was diagnosed with breast cancer. Neither PEGGY JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, PEGGY JACKSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PEGGY JACKSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of

44

Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

164.    Plaintiff WANDA JACKSON was diagnosed with breast cancer. Neither WANDA JACKSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, WANDA JACKSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, WANDA JACKSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

165.    Plaintiff ANITA JACOBS was diagnosed with breast cancer. Neither ANITA JACOBS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ANITA JACOBS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ANITA JACOBS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

166.    Plaintiff CASSANDRA JOHNSON was diagnosed with breast cancer. Neither CASSANDRA JOHNSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CASSANDRA JOHNSON underwent chemotherapy that included

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 45 of 84

45

TAXOTERE®. Following the completion of chemotherapy, CASSANDRA JOHNSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

167.   Plaintiff TANYA JOHNSON was diagnosed with breast cancer. Neither TANYA JOHNSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, TANYA JOHNSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, TANYA JOHNSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

168.   Plaintiff DEBORAH JOLLA was diagnosed with breast cancer. Neither DEBORAH JOLLA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DEBORAH JOLLA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DEBORAH JOLLA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 46 of 84

46

169.   Plaintiff LILLIE JONES was diagnosed with breast cancer. Neither LILLIE JONES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LILLIE JONES underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LILLIE JONES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

170.   Plaintiff CLEDELL KEMP was diagnosed with breast cancer. Neither CLEDELL KEMP nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CLEDELL KEMP underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CLEDELL KEMP suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

171.   Plaintiff ANGELA ANITA LAMB was diagnosed with breast cancer. Neither ANGELA ANITA LAMB nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ANGELA ANITA LAMB underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ANGELA ANITA LAMB suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 47 of 84

47

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

172. Plaintiff GWEN LANCE was diagnosed with breast cancer. Neither GWEN LANCE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GWEN LANCE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GWEN LANCE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

173. Plaintiff MARY ANN LEACH was diagnosed with breast cancer. Neither MARY ANN LEACH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY ANN LEACH underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY ANN LEACH suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

174. Plaintiff RACINE LESTER was diagnosed with breast cancer. Neither RACINE LESTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, RACINE LESTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, RACINE LESTER suffered from disfiguring

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 48 of 84

48

permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

175.   Plaintiff CARMELITA LOVE was diagnosed with breast cancer. Neither CARMELITA LOVE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CARMELITA LOVE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CARMELITA LOVE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

176.   Plaintiff FELICIA MCCLINTON was diagnosed with breast cancer. Neither FELICIA MCCLINTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, FELICIA MCCLINTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, FELICIA MCCLINTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

177.   Plaintiff REBECCA MCCOMBS was diagnosed with breast cancer. Neither REBECCA MCCOMBS nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 49 of 84

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, REBECCA MCCOMBS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, REBECCA MCCOMBS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

178. Plaintiff BRITTANY J. MEECE was diagnosed with breast cancer. Neither BRITTANY J. MEECE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BRITTANY J. MEECE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BRITTANY J. MEECE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

179. Plaintiff DEBORAH MEYERS was diagnosed with breast cancer. Neither DEBORAH MEYERS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DEBORAH MEYERS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DEBORAH MEYERS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 50 of 84

the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

180.   Plaintiff CHERRITA MITCHELL was diagnosed with breast cancer. Neither CHERRITA MITCHELL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHERRITA MITCHELL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CHERRITA MITCHELL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

181.   Plaintiff SHEILA MOORE was diagnosed with breast cancer. Neither SHEILA MOORE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SHEILA MOORE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHEILA MOORE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

182.   Plaintiff SYLVIA MORRIS was diagnosed with breast cancer. Neither SYLVIA MORRIS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SYLVIA MORRIS underwent chemotherapy that included TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 51 of 84

51

Following the completion of chemotherapy, SYLVIA MORRIS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

183.   Plaintiff LINDA MOSSMAN was diagnosed with breast cancer. Neither LINDA MOSSMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA MOSSMAN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LINDA MOSSMAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

184.   Plaintiff MARTHA MUNDELL was diagnosed with breast cancer. Neither MARTHA MUNDELL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARTHA MUNDELL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARTHA MUNDELL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

185.   Plaintiff ANNE NAMISHIA was diagnosed with breast cancer. Neither ANNE NAMISHIA nor her treating healthcare providers were aware of or informed by Defendants that

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 52 of 84

disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ANNE NAMISHIA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ANNE NAMISHIA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

186.    Plaintiff LORI NAVA was diagnosed with breast cancer. Neither LORI NAVA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LORI NAVA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LORI NAVA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

187.    Plaintiff SHEILA OWENS was diagnosed with breast cancer. Neither SHEILA OWENS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SHEILA OWENS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHEILA OWENS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 53 of 84

53

188.   Plaintiff DELILAH PAM was diagnosed with breast cancer. Neither DELILAH PAM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DELILAH PAM underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DELILAH PAM suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

189.   Plaintiff MARY K. PAPOCCIA was diagnosed with breast cancer. Neither MARY K. PAPOCCIA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARY K. PAPOCCIA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARY K. PAPOCCIA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

190.   Plaintiff BERNICE PEACHES was diagnosed with breast cancer. Neither BERNICE PEACHES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BERNICE PEACHES underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BERNICE PEACHES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 54 of 84

54

As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

191.   Plaintiff CARLA PHELPS was diagnosed with breast cancer. Neither CARLA PHELPS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CARLA PHELPS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CARLA PHELPS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 55 of 84

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

192.   Plaintiffs repeat, reiterates, and re-alleges all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

193.   Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

194.   Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of TAXOTERE® into interstate commerce in that Defendants knew or should have known that using TAXOTERE® created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

195.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 56 of 84

a)  Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without thoroughly testing it;

b)  Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without adequately testing it;

c)  Not conducting sufficient testing programs to determine whether or not TAXOTERE® was safe for use in that Defendants knew or should have known that TAXOTERE® was unsafe and unfit for use by reason of the dangers to its users;

d)  Selling TAXOTERE® without disclosing its dangers and risks and/or making proper and sufficient tests to determine the dangers and risks to its users;

e)  Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

f)  Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

g)  Failing to test TAXOTERE® and/or failing to adequately, sufficiently, and properly test TAXOTERE®;

h)  Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

i)  Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

j)  Negligently and falsely representing that TAXOTERE® was superior to other commercially available products designed to treat the same forms of cancer TAXOTERE® was designed to treat;

k)  Negligently designing TAXOTERE® in a manner that was dangerous to its users;

l)  Negligently manufacturing TAXOTERE® in a manner that was dangerous to its users;

56

m) Negligently producing TAXOTERE® in a manner that was dangerous to its users;

n) Negligently assembling TAXOTERE® in a manner that was dangerous to its users;

o) Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

p) Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

196. Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with TAXOTERE®.

197. Defendants negligently conveyed that the safety risks and/or dangers of TAXOTERE® were comparable with other forms of treatment for the same conditions for which TAXOTERE® was prescribed to treat.

198. Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

a) Failed to use due care in designing and manufacturing TAXOTERE® so as to avoid the aforementioned risks to individuals when TAXOTERE® was used for the treatment of breast cancer;

b) Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of TAXOTERE®;

c) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with TAXOTERE®;

d) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 57 of 84

e) Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

f) Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®;

g) Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

h) Were otherwise careless and/or negligent.

199.   Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiff.

200.   Defendants negligently and improperly failed to perform sufficient tests, forcing Plaintiffs, Plaintiffs' physicians, and/or hospitals to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared to other products already commercially available to treat the same types of cancer TAXOTERE® was designed to treat.

201.   Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

202.   Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

203.   As a direct and proximate result of the use of TAXOTERE®, Plaintiff experienced disfiguring permanent alopecia.

204.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 58 of 84

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SECOND CLAIM FOR RELIEF
### (Strict Products Liability – Design and Manufacturing Defects – Against All Defendants)

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 59 of 84

205.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

206.    At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiffs.

207.    TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

208.    At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

209.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

210.    TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in

59

that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably

dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would

expect.

211.   At all times relevant, TAXOTERE® was in a defective condition and unsafe, and

Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially

when used in the form and manner as provided by Defendants.

212.   Defendants knew, or should have known, that at all times relevant,

TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

213.   At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being

used for the purposes and in a manner normally intended, namely for the treatment of breast

cancer.

214.   Defendants with this knowledge voluntarily designed TAXOTERE® in a

dangerous condition for use by the public, and in particular, Plaintiffs.

215.   Defendants had a duty to create a product that was not unreasonably dangerous

for its normal, intended use.

216.   In creating TAXOTERE®, Defendants created a product that was and is

unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

217.   The TAXOTERE® designed, researched, manufactured, tested, advertised,

promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was

unreasonably dangerous to its intended users.

218.   The TAXOTERE® designed, researched, manufactured, tested, advertised,

promoted, marketed, sold, and distributed by Defendants reached the intended users in the same

defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was

manufactured.

219.   Defendants designed, researched, manufactured, tested, advertised, promoted,

marketed, sold, and distributed a defective product that created an unreasonable risk to the health

of consumers and to Plaintiffs in particular; and Defendants are therefore strictly liable for the

injuries sustained by Plaintiffs.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 60 of 84

60

220.    Plaintiffs and Plaintiffs' physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

221.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

222.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

223.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

224.    By reason of the foregoing, Defendants are strictly liable to Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

225.    Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

226.    The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiffs' injuries.

227.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 61 of 84

61

limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### THIRD CLAIM FOR RELIEF
**(Strict Products Liability – Failure to Warn– Against All Defendants)**

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 62 of 84

228.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

229.   The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia. As the holder for the RLD of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. This labeling was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

230.   Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

231.   As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffer from disfiguring permanent alopecia and other conditions.

232.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 63 of 84

## FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty – Against All Defendants)

233.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

234.   Defendants expressly warranted that TAXOTERE® was safe and well accepted by users.

235.   TAXOTERE® does not conform to these express representations, because TAXOTERE® is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.

236.   As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, harms, and losses.

237.    Plaintiffs relied on Defendants' express warranties.

238.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of TAXOTERE® in recommending, prescribing, and/or dispensing TAXOTERE®. Defendants breached the aforesaid express warranties, as their drug TAXOTERE® was and is defective.

239.    Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, and/or healthcare providers that TAXOTERE® was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

240.    Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that TAXOTERE® was not safe and fit for the use intended, and, in fact, TAXOTERE® produced serious injuries to the users that were not accurately identified and represented by Defendants.

241.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 64 of 84

64

## FIFTH CLAIM FOR RELIEF
### (Breach of Implied Warranty – Against All Defendants)

242.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

243.    At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® and/or have recently acquired the entities that have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® for the treatment of various forms of cancer.

244.    At the time Defendants marketed, sold, and distributed TAXOTERE® for use by Plaintiff, Defendants knew of the use for which TAXOTERE® was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

245.    Defendants impliedly represented and warranted to the users of TAXOTERE® and their physicians, and/or healthcare providers that TAXOTERE® was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

246.    Defendants' aforementioned representations and warranties were false, misleading, and inaccurate in that TAXOTERE® was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

247.    Plaintiffs, Plaintiffs' physicians, members of the medical community, and healthcare professionals relied on this implied warranty of merchantability of fitness for a particular use and purpose.

248.    Plaintiffs, Plaintiffs' physicians, and Plaintiff's healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether TAXOTERE® was of merchantable quality and safe and fit for its intended use.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 65 of 84

65

249.     TAXOTERE® was placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition.

250.     TAXOTERE® was expected to and did reach users, handlers, and persons coming into contact with TAXOTERE® without substantial change in the condition in which it was sold.

251.     Defendants breached the aforementioned implied warranties, as their drug TAXOTERE® was not fit for its intended purposes and uses.

252.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 66 of 84

## SIXTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation – Against All Defendants)

253.     Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

254.     Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

255. When warning of safety and risks of TAXOTERE®, Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

256. Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

257. Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

258. Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

259. Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 67 of 84

67

260.     When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

261.     At the time Defendants made the aforesaid representations, and, at the time Plaintiff used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

262.     In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

263.     Defendants knew and were aware or should have been aware that TAXOTERE® had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

264.     Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE® and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

265.     Defendants brought TAXOTERE® to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

266.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 68 of 84

68

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

### SEVENTH CLAIM FOR RELIEF
#### (Fraudulent Concealment – Against All Defendants)

267.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

268.    At all times during the course of dealing between Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the design characteristics and safety of TAXOTERE® for its intended use.

269.    Defendants knew or were reckless in not knowing that its representations were false.

270.    In representations made to Plaintiffs and Plaintiffs' healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 69 of 84

q)    that TAXOTERE® was not as safe as other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

r)    that the risks of adverse events with TAXOTERE® were higher than those with other forms of treatment for which TAXOTERE® was marketed and sold to cancer patients;

s)    that the risks of adverse events with TAXOTERE® were not adequately tested and/or known by Defendants;

t)    that Defendants were aware of dangers in TAXOTERE®, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

u) that TAXOTERE® was defective in that it caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

v) that TAXOTERE® was manufactured negligently;

w) that TAXOTERE® was manufactured defectively;

x) that TAXOTERE® was manufactured improperly;

y) that TAXOTERE® was designed negligently;

z) that TAXOTERE® was designed defectively; and

aa) that TAXOTERE® was designed improperly.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 70 of 84

271.    Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

272.    Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

273.    Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

70

274.     Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

275.     Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

276.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer from serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 71 of 84

## EIGHTH CLAIM FOR RELIEF
### (Negligence Misrepresentation – Against All Defendants)

277.     Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

278.     Defendants had a duty to represent to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and found to be safe and effective for the treatment of various forms of cancer.

279.     When warning of safety and risks of TAXOTERE®, Defendants negligently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

280.    Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

281.    Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

282.    Defendants misrepresented the novel nature of their product in order to gain a market advantage resulting in billions of dollars in revenues at the expense of vulnerable cancer victims such as Plaintiffs.

283.    Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

284.    Defendants failed to exercise ordinary and reasonable care in their representations of TAXOTERE® while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented TAXOTERE®'s high risk of unreasonable, dangerous side effects.

285.    Defendants breached their duty in misrepresenting TAXOTERE®'s serious side effects to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, the FDA, and the public in general.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 72 of 84

72

286.   Plaintiffs and Plaintiffs' physicians reasonably relied on Defendants to fulfill their obligations to disclose all facts within their knowledge regarding the serious side effects of TAXOTERE®.

287.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 73 of 84

### NINTH CLAIM FOR RELIEF
**(Strict Product Liability for Misrepresentation – Against All Defendants)**

288.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

289.   Defendants sold the TAXOTERE® that Plaintiffs' physicians prescribed for Plaintiffs and that Plaintiffs used.

290.   Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

291.   Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

292.    Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

293.    As a purchaser or user, Plaintiffs reasonably relied on the misrepresentation.

294.    Plaintiffs are persons who would reasonably be expected to use, consume, or be affected by the TAXOTERE®.

295.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 74 of 84

## TENTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against All Defendants)

296.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

297.    Defendants committed fraud by omission in applying for and gaining patent protection for TAXOTERE® resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of TAXOTERE®.

298.    Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which TAXOTERE® was designed to treat. These fraudulent

representations were the proximal cause of Plaintiff's exposure to the side effects of

TAXOTERE®.

299. As a result of Defendants' research and testing, or lack thereof, Defendants

intentionally distributed false information, including but not limited to assuring Plaintiffs,

Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that TAXOTERE®

was safe and effective for use in the treatment of various forms of cancer, including breast

cancer.

300. As a result of Defendants' research and testing, or lack thereof, Defendants

intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians,

healthcare professionals, and/or the public.

301. Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs'

physicians, and the public to disseminate truthful information.

302. Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs'

physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

303. The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and

the public, including but not limited to reports, press releases, advertising campaigns, and other

forms of media contained material representations of fact and/or omissions.

304. The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and

the public intentionally included false representations that Defendants' drug TAXOTERE® was

safe and effective for the treatment of various forms of cancer, including breast cancer.

305. The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and

the public intentionally included false representations that Defendants' drug TAXOTERE®

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 75 of 84

carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions for which TAXOTERE® was designed to treat.

306.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was not injurious to the health and/or safety of its intended users.

307.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was no more injurious to the health and/or safety of its intended users as other forms of cancer treatments for which TAXOTERE® was designed to treat.

308.    These representations by Defendants were all false and misleading.

309.    Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that TAXOTERE® was not safe as a means of treatment for certain types of cancer for which TAXOTERE® was designed to treat.

310.    Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® not having dangerous and serious health and/or safety concerns.

311.    Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® being as safe as other products designed to treat the same conditions TAXOTERE® was designed to treat.

312.    It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 76 of 84

confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of TAXOTERE® and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use TAXOTERE®.

313.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment for certain types of cancer, including breast cancer.

314.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for which TAXOTERE® was designed to treat.

315.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present risks related to disfigurement secondary to permanent alopecia.

316.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present health and/or safety risks greater than other forms of treatment for the same conditions TAXOTERE® was designed to treat.

317.    Defendants made these and other representations with a pretense of actual knowledge when Defendants had no knowledge of the truth or falsity of these representations, and Defendants made these representations recklessly and without regard to the actual facts.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 77 of 84

77

318.   Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

319.   Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

320.   Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe TAXOTERE®.

321.   Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of TAXOTERE® to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

322.   Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to TAXOTERE®.

323.   Defendants willfully and intentionally failed to disclose the truth and material facts related to TAXOTERE® and made false representations with the purpose and design of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend TAXOTERE®.

324.   Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public,

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 78 of 84

including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

325.    Plaintiffs and/or Plaintiffs' respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how TAXOTERE® would treat certain forms of cancer for which TAXOTERE® was designed to treat.

326.    At the time Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of TAXOTERE®.

327.    Plaintiffs and their healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of TAXOTERE®, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

328.    Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of TAXOTERE®, Plaintiffs would not have purchased, used, and/or relied on Defendants' drug TAXOTERE®.

329.    Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

330.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 79 of 84

past and future loss of earnings; past and future loss and impairment of earning capacity;

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

and enjoyment of life.

### ELEVENTH CLAIM FOR RELIEF
**(Violation of the Illinois Consumer Protection Act – Against All Defendants)**

331.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

332.    Defendants have a statutory duty to refrain from making false and/or fraudulent

representations and/or from engaging in deceptive acts or practices in the sale and promotion of

TAXOTERE® pursuant to the Illinois Consumer Protection Act, 815 ILCS 505 *et seq.*

333.    Defendants engaged in unfair, deceptive, false, and/or fraudulent acts and/or trade

practices in violation of the Illinois Consumer Protection Act, including but not limited to:

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 80 of 84

> bb) Publishing instructions and product material containing inaccurate and incomplete factual information regarding TAXOTERE®;
>
> cc) Misrepresenting the nature, quality, and characteristics of TAXOTERE®;
>
> dd) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding;
>
> ee) Misrepresenting the alleged benefits of TAXOTERE®;
>
> ff) Failing to disclose material information concerning known side effects of TAXOTERE®;
>
> gg) Misrepresenting the quality of TAXOTERE®; and
>
> hh) Uniformly communicating the purported benefits of TAXOTERE® while failing to disclose the serious and dangerous side-effects related to the use of TAXOTERE® and its safety, efficacy, and usefulness.

80

334.    Defendants' conduct in connection with TAXOTERE® was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of TAXOTERE®.

335.    These deceptive trade practices occurred in the course of Defendants' business.

336.    These deceptive trade practices significantly impacted Plaintiff and the public as actual or potential consumers of Defendants' product TAXOTERE®.

337.    Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

338.    Plaintiffs were an actual consumer of Defendants' product TAXOTERE®.

339.    Defendants' conduct as described above was a material cause of Plaintiffs decisions to purchase TAXOTERE®.

340.    As a direct, foreseeable, and proximate cause of Defendants' deceptive trade practices, Plaintiffs suffered actual damages, including personal injuries, economic damages, and non-economic damages.

341.    Defendants' conduct was wanton, egregious, and reckless.

342.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity;

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 81 of 84

81

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

343.    As a result of the foregoing acts, omissions, and wrongful conduct of Defendants, Plaintiffs are entitled to treble damages, attorneys' fees, and costs.

## TWELFTH CLAIM FOR RELIEF
### (Loss of Consortium)

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 82 of 84

344.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

345.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

346.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

347.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

348.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

349.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care,

assistance, protection, affection, society, and moral support of their spouses, as to their damage,

in an amount presently unknown but which will be proved at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, instate Plaintiffs demand judgment against Defendants Sanofi U.S.

Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately,

and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira

Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc.,

Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in an amount to be determined

at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special

damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-

judgment interest, all other injuries and damages as shall be proven at trial, and such other

further relief as the Court may deem appropriate, just, and proper. Out of state Plaintiffs demand

judgment against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira

Worldwide, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms,

damages, and losses as set forth above, special damages, treble damages, costs, expert witness

fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages

as shall be proven at trial, and such other further relief as the Court may deem appropriate, just,

and proper.

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 83 of 84

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  December 13, 2017                    Respectfully submitted,

                                   **NAPOLI SHKOLNIK, PLLC**


By: /s/ Paul J. Napoli
     Paul J. Napoli, #6307568
     Mark Twain Plaza II
     103 West Vandalia Street, Suite 125
     Edwardsville, IL 62025
     Tel: (618) 307-4528
     PNapoli@NapoliLaw.com
     **ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
12/13/2017 2:04 PM
2017-L-012697
PAGE 84 of 84

FILED
12/13/2017 2:25 PM
2017-L-012699
CALENDAR: X
PAGE 1 of 82
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| SAVANNAH PUGH; DELMA ACOSTA-DOMINGUEZ; RICHARD DOMINGUEZ; DIANE BOROVIC; STEPHEN BOROVIC; ROSE BURNHAM; JOHN BURNHAM; CHERYL CAMPBELL; MYRL CAMPBELL; CECILIA CHEVES; TROY CHEVES; ROSLYNN PINKNEY; JOYCE POTTER; THERESA PRAG; SHEILA RIVERS; LILIAN ROBERTS; BRENDA ROBINSON; JANETTE ROBINSON; TAISHA ROBINSON; CYNTHIA M. RODGERS; SUSAN RUBY; WINIFRED RUGGERI; PAULA RUPP; VALENCIA A. SCHOFIELD; THERESIA SCOTT; DARLETTA SMITH; JACQUELINE SNOWDEN; VALERIE STEWART; DEBORAH TATUM; BARBARA TAYLOR; ERECILE TAYLOR; ANTONETTE THOMAS; MARY THOMAS; MAVIS V. THORNTON; ALICE TIDWELL; BETTY J TILLMAN; BETTY TUCKER; ROBERTA VIRTS; BRENDA WARD; HELEN WARD; LEJUNE WASHINGTON; SHARON WATSON; BONITA WEBSTER; JEAN WHITE; DEBRA WILDER; DIANNE WILLIAMS; MAMIE WILLIAMS; RENEE WILLIAMS; RUBY WILLIAMS; and SHELIA M. YOUNG, | C.A. No.<br>Jury Trial Demanded<br><br>**COMPLAINT AND**<br>**JURY DEMAND** |

Plaintiffs,

v.

SANOFI U.S. SERVICES INC., formerly known as
SANOFI-AVENTIS U.S. INC.; SANOFI-AVENTIS
U.S. LLC, separately, and doing business as
WINTHROP U.S.; HOSPIRA, INC.; HOSPIRA
WORLDWIDE, LLC f/k/a HOSPIRA
WORLDWIDE, INC.; McKESSON
CORPORATION doing business as McKESSON
PACKAGING; SANDOZ INC.; ACCORD
HEALTHCARE LTD.; ACCORD HEALTHCARE,
INC.; and DOES, INC.,

Defendants.

**COMPLAINT**

Plaintiffs who are residents of Illinois, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

Plaintiffs who are not Illinois residents, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., and allege the following upon personal knowledge, information and belief, and investigation of counsel.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 2 of 82

**NATURE OF THE ACTION**

1.     This action seeks to recover damages for injuries sustained by Plaintiffs as the direct and proximate result of the wrongful conduct of Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing business as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

2.     Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

distributed by Defendants. Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated." In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not. Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 3 of 82

3.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, manufacturing, promotion, and sale of TAXOTERE®.

## JURISDICTION AND VENUE

4.  Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over the Defendants, because Defendants are present in the State of Illinois, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

5.  This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

   a)  Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

3

b) Defendants committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

c) Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

d) Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

e) Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and;

f) Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

6.    Defendants marketed, promoted, and sold Taxotere throughout the United States, including Cook County, Illinois. Accordingly, venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 4 of 82

7.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101(2), because the transactions occurred out of which the causes of action arose were located in Cook County. Defendants marketed, advertised, and distributed the dangerous Taxotere product in Cook County, the County in which Plaintiff Savannah Pugh resides. Plaintiff's harms, losses, and damages occurred in Cook County; Defendants do substantial business in the State of Illinois and within Cook County; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold TAXOTERE® in interstate commerce.

8.    Complete diversity of citizenship does not exist because multiple Plaintiffs are citizens and residents of the same state in which Defendants have located and maintain their principal place of business.

9.    The amount in controversy exceeds fifty thousand dollars ($50,000.00), exclusive of interest and costs, the jurisdictional minimum of this Court.

4

## COMMON ALLEGATIONS

### A.    PARTIES

10.    Upon investigation and belief, Plaintiff SAVANNAH PUGH is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff SAVANNAH PUGH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11.    Upon investigation and belief, Plaintiff DELMA ACOSTA-DOMINGUEZ is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DELMA ACOSTA-DOMINGUEZ has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

12.    Plaintiff RICHARD DOMINGUEZ is a natural person and spouse of Plaintiff DELMA ACOSTA-DOMINGUEZ.

13.    Upon investigation and belief, Plaintiff DIANE BOROVIC is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DIANE BOROVIC has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

14.    Plaintiff STEPHEN BOROVIC is a natural person and spouse of Plaintiff DIANE

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 5 of 82

5

BOROVIC.

15.     Upon investigation and belief, Plaintiff ROSE BURNHAM is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ROSE BURNHAM has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

16.     Plaintiff JOHN BURNHAM is a natural person and spouse of Plaintiff ROSE BURNHAM.

17.     Upon investigation and belief, Plaintiff CHERYL CAMPBELL is and was at all relevant times a citizen and resident of the state of Wyoming, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CHERYL CAMPBELL has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

18.     Plaintiff MYRL CAMPBELL is a natural person and spouse of Plaintiff CHERYL CAMPBELL.

19.     Upon investigation and belief, Plaintiff CECILIA CHEVES is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 6 of 82

6

WORLDWIDE, INC.. CECILIA CHEVES has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

20.     Plaintiff TROY  CHEVES is a natural person and spouse of Plaintiff CECILIA CHEVES.

21.     Upon investigation and belief, Plaintiff ROSLYNN PINKNEY is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ROSLYNN PINKNEY has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

22.     Upon investigation and belief, Plaintiff JOYCE POTTER is and was at all relevant times a citizen and resident of the state of Nebraska, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. JOYCE POTTER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

23.     Upon investigation and belief, Plaintiff THERESA PRAG is and was at all relevant times a citizen and resident of the state of New York, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE,

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 7 of 82

7

LLC f/k/a HOSPIRA WORLDWIDE, INC.. THERESA PRAG has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

24.     Upon investigation and belief, Plaintiff SHEILA RIVERS is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHEILA RIVERS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

25.     Upon investigation and belief, Plaintiff LILIAN ROBERTS is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LILIAN ROBERTS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

26.     Upon investigation and belief, Plaintiff BRENDA ROBINSON is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BRENDA ROBINSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-01269
PAGE 8 of 82

8

illegal and wrongful conduct alleged herein.

27.    Upon investigation and belief, Plaintiff JANETTE ROBINSON is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. JANETTE ROBINSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

28.    Upon investigation and belief, Plaintiff TAISHA ROBINSON is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. TAISHA ROBINSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 9 of 82

29.    Upon investigation and belief, Plaintiff CYNTHIA M. RODGERS is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CYNTHIA M. RODGERS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

30.    Upon investigation and belief, Plaintiff SUSAN RUBY is and was at all relevant

9

times a citizen and resident of the state of Colorado, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SUSAN RUBY has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

31.    Upon investigation and belief, Plaintiff WINIFRED RUGGERI is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. WINIFRED RUGGERI has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

32.    Upon investigation and belief, Plaintiff PAULA RUPP is and was at all relevant times a citizen and resident of the state of Kansas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. PAULA RUPP has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

33.    Upon investigation and belief, Plaintiff VALENCIA A. SCHOFIELD is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED 12/13/2017 2:25 PM 2017-L-012699 PAGE 10 of 82

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. VALENCIA A. SCHOFIELD has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

34.     Upon investigation and belief, Plaintiff THERESIA SCOTT is and was at all relevant times a citizen and resident of the state of Nebraska, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. THERESIA SCOTT has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

35.     Upon investigation and belief, Plaintiff DARLETTA SMITH is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff DARLETTA SMITH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

36.     Upon investigation and belief, Plaintiff JACQUELINE SNOWDEN is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. JACQUELINE SNOWDEN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 11 of 82

11

37.     Upon investigation and belief, Plaintiff VALERIE STEWART is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. VALERIE STEWART has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

38.     Upon investigation and belief, Plaintiff DEBORAH TATUM is and was at all relevant times a citizen and resident of the state of Wisconsin, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DEBORAH TATUM has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

39.     Upon investigation and belief, Plaintiff BARBARA TAYLOR is and was at all relevant times a citizen and resident of the state of North Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BARBARA TAYLOR has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

40.     Upon investigation and belief, Plaintiff ERECILE TAYLOR is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 12 of 82

12

TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff ERECILE TAYLOR has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41.     Upon investigation and belief, Plaintiff ANTONETTE THOMAS is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ANTONETTE THOMAS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 13 of 82

42.     Upon investigation and belief, Plaintiff MARY THOMAS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MARY THOMAS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

43.     Upon investigation and belief, Plaintiff MAVIS V. THORNTON is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MAVIS V. THORNTON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

13

WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

44.     Upon investigation and belief, Plaintiff ALICE TIDWELL is and was at all relevant times a citizen and resident of the state of Indiana, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ALICE TIDWELL has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

45.     Upon investigation and belief, Plaintiff BETTY J TILLMAN is and was at all relevant times a citizen and resident of the state of Mississippi, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BETTY J TILLMAN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

46.     Upon investigation and belief, Plaintiff BETTY TUCKER is and was at all relevant times a citizen and resident of the state of Utah, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BETTY TUCKER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

47.     Upon investigation and belief, Plaintiff ROBERTA VIRTS is and was at all

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 14 of 82

14

relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ROBERTA VIRTS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

48.    Upon investigation and belief, Plaintiff BRENDA WARD is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BRENDA WARD has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

49.    Upon investigation and belief, Plaintiff HELEN WARD is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. HELEN WARD has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

50.    Upon investigation and belief, Plaintiff LEJUNE WASHINGTON is and was at all relevant times a citizen and resident of the state of New York, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 15 of 82

15

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LEJUNE WASHINGTON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

51.     Upon investigation and belief, Plaintiff SHARON WATSON is and was at all relevant times a citizen and resident of the state of New York, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHARON WATSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

52.     Upon investigation and belief, Plaintiff BONITA WEBSTER is and was at all relevant times a citizen and resident of the state of Wisconsin, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BONITA WEBSTER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

53.     Upon investigation and belief, Plaintiff JEAN WHITE is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. JEAN WHITE has suffered damages as a result of Defendant HOSPIRA,

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 16 of 82

16

INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

54.     Upon investigation and belief, Plaintiff DEBRA WILDER is and was at all relevant times a citizen and resident of the state of Florida, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DEBRA WILDER has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

55.     Upon investigation and belief, Plaintiff DIANNE WILLIAMS is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DIANNE WILLIAMS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

56.     Upon investigation and belief, Plaintiff MAMIE WILLIAMS is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff MAMIE WILLIAMS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

57.     Upon investigation and belief, Plaintiff RENEE WILLIAMS is and was at all relevant times a citizen and resident of the state of District of Columbia, and was prescribed and

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 17 of 82

17

administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. RENEE WILLIAMS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

58.    Upon investigation and belief, Plaintiff RUBY WILLIAMS is and was at all relevant times a citizen and resident of the state of Arkansas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. RUBY WILLIAMS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

59.    Upon investigation and belief, Plaintiff SHELIA M. YOUNG is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHELIA M. YOUNG has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

60.    Defendant Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

61.    Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company,

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 18 of 82

18

which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

62.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

63.     Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc, and Sanofi-Aventis U.S. LLC, separately and doing business as Winthrop U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants."

64.     Defendant Hospira, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

65.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

66.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

67.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

68.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

ELECTRONICALLY FILED 12/13/2017 2:25 PM 2017-L-012699 PAGE 19 of 82

19

69.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as TAXOTERE®.

70.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

71.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

72.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

73.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

74.     At all times herein mentioned, each of the Defendants was the agent, servant,

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 20 of 82

partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

75.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

## DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE®

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 21 of 82

76.     TAXOTERE® is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs commonly referred to as taxanes.

77.     Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic forms as well.

78.     TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

79.     The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased potency taxane.

21

80.     The initial patent disclosing the formulation and computation of TAXOTERE®

was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March

1989.

81.     In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental*

*Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunec

assigned to docetaxel.

82.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990.

The study reporting on these trials was called the "TAX 001" study, which continued until May

13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly,

Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®,

but Sanofi was also directly involved in the clinical trials and testing of the compound

TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and

data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United

States.

83.     Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in

December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously

recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of

TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®,

which had already received FDA approval, and because more studies of TAXOTERE®'s side

effects were needed.

84.     TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According

to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally

advanced or metastatic breast cancer after failure of prior chemotherapy."

22

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 22 of 82

85.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®, which was the primary competitor product to TAXOTERE®.

86.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in Illinois and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of TAXOTERE® at conferences including the annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 23 of 82

87.     Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

88.     A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

89.     A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

23

90.     Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of TAXOTERE® versus TAXOL®.   Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.  The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

91.     Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

92.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC)
> of the U.S. Food and Drug Administration (FDA) has reviewed a professional
> reprint carrier [US.DOC.07.04.078] for TAXOTERE®  (docetaxel) Injection
> Concentrate, Intravenous Infusion (docetaxel) submitted under cover of Form
> FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of
> Clinical Oncology annual meeting in June 2008. The reprint carrier includes a
> reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311
> study. This reprint carrier is false or misleading because it presents

---

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 24 of 82

unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® .
Therefore, this material misbrands the drug in violation of the Federal Food,
Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR
202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

93.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the

United States District Court for the Eastern District of Pennsylvania by a former employee

accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying

kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®.

*See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

94.     Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates

planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label

uses not approved by the FDA. The scheme took two forms: first, Defendants trained and

directed their employees to misrepresent the safety and effectiveness of the off-label use of

TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second,

Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees,

travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement

assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a

direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased

revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel.*

*Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

95.     As a direct result of their wrongful conduct and illegal kickback schemes,

Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased

toxicity as compared to other available less toxic products such as TAXOL®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 25 of 82

---

[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the
FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion,
Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

25

96.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

**B.     GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT**

97.     Hospira Defendants filed for a NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted Hospira's NDA on or about March 8, 2011 and Hospira put the docetaxel anhydrous on the market on or about March 8, 2011.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 26 of 82

98.     Defendant McKesson filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted McKesson's NDA on or about June 8, 2011, and McKesson put docetaxel anhydrous on the market on or about June 8, 2011.

99.     Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA on or about July 22, 2015 and Sandoz put docetaxel on the market on or about July 22, 2015.

100.     Upon information and belief, Defendant Accord filed for two (3) NDAs with the FDA for generic non-bioequivalents of Taxotere (docetaxel).

101.     Upon information and belief, Defendant Accord was approved by the FDA for the first generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel on or about June 30, 2011 and Accord put docetaxel on the market on or about June 30, 2011.

102.     Defendant Accord was approved by the FDA for the second generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous (20 mg/0.5 mL and 80

26

mg/2 mL) on or about July 1, 2012 and Accord put docetaxel anhydrous on the market on or about July 1, 2012.

103.    Upon information and belief, Defendant Accord was approved by the FDA for the third generic non-bioequivalent of Taxotere (docetaxel) in another form of docetaxel anhydrous in a more concentrated form, on or about May 15, 2013 and Accord put the mor concentrated docetaxel anhydrous on the market on or about May 15, 2013.

## DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 27 of 82

104.    Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

105.    Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

106.    Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

107.    Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the

27

market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

108.   Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

109.   In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients had stopped taking TAXOTERE®.

110.   Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken TAXOTERE® and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering from permanent disfiguring hair loss.

111.   Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients,

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 28 of 82

28

and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking TAXOTERE®.

112. Users of TAXOTERE® were not presented with the opportunity to make an informed choice as to whether the benefits of TAXOTERE® were worth its associated risks. Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

113. Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to TAXOTERE® and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 29 of 82

114. As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

115. As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

116. Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

117.    TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

118.    In other countries, Defendants published information to individual patients and regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

119.    In December 2015, the FDA changed the safety labeling for TAXOTERE® (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

120.    As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

121.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

122.    Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 30 of 82

the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

123.    Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

## **NATURE OF THE CLAIMS**

124.    Despite the fact that Defendants disclosed risks associated with TAXOTERE® and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed to either alert Plaintiffs, the public, and the scientific community in the United States or perform further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed to disclose the results of additional studies as Defendants learned new facts regarding the defects and risks of their product.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 31 of 82

125.    In particular, Defendants:

(a)    failed to disclose their investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of TAXOTERE® in response to these studies;

(b)    failed to provide adequate warnings about the true safety risks associated with the use of TAXOTERE®;

(c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side effects related to permanent alopecia;

(d)    failed to disclose in the "Warnings" Section that permanent alopecia is a frequent side effect associated with the use of TAXOTERE®;

(e)    failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct patients that permanent alopecia was a side effect, much less a frequent side effect, linked to TAXOTERE®;

(f)    failed to provide adequate instructions on how to intervene and/or reduce the risk of permanent alopecia related to the use of TAXOTERE®;

(g)     failed to provide adequate warnings and information related to the increased risks of permanent alopecia in certain genome groups;

(h)     failed to provide adequate warnings regarding the increased risk of permanent alopecia with the use of TAXOTERE® as compared to other products intended to treat the same conditions as TAXOTERE®; and

(i)     failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

126.     During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

127.     Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

128.     Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

129.     Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

130.     From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

131.     Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 32 of 82

132. Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

133. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE**

134. Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

135. Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 33 of 82

33

alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

136.    In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

137.    Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

138.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 34 of 82

34

found in Defendants' TAXOTERE® or the true risks associated with her use at the time she purchased and used Defendants' TAXOTERE®.

139.     Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs has suffered and complained of herein.

140.     Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

141.     Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations, Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information.  Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

142.     Plaintiff SAVANNAH PUGH was diagnosed with breast cancer. Neither SAVANNAH PUGH nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 35 of 82

35

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SAVANNAH PUGH underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SAVANNAH PUGH suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

143. Plaintiff DELMA ACOSTA-DOMINGUEZ was diagnosed with breast cancer. Neither DELMA ACOSTA-DOMINGUEZ nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DELMA ACOSTA-DOMINGUEZ underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DELMA ACOSTA-DOMINGUEZ suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

144. Plaintiff DIANE BOROVIC was diagnosed with breast cancer. Neither DIANE BOROVIC nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DIANE BOROVIC underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DIANE BOROVIC suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 36 of 82

36

Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

145. Plaintiff ROSE BURNHAM was diagnosed with breast cancer. Neither ROSE BURNHAM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ROSE BURNHAM underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ROSE BURNHAM suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

146. Plaintiff CHERYL CAMPBELL was diagnosed with breast cancer. Neither CHERYL CAMPBELL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CHERYL CAMPBELL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CHERYL CAMPBELL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

147. Plaintiff CECILIA CHEVES was diagnosed with breast cancer. Neither CECILIA CHEVES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CECILIA CHEVES underwent chemotherapy that included TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 37 of 82

37

Following the completion of chemotherapy, CECILIA CHEVES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

148.    Plaintiff ROSLYNN PINKNEY was diagnosed with breast cancer. Neither ROSLYNN PINKNEY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ROSLYNN PINKNEY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ROSLYNN PINKNEY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

149.    Plaintiff JOYCE POTTER was diagnosed with breast cancer. Neither JOYCE POTTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JOYCE POTTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JOYCE POTTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

150.    Plaintiff THERESA PRAG was diagnosed with breast cancer. Neither THERESA PRAG nor her treating healthcare providers were aware of or informed by Defendants that

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 38 of 82

38

disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, THERESA PRAG underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, THERESA PRAG suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

151.   Plaintiff SHEILA RIVERS was diagnosed with breast cancer. Neither SHEILA RIVERS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SHEILA RIVERS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHEILA RIVERS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

152.   Plaintiff LILIAN ROBERTS was diagnosed with breast cancer. Neither LILIAN ROBERTS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LILIAN ROBERTS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LILIAN ROBERTS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 39 of 82

153.    Plaintiff BRENDA ROBINSON was diagnosed with breast cancer. Neither BRENDA ROBINSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BRENDA ROBINSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BRENDA ROBINSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

154.    Plaintiff JANETTE ROBINSON was diagnosed with breast cancer. Neither JANETTE ROBINSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JANETTE ROBINSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JANETTE ROBINSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

155.    Plaintiff TAISHA ROBINSON was diagnosed with breast cancer. Neither TAISHA ROBINSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, TAISHA ROBINSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, TAISHA ROBINSON suffered

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 40 of 82

40

from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

156.    Plaintiff CYNTHIA M. RODGERS was diagnosed with breast cancer. Neither CYNTHIA M. RODGERS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, CYNTHIA M. RODGERS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, CYNTHIA M. RODGERS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

157.    Plaintiff SUSAN RUBY was diagnosed with breast cancer. Neither SUSAN RUBY nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SUSAN RUBY underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SUSAN RUBY suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

158.    Plaintiff WINIFRED RUGGERI was diagnosed with breast cancer. Neither WINIFRED RUGGERI nor her treating healthcare providers were aware of or informed by

41

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, WINIFRED RUGGERI underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, WINIFRED RUGGERI suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

159.   Plaintiff PAULA RUPP was diagnosed with breast cancer. Neither PAULA RUPP nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, PAULA RUPP underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PAULA RUPP suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

160.   Plaintiff VALENCIA A. SCHOFIELD was diagnosed with breast cancer. Neither VALENCIA A. SCHOFIELD nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VALENCIA A. SCHOFIELD underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VALENCIA A. SCHOFIELD suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 42 of 82

continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

161. Plaintiff THERESIA SCOTT was diagnosed with breast cancer. Neither THERESIA SCOTT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, THERESIA SCOTT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, THERESIA SCOTT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

162. Plaintiff DARLETTA SMITH was diagnosed with breast cancer. Neither DARLETTA SMITH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DARLETTA SMITH underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DARLETTA SMITH suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

163. Plaintiff JACQUELINE SNOWDEN was diagnosed with breast cancer. Neither JACQUELINE SNOWDEN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 43 of 82

43

TAXOTERE®. Accordingly, JACQUELINE SNOWDEN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JACQUELINE SNOWDEN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

164. Plaintiff VALERIE STEWART was diagnosed with breast cancer. Neither VALERIE STEWART nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VALERIE STEWART underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VALERIE STEWART suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

165. Plaintiff DEBORAH TATUM was diagnosed with breast cancer. Neither DEBORAH TATUM nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DEBORAH TATUM underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DEBORAH TATUM suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 44 of 82

44

future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

166.    Plaintiff BARBARA TAYLOR was diagnosed with breast cancer. Neither BARBARA TAYLOR nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BARBARA TAYLOR underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BARBARA TAYLOR suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

167.    Plaintiff ERECILE TAYLOR was diagnosed with breast cancer. Neither ERECILE TAYLOR nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ERECILE TAYLOR underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ERECILE TAYLOR suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

168.    Plaintiff ANTONETTE THOMAS was diagnosed with breast cancer. Neither ANTONETTE THOMAS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 45 of 82

45

TAXOTERE®.  Accordingly, ANTONETTE THOMAS underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, ANTONETTE THOMAS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.  As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

169.    Plaintiff MARY THOMAS was diagnosed with breast cancer. Neither MARY THOMAS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, MARY THOMAS underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, MARY THOMAS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

170.    Plaintiff MAVIS V. THORNTON was diagnosed with breast cancer. Neither MAVIS V. THORNTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, MAVIS V. THORNTON underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, MAVIS V. THORNTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®.  As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 46 of 82

46

171. Plaintiff ALICE TIDWELL was diagnosed with breast cancer. Neither ALICE TIDWELL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ALICE TIDWELL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ALICE TIDWELL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

172. Plaintiff BETTY J TILLMAN was diagnosed with breast cancer. Neither BETTY J TILLMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BETTY J TILLMAN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BETTY J TILLMAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

173. Plaintiff BETTY TUCKER was diagnosed with breast cancer. Neither BETTY TUCKER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BETTY TUCKER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BETTY TUCKER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 47 of 82

47

Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

174.   Plaintiff ROBERTA VIRTS was diagnosed with breast cancer. Neither ROBERTA VIRTS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, ROBERTA VIRTS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ROBERTA VIRTS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 48 of 82

175.   Plaintiff BRENDA WARD was diagnosed with breast cancer. Neither BRENDA WARD nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BRENDA WARD underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BRENDA WARD suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

176.   Plaintiff HELEN WARD was diagnosed with breast cancer. Neither HELEN WARD nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, HELEN WARD underwent chemotherapy that included TAXOTERE®.

48

Following the completion of chemotherapy, HELEN WARD suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

177.   Plaintiff LEJUNE WASHINGTON was diagnosed with breast cancer. Neither LEJUNE WASHINGTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LEJUNE WASHINGTON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LEJUNE WASHINGTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

178.   Plaintiff SHARON WATSON was diagnosed with breast cancer. Neither SHARON WATSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, SHARON WATSON underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHARON WATSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 49 of 82

49

179. Plaintiff BONITA WEBSTER was diagnosed with breast cancer. Neither BONITA WEBSTER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BONITA WEBSTER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BONITA WEBSTER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 50 of 82

180. Plaintiff JEAN WHITE was diagnosed with breast cancer. Neither JEAN WHITE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, JEAN WHITE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JEAN WHITE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

181. Plaintiff DEBRA WILDER was diagnosed with breast cancer. Neither DEBRA WILDER nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DEBRA WILDER underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DEBRA WILDER suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of

50

Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

182.   Plaintiff DIANNE WILLIAMS was diagnosed with breast cancer. Neither DIANNE WILLIAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DIANNE WILLIAMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DIANNE WILLIAMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

183.   Plaintiff MAMIE WILLIAMS was diagnosed with breast cancer. Neither MAMIE WILLIAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MAMIE WILLIAMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MAMIE WILLIAMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

184.   Plaintiff RENEE WILLIAMS was diagnosed with breast cancer. Neither RENEE WILLIAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 51 of 82

51

Accordingly, RENEE WILLIAMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, RENEE WILLIAMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

185.   Plaintiff RUBY WILLIAMS was diagnosed with breast cancer. Neither RUBY WILLIAMS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, RUBY WILLIAMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, RUBY WILLIAMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 52 of 82

186.   Plaintiff SHELIA M. YOUNG was diagnosed with breast cancer. Neither SHELIA M. YOUNG nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SHELIA M. YOUNG underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHELIA M. YOUNG suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

187.   Plaintiffs repeat, reiterates, and re-alleges all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

188.   Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

189.   Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of TAXOTERE® into interstate commerce in that Defendants knew or should have known that using TAXOTERE® created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

190.   The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 53 of 82

a)   Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without thoroughly testing it;

b)   Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without adequately testing it;

c)   Not conducting sufficient testing programs to determine whether or not TAXOTERE® was safe for use in that Defendants knew or should have known that TAXOTERE® was unsafe and unfit for use by reason of the dangers to its users;

d)   Selling TAXOTERE® without disclosing its dangers and risks and/or making proper and sufficient tests to determine the dangers and risks to its users;

e)   Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

53

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 54 of 82

f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

g) Failing to test TAXOTERE® and/or failing to adequately, sufficiently, and properly test TAXOTERE®;

h) Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

i) Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

j) Negligently and falsely representing that TAXOTERE® was superior to other commercially available products designed to treat the same forms of cancer TAXOTERE® was designed to treat;

k) Negligently designing TAXOTERE® in a manner that was dangerous to its users;

l) Negligently manufacturing TAXOTERE® in a manner that was dangerous to its users;

m) Negligently producing TAXOTERE® in a manner that was dangerous to its users;

n) Negligently assembling TAXOTERE® in a manner that was dangerous to its users;

o) Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

p) Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

191.    Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with TAXOTERE®.

192.    Defendants negligently conveyed that the safety risks and/or dangers of TAXOTERE® were comparable with other forms of treatment for the same conditions for which TAXOTERE® was prescribed to treat.

54

193.   Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

a) Failed to use due care in designing and manufacturing TAXOTERE® so as to avoid the aforementioned risks to individuals when TAXOTERE® was used for the treatment of breast cancer;

b) Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of TAXOTERE®;

c) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with TAXOTERE®;

d) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

e) Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

f) Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®;

g) Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

h) Were otherwise careless and/or negligent.

194.   Despite the fact that Defendants knew or should have known that TAXOTERE® caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiff.

195.   Defendants negligently and improperly failed to perform sufficient tests, forcing Plaintiffs, Plaintiffs' physicians, and/or hospitals to rely on safety information that did not accurately represent the risks and benefits associated with the use of TAXOTERE® as compared

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 55 of 82

to other products already commercially available to treat the same types of cancer TAXOTERE®
was designed to treat.

196.     Defendants knew or should have known that consumers such as Plaintiff would
use their product and would foreseeably suffer injury as a result of Defendants' failure to
exercise reasonable care, as set forth above.

197.     Defendants' negligence was the proximate cause of Plaintiff's injuries, harms,
damages, and losses.

198.     As a direct and proximate result of the use of TAXOTERE®, Plaintiff
experienced disfiguring permanent alopecia.

199.     As a result of the foregoing acts and omissions, Defendants caused Plaintiff to
suffer serious and dangerous side effects, severe and personal injuries that are permanent and
lasting in nature, and economic and non-economic damages, harms, and losses, including but not
limited to: past and future medical expenses; psychological counseling and therapy expenses;
past and future loss of earnings; past and future loss and impairment of earning capacity;
permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating
emotional distress; increased risk of future harm; past, present, and future physical and mental
pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality
and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 56 of 82

## SECOND CLAIM FOR RELIEF
### (Strict Products Liability – Design and Manufacturing Defects –
### Against All Defendants)

200.     Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this
Complaint inclusive, with the same force and effect as if fully set forth herein.

201.     At all times relevant, Defendants designed, researched, manufactured, tested,
advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that

have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiffs.

202.   TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

203.   At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

204.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

205.   TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

206.   At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

207.   Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

208.   At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

209.   Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiffs.

210.   Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 57 of 82

57

211.   In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

212.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

213.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

214.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiffs in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs.

215.   Plaintiffs and Plaintiffs' physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

216.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

217.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

218.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement, as well as other severe and

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 58 of 82

58

permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

219.    By reason of the foregoing, Defendants are strictly liable to Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

220.    Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

221.    The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiffs' injuries.

222.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 59 of 82

### THIRD CLAIM FOR RELIEF
### (Strict Products Liability – Failure to Warn– Against All Defendants)

223.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

224.    The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was

defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia. As the holder for the RLD of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. This labeling was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 60 of 82

225.   Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

226.   As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffer from disfiguring permanent alopecia and other conditions.

227.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty – Against All Defendants)

228.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

229.    Defendants expressly warranted that TAXOTERE® was safe and well accepted by users.

230.    TAXOTERE® does not conform to these express representations, because TAXOTERE® is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.

231.    As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, harms, and losses.

232.    Plaintiffs relied on Defendants' express warranties.

233.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of TAXOTERE® in recommending, prescribing, and/or dispensing TAXOTERE®. Defendants breached the aforesaid express warranties, as their drug TAXOTERE® was and is defective.

234.    Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, and/or healthcare providers that TAXOTERE® was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

235.    Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that TAXOTERE® was not safe and fit for the

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 61 of 82

use intended, and, in fact, TAXOTERE® produced serious injuries to the users that were not accurately identified and represented by Defendants.

236.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 62 of 82

### FIFTH CLAIM FOR RELIEF
**(Breach of Implied Warranty – Against All Defendants)**

237.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

238.    At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® and/or have recently acquired the entities that have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® for the treatment of various forms of cancer.

239.    At the time Defendants marketed, sold, and distributed TAXOTERE® for use by Plaintiff, Defendants knew of the use for which TAXOTERE® was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

62

240.    Defendants impliedly represented and warranted to the users of TAXOTERE®
and their physicians, and/or healthcare providers that TAXOTERE® was safe and of
merchantable quality and fit for the ordinary purpose for which it was to be used.

241.    Defendants' aforementioned representations and warranties were false,
misleading, and inaccurate in that TAXOTERE® was unsafe, unreasonably dangerous,
improper, not of merchantable quality, and defective.

242.    Plaintiffs, Plaintiffs' physicians, members of the medical community, and
healthcare professionals relied on this implied warranty of merchantability of fitness for a
particular use and purpose.

243.    Plaintiffs, Plaintiffs' physicians, and Plaintiff's healthcare professionals
reasonably relied upon the skill and judgment of Defendants as to whether TAXOTERE® was of
merchantable quality and safe and fit for its intended use.

244.    TAXOTERE® was placed into the stream of commerce by Defendants in a
defective, unsafe, and inherently dangerous condition.

245.    TAXOTERE® was expected to and did reach users, handlers, and persons
coming into contact with TAXOTERE® without substantial change in the condition in which it
was sold.

246.    Defendants breached the aforementioned implied warranties, as their drug
TAXOTERE® was not fit for its intended purposes and uses.

247.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to
suffer serious and dangerous side effects, severe and personal injuries that are permanent and
lasting in nature, and economic and non-economic damages, harms, and losses, including but not
limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 63 of 82

63

past and future loss of earnings; past and future loss and impairment of earning capacity;

permanent disfigurement including permanent alopecia; mental anguish; severe and

debilitating emotional distress; increased risk of future harm; past, present, and future

physical and mental pain, suffering, and discomfort; and past, present, and future loss and

impairment of the quality and enjoyment of life.

### SIXTH CLAIM FOR RELIEF
**(Fraudulent Misrepresentation – Against All Defendants)**

248.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

249.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs'

physicians, the medical and healthcare community, and the public in general that TAXOTERE®

had been tested and was found to be safe and effective for the treatment of certain forms of

cancer.

250.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently

represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

public in general that TAXOTERE® had been tested and was found to be safe and/or effective

for its indicated use.

251.    Defendants concealed their knowledge of TAXOTERE®'s defects from

Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

specifically.

252.    Defendants concealed their knowledge of the defects in their products from

Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

253.    Defendants made these false representations with the intent of defrauding and

deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 64 of 82

community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs'

physicians, the public in general, and the medical community in particular, to recommend,

dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer,

including but not limited to breast cancer, all of which evidenced a callous, reckless, willful,

wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

254.    Defendants made these false representations with the intent of defrauding and

deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and

healthcare community in particular, and were made with the intent of inducing the public in

general, and the medical community in particular, to recommend, dispense, and/or purchase

TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to

breast cancer.

255.    When Defendants made these representations, Defendants knew those

representations were false, and Defendants willfully, wantonly, and recklessly disregarded

whether the representations were true.

256.    At the time Defendants made the aforesaid representations, and, at the time

Plaintiff used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of

Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to

be true.

257.    In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians

were induced to and did use and prescribe TAXOTERE®, which caused Plaintiff to sustain

severe, permanent, and disfiguring personal injuries.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 65 of 82

65

258.    Defendants knew and were aware or should have been aware that TAXOTERE® had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

259.    Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE® and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

260.    Defendants brought TAXOTERE® to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

261.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 66 of 82

## SEVENTH CLAIM FOR RELIEF
### (Fraudulent Concealment – Against All Defendants)

262.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

263.    At all times during the course of dealing between Defendants and Plaintiffs and

Plaintiffs' healthcare providers, Defendants misrepresented the design characteristics and safety

of TAXOTERE® for its intended use.

264.    Defendants knew or were reckless in not knowing that its representations were

false.

265.    In representations made to Plaintiffs and Plaintiffs' healthcare providers,

Defendants fraudulently concealed and intentionally omitted the following material information:

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 67 of 82

q)  that TAXOTERE® was not as safe as other forms of treatment for which
TAXOTERE® was marketed and sold to cancer patients;

r)  that the risks of adverse events with TAXOTERE® were higher than those
with other forms of treatment for which TAXOTERE® was marketed and
sold to cancer patients;

s)  that the risks of adverse events with TAXOTERE® were not adequately
tested and/or known by Defendants;

t)  that Defendants were aware of dangers in TAXOTERE®, in addition to and
above and beyond those associated with other forms of treatment for cancer
patients;

u)  that TAXOTERE® was defective in that it caused dangerous side effects as
well as other severe and permanent health consequences in a much more and
significant rate than other forms of treatment for cancer patients;

v)  that TAXOTERE® was manufactured negligently;

w)  that TAXOTERE® was manufactured defectively;

x)  that TAXOTERE® was manufactured improperly;

y)  that TAXOTERE® was designed negligently;

z)  that TAXOTERE® was designed defectively; and

67

aa) that TAXOTERE® was designed improperly.

266.     Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

267.     Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

268.     Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

269.     Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

270.     Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

271.     As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer from serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity;

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 68 of 82

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

and enjoyment of life.

<div align="center">

**EIGHTH CLAIM FOR RELIEF**
**(Negligence Misrepresentation – Against All Defendants)**

</div>

272.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

273.    Defendants had a duty to represent to Plaintiffs, Plaintiffs' physicians, the medical

and healthcare community, and the public in general that TAXOTERE® had been tested and

found to be safe and effective for the treatment of various forms of cancer.

274.    When warning of safety and risks of TAXOTERE®, Defendants negligently

represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the

public in general that TAXOTERE® had been tested and was found to be safe and/or effective

for its indicated use.

275.    Defendants concealed their knowledge of TAXOTERE®'s defects from

Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community

specifically.

276.    Defendants concealed their knowledge of the defects in their products from

Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

277.    Defendants misrepresented the novel nature of their product in order to gain a

market advantage resulting in billions of dollars in revenues at the expense of vulnerable cancer

victims such as Plaintiffs.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 69 of 82

278.    Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

279.    Defendants failed to exercise ordinary and reasonable care in their representations of TAXOTERE® while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented TAXOTERE®'s high risk of unreasonable, dangerous side effects.

280.    Defendants breached their duty in misrepresenting TAXOTERE®'s serious side effects to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, the FDA, and the public in general.

281.    Plaintiffs and Plaintiffs' physicians reasonably relied on Defendants to fulfill their obligations to disclose all facts within their knowledge regarding the serious side effects of TAXOTERE®.

282.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 70 of 82

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## NINTH CLAIM FOR RELIEF
### (Strict Product Liability for Misrepresentation – Against All Defendants)

283.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

284.   Defendants sold the TAXOTERE® that Plaintiffs' physicians prescribed for Plaintiffs and that Plaintiffs used.

285.   Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

286.   Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

287.   Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

288.   As a purchaser or user, Plaintiffs reasonably relied on the misrepresentation.

289.   Plaintiffs are persons who would reasonably be expected to use, consume, or be affected by the TAXOTERE®.

290.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 71 of 82

emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## TENTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against All Defendants)

291.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

292.    Defendants committed fraud by omission in applying for and gaining patent protection for TAXOTERE® resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of TAXOTERE®.

293.    Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which TAXOTERE® was designed to treat. These fraudulent representations were the proximal cause of Plaintiff's exposure to the side effects of TAXOTERE®.

294.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally distributed false information, including but not limited to assuring Plaintiffs, Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that TAXOTERE® was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

295.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians, healthcare professionals, and/or the public.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 72 of 82

72

296.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public to disseminate truthful information.

297.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

298.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

299.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug TAXOTERE® was safe and effective for the treatment of various forms of cancer, including breast cancer.

300.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug TAXOTERE® carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions for which TAXOTERE® was designed to treat.

301.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was not injurious to the health and/or safety of its intended users.

302.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was no more injurious to the health and/or safety of its intended users as other forms of cancer treatments for which TAXOTERE® was designed to treat.

303.    These representations by Defendants were all false and misleading.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 73 of 82

73

304.   Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that TAXOTERE® was not safe as a means of treatment for certain types of cancer for which TAXOTERE® was designed to treat.

305.   Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® not having dangerous and serious health and/or safety concerns.

306.   Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® being as safe as other products designed to treat the same conditions TAXOTERE® was designed to treat.

307.   It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of TAXOTERE® and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use TAXOTERE®.

308.   Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment for certain types of cancer, including breast cancer.

309.   Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 74 of 82

74

professionals that TAXOTERE® was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for which TAXOTERE® was designed to treat.

310.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present risks related to disfigurement secondary to permanent alopecia.

311.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present health and/or safety risks greater than other forms of treatment for the same conditions TAXOTERE® was designed to treat.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 75 of 82

312.    Defendants made these and other representations with a pretense of actual knowledge when Defendants had no knowledge of the truth or falsity of these representations, and Defendants made these representations recklessly and without regard to the actual facts.

313.    Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

314.    Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

315.    Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs' healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe TAXOTERE®.

316.    Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of TAXOTERE® to the public at large, and Plaintiffs and Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product

Defendants knew was dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

317.   Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to TAXOTERE®.

318.   Defendants willfully and intentionally failed to disclose the truth and material facts related to TAXOTERE® and made false representations with the purpose and design of deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend TAXOTERE®.

319.   Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the information being disseminated.

320.   Plaintiffs and/or Plaintiffs' respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how TAXOTERE® would treat certain forms of cancer for which TAXOTERE® was designed to treat.

321.   At the time Defendants' false representations were made, Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 76 of 82

322.   Plaintiffs and their healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of TAXOTERE®, and Plaintiffs and their healthcare providers with reasonable diligence could not have discovered the true facts.

323.   Had Plaintiffs and their healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of TAXOTERE®, Plaintiffs would not have purchased, used, and/or relied on Defendants' drug TAXOTERE®.

324.   Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

325.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 77 of 82

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Illinois Consumer Protection Act – Against All Defendants)

326.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

327.    Defendants have a statutory duty to refrain from making false and/or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of TAXOTERE® pursuant to the Illinois Consumer Protection Act, 815 ILCS 505 *et seq.*

328.    Defendants engaged in unfair, deceptive, false, and/or fraudulent acts and/or trade practices in violation of the Illinois Consumer Protection Act, including but not limited to:

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 78 of 82

bb) Publishing instructions and product material containing inaccurate and incomplete factual information regarding TAXOTERE®;

cc) Misrepresenting the nature, quality, and characteristics of TAXOTERE®;

dd) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding;

ee) Misrepresenting the alleged benefits of TAXOTERE®;

ff) Failing to disclose material information concerning known side effects of TAXOTERE®;

gg) Misrepresenting the quality of TAXOTERE®; and

hh) Uniformly communicating the purported benefits of TAXOTERE® while failing to disclose the serious and dangerous side-effects related to the use of TAXOTERE® and its safety, efficacy, and usefulness.

329.    Defendants' conduct in connection with TAXOTERE® was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of TAXOTERE®.

330.    These deceptive trade practices occurred in the course of Defendants' business.

331.    These deceptive trade practices significantly impacted Plaintiff and the public as actual or potential consumers of Defendants' product TAXOTERE®.

332. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

333. Plaintiffs were an actual consumer of Defendants' product TAXOTERE®.

334. Defendants' conduct as described above was a material cause of Plaintiffs decisions to purchase TAXOTERE®.

335. As a direct, foreseeable, and proximate cause of Defendants' deceptive trade practices, Plaintiffs suffered actual damages, including personal injuries, economic damages, and non-economic damages.

336. Defendants' conduct was wanton, egregious, and reckless.

337. As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

338. As a result of the foregoing acts, omissions, and wrongful conduct of Defendants, Plaintiffs are entitled to treble damages, attorneys' fees, and costs.

## TWELFTH CLAIM FOR RELIEF
### (Loss of Consortium)

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 79 of 82

79

339.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

340.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

341.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

342.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

343.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

344.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-01269
PAGE 80 of 82

## PRAYER FOR RELIEF

WHEREFORE, instate Plaintiffs demand judgment against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc.,  in an amount to be determined

at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper. Out of state Plaintiffs demand judgment against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 81 of 82

81

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  December 13, 2017                    Respectfully submitted,

                                        **NAPOLI SHKOLNIK, PLLC**


                                        By: /s/ Paul J. Napoli
                                            Paul J. Napoli, #6307568
                                            Mark Twain Plaza II
                                            103 West Vandalia Street, Suite 125
                                            Edwardsville, IL 62025
                                            Tel: (618) 307-4528
                                            PNapoli@NapoliLaw.com
                                            **ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
12/13/2017 2:25 PM
2017-L-012699
PAGE 82 of 82

82

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
CALENDAR: B
PAGE 1 of 70
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

LINDA RICE; ROBERT RICE; ANTOINETTE
CLARK; VERNON R. CLARK; SONIA COLLINS;
EARNEST COLLINS; BIANCA CONKLIN; JOHN
CONKLIN; LYNELL DAGGS; MICHAEL DAGGS;
MADELEINE DWOLAKOWSKI; VICTOR H.
MUSMANNO; KAREN GILYARD; DAVID A.
GILYARD; NICOLE C. GORMAN; MICHAEL
GORMAN; DAWN V. GRAVES; GRETCHEN
GRAVES; MARJORIE HUNT-BLUFORD; ACY
BLUFORD; GWENDOLYN JACKSON-FORTUNE;
WILLIE FORTUNE; LENORA JOHNSON;
EDWARD JOHNSON; LINDA JONES; WAYNE
JONES; TRACY JORDAN-STEELE; CHARLES
STEELE; LILLIAN H. MIRABELLA; RICHARD
MIRABELLA; GENEVA POWELL; LEWIS
POWELL; BEVERLY PRIBBENOW; JEFFREY
PRIBBENOW; PATSY S. REEVES; JOHN
REEVES; DELILAH RICKS; LARRY RICKS;
CAROLE M. SCOTT; GARY L. SCOTT; FRANCES
SHULAR; GEORGE SHULAR; SHARON SMITH;
JAMES MUHAMMAD; JESSICA VINCENT; JIM
VINCENT; SHARON WASHINGTON; EDDIE R.
WASHINGTON; VICKY WEEMS; and THOMAS
WEEMS,

        Plaintiffs,

        v.

SANOFI U.S. SERVICES INC., formerly known as
SANOFI-AVENTIS U.S. INC.; SANOFI-AVENTIS
U.S. LLC, separately, and doing business as
WINTHROP U.S.; HOSPIRA, INC.; HOSPIRA
WORLDWIDE, LLC f/k/a HOSPIRA
WORLDWIDE, INC.; McKESSON
CORPORATION doing business as McKESSON
PACKAGING; SANDOZ INC.; ACCORD
HEALTHCARE LTD.; ACCORD HEALTHCARE,
INC.; and DOES, INC.,

        Defendants.

C.A. No.
Jury Trial Demanded

**COMPLAINT AND**
**JURY DEMAND**

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 2 of 70

## COMPLAINT

Plaintiffs who are residents of Illinois, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

Plaintiffs who are not Illinois residents, by and through undersigned counsel, respectfully submit the following Complaint and Jury Demand against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., and allege the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE ACTION

1.     This action seeks to recover damages for injuries sustained by Plaintiffs as the direct and proximate result of the wrongful conduct of Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing business as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc., in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of TAXOTERE®, a prescription medication used in the treatment of breast cancer.

2.     Plaintiffs are breast cancer survivors who were prescribed and injected with TAXOTERE® (docetaxel), a drug used in chemotherapy that is developed, manufactured, and

distributed by Defendants.  Although lower potency alternatives have been available for years, Defendants misleadingly promoted TAXOTERE® as having superior efficacy based on self-sponsored clinical trials, even though the FDA called these claims "unsubstantiated."  In fact, TAXOTERE®'s increased potency only makes it more toxic than alternatives and causes more severe side effects, including a significantly increased risk of disfiguring *permanent* hair loss. Although temporary hair loss is a common side effect related to chemotherapy, TAXOTERE®'s risk of permanent hair loss is not.  Defendants concealed this information from physicians, healthcare providers, and patients, causing Plaintiffs and tens of thousands of women to suffer permanent hair loss without any additional benefit or warning.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 3 of 70

3.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered serious and permanent physical and emotional injuries, including permanent hair loss, and seek damages relating to Defendants' distribution, labeling, advertising, marketing, manufacturing, promotion, and sale of TAXOTERE®.

## JURISDICTION AND VENUE

4.      Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over the Defendants, because Defendants are present in the State of Illinois, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

5.      This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

a)   Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

3

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 4 of 70

b) Defendants committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2);

c) Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

d) Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

e) Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and;

f) Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

6.    Defendants marketed, promoted, and sold Taxotere throughout the United States, including Cook County, Illinois. Accordingly, venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

7.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101(2), because the transactions occurred out of which the causes of action arose were located in Cook County. Defendants marketed, advertised, and distributed the dangerous Taxotere product in Cook County, the County in which Plaintiff Linda Rice resides. Plaintiff's harms, losses, and damages occurred in Cook County; Defendants do substantial business in the State of Illinois and within Cook County; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold TAXOTERE® in interstate commerce.

8.    Complete diversity of citizenship does not exist because multiple Plaintiffs are citizens and residents of the same state in which Defendants have located and maintain their principal place of business.

9.    The amount in controversy exceeds fifty thousand dollars ($50,000.00), exclusive of interest and costs, the jurisdictional minimum of this Court.

## COMMON ALLEGATIONS

**A.     PARTIES**

10.     Upon investigation and belief, Plaintiff LINDA RICE is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff LINDA RICE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

11.     Plaintiff ROBERT RICE is a natural person and spouse of Plaintiff LINDA RICE.

12.     Upon investigation and belief, Plaintiff ANTOINETTE CLARK is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. ANTOINETTE CLARK has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

13.     Plaintiff VERNON R. CLARK is a natural person and spouse of Plaintiff ANTOINETTE CLARK.

14.     Upon investigation and belief, Plaintiff SONIA COLLINS is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SONIA COLLINS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 5 of 70

5

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 6 of 70

15.    Plaintiff EARNEST COLLINS is a natural person and spouse of Plaintiff SONIA COLLINS.

16.    Upon investigation and belief, Plaintiff BIANCA CONKLIN is and was at all relevant times a citizen and resident of the state of Kansas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BIANCA CONKLIN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

17.    Plaintiff JOHN CONKLIN is a natural person and spouse of Plaintiff BIANCA CONKLIN.

18.    Upon investigation and belief, Plaintiff LYNELL DAGGS is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LYNELL DAGGS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

19.    Plaintiff MICHAEL DAGGS is a natural person and spouse of Plaintiff LYNELL DAGGS.

20.    Upon investigation and belief, Plaintiff MADELEINE DWOLAKOWSKI is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

6

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MADELEINE DWOLAKOWSKI has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

21.     Plaintiff VICTOR H. MUSMANNO is a natural person and spouse of Plaintiff MADELEINE DWOLAKOWSKI.

22.     Upon investigation and belief, Plaintiff KAREN GILYARD is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. KAREN GILYARD has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

23.     Plaintiff DAVID A. GILYARD is a natural person and spouse of Plaintiff KAREN GILYARD.

24.     Upon investigation and belief, Plaintiff NICOLE C. GORMAN is and was at all relevant times a citizen and resident of the state of Missouri, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. NICOLE C. GORMAN has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

25.     Plaintiff MICHAEL GORMAN is a natural person and spouse of Plaintiff

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 7 of 70

7

NICOLE C. GORMAN.

26.     Upon investigation and belief, Plaintiff DAWN V. GRAVES is and was at all relevant times a citizen and resident of the state of Maryland, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. DAWN V. GRAVES has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

27.     Plaintiff GRETCHEN GRAVES is a natural person and spouse of Plaintiff DAWN V. GRAVES.

28.     Upon investigation and belief, Plaintiff MARJORIE HUNT-BLUFORD is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. MARJORIE HUNT-BLUFORD has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

29.     Plaintiff ACY BLUFORD is a natural person and spouse of Plaintiff MARJORIE HUNT-BLUFORD.

30.     Upon investigation and belief, Plaintiff GWENDOLYN JACKSON- FORTUNE is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 8 of 70

8

WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. GWENDOLYN JACKSON-FORTUNE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

31.   Plaintiff WILLIE FORTUNE is a natural person and spouse of Plaintiff GWENDOLYN JACKSON- FORTUNE.

32.   Upon investigation and belief, Plaintiff LENORA JOHNSON is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LENORA JOHNSON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

33.   Plaintiff EDWARD JOHNSON is a natural person and spouse of Plaintiff LENORA JOHNSON.

34.   Upon investigation and belief, Plaintiff LINDA JONES is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LINDA JONES has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

35.   Plaintiff WAYNE JONES is a natural person and spouse of Plaintiff LINDA

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 9 of 70

9

JONES.

36.     Upon investigation and belief, Plaintiff TRACY JORDAN-STEELE is and was at all relevant times a citizen and resident of the state of Ohio, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. TRACY JORDAN-STEELE has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

37.     Plaintiff CHARLES STEELE is a natural person and spouse of Plaintiff TRACY JORDAN-STEELE.

38.     Upon investigation and belief, Plaintiff LILLIAN H MIRABELLA is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. LILLIAN H MIRABELLA has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

39.     Plaintiff RICHARD MIRABELLA is a natural person and spouse of Plaintiff LILLIAN H MIRABELLA.

40.     Upon investigation and belief, Plaintiff GENEVA POWELL is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 10 of 70

10

WORLDWIDE, INC.. GENEVA POWELL has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

41.    Plaintiff LEWIS POWELL is a natural person and spouse of Plaintiff GENEVA POWELL.

42.    Upon investigation and belief, Plaintiff BEVERLY PRIBBENOW is and was at all relevant times a citizen and resident of the state of Wisconsin, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. BEVERLY PRIBBENOW has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

43.    Plaintiff JEFFREY PRIBBENOW is a natural person and spouse of Plaintiff BEVERLY PRIBBENOW.

44.    Upon investigation and belief, Plaintiff PATSY S. REEVES is and was at all relevant times a citizen and resident of the state of Georgia, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. PATSY S. REEVES has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

45.    Plaintiff JOHN REEVES is a natural person and spouse of Plaintiff PATSY S. REEVES.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 11 of 70

11

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 12 of 70

46.     Upon investigation and belief, Plaintiff DELILAH RICKS is and was at all relevant times a citizen and resident of the State of Illinois, and was prescribed and administered TAXOTERE® in the State of Illinois, which was developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff DELILAH RICKS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

47.     Plaintiff LARRY RICKS is a natural person and spouse of Plaintiff DELILAH RICKS.

48.     Upon investigation and belief, Plaintiff CAROLE M. SCOTT is and was at all relevant times a citizen and resident of the state of Pennsylvania, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. CAROLE M. SCOTT has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

49.     Plaintiff GARY L. SCOTT is a natural person and spouse of Plaintiff CAROLE M. SCOTT.

50.     Upon investigation and belief, Plaintiff FRANCES SHULAR is and was at all relevant times a citizen and resident of the state of South Carolina, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. FRANCES SHULAR has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

51.   Plaintiff GEORGE SHULAR is a natural person and spouse of Plaintiff FRANCES SHULAR.

52.   Upon investigation and belief, Plaintiff SHARON SMITH is and was at all relevant times a citizen and resident of the state of Connecticut, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHARON SMITH has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

53.   Plaintiff JAMES MUHAMMAD is a natural person and spouse of Plaintiff SHARON SMITH.

54.   Upon investigation and belief, Plaintiff JESSICA VINCENT is and was at all relevant times a citizen and resident of the state of Arkansas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. JESSICA VINCENT has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

55.   Plaintiff JIM VINCENT is a natural person and spouse of Plaintiff JESSICA VINCENT.

56.   Upon investigation and belief, Plaintiff SHARON WASHINGTON is and was at all relevant times a citizen and resident of the state of Texas, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed,

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 13 of 70

13

packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. SHARON WASHINGTON has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

57.     Plaintiff EDDIE R. WASHINGTON is a natural person and spouse of Plaintiff SHARON WASHINGTON.

58.     Upon investigation and belief, Plaintiff VICKY WEEMS is and was at all relevant times a citizen and resident of the state of Oklahoma, and was prescribed and administered TAXOTERE®, which was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC.. VICKY WEEMS has suffered damages as a result of Defendant HOSPIRA, INC. and HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA WORLDWIDE, INC's illegal and wrongful conduct alleged herein.

59.     Plaintiff THOMAS WEEMS is a natural person and spouse of Plaintiff VICKY WEEMS.

60.     Defendant Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807.

61.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

62.     Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating

ELECTRONICALLY FILED 12/13/2017 2:55 PM 2017-L-012703 PAGE 14 of 70

14

within and part of Sanofi-Aventis U.S. LLC.

63.     Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc, and Sanofi-Aventis U.S. LLC, separately and doing business as Winthrop U.S., shall be referred to herein individually by name or jointly as "Sanofi Defendants."

64.     Defendant Hospira, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

65.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

66.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

67.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540.

68.     Defendant Accord Healthcare, Inc. ("Accord") is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

69.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging,

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 15 of 70

15

advertising and/or selling the prescription drug known as TAXOTERE®.

70.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

71.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

72.    At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

73.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

74.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

75.    At all times relevant, Defendants were engaged in the business of developing,

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 16 of 70

16

designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes Illinois, either directly or indirectly through third parties, subsidiaries or related entities, the drug TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 17 of 70

## DEFENDANT'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE®

76.    TAXOTERE® is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. TAXOTERE® is a part of a family of drugs commonly referred to as taxanes.

77.    Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include TAXOL® and TAXOTERE®. Taxane agents also exist as cabazitaxel and in generic forms as well.

78.    TAXOL®, which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to TAXOTERE®, was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

79.    The drug and chemical compound that would become known as TAXOTERE® was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. TAXOTERE® was conceived as an increased potency taxane.

80.    The initial patent disclosing the formulation and computation of TAXOTERE® was issued to Rhone-Poulence Santé and subsequently assigned to Aventis Pharma S.A in March 1989.

81.    In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental*

17

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 18 of 70

*Properties of RP 56976*, a TAXOL® derivative. RP 56976 was the number that Rhone-Polunee assigned to docetaxel.

82.     Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound TAXOTERE®, but Sanofi was also directly involved in the clinical trials and testing of the compound TAXOTERE®. Accordingly, Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiffs in the United States.

83.     Rhône-Poulenc Rorer S.A. initially sought FDA approval for TAXOTERE® in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of TAXOTERE®, because TAXOTERE® was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of TAXOTERE®'s side effects were needed.

84.     TAXOTERE® was ultimately approved by the FDA on May 14, 1996. According to its product labeling, TAXOTERE® was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

85.     After the initial FDA approval, Sanofi sought and was granted FDA approval for additional indications for TAXOTERE®. Based on self-sponsored clinical trials, Sanofi claimed superiority over other chemotherapy products approved to treat breast cancer. These marketing claims included claims of superior efficacy over the lower potency taxane product TAXOL®,

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 19 of 70

which was the primary competitor product to TAXOTERE®.

86.     Defendant McKesson Corporation distributed, packaged, labeled, and promoted TAXOTERE® in Illinios and around the country throughout this period.  U.S. Oncology, a specialty drug distributor now owned by McKesson, supported research and the subsequent promotion of TAXOTERE® at conferences including the annual meetings for the American Society of Clinical Oncology.  McKesson continued this activity after it acquired U.S. Oncology in 2010.

87.     Contrary to Defendants' claims of superior efficacy, post market surveillance has shown that the more potent TAXOTERE® does not in fact offer increased efficacy or benefits over other taxanes, and in fact is more toxic. Defendants concealed and failed to warn about the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

88.     A study of available clinical studies concerning the relative efficacy of taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® or TAXOL®.

89.     A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® was more effective than TAXOTERE® for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

90.     Despite the publication of these studies, Defendants continued to make false and misleading statements promoting the "superior efficacy" of TAXOTERE® over the competing product TAXOL®. In June 2008, Sanofi-Aventis utilized marketing and promotional materials for TAXOTERE® at the annual meeting for the American Society of Clinical Oncology,

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 20 of 70

comparing the efficacy of TAXOTERE® versus TAXOL®.   Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO study") and performed by researchers affiliated with Sanofi and US Oncology.   The study concluded that "TAXOTERE® demonstrated superior efficacy compared with TAXOL®, providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

91.     Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that TAXOTERE® was not more effective than TAXOL® in the treatment of breast cancer.

92.     As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over TAXOL® stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for TAXOTERE® (docetaxel) Injection Concentrate, Intravenous Infusion (docetaxel) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of TAXOTERE® . Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

_____

[1]     Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2]     Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at Sanofi-Aventis.

93.     A qui tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use TAXOTERE®. *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

94.     Beginning in 1996, Sanofi-Aventis U.S. LLC and its predecessors and affiliates planned, directed, and engaged in a marketing scheme that promoted TAXOTERE® for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of TAXOTERE® to expand the market for TAXOTERE® in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe TAXOTERE® for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of TAXOTERE® from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

95.     As a direct result of their wrongful conduct and illegal kickback schemes, Defendants directly caused thousands of individuals to be exposed to TAXOTERE®'s increased toxicity as compared to other available less toxic products such as TAXOL®.

96.     As a direct result of their aforementioned conduct, Defendants caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 21 of 70

21

**B.    GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT**

97.    Hospira Defendants filed for a NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted Hospira's NDA on or about March 8, 2011 and Hospira put the docetaxel anhydrous on the market on or about March 8, 2011.

98.    Defendant McKesson filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted McKesson's NDA on or about June 8, 2011, and McKesson put docetaxel anhydrous on the market on or about June 8, 2011.

99.    Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA on or about July 22, 2015 and Sandoz put docetaxel on the market on or about July 22, 2015.

100.    Upon information and belief, Defendant Accord filed for two (3) NDAs with the FDA for generic non-bioequivalents of Taxotere (docetaxel).

101.    Upon information and belief, Defendant Accord was approved by the FDA for the first generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel on or about June 30, 2011 and Accord put docetaxel on the market on or about June 30, 2011.

102.    Defendant Accord was approved by the FDA for the second generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous (20 mg/0.5 mL and 80 mg/2 mL) on or about July 1, 2012 and Accord put docetaxel anhydrous on the market on or about July 1, 2012.

103.    Upon information and belief, Defendant Accord was approved by the FDA for the third generic non-bioequivalent of Taxotere (docetaxel) in another form of docetaxel anhydrous

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 22 of 70

22

in a more concentrated form, on or about May 15, 2013 and Accord put the mor concentrated docetaxel anhydrous on the market on or about May 15, 2013.

## DEFENDANTS' COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN TAXOTERE® AND PERMANENT DISFIGURING HAIR LOSS

104.     Although temporary alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiffs, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

105.     Defendants knew or should have known that the rate of permanent alopecia related to TAXOTERE® was far greater than with other products available to treat the same condition as Defendants' product.

106.     Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of TAXOTERE® suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

107.     Although women might accept the possibility of permanent baldness as a result of the use of TAXOTERE® if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful conduct resulted in tens of thousands of women being exposed to the adverse side effects of TAXOTERE®, there were already similar products on the market that were at least as effective as TAXOTERE® and did not subject female users to the same risk of disfiguring permanent alopecia as does TAXOTERE®.

108.     Beginning in the late 1990s, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 23 of 70

23

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 24 of 70

Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took TAXOTERE® had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases, longer, after taking TAXOTERE®. Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiffs in the United States.

109.    In 2006, Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken TAXOTERE® suffered from permanent disfiguring hair loss for years after the patients had stopped taking TAXOTERE®.

110.    Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken TAXOTERE® and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiffs, that patients who take TAXOTERE® are at a significantly increased risk of suffering from permanent disfiguring hair loss.

111.    Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that TAXOTERE® causes an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiffs in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking TAXOTERE®.

112.    Users of TAXOTERE® were not presented with the opportunity to make an informed choice as to whether the benefits of TAXOTERE® were worth its associated risks.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 25 of 70

Defendants engaged in a pattern of deception by overstating the benefits of TAXOTERE® as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

113.    Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to TAXOTERE® and the risk of permanent alopecia, the words permanent alopecia or permanent hair loss do not appear in any information published by Defendants in the United States.

114.    As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

115.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

116.    Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

117.    TAXOTERE® was defective in its design. TAXOTERE® was designed as an increased potency Taxane. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxane was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

25

118.    In other countries, Defendants published information to individual patients and regulatory agencies about TAXOTERE® and the risk of permanent alopecia. But until December 2015, the words permanent alopecia or permanent hair loss did not appear in any information published by Defendants in the United States.

119.    In December 2015, the FDA changed the safety labeling for TAXOTERE® (docetaxel), to add a sentence: "Cases of permanent alopecia have been reported." This sentence appears on page 33 of the label, in the Full Prescribing Information. On the first page, which is the Highlights of Prescribing Information, only "alopecia" is listed as an adverse reaction; "permanent alopecia" is not.

120.    As a direct result of Defendants' wrongful and deceptive acts, tens of thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

121.    As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiffs, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using TAXOTERE® over other comparable products was justified.

122.    Defendants preyed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

123.    Plaintiffs, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 26 of 70

## NATURE OF THE CLAIMS

124.    Despite the fact that Defendants disclosed risks associated with TAXOTERE®

and permanent alopecia to patients and regulatory agencies in other countries, Defendants failed

to either alert Plaintiffs, the public, and the scientific community in the United States or perform

further investigation into the safety of TAXOTERE® regarding the side effect of disfiguring

permanent alopecia. Defendants failed to update the warnings for TAXOTERE®, and they failed

to disclose the results of additional studies as Defendants learned new facts regarding the defects

and risks of their product.

125.    In particular, Defendants:

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 27 of 70

(a)     failed to disclose their investigation and research from 2005, including but not
limited to the results of the GEICAM 9805 study, and failed to further investigate, research,
study, and define fully and adequately the safety profile of TAXOTERE® in response to these
studies;

(b)     failed to provide adequate warnings about the true safety risks associated with the
use of TAXOTERE®;

(c)     failed to provide adequate warning regarding the pharmacokinetic and
pharmacodynamic variability of TAXOTERE® and its effects on the degree or severity of side
effects related to permanent alopecia;

(d)     failed to disclose in the "Warnings" Section that permanent alopecia is a frequent
side effect associated with the use of TAXOTERE®;

(e)     failed to advise prescribing physicians, such as Plaintiffs' physicians, to instruct
patients that permanent alopecia was a side effect, much less a frequent side effect, linked to
TAXOTERE®;

(f)     failed to provide adequate instructions on how to intervene and/or reduce the risk
of permanent alopecia related to the use of TAXOTERE®;

(g)     failed to provide adequate warnings and information related to the increased risks
of permanent alopecia in certain genome groups;

(h)     failed to provide adequate warnings regarding the increased risk of permanent
alopecia with the use of TAXOTERE® as compared to other products intended to treat the same
conditions as TAXOTERE®; and

27

(i)     failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

126.     During the years since first marketing TAXOTERE® in the U.S., Defendants modified the U.S. labeling and prescribing information for TAXOTERE® on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

127.     Before applying for and obtaining approval of TAXOTERE®, Defendants knew or should have known that consumption of TAXOTERE® was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

128.     Despite knowing that TAXOTERE® was likely to result in increased rates of alopecia and disfiguring permanent alopecia, Defendants produced, marketed, and distributed TAXOTERE® in the United States.

129.     Defendants failed to adequately conduct complete and proper testing of TAXOTERE® prior to filing their New Drug Application for TAXOTERE®.

130.     From the date Defendants received FDA approval to market TAXOTERE®, Defendants made, distributed, marketed, and sold TAXOTERE® without adequate warning to Plaintiffs or Plaintiffs' prescribing physicians that TAXOTERE® was associated with disfiguring permanent alopecia.

131.     Defendants ignored the association between the use of TAXOTERE® and the risk of disfiguring permanent alopecia.

132.     Defendants failed to disclose information that they possessed regarding their failure to adequately test and study TAXOTERE® related to the side effect of disfiguring permanent alopecia. Plaintiffs and their healthcare providers could not have discovered

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 28 of 70

28

Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

133.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

134.    Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

135.    Plaintiffs are within the applicable statutes of limitations for the claims presented herein because Plaintiffs did not discover the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' TAXOTERE® and the risks associated with its use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of TAXOTERE®, and other acts and omissions.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 29 of 70

29

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 30 of 70

136.    In addition, Defendants are estopped from relying on any statutes of limitations or repose by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that Defendants' TAXOTERE® was defective, unreasonably dangerous and carried with it the serious risk of developing the injuries Plaintiffs have suffered while aggressively and continually marketing and promoting TAXOTERE® as safe and effective.  This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of TAXOTERE®, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiffs; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of TAXOTERE®.

137.    Defendants had a duty to disclose that TAXOTERE® was defective, unreasonably dangerous and that the use of Defendants' TAXOTERE® carried with it the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

138.    Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' TAXOTERE® or the true risks associated with her use at the time she purchased and used Defendants' TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 31 of 70

139.     Defendants did not notify, inform, or disclose to Plaintiffs, Plaintiffs' prescribing health care professionals or the general consuming public that Defendants' TAXOTERE® was defective and that its use carried with it the serious risk of developing the injuries Plaintiffs has suffered and complained of herein.

140.     Because Defendants failed in their duty to notify Plaintiffs, Plaintiffs' prescribing health care professionals and the general consuming public that their TAXOTERE® was defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation or repose.

141.     Accordingly, Plaintiffs file this lawsuit within the applicable statutes of limitations, Plaintiffs could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of their injuries at an earlier time, and when Plaintiffs' injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants.  Further, the relationship of Plaintiffs' injuries to TAXOTERE® exposure through the Defendants' drug was inherently difficult to discover, in part due to the Defendants' knowing suppression of important safety information.  Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiffs may have a basis for an actionable claim.

## PLAINTIFFS' DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

142.     Plaintiff LINDA RICE was diagnosed with breast cancer. Neither LINDA RICE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, LINDA RICE underwent chemotherapy that included TAXOTERE®.  Following the completion of

chemotherapy, LINDA RICE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

143.   Plaintiff ANTOINETTE CLARK was diagnosed with breast cancer. Neither ANTOINETTE CLARK nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, ANTOINETTE CLARK underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, ANTOINETTE CLARK suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

144.   Plaintiff SONIA COLLINS was diagnosed with breast cancer. Neither SONIA COLLINS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SONIA COLLINS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SONIA COLLINS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

145.   Plaintiff BIANCA CONKLIN was diagnosed with breast cancer. Neither BIANCA CONKLIN nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 32 of 70

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BIANCA CONKLIN underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BIANCA CONKLIN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

146.    Plaintiff LYNELL DAGGS was diagnosed with breast cancer. Neither LYNELL DAGGS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LYNELL DAGGS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LYNELL DAGGS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

147.    Plaintiff MADELEINE DWOLAKOWSKI was diagnosed with breast cancer. Neither MADELEINE DWOLAKOWSKI nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MADELEINE DWOLAKOWSKI underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MADELEINE DWOLAKOWSKI suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 33 of 70

continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

148.    Plaintiff KAREN GILYARD was diagnosed with breast cancer. Neither KAREN GILYARD nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, KAREN GILYARD underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, KAREN GILYARD suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

149.    Plaintiff NICOLE C. GORMAN was diagnosed with breast cancer. Neither NICOLE C. GORMAN nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.  Accordingly, NICOLE C. GORMAN underwent chemotherapy that included TAXOTERE®.  Following the completion of chemotherapy, NICOLE C. GORMAN suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

150.    Plaintiff DAWN V. GRAVES was diagnosed with breast cancer. Neither DAWN V. GRAVES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DAWN V. GRAVES underwent chemotherapy that included TAXOTERE®.

ELECTRONICALLY FILED 12/13/2017 2:55 PM 2017-L-012703 PAGE 34 of 70

34

Following the completion of chemotherapy, DAWN V. GRAVES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

151.   Plaintiff MARJORIE HUNT-BLUFORD was diagnosed with breast cancer. Neither MARJORIE HUNT-BLUFORD nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, MARJORIE HUNT-BLUFORD underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, MARJORIE HUNT-BLUFORD suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

152.   Plaintiff GWENDOLYN JACKSON- FORTUNE was diagnosed with breast cancer. Neither GWENDOLYN JACKSON- FORTUNE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GWENDOLYN JACKSON- FORTUNE underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GWENDOLYN JACKSON- FORTUNE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 35 of 70

153.   Plaintiff LENORA JOHNSON was diagnosed with breast cancer. Neither LENORA JOHNSON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, LENORA JOHNSON underwent chemotherapy that included TAXOTERE®.   Following the completion of chemotherapy, LENORA JOHNSON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

154.   Plaintiff LINDA JONES was diagnosed with breast cancer. Neither LINDA JONES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LINDA JONES underwent chemotherapy that included TAXOTERE®.   Following the completion of chemotherapy, LINDA JONES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

155.   Plaintiff TRACY JORDAN-STEELE was diagnosed with breast cancer. Neither TRACY JORDAN-STEELE nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, TRACY JORDAN-STEELE underwent chemotherapy that included TAXOTERE®.   Following the completion of chemotherapy, TRACY JORDAN-STEELE suffered from disfiguring permanent hair loss as a result of receiving chemotherapy

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 36 of 70

with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

156.   Plaintiff LILLIAN H MIRABELLA was diagnosed with breast cancer. Neither LILLIAN H MIRABELLA nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, LILLIAN H MIRABELLA underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, LILLIAN H MIRABELLA suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

157.   Plaintiff GENEVA POWELL was diagnosed with breast cancer. Neither GENEVA POWELL nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, GENEVA POWELL underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, GENEVA POWELL suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

158.   Plaintiff BEVERLY PRIBBENOW was diagnosed with breast cancer. Neither BEVERLY PRIBBENOW nor her treating healthcare providers were aware of or informed by

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 37 of 70

Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, BEVERLY PRIBBENOW underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, BEVERLY PRIBBENOW suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

159.    Plaintiff PATSY S. REEVES was diagnosed with breast cancer. Neither PATSY S. REEVES nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, PATSY S. REEVES underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, PATSY S. REEVES suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

160.    Plaintiff DELILAH RICKS was diagnosed with breast cancer. Neither DELILAH RICKS nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, DELILAH RICKS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, DELILAH RICKS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 38 of 70

38

161.   Plaintiff CAROLE M. SCOTT was diagnosed with breast cancer. Neither CAROLE M. SCOTT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, CAROLE M. SCOTT underwent chemotherapy that included TAXOTERE®.   Following the completion of chemotherapy, CAROLE M. SCOTT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

162.   Plaintiff FRANCES SHULAR was diagnosed with breast cancer. Neither FRANCES SHULAR nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, FRANCES SHULAR underwent chemotherapy that included TAXOTERE®.   Following the completion of chemotherapy, FRANCES SHULAR suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

163.   Plaintiff SHARON SMITH was diagnosed with breast cancer. Neither SHARON SMITH nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, SHARON SMITH underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, SHARON SMITH suffered from disfiguring

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 39 of 70

39

permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

164.   Plaintiff JESSICA VINCENT was diagnosed with breast cancer. Neither JESSICA VINCENT nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, JESSICA VINCENT underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, JESSICA VINCENT suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

165.   Plaintiff SHARON WASHINGTON was diagnosed with breast cancer. Neither SHARON WASHINGTON nor her treating healthcare providers were aware of or informed by Defendants that disfiguring permanent alopecia can occur following treatment with TAXOTERE®.   Accordingly, SHARON WASHINGTON underwent chemotherapy that included TAXOTERE®.   Following the completion of chemotherapy, SHARON WASHINGTON suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

166.   Plaintiff VICKY WEEMS was diagnosed with breast cancer. Neither VICKY WEEMS nor her treating healthcare providers were aware of or informed by Defendants that

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 40 of 70

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 41 of 70

disfiguring permanent alopecia can occur following treatment with TAXOTERE®. Accordingly, VICKY WEEMS underwent chemotherapy that included TAXOTERE®. Following the completion of chemotherapy, VICKY WEEMS suffered from disfiguring permanent hair loss as a result of receiving chemotherapy with TAXOTERE®. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with TAXOTERE®.

## FIRST CLAIM FOR RELIEF
### (Product Liability for Negligence – Against All Defendants)

167.    Plaintiffs repeat, reiterates, and re-alleges all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

168.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of TAXOTERE® into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

169.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of TAXOTERE® into interstate commerce in that Defendants knew or should have known that using TAXOTERE® created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

170.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

    a)  Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without thoroughly testing it;

    b)  Manufacturing, producing, promoting, formulating, creating, and/or designing TAXOTERE® without adequately testing it;

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 42 of 70

c) Not conducting sufficient testing programs to determine whether or not TAXOTERE® was safe for use in that Defendants knew or should have known that TAXOTERE® was unsafe and unfit for use by reason of the dangers to its users;

d) Selling TAXOTERE® without disclosing its dangers and risks and/or making proper and sufficient tests to determine the dangers and risks to its users;

e) Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of TAXOTERE®;

f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, TAXOTERE®;

g) Failing to test TAXOTERE® and/or failing to adequately, sufficiently, and properly test TAXOTERE®;

h) Negligently advertising and recommending the use of TAXOTERE® without sufficient knowledge as to its dangerous propensities;

i) Negligently representing that TAXOTERE® was safe for use for its intended purpose, when, in fact, it was unsafe;

j) Negligently and falsely representing that TAXOTERE® was superior to other commercially available products designed to treat the same forms of cancer TAXOTERE® was designed to treat;

k) Negligently designing TAXOTERE® in a manner that was dangerous to its users;

l) Negligently manufacturing TAXOTERE® in a manner that was dangerous to its users;

m) Negligently producing TAXOTERE® in a manner that was dangerous to its users;

n) Negligently assembling TAXOTERE® in a manner that was dangerous to its users;

o) Concealing information from Plaintiffs, Plaintiffs' physicians, the public, and the FDA in knowing that TAXOTERE® was unsafe, dangerous, and/or non-conforming with FDA regulations; and

42

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 43 of 70

p) Improperly concealing from and/or misrepresenting information to Plaintiffs, Plaintiffs' physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of TAXOTERE® compared to other forms of treatment for breast cancer.

171.    Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with TAXOTERE®.

172.    Defendants negligently conveyed that the safety risks and/or dangers of TAXOTERE® were comparable with other forms of treatment for the same conditions for which TAXOTERE® was prescribed to treat.

173.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of TAXOTERE® in that they:

a) Failed to use due care in designing and manufacturing TAXOTERE® so as to avoid the aforementioned risks to individuals when TAXOTERE® was used for the treatment of breast cancer;

b) Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of TAXOTERE®;

c) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with TAXOTERE®;

d) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning TAXOTERE®;

e) Failed to warn Plaintiffs and Plaintiffs' physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

f) Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance, to determine the safety, dangers, and risks associated with TAXOTERE®;

g) Failed to warn Plaintiffs and Plaintiffs' physicians before actively encouraging the sale of TAXOTERE®, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

43

h)  Were otherwise careless and/or negligent.

174.    Despite the fact that Defendants knew or should have known that TAXOTERE®
caused unreasonably dangerous side effects, Defendants continued and continue to market,
manufacture, distribute, and/or sell TAXOTERE® to consumers, including Plaintiff.

175.    Defendants negligently and improperly failed to perform sufficient tests, forcing
Plaintiffs, Plaintiffs' physicians, and/or hospitals to rely on safety information that did not
accurately represent the risks and benefits associated with the use of TAXOTERE® as compared
to other products already commercially available to treat the same types of cancer TAXOTERE®
was designed to treat.

176.    Defendants knew or should have known that consumers such as Plaintiff would
use their product and would foreseeably suffer injury as a result of Defendants' failure to
exercise reasonable care, as set forth above.

177.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harms,
damages, and losses.

178.    As a direct and proximate result of the use of TAXOTERE®, Plaintiff
experienced disfiguring permanent alopecia.

179.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to
suffer serious and dangerous side effects, severe and personal injuries that are permanent and
lasting in nature, and economic and non-economic damages, harms, and losses, including but not
limited to: past and future medical expenses; psychological counseling and therapy expenses;
past and future loss of earnings; past and future loss and impairment of earning capacity;
permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating
emotional distress; increased risk of future harm; past, present, and future physical and mental
pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality
and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 44 of 70

44

## SECOND CLAIM FOR RELIEF
### (Strict Products Liability – Design and Manufacturing Defects – Against All Defendants)

180.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

181.   At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed TAXOTERE® as hereinabove described that was used by Plaintiffs.

182.   TAXOTERE® was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

183.   At those times, TAXOTERE® was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

184.   The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of TAXOTERE®.

185.   TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

186.   At all times relevant, TAXOTERE® was in a defective condition and unsafe, and Defendants knew or had reason to know that TAXOTERE® was defective and unsafe, especially when used in the form and manner as provided by Defendants.

187.   Defendants knew, or should have known, that at all times relevant, TAXOTERE® was in a defective condition and was and is inherently dangerous and unsafe.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 45 of 70

45

188.    At the time of Plaintiff's use of TAXOTERE®, the TAXOTERE® was being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

189.    Defendants with this knowledge voluntarily designed TAXOTERE® in a dangerous condition for use by the public, and in particular, Plaintiffs.

190.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

191.    In creating TAXOTERE®, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

192.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

193.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' TAXOTERE® was manufactured.

194.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiffs in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs.

195.    Plaintiffs and Plaintiffs' physicians could not, by the exercise of reasonable care, have discovered TAXOTERE®'s defects mentioned herein and perceived its danger.

196.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 46 of 70

46

197.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

198.    The TAXOTERE® designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement, as well as other severe and permanent health consequences from TAXOTERE®, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote TAXOTERE®.

199.    By reason of the foregoing, Defendants are strictly liable to Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of TAXOTERE®, a defective product.

200.    Defendants' defective design, manufacturing defect, and inadequate warnings of TAXOTERE® were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

201.    The defects in Defendants' drug TAXOTERE® were a producing cause and a substantial factor in causing Plaintiffs' injuries.

202.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 47 of 70

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 48 of 70

## THIRD CLAIM FOR RELIEF
### (Strict Products Liability – Failure to Warn– Against All Defendants)

203.        Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

204.        The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective in that it failed to include adequate warnings regarding all adverse side effects associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia. As the holder for the RLD of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. This labeling was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

205.        Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, and Defendants aggressively and fraudulently promoted the product to physicians.

206.        As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiffs suffer from disfiguring permanent alopecia and other conditions.

207.        As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**(Breach of Express Warranty – Against All Defendants)**

</div>

208.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

209.   Defendants expressly warranted that TAXOTERE® was safe and well accepted by users.

210.   TAXOTERE® does not conform to these express representations, because TAXOTERE® is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.

211.   As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, harms, and losses.

212.   Plaintiffs relied on Defendants' express warranties.

213.   Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of TAXOTERE® in recommending, prescribing, and/or dispensing TAXOTERE®. Defendants breached the aforesaid express warranties, as their drug TAXOTERE® was and is defective.

214.   Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, and/or healthcare providers that TAXOTERE® was safe and fit for use for the purposes intended, that it

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 49 of 70

<div align="center">49</div>

was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

215.    Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that TAXOTERE® was not safe and fit for the use intended, and, in fact, TAXOTERE® produced serious injuries to the users that were not accurately identified and represented by Defendants.

216.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 50 of 70

## **FIFTH CLAIM FOR RELIEF**
### (Breach of Implied Warranty – Against All Defendants)

217.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

218.    At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® and/or have recently acquired the entities that have manufactured, compounded,

50

portrayed, distributed, recommended, merchandized, advertised, promoted, and sold TAXOTERE® for the treatment of various forms of cancer.

219.    At the time Defendants marketed, sold, and distributed TAXOTERE® for use by Plaintiff, Defendants knew of the use for which TAXOTERE® was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

220.    Defendants impliedly represented and warranted to the users of TAXOTERE® and their physicians, and/or healthcare providers that TAXOTERE® was safe and of merchantable quality and fit for the ordinary purpose for which it was to be used.

221.    Defendants' aforementioned representations and warranties were false, misleading, and inaccurate in that TAXOTERE® was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

222.    Plaintiffs, Plaintiffs' physicians, members of the medical community, and healthcare professionals relied on this implied warranty of merchantability of fitness for a particular use and purpose.

223.    Plaintiffs, Plaintiffs' physicians, and Plaintiff's healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether TAXOTERE® was of merchantable quality and safe and fit for its intended use.

224.    TAXOTERE® was placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition.

225.    TAXOTERE® was expected to and did reach users, handlers, and persons coming into contact with TAXOTERE® without substantial change in the condition in which it was sold.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 51 of 70

51

226.    Defendants breached the aforementioned implied warranties, as their drug TAXOTERE® was not fit for its intended purposes and uses.

227.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SIXTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation – Against All Defendants)

228.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

229.    Defendants falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and effective for the treatment of certain forms of cancer.

230.    When warning of safety and risks of TAXOTERE®, Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

52

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 52 of 70

231.   Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

232.   Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

233.   Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

234.   Defendants made these false representations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

235.   When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

236.   At the time Defendants made the aforesaid representations, and, at the time Plaintiff used TAXOTERE®, Plaintiffs and Plaintiffs' physicians were unaware of the falsity of

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 53 of 70

53

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 54 of 70

Defendants' representations, and Plaintiffs and Plaintiffs' physicians reasonably believed them to be true.

237.    In reliance upon Defendants' representations, Plaintiffs and Plaintiffs' physicians were induced to and did use and prescribe TAXOTERE®, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

238.    Defendants knew and were aware or should have been aware that TAXOTERE® had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

239.    Defendants knew or should have known that TAXOTERE® had a potential to, could, and would cause severe and grievous injury to the users of TAXOTERE® and that TAXOTERE® was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

240.    Defendants brought TAXOTERE® to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

241.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SEVENTH CLAIM FOR RELIEF
### (Fraudulent Concealment – Against All Defendants)

242.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

243.    At all times during the course of dealing between Defendants and Plaintiffs and

Plaintiffs' healthcare providers, Defendants misrepresented the design characteristics and safety

of TAXOTERE® for its intended use.

244.    Defendants knew or were reckless in not knowing that its representations were

false.

245.    In representations made to Plaintiffs and Plaintiffs' healthcare providers,

Defendants fraudulently concealed and intentionally omitted the following material information:

q)  that TAXOTERE® was not as safe as other forms of treatment for which
    TAXOTERE® was marketed and sold to cancer patients;

r)  that the risks of adverse events with TAXOTERE® were higher than those
    with other forms of treatment for which TAXOTERE® was marketed and
    sold to cancer patients;

s)  that the risks of adverse events with TAXOTERE® were not adequately
    tested and/or known by Defendants;

t)  that Defendants were aware of dangers in TAXOTERE®, in addition to and
    above and beyond those associated with other forms of treatment for cancer
    patients;

u)  that TAXOTERE® was defective in that it caused dangerous side effects as
    well as other severe and permanent health consequences in a much more and
    significant rate than other forms of treatment for cancer patients;

v)  that TAXOTERE® was manufactured negligently;

w)  that TAXOTERE® was manufactured defectively;

x)  that TAXOTERE® was manufactured improperly;

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 55 of 70

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 56 of 70

y)  that TAXOTERE® was designed negligently;

z)  that TAXOTERE® was designed defectively; and

aa) that TAXOTERE® was designed improperly.

246.   Defendants had a duty to disclose to Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers the defective nature of TAXOTERE®, including but not limited to the heightened risks of disfiguring permanent alopecia.

247.   Defendants had sole access to material facts concerning the defective nature of TAXOTERE® and its propensity to cause serious and dangerous side effects, and therefore cause damage to persons who used TAXOTERE®, including Plaintiffs, in particular.

248.   Defendants' concealment and omissions of material facts concerning the safety of TAXOTERE® was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, Plaintiffs' physicians, hospitals, and healthcare providers into reliance on the continued use of TAXOTERE® and to cause them to purchase, prescribe, and/or dispense TAXOTERE® and/or use TAXOTERE®.

249.   Defendants knew that Plaintiffs, Plaintiffs' physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding TAXOTERE® set forth herein.

250.   Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

251.   As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer from serious and dangerous side effects, severe and personal injuries that are permanent

and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

<div align="center">

**EIGHTH CLAIM FOR RELIEF**
**(Negligence Misrepresentation – Against All Defendants)**

</div>

252.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

253.    Defendants had a duty to represent to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and found to be safe and effective for the treatment of various forms of cancer.

254.    When warning of safety and risks of TAXOTERE®, Defendants negligently represented to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, and the public in general that TAXOTERE® had been tested and was found to be safe and/or effective for its indicated use.

255.    Defendants concealed their knowledge of TAXOTERE®'s defects from Plaintiffs, Plaintiffs' physicians, and the public in general and/or the medical community specifically.

256.    Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' physicians, hospitals, pharmacists, and the public in general.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 57 of 70

257.    Defendants misrepresented the novel nature of their product in order to gain a market advantage resulting in billions of dollars in revenues at the expense of vulnerable cancer victims such as Plaintiffs.

258.    Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase TAXOTERE® for use in the treatments of various forms of cancer, including but not limited to breast cancer.

259.    Defendants failed to exercise ordinary and reasonable care in their representations of TAXOTERE® while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented TAXOTERE®'s high risk of unreasonable, dangerous side effects.

260.    Defendants breached their duty in misrepresenting TAXOTERE®'s serious side effects to Plaintiffs, Plaintiffs' physicians, the medical and healthcare community, the FDA, and the public in general.

261.    Plaintiffs and Plaintiffs' physicians reasonably relied on Defendants to fulfill their obligations to disclose all facts within their knowledge regarding the serious side effects of TAXOTERE®.

262.    As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses;

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 58 of 70

58

past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

<div align="center">

### NINTH CLAIM FOR RELIEF
**(Strict Product Liability for Misrepresentation – Against All Defendants)**

</div>

263.   Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

264.   Defendants sold the TAXOTERE® that Plaintiffs' physicians prescribed for Plaintiffs and that Plaintiffs used.

265.   Defendants were engaged in the business of selling the TAXOTERE® for resale, use, or consumption.

266.   Defendants misrepresented facts as set forth herein concerning the character or quality of the TAXOTERE® that would be material to potential prescribers and purchasers or users of the product.

267.   Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

268.   As a purchaser or user, Plaintiffs reasonably relied on the misrepresentation.

269.   Plaintiffs are persons who would reasonably be expected to use, consume, or be affected by the TAXOTERE®.

270.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 59 of 70

limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## TENTH CLAIM FOR RELIEF
### (Fraud and Deceit – Against All Defendants)

271.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.

272.    Defendants committed fraud by omission in applying for and gaining patent protection for TAXOTERE® resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiffs' exposure to the side effects of TAXOTERE®.

273.    Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which TAXOTERE® was designed to treat. These fraudulent representations were the proximal cause of Plaintiff's exposure to the side effects of TAXOTERE®.

274.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally distributed false information, including but not limited to assuring Plaintiffs, Plaintiffs' physicians, hospitals, healthcare professionals, and/or the public that TAXOTERE® was safe and effective for use in the treatment of various forms of cancer, including breast cancer.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 60 of 70

60

275.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and or research to Plaintiffs, Plaintiffs' physicians, healthcare professionals, and/or the public.

276.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public to disseminate truthful information.

277.    Defendants had a duty when disseminating information to Plaintiffs, Plaintiffs' physicians, and the public not to deceive Plaintiffs, Plaintiffs' physicians, and/or the public.

278.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

279.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug TAXOTERE® was safe and effective for the treatment of various forms of cancer, including breast cancer.

280.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that Defendants' drug TAXOTERE® carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions for which TAXOTERE® was designed to treat.

281.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was not injurious to the health and/or safety of its intended users.

282.    The information Defendants distributed to Plaintiffs, Plaintiffs' physicians, and the public intentionally included false representations that TAXOTERE® was no more injurious

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 61 of 70

61

to the health and/or safety of its intended users as other forms of cancer treatments for which TAXOTERE® was designed to treat.

283.    These representations by Defendants were all false and misleading.

284.    Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that TAXOTERE® was not safe as a means of treatment for certain types of cancer for which TAXOTERE® was designed to treat.

285.    Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® not having dangerous and serious health and/or safety concerns.

286.    Defendants intentionally made material misrepresentations to Plaintiffs, Plaintiffs' physicians, and the public in general, including the medical profession, regarding the safety of TAXOTERE®, specifically but not limited to TAXOTERE® being as safe as other products designed to treat the same conditions TAXOTERE® was designed to treat.

287.    It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiffs, Plaintiffs' physicians, and/or the public and to gain the confidence of Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of TAXOTERE® and induce Plaintiffs, Plaintiffs' physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use TAXOTERE®.

288.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 62 of 70

professionals that TAXOTERE® was fit and safe for use as treatment for certain types of cancer, including breast cancer.

289.    Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiffs, Plaintiffs' physicians, the public, and/or healthcare professionals that TAXOTERE® was fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for which TAXOTERE® was designed to treat.

290.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present risks related to disfigurement secondary to permanent alopecia.

291.    Defendants made false claims and false representations in its documents submitted to Plaintiffs, Plaintiffs' physicians, the public, and healthcare professionals that TAXOTERE® did not present health and/or safety risks greater than other forms of treatment for the same conditions TAXOTERE® was designed to treat.

292.    Defendants made these and other representations with a pretense of actual knowledge when Defendants had no knowledge of the truth or falsity of these representations, and Defendants made these representations recklessly and without regard to the actual facts.

293.    Defendants made these and other representations with the intention of deceiving and defrauding Plaintiffs and Plaintiffs' respective healthcare professionals.

294.    Defendants made these and other representations in order to induce Plaintiffs and Plaintiffs' respective healthcare professionals to rely upon the misrepresentations.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 63 of 70

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 64 of 70

295.    Defendants' false misrepresentations caused Plaintiffs and/or Plaintiffs'
healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or
prescribe TAXOTERE®.

296.    Defendants recklessly and intentionally falsely represented the dangerous and
serious health and/or safety concerns of TAXOTERE® to the public at large, and Plaintiffs and
Plaintiffs' physicians in particular, for the purpose of influencing the marketing of a product
Defendants knew was dangerous and defective and/or not as safe as other alternatives, including
other forms of treatment for cancer.

297.    Defendants willfully and intentionally failed to disclose, concealed, and/or
suppressed the material facts regarding the dangerous and serious health and/or safety concerns
related to TAXOTERE®.

298.    Defendants willfully and intentionally failed to disclose the truth and material
facts related to TAXOTERE® and made false representations with the purpose and design of
deceiving and lulling Plaintiffs and Plaintiffs' respective healthcare professionals into a sense of
security so that Plaintiffs and Plaintiffs' healthcare professionals would rely on Defendants'
representations to purchase, use, dispense, prescribe, and/or recommend TAXOTERE®.

299.    Defendants, through their public relations efforts, which included but were not
limited to public statements and press releases, knew or should have known that the public,
including Plaintiffs and Plaintiffs' respective healthcare professionals, would rely upon the
information being disseminated.

300.    Plaintiffs and/or Plaintiffs' respective healthcare professionals did in fact rely on
and believe Defendants' false representations to be true at the time they were made, and they

relied upon Defendants' false representations and superior knowledge of how TAXOTERE®

would treat certain forms of cancer for which TAXOTERE® was designed to treat.

301.   At the time Defendants' false representations were made, Plaintiffs and/or

Plaintiffs' respective healthcare providers did not know the truth and were not with reasonable

diligence able to discover the truth with regard to the dangerous and serious health and/or safety

concerns of TAXOTERE®.

302.   Plaintiffs and their healthcare providers did not discover the true facts with

respect to Defendants' false representations and the dangerous and serious health and/or safety

concerns of TAXOTERE®, and Plaintiffs and their healthcare providers with reasonable

diligence could not have discovered the true facts.

303.   Had Plaintiffs and their healthcare providers known the true facts with respect to

the dangerous and serious health and/or safety concerns of TAXOTERE®, Plaintiffs would not

have purchased, used, and/or relied on Defendants' drug TAXOTERE®.

304.   Defendants' aforementioned conduct constitutes fraud and deceit, and it was

committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

305.   As a result of the foregoing acts and omissions, Defendants caused Plaintiff to

suffer serious and dangerous side effects, severe and personal injuries that are permanent and

lasting in nature, and economic and non-economic damages, harms, and losses, including but not

limited to: past and future medical expenses; psychological counseling and therapy expenses;

past and future loss of earnings; past and future loss and impairment of earning capacity;

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating

emotional distress; increased risk of future harm; past, present, and future physical and mental

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 65 of 70

65

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality

and enjoyment of life.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 66 of 70

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Illinois Consumer Protection Act – Against All Defendants)

306.    Plaintiffs repeat, reiterate, and re-allege all preceding paragraphs of this

Complaint inclusive, with the same force and effect as if fully set forth herein.

307.    Defendants have a statutory duty to refrain from making false and/or fraudulent

representations and/or from engaging in deceptive acts or practices in the sale and promotion of

TAXOTERE® pursuant to the Illinois Consumer Protection Act, 815 ILCS 505 *et seq.*

308.    Defendants engaged in unfair, deceptive, false, and/or fraudulent acts and/or trade

practices in violation of the Illinois Consumer Protection Act, including but not limited to:

a)  Publishing instructions and product material containing inaccurate and incomplete
    factual information regarding TAXOTERE®;

b)  Misrepresenting the nature, quality, and characteristics of TAXOTERE®;

c)  Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or
    misunderstanding;

d)  Misrepresenting the alleged benefits of TAXOTERE®;

e)  Failing to disclose material information concerning known side effects of
    TAXOTERE®;

f)  Misrepresenting the quality of TAXOTERE®; and

g)  Uniformly communicating the purported benefits of TAXOTERE® while failing to
    disclose the serious and dangerous side-effects related to the use of TAXOTERE®
    and its safety, efficacy, and usefulness.

309.    Defendants' conduct in connection with TAXOTERE® was impermissible and

illegal in that it created a likelihood of confusion and misunderstanding, because Defendants

misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 67 of 70

regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of TAXOTERE®.

310.    These deceptive trade practices occurred in the course of Defendants' business.

311.    These deceptive trade practices significantly impacted Plaintiff and the public as actual or potential consumers of Defendants' product TAXOTERE®.

312.    Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

313.    Plaintiffs were an actual consumer of Defendants' product TAXOTERE®.

314.    Defendants' conduct as described above was a material cause of Plaintiffs decisions to purchase TAXOTERE®.

315.    As a direct, foreseeable, and proximate cause of Defendants' deceptive trade practices, Plaintiffs suffered actual damages, including personal injuries, economic damages, and non-economic damages.

316.    Defendants' conduct was wanton, egregious, and reckless.

317.    As a result of the foregoing acts and omissions, Defendants caused Plaintiffs to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

318.    As a result of the foregoing acts, omissions, and wrongful conduct of Defendants, Plaintiffs are entitled to treble damages, attorneys' fees, and costs.

### TWELFTH CLAIM FOR RELIEF
**(Loss of Consortium)**

319.    Spouse plaintiffs complain of defendants, and each of them and for a cause of action for loss of consortium allege as follow:

320.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

321.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants product, who at all times relevant to this action were, and are now, husband and wife.

322.    Subsequent to their injuries, Plaintiffs' were and are unable to perform the necessary duties as a spouse and the work service usually performed in the care, maintenance and management of the family home.

323.    Spouse Plaintiffs were unaware that Plaintiffs' injuries were caused by TAXOTERE® until within two years of filing this Complaint.

324.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 68 of 70

## **PRAYER FOR RELIEF**

WHEREFORE, instate Plaintiffs demand judgment against Defendants Sanofi U.S. Services Inc., formerly known as Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S., Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., McKesson Corporation doing bushiness as McKesson Packaging, Sandoz Inc., Accord Healthcare Ltd., Accord Healthcare Inc., and Does, Inc.,  in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper. Out of state Plaintiffs demand judgment against Defendants Hospira, Inc. and Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 69 of 70

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  December 13, 2017                    Respectfully submitted,

                                             **NAPOLI SHKOLNIK, PLLC**


                              By: /s/ Paul J. Napoli_____
                                  Paul J. Napoli, #6307568
                                  Mark Twain Plaza II
                                  103 West Vandalia Street, Suite 125
                                  Edwardsville, IL 62025
                                  Tel: (618) 307-4528
                                  PNapoli@NapoliLaw.com
                                  **ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
12/13/2017 2:55 PM
2017-L-012703
PAGE 70 of 70

70