NAPOLI SHKOLNIK & ASSOCIATES, LLP
BY:  W. STEVEN BERMAN, ESQUIRE
N.J. BAR NO: 011971986
400 Broadhollow Rd.
Suite 305
Melville, NY 11747
Phone: (856) 988-5574 or (212) 397-1000
*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| KARINE KOCHARIAN, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION - BERGEN COUNTY |
| Plaintiff, | : | |
| | : | DOCKET NO.:_____ |
| v. | : | |
| | : | CIVIL ACTION |
| SANOFI U.S. SERVICES INC., | : | |
| formerly known as SANOFI-AVENTIS | : | |
| U.S. INC; SANOFI-AVENTIS U.S. | : | |
| LLC, separately and doing business as | : | **COMPLAINT & DEMAND FOR** |
| WINTHROP U.S.; and SANDOZ, INC., | : | **JURY DEMAND** |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, Karine Kocharian, (hereinafter "Plaintiff" refers to the plaintiff who was prescribed and ingested the pharmaceutical at issue), by and through undersigned counsel, hereby complains against the Defendants, SANOFI U.S. SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as WINTHROP U.S., and SANDOZ, INC., (hereinafter "Defendants"), and allege as follows:

### A.    BACKGROUND

1.    This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendants' wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of a defective implantable pharmaceutical product known as "Taxotere," (hereinafter "the Product"),

1

a cancer treatment drug part of the chemotherapy family of drugs known as "Taxanes."

2.     At all times material hereto, the Product was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendants

3.     At all material times, the Defendants conducted business throughout the State of New Jersey, including this county, and the Product was sold and marketed throughout the State of New Jersey, including this county.

**B.    PARTIES**

4.     Plaintiff, Karine Kocharian, is a resident of the state of New Jersey, currently residing in 7004 Kennedy Blvd E, Apt 34B, West New York, NJ 07093.

5.     The Defendant, Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

6.     Upon information and belief, Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is one of the largest pharmaceutical companies in the United States.

7.     Sanofi U.S. Services Inc. develops products in therapeutic areas including cardiovascular disease, central nervous systems, internal medicine, metabolic disorder, oncology, ophthalmology, and thrombosis.

8.     The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

9.     Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes

pharmaceutical products in the United States, including throughout the State of New Jersey and Essex County.

10.     Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

11.     Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

12.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals, including throughout the State of New Jersey and this County.

13.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, Taxotere (docetaxel).

14.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

15.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States, including throughout the State of New Jersey and this County.

16.     Upon information and belief, Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for Taxotere.

3

17.     Upon information and belief, Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

18.     Defendant Sanofi-Aventis U.S. LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

19.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC were engaged in and intentionally and deliberately conducted substantial transactions and business within the State of New Jersey and have derived substantial revenue from goods and products knowingly and intentionally disseminated and used in the State of New Jersey.  At all times relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as Taxotere (docetaxel) to the public, including the Plaintiff and Plaintiff's physicians and healthcare providers.

20.     Defendant Sandoz, Inc. ("Sandoz") is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

4

21.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as Taxotere (docetaxel).

22.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

23.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership,  and joint venture.

24.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes New Jersey, directly or indirectly through partners, servants, subsidiaries or related entities acting in concert, the drug Taxotere.

## C.     JURISDICTION AND VENUE

25.     This is an action for damages against corporations and companies formed in New Jersey, headquartered in New Jersey, registered to do business in New Jersey and/or conducting substantial business in New Jersey, individually or in concert with other entities and who, upon information and belief, made important and relevant decisions and actions concerning, *inter*

*alia*, the design, marketing, promotion, labeling and regulatory approval of the Product in New Jersey, individually or in concert with other Defendants.

26.     Venue in this action properly lies in New Jersey and this County in that all Defendants are business entities that regularly conduct substantial business throughout New Jersey and in this County.

## D.     NATURE OF THE CASE

27.     Plaintiff brings this case against Sanofi U.S. Services Inc., Sanofi-Aventis U.S. LLC individually and doing business as Winthrop U.S.. (herein collectively referred to as the "Sanofi Defendants"), and/or Sandoz Inc. (herein referred to as "Generic non-bioequivalent Defendant"), for damages associated with the Plaintiff's infusion of the pharmaceutical drug Taxotere (docetaxel), which was designed, manufactured, marketed, sold and/or distributed by Defendants. Specifically, Plaintiff suffered various injuries, serious physical pain and suffering, medical, and hospital expenses as a direct result of Plaintiff's use of Taxotere (docetaxel) and/or its generic non-bioequivalent.

28.     At all relevant times, all Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or distribute Taxotere (docetaxel) to treat various forms of cancer, including but not limited to breast cancer.

29.     Taxotere (docetaxel) was developed, manufactured, researched, marketed, tested, advertised, promoted, and sold by Sanofi Defendants and began enrolling test patients in or about 1990 in the Phase 1 clinical trial also known as "TAX 001" study.

30.     Taxotere is a part of the chemotherapy family of drugs known as "Taxanes." Taxanes are a type of chemicals called "diterpenoids," which specifically contain a taxadiene core within the molecule, which is produced by yew trees.

6

31.     Taxanes are widely used as chemotherapy agents, and several taxanes are available for cancer treatment, including but not limited to Taxol, generically known as paclitaxel, Jevtana, generically known as cabazitaxel, and of course Taxotere, generically known as docetaxel.

32.     Upon information and belief, the TAX 001 study concluded in or about May 1992 and subsequently reported in or about May 1994.

33.     Taxol (paclitaxel) was developed, manufactured, distributed, and marketed by Bristol Meyers Squibb (BMS) and was first approved by the U.S. Food and Drug Administration (FDA) in December of 1992.

34.     On or about May 14, 1996, Sanofi Defendants obtained FDA approval for the "treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

35.     Sanofi Defendants continued to seek additional indications for Taxotere and based on self-sponsored clinical trials, Sanofi Defendants alleged superiority over other chemotherapy products approved for the treatment of breast cancer. Sanofi Defendants' marketing claims, including to physicians and health care providers, included claims of superior efficacy over the lower potency Taxanes, including Taxol.

36.     Despite Sanofi Defendants' claims of superior efficacy, post market surveillance demonstrated that the more potent and more toxic Taxotere, in fact, did not have higher efficacy or benefits compared to the other Taxanes and Defendants concealed the existence of studies from the FDA, physicians, patients, and the public that refuted Sanofi Defendants' claims and promotion of superior efficacy.

7

*37.*     In or about August of 2007, the journal, Cancer Treatment Review, published a comparison of the relative efficacy of Taxanes in the treatment of breast cancer. This study concluded that there were no significant differences between the efficacy and outcomes obtained from Taxotere treatment and Taxol treatment.

*38.*     In or about April of 2008, the New England Journal of Medicine published a study titled, *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, which concluded that Taxol was more effective than Taxotere for patients undergoing the standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

39.     Sanofi Defendants nevertheless continued to make false and misleading statements, promoting the "superior efficacy" of Taxotere over the competing product Taxol, despite the studies that concluded otherwise. Specifically, in or about June 2008, Sanofi-Aventis used a "reprint carrier" citing a clinical study published in August of 2005 from the Journal of Clinical Oncology that concluded Taxotere had superior efficacy compared to Taxol "providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities" in the marketing and promotional materials for Taxotere to physicians, healthcare providers and others.

40.     Sanofi Defendants' statements in the "reprint carrier" materials highlighting the conclusions of the 2005 study were false and/or misleading due to the 2007 and 2008 studies finding Taxotere was not more effective than Taxol in the treatment of breast cancer.

41.     Consequently, on or about April 16, 2009, Keith Olin, from the FDA Division of Drug Marketing, Advertising, and Communications (DDMAC), issued a warning letter to MaryRose Salvacion, the Director of US Regulatory Affairs Marketed Products for Sanofi-Aventis, regarding the NDA #20-449, Taxotere (docetaxel). In this letter, the DDMAC stated:

8

The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi- aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint1 from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii)

42.     In addition, a Qui Tam lawsuit was filed against Sanofi-Aventis and its affiliates in the U.S. District Court for the Eastern District of Pennsylvania, by a former employee stating Sanofi-Aventis and its affiliates engaged in fraudulent marketing schemes, paid kickbacks, and provided other unlawful incentives to entice physicians to use docetaxel. *See U.S. dx rel. Ghoil v. Sanofi-Aventis U.S. Inc.,* CA No. 02-2964 (E.D. Pa. 2015).

43.     Beginning in or around 1996, Sanofi-Aventis U.S., LLC, Sanofi U.S. Services, Inc., and their predecessors and affiliates, designed, directed, and/or engaged in a promotion and marketing scheme that promoted Taxotere for indications not approved by the FDA, also known as off label promotion. The scheme had two prongs: The first prong was training and directing employees, including "detailers" or sales representatives who met with physicians, to misrepresent the safety and effectiveness of the off-label use of Taxotere, to get a foothold in other types of cancer treatment markets.  The other prong was paying healthcare providers illegal kickbacks in the form of grants, speaker fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe Taxotere for off label treatment.

9

44.     The Sanofi Defendants improper marketing and illegal kickback scheme increased Taxotere sales and revenue by approximately one billion dollars from 2000's $424 million to 2004's $1.4 billion. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

45.     Sanofi Defendants' improper and illegal conduct drastically increased the number of victims to be exposed to a more toxic chemotherapy treatment with no better efficacy than less toxic chemotherapy treatments already available.

46.     Sanofi Defendants' fraudulent and illegal conduct caused thousands of individuals to be exposed to more frequent and/or more severe side effects, including but not limited to disfiguring and permanent alopecia (hair loss).

## E.     SANOFI DEFENDANTS' COVER UP OF THE KNOWN RISK OF PERMANENT HAIR LOSS

47.     It is well known that cancer treatments like radiation and chemotherapy can cause temporary hair loss during treatment. However, permanent alopecia is not common place. Sanofi Defendants, through their labeling, package inserts, marketing and promotional materials, misled the medical community, the public, and the Plaintiff, to believe Taxotere, as with other chemotherapy treatment, would cause temporary hair loss, but that the hair would grow back.

48.     Sanofi Defendants knew, or should have known, that the rate of permanent alopecia related to Taxotere (docetaxel) was far greater than with other chemotherapy treatments for the same conditions as Taxotere (docetaxel).

49.     Permanent alopecia is disfiguring, especially for women. Women who experienced this disfigurement as a result of the use of Taxotere suffered and continue to suffer

great mental anguish, as well as economic damage, including but not limited to, loss of work or inability due to work due to significant psychological damage.

50.     Women might have accepted the possibility of permanent baldness as a result of exposure to Taxotere if no other treatment were available for their cancer. However, this is not the case.

51.     There were similar products on the market that were at least as effective as Taxotere and did not subject the female users to the same risk of disfiguring levels of alopecia.

52.     Plaintiff would not have agreed to Taxotere treatment if the true risk of permanent alopecia was made available to her and her treating physicians.

53.     Beginning in the late 1990's, Sanofi Defendants sponsored, and/or were aware of the GEICAM 9805 study. By 2005, Sanofi Defendants' knew that the GEICAM 9805 study demonstrated that 9.2% of patients who were administered Taxotere, had persistent alopecia for up to 10 years and 5 months and in some cases even longer. Despite this knowledge, Sanofi Defendants purposefully and unjustly withheld these results contained in the GEICAM 9805 study from the physicians, healthcare providers, and patients in the U.S., including Plaintiff.

54.     By 2006, Sanofi Defendants knew, or should have known, that a Denver based oncologist in the U.S. had observed that an increased percentage, 6.3% specifically, of his patients who had Taxotere treatment suffered from permanent and disfiguring hair loss for years after the patient had ended their Taxotere treatment.

55.     Sanofi Defendants knew of relevant findings from GEICAM 9805 and knew of the patient reports from the Denver oncologist, and failed, to date, to provide accurate information and proper warnings to the physicians, healthcare providers, and patients in the

11

U.S., including Plaintiff, that Taxotere has a significantly increased risk of experiencing permanent and disfiguring alopecia.

56.     Sanofi Defendants chose to withhold this information from the U.S. market despite physicians, patients, and regulatory agencies in other countries, including, but not limited to, the European Union and Canada, that Taxotere caused an increased risk of permanent and disfiguring alopecia. Sanofi Defendants continued to tell the U.S. physicians, healthcare providers, patients, and Plaintiff, that "hair generally grows back" after taking Taxotere.

57.     Taxotere consumers were not given the opportunity to make an informed decision because they were unable to perform a risk benefit analysis due to the systematic and continuous deception perpetrated by Sanofi Defendants by overstating and/or misrepresenting the benefits and failing to warn of the true risks of permanent and disfiguring alopecia while other less potent but equally effective alternatives were available.

58.     It is notable that Sanofi Defendants publish information in other countries to individual patients, as well as regulatory agencies, informing patients of a risk of permanent alopecia relating to Taxotere use, however despite the numerous U.S. label changes and safety warnings issued by Sanofi Defendants during the nearly two decades Taxotere has been on the U.S. market, the words "permanent alopecia" or "permanent hair loss" did not appear in any published information from Sanofi Defendants until December 2015.

59.     As a direct result of Sanofi Defendants' surreptitious acts and deceptive marketing, thousands of women were exposed to the risk of and sustained disfiguring and permanent alopecia without any warning, and without any additional benefit.

60.     Sanofi Defendants' failure to warn patients healthcare providers, physicians, and patients, including Plaintiff, of the true risk of disfiguring and permanent alopecia in the U.S.

deprived them of the chance to make an informed decision as to exposing oneself to Taxotere (docetaxel) when other comparably effective and less toxic products were available.

61.     Sanofi Defendants took advantage of vulnerable groups of individuals during one of the most difficult times of their lives. Sanofi Defendants made billions of dollars in increased revenues at the expense of unwary cancer victims who wanted a chance at a normal life again.

62.     Taxotere was defective in its design. Taxotere was designed as a more potent Taxane. This increased potency resulted in increased toxicity, which can be directly related to the increased adverse events. The most likely reason Sanofi Defendants designed a more potent Taxane was to enable them to obtain a patent, and grab the current market, on a patent that was, in fact, not novel, but only more dangerous.

63.     Sanofi Defendants' reckless, willful, and wanton conduct permanently disfigured Plaintiff, as well as many other innocent victims to satisfy the Sanofi Defendants' avarice.

## F.     GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT

64.     Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA on or about June 29, 2011 and Sandoz put docetaxel on the market on or about August 15, 2011.

## G.     THE PLAINTIFF'S USE OF TAXOTERE AND RESULTING INJURIES

65.     By reason of the foregoing acts and omissions, the Plaintiff suffered permanent alopecia, as well as other severe and personal injuries, physical pain and mental anguish, including diminished enjoyment of life, and medical treatment.

66.     Upon information and belief, despite the permanent alopecia findings in studies and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

67.     Upon information and belief, from the date all Defendants received FDA approval to market Taxotere (docetaxel) and/or its generic non-bioequivalent forms, all Defendants made, distributed, marketed, and sold Taxotere (docetaxel) and/or its generic non-bioequivalent form, without adequate warning to Plaintiff's prescribing physicians or Plaintiff that Taxotere (docetaxel), and/or its generic non-bioequivalent form, was associated with and/or could cause permanent hair loss in patients who used it, and that all Defendants had not adequately conducted complete and proper testing and studies of Taxotere (docetaxel), and/or its generic non-bioequivalent form, with regard to permanent nature of the alopecia.

68.     Upon information and belief, Taxotere (docetaxel), and/or its generic non-bioequivalent form, concealed and failed to completely disclose their knowledge that Taxotere (docetaxel), and/or its generic non-bioequivalent form, was associated with or could cause  permanent alopecia as well as their knowledge that they had failed to fully test or study said risk.

69.     Upon information and belief, all Defendants ignored the association between the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form, and the risk of developing permanent and disfiguring alopecia.

70.     Upon information and belief, all Defendants failed to warn Plaintiff and Plaintiff's healthcare providers regarding true risk of permanent hair loss of Taxotere (docetaxel), and/or its generic non-bioequivalent form, but similar efficacy compared to less potent products.

71.     All of the Defendants' failures to disclose information that they possessed regarding the failure to adequately test and study Taxotere (docetaxel), and/or its generic non-bioequivalent form, for permanent hair loss risk further rendered warnings for this medication

inadequate.

72.     By reason of the forgoing acts and omissions, Plaintiff have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm.

## H.     FACTUAL ALLEGATIONS

73.     At or around date of the first Taxotere administration, Plaintiff was first prescribed and began taking Taxotere (docetaxel), and/or its generic non-bioequivalent form, upon the direction of her physician for the treatment of breast cancer. Subsequently, as a direct result of being exposed to Taxotere (docetaxel), and/or its generic non-bioequivalent form, at or around the date plaintiff was diagnosed with permanent and severe alopecia. Prior thereto, Plaintiff believed Defendants' representations that her alopecia was temporary.

74.     As a direct result of being prescribed Taxotere for this period of time, Plaintiff suffered significant injuries, such as those described above.

75.     As a proximate result of all of the Defendants' acts and omissions, Plaintiff suffered the injuries described hereinabove due to Plaintiff's exposure to Taxotere (docetaxel), and/or its generic non-bioequivalent form.  Plaintiff accordingly seeks damages associated with these injuries.

76.     Plaintiff would not have used Taxotere (docetaxel), and/or its generic non-bioequivalent form had any or all of the Defendants properly disclosed the risks associated with its use.

## COUNT ONE: PRODUCTS LIABILITY

### A. Defective Design, Manufacture and Inadequate Testing

77.     Plaintiff incorporate by reference each and every paragraph of this Complaint as

if fully set forth herein and further alleges as follows:

78.     At all times relevant herein, Defendants placed the Product at issue into the stream of commerce with disregard for the public safety in that no adequate testing or other reasonable steps were taken to assure their products were safe and/or efficacious for their intended purpose.  Insofar as the Product could not be used safely without the unreasonable risk of harm, the Product was ineffective for the purpose for which its use was promoted.

79.     Defendants were the designers, manufacturers and/or suppliers of the Product and are strictly liable to Plaintiff for designing, manufacturing, distributing, marketing, selling and placing it into the stream of commerce.

80.     The Taxotere manufactured, designed, marketed and/or supplied by Defendants was defective in design, manufacture or formulation, in that, when it left Defendants' control, the harm of said products outweighed any benefit derived therefrom, which rendered it inherently dangerous and/or defective, thereby causing serious harm to the Plaintiff.

81.     The Taxotere designed, marketed, manufactured and/or supplied by Defendants was defective in design or formulation in that, when it left the control of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

82.     The Taxotere designed, marketed, manufactured and/or supplied by Defendants were defective due to inadequate pre-market and post-market testing.

83.     At all times relevant hereto, Defendants encouraged the use of Taxotere as a superior form of chemotherapy, despite their failure to test or otherwise determine the safety and efficacy of such use.  As a direct and proximate result of the Defendants' widespread promotional activity, physicians began commonly prescribing these pharmaceuticals as a safe and effective alternative to oral contraceptives, despite the potential for serious and permanent

16

injuries by their use and the availability of other treatments without such risks.

84.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries that are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and will continue to experience physical and mental pain and suffering, all of which damages will continue in the future.

85.     Alternatively, the Taxotere that was manufactured, marketed, supplied and/or sold by Defendants and prescribed to and used by Plaintiff was defective in design, manufacture or formulation in that when it left the hands of the manufacturer and/or supplier/seller, it was unreasonably dangerous, and was more dangerous that an ordinary consumer would expect and more dangerous than other methods of contraception.

86.     Defendants improperly, negligently falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality regarding the safety and efficacy of the Taxotere to and/or from the FDA, that had the FDA known of such facts, the Product would have never been approved and no physician would have been able to prescribe the Product to Plaintiff.

87.     Defendants improperly, negligently falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality regarding the safety and efficacy of the Taxotere to and/or from the FDA, that had the FDA known of such facts, the Product would have never been approved with the warnings and instructions for use that accompanied the Product and/or were provided to prescribing physicians and the public, so that

the Product would not have been prescribed to nor used by Plaintiff.

88.     Because Defendants knowingly withheld and/or misrepresented information required to be submitted under FDA regulations, which information was material and relevant to the harm in question, no statutory presumptions in favor of Defendants are warranted.

## B. **Failure to Warn**

89.     At all relevant times hereto, Defendants knew and in fact advertised and promoted the use of the Taxotere as a safe method of chemotherapy treatment despite the lack of adequate testing for either safety or efficacy and after it knew or reasonably should have known that the Product suffered from a design and/or manufacturing flaw.

90.     Despite the fact that evidence existed that the use of the Taxotere was dangerous and likely to place users at serious risk to their health, Defendants failed to disclose and warn of the health hazards and risks associated with the Products and in fact, acted to deceive the medical community and public at large, including all potential users of the Product by promoting it as a safe and effective method of chemotherapy, when, in fact, it was unsafe and alternative and safer methods for chemotherapy treatment existed.

91.     The Taxotere designed, marketed, manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the Product created, among other things, a significantly increased risk of permanent and disfiguring alopecia by consumers and the Defendants failed to adequately warn of said risks and the severity of such adverse effects, resulting in harm to the Plaintiff, as set forth, herein.

92.     The Defendants failed to warn physicians and users of the Taxotere of the aforementioned dangers and adverse side effects.

93.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and will continue to experience physical and mental pain and suffering, all of which damages will continue in the future.

WHEREFORE, Plaintiff respectfully pray of this Court and demands of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## COUNT TWO: CONSUMER FRAUD.

94.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

95.     Defendants engaged in unconscionable commercial practices, deception, fraud, false promise, misrepresentation and/or the knowing concealment suppression or omission of material facts with the intent that others rely upon such concealment suppression or omission.

96.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries which required and will require

medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; all of which damages will continue in the future.

97.    Plaintiff suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable commercial practices as set forth above, and seeks treble damages, attorney's fees and costs of suit.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper

## COUNT THREE: NEGLIGENCE

98.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

99.    Defendants owed a duty to the general public and specifically to the Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Taxotere (docetaxel), and/or its generic non-bioequivalent form, at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Taxotere (docetaxel), and/or its generic non-bioequivalent form, because as designed, it was capable of causing serious and permanent personal injuries such as

those suffered by Plaintiff during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Taxotere (docetaxel), and/or its generic non-bioequivalent form, because they failed to warn, that as designed, Taxotere (docetaxel), and/or its generic non-bioequivalent form, was capable of causing serious and permanent personal injuries such as those suffered by Plaintiff during foreseeable use.

100.    Defendants breached their duty and were negligent by, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiff:

a.  Failing to use due care in developing, testing, designing and manufacturing Taxotere so as to avoid the aforementioned risks to individuals when Taxotere was being used for treatment;

b.  Failing to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health risks associated with the use of Taxotere and the comparative severity and duration of such adverse effects;

c.  In disseminating information to Plaintiff and Plaintiff's physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiff;

d.  Failing to accompany their products with proper or adequate rate of incidence or prevalence of permanent hair loss;

e.  Failing to provide warnings or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks;

f.  Failing to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Taxotere (docetaxel), and/or its generic non-bioequivalent form;

21

g.  Failing to warn Plaintiff, the medical and healthcare community, and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative medications available to Plaintiff and other consumers;

h.  Failing to provide adequate training or information to medical care providers for appropriate use and handling of Taxotere (docetaxel), and/or its generic non-bioequivalent form, and patients taking Taxotere (docetaxel), and/or its generic non-bioequivalent form;

i.  Failing to adequately test and/or warn about the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form, including, without limitations, the possible adverse side effects and health risks caused by the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form;

j.  Failing to design and/or manufacture a product that could be used safely;

k.  In designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable use, which Defendant knew or should have known could cause injury to Plaintiff;

l.  Failing to remove Taxotere (docetaxel), and/or its generic non-bioequivalent form, from the market when Defendants' knew or should have known of the likelihood of serious and permanent side effects and injury to its users;

m.  Failing to adequately warn users, consumers and physicians about the severity, scope and likelihood of permanent hair loss and related conditions to individuals taking Taxotere (docetaxel), and/or its generic non-bioequivalent form; and

n.  Representing to physicians, including but not limited to Plaintiff's prescribing physicians, that this drug was safe and effective for use.

22

101.    The Taxotere (docetaxel), and/or its generic non-bioequivalent form, that injured Plaintiff was in substantially the same condition when Plaintiff was infused with it as it was in when it left the control of Defendants. Taxotere's (docetaxel), and/or its generic non-bioequivalent form's, ability to cause serious and permanent personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff. Plaintiff was infused the Taxotere (docetaxel), and/or its generic non-bioequivalent form, as directed and without change in its form or substance.

102.    Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Taxotere (docetaxel), and/or its generic non-bioequivalent form, was a proximate cause of Plaintiff's injuries and damages.

103.    Plaintiff seeks all damages to which Plaintiff may be justly entitled.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

**COUNT FOUR: BREACH OF WARRANTY - BREACH OF EXPRESS WARRANTY**

104.    Plaintiff incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

105.    Defendants researched, developed, designed, tested, manufactured, inspected,

labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Taxotere (docetaxel), and/or its generic non-bioequivalent form, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiff, or persons responsible for consumer.

106.    Taxotere (docetaxel), and/or its generic non-bioequivalent form, materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Taxotere (docetaxel), and/or its generic non-bioequivalent form, respectively manufactured and/or distributed and sold by Defendants, and which Plaintiff purchased and was infused with in direct or indirect reliance upon these express representations. Such failures by Defendants constituted a material breach of express warranties made, directly or indirectly, to Plaintiff concerning Taxotere (docetaxel), and/or its generic non-bioequivalent form, sold to Plaintiff.

107.    As a direct, foreseeable and proximate result of Defendants' breaches of express warranties, Plaintiff suffered permanent and grievous bodily injury and consequent economic and other loss, as described above, when Plaintiff's physician, in reasonable reliance upon such express warranties, prescribed for Plaintiff the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form,  Plaintiff purchased and was infused with Taxotere (docetaxel), and/or its generic non-bioequivalent form, as prescribed and instructed by Plaintiff's physician, leading to Plaintiff's injuries.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of

consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

**COUNT FIVE: BREACH OF WARRANTY – BREACH OF IMPLIED WARRANTY**

108.    Plaintiff incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

109.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Taxotere (docetaxel), and/or its generic non-bioequivalent form, in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiff, or persons responsible for consumer.

110.    Defendants impliedly warranted their Taxotere (docetaxel), and/or its generic non-bioequivalent form, which they manufactured and/or distributed and sold, and which Plaintiff purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

111.    Defendants breached their implied warranties of the Taxotere (docetaxel), and/or its generic non-bioequivalent form, sold to Plaintiff because this product was not fit for its common, ordinary, and intended use.

112.    As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiff suffered permanent and grievous bodily injury and consequential economic and other losses, as described above, when Plaintiff was infused with Taxotere (docetaxel), and/or its generic non-bioequivalent form, in reasonable reliance upon the implied warranties.

25

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## COUNT SIX: COMMON LAW FRAUDULENT MISREPRESENTATION AND CONCEALMENT

113.    Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

114.    Defendants, having undertaken the manufacturing, design, marketing, prescription, dispensing, distribution and promotion of the Taxotere described herein, owed a duty to provide accurate and complete information regarding its product.

115.    Defendants' fraudulently misrepresented information regarding the Taxotere including, but not limited to, their propensity to cause serious physical harm.

116.    At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

117.    Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Taxotere in direct to consumer advertising on their web sites and indirectly, through prescribing physicians.

118.    Defendants had a duty and obligation to disclose to Plaintiff, individually and by and through her treating physicians, that the Taxotere was dangerous and likely to cause health consequences to users.

119.    Neither Plaintiff nor the prescribing and treating physicians were aware of the facts set forth, above, and, had they been aware of said facts, would not have prescribed the Taxotere.

120.    Plaintiff, individually and by and through Plaintiff's physicians, reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

121.    As a proximate result of Defendant's fraudulent misrepresentations, Plaintiff have suffered physical, pecuniary and emotional harm.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## DAMAGES

161.    Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate plaintiff:

a.    Medical Expenses;

    b.    Pain and Suffering;

    c.    Mental Anguish, Anxiety, and Discomfort of Karine Kocharian;

    d.    Physical Impairment;

    e.    Loss of Enjoyment of Life;

    f.    Pre and post judgment interest

    g.    Exemplary and Punitive Damages;

    h.    Treble damages;

    i.    Reasonable and  necessary attorneys fees, costs, pre-judgement interest; and

such other relief to which Plaintiff may be justly entitled.

WHEREFORE, the Plaintiff demands judgment of and from the Defendants in an amount for compensatory damages against all Defendants for pain and suffering actual damages; consequential damages; exemplary damages, jointly and severally against all Defendants; interest on damages (pre- and post-judgment) in accordance with the law; Plaintiff's reasonable attorney's fees, as well as costs of court and all other costs incurred; and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all counts and as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, HUNTER J. SHKOLNIK, is hereby designated as trial counsel in this matter.

## __CERTIFICATION__

Plaintiff certifies that the foregoing action is not the subject of any other action pending in any other court or arbitration proceeding and that no other action or arbitration proceeding is contemplated at this time.  Plaintiff further certifies that no other persons are known to them who should be joined as parties at this time.  Plaintiff is aware that if the statements contained within this certification are knowingly false, that she may be subject to punishment.


Dated:  December 11, 2017

NAPOLI SHKOLNIK & ASSOCIATES, PLLC



By: _____
      W. Steven Berman, Esquire
      Attorneys for Plaintiff
      N.J. BAR NO: 011971986

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-008707-17

**Case Caption:** KOCHARIAN KARINE  VS SANOFI U.S. SERVICES  INC.

**Case Initiation Date:** 12/11/2017

**Attorney Name:** W STEVEN BERMAN

**Firm Name:** NAPOLI SHKOLNIK PLLC

**Address:** 1 GREENTREE CENTRE STE 201 MARLTON NJ 08053

**Phone:**

**Name of Party:** PLAINTIFF : Kocharian, Karine

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

    **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

12/11/2017
Dated

/s/ W STEVEN BERMAN
Signed

NAPOLI SHKOLNIK & ASSOCIATES, LLP
BY:  HUNTER J. SHKOLNIK, ESQUIRE
N.J. BAR NO: 41531985
400 Broadhollow Rd.
Suite 305
Melville, NY 11747
Phone: (856) 988-5574 or (212) 397-1000
*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| KARINE KOCHARIAN, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION - BERGEN COUNTY |
| Plaintiff, | : | |
| | : | DOCKET NO.:_____ |
| v. | : | |
| | : | CIVIL ACTION |
| SANOFI U.S. SERVICES INC., | : | |
| formerly known as SANOFI-AVENTIS | : | |
| U.S. INC; SANOFI-AVENTIS U.S. | : | |
| LLC, separately and doing business as | : | **COMPLAINT & DEMAND FOR** |
| WINTHROP U.S.; SANDOZ, INC., | : | **JURY DEMAND** |
| McKESSON CORPORATION | : | |
| doing business as McKESSON | : | |
| PACKAGING, HOSPIRA, INC., | : | |
| HOSPIRA WORLDWIDE, LLC f/k/a | : | |
| HOSPIRA WORLDWIDE, INC., | : | |
| and ACCORD HEALTHCARE, INC. | : | |
| | : | |
| Defendants. | : | |

## <u>COMPLAINT</u>

Plaintiff, Karine Kocharian, (hereinafter "Plaintiff" refers to the plaintiff who was

prescribed and ingested the pharmaceutical at issue), by and through undersigned counsel,

hereby complains against the Defendants, SANOFI U.S. SERVICES INC., formerly known as

SANOFI-AVENTIS U.S. INC, SANOFI-AVENTIS U.S. LLC, separately and doing business as

WINTHROP U.S., SANDOZ, INC., McKESSON CORPORATION doing business as

McKESSON PACKAGING, HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC f/k/a HOSPIRA

WORLDWIDE, INC., and ACCORD HEALTHCARE, INC. (hereinafter "Defendants"), and allege as follows:

## A.  BACKGROUND

1.      This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendants' wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of a defective implantable pharmaceutical product known as "Taxotere," (hereinafter "the Product"), a cancer treatment drug part of the chemotherapy family of drugs known as "Taxanes."

2.      At all times material hereto, the Product was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendants

3.      At all material times, the Defendants conducted business throughout the State of New Jersey, including this county, and the Product was sold and marketed throughout the State of New Jersey, including this county.

## B.  PARTIES

4.      Plaintiff, Karine Kocharian, is a resident of the state of New Jersey, currently residing in West New York, New Jersey 07093.

5.      The Defendant, Sanofi U.S. Services Inc., f/k/a Sanofi-Aventis U.S. Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

6.      Upon information and belief, Sanofi U.S. Services Inc., is a wholly owned subsidiary of Sanofi-Aventis, and is one of the largest pharmaceutical companies in the United

2

States.

7.      Sanofi U.S. Services Inc. develops products in therapeutic areas including cardiovascular disease, central nervous systems, internal medicine, metabolic disorder, oncology, ophthalmology, and thrombosis.

8.      The predecessor to Sanofi U.S. Services Inc. was founded in 1950 and until 2006, was known as Sanofi-Aventis U.S. Inc.

9.      Sanofi U.S. Services Inc. develops, manufactures, markets, and distributes pharmaceutical products in the United States, including throughout the State of New Jersey and Essex County.

10.     Sanofi U.S. Services Inc. operates pharmaceutical research sites in Bridgewater, NJ, Malvern, PA, Cambridge MA, and Tucson, AZ, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

11.     Sanofi U.S. Services Inc. has a distribution center in Forest Park, GA, a manufacturing facility in Kansas City, MO, and a packaging services facility in St. Louis, MO.

12.     Sanofi U.S. Services Inc. markets its parent's products in the U.S. through its substantial number of field sales professionals, including throughout the State of New Jersey and this County.

13.     One of Sanofi U.S. Services Inc.'s key products is the cancer treatment drug, Taxotere (docetaxel).

14.     Sanofi-Aventis U.S. LLC is a limited liability company, formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Dr., Bridgewater, NJ 08807, where, upon information and belief, important and relevant decisions

and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

15.     Sanofi-Aventis U.S. LLC is a healthcare company that was founded in 1999 and discovers, develops, produces, and markets therapeutic solutions focused on patients' needs in the United States, including throughout the State of New Jersey and this County.

16.     Upon information and belief, Sanofi-Aventis U.S. LLC is one of the current holders of the approved New Drug Application ("NDA") and supplemental NDAs for Taxotere.

17.     Upon information and belief, Defendant Sanofi-Aventis U.S. LLC sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name Winthrop U.S., which is a division within Sanofi-Aventis U.S. LLC.

18.     Defendant Sanofi-Aventis U.S. LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

19.     At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC were engaged in and intentionally and deliberately conducted substantial transactions and business within the State of New Jersey and have derived substantial revenue from goods and products knowingly and intentionally disseminated and used in the State of New Jersey.  At all times relevant hereto, as part of its business, Sanofi-Aventis U.S. LLC was involved in researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as Taxotere (docetaxel) to the public, including the Plaintiff and

Plaintiff's physicians and healthcare providers.

20.     Defendant Sandoz, Inc. is incorporated under the laws of the State of Colorado, with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540, where, upon information and belief, important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the Product occurred.

21.     Defendant Accord Healthcare, Inc. is a corporation formed under the laws of the State of North Carolina with its principal place of business located at 1009 Slater Road, Suite 210B, Durham, North Carolina 27703.

22.     Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

23.     Defendant Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business located at 275 N. Field Drive, Lake Forest, Illinois 60045.

24.     At all times relevant hereto, Defendants worked in conjunction with each other and they were affiliated, related, jointly owned, and/or controlled entities or subsidiaries during the researching, analyzing, licensing, designing, testing, formulating, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising and/or selling the prescription drug known as Taxotere (docetaxel).

25.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

26.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership,  and joint venture.

27.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, which necessarily includes New Jersey, directly or indirectly through partners, servants, subsidiaries or related entities acting in concert, the drug Taxotere.

## C.     JURISDICTION AND VENUE

28.     This is an action for damages against corporations and companies formed in New Jersey, headquartered in New Jersey, registered to do business in New Jersey and/or conducting substantial business in New Jersey, individually or in concert with other entities and who, upon information and belief, made important and relevant decisions and actions concerning, *inter alia*, the design, marketing, promotion, labeling and regulatory approval of the product Taxotere in New Jersey, individually or in concert with other Defendants.

29.     Venue in this action properly lies in New Jersey and this County in that all Defendants are business entities that regularly conduct substantial business throughout New Jersey and in this County.

## D.     NATURE OF THE CASE

30.     Plaintiff brings this case against Sanofi U.S. Services Inc., Sanofi-Aventis U.S. LLC individually and doing business as Winthrop U.S. (herein collectively referred to as the "Sanofi Defendants"), and/or McKesson Corporation doing business as McKesson Packaging,

Hospira, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., and Accord Healthcare, Inc., (herein referred to as "Generic non-bioequivalent Defendant"), for damages associated with the Plaintiff's infusion of the pharmaceutical drug Taxotere (docetaxel), which was designed, manufactured, marketed, sold and/or distributed by Defendants. Specifically, Plaintiff suffered various injuries, serious physical pain and suffering, medical, and hospital expenses as a direct result of Plaintiff's use of Taxotere (docetaxel) and/or its generic non-bioequivalent.

31.    At all relevant times, all Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or distribute Taxotere (docetaxel) to treat various forms of cancer, including but not limited to breast cancer.

32.    Taxotere (docetaxel) was developed, manufactured, researched, marketed, tested, advertised, promoted, and sold by Sanofi Defendants and began enrolling test patients in or about 1990 in the Phase 1 clinical trial also known as "TAX 001" study.

33.    Taxotere is a part of the chemotherapy family of drugs known as "Taxanes." Taxanes are a type of chemicals called "diterpenoids," which specifically contain a taxadiene core within the molecule, which is produced by yew trees.

34.    Taxanes are widely used as chemotherapy agents, and several taxanes are available for cancer treatment, including but not limited to Taxol, generically known as paclitaxel, Jevtana, generically known as cabazitaxel, and of course Taxotere, generically known as docetaxel.

35.    Upon information and belief, the TAX 001 study concluded in or about May 1992 and subsequently reported in or about May 1994.

7

36.     Taxol (paclitaxel) was developed, manufactured, distributed, and marketed by Bristol Meyers Squibb (BMS) and was first approved by the U.S. Food and Drug Administration (FDA) in December of 1992.

37.     On or about May 14, 1996, Sanofi Defendants obtained FDA approval for the "treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

38.     Sanofi Defendants continued to seek additional indications for Taxotere and based on self-sponsored clinical trials, Sanofi Defendants alleged superiority over other chemotherapy products approved for the treatment of breast cancer. Sanofi Defendants' marketing claims, including to physicians and health care providers, included claims of superior efficacy over the lower potency Taxanes, including Taxol.

39.     Despite Sanofi Defendants' claims of superior efficacy, post market surveillance demonstrated that the more potent and more toxic Taxotere, in fact, did not have higher efficacy or benefits compared to the other Taxanes and Defendants concealed the existence of studies from the FDA, physicians, patients, and the public that refuted Sanofi Defendants' claims and promotion of superior efficacy.

40.     In or about August of 2007, the journal, Cancer Treatment Review, published a comparison of the relative efficacy of Taxanes in the treatment of breast cancer. This study concluded that there were no significant differences between the efficacy and outcomes obtained from Taxotere treatment and Taxol treatment.

41.     In or about April of 2008, the New England Journal of Medicine published a study titled, *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, which concluded

that Taxol was more effective than Taxotere for patients undergoing the standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

42.     Sanofi Defendants nevertheless continued to make false and misleading statements, promoting the "superior efficacy" of Taxotere over the competing product Taxol, despite the studies that concluded otherwise. Specifically, in or about June 2008, Sanofi-Aventis used a "reprint carrier" citing a clinical study published in August of 2005 from the Journal of Clinical Oncology that concluded Taxotere had superior efficacy compared to Taxol "providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities" in the marketing and promotional materials for Taxotere to physicians, healthcare providers and others.

43.     Sanofi Defendants' statements in the "reprint carrier" materials highlighting the conclusions of the 2005 study were false and/or misleading due to the 2007 and 2008 studies finding Taxotere was not more effective than Taxol in the treatment of breast cancer.

44.     Consequently, on or about April 16, 2009, Keith Olin, from the FDA Division of Drug Marketing, Advertising, and Communications (DDMAC), issued a warning letter to MaryRose Salvacion, the Director of US Regulatory Affairs Marketed Products for Sanofi-Aventis, regarding the NDA #20-449, Taxotere (docetaxel). In this letter, the DDMAC stated:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi- aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint1 from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the

9

Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii)
& (e)(7)(ii)

45.     In addition, a Qui Tam lawsuit was filed against Sanofi-Aventis and its affiliates

in the U.S. District Court for the Eastern District of Pennsylvania, by a former employee stating

Sanofi-Aventis and its affiliates engaged in fraudulent marketing schemes, paid kickbacks, and

provided other unlawful incentives to entice physicians to use docetaxel. *See U.S. dx rel. Ghoil*

*v. Sanofi-Aventis U.S. Inc.,* CA No. 02-2964 (E.D. Pa. 2015).

46.     Beginning in or around 1996, Sanofi-Aventis U.S., LLC, Sanofi U.S. Services,

Inc., and their predecessors and affiliates, designed, directed, and/or engaged in a promotion and

marketing scheme that promoted Taxotere for indications not approved by the FDA, also known

as off label promotion. The scheme had two prongs: The first prong was training and directing

employees, including "detailers" or sales representatives who met with physicians, to

misrepresent the safety and effectiveness of the off-label use of Taxotere, to get a foothold in

other types of cancer treatment markets.  The other prong was paying healthcare providers

illegal kickbacks in the form of grants, speaker fees, travel, entertainment, sports and concert

tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers

to prescribe Taxotere for off label treatment.

47.     The Sanofi Defendants improper marketing and illegal kickback scheme

increased Taxotere sales and revenue by approximately one billion dollars from 2000's $424

million to 2004's $1.4 billion. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504,

508 (E.D. Pa. 2015).

48.     Sanofi Defendants' improper and illegal conduct drastically increased the number

of victims to be exposed to a more toxic chemotherapy treatment with no better efficacy than less

toxic chemotherapy treatments already available.

49.     Sanofi Defendants' fraudulent and illegal conduct caused thousands of individuals to be exposed to more frequent and/or more severe side effects, including but not limited to disfiguring and permanent alopecia (hair loss).

## E.     SANOFI DEFENDANTS' COVER UP OF THE KNOWN RISK OF PERMANENT HAIR LOSS

50.     It is well known that cancer treatments like radiation and chemotherapy can cause temporary hair loss during treatment. However, permanent alopecia is not common place. Sanofi Defendants, through their labeling, package inserts, marketing and promotional materials, misled the medical community, the public, and the Plaintiff, to believe Taxotere, as with other chemotherapy treatment, would cause temporary hair loss, but that the hair would grow back.

51.     Sanofi Defendants knew, or should have known, that the rate of permanent alopecia related to Taxotere (docetaxel) was far greater than with other chemotherapy treatments for the same conditions as Taxotere (docetaxel).

52.     Permanent alopecia is disfiguring, especially for women. Women who experienced this disfigurement as a result of the use of Taxotere suffered and continue to suffer great mental anguish, as well as economic damage, including but not limited to, loss of work or inability due to work due to significant psychological damage.

53.     Women might have accepted the possibility of permanent baldness as a result of exposure to Taxotere if no other treatment were available for their cancer. However, this is not the case.

54.     There were similar products on the market that were at least as effective as Taxotere and did not subject the female users to the same risk of disfiguring levels of alopecia.

55.     Plaintiff would not have agreed to Taxotere treatment if the true risk of permanent alopecia was made available to her and her treating physicians.

56.     Beginning in the late 1990's, Sanofi Defendants sponsored, and/or were aware of the GEICAM 9805 study. By 2005, Sanofi Defendants' knew that the GEICAM 9805 study demonstrated that 9.2% of patients who were administered Taxotere, had persistent alopecia for up to 10 years and 5 months and in some cases even longer. Despite this knowledge, Sanofi Defendants purposefully and unjustly withheld these results contained in the GEICAM 9805 study from the physicians, healthcare providers, and patients in the U.S., including Plaintiff.

57.     By 2006, Sanofi Defendants knew, or should have known, that a Denver based oncologist in the U.S. had observed that an increased percentage, 6.3% specifically, of his patients who had Taxotere treatment suffered from permanent and disfiguring hair loss for years after the patient had ended their Taxotere treatment.

58.     Sanofi Defendants knew of relevant findings from GEICAM 9805 and knew of the patient reports from the Denver oncologist, and failed, to date, to provide accurate information and proper warnings to the physicians, healthcare providers, and patients in the U.S., including Plaintiff, that Taxotere has a significantly increased risk of experiencing permanent and disfiguring alopecia.

59.     Sanofi Defendants chose to withhold this information from the U.S. market despite physicians, patients, and regulatory agencies in other countries, including, but not limited to, the European Union and Canada, that Taxotere caused an increased risk of permanent and disfiguring alopecia. Sanofi Defendants continued to tell the U.S. physicians, healthcare providers, patients, and Plaintiff, that "hair generally grows back" after taking Taxotere.

60.     Taxotere consumers were not given the opportunity to make an informed decision because they were unable to perform a risk benefit analysis due to the systematic and continuous deception perpetrated by Sanofi Defendants by overstating and/or misrepresenting the benefits and failing to warn of the true risks of permanent and disfiguring alopecia while other less potent but equally effective alternatives were available.

61.     It is notable that Sanofi Defendants publish information in other countries to individual patients, as well as regulatory agencies, informing patients of a risk of permanent alopecia relating to Taxotere use, however despite the numerous U.S. label changes and safety warnings issued by Sanofi Defendants during the nearly two decades Taxotere has been on the U.S. market, the words "permanent alopecia" or "permanent hair loss" did not appear in any published information from Sanofi Defendants until December 2015.

62.     As a direct result of Sanofi Defendants' surreptitious acts and deceptive marketing, thousands of women were exposed to the risk of and sustained disfiguring and permanent alopecia without any warning, and without any additional benefit.

63.     Sanofi Defendants' failure to warn patients healthcare providers, physicians, and patients, including Plaintiff, of the true risk of disfiguring and permanent alopecia in the U.S. deprived them of the chance to make an informed decision as to exposing oneself to Taxotere (docetaxel) when other comparably effective and less toxic products were available.

64.     Sanofi Defendants took advantage of vulnerable groups of individuals during one of the most difficult times of their lives. Sanofi Defendants made billions of dollars in increased revenues at the expense of unwary cancer victims who wanted a chance at a normal life again.

65.     Taxotere was defective in its design. Taxotere was designed as a more potent Taxane. This increased potency resulted in increased toxicity, which can be directly related to

the increased adverse events. The most likely reason Sanofi Defendants designed a more potent Taxane was to enable them to obtain a patent, and grab the current market, on a patent that was, in fact, not novel, but only more dangerous.

66.     Sanofi Defendants' reckless, willful, and wanton conduct permanently disfigured Plaintiff, as well as many other innocent victims to satisfy the Sanofi Defendants' avarice.

## F.     GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT

67.     Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel. The FDA granted Sandoz's NDA on or about June 29, 2011 and Sandoz put docetaxel on the market on or about August 15, 2011.

68.     Defendant Hospira filed for a NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted Hospira's NDA on or about March 8, 2011 and Hospira put the docetaxel anhydrous on the market on or about March 8, 2011.

69.     Defendant McKesson filed an NDA with the FDA for a generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous. The FDA granted McKesson's NDA on or about June 8, 2011, and McKesson put docetaxel anhydrous on the market on or about June 8, 2011.

70.     Upon information and belief, Defendant Accord filed for two (3) NDAs with the FDA for generic non-bioequivalents of Taxotere (docetaxel).

71.     Upon information and belief, Defendant Accord was approved by the FDA for the first generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel on or about June 30, 2011 and Accord put docetaxel on the market on or about June 30, 2011.

14

72.     Defendant Accord was approved by the FDA for the second generic non-bioequivalent of Taxotere (docetaxel) in the form of docetaxel anhydrous (20 mg/0.5 mL and 80 mg/2 mL) on or about July 1, 2012 and Accord put docetaxel anhydrous on the market on or about July 1, 2012.

73.     Upon information and belief, Defendant Accord was approved by the FDA for the third generic non-bioequivalent of Taxotere (docetaxel) in another form of docetaxel anhydrous in a more concentrated form, on or about May 15, 2013 and Accord put the mor concentrated docetaxel anhydrous on the market on or about May 15, 2013.

## G.     THE PLAINTIFF'S USE OF TAXOTERE AND RESULTING INJURIES

74.     By reason of the foregoing acts and omissions, the Plaintiff suffered permanent alopecia, as well as other severe and personal injuries, physical pain and mental anguish, including diminished enjoyment of life, and medical treatment.

75.     Upon information and belief, despite the permanent alopecia findings in studies and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Taxotere prior to filing their New Drug Application for Taxotere.

76.     Upon information and belief, from the date all Defendants received FDA approval to market Taxotere (docetaxel) and/or its generic non-bioequivalent forms, all Defendants made, distributed, marketed, and sold Taxotere (docetaxel) and/or its generic non-bioequivalent form, without adequate warning to Plaintiff's prescribing physicians or Plaintiff that Taxotere (docetaxel), and/or its generic non-bioequivalent form, was associated with and/or could cause permanent hair loss in patients who used it, and that all Defendants had not adequately conducted complete and proper testing and studies of Taxotere (docetaxel), and/or its generic non-bioequivalent form, with regard to permanent nature of the alopecia.

77.     Upon information and belief, Taxotere (docetaxel), and/or its generic non-bioequivalent form, concealed and failed to completely disclose their knowledge that Taxotere (docetaxel), and/or its generic non-bioequivalent form, was associated with or could cause permanent alopecia as well as their knowledge that they had failed to fully test or study said risk.

78.     Upon information and belief, all Defendants ignored the association between the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form, and the risk of developing permanent and disfiguring alopecia.

79.     Upon information and belief, all Defendants failed to warn Plaintiff and Plaintiff's healthcare providers regarding true risk of permanent hair loss of Taxotere (docetaxel), and/or its generic non-bioequivalent form, but similar efficacy compared to less potent products.

80.     All of the Defendants' failures to disclose information that they possessed regarding the failure to adequately test and study Taxotere (docetaxel), and/or its generic non-bioequivalent form, for permanent hair loss risk further rendered warnings for this medication inadequate.

81.     By reason of the forgoing acts and omissions, Plaintiff have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm.

## H.     FACTUAL ALLEGATIONS

82.     At or around date of the first Taxotere administration, Plaintiff was first prescribed and began taking Taxotere (docetaxel), and/or its generic non-bioequivalent form, upon the direction of her physician for the treatment of breast cancer. Subsequently, as a direct

result of being exposed to Taxotere (docetaxel), and/or its generic non-bioequivalent form, at or around the date plaintiff was diagnosed with permanent and severe alopecia. Prior thereto, Plaintiff believed Defendants' representations that her alopecia was temporary.

83.     As a direct result of being prescribed Taxotere for this period of time, Plaintiff suffered significant injuries, such as those described above.

84.     As a proximate result of all of the Defendants' acts and omissions, Plaintiff suffered the injuries described hereinabove due to Plaintiff's exposure to Taxotere (docetaxel), and/or its generic non-bioequivalent form.  Plaintiff accordingly seeks damages associated with these injuries.

85.     Plaintiff would not have used Taxotere (docetaxel), and/or its generic non-bioequivalent form had any or all of the Defendants properly disclosed the risks associated with its use.

## COUNT ONE: PRODUCTS LIABILITY

### A.  Defective Design, Manufacture and Inadequate Testing

86.     Plaintiff incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

87.     At all times relevant herein, Defendants placed the Product at issue into the stream of commerce with disregard for the public safety in that no adequate testing or other reasonable steps were taken to assure their products were safe and/or efficacious for their intended purpose.  Insofar as the Product could not be used safely without the unreasonable risk of harm, the Product was ineffective for the purpose for which its use was promoted.

88.     Defendants were the designers, manufacturers and/or suppliers of the Product and are strictly liable to Plaintiff for designing, manufacturing, distributing, marketing, selling and

17

placing it into the stream of commerce.

89.     The Taxotere manufactured, designed, marketed and/or supplied by Defendants was defective in design, manufacture or formulation, in that, when it left Defendants' control, the harm of said products outweighed any benefit derived therefrom, which rendered it inherently dangerous and/or defective, thereby causing serious harm to the Plaintiff.

90.     The Taxotere designed, marketed, manufactured and/or supplied by Defendants was defective in design or formulation in that, when it left the control of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

91.     The Taxotere designed, marketed, manufactured and/or supplied by Defendants were defective due to inadequate pre-market and post-market testing.

92.     At all times relevant hereto, Defendants encouraged the use of Taxotere as a superior form of chemotherapy, despite their failure to test or otherwise determine the safety and efficacy of such use.   As a direct and proximate result of the Defendants' widespread promotional activity, physicians began commonly prescribing these pharmaceuticals as a safe and effective alternative to oral contraceptives, despite the potential for serious and permanent injuries by their use and the availability of other treatments without such risks.

93.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries that are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and will continue to experience physical and mental pain and suffering, all of which damages will continue in the future.

94.    Alternatively, the Taxotere that was manufactured, marketed, supplied and/or sold by Defendants and prescribed to and used by Plaintiff was defective in design, manufacture or formulation in that when it left the hands of the manufacturer and/or supplier/seller, it was unreasonably dangerous, and was more dangerous that an ordinary consumer would expect and more dangerous than other methods of contraception.

95.    Defendants improperly, negligently falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality regarding the safety and efficacy of the Taxotere to and/or from the FDA, that had the FDA known of such facts, the Product would have never been approved and no physician would have been able to prescribe the Product to Plaintiff.

96.    Defendants improperly, negligently falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality regarding the safety and efficacy of the Taxotere to and/or from the FDA, that had the FDA known of such facts, the Product would have never been approved with the warnings and instructions for use that accompanied the Product and/or were provided to prescribing physicians and the public, so that the Product would not have been prescribed to nor used by Plaintiff.

97.    Because Defendants knowingly withheld and/or misrepresented information required to be submitted under FDA regulations, which information was material and relevant to the harm in question, no statutory presumptions in favor of Defendants are warranted.

**B. Failure to Warn**

98.    At all relevant times hereto, Defendants knew and in fact advertised and promoted the use of the Taxotere as a safe method of chemotherapy treatment despite the lack of adequate testing for either safety or efficacy and after it knew or reasonably should have known

that the Product suffered from a design and/or manufacturing flaw.

99.    Despite the fact that evidence existed that the use of the Taxotere was dangerous and likely to place users at serious risk to their health, Defendants failed to disclose and warn of the health hazards and risks associated with the Products and in fact, acted to deceive the medical community and public at large, including all potential users of the Product by promoting it as a safe and effective method of chemotherapy, when, in fact, it was unsafe and alternative and safer methods for chemotherapy treatment existed.

100.    The Taxotere designed, marketed, manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the Product created, among other things, a significantly increased risk of permanent and disfiguring alopecia by consumers and the Defendants failed to adequately warn of said risks and the severity of such adverse effects, resulting in harm to the Plaintiff, as set forth, herein.

101.    The Defendants failed to warn physicians and users of the Taxotere of the aforementioned dangers and adverse side effects.

102.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and will continue to experience physical and mental pain and suffering, all of which damages will continue in the future.

WHEREFORE, Plaintiff respectfully pray of this Court and demands of

Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## COUNT TWO: CONSUMER FRAUD.

103.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

104.    Defendants engaged in unconscionable commercial practices, deception, fraud, false promise, misrepresentation and/or the knowing concealment suppression or omission of material facts with the intent that others rely upon such concealment suppression or omission.

105.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries which required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; all of which damages will continue in the future.

106.    Plaintiff suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable commercial practices as set forth above, and seeks treble damages, attorney's fees and costs of suit.

        WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the

law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper

## COUNT THREE: NEGLIGENCE

107.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

108.    Defendants owed a duty to the general public and specifically to the Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Taxotere (docetaxel), and/or its generic non-bioequivalent form, at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Taxotere (docetaxel), and/or its generic non-bioequivalent form, because as designed, it was capable of causing serious and permanent personal injuries such as those suffered by Plaintiff during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Taxotere (docetaxel), and/or its generic non-bioequivalent form, because they failed to warn, that as designed, Taxotere (docetaxel), and/or its generic non-bioequivalent form, was capable of causing serious and permanent personal injuries such as those suffered by Plaintiff during foreseeable use.

109.    Defendants breached their duty and were negligent by, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiff:

    a.  Failing to use due care in developing, testing, designing and manufacturing

Taxotere so as to avoid the aforementioned risks to individuals when Taxotere was being used for treatment;

b.  Failing to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health risks associated with the use of Taxotere and the comparative severity and duration of such adverse effects;

c.  In disseminating information to Plaintiff and Plaintiff's physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiff;

d.  Failing to accompany their products with proper or adequate rate of incidence or prevalence of permanent hair loss;

e.  Failing to provide warnings or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks;

f.  Failing to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Taxotere (docetaxel), and/or its generic non-bioequivalent form;

g.  Failing to warn Plaintiff, the medical and healthcare community, and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative medications available to Plaintiff and other consumers;

h.  Failing to provide adequate training or information to medical care providers for appropriate use and handling of Taxotere (docetaxel), and/or its generic non-bioequivalent form, and patients taking Taxotere (docetaxel), and/or its generic non-bioequivalent form;

i.  Failing to adequately test and/or warn about the use of Taxotere

23

(docetaxel), and/or its generic non-bioequivalent form, including, without limitations, the possible adverse side effects and health risks caused by the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form;

j.  Failing to design and/or manufacture a product that could be used safely;

k.  In designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable use, which Defendant knew or should have known could cause injury to Plaintiff;

l.  Failing to remove Taxotere (docetaxel), and/or its generic non-bioequivalent form, from the market when Defendants' knew or should have known of the likelihood of serious and permanent side effects and injury to its users;

m.  Failing to adequately warn users, consumers and physicians about the severity, scope and likelihood of permanent hair loss and related conditions to individuals taking Taxotere (docetaxel), and/or its generic non-bioequivalent form; and

n.  Representing to physicians, including but not limited to Plaintiff's prescribing physicians, that this drug was safe and effective for use.

110.    The Taxotere (docetaxel), and/or its generic non-bioequivalent form, that injured Plaintiff was in substantially the same condition when Plaintiff was infused with it as it was when it left the control of Defendants. Taxotere's (docetaxel), and/or its generic non-bioequivalent form's, ability to cause serious and permanent personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff.  Plaintiff was infused the Taxotere (docetaxel), and/or its generic non-bioequivalent form, as directed and without change in its form or substance.

111.    Defendants' failure to exercise reasonable care in the design, dosing information,

marketing, warnings, and/or manufacturing of Taxotere (docetaxel), and/or its generic non-bioequivalent form, was a proximate cause of Plaintiff's injuries and damages.

112.    Plaintiff seeks all damages to which Plaintiff may be justly entitled.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## COUNT FOUR: BREACH OF WARRANTY - BREACH OF EXPRESS WARRANTY

113.    Plaintiff incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

114.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Taxotere (docetaxel), and/or its generic non-bioequivalent form, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiff, or persons responsible for consumer.

115.    Taxotere (docetaxel), and/or its generic non-bioequivalent form, materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Taxotere (docetaxel), and/or its generic non-bioequivalent form, respectively manufactured and/or distributed and sold by Defendants, and

25

which Plaintiff purchased and was infused with in direct or indirect reliance upon these express representations. Such failures by Defendants constituted a material breach of express warranties made, directly or indirectly, to Plaintiff concerning Taxotere (docetaxel), and/or its generic non-bioequivalent form, sold to Plaintiff.

116.    As a direct, foreseeable and proximate result of Defendants' breaches of express warranties, Plaintiff suffered permanent and grievous bodily injury and consequent economic and other loss, as described above, when Plaintiff's physician, in reasonable reliance upon such express warranties, prescribed for Plaintiff the use of Taxotere (docetaxel), and/or its generic non-bioequivalent form,  Plaintiff purchased and was infused with Taxotere (docetaxel), and/or its generic non-bioequivalent form, as prescribed and instructed by Plaintiff's physician, leading to Plaintiff's injuries.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## COUNT FIVE: BREACH OF WARRANTY – BREACH OF IMPLIED WARRANTY

117.    Plaintiff incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

118.    Defendants researched, developed, designed, tested, manufactured, inspected,

26

labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Taxotere (docetaxel), and/or its generic non-bioequivalent form, in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiff, or persons responsible for consumer.

119.    Defendants impliedly warranted their Taxotere (docetaxel), and/or its generic non-bioequivalent form, which they manufactured and/or distributed and sold, and which Plaintiff purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

120.    Defendants breached their implied warranties of the Taxotere (docetaxel), and/or its generic non-bioequivalent form, sold to Plaintiff because this product was not fit for its common, ordinary, and intended use.

121.    As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiff suffered permanent and grievous bodily injury and consequential economic and other losses, as described above, when Plaintiff was infused with Taxotere (docetaxel), and/or its generic non-bioequivalent form, in reasonable reliance upon the implied warranties.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## COUNT SIX: COMMON LAW FRAUDULENT MISREPRESENTATION AND CONCEALMENT

122.     Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

123.     Defendants, having undertaken the manufacturing, design, marketing, prescription, dispensing, distribution and promotion of the Taxotere described herein, owed a duty to provide accurate and complete information regarding its product.

124.     Defendants' fraudulently misrepresented information regarding the Taxotere including, but not limited to, their propensity to cause serious physical harm.

125.     At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

126.     Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Taxotere in direct to consumer advertising on their web sites and indirectly, through prescribing physicians.

127.     Defendants had a duty and obligation to disclose to Plaintiff, individually and by and through her treating physicians, that the Taxotere was dangerous and likely to cause health consequences to users.

128.     Neither Plaintiff nor the prescribing and treating physicians were aware of the facts set forth, above, and, had they been aware of said facts, would not have prescribed the Taxotere.

129.     Plaintiff, individually and by and through Plaintiff's physicians, reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

28

130.     As a proximate result of Defendant's fraudulent misrepresentations, Plaintiff have suffered physical, pecuniary and emotional harm.

WHEREFORE, Plaintiff respectfully pray of this Court and demand of Defendants, jointly and severally, as follows: (1) all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, loss of consortium, and disfigurement and statutory treble damages; (2) punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing; (3) an award of attorneys' fees and costs; (4) prejudgment interest and the costs of suit; and (5) such other relief as this court may deem just and proper.

## DAMAGES

161.     Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate plaintiff:

      a.   Medical Expenses;

      b.   Pain and Suffering;

      c.   Mental Anguish, Anxiety, and Discomfort of Karine Kocharian;

      d.   Physical Impairment;

      e.   Loss of Enjoyment of Life;

      f.   Pre and post judgment interest

      g.   Exemplary and Punitive Damages;

      h.   Treble damages;

i.    Reasonable and  necessary attorneys fees, costs, pre-judgement interest; and such other relief to which Plaintiff may be justly entitled.

WHEREFORE**,** the Plaintiff demands judgment of and from the Defendants in an amount for compensatory damages against all Defendants for pain and suffering actual damages; consequential damages; exemplary damages, jointly and severally against all Defendants; interest on damages (pre- and post-judgment) in accordance with the law; Plaintiff's reasonable attorney's fees, as well as costs of court and all other costs incurred; and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all counts and as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, HUNTER J. SHKOLNIK, is hereby designated as trial counsel in this matter.

## CERTIFICATION

Plaintiff certifies that the foregoing action is not the subject of any other action pending in any other court or arbitration proceeding and that no other action or arbitration proceeding is contemplated at this time.  Plaintiff further certifies that no other persons are known to them who should be joined as parties at this time.  Plaintiff is aware that if the statements contained within this certification are knowingly false, that she may be subject to punishment.

Dated:  December 11, 2017

NAPOLI SHKOLNIK & ASSOCIATES, PLLC

By: _____
    Hunter J. Shkolnik, Esquire
    Attorneys for Plaintiff
    N.J. BAR NO: 41531985

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-008711-17

**Case Caption:** KOCHARIAN KARINE  VS SANOFI U.S. SERVICES  INC.

**Case Initiation Date:** 12/11/2017

**Attorney Name:** HUNTER J SHKOLNIK

**Firm Name:** NAPOLI SHKOLNIK PLLC

**Address:** 360 LEXINGTON AVE 11TH FL
NEW YORK NY 10017

**Phone:**

**Name of Party:** PLAINTIFF : Kocharian, Karine

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:** See below

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
This is a pharmaceutical defect case against NJ-based companies for which there is a pending federal MDL. It is anticipated that numerous cases will be filed in NJ and that they should all be assigned to and managed by the same judge.

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

12/11/2017
Dated

/s/ HUNTER J SHKOLNIK
Signed