**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                    **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                               **SECTION "H"**

**THIS DOCUMENT RELATES TO**
*Gahan v. Sanofi, et al.*, No. 16-cv-15283

---

**MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS' MOTION FOR RULE 37
SANCTIONS**

---

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively "Defendant" or "Sanofi"), move this Court for just sanctions, including dismissal with prejudice of *Kelly Gahan v. Sanofi, et al.*, No. 1:15-cv-02777, pursuant to Fed. R. Civ. P. 37(b).

For more than a year, Bellwether Plaintiff Kelly Gahan ("Dr. Gahan") has engaged in a willful, ongoing effort to deprive Sanofi of highly relevant information, and her behavior demonstrates widespread disregard for the discovery obligations imposed by this Court through the Plaintiff Fact Sheet ("PFS"), PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), PTO No. 68 (Rec. Doc. 1085), and PTO No. 71A (Rec. Doc. 1531).  In light of her conduct, which she readily admits, Sanofi respectfully requests that the Court enter an Order dismissing Dr. Gahan's claims and imposing other appropriate sanctions as set forth in this Memorandum.

I.    **PLAINTIFF'S WILLFUL DISREGARD OF DISCOVERY ORDERS**

On December 21, 2015, Kelly Gahan filed the <u>first</u> Taxotere lawsuit against Sanofi.  Since that time, Dr. Gahan has facilitated the filing of numerous other lawsuits by actively encouraging members of the "Taxotears" Group to contact her attorneys at Bachus & Schanker LLC to join the

litigation and leverage a potential settlement.[1]  Dr. Gahan even offered to serve as a liaison between Bachus & Schanker and a Plaintiff in the Taxotears Group.  *See* **Exhibit A**, Email from K. Gahan to C. Hagenburger (Sep. 3, 2017) (PPR 001039) (under seal).[2]

But while Dr. Gahan actively sought out new litigants to sue Sanofi, she brazenly disregards her own obligations as a plaintiff in this litigation – and attempts to get others to do the same.  The Court ordered plaintiffs, including Dr. Gahan, to provide a "complete and verified" Plaintiff Fact Sheet ("PFS") and to produce emails, messages, and social media posts about their cancer, chemotherapy treatment, hair loss, and Taxotere®.  *See* PTO No. 22A (Rec. Doc. 325); PTO No. 38 (Rec. Doc. 326); PTO No. 68 (Rec. Doc. 1085); PTO No. 71A (Rec. Doc. 1531).  In addition, the Court ordered Plaintiffs to produce photographs showing their hair composition before, during and after treatment and any "other media" showing their alleged injury or its effect

---

[1]   For example, the following correspondence between the Taxotears Group is collectively attached as **Exhibit A** (under seal):

  - ". . . . I am also leading a class action against Sanofi (drug manufacturer). . . . "  *See* **Exhibit A**, Email from K. Gahan to B. Lowry (Oct. 25, 2017) (PPR 000542) (under seal).

  - "I spoke with Darin at length last week and they are just now getting all the discovery documents. First cases are next September and there is a very good chance Sanofi will end up making a business decision to settle."  *See* **Exhibit A**, Email from K. Gahan to C. Hagenburger (Sep. 3, 2017) (PPR 001039) (under seal).

  - "The taxotears group has done good work. We have about 800 filed cases in the lawsuit and at least 4k have contacted the various law firms about it."  *See* **Exhibit A**, Email from K. Gahan to C. Hagenburger (Apr. 1, 2017) (PPR 002429) (under seal).

  - "The more women that sue, the more leverage and stronger the lawsuit against the fourth largest company in [sic] world."  *See* **Exhibit A**, Email from S. Makshanoff to Taxotears Google Group (Nov. 30, 2016) (PPR 003732) (under seal).

  - "The more [lawsuits Bachus & Schanker LLC] can file, and fastly, the more other law firms will pick up on it and start their advertising. Also the more they could file, the more chances of getting a 'redistricting.' [Bachus & Schanker LLC] told me their goal was to redistrict and then settle out of court. They said they never had an intent to actually go to court."  *See* **Exhibit A**, Email from K. Free to Taxotears Group (Oct. 24, 2016) (PPR 004009) (under seal).

[2]   To date, 29 of the 37 Plaintiffs disclosed as Taxotears Group members are represented by Bachus & Schanker LLC.

in Plaintiffs' lives. *Id.* When it became apparent that numerous plaintiffs failed to produce responsive ESI as required by the PFS, the Court entered PTO No. 71A – enunciating Plaintiffs' obligation to produce responsive ESI. *See* PTO No. 71A (Rec. Doc. 1531).[3]

Despite multiple Court Orders, Dr. Gahan: 1) intentionally verified *four* incomplete and inaccurate PFSs; 2) intentionally withheld information on a physician treating her alleged hair loss injury; 3) instructed that same physician to withhold records from Sanofi; 4) encouraged other third-party records custodians to similarly evade Sanofi's requests for information; and 5) withheld hundreds of photographs of her hair regrowth.

Dr. Gahan's conduct and sworn testimony[4] establishes a record of not only willful delay, but bad faith failure to make required disclosures, in violation of PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), PTO No. 68 (Rec. Doc. 1085), and PTO No. 71A (Rec. Doc. 1531) that warrant sanctions. The fact that the PSC selected Dr. Gahan as a "representative" bellwether plaintiff exacerbates her actions and underscores the need for appropriate sanctions.

A.     **Dr. Gahan concealed information on her treatment for hair regrowth, and asked other health-care providers to conceal information too**

Starting in February 2017, Dr. David Weinstein began treating Dr. Gahan experimentally for hair regrowth.[5] Dr. Weinstein continued to treat Dr. Gahan through April 2018, and the two often emailed, including "progress" photos highlighting her substantial hair regrowth.

---

[3]   *See, e.g.,* **Exhibit B**, Letter from Harley Ratliff to Judge Engelhardt (Nov. 2, 2017) (under seal).

[4]   Defendants took Dr. Gahan's deposition on May 18, 2018 as part of case-specific discovery for Bellwether Trial Pool II. *See generally* Dep. Gahan (May 18, 2018), attached as **Exhibit K**. Defendants are currently trying to obtain the Taxotears-specific deposition as set forth in the Court's May 9, 2018, Order, stating, "Sanofi may depose Ms. Ledlie, Ms. Gahan and/or the administrator of the Taxotears group specifically about that group and those depositions will <u>not</u> count against any limits previously imposed by the Court." To date, Plaintiffs have refused to provide additional dates for this deposition.

[5]   *See* **Exhibit C**, Email from Dr. Weinstein to K. Gahan (Feb. 9, 2017) (Weinstein 00171-176). Excerpts from Dr. Weinstein's medical records collectively attached as **Exhibit C** (under seal).

Indeed, Dr. Weinstein's treatment of Dr. Gahan was such a success that he wanted to use the photographs of Dr. Gahan's regrown hair to promote his treatment method.   Dr. Gahan responded furtively:

> **From:** "bluermedic@gmail.com" <bluermedic@gmail.com>
> **Date:** Friday, July 28, 2017 at 2:11 PM
> **To:** "David Weinstein, MD, PhD" <david@rivertowntherapeutics.com>
> **Subject:** Re: Hi
>
> I think that should be okay. How widely will they be distributed? Would rather not have the lawyers for the other side put two and two together just yet.
>
> Sent from my iPhone

**Exhibit C**, Email from Kelly Gahan to Dr. David Weinstein (Jul. 28, 2017) (Weinstein 00022) (under seal).

Dr. Weinstein agreed to keep colluding:

> On Jul 28, 2017, at 12:14 PM, David Weinstein <david@rivertowntherapeutics.com> wrote:
>
> Very limited distribution and only under CDA.  You have taken the words right out of my mouth…"rather not have the lawyers for the other side put two and two together just yet".
>
> Thanks.
>
> DW
> David E. Weinstein, MD, PhD
> Co-Founder, Chief Scientific and Chief Medical Officer
> RiverTown Therapeutics, Inc.
> 917-282-5135 (phone)
> david@rivertowntherapeutics.com
> david.e.weinstein57 (Skype)

*Id.*

Consistent with these communications, Dr. Gahan concealed Dr. Weinstein and his hair growth treatment in *each* of her four PFSs dated May 22, 2017, August 8, 2017, August 24, 2017, and October 2, 2017 – although she declared under penalty of perjury that the information provided in each PFS was true and correct to the best of her knowledge.

Sanofi only uncovered Dr. Weinstein when Dr. Gahan belatedly-produced thousands of

4

pages of emails on March 2, 2018 – more than one year after she began treatment with him.  Rather than provide these highly relevant emails as required by the initial PFS, Dr. Gahan withheld them until the Court entered PTO No. 71A – an Order meant only to clarify Plaintiffs' already existing discovery obligations.  Had the Court not entered PTO 71A (over the PSC's objection), it is highly unlikely that Defendants would have ever revealed Dr. Gahan's successful hair treatment.

On April 14, 2018, following a review of these newly-produced documents, Sanofi notified Dr. Gahan's attorneys at Bachus & Schanker LLC of its intent to seek Dr. Weinstein's treatment records.  That Sanofi was going to seek Dr. Weinstein's records was evidently relayed by someone (presumably at Bachus & Schanker LLC) to Dr. Gahan.

As she testified, Dr. Gahan instructed Dr. Weinstein to "just tell them that you weren't really my doctor . . . you don't have any records you never saw me."  *See* **Exhibit K**, Gahan Dep. at 329:5-7.  This is exactly what Dr. Weinstein then told Sanofi's records collection vendor on April 20, 2018. *See* **Exhibig D**, Aff. of Aulona Hoxha (Veritext) (under seal).  Met with such falsities, Sanofi subpoenaed Dr. Weinstein by personal service.  But before it did, Sanofi served pre-service notice on Dr. Gahan's attorneys at Bachus & Schanker LLC on May 3, 2018.  Once again, Dr. Gahan knew immediately from someone (presumably at Bachus & Schanker LLC) of Sanofi's forthcoming subpoena.  She texted Dr. Weinstein to warn him:



*See* **Exhibit C**, Message from Dr. Weinstein to Kelly Gahan (Weinstein 00177) (under seal). Dr.

Gahan then emailed to warn Dr. Weinstein again, saying:

| | |
|---|---|
| **Subject:** | Subpoena |
| **Date:** | Thursday, May 3, 2018 at 7:11:21 PM Eastern Daylight Time |
| **From:** | bluermedic@gmail.com |
| **To:** | David Weinstein |
| Just FYI opposing council is going to serve a subpoena tomorrow. They gleaned your info from my emails. Sorry 😳😡 | |

*See* **Exhibit C**, Email from Kelly Gahan to Dr. Weinstein (May 3, 2018) (Weinstein 00007)  (under

seal).

Weeks after Sanofi's initial records request – and following Dr. Gahan instructing Dr. Weinstein to fraudulently conceal any records – Dr. Weinstein finally produced over 175 pages of highly relevant records regarding his treatment of Dr. Gahan. *See generally* Weinstein 00001–00178.

But Dr. Gahan *continued* to conceal Dr. Weinstein's treatment. When asked directly about hair regrowth treatment during her deposition, Dr. Gahan left out Dr. Weinstein. She left out his year-long treatment of her alleged injury under oath. She only admitted to his involvement when asked about him by name. **Exhibit K**, Gahan Dep. at 308:10-18 (under seal). When confronted, Dr. Gahan rationalized that, since they are both doctors, she considered his treatment "physician/physician" rather than true "treatment." *See id.* at 328:8-12. By this definition, however, Dr. Gahan would not disclose *any* physicians consulted for hair regrowth or any other treatment concerning the claims in her lawsuit, calling into question what other treaters she has failed to disclose.

B.    **Dr. Gahan intentionally interfered with Sanofi's attempt to collect records from other medical providers**

In addition, Dr. Gahan testified that she has actively encouraged other records custodians to say that they "don't have medical records" – whether or not it is true. *See id.* at 330:5-22.

For example, Dr. Gahan received treatment from Dr. Lann, including prescription for acne and possible hair loss medication in 2015. *See* **Exhibit E**, Target c/o CVS 00010 (under seal). Yet, when asked about Dr. Lann, Dr. Gahan testified that he may have prescribed her a "Z-pak" for a cold once – nothing more. *See* **Exhibit K**, Gahan Dep. at 341: 15-23 (under seal). Dr. Lann parroted Dr. Gahan almost verbatim: "~~Patient~~ Kelly was a co-worker not my patient, I have *no* records – contact UC Health for any I am not involved in med records." *See* **Exhibit E**, Certificate

of Records Custodian, Dr. David Lann (Apr. 26, 2018) (under seal).  Sanofi has yet to receive

records of Dr. Lann's treatment of Dr. Gahan.



*Id.*

### C.    Dr. Gahan intentionally withheld hundreds of relevant photographs

Finally, Dr. Gahan testified that she intentionally withheld hundreds of responsive

photographs from the Plaintiff Fact Sheet and Amended Notice of Deposition, in direct violation

of this Court's Orders.  These include photographs of Dr. Gahan with friends and family before

and after chemotherapy, as well as *weekly* photographs taken by Dr. Gahan *expressly to detail her

hair regrowth*.  *See* **Exhibit K**, Gahan Dep. at 42:17-22, 273:16-22 (under seal).  This is

particularly concerning in light of Dr. Gahan's production of 41 photographs, 12 videos, and 28

miscellaneous articles two days before her deposition on May 14, 2018.  Despite Sanofi's request

that Dr. Gahan supplement her ESI based on the deposition, Sanofi has received no amended PFS

and no additional photographs from her.

## II.    <u>ARGUMENT</u>

The Court should grant Defendant's Motion and enter sanctions, including dismissal with

prejudice of Dr. Gahan's claims.  Should a party "fail to obey an order to provide or permit

discovery," Rule 37(b)(2) authorizes a district court to impose any "just" sanctions – including a

"dismissal of an action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v); *see also

Noranda Alumina, LLC v. Associated Terminals, LLC*, No. 16-cv-16677, 2018 WL 1092213, at

*6–7 (E.D. La. Feb. 28, 2018).

Dr. Gahan's intentional and ongoing effort to conceal highly relevant information related to a treating provider, medical records, and photographs from Sanofi constitutes gross disregard for the discovery obligations imposed by the Court's Orders.  With her encouraging others to commit similar discovery fraud, this is not an isolated incident, but a pattern of behavior.  As set forth below, other Taxotears communications raise additional concerns about widespread manipulation of the discovery process, particularly by members of the group, including Dr. Gahan.   In this sense, sanctions will serve both a just and deterrent effect.

A.      **Dismissal of Dr. Gahan's claims is appropriate**

The Court has considerable discretion in determining what sanction is appropriate.  *See, e.g.*, *Noranda Alumina, LLC*, 2018 WL 1092213, at *6–7.  The Fifth Circuit has held that a court does not abuse its discretion in awarding dismissal as a discovery sanction if: (1) the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) the violation is attributable to the client instead of the attorney; (3) the violating party's misconduct substantially prejudices the opposing party's preparation for trial; and (4) a less drastic sanction would not substantially achieve the desired deterrent effect.  *Oprex Surgery (Baytown), L.P. v. Sonic Auto. Employee Welfare Benefit Plan*, 704 F. App'x 376, 378 (5th Cir. 2017) (citing *FDIC v. Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985)).

1.      **Dr. Gahan willfully violated multiple Court Orders when she withheld information related to her treatment for hair regrowth and hundreds of responsive photographs**

Dismissal of an action with prejudice is "reserved exclusively for clear records of contumacious and continuing discovery misconduct or delay, ordinarily involving failure to comply with multiple court orders."  *See Murillo v. Coryell Cty. Tradesman, LLC*, No. CV 15-

3641, 2017 WL 2424661, at *4 (E.D. La. June 2, 2017).  It is not, however, "a party's negligence – regardless of how careless, inconsiderate, or understandably exasperating – that makes conduct contumacious; instead it is the stubborn resistance to authority which justifies a dismissal with prejudice of a claim or affirmative defense." *Id.*

### a. The Concealment of Dr. Weinstein

Dr. Gahan had a Court-ordered obligation to identify and produce information regarding treatment for her alleged injury.  *See* PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), and PTO No. 71A (Rec. Doc. 1531).  When confronted with her failure to disclose Dr. Weinstein, Dr. Gahan's only explanation was that she "might have just forgotten" to disclose him, or, in the alternative, that she "never considered" him to be her physician.  *See* **Exhibit K**, Gahan Dep. at 319:13-15; 329:8-12 (under seal).  The record instead shows that Dr. Gahan remembered him as her physician every time she emailed and texted him, and she knew his treatment of her would affect her case, but hoped Sanofi's lawyers would "put two and two together."

On February 3, 2017, Dr. Gahan reached out to Dr. Weinstein about treatment and possible participation in a clinical trial.  *See* **Exhibit C**, Weinstein 00174 (under seal).  Dr. Gahan offered to help Dr. Weinstein secure FDA approval for a trial – suggesting that she could provide him with the contact information "for over four thousand women," which she gathered through "advertising" for a "multi district litigation suit."  *See* **Exhibit C**, Weinstein 00174 (under seal). Dr. Gahan provided Dr. Weinstein with the medical records of several "Taxotears" members, including punch biopsy results.  *See* **Exhibit C**, Weinstein 00158-159 (under seal).  At least as documented, Dr. Gahan did not tell these women about Dr. Weinstein or about giving him their private medical records.

Dr. Gahan requested Dr. Weinstein's treatment, despite the unknown risks of experimental medication, and began using the drug in early April 2017. After two months, Dr. Gahan was "[t]hrilled, I actually had a dream the other night about my hair getting good enough to go out without a wig. That has never happened before." *See* **Exhibit C**, Weinstein 00023-24 (under seal). When Dr. Weinstein wanted to share her results publicly, Dr. Gahan was hesitant: she "would rather not have the lawyers for the other side put two and two together just yet." Dr. Weinstein agreed. *See id.*

On August 1, 2017 – the same week that she verified her First Amended PFS without mention of Dr. Weinstein – Dr. Gahan sent Dr. Weinstein an email letting him know that her hair regrowth was "pretty incredible."[6] *See* **Exhibit C**, Weinstein 00102 (under seal). Dr. Weinstein responded, "Your hair looks great. This is one of those instances when being a physician is really rewarding. Thanks for the privilege and trust." *See* **Exhibit C**, Weinstein 00102 (under seal).

For the next six months, Dr. Gahan continued to regularly e-mail Dr. Weinstein about her successful hair treatment. Those communications curiously ceased in April 2018 – just days after Dr. Gahan produced emails mandated by PTO No. 71A. On April 2, 2018, Dr. Gahan wrote that she had reconsidered, and had stopped using his treatment because she was not seeing "enough of a change to go without a wig." *See* **Exhibit C**, Weinstein 00008 (under seal).

The two did not communicate again until Sanofi requested Dr. Weinstein's medical records, at which point Dr. Gahan told Dr. Weinstein to tell Sanofi, "that you weren't really my doctor because you don't have any records, you never saw me" – *consistent with similar*

---

[6]   Oddly, Dr. Gahan also warned Dr. Weinstein that "if the taxotere girls get wind of it they will hunt you down to the end of the earth begging for help." *See* **Exhibit C**, Weinstein 00022. Dr. Gahan has not told her Taxotears support group of her success with Dr. Weinstein's treatments in response to questions from the group for help. *See* **Exhibit K**, Dep. Gahan at 321:16 – 322:9 (under seal).

*instructions she has given other record custodians*.   **Exhibit K**, Gahan Dep. at 329:2-7 (under seal).

Dr. Weinstein did just that, and Sanofi, knowing it to be untrue, was forced to have a subpoena for his records served on him personally.   *See* **Exhibit D**, Aff. of Aulona Hoxha (Veritext) (under seal).   When Sanofi gave counsel pre-service notice, Dr. Gahan contacted Dr. Weinstein to warn him that a subpoena was coming.   *See* **Exhibit C**, Weinstein 00007 (under seal).

Dr. Weinstein's medical records clearly establish that Dr. Gahan sought him out specifically for treatment for the injury alleged in this lawsuit, and discussed the lawsuit with him in her first communication with him.   Dr. Gahan began his treatment before her first verified PFS – which asked her to provide the name of each physician from whom she has "ever received treatment for the injury you allege in this lawsuit."   *See* **Exhibit F**, Gahan PFS, at 16 (under seal). Dr. Gahan continued to communicate with Dr. Weinstein regarding her hair regrowth and treatment – including exchanging bi-weekly photographs.   At no point, however, did Dr. Gahan amend her PFS to disclose this relationship.

Dr. Gahan's failure to include Dr. Weinstein on *any* of her four PFSs was not negligence, nor was it a misunderstanding of her obligations.   Instead, Dr. Gahan, a PSC-selected bellwether plaintiff, intentionally withheld information related to Dr. Weinstein from the "other side" for as long as possible, intending to deprive Sanofi of this highly relevant information. As of this Motion, Dr. Gahan has yet to actually disclose Dr. Weinstein on a PFS.   Dr. Gahan's actions are in violation of PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), and PTO No. 71A (Rec. Doc. 1531).   Dr. Gahan's actions also underscore the critical importance of the Plaintiff Fact Sheet and PTO 71A process mandated by the Court.

### b. The Concealment of Highly Relevant Photographs

In addition to the bi-weekly progress photographs for Dr. Weinstein, Dr. Gahan's medical records reveal that she was taking weekly photographs of her hair regrowth while receiving treatment from her oncologist in 2014. *See* **Exhibit K**, Gahan Dep. at 273:13-22 (under seal). Dr. Gahan testified that she has only produced "some" of them. *Id.* Dr. Gahan testified that she also has a "large number" of photographs on her computer – over 800 – that show her with friends and family before and after chemotherapy. *See* **Exhibit K**, Dep. Gahan at 42:17-22 (under seal). To date, Sanofi has yet to receive a supplemental production of photographs from Dr. Gahan.

Dr. Gahan's failure to produce *hundreds* of highly relevant photographs – many taken to expressly document her hair regrowth following chemotherapy – after repeated requests by Sanofi and multiple Court Orders is a violation of PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), PTO No. 68 (Rec. Doc. 1085), PTO No. 71A (Rec. Doc. 1531), and the Federal Rules of Civil Procedure.[7] Dr. Gahan's actions reflect a clear "stubborn resistance to authority." *Murillo v. Coryell Cty. Tradesmen, LLC*, No. 15-cv-3641, 2017 WL 2424661, at *4 (E.D. La. June 2, 2017).

### 2. Dr. Gahan's actions were her own – supported by her focus on influencing others to also commit discovery misconduct.

This is not a case where a "blameless client" would be "made to suffer for her attorney's misdeeds" should her claims be dismissed. *Worrell v. Houston Can! Acad.*, 424 F. App'x 330, 337

---

[7] Sanofi has met and conferred on Plaintiffs' overall ESI deficiencies countless times – including numerous specific discussions regarding the production of photographs and Plaintiffs' social media activity – and the Parties have been before the Court on these very same issues at least three times. *See, e.g.*, Tr. of General Status Conf. at 13:8-18 (J. Engelhardt) (Oct. 27, 2017) (". . . much to my dismay, we continued a conversation regarding the production of photographs of plaintiffs as part of the plaintiff fact sheet production . . . . So I am going to say it again and I hope it's the last time I have to say this, because I think it's a matter of common sense, that on the plaintiffs' side you should want to produce the best, most recent, most illustrative photograph you can find of your client. . . . "). Still, to date, Sanofi continues to uncover problematic discovery strategies that are directly affecting Sanofi's ability to defend this case. Plaintiffs' social media activity and photographs are within the permissible scope of discovery, and are of great importance to Sanofi's defense because they directly relate to Plaintiffs' claims in this litigation.

(5th Cir. 2011).   To the contrary, Dr. Gahan is a highly-educated and sophisticated plaintiff. Throughout 2015, she was in regular contact with FDA about Taxotere®.[8]   On December 21, 2015, Dr. Gahan became the first of now more than 9,000 plaintiffs to file suit in this MDL.   Further, on October 20, 2017, the PSC selected Dr. Gahan as one of their preferred bellwether plaintiffs pursuant to CMO No. 8 – adding additional importance and scrutiny to her case.   *See* CMO 8A (Rec. Doc. 1099).

And Dr. Gahan, despite her actions, was aware of her obligations to the Court and to Sanofi. *See* **Exhibit K**, Gahan Dep. at 329:8-12 (under seal).   She testified that she provided Sanofi with the photographs that "the Court required," while at the same time withholding hundreds of relevant weekly "progress" photos taken at the direction of her treating physicians.   *See* **Exhibit K,** Gahan Dep. at 40:20-21 (under seal).   Dr. Gahan was aware of and understood her obligations pursuant to the Court's Orders, and bears direct personal responsibility for her failure to satisfy those obligations.

### 3. Sanofi has been substantially prejudiced by Dr. Gahan's misconduct

Dr. Gahan's actions directly contradicting the Court's discovery orders denied Sanofi basic information about Dr. Gahan's claims, and hampered its ability to prepare a defense.   Sanofi unnecessarily incurred attorney fees and expenses seeking discovery from physicians who Dr. Gahan had told to withhold records and deny any treatment relationship.   *See* **Exhibit K,** Gahan Dep. at 330:5-19 (under seal).

---

[8]   *See* **Exhibit G**, Email C. Vernarecci to Taxotears Group (Jan. 8, 2016) (PPR 006011) ("The following is an email from a woman at the FDA. It came about 6 months after one of our members, Kelly, arranged a group conference call with several of us and several agency people. . . ."); **Exhibit G**, Email from D. Miller to K. Gahan (May 28, 2015); **Exhibit G**, Email from K. Gahan to Taxotears (Mar. 10, 2015) (PPR 007908) ("Great news!!! The FDA is launching a formal investigation into our plight. . . . I spoke with the below Dr. Miller today and she was incredibly empathetic and concerned and would love to hear from as many of us as possible."); **Exhibit G**, Email from D. Miller to K. Gahan (Mar. 10, 2015) ("Your email to Richard Pazdur was forwarded to me and I was asked to call you to learn more about your experience with Taxotere.").

Furthermore, as the Court indicated in PTO No. 71A, it is the "Plaintiff's obligation to provide photographic evidence which accurately and adequately reflects Plaintiff's hair loss injuries.  Providing sufficient photographs within 5 years prior to chemotherapy, which depict Plaintiff's hair prior to treatment with Taxotere, and providing sufficient current photographs, which demonstrate plaintiff's current hair loss following treatment with Taxotere, is needed to prove the client's claim."  *See* PTO No. 71A (Rec. Doc. 1531).  To accurately assess that claim, Sanofi needs clear photographs in each of the relevant time periods.  They reveal the nature and extent of the alleged injury and determine if and how it presented itself over time.  Such an assessment is essential so that Sanofi can defend itself in this litigation.

### 4. Lesser Sanctions Are Not Sufficient to Penalize or Deter

Dr. Gahan filed her action with this Court seeking significant alleged damages from Sanofi, while at the same time openly disregarding this Court's orders, withholding evidence, and attempting to inspire other parties to evade discovery.  Justice dictates that Dr. Gahan should not be rewarded from her conduct.

While the district court should "consider less drastic sanctions" when considering dismissal under Rule 37, the Fifth Circuit has "not hesitated to affirm dismissals in appropriate cases without discussion of lesser sanctions."  *Batson v. Neal Spelce Assocs.,* 765 F.2d 511, 516 (5th Cir. 1985) (citing *Kabbe v. Rotan Mosle, Inc.*, 752 F.2d 1083 (5th Cir.1985); *Jones v. Louisiana State Bar Ass'n*, 602 F.2d 94 (5th Cir.1979); *Bonaventure v. Butler*, 593 F.2d 625 (5th Cir.1979)).  Additionally, while PTO No. 71A is not a sanction, the Court entered it on January 1, 2018, out of concern that "certain Plaintiffs in this MDL" had not "adequately and timely produced responsive electronically stored information ("ESI") as required by the Plaintiff Fact Sheet ("PFS")."   PTO No. 71A (Doc. 1531).  The Order clearly highlighted Plaintiffs' obligations in this litigation, and

15

called on all Plaintiffs and their counsel to "review and familiarize themselves with the revised 'Guidance Regarding Potential Sources of Electronically Stored Information.'" *Id.*

Here, lesser sanctions are not enough to penalize Dr. Gahan's conduct. Dr. Gahan intentionally disregarded her discovery obligations in this case for more than a year, and intentionally verified four false PFSs. Dr. Gahan interfered with other providers just like she did with Dr. Weinstein. In addition, Dr. Gahan withheld hundreds of responsive photographs detailing her hair loss and regrowth.

Dr. Gahan's conduct is a violation of the Court's Orders and the Federal Rules of Civil Procedure, and as a result Rule 37(b)(2) authorizes the Court to dismiss her claims. *See e.g.*, *United States v. $49,000 Currency*, 330 F.3d 371, 379 (5th Cir. 2003) (finding that the district court's did not abuse its discretion by imposing sanction of default judgment when claimants violated the court's discovery order and deadlines); *Truck Treads, Inc. v. Armstrong Rubber Co.*, 818 F.2d 427, 429-30 (5th Cir. 1987) (affirming district court's dismissal of plaintiff's claims when, in addition to counsel for plaintiff's contumacious conduct, plaintiff repeatedly failed to respond fully to discovery requests and violated a court discovery order); *Jones v. Louisiana State Bar Ass'n*, 602 F.2d 94 (5th Cir. 1979) (affirming district court's dismissal of plaintiff's claim where plaintiff deliberately refused two orders to produce recordings and documents he possessed); *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976) (affirming district court's decision to enter default judgment where defendant ignored three orders to produce documents).

Furthermore, while dismissal with prejudice is "severe," the Fifth Circuit recognizes such sanction may be necessary "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Noranda Alumina, LLC v. Associated Terminals, LLC*, No. 16-cv-16677, 2018 WL

16

1092213, at *6–7 (E.D. La. Feb. 28, 2018) (quoting *Wilson v. James Indus. Contractors*, 16-cv-1263, 2016 WL 7717492, at *2 (E.D. La. Nov. 18, 2016) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976))).

Dr. Gahan's conduct is particularly concerning in light of the limited "Taxotears" ESI that Sanofi has received to date. From what has been produced, it appears that the "Taxotears" Group frequently discusses how to avoid discovery obligations in the MDL. For example, in one e-mail string, the "Taxotears" Group discussed how to respond to Sanofi's request for the date each Plaintiff became aware her hair loss was permanent, and the impact this may have on Sanofi's statute of limitations defense. Shirley Ledlie, whom the PSC has identified as a third-party trial witness and whom this Court ordered to appear for deposition, offered her advice to the Taxotears Group, including Dr. Gahan, stating:

> *[B]efore you tell them any too recent date, make sure you cover your tracks. If you wrote a comment in my book? Did you use your name? Can you be associated with me at all for the last 10 years? What about any comments left on any of my articles? Plus this group? The lawyers will find out everything.*

*See* **Exhibit H,** Email from S. Ledlie to Taxotears Group (Apr. 29, 2016) (PPR 005079) (under seal). Another member suggests using the date the FDA changed the label:

> *The way I was trying to think, was that I could have 'guessed' or 'thought' or 'assumed' my hair loss was from Taxotere, but since my doctor denied it, and everyone else and because I could not find it anywhere under possible side effects, it was only when the FDA acknowledged it with a label change, was I certain this was the cause.*

*See* **Exhibit H,** Email from R. Bode to Taxotears Group (Apr. 30, 2016) (PPR 005079) (under seal). And a third member responds to this suggestion, saying:

> *Wish I had thought to use the FDA ruling date but never crossed my mind.*

*See* **Exhibit H,** Email from S. Harrison to Taxotears Group (Apr. 30, 2016) (PPR 005079) (under

seal).  Finally, Jennifer Weigand, another MDL plaintiff represented by Bachus & Schanker, then

mentions:

> *My response was that I actually haven't yet determined that it is permanent, because I refuse to accept that. . . . (I have never had a scalp biopsy or had a doctor tell me it was permanent). Bob mentioned that this is actually "good" regarding the statute of limitations.*

*See* **Exhibit H,** Email from J. Weigand to Taxotears Group (Apr. 30, 2016) (PPR 005078) (under

seal).

Dr. Gahan is an active member of the "Taxotears" group – and is often credited as a

champion of this litigation, having initially introduced the "Taxotears" members to her attorneys

at Bachus & Schanker LLC.[9]  Given the extensive contact between many of the Plaintiffs in this

litigation, most represented by the same counsel, and their clear willingness to discuss

manipulation of the discovery process, a lesser sanction would not provide the necessary deterrent

effect to ensure that other Plaintiffs do not commit the same misacts.

**B.  Request for Sanctions**

On the foregoing, Sanofi respectfully requests that the Court dismiss Dr. Gahan's claims

with prejudice pursuant to Rule 37(b)(2).  Further, Sanofi respectfully requests that the Court:

1.  Order the production for *in camera* review by this Court of all correspondence between Dr. Gahan and any attorneys or staff at Bachus & Schenker so that the Court can make a determination if further discovery misconduct has occurred;

2.  Enter a monetary sanction against Dr. Gahan commensurate with her actions;

---

[9]    *See, e.g.*, **Exhibit G**, Email from C. Vernarecci to Taxotere Group (Jan. 9, 2016) (PPR 006011) (under seal) ("Also, you should know that Kelly (what a star!) began talking to some attorneys about a lawsuit against Sanofi-Aventis well over a year ago. Now a law firm has agreed to take our case nationwide on a contingency basis. They're looking for participants across the US. Cynthia and Karen, I'll send you the lawyers contact info in a separate email.").

3.  Enter an adverse inference instruction against Dr. Gahan;

4.  Order Dr. Gahan to produce *all* relevant ESI in her possession, custody, or control;

5.  Order Dr. Gahan to produce her computer to allow Sanofi to search for additional relevant ESI;

6.  Permit an additional 7-hour case-specific deposition of Dr. Gahan following receipt of any and all outstanding ESI;

7.  Award attorney fees and expenses for the time spent seeking medical records; and

8.   Enter any additional sanctions the Court deems just pursuant to Rule 37.

## CONCLUSION

Plaintiff Kelly Gahan ("Dr. Gahan") engaged in a willful effort to deprive Sanofi of highly relevant information, and her behavior reveals widespread disregard for the discovery obligations imposed by this Court through the Plaintiff Fact Sheet ("PFS"), PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), PTO No. 68 (Rec. Doc. 1085), and PTO No. 71A (Rec. Doc. 1531). Colluding to evade Sanofi's independent records requests was the last straw. Warning a witness who a process server had to find to subpoena personally was yet another. Telling other witnesses to lie also disturbs the conscience. Consciously omitting facts under oath has left no other recourse. In light of Plaintiff's bad faith conduct, Sanofi respectfully requests the Court dismiss Dr. Gahan's claims and impose other reasonable sanctions pursuant to Fed. R. Civ. P. 37(b)(2).

## CERTIFICATION OF EFFORTS TO MEET AND CONFER

This certification is submitted pursuant to Fed. R. Civ. P. 37(a)(1), and sets forth counsels' attempts to resolve by agreement Defendants' pending Motion.

1.  On May 18, 2018, Dr. Gahan appeared for her deposition as part of case-specific discovery for Bellwether Trial Pool II. Dr. Gahan did not bring the responsive documents in her

possession, custody, or control, as requested by the Plaintiff Fact Sheet and Amended Notice of Deposition.

2. As a result, on May 18, 2018, counsel for Sanofi requested Dr. Gahan produce the responsive documents in her possession, custody, or control, to which she agreed. **Exhibit K,** Gahan Dep. at 273:20-22 (under seal).

3. In a letter dated May 22, 2018, counsel for Sanofi renewed the request that Dr. Gahan supplement her production with all responsive documents in her possession, custody, or control, requested she perform a thorough search for any additional responsive media, and advised Plaintiff's counsel that Sanofi would seek costs and sanctions for Dr. Gahan's willful conduct depriving Sanofi of information relevant to its defense for over a year. *See* **Exhibit I,** Letter from H. Ratliff to K. Bachus (May 22, 2018) (under seal).

4. In an email dated May 24, 2018, Plaintiff's counsel stated he would not respond to the May 22, 2018, letter's "accusations of malfeasance." *See* **Exhibit J,** Email from K. Bachus to H. Ratliff (May 24, 2018) (under seal).  In response, counsel for Sanofi confirmed Plaintiff's counsel did not agree with Sanofi's requested relief. *See* **Exhibit J,** Email from H. Ratliff to K. Bachus (May 24, 2018) (under seal).  Sanofi has received no further response to its May 22, 2018, letter.

5. To date, Dr. Gahan has not supplemented her ESI production with the responsive documents she testified are in her possession, custody, or control, including hundreds of photographs responsive to multiple Court Orders.  In addition, Dr. Gahan has not amended her PFS to include information regarding Dr. David Weinstein.

6. I certify that I have conferred with counsel for Plaintiff in a good faith effort to resolve by agreement Sanofi's Motion, but have been unable to reach an agreement.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi US Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*