# EXHIBIT B



November 2, 2017

Harley V. Ratliff

2555 Grand Blvd.
Kansas City, Missouri 64108
t 816.474.6550
f 816.421.5547

The Honorable Kurt D. Engelhardt
Chief Judge, United States District Court
500 Poydras Street
Room C367
New Orleans, Louisiana 70130

Re:   *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL No.
      2740 – General Discovery Protocol

Dear Judge Engelhardt:

At Your Honor's request, we write to propose a simple order governing Plaintiffs' obligations to identify, preserve, collect, and produce electronically stored information ("ESI"). The proposed order is attached as Exhibit A.

In short, Defendants' three-page order requires Plaintiffs to take a few minimal steps with respect to ESI, namely: (1) identify the potential sources of ESI; (2) do an actual search of each source (and run targeted search terms); (3) preserve metadata; and (4) disclose where other responsive ESI may exist. Defendants believe these steps will remedy the inventory-wide problem of Plaintiffs failing to adequately identify, preserve, collect, and produce responsive ESI pursuant to their Plaintiff Fact Sheet ("PFS") obligations, while at the same time not placing an undue burden on Plaintiffs. Addressing these issues now will benefit all parties and the Court by improving the accuracy and utility of information that Plaintiffs are required to disclose. Among other things, that information is critical to all parties' ability to evaluate and select appropriate cases for trial pools.

*Plaintiffs' Obligations.* In the PFS, the Court ordered Plaintiffs to produce documents – including ESI – related to their cancer, chemotherapy, and hair loss. *See* Amended PTO No. 22 (Doc. 325); PTO No. 38 (Doc. 326), at § IX ("Produce all documents in your possession" including documents in "electronic form"). The Court also required Plaintiffs to disclose their use of electronic mediums to communicate about cancer, chemotherapy, or hair loss and provide a short description of other individuals that might have documents in their possession. *Id.*, at § II.18; § IX. Despite the Court Order, the vast majority of Plaintiffs are not producing responsive ESI.

*The Problem.* In the year 2017, much of the discoverable information in an individual's possession is electronic. People now use cell phones instead of film to take pictures, send emails instead of letters, store documents in the cloud instead of boxes, connect with others in chatrooms instead of coffee shops, and talk to family and friends on social media instead of the phone. Plaintiffs should produce all of these types of ESI in response to the requests for production in Section IX of the PFS. Yet



almost all are not.

For example, 93% of responding Plaintiffs claim to have never communicated electronically about their chemotherapy, cancer, or hair loss.[1]  *See* PFS, at § II.18.  And of those that admit to using electronic communications, <u>only 4 have produced any emails</u>. The problem is not that Plaintiffs live in the stone-age with no digital devices or email. Rather, Defendants believe this failure is a result of Plaintiffs who (1) do not understand what ESI is responsive, where it might be stored, or how to collect it; (2) do not see the necessity or urgency in complying now; or (3) are not responding truthfully in the PFS.

An order addressing these issues is necessary because these are not run-of-the-mill deficiencies that can be addressed through the standard process outlined in PTO 22. *See* Amended PTO No. 22, at ¶ 5.  For example, Defendants cannot mark an untruthful PFS answer as "deficient."  Nor can Defendants, without some minimal transparency, test the veracity of a plaintiff's ESI productions because the vast majority of an individual's ESI is, by its very nature, private (e.g., private email and locked social media accounts, and photographs and documents on personal devices).

But where Defendants *have* been able to test the veracity of Plaintiffs' ESI productions, the lack of diligence or honesty – or both – is obvious:

- A number of Plaintiffs[2] exchanged at least one email with FDA regarding the Taxotere label, which Defendants only know about through a Freedom of Information Act ("FOIA") request.  Yet *none* of these women disclosed these emails with FDA – much less produced them. Based on additional FOIA requests, Defendants have reason to believe that this is not an isolated communication.  Rather these women, and others, were likely in regular email contact with FDA (and each other) throughout 2015 and likely earlier.

- Equally troubling, another Plaintiff[3] in her PFS indicated that she had made a <u>single</u> post on CSN.org (Cancer Survivor Network message board) in 2010 – but failed to produce it, stating only that "discovery continues."  Upon further investigation, Defendants uncovered that she had apparently made more than 2,500 posts, many of which directly contradict the allegations in her lawsuit:

    - July 2011: "I really think it's the Taxotere.  She did tell me that any chemotherapy (not just Taxotere) can result in some permanent hair loss."

    - June 2012: "Honestly, I'm ok wearing wigs and hats and as long as the Taxotere killed the nasty cancer cells, this is a small price to pay."

---

[1] This number also includes those that refuse to answer the question.
[2] *See, e.g.*, Kelly Gahan, Ami Dodson, Wendy Crone, Suzanne Mink, and Yolanda Herron.
[3] *See* Suzanne Mink.



- May 2013: "I know if I'd been warned about this potential side effect that I would still have had Taxotere."

These types of highly-probative communications should have been disclosed and produced.

- Another Plaintiff[4] serves as an illustrative example of plaintiffs' wait-to-comply attitude. Before being selected for trial, this plaintiff claimed to have never made a blog entry regarding her cancer, chemotherapy, or hair loss. After being selected for trial, however, she disclosed that she dedicated an entire blog to her chemotherapy treatment that detailed her hair loss and regrowth.

These are not "cherry-picked" examples of Plaintiffs who are represented by disinterested counsel with no meaningful stake in this litigation. These Plaintiffs are represented by lawyers who were appointed by Your Honor to leadership positions in this MDL, and two of the Plaintiffs were nominated by the PSC as bellwether cases.

In this type of litigation, counsel has an obligation to do more than call their clients and tell them, "[h]ey, you need to make a diligent search." *Contra* Oct. 27, 2017 Steering Committee Tr., at 20:13–18.[5] Such an approach runs the real risk of leading to incomplete productions and responses – particularly on the plaintiffs' side, where clients are likely unfamiliar with the litigation process, the obligations imposed on them, and the unique meaning of words and phrases used by lawyers.

Instead, counsel has an obligation to "take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Zubulake v. USB Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004); *see also* Fed. R. Civ. P. 26(g). The PSC seemingly rejects this concept and admits that many of their clients are just not looking. *See* Oct. 27, 2017 Steering Committee Tr., at 19:16–19 ("But even assuming, Judge, that there are situations where there is a plaintiff who just says I don't have any because *they don't want to look, they aren't diligent, that will happen* and that's why we have cross examination.") (emphasis added). And it is also clear that Plaintiffs' ESI "Guidance" is not the solution. The Guidance is just that – guidance. It does not require Plaintiffs or their counsel to do anything beyond "keep in mind" that ESI may exist.

*The Solution*. Defendants' proposed order first ensures that Plaintiffs identify potential sources of ESI. Unlike Plaintiffs' ESI Guidance, which generally suggests

---

[4] *See* Elizabeth Kahn.

[5] Plaintiffs' claim that asking their clients to search for relevant documents "is sufficient," is contrary to the authority on this issue. *See, e.g.*, Dawn M. Bergin, *New Federal Rules on E-Discovery Help or Hindrance?* 43 AZ Attorney 22, 25 (Dec. 2006) ("[Case law] make[s] clear that *the days of doing no more than asking your client to gather relevant documents and e-mails are over*....[counsel] must...make every reasonable effort to locate, preserve, and produce relevant electronic data, including metadata.") (emphasis added).



that Plaintiffs "consider" their computers, devices, and social media; the order requires Plaintiffs to search for specific sources of ESI that may otherwise be forgotten or disregarded.

The order also ensures that Plaintiffs and their counsel make an actual, appropriate search on the identified sources.  A question to a client that calls for a "yes" or "no" answer is not a sufficient search for ESI.  And even if it were, it is clear from Plaintiffs' incomplete PFS responses that they cannot remember the documents that might be relevant to their case.  Thus, the order requires them to <u>actually search</u> their computers, tablets, phones, storage devices, and email and social media accounts for a handful of simple terms such as "cancer," "chemotherapy," and "hair loss," among others. By contrast, Plaintiffs have proposed that Defendants run over 850 complex search terms to identify responsive ESI requested by Plaintiffs. Here, Plaintiffs just have to swipe left on their iPhone, scroll to the top of the page on their email account, or go the bottom left corner of their screen on their PC, and type a few phrases into the search function.

In addition, the order asks Plaintiffs to make certain disclosures – Who else might have ESI? Has ESI has been destroyed?[6] – just as Defendants are required to do.  *See* PTO No. 49 (Doc. 611) ("ESI Protocol") *see also* Sep. 20, 2017 Ltr. from Zachary Wool. For many of these Plaintiffs, their spouses or children were intimately involved with Plaintiffs' cancer treatment and are as likely as plaintiffs to have communications or photographs relevant to this litigation.

Defendants are entitled to Plaintiffs' ESI now for a reason: it needs to be discovered "on the front end" so Defendants can evaluate the inventory, investigate the claims, and make bellwether nominations.  *See* Jan. 27, 2017 Steering Committee Tr., at 16:24–25; 17:1–2.  The proposed order will help remedy these issues. And it is an efficient and reasonable solution to this ongoing problem.

***

Sincerely,

Harley V. Ratliff

---

[6] Plaintiffs acknowledge that ESI is particularly sensitive to destruction and that in some cases, they have destroyed relevant ESI.  *See* Sep. 20, 2017 Ltr. from Zachary Wool (claiming that Plaintiffs may not have responsive ESI "even if at some time [it] may have existed…" because "a plaintiff may have emailed about her hair loss during her chemotherapy treatment from an email account that no longer exists.").