UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  TAXOTERE (DOCETAXEL)                    MDL No. 2740
PRODUCTS LIABILITY LITIGATION

SECTION: "N" (5)

THIS DOCUMENT RELATES TO:

*Kelly Gahan*
**Case No.:2:16-cv-15283**

### PLAINTIFF'S MEMORANDUM IN RESPONSE TO SANOFI DEFENDANTS' MOTION FOR RULE 37 SANCTIONS

### RESPONSE TO CERTIFICATE OF CONFERRAL

Contrary to Defendant Sanofi's motion for sanctions under Fed. R..Civ. P. 37 (Rec. No. 2831), Sanofi's counsel has not complied with Rule 37's conferral obligations.  The rule demands a meaningful discussion of the specific issues in dispute for the purpose of avoiding court action.  See Fed. R.Civ. P 37(a)(1)(a movant must "certify he has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.")  Here, counsel for Dr. Gahan was first made aware of Sanofi's long list of complaints concerning Dr. Gahan's compliance with her discovery obligations on May 22, 2018. (**Def. Ex. I**). Prior to May 22, Sanofi never conferred with Dr. Gahan's counsel about Dr. Gahans' alleged interference with returns from medical providers, although it received Dr. Lann's "no records" certification on April 26, 2018 (**Def. Ex. E**).  Sanofi never even informally requested supplementation of Dr. Gahan's PFS to identify Dr. Weinstein, even though Defendant was aware that Dr. Weinstein provided samples of his hair growth elixir to Dr. Gahan when she produced his emails as part of her

ESI disclosure on March 2, 2018.[1] Defense counsel never conferred with Dr. Gahan's counsel concerning the sufficiency of her hair loss photographs, or its apparent belief that this Court's discovery orders obligated Dr. Gahan to produce each and every photograph showing her hair from five years prior to chemotherapy to the present.

Despite ample opportunity to confer, Defendant waited until after Dr. Gahan's deposition on May 16, 2018 to propound a "conferral" letter that is nothing but a series of ultimatums, demanding remedies completely unrelated to the alleged discovery violations outlined in the letter. See Bitterroot Holdings, LLC v. Bank of New York Mellon, 2015 WL 11661761, at *2 (W.D. Tex. Aug. 25, 2015)(finding single ultimatum letter does not satisfy local rule requiring good faith conferral on discovery matters). This "conferral" was no conferral at all, and Defense counsel's certification that it occurred in "good faith" stretches the meaning of that term beyond all recognition. See Compass Bank v. Shamgochian, 287 F.R.D. 397, 399 (S.D. Tex. 2012)("[t]he 'good faith' language encompasses, among other things, 'honesty in one's purpose to meaningfully discuss the discovery dispute ... and faithfulness to one's obligation to secure information without court action"). Sanofi's motion for sanctions should be rejected out of hand because Sanofi's May 22, 2018 conferral letter clearly reflects its counsel never intended to engage in the process of truth-seeking or engage with Dr. Gahan's counsel on a professional basis.[2]

---

[1] Defendant was indisputably aware of Dr. Weinstein's role by April 14, 2018, when counsel for Defendant sought PTO 22 permission to request medical records from Dr. Weinstein. (**Exhibit 1**, 4.14.2018 email from K. Bieri to counsel for Gahan). Defendants' counsel did not request supplementation of Dr. Gahan's PFS when it notified counsel it would be requesting Dr. Weinstein's records, or at any time prior to its May 22, 2018 ultimatum letter.

[2] Sanofi's intransigence is on-going. After Sanofi filed its motion for sanctions, Dr. Gahan's counsel asked Sanofi to identify any sources or categories of ESI it had reason to believe Dr. Gahan had not produced. (**Exhibit 2**, 06.26.18 email). After contemplating the request for two days, Sanofi's counsel could not identify a source or category of ESI not produced. Rather, Sanofi insisted that Dr. Gahan's willingness to "perjure herself" rendered anything she certified concerning her ESI production wholly unreliable. Id.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Sanofi opens its libelous screed against Dr. Gahan casting a series of completely irrelevant aspersions surrounding her role as the first plaintiff to file a lawsuit against Sanofi for concealing the life-altering side effects of Taxotere.  Dr. Gahan admits the substance of the allegations as basically true. Dr. Gahan has actively and wickedly encouraged other women whose self-image was destroyed by Sanofi's reckless business practices to join this MDL, even odiously recommending her own attorneys.  What's more - Dr. Gahan diabolically lobbied the Food and Drug Administration to force Sanofi to change the Taxotere label to more accurately describe its risks.  Dr. Gahan's monstrous conduct included hundreds of hours utilizing her medical expertise to research the latest developments in hair growth to alleviate the suffering and harm caused by Sanofi's non-disclosure of Taxotere's toxic side-effects.  It is absolutely fair to characterize Dr. Gahan as a leader in the movement that finds Sanofi in this MDL, and it should be equally obvious that Sanofi's attempt to deprive Dr. Gahan of her day in court may be the result of a vendetta to punish her for completely legal and honorable conduct. Dr. Gahan has zero apologies to offer Sanofi or anyone else for her role in attempting to obtain some measure of justice for herself or the tens of thousands of women unnecessarily harmed by Sanofi's product.

This Court's Pretrial Order No. 71A governing production of ESI provides the Defendants with unprecedented access to the virtual life of individual plaintiffs.  The height of irony is that Sanofi is using the emails and texts it obtained <u>because of</u> Dr. Gahan's total and forthright compliance with PTO 71A as its weapon.  Given access to her once presumed private and personal thoughts and communications – reflecting her hopes, fears and anxieties related to her hair loss and role in this lawsuit – Sanofi is attempting to transform "bad thoughts" (i.e. her reservations about permitting Dr. Weinstein to publicly use her photos for fundraising) into sanctionable misconduct.

Sanofi's attempts should be unavailing, because Rule 37 of the Federal Rules of Civil Procedure does not authorize sanctioning bad thoughts.  Rule 37 permits sanctions for (a) failing to disclose under Rule 26;[3] (b) failing to answer or providing evasive or incomplete answers to interrogatories or requests for production; or (c) failing to attend a deposition.  Rule 37 sanctions bad actions – a parties' intentional and bad-faith failure to participate in the discovery process.  Even if Sanofi's fantastical string of accusations against Dr. Gahan were true – which they are not – Rule 37 does not authorize sanctions for unintentional omissions in sworn testimony, or even for counselling a witness to not respond to an informal records request.  If Sanofi believes Dr. Gahan perjured herself, or improperly interfered with the legal process, it can seek relief for contempt of court, so Dr.  Gahan can demonstrate the vexatious and bad-faith nature of Sanofi's accusations under the proper legal standards.

Whatever Dr. Gahan's "thoughts" about Sanofi and its attorneys were, its motion for sanctions fails because the record demonstrates she has substantially complied with the discovery obligations issued by this Court.  Pursuant to PTO 22, Dr. Gahan completed and submitted sworn answers to the interrogatories in the PFS.  Dr. Gahan did not and still does not believe Dr. Weinstein was her physician or medical provider – an opinion shared by Dr. Weinstein.  Sanofi may have a different opinion, but neither Sanofi or this Court can force Dr. Gahan to swear to a fact she does not believe to be true.  Rule 37 does not authorize sanctions for differences in opinion.

Pursuant to PTO 68, Dr. Gahan produced over 60 "representative" photographs and 12 videos of herself, demonstrating the condition of her hair from five years before chemotherapy to the present.  Sanofi may believe Dr. Gahan has an obligation to produce every photograph of herself from five years prior to chemotherapy to the present, but Dr. Gahan's (and her attorney's) good-faith belief

---

[3] Not applicable here because the parties have opted out of Rule 26(a)(1).

that representative photographs fulfill her obligations under PTO 68 is not sanctionable conduct under Rule 37.

Pursuant to PTO 71A, Dr. Gahan produced over 18,000 pages of ESI – emails, text messages, research articles, an additional 20 photographs of her hair sent to Dr. Weinstein, as well as all the "medical records" (i.e. personal emails) Sanofi ultimately obtained from Dr. Weinstein. Sanofi may believe Dr. Gahan has not produced all her relevant ESI, but offers <u>no evidence</u> that she has not fully and completely complied with PTO 71A.

Considering Dr. Gahan's good-faith completion of her PFS and massive production of ESI, Sanofi cannot prove either of the two base requirements necessary for the Court to enter sanctions under Rule 37 – that she failed to participate in discovery and caused unnecessary delay. Other than the photographs Dr. Gahan did not produce due to her good-faith dispute over the scope of PTO 68, Sanofi had every document it requested when it obtained her deposition on May 16, 2018. Sanofi's motion does not pretend otherwise. For the same reason, Sanofi cannot demonstrate <u>substantial prejudice</u> to its preparation for trial – a burden it must carry before the Court can dismiss Dr. Gahan's claim as a sanction under Rule 37.

Sanofi's motion is not a good-faith effort to obtain discovery Dr. Gahan has withheld. Rather, it is Monday morning quarterbacking – pure and simple. Precisely because Dr. Gahan has diligently complied with the challenging discovery obligations established by this Court – fully completing the PFS, producing complete ESI, and forthrightly answering every question at her deposition – Sanofi has triangulated some laughingly insignificant potential inconsistencies on purely tertiary matters. Good for Sanofi – this is what discovery is for. If relevant, Sanofi can cross-examine Dr. Gahan on these inconsistencies at trial for whatever probative value they may have. Sanofi has not, however, demonstrated Dr. Gahan has withheld any materials without a good faith basis, unnecessarily delayed the litigation, or substantially prejudiced Sanofi's ability to present its case.

The question raised by Sanofi's motion is whether Sanofi is using its expansive and unprecedented discovery powers in this case for their intended purposes – seeking truth on the merits of plaintiffs' claims. Sanofi's motion demonstrates it does not intend to use the massive amount of discovery plaintiffs must provide to litigate the merits, but instead to harass individual plaintiffs if Sanofi is not subjectively satisfied with their discovery responses. Sanofi's motion also demonstrates that it will resort to abusive litigation practices to achieve its ends. Sanofi's motion is a long series of unwarranted (sometimes criminal) accusations without factual basis. It includes fabrications, half-truths, and omissions buttressed solely by the cynical negative inferences it seeks to draw from Dr. Gahan's single unfortunate and ambiguous email to Dr. Weinstein. Sanofi's belief that Dr. Gahan attempted to obstruct it from obtaining Dr. Weinstein's and Dr. Lann's "records" is just that – speculations contradicted by the very evidence it offers in support. Through bad-faith omission by its attorneys, Sanofi's motion invites this Court to conclude Sanofi obtained <u>new</u> and "highly relevant medical records" from Dr. Weinstein through its May 3rd subpoena, when the record demonstrates the only "medical records" it obtained from Dr. Weinstein were his personal emails with Dr. Gahan that she <u>already largely produced</u> to Sanofi as part of her ESI production on March 2nd. Dr. Gahan will demonstrate that Sanofi's motion includes numerous other outright falsehoods that Sanofi's attorneys must have known were false.

If Sanofi's fundamentally dishonest motion for sanctions against Dr. Gahan is any indication of what it intends to do with the unprecedented discovery obligations imposed on the plaintiffs, then this Court has good cause to either reconsider those discovery obligations or consider entering an order severely limiting Sanofi's right to file motions. Sanofi's motion is frivolous, abusive, and vexatious, and its tactics fundamentally contradict the mandate that the civil rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive

determination of every action and proceeding." Fed. R.Civ. P. 1.  This MDL cannot be litigated this way.

**LAW AND ARGUMENT**

### A. Sanofi's Sanctions Motion Fails Because Dr. Gahan Complied With All Discovery Obligations

Before discussing the minutiae of Sanofi's unwarranted accusations against Dr. Gahan and her counsel, the Court would be well-served to ascertain whether any of Sanofi's accusations even matter – whether, even if every allegation were true, Sanofi is entitled to sanctions under Federal Rule of Civil Procedure 37.  Rule 37 provides for sanctions in connection with either (a) a motion to compel disclosure under Rule 26(a) [section (a)(3)(A)] or a motion to compel answers to discovery [section (a)(3)(B)(i)-(iv)].  The parties have waived the disclosure requirements of Rule 26, so the relevant inquiry here is whether Dr. Gahan failed to respond to an interrogatory or request for production of documents, acknowledging that an evasive or incomplete response is the same as a failure to respond.

Once Sanofi's more strident allegations against Dr. Gahan are excised from its brief, Sanofi identifies only two alleged omissions that arguably fall within the ambit of Rule 37: Dr. Weinstein's omission from the PFS and Dr. Gahan's non-production of every photograph of her from five years prior to chemotherapy to the present.

**PFS submissions** - Plaintiff submitted her Plaintiff Fact Sheets and amendments and updates to her PFS submissions beginning on May 22, 2017, with her last amendment submitted through MDL Centrality on October 25, 2017.  Dr. Gahan provided blank medical authorizations for the use of Defendant prior to her initial PFS submission on May 17, 2017. The parties followed the PTO 22 process regarding Dr. Gahan's substantial completion of her PFS.  Defendants did not notify Dr. Gahan of any further deficiencies in her PFS submissions after October 25, 2017, nor did it, at any point prior to its May 22, 2018 ultimatum letter, request that Dr. Gahan further modify or amend her PFS. After Dr. Gahan produced 18,015 pages of responsive ESI in compliance with PTO 71A on

7

March 2, 2018, Defendant never conferred with counsel concerning any discrepancies between her PFS and ESI information, nor did it request Dr. Gahan to amend her PFS to include Dr. Weinstein or the score of other medical researchers Dr. Gahan contacted regarding their hair loss research. Instead, Defendant opted to issue records requests to any arguable "medical provider" identifiable from her emails or medical records, even though Dr. Gahan, as a physician, is naturally acquainted with scores of other physicians.[4] This is the process Sanofi followed with its request for Dr. Weinstein's records, notifying Dr. Gahan's counsel of its intent to request records on April 14, rather than asking Dr. Gahan to amend her PFS. (**Exhibit 1**).  These regular accommodations seemed perfectly reasonable to Dr. Gahan's counsel – now Sanofi believes it provides a basis for dismissal of Dr. Gahan's entire suit.

 In Dr. Gahan's deposition, she forthrightly answered Sanofi's questions with respect to why she did not identify Dr. Weinstein on her PFS, and her explanation is perfectly reasonable. (**Exhibit 3**, <u>Depo. of Kelly Gahan</u>, 317:13 – 320:12).  In her quest to find a remedy for her hair loss, Dr. Gahan continuously conducted extensive personal research on the latest developments in hair growth biomedicine.  Dr. Gahan testified she reached out to or corresponded with a number of researchers, none of whom she identified as her treating providers on her PFS.[5]  Whether consciously or

---

[4] Defendants indiscriminate use of medical authorizations partially explains what Sanofi strains to identify as the collusive "consistency" of Dr. Weinstein's and Dr. Lann's responses to its records requests.  During this time frame (March-April), Sanofi was requesting medical records from providers it had no reason to believe were providers to Dr. Gahan.  Sanofi sent *medical releases* to the VA Hospital and each stand-alone ER clinic where Dr. Gahan worked, resulting in her receiving multiple embarrassing phone calls from confused clinic directors, wondering how to respond to a request for medical records for an employee.  (**Exhibit 3**, 330:5-22; **Exhibit 4**, <u>No Records Returns from Gahan Employers</u>).  As a result of Sanofi's overuse of Dr. Gahan's blank releases, she developed a series of standard responses to such inquiries (i.e. Was I your patient? Do you have medical records? Then tell them you don't have records)(**Exhibit 3**, 330:11-19)

[5] Sanofi apparently has no interest in compelling the formal PFS identification of the score of other researchers Dr. Gahan corresponded with, presumably because it has her email correspondence and can ascertain their identity for itself.  Why doesn't the same standard apply to Dr. Weinstein?  After Dr. Gahan's disclosure of her emails and her extensive discussion of her relationship with Dr. Weinstein during her deposition, why is Sanofi attempting to bully Dr. Gahan into a formal amendment of her PFS for Dr. Weinstein, but not all the other researchers she consulted?

unconsciously, she put Dr. Weinstein in that basket.  This was reasonable, despite Sanofi's incredulity. Dr. Weinstein is exclusively a biopharmaceutical researcher.  (**Exhibit 5,** Affidavit of Dr. David Weinstein).  He does not practice medicine and sees no patients. Id.  He never examined Dr. Gahan, conducted any testing, or formed any prognosis or diagnosis. Id.  Dr. Weinstein and Dr. Gahan never met in person, and she never paid him for his services or samples.  Id.

Under PTO 22, a plaintiff's answers on the PFS are sworn answers to interrogatories.  In light of their relationship, Dr. Gahan's placement of Dr. Weinstein into the "colleague" rather than "physician" basket reflects her on-going personal belief and opinion as to his status.  Sanofi disagrees, but Sanofi's opinion is not controlling, because these are Dr. Gahan's answers. To the extent that Sanofi believes her response reflects dishonesty, it is perfectly entitled to try and use her non-identification of Dr. Weinstein as a basis to impeach her credibility at trial – the traditional, self-executing sanction for providing sworn answers a party believes to be untrue.  But Sanofi's disagreement with Dr. Gahan's testimony is not a basis for sanctions.  See Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("The fact that a party may disbelieve or disagree with a response to a discovery request, however, is not a recognized ground for compelling discovery").

**Photographs** - On November 9, 2017, Dr. Gahan submitted her initial proof of loss photographs, providing two photographs of herself prior to her chemotherapy, and two photographs of her scalp taken in 2016.  On January 29, 2018, Dr. Gahan uploaded an additional 20 photographs of her scalp to MDL Centrality, including recent photographs demonstrating the status of her hair growth.  On March 2, 2018, Dr. Gahan produced over 18,000 pages of emails and other ESI to Sanofi in compliance with PTO 77A.  Within this production were her emails with Dr. Weinstein, attaching more than 20 separate photographs from Dr. Gahan to Dr. Weinstein documenting the "results" she

was achieving using Dr. Weinstein's hair growth elixir.[6] Finally, on May 14, 2018, Dr. Gahan produced supplemental ESI responsive documents, including an additional 41 photographs documenting her before/after chemotherapy hair status, and 12 different videos documenting her hair loss. Collectively, these 87 photographs comprehensively demonstrated the progression of Dr. Gahan's pre-chemo hair and hair loss/regrowth over the five years since she completed chemotherapy.

Sanofi contends Dr. Gahan flouted the authority of this Court by not producing every picture in her possession that illustrates her hair status. But according to PTO 68:

> each plaintiff shall produce representative photographs that have meaning and provide insight into her hair at times relevant to her case. This is best demonstrated with dated photos taken both before and after the Taxotere/docetaxel treatment. For clarity, "before" photographs shall be dated; should be portrait-type photographs taken close in time to starting treatment; and, in any event, should be no earlier than five (5) years prior to infusion. The photographs should clearly depict the condition of the plaintiff's hair. The plaintiff should not wear wigs, scarves, hats or any other accessories which conceal or cover her hair in the photograph. Notwithstanding the clarifications herein, which are intended to reduce disputes regarding the sufficiency of photographs, the Plaintiffs' obligations as set forth and described in the PFS remain intact and are not altered by this order.

Pretrial Order No. 68, Doc No. 1085, entered November 9, 2017. PTO 68 mandates production of representative photographs. During Dr. Gahan's deposition, Sanofi's counsel stated his belief that it is entitled to all photographs of Dr. Gahan in her possession. (**Exhibit 3**, 42:25 – 43:2). Dr. Gahan is unable to find support for that proposition in any of this Court's orders, and Sanofi never communicated its belief it was entitled to all photographs prior to the deposition. Sanofi's deposition notice to Dr. Gahan only requested "representative photographs." (**Exhibit 6**). Clearly, imposing a

---

[6] Another of Sanofi's hidden misrepresentations is the implicit premise that Dr. Gahan was hiding Dr. Weinstein because she was experiencing some miracle recovery of her hair because of his product. This is untrue. Dr. Gahan testified in her deposition that she saw some improvement after using the elixir. (**Exhibit 3**, 322:21 – 325:7). But more importantly, if Dr. Gahan wanted to hide miraculous results, why would she produce her emails with Dr. Weinstein, along with all the photographs she was sending him while she was using the elixir. Independent of her production of Dr. Weinstein's emails, Dr. Gahan also produced contemporaneous photographs of herself in connection with her PTO 22 and PTO 68 obligations – which would have independently shown any miraculous hair regrowth.

discovery obligation on every plaintiff to produce every photograph of herself from five years before chemotherapy to the present would be a massive burden to plaintiffs, completely disproportional to the needs of the case.  Dr. Gahan did not fail to respond or incompletely respond to Sanofi's request for photographs by relying on PTO 68's guidance.

Here, the record demonstrates that Dr. Gahan did not fail to respond to Sanofi's discovery, not did she provide incomplete or evasive answers.  Her production of photographs complied with PTO 68, and her production was responsive to Sanofi's request for documents in its deposition notice. These are the only offenses identified by Sanofi that fall within the scope of Rule 37, and Sanofi fails to demonstrate that any actionable misconduct occurred.

## B.  Dr. Gahan Produced her Emails with Dr. Weinstein, Curing any Speculative Prejudice to Sanofi Arising Out of His Absence on her PFS

Under prevailing Fifth Circuit law, a *sine qua non* for imposition of the death penalty sanction sought by Sanofi is demonstrable and substantial prejudice to the opposing party in preparing for trial. See Coane v. Ferrara Pan Candy Co., 898 F.2d 1030, 1032 (5th Cir. 1990)("the misconduct must substantially prejudice the opposing party and a lesser sanction must be an inefficacious deterrent"); Romero v. ABC Ins. Co., 320 F.R.D. 36, 40 (W.D. La. 2017)("the misconduct must substantially prejudice the other party's preparation for trial").

Dr. Gahan is a phase II bellwether plaintiff.  Her first potential trial date is August 2019. Discovery for the Phase II cases is on-going.  Given that Dr. Gahan's best-case trial date is still 13 months away, to justify sanctions Sanofi has a *prima facie* duty to demonstrate its trial preparation was substantially prejudiced as a result of her "misconduct."  Plaintiff suggests that to meet this burden, Defendant must demonstrate either (a) that Dr. Gahan is engaged in on-going discovery misconduct that has irredeemably prejudiced its trial preparation; or (b) that Dr. Gahan's prior discovery misconduct deprived it of some chance that it cannot recover.  Sanofi's motion does neither.  The

only prejudice cited by Sanofi in support of its motion for sanctions is the expense it incurred in issuing a subpoena for Dr. Weinstein's records.

Even if Dr. Gahan's non-identification of Dr. Weinstein is actionable under Rule 37, Sanofi's trial preparation was never prejudiced because Dr. Gahan functionally identified him when she disclosed their email correspondence in her March 2, 2018 ESI production. Sanofi must admit that it knew of Dr. Weinstein's "treatment" no later than April 14, when it notified Dr. Gahan's counsel it would be requesting records from Dr. Weinstein. (**Exhibit 1**). Sanofi obtained Dr. Weinstein's "records" (i.e. the emails already produced by Dr. Gahan on March 2) and utilized those emails extensively during Dr. Gahan's deposition. Nor does Sanofi explain how its trial preparation has been prejudiced because Dr. Gahan produced over 80 representative photographs of her hair, rather than every picture taken of her over 11 years. Sanofi has not come close to demonstrating substantial prejudice to its preparation for trial.

## C. There is No Evidence of Bad-Faith or Intent to Obstruct Discovery Necessary to Justify Sanctions

Dr. Gahan's "two and two" email to Dr. Weinstein is sound and fury signifying nothing. The email is admittedly bizarre, falling squarely within the scope of the lawyer/human resources adage "never put anything in an email you wouldn't want to see plastered on a court room wall." Ultimately, however, the email is all noise and no signal. It reflects nothing more than Dr. Gahan's desire for control over the distribution of her image – a sensible precaution for anyone to take, and even more sensible when the image, if publicly posted and associated to her – might be used by "attorneys on the other side" for purposes not readily apparent to a layperson. While Sanofi largely relies on this email to establish Dr. Gahan's intent to obstruct discovery – its reliance is misplaced because it ignores the two crucial words reflecting her actual intent – "just yet." Whatever inexplicable thing Dr. Gahan does not want the opposing sides' attorneys to know about on July 28, 2017, the word "yet" acknowledges that the activity will be completed in the future (i.e. "I haven't told anyone else yet" or

"he hasn't made up his mind yet").  Here, the "yet" came to pass with Dr. Gahan's full disclosure of her emails and all the photos she sent to Dr. Weinstein as part of her ESI production on March 2, 2018.

1.  <u>Sanofi Has Stepped Far Beyond the Boundaries of Zealous Advocacy in Accusing Dr. Weinstein, Dr. Lann, Dr. Gahan and Her Attorneys of Unlawfully Obstructing its Attempts to Obtain Medical Records</u>

Sanofi explicitly accuses Dr. Gahan of "instructing Dr. Weinstein to fraudulently conceal any records" <u>Def. Mot.</u>, p. 7.  This is an explicit accusation.  Sanofi accuses Dr. Gahan's attorneys of conspiring with Dr. Gahan to further her "fraudulent" attempt to obstruct justice. <u>Def. Mot.</u>, p.5. Sanofi's factual support for these essentially criminal allegations is based on nothing more than speculative negative inferences arising solely from the "fact" of communication between Dr. Gahan and Dr. Weinstein.  Sanofi also omits or intentionally mischaracterizes significant evidence in the record contrary to its chosen narrative.

First – neither Dr. Gahan or her counsel "warned" Dr. Weinstein of Sanofi's initial April 17 request for medical records.  Dr. Weinstein reached out to Dr. Gahan by email after he received the records request from Veritext. (**Exhibit 3**, 328:19-25; **Exhibit 5**, ¶ 7; **Exhibit 8**, <u>04.20.18 email from Dr. Weinstein to Dr. Gahan</u>).  Sanofi's attorneys knew this to be true based on Dr. Weinstein's email[7] and Dr. Gahan's deposition testimony <u>before</u> it lobbed baseless accusations of conspiratorial misconduct at Dr. Gahan and her attorneys.  Sanofi's decision to imparts a nefarious purpose to perfectly honest conduct is bad enough.  Basing its accusation on speculation when it has reliable evidence to the contrary is unconscionable.

---

[7] Notably, when Sanofi took Dr. Gahan's deposition on May 16, 2018, it had not produced Dr. Weinstein's May 11 production set to Dr. Gahan's attorneys.  Sanofi attempted to perjury trap Dr. Gahan with respect to whether she communicated with Dr. Weinstein when she became aware of Sanofi's subpoena (**Exhibit 3**, 331:6-14).  Dr. Gahan honestly acknowledged she contacted Dr. Weinstein to tell him a subpoena would be coming.  <u>Id</u>.  Despite its obligation to produce Dr. Weinstein's records within 14 days of receipt, Sanofi did not actually disclose his records until June 11, after it filed its motion for sanctions.

Second – During their telephone conversation concerning the initial records request, Dr. Gahan did not counsel Dr. Weinstein to not respond to Sanofi's request. (**Exhibit 6**, ¶ 7). Dr. Weinstein and Dr. Gahan discussed whether their emails (which Sanofi largely already possessed) constituted medical records. Id. Dr. Weinstein made the decision to not provide Veritext his personal emails without a subpoena based on his New York principles. Id. In accusing Dr. Gahan of obstructing justice, Sanofi never reached out to Dr. Weinstein to ascertain why he decided not to produce his personal emails. Sanofi was content to ground its accusations of fraud against Dr. Gahan in pure speculation.

Third - Dr. Gahan has no apologies to offer for warning Dr. Weinstein that Sanofi would be serving a subpoena.[8] She provided a perfectly reasonable explanation for her decision in her deposition – that Dr. Weinstein had done her a solid favor by freely providing her samples of his hair growth elixir without FDA authorization, and she was sorry he was being drawn into a potentially uncertain legal situation as a result of that favor. (**Exhibit 3**, 332:8 – 334:11)). Dr. Gahan never counseled Dr. Weinstein to avoid service or avoid responding to the subpoena (**Exhibit 5**, ¶¶ 10-11). Sanofi offers no evidence he attempted to do so.[9]

The simple fact is that Sanofi did not need to serve a subpoena to obtain Dr. Weinstein's emails, because Dr. Gahan affirmatively produced them two months earlier in her ESI production. Sanofi conscientiously avoids bringing this fact to the Court's attention – creating the illusion that it

---

[8] Dr. Gahan's attorneys act in notifying its client that Sanofi was issuing a subpoena for Dr. Weinstein's records is not a crime. It is not even remotely shady. Yet Sanofi uses this completely baseless accusation of misconduct as a springboard requesting this Court to require Ms. Gahan to submit the entirety of her attorney-client communications to the Court for in camera review "to ensure no other misconduct has occurred." (Def. Mot., p. 18).

[9] Despite it's knowledge that Dr. Weinstein was served a subpoena at his office without incident (**Def. Ex. D**), Sanofi's motion attempts to create the illusion that Dr. Weinstein somehow attempted to evade service. See Def. Mot, p.19. ("warning a witness who a process server had to find to subpoena personally was another [last straw]." Sanofi never asked Dr. Weinstein to accept service. How else would he be served?

obtained something "new" because of its subpoena.[10]   There were no "medical records" in Dr. Weinstein's production set – only his personal emails.

Sanofi makes very serious allegations – against Dr. Gahan, Dr. Weinstein, and her attorneys (officers of this Court) – simply because Dr. Weinstein did not immediately comply with its initial records request – which he has no obligation to do.  This is no accident or mistake by Sanofi.  Sanofi knew that Dr. Weinstein was out of town but did not disclose that fact to this Court.  (**Def. Ex. D,** ¶7).  Sanofi knew that neither Dr. Gahan nor her attorneys "warned" Dr. Weinstein of the initial records request but fabricated that fact in support of its narrative.  (**Def. Ex. K**, 328: 24-25).

Sanofi misrepresents by omission again in constructing its argument that Dr. Gahan counseled Dr. Lann to avoid its records requests.  In her deposition, Dr. Gahan testified that Dr. Lann was a colleague and former dating partner, who occasionally wrote her a prescription on a "colleague to colleague" basis without writing a medical chart.[11]  (**Exhibit 3**, 341:9 – 342:5).  Sanofi found Dr. Lann's name on a pharmacy record.  (**Def. Ex. E**, p.2).  His records return affidavit states "Kelly was a coworker, not my patient, I have no records."  (**Def. Ex. E.**, p.1).  Despite this totally consistent evidence, Sanofi represents to this Court that Dr. Gahan counselled Dr. Lann to not provide medical records (rather than simply tell the truth), and even to suggest Dr. Lann is currently engaged in Dr. Gahan's purportedly fraudulent plan to prevent Sanofi from obtaining her records.  For a company

---

[10] Attached at **Exhibit 7** is a summary exhibit, comparing the Weinstein emails in Dr. Gahan's March 2 ESI production with the emails Sanofi obtained as a result of its May 5 subpoena.  The discrepancies arise from the lack of PTO 71A search terms in Dr. Gahan's production.  In other words, Dr. Weinstein produced all of his emails.  Dr. Gahan's production set only includes emails flagged by key word searches, prior to her ESI cutoff date of January 29, 2018. This table demonstrates the vast majority of Dr. Weinstein's emails were produced.

[11] Sanofi's falsehoods inhabit every fabric of its motion.  Sanofi's motion mischaracterizes Dr. Gahan's testimony as "he may have prescribed her a "Z-pack for a cold once – nothing more." Def. Mot. P.7.  Dr. Gahan implores the Court to actually read the cited testimony –(**Def. Ex. K** at 341;15-23) – the words "once" and "nothing more" are Sanofi's editorial enhancements, and completely alter the substance of Dr. Gahan's testimony openly admitting the possibility Dr. Lann may have written her prescriptions on multiple occasions. Sanofi's counsel seems to have developed the practice of subtly altering/shading/selectively omitting a deponent's testimony to a high art form.

that exists in the medical sphere, Sanofi shows a surprising willingness to accuse medical researchers and respectable physicians of fraud, perjury, and obstruction of justice on the slimmest of pretexts.

If the Court needs further evidence that Sanofi is simply grinding its axe against Dr. Gahan for improper purposes, it need look no further than Sanofi's accusation that Dr. Gahan is conspiring with the Taxotears group to fabricate answers to Sanofi's discovery. Def. Mot., pp.17-18.  While Dr. Gahan may be a member of Taxotears, she did not write or respond to any of the messages prominently highlighted by Sanofi. Sanofi has no evidence that Dr. Gahan even read these messages. Sanofi grounds its accusations in Dr. Gahan's alleged leadership role in the group.    Moreover, Sanofi intentionally misrepresents this message string as reflecting a conversation among the Taxotears group members conspiring to avoid discovery obligations in this MDL.  This email string is dated April 2016, well before this MDL existed.  (**Def. Ex. H**, at PPR005080).  The message board discussion arises out a group member's inquiry about the difficulty of answering an inartful question asked by a potential attorney for intake purposes, not Sanofi's discovery in this MDL.  Id.  Sanofi's sophisticated and detail-oriented attorneys could not have missed this fact – yet Sanofi explicitly claims these women were conspiring to avoid honestly answering Sanofi's discovery.  But after making unfounded accusations against two physicians, a biomedical researcher, and an entire law firm – Sanofi's attorneys will self-evidently not hesitate to shred a few cancer survivors.

Sanofi further suggests that, in addition to "lying"[12] and obstructing justice, Dr. Gahan also breached her professional obligations as a physician by sending Dr. Weinstein biopsy results of other

---

[12] Sanofi's accusation that Dr. Gahan committed perjury by failing to identify Dr. Weinstein in her deposition is so obviously frivolous that Dr. Gahan refuses to grace it with any dignity beyond a footnote.  The casual question posed by Sanofi's counsel was "Off the top of your head, can you think of any other treatments you've used for hair loss." (**Exhibit 3**, 307:22-24).  Dr. Gahan identified several that she could remember "off the top of her head," while acknowledging the probability of others that she wasn't remembering "off the top of her head." (**Exhibit 3**, 307:25 – 308:9).  Sanofi asked a non-directive, open-ended question about treatments – and accuses Dr. Gahan of perjury for not identifying Dr. Weinstein – who is a person.  Of course, Sanofi's baseless accusations of perjury are contradicted by the record – she testified extensively concerning her relationship with Dr. Weinstein and the efficacy of his elixir, once Sanofi asked about him.  Ms. Gahan's counsel is unaware of any circumstance where a criminal

Taxotears members without consent. <u>Def. Mot.</u>, p. 10. One would think, prior to lobbing a potentially career-altering and possibly criminal accusation, Sanofi would exhaustively search the available record to ensure no contradicting evidence existed. Sanofi clearly did not do so. The emails transmitting the biopsy results to Dr. Weinstein were found in Dr. Gahan's March 2, 2018 ESI production. That same production set includes Dr. Gahan's message to Taxotears asking whether any members would be willing to share their biopsy results with Dr. Weinstein, and <u>multiple</u> responses to that solicitation providing the biopsy results for Dr. Gahan to share. (**Exhibit 9**). Any diligent review of the production set would have revealed these emails. Sanofi's attorneys have a demonstrated track record of diligence, which permits no other conclusion than its attorneys consciously chose to accuse Dr. Gahan of this potentially criminal conduct with actual knowledge of the falsity of those accusations. This Court should not dignify or accept such behavior.

The collective evidence offered by Sanofi fails to demonstrate "bad faith" by Dr. Gahan. Sanofi's attorneys are perfectly entitled to draw negative inferences from ambiguous facts – that's fair advocacy. Here, Sanofi's negative inferences are based on either (a) outright falsehoods; or (b) facts glossed with the appearance of ambiguity only because Sanofi has failed to bring the court's attention to clear contrary evidence in the record of which it had actual knowledge. Sanofi's bad faith accusations are the only sanctionable conduct in this dispute.

**D. No Basis Exists for Sanctions Against Dr. Gahan**

1. <u>The Death Penalty Sanction is Clearly Not Justified</u>

Under Rule 37(b), dismissal with prejudice is a sanction of last resort, only to be applied in "extreme circumstances where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." <u>Lackey v. SDT Waste and Debris Services</u>, 2013 WL 5772325 at *4

---

accusation of perjury was based on such a nebulous question and answer, and the fundamentally dishonest "slant" Sanofi has imparted to this testimony is unconscionable.

(E.D. La, Oct. 23, 2013).  The imposition of this sanction without prior warning is to be avoided.  Id.  "Where, upon consideration of the full record, the district court has been extremely patient in its efforts to allow ample time to comply with its discovery orders, a Rule 37(b) dismissal may be warranted." Id (internal quotations omitted).

[D]ismissal is appropriate where a party's failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply.  Romero v. ABC Ins. Co., 320 F.R.D. 36, 40 (W.D. La. 2017). Additionally, dismissal is authorized in whole or in part when the failure to comply with the court's order results from willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply.  Id.  Conduct justifying sanctions under Rule 37 generally focuses on conduct causing "clear delay" in the proceedings.  See Lackey v. SDT Waste and Debris Services, 2013 WL 5772325 at *4 ("Rule 37(b) dismissals with prejudice are reserved for the most egregious cases, where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of several aggravating factors").

Even if Sanofi's allegations against Dr. Gahan could even remotely be accepted at face value, there has been no delay in the proceedings attributable to Dr. Gahan's alleged conduct.  Sanofi obtained Dr. Gahan's deposition on schedule, had her entire ESI production, whatever medical records it felt it needed, and her sworn answers on the PFS.  Ironically, Dr. Gahan's dedication to full disclosure of her ESI provided Sanofi with the weak ammunition it is using to seek sanctions against her.  What is Sanofi's evidence of Dr. Gahan's stubbornly willful conduct?  One email reflecting a ambiguous thought about not wanting the other side to put two and two together just yet?  Her completely reasonable mental placement of Dr. Weinstein in the basket of "colleague" rather than "medical provider?"  Dr. Gahan is perfectly entitled to personally believe "attorneys on the other side" might be duplicitous charlatans likely to misuse her public disclosure of photographs to suggest she

was not significantly damaged by her hair loss.  Even if these thoughts and mental categorization could arguably be categorized as "stubbornly willful," any such inference is far outweighed by her <u>actual conduct</u> – her full disclosure of Dr. Weinstein's emails in her ESI production and her extensive and fully honest deposition testimony about her relationship and communications with Dr. Weinstein. Clearly, if Dr. Gahan had any "stubbornly willful" intent to evade her disclosure obligations with respect to Dr. Weinstein, she would have attempted to not produce his emails.  But she did produce them.  Sanofi had the emails. Sanofi used the emails extensively, both before and during her deposition.

Sanofi contends Dr. Gahan's conduct in withholding "hundreds" of photographs reflects a "clear stubborn resistance to authority." <u>Def. Mot.</u>, p. 13.  But Sanofi itself never requested full disclosure of all photographs until its May 22 ultimatum letter. As Dr. Gahan testified in her deposition, she genuinely thought she had complied with the Court's orders by producing over 80 photographs "representative" of the state of her hair before and after chemotherapy. (**Exhibit 3**, 40:18-21, 42:25-43:4).  If Dr. Gahan's "withholding" of every photograph taken of her for five years prior to her chemotherapy to the present was wrong, the fault belongs to her attorneys, not Dr. Gahan. See <u>Lackey v. SDT Waste and Debris Services</u>, 2013 WL 5772325 at *4 (noting obstruction must be personally attributable to party to justify dismissal sanction).

### 2. <u>Sanofi's Suggested Lesser Sanctions Are Not Justified Because Dr. Gahan has not Engaged in Sanctionable Conduct and the Requested Sanctions Bear No Relation to the Misconduct Sanofi Alleges</u>

Under Fifth Circuit law, "decisions to impose sanctions [other than dismissal] under Rule 37(b) must be guided by two important considerations; the sanction must first of all be just, and it must 'specifically relate to the particular claim which was the issue of the order.'"  <u>Chilcutt v. U.S.</u>,  4 F.3d 1313, 1320-21 (5th Cir. 1993).  Put more simply, any sanction must be proportional to the offense, and bear some relation to the offense.  In lieu of dismissal, Sanofi seeks various punitive sanctions against

Dr. Gahan, none of which relate in any way to her purported offenses. Sanofi undoubtedly faced difficulty in formulating a list of proposed sanctions, since Dr. Gahan willingly produced all the information it needed to remedy any shortcomings in her PFS and it suffered no prejudice because of her alleged misconduct.

Sanofi first requests the Court to "order production of all correspondence between Dr. Gahan and any attorney or staff at Bachus & Schanker so that the Court can make a determination if any further misconduct has occurred." Even if the most nefarious motives are imparted to Dr. Gahan, no factual basis exists demonstrating her attorneys had anything to do with it. The sole allegation Sanofi makes related to Dr. Gahan's discovery "misconduct" is that Bachus & Schanker told Dr. Gahan that Sanofi planned to subpoena Dr. Weinstein's "records." Simply because Sanofi says this is a bad thing does not, in fact, make it a bad thing. By Sanofi's reasoning – every finding of "misconduct" by a party should result in full disclosure of attorney-client communications – just to make sure nothing else happened. Sanofi's request for this sanction without a strong factual basis justifying it is, in and of itself, an unwarranted, unprofessional, and unacceptable slur against officers of this court, and should be sanctioned accordingly.

Sanofi requests monetary sanctions against Dr. Gahan. Monetary sanctions are usually commensurate to the costs incurred by the opposing party in remedying the delay or prejudice caused by the misconduct. What costs has Sanofi incurred in remedying Dr. Gahan's alleged misconduct? Issuing a subpoena to Dr. Weinstein is the only cost cited by Sanofi, and Dr. Weinstein's affidavit is clear that his decision to not produce his personal emails on Sanofi's demand was based on his New York principles, not any encouragement by Dr. Gahan. Ultimately, the insignificant monetary costs incurred by Sanofi because of Dr. Gahan's alleged misconduct might be the best, most objective measure of how little prejudice Sanofi has suffered.

Sanofi requests an adverse inference instruction, without even a hint of what type of instruction would be appropriate to her "offenses." To the extent Sanofi claims that Dr. Gahan made material misrepresentations in her PFS, or lied under oath at her deposition, any consequential penalty is generally entrusted to the jury. If Dr. Gahan materially lied, the jury can penalize her without further instructions from the Court.

The Court can order Dr. Gahan to produce all relevant ESI in her possession, custody or control. Dr. Gahan produced 18,015 pages – nine banker boxes – of ESI on March 2, 2018. Dr. Gahan's counsel is still waiting for Sanofi to respond to its conferral attempt identifying the source or categories of ESI it believes she has not produced. (**Exhibit 2**). Thus far, Sanofi has only responded with further explicit accusations of perjury against Dr. Gahan. Id.

Sanofi wants Dr. Gahan's computer to search for additional relevant ESI because it is convinced Dr. Gahan is lying that the 18,051 pages she already produced is not the whole story. (**Exhibit 2**). As is clear from Sanofi's own motion, however, the problem is not Dr. Gahan's unwillingness to disclose or testify to the existence of additional ESI (i.e. the 800+ pictures she willingly testified about in her deposition but did not produce because no one thought she had to). The problem is whether Dr. Gahan is under a court order to produce those pictures. Resolving this conundrum requires further orders from the Court clarifying the tension between the PFS and PTO 68. That clarification should not take place in the context of a sanctions motion, but through full and open discussion between Liaison counsel and the Court. As **Exhibit 2** demonstrates, Sanofi's counsel won't even muster a facially plausible falsehood to support its request for an order compelling further ESI production – which is very troubling because this motion for sanctions demonstrates Sanofi is highly skilled at mustering facially plausible falsehoods. The Court cannot order Dr. Gahan to produce more ESI simply because Sanofi disbelieves her, unless Sanofi is similarly willing to surrender access to its computers.

Sanofi fails to explain why an additional seven hour "case related" discovery deposition of Dr. Gahan is needed, or in any way related to her alleged transgressions.[13]  Assuming Sanofi's request is contingent on obtaining another 800 photographs, such a request might be facially compelling if Sanofi demonstrated it had anything relevant to ask Dr. Gahan about the 87 photographs of her scalp she did produce.  But Sanofi's attorney spent 5 minutes with Dr. Gahan's photographs, and his inquiries extended no further than asking her to identify the friends she was with in pre-chemo pictures illustrating her full head of hair.  (**Exhibit 3**, 45:11 – 49:16).  Sanofi did not ask a single question utilizing Dr. Gahan's post-chemo photographs.  If production of every photograph Dr. Gahan has showing her post-chemo hair condition is so critically important, one would assume Sanofi would have used the 70+ pictures Dr. Gahan did produce when it had the chance.  It seems disproportional to subject Dr. Gahan to an additional seven hours of questioning so Sanofi can put faces to names in Dr. Gahan's social circle.

Sanofi seeks its attorney fees expended in pursuing Dr. Gahan's medical records, but fails to demonstrate it incurred any such fees beyond what it would have incurred in the normal course of exercising its rights to request medical records under PTO 22.  Even if its allegations are true, by its own admission it incurred no unnecessary attorney fees beyond the amount charged by Mr. Ratliff for affixing his (electronic) signature to the subpoena for Dr. Weinstein's emails.

**E. Sanofi's Motion for Sanctions is a Bad-Faith Continuation of its Apparent Strategy of Litigating Compliance with Discovery Obligations, Rather than the Merits of Plaintiffs' Claims**

This Court has imposed unprecedented discovery obligations on the plaintiffs in this MDL. The PFS constitutes 150 separate interrogatories – many including subparts, and requires production of 28 categories of documents, in addition to blank medical and employment authorizations the

---

[13] Magistrate Judge North recently ordered Dr. Gahan to subject herself to an additional seven hour deposition related to her role in Taxotears.  Dr. Gahan understands Sanofi's motion as seeking yet another seven hour deposition arising out of her alleged "misconduct."

Defendants are entitled to propound to virtually anyone with 14 days notice.[14]   In addition, PTO 71A establishes substantial obligations for production of ESI.  The ESI search obligations are nearly impossible for even moderately tech-savvy plaintiffs to reliably complete on their own, requiring their attorneys or clients to retain specialized technicians to conduct the searches.  According to Sanofi plaintiff's discovery obligations now also require production of every photograph of each plaintiff taken from five years prior to her first chemotherapy session to the present.  This claimed obligation apparently encompasses not only those photographs in plaintiff's custody, but apparently also requires the plaintiff to obtain photographs of the plaintiff that may be in the possession of others.  With the exception of Sanofi's claim of entitlement to every photograph (of which she produced over 80), Dr. Gahan complied with every discovery obligation imposed on her months before her May 18 deposition.  Sanofi's motion does not even pretend to claim otherwise.

Sanofi claims these substantial discovery obligations are reasonable and necessary "so Defendants can evaluate the inventory, investigate the claims, and make bellwether nominations." (**Def. Ex. B**, p.4).  But after six months of experience, Sanofi's motives should be as apparent to the Court as they are to the plaintiffs.  Sanofi is not using this discovery to investigate and litigate the merits of plaintiffs claims.  Instead, Sanofi is overwhelmingly using these discovery obligations to litigate the individual plaintiff's <u>compliance</u> with the Court's discovery orders.  What other motive explains Sanofi's relentless shoveling of cases onto the Court's show cause docket for alleged PFS deficiencies?

Sanofi's motion for sanctions is the logical next phase of the same strategy.  Sanofi does not even pretend to claim that it did not have all the information it needed when it obtained Dr. Gahan's

---

[14] Sanofi showed no respect for the 14-day notice limitation when it requested Dr. Weinstein's medical records on April 17, 2018, a mere 3 days after it provided initial notice to Dr. Gahan of its intent.  Dr. Gahan would not have objected to the request, but this fact demonstrates Sanofi has no problem playing fast and loose with this Court's discovery orders when it suits (**Exhibit 10**, 4.17.18 Veritext Request to Dr. Weinstein.

deposition on May 18.  Sanofi provides no explanation as to why the 80+ photographs Dr. Gahan produced prior to her deposition were not sufficient to test the merits of her claim.  Regardless of whether Dr. Gahan should have identified Dr. Weinstein on her DFS, Sanofi plainly acknowledges that it had every piece of relevant information related to Dr. Weinstein for weeks prior to Dr. Gahan's deposition, while failing to tell this Court it actually had the Dr. Weinstein "medical records" (emails) for months before her deposition because Dr. Gahan disclosed them with her ESI.  When Sanofi filed this motion for sanctions, it had no cause to complain with respect to the quantity or quality of the information produced by Dr. Gahan.  But complain Sanofi did – not because it was prejudiced – but because it could.

Sanofi's motion for sanctions is clearly just the opening salvo of what this Court can now expect.  Given unprecedented access to Dr. Gahan's personal communications, nearly unlimited subpoena power, and an overwhelmingly comprehensive and quite burdensome set of sworn written discovery to cross-reference, Sanofi unsurprisingly found an omission on a purely tertiary issue (i.e. the remedies she used to try to regrow the hair Sanofi stole from her).  Rather than reasonably confer with her counsel to resolve the discrepancy, Sanofi used its discoveries to try and perjury trap Dr. Gahan at her deposition – and failed.  Instead of admitting defeat due to Dr. Gahan's forthright testimony, Sanofi – through its attorneys – doubled down by filing a motion for sanctions filled with lies, half-truths, accusations without basis in fact, and sanctimonious rhetoric libeling Dr. Gahan for willful, bad-faith, possibly criminal conduct because her PFS, ESI, and sworn deposition testimony are not perfectly consistent.

Sanofi states "Dr. Gahan's actions also underscore the critical importance of the Plaintiff Fact Sheet and PTO 71A process mandated by the Court." Def. Mot., p.12.  As is now apparent, the PFS and PTO 71A process are, in fact, critically important to Sanofi – not as truth seeking devices – but to Sanofi's strategy to Monday morning quarterback every plaintiffs' compliance with the process,

rather than the merits of an individual plaintiff's claim.  Sanofi's motion for sanctions against Dr. Gahan proves the PFS and 71A compliance are weapons Sanofi intends to use to break plaintiffs for reasons completely unrelated to the merits of their claims – to victimize them a second time.

Sanofi's motion demonstrates, beyond question, that its attorneys are more than willing to water a sickly kernel of truth with a fire-hose of deception.  The question is whether this Court is going to permit Sanofi to get away with these tactics.  Kelly Gahan is a bellwether plaintiff, and this is a bellwether motion.  If this Court even remotely tolerates or excuses Sanofi's vexatious and fundamentally dishonest litigation tactics in filing this motion, why would its lawyers stop?

Rule 37(a)(5)(B) authorizes this Court to enter an award of attorney fees and expenses incurred when a party seeks an order compelling disclosure or discovery that is denied.  Sanofi requested orders compelling certain discovery, and those requests must be denied, because Dr. Gahan satisfied her discovery obligations month before Sanofi filed its motion.  At a minimum, Dr. Gahan is entitled to her attorney fees and costs incurred in responding to Sanofi's motion, because there is nothing to compel.

This Court also has inherent authority to utilize sanctions to control the course of litigation in its courtroom.  F.D.I.C. v. Maxxam, Inc., 523 F.3d 566, 591 (5th Cir. 2008).  This authority extends to bad-faith and vexatious conduct by counsel that unduly disrupts the orderly administration of justice.  Id.  Although this Court has not previously warned Sanofi with respect to its conduct, its readily apparent bad faith in filing this motion for sanctions provides ample reason for the Court to do so now.  Sanofi's motion is clearly nothing more than an *ex-post facto* attempt to obtain sanctions for minor discrepancies in her record, utilizing a single "bad thought" email as a basis for seeking dismissal of her claim.  In the absence of any demonstrable prejudice to Sanofi, the Court can reasonably infer that Sanofi's motion was filed in bad-faith – an opening salvo in its apparent strategy to bludgeon plaintiffs for their difficulties in complying with challenging discovery obligations.  The Court can

25

further infer bad-faith through Sanofi's use of unreasonable ultimatums in place of good-faith conferral. Of course, the Court need not even infer bad faith, because Sanofi has made its bad faith apparent through the liberal use of lies, half-truths, and material omissions to support its allegations against Dr. Gahan.

## **CONCLUSION**

Sanofi's motion for sanctions is nothing but Monday morning quarterbacking of Dr. Gahan's compliance with the discovery process. Rule 37 is designed to remedy on-going refusal to cooperate in discovery. Here, Sanofi's allegations against Dr. Gahan are not based on her bad faith failure to participate in discovery, but instead mere differences in opinion concerning the sufficiency of the PFS she executed, of the documents she produced, on testimony she provided at her deposition. Dr. Gahan's has participated in the discovery process fully. Sanofi may not like her answers, but that is not sanctionable.

Sanofi's Motion for Sanctions should be denied in its entirety.

Dr. Gahan should be awarded her costs and attorney fees incurred in litigating Sanofi's motion, pursuant to Rule 37(a)(5)(B).

The Court should consider issuing an order to Sanofi's counsel requiring them to show cause why additional sanctions should not be imposed, including limitations on future sanctions motions, for their vexatious and bad-faith litigation conduct.

Respectfully Submitted,

/s/ *J. Kyle Bachus*
J. Kyle Bachus
Darrin L. Schanker
BACHUS & SCHANKER, LLC
1899 Wynkoop Street
Ste. 700
Denver, CO 80202
(303)899-9800

F: (303)893-9900
Kyle.bachus@coloradolaw.net
d.schanker@coloradolaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I electronically filed the foregoing with the Clerk of the

Court using the ECF system which sent notification of such filing to all counsel of record.


/s/ Jordyn Harbin