# Exhibit 5

Gahan.Pl.Ex.5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL No. 2740
PRODUCTS LIABILITY LITIGATION

SECTION: "N" (5)

THIS DOCUMENT RELATES TO:

*Kelly Gahan*
Case No.:2:16-cv-15283

## AFFIDAVIT OF DAVID WEINSTEIN, M.D., PhD

I, Dr. David Weinstein, do state and affirm as follows under penalty of perjury:

1. I am the Co-Founder, Chief Medical Officer, and Chief Science Officer at RiverTown Therapeutics, a clinical stage biopharmaceutical company. RiverTown's current core platform is the development of topical compounds for reversal of androgenic alopecia.

2. I do not maintain a practice of medicine, nor do I see patients. My primary experience and current vocation is biopharmaceutical research and product development. RiverTown Therapeutics is not a medical office.

3. In February 2017, Dr. Kelly Gahan reached out to me to inquire whether RiverTown was sponsoring any clinical trials of its investigational RT1640 compound. Together, we initiated contact with the FDA to investigate the possibility of obtaining a compassionate use exemption for RT1640. In April 2017, I began providing samples of the RT1640 compound, free of charge, for investigational use by Dr. Gahan. Dr. Gahan did not ask me for these samples. Prior to April 2017, our communications related solely to the possibilities of clinical trials or obtaining a compassionate use exemption from the FDA.

4. I have never considered myself Dr. Gahan's physician, and I did not consider Dr. Gahan a patient. I never examined Dr. Gahan, formed any diagnosis or prognosis of her condition, or

1

Gahan.Pl.Ex.5

offered medical advice concerning her condition. To the extent I reviewed any test results for Dr. Gahan, the purpose was to further my own understanding of her condition for the purposes of my on-going research. Ours was and is a friendly, collegial relationship.

5. Dr. Gahan agreed to email me bi-weekly photographs of her hair to determine effectiveness of the compound for my research. I continued to provide samples of the RT1640 to Dr. Gahan through January 2018.

6. Sometime on the 17th or 18th of April, 2018, I received a request for medical records from Veritext Legal Solutions. Over the next couple weeks, I received numerous telephone calls from a Veritext agent urgently pressing me to produce Dr. Gahan's medical records or sign a certificate stating I had no such records. The volume of calls was certainly very bothersome, and such that I cannot state with certainty the content of any particular call. I do know that I spoke with someone from Veritext on at least two or three occasions. I have reviewed the affidavit of Aulona Hoxha, and the timing of her claimed telephone calls seems generally consistent with my recollection.

7. On April 20, 2018, I did have a telephone conversation with Dr. Gahan concerning the Veritext records request. I reached out to her. She did not call me. I expressed to Dr. Gahan my personal belief that I did not have medical records. Dr. Gahan's response was along the lines of "then tell them you don't have medical records. I wasn't a patient." We did talk about our emails. I can state with certainty that Dr. Gahan never encouraged me to lie, withhold the emails, or not respond to the records request. Based on my own principles, I determined that I was not going to produce my personal emails without a court order. Why should I?

8. At some point, I communicated with the Veritext agent that I was not Dr. Gahan's doctor, and didn't have medical records.

Gahan.Pl.Ex.5

9. Regardless, at the time of this request, I did not have the time to deeply contemplate whether emails were medical records or find and copy all my personal emails from Dr. Gahan, even if was inclined to provide them, because I was working 15-hour days preparing for a very important out of town presentation. Veritext's emergency was not my emergency. Between April 26th and April 29th, I was in Boston and had neither the time, ability or even the inclination to respond to or comply with Veritext's demands that I sign and return the "no records" certificate. That decision was mine and mine alone and was based on my own principles. My conversation with Dr. Gahan had nothing to do with it.

10. On May 3, 2018, I received a text message and email from Dr. Gahan, informing me that Sanofi would be serving me with a subpoena. We did not personally speak, and Dr. Gahan never suggested I should avoid service of the subpoena.

11. Sometime after Dr. Gahan's email, I was personally served with a subpoena at my office. I did nothing to avoid service of the subpoena. After the subpoena was served, I consulted my attorney, and complied with the subpoena to produce what I consider to be purely private emails and text messages between Dr. Gahan and myself.

Further Affiant Sayeth Not,

_____
Dr. David Weinstein, M.D., Ph.D

Sworn to an subscribed before me this 30TH day of June, 2018.

_____
Notary Public

My commission expires 09/08/18

Sandro Lukic
Notary Public, State of New York
No. 01LU6311072
Qualified in Bronx County
Commission Expires September 08, 2018

3

Gahan.Pl.Ex.5