

June 8, 2018

**VIA EMAIL SUBMISSION**
The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street, Room B419
New Orleans, LA 70130

Re: *In re: Taxotere (Docetaxel) Products Liability Litigation,* MDL No. 2740

Dear Judge North:

The following is Plaintiffs' Steering Committee's submission for consideration by the Court at the upcoming Status Conference on Wednesday, June 13, 2018.  The PSC raises three issues for resolution.

1) **Plaintiffs' Request to Extend Duration of the Deposition of Dr. Emmanuel Palatinsky Pursuant to CMO No. 9**

   For the reasons stated below the Plaintiffs request permission to extend the duration of the deposition of current Sanofi employee Dr. Emmanuel Palatinsky to include a second consecutive day.  Plaintiffs are not requesting to exceed the per-day seven (7) hour presumptive time limit. Instead, Plaintiffs simply request a second consecutive day of available time to ensure that the deposition of this important Sanofi witness can be appropriately completed as is contemplated by CMO No. 9.  To be clear, to date, as it relates to general liability depositions, the Plaintiffs have taken 13 corporate employee depositions and not once have the Plaintiffs requested a prior agreement to extend the duration of a deposition. However, Dr. Emmanuel Palatinsky's extensive involvement as Sanofi's Global Safety Officer specifically for Taxotere during the very crucial time period between 2005 and 2013 requires an extension of examination time on behalf of the more than 8,500 women currently listed as Plaintiffs in this MDL.

   For illustration purposes and by limited example, the following important events occurred on Dr. Palatinsky's watch as Global Safety Officer for Taxotere: (1) December 2006 Dr. Sedlacek presents study results showing 6.2% of Taxotere users experience irreversible hair loss; (2) December 15, 2009, Dr. Bourgeois' limited survey of oncology clinics in France confirms more than 100 patient reports of irreversible hair loss after Taxotere use; (3) July 9, 2010 the French Health Products Safety Agency (AFSSAPS) demands Sanofi disclose what the company knows regarding Taxotere use causing irreversible hair loss; (4) March 2011 AFSSAPS informs Sanofi that "Given the serious psychological consequences of this adverse event (irreversible alopecia) in, often young, patients treated mainly in an adjuvant scheme, health care professionals and patients should be informed of the possible irreversibility of alopecia;" (5) June 29, 2011, European Medicines Agency (EMA) demands Sanofi update its label to warn women in Europe about "the possibility of irreversibility of alopecia;" (6) December 15, 2011 Sanofi updates its

Date:   June 6, 2018
Page:   2 of 6

label in Europe regarding irreversible hair loss; and in 2011 after updating the EMA label, Sanofi "forgets" to implement a label update in the United States regarding irreversible hair loss.

In fact, when in 2010 the French Regulatory agency demanded from Sanofi it's information regarding Taxotere causing irreversible hair loss, Sanofi specifically designated Dr. Palatinsky to prepare its response to the Agency's request. On January 18, 2011, Dr. Palatinsky personally prepared a 45 page "Clinical Overview regarding Persistent Alopecia" for submission. Moreover, there are many additional events, documents and emails specifically regarding Taxotere, irreversible hair loss and Dr. Palatinsky that must be examined.  Sanofi safety employee Dr. Nanae Hangai has testified under oath in deposition that Dr. Palatinsky "has his fingerprints everywhere in the docetaxol (Taxotere) matter."  This testimony finds support in the 13 corporate depositions taken to date, where Dr. Palatinsky's name is cited a combined 189 times in those depositions! Sanofi Regulatory witness Dr. Gustavson testified in her deposition that Dr. Palatinsky oversees pharmacovigilance, monitors safety on an ongoing basis, and was the person responsible for advising her of any Taxotere label changes regarding safety. In addition, Dr. Palatinsky's custodial file contains 49,455 documents.

The potential need for extending the duration of some depositions is specifically contemplated by CMO 9, Section D.2 on Page 7 which provides that "The presumptive duration for any deposition may be extended or otherwise altered by agreement or by court order if requested." Unfortunately, Plaintiffs have exhausted attempts at achieving what, under the circumstances, would seem to be a reasonable agreement with Sanofi's counsel to extend the duration of Dr. Palatinsky's deposition by adding one consecutive day. Plaintiffs conferral efforts spanned more than two months (April 18, 2018; April 23, 2018; May 1, 2018; May 4, 2018; May 8, 2018; May 11, 2015; May 15, 2018; and May 16, 2018).  On May 11, 2018, when Mr. Bachus conferred via a telephone call with Mr. Ratliff about adding one consecutive day for Dr. Palatinsky's deposition, Mr. Ratliff seemed to appreciate the stated reasons for extending the duration. However rather than agree, Mr. Ratliff stated he would NOT grant the requested extension UNLESS he "got something in return for the extension."  Mr Ratliff then went on to state that he would only agree to Plaintiffs' request to extend the duration of Dr. Palatinsky's deposition IF the Plaintiffs would agree to a capped limit on the total NUMBER of ALL general liability depositions for the entirety of the MDL! Such a demand is certainly not in the spirit of CMO No. 9, and is actually contrary to previous direction from this Court.  Thus, no agreement was reached.

Without agreement and pending this Court's determination, on May 17, 2018, Mr. Ratliff finally provided just one set of two consecutive dates in July 2018, but those dates did not work for Plaintiffs. Plaintiffs then requested additional consecutive dates, but those requests have been ignored.  Therefore, pursuant to CMO No. 9, Section A, Page 5 on June 4, 2018, Plaintiffs noticed the Deposition of Dr. Emmanuel Palatinsky to begin on August 9, 2018 and the Plaintiffs now formally request that this Court enter an Order permitting Dr. Palatinsky's deposition to be extended to a second consecutive day (August 10, 2018).

Date:  June 6, 2018
Page:  3 of 6

2) **Plaintiffs' CMO No. 9 Notification to Court Regarding 30(b)(6) Deposition Set for June 19, 2018, and Support for Plaintiffs' Position that the described 30(b)(6) deposition settings should count as one deposition.**

Pursuant to CMO No. 9 at page 7 (¶ 3):  In compliance with the requirements of CMO No. 9 at page 7 (¶3), Plaintiffs have crafted and served a 30(b)(6) Notice directed to Defendant Sanofi and intended to obtain sworn testimony from Sanofi regarding reports received by Sanofi of persistent or irreversible hair loss following Taxotere use.  A copy of the 30(b)(6) Notice is attached as **Exhibit 1** to this letter for the Courts review. The 30(b)(6) Notice includes "Table 1" which lists more than 70 separate reports of persisting hair loss following Taxotere use purportedly received by Sanofi before the year 2005. "Table 1" was assembled by Plaintiffs' counsel based upon review of documents produced by Sanofi. The pre-2005 cut-off date for reports of persisting hair loss contained in "Table 1" is somewhat arbitrary. That cut-off date was selected only to effectuate an orderly and efficient 30(b)(6) deposition process as contemplated by the express language of No. 9 at page 7 (¶3).  In fact, in addition to the pre-2005 reports of persisting hair loss listed in "Table 1", Plaintiffs' counsel has identified more than several hundred additional reports of persisting hair loss received by Sanofi AFTER 2005.  Plaintiffs decided on the pre-2005 end date for reports in "Table 1" of the initial 30(b)(6) only because it is Plaintiffs hope that the reports in "Table 1" can be adequately addressed in a single day deposition setting.

Plaintiffs have shared with Sanofi's counsel that Plaintiffs intend to issue 30(b)(6) Notices with "Tables" listing reports of persisting hair loss for time periods commencing in 2005 and continuing in time to present day with the intention of selecting date ranges of reports that can be covered in additional single day deposition settings unless otherwise agreed to by the Parties. As the Court is aware, the Plaintiffs' PSC is charged with the responsibility of preparing the general liability case for thousands of individual Plaintiffs.  Some of those individual Plaintiffs were administered Taxotere in 2005 and cumulatively other Plaintiffs likely received Taxotere at various times during every year in between 2005 and 2017. In preparing the "failure to warn" liability case against Sanofi for each of the individual Plaintiffs, it will be important to establish what Sanofi knew about Taxotere causing persisting hair loss, and when Sanofi came to know it. For a Plaintiff who received Taxotere in 2006, it may be important to establish what Sanofi knew about irreversible hair loss before the 2006 treatment date. For the Plaintiff receiving Taxotere in 2015, it may be important to be able to establish what Sanofi knew about irreversible hair loss as of their 2015 treatment date.  Therefore, given the disparate treatment dates among individual Plaintiffs, the entire spectrum of dates must be examined.  Additionally, given the number of purported reports of persisting hair loss identified in the records, the depositions regarding this topic will, by necessity, need to be conducted on multiple and separate days. This is not a surprise to MDL litigants. In fact, the described method for accomplishing 30(b)(6) depositions is expressly contemplated by CMO No. 9 at page 7 (¶3).  This Section of CMO No. 9 states in pertinent part: "To effectuate an orderly and efficient 30(b)(6) deposition process, 30(b)(6) notices may be crafted on an issue-by-issue basis and depositions may be conducted on multiple and separate days and times by agreement of the parties and subject to the availability of the witness."

CMO No. 9 at page 7 (¶3) also contemplates that there may be some disagreement among the parties regarding how multiple settings might be counted against the numerical limitations for

Date:   June 6, 2018
Page:   4 of 6

depositions. Therefore, the parties are required to report their position on this issue to this Court for consideration. CMO No. 9 states in this regard: The parties may disagree on how the numerical limitations on depositions of the defendants set forth in Case Management Nos. 5 (¶ 5) and 7 (¶ 5) apply to 30(b)(6) depositions. For example, the parties disagree on whether each 30(b)(6) notice shall count as one deposition. To resolve any such disagreements, the parties shall report at each discovery status conference as to their position on how each 30(b)(6) notice is counted against the limits set forth in Case Management Nos. 5 (¶ 5) and 7 (¶ 5).

In compliance with CMO No. 9, Plaintiffs' hereby advise the Court that because of the volume of reports and the number of years involved that this deposition will require multiple sittings to address the limited issue as detailed in the attached 30(b)(6) Notice at **Exhibit 1** and as described in this letter.

   3) **Supplementation of Sanofi Documents re FDA Submission and Taxotere Label Change**

Sanofi has an obligation to supplement its responses to requests for production and disclosures of persons likely to have discoverable information. Fed.R.Civ.Proc., Rule 26(e). Sanofi is attempting to impermissibly limit its obligation and this should not be permitted. During our May monthly meet and confer, the PSC advised Sanofi that we cannot agree to limit its obligations to supplement discovery.

As previously stated to the Court, the PSC learned through the recent general liability depositions that Sanofi has been in negotiations with FDA since March 2017 regarding a label change for Taxotere and permanent or persistent, irreversible hair loss. These highly relevant discussions about this label change are ongoing, both internally and with FDA – the actual label change has not yet occurred. This information is responsive to the PSC's Requests for Production Nos. 1, 2, 3, 15, 27, 30, 33, 34, 38, 45, 46, 48, served on July 11, 2017. The PSC raised this issue of supplementing Sanofi's responses as a topic for our monthly meet and confer on May 9, 2018.

Yesterday, Sanofi advised that it agrees to supplement *only* its "non-custodial" productions related to the Taxotere label change. Such a limited production would not include documents from the custodians, e.g., internal discussions through emails, or marked-up drafts suggested internally among working groups like the Label Working Group or the Labeling Review Committee. As we advised defense counsel, Sanofi's proposal would unfairly limit the PSC's ability to understand who was involved in the company's internal discussions and question necessary witnesses about these issues. The PSC simply cannot agree to allow Sanofi to limit our discovery of this undeniably important evidence.

The PSC understands from speaking with Sanofi's counsel that we should have everything through February 2018 related to the label change originally submitted to FDA on March 29, 2017. However, it is also the PSC's understanding that Sanofi has already limited what documents it has produced – for both non-custodial and custodial productions. In fact,

Date:   June 6, 2018
Page:   5 of 6

Sanofi's counsel has proposed that the company will limit its supplementation of the ongoing label change to non-custodial productions. This is improper and seeks to unilaterally limit Sanofi's discovery obligations under the FRCP. This should not be permitted.

For example, on March 29, 2017, Sanofi proposed a label change to FDA in the form of a Prior Approval Supplement (PAS). This PAS should be part of the NDA production (which is a "non-custodial" production), however the PSC has only been able to locate the cover letter to FDA and the proposed label, but not the PAS submission itself. This is consistent with what Sanofi's counsel represented in its letter yesterday.[1] The PSC is entitled to a full supplemental production of the March 29, 2017 PAS, which will include supporting data, correspondence with FDA, and further information – not just the cover letter and the proposed revised label.

In August of 2017, Sanofi withdrew its submission, sNDA076, and agreed to resubmit the PAS in January 2018. Because Sanofi has not produced supplementations to NDA submissions since December 7, 20017, it is axiomatic that we have not received supplemental productions for the more recent FDA submissions. This would include both sNDA076 and sNDA077.

Concerning sNDA076 and sNDA077, Sanofi is well aware of the participants in and recipients of emails and documents related to these supplemental NDAs. Yesterday, Sanofi also advised that it is aware of its obligations to supplement the identification of potential custodians and it will inquire as to whether that is necessary at this time, but it is "unlikely that there would be any custodian that we have not already identified *or that already appears on documents previously produced*." (Emphasis added.) It is the PSC's position that every name on a document that has been produced is not the same as Sanofi identifying persons likely to have discoverable information, which is its obligation to supplement. Sanofi needs to supplement this disclosure; and it should do so on or before, June 20, 2018, with further timely supplementation as necessary.

The PSC needs resolution from the Court on these issues, particularly given the timing concerns related to the PSC's discovery efforts and preparation of expert reports. The PSC requests an Order requiring Sanofi supplement its production related to Sanofi's 2017-18 submissions (Requests Nos. 1, 2, 3, 15, 27, 30, 33, 34, 38, 45, 46, 48) on or before June 27, 2018). This supplementation should be from both custodial and non-custodial sources. The documents are necessary for the upcoming depositions, so we are asking that the production be made on or before June 27, 2018. Further, the PSC cannot put off taking depositions, and because this evidence continues to develop concurrently with our discovery efforts, Sanofi must act swiftly in continuing to make the necessary supplemental productions, and should be ordered

---

[1] Counsel for Sanofi advised that it produced "documents related to the … March 29, 2017 submission to FDA, including the proposed label and cover letter." This illustrates the unilateral limitations Sanofi seeks to impose on its duty to supplement prior discovery responses under the Rules.

Date:  June 6, 2018
Page:  6 of 6

to continue to supplement the production as needed, but in no case later than 7 days prior to relevant depositions.

    As noted above, because it appears we are missing significant documents related to these submissions, the PSC also requests that each supplement include a certification of completion under Rule 26(g).

                            Respectfully Submitted,

                            Karen Barth Menzies
                            On behalf of the Plaintiffs' Steering Committee