# EXHIBIT E



August 10, 2017

Harley V. Ratliff

VIA U.S. MAIL AND ELECTRONIC MAIL

2555 Grand Blvd.
Kansas City, Missouri 64108
**t** 816.474.6550
**f** 816.421.5547

Dawn M. Barrios
barrios@bkc-law.com
Barrios Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA  70139

M. Palmer Lambert
plambert@gainsben.com
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

Re:   MDL – 2740 Taxotere (Docetaxel) Products Liability Litigation:

Counsel:

I have enclosed with this letter Defendants' responses to Plaintiffs' First Set of Requests for Production.

On July 11, 2017, I received from you via email discovery requests directed at the aforementioned Defendants.  Because service of this discovery was made on counsel of record, as opposed to pursuant to the Hague Service Convention, Sanofi and Aventis Pharma S.A. object and state that such service is not effective.  In addition, as discussed more fully in Defendants' Memorandum in Support of their Motion for Protective Order, these requests cannot be responded to without violating French law.

Accordingly, Sanofi and Aventis Pharma S.A. decline to accept service of the discovery.  That notwithstanding, please find enclosed our objections and responses to your various requests.

Please let me know if you would like to discuss further.

Sincerely,

Harley Ratliff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | : | |
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : | MDL NO. 2740 |
| | : | SECTION "N" (5) |
| | : | |
| THIS DOCUMENT RELATES TO: | : | HON. KURT D. ENGELHARDT |
| ALL CASES | : | |
| | : | |
| | : | |
| | : | |

**SANOFI-AVENTIS U.S. LLC AND SANOFI US SERVICES INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO SANOFI DEFENDANTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively the "U.S. Defendants"), provide the following Objections and Responses to Plaintiffs' First Requests for Production. As discovery in this matter is ongoing, the U.S. Defendants reserve the right to amend, supplement, modify, or change their Responses.[1]

**PRELIMINARY STATEMENT**

This discovery arises from cases consolidated for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407, before Honorable Judge Kurt D. Engelhardt in the United States District Court for the Eastern District of Louisiana, *In re Taxotere (Docetaxel) Products Liability Litigation*. The product liability action involves an FDA-approved prescription chemotherapy medication known as "Taxotere®" and various other FDA-approved "docetaxel" products (collectively "docetaxel"). Plaintiffs allege that they were prescribed docetaxel by their

---

[1] Any response the U.S. Defendants make to such discovery does not waive the U.S. Defendants' rights to assert additional objections as necessary.

8312683 v5

physicians to treat breast cancer and that they subsequently sustained persistent hair loss.[2] Plaintiffs do not allege that docetaxel was ineffective in their treatment of breast cancer. Nor do they claim that Defendants failed to disclose the risk of hair loss, which is a well-known and common side effect of docetaxel. As Plaintiffs acknowledge, Defendants have included multiple warnings about alopecia in the docetaxel labeling at all pertinent times. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 25, 2017), ECF No. 689 at ¶¶ 46, 60, 72, 83, 93, 105, 128. Plaintiffs allege only that they were not told that hair loss might persist.

　　***Stipulated ESI Protocol.*** In these proceedings, Plaintiffs and Defendants have agreed to an Electronically Stored Information Protocol ("ESI Protocol"), which dictates various aspects of the scope, format, and manner of production. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 6, 2017), ECF No. 611. To the extent that Plaintiffs' Requests are inconsistent with or beyond the scope of the ESI Protocol, the U.S. Defendants object and defer to the ESI Protocol. Production of documents will occur on a rolling basis. Further, the U.S. Defendants and Plaintiffs have agreed to meet and confer "to reach an agreement on the appropriate scope and limitations of both preservation and production of ESI." *See* ESI Protocol at § V, ¶ A. Therefore, any statement herein that the U.S. Defendants will produce non-privileged documents responsive to a Request is not an admission that any such material exists or that the U.S. Defendants will produce any or all potentially responsive documents, without limitation. Instead, such statement indicates that, pursuant to the meet and confer process referenced above, the U.S. Defendants will produce custodial documents culled by search terms and date restrictions, and reserving the right to produce them as they are kept in the ordinary course of business, that will potentially include responsive documents.

---

[2] Plaintiffs define "permanent" alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." *See* First Amended Master Long Form Complaint and Demand for Jury Trial, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL No. 2740 (E.D. La. July 25, 2017), ECF No. 689 at ¶ 180.

***Stipulated Protective Order.***   Additionally, Plaintiffs and Defendants have agreed to a Protective Order.   *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 6, 2017), ECF No. 612. To the extent that this discovery seeks information that contains trade secrets; other proprietary and/or confidential research, development, or commercial information; or private personal data or health information, the U.S. Defendants have not objected to each and every Request but reserves their rights, and the documents referenced below will be produced subject to the Protective Order.

***General Discovery Protocol.***   Plaintiffs and Defendants are in the process of finalizing a General Discovery Protocol.  The draft version of the General Discovery Protocol states that "No Party may conduct any discovery of Defendants not expressly authorized by this Order absent further Order of this Court or express agreement of the Parties."  This protocol would allow for a limited number of requests for production, far-exceeded by the 164, multi-subpart requests set forth here.   The General Discovery Protocol also seeks to limit discovery based on proportionality and nexus to trial scheduling orders, which are contemplated to focus on only ten to forty cases.  It further limits the amount of discovery that may be served upon the Defendants and outlines the deadlines necessary to conclude general, company discovery *before* expert discovery.

The General Discovery Protocol also limits discovery to the time period relevant to the cases' facts: "General document review and production shall be restricted by the treatment dates of the Plaintiffs identified in, or subject to, trial scheduling orders.  Apart from labeling, clinical trials, and regulatory files, document review and production may be limited to documents from the period beginning 48 months before the earliest Taxotere or Docetaxel treatment date implicated by the applicable trial scheduling order, up to and including the date of the latest

8312683 v5

Taxotere or Docetaxel treatment for the plaintiff identified in, or subject to, the applicable trial scheduling order.   Document review and production may be supplemented if and when subsequent trial scheduling orders implicate earlier or later treatment dates."

Similarly, the General Discovery Protocol proceeds in phases of categories including science, regulatory, and marketing materials.   Likewise, marketing materials, for example, are limited to "marketing connected to the prescribing physicians or sales representatives identified in the cases in the applicable trial scheduling order, if any.   No general marketing discovery, without a connection to a trial scheduling order case, is permitted."   The U.S. Defendants note that Plaintiffs' Requests, in contrast, fail to prioritize discovery by issues probative of liability in a manner consistent with the adept resolution of this MDL.

More importantly, though, the General Discovery Protocol has not been entered by the Court, making these Requests premature and subject to subsequent interpretation.   To the extent that Plaintiffs' Requests are inconsistent with or beyond the scope of the pending General Discovery Protocol, the U.S. Defendants object and defer to the finalized General Discovery Protocol to be entered into by the Court.

The U.S. Defendants object and respond as follows:

## <u>GENERAL OBJECTIONS AND RESERVATION OF RIGHTS</u>

The U.S. Defendants hereby assert the following General Objections and Reservation of Rights ("General Objections"), which are incorporated in and made a part of each response as set forth below:

1.      The U.S. Defendants object that Plaintiffs' 164 document Requests represent a *prima facie* violation of Rule 26(g)(1)(B), which mandates a proportionality-like standard for *all* parties requesting and producing discovery to certify that all discovery disclosures, requests,

responses, and objections do not "needlessly increase the cost of litigation" and that requests are "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Furthermore, under Rule 26(b)(1), discovery requests must be both "<u>relevant</u> to any party's claim or defense" and "<u>proportional</u> to the needs of the case." FED. R. CIV. P. 26(b)(1) (emphasis added).

2.      The U.S. Defendants object based on relevance that the requested information should be limited to conduct occurring within the United States, which is where Plaintiffs allege they were diagnosed, treated, and allegedly injured with Taxotere®.

3.      The U.S. Defendants object to each Request to the extent it seeks information that is inconsistent with or enlarges the scope of permissible discovery under applicable law.

4.      The U.S. Defendants object to each Request to the extent it is overbroad, burdensome, and oppressive, including but not limited to the extent it seeks "any and all" information that refers, relates to, or concerns a particular Request. Plaintiffs' request for "any and all" information on an issue is unduly burdensome, and the U.S. Defendants' discovery obligations are limited by principles of reasonableness and proportionality.

5.      The U.S. Defendants object to each Request to the extent it calls for identification of documents or information subject to or protected by the attorney-client privilege, the work product doctrine, any other applicable privileges or doctrines limiting discovery, and any applicable law or regulations. The U.S. Defendants do not intend to waive, by these responses or by production of documents, any privileges or claims of confidentiality associated with information or documents that are produced in this action.

6.      The U.S. Defendants object to each Request to the extent it seeks documents or

information that is a matter of public record and/or is as easily accessible to Plaintiffs as it is to the U.S. Defendants.

7.      The U.S. Defendants object to each Request to the extent it seeks information or documents not within the permissible scope of discovery under the Federal Rules of Civil Procedure because it is (1) not relevant to the claims and defense of a party and/or (2) not proportional to the needs of the case.

8.      The U.S. Defendants object to each Request to the extent it is not limited in time or scope, specifically, to the period of time subsequent to the date of manufacture and sale of the product allegedly at issue, and subsequent to the date Plaintiffs allege that they were injured.

9.      Much of the information sought herein is highly confidential and proprietary and consists of valuable commercial information, trade secrets, or business confidential materials, the disclosure of which would be highly prejudicial to the U.S. Defendants and the value of which cannot be calculated as economic damages.  The U.S. Defendants object to each Request to the extent it seeks information or documents that are protected as trade secrets by applicable law or include proprietary or confidential commercial information.  To the extent such information or documents are discoverable, production will be made pursuant to the protective order of confidentiality applicable to this action.

10.      The U.S. Defendants object to each Request to the extent that it calls for production of documents disclosure of which might violate the Health Insurance Portability and Accountability Act ("HIPAA"), as well as other federal statutes and FDA regulations.

11.      The U.S. Defendants object to each Request to the extent that it seeks documents pertaining to products other than Taxotere® that are (1) not relevant to the claims and defense of a party and/or (2) not proportional to the needs of the case.  The U.S. Defendants also object to

8312683 v5

each Request to the extent that it seeks information regarding products that the U.S. Defendants did not manufacture.

12.     The U.S. Defendants do not waive or intend to waive, by reason of their responses to Plaintiffs' Requests, their right to:

1.     revise, amend or supplement these responses;

2.     object on any ground to the use of information or documents produced in response to Requests for any purpose, in whole or in part, in this or any other proceeding, action, or matter;

3.     object on any grounds, at any time, to other discovery procedures or Requests; and

4.     object on the grounds of admissibility of any information or documents produced in response to following Requests.

## OBJECTIONS TO DEFINITIONS

1.     The U.S. Defendants object to any "definition" that attempts to expand or alter their obligations in responding to discovery.

2.     The U.S. Defendants object to the definitions of the terms "You" and "Defendant" as referring to "Sanofi-Aventis U.S. LLC, Sanofi S.A., Sanofi U.S. Services Inc., and/or Aventis Pharma S.A. as well as all affiliates, partners, directors, officers, employees, servants, agents, third-party contractors working on your behalf."  The U.S. Defendants also object that these terms also include "all predecessor business entities . . . as well as the predecessor's affiliates, partners, directors, officers, employees, servants, agents, and third-party contractors acting on the predecessor's behalf."  Accordingly, where the terms, "You" or "Defendant" are used in these Requests, the U.S. Defendants will limit their responses to the party-Defendants, entities Sanofi, Aventis Pharma S.A., sanofi-aventis U.S. LLC, and Sanofi US Services Inc. consistent with the applicable law.  In addition, the U.S. Defendants object to this definition to the extent that it would call for U.S. Defendants to provide information not within the knowledge of the U.S.

7

Defendants.  The U.S. Defendants object that the definition is unduly burdensome in purporting to require the U.S. Defendants to inquire of all of the individuals encompassed in the definition in answering these Requests.  In addition, the U.S. Defendants object to this definition to the extent that it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

3.      The U.S. Defendants object to the definition of the term "Taxotere" which "refers to, as broadly as possible, docetaxel, a chemotherapy agent used in the treatment of cancer" to the extent that it is unclear what "as broadly as possible" means and to the extent that Plaintiffs intend to include any "chemotherapy agent used in the treatment of cancer" as opposed to Taxotere® for the treatment of breast cancer specifically.  The U.S. Defendants object that products other than Taxotere® are (1) not relevant to the claims and defense of a party and/or (2) not proportional to the needs of the case.  The U.S. Defendants also object to this definition to the extent that it seeks information regarding products that the U.S. Defendants did not manufacture.

4.      The U.S. Defendants object to the definition of the term "Taxane" which "refers to any chemotherapy agent that can be included in the class of drugs known and referred to as taxanes, including, but not limited to, Taxol (paclitaxel) and docetaxel" as being overly broad to the extent it leaves Defendants to guess what other taxanes Plaintiffs intend to include in their Requests ("that can be included").  Defendants also object to the definition's inclusion of products other than Taxotere®.  Products other than Taxotere® are (1) not relevant to the claims and defense of a party and/or (2) not proportional to the needs of the case.  The U.S. Defendants also object to this definition to the extent that it seeks information regarding products that the

8

U.S. Defendants did not manufacture.

5.      The U.S. Defendants object to the definition of the term "Hair Loss" which "refers to alopecia, any and all types of loss of hair, whether temporary or permanent, on any part of the body, and any terms used to identify, describe or quantify the diminution, impairment or loss of hair." This definition is vague and ambiguous, and seemingly involves alopecia attributable to other causes besides chemotherapy.  It also explicitly includes temporary hair loss (hair loss is a common, well-known side effect of chemotherapy treatment) and labeled terms not cognizable as a legal injury.  It is also far from clear what other "terms used to identify, describe or quantify the diminution, impairment or loss of hair" Plaintiffs intend to include in their Requests.  Plaintiffs here also do not define what they mean by the term "permanent," especially when, elsewhere, the seemingly take the position that one never knows the nature, extent, and transience of hair loss.   Plaintiffs must be obligated to define their alleged injury more concretely.

6.      The U.S. Defendants object to the definition of the term "Study" which "refers to any research, analysis or examination, inspection or investigation (including clinical investigations), or other activity by which data or information is acquired for the purpose of analysis or understanding," and "includes studies at all stages, including, but not limited to, proposed, ongoing, completed or withdrawn studies regardless of whether the studies took place within or outside the United States," and "includes information and data acquired from studies regardless of the stated or original purpose of the studies," and finally "includes, but is not limited to, all clinical trials, observational studies, meta analyses, survey studies, case reports, market research, or other epidemiological studies by whatever name known" as unduly burdensome and overbroad.  This definition fails to reasonably identify the documents sought by

9

type or category, lacks relevant geographic or temporal limitation, and explicitly includes studies (or "examinations" or "inspections") never actually completed.  The U.S. Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

7.     The U.S. Defendants object to the definition of the term "FDA" which "refers to the United States Department of Health & Human Services, United States Food & Drug Administration, any Committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof," to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. The term "FDA," for example, would never reasonably implicate a purported "agent" of a subcommittee or any member of FDA's outside advisory committees, nor does such definition allow the U.S. Defendants to identify responsive documents.

8.     The U.S. Defendants object to the definition of the term "Foreign Regulatory Agency" which "refers to any organization, including regulatory bodies or authorities, in any country (or other jurisdictional entity such as the European Union) other than the United States that regulates prescription drugs such as TAXOTERE" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. The U.S. Defendants further object that conduct occurring outside the United States, which is *not* where Plaintiffs' alleged they were diagnosed, treated, and allegedly injured with Taxotere® is not relevant to this litigation.

9.     The U.S. Defendants object to the definition of the term "Document" which is defined as "every original, draft, and duplicate of any designated documents or electronically

stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form as those terms are defined and used in Rule 34 of the Federal Rules of Civil Procedure" as being overly broad to the extent that the definition is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules, and to the extent that the definitions would require U.S. Defendants to extract or recover data that is inaccessible or would require extraordinary costs and efforts to retrieve.  The U.S. Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  In addition, the U.S. Defendants reserve the right to produce documents as they are kept in the usual course of business, notwithstanding these definitions.  Moreover, documents will be produced according to the ESI Protocol, which dictates various aspects of the scope, format, and manner of production.

10.     The U.S. Defendants object to the definition of the term "Communication" which is defined as "any oral, written, spoken, or electronic transmission of information including meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, presentations or any other exchange of information within YOUR organization, or between YOU and any other PERSON, representative, or entity" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law.  The U.S. Defendants also object to the definition to the extent it would require the U.S. Defendants to extract or recover electronic or magnetic data that is

8312683 v5

inaccessible or would require extraordinary costs and efforts to retrieve.  The U.S. Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  Moreover, documents will be produced according to the ESI Protocol, which dictates various aspects of the scope, format, and manner of production.

11.     The U.S. Defendants object to the definition of the terms "Relating to," "Relate to," "Relating, "Referring to," "Refer to," "Regarding," "Concerning," or "Concern" which are defined as "evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, referring to in any way or manner, or in any way logically or factually connecting with the matter described in the request or paragraph of these demands, including DOCUMENTS attached to or used in the preparation of or concerning the preparation of the DOCUMENTS" to the extent they seek discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law, fail to reasonably identify the documents sought by type and category, and seek information tangentially implicating subjects without regard to relevance and proportionality.

12.     The U.S. Defendants object to the definition of the terms "Identify" or "Identity" which are defined as "the person's or entity's full name, present or last known address, telephone numbers, and email addresses. When referring to a natural person, the present or last known place of employment should also be provided. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person" as being overly broad to the extent that the definition is inconsistent with or enlarges the scope of permissible discovery under the applicable

12

law and/or applicable local rules, and to the extent that the definition would require the U.S. Defendants to extract or recover data that is inaccessible or would require extraordinary costs and efforts to retrieve. The U.S. Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

13.     The U.S. Defendants object to the definition of the term "Healthcare Provider(s)" to mean "any physician or other individual healthcare provider, health care facility, clinic, hospital or hospital pharmacy" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. Moreover, any definition of healthcare provider should be limited to a particular Plaintiffs' specific treating physician instead of encompassing any healthcare provider generally.

14.     The U.S. Defendants object to the definition of the term "Person" which is defined as "any natural person, as well as any business, corporate, legal, or governmental entity or association," to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. In addition, the U.S. Defendants object to this definition to the extent that it would call for the U.S. Defendants to provide information not within the knowledge of the U.S. Defendants. The U.S. Defendants object that the definition is unduly burdensome in purporting to require the U.S. Defendants to inquire of all encompassed in the definitions in answering these Requests. In addition, the U.S. Defendants object to this definition to the extent that it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

8312683 v5

15.     The U.S. Defendants object to the use of the singular including the plural and vice versa as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

16.     The U.S. Defendants object to the definition of the terms "and" and "or" as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

17.     The U.S. Defendants object to the "Relevant Time Period" being defined as "January 1, 1989 to the present," as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.  The defined "Relevant Time Period" extends nearly 30 years and is unreasonable.  Apart from labeling, clinical trials, and regulatory files, document review and production should be limited to documents from the period beginning 48 months before the earliest Taxotere® or Docetaxel treatment date implicated by the applicable trial scheduling order, up to and including the date of the latest Taxotere® or Docetaxel treatment for the Plaintiff identified in, or subject to, the applicable trial scheduling order.  Document review and production could be supplemented if and when subsequent trial scheduling orders implicate earlier or later treatment dates.

## OBJECTIONS TO INSTRUCTIONS

1.     The U.S. Defendants object to Instruction No. 1 to the extent that it purports to require them to inquire of its "employees, representatives, agents, and attorneys."  The instruction renders these Requests overly broad and unduly burdensome.  The U.S. Defendants

14

also object to the extent that this instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  As indicated above, where the terms, "You" and "Defendant," are used in these Requests, the U.S. Defendants will limit their responses to the party-Defendants consistent with the applicable law.

2.      The U.S. Defendants object to Instruction No. 2, which purports to require explanation of any inabilities to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

3.      The U.S. Defendants object to Instruction No. 3, which purports to require a continuing obligation to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

4.      The U.S. Defendants object to Instruction No. 4, which purports to require production of documents outside the so-called "Relevant Time Period," as set forth in the U.S. Defendants' objection to the definition of the same term.

5.      The U.S. Defendants object to Instruction No. 5 to the extent that it purports to require them to identify documents withheld on the grounds of privilege.  The instruction renders these Requests overly broad and unduly burdensome.  The U.S. Defendants also object to the extent that this instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  To the extent that Plaintiffs' Instruction is inconsistent with or beyond the scope of the ESI Protocol, the U.S. Defendants object and defer to the ESI

Protocol.

6.      The U.S. Defendants object to Instruction No. 6 which purports to require explanation of any inability to produce a document in full and "the reasons for YOUR inability to produce the remainder and the approximate date when YOU expect to produce such DOCUMENTS," to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.  To the extent that Plaintiffs' Instruction is inconsistent with or beyond the scope of the ESI Protocol, Defendants object and defer to the ESI Protocol.

7.      The U.S. Defendants object to Instruction No. 7 as duplicative of the ESI Protocol and Protective Order, and, therefore, unnecessary.

8.      The U.S. Defendants object to Instruction No. 8 which purports to dictate the interpretation of headings, when there are none.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**    **INDs, NDAs, and SNDAs for TAXOTERE.**

**RESPONSE:** Subject to and without waiving General Objection Nos. 5, 7, 8, and 9, the U.S. Defendants will produce the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.

**REQUEST NO. 2:**    **YOUR FDA regulatory file RELATING TO TAXOTERE.**

**RESPONSE:**  In addition to General Objection Nos. 5, 7, 8, and 9, the U.S. Defendants object that the term "regulatory file" is vague, ambiguous, and undefined as used in this Request.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the Investigational New Drug Application for RP 56976 Injection, the Original New Drug

16

Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.  The U.S. Defendants are available to meet and confer with Plaintiffs regarding what reasonably might be considered relevant "regulatory files," if any, that are kept apart from these core documents.

**REQUEST NO. 3:**   All   DOCUMENTS   that   evidence   COMMUNICATIONS   between YOU and FDA RELATING TO TAXOTERE.  Include in YOUR production, and without limitation, the following:

a.   YOUR COMMUNICATION log with FDA;

b.   All   DOCUMENTS   evidencing   COMMUNICATIONS   (whether   formal   or informal) from FDA to YOU concerning TAXOTERE, whether from the Center for   Drug   Evaluation   and   Research   (CDER),   Office   of   Prescription   Drug Promotion   (OPDP),   formerly   known   as   the   Division   of   Drug   Marketing   and Communication (DDMAC), an advisory committee, or otherwise, concerning the review   of   any   NDA,   SNDA,   marketing   materials   (proposed,   approved,   or published), data or other materials RELATING TO TAXOTERE.

c.   YOUR response to any request for information, data or response, RELATING TO COMMUNICATIONS IDENTIFIED in sub-paragraph (b) above;

d.   All   DOCUMENTS   evidencing   a   complete   distribution   list   of   all   PERSONS copied on any COMMUNICATIONS identified in sub-paragraph (b) as well as PERSONS consulted to contribute to any response pursuant to sub-paragraph (c) above.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objection Nos. 4, 5, 7, 8, and 9.  The U.S. Defendants further object to this Request to the extent it exceeds the ESI

8312683 v5

Protocol and Protective Order, and the General Discovery Protocol to entered into by the parties. The U.S. Defendants also object because this Request seeks information related to Taxotere® that is irrelevant to the alleged injury – permanent or persistent hair loss.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®. The U.S. Defendants will endeavor to produce additional relevant, non-privileged documents responsive to this Request through an agreed upon custodian list and search terms.

**REQUEST NO. 4:** **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, the STUDY protocols, including but not limited to informed consent forms, RELATING TO TAXOTERE, regardless of whether the STUDY was ever completed or whether human patients were ever enrolled.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objection Nos. 4, 5, 6, 7, 8, and 9. The U.S. Defendants further object because this Request seeks information that is irrelevant to the alleged injury – permanent or persistent hair loss – and studies in diseases other than breast cancer. The U.S. Defendants also object to the inclusion of preclinical or animal studies that do not pertain to Plaintiffs' claims, which turn on labeling. Furthermore, proposed preclinical and clinical studies, where subjects were never enrolled, or that were not completed, are irrelevant. Finally, the U.S. Defendants object to the extent this Requests seeks information beyond their possession, custody, or control.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the Investigational New Drug Application for RP 56976 Injection, the Original New Drug

18

Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®, which contain studies relevant to the approval and marketing of Taxotere® in the United States.  The U.S. Defendants will also produce documents for clinical studies completed on Taxotere® and breast cancer, including the following Sanofi-sponsored, pivotal, phase III docetaxel clinical trials in breast cancer:

Jones, S. E., et al. "Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer." *Journal of Clinical Oncology* 23.24 (2005): 5542-5551.

Mackey, John R., et al. "Adjuvant docetaxel, doxorubicin, and cyclophosphamide in node-positive breast cancer: 10-year follow-up of the phase 3 randomised BCIRG 001 trial." *The Lancet Oncology* 14.1 (2013): 72-80.

Martín, Miguel, et al. "Adjuvant docetaxel for high-risk, node-negative breast cancer." *New England Journal of Medicine* 363.23 (2010): 2200-2210.

Martin, Miguel, et al. "Adjuvant docetaxel for node-positive breast cancer." *New England Journal of Medicine* 352.22 (2005): 2302-2313.

Martín, Miguel, et al. "Epirubicin plus cyclophosphamide followed by docetaxel versus epirubicin plus docetaxel followed by capecitabine as adjuvant therapy for node-positive early breast cancer: results from the GEICAM/2003-10 Study." *Journal of Clinical Oncology* 33.32 (2015): 3788-3795.

Martin, M., et al. "Toxicity and health-related quality of life in breast cancer patients receiving adjuvant docetaxel, doxorubicin, cyclophosphamide (TAC) or 5-fluorouracil, doxorubicin and cyclophosphamide (FAC): impact of adding primary prophylactic granulocyte-colony stimulating factor to the TAC regimen." *Annals of oncology* 17.8 (2006): 1205-1212.

Nabholtz, J-M., et al. "Prospective randomized trial of docetaxel versus mitomycin plus vinblastine in patients with metastatic breast cancer progressing despite previous anthracycline-containing chemotherapy." *Journal of Clinical Oncology* 17.5 (1999): 1413-1413.

Roszkowski, Kazimierz, et al. "A multicenter, randomized, phase III study of docetaxel plus best supportive care versus best supportive care in chemotherapy-naive patients with metastatic or non-resectable localized non-small cell lung cancer (NSCLC)." *Lung cancer* 27.3 (2000): 145-157.

**REQUEST NO. 5:**    **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all applications for approval to an Institutional Review Board (IRB)**

RELATING TO TAXOTERE.

**RESPONSE:**    The U.S. Defendants incorporate by reference their response to Request No. 4, which, upon information and belief, will include applications for approval to Institutional Review Boards.

**REQUEST NO. 6:**    **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all responses by the Institutional Review Board (IRB) to the STUDY applications made by YOU RELATING TO TAXOTERE.**

**RESPONSE:**    The U.S. Defendants incorporate by reference their response to Request No. 4, which, upon information and belief, will include responses by the Institutional Review Board to the study applications made by the U.S. Defendants on Taxotere®.

**REQUEST NO. 7:**    **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all STUDY reports and supporting data sets RELATING TO TAXOTERE.**

**RESPONSE:**    The U.S. Defendants incorporate by reference their response to Request No. 4, which, upon information and belief, will include study reports and supporting data on Taxotere®.

**REQUEST NO. 8:**    **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, the clinical investigator manual or brochure or similar DOCUMENT that provides instruction to study centers regarding the collection of clinical and non-clinical data.**

**RESPONSE:**    The U.S. Defendants incorporate by reference their response to Request No. 4, which, upon information and belief, will include instructions to study centers regarding the collection of clinical and non-clinical data on Taxotere®.

**REQUEST NO. 9:**    **For all preclinical and clinical STUDIES proposed, conducted, funded**

or supported by YOU, all investigator reports RELATING TO TAXOTERE.

**RESPONSE:**   The U.S. Defendants incorporate by reference their response to Request No. 4, which, upon information and belief, will include investigator reports.

**REQUEST NO. 10:**  **All DOCUMENTS RELATING TO investigator initiated research applications or requests RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**   The U.S. Defendants incorporate by reference General Objection Nos. 4, 5, 7, 8 and 9.  The U.S. Defendants object that the term "investigator initiated research applications or requests" is vague, ambiguous, and undefined as used in this Request. The U.S. Defendants further object to the extent this Request seeks information beyond their possession, custody, or control.  The U.S. Defendants are available to meet and confer to understand what documents Plaintiffs seek to identify with this Request.  Multiple other requests by Plaintiffs seemingly implicate these same objections and overlap such that the U.S. Defendants' responses may implicate potentially responsive information and documents, which the U.S. Defendants therefore also incorporate by reference.  *See, e.g.*, Request Nos. 54, 58, 59, 60, and 65.

**REQUEST NO. 11:**  **All DOCUMENTS RELATING TO changes to the formulation of taxol.**

**RESPONSE:**    The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, 8, 9, and 11.  Taxol and Taxotere® are different drugs with different indications that involve different patient-specific prescribing considerations and different administration.   Plaintiffs allege that they experienced persistent or permanent hair loss from Taxotere® and that they were were not warned about this alleged side effect.  Plaintiffs do not allege that Taxotere® should have been designed differently or that they would have survived breast cancer or suffered fewer or different side effects if they were treated with Taxol instead of Taxotere®.   Thus, any changes

21

to the formulation of Taxol are not relevant to the claims in this litigation.

**REQUEST NO. 12:** **All DOCUMENTS RELATING TO changes to the formulation of TAXOTERE.**

**RESPONSE:**     The U.S. Defendants incorporate by reference their objections to Request No. 11.  Further responding, the U.S. Defendants refer Plaintiffs to the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®, which identify changes in the chemistry, manufacturing and controls specifications related to Taxotere®, including formulation changes.

**REQUEST NO. 13:** **All DOCUMENTS RELATING TO the solvent(s) utilized in TAXOTERE solutions.**

**RESPONSE:**     The U.S. Defendants incorporate by reference their objections and response to Request No. 12.  If anything, the solvent used in Taxotere® is but one example of the reason Plaintiffs' theory is incorrect that Taxol and Taxotere® are interchangeable.  Still, the documents referenced in Request No. 12 also include information on solvents.

**REQUEST NO. 14:** **All DOCUMENTS IDENTIFYING clinical research companies, organizations, and/or individuals YOU used TO STUDY TAXOTERE.**

**RESPONSE:**     The U.S. Defendants incorporate by reference their response to Request No. 4. The documents referenced therein include responsive information about the individuals and entities involved in studying Taxotere® with the U.S. Defendants.

**REQUEST NO. 15:** **All DOCUMENTS RELATING TO FDA's rejection and/or request for supplementation or further study of any NDA or SNDA RELATING TO TAXOTERE.**

**RESPONSE:**     The U.S. Defendants incorporate by reference their objections and response to

8312683 v5

Request No. 1.  The U.S. Defendants further object that this Request should be limited to side effects – not efficacy – because Plaintiffs do not allege that Taxotere® was ineffective in their treatment of breast cancer.  As set forth in Request No. 1, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg and the Supplemental New Drug Applications for Taxotere® include dialogue with FDA about whether further study was warranted and the satisfaction of various post-marketing obligations through an agreed upon custodian list and search terms.

**REQUEST NO. 16:** **All Periodic Safety Update Reports (PSURs) RELATING TO TAXOTERE.**

**RESPONSE:**   Subject to and without waiving General Objections Nos. 4, 7, and 8, and consistent with the ESI Protocol, Protective Order, and the General Discovery Protocol to be entered into by the Court, the U.S. Defendants will produce PSURs on Taxotere®.

**REQUEST NO. 17:**  **All Periodic adverse drug experience reports (PADERs) RELATING TO TAXOTERE.**

**RESPONSE:**   Subject to and without waiving General Objections Nos. 4, 7, and 8, and consistent with the ESI Protocol, Protective Order, and the General Discovery Protocol to be entered into by the Court, the U.S. Defendants will produce PADERs on Taxotere®.

**REQUEST NO. 18:**  **All Periodic Benefit-Risk Evaluation Reports (PBRERs) RELATING TO TAXOTERE.**

**RESPONSE:**   Subject to and without waiving General Objections Nos. 4, 7, and 8, and consistent with the ESI Protocol, Protective Order, and the General Discovery Protocol to be entered into by the Court, the U.S. Defendants will produce PBRERs on Taxotere®.

**REQUEST NO. 19:**  **All internal COMMUNICATIONS RELATING TO PSUR, PADER,**

8312683 v5

and PBRER submissions for TAXOTERE.

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Requests No. 16-18.

Subject to and without waiving their objections, the U.S. Defendants will endeavor to produce the relevant, non-privileged documents responsive to this Request through an agreed upon custodian list and search terms.

**REQUEST NO. 20: All DOCUMENTS submitted by YOU to National Cancer Institute (NCI) in support of YOUR application for a Cooperative Research and Development Application (CRADA) RELATING TO the technology transfer of the taxol molecule.**

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 7, 8 and 9, the U.S. Defendants state that documents related to Rhône-Poulenc's application for the National Cancer Institute's Cooperative Research and Development Application for the taxol molecule are publically available from the Library and Information Archives of the National Cancer Institute's National Products Branch.

**REQUEST NO. 21: All DOCUMENTS RELATING TO any comparison of the efficacy between TAXOTERE and other chemotherapy medicines, including, but not limited to, the chemotherapy medicines identified in the Plaintiff Fact Sheet in this MDL in Section V.11.**

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, 8, and 11. The U.S. Defendants state that Plaintiffs do not allege that Taxotere® was ineffective in their treatment of breast cancer. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 25, 2017), ECF No. 689. Most Plaintiffs were, in fact, prescribed Taxotere® in combination with other medications. Also, no Plaintiff has alleged her outcome today would have been just as good with another drug, rendering the information sought by this Request

8312683 v5

irrelevant.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the broad body of publicly available scientific and medical literature responsive to this Request. The U.S. Defendants also refer Plaintiffs to the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.

**REQUEST NO. 22:** **All DOCUMENTS that support YOUR contention that the chemotherapy medicines identified in the Plaintiff Fact Sheet in this MDL in Section V.11 are associated with HAIR LOSS.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, 8, and 11.

Subject to and without waiving their objections, the U.S. Defendants state that it is reliably and generally accepted that numerous chemotherapy medicines are associated with hair loss. The U.S. Defendants refer Plaintiffs to the publicly available package inserts of the chemotherapy medications identified in the Plaintiff Fact Sheet and further refer Plaintiffs to the broad body of publicly available scientific and medical literature responsive to this Request. Expert discovery will also adduce more information responsive to this Request.

**REQUEST NO. 23:** **All DOCUMENTS RELATING TO TAXOTERE efficacy compared to Taxol (paclitaxel) efficacy.**

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, 8, and 11. Documents comparing the efficacy of Taxotere® and Taxol are irrelevant because Plaintiffs do not allege that Taxotere® was ineffective in their treatment of breast cancer. Also, no Plaintiff has alleged her outcome today would have been just as good with another drug.

25

Further, Taxol and Taxotere® are different drugs with different indications that involve different patient-specific prescribing considerations and different administration. Plaintiffs do not allege that Taxotere® should have been designed differently.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the broad body of publicly available scientific and medical literature, which includes comparative studies responsive to this Request. Other comparative studies may be found in the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, the Supplemental New Drug Applications for Taxotere®, and the documents on the clinical trials completed on Taxotere® and breast cancer, including the Phase 3 Comparison of Taxotere® (docetaxel) and Taxol® (paclitaxel) in Patients With Advanced Breast Cancer.

**REQUEST NO. 24:** **All DOCUMENTS RELATING TO the following studies:**

a. Joseph A. Sparano et al., *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, 358 New Eng. J. Med. 1663, 1663-1671 (2008), *available at* http://www.nejm.org/doi/ful1/10.1056/nejmoa0707056#t=article

b. Wei-Xiang Qi, et al., *Paclitaxel-based Versus Docetaxel-based Regimens in Metastatic Breast Cancer: A Systemic Review and Meta-analysis of Randomized Controlled Trials*, Curr. Med. Res. Opin. Volume 29 Issue 2:117-125 (2013), *available at* http://dx.doi.org/10.1185/03007995.2012.756393

c. Jones, S.E., et al., *Randomized Phase III Study of Docetaxel Compared With Paclitaxel in Metastatic Breast Cancer.*, J.Clin.Oncol. 2005, 23(24):5542-51.

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, 8, and 9.

Subject to and without waiving their objections, the U.S. Defendants state that the Sparano and Qi articles pertain to outside studies. The Jones article is the published result of the Phase 3 Comparison of Taxotere® (docetaxel) and Taxol® (paclitaxel) in Patients With Advanced Breast Cancer study. The U.S. Defendants will produce the relevant clinical study report for the Jones article. To the extent the U.S. Defendants have additional relevant, non-privileged documents responsive to this Request, they will endeavor to produce them through an agreed upon custodian list and search terms.

**REQUEST NO. 25:** **All DOCUMENTS RELATING TO any inquiries or investigations by governmental or regulatory organizations within the United States (either state or federal) RELATING TO TAXOTERE and the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion.**

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, 8, and 9. The letter referenced in the Request is about a reprint of a study and whether the reprint overstated the efficacy of the drug. This is irrelevant because no Plaintiffs allege that their prescribing physician received or relied upon the reprint. In addition, the underlying study itself was published in the Journal of Clinical Oncology, allowing physicians to draw their own conclusions about its results. Moreover, Plaintiffs do not allege that Taxotere® was ineffective in their treatment of breast cancer, meaning there is no nexus between their claims and any statements, whether overstated or not, about efficacy. Also, no Plaintiff has alleged her outcome today would have been just as good with another drug.

Subject to and without waiving their objections, the April 16, 2009 letter from DDMAC is publicly available at http://wayback.archive-it.org/7993/20170112063551/http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegula

toryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPh
armaceuticalCompanies/UCM153134.pdf.

**REQUEST NO. 26:** All labels, including package inserts, user guides and patient
information, for TAXOTERE approved by FDA.

**RESPONSE**: Without waiver of their objections, the U.S. Defendants already produced labeling
for Taxotere® as Production #1, Sanofi_000001 – Sanofi_001168.

**REQUEST NO. 27:** All drafts of labels for TAXOTERE, whether submitted to the FDA or
not, RELATING TO HAIR LOSS.

**RESPONSE**: In addition to General Objections Nos. 4, 5, 7, 8, and 9, the U.S. Defendants object
that identifying draft labels not submitted to the FDA is unduly burdensome given their marginal
relevance, and likely duplicative nature of the as-submitted labels.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to
the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg
and the Supplemental New Drug Applications for Taxotere®, which include draft labeling
submitted to FDA.

**REQUEST NO. 28:** All drafts of labels for TAXOTERE, whether submitted to the FDA or
not, RELATING TO efficacy.

**RESPONSE**: In addition to General Objections Nos. 4, 5, 7, 8, and 9, the U.S. Defendants object
that labeling related to efficacy is irrelevant because Plaintiffs do not allege that Taxotere® was
ineffective in their treatment of breast cancer.  As indicated in Request No. 27, draft labeling
submitted to FDA is included in the regulatory submissions to be produced, subject to objections.

**REQUEST NO. 29:** All drafts of labels for TAXOTERE, whether submitted to the FDA or
not, RELATING TO cardio-toxicity.

8312683 v5

**RESPONSE:** In addition to General Objections Nos. 4, 5, 7, 8, and 9, the U.S. Defendants object that labeling related to cardio-toxicity is irrelevant because Plaintiffs' claims have nothing to do with having problems with cardio-toxicity from the medicine.  The U.S. Defendants further object that identifying draft labels not submitted to the FDA is unduly burdensome given their marginal relevance, and likely duplicative nature of the as-submitted labels.   The U.S. Defendants therefore only generally refer Plaintiffs to the produced labeling for Taxotere®, Production #1 (Sanofi_000001 – Sanofi_001168), the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®, which include final labeling and labeling submitted to FDA, including language related to the cardiac considerations of the medicine.

**REQUEST NO. 30:** All  COMMUNICATIONS  RELATING  TO  U.S.  labeling  for TAXOTERE and HAIR LOSS.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 27.

**REQUEST NO. 31:** All  COMMUNICATIONS  RELATING  TO  U.S.  labeling  for TAXOTERE and efficacy.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 28.

**REQUEST NO. 32:** All  COMMUNICATIONS  RELATING  TO  U.S.  labeling  for TAXOTERE and cardio-toxicity.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 29.

**REQUEST NO. 33:** All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and HAIR LOSS, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 7, 8, and 9, the U.S.

Defendants state that they have a Labeling Review Committee.  The U.S. Defendants will endeavor to produce non-privileged documents relevant to hair loss and responsive to this Request through an agreed upon custodian list and search terms.

**REQUEST NO. 34:  All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and efficacy, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.**

**RESPONSE:** The U.S. Defendants incorporate by reference their objections and response to Request No. 33.  Further, the U.S. Defendants object that internal meetings related to labeling on efficacy are irrelevant because Plaintiffs do not allege that Taxotere® was ineffective in their treatment of breast cancer.  The U.S. Defendants therefore limit their response to hair loss for these Requests.

**REQUEST NO. 35:  All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and cardio-toxicity, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 33. Further, the U.S. Defendants object that internal meetings related to labeling on cardio-toxicity are irrelevant because Plaintiffs do not allege that docetaxel was cardio-toxic to them.  The U.S. Defendants therefore limit their response to hair loss for these Requests.

**REQUEST NO. 36:  All DOCUMENTS RELATING TO the December 2015 FDA announcement concerning safety labeling changes approved by the FDA RELATING TO TAXOTERE.**

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants state that in December 2015, after discussions between the U.S. Defendants and FDA

8312683 v5

and FDA's review of relevant safety data, the "post-marketing experiences" section of the Taxotere® label was revised to include the following language: "[c]ases of permanent alopecia have been reported."  This change had no impact on the risk-benefit profile of Taxotere®.  Nor did FDA advise doctors to change their prescribing practices or avoid using the drug in certain classes of patients.

The U.S. Defendants will endeavor to produce the U.S. Defendants' documented collaboration with FDA on the changes and additional relevant, non-privileged documents responsive to this Request through an agreed upon custodian list and search terms.

**REQUEST NO. 37:**  **Produce an exact duplicate of the data, information, DOCUMENTS, files, codes and other materials YOU provided to the FDA in response to the February 12, 1999 facsimile YOU received from the FDA.**

**RESPONSE:** In addition to General Objections Nos. 5, 7, 8, and 9, the U.S. Defendants object that the referenced February 12, 1999 facsimile is related to Taxotere®'s non-small cell lung cancer indication.  Thus, it is irrelevant to this litigation.

**REQUEST NO. 38:**  **All labels, including package inserts, user guides and patient information, for TAXOTERE approved by FOREIGN REGULATORY AGENCIES from 2005 to the present.**

**RESPONSE:** In addition to General Objections Nos. 2, 4, 6, 7, and 8, the U.S. Defendants object that Taxotere® is approved for use in approximately 130 countries worldwide, all of which have regulatory bodies.  All of the Plaintiffs in this litigation were allegedly treated in the United States, with an FDA-approved label, and thus, this Request is irrelevant.  To the extent Plaintiffs believe this information is relevant, it is publically available.

**REQUEST NO. 39:**  **All   COMMUNICATIONS   to   or   from   any   FOREIGN**

REGULATORY AGENCY RELATING TO TAXOTERE and HAIR LOSS and any English translations that exist.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 38.

**REQUEST NO. 40:** All DOCUMENTS RELATING TO the application for a variation submitted by Aventis Pharma S.A. to the European Medicines Agency on February 19, 2016 RELATING TO TAXOTERE, including, but not limited to, the application itself and all supporting information.

**RESPONSE:** In addition to General Objections Nos. 2, 4, 5, 7, 8, and 9, the U.S. Defendants object that all of the Plaintiffs in this litigation were allegedly treated in the United States, with an FDA-approved label, and thus, this Request is irrelevant. Moreover, this Request seeks information from a different Defendant, and thus a response from the U.S. Defendants is not required.

**REQUEST NO. 41:** All COMMUNICATIONS RELATING TO the application for a variation submitted by Aventis Pharma S.A. to the European Medicines Agency on February 19, 2016 RELATING TO TAXOTERE.

**RESPONSE**: The U.S. Defendants incorporate by reference their objections to Request No. 40.

**REQUEST NO. 42:** YOUR "Sanofi global pharmacovigilance database" as described in the February 19, 2016 type II variation report from European Medicines Agency (EMA) that IDENTIFIES to present date all cases of HAIR LOSS in patients who received TAXOTERE.

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 2, 3, 4, 5, 7, 8, and 10.

Subject to and without waiving their objections, the U.S. Defendants will produce adverse event reports on hair loss in patients reportedly taking Taxotere®, which will be

produced from Sanofi's global pharmacovigilance database subject to objections.

**REQUEST NO. 43:  All DOCUMENTS RELATING TO any FOREIGN REGULATORY AGENCY inquiry or investigation RELATING TO the safety of TAXOTERE, including, but not limited to, a French regulatory agency's 2017 investigation into deaths of patients receiving TAXOTERE.**

**RESPONSE**: In addition to General Objections Nos. 2, 4, 5, 6, 7, and 8, the U.S. Defendants object that Taxotere® is approved for use in approximately 130 countries worldwide, all of which have regulatory bodies.  All of the Plaintiffs in this litigation were allegedly treated in the United States, with an FDA-approved label, and thus, this Request is irrelevant.  Moreover, this Request pertains to a very recent (March 2017) inquiry by the National Agency for the Safety of Medicines ("ANSM") through the Service of Clinical Pharmacology of Toulouse.  The inquiry addressed five patient deaths abroad, with generic docetaxel use and neutropenic enterocolitis reported.  The inquiry, and its May 2, 2017, reported results, are in French, but the highlights of the agency findings relate not to docetaxel, but related medical practices with its use.  The agency report refers to the method of administration of the drug, the protocols for which changed in 2010.   At the same time, the European Medicines Agency ("EMA"), after its meeting on April 3, 2017, did not incriminate the medicine or the method of administration.  It found that the French agency inquiry did not support the conclusion that the drug is toxic, and specifically criticized the substitution of paclitaxel for docetaxel.  *See, e.g.*, Docétaxel: un rapport de l'ANSM pointe une augmentation des effets secondaires du médicament à partir de 2010 (Mar. 3, 2017) (available at http://www.europe1.fr/sante/docetaxel-un-rapport-de-lansm-pointe-une-augmentation-des-effets-secondaires-du-medicament-a-partir-de-2010-3318530).

**REQUEST NO. 44:  All  DOCUMENTS  RELATING  TO  the  preclinical  and  clinical**

8312683 v5

**STUDIES RELATING TO TAXOTERE conducted by YOU or on YOUR behalf outside of the United States prior to 2001.**

**RESPONSE:** The U.S. Defendants incorporate by reference their objections and response to Request No. 4.  Further objecting, the U.S. Defendants object based on relevance that the Request seeks information outside of the United States.  None of the Plaintiffs allege they were diagnosed, treated, or allegedly injured with Taxotere® outside of the United States and thus this Request is irrelevant.

As set forth in response to Request No. 4, however, the U.S. Defendants will also produce documents for clinical studies completed on Taxotere® and breast cancer, subject to objections.

**REQUEST NO. 45:** All Company Core Data Sheets (CCDS) RELATING TO TAXOTERE.

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 7, 8 and 9, the U.S. Defendants will endeavor to produce the Company Core Data Sheets for Taxotere®.

**REQUEST NO. 46:** All COMMUNICATIONS RELATING TO TAXOTERE Company Core Data Sheets (CCDS) and HAIR LOSS.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 45.

**REQUEST NO. 47:** All Company Core Safety Information (CCSI) RELATING TO TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 45. The CCSI for Taxotere® is equivalent to the CCDS.

**REQUEST NO. 48:** All COMMUNICATIONS RELATING TO Company Core Safety Information for TAXOTERE and HAIR LOSS.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 45.

34

**REQUEST NO. 49:** All draft Dear Doctor/HEALTHCARE PROVIDER letters RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8.

Subject to and without waiving their objections, the U.S. Defendants state that, upon information and belief, it did not issue Dear Doctor letters specific to Taxotere® and hair loss. The U.S. Defendants are aware of communications with healthcare providers about Taxotere® and various side effects, including persistent hair loss, and generally refer Plaintiffs to the communications to be produced from its Medical Information Services database, subject to objections.

**REQUEST NO. 50:** All COMMUNICATIONS RELATING TO any Dear Doctor/HEALTHCARE PROVIDER letter RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 49.

**REQUEST NO. 51:** All DOCUMENTS RELATING TO an actual or potential signal between TAXOTERE and HAIR LOSS.

**RESPONSE:** In addition to General Objections Nos. 4, 6, 7, and 8, the U.S. Defendants object that this Request is overbroad because the risk of hair loss is disclosed within the Taxotere® labeling (and has been since the drug was approved by FDA in 1996) and is also a well-known side effect of chemotherapy. Plaintiffs do not complain about the risk of "hair loss" generally, but make shifting allegations about "persistent" or "permanent" hair loss, which is the only issue for which signal assessments of adverse events might be salient. The U.S. Defendants also object to the phrase "actual or potential" as vague, ambiguous, and undefined as used in this Request. Furthermore, it is not clear precisely what Plaintiffs mean by the term "signal."

To the extent that Plaintiffs are referring to summaries or analyses of medically unconfirmed reports of persistent hair loss in patients on Taxotere®, among other medicines, the U.S. Defendants generally refer Plaintiffs to the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg and the Supplemental New Drug Applications for Taxotere®, as well as adverse event reports on hair loss in patients reportedly taking Taxotere®, which will be produced from Sanofi's global pharmacovigilance database subject to objections. Further responding, the U.S. Defendants refer Plaintiffs to PSUR No. 28 and PBRER (Jan. 26, 2016) to be produced to Plaintiffs, subject to objections. None of these documents evidence a "safety signal," but consist of adverse event report analysis more generally.

**REQUEST NO. 52: All internal COMMUNICATIONS and DOCUMENTS RELATING TO an actual or potential signal or association between TAXOTERE and HAIR LOSS.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 51.

**REQUEST NO. 53: All DOCUMENTS RELATING TO any causality assessments (including suspected, potential, and/or actual associations) between TAXOTERE and HAIR LOSS.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 51. The U.S. Defendants also object to the phrase "suspected, potential, and/or actual associations" as being vague, ambiguous, and undefined as used in this Request.

**REQUEST NO. 54: All DOCUMENTS that IDENTIFY or list (including in summary format) any completed, proposed, planned, or considered preclinical or clinical STUDIES that assess whether TAXOTERE can cause HAIR LOSS.**

**RESPONSE:** In addition to General Objections Nos. 4, 6, 7, 8, and 9, the U.S. Defendants object that the risk of hair loss is disclosed within the Taxotere® labeling (and has been since the drug was approved by FDA in 1996) and is also a well-known side effect of chemotherapy. It is

36

therefore unclear, whether Plaintiffs intend to include in their Request all of the various studies where hair loss has been observed, as is expected. This Request is also overbroad in seemingly including information and documents outside of the U.S. Defendant's knowledge and control by including studies not completed by them, but others. Otherwise, the U.S. Defendants state that they are not aware of any studies specifically designed to assess Taxotere® and hair loss. For example, GEICAM/2003-10 was a phase III study that compared epirubicin and cyclophosphamide followed by docetaxel (EC-T) to epirubicin and docetaxel followed by capecitabine (ET-X) as adjuvant therapy in the treatment of node positive breast cancer. The primary endpoint was invasive disease-free survival. Secondary endpoints included overall survival and safety. The safety portion included a questionnaire that assessed alopecia resolution. *See, e.g.*, Martín, Miguel, et al. "Epirubicin plus cyclophosphamide followed by docetaxel versus epirubicin plus docetaxel followed by capecitabine as adjuvant therapy for node-positive early breast cancer: results from the GEICAM/2003-10 Study." *Journal of Clinical Oncology* 33.32 (2015): 3788-3795. Multiple other requests by Plaintiffs seemingly implicate these same objections and overlap such that the U.S. Defendants' responses may implicate potentially responsive information and documents, which the U.S. Defendants therefore also incorporate by reference. *See, e.g.*, Request Nos. 58, 59, 60, and 65.

**REQUEST NO. 55:**  **The adverse event database RELATING TO TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 42.

**REQUEST NO. 56:**  **All COMMUNICATIONS and DOCUMENTS RELATING TO any TAXOTERE adverse event report and HAIR LOSS, including all follow up documentation.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 42.

**REQUEST NO. 57:**  **All DOCUMENTS RELATING TO scientific, clinical, and medical**

37

publications, posters and any other publication RELATING TO TAXOTERE as defined in 21 C.F.R. 310.305 and the corresponding Guidance for Industry and Investigator, Safety Reporting Requirements for INDs and BA/BEs, Section W., V., pp. 7-8 (Dec. 2012).

**RESPONSE**: 21 C.F.R. 310.305 does not apply to Taxotere® because the statute covers drug products that are not the subject of an approved new drug or abbreviated new drug application. Thus, this Request is irrelevant and requires no response.

**REQUEST NO. 58:** All published and unpublished medical and scientific articles, abstracts, posters, presentations, and research papers RELATING TO TAXOTERE and HAIR LOSS and efficacy.

**RESPONSE:** In addition to General Objection Nos. 4, 5, 6, 7, 8, and 9, the U.S. Defendants object to the inclusion in this Request of unpublished papers not even sponsored by, and therefore unknown, to them.

Subject to and without waiving their objections, the U.S. Defendants observe that many of the publications concerned with efficacy do not separately address hair loss in detail. Likewise, the publications concerning hair loss all but set aside the important issue of Taxotere®'s efficacy. The U.S. Defendants therefore generally refer Plaintiffs to the broad body of publicly available scientific and medical literature responsive to this Request, which include reports of persistent alopecia, not just with Taxotere® or taxanes, but with chemotherapy agents generally, for example:

Baker, B. W., et al. "Busulphan/cyclophosphamide conditioning for bone marrow transplantation may lead to failure of hair regrowth." *Bone marrow transplantation* 7.1 (1991): 43-47.

Basilio, Flávia Machado Alves, et al. "Clinical and histological study of permanent alopecia after bone marrow transplantation." *Anais brasileiros de dermatologia* 90.6 (2015): 814-821.

Batchelor, Dallas. "Hair and cancer chemotherapy: consequences and nursing care – a literature study." *European journal of cancer care* 10.3 (2001): 147-163.

38

Bertrand, M., et al. "Abstract P3-09-15: Permanent chemotherapy induced alopecia in early breast cancer patients after (neo) adjuvant chemotherapy: Long term follow up." (2013): P3-09.

Bourgeois, H., et al. "Long Term Persistent Alopecia and Suboptimal Hair Regrowth after Adjuvant Chemotherapy for Breast Cancer: Alert for an Emerging Side Effect: ALOPERS Observatory." (2009): 3174-3174.

Bourgeois, Hugues Pierre, et al. "ERALOP study: Hair regrowth after adjuvant FEC-docetaxel chemotherapy for early breast cancer in the real life." (2014): e12014-e12014.

Champagne, C., M. Taylor, and P. Farrant. "Permanent chemotherapy-induced nonscarring alopecia and premature ovarian failure." *Clinical and experimental dermatology* 40.5 (2015): 589-590.

Choi, M. "Permanent alopecia: 19 case reports." *Reactions* 1565 (2015): 34-22.

Crown, John P., et al. "Incidence of permanent alopecia following adjuvant chemotherapy in women with early stage breast cancer." (2017): e21576-e21576.

de Jonge, Milly E., et al. "Relationship between irreversible alopecia and exposure to cyclophosphamide, thiotepa and carboplatin (CTC) in high-dose chemotherapy." *Bone marrow transplantation* 30.9 (2002): 593.

Fonia, Athina, et al. "Permanent alopecia in patients with breast cancer after taxane chemotherapy and adjuvant hormonal therapy: Clinicopathologic findings in a cohort of 10 patients." *Journal of the American Academy of Dermatology* 76.5 (2017): 948-957.

Haider, Mansoor, Issam Hamadah, and Abdulmonem Almutawa. "Radiation-and chemotherapy-induced permanent alopecia: case series." *Journal of cutaneous medicine and surgery* 17.1 (2013): 55-61.

Kim, Gun Min, et al. "Chemotherapy-induced irreversible alopecia in early breast cancer patients." *Breast Cancer Research and Treatment* 163.3 (2017): 527-533.

Hood, Antoinette F., Reeck, Matthew C., "Dermatologic toxicity," chapter 33 in The Chemotherapy Source Book, third edition, Lippincott Williams and Wilkins pub., Perry ed., 2001, p.425-432

Jäger, E., et al. "Combination of 5-fluorouracil, adriamycin, ifosfamide and cisplatin in metastatic adult soft tissue sarcoma: results of a phase II study." *Oncology* 53.1 (1996): 58-63.

Kim, Gun Min, et al. "Chemotherapy-induced irreversible alopecia in early breast cancer patients." *Breast Cancer Research and Treatment* 163.3 (2017): 527-533.

Kluger, N., et al. "Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel: a prospective

39

study of 20 patients." *Annals of oncology* 23.11 (2012): 2879-2884.

Lacouture, Mario E., and Viswanath Reddy Belum. "Dermatologic adverse events associated with systemic anticancer agents." Cancernetwork.com [http://www.cancernetwork.com/articles/dermatologic-adverse-events-associated-systemic-anticancer-agents]

Ljungman, P., et al. "Busulfan concentration in relation to permanent alopecia in recipients of bone marrow transplants." *Bone marrow transplantation* 15.6 (1995): 869-871.

Machado, M., J. S. Moreb, and S. A. Khan. "Six cases of permanent alopecia after various conditioning regimens commonly used in hematopoietic stem cell transplantation." *Bone marrow transplantation* 40.10 (2007): 979.

Martín, Miguel, et al. "Epirubicin plus cyclophosphamide followed by docetaxel versus epirubicin plus docetaxel followed by capecitabine as adjuvant therapy for node-positive early breast cancer: results from the GEICAM/2003-10 Study." *Journal of Clinical Oncology* 33.32 (2015): 3788-3795.

Masidonski, Pat, and Suzanne M. Mahon. "Permanent alopecia in women being treated for breast cancer." *Clinical journal of oncology nursing* 13.1 (2009): 13-14.

Miteva, Mariya, et al. "Permanent alopecia after systemic chemotherapy: a clinicopathological study of 10 cases." *The American Journal of dermatopathology* 33.4 (2011): 345-350.

Palamaras, Ioulios, et al. "Permanent chemotherapy-induced alopecia: a review." *Journal of the American Academy of Dermatology* 64.3 (2011): 604-606.

Perez-Crespo, Maria, et al. "Irreversible alopecia due to busulphan in a 7-year-old girl." *European Journal of Dermatology* 19.2 (2009): 192-193.

Prevezas, C., et al. "Irreversible and severe alopecia following docetaxel or paclitaxel cytotoxic therapy for breast cancer." *British Journal of Dermatology* 160.4 (2009): 883-885.

Priyadarshini, Chinmayee, et al. "Chemotherapy Induced Skin Toxicities and Review of Literature." *Journal of Cancer and Tumor International* 3.3 (2016) Article no. JCTI.22651

Sedlacek, S. M. "Persistent significant alopecia (PSA) from adjuvant docetaxel after doxorubicin/cyclophosphamide (AC) chemotherapy in women with breast cancer." *Breast Cancer Research and Treatment* 100 (2006): S116.

Sperling, L.C., et al., "Chemotherapy-induced alopecia," chapter 35 in <u>An Atlas of Hair Pathology with Clinical Correlations</u>, second edition, CRC Press pub., Sperling, Cowper and Knopp ed., 2012, p.194-197

Tallon, Ben, Elizabeth Blanchard, and Lynne J. Goldberg. "Permanent chemotherapy-induced alopecia: case report and review of the literature." *Journal of the American Academy*

40

*of Dermatology* 63.2 (2010): 333-336.

Tallon, Ben, Elizabeth Blanchard, and Lynne J. Goldberg. "Permanent chemotherapy-induced alopecia: histopathologic criteria still to be defined." *Journal of the American Academy of Dermatology* 68.5 (2013): e151-e152.

Thorp, Nicola J., et al. "Abstract P5-17-04: Long term hair loss in patients with early breast cancer receiving docetaxel chemotherapy." (2015): P5-17.

Tosti, Antonella, et al. "Permanent alopecia after busulfan chemotherapy." *British Journal of Dermatology* 152.5 (2005): 1056-1058.

Tosti, Antonella, et al. "Docetaxel and permanent alopecia." *Journal of the American Academy of Dermatology* 68.5 (2013): e151.

Tosti, Antonella, "Disease of the Hair and Nails," chapter 442 in Goldman-Cecil Medicine, 25th edition, Elsevier Saunders pub., Goldman, Schafer ed., 2016, p.2703-2710

Tran, D., et al. "Permanent alopecia following chemotherapy and bone marrow transplantation." *Australasian journal of dermatology* 41.2 (2000): 106-108.

Yagata, Hiroshi, et al. "Abstract P5-15-17: National survey of long-term recovery from chemotherapy-induced hair loss in patients with breast cancer." (2015): P5-15.

Yang, Xinyi, and Keng-Ee Thai. "Treatment of permanent chemotherapy-induced alopecia with low dose oral minoxidil." *Australasian Journal of Dermatology* 57.4 (2016).

The U.S. Defendants also refer Plaintiffs to the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, the Supplemental New Drug Applications for Taxotere®, and clinical studies produced by the U.S. Defendants which may have information responsive to this Request. Further responding, although not specific to Taxotere® and persistent or permanent hair loss, there are several studies on cooling caps for breast cancer patients which the U.S. Defendants may have supported. Multiple other requests by Plaintiffs seemingly implicate these same objections and overlap such that the U.S. Defendants' responses may implicate potentially responsive information and documents, which the U.S. Defendants therefore also incorporate by reference. *See, e.g.*, Request Nos. 54, 59, 60, and 65.

**REQUEST NO. 59:** **All DOCUMENTS RELATING TO COMMUNICATIONS between**

**YOU and any researchers, authors or editors involved in STUDIES, articles, abstracts, presentations, publications or posters regarding TAXOTERE and HAIR LOSS or efficacy.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 58. Further responding, to the extent specific papers are identified by Plaintiffs, the U.S. Defendants state they are amenable to meeting and conferring with them on searching for communications with discreet authors by name, if any.  Multiple other requests by Plaintiffs seemingly implicate these same objections and overlap such that the U.S. Defendants' responses may implicate potentially responsive information and documents, which the U.S. Defendants therefore also incorporate by reference.  *See, e.g.*, Request Nos. 54, 59, 60, and 65.

**REQUEST NO. 60:  All DOCUMENTS RELATING TO any epidemiological STUDIES and/or statistical analyses RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:** In addition to General Objection Nos. 4, 5, 6, 7, and 8, the U.S. Defendants object that the phrases "epidemiological studies" and/or "statistical analyses" are vague, ambiguous and undefined as used in this Request.

Subject to and without waiving their objections, and assuming Plaintiffs mean cohort or case-controlled studies, the U.S. Defendants state that they are not aware of any specific studies or analyses relating to Taxotere® and hair loss.  However, the risk of hair loss is disclosed within the Taxotere® labeling (and has been since the drug was approved by FDA in 1996) and is also a well-known side effect of chemotherapy.  Multiple other requests by Plaintiffs seemingly implicate these same objections and overlap such that the U.S. Defendants' responses may implicate potentially responsive information and documents, which the U.S. Defendants therefore also incorporate by reference.  *See, e.g.*, Request Nos. 54, 58, 59, and 65.

**REQUEST NO. 61:  All DOCUMENTS and COMMUNICATIONS RELATING TO Scot**

8312683 v5

Sedlacek, M.D. and/or Rocky Mountain Cancer Center.

**RESPONSE:** Subject to and without waiving General Objection Nos. 4, 5, 7, and 8, the U.S. Defendants state that to date, Dr. Sedlacek's name has only been identified in lists of publications or in lists of oncologists, as an author or doctor. To the extent that they exist, the U.S. Defendants will endeavor to produce additional relevant, non-privileged documents responsive to this Request regarding Taxotere® and persistent or permanent hair loss, if any, through an agreed upon custodian list and search terms.

**REQUEST NO. 62:  All DOCUMENTS RELATING TO ongoing, past, future, or potential STUDIES, whether sponsored by YOU or not, involving TAXOTERE and HAIR LOSS.**

**RESPONSE:**  The U.S. Defendants incorporate by reference their objections and response to Request No. 54 and object to the duplicative nature of these Requests.

**REQUEST NO. 63:  All DOCUMENTS that support YOUR contention of alternative causes of HAIR LOSS (other than TAXOTERE), including articles, book chapters, treatises or other publications.**

**RESPONSE:** In addition to General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants object that it is not their "contention" that there are myriad alternative causes of hair loss besides chemotherapy – this is an established medical and scientific fact.

Subject to and without waiving their objections, the U.S. Defendants generally refer Plaintiffs to the broad body of publicly available scientific and medical literature responsive to this Request, as well as the expert discovery to be conducted in these cases. As is well-known from those and other resources, hair loss may be caused by age, genetics, hormonal status, endocrine issues, autoimmune disorders, bacteria, infection, disease, or other medical conditions, dietary and vitamin deficiencies, other medications, stress, illness, and hair care treatment and

damage, among other concerns.

**REQUEST NO. 64:**  **All SAS data or data files RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8.  "SAS data or data files," although undefined by Plaintiffs, are the tables of data generated from a clinical trial.  There are numerous different levels of data generated for regulatory agencies' statistical reviews.  Thus, this Request is overbroad and unduly burdensome.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the clinical studies completed on Taxotere® and breast cancer which will be produced, subject to objections.  Some such studies include SAS data or data files as they are kept in the ordinary course of business, but many do not.

**REQUEST NO. 65:**  **All DOCUMENTS RELATING TO any comparison between TAXOTERE and other chemotherapy medicines concerning HAIR LOSS.**

**RESPONSE:** In addition to General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants object that no Plaintiff has alleged her outcome today would have been just as good with another drug.  Plaintiffs' Request fails to distinguish between chemotherapy medications with different indications that involve different patient-specific prescribing considerations and different administration.

Subject to and without waiving their objections, the U.S. Defendants refer Plaintiffs to the broad body of publicly available scientific and medical literature responsive to this Request, including the following Sanofi-sponsored, pivotal, phase III docetaxel clinical trials in breast cancer:

Martin, Miguel, et al. "Adjuvant docetaxel for node-positive breast cancer." *New England Journal of Medicine* 352.22 (2005): 2302-2313.

44

Martin, Miguel, et al. "Adjuvant docetaxel for high-risk, node-negative breast cancer." *New England Journal of Medicine* 363.23 (2010): 2200-2210.

The U.S. Defendants also refer Plaintiffs to the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg and the Supplemental New Drug Applications for Taxotere®, and clinical studies produced by the U.S. Defendants, which may have additional information responsive to this Request. Multiple other requests by Plaintiffs seemingly implicate these same objections and overlap such that the U.S. Defendants' responses may implicate potentially responsive information and documents, which the U.S. Defendants therefore also incorporate by reference. *See, e.g.*, Request Nos. 54, 58, 59, and 60.

**REQUEST NO. 66:** **All DOCUMENTS RELATING TO whether a patient's HAIR LOSS, after using TAXOTERE may be impacted by the use of any endocrine or hormonal therapies.**

**RESPONSE:** Subject to and without waiving General Objection Nos. 4, 6, 7, and 8, the U.S. Defendants refer Plaintiffs to the broad body of publicly available scientific and medical literature responsive to this Request. Multiple publications examine the use of endocrine and hormonal therapies on hair loss, some involving patients who also used Taxotere®.

**REQUEST NO. 67:** **All DOCUMENTS RELATING TO whether a patient's HAIR LOSS, after using TAXOTERE may be impacted by an autoimmune disease, including those autoimmune diseases listed in the Plaintiff Fact Sheet in this MDL in Section VII.10.**

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Request No. 66, which is also true with respect to the state of publicly available scientific and medical literature regarding autoimmune diseases and hair loss.

**REQUEST NO. 68:** **All DOCUMENTS RELATING TO whether a patient's HAIR LOSS after using TAXOTERE may be impacted by hair care products or treatments, including**

the hair care products and/or treatments listed in the Plaintiff Fact Sheet in this MDL in Section VII.13 and VII.14.

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Request No. 66, which is also true with respect to the state of publically available scientific and medical literature regarding care products or treatments.

**REQUEST NO. 69:** **All DOCUMENTS RELATING TO how YOU define, grade, or otherwise classify HAIR LOSS.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, and 8.

Subject to and without waiving objections, the U.S. Defendants state that they do not independently grade or otherwise classify hair loss.  The National Cancer Institute, Common Terminology Criteria for Adverse Events is generally used to define alopecia and this information is publically available to Plaintiffs.  Further responding, the U.S. Defendants state that they have used definitions of "permanent" or "irreversible" alopecia in various analyses to be produced to Plaintiffs.   Some outside publications also employ a different grading scale from the            World          Health          Organization,          available          at http://apps.who.int/iris/bitstream/10665/37200/1/WHO_OFFSET_48.pdf.

**REQUEST NO. 70:**  **All DOCUMENTS RELATING TO social media, website, blog, online message board or other internet posting, discussing TAXOTERE and HAIR LOSS.**

**RESPONSE:** In addition to General Objections Nos. 4, 6, 7, and 8, the U.S. Defendants object that as written, the U.S. Defendants cannot respond to this Request as it is vague and ambiguous, and seemingly calls upon Defendants to search and review publicly available sources equally accessible to Plaintiffs.

**REQUEST NO. 71:** All COMMUNICATIONS from patients, healthcare professionals, and/or HEALTHCARE PROVIDERS RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8. The U.S. Defendants further object that this Request is overbroad to the extent it includes all healthcare professionals and/or healthcare providers without any nexus to a specific case, or a provider who prescribed Taxotere® to or treated any individual Plaintiff.

Subject to and without waiving their objections, the U.S. Defendants state this information will be produced as part of the Defendant Fact Sheet process. The U.S. Defendants also generally refer Plaintiffs to the adverse event reports on hair loss in patients reportedly taking Taxotere®, which will be produced from Sanofi's global pharmacovigilance database subject to objections.

**REQUEST NO. 72:** All DOCUMENTS RELATING TO patient advocacy or support groups/organizations RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants state that Sanofi partners with patient advocates and groups on mutual priorities to benefit patients. Information regarding this program is publically available to Plaintiffs on Sanofi's website at http://en.sanofi.com/csr/approach/stakeholders-engagement/patient_associations/patient_associations.aspx.

**REQUEST NO. 73:** All DOCUMENTS RELATING TO YOUR response to any COMMUNICATIONS from patients RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants state that they will produce relevant communications on Taxotere® and hair loss from the Medical Information Services database, which identifies call-in inquires, the nature of

8312683 v5

inquiry, date, and Sanofi's response.   Otherwise, Plaintiffs' Request for "all documents" "relating" to "responses" for such "communications" is far too nebulous to reasonably identify documents by type or category.

**REQUEST NO. 74:** **All DOCUMENTS RELATING TO the following studies, including but not limited to COMMUNICATIONS with the study authors:**

a.   Martin M, Segui MA, Anton A, Ruiz A, Ramos M, Adrover E, et al. GEICAM 9805.

b.   S.M. Sedlacek, *Persistent Significant Alopecia (PSA) from Adjuvant Docetaxel after Doxorubicin/Cyclophosphamide (AC) Chemotherapy in Women with Breast Cancer*, Presented at San Antonio Breast Cancer Symposium (Dec. 14, 2006), *available at* http://theproductlawyers.com/wp-content/uploads/2016/07/Sedlacek-TAXOTERE-Alopecia-Study-2006.pdf

c.   Ben Tallon, et al., *Permanent Chemotherapy-Induced Alopecia: Case Report and Review of the Literature*, J. Am. Acad. Dennatol., Volume 63 Issue 2: 333-336 (2010), *available at* https://www.ncbi.nlm.nih.gov/pubmed/20471136

d.   N. Kluger, et al., *Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel: a prospective STUDY of 20 patients*, Ann. Oncol. Volume 23 Issue 11: 2879-2884 (2012), *available at* https://www.ncbi.nlm.nih.gov/pubmed/22571858

e.   Nicola J. Thorp et al., *Long Term Hair Loss in Patients with Early Breast Cancer Receiving Docetaxel Chemotherapy*, P5-17-04 San Antonio Breast Cancer Symposium at 1111 (2014), *available at* http://www.sabcs.org/Portals/SABCS/Documents/2014SABCSCall4Abstracts.pdf

48

**RESPONSE:**   Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants state that with respect to GEICAM 9805, information responsive to the Request may be found in the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg or the Supplemental New Drug Applications for Taxotere®.   For the study identified in subsection b, see the U.S. Defendants' response to Request No. 61.   For the studies identified in subsections c-e, the U.S. Defendants will endeavor to produce relevant, non-privileged documents responsive to this Request through an agreed upon custodian list and search terms.

**REQUEST NO. 75:  All DOCUMENTS and COMMUNICATIONS summarizing and/or analyzing post-marketing adverse event reports RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**   The U.S. Defendants incorporate by reference their response to Request No. 51 and object to the duplicative nature of these Requests.

**REQUEST NO. 76:  All  MedWatch  forms,  including  follow  up  DOCUMENTS, RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**   In addition to General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants object to the request for Medwatch forms generally as opposed to any reports submitted by individual Plaintiffs or their healthcare providers on their complaints.

Subject to and without waiving their objections, the U.S. Defendants state this information will be produced as part of the Defendant Fact Sheet process.  The U.S. Defendants further refer Plaintiffs to the adverse event reports on hair loss in patients reportedly taking Taxotere®, which will be produced from Sanofi's global pharmacovigilance database subject to objections.

49

8312683 v5

**REQUEST NO. 77:**  **All DOCUMENTS RELATING TO marketing plans, strategic plans, situation analyses or tactical plans regarding TAXOTERE.**

**RESPONSE:**     The U.S. Defendants incorporate by reference General Objections Nos. 2, 4, 5, 7, and 8.  The U.S. Defendants further object that this Request is overbroad, unduly burdensome, seeks irrelevant information, and seeks information not proportional to the needs of the case by including all "marketing plans, strategic plans, situation analyses or tactical plans" generally without any nexus to the cases' facts. The U.S. Defendants note that the product at issue in this case is a chemotherapy medicine administered under clinical supervision by infusion, and is available by prescription only; care is provided by the physician to the patient.  Taxotere® is a chemotherapy agent that FDA approved to treat often fatal cancers, including breast cancer. Today, Taxotere® continues to save lives as it has for the past 20 years.  It was not "rushed to the market."   Rather, Taxotere® was discovered after a lengthy, multi-decade effort to find a sustainable way to provide sufficient taxanes to treat the women who need them the most.  All aspects of the drug and treatment regimen used in oncology depend on physician discretion and patient specific factors.  There are multiple sources of information available to oncologists including their own education, training, and clinical experience.  These factors further undermine the discoverability of the information and documents sought by this Request, particularly as it fails to connect to individual cases. More specifically, to date, no Plaintiff has not alleged that she or her physicians read, saw, or heard any specific marketing, let alone marketing executed under a specific plan or analyses.

Subject to and without waiving their objections, consistent with the General Discovery Protocol to be entered into by the Court, the U.S. Defendants will identify a representative set of marketing materials on Taxotere® from the time period the ten bellwether plaintiffs were

allegedly treated with Taxotere® , along with marketing materials connected to prescribing physicians or sales representatives identified in the cases subject to an applicable trial schedule order, if any.

**REQUEST NO. 78:** **All DOCUMENTS RELATING TO the implementation of the marketing strategy for TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 79:** **All DOCUMENTS RELATING TO core/key messages, tactics, Plan of Action (POA), SWOT (Strengths, Weaknesses, Opportunities and Threats) analyses, competitive issues, barriers/obstacles or customer beliefs regarding TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 80:** **All DOCUMENTS RELATING TO marketing strategies, plans, and/or messages RELATING TO the "Unsubstantiated Superiority Claims and Overstatement of Efficacy Claims" referred to in the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 25.

**REQUEST NO. 81:** **All DOCUMENTS RELATING TO DEFENDANTS' implementation of the corrective measures RELATING TO the "Unsubstantiated Superiority Claims and Overstatement of Efficacy Claims" referred to in the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion, including materials used to train, educate, inform and/or update employees regarding this violation.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 25.

8312683 v5

**REQUEST NO. 82:** All DOCUMENTS RELATING TO marketing strategies, plans, and/or messages RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Request No. 77. Further responding, the U.S. Defendants are not aware of any marketing materials targeted at the statement "hair generally grows back."  Where that language appears in such materials, it is part of the FDA-required fair balance disclosure, which sets forth the language of the Patient Counseling Information, Patient Information Leaflet verbatim.  Other materials, including a website supporting patient cancer care, also paraphrase the FDA-approved language from the Patient Counseling Information, Patient Information Leaflet.

**REQUEST NO. 83:** All DOCUMENTS RELATING TO the training and/or COMMUNICATIONS to YOUR field representatives and any other employees RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants will produce a representative set of sales training materials on Taxotere®, from the time period the ten bellwether plaintiffs were allegedly treated with Taxotere® , along with marketing materials connected to prescribing physicians or sales representatives identified in the cases subject to an applicable trial schedule order, if any, including as that training related to hair loss.

**REQUEST NO. 84:** All DOCUMENTS RELATING TO approved messaging for COMMUNICATIONS to HEALTHCARE PROVIDERS RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally

grows back".

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants state that, upon information and belief, there is no "approved messaging" for healthcare providers related to the labeled language that "hair generally grows back." More generally, the U.S. Defendants refer Plaintiffs to communications to be produced, subject to objections, from their Medical Information Services database, which includes physician communications regarding Taxotere® and hair loss.

**REQUEST NO. 85:** **All DOCUMENTS RELATING TO the hiring or retention of private/independent contractors or other consulting firms RELATING TO the marketing, market research, branding, promotion and public relations of TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 86:** **All DOCUMENTS RELATING TO YOUR standardized operating procedures (SOPs), codes of conduct, and/or ethical standards, whether formal or informal, with respect to the promotion, sales, marketing, commercialization of YOUR products, including TAXOTERE.**

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants refer Plaintiffs to Sanofi's corporate Code of Ethics, available online at http://en.sanofi.com/investors/corporate_governance/code_ethics/code_ethics.aspx.     Further responding, the U.S. Defendants state that they follow and are advised by Federal Food and Drug Administration regulations and industry standards as well as PhRMA codes and guidelines, which are publically available at http://www.phrma.org/about/codes-and-guidelines.

**REQUEST NO. 87:** **All DOCUMENTS RELATING TO the procedural process for review and approval of promotional material for TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 88:  All IMS Health data RELATING TO TAXOTERE.**

**RESPONSE**: Subject to and without waiving General Objections Nos. 2, 4, 5, 7, and 8, the U.S. Defendants state that IMS Health data is proprietary to IMS and can only be obtained by Plaintiffs from IMS.

**REQUEST NO. 89:  All data RELATING TO physicians' prescribing practices of competitor products compared to TAXOTERE in the treatment of breast cancer.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 88. The U.S. Defendants are unable to identify "prescriber-level data" and, therefore, do not have any information responsive to this Request.  Prescriber data is available for purchase from third parties, subject to restrictions on disclosure and distribution.

**REQUEST NO. 90:  All DOCUMENTS RELATING TO DEFENDANTS' targeting of HEATHCARE PROVIDERS and facilities for promotion of TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 88. The U.S. Defendants state that they do not use or maintain "targeting information" and, therefore, do not have any information responsive to this Request.

**REQUEST NO. 91:  All DOCUMENTS reflecting the annual Return On Investment (ROI) or related metric for each marketing strategy RELATING TO the promotion of TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 92:  All DOCUMENTS RELATING TO the training of YOUR sales organization responsible for the promotion TAXOTERE.**

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Request No. 83.

**REQUEST NO. 93:** **The database(s) that contains draft and final promotional materials for TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 94:** **All DOCUMENTS that index, catalog, compile, or otherwise list any of YOUR approved advertising, sales and marketing materials, and print and broadcast advertisements, sales aids, visuals, sales scripts, sales guides, reminder pieces and any other materials referenced in 21 C.F.R. 202.1, subdivisions (1)(1) and (1)(2) regarding or RELATING TO TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 95:** **All final, company-approved promotional materials for TAXOTERE (including sales aids, physician brochures, patient brochures, samples, vouchers, symposia, teleconference and video conference materials, CD-ROMs, lunch and learn materials, dinner or other event program materials, hospital, insurance or other formulary presentations, seminars, websites, interactive web sessions, web supported promotional presentations, e-detailing promotional presentations).**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 96:** **All DOCUMENTS RELATING TO coupon programs, vouchers and samples for TAXOTERE.**

**RESPONSE**: Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants state that Sanofi's passion is to improve access to medicines and healthcare. Because patients are their number one priority, and to meet their needs more efficiently, Sanofi offers an integrated patient support program titled Sanofi Patient Connection (SPC). SPC is a comprehensive program designed to assist patients through three main types of patient support:

1) Reimbursement Connection; 2) Patient Assistance Connection; and 3) Resource Connection. More information on these programs is publically available to Plaintiffs online at http://www.sanofi.us/l/us/en/layout.jsp?scat=F69BF7E3-21F7-46DA-B7D6-D02DC3CDBB3E and http://www.sanofipatientconnection.com/. The Providing Access to Cancer Therapy (PACT) program, for example, has a dedicated team to provide physicians with assistance in reimbursement services and provides oncology products to uninsured patients who meet eligibility requirements. Additionally, Sanofi participates in Together Rx and the Partnership for Prescription Assistance, offering discounts for individuals with no prescription drug coverage.

**REQUEST NO. 97:** **All DOCUMENTS RELATING TO vouchers for discounted taxi services, coupons for wigs, gift packages for patients (e.g., Connection Card Gift Package).**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 96.

**REQUEST NO. 98:** **All audio and/or video COMMUNICATIONs (both in audio file format and a transcript of the same) between YOU and YOUR sales force RELATING TO TAXOTERE.**

**RESPONSE**: In addition to General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants object to the extent this Request exceeds the ESI Protocol and requests information that is unduly costly or burdensome to retrieve. The U.S. Defendants likewise object that this Request seeks information that is neither relevant nor proportional by including communications with sales representative not tied to any individual cases' facts, treatment, prescribers, or even applicable sales representatives, let alone tied to hair loss. Further responding, the U.S. Defendants generally refer Plaintiffs to the documents to be produced pursuant to Request No. 83.

**REQUEST NO. 99:** **All email or other written COMMUNICATIONs by and or between YOU and YOUR sales force RELATING TO TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 98. To the extent reasonably proportional and relevant to individual cases, certain call notes and email will be produced as part of the Defendant Fact Sheet process.

**REQUEST NO. 100:** **Call note or other types of databases reflecting information recorded by or communicated among field representatives regarding TAXOTERE.**

**RESPONSE**: In addition to General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants further object that this Request is overbroad to the extent it includes call notes for physicians other than those who treated individual plaintiffs without any nexus to a specific case or to hair loss.

Subject to and without waiving their objections, the U.S. Defendants state, to the extent reasonably proportional and relevant to individual cases, specific call notes will be produced as part of the Defendant Fact Sheet process.

**REQUEST NO. 101:** **Call note or other types of databases reflecting field representatives' COMMUNICATIONS with HEALTHCARE PROVIDERS about TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 100.

**REQUEST NO. 102:** **All DOCUMENTS that reflect written procedures or guidelines for field representatives associated with the sales, marketing, and/or promotion of TAXOTERE RELATING TO recording information about HEALTHCARE PROVIDER COMMUNICATIONS.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 100.

**REQUEST NO. 103:** **Any agreements between YOU and any other company to co-promote TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77. Further responding, the U.S. Defendants state that, upon information and belief, there are no

agreements between them and any other company to co-promote Taxotere®.

**REQUEST NO. 104:** **Any agreements between YOU and any entity to provide contract sales representatives to promote TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 105:** **All DOCUMENTS RELATING TO cross-product promotion, co-promotions, or product bundling involving TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 106:** **All COMMUNICATIONS between YOU and the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request Nos. 3 and 25.  The U.S. Defendants further object that this Request is overbroad to the extent it seeks information regarding Taxotere® generally, instead of Taxotere® and persistent or permanent hair loss – the injury alleged in this litigation.

**REQUEST NO. 107:** **All DOCUMENTS regarding any COMMUNICATIONS between YOU and the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising and Communications (DDMAC) regarding TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 106.

**REQUEST NO. 108:** **All DOCUMENTS RELATING TO DEFENDANTS' implementation of the corrective measures RELATING TO any identified or alleged violations brought to YOUR attention by the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising, and Communications (DDMAC), including materials used to train, educate, inform and/or update employees regarding these identified**

or alleged violations.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 106.

**REQUEST NO. 109:** **DOCUMENTS sufficient to IDENTIFY YOUR speaker bureau members, thought leaders and/or key opinion leaders including doctors, researchers, academics, medical or healthcare professionals, and HEALTHCARE PROVIDERS who received remuneration from YOU for preparation of scientific papers, posters, medical articles, speeches, lectures, and/or presentations regarding TAXOTERE.**

**RESPONSE:** In addition to General Objections Nos. 4, 5, 7, 8, and 9, the U.S. Defendants object that this Request is overbroad without any nexus to a specific case.

Subject to and without waiving their objections, and to the extent reasonably proportional and relevant to individual cases, the U.S. Defendants state that speaker agreements and consulting agreements for applicable healthcare providers will be produced as part of the Defendant Fact Sheet process.

**REQUEST NO. 110:** **All DOCUMENTS RELATING TO medical seminars, presentations, conferences, lectures, slide decks, medical educational materials RELATING TO TAXOTERE and the treatment of breast cancer.**

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 6, 7, 8, and 9, the U.S. Defendants will produce a representative set of medical seminar presentations on Taxotere® and breast cancer from the time period the ten bellwether plaintiffs were allegedly treated with Taxotere®, along with medical seminar materials connected to prescribing physicians identified in the cases subject to an applicable trial schedule order, if any.

**REQUEST NO. 111:** **All DOCUMENTS RELATING TO any Advisory Boards utilized by YOU RELATING TO TAXOTERE and/or the treatment of breast cancer.**

8312683 v5

**RESPONSE:** In addition to General Objections Nos. 4, 5, 7, 8, and 9, the U.S. Defendants object that this Request is overbroad to the extent it includes "any Advisory Boards" without any nexus to a specific case or Taxotere® and persistent or permanent hair loss.

Subject to and without waiving their objections, the U.S. Defendants will produce a representative set of documents for Advisory Boards on Taxotere® and breast cancer from the time period the ten bellwether plaintiffs were allegedly treated with Taxotere®, along with Advisory Board materials connected to prescribing physicians identified in the cases subject to an applicable trial schedule order, if any.

**REQUEST NO. 112:** ALL DOCUMENTS RELATING TO YOUR membership, sponsorship, funding or payment made to organizations RELATING TO breast cancer treatment, including, but not limited to, the American Breast Cancer Foundation, Susan G. Komen, National Breast Cancer Foundation, Breast Cancer Research Foundation, Breast Cancer Association, or other similar cancer organizations.

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants state that discovery in this case is just beginning and agree to further identify their support for various breast cancer foundations in supplement.

**REQUEST NO. 113:** All DOCUMENTS RELATING TO YOUR publication of articles RELATING TO TAXOTERE and the treatment of breast cancer.

**RESPONSE:** In addition to General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants object to the phrase "your publication of articles" as vague, ambiguous, and undefined as used in this Request.

Subject to and without waiving their objections, to the extent that Plaintiffs mean final study reports on clinical trials of Taxotere® and breast cancer, the U.S. Defendants refer

Plaintiffs to the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.  To the extent not included therein, the U.S. Defendants identify the TAX 316 10-year reprint and the TAX 311 final study report to be produced to Plaintiffs, subject to objections.  These studies were published as Martin, Miguel, et al. "Adjuvant docetaxel for node-positive breast cancer." *New England Journal of Medicine* 352.22 (2005): 2302-2313 and Jones, S. E., et al. "Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer." *Journal of Clinical Oncology* 23.24 (2005): 5542-5551.

**REQUEST NO. 114:** **All DOCUMENTS RELATING TO YOUR use of Medical Writing Services for the authorship of journal articles, abstracts, posters and/or other publications RELATING TO TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 113. The U.S. Defendants further object to the phrase "Medical Writing Services" as vague, ambiguous, undefined, and argumentative as used in this Request.  The U.S. Defendants cannot respond to the Request as written.

**REQUEST NO. 115:** **Video files (in video format) of all television advertisements and/or information videos (branded or unbranded), including drafts, RELATING TO TAXOTERE and/or the treatment of breast cancer.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77. The U.S. Defendants further object to the extent this Request exceeds the ESI Protocol and requests information that is unduly costly or burdensome to retrieve.

**REQUEST NO. 116:** **Audio files (in audio format) of all radio advertisements, and/or**

informational audio files, including drafts, RELATING TO TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77. The U.S. Defendants further object to the extent this Request exceeds the ESI Protocol and requests information that is unduly costly or burdensome to retrieve.

**REQUEST NO. 117:** **All DOCUMENTS showing each TAXOTERE advertisement which was aired on either television or radio, including affidavits received from the media outlets, media buyers, or YOUR advertising agencies or public relations firms.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77. The U.S. Defendants further object to the extent this Request exceeds the ESI Protocol and requests information that is unduly costly or burdensome to retrieve.  The U.S. Defendants also object to the reference to affidavits in connection with advertising, which confuses the nature of the information sought by Plaintiffs.

**REQUEST NO. 118:** **A color copy of each direct to consumer and/or direct to customer (physicians, cancer treatment facilities, distributors, insurance companies) advertisement regarding TAXOTERE and/or the treatment of cancer.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77. The U.S. Defendants further object to the extent this Request exceeds the ESI Protocol and requests information that is unduly costly or burdensome to retrieve.

**REQUEST NO. 119:** **All DOCUMENTS regarding any branded and/or unbranded website, webpage, blog, social media, twitter, YouTube or other similar media containing content created for or maintained by or on behalf of YOU regarding TAXOTERE and/or the treatment of cancer.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 70.

8312683 v5

**REQUEST NO. 120:** All DOCUMENTS RELATING TO keyword search terms and domain registrations RELATING TO the promotion of TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 100. The U.S. Defendants further object that this Request has nothing to do with whether Taxotere® caused hair loss and even if it did, whether a specific Plaintiff was sufficiently warned by her prescribing physician.  Thus, this Request is irrelevant and cannot be responded to as written.

**REQUEST NO. 121:** All DOCUMENTS RELATING TO YOUR SEO (Search Engine Optimization) strategies RELATING TO the promotion of TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 120.

**REQUEST NO. 122:** All DOCUMENTS (including screenshots) RELATING TO TAXOTERE on DEFENDANTS' sponsored, supported, edited, and/or linked websites, Facebook pages, Instagram pages, Twitter pages, social media of any kind, Wikipedia or pages on any other websites (e.g., www.cancerinfo.net, www.fightwomenscancer.com, www.cancerinfonnation.com).

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 70.

**REQUEST NO. 123:** All DOCUMENTS RELATING TO analysis of market share, projection of future sales, marketing strategies, sales targets (i.e., HEALTHCARE PROVIDERS, cancer treatment facilities, managed care, private or public business and organizations) and/or promotional plans for TAXOTERE and the treatment of breast cancer.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 124:** All DOCUMENTS RELATING TO market research regarding TAXOTERE, including HEALTHCARE PROVIDER or patient beliefs, focus groups,

63

testing of messages to **HEALTHCARE PROVIDERS** or patients, and/or any other research **RELATING TO** the use of **TAXOTERE** and the treatment of breast cancer.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 125:** All **DOCUMENTS RELATING TO** consumer market research regarding **HAIR LOSS,** including temporary and/or persistent or permanent.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 126:** All **DOCUMENTS RELATING TO** the **TAXOTERE** market share domestically and globally for each year **TAXOTERE** has been on the market.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request Nos. 77 and 88.

       Subject to and without waiving their objections, the U.S. Defendants state that from 1996-2011, Taxotere® had 100% share of the docetaxel market.  From 2011 to present, the market share varied from year to year, ranging from approximately 24 – 60% in the U.S., and sales data related to other chemotherapy products may be available from their manufacturers.

**REQUEST NO. 127:** All **DOCUMENTS RELATING TO** Winthrop's docetaxel market share domestically and globally for each year **YOU** have marketed Winthrop's docetaxel.

**RESPONSE:** Subject to and without waiving General Objections Nos. 2, 4, 5, 6, 7, and 8, from 1996-2011, Taxotere® had 100% share of the docetaxel market.  From 2011 to present, the market share for Withrop varied from year to year, ranging from approximately 28 – 25% in the U.S.

**REQUEST NO. 128:** All **DOCUMENTS RELATING TO** the annual budgets (by domestic region and globally) for the promotion, sales and/or marketing of **TAXOTERE** for each year that **TAXOTERE** has been on the market.

8312683 v5

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 129:** All DOCUMENTS RELATING TO YOUR actual expenditure for the promotion, sales and/or marketing of TAXOTERE for each year that TAXOTERE has been on the market.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 130:** All DOCUMENTS RELATING TO agreements between YOU and Winthrop regarding the manufacture, sale, marketing or distribution of TAXOTERE in its generic form (docetaxel).

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants state that Winthrop U.S. is a sanofi-aventis U.S. LLC business unit, not a stand-alone corporate entity meaning there are no documents responsive to this Request.

**REQUEST NO. 131:** All DOCUMENTS RELATING TO any state, federal or foreign investigation, action, judgment, injunction, Corporate Integrity Agreement, memorandum of understanding, and/or settlement agreements that were entered or executed in connection with the promotion of TAXOTERE.

**RESPONSE:** In addition to General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants object because this Request seeks information that is irrelevant to the alleged injury – permanent or persistent hair loss.

Subject to and without waiving their objections, the U.S. Defendants state that no such documents exist specific to Taxoere® and any "promotional" representations about hair loss. Any such documents arising from resolution of other litigation—involving wholesale prices of multiple drugs, made by multiple manufacturers, including Sanofi and its products—are irrelevant and not proportional to the needs of the case.

65

**REQUEST NO. 132:** All DOCUMENTS RELATING TO TAXOTERE that have been produced in the Qui Tam case, *U.S. ex rel. Gohil v. Sanofi Aventis U.S. Inc. et al.*, USDC ED PA Case No. 02-2964, RELATING TO THE sales and promotion of TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8. The U.S. Defendants further object to this Request as outside the scope of permissible discovery under Rule 26(b)(1). As required by Rule 34, this Request fails Rule 26(b)(1)'s scope limitation requirement that discovery *must be relevant* to any party's claim or defense. The *Gohil* litigation involves allegations of off-label use – *neither relevant nor related* to the alopecia/hair loss allegations in this MDL. The *Gohil* litigation referenced does not relate to Plaintiffs' claims by 1) relevant time period; 2) geolocation; 3) subject matter; or 4) involves products other than Taxotere®. Also, the U.S. Defendants further object to the extent that this Request seeks documents containing information related to additional products that no Plaintiff in this MDL has properly pled into this litigation. The U.S. Defendants also object to this Request for its violation of Rule 26(g)(1)(B)(iii) to the extent that the Request is unreasonable, unduly burdensome and expensive.

**REQUEST NO. 133:** All DOCUMENTS sufficient to IDENTIFY any pharmaceutical product other than TAXOTERE, containing TAXANES and/or other microtubule inhibitors (MTI) developed by YOU.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, 8, and 9. The U.S. Defendants further object as the Request explicitly involves products other than Taxotere® without any nexus to a specific case. Plaintiffs have no claims involving chemotherapy medications other than Taxotere®, let alone other taxanes or microtubule inhibitors generally and whether even marketed or indicated in breast cancer or not. To the

66

extent this Request seeks information related to Jevtana (cabazitaxel), that product is indicated for prostate cancer, not breast cancer, and thus is irrelevant.

**REQUEST NO. 134:** All DOCUMENTS RELATING TO comparisons between TAXOTERE and Jevtana (cabazitaxel).

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 133.

**REQUEST NO. 135:** All DOCUMENTS RELATING TO the assignment of any TAXOTERE patents, including but not limited to, the assignment made by Rhone-Poulenc Rorer S.A. to Aventis Pharma S.A.

**RESPONSE:** In addition to General Objections Nos. 4, 5, 7, 8, and 9 the U.S. Defendants object that whether a Taxotere® patent was assigned (or not) is irrelevant to the injury alleged in this litigation – permanent or persistent hair loss.

Subject to and without waiving their objections, the U.S. Defendants state there is no assignment other than the one referenced.

**REQUEST NO. 136:** All DOCUMENTS RELATING TO licensing agreements for TAXOTERE.

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 7, 8, and 9, the U.S. Defendants state that there are no documents responsive to this Request because there are no licensing agreements for Taxotere®.

**REQUEST NO. 137:** All applications for patents RELATING TO TAXOTERE that YOU have submitted to the United States Patent and Trademark Office.

**RESPONSE:** In addition to General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants object that patent applications for Taxotere® are irrelevant to the claims and defenses in this litigation. Patent applications or patents are otherwise publicly available to Plaintiffs.

8312683 v5

**REQUEST NO. 138:** All DOCUMENTS RELATING TO TAXOTERE that have been produced in the case filed *Bristol-Myers Squibb Company v. Rhone-Poulenc Rorer, Inc. and Rhone-Poulenc Rorer*, S.A., USDC SD NY Case Nos., 95-CV-8833, 96-CV-2346, 98-CV-356, 2002WL59429 (SDNY Jan. 16, 2002) and 2001 WL 126399 (SDNY Oct. 19, 2001).

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8. The U.S. Defendants further object to this Request as outside the scope of permissible discovery under Rule 26(b)(1). As required by Rule 34, this Request fails Rule 26(b)(1)'s scope limitation requirement that discovery *must be relevant* to any party's claim or defense. The litigation referenced involves patent issues involving a semi-synthesis of taxol– *neither relevant nor related* to the alopecia/hair loss allegations in this MDL.

**REQUEST NO. 139:** All insurance policies, excess coverage policies, or any other type of insurance coverage, including any self-insured retention policies, that may cover claims against YOU RELATING TO TAXOTERE for policy years 2004 until the present. This request also calls for the production of the policy declaration sheet.

**RESPONSE:** Subject to and without waiving General Objections Nos. 4, 5, 7, and 8, the U.S. Defendants state that they have applicable insurance, proof of which they will make available for inspection at a mutually agreeable time and place.

**REQUEST NO. 140:** All of YOUR annual reports from 1996 to the present.

**RESPONSE:** In addition to General Objections Nos. 4, 5, 6, 7, and 8, the U.S. Defendants object that this Request is irrelevant to the extent it seeks information without any nexus to Plaintiffs' claims.

Subject to and without waiving their objections, the U.S. Defendants will produce the relevant 20-F filings for Sanofi for inspection at a time to be agreed upon by the parties.

8312683 v5

**REQUEST NO. 141:** All of YOUR Form 20-F reports from 1996 to the present.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No.140.

**REQUEST NO. 142:** All DOCUMENTS RELATING TO YOUR past and/or present market share and/or sales of TAXOTERE in the United States.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 126.

**REQUEST NO. 143:** All DOCUMENTS RELATING TO YOUR projections of future market share and/or sales of TAXOTERE in the United States.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 126. The U.S. Defendants further object that projections of future market share and/or sales of Taxotere® in the United States is irrelevant.

**REQUEST NO. 144:** All DOCUMENTS RELATING TO YOUR sales of TAXOTERE in the United States compared to the worldwide sales of TAXOTERE for each year from 1996 to the present.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 126.

**REQUEST NO. 145:** All DOCUMENTS RELATING TO YOUR market share of TAXOTERE in the United States compared to other chemotherapy products for each year from 1996 to the present.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 126. The U.S. Defendants further object to the Request as it seeks information related to chemotherapy products not at issue in this litigation.

There are myriad chemotherapy products on the market. Based on just a small sample, there are a various chemotherapy medicines indicated in breast cancer (*e.g.*, cyclophosphamide, docetaxel, doxorubicin, fluorouracil, gemcitabine, methotrexate, paclitaxel, and thiotepa) and

other chemotherapy drugs for multiple other types of cancer (*e.g.*, ovarian cancer, cervical cancer, prostate cancer, lung cancer, gastric cancer, head and neck cancer, leukemia or myeloma, lymphoma, thyroid cancer, pancreatic cancer, bladder cancer, bone cancer, and testicular cancer). To require the U.S. Defendants to compare Taxotere® to all "other chemotherapy products" for the last 21 years is unduly burdensome and unreasonable.

**REQUEST NO. 146:** **All DOCUMENTS RELATING TO YOUR annual sales revenue derived from TAXOTERE in the United States broken down by State for each year from 1996 to the present.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 126 and General Objections Nos. 4, 5, 7, and 8.  A plaintiff may not recover punitive or exemplary damages in products liability lawsuits in Louisiana, among others.  There has been no showing that this information should be made available at this stage of the litigation.  Said information is only relevant after a prima facie case for punitive damages has been made.  Thus, the U.S. Defendants further object that annual profits derived from Taxotere® in the United States from 1996 to present are irrelevant to the claims and defenses in this litigation.

**REQUEST NO. 147:** **All DOCUMENTS RELATING TO YOUR annual profits derived from TAXOTERE in the United States, annually from 1996 to present.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 148:** **All DOCUMENTS RELATING TO YOUR annual profits derived from TAXOTERE worldwide, annually from 1996 to present.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 149:** **All DOCUMENTS RELATING TO what percentage of YOUR gross revenues was derived from TAXOTERE United States sales, annually, from 1996 to**

present.

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 150:** **All DOCUMENTS RELATING TO what percentage of YOUR net income was derived from TAXOTERE sales in the United States annually from 1996 to present.**

**RESPONSE:** The U.S. Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 151:** **All DOCUMENTS RELATING TO YOUR actual expenditures on an annual basis for design, research and development of TAXOTERE to obtain market approval by FDA in the United States.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8. The U.S. Defendants further object that its actual expenditures on an annual basis for design, research and development of Taxotere® to obtain market approval by FDA in the United States relates to expenses, albeit substantial, before 1996 and long before the pertinent time period in these cases. To ascertain budgets from those periods would be unduly burdensome.

**REQUEST NO. 152:** **All DOCUMENTS RELATING TO YOUR actual expenditures on an annual basis from 1996 to present for monitoring post-market adverse events and pharmacovigilence.**

**RESPONSE:** The U.S. Defendants incorporate by reference their objections to Request No. 151. The same objections are implicated with respect to actual expenditures on an annual basis for monitoring post-market adverse events and pharmacovigilance expenses.

**REQUEST NO. 153:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO the content and format of labeling of YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, 8, and 11.  The U.S. Defendants further object that this Request explicitly seeks documents related to prescription drug products not at issue in this litigation and that those documents are irrelevant.

Subject to and without waiving their objections, the U.S. Defendants state that myriad statutes and regulations mandate the content and format of labeling prescription drug products in the United States, including Taxotere®.  At all times, Taxotere®'s labeling was the result of extensive discussions with the FDA.  The U.S. Defendants incorporate by reference their response to Request No. 26 and agree to produce representative standard operating procedures related to Taxotere® labeling.

**REQUEST NO. 154:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance for Adverse Event collection, analysis, follow-up, and reporting for YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, 8, and 11.  The U.S. Defendants further object that this Request explicitly seeks documents related to prescription drug products not at issue in this litigation and that those documents are irrelevant.

Subject to and without waiving their objections, the U.S. Defendants state that myriad statutes and regulations mandate Adverse Event collection, analysis, follow-up, and reporting for prescription drug products in the United States, including Taxotere®.  The U.S. Defendants incorporate by reference their response to Request No. 142 and agree to produce representative standard operating procedures related to Adverse Event monitoring and Taxotere®.

**REQUEST NO. 155:** **All DOCUMENTS reflecting standard operating procedures, policies**

72

and guidance RELATING TO Dear HEALTHCARE PROVIDER or Health Advisory Letters for YOUR prescription drug products, including TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference their responses to Request Nos. 49-50.  The U.S. Defendants further object that this Request explicitly seeks documents related to prescription drug products not at issue in this litigation and that those documents are irrelevant.

**REQUEST NO. 156:** All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO requests for information from HEALTHCARE PROVIDERS (e.g., Physician Information Requests — (Wits)) and the public about YOUR prescription drug products, including TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, 8, and 11.

Subject to and without waiving their objections, the U.S. Defendants will produce representative standard operating procedures relating to requests for information from Healthcare Providers and the public about Taxotere®.

**REQUEST NO. 157:** All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO COMMUNICATIONS by YOUR employees with HEALTHCARE PROVIDERS or patients about YOUR prescription drug products, including TAXOTERE.

**RESPONSE:** The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, 8, and 11.

Subject to and without waiving their objections, the U.S. Defendants agree to produce representative standard operating procedures relating to communications by the U.S. Defendants' employees with healthcare providers or patients about Taxotere®.

73

**REQUEST NO. 158:** YOUR Ethics Codes from 1996 to the present.

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Request No. 86.

**REQUEST NO. 159:** All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO corporate compliance in YOUR prescription drugs from 1996 to the present.

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, 8, and 11.   The U.S. Defendants further object that the term "corporate compliance" lacks any context in this Request.   The U.S. Defendants cannot respond to the Request as written.

**REQUEST NO. 160:** All DOCUMENTS sufficient to demonstrate the coordination of operations between or among DEFENDANTS.

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8.  The U.S. Defendants further object that the term "coordination of operations" is vague, ambiguous, and undefined as used in this Request.  The U.S. Defendants cannot respond to the Request as written, but generally refer Plaintiffs to their jurisdictional-related discovery responses, which outline the corporate organizational formalities of the various Defendants.

**REQUEST NO. 161:** All DOCUMENTS sufficient to demonstrate YOUR organization and structure of the departments and personnel involved with TAXOTERE from 1985 to present.

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 6, 7, and 8.  The U.S. Defendants further object that the information requested for a period of 32 years, including 13 years before Taxotere® was approved for use in the United States, is unreasonable and unduly burdensome.  Terms like "organization," "structure," and "involved in" are also exceedingly vague as used in this Request.  The U.S. Defendants cannot respond to the

Request as written.

**REQUEST NO. 162:** **For each year in which YOU designed, tested, manufactured, sold, marketed, licensed or distributed TAXOTERE, produce all charts or other DOCUMENTS RELATING TO:**

      a.      General corporate organizational structure;

      b.      Business unit organizational structure;

      c.      Corporate compliance organizational structure;

      d.      Pharmacovigilance and safety organizational structure;

      e.      Sales department organizational structure;

      f.      Marketing department organizational structure;

      g.      Market research department organizational structure;

      h.      Distribution department organizational structure;

      i.      Research and development department organizational structure;

      j.      Medical department organizational structure;

      k.      Regulatory department organizational structure; and

      l.      Pharmaceutical drug labeling department organizational structure.

**RESPONSE**: The U.S. Defendants incorporate by reference their response to Request No. 161.

Subject to and without waiving their objections, the U.S. Defendants will endeavor to produce a representative set of organizational charts from 1996-present.

**REQUEST NO. 163:** **ALL DOCUMENTS RELATING TO litigation holds concerning TAXOTERE, whether instituted for purposes of this litigation or prior litigation. If a litigation hold was initiated pursuant to prior litigation RELATING TO TAXOTERE please state if, and if so when, any such hold was lifted.**

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8.  The U.S. Defendants further object to this Request as discovery on discovery.  *See generally E.E.O.C. v. Boeing Co.*, No. 05-cv-03034, 2007 WL 1146446, *3 (D. Ariz. Apr. 18, 2007) (denying discovery about discovery in 30(b)(6) deposition notice, which was not related to any claim or defense in the case and could not satisfy relevancy standard); *Ingersoll v. Farmland Foods, Inc.*, No. 10-cv-6046, 2011 WL 1131129, *16 (W.D. Mo. Mar. 28, 2011) (denying discovery regarding litigation holds and preservation efforts as "entirely premature" where no facts implicated the issue); *Hubbard v. Potter*, 247 F.R.D. 27 (D.D.C. 2008) (precluding meta-discovery deposition where plaintiffs failed to make a sufficient showing that the documents produced justified discovery about discovery).  The U.S. Defendants cannot respond to the Request as written.

**REQUEST NO. 164:** **YOUR document retention policies from 1996 to the present, including all policies RELATING TO the assimilation of information from acquired or merged companies.**

**RESPONSE**: The U.S. Defendants incorporate by reference General Objections Nos. 4, 5, 7, and 8.  The U.S. Defendants further object to this request as discovery on discovery and as seeking irrelevant information on corporate acquisitions more than two decades ago, irrespective of any-then existing discovery obligations.

8312683 v5

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi US Services Inc.*

77

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2017, I served the foregoing on Plaintiffs' Liaison Counsel.

/s/ *Douglas J. Moore*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | : | |
| IN RE: TAXOTERE (DOCETAXEL) | : | MDL NO. 2740 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION "N" (5) |
| | : | |
| THIS DOCUMENT RELATES TO: | : | HON. KURT D. ENGELHARDT |
| | : | |
| ALL CASES | : | |
| | : | |
| | : | |

**SANOFI AND AVENTIS PHARMA S.A.'S OBJECTIONS AND RESPONSES TO**
**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Sanofi and

Aventis Pharma S.A. (collectively, the "French Defendants"), provide the following Objections

and Responses to Plaintiffs' First Requests for Production.  As discovery in this matter is

ongoing, the French Defendants reserve the right to amend, supplement, modify, or change their

Responses.[1]

**PRELIMINARY STATEMENT**

This discovery arises from cases consolidated for coordinated pretrial proceedings

pursuant to 28 U.S.C. § 1407, before Honorable Judge Kurt D. Engelhardt in the United States

District Court for the Eastern District of Louisiana, *In re Taxotere (Docetaxel) Products Liability*

*Litigation*.  The product liability action involves an FDA-approved prescription chemotherapy

medication known as "Taxotere®" and various other FDA-approved "docetaxel" products

(collectively "docetaxel").   Plaintiffs allege that they were prescribed docetaxel by their

---

[1] Any response the French Defendants make to such discovery does not waive Defendants' right to assert additional objections as necessary.  The French Defendants, for example, do not waive any objections regarding the service or scope of discovery served on them as foreign entities subject to the Hague Convention and other applicable rules, statutes, and procedures.   Nor do Defendants waive their objections to, or consent, to personal jurisdiction by service of objections to these requests.

physicians to treat breast cancer and that they subsequently sustained persistent hair loss.[2] Plaintiffs do not allege that docetaxel was ineffective in their treatment of breast cancer. Nor do they claim that Defendants failed to disclose the risk of hair loss, which is a well-known and common side effect of docetaxel. As Plaintiffs acknowledge, Defendants have included multiple warnings about alopecia in the docetaxel labeling at all pertinent times. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 25, 2017), ECF No. 689 at ¶¶ 46, 60, 72, 83, 93, 105, 128. Plaintiffs allege only that they were not told that hair loss might persist.

*Objections to Foreign Discovery.* On April 28, 2017, Sanofi and Aventis Pharma S.A. filed a Motion to Dismiss Plaintiffs' Master Complaint for Lack of Personal Jurisdiction. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. April 28, 2017) (Doc. 346). The French Defendants state that they are not U.S. companies, do not conduct business in the United States, and have not engaged in the research and development, testing, manufacturing, labeling, advertising, marketing, promoting, selling or distributing of Taxotere® anywhere in the United States. *Id.* In addition, the French Defendants contest service of Plaintiffs' discovery requests, as Plaintiffs have failed to serve these requests pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. June 15, 2017) (Doc. 542). Defendants also object that producing documents located outside the United States, without complying with the French Blocking Statute and Data Privacy Act, will expose the French Defendants to both civil and criminal liability. *See id.* Finally, the French Defendants restate their position that documents relevant to Plaintiffs First Requests for Production, if any, may be readily produced through

---

[2] Plaintiffs define "permanent" alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." *See* First Amended Master Long Form Complaint and Demand for Jury Trial, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2:16-md-02740-KDE-MBN (E.D. La. July 25, 2017), ECF No. 689 at ¶ 180.

sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively, the "U.S. Defendants"). Plaintiffs and Defendants have exchanged responses to these objections through meet and confers, various briefing, and appearances before the Court.  Defendants note, however, that their objections and briefing remain outstanding with Judge Engelhardt.

   ***Stipulated ESI Protocol, Stipulated Protective Order, and General Discovery Protocol***. Plaintiffs, Co-Defendants, and the U.S. Defendants have entered into various protocols governing various aspects of the scope, format, and manner of production (*See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 6, 2017), ECF No. 611 ("ESI Protocol")) and trade secrets; other proprietary and/or confidential research, development, or commercial information; or private personal data or health information.  *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. July 6, 2017), ECF No. 612 ("Protective Order").   In addition, Plaintiffs, Co-Defendants, and the U.S. Defendants are in the process of finalizing a General Discovery Protocol.  Given the absence of personal jurisdiction and the unique foreign legal concerns implicated by such discovery, the specific considerations of the French Defendants have not been taken into account in these Orders, which would need to be revisited should the Court deny its Motion for Protective Order and/or Motion to Dismiss for Lack of Personal Jurisdiction.  The French Defendants do, however, object to these Requests to the extent that they are inconsistent with or beyond the scope of the ESI Protocol, Protective Order, and/or General Discovery Protocol to be entered into by the Court.

   The French Defendants further object and respond as follows:

### <u>GENERAL OBJECTIONS AND RESERVATION OF RIGHTS</u>

   The French Defendants hereby assert the following General Objections and Reservation of Rights ("General Objections"), which are incorporated in and made a part of each response as

set forth below:

1.      The French Defendants object that these requests are unenforceable in the absence of personal jurisdiction over them in these proceedings, and by virtue of Plaintiffs' failure to properly serve them under the Hague Convention.   As set forth in the French Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, the French Defendants are not U.S. companies, do not conduct business in the United States, and have not engaged in the research and development, testing, manufacturing, labeling, advertising, marketing, promoting, selling or distributing of Taxotere® anywhere in the United States.   *See* Sanofi and Aventis Pharma S.A.'s Memorandum in Support of Their Motion to Dismiss For Lack of Personal Jurisdiction (Doc. 346-1) at 7-9.   In addition, Plaintiffs' Requests were served on counsel, rather than pursuant to the terms of the Hague Convention.   Such service is ineffective, and as a result, Defendants decline to accept service of Plaintiffs' Requests.

2.      The French Defendants object to the extent these requests call for information or documents located in foreign countries without complying with legal prerequisites to production from such foreign jurisdictions, in particular, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. Pursuant to the Hague Convention, discovery may be obtained by a party through two primary mechanisms. The first method is a Letter of Request sent by a court in the requesting state.   23 U.S.T. 2555, Art. 1.   The second mechanism authorizes diplomatic officers, consular agents, or appointed commissioners of the requesting state to collect evidence.   *See* 23 U.S.T. 2555, Arts. 15-16, 23.

3.      The French Defendants object to the extent these requests call for information or documents located in foreign countries without complying with legal prerequisites to production from such foreign jurisdictions, in particular, French Statute No. 68-678 of July 26, 1968 (the

"French Blocking Statute").   The French Blocking Statute works in tandem with the Hague Convention, prohibiting the disclosure in foreign judicial proceedings of documents or information of an economic, commercial, industrial, financial or technical nature except in accordance with French domestic law or international treaties and agreements.  *See* Law No. 80-538 of July 16, 1980, Art. 1 *bis.*  Article 1A of the French Blocking Statute, French Penal Code No. 80-538, makes it a ***crime*** "for any person to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith."  *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 526 n.6 (1987) (quoting French Blocking Statute). In light of the competing interests of the nations whose laws are in conflict, the hardship of compliance on the French Defendants, the relative importance of the documents requested with information readily available from parties within the United States, and the United States Defendants' good faith willingness to provide responsive materials following a reasonable search, any discovery of the French Defendants should be made in compliance with the foregoing laws.  Otherwise, complying with this Request would pose a material risk of criminal liability.   Any violation of the French Blocking Statute is a criminal offense punishable by imprisonment of up to six months and a substantial monetary fine.  *Id*

4.      The French Defendants objects to each Request to the extent it calls for information or documents located in foreign countries without complying with legal prerequisites to production from such foreign jurisdictions, in particular, the European Data Protection Directive 95/46/EC (the "European Directive") and French Law No. 78–17 of January 6, 1978 on Information Technology, Data Files and Civil Liberties, governing the processing and

transfer of personal data outside France.  As set forth in more detail in Defendants' Motion for Protective Order, Compliance with the FDPA is mandatory even if discovery is conducted through the Hague Convention.  Similarly, the French Defendants object to each Request to the extent that it calls for production of documents disclosure of which might violate the Health Insurance Portability and Accountability Act ("HIPAA"), as well as other federal statutes and FDA regulations.

5.     The French Defendants object that Plaintiffs' 164 document requests represent a *prima facie* violation of Rule 26(g)(1)(B), which mandates a proportionality-like standard of care for *all* parties requesting and producing discovery to certify that all discovery disclosures, requests, responses, and objections do not "needlessly increase the cost of litigation" and that requests are "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."  Furthermore, under Rule 26(b)(1), discovery requests must be both "relevant to any party's claim or defense" and "proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1) (emphasis added).

6.     The French Defendants object based on relevance that the requested information should be limited to conduct occurring within the United States, which is where Plaintiffs' allege they were diagnosed, treated, and allegedly injured with Taxotere®.

7.     The French Defendants object to each Request to the extent it seeks information that is inconsistent with or enlarges the scope of permissible discovery under applicable law.

8.     The French Defendants object to each Request to the extent it is overbroad, burdensome, and oppressive, including but not limited to the extent they seek "any and all" information that refers, relates to, or concerns a particular Request.  Plaintiffs' request for "any

6

and all" information on an issue is unduly burdensome, and the French Defendants' discovery obligations are limited by principles of reasonableness and proportionality.

9.      The French Defendants object to each Request to the extent it calls for identification of documents or information subject to or protected by the attorney-client privilege, the work product doctrine, any other applicable privileges or doctrines limiting discovery, and any applicable law or regulations.  The French Defendants do not intend to waive, by these responses or by production of documents, any privileges or claims of confidentiality associated with information or documents that are produced in this action.

10.     The French Defendants object to each Request to the extent it seeks documents or information that is a matter of public record and/or is as easily accessible to Plaintiffs as they are to the French Defendants.

11.     The French Defendants object to each Request to the extent it seeks information or documents not within the scope of permissible discovery under the rules because it is: (1) not relevant to the claims and defense of a party, and/or (2) not proportional to the needs of the case.

12.     The French Defendants object to each Request to the extent it is not limited in time or scope, specifically, to the period of time subsequent to the date of manufacture and sale of the product allegedly at issue, and subsequent to the date Plaintiffs allege that they were injured.

13.     Much of the information sought herein is highly confidential and proprietary and consists of valuable commercial information, trade secrets, or business confidential materials, the disclosure of which would be highly prejudicial to the French Defendants and the value of which cannot be calculated as economic damages.  The French Defendants object to each Request to the extent it seeks information or documents that are protected as trade secrets by applicable law

or include proprietary or confidential commercial information.  To the extent such information or documents are discoverable, production will be made pursuant to the protective order of confidentiality applicable to this action.

14.     The French Defendants object to each Request to the extent that it calls for production of documents disclosure of which might violate the Health Insurance Portability and Accountability Act ("HIPAA"), as well as other federal statutes and FDA regulations.

15.     The French Defendants object to each Request to the extent that it seeks documents pertaining to products other than Taxotere® on the grounds that such information is: (1) not relevant to the claims and defense of a party, and/or (2) not proportional to the needs of the case. The French Defendants also object to each Request to the extent that it seeks information regarding products that the French Defendants did not manufacture.

16.     The French Defendants do not waive or intend to waive, by reason of their responses to Plaintiffs' Requests, their right to:

    1.     revise, amend or supplement these responses;

    2.     object on any ground to the use of information or documents produced in response to Requests for any purpose, in whole or in part, in this or any other proceeding, action, or matter;

    3.     object on any grounds, at any time, to other discovery procedures or requests; and

    4.     object on the grounds of admissibility of any information or documents produced in response to following Requests.

**OBJECTIONS TO DEFINITIONS**

1.     The French Defendants object to any "definition" that attempts to expand or alter their obligations in responding to discovery.

2.     The French Defendants object to the definitions of the terms "You" and "Defendant" as referring to "Sanofi-Aventis U.S. LLC, Sanofi S.A., Sanofi U.S. Services Inc.,

and/or Aventis Pharma S.A. as well as all affiliates, partners, directors, officers, employees, servants, agents, third-party contractors working on your behalf." The French Defendants also object that these terms also include "all predecessor business entities . . . as well as the predecessor's affiliates, partners, directors, officers, employees, servants, agents, and third-party contractors acting on the predecessor's behalf." Accordingly, where the terms, "You" or "Defendant" are used in these Requests, the French Defendants will limit their responses to the party-Defendants, entities Sanofi, Aventis Pharma S.A., sanofi-aventis U.S. LLC, and Sanofi US Services Inc. consistent with the applicable law. In addition, the French Defendants object to this definition to the extent that it would call for the French Defendants to provide information not within the knowledge of the French Defendants. The French Defendants object that the definition is unduly burdensome in purporting to require the French Defendants to inquire of all of the individuals encompassed in the definitions in answering these Requests. In addition, the French Defendants object to this definition to the extent that it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

3.     The French Defendants object to the definition of the term "Taxotere" which "refers to, as broadly as possible, docetaxel, a chemotherapy agent used in the treatment of cancer" to the extent that it is unclear what "as broadly as possible" means and to the extent that Plaintiffs intend to include any "chemotherapy agent used in the treatment of cancer" as opposed to Taxotere® for the treatment of breast cancer specifically. The French Defendants object that products other than Taxotere® are: (1) not relevant to the claims and defense of a party, and/or (2) not proportional to the needs of the case. The French Defendants also object to this definition to the extent that it seeks information regarding products that the French Defendants did not

9

manufacture.

4.      The French Defendants object to the definition of the term "Taxane" which "refers to any chemotherapy agent that can be included in the class of drugs known and referred to as taxanes, including, but not limited to, Taxol (paclitaxel) and docetaxel" as being overly broad to the extent it leaves Defendants to guess what other taxanes Plaintiffs intend to include in their Requests ("that can be included").  Defendants also object to the definition's inclusion of products other than Taxotere®.  Products other than Taxotere® are: (1) not relevant to the claims and defense of a party, and/or (2) not proportional to the needs of the case.  The French Defendants also object to this definition to the extent that it seeks information regarding products that the French Defendants did not manufacture.

5.      The French Defendants object to the definition of the term "Hair Loss" which "refers to alopecia, any and all types of loss of hair, whether temporary or permanent, on any part of the body, and any terms used to identify, describe or quantify the diminution, impairment or loss of hair." This definition is vague and ambiguous, and seemingly involves alopecia attributable to other causes besides chemotherapy.  It also explicitly includes temporary hair loss (hair loss is a common, well-known side effect of chemotherapy treatment) and labeled terms not cognizable as a legal injury.  It is also far from clear what other "terms used to identify, describe or quantify the diminution, impairment or loss of hair" Plaintiffs intend to include in their Requests.  Plaintiffs here also do not define what they mean by the term "permanent," especially when, elsewhere, they seemingly take the position that one never knows the nature, extent, and transience of hair loss.   Plaintiffs must be obligated to define their alleged injury more concretely.

6.      The French Defendants object to the definition of the term "Study" which "refers

to any research, analysis or examination, inspection or investigation (including clinical investigations), or other activity by which data or information is acquired for the purpose of analysis or understanding," and "includes studies at all stages, including, but not limited to, proposed, ongoing, completed or withdrawn studies regardless of whether the studies took place within or outside the United States," and "includes information and data acquired from studies regardless of the stated or original purpose of the studies," and finally "includes, but is not limited to, all clinical trials, observational studies, meta analyses, survey studies, case reports, market research, or other epidemiological studies by whatever name known" as unduly burdensome and overbroad.  This definition fails to reasonably identify the documents sought by type or category, lacks relevant geographic or temporal limitation, and explicitly includes studies (or "examinations" or "inspections") never actually completed.  The French Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

7.     The French Defendants object to the definition of the term "FDA" which "refers to the United States Department of Health & Human Services, United States Food & Drug Administration, any Committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof," to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. The term "FDA," for example, would never reasonably implicate a purported "agent" of a subcommittee or any member of FDA's outside advisory committees, nor does such definition allow the French Defendants to identify responsive documents.

8.     The French Defendants object to the definition of the term "Foreign Regulatory

11

Agency" which "refers to any organization, including regulatory bodies or authorities, in any country (or other jurisdictional entity such as the European Union) other than the United States that regulates prescription drugs such as TAXOTERE" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. The French Defendants further object that conduct occurring outside the United States, which is *not* where Plaintiffs' alleged they were diagnosed, treated, and allegedly injured with Taxotere® is not relevant to this litigation.

9.     The French Defendants object to the definition of the term "Document" which is defined as "every original, draft, and duplicate of any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form as those terms are defined and used in Rule 34 of the Federal Rules of Civil Procedure" as being overly broad to the extent that the definition is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules, and to the extent that the definitions would require the French Defendants to extract or recover data that is inaccessible or would require extraordinary costs and efforts to retrieve. The French Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection. In addition, the French Defendants reserve the right to produce documents as they are kept in the usual course of business, notwithstanding these definitions. Moreover, documents will be produced according to the ESI Protocol, which dictates various aspects of the scope,

12

format, and manner of production.

10.     The French Defendants object to the definition of the term "Communication" which is defined as "any oral, written, spoken, or electronic transmission of information including meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, presentations or any other exchange of information within YOUR organization, or between YOU and any other PERSON, representative, or entity" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law.  The French Defendants also object to the definition to the extent it would require the French Defendants to extract or recover electronic or magnetic data that is inaccessible or would require extraordinary costs and efforts to retrieve.  The French Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  Moreover, documents will be produced according to the ESI Protocol, which dictates various aspects of the scope, format, and manner of production.

11.     The French Defendants object to the definition of the terms "Relating to," "Relate to," "Relating, "Referring to," "Refer to," "Regarding," "Concerning," or "Concern" which are defined as "evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, referring to in any way or manner, or in any way logically or factually connecting with the matter described in the request or paragraph or these demands, including DOCUMENTS attached to or used in the preparation of or concerning the preparation of the DOCUMENTS" to the extent they seek discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by

applicable law, fail to reasonably identify the documents sought by type and category, and seek information tangentially implicating subjects without regard to relevance and proportionality.

12.     The French Defendants object to the definition of the terms "Identify" or "Identity" which are defined as "the person's or entity's full name, present or last known address, telephone numbers, and email addresses. When referring to a natural person, the present or last known place of employment should also be provided. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person" as being overly broad to the extent that the definition is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules, and to the extent that the definition would require the French Defendants to extract or recover data that is inaccessible or would require extraordinary costs and efforts to retrieve.   The French Defendants further object that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

13.     The French Defendants object to the definition of the term "Healthcare Provider(s)" to mean "any physician or other individual healthcare provider, health care facility, clinic, hospital or hospital pharmacy" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law.   Moreover, any definition of healthcare provider should be limited to a particular Plaintiffs' specific treating physician instead of encompassing any healthcare provider generally.

14.     The French Defendants object to the definition of the term "Person" which is defined as "any natural person, as well as any business, corporate, legal, or governmental entity

or association," to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law.  In addition, the French Defendants object to this definition to the extent that it would call for French Defendants to provide information not within the knowledge of the French Defendants.  The French Defendants object that the definition is unduly burdensome in purporting to require the French Defendants to inquire of all encompassed in the definitions in answering these Requests.  In addition, the French Defendants object to this definition to the extent that it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

15.     The French Defendants object to the use of the singular including the plural and vice versa as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

16.     The French Defendants object to the definition of the terms "and" and "or" as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

17.     The French Defendants object to the "Relevant Time Period" being defined as "January 1, 1989 to the present," as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.  The defined "Relevant Time Period" extends nearly 30 years and is unreasonable.  Apart from labeling, clinical trials, and regulatory files, document review and production should be limited to documents from the period beginning 48 months

before the earliest Taxotere® or Docetaxel treatment date implicated by the applicable trial scheduling order, up to and including the date of the latest Taxotere® or Docetaxel treatment for the Plaintiff identified in, or subject to, the applicable trial scheduling order.  Document review and production could be supplemented if and when subsequent trial scheduling orders implicate earlier or later treatment dates.

## OBJECTIONS TO INSTRUCTIONS

1.      The French Defendants object to Instruction No. 1 to the extent that it purports to require them to inquire of its "employees, representatives, agents, and attorneys."  The instruction renders these requests overly broad and unduly burdensome.  The French Defendants also object to the extent that this instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  As indicated above, where the terms, "You" and "Defendant," are used in these Requests, the French Defendants will limit their responses to the party-Defendants consistent with the applicable law.

2.      The French Defendants object to Instruction No. 2, which purports to require explanation of any inabilities to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

3.      The French Defendants object to Instruction No. 3, which purports to require a continuing obligation to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

4.      The French Defendants object to Instruction No. 4, which purports to require

16

production of documents outside the so-called "Relevant Time Period," to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

5.      The French Defendants object to Instruction No. 5 to the extent that it purports to require them to identify documents withheld on the grounds of privilege.  The instruction renders these requests overly broad and unduly burdensome.  The French Defendants also object to the extent that this instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.  To the extent that Plaintiffs' Instruction is inconsistent with or beyond the scope of the ESI Protocol, the French Defendants object and defer to the ESI Protocol.

6.      The French Defendants object to Instruction No. 6 which purports to require explanation of any inability to produce a document in full and "the reasons for YOUR inability to produce the remainder and the approximate date when YOU expect to produce such DOCUMENTS," to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.  To the extent that Plaintiffs' Instruction is inconsistent with or beyond the scope of the ESI Protocol, the French Defendants object and defer to the ESI Protocol.

7.      The French Defendants object to Instruction No. 7 as duplicative of the ESI Protocol and Protective Order, and therefore, unecessary.

8.      The French Defendants object to Instruction No. 8, which purports to dictate the interpretation of headings, when there are none.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**     **INDs, NDAs, and SNDAs for TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 2:**   **YOUR FDA regulatory file RELATING TO TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 3:**   **All DOCUMENTS that evidence COMMUNICATIONS between YOU and FDA RELATING TO TAXOTERE.  Include in YOUR production, and without limitation, the following:**

      a.      YOUR COMMUNICATION log with FDA;

      b.      All DOCUMENTS evidencing COMMUNICATIONS (whether formal or informal) from FDA to YOU concerning TAXOTERE, whether from the Center for Drug Evaluation and Research (CDER), Office of Prescription Drug Promotion (OPDP), formerly known as the Division of Drug Marketing and Communication (DDMAC), an advisory committee, or otherwise, concerning the review of any NDA, SNDA, marketing materials (proposed, approved, or published), data or other materials RELATING TO TAXOTERE.

      c.      YOUR response to any request for information, data or response, RELATING TO COMMUNICATIONS IDENTIFIED in sub-paragraph (b) above;

      d.      All DOCUMENTS evidencing a complete distribution list of all PERSONS copied on any COMMUNICATIONS identified in sub-paragraph (b) as well as PERSONS consulted to contribute to any response pursuant to sub-paragraph (c) above.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4.  The French Defendants further state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public

19

availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 4:** **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, the STUDY protocols, including but not limited to informed consent forms, RELATING TO TAXOTERE, regardless of whether the STUDY was ever completed or whether human patients were ever enrolled.**

**RESPONSE:** The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including clinical studies completed on Taxotere® and breast cancer. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 5:** **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all applications for approval to an Institutional Review Board (IRB) RELATING TO TAXOTERE.**

**RESPONSE:** The French Defendants incorporate by reference their objections to Request No. 4.

**REQUEST NO. 6:** **For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all responses by the Institutional Review Board (IRB) to the STUDY applications made by YOU RELATING TO TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to Request No. 4.

**REQUEST NO. 7:**   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all STUDY reports and supporting data sets RELATING TO TAXOTERE.

**RESPONSE:**   The French Defendants incorporate by reference their objections to Request No. 4.

**REQUEST NO 8:**   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, the clinical investigator manual or brochure or similar DOCUMENT that provides instruction to study centers regarding the collection of clinical and non-clinical data.

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 4.

**REQUEST NO. 9:**   For all preclinical and clinical STUDIES proposed, conducted, funded or supported by YOU, all investigator reports RELATING TO TAXOTERE.

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 4.

**REQUEST NO. 10:**  All DOCUMENTS RELATING TO investigator initiated research applications or requests RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French

Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.  Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 10.

**REQUEST NO. 11:  All DOCUMENTS RELATING TO changes to the formulation of taxol.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants object that any changes to the formulation of Taxol are not relevant to the claims in this litigation, because Plaintiffs do not allege that Taxotere® should have been designed differently or that Plaintiffs would have survived breast cancer or suffered fewer or different side effects if they were treated with Taxol instead of Taxotere®.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 12:  All DOCUMENTS RELATING TO changes to the formulation of TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French

Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the Investigational New Drug Application for RP 56976 Injection, the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg, and the Supplemental New Drug Applications for Taxotere®.   The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 13: All DOCUMENTS RELATING TO the solvent(s) utilized in TAXOTERE solutions.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 12.

**REQUEST NO. 14: All DOCUMENTS IDENTIFYING clinical research companies, organizations, and/or individuals YOU used to STUDY TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 4.

**REQUEST NO. 15: All DOCUMENTS RELATING TO FDA's rejection and/or request for supplementation or further study of any NDA or SNDA RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 1.

**REQUEST NO. 16: All Periodic Safety Update Reports (PSURs) RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal

23

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including PSURs on Taxotere®.   The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 17:  All Periodic adverse drug experience reports (PADERs) RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including PADERs on Taxotere®.   The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 18:  All Periodic Benefit-Risk Evaluation Reports (PBRERs) RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state

24

that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including PBRERs on Taxotere®.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 19:  All internal COMMUNICATIONS RELATING TO PSUR, PADER, and PBRER submissions for TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Requests No. 16-18.

**REQUEST NO. 20:  All DOCUMENTS submitted by YOU to National Cancer Institute (NCI) in support of YOUR application for a Cooperative Research and Development Application (CRADA) RELATING TO the technology transfer of the taxol molecule.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 20.

**REQUEST NO. 21:  All DOCUMENTS RELATING TO any comparison of the efficacy between TAXOTERE and other chemotherapy medicines, including, but not limited to, the**

25

chemotherapy medicines identified in the Plaintiff Fact Sheet in this MDL in Section V.11.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 21.

**REQUEST NO. 22:** **All DOCUMENTS that support YOUR contention that the chemotherapy medicines identified in the Plaintiff Fact Sheet in this MDL in Section V.11 are associated with HAIR LOSS.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 23:**  **All DOCUMENTS RELATING TO TAXOTERE efficacy compared to Taxol (paclitaxel) efficacy.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal

26

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 23.

**REQUEST NO. 24:   All DOCUMENTS RELATING TO the following studies:**

   e.   Joseph A. Sparano et al., *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, 358 New Eng. J. Med. 1663, 1663-1671 (2008), *available at* http://www.nejm.org/doi/ful1/10.1056/nejmoa0707056#t=article

   f.   Wei-Xiang Qi, et al., *Paclitaxel-based Versus Docetaxel-based Regimens in Metastatic Breast Cancer: A Systemic Review and Meta-analysis of Randomized Controlled Trials*, Curr. Med. Res. Opin. Volume 29 Issue 2:117-125 (2013), *available at* http://dx.doi.org/10.1185/03007995.2012.756393

   g.   Jones, S.E., et al., *Randomized Phase III Study of Docetaxel Compared With Paclitaxel in Metastatic Breast Cancer.*, J.Clin.Oncol. 2005, 23(24):5542-51.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the relevant clinical study report for the Jones article.   The French Defendants reserve their right to assert other legal objections to

27

this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 25:** **All DOCUMENTS RELATING TO any inquiries or investigations by governmental or regulatory organizations within the United States (either state or federal) RELATING TO TAXOTERE and the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 26:** **All labels, including package inserts, user guides and patient information, for TAXOTERE approved by FDA.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants note that the U.S. Defendants already produced labeling for Taxotere® as Production #1, Sanofi_000001 – Sanofi _ 001168.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion

for Protective Order.

**REQUEST NO. 27:  All drafts of labels for TAXOTERE, whether submitted to the FDA or not, RELATING TO HAIR LOSS.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg and the Supplemental New Drug Applications for Taxotere®, which may include draft labeling submitted to FDA.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 28:  All drafts of labels for TAXOTERE, whether submitted to the FDA or not, RELATING TO efficacy.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants, as noted in Request 27, otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the Original New Drug Application for Taxotere® (docetaxel) for Injection Concentrate 80 mg and

29

the Supplemental New Drug Applications for Taxotere®, which may include draft labeling submitted to the FDA. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 29:** **All drafts of labels for TAXOTERE, whether submitted to the FDA or not, RELATING TO cardio-toxicity.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 29.

**REQUEST NO. 30:** **All COMMUNICATIONS RELATING TO U.S. labeling for TAXOTERE and HAIR LOSS.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 27.

**REQUEST NO. 31:** **All COMMUNICATIONS RELATING TO U.S. labeling for TAXOTERE and efficacy.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 28.

**REQUEST NO. 32:** **All COMMUNICATIONS RELATING TO U.S. labeling for**

**TAXOTERE and cardio-toxicity.**

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 29.

**REQUEST NO. 33:** **All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and HAIR LOSS, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have non-privileged and responsive documents relevant to U.S. labeling on hair loss. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 34:** **All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and efficacy, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on

privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 35:** **All DOCUMENTS RELATING TO internal meetings RELATING TO U.S. labeling for TAXOTERE and cardio-toxicity, including, but not limited to, attendees/invitee lists, agendas, meeting minutes, presentation materials, and notes.**

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 33.

**REQUEST NO. 36:** **All DOCUMENTS RELATING TO the December 2015 FDA announcement concerning safety labeling changes approved by the FDA RELATING TO TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.  Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 36.

**REQUEST NO. 37:** **Produce an exact duplicate of the data, information, DOCUMENTS, files, codes and other materials YOU provided to the FDA in response to the February 12, 1999 facsimile YOU received from the FDA.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal

32

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants object that the referenced February 12, 1999, facsimile is related to Taxotere®'s non-small cell lung cancer indication, and is thus irrelevant.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 38:** **All labels, including package inserts, user guides and patient information, for TAXOTERE approved by FOREIGN REGULATORY AGENCIES from 2005 to the present.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants object that the information requested is irrelevant, because all of the Plaintiffs in this litigation were allegedly treated in the United States, with an FDA-approved label.   The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 39:** **All   COMMUNICATIONS   to   or   from   any   FOREIGN REGULATORY AGENCY RELATING TO TAXOTERE and HAIR LOSS and any English translations that exist.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No.

38.

**REQUEST NO. 40:** **All DOCUMENTS RELATING TO the application for a variation submitted by Aventis Pharma S.A. to the European Medicines Agency on February 19, 2016 RELATING TO TAXOTERE, including, but not limited to, the application itself and all supporting information.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants object that the information requested is irrelevant, because all of the Plaintiffs in this litigation were allegedly treated in the United States, with an FDA-approved label.   The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 41:** **All COMMUNICATIONS RELATING TO the application for a variation submitted by Aventis Pharma S.A. to the European Medicines Agency on February 19, 2016 RELATING TO TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to Request No. 40.

**REQUEST NO. 42:** **Your "Sanofi global pharmacovigilance database" as described in the February 19, 2016 type II variation report from European Medicines Agency (EMA) that IDENTIFIES to present date all cases of HAIR LOSS in patients who received TAXOTERE.**

34

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including adverse event reports on hair loss in patients reportedly taking Taxotere® from Sanofi's global pharmacovigilance database. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 43:** **All DOCUMENTS RELATING TO any FOREIGN REGULATORY AGENCY inquiry or investigation RELATING TO the safety of TAXOTERE, including, but not limited to, a French regulatory agency's 2017 investigation into deaths of patients receiving TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 43.

**REQUEST NO. 44:** **All DOCUMENTS RELATING TO the preclinical and clinical**

35

**STUDIES RELATING TO TAXOTERE conducted by YOU or on YOUR behalf outside of the United States prior to 2001.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 4.  In addition, the French Defendants object to this Request as irrelevant, because none of the Plaintiffs allege they were diagnosed, treated, or allegedly injured with Taxotere® outside of the United States.  Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 4.

**REQUEST NO. 45:** **All Company Core Data Sheets (CCDS) RELATING TO TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the Company Core Data Sheets for Taxotere®.   French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 46:** **All COMMUNICATIONS RELATING TO TAXOTERE Company Core Data Sheets (CCDS) and HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 45.

**REQUEST NO. 47:** **All Company Core Safety Information (CCSI) RELATING TO**

TAXOTERE.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 45.

**REQUEST NO. 48:  All COMMUNICATIONS RELATING TO Company Core Safety Information for TAXOTERE and HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 45.

**REQUEST NO. 49:  All draft Dear Doctor/HEALTHCARE PROVIDER letters RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 49.

**REQUEST NO. 50:  All COMMUNICATIONS RELATING TO any Dear Doctor/HEALTHCARE PROVIDER letter RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 49.

**REQUEST NO. 51:  All DOCUMENTS RELATING TO an actual or potential signal**

37

between TAXOTERE and HAIR LOSS.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.  Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 51.

**REQUEST NO. 52:  All internal COMMUNICATIONS and DOCUMENTS RELATING TO an actual or potential signal or association between TAXOTERE and HAIR LOSS.**

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 51.

**REQUEST NO. 53:  All DOCUMENTS RELATING TO any causality assessments (including suspected, potential, and/or actual associations) between TAXOTERE and HAIR LOSS.**

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 51.

**REQUEST NO. 54:  All DOCUMENTS that IDENTIFY or list (including in summary format) any completed, proposed, planned, or considered preclinical or clinical STUDIES that assess whether TAXOTERE can cause HAIR LOSS.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 54.

**REQUEST NO. 55:** **The adverse event database RELATING TO TAXOTERE.**

**RESPONSE:** The French Defendants incorporate by reference their response to Request No. 42.

**REQUEST NO. 56:** **All COMMUNICATIONS and DOCUMENTS RELATING TO any TAXOTERE adverse event report and HAIR LOSS, including all follow up documentation.**

**RESPONSE:** The French Defendants incorporate by reference their response to Request No. 42.

**REQUEST NO. 57:** **All DOCUMENTS RELATING TO scientific, clinical, and medical publications, posters and any other publication RELATING TO TAXOTERE as defined in 21 C.F.R. 310.305 and the corresponding Guidance for Industry and Investigator, Safety Reporting Requirements for INDs and BA/BEs, Section W., V., pp. 7-8 (Dec. 2012).**

**RESPONSE:** 21 C.F.R. 310.305 does not apply to Taxotere® because the statute encompasses drug products that are not the subject of an approved new drug or abbreviated new drug application. Thus, this Request is irrelevant and requires no response.

**REQUEST NO. 58:** **All published and unpublished medical and scientific articles, abstracts, posters, presentations, and research papers RELATING TO TAXOTERE and**

HAIR LOSS and efficacy.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 58.

**REQUEST NO. 59:  All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and any researchers, authors or editors involved in STUDIES, articles, abstracts, presentations, publications or posters regarding TAXOTERE and HAIR LOSS or efficacy.**

**RESPONSE:**    The French Defendants incorporate by reference their Response to Request No. 58, and otherwise refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 4.59.

**REQUEST NO. 60:  All DOCUMENTS RELATING TO any epidemiological STUDIES and/or statistical analyses RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—

40

should the Court overrule its Motion for Protective Order.  Otherwise, the French Defendants

refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 60.

**REQUEST NO. 61:  All DOCUMENTS and COMMUNICATIONS RELATING TO Scot**

**Sedlacek, M.D. and/or Rocky Mountain Cancer Center.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing

information or documents located in foreign countries without complying with the legal

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state

that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French

Defendants reserve their right to assert other legal objections to this Request—whether based on

privilege, relevance, geographic limitations, time, or its public availability, among others—

should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants

refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 61.

**REQUEST NO. 62:  All DOCUMENTS RELATING TO ongoing, past, future, or potential**

**STUDIES, whether sponsored by YOU or not, involving TAXOTERE and HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No.

54, and object to the duplicative nature of these Requests.

**REQUEST NO. 63: All DOCUMENTS that support YOUR contention of alternative**

**causes of HAIR LOSS (other than TAXOTERE), including articles, book chapters,**

**treatises or other publications.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing

information or documents located in foreign countries without complying with the legal

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state

that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French

Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 63.

**REQUEST NO. 64:  All SAS data or data files RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 64.

**REQUEST NO. 65: All DOCUMENTS RELATING TO any comparison between TAXOTERE and other chemotherapy medicines concerning HAIR LOSS.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants

42

refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 65.

**REQUEST NO. 66:  All DOCUMENTS RELATING TO whether a patient's HAIR LOSS, after using TAXOTERE may be impacted by the use of any endocrine or hormonal therapies.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.  Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 66.

**REQUEST NO. 67:  All DOCUMENTS RELATING TO whether a patient's HAIR LOSS, after using TAXOTERE may be impacted by an autoimmune disease, including those autoimmune diseases listed in the Plaintiff Fact Sheet in this MDL in Section VII.10.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 66.

**REQUEST NO. 68:  All DOCUMENTS RELATING TO whether a patient's HAIR LOSS after using TAXOTERE may be impacted by hair care products or treatments, including the hair care products and/or treatments listed in the Plaintiff Fact Sheet in this MDL in Section VII.13 and VII.14.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 66.

**REQUEST NO. 69:** All DOCUMENTS RELATING TO how YOU define, grade, or otherwise classify HAIR LOSS.

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 69.

**REQUEST NO. 70:**  All DOCUMENTS RELATING TO social media, website, blog, online message board or other internet posting, discussing TAXOTERE and HAIR LOSS.

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No.70.

**REQUEST NO. 71:** All COMMUNICATIONS from patients, healthcare professionals, and/or HEALTHCARE PROVIDERS RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing

information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants state that this information will be produced as part of the Defendant Fact Sheet Process, and otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 71. The French Defendants reserve their right to assert other legal objections to this Request— whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 72:** **All DOCUMENTS RELATING TO patient advocacy or support groups/organizations RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 72.

**REQUEST NO. 73:** **All DOCUMENTS RELATING TO YOUR response to any COMMUNICATIONS from patients RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state

that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including relevant communications on Taxotere® and hair loss from their Medical Information Services database, which identifies call-in inquiries, the nature of inquiry, date, and the response. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 74:** **All DOCUMENTS RELATING TO the following studies, including but not limited to COMMUNICATIONS with the study authors:**

h.   Martin M, Segui MA, Anton A, Ruiz A, Ramos M, Adrover E, et al. GEICAM 9805.

i.   S.M. Sedlacek, *Persistent Significant Alopecia (PSA) from Adjuvant Docetaxel after Doxorubicin/Cyclophosphamide (AC) Chemotherapy in Women with Breast Cancer*, Presented at San Antonio Breast Cancer Symposium (Dec. 14, 2006), *available at* http://theproductlawyers.com/wp-content/uploads/2016/07/Sedlacek-TAXOTERE-Alopecia-Study-2006.pdf

j.   Ben Tallon, et al., *Permanent Chemotherapy-Induced Alopecia: Case Report and Review of the Literature*, J. Am. Acad. Dennatol., Volume 63 Issue 2: 333-336 (2010), *available at* https://www.ncbi.nlm.nih.gov/pubmed/20471136

k.   N. Kluger, et al., *Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel: a prospective STUDY of 20 patients*, Ann. Oncol. Volume 23 Issue 11:

46

2879-2884 (2012), *available at* https://www.ncbi.nlm.nih.gov/pubmed/22571858

l.      Nicola J. Thorp et al., *Long Term Hair Loss in Patients with Early Breast Cancer Receiving Docetaxel Chemotherapy*, P5-17-04 San Antonio Breast Cancer Symposium at 1111 (2014), *available at* http://www.sabcs.org/Portals/SABCS/Documents/2014SABCSCall4Abstracts.pdf

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 74.

**REQUEST NO. 75:**  **All DOCUMENTS and COMMUNICATIONS summarizing and/or analyzing post-marketing adverse event reports RELATING TO TAXOTERE and HAIR LOSS.**

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 51, and object to the duplicative nature of these Requests.

**REQUEST NO. 76:**  All MedWatch forms, including follow up DOCUMENTS, RELATING TO TAXOTERE and HAIR LOSS.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state

that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants state that this information will be produced as part of the Defendant Fact Sheet process, and otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 76. The French Defendants reserve their right to assert other legal objections to this Request— whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 77:  All DOCUMENTS RELATING TO marketing plans, strategic plans, situation analyses or tactical plans regarding TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including a representative set of marketing materials on Taxotere®, limited to the relevant time period.

**REQUEST NO. 78:** **All  DOCUMENTS  RELATING  TO  the  implementation  of  the marketing strategy for TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 79:  All DOCUMENTS RELATING TO core/key messages, tactics, Plan**

48

of Action (POA), SWOT (Strengths, Weaknesses, Opportunities and Threats) analyses, competitive issues, barriers/obstacles or customer beliefs regarding TAXOTERE.

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 80:** All DOCUMENTS RELATING TO marketing strategies, plans, and/or messages RELATING TO the "Unsubstantiated Superiority Claims and Overstatement of Efficacy Claims" referred to in the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion.

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 25.

**REQUEST NO. 81:** All DOCUMENTS RELATING TO DEFENDANTS' implementation of the corrective measures RELATING TO the "Unsubstantiated Superiority Claims and Overstatement of Efficacy Claims" referred to in the April 16, 2009 FDA/DDMAC (Division of Drug Marketing, Advertising, and Communications) letter to MaryRose Salvacion, including materials used to train, educate, inform and/or update employees regarding this violation.

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No. 25.

**REQUEST NO. 82:** All DOCUMENTS RELATING TO marketing strategies, plans, and/or messages RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".

**RESPONSE:**   The French Defendants incorporate by reference their response to Request No.

49

77, and otherwise direct Plaintiffs to the U.S. Defendants' response to Request No. 82.

**REQUEST NO. 83: All DOCUMENTS RELATING TO the training and/or COMMUNICATIONS to YOUR field representatives and any other employees RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including a representative set of sales training materials for Taxotere®, from the relevant time period.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 84: All DOCUMENTS RELATING TO approved messaging for COMMUNICATIONS to HEALTHCARE PROVIDERS RELATING TO the 2011 change to the TAXOTERE Label and Medication Guide removing the language "hair generally grows back".**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French

Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 84.

**REQUEST NO. 85:  All DOCUMENTS RELATING TO the hiring or retention of private/independent contractors or other consulting firms RELATING TO the marketing, market research, branding, promotion and public relations of TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 86:  All DOCUMENTS RELATING TO YOUR standardized operating procedures (SOPs), codes of conduct, and/or ethical standards, whether formal or informal, with respect to the promotion, sales, marketing, commercialization of YOUR products, including TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 86.

**REQUEST NO. 87:  All DOCUMENTS RELATING TO the procedural process for review and approval of promotional material for TAXOTERE.**

51

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 88:**  All IMS Health data RELATING TO TAXOTERE.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order. Otherwise, the French Defendants refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 88.

**REQUEST NO. 89:** All data RELATING TO physicians' prescribing practices of competitor products compared to TAXOTERE in the treatment of breast cancer.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 88 and further refer Plaintiffs to the U.S. Defendants' objections and response to Request No. 89.

**REQUEST NO. 90:** All DOCUMENTS RELATING TO DEFENDANTS' targeting of HEATHCARE PROVIDERS and facilities for promotion of TAXOTERE.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request NO. 88.

**REQUEST NO. 91:**  All DOCUMENTS reflecting the annual Return On Investment (ROI) or related metric for each marketing strategy RELATING TO the promotion of TAXOTERE.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No.

77.

**REQUEST NO. 92:** **All DOCUMENTS RELATING TO the training of YOUR sales organization responsible for the promotion TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 83.

**REQUEST NO. 93:** **The database(s) that contains draft and final promotional materials for TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 94:** **All DOCUMENTS that index, catalog, compile, or otherwise list any of YOUR approved advertising, sales and marketing materials, and print and broadcast advertisements, sales aids, visuals, sales scripts, sales guides, reminder pieces and any other materials referenced in 21 C.F.R. 202.1, subdivisions (1)(1) and (1)(2) regarding or RELATING TO TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 95:** **All final, company-approved promotional materials for TAXOTERE (including sales aids, physician brochures, patient brochures, samples, vouchers, symposia, teleconference and video conference materials, CD-ROMs, lunch and learn materials, dinner or other event program materials, hospital, insurance or other formulary presentations, seminars, websites, interactive web sessions, web supported promotional presentations, e-detailing promotional presentations).**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No.

53

77.

**REQUEST NO. 96:  All DOCUMENTS RELATING TO coupon programs, vouchers and samples for TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 96.

**REQUEST NO. 97:  All DOCUMENTS RELATING TO vouchers for discounted taxi services, coupons for wigs, gift packages for patients (e.g., Connection Card Gift Package).**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 96.

**REQUEST NO. 98:  All audio and/or video COMMUNICATIONs (both in audio file format and a transcript of the same) between YOU and YOUR sales force RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 83, and otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 98.

**REQUEST NO. 99:  All email or other written COMMUNICATIONs by and or between YOU and YOUR sales force RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No.

98.

**REQUEST NO. 100:** **Call note or other types of databases reflecting information recorded by or communicated among field representatives regarding TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants refer Plaintiffs' to the U.S. Defendants' response to Request No. 100; the U.S. Defendants, subject to their objections, may have documents responsive to this Request, including specific Call Notes to be produced as part of the Defendant Fact Sheet process.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 101:** **Call note or other types of databases reflecting field representatives' COMMUNICATIONS with HEALTHCARE PROVIDERS about TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 100.

**REQUEST NO. 102:** **All DOCUMENTS that reflect written procedures or guidelines for field representatives associated with the sales, marketing, and/or promotion of TAXOTERE RELATING TO recording information about HEALTHCARE PROVIDER COMMUNICATIONS.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 100.

**REQUEST NO. 103:** Any agreements between YOU and any other company to co-promote TAXOTERE.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 103.

**REQUEST NO. 104:** **Any agreements between YOU and any entity to provide contract sales representatives to promote TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 105:** **All DOCUMENTS RELATING TO cross-product promotion, co-promotions, or product bundling involving TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 106:** **All COMMUNICATIONS between YOU and the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request Nos. 3 and 25.

**REQUEST NO. 107:** **All DOCUMENTS regarding any COMMUNICATIONS between YOU and the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising and Communications (DDMAC) regarding TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 106.

**REQUEST NO. 108:** All DOCUMENTS RELATING TO DEFENDANTS' implementation of the corrective measures RELATING TO any identified or alleged violations brought to YOUR attention by the Office of Prescription Drug Promotion (OPDP), formerly the Division of Drug Marketing, Advertising, and Communications (DDMAC), including materials used to train, educate, inform and/or update employees regarding these identified or alleged violations.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 106.

**REQUEST NO. 109:** DOCUMENTS sufficient to IDENTIFY YOUR speaker bureau members, thought leaders and/or key opinion leaders including doctors, researchers, academics, medical or healthcare professionals, and HEALTHCARE PROVIDERS who received remuneration from YOU for preparation of scientific papers, posters, medical articles, speeches, lectures, and/or presentations regarding TAXOTERE.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants refer Plaintiffs' to the U.S. Defendants' response to Request No. 109; the U.S. Defendants may, subject to their objections, have responsive documents including speaker agreements and consulting agreements for applicable healthcare providers to be produced as part of the Defendant Fact Sheet process.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for

Protective Order.

**REQUEST NO. 110:** **All DOCUMENTS RELATING TO medical seminars, presentations, conferences, lectures, slide decks, medical educational materials RELATING TO TAXOTERE and the treatment of breast cancer.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including a representative set of medical seminar presentations on Taxotere® and breast cancer from the relevant time period.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 111:** **All DOCUMENTS RELATING TO any Advisory Boards utilized by YOU RELATING TO TAXOTERE and/or the treatment of breast cancer.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including a representative set of documents for Advisory Boards on Taxotere® and breast cancer from the relevant time period.  The French

Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 112:** **ALL DOCUMENTS RELATING TO YOUR membership, sponsorship, funding or payment made to organizations RELATING TO breast cancer treatment, including, but not limited to, the American Breast Cancer Foundation, Susan G. Komen, National Breast Cancer Foundation, Breast Cancer Research Foundation, Breast Cancer Association, or other similar cancer organizations.**

**RESPONSE:** The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 113:** **All DOCUMENTS RELATING TO YOUR publication of articles RELATING TO TAXOTERE and the treatment of breast cancer.**

**RESPONSE:** The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—

should the Court overrule its Motion for Protective Order. The French Defendants refer Plaintiffs to the U.S. Defendants' response to Request No. 113.

**REQUEST NO. 114:** **All DOCUMENTS RELATING TO YOUR use of Medical Writing Services for the authorship of journal articles, abstracts, posters and/or other publications RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 113.

**REQUEST NO. 115:** **Video files (in video format) of all television advertisements and/or information videos (branded or unbranded), including drafts, RELATING TO TAXOTERE and/or the treatment of breast cancer.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 116:** **Audio files (in audio format) of all radio advertisements, and/or informational audio files, including drafts, RELATING TO TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 117:** **All DOCUMENTS showing each TAXOTERE advertisement which was aired on either television or radio, including affidavits received from the media outlets, media buyers, or YOUR advertising agencies or public relations firms.**

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 118:** **A color copy of each direct to consumer and/or direct to customer (physicians, cancer treatment facilities, distributors, insurance companies) advertisement**

regarding TAXOTERE and/or the treatment of cancer.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 119:** All DOCUMENTS regarding any branded and/or unbranded website, webpage, blog, social media, twitter, YouTube or other similar media containing content created for or maintained by or on behalf of YOU regarding TAXOTERE and/or the treatment of cancer.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 70.

**REQUEST NO. 120:** All DOCUMENTS RELATING TO keyword search terms and domain registrations RELATING TO the promotion of TAXOTERE.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 100.

**REQUEST NO. 121:** All DOCUMENTS RELATING TO YOUR SEO (Search Engine Optimization) strategies RELATING TO the promotion of TAXOTERE.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 120.

**REQUEST NO. 122:** All DOCUMENTS (including screenshots) RELATING TO TAXOTERE on DEFENDANTS' sponsored, supported, edited, and/or linked websites, Facebook pages, Instagram pages, Twitter pages, social media of any kind, Wikipedia or pages on any other websites (e.g., www.cancerinfo.net, www.fightwomenscancer.com, www.cancerinfonnation.com).

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No.

61

70.

**REQUEST NO. 123:** All **DOCUMENTS RELATING TO** analysis of market share, projection of future sales, marketing strategies, sales targets (i.e., **HEALTHCARE PROVIDERS,** cancer treatment facilities, managed care, private or public business and organizations) and/or promotional plans for **TAXOTERE** and the treatment of breast cancer.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 124:** All **DOCUMENTS RELATING TO** market research regarding **TAXOTERE,** including **HEALTHCARE PROVIDER** or patient beliefs, focus groups, testing of messages to **HEALTHCARE PROVIDERS** or patients, and/or any other research **RELATING TO** the use of **TAXOTERE** and the treatment of breast cancer.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**RESPONSE NO. 125:**        All **DOCUMENTS RELATING TO** consumer market research regarding **HAIR LOSS,** including temporary and/or persistent or permanent.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 126:** All **DOCUMENTS RELATING TO** the **TAXOTERE** market share domestically and globally for each year **TAXOTERE** has been on the market.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request Nos. 77 and 88, and otherwise refer Plaintiffs to the U.S. Defendants.

**REQUEST NO. 127:** All **DOCUMENTS RELATING TO** Winthrop's docetaxel market

**share domestically and globally for each year YOU have marketed Winthrop's docetaxel.**

**RESPONSE:** The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 127.

**REQUEST NO. 128:** **All DOCUMENTS RELATING TO the annual budgets (by domestic region and globally) for the promotion, sales and/or marketing of TAXOTERE for each year that TAXOTERE has been on the market.**

**RESPONSE:** The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 129:** **All DOCUMENTS RELATING TO YOUR actual expenditure for the promotion, sales and/or marketing of TAXOTERE for each year that TAXOTERE has been on the market.**

**RESPONSE:** The French Defendants incorporate by reference their response to Request No. 77.

**REQUEST NO. 130:** **All DOCUMENTS RELATING TO agreements between YOU and Winthrop regarding the manufacture, sale, marketing or distribution of TAXOTERE in its generic form (docetaxel).**

**RESPONSE:** The French Defendants incorporate by reference their objections to producing

information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 131:** **All DOCUMENTS RELATING TO any state, federal or foreign investigation, action, judgment, injunction, Corporate Integrity Agreement, memorandum of understanding, and/or settlement agreements that were entered or executed in connection with the promotion of TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 131.

**REQUEST NO. 132:** **All DOCUMENTS RELATING TO TAXOTERE that have been produced in the Qui Tam case,** ***U.S. ex rel. Gohil v. Sanofi Aventis U.S. Inc. et al.*,** **USDC ED PA Case No. 02-2964, RELATING TO THE sales and promotion of TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal

64

prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 132.

**REQUEST NO. 133:** **All DOCUMENTS sufficient to IDENTIFY any pharmaceutical product other than TAXOTERE, containing TAXANES and/or other microtubule inhibitors (MTI) developed by YOU.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  In addition, the French Defendants object that this Request involves products other than Taxotere® without any nexus to a specific case.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 133.

**REQUEST NO. 134:** **All DOCUMENTS RELATING TO comparisons between TAXOTERE and Jevtana (cabazitaxel).**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 133. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to

Request No. 134.

**REQUEST NO. 135:** **All DOCUMENTS RELATING TO the assignment of any TAXOTERE patents, including but not limited to, the assignment made by Rhone-Poulenc Rorer S.A. to Aventis Pharma S.A.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 136:** **All DOCUMENTS RELATING TO licensing agreements for TAXOTERE.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 136.

**REQUEST NO. 137:** **All applications for patents RELATING TO TAXOTERE that YOU have submitted to the United States Patent and Trademark Office.**

66

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 137.

**REQUEST NO. 138:** All DOCUMENTS RELATING TO TAXOTERE that have been produced in the case filed *Bristol-Myers Squibb Company v. Rhone-Poulenc Rorer, Inc. and Rhone-Poulenc Rorer*, S.A., USDC SD NY Case Nos., 95-CV-8833, 96-CV-2346, 98-CV-356, 2002WL59429(SDNY Jan. 16, 2002) and 2001 WL 126399 (SDNY Oct. 19, 2001).

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 138.

**REQUEST NO. 139:** All insurance policies, excess coverage policies, or any other type of insurance coverage, including any self-insured retention policies, that may cover claims against YOU RELATING TO TAXOTERE for policy years 2004 until the present. This

request also calls for the production of the policy declaration sheet.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 139.

**REQUEST NO. 140:** All of YOUR annual reports from 1996 to the present.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including the 20-F filings from 2003 to 2017. The French Defendants reserve their right to assert other legal objections to this Request— whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 141:** All of YOUR Form 20-F reports from 1996 to the present.

**RESPONSE:**    The French Defendants incorporate by reference their response to Request No. 140.

**REQUEST NO. 142:** All  DOCUMENTS  RELATING  TO  YOUR  past  and/or  present

market share and/or sales of TAXOTERE in the United States.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 126.

**REQUEST NO. 143:** All DOCUMENTS RELATING TO YOUR projections of future market share and/or sales of TAXOTERE in the United States.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 126.

**REQUEST NO. 144:** All DOCUMENTS RELATING TO YOUR sales of TAXOTERE in the United States compared to the worldwide sales of TAXOTERE for each year from 1996 to the present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 126.

**REQUEST NO. 145:** All DOCUMENTS RELATING TO YOUR market share of TAXOTERE in the United States compared to other chemotherapy products for each year from 1996 to the present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 126, and otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 145.

**REQUEST No. 146:** All DOCUMENTS RELATING TO YOUR annual sales revenue derived from TAXOTERE in the United States broken down by State for each year from 1996 to the present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 126, and otherwise refer Plaintiffs to the U.S. Defendants response to Request No. 146.

**REQUEST NO. 147:** All DOCUMENTS RELATING TO YOUR annual profits derived

from TAXOTERE in the United States, annually from 1996 to present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 148:** All DOCUMENTS RELATING TO YOUR annual profits derived from TAXOTERE worldwide, annually from 1996 to present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 149:** All DOCUMENTS RELATING TO what percentage of YOUR gross revenues was derived from TAXOTERE United States sales, annually, from 1996 to present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 150:** All DOCUMENTS RELATING TO what percentage of YOUR net income was derived from TAXOTERE sales in the United States annually from 1996 to present.

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 146.

**REQUEST NO. 151:** All DOCUMENTS RELATING TO YOUR actual expenditures on an annual basis for design, research and development of TAXOTERE to obtain market approval by FDA in the United States.

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state

that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 152:** **All DOCUMENTS RELATING TO YOUR actual expenditures on an annual basis from 1996 to present for monitoring post-market adverse events and pharmacovigilence.**

**RESPONSE:**     The French Defendants incorporate by reference their response to Request No. 151.

**REQUEST NO. 153:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO the content and format of labeling of YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:**     The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. In addition, the French Defendants refer Plaintiffs to the U.S. Defendants' response to Request No. 153.

**REQUEST NO. 154:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance for Adverse Event collection, analysis, follow-up, and reporting for YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. In addition, the French Defendants refer Plaintiffs to the U.S. Defendants' response to Request No. 154.

**REQUEST NO. 155:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO Dear HEALTHCARE PROVIDER or Health Advisory Letters for YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their responses to Request Nos. 49-50.

**REQUEST NO. 156:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO requests for information from HEALTHCARE PROVIDERS (e.g., Physician Information Requests — (Wits)) and the public about YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including representative standard operating

procedures relating to requests for information from Healthcare Providers and the public about Taxotere®. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 157:** **All DOCUMENTS reflecting standard operating procedures, policies and guidance RELATING TO COMMUNICATIONS by YOUR employees with HEALTHCARE PROVIDERS or patients about YOUR prescription drug products, including TAXOTERE.**

**RESPONSE:** The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants otherwise defer this Request to the U.S. Defendants who, subject to their objections, may have documents responsive to this Request, including representative standard operating procedures relating to communications by the U.S. Defendants' employees with healthcare providers or patients about Taxotere®. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 158:** **YOUR Ethics Codes from 1996 to the present.**

**RESPONSE:** The French Defendants incorporate by reference their response to Request No. 86.

**REQUEST NO. 159:** **All DOCUMENTS reflecting standard operating procedures, policies**

and guidance RELATING TO corporate compliance in YOUR prescription drugs from 1996 to the present.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order. The French Defendants otherwise refer Plaintiffs to the U.S. Defendants' response to Request No. 159.

**REQUEST NO. 160:** All DOCUMENTS sufficient to demonstrate the coordination of operations between or among DEFENDANTS.

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants further object that the term "coordination of operations" is vague, ambiguous, and undefined as used in this Request, and therefore the French Defendants cannot respond to this Request as written.  Additionally, the French Defendants object to this request to the extent it seeks information duplicative of Plaintiffs' jurisdictional-related discovery responses, and object that information related to the "coordination of operations" will not show that the U.S. Defendants are an "alter-ego" of the French Defendants, for purposes of Plaintiffs' theory of personal jurisdiction over the French Defendants.   Subject to and without waiving these

74

objections, the French Defendants generally refer Plaintiffs to the French Defendants' responses to jurisdictional-related discovery, which outline the corporate organizational formalities of the various Defendants.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

**REQUEST NO. 161:** **All DOCUMENTS sufficient to demonstrate YOUR organization and structure of the departments and personnel involved with TAXOTERE from 1985 to present.**

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants object to this request to the extent it seeks information duplicative of Plaintiffs' jurisdictional-related discovery responses, and object that information related to the "organizational structure" of various internal departments will not show that the U.S. Defendants are an "alter-ego" of the French Defendants, for purposes of Plaintiffs' theory of personal jurisdiction over the French Defendants.  Subject to and without waiving these objections, the French Defendants generally refer Plaintiffs to the French Defendants' responses to jurisdictional-related discovery, which outline the corporate organizational formalities of the various Defendants.  In addition, the French Defendants state that they did not design, test, manufacture, sell, market, license, or distribute Taxotere® in the United States.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—

should the Court overrule its Motion for Protective Order.

**REQUEST NO. 162:** **For each year in which YOU designed, tested, manufactured, sold, marketed, licensed or distributed TAXOTERE, produce all charts or other DOCUMENTS RELATING TO:**

      a.      General corporate organizational structure;

      b.      Business unit organizational structure;

      c.      Corporate compliance organizational structure;

      d.      Pharmacovigilence and safety organizational structure;

      e.      Sales department organizational structure;

      f.      Marketing department organizational structure;

      g.      Market research department organizational structure;

      h.      Distribution department organizational structure;

      i.      Research and development department organizational structure;

      j.      Medical department organizational structure;

      k.      Regulatory department organizational structure; and

      l.      Pharmaceutical drug labeling department organizational structure.

**RESPONSE:**   The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants object to this request to the extent it seeks information duplicative of Plaintiffs' jurisdictional-related discovery responses, and object that information related to the "organizational structure" of various internal departments will not show that the U.S. Defendants

are an "alter-ego" of the French Defendants, for purposes of Plaintiffs' theory of personal jurisdiction over the French Defendants.  Subject to and without waiving these objections, the French Defendants generally refer Plaintiffs to the French Defendants' responses to jurisdictional-related discovery, which outline the corporate organizational formalities of the various Defendants.  In addition, the French Defendants state that they did not design, test, manufacture, sell, market, license, or distribute Taxotere® in the United States.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.

**REQUEST NO. 163:** **ALL DOCUMENTS RELATING TO litigation holds concerning TAXOTERE, whether instituted for purposes of this litigation or prior litigation. If a litigation hold was initiated pursuant to prior litigation RELATING TO TAXOTERE please state if, and if so when, any such hold was lifted.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction.  The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others— should the Court overrule its Motion for Protective Order.  The French Defendants further object to this Request as discovery on discovery.  *See generally E.E.O.C. v. Boeing Co.*, No. 05-cv-03034, 2007 WL 1146446, *3 (D. Ariz. Apr. 18, 2007) (denying discovery about discovery in 30(b)(6) deposition notice, which was not related to any claim or defense in the case and could

not satisfy relevancy standard); *Ingersoll v. Farmland Foods, Inc.*, No. 10-cv-6046, 2011 WL 1131129, *16 (W.D. Mo. Mar. 28, 2011) (denying discovery regarding litigation holds and preservation efforts as "entirely premature" where no facts implicated the issue); *Hubbard v. Potter*, 247 F.R.D. 27 (D.D.C. 2008) (precluding meta-discovery deposition where plaintiffs failed to make a sufficient showing that the documents produced justified discovery about discovery).

**REQUEST NO. 164:** **YOUR document retention policies from 1996 to the present, including all policies RELATING TO the assimilation of information from acquired or merged companies.**

**RESPONSE:**    The French Defendants incorporate by reference their objections to producing information or documents located in foreign countries without complying with the legal prerequisites to such production, as set forth in their General Objection Nos. 1, 2, 3, and 4, state that Sanofi and Aventis Pharma S.A. are not proper parties, and contest jurisdiction. The French Defendants reserve their right to assert other legal objections to this Request—whether based on privilege, relevance, geographic limitations, time, or its public availability, among others—should the Court overrule its Motion for Protective Order.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi, Aventis Pharma S.A., sanofi-aventis U.S. LLC, and Sanofi US Services Inc.*

79

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2017, I served the foregoing on Plaintiffs' Liaison

Counsel.


/s/ *Douglas J. Moore*