## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                                MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                           SECTION "H" (5)

THIS DOCUMENT RELATES TO:                                  JUDGE MILAZZO

*ALL BACHUS & SCHANKER CASES*

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
### TO EXTEND PTO 71A DEADLINE

Defendants[1] oppose the Bachus & Schanker Plaintiffs' Motion to Extend PTO 71A

Deadline (Rec. Doc. 3195).

### INTRODUCTION

Seven months after the Court entered PTO 71 on December 15, 2017, and despite

obligations to produce electronically stored information ("ESI") through the Plaintiff Fact Sheet

("PFS") since entry by the Court of PTO No. 22 on March 10, 2017, plaintiffs now seek to further

delay compliance with their Court-ordered ESI obligations.  Setting aside that the photographs,

emails, and other electronically-stored information at issue should have been produced with

plaintiffs' PFS submissions long ago, plaintiffs seek what amounts to 10 months to comply with

ESI PTOs for every plaintiff represented by Bachus & Schanker.[2]

---

[1] Sanofi-aventis U.S. LLC, Sanofi US Services, Inc., Hospira Worldwide, LLC, Hospira, Inc., Pfizer Inc., Sandoz, Inc., Actavis Pharma, Inc., Accord Healthcare, Inc. and Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories, Ltd. (collectively "Defendants").

[2] Plaintiffs' request for an additional 120 days—until October 26, 2018—to comply with their PTO 71A ESI obligations is not just limited to the 425 plaintiffs on Exhibit A but rather applies to *all* plaintiffs represented by Bachus & Schanker. *See* Proposed Order on Plaintiffs' Motion to Extend PTO 71A Deadline (Rec. Doc. 3195-4) ("for good cause shown, it is hereby Ordered that Plaintiffs' motion is GRANTED, and the deadline for all Bachus & Schanker cases to comply with PTO 71A is extended to October 26, 2018.").

Now, on the final day for compliance with PTO 71A, plaintiffs assert that the Order—which requires plaintiffs to take well-defined steps to identify and produce ESI and which was specifically negotiated by the parties—is unduly burdensome and confusing.  Plaintiffs' counsel insists that substantial work has been done, but a review of what plaintiffs have (and have not) submitted to date refutes this claim.  Plaintiffs' sweeping request should be denied because: (1) plaintiffs have had many months to complete their ESI production as required by the PFS but failed to do so; (2) plaintiffs offer no reasonable explanation for their failure to act, much less a good cause showing, to justify their request for additional time; and (3) the ESI contemplated is crucial to plaintiffs' claims, particularly as it relates to their alleged injuries and those injuries' alleged impact in their lives.[3]

## BACKGROUND

***The Motion for Extension's Silence on the Multiple, Long-Standing Sources of Plaintiffs' ESI Obligations.***  Plaintiffs' Short Form Complaints provide few, if any, details about each plaintiff's individualized claims.  Instead, nearly all complaints generally allege that the named plaintiff: (1) had breast cancer; (2) took Taxotere®/docetaxel for chemotherapy on or around a certain date; and (3) allegedly developed permanent hair loss as a result.[4]  Absent complete and compliant PFSs, Defendants—and the Court—have no further information about the thousands of plaintiffs in this MDL.  Indeed, the information and documents ordered to be produced with the PFS was intended to provide the factual support for plaintiffs' claims.

---

[3] Of the 425 plaintiffs identified on Exhibit A, 4 cases have been dismissed.  It is unclear what relief is sought as to these plaintiffs.
[4] *See* PTO No. 37A (Rec. Doc. 1682).

In the PFS, the Court ordered plaintiffs to produce documents – including ESI – related to their cancer, chemotherapy, and hair loss.[5]  The Court also required plaintiffs to disclose their use of electronic mediums to communicate about their cancer, chemotherapy, hair loss and Taxotere®, and to identify other records holders.[6]  The Court further required plaintiffs to produce photographs showing their hair composition before, during, and after treatment, and any "other media" depicting their alleged injury or its effect in their lives.[7]  On July 6, 2017, the Court issued Pretrial Order No. 49 ("ESI Protocol"), which specified that plaintiffs should produce digital photographs with "available metadata fields" and required the parties to make specific disclosures about ESI sources and destruction.[8]

*PTOs Nos. 71 & 71A.*  In 2018, use of electronic media is ubiquitous and such media house most of the discoverable information in a plaintiff's possession.  But, as of August 2017, an implausible 85% of responding plaintiffs claimed to have never used electronic devices to communicate about their chemotherapy, cancer, or hair loss.  Despite the requirements of the Court-mandated PFS, it quickly became clear that the vast majority of plaintiffs were failing to produce responsive ESI.  In fact, of the 1,179 plaintiffs that had submitted a PFS by October 2017, only 21 (less than 2%) had produced any emails, text messages, social media posts or other electronic information.  And, only 298 had produced electronic photographs.  As of November 2017, only four of the plaintiffs who admitted to using electronic communications in their PFSs had produced a single email.

---

[5] *See* Amend. PTO No. 22 (Rec. Doc. 325), which superseded PTO No. 22 (Rec. Doc. 279); PTO No. 38 at § IX (Rec. Doc. 326) ("Produce all documents in your possession" including documents in "electronic form").
[6] *Id.* at §§ II.18 and II.19.
[7] *Id.* at § IX.
[8] PTO No. 49 (Rec. Doc. 611) ("ESI Protocol").

"Concerned that certain Plaintiffs in this MDL do not appear to have adequately and timely produced responsive electronically stored information ("ESI") as required by the Plaintiff Fact Sheet ("PFS")", the Court entered PTO 71 on December 15, 2017, delineating plaintiffs' obligations to identify, preserve, collect, and produce ESI.[9]  The Court required plaintiffs whose PFS obligations had already come due to certify their ESI production by January 29, 2018, and for all other plaintiffs to provide responsive documents and their certificate with their PFS submission.[10]  As memorialized in PTO 71A, Defendants and the Court agreed to provide a significant extension for plaintiffs to complete their ESI production.[11]

However, even in the face of the Court's Orders, the inventory-wide problem of plaintiffs failing to produce ESI continues to be ongoing.  Bellwether plaintiff June Phillips provides illustration.  Ms. Phillips was obligated to produce responsive ESI with her PFS on May 19, 2017.  On January 6, 2018, after selection as a bellwether plaintiff, Ms. Phillips and her counsel certified that Ms. Phillips had no ESI to produce.  Yet, minutes before her deposition on May 16, 2018 (and over 4 months after the certification), Ms. Phillips' counsel revealed the existence of numerous emails detailing her hair loss and regrowth, cancer treatment, and conversations with her oncologist regarding chemotherapy risks and side effects.  Ms. Phillips' counsel also admitted that an entire email account held by Ms. Phillips still remained to be searched for responsive ESI.  It was not until June 5, 2018—5 months after Ms. Phillips and her counsel had certified compliance with PTO 71—that over 5,000 pages of emails were produced for the first time.[12]

---

[9] PTO No. 71 at p. 1 (Rec. Doc. 1306).
[10] *Id*. at ¶ 6.
[11] PTO No. 71A at ¶ 6 (Rec. Doc. 1531).  The 425 plaintiffs on Exhibit A contend that their ESI Statements were due on June 28, 2018 under the staggering provisions identified in Amended PTO 22.  *See* Plaintiffs' Mem. in Supp. at pp. 1-2 (Rec. Doc. 3195-2).
[12] Subsequent to her scheduled deposition, Ms. Phillips also produced 344 pages of a cancer treatment binder.

And these failures are not limited to bellwether plaintiffs, but instead continue to permeate the inventory of plaintiffs in the MDL.  Since the Court entered PTO 71 on December 15, 2017, 2,489 of the 7,654 plaintiffs who have submitted a PFS, have not submitted any information under the "PTO 71" field in MDL Centrality.[13]  Significantly, of the 1,139 Bachus & Schanker plaintiffs who have submitted a PFS to date, only 54 have produced ESI pursuant to PTO 71A.  Enforcement of plaintiffs' obligations to produce relevant and responsive ESI is therefore necessary.

## ARGUMENT

Plaintiffs' motion not only seeks 120 additional days for the 425 plaintiffs identified on Exhibit A to comply with their PTO 71A ESI obligations, but also broadly seeks the same extension—until October 26, 2018—for each and every plaintiff represented by Bachus & Schanker.[14]  Plaintiffs suggest that substantial work has been done and that the hindrance is the overly burdensome nature of the Court's order and confusion on the part of their clients, but what has (and has not) been submitted by plaintiffs to date belies such suggestions.  They rely on the number of PTO 71A ESI certificates submitted by Bachus & Schanker by June 28, 2018, but the fact that Bachus & Schanker's request for more time *includes plaintiffs* who have *already* submitted ESI certificates calls into question those plaintiffs' actual compliance with the Order.  No justification, much less good cause, exists to support plaintiffs' sweeping request.

## I.   Plaintiffs' Ongoing Taxotears Discovery Deficiencies

Bachus & Schanker represents more than half of the identified Taxotears Google Group plaintiffs, and their clients' ongoing delay in producing complete ESI is instructive.  The issue

---

[13] This does not include Plaintiffs that have a past due PFS that has not yet been submitted.

[14] *See* Proposed Order on Plaintiffs' Motion to Extend PTO 71A Deadline (Rec. Doc. 3195-4) ("for good cause shown, it is hereby Ordered that Plaintiffs' motion is GRANTED, and the deadline for all Bachus & Schanker cases to comply with PTO 71A is extended to October 26, 2018.").

arose in April 2018, when Plaintiffs' Liaison Counsel disclosed – for the first time – that they had highly relevant ESI from the Taxotears Google Group, which plaintiffs had not previously produced.  Consequently, Defendants alerted the Court to this issue in a letter on April 20, 2018.

At the time, most of the Taxotears Google Group plaintiffs had produced no ESI whatsoever, and for those plaintiffs who had produced some ESI, it was clear that they had not produced all ESI from the Taxotears' e-mail distribution list.  Only 4 of these plaintiffs had provided the required PTO 71A statement and no plaintiff had identified any lost or destroyed ESI from that source.

As a result, on May 9, 2018, the Court entered its Discovery Order[15] to achieve a complete production of ESI from the Taxotears Google Group:

> THE COURT: Sanofi states in its brief that the Taxotears ESI is responsive and discoverable and that the issue presently before the Court is simply how best to collect and produce the ESI to ensure a complete production.  I agree completely on both points and I'm going to direct the parties to take the following steps to accomplish the objective of achieving a complete production of ESI from the Taxotears group that is both relevant and proportional to the needs of the case.[16]

Despite the Court's Order, of the identified Taxotears plaintiffs, 24 (>60%) had not produced any ESI from the Taxotears Google Group ("Taxotears ESI") – most of whom were Bachus & Schanker plaintiffs – as of June 8, 2018.  Following protracted meet and confers and repeated judicial intervention, during the June 13, 2018 Status Conference, plaintiffs' counsel expressly represented that Bachus & Schanker's 12 Taxotears plaintiffs would complete their ESI production by June 28, 2018:

> MR. BACHUS:  Your Honor, I think I can help with this because most of them are my firm's clients.

---

[15] *See* Discovery Order (May 9, 2018) (Rec. Doc. 2522).
[16] Status Conf. Tr. at 2:20-3:2 (May 8, 2018).

We have a staggered deadline that is June 28th, that is the deadline for, I believe, the remainder of those women who are with our firm, anyway, that have PFS due dates and PTO 71 due dates … When they're due, we intend to comply.

… We're doing everything we can, I assure the Court. ***That's the date, the 28th.***[17]

Notwithstanding assurances to the Court, 12 of Bachus & Schanker's Taxotears plaintiffs failed to complete their ESI productions by the deadline. Rather than advising the Court and Defendants of plaintiffs' inability or disinclination to meet the deadline, plaintiffs silently listed several of these plaintiffs among the 425 plaintiffs on Exhibit A.[18] After Defendants discovered this fact and promptly informed the Court, the Court ordered that these plaintiffs complete their ESI production by July 16, 2018.[19]

Three months since the Discovery Order, and despite multiple Court Orders, at least 3 of Bachus & Schanker's Taxotears plaintiffs (Natalie Grumet, Joan Phillips, and Courtney Preusse) still have not produced any ESI from the Taxotears Google Group—which, as with all ESI, was originally due with their PFSs. In addition, several plaintiffs responded that they could not produce Taxotears ESI because it had been lost or destroyed over time – *see, e.g.,* Kimberly Free, Jenifer Weigand and Wendy Crone – highlighting the prejudice to Defendants of plaintiffs' failure to timely collect and produce this discovery.

These Taxotears plaintiffs' ongoing ESI deficiencies are not outliers but rather represent the inventory-wide issues of non-compliance with Court-ordered discovery obligations.

---

[17] *See* Status Conf. Tr. at 19:16-21; 20:1; 20:9-10 (June 13, 2018) (emphasis added).
[18] These Taxotears plaintiffs were specifically identified in Exhibit A: Jennifer Daley, Charlotte Darby, Ami Dodson, Yolanda Herron, Susan Jones, Margaret Lands, Courtney Preusse and Jenifer Weigand. *See* Plaintiff's Motion at Ex. A (Rec. Doc. 3195-1).
[19] *See* Minute Entry at 1 (July 6, 2018) (Rec. Doc. 3255) ("The Court hereby orders that the ESI production required under PTO 71A of Plaintiffs, Jennifer Daley, Charlotte Darby, Ami Dodson, Yolanda Herron, Susan Jones, Margaret Lands, Courtney Preusse, and Jenifer Weigand to be completed **no later than July 16, 2018**.") (emphasis added).

**II.      No Good Cause Exists to Support Further Extension of the PTO 71A Deadlines**

Plaintiffs seek relief under Fed. R. Civ. P. 6(b)(1)(A) and 16(b)(4), which authorize the Court to extend time or modify a schedule for good cause.  A showing of "good cause" requires good faith on the part of the party seeking an enlargement *and* some reasonable basis for noncompliance within the time specified.  Plaintiffs cannot make any showing—much less good cause—for their failure to comply with their ESI obligations.  Plaintiffs, instead, have shown a pattern of delay and inaction in completing their ESI productions.

At the outset, only 117 of the 1,033 women who have submitted ESI certificates admit to having ESI to disclose.  The remaining 88% of these women (by our count, 916 women) contend they have no ESI to produce.  As discussed above, it is dubious that in 2018, so few women have *no* ESI to produce.  Troublingly, those few materials actually produced under PTO No. 71A tend to show *why*.  Not even a month after the Court entered PTO No. 22 on March 10, 2017, wherein the Court ordered plaintiffs to disclose in their PFS whether plaintiffs communicated via email or posted on social media regarding their injuries, chemotherapies or hair loss, counsel advised their clients to "close down" Facebook and blog pages:



Sat 4/8/2017 11:20 PM
taxotears@googlegroups.com on behalf of Kimberly Free <iamfree@mail-solutions.net>
[Taxotears] Letter from B&S
To    □ taxotears@googlegroups.com

Below is a new article about Science day being set for May 3rd. Also I did receive a letter from B&S this week. It did state to make sure you either close down your facebook or lock it down and also any blog posts etc.

Kimberly Free

Putting aside the surprising number of women (88%) who claim to have no responsive ESI, it is clear that what has been submitted for those who admit to having ESI is less than what actually exists.  Of the 117 Bachus & Schanker plaintiffs that had submitted a PTO 71A certificate admitting they have ESI, only 54 (less than half) have actually produced any responsive documents.  The remaining 41 submit only the certificate – with no actual document production as required by the Order.  Further, many of the certificates are blank.  Like certain plaintiffs' practice of submitting blank PFSs,[20] submission of these blank ESI certificates disrupts Defendants' ability to use MDL Centrality to identify cases subject to dismissal for non-compliance.  Defendants must manually review each certification to know whether it is blank or not—on a report, plaintiffs have uploaded *something*, making it look like they have complied when they have not.

By way of example, on June 12, 2018, plaintiff Melissa Leith first executed an "Additional ESI" certification admitting to having ESI.  But it was blank.  Curiously, after the June 28, 2018 deadline, she substituted the original certificate with one that identified Facebook and breastcancer.org.  But, even as of today, Ms. Leith has not produced a single page of responsive documents.  And, Ms. Leith is not alone.  In total, of the 117 plaintiffs who admitted to having ESI to produce, 63 have failed to produce a *single* document (including 24 who submitted blank ESI statements).

On this data, it is not surprising that plaintiffs' brief expressly concedes that many of their clients have responsive ESI.  They offer **no** explanation for why such information was not compiled and produced in the seven months since entry of PTO 71.  Indeed, plaintiffs' brief does

---

[20] *See, e.g.,* Letter from H. Ratliff to D. Barrios (March 6, 2018) (explaining issues of global PFS deficiencies, including blank PFSs), attached as **Exhibit 1**.

not allege a single fact to confirm the steps counsel took to assist these plaintiffs with the ESI production process.

Notably, of the 63 plaintiffs who certified that they had additional ESI to produce, over half signed their ESI statements prior to March 2018—months before the certificates were submitted to defendants.  Even today, months later, the responsive ESI remains unproduced.   And plaintiffs offer no explanation for their failure to act.  For example,

- Plaintiff Theresa Tarver signed a PTO 71A ESI certification on January 28, 2018, indicating that she had conducted a search of the sources identified in PTO 71 and identified that a specific email account yielded ESI to produce. Counsel signed and submitted it five months later on June 28, 2018. Despite the 5 month delay, no ESI has been produced.

- On January 11, 2018, Plaintiff Kelly Klotz certified that she had conducted a search pursuant to Paragraph 2 of PTO 71 and identified two specific email accounts from which she found additional ESI to produce. Two months ago, on May 17, 2018, her counsel signed the certificate. But, no documents have been produced to defendants in the intervening months.

- On February 10, 2018, Plaintiff Laveion Overman certified that she identified photos to be produced. Counsel signed the certificate on June 27, 2018. No photographs have been produced to defendants.

- Plaintiff Ingrid Tanda signed her ESI certification on February 2, 2018. Despite identifying cellphone pictures and texts as responsive ESI, Ms. Tanda has only produced 5 pages of incomplete Facebook posts, the PDF copies of which (no metadata) are cutoff and do not provide many post comments.

While counsel generically cites their clients' apparent confusion with their ESI obligations the only record before the Court is one of inaction.

## III.     PTO 71A Imposes Minimal Obligations Upon Plaintiffs

Only now—on the last day for plaintiffs to complete their ESI production—do plaintiffs contend that the Order is somehow onerous or unfair.  PTO 71A only requires plaintiffs to take a few, well-defined steps with respect to ESI, namely: (i) identify potential sources of ESI; (ii) search identified sources (and run targeted search terms); (iii) preserve metadata; and (iv) disclose where

other responsive ESI may exist.  It is not the case that plaintiffs are alone in this effort, either.  In fact, plaintiffs' counsel is court-ordered to take affirmative steps to assist plaintiffs with ESI and to ensure that they fulfill their ESI obligations.  Adding further support, the PSC and plaintiffs' ESI counsel are available to help plaintiffs and their counsel to the extent they encounter any issues with ESI.  Simply stated, PTO 71A is a sound, negotiated Order that improves the accuracy and utility of information that plaintiffs are required to disclose, and is layered with ample support and guidance to plaintiffs.

## IV.   Defendants Continue to Be Prejudiced by Plaintiffs' Failure to Comply with Discovery Orders.

Plaintiffs also insist that Defendants will not be prejudiced "in any way" if the relief is granted because plaintiffs "will likely never be within a stone's throw of an actual courtroom."[21] At the outset, this sentiment calls into question whether plaintiffs *ever feel* they ought to be under obligation to substantiate their claims and prosecute their lawsuits.  *See* Email from K. Free to Taxotears Group (Oct. 24, 2016) (PPR 004009) ("The more [lawsuits Bachus & Schanker LLC] can file, and fastly, the more other law firms will pick up on it and start their advertising. Also the more they could file, the more chances of getting a 'redistricting.' [Bachus & Schanker LLC] **told me their goal was to redistrict and then settle out of court. They said they never had an intent to actually go to court**.") (emphasis added).  *See* **Exhibit 2**.

Regardless of whether an individual plaintiff is chosen to be a trial pool plaintiff in the MDL, they have discovery obligations to this Court and Defendants.  Defendants are entitled to relevant electronic information in plaintiffs' possession, custody, or control—particularly photographs, which are the only evidence that the almost 90% of Plaintiffs without an actual hair loss diagnosis or treatment can identify to substantiate their alleged injuries.  Without plaintiffs'

---

[21] Plaintiffs' Mem. in. Supp. at p. 4 (Rec. Doc. 3195-2).

photographs and electronic communications regarding their cancer, treatment and injuries, Defendants' ability to evaluate plaintiffs' claims to *select trial cases* is significantly impeded.[22]

Plaintiffs' wait-to-comply attitude is exactly what leads to non-trial plaintiffs submitting perfunctory or blank plaintiff fact sheets while crucial photographs and ESI is ignored, misplaced, or otherwise lost. To the extent that plaintiffs wait to do work until they are selected for trial, this creates the real risk that responsive ESI will no longer exist because it is deleted or otherwise destroyed. Granting plaintiffs more time is not the solution. Indeed, with every day that passes, the chance that ESI is lost or destroyed only increases.

For example, Plaintiff Renice Newton certified her PFS on December 29, 2017. In her PFS, Ms. Newton denied any social media or internet postings relating to her claims in this lawsuit. But, on June 28, 2018, she disclosed numerous social media posts. She now claims that her previous smart phone crashed and that nothing could be retrieved or transferred with a new phone purchase in March 2018. Putting aside that Ms. Newton's social media accounts and email are not solely accessible via a smart phone and should be produced, it is clear that plaintiffs are still not taking action before sources of social media are being destroyed in the process.

Similarly, Taxotears Plaintiff Kimberly Free submitted a blank ESI certification on June 6, 2018. Less than a month later, on July 5, 2018, Ms. Free submitted an updated ESI statement

---

[22] In addition, ESI touches on numerous, other critical issues, including:
- **Statute of Limitations:** Posts that make or demonstrate plaintiffs' awareness of a connection between plaintiffs' alleged injuries and Defendants' alleged tortious conduct, as well as discussions of ways to circumvent the statute of limitations.
- **Causation:** Posts reveal sources of information, including scholarly articles regarding hair loss and its various possible causes.
- **Alternative Causation:** Posts that would reveal other medical causes for plaintiffs' alleged injuries, as well as acknowledgements of alternative causes.
- **Efficacy:** Posts that discuss the inferiority of other cancer treatment in comparison to Taxotere treatment and that show the efficacy and need for treatment with Taxotere.
- **Credibility:** Posts that reveal plaintiffs' subjective beliefs about their cases that are inconsistent with their legal allegations.

disclosing ESI from a specific email account.  The very next day, on July 6, 2018, however, Ms. Free backtracked, and uploaded a typed statement, indicating her ESI had been destroyed:

> I have been apart of the Google Group, Taxotears, A Head of Our Time. I have responded and wrote emails in this support group to my fellow survivors. I had a ransom ware infection on my computer and had to have my computer fixed. Since my computer had to be wiped and reset I do not have any emails.
>
> Kimberly Free

*See* **Exhibit 3**.

Conspicuously absent from Ms. Free's statement is any information of *when* the alleged ransomware attack occurred.  Ms. Free apparently had email access on June 6, 2018, when she produced 3 pages of emails and a collage of photos depicting her hair.  Further, Ms. Free's July 5, 2018 representation that she does not have any emails because a particular computer was "wiped and reset" is dubious.  In 2018, one can access an email account from virtually any electronic device with an internet connection—not just their personal computer.  In any event, plaintiff's reports of lost and destroyed ESI suggests that plaintiffs are not only failing to produce ESI but also failing to preserve ESI as required by PTO 71.  Enforcement of plaintiffs' ESI obligations is crucial to ensure that *all* discoverable ESI is identified and produced, guarding against the real risk of this information being lost and/or destroyed.

Further, the likelihood that such relief would result in plaintiffs curing their ESI deficiencies is questionable.  Notably, 281 of the 425 plaintiffs on Exhibit A have yet to even submit a PFS, let alone an ESI certificate.  Eighty-two (82) of these plaintiffs have already been included on show cause orders.  In all but two instances, Bachus & Schanker's replies to the show cause orders has been that counsel has lost contact with these plaintiffs (and, consistent with the theme, Bachus & Schanker seeks more time to comply with a court order).[23]

---

[23] In the other two responses, Bachus & Schanker indicated that plaintiffs had hired new counsel.

Taken together with plaintiffs' proposed Order—nowhere acknowledged in the briefing itself—that would relieve all ESI obligations for this firm's plaintiffs' PTO No. 71A obligations, it becomes clear that the Motion ought to be denied.

## CONCLUSION

Plaintiffs have been afforded more than ample time to cure their ESI deficiencies, including multiple extensions from the Court, yet have not done so. Without any action to comply with PTO 71A or to explain their failure to act, plaintiffs ignore the Court's direction and request additional time to complete their ESI production, which should have been accomplished long ago. Plaintiffs plainly seek to avoid their obligations under PTO 71A (and will continue to do so if left unchecked). No justification exists for plaintiffs' delays and, therefore, plaintiffs should not be given an extension of time to satisfy their ESI obligations.

For these reasons, and the reasons stated above, Defendants request that the Court deny Plaintiffs' Motion to Extend PTO 71A Deadline and grant any other relief it deems appropriate.

Respectfully submitted,

/s/ Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART &
MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly G. Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

***Counsel for sanofi-aventis U.S. LLC and
Sanofi U.S. Services Inc.***

/s/ Lori G. Cohen
Lori G. Cohen
R. Clifton Merrell
Evan Holden
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2100
cohenl@gtlaw.com
merrellc@gtlaw.com
holdene@gtlaw.com

/s/ Deborah B. Rouen
Deborah B. Rouen
E. Paige Sensenbrenner
**ADAMS AND REESE LLP**
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
debbie.rouen@arlaw.com
paige.sensenbrenner@arlaw.com

***Counsel for Defendant Sandoz, Inc.***

/s/ Mark S. Cheffo
Mark S. Cheffo
Mara Cusker Gonzalez
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
mark.cheffo@quinnemanuel.com
maracusker.gonzalez@quinnemanuel.com

/s/ John F. Olinde
John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com
rotolo@chafe.com

***Counsel for Defendants Hospira, Inc.,
Hospira Worldwide, LLC, formerly doing
business as Hospira Worldwide, Inc., and
Pfizer Inc.***

/s/ Michael J. Suffern
Michael J. Suffern
Jeffrey F. Peck
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5064
Facsimile: (513) 698-5065
msuffern@ulmer.com

***Counsel for Defendant Actavis Pharma, Inc.***

/s/ John P. Wolff, III
John P. Wolff, III, TA #14504
Nancy B. Gilbert, Bar #23095
Chad A. Sullivan, Bar #27657
Richard W. Wolff, Bar #34844
**KEOGH, COX & WILSON, LTD.**
701 Main Street
Post Office Box 1151
Baton Rouge, LA 70821
Phone: (225) 383-3796
Fax: (225) 343-9621
jwolff@keoghcox.com
ngilbert@keoghcox.com
csullivan@keoghcox.com
rwolff@keoghcox.com


AND
Via *Pro Hac Vice* Admission

/s/ Julie A. Callsen
Julie A. Callsen, TA, OH Bar #0062287
Brandon D. Cox, OH Bar #0089815
**TUCKER ELLIS LLP**
950 Main Ave., Suite 1100
Cleveland, OH 44113-7213
Phone: (216) 696-2286
Fax: (216) 592-5009
Julie.Callsen@TuckerEllis.com
Brandon.Cox@TuckerEllis.com

***Counsel for Defendant Accord Healthcare Inc.***

/s/ Stanton E. Shuler, Jr.
Stanton E. Shuler, Jr. (Bar No. 19152)
**LEAKE & ANDERSSON LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
Phone: 504-585-7500
Facsimile: 504-585-7775
sshuler@leakeandersson.com

/s/ Geoffrey M. Coan
Geoffrey M. Coan
Kathleen E. Kelly
**HINSHAW & CULBERTSON LLP**
28 State Street
Boston, MA 02109
Phone: 617-213-7000
Fax: 617-213-7001
gcoan@hinshawlaw.com
kekelly@hinshawlaw.com

***Counsel for Defendant Sun Pharmaceuticals Industries, Inc. f/k/a Caraco Laboratories, Ltd.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2018, I electronically filed the foregoing with the Clerk of

the Court using the ECF system which sent notification of such filing to all counsel of record.


*/s/ Douglas J. Moore*