UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  TAXOTERE (DOCETAXEL)      *    16-MDL-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *    Section H
                                  *
Relates To All Cases              *    July 18, 2018
                                  *

*****************************************************************

REPORTER'S OFFICIAL TRANSCRIPT OF THE
**STATUS CONFERENCE**
BEFORE THE HONORABLE MICHAEL B. NORTH,
UNITED STATES MAGISTRATE JUDGE.

*****************************************************************

**APPEARANCES:**

**For the Plaintiffs:**

Emily Jeffcott, Esq.            Karen Menzies,Esq.
Palmer Lambert, Esq.           Zachary Wool, Esq.
Jessica Reynolds, Esq.         Kyle Bachus, Esq.
Chris Coffin, Esq.             Darin Schanker, Esq.
Daniel Markhoff, Esq.          Dawn Barrios, Esq.
David Miceli, Esq.             Abby McClellan, Esq.

**For the Defendants:**

Julie Callsen, Esq.            Julie Park, Esq.
Mara Gonzalez, Esq.            Harley Ratliff, Esq.
Kathleen Kelly, Esq.           Beth Toberman, Esq.
R. Clifton Merrell, Esq.       Debbie Rouen, Esq.
Douglas Moore, Esq.            Peter Rotolo, Esq.
John Olinde, Esq.              Adrienne Byard, Esq.
Patrick Oot, Esq.


Also Present:  Kenneth W. Dejean, Special Master


**REPORTED BY:**      Mary V. Thompson, RMR, FCRR
                      500 Poydras Street, Room B-275
                      New Orleans, Louisiana  70130
                      (504)589-7783

**OFFICIAL TRANSCRIPT**

**P R O C E E D I N G S**

(Call to order of the court.)

THE COURT:  Good afternoon, everyone.  You can have a seat.

01:35:13

THE LAW CLERK:  This is MDL proceeding 16:2740, *In Re: Taxotere Products Liability Litigation.*

THE COURT:  All right.  I've got the list of everyone who is here in lieu of everyone making an appearance on the record.

01:35:27

All right.  So we are here on Sanofi's motion for a protective order.

My first question -- who am I talking to over here?

MR. RATLIFF:  (Indicating.)

THE COURT:  Mr. Ratliff.

01:35:46

Is this really the eleventh version of the deposition notice?

MR. RATLIFF:  Your Honor, I can't speak to whether it's the absolute eleventh version, but this has been a deposition notice that has been subject to extensive meet-and-confers and

01:36:00

extensive revisions back and forth, some of which we had accepted, others of which we had not.

Whether it's the tenth or eleventh version, that I can't speak to.

THE COURT:  My question is:  How do we get from some

01:36:12

lengthy negotiation over the scope of a deposition to a motion

**OFFICIAL TRANSCRIPT**

1   that says we don't have to give a deposition at all?

2        MR. RATLIFF:  Well, Your Honor, I think --

3        THE COURT:  I can't conceive of how that happened.

4        MR. RATLIFF:  No.  Understood, Your Honor.

*01:36:25*   5        I think what happened is over a set of negotiations, it

6   eventually reached a point where there was an impasse on what the

7   scope of the deposition notice was.  And these were certain

8   impasses that we felt were insurmountable.

9        So, one, the plaintiffs' refusal to define the

*01:36:43*  10  injuries.  The injury, of course, they say is persistent alopecia

11  or permanent alopecia, and they want a corporate representative

12  to come and testify about Sanofi's position on persistent or

13  permanent alopecia.

14       THE COURT:  What I'm seeing, at least from what I read

*01:36:59*  15  in the PSC's brief, led me to believe that you-all had reached

16  some agreement on that issue.

17       MR. RATLIFF:  There was some agreement as it related to

18  Topic 1, which would be the case reports that we would look for

19  that would be six months after chemotherapy.

*01:37:16*  20       THE COURT:  Okay.

21       MR. RATLIFF:  But that doesn't resolve that issue, that

22  kind of fundamental issue as it relates to the entire deposition.

23       For example, we have Topic 2, which is 70 different

24  reports that they have listed out that they say are reports of

*01:37:29*  25  persistent alopecia.  Some of them are one month after

**OFFICIAL TRANSCRIPT**

1  chemotherapy, and some of them are two months, and then resolved.

2       THE COURT:  What's the meaning of the definition in the

3  PSC's brief that says, "Alopecia six months after chemotherapy

4  ended and without subsequent resolution"?

*01:37:50*

5       MR. RATLIFF:  That's what we want for the deposition

6  notice and which they refuse to put in there, because there's

7  obviously going to be a deposition.  There's going to be hundreds

8  of questions using the terms persistent or permanent alopecia.

9       THE COURT:  Let me cut through this and ask

*01:38:05*

10 Ms. Menzies.

11       Who has the deposition --

12       MR. COFFIN:  Mr. Bachus.

13       THE COURT:  Can't you just define "persistent alopecia"

14 with that deposition in the notice across the board?

*01:38:18*

15       MR. BACHUS:  Can I approach?

16       THE COURT:  Yes.

17       MR. BACHUS:  Thank you.

18       So for purposes of the defendant's preparation, we've

19 agreed, as Your Honor sees in our brief -- we have agreed that

*01:38:32*

20 for preparation purposes and for their identification purposes,

21 that six-month brightline will be applicable.

22       THE COURT:  For purposes of any depositions taken

23 pursuant to this notice?

24       MR. BACHUS:  That's right.

*01:38:45*

25       THE COURT:  When you use those words during the

**OFFICIAL TRANSCRIPT**

 1   deposition, everyone understands that that's what the words mean?

 2          MR. BACHUS:  Yes.  But there is a caveat that I do need

 3   to explain to the Court, that although the defendants, in

 4   identifying and prepping a witness -- see, what we agreed to

 5   do -- and, unfortunately, Mr. Ratliff wasn't involved in any of

 6   our discussions.  It was Adrienne.

 7          MR. RATLIFF:  She's on the phone.

 8          MR. BACHUS:  So she can tell you as well.

 9          What we agreed to do is that there weren't going to be

10   any "gotcha" moments.  We were going to agree on a set of

11   documents.

12          And, Your Honor, this is just so you can see visually

13   (indicating).  This is the set of documents that are the

14   printed-out Bates-labeled numbered documents.

15          As part of their preparation, Adrienne agreed they were

16   going to go back to see whether they had anything to add to our

17   group of documents, and we were going to continue to look as

18   well.  And before the deposition, everybody was going to have

19   every document that was going to be talked about during the

20   course of the deposition.

21          The disagreement was they have a brightline of six

22   months.  There are some of ours that are less than six months,

23   but if you look at the documents themselves, which is really the

24   issue, the documents themselves may say that the person reported

25   to the company that they had this persisting alopecia.  "My hair

**OFFICIAL TRANSCRIPT**

1    didn't grow back and it's been four months since I stopped taking

2    your product."

3           And then there might be an addendum that's written

4    where the company looks at it a year later, or does a follow-up,

5    and we want to be able to ask questions about some of those that

6    are in -- not that brightline of six month, but the first report

7    was four-and-a-half months and it looks like there was follow-up

8    after that six-month period of time.  And we want to be able to

9    ask questions about are we correct that the company did follow up

10   and confirm this was still an ongoing event or did they not

11   follow up.

12          The point is, we didn't use such a brightline, this six

13   months, because we think there are some that fall -- by report

14   fall just short of that.

15          What we did, we solved the problem in that those are

16   the only documents we're going to be talking about in the

17   deposition.  There isn't going to be a surprise.  And we agreed

18   in -- at Your Honor's request, once this motion was filed, we

19   continued to confer, and we did reach an agreement that that's

20   fine, they can use the brightline for purposes of their

21   good-faith obligation.

22          So that's where we stand.  It really is much ado about

23   nothing at this point because we have identified the documents.

24          THE COURT:  Let me ask you about the number of reports.

25   And I'm looking at Sanofi's reply memo.

**OFFICIAL TRANSCRIPT**

1           There are a number of reports where "persistent
2    alopecia" means that alopecia occurred during treatment.
3           I'm going to leave out the "continues less than six
4    months after last infusion."
5           But the first two -- the first two listed, alopecia
6    that occurs during treatment and alopecia that eventually
7    resolves, why do you need to ask questions about those?
8           MR. BACHUS:  So, Your Honor, I think that, first of
9    all, the documents themselves leave some gray area as to what
10   sometimes they mean.
11          There are -- certainly most people lost their hair
12   during chemotherapy.  It's not when they lost their hair, it's
13   when they recognized for themselves that they wanted to call or
14   make a complaint or report, or an investigator followed up on a
15   question.
16          So, yes, almost all of them lost their hair during
17   treatment.  And some of them, it appears from the record, may be
18   six months or eight months out.  Maybe they recovered.  It may be
19   some, it may be all, it may be none.
20          Those are some of the questions we want to ask and
21   understand in their forms, their standard operating procedures,
22   how things are documented in the files.
23          So, I mean, there may be a case where somebody reported
24   to the company that they had persisting alopecia six months
25   after, and four months later or six months later there's a

01:41:26
01:41:48
01:42:02
01:42:17
01:42:35

**OFFICIAL TRANSCRIPT**

1  follow-up from the company and it may be reported it has been

2  resolved.

3          THE COURT:  My concern, when we're talking about this

4  particular issue, is they've got to find witnesses to prepare to

01:42:51  5  testify about these reports, because you want to ask questions

6  about them, when they are not fitting within the definition that

7  you-all seem to have agreed to.

8          MR. BACHUS:  Well, I think, Your Honor, that by my

9  representation -- and I will tell you Adrienne and I continued to

01:43:13  10  work through.  We have an idea right now where -- the ten that

11  she thinks shouldn't be there, I'm going to look at them.  She's

12  going to look at them.  We're going to continue to work towards a

13  refinement.

14          I have no interest -- zero interest in wasting

01:43:28  15  anybody's time talking about alopecia that both occurred and

16  resolved during the course of treatment.  I'm not going to ask

17  questions about those, and we'll eliminate those if there are

18  any.

19          I think that the forms themselves are -- there are

01:43:39  20  questions.  That's why she and I are going to compare notes on

21  them and continue to refine them.

22          But the good news, Your Honor, is there aren't going to

23  be any surprises.  Whatever is in this notebook (indicating) --

24          THE COURT:  Well, nobody has raised an issue or a

01:43:53  25  concern about surprise.  It's about preparing witnesses to

**OFFICIAL TRANSCRIPT**

1   testify about reports and documents they may have never seen

2   before.

3          MR. BACHUS:  Well, yes, I think that's the obligation

4   of the company, to go on the record and provide their testimony.

*01:44:07*

5          And if the testimony happens to be that we don't know

6   the answer, that's okay.

7          But they do know the answer.  It seems from the reply

8   brief that they have a lot of information, their own opinions

9   about some of these reports, and they can go on the record and

*01:44:21*

10   say those opinions.

11          This is a discovery deposition.  I think, you know,

12   from a proportionality perspective -- of course, we just learned

13   this morning that there are now more than 9,000 women who are

14   part of this MDL.

*01:44:33*

15          I appreciate and understand -- because, believe me,

16   we've spent hundreds of hours going through to locate these

17   documents to try to make it as easy on everybody as possible.  I

18   think in the brief they had spent 500 hours.  I think that's

19   about three minutes per plaintiff at this point.

*01:44:48*

20          THE COURT:  We'll talk about proportionality, I guess,

21   in more general terms at some point during this hearing, but I

22   just want to stick to this first issue.

23          MR. BACHUS:  Your Honor --

24          THE COURT:  I'm inclined to let you and Adrienne

*01:45:06*

25   continue to talk about limiting the number of reports, and have

**OFFICIAL TRANSCRIPT**

1   you-all get back to me and let me know you either agreed or you

2   need my further assistance.

3           MR. BACHUS:  I think that's a fine idea.  We've --

4           THE COURT:  Mr. Ratliff, is that suitable to you-all?

01:45:24

5           MR. RATLIFF:  Yeah.  Absolutely, Your Honor.

6           THE COURT:  It sounds like you-all generally have an

7   agreement around these.

8           MS. BYARD:  Your Honor, if I may just correct one item.

9           Adrienne Byard for Sanofi.

01:45:36

10          It's actually 39 of the remaining 70 reports that don't

11  meet the criteria that plaintiffs have articulated but won't put

12  in the definition.

13          But if Your Honor thinks it would be advisable to

14  continue to meet-and-confer on whether those 39 of 70 ought to

01:45:52

15  remain in the notice, we'll certainly endeavor to do that.

16          But that's the issue without a definition, looking at

17  those.

18          THE COURT:  I would like for you to do that, because

19  I'd rather not just draw a brightline.  I can envision where, in

01:46:05

20  some of those reports, there might not be sufficient information

21  for you or Mr. Bachus to be able to draw that line.  So with that

22  in mind, why don't you-all continue to discuss how to limit that.

23          I know you don't have a whole lot of time to do that.

24  But just report back to me, and if I have to referee a handful of

01:46:26

25  them at the end, then I will.  We'll do it that way.

**OFFICIAL TRANSCRIPT**

1        MR. BACHUS:  All right.

2        MR. RATLIFF:  Your Honor, just to address this issue in

3   a little bit more clarity, I guess the master complaint defines

4   "permanent alopecia" as occurring six months after completion --

01:46:42   5        THE COURT:  Persistent or permanent?

6        MR. RATLIFF:  Permanent.

7        THE COURT:  Okay.  But that's not what we're arguing

8   about right now.

9        MR. RATLIFF:  Sometimes they refer to it as persistent.

01:46:48   10   They use the terms interchangeably.

11        Why won't they use that definition here?  If that's the

12   agreement that they have used for Topic 1, why can't we have that

13   in the notice?

14        Because it does get to the point of --

01:46:59   15        THE COURT:  I've asked that question.  Is that

16   definition not going to apply across the board on this notice?

17        MR. BACHUS:  Well --

18        THE COURT:  Because I think that it should.

19        MR. BACHUS:  To be perfectly clear, again, the

01:47:13   20   brightline is what they're using to prepare their witnesses and

21   to produce documents.

22        We have identified some documents that will -- for

23   instance, somebody makes a report four months after.  They say

24   their hair has not grown back.  If there is no follow-up report,

01:47:30   25   did that get better in the next two months or is that something

**OFFICIAL TRANSCRIPT**

1  that went on for three, five, or seven years?

2          THE COURT:  I understand.

3          MR. BACHUS:  The only way that I know what happened

4  next is to be able to ask the question, right?

*01:47:41*  5          Did you have -- did you follow the requirements?

6          Somebody has reported that this adverse event was an

7  important -- however they might define it.  Then the follow-up

8  question is:  Did you check back to see?

9          So that's --

*01:47:54*  10          THE COURT:  We're talking about two different things

11  now.

12          MR. BACHUS:  That's all that we're talking about

13  really.

14          THE COURT:  That's what we just were talking about.

*01:48:01*  15  Okay?  And I understand that you may have reports that fit that

16  mold.

17          MR. BACHUS:  Yes, sir.

18          THE COURT:  And when I was addressing Adrienne's point

19  on the phone and yours, if there are reports like that, then I

*01:48:14*  20  think you ought to be able to ask those questions.

21          If there is no follow-up and you don't know the answer,

22  then you ought to be able to ask about them.  They may not have

23  anybody that knows the answer, but you should be able to ask

24  about them.

*01:48:27*  25          MR. BACHUS:  Fair enough.

**OFFICIAL TRANSCRIPT**

1        THE COURT:  I am back to this question:  Is persistent
2    alopecia going to be defined the same way for all purposes
3    related to this deposition notice?
4        And if not, why not?
01:48:40    5        MR. BACHUS:  I think the answer is no.
6        And the "why not" is that there are a hundred and
7    something law firms who have filed cases, and we're just
8    preparing the general liability case for those individuals.  And
9    I can't tell you, as an officer of the court, whether every
01:48:57   10    single plaintiff lawyer who has filed the cases aligned with a
11    brightline definition.
12        THE COURT:  Okay.  Well, I'm going to help you with
13    that.
14        MR. BACHUS:  Well, I think that the problem is that if
01:49:09   15    there is a plaintiff who has filed a case who had alopecia that
16    persisted for six months and got better, let's say, I don't think
17    that we can make a decision as the PSC -- nor do I think that the
18    Court could make a decision -- that that person doesn't have a
19    case if they filed a lawsuit.
01:49:29   20        THE COURT:  We're not at that point.
21        MR. BACHUS:  Okay.
22        THE COURT:  Listen, I'm trying to help you-all define
23    the scope of the deposition.
24        MR. BACHUS:  Well, so --
01:49:37   25        THE COURT:  That's all we're talking about.

**OFFICIAL TRANSCRIPT**

 1          MR. BACHUS:  So that the Court understands, the only

 2    subject matter for which this conversation matters that we're

 3    having right now is a non-issue because we defined the actual

 4    documents we're going to ask questions about.

 5          And the documents themselves use those different terms.

 6    Somebody might report --

 7          THE COURT:  This is going to go in the minute entry

 8    when this hearing is over.  For all purposes related to this

 9    30(b)(6) notice, permanent alopecia will be defined as we have

10    just defined it.

11          MR. BACHUS:  Fair enough.

12          THE COURT:  And I just read it and I'm not going to --

13    hold on.

14          "Alopecia six months after chemotherapy ended and

15    without subsequent resolution."

16          That's going to be my order that pertains to the scope

17    of this 30(b)(6) deposition.

18          MR. BACHUS:  As it relates to questions asked in the

19    deposition using the word "permanent" is what you're defining?  I

20    want to make sure I'm clear on --

21          THE COURT:  Is it "permanent" or "persistent" that you

22    are arguing about?  What's in the notice?

23          MR. RATLIFF:  The notice is "persistent."

24          And in the master complaint they use those terms

25    interchangeably.

*01:49:53*

*01:50:12*

*01:50:26*

*01:50:39*

*01:50:50*

**OFFICIAL TRANSCRIPT**

1    THE COURT:  We're talking about the deposition notice.

2  This is a motion for protective order on 30(b)(6) deposition

3  notice, Version 11 -- or 10.5 or whatever it is.

4    For purposes of the 30(b)(6) deposition that's going to

5  take place, "persistent alopecia" will be defined as I just read,

6  and it will be written in the minute entry.

7    MR. BACHUS:  Your Honor, can I just ask one

8  clarification?  I hear you loud and clear.  I don't want you to

9  think I'm not listening to you.  I hear you.

10    I want to make certain that we've discussed some of the

11  entries that were not so bright-lined as your definition that

12  you've just provided.

13    THE COURT:  I've made that clear.

14    MR. BACHUS:  Okay.

15    THE COURT:  Look, you-all take the definition out as

16  far as I'm concerned.  I don't know why you need the definition.

17    MR. BACHUS:  You're right.

18    THE COURT:  Well, then, take it out.  It's your notice.

19    MR. BACHUS:  Well, now that we've reached an agreement

20  on the documents, it really is superfluous.

21    THE COURT:  But the definition that y'all have agreed

22  to is going to drive your conversations about limiting those

23  documents.

24    MR. BACHUS:  So --

25    THE COURT:  I think --

**OFFICIAL TRANSCRIPT**

1    MR. BACHUS:  I think we're on the same page.

2    THE COURT:  -- we're going in circles.

3    MR. BACHUS:  I just want to make sure that when

4 Adrienne and I are having the discussion after this in further

01:52:00  5 conferral, that we understand that there are -- that the not-

6 bright-lined examples, like I just gave to you a moment ago, are

7 still documents that can be included in the notice.

8    THE COURT:  If there is a complaint or a notice or an

9 indication or whatever -- however it's characterized by

01:52:21 10 someone -- whether it's two months, three months, or four months,

11 but there's no follow-up to determine how it resolved or whether

12 it resolved, you ought to be able to ask that question.

13    MR. BACHUS:  I will tell you on the record, as I said

14 previously, if there is a case where somebody complained of and

01:52:36 15 recovered from persistent alopecia within the six-month

16 treatment, I'm not going to ask a single question.  I'm going to

17 remove those documents.

18    THE COURT:  And they should be removed.

19    MR. BACHUS:  I understand.  And that's what I'm telling

01:52:46 20 you, as an officer of the Court, I intend to do.

21    THE COURT:  All right.

22    Does that address Topic 2 -- 1 and 2?

23    MR. RATLIFF:  Your Honor, in part.  It certainly

24 addresses -- in part.  There are parts of Topic 1 and Topic 2

01:53:07 25 which I think the issues are twofold.

**OFFICIAL TRANSCRIPT**

1    One, a number of these reports, and what they're

2    requesting from the report in their 30(b)(6) notice, we've

3    already provided to them all of the information that we can find

4    in writing.  What was the date?  Who was it reported to?  When

01:53:22    5    was it reported?

6    So these are questions or topics that, as listed out,

7    we've already provided them the information in writing.

8    So I'm not sure what a deponent is supposed to do

9    beyond just read what's on the face of these particular

01:53:37    10    documents.

11    The other -- and I understand.

12    The other issue is --

13    THE COURT:  No, I'm thinking.

14    Go ahead.  I'm listening.  I'm thinking and listening

01:53:45    15    at the same time.

16    MR. RATLIFF:  It was an exhibit to our initial motion

17    for protective order.  I know you don't like people bringing you

18    documents.  It was an extensive chart going through every single

19    thing.  And this is what the time spent on our end was --

01:53:58    20    THE COURT:  So let me make a general observation,

21    because the argument that you're making now -- the observation

22    that you're making now sort of cuts across a lot of the remainder

23    of the notice.

24    MR. RATLIFF:  Correct, Your Honor.

01:54:10    25    THE COURT:  I'm sure that as to some or all of the

**OFFICIAL TRANSCRIPT**

1   these reports, you have already provided some of the information

2   such as when was it received.

3            If that's the case, then maybe the PSC can take that

4   subcategory out of the notice.  If they know when every one of

01:54:38   5   those things was received, that's fine.  If they want to just

6   hand the table to the witness and say are these dates correct,

7   they are entitled to do that.

8            MR. RATLIFF:  Understood.

9            THE COURT:  The fact that you have produced documents

01:54:51   10   in this case is not going to relieve you of the obligation to

11   produce a witness to talk about the documents or the issues that

12   the documents pertain to.  Simply saying "we've given them

13   everything" without giving them a witness to talk about what's in

14   those documents is not going to work.

01:55:09   15            MR. RATLIFF:  Understood, Your Honor.

16            I think it's the sort of symbiotic relationship between

17   what's in the notice and the specificity that's in the notice and

18   what the witness is anticipated -- or what we need to have the

19   witness prepared to speak on.

01:55:23   20            And so if we have provided all of the information

21   that's in all of the subtopics, then certainly they're going to

22   want to ask questions beyond that.  And so we don't know what

23   other questions we need to have these witnesses prepared on.

24            THE COURT:  I don't know, they've given you a pretty

01:55:38   25   detailed list of what they want to talk about.

**OFFICIAL TRANSCRIPT**

1          For instance, with those reports, in the first two

2     topics, you have pretty detailed lists of what you need to

3     prepare your witnesses to talk about.

4          MR. RATLIFF:  So that gets us to the second point that

5     I was going to make.

6          For a lot of this information in Topic 1 and Topic 2

7     with all of the subparts about the individual courts, there's a

8     lot of that that we can locate, we can get a witness prepared on,

9     and we will get a witness prepared on.

10         There are some of those subtopics that, because of the

11    age -- this goes back to -- they are essentially asking from

12    1992, so four years before the product was even approved or sold

13    in the United States, to I believe 2004.  So 26 years ago and a

14    12-year time period.  Our ability to get a witness prepared and

15    the value that would come of it, I think, is minimal.

16         So, for example, one of them is the standard operating

17    procedures regarding the receipt of such reports, whether you

18    followed them, and all action taken by anyone associated with you

19    with regard to the report.

20         Well, us trying to marry up or have a witness go

21    through, over the course of 12 years all the way back 26 years

22    ago, over 70 reports -- to marry up, did this SOP apply, did this

23    SOP apply --

24         THE COURT:  I read that argument in your brief so I

25    have a couple of questions.

**OFFICIAL TRANSCRIPT**

1          One, with regard to that issue, what was the standard
2    operating procedure and was it followed?
3          That's not going to apply in 1992.  It's going to start
4    to apply in 1996 when the drug was sold.  So it's eight years,
*01:57:14*  5    '96 to 2004.
6          How many SOPs could there possibly be over an
7    eight-year period on this discrete issue?
8          MR. RATLIFF:  The SOPs in companies like Sanofi get
9    revised routinely -- routinely.  So do I have the exact number in
*01:57:32*  10   front of me?  No, I do not.
11         THE COURT:  Well, somebody said it was "monstrous" in
12   the brief, and I just have a hard time believing that.
13         MR. RATLIFF:  That's how SOPs work within companies,
14   because they are constantly trying to review them to make them
*01:57:44*  15   better, more clean, more clear.  So trying to marry up every
16   single version --
17         THE COURT:  That doesn't strike me as a particularly
18   cumbersome task --
19         MR. RATLIFF:  I think --
*01:57:54*  20        THE COURT:  -- because you know the dates of the
21   reports.
22         MR. RATLIFF:  Okay.
23         I think the other one is the question about all actions
24   taken by you with regard to this report.  Your Honor, we,
*01:58:04*  25   frankly, do not have a witness that can talk about all action

**OFFICIAL TRANSCRIPT**

1   taken 20 years ago by people who are no longer employees.

2        THE COURT:  That doesn't surprise me at all.  I don't

3   think it's going to surprise the PSC either.

4        There are limitations to what you can have a witness in

5   a 30(b)(6) testify to.  If no one knows the answer, and if no one

6   can prepare the witness, then the answer is "no one knows the

7   answer to that question."

8        MR. RATLIFF:  Understood, Your Honor.

9        THE COURT:  If the information is available to the

10  company, then it can be used in preparation to prepare your

11  witness.

12        There are going to be questions that nobody can answer.

13  I fully expect that, considering how far back the notice goes.

14        MR. RATLIFF:  Okay.  And we understand, Your Honor.  We

15  didn't want to be in a situation where, you know, two months from

16  now they come back and say that Sanofi was supposed to be

17  prepared and they didn't know the answer, because that certainly

18  happens in these 30(b)(6) notices.

19        THE COURT:  Let me just say this.  That's a pretty

20  detailed -- I mean, it's only six topics.  But within some of

21  those topics, they've gone into, I think, pretty good detail in

22  terms of the types of information they want your deponent to be

23  able to talk about as to these reports.

24        In the course of preparing your designee or designees,

25  as you go through these reports and you learn that, as to some of

**OFFICIAL TRANSCRIPT**

1    them, you don't know this information or that information, you

2    ought to let your opponent know before the deposition takes

3    place.

4                MR. RATLIFF:  We have done that already.  In fact, the

01:59:39    5    chart that we provided them said here's all the information we

6    know about these and here are the ones that we do not have an

7    answer for, because it's too old in time and we can't locate an

8    answer in documentation, talking to witnesses, and people who are

9    no longer at the company.

01:59:53   10                THE COURT:  That's all I expect you-all to do.

11                MR. RATLIFF:  Okay.  Thank you, Your Honor.

12                THE COURT:  One of the most frustrating things about

13    this job is when you order a 30(b)(6) to go forward, and they

14    come back and say the witness spent half the time saying "I don't

02:00:07   15    know the answer to that question," and the person taking the

16    deposition doesn't know that until they are in the deposition and

17    now we've got to address it.

18                So to the extent that you know where the gaps are, you

19    need to let them know before the deposition takes place.

02:00:22   20                MR. RATLIFF:  We have done that, Your Honor.

21                THE COURT:  Okay.

22                MR. RATLIFF:  If there is anything else that comes up,

23    we'll let them know as well, because it impacts our ability --

24    what we should be focusing on with our individual witnesses.

02:00:33   25    That was one of the reasons we wanted to raise this before

**OFFICIAL TRANSCRIPT**

1   Your Honor.

2          THE COURT:  All right.

3          MR. RATLIFF:  I think the last point that I think we

4   put in our original motion for protective order and our reply

02:00:44   5   relates to some of the topics that just say what are the findings

6   of this particular study.  So what's the finding related to the

7   Tax 316 Study at 55 months.

8          THE COURT:  I think you're reading the notice a little

9   bit too narrowly.

02:00:58  10          MR. RATLIFF:  Then we will prepare our witnesses the

11   best we can with that additional clarity.

12          THE COURT:  I think that in the last two pages of the

13   PSC's opposition, I think they did a pretty good job when they

14   said:  We should be allowed to ask a witness blank.

02:01:21  15          For instance, on Topic No. 4:  Regardless of whether a

16   separate plan or study was -- this is about the statistical

17   analysis plan.

18          Regardless of whether a separate plan or study was ever

19   completed, plaintiffs are entitled to question a witness about

02:01:36  20   the reference in its statistical analysis plan which clearly

21   reflects that someone at Sanofi was thinking about a

22   reversibility of alopecia as early as 2003.

23          It's not someone to testify that it exists, that it

24   happened, it's to testify about these topics.

02:01:55  25          MR. RATLIFF:  So, Your Honor, I agree with you.  And

**OFFICIAL TRANSCRIPT**

1  that is, in part, why we had to file a motion for protective

2  order, because that's the type of clarity that was not put in the

3  notice and they refused to put in the notice.  So we only got

4  this clarity once we got the opposition.

02:02:09

5           THE COURT:  I don't know how you-all can go through

6  this many versions of a deposition notice and then come to the

7  conclusion you've got to file a motion for a protective order

8  that essentially seeks to avoid the entire deposition.

9           MS. BYARD:  Your Honor?

02:02:22

10          MR. RATLIFF:  Adrienne.

11          MS. BYARD:  I think that's probably a typographical

12  issue in the plaintiffs' motion.  While they may very well have

13  revised this 11 times on their end, discussing it amongst

14  themselves, the parties exchanged three versions and the second

02:02:38

15  one was where certain changes we had agreed to make had

16  inadvertently not been included.  So the parties have discussed

17  only two versions.

18          THE COURT:  That makes me feel a little better.

19          My point is, you ought not to have to file a motion for

02:02:56

20  protective order to have a meaningful discussion about the scope

21  of the deposition.

22          MR. RATLIFF:  Understood, Your Honor.

23          THE COURT:  And it does not surprise me that you-all

24  come here for a hearing, and, you know, you're not jumping up and

02:03:12

25  down and screaming and pounding the table that what you have

**OFFICIAL TRANSCRIPT**

1    asked for is really what you -- you know, that no deposition

2    should take place.  Because my experience for the most part with

3    y'all, when you come here, is that you are reasonable.  I just

4    wish you would be reasonable with each other when you're not

5    here.

6            Because this is not a complicated problem.  It's a

7    six-topic 30(b)(6) notice.

8            MR. RATLIFF:  Understood, Your Honor.

9            I think part of this is there have been a lot of

10   negotiations, but when you are the defendant and you're getting

11   the witnesses prepared for the 30(b)(6), you want to make sure

12   you have the clarity on what is the scope of the deposition.

13           And it gets right back to the scope.  What's the

14   definition of the injury?  What are the rules of the game?

15           THE COURT:  The last four topics in this notice

16   reference pretty specific documents, plans, lists of patients,

17   those sorts of things.  And they've given you the information

18   that they want to ask.

19           You need to prepare your witnesses to testify about

20   those things.  Not to read them into the record -- not to read a

21   list of people into the record, but to testify about that list.

22           What does it mean?  What did you do about it?  What did

23   you not do about it?  Why?  Those sorts of things.  They're

24   topics.

25           I don't have a problem with any of them, and I think as

*02:03:26*
*02:03:42*
*02:03:56*
*02:04:13*
*02:04:30*

**OFFICIAL TRANSCRIPT**

 1  long as you-all are communicating before the deposition takes
 2  place, you-all shouldn't have a problem.
 3          So the minute entry is going to reflect that the
 4  deposition should go forward on these topics, and it will reflect
02:04:54   5  what I said would be in there in terms of the -- I guess the
 6  definition of "persistent alopecia" for purposes of the 30(b)(6)
 7  deposition.
 8          MR. RATLIFF:  Thank you, Your Honor.  That was the most
 9  important thing to us.
02:05:04  10          THE COURT:  And it's also going to reflect that my
11  expectation is that the parties are going to continue to work
12  toward culling any irrelevant or unnecessary reports out of the
13  tables that were provided with the deposition notice so that
14  you're not asking questions or trying to prepare a witness about
02:05:25  15  something that doesn't matter.
16          MR. RATLIFF:  Thank you, Your Honor.
17          THE COURT:  Okay.
18          MR. RATLIFF:  Thank you.
19          THE COURT:  All right.  Anything else?
02:05:34  20          MR. BACHUS:  Not on that topic, but you did ask me, in
21  our conference call, to update Your Honor on the status of the
22  71A issues as it relates to the Taxotears.  I don't know if you
23  wanted me to do that.
24          THE COURT:  We're here so why don't you let me know
02:05:54  25  what's going on.

**OFFICIAL TRANSCRIPT**

1        MR. BACHUS:  As of this morning, my understanding --

2    first of all, there were names on Mr. Ratliff's letter and there

3    were some names on the Court's order that were inconsistent with

4    one another, but I took them all cumulatively.  And I believe

02:06:14    5    that there were a total of 16 names that were Bachus & Schanker

6    plaintiffs.

7        For those 16, I think 13 of those are now in full

8    compliance based upon reports from my office in terms of the

9    uploaded documentation and ESI.

02:06:34   10        There is a -- so that's three that are left.

11        One of these I explained to the Court is

12    Yolanda Herron.  Ms. Herron passed away on June 18th of 2018.

13        We did reach her husband and he did provide us -- he

14    did go looking and he did provide some ESI, and that has been

02:06:54   15    uploaded.  I can't tell you that that is everything she may have

16    had because he had limited knowledge about that one.

17        THE COURT:  Right.

18        MR. BACHUS:  There is a Courtney Preusse.  She has

19    delivered a -- returned a "no" form to us with respect to ESI,

02:07:10   20    and I informed the Court of that during our last conference on

21    this.  We have continued to follow up with her.  She's been very

22    difficult to reach.

23        We're unclear as to whether "no" is really -- "no"

24    means "no" because of this inclusion in this group per

02:07:28   25    Mr. Ratliff.  So we continue to try to reach her.  All we have is

**OFFICIAL TRANSCRIPT**

1    "no."  We did upload the "no."

2         There is one other, and that is Jenifer Weigand.

3    Ms. Weigand finally came through with ESI.  Unfortunately, it

4    started out as 138,000 documents.  It -- then in running through

02:07:53    5    the terms, it's down to 15,000 documents.

6         We hired an ESI company, as I told you.  It's an ESI

7    vendor who has assisted us with some of these massive amounts.

8    They have already spent -- and I suppose will be billing my

9    office -- for more than 60 hours of time going through those

02:08:08    10    records.  We understand from them this morning that they expect

11    another 13 to 15 hours of time before they deliver it back to our

12    office, and our office can then go to work on it once it returns.

13         But I want the Court to understand the scope of some of

14    this as it relates to these individual plaintiffs who are not

02:08:25    15    even trial plaintiffs.  But we're working on it and we're very

16    close.

17         THE COURT:  I get they are not trial plaintiffs but

18    they are identified as members of this group.

19         MR. BACHUS:  Yes, sir.  So I just wanted to update you.

02:08:34    20    I hope you're happy with the progress.  I certainly am.  I know

21    our team worked very hard to try to get this to you in the time

22    frame that you wanted.  And I expect the Weigand -- that will be

23    hopefully in the next couple of days, depending on when we get

24    the ESI back from them.

02:08:47    25         THE COURT:  Thank you.

**OFFICIAL TRANSCRIPT**

1          I guess you ought to be happy with that kind of ESI

2   from one plaintiff.

3          MR. RATLIFF:  Well, I -- I'm not questioning what

4   Mr. Bachus has reported, but for the June 16th deadline, we are

02:08:58   5   just starting to get those in and starting to review them.  Once

6   we go through, we can make a determination of whether there is a

7   disconnect between what we have seen and what Mr. Bachus

8   represented.

9          THE COURT:  Not necessarily related to anything, but

02:09:12   10   are you-all discussing with Judge Milazzo -- I know you met with

11   her today.

12          MR. RATLIFF:  Correct.

13          THE COURT:  Are you-all discussing some alteration to

14   the plaintiff fact sheet deficiency process?

02:09:24   15          MR. RATLIFF:  Well, yes.

16          THE COURT:  Is that something that is --

17          MR. RATLIFF:  I'll let Mr. Moore address that.

18          THE COURT:  Is that something you are in the middle of?

19          MR. MOORE:  Yes.  We submitted a proposed revised

02:09:34   20   version of a show cause order to address plaintiff fact sheet

21   deficiencies.  There were four issues we needed her guidance on.

22   She gave us that guidance this morning, and then we're revising

23   it and submitting it now.

24          The difference between the process, really, from the

02:09:48   25   Court's perspective, was Judge Engelhardt had a two-page written

**OFFICIAL TRANSCRIPT**

1  submission submitted by each person who was subject to a show

2  cause order.

3      Judge Milazzo is going to do it like Judge Fallon does

4  in Xarelto where it's an actual call docket after the status

02:10:03  5  conference where they come in and show cause.

6      THE COURT:  From the lawyer's perspective -- because I

7  know to the distress of Mr. Ratliff and Mr. Oot and others, I

8  have often said there's already a process in place if you have a

9  problem with the plaintiffs' production.

02:10:20  10     From the lawyer's perspective, if whatever

11  Judge Milazzo does that's different than what Judge Engelhardt

12  was doing, if you think that -- if you think that y'all need to

13  have a discussion with me with regard to any -- whether it's

14  ESI -- whether it's the fact sheets or the ESI, once it's in

02:10:42  15  place, just let me know.  Put it on the agenda and raise it.

16     I understood what Judge Engelhardt was doing, and

17  that's why I was comfortable relying on that process in the

18  number of situations where you-all were asking for different

19  relief.  I don't want to continue to rely on a different process

02:11:02  20  if any of you think I need to do something differently once it's

21  in place.

22     MS. BARRIOS:  Your Honor, it was clear from

23  Judge Milazzo this morning that we were talking about three

24  different issues.

02:11:13  25     One was the plaintiff fact sheet, and that's the

**OFFICIAL TRANSCRIPT**

1  process that Doug described that we're going to do on a call

2  docket.

3       And then the defendants had asked in their submission

4  that the show cause order process also apply to product ID and

02:11:29  5  ESI.  Judge Milazzo said, "I'm just getting my arms around this

6  litigation.  That maybe will be the process later on, but we're

7  not addressing that now."

8       So I don't -- I appreciate Your Honor's offer to

9  discuss it with us, but at least right now she's not going to be

02:11:49  10 looking at the ESI or product ID on a show cause basis.

11      THE COURT:  I think the ESI part may wind up being

12 addressed sooner -- certainly sooner than the product ID part.

13      MR. RATLIFF:  Your Honor, to address the PTO 71A, the

14 ESI issue -- and I think some of the frustration is because there

02:12:10  15 was a process in place with Judge Engelhardt to address kind of

16 standardized fact sheet deficiencies.  Did they submit this

17 document?  Did they submit, you know, this information?  Did they

18 not fill out one altogether?

19      We later got PTO 71A which was the ESI disclosure.

02:12:27  20      In between that time period there's not a -- there's

21 not a formalized recourse process for the defendants on

22 addressing that.  So until there is a show cause process in

23 place, we will still be left in this sort of middle ground where

24 we may come back to you for specified relief on certain things

02:12:43  25 because there's just not a process in place for it.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  Right.

2          MS. BARRIOS:  With all due respect to Mr. Ratliff,

3     Judge Milazzo was deciding the issue.  And with respect to

4     Your Honor, I think we need to go to Judge Milazzo on this

5     because she told us she didn't want a process right now.

6          THE COURT:  She doesn't.  But she and I did discuss

7     whether the PTO 71A issues should pass through this Court before

8     they make it to her.  And so we'll probably be -- she and I will

9     probably be having that discussion.

10          And there are reasons for me to think that's a good

11     idea and there are obviously reasons for me to think it's a bad

12     idea.

13          MS. BARRIOS:  But as of this time, there is no decision

14     on it.

15          THE COURT:  Right.  That's something that I will invite

16     you-all to think about, because I'm not sure I know the best

17     answer.

18          So that's meaning whatever the procedure is going to be

19     for addressing perceived inadequacies in the ESI productions,

20     whether we should treat it like, you know, a regular discovery

21     dispute in our district, which is it comes here first and then is

22     elevated to the district judge under certain circumstances, or if

23     it should just go straight to the district judge.

24          I'm just going to invite you-all to think about that.

25     Because before I decide really what I tell Judge Milazzo in terms

**OFFICIAL TRANSCRIPT**

1  of what I think is best, I'm going to want to hear from you-all

2  on that.

3          MS. BARRIOS:  Yes, Your Honor.

4          MR. RATLIFF:  Absolutely, Your Honor.  And we will

02:14:13

5  certainly discuss that with them, because I do think there could

6  be something a little bit twofold because there could be ESI

7  issues that are more formalistic, they didn't do the process, and

8  those sort of lend themselves to just be put on a show cause

9  list.

02:14:25

10          There are, obviously, some issues that are more

11  substantive that aren't what I'd say are form deficiencies.

12          So we'll talk about it on our side and confer with

13  them.

14          THE COURT:  I think if there is a production and

02:14:36

15  there's something about the production that you-all don't think

16  is right and the Judge is going to have to review part of it or

17  all of it, then that's probably better done by me.

18          I don't think anybody doing that kind of call docket is

19  going to want to be reviewing a bunch of documents.

02:14:55

20          MS. BARRIOS:  I agree.

21          MR. RATLIFF:  Our impression is the same thing.

22          THE COURT:  Not that I do.

23          MS. MENZIES:  We had some in our last

24  meet-and-confers -- some concerns being raised by defense

02:15:04

25  counsel.  It wasn't really ripe for us to present to Your Honor,

**OFFICIAL TRANSCRIPT**

1   so I understand they are going to talk to us more about that.

2           Our response is, of course, have you talked to the

3   plaintiff's counsel and gone through the deficiency process

4   first.  They had some other ideas on that front.  I think you

02:15:19   5   will hear from us on that --

6           THE COURT:  Okay.

7           MS. MENZIES:  -- the next time.

8           THE COURT:  All right.  And as far as the issue that

9   Mr. Bachus raised in the e-mail that I summarily decided that I

02:15:30   10  wasn't going to deal with today, I don't know if that is going to

11  be subsumed in the discussions y'all are having with

12  Judge Milazzo.

13          If it's not, if there is still an issue, just -- we'll

14  discuss it the next time we meet.

02:15:41   15          MR. COFFIN:  You're referring to the CMO 12 issue?

16          THE COURT:  Yes.

17          MR. COFFIN:  We did talk extensively about that.  She

18  asked for submissions by both sides by Friday.

19          In the meantime, she has indicated she wants us to

02:15:54   20  press forward and -- under the current CMO 12, and that if and

21  when the process is redone, then we can revisit it, if we need

22  to, at that point.

23          THE COURT:  Okay.  As usual, the one consistent thing

24  about these hearings is I always forget to bring my calendar up

02:16:13   25  to the bench.

**OFFICIAL TRANSCRIPT**

1          Let me go grab it.

2          MR. MICELI:  Your Honor, we do have one other issue.

3          THE COURT:  Okay.  Let me grab it.

4                                (A pause in the proceedings.)

02:16:33    5          THE COURT:  All right.

6          MR. MICELI:  You asked us to speak with Shirley Ledlie

7  last time we were together.

8          THE COURT:  Yes.

9          MR. MICELI:  Ms. Menzies and I called Ms. Ledlie.  We

02:16:44   10  explained that Sanofi was -- had sent us a deposition notice and

11  the document request.  We reviewed, generally, the document

12  request.  We didn't go line by line because it is three pages.

13          And she had some questions for us.  We told her we

14  could not represent her.  We answered the questions that we could

02:17:02   15  without -- outside the context of representation.  And she has

16  declined to voluntarily sit for a deposition or provide her

17  documents.

18          That's the update.  I told Mr. Ratliff this last

19  Thursday --

02:17:18   20          MS. MENZIES:  Friday.

21          MR. MICELI:  Excuse me.  Last Friday.

22          There is one other item from a representation I made to

23  the Court last time I want to correct.

24          I said that we had provided everything to Sanofi that

02:17:28   25  she had provided to us.  You'll remember back middle-to-the-end

**OFFICIAL TRANSCRIPT**

1   of April of this year there was a deposition of a Mr. Gaydos

2   which was going to take place.  There was an e-mail issue

3   about the redactions in a particular e-mail and there was a

4   telephonic hearing with Your Honor.

02:17:49    5          Those documents that you instructed Ms. Menzies to

6   provide, we provided.  We do have some other documents that we

7   have -- we consider it our work product -- that we have obtained

8   from Ms. Ledlie that we have not provided to them, and it would

9   be our work product.

02:18:09    10          THE COURT:  How could it be your work product if you

11   obtained them from her?

12          MR. MICELI:  Well, Your Honor, because we investigated

13   this case.  We went out and spoke to people who, through a

14   diligent search of publically available information, we could

02:18:25    15   identify.  And we met with those people -- some of them, not all

16   of them.  Not all of them would talk to us.  And we obtained

17   Ms. Ledlie's -- a few documents from Ms. Ledlie.  And that is our

18   investigation.

19          Now, to be fair --

02:18:40    20          THE COURT:  But her documents aren't your work product.

21          MR. MICELI:  They are not work product.  They are the

22   product of our investigation in preparation for trial.

23          THE COURT:  That's not going to cut it.

24          MR. MICELI:  Okay.

02:18:49    25          THE COURT:  They weren't created --

**OFFICIAL TRANSCRIPT**

```
 1            MR. MICELI:  They weren't created by me or our team and
 2   they do not contain the mental impressions of our team.  We
 3   certainly agree with that.  They are not our mental impressions.
 4            THE COURT:  And you are not the first lawyer to make
 5   the argument that a collection of that kind of material, because
 6   you thought of it to ask, is protected, but it's not.
 7            To be prudent, how much material are we talking about?
 8            MR. MICELI:  It's 43 documents.
 9            MS. MENZIES:  No.
10            MR. MICELI:  It's 23 documents.
11            MS. MENZIES:  There are about 20 documents.  And I
12   think, you know, we -- when -- looking back at what we said a
13   couple weeks ago, we went back to look to see what we have,
14   because we haven't looked at them in a while -- to see what we
15   had and also about production.
16            I guess what we need -- if Your Honor doesn't believe
17   they are work product, we need some guidance on how those would
18   be produced because they are not in the possession of any single
19   plaintiff, they are in the possession of the PSC, and there is
20   not a request for those.  And so for us to be able to make a
21   proper objection and go to --
22            THE COURT:  I was going to order you-all to produce
23   them to me.
24            MR. MICELI:  Okay.
25            MS. MENZIES:  Because there is some personal
```

**OFFICIAL TRANSCRIPT**

1   information in there, too.

2        THE COURT:  Well, I'm going to order you to produce

3   them to me for review so I can review whether they are

4   appropriate to be produced to Sanofi.

02:20:18

5        Obviously the circumstances -- I mean, if she's not

6   going to cooperate and Sanofi has to jump through all the hoops

7   they need to jump through to take her deposition and get her

8   documents, you know, anything that she has shared with you, you

9   know, notwithstanding personal information of hers or someone

02:20:42
10  else's, I'm going to provide to Sanofi.

11       MR. MICELI:  We understand that.  We -- I don't know

12  that this is unexpected, the discussion we're having right now.

13       But I can quote Judge Milazzo from just a couple of

14  hours ago when we were talking about another plaintiff -- and, of

02:20:58
15  course, Ms. Ledlie is a third party, she is not a plaintiff in

16  this action -- and about bad thoughts or bad, you know, feelings

17  towards Sanofi.

18       You have to understand who Ms. Ledlie is.  And I don't

19  want to go into the history of Ms. Ledlie, but her interactions

02:21:16
20  with Sanofi have not been what anybody, in any stretch, could

21  claim as friendly, cordial, or anything other than adversarial.

22       And she made it very clear to us that she does not care

23  to cooperate with Sanofi's lawyers, a company that has made her

24  life -- I don't know that she used the words "a living hell," but

02:21:39
25  who made her life extremely difficult.  And I don't blame her for

**OFFICIAL TRANSCRIPT**

1   that.

2           THE COURT:  If I could order her to do anything, I

3   would.

4           MR. MICELI:  I understand.  But now we are dealing with

02:21:48    5   voluntary behavior, and because of her feelings towards this

6   defendant, because of the defendant's behavior towards her, I

7   don't blame her one bit.  And I understand where she's coming

8   from.

9           THE COURT:  Well, Sanofi and its lawyers are going to

02:21:58   10   have to do what they have to do to get her deposition.

11          In the meantime, when she send you documents, they are

12   gone.  Like I said, unless it's medical information, personal

13   health information, something like that, I'm going to look at it.

14   Sanofi is entitled to it, because, as you said, you're not her

02:22:18   15   lawyer.  She may like you more than she likes them, but you have

16   no other special relationship with her --

17          MR. MICELI:  And it's not personal.

18          THE COURT:  -- where she should be sending you

19   documents that can't be shared.

02:22:30   20          MR. MICELI:  Understood.

21          MS. MENZIES:  That's how we got to this point, looking

22   at can we just turn them all over.  If I start redacting PII,

23   because the PTO says I have to and so do the regs, then I'm

24   acting voluntarily so --

02:22:42   25          MR. MICELI:  That was our concern.  There's one other

**OFFICIAL TRANSCRIPT**

1    aspect of this, and you will see it when you receive the

2    20-some-odd -- or 20 or so documents.

3         Last time we were together, Mr. Ratliff stood here

4    where I'm standing now and said they've produced scores of

02:22:58    5    documents.  That's where the 43 came from.  We have received 43

6    documents that were responsive to our discovery requests.  You

7    will see that there are some of the documents in this 20 or so

8    that should be responsive to our discovery requests that emanated

9    from Sanofi to Ms. Ledlie that have not been produced to us.

02:23:18    10         Our concern, as was their concern earlier this morning

11   about certain discovery, is that we're not getting everything.

12         THE COURT:  Y'all are going to have that concern, until

13   the day you die, in this case.

14         MR. MICELI:  Maybe not that long, but certainly a long

02:23:34    15   time.

16         THE COURT:  With the amount of ESI being produced and

17   vetted and gathered in this case, it should not surprise anyone

18   that you received documents from another source that Sanofi

19   should have produced and vice versa.  It's happened on both

02:23:50    20   sides.  It doesn't surprise me because it's not a perfect

21   science.

22         MR. MICELI:  It is not perfect science.

23         THE COURT:  And if you miss one document, it's easy for

24   a lawyer to stand up in court and say, We're concerned we don't

02:24:03    25   have everything.  Because I've heard it from Mr. Ratliff, I've

**OFFICIAL TRANSCRIPT**

1    heard it from Mr. Oot, and I've heard it from Ms. Menzies, and

2    I'm hearing it from you.  It doesn't surprise me.

3            What is important is that you have the documents that

4    you have.  And if it causes you to go back to Mr. Ratliff and

02:24:18    5    say, Okay, this is a potential problem.  We've got this document.

6    You didn't produce it.  You didn't find it -- or whatever.  Look

7    into what happened.

8            That's what I would expect to happen whenever this

9    situation arises.

02:24:32   10            MR. MICELI:  Okay.

11            THE COURT:  And I expect it to arise again.

12            MR. MICELI:  I'll talk to Mr. Ratliff after today's

13    hearing.  However, when somebody represented two weeks ago that

14    they produced scores and we received 43 -- I don't know what a

02:24:44   15    score is, Your Honor.

16            THE COURT:  Well, he is technically correct.

17            MR. MICELI:  Okay.

18            THE COURT:  You have received scores of documents.

19            MR. MICELI:  Thank you.

02:24:53   20            THE COURT:  If it was 39, it wouldn't be correct.

21            MR. RATLIFF:  May I address this just very briefly?

22            THE COURT:  Yes.  You know how much I love you-all

23    arguing with each other.

24            MR. RATLIFF:  I know.

02:25:03   25            My concern here is that when we had a meet-and-confer

**OFFICIAL TRANSCRIPT**

1   on Friday, we agreed that there were no issues other than the

2   protective order for your resolution.  And now I kind of have --

3   I feel like I'm being sort of submarined by Mr. Miceli raising

4   arguments about the sufficiency of our document production.

02:25:20

5             THE COURT:  Let me say this.  If I were you, I would

6   feel the same way.  Okay?  Y'all should be having these

7   conversations before you come in here.  All right?

8             I mean, Mr. Miceli just stood up and said, *mea culpa*,

9   we didn't produce everything we said we produced.  And by the

02:25:40

10  way, neither did he.

11            I don't need to hear that.  You-all should be able to

12  resolve those kinds of problems without coming into the courtroom

13  to do it.  And if you can't, then you put it in a letter and I

14  know about it in advance and I'm prepared to discuss it.  These

02:25:56

15  things are going to happen.  Okay?

16            MR. RATLIFF:  Because the other issue -- and Mr. Miceli

17  did advise us on Friday about Ms. Ledlie's position, which is

18  obviously a 180 from before.

19            We're not here today to talk about what we think should

02:26:11

20  be alternative relief, but we probably will be the next time

21  we're together.  So that's where we stand.

22            THE COURT:  I would start putting your plan together to

23  get her deposition wherever she is.

24            MR. RATLIFF:  We are working on that as well.

02:26:24

25            But the discussion we had last time was that you

**OFFICIAL TRANSCRIPT**

1  offered that up as relief in lieu of other relief that we had

2  requested, and now it's become clear that what was represented

3  two months ago is a 180 from that.

4  THE COURT:  We've been down that road.  We've been down

02:26:41  5  that road.  The last time we were here, Ms. Menzies didn't even

6  make the argument because she was the one who told me that they

7  could make her available.

8  Again, it didn't work out that way.  It's not that I

9  didn't anticipate that was going to be a problem.  I specifically

02:26:58  10  provided in the minute entry that I wasn't calling for anything

11  other than what you could manage by law unless this woman in

12  another country decided to cooperate, which she didn't.

13  MR. RATLIFF:  Thank you, Your Honor.

14  THE COURT:  I'm not ready to discuss other alternatives

02:27:15  15  until you come in here and say it's not -- it's impossible for us

16  to take her deposition.

17  MR. RATLIFF:  Understood, Your Honor.

18  THE COURT:  Maybe then.

19  MR. RATLIFF:  Thank you.

02:27:24  20  THE COURT:  All right.  Now we're done.  I'm not even

21  going to ask.  I've never used this gavel in four and a half

22  years but this will be a good time.

23  Let's talk about a date.

24  MR. COFFIN:  If it will help, we're meeting with --

02:27:46  25  we're going to meet with you in a couple weeks, but we are

**OFFICIAL TRANSCRIPT**

1 | meeting with Judge Milazzo on August 16th in the morning.

2 | THE COURT:  As much as I would like to go a month, I

3 | doubt that's a good idea to not have another meeting on the

4 | calendar.

*02:28:03*

5 | MR. COFFIN:  I think you're correct, Your Honor.

6 | THE COURT:  How about Tuesday the 7th?

7 | MR. COFFIN:  It appears fine on our side, Your Honor.

8 | MR. RATLIFF:  Yeah, that's fine.

9 | THE COURT:  We'll do Tuesday, the 7th, at 1:00.

*02:28:30*

10 | MR. RATLIFF:  There will be depositions starting to

11 | ramp back up during that time period, I believe.  Is there a

12 | possibility to do it telephonically or do you prefer still in

13 | person?  Because I know there are deposition impacts on both

14 | sides.  It's not just a --

*02:28:50*

15 | MR. COFFIN:  The depositions scheduled for that week

16 | are on the 9th and the 10th.

17 | THE COURT:  Okay.  We are going to set it for in

18 | person --

19 | MR. RATLIFF:  Thank you, Your Honor.

*02:29:01*

20 | THE COURT:  -- at 1:00.

21 | All right.  Thank you-all.  See you then.

22 | (Proceedings adjourned.)

23 |

24 |

25 | * * * * *

**OFFICIAL TRANSCRIPT**

CERTIFICATE

I hereby certify this 23rd day of July, 2018, that the foregoing is, to the best of my ability and understanding, a true and correct transcript of the proceedings in the above-entitled matter.

/s/ Mary V. Thompson
_____
Official Court Reporter

**OFFICIAL TRANSCRIPT**