UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　MDL No. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION: "N" (5)

THIS DOCUMENT RELATES TO:

*Kelly Gahan*
Case No.:2:16-cv-15283

### PLAINTIFF'S OPPOSITION TO *EX PARTE* MOTION BY SANOFI DEFENDANTS FOR LEAVE TO FILE SUPPLEMENT TO MOTION FOR RULE 37 SANCTIONS

### FAILURE TO CONFER

　　　　As an initial point, Plaintiff could have and would have (and now has) easily obtained Dr. Gahan's VA records if Sanofi simply conferred with her counsel. In the face of a bureaucratic snafu arising more from red tape at the VA than any conduct attributable to Dr. Gahan, Sanofi could not be bothered to pick up the phone or write a simple email to Dr. Gahan's counsel to seek assistance in obtaining Dr. Gahan's employment records. Sanofi's refusal to confer is becoming a troubling pattern. Sanofi either does not believe it needs to confer or is simply avoiding conferral in order to deny Dr. Gahan the opportunity to respond to or cure any perceived deficiencies in her production.

　　　　Sanofi never notified either counsel for Dr. Gahan or Plaintiff's Liaison Counsel of its intent to file this "supplement." (Rec. Doc. 3505). Dr. Gahan is unaware of any law or provision of the Local Rules permitting the filing of *ex parte* "supplements" to a motion already under submission. In this case, there is a serious question of whether Sanofi's latest complaint is based on new evidence, because it appears the VA first informed Sanofi it could not respond to its records request in April 2018 – before Sanofi filed its initial motion for sanctions. Sanofi's failure to confer and unilateral filing of "supplements" without even a passing attempt to confer or resolve the underlying issue

1

suggests that Sanofi does not believe it is subject to the Federal Rules of Civil Procedure, this Court's Local Rules, or this Court's orders requiring reasonable conferral to resolve discovery disputes.

## ARGUMENT

Sanofi's difficulty in obtaining Dr. Gahan's employment records from the VA arises not out of bad-faith by Dr. Gahan, but from unusual procedural requirements at the VA and, at least in part, Sanofi's difficulties in inappropriately ordering <u>medical</u> records from Dr. Gahan's <u>employers</u>. Although Dr. Gahan does not have the full record of Sanofi's attempts to obtain Dr. Gahan's employment history,[1] Sanofi's **Exhibit C** suggests that it was utilizing a medical release.

Sanofi conveniently glosses over the most interesting excerpt from the July 20 letter from the Department of Veterans Affairs Privacy/FOIA office, which states:

> Our office then contacted Veritext about Dr. Gahan's decision and was informed Veritext no longer required her medical records and would await the employment records directly from Dr. Gahan.

**Def. Ex. B**. This sentence raises numerous issues. First – it suggests that Sanofi's initial request to the VA was for medical records, which is confirmed by **Exhibit C**. Second - it raises the question of whether Sanofi <u>ever</u> submitted an employment records release authorization to the VA (Sanofi provides no evidence it did). Third – if Sanofi was informed by the VA at some point between April and July of the VA's understanding that Dr. Gahan would be individually obtaining and producing her employment records,[2] did Sanofi communicate its expectations to Dr. Gahan's attorneys that it

---

[1] Tellingly, Sanofi does not provide the Court any exhibits associated with its request for Dr. Gahan's records. What release did it use – for medical records or for employment records? **Exhibit C** strongly suggests the initial response from the VA was for a medical records request (i.e. "No Record of Patient."). Sanofi has a track record of issuing medical authorizations to Dr. Gahan's employers. To be clear, Dr. Gahan's counsel is not affirmatively stating Sanofi used the wrong release, because Sanofi has never conferred with counsel concerning this issue, provided any evidence of what release it used, or requested counsel's assistance in removing or mitigating whatever roadblock the VA has erected.

[2] Dr. Gahan would like to see the record of this communication. At a minimum, the timing of this communication is crucial to Sanofi's contention that its "supplement" is based on "newly-discovered evidence." According to the letter from the VA, it first received a "directive" from Dr. Gahan to not

2

was expecting her to produce them? Dr. Gahan's attorneys can unequivocally attest the answer to the latter question is "No." Sanofi never asked Dr. Gahan's attorneys to obtain and produce the VA employment records or communicated its expectation she would do so. Sanofi's absolute failure to communicate with Dr. Gahan's attorneys that it was apparently anticipating Dr. Gahan to individually obtain her records – and its attempt to now seek sanctions for its own failure to communicate – is further evidence that Sanofi is not litigating in good faith. Again, all Sanofi needed to do was send Dr. Gahan's counsel an e-mail passing along what they purportedly heard from the VA – that Dr. Gahan would be obtaining and producing her own employment file.

Dr. Gahan does recall receiving a phone call from the VA sometime in late April or May. (**Ex. 1**, Affidavit of Kelly Gahan, M.D.). Dr. Gahan did not direct the VA to not release medical records. Id. As the VA return indicates, it had no records of Dr. Gahan as its patient. (**Def. Ex. C**). Dr. Gahan does recall the individual who contacted her stating that any employment records provided via release would be the same limited records as would be produced under a FOIA request, but that Dr. Gahan could obtain a complete copy of her employment file herself by going to the VA office. Id. Dr. Gahan did indicate she would obtain her full file from the VA directly, but Dr. Gahan was under the impression that the VA would be responding to the release as it pertained to FOIA eligible records.[3] Id.

---

release medical or employment records in April, and that it communicated her "directive" to Veritext shortly thereafter – meaning that Sanofi has not conferred with Dr. Gahan's counsel regarding this problem for four months, and that the problem is not "newly discovered," but something that could have been brought to the Court's attention in Sanofi's original motion.

[3] Dr. Gahan's counsel does not pretend to be an expert in FOIA, but it is unclear how Dr. Gahan's consent or non-consent would be relevant with respect to a FOIA request for her employment records. By definition, FOIA eligible records are those anyone can request, regardless of whether they have a release. In the VA's July 20 correspondence, the VA appears to be suggesting that any records request by Sanofi for her employment records will be determined in accordance with FOIA – even "if her desire to release her employment information has changed"- going so far as attaching the specific FOIA form Sanofi must complete to obtain the records. (**Def. Ex. B**) The Court need not delve into the depths of FOIA – suffice it to say that the VA's intransigence in producing Dr. Gahan's

Dr. Gahan has no objection to producing her employment records from the VA. Dr. Gahan has not hidden her employment at the VA.[4] Dr. Gahan did not direct the VA to not send her employment file, because it was never her understanding she could do so. Rather, it was her understanding that Sanofi would obtain limited records via release, and that providing full records would require her to personally obtain her file. If her indication to the VA that she would personally obtain her full file led the VA to believe she did not consent to the release of any part of her file, that was simply an unfortunate but understandable miscommunication. If Sanofi simply conferred with Dr. Gahan's counsel when it first encountered this road block at the VA four months ago, Dr. Gahan would have obtained and produced the records.

Dr. Gahan's employment records from the VA have now been uploaded to MDL Centrality. Dr. Gahan obtained these records within 24 hours of Sanofi's Supplemental Memorandum – <u>which was the very first notice she or her attorneys had that Sanofi was experiencing any difficulties obtaining her employment records from the VA.</u>

Sanofi requests the Court enter an order requiring her to identify any individuals who have communicated with her concerning Sanofi's records requests. Rather than force Dr. Gahan to engage in a memory test of the numerous colleagues, employers, and friends on the receiving end of Sanofi's records-request carpet-bombing campaign, Dr. Gahan requests that the Court simply enter an order

---

employment records seemingly arises more from the VA's own internal policies than it does from Dr. Gahan's "consent" to release the records. Dr. Gahan is willing to personally obtain her HR file from the VA and produce it – and thus spare Sanofi the burden of submitting a FOIA request – but Sanofi has **never** conferred with Dr. Gahan's counsel that it was anticipating she would do so.

[4] Dr. Gahan identified the VA as an employer in her first PFS in July 2017. She also provided signed employment record release authorizations to Sanofi in April 2017. It appears Sanofi did not even attempt to order <u>any</u> records from the VA until April 2018 – over a year after it had her authorizations and nine months after she identified the VA as an employer. If there has been any delay arising from navigating the bureaucratic requirements of obtaining employment records from a historically slow moving federal agency, it would appear to arise from (a) Sanofi's incompetence in ordering medical records from Dr. Gahan's employer; and (b) Sanofi's year-long decision to sleep on its rights to request her employment records from the VA.

4

requiring Sanofi to comply with the good-faith conferral requirements under the Federal Rules of Civil Procedure, the Eastern District of Louisiana's Local Rules, and this Court's discovery orders.  If Sanofi is encountering difficulties obtaining Dr. Gahan's records from <u>anyone</u>, it should write an email to Dr. Gahan's counsel, describing the difficulty and attaching a copy of the records release authorization it utilized, as well as the individual's response to the request.  Dr. Gahan's counsel will continue to assist Sanofi in obtaining the records by directly contacting the provider or give an explanation as to why the particular records are not discoverable or do not exist.  Following this relatively simple process will, at the very least, provide a clear record for the Court with respect to whether the failure to obtain records is the result of an intentional decision by Dr. Gahan, or simply the result of a misdirected release, incorrect release, or other bureaucratic snafu.  Dr. Gahan deserves the opportunity to rectify any problems related to records requests before Sanofi comes running to the Court claiming such problems are evidence of "bad faith" or "willful obstruction."

As Dr. Gahan first raised in her response memorandum, Sanofi's utter failure to confer concerning these minor discovery snafus raises genuine concerns about what Sanofi and its attorneys are trying to accomplish.  Based on this record, the Court should no longer doubt that Sanofi is more interested in litigating compliance with the discovery process than it is with litigating the merits.  Sanofi would prefer to pay its attorneys to file supplemental memorandums in support of depriving a cancer survivor of her day in court, in lieu of simply typing a quick email to Ms. Gahan's counsel requesting their assistance to get to the bottom of a miscommunication.  Why doesn't Sanofi reasonably confer with Dr. Gahan's counsel?  Because doing so will destroy it's preferred and wholly unsubstantiated narrative that Dr. Gahan is "willfully obstructing" discovery.  Sanofi needs to be sanctioned for this conduct through an award of attorney fees to Dr Gahan under Rule 37.  Sanofi has utterly failed to establish that Dr. Gahan did not comply with any of her discovery obligations.  Sanofi is seeking punitive sanctions on matters that, as now demonstrated, could be easily resolved through a simple

Case 2:16-md-02740-JTM-MBN   Document 3519   Filed 07/27/18   Page 6 of 6

email. If Sanofi does not suffer real consequences for this conduct, monetary or otherwise – why would it stop?

DATED: July 27, 2018

Respectfully Submitted,

/s/ *Darin L. Schanker*
Darin L. Schanker
Scot C. Kreider
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Ste. 700
Denver, CO 80202
(303)899-9800
F: (303)893-9900
d.schanker@coloradolaw.net
scot.kreider@coloradolaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ Jennifer A. Heck
Litigation Paralegal

6