UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO *Gahan v. Sanofi, et al.*, No. 16-cv-15283 | |

**REPLY MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS' MOTION FOR RULE 37 SANCTIONS**

If the question posed to this Court is whether it should condone Dr. Gahan's repeated discovery violations, Plaintiff's Response misses that mark. Presumably to deflect attention from her own conduct, Plaintiff personally attacks Sanofi's lawyers. The parties are before the Court on this Motion because this Plaintiff does not believe that she needs to comply with this Court's orders. All Sanofi has done is bring Dr. Gahan's conduct to the Court's attention.

When one looks past the offense, the defense is missing. Dr. Gahan admits that she has: (1) concealed highly relevant information related to a healthcare provider for over a year; (2) interfered with witnesses and Sanofi's attempts to collect medical records; and (3) withheld responsive ESI, including photographs of her hair regrowth.

Dr. Gahan's behavior demonstrates a systematic disregard for the discovery obligations imposed by this Court—behavior that this Court should not condone. Dr. Gahan volunteers herself to connect potential plaintiffs to her lawyers, communicate between them, and promote the litigation, which implicates Rule 37(b) concerns that her conduct also encourages others' evasion and concealment. There is a "get it" factor here too. Rather than amending her PFS or producing

1

additional responsive photographs and videos in her possession, offering a credible explanation, asking for reprieve, or responding to this Motion by identifying the numerous other "researchers" that she now admits consulting on hair loss, Dr. Gahan repeatedly accuses Sanofi of malevolence for uncovering her deception.

According to Dr. Gahan, however, the rule-breaking is not the problem—it is the rules. Since PTO 71A revealed her conduct, counsel says, it should be undone.  Dr. Gahan's stance becomes all-the-more concerning when her counsel then filed a Motion to excuse over 425 plaintiffs from all PTO No. 71A obligations. . . . (closely read the Proposed Order actually applies to **all** Bachus & Schanker plaintiffs).  *See* Plaintiffs' Motion to Extend PTO 71A Deadline (Rec. Doc. 3195).[1]

The documents also establish *why* Dr. Gahan violated this Court's orders. Dr. Gahan does not want the other side to put "two and two together" because plaintiffs regrowth undermines the allegation that they have *permanent* hair loss from *chemotherapy with Taxotere*. Dr. Gahan, again, says so herself, relaying conversations with her counsel on the issue:

---

[1] The Court required Plaintiffs to complete their ESI production by January 28, 2018.  PTO 71 at ¶ 6 (Rec. Doc. 1306). Subsequently, and as memorialized in PTO No. 71A, Sanofi and the Court agreed to an additional 150 days—until June 28, 2018—for Plaintiffs to complete their ESI production. PTO 71A at ¶ 6 (Rec. Doc. 1531).  Given that the same documents should have been produced with their PFSs (i.e., PTO 71A is a procedural enforcement mechanism), these materials are for many plaintiffs over a year overdue.

> From: taxotears@googlegroups.com <taxotears@googlegroups.com> on behalf of bluermedic@gmail.com <bluermedic@gmail.com>
> Sent: Monday, March 21, 2016 11:28 AM
> To: milicabookman@yahoo.com
> Cc: gcuene@yahoo.com; Taxotears@googlegroups.com
> Subject: Re: [Taxotears] News from our attorneys
>
> Hi All,
> I specifically asked Darin Shanker about hair regrowth (one can always hope) affecting our cases and he said that it might decrease the dollar amount but we would still have a case for all the pain and suffering we have been through.
> Kelly
>
> Sent from my iPad



> Sat 4/8/2017 11:20 PM
> taxotears@googlegroups.com on behalf of Kimberly Free <iamfree@mail-solutions.net>
> [Taxotears] Letter from B&S
> To ☐ taxotears@googlegroups.com
>
> Below is a new article about Science day being set for May 3rd. Also I did receive a letter from B&S this week. It did state to make sure you either close down your facebook or lock it down and also any blog posts etc.
>
> Kimberly Free

**Ex. A**, Doc. ID. 200082 at 8; *see also* **Ex. D**, Doc. ID. 197703 at 1. Under Fed. R. Civ. P. Rule 37(b), this Court should sanction Dr. Gahan for misconduct, and Sanofi urges this Court to dismiss her lawsuit.

## **STANDARD OF LAW**

Dr. Gahan misstates Rule 37's standards for sanctions. *See* Response at 7 (Rec. Doc. 3216). Plaintiff argues that Rule 37 *only* permits sanctions for: (a) failing to disclose under Rule 26; (b) failing to answer or provide incomplete answers; or (c) failing to attend a deposition. *See id.* Moreover, Plaintiff incorrectly asserts that Rule 37 "does not authorize sanctions for unintentional omissions . . . or even for counseling a witness to not respond to an informal records request." *Id.* at 4. Not so.

3

Rule 37(b)—the Rule relied upon in Sanofi's motion—is the applicable one. Rule 37(b) punishes a party for "failure to comply with a court order" or "for not obeying a discovery order," which is precisely what Dr. Gahan has done. Her actions violate multiple Court Orders including PTO No. 22A (Rec. Doc. 325), PTO No. 38 (Rec. Doc. 326), PTO No. 68 (Rec. Doc. 1085), and PTO No. 71A (Rec. Doc. 1531). Her violations were not singular, but repeated; they were not inadvertent, but willful. Because Dr. Gahan makes clear that she does not think that her actions are constrained by this Court's orders, Dr. Gahan should be sanctioned under Rule 37(b).

## ARGUMENT

### I. DR. GAHAN OFFERS NO CREDIBLE EXPLANATION, EXCUSE, OR APOLOGY FOR HER REPEATED VIOLATION OF COURT ORDER

Dr. Gahan "has no apologies" for her discovery abuses. *See* Response at 14 (Rec. Doc. 3216). She attempts to justify her actions by arguing: (a) that Dr. Weinstein was not a healthcare provider; and (b) that her "admittedly bizzare" cover up was just a mistaken, passing thought. However, both justifications are untrue. It is both objectively and subjectively untrue that Dr. Weinstein was not a healthcare provider. It is also untrue that Dr. Gahan not wanting Sanofi's attorneys to "put two and two together yet" was a single mistake or passing thought. This was a mistake that Dr. Gahan repeated over-and-over and upon which she acted.

#### a. Both Objectively and Subjectively, Dr. Weinstein is a Discoverable Healthcare Provider for the Injury Alleged in this Lawsuit

Objectively, Dr. Weinstein is a "healthcare provider" as defined in the Court's orders. More crucially, he is the most important type of discoverable provider. Hair loss is the main feature of this litigation, and this Court has issued numerous orders requiring plaintiffs to disclose doctors that have treated them for alopecia. *See* PTO No. 22A (Rec. Doc. 325); PTO No. 38 (Rec. Doc. 326); PTO No. 68 (Rec. Doc. 1085); PTO No. 71A (Rec. Doc. 1531).

4

Section VIII of the Plaintiff Fact Sheet ("PFS") requires plaintiffs to "identify each physician, doctor, or other healthcare provider who has provided treatment to you for any reason in the past eight (8) years and the reason for consulting the healthcare provider or mental healthcare provider." *See* Plaintiff Fact Sheet, § VIII(1) (Rec. Doc. 2831-7). The PFS is clear that plaintiffs, "**MUST INCLUDE YOUR ONCOLOGIST, RADIOLOGIST, DERMATOLOGIST, DERMATOLOGIST-PATHOLOGIST, HAIR LOSS SPECIALIST, GYNECOLOGIST, AND PRIMARY CARE PHYSICIAN, ALONG WITH ANY OTHER HEALTHCARE PROVIDERS IDENTIFIED ABOVE.**" *See id.* (emphasis in original). In addition, the PFS requires plaintiffs to disclose whether they have "used any over-the counter medications, supplements, or cosmetic aides for your hair loss," including the treatment, when it was tried, for how long, and whether it helped. *See id.* at § VII (Rec. Doc. 2831-7). Dr. Weinstein is an "M.D., Ph.D.," and "Co-Founder" of RiverTown Therapeutics, Inc, and he developed a topical medication called "RT1640," which when applied to an affected area allegedly promotes hair growth. *See* Management, *RiverTown Therapeutics, Inc.* (July 13, 2018), *available at* https://www.rivertowntherapeutics.com/team.

Subjectively too, Dr. Gahan regarded Dr. Weinstein as a healthcare provider. In February 2017, Dr. Gahan reached out to Dr. Weinstein to procure this medication to use on herself. *See* Weinstein 00175 (Rec. Doc. 2831-4). In their very first communication, they discussed the cause of her alopecia (identifying "Taxol") so that Dr. Weinstein might diagnose her better and determine if his treatment was "apt to help." *See* Weinstein 00173 (Rec. Doc. 2831-4). Dr. Gahan sent Dr. Weinstein diagnostic information including the scalp biopsies of fellow Taxotears members, scholarly articles, and photographs. *See, e.g.*, Weinstein 00159 (Rec. Doc. 2831-4). After

5

reviewing them, Dr. Weinstein commented on Dr. Gahan's prognosis, responding that her type of hair loss: "Looks hopeful for regeneration." *See* Weinstein 00158 (Rec. Doc. 2831-4).

As their email correspondence makes clear, Dr. Weinstein, M.D., treated Dr. Gahan with topical medication from April 2017 through early 2018 by regularly sending her medication through the mail,[2] instructing her on proper use, and examining her progress through bi-weekly photographs, text messages, e-mails, and telephone calls:

> Subject: Re: address
> Date: Sunday, April 2, 2017 at 12:01:35 AM Eastern Daylight Time
> From: David Weinstein
> To: bluermedic@gmail.com
>
> Hi Kelly,
>
> You should receive a package on Monday. Use 1 ml topically bid- once in the AM and hs.
>
> Please take pre photos, and them bi-weekly. The photos should be of the same region at the same distance from the camera, Focus counts.
>
> DW
> David E. Weinstein, MD, PhD
> Co-Founder, Chief Scientific and Chief Medical Officer
> RiverTown Therapeutics, Inc.
> 917-282-5135 (phone)
> david@rivertowntherapeutics.com
> david.e.weinstein57 (Skype)
> 917-282-5135 (phone)
> www.rivertowntherapeutics.com/home

*See* **Ex. B**, Weinstein 00148 (Apr. 12, 2017).

> On 4/5/17, 11:58 PM, "bluermedic@gmail.com" <bluermedic@gmail.com> wrote:
>
> Hi,
> I got your package. Thank you a million times over. I was so excited and hopeful to use it that I almost couldn't bring myself to do so out of the fear of having it not work. I do have a couple of questions. I had to leave for work Monday before the package came and the temps overnight got down to about 34 degrees. That shouldn't deactivate anything should it? I used it tonight for the first time (took a bunch of pictures) and was surprised how much 1 ml covers. How big of an area do you think I should use it on? Also, I know we had talked about using the dermal roller before and I was thinking of trying one area with it and one area without. What do you think? Thanks so much!
> Kelly

---

[2] Dr. Weinstein was unable to write Dr. Gahan a prescription for the medication because he was treating her with the compound before securing FDA approval for the trial. *See* **Ex. B**, Weinstein 00150–53 (Mar. 13, 2017). Dr. Gahan and Dr. Weinstein went to great lengths to keep this a secret too – he asks her what her address is so that he can "send her something," which in the next email is revealed to be the experimental medication. *See* **Ex. B**, Weinstein 00146-49 (Mar. 31, 2017).

6

*See* **Ex. B**, Weinstein 00147 (Apr. 5, 2017). Furthermore, at Dr. Weinstein's direction, Dr. Gahan had laboratory tests to monitor her cyclosporine levels.

> Subject: CSA levels
> Date: Monday, June 19, 2017 at 12:35:44 PM Eastern Daylight Time
> From: Rivertown Therapeutics
> To: bluermedic@gmail.com
>
> Hi Kelly,
>
> I am trying to get a bunch of data together and am wondering if you would be able to send a CSA level on yourself. My levels have been below the lower limit of detection since I started using the RT1640.
>
> Thanks,
>
> I really appreciate it.
>
> DW

*See* **Ex. B**, Weinstein 00120 (June 19, 2017).[3]

Tellingly, while Dr. Gahan claims that Dr. Weinstein was a "colleague" or "researcher," she described Dr. Weinstein as a physician when seeking approval from the FDA to use his treatment. *See* **Ex. B**, Weinstein 00170 (Feb. 11. 2017). PTO No. 22A does not exempt healthcare providers who are also "colleagues" or "researchers." Dr. Gahan is a doctor, but that does not shield her healthcare providers from discovery. What is more, if Dr. Gahan did not regard Dr. Weinstein as a discoverable witness, she would not have taken such pains to cover him up.

b. **Dr. Gahan's Discovery Abuse Was not Limited to a Single, Passing Thought; She Repeated this Abuse, Through Action, Over-and-Over**

---

[3] *See also* Weinstein 00031 (July 27, 2017) (Rec. Doc. 2831-4) ("Sorry I haven't gotten the cyclosporine level to you yet. It turns out my oncology visit isn't till September. If you need it sooner I can figure out how to get it done. Hair still improving!"); **Ex. B**, Weinstein 00099 (Oct. 5, 2017) ("I got the cyclosporine level drawn on Monday. It still hasn't resulted but hopefully soon. Thanks!"); **Ex. B**, Weinstein 00096 (Oct. 19, 2017) ("My cyclosporine level still hasn't resulted. I called the office today and they don't see where it was ordered so they are checking with the doc."); **Ex. B**, Weinstein 00095 (Oct. 25, 2017) ("Hi my doc forgot to order the cyclosporine level so they put in a lab draw for me. Will forward when I get it back.").

Dr. Gahan's document production establishes that her violation of Court Orders was not a passing thought or single mistake in judgment. In fact, there exists evidence of improper motive here *in her own words*:

> From: "bluermedic@gmail.com" <bluermedic@gmail.com>
> Date: Friday, July 28, 2017 at 2:11 PM
> To: "David Weinstein, MD, PhD" <david@rivertowntherapeutics.com>
> Subject: Re: Hi
>
> I think that should be okay. How widely will they be distributed? Would rather not have the lawyers for the other side put two and two together just yet.
>
> Sent from my iPhone

*See* Weinstein 00022 (Rec. Doc. 2831-4).[4]

It might be believable that this is just a "bizarre" email if nine months later Dr. Gahan did not instruct Dr. Weinstein to lie to the same "lawyers from the other side." Response at 12 (Rec. Doc. 3216). Dr. Weinstein first admitted that he "was too busy to respond right away, and that he would respond soon" when initially contacted by Sanofi's vendor, but—as Dr. Gahan also acknowledges in her Response—he was out of town. *See* Aff. of Aulona Hoxha (Veritext) (Rec. Doc. 2831-5). Dr. Weinstein then called Dr. Gahan and they discussed whether or not he should produce records to Sanofi. Response at 13 (Rec. Doc. 3216). He did not. Instead he recited what Dr. Gahan had instructed.

The "two and two together" email might be simply bizarre if Dr. Gahan had not separately emailed and texted Dr. Weinstein to warn him, sending messages that stated: "The judge ordered all my emails released and <u>they must have gleaned your name off them</u>," and "They <u>gleaned your

---

[4] Which contradicts Dr. Gahan's later argument that the words "just yet" indicate that the activity "will be completed in the future," and suggest that her eventual inadvertent production of his name via her Gmail account absolves her of the intentional concealment. Response at 12 (Rec. Doc. 3216).

<u>info from my emails</u>. Sorry." *See* Weinstein 00177 (Rec. Doc. 2831-4) (emphasis added); *See* Weinstein 00007 (Rec. Doc. 2831-4) (emphasis added).

The argument that Dr. Gahan committed a single mistake in judgment is also called into question because she involved other third party witnesses in her cover up:

> **I would like to say also that I have gotten a bunch of calls from a bunch of people about these Veritext requests for records. . . . They sent them to one of my old bosses, and he was like "What do I do with this?" And I was like, "*Just tell them you don't have records. You were my boss, but HR has the records.*"**
>
> **The same thing with another one of the ER sites. They were like, "They're asking for your medical records." I was like, "*Write them back and tell them you don't have medical records, that I worked there*."**

*See* Gahan Dep. at 330:3-19 (Rec. Doc. 2831-12) (emphasis added). For example, Sanofi encountered Dr. Lann's name in medical records indicating that he prescribed her medication for hair loss in 2015. *See* Target c/o CVS 00010 (Rec. Doc. 2831-6). Sanofi requested records from Dr. Lann, who responded as Dr. Gahan previously instructed: "~~Patient~~ Kelly was a co-worker not my patient, I have *no* records – contact UC Health for any I am not involved in med records." *See See* Certificate of Records Custodian, Dr. David Lann (Apr. 26, 2018) (Rec. Doc. 2831-6).[5]

Dr. Gahan's disclosures in this litigation repeatedly contradict reality, even when showing the parties what she *looks like*. From April 2017 through 2018, Dr. Gahan took photographs for Dr. Weinstein of her hair regrowth. During this same time, Sanofi was going to the Court again-and-again to explain the difficulty in obtaining plaintiffs' photographs. As a result, the Court entered orders underscoring plaintiffs' obligation to produce photographs "which accurately and adequately" reflect "Plaintiff's hair loss injuries." *See* PTO No. 68; PTO No. 71A. But Dr. Gahan

---

[5] The trouble with Dr. Lann's response, and with the obvious evidence that he consulted Dr. Gahan before responding to Sanofi's request, is that Dr. Gahan did not know if he had records regarding her treatment, but she advised Dr. Lann to deny it anyway. Dr. Lann *did* prescribe Dr. Gahan medication, and there may be further records. There may also be records of treatment that Dr. Lann himself does not recall, but instead of following-up on Sanofi's request, he has followed Dr. Gahan's instructions to deny it.

9

continued to violate such orders. On November 9, 2017, Dr. Gahan produced three photographs labeled "2016" that she alleged were representative of her hair. ***She had just sent Dr. Weinstein—on October 5, 2017—photographs of an entirely different appearance.***



*Figure 1 - Produced to Sanofi in November 2017*    *Figure 2 - Emailed to Dr. Weinstein in October 2017*

*See* **Ex. C**, Doc. 34419 at 1; *see* **Ex. B**, Weinstein 00100 (Oct. 4, 2017). Dr. Gahan did not produce the latter photograph until March 2018 when this Court reiterated with PTO No. 71A that ESI is discoverable. To this day, Dr. Gahan acknowledges that she has not produced photographs required by Court Order.[6]

In the end, Dr. Gahan tried to cover up more than one witness to her alleged hair loss treatment—and she is apparently still withholding a "score" of others. *See* Response at 8 (Rec.

---

[6] Dr. Gahan has yet to produce the digital photographs that she took for Dr. Weinstein. Nor has she produced photographs that she took in 2014 under the care of her oncologist. *See* Gahan Dep. at 273:13-22 (Rec. Doc. 2831-12). When asked about unproduced photographs during her deposition, Dr. Gahan testified that she has a "large number"—over 800—representative photographs on her computer, but feels non-obligated to produce them. *See* Dep. Gahan at 42:17-22 (Rec. Doc. 2831-12).

10

Doc. 3216). She contacted Dr. Weinstein on more than one occasion to discuss his concealment, she omitted him from *four* verified PFSs, she withheld representative photographs sent to him on a bi-weekly basis, and she admits why. We know that Dr. Gahan's motivation in doing so was that she did not want Sanofi's attorneys to "put two and two together yet."

Further, Sanofi is now aware that this issue extends beyond Dr. Gahan or Dr. Weinstein. Indeed, as Sanofi continues to review email finally produced by Plaintiffs on June 28, 2018, it has become clear that Plaintiffs know that treatment for hair loss impacts the value of their cases, thus creating incentives, not only against getting better, but against disclosing the fact that they are getting better. As Dr. Gahan wrote her Taxotears group: "I specifically asked Darin Shanker about hair regrowth (one can always hope) affecting our cases and he said that it might decrease the dollar amount but we would still have a case for all of the pain and suffering we have been through." **Ex. A**, Doc Id. 200082 at 8.

## II.  DR. GAHAN'S MISCONDUCT WARRANTS RULE 37 SANCTIONS

Dr. Gahan admits that she has systematically interfered with the discovery process. What is more, she "has no apologies" for doing so. *See* Response at 14 (Rec. Doc. 3216). The Court should not condone such abuse.

The Fifth Circuit recognizes that "the bandwidth of the District Court's power to impose Rule 37 sanctions is broad indeed," and courts "are mindful that the use of even severe sanctions has a salutary deterrent effect on parties to other law suits and their counsel and that great army of yet unknowns who will for one reason or another have cases and counsel." *Marshall v. Segona*, 621 F.2d 763, 766-67 (5th Cir. 1980) (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); *see also Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990) ("the most severe in the spectrum of sanctions provided by statute or rule *must* be

available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent") (quoting *Nat'l Hockey League*, 427 U.S. at 643)). Moreover, the Fifth Circuit has "firmly established that a district court is authorized under Fed. R. Civ. P. 37(b)(2)(C) to dismiss a complaint with prejudice when a party refuses to obey a valid discovery order." *See Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) (citing *Jones v. La. State Bar Assoc'n*, 602 F.2d 94, 96 (5th Cir. 1979)).[7, 8]

There are three reasons why case-ending sanctions are warranted on this record, regardless of whether *Plaintiff thinks* she has prejudiced Sanofi's ability to prepare for trial. First, Dr. Gahan spearheads the litigation by connecting women and other third parties to her Plaintiff Executive Committee counsel.[9] Second, Dr. Gahan did not just conceal evidence herself, she actively encouraged third parties to do so too. Third, counsel for Dr. Gahan represents at least 1500 of approximately 9100 plaintiffs in this MDL (about 16%). Of the 1,138 Bachus & Schanker

---

[7] In fact, as the Courts state in both cases cited in Dr. Gahan's Response, Rule 37(b)(2)(A)(i)–(vii) authorizes the Court to enter sanctions "if a party fails to obey a discovery/scheduling order," including dismissal of the party's claims in whole or in part "when the failure to comply with the court's order results from willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply." *Romero v. ABC Ins. Co.*, 320 F.R.D. 36, 40 (W.D. La. 2017) (citing Fed. R. Civ. P. 37(b)(2); *Batson*, 765 F.2d at 514); *see also Coane*, 898 F.2d at 1032 ("Rule 37(b)(2)(C) authorizes dismissal with prejudice when a party refuses to obey a discovery order. Because of the severity of this sanction, dismissal with prejudice typically is appropriate only if a refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct.") (citations omitted).

[8] As the Fifth Circuit has stated, "the most severe in the spectrum of sanctions provided by statute or rule *must* be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Coane*, 898 F.2d at 1032 (citing *Nat'l Hockey League*, 427 U.S. at 643). It is for this reason that Sanofi raised its concerns regarding Dr. Gahan's role as a litigation solicitor – not to "grind its axe" against her, but to highlight to the Court the influence she exerts amongst Taxotears-members and in social media on the plaintiff pool. Similarly, it is for this reason that Sanofi raises its concerns with the Taxotears-communication that Dr. Gahan has produced to date, indicating that the Taxotears frequently discuss the litigation and Bachus & Schanker LLP with each other - and with Dr. Gahan specifically.

[9] *See, e.g.*, Memo in Support of Sanofi Defendants' Motion for Rule 37 Sanctions (June 8, 2018) (Rec. Doc. 2831-1).

Plaintiffs who have submitted a PFS to date, only 286 (about 25%) have submitted some information coded as "PTO 71."[10]  Three of Dr. Gahan's fellow Taxotears members missed Magistrate Judge North's June 28, 2018 deadline to produce their ESI.  On that date, counsel instead filed for extensions in these and some 420 other cases.[11]  They now have until July 16, 2018. These include, for example, Plaintiff Ami Dodson, one of the first four cases filed in the MDL on March 14, 2016.  This behavior directly impacts Sanofi's ability to collect the most basic information about plaintiffs, and highlights the concern that this pattern of delay may be because additional ESI is being concealed or will simply be lost.  *See, e.g.*, **Ex. D**, Doc. ID. 197703 at 1 (". . . Also I did receive a letter from B&S this week. It did state to make sure you either close down your facebook or lock it down and also any blog posts etc.").

But Plaintiff is also incorrect that she has not substantially prejudiced Sanofi's preparation for trial.  Initially, her justification makes no difference under the Federal Rules on whether case-ending sanctions are appropriate.  It also presents a rather obvious question—what prejudicial conduct has Sanofi not uncovered yet? Dr. Gahan's Response does not respond to this concern. Dr. Gahan instead claims that her colleague Dr. Weinstein is one of *numerous* researchers she has contacted regarding hair loss, none of whom she has disclosed to Sanofi.  *See* Response, at 8-9 (Rec. Doc. 3216).  Quite the opposite of having "no interest in compelling the formal PFS identification of the score of other researchers Dr. Gahan corresponded with," Sanofi cannot seek discovery from witnesses if it is unaware of the witnesses' identities.  *See* Response at 8 n. 5 (Rec. Doc. 3216).

---

[10] Defendants have not yet reviewed these submissions to confirm Plaintiffs' compliance with PTO 71A.

[11] *See* Plaintiffs' Motion to Extend PTO 71A Deadline (Rec. Doc. 3195).

Indeed, Sanofi has already been prejudiced in preparing for trial because instead of expending resources to "adequately prepare a defense," Sanofi is policing basic compliance with *the minimum discovery obligations borne by plaintiffs in this litigation—Dr. Gahan has to disclose doctors who treated her for the alleged injury. See, e.g.*, Worrell v. Houston Can! Acad., 424 F. App'x 330, 337 (5th Cir. 2011).

One final aspect of Plaintiff's Response must be mentioned if only because it emphasizes that Dr. Gahan, through counsel, still refuses to recognize the extent of her discovery abuses. She argues that Sanofi ought to be stripped of mechanisms for procedural due process. Her counsel attempts to re-litigate Honorable Judge Engelhardt's Pretrial Order No. 71A, which is interesting given that without it, Sanofi would have no inkling that Plaintiff had hidden treatment for her alleged hair loss. Reverse sanctions are inappropriate on this Motion. Sanofi filed its Motion for Rule 37 Sanctions after uncovering a pattern of active discovery abuse which not only involved Plaintiff, but in which she had enlisted third parties. Sanofi attempted to meet and confer with counsel regarding this conduct to avail. Dr. Gahan's behavior is her own, and her willful concealment of highly relevant information violates PTO No. 22A, PTO No. 68, and PTO No. 71A.

## CONCLUSION

In light of Plaintiff's bad faith conduct, Sanofi respectfully requests that the Court dismiss Dr. Gahan's claims and impose other reasonable sanctions pursuant to Fed. R. Civ. P. 37(b)(2).

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* <br> Douglas J. Moore (Bar No. 27706) <br> **IRWIN FRITCHIE URQUHART &** <br> **MOORE LLC** <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA 70130 <br> Telephone: 504-310-2100 <br> Facsimile: 504-310-2120 <br> dmoore@irwinllc.com | Harley V. Ratliff <br> Adrienne L. Byard <br> **SHOOK, HARDY& BACON L.L.P.** <br> 2555 Grand Boulevard <br> Kansas City, Missouri 64108 <br> Telephone: 816-474-6550 <br> Facsimile: 816-421-5547 <br> hratliff@shb.com <br> abyard@shb.com |

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*