

August 2, 2018

VIA ELECTRONIC MAIL

The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street
Room B419
New Orleans, Louisiana 70130

Patrick L. Oot

1155 F Street, N. W., Suite 200
Washington, D.C. 20004
**t** 202.783.8400
**dd** 202.639.5645
**f** 202.783.4211
oot@shb.com

Re:  *In re: Taxotere (Docetaxel) Products Liability Litigation*,
     MDL No. 2740 – August 7, 2018 Status Conference

Dear Judge North:

We write to address a few discovery issues for the Court's consideration.

### I. PLAINTIFFS' ESI HAS NOT BEEN PRODUCED IN A REASONABLY USABLE FORMAT WITH THE ASSOCIATED METADATA

#### A. Proposed Order Governing Plaintiffs' Responsibilities Related to ESI Format

During the parties' July 13, 2018 meet-and-confer, we discussed with the PSC our concern that the vast majority of Plaintiffs are not producing their ESI in a reasonably usable production format or containing required metadata.[1] Defendants therefore cannot use keyword-search methods, and Plaintiffs' ESI is illegibly pixilated in incomplete mobile-phone screen snippets, formats that defy even Defendants' attempt to process the data using optical character recognition tools.

Since May 2017, Defendants have consistently proposed simple and near-zero-cost production formats to Plaintiffs as a common-sense solution to avoid the costly and time-consuming process of dealing with such sweeping, inventory-wide deficiencies on a case-by-case basis. Despite Defendants' repeated requests and Court Order, Plaintiffs have not met obligations to produce ESI in the requested format pursuant to Federal Rule of Civil Procedure 34(d), have not objected to such format, and have not even produced in a reasonably usable alternative format. Rule 34(d) also provides an alternate pathway for production format by order of the Court—here, PTO 71A—which again aligns with the Defendants' consistent instruction to the PSC on how Plaintiffs should produce their ESI.

During our July 13, 2018 meet-and-confer, the PSC requested that we not raise this ESI format issue with Your Honor at that time, but rather wait until the next status conference. In the spirit of cooperation, we not only agreed to the PSC's request, but also in an effort to avoid non-merits based disputes—including expensive and time-

---

[1] *See* Fed. R. Civ. P. 34(b)(2)(E); Pretrial Order No. 71A at ¶ 5 (Jan. 26, 2018) [Doc. 1531].



consuming motion practice—we provided the PSC with a proposed order to address this issue, attached hereto as **Exhibit A**.

We offered to discuss this proposed order with the PSC, but instead of discussing the issue with us, the PSC responded in a letter on August 1, 2018, requesting that we again avoid raising this issue with Your Honor.[2] There is no reason for further delay when immediate instruction from the Court will not only provide guidance for Plaintiffs who have already produced ESI in an incorrect format, but also will help prevent incorrect format issues with future productions.

In their August 1, 2018 letter, Plaintiffs also reiterated their belief that PTO 49 does not apply to Plaintiffs.[3] While the PTO 49 requirements fairly apply to them, the issue here is much more fundamental. Plaintiffs' obligation to produce ESI in Defendants' requested format or even a reasonably usable format is beyond dispute under PTO 71A, case law, and the Federal Rules of Civil Procedure,[4] and this Court has specifically already ordered that Plaintiffs produce metadata with their ESI.[5] Plaintiffs' failure to provide Plaintiffs' ESI in Defendants' requested and the Court-ordered format is problematic.

Like the ESI production issues that led to PTO 71 and PTO 71A, this format issue is a global one affecting nearly every MDL plaintiff's ESI production. It is therefore impractical and inefficient to handle on a case-by-case basis when the Court can simply enter an order providing guidance. As the PSC has repeatedly said, this is an issue that relates to over 9,000 Plaintiffs. Requiring Sanofi to address this issue over 9,000 times does not comport with the goal of Rule 1 and Your Honor's Civil Practice Guidelines for the parties to exchange discovery efficiently "to secure the just, speedy, and inexpensive determination" of this litigation.[6]

Plaintiffs should have no issues complying with the format requirements outlined in this proposed order. In fact, while production-format issues are pervasive, we have received *some* compliant productions in reasonably usable formats with the associated metadata. These compliant productions emphasize that Plaintiffs are capable of following the ESI production requirements. Further, as PTO 71A states, any individual plaintiff's counsel who has questions or needs assistance shall consult with the PLC, Karen Barth Menzies, or Plaintiffs' ESI Consultant, Paul McVoy.[7]

For these reasons and those stated below, we respectfully request that the Court enter the proposed order governing Plaintiffs' responsibilities relevant to ESI format (**Ex. A**).

August 2, 2018

Page 2

---

[2] *See* Letter from Karen B. Menzies, Counsel for Plaintiffs, to Patrick L. Oot, Counsel for Sanofi at 3 (Aug. 1, 2018).
[3] *See id.* at 1–2.
[4] *See* FED. R. CIV. P. 34(b)(2)(E); Pretrial Order No. 71A (Jan. 26, 2018) [Doc. 1531].
[5] *See* Pretrial Order No. 71A at ¶ 5 (Jan. 26, 2018) [Doc. 1531].
[6] *See* FED. R. CIV. P. 1; Civil Practice Guidelines – Magistrate Judge Michael B. North, United States District Court for the Eastern District of Louisiana at 1, *available at* http://www.laed.uscourts.gov/sites/default/files/pdfs/north/Civil_Practice_Guidelines.pdf.
[7] Pretrial Order No. 71A at ¶ 5 (Jan. 26, 2018) [Doc. 1531].



### B. Plaintiffs Have Failed to Comply with the Existing Requirements for Form of ESI Productions

August 2, 2018

Page 3

Production format has been a topic of discussion between the parties since May 2017. In fact, Sanofi suggested language for the PSC's technical guidance to individual Plaintiffs to prevent this very issue. Instead, the PSC rejected and deleted Sanofi's proposed language on this exact topic in their May 24, 2017 edits. Specifically, the PSC struck the following language:

> Counsel's collection, search, review, and production of information must also conform to the relevant provisions of the ESI Protocol. In particular, counsel should ensure that the requisite metadata associated with ESI are collected and produced along with emails, photos and other ESI. **Thus, for example, it is not appropriate to collect a piece of a plaintiff's ESI by taking a picture or screenshot of it or to collect an email by having your client forward it to you.** These collection techniques do not preserve the ESI's metadata.
>
> Collection can be simple and does not require sophisticated tools. For example: Emails from a Gmail or Hotmail account can be downloaded easily – with just a few clicks – using Microsoft Outlook. Facebook has a data download function. iPhones data can be downloaded using free iTunes software after unlocking the device. .ZIP files can be used to maintain the folder structure and file-specific metadata of a client's files (e.g., Word documents, photos, etc.) from a computer or smartphone.[8]

Following Plaintiffs' repeated failures to adequately and timely produce responsive ESI, **this Court entered PTO 71A, which specifically requires that "Plaintiffs shall produce all responsive ESI in a manner that preserves any metadata**."[9] It even provides some examples of methods to collect at least some relevant ESI from sources such as e-mail accounts, Facebook pages, iPhones, and computer files.[10] But Sanofi is not receiving discovery in a reasonably usable format that preserves the metadata.

PTO 71A also includes supplemental guidance, which states, in part, the following:

> Many attorneys have been uploading PDFs of pictures with dates written or typed on the PDF. Where possible, you should upload to Centrality a copy of the original digital file, for example a .jpeg file and use a different method of indicating the date (such as putting the date in the file name). **It is not helpful to print a picture that was originally in electronic form and scan it back in, or take a picture of an electronic picture and submit that file because all potential date information is lost.** Often times, the digital version of the picture will retain in its metadata the "date taken." We

---

[8] *See* E-Mail and Attachment from Zachary L. Wool to Patrick L. Oot (May 24, 2017) (emphasis added), attached as **Exhibit B**.
[9] *Id.*
[10] *Id.* at ¶ 5 n.1.



have confirmed with the Centrality administrator that Centrality leaves this metadata information intact.[11]

Despite these instructions, the vast majority of Plaintiffs have been producing ESI without any metadata and in formats that are not reasonably usable and are at resolutions that OCR technology cannot process. For instance, Plaintiffs have printed out ESI, scanned it, and then uploaded the scanned image, which does not contain metadata. Other Plaintiffs have taken screenshots of the ESI, which sometimes cuts off relevant text, or even have taken screenshots of their e-mail inboxes (not even screenshots of the e-mail messages themselves—just the e-mail inboxes):[12]

August 2, 2018

Page 4





---

[11] Exhibit A at 2–3 to Pretrial Order No. 71A (Jan. 26, 2018) (emphasis added) [Doc. 1531-1].
[12] *See* Examples of Plaintiffs' ESI Productions, attached as **Exhibit C**.

CHICAGO | DENVER | HOUSTON | KANSAS CITY | LONDON | MIAMI | ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | TAMPA | WASHINGTON, D.C.



These productions are not only difficult to read, but they do not include the metadata required by PTO 71A, nor are they in a reasonably usable format as required by Rule 34 and this Court's orders.

August 2, 2018

Other Plaintiffs have taken photographs of their computer monitors, and then uploaded those newly-created images to Centrality:[13]

Page 5



Screenshots and photographs of computer monitors are unacceptable and simply unusable.[14] Sanofi cannot search the documents with basic keyword search terms because Plaintiffs did not produce the extracted text.

Receiving discovery materials in a format that is not reasonably usable causes undue burden on Sanofi. Not only must Sanofi attempt to sift through hundreds of pages without basic keyword-search-term capability because extracted text is not provided, but also upon finding a relevant document, Sanofi must then try to guess, for example, who the document was created by, who the recipients of the document were, when the document was created, etc. Documents should be produced in a reasonably usable,

---

[13] *See id.*

[14] *See The Sedona Conference Principles: Third Edition, Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* Comment 12.b.i., *available at* www.TheSedonaConference.org (noting that the 2006 Advisory Committee Note to Rule 34(b) warns that '[i]f the responding party ordinarily maintains the information it is producing in a way that makes is searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.'); *see also Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 390 (D.N.M. 2018) (reasoning the advisory committee notes imply that, "if ESI is produced in a non-text searchable format—or at least if it cannot be readily converted to a text-searchable format—it is most likely not reasonably usable").



unified format. Sanofi hopes these issues are limited to production format and that they do not extend to ESI preservation, where failures to properly collect can lead to the loss or destruction of ESI.

### II. PLAINTIFFS' COUNSEL SHOULD PRODUCE THE LETTER THEY SENT TO PLAINTIFFS PROVIDING INSTRUCTIONS REGARDING ESI SOURCES

August 2, 2018

Page 6

In or around April 2017, Plaintiff Kimberly Free received a letter from her attorneys in this litigation, which she described as follows:



Notably, despite being a current member of the Taxotears Google Group, Plaintiff Free has not produced any ESI from that group. Likewise, while it appears she may be a member of the Taxotears Facebook Group, she has not produced any ESI from that group either.

During last Wednesday's hearing before Judge Milazzo, Plaintiffs' counsel said that their letter to Plaintiff Free states, "We advise why don't you make your Facebook private."[15] Plaintiffs' counsel also said that Plaintiff Free's e-mail "talks about making her Facebook page private."[16] But as demonstrated above, Plaintiff Free's e-mail actually says that Plaintiffs' counsel's letter states that she should "*either* close down your facebook *or* lock it down and any blog posts etc." In short, there is a significant inconsistency here between what Plaintiff Free said the letter states ("either close down your facebook or lock it down and any blog posts, etc.") and what Plaintiffs' counsel said the letter states ("make your Facebook private"). Because of this discrepancy, the Court and Defendants need to see what the letter actually says.

At that same hearing, Plaintiffs' counsel also said that the letter advises Taxotere Plaintiffs: "Don't be stupid. Don't be putting stuff on social media right now. Let's try to control the environment."[17] This last statement in particular raises further concerns with respect to the content of Plaintiffs' counsel's letter.

---

[15] Mot. Hearing Tr. at 22:4–5 (July 18, 2018).
[16] *Id.* at 21:15–17.
[17] *Id.* at 22:19–23:4.

CHICAGO | DENVER | HOUSTON | KANSAS CITY | LONDON | MIAMI | ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | TAMPA | WASHINGTON, D.C.



We therefore requested that Plaintiffs' counsel produce this letter, as well as any other communications with Plaintiff Free regarding this subject.[18] Plaintiffs' counsel has not responded to our request.

August 2, 2018

Page 7

This document may not be withheld for privilege.[19] First, Plaintiff Free waived any privilege when she shared the contents of the communication with third parties. It is "settled that disclosure of the 'exact words' of an attorney-client communication are not necessary to find that a waiver has taken place."[20] Courts have explained this a number of ways:

- "[T]he loss of the privilege [is not] confined to 'the particular words used to express the communication's content' but extends 'to the substance of the communication,' since **the disclosure of '"any significant part" of a communication waives the privilege'** . . . ."[21]
- "A summary, paraphrase or clear reference to the substance of a communication can waive the confidentiality of that communication."[22]
- "A document will be considered disclosed by a plaintiff when the 'defendant has learned the "gist" of the document's contents.'"[23]

Plaintiff Free sent the above e-mail to the Taxotears Google Group, which according to the PSC includes "84 persons."[24] The PSC said that it was able to identify 82 of these 84 individuals and that "45 are not parties and only 37 are Plaintiffs in this MDL."[25] Plaintiff Free therefore waived any privilege as to the substance of the communication by describing the communication to third parties.

Second, Plaintiffs' counsel also waived any privilege by describing the purported substance of the communication to defend against allegations raised in a Rule 37 motion.[26] "[I]t is well-established that '[t]he privilege which protects attorney-client communications may not be

---

[18] Letter from Harley V. Ratliff, Counsel for Sanofi, to Darin Schanker, Counsel for Plaintiffs (July 25, 2018).
[19] Notably, Plaintiff's counsel has not claimed that this document is privileged—neither informally nor through a privilege log.
[20] *Bausch & Lomb Inc. v. Alcon Labs. Inc.*, No. 94-6534L(SC), 1996 WL 363056 (W.D.N.Y. Jan. 26, 1996); *see also United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982); *LaSalle Bank N.A. v. Mobile Hotel Props., LLC*, No.A. 03-2225, 2004 WL 1238024, at *2 (E.D. La. June 3, 2004) ("***describing*** **an attorney-client communication waives the privilege or protection.**") (emphasis added); *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94–1477, 1995 WL 45847, at *5 (E.D. La. Feb. 2, 1995) (same).
[21] *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984) (emphasis added).
[22] *United States ex rel. Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243, 1250 (D. Md. 1995).
[23] *The Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 48 (D.D.C. Jan. 9, 2009) (citation omitted).
[24] Letter from Karen B. Menzies, Counsel for Plaintiffs, to Judge North at 1 (June 6, 2018).
[25] *See id.*
[26] *See* Mot. Hr'g Tr. at 20:20–22:11 (July 18, 2018).



August 2, 2018

Page 8

used both as a sword and a shield."'[27] In other words, a party cannot disclose "self-serving communications," while "bar[ring] discovery of other communications that an adversary could use to challenge the truth of the claim."[28] Rather, the privilege can be waived when the "privilege holder releases only communications or portions of communications favorable to his litigating position, while withholding any unfavorable ones."[29] Plaintiffs' counsel's summary of the substance of the letter to Plaintiff Free therefore waived any privilege.

Lastly, Plaintiff Free's and Plaintiffs' counsel's disclosures waived the entirety of any privilege. A "disclosure of any significant portion of a confidential communication waives the privilege as to the whole."[30] Waiver further relates "to all other communications on the same subject."[31] It "allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed."[32] Therefore, Plaintiff Free and Plaintiffs' counsel have waived any privilege for the entire letter, as well as any other communications with Plaintiff Free on the same subject.

We therefore respectfully request that the Court order Plaintiff to produce the above-referenced letter, as well as any other communications on the same subject, to Sanofi.

### III. PLAINTIFFS LIST OF 37 TAXOTEARS PLAINTIFFS IS INCOMPLETE

During the June 13, 2018 status conference, Plaintiffs' counsel stated that there is "not a way to unjoin" the Taxotears Google Group.[33] This is contrary to evidence from Plaintiffs' ESI of the ability to leave the group. For example, the footer of every Taxotears Google Group e-mail chain provides the following options:

> You received this message because you are subscribed to the Google Groups "Taxotears" group. **To unsubscribe from this group and stop receiving emails from it**, send an email to taxotears+unsubscribe @googlegroups.com. To post to this group, send email to taxotears@googlegroups.com. Visit this group at

---

[27] *United States v. Kerr*, No. CR 11-2385-PHX-JAT, 2012 WL 2919450, at *1 (D. Ariz. July 17, 2012) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999); *Consolidated Health Plans, Inc. v. Principal Performance Grp., Inc.*, No. Civ.A. 02–1230, 2003 WL 1193663, at *4 (E.D. La. Mar. 14, 2003)
[28] *In re Adelphia Commc'ns Corp.*, No. 02–41729, 2007 WL 601452, at *3 (S.D.N.Y. Bankr. Feb. 20, 2007).
[29] *Browne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (2d Cir. 1993).
[30] *Consolidated Health Plans, Inc.*, 2003 WL 1193663, at *7 (citing *Nguyen*, 197 F.3d at 209).
[31] *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010); *see also United States v. Nobles*, 422 U.S. 225 (1975); *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982); *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981).
[32] *Regeneron Pharm., Inc. v. Merus B.V.*, No. 14 CIV. 1650 (KBF), 2014 WL 11344040, at *2 (S.D.N.Y. Dec. 5, 2014).
[33] *Id.* at 13:18-19.



http://groups.google.com/group/taxotears. **For more options, visit https://groups.google.com/d/optout.**[34]

August 2, 2018

Page 9

We therefore have another compliance issue with the Court's May 9, 2018 order. That order specified that the PSC "will identify every Plaintiff in this Multidistrict Litigation who **was** or is a member of the Taxotears group."[35] Believing that there is "not a way to unjoin" the group, the PSC relied on the "About Group" page—which identifies only current members of the group, not former members.

While Plaintiffs' counsel stated that they feel like they have "communicated to all plaintiffs' counsel about this obligation,"[36] based on our review of recent productions of Plaintiffs' ESI, we have already identified **five** additional Plaintiffs who appear to be members of the Taxotears Google Group but were not on the PSC's "complete membership list."

We therefore ask that this Court require the PSC to follow up with all MDL plaintiffs' counsel to ensure that the PSC is properly identifying both current and former members of the Taxotears Google Group.

### IV.    THE PSC HAS NOT PRODUCED THEIR AFFIDAVIT REGARDING SHIRLEY LEDLIE

During the parties' July 13, 2018 meet-and-confer, the PSC stated that they had been in contact with Shirley Ledlie and that they would provide an affidavit to Sanofi, describing the process the PSC underwent to contact Ms. Ledlie, collect her documents, etc. by that weekend or early the next week. The PSC did not provide this affidavit. We requested the affidavit again on July 31, 2018,[37] but we have yet to receive a response. We therefore ask that the Court instruct the PSC to produce this affidavit by August 10, 2018.

### V.    THE PSC HAS NOT FULLY COMPLIED WITH THE COURT'S ORDER TO PROVIDE MEDICAL RECORDS OF TREATERS, SUCH AS DR. CLAIBORNE

Dr. Claiborne treated each of the four bellwether Plaintiffs and performed scalp biopsies to evaluate their claimed hair loss. Over a month and a half ago, Your Honor ordered that Sanofi was entitled to documents "related to the facts of Dr. Claiborne's examination of any Plaintiff," including "samples and the objective results of any testing of those samples."[38] Plaintiffs, however, refuse to produce a complete set of medical records subject to this Order or even identify in a privilege log the records they are withholding.

---

[34] *See* Example of Taxotears E-Mail Footer (emphasis added), attached as **Exhibit D**.
[35] Discovery Order at 1 (May 9, 2018) [Doc. 2522] (emphasis added).
[36] Status Conf. Tr. at 14:25 – 15:8.
[37] Letter from Patrick L. Oot, Counsel for Sanofi, to Karen B. Menzies, Counsel for Plaintiffs at 4 (July 31, 2018).
[38] *See* Minute Entry (June 13, 2018) [Doc. 3074].

CHICAGO | DENVER | HOUSTON | KANSAS CITY | LONDON | MIAMI | ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | TAMPA | WASHINGTON, D.C.



August 2, 2018

Page 10

Plaintiffs admit they have withheld records from Sanofi, but refuse to identify them in any way. Even without the benefit of the repeatedly requested privilege log, it is clear that Plaintiffs have, at a minimum, withheld the punch biopsy pathology reports. A pathology report is a laboratory report that contains a description and reading of a biopsied specimen by examining the cells and tissue under a microscope—i.e., the "objective results of the [testing]" that Your Honor already ordered the PSC to produce. Sanofi requests the Court order the PSC to produce the pathology reports and review any other withheld documents *in camera* to determine if the documents withheld by the PSC are facts to which Sanofi is entitled.

Further, given the Court's guidance on discovery related to medical providers that are both treaters and "consulting experts," Sanofi had hoped to avoid further disputes on such treaters. But the PSC refuses to come to a reasonable resolution on such discovery. For example, Dr. Thompson is a psychiatrist who observed, interacted with, and treated bellwether Plaintiff Barbara Earnest. Although not specifically addressed in the Court's June 13 Order, Your Honor's reasoning is equally applicable to Dr. Thompson. *See* Status Conf. Tr., at 34:9–25, 34:14–19 (June 13, 2018) ("Because of the nature of this expert and because of the nature, as I said, of work that he's done and the interaction that he's had with plaintiffs…it's in the nature of medical care.") ("because of what he's done in the case, because he's interacted as he has with the plaintiffs, because he's done testing, because he may have spoken to these plaintiffs and made observations and asked questions germane to the testing he was doing, I think that Sanofi's entitled to that information, those facts"). Dr. Thompson personally observed and treated Ms. Earnest—and potentially other bellwether Plaintiffs—and Sanofi is entitled to discover the *facts* related to his treatment. The PSC, however, will not engage in any discussion about what records should be produced.[39] As such, Sanofi requests that the Court order the PSC to (1) identify any additional Plaintiffs who were evaluated and treated by Dr. Thompson and (2) produce corresponding medical records, along with a privilege log detailing any medical records withheld as privileged.

***

We look forward to discussing these topics with you on Tuesday.

Best regards,

*Patrick Oot*

Patrick L. Oot
Partner

---

[39] *See* E-mail correspondence between Kelly Bieri, Counsel for Sanofi, and Dave Miceli, Counsel for Plaintiffs (June 20–Aug. 2, 2018), attached as **Exhibit E**.