

August 6, 2018

**VIA EMAIL SUBMISSION**
The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street, Room B419
New Orleans, LA 70130

 Re: *In re: Taxotere (Docetaxel) Products Liability Litigation,* MDL No. 2740

Dear Judge North:

 The following is the Plaintiffs' Steering Committee's reply to Sanofi's August 2, 2018 submission regarding tomorrow's discovery status conference.

 To begin, Plaintiffs take strong issue with Sanofi's submission of a single-spaced, ten-page letter with thirty-nine footnotes and five exhibits—raising five separate issues, several of which the PSC respectfully believes should be fully briefed and heard by Judge Milazzo. While Plaintiffs are no strangers to working nights and weekends, even in August, it is simply not possible to adequately respond to Sanofi's extensive letter brief addressing so many topics on such a compressed schedule.

 This Court's Case Management Order No. 5 contemplates that a party seeking guidance from the Court may submit a "letter, not to exceed three pages single-spaced, outlining the issues and the Party's position on those issues no later than three business days prior to the status call." Case Management Order No. 5 (Rec. 762, at 3). Sanofi's submission of a ten-page letter violates this Order.

 **I.     Sanofi's Complaints About ESI Should Be Considered by Judge Milazzo After Full Briefing.**

 The bulk of Sanofi's letter concerns complaints about the format in which a few Plaintiffs out of thousands—*none of whom are trial Plaintiffs*—have produced certain electronically stored information. No fault lies with the trial Plaintiffs or the PSC—and Sanofi identifies none.

 The PSC is not responsible for curing every single alleged deficiency in a document production of non-trial Plaintiffs. There is a deficiency process—but Sanofi instead continues to use these status conferences to raise individualized issues with seemingly random Plaintiffs and to spin the issues as global problems. The issues are not global—and they do not affect the trial Plaintiffs, which should be taking priority at this stage in the litigation to drive it to resolution. Further, the Court has already heard argument on these matters twice and the ESI obligations are clear. To the extent Sanofi disagrees, it should bring a formal motion raising these issues for Judge Milazzo's consideration, which will allow Plaintiffs an opportunity for formal briefing.

Date:   August 6, 2018
Page:   2 of 6

While the issues Sanofi raises are not appropriate for this status conference, the Court should know that Sanofi is wrong to suggest that it lacks "usability"—including searchability— over ESI. And, it is wrong to suggest that the PSC has superior capabilities or greater access to information. The playing field is level: Plaintiffs have exactly the same usability that Sanofi has, and Sanofi has the same ability as Plaintiffs to download ESI from Centrality—and to index it. Sanofi can then run whatever searches it wants.

That said, every single byte of data and metadata associated with the ESI of thousands of non-trial Plaintiffs is irrelevant to the prosecution of the bellwether trial Plaintiffs' cases—which this Court's Case Management Orders justifiably prioritize. Sanofi may disagree, but that disagreement over the focus of this MDL (i.e., on general liability/expert discovery and bellwether trials versus on highly individualized, non-trial-plaintiff ESI discovery) should be heard by Judge Milazzo.

### II.    Sanofi's Improper Attempt to Obtain Attorney-Client Privileged Communications Should be Denied.

Sanofi seeks an order requiring Bachus & Schanker to produce a privileged attorney-client correspondence it sent to Kimberly Free and other clients concerning their rights and obligations to preserve and produce ESI. Ms. Free is not a trial plaintiff. Sanofi's attempt to inject this ancillary issue into the Court's status conference is improper.

In any event, the request fails on its own terms. This attorney-client communication:

1. is not encompassed within any document production mandate on the PFS;
2. is not relevant to a claim or defense of a party in this action; and
3. was <u>specifically excluded</u> from production and/or privilege log requirements pursuant to PTO 49, Section IX.C.4.

*See also* Plaintiff Fact Sheet, Question 18 (excluding communications with attorneys: "Apart from communications to or from your attorney, . . .").

Contrary to Sanofi's letter, Ms. Free's counsel did not use the letter as a "sword" or "shield" in any matter related to Ms. Free's claims. Rather, it was Sanofi who improperly utilized Ms. Free's email in a motion for Rule 37 sanctions against a completely different Plaintiff. Suffice it to say, Sanofi's attempts to use in-court statements by Ms. Free's counsel related to this letter, made in a completely different proceeding unrelated to Ms. Free, and solely for refuting Sanofi's baseless suggestions of impropriety, cannot waive Ms. Free's attorney-client privilege. Sanofi's use of Ms. Free's ESI production in a sanctions motion for an entirely different Plaintiff (Kelly Gahan) is stretching the boundaries of permissible use of discovery. To suggest that Ms. Free has now waived her attorney-client privilege because of Sanofi's improper use of that email in a different Plaintiff's proceeding strains logic.

All that said, these issues are not even ripe. Sanofi has not requested this communication between counsel and Ms. Free through any discovery device, so there is nothing to compel.

www.ClassLawGroup.com
505 14th Street, Suite 1110, Oakland, CA 94612
T. 510 350 9700    F. 510 350 9701

Date:   August 6, 2018
Page:   3 of 6

Indeed, Sanofi is not authorized to conduct any discovery outside of the PFS on individual non-bellwether cases. Furthermore, in the event Judge Milazzo opens the discovery in all individual cases and authorizes Sanofi to formally request this document, Ms. Free objects to any attempt to obtain the document without full briefing on a contested motion and a formal hearing before Your Honor or Judge Milazzo.

Accordingly, given the sanctity of the attorney-client privilege issues at stake, Ms. Free and her counsel respectfully suggest that resolution of the issue be pursued through formal motion practice.

### III. The PSC has Complied with the Court's Order Regarding Identification of Plaintiff Members of the Support Group Taxotears.

Sanofi again asks the Court to issue another order for what the PSC and individual plaintiffs' counsel have already been ordered to do in the PFS, PTO 71A, and this Court's Order dated May 9, 2018.  In the PFS, Judge Engelhardt ordered each plaintiff to answer questions about whether they ever "communicated via email, visited any chat rooms, or publicly posted a comment on any public internet site, regarding your experience with or injuries you attribute to Taxotere, other chemotherapies, or alopecia/hair loss during the past ten years … You should include posting on all public social network sites …." (PFS Section II, Question 18.)  Section II, Question 19 asks if you are now or have ever been a member of an alopecia support group.   The PFS also requires each plaintiff to sign under penalty of perjury.

Under PTO 71A, Judge Engelhardt ordered each plaintiff to produce ESI from the following sources:  i) email accounts, ii) electronic devices, iii) hardware storage devices, iv) any social media used by plaintiff, v) any websites where plaintiff made any posts, vi) cloud storage used by plaintiff.  PTO 71A requires both the plaintiff and the attorney to sign a Rule 26(g) certification.

This Court's May 9, 2018 Order instructed the PSC to identify plaintiffs who are members of the private Google Group Taxotears from the "About List" provided by plaintiff Kelly Gahan[1]; notify each counsel for the plaintiff-member and provide them with the May 9, 2018 Order, and then review each plaintiff-members' PFS in Centrality to make sure the PFS was complete with regard to the Taxotears membership.  The PSC was also ordered to provide the defendants with a redacted version of the "About List."  On May 23, 2018, the PSC complied with this Order, as noted by the Court during the June 13, 2018 Hearing (16:2). On July 17, 2018, the PSC provided to the defendants the updated version of the redacted "About List".

On May 18, 2018, the PSC sent an email, attaching the May 9, 2018 Order, to all plaintiff counsel and reminded plaintiffs' counsel of the need to identify plaintiffs who were members of the private Google Group Taxotears.  Prior to this, on March 29, 2018 and again on April 18, 2018, the PSC sent reminders to all plaintiffs' counsel of their obligations under PTO 71A.   On

---

[1] The PSC was able to identify 82 of the 84 members by analyzing the "About List", emails that were produced by plaintiff Kelly Gahan, and Centrality.

Date:   August 6, 2018
Page:   4 of 6

September 25, 2017, the PSC sent reminders to all plaintiff counsel about preservation and PFS obligations, including instructions specific to Section II, Questions 18-19.  On July 14, 2017, the PSC sent to all plaintiffs' counsel the Guidance regarding sources and production of ESI, as agreed to by the parties.

Sanofi now requests an Order from this Court requiring "the PSC to follow up with all MDL plaintiffs' counsel to ensure that the PSC is properly identifying both current and former members of the Taxotears Google Group." (Sanofi submission, p. 9.)  As noted above, the PSC has done what the Orders have required and more.  The PSC has already individually contacted the individual attorneys who represent the plaintiffs on the "About List".

In effect, Sanofi is asking this Court to order the PSC to individually contact every plaintiff firm in the MDL and ask again what is already required to be answered under oath in the PFS and PTO 71A. The Court has already addressed the concerns Sanofi raises.  If Sanofi suspects certain non-bellwether plaintiffs have not fully complied to their liking, they certainly can raise these issues when each case not resolved in the MDL is remanded for full workup and trial in the appropriate jurisdiction from where each case originated outside of the MDL.  This request should be denied.

### IV.     Sanofi is Not Entitled to an Affidavit Respecting Ms. Ledlie.

Concerning Sanofi's requested discovery on Ms. Shirley Ledlie, in the lead up to the July 18, 2018 status conference with Your Honor, the parties engaged in a meet and confer. During those discussions, Mr. Miceli stated that if an affidavit was required by the Court that he would provide one, and that he would provide a copy to Sanofi ahead of the upcoming status conference.  Thereafter, having reviewed the prior record, and the Court's instruction to speak with Ms. Ledlie, it was determined that an affidavit or declaration was not ordered; further, an affidavit or declaration was not requested by the Court during the July 18, 2018 status conference. As a result, no affidavit or declaration was provided.

To be clear, however, the PSC advised Mr. Ratliff on July 13 that Ms. Ledlie declined to voluntarily assist Sanofi in its discovery efforts. *See* MJ North transcript, July 18, 2018, p. 42, ll. 16-17 (Mr. Ratliff: "Mr. Miceli did advise us on Friday [7/13] about Ms. Ledlie's position…"). Then, during the July 18 status conference, Mr. Miceli recounted in open court, on the record, the substance of the PSC's conversations with Ms. Ledlie, and Ms. Ledlie's decision. *See* MJ North transcript, July 18, 2018, p. 35, ll. 21. Following the PSC's description to the Court of its discussion with Ms. Ledlie, Mr. Ratliff offered no protestation that any representation to the Court was a deviation from the explanation provided to Sanofi five days earlier. In fact, he confirmed that the PSC previously advised of Ms. Ledlie's decision. *Id.* Simply put, the explanations were identical.

Now Sanofi seeks an affidavit "describing the process the PSC underwent to contact Ms. Ledlie, collect her documents, etc." Sanofi mistakenly, or perhaps artfully, misstates what the Court instructed the PSC to do. Your Honor instructed the PSC to speak with Ms. Ledlie to see if

Date:   August 6, 2018
Page:   5 of 6

she would be willing to voluntarily cooperate in assisting Sanofi in its discovery requests. *See, e.g.*, MJ North transcript, June 28, 2018, p. 33, ll. 8-14.   The PSC was not instructed to "collect her documents," as stated by Sanofi. The Court clearly understands its limitations in ordering a resident of France to do anything; and Sanofi clearly understands its limitations on conducting discovery against a resident of France, which is precisely why it continues in its attempts to re-craft the Court's prior admonitions to the Parties, and to the PSC in particular.

Sanofi's request for an affidavit is not supported by any Federal Rule of Civil Procedure. In fact, the request for Ms. Ledlie's cooperation is not the product of any formal discovery request served on any plaintiff in the MDL. It is simply the product of discussions with the Court to seek the cooperation of a witness who is outside the jurisdiction of the Court.

For these reasons, Sanofi's request for an affidavit should be denied.

### V.      Contrary to Sanofi's letter, the PSC has Complied with the Court's Order Respecting Dr. Claiborne.

There is no need to re-hash for the Court the nature of Dr. Claiborne's relationship with the PSC. Dr. Claiborne was retained by the PSC to obtain punch biopsies on the first four potential bellwether trial plaintiffs. Without attempting to relitigate the nature of the relationship, the Court ordered that:

> Sanofi is entitled to documents related to the facts of Dr. Claiborne's examination of any Plaintiff, including when and where such examination occurred, Dr. Claiborne's observations of Plaintiffs, what samples or tissues were taken and from where, what was done with those samples and the objective results of any testing of those samples. Sanofi is not yet entitled to information pertaining to any opinions that Dr. Claiborne may have concerning testing of any samples taken by him and must await the period for expert discovery to conduct such discovery.

6/11/2018, Minute Order, MJ North.

The PSC has complied with Your Honor's Order. The PSC has produced the unredacted records of Dr. Claiborne that set out "when and where [the] examination[s] occurred, Dr. Claiborne's observations of Plaintiffs, what samples or tissues were taken and from where."  The PSC informed Sanofi that tissues slides were made from the biopsied tissue, and the PSC agreed to make photographic copies of the slides and make a portion of the remaining tissue available to Sanofi to make slides of its own. Thus, the PSC has advised Sanofi "what was done with those samples and the objective results of any testing of those samples." In fact, we have agreed to

Date:   August 6, 2018
Page:   6 of 6

make copies of the objective evidence – the slides – and provide Sanofi the opportunity to have slides made of their own.[2]

Further, the Court's minute order does not require, nor do the FRCP require, a privilege log to be produced at this time. The production is of records generated by the PSC's consulting expert, documenting work performed at the request of the PSC. Unlike documents responsive to an appropriate discovery request that counsel may allege are privileged from disclosure, Sanofi seeks a privilege log for the very information that FRCP, rule 26(b), states clearly is not subject to discovery. Sanofi is simply trying to accelerate its expert discovery; Sanofi will receive the appropriate expert disclosures for all experts that are expected to offer testimony at trial at the appropriate time. The parties have agreed, and Judge Milazzo has ordered, that those disclosures will be made on November 7, 2018. CMO 14 (Rec. Doc. 3064).

Sanofi attempts to shoe-horn a second consulting experts of the PSC into Your Honor's prior order concerning Dr. Claiborne. This should not be allowed.  Dr. John Thompson is a Psychiatrist at Tulane Medical School whose name appeared in a bellwether plaintiff's calendar/journal. Dr. Thompson is an expert that is consulting with the PSC, and a decision as to whether he will be called to testify as an expert at trial has not been made. He is presently clearly with the definition of a consulting expert under FRCP, rule 26(b). There has been no briefing before Your Honor concerning Dr. Thompson's relationship to Ms. Ernest. At this point it is premature to take up this issue, however Sanofi's continued attempts to conduct discovery on the PSC's experts is inappropriate at this time and should not be allowed.

We look forward to discussing these issues with you on Tuesday.

Respectfully Submitted,

Karen Barth Menzies
On behalf of the Plaintiffs' Steering Committee

CC:
Harley V. Ratliff, Esq. (via email)
Douglas J. Moore, Esq.  (via email)
John F. Olinde, Esq.  (via email)

---

[2] The PSC's offer to provide tissue from which Sanofi can make slides of its own, if it so chooses, is conditioned upon the reciprocal agreement that Sanofi will provide photos of its slides to the PSC upon an agreed upon schedule. Although, the PSC extended this offer of slide photo and tissue to Sanofi over six weeks ago, Sanofi has made no attempt to accept the offer. Rather, this morning, Sanofi provided the PSC with a proposed protocol for sharing tissue samples which the PSC has not been able to review or digest.