

June 8, 2018                                                                                               Patrick L. Oot

1155 F Street, N. W., Suite 200<br>
Washington, D.C. 20004<br>
<b>t</b> 202.783.8400<br>
<b>f</b> 202.783.4211<br>
oot@shb.com

The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street
Room B419
New Orleans, Louisiana 70130

Re:   *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740 – June 13, 2018 Status Conference

Dear Judge North:

We write to address several discovery issues for the Court's consideration.

### I. Plaintiffs' Ongoing Social-Media Discovery Deficiencies

The PSC's June 6, 2018 written assurance that the PFSs for the Taxotears members are complete does not satisfy their obligations under the May 9, 2018 Discovery Order. First, 24 of the 37 Plaintiffs the PSC identified still have not produced ***any*** ESI from the Taxotears Google Group or a statement that they have lost or destroyed such ESI. Second, 30 of the 37 Plaintiffs still have not clearly identified in their PFSs with which Taxotears group(s) they were involved.

      A.   THE MAJORITY OF THE 37 PLAINTIFFS HAVE NOT PRODUCED ANY ESI FROM THE TAXOTEARS GOOGLE GROUP

The primary purpose of the Court's May 9, 2018 Discovery Order was to achieve a complete production of ESI from the Taxotears Google Group:

> THE COURT: Sanofi states in its brief that the Taxotears ESI is responsive and discoverable and that the issue presently before the Court is simply how best to collect and produce this ESI to ensure a complete production. I agree completely on both points and I'm going to direct the parties to take the following steps to accomplish the objective of achieving a complete production of the ESI from the Taxotears group that is both relevant and proportional to the needs of the case.[1]

The PSC, however, makes no reference to ESI in their June 6, 2018 letter. Nevertheless, 24 of the 37 Plaintiffs identified have not produced ***any*** ESI from the Taxotears Google Group. And only two of those 24 Plaintiffs have produced a PTO 71A statement, stating that they

---

[1] Status Conf. Tr. at 2:20–3:2 (May 8, 2018).

CHICAGO | DENVER | HOUSTON | KANSAS CITY | LONDON | MIAMI | ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | TAMPA | WASHINGTON, D.C



have lost or destroyed their ESI from the Taxotears Google Group.[2] This is not the type of deficiency best left to the PFS review process. To the contrary, Defendants believe it is a failure of the PSC to meet the primary objective of the Court's May 9, 2018 Order.

June 8, 2018
Page 2

Our understanding was that the PSC would work with Plaintiffs' counsel across this MDL to ensure complete productions of ESI from the Taxotears Google Group. To date, they have not done so, as evidenced by the failure of 22 Plaintiffs to produce any ESI from the Taxotears Google Group. Given that 19 of those 22 Plaintiffs who have not produced the required ESI are represented by a PSC law firm makes this failure less excusable.[3] Further, it appears Plaintiffs apparently collected this responsive ESI many months ago, but did not produce it to Defendants. For example, Plaintiff Kimberly Caringer recently uploaded (a minimal amount of) ESI from the Taxotears Google Group on Tuesday, June 5, 2018. But based on her production, she had sent these responsive documents to her counsel on October 21, 2017.[4] This significant delay further calls into question what has not been produced to Defendants.

    B.   THE MAJORITY OF THE 37 PLAINTIFFS HAVE NOT IDENTIFIED IN THEIR PFSs WITH WHICH TAXOTEARS GROUP(S) THEY WERE INVOLVED

The majority of the PFSs for the 37 Plaintiffs on the PSC's June 6, 2018 list still do not readily identify the Taxotears group(s) with which they belong to or were involved. Indeed, 30 of the 37 Plaintiffs have not clearly identified that they are or were members of the Taxotears Google Group. Instead, their PFSs identify things like:

- "Ahead of Our Time";
- "Aheadofourtime";
- "http://aheadofourtime.org";
- "Taxotears: A Head of Our Time";
- "Taxotereas aka http://aheadofourtime.org"; and
- "Taxotere."[5]

These disclosures do not identify the Taxotears Google Group. It is important to understand that the term "Taxotears" may refer to several different things, including any of the following: a support and advocacy group that calls itself Taxotears; a blog called A Head of Our Time, which is sometimes informally referred to as Taxotears; a Twitter account called A Head of Our Time with the handle @Taxotears; a Twitter account called A Head of our Time with the handle @Taxotearsadmin; other blog websites that use the tag Taxotears; a closed- and invisible-to-the-public Facebook Group called Taxotears; and a closed-to-the-public Google Group called Taxotears.

---

[2] *See* Chart of 37 Plaintiffs, attached as **Exhibit A**.
[3] *See id.*
[4] *See* Excerpts of Pl. Kimberly Caringer's ESI (including October 21, 2017 e-mail communications from Pl. Kimberly Caringer to her legal counsel, forwarding ESI from the Taxotears Google Group), attached as **Exhibit B**.
[5] *See* Chart of 37 Plaintiffs (**Ex. A**).



Thus, when a Plaintiff identifies only "Taxotears" in her PFS, Defendants are unable to discern to what Plaintiff is referring. Is she a member of the Taxotears advocacy group? Is she a member of the recently discovered private Taxotears Facebook Group? Did she post or view a post on the A Head of Our Time blog or a different blog or website? The descriptions that 30 of these Plaintiffs have provided in their PFSs do not answer these questions, leaving Defendants unable to determine the sufficiency of their productions.

In their letter, the PSC state that some of the 37 Plaintiffs identified "Aheadofourtime.org."[6] According to the PSC, Defendants are apparently supposed to read that designation to mean "Taxotears Google Group." But without clarification, it is impossible for Sanofi to know what it means.[7]

    C.   I<small>DENTIFICATION OF</small> E<small>VERY</small> MDL P<small>LAINTIFF</small> W<small>HO</small> *W<small>AS</small>* <small>OR</small> I<small>S A</small> M<small>EMBER OF THE</small> T<small>AXOTEARS</small> G<small>OOGLE</small> G<small>ROUP</small>

Despite their stated efforts, the PSC does not appear to have identified "every Plaintiff in this Multidistrict Litigation who was or is a member of the Taxotears group."[8] Following the PSC's May 23, 2018 disclosure, we responded with concerns regarding their search process as they had described it.[9] We also let them know that they had failed to include several Plaintiffs whom Defendants had identified through a review of the limited ESI production.[10]

In follow-up communications, Defendants asked the PSC the following questions:

- "Could you please tell us everything else you did to identify these plaintiffs?"
- "And could you please expand on your request to all MDL Plaintiffs' counsel?"
- "Did all of the MDL Plaintiffs' counsel respond to that request?"
- "If not, what are you doing to follow up with those Plaintiffs' counsel who didn't respond?"[11]

---

[6] *See* Letter from Karen B. Menzies, Counsel for Plaintiffs, to Judge North at 2 (June 6, 2018).
[7] For instance, there are Plaintiffs who disclosed Aheadofourtimes.org who are not and were not members of the Taxotears Google Group. *See, e.g.*, Pl. Cherly Feldt's PFS at § 19 ("Ahead of our time"); Pl. Elizabeth Nicklus's PFS at §§ 19, 20.a ("A Head of Our Time" and "A Head of Our Time Webpage"); Pl. Tami Parker's PFS at § 19 ("A Head of Our Time"); Pl. Cynthia Smith's PFS at § 19 ("A Head of Our Time"). Similarly, there are Plaintiffs who are members of the private Facebook Taxotears Group who are not and were not members of the Taxotears Google Group. *See, e.g.*, Pl. Natalie Grumet's private Taxotears Facebook Group ESI at 4, 8, 11, 14 (revealing that Plaintiff Lorri Hunt, who is not on the PSC's list of 37 Plaintiffs, is or was a member of the private Taxotears Facebook Group), attached as **Exhibit C**.
[8] Discovery Order at 1 (May 9, 2018).
[9] Letter from Harley V. Ratliff, Counsel for Sanofi, to Dawn M. Barrios and M. Palmer Lambert, Counsel for Plaintiffs at 2–3 (May 24, 2018), attached as **Exhibit D**.
[10] *Id.* at 3–4.
[11] *See* E-mail from Harley V. Ratliff, Counsel for Sanofi, to Dawn M. Barrios, Counsel for Plaintiffs (May 25, 2018 19:08 CDT), attached as **Exhibit E**.



The PSC refused to respond to any of the questions above.[12] Answers to these questions, however, are important to help the parties understand how best to work together to get a complete list of Taxotears Plaintiffs. Based on their recent letter, it is clear these questions must be answered.

For example, in their June 6, 2018 letter, the PSC represented that it focused on identifying only the *current* 84 members of the Taxotears Google Group and that all 37 Plaintiffs they identified are *current* members of the group.[13] The PSC, however, knows that there are women who *were* members of the Taxotears Google Group, but who have since left the group.[14] And the Court ordered Plaintiffs to identify every MDL Plaintiff who *was* or is a member that group.[15] That has not occurred.

As of this letter, Defendants believe that the PSC still have not identified every MDL Plaintiff who was or is a member of the Taxotears Google Group. For example, our review of the limited ESI productions has identified at least one more individual who appears to be an MDL Plaintiff, but whom the PSC has not identified. This further calls into question the process by which the PSC identified former and current members who are also Plaintiffs.

Based on the foregoing, we request that the Court order the PSC to provide answers to each of the questions in the bullet-point list above by no later than June 20, 2018. From there, we can work with the PSC to come up with solutions to help them fulfil their obligation under the May 9, 2018 Discovery Order to provide a complete list of every Plaintiffs who was or is a member of the Taxotears Google Group.

We further request that the PSC provide any updates, if necessary, to the "About Group" page, which the PSC produced on May 23 based on the 31 Plaintiffs they had disclosed at that time. Finally, the PSC has not answered the Court's question of whether any MDL Plaintiffs' counsel are or were members of the Taxotears Google Group.

    D.   PRIVATE TAXOTEARS FACEBOOK GROUP

In addition to the above, Defendants recently discovered that there is also a private Taxotears Facebook Group. The existence of this group became known only through the ESI that Plaintiffs produced this week. Up until this week, the PSC had never disclosed this private data source during any of the issues related to the private Taxotears Google Group. This is made more concerning because, based on recent limited productions, Plaintiffs who are members of this private Taxotears Facebook Group are represented by a PSC law firm.

---

[12] *See* E-mail from Dawn M. Barrios, Counsel for Plaintiffs, to Harley V. Ratliff, Counsel for Sanofi (May 25, 2018 19:12 CDT) (**Ex. E**); E-mail from Harley V. Ratliff, Counsel for Sanofi, to Dawn M. Barrios, Counsel for Plaintiffs (May 25, 2018 20:00 CDT) (**Ex. E**).
[13] Letter from Karen B. Menzies, Counsel for Plaintiffs, to Judge North at 1–3 (June 6, 2018). While they also mentioned communicating with Plaintiffs' counsel and searching e-mail productions, they said that their list of 37 Plaintiffs was limited to current members. *Id*. at 1–2.
[14] *See* Status Conf. Hr'g Tr. at 24:22–24 (Apr. 24, 2018) ("MS. MENZIES: . . . I can tell you my understanding from Ms. Ledlie is that she is off of the Taxotears [Google Group] and, in fact, the other woman is as well.").
[15] Discovery Order at 1 (May 9, 2018).



June 8, 2018
Page 5

Specifically, on Monday, June 4, Plaintiff Natalie Grumet uploaded her small ESI production to MDL Centrality that includes screenshots of communications on a private Taxotears Facebook Group.[16] The private designation (which Facebook designates with the term "Secret") means that only members can search and find the group and see the posts.[17] As of the time of Plaintiff Natalie Grumet's screenshot, there were 49 group members—including Plaintiffs who have not disclosed their membership or provided ESI from this group.[18]

Even within this small 16-page ESI production, it is clear that multiple other Plaintiffs are or were part of this private Taxotears Facebook Group, which Defendants cannot locate through Facebook's search function (much less, access).[19] And on Tuesday, June 5, Plaintiff Wendy Crone uploaded ESI that appears to be from this private Taxotears Facebook Group, as well.[20] And that ESI production identifies additional Plaintiffs who are or were members of this group.[21] Also on Tuesday, June 5, Plaintiff Jennifer Weigand uploaded an amended PFS that identifies "Taxotears (Facebook Group),"[22] but she has not produced any ESI. On Wednesday, June 6, Plaintiff Kimberly Free uploaded ESI, which included an e-mail from Plaintiff Erica Lieberman stating, "We also have a strictly private Facebook page for those who want to participate."[23] Plaintiff Erica Lieberman makes no mention of Facebook within her PFS[24] and has not produced any ESI. Yesterday, Plaintiff Yolanda Herron—uploaded her Second Amended PFS in which she identifies the "Taxotears (Facebook Group)."[25] She too has not produced any ESI from the private Taxotears Facebook Group.

Notably, none of the other Plaintiff members identified via these ESI productions has disclosed membership in a Facebook Group of any kind, let alone this private Taxotears Facebook Group. For example:

- Plaintiff Roseann Bode did not identify anything Facebook-related in her PFS.[26] With her PTO 71A statement, she stated that she has an "online presence" on "Facebook – Rosann Bode." She did not produce any ESI from the private Taxotears Facebook Group.

---

[16] *See* Pl. Natalie Grumet's Secret Taxotears Facebook ESI at 9 ("Taxotears"; "Secret Group") (**Ex. C**).

[17] *What are the privacy settings for groups?*, Facebook Help Center (2018), *available at* https://www.facebook.com/help/220336891328465?helpref=about_content (last visited June 8, 2018).

[18] *See* Pl. Natalie Grumet's private Taxotears Facebook ESI at 9 (**Ex. C**).

[19] *See id.* at 4, 8, 11, 14, 16 (identifying Plaintiffs Lorri Hunt and Suzanne Mink).

[20] *See* Pl. Wendy Crone's private Taxotears Facebook ESI, attached as **Exhibit F**.

[21] *See id.* at 2–4, 6–7, 9–11 (identifying Plaintiffs Roseann Bode, Jennifer Daley, Yolanda Herron, Jennifer Weigand).

[22] *See* Pl. Jennifer Weigand's First Amended PFS at § II.19 (June 5, 2018).

[23] *See* Pl. Kimberly Free's ESI at 3–5, attached as **Exhibit G**.

[24] *See* Pl. Erica Lieberman's First Amended PFS (June 5, 2018).

[25] *See* Chart of 37 Plaintiffs at 2 (**Ex. A**).

[26] *See* Pl. Roseann Bode's Second Amended PFS (May 25, 2018).



- Plaintiff Jennifer Daley identified in her PFS "Facebook."[27] She did not produce any ESI from the private Taxotears Facebook Group.
- Plaintiff Lorri Hunt identified in her PFS "PUBLIC FB PAGE" and later "TAXOTERE."[28] It is difficult to tell based on the produced format, but her ESI appears to have come from the private Taxotears Facebook Group.
- Plaintiff Suzanne Mink identified in her PFS "Facebook."[29] She did not produce any ESI from the private Taxotears Facebook Group.

The issue here is the same as the issue presented by the Taxotears Google Group—Plaintiffs need to preserve and produce all ESI from the private ("secret") Taxotears Facebook Group immediately. And based on recent productions, Defendants are concerned that Plaintiffs or other members of this private Taxotears Facebook Group have been or are deleting relevant ESI.  For example, on November 22, 2015, a group member posted: "Deleting my comments regarding the hair product I used as requested by someone we're not supposed to talk about."[30] As such, we request the Court issue an order much like the May 9, 2018 Discovery Order, but specifically for the private Taxotears Facebook Group.

E. THE PSC'S REFUSAL TO PRODUCE SHIRLEY LEDLIE AND HER DOCUMENTS

As the Court is aware, at the April 25 status conference, the PSC offered to make Shirley Ledlie available for deposition and produce all of her relevant documents, which the PSC said would include documents she has from a deceased member of the group—Pamela Kirby.[31]  Specifically, the PSC represented to the Court and Defendants:

> MS. MENZIES: . . . There is an avenue for counsel to obtain discovery from Ms. Ledlie. Even though she is a third party, we named her as a witness, as we told you in our paper. They can notice her deposition, and they can request everything she has. I have talked to her about that. We understand that.
> . . .
> MS. MENZIES: Your Honor, they have Shirley Ledlie.
> . . .
> MS. MENZIES: What I would suggest, Your Honor, is that they are trying to avoid discovery against the originator of the support group, Shirley Ledlie. We have her on our witness list. **We will produce her even though she is in France. We will produce the documents. They can request everything she has about the Taxotears group.** I can tell you if anybody has a large number of emails left over that started back in 2008, 2009, it's

---

[27] *See* Pl. Jennifer Daley's First Amended PFS at § II.19 (Feb. 26, 2018).
[28] Pl. Lorri Hunt's PFS at §§ II.19, II.20.a (Jan. 9, 2018).
[29] Pl. Suzanne Mink's Third Amended PFS at § II.19 (May 25, 2018).
[30] *See* Pl. Natalie Grumet's private Taxotears Facebook ESI at 5, 14 (**Ex. C**).
[31] *See* Status Conf. Tr. at 23:19–23, 34:15, 35:14–23 (Apr. 25, 2018); Letter from Karen B. Menzies, Counsel for Plaintiffs, to Judge North at 5 (May 4, 2018) ("The PSC told the Court that it does not object to Sanofi's deposition of Ms. Shirley Ledlie, a non-party who provided the PSC with e-mails from Pamela Kirby (now deceased)).



going to be her. They have a right to do discovery against her because we have disclosed her as a witness.[32]

Based on the PSC's assurances, the Court ordered that "Sanofi may depose Ms. Ledlie, Ms. Gahan and/or the administrator of the Taxotears group specifically about that group and those depositions will <u>not</u> count against any limits previously imposed by the Court."[33]

On June 4, 2018, Defendants sent the PSC a letter enclosing a proposed *subpoena duces tecum* for Ms. Ledlie's deposition so that responsive documents could be produced in advance of the deposition.[34]  Defendants' goal was to avoid or resolve any discovery disputes before the parties incurred the cost of an overseas deposition.   Yesterday, however, we received notice that the PSC would not comply their previous agreements. [35] In their letter, the PSC stated, "First and foremost, we do not represent Ms. Ledlie and certainly cannot accept a subpoena or document request on her behalf. We do not agree to do so, nor can we take on the responsibility for responding to a document request directed to Ms. Ledlie, or any non-party to this litigation."[36] This position is directly contrary to the PSC's representations to the Court and Defendants, and, given that Ms. Ledlie lives in France, it hinders Defendants' ability to conduct a meaningful deposition.  In short, the PSC's position seems to be that they can obtain documents from Ms. Ledlie, but Defendants cannot.

The PSC cannot renege on their agreement at this point. The parties and the Court have relied on the PSC's representations. We therefore request that the Court order the PSC to work with Ms. Ledlie to make her available for deposition and to produce the documents requested by Sanofi.

## II.     Plaintiffs' Medical Care is Discoverable

Sanofi recently discovered that two bellwether Plaintiffs had scalp biopsies—a key medical procedure to diagnose the cause of hair loss—performed by dermatologist Dr. Martin Claiborne. And at least one bellwether Plaintiff was recently treated by psychiatrist, Dr. John Thompson. In both instances, Plaintiffs failed to independently disclose the identity of these doctors or their treatment. Instead, Defendants uncovered the treatment as part of their due diligence in discovery.

Recently, the PSC revealed that all four trial Plaintiffs have had scalp biopsies.[37] But in an attempt to prevent discovery of Plaintiffs' medical and psychological records and treatment, the PSC has declared Dr. Claiborne and Dr. Thompson to be "consulting experts."[38] In doing

---

[32] Status Conf. Tr. at 23:19–23, 34:15, 35:14–23 (Apr. 25, 2018).
[33] Discovery Order at 3 (May 9, 2018).
[34] Letter from Harley V. Ratliff, Counsel for Sanofi, to Karen B. Menzies, Counsel for Plaintiffs (June 4, 2018), attached as **Exhibit H**.
[35] *See* Letter from Karen B. Menzies, Counsel for Plaintiffs, to Harley V. Ratliff, Counsel for Sanofi at 1 (June 7, 2018), attached as **Exhibit I**.
[36] *Id.*
[37] The PSC has not disclosed whether other Plaintiffs were also treated Dr. J. Thompson.
[38] Plaintiffs have simply declared that all information related to these physicians is privileged. Plaintiffs have made no showing that Dr. Claiborne and Dr. Thompson are consulting experts.



so, the PSC attempts to expand the protections for consulting experts far beyond anything contemplated by Rule 26(b)(4)(D). The Court should order Plaintiffs to disclose all doctors who have evaluated and/or treated Plaintiffs and allow discovery of the medical records and facts related to Plaintiffs' medical treatment.

Physicians who have examined a plaintiff are fact witnesses with respect to their observations.[39] *See* FED. R. CIV. P. 26(b)(4), Notes to 1970 Amendments; *see also Gonzalez v. Exec. Airlines, Inc.*, 236 F.R.D. 73, 77 (D. P.R. 2006) ("a treating physician is an actor in the factual narrative of the case."); *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996) ("[t]reating physicians…testify[] to their personal consultation with a patient and are not considered expert witnesses…"). The records of Dr. Claiborne's treatment of Ms. Tuyes make clear that he is, indeed, a treating physician who personally observed, treated, and made recommendations to each of the four trial Plaintiffs.[40] For example:

- Ms. Tuyes filled out a patient intake form and acknowledged Dr. Claiborne's appointment-cancellation policy;
- Ms. Tuyes completed a "medical/social/family history form;
- Dr. Claiborne examined Ms. Tuyes's scalp and body, reviewed her medical history and medications, and conducted a review of systems;
- Dr. Claiborne drew a diagram of her scalp noting "alopecia";
- Dr. Claiborne determined a treatment plan (punch biopsy) and reviewed the risks of the procedure with Ms. Tuyes;
- Dr. Claiborne noted the biopsy location on the scalp; and
- Ms. Tuyes consented to Dr. Claiborne's treatment plan ("I understand that it is at the ***recommendation of my physician*** that I have the above stated lesions removed and sent to an outside lab for pathology testing").[41]

Nonetheless, the PSC claims Defendants are not entitled to discover facts of Plaintiffs' medical care because the **PSC** has a relationship with Dr. Claiborne and Dr. Thompson. However, even if Plaintiffs visited these doctors at the referral of their attorneys—and in anticipation of litigation—the *facts* of that doctor's medical care does not become exempt from discovery.[42] This is because a doctor's personal observations, treatment, and recommendations to a patient are discoverable *facts*—regardless of whether the doctor has been hired by an attorney in anticipation of litigation. *In re Will of DeFilippo*, 564 N.Y.S.2d 667 (Surr. Ct. N.Y. 1990) (allowing discovery of a doctor hired by attorneys because "it is undisputed that this doctor has information concerning the decedent's mental condition

---

[39] In contrast, a consulting expert "comes to the case as a stranger and draws the opinion from *facts supplied by others.*" *LaShip, LLC v. Hayward Baker, Inc.*, 2013 WL 12202649, at *7 (E.D. La. Aug. 13, 2013).

[40] Sanofi only discovered that Ms. Tuyes had a scalp biopsy and obtained limited records related to the same in connection with collection of medical records from another provider. *See* E-mail from Harley V. Ratliff, Counsel for Sanofi, to M. Palmer Lambert, Counsel for Plaintiffs (May 18, 2018) (regarding discovery of *Tuyes* records), attached as **Exhibit J**.

[41] *See* Dr. Claiborne records related to his treatment of Ms. Tuyes, attached as **Exhibit K**.

[42] *See, e.g., Jones v. Celebration Cruise Operator, Inc.*, No. 11-61308-civ, 2012 WL 1029469, at *3 (S.D. Fla. Mar. 26, 2012).



which is based upon his personal observations of her…").

No rule or privilege shields a treating physician's medical records from discovery. And courts squarely reject attempts to thwart discovery of facts by designating doctors as consulting experts. *See, e.g.*, *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D. Cal. 1986) ("It is improper to name treating physicians as expert witnesses where the information or opinions possessed by said physicians *was obtained by virtue of their roles as actors or viewers*…the information and opinions they possess should be freely accessible to both parties."). Sanofi is entitled to the records related to the punch biopsies and other medical care of Plaintiffs because they contain discoverable facts that the PSC cannot conceal. [43]

June 8, 2018
Page 9

The Court should require Plaintiffs to disclose any medical provider who has personally observed or treated trial Plaintiffs and allow discovery and collection of the relevant medical records.

### III. Sanofi Continues to be Prejudiced by Plaintiffs' Disregard for the Court's Discovery Orders

The Court should order the PSC to pay reasonable costs for the cancelled depositions of June Phillips and Jean Sposaro, both of which were cancelled because of Plaintiffs' failure to comply with Court orders.

**June Phillips**. Per PTO 22, Ms. Phillips was obligated to produce responsive documents over a year ago with her PFS. PTO 71A reinforced this obligation by requiring her to search clearly identified sources for electronic information, including emails. She and her counsel expressly certified that they had completed the required search in January 2018.[44]

Nonetheless, minutes before Ms. Phillips' deposition was scheduled to start on May 16, 2018, her counsel informed Defendants that Ms. Phillips had failed to produce a binder of documents related to her cancer treatment as well as e-mail communications she had written family and friends updating them on her cancer and side effects (Ms. Phillips is the tenth bellwether plaintiff who produced relevant documents immediately before, during or after deposition). Her counsel also informed Defendants that, despite her obligations under the PFS and PTO 71A, they had yet to fully search Ms. Phillips's e-mail and that an additional production of e-mail communications was forthcoming.

---

[43] After Defendants independently discovered the punch biopsies of Ms. Tuyes and Ms. Earnest, the PSC agreed to share tissue samples from the biopsies but refuses to allow sanofi to discover the corresponding medical records related to Plaintiffs' treatment. *See* May 29, 2018 E-mail from David Miceli, to Harley V. Ratliff, attached as **Exhibit L**. However, the punch biopsy demonstrates why such records must be discoverable. The records of Dr. Claiborne note the location on the scalp that the biopsy was taken. The tissue is of little use if sanofi does not know where it came from. Sanofi is also entitled to know the results of the pathology testing, if there were multiple biopsy sites, and any other observations made by the physician before doing the biopsy. The PSC should not be allowed to conceal these central facts from discovery.
[44] *See* June Phillips PTO 71A Certification, attached as **Exhibit M**.



June 8, 2018
Page 10

The stack of documents Ms. Phillips provided minutes before her deposition detailed her cancer treatment, the chemotherapy medicines she took, the side effects she experienced—including hair loss and regrowth, conversations she had with her oncologist, the risks she was warned of, and various other topics. Given the volume and relevance of the documents provided minutes before the deposition, and the uncertainty of the content and volume of the not-yet-produced e-mail communications, the parties agreed to reschedule Ms. Phillips's deposition.[45]

**Jean Sposaro**. Case Management Order No. 9 (¶ F) requires 7 days' notice before a deposition can be cancelled or rescheduled. The PSC, however, cancelled the deposition of Jean Sposaro less than 36 hours before it was scheduled to start—after Defendants' attorneys had already prepared for and travelled to the deposition.

Plaintiffs' violation of the Court's discovery orders have resulted in unnecessary costs to Defendants. Yet Plaintiffs have refused to reimburse Defendants for these reasonable costs. As such, the Court should order the PSC to reimburse sanofi for the reasonable costs of depositions cancelled as a result of Plaintiffs' disregard for Court orders.

***

We look forward to discussing these topics with you on Wednesday.

Sincerely,

*Patrick Oot*

Patrick L. Oot
Partner

---

[45] *See* May 17, 2018 E-mail from Kelly Bieri, counsel for Sanofi, to Rick Root, counsel for PSC, attached as **Exhibit N**.



June 12, 2018

**VIA EMAIL SUBMISSION**
The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street, Room B419
New Orleans, LA 70130

Re: *In re: Taxotere (Docetaxel) Products Liability Litigation,* MDL No. 2740

Dear Judge North:

Plaintiffs' Steering Committee writes in response to the Sanofi Defendants' June 8 submission. We look forward to discussing these matters further at the upcoming Status Conference on June 13.

**1) Contrary to Sanofi's letter, the PSC has complied with this Court's May 9th Order on Taxotears.**

Sanofi faults the PSC for not doing more regarding the Taxotears Google Group listserve. But Plaintiffs did all that was required of them in this Court's Order of May 9. This was a significant amount of work in a short time, and Plaintiffs succeeded in meeting the Court's Order.

What Sanofi is really asking for are additional requirements—while incorrectly suggesting the Court has already ordered them. In fact, Sanofi's letter opens with a citation to a hearing transcript—not this Court's May 9 Order—because the Order does not help Sanofi.[1] Anyway, Plaintiffs do not understand what these additional requirements would have accomplished. Plaintiffs have identified 82 out of 84 persons on the listserve. Only 37 were determined to be plaintiffs in this MDL. This comprises less than 1% of the more than 8500 plaintiffs in this MDL.

Despite this, Sanofi contends that Plaintiffs were required to communicate with 100+ law firms representing the more than 8500 plaintiffs in this MDL. We see nothing in the Court's Order that requires this. And again, we fail to see how this matters, given that Plaintiffs successfully identified which Plaintiffs in this MDL are or were on this listserve.

Sanofi also contends that the PSC has never identified a Facebook Taxotears Group. Unfortunately, Sanofi's letter to the Court on Friday was the first time that Sanofi has ever brought this to the PSC's attention. This left the PSC with only the weekend to investigate. Regardless, we can report that there are no new Plaintiffs to identify. A few of the same plaintiffs in this MDL who are on the Google listserve are also on Facebook. If a communication has not been produced, then Sanofi should avail itself of this Court's procedures for PFS deficiencies.

---

[1] Neither does the transcript. The Court set a process in order to determine if Plaintiffs had not been identified, that process has taken place, and it appears that arguably only one was not identified.

Date:   June 12, 2018
Page:   2 of 7

Sanofi additionally claims that there are numerous deficiencies with respect to Plaintiff Fact Sheets and ESI obligations under PTO 71A. But there is a functioning process to address these deficiencies under Pretrial Order No. 22 (Rec. Doc. 270). Sanofi provides no basis to modify this process nor does one exist. In fact, numerous plaintiffs have provided their PFS and PTO 71A submissions before they were due—contrary to Sanofi's representations to the Court.

For instance, Sanofi incorrectly states that Plaintiff Zina Simms did not submit her PTO 71A statement – she submitted this on June 1, 2018. Plaintiff Cynthia Vernarecci submitted her PFS on March 16, 2018; Sanofi submitted a deficiency notice on May 11, 2018, as is proper under Pretrial Order No. 22 (Rec. Doc. 270). In addition, the majority of plaintiffs identified as part of the Taxotears group are represented by Bachus & Schanker, which has assured the PSC that it has amended its plaintiffs' PFS to ensure that Taxotears is documented as appropriate. Bachus & Schanker confirmed to the PSC that plaintiffs identified in the Taxotears group were sent a copy of the Order, and that Bachus & Schanker have taken steps to preserve Taxotears related ESI. Additionally, Bachus & Schanker has confirmed to the PSC that it has uploaded ESI Statements and produced some ESI in advance of the deadline, as none of the ESI Statements or responsive documents for any of the Taxotears Plaintiffs are due until June 28, 2018, and that once it is aware of an additional ESI source, Bachus & Schanker works to amend the applicable PFS.

Ultimately, of the 37 plaintiffs identified in the Taxotears group, only three (3) have not submitted a PFS and are overdue (Charlotte Darby, Kendra Obannon, and Courtney Preusse). The PSC has contacted the law firms representing these plaintiffs, and the PSC has been assured that these firms are working diligently to submit a PFS as soon as possible. And perhaps more importantly, of the 37 plaintiffs identified as part of Taxotears group—only 1 is part of a trial pool. From a proportionality perspective, Sanofi is overreaching. Despite the fact that the PSC was able to identify 82 of the 84 women in the Taxotears About Group, including 37 plaintiffs in this MDL; and despite the fact that the Court declined Sanofi's request to compel a production from Google, Sanofi has served a subpoena on Google, without proposing any accommodation for the privacy of non-parties.

Finally, Sanofi attempts to broaden the Court's Order, which relates to the Taxotears group, to other public forms of social media, such as a public Facebook group, the Aheadofourtime.org website, blog and twitter account. Just as with the emails from the Taxotears Google group, Sanofi's avenue to obtain posts or communications on these forums remains with the individual plaintiffs and is not an obligation that was or can be placed on the PSC. There are plaintiffs who referenced Aheadofourtime.org in their PFS (see Sanofi footnote 7), and the PSC confirmed with each plaintiff's counsel that these plaintiffs did not join the Taxotears group (Cheryl Feldts, Elizabeth Nicklus, Tami Parker, Cynthia Smith). However, the PSC cannot be responsible for verifying that every plaintiff of the over 8500 plaintiffs in this MDL is or is not a member of the various social media platforms identified.

Date:   June 12, 2018
Page:   3 of 7

### 2) The PSC Cannot Force a Non-Party to Submit to Sanofi's Discovery Demands

Sanofi is asking the PSC produce discovery of third-party witnesses involved in the Taxotears group, such as Shirley Ledlie, Cynthia MacGregor and others, including producing them for deposition and producing documents. However, none of the PSC members or any plaintiff counsel in this litigation represent these third-party witnesses. Sanofi attempts to treat statements made by counsel during a hearing as an offer by the PSC to do what it cannot.[2] While the PSC stated that it "does not object to the deposition of Shirley Ledlie, a non-party who provided the PSC with e-mails from Pamela Kirby," that is not same as saying the PSC will or even can respond to a document subpoena and produce her for deposition.

Sanofi further expects the Court to go beyond its authority and jurisdiction to enforce this so-called agreement. However, the PSC has consistently advised defendants and the Court that Ms. Ledlie and Ms. MacGregor are not only third-parties, but both are foreign citizens, which means such discovery comes with additional procedural requirements. The Court has acknowledged this fact in the hearings and the Court's Discovery Order:

> To be clear, this order does not more than allow Sanofi to depose the aforementioned witnesses [Ms. Ledlie and Ms. Gahan] – it does not order those depositions to go forward. **As to the two non-party proposed deponents [Ms. Ledlie and Ms. MacGregor], Sanofi shall comply with the Rules of Civil Procedure and any other provisions or laws applicable to discovery on non-parties and/or citizens of other countries.**"

(Discovery Order, Rec. Doc. 2522, at 3-4, emphasis added.)

This is not the first time Sanofi has asked of the PSC to produce discovery on behalf of third-parties, which the PSC cannot do. Sanofi previously asked the PSC to provide extensive discovery from non-parties, including document discovery and the depositions of all the "witnesses, users, owner(s), manager(s), and/or administrators" of the Taxotears group, not just the plaintiffs in this MDL. (*See* Sanofi's April 27, 2018 proposal to the PSC (copied to the Court) and its May 4, 2018

---

[2] The statements made by Ms. Menzies during the April 25, 2018, conference with Your Honor were an attempt to answer the Court's questions and suggest an alternative to all Plaintiffs signing consent forms for the disclosure of personal information of third parties. [*See* Status Conf. Tr. At 33:10-35:23.] To the extent these statements gave the impression that I or any member of the PSC represents Ms. Ledlie, or has the responsibility or control over Ms. Ledlie or Ms. MacGregor to provide discovery on her behalf, these statements were incorrect and I apologize to the Court. Additionally, as I advised the Court, I have discussed with Ms. Ledlie (from the beginning of our conversations) that we do not represent her, that by naming her as a "may-call" witness, she may have her deposition taken, and that her communications related to Taxotere, including her conversation with me, may be discoverable – because she is a third-party witness. I have attempted to explain this to Mr. Ratliff and clarified that, because we are in communication with Ms. Ledlie, we were willing to attempt to coordinate the timing and location of her deposition. We cannot do more than that. (*See* Sanofi June 8, 2018 submission, Exh. I.)

Date:   June 12, 2018
Page:   4 of 7

submission to the Court, p. 5.)  The PSC opposed Sanofi's position pointing out that it seeks discovery from "all members of Taxotears, whether they are parties or non-parties… Sanofi's position is also flawed because it supposes that Plaintiffs could authorize Google to turn over all content and non-content of *other* parties, which is contrary to Google Group's terms of service and its data retention policies, and would violate federal law." (*See* The PSC's May 4, 2018 submission to the Court, p. 5.)

As noted in previous submissions, the PSC has been diligence in identifying plaintiffs who joined the Taxotears group and forthcoming in its disclosures regarding its investigation that lead to communications with Ms. Ledlie. The PSC has done this even though Sanofi still has not produced the communications it has had with the Taxotears members, even though that question was raised at the April 25, 2018 hearing and in the PSC's May 4, 2018 submission. Regardless, if Sanofi wishes to obtain discovery from third-parties, Sanofi has standing orders that provide an avenue to address deficiencies in any plaintiffs' discovery and procedural avenues and requirements to obtain discovery from third parties.  Sanofi is required to comply with those orders and processes in obtaining discovery from third-parties.

### 3) The PSC Is Not Required to Produce Work Product of the PSC's Consulting Expert

Sanofi seeks to obtain impermissible discovery on Dr. Martin Claiborne, a consulting expert hired by the PSC, and by extension to circumvent the agreed upon schedule for expert discovery.  The PSC retained Dr. Claiborne to obtain biopsies on the initial trial plaintiffs.  In each case the consultation with Dr. Claiborne was at the request of PSC counsel for a very discreet and limited purpose.  The purpose was to obtain scalp tissue via punch biopsies.  At no time prior to retaining Dr. Claiborne as a consultant had Dr. Claiborne treated any of the initial trial plaintiffs.  Furthermore, Dr. Claiborne has not seen any of the plaintiffs in a traditional doctor-patient relationship since.  The plaintiffs' consultations were not at the direction and referral of a primary treating physician, or any other healthcare professional.  It was simply to obtain scalp biopsies for the further expert evaluation of the plaintiffs.  Dr. Claiborne did not diagnose any condition, he did not order further evaluation or treatment, did not refer any of the initial trial plaintiffs for further evaluation, and in fact has not seen any of the plaintiffs except in consultation pursuant to his retention by the PSC.

Sanofi's request for discovery on Dr. Claiborne is the fortuitous result of Dr. Claiborne joining a practice where a different dermatologist (now retired) treated Plaintiff Lisa Tuyes.  Specifically, this retired dermatologist, Dr. Koretsky, appeared in a medical record received by Sanofi in the course of Sanofi's collection of medical records for Ms. Tuyes. Because Dr. Koretsky's name did not appear in Ms. Tuyes' PFS, Sanofi requested records from Dr. Koretsky at his last known New Orleans address. As luck would have it, the PSC's consulting expert, Dr. Claiborne, practices in the same group where Dr. Koretsky used to practice.  In response to an initial request for records, Dr. Claiborne's staff forwarded records from all physicians that have seen Ms. Tuyes, regardless of reason for the visit and including records related

Date:  June 12, 2018
Page:  5 of 7

to Dr. Claiborne's punch biopsy of Ms. Tuyes. Sanofi now seeks additional discovery from Dr. Claiborne regarding his analysis and conclusions related to the punch biopsy. Sanofi is not entitled to discovery in connection with his work for the PSC.

The cases cited by Sanofi in support of this issue are not controlling, nor are they on point with the issue currently before Your Honor. The overwhelming majority of the cases cited by Sanofi stand for one of two propositions: 1) that it is permissible to obtain discovery from plaintiff's treating physicians, generally, or 2) it is impermissible to "block" discovery from a party's physicians involved in the care and treatment of a plaintiff in the normal course of seeking treatment or surgery. The lone case that appears to have passing relevance to our current issue is *Jones v. Celebration Cruise Operators, Inc.* 2012WL1029469(SDFL Mar. 26, 2012). In *Jones*, the plaintiff received an injury aboard a cruise ship when an air-conditioning vent fell on his head, knocking him to the ground. He received treatment from various physicians, but then his counsel sent him to a new physician that performed an MRI and suggested that Mr. Jones was a candidate for surgery. No prior physician suggested Mr. Jones was a candidate for surgery. Jones' counsel provided a copy of the MRI report to the defendant, noting surgery was suggested by a Dr. Figuereo. When the defendant sought to obtain discovery from Dr. Figuereo, Jones' counsel objected claiming he was a consulting expert under rule 26(b)(4). In assessing the claim of protection under rule 26(b)(4), the court pointed to the following critical events: "Dr. Figuereo appears to have recommended a proposed treatment different from that of any of Plaintiff's prior health providers. In engaging in that particular activity, Dr. Figuereo ceased acting solely as a non-testifying, consulting expert and took on the role of a treating physician. As a result, any information on which Dr. Figuereo relied in proposing the possibility of surgery for Plaintiff became a subject of factual discovery, unprotected by Rule 26(b)(4)." This is clearly different from our current facts where Dr. Claiborne performed one discreet task, a biopsy. He offered no treatment or assessment that contradicts any prior treatment in the ordinary course. More importantly, however, is the fact that in *Jones* plaintiff's counsel voluntarily offered records to the defense from Dr. Figuereo to support a new type and severity of injury and damage.

The remaining cases Sanofi cites are simply not applicable because they deal with a totally different issue. For instance, in *Sipes v. United States*, 111 F.R.D. 59, 61(S.D. Cal. 1986), the court was faced with a party claiming true contemporaneous treating physicians were consulting experts. There the court pointed out that parties should have equal access to evidence. Sanofi, however simply assumes a treating physician role on the part of Dr. Claiborne, and entirely ignores the facts surrounding how precisely the initial trial plaintiffs came to see the doctor, or the nature of his retention. *Sipes* provides very specific language that can assist in more particularly defining what types of physicians should not be protected by rule 26(b)(4). That language reads:

> In Sipes, the court explained:'The Court further rules that it is improper to name treating physicians as expert witnesses where the information and opinions possessed by said physicians was obtained by virtue of their roles as actors or viewers of the transactions or occurrences giving rise to the litigation, to wit, the care and treatment provided to the plaintiff **during the pertinent time period**. Said

Date: June 12, 2018
Page: 6 of 7

> physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties to the litigation, ...'"

111 F.R.D. at 61., cited in *Jones v. Greyhound Lines, Inc.,* Case No. 08-1185-MLB-DWB; USDC - Kansas. (bolding added)

The court in *Jones* further notes however that "a witness may be both an expert witness under Rule 26(b)(4) as to some matters and an ordinary witness on other areas. *Id.,* citing *Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984, 992(D.C.Cir.1980). Noting that there is no bright line test for when a treating physician can also be a consultant under rule 26(b)(4), the court clearly and rightly focused on the nature and reason for seeing the physician. The question is whether the consultation and information were part of a party's preparation for trial, or did the physician see the plaintiff as part of the normal transactions or occurrences that gave rise to the lawsuit. Here it is clear that initial trial plaintiffs only saw Dr. Claiborne as part of the PSC/plaintiffs' counsel's trial preparation, and their work with consulting and/or testifying expert witnesses. The PSC is not saying that Sanofi will never have the opportunity for its expert discovery, but simply recharacterizing the nature of Dr. Claiborne's relationship to the PSC does not allow Sanofi to circumvent the expert discovery schedule.

Finally, because the inadvertent disclosure did happen, and because the biopsies are something Sanofi is now aware of, the PSC offered reasonable accommodation to avoid bothering the Court with this issue. In an ongoing spirit of cooperation, the PSC advised Sanofi's counsel that in having the biopsies done, we sought to gather sufficient tissue samples for both parties, and offered to coordinate the transfer of retained tissue to a qualified laboratory of Sanofi's choosing. This is not required by the rules of civil procedure, and in fact the PSC could have withheld such an accommodation until the time for expert disclosures. But the PSC offered to allow Sanofi the opportunity to obtain a portion of the remaining biopsied tissue for its own assessment, if it so desired. Instead of seeing this accommodating offer, we are instead accused of "failing to independently disclose" our consulting expert; "attempting to prevent discovery"; "expanding the protections …. [of] Rule 26(b)(4)(D)"; and "thwarting discovery." The PSC recognizes and well recalls the Court's admonition against personal attacks and "toning down" the rhetoric in our submissions and hearings. We are attempting to take this heart, and have not risen to the bait of the above attacks. We welcome the opportunity to discuss this issue further with the Court.

4) **Sanofi's Request For Costs Is Moot.**

Lastly, after Sanofi witness Jean Sposaro's deposition was cancelled, the PSC told Sanofi that it would cover travel expenses. Sanofi's request for costs is therefore moot. We do not understand Sanofi to be asking for attorneys' fees in its letter. Such fees would be inappropriate, not least because such a request must be supported by documentation. *See Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.,* No. CV 15-5265, 2017 WL 736044, at *2 (E.D. La. Feb. 24, 2017), *aff'd sub nom. Mr. Mudbug, Inc. v. Bloomin Brands, Inc.,* No. CV 15-05265, 2017 WL 2274954 (E.D. La. May 25, 2017) ("The party seeking attorney's fees bears the burden of establishing the reasonableness

Date:   June 12, 2018
Page:   7 of 7

of the fees by submitting 'adequate documentation of the hours reasonably expended,' and demonstrating the use of billing judgement.") (citation omitted)

    Sanofi's arguments with respect to Plaintiff June Phillips are separately addressed in a letter from her counsel, submitted contemporaneously with this letter.


Respectfully Submitted,

Karen Barth Menzies
On behalf of the Plaintiffs' Steering Committee