UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: TAXOTERE (DOCETAXEL)          MDL No. 16-2740
PRODUCTS LIABILITY LITIGATION

                                                                  SECTION: "H" (5)

THIS DOCUMENT RELATES TO:
*Gahan v. Sanofi, et al.*, No. 1:16-cv-15283

## ORDER AND REASONS

Before the Court is Defendants' Motion for Rule 37 Sanctions (Rec. Doc. 2831). For the following reasons, the Motion is **GRANTED**. As discussed herein, the Court declines to dismiss the case as requested by Defendants and instead orders that Plaintiff pay Defendants an award of expenses and attorney's fees to compensate Defendants for the costs incurred in obtaining the records of Dr. David Weinstein and in litigating this Motion. The Court further orders that Plaintiff produce to Defendants all of the photos that she provided to Dr. Weinstein; this includes all of the photos she sent to him before, during, and after his treatment of her. Lastly, the Court orders that Defendants are permitted to conduct a four-hour deposition of Plaintiff in order to further depose her on the evidence she withheld.

## BACKGROUND

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively, "Sanofi") allege that bellwether plaintiff Dr. Kelly Gahan ("Gahan"), the first plaintiff to file this Taxotere lawsuit against Sanofi in 2015, has disregarded her discovery obligations by willfully and repeatedly withholding relevant information from Sanofi. Dr. Gahan is a Phase II

1

bellwether plaintiff with her first potential trial date being in August of 2019. Sanofi asks the Court to enter an order dismissing Dr. Gahan's claims and imposing additional sanctions on her.

Sanofi alleges that in February 2017, Dr. David Weinstein began treating Gahan experimentally for hair regrowth.[1] Sanofi alleges that Dr. Weinstein continued to treat Dr. Gahan through April 2018 and that Dr. Gahan often emailed "progress" photos to Dr. Weinstein highlighting her hair regrowth.[2] Despite this, Dr. Gahan did not list Dr. Weinstein on her Plaintiff Fact Sheet (PFS), which required her to identify any physicians who had provided treatment to her over an eight-year period and to disclose whether she has "used any over-the-counter medications, supplements, or cosmetic aides" for her hair loss.[3]

When Dr. Gahan produced thousands of pages of emails during discovery, Defendants discovered her correspondence with Dr. Weinstein.[4] In an email dated July 28, 2017, Dr. Weinstein asked if he could use the "progress" photos to promote his treatment method.[5] Dr. Gahan responded as follows: "I think that should be okay. How widely will they be distributed? Would rather not have the lawyers for the other side put two and two together just yet."[6] Dr. Weinstein wrote that the distribution would be limited and that Dr. Gahan had taken the words right out of his mouth.[7]

Following a review of the documents that Dr. Gahan produced, Sanofi notified Plaintiff's counsel of its intent to seek Dr. Weinstein's treatment

---

[1] Rec. Doc. 2831-14 at 3.
[2] *Id.*
[3] Rec. Doc. 3611 at 5 (quoting Rec. Doc. 2831-7).
[4] Rec. Doc. 2831-14 at 5.
[5] *Id.* at 4.
[6] *Id.*
[7] *Id.*

records.[8] At her deposition, Dr. Gahan testified that she then told Dr. Weinstein to "just tell them that you weren't really my doctor . . . you don't have any records you never saw me."[9] When Dr. Weinstein failed to produce the records, Sanofi subpoenaed him.[10] Before doing so, however, Dr. Gahan had heard about the subpoena and warned Dr. Weinstein in a text message: "Hi, just a heads up the opposing side is going to subpoena you in the next day or two. The judge ordered all my emails released and they must have gleaned your name off them."[11]

At her deposition, when asked if there was any reason she would not have included Dr. Weinstein in her PFS, she stated, "I might have just forgotten. . . . I didn't think he was my doctor per se. He was just in my mind a researcher that I was talking to."[12] Later in her deposition, she further explained as follows: "I guess I never considered us to have a physician/patient relationship. I considered us to have more of a physician/physician relationship. And he was sending me this as a colleague, not as a treating patient."[13] Defendants note that, by this reasoning, Dr. Gahan would have no physician/patient relationships to disclose in her PFS.[14] In her opposition to Sanofi's Motion, Dr. Gahan states that she "did not and still does not believe Dr. Weinstein was her physician or medical provider – an opinion shared by Dr. Weinstein."[15]

---

[8] *Id.*
[9] *Id.* (citing Gahan Dep. at 329:5-7).
[10] *Id.*
[11] *Id.* at 6.
[12] *Id.* at 7; Gahan Dep. at 319:11-15.
[13] Gahan Dep. at 329:8-12.
[14] Rec. Doc. 2831-14 at 7.
[15] Rec. Doc. 3216 at 4.

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, a district court is authorized to impose "just" sanctions on a party who refuses to obey a valid discovery order.[16] Rule 37(b)(2)(A) provides:

> *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> (iii) striking pleadings in whole or in part;
>>
>> (iv) staying further proceedings until the order is obeyed;
>>
>> (v) dismissing the action or proceeding in whole or in part;
>>
>> (vi) rendering a default judgment against the disobedient party; or
>>
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.[17]

---

[16] F.D.I.C. v. Conner, 20 F.3d 1376, 1380 (5th Cir. 1994).
[17] Fed. R. Civ. P. 37(b)(2)(A).

"The primary purpose of sanctions is to deter frivolous litigation and abusive tactics."[18] Under Rule 37, a district court has "considerable, but not unlimited, discretion in fashioning appropriate penalties for those who disobey [a discovery order]."[19] As explained by the Fifth Circuit, under Rule 37(b), an award of expenses is warranted for the failure to obey a discovery order "unless the disobedient party establishes that the failure was substantially justified or that other circumstances make an award of expenses unjust."[20]

Assuming the underlying discovery order was proper, a sanction to pay expenses is appropriate if a party unjustifiably violated the order and its failure to comply caused the other party to incur expenses.[21] If such a sanction will not achieve the desired deterrent effect, a district court may order dismissal.[22] However, "[b]ecause the law favors the resolution of legal claims on the merits, and because dismissal is a severe sanction that implicates due process," courts deem dismissal with prejudice a "draconian remedy" and a "remedy of last resort."[23] Dismissal with prejudice typically is appropriate "'only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct.'"[24]

## LAW & ANALYSIS

Defendants ask the Court to dismiss Dr. Gahan's case with prejudice. Defendants allege that Dr. Gahan (1) intentionally verified four incomplete and inaccurate Plaintiff Fact Sheets (PFSs), (2) intentionally withheld

---

[18] Topalian v. Ehrman, 84 F.3d 433 (5th Cir. 1996).
[19] *F.D.I.C.*, 20 F.3d at 1380.
[20] *Id.* at 1382 (citing Advisory Committee Note to 1970 Amendments to Rule 37 (explaining that Rule 37(b)(2) places the burden on the disobedient party to avoid expenses)).
[21] *Id.*
[22] *Id.* at 1380.
[23] *See id.*
[24] *Id.* (quoting Coane v. Ferrara Pan Candy Co., 898 F.2d 1030, 1032 (5th Cir. 1990)).

information on a certain physician, Dr. David Weinstein, who treated her alleged hair loss injury, (3) instructed that same physician to withhold records from Sanofi, (4) encouraged the custodians of other third-party records to similarly evade Sanofi's requests for information, and (5) withheld hundreds of photographs of her hair regrowth. Defendants argue that Dr. Gahan's conduct and her sworn testimony establish a record of willful delay and bad faith failure to make required disclosures. Defendants allege that the fact that Dr. Gahan is a bellwether plaintiff underscores the need for appropriate sanctions. In addition to dismissal, Defendants seek the following:

- An in camera review by the Court of all correspondence between Dr. Gahan and any attorney at her counsel's firm so that the Court can evaluate if further discovery misconduct has occurred;
- A monetary sanction against Dr. Gahan commensurate with her actions;
- An adverse inference instruction against Dr. Gahan;
- An order requiring Dr. Gahan to produce of all relevant ESI in her possession, custody, or control;
- An order requiring Dr. Gahan to produce her computer to allow Sanofi to search for additional relevant ESI;
- An order permitting Defendants to conduct a seven-hour deposition of Dr. Gahan following the receipt of any outstanding ESI;
- An award of attorney's fees and expenses for the time spent seeking medical records; and
- An award of any additional sanctions that the Court deems just pursuant to Rule 37.

Lastly, during oral argument, Defendants seemed to request that the Court consider removing Dr. Gahan as a bellwether plaintiff.

Plaintiff argues that Defendants failed to request that Dr. Gahan supplement her PFS to identify Weinstein, even though, according to Plaintiff, Defendants became aware of Dr. Weinstein when Dr. Gahan produced 18,000 pages of ESI, containing research articles, text messages, and emails, some of which referenced Weinstein.[25] Plaintiff argues that she never considered Dr. Weinstein her physician or medical provider.[26] According to his affidavit, Dr. Weinstein is exclusively a researcher—he does not practice medicine and he does not see patients.[27] He never examined Dr. Gahan or formed any prognosis or diagnosis.[28] The two never met in person, and Dr. Gahan never paid him.[29]

In their reply, Defendants note that Section VIII of the PFS requires plaintiffs "to identify each physician, doctor, or other healthcare provider who has provided treatment to you for any reason in the past eight (8) years and the reason for consulting the healthcare provider or mental healthcare provider."[30] The PFS states that a plaintiff "MUST INCLUDE YOUR ONCOLOGIST, RADIOLOGIST, DERMATOLOGIST, DERMATOLOGIST-PATHOLOGIST, HAIR LOSS SPECIALIST, GYNECOLOGIST, AND PRIMARY CARE PHYSICIAN, ALONG WITH ANY OTHER HEALTHCARE PROVIDERS IDENTIFIED ABOVE."[31] The PFS further requires a plaintiff to disclose whether she has "used any over-the-counter medications, supplements, or cosmetic aides for your hair loss."[32]

In a supplement to their Motion for Rule 37 Sanctions, Defendants allege further misconduct by Dr. Gahan. Defendants note that, in her PFS, Dr. Gahan

---

[25] Rec. Doc. 3216 at 1-2, 5.
[26] *Id*. at 4.
[27] *Id*. at 9.
[28] *Id*.
[29] *Id*.
[30] Rec. Doc. 3611 (quoting Rec. Doc. 2831-7).
[31] *Id*. (emphasis in original).
[32] *Id*.

alleges a claim for lost wages and lists the Denver Veterans Affairs Medical Center (the "VA Center") as an affected employer.[33] When Sanofi requested employment records from the VA Center, Sanofi received a note in response that the VA Center "had no record of patient."[34] Knowing that Dr. Gahan had in fact worked for the VA Center, Sanofi made an additional request.[35] This time Sanofi received a letter indicating that the VA Center had contacted Dr. Gahan following the initial request and that Dr. Gahan had instructed the VA Center not to release her employment records or medical records because she would be doing so herself.[36] At the time Defendants filed the supplement to their motion, however, Dr. Gahan had not produced the records.[37]

The Court is troubled by Gahan's conduct. She is a sophisticated plaintiff, and she is a representative plaintiff in this litigation. The PFS required her to disclose both the physicians who provided treatment to her and whether she used any over-the-counter medications or supplements; Dr. Gahan knew or should have known that the PFS required her to disclose Dr. Weinstein and the treatment he provided to her. By repeatedly omitting this information from her PFS, Dr. Gahan has failed to comply with her discovery obligations. Even if the Court accepts Dr. Gahan's explanation that she merely forgot to disclose Dr. Weinstein, Dr. Gahan has provided no explanation for why she instructed the VA Center not to release her records. Further, her correspondence with Dr. Weinstein about Sanofi's request for his records demonstrates that she has encouraged at least one other potential witness to be less than forthcoming in this litigation.

---

[33] Rec. Doc. 3615 at 1-2 (citing Rec. Doc. 2831-7).
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*

8

Because dismissal with prejudice is a remedy of last resort, the Court refrains from ordering a dismissal at this time. Consistent with this, the Court finds it unnecessary at this time to conduct an in camera review of the correspondence between Dr. Gahan and her counsel or inspect Dr. Gahan's computer, as Defendants request. The law makes clear, however, that a sanction is appropriate if a party unjustifiably violates his or her discovery obligations. Thus, an award of expenses is warranted. Further, the Court will order that Plaintiff release any additional relevant information that she has in her custody and has failed to produce.

The Court will allow this sanction to serve as a warning to Dr. Gahan and to any other plaintiff who might be considering adopting evasive tactics like those discussed in this opinion. If the Court learns that any other plaintiff has intentionally withheld relevant information that should have been produced in a PFS or in response to a request by Defendants, the Court will impose severe sanctions, which may include dismissal with prejudice. The Court specifically cautions Dr. Gahan that any additional withholding of information will result in the dismissal of her case.

## CONCLUSION

For the foregoing reasons the Motion for Rule 37 Sanctions (Rec. Doc. 2831) is **GRANTED**. Accordingly, **IT IS ORDERED** that Plaintiff pay any attorney's fees and expenses that the Sanofi Defendants incurred as a result of Plaintiff's failure to comply with her discovery obligations, including any costs associated with the litigation of this Motion. **IT IS FURTHER ORDERED** that the calculation of these fees and costs is **REFERRED** to Magistrate Judge North and that Defendants shall file a motion before Judge North requesting a specific amount of fees and costs; Defendants shall submit an affidavit and

9

documentation supporting the amount requested. **IT IS FURTHER ORDERED** that Plaintiff produce any relevant information that she has failed to produce to Defendants as required either in her Plaintiff Fact Sheet or in response to a request by Defendants. **IT IS FURTHER ORDERED** that Plaintiff produce to Defendants all of the photos that she provided to Dr. Weinstein; this includes all of the photos she sent to him before, during, and after his treatment of her. **IT IS FURTHER ORDERED** that Defendants are permitted to conduct a four-hour deposition of Plaintiff in order to further depose her on the evidence she withheld.

New Orleans, Louisiana this 22nd day of August, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**