UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL No. 2740
PRODUCTS LIABILITY LITIGATION     SECTION: "N" (5)

THIS DOCUMENT RELATES TO:
ALL CASES

## PLAINTIFFS' MEMORANDUM RELATED TO DEFENDANT'S REQUEST FOR EXPERT MATERIALS FROM PLAINTIFFS' RETAINED EXPERTS THOMPSON AND CLAIBORNE

Plaintiff's Steering Committee submits this brief in response the Court's August 7, 2018 Order requesting briefing on whether the pathologist reports resulting from punch biopsies obtained by Dr. Claiborne should be produced as objective results of any testing. (Rec. doc. 3709, at 3).

### INTRODUCTION

On June 6, 2018, in a minute order, this Court held that "Sanofi is not yet entitled to information pertaining to *any opinions* that Dr. Claiborne"—a non-testifying expert—"may have concerning testing of any samples taken by him and must await the period for expert discovery to conduct such discovery." (Rec. doc. 3074, at 2) (emphasis added). The Court, however, reached a different conclusion as to certain *facts* that Dr. Claiborne had learned during his consultancy, holding: "Sanofi is entitled to documents related to the *facts* of Dr. Claiborne's examination of any Plaintiff, . . ." *Id.* (emphasis added).

The Court's attempt to separate "opinions" from "facts"—and its Order protecting opinions but not facts—misapprehends Fed. R. Civ. P. 26(b)(4)(D). "Because the rule protects '*facts* known or *opinions* held by an expert,' the rule shows that facts and opinions alike are protected and therefore not separable." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012) (emphases in original) (quoting Rule 26(b)(4)(D)). Furthermore, because the Court drew a distinction between opinions and facts that is contrary to Rule 26(b)(4)(D), it did not require Sanofi to demonstrate "exceptional

1

circumstances," Fed. R. Civ. P. 26(b)(4)(D)(ii)—the high threshold that a party must meet to bypass the Rule's protections. (*See* Rec. doc. 3047).

Sanofi now seeks *additional* "facts"—pathologist reports resulting from punch biopsies obtained by Dr. Claiborne, and psychological reports/opinions prepared by another non-testifying expert, Dr. Thompson. For this latest request, Sanofi relies only on the Court's prior ruling. Once more, however, Sanofi fails to demonstrate exceptional circumstances as required by Rule 26(b)(4)(D)(ii).

The Court should not only deny this latest request because exceptional circumstances do not exist for this additional discovery, it should also reconsider its ruling that facts and opinions are not equally protected by Rule 26(b)(4)(D). Upon reconsideration, the Court should protect from disclosure both *facts and opinions*, and it should demand—as the Rule itself demands—that Sanofi demonstrate exceptional circumstances before any further entitlement to discovery from Plaintiffs' non-testifying experts.

## FACTUAL SUMMARY

This dispute arises out of three categories of materials protected from discovery/disclosure at this time pursuant to Fed. R. Civ. P 26(b)(4)(D):

1. *Examination notes generated by Dr. Thompson related to his psychological assessment of a few Trial Plaintiffs.* Dr. Thompson provided his opinions directly to the PSC. He provided no treatment for Trial Plaintiffs. Dr. Thompson was paid directly by Plaintiffs' counsel for his opinions.

2. *Tissue samples (i.e. punch biopsies) obtained by Dr. Claiborne for Trial Plaintiffs.* Dr. Claiborne's office generated a pro forma medical record for each Plaintiff when they presented to obtain a tissue sample. These records have been produced. Dr. Claiborne did not assess or examine the Plaintiffs. His role was only to obtain tissue samples at the direction of the PSC. Dr. Claiborne did not analyze these tissue samples or form any opinions related to the tissue samples, nor did he decide where to send the tissues samples. Dr. Claiborne forwarded the tissue samples

to Plaintiff's retained pathologist to analyze. Dr. Claiborne was paid directly by Plaintiffs' counsel for his services.

3. *Dermatopathology reports from a third-party pathologist interpreting the tissue samples obtained by Dr. Claiborne.* The pathologist never observed, spoke to, or evaluated any Plaintiff. The pathologist utilized his skill, education, and experience in pathology in forming impressions of what the tissue samples demonstrated and communicated his opinions directly to Plaintiffs' counsel, the PSC. The pathologist expressed those opinions in a written report that was provided directly to Plaintiff's counsel. The pathologist was paid directly by Plaintiff's counsel for his services and opinions.

These individuals were specifically retained by Plaintiff's counsel as non-testifying experts after the initiation of litigation in order to prepare for trial. The PSC has not decided whether these individuals will testify as experts, and no such decision is due at this time.

## LEGAL AUTHORITY

A. The Federal Rules Require Exceptional Circumstances Before Facts and Opinions Of Non-Testifying Experts May Be Discovered.

Rule 26(b)(4)(D) protects from discovery "facts known or opinions held by an expert" retained by a "party . . . to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). "This rule is simply an application of the work product rule. The consultant's work will, by definition, be work product because the party uses the consultant," *Appleton Papers*, 702 F.3d at 1024, "to prepare for trial." Fed. R. Civ. P. 26(b)(4)(D).

The Rule demands that a party seeking discovery of "facts known or opinions held" by a non-testifying expert show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).

"The party seeking discovery of a non-testifying expert"—here, Sanofi—"carries the burden of

showing exceptional circumstances." *Bank of Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 44 (S.D.N.Y.1997) (citation omitted).

This Court's prior ruling correctly shielded the opinions of a non-testifying expert, Dr. Claiborne, but failed to protect the facts known by that expert. (Rec. doc. 3074, at 2.) The Court attempted to distinguish between opinions and facts, but "facts and opinions alike are protected [under the Rule] and therefore not separable." *Appleton Papers*, 702 F.3d at 1024.

This error was compounded by Sanofi's argument, which the Court may have accepted, that Dr. Claiborne is both a non-testifying expert and a treating physician. Based on this supposed dual status, Sanofi urged the Court to distinguish between certain facts gathered for treatment and opinions held by the expert based on treatment.

This argument is factually inaccurate and misconstrues the law. As for the facts, Dr. Claiborne was retained by counsel to help prepare for trial. Dr. Claiborne's biopsies and opinions are not medical treatment, but rather the gathering of facts and the formation of opinions in preparation for trial by a person not expected to be called as a witness. The same is true of Dr. Thompson: he was hired by counsel to prepare for trial; he does not treat Plaintiffs.

As for the law, Sanofi has no legal basis to question that these persons are non-testifying experts retained for consultation. "At this time, [the PSC] has no obligation to decide which experts it will call at trial or disclose information about any experts expected to be called at trial." *See In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D. La.), opinion clarified, 134 F.R.D. 148 (E.D. La. 1990); *id.* (citing *United States v. 215.7 Acres of Land*, 719 F. Supp. 273, 278 (D. Del. 1989) (tacit approval of the government's posture of indecision about what experts would be called at trial)).[1]

As the Advisory Committee Notes to Rule 26 explain:

---

[1] Although the PSC has not made such a decision, "[p]rior to the court imposed deadline for exchange of witness lists, a party is free to make strategic decisions changing an anticipated witness to a non-witness." *Shell Oil*, 132 F.R.D. at 441 (citations omitted).

4

> Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's experts.

Advisory Committee Note to Fed. R. Civ. P. 26, quoted in *Shell Oil*, 132 F.R.D. at 440 (emphasis removed). As such, "[Rule 26(b)(4)(D)] recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination"; and it is "designed to prevent a party from building his case on the diligent preparation of his adversary." *Shell Oil*, 132 F.R.D. at 440.[2]

Nor does Sanofi have any legal basis to question the applicability of Rule 26(b)(4)(D). For one, applying this Rule to shield facts known and opinions held by Dr. Claiborne and Dr. Thomson serves all four purposes underlying the Rule:

> (1) Counsel have an interest in obtaining advice to properly evaluate and present their clients positions without fear that every consultation might "yield grist for the adversary's mill;" (2) it is unfair to permit a party to benefit from the effort and expense incurred by the other in preparing its case; (3) it is possible that compelling the expert's testimony may result in a chilling effect on the willingness of experts to serve as consultants, and may, in fact, be unfair to the experts; and (4) allowing one party to call an expert previously retained or consulted by the other side creates a risk of substantial prejudice derived from the fact of the prior retention, apart from the substance of the testimony.

*Quest Diagnostics Inc. v. Factory Mut. Ins. Co.*, 2009 WL 10680098, at *4 (E.D. La., Mar. 17, 2009).

For another, the Rule applies here because the facts and opinions were gathered in preparation for trial by persons not expected to be called as a witness. Sanofi cannot show otherwise and thus is left to speculate that fact-gathering through a medical test such as a biopsy or psychological assessment could theoretically be relevant to treatment. But the Rule asks *only* if the facts and opinions were gathered by a non-testifying expert retained *in preparation for trial*; if the answer is yes, then those facts and opinions are protected from disclosure. The applicability of the Rule, however, does not turn on speculation about some other conceivable purpose a fact or opinion might serve. If the law were as

---

[2] In this quote, the court in *Shell Oil* references Rule 26(b)(4)(B), which was later renumbered (D) and (E). Fed. R. Civ. P. 26 (2010 Amendments).

Sanofi imagines—and it is not—then the Rule would seldom if ever protect from disclosure facts known or opinions held by a non-testifying expert who is helping a party to prepare for trial.

### B. Sanofi Has Not and Cannot Demonstrate Exceptional Circumstances Justifying Discovery from Plaintiffs' Non-testifying Experts

Because the facts known and opinions held by these non-testifying experts are in preparation for trial, Sanofi must show that exceptional circumstances exist to permit discovery. Under Rule 26(b)(4)(D)(ii), "exceptional circumstances" exist when it is "impractical for the party to obtain facts or opinions on the same subject by other means." This burden is a "heavy" one and "has been interpreted by courts to mean an inability to obtain equivalent information from other sources." *Shell Oil*, 132 F.R.D. at 442 (collecting cases).

Sanofi has made no such showing here. It simply assumes that it is entitled to facts held by Plaintiffs' non-testifying experts, which misstates the law. Accordingly, Sanofi has not met its heavy burden and no disclosure of facts or opinions of Plaintiffs' non-testifying experts should be permitted.[3]

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its ruling that opinions but not facts are protected by Fed. R. Civ. P. 26(b)(4)(D), and instead hold that opinions and facts are not separable and are equally protected under this Rule.

Upon reconsideration, the Court should deny Sanofi's request to obtain facts known by Plaintiffs' non-testifying experts who are assisting them to prepare for trial, because Sanofi has not met its burden to show exceptional circumstances warranting such discovery.

Date: August 17, 2018              Respectfully submitted:

---

[3] Even so, Plaintiffs are willing to provide Sanofi high-quality photographs of the tissue samples Dr. Claiborne obtained. Sanofi also has the opportunity to obtain its own slides and seek its own expert opinions.

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
**Gainsburgh Benjamin David Meunier & Warshauer, LLC**
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Telephone: 504-522-2304
Facsimile: 504-528-9973
E-Mail: plambert@gainsben.com

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone: 504-524-3300
Facsimile: 504-524-3313
E-Mail: barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*



August 17, 2018

VIA ELECTRONIC MAIL

The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street
Room B419
New Orleans, Louisiana 70130

Harley V. Ratliff

2555 Grand Blvd.
Kansas City, Missouri 64108
t 816.474.6550
f 816.421.5547
hratliff@shb.com

Re:  *In re: Taxotere (Docetaxel) Products Liability Litigation*,
     MDL No. 2740 – Sanofi's Brief Regarding Punch-Biopsy Pathology Reports

Dear Judge North:

Plaintiffs have failed to comply with Your Honor's order to produce records documenting the "objective results" of punch biopsy testing. Your Honor's order requires Plaintiffs to produce the pathology reports of Plaintiffs' tissue because they are "documents related to the facts of Dr. Claiborne's examination of any Plaintiff" and are medical records demonstrating "the objective results of" the testing of those samples.[1]

The PSC, however, refuses to confirm if written pathology reports even exist. Mr. Miceli represented at the hearing that he would "let you know by the end of the day whether we have written reports."[2] Over a week later, the PSC still will not tell sanofi if the reports exist, forcing sanofi to play a guessing game on the scope and necessity of this briefing. Yesterday, Plaintiffs' counsel stated that while he "offered to confirm for the court whether reports existed[,] [t]he court did not instruct us to provide that information, and our brief

---

[1] *See* Minute Entry at 2 (June 11, 2018) (Doc. 3074) ("Sanofi is entitled to documents related to the facts of Dr. Claiborne's examination of any Plaintiff, including when and where such examination occurred, Dr. Claiborne's observations of Plaintiffs, what samples or tissues were taken and from where, what was done with those samples and the objective results of any testing of those samples.")
[2] Status Conf. Tr. at 45:1–2 (Aug. 9, 2018).

CHICAGO | DENVER | HOUSTON | KANSAS CITY | LONDON | MIAMI | ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | TAMPA | WASHINGTON, D.C

| SHOOK |
| HARDY & BACON |

August 17, 2018

Page 2

will include what we deem appropriate for filing."[3] The history of this dispute demonstrates that frank disclosure is essential.[4] For example, the PSC first represented that Dr. Claiborne's medical records were non-discoverable "consulting expert opinions." But the medical records Your Honor ultimately ordered the PSC to produce contained no such opinions.[5]

Likewise, the pathology reports of Plaintiffs' tissue are medical records documenting objective information about their scalp tissue. Punch-biopsy reports regularly include information regarding the following:

- Hair follicle grouping
- Number of hair follicles
- Anagen and telogen follicle count
- Vellus and terminal follicle count
- Telogen germinal unit count
- Size of hair follicles
- Presence or absence of scarring
- Presence or absence of fibrous streamers or tracts
- Presence or absence of catagen hairs
- Presence or absence of perifollicular and perivascular lymphocytic infiltrate
- Presence or absence of perifollicular fibrosis
- Preservation of sebaceous glands
- Description of specimen
- Width, length, and depth of biopsy
- Where the biopsy was taken from
- How the biopsy was cut

Even Plaintiffs' counsel admitted that the punch-biopsy reports include "objective results":

> THE COURT: Are you telling me that your position is that punch biopsy reports are not objective results of tests?

---

[3] E-Mail from David F. Miceli, Counsel for Plaintiffs, to Adrienne L. Byard, Counsel for Sanofi (Aug. 16, 2018), attached as **Exhibit A**.
[4] Plaintiffs have, for months, refused to disclose what documents are in their possession regarding these doctors that treated Plaintiffs. *See* E-Mail Correspondence between Kelly Bieri, Counsel for Sanofi, and David F. Miceli, Counsel for Plaintiffs (June 20–Aug. 2, 2018), attached as **Exhibit B**.
[5] *See* Dr. Claiborne's Medical Records related to bellwether plaintiffs, attached as **Exhibit C**.

SHOOK
HARDY & BACON

August 17, 2018
Page 3

> MR. MICELI: Well, I am not saying that they don't include objective results, your Honor. . . .
>
> . . .
>
> THE COURT: Look, we've already been down this road. I ordered objective test results to be produced. In my view biopsy reports are objective test results. And I have yet to be – nobody has told me why I am wrong.
>
> MR. MICELI: Well, concerning a report, a report is important. I am not going to disagree with you on that, your Honor. . . .[6]

And, as listed above, there will indeed be objective findings within these punch-biopsy pathology reports. Plaintiffs must therefore produce these reports pursuant to the June 11, 2018 order.

Plaintiffs "cannot convert [their pathologist] into an expert by mere designation. Any other rule would 'cloak' discovery sources in the protective veil of Rule 26(b)(4)(A) and thereby significantly impede the rightful access of their opponents to these sources."[7] This is particularly true here where Plaintiffs do not have any other punch-biopsy pathology records. Instead, the records from Dr. Claiborne and the pathologist are the ***only*** records available related to these bellwether plaintiffs' alleged injury. Under these circumstances, "[i]t is improper to name treating physicians as expert witnesses where the information or opinions possessed by said physicians *was obtained by virtue of their roles as actors or viewers* . . . the information and opinions they possess should be freely accessible to both parties[.]"[8]

---

[6] Status Conf. Tr. at 37:21–24, 38:15–21 (Aug. 7, 2018).
[7] *Matias v. United States*, No. 97 CIV. 8957(NRB), 1999 WL 1022132, at *1 (S.D.N.Y. Nov. 5, 1999) (citation omitted).
[8] *See, e.g., Sipes v. United States*, 111 F.R.D. 59, 61 (S.D. Cal. 1986) (emphasis added); *see also, e.g., In re Will of DeFillippo*, 564 N.Y.S.2d 598, 600 (N.Y. Surr. Ct. 1990) (allowing discovery of doctor hired by attorneys because "it is undisputed that this doctor has information concerning the decedent's mental condition which is based upon his personal observations of her . . .").

SHOOK
HARDY & BACON

August 17, 2018

Page 4

The pathologist is a fact witness "concerning his or her own medical performance on a particular occasion," as opposed to when a physician is "opining about the medical performance of another."[9] Courts regularly consider pathologists who examine tissue only after it has been removed from a patient's body to be fact witnesses, as opposed to expert witnesses.[10] This outcome is all the more important here where the pathologist examined the bellwether plaintiffs' scalp tissue and prepared the ***only*** medical records that exists related to it. Far from being entitled to shield this information from fact discovery, Plaintiffs were ordered by Your Honor to produce information regarding "what samples or tissues were taken and from where, what was done with those samples and the objective results of any testing of those samples."[11]

Plaintiffs' resistance to producing their potentially diagnostic and other treatment records relating to biopsies is emblematic of a broader, systemic issue persisting throughout this litigation. Eighty percent (80%) of the MDL plaintiffs have no diagnosis or medical treatment for the injury alleged in their lawsuits.[12] Plaintiffs and their counsel are aware that successful medical treatment could diminish their potential recovery:

---

[9] *Gutierrez v. Vargas*, 239 So. 3d 615, 622 (Fla. 2018) (citation omitted); *see also See* FED. R. CIV. P. 26(b)(4), Notes to 1970 Amendments; *see also Gonzalez v. Exec. Airlines, Inc.*, 236 F.R.D. 73, 77 (D.P.R. 2006) ("a treating physician is an actor in the factual narrative of the case."); *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996) ("[t]reating physicians . . . testify[] to their personal consultation with a patient and are not considered expert witnesses . . ."). In contrast, a consulting expert "comes to the case as a stranger and draws the opinion from *facts supplied by others*." *LaShip, LLC v. Hayward Baker, Inc.*, No. 11-0546, 2013 WL 12202649, at *7 (E.D. La. Aug. 13, 2013) (emphasis added) (citation omitted).
[10] *See, e.g., Gutierrez*, 239 So. 3d at 624; *see also Bingham v. Adobe Equip. Holdings, Ltd.*, No. 08–CV–056–D, 2008 WL 11379933, at *2 (D. Wyo. Oct. 8, 2008) (citation omitted).
[11] Minute Entry at 2 (June 11, 2018) (Doc. 3074).
[12] Of the 7,868 MDL plaintiffs who have submitted Plaintiff Fact Sheets, 6,260 have indicated that they have never been treated or diagnosed by a healthcare provider for their alleged injury.

**SHOOK**
HARDY & BACON

August 17, 2018

Page 5

> **From:** taxotears@googlegroups.com <taxotears@googlegroups.com> on behalf of bluermedic@gmail.com <bluermedic@gmail.com>
> **Sent:** Monday, March 21, 2016 11:28 AM
> **To:** milicabookman@yahoo.com
> **Cc:** gcuene@yahoo.com; Taxotears@googlegroups.com
> **Subject:** Re: [Taxotears] News from our attorneys
>
> Hi All,
> I specifically asked Darin Shanker about hair regrowth (one can always hope) affecting our cases and he said that it might decrease the dollar amount but we would still have a case for all the pain and suffering we have been through.
> Kelly
>
> Sent from my iPad

Plaintiffs' position is that they can prosecute their cases by funneling all post-lawsuit medical care and treatment for the injury alleged in their lawsuits and shield such information from discovery by lawyers referring and hiring out all such care. Not only is Plaintiffs' position wrong on the discovery law, it has potentially far-reaching, negative implications on these women and the management of this litigation.

When women have experienced the injury alleged in this litigation, it is a good thing for them to seek medical care and treatment. But very few Plaintiffs in this litigation have. The result is that over 6,650 cases appear before this Court without any medical corroboration for the claim alleged in the lawsuit.[13] If the only development to come from this litigation is that it prompts the plaintiffs to find out what is really going on with their health—if anything—to the extent it affects their hair, that would be its benefit. Plaintiffs' lawyers should not interfere with that process. Medical care and treatment in this litigation ought not to funnel in each instance through referrals from lawyers only to then have the results of that care and treatment withheld from discovery. To be clear, Plaintiffs have a calculated decision to make—whether to find answers to their medical questions or not—after filing the lawsuit (they should have done so before filing suit). But when plaintiffs

---

[13] Of the MDL plaintiffs who have submitted a Plaintiff Fact Sheet, 6,650 have indicated that they have not been diagnosed by a healthcare provider for the alleged injury.

**SHOOK**
HARDY & BACON

August 17, 2018
Page 6

participate in care to answer their medical questions with doctors, the answers are discoverable to all sides and the Court.

Plaintiffs are engaging in a pattern of withholding, and attempting to shield from discovery, the only factual evidence related to the diagnosis and treatment for their alleged injury. They first withheld the records of the physician who performed biopsies on Plaintiffs, but Your Honor ordered they produce those records.[14] Plaintiffs then withheld the records of the only treating physician who performed psychiatric examinations of Plaintiffs. Your Honor ordered that they produce those records for in camera inspection and possible production.[15] Now Plaintiffs seek to withhold the records of the only physician who has examined Plaintiffs' scalp biopsies. Plaintiffs must produce these records for the same reasons Your Honor ordered the production of Dr. Claiborne's records.

Sincerely,

Harley V. Ratliff

---

[14] *See* Minute Entry at 2 (June 11, 2018) (Doc. 3074).
[15] *See* Minute Entry at ¶ 6 (Aug. 7, 2018) (Doc. 3709).