## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                                            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                       SECTION "H" (5)

THIS DOCUMENT RELATES TO
ALL CASES

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REVIEW OF DISCOVERY ORDERS REGARDING RETAINED EXPERTS

Pursuant to Federal Rule of Civil Procedure 72, Plaintiff's Steering Committee (PSC) respectfully seeks the District Court's review of the August 28, 2018 Order of Magistrate Judge North (Rec. Doc. 3962), denying reconsideration of the June 13 and August 7 Orders and directing the PSC to produce documents related to facts known by experts whom the PSC retained[1] to prepare for trial in addition to the underlying orders related to this issue.

### INTRODUCTION

Magistrate Judge North committed a clear error of law in ordering the PSC to produce documents for *in camera* review related to *facts* known by two retained experts while shielding only their *opinions*. On the belief that Sanofi is entitled to discover objective facts from such experts regardless of whether it is impracticable for Sanofi to obtain such facts by other means, the court asked whether certain facts known by these retained experts are objective as opposed to subjective.

---

[1] The PSC has not yet determined whether these physicians, who were retained by the PSC solely for the purposes of this litigation and never saw any of the trial plaintiffs prior to their retention as experts, will be called to testify at trial.  Because the deadline for submission of expert reports is not until November 7, 2018, these experts should be considered retained, consulting experts unless designated otherwise in accordance with the expert report deadlines set forth in Case Management Order No 14 (Rec. Doc. 3064).

Respectfully, this is not the correct legal inquiry. Discovery into facts and opinions of retained consulting experts are both protected absent extraordinary circumstances. Specifically, a party seeking discovery from a non-testifying expert must show it is impracticable to obtain facts or opinions by other means. Fed. R. Civ. P. 26(b)(4). The Magistrate Judge thus should have asked (and made a determination) whether it is impracticable for Sanofi to obtain, by some other means, facts known by the PSC's retained experts.

The answer to that question is no. The PSC retained Dr. Claiborne to perform a punch biopsy of certain trial plaintiffs; he has not been designated as an expert witness for trial. The PSC retained extra tissue samples and obtained a report from a dermatopathologist respecting these samples. After Sanofi learned of Dr. Claiborne through an inadvertent disclosure, the PSC offered the samples to Sanofi (and pictures/slides of the samples) but not the related report from the dermatopathologist hired to examine the samples. Because Sanofi can retain its own expert to examine the tissue samples, memorializing its own facts and opinions respecting these samples, Sanofi cannot establish that it is impracticable for it to obtain facts known by Dr. Claiborne or the dermatopathologist.

The PSC also retained Dr. John Thompson to conduct a psychological assessment of certain trial plaintiffs. Sanofi learned this inadvertently as well. Under the Federal Rules, and consistent with Case Management Orders, the PSC is entitled to retain non-testifying, consulting experts to discuss strategy and to prepare for trial. Rule 26(b)(4)(B) curtails discovery into this relationship; indeed, even the identity of this expert and the fact that he was hired should not be discoverable absent exceptional circumstances.

Magistrate Judge North disagreed because he understood a punch biopsy and psychological assessment to be discoverable medical treatment rather than expert consultation.

But that conclusion disregards certain important facts: these experts were retained and paid by the PSC for their consultancy and did not treat any plaintiff. The protections against disclosure thus apply to the materials generated or considered in these experts' roles as consultants, unless the PSC chooses to disclose these physicians as testifying experts within the deadlines set forth by this Court.

The court's contrary conclusion that Dr. Claiborne is a medical treater rested on routine language in a standard medical consent form that the trial plaintiffs signed when they agreed to the punch biopsy. However, all reputable medical offices in the United States memorialize consent before performing a procedure such as a biopsy. The language in this form simply does not alter Dr. Claiborne's role in this case as an expert consultant for the PSC or erase the protections against discovery afforded by the Federal Rules.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(l)(A), a magistrate judge is authorized to rule directly on a non-dispositive pretrial motion. However, when objections are raised to such a ruling, a district court must consider them and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Castillo v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995).

District courts in the Fifth Circuit have noted the "clearly erroneous" standard applies to the *factual components* of the magistrate judge's decision. *See, e.g., Lebron v. ENSCO Offshore Co.*, No. CIV.A. 12-1901, 2013 WL 3967165, at *2 (W.D. La. July 31, 2013)*; Lahr v. Fulbright & Jaworski, LLP,* 164 F.R.D. 204, 208 (N.D. Tex. 1996). However, the *legal conclusions* of the magistrate judge are reviewable *de novo,* and the district judge reverses if the magistrate judge erred in some respect in his legal conclusions. *Id.*; *see also Spillers v. Chevron USA Inc.,* 2013 WL 869387, at *3 (W.D. La. Mar. 6, 2013).  Finally, "the abuse of discretion standard governs

review of '*that vast area of ... choice that remains to the [magistrate judge]* who has properly applied the law to fact findings that are not clearly erroneous.'" *Lebron,* 2018 WL 3967165, at *2; *Spillers,* 2013 WL 869387, *3. Here, the issue before the Court is whether the Magistrate applied the correct legal standard in ordering the disclosure of "objective" facts known by experts hired by the PSC, which thereby justifies a *de novo* review of the Magistrate's legal conclusions.

## STATEMENT OF FACTS

As is normal in complex litigations, the PSC has hired testifying and non-testifying experts.  Pursuant to Case Management Order ("CMO") 14, the PSC is required to designate and provide reports for testifying experts on November 7, 2018 for the First Trial.  No CMO exists requiring that the PSC designate non-testifying experts or produce their reports.  However, through an inadvertent disclosure in the discovery process, Sanofi has identified the existence of certain retained expert consultants hired by the PSC—namely, a forensic psychiatrist, a dermatologist, and a dermatopathologist.  These expert consultants have not treated any of the initial Trial Plaintiffs—their consultations with plaintiffs was not at the direction of a primary treating physician nor did these consultants refer any trial plaintiffs for further evaluation.

Specifically, the PSC hired a forensic psychiatrist, Dr. John Thompson, to conduct a psychological assessment. He provided no treatment for Trial Plaintiffs. Dr. Thompson provided his opinions directly to the PSC and was paid directly by the PSC for his opinions.

In addition, the PSC hired a dermatologist, Dr. Cole Claiborne, to obtain scalp biopsies for the further expert evaluation of the plaintiffs. Dr. Claiborne did not analyze these tissue samples or form any opinions related to the tissue samples, nor did he decide where to send the tissues samples.  The tissue samples were preserved and forwarded to Plaintiff's retained

dermatopathologist to analyze. Dr. Claiborne was paid directly by Plaintiffs' counsel for his services.  Dr. Claiborne's office generated a pro forma medical record for each Plaintiff when they presented to obtain a tissue sample, which the PSC has produced to Sanofi.  The PSC has also offered to produce the tissue samples to allow Sanofi's experts to conduct their own examination.[2]

The PSC likewise hired a third-party dermatopathologist to interpret the tissue samples obtained by Dr. Claiborne.  The pathologist never observed, spoke to, or evaluated any Trial Plaintiff. The pathologist utilized his skill, education, and experience in pathology in forming impressions of what the tissue samples demonstrated and communicated his opinions directly to the PSC. The pathologist expressed those opinions in a written report that was provided directly to Plaintiff's counsel. The pathologist was paid directly by Plaintiff's counsel for his services and opinions.

Sanofi has subsequently sought discovery related to these retained experts, including examination notes, punch biopsy samples, dermatopathology reports, etc.  The PSC has resisted these discovery requests with the exception of the punch biopsy sample requests, which Sanofi has not accepted absent an agreement to produce additional materials that the PSC believes are protected.

## LEGAL AUTHORITY AND ARGUMENT

### A. The Federal Rules Require Exceptional Circumstances Before Facts and Opinions Of Non-Testifying Experts May Be Discovered.

Rule 26(b)(4)(D) protects from discovery "facts known or opinions held by an expert" retained by a "party . . . to prepare for trial and who is not expected to be called as a witness at

---

[2] Because the actual tissue samples meet the requirements of Rule 26(b)(4)(D), as it is impracticable for the defendants to obtain their own tissue sample, the PSC directed its consulting experts to retain and preserve half of the tissue samples obtained.  For months, the PSC has offered to arrange for the transfer of this tissue but has not been provided a laboratory to which the defendants request the tissue be sent.

trial." Fed. R. Civ. P. 26(b)(4)(D). "This rule is simply an application of the work product rule. The consultant's work will, by definition, be work product because the party uses the consultant," *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012), "to prepare for trial." Fed. R. Civ. P. 26(b)(4)(D).

The Rule demands that a party seeking discovery of "facts known or opinions held" by a non-testifying expert show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).   Under Rule 26(b)(4)(D)(ii), "exceptional circumstances" exist when it is "impractical for the party to obtain facts or opinions on the same subject by other means." This burden is a "heavy" one and "has been interpreted by courts to mean an inability to obtain equivalent information from other sources." *In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La.), *opinion clarified*, 134 F.R.D. 148 (E.D. La. 1990) (collecting cases). "The party seeking discovery of a non-testifying expert"—here, Sanofi—"carries the burden of showing exceptional circumstances*." Bank of Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 44 (S.D.N.Y.1997) (citation omitted).

The Rule thus "affords some protection to counsel who wish to obtain non-testifying experts to assist in trial preparation." *Evans v. T.E. Ibberson Co.*, No. CIV.A. 12-2597, 2013 WL 6796717, at *2 (E.D. La. Dec. 20, 2013) (quoting 8A Fed. Prac. & Proc. Civ. § 2032 (3d ed.)). It does not, however, "present an unfair burden on the parties, because 'each party has a full opportunity to retain its own experts; unlike fact witnesses they are not unique and, in an era when experts' services are widely marketed, the supply of potential witnesses is often large.'" *Id*. (quoting same). Instead, the "[Rule 26(b)(4)(D)] recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination"; and it is "designed to

prevent a party from building his case on the diligent preparation of his adversary." *Shell Oil*, 132 F.R.D. at 440.[3]

**B. Respectfully, Magistrate Judge North Clearly Erred By Not Demanding that Sanofi Show Exceptional Circumstances Before Discovering Facts Known to the PSC's Experts.**

Magistrate Judge North departed from settled law when it failed to require that Sanofi show it is impracticable for it to obtain, by some other means, facts known by the PSC's retained experts. The failure to apply the correct legal test constitutes reversible error.

Initially, the court held that "Sanofi is not yet entitled to information pertaining to any opinions that Dr. Claiborne"—a retained, consultant expert not anticipated to testify at trial— "may have concerning testing of any samples taken by him and must await the period for expert discovery to conduct such discovery." (Rec. doc. 3074, at 2). But it reached a different conclusion as to certain facts that Dr. Claiborne had learned during his consultancy, holding: "Sanofi is entitled to documents related to the facts of Dr. Claiborne's examination of any Plaintiff, . . ." *Id.*. And the court later adhered to this distinction between facts and opinion in its August 28 Order, when it refused to reconsider its prior rulings and extended them to Dr. Thompson. *See* Rec. Doc. 3962.

The court's attempt to separate "opinions" from "facts"—and its orders protecting opinions but not facts—misapprehends Fed. R. Civ. P. 26(b)(4)(D). "Because the rule protects '*facts* known or *opinions* held by an expert,' the rule shows that facts and opinions alike are protected and therefore not separable." *Appleton Papers,* 702 F.3d at 1024 (emphases in original) (quoting Rule 26(b)(4)(D)).

---

[3] In this quote, the court in *Shell Oil* references Rule 26(b)(4)(B), which was later renumbered (D) and (E). Fed. R. Civ. P. 26 (2010 Amendments).

Along these lines, the court also appeared to distinguish between objective and subjective facts. On the one hand, it found that Sanofi is not entitled to subjective facts—presumably because subjective facts are indistinguishable from opinion. On the other hand, it found that Sanofi is entitled to objective facts—presumably because they do not reflect any single expert's opinion. But Rule 26(b)(4)(D) protects facts and opinions alike. The distinction the Magistrate Judge created, by contrast, is nowhere in the Rule and in fact disregards its express terms. *See Appleton Papers*, 702 F.3d at 1024.

The ruling at issue also challenged the exclusive role served by the retained experts at issue—namely, Dr. Thompson, Dr. Claiborne, and the unnamed dermatopathologist hired to analyze the biopsies obtained by Dr. Claiborne.[4] Citing cases recognizing that "it is possible for a witness to wear both hats: one as a specially employed expert in anticipation of litigation and one as an ordinary witness," Rec. Doc. 3962 at 6, the court found that it was possible that Dr. Thompson, Dr. Claiborne, and the dermatopathologist were providing medical treatment to plaintiffs. As such, the court believed that Dr. Thompson, Dr. Claiborne, and the dermatopathologist could be serving dual roles, as an expert consultant and as a medical treater, and that facts known to them in their capacity as medical treaters were discoverable.

The cases cited do not support the Magistrate Judge's conclusion. In *Jones v. Celebration Cruise Operator, Inc.*, No. 11-61308-CIV, 2012 WL 1029469 (S.D. Fla. Mar. 26, 2012), the plaintiff hired a doctor as a non-testifying, consulting expert only. Then, during the course of the doctor's examination of the plaintiff, the doctor "recommended a proposed treatment different from that of any of [p]laintiff's prior health providers." *Id.* at *3. In engaging in that particular

---

[4] Although Fed. R. Civ. P. 26(b)(4)(D)(ii) does not expressly address the discoverability of the identity of experts, "the predominant view among courts addressing the issue is that the showing of 'exceptional circumstances' required by Rule 26(b)(4)(B) will be required even in connection with discovery of the identity of such experts." *Cooper v. Revere Life Ins. Co.*, No. CIV. A. 96-2266, 1997 WL 289706, at *1 (E.D. La. May 28, 1997) (collecting authorities); *see also supra* Footnote 1.

activity, the doctor "ceased acting solely as a non-testifying, consulting expert and took on the role of a treating physician." *Id.* Here, in contrast, neither Dr. Thompson, Dr. Claiborne, nor the dermatopathologist provided any treatment recommendation for any trial plaintiff. These doctors were hired by the PSC to consult for the PSC and never departed from that role.

*Jones* is further distinguishable because the court there determined that the doctor was the only one to have prescribed surgery as a treatment course. *Id.* at *4. That fact qualified as an exceptional circumstance. *Id.* Moreover, the plaintiff in that case sought to rely upon the doctor's proposed treatment in quantifying plaintiff's damages. *Id.* No such circumstances are present here.

Also distinguishable is *Caribbean I Owners' Association, Inc. v. Great American Insurance Co. of New York*, No. CIV.A. 07-00829-KD-B, 2009 WL 499500, at *3 (S.D. Ala. Feb. 20, 2009). There the plaintiff retained an expert in anticipation of litigation to evaluate the condition of a building before a hurricane. The court concluded that exceptional circumstances existed to allow discovery from the expert because no other person could testify as to the condition of the building before the storm. *Id.* at *2-3. Dr. Thompson, Dr. Claiborne, and the dermatopathologist, however, are not comparable to the expert in *Caribbean I*: They hold no unique facts that Sanofi cannot obtain by other means and through its own experts.[5]

Contrary to Magistrate Judge North's approach, the Rule limiting discovery absent exceptional circumstances applies here because the facts and opinions were gathered in preparation for trial by persons not yet designated to be called as a witness. Sanofi cannot show otherwise. The fact-gathering by retained experts through a medical test such as a biopsy or

---

[5] Even if this were a situation where the PSC's experts were wearing multiple proverbial hats, which it is not, "[e]very court to address this 'multiple hats' problem has concluded that an expert's proponent still may assert a privilege over such materials, but only over those materials generated or considered uniquely in the expert's role as consultant." *S.E.C. v. Reyes*, No. C06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) (collecting authorities).

psychological assessment could theoretically be relevant to treatment, but the Rule asks only if the facts and opinions were gathered by a non-testifying expert retained in preparation for trial; if the answer is yes, then those facts and opinions are protected from disclosure absent exceptional circumstances. The applicability of the Rule, however, does not turn on speculation about some other conceivable purpose a fact or opinion might serve. If the law were otherwise, then the Rule would seldom, if ever, protect from disclosure facts known or opinions held by a retained, consulting expert who is helping a party to prepare for trial.

The Magistrate Judge's reliance on routine medical forms inadvertently produced to Sanofi concerning punch biopsies for the premise that Dr. Thompson, Dr. Claiborne, and the dermatopathologist were providing medical treatment is contrary to the above cited authority. Again, Dr. Claiborne was hired to perform a punch biopsy for the PSC—not to treat Plaintiffs. Dr. Claiborne nevertheless had to obtain Plaintiffs' consent for this procedure. That consent was memorialized on a routine form used by his office. The forms, however, do not transmogrify Dr. Claiborne's role.

Plaintiffs also received post-operative instructions, and their sutures were removed. Magistrate Judge North determined this could be treatment, but that does not rise to the level of prescribing treatment or a treatment plan referenced in the relevant jurispurdence. Providing post-operative instructions and the removal of sutures are certainly part of any biopsy process; and, no expert hired to perform a biopsy can engage in the half measure of cutting a scalp but not providing post-operative care. This does not mean, however, that the post-operative care provided as part of a biopsy ordered for expert consultation is part of some new treatment plan.

In the final analysis, there is no legal or factual basis to question that Dr. Thompson, Dr. Claiborne, and the dermatopathologist are experts retained for consultation. "At this time, [the

10

PSC] has no obligation to decide which experts it will call at trial or disclose information about any experts expected to be called at trial." *See Shell Oil*, 132 F.R.D. at 440; *id.* (citing *United States v. 215.7 Acres of Land*, 719 F. Supp. 273, 278 (D. Del. 1989) (finding tacit approval of the government's posture of indecision about what experts would be called at trial)). And at this time, Sanofi has not demonstrated exceptional circumstances to warrant discovery from these retained experts.[6]

## **CONCLUSION**

For the foregoing reasons, the Court should reverse the orders of the Magistrate directing the PSC to produce documents related to facts known by retained experts whom the PSC hired to prepare for trial because the court committed clear error in failing to demand exceptional circumstances for this disclosure.

Dated: September 11, 2018

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973

Respectfully submitted,

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura (on the brief)
GIBBS LAW GROUP LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*


*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

---

[6] The parties are separately discussing a proposal by Sanofi respecting the disclosure and transfer of punch biopsy tissue and pictures/slides of the tissue.

plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638

adwyer@kirkendalldwyer.com

rand_nolen@fleming-law.com

Emily C. Jeffcott
The Lambert Firm, PLC
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
ejeffcott@thelambertfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT