UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  TAXOTERE (DOCETAXEL)      *      16-MD-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *      Section H
                                  *
Relates to:  All Cases            *      September 18, 2018
                                  *
                                  *      11:00 a.m.
* * * * * * * * * * * * * * * * *
```

STATUS CONFERENCE BEFORE
THE HONORABLE MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

Appearances:

```
For the Plaintiffs:        Barrios Kingsdorf & Casteix, LLP
                           BY:  DAWN M. BARRIOS, ESQ.
                                ZACHARY L. WOOL, ESQ.
                           701 Poydras Street, Suite 3650
                           New Orleans, Louisiana 70139


For the Plaintiffs:        Gainsburgh Benjamin David Meunier
                             & Warshauer, LLC
                           BY:  M. PALMER LAMBERT, ESQ.
                           1100 Poydras Street, Suite 2800
                           New Orleans, Louisiana 70163


For the Plaintiffs:        Pendley Baudin & Coffin, LLP
                           BY:  CHRISTOPHER L. COFFIN, ESQ.
                           1515 Poydras Street, Suite 1400
                           New Orleans, Louisiana 70112


For the Plaintiffs:        Simmons Hanly Conroy, LLC
                           BY:  DAVID F. MICELI, ESQ.
                           One Court Street
                           Alton, Illinois 62002
```

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Liska Exnicios & Nungesser<br>BY:  VAL P. EXNICIOS, ESQ.<br>1515 Poydras Street, Suite 1400<br>New Orleans, Louisiana 70112 |
| For the Sanofi<br>Defendants: | Irwin Fritchie Urquhart<br>  & Moore, LLC<br>BY:  DOUGLAS J. MOORE, ESQ.<br>     KELLY E. BRILLEAUX, ESQ.<br>400 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70130 |
| For the Sanofi<br>Defendants: | Shook Hardy & Bacon, LLP<br>BY:  HARLEY V. RATLIFF, ESQ.<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108 |
| For the Sanofi<br>Defendants: | Shook Hardy & Bacon, LLP<br>BY:  PATRICK OOT, ESQ.<br>1155 F Street NW, Suite 200<br>Washington, DC 20004 |
| For the Hospira<br>Defendants: | Chaffe McCall, LLP<br>BY:  JOHN F. OLINDE, ESQ.<br>     PETER J. ROTOLO, ESQ.<br>1100 Poydras Street, Suite 2300<br>New Orleans, Louisiana 70163 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography using computer-aided transcription software.

11:12

**PROCEEDINGS**

**(September 18, 2018)**

**THE COURT:** Good morning everyone. You can have a seat.

I just received the agenda. I had organized my notes a little differently, so I'm going to address the issues that Sanofi raised first.

The issue of nonbellwether ESI deficiencies is off the agenda for today, correct?

**MR. RATLIFF:** That's correct, Your Honor. We have reached an agreement with them to work on some redlines.

**THE COURT:** The first issue to discuss is disclosure of whether the plaintiffs have had scalp biopsies or other laboratory testing to diagnose their alleged injuries. Sanofi states that it's been asking for disclosure of that information for months. I think the PSC is arguing that disclosure of that information is premature at this point due to ongoing negotiation of a pathology protocol and the fact that the Court hasn't yet ruled on what needs to be disclosed and the scope of that disclosure.

Is that a fair assessment of the competing positions?

**MR. COFFIN:** That's correct, Your Honor.

**THE COURT:** Ruling on the mechanics of that disclosure, I think, is premature. Clearly, you all are in the

11:14

1  process of negotiating some sort of protocol.  I don't know
2  where you stand, although I got a late submission -- I think it
3  was from Sanofi -- as to some of the issues in that
4  negotiation, but I haven't gotten both sides of the story.
5              **MR. RATLIFF:**  Your Honor, may I address that?
6              **THE COURT:**  Sure.
7              **MR. RATLIFF:**  The pathology protocol is something
8  that was brought up at our last general status conference with
9  Judge Milazzo.  We reached an impasse, so we submitted it to
10 Judge Milazzo on Monday, with the thought of cc'ing you because
11 we weren't sure if it was an issue she would ultimately send to
12 you for your consideration.
13             **THE COURT:**  We haven't discussed it, but I'm sure we
14 will.
15             **MR. RATLIFF:**  As it relates to what we are asking
16 for, it's really no different than what has already been
17 ordered in terms of certainly for the bellwether plaintiffs for
18 Trial 1 and Trial 2.  If those plaintiffs have seen doctors, if
19 they have been treated or examined in an objective fashion,
20 whether it was by their own accord or whether they were sent
21 there by the plaintiffs' attorneys, we think, given your
22 various rulings, it's clear that those should be disclosed or
23 they should make a privilege claim as to why they should not be
24 disclosed, and that objective evidence -- the medical records,
25 the examination, the results -- those should be submitted to

11:15

1  you for in camera review just as we have done before.
2          In terms of the pathology protocol, that's more
3  just the mechanics of how do we get a biopsy slide, the
4  material, from one party to the other party.  It doesn't go to
5  the medical records, the examination, the objective results
6  from those particular doctors.
7      **THE COURT:**  What about the identity of the providers?
8  There's a suggestion in the papers that Sanofi agrees that the
9  identity of providers who have not been designated as
10 witnesses -- doctors, technicians, or whatever they are who
11 haven't been designated as witnesses in the case, that both
12 sides agree they need not be identified.
13     **MR. RATLIFF:**  As it relates to the exchange of
14 pathology materials, yes.  As it relates to the examination of
15 these particular plaintiffs by these doctors who we do not
16 know, I do think we are entitled to know that information
17 because it goes to who do we get to depose and who are
18 potentially fact witnesses in these cases.  It's not just this
19 round, but it's also the next round.
20         One of the PSC arguments is we should wait until
21 this process plays out, we should handle it only in Trial 1,
22 but our close of fact discovery for Phase 1, Trial 2, ends in
23 December, so that window is tightening very quickly.
24         The thing is we have been asking for a position
25 on this since June.  Obviously the issue, Your Honor, has been

11:17

1  briefed extensively before yourself.  It's now been briefed
2  before Judge Milazzo.  The PSC intends to rebrief the issue
3  again once you rule on the in camera examination, so --
4       **THE COURT:**  Maybe it will be you all.
5       **MR. RATLIFF:**  It may be us briefing it, that is true,
6  Your Honor.
7            So we feel like this is an issue that could have
8  been resolved back in June and now, through various briefing
9  procedural mechanisms, we are finding ourselves with four or
10 five months that have passed.
11      **THE COURT:**  Well, I know that you are probably
12 disappointed to hear me say that I think that it's premature
13 for me to make a decision, but I will say that this is all
14 going to come to a head very soon.  I have discussed the matter
15 with Judge Milazzo.  As I said to Mr. Coffin and Mr. Moore -- I
16 think is who I had on the phone when we were discussing the
17 issue of the appeal and the stay.  I said to them at the time
18 I'm not going to order anything to be produced while there's an
19 appeal of my other order pending.
20            Now, I have reviewed what was given to me.  I'm
21 further informed to some extent by the letter briefs that you
22 all have given me.  I know that you are all are working on a
23 protocol.  All of these things I'm prepared to deal with, but
24 I'm not going to do it as long as the original in camera order
25 is under appeal.

11:18

1  **MR. RATLIFF:**  Understood, Your Honor.
2  **THE COURT:**  Now, let me also say that to the extent I
3  order anything that's been produced to me ultimately to be
4  produced to Sanofi, it's going to be on a short timeline.  In
5  all likelihood, I'm going to order some of that material to be
6  produced.  What I haven't figured out is to what extent some of
7  it might get redacted.
8  I'm telling you all right now it's not going to
9  be 14 days.  It's going to be quick.  Both sides need to be
10 prepared to pull the trigger on an appeal if you are going to
11 appeal it.  I'm just warning you all right now because I am
12 sensitive to how much time has passed and how little time is
13 left.  I'm going to do my part to get this to the quickest
14 resolution that I can.
15 **MR. RATLIFF:**  Thank you, Your Honor.  I think where
16 we have some frustration is with the other bellwether
17 plaintiffs we don't know -- maybe there are no other
18 nondisclosed providers --
19 **THE COURT:**  Right.
20 **MR. RATLIFF:**  -- or maybe there are, but we need to
21 know if they are making a privilege claim over those.  So we
22 are sort of left in this sort of limbo of which one is it.
23 Just tell us so we know the path to proceed on.
24 **THE COURT:**  Well, I think that's appropriate for that
25 question to be answered.  Again, I think the prudent thing to

11:19

do is for me to wait on Judge Milazzo's decision on the appeal that's pending.

Now, if Judge Milazzo does not upset my ruling on the in camera review, I think that that would make it appropriate for me at that point to order, at a minimum, that the PSC identify those individuals in the first two trial flights who may have had this sort of pathology done, to identify who they are, so that Sanofi knows that it's out there.

The immediate concern is not just whether that material is discoverable; it's whether it even exists. I think that Sanofi is entitled to know whether it exists in order to be able to ascertain whether they ought to challenge its withholding.

**MR. RATLIFF:** Thank you, Your Honor. Just to be clear -- maybe someone can correct me if I'm wrong here-- but I believe the only appeal that was taken was since denied by Judge Milazzo. There's no current appeal with Judge Milazzo with the PSC.

**MR. OLINDE:** It was denied, I believe, on Friday.

**MR. RATLIFF:** On Friday.

**THE COURT:** The one for the in camera review?

**MR. RATLIFF:** Correct. Denied on Friday.

**MR. MOORE:** Document 4186.

**THE COURT:** Oh, how could I miss Document 4186?

11:21

1     **MR. RATLIFF:**  So right now there is no pending
2 appeal.
3     **THE COURT:**  Okay.  Well, I'm not going to deal with
4 it right now as I am sitting here, but I'm going to deal with
5 it shortly.
6     **MR. RATLIFF:**  Okay.  Understood.  Thank you,
7 Your Honor.
8     **THE COURT:**  One thing that I want the PSC to produce
9 to me in connection with what I'm looking at now, which I
10 haven't asked for -- and there's probably a way for me to find
11 this, but I don't know what that is.  I'm going to ask you all
12 to produce for me the Plaintiff Fact Sheets for plaintiffs
13 Earnest, Francis, and Durden.  I'm sure if I spent half a day I
14 could get them myself, but I would prefer if you could provide
15 those to me in the next couple of days.
16     **MR. COFFIN:**  We can do that.
17     **THE COURT:**  All right.  Thank you.
18     Shirley Ledlie's address.
19     **MR. RATLIFF:**  Your Honor, we have resolved that issue
20 this morning.  I received her address from Mr. Miceli.  To just
21 kind of preview for Your Honor, we will be submitting --
22 hopefully in the next couple of days now that we have her
23 actual address -- our request for a letters rogatory
24 international service and discovery from you.  That should be
25 coming before your desk probably in the next couple of days.

11:22

1   We have to get it translated, but now that we have the address
2   we are ready to march forward with that.
3           **THE COURT:**  I hope I find it more easily than I found
4   Judge Milazzo's ruling.
5                   Substitution of custodians, I understand the
6   only question is whether the PSC can substitute a custodian for
7   Dominique Destree.  Is that's what's left?
8           **MR. OOT:**  Your Honor, I can cut through this.
9   Patrick Oot for Sanofi.
10                  I think we can cut through this pretty easily.
11  The real issue is we just have to go back to our client and
12  justify these issues.  There's a cost to this.  When the PSC
13  categorizes somebody as not having any ESI or not having any
14  documents, it isn't necessarily the case.
15                  So, for example, we are talking about Destree.
16  We collected 171,000 pages.  De-duplication and processing and
17  threading and all this stuff in PTO 49 gets us to a point where
18  we produced, I believe, around 13,000 pages.  So essentially
19  this custodian goes through the process, and it also lends to
20  the idea that we have gotten information and we are getting to
21  a point where a lot of it is duplicative.  We are getting to a
22  point where a lot of it is just pulling the same information
23  over and over again.
24                  So essentially what we are asking is to just
25  trigger the timing of this when Sanofi actually agreed to do it

11:23   1   and when we got Mr. Wool's explanation letter, I believe, on
       2   the 9th.  45 days would push this to November.  I think we need
       3   that much time.  I think we would like to propose October 23 to
       4   provide her file, just with an extra note that this is an extra
       5   custodian.
       6           **THE COURT:**  I agree with that 100 percent.  I think
       7   that it's appropriate to treat the new custodian as an extra
       8   custodian, and October 23 is a reasonable deadline for
       9   production of the information from that individual.
      10           **MR. OOT:**  Thank you, Your Honor.
      11           **MR. WOOL:**  Your Honor, may I just briefly address the
      12   deadline issue?
      13           **THE COURT:**  I was going to give them 45 days, so I'm
      14   not sure you really want to address that.
      15           **MR. COFFIN:**  Well, just to be clear, we will likely
      16   be back here because our time is going to be really crunched
      17   again, but we hear your ruling.
      18           **THE COURT:**  I think, under the circumstances, the
      19   correct ruling is to consider this new custodian as an extra
      20   custodian.  There's no reason for me to compress the time
      21   beyond what they have offered to compress.  October 23 it is,
      22   and we will deal with any other issues as they pop up.
      23              The IMS prescribing data, Sanofi is telling me
      24   that they have produced everything in their custody or control.
      25           **MR. MICELI:**  David Miceli for the record, please.

11:25   1            They have made a very large production to us --
2       **THE COURT:**  Uh-huh.
3       **MR. MICELI:**  -- and we will agree to that.  Under the
4  Defendant Fact Sheet, they have an obligation to produce
5  particular information.  What they have done, essentially, is
6  produced every piece of IMS data of any type, containing any
7  type of information, in a mass production.  It's similar if we
8  were to just take all 9,000 plaintiffs and provide all of our
9  medical records and say, "Now you have what we have.  You can
10 go find them."
11           What other defendants have done in this
12 litigation, in response to Section II and Section V of the
13 Defendant Fact Sheet, have made two-, three-, four-page
14 productions that demonstrate what docetaxel or Taxotere product
15 was produced to the plaintiff's health care facility, and that
16 is what is supposed to be provided with the Defendant Fact
17 Sheet.
18           What they have produced to us -- just one of
19 their files in their production contains over 300 million data
20 entries.  That's their production, I suppose, for each
21 Defendant Fact Sheet that they have provided.  Whereas when you
22 compare that to what other defendants have done, it is quite
23 different.
24      **THE COURT:**  So you want them to search all of that
25 material to produce what's responsive on the Defendant Fact

11:26   1  Sheet?
2       **MR. MICELI:**  Yes.  I want them to meet their
3  discovery obligation per their Defendant Fact Sheet.
4       **THE COURT:**  All right.
5       **MR. MICELI:**  One other item that Mr. Ratliff can
6  address -- because he and I have discussed it as far back as, I
7  think, last September.  In their letter in paragraph 3, I
8  think, on page 3, they state that they have produced everything
9  they have in their custody and control, and they even went out
10 and purchased other IMS data on the 505(b)(2) defendants and
11 produced that to us.
12             The production that we have does not
13 differentiate, at least from our review of it -- and it's not
14 in a usable format.  From our review of it, we can't tell what
15 was Sanofi's and produced as it's kept in the regular course of
16 their business and what was purchased after this litigation was
17 initiated and they decided to share it with us.
18      **MR. RATLIFF:**  Thank you, Your Honor.  As to
19 Mr. Miceli's last point, we are happy to clarify that for him.
20             The first production we made, Dave, would be the
21 production that we purchased separate and apart and provided to
22 you all.
23      **THE COURT:**  You all can clarify that after the
24 hearing.
25      **MR. RATLIFF:**  We have no problem doing that.

11:27

1           I think, Your Honor, Mr. Miceli has conflated
2  two discovery issues.  In their requests for production, their
3  master requests for production, one of those requests for
4  production is for all of the IMS data that Sanofi has.  We have
5  made that production to them, and it is in the exact format
6  that Sanofi keeps it.  It's searchable.  Now, it is a large set
7  of data, but it is responsive to a request for production, and
8  that is what we have turned over to them.
9           It took a lot of wrangling back and forth with
10 IMS, or now the successor company to IMS, because this is
11 essentially third-party data.  IMS is the owner of this data.
12 You can purchase it, you can subscribe to it, but you have to
13 get their sign-off before you can do that.  We worked very hard
14 to make that happen.  We also authorized Mr. Miceli or the PSC
15 that if they wanted to obtain that data separate and apart from
16 IMS, we had no problem doing that.
17          As it relates to the Defendant Fact Sheets, I
18 don't think what Mr. Miceli has said is correct.  What we have
19 been doing is we have run searches and we are starting to
20 update and amend our Defendant Fact Sheets to include names of
21 facilities, to the extent they are there, but it's a search
22 that anyone can run.
23          If we want to go down the process, Your Honor,
24 of how many Plaintiff Fact Sheets we get that just say, "See
25 medical records," and then we have to sift through a thousand

11:29

pages of medical records, that's going to be a pretty painful tit-for-tat experience for both sides, because that's typically the response we see in Plaintiff Fact Sheets.

As it relates to the bellwether plaintiffs, which I know they are particularly interested in, we have run searches for those. We have found the names of the facilities that are the prescribing facilities. They are in that particular set of data.

We are happy to go back, as it relates to the bellwethers, and escalate that and add that into the Defendant Fact Sheet. You know, Your Honor, as we have been told time and time again by the PSC, there is a deficiency process that is in place for Plaintiff Fact Sheets and for Defendant Fact Sheets. If they have particularized deficiencies on a case-by-case basis, they can, they have, and they should raise those through that process that has been in place since day one.

**THE COURT:** Well, I agree with that, but here's what we are going to do. I'm going to direct Sanofi to refine its production to be consistent with what's required in the Defendant Fact Sheets as to the bellwether plaintiffs.

**MR. RATLIFF:** Okay.

**THE COURT:** As to the nonbellwether plaintiffs, I'm going to direct you all to sit down and discuss how this material should be searched, if it needs to be done by one side

11:30

1   or the other, if it needs to be done by a third party that you
2   all agree on.  I will deal with cost sharing issues once we
3   know what that looks like.
4             **MR. RATLIFF:**  Okay.
5             **THE COURT:**  I'm not going to do that in advance right
6   now.  I think that you all are in a better position to be able
7   to sit down and work out how you are going to search this data
8   for the information that you need to get.
9             Again, as to the nonbellwether plaintiffs, if
10  there is a deficiency that can be dealt with in the fact sheet
11  deficiency process, I want you all to use that process.  In the
12  meantime, I want you all to discuss practically how to boil all
13  this data down and get what you need.  I'm not afraid to order
14  you all to share the cost of that, but I think that you all
15  ought to sit down and try to figure out what's the expeditious
16  and economical way to get it done.
17            As to the bellwether plaintiffs, I'm going to
18  order Sanofi to go ahead and get that information that's
19  required in the Defendant Fact Sheets to the PSC as soon as
20  possible.
21            **MR. RATLIFF:**  We will do that, Your Honor.  As I
22  discussed with Mr. Miceli and, I believe, Mr. Coffin last
23  Thursday -- I mean, Mr. Miceli is right.  It is a massive set
24  of data, but we often get complaints we are not producing
25  enough.

11:31  1  **THE COURT:** I understand their concern, though.

2  **MR. RATLIFF:** The reality is our capabilities to
3  search it are no different than their capabilities. It's a
4  difficult data set to search through.

5  **THE COURT:** That knife cuts both ways --

6  **MR. RATLIFF:** It does.

7  **THE COURT:** -- because you have an obligation to
8  provide that information in the fact sheets.

9  **MR. RATLIFF:** So we will work with them with the
10  nonbellwethers on kind of an accelerated time period so we can
11  get this resolved.

12  **THE COURT:** All right. Let's do it that way.

13  **MR. MICELI:** One other comment, Your Honor. Just so
14  I'm clear, we have already retained a consultant that has the
15  capabilities to search this. I will be happy to share the
16  findings with Sanofi.

17  I asked him to compare what has been produced by
18  other defendants, and this is a total production of the IMS
19  data for a 505(b)(2) defendant that hasn't been -- I don't want
20  to share a 505's in this hearing concerning Sanofi. This is
21  what it looks like, and this is what it looks like in other
22  cases.

23  I asked him to go and search the data that has
24  been provided to see if this information is included in that
25  massive production, and it was not. We are happy to sit down

11:32

1  and go through this.
2           There's two different types.  There's the
3  massive all IMS data, which includes national sales, regional
4  sales, and then there is the physician-specific information
5  that's in the Defendant Fact Sheet.  We will work through those
6  issues and update Your Honor.
7           As we have noted on other issues today, the
8  time-sensitive nature of it, because this could help us hone
9  down -- it won't focus a product use issue.  It will certainly
10 tell us what doctors are using Taxotere only.  Thank you.
11      **THE COURT:**  If we have to discuss it again in an
12 upcoming conference, then we will do it then.
13          That's all I have.
14      **MR. COFFIN:**  The only other thing I want to say is
15 you will notice Ms. Menzies isn't here today.  She sends her
16 regards.  She couldn't make it today.  I told her that I would
17 let the Court know that she apologizes for not being here.
18      **THE COURT:**  All right. Things happen.  That's all
19 good.
20          Now, I wouldn't want to disappoint you all by
21 not having brought my calendar with me for the first time, so
22 let me go get it.
23      **MR. COFFIN:**  Your Honor, one last point on this IMS
24 data.  As Mr. Ratliff knows, we have a meeting with
25 Judge Milazzo over one of the bellwether plaintiffs and the

```
11:34   1   manufacturer ID issue.  Central to that issue, of course, is
        2   this IMS data at the physician level.
        3               It would be very helpful to us -- and I'm sure
        4   Judge Milazzo -- if they could actually provide us that
        5   information prior to Thursday.  I'm not sure that's possible,
        6   but I'll let Mr. Ratliff speak to that.
        7               MR. RATLIFF:  Your Honor, as soon as we leave here, I
        8   will contact someone back at our office to see what can be done
        9   about that.  I think the one point that Mr. Miceli and
       10   Mr. Coffin and I discussed is if a particular doctor's name is
       11   not in the data set, then it's just not in the data set.  We
       12   can't make it appear, but we will run those searches and try
       13   and get it to them before this meeting on --
       14               THE COURT:  Well, I guess you can run the doctor's
       15   name.  You can also run his practice name or whatever facility
       16   he might be working with as well.
       17               MR. RATLIFF:  Absolutely.  We will do that,
       18   Your Honor.
       19               MR. COFFIN:  Thank you.
       20               THE COURT:  Next meeting, how about October 10, which
       21   is a Wednesday?
       22               MR. OOT:  Your Honor, that whole week is bad for me.
       23   If we could do the following week, that would be great.  I have
       24   an all-week training.
       25               THE COURT:  I am happy to do the following week.
```

11:35  1  Let's do Tuesday, the 16th.  Tuesday, the 16th, at 10 a.m.
2  **MR. COFFIN:**  We can do that, Your Honor.
3  **THE COURT:**  I'm going to issue the minute entry later
4  on today.
5  Chris, those Plaintiff Fact Sheets, I'm just
6  going to put a deadline of close of business Friday.  That
7  should be enough time.
8  **MR. COFFIN:**  That should be plenty of time.
9  **THE COURT:**  Sooner if possible.
10  **MR. COFFIN:**  We will do it sooner.
11  **THE COURT:**  Thank you.
12  (Proceedings adjourned.)
13  \* \* \*
14  **CERTIFICATE**
15  I, Toni Doyle Tusa, CCR, FCRR, Official Court
16  Reporter for the United States District Court, Eastern District
17  of Louisiana, certify that the foregoing is a true and correct
18  transcript, to the best of my ability and understanding, from
19  the record of proceedings in the above-entitled matter.

*/s/ Toni Doyle Tusa*
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter