UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                           MDL NUMBER: 2740
       PRODUCTS LIABILITY
       LITIGATION

                                                      SECTION: "H"(5)

                                                      THIS DOCUMENT RELATES TO
                                                      ALL CASES

## ORDER AND REASONS

### I.   INTRODUCTION

In its Order and Reasons dated August 28, 2018, the Court found that *in camera* review of certain medical records of bellwether Plaintiffs, Barbara Earnest, Antoinette Durden, and Tanya Francis, was appropriate and ordered those records produced to the Court. (Rec. doc. 3962). The subject records include pathology reports pertaining to Plaintiffs' scalp biopsies and records of psychiatric and/or psychological examinations of Plaintiffs. The Court has received and reviewed those records to determine which, if any, should be produced by the PSC at this point in the litigation.

In resisting the production of these records, the PSC has consistently argued that any records created as a result of examinations or testing done by these doctors are protected by the consulting expert privilege pursuant to Federal Rule of Civil Procedure 26, because the Plaintiffs were sent by counsel to the subject doctors solely for purposes of trial preparation and because Sanofi has not demonstrated "exceptional circumstances" for their production under Rule 26(b)(4)(D)(ii).

The pertinent language of Rule 26 is as follows:

> (D) *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> > (i) as provided in Rule 35(b); or
> >
> > (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.
>
> **Fed. R. Civ. Pro.** 26(b)(4)(D)(emphasis added).

For the reasons enumerated below, the Court finds that, with two exceptions, the subject medical records are discoverable and should be produced forthwith.

## II.   LAW AND ANALYSIS

### A. The Subject Records are Medical Records of Treating Physicians

The Court has previously observed that punch biopsy records, pathology reports, and psychiatric examination records are all a type of "medical record" as that term is generally understood. (Rec. doc 3962). The Court ordered the records produced for *in camera* review in order to determine if they bore the indicia of medical treatment and/or contained diagnoses or recommendation for future treatment, as such indicia are germane to the records' discoverability generally as well as to whether Sanofi has demonstrated the presence of "exceptional circumstances" under Rule 26(b)(4)(D)(ii). (*Id.*)

In this case, treating-physician discovery has been ongoing since well before the commencement of expert discovery. To the extent that bellwether Plaintiffs have been treated or diagnosed or have received recommendations for future treatment from a physician, that information is subject to discovery without further delay. The Court's review of the documents submitted *in camera* convinces it that, with two exceptions (explained in

more detail below), the records should be produced and discovery regarding the treatment revealed and discussed in those records should likewise go forward.

### B. The Requirement for Production in the Plaintiffs' Fact Sheet

At no point in the months-long litigation over these records has the PSC accounted for the fact that Pretrial Orders 18 and 38 specifically require every Plaintiff to provide the information that is subject of this Order. (Rec. docs. 236 and 326). In completing their Plaintiff Fact Sheets ("PFSs"), each Plaintiff is required to respond to the following:

- [Answer "yes" or "no"] – "Have you had a biopsy of your scalp to evaluate your hair loss problem."
- "Identify each physician, doctor, or other healthcare provider[1] who has provided treatment to you for any reason in the past eight (8) years and the reason for consulting the healthcare provider or mental healthcare provider."
- "Identify each hospital, clinic, surgery center, physical therapy or rehabilitation center, or other healthcare facility where you have received inpatient or outpatient treatment (including emergency room treatment) in the past eight (8) years."
- "Identify each laboratory at which you had tests run in the past ten (10) years."
- "Please state which of the following documents you have in your possession. If you do not have the following documents

---

[1] The following definitional language appears on the first page of each PFS: "In filling out this form, please use the following definitions: (1) " **healthcare provider** " means any hospital, clinic, medical center, physician's office, infirmary, medical or diagnostic laboratory, or other facility that provides medical, dietary, psychiatric, or psychological care or advice, and any pharmacy, weight loss center, x - ray department, laboratory, physical therapist or physical therapy department, rehabilitation specialist, physician, psychiatrist, osteopath, homeopath, chiropractor, psychologist, nutritionist, dietician, or other persons or entities involved in the evaluation, diagnosis, care, and/or treatment of the plaintiff or plaintiff's decedent. (Rec. docs. 236 and 326)(emphasis added).

3

>but know they exist in the possession of others, state who has possession of the documents: Produce all documents in your possession (including writings on paper or in electronic form) and signed authorizations and attach a copy of them to this PFS. . . .
>
>> ▪ <u>Pathology reports</u> and <u>results of biopsies performed on you related to your hair loss</u>. Plaintiffs or their counsel must maintain the slides and/or specimens requested in this subpart, or send a preservation notice, copying Defendants, to the healthcare facility where these items are maintained.
>
> (<i>Id.</i>)(emphasis added)

The Fact Sheets and Pretrial Orders applying to them make no mention of and provide no allowance for Plaintiffs' counsel unilaterally deciding that they can carve out medical and mental-health examination records, pathology reports, and the like – without even identifying them on a privilege log – simply because they sent their clients to those medical providers and now claim it was for litigation purposes only. The PFS is an exhaustive and detailed, 39-page document that leaves little to chance in terms of its scope. The Court has no doubt that the litigants and the District Judge could have made express provisions for protection of these materials had that been their intention.

The Court believes that the materials should be produced as responsive to the PFS and Pretrial Orders 18 and 38 and will address individually below the records of the three bellwether Plaintiffs whose records the Court has reviewed.

   1. *Tanya Francis's Records and PFS*

The Court has reviewed both the PFS and submitted medical records of bellwether Plaintiff, Tanya Francis. Notably, although the PSC repeatedly urges the Court to withhold

from Sanofi the identity of the physicians whose records are subject of this order, Francis is the only one of the three who actually identifies them as her "healthcare providers" and answers "yes" to the question whether she has had a scalp biopsy. (Francis Sixth Amended Fact Sheet at pp. 20, 23). She identifies Dr. Claiborne as a "treating physician" who treated her for the injury she alleges in this lawsuit (*id.* at p. 16) and identifies Dr. Curtis Thompson as a doctor with whom she consulted for a "Dermatopathology Report." (*Id.* at p. 23).

The only records of Francis submitted for *in camera* review are the pathology report of Dr. Thompson (which is identified on her PFS) and certain photographs, which the Court surmises are related to her scalp biopsy. Both are discoverable without need for redaction. The Court also notes here that, despite having checked "no" on the PFS to the question whether she had been diagnosed by a healthcare provider for the injury she alleges in the lawsuit, (*id.* at p. 16), Dr. Thompson's pathology report <u>does</u> set forth diagnoses related to Francis's alopecia claims. The import of that fact will be discussed below.

*2. Antoinette Durden's Records and PFS*

The PFS of bellwether Plaintiff Antoinette Durden is silent in every respect to the treatment and records subject of this Order. She answers "no" to the question whether she has had a scalp biopsy, which is obviously not the case. (Third Amended Plaintiff Fact Sheet of Antoinette Durden at 21). Nowhere does she reveal treatment by any of the doctors whose records have been submitted to the Court. And she claims to have suffered "mental or emotional damages," and also states that she has not been treated for the psychiatric or psychological condition of which she complains. (*Id.* at p. 19). The records submitted to the Court indicate that such is not the case.

Durden has been seen and treated by a psychiatrist and psychologist and the records of each reveal both diagnoses and recommendations for future treatment. The records further reveal that these diagnoses and recommendations are based, not on the review of other providers' medical records as is usually the case with purely "consulting" experts, but on actual meetings between the doctors and Durden and testing of Durden by those doctors. The Court cannot help but conclude that, having placed her emotional/mental condition at issue, these records must be produced without redaction.

In addition, both the photographs of Ms. Durden and the pathology report submitted to the Court are discoverable. All of these records should be identified in an amended PFS and produced forthwith.

### 3. Barbara Earnest's Records and PFS

The PFS of bellwether Plaintiff, Barbara Earnest ("Earnest") is the same in all relevant respects as that of Durden, with one notable exception. Earnest answered "no" to the question whether she was making a claim for mental or emotional damages. Accordingly, the records of any treatment or examination by either a psychiatrist or psychologist are not relevant or discoverable at this time. Should Earnest at any point make a claim for such damages, the records of those physicians will become immediately discoverable.

On the other hand, for the reasons explained above, the pathology report and photographs submitted for *in camera* review are discoverable and shall be produced without redaction.

### C. Exceptional Circumstances Exist to Compel Production of these Records.

Notwithstanding the foregoing bases for the production of these disputed medicals records, Sanofi has convincingly invoked the "exceptional circumstances" exception to Rule

6

26(b)(4)(D) as grounds for the production of the materials.  As noted above, a party may obtain facts known or opinions held by a consulting expert that is otherwise protected by demonstrating "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." **Fed. R. Civ. Pro.** 26(b)(4)(D)(ii).

As for Ms. Francis, despite having checked "no" on the PFS to the question whether she had been diagnosed by a healthcare provider for the injury she alleges in the lawsuit, (*id.* at p. 16), Dr. Thompson's pathology report <u>does</u> set forth diagnoses related to Francis's alopecia claims.  Courts faced with similar scenarios have found them to qualify as "exceptional circumstances" under Rule 26.

For instance, in *Jones v. Celebration Cruise Operator, Incorporated*, Jones's counsel sought to quash a subpoena for records of a Dr. Figuereo, to whom he had sent his client, arguing that he had retained that doctor:

> to review Plaintiff's medical records and imaging studies, and perform a medical examination of the Plaintiff.  According to [Plaintiff], "Dr. Figuereo was retained by Plaintiff in this case in anticipation of litigation," and Dr. Figuereo's examination of Jones "was at the request of his attorneys and not for purposes of treatment."
>
> No. 11-CV-61308, 2012 WL 1029469 at *1 (S.D. Fla. Mar. 26, 2012)(internal citations omitted).

The Defendant opposed the motion to quash, arguing that Dr. Figuereo was a treating physician because he had prescribed an MRI and had opined that Jones was a surgical candidate. (*Id.* at *2).  Alternatively, the Defendant argued that exceptional circumstances justified the requested discovery because Dr. Figuereo was the only doctor to have recommended surgery to Jones.

7

Before discussing the outcome of *Jones*, the Court observes that, in its view, Jones' purpose in retaining Dr. Figuereo as described above aligns perfectly with the arguments that the PSC has been making in this case. There is very little daylight between the positions taken by the Plaintiffs in these two cases.

The *Jones* Court looked to the content of the doctor's reports to determine whether he was acting as a consultant versus a treating physician. Owing to the fact that Dr. Figuereo was the only doctor to have recommended surgery to Jones, the court found that Dr. Figuereo had:

> recommended a proposed treatment different from that of any of Plaintiff's prior health providers. In engaging in that particular activity, Dr. Figuereo ceased acting solely as a non-testifying, consulting expert and took on the role of a treating physician. As a result, any information on which Dr. Figuereo relied in proposing the possibility of surgery for Plaintiff became a subject of factual discovery, unprotected by Rule 26(b)(4).

(*Id.* at *3).

While the Court notes here that the foregoing finding in *Jones* also supports the Court's conclusions above that the doctors who diagnosed and/or recommended further treatment for the bellwether Plaintiffs in this case are treating physicians for purposes of discovery, it is the following observation by the *Jones* Court that is germane to whether exceptional circumstances alternatively justify the discovery Sanofi seeks here.

The *Jones* Court went on to find that even if the reports of Dr. Figuereo were protected under Rule 26(b)(4), exceptional circumstances would mandate their disclosure. (*Id.*). The Court leaned heavily on the reasoning of yet another case similar to this one, *In re Asbestos Products Liability Litigation (No. VI)* ("*In re Asbestos Litigation*"). In that case, doctors who

8

had issued "diagnosing reports or opinions" that the plaintiffs had produced in the litigation moved to quash subpoenas that were served on them on the grounds that they were non-testifying, consulting experts whose information was protected under Rule 26(b)(4). That court disagreed, explaining:

> [T]he only evidence of the scope and nature of Plaintiff's injuries are the reports made by [the doctors] in the course of their screening examinations of Plaintiffs. These diagnostics constitute the Doctors' opinion as to whether the Plaintiffs they examined were afflicted with asbestos related disease or malignancy. Without the Doctors' opinions, the diagnostic reports are meaningless. By producing and relying upon the opinion of the Doctors, the Plaintiffs have, de facto, designated the Doctors as expert witnesses in this case. Plaintiffs, having produced and relied upon the opinions of [the doctors] in this litigation, cannot now claim that [the doctors] are non-testifying experts entitled to the consulting expert privilege under Rule 26(b)(4)(B).
>
> *In re Asbestos Lit.*, 256 F.R.D. 151, 159 (E.D. Pa. 2009)(*cited in Jones*, 2012 WL 1029469 at *3).

The *Jones* Court noted that the foregoing reasoning took into account both "exceptional circumstances" under Rule 26(b)(4) and waiver, the latter of which is not at issue in this case. However, that Court noted that:

> Just as the screening doctors in *In re Asbestos Litigation* were the only witnesses to have issued an opinion regarding the plaintiffs' afflictions, the only evidence in this case that a doctor has prescribed surgery as a treatment course comes from Dr. Figuereo. This fact qualifies as an "extraordinary circumstance [ ]."
>
> *Id.* at *4

And so it is here. As for Francis, she identifies Claiborne as the only physician who conducted a "skin biopsy" and Dr. Thompson as the only physician to have issued a

9

"Dermatopathology Report." Because that pathology report includes a diagnosis related to her medical claims, exceptional circumstances would mandate its disclosure even if it were not otherwise discoverable.

Similarly, Plaintiffs Earnest and Durden do not identify in their respective PFS's any pathology reports or diagnoses related to scalp biopsies and Durden, although claiming mental or emotional injury, does not identify her treatment or diagnosis by the providers whose records have been produced to the Court and that contain both diagnoses and recommendations for future care. Accordingly, exceptional circumstances would mandate their disclosure even if they were not otherwise discoverable.

### D. Similar Records of Other Plaintiffs

The rationales of this Order apply equally to other Plaintiffs in this MDL. The PFS's and Pretrial Orders governing them require without question that materials such as these doctors' reports be identified and produced in this litigation. This Order should be read broadly by the PSC and individual counsel to apply, not only to pathology reports derived from scalp biopsies, but to any similar medical records and treatment. To the extent counsel have any doubt as to whether the records and opinions of experts deemed "consulting experts" by counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log so that Defendants have appropriate notice and an opportunity to traverse such privilege claims.

### III. CONCLUSION AND ORDER

Based upon the foregoing, the Court orders as follows:

The records and photographs of bellwether Plaintiff Francis submitted for *in camera* review shall be produced by the PSC to Sanofi no later than **September 28, 2018** unless an objection to this Order and Reasons is lodged on or before that date.

The records and photographs of bellwether Plaintiff Durden submitted for *in camera* review shall be produced by the PSC to Sanofi no later than **September 28, 2018** unless an objection to this Order and Reasons is lodged on or before that date.

The pathology report and photographs of bellwether Plaintiff Earnest submitted for *in camera* review shall be produced by the PSC to Sanofi no later than **September 28, 2018** unless an objection to this Order and Reasons is lodged on or before that date.

To the extent that similar photographs and medical records exist for any other Plaintiff listed as an MDL Trial Number 1 Plaintiff, such documents shall be produced no later than **September 28, 2018** unless an objection to this Order and Reasons is lodged on or before that date. To the extent counsel have any doubt as to whether additional records and opinions of experts deemed "consulting experts" by Plaintiffs' counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log no later than **September 28, 2018** so that Defendants have appropriate notice and an opportunity to traverse such privilege claims.

To the extent that similar photographs and medical records exist for any other Plaintiff listed as an MDL Trial Number 2 Plaintiff, such documents shall be produced no later than **November 29, 2018.** To the extent counsel have any doubt as to whether additional records and opinions of experts deemed "consulting experts" by Plaintiffs' counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log no later than **November 29,**

11

**2018** so that Defendants have appropriate notice and an opportunity to traverse such privilege claims.

To the extent that similar photographs and medical records exist for any other Plaintiff listed as an MDL Trial Number 3 Plaintiff, such documents shall be produced no later than **January 25, 2019**. To the extent counsel have any doubt as to whether additional records and opinions of experts deemed "consulting experts" by Plaintiffs' counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log no later than **January 25, 2019** so that Defendants have appropriate notice and an opportunity to traverse such privilege claims.

To the extent that similar photographs and medical records exist for any other non-bellwether Plaintiff, such documents shall be produced no later than **March 29, 2019**. To the extent counsel have any doubt as to whether additional records and opinions of experts deemed "consulting experts" by Plaintiffs' counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log no later than **March 29, 2019** so that Defendants have appropriate notice and an opportunity to traverse such privilege claims.

The PFS of any Plaintiff who produces additional medical records pursuant to this Order shall be supplemented accordingly.

New Orleans, Louisiana, this __24th__ day of _____September_____, 2018.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE