UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)         MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR REVIEW OF DISCOVERY ORDER AUTHORIZING DISCOVERY FROM CONSULTING EXPERTS BEFORE ANY EXPERT WITNESS DESIGNATION IS DUE**

Pursuant to Federal Rule of Civil Procedure 72, Plaintiff's Steering Committee (PSC) respectfully appeals the September 24, 2018 Order of Magistrate Judge North (Rec. Doc. 4259), ordering the production of the records of retained consulting medical experts whom the PSC retained to prepare for trial and whom have not been designated to appear as expert witnesses at trial—a designation that is not required at this time.

**INTRODUCTION**

The issue is the discoverability under the Federal Rules of Civil Procedure of materials (*i.e.*, reports) from three consulting expert retained by the PSC in preparation for the upcoming bellwether trials—namely, a forensic psychiatrist, a neuropsychologist, a dermatologist, and a dermatopathologist. These consultants have not treated or prescribed any course of treatment for any of the initial Trial Plaintiffs.[1] They were selected, retained, and paid by PSC, who directed their work in evaluating or facilitating evaluations of Trial Plaintiffs, which work product was and is being used, not in Plaintiffs' treatment, but by counsel in preparation for their trials. Plaintiffs'

---

[1] The three "Trial Plaintiffs" are Antoinette Durden, Tanya Francis (first alternate), and Barbara Earnest (second alternate).

1

expert dermatopathologist never personally interacted with the Trial Plaintiffs; rather, he only dealt with evaluation of half of the biopsied tissue sample and preserved the other half to be provided to Defendants for their own expert's analysis.  To date, the Defendants have failed to provide any direction on where this preserved biopsy tissue should be sent, despite Plaintiffs' multiple offers **since May 29, 2018** to provide half of the tissue samples and copies of the pathology slides. To be clear, these expert consultants' exposure to Plaintiffs was not at the direction of a primary treating physician, or any physician, and these consultants have not referred any trial plaintiff for further evaluation or any treatment.

Through an inadvertent disclosure in the discovery process, Sanofi identified the existence of two of these four expert consultants and sought to compel production of their records.  This is despite the fact that Rule 26(b)(4)(D) states that, except in limited and exceptional circumstances:

> a party may not [. . .] discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Fed. R. Civ. P. 26(b)(4)(D).  Nonetheless, over several months, Sanofi and the PSC litigated the production of the consulting experts' records before Magistrate Judge North, which, following an *in camera* review of the disputed materials, culminated in the appealed-from Order broadly granting the discovery sought by Sanofi and denying Plaintiffs the work product protections afforded under Rule 26.

The Magistrate Judge committed reversible error in ordering the PSC to produce materials from these consulting experts.  His Order and Reasons held that these reports and records were discoverable on the basis of: (1) his summary conclusion that these physicians were "treating" physicians, despite the greater evidence to the contrary; and (2) his misapprehension that the FRCP provisions protecting records of Plaintiffs' experts from discovery were not applicable simply

2

because they were not expressly set forth in the Plaintiff Fact Sheet (PFS). The Magistrate Judge further ruled that, even if the records at issue were covered by FRCP 26(b)(4)(D) in this case, "exceptional circumstances" nonetheless exist that justified ordering their production—simply because the retained consulting experts' reports contain diagnoses that are relevant the Plaintiffs' claims.

These rulings are clearly erroneous and contrary to the law. <u>First</u>, these retained doctors' affiliations with the Plaintiffs at issue lack the indicia of a "treating" physician relationship, and the circumstances under which the sought-after records were created place them soundly in the domain of commissioned work by retained consulting experts. Second, the PFS does not supersede the provisions of the FRCP—particularly Rule 26(b)(4)(D)—but rather stipulates and particularizes Plaintiffs' initial discovery obligations *pursuant to* the Rules. Third, no "extraordinary circumstances" are present such that it would be "impracticable" for Defendants "to obtain facts or opinions on the same subject by other means," as is required in order to except this information from the protections of Rule 26(b)(4)(D).

## **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(l)(A), a magistrate judge is authorized to rule directly on a non-dispositive pretrial motion. However, when objections are raised to such a ruling, a district court must consider them and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Castillo v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995).

District courts in the Fifth Circuit have held the "clearly erroneous" standard applies to the factual components of the magistrate judge's decision. *See, e.g., Lebron v. ENSCO Offshore Co.*, No. CIV.A. 12-1901, 2013 WL 3967165, at *2 (W.D. La. July 31, 2013)*; Lahr v. Fulbright & Jaworski, LLP.,* 164 F.R.D. 204, 208 (N.D. Tex. 1996). However, the legal conclusions of the

magistrate judge are reviewable *de novo*, and the district judge reverses if the magistrate judge erred in some respect in his legal conclusions, making them "contrary to law." *Id.*; *see also Spillers v. Chevron USA Inc.*, 2013 WL 869387, at *3 (W.D. La. Mar. 6, 2013); *United States S.E.C. v. Commonwealth Advisors, Inc.*, 2016 WL 1364141, at *5 (Apr. 6, 2016, M.D. La.). Finally, "the abuse of discretion standard governs review of 'that vast area of . . . choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.'" *Lebron,* 2018 WL 3967165, at *2; *Spillers,* 2013 WL 869387, *3.

Here, various rulings before the Court require separate consideration under these standards. First, whether the observations and opinions contained in retained consulting experts' records memorialize medical *treatment* of the Plaintiffs is a question of fact that should be reviewed under the "clearly erroneous" standard. Second, whether the terms of the PFS supersede the provisions of the Federal Rules of Civil Procedure (specifically, Rule 26(b)(4)(D)(ii)) is a question of law that is reviewable *de novo*. Third, whether it would be "impracticable" for Defendants to obtain facts or opinions on the same subject of these experts' records by other means is a question of fact that should also be reviewed under the "clearly erroneous" standard.

## STATEMENT OF FACTS

As is normal in complex litigations, the PSC has hired testifying and non-testifying experts. Pursuant to Case Management Order ("CMO") 14, the PSC is required to designate and provide reports for testifying experts on November 7, 2018, for the First Trial. No CMO exists requiring that the PSC designate non-testifying experts or produce their reports. Plaintiffs should not be required to make this determination before their deadline for expert disclosures.

Specifically, the PSC hired a forensic psychiatrist, Dr. John Thompson, to conduct psychological assessments of Trial Plaintiffs for the PSC's use in developing these cases and

4

preparing for trial.  Dr. Thompson provided no treatment for Trial Plaintiffs, but rather only provided opinions directly to the PSC, who paid him directly. Likewise, the unnamed neuropsychologist, was retained by the PSC to conduct neuropsychological assessments of Trial Plaintiffs for the PSC's use in developing these cases and preparing for trial.  The neuropsychologist provided no treatment for Trial Plaintiffs, but rather only provided opinions directly to the PSC, who paid him directly.

In addition, the PSC hired a dermatologist, Dr. Cole Claiborne, to perform scalp biopsies of Trial Plaintiffs to obtain tissue samples for further expert evaluation.  Dr. Claiborne did not analyze these tissue samples or form any opinions related to the tissue samples, nor did he decide where to send the tissues samples.  Dr. Claiborne forwarded the tissue samples to a third-party dermatopathologist at the direction of the PSC for analysis for trial preparation. He was paid directly by Plaintiffs' counsel for these services.  Dr. Claiborne's office generated a pro forma medical record for each Plaintiff when she presented to give the tissue sample and obtained written consent from the Plaintiffs to extract the samples, as is both customary and necessary.  The PSC has produced these records to Sanofi and has offered to produce the tissue samples in order to allow Sanofi's experts to conduct their own examination.

The PSC likewise selected and retained an undisclosed dermatopathologist to interpret these tissue samples in preparation for trial.  The pathologist never observed, saw, spoke to, or evaluated any Trial Plaintiff. The pathologist utilized his skill, education, and experience in pathology in forming impressions of what the tissue samples demonstrated, which opinions he then communicated directly to the PSC in a written report that was provided and not provided to Plaintiffs. The pathologist was paid directly by counsel for this work.

5

Sanofi subsequently sought discovery related to these retained, consulting experts, which includes examination notes, expert opinions, punch biopsy samples, dermatopathology reports. The PSC has resisted these discovery requests with the exception of the punch biopsy tissue samples, which PSC has offered for evaluation and analysis by Sanofi's experts and which Sanofi will not accept absent an agreement to produce all of the materials that the PSC believes are protected by FRCP 26(b)(4)(D)(ii). The PSC also has provided Defendants with a copy of Dr. Claiborne's records related to the punch biopsies.

## ARGUMENT

### A. The Federal Rules Protect from Discovery the Facts Known and Opinions Held by Non-Testifying Consulting Experts Retained by the PSC.

Federal Rule of Civil Procedure 26(b)(4)(D) protects from discovery "facts known or opinions held by an expert" retained by a "party [. . .] to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). "This rule is simply an application of the work product rule. The consultant's work will, by definition, be work product because the party uses the consultant," *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012), "to prepare for trial," Fed. R. Civ. P. 26(b)(4)(D). The Rule demands that a party seeking discovery of "facts known or opinions held" by a non-testifying expert show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).[2]

The Rule thus "affords some protection to counsel who wish to obtain non-testifying experts to assist in trial preparation." *Evans v. T.E. Ibberson Co.*, No. CIV.A. 12-2597, 2013 WL

---

[2] Although Fed. R. Civ. P. 26(b)(4)(D)(ii) does not expressly address the discoverability of the identity of experts, "the predominant view among courts addressing the issue is that the showing of 'exceptional circumstances' required by Rule 26(b)(4)(B) will be required even in connection with discovery of the identity of such experts." *Cooper v. Revere Life Ins. Co.*, No. CIV. A. 96-2266, 1997 WL 289706, at *1 (E.D. La. May 28, 1997) (collecting authorities).

6796717, at *2 (E.D. La. Dec. 20, 2013) (quoting 8A Fed. Prac. & Proc. Civ. § 2032 (3d ed.)). It does not, however, "present an unfair burden on the parties, because 'each party has a full opportunity to retain its own experts; unlike fact witnesses they are not unique and, in an era when experts' services are widely marketed, the supply of potential witnesses is often large.'" *Id*. (quoting same). Instead, the "[Rule 26(b)(4)(D)] recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination"; and it is "designed to prevent a party from building his case on the diligent preparation of his adversary." *Shell Oil*, 132 F.R.D. at 440.[3]

B. **The Magistrate Judge Clearly Erred in Finding that the Plaintiffs' Expert Work in These Cases Amounted to "Treatment" of Plaintiffs.**

The Magistrate Judge's cursory finding that the PSC's retained consulting experts provided "treatment" to Bellwether Plaintiffs is clear error. Specifically, the Magistrate Judge's Order and Reasons found that the experts' work in these cases was "treatment" because their commissioned evaluations "contained diagnoses or recommendation for future treatment." (Opinion and Order 2.)[4] In so ruling, the Magistrate Judge disregarded not only all countervailing evidence regarding

---

[3] In this quote, the court in *Shell Oil* references Rule 26(b)(4)(B), which was later renumbered (D) and (E). Fed. R. Civ. P. 26 (2010 Amendments).

[4] In an preceding Order and Reasons, the Magistrate Judge found that Dr. Claiborne's involvement with the Trial Plaintiffs amounted to treatment because each signed a form consenting to the procedure and was advised how to care for herself post-operatively, e.g., by keeping the biopsy site clean and returning for suture removal. It is unclear from the appealed-from Order and Reasons of September 24th to what extent it, too, rested on this observation, but in an abundance of caution, Plaintiffs will counter here the taking of a tissue sample for analysis is not "treatment" of the conditions at issue in Plaintiffs' claims: cancer and alopecia. Although this procedure, as the Magistrate Judge noted, required both written consent and post-operative instructions, to the extent these features indicate that treatment occurred, it is for treatment *for the biopsy itself*, a discrete event taken for a non-treatment related purpose— development of Plaintiffs' cases for trial. Regardless, as stated previously, the PSC has offered to provide this evidence to Sanofi in order to remove the potential for prejudice of the kind that Rule 26(b)(4)(D)(ii) aims to prevent.

7

the genesis of these reports, but also the great weight of jurisprudence distinguishing "treaters" from retained consulting experts more generally.

This important distinction most often arises in the context of discovery disputes over expert disclosures for *testifying* experts—specifically, the oft-litigated issue of whether they are required to provide written reports under FRCP 26(a)(2). In this context, "Experts are retained for purposes of trial and their opinions are based on knowledge acquired or developed in anticipation of litigation or for trial." *Parker v. NGM Ins. Co.*, No. CV 15-2123, 2016 WL 3198613, at *2 (E.D. La. June 9, 2016) (citing *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996)). Indeed, where testimony "consists of opinions based on scientific, technical, or other specialized knowledge regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation, the testimony is that of an expert." *Hooks v. Nationwide Hous. Sys., LLC*, No. CV 15-729, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016), *appeal dismissed sub nom. Hooks v. Nationwide Hous. Sys., L.L.C.*, No. 16-30916, 2016 WL 10571681 (5th Cir. Dec. 8, 2016) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757, n. 2 (7th Cir. 2004) (internal quotations omitted)). Opinions "as to causation or as to future medical treatment" have "been considered the province of expert[s]." *Id.*

Meanwhile, the "quintessential example of a non-retained expert is the treating physician of a personal injury plaintiff, whose testimony, while necessarily based on his expert opinion as to diagnosis and treatment, is not specially formulated for trial purposes and is thus not subject to the Rule 26 reporting requirement." *Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.,* No. CIV.A. 07-8446, 2009 WL 981724, at *4 (E.D. La. Apr. 9, 2009) ("the Witnesses were not specially retained or employed by Beechgrove for purposes of this litigation, and thus were exempt from the Rule 26(a)(2)(B) reporting requirement"). Treating

physicians are those "personally involved in the events giving rise to the litigation" as compared to a physician "without prior knowledge of the facts of the case, recruited to provide an expert opinion." *Tolan v. Cotton*, No. CIV.A. H-09-1324, 2015 WL 5332171, at *4 n.2 (S.D. Tex. Sept. 14, 2015); *see also Gray v. Vastar Offshore*, No. CIV.A. 04-1162, 2005 WL 399396, at *1 (E.D. La. Feb. 14, 2005) (citing *Philips v. Occidental Chemical Corp.*, No. Civ. A. 99-828, 2000 WL 1092857, at *2 (E.D. La. Aug. 2, 2000) ("[W]ritten reports are not required for treating physicians whose testimony and opinions derive from information during *actual treatment of the patient*, rather than *from subsequent evaluation* as a specially retained expert." (emphasis added).) Courts have also found that a physician "steps into the shoes of a retained expert" where she her opinions go "beyond what was necessary to provide appropriate care for" a plaintiff. *Shelton v. Wise*, No. A-07-CA-063 RP, 2009 WL 10699993, at *3 (W.D. Tex. Sept. 1, 2009) (citing *Thomas v. Consol. Rail Corp.*, 169 F.R.D. 1, 2 (D.Mass. 1996)).

Moreover, "when an attorney refers a physician to a client, the physician crosses the line from a treating physician into the realm of a specially retained expert [. . . .]" *Tolliver v. U-Haul Co. of Texas*, No. 2:09 CV 313, 2011 WL 3626328, at *3 (W.D. La. Aug. 17, 2011) (citing *Hall v. Sykes*, 164 F.R.D. 46, 49 (E.D. Va. 1995)). "[S]uch a reference by an attorney to a physician for treatment raises the appearance that the physician was specially employed to provide expert opinion." *Id.*

The materials at issue in this dispute amount plainly and simply to protected work product of a consulting expert not designated to testify that was never intended to be utilized for purposes of treatment. The opinions contained therein are not based on knowledge acquired and developed in the "actual treatment of plaintiff" during "the events giving rise to the litigation," nor were they "formed during the scope of interaction with the Plaintiffs prior to litigation." Rather, these

9

materials contain the impressions of physicians selected, hired, and paid for directly by attorneys well after the institution of litigation for purposes of trial preparation.

The resulting work products were provided directly to counsel—and not to the Plaintiffs or the physicians who actually treated them. This is because they were commissioned for the benefit of the Plaintiffs' litigation strategies and not their courses of medical treatment. To call this process by the PSC and its consulting experts "treatment" makes little conceptual sense when one considers that the same is currently unfolding on the Defendants' side.

Indeed, defense counsel has represented to Your Honor and Lead and Liaison Counsel both its retention of consulting experts in preparation for MDL Plaintiffs and its experts' ongoing analysis of non-trial plaintiffs' PFS answers and productions. Any work done by Defendants' medical consultants in these cases would obviously never be considered "treatment" of the Plaintiffs—yet it is being performed, and will continue to be performed, on the very same issues and for the very same aims of trial preparation. This is especially so of any opinions and conclusions defense consultants form after evaluating the tissue samples that Magistrate Judge ordered be provided and the PSC has volunteered to provide. How can it be that when Plaintiffs' experts analyze these specimens it is "treatment," but that when Defendants' experts do the same it is not? The distinction cannot be justified because the consulting expert saw the Plaintiffs in person for a short period of time. Under the logic of the Magistrate Judge's Order and Reasons,

Defendants would have both their own and Plaintiffs' consulting experts' opinions by the end of this process, while Plaintiffs would only have their own.

For these reasons, the Magistrate Judge's finding that the work of Plaintiffs' non-testifying consulting experts in the Trial Plaintiffs' cases constituted "treatment" is clearly erroneous and should be reversed.

### C. The Plaintiff Fact Sheet Cannot Require Production of Materials Clearly Protected by the Federal Rules, Which Govern Discovery in This MDL.

The Magistrate Judge's Order and Reasons proceeded in part on the assumption that the PFS's terms somehow supersede the provisions of the Federal Rules of Civil Procedure, thereby requiring production of Plaintiffs' consulting physicians' records. However, the provisions of the PFS exist *subject to*—and not independently of— the provisions of the Federal Rules. Thus, any ruling that otherwise protected work product "should be produced as responsive to the PFS" is contrary to law and must be reversed.

The appealed from Order and Reasons held:

> The Fact Sheets and Pretrial Orders applying to them make no mention of and provide no allowance for Plaintiffs' counsel unilaterally deciding that they can carve out medical and mental-health examination records, pathology reports, and the like— without even identifying them on a privilege log—simply because they sent their clients to those medical providers and now claim it was for litigation purposes only. The PFS is an exhaustive and detailed, 39-page document that leaves little to chance in terms of its scope. The Court has no doubt that the litigants and the District Judge could have made express provisions for protection of these materials had that been their intention.

(Order & Reasons 4.)

The PFS is to be "completed pursuant to the Federal Rules of Civil Procedure governing discovery." (PFS, Rec. Doc. 236-1.) Subpart (b) of Rule 26, which is titled "Discovery Scope and

11

Limits," provides protections for various materials relating to trial preparation by experts. These include the following provision, relevant here:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i)   as provided in Rule 35(b); or
>
> (ii)  on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).

The fact that the PFS is silent regarding those work-product protections enshrined in the FRCP does not render those protections unavailable to Plaintiffs. There is simply no rationale for concluding that the parties, in negotiating the scope of the PFS, intended that either party abandon their work product protections as a precondition to bringing their claims. Moreover, the Order and Reasons implicitly concedes the applicability of these protections in finding the existence of "exceptional circumstances" under Rule 26(b)(4)(D). For these reasons, the PFS does not provide an independent basis for requiring the production of the non-testifying retained consulting expert materials, and the Magistrate Judge's ruling to the contrary is contrary to law and warrants reversal.

**D. The Magistrate Judge Clearly Erred in Finding that "Exceptional Circumstances" Existed that Would Make It "Impracticable" for Defendants to Obtain Facts or Opinions on the Subjects of Plaintiffs' Consulting Experts' Opinions.**

The Magistrate Judge's Order and Reasons found that Sanofi "has convincingly invoked the 'exceptional circumstances' exception to Rule 26(b)(4)(D) as grounds for production of the materials." (Order and Reasons 6-7.) However, the grounds stated therein are not supported by the case law cited in this Order.

Rule 26(b)(4)(D)(ii) demands that a party seeking discovery of "facts known or opinions held" by a non-testifying expert show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). "Exceptional circumstances" exist when it is "impractical for the party to obtain facts or opinions on the same subject by other means." *Id.* This burden is a "heavy" one and "has been interpreted by courts to mean an inability to obtain equivalent information from other sources." *In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La.), *opinion clarified*, 134 F.R.D. 148 (E.D. La. 1990) (collecting cases). "The party seeking discovery of a non-testifying expert"—here, Sanofi—"carries the burden of showing exceptional circumstances." *Bank of Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 44 (S.D.N.Y.1997) (citation omitted).

The Magistrate Judge's cited "exceptional circumstances" amount to the following: (1) for Bellwether Plaintiff Tanya Francis, that the pathology report at issue "sets forth diagnoses related to [her] alopecia claims," despite her "having checked 'no' on the PFS to the question whether she had been diagnosed by a healthcare provider for the injury she alleges in the lawsuit" (Order and Reasons 7, 9), and that her PFS identifies the pathologist "as the only physician to have issued a 'Dermapathology Report'"; (2) and, for Bellwether Plaintiffs Barbara Earnest and Antoinette Durden, that they "do not identify in the respective PFSs' any pathology reports or diagnoses related to scalp biopsies" and that Ms. Durden "does not identify her treatment or diagnosis by the providers whose records have been produced to the Court and that contain both diagnoses and recommendations for future care" (*Id.* at 9-10.)

Rather than explain exactly how these circumstances prohibit or even impede Sanofi's ability to obtain any facts or opinions on the same subjects from its own experts (remember that Sanofi's retained experts will have access to both the Plaintiffs' tissue samples and the Plaintiffs

13

themselves for questioning), the Order and Reasons simply rest on an assertion that the facts align with *Jones v. Celebration Cruise Operator, Inc.*, No. 11-61308-CIV, 2012 WL 1029469 (S.D. Fla. Mar. 26, 2012), and the cases cited therein. These cases do not support the Magistrate Judge's conclusion.

For instance, in *Jones*, the court's holding was based partly on its finding of Rule 26(b)(4)(D) inapplicable to the retained expert. There, the plaintiff initially hired a doctor as a non-testifying, consulting expert only. Then, during the course of the doctor's examination of the plaintiff, the doctor recommended to the plaintiff "a proposed treatment different from that of any of [p]laintiff's prior health providers." *Id*. at *3. In advising the plaintiff regarding treatment, the doctor "ceased acting solely as a non-testifying, consulting expert and took on the role of a treating physician," putting him outside the purview of Rule 26(b)(4)(D). *Id*. Here, in contrast, neither Dr. Thompson nor the dermatopathologist provided any treatment recommendation to any trial plaintiff. Instead, these doctors reported to counsel and never departed from their role as consultants. No such circumstances are present here. *Jones* is further distinguishable because the court there found it impracticable for defendants to obtain facts and opinions relating to plaintiff's need for surgery from other sources because the doctor in question was, out of all the doctors who had treated or evaluated the plaintiff, the only one to have ever recommended a surgical course of treatment. *Id*. at *4. Here, no treatment has occurred as a result of any of the consulting experts' review.

Also distinguishable is *Caribbean I Owners' Association, Inc. v. Great American Insurance Co. of New York*, No. CIV.A. 07-00829-KD-B, 2009 WL 499500, at *3 (S.D. Ala. Feb. 20, 2009), cited in the *Jones* opinion. There the plaintiff, before a hurricane, had retained an expert in anticipation of litigation to evaluate the condition of a building. The court concluded that

14

exceptional circumstances existed to allow discovery from the expert because no other person could testify as to the condition of the building before the storm. *Id.* at *2-3. Dr. Thompson, Dr. Claiborne, and the dermatopathologist, however, are not comparable to the expert in *Caribbean I*: They hold no unique facts that Sanofi cannot obtain by other means and through its own experts.[5]

Finally, the *In re Asbestos Litigation* opinion, 256 F.R.D. 151 (E.D. Pa. 2009), which is cited in both the Order and Reasons and the *Jones* opinion, is clearly distinguishable. Those are that (1) "[b]y producing and relying upon the opinion of the Doctors, the Plaintiffs have, de facto, designated the Doctors as *expert witnesses* in this case," taking them out of the protections of Rule 26(B)(4)(B); and (2) regardless, those opinions constituted "*the only evidence of the scope and nature of Plaintiff's injuries*." *Id.* at 159 (quoted in Order and Reasons 9; *Jones*, 2012 WL 1029469, at *3). Indeed, in each of the cases on which the Order and Reasons bases its ruling, Rule 26(B)(4)(D) was (1) either not applicable because the consulting expert was found to be a treater or a testifying witness or because the expert's opinions were put at issue; or (2) justifiably set aside because the expert was the only possible source for the type of information sought.

Because neither situation is applicable here, and because Sanofi can obtain information and opinions on these subjects through other means, including its own experts, no "exceptional circumstances" exist that would warrant disregarding Rule 26(B)(4)(D)'s protections. Accordingly, the Magistrate Judge's ruling was clearly erroneous and should be reversed.

---

[5] Even if this were a situation where the PSC's experts were wearing multiple proverbial hats, which it is not, "[e]very court to address this 'multiple hats' problem has concluded that an expert's proponent still may assert a privilege over such materials, but only over those materials generated or considered uniquely in the expert's role as consultant." *S.E.C. v. Reyes*, No. C06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) (collecting authorities).

## CONCLUSION

For the foregoing reasons, the Court should reverse the orders of the Magistrate directing the PSC to produce documents related to the facts known and opinions held by consulting experts whom the PSC retained to prepare for trial and whom have not been designated to appear as expert witnesses at trial—a designation that is not required at this time.

Dated: October 5, 2018

Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura (on the brief)
GIBBS LAW GROUP LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
The Lambert Firm, PLC
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
ejeffcott@thelambertfirm.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS