UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                              MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                         SECTION "H"

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REVIEW OF
DISCOVERY ORDER

# INTRODUCTION

For months, Plaintiffs have defied a Court Order that the PSC never timely appealed. The present appeal should be denied immediately. Plaintiffs in this litigation allege that they suffered permanent hair loss after treatment with Taxotere® (docetaxel) for breast cancer. But many Plaintiffs have no appreciable hair loss, or their hair loss is consistent with the changes of aging and hormonal status—and even fewer have actually received medical treatment or diagnosis for their alleged injury. Facing this utter lack of evidence corroborating the alleged injury, the PSC has undertaken to make appointments for some Plaintiffs (how many and which are unknown apart from the three trial pool cases) to undergo biopsies of their scalps by a medical doctor to have tissue physically removed, evaluated, and tested. Similarly, many Plaintiffs allege no economic damages in the litigation, or allege pain and suffering damages only. Even fewer Plaintiffs have actually undergone treatment for their alleged mental and emotional damages. Facing this utter lack of evidence corroborating the alleged damages in this litigation, the PSC has undertaken to make appointments for some Plaintiffs (again, with defendants not knowing which apart from the trial pool cases) to be psychologically evaluated and interviewed. The PSC cannot veil medical diagnosis and treatment for the alleged injury and

1

damages in these cases by claiming privilege over them. Their appeal ought to be immediately denied.

## BACKGROUND

### June 13, 2018 Order

In May 2018, it became evident that Plaintiffs had seen medical doctors without disclosing them in their Plaintiff Fact Sheets. On June 13, 2018, after multiple rounds of briefing and a hearing on the issue, Judge North ordered the Plaintiff Steering Committee (PSC) to produce the medical records documenting Dr. Martin Claiborne's treatment of trial plaintiffs. Dr. Claiborne is a dermatologist who personally examined several of the trial plaintiffs, did punch biopsies on their scalps, and sent the biopsied tissue to a pathology lab. In fact, he is the only dermatologist who ever performed such biopsies on these Plaintiffs, and is the only known dermatologist to have ever treated Plaintiff Earnest for hair loss. Despite his direct examination and care of Plaintiffs, only Plaintiff Francis has ever disclosed him as a treating physician—and that only after Defendants had stumbled upon his name and raised the issue.

Plaintiffs argued that their failure to disclose Dr. Claiborne and provide his records was justified because he is a consulting expert hired by Plaintiffs' counsel. As such, Plaintiffs argued, he was protected from *all* discovery unless Plaintiffs disclosed him as a testifying expert on **November 7, 2018**. Judge North disagreed, concluding that experts can wear two hats: "one as a specially employed expert in anticipation of litigation and one as an ordinary witness."[1] Because Dr. Claiborne is an "actor" or "viewer"[2] of essential facts of Plaintiffs' cases—the

---

[1] *See Jones v. Celebration Cruise Operator, Inc.*, No. 11-cv-61308, 2012 WL 1029469, at *3 (S.D. Fla. Mar. 26, 2012); *Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York*, No. 07-cv-0829, 2009 WL 499500, at *1–2 (S.D. Ala. Feb. 20, 2009) (quoting *Essex Builders Grp. Inc. v. Amerisure Ins.*, 235 F.R.D. 703 (M.D. Fla. 2006) (citing *In re Shell Oil Refinery*, 134 F.R.D. 148, 150 (E.D. La. 1990)).
[2] *See* Fed. R. Civ. P. 26(b)(4), Notes to 1970 Amendments (the consulting expert protections do not apply to experts who acquired information by being an "actor or viewer with respect to the transactions or

diagnosis and treatment of hair loss—Judge North concluded that Dr. Claiborne's objective, factual medical records were not shielded from discovery:

> Sanofi is entitled to documents related to the facts of Dr. Claiborne's examination of any Plaintiff, including when and where such examination occurred, Dr. Claiborne's observations of Plaintiffs, what samples or tissues were taken and from where, what was done with those samples and the objective results of any testing of those samples. Sanofi is not yet entitled to information pertaining to opinions that Dr. Claiborne may have concerning testing of any samples taken by him and must await the period for expert discovery to conduct such discovery.

*See* June 13, 2018 Order (Rec. Doc. 3074) at 2, attached as **Exhibit A**.[3]  Judge North specifically ordered Plaintiffs to produce "the objective results of any testing of th[e tissue] samples." *Id.* Plaintiffs did not appeal the June 13, 2018 Order.

## August 7, 2018 Order

The PSC took <u>over a month</u> to produce an <u>excerpt</u> of Dr. Claiborne's medical records. They <u>never</u> fully complied with the Judge North's Order. The PSC first refused to acknowledge that Judge North's Order (*i.e.*, that medical records of physicians who have personally observed or treated Plaintiffs are discoverable) implicated the records of the other undisclosed medical providers besides Dr. Claiborne. They also ignored explicit aspects of the Order, refusing to say whether any pathology reports (*i.e.*, the "objective results" of the testing of the tissue) even existed. Defendants re-raised these issues with Judge North. On August 7, 2018, he ordered Plaintiffs to produce the records of another known—but undisclosed—treating psychiatrist (Dr. John Thompson) for *in camera* review:

> The PSC is to provide to the Court for *in camera* review the records of Dr. Thompson's meeting with any trial Plaintiff with

---

occurrences that are part of the subject matter of the lawsuit.")
[3] The Minute Entry order issued after the June 13, 2018 hearing is misdated as June 11, 2018. Judge North subsequently referred to that order as the June 13, 2018 Order and Defendants do the same herein. *See* Ex. A.

whom he met.

*See* August 7, 2018 Order (Rec. Doc. 3709) at 2–3, attached as **Exhibit B**. He also ordered briefing on the discoverability of the pathology reports:

> No later than Friday, August 18, 2018, the parties are to submit briefs on the issue of whether the withheld punch biopsy reports resulting from Dr. Claiborne's scalp biopsies of certain Plaintiffs should be produced as 'objective results of any testing of' samples taken by Dr. Claiborne.

*Id.* Plaintiffs never submitted Dr. Thompson's records for *in camera* review at that time.

### August 28, 2018 Order

Rather than address the briefing requested by Judge North, Plaintiffs reargued the June 13 Order. Plaintiffs never moved to reconsider or vacate the June 13 Order. They were time-barred from doing so. Curiously then, their August briefing argued that Judge North had "misapprehended" the Federal Rules of Civil Procedure and that he should vacate the June 13 Order. *See* August 28, 2018 Order (Rec. Doc. 3962) at 7, attached as **Exhibit C** ("As noted above, [the June 13 Order] was not objected to or appealed to the District Judge, yet the PSC is now, three months later, asking the Court to wholly reconsider and vacate its order calling for production of pathology reports. The Court declines the invitation.").

Judge North found no reason to reconsider his June 13 Order, finding his original reasoning sound and noting that Plaintiffs had not appealed the Order to this Court. He expressed concern over Plaintiffs' approach to protecting these medical records. *Id.* at 5 ("The Court is troubled by what can fairly be described as a shell game regarding the very existence of pathology reports. After lengthy discussion of the <u>content</u> of the reports and why they were privileged <u>because</u> of that content, the moment the Court stated that it wanted them produced for *in camera* review, counsel – for the first time – suggested they may not actually exist at all. It is

4

difficult to reconcile these competing narratives – how can counsel with the PSC make representations to the Court about what's in a report and in the next breath claim not to remember if they ever even saw the report or if it even exists?") (emphasis in original).

Still, because Judge North had yet to see the pathology reports, he ordered—in an "abundance of caution" —that the PSC produce the pathology reports for *in camera* review by September 5, 2018 "to determine what, if anything, should be redacted." *Id.* at 9.  The day the *in camera* production was due, the PSC emailed Judge North to request a stay of his August 28 Order to produce the pathology reports *in camera*.  After a telephone conference with the parties, Judge North denied the stay because the PSC gave "no reason or justification for [the stay]" other than their intent to appeal the Order, but he gave the PSC an additional day to comply with his August 28 Order.  *See* Sept. 6, 2018 Minute Entry (Rec. Doc. 4061).  On September 6, 2018, the PSC produced the pathology reports to Judge North with a cover letter requesting "that Your Honor refrain from making a determination of whether the documents attached hereto are protected…"  *See* Sept. 6, 2018 Ltr. from P. Lambert to Magistrate Judge North, attached as **Exhibit D**.  Even though an appeal of the August 28 Order was now moot (Plaintiffs had provided the documents to Judge North for *in camera* review), the PSC appealed the Order anyway, asking the Court to overrule Judge North's order from June.  *See* Rec. Doc. 4126 (purporting to appeal an order "denying reconsideration of the June 13 and August 7 Orders" even though the PSC never filed a motion for reconsideration of these orders).  This Court denied that appeal as moot three days later.  *See* Order (Rec. Doc. 4186) (Sept. 14, 2018).

## September 24, 2018 Order

Judge North reviewed the medical records *in camera* and determined that, consistent with his June 13 Order, these records bear "the indicia of medical treatment and/or contain[]

diagnoses or recommendation for future treatment." *See* September 24, 2018 Order (Rec. Doc. 4259) at 2, attached as **Exhibit E** (emphasis in original). And, unlike "purely consulting experts" who rely solely on the medical records of *other* providers, these diagnoses and recommendations were based on "actual meetings between the doctors and [Plaintiffs] and testing of [Plaintiffs] by those doctors." *Id.* at 6. These doctors are, thus, "actors" or "viewers"[4] of essential facts of Plaintiffs' cases—the diagnosis and treatment of hair loss. Magistrate Judge North held that these doctors are subject to discovery because (1) they did not merely "consult" Plaintiffs' attorneys—they personally examined and treated Plaintiffs so Rule 26(b)(4)(D) protections do not apply; (2) Plaintiffs are obligated by the PFS to disclose the key treatment evidenced in the medical records; and (3) even if these doctors were "consulting" experts, the facts they observed would still be discoverable under the "exceptional circumstances" exception because no other doctors have diagnosed or treated Plaintiffs for hair loss.

Given the PSC's less-than-forthcoming approach during this months-long dispute and their refusal to fully comply with, and apply, Magistrate Judge North's previous orders, he left little room for doubt. Post-litigation medical care that Plaintiffs should disclose pursuant to their PFS obligations does not become immune to discovery merely because the PSC refers Plaintiffs to those doctors:

> The rationales of this Order apply equally to other Plaintiffs in this MDL. The PFS's and Pretrial Orders governing them require without question that materials such as these doctors' reports be identified and produced in this litigation. This Order should be read broadly by the PSC and individual counsel to apply, not only to pathology reports derived from scalp biopsies, but to any similar medical records and treatment. To the extent counsel have any doubt as to whether the records and opinions of experts deemed 'consulting experts' by counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log so that

---

[4] *See supra* n.2.

> Defendants have appropriate notice and an opportunity to traverse such privilege claims.

*See* **Ex. E** at 10.

At this point it has become clear that Plaintiffs have failed to be forthcoming in their PFSs about medical diagnosis and treatment for the alleged injury and damages in these cases. Four months have passed. Plaintiffs failed to comply with the June Order. They failed to comply with the early-August Order. They sought to stay the late-August Order rather than submit the records at issue for *in camera* review. Further, the appeal they take now in October is months late. The Court should immediately deny their appeal and award any other relief the Court deems appropriate.

## **STANDARD OF REVIEW**

A magistrate judge is afforded "broad discretion" in the resolution of non-dispositive discovery disputes. *Stovall v. Steelcase, Inc.*, No. 11-cv-0779, 2012 WL 1755744, at *3 (E.D. La. May 16, 2012). When a magistrate judge's decision is appealed to the district court, the district court reviews the decision under a "clearly erroneous or contrary to law" standard. 28 USC § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under this deferential standard, a magistrate judge's decision must be affirmed unless "on the entire evidence the court is left with a definite and firm conviction that a mistake has been committed." *In re Katrina Canal Breaches Consolidated Litig.*, No. 05-cv-4182, 2008 WL 4185867, at *2 (E.D. La. Sept. 9, 2008). But if a magistrate judge's "account of the evidence is plausible in light of the record viewed in its entirety, a district judge many not reverse it." *RTC v. Sands*, 151 F.R.D. 616, 618 (N.D. Tex. 1993). "The district court may not undertake a de novo review of the magistrate's disposition." *Id.*

Plaintiffs wrongly argue that the Court should review Judge North's legal conclusions *de novo*. To argue for application of the more scrutinizing standard, they cast Magistrate Judge

7

North as having ruled that "the terms of the PFS supersede the provisions of the Federal Rules of Civil Procedure." Pls.' Br. at 4, 11. Nowhere did Judge North hold—or even imply—that the PFS "supersedes" the Federal Rules. *See* Pls.' Br. at 11. Rather, based on his review of medical records and the nature of specific medical appointments, Judge North made the factual conclusion that Dr. Claiborne and others were treating medical providers of trial plaintiffs. Judge North made the observation that the PFS requires Plaintiffs to disclose certain medical treatment—such as punch biopsy records, pathology reports, and psychiatric examinations—and that it provides no exception for Plaintiffs' attorneys to withhold such treatment "simply because they sent their clients to those medical providers and now claim it was for litigation purposes only." **Ex. E**, at 4. His inquiry was about whether the information withheld by Plaintiffs is responsive to discovery in this case and whether there is any mechanism for Defendants to know whether Plaintiffs have withheld such information. His inquiry was tailored to craft the relief necessary for Plaintiffs to answer, once and for all, what information has been withheld and, under his Order, must now be produced. Otherwise, in the ruling's apt summation, this months-long "shell game" would inevitably continue.

Magistrate Judge North made no error of law. He did not rule that the PFS "superseded" the Federal Rules. The correct standard of review, accordingly, is whether considering the entirety of his Order, it is "clearly erroneous or contrary to law."

## LAW AND ARGUMENT

This Court should affirm Magistrate Judge North's decision because it is not clearly erroneous or contrary to law. Judge North determined—after looking at the relevant medical records—that the physicians in dispute were not non-testifying or "consulting" experts as contemplated by Rule 26(b)(4)(D). And even if they were, Defendants are entitled to such

8

records under the "exceptional circumstances" exception.

### I.     Judge North Did Not Clearly Err in Finding that the Doctors are Treating Physicians.

No privilege shields from discovery a physician's personal consultation with a plaintiff—regardless of whether the physician was hired and consulted in anticipation of litigation.  *See, e.g.*, *Jones v. Celebration Cruise Operator, Inc.*, No. 11-cv-61308, 2012 WL 1029469, at *1 (S.D. Fla. Mar. 26, 2012) (holding that a physician who personally treated the plaintiff subject to discovery even though he was hired by attorneys in anticipation of litigation). This is because physicians who have personally examined the plaintiff are "actors or viewers" of the subject matter of the litigation, so they are treated "as ordinary witnesses" with respect to their observations. *See* Fed. R. Civ. P. 26(b)(4), Notes to 1970 Amendments; *see also Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996) ("[t]reating physicians testify to their personal consultation with a patient and are not considered expert witnesses…"); *Gonzalez v. Executive Airlines, Inc.*, 236 F.R.D. 73, 77 (D.P.R. 2006) ("a treating physician is an actor in the factual narrative of the case.").

Rule 26(b)(4)(D) protects information related to experts whose *sole* involvement in the case is as a non-testifying expert hired in anticipation of litigation.  Such experts generally do not have personal knowledge of the underlying facts—*i.e.* they do not personally examine and treat the plaintiff—instead, they form their opinions by reviewing medical records of other physicians and facilities. *See LaShip, LLC v. Hayward Baker, Inc.*, No. 11-cv-0546, 2013 WL 12202649, at *7 (E.D. La. Aug. 13, 2013) (an expert "comes to the case as a stranger and ***draws the opinion from facts supplied by others***, in preparation for trial"); *see also Parker v. NGM Ins. Co.*, No. 15-cv-2123, 2016 WL 3198613, at *2 (E.D. La. June 9, 2016) (holding that the relevant question in distinguishing between a treating physician and a retained expert "is whether the treating

9

physician acquired their opinions…directly through their treatment of the plaintiff."). Sometimes physicians can wear two hats: one as a specially employed expert in anticipation of litigation and one as an ordinary witness. *See, e.g.*, *In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La. 1990). When that happens, some of the information that the physician holds may be protected, while other information may be subject to disclosure. *Jones*, 2012 WL 1029496, at *3.

Here, Magistrate Judge North determined that the physicians were not protected by Rule 26(b)(4)(D) because they personally observed and treated Plaintiffs. Thus, even if they were hired and consulted in anticipation of litigation, their medical treatment is discoverable. There was nothing "summary" or "cursory" about Judge North's conclusion. *See* Pls.' Br. at 2 (arguing Judge North made a "summary conclusion" that these physicians were treaters); *see also* Pls.' Br. at 7 (arguing that Judge North made a "cursory finding" that the doctors provided treatment). Judge North instead carefully considered this issue numerous times over several months. He even took the precautionary step of looking at the records *in camera* before ordering their production. *See* **Ex. C**, at 9. Ultimately, Judge North did what all courts should do: he looked past the PSC's self-serving characterization of these doctors as "consulting experts" and, instead, considered what the doctors actually did.

Judge North determined that punch biopsies are a form of medical treatment:

> To suggest that the punch biopsies are not a form of medical treatment ignores reality and common sense. The medical records of each Plaintiff who saw Dr. Claiborne demonstrate that they each provided medical histories prior to the procedure. Each signed a 'Pathology Agreement Form' in which each agreed that she understood 'that it is at the recommendation of my physician that I have the above stated lesions removed and sent to an outside lab for pathology testing' and that each had 'been given the opportunity to either accept or deny this treatment.' Each were given 'Post Operative Instructions.' Each required sutures and a

10

> follow-up visit to have those sutures removed.
>
> It is simply not credible to suggest this was not a form of medical treatment.

*See* **Ex. C,** at 8. He further concluded that the records reviewed *in camera* were medical treatment because they "reveal both diagnoses and recommendations for future treatment" that are "based, not on the review of other providers' medical records as is usually the case with purely 'consulting' experts, but on actual meetings between the doctors and [Plaintiffs] and testing of [Plaintiffs] by those doctors." *See* **Ex. E**, at 6. Thus, these doctors' care is more fairly characterized as treatment than "work product."

Plaintiffs' argue that this finding is "clearly erroneous" because ***all*** post-litigation medical care done at the direction of Plaintiffs' attorneys should be subject to Rule 26(b)(4)(D)'s protections. They cite no cases supporting such a broad proposition,[5] they ignore cases holding otherwise,[6] and they fail to account for circumstances where physicians are both treaters and experts. This is not a fact pattern where an ordinary treater is later designated by a party as a non-retained expert because his or her qualifications certify her as such.[7] That is an entirely different body of law about whether non-retained experts must submit reports. The issue here is about Plaintiffs' lawyers hiring out ordinary medical care that they then do not disclose.

---

[5] Plaintiffs instead rely on cases analyzing an entirely different legal issue and that, in fact, support Judge North's approach. *See Tolliver v. U-Haul Co. of Texas*, No. 2:09-cv-313, 2011 WL 3626328, at *1–*2 (W.D. La. Aug. 17, 2011). In *Tolliver*, for example, the plaintiff tried to avoid providing an expert report as required by the Federal Rules by calling a doctor that had treated him to offer an expert opinion. Instead of accepting the plaintiff's characterization of the doctor as a "treating physician" who did not need to provide an expert report, the court considered what the doctor intended to do at trial. Because the doctor intended to offer expert opinion, an expert report was required. Though *Tolliver* and the other cases cited by Plaintiffs analyze a different legal question, they demonstrate that courts do not summarily accept plaintiffs' attorneys' label of physicians as determinative. Courts, instead, consider what the physicians actually do. Here, Judge North concluded—based on their medical records—that these physicians did not just "consult" with Plaintiffs' attorneys in preparation for trial. They provided discoverable medical treatment. *See, e.g.*, *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D. Cal. 1986) (the information possessed by physicians who are "percipient fact witnesses…should be freely accessible to both parties…as would be the case with any other ordinary fact witness.").
[6] *See, e.g.*, *Jones*, 2012 WL 1029496, at *3.
[7] *See supra* n.5.

11

Plaintiffs build their entire argument on the flawed premise that these physicians are no different than Defendants' consulting experts. But the two are not comparable. These physicians evaluated Plaintiffs in their offices, observed their alleged injury, and either treated or evaluated Plaintiffs' physical or mental condition. Defendants' experts have no such opportunity and are instead forced to review medical records of others and the handful of photos produced by Plaintiffs, many of which are poor quality. Imagine if Defendants conducted IMEs of Plaintiffs and claimed that not only the identity of the doctors, but the fact of their having been an IME, and the objective results thereof were not discoverable.

Plaintiffs also do not reconcile their argument with the PFS. The PFS requires Plaintiffs to disclose this treatment. *See* **Ex. E**, at 3. Plaintiffs argue not only that they do not have to disclose such treatment, ***but that they can affirmatively misrepresent whether such treatment has occurred.*** Plaintiffs Antoinette Durden and Barbara Earnest, for example, both claim in their PFS that they have not had a punch biopsy. But that is not true. And it highlights the broader problem with Plaintiffs' position.

Nearly 75% of Plaintiffs who have filed fact sheets in this MDL report no past diagnosis or treatment for their alleged injury. Now that these Plaintiffs have filed suit, any such diagnosis or treatment would necessarily be "post-litigation" treatment, and could easily be characterized as "work product" or expert consultation in anticipation of litigation so long as Plaintiffs' attorneys made the appointments. Thus, under Plaintiffs' approach, Sanofi would be unable to discover *any* such treatment, meaning there would be no discoverable evidence of diagnosis or treatment of the injuries alleged in some three-fourths of cases in this MDL. Rule 26(b)(4)(D)'s protections for non-testifying expert, however, were never intended to be used at a weapon to conceal the diagnosis and treatment of the very injured alleged by the plaintiff.

12

## II. Judge North Did Not Clearly Err in Finding that "Exceptional Circumstances" Would Warrant the Production of these Records

A party seeking to invoke the protections of Rule 26(b)(4)(D) bears the burden of demonstrating that it applies. *See Arkansas River Power Authority v. The Babcock & Wilcox Co.*, 310 F.R.D. 492, 495 (D. Colo. 2015). Judge North concluded that Plaintiffs failed to meet that burden. But, even if they had, the medical records in dispute would still be discoverable because it is impracticable for Defendants to obtain the facts known by these physicians by other means.

Plaintiffs' argument that these doctors hold no "unique" facts contradicts reality. Plaintiffs admit that Dr. Thompson conducted "psychological assessments," that an unnamed neuropsychologist conducted "neuropsychological assessments," and that Dr. Claiborne "performed scalp biopsies," which were tested by an undisclosed dermapathologist. None of the Plaintiffs have had any such treatment before. Thus—regardless of what Plaintiffs' attorneys call these assessments—no other doctor has made them, so it would be impossible for Defendants to obtain facts on the same subject. *Contra* Pls.' Br. at 13–14 (claiming—incorrectly—that "Sanofi's retained experts will have…the Plaintiffs themselves for questioning.").

It is on this point that Plaintiffs' entire argument misses the mark. Plaintiffs' argue that their consulting experts can have full access to Plaintiffs; evaluate them physically, emotionally, and mentally; and perform procedures all them all under the guise of "work product." Rule 26(b)(4)(D) provides no such protection and, in fact, provides an explicit exception for when parties attempt to use the protection as a tool for concealing key facts such as those in dispute here.

**CONCLUSION**

For the reasons set forth above, the Court should immediately deny Plaintiffs' appeal. In doing so, Sanofi respectfully submits that the Court's ruling must be broadly construed to end the months-long shell game that has led to Plaintiffs not once, not twice, but at least three times sidestepping Magistrate Judge North's ruling. Sanofi respectfully submits that it is not enough for the Court to reaffirm Magistrate Judge North's June, August, and September rulings. In doing so, Plaintiffs in all cases and individual counsel should be ordered "without question that materials such as these doctors' reports be identified and produced in this litigation. This Order should be read broadly by the PSC and individual counsel to apply, not only to pathology reports derived from scalp biopsies, but to any similar medical records and treatment. To the extent counsel have any doubt as to whether the records and opinions of experts deemed 'consulting experts' by counsel are protected, the existence of such experts and their materials and the fact of any tests or examinations must be identified and described in a privilege log so that Defendants have appropriate notice and an opportunity to traverse such privilege claims." *See* **Ex. E**, at 10.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART &
MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri

14

**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October 2018, a true and correct copy of Defendants' Opposition to Plaintiffs' Motion for Review of Discovery Orders was served upon the following:

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
One Shell Square
701 Poydras St.
Suite 3650
New Orleans, LA 70139-3650
Phone: (504) 524-3300
Email: barrios@bkc-law.com
*Attorney for Plaintiff*

Matthew Palmer Lambert
Gainsburgh, Benjamin, David, Meunier & Warshauer
Energy Centre
1100 Poydras St.
Suite 2800
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Email: plambert@gainsben.com
*Attorney for Plaintiff*

John Francis Olinde
Chaffe McCall LLP
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
Phone: (504) 585-7000
Email: olinde@chaffe.com
*Liaison Counsel for Co-Defendants*

    /s/ *Douglas J. Moore*
    Douglas Moore