

August 23, 2018

VIA ELECTRONIC MAIL

The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street, Room B419
New Orleans, Louisiana 70130

Re:   *In re: Taxotere (Docetaxel) Products Liability Litigation*,
      MDL No. 2740 – August 28, 2018 Status Conference

**Patrick L. Oot**

1155 F Street, N. W., Suite 200
Washington, D.C. 20004
**t** 202.783.8400
**dd** 202.639.5645
**f** 202.783.4211
oot@shb.com

Dear Judge North:

We write to address a few discovery issues for the Court's consideration.

### I.   PLAINTIFF GAHAN MUST PRODUCE HER PSYCHOLOGICAL AND MENTAL-HEALTH TREATMENT RECORDS

Plaintiff Kelly Gahan claims that Taxotere caused her psychological injuries, for which she sought treatment from several doctors, including Dr. Amy Gorsline.[1] The Court previously ordered all Plaintiffs making such a claim to sign an authorization allowing Sanofi to collect mental health records. Despite this, Kelly Gahan has shielded Dr. Gorsline's records from Sanofi and has refused to provide an updated Mental Health Authorization to allow these records to be collected.[2]

Instead, her counsel sent Sanofi a letter on August 6, 2018 stating, "We have been in communication with Dr. Gorsline regarding your request for her psychological and mental health treatment records for Dr. Kelly Gahan." The letter further states, "In an effort to comply with your request for Ms. Gahan's mental health treatment records, our office was able to obtain a summary of Dr. Gorsline's treatment, which we are providing herewith."[3] The produced summary – which is a single, half-page letter sent to "Mr. Weinberger" (discussed in more detail below) – is undated and excludes any mention of Kelly Gahan's underlying, existing mental health issues except for her alleged hair loss.

Plaintiff's justification for withholding these records is to cite outdated law. They claim that Dr. Gorsline need provide only a "summary" because Kelly Gahan's ability to authorize the release of the records is limited by Colorado Revised Statute § 25-1-802(1)(a). That statute, however, was amended in 2014 and it limits the disclosure only of "psychotherapy notes" under certain, narrow circumstances. To qualify for such protection, Dr. Gorsline must maintain psychotherapy notes separate from Plaintiff's medical records and believe that disclosure will cause "substantial harm."[4] But even in that situation, Plaintiff <u>can still authorize</u> Dr. Gorsline to disclose those notes pursuant to 45 C.F.R. § 164.508 – which she did by signing her original Mental Health Authorization.[5] Kelly Gahan, however, has refused to provide Sanofi an updated Mental Health Authorization to allow for the collection of records that are plainly relevant to her alleged injuries. As such, Sanofi requests an order directing the production of a new authorization.

### II.   PLAINTIFFS' FACT QUESTIONNAIRES – "We cannot determine the statute of limitations in your case until we receive this signed document"

Pre-suit fact questionnaires[6] completed by Plaintiffs have not been produced or logged as privileged, as mandated by Rule 26(b)(5)(A)(ii). As early as December 2015, Kelly Gahan began soliciting potential plaintiffs from the "Taxotears" group and providing their contact information to her then-counsel Mr.



Weinberger.[7] Mr. Weinberger (rweinberger@wc-legal.com) e-mailed women, stating that "*It is our understanding that you are a member of the Taxotears group, and that you have sent email messages to our client, Dr. Kelly Gahan (who forwarded them to us), or else directly to us, inquiring as to whether you might possess potential claims arising from the use of Taxotere or a generic equivalent as part of your chemotherapy treatment*." He then provided them with a fact questionnaire advising that:

> **YOU ARE HEREBY ADVISED THAT BY PROVIDING THIS LETTER AND INTAKE SHEET TO YOU, AND BY YOUR PROVIDING US WITH ANY RESPONSES, THERE IS NO LEGAL OR ATTORNEY/CLIENT RELATIONSHIP BETWEEN US AND NO AGREEMENT TO ENTER INTO ANY ATTORNEY/CLIENT RELATIONSHIP.**[8]

When women asked about these e-mail communications, Kelly Gahan responded: "That is my legal team. Sorry I didn't realize they are contacting people directly. We are trying to see if there is a group who would want to join in on the demand letter/lawsuit that we are working on against Sanofi."[9] Upon information and belief, these women completed such questionnaires. Mr. Weinberger continued sending them to Taxotears members, later under a Bachus & Schanker e-mail address (robert.weinberger@coloradolaw.net).[10] To date, Plaintiffs' counsel has refused to provide basic information for withholding these documents, including: which plaintiffs completed the questionnaires; when; or when they retained Bachus & Schanker – if at all.[11]

The questionnaires address discoverable and relevant factual information relevant to the claims, including:

1. Briefly describe how you find [sic] out that the chemotherapy drug you received may have caused your permanent hair loss or baldness:
   _____

If you are unsure how to answer this question, you may also enter the appropriate option from the following list:

- My doctor told me
- The manufacturer sent me a letter
- A friend told me
- I saw something on TV
- I found something on the internet

2. What was the *date* you learned that the chemotherapy drug you received may have caused your permanent hair loss or baldness?
   _____

These fact questionnaires are responsive to nine different requests in the Court-ordered PFS, including: "Documents which mention Taxotere® or Docetaxel or any alleged health risks related to Taxotere®."[12]

Sanofi contacted Plaintiffs' counsel on May 11, 2018, requesting the questionnaires.[13] Sanofi wrote again on May 22, 2018.[14] On May 25, 2018, Plaintiffs' counsel indicated the documents existed but refused to produce them, claiming "work product and/or attorney-client privilege" but failing to produce a privilege log required.[15] Sanofi again requested production or a privilege log on June 20[16] and on July 24, 2018.[17] In each instance, Sanofi flagged the questionnaires' express disclaimer of any privilege. Namely, women completed questionnaires before entering into an attorney-client relationship because whether they had a case depended on whether they were time-barred:

> **\*\*The information you provide here is critical to the statute of limitations in your potential case. If you provide the wrong dates you may waive your right to file a lawsuit.**



> **The questions and answers refer to the potential case for which you are seeking legal representation from Bachus & Schanker, LLC\*\***.[18]

The questionnaires were signed by the "potential client," underscoring the lack of an attorney-client relationship.[19] On July 25, 2018, Plaintiffs' counsel further responded to Sanofi's requests stating:

> Our firm is currently investigating this matter. At this point, it does not appear the language cited in your letter was utilized by this firm, **but is torn from an email written by an attorney who was not employed by this firm at the time it was written, and is no longer employed at this firm.** Because of this complicating fact, we require time to investigate. . . .[20]

Mr. Weinberger, however, e-mailed these questionnaires from a Bachus & Schanker address and is also the recipient of Dr. Gorsline's letter on Kelly Gahan. These questionnaires are in either in the possession of Bachus & Schanker or Mr. Weinberger. Either way they are in Plaintiffs' control. Mr. Weinberger is not counsel of record in this MDL. More concerning is that as more women filled out the questionnaires, they discussed how to script statute of limitations answers (*". . . before you tell them any too recent date, make sure you cover your tracks. If you wrote a comment in my book? Did you use your name? Can you be associated with me at all for the last 10 years? What about any comments left on any of my articles? Plus this group? The lawyers for SA will find out everything. This won't be the last difficult question!"*).[21]

These factual questionnaires completed by plaintiffs with no attorney-client relationship are not privileged. And counsel invoking privilege over a pre-suit questionnaire must, at a minimum, "show that it was acting as counsel for [the persons completing questionnaires] at the time the questionnaires were distributed and completed."[22] Counsel has made no such showing. The questionnaires were completed before any attorney-client relationship and included express disclaimers. Moreover, other produced documents suggest that Plaintiffs' counsel has questionnaires from Plaintiffs they do not represent and/or obtained questionnaires from third parties who do not represent Plaintiffs. Finally, even if the questionnaires themselves were privileged, the *factual information* provided by Plaintiffs is not.[23] Sanofi asks this Court to order Plaintiffs to produce any questionnaires such as Exhibit A, or a privilege log stating the basis for such a claim.

### III. PLAINTIFFS MUST PRODUCE PRIVILEGE LOGS IN COMPLIANCE WITH RULE 26(b)(5)(A)(ii)

First, there are currently over 7,900 Plaintiffs in MDL Centrality, and only 35 have submitted a privilege log (less than 0.5%). Any Plaintiff who is withholding responsive documents on the basis of the attorney-client privilege or the work product doctrine must produce a privilege log related to those documents.[24] We have repeatedly notified the PSC of this issue, but still have not received privilege logs from any additional plaintiffs.[25] We ask that the Court order that Plaintiffs produce privilege logs immediately.

Second, nearly all of the privilege logs we have received fail to include basic information, such as document date, document type, author, sender, recipient, CC names, BCC names, indication of the privilege, etc. Moreover, the most fundamental component of a privilege log is missing from 14 of these 35 privilege logs – i.e., a description of the subject matter of the document or communication with information sufficient to demonstrate the existence of a privilege, as required by Rule 26(b)(5)(A)(ii).[26]

We have informed individual counsel for these 14 plaintiffs of these deficiencies, but they have failed to resolve the issue.[27] Sanofi therefore seeks Your Honor's guidance on addressing these fundamental deficiencies.

\*\*\*



We look forward to discussing these topics with you on Tuesday.

Best regards,

*Patrick Oot* (signature)

Patrick L. Oot
Partner

---

[1] *See* Gahan Third Amended PFS, at VI.18, VI.19.
[2] Plaintiff Gahan signed a Limited Authorization to Disclose Psychiatric, Psychological, and/or Mental Health Treatment Notes/Records on April 10, 2017. The authorization has since expired. In refusing Sanofi's records request, however, Plaintiff Gahan relies on the narrower HIPAA Authorization, which excludes such records.
[3] Letter from Darin L. Schanker, Counsel for Plaintiffs, to Harley V. Ratliff and Adrienne L. Byard, Counsel for Sanofi (Aug. 6, 2018), attached hereto as **Exhibit A**.
[4] *See* 45 C.F.R. §§ 164.501; 164.524.
[5] *See* Gahan Mental Health Authorization, attached as **Exhibit B** (specifically including "all 'psychotherapy notes'").
[6] A copy of the questionnaire template, produced by Plaintiff Lorri Hunt, is attached hereto as **Exhibit C**.
[7] *See* E-Mail from Marta Bozoki to Taxotears Google Group (Apr. 21, 2015) (forwarding E-Mail from Bob Rabicoff, law clerk to Robert A. Weinberger (Apr. 22, 2015)), attached as **Exhibit D**.
[8] *Id.*
[9] *Id.*
[10] E-Mail from Robert Weinberger to Ami Dodson (Dec. 9, 2015), attached hereto as **Exhibit E.**
[11] *See, e.g., U.S. v. Jackson*, 2007 U.S. Dist. LEXIS 8806, at *2 (D.D.C. Nov. 30, 2007); *Global HTM Promotional Group, Inc. v. Angel Music Group LLC*, 2007 U.S. Dist. LEXIS 5879, at *2 (S.D. Fla. Jan. 26, 2007); *Parker v. Kitzhaber*, 1989 U.S. Dist. LEXIS 6953, at *1 (D. Or. June 8, 1989).
[12] *See* PTO No. 38 (Plaintiff Fact Sheet) § IX. The information called for is responsive to specific questions in the Court-ordered PFS, including §§ VI.6-8 and VII.5 (regarding discussions with health care providers about chemotherapy and hair loss); VI.13–14 (regarding television advertisements); VI.15 (regarding communication between Plaintiffs and defendants); and II.18 (regarding internet posts).
[13] *See* Letter from Harley V. Ratliff and Adrienne L. Byard, Counsel for Sanofi, to J. Kyle Bachus, Counsel for Plaintiffs (May 11, 2018), attached as **Exhibit F**.
[14] *See* Letter from Harley V. Ratliff and Adrienne L. Byard, Counsel for Sanofi, to J. Kyle Bachus, Counsel for Plaintiffs (May 22, 2018), attached as **Exhibit G**.
[15] *See* Letter from Darin L. Schanker, Counsel for Plaintiffs, to Harley V. Ratliff, Counsel for Sanofi (May 25, 2018), attached as **Exhibit H**.
[16] *See* Letter from Harley V. Ratliff and Adrienne L. Byard, Counsel for Sanofi, to Darin L. Schanker, Counsel for Plaintiffs (June 20, 2018), attached as **Exhibit I**.
[17] *See* E-Mail from Adrienne L. Byard, Counsel for Sanofi, to J. Kyle Bachus, Counsel for Plaintiffs (July 24, 2018), attached as **Exhibit J**.
[18] *Supra,* n.6.
[19] *Id.*
[20] *See* E-Mail from Scot Krieder, Counsel for Plaintiffs, to Adrienne L. Byard, Counsel for Sanofi (Jul. 25, 2018), attached hereto as **Exhibit K.**
[21] *See* E-Mail Communications between Suzanne Mink, Amy Dodson, Shirlie Ledlie and Taxotears Google Group (Apr. 30, 2016), attached hereto as **Exhibit L**.
[22] *See Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 424 (D.N.J. 2000); *see also EEOC v. ABM Indus., Inc.*, 261 F.R.D. 503, 505–11 (E.D. Cal. 2009).
[23] *See Morisky*, 191 F.R.D. at 424; *see also Christofferson v. U.S.*, 78 Fed. Cl. 810, 815–16 (Fed. Cl. 2007) (factual responses to questionnaires discoverable).
[24] *See* FED. R. CIV. P. 26(b)(5)(A)(ii).
[25] *See, e.g.*, Letter from Harley V. Ratliff, Counsel for Sanofi, to Dawn M. Barrios and M. Palmer Lambert, Counsel for Plaintiffs (July 25, 2018), attached as **Exhibit M**.
[26] *See* Examples of Plaintiffs' Privilege Logs, attached as **Exhibit N**. Notably, some of the information Plaintiffs have included within these privilege logs indicates that the documents might not be protected by a valid privilege. For instance, several documents have been identified as protected by something referred to as an "academic privilege." *See, e.g.*, Plaintiff Liberman's Privilege Log

SHOOK
HARDY & BACON

August 23, 2018

Page 5

---

(**Ex. N** at p. 3); Plaintiff Phillips's Privilege Log (**Ex. N** at p. 4). As another example, some plaintiffs have logged e-mail communications that were sent to the dozens of individuals in the Taxotears Google Group. *See, e.g.*, Plaintiff Dodson's Privilege Log (**Ex**. **N** at p. 2). These documents are not privileged or otherwise protected, and Plaintiffs should therefore produce them.

[27] *See* Letter from Harley V. Ratliff, Counsel for Sanofi, to Dawn M. Barrios and M. Palmer Lambert, Counsel for Plaintiffs (July 25, 2018) (copying J. Kyle Bachus and Melanie Schmickle, Counsel for Plaintiffs) (**Ex. M**).