UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL) ) MDL No. 16-2740
PRODUCTS LIABILITY LITIGATION )
) SECTION: "H" (5)
)
THIS DOCUMENT RELATES TO: )
*Christine and Jim Kinderdine v. Accord Healthcare, Inc.*, 17-cv-00348

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment Based upon Judicial Estoppel (Doc. 3476) filed by Defendant Accord Healthcare, Inc. ("Accord"). For the following reasons, the Motion is **GRANTED IN PART**. It is further ordered that Plaintiffs' Motion for Leave to File Sur-Reply Brief in Opposition to Accord Healthcare, Inc.'s Motion for Summary Judgment Based Upon Judicial Estoppel (Doc. 4199) is **GRANTED** and Plaintiffs' proposed sur-reply shall be accepted into the record.

## BACKGROUND

On November 3, 2016, Plaintiff Christine Kinderdine filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court"). The petition required that she disclose any "[c]laims against third parties, whether or not you have a filed a lawsuit or made a demand for payment." Ms. Kinderdine responded, "No."

Roughly two months after filing her bankruptcy petition, on January 13, 2017, the Kinderdines filed the instant action against Accord, alleging failure to warn, misrepresentation, negligence, negligent misrepresentation, fraudulent concealment, fraud and deceit, and loss of spousal consortium.

1

Although Ms. Kinderdine's bankruptcy proceeding remained open for months after she filed her Taxotere action, she never amended her bankruptcy petition to disclose the Taxotere action. Ultimately, the Bankruptcy Court closed her bankruptcy on April 13, 2017, issuing a "no asset" discharge.

More than one year after the conclusion of her bankruptcy proceeding, on April 19, 2018, counsel for Accord deposed Ms. Kinderdine. At the deposition, counsel asked Ms. Kinderdine about her bankruptcy. Shortly after the deposition, Ms. Kinderdine moved to reopen her bankruptcy so that she could disclose her Taxotere lawsuit. The Bankruptcy Court denied the motion, stating that "the Claim appears to remain property of the estate to be pursued and administered by the Chapter 7 Trustee as he determines appropriate. . . . Absent the Debtor pursuing this claim on behalf of the estate derivatively, any motion to reopen to pursue this asset would need to be filed by the Chapter 7 Trustee, not the Debtor."[1] Consistent with this order, the Chapter 7 Trustee filed a Motion to Reopen. The Bankruptcy Court granted the Motion on July 25, 2018, writing that "[t]he Court finds that good cause has been shown to grant the Motion so that a Chapter 7 Trustee can administer assets for the benefit of creditors."[2]

Accord filed this Motion arguing that Ms. Kinderdine is judicially estopped from pursuing her Taxotere action against Accord because she did not disclose the action during her bankruptcy proceeding. Accord further argues that, because Ms. Kinderdine's claims fail, Plaintiff Jim Kinderdine cannot pursue a derivative loss of consortium claim against Accord.

---

[1] Doc. 3799-11.
[2] Doc. 3799-13.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[8] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[3] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[8] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

### I. Choice of Law

Plaintiffs assert that this Court should apply Ohio choice-of-law rules, and they argue that these rules require the application of Ohio substantive law. Defendant agrees that Ohio law governs Plaintiffs' substantive claims. Defendant, however, asserts that the Fifth Circuit's interpretation of federal common law judicial estoppel applies to this case. Defendant notes that in *In re Vioxx Products Liability Litigation*, Judge Eldon Fallon of this Court applied Fifth Circuit law rather than Ninth Circuit law to judicially estop the claims of the plaintiffs, even though they were residents of California and originally filed their lawsuits in California state court.[11]

A number of circuit courts agree that "in cases where *federal* law is at issue, transferee courts are obligated to follow their own interpretation of the relevant law."[12] The Fifth Circuit has not ruled on the issue, but Judge Fallon

---

[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[11] 889 F. Supp. 2d 857, 860 n.1 (E.D. La. 2012) ("[I]t is appropriate for this Court to decide this case under the Fifth Circuit's precedents on judicial estoppel.").
[12] *See* Murphy v. F.D.I.C., 208 F.3d 959, 965 (11th Cir. 2000). These are the Second, Eighth, Ninth, Eleventh, and D.C. Circuits. *See id. See also, e.g.*, In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004) ("When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law. When considering issues of state law, however, the transferee court must apply the state law that would have applied had the cases not been transferred for consolidation.") (citations omitted).

4

has held that an MDL Court is "obliged to apply . . . the federal law of its own circuit."[13] The Western District of Texas has held the same.[14]

The Southern District of New York has reasoned that this approach furthers the purpose of the MDL statute, specifically 28 U.S.C.A. § 1407(a), which aims to establish centralized management.[15] The court wrote that "[t]his purpose would be thwarted if this Court were to follow the opinions offered by the many circuits from which the cases were transferred." [16] The court explained as follows:

> [W]ithout limiting the sources of binding precedent, each motion in multi-district litigation could easily turn into a review of the interpretations of all or most of the circuits, a result at odds with the fundamental purpose of section 1407. This would have a debilitating effect on the court's ability to resolve motions in a timely and efficient manner.[17]

Accordingly, the judge held that when interpreting and applying the federal Constitution, any federal statute, or the Federal Rules of Civil Procedure, she was bound only by the opinions of the Supreme Court and the Second Circuit.[18] This Court agrees with the reasoning of the Southern District of New York and will apply Fifth Circuit law.

## II. Judicial Estoppel

Defendant argues that Plaintiff Christine Kinderdine is judicially estopped from pursuing this action against Accord because she did not disclose

---

[13] In re Chinese Manufactured Drywall Prods. Liab. Litig., 894 F. Supp. 2d 819, 836-837 (E.D. La. 2012) (noting that this rule "is overwhelmingly supported by both the jurisprudence and the legal scholarship").
[14] In re: Whole Foods Market, Inc., 163 F. Supp. 3d 385, 388-389 (W.D. Tex. 2016) ("Sitting as an MDL transferee court, the Court must apply the law of its own circuit when analyzing questions of federal law.") (citing Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.1993)).
[15] In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 2005 WL 106936, *5 & n.1 (S.D. N.Y. 2005).
[16] Id. at *5.
[17] Id.
[18] Id.

the action during the pendency of her bankruptcy. Defendant further argues that, because Ms. Kinderdine's primary claim fails, Plaintiff Jim Kinderdine's derivative loss of consortium claim must fail.

Plaintiffs emphasize that Ms. Kinderdine has disclosed her Taxotere action to the Bankruptcy Court and that the Chapter 7 Trustee has decided to pursue the Taxotere claims. Plaintiffs explain that Ms. Kinderdine did not disclose her action initially because she was unable to ascertain production identification information to identify the specific manufacturer of the chemotherapy drug that she used. Plaintiffs explain that Ms. Kinderdine identified Accord as the manufacturer on August 24, 2017, but at this point, her bankruptcy had concluded. On May 17, 2018, however, she moved to reopen the bankruptcy, and Plaintiffs emphasize that she did so prior to Accord filing this Motion. Lastly, Plaintiffs assert that if judicial estoppel bars Ms. Kinderdine from pursuing her Taxotere claims, the Trustee should be permitted to pursue both her claims and Mr. Kinderdine's derivative claim.

"'The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding.'"[19] "In this way, the doctrine 'protect[s] the integrity of the judicial process.'"[20] Courts agree that judicial estoppel is particularly appropriate where a party "fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."[21]

Judicial estoppel has three elements: (1) the party against whom estoppel is sought has asserted a position plainly inconsistent with a prior

---

[19] Fornesa v. Fifth Third Mortg. Co., 897 F.3d 624, 627 (5th Cir. 2018) (quoting Love v. Tyson Foods, Inc., 677 F.3d 258, 261 (5th Cir. 2012)).
[20] *Id.* (quoting Allen v. C & H Distribs., LLC, 813 F.3d 566, 572 (5th Cir. 2015)).
[21] *See id.* at 627–28 (quoting *Love*, 677 F.3d at 261–62).

position, (2) a court accepted the prior position, and (3) the party did not act inadvertently.[22] The first element is satisfied where a party failed to amend a bankruptcy petition to disclose a claim he or she pursued after filing the petition.[23] This is consistent with Fifth Circuit precedent making clear that the duty to disclose claims in bankruptcy proceedings is an ongoing obligation.[24] Failing to disclose a claim impliedly represents to the bankruptcy court that the debtor's financial status remained unchanged, and this representation is plainly inconsistent with a subsequent assertion of the undisclosed claim.[25]

Relatedly, the second element is met where the bankruptcy court implicitly accepted the debtor's representation by operating as though his or her financial status was unchanged.[26] Lastly, to establish a defense of inadvertence, a party has to prove (1) that he or she did not know about the inconsistency or (2) that he or she lacked a motive for concealment.[27]

The Fifth Circuit decision in *In re Superior Crewboats* is a seminal one on judicial estoppel in the bankruptcy context, and Accord cites it for a number of propositions.[28] In *Superior Crewboats*, one of the debtors had a personal injury claim stemming from an injury that he sustained while disembarking a ship.[29] When he and his wife filed bankruptcy, they failed to disclose the potential claim.[30] Then, the debtors sued the ship owner without amending their bankruptcy schedules.[31] The debtors told the bankruptcy trustee about

---

[22] *Id.* at 628 (citing *Allen*, 813 F.3d at 572).
[23] *See id.* at 628.
[24] *Allen*, 813 F.3d at 573.
[25] *See Fornesa*, 897 F.3d at 628.
[26] *Id.*
[27] *Id.*
[28] In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004).
[29] *Id.* at 333.
[30] *Id.*
[31] *Id.*

7

the claim but represented that it was prescribed by the statute of limitations.[32] Accordingly, the trustee formally abandoned the claim, and ultimately, the bankruptcy court issued a "no asset" discharge.[33]

The ship owner filed summary judgment on the basis of judicial estoppel, and the district court denied the motion.[34] The court wrote that it could not conclude that the debtors took inconsistent positions because this was a question of fact to be determined at trial.[35]

The Fifth Circuit reversed and held that judicial estoppel barred the personal injury suit as a matter of law.[36] In its analysis, the court held that the debtor's positions in the two proceedings were "clearly inconsistent."[37] The court noted that the Bankruptcy Code requires the disclosure of all assets, including claims, and "[t]he duty to disclose is continuous."[38] The debtors' "omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed."[39] Yet the debtors then contended before the state court that the personal injury claim was viable and worth $2.5 million.[40] The Fifth Circuit wrote that "[s]uch blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry."[41]

The court then held that the second element was met, noting that the bankruptcy trustee formally abandoned the claim and the bankruptcy court

---

[32] *Id.*
[33] *Id.*
[34] *Id.* at 334.
[35] *Id.*
[36] *Id.* at 336.
[37] *Id.* at 335.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*

issued a "no asset" discharge.[42] Thus, the bankruptcy court adopted the debtors' position.[43]

Regarding the third element, the Fifth Circuit wrote that the debtors "certainly had knowledge of the undisclosed claim, initiating the suit only months after filing for bankruptcy and requesting service of process during the pendency of the bankruptcy" and "[s]till, the couple remained silent until months later."[44] When the debtors finally informed the bankruptcy trustee, they said the claim was prescribed.[45] Thus, the Fifth Circuit concluded that the debtors were aware of the facts underlying their claim, and the district court's conclusion that a fact issue existed regarding the debtors' wrongful intent was incorrect.[46]

The Fifth Circuit further concluded that the debtors had a motivation to conceal as they "would certainly reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors."[47] "Such a result would permit debtors to '[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights.'"[48] Thus, the court ruled that the debtors could not be permitted, at such a late date, to re-open the bankruptcy and amend their petition because judicial estoppel was intended to prevent such abuses.[49] The court noted that allowing a debtor to "back-up, reopen the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.* at 335–36.
[47] *Id.* at 336.
[48] *Id.* (quoting Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir.1993)).
[49] *Id.*

9

should consider disclosing personal assets only if he is caught concealing them."[50]

With regard to Ms. Kinderdine, the elements of judicial estoppel are met. Ms. Kinderdine took clearly inconsistent positions in these proceedings; she failed to disclose her Taxotere claims to the Bankruptcy Court—even after she filed her Taxotere lawsuit. The Bankruptcy Court accepted her position and issued a "no asset" discharge.

Like the couple in *Superior Crewboats*, Ms. Kinderdine did not act inadvertently. She certainly had knowledge of her Taxotere claims, as she filed the suit during the pendency of her bankruptcy and yet she remained silent for more than a year after doing so. She moved to reopen her bankruptcy and disclose the action only after counsel for Accord inquired about the bankruptcy during her deposition. The motivation to conceal exists because, as articulated in *Superior Crewboats*, Ms. Kinderdine would have reaped a windfall if she had been able to pursue this claim and collect a judgment from Accord without having to share the judgment with her creditors.

The Kinderdines attempt to distinguish their facts from *Superior Crewboats* noting that, in *Superior Crewboats*, the plaintiffs only attempted to reopen their bankruptcy after the defendants challenged them. The Kinderdines' argument falls flat, however. First, as Accord notes, "the relevant time frame for the judicial estoppel analysis" is "at the time [the plaintiff] failed to meet his disclosure obligations."[51] The fact that Ms. Kinderdine moved to reopen her bankruptcy one year later—or that the Chapter 7 Trustee did so— does not absolve Ms. Kinderdine. Second, the Kinderdines fail to mention the deposition in their briefing. It would appear that, like the couple in *Superior Crewboats*, the Kinderdines only moved to reopen the bankruptcy after being

---
[50] *Id.* (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002)).
[51] *Love*, 677 F.3d at 261–63.

"caught" at Ms. Kinderdine's deposition. Notably, the only reason Plaintiffs offer for Ms. Kinderdine's belated disclosure is that she was waiting to confirm product identification to ensure that Accord was the correct party to sue; yet Ms. Kinderdine still did not move to reopen the bankruptcy until nearly one year after such confirmation. Regardless, even if the timing was merely coincidental and Ms. Kinderdine had always intended to reopen her bankruptcy at a later date to disclose her Taxotere action, this does not change the Court's analysis, which is focused on the pendency of the bankruptcy.

While judicial estoppel bars Ms. Kinderdine, the facts here fall just short of mandating the exact result as in *Superior Crew*. Instead, the instant facts warrant keeping Ms. Kinderdine's claims alive so that the Chapter 7 Trustee can pursue the claims. In *Kane v. National Union Fire Insurance Company*, the Fifth Circuit explained why the trustee's actions in *Superior Crewboats* set the case apart from cases like the instant one:

> [In *Superior Crewboats*,] because the trustee had abandoned the claim, he was not the real party in interest and was not entitled to be substituted as such. Rather, following the trustee's abandonment, the interest in the claim had reverted to the debtors, who then stood to collect a windfall from their failure to schedule the asset at the expense of their creditors. In the case before us, the [debtors'] personal injury claim became an asset of their bankruptcy estate when they filed their Chapter 7 petition. The Trustee became the real party in interest in the [debtors'] lawsuit at that point and never abandoned his interest therein. Thus, unlike in *In re Superior Crewboats, Inc.*—where the debtors stood to benefit directly from pursuing their claim at the expense of their creditors, and the district court's dismissal of the claim against the debtors mooted the trustee's motion to substitute as a matter of law—here, the Trustee is the real party in interest and has reopened the [debtors'] Chapter 7 bankruptcy to pursue the [debtors'] claim for the benefit of the estate's creditors.[52]

---

[52] Kane v. National Union Fire Ins. Co., 535 F.3d 380, 386–87 (5th Cir. 2008).

Accordingly, the *Kane* court reversed the district court, which had granted summary judgment in favor of the defendants and denied the trustee's motion to substitute as moot.[53]

In *Reed v. City of Arlington*, the Fifth Circuit further refined its approach to judicial estoppel in the bankruptcy context.[54] In *Reed*, the Fifth Circuit affirmed a district court opinion holding that while the debtor was estopped from collecting or receiving any money from the judgment on the claim he failed to disclose, the Trustee was free to collect the judgment on behalf of the estate for distribution to the creditors and any remaining funds after the distribution would be refunded to the defendant, not to the debtor.[55] The Fifth Circuit noted that the district court's "careful application of judicial estoppel protected the integrity of the bankruptcy system by deterring debtors from concealing assets; was consistent with the core bankruptcy goal of obtaining a maximum and equitable distribution for creditors; and abided by bankruptcy law and principles of equity."[56] In its ruling, the Fifth Circuit pronounced a new general rule that "absent unusual circumstances, an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy."[57] "Ultimately, '[t]he challenge is to fashion a remedy that does not do inequity by punishing the innocent.'"[58]

Here, the Chapter 7 Trustee is the real party in interest in this litigation, and the Court has no reason to believe he is not innocent. Unlike the trustee

---

[53] *Id.* at 382.
[54] Reed v. City of Arlington, 650 F.3d 571 (5th Cir. 2011). *See also Allen v. C & H Distribs., LLC*, 813 F. 3d 566 (5th Cir. 2015) (echoing and applying *Reed*'s holding).
[55] *Id.* at 573.
[56] *Id.* at 577.
[57] *Id.* at 573, 579.
[58] *Id.* at 576. *See also Allen*, 813 F.3d at 571 (echoing this notion and affirming district court opinion dismissing debtors' claims with prejudice but noting that dismissal was without prejudice to rights of Chapter 7 trustee to pursue the debtors' claims if the bankruptcy is reopened and converted to a Chapter 7 liquidation).

in *Superior Crewboats*, the Trustee here did not specifically abandon Ms. Kinderdine's Taxotere claims—indeed, he could not have done so because he was unaware of them due to Ms. Kinderdine's failure to disclose them. Further, he did not abandon them as a matter of law since they were not disclosed. Per the Bankruptcy Code, only scheduled assets not administered by a trustee are deemed abandoned as a matter of law; assets that are neither scheduled nor administered remain property of the estate.[59] Lastly, unlike Ms. Kinderdine, the Trustee did not contradict himself in court, and the facts provide no basis for associating him with her failure to disclose.[60] Thus, because the Trustee is innocent, this Court fashions a remedy consistent with *Reed*.

Accordingly, this Court grants in part Accord's Motion for Summary Judgment. Because the Bankruptcy Court has reopened Ms. Kinderdine's bankruptcy and the Chapter 7 Trustee has filed an Application to Employ Special Counsel with regard to this lawsuit, this Court will allow the Trustee to pursue Ms. Kinderdine's claims. Mr. Kinderdine's claim, however, will be dismissed, as it is derivative of Ms. Kinderdine's claims.[61]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Accord's Motion for Summary Judgment is **GRANTED IN PART.** Plaintiff Christine Kinderdine is estopped from pursuing or collecting on any judgment on her claims against Accord, but the bankruptcy estate is not estopped from doing so. Accordingly, the Chapter 7 Trustee may move to substitute himself into this litigation

---

[59] In re Broussard, 351 B.R. 383, 387 (W.D. La. 2006).
[60] *See Reed*, 650 F.3d at 576, 577 (suggesting that a creditor is innocent unless he has contradicted himself in court like the debtor or is somehow associated with the debtor's deception).
[61] Loyd v. Harrah's Shreveport/Bossier City Holding Co., LLC, No. Civ.A.03-0757-S, 2005 WL 3113028, at *2 (W.D. La. Nov. 21, 2005) (dismissing loss of consortium claim because it derived from claim of debtor which was judicially estopped due to debtor's failure to disclose it in his bankruptcy).

within 30 days from the date of this order to pursue Ms. Kinderdine's claims on behalf of the bankruptcy estate. Any funds collected from the judgment shall go to the bankruptcy estate for administration and distribution in accordance with the Bankruptcy Code and Rules, and any remaining funds after distribution shall be refunded to Accord and not to Christine Kinderdine. If the Trustee does not file a motion within 30 days, Christine Kinderdine's claims will be dismissed. **IT IS FURTHER ORDERED** that Jim Kinderdine's loss of consortium claim is **DISMISSED**.

New Orleans, Louisiana, this 15th day of October, 2018.

_____
HON. JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE