UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

*************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                          Civil Action No. 16-MD-2740
                          Section "N"
                          New Orleans, Louisiana
                          October 16, 2018 at 10:00 a.m.

THIS DOCUMENT RELATES TO ALL CASES
*************************************************************


                  TRANSCRIPT OF STATUS CONFERENCE
            HEARD BEFORE THE HONORABLE MICHAEL B. NORTH
                  UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

FOR THE PLAINTIFFS:

                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    RAND NOLEN
                    FLEM NOLEN & JEZ
                    2800 POST OAK BLVD
                    SUITE 4000
                    HOUSTON, TX 77056

                    DARIN SCHANKER
                    BACHUS & SCHANKER
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202

                    CHRISTOPHER COFFIN
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112

```
 1                    KAREN BARTH MENZIES
                      GIBBS LAW GROUP
 2                    400 CONTINENTAL BOULEVARD
                      EL SUGUNDO, CA 90245
 3
                      DAVID F. MICELI
 4                    SIMMONS HANLY CONROY
                      ONE COURT STREET
 5                    ALTON, IL 62002

 6                    PALMER LAMBERT
                      GAINSBURG BENJAMIN DAVID MEUNIER
 7                    & WARSHAUER
                      1100 POYDRAS STREET
 8                    SUITE 2800
                      NEW ORLEANS, LA 70163
 9
     FOR THE SANOFI DEFENDANTS:
10
                      ADRIENNE BYARD
11                    SHOOK HARDY & BACON
                      2555 GRAND BOULEVARD
12                    KANSAS CITY, MS 64108

13                    PATRICK OOT
                      SHOOK HARDY & BACON
14                    1155 F STREET NW
                      SUITE 200
15                    WASHINGTON, DC 20004

16                    DOUGLAS MOORE
                      KELLY E. BRILLEAUX
17                    IRWIN FRITCHIE URQUHART & MOORE
                      400 POYDRAS STREET
18                    SUITE 2700
                      NEW ORLEANS, LA 70130
19
     FOR HOSPIRA WORLDWIDE
20   AND 505(b)(2) DEFENDANTS:

21                    JOHN F. OLINDE
                      PETER J. ROTOLO
22                    CHAFFE MCCALL
                      1100 POYDRAS STREET
23                    SUITE 2300
                      NEW ORLEANS, LA 70163
24

25
```

```
 1  FOR SANDOZ:        CLIFF MERRELL
                       GREENBERG TRAURIG
 2                     3333 PIEDMONT ROAD NE
                       SUITE 2500
 3                     ATLANTA, GA 30305

 4  ALSO PRESENT:      VAL EXNICIOS
                       BETSY BERUES
 5                     LAUREN GODSHELL

 6  PARTICIPATING VIA PHONE:

 7                     DANIEL MARKOFF
                       ANDRE MURA
 8                     ALEXANDER DWYER
                       EMILY JEFFCOTT
 9                     JENNIFER LIAKOS
                       KYLE BACHUS
10                     JOHN THORNTON
                       ANNE ANDREWS
11                     LAUREN DAVIS
                       BRANDON COX
12                     KATHLEEN KELLY
                       MIKE SUFFERN
13                     MARA CUSKER GONZALES
                       BETH TOBERMAN
14                     SUZY MARINKOVICH

15  Official Court Reporter:    Nichelle N. Drake, RPR, CRR
                                500 Poydras Street, B-275
16                              New Orleans, Louisiana 70130
                                (504) 589-7775
17
        Proceedings recorded by mechanical stenography,
18  transcript produced via computer.

19

20

21

22

23

24

25
```

1          **P R O C E E D I N G S**

2              (Call to order of the court.)

3          THE COURT:  All right.  I got the agenda that was

4      sent over yesterday.  The first -- the first matter on the

5      agenda is the plaintiff's request to exceed the numerical

6      limits on the interrogatories, the 505(b)(2) defendants.  It

7      should not come as any surprise that I'm going to grant that

8      request.  That's a -- I don't understand why you all have to

9      send letter briefs on -- on such a benign issue.  So in the

10     future, I wish that you all could figure out a way to sit

11     down and work that out without having to involve me.

12          Granting extra interrogatories in a case such as this

13     is -- is pretty garden-variety material.  So I'm going to

14     allow those interrogatories to stand and give you all 20 days

15     or 30 days to respond to them.

16          These Cantwell documents, who for the PSC -- is there

17     somebody --

18          MR. SCHANKER:  Good morning, Your Honor, Darin

19     Schanker speaking on behalf of the PSA -- PSC and also

20     Ms. Cantwell --

21          THE COURT:  All right --

22          MR. SCHANKER:  -- the firm represented and has spoken

23     with --

24          THE COURT:  Okay.  Let me ask you a question.  When

25     you -- as you said in your paper, you reached out to her upon

1   receiving your receipt -- subpoena.  When you reached out to

2   her, did you represent her at that time?

3        MR. SCHANKER:  So we represented her prior to this.

4   You understand, Your Honor, she elected not to pursue

5   litigation and she reached out.  It's my belief that an

6   attorney-client relationship was established when she reached

7   out.

8        THE COURT:  Do you have an attorney-client

9   relationship with her now?

10        MR. SCHANKER:  Yes.  I believe we do, Your Honor.

11   Yes.

12        THE COURT:  Didn't --

13        MR. SCHANKER:  Go ahead.

14        THE COURT:  Didn't you tell me in your paper that you

15   don't represent her?

16        MR. SCHANKER:  For the limited purpose, Your Honor,

17   similar to defense counsel last week representing a former

18   employee in the context of a deposition, I believe that

19   that's a good analogy as to what our representation is at

20   this point with Ms. Cantwell.

21        THE COURT:  How do you establish -- for purposes of

22   protecting a privilege because it's Ms. Cantwell's burden --

23        MR. SCHANKER:  Right.

24        THE COURT:  -- how do you establish that you have --

25   where is the proof that you have an attorney-client

1  relationship with her currently?

2  　　　　MR. SCHANKER:  I believe that that would come from

3  her state of mind, Your Honor, and it's her belief in

4  reaching out to us as her lawyers on an issue that we

5  represented her, on a subpoena that arose out of that.  It's

6  her belief that we're her lawyers with regard to anything

7  arising out of that issue naturally.

8  　　　　THE COURT:  Let me hear from --

9  　　　　MS. BYARD:  The information that we have, Your Honor,

10  is not only set forth -- Adrienne Byard for defendant Sanofi.

11  You may recognize my voice.  My opposing counsel has

12  excerpted videos of my voice from previous depositions.  You

13  usually have the audience of my partner, Harley Ratliff.

14  　　　　The information that we have, Your Honor, is not only

15  that as -- as of last week when plaintiff's counsel submitted

16  their briefing to Your Honor saying that they no longer

17  represented her.  The information we have is not that

18  Ms. Cantwell reached out to plaintiff's counsel, but that

19  they reached out to her on the courtesy of our subpoena and

20  also that Bachus & Schanker terminated their representation

21  of Ms. Cantwell in 2018 because she was actually a plaintiff

22  in Taxol as well as Taxotere; Taxol being the alleged

23  alternative that wouldn't cause permanent hair loss in the

24  plaintiff's theory of the case.  So the information that we

25  have is that they terminated their representation of her.

1   That's something that Ms. Cantwell communicated to the

2   Taxotears; so not only communicating that they had terminated

3   the representation of her by letter in 2018, but that also,

4   you know, she's e-mailing information about these -- this

5   legal advice that she's supposedly giving to this large group

6   of women waiving the privilege very many ways.

7          THE COURT:  Who is Mr. Weinberger again?

8          MR. SCHANKER:  Your Honor, Mr. Weinberger was a

9   lawyer who represented some of the plaintiffs in this case at

10  a point in time and then we took over representation and

11  actually worked with Mr. Weinberger for some period of time.

12         And if I could clarify, Your Honor, Ms. Cantwell did

13  reach out to us when she was served with a subpoena.  We were

14  provided a courtesy copy, I believe, on Thursday, October 11,

15  and then late that afternoon, Ms. Cantwell reached back out

16  to us and said, "I've been served.  What do I do in this

17  situation?"

18         THE COURT:  That's not what's in this letter.  Let me

19  say what's in this letter.

20         On behalf of Bachus & Schanker, the PSC provides the

21  following, and it goes on to say she is no longer a client of

22  Bachus & Schanker.  That's a -- that's a declarative

23  sentence.  It also says that -- hold on.

24         After receiving Sanofi's subpoena, Bachus & Schanker

25  reached out to Ms. Cantwell, and Ms. Cantwell provided

1    documentary evidence of communications between herself and

2    Mr. Weinberger and her staff -- and his staff, which is a

3    different set of lawyers, providing important context with

4    respect to why she deleted her comments.

5        So on the basis of these statements, I'm wondering

6    why we're even having this conversation, why a lawyer who

7    doesn't represent this woman is representing her in an effort

8    to quash a subpoena that's been sent to her.

9        MR. SCHANKER:  Your Honor, as I stated to you, the

10   facts are that she reached out to us after we contacted her,

11   and she said, "Yes, I've been served with a subpoena and what

12   do I do in this situation?"  And so it's my impression that

13   she believes that an attorney-client relationship has been

14   established.

15       She sought guidance from us as to what to do with

16   this, the magnitude of it, understanding it, which she

17   didn't.  And we communicated with her in that respect

18   certainly -- and the -- the circumstances under which she

19   declined to pursue the case.  And, yes, at that point,

20   certainly we said we no longer represent you, but then it's

21   my belief -- and, again, I believe it would be established by

22   the client's impression of whether an attorney-client

23   relationship is established, but she sought guidance from us

24   as lawyers who had represented her previously.

25       And as I attempted to clarify, Mr. Weinberger joined

1   our firm at some point, and that's why -- again, I apologize

2   for any confusion that may exist --

3          THE COURT:  All right.  When is the return date on

4   the subpoena?

5          MR. SCHANKER:  October 23rd.

6          THE COURT:  All right.  I am not going to touch the

7   subpoena except to do this:  I'm going to extend the return

8   date for two weeks, and I'm going to -- you're obviously in

9   contact with Ms. Cantwell.  If she wants to have a lawyer who

10  purports to represent her file a motion to quash the subpoena

11  as a nonparty, I will entertain that motion, but we're not

12  going to do it this way.

13         I mean, I don't know who represents her.  I don't

14  know if you represent her because you're referring to her

15  state of mind.  I'm not going to make decisions on the basis

16  of somebody's interpretation of another person's state of

17  mind who's not here, not in the face of a letter that says

18  you don't represent her.

19         MR. SCHANKER:  Fair enough, Your Honor, and that's

20  what I want is your guidance on how to do it.  You've just

21  given it to us.

22         THE COURT:  All right.  I'm extending the return date

23  for two weeks, and within that period of time, if

24  Ms. Cantwell wants to have an attorney file a motion to quash

25  the subpoena, we'll deal with it that way.

1          MR. SCHANKER:  Fair enough.  Thank you, Your Honor.

2          MS. BYARD:  Your Honor, I think I just would be

3    remiss if I didn't mention two things.  My impression from

4    their -- their letter briefing is that they understand the

5    subpoena to be narrowly focused to those communications

6    between Mr. Weinberger instructing her to delete the

7    information about hair treatment.  Our subpoena's actually

8    much broader than that and looks to find what information she

9    has from the Taxotears Facebook page as well as from the

10   Taxotears Google group.

11         THE COURT:  My expectation is that whatever

12   resistance to the -- to complying with the subpoena is going

13   to be limited to the issues that you all raised in this

14   letter.

15         MR. SCHANKER:  Certainly, Your Honor.  And we raised

16   -- first of all, just to clarify, nobody is saying that

17   Mr. Weinberger instructed anyone to delete anything.

18         THE COURT:  I get that.

19         MR. SCHANKER:  And certainly we address more than

20   just that issue in the letter brief and will respectfully

21   obviously be appropriate in our -- in our --

22         THE COURT:  All right.

23         MR. SCHANKER:  -- in any motion --

24         THE COURT:  Whoever files a motion on her behalf

25   needs to represent to me that they represent this person.

1          Mr. SCHANKER:  Fair enough.

2          THE COURT:  So the minute entry is going to reflect

3     that the return date on the subpoena is going to be extended

4     by two weeks.

5          MR. SCHANKER:  Thank you.

6          THE COURT:  I want to move on to the two issues

7     raised by Sanofi, and I'm going to hold off on the motion for

8     issuance of letters rogatory until the end.

9          As to the issue of *ex parte* contact with the treating

10    physicians, I've gone back over and reviewed Pre-Trial Order

11    70A as I -- as I interpret that order as it's written.  It

12    provides -- it does not provide, I don't think, for

13    post-deposition *ex parte* contact with the plaintiff's

14    treating physicians by the plaintiff's counsel.  I think it

15    only speaks to pre-deposition contact.  I think it --

16    although in this regard it is unclear, I think there is a gap

17    in what it provides.

18         What I'm going to do is -- I think it is reasonable

19    to expect that there would be *ex parte* contact with a

20    treating physician before trial testimony, and I'll make that

21    observation.  I think that what I want is for the parties

22    with that in mind to discuss -- and this shouldn't be very

23    complicated -- to discuss a provision or an addendum to

24    provide for appropriate notice.  And it'd be real easy for me

25    to just say the same rule on pre-deposition contact applies

1   for pre-trial, but 48 hours is not enough time.  So I want

2   you all to see if you can sit down and agree to a procedure

3   and just -- and just jointly submit it to the Court.  And if

4   not, after you all agree to disagree, if there is still

5   disagreement, then that will be an issue for you all to

6   submit to me for the next status conference in your letter

7   briefs, and we'll deal with it that way.

8        And I may deal -- I may handle it.  If it is still a

9   dispute, I'll probably talk to Judge Milazzo about whether

10  she wants me to do that or whether she wants to do it because

11  70A was issued by Judge Engelhardt.  But I don't really think

12  that that's a big problem.  So I think that you all should

13  provide for that sort of contact.  I don't think it's

14  unreasonable to think that a plaintiff's attorney would have

15  contact with the plaintiff's treating physician before trial.

16       MR. MICELI:  Your Honor, can I ask just for one

17  housekeeping clarification point?

18       THE COURT:  Uh-huh.

19       MR. MICELI:  David Miceli for the record.

20       I've communicated with Ms. Byard and Ms. Menzies.

21  This arose out of an attorney -- excuse me -- a doctor

22  contacting about a payment for their time.  After I

23  communicated, as you read in the letters from both sides, it

24  was requested that we not speak with him any further and we

25  haven't.  However, his bill is still out there.  We sent him

1  payment by the invoice that he had provided to Ms. Menzies,

2  and I think then to us.  He then sent it back to us and said

3  it was incorrect.  We have to reissue another bill, but we

4  haven't spoken to him.  I'll be happy to have a joint

5  conversation with him just about that bill, but because we

6  have agreed not to --

7      THE COURT:  You all ought to be able to pay

8  witnesses -- I mean, you ought to be able to handle these

9  sorts of minutia without having to worry about accusing each

10 other of having improper *ex parte* communication --

11     MR. MICELI:  I agree, Your Honor.

12     THE COURT:  That's not improper.  Okay.  Getting

13 somebody's bill paid is not an improper *ex parte* contact.

14     MR. MICELI:  Thank you, Your Honor.

15     MS. BYARD:  Your Honor, just one point on that, would

16 Your Honor be willing to have us revisit the issue of finding

17 out about those payments if they take place after the

18 deposition?  Because at the time of the deposition, those

19 payments ordinarily have not been made, so we didn't have --

20     THE COURT:  Remind me --

21     MS. BYARD:  -- visibility of the fact of the payments

22 --

23     THE COURT:  -- what PTO 70A says in terms of what

24 information is supposed to be provided.

25     MS. BYARD:  The dates, the durations, the items

1  reviewed.  It doesn't include any mechanism for disclosure of

2  payments made at that time.

3          THE COURT:  You all talk about that because I think

4  that's appropriate information.  I mean, if a treating

5  physician's been paid for his deposition or for consulting,

6  for his time, that's grist for the mill, and if it's

7  happening after the deposition, it ought to be disclosed to

8  defense counsel.  That's pretty straightforward.

9          MS. BYARD:  Thank you, Your Honor.

10          THE COURT:  All right.  On the non-Bellwether ESI

11  deficiency protocol, the PSC's vehement disagreement that

12  such protocol is necessary at this time is noted by me and is

13  overruled as we previously discussed.

14          What I want at the next status conference is a

15  comprehensible -- by me -- readable, agreed to joint

16  submission that explains to me any differences of opinion as

17  to what the protocol ought to look like.  We are talking

18  about -- I think it's Pre-Trial Order 71A, ESI deficiencies.

19  I want you all to talk -- I had asked for that to be

20  accomplished some time ago.  It has not yet been

21  accomplished.  I want it to be accomplished by the next

22  status conference.

23          And what I want you all to jointly present to me is

24  some document that I can read and understand and comprehend

25  where the differences of opinion are, whether it's a redline

1   or some side-by-side comparison so that you all can -- and

2   then show me what the differences are and explain your

3   positions.

4       The one thing that I will say is that I do not

5   anticipate being convinced that any deficiencies in the

6   plaintiff fact sheets are going to be touched by this

7   protocol.  There is a deficiency protocol for plaintiffs fact

8   sheets.  This is separate, and as far as I'm concerned, never

9   the twain shall meet.  I know that's a matter of disagreement

10  among you all.  As to substance on this issue, that's my only

11  comment.  And, again, that will be in the minute entry in

12  terms of my expectations on that issue.

13      All right.  Shirley Ledlie, who for the PSC is going

14  to handle this matter?  Mr. Coffin?

15      MR. COFFIN:  I am, Your Honor.

16      THE COURT:  Do you have anything to say that you

17  haven't said in the PSC's letter or in the brief that you all

18  filed?

19      MR. COFFIN:  I do.

20      THE COURT:  Let me hear it.

21      MR. COFFIN:  Two main issues, number one, the CMOs

22  that have been laid out in this case, the CMOs are very

23  particular about the number of depositions that are to be

24  taken by both sides in Phase I and Phase II.  When you look

25  back at those CMOs, you recognize that in Phase I, the

1    defendants are entitled to a plaintiff plus three

2    depositions, and in Phase II, it's broader.  Obviously, all

3    of those depositions have to be relevant in order for them to

4    go forward, but the question then becomes if the deposition

5    is permitted, what case is it being taken in because we've

6    removed her from our may call list.  It can't be relevant to

7    those trial plaintiffs.  We see no relevance.  They had no

8    communication with her.  So which case is the deposition

9    being taken for?

10            And I think when you look back at the CMOs, you have

11   to determine -- we have to determine, assuming the Court

12   allows it, which case it goes to because we don't think it's

13   relevant to any case.  That's my first point that's not in

14   the papers.

15            The second point that's not in the papers is the

16   proportionality issue.  This is an MDL in which both sides

17   have expended massive amounts of resources, and now the

18   defense is coming in and talking about a witness that is no

19   longer on a witness list, that is not going to be called, a

20   witness that's not going to be called by the plaintiffs, yet

21   they feel that it's proportional to have us expend the

22   resources to fly to France and take -- so they can take this

23   woman's deposition, again, which we feel is entirely

24   irrelevant.  So proportionality I don't believe was mentioned

25   in our papers, and that's -- that's the second issue.

1            The only other thing I would say, Your Honor, is that

2      it feels over and over as if we are spending time going down

3      this Taxotears group trail, and we're spending a lot of

4      resources on it.  And we've heard from both Judge Milazzo and

5      Your Honor that we're supposed to be focusing on these trial

6      plaintiffs, which is the purpose of the MDL.  The purpose of

7      an MDL, despite what the defendants continue to say, is not

8      to work up every single plaintiff case for trial.  And even

9      if it were in this case, Judge, they need to show which

10     plaintiff's case it's relevant to because none of them that

11     are set for trial is Ms. Ledlie relevant to.  That's all I

12     have to say for now, Your Honor.

13            THE COURT:  All right.  I don't want to start with

14     the fact that we've been talking about the Shirley Ledlie

15     deposition since April of this year and that after all that

16     time and effort we now have finally a motion for issuance of

17     letters of request to take the deposition.  And we have an

18     opposition to that motion which I mentioned on the phone last

19     week to Mr. Coffin and others.  It was both a surprise and a

20     disappointment to me.

21            On April 25th, we had a hearing during which Sanofi

22     was arguing that the Court should grant in excess to a

23     wide-ranging assortment of discovery as to the Taxotears

24     Google group up to and including a court-ordered preservation

25     order issued to Google under the Stored Communications Act.

1    Sanofi was seeking extensive discovery of parties and

2    non-parties related to the Taxotears group.

3         As you all remember, I know, because I know I

4    certainly do, the PSC was arguing, as it just did through Mr.

5    Coffin this morning, that such wide range in discovery was

6    unnecessary, was inappropriate, was, I guess,

7    disproportionate, and in seeking to stave off that discovery

8    made a number of observations and statements to the Court.

9         At the April 25th status conference, Ms. Menzies told

10   the Court "There is an avenue for counsel to obtain discovery

11   from Ms. Ledlie.  Even though she is a third party, we named

12   her as a witness, as we told you in our paper.  They can

13   notice her deposition, and they can request everything she

14   has.  I have talked to her about that and we understand

15   that."

16        A little later in the same hearing, Ms. Menzies said,

17   "So they" referring to Sanofi "want us to do their

18   third-party investigation for them.  Your Honor, they have

19   Shirley Ledlie."

20        I made the observation which remains true today that

21   I am but a humble magistrate judge.  I said I'm not an expert

22   in these matters.  I have one set of lawyers telling me one

23   thing, information is accessible, and I have another set of

24   lawyers telling me it's not.

25        And I ask the question, "How do I answer that?  How

1    do I get to the bottom of what the truth is?"

2            Ms. Menzies offered, "What I would suggest, Your

3    Honor, is that they're trying to avoid discovery against the

4    originator of the support group, Shirley Ledlie.  We have her

5    on our witness list.  We will produce her even though she is

6    in France.  We will produce the documents.  They can request

7    everything she has about the Taxotears group.  I can tell you

8    if anybody has a large number of e-mails left over that

9    started back in 2008, 2009, it's going to be her.  They have

10   a right to do discovery against her because we have disclosed

11   her as a witness."

12           That's the transcript at Record Document 2401.

13           So following that conference on May 9th, I issued an

14   order providing in part that Sanofi could depose Ms. Ledlie,

15   and germane to the point that Mr. Coffin just made and that

16   that deposition will not count against any limits previously

17   imposed by the Court.  I made it clear as to non-party

18   Shirley Ledlie that Sanofi should comply with the Rules of

19   Civil Procedure and any other provisions or laws applicable

20   to discovery on non-parties and/or citizens of other

21   countries.

22           That is Record Document 2522.  The PSC did not appeal

23   that order.

24           So in May of 2018, five months ago, we got an order

25   stating that Sanofi could depose Ms. Ledlie subject to the

1   procedural requirements of her home country.  A month later

2   in June of 2018, Sanofi brought to my attention that the PSC

3   was refusing to produce Ms. Ledlie for a deposition after

4   affirmatively suggesting or stating to me that they would.

5   Responding to that argument in their June 12, 2018,

6   submission to the Court, prior to the status conference,

7   Ms. Menzies wrote in a footnote "Sanofi attempts to treat

8   statements made by counsel during a hearing as an offer by

9   the PSC to do what it cannot.  While the PSC stated it does

10  not object to the deposition of Shirley Ledlie, a non-party

11  who provided the PSC with e-mails from Pamela Kirby, that is

12  not the same as saying the PSC will or even can respond to a

13  document subpoena or produce her for a deposition."

14        Now, that may be true, but what is the same as saying

15  that is saying what Ms. Menzies said in the hearing, which is

16  "We will produce her even though she is in France.  We will

17  produce the documents.  They can request everything she has

18  about the Taxotears group."

19        Now, obviously we went through that.  We had a

20  follow-up conference.  Ms. Menzies explained at the hearing

21  that that statement that she had made at the previous hearing

22  was incorrect.  She apologized to the Court for making it.

23  And that's fine.  I accepted that apology.  I understood that

24  it was a statement made in the heat of battle during a

25  contested hearing, and I had no problem with that.  I didn't

1   penalize or punish the PSC or anyone for making that

2   statement.

3        What I did do was on June 13th, I issued another

4   order restating verbatim what I had already ordered in May,

5   that the deposition was to go forward, that it wouldn't count

6   against any previously imposed limits, and it would be taken

7   subject to the procedural rules of whatever country

8   Ms. Ledlie resided in at the time.

9        That was Record Document Number 3074.  That order was

10  not appealed.

11       As recently as three weeks ago, I asked the PSC to

12  provide Sanofi with an address for Ms. Ledlie given their

13  substantial contact with her, and I was told at the hearing

14  that -- I think Mr. Miceli had given that information to

15  counsel for Sanofi.  And Mr. Ratliff stood up and said, "Just

16  by way of preview, Judge, we will imminently issue to you a

17  motion for issuance of letters rogatory."  And the lawyers

18  for the PSC sat right where you're sitting right now in

19  silence, said nothing, raised no objections, just let that

20  go, and we moved on to the next topic.

21       So now that we've -- six months down the road,

22  Sanofi's put together its motion, which by all appearances to

23  me complies with French law, including translating all of it

24  into French, and we're here with the PSC objecting on grounds

25  that could have been raised six months ago.

1        After all this time and after all the time I've

2   spent, you all have spent, Sanofi's lawyers have spent on the

3   issue, after the PSC invited the deposition of Ms. Ledlie in

4   April, after it actually agreed to produce her and her

5   documents at the same hearing, after it failed to appear not

6   one -- appeal not one, but two orders allowing for the

7   deposition to go forward, I am met with numerous objections,

8   many of which the PSC does not have standing to make on

9   behalf of a non-party who they do not represent, and I'm met

10  today with two additional objections that there is a Case

11  Management Order on the number of depositions.  My orders, my

12  two orders, of May and June explicitly provide that those

13  limits are not relevant as to Ms. Ledlie's deposition.

14       The question of proportionality could have been

15  raised and should have been raised in April and May.  Rather

16  than raise proportionality in April and May, the lawyers for

17  the PSC were inviting the deposition to take place, were

18  complaining that Sanofi was resisting taking this deposition.

19  But now we have an objection which I consider to be an

20  11th-hour objection.

21       I think it's an improper objection.  I think it is --

22  if not gamesmanship, is bordering on gamesmanship, and is

23  interposed strictly for the purpose of delay.  If Sanofi had

24  asked me to award sanctions under these circumstances, I

25  probably would have.

1          Now, I know that everybody in this room are smart

2     lawyers, and I think that you all should be smart enough to

3     know that I am not going to be convinced by these arguments

4     at this point in this case after six months of litigating

5     this issue against the factual context, all of the factual

6     context that I just repeated.  I'm going to sign the order.

7     Any resistance to the deposition as far as I'm concerned is

8     going to be denied and the matter will be left to Ms. Ledlie

9     and her -- her lawyers, whoever else wants to take issue with

10    whatever it is that Sanofi wants to depose her about or

11    whatever documents that they want to get from her.

12         But, frankly, I don't know the right word to use to

13    describe my reaction to the PSC's position that they took

14    when I got this motion.  It's not brought in good faith in my

15    view.  These are all arguments that could have been brought

16    six months ago.  If you really believe that these were

17    arguments that should carry today, you shouldn't have waited

18    for six months.  You raised the issue -- when I say you, I

19    mean the PSC lawyers who are here -- continued throughout

20    those six months to raise the prospect of taking this woman

21    off your witness list and mooting the whole issue, but that

22    hasn't occurred unless maybe it's occurred in the last couple

23    of days.  So if that's the cure to the problem, it should

24    have occurred long ago.

25         From my perspective, from this Court's perspective,

1    Ms. Ledlie's deposition will be taken.  Her documents will be

2    produced.  If a court in another country has a different

3    opinion, then so be it, but the ball will be in that court's

4    court.  Okay?

5          I would suggest in the future that you all -- I mean,

6    you all are intimately familiar with every contour and detail

7    of all of the pre-trial orders and all the case management

8    orders much more so than I am.  I suggest that when you take

9    positions on various legal issues and factual issues in this

10   court you go back and read the transcripts from the prior

11   hearings because I remember everything that happens in the

12   courtroom.  And I remember everything that you all give me.

13         And if there is a gap in my memory, I will go and

14   fill it because I have ready access to the record.  So I

15   suggest you all be prepared to do the same thing, and before

16   you take positions like the position that you all took today

17   with regard to this motion, you go back and revisit the

18   history of the issue over the last six months because I think

19   if you had done that you might have come to a different

20   decision as to whether you should even resist the current

21   motion.

22         All right.  I want to set the next status conference.

23   Actually I both brought my calendar with me and looked at

24   dates before I sat down.  Now I just need to find my notes.

25         The first -- the best date currently is November 7th

1 at 2:00.

2    MR. MICELI:  Your Honor, that's the date that expert

3 reports are due to be disclosed.

4    THE COURT:  You all want to be here instead?

5    MR. MICELI:  I certainly hope that all of those

6 reports are prepared to go at 9:00 in the morning, but they

7 may not be.  But just in case, I wanted to bring that to the

8 Court's attention.

9    THE COURT:  We're not going to do that.  We're not

10 going to do it then.

11    How about -- can we do the next day at 10:00?

12 November 8th at 10:00?

13    MR. OLINDE:  Your Honor, I am not able to do it

14 because that's the Xarelto status conference with Judge

15 Fallon.

16    MR. COFFIN:  Can we do it later in the day, Your

17 Honor?

18    MR. OLINDE:  2:00 would be fine.

19    THE COURT:  I can't do it at 2:00.

20    MR. OLINDE:  Even at 11:00.

21    THE COURT:  I might be able to do that.  Hold on.

22    Let's do 11:00.  That will give me an extra hour to

23 digest whatever you all e-mail me the night before.

24    MR. OLINDE:  Thank you very much.

25    THE COURT:  All right.  So right now there are two

1    issues -- there's one that I'm sure you all will submit to me

2    which is the ESI deficiency protocol.  The other one that I

3    mentioned was the pre-trial *ex parte* contact with physicians.

4    I'm hopeful that you all can work that out.  If not, that

5    will be included in the agenda and your submissions as well.

6          Anything else?

7          See you all in a few weeks.

8                          * * * *

9      (WHEREUPON, the proceedings were adjourned at 10:40 a.m.)

10                         * * * *

11                   REPORTER'S CERTIFICATE

12         I, Nichelle N. Drake, RPR, CRR, Official Court
     Reporter, United States District Court, Eastern District of
13   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
14   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

15

16              /s/ Nichelle N. Drake
                Official Court Reporter

17

18

19

20

21

22

23

24

25

────────────── OFFICIAL TRANSCRIPT ──────────────
Page 26