# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 16-2740<br><br>SECTION: "H" (5) |
| This document relates to all cases | ) | |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Review of Discovery Order Authorizing Discovery from Consulting Experts Before Any Expert Witness Designation Is Due (Doc. 4542). For the following reasons, **IT IS ORDERED** that the Motion is **GRANTED IN PART.**

## BACKGROUND

In his Order and Reasons dated September 24, 2018, Magistrate Judge North ordered the Plaintiffs' Steering Committee (the "PSC") to produce certain medical records to Sanofi.[1] This order followed Judge North's *in camera* review of the records at issue. Plaintiffs have resisted producing the records, claiming that they are protected by the consulting expert privilege pursuant to Federal Rule of Civil Procedure 26. According to Plaintiffs, the PSC facilitated the examinations by these doctors and obtained the records at issue solely for purposes of trial preparation.

In his ruling, Judge North concluded that Rule 26 did not protect the records because the records were those of treating physicians rather than consulting experts.

---

[1] Doc. 4259.

Judge North parsed the Plaintiff Fact Sheet ("PFS") and emphasized that the PFS requires each plaintiff to identify any "healthcare provider" who has provided treatment to the plaintiff in the last eight years; the definition of "healthcare provider" is broad, encompassing any diagnostic laboratory, any facility that provides psychiatric or psychological care or advice, and any laboratory, psychiatrist, psychologist, or other persons or entities involved in the evaluation of the plaintiff.[2] Further, Judge North noted that the PFS expressly requires a plaintiff to identify and produce any pathology reports or results of biopsies performed in connection with the plaintiff's hair loss.[3]

Judge North reviewed the records of three bellwether plaintiffs—Tanya Francis, Antoinette Durden, and Barbara Earnest. With regard to Tanya Francis, her PFS identified three physicians who treated her for the injuries alleged in this lawsuit—Dr. Martin Claiborne, Dr. Antonella Tosti, and Dr. Elizabeth Dimitri.[4] She identified Dr. Curtis Thompson as a doctor with whom she consulted for a "Dermatopathology Report."[5] In response to Judge North's order, Francis submitted for *in camera* review the pathology report of Dr. Thompson and certain photos that relate to her scalp biopsy. Judge North ruled that both are discoverable. In his order, Judge North noted that Dr. Thompson's pathology report sets forth diagnoses related to Francis's alopecia claims.

---

[2] Doc. 4259 at 3–4 & n.1 (citing Docs. 236 and 326).
[3] Doc. 4259 at 4.
[4] Sixth Amended Plaintiff Fact Sheet of Tanya Francis at 16.
[5] *Id.* at 23.

Plaintiff Antoinette Durden alleges, in addition to other injuries, that Defendants caused her to endure "past and future psychological counseling and therapy expenses" as well as "mental anguish," "severe and debilitating emotional distress," and "past, present, and future physical and mental pain, suffering, and discomfort."[6] She seeks damages for "mental anguish and distress."[7] In her PFS, uploaded to MDL Centrality on October 5, 2017, Durden conveyed that she had not sought treatment for her psychiatric or psychological condition.[8]

On March 30, 2018, Durden sat for a psychiatric evaluation with Dr. John Thompson, who diagnosed her with a certain disorder and recommended therapy. On April 23, 2018, Durden sat for a psychological evaluation that included a series of procedures. The records from this evaluation show that the doctor similarly made diagnoses and recommendations. The records of these doctors make clear that they were retained by the PSC, they reviewed Durden's prior medical records as part of the exams, and they reported their findings directly to the PSC.

Judge North noted that Durden's PFS is "silent in every respect" regarding the treatment and records at issue. He noted that she answered "no" to the question of whether she has had a scalp biopsy, and she did not reveal treatment by any of the doctors whose records were submitted to Judge North. Durden did, however, convey that she has received treatment for the injury alleged in this lawsuit, and she identified two treating physicians—Dr. Julie Mermilliod and Dr. Julie E. Martin.[9]

---

[6] Durden v. Sanofi S.A., et al., 2:16-cv-16635, Doc. 1, ¶ 152
[7] *Id.*, ¶ 161.
[8] Third Amended Plaintiff Fact Sheet of Antoinette Durden at 19.
[9] *Id.* at 16–17.

Judge North noted that while Durden claims to have suffered "mental or emotional damages" and states that she has not been treated for the psychiatric or psychological condition of which she complains, the records submitted to Judge North indicate otherwise. Judge North noted that Durden has been seen and treated by a psychiatrist and psychologist who made diagnoses and recommendations for more treatment. Judge North wrote that because Durden placed her emotional and mental condition at issue, the records of these doctors must be produced. He further ruled that the photographs and the pathology report from Durden's March 26, 2018 punch biopsy must be produced to Sanofi.

Like Durden, Earnest sat for a psychiatric evaluation with Dr. John Thompson on March 29, 2018, and she sat for a psychological evaluation on April 18, 2018. As Judge North noted, while her PFS is the same in all relevant aspects as Durden's, Earnest's PFS shows that she is not making a claim for mental or emotional damages. In light of this, Judge North ruled that Earnest need not produce any records from a psychiatrist or psychologist, but she must produce the photos and the pathology report she submitted to Judge North. Notably, in her PFS, Earnest conveyed that she has never received treatment for the injury alleged in this lawsuit, and, accordingly, she identified no treating physicians.[10]

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 72(a) addresses orders by magistrate judges on non-dispositive pretrial matters. Under the rule, a district judge must consider

---

[10] Second Amended Plaintiff Fact Sheet of Barbara Earnest at 18.

4

timely objections to such an order and "modify or set aside any part of the order that is clearly erroneous or is contrary to law."[11] The "clearly erroneous" standard applies to the factual components of a magistrate judge's ruling, while the legal conclusions are reviewable *de novo*.[12] Under the "clearly erroneous" standard, a court must affirm a factual finding of the magistrate judge "unless 'on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed.'"[13]

## LAW AND ANALYSIS

As Judge North noted in his ruling, the "consulting expert privilege" stems from Rule 26 of the Federal Rules of Civil Procedure.[14] Under subsection 26(b)(4)(D), the rule provides:

> (D) *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

The Advisory Committee Notes make clear that Rule 26(b)(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather

---

[11] Fed. R. Civ. P. 72(a).
[12] *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014). *See also Gressett v. City of New Orleans*, 2018 WL 3642008, at *4 (E.D. La. Aug. 1, 2018); *Donahue v. Smith*, 2017 WL 6604842, at *3 (E.D. La. Dec. 27, 2017).
[13] *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4185867, at *1 (E.D. La. Sept. 9, 2008). *See also Gressett*, 2018 WL 3642008, at * 4.
[14] Doc. 4259 at 1–2.

5

because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit."[15] According to the Notes, "[s]uch an expert should be treated as an ordinary witness."[16]

Judge North provided two bases for his ruling. First, he held that the physicians at issue are treating physicians rather than consulting experts under Rule 26. Second, in the alternative, he held that, even if these physicians could be considered consulting experts, Sanofi has demonstrated that exceptional circumstances exist, per subsection 26(b)(4)(D)(ii). This Court reaches the same conclusion as Judge North and agrees that the records should be produced, but this Court relies on Rule 35 of the Federal Rules of Civil Procedure. However, this Court will nonetheless discuss Rule 26 in an effort to clarify for the parties when a person may be considered a consulting expert under Rule 26.

Rule 26 prompts a court to distinguish between a "percipient witness who happens to be an expert" and "an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide opinion testimony."[17] Rule 26 contemplates a consulting expert as one who is retained or specially employed for the

---

[15] Fed. R. Civ. P. 26 advisory committee's note.
[16] *Id.*
[17] *See* LaShip, LLC v. Hayward Baker, Inc., No. 11-0546, 2013 WL 12202649, at *6 (E.D. La. Aug. 13, 2013). The issue in *LaShip* differed from the issue here, but the analysis is nonetheless applicable. In *LaShip*, Judge Nannette Jolivette Brown considered whether certain witnesses were required to produce expert reports under Rule 26(a)(2)(B) or whether they should instead produce simpler disclosures pursuant to Rule 26(a)(2)(C). Rule 26(a)(2)(B) requires reports from experts who are "retained or specially employed for provide expert testimony in the case"—i.e., consulting experts—whereas Rule 26(a)(2)(C) requires a simpler disclosure from fact witnesses who happen to be experts. *See* Fed. R. Civ. P. 26(a)(2).

purpose of offering expert opinion testimony.[18] Accordingly, the "distinguishing characteristic" between consulting expert opinions and other opinions is "whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others in a manner other than by being a percipient witness to the events in issues."[19]

A person is not a consulting expert if he is "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven," whose opinion about causation is premised on personal knowledge and observations made in the course of treatment.[20] An expert whose opinion testimony "arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation" is not a consulting expert.[21]

Judge North relied on *Jones v. Celebration Cruise Operator, Inc*.[22] In *Jones*, a cruise passenger suffered injuries while on board the ship.[23] After litigation began, his lawyer sent him to a doctor who performed an MRI.[24] The lawyer then shared the MRI report with defense counsel, and defense counsel sought records from the

---

[18] *See id.*
[19] Verret v. State Farm Fire & Casualty Co., No. 13-5596, 2014 WL 12742607, at *1 (E.D. La. Apr. 23, 2014). *See also* Parker v. NGM Ins. Co., No. 15-2123, 2016 WL 3198613, at *2 (E.D. La. June 9, 2016) ("Some courts have noted that the 'relevant question' is whether the 'treating physicians acquired their opinions . . . directly through their treatment of the plaintiff.").
[20] *LaShip*, 2013 WL 12202649 at *7.
[21] *Id.*
[22] No. 11-61308, 2012 WL 1029469 (S.D. Fla. Mar. 26, 2012).
[23] *Id.* at *1.
[24] *Id.*

7

doctor.[25] The plaintiff's counsel moved to quash the subpoena, arguing that he retained the doctor in anticipation of litigation and that the examination was at the request of his attorneys and not for purposes of treatment.[26] The defendant argued that the doctor was a treating physician because he had prescribed an MRI and recommended surgery to the plaintiff.[27]

The court found that the doctor had acted as a treating physician.[28] The court wrote that the doctor "appears to have recommended a proposed treatment different from that of any of Plaintiff's prior health providers."[29] In doing so, he "ceased acting solely as a non-testifying, consulting expert and took on the role of a treating physician."[30] As a result, any information on which he relied in proposing surgery for the plaintiff "became a subject of factual discovery, unprotected by Rule 26(b)(4)."[31]

Judge North held that, like the doctor in *Jones*, the doctors in the instant case, although originally retained by counsel, became actors in the factual narrative of the case. After his *in camera* review of these physicians' records, Judge North held that the records "reveal both diagnoses and recommendations for future treatment" and that they are based "not on the review of other providers' medical records as is usually the case with purely 'consulting' experts, but on actual meetings between the doctors and [Plaintiffs] and testing of [Plaintiffs] by those doctors."[32]

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at *2.
[28] *Id.* at *3.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] Doc. 4259 at 6.

8

This Court concludes that Rule 26 is not applicable here. This Court agrees with Judge North that the doctors at issue are not consulting experts. Although these experts were selected, retained, and paid by the PSC, these doctors did more than review the records of other providers. These doctors saw the Plaintiffs in person or, in some cases, examined Plaintiffs' tissue. They acquired their information through percipient observations. Because of this, they fall outside of the definition of consulting experts. If these doctors, who are designated as non-testifying experts, had only reviewed medical records and never met with the Plaintiffs or observed their tissue samples, then they would be consulting experts.

Similarly, these experts do not qualify as treating physicians. As previously noted, the doctors were selected, retained, and paid by the PSC, not by the individual Plaintiffs. While the doctors may have made diagnoses and recommendations as Judge North observed, the doctors communicated these opinions directly to the PSC, not to the Plaintiffs. This fact distinguishes this case from the *Jones* case, in which the doctor made a surgery recommendation to the plaintiff and thereby became part of the factual narrative of the case. The doctors here did not become a part of the factual narrative of this case. None of these doctors met with any of these Plaintiffs more than once, and each meeting that occurred spanned a mere few hours—just long enough to conduct an examination. The fact that these Plaintiffs did not return to any of these doctors for follow-up visits further convinces this Court that these were not treating physicians.

There is no rule in the Federal Rules of Civil Procedure that squarely applies to the circumstances before this Court. However, in order to equitably adjudicate this dispute, this Court concludes that Rule 35 best fits this situation. These experts are akin to examining experts under Rule 35, and the examinations they have conducted are akin to independent medical examinations. Rule 35 allows for the examination of a party whose mental or physical condition is in controversy.[33] The rule refers to "a physical or mental examination by a suitably licensed or certified examiner,"[34] and the rule requires notice to all parties when a motion for such an examination is made.[35] The rule further requires a party to deliver, on request, a copy of the examiner's findings, including diagnoses, conclusions, and the results of any tests.[36] The rule even provides that an opposing party may obtain "like reports of all earlier or later examinations of the same condition."[37] If a party fails to deliver this information, the court may exclude the examiner's testimony at trial.[38]

The PSC cannot send the Plaintiffs to these examining experts and expect to withhold from Defendants all of the information surrounding the examinations. This would give the PSC an unfair advantage—the Defendants could never send the Plaintiffs to examining experts without the PSC learning of it. In light of the foregoing, this Court concludes that, pursuant to Rule 35, the PSC must disclose the records at issue to the Defendants. Further, given Rule 35 and its tendency toward

---

[33] Fed. R. Civ. P. 35(a)(1).
[34] *Id.*
[35] Fed. R. Civ. P. 35(a)(2)(A).
[36] Fed. R. Civ. P. 35(b)(1).
[37] Fed. R. Civ. P. 35(b)(3)
[38] Fed. R. Civ. P. 35(b)(5).

disclosure, this Court agrees with Judge North that Plaintiffs must amend their Plaintiff Fact Sheets to reflect that these examinations have occurred.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Plaintiffs' Motion for Review of Discovery Order Authorizing Discovery from Consulting Experts Before Any Expert Witness Designation Is Due (Doc. 4542) is **GRANTED IN PART**. The Court has already ordered the PSC to produce the records at issue to Defendants by October 26, 2018. However, the PSC need not produce an expert report from any examining expert until the expert report deadline.

**IT IS FURTHER ORDERED** that any Plaintiff who has had a punch biopsy or any kind of examination by an examining expert as defined in this opinion must amend her Plaintiff Fact Sheet to disclose this information.

New Orleans, Louisiana this 1st day of November, 2018.

HON. JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE