UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL No. 2740 |
| | SECTION: "N" (5) |

THIS DOCUMENT RELATES TO:

*Kelly Gahan*
Case No.: 2:16-cv-15283

**PLAINTIFF'S REPLY IN SUPPORT OF RULE 59 MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING IN PART SANOFI'S MOTION FOR RULE 37 SANCTIONS**

Sanofi's response is little more than a litany of additional grievances with one unifying element – Sanofi has not conferred with counsel for Dr. Gahan on a single one. Federal Rule of Civil Procedure 37 requires conferral. This Court's case management orders require conferral. Sanofi short-shrifted this Court's conferral obligations when it filed its initial motion for sanctions – and was rewarded. Now it is doing it again – and seeking additional sanctions for "omissions" it has never discussed with Dr. Gahan's counsel in any respect.

Sanofi's motives are clear – its response is designed solely to distract the Court from the central premise of Dr. Gahan's motion – fees and costs cannot be awarded under Rule 37 in the absence of a determination that Dr. Gahan violated an order requiring her to produce documents – and all such documents the Court ordered her to produce were unquestionably provided prior to Sanofi's motion for sanctions. Any other "misconduct" by Dr. Gahan was moot at the time Sanofi filed its motion for sanctions – precluding an award of attorney fees and costs.

**LAW AND ARGUMENT**

A. <u>Rule 37 Prohibits an Award of Costs and Attorney Fees When the Alleged Obstruction Has Been Cured Prior to the Filing of a Motion to Compel or for Sanctions</u>

1

The relevant point in determining whether a party has failed to cooperate in discovery for purposes of Rule 37 is the status of production at the time the motion to compel or for sanctions is filed. Fed. R. Civ. P. 37(a)(5). Sanofi attempts to confuse this issue by arguing that the Court issued sanctions under Rule 37(b) – thus implying the clear direction of Rule 37(a)(5) does not apply. But sanctions under 37(b) are not to be sought until after a party has obtained an order to compel under 37(a). GFI Computer Indust., Inc. v. Fry, 476 F.2d 1, 4 (5th Cir. 1973). Thus, regardless of which particular provision of Rule 37 Sanofi relied upon in its motion, the "inflection point" of Rule 37(a)(5) must apply. The Court cannot grant sanctions for discovery "misconduct" under Rule 37 if such "misconduct" had been cured prior to Sanofi filing a motion to compel – or in this case, its procedurally improper motion for sanctions.

The 37(a)(5) inflection point serves important public policy and judicial efficiency purposes, and its plain language should not be ignored.

**First** – maintaining the focus on the status of discovery at the time a motion to compel or for sanctions is filed maintains a bright line from which the Court can ascertain whether a party has complied with their discovery obligations.

**Second** – it ensures that the Court is not wasting its time or resources on disputes that are moot or non-prejudicial to the party filing the motions. Permitting a party to seek sanctions for discovery "misconduct" that has been cured is wasteful. Permitting a party to seek sanctions for discovery "misconduct" that has been cured simply disincentivizes parties from conferring to solve discovery disputes. Instead, parties would be incentivized to marshal its grievances in order to obtain sanctions – exactly what Sanofi has done here.

**Third** – permitting a party to seek sanctions for discovery "misconduct" that has been cured incentivizes a party to conduct "discovery on discovery" – a practice this Court has repeatedly discouraged in this very case.

All three of these important policy considerations are implicated by Sanofi's actions in this case. Having been provided 9,000 pages of Dr. Gahan's emails, communications, and photographs, Sanofi ascertained that the information suggested in these materials was not *perfectly* consistent with the answers she provided on her PFS. Rather than confer in good faith with Dr. Gahan's counsel to reasonably determine which of these inconsistencies was relevant and providing Dr. Gahan an opportunity to cure or supplement – Sanofi stored up its grievances and unleashed them in its motion for sanctions.

B.  Dr. Gahan's Motion is Premised on Mistake of Fact

Sanofi contends that there is no mistake of fact underlying the Court's sanctions order, because Sanofi was requesting all the photographs Dr. Gahan "took for" Dr. Weinstein, rather than all the photographs she sent to him. This distinction is pure sophistry – Dr. Gahan sent to Dr. Weinstein all the photos she took for him. But this does not matter, because the Court's order is clear in what it was ordering Dr. Gahan to produce – and therefore presumably concluded she withheld – "all of the photos that **she provided** to Dr. Weinstein; this includes all the photos **she sent to him** before, during, and after his treatment of her." (Doc. 3917 at ¶ 1)(emphasis added). The record is now indisputably clear that Sanofi was *twice* provided these photographs – once by Dr. Gahan and once by Dr. Weinstein – *before* it filed its motion for sanctions. Sanofi does not pretend otherwise.

Whether Sanofis' counsel deliberately misled the Court when he represented that the photographs had not been produced presents a closer question. It's remotely plausible he was referring to this esoteric "took for/sent to" distinction in responding to the Court's inquiry into whether the photographs Sanofi *wanted* had been produced. The question is not close, however, as to Sanofi's counsel's statements to the Court that Sanofi conferred with counsel for Dr. Gahan on this point before filing for sanctions, and that Dr. Gahan's counsel "refused" to produce the photographs. Neither Sanofi's conferral letter, motion, or response mentioned this esoteric distinction in any

3

manner – leading to the more plausible possibility that Sanofi's counsel simply made it up in response to Dr. Gahan's motion for reconsideration. But there is simply no dispute that a mistake of fact underlies the Court's order awarding sanctions to Sanofi.

    C. <u>The Mistake of Fact Warrants Reconsideration of the Court's Order Awarding Attorney Fees and Costs</u>

While there is no dispute that the Court's order included a mistake of fact, the secondary question is whether that mistake of fact was germane to the Court's decision to award the sanctions it did. Dr. Gahan suggests that the true record requires a substantially different weighing of the equities. Remembering that the relevant inflection point is the state of discovery at the time the Rule 37 motion was filed, the following facts are undisputed:

1. Sanofi learned of Dr. Weinstein's "treatment" of Dr. Gahan through the emails she produced to Sanofi as part of her ESI disclosure on March 2, 2018.

2. Dr. Gahan's email disclosure included every photograph she sent Dr. Weinstein except one – which was attached to an email that did not trigger the ESI protocol's search terms.

3. Sanofi subpoenaed and obtained Dr. Weinstein's complete records on May 11, 2018. These records were the emails Dr. Gahan had already provided, including all the photographs exchanged between them.

4. Sanofi deposed Dr. Gahan on May 16, 2018, with the full benefit of every email and every photograph exchanged between Dr. Gahan and Dr. Weinstein. Dr. Gahan testified about her use of Dr. Weinstein's elixir and communications with him without reservation.

5. On May 22, 2018, Sanofi's counsel "conferred" with Dr. Gahan's counsel regarding it intent to seek sanctions if Dr. Gahan did not capitulate to a series of unreasonable demands – none of which were ultimately granted by the Court in its order. Sanofi's counsel did not mention any concerns with respect to its possession of the photographs Dr. Gahan "sent" to Dr. Weinstein, nor did they mention the esoteric distinction it raises in its response. Rather, Sanofi

threatened sanctions for Dr. Gahan's "failure" to produce every photograph of herself in her possession – an unduly burdensome demand this Court did not see fit to order her to comply with.

6. On June 6, 2018, Sanofi filed a motion seeking sanctions for Dr. Gahan's conduct in allegedly "obstructing" its efforts to obtain Dr. Weinstein's records – which it already had in their entirety. Again, Sanofi's motion was not premised on not possessing the Weinstein photos. It was premised on not having all of Dr. Gahan's photos.

This record clearly establishes that the only relevant "withholding" of any discovery related to Dr. Weinstein's treatment, at the time Sanofi filed its motion for sanctions on June 6, 2018, was her omission of Dr. Weinstein as a "medical provider" on her PFS. Regardless of the propriety of this decision, there is no dispute that Sanofi knew about Dr. Weinstein, had every record and communication between Dr. Gahan and Dr. Weinstein, and possessed every photograph exchanged between Dr. Gahan and Dr. Weinstein. Absolutely no prejudice accrued to Sanofi in any way out of Dr. Gahan's omission of Dr. Weinstein from her PFS.

So the question before the Court is whether, under these undisputed facts, the Court would have still awarded Sanofi sanctions under Rule 37 – where the only "thing" missing was Dr. Gahan's *pro forma* identification of Dr. Weinstein on her PFS. It's Dr. Gahan's position that maintaining sanctions under these circumstances is unconscionable under Rule 37 – an unwarranted elevation of form over substance. Dr. Gahan also believes attorney fees and expenses cannot be awarded under these circumstances, because under Rule 37(a)(5) – there was simply nothing to compel at the time Sanofi filed its motion for sanctions on June 6, 2018.

Again, Dr. Gahan is not seeking reconsideration of the Court's order in its entirety – although she believes such relief would be warranted. Dr. Gahan will sit for another deposition. Dr. Gahan will respond to Sanofi's written discovery – even though she is no longer a bellwether plaintiff. Dr.

5

Gahan will amend her PFS to painstakingly identify any information or individuals even arguably within its scope – even though she will do so largely from review of her own ESI production that Sanofi has also reviewed. But the Court's award of expenses and costs is completely disproportional to any offense or conceivable harm to Sanofi. The mistake of fact regarding the Weinstein photographs underlying the Court's original order is undisputable. Under these circumstances, if the Court will not vacate its award of expenses, Dr. Gahan requests that the Court enter specific factual findings identifying the Rule 37 cognizable discovery violations underlying its sanctions order in the interests of a clear record.

> D. <u>The Court Should Reconsider its Sanctions Order to the Extent it Awarded Sanctions Based on Dr. Gahan's Alleged Attempt to Obstruct Sanofi from Obtaining Her VA Records Without Reviewing Dr. Gahan's Response to Sanofi's Supplemental Brief</u>

The Court's order awarding sanctions against her cited extensively to Sanofi's supplemental brief regarding her alleged conduct in blocking the VA from providing her entirely unremarkable employment records but did not cite at all to the supplemental brief Dr. Gahan filed contesting those allegations. Dr. Gahan found this omission unusual, especially in light of the Court's finding that she provided "no explanation" for her conduct, and simply wonders whether the Court read her response. If the Court read the response brief and simply chose to disregard it, Dr. Gahan believes an explanation is warranted in the interests of a full record. Dr. Gahan has no idea why Sanofi would find this objectionable. Ultimately, the VA's later response to Sanofi's records request (after Dr. Gahan obtained and uploaded the records to MDL Centrality) demonstrates that the version of events presented in her supplemental brief is more plausible than the "obstruction" conjured by Sanofi. The VA did not respond to Veritext's request because Veritext withdrew the request – not because Dr. Gahan had the authority to prevent the VA from responding to a valid FOIA request. She does not have that authority. She never had that authority. Sanofi's fabrication of "obstruction" is based on the false premise that she did have that authority.

Dr. Gahan also questions why the Court would require her to pay Sanofi's expenses and fees in writing the supplemental brief when it is undisputed that Sanofi never conferred with her counsel about the problem. Was reasonable conferral excused simply because Sanofi filed a motion for sanctions on the basis of completely different discovery "misconduct?" Dr. Gahan finds no basis under Rule 37 for this conclusion.

E. <u>Sanofi's Attempt to Poison the Well Must be Disregarded</u>

Sanofi dedicates four of ten pages in its response brief to addressing Dr. Gahan's substantive claims and spends the remainder of its brief airing grievances that were never raised in its motion for sanctions. Furthermore, Sanofi has not conferred with Dr. Gahan's counsel about a single one of these alleged omissions. The Court should recognize this for what it is – a transparent attempt to distract the Court from the legal merits of Dr. Gahan's motion – to poison the Court's mind against her. A request for sanctions under Rule 37 should not be a moving, evolving target. Sanofi's conduct violates fundamental due process principles of fair play and substantial justice. If Sanofi believes it has discovered relevant omissions – it can confer – and file a motion for additional sanctions if the parties cannot reach a resolution. Dr. Gahan should not be forced to respond to these new allegations within the severe restrictions of a ten-page reply brief.

Despite the complete impropriety of Sanofi's newly asserted bases for additional sanctions, Dr. Gahan will respond to some of these allegations because the logic behind them illustrates the fundamental unfairness and abusiveness of Sanofi's discovery tactics against Dr. Gahan.

Sanofi first contends that Dr. Gahan refuses to comply with the Court's sanctions order. This is untrue. Sanofi cherry-picks isolated sentences from paragraphs of emails discussing how she would comply with the Court's order. Dr. Gahan is confident the Court will see the truth based on the entirety of those communications Dr. Gahan provided as an exhibit to her motion. Dr. Gahan has not "refused" to supplement her PFS – she simply requires more time to do so – knowing now that

7

any minute, imaginable discrepancy between her PFS answers and extensive ESI disclosure will lead to a motion for additional sanctions by Sanofi. Dr. Gahan has not "refused" to schedule her additional deposition – her counsel has simply questioned the wisdom of doing so before Dr. Gahan has an opportunity to revise her PFS and respond to Sanofi's written discovery. Dr. Gahan is quite certain that Sanofi would seek yet another deposition if discovery responses were served after Sanofi obtained the continued deposition. The Court should be aware that Dr. Gahan is no longer a bellwether plaintiff – Sanofi provides no explanation for the urgency of its demands.

Despite the fact that she has not yet amended her PFS, Sanofi is seeking additional sanctions for alleged "omissions" on her current PFS that may not be omissions at all. For example, one of the "providers" Sanofi claims Dr. Gahan failed to disclose is a cosmetic surgeon who provided her skin laser treatment for her acne – not treatment required to be disclosed on the PFS. Two of the alleged "providers" are individuals Dr. Gahan does not recognize. PRP therapy is the injection of Dr. Gahan's own blood cells back into her body – treatment that is not unambiguously required to be disclosed on the PFS. Furthermore, the PFS does not even require the disclosure of prescription medication "usage" – it requires disclosure of pharmacies used, from which Sanofi obtains records concerning prescription medication usage. Real issues exist with respect to Sanofi's "newly discovered" omissions, and Sanofi's attempt to distract the Court from the similarly real issues underlying Dr. Gahan's motion for reconsideration is fundamentally unfair.

Furthermore, the unifying element in these disparate allegations is that Sanofi "learned" of them only through its "recent" review of Dr. Gahan's March 2, 2018 ESI disclosure. Dr. Gahan finds it disingenuous and implausible that Sanofi only reviewed Dr. Gahan's extensive email production after Dr. Gahan filed her motion for reconsideration – but the fact remains that Sanofi is seeking additional sanctions for Dr. Gahan's alleged "concealment" of information that Dr. Gahan disclosed to it eight months ago.

Sanofi could have asked Dr. Gahan about these "concealed" providers or prescription drug remedies during her deposition on May 16, 2018, because it had this information on March 2, 2018.

For eight months, Sanofi could have used its virtually limitless authority to request or subpoena records from these "providers" – as it has done in countless other instances. Sanofi does not need this Court's permission to request records from these providers. It has always had the authority it seeks from the Court under PTO 22.

For eight months, Sanofi could have conferred with counsel for Dr. Gahan concerning these "providers" or "treatments," and her counsel would have worked with Sanofi to obtain clarification of these issues or obtained the relevant records and disclosed them – just as it did with Dr. Gorsline's records. Sanofi has never conferred with Dr. Gahan's counsel concerning these issues. Without conferral, no additional sanctions can be imposed – although sanctions would be unwarranted in any case, because Dr. Gahan self-evidently disclosed information related to these providers in her ESI disclosure.

## CONCLUSION

Plaintiff Kelly Gahan respectfully requests the Court to reconsider its order granting Sanofi its costs and attorney fees incurred in bringing its motion for sanctions. The record is now clear that the motion was unwarranted and unnecessary. Sanofi had all the photographs Dr. Gahan sent to Dr. Weinstein prior to the time Sanofi filed its motion for sanctions. While the Court may have questioned Dr. Gahan's motives in communicating with Dr. Weinstein about Sanofi's records requests, that conduct is not sanctionable under Rule 37, when the record is indisputably clear that Sanofi possessed all of Dr. Weinstein's records – and Dr. Gahan's photographs sent to Dr. Weinstein – prior to Sanofi's motion for sanctions. At that point, any alleged misconduct by Dr. Gahan was moot. The mistake of fact made by the Court in ordering sanctions warrants reconsideration.

October 30, 2018                Respectfully Submitted,

/s/ *Darin L. Schanker*
Darin L. Schanker
Scot C. Kreider
BACHUS & SCHANKER, LLC
1899 Wynkoop Street
Ste. 700
Denver, CO 80202
(303)899-9800
F: (303)893-9900
d.schanker@coloradolaw.net
scot.kreider@coloradolaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/Darin L. Schanker