UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Durden v. Sanofi S.A., et al., 16-16635

### MEMORANDUM IN SUPPORT OF PLAINTIFF ANTOINETTE DURDEN'S MOTION TO ENFORCE CMO 12A

MAY IT PLEASE THE COURT:

Plaintiff Antoinette Durden respectfully submits this memorandum in support of her Motion to Enforce CMO 12A, Amended Product Identification Order (Rec. Doc. 3492). Plaintiff seeks a determination by the Court that, pursuant to CMO 12A, the documents produced by Ochsner and Molina Medicaid Solutions, each of which identifies Sanofi as the manufacturer of the Taxotere/docetaxel by specific NDC codes, are not only presumptive evidence to prove identification of the manufacturer in her case, but also "affirmative evidence of the identity of the manufacturer" because Defendant Sanofi's purported "contrary evidence" is insufficient to overcome the presumption set forth in CMO 12A.

CMO 12 A was created to provide a road map and "rules of the road" for Plaintiffs to use to establish manufacturer identification. Each Plaintiff in the MDL relies on the provisions of CMO 12A to determine the manufacturer of her Taxotere/docetaxel. Paragraph 6 of the Order states: "The following information is presumed sufficient evidence to establish the identity of the manufacturer(s) or labeler of docetaxel in this MDL: a. National Drug Code ("NDC") numbers contained in a patient's medical, pharmacy, billing or insurance records…." Plaintiff, Antoinette Durden has produced such presumptive evidence in three different billing and/or insurance

records containing NDC numbers identifying Sanofi as the manufacturer of the Taxotere products administered to Ms. Durden.  The following patient-specific contemporaneous billing and/or insurance records identify the manufacturer of docetaxel administered to Ms. Durden by NDC code:

1. Patient Specific Billing Records for Antoinette Durden Produced by Ochsner, attached hereto as Exhibit A;

2. Original Molina Medicaid Solutions Certification, attached hereto as Exhibit B; and

3. Ochsner's Response to Plaintiff's Revised 30(b)(6) Notice and Associated Document Production, attached hereto as Exhibits C1-2, see specifically Ex. C2.

Ms. Durden has carried the burden established by CMO 12A and Sanofi is presumed to be the manufacturer of the Taxotere/Docetaxel administered.  Plaintiff has fully complied with CMO 12A.  Sanofi's purported "contrary evidence" is speculative, non-contemporaneous and cannot overcome the presumptive evidence.

## FACTS

### A. Counsel's Efforts to Obtain Product Identification Information

Plaintiff has diligently pursued product identification in her case from the very beginning of this litigation. *See* Exhibit D, Timeline of Plaintiff's Requests for Product Identification to Ochsner. As set forth in detail in Plaintiff's letter submission to this Court, dated November 13, 2018, Plaintiff has endured repeated obstacles, including the receipt of misinformation from her treatment facility, Ochsner.  *See* Exhibit E, Plaintiff's November 13, 2018 Letter Submission to Your Honor.  Despite these road blocks, Plaintiff received document productions from two separate sources containing patient specific contemporaneous billing and/or insurance records

identifying Sanofi, by NDCs, as the manufacturer of the Taxotere products which she was administered. *See* Ex. A and Ex. B.

Despite obtaining patient specific contemporaneous billing and/or insurance records identify Sanofi, by NDCs, as the manufacturer of the Taxotere products administered to Ms. Durden, Sanofi continues to dispute product identification.

### B. Sanofi's Efforts to Dispute Product Identification Information

Following Plaintiff's receipt of NDCs from Ochsner and Molina Medicaid Solutions, counsel for Sanofi reached out to both entities. *See* Ex. E. On November 6, 2018, at 7:12 p.m. Ochsner's counsel sent Plaintiff's counsel and Sanofi's counsel an Affidavit of Neil Hunter with three exhibits including a CMO 12 "Statement Regarding Chemotherapy Drug Administration. *See* Exhibit F1-4 (with regard to Ex. F2, see page 9, line 584 to page 15, line 997 for inventory of purchases of the specific NDC codes that match Molina's records within the 18-24 month shelf life). Based on the production of these documents, Ochsner and Sanofi agreed that a deposition need not proceed. *See* Ex. E. Subsequently, on November 13, 2018, Molina Medicaid Solutions issued an updated certification which expressly stated that the new certification was being provided at the request of Sanofi's counsel. *See* Exhibit G, Supplemental Certification by Molina and Ex. E.

Counsel for both Plaintiff and Sanofi raised their respective concerns during an in-chambers status conference with Your Honor on November 15, 2018. Your Honor directed that a deposition of Ochsner proceed with due haste. Since that time, Plaintiff's counsel has once again undertaken great effort to secure a deposition of Ochsner but has been met with continued resistance.

Following the Chambers conference with Your Honor, counsel for Plaintiff requested deposition dates, served narrowed 30(b)(6) topics at Ochsner's counsel's request, and made multiple follow-ups but was unable to secure a response from Ochsner. On December 3, 2018 Plaintiff's counsel reached out to Sanofi's counsel regarding this matter and learned that Ochsner had been in communication with Sanofi. *See* Exhibit H, Email Correspondence.

During the course of a subsequent meet and confer, Ochsner's counsel took the position that the only possible means of establishing product identification in Ms. Durden's case would be to provide testimony from the exact person who administered Taxotere to Ms. Durden and that such a person could not be produced (which would create additional requirements well beyond those set forth in CMO 12A). After clarifying that Plaintiff's sought to speak with a witness about Ochsner's Medicaid billing practices concerning how NDCs are obtained and inputted for patient specific billing, Ochsner's counsel shifted her position and stated that Ochsner could not produce any witness with knowledge as to such practices in 2011, the time period in which Ms. Durden was treated with Taxotere. Plaintiff's counsel requested that Ochsner's counsel provide its client's position in writing.

On December 11, 2018, Plaintiff's counsel received a written response from Ochsner to the revised 30(b)(6) notice. *See* Exhibit C1-2. Plaintiff's revised 30(b)(6) notice specifically requested that a witness be produced to testify as to Ochsner's Medicaid billing practices. *See* Exhibit I, Plaintiff's Revised 30(b)(6) Notice to Ochsner at 13-19. In response, Ochsner objected to providing any witness to testify about Ochsner's specific policies and procedures for billing Medicaid, identified in Plaintiff's notice as paragraphs 13-18, stating that such requests "were not relevant to any party's claims or defenses nor proportional to the needs of the case."[1]

---

[1] Although Ochsner has offered to produce two witnesses for certain limited topics, neither witness can discuss Medicaid billing procedures in place around the time of Ms. Durden's administrations of docetaxel.

*Id.* It is apparent from Ochsner's response that Ochsner has no intent of providing any witness to testify as to its Medicaid billing practices. However, such a witness may not be necessary in light of the documents produced, for the first time, by Ochsner two days ago in response to Plaintiff's revised 30(b)(6) notice. *See* Ex. C2.

Despite previously stating that Ochsner had no patient specific documents containing NDCs for Ms. Durden due to the age of the records (*See* Exhibit J, Ochsner's Statement of No NDC Records), Ochsner has now produced two separate sets of documents which contain patient specific billing and/or insurance records with NDCs specific to Sanofi and Antoinette Durden. *See* Ex. A and Ex. C2. Although these documents were all responsive to Plaintiff's original records requests directed to Ochsner over two years ago, such documents were never produced until after this Court became involved. The most recent document production from Ochsner (referenced herein as Ex. C2) contains yet another set of patient specific, contemporaneous billing records identifying Sanofi products administered to Ms. Durden by NDC codes that match those previously attested to by Molina and Ochsner. *See* Ex. C2, Ex. A and Ex. B.

A review of these newly produced records establish critical factors which meet the presumption established by CMO 12A: (1) these are billing records from Ochsner Foundation Hospital where Plaintiff received her chemotherapy; (2) these are billing records specific to Plaintiff Antoinette Durden; (3) these are billing records of Ochsner submitted to Medicaid under the title Medicaid Community of Care, seeking payment for the administration of Taxotere/docetaxel to Ms. Durden; (4) these are billing records identifying Plaintiff's treating oncologist, Sophy Jancich, as the physician who ordered Taxotere for Ms. Durden; (5) these are billing records were made close in time or contemporaneously with Plaintiff's chemotherapy

treatments and (6) these are billing records identifying Sanofi products by NDCs as having been administered to Ms. Durden. *See* Ex. C2.

Plaintiff has now obtained three separate patient specific documents that identify Sanofi, by NDCs, as the manufacturer of the Taxotere products administered to Ms. Durden. *See* Ex. A, Ex. B, and Ex. C2. Thus, the manufacturer of Plaintiff's Taxotere/docetaxel is presumed.

Because the overwhelming, treatment-contemporaneous, and CMO 12A compliant evidence substantiates her manufacturer identification, a deposition of Ochsner likely is no longer necessary.

## LAW AND ARGUMENT

### A. Ochsner Supplied NDCs to Louisiana Medicaid for the Taxotere Products Which Were Actually Administered to Antoinette Durden.

In 2005, Congress passed the Deficit Reduction Act of 2005 (DRA), P.L. 109-171 requiring States to collect rebates for physician-administered drugs. *See*, Exhibit K, Department of Health and Human Services, Office of Inspector General, "States' Collection of Medicaid Rebates for Physician-Administered Drugs" at Introduction pp.1-2 (pp. 8-9 of the PDF). As part of the requirements in the DRA physicians and hospitals were mandated to submit national drug code (NDC) information for physician administered drugs as a method of identifying and invoicing manufacturers responsible for paying rebates. *Id.* The Centers for Medicare and Medicaid Services (CMS) estimated that by requiring the submission of NDCs for rebate purposes, States could vastly reduce their prescription drug expenditures. *Id.*

When the DRA of 2005 became effective in 2008, The Louisiana Department of Health and Hospitals, issued notices to all Medicaid providers within the State of Louisiana that federal regulations now mandated that providers report NDC information for all physician-administered drugs on claim submissions. *See* Exhibit L, Announcement for Louisiana Medicaid regarding

submission of NDC Information on Claims Submissions for Physician-Administered Drugs. As the Department set forth clearly in its mandate to providers, "any LA Medicaid covered service submitted with a HCPCS procedure code for a physician-administered drug **must be accompanied by the actual NDC code from the package of the drug administered**." *Id*. Thus, providers must submit NDC information for the drugs **actually administered** to Louisiana Medicaid recipients so that the drug manufacturer could be invoiced for potential Medicaid rebates. Furthermore, the Louisiana Department of Health and Hospitals directed all providers to "retain all records for (5) years from the date of service."[2] *Id*.

Plaintiff, Antoinette Durden, underwent chemotherapy treatment, at Ochsner, for breast cancer during the time-period of October 18, 2011 to February 1, 2012. At the time she was administered Taxotere her treating facility, Ochsner, was subject to the mandates set forth in the DRA and implemented by the Louisiana Department of Health and Hospitals. Pursuant to these requirements, Ochsner had a legal obligation to provide the NDC information for the docetaxel product that was **actually administered** to Ms. Durden when submitting a claim for reimbursement. As the documents produced by Ochsner clearly reflect, Ochsner supplied NDC information for the physician-administered drugs Ms. Durden received, including Taxotere, during the time period of her chemotherapy treatments. *See* Ex. A, Ex. B, and Ex. C2. Furthermore, as Ochsner's own contemporaneous records reflect, these billing submissions were made close in time or contemporaneously with Plaintiff's actual Taxotere administrations. The NDCs which Ochsner supplied, in accordance with its federal and state obligation to do so, identify Sanofi as the manufacturer of the Taxotere products administered to Ms. Durden. *Id*.

---

[2] Plaintiff's first billing request was on March 3, 2016, which is within five (5) years of Plaintiff's administrations of docetaxel.

To date, no contradictory evidence has been produced to establish that the NDC information, mandated to be supplied under federal law, was false or misleading.

Furthermore, the billing submission made by Ochsner to Louisiana Medicaid is supported by the records counsel obtained from Molina Medicaid Solutions. *See* Ex. B. As the certification from Molina sets forth, Ochsner billed Louisiana Medicaid for the administration of Taxotere to Ms. Durden and represented that the product being administered was manufactured by Sanofi. *Id.* Based upon these representations, submitted in the form of NDCs, Molina Medicaid Solutions reimbursed Ochsner for the Taxotere administered to Plaintiff. *Id.* To date, no contrary evidence has been produced to Plaintiff or Louisiana Medicaid that the request for reimbursement submitted to Medicaid was based on false or incorrect NDC information. As such, Louisiana Medicaid has reimbursed Ochsner for the Taxotere administered to Ms. Durden based upon these representations. Just as Ochsner and Molina Medicaid Solutions relied upon these NDCs for billing and reimbursement, Plaintiffs and Defendants throughout this MDL rely on substantially similar documentation from infusion facilities and insurers as positive product identification (and upon which Defendants require dismissal of their clients from a Plaintiff's case).[3] For this very reason, this Court entered CMO 12/12A.

### B. Plaintiff Has Met Her Burden of Establishing Product Identification Under CMO 12A and No Contrary Evidence Exists to Rebut Such a Presumption.

At the Court's request, and in order to address the difficulties of manufacturer identification in this MDL, the parties negotiated Case Management Order No. 12 (Rec. Doc. 1506), which was entered on January 12, 2018. CMO 12 was later amended on July 24, 2018 as CMO No. 12A (Rec. Doc. 3492). The amendment addressed certain unanticipated issues that had arisen since its inception, including, but not limited to, providing a form for partial dismissal of

---

[3] Defendants in this litigation have routinely used such CMO 12A evidence to obtain dismissals.

defendants not implicated by manufacturer identification information gathered through the CMO 12 process, and allowing additional time for individual plaintiffs to conduct discovery of third parties involved in the chain between a manufacturer's sale of docetaxel and administration of docetaxel to a plaintiff.  Generally, CMO 12A has been successful in reducing the percentage of cases in the MDL without positive manufacturer information.

As agreed by the parties and Ordered by this Court, CMO 12A establishes the guideposts for manufacturer identification in this MDL.  Paragraph 6 of CMO 12A provides, in pertinent part, that "[t]he following information is presumed sufficient evidence to establish the identity of the manufacturer(s) or labeler of docetaxel in this MDL: **National Drug Code ("NDC") numbers contained in a patient's … billing or insurance records**…."[4] Much like Louisiana Medicaid relied on the NDC information submitted by Ochsner to identify drug manufacturers for rebates, Plaintiff Antoinette Durden, along with multitudes of other similarly situated plaintiffs in this MDL,  rely upon this NDC information to establish the proper party defendant.

Under CMO 12A, Defendants may not dispute the presumption unless "contrary testimonial or documentary evidence" is produced prior to the close of Phase II discovery for cases identified under CMO 14, Paragraph 3.  Here, no contrary testimonial or documentary evidence exists to rebut this presumption, i.e., not one document produced by Sanofi states affirmatively that Sanofi is not the manufacturer of docetaxel administered to Ms. Durden.

Sanofi's assertion that product identification cannot be determined in this case is based upon non-contemporaneous documentation and speculative affidavit testimony. Its position also is based on the false premise that the only way to establish product identification is by direct

---

[4] As set forth herein, Plaintiff Antoinette Durden has obtained billing and insurance records identifying the NDC codes billed by Ochsner to Louisiana Medicaid and the NDC codes in Louisiana Medicaid's records (through its third-party contractor, Molina Medicaid Solutions) for which Louisiana Medicaid issued payment.

testimony of the person who administered the drug to the patient. Such a position flies in the face of CMO 12A and the efforts of this Court.

First and foremost, Sanofi argues that Ochsner's purchase history and the revised affidavit of Neil Hunter prove that Ms. Durden could not have received the Taxotere products identified by NDCs 75800180 and 75800120, which were billed to Louisiana Medicaid. However, a review of the affidavit submitted by Mr. Hunter reveals that Mr. Hunter has never made such a statement. *See* Ex. G1. Rather, the only information Mr. Hunter has provided is a purchase history of Ochsner's purchases of docetaxel throughout the years.

Contrary to Sanofi's interpretation, the detailed purchase history supplied by Ochsner and certified by Mr. Hunter provides substantial support for the CMO 12A presumption that Sanofi is the proper defendant, as it shows:

1) that Ochsner purchased the specific NDC codes of the Sanofi-manufactured docetaxel products for which Ochsner billed Louisiana Medicaid;

2) that Ochsner's purchases of these NDC codes were well within the shelf life of the drugs; and

3) that the only 20mg docetaxel products purchased by Ochsner within 2 years of Ms. Durden's treatment were manufactured by Sanofi. *See* Ex. F2.

Sanofi's unsupported suggestion that these drugs could not have been administered to Ms. Durden because they were not purchased within eight months of her treatment is complete conjecture and ignores the fact that the shelf life for Taxotere ranges between 18-24 months. To date, Mr. Hunter has offered no contrary testimony or any evidence to suggest the docetaxel products identified in Ochsner's billing records to Louisiana Medicaid as NDCs 75800180 and 75800120 were unavailable in the pharmacy at the time of Ms. Durden's treatment for breast

cancer. Simply put, the only information that Mr. Hunter can provide, or has provided, is a list of the products Ochsner purchased. As Mr. Hunter's submissions clearly demonstrate, he lacks any knowledge beyond mere speculation regarding the identity of the manufacturer whose Taxotere products were administered to Ms. Durden. Furthermore, his speculation as to what products may have been available in the pharmacy at the time of Plaintiff's treatment is based, not on contemporaneous information, but upon the review of general and non-patient specific records some seven years after Ms. Durden's treatment.

Furthermore, Sanofi's assertions that the patient specific billing records produced by Ochsner and the patient specific records certified by Molina Medicaid Solutions, which unquestionably establish that Ochsner billed Louisiana Medicaid for the administration of Sanofi manufactured Taxotere products to Plaintiff, Antoinette Durden, are insufficient to prove product identification are without merit, speculative, and are not supported by evidence. The crux of Sanofi's argument to this Court is that the certification from Molina must be disregarded because Molina "did not administer, observe, or document any docetaxel product given to Ms. Durden." This strict reading of what constitutes the identification of a manufacturer, if allowed to stand, would call into question manufacturer identification in nearly all claims filed in this MDL, as it would require Plaintiffs to locate and call a witness in every single case who actually observed the medication being made and then administered to the patient. This is the exact situation which this Court sought to avoid by implementing CMO 12A. Furthermore, under federal law, Ochsner had a duty to provide the NDC information for the Taxotere product which was **<u>actually administered</u>** to Ms. Durden. To date, Sanofi has been unable to produce any contrary evidence to establish that the NDCs submitted by Ochsner to Louisiana Medicaid were false and/or inaccurate. No such evidence exists.

In light of these considerations, Plaintiff respectfully requests that Mr. Hunter's CMO 12A affidavit be declared insufficient contrary evidence in light of the presumptive evidence produced by Plaintiff, i.e., the patient specific records of Ms. Antoinette Durden from Ochsner and Molina, identifying NDC numbers of Sanofi. These NDC numbers clearly meet Plaintiff's CMO 12A burden of proof that Ms. Durden was administered a Sanofi Taxotere product. Put simply, there is no contrary evidence that Ochsner's submissions to Louisiana Medicaid were fraudulent. The speculative, non-contemporaneous and internally contradictory information supplied by Ochsner and Mr. Hunter fails to rebut the presumption established by Plaintiff's patient specific billing and insurance records. Furthermore, Plaintiff respectfully requests that the presumption in CMO 12A be enforced as "affirmative evidence of the identity of the manufacturer or labeler of a plaintiff's docetaxel" pursuant to CMO 12A, para. 6.

## CONCLUSION

For the foregoing reasons, Plaintiff Antoinette Durden respectfully requests that the Court grant her Motion to Enforce CMO 12A and issue an Order: (1) finding the "contrary evidence" produced by Sanofi insufficient to overcome the presumption set forth in CMO 12A; (2) concluding the NDC evidence produced by Ms. Durden is deemed affirmative evidence of the identity of the manufacturer of docetaxel, concluding the issue of manufacturer identification in her case.

Alternatively, should this Court deem the deposition of Ochsner necessary, Plaintiff requests that the Court delineate what information, beyond that which has already provided, this Court deems necessary to establish product identification under CMO 12A in this matter.

Dated: December 13, 2018

Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, LA 70112
Phone: 504-355-0086
Fax: 504-523-0699
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura (on the brief)
GIBBS LAW GROUP LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, LA 70112
Phone: 504-355-0086
Fax: 504-523-0699
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
The Lambert Firm, PLC
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
ejeffcott@thelambertfirm.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 13, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                    */s/ M. Palmer Lambert*
                                                    M. PALMER LAMBERT