UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)      *      16-MD-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *      Section H
                                  *
Relates to:  All Cases            *      December 19, 2018
                                  *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


SHOW CAUSE HEARING BEFORE
THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE


Appearances:


For the Plaintiffs:        Barrios Kingsdorf & Casteix, LLP
                           BY:  DAWN M. BARRIOS, ESQ.
                           701 Poydras Street, Suite 3650
                           New Orleans, Louisiana 70139


For the Defendants:        Irwin Fritchie Urquhart
                             & Moore, LLC
                           BY:  KELLY E. BRILLEAUX, ESQ.
                           400 Poydras Street, Suite 2700
                           New Orleans, Louisiana 70130


For the Defendants:        Tucker Ellis, LLP
                           BY:  JULIE A. CALLSEN, ESQ.
                           950 Main Avenue, Suite 1100
                           Cleveland, Ohio 44113


Also Participating:        Charlotte Gulewicz, Esq.
                           Chris Pinedo, Esq.
                           Mark Niemeyer, Esq.
                           Sara F. Stipkovitz, Esq.
                           Carasusana B. Wall, Esq.

```
Also Participating:        Seth Webb, Esq.
                           Lowell W. Finson, Esq.
                           Alyssa White, Esq.
                           Rachel L. Shkolnik, Esq.
                           Bria Hanlon, Esq.
                           Lee McGartland, Esq.
                           Kristie Fischer, Esq.
                           Jennifer Greene, Esq.
                           Danae Benton, Esq.
                           Jennifer S. Domer, Esq.
                           Stephen E. Roth, Esq.
                           Charles G. Orr, Esq.
                           Debra Humphrey, Esq.
                           Leslie LaMacchia, Esq.
                           J. Christopher Elliott, Esq.


Official Court Reporter:   Toni Doyle Tusa, CCR, FCRR
                           500 Poydras Street, Room B-275
                           New Orleans, Louisiana 70130
                           (504) 589-7778



Proceedings recorded by mechanical stenography using
computer-aided transcription software.
```

| | |
|---|---|
| 1 | **MORNING SESSION** |
| 2 | **(December 19, 2018)** |
| 3 | THE COURT:  Ms. Brilleaux. |
| 4 | MS. BRILLEAUX:  I have a list of plaintiffs who filed |
| 5 | declarations.  I don't have with me Dawn's stipulation of |
| 6 | dismissal list, but I will read into the record the list of |
| 7 | plaintiffs who filed declarations that they were unable to |
| 8 | reach their client: |
| 9 | Janice Conroy, Alison Cotton, Anita Hernandez, |
| 10 | Frances Salinas, Gloria Smart, Angela Smith, Shanika Turner, |
| 11 | Maria Santiago, Annalis De La Cruz, Bridgette Lucas, Velma |
| 12 | Lewis, Ayesha Jackson, Jacqueline Dunbar Townsel, Marilyn |
| 13 | Johnson, Murry Henderson, Mary Jones, Charlene Brown, Sandy |
| 14 | Mickelson, Dorothy Bolds -- |
| 15 | THE COURT:  Wait.  Is that noncompliance?  These are |
| 16 | both -- |
| 17 | MS. BRILLEAUX:  Oh.  Let me back up. |
| 18 | THE COURT:  When we stop at Sandy Mickelson, the |
| 19 | Court wants to specifically note for the record that she has |
| 20 | reviewed the declarations filed by plaintiffs' counsel and |
| 21 | understand that they have made repeated efforts to contact the |
| 22 | clients, and the clients have failed to comply with their |
| 23 | obligations in completing the plaintiff fact sheets.  Those |
| 24 | cases are dismissed with prejudice. |
| 25 | MS. BRILLEAUX:  Thank you, Your Honor.  And thank you |

10:09

1    for pointing out I started reading from the dismissal list.

2            THE COURT:  Right.

3            MS. BRILLEAUX:  So I will start from the beginning

4    with the cases that have been dismissed with prejudice:

5            Dorothy Bolds, Joann Keck, Deidra Gossett, Tammy

6    Brooks, Sherrie Argys, Shirley Gilbert, Odessa Conner, Raynette

7    Smith, and Tiffany White.

8            Your Honor, we noted three other cases, two of

9    which were not actually on the docket for today, but they were

10   on the show cause list that was 500-plus cases, the notice list

11   that was given to plaintiffs that has since been dismissed.

12           THE COURT:  Now, this last grouping, those are

13   plaintiffs that I have given an opportunity to provide

14   supplemental information that have not done so?

15           MS. BRILLEAUX:  So, actually, Your Honor, the list

16   that we are going to address today are not cases that

17   Your Honor has seen before.  They are cases for which we have

18   given notice to plaintiffs' counsel since August, but they have

19   not come up on the docket for you before.

20           THE COURT:  I understand.  I'm talking about the

21   names that you just identified, beginning with Dorothy Bolds.

22           MS. BARRIOS:  Yes, ma'am.

23           THE COURT:  Those plaintiffs have been given an

24   opportunity --

25           MS. BARRIOS:  Yes, ma'am.

10:10

1      **THE COURT:**  -- to comply with the Court's order and
2  have failed to do so.  Accordingly, those cases are dismissed
3  with prejudice.  That's the grouping beginning with Dorothy
4  Bolds and concluding with Tiffany White.
5      **MS. BARRIOS:**  We will provide a copy to the court
6  reporter, Your Honor, and Sam for the record.
7      I was just informed that the telephone people
8  can just hear music.
9      **THE COURT:**  Okay.  We need to open the phone lines
10  now because now we are going to be dealing with --
11      **THE OPERATOR:**  Let me just clarify.  This is your
12  AT&T operator.  When I picked up the line, nobody acknowledged
13  me, so I didn't know whether you thought you were private.  You
14  haven't been speaking to the others that have dialed in for
15  this call.  I can place you in now.  Like I said, nobody
16  acknowledged, so I didn't place you in before.  Just one
17  moment.
18      **THE COURT:**  Ma'am, that's fine.
19      **THE OPERATOR:**  Okay.  Good.
20      **THE COURT:**  This is the portion of the call docket
21  that requires participation by counsel on the telephone, and
22  now I'm going to ask all of you to please place your phones on
23  mute unless and until we call your law firm.
24      **THE OPERATOR:**  Okay.  So I will now place you into
25  the main conference.  I'll be turning off the music there so

10:12

1  they will be able to hear you going forward.  Just a moment.

2       THE COURT:  Thank you, ladies and gentlemen from

3  various law firms across the country.  I'm going to ask you, as

4  we go through the call docket, to please place your phones on

5  mute until we call your case.  It's just going to make life

6  much easier for all of us.

7            We will proceed.

8       MS. BARRIOS:  Your Honor, Dawn Barrios for the

9  plaintiffs.

10           In addition to the dismissal list that

11 Ms. Brilleaux just read into the record, we have two additional

12 cases that have filed for dismissal but were not on any of the

13 lists.

14      THE COURT:  Okay.

15      MS. BARRIOS:  To clean up the docket, we thought we

16 would bring those cases forward.

17      THE COURT:  Thank you.

18      MS. BARRIOS:  The first one is Geneva Powell.  Her

19 case is 18-03316.  The second one is Carmelita Love, 18-03314.

20      THE COURT:  Ms. Brilleaux.

21      MS. BRILLEAUX:  Thank you, Dawn.

22           Thank you, Your Honor.  Just as a matter of

23 preview for what we are about to go through, as I mentioned

24 before, this is a carryover list of plaintiffs.  These

25 plaintiffs were originally given notice of the deficiencies on

10:13

1    August 29 of this year.  These were carried over onto both the

2    November 1 and December 5 lists and are now being presented

3    before Your Honor for the first time but have been on the list

4    for several months, since the month of August, which is

5    something I wanted to highlight as a matter of preview.

6           Another thing.  As we are going forward, a lot

7    of these fall within one of two main deficiency categories.

8    The first of those, just so I don't have to reiterate it every

9    time, is no proof of use.  I want to clarify for the record

10   that's very different from the issue of product ID.  It's no

11   proof that any docetaxel or any taxane was administered to the

12   plaintiff, no medical records or no prescription records.

13   Obviously, that is the very baseline information that's needed

14   to file a claim.

15          The second primary issue with the cases we are

16   going to see today is no declaration submitted with the

17   plaintiff fact sheet.  I also want to clarify that that means

18   the plaintiff did not sign their PFS, which is another

19   requirement because it verifies the authenticity of the

20   responses and that they were provided by the plaintiffs

21   themselves.

22          So for those reasons we think that because this

23   very basic information -- either proof of use of any docetaxel

24   and the signing of a declaration is the very basic information.

25   For a case that's been pending this long, we think that those

10:15

1    are appropriate for dismissal with prejudice today.

2                    The first case that I have --

3           **MS. BARRIOS:**  Your Honor, for the plaintiffs'

4    steering committee, I would like to ask that if any dismissals

5    are entered today that they be dismissals without prejudice.  I

6    would also like to remind the Court how difficult it is to

7    obtain proof of product ID and proof of use no matter how long

8    your case has been pending.

9           **THE COURT:**  Ms. Barrios, what's the Court to do with

10   claims that we don't know if they ever used docetaxel?

11          **MS. BARRIOS:**  I understand, Your Honor.  I would just

12   ask that you give them an additional time to cure that.

13          **MS. BRILLEAUX:**  Your Honor, just to clarify, we are

14   not addressing product ID at all today.  Thank you.

15          **THE COURT:**  I got that.

16          **MS. BRILLEAUX:**  The first case that I have on the

17   list, represented by Fears Nachawati, is Shalanda Smith.  The

18   reason for the deficiency is no proof of use.

19          **THE COURT:**  Okay.

20          **MS. GULEWICZ:**  Hi, Your Honor.  It's Charlotte

21   Gulewicz, Fears Nachawati Law Firm.  We have actually submitted

22   a CMO 12 form for product identification on May 24 of this

23   year.

24          **MS. BRILLEAUX:**  Your Honor, it's our understanding

25   that even if a CMO 12 product ID form was submitted, we don't

10:16

1    have any medical records associated with a PFS of proof of use.

2    They haven't been uploaded to MDL Centrality.

3          MS. BARRIOS:  Your Honor, what would be uploaded to

4    prove proof of use would probably be the NDC codes of the

5    medical records.  I don't understand why the defendants are

6    seeking dismissal on such a case.

7          THE COURT:  Let me hear from counsel.  Ma'am, what

8    did you submit?

9          MS. GULEWICZ:  The NDC codes, Your Honor.

10         THE COURT:  Were there no medical records?  I guess

11   I'm curious as to how you had --

12         MS. GULEWICZ:  We submitted medical records and NDC

13   codes.  Reviewing the file, it looks like we may not have done

14   a good job of pointing it out for the defendants.  We would

15   request some time to go through these records and point out the

16   NDC codes that are applicable for docetaxel.

17         MS. BRILLEAUX:  Your Honor, I'm actually looking at

18   the NDC code submission for this case, and there's no docetaxel

19   listed as an NDC code.  There are other medications, none of

20   which are docetaxel.

21         MS. BARRIOS:  I would still reiterate --

22         THE COURT:  It's very difficult, as you can imagine,

23   at this point for me to make that determination based upon

24   representations of counsel.  This is what I'm going to ask,

25   Ms. Brilleaux and --

10:18

1          I'm sorry, ma'am.  Plaintiff's counsel, who are
2     you?
3          **MS. GULEWICZ:**  Charlotte Gulewicz.
4          **THE COURT:**  Okay.  Ma'am, what I'm going to do is ask
5     you within the next 15 days -- and I recognize that that takes
6     us right past New Year's, but if you could, at least by way of
7     email communication, communicate with Ms. Brilleaux and if you
8     all will meet and confer to see where we stand with that issue.
9          If indeed you determine that this is not
10    docetaxel, perhaps you will agree to a voluntary dismissal.
11    I'm just going to ask you all to meet and confer.  If there's
12    no resolution, then perhaps this is something that I'm going to
13    need to see paperwork on.
14         **MS. BRILLEAUX:**  Thank you, Your Honor.  Defendants
15    would also ask -- we will obviously comply with the order to
16    meet and confer within 15 days.  If within 21 days we have not
17    received any medical records evidencing proof of use, we would
18    request that we could submit a list to the Court for dismissal
19    with prejudice.
20         **THE COURT:**  What I'm listening to is "I have provided
21    medical records to you."  It's very difficult for me with just
22    a list and people's representations.  I think after the 15 days
23    if indeed -- you are just going to need to submit something to
24    me.  I'm going to need to see from plaintiff's counsel what has
25    been submitted, what has been filed, and then make a

10:19

1    determination if you all cannot agree if that was docetaxel or
2    not.
3                MS. BRILLEAUX:  Thank you, Your Honor.
4                THE COURT:  We can do that within 21 days.  That's
5    fine.  I wasn't sure what you were asking, Ms. Brilleaux, and
6    what was not going to happen was just a request motion, "They
7    haven't submitted it," so I'm going to dismiss it with
8    prejudice when I have plaintiff's counsel telling me, "I did
9    file it."  I think you all just need to discuss it.
10               MS. BARRIOS:  Your Honor, I will intervene and work
11   with them to make sure that plaintiff's counsel provides that
12   information --
13               THE COURT:  Thank you.
14               MS. BARRIOS:  -- to the defendants.
15               MS. BRILLEAUX:  Thank you, Your Honor.  The next case
16   that I have on my list is Miriam Helton, who is represented by
17   Gori Julian & Associates.  This is another no proof of use, no
18   medical records, and no prescription records.
19               THE COURT:  Is someone on the phone for Gori Julian?
20   Anyone here?
21               MS. BARRIOS:  Your Honor, we had reached out and
22   asked each firm to provide us with the name of who would be
23   representing the firm by phone, and we did not get any response
24   from that firm.
25               THE COURT:  This case is dismissed with prejudice.

10:21

1        **MS. BRILLEAUX:**  Thank you, Your Honor.

2        **MS. CALLSEN:**  Good morning.  Julie Callsen on behalf

3    of the 505(b)(2) defendants.

4            The next plaintiff is Ruth Alderete.  She is

5    represented by Hilliard Martinez.  The PFS is not substantially

6    complete because there is no proof of injury.  There's no dated

7    photos.  The authorizations are missing.  The ones we do have

8    were not dated or signed so basically useless.

9        **THE COURT:**  Is anyone on the phone for Hilliard

10   Martinez Gonzales?

11       **MR. PINEDO:**  Yes, Your Honor.  Chris Pinedo on behalf

12   of the plaintiff.

13           We have submitted authorizations.  I would also

14   point out to the Court that we submitted an updated plaintiff

15   fact sheet last night.  I would apologize.  It was 10:00, but

16   we were pushing to get as much information as possible.

17           We submitted some additional information on

18   numerous fields, including cancer diagnosis and treatment,

19   which included tumor size and nodal involvement.  We also

20   submitted additional information on the prescription medication

21   she was taking previous to Taxotere.  We also uploaded 469

22   pages of medical records from Kaiser Permanente, which sets

23   forth her Taxotere usage from June through September of 2011.

24           I would like to inform the Court we have also

25   subpoenaed the records on three different occasions from

10:22

1    Kaiser Permanente specifically requesting NDC codes, and those

2    have all come back blank.  We would submit to the Court that we

3    have substantially complied and that this case should proceed.

4            MS. CALLSEN:  Again, Your Honor, this is not a

5    product ID seeking dismissal.

6            THE COURT:  Right.

7            MS. CALLSEN:  This is the plaintiff fact sheet is

8    deficient.  I have been advised by Nick, who has looked at what

9    they submitted, that there is still no signed or dated

10   authorizations, which means we cannot collect medical records.

11   That continues to be substantially incomplete.

12           MS. BARRIOS:  Mr. Pinedo, can you get the

13   authorizations within 15 days from your client?

14           MR. PINEDO:  Yes.  It was my understanding that that

15   was done.  But, yes, we can certainly get authorizations within

16   15 days.

17           THE COURT:  Okay.

18           MS. CALLSEN:  I would also ask since we haven't had

19   time, obviously, since it was just submitted last night --

20           THE COURT:  Of course.

21           MS. CALLSEN:  -- we have 15 days to confirm.

22           THE COURT:  I'm going to grant 15 days for the

23   authorizations to be filed.  Certainly, since defendants have

24   had virtually no opportunity to review what has been filed,

25   that if it's still not in compliance, I have no doubt that this

10:23

1    will be brought to the Court's attention perhaps at the next

2    monthly call docket.

3              **MS. CALLSEN:**  Thank you.  The next case is Judith

4    Glenn.  She is represented by Niemeyer Grebel & Kruse.  There

5    is no declaration, and the authorizations have not been

6    submitted.  Further, there's no proof of injury or before

7    photos submitted.

8              **THE COURT:**  Okay.  Is anyone on the phone for

9    Niemeyer Grebel & Kruse?

10             **MR. NIEMEYER:**  Yes, Your Honor.  Mark Niemeyer on the

11   phone on behalf of plaintiff.

12                  What has been submitted so far, Your Honor, is

13   the evidence necessary to make a prime facie case.  Not only

14   have we submitted information that proves that our client used

15   docetaxel, we also have shown and gone through great pains to

16   actually identify the manufacturer in this case.  That's been

17   identified as Accord.

18                  In her plaintiff fact sheet, not only did the

19   plaintiff indicate the cancer diagnosis and a lot of

20   information surrounding that but also again the identity of the

21   manufacturer.  In addition to that, despite what defense

22   counsel has said, the plaintiff did submit proof of her injury

23   in photos showing, frankly, significant hair loss.

24                  Admittedly, we have lost touch recently with the

25   plaintiff with respect to getting her signature on the

authorizations and declarations.  We would submit that that is not a substantial deficiency at this point given the other evidence that's been submitted.  We will, of course, work with and continue to try to get back in touch with the plaintiff and get those signatures over to the defense just as soon as possible.

               With all that information submitted so far, we would submit that the case should be removed from the show cause docket.

          THE COURT:  Mr. Niemeyer, I believe what I'm seeing is there are no before photographs.

          MS. CALLSEN:  Correct.

          THE COURT:  Do you have those?

          MR. NIEMEYER:  I do not have those at this point, Your Honor, but we do have the current photographs that depict hair loss.  Again, we would like to work with the plaintiff to try to obtain those before ones as well.

          THE COURT:  This is what I'm going to do, Mr. Niemeyer.  I'm going to give you 15 days to get this information together, but this has to be done within 15 days.

          MS. CALLSEN:  Right.  I'm hearing that he still doesn't have signed authorizations, so again that is substantially incomplete.

          THE COURT:  Right.  I understand.  He needs the declaration authorizations within 15 days and photographs that

10:26

1 precede the administration of the docetaxel.

2         **MS. CALLSEN:**  Thank you.

3         **MR. NIEMEYER:**  Again, Your Honor, I appreciate that

4 and thank you.  I would ask for one more indulgence, and I

5 think I might know what the Court's response would be.

6         If in 15 days we are unsuccessful -- and we will

7 do everything we can to be successful.  If we are

8 unsuccessful -- this is one of those cases that I think

9 Ms. Barrios referenced -- we would ask that if the Court ends

10 up dismissing the case that based upon the evidence submitted

11 thus far that dismissal be without prejudice as opposed to with

12 prejudice.

13         I don't know if I will get a chance to make that

14 statement again if in 15 days we haven't met these challenges

15 and that's why I wanted to state it here, Your Honor.

16         **MS. CALLSEN:**  Obviously, we object to that.  It

17 should be dismissed with prejudice pursuant to the PTOs in

18 place.

19         **THE COURT:**  Mr. Niemeyer, you will have another

20 opportunity to do this because this is going to be on the call

21 docket, but it becomes very problematic when you have lost all

22 contact with your client.  We will cross that bridge when we

23 get to it but probably not.

24         **MR. NIEMEYER:**  Very well, Your Honor.  Thank you.

25         **THE COURT:**  Thank you.

10:27

1    **MS. BRILLEAUX:**  Your Honor, the next case on the

2  docket is Michelle Bird, represented by Peterson & Associates.

3  The deficiency is for no proof of use, no before photos, and

4  also undated after photos.

5    **MS. STIPKOVITZ:**  Your Honor, this is Sara Sipkovitz

6  on the line.  We have lost touch with our client, so we are

7  unable to provide that information.

8    **THE COURT:**  Tell me what attempts have been made to

9  contact your client.

10    **MS. STIPKOVITZ:**  We have sent her numerous letters

11  and telephone calls, and she just is not responding.

12    **THE COURT:**  The Court finds that Peterson &

13  Associates has done all that it could to maintain contact with

14  its client.  I appreciate that Ms. Bird, frankly, has not done

15  what she needs to do to maintain this case.  The case is

16  dismissed with prejudice.

17    **MS. STIPKOVITZ:**  Thank you, Your Honor.

18    **MS. BRILLEAUX:**  Thank you, Your Honor.

19    **MS. CALLSEN:**  The next case is Tammy Knoth from

20  Zoll & Kranz.  Again, the PFS is not substantially complete.

21    So I don't have to go through the laundry list,

22  I thought maybe I should just tell you it's not substantially

23  compliant and see what plaintiffs have to say, and then I can

24  respond to that.  Is that acceptable?

25    **THE COURT:**  That's fine.

10:28

1          MS. CALLSEN:  Okay.

2          THE COURT:  Is anybody on the phone for Zoll & Kranz?

3          MS. WALL:  Yes, Your Honor.  Carasusana Wall on the

4     phone for Ms. Knoth.

5               Your Honor, this is a client we have had

6     intermittent contact with so the no contact form wasn't

7     appropriate.  She has continued to not be compliant with our

8     repeated requests for the information.

9          THE COURT:  When was the last time you had contact

10    with her, Ms. Wall?

11         MS. WALL:  It was several months ago, in the early

12    spring.

13         THE COURT:  The Court find that the attorneys Zoll &

14    Kranz have done what they could to maintain contact with their

15    client, but it appears that Ms. Knoth is refusing to comply

16    with her obligations under the plaintiff fact sheet, and

17    therefore this case is dismissed with prejudice.

18         MS. WALL:  Thank you.

19         THE COURT:  Thank you.

20         MS. CALLSEN:  The next two cases are represented by

21    Brown & Crouppen.  The first one is Cynthia Hayes.

22         THE COURT:  Is anyone on the phone for Brown &

23    Crouppen?

24         MR. WEBB:  Yes, Your Honor.  Seth Webb.

25         THE COURT:  Okay.  Oh, wait.  Do you just want --

10:30

1      **MS. CALLSEN:**  I was just going to say --

2      **THE COURT:**  Why don't you tell us, sir --

3      **MS. CALLSEN:**  Right.  All of these plaintiffs, their

4    PFSs are not substantially complete.  Plaintiffs' counsel have

5    been put on notice of the specific deficiencies, and so

6    therefore rather than waste the Court's time --

7      **THE COURT:**  Thank you.

8      **MS. CALLSEN:**  -- and go through them, we just would

9    like to hear from plaintiffs, and I can respond.

10     **THE COURT:**  Okay.  Thank you.

11     Please tell me what you have done.

12     **MR. WEBB:**  With regard to Cynthia Hayes, Your Honor,

13   I don't believe it is deficient.  We have provided what has

14   been asked for.  We have uploaded dated before and after

15   pictures, and we have provided proof of docetaxel use.  I don't

16   honestly know what could possibly be deficient.

17     **THE COURT:**  Do you have signed authorizations that

18   have been attached or declarations?

19     **MS. CALLSEN:**  My understanding is photos were just

20   submitted, Your Honor, so we haven't had time to review those

21   and take them off the list.  Can we just have 15 days to

22   confirm receipt?

23     **THE COURT:**  Sure.  The Court is going to grant the

24   defendants 15 days to determine if they are in compliance.  If

25   not, this matter will be placed back on the docket.

10:31

1    MS. CALLSEN:  Thank you.

2    THE COURT:  What about Sharney Richburg?

3    MR. WEBB:  Ms. Richburg I don't believe we are going

4    to be able to cure.  We have been in regular contact with her.

5    I believe we have collected all the information we are going to

6    be able to collect, and she is aware of the problem.

7    THE COURT:  So you are in contact with her.  She is

8    just not compliant.  Is that what you are telling me?

9    MR. WEBB:  Yes, ma'am.

10   THE COURT:  This case is dismissed with prejudice.

11   The Court finds that plaintiff has failed to comply with her

12   obligations in the case, and therefore the case is dismissed.

13   MS. CALLSEN:  The next case is Geneva Clemens,

14   represented by the Finson Law Firm.

15   THE COURT:  Is there anyone on the phone for the

16   Finson Law Firm?

17   MR. FINSON:  Good morning, Your Honor.  Lowell

18   Finson.

19   THE COURT:  Okay.  Mr. Finson, let's talk.

20   MR. FINSON:  I had indicated to the defendants that

21   both of these cases may be dismissed with prejudice.  That

22   would be Clemmons and Harris, if you want to do them both at

23   the same time.

24   THE COURT:  Okay.

25   MS. CALLSEN:  We can implement that form that's been

10:32

1   approved.  We wanted to make sure Your Honor approved that
2   form, and then we can make that part of the record.  Is that
3   acceptable?

4        **THE COURT:**  This case is dismissed with prejudice.
5   The Court is going to allow Mr. Finson to execute the form to
6   indicate what actions he has taken in order to comply.

7        **MS. BARRIOS:**  Mr. Finson --

8        **MR. FINSON:**  Your Honor, it's not a matter of
9   compliance.  It's just a matter of dismissal with prejudice.  I
10  submitted the regular forms to the defendants.  I had approval
11  to file them from Sanofi, Actavis, and Accord but not Hospira.
12  I'm still asking the case be dismissed with prejudice.

13       **MS. BARRIOS:**  Mr. Finson, this is Dawn Barrios.  I
14  can send you the form that the Court refers to.  I have not
15  circulated it previously because we were waiting for Court
16  approval.  I will send you that form.  If you could just sign
17  that form, complete it, file it, send a copy to me, I will make
18  sure that the defendants get it and the Court has it.

19       **MR. FINSON:**  Of course, Ms. Barrios.  Thank you very
20  much.

21       **THE COURT:**  Thank you.

22       **MS. CALLSEN:**  That's true for Patricia Harris too?

23       **THE COURT:**  Right.  Both of them.

24       **MS. CALLSEN:**  Thank you.

25       **MR. FINSON:**  Agreed.  Agreed.  Thank you.

10:33

1          **MS. BRILLEAUX:**  Thank you, sir.

2                Thank you, Your Honor.  The next case that I on

3     my list is Ernestine Charlton, represented by the Johnson Law

4     Group.  This is for no proof of use.

5          **MS. WHITE:**  Hi.  Good morning.  I'm Alyssa White for

6     the Johnson Law Group.

7                So, Your Honor, we don't have proof of use for

8     Ms. Charlton.  As we know, facilities are sometimes difficult,

9     so what we did is we initiated CMO 12A protocol for proof of

10    use and product identification.

11               Defendants executed their obligations as of

12    November 21.  We have issued a subpoena to the proof of use

13    providers as of December 12.  We ask that we let the subpoena

14    run its course and see if we can get proof of use pursuant to

15    that subpoena before we dismiss this case.

16         **MS. BRILLEAUX:**  Your Honor, defendants would just

17    represent that this case has been pending for over a year.  The

18    plaintiffs have had since November of 2017 to submit proof of

19    use.  This case has been pending obviously for a very long

20    time, and we think dismissal with prejudice is appropriate.

21    This has been on the list since August.

22         **MS. BARRIOS:**  Your Honor, Dawn Barrios for the

23    plaintiffs.

24               This call docket procedure that you implemented

25    only is to go to absolutely if they have done nothing under

10:34

1    CMO 12A or nothing under PTO 71A.  It's obvious that Ms. White

2    has taken substantial steps to run the course of CMO 12A, and I

3    join in her request to allow that process to play out.

4         **MS. BRILLEAUX:**  Your Honor, we disagree.  This is

5    about substantially complete plaintiff fact sheets.  It's not

6    about CMO 12 or PTO 71.

7         **THE COURT:**  Isn't it necessarily intertwined?  If she

8    is having difficulty getting the information --

9         **MS. BRILLEAUX:**  Certainly.  So I think the

10   clarification that we want to make is that for a plaintiff to

11   file a lawsuit, they should at least have a document evidencing

12   that they took something.  We acknowledge, of course, that

13   determining a manufacturer is quite difficult, but I think that

14   having any --

15        **THE COURT:**  Well, I was going to ask that question.

16             What do you base the allegations in your

17   complaint on, Ms. White, if you have no proof that she used

18   docetaxel?

19        **MS. WHITE:**  Upon Ms. Charlton's representations that

20   she was administered docetaxel.  This was back in 2002 and

21   2003, so we are having a hard time getting the records.

22   Because it's so long ago, I think perhaps the facility doesn't

23   want to do that digging.  I am really hoping that the subpoena

24   will give them that extra push to do the digging we need them

25   to do and get those records.

10:36

1          MS. BRILLEAUX:  Again, Your Honor, this case has been
2    pending for over a year.  We believe that this should have
3    already been done a long time ago.
4          THE COURT:  I'm going to let the subpoena run its
5    course.
6          MS. WHITE:  Thank you, Your Honor.
7          THE COURT:  The matter is deferred until the
8    subpoena.
9          MS. BRILLEAUX:  The next case that I have is also for
10   Johnson Law Group.  It is Deborah Venezia.  Again, this is no
11   proof of use and also no before photographs.
12         MS. WHITE:  Your Honor, actually Ms. Venezia is the
13   same situation as Ms. Charlton, where we don't have proof of
14   use.  Her chemotherapy was back in 2005, according to what
15   Ms. Venezia reports, so we have initiated --
16         THE COURT:  So she represented that she used
17   docetaxel?
18         MS. WHITE:  Yes, yes, that she was administered
19   docetaxel back in 2005.  We initiated CMO 12A protocols.
20   Defendants executed their obligation to try and obtain proof of
21   use and product identification.  They were unsuccessful, so we
22   have issued subpoenas.  Plaintiff reported two chemotherapy
23   providers.  We ask that we let those subpoenas run their course
24   before subjecting Ms. Venezia to dismissal for no proof of use.
25         THE COURT:  I'm going to defer ruling on that until

10:37  1    the subpoena has run its course.

2                    **MS. WHITE:**  Yes, Your Honor.

3                    **MS. BARRIOS:**  Thank you, Your Honor.

4                    **MS. CALLSEN:**  The next case is April Baker-Winfield,

5    represented by Atkins & Markoff.

6                    **MS. HANLON:**  Hi, Your Honor.  Bria Hanlon for the

7    plaintiff.

8                    **THE COURT:**  I'm sorry.  Ma'am, are you on the phone

9    for Atkins & Markoff?

10                   **MS. HANLON:**  Yes.  Bria Hanlon for the plaintiff.

11   Sorry.

12                   **THE COURT:**  I'm sorry.  Could you say your name again

13   slowly.  I'm having difficulty.

14                   **MS. HANLON:**  Oh, sorry.  Bria, B-R-I-A, Hanlon.

15                        For Ms. Winfield, she unfortunately passed away

16   in October of this year.  We have been in touch with her

17   brother, though, and he would like to continue with the suit.

18   So we have been in touch with him and plan to get the remaining

19   paperwork from him.  We have proof of use uploaded and some

20   photographs, but we are missing the authorizations.

21                   **THE COURT:**  Okay.  I'm going to give you 15 days to

22   get that information, Ms. Hanlon.  Thank you.

23                        Sandra Brack.  Oh, that's Sanofi.  Ms. Hanlon.

24                   **MS. HANLON:**  Are we covering that one right now?

25                   **THE COURT:**  Yes, ma'am.

10:38

1    MS. BRILLEAUX:  Yes.

2    MS. HANLON:  Okay.  So Sandra Brack, I had gotten a

3  list of not substantially complete items.  We uploaded proof of

4  injury documents on August 29.  The photographs were updated on

5  August 20.  We do still need to sign and date a declaration

6  page.

7    We got in touch with the client at the end of

8  November.  We mailed it to her at that point, but it got sent

9  back to us for an incorrect address.  Then we got back in touch

10  with her, and they were remailed on December 11.  So I would

11  assume that we should have the signed and dated declaration

12  soon.

13    THE COURT:  All right.  I'm going to grant 15 days.

14    MS. BRILLEAUX:  Thank you, Your Honor.  We would

15  request that if we do not receive the signed declaration within

16  15 days that this be submitted for dismissal with prejudice

17  automatically.

18    MS. BARRIOS:  I would request that you --

19    THE COURT:  I think we need to have a hearing.  I'm

20  not just going to do it ex parte, if that's what you are

21  telling me.

22    MS. BARRIOS:  Thank you, Your Honor.

23    MS. BRILLEAUX:  The next case that I have is Yvonne

24  Freeman, which is also with Atkins & Markoff, and another no

25  signed declaration by the plaintiff.

10:39

1            MS. HANLON:  We uploaded the declaration yesterday,

2    December 18.

3            MS. BRILLEAUX:  Your Honor, would you give us 15 days

4    to confirm?

5            THE COURT:  Sure.

6            MS. BRILLEAUX:  Thank you.

7            THE COURT:  15 days to confirm.

8               Before we move on -- because I think that's the

9    last for Atkins & Markoff -- go back to No. 13, Dorcille

10   Hadley, and Sharon Washington with Napoli.

11           MS. BARRIOS:  Your Honor, I had those on my list as

12   well.

13           MS. BRILLEAUX:  I did too.

14           MS. BARRIOS:  I circled them because we skipped.

15           MS. CALLSEN:  I'm sorry.

16           MS. BARRIOS:  They are Ms. Callsen's.

17           MS. CALLSEN:  Where are we?

18           MS. BARRIOS:  Rachel Shkolnik should be on the phone.

19           MS. CALLSEN:  Okay.  Oh, I see.  I don't know.  She

20   just was further down on my list.  Sorry about that.  Dorcille

21   Hadley.

22           THE COURT:  Okay.  Thank you.

23           MS. SHKOLNIK:  Good morning, Your Honor.  This is

24   Rachel Shkolnik of Napoli Shkolnik.

25           MS. CALLSEN:  Excuse me.  They cured last night,

10:40

1    which is why -- they just submitted something last night.  We

2    would like 15 days to confirm that it's been cured.

3             THE COURT:  15 days.  Is that as to both Dorcille

4    Hadley and Sharon Washington?

5             MS. CALLSEN:  Nick, is that true?

6                  We are checking.

7             MS. BARRIOS:  Ms. Shkolnik, did you recently upload

8    matters to cure the defense's claim that it's substantially

9    incomplete on Sharon Washington?

10            MS. SHKOLNIK:  Yes.  We did both.  I'm sorry, but we

11   actually uploaded, also, things today as well.

12            MS. CALLSEN:  Okay.  Obviously, we need --

13            THE COURT:  The Court is going to grant 15 days to

14   confirm compliance.

15            MS. CALLSEN:  Thank you.

16            MS. SHKOLNIK:  Thank you, Your Honor.

17            THE COURT:  Thank you.

18            MS. BRILLEAUX:  Thank you, Your Honor.  The next one

19   I have is Angela McClair, represented by McGartland Law Firm,

20   and this is for no declaration, no after photos, no before

21   photos, and no authorizations.

22            THE COURT:  Anyone on the phone for the McGartland

23   Law Firm?

24            MS. MCGARTLAND:  Yes, Your Honor.  Lee McGartland.

25            THE COURT:  Okay.

10:41

1      **MS. MCGARTLAND:**   All three of our clients that are on
2  today's dismissal docket are in the same situation.   We have
3  not lost complete contact with them.   However, they have
4  refused or failed to provide completed PFSs and declarations
5  and authorizations.   We have contacted them by phone and by
6  writing, letting them know that they have been placed on the
7  dismissal docket for failure to do so, but we still have not
8  received any information from them.
9      **THE COURT:**   The Court notes that plaintiffs' counsel
10 have performed their obligations as attorneys.   The plaintiffs
11 have failed to meet their obligations.   The various plaintiffs
12 that I'm going to now list failed to meet their obligations,
13 and accordingly these cases are dismissed with prejudice.   That
14 is Angela McClair, Tina Stephens, and Ingrid Thomas.   Thank
15 you.
16     **MS. BARRIOS:**   Your Honor, for the record, the new
17 form that you approved today would have taken care of this
18 situation, so we will be more efficient next time.
19     **THE COURT:**   Thank you.
20     **MS. BRILLEAUX:**   Thank you, Your Honor.
21     **MS. MCGARTLAND:**   Thank you, Your Honor.
22     **MS. BRILLEAUX:**   The next one I have is Judi Cochran,
23 represented by Canepa Riedy Abele.   This is for no
24 declarations, no after photos, and no before photos.
25     **THE COURT:**   Is anyone on the phone for Canepa Riedy

10:43 1    Abele?

2              **MS. FISCHER:**  Yes, Your Honor.  This is Kristie

3    Fischer with Canepa Riedy Abele.

4              **THE COURT:**  Okay.

5              **MS. FISCHER:**  Judi Cochran is a plaintiff with whom

6    we have had intermittent contact, and so therefore the

7    declaration we did not feel was appropriate.  The reason that

8    she has given us for her inability to maintain more regular

9    contact and to provide some of these missing items is that her

10   mother suffered a stroke and is very near to the end of life.

11   She is the only family member who has been caring for her

12   mother.  We conveyed this information to counsel for defendants

13   and requested an additional 90 days to allow her to cure the

14   remaining items.

15             **THE COURT:**  What is it that she does not have?

16             **MS. BRILLEAUX:**  It's a signed declaration verifying

17   the plaintiff fact sheet and also no photos whatsoever.

18   Respectfully, Your Honor, I would just like to point out that

19   this case has been pending for over one year.

20             **THE COURT:**  I'm not going to grant you 90 days on the

21   declaration.  I think that can be done within 15 days.  I know

22   her mother is sick, but that's just a matter of signing.

23                  As to photographs, the Court is going to grant

24   additional time for the photographs to be uploaded.  I want the

25   declaration signed within 15 days.

10:44

1    **MS. BRILLEAUX:**  Thank you, Your Honor.  I have a

2  couple more with this --

3    **MS. FISCHER:**  I'm sorry.  I wanted to clarify.  For

4  the photos, what is the timeframe to get the photos?

5    **THE COURT:**  I'm going to give you 30 days.

6    **MS. FISCHER:**  Okay.  Thank you, Your Honor.

7    **MS. BRILLEAUX:**  Your Honor, I think we have at least

8  three more cases with this firm.  The next one I have for

9  Sanofi is Celia Dupree.  This is no declaration, no before

10  photos, no after photos, and also no authorizations uploaded.

11    **THE COURT:**  Ms. Fischer.

12    **MS. FISCHER:**  Again, Your Honor, Kristie Fischer from

13  Canepa Riedy Abele for Ms. Dupree.

14         Ms. Dupree unfortunately passed away several

15  months ago.  We initially had some contact with her surviving

16  spouse and with her adult daughter.  They indicated at one

17  point that they did want to pursue the litigation, and so we

18  went ahead and filed a suggestion of death in anticipation of

19  them taking the necessary steps to be appointed as an

20  administrator of the estate and to then file a motion to

21  substitute.

22         Since then, however, we have not had any contact

23  with them, and it has been several months since I have been

24  able to contact either of them.  So I didn't feel that the

25  declaration was necessarily appropriate, but this is one where

10:46

 1   we have lost contact with potential next of kin.

 2           THE COURT:   This Court finds that plaintiff's counsel

 3   has been diligent in its representation of the client, but the

 4   client's representatives have failed to comply with their

 5   obligations.   This matter is dismissed with prejudice.

 6           MS. BRILLEAUX:   Thank you, Your Honor.   Patricia

 7   Vaughn also with the same firm.   This is for no signed

 8   declaration.

 9           MS. FISCHER:   I show that the signed declaration was

10   provided -- let me pull up some -- I know it was quite a while

11   ago.   When we received the notice of noncompliance, it just

12   stated PFS not substantially complete, so I didn't know that

13   the issue was specifically with the declaration.   I show in

14   MDL Centrality that the declaration was uploaded on July 30,

15   2018.

16           MS. CALLSEN:   Your Honor, plaintiffs were put on

17   notice of the specific deficiencies, not just PFS substantially

18   incomplete.   Just to let you know, we did provide that

19   information to everybody.

20           THE COURT:   But --

21           MS. CALLSEN:   I'm just saying in general.

22           THE COURT:   Okay.

23           MS. BRILLEAUX:   Our records show that it hasn't been

24   uploaded, but we would request 15 days to confirm.

25           THE COURT:   The Court is going to order that you meet

10:47

1   and confer within 15 days to determine where is the disconnect,

2   if you will.

3        **MS. BRILLEAUX:**  Thank you, Your Honor.  Laverne

4   Woods, this is no proof of use and also undated photos.

5        **MS. FISCHER:**  With regard to Laverne Woods, I show

6   that she has produced all medical records, but despite having

7   complied with her obligations under CMO 12 has been unable to

8   obtain confirmation of the product ID.

9            The photographs that have been made were also

10  submitted several months ago, many of which actually bear a

11  digital date stamp, so I'm not sure what the issue is with

12  regard to the photos.

13       **MS. BRILLEAUX:**  Your Honor, just to clarify, our

14  records show no medical records.  This isn't an issue of

15  product ID.

16       **THE COURT:**  Right.  I'm going to ask you again within

17  15 days to meet and confer, and this may or may not be brought

18  back on the call docket.

19       **MS. BARRIOS:**  I'm sorry, Your Honor.  I didn't mean

20  to interrupt you.

21           Ms. Fischer, if you can send to defense counsel

22  the Centrality number of what you uploaded, that will go far in

23  trying to get this resolved.

24       **MS. FISCHER:**  I will do that.  Thank you,

25  Ms. Barrios.

10:49

1          THE COURT:  Thank you.

2          MS. BRILLEAUX:  Thank you, Your Honor.  The next case

3   that I have is Carrie Greene, represented by Scott Vicknair

4   Hair & Checki.  This is for no declaration, no after photos,

5   and no before photos.

6          THE COURT:  Is anyone on the line for Scott Vicknair

7   Hair & Checki?

8          MS. GREENE:  Yes, Your Honor.  This is Jennifer

9   Greene.  I'm here for Scott Vicknair Hair & Checki.

10             As far as Ms. Greene is concerned, we have had

11  intermittent contact with her.  We have recently reached out to

12  her on several occasions -- I mean, I can give you those

13  dates -- and have been unable to get a response.  We sent a

14  FedEx to her with the declaration and a request for the photos.

15  The FedEx was received, but we have not received a response.

16  We tried to call her as recently as this morning and weren't

17  able to get in touch with her.  We just ask for an additional

18  15 days to try to get that information from the client.

19         THE COURT:  Ms. Greene, let me ask this question.

20  When do your records indicate that she received the FedEx

21  correspondence?

22         MS. GREENE:  She received the FedEx on 12 -- I'm

23  sorry.  It's difficult to read.  It's scratched handwriting.  I

24  believe it says on 12/14.

25         MS. BRILLEAUX:  Your Honor, respectfully, this case

10:50

1    has been pending since June of 2017.  This is very far past
2    due.
3              **MS. BARRIOS:**  Your Honor, Dawn Barrios.  It's only
4    five days.  The plaintiff only had five days after she received
5    it, so I would ask for an additional 15 days.
6              **THE COURT:**  I'm going to give 15 days.
7              **MS. FISCHER:**  Thank you, Your Honor.
8              **MS. BRILLEAUX:**  The next case I have with Scott
9    Vicknair Hair & Checki is Debbie Ledford.  This is no proof of
10   use, no before photos, no after photos, and no declaration.
11             **THE COURT:**  Ms. Greene.
12             **MS. FISCHER:**  Your Honor, again it's Jennifer Greene.
13             We have finally found the provider who holds the
14   records.  We were trying get records from 2007.  The clinic did
15   not maintain them.  We had to go through a couple of extra
16   steps to try to get the records.
17             The client was sent a FedEx, and unfortunately
18   she dropped the form that the record company needed in her
19   bathtub.  We had to FedEx her another form, and we are waiting
20   to receive her form back.  So her signed declaration and photos
21   should come back in that same FedEx envelope, and then will get
22   her proof of use documents from the record keeper, who just
23   required a separate form that I picked up.  I believe we can
24   get this one cured in 15 days.
25             **THE COURT:**  The Court is going to grant 15 days.

10:51

1          **MS. BRILLEAUX:**  Thank you, Your Honor.  Just to

2    clarify, defendants would request that all four of the

3    deficiencies be cured in 15 days.

4          **THE COURT:**  Okay.  So ordered.

5          **MS. BRILLEAUX:**  Thank you, Your Honor.  The next one

6    I have is Veronica McGill.  This is for no proof of use.

7          **THE COURT:**  Would you all please put your phone on

8    mute unless you are speaking to the Court.  Hello?

9               Ms. Greene.

10          **MS. GREENE:**  Yes, Your Honor.  Ms. McGill, we have a

11    similar problem as far as obtaining her records because her

12    oncologist had left the facility where she was treated.  We are

13    trying to get records from 2005.

14               After several days of calling her former

15    insurer -- she also no longer has the same health insurance --

16    I have finally found someone who, if she signs a specific form,

17    they will provide me the billing records that they have in

18    order to get the proof of use.

19               They called her yesterday.  They cannot email

20    her the form.  I'm sorry.  They called her two days ago.  They

21    cannot email her the form.  They have to mail her the form, and

22    she has to mail it back in; then they will provide me the

23    records.  I believe that we can have the authorizations to them

24    as early as next Monday, but it's just a question of how long

25    it will take them to produce those records to me.

10:53

1    **THE COURT:**  I'll give you 20 days on this one, and
2    let's see where we are in 20 days.
3        **MS. BARRIOS:**  I understand your ruling, Your Honor.
4    Just for the record, this is another case where we should let
5    CMO 12A play out.
6        **MS. BRILLEAUX:**  Again, Your Honor, this is just --
7        **THE COURT:**  Is this CMO 12A or is this proof of use,
8    which I think is different from product ID?
9        **MS. BARRIOS:**  Ms. Greene.
10        **MS. GREENE:**  Your Honor, the defendant's
11    deficiency -- and I don't mean to speak for the defendant.
12    Please correct me if I'm wrong -- is a proof of use question.
13    The problem is we are trying to obtain records from 2005, and
14    so our only way to get proof of use records -- or the only
15    records that we have found that they still maintain are the
16    billing records through her insurance company, where it would
17    hopefully show what chemotherapy was administered to her.
18        **THE COURT:**  Okay.
19        **MS. BARRIOS:**  Your Honor, I apologize for
20    misrepresenting what the situation was.
21        **THE COURT:**  I think the final one for you,
22    Ms. Greene, is Janice Rivers Blunt.
23        **MS. BRILLEAUX:**  That's correct, Your Honor.
24        **MS. GREENE:**  Yes, Your Honor.
25        **MS. BRILLEAUX:**  Also no proof of use.

10:54

1     THE COURT:  Ms. Greene.

2     MS. GREENE:  I'm sorry.  I didn't mean to talk over

3  anyone.  I apologize if I did.

4         This is a similar situation where the infusion

5  clinic did not have the records requested, and so we have now

6  gone through and requested the billing records.  We sent the

7  request to them.  They could not find the request.  We have

8  re-sent the request to them, and we should have that --

9  hopefully they will produce the documents to us within the next

10  five to 10 days.

11     THE COURT:  I will give you 15 days.

12     MS. BRILLEAUX:  Thank you, Your Honor.

13     MS. GREENE:  Thank you, Your Honor.

14     MS. CALLSEN:  The next firm we are going to discuss

15  their substantially incomplete plaintiff fact sheets are

16  Baron & Budd.  The first plaintiff on their list is Alma

17  Calderon.  Sorry if I mispronounced your client's name.

18     MS. BENTON:  Danae Benton for Baron & Budd regarding

19  Ms. Alma Calderon.

20     THE COURT:  Wait.  I'm sorry.  Who is this?  I'm

21  having trouble picking up your name.

22     MS. BENTON:  My name is Danae, D-A-N-A-E, Benton,

23  B-E-N-T-O-N.

24     THE COURT:  Thank you, Ms. Benton.  Ms. Alma

25  Calderon.

10:55

1    **MS. BENTON:**  Yes, ma'am.  Ms. Alma Calderon, the

2    plaintiff fact sheet is substantially complete with the

3    available information that we have.  We will be happy to submit

4    an amended plaintiff fact sheet once it has been completed with

5    the available medical information.

6    We have received information from various

7    facilities.  It's been difficult getting the records in that we

8    need.  We recently received records that notate docetaxel was

9    used from a facility in Mexico where she received treatment.

10   So we are working to get that resolved by obtaining additional

11   records with the NDC codes since we do have that proof of use

12   with those records.  Those were recently uploaded.

13   **MS. CALLSEN:**  We don't have any declaration.  There

14   also are not authorizations that are dated.  It goes beyond

15   some Mexico use.

16   **MS. BENTON:**  For Ms. Calderon, there is also a

17   language barrier there, with her being a Spanish speaker.  We

18   have been able to work through that.  We have uploaded

19   additional documentation, and we will continue to upload it.

20   We would ask the Court for 15 days.

21   **MS. CALLSEN:**  You know, I just don't hear any

22   efforts.  We can't keep carrying these over and carrying these

23   over.  They have been on notice of the specific deficiencies,

24   they have been given time to cure, and we are now in front of

25   you seeking dismissal because that hasn't happened.

10:57

1    MS. BENTON:  We have declarations that were uploaded
2  in February.  We have authorizations that were uploaded in
3  February.  We have proof of use records that we got from Mexico
4  that we uploaded beginning of this month.  We have been
5  responsive to the deficiency notice.  We are working to get
6  through these issues.  We are just asking for additional time
7  to meet and confer with defense counsel to see what additional
8  information they need beyond what has been uploaded and
9  requested.
10    THE COURT:  I'm going to grant 15 days for you all to
11  meet and confer.
12    MS. BENTON:  Thank you, Your Honor.
13    MS. CALLSEN:  Wanda Ferguson is the next plaintiff,
14  similar situation.
15    MS. BENTON:  So Ms. Ferguson was previously
16  nonresponsive to our multiple and varied attempts to reach her
17  but recently responded to our office in November, stating that
18  she would provide our office with the necessary information to
19  move forward on this matter.  Our client understands the need
20  to be responsive and provide the necessary information to the
21  defendants and the Court, and as such we are requesting time to
22  work with Ms. Ferguson to get this cured.
23    MS. CALLSEN:  Again, I'm just not hearing any
24  efforts.
25    MS. BENTON:  We have uploaded the psychiatric

10:58

1   authorization, the health authorizations declaration page.  We

2   have re-sent the authorizations that needed a witness signature

3   to her.  We are working to obtain photos from Ms. Ferguson.  We

4   have sent requests for NDC codes to the various facilities.

5           **THE COURT:**  What is missing?

6           **MS. CALLSEN:**  We have no declaration.  So again this

7   is a very basic form that the plaintiffs are supposed to sign

8   and date with they fill out the plaintiff fact sheet.  So

9   basically a plaintiff fact sheet without a declaration is

10  almost blank, as far as we are concerned, because they haven't

11  verified the data on there.

12          **MS. BENTON:**  Your Honor, we have uploaded the

13  declaration page.

14          **THE COURT:**  When was that?

15          **MS. BENTON:**  I'm looking in MDL Centrality.

16  According to my notes here, the declaration page was uploaded

17  today.

18          **MS. CALLSEN:**  Well, obviously we haven't had time to

19  verify that.

20          **MS. BENTON:**  Absolutely.

21          **THE COURT:**  The Court is going to grant 15 days for

22  you to meet and confer about any deficiencies.  Ma'am, we need

23  responses here and not just "We are working really hard to do

24  this."  Okay.  With specificity.

25          **MS. BENTON:**  Yes, Your Honor.

10:59

1          **THE COURT:**  Kathy Keegan.

2          **MS. CALLSEN:**  Kathy Keegan.

3          **MS. BENTON:**  Kathy Keegan, photographs were uploaded

4     to MDL Centrality back in February.  They were mistakenly

5     uploaded under the other document type.  We re-uploaded the

6     photographs on 12/7 under the proof of injury category.

7               We were able to reach out to the client to get

8     dates, and so we have re-uploaded the photographs today.  I

9     understand there has not been time to review them from defense

10    counsel.  We were able to get dates from the client that the

11    photographs were from October 2017 and for the before

12    photographs from 2013.

13         **THE COURT:**  I'm going to grant 15 days so you all can

14    review what's been uploaded just today.

15         **MS. CALLSEN:**  I would just like to say for the record

16    photos were not even on my list.  I guess I'm a little bit

17    disturbed because we give plaintiffs the specific deficiencies

18    that are missing so they have them, and that's what we expect

19    to be submitted in order to avoid having their case be

20    dismissed.  I will agree to meet and confer for 15 days on

21    Kathy Keegan.

22         **MS. BENTON:**  The list we had stated that the

23    plaintiff hadn't submitted any proof of injury documentation,

24    including photographs.

25         **THE COURT:**  Okay.

11:00

1    **MS. BENTON:**  We have that information submitted,

2    Your Honor.

3        **MS. CALLSEN:**  That means medical records showing that

4    they actually were administered the product they allege.

5            Let's move on.  Ginger Moore.

6        **MS. BENTON:**  Yes, Ginger Moore.  Ms. Moore, again

7    this is the situation where the plaintiff fact sheet is

8    substantially complete with the available information that we

9    have.

10           We have had difficulties with locating the

11   facility where the plaintiff's medical records are with regard

12   to her infusions.  We have placed multiple orders for those

13   records.  We have reached out to defense counsel to see if they

14   have any available information.  We paid an invoice through the

15   CMO 12A process yesterday that we received related to defense

16   counsel's request for NDC information from the facility.

17       **THE COURT:**  Is this not NDC information, it's proof

18   of use?

19       **MS. CALLSEN:**  Correct.  We are not here because of

20   CMO 12.  We are here because the declaration -- Nick has just

21   advised me it's been cured, so we will remove this from the

22   call docket.

23       **THE COURT:**  Thank you.

24       **MS. CALLSEN:**  The next plaintiff is Stephanie

25   Wallace.

1    MS. BENTON:  Ms. Wallace is a dual representation

2  matter that we are working with the other plaintiffs' firm to

3  cure and resolve.  The Baron & Budd matter can be closed out,

4  leaving the other matter open.

5    MS. CALLSEN:  Can you advise of the case number for

6  the other matter?

7    MS. BENTON:  Let me see if I can pull it up.  It's

8  the McGartland Law Firm.

9    MS. CALLSEN:  So your representation is we can

10  dismiss this with prejudice?

11    MS. BENTON:  You can dismiss Baron & Budd's matter

12  number of 2:17-CV-15838 for Stephanie Wallace and leave the

13  McGartland matter open.

14    THE COURT:  Let me just double-check.

15    THE DEPUTY CLERK:  I only have one case for Stephanie

16  Wallace.

17    THE COURT:  Would you just look and see who she has

18  identified as attorneys in that case number, please, Erin.

19    THE DEPUTY CLERK:  Baron & Budd.

20    THE COURT:  Just so you are aware, we show no other

21  law firm representing Ms. Wallace.  When we open up your case

22  number -- wait.  We are double-checking.

23    MS. BENTON:  Your Honor, Ms. Wallace also went by

24  Stephanie Vasquez.  I believe that's where the issue came into

25  play, is that the McGartland Law Firm filed under Vasquez and

11:03

1  not Wallace.

2          **MS. BARRIOS:**  Do you know how to spell Vasquez?

3          **MS. BENTON:**  V-A-S-Q-U-E-Z.

4          **THE COURT:**  I think we have that.  That's the

5  McGartland Law Firm?

6          **MS. BENTON:**  Yes, ma'am.  Yes, Your Honor.  It's

7  McGartland Law Firm.  The case number, as far as what we

8  reviewed, had the same date of birth information, of that

9  nature.

10         **THE COURT:**  The Court is going to dismiss Stephanie

11 Wallace's claim that's 17-15838.

12              What is this number, Erin?

13         **THE DEPUTY CLERK:**  The one remaining pending is

14 17-10139.

15         **THE COURT:**  Thank you.

16         **MS. BENTON:**  Thank you, Your Honor.

17         **MS. CALLSEN:**  That's it for that firm.  The next ones

18 are with the Cutter Law firm.  The first one is Showntaka

19 Dandridge.

20         **MS. DOMER:**  Yes, Your Honor.  Jennifer Domer from

21 Cutter Law.

22              We were able to upload plaintiff authorizations

23 on December 13.  We did a deficiency response yesterday.  I

24 assume defense counsel has not had a chance to review.  We are

25 continuing to follow up with the client for photos.  She was

11:04   1   able to send back the authorizations, but she didn't send
        2   photos back with them.  We believe that with additional time we
        3   will be able to get those.
        4           **THE COURT:**  15 days.
        5           **MS. DOMER:**  Thank you, Your Honor.
        6           **MS. BRILLEAUX:**  Also with the Cutter Law firm we have
        7   Nannie Maldonado.  This is for no proof of use and no before
        8   photos.
        9           **MS. DOMER:**  Yes.  So we were able to upload her dated
       10   before photos yesterday.  I understand you probably have not
       11   had a chance to look those over at this time.
       12                As for her proof of use, we have had some
       13   issues.  While we do have her chemo teaching notes, which
       14   obviously don't have the infusions on them, I understand, but
       15   her doctor's office had moved.  So we have been kind of trying
       16   to track where those records may have been because the office
       17   where it used to be a medical facility has, like, a fish and
       18   wildlife center.  We have had some difficulty.  We have been
       19   trying to reach out to the New Jersey medical board trying to
       20   track this down as well.
       21           **MS. BRILLEAUX:**  Your Honor, this case has been
       22   pending for over a year.  I think it's well past due, the
       23   medical records establishing use of docetaxel.
       24           **MS. BARRIOS:**  Your Honor, I ask that you consider the
       25   fact that the facility is now a wildlife and fisheries

11:05   1    building.  If she is going to go through the New Jersey medical

2    board to try to locate the physician, that may take longer than

3    15 days.

4            THE COURT:  The Court is going to grant 30 days, and

5    then we will just see where we are at that time.

6            MS. BARRIOS:  Thank you, Your Honor.

7            MS. DOMER:  Thank you, Your Honor.

8            MS. CALLSEN:  The next case is Ophelia Marts.

9            MS. DOMER:  Yes.  We were able to upload her dated

10   photos, before and after, on 12/7.  We also submitted the

11   employment authorization yesterday.  I apologize.  I thought we

12   had submitted her verification, but upon review of her file

13   this morning I show that we had not.  So we have her signed

14   verification; we uploaded that this morning.  We also were able

15   to answer her deficiency response on Monday, 12/17.

16           THE COURT:  I'm going to grant 15 days for the

17   defendant to review compliance.

18           MS. CALLSEN:  Thank you.  Veronica Sheaffer is the

19   next plaintiff.

20           MS. DOMER:  I show that we uploaded dated before and

21   after photos from her on Friday, December 14.

22           MS. CALLSEN:  We don't have proof of injury.  We

23   don't have proof of use.  The declaration has not been

24   submitted.  We don't have authorizations.

25           THE COURT:  What about the declaration and

1  authorizations?  I think the upload of photographs would be

2  proof of injury at least.

3          MS. CALLSEN:  Well, you could be bald without having

4  taken docetaxel.

5          THE COURT:  I understand.  The declaration and

6  authorization, I'm asking what's the status of that.

7          MS. DOMER:  Your Honor, I apologize.  I show in MDL

8  Centrality that we uploaded her declaration February 21 of this

9  year as well as her authorizations at that time.

10          THE COURT:  What else is missing, proof of use?

11          MS. CALLSEN:  Proof of use.

12          MS. DOMER:  I also show that we uploaded pharmacy

13  records on 12/21 of this year as well.

14          MS. CALLSEN:  When did you submit those?  I thought

15  you said 12/21, which is not --

16          MS. DOMER:  Oh, I'm sorry.  2/21.  All of the

17  pharmacy records showing proof of use, medical records,

18  authorizations, and her declaration were uploaded February 21.

19          THE COURT:  I'm going to grant 15 days for the

20  defendant to meet and confer.

21          MS. DOMER:  Thank you, Your Honor.

22          MS. CALLSEN:  The last plaintiff with this law firm

23  is Paula Williams.

24          MS. DOMER:  Yes.  We were able to get her missing

25  authorizations.  I uploaded those Thursday, December 13.  We

11:08

1    also uploaded her PTO 71 verification on November 13.  We were

2    able to get her dated photos November 13, but plaintiff did not

3    send us after photos until late last night.  We were able to

4    upload those today showing her hair loss from multiple angles.

5         **THE COURT:**  The Court is going to grant defendant

6    15 days to determine if they are satisfied.

7         **MS. CALLSEN:**  The next firm whose cases we are going

8    to go through are Reich & Binstock.  The first plaintiff is

9    Lisa Bonta.

10        **MR. ROTH:**  Good morning, Your Honor.  Steve Roth of

11   Reich & Binstock.

12        **THE COURT:**  Okay, Mr. Roth.

13        **MR. ROTH:**  Lisa Bonta, we resubmitted her on

14   October 17, with the defendants issuing an amended deficiency

15   notice on November 20.  Ms. Bonta is currently in a hospice,

16   and she wishes to stay in this litigation.  We are working with

17   her to try to get the defendants all the information they need.

18   Physically, it's hard.  She is limited.  She can only do so

19   much time each day.  We ask a little bit of indulgence on this

20   one, to try to work with her while she is still with us, to get

21   as many deficiencies cured as possible.

22        **MS. CALLSEN:**  While we were sympathetic to her

23   medical condition, we have nothing.  In fact, what documents we

24   do have suggest that she did not use docetaxel but used a

25   different chemotherapeutic agent.  We are seeking the basic

11:10

1    information to even start with the lawsuit.

2              THE COURT:  Mr. Roth, what information have you been

3    provided that shows that she indeed used docetaxel?

4              MR. ROTH:  I'm just going to have to refer to the

5    medical records for right now and --

6              THE COURT:  That would be sufficient if the medical

7    records show use of docetaxel.

8              MS. CALLSEN:  If they establish docetaxel use.

9              THE COURT:  I am very sympathetic to her medical

10   status.  If you have medical records in your possession, what

11   I'm going to do at a bare minimum is require that you

12   personally provide to defendants verification that she used

13   docetaxel.  If you can direct them to what page of the medical

14   records shows administration of that drug, I think that needs

15   to occur immediately.

16             MR. ROTH:  Sure.

17             THE COURT:  If you have the medical records, you can

18   do that.  I want that done within 15 days.

19             MR. ROTH:  Okay.

20             THE COURT:  Then after that I'm going to give you an

21   additional 30 to complete getting the other information

22   together, being cognizant of her current physical status.

23             MR. ROTH:  Thank you, Your Honor.

24             MS. CALLSEN:  Could we just ask if within 15 days the

25   medical record that they show us does not show docetaxel use

11:11

1   that we can seek dismissal promptly?

2           **THE COURT:**  Yes.  If there's no information she used

3   docetaxel, there's no basis for this litigation.  My guess is

4   if Mr. Roth is unable to direct you to that --

5           Mr. Roth, you understand what that means.

6           **MR. ROTH:**  Yes.  Yes, Your Honor.

7           **THE COURT:**  Thank you.

8           **MS. CALLSEN:**  The next plaintiff is Nancy Clay.

9           **MR. ROTH:**  Keith Roth again.  We resubmitted her on

10  November 15 of this year, so we are waiting for defendants to

11  come back with -- or hopefully not come back with an amended

12  deficiency notice.

13          I'm showing that we still need to get the

14  authorizations to you.  Like our claim that we just discussed,

15  this woman is going through her third bout of cancer.  We are

16  trying not to hammer on her too hard, but we feel pretty

17  confident we can get those authorizations to you, to the

18  defendants, pretty quickly here.

19          **THE COURT:**  I'm going to grant 15 days to get the

20  authorizations.

21          **MS. CALLSEN:**  Thank you.

22          **MR. ROTH:**  Thank you.

23          **MS. CALLSEN:**  Mandy Fridge.

24          **MR. ROTH:**  Correct.  We resubmitted her on

25  October 17, uploaded her authorizations on October 22, and got

11:12

1    an amended deficiency notice on her on November 29.  We still

2    have time to respond to that.

3              THE COURT:  What?

4              MS. CALLSEN:  I'm sorry.  I'm not following.  The

5    deficiency is the PFS is still not substantially complete.

6    There's no proof of injury documentation that's been submitted.

7              MS. BARRIOS:  Your Honor, I believe what the

8    situation is is that the defendants filed a deficiency notice,

9    original deficiency notice.  Plaintiff's counsel then amended

10   the plaintiff fact sheet, and then just on the 29th of November

11   the defendants issued a second deficiency notice.

12                 Is that correct, Mr. Roth?

13             MR. ROTH:  That's correct.  That's correct.

14             MS. CALLSEN:  It's a continuing deficiency, though.

15             THE COURT:  The original deficiency included all of

16   this, correct?

17             MS. CALLSEN:  Correct.  Correct.

18             THE COURT:  What's left?

19             MS. CALLSEN:  What's left with this firm?

20             THE COURT:  No.  What's the deficiency that remains?

21   All I have is not substantially complete.

22             MS. CALLSEN:  We don't have any proof of injury

23   documentation.

24             MS. BRILLEAUX:  Your Honor, I have additional notes

25   on this.  I have that we have no proof of use, no before

11:14

1     photos, no after photos, no signed declaration, and no

2     authorizations.

3               **THE COURT:**  I think part of that's been done.  I

4     think what's remaining is proof of injury.  Correct?

5               **MS. CALLSEN:**  I'm sorry.

6               **THE COURT:**  Proof of injury is the only thing

7     remaining?

8               **MS. CALLSEN:**  On Mandy Fridge.  We are on Mandy

9     Fridge, right?

10               **THE COURT:**  Yes.

11               **MS. CALLSEN:**  We have no proof of injury

12     documentation.

13               **MR. ROTH:**  Correct.

14               **THE COURT:**  I'm going to grant 15 days.

15               **MR. ROTH:**  Thank you, Your Honor.

16               **MS. CALLSEN:**  Which includes proof of use?

17               **MR. ROTH:**  Sure.

18               **THE COURT:**  Yes.

19               **MS. CALLSEN:**  15 days.

20               **THE COURT:**  Okay.

21               **MS. CALLSEN:**  All right.  I just wanted to again go

22     back up to Nancy Clay.  I know that you gave 15 days, but there

23     were substantial deficiencies, numerous deficiencies, and so we

24     would ask that they be cured, as to each one, within 15 days,

25     or we have our meet-and-confer and decide which ones have not

11:14

1   been cured.

2        THE COURT:  Isn't this the lady that's dying?

3        MS. BARRIOS:  This is the lady --

4        MS. CALLSEN:  Right.

5        MS. BRILLEAUX:  -- that's on her current bout of

6   cancer.

7        MS. CALLSEN:  No.  No, the lady that's dying is

8   Ms. Bonta.

9        MR. ROTH:  If I may, Lisa Bonta is dying.

10       THE COURT:  That's Lisa Bonta.

11       MR. ROTH:  Nancy Clay is fighting cancer for the

12  third time.  I have spoken to her recently.  She was kind of

13  semilucid the last time I talked to her, so that's another

14  difficult one that we are working through, Your Honor.

15       THE COURT:  Okay.  Well, I'm going to grant 15 days

16  to get this information.  If for some reason because of her

17  physical status you can't, I think you need to communicate with

18  defense counsel.  It's not enough to just say, "I can't do

19  this."  You have to communicate and advise what's the status.

20  This would really help all of us a great deal, communication.

21       MS. BRILLEAUX:  Thank you, Your Honor.  This is a

22  Sanofi and 505 case.  Just also on behalf of the Sanofi

23  defendants, the show cause and the deficiency process can run

24  concurrently.  So if the plaintiff is on the show cause list,

25  we still believe that it's appropriate to move forward with

11:16  1    having them submit those.  We can still submit additional

2    deficiencies as they come up.

3              **THE COURT:**  Sure.

4              **MS. BRILLEAUX:**  Thank you.

5              **MS. CALLSEN:**  The next plaintiff is Grandassa Harris.

6              **MR. ROTH:**  Yes, Your Honor.  We resubmitted her on

7    November 5 and have not had any feedback from the defendants.

8              **MS. CALLSEN:**  Well, you have had feedback, sir, in

9    that we have listed the specific deficiencies which remain,

10   which include proof of use, proof of injury, the declarations

11   not provided.  Further, we have no authorizations.  So all

12   that's been listed on the show cause list that we provided in

13   advance of this call docket.

14             **THE COURT:**  So what was resubmitted on November 5?

15             **MR. ROTH:**  Her plaintiff fact sheet --

16             **MS. CALLSEN:**  With all the deficences.

17             **MR. ROTH:**  -- responding to the previous deficiencies

18   we have attempted to cure.

19             **THE COURT:**  All right.  I'm going to grant 15 days,

20   but I have to tell you it's not enough to just resubmit.  You

21   have to resubmit and address the deficiency.

22             **MS. CALLSEN:**  Your Honor, just resubmitting a

23   plaintiff fact sheet with substantially incomplete

24   documentation --

25             **THE COURT:**  That's what I just said.

1    **MS. CALLSEN:**  As you just said.  I'm sorry.

2    **THE COURT:**  That's what I just said.  It's not enough

3 to resubmit.  You have to resubmit and address the

4 deficiencies.  I've been more than lenient, but I'm starting to

5 lose my patience.

6    **MS. CALLSEN:**  Understood.

7    **MR. ROTH:**  We understand.

8    **THE COURT:**  Mary Hoggard.

9    **MS. BRILLEAUX:**  Yes.  I have for that that there is

10 no signed declaration, no after photos, and no before photos.

11    **THE COURT:**  Mr. Roth.

12    **MR. ROTH:**  Yes.  We amended her plaintiff fact sheet

13 on October 25 and on November 16.  The before and after

14 pictures -- the declaration will be easy to get.  We are still

15 working with her to get the before and after pictures.  I do

16 not know why those have been slow in coming.  I'm going to

17 follow up on that.

18    **THE COURT:**  What's frustrating to me is I don't

19 understand why there are no signed declarations on these

20 because that's an easy cure.  The authorizations are an easy

21 cure.  I'm going to give you 15 days to get it all done.

22    Just anybody else who is on the telephone, I

23 really don't want to hear any more about no signed

24 declarations.  There's just no reason for that.

25    I'm going to grant 15 days.

11:18

1          **MR. ROTH:**  Thank you, Your Honor.

2          **MS. BRILLEAUX:**  The next one I have is Corsette Mays.

3    This is no proof of use and undated or inappropriately dated

4    photographs.

5          **MR. ROTH:**  We resubmitted Ms. Mays literally this

6    morning and should have gotten her resubmitted back on

7    October 23 when we submitted the authorizations.  Her

8    declaration on that day simply did not hit the "Submit" button.

9    We are working on --

10         **THE COURT:**  What about the proof of use?

11         **MR. ROTH:**  I don't have an immediate response to

12   that.  We are obviously trying to get proof of use for all

13   clients who are still deficient on that.  I don't have a

14   current --

15         **THE COURT:**  I'm going to grant 15 days.

16         **MR. ROTH:**  Okay.  Thank you.

17         **THE COURT:**  Andrea Tanner.

18         **MS. BRILLEAUX:**  That's no proof of use, no before

19   photos, and no after photos.

20         **THE COURT:**  Proof of use.

21         **MR. ROTH:**  Similar to Corsette Mays, we got her

22   resubmitted on October 30 and are working with her to try to

23   get the pictures as well as provide proof of use.

24         **MS. BRILLEAUX:**  Your Honor, I just --

25         **THE COURT:**  I'm granting 15 days, but let me assure

11:20

1    you, Mr. Roth, that these things have to be cured within the

2    15 days.

3              **MS. BRILLEAUX:**  Thank you, Your Honor.

4              **MR. ROTH:**  I understand totally.

5              **MS. CALLSEN:**  The next firm we are going to talk

6    about is The Mulligan Law Firm.  I see Chip Orr or Charles G.

7    Orr.

8              **THE COURT:**  So is there anyone else on the phone?

9              **MS. CALLSEN:**  Oh, good question.  Let me see.

10             **THE COURT:**  Is there anyone on the phone from any

11   other law firms?  I see Pulaski Law Firm.  Is anybody on the

12   phone for them?

13             **MS. LAMACCHIA:**  Yes.  I am, Your Honor.

14             **MS. CALLSEN:**  Marc Bern is another firm and then

15   Bachus & Schanker.

16             **THE COURT:**  And they are here.  Okay.  Let's go

17   through The Mulligan Law Firm.

18             **MS. CALLSEN:**  The first one for Mulligan is Juanita

19   Black-Roberson.

20             **MR. ORR:**  My name is Charles Orr, Mulligan Law Firm.

21   We submitted an amended PFS and a deficiency response.  I can

22   provide document ID numbers if you like.  We still need to get

23   photos from Ms. Black-Roberson.

24             **MS. CALLSEN:**  When were those submitted?

25             **MR. ORR:**  I believe yesterday.  I only have the

11:21

1    document ID numbers.  280532 is the deficiency response.

2    280530 is the amended PFS.

3          THE COURT:  Mr. Orr, I'm going to ask you to move

4    the -- thank you.

5                I'm going to grant 15 days for the parties to

6    meet and confer and review.

7          MS. CALLSEN:  The next plaintiff is Gloria Davis.

8          MR. ORR:  Your Honor, by way of a meet-and-confer

9    email that I had with the 505s, they advised that we didn't

10   date the declaration.  We have uploaded a dated declaration.

11               Proof of injury, we don't have any photos

12   showing her hair at present day, after.  We uploaded four

13   photos about a week ago.

14               The authorizations, there's some issues with

15   three of them not having been signed by a witness.  I can go

16   back and get a witness to sign those, but at least two of them

17   aren't even pertinent because there's no disability or workers'

18   comp issue in the case.

19         THE COURT:  I'm going to give you all 15 days.  It

20   doesn't sound like there's that much left to do, but I'm going

21   to give you 15 days to get in compliance.

22         MS. CALLSEN:  The next is Billie Hicks.  There's no

23   proof of injury nor signed declaration with the PFS for this

24   plaintiff.

25         MR. ORR:  We have no basis to oppose dismissal for

11:22   1    that plaintiff, Your Honor.

2              THE COURT:  This matter is dismissed with prejudice.

3              MS. CALLSEN:  Cecile Houston is the next one.

4              MR. ORR:  The only deficiency is no before photos,

5    and we are working on getting those, Your Honor.

6              MS. CALLSEN:  I have that there's no proof of injury

7    documentation.

8              MR. ORR:  That is incorrect.  I did a meet-and-confer

9    by email with the 505 defendants, and the only allegation of

10   any deficiency with the PFS is that there's no proof of injury.

11   Plaintiff has not provided any before photos.  I relied on that

12   email --

13             THE COURT:  So it's the same thing.  Okay.  What's

14   the holdup with the before photos?

15             MR. ORR:  The holdup is just simply getting them from

16   our client, Your Honor.  We would just ask for additional time.

17             THE COURT:  15 days.

18             MR. ORR:  Thank you, Your Honor.

19             MS. CALLSEN:  The next plaintiff is Marguerite

20   Malcheski.

21             MR. ORR:  That's another one with an undated

22   declaration.  We fixed it.  We uploaded a dated declaration.

23                  The defendants also identified some issues with

24   the authorizations.  They had Post-it notes on them that said

25   things like "N/A."  We inadvertently uploaded them that way.

11:23

1    We fixed the authorizations, re-uploaded them, addressed all of

2    the concerns that defendants raised.

3            **MS. CALLSEN:**  I have that no proof of injury, no

4    documentation has been submitted.

5            **MR. ORR:**  Let's see.  I don't have that.  When I met

6    and conferred with the defendants --

7            **MS. CALLSEN:**  Actually, yes, that's been resolved.

8            **THE COURT:**  So is there anything left with this

9    plaintiff?

10           **MR. ORR:**  Shouldn't be.

11           **MS. BRILLEAUX:**  For which plaintiff?

12           **MR. ORR:**  Marguerite Malcheski.

13           **MS. CALLSEN:**  Marguerite Malchesi.  We are checking.

14   It's hard with these late submissions.

15           **MR. ORR:**  Those weren't late submissions, Your Honor.

16           **THE COURT:**  It was satisfied.

17           **MS. CALLSEN:**  Okay.  We are good with that.

18           The next one is Kristin Philbrook.  Again,

19   there's a substantial list, so I will wait to hear if Mr. Orr

20   wants to proceed before I dig into it.

21           **MR. ORR:**  We do want to proceed.  I have spoken with

22   Ms. Philbrook.  We acknowledge that there are deficiencies that

23   need to be resolved.  Ms. Philbrook travels a bunch for work.

24   We are just still trying to work with her to get the

25   documentation that's needed, and we acknowledge --

11:24  1          THE COURT:  What is missing?

2          MR. ORR:  We are missing a declaration and

3    authorizations.  I'm sure there's other things missing for her.

4          MS. CALLSEN:  Yes.  There's proof of injury and proof

5    of use.  In fact, the medical records indicate Taxol use not

6    docetaxel.

7          MR. ORR:  We disagree with that.  I don't have access

8    to her file right now to express my disagreement.

9          THE COURT:  All right.  This is what I'm going to do.

10   Tell Ms. Philbrook she has 15 days to fix this all because this

11   has been pending for over a year.

12         MR. ORR:  Yes, Your Honor.

13         THE COURT:  There's no reason why a declaration

14   authorization should not have been provided as well as proof of

15   use.

16         MR. ORR:  Understood, Your Honor.  I believe we did

17   provide proof of use, but I will go back and check.

18         THE COURT:  That's a meet-and-confer issue.

19         MR. ORR:  It is.

20         THE COURT:  I'm not going to dismiss a case because

21   you disagree what the medical records show.

22         MR. ORR:  Sure.

23         THE COURT:  I mean until I see it.

24         MS. CALLSEN:  Until you see it.  Understood.

25             The next one is Jennifer Robison.

11:26

1    **MR. ORR:**  We have no basis to oppose dismissal for

2    Ms. Robison or the next three on the list:  Tina Ross, Norma

3    Saavedra, and Debra Seibert.

4         **THE COURT:**  Those matters are dismissed with

5    prejudice.  That's Jennifer Robison, Tina Ross, Norma Saavedra,

6    and Debra Seibert.

7         **MS. CALLSEN:**  The next one we have is Dorothy

8    Shappell.

9         **MR. ORR:**  On Dorothy Shappell, we submitted photos

10   showing injury back in November, but for some reason we didn't

11   get a declaration and authorizations with the photos.  We have

12   since clarified with Ms. Shappell that she needs to provide

13   those.  We are having to do it by FedEx, so we expect to have

14   those back either this Friday or next Monday.

15        **THE COURT:**  You have 15 days.

16        **MR. ORR:**  Thank you.

17        **MS. CALLSEN:**  The next one is Shannon Southard.

18        **MR. ORR:**  The remaining three Mulligan cases,

19   Your Honor -- Shannon Southard, Tara Travis, and Shirley

20   Voisin -- we have no basis to oppose dismissal.

21        **THE COURT:**  Those matters are dismissed with

22   prejudice.

23        **MR. ORR:**  Thank you, Your Honor.

24        **MS. CALLSEN:**  Thank you.

25        **THE COURT:**  Can we take a quick, quick break.  I want

11:27

1    to see the people -- if you all approach, including attorneys

2    with Bachus & Schanker.

3              (Recess.)

4              **THE COURT:**  We are finished with The Mulligan Law

5    Firm.  Now we are with Marc Bern.  Is somebody on the phone

6    with Marc Bern's law firm?

7              **MS. HUMPHREY:**  Yes.

8              **THE COURT:**  What's your name, please?

9              **MS. HUMPHREY:**  Debra Humphrey from Marc J. Bern &

10   Partners, Your Honor.

11             **THE COURT:**  Okay.  Let me ask you something,

12   Ms. Humphrey, before we even get started.  Are there any people

13   that are on this list that there is no basis for you to object

14   to a dismissal?

15             **MS. HUMPHREY:**  There are a few.

16             **THE COURT:**  Let's go through those real quickly.

17             **MS. HUMPHREY:**  Anita Spencer-Williams.

18             **THE COURT:**  Anita Spencer-Williams, which is 79 on

19   the call docket, that matter is dismissed with prejudice.  Is

20   that it?

21             **MS. HUMPHREY:**  No, Your Honor.  Kelly Pena, P-E-N-A.

22             **THE COURT:**  Okay.  That matter is dismissed with

23   prejudice.  It's Item 77 on the call docket.

24             **MS. HUMPHREY:**  Michelle Pineda, P-I-N-E-D-A.

25             **THE COURT:**  78 on the call docket, that matter is

11:29    1    dismissed with prejudice.

2            MS. HUMPHREY:  Beverly Locklear.

3            THE COURT:  Okay.  That's 72 on the call docket.

4    That matter is dismissed with prejudice.

5            MS. HUMPHREY:  Jean Carter.

6            THE COURT:  Carter?

7            MS. CALLSEN:  Is that 63?

8            THE COURT:  63?  Okay.  That matter is dismissed with

9    prejudice.

10           Okay.  Ms. Humphrey, let's go back.  We begin

11   with Patsy Baudier.

12           MS. CALLSEN:  Right.  There's no declaration, no

13   proof of use.

14           THE COURT:  Ms. Humphrey.

15           MS. HUMPHREY:  We have tried to call the client and

16   reach her at her address multiple times in the last month.  We

17   would like to request 30 days to try to get the declaration and

18   proof of use and submit it to defense counsel.

19           THE COURT:  I'm going to give you 15 days.  The Court

20   will grant 15 days.

21           MS. CALLSEN:  Can I just interrupt?  I mean, if they

22   have tried and they are unable to reach their client, shouldn't

23   this be ripe for dismissal as opposed to 15 days?  I mean,

24   what's 15 days going to do?

25           THE COURT:  When did you try to contact her?

11:31

1       MS. HUMPHREY:  Hold on one second.  I will give you
2  the dates if my computer ever stops.
3            We tried to call her at a working number last
4  week and then several times in the last month and sent her a
5  letter with the --
6       THE COURT:  When was the letter sent?
7       MS. HUMPHREY:  The letter was sent back in September,
8  and it did not come back to us as unreturnable.
9       THE COURT:  Okay.  I'm not going to grant any
10  additional time.  I thought that this was in the last week or
11  two.  I thought perhaps it was a trip.
12            Plaintiff's counsel has obviously diligently
13  tried to contact the client.  Her failure to respond, she has
14  not complied with her obligations under the lawsuit.  This
15  matter is dismissed with prejudice.
16       MS. CALLSEN:  Thank you.
17       THE COURT:  Emma Brown.
18       MS. CALLSEN:  Your Honor, I have no declaration, no
19  after photos, and no before photos.
20       THE COURT:  Ms. Humphrey.
21       MS. HUMPHREY:  It appears that the client may have
22  moved.  We have been in contact with her in the past, but our
23  recent letters to her have come back as undeliverable.  We
24  called several times in the last month.  We are going to hire
25  an investigator to try to track her down.  We are requesting

11:33  1   additional time here.

2          THE COURT:  This matter is dismissed with prejudice.

3   Plaintiff's counsel has obviously attempted to contact the

4   client, but the client has failed to comply with her

5   obligations under the lawsuit.

6          MS. BRILLEAUX:  Thank you, Your Honor.  Dorothy

7   Cameron, I have no declaration, no before photos, and no after

8   photos.

9          MS. HUMPHREY:  Here we have actually reached the

10  client.  She notified us three weeks ago that she sent back all

11  the documents via certified mail.  We haven't received those

12  documents.  We reached out to her again today via email and

13  phone, and I'm waiting for return emails from her.

14         THE COURT:  The Court is going to grant 15 days.

15         MS. HUMPHREY:  Okay.

16         THE COURT:  The next one is Orelia Castille.

17         MS. BRILLEAUX:  Yes, Your Honor.  I have no proof of

18  use, no before photos, and no after photos.

19         MS. HUMPHREY:  Our client was recently in the

20  hospital and was not reachable for some time.  It appears that

21  we were able to get in touch with her.  I need to see what the

22  status of getting these documents from her is.  We are

23  requesting additional time.

24         THE COURT:  What about the proof of use, though?

25  That's medical records.  What information do you have that she

11:34

1   actually used docetaxel?

2            **MS. HUMPHREY:**  It appears we are waiting for records

3   from her doctors, and I don't know what the holdup is.

4            **THE COURT:**  That doesn't answer my question, which is

5   what proof do you have that she used docetaxel?

6            **MS. HUMPHREY:**  The client's representation that she

7   used it.

8            **THE COURT:**  I'm going to grant you 15 days to get

9   those records in place.

10           **MS. HUMPHREY:**  Thank you.

11           **THE COURT:**  Deborah Clelland.

12           **MS. BRILLEAUX:**  Your Honor, I have no proof of use,

13   no signed declaration, and no CMO 12A uploaded.

14           **THE COURT:**  I thought we weren't dealing with CMO 12.

15           **MS. BRILLEAUX:**  It's a separate issue, Your Honor.

16   It's just an additional deficiency that we are dealing with.

17   We have no proof of use at all.

18           **MS. HUMPHREY:**  We uploaded medical records and the

19   declaration page onto the portal.  We don't have the NDC

20   numbers.  We would like to have 15 days to send the necessary

21   certifications to defense counsel and meet and confer on that

22   issue.

23           **MS. BRILLEAUX:**  Your Honor, unless they were uploaded

24   today, our records show that they have not been uploaded.

25           **THE COURT:**  I'm going to give you 15 days to meet and

11:36

1    confer to verify that.

2                    Ms. Humphrey, we are on Sarah Collett.

3        **MS. BRILLEAUX:**  Your Honor, I have no proof of use,

4    no declaration, no before photos, no after photos, and no

5    authorizations.

6        **MS. HUMPHREY:**  We have made multiple attempts in the

7    last three months via phone calls, letters sent through

8    certified mail that were signed by the client to have --

9        **THE COURT:**  This matter is going to be dismissed with

10   prejudice.  Plaintiff's counsel has made diligent efforts to

11   contact the client, but the client has not been compliant.

12                    Felicia Copeland.

13       **MS. BRILLEAUX:**  Your Honor, I have no declaration, no

14   before photos, and no after photos.

15       **MS. HUMPHREY:**  It appears that this client may have

16   moved as well.  We sent her a letter last month, but it came

17   back last week as undeliverable.  We would like to ask for 15

18   to 30 days to try to track her down.

19       **THE COURT:**  No.  This matter is dismissed with

20   prejudice.  Plaintiff's counsel has made efforts to contact the

21   client.  The client has not been compliant.

22                    Darlene Crump.

23       **MS. BRILLEAUX:**  Your Honor, no proof of use, no

24   declaration, no before photos, and no after photos.

25       **MS. HUMPHREY:**  This is another client that we have

11:37

1   made multiple attempts to contact and --

2           **THE COURT:**  This matter is dismissed with prejudice.

3           **MS. BRILLEAUX:**  Thank you, Your Honor.  Lisa Ezzell,

4   I have no proof of use, no declaration, no before photos, and

5   no after photos.

6           **MS. HUMPHREY:**  I'm sorry.  I missed the client on our

7   list.  Could we get 15 days to meet and confer?  We will try to

8   get all the documents in.

9           **THE COURT:**  What?

10          **MS. HUMPHREY:**  We got the list last night around

11  midnight, and I must have missed this client.  I don't have her

12  name.

13          **MS. BRILLEAUX:**  Your Honor, this case has been on the

14  list since August 29.  This was not a surprise.

15          **THE COURT:**  Let's go to the next one.  I'm just going

16  to circle Ms. Ezzell.

17               Lisa Haddock.

18          **MS. BRILLEAUX:**  For Lisa Haddock, Your Honor, I have

19  no declaration, no after photos, and no before photos.

20          **MS. HUMPHREY:**  For Ms. Haddock we have after photos

21  that we can serve today and will follow up with before photos

22  and the rest of the documentation if we can get 15 days.

23          **MS. BRILLEAUX:**  Your Honor, this case has been

24  pending since March of this year.

25          **THE COURT:**  Is there a declaration that hasn't been

11:39   1  filed?

2              MS. BRILLEAUX:  Yes.

3              THE COURT:  What's the problem with the declaration?

4              MS. HUMPHREY:  I don't know why it wasn't --

5              THE COURT:  I'm going to grant 15 days and that's it.

6                   Letha Holbrook.

7              MS. BRILLEAUX:  Your Honor, I have no proof of use,

8  no declaration, no before photos, and no after photos.

9              MS. HUMPHREY:  We were previously not able to contact

10  this client.  However, we had a personal investigator hired and

11  actually found her this week, on Monday, to go over the

12  plaintiff fact sheet.  We request 15 days to submit the

13  plaintiff fact sheet and all the documents.

14              THE COURT:  I'm going to grant 15 days.

15                   Stacy Maisner.

16              MS. BRILLEAUX:  Your Honor, no declaration, no after

17  photos, and no before photos.

18              MS. HUMPHREY:  This is a client who advised us in

19  mid-November that she had a mental breakdown but she was going

20  to get us these documents.  We caught up with her this morning.

21  We request 15 days.

22              THE COURT:  I'll grant 15 days for this one.

23                   Cathy Nolan.

24              MS. BRILLEAUX:  No declaration, no after photos, and

25  no before photos.

11:41

1       **MS. HUMPHREY:**  As of November 13 -- I think this was

2   represented to defense counsel perhaps at the last call.  She

3   was disrupted by the hurricane in October, as in all of her

4   possessions were destroyed, so we are trying to get the

5   documents from her.  We need at least 15 days to be able to do

6   so.

7       **THE COURT:**  What about the declaration?  That's what

8   I don't understand is how there's an absent declaration.  I

9   mean, it's one thing to lose photographs -- I understand

10  that -- or even some problems with medical records.

11      Anybody on the phone, understand I'm done with

12  the declarations.

13      I'm going to give you 15 days.

14      Ms. Barrios, we are going to talk a little bit

15  when this is over because --

16      **MS. BARRIOS:**  Yes, ma'am.

17      **THE COURT:**  -- you are going to need to send out a

18  notice.

19      **MS. BRILLEAUX:**  Thank you.  The next one I have is

20  Kristy Obanion.  I have no proof of use, no declaration, no

21  before photos, no after photos, and no authorizations.

22      **MS. HUMPHREY:**  We request 15 days to try to obtain

23  those documents from our client, although we did reach her and

24  try to --

25      **THE COURT:**  I guess this is my problem.  Why?  What

11:42  1   has caused the delay?  I'm not hearing any reason why none of

2   this is in the plaintiff fact sheet.

3            **MS. HUMPHREY:**  We have tried to get it from her

4   multiple times, and I would request 15 days just to not --

5            **THE COURT:**  I'll give you 15 days but not 16.

6                Yolonda Pearson.

7            **MS. BRILLEAUX:**  Your Honor, no proof of use and also,

8   separately, no CMO 12 uploaded, but the issue is really no

9   proof of use.

10           **THE COURT:**  Okay.

11           **MS. HUMPHREY:**  I'm a little confused on this one

12  because we actually have defense fact sheets from three

13  defendants.

14           **THE COURT:**  What?  The question is no proof of use.

15  That means medical records or something showing that she used

16  the medication.

17           **MS. BARRIOS:**  Your Honor, Dawn Barrios.  It's my

18  understanding that defendant will not provide a defense fact

19  sheet unless the plaintiff fact sheet is substantially

20  complete.  So without knowing any facts of this case, I would

21  assume that perhaps she has proof of use but not proof of

22  manufacturer, but that's pure speculation.

23           **MS. BRILLEAUX:**  Your Honor, just to clarify,

24  Ms. Barrios is correct.  In the amended Pretrial Order 22,

25  there are categories that --

1        THE COURT:  All right.  I'm going to give you 15 days
2    to meet and confer on this one.
3               Now, let's go back to Lisa Ezzell.  I don't even
4    remember why I'm coming back to it.
5        MS. BRILLEAUX:  That was 69.
6        MS. HUMPHREY:  That was my mistake, Your Honor.  I
7    didn't have her listed on my list to discuss today.  That's my
8    mistake.
9        THE COURT:  Okay.  I'm going to ask that you meet and
10   confer.  I would say five days except we are running right into
11   Christmas, so within the next 15 days meet and confer.
12       MS. BRILLEAUX:  Thank you, Your Honor.  That's all I
13   have for Marc J. Bern & Partners.
14       THE COURT:  Thank you.
15       MS. HUMPHREY:  Thank you.
16       THE COURT:  The next law firm, I think, is the
17   Pulaski Law Firm.  Who do I have on the phone?
18       MS. LAMACCHIA:  Good morning, Your Honor.  Leslie
19   LaMacchia.
20       THE COURT:  How do you spell your last name?
21       MS. LAMACCHIA:  L-A-M-A-C-C-H-I-A.
22       THE COURT:  Ms. LaMacchia, Fatina Al Jabari.
23       MS. BRILLEAUX:  Your Honor, I have no proof of use
24   and no before photos.
25       MS. LAMACCHIA:  Your Honor, before photos were

11:45

1  submitted to Centrality on September 27, 2018.

2          Regarding proof of use, we requested proof of

3  use documents from the oncology facility, made payment on

4  September 12, but now the facility is requesting another

5  payment.  We are in the process of making that payment.

6          THE COURT:  I'll grant 15 days.  I'm just going to

7  ask you, Ms. LaMacchia, to stay in touch with the defendants if

8  for some reason the facility gives you more trouble.

9          Johnnie Amison.

10          MS. BRILLEAUX:  Your Honor, I have no proof of use,

11  no declaration, no before photos, and no after photos.

12          MS. LAMACCHIA:  Before and after photos were uploaded

13  to Centrality on September 27.  A declaration was submitted to

14  Centrality on November 16.  Regarding the proof of use,

15  multiple requests have been sent to the University of

16  Cincinnati Medical Center, and no records to date have been

17  received from the facility.

18          MS. BRILLEAUX:  Your Honor, just for the record, we

19  don't have any records of them submitting any of the photos and

20  the declarations unless they were submitted this morning.

21          THE COURT:  Well, she said they were some time ago,

22  so I'm going to give you all 15 days to meet and confer to see

23  perhaps if there was a problem with the filing.

24          MS. BRILLEAUX:  Thank you, Your Honor.

25          THE COURT:  Santos Benavente.

11:47

1    **MS. BRILLEAUX:**  I have no proof of use, no

2   declaration, no before photos, and no after photos.

3    **MS. LAMACCHIA:**  Your Honor, this plaintiff was on the

4   November docket call, and you gave us a 15-day extension.  We

5   didn't hear back from the client, so --

6    **THE COURT:**  This matter is dismissed with prejudice.

7    **MS. LAMACCHIA:**  -- we assumed it was dismissed.

8   Correct.

9    **THE COURT:**  Barbara Bowie.

10    **MS. BRILLEAUX:**  Your Honor, no proof of use and no

11   before photos.

12    **MS. LAMACCHIA:**  Your Honor, proof of use was uploaded

13   to Centrality on July 11, and before and after photos were

14   uploaded on September 12, so we consider this case cured.

15    **THE COURT:**  I'm going to give you 15 days for a

16   meet-and-confer.

17        Johnnie Brown.

18    **MS. BRILLEAUX:**  Your Honor, I have no proof of use.

19    **MS. LAMACCHIA:**  This is the same situation that

20   The Johnson Law Group experienced earlier.  We have served a

21   subpoena on this facility, and we have not received anything

22   back yet from the facility.  We served the subpoena on

23   September 12.

24    **THE COURT:**  Is that the only thing that's missing?

25    **MS. BRILLEAUX:**  For Johnnie Brown, it's only no proof

11:48

1    of use, but again this case has been pending for over a year.

2              **THE COURT:**  What do we do when the facility refuses

3    to cooperate even after they have been served a subpoena?

4              **MS. BARRIOS:**  Your Honor, Dawn Barrios.  We have been

5    faced with this in many, many cases, and the issue is where can

6    the subpoena be enforced.  Does it have to be enforced in the

7    forum district or can you enforce it?  In CMO 9 it states that

8    CMO 9 must be attached to every subpoena; and if the person who

9    is subpoenaed has an issue with the subpoena, they are to write

10   a letter to Judge North.

11             So we are in the process -- we talked about this

12   at our last liaison counsel meeting -- of filing a motion just

13   to clarify that the Eastern District is the correct district to

14   enforce the subpoena because if not we have people --

15             **THE COURT:**  Right.

16             **MS. BARRIOS:**  -- that we would have to fly all around

17   the country.  I think that's the situation that she is in right

18   now.

19             **MS. BRILLEAUX:**  Your Honor, defendants understand,

20   but we simply can't defend a lawsuit when there's no proof that

21   they used any kind of docetaxel.

22             **THE COURT:**  Well, I understand that.  I'm going to

23   give them an opportunity to work through this procedure with

24   the subpoenas that have been issued.

25             Ms. Barrios, what should I tell Ms. LaMacchia?

11:49

1          **MS. BARRIOS:**  Ms. LaMacchia, if you will be in touch

2     with me, I will provide you with the rules of what you need to

3     tell the facility.

4              I have already drafted the motion and memo for

5     enforcement by the Eastern District.  The defendants have to

6     review it first, but this would be so practical, and it would

7     help so many people.

8              I will inform you, Leslie, of all that if you

9     call me tomorrow.

10         **MS. LAMACCHIA:**  I will.

11             Your Honor, there's several of the plaintiffs on

12     this list that were in the same situation.  If you want me to

13     name them so we can knock them off, then --

14         **THE COURT:**  I would like to.  For the time being, I'm

15     going to give you 30 days for that, but I'm going to know that

16     you are working in conjunction with Ms. Barrios.  Who are those

17     names?

18         **MS. LAMACCHIA:**  With the subpoenas we have served,

19     Janette Miles --

20         **THE COURT:**  That is 90.

21         **MS. LAMACCHIA:**  Correct.

22         **THE COURT:**  Okay.

23         **MS. LAMACCHIA:**  94, Felicia Smith.  100, Donicia

24     Williams.

25             **THE COURT:**  Okay.  I will tell you as to those -- I'm

11:50

1   assuming there may be other problems with it, and those

2   deficiencies have to be addressed within 15 days.  As to the

3   other, I'm going to grant you 30 days, but I'm not saying at

4   this point I will dismiss those with prejudice at the

5   conclusion of 30 days if indeed the law firm, Pulaski, can show

6   me that they are doing what they need to do to get the records.

7   Okay?

8           **MS. LAMACCHIA:**  Yes.

9           **MS. BRILLEAUX:**  Your Honor, just for the record, I

10  want to state we are certainly understanding of subpoenas being

11  served and treatment facilities that aren't complying with

12  that.  However, the subpoenas are being served several months

13  after the filing of the lawsuit.  From the defense perspective,

14  this is something that should be obtained before filing a

15  lawsuit, not several months after filing a lawsuit.  So we

16  still believe that these are appropriate for dismissal with

17  prejudice.

18          **THE COURT:**  Thank you.

19          **MS. BRILLEAUX:**  Thank you, Your Honor.

20          **THE COURT:**  Lisa Elliott.

21          **MS. BRILLEAUX:**  No proof of use.

22          **MS. LAMACCHIA:**  Your Honor, we are going to have to

23  meet and confer on this because, again, I think my whole list

24  I've gone through, and I think I should meet and confer with

25  defendants on each of them.  We do have information for Lisa

11:52

1    Elliott that it was uploaded to Centrality and so it's been
2    cured.  It was uploaded on November 27.
3        **MS. BRILLEAUX:**  Your Honor, for the record, I would
4    just like to state that the burden is on plaintiff, if they are
5    on a show cause list, to reach out to defendants and meet and
6    confer on what they believe has been cured.  We have met our
7    obligation by giving them a deficiency notice and identifying
8    what that is.  If they believe that they have cured it and they
9    are still on the list, they need to meet and confer with
10   defendants to resolve that prior to getting on the phone with
11   Your Honor and wasting judicial expenses and time.
12       **THE COURT:**  I agree.
13       **MS. LAMACCHIA:**  With all due respect, I did do that
14   by email.
15       **THE COURT:**  Okay.  I'm not on the email chain.  I
16   don't know what has occurred.  I'm going to give the parties
17   15 days to meet and confer, but it's not for me to say what did
18   or did not occur.  I'm accepting the representations of both
19   counsel.
20           Is that the situation with Lisa Filipski as
21   well?
22       **MS. LAMACCHIA:**  Lisa Filipski, we are in the process
23   of obtaining proof of use.  That's the deficiency.  We have
24   sent four records requests to this facility, and we have not
25   received any records.  They have been nonresponsive.

11:53

1          THE COURT:  Okay.  I'm going to grant you 30 days and

2     tell you to work with Ms. Barrios on the subpoena issue.

3               Wylma Grace.

4          MS. LAMACCHIA:  This case was dismissed on

5     December 17.

6          MS. BRILLEAUX:  Your Honor, Ms. Barrios and I have

7     just discussed this and we reached an agreement.  You tendered

8     PTO 87 on November 27, which had the agreed upon dismissal

9     form.  Plaintiff's counsel did not use that form, so we would

10    request that within 15 days she refile it with the appropriate

11    form.

12         MS. LAMACCHIA:  We will refile it.  Thank you.

13         THE COURT:  Please.

14              Rupearl Greene.

15         MS. BRILLEAUX:  No proof of use and --

16         MS. LAMACCHIA:  Same situation.

17         THE COURT:  What was the same situation?

18         MS. LAMACCHIA:  Multiple medical record requests have

19    been sent to St. Michael's Medical Center, and we have yet to

20    receive any records from the facility.

21         THE COURT:  Have you issued a subpoena or just a

22    request?

23         MS. LAMACCHIA:  We sent requests before issuing a

24    subpoena.

25         THE COURT:  I think at this point, since this case

11:54

1   was filed in 2017, it's time for subpoenas to be issued.

2           **MS. BRILLEAUX:**  Your Honor, to that point, I'm

3   looking down the list.  Nearly all of these were filed in 2017,

4   with the exception of one that was -- oh, no.  All for Pulaski

5   were filed in December of 2017.  This documentation should have

6   been subpoenaed long ago.

7           **THE COURT:**  Okay.  I'm going to grant the 30 days

8   with the subpoena.

9               Now, what about Georgina May?

10          **MS. BRILLEAUX:**  I have no proof of use for that one,

11  Your Honor.

12          **THE COURT:**  Is that another --

13          **MS. LAMACCHIA:**  Proof of use was submitted on May 30,

14  Centrality document 173885, and then we again submitted it

15  under document ID 199946.  We believe this one is cured.

16          **MS. BRILLEAUX:**  Your Honor, we ask for 15 days.

17          **THE COURT:**  I'm going to order you meet and confer

18  within 15 days.

19              Lisa Navarro Ortiz.

20          **MS. BRILLEAUX:**  I have no proof of use.

21          **MS. LAMACCHIA:**  Proof of use was submitted on

22  October 11, document ID 249971.

23          **THE COURT:**  Let's meet and confer within 15 days.

24              Kenya Prince.

25          **MS. BRILLEAUX:**  No proof of use also, Your Honor.

11:56

1      **MS. LAMACCHIA:**  Again, multiple requests have been
2  sent to the facility for records, and the facility has been
3  nonresponsive.
4      **THE COURT:**  Okay.  I'm going to give you 30 days.
5  It's time for a subpoena.
6      **MS. BRILLEAUX:**  Your Honor, may I just say for the
7  record --
8      **THE COURT:**  Yes, I know.  You have said it.  Do you
9  want to say the same thing?
10     **MS. BRILLEAUX:**  I was just going to say that, you
11 know, for the show cause hearing, we would appreciate
12 plaintiff's counsel representing when they first made these
13 requests --
14     **THE COURT:**  Okay.
15     **MS. BRILLEAUX:**  -- because I think that that is, you
16 know, a worthy point if they have been requesting it since the
17 date that they filed suit.
18     **THE COURT:**  Right.
19     **MS. BRILLEAUX:**  That's different from if they started
20 requesting it last month.
21     **THE COURT:**  Right.  Fair enough.
22          Brinda Simmons.
23     **MS. BRILLEAUX:**  I have no proof of use.
24     **MS. LAMACCHIA:**  Again, multiple requests for records
25 have been submitted to the facility.  The first request was

11:57

1   made after the filing of the lawsuit on April 25, we had again

2   requested July 12 and September 18, and to date no responsive

3   documents have been received from the facility.

4           **THE COURT:**  All right.  It's time for a subpoena, and

5   that should have been filed some time ago.  The Court is going

6   to grant 30 days.

7                    Brenda Strickland.

8           **MS. BRILLEAUX:**  Your Honor, this is no proof of use,

9   also no declaration, no before photos, and no after photos.

10          **MS. LAMACCHIA:**  Before and after photos were

11  submitted on September 27, Centrality document ID 243457.  We

12  are currently in the process of obtaining proof of use through

13  the facility UT Southwestern Medical Center.  No responsive

14  documents have been received to date.  We are in the process of

15  receiving a declaration from the plaintiff.  The executor just

16  moved, so we had the wrong address.  We will be curing that

17  shortly.

18          **THE COURT:**  15 days.

19                    Georgette Tyson.

20          **MS. BRILLEAUX:**  No proof of use, Your Honor.

21          **MS. BARRIOS:**  Excuse me, Your Honor.  To go back to

22  Brenda Strickland, I understood that counsel was in the process

23  of issuing requests.  I would ask that you order her to issue

24  subpoenas.

25          **THE COURT:**  Subpoenas.  Quit the requests.

11:58

1          **MS. BARRIOS:**  The subpoena has 30 days?

2          **THE COURT:**  Right.

3          **MS. BARRIOS:**  And the declaration 15 days?

4          **THE COURT:**  Right.

5          **MS. BARRIOS:**  Thank you, Your Honor.

6          **MS. BRILLEAUX:**  Thank you, Your Honor.

7          **MS. LAMACCHIA:**  For Ms. Tyson, again multiple

8  requests were done.  The first one was done on February 2, then

9  July 12, then September 18, and no responsive documents have

10  been received from the facility.  I think we are at the point

11  of the subpoena process.

12          **THE COURT:**  Oh, I think you were at the subpoena

13  process three months ago.  I'm going to order that you issue a

14  subpoena, and we have 30 days.

15          Janice Vanzeyl.

16          **MS. BRILLEAUX:**  No proof of use and no before photos.

17          **MS. LAMACCHIA:**  Again, we are at the subpoena process

18  for this one.  Requests were sent to the facility on February 2

19  and then again November 2.

20          **THE COURT:**  Okay.

21          **MS. LAMACCHIA:**  And then I will be uploading before

22  photos.

23          **THE COURT:**  Photos within 15 days, subpoena 30 days.

24          Juanita Villarreal.

25          **MS. BRILLEAUX:**  Your Honor, I have no proof of use

11:59  1  and no before photos.

2          **MS. LAMACCHIA:**  Same situation.  Requests were sent

3  to Texas Oncology on February 5 and again on November 13.  No

4  response.

5          **THE COURT:**  Okay.  I'm going to order that a subpoena

6  be issued, return within 30 days.

7                  Angela Washington.

8          **MS. BRILLEAUX:**  Your Honor, just to go back to

9  Juanita Villarreal, as with the case before that, can we order

10  the before photos within 15 days?

11          **THE COURT:**  Oh, yes.  I'm sorry.  I thought I had.

12          **MS. LAMACCHIA:**  Before photos were submitted on

13  November 13, MDL Centrality document ID 264985.

14          **THE COURT:**  Okay.  I'm going to order you to meet and

15  confer within 15 days.

16          **MS. BRILLEAUX:**  Thank you, Your Honor.

17          **THE COURT:**  Angela Washington.

18          **MS. BRILLEAUX:**  No proof of use.

19          **MS. LAMACCHIA:**  We filed a declaration of no contact

20  with this client, so we are in agreement that this case should

21  be dismissed.

22          **THE COURT:**  This matter is dismissed with prejudice.

23                  I have to recess until 1:00.

24          **MS. BRILLEAUX:**  Thank you, Your Honor.  We will be

25  back at 1:00 p.m.



1           (Lunch recess.)

2                              * * *

1   **AFTERNOON SESSION**

2   **(December 19, 2018)**

3       **THE DEPUTY CLERK:**  Court is back in session.  You may

4   be seated.

5       **THE COURT:**  We are on page 9 of the call docket.

6   Before we begin, let me ask -- we are on the final law firm,

7   which is Bachus & Schanker -- are there any people on this list

8   that we can dismiss with prejudice?  Let's see if we can go

9   through those first.

10      **MR. ELLIOTT:**  Yes, we can, Your Honor.  Chris Elliott

11  with Bachus & Schanker.

12          I don't know how to pronounce this, but Diane

13  Maikui, M-A-I-K-U-I, we spoke with the client, and she declines

14  to participate any further in this litigation.

15      **THE COURT:**  That's 125.  This matter is dismissed

16  with prejudice.

17      **MS. CALLSEN:**  The other one is 140, Janice Salser.

18      **THE COURT:**  140.

19      **MR. ELLIOTT:**  That's correct.

20      **THE COURT:**  That's Janice Salser.  This matter is

21  dismissed with prejudice.

22      **MS. CALLSEN:**  Then, Your Honor, there are three that

23  have been cured that we can remove.  Do you want me to do that

24  now?

25      **THE COURT:**  Please.

01:15

1        **MS. CALLSEN:**  That's 116, Sherrie Jackson.

2        **THE COURT:**  Okay.

3        **MS. CALLSEN:**  121, Dorothy Lawrence.

4        **THE COURT:**  Okay.

5        **MS. CALLSEN:**  122, Sherry Livingood.

6        **THE COURT:**  Do you have any that have been cured,

7   Kelly?

8        **MS. BRILLEAUX:**  No, Your Honor, none for Sanofi.

9        **THE COURT:**  Let's go.  Joyce Burse.

10        **MS. BRILLEAUX:**  For Joyce Burse, Your Honor, we have

11   no proof of use and also no proof of injury.  That includes no

12   before photos and no after photos.

13        **MR. ELLIOTT:**  Your Honor, photos were uploaded,

14   before photos, on November 23, after photos were uploaded

15   11/24, and present day photos were uploaded on 11/24.

16              We do not have the proof of docetaxel.  We have

17   a response from the provider that the medical records were

18   destroyed.  This is a 2001 case.  We have instituted the CMO 12

19   process, issued subpoenas, and we wish to go through that

20   process to see whether or not we can get the codes and figure

21   out if it was Sanofi or not.  This is a case where my client

22   represented to us that she took the docetaxel.

23        **THE COURT:**  Right.  If the records are destroyed,

24   what do you --

25        **MR. ELLIOTT:**  We believe, like, potentially the lead

01:16

1    pharmacist at the time could have somehow kept the data

2    somewhere.  We would just like to ask those questions of them.

3    Potentially the distributor still has the information.  So

4    that's why we feel, like, going through this process, we may

5    find the answers as to what happened.

6              The initial records may have been destroyed, but

7    they still could be there.  We would just like to go through

8    the process and see if potentially we can discover if it was

9    docetaxel or not.  Our client certainly represents that that

10   was what she took, and Sanofi was the only manufacturer

11   pre-2011 that it could have been.  We believe we have a good

12   faith basis to proceed with discovering whether or not it was,

13   in fact, docetaxel.

14         **MS. BRILLEAUX:**  Your Honor, for defendants, we would

15   just represent that this case has been pending since January of

16   2018 and also that, you know, as the time passes, there's a

17   decreasing chance of availability of this information.  We

18   think this is ripe for dismissal with prejudice.

19         **THE COURT:**  I'm going to give you another 45 days,

20   but you are going to have to come in with something really

21   strong.

22         **MR. ELLIOTT:**  Your Honor, I guess the issue is the

23   CMO 12 process lays out the timeframe in which we can actually,

24   you know, subpoena the lead pharmacist, take their deposition,

25   and do all of that.

01:18

1       THE COURT:  Oh, okay.

2       MR. ELLIOTT:  There's strict deadlines in CMO 12 as

3  to that process.  We would just like to follow through with

4  that process.  If, in fact, we can't get what we need, then we

5  will agree to the dismissal with prejudice.

6       THE COURT:  I'm going to let you go through CMO 12.

7       MR. ELLIOTT:  Thank you, Judge.

8       THE COURT:  Patricia Chiz.

9       MS. BRILLEAUX:  Your Honor, this is one that we have

10 no declaration and no authorizations uploaded.

11      MR. ELLIOTT:  We have been in contact with this

12 client.  She has provided all her photographs.  She is

13 otherwise substantially complete.

14      THE COURT:  I know, but the question was declarations

15 and authorizations.

16      MR. ELLIOTT:  Yes, Your Honor.  She says that she is

17 busy right now, but she will absolutely get us these documents

18 after the new year is the note I have.  We have spoken with

19 her.

20      THE COURT:  Really?  She has to sign her name.

21      MR. ELLIOTT:  I know.

22      THE COURT:  Was this on a call list before?

23      MS. BRILLEAUX:  This is the first time it's been on

24 the call list.

25      THE COURT:  I'm going to give you 15 days but not 16.

01:19

1          **MR. ELLIOTT:**  Okay.

2          **THE COURT:**  Sarah Collins.

3          **MS. CALLSEN:**  We don't have any proof of use

4    documentation, and the photos are undated.

5          **MR. ELLIOTT:**  We have learned that she has recently

6    passed away.  We would like 45 days for the family to help us

7    comply with the requirements of the PFS.

8          **MS. CALLSEN:**  When did she pass away?

9          **MR. ELLIOTT:**  I don't think I have that date with me,

10   unfortunately.

11              Oh, June 3, 2018.

12         **MS. CALLSEN:**  That was, like, six months ago, so I

13   guess my question would be what efforts have been made to try

14   to contact them.

15         **THE COURT:**  Yes.

16         **MR. ELLIOTT:**  On all of these, we have actually been

17   sending boots on the grounds to folks' homes to actually go

18   there and find them and through that process, sending letters,

19   we finally get in touch with the family.

20         **THE COURT:**  I'm going to give you 15 days.  It's been

21   six months.

22              Carrolyn Cornelison.

23         **MS. BRILLEAUX:**  This is another one, Your Honor, that

24   has no declaration and also no proof of injury, meaning no

25   after photos and no before photos.

01:20

1      I did want to clarify my prior statement.

2  Your Honor did not hear the Bachus & Schanker cases at the last

3  call docket because we decided to meet and confer with them,

4  but it was on the call docket list for last time.  All of these

5  were.

6           THE COURT:  Okay.

7           MR. ELLIOTT:  Ms. Cornelison, we are in touch with

8  her.  She is trying the find photos.  We would like 15 days.

9           THE COURT:  What about the declaration?

10           MR. ELLIOTT:  We are, I guess, in the process of

11  trying to get that as well, Your Honor.  We don't have it.

12           MS. BRILLEAUX:  Your Honor, just to reiterate, this

13  was on the call docket for the last time.

14           MR. ELLIOTT:  I will say we have a fully completed

15  plaintiff fact sheet.  She looks like she wishes to

16  participate, from my notes here, and we will make every

17  effort --

18           THE COURT:  No, I understand that.  I have to tell

19  you I am beyond frustrated with the inability to get somebody

20  to sign a piece of paper.  Sign a piece of paper.  I'm going to

21  give you 15 days, but I'm telling you not 16.  I'm dismissing

22  anything that's not compliant in 15 days.

23           Brenda Darden.

24           MS. CALLSEN:  Yes.  We have no signature on the

25  authorizations.  We don't have proof of injury.

01:21

1      **MR. ELLIOTT:**  It looks like we uploaded the

2   authorizations on November 29 and filed an amended plaintiff

3   fact sheet on 12/17.  It looks like she is sending all her

4   photos, and she is really trying to comply here.  So we should

5   be substantially complete once we get the photos, but she wants

6   to participate.

7           **THE COURT:**  Okay.  15 days.

8               Daisy Doucet.

9           **MS. BRILLEAUX:**  Thank you, Your Honor.  This is no

10  proof of use and also no proof of injury, no before or after

11  photos.

12          **MR. ELLIOTT:**  This was another one where the medical

13  records were destroyed, Your Honor.  We would like to go

14  through the CMO 12 process to try and get those.

15              As far as photos, she looks like she wishes to

16  participate, per my notes, and we will try to get those within

17  the next 15 days.

18          **THE COURT:**  I'll let you go through the CMO process

19  and then 15 days for the photos.

20          **MS. BRILLEAUX:**  Your Honor, may I respond on the

21  CMO 12 process?  I understand what counsel is saying, and I

22  understand that there's a procedure that's being set up whereby

23  we have made agreements what needs to happen and the delays to

24  happen to seek product ID.  At any time -- and you heard from

25  other firms earlier -- you can subpoena records for proof of

01:23  1    use, and those should have been subpoenaed a long time ago.

2              THE COURT:  I think the problem is when they

3    represented they have been destroyed.  It's really kind of

4    nothing --

5              MS. BRILLEAUX:  Yes, Your Honor.  I just feel like

6    any subpoenas that are being issued through the CMO 12 process

7    could have been issued earlier and should have been.

8              THE COURT:  Oh, okay.  Why don't we go off the record

9    a minute.  Y'all come on up here.

10             (Off the record.)

11             THE COURT:  Let's go.  I think for Daisy Doucet

12   defendants have requested the CMO 12 process and photographs.

13   I'm going to give you 15 days for the photos.

14                  Angela Durden.

15             MS. CALLSEN:  I think I said no proof of injury and

16   no before photos.

17             MR. ELLIOTT:  All photos updated on 12/14.

18             MS. CALLSEN:  15 days, please.

19             THE COURT:  I'm going to give you 15 days for

20   defendant to confirm that that's possible.  Please send an

21   email with all information so that any -- 15 days to meet and

22   confer and make sure that you all are straight.

23                  Sabra Felton.

24             MS. BRILLEAUX:  This is no declaration, no proof of

25   injury, no after photos, and no before photos.

01:37

1    **MR. ELLIOTT:**  We would like 15 days.  We are having

2    difficulty finding Ms. Felton.  We have gone to her home and

3    sent her letters.  We haven't gotten a response recently.

4        **THE COURT:**  How long has that been, Mr. Elliott?

5        **MS. BRILLEAUX:**  Your Honor, I will represent that

6    this case was filed in September of 2017.

7        **MR. ELLIOTT:**  It's been over several months since we

8    have made contact with her.

9        **THE COURT:**  This matter is dismissed with prejudice.

10   Plaintiff's counsel has made a diligent effort to represent his

11   client, but because of her failure to participate the Court is

12   going to dismiss with prejudice.

13               Belinda Ford.

14       **MS. BRILLEAUX:**  This is another no declaration, also

15   no proof of injury with no after photos, no before photos, and

16   no authorizations uploaded.

17       **MR. ELLIOTT:**  The declaration page was dated and

18   uploaded on 12/18.  Plaintiff is signing her authorizations as

19   we speak, apparently, and proof of injury photos have been

20   mailed to us.  We are just waiting for them in the mail.

21       **THE COURT:**  I'm going to grant 15 days.

22               Judy Gaddis.

23       **MS. BRILLEAUX:**  Your Honor, I have no proof of use

24   for Ms. Gaddis.

25       **MR. ELLIOTT:**  We would ask also on this one to be

01:39   1   able to go through the CMO 12 process.  We are having
   2   difficulty getting the records at all from the facility.
   3           **THE COURT:**  Has the facility represented that they
   4   have been destroyed?  They just won't respond?
   5           **MR. ELLIOTT:**  I don't have that note here,
   6   Your Honor.
   7           **THE COURT:**  I'm going to allow you to go through the
   8   CMO 12 proceed.
   9                Gertrude Gillespie.  That's a 505.
  10           **MS. CALLSEN:**  We have no after photos and no signed
  11   authorizations.
  12           **MR. ELLIOTT:**  Authorizations have been uploaded.  It
  13   looks like she is looking for the photos right now, and we
  14   would ask for 15 days.
  15           **THE COURT:**  I'm going to grant 15 days.  You're
  16   saying the authorization has been uploaded?
  17           **MR. ELLIOTT:**  Yes.
  18           **THE COURT:**  Okay.
  19           **MS. CALLSEN:**  We will confirm that within the
  20   15 days.
  21           **THE COURT:**  15 days.
  22                Mary Jane Hancock.
  23           **MS. CALLSEN:**  Oh, I'm sorry.  No proof of injury, no
  24   proof of use, declarations not submitted, authorizations not
  25   submitted.

01:40

1           **MR. ELLIOTT:**  We have the authorizations, and the

2   declaration signature page has been uploaded.  She is gathering

3   her photos and she is sending them in to us right now.

4           **THE COURT:**  What about proof of use?

5           **MR. ELLIOTT:**  I don't see that as having been an

6   objection or a deficiency notice.  We have uploaded proof of

7   use in March of 2018.

8           **THE COURT:**  I'm going to give you 15 days to confirm.

9                   Dorothy Hubbard.

10          **MS. CALLSEN:**  I have no proof of injury.

11          **THE COURT:**  Is that just photos?

12          **MR. ELLIOTT:**  Photos, yes.

13          **MS. CALLSEN:**  No documentation.

14          **MR. ELLIOTT:**  We don't have --

15          **MS. CALLSEN:**  No photos.

16          **MR. ELLIOTT:**  She is sending in her photos is the

17   note I have here.

18          **THE COURT:**  They are what?

19          **MR. ELLIOTT:**  We have uploaded all her

20   authorizations.  Her dec. page has been signed and uploaded.

21   We are just waiting on the photos to come in the mail.

22          **THE COURT:**  15 days.

23                   Janice Idland.

24          **MS. CALLSEN:**  We have no proof of use.  What was

25   uploaded refers to a plan only, not an actual implementation of

01:41

1    that plan.

2             THE COURT:  Wait.  What?

3             MS. CALLSEN:  It's a plan, like, you know, doctors

4    say, "This is the plan for treatment," but there's no actual

5    proof --

6             THE COURT:  Oh, okay.

7             MS. CALLSEN:  -- that the plan was carried out, that

8    there was consent, all that kind of stuff.

9             MR. ELLIOTT:  I would have to disagree, Your Honor.

10   We uploaded proof of use back in September.  If a doctor notes

11   Taxotere in the medical records, we believe -- it's our burden

12   by a preponderance of the evidence to prove that she took

13   docetaxel.  I think that's some evidence of what --

14            THE COURT:  Is there any record of it being actually

15   administered to her?

16            MR. ELLIOTT:  Yes.  I don't think we have the

17   administration records, so we would need to go through the

18   CMO 12 process to try to get more information from the

19   facility, from the doctor.

20            THE COURT:  Thank you.  CMO 12.

21                Jacqueline Ingram.

22            MS. CALLSEN:  Yes.  We need proof of injury.  There's

23   no documentation.

24            MR. ELLIOTT:  She is mailing her photos.  We have

25   uploaded all the photos that we have had, but she is in the

01:42   1   process of mailing more is the note I have.

2              THE COURT:  15 days.

3                   Annerena Jacobs.

4         MS. BRILLEAUX:  Your Honor, no declaration.

5         MR. ELLIOTT:  She is mailing her declaration in.  She

6   uploaded all her photos on 11/28.

7              THE COURT:  15 days not 16.

8                   Carolyn Johnson.

9         MS. BRILLEAUX:  Your Honor, if I could just go back

10  to Belinda Ford, we had nothing uploaded.  Counsel represented

11  that they uploaded it yesterday, on 12/18.  We have had nothing

12  uploaded since June.

13             The issue is a not dated declaration which needs

14  to be cured and has been cured by other law firms.  We checked

15  MDL Centrality, and we have nothing from --

16             THE COURT:  That's 15 days.  I gave it that time,

17  15 days, for you to meet and confer and work out if there are

18  any problems that are not resolved.

19             MR. ELLIOTT:  It says 12/18, yesterday.

20             MS. BRILLEAUX:  Is that your note?

21             MR. ELLIOTT:  It says the declaration was dated and

22  uploaded yesterday.

23             MS. BRILLEAUX:  I mean, that's just your note.

24             THE COURT:  Well, what they are saying is it's not,

25  but I don't know that.

01:43

1    **MS. CALLSEN:**  We have somebody who is checking live.

2    **MR. ELLIOTT:**  We can check live too.

3    **THE COURT:**  Okay.

4    **MS. BRILLEAUX:**  Thank you, Your Honor.

5    **THE COURT:**  Carolyn Johnson.

6    **MS. BRILLEAUX:**  On Carolyn Johnson, no proof of use

7    and no before photos.

8    **MR. ELLIOTT:**  Which case?

9    **THE COURT:**  Carolyn Johnson.

10   **MS. BRILLEAUX:**  Carolyn Johnson.

11   **MR. ELLIOTT:**  This is no proof of use?  Is that the

12   objection?

13   **THE COURT:**  Yes.  And no photos.

14   **MR. ELLIOTT:**  We would have to go through the CMO 12

15   process.  I don't know about photos.  I don't see that as

16   having --

17   **THE COURT:**  Do you have contact with this lady?

18   **MR. ELLIOTT:**  Contact?

19   **MS. BRILLEAUX:**  Your Honor, while plaintiff's counsel

20   is looking at his notes, on the CMO 12 process point, we

21   understand that that is likely a valid route to go if the

22   facility has destroyed the records, but we don't think it's

23   appropriate if that's not the case, because every other firm

24   has had to issue subpoenas for records.  Letting that

25   additional time and extra, you know, options play out is only

01:45  1   appropriate if they have gotten confirmation that records have
       2   been destroyed.
       3       **MR. ELLIOTT:**  Yes, let's be clear.  Before we file a
       4   lawsuit, we have ordered the medical records so we will have
       5   good faith proof of doing such.  Sometimes they will say
       6   "facility not destroyed."  Sometimes the facility will say,
       7   "Plaintiff, we can't find them on the roll."  So it's not just
       8   always that it was destroyed.  We get varying responses.
       9       **THE COURT:**  Let me go look at CMO 12.  I have to go
      10   look at CMO 12.
      11           Can you get that for me, Sam.  Thank you.
      12           Let's go.  What about Carolyn Johnson photos,
      13   proof of use?  My question is --
      14       **MR. ELLIOTT:**  We have photos.  Your Honor, we have
      15   the photos here.  They are dated.
      16       **THE COURT:**  Have those been uploaded?
      17       **MS. BRILLEAUX:**  Are those before photos or those are
      18   after photos?
      19       **MR. ELLIOTT:**  Here is the before.
      20       **MS. BRILLEAUX:**  From 1992.
      21       **MR. ELLIOTT:**  Well, if that's all she has, then
      22   that's all she has.  What are we supposed to do?
      23       **MS. BRILLEAUX:**  Your Honor, we take the position that
      24   they are supposed to be within five years of treatment.
      25   Obviously, the bigger issue is proof of use, which is why we

01:46

1    are here today.

2            THE COURT:  Right, right.  I'm going to look at

3    CMO 12 in just a minute.

4                Magaline Jones.

5            MS. BRILLEAUX:  Your Honor, so I have this on the

6    list for multiple deficiencies including no declaration.  A

7    declaration was uploaded yesterday.  There is still a PTO 71A

8    deficiency that is missing and then no deficiency response.

9            THE COURT:  You have to tell me what PTO 71A is.

10           MS. BRILLEAUX:  Yes, Your Honor.  It is the ESI

11   disclosure that all ESI has been disclosed and uploaded.

12           THE COURT:  Oh, okay.

13               Mr. Elliott.

14           MR. ELLIOTT:  I have the plaintiff is mailing in her

15   PTO 71 statement and her declaration this week.

16           THE COURT:  Okay.  15 days.

17           MS. BRILLEAUX:  Thank you, Your Honor.

18           THE COURT:  Johnnie Kelly.

19           MS. CALLSEN:  Johnnie Kelly was just cured yesterday.

20           THE COURT:  Okay.  Thank you.

21               Kimberly Lowe.

22           MS. BRILLEAUX:  Your Honor, no declaration and no

23   proof of injury, no before or after photos.

24           MR. ELLIOTT:  She is sending all her photos, and we

25   would ask for 15 days.

01:47

1      **MS. BRILLEAUX:**  Your Honor, I would ask plaintiff's

2  counsel to address the missing declaration.

3      **THE COURT:**  I'm listening.

4      **MR. ELLIOTT:**  Your Honor, it looks like she signed

5  everything else.  I would imagine she signed the signature

6  page.  We will have to reach back out to her, it looks like.

7      **MS. BRILLEAUX:**  Your Honor, it hasn't been uploaded.

8  This case has been pending since November of 2017.

9      **MR. ELLIOTT:**  We will get it.

10     **THE COURT:**  It's just the authorizations?

11     **MS. BRILLEAUX:**  It's the declaration.

12     **MR. ELLIOTT:**  It's the dec. page.

13     **THE COURT:**  The declaration?  I'm going to give you

14 15 days if everything else is there.

15          Shirl Marion.

16     **MS. CALLSEN:**  We have no declaration, no

17 authorizations, no proof of injury.

18     **MR. ELLIOTT:**  Well, my notes are that the injury

19 photos are being sent in.  As far as the authorizations go, she

20 is being a little bit defiant, saying that some of those do not

21 apply to her and she doesn't know why, if she didn't have work

22 comp or if she didn't have these things, she is having to sign

23 things that are not relevant.  She has been very argumentative

24 with my office about signing.

25     **THE COURT:**  You know what, Mr. Elliott, you need to

01:49

1   tell her.

2          MR. ELLIOTT:  Okay.

3          THE COURT:  She has 15 days to get compliant or this

4   case is over.

5          MR. ELLIOTT:  Okay.

6          THE COURT:  If she doesn't want to do it, that's

7   fine.

8          MS. CALLSEN:  Again, she does need to sign the

9   declaration at least.

10          MR. ELLIOTT:  Okay.  No problem.

11          THE COURT:  Traci Mays.

12          MS. CALLSEN:  We skipped one, I think --

13          THE COURT:  I thought that was Shirl Marion.

14          MS. CALLSEN:  -- Shirl Marion.

15          MR. ELLIOTT:  No, that was Magee.

16          MS. CALLSEN:  Shirl Marion, we have no declaration,

17   no authorizations.

18          THE COURT:  Well, wait a minute.  I think that's the

19   one we just dealt with.

20          MR. ELLIOTT:  I thought we were on Magee.

21          THE DEPUTY CLERK:  I think we did skip one, Judge.

22          THE COURT:  I'm sorry.  What?

23          THE DEPUTY CLERK:  You did call Shirl Marion, but I

24   think we did skip one.

25          MR. ELLIOTT:  Oh, I was talking about Magee.

01:50

1    THE COURT:  Okay.  15 days for Magee.

2         Shirl Marion.

3    MR. ELLIOTT:  Investigators actually have an

4  appointment with this plaintiff to retrieve the declaration

5  authorizations, so you will get it back within 15 days.

6    MS. CALLSEN:  What are the efforts that you have

7  made?  Why do you have an investigator?

8    MR. ELLIOTT:  We send letters.  We are always sending

9  someone to the house so we can actually meet them and get the

10  signed authorizations.

11    MS. CALLSEN:  Do you have any evidence that she is

12  going to participate and actually sign them and bring them

13  back?

14    MR. ELLIOTT:  Yes.  They have an appointment with

15  her.  That's my notes.

16    THE COURT:  15 days.

17    MS. CALLSEN:  Traci Mays, there's no declaration, no

18  signed declaration.

19    MR. ELLIOTT:  We have it, Your Honor.  We have it.

20  It was uploaded.

21    THE COURT:  Y'all have 15 days to make sure that --

22  it's right here, so they either upload it and see where the

23  problem is, but --

24         Michelle McCoy.

25    MS. CALLSEN:  No after photos, so no proof of injury.

01:51

1    **MR. ELLIOTT:**  We would like one last attempt to try
2    to locate her.  Her address is not working.  We sent someone to
3    that location, couldn't find her, and the phone number was
4    disconnected.
5            **THE COURT:**  The matter is dismissed with prejudice.
6    Plaintiff's counsel has made every attempt to contact this
7    client.  She has failed to be in compliance with her
8    obligations.
9            **MS. CALLSEN:**  Ramona McNamee, we don't have a
10   declaration that's signed, there are no authorizations, and we
11   don't have proof of injury.
12           **MR. ELLIOTT:**  What case was that last one?
13           **MS. CALLSEN:**  Michelle McCoy was the one that was
14   dismissed.
15           **THE COURT:**  Ramona McNamee.
16           **MS. CALLSEN:**  Ramona McNamee.
17           **MR. ELLIOTT:**  I was arguing McNamee.  Sorry,
18   Your Honor.  The dismissal should pertain to McNamee,
19   Your Honor, and not McCoy.  I got mixed up on my spreadsheet.
20           **THE COURT:**  All right.
21           **MR. ELLIOTT:**  Sorry.
22           **MS. CALLSEN:**  So we need to go back to Michelle
23   McCoy.
24           **THE COURT:**  What's the deal with Michelle McCoy?
25           **MS. CALLSEN:**  Oh, I already said.  It was a proof of

01:52

1    injury.  We don't have any after photos.

2              **MR. ELLIOTT:**  That is correct.  We have everything

3    else but the photos.  We would ask for 15 days to retrieve

4    them.

5              **THE COURT:**  15 days.

6                    Bobbie Milligan.

7              **MS. BRILLEAUX:**  Your Honor, no declaration, also no

8    proof of injury, no after photos, and no before photos.

9              **MR. ELLIOTT:**  It looks like we have sent someone to

10   her home to try to retrieve them.  We would ask for another

11   15 days to finalize it.

12             **THE COURT:**  Let me ask this.  Are you in contact with

13   her?  Has anybody spoken to her?

14             **MR. ELLIOTT:**  Yes, let me see.  We have everything

15   other than -- well, sorry.

16             **THE COURT:**  I guess, Mr. Elliott, when you say you

17   have to send somebody to the house, I'm wondering are you

18   sending them to the house to look for her?  Are you sending

19   them to the house because you are talking to her and she

20   doesn't have it?

21             **MR. ELLIOTT:**  My process is anybody that shows up on

22   a show cause list gets a visit to their home regardless of

23   contact or not.

24             **THE COURT:**  Okay.

25             **MR. ELLIOTT:**  I usually have a call log, but this one

01:54

1    I don't have my call log with me, so I don't know when the last
2    time we reached her.
3            **THE COURT:**  I'm going to give you 15 days.  This is
4    Bobbie Milligan.
5                    Murral Milligan.
6            **MS. CALLSEN:**  We have no authorizations and no proof
7    of injury, and the declaration is not signed.
8            **MR. ELLIOTT:**  Plaintiff wants to participate.  She
9    said she has been very sick.  She has been responsive.  We
10   would like another 15 days.
11           **THE COURT:**  15 days.
12                   Okay.  Rhonda Moody.
13           **MS. CALLSEN:**  No proof of injury or -- yes.  No
14   documentation of proof of injury.
15           **MR. ELLIOTT:**  We actually have an appointment on
16   December 21 to go to her house and pick up all the documents.
17           **THE COURT:**  15 days.
18                   Patricia Parmeter.
19           **MS. CALLSEN:**  No proof of injury documentation
20   submitted or proof of use.
21           **MR. ELLIOTT:**  Before, during, present were uploaded
22   12/14.  Proof of use was uploaded in April of 2018.
23   Authorizations were also uploaded at that time.
24           **MS. CALLSEN:**  Okay.  Yes.  As of 12/14, they did
25   cure.

01:55

1          THE COURT:  All right.  Michelle Perkins.

2          MS. CALLSEN:  We have no declaration and no before

3    photos.

4          MR. ELLIOTT:  Before photos were uploaded on

5    December 11 per my notes.

6          THE COURT:  What about the declaration?

7          MR. ELLIOTT:  Plaintiff is sending us a signed

8    declaration.  She is mailing it.  She is mailing her signed

9    declaration.

10          THE COURT:  15 days.

11               Sandra Pickett.

12          MS. CALLSEN:  The declaration, again, not dated,

13    there's no proof of injury, and the photos are not dated.

14    There's no psych authorization signed.

15          MR. ELLIOTT:  We have a declaration that's been

16    signed, so I don't know why -- and dated back in May of 2018.

17    Before photos -- photos are being mailed right now.  So the

18    photos -- we have proof of use that was uploaded on June 12,

19    2018.

20          MS. CALLSEN:  15 days to confirm, please.

21          THE COURT:  15 days.

22               Luz Pluguez.

23          MS. CALLSEN:  We don't have any documentation of

24    proof of injury.

25          MR. ELLIOTT:  She is only a Spanish speaker,

01:56

1    Your Honor.  We would ask for 30 days because we have to get an

2    interpreter to go out to her house and explain to her what

3    exactly she needs to do to participate.

4         **MS. CALLSEN:**  A Spanish speaker, my son can do it in

5    15 days.  I'm just saying.  Lots of people speak Spanish.  I'm

6    sorry.  It's just, you know, that's not --

7         **THE COURT:**  15 days.

8         **MR. ELLIOTT:**  We have everything but the photos, by

9    the way.

10        **THE COURT:**  I think y'all can do it in 15 days.

11             Vickie Reese.

12        **MS. CALLSEN:**  We don't have any proof of injury.

13        **MR. ELLIOTT:**  Medical records, according to the MDL

14   Centrality docket, were uploaded on April 22.

15        **MS. CALLSEN:**  Proof of injury, I said.

16        **MR. ELLIOTT:**  Oh, proof of injury.

17        **THE COURT:**  Photos.

18        **MR. ELLIOTT:**  We spoke with her.  We have faxed her

19   the photo instructions.  She is sending us the photos.  We

20   would ask for 15 days.

21        **THE COURT:**  15 days.

22             Gigi Robinson.

23        **MS. BRILLEAUX:**  Your Honor, no signed declaration, no

24   proof of injury, no after photos, and no before photos.

25        **MR. ELLIOTT:**  We have a signed declaration from

01:58

1   November of 2017.  I don't know why that's an objection.  And

2   signed releases, auths, everything.

3            **THE COURT:**  And then it's photos?

4            **MR. ELLIOTT:**  No photos --

5            **MS. BRILLEAUX:**  Oh, your Honor, I'm so sorry.  I was

6   reading from the wrong line.  Can I start over?

7                For Gigi Robinson I have no proof of use, photos

8   not dated appropriately.

9            **MR. ELLIOTT:**  So it says Ms. Robinson has given us a

10  catalog of photos in a journal format.  All the photos within

11  the documents are dated.  We have asked her to print each photo

12  separately and send us the dates.  She is complying.

13           **THE COURT:**  What about proof of use?

14           **MR. ELLIOTT:**  That was uploaded on December 4.

15           **THE COURT:**  I'm going to give you 15 days to confirm

16  the proof of use and to supply the photographs.

17               Norma Rodman.

18           **MS. CALLSEN:**  No proof of injury on Ms. Rodman.

19           **MR. ELLIOTT:**  She is responding to us.  We need more

20  time for her to give us all the photos is the note I have here.

21           **THE COURT:**  15 days.

22               Kimber Salter.

23           **MS. CALLSEN:**  No proof of injury, no before photos.

24           **MR. ELLIOTT:**  She did not take photos during

25  treatment.  She is looking for the before photos, but she will

01:59

1  get them to us if she can find before photos.  We have the

2  after photos, proof of injury.

3        THE COURT:  Well, I understand, but we are back to --

4  I'm going to give you 15 days to either attach photos or an

5  affidavit saying there are none.

6        MR. ELLIOTT:  Okay.

7        THE COURT:  Shirley Sampson.

8        MS. BRILLEAUX:  Your Honor, this is no proof of use

9  and also no proof of injury, no before photos, and no after

10  photos.

11        MR. ELLIOTT:  We found through our investigation that

12  she is in hospice right now.  We need time with the family to

13  talk with them and see how we are going to continue the case.

14        MS. BRILLEAUX:  Your Honor, respectfully, with

15  sympathy for the plaintiff's situation, this case has been

16  pending since October of 2017.  It should have been done a long

17  time ago.  Also, just again for the record, this show cause

18  list has existed since August of this year, and plenty of time

19  has passed for this to happen.

20        MR. ELLIOTT:  This is the family's wishes.  We would

21  ask for 30 days to see if they can get us what we need.

22        THE COURT:  I'm going to give you 30 days.

23            Patricia Schuster.

24        MS. CALLSEN:  We have no before photos, and the other

25  ones are undated.

02:00

1          **MR. ELLIOTT:**  Our after photos were uploaded
2   December 11, 2018.
3          **THE COURT:**  I think the question is before photos.
4          **MR. ELLIOTT:**  She is trying to locate them, if any.
5   That's the note here.
6          **THE COURT:**  You have 15 days.
7               Dora Smith.
8          **MS. CALLSEN:**  We don't have proof of injury
9   documentation on her.
10              Dora Smith.  There's two Smiths.
11         **MR. ELLIOTT:**  She has sent us her photos.  We are in
12  the process of uploading them.
13         **THE COURT:**  15 days.
14         **MS. CALLSEN:**  Oh, no authorizations as well.
15         **MR. ELLIOTT:**  The same.  She is sending us her new
16  authorization is the note.
17         **THE COURT:**  15 days.
18              Merle Smith.
19         **MS. CALLSEN:**  We have no proof of injury.
20         **MR. ELLIOTT:**  We need before, after, and present day
21  photos.  We would ask for 15 days.
22         **THE COURT:**  15 days.
23              Linda Sorensen.
24         **MS. BRILLEAUX:**  For Linda Sorensen we have no
25  declaration, no after photos, and no before photos, so no proof

02:02    1    of injury.

 2              **MR. ELLIOTT:**  This is Sorensen?  We would ask for

 3    more time to get that information, 15 days.

 4              **THE COURT:**  What's the deal with Ms. Sorensen?

 5              **MR. ELLIOTT:**  It looks like she has signed

 6    everything.  She has a filled-out PFS.  We have every single

 7    signature page, I mean, all the authorizations signed.  For

 8    some reason the PFS didn't get signed.  I don't have an

 9    explanation, but we would like 15 days to get it from her.

10              **MS. BRILLEAUX:**  I mean, Your Honor, if there isn't

11    good cause for the deficiency, we would argue that this case

12    should be dismissed with prejudice.

13              **MR. ELLIOTT:**  Well, she is attempting to comply.

14    It's clear she wants to participate.  She has complied with

15    everything else but her signature page.  We just ask for 15

16    days to get it.

17              **THE COURT:**  I'm going to give you 15 days.

18              **MR. ELLIOTT:**  It could be something that maybe --

19              **THE COURT:**  Arline Todd.

20              **MS. CALLSEN:**  No proof of injury.

21              **MR. ELLIOTT:**  No proof of injury?

22              **MS. CALLSEN:**  Correct.  No documentation that she

23    actually was injured.

24              **MR. ELLIOTT:**  We just need photos.  We would ask for

25    15 days.  Actually, it says here -- I have a note -- plaintiff

02:03

1   is looking for them.  She is trying to locate and will send

2   them to us.

3           THE COURT:  Okay.  You have 15 days.

4               Dorothy Turner.

5           MS. BRILLEAUX:  No declaration, no after photos, and

6   no before photos.

7           MR. ELLIOTT:  She is locating all her photos right

8   now.

9           THE COURT:  What about the declaration?

10          MR. ELLIOTT:  No declaration either, so we would ask

11  for 15 days.

12          THE COURT:  15 days.

13              Deborah Vanneste.

14          MS. CALLSEN:  No proof of injury documentation.

15          MR. ELLIOTT:  Another note here.  We ask for 15 days.

16  Plaintiff is looking and wishes to ask for 15 days.

17          THE COURT:  15 days.

18              Ella Varner.

19          MS. CALLSEN:  The same thing, no proof of injury

20  documentation.

21          THE COURT:  So these are just photographs?

22          MR. ELLIOTT:  The same thing.  This is photos?

23          MS. CALLSEN:  There's a couple that have some missing

24  authorizations, but almost all of them are proof of injury

25  throughout.

02:04

1          THE COURT:  Ella Varner.

2          MS. CALLSEN:  Ella Varner, that's the same thing,

3     proof of injury.

4          MR. ELLIOTT:  Yes.  We don't have the photos.  We are

5     looking for them.  Sorry.  Sorry.

6          THE COURT:  Yes, that is the objection.  Good.  What

7     are we going to do about it?

8          MR. ELLIOTT:  We would ask for 15 days.

9          THE COURT:  Have you had contact with her?

10          MR. ELLIOTT:  Yes.  It says she is locating all her

11     photos.  We have made contact.

12          THE COURT:  All right.  15 days.

13               Thelma Walker.

14          MS. CALLSEN:  The same thing.  We need proof of

15     injury.  It hasn't been submitted yet.

16          MR. ELLIOTT:  The plaintiff is researching.  She is

17     gathering all her photos.  We will be sending someone to her

18     house on 12/27.

19          THE COURT:  15 days.

20               Jennifer Weigand.

21          MS. BRILLEAUX:  Your Honor, this is no declaration

22     and no authorizations uploaded.  This one has been pending

23     since August of 2017.

24          THE COURT:  Has this one --

25          MR. ELLIOTT:  We have actually made contact with her.

02:05

1  She is mailing us the signed and dated authorizations this

2  week.

3       **THE COURT:**  15 days.

4            Janice Whitney.

5       **MS. CALLSEN:**  We don't have any proof of injury and

6  there's an authorization, too, which requires a witness, and we

7  don't have that.  We put plaintiff on notice of that.

8       **MR. ELLIOTT:**  The same thing.  She is sending us the

9  photos and auths.  We would ask for 15 days.

10      **MS. CALLSEN:**  Can you make sure that she knows she

11  needs to sign it with a witness so it doesn't come back

12  deficient, please.

13      **THE COURT:**  Now, listen, I'm not doing this again

14  with 15 days.  In the next call docket, what's not -- now, I

15  have to tell you.  If it's something like, "Well, we don't have

16  the before photos," I will probably give you some time because

17  the reality is perhaps some people don't.  But as I indicated

18  earlier, I'm done.  What I try to tell people is, from the

19  beginning, I'm trying to get my arms around the scope of this

20  problem, which is why I gave people extra time.

21            Now, you asked for relief under CMO 12.  I have

22  to tell you what I didn't know -- and I had to pull it up to

23  find out -- is I thought perhaps it was CMO 12 and 12A.  There

24  is only 12A, and 12A does not deal with product use.  It deals

25  with product ID, as I see, so I'm not quite sure how 12A in any

1    way addresses your problem with product use.  Very frankly,

2    when you said CMO 12 and I went, "Oh, okay, so there's 12 that

3    deals with product use, 12A that deals with product ID," and

4    that's not the same.

5              **MR. ELLIOTT:**  I can expand on that, though.  If you

6    get something from the facility that says the records are

7    destroyed, the only way in which we will have an opportunity to

8    even discover if they took docetaxel is if we issued a

9    subpoena, we noticed the deposition with a subpoena duces tecum

10   to the lead pharmacist or the records custodian, and we go

11   there and take their deposition and sit them down and say,

12   "Where is this stuff?"

13             It's been effective across the aboard, really,

14   this process.  It's actually working.  We will subpoena the

15   lead pharmacist, set the deposition, and then they will call us

16   and be, like, "Hey, we don't want to do a deposition.  We will

17   get you exactly what you need, Mr. Elliott."  So the process is

18   working, and I think it will work for some of the pre-2011

19   where the records have been completely destroyed.  The only way

20   I'm going to get those is if I take their deposition.

21             I have to go through some other process of

22   filing motions on all cases where my client tells us that they

23   took docetaxel, they promise they took it, it's a pre-2011

24   case, we have ordered the records, subpoenaed them or whatever,

25   and it still comes back destroyed.  I feel like we are entitled

02:08

1    to go a step further and see if we can --

2             THE COURT:  Well, you could issue a subpoena without

3    falling under the parameters of CMO 12.

4             MR. ELLIOTT:  But I can't take their deposition

5    without your permission.  I would have to motion the Court for

6    that.

7             THE COURT:  You couldn't issue a subpoena duces

8    tecum?  There is nothing that precludes you.  Unless there's

9    something I don't know about, I don't know how that there is

10   anything that precludes you from issuing a subpoena to produce

11   records.  I mean, that's what we are doing here.

12            MS. BARRIOS:  Issuing the subpoena, Your Honor, is

13   something that obviously can be done, but taking a deposition

14   is discovery --

15            THE COURT:  Right.

16            MS. BARRIOS:  -- and all discovery is stayed in these

17   cases.

18            THE COURT:  No, I understand that, Ms. Barrios.  What

19   I heard Mr. Elliott just say is that, you know, "If I issue a

20   subpoena duces tecum, then they call me and say, "Oh, I've got

21   this."

22                  Have you taken depositions in this case?

23            MR. ELLIOTT:  I have through the CMO 12 process.

24   That's the last resort in CMO 12.  If after you have exhausted

25   everything, you sent the subpoena, they still didn't send you

02:09   1   what you wanted --

2                    **THE COURT:**  That's been for product ID.

3                    **MR. ELLIOTT:**  Yes, for product ID.

4                    **MS. BRILLEAUX:**  Your Honor, on behalf of defendants,

5   we understand that if there is a circumstance where the

6   treatment facility says that they have been destroyed, CMO 12

7   is in place for the product ID purpose as a means of last

8   resort.  To his point, everything should be exhausted first.

9   Subpoenas should be issued.  There is nothing restricting

10   subpoenas.  So for them to say that they need relief under

11   CMO 12 when subpoenas haven't even been issued, I mean,

12   that's -- they haven't established proof of use.

13                    **MR. ELLIOTT:**  Your Honor, I suggest we come up with

14   another order, then, for people in this unique situation

15   because it's not just my firm.  There's firms across the

16   country that have ordered records, and the facilities come back

17   and say, "Oh, they are destroyed."  All of those people, if

18   they represent to their attorneys that "I took docetaxel, and I

19   got permanent hair loss as a result," I think all those firms

20   have a right to take the deposition of the pharmacist or the

21   records custodian to find out what's going on.  We are not just

22   going to rely on a piece of paper that says the records are

23   destroyed.  That's not fair.

24                    **MS. CALLSEN:**  That exists regardless of whether

25   Your Honor enters an order in this case.

02:10

1    **MR. ELLIOTT:**  Not the right to take a deposition.

2    **MS. BARRIOS:**  That's the question that I have.

3    Because discovery is stayed --

4    **MS. CALLSEN:**  I don't know what you mean by discovery

5    is stayed.  They may not be in phase one discovery if they are

6    not a trial pool selection, but obviously we are doing

7    plaintiff fact sheets, we are doing defendant fact sheets.  I

8    mean, pursuing product ID is the main -- you need product ID in

9    order to move forward with your case.  You need proof of use.

10   That's not discovery.

11   **THE COURT:**  Who is that?

12   **MS. BIERI:**  Oh, I'm so sorry, Your Honor.  This is

13   Kelly Bieri also on behalf of Sanofi.  I didn't mean to cut off

14   whoever was speaking.

15   I just wanted to say it seems like all of the

16   cases that have been on the show cause docket have been

17   addressed, and the issue that we are talking about is a broader

18   issue.  It seems like it may be better dealt with in a

19   different context at this juncture.

20   **THE COURT:**  Okay.  Thank you.

21   **MS. BARRIOS:**  Your Honor --

22   **THE COURT:**  This is my view.  One, there are several

23   cases that -- I have to be frank with you.  I misunderstood.

24   When I said I'm granting you relief under the CMO 12 process,

25   I'm not doing that, so let me go back.

02:11   1     As to Joyce Burse, Judy Gaddis, and Janice

2 Idland, the Court is reversing her prior order that we were

3 going to proceed under CMO 12 because I don't see that CMO 12A

4 applies.

5     I am going to order that subpoenas be issued

6 within 30 days.  Very frankly, I am going to want to address

7 this problem with lead counsel.  As I appreciate it, there were

8 about five plaintiffs whose records have been destroyed.  Those

9 plaintiffs, you have 30 days to issue your subpoenas.

10   **MR. ELLIOTT:**  Yes.

11   **THE COURT:**  Then I need to talk to lead counsel about

12 a mechanism.  You have to prove product use, and this cannot

13 stay out in limbo forever pending proof of product use.

14     So that's where we are.  I'm hoping against all

15 hope that that determination can be made.  If not, I don't know

16 what else to tell you.  I think there's an opportunity for

17 counsel to meet and discuss it, see if we can come up with

18 something.  I do think that pool is very limited.  This long

19 day, we have had five.

20   **MR. ELLIOTT:**  Just from my own experience,

21 Your Honor, I have a lot of unfiled cases with this issue, just

22 so you know.  Pre-2011 my clients were telling me docetaxel

23 usage, so --

24   **THE COURT:**  Well, I would be issuing subpoenas as

25 soon -- that needs to be done immediately, if not sooner, which

02:14

1    is what my mama would say.

2            **MS. BARRIOS:**  Your Honor, we will work with the

3    defendants on addressing the issue.  I don't think that we need

4    another order, but I would like to --

5            **THE COURT:**  I would prefer not another case

6    management order myself, but there's got to be a mechanism that

7    we shortcut this.

8            Let me admonish plaintiffs again.  I think I

9    made myself clear, Ms. Barrios --

10           **MS. BARRIOS:**  Yes, ma'am.

11           **THE COURT:**  -- that you are going to contact

12   plaintiffs' counsel and advise them that we are shutting down.

13           **MS. BARRIOS:**  Yes, ma'am.

14           **THE COURT:**  Now that I've had an opportunity to get

15   my arms around where we are, I'm not going to be as generous

16   except for extraordinary circumstances:  Somebody has died or

17   someone is in hospice, and they have been diligent all along,

18   it's one thing, and it's very difficult.  It's going to be

19   limited to those extreme circumstances, no more "We just didn't

20   get around to it."

21           **MS. BARRIOS:**  Yes, ma'am.  I understand, and we

22   appreciate your patience.

23           **THE COURT:**  Thank you.

24           **MS. CALLSEN:**  Thank you.

25           **MS. BRILLEAUX:**  Thank you, Your Honor.

02:15    1          **MS. BARRIOS:**  Merry Christmas.

2          **THE COURT:**  Have a happy holiday everyone.

3          **THE DEPUTY CLERK:**  All rise.

4          (Proceedings adjourned.)

5                              * * *

6                         <u>CERTIFICATE</u>

7          I, Toni Doyle Tusa, CCR, FCRR, Official Court

8  Reporter for the United States District Court, Eastern District

9  of Louisiana, certify that the foregoing is a true and correct

10  transcript, to the best of my ability and understanding, from

11  the record of proceedings in the above-entitled matter.

12

13

14                         <u>/s/ Toni Doyle Tusa</u>
                          Toni Doyle Tusa, CCR, FCRR
15                         Official Court Reporter

16

17

18

19

20

21

22

23

24

25