```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA

 3    ****************************************************************
      IN RE:  TAXOTERE (DOCETAXEL)
 4    PRODUCTS LIABILITY LITIGATION

 5                             Civil Action No. 16-MD-2740
                               Section "N"
 6                             New Orleans, Louisiana
                               December 19, 2018 at 11:40 a.m.
 7
      THIS DOCUMENT RELATES TO ALL CASES
 8    ****************************************************************

 9
                      TRANSCRIPT OF STATUS CONFERENCE
10         HEARD BEFORE THE HONORABLE MICHAEL B. NORTH
                      UNITED STATES DISTRICT JUDGE
11


12
      APPEARANCES:
13
      FOR THE PLAINTIFFS:
14
                           J. KYLE BACHUS
15                         DARIN SCHANKER
                           BACHUS & SCHANKER
16                         1899 WYNKOOP STREET
                           SUITE 700
17                         DENVER, CO 80202

18                         CHRISTOPHER COFFIN
                           PENDLEY BAUDIN & COFFIN
19                         1515 POYDRAS STREET
                           NEW ORLEANS, LA 70112
20
                           KAREN BARTH MENZIES
21                         GIBBS LAW GROUP
                           400 CONTINENTAL BOULEVARD
22                         EL SUGUNDO, CA 90245

23                         LARRY CENTOLA
                           338 LAFAYETTE STREET
24                         NEW ORLEANS, LA 70130

25
```

```
 1   FOR THE SANOFI DEFENDANTS:

 2                       PATRICK OOT
                         SHOOK HARDY & BACON
 3                       1155 F STREET NW
                         SUITE 200
 4                       WASHINGTON, DC 20004

 5                       HARLEY RATLIFF
                         SHOOK HARDY & BACON
 6                       2555 GRAND BOULEVARD
                         KANSAS CITY, KS 64108

 7
     ALSO PRESENT:       VAL EXNICIOS
 8                       ANDREW LEMMON
                         JESSICA PEREZ
 9                       ANDRE MURA
                         JOHN OLINDE
10                       MICHAEL SUFFERN
                         GEOFFREY COAN
11                       DOUGLAS MOORE
                         PETER ROTOLA
12                       MARA CUSKER GONZALEZ

13   PARTICIPATING VIA PHONE:

14                       DANIEL MARKOFF
                         DAVID MICELI
15                       ALEXANDER DWYER
                         LAUREN DAVIS
16                       TREVOR WHITE
                         PALMER LAMBERT
17                       ZACHARY WOOL
                         BETH TOBERMAN
18                       SUZY MARINKOVICH
                         ADRIENNE BYARD
19

20   Official Court Reporter:    Nichelle N. Drake, RPR, CRR
                                 500 Poydras Street, B-275
21                               New Orleans, Louisiana 70130
                                 (504) 589-7775
22
         Proceedings recorded by mechanical stenography,
23   transcript produced via computer.

24

25
```

OFFICIAL TRANSCRIPT

Page 2

<u>**P R O C E E D I N G S**</u>

(Call to order of the court.)

THE COURT:  First item on the agenda are documents subpoenaed from third parties.  I'm advised that that issue has been resolved.

MR. CENTOLA:  Not correct, Your Honor.

THE COURT:  Okay.  Why am I hearing that it's not been resolved today for the first time?  I mean, you got a letter yesterday that told me that it's been resolved.  Why didn't I hear from you?

MR. CENTOLA:  I apologize, Your Honor.  I was trying to work it out with counsel.  They sent an e-mail saying that they think it's resolved.  We sent another e-mail saying, no, we have to talk about this, and we've got no response.  And it is not a resolved issue --

THE COURT:  What is left unresolved?

MR. CENTOLA:  The third parties are producing documents to Sanofi first, and they have that absolute right. We understand that.  At the meet and confer in September, which they unilaterally set and we went forward with, we had an agreement and we want to know what the volume of documents are so we can work out a schedule, and they will have the opportunity to do it and produce it.

THE COURT:  I know all that.

MR. CENTOLA:  We have suggested a schedule, and they

1    say, no, no how, no way.  There's nothing we're going to do.

2    We don't have an issue.  We've produced to you everything

3    that we have.  And that's it.  That's final.

4         We got production today.  There are more third-party

5    documents that are being produced and going forward.  We want

6    to have a protocol going forward.  We think we can work with

7    them on the timing.  But they don't even think a protocol is

8    necessary, and it is causing delay in production of documents

9    to the plaintiffs.  We understand they have the right.  We

10   just want it to be done in a timely fashion.

11        THE COURT:  All right.  You all need to work out a --

12   you all need to work this out for productions going forward.

13        MR. RATLIFF:  Your Honor, may I address that --

14        THE COURT:  Yes.

15        MR. RATLIFF:  -- very, very briefly?

16        We had agreed with plaintiffs' counsel that in the

17   few instances where we get, I guess, what they call preview

18   documents from the third parties so we can do a quick

19   privilege review that we'll notify them when we received

20   them, what the volume of documents are, what we think they

21   look like in terms of kind of general categories and how long

22   we think we can get through those or how long it will take us

23   to get through those depending on the size.

24        I sent Mr. Centola I believe a couple of days ago --

25   we had just received a preview -- our preview production from

1    a third party.  We said it's been received on this date.

2    It's fairly sizable.  We think it will take us two and a half

3    weeks to get done.  But as we get through them, we're not

4    going to wait.  We're going to tell the third party we don't

5    see any privilege issues and go ahead and release these

6    documents to plaintiffs' counsel.

7          THE COURT:  All right.  Mr. Ratliff and Mr. Centola,

8    if you all can't get this worked out to your mutual

9    satisfaction by Friday of next week, then get on the phone

10   and call me.

11         MR. RATLIFF:  Thank you, Your Honor.

12         THE COURT:  All right.  The 30(b)(6) and retention

13   policies, I've got one side telling me that there is an

14   ongoing negotiation as to topics and scope, and then I've got

15   Sanofi telling me that they are 100 percent absolutely

16   positively opposed to any discovery along these lines.  So

17   what's going on?

18         MS. MENZIES:  Yes, Your Honor, Karen Menzies for the

19   plaintiffs.

20         We served two 30(b)(6) notices as you saw.  We had

21   talked about -- they're pretty lengthy, the objections anyway

22   on the -- on instructions and definitions and otherwise.  And

23   Mr. Oot requested that we do these together, to meet and

24   confer on the substance to walk through -- there's some

25   general objections, instructions, and definitions came from

1    their documents, stuff I can go through with them.  You know,

2    it's a little tedious, but we need to do it.

3         We have not done that yet, but what we do have for

4    Your Honor today is the -- what were edited and passed,

5    whether we get a witness in a 30(b)(6) context to address

6    these topics.  And so that's what we were bringing to your

7    attention today and what we think we feel needs to be

8    resolved.

9         As far as the rest of the stuff, we're happy to

10   continue to meet and confer.  If they're going to decide not

11   to meet and confer, then we would need I guess to make a

12   formal motion to compel.

13        THE COURT:  So what has changed to make me take a

14   different approach to this discovery?

15        MS. MENZIES:  As we have --

16        THE COURT:  Because you haven't explained to me in

17   your paper that there's been any change in circumstance.

18        MS. MENZIES:  Well, these are -- these are very

19   specific -- the change in circumstance, Your Honor, is that

20   we asked Your Honor to -- you gave us an order that required

21   them to provide further information.  They provided some

22   further information, but still had very serious issues.  So

23   we raised that in a couple meet and confer letters, went back

24   and forth.  And the reality of it is that we've gone now to a

25   30(b)(6) deposition to the witness because we're getting the

1   same -- what we consider are incomplete and argumentative

2   answers and we're not getting the information we need.  And

3   so we think we're better crafted in getting the answers from

4   a company witness for a couple of reasons.  One is, for

5   example, we -- in the 30(b)(6) notices that we were doing, on

6   the notice issue with Mr. Bachus, we were asking the company

7   witness where are the documents for follow-up when you get a

8   report of an adverse event for permanent hair loss.  And he

9   continues to testify, "I don't know if there are others."  He

10  doesn't know.  We reserved our right to go talk to a company

11  witness who does know where that follow-up is.

12         THE COURT:  I assume.  Here's the thing.  I'm hearing

13  all this for the first time, and I understand Mr. Oot's

14  argument, but I've not been presented with any of this

15  information.

16         MS. MENZIES:  The subject of the topics -- I agree

17  with you.  That's my concern is that I'm trying to get them

18  to sit down and talk about these topics and say similar to

19  what Mr. Bachus did in the months of negotiating on the

20  30(b)(6) ray notice.  We haven't had that discussion.  What

21  we have had though is no matter what Karen I'm not willing to

22  give you a witness on this.  And so before I can get to the

23  substantive meet and confer and try to work out -- you know

24  the five topics that we listed we -- similar to what we did

25  with the 30(b)(6) RAE notice, we listed specific documents

1    that they would refer to in very what we believe are

2    extremely narrow topics.  We are happy to narrow those more

3    if they have concerns, but we haven't had that discussion and

4    we can't -- because we can't get past the fact that --

5    whether we can use the 30(b)(6) notice witness as an avenue

6    for discovery on this.

7           THE COURT:  All right.  You need to -- what you all

8    need to give me and pull it out of the scores of pages of

9    whatever you all attached to your submission earlier.  You

10   need to give me exactly what it is that you want a witness to

11   testify about in this arena, and you need to explain why you

12   need a witness to testify about those things, specifically in

13   terms of what you -- what I said they needed to produce, what

14   they haven't produced, what other questions you have.  You

15   need to explain to me why you need to talk to a human being.

16   All right?

17          MS. MENZIES:  Okay.

18          THE COURT:  And then Mr. Oot is going to explain to

19   me why you're not entitled to talk to his human being based

20   on that submission and then we'll go from there.

21          MS. MENZIES:  Okay.

22          THE COURT:  Okay.  I'll put a deadline in the minute

23   entry, but I'm not -- I don't want to -- I don't want to wing

24   it with the holiday right on the heels of this.

25          MR. BACHUS:  Your Honor, can I ask for just a little

1   guidance?  I mean -- and you're right.  We just did the last

2   Wednesday and Thursday a second piece of that 30(b)(6) and

3   what happens is that in that testimony, the witness that

4   they're presenting says, "I can't answer your questions.

5   Because although there should be documents of communications

6   with adverse event reporters, I can't answer your questions

7   because the company hasn't prepared me to answer those

8   questions."  And --

9          THE COURT:  So put that in your submission.

10          MR. BACHUS:  Okay.  So that's --

11          THE COURT:  You got to convince me why I should order

12   them to put a person up as a 30(b)(6) designee on these

13   topics and I've not been convinced.

14          MS. MENZIES:  Right.  And I understand what you're

15   saying.

16          MR. BACHUS:  I think we can do that.

17          MS. MENZIES:  Well, the topics, just so you're aware,

18   the difference is rather than general retention policies,

19   what we've done is narrow down where we see holes in missing

20   information, missing documents.  Either it never existed or

21   it was destroyed, and we're trying to get answers on that.

22   That's what we're trying to focus on, and so we will as

23   you've requested go through that more specifically.

24          THE COURT:  I don't want to make a -- I'm not going

25   to make a decision without knowing what the specific basis of

1    their request is.

2         I read everything you gave me, Mr. Oot.  I understand

3    your position.  All I'm saying is, I'm going to give them the

4    opportunity to make their case, and then I'll give you an

5    opportunity to respond to it.

6         MR. OOT:  Sure, Your Honor.

7         MS. MENZIES:  Thank you.

8         MR. OOT:  But I'd like to point out that PTO 49 sets

9    out the procedure for how they get discovery on discovery.

10   They first have to come to us, not to you, and seek a meet

11   and confer on the deficiency and provide us with the

12   opportunity to cure that deficiency.

13        THE COURT:  I'm hearing that that's in process.

14        MR. OOT:  That has not happened.

15        THE COURT:  Well, it's going to happen.  I mean,

16   Ms. Menzies just got through telling me that there's things

17   you haven't talked about yet.  And to the extent that the PTO

18   49 requires you all to talk about the deficiencies that

19   you're going to highlight to me, you all need to talk about

20   it, right?

21        MS. MENZIES:  Yes.  And we've been talking for a good

22   eight months now, but along these specifics, we'll talk more.

23   Thank you.

24        MR. COURT:  Very good.

25        MR. OOT:  And for over a year, we've said that these

1     are outside the scope of discovery, even the cases that

2     they've cited in their own papers.

3           THE COURT:  I get that.  So they're probably thinking

4     that the meet and confer is not really going to come to

5     anything, but they're going to have it anyway, right?

6           MR. OOT:  Well, I think we're still -- we're still

7     going to be in the same position, Your Honor, that we've been

8     in the past is that, you know, 26(b)(1) still applies.

9           THE COURT:  I've read it all.  We've been down this

10     road.  And there is -- there is perhaps an incremental

11     approach to what discovery is going to be allowed based on

12     what's happening with the discovery that I've already ordered

13     or allowed to take place.  There are benchmarks they can hit

14     that will cause me to allow them to do additional discovery.

15     I don't know if they can hit them, but I need to know where

16     we are.  I need to be able to assess the request in context

17     and the context is -- I don't know what the context is right

18     now.  That's all I'm asking for.  I'm not -- I'm not trying

19     to preview what's going to happen.  I just need to know why

20     I'm even being asked to do this.

21           MR. OOT:  Yeah, we're past the discovery deadline.

22     So --

23           THE COURT:  I get it.

24           MR. OOT:  What's happening now is, they sent us this

25     last-minute discovery-on-discovery deposition notice, skipped

1    over the PTO 49 requirements, and now we're here having to

2    defend against discovery on discovery without the case --

3    without it properly worked out.

4         THE COURT:  And that may at the end of the day be

5    dispositive.

6         MR. OOT:  Thank you, Your Honor.

7         THE COURT:  I need to know what's going on.  I don't

8    want to make decisions without knowing what's going on --

9    what's actually going on in the background.

10        MR. OOT:  Okay.  Thank you, Your Honor.

11        THE COURT:  All right.  The bellwether plaintiffs'

12   discovery responses, everybody get out your No. 2 pencils.

13   You want to tell me what's been resolved already?  Is that

14   what you're here --

15        MR. RATLIFF:  I wish that's what I was here to say,

16   Your Honor.

17        THE COURT:  See all these notes, I've already decided

18   what's going to happen.  That's why I said get out your

19   sharpened No. 2 pencils.

20        I've gone through every disputed response and every

21   request, and I've gone through them -- and some of them are

22   disputed in multiple areas.  And I've gone through them in

23   the way in which Sanofi sort of grouped them in their

24   submission in the five categories.  So I'm going to address

25   that -- I'm going to address that here.  And I've spent a

1   fair amount of time on it, so I'm comfortable -- I'm

2   comfortable that these are the -- at least from my

3   perspective, these are the -- this is the correct approach.

4        As to the first group, I think that the answers that

5   have been provided are sufficient and the references to

6   expert opinion are appropriate with one exception, which is

7   Request for Admission Number 6, which I want the plaintiffs

8   to respond to directly.  I think the response that's been

9   given is argumentative, and I think that the request requires

10  a direct admission or denial.

11       As to the second group, my findings are the same.  I

12  think that the -- I think the responses to the requests are

13  sufficient under Rule 36 except, again, as to Request for

14  Admission Number 6 which needs to be responded to.

15       As to the third group, the responses to Requests to

16  Admissions 3, 4, 8, and 9, in my view, comply with Rule

17  36(A)(4)'s requirement that a denial fairly respond to the

18  substance of the matter.  The responses to Requests for

19  Production Numbers 4 and 5, I do not think are sufficient and

20  I think those responses -- those responses need to be

21  supplemented.

22       The plaintiffs don't get to decide what's

23  representative.  There's no proportionality objection that's

24  been made, and so whatever has been requested to the extent

25  that the plaintiff has control -- possession, custody, and

1   control needs to be produced.

2   MR. COFFIN:  Your Honor, I think you mentioned Number

3   4 twice in that last group.

4   THE COURT:  My first reference to -- was to Requests

5   to Admissions 3, 4, 8, and 9 which are sufficient.  My second

6   was a response -- was a reference to a Request for Production

7   Number 4 and 5 need to be supplemented.

8   MR. COFFIN:  Thank you.

9   THE COURT:  The fourth group, I'll just say again to

10   the extent there are general objections, I think general

11   objections are improper and I ignore them as I think I

12   properly should.

13   Interrogatory Number 3 needs to be answered.  I think

14   the fact of a privileged communication is not itself

15   privileged, and that request the way it's worded does not

16   implicate the subject matter of a conversation to the point

17   that it would implicate actual privilege communication.  So

18   Interrogatory Number 3 needs to be supplemented to the extent

19   that the identity of any individual has been withheld on the

20   basis of a privilege claim.

21   Interrogatories 4, 6, and 10, those responses need to

22   be supplemented as to all persons who are not attorneys.  So,

23   essentially, I'm rewriting the interrogatories to -- to limit

24   the universe of people to non-attorneys which should cure any

25   privilege problem, and if the list is complete, say it's as

1    to attorneys, the supplemental response just needs to say

2    that.

3            Requests for Production 10 through 13 and Number 15,

4    there are no objections as to relevance that I see, so there

5    needs to be supplemental responses that confirm that all

6    responsive documents have been produced.  And a privilege log

7    needs to be provided if privilege documents have been

8    withheld or documents -- any documents have been withheld on

9    the basis of a privilege, a log needs to be produced.

10           As to the last group, Number 5, if there are other

11   persons to be identified, they must be identified.  It's not

12   sufficient to require the defendant to go through a

13   deposition or some list in some other context and pull out

14   the names of individuals they think might be responsive.  I

15   don't know if that's a catch-all that you all used.  If it

16   is, then that will be very little work.  But if there are

17   other individuals who are responsive to those requests, they

18   need to be identified as opposed to referencing everyone who

19   is identified in the deposition.

20           All right.

21           MR. RATLIFF:  Your Honor, may I address that very

22   briefly?

23           THE COURT:  Yes, very briefly.

24           MR. RATLIFF:  One, can we get a deadline by which

25   these responses will be amended?  And, two, in the effort for

1    brevity and learning the hard way that you do not like

2    voluminous exhibits from the Sanofi defendants, we did not

3    include the Durden and Francis written discovery responses,

4    although they are essentially identical, and so I just want

5    confirmation that that same type of guidance --

6               THE COURT:  Yes.

7               MR. RATLIFF:  -- and the Earnest rules applies to

8    those two cases --

9               THE COURT:  Yeah, that guidance which I'll call it,

10   because I haven't actually read those responses, but that

11   guidance will apply to those responses.

12              MR. RATLIFF:  Thank you, Your Honor.

13              THE COURT:  I'll give you a deadline.  It will be in

14   the minute entry.

15              MR. RATLIFF:  Understood.

16              THE COURT:  I'm sure it will be reasonable.

17              MR. SCHANKER:  Darin Schanker on behalf of the

18   plaintiffs, Your Honor.

19              Just one question concerning clarification.  With

20   regard to the log produced, I just want to make sure that

21   we're complying with what your intent is.  Do you want

22   literally like every letter -- letters to clients, those

23   sorts of things in the privilege log?  What are you

24   envisioning?  I just want to make sure.

25              THE COURT:  No.  I don't want to go down a road where

1    you're having to -- I think we discussed this in the past.  I

2    do not consider these requests to reach actual communications

3    between client and lawyer, particularly about this

4    litigation.  I'm not requiring all of those communications to

5    be listed in a log.  And I think the safest thing to do is

6    when you produce the log to say this log does not include

7    multiple communications between the lawyer and client about

8    the litigation or claim.  And everybody understands what's in

9    the log and what's not.  But I don't think that we have any

10   arguments about whether every written communication between a

11   lawyer and his or her client needs to be listed on a log

12   because I don't think that it does.

13          MR. SCHANKER:  And then you specifically said

14   supplement responses as to persons who are not an attorney,

15   obviously attorney or staff.

16          THE COURT:  Yes.  Correct.

17          MR. SCHANKER:  Thank you, Your Honor.

18          THE COURT:  All right.  I've gone back and forth on

19   this issue of the subpoenas to the experts.  And as you all

20   can imagine, I was not, you know, instinctively inclined to

21   allow subpoenas to any of these experts on the basis of the

22   discussion that we had before.  However, PSC makes an

23   argument and I think -- I think it's a reasonable argument, a

24   compelling enough argument, that they're not seeking

25   litigation based materials from these individuals, but

1    they're seeking -- you know, they're seeking materials that

2    are similar in kind to what Sanofi sought from Dr. Tosti,

3    given that these individuals are published or are

4    researchers.  And I think to the extent -- and I'm also

5    considering that they only subpoenaed two of these people.

6    They haven't subpoenaed every one of your experts.  I think

7    to the extent that they are seeking through subpoena

8    information that, as the PSC said in its letter, they could

9    have or would have received or sought even had Sanofi not

10   retained them as experts, I think that's appropriate -- and

11   appropriately limited.  So I'm inclined to allow them to

12   obtain information via subpoenas to those two individuals

13   that is not in any way related to this litigation --

14   specifically related to the litigation or their status as

15   experts.  I think that's -- I think that is a -- I think

16   that's a fair outcome.

17        MR. RATLIFF:  Your Honor, may I address that very

18   briefly?

19        I think our concern is with Dr. Tosti who we did not

20   know as an expert treated many of the plaintiffs in this

21   litigation, not necessarily bellwether plaintiffs, but had

22   plaintiffs which was the genesis of our initial subpoena.

23   The PSC has known that Dr. Goldberg was a consulting

24   expert and Dr. Shapiro --

25        THE COURT:  I understand that.  I'm not ignoring all

1    that.  But I'm also -- I'm also considering that there's

2    information that they've sought from these two individuals

3    before they were designated, even if they knew or suspected

4    they would be, that is like I said similar and kind to the

5    information you all sought from Dr. Tosti based on work that

6    they've done outside litigation.  And on balance, I think

7    it's fair to allow them to obtain that information due to

8    subpoenas.

9        MR. RATLIFF:  Understood, Your Honor.

10        I guess two maybe administrative kind of questions or

11    clarifications for you, which is I believe both of those

12    subpoenas are returnable maybe on December 27th.  I can

13    certainly ask them for an extension of time because it's

14    going to be difficult for these two individuals who are

15    practicing doctors over the holidays to be able to respond to

16    those types of things --

17        THE COURT:  I think that you all should talk about

18    extending the deadline particularly given that this is an

19    issue in dispute and is only being resolved today.

20        MR. RATLIFF:  And these are also not professional

21    experts, and so calling out for them what are communications

22    related to the litigation versus not is the other thing.  The

23    other part of this is I will need to inform Dr. Goldberg and

24    Dr. Shapiro of your ruling today to which they may want to

25    take their own action on their own behalf.  So I will advise

1    them of that.  But that's -- really the timing component is

2    the part that was going to be the most pressing for us over

3    the holidays.

4          THE COURT:  Well, you all -- look.  There's a

5    subpoena out there that nobody has moved to quash including

6    these two doctors.  I don't know how that's going to play if

7    you're suggesting that they might want to do that.  Because

8    I'm here to tell you that if they file that motion, it's

9    going to be -- it's going to be filed in another

10    jurisdiction.  Then it's going to be transferred here, and

11    it's going to come before me.  And I'm going to deny it.  So

12    you might want to advise them of that as well.

13          MR. RATLIFF:  I will.  Your Honor, I certainly will

14    pass along your message.

15          THE COURT:  I do think it's a reasonable -- I do

16    think it's reasonable to give them an extension in time to

17    respond given the holidays and the fact that the issue is

18    only being resolved today.

19          MR. RATLIFF:  Thank you, Your Honor.

20          THE COURT:  I'll leave that to you all.

21          MR. COFFIN:  Your Honor, Chris Coffin --

22          MR. MICELI:  Your Honor, David Miceli on the phone.

23    And I will work with -- I will speak with Mr. Ratliff, and I

24    will also work with counsel for Dr. -- Dr. Shapiro at NYU and

25    Boston University for Dr. Goldberg just as I encourage the

1    attorney for the University of Miami and her compliance with

2    Sanofi's subpoena.  And I think we can accommodate an

3    extension, and I think we can do it in a timely manner that

4    would also allow us to not have to put off any depositions of

5    Dr. Shapiro.

6              THE COURT:  Very good.

7              MR. COFFIN:  My comment, Your Honor --

8              MR. MICELI:  Thank you.

9              MR. COFFIN:  My comment, Your Honor, was that of

10   course we're willing to give an extension.  The concern is we

11   need to know what action the doctors intend to take, sooner

12   rather than later, because if we're giving them an extension

13   and then they're going to object to the subpoena and then --

14             THE COURT:  That will make even less likely that they

15   get the relief that they seek.

16             MR. COFFIN:  I'm sure it would, but I don't know

17   these individuals but --

18             THE COURT:  I don't either.  They're not in the

19   courtroom, nor their lawyers.  Other than the preemptive shot

20   across the bow they've already fired, I'm not going to go any

21   further than that.  I mean, everybody is hearing what I'm

22   saying.  When you communicate with these doctors and their

23   lawyers, you can tell them -- you know, you can reasonably

24   predict the outcome of a challenge to those subpoenas.

25             MR. RATLIFF:  Thank you, Your Honor.

1          THE COURT:  All right.  The Feigal deposition, it

2     sounds to me like you all were trying to make an effort to

3     resolve this and ask for two more hours, and now that you're

4     here, you're asking for four more hours.

5          MR. RATLIFF:  Yeah, Your Honor.  I think that is --

6          MR. MICELI:  Well --

7          THE COURT:  Hold on.  I've got somebody at the podium

8     to address this.

9          MR. RATLIFF:  I'll let Mr. Miceli go --

10         MR. MICELI:  Okay.

11         MR. RATLIFF:  -- after I go, which is I think there

12    is maybe not an intentional misrepresentation but a

13    misrepresentation in the PSC's position which is when we had

14    met and conferred with them and we had communicated with them

15    on the issue of Feigal and her showing up late, showing up

16    with a new report, showing up with new broader opinions, as

17    we said, we wanted two hours to go over the changes in her

18    report, not doing it on the fly, and then two hours to be

19    able to cover any sort of general issues that flowed from her

20    new report that we weren't able to cover during what was a

21    fairly torture deposition.

22         THE COURT:  That was communicated to the PSC?

23         MR. RATLIFF:  Yes.  Yes.  And so whether that was

24    some confusion on their part or they didn't think that's what

25    was articulated, that has always been our request is two

1    hours and two hours or just a total of four hours and we can

2    use that time however we see fit using our own sort of

3    professional judgment.

4           THE COURT:  All right.  Listen.  When I read the

5    submission, that doesn't strike me, Mr. Miceli, as an

6    unreasonable request considering that your expert showed up

7    an hour late with new materials.

8           MR. MICELI:  Well, if I can address that Your Honor,

9    the new materials were not new materials in that they were

10   anything new to Sanofi, and the text of her report speaks the

11   same.  It's just that she inserted some footnotes, four, even

12   six of those, are approval -- two approval letters to Sanofi

13   from FDA and one document that is referenced four times,

14   twice into the same page and the others were similar, just

15   added footnotes to the report.

16          Now, I hear what Mr. Ratliff is saying from the

17   podium, but I know Your Honor will use what we submit.  An

18   Exhibit B to our submission yesterday attaches the e-mail

19   from Mr. Kaufman who is the attorney who took the deposition

20   and as the attorney who best knows how much more time he

21   needs.  He goes through a full page, single spaced,

22   explaining the need for more time.  And he says,

23   "Accordingly, Sanofi requests that the plaintiffs produce

24   Dr. Feigal for two further -- for two hours of further

25   questioning."

```
 1              THE COURT:  Has a request --
 2              MR. MICELI:  He's had a meet and confer --
 3              THE COURT:  Has a request --
 4              MR. MICELI:  -- that is --
 5              THE COURT:  Mr. Miceli, has a request --
 6              MR. MICELI:  There's no --
 7              THE COURT:  Let me ask my question.  Let me ask my
 8   question.
 9              MR. MICELI:  Okay.
10              THE COURT:  Has someone requested four hours of
11   additional deposition time before these letters were
12   submitted to me?
13              MR. MICELI:  Yes, they have.  And I think we recount
14   that in our letter.  What had happened was, we had a meet and
15   confer.  The issue came up.  The exact words were, "We will
16   accommodate you on Mr. Kaufman's request."
17              A second meet and confer was had the following day
18   with a new attorney participating for Sanofi, and they said,
19   "No, we think Mr. Kaufman was confused or somehow his e-mail
20   requesting two hours was confusing.  And what we want now,
21   now that you have agreed to the two hours that we requested,
22   we want to request four hours."  And we simply said --
23              THE COURT:  Let's go back to --
24              MS. BYARD:  This is Adrienne Byard on the phone.
25   That is not what the conversation was.  All along we
```

1   explained that we asked -- that we wanted to ask for four

2   hours.

3          THE COURT:  All right.  That ship has sailed.  I'm

4   done --

5          MS. BYARD:  I don't know why this is the focus.

6          THE COURT:  I'm not focused on it.  I'm much more

7   concerned about an expert witness showing up late for a

8   deposition with a new report.  That's what I'm concerned

9   about.

10          MR. RATLIFF:  We are too, Your Honor, and, frankly,

11   the relief that we asked for is to have that report stricken.

12          THE COURT:  I'm going to -- I'm going to give them

13   four hours of deposition time.  That's it.  Okay.  I'm going

14   to give them four hours of deposition time because this is

15   unorthodox to say the least.  And I don't think it is -- it

16   is severe or draconian in any way.  I think it is measured

17   and proportional to the circumstances that give rise to this

18   dispute.

19          So you all are going to get -- Sanofi is going to get

20   an additional four hours with this witness.

21          MR. RATLIFF:  Thank you, Your Honor.

22          THE COURT:  That's what's going to happen.

23          Okay.  As to this Taxotears Group issue, I'm unclear

24   -- it seems to me that what the PSC is saying is that -- is

25   that the individuals that Sanofi is seeking to have

1    identified are lawyers.  But I don't know if that's the case.

2    And I don't know that Mr. Oot knows who they are, so I think

3    I'm sort of perceiving that they're asking for the identity

4    of individuals, and you all, the PSC, is saying you can't

5    have it because there's a privilege.  But I don't know -- I

6    don't know where the disconnect is.

7              MR. OOT:  So, Your Honor, let me delineate what our

8    request is before --

9              THE COURT:  Yes, let me hear that first --

10             MR. OOT:  -- we get to the plaintiffs position.

11             Our request is pursuant to PTO 49 to identify the

12   custodians of who produced the Taxotears membership group to

13   them so we can investigate more about the issue.  In Ms.

14   Cantwell's declaration in support of her Rule 45 -- objection

15   to Rule 45 subpoena, she said that -- she stated that there

16   were thousands of messages associated with the Taxotears

17   Group.  We have not received thousands of messages associated

18   with the Taxotears Group.  And we're moving forward with the

19   deficiency on this issue because we believe that it is

20   relevant to the statute of limitations claim and everything

21   that we put in our papers in the past.

22             So we asked the plaintiffs to identify pursuant to

23   PTO 49 who were the custodians of these records who provided

24   them to counsel that -- that built up to what was produced to

25   us which was the membership group.  They objected and said

1   that there's privilege and communication between counsel.

2         THE COURT:  You're asking for the identity of the

3   custodians?

4         MR. OOT:  Correct.

5         THE COURT:  Of the information that was collected and

6   then sent to counsel?

7         MR. OOT:  Correct.

8         THE COURT:  That's all you're asking for?

9         MR. OOT:  Correct.

10        THE COURT:  All right.  Ms. Menzies, why is the

11   identity of these individuals -- I mean --

12        MS. MENZIES:  First of all --

13        THE COURT:  You all are constantly arguing the flip

14   side of the same coin.

15        MS. MENZIES:  Let me start out by saying, as we said

16   in our paper, they have as far as the names of women who are

17   Facebook members that we received as the PSC.  They have all

18   the exact names that we have.  The only names they don't have

19   are women who aren't plaintiffs.

20        THE COURT:  I think what Mr. Oot wants to know is who

21   gathered the information that was sent to you all that was

22   then produced in the litigation, and I think he's entitled to

23   know that.

24        MS. MENZIES:  So just -- and to be clear too, Your

25   Honor, he's invoking this custodian requirement under PTO 49.

1    Just so the record is clear, this was information that we

2    gathered at the 11th hour before our hearing with you on

3    June 13th, just to address the Facebook membership names,

4    people -- because we didn't even know there was a Facebook

5    page.  You probably remember that whole discussion.  And so

6    we obtained -- we had -- one of the plaintiffs' lawyers had a

7    plaintiff go online to her Facebook page, type up the names

8    and furiously send them to us.  They sent them to us.  I've

9    given him those names.  Now what they want to know is, who is

10   the plaintiff who sent it and who are the lawyers who

11   received it.  This is not responsive to a discovery request.

12   My communications with plaintiff's counsel I think that --

13   that's what they're trying to get, and I believe that that is

14   privileged.  We don't get communications -- we don't get

15   e-mails --

16        THE COURT:  Mr. Oot just told me that all he wants is

17   names -- is a name or names.  That's not communications.

18        MS. MENZIES:  The name of the plaintiff?

19        THE COURT:  The name of whoever it is that did this.

20        MS. MENZIES:  All right.  I'll tell you right now who

21   the plaintiff is, Your Honor.

22        THE COURT:  You need to write it down and tell him in

23   a formal way that works --

24        MS. MENZIES:  I will do that, Your Honor, but as you

25   recall, the deficiency process is what is required and the

1    particular plaintiff who submitted this information has

2    submitted 70 pages of information of printouts of documents

3    she has produced since last year --

4         THE COURT:  Mr. Oot just stood at the podium and said

5    all he wants to know is the name of that person.  So give it

6    to him --

7         MS. MENZIES:  He wants to know who the plaintiff --

8         THE COURT:  Then we're done.

9         MS. MENZIES:  He wants to know who the plaintiff was

10   who provided --

11        THE COURT:  The plaintiff is a person.

12        MS. MENZIES:  Okay.  So I don't have to give him --

13        THE COURT:  If the person is a plaintiff, that's

14   who --

15        MS. MENZIES:  I don't need to give the e-mail that

16   communicated from my plaintiff's --

17        THE COURT:  That is not what I was just told that he

18   wants.

19        MR. OOT:  Your Honor, throughout this hearing -- our

20   conferences with you, Ms. Menzies has consistently said that

21   the PSC does not have access to the Taxotears Group.  So we

22   just want to know who we can talk to that does have access to

23   this group so we can --

24        THE COURT:  I don't have a problem with you

25   identifying the person who undertook this exercise.

1            MS. MENZIES:  She is a non-trial plaintiff who has

2    made a very large production on these issues.  If they have

3    concerns for her deficiencies, we presume they will go

4    forward through --

5            THE COURT:  Do they know who she is?

6            MS. MENZIES:  They do not right now.

7            THE COURT:  Then, how can they determine whether

8    she's got a deficiency?

9            MS. MENZIES:  What they asked from me was the

10   communication related to who provided --

11           THE COURT:  Well, that may be the case, but what he

12   just asked me for is something different, the identity of an

13   individual.

14           MS. MENZIES:  And then if he has concerns about her

15   production, he can address it through the deficiency process.

16   Thank you.

17           THE COURT:  We will go from there.

18           MR. OOT:  Your Honor, I think that the deficiency

19   would be with compliance with your prior order on the

20   Taxotears --

21           THE COURT:  And that may be the case.  But let's take

22   it one step at a time.  They're entitled to know who the

23   person is.

24           All right.  Next meeting, I have three potential

25   dates.  Let's start with January 14th, at 11 o'clock.

```
 1              MR. OOT:  Your Honor, can we do --

 2              MR. RATLIFF:  We're here on January 18th for a

 3   hearing with Judge Milazzo, Your Honor.

 4              THE COURT:  How about the day before?  That was one

 5   of my other dates, January 17th.

 6              MR. RATLIFF:  That will work for us, Your Honor.

 7              THE COURT:  January 17th at 11:00.

 8              MR. COFFIN:  Can we do it on the 18th, Your Honor?

 9              THE COURT:  I can't do it on the 18th.

10              MR. COFFIN:  Well, the problem that we have is that

11   our Plaintiffs' Executive Committee will be in depositions

12   here, there, London, California, we just -- the leadership

13   won't be here.

14              THE COURT:  All right.  January 24th.

15              MR. COFFIN:  That's even worse.

16              THE COURT:  January 14th.

17              MR. RATLIFF:  Now, Your Honor --

18              MR. COFFIN:  That's fine, Your Honor.  We'll take

19   that.  That works perfectly well.

20              MR. RATLIFF:  You know, Your Honor, this runs both

21   ways which is January 14th doesn't work for the leadership on

22   our side because of these exact same issues.  What I will

23   point out is, consistently from Sanofi, you see one and two

24   lawyers who come down and address this.  I see --

25              THE COURT:  I know --
```

1          MR. RATLIFF:  -- a host of PSC people who can address

2     the issues.

3          THE COURT:  I know.  I will look at the 18th.  I will

4     look at the 18th, and I will try to make that work.

5          MR. COFFIN:  Thank you, Your Honor.  I appreciate it.

6          One other issue, I heard Mr. Oot saying we're past

7     the discovery deadline and we are anticipating -- this is not

8     an issue to substantively talk about, but we're anticipating

9     there is some outstanding discovery requests that were made

10    prior to the discovery deadline that we may have disputes

11    about.  If that occurs between now and our next conference,

12    when is the Court available over this next few weeks?

13         What I'm trying to get at Your Honor, I don't want to

14    be calling you up on December 27th --

15         THE COURT:  Well, you can call.  Call Blanca and

16    schedule something.

17         MR. COFFIN:  Will do.

18         THE COURT:  That's --  I mean, I can't even tell you

19    if I'm available on the 18th.  I definitely can't tell you

20    when to call about a dispute that may or may not occur.

21         MR. COFFIN:  I just want to give you a preview about

22    it --

23         THE COURT:  If you need to talk to me, just call my

24    office and we'll set something up on the telephone.

25         MR. RATLIFF:  And certainly, Your Honor, we're not

1    aware of what Mr. Coffin's talking about in terms of

2    discovery disputes or outstanding --

3            THE COURT:  But you will be --

4            MR. RATLIFF:  -- discovery.  I assume we will be.  We

5    have certainly --  we have two witnesses, company witnesses,

6    who they had asked for prior to the December 15th general

7    liability cut off.  We couldn't get them scheduled before

8    then, so we agreed to get them scheduled afterwards.  And we

9    would not be in here making the argument that those

10   depositions don't get to go forward.  As to anything else,

11   I'm unaware and I'll talk with Mr. Coffin --

12           THE COURT:  As you're going to imagine, I'm going to

13   be pretty flexible in terms of you all conducting discovery

14   after the deadline if necessary, given the -- given the

15   breadth of this case and what needs to be done.

16           MR. COFFIN:  Just as a reminder, I sent some e-mails

17   with Mr. Ratliff, and we've had some discussions about the

18   issues.  They're not surprise issues, but we'll come back to

19   you if we need to.

20           THE COURT:  All right.  You all have a good holiday.

21                           *  *  *  *

22

23

24

25

1      (WHEREUPON, the proceedings were adjourned at 12:16 p.m.)

2                          * * * *

3                   REPORTER'S CERTIFICATE

4           I, Nichelle N. Drake, RPR, CRR, Official Court
Reporter, United States District Court, Eastern District of
5   Louisiana, do hereby certify that the foregoing is a true and
correct transcript, to the best of my ability and
6   understanding, from the record of the proceedings in the
above-entitled and numbered matter.

7

8                      ___/s/ Nichelle N. Drake___
                        Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25