**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                  MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                              SECTION "H" (5)

THIS DOCUMENTS RELATES TO
*Jacqueline Mills*
Case No. 17-2689

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

The Court should grant Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc.'s

("Defendants") motion for summary judgment on all of Plaintiff's claims because she cannot

establish the essential element of causation.

This is a warnings case; Plaintiff alleges Defendants failed to provide an adequate warning

to her and her prescribing physicians regarding an alleged risk of permanent alopecia associated

with Taxotere. But Plaintiff has no evidence that an additional or different warning would have

changed her physician's decision to prescribe Taxtotere. Plaintiff's oncologist, Dr. Shefali Shah,

unequivocally testified that, even knowing of a risk of total and permanent hair loss, she would

still prescribe Taxotere to Plaintiff because it was and is the standard of care for Plaintiff's cancer.

Without evidence that a different warning would have resulted in a different prescribing

decision, Plaintiff cannot prove that any alleged failure to warn proximately caused her alleged

permanent alopecia – i.e., Plaintiff cannot establish the essential element of causation. And where,

as here, there is no genuine factual dispute concerning this break in the chain of causation,

Defendants are entitled to summary judgment on all of Plaintiff's claims.

## BACKGROUND

### A.      Taxotere

Taxotere is a chemotherapy prescribed to treat various forms of cancer, including breast cancer. Second Am. Master Compl. ¶ 4. Taxotere was first approved for use in the United States in 1996, and its FDA-approved label has always warned that hair loss is one of the drug's most common side effects. Ex. B, 1996 Taxotere Label; Ex. A, 2014 Taxotere Label. In December 2015, Sanofi, following discussions with FDA, made a modest change to the label's post-marketing section to reflect that "cases of permanent alopecia have been reported." Ex. C, 2015 Taxotere Label. Taxotere has never been removed from the market and oncologists continue to prescribe Taxotere to treat potentially life-threatening forms of breast cancer. *See, e.g.,* Ex. D, Shah Dep. 43:4-13.

### B.      Plaintiff's Diagnosis and Chemotherapy Treatment Plan

Plaintiff is a 66-year-old resident of Georgia. Ex. E, Fifth Amended Plaintiff Fact Sheet ("PFS") at p. 10. Plaintiff is currently cancer-free. Ex. E, PFS at 16.

On October 3, 2014, Plaintiff was diagnosed with breast cancer, type PR-positive, ER-positive, and HER2 positive. Ex. E, PFS at pp. 12-13; Ex. F, Mills Dep. 92, 94-95. Plaintiff understood that this diagnosis meant she had "a high risk form of cancer" because the "cells divide at a quicker rate." Ex. F, Mills Dep. 95:11-96:4.

In December 2014, Plaintiff met with her oncologist, Dr. Shefali Shah, to discuss her chemotherapy treatment plan. Ex. F, Mills Dep. 93-94, 96. Dr. Shah recommended a chemotherapy regimen called TCH, which included docetaxel (T),[1] carboplatin (C), and Herceptin (H).  Ex. G,

---

[1] Docetaxel is the generic version of Taxotere. For ease of reference, Defendants use Taxotere interchangeably.

12/9/14 Medical Record. Because of Plaintiff's HER2 positive diagnosis, Dr. Shah had no doubt

that the TCH regimen was "the go-to regimen" for her diagnosis. Ex. D, Shah Dep. 19:7-13.

Dr. Shah told Plaintiff definitively that the chemotherapy regimen would cause her to lose

her hair. Ex. F, Mills Dep. 98:22-25. Plaintiff does not remember whether Dr. Shah told her that

her hair would grow back. Ex. F, Mills Dep. 98:2-7.  Plaintiff agreed to the treatment plan and did

not seek a second opinion about this treatment regimen. *Id.* at 102:7-10, 109:2-6. Plaintiff relied

on Dr. Shah's judgment in recommending the best chemotherapy regimen in order to give Plaintiff

the best chance of survival. *Id.* at 109:22-110:1. Plaintiff has never received any documents

directly or indirectly from Sanofi.  *Id.* at 242:21-24.  Plaintiff has also never contacted Sanofi.  *Id.*

at 242:25-243:1.

On January 6, 2015, Plaintiff began the Taxotere chemotherapy regimen. Ex. F, Mills Dep.

119:10-11; *see also* SFC at ¶ 10. Plaintiff's last dose of chemotherapy was administered on March

31, 2015. *Id.* 254:19-21; SFC at ¶ 10.

At her deposition, Dr. Shah testified that she continues to use the TCH regimen and would

still consider it for HER2 positive patients, like Plaintiff. Ex. D, Shah Dep. 19:7-13. If Plaintiff

had come in as a patient today, Dr. Shah would still recommend the TCH regimen because "it's

standard of care in this setting." Ex. D, Shah Dep. 43:4-13. Plaintiff elicited no testimony from Dr.

Shah on whether Dr. Shah would have recommended another chemotherapy regimen if a different

warning had been provided by Defendants in December 2014. While Dr. Shah did note that she

might also consider a new regimen today if requested by a patient, she would not have

recommended it for Plaintiff because it was not, at the time of Plaintiffs' treatment, the "standard

of care" for her cancer type. *Id.* at 111-112. Dr. Shah would have still made her recommendation

for the TCH regimen even if she assumed that Taxotere had a risk of permanent and total hair loss and she assumed that Ms. Mills would be interested in different treatments. *Id.* at 103-112.

## STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment initially bears the responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party can meet this burden by pointing out that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, the nonmoving party bears the burden of coming forward with evidence of each essential element of its claim, such that a reasonable jury could find in its favor. *Id.* The existence of a mere scintilla of evidence to the support the nonmoving party's position, however, will not defeat summary judgment; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). "The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *In re Trasylol Prods. Liab. Litig.*, No. 08-md-01928, 2010 WL 6098571, at *4 (S.D. Fla. Mar. 16, 2010).

## ARGUMENT

Plaintiff asserts the following claims: Count I-strict products liability-failure to warn; Count II-strict products liability for misrepresentation; Count III-negligence; Count IV-negligent misrepresentation; Count V-fraudulent misrepresentation; Count VI-fraudulent concealment; Count VII-fraud and deceit; Count VII-breach of express warranty (Sanofi Defendants only). *See*

Short Form Complaint ("SFC"), Doc. # 5 ¶ 13. Because causation is an essential element of each of those claims, and there is no genuine dispute regarding the absence of causation, the Court should grant summary judgment on all of Plaintiff's claims.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE-TO-WARN CLAIMS

### A. Georgia Law Governing Negligence and Strict Liability Failure to Warn Claims

Under Georgia law, to establish a claim for failure to warn, the plaintiff must show the defendant "had a duty to warn, that defendant breached that duty and the breach was the proximate cause of the plaintiff's injury." *Porter v. Eli Lilly & Co.*, No. 1:06-CV-1297-JOF, 2008 WL 544739, at \*9 (N.D. Ga. Feb. 25, 2008) (quoting *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999)). Proximate cause is a necessary element of Plaintiff's case whether she proceeds under a strict liability or a negligence theory. *Porter*, 2008 U.S. Dist. LEXIS 14273, at \*23-25. "'The defendant's conduct is not a cause of the event, if the event would have occurred without it.'" *Gen. Motors Corp. v. Davis*, 141 Ga. App. 495, 496 (1977) (quoting PROSSER, LAW OF TORTS 239 (4th ed. 1971), 239).

### B. The Court Should Grant Defendants Summary Judgment on Plaintiff's Failure-to-Warn Claims

Plaintiff's failure-to-warn claims under strict liability and negligence are based on Defendants' alleged failure to adequately warn of an alleged risk of permanent alopecia associated with Taxotere. *See generally* First Master Complaint ¶¶ 220-230; 239-246. To prevail on any of her claims under Georgia law, she must show that Defendants' failure to warn was a proximate cause of her injury. *Porter*, 2008 WL 544739, at \*9.

Georgia courts have recognized the learned-intermediary doctrine as a settled doctrine in cases involving prescription medications. *E.g., Presto v. Sandoz Pharm. Corp.*, 226 Ga. App. 547,

548 (1997). Under Georgia law, a drug manufacturer's duty to warn runs to the prescribing physician, not to the patient or to the general public. *See Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) (holding that under Georgia law "pharmaceutical companies have a duty to warn only the physicians who will be prescribing the drug to their patients because the physicians are the ones with the expert medical knowledge regarding the safety and proper use of a particular drug"); *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1321 (N.D. Ga. 2002) ("In Georgia, the duty to warn a patient of risks associated with prescription drugs (and implanted medical devices) rests, not with the manufacturer, designer, or distributor, but solely with the treating physician, because the decision to employ prescription medication involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular needs and susceptibilities."); *Presto*, 226 Ga. App. at 548 (concluding that "the manufacturer of a prescription drug is not normally required to directly warn the patient of dangers in its use because [o]rdinarily, in the case of prescription drugs, a warning as to possible danger in its use to the prescribing physician is sufficient") (internal quotation omitted).

"[T]his special standard for prescription drugs is an understandable exception to the general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. . . . As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient." *Presto*, 226 Ga. App. at 548-49. Accordingly, the proximate-cause analysis focuses on the actions of the prescribing physician and whether the alleged failure to warn affected her prescribing decision. Where the evidence shows that an additional or different warning would not have changed the prescribing decision, summary judgment is warranted. *See, e.g., Porter*, 2008 WL 544739, at *13 (holding that plaintiff could not

6

establish proximate cause for her causes of action of negligence, negligence per se, and strict liability because a different warning would not have impacted the treater's prescribing decision).

For example, in *Porter*, a wrongful-death case involving a prescription antidepressant product, the court granted summary judgment based on a lack of evidence of proximate cause where plaintiff failed to establish an issue of fact as to whether her deceased husband's doctor would have changed his decision to prescribe the product if defendant had provided additional or stronger warnings about the alleged risk. *Porter*, 2008 WL 544739, at *13. The court observed that plaintiff's prescriber testified "he would not have treated [decedent] with a different medication or in a different manner had he known of the risk of suicide to a small subpopulation of consumers (proffered by Plaintiff's expert) and which is apparently recognized by the more recent warnings." *Id.* at *11.

Summary judgment is warranted under Georgia law in a prescription medication failure-to-warn case where, as here, a plaintiff fails to introduce evidence that a different warning would have caused her treating physician to change her decision to prescribe the medication at issue. Courts around the country routinely grant summary judgment in prescription pharmaceutical and device cases where there is no evidence that a different warning would have changed the physician's prescribing decision. *See*, *e.g.*, *Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 2014 (5th Cir. 2008) (Texas law); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1024 (10th Cir. 2001) (Oklahoma law); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1004 (4th Cir. 1992) (South Carolina law); *Garrison v. Novartis Pharm. Corp.*, 30 F. Supp. 3d 1325, 1335 (M.D. Ala. 2014) (Alabama law); *D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 2d 880, 891 (D. Ariz. 2013) (Arizona law); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 902351, at *2 (E.D. Pa. Apr. 2, 2009) ("even assuming the warnings are inadequate, plaintiffs must show that a proper warning

would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Woulfe v. Eli Lilly & Co.*, 965 F. Supp. 1478, 1486 (E.D. Okla. 1997) (Oklahoma law). The prescribing physician's decision in such cases "breaks the causal chain as to the allegedly inadequate warnings." *Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1130 (D. Kan. 2002) (Kansas law).

Defendants are entitled to summary judgment because no evidence exists to establish a causal connection between the purported inadequacies with the warnings in Taxotere's label and Plaintiff's alleged injuries. Plaintiff's oncologist, Dr. Shah, testified that a label change would not have affected her decision to prescribe the life-saving TCH chemotherapy regimen to Plaintiff because the regimen remains the "standard of care in this setting." Ex. D, Shah Dep. 43:4-13. After Plaintiff began her chemotherapy regimen, an article in the New England Journal of Medicine suggested that a different chemotherapy regimen (i.e., weekly treatments with paclitaxel) could also be appropriate for small HER positive tumors. *Id.* at 102:1-103:1. While Dr. Shah might also consider this weekly paclitaxel regimen today if requested by a patient, she would not have recommended it for Plaintiff then because it was not "standard of care" at the time. *Id.* at 103:2-9; 109:1-21; 111-112. Moreover, the journal article on the regimen had not been published when Dr. Shah recommended and prescribed Plaintiff's chemotherapy plan. *Id.*

Just as it was when Plaintiff's oncologist prescribed Taxotere as part of her chemotherapy regimen, Taxotere remains the standard of care for women beset by breast cancer. Ex. D, Shah Dep. 18:2-19:13, 43. Presumably with this context in mind, Plaintiffs have failed to ask the women's doctors during discovery whether the labeling change would have altered the physician's prescribing decision. They have set aside the subject entirely or asked irrelevant questions about

whether the doctor would have "honored" a different patient choice or abstractly considered different options.

Such testimony, as in this case, fails to satisfy a plaintiff's burden of proof in a prescription drug case where they must show that a different warning would have changed the *doctor's* decision. *Porter*, 2008 WL 544739, at \*13. Intravenous chemotherapy medications, like Taxotere, are lawfully available in the United States on or by the order of a licensed physician only. Thus, a plaintiff is unable to establish a central element of all of her claims if (1) she avoided asking her prescribing doctor during discovery whether a different label would have upturned the doctor's prescribing decision, (2) or where the doctor affirmatively testified that she would make the same decision with the updated information, or (3) the Taxotere regimen would have remained in standard of care. To proceed past summary judgment, Plaintiff must adduce evidence that a different warning would have changed the course of care with a medicine that would have also eliminated her cancer. Plaintiffs, like Ms. Mills, who have not established the same in discovery may not proceed with their suits as a matter of law. *See Porter*, 2008 WL 544739, at \*13; *see also Miller*, 196 F.Supp.2d at 1130 (prescribing physician's decision "breaks the causal chain as to the allegedly inadequate warnings."). Accordingly, the Court should grant Defendants summary judgment on Plaintiff's claims for failure to warn under strict product liability and negligence.

III.   **SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S ADDITIONAL CLAIMS**

Under Georgia law, the "'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs." *Catlett*, 379 F. Supp. 2d at 1381.  Accordingly, the learned-intermediary doctrine requires dismissal of Plaintiff's remaining claims for negligent

misrepresentation, fraudulent misrepresentation, fraudulent concealment, fraud and deceit, and breach of express warranty. SFC ¶ 13.

Moreover, each of those claims fails for the following additional reasons:

## A.    Georgia Does Not Recognize Fraudulent or Negligent Misrepresentation as Distinct from Failure to Warn in the Personal-Injury Context.

Under Georgia law, courts have been unwilling to recognize that a misrepresentation claim for products liability is distinct from a failure-to-warn claim. *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1340 (N.D. Ga. 2016); *see also Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1357 (N.D. Ga. 2008) ("[M]isrepresentation claims against a manufacturer properly collapse into the failure to warn claims."). Because Plaintiff's action alleging personal injury based on her treatment of cancer with Taxotere does not involve an alleged negligent misrepresentation distinct from her failure-to-warn claim, the Court should grant Defendants summary judgment on Plaintiff's negligent-misrepresentation claim.

## B.    Plaintiff's Fraud-Based Claims Should Also Be Dismissed Because There Is No Evidence Plaintiff Relied on Any Representations by Defendants.

Plaintiff asserts causes of action for fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. Each of these causes of action requires the plaintiff to prove, among other elements, that Defendants made a misrepresentation to Plaintiff and Plaintiff relied on that representation. "A plaintiff asserting a fraud claim under Georgia law must establish five elements: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff, and (5) damage to the plaintiff." *Brazil*, 249 F. Supp. 3d at 1339.

Plaintiff cannot satisfy the representation or reliance elements of these causes of action. There is no evidence that Defendants made any express statement or representation directly to Plaintiff, nor that Plaintiff relied upon any such alleged statement. To the extent Plaintiff's fraud-

based claims are based on an alleged non-disclosure, *i.e.*, fraudulent concealment, these claims fail because Defendants had no duty to speak unless Plaintiff made a direct inquiry. *Swicegood*, 543 F. Supp. 2d at 1359 (noting that under Georgia law a "claim for concealment is recognized when one makes a direct inquiry to a defendant and the defendant evades the truth"). But Plaintiff never received any document from Sanofi—let alone made any direct contact with Sanofi. Ex. F, Mills Dep. 242:21-243:1. Defendants are entitled to summary judgment on Plaintiff's fraudulent misrepresentation, fraudulent concealment, and fraud and deceit claims.

C. **Plaintiff Has Not Established the Elements of Her Express Warranty Claim.**

To maintain a claim for breach of express warranty, Plaintiff must prove (1) the existence of a warranty, (2) material breach of the warranty, (3) the breach caused the damages. *U.S. Faucets, Inc. v. Home Depot U.S.A. Inc.*, No. 1:03-cv-1572-WSD, 2006 WL 1518887, at *10 (N.D. Ga. May 31, 2006). An express warranty is an "affirmation of fact or promise" relating to the goods that became "part of the basis of the bargain." O.C.G.A. § 11-2-313(1)(a). Plaintiff's breach of express warranty claim fails because, as discussed above, Plaintiff cannot satisfy the causation requirement. Nor is there any evidence that Defendants made any express statement directly to the Plaintiff that could have become "part of the basis of the bargain." Indeed, Plaintiff concedes she received no document from Defendants, nor did she make any contact with Defendant. Ex. F, Mills Dep. 242:21-243:1. As such, this Court should grant summary judgment on Plaintiff's breach of express warranty.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment on all of Plaintiff's claims.

Date:  January 7, 2019

Respectfully submitted,

 /s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*