**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Deborah Johnson*
Case No. 16-15607

---

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**ON STATUTE OF LIMITATIONS GROUNDS**
**AGAINST PLAINTIFF DEBORAH JOHNSON**

---

Defendant sanofi-aventis U.S.  LLC ("Sanofi") hereby submits this Statement of

Undisputed Material Facts in Support of its Motion for Summary Judgment, pursuant to

Local Rule 56.1:

*Background*

1.      Plaintiff Deborah Johnson was born on March 26, 1957, in New Orleans.  *See*

Deborah Johnson Fifth Amended Plaintiff Fact Sheet ("PFS") § II.15.

2.      Ms. Durden is an African American woman.  *See* PFS § I.20.

3.      She married in 1976, but immediately separated.  *See* PFS § II.3.

4.      She had two children.  *See* PFS § IV.7.

5.      Ms. Johnson at times worked as a Certified Nursing Assistant ("CNA"), but

was unemployed at the time of her diagnosis with cancer in 2010.  *See* Dep. Tr. at

154:3–154:15; 203:16–204:4 (Nov.  30, 2017).

6.      Ms. Johnson filed suit against Sanofi on October 14, 2016.  *See* PFS § I.4.

7.      She alleges injuries resulting from her use of Taxotere in 2010.  *See* First

Amended Master Long Form Complaint (Rec. Doc. 689) ("AMC") at ¶ 8; Amended Short

1

Form Complaint (No. 2:16-cv-15607, Rec. Doc. 8) ("SFC") at ¶ 10.

8.     The Food and Drug Administration (FDA) first approved Taxotere in 1996. AMC at ¶ 123.

9.     Plaintiffs in this MDL completed treatment with Taxotere as far back as 1998. *See, e.g.*, Patricia Hollis Complaint ¶ 305 (treatment September 1998); Carol Ford Complaint ¶ 95 (same); Carolyn Purdue Complaint ¶ 55 (1999); Annie Marbury Complaint ¶ 95 (same).

10.    Ms. Johnson alleges that she suffered permanent, irreversible, disfiguring hair loss beginning with her Taxotere treatment in 2010.  *See* SFC at ¶ 12; PFS §§ VI.5, VII.3.

11.    Per Ms. Johnson, she suffered this injury continuously from 2010 to the present.  *See* PFS § VI.5.

12.    Per Ms. Johnson, she did not seek treatment for this injury from 2010 to the present.  *See* PFS § VI.6.

13.    From 2011 to present, Ms. Johnson continuously believed that her hair would not grow back.  *See* Dep. Tr. 313:9–313:21.

14.    Ms. Johnson has never discussed her hair loss with any healthcare provider. *See* PFS § VII.5.

15.    Ms. Johnson has never undergone a biopsy, blood test, or hormone testing to evaluate her hair loss or its cause.  *See* PFS § VII.6, "Hair Loss History."

16.    From 2011 to present, she continuously believed that chemotherapy had caused her hair loss.  *See* Dep. Tr. 314:5–314:8.

17.    Ms. Johnson did not file a report with the FDA about her alleged injury.  *See* PFS § VI.17.

18.    She had no communications with Defendants or their representatives.  *See* PFS § VI.15.

19.     In April 2011, "She inquired about receiving disability secondary to her neuropathy." Her medical oncologists ". . .told her that if this is persistent, then we will assist her with that in whatever way that we can, although [they were] hesitant to do so now as she still seem[s] to be able to maintain her activities of daily living." INFUSION PHARMACY University Medical Center New Orleans ("UMCNO") 00165–67.[1]

20.     Ms. Johnson separately filed for federal disability based on her pain following breast cancer surgery, and has been on disability ever since. *See* PFS § II.12.

21.     Disabled, Ms. Johnson is not employed and is not making a claim for lost wages of lost earning capacity. *See* PFS § II.5, 7.

22.     Ms. Johnson does not claim that she incurred any medical expenses for the alleged injury that she claims was caused by Taxotere. *See* PFS § VI.20.

23.     Ms. Johnson claims that her use of Taxotere caused or aggravated a psychiatric or psychological condition, but she sought no treatment for the same. *See* PFS § V.18–19.

24.     Where noted in 2011, 2012, and thereafter, Ms. Johnson's stress and depression is consistently attributed to her family situation and left shoulder or arm pain. *See, e.g.*, UMCNO 00244–46; Tulane Cancer Center Clinic 22–25.

25.     The only monetary damages alleged by Ms. Johnson are for wigs ($200.00) and scarves ($100.00). *See* PFS § VI.26.

26.     Today, Ms. Johnson is 60 years old. *See* PFS § IV.1.

27.     She is cancer free. *See* PFS § VI.2.

28.     At her deposition, she testified that she could not rule out that her chemotherapy regimen played a significant role in the fact that she is still alive today. *See*

---

[1] Ms. Johnson's medical records referenced herein are attached as **Exhibit G**.

Dep. Tr. 314:16−315:5.

29.     She could not say that she would not take Taxotere again, despite the alleged risk of permanent hair loss.  *See* Dep. Tr. 314:16−315:5.

30.     She stated that if Dr. Brian Lewis, her prescribing oncologist, told her that she needed to take the same treatment regimen again, knowing that she would lose her hair and that it might not grow back, she would still take the medicine again.  *See* Dep. Tr. 314:16−315:5.

31.     She agreed that Taxotere and her chemotherapy regimen is likely a reason she is alive and was able to be present at the deposition.  *See* Dep. Tr. 314:16−315:5.

### *Discovering She Had Breast Cancer*

32.     Ms. Johnson's family has a long history of cancer and chemotherapy.  Her older sister was diagnosed with thyroid cancer in the early 1970s, went through chemotherapy, and lost her hair as a result.  *See* Dep. Tr. 124:12−128:20.

33.     Her younger sister was diagnosed with bone cancer in 2005, went through chemotherapy, and lost her hair as a result.  *See* Dep. Tr. 142:20−144:24.

34.     Her father was diagnosed with full-body cancer in 2006 and went through chemotherapy while Ms. Johnson was out of state.  *See* Dep. Tr. 107:16−107:25.

35.     Ms. Johnson's sister was diagnosed with breast cancer at age 49.  *See* PFS § IV.13.

36.     Ms. Johnson's maternal grandmother was diagnosed with breast cancer at age 47.  *See* PFS § IV.13; Dep. Tr. 145:7−146:1.

37.     In the four years immediately preceding her diagnosis of breast cancer, her father and sister had died of cancer.  *See* Dep. Tr. 143:15−143:21; 144:1−144:6.  Her maternal grandmother also died of cancer.  *See* Dep. Tr. 145:7−146:1.

38.     Ms. Johnson's past medical history included menorrhagia with uterine fibroids, hypertension, obesity, and right shoulder injury with decreased range of motion. *See* UMCNO 00019–22, 00024–26.

39.     Her surgical history included bilateral tubal ligation, tonsillectomy, and left pneumothorax with chest tube placement.  *See* UMCNO 00046–49, 00019–22; Sanjeeva Reddy 44–45.

40.     Deborah Johnson was 53 years old in 2010.  *See* PFS § IV.9.

41.     After her father and sisters passed, Ms. Johnson grew very concerned about getting cancer and was afraid she would be next.  *See* Dep. Tr. 210:10–210:25.

42.     She became diligent about checking for signs of breast cancer.  *See* Dep. Tr. 210:3–211:4.

43.     In the spring of 2010, she discovered a lump in her breast during a routine self-examination.  *See* Dep. Tr. 209:14–210:13.

44.     She immediately believed the lump was cancerous, and went to the doctor for examination and diagnosis.  *See* Dep. Tr. 211:5–211:10.

45.     By May 12, 2010, Ms. Johnson had felt a breast lump for a couple of weeks. On that day, she underwent biopsy of her left breast.  *See* UMCNO 00286–287.

46.     Her pathology showed left breast invasive ductal carcinoma, diagnosed as T2, N1, M0, HER2/neu negative, ER positive, and PR negative.  *See* UMCNO 00257–259.

47.     Ms. Johnson underwent left modified radical mastectomy with MediPort placement on June 25, 2010 by Dr. Jane Wey.  *See* UMCNO 00028–32.

48.     Ms. Johnson developed complications following surgery.  *See* UMCNO 00051–53.

49.     On July 19, 2010, Ms. Johnson's medical oncologists, Drs. Brian Lewis and

Marianne Barnhill, recommended chemotherapy after evaluation for radiation.  *See* UMCNO
00046–49.

50.     Her radiation oncologist, Dr. Stephen Kraus, saw Deborah Johnson for
consultation on July 22, 2010 and he recommended post-chemotherapy radiation.  *See* Tulane
Cancer Center Clinic 42–44.

51.     Ms. Johnson was treated with Taxotere every three weeks for six cycles from
August 12, 2010 to December 30, 2010.  *See* SFC at ¶ 10; PFS § V.12.

### How She Lost Her Hair

52.     Once a month from 2004 to 2010, Ms. Johnson had her hair braided.  *See* PFS
§ VII.13.

53.     Ms. Johnson's hair loss began during chemotherapy treatment, after her
treatment with Taxotere.  *See* PFS § VII.2–3.

54.     Ms. Johnson testified that all of her hair fell out the very first night of her very
first chemotherapy treatment.  *See* Dep. Tr. 298:24–292:20.

55.     She woke up the next morning to discover that her hair was all over her pillow,
and by the end of the day her head was "slick" and "bald."  *See* Dep. Tr. 327:21–329:4.

56.      She stated that it remained this way throughout her chemotherapy treatment.
*See* Dep. Tr. 299:9–300:1; 327:21–329:4.

57.     At the time she verified her PFS in this case, she had had alopecia or
incomplete hair regrowth since August 2010.  *See* PFS § VII.23.

58.     Describing how her hair care regimen changed after cancer, she wrote "I used
to have a lot of hair to care for.  Now I don't."  PFS § VII.15.

59.     Ms. Johnson began wearing a wig to conceal her hair loss in August 2010.
*See* PFS § VII.25–26.

### *When She Knew Her Hair Had Not Grown Back*

60.     Ms. Johnson expected her hair to start re-growing when she began radiation in early 2011 (after completing chemotherapy in November 2010), but it did not.  *See* Dep. Tr. 273:19–274:5; 279:5–280:3; 307:22–309:11.

61.     She said that by the end of her radiation therapy in February 2011, she knew that her hair was never going to grow back—and she was just "one of the unlucky ones."  *See* Dep. Tr. 278:2–278:10; 307:22–308:18.

62.     In particular, when her physical therapy ended, and she was once again mobile, she admitted that she still didn't seek treatment for the hair loss—and instead repeated that she was just "one of the ones that was unlucky, and it just wasn't coming back."  *See* Dep. Tr. 313:1–313:21.

63.     She also testified that there was nothing she could do about her hair loss and she knew it would not grow back.  *See* Dep. Tr. 313:9–313:21.

### *What She Did and Did Not Do to Seek Medical Care*

64.     Deborah Johnson had years-long breaks in medical oncology and radiation oncology follow up.  *See* Tulane Cancer Center Clinic 13–15.

65.     She did not see a medical oncologist from December 2012 until November 2016.  *See* Tulane Cancer Center Clinic 13–15.

66.     She saw Dr. Kraus in March 2013, but did not see another radiation oncologist until November 2016.  *See* Tulane Cancer Center Clinic 13–15.

67.     In March 2013, her radiation oncologist observed "Has no [showed] several followups.  Does understand how central these followups are and assures me that she will be compliant from now on."  *See* Tulane Cancer Center Clinic 18–21.

68.     Intervening medical records describe poor diet, weight gain, diagnosis with

type II diabetes in September 2013, and chronic opioid use from May 2012 until March 2016. *See, e.g.*, JenCare Senior Medical Center 15–16, 24–25, 86–87, 89–90; Tulane Cancer Center Clinic 22–25.

69.     Ms. Johnson self-reports that she went in for her annual mammogram in 2010, 2011, 2012, 2013, 2014, 2015, and 2016.  *See* PFS § IV.12.

70.     Ms. Johnson self-reports that she went in for annual gynecological examinations in 2010, 2011, 2013, and 2015.  She skipped her annual examination in 2012 and 2014.  *See* PFS §IV.11.

71.     In the intervening years, Ms. Johnson also saw healthcare providers for various other skin and foot care issues.  *See, e.g.*, JenCare Senior Medical Center 44, 63, 73.

72.     Ms. Johnson experienced skin issues on her chest wall during radiation treatment from January 2011 to February 2011.  *See* Tulane Cancer Center Clinic 31–35.

73.     The hyperpigmentation of her chest wall was noted by her primary care physician in March 2013.  *See* JenCare Senior Medical Center 11–13.

74.     In July 2015, her primary care physician noticed keratitis pilaris on her arms and prescribed her Lac-Hydrin 12%.  *See* JenCare Senior Medical Center 63, 73.

75.     From March 2011 to May 2017, Ms. Johnson had notable fungal foot infections or tinea pedis, treated with various medications.  *See* UMCNO 00202–203, JenCare Senior Medical Center 117–119.

76.     In July 2014, a podiatrist saw Ms. Johnson for fungal toenail infection.  *See* JenCare Senior Medical Center 44.

77.     In October 2014, the podiatrist treated her for xerosis and prescribed Lac-Hydrin 12% twice daily.  *See* JenCare Senior Medical Center 50.

78.     Ms. Johnson takes four prescription medications daily including Norvasec, 10

mg; Hydrochlorothiazide, 12.5 mg; Lisinopril, 20 mg; and Gabapentin.  *See* PFS §IV.21; Dep. Tr. 9:14−9:25; JenCare Senior Medical Center 178–183.

79.     For these issues and her disability-related pain, she frequently seeks medical care.  *See, e.g.*, Tulane Cancer Center Clinic 7–9; JenCare Senior Medical Center 117–119; JenCare Senior Medical Center 120–122; JenCare Senior Medical Center 176–177.

80.     Ms. Johnson has never sought medical care for the injury she alleges in this lawsuit.  *See* PFS § VI.6; Dep. Tr. 313:1−313:21.

### *Ms. Johnson Knew Taxotere Carried the Risk of Hair Loss Before Her Treatment*

81.     Ms. Johnson was prescribed Taxotere by Dr. Brian Lewis in August 2010. *See* PFS § V.13.

82.     Prior to receiving treatment with Taxotere in 2010, Ms. Johnson was warned that hair loss was a side effect associated with Taxotere.  *See* Dep. Tr. 304:19−305:21.

83.     The Taxotere product label in effect when Ms. Johnson was prescribed Taxotere stated that hair loss is associated with Taxotere administration.  *See* AMC at ¶ 134; Sanofi_000623.[2]

84.     The Taxotere product label in effect when Ms. Johnson was prescribed Taxotere stated that hair loss is one of the most common side effects of Taxotere.  *See* AMC at ¶ 134; Sanofi_000626.

85.     The Taxotere product label in effect when Ms. Johnson was prescribed Taxotere stated that alopecia is one of the most common adverse reactions across all Taxotere indications.  *See* Sanofi_000566; Sanofi_000580.

86.     On August 2, 2010, Ms. Johnson received Micromedex patient information handouts for each of the chemotherapy drugs that she was prescribed, identifying hair loss as

---

[2] Sanofi documents referenced herein are attached as **Exhibit H**.

a risk of treatment.  *See* UMCNO 00036; Dep. Tr. 254:16−254:18.

87.     On August 9, 2010, Dr. Brian Lewis discussed the risk of hair loss associated with chemotherapy treatment with Ms. Johnson.   *See* UMCNO 00071−72; Dep. Tr. 266:5−267:17.

88.     Ms. Johnson had personally observed her sisters, Rosemary and Imelda, lose their hair during chemotherapy treatment, and she understood that the hair loss was a result of chemotherapy treatment.  *See* Dep. Tr. 128:3−129:3; 133:3−133:16.

89.     Ms. Johnson was subjectively aware that hair loss was a risk of chemotherapy prior to her treatment.  *See* Dep. Tr. 255:25−259:3.

### *Ms. Johnson Knew That Taxotere Caused Her Hair Loss When It Happened*

90.     Ms. Johnson received six cycles of Taxotere in combination with Adriamycin and Cyclophosphamide from August 12 to December 30, 2010.  *See* PFS § V.12.

91.     Ms. Johnson first experienced hair loss during her chemotherapy treatment, specifically after her treatment with Taxotere.  *See* PFS § VII.2−3.

92.     All of Ms. Johnson's hair fell out after her first cycle of treatment with Taxotere.  *See* Dep. Tr. 292:15−292:18; 298:18−298:24.

93.     Ms. Johnson was aware that her hair fell out on the day it fell out.  *See* Dep. Tr. 292:7−292:20.

94.     Ms. Johnson was aware that her hair loss was a result of her chemotherapy treatment.  *See* Dep. Tr. 298:18−298:21.

95.     On November 4, Ms. Johnson was treated by nurse Debbie Jarrett, who recorded that Ms. Johnson had "chronic hair loss secondary to chemo."  *See* UMCNO 00113−14.

96.     On November 30, Ms. Johnson signed a written consent form listing risks of

her chemotherapy treatment, including the risk of hair loss.  *See* UMCNO 00503–05.

97.   Ms. Johnson understood that the risks she consented to, including the risk of hair loss, were present from the time of her treatment to two, three, four, five, six, seven years down the line.  *See* Dep. Tr. 268:19–269:8.

98.   After her hair fell out, Ms. Johnson continued to receive chemotherapy treatments, despite knowing that her hair loss was the result of her chemotherapy treatment. *See* Dep. Tr. 299:9–301:1.

99.   Ms. Johnson "just figured [she] would still take the risk" of her hair not growing back.  *See* Dep. Tr. 299:18–301:1.

### *In 2011, Ms. Johnson Believed Her Hair Loss Was Permanent and Caused By Chemo*

100.   Ms. Johnson alleges that her hair never returned after treatment with Taxotere. AMC at ¶ 6.

101.   Ms. Johnson alleges that she has suffered permanent/persistent hair loss on her scalp, diffuse thinning of her hair on her total scalp, significant thinning of the hair on her head, a large bald area in the hair on her head, multiple bald spots in the hair on her head, permanent/persistent loss of her genital hair, permanent/persistent loss of her eyelashes, and change in the texture, thickness, or color of her hair after Taxotere treatment, from 2010 to the present.  PFS § VI.5, § VII.23.

102.   Ms. Johnson has believed that her hair loss resulted from chemotherapy from 2010 to the present.  *See* Dep. Tr. 314:5–314:8.

103.   After completing her chemotherapy treatment, Ms. Johnson underwent radiation therapy from January 5, 2011 to February 24, 2011.  *See* Tulane Cancer Center Clinic 30.

104.   During her radiation therapy, Ms. Johnson observed another woman who had

undergone chemotherapy treatment, and whose hair was growing back.  *See* Dep. Tr. at 275:1–277:3.

105.   Ms. Johnson had previously observed her sisters' hair grow back after chemotherapy.  *See* Dep. Tr. 128:15–128:20; 194:22–195:17.

106.   When Ms. Johnson's hair did not grow back after her chemotherapy treatment, she became very concerned.  *See* Dep. Tr. 307:13–307:18.

107.   By the time of her last radiation treatment in February 2011, Ms. Johnson had concluded that her hair was not going to grow back.  *See* Dep. Tr. 307:13–309:11.

108.   Ms. Johnson did not think anything other than chemotherapy had caused her hair not to grow back.  *See* Dep. Tr. 307:13–307:21.

109.   By February 24, 2011, Ms. Johnson was on notice that she had suffered persisting or permanent hair loss, and that her persisting or permanent hair loss was caused by Taxotere.  *See* Dep. Tr. 307:13–309:11.

110.   Ms. Johnson defines permanent hair loss as an absence of or incomplete hair regrowth six months after completion of chemotherapy.  *See* AMC at ¶ 180.

111.   On June 30, 2011, six months had passed since Ms. Johnson had completed chemotherapy.  *See* SFC at ¶ 10.

112.   By June 30, 2011, Ms. Johnson was on notice that she had suffered persisting or permanent hair loss, and that her persisting or permanent hair loss was caused by Taxotere.  *See* SFC at ¶ 10; Dep. Tr. 307:13–309:11; 313:9–313:21.

113.   From 2011 to present, Ms. Johnson has continued to believe that her hair would not grow back.  *See* Dep. Tr. 313:9–313:21.

114.   From 2011 to present, Ms. Johnson has continued to believe that her hair loss was caused by chemotherapy.  *See* Dep. Tr. 314:5–314:8.

115.    Ms. Johnson alleges that her hair loss acts as a permanent reminder of her cancer and treatment.  *See* AMC at ¶ 6.

***Ms. Johnson Did Nothing to Investigate Her Potential Claim Then or Before Filing Suit***

116.    In December 2015, Sanofi added a statement to the "Post-Marketing Experiences" section of the label: "Cases of permanent alopecia have been reported." AMC ¶ 138.

117.    Ms. Johnson filed the instant lawsuit on October 14, 2016.  *See* PFS § I.4.

118.    Ms. Johnson alleges that her hair loss symbolizes cancer identity and treatment for herself and others.  *See* AMC at ¶ 215.

119.    Ms. Johnson did not attempt to determine which chemotherapy agent caused her alleged hair loss from 2011 to 2016, when she filed suit.  *See* Dep. Tr. 313:9–314:1.

120.    Ms. Johnson did not discuss whether Taxotere caused or contributed to her injury with any healthcare provider from 2011 to 2016.  *See* PFS § VI.8.

121.    Ms. Johnson did not seek a diagnosis for her hair loss between 2011 and 2016. *See* PFS § VI.7.

122.    Ms. Johnson did not seek treatment for her hair loss between 2011 and 2016. *See* PFS § VI.6; Dep. Tr. 313:1–313:21.

123.    Ms. Johnson has never discussed her hair loss with any healthcare provider. *See* PFS § VII.5.

124.    Ms. Johnson has never undergone a biopsy, blood test, or hormone testing to evaluate her hair loss or its cause.  *See* PFS § VII.6, "Hair Loss History."

125.    From 2005 to 2014, medical literature and media reports alleging a causal link between Taxotere and persisting hair loss were publicly available.  *See* AMC at ¶¶ 148–161, 179–186.

126.     When she filed suit on October 14, 2016, Ms. Johnson did not have a belief as to which chemotherapy agent had caused her hair loss.  *See* Dep. Tr. 314:9−314:15.

127.     Ms. Johnson filed her lawsuit in 2016 with the same knowledge regarding her injury and its alleged cause that she had in 2011.  *See* SFC at ¶ 10; Dep. Tr. 307:13−309:11; 313:9−314:15.

128.     When she testified at deposition on November 30, 2017, Ms. Johnson did not know which chemotherapy agent had caused her hair loss.  *See* Dep. Tr. 314:9−314:15.

129.     Ms. Johnson testified that from 2011 to 2017, she continuously believed that chemotherapy had caused her hair loss.  *See* Dep. Tr. 314:5−314:8.

130.     Today, she could not say that she would not take Taxotere again, despite the risk of permanent hair loss.  *See* Dep. Tr. 314:16−315:5.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*