UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:
Durden v. Sanofi S.A., et al., 16-16635

### MEMORANDUM IN REPLY TO SANOFI'S OPPOSITION TO PLAINTIFF ANTOINETTE DURDEN'S MOTION TO ENFORCE CMO 12A

MAY IT PLEASE THE COURT:

Plaintiff Antoinette Durden respectfully submits this reply memorandum in response to Sanofi's memorandum in opposition to her Motion to Enforce CMO 12A (Rec. Doc.5728).

In opposing Ms. Durden's motion, Sanofi clearly and undeniably views the "Amended Product Identification Order" (i.e., CMO 12A and its predecessor, CMO 12 ("Product Identification Order")) in this MDL as one-sided: "[t]he purpose of the Order is to secure dismissals of improperly-named defendants when certain evidence of product identification is submitted." Sanofi Br. 2. Respectfully, these Product Identification Orders were entered not just as a means for Defendants to obtain dismissals; rather, and more importantly, they were entered to address an MDL-wide issue of identification of the manufacturer of a Plaintiff's docetaxel product and to provide a uniform procedure for obtaining this information for each and every MDL case. Indeed, in entering the order, the Court recognized that Defendants should assist in this process and that certain categories of documents (i.e., a patient's medical, pharmacy, billing or insurance

records which contain NDC numbers) are sufficient to create a strong evidentiary finding of "affirmative evidence" in support of manufacturer identification.[1]

In this MDL, the likelihood is slim, if not impossible, that any Plaintiff will be able to call to the stand the chemotherapy nurse who actually administered the medication to a particular Plaintiff years ago and can testify to the exact manufacturer of the chemotherapy product he or she administered to the Plaintiff. This burden of proof is unrealistic in any pharmaceutical litigation. Likewise, it is unlikely that any Plaintiff will be able to call the chemotherapy facility pharmacy witness who can certify (1) what docetaxel products were on hand on any specific date; (2) to which nurse they handed the docetaxel product that was administered to a patient; or (3) what products were actually administered (since that pharmacy witness probably was not standing there personally watching each dose infused into the patient). For these reasons, CMO 12A exists to allow the Court to evaluate whether the Plaintiff has met her burdens under the Order and also to evaluate whether the Defendant has produced sufficient "contrary evidence" to negate the presumption that CMO 12A bestows on a Plaintiff.

These docetaxel products were never in any Plaintiff's possession; rather, they must rely on their cancer treatment facility's record-keeping of the chemotherapy agents administered to them. Contemporaneously recorded and certified medical records and medical billing records produced by a non-party are recognized not only as sufficient for the purposes of obtaining the "affirmative evidence" presumption provided by CMO 12A, but also have a historical significance and gravitas in terms of relative evidentiary quality as opposed to non-contemporaneous affidavit

---

[1] It bears mentioning that the Defendants rely on this evidence to argue for and obtain a dismissal *with prejudice* from a case; but, when faced with a trial, Defendants now believe a higher standard of proof must be met, suggesting that Plaintiff must find the actual chemotherapy nurse to testify as to the particular drug he or she administered. Such a view would effectively render the central purpose behind CMO 12A (i.e., "Product Identification") meaningless.

statements secured at a litigant's request. One only must look to the Federal Rules of Evidence to find this pillar of our civil justice framework. *See*, *e.g.*, Fed. R. Evid. 803, 902; *Sheppard v. Liberty Mut. Ins. Co.*, No. CV 16-2401, 2017 WL 480601, at *4 (E.D. La. Feb. 2, 2017) (Vance, J.).

> **I.    The Affidavit of Neil Hunter is Speculative and Provides Insufficient Evidence to Vitiate the Presumption in CMO 12A.**

Sanofi's primary basis for challenging the multiple medical and insurance records, which affirmatively set forth NDCs in satisfaction of CMO 12A, para. 6(a), are the untested, arguably hearsay statements of Neil Hunter. Mr. Hunter's certification dated October 11, 2018 and Affidavit dated November 6, 2018 provide nothing more than a speculative analysis with arbitrary cutoffs.

For example, Sanofi places large importance on the fact that Ochsner had not purchased within 7-8 months of Ms. Durden's treatment the NDC codes which its own records (and Louisiana Medicaid's records) document as the NDCs for products administered to Ms. Durden. His certification arbitrarily (Exhibit 1 to Sanofi. Br.) cuts off the purchase history at March 2011, only 7 months prior to her first administration. Why was that date chosen? Because, prior to March 2011, only Sanofi docetaxel products could have been purchased because their exclusive patent period ran until March 8, 2011. *See* CMO 12A, ¶6(c). More concerning is that Mr. Hunter's certification and affidavit completely disregard and do not address the fact that the shelf life of the products identified is 18-24 months. *See* Exhibit A, Taxotere Shelf-Life Information. Furthermore, the certification and affidavit completely disregard the information attached to Mr. Hunter's affidavit which show numerous purchases by Ochsner within 18-24 months of Ms. Durden's administration of the very NDC codes of Sanofi attributed to her treatment by Ochsner's own business records.

What Mr. Hunter's certification and affidavits state is not nearly as important as what they do not state. Sanofi does not claim that he has personal knowledge of the products administered to Ms. Durden. Rather, Mr. Hunter provides a listing of "*possible* docetaxel administered for this patient." Hunter Aff., ¶12 (Rec. Doc. 5728-2) (emphasis added). Mr. Hunter says nothing about the hundreds of doses of the docetaxel purchased by Ochsner within 18-24 months of Ms. Durden's administration that match the NDC codes administered to Ms. Durden. (Rec. Doc. 5518-9, Lines 816-997). Also noticeably absent is an affirmative statement from Mr. Hunter that he has personal knowledge that the NDC codes that match those in Ms. Durden's patient-specific, contemporaneous records from Ochsner and Molina were not on the shelf at Ochsner and available to be used.[2] Rather, Sanofi relies on Ochsner's lawyers' statement that "there are four (4) possible manufacturers" without any certified discovery response or other explanation. Mr. Hunter's statements, despite not having been addressed through cross examination, simply are not contrary evidence of the NDC proof submitted by Ms. Durden, nor do they "rule out" the products Ochsner's and Molina's contemporaneous medical and billing records document Ms. Durden received.

Defendants have had months to obtain affidavits such as Mr. Hunter's in an attempt to call into question manufacturer proof the first trial Plaintiff in this MDL; whereas, Plaintiffs are required to dismiss in short order all defendants not identified by that very information that Sanofi attacks in this instant motion, i.e., a statement from a health care professional (Ochsner) and a business charged with obtaining payment for medical services (Molina). To allow such speculative, loophole-ridden and possibly hearsay evidence to be deemed sufficient "contrary

---

[2] As a practical matter, pharmacies generally use older vials of medication first so that they don't expire prior to administration. Mr. Hunter makes no attempt at estimating the number of months of products on the shelf that Ochsner maintains at any given time.

evidence" to remove Ms. Durden as the primary trial plaintiff for this MDL's first bellwether trial would not only limit the effectiveness of CMO 12A, but it would also call into question the dismissals *with prejudice* of defendants in thousands of cases where "Phase I discovery" is not complete.

**II. Sanofi's Reliance on Exhibit 3 to Its Opposition is Misplaced and Ignores Evidence Sufficient to Meet CMO 12A that was Obtained *After* Exhibit 3.**

Sanofi relies on Exhibit 3 to its brief, without acknowledging the NDC proof obtained after Exhibit 3's March 5, 2018 date, which provides NDC codes from both Ochsner and Molina Medicaid Solutions identifying Sanofi as the manufacturer of the Taxotere products administered to Ms. Durden. *See* Pl. Ex. A (Rec. Doc. 5518-2, dated 10/5/18), B (Rec. Doc. 5518-3, dated 10/25/18), and C2 (Rec. Doc. 5518-5) (each of which confirm billing by Ochsner for, and payment by Medicaid for, the sanofi NDC codes, 7500120 and 75800180).

**III. Sanofi's Challenges to the Reliability of Plaintiff's Evidence are Inconsistent with the Specific Categories of Documents that CMO 12A Define are Sufficient to Obtain the "Affirmative Evidence" Designation set forth in CMO 12A.**

Despite CMO 12A's definition of what types of documents are needed to acquire a presumption of manufacturer identification, Sanofi takes the position that documents fitting this definition, and submitted by Ms. Durden, are not reliable. This is particularly curious as Sanofi agreed to the sufficiency of these documents when CMO 12A was submitted by the parties to the Court. Such a position is directly contrary to the fact that such documents, maintained contemporaneously and created and kept within the ordinary course of these non-parties' businesses both meet the directives of CMO 12A and are presumed not hearsay and authentic.

The "Claim Form" documents attached to Ochsner's response to the 30(b)(6) notice directly contradict the written response and document production that Ochsner's counsel provided

in response to the 30(b)(6) notice. Rec. Docs. 5518-4, 5518-5. Indeed, the Claim Form documents are supportive of the billing proof in other Ochsner and Molina records. Plaintiff does not know why the "creation date" of the document is last month; however, it is presumed that an electronic system printed those forms from a database on that date. If the documents were in fact "created" in December of 2018, then why would Ochsner yet again certify that the Taxotere products administered to Ms. Durden and billed to Louisiana Medicaid were Sanofi products if in fact, as Sanofi suggests, Ochsner cannot determine the manufacturer? The answer is simple. Ochsner, without question, billed Louisiana Medicaid for administering Sanofi manufactured Taxotere products to Ms. Durden; and, Ochsner has no additional information, nor has Sanofi produced any additional information, which suggests that these submissions were made in error. Mr. Hunter's speculative affidavit recounting what drugs were purchased during an arbitrary time period, and not what drugs were actually in stock within the pharmacy at the time of Ms. Durden's Taxotere treatments, is insufficient "evidence" to contradict Ms. Durden's contemporaneous billing record submissions made subject to the Deficit Reduction Act of 2005. Rec. Doc. 5518-1, p.6-8.

Plaintiff certainly does not allege that a Molina witness has personal knowledge of the actual docetaxel products administered to Ms. Durden. Direct evidence by an eyewitness of the actual manufacturer of the docetaxel product administered to any Plaintiff is like a needle in a haystack. Molina's affirmative and contemporaneously made insurance records that contain NDC codes are the "best evidence" of infusion of Sanofi's Taxotere. This is the exact type of document contemplated by CMO 12A and, upon which many Plaintiffs in the MDL rely both to meet the requirements of CMO 12A, ¶6(a) and to dismiss *with prejudice* defendants not identified by this information, per CMO 12A, ¶9.

These two documents, in combination with Ochsner billing records, provide a comprehensive set of three separate CMO 12A-compliant documents which should result in this Court determining that Ms. Durden has submitted proof sufficient to obtain the "affirmative evidence" presumption provided therein.

**IV.    Conclusion.**

As set forth in her original memorandum in support of the instant motion, Plaintiff seeks a determination by the Court that, pursuant to CMO 12A, the documents produced by Ochsner and Molina Medicaid Solutions are "affirmative evidence of the identity of the manufacturer."

Sanofi's contention that Ms. Durden has produced insufficient evidence to support her position and that Sanofi has produced contrary evidence is inconsistent with the plain terms of CMO 12A.[3]  Sanofi's position that CMO 12A was entered only to dismiss claims against non-manufacturing defendants is unsupportable and inconsistent with the very premise behind standardizing the process of obtaining positive identification of a Plaintiff's manufacturer. In addition to its major deficiencies in terms of arbitrary cutoffs and speculative statements, Mr. Hunter's affidavit should be declared insufficient contrary evidence in light of the presumptive, patient-specific records from independent third parties, Ochsner and Molina, identifying NDC numbers of Sanofi.

Because Sanofi's purported "contrary evidence" neither actually contradicts the evidence submitted by Ms. Durden nor is sufficient to overcome the presumption set forth in CMO 12A, Plaintiff Antoinette Durden respectfully requests that the presumption in CMO 12A be enforced

---

[3] In light of the Ochsner and Molina documents containing Sanofi NDCs, true contrary evidence would require a showing by Sanofi that Ochsner billed Medicaid for administering a drug other than Sanofi's Taxotere to Ms. Durden (i.e., that Ochsner submitted a false claim to Medicaid). No such contrary evidence exists.

as "affirmative evidence of the identity of the manufacturer or labeler of Plaintiff's docetaxel" pursuant to CMO 12A, ¶6,8.

| | |
|---|---|
| Dated: January 11, 2019 | Respectfully submitted, |
| /s/ Christopher L. Coffin | /s/ Karen B. Menzies |
| Christopher L. Coffin (#27902) | Karen Barth Menzies (CA Bar #180234) |
| PENDLEY, BAUDIN & COFFIN, L.L.P. | Andre Mura (on the brief) |
| 1100 Poydras Street, Suite 2505 | GIBBS LAW GROUP LLP |
| New Orleans, LA 70112 | 400 Continental Boulevard, 6th Floor |
| Phone: 504-355-0086 | El Segundo, CA 90245 |
| Fax: 504-523-0699 | Telephone: 510-350-9700 |
| ccoffin@pbclawfirm.com | Facsimile: 510-350-9701 |
| | kbm@classlawgroup.com |
| *Plaintiffs' Co-Lead Counsel* | |
| | *Plaintiffs' Co-Lead Counsel* |
| /s/M. Palmer Lambert | /s/Dawn M. Barrios |
| M. Palmer Lambert (#33228) | Dawn M. Barrios (#2821) |
| GAINSBURGH BENJAMIN DAVID | BARRIOS, KINGSDORF & CASTEIX, LLP |
| MEUNIER & WARSHAUER, LLC | 701 Poydras Street, Suite 3650 |
| 2800 Energy Centre, 1100 Poydras Street | New Orleans, LA 70139 |
| New Orleans, LA 70163-2800 | Phone: 504-524-3300 |
| Phone: 504-522-2304 | Fax: 504-524-3313 |
| Fax: 504-528-9973 | barrios@bkc-law.com |
| plambert@gainsben.com | |
| | *Plaintiffs' Co-Liaison Counsel* |
| *Plaintiffs' Co-Liaison Counsel* | |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Anne Andrews | Daniel P. Markoff |
| Andrews Thornton Higgins Razmara, LLP | Atkins & Markoff Law Firm |
| 2 Corporate Park, Suite 110 | 9211 Lake Hefner Parkway, Suite 104 |
| Irvine, CA 92606 | Oklahoma City, OK 73120 |
| Phone: (800) 664-1734 | Phone: (405) 607-8757 |
| aa@andrewsthornton.com | Fax: (405) 607-8749 |
| | dmarkoff@atkinsandmarkoff.com |

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, LA 70112
Phone: 504-355-0086
Fax: 504-523-0699
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
The Lambert Firm, PLC
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
ejeffcott@thelambertfirm.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

| | |
|---|---|
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT