UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**

**Antoinette Durden, Case No. 2:16-cv-16635**

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE LEARNED-INTERMEDIARY DOCTRINE

Each of the claims in this MDL is based on a failure to warn; Plaintiffs allege Defendants provided an inadequate warning concerning the risk of permanent alopecia and Taxotere.[1] Among the many elements to be proven, each individual plaintiff must prove causation. Under the learned-intermediary doctrine, evidence of causation must be specific to each plaintiff's treater and requires each plaintiff to show that the allegedly non-disclosed risk was sufficiently high that it would have changed *her* treating physician's decision to prescribe Taxotere *i.e.*, that but for the allegedly inadequate warning, plaintiff's treating physician would not have prescribed Taxotere (and thereby avoided plaintiff's injury).[2]

Here, Ms. Durden cannot meet her burden to prove causation for two reasons:

First, there is no evidence that Ms. Durden's prescribing oncologist, Dr. Sophy Jancich, would have read any revision to the Taxotere labeling at any point before prescribing Taxotere to Ms. Durden in 2011. Dr. Jancich testified that she has *never* read the Taxotere labeling in its

---

[1] *See generally* First Master Complaint ¶¶ 220-230; 239-246.
[2] Docetaxel is the generic version of Taxotere. For ease of reference, Defendants use Taxotere interchangeably.

entirety and she cannot remember the last time she actually read the Taxotere labeling. Instead, Dr. Jancich testified that she relies on third-party resources for information on prescription medications like Taxotere. Thus, by her own testimony, any subsequent information included in the Taxotere labeling would have had no effect on Dr. Jancich's decision to prescribe Taxotere to Ms. Durden. As a result, Plaintiff cannot prove causation under circumstances where giving an adequate warning would be futile.

Second, Ms. Durden cannot meet her burden to show that the additional non-disclosed risk of permanent alopecia was sufficiently high that it would have changed Dr. Jancich's decision to prescribe Taxotere. Ms. Durden elicited *no* testimony from Dr. Jancich that the *risk of permanent alopecia* and Taxotere was sufficiently high that it would have caused her to choose a multi-drug chemotherapy regimen using Taxol instead of Taxotere. There is not only an absence of evidence; there is also affirmative testimony foreclosing causation. Dr. Jancich testified that, in 2011, there were *only* two preferred chemotherapy regimens "she would have selected from" to treat Ms. Durden. The first was as Taxotere regimen, which included Cyclophosphamide. The second was a Taxol regimen, which included Adriamycin. And Dr. Jancich chose the Taxotere regimen and rejected the Taxol regimen because Ms. Durden (and her daughter) "were adamant about not wanting to receiving an Adriamycin-containing regimen" due to potential side effects specific to that regimen. Thus, Ms. Durden cannot establish that providing information regarding the *risk of permanent alopecia* and Taxotere would have changed Dr. Jancich's prescribing decision in 2011. Under these circumstances, Ms. Durden cannot create a genuine dispute on the issue of causation.

For these reasons, the Court should dismiss Ms. Durden's lawsuit because causation is an essential element of all her claims.

## STATEMENT OF UNDISPUTED FACTS

Defendant have submitted a separate statement of facts, pursuant to LR 56. The pertinent facts are discussed below in the Argument.

## STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment initially bears the responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party can meet this burden by pointing out that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 322–23.

Once the moving party has met its burden, the nonmoving party bears the burden of coming forward with evidence of each essential element of its claim, such that a reasonable jury could find in its favor. *Id.* The existence of a mere scintilla of evidence to the support the nonmoving party's position, however, will not defeat summary judgment; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). "The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *In re Trasylol Prods. Liab. Litig.*, No. 08-md-01928, 2010 WL 6098571, at *4 (S.D. Fla. Mar. 16, 2010).

**ARGUMENT**

I. **THE LEARNED-INTERMEDIARY DOCTRINE GOVERNS ALL OF MS. DURDEN'S CLAIMS**

Warnings claims "must be viewed through the lense of the learned intermediary doctrine, which Louisiana law applies to claims of failure to warn involving drugs or medical devices dispensed by a physician." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001). Under the learned-intermediary doctrine, "[a prescription drug] manufacturer has no duty to warn the patient, but need only warn the patient's physician." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991); *see also Grenier*, 99 F. Supp. at 766 ("Defendants' duty runs only to the implanting physician as learned intermediary").

Here, Ms. Durden asserts two claims under Louisiana law: (1) inadequate warnings under LSA-RS 9:2800.57; and (2) breach of warranty in redhibition. *See* Ex. F, SFC pp. 4-7. Obviously, the first claim is a warnings claim. Ms. Durden's redhibition claim also sounds in failure to warn; in support of that claim, Ms. Durden alleges "Defendants were aware of the substantial risks of disfiguring permanent alopecia associated with TAXOTERE but failed to fully disclose those risks to Plaintiff." Ex. F, SFC ¶ 15. Because both her claims are based on a failure to warn, they are governed by the learned-intermediary doctrine. *See In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), *aff'd sub nom. In re Norplant Contraceptive Prod. Litig.*, 165 F.3d 374 (5th Cir. 1999) ("The gravamen of all of Plaintiffs' causes of action, including misrepresentation and violation of the DTPA, is that Wyeth failed to adequately warn of or disclose the severity of Norplant's side effects. Therefore, the learned intermediary doctrine applies to all of Plaintiffs' causes of action. Additionally, whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn.").

4

## II. MS. DURDEN CANNOT ESTABLISH CAUSATION UNDER THE LEARNED-INTERMEDIARY DOCTRINE

To prove a failure-to-warn claim under the learned-intermediary doctrine, the Fifth Circuit has articulated a two-pronged test:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.
>
> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury."

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265–66 (5th Cir. 2002) (internal citation omitted); *Willett*, 929 F.2d at 1098; *Grenier*, 99 F. Supp. 2d at 765. Both prongs must be satisfied, and a drug manufacturer is entitled to summary judgment "if it can demonstrate the absence of a genuine factual dispute concerning the second prong of the learned-intermediary test, namely causation." *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008).

Concerning the second prong (*i.e.* causation), it is well-established that each plaintiff must prove causation with evidence specific to her treating physician. Stated otherwise, "the plaintiff must show that a proper warning would have changed the decision of ***the treating physician***, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *See Willett*, 929 F.2d at 1099 (emphases added); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) ("This causation requirement means that the plaintiff must show that 'a proper warning would have changed the decision of ***the treating physician***, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product.'" (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d at 1099); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) ("To demonstrate causation under Louisiana law, the

plaintiff must ultimately show that *the doctor* would not have prescribed [the drug] had the doctor received a proper warning."); *Rhodes v. Bayer Healthcare Pharm. Inc*., 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) ("Plaintiffs bear the burden to show that a proper warning would have changed the decision of *Dr. Chandler*, i.e., that but for the inadequate warning, he would not have used or prescribed Avelox.") (emphases added).  In other words, Ms. Durden must prove that had Dr. Jancich been provided the information she claims was missing, *i.e.* the risk of permanent alopecia, she would not have prescribed Taxotere.  Here, Ms. Durden cannot meet her burden to prove warnings causation for at least two reasons:

### A. Ms. Durden cannot establish warnings causation because her treating physician would not have read any Taxotere warnings

If the plaintiff's treating physician testifies they would not have read an allegedly more adequate warning, the plaintiff cannot establish causation.  *See, e.g., Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004) (affirming summary judgment based on lack of evidence of causation under Louisiana law: "[b]ecause [plaintiff's treater] failed to read the warnings provided, he could not truthfully testify as to whether the warnings were adequate to prevent him from prescribing the drug to [plaintiff]"); *Felice v. Valleylah, Inc.* 520 So.2d 920, 927 (La. App. 1987) (holding "the jury's finding of liability . . .  was clearly wrong, since there is absent the essential element of cause in fact" because "[Plaintiff's treater] admitted that she had never read the warning label on the device itself, and that she had never read the manual"); *see also Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) (plaintiff did not meet summary judgment opposition burden of establishing alleged inadequate warning was "producing cause" of injury under Texas' similar learned intermediary doctrine where prescribing physician testified she did not recall ever reading package insert).

6

Here, Ms. Durden's treater, Dr. Jancich, testified unequivocally that she could not recall the last time she read the Taxotere labeling nor could she state that she had read the Taxotere labeling in its entirety. Ex. D, Dr. Sophy Jancich Deposition ("Jancich Dep.") 284:17-285:20. In fact, Dr. Jancich testified that, for product information, she relies on "UpToDate," which is a third-party, clinical resource prepared by physician authors, rather than the Taxotere labeling. *Id.* 126:6-127:10; 289:9-20. Because Dr. Jancich has: (1) never read the Taxotere labeling in its entirety; (2) cannot remember the last time she actually read the Taxotere labeling; and (3) relies on third-party sources for product information there can be no dispute that Sanofi providing the allegedly non-disclosed information to Dr. Jancich through a labeling revision "would have been futile under the circumstances." *Felice*, 520 So.2d at 927.

### B. Ms. Durden cannot establish warning causation because there is no evidence "the additional non-disclosed risk" would have changed her treating physician's decision

Ms. Durden has elicited no testimony from Dr. Jancich to meet her burden to show that the additional non-disclosed risk was sufficiently high that it would have changed the Dr. Jancich's decision to prescribe Taxotere. As the Fifth Circuit has explained, a plaintiff has the burden to produce evidence concerning how a particular plaintiff's prescriber would have conducted an individualized risk/benefit analysis as to that plaintiff, and "[t]he burden remains on the plaintiff to demonstrate that *the additional non-disclosed risk* was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff. *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir. 1992) (applying Mississippi law) (emphasis added).

Ms. Durden cannot meet her burden on causation. First, Ms. Durden failed to elicit testimony from Dr. Jancich that the supposed risk of permanent alopecia would have caused her to change her prescribing decision in for Ms. Durden (*i.e.*, prescribe Taxol-based regimen instead

7

of a Taxotere-based regimen).[3] That absence of such evidence is dispositive. *Grenier*, 99 F. Supp. 2d 766 (granting summary judgment based on a lack of evidence of causation where the plaintiff "submitted no proof to show how Dr. Ramey would have reacted given a warning of the possibility or frequency of silicone gel bleed").

Second, there is affirmative testimony that resolves the issue of causation. Dr. Jancich testified that, at the time of Ms. Durden's treatment in 2011, Taxotere was part of the National Comprehensive Cancer Network (NCCN) approved regimen—the guidelines which Dr. Jancich in her practice follows—for Ms. Durden's specific cancer type. *See, e.g.,* Ex. D, Jancich Dep. 257:18-258:2-12. Dr. Jancich testified that the Taxotere regimen (which included Cyclophosphamide) and the Taxol regimens (which included Adriamycin), were the only preferred chemotherapy regimens "she would have selected from" in 2011 for Ms. Durden. Ex. D, Jancich Dep. 257:2-12. For Ms. Durden, Dr. Jancich chose the Taxotere regimen and rejected the Taxol regimen because Ms. Durden (and her daughter) "were adamant about not wanting to receiving an Adriamycin-containing regimen" due to the potential side effects. *See, e.g.,* Jancich Dep. 201:21-202:25.

Moreover, there is no basis for an inference or speculation that Sanofi's revision to the Taxotere labeling would have changed Dr. Jancich's decision. In December 2015, after discussions between Defendants and FDA and FDA's review of relevant safety data, the "post-marketing experiences" section of the Taxotere label was revised to include the following language: "[c]ases of permanent alopecia have been reported." *See* Ex. C, Taxotere Labeling, dated December 11, 2015. This change had no impact on the risk-benefit profile of Taxotere.  Nor did FDA advise doctors to change their prescribing practices or avoid using the drug in certain classes of patients.

---

[3] Defendants use Taxol and paclitaxel interchangeably.

Furthermore, since approximately 2003, Dr. Jancich has prescribed Taxotere to patients. Ex. D, Jancich Dep. 120:12-23. She has prescribed Taxotere for breast cancer, head and neck cancer, and prostate cancer. *Id.* 120:17-23. Dr. Jancich still prescribes Taxotere today. *Id.* 227:13-15. Under these circumstances, Ms. Durden cannot meet her burden "to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff, " *Thomas*, 949 F.2d at 814.

For the foregoing reasons, Ms. Durden cannot establish causation. Summary judgment is warranted under Louisiana law in a prescription medication failure-to-warn case where, as here, Ms. Durden fail to introduce evidence that a different warning would have caused their treating physician to change her decision to prescribe the medication at issue. Courts around the country, including MDL courts, routinely grant summary judgment in prescription pharmaceutical and medical device cases where there is no evidence that a different warning would have changed the physician's prescribing decision. *See*, *e.g.*, *In re Cook Med., Inc. IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, 2018 WL 6415585, at *2 (S.D. Ind. Dec. 5, 2018); *In re C.R. Bard, Inc.*, 2013 WL 2431975, at *7-8 (S.D. W. Va. June 4, 2013); *see also Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 2014 (5th Cir. 2008) (Texas law); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1024 (10th Cir. 2001) (Oklahoma law); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1004 (4th Cir. 1992) (South Carolina law); *Garrison v. Novartis Pharm. Corp.*, 30 F. Supp. 3d 1325, 1335 (M.D. Ala. 2014) (Alabama law); *D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 2d 880, 891 (D. Ariz. 2013) (Arizona law); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 902351, at *2 (E.D. Pa. Apr. 2, 2009) ("even assuming the warnings are inadequate, plaintiffs must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or

prescribed the product."); *Woulfe v. Eli Lilly & Co.*, 965 F. Supp. 1478, 1486 (E.D. Okla. 1997) (Oklahoma law). The prescribing physician's decision in such cases "breaks the causal chain as to the allegedly inadequate warnings." *Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1130 (D. Kan. 2002) (Kansas law).

### III. MS. EARNEST'S REDHIBITION CLAIM IS SUBJECT TO DISMISSAL ON ALTERNATIVE GROUNDS

To the extent the Court finds Ms. Durden's breach of redhibition claim is not controlled by the learned-intermediary doctrine, Defendants are entitled to summary judgment on alternative grounds: Ms. Durden has no evidence of any manufacturing or design defect with respect to Taxotere, nor is there any evidence that some "vice" rendered Taxotere "useless" or "inconvenient" under La. Civ. Code Ann. Art. 2520.

None of Ms. Durden's experts claim Taxotere is wholly or substantially useless. To the contrary, one of Ms. Durden's experts, Dr. Bosserman, believes Taxotere is highly effective and has contributed to saving lives. Ex. H, Deposition of Dr. Linda Bosserman ("Bosserman Dep.") 65:10-13;100:11-13; *see also* Ex. D, Jancich Dep. 120:12-18; 227:13-15. Dr. Bosserman also agrees it is possible Ms. Durden is alive today because she received treatment for her cancer that included Taxotere. Ex. H, Bosserman Dep. 536:1-7.

Ms. Durden also does not complain of any physical or functional failure in the Taxotere she received. Nor could she. It is undisputed that Taxotere was prescribed to Ms. Durden in order to help treat her breast cancer, and that after taking Taxotere, Ms. Durden is currently cancer-free. Ex. E, Durden PFS p.15. Because Taxotere is demonstrably effective and worked as intended, Ms. Durden cannot establish a redhibitory defect. *E.g., In re Rezulin Prods. Liab. Litig.*, 361 F.Supp.2d 268, 280 (S.D.N.Y. 2005) (granting defendant summary judgment in MDL case applying

Louisiana law where plaintiffs could not demonstrate a redhibitory defect in a prescription medication because the drug was effective in treating the condition it was designed to treat).

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment on Ms. Durden's claims.

Date:  February 5, 2019

>Respectfully submitted,
>
>*/s/ Douglas J. Moore*
>Douglas J. Moore (Bar No. 27706)
>**IRWIN FRITCHIE URQUHART & MOORE LLC**
>400 Poydras Street, Suite 2700
>New Orleans, LA  70130
>Telephone: 504-310-2100
>Facsimile:  504-310-2120
>dmoore@irwinllc.com
>
>Harley Ratliff
>Adrienne L. Byard
>**SHOOK, HARDY & BACON L.L.P.**
>2555 Grand Boulevard
>Kansas City, Missouri 64108
>Telephone: 816-474-6550
>Facsimile:  816-421-5547
>hratliff@shb.com
>abyard@shb.com
>
>*Counsel for Sanofi-Aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

>*/s/ Douglas J. Moore*