UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

**Barbara Earnest, Case No. 2:16-cv-17144**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE
LEARNED-INTERMEDIARY DOCTRINE**

Each of the claims in this MDL is based on a failure to warn; Plaintiffs allege Defendants provided an inadequate warning concerning the risk of permanent alopecia and Taxotere.[1] Among the many elements to be proven, each individual plaintiff must prove causation. Under the learned-intermediary doctrine, evidence of causation must be specific to each plaintiff's treater and requires each plaintiff to show that the allegedly non-disclosed risk was sufficiently high that it would have changed *her* treating physician's decision to prescribe Taxotere *i.e.*, that but for the allegedly inadequate warning, plaintiff's treating physician would not have prescribed Taxotere (and thereby avoided plaintiff's injury).[2]

Here, Ms. Earnest cannot meet her burden to prove causation for several reasons:

First, there is no evidence Ms. Earnest prescribing oncologist, Dr. James Carinder, would have read any warning in the Taxotere package insert after 2000. He testified that he read the Taxotere package insert only once—sometime in 1999 or 2000—and *never read it again*. By his

---

[1] *See generally* First Master Complaint ¶¶ 220-230; 239-246.
[2] Docetaxel is the generic version of Taxotere. For ease of reference, Defendants use Taxotere interchangeably.

own testimony, any subsequent information added to the Taxotere labeling between 2000 and 2011 would have had no effect on his decision to prescribe Taxotere to Ms. Earnest in 2011. Plaintiff cannot prove causation under circumstances where giving an adequate warning would be futile.

Second, Ms. Earnest cannot establish causation because her treater was already aware of the information Ms. Earnest claims should have been included in the Taxotere labeling. When Dr. Carinder chose Ms. Earnest's chemotherapy regimen in 2011, he was *already aware* that a Taxotere-containing chemotherapy regimen might be associated with permanent alopecia because, in 2005, one of his patients developed permanent hair loss after using the "exact same" chemotherapy regimen as he prescribed to Ms. Earnest.  Under those circumstances, Ms. Earnest cannot establish causation.

Third, Ms. Earnest elicited no testimony from Dr. Carinder to meet her burden to show that the additional non-disclosed risk of permanent alopecia was sufficiently high that it would have changed the Dr. Carinder's decision to prescribe Taxotere. Dr. Carinder specifically chose Taxotere over a Taxol regimen to avoid serious side effects in Ms. Earnest, such as neuropathy and severe infusive reactions.  Ms. Earnest elicited no testimony from Dr. Carinder that the potential *risk of permanent alopecia* was sufficiently high that it would have caused him to change his prescribing decision in this case.  This absence of evidence is dispositive on the causation issue.

For these reasons, the Court should dismiss Ms. Earnest's lawsuit because causation is an essential element of all her claims.

## STATEMENT OF UNDISPUTED FACTS

Defendant have submitted a separate statement of facts, pursuant to LR 56.  The pertinent facts are discussed below in the Argument.

2

**STANDARD**

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment initially bears the responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party can meet this burden by pointing out that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 322–23.

Once the moving party has met its burden, the nonmoving party bears the burden of coming forward with evidence of each essential element of its claim, such that a reasonable jury could find in its favor. *Id.* The existence of a mere scintilla of evidence to the support the nonmoving party's position, however, will not defeat summary judgment; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). "The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *In re Trasylol Prods. Liab. Litig.*, No. 08-md-01928, 2010 WL 6098571, at *4 (S.D. Fla. Mar. 16, 2010).

**ARGUMENT**

**I.   THE LEARNED-INTERMEDIARY DOCTRINE GOVERNS ALL OF MS. EARNEST'S CLAIMS**

Warnings claims "must be viewed through the lense of the learned intermediary doctrine, which Louisiana law applies to claims of failure to warn involving drugs or medical devices dispensed by a physician." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001). Under the learned-intermediary doctrine, "[a prescription drug]

3

manufacturer has no duty to warn the patient, but need only warn the patient's physician." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991); *see also Grenier*, 99 F. Supp. at 766 ("Defendants' duty runs only to the implanting physician as learned intermediary").

Here, Ms. Earnest asserts two claims under Louisiana law: (1) inadequate warnings under LSA-RS 9:2800.57; and (2) breach of warranty in redhibition. *See* Ex. G, SFC pp. 4-7. Obviously, the first claim is a warnings claim. Ms. Earnest's redhibition claim also sounds in failure to warn; in support of that claim, Ms. Earnest alleges "Defendants were aware of the substantial risks of disfiguring permanent alopecia associated with TAXOTERE but failed to fully disclose those risks to Plaintiff." Ex. G, SFC ¶ 15. Because both her claims are based on a failure to warn, they are governed by the learned-intermediary doctrine. *See In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), *aff'd sub nom. In re Norplant Contraceptive Prod. Litig.*, 165 F.3d 374 (5th Cir. 1999) ("The gravamen of all of Plaintiffs' causes of action, including misrepresentation and violation of the DTPA, is that Wyeth failed to adequately warn of or disclose the severity of Norplant's side effects. Therefore, the learned intermediary doctrine applies to all of Plaintiffs' causes of action. Additionally, whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn.").

## II. MS. EARNEST CANNOT ESTABLISH CAUSATION UNDER THE LEARNED-INTERMEDIARY DOCTRINE

To prove a failure-to-warn claim under the learned-intermediary doctrine, the Fifth Circuit has articulated a two-pronged test:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.

> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury."

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265–66 (5th Cir. 2002) (internal citation omitted); *Willett*, 929 F.2d at 1098; *Grenier*, 99 F. Supp. 2d at 765. Both prongs must be satisfied, and a drug manufacturer is entitled to summary judgment "if it can demonstrate the absence of a genuine factual dispute concerning the second prong of the learned-intermediary test, namely causation." *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008).

Concerning the second prong (*i.e.* causation), it is well-established that each plaintiff must prove causation with evidence specific to her treating physician: "the plaintiff must show that a proper warning would have changed the decision of ***the treating physician***, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."  *See Willett*, 929 F.2d at 1099 (emphases added); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) ("This causation requirement means that the plaintiff must show that 'a proper warning would have changed the decision of ***the treating physician***, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product.'" (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d at 1099); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) ("To demonstrate causation under Louisiana law, the plaintiff must ultimately show that ***the doctor*** would not have prescribed [the drug] had the doctor received a proper warning."); *Rhodes v. Bayer Healthcare Pharm. Inc.*, 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) ("Plaintiffs bear the burden to show that a proper warning would have changed the decision of ***Dr. Chandler***, i.e., that but for the inadequate warning, he would not have used or prescribed Avelox.") (emphases added).  Here, Ms. Earnest cannot meet her burden to prove warnings causation for at least three reasons:

5

### A. Ms. Earnest cannot establish warnings causation because her treating physician would not have read any Taxotere warnings after 1999 or 2000

If the Plaintiff's treating physician testifies they would not have read an adequate warning, Plaintiff cannot establish causation. *See, e.g., Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004) (affirming summary judgment based on lack of evidence of causation under Louisiana law: "[b]ecause [plaintiff's treater] failed to read the warnings provided, he could not truthfully testify as to whether the warnings were adequate to prevent him from prescribing the drug to [plaintiff]"); *Felice v. Valleylah, Inc.* 520 So.2d 920, 927 (La. App. 1987) (holding "the jury's finding of liability . . . was clearly wrong, since there is absent the essential element of cause in fact" because "[Plaintiff's treater] admitted that she had never read the warning label on the device itself, and that she had never read the manual"); *see also Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) (plaintiff did not meet summary judgment opposition burden of establishing alleged inadequate warning was "producing cause" of injury under Texas' similar learned intermediary doctrine where prescribing physician testified she did not recall ever reading package insert).

Here, Ms. Earnest's treater, Dr. Carinder, testified unequivocally that the *only time* he read the Taxotere prescribing information was "when it first came on the market" (which he estimated was 1999 or 2000), and that he has *never read it since*. Ex. D, Carinder Dep. 119:3-14. In fact, there were over a dozen Taxotere labeling versions between 2000 and 2011.[3] Dr. Carinder's testimony is that he did not read any of them. As in *Felice*, providing a warning to Dr. Carinder at any point after 1999 or 2000 "would have been futile under the circumstances." *Felice*, 520 So.2d at 927.

---

[3] The effective dates of the various Taxotere labeling versions between 2000 and 2011 are: 7/9/2002, 7/30/2002, 1/3/2003, 4/24/2003, 5/19/2004, 8/18/2004, 1/6/2005, 8/11/2005, 3/22/2006, 6/7/2006, 10/17/2006, 9/28/2007, 4/20/2010, 5/13/2010, 8/22/2010, 9/7/2011, and 12/15/2011.

### B. Ms. Earnest cannot establish warning causation because her treating physician had actual knowledge of the allegedly undisclosed risk

If the Plaintiff's treating physician was already aware of the substance of the allegedly adequate warning, Plaintiff cannot establish causation. *See*, *e.g.*, *Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004) ("[Plaintiff's treating physician's] affidavit acknowledges that . . . he was aware of the risks of the drug independently of Wyeth's labels; therefore, Wyeth's warning (adequate or inadequate) played no role in the events leading to Hall's injury"); *In re Cook Med., Inc. IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, 2018 WL 6415585, at *2 (S.D. Ind. Dec. 5, 2018) ("[W]here 'a learned intermediary has actual knowledge of the substance of the alleged warning and would have taken the same course of action even with the information the plaintiff contends should have been provided, courts typically conclude that ... the causal link is broken and the plaintiff cannot recover.'" (quoting *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272 (11th Cir. 2002)).

Ms. Earnest cannot establish causation based on failure to warn of the risk of permanent alopecia because Dr. Carinder was already aware of that purported risk. When Dr. Carinder chose Ms. Earnest's chemotherapy regimen in 2011, he was *already aware*, based on his own clinical experience, that this particular regimen was associated with permanent hair loss. Dr. Carinder testified that, in 2005, one of his patients suffered permanent hair loss after using the "exact same" chemotherapy regimen as Ms. Earnest (*i.e.* dose-dense Adriamycin and Cyclophosphamide, followed by Taxotere). Ex. D, Carinder Dep. 85-86. Dr. Carinder testified that his 2005 patient "never got her hair back," "no hair, none." *Id*. at 85, 121. After 2005, if patients on Ms. Earnest's specific chemotherapy regimen asked Dr. Carinder about the possibility of permanent hair loss, Dr. Carinder "always told" those patients about the "one lady . . . who still hasn't recovered her hair yet." *Id*. 124-25. Where, as here, the treating physician had actual knowledge of the allegedly

7

non-disclosed risk, Ms. Earnest cannot establish causation. *See, e.g. Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004) ("the causal link between a patient's injury and the alleged failure to warn is broken when the prescribing physician had substantially the same knowledge as an adequate warning from the manufacturer should have communicated to him.").

### C. Ms. Earnest cannot establish warning causation because there is no evidence "the additional non-disclosed risk" would have changed her treating physician's decision

Ms. Earnest has elicited no testimony from Dr. Carinder to meet her burden to show that the allegedly non-disclosed risk of permanent alopecia was sufficiently high that it would have changed the Dr. Carinder's decision to prescribe Taxotere. As the Fifth Circuit has explained, a plaintiff has the burden to produce evidence concerning how a particular plaintiff's prescriber would have conducted an individualized risk/benefit analysis as to that plaintiff, and "[t]he burden remains on the plaintiff to demonstrate that *the additional non-disclosed risk* was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff. *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir. 1992) (applying Mississippi law) (emphasis added).

For context, Dr. Carinder has treated hundreds of breast cancer patients over the course of his career; about one-third of his patients are breast cancer patients. Ex. D, Carinder Dep. 61:13–25; 62:1–7. During his entire career, Dr. Carinder has prescribed Taxotere to treat his breast cancer patients. *Id.* 127:15-25; 128:1–2. He also prescribes many other chemotherapy drugs and regimens and he treats various kinds of cancer. *Id.* 128:10-19. Today, Dr. Carinder prescribes Taxotere for breast cancer, lung cancer, prostate cancer and gastric cancer. *Id.* 128:10-19.

Dr. Carinder prescribes Taxotere today for various cancers—including breast cancer—because it works and it is a good drug:

Q: And you still prescribe [Taxotere] today, correct?

8

      A: Yes.

      Q: Why?

      A: Because it works.

      Q: It's effective?

      A: Yes. It's a good drug.

*Id.* 127:25; 128:1–6.

Dr. Carinder testified that "[n]o one can say that with certainty" that Ms. Earnest would be alive today if she had been given a chemotherapy regimen without Taxotere. *Id.* 138:14-21. He also agreed that no one could say that Ms. Earnest's hair would not be in the same condition if she had been prescribed a different chemotherapy regimen without Taxotere. *Id.* 138:23-139:5. Also importantly, at the time of Ms. Earnest's treatment in 2011, Taxotere was part of the National Comprehensive Cancer Network (NCCN) approved regimen—the guidelines which Dr. Carinder in his practice follows—for Ms. Earnest's specific cancer type. Ex. H, Carinder Dep. Ex. 5.

Thus, for Ms. Earnest's multi-drug chemotherapy regimen, Dr. Carinder testified that he specifically chose Taxotere and rejected another taxane known as Taxol.[4] According to Dr. Carinder, this was because Taxol was not approved for weekly dose-dense use in 2011, and because Taxol carries serious side effects that Taxotere does not, including neuropathy and severe infusion reactions. Ex. D, Carinder Dep. 26, 69, 130-31, 139-40. Ms. Earnest has failed to meet her burden on causation because she elicited no testimony from Dr. Carinder that the risk of permanent alopecia would have caused him to change his prescribing decision. That absence of such evidence is dispositive. *Grenier*, 99 F. Supp. 2d 766 (granting summary judgment based on

---

[4] Defendants use Taxol and paclitaxel interchangeably.

9

a lack of evidence of causation where the plaintiff "submitted no proof to show how Dr. Ramey would have reacted given a warning of the possibility or frequency of silicone gel bleed").

Moreover, there is no basis for an inference or speculation that the information in the modest December 2015 update to the Taxotere labeling would have changed Dr. Carinder's decision. In December 2015, after discussions between Defendants and FDA and FDA's review of relevant safety data, the "post-marketing experiences" section of the Taxotere package insert was revised to include the following language: "[c]ases of permanent alopecia have been reported." *See* Ex. C, Taxotere Labeling, dated December 11, 2015. This change had no impact on the risk-benefit profile of Taxotere. Nor did FDA advise doctors to change their prescribing practices or avoid using the drug in certain classes of patients. As indicated, Dr. Carinder has continued to prescribe Taxotere to treat his breast cancer patients. *Id.* 127:15-25; 128:1–2. Today, Dr. Carinder still prescribes Taxotere for various cancers—including breast cancer—because it "works" and it is "effective" and a "good drug." *Id*. 127:25; 128:1–6. Under these circumstances, Ms. Earnest cannot meet her burden "to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Thomas*, 949 F.2d at 814.

For the foregoing reasons, Ms. Earnest cannot establish causation. Summary judgment is warranted under Louisiana law in a prescription medication failure-to-warn case where, as here, Plaintiffs fail to introduce evidence that a different warning would have caused their treating physician to change her decision to prescribe the medication at issue. Courts around the country, including MDL courts, routinely grant summary judgment in prescription pharmaceutical and medical device cases where there is no evidence that a different warning would have changed the physician's prescribing decision. *See*, *e.g.*, *In re Cook Med., Inc. IVC Filters Mktg., Sales Practices*

*& Prod. Liab. Litig.*, 2018 WL 6415585, at *2 (S.D. Ind. Dec. 5, 2018); *In re C.R. Bard, Inc.*, 2013 WL 2431975, at *7-8 (S.D. W. Va. June 4, 2013); *see also Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 2014 (5th Cir. 2008) (Texas law); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1024 (10th Cir. 2001) (Oklahoma law); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1004 (4th Cir. 1992) (South Carolina law); *Garrison v. Novartis Pharm. Corp.*, 30 F. Supp. 3d 1325, 1335 (M.D. Ala. 2014) (Alabama law); *D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 2d 880, 891 (D. Ariz. 2013) (Arizona law); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 902351, at *2 (E.D. Pa. Apr. 2, 2009) ("even assuming the warnings are inadequate, plaintiffs must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Woulfe v. Eli Lilly & Co.*, 965 F. Supp. 1478, 1486 (E.D. Okla. 1997) (Oklahoma law). The prescribing physician's decision in such cases "breaks the causal chain as to the allegedly inadequate warnings." *Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1130 (D. Kan. 2002) (Kansas law).

## III.  MS. EARNEST'S REDHIBITION CLAIM IS SUBJECT TO DISMISSAL ON ALTERNATIVE GROUNDS

To the extent the Court finds Ms. Earnest's breach of redhibition claims are not controlled by the learned-intermediary doctrine, Defendants are entitled to summary judgment on alternative grounds: Ms. Earnest has no evidence of any manufacturing or design defect with respect to Taxotere, nor is there any evidence that some "vice" rendered Taxotere "useless" or "inconvenient" under La. Civ. Code Ann. Art. 2520.

None of Ms. Earnest's experts claim Taxotere is wholly or substantially useless. To the contrary, one of Earnest's experts, Dr. Bosserman, believes Taxotere is highly effective and has contributed to saving lives. Ex. I, Deposition of Dr. Linda Bosserman ("Bosserman Dep.") 65:10-

11

13;100:11-13; *see also* Ex. D, Carinder Dep. 127:15-128:6. Dr. Bosserman also agrees it is possible Ms. Earnest is alive today because she received treatment for their cancer that included Taxotere. Ex. I, Bosserman Dep. 536:1-7.

Ms. Earnest also does not complain of any physical or functional failure in the Taxotere she received. Nor could she. It is undisputed that Taxotere was prescribed to Ms. Earnest in order to help treat her breast cancer, and that after taking Taxotere, Ms. Earnest is currently cancer-free. Ex. E, PFS p.17. Because Taxotere is demonstrably effective and worked as intended, Ms. Earnest cannot establish a redhibitory defect. *E.g., In re Rezulin Prods. Liab. Litig.*, 361 F.Supp.2d 268, 280 (S.D.N.Y. 2005) (granting defendant summary judgment in MDL case applying Louisiana law where plaintiffs could not demonstrate a redhibitory defect in a prescription medication because the drug was effective in treating the condition it was designed to treat).

## **CONCLUSION**

For these reasons, the Court should grant Defendants' motion for summary judgment on Ms. Earnest's claims.

Date: February 5, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

***Counsel for Sanofi-Aventis U.S. LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

13