**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                      MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                     SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

Barbara Earnest's claims are barred by Louisiana's one-year statute of limitations, which begins "to run from the day injury or damage is sustained," *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 974 (La. App. 4 Cir. 1998) (citing La. Civ. Code Ann. art. 3492), and is tolled only "in cases where a plaintiff's ignorance [of her injury] is not negligent or unreasonable," *id*. at 976. Here, the pleadings and undisputed evidence establish that Ms. Earnest was aware of her alleged injury and its potential relationship to her Taxotere chemotherapy regimen in 2012, more than four years before she filed suit in December 2016:

- In her **Complaint**, Ms. Earnest alleges she finished chemotherapy with Taxotere in 2011 and then suffered "disfiguring permanent alopecia" beginning "six months beyond completion of chemotherapy"[1] (*i.e.*: approximately May 2012).[2]

- In her verified **Plaintiff Fact Sheet**, Ms. Earnest states she experienced several injuries, including "persistent alopecia on [her] head," and "significant thinning of the hair."

---

[1] *See* Second Amended Master Long Form Complaint ("AMC") (Rec. Doc. 4407) at ¶ 181; *see also* Amended Short Form Complaint ("SFC") at ¶ 12, 10 (No. 2:16-cv-17144, Rec. Doc. 9). Where Master and Short Form Complaints are used in an MDL like this one, the documents together comprise a Plaintiff's complaint. *See In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-MD-2657, 2017 WL 1458193, at *5 (D. Mass. Apr. 24, 2017). Ms. Earnest's Short Form Complaint is attached as **Exhibit A**.

[2] Ms. Earnest incorrectly alleges in her SFC that she completed her last treatment with Taxotere in November 2011 (meaning her injury occurred in May 2012) when, in fact, her last treatment with Taxotere was in August 2011 (meaning her injury occurred in February 2012). Whether her injury occurred in February or May 2012 is of little consequence to the statute of limitations analysis given that Ms. Earnest did not file her lawsuit until December 2016.

She states that "after six (6) months of discontinuing Taxotere . . . [t]here [were] visible bald spots on [her] head no matter how [she] style[ed] [her] hair." She states that each of these injuries first began in February 2012. PFS § VI.5.[3]

- ▪ In her **deposition**, Ms. Earnest testified that when her hair did not come back as she expected in 2012 that she suspected chemotherapy was the cause.[4]

Charged with this information, Ms. Earnest would have had to file her lawsuit in 2013 to be timely. Yet she filed this case in December 2016, alleging no circumstances that justify her three-year delay. It is unreasonable for a plaintiff "to think that [s]he can sit on [her] rights indefinitely until an attorney tells [her s]he is actually entitled to benefits." *Causby v. Perque Floor Covering*, 707 So. 2d 23, 27 (La. 1998). In other words, the objectively reasonable plaintiff in these circumstances—on knowing that she had lost her hair, on knowing why she had lost her hair, and on knowing that her hair had not grown back as expected because of and after chemotherapy— would have been excited to do something to inquire about a claim. Ms. Earnest instead did nothing for six years. On these facts, no tolling exception applies. Ms. Earnest's claims are time barred and Defendants are entitled to summary judgment.

## PROCEDURAL BACKGROUND

Ms. Earnest is one of several thousand plaintiffs in MDL No. 2740 who alleges that she took Taxotere to treat her breast cancer. Taxotere was first approved by the Federal Food & Drug Administration in 1996, and plaintiffs in this MDL completed treatment as far back as 1997.[5] Like all other plaintiffs in this MDL, Ms. Earnest alleges that she has suffered severe and disfiguring injuries since her treatment with Taxotere.

Unlike cases where an injury is latent, the injury alleged here makes the lawsuit either

---

[3] PFS references are to Ms. Earnest's Plaintiff Fourth Amended Fact Sheet, attached as **Exhibit B,**

[4] Barbara Earnest Dep. Tr., attached as **Exhibit C,** at 83:14–18; 92:2–9.

[5] *See, e.g.*, Deleese Blackmon SFC ¶ 10; Angela Foster SFC ¶ 10; Dorothy Mims SFC ¶ 10.

timely or untimely on its face. Plaintiffs' alleged permanent hair loss from Taxotere is so obvious, they claim, that it stigmatizes plaintiffs, their body image, and their social relationships. *See* AMC ¶¶ 214–20. No reasonable person can make such allegations while claiming to be unaware of their injury. Plaintiffs do not claim hair loss ***during*** chemotherapy as an injury, but rather, claim that hair loss became an injury when their hair failed to grow back six months after completing treatment. *See id.* at ¶ 181 (plaintiffs defining "permanent" alopecia as "absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."). Plaintiffs also cannot claim that they did not have notice that the issue may have been caused by chemotherapy treatment because they acknowledge that hair loss is a known and expected side effect of chemotherapy,[6] and they cite more than a decade of public discussion about their alleged injury and its association with chemotherapy in their Master Complaint. *See* AMC ¶¶ 149–162.[7]

Sanofi first raised the statute-of-limitations issue in this MDL in an omnibus motion to dismiss on May 26, 2017, noting that, at that time, some 850 of approximately 1,100 then-pending cases were facially untimely, including Ms. Earnest's. *See* Motion to Dismiss Claims Barred by the Applicable Statutes of Limitations (May 26, 2017) ("Omnibus Motion") (Rec. Doc. 494). In deferring a decision on the merits of that motion, the Court stated that it would be appropriate to revisit the issue at a later date with the benefit of further discovery in the initial bellwethers before considering an MDL-wide approach. *See* Hr'g Tr. 25:8–18 (Oct. 27, 2017). The parties proceeded with further discovery – both through the Plaintiff Fact Sheet process and phased discovery,

---

[6] *See* AMC at ¶ 174 (hair loss well-known side effect of chemotherapy), 129 (hair loss, or "alopecia," has always been in Taxotere's FDA-approved label), 135 (same).

[7] *See* AMC ¶ 155 (referencing Jim Edwards, *Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald*, CBS News (March 6, 2010), http://www.cbsnews.com/news/sanofis-latest-challenge-women-who-say-its-chemotherapy-left-them-permanently-bald/); *see also* Taxotears Turns Ten, aheadofourtime.org (April 4, 2016), http://aheadofourtime.org/taxotears-turns-ten/. Many plaintiffs even explicitly discussed their claims with lawyers and each other for years. (Rec. Doc. 4687) (E.D. La. Oct. 24, 2018) (Sanofi's memorandum in support of summary judgment on statute of limitations grounds against plaintiff Suzanne Mink).

including in Ms. Earnest's case.  This discovery confirms the untimeliness of Ms. Earnest's claims, and why the Court should now grant Defendants' motion for summary judgment.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A genuine dispute of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249–50 (internal citations omitted).

## ARGUMENT

Summary judgment should be granted here for three reasons.  First, the untimeliness of Ms. Earnest's case is apparent from the pleadings.  Second, discovery from Ms. Earnest's PFS demonstrates she was injured long ago.  Third, no exception applies to toll the statute of limitations and save Ms. Earnest's case.  Because there is no genuine issue of material fact as to the untimeliness of Ms. Earnest's lawsuit, the Court should grant summary judgment.

### I. Ms. Earnest's Complaint makes clear that the prescriptive period for her claims began in May 2012.

In Louisiana, the statute of limitations for product-liability claims is one year, which begins "to run from the day injury or damage is sustained."  La. Civ. Code Ann. art. 3492; *see also Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 344–45 (5th Cir. 2010) (noting that "[article] 3492 establishes a one-year prescriptive period for products liability claims").

Ms. Earnest's Complaint establishes that the one-year prescription period commenced in May 2012 (six months after the end of her chemotherapy treatment) because, according to her own allegations, that is when she allegedly sustained her injury.  Ms. Earnest alleges she was treated

with Taxotere from June 2011 through November 2011 (although discovery revealed that her last treatment with Taxotere was actually in August 2011), and that she has suffered "[d]isfiguring permanent alopecia" ever since.  SFC at ¶¶ 10, 12.  The MDL Master Complaint, which Ms. Earnest incorporates by reference in her SFC, defines her injury as "Permanent Chemotherapy Induced Alopecia" or "an absence of or incomplete hair regrowth *six months beyond the completion of chemotherapy*," – *i.e.* May 2012.  AMC at ¶ 181 (emphasis added).

Thus, by her own allegations, Ms. Earnest sustained her injury in <u>May 2012</u>, and the statute of limitations began to run at that time.  Her claim is, therefore, barred on its face because she filed her lawsuit <u>more than four and half years</u> after her alleged injury.

## II.    Ms. Earnest's Plaintiff Fact Sheet confirms that her claims are time barred.

In her PFS, Ms. Earnest alleges that her injuries began even before May 2012.  She alleges that the following injuries first manifested in ***February 2012***, all of which are open and obvious:

- Persistent alopecia of her head—no hair growth on her head after six (6) months of discontinuing Taxotere or Docetaxel treatment.

- Permanent/persistent hair loss on scalp.

- Significant thinning of the hair on her head after six (6) months of discontinuing Taxotere or Docetaxel treatment—***there are visible bald spots on her head no matter how she styles her hair.***

PFS § VI.5.  Elsewhere in her PFS, which she filed in May 2017, Ms. Earnest reports that she has had "alopecia or incomplete hair re-growth" for "around five (5) years" – in other words, since 2012.  PFS § VII.23.  Consequently, the one-year prescriptive period began and expired long before Ms. Earnest filed her lawsuit on December 12, 2016.[8]

---

[8] Sanofi disputes Ms. Earnest's assertions that her injuries, if any, were caused by Taxotere.  Nothing in this Memorandum should be perceived as an admission by Sanofi to the contrary.  However, for the purposes of this Motion for Summary Judgment, even if Taxotere caused Ms. Earnest's injury, her claims are barred by La. Civ. Code Ann. art. 3492.

### III.    No exception applies to save Ms. Earnest's case.

Where, as here, a plaintiff's claims are prescribed on their face, the plaintiff bears the burden of pleading and proving an exception applies. *See Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 256 (La. 2010); *see also Campo v. Correa*, 828 So. 2d 502, 508 (La. 2002). "Generally, the prescriptive period for a tort claim begins to run from the time the plaintiff is injured." *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017). In Louisiana, however, the doctrine of *contra non valentum* "provides some grace for those plaintiffs who are unaware that their injury was caused by a tort." *Id.* But the doctrine "only suspends the running of prescription during the period of time when the action was not reasonable knowable to the plaintiff." *Id.*

#### a.    By Ms. Earnest's own allegations, no tolling exception applies.

To invoke the exception, a plaintiff must allege facts demonstrating that her cause of action was not reasonably knowable within the statute of limitations period. *See In re Mirena IUD Prods. Liab. Litig.*, No. 13-MD-2434, 2015 WL 144214, at *4 (S.D.N.Y. Jan. 9, 2015) (applying Louisiana law). Ms. Earnest makes no such allegations. She does not allege that her hair loss was hidden or latent such that she was unable to discover it. Instead, she alleges that it is – and always has been – open and obvious, so much so that she seeks recovery for the negative effects of alopecia on her body image and identity. AMC at ¶¶ 6, 215–216.

Nor does she claim to be ignorant of the potential cause of her alleged injury. Rather, she claims that her injury reminds her of its potential cause: chemotherapy. Indeed, she acknowledges that hair loss or "alopecia" is a well-known and expected side effect of chemotherapy and describes the plain link between the two: "[a]lopecia symbolizes cancer identity and treatment." *Id.* at ¶¶ 174, 216. In her allegations, Ms. Earnest emphasizes her continual awareness of both her alleged

hair loss and its cause as chemotherapy: "women who suffer from alopecia have a heightened awareness of their appearance"; alopecia can "heighten an individual's everyday awareness that she has or had cancer"; and she remains "stigmatized with the universal cancer signifier— baldness—long after [she] underwent cancer treatment." *Id*. at ¶¶ 216–17, 6. Ms. Earnest makes clear in her pleadings that no exception applies to save her stale claim because she has always been aware of her injury and its potential connection to chemotherapy.

### b. Discovery demonstrates that Ms. Earnest's cause of action was reasonably knowable long before she filed her lawsuit in December 2016.

For an action to be "reasonably knowable" to a plaintiff, she need not gather all of the facts to support her claim nor determine the legal theory upon which her lawsuit is based. *Xarelto*, 2017 WL 4517287, at *2. Instead, she need only have "actual or constructive knowledge" of facts indicating to a reasonable person that she may have a cause of action. *Id*. In a product liability case, "constructive knowledge" of the cause of action is whatever notice would be necessary to excite the attention of a reasonable person and call for inquiry into whether the product could have caused the injury. *Id*.; *Campo*, 828 So. 2d at 510–11.

Here, Ms. Earnest's prescriptive period began in February 2012 because, at that time, she had more than enough notice to "excite" her attention to call for an inquiry. She confirmed at her deposition that the inherent openness of her injury and its plain connection to chemotherapy provided her such notice. Around February 2012 – six months after her last chemotherapy treatment – Ms. Earnest talked to her oncologist, Dr. Carinder, about her lack of hair regrowth because she "thought it should be growing back by then." Barbara Earnest Dep. Tr., at 81:7– 82:16. Her husband was likewise surprised that her hair had not grown back as expected by 2012. Ralph Earnest Dep. Tr. at 138:11–13, attached as **Exhibit D**.

At that time, Ms. Earnest attributed her lack of hair regrowth to chemotherapy:

> Q: In February or March of 2012, when you talked to Dr. Carinder, you assumed that the condition of your hair growth or lack thereof was due to chemo?
>
> A: Right.[9]

And she never thought her hair loss was due to anything else:

> Q: Have you ever thought that your hair loss is due to anything other than chemotherapy?
>
> A: No.[10]

Ms. Earnest claims that Dr. Carinder told her in February 2012 that hair regrowth "takes time…[s]o [she] just kept waiting." Barbara Earnest Dep. Tr., at 82:19–24. The prescription period, however, does not depend on a "pronouncement of a…physician or of an expert." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999) (citing *Hunter v. Sisters of Charity of the Incarnate Word*, 236 So. 2d 565, 568 (La. App. 1st Cir. 1970) (holding that prescription commenced on plaintiff's medical malpractice claim when she was improperly lifted into a hospital bed, not when a chiropractor told her that the improper handling caused her pain)). Instead, the prescription period begins when the plaintiff has sufficient notice of her injury and its potential cause that a reasonable person would investigate. *Xarelto*, 2017 WL 4517287, at *2. Ms. Earnest had such notice here, as demonstrated by the fact that she actually inquired about her hair loss.

Dr. Carinder's alleged statement that hair regrowth "takes time," does not operate to toll the statute of limitations because Ms. Earnest was still under an obligation – if not in February 2012 then sometime in the years that followed – to investigate her claim. Ms. Earnest, however, never talked to Dr. Carinder about her hair loss again. Nor did she talk to any other doctor or seek

---

[9] Barbara Earnest Dep. Tr., at 83:14–18; *see also* 92:2–9.
[10] Barbara Earnest Dep. Tr., at 240:18–20.

any treatment.  Barbara Earnest Dep. Tr., at 240:21–241:9; PFS § VI.6–8.  In fact, she did no further investigation into her claim until she heard about plaintiffs' law firm advertisements on television. Barbara Earnest Dep. Tr., at 71:15–24.  Had she done such an investigation, Ms. Earnest would have discovered that:

- Her husband recalls Dr. Carinder telling them that her hair might "never grow back":

> Q: Did [Dr. Carinder] explain to you that [Ms. Earnest's] hair would grow back after using chemotherapy?
>
> A: He said it was possible it would never grow back.
>
> Q: Okay.  Did Dr. Carinder say to you your hair will grow back, Barbara, after you are done with chemotherapy?
>
> A: No, he didn't say it like that.
>
> Q: What did he say to you?
>
> A: He just said that your hair possible could grow back. Maybe a different texture.[11]

- The consent form she and her husband signed specifically warned of hair loss and the risk "very uncommon, rare, or previously unknown side effects."[12]

- She had documented, both in her consent form and her personal journal, all the chemotherapy medications she had taken, including Taxotere.[13]

- Her first surgeon, Dr. Legarde, gave Ms. Earnest an educational patient handbook when she was first diagnosed with breast cancer (before any treatment).  For Taxotere, the handbook states "rare reports of permanent hair loss":[14]

---

[11] Ralph Earnest Dep. Tr., at 147:18–148:2.

[12] Hematology & Oncology Specialists, LLC Chemotherapy Consent, attached as **Exhibit E.**

[13] *Id.*; Barbara Earnest Dep. Tr., at 73:16–19; Barbara Earnest's personal journal, attached as **Exhibit F,** at PPR_48.

[14] Celeste Legarde Dep. Tr., attached as **Exhibit G**, at 60:23–61:1; Breast Cancer Treatment Handbook, attached as **Exhibit H**, at pg. 195 (bates PPR_1972).

> **DOCETAXEL**
>
> **Brand Name:** Taxotere®
>
> **Method Administered:** I.V.
>
> **Side Effects:** Temporary hair loss; rare reports of permanent hair loss; decreased white blood cell count with increased risk of infection; decreased platelet count with increased risk of bleeding; hair thinning or loss; diarrhea; loss of appetite; nausea; vomiting; rash; numbness and tingling in hands or feet

Thus, Ms. Earnest had constructive knowledge of her claim in February 2012.  To hold differently would be contrary to Louisiana law because otherwise "[s]he can sit on [her] rights indefinitely until an attorney tells [her s]he is actually entitled to benefits." *Causby*, 707 So. 2d at 27; *see also Luckett*, 171 F.3d at 300 (citing *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. App. 1st Cir. 1997)).

Judge Fallon recently granted summary judgment on the basis of prescription over an assertion of *contra non valentem* under substantially similar circumstances.  *See Xarelto*, 2017 WL 4517287, at *3.  Ruling on a motion in *Louiviere v. Janssen*, Judge Fallon found that the plaintiff was on "inquiry notice" of his potential claims for internal bleeding more than two years before filing suit – specifically, once his doctors discontinued his Xarelto treatment.  *Id*.  Because the Xarelto label warned of "bleeding" generally, and the plaintiff's treatment history suggested a causal link (plaintiff was hospitalized for internal bleeding not long after being prescribed Xarelto), Judge Fallon concluded that the plaintiff had "sufficient actual or constructive knowledge to alert a reasonable person that there was a relationship between Xarelto and his bleed and that he could be the victim of a tort" when his doctors told him to stop taking Xarelto.  *Id*.  This was true even though the plaintiff "may not have known how or why" the bleeding was associated or "all the details pertaining to prosecuting his lawsuit and how the Defendant committed its alleged tortious actions." *Id.*

As in the *Louiviere* case, the basic facts on which Ms. Earnest bases her claims reveal that she was on inquiry notice in February 2012, namely:

1) She knew she was injured because her hair was not growing back as she expected it to;[15]

2) She suspected that her lack of hair regrowth was caused by chemotherapy;[16]

3) She knew which chemotherapy medicines she had taken, including Taxotere;[17] and

4) She had materials that informed her of the potential for permanent hair loss with Taxotere.[18]

Like the *Louiviere* plaintiff, it does not matter that Ms. Earnest did not know "how or why" Taxotere was causing her permanent alopecia, or "all the details pertaining to prosecuting [her] lawsuit and how the Defendant committed its alleged tortious actions."  *See Xarelto*, 2017 WL 4517287, at *3.  Because Ms. Earnest knew that her chemotherapy treatment had caused her initial hair loss, that Taxotere was part of her chemotherapy treatment, and that her treatment had ended but her hair was not growing back, Ms. Earnest had "sufficient actual or constructive knowledge to alert a reasonable person that there was a relationship between" her chemotherapy treatment and her injury.  *See id.*

### c. No subsequent Taxotere labeling change tolls the statute of limitations.

These facts are not alterable, nor are Ms. Earnest's claims tolled, by any event occurring *after* her limitations period had begun. Limitations cannot be "re-triggered."  Thus, Taxotere's *subsequent* labeling is irrelevant to Ms. Earnest's claims having prescribed years beforehand.  In December 2015, Sanofi added to the "Post-Marketing Experiences" section of the labeling a

---

[15] Barbara Earnest Dep. Tr., at 81:7– 82:16.

[16] *Id.*, at 83:14–18; 240:18–20.

[17] *Id.*, at 73:16–19; *see also* **Ex. F** at PPR_48.

[18] *See* Celeste Legarde Dep. Tr., at 60:23 – 61:1; *see also* **Ex.** H at pg. 195 (bates PPR_1972).

sentence stating that "[c]ases of permanent alopecia have been reported." *See* AMC ¶ 138.  It is undisputed that the Taxotere labeling has always prominently warned of hair loss (*see, e.g.*, AMC ¶¶ 129; 135).   Where injury and potential causation are known, it is well-established that the possible extent or duration of an injury does not bear on prescription.  *Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996).

For example, in *Fontenot*, the Louisiana Supreme Court declined to apply *contra non valentem* where plaintiff had notice of injury and potential cause – even where the defendant assured plaintiff that her condition was "temporary and would resolve over time."  *Id*.  As the Court explained, "Plaintiffs' contention that [defendant]'s failure to inform them that [plaintiff]'s condition was permanent versus temporary is of no consequence," since prescription is not delayed by "[i]gnorance or misunderstanding of the probable extent or duration of injuries."  *Id.*

The court in *Xarelto* recently concluded that a label change was irrelevant to the question of when the statute began to run on the plaintiff's claim.  2017 WL 4517287, at *3; *see also Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 392–93 (M.D. Pa. 2004) ("Plaintiffs' argument that they only became aware of their claim against the pharmaceutical companies when the label change occurred must fail. The accrual of Plaintiffs' cause of action is not dependent on this label change […] Plaintiff might have ascertained that the original label was inadequate on the basis of his injuries, if indeed the label has anything to do with his negligence and fraud claims."); *N. Tr. Co. v. Upjohn Co.*, 572 N.E.2d 1030, 1038 (Ill. App. 1991) (finding post-treatment warnings irrelevant in failure to warn product liability cases involving prescription drugs).  Indeed, in ruling that the *Louiviere* claim accrued in March 2013, Judge Fallon wholly ignored subsequent "major changes" to the Xarelto label's "Risk of Bleeding" section made in January 2014 and May 2016.  *Xarelto*, 2017 WL 4517287, at *3. Here, Ms. Earnest never read or discussed any subsequent

labeling with healthcare providers.[19]

Such reasoning is especially applicable where, according to Plaintiffs, there has been more than a decade of public discussion about this very injury.[20]  The timeline regarding Ms. Earnest's injury and knowledge is as follows:

- **2006**: The online blog and support group "Taxotears" is formed, consisting of women who claim they experienced permanent hair loss caused by Taxotere.  Posts to the blog, which are publicly available, directly and consistently argue that Taxotere causes permanent and persistent hair loss in breast cancer patients.  *See* AMC ¶ 155.

- **March 4, 2010**: The Globe and Mail publishes an article reporting permanent hair loss as a "lasting side effect of the chemotherapy drug Taxotere," that affects 3-6% of women treated with Taxotere in combination with other drugs.  *See* AMC ¶ 153.

- **March 6, 2010**: CBS News publishes article citing reports of permanent baldness in up to 6.3% of breast cancer patients treated with Taxotere, including members of the "Taxotears" group.  *See* AMC ¶ 155.

- **February 10, 2011**: Ms. Earnest receives patient informational handbook that notes "rare reports of permanent hair loss" with Taxotere.

- **March 31, 2011**: Ms. Earnest signs consent form acknowledging that she has been "given specific drug information with potential side effects" – including hair loss – for Taxotere, Adriamycin, Cytoxan and Neulasta.

- **April 2011**: Ms. Earnest documents in her personal journal the chemotherapy medications in her regimen.

- **April 2011–August 2011**: Ms. Earnest receives chemotherapy treatment and completes her last cycle with Taxotere on August 24, 2011.  *See* PFS §V.12.

---

[19] There is no evidence that Ms. Earnest ever actually read or knew the content of any hair loss warning in any Taxotere labeling, much less the December 2015 label.

[20] *See* AMC ¶¶ 149–162; 180–187 (collecting sources). *See e.g., Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (affirming dismissal where "the district court took judicial notice of an extensive record of documents— all publicly available during the relevant limitations periods—which discussed Pfizer's unpublished clinical trials and the allegation that Zoloft was no more effective than a placebo."); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1117 (N.D. Ill. 1998) (disposing of claims where "the pervasive media coverage and publicity surrounding the issue…leads the court to the inescapable conclusion that a reasonable person in [plaintiffs'] situation should have known of their claim."); *In re Avandia Mktg., Sales Practices And Prod. Liab. Litig.*, No. 07-md-1871, 2014 WL 2011239, at *1 (E.D. Pa. May 16, 2014) (publicly available information put any reasonable plaintiff suffering the injury alleged on notice of potential causes).

- **February 2012**:

  - Per Ms. Earnest's PFS, several of her injures, including permanent/persistent hair loss on scalp, significant thinning of hair, and visible bald spots on her head no matter how she styles her hair, begin. *See* PFS §VI.5.

  - Ms. Earnest believes the condition of her hair is due to chemotherapy.

  - Ms. Earnest asks her oncologist about her lack of hair regrowth.

- **February 2012–early 2016**: Ms. Earnest does no further investigation regarding her hair loss.

- **Early 2016**: Ms. Earnest hears about Taxotere lawsuits from her brother who saw a plaintiffs' law firm advertisement. Barbara Earnest Dep. Tr., at 23:10–18; 74:17–21.

- **December, 12 2016**: Ms. Earnest files this lawsuit.

Based on her own allegations, had Ms. Earnest made basic inquiries into permanent hair loss and Taxotere, she would have readily identified such information in February 2012.

## CONCLUSION

Statute of limitations analysis here is not a shifting, impossible feat. Statutes of limitations run from a trigger date, which is the date of injury and a concrete, recognizable moment. Ms. Earnest unequivocally alleges that she was injured based on the dates of her treatment and a period of persisting hair loss afterwards. The Plaintiffs cannot dispute that 6 months after completing treatment, any reasonable one amongst them would have known of her hair loss, known that it was persisting, and had notice that such persistence may have been caused by chemotherapy treatment. Ms. Earnest does not claim that she thought something other than chemotherapy caused her hair loss, or that she was not warned hair loss might happen. She does not claim that she believed something else was causing her hair loss as, according to her, it persisted over the years after finishing chemotherapy. There is not an ever-sliding scale where at some moment that failure to

14

regrow hair transformed into a "permanent" injury, thereby triggering the statute or, else, there still would not be standing to sue even up until this day.  This analysis easily bars untimely cases like Ms. Earnest's.  Even if a woman questioned whether her hair might eventually regrow, or questioned whether something else might contribute to her hair not regrowing, that woman was on inquiry notice.  An injury cannot, on one hand, be so obvious that it interferes with a Plaintiff's identity, self-image, and social relationships, and, at the same time, be undiscoverable to her.  This is especially true where Ms. Earnest's pleadings establish an ascertainable trigger date for her claims, whether one looks to reasonable individual notice, or broader public dialogue.  Thus, this Court's analysis is simple.  Ms. Earnest's claim accrued long ago.  For the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment.

Date:  February 5, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

***Counsel for Sanofi-Aventis U.S. LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2019, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*