**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                  **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                            **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**


**Tanya Francis, Case No. 2:16-cv-17410**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE**
**LEARNED-INTERMEDIARY DOCTRINE**

Each of Plaintiffs claims in this MDL is based on a failure to warn; Plaintiffs allege

Defendants provided an inadequate warning concerning the risk of permanent alopecia and

Taxotere.[1] Among the many elements to be proven, each individual plaintiff must prove causation.

Under the learned-intermediary doctrine, evidence of causation must be specific to each plaintiff's

treater and requires each plaintiff to show that the allegedly non-disclosed risk was sufficiently

high that it would have changed *her* treating physician's decision to prescribe Taxotere *i.e*., that

but for the allegedly inadequate warning, plaintiff's treating physician would not have prescribed

Taxotere (and thereby avoided plaintiff's injury).[2]

Here, Ms. Francis cannot meet her burden to prove causation for several reasons:

First, there is no evidence Ms. Francis' prescribing oncologist, Dr. Cherian Verghese,

would have read any revision to the Taxotere labeling at any point before prescribing Taxotere to

Ms. Francis in 2009.  Dr. Verghese testified that: (1) has never read the Taxotere labeling in its

---

[1] *See generally* First Master Complaint ¶¶ 220-230; 239-246.
[2] Docetaxel is the generic version of Taxotere. For ease of reference, Defendants use Taxotere
interchangeably.

entirety (he does not think the labeling translates to any relevant changes in treatment); (2) he cannot remember the last time he actually read the Taxotere labeling; (3) and he cannot remember the substance of any change to the Taxotere labeling since 2012 or 2013 (although there have been at least five revisions since 2012); and (4) he specifically denied knowing that Defendants updated the Taxotere labeling in December 2015 to include information that cases of permanent hair loss had been reported.  Thus, by his own testimony, any subsequent information added to the Taxotere labeling would have had no effect on his decision to prescribe Taxotere to Ms. Francis.  Ms. Francis cannot prove causation under circumstances where giving an adequate warning would be futile.

Second, Ms. Francis cannot establish causation because Dr. Verghese was already aware of the information Ms. Francis claims should have been provided by Sanofi in the Taxotere labeling. When Dr. Verghese chose Ms. Francis' chemotherapy regimen in 2009, he testified that he was *already aware* of a potential risk of permanent alopecia. For example, "at the time" he prescribed Taxotere to Ms. Francis, Dr. Verghese's practice was to tell his chemotherapy patients to make a wig in case their hair does not grow back. Likewise, he testified that, he never told his chemotherapy patients (and did not tell Ms. Francis) that their hair loss would be temporary.  Under those circumstances, Ms. Francis cannot establish causation.

Third, Ms. Francis cannot meet her burden to show that the additional non-disclosed risk of permanent alopecia was sufficiently high that it would have changed Dr. Verghese's decision to prescribe Taxotere.  Ms. Francis elicited no testimony from Dr. Verghese that the possible *risk of permanent alopecia* and Taxotere was sufficiently high that it would have caused him to choose a non-Taxotere regimen instead.  There is not only an absence of evidence; there is also affirmative testimony foreclosing causation; Dr. Verghese testified he believes any risk of permanent hair loss that might be applicable to Taxotere is also applicable to Taxol, the other taxane used in

chemotherapy.[3]   Thus, Ms. Francis cannot establish that providing information regarding the *risk of permanent alopecia* and Taxotere would have changed Dr. Verghese's prescribing decision. By his own testimony, he would have assumed Taxol carried the *same* risk of permanent hair loss. Under these circumstances, Ms. Francis cannot create a genuine dispute on the issue of causation.

For these reasons, the Court should dismiss Plaintiff's lawsuit because causation is an essential element of all her claims.

## STATEMENT OF UNDISPUTED FACTS

Defendant have submitted a separate statement of facts, pursuant to LR 56.  The pertinent facts are discussed below in the Argument.

## STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment initially bears the responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party can meet this burden by pointing out that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 322–23.

Once the moving party has met its burden, the nonmoving party bears the burden of coming forward with evidence of each essential element of its claim, such that a reasonable jury could find in its favor. *Id.* The existence of a mere scintilla of evidence to the support the nonmoving party's position, however, will not defeat summary judgment; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242,

---

[3] Defendants use Taxol and paclitaxel interchangeably.

252 (1986). "The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *In re Trasylol Prods. Liab. Litig.*, No. 08-md-01928, 2010 WL 6098571, at *4 (S.D. Fla. Mar. 16, 2010).

## ARGUMENT

I. **THE LEARNED-INTERMEDIARY DOCTRINE GOVERNS ALL OF MS. FRANCIS'S CLAIMS**

Warnings claims "must be viewed through the lense of the learned intermediary doctrine, which Louisiana law applies to claims of failure to warn involving drugs or medical devices dispensed by a physician." *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001). Under the learned-intermediary doctrine, "[a prescription drug] manufacturer has no duty to warn the patient, but need only warn the patient's physician." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991); *see also Grenier*, 99 F. Supp. at 766 ("Defendants' duty runs only to the implanting physician as learned intermediary").

Here, Ms. Francis asserts two claims under Louisiana law: (1) inadequate warnings under LSA-RS 9:2800.57; and (2) breach of warranty in redhibition. *See* Ex. F, SFC pp. 4-7. Obviously, the first claim is a warnings claim. Ms. Francis's redhibition claim also sounds in failure to warn; in support of that claim, Ms. Francis alleges "Defendants were aware of the substantial risks of disfiguring permanent alopecia associated with TAXOTERE but failed to fully disclose those risks to Plaintiff." Ex. F, SFC ¶ 15. Because both her claims are based on a failure to warn, they are governed by the learned-intermediary doctrine. *See In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), *aff'd sub nom. In re Norplant Contraceptive Prod. Litig.*, 165 F.3d 374 (5th Cir. 1999) ("The gravamen of all of Plaintiffs' causes of action, including misrepresentation and violation of the DTPA, is that Wyeth failed to adequately warn of or disclose

the severity of Norplant's side effects. Therefore, the learned intermediary doctrine applies to all of Plaintiffs' causes of action. Additionally, whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn.").

## II.   MS. FRANCIS CANNOT ESTABLISH CAUSATION UNDER THE LEARNED-INTERMEDIARY DOCTRINE

To prove a failure-to-warn claim under the learned-intermediary doctrine, the Fifth Circuit has articulated a two-pronged test:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.
>
> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury."

*Stahl v. Novartis Pharm. Corp*., 283 F.3d 254, 265–66 (5th Cir. 2002) (internal citation omitted); *Willett*, 929 F.2d at 1098; *Grenier*, 99 F.Supp.2d at 765. Both prongs must be satisfied, and a drug manufacturer is entitled to summary judgment "if it can demonstrate the absence of a genuine factual dispute concerning the second prong of the learned-intermediary test, namely causation." *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *4 (E.D. La. Feb. 20, 2008).

Concerning the second prong (i.e. causation), it is well-established that each plaintiff must prove causation with evidence specific to her treating physician: "the plaintiff must show that a proper warning would have changed the decision of ***the treating physician***, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *See Willett*, 929 F.2d at 1099 (emphases added); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) ("This causation requirement means that the plaintiff must show that 'a proper warning would have changed the decision of ***the treating physician***, i.e., that but for the inadequate

warning, the treating physician would not have used or prescribed the product.'" (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d at 1099); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) ("To demonstrate causation under Louisiana law, the plaintiff must ultimately show that ***the doctor*** would not have prescribed [the drug] had the doctor received a proper warning."); *Rhodes v. Bayer Healthcare Pharm. Inc.*, 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) ("Plaintiffs bear the burden to show that a proper warning would have changed the decision of ***Dr. Chandler***, i.e., that but for the inadequate warning, he would not have used or prescribed Avelox.") (emphases added).  In other words, Ms. Francis must prove that had Dr. Verghese been provided the information she claims was missing, *i.e.* the risk of permanent alopecia, he would not have prescribed Taxotere.  Here, Ms. Francis cannot meet her burden to prove warnings causation for at least three reasons:

### A.    Ms. Francis cannot establish warnings causation because her treating physician would not have read the Taxotere labeling

If the Plaintiff's treating physician testifies they would not have read an adequate warning, Plaintiff cannot establish causation.  *See, e.g., Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004) (affirming summary judgment based on lack of evidence of causation under Louisiana law: "[b]ecause [plaintiff's treater] failed to read the warnings provided, he could not truthfully testify as to whether the warnings were adequate to prevent him from prescribing the drug to [plaintiff]"); *Felice v. Valleylah, Inc.* 520 So.2d 920, 927 (La. App. 1987) (holding "the jury's finding of liability . . .  was clearly wrong, since there is absent the essential element of cause in fact" because "[Plaintiff's treater] admitted that she had never read the warning label on the device itself, and that she had never read the manual"); *see also Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) (plaintiff did not meet summary judgment opposition burden of establishing alleged

inadequate warning was "producing cause" of injury under Texas' similar learned intermediary doctrine where prescribing physician testified she did not recall ever reading package insert).

Here, Ms. Francis' treater, Dr. Verghese, testified unequivocally that:

- He has never read the Taxotere labeling in its entirety, "because the labeling goes from studies, dosing protocols, diluents and IV fluids, which don't really translate to any relevant changes in treatments."  Ex. D, Verghese Dep. 139:4-7.

- He could not recall the last time he actually reviewed the Taxotere labeling, *id*. at 117:9-12;

- He could not recall whether the Taxotere labeling has changed in the past five or six years (i.e. since 2012 or 2013), *id*. at 139:15-22; and

- He did not know "that Sanofi updated its labeling for Taxotere in December of 2015 to include a warning of permanent hair loss." *Id*. 117:15-22 (quoting Ms. Francis' counsel's question).

Because Dr. Verghese has never read the Taxotere labeling in its entirety (he does not think it translates to any relevant changes in treatment), he cannot remember the last time he actually read the Taxotere labeling, and he cannot remember the substance of any labeling changes since 2012 or 2013 (although there have been six versions since 2012),[4] and he specifically denied knowing that Sanofi updated the Taxotere labeling in December 2015 to include information on cases of permanent hair loss, there can be no dispute that Sanofi providing the allegedly non-disclosed information to Dr. Verghese through a labeling revision "would have been futile under the circumstances." *Felice*, 520 So.2d at 927.

---

[4] The effective dates of the various Taxotere labeling versions since 2012 are: 4/13/2012, 6/26/2013, 12/13/2013, 11/14/ 2014, 12/11/2015, and 10/18/2018.

**B.     Ms. Francis cannot establish warning causation because her treating physician had actual knowledge of the allegedly undisclosed risk**

If the Plaintiff's treating physician was already aware of the substance of the allegedly adequate warning, Plaintiff cannot establish causation.  *See*, *e.g.*, *Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004) ("[Plaintiff's treating physician's] affidavit acknowledges that . . . he was aware of the risks of the drug independently of Wyeth's labels; therefore, Wyeth's warning (adequate or inadequate) played no role in the events leading to Hall's injury"); *In re Cook Med., Inc. IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, 2018 WL 6415585, at *2 (S.D. Ind. Dec. 5, 2018) ("[W]here 'a learned intermediary has actual knowledge of the substance of the alleged warning and would have taken the same course of action even with the information the plaintiff contends should have been provided, courts typically conclude that ... the causal link is broken and the plaintiff cannot recover.'" (quoting *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272 (11th Cir. 2002)).

Ms. Francis cannot establish causation based on failure to warn of the risk of permanent alopecia because Dr. Verghese was already aware of that purported risk.  By his own testimony, Dr. Verghese was already aware of some potential risk of permanent alopecia for at least two reasons: *first*, "at the time" he prescribed Taxotere for Ms. Francis, *id*. at 201, Dr. Verghese's practice was to tell his chemotherapy patients to make a wig ***in case their hair does not grow back***. Ex. D, Verghese Dep. 105, 109.  *Second*, he never tells chemotherapy patients (and did not tell Ms. Francis) that hair loss will be temporary.  *Id*. 103, 147-48. This testimony establishes that Dr. Verghese was already aware of some risk of permanent alopecia with chemotherapy.  Where, as here, the treating physician had actual knowledge of the allegedly non-disclosed risk, Ms. Francis cannot establish causation.  *See, e.g. Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004) ("[T]he causal link between a patient's injury and the alleged failure to warn is broken when

the prescribing physician had substantially the same knowledge as an adequate warning from the manufacturer should have communicated to him.").

C. **Ms. Francis cannot establish warning causation because there is no evidence "the additional non-disclosed risk" would have changed her treating physician's decision**

Ms. Francis has elicited no testimony from Dr. Verghese to meet her burden to show that the additional non-disclosed risk was sufficiently high that it would have changed Dr. Verghese's decision to prescribe Taxotere.  As the Fifth Circuit has explained, a plaintiff has the burden to produce evidence concerning how a particular plaintiff's prescriber would have conducted an individualized risk/benefit analysis as to that plaintiff, and "[t]he burden remains on the plaintiff to demonstrate that *the additional non-disclosed risk* was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff. *Thomas v. Hoffman-LaRoche, Inc*., 949 F.2d 806, 814 (5th Cir. 1992) (applying Mississippi law) (emphasis added).

Here, Ms. Francis cannot meet her burden on causation.  First, Ms. Francis failed to elicit testimony from Dr. Verghese that the risk of permanent alopecia would have caused him to change his prescribing decision in this case (*i.e.* prescribe a Taxol-based regimen instead of Taxotere-based regimen). That absence of such evidence is dispositive. *Grenier*, 99 F. Supp. 2d 766 (granting summary judgment based on a lack of evidence of causation where the plaintiff "submitted no proof to show how Dr. Ramey would have reacted given a warning of the possibility or frequency of silicone gel bleed").

Second, there is affirmative testimony that resolves the issue of causation.  According to Dr. Verghese, any risk of permanent hair loss applicable to Taxotere is applicable to Taxol, and vice versa. *Id*. 109:8-19 ("So if I were to see hair loss in one, I would predict hair loss in the other

on too, so my recommendation is to just make a wig all the time."); 109:17-19 ("If there's a report on one being permanent, I would apply it to the other one too.").

Based on this testimony, Ms. Francis cannot establish providing the information regarding Taxotere and the non-disclosed risk would have changed the Dr. Verghese's decision; by his own testimony, he would have assumed Taxol carried the same risk. Under these circumstances, Ms. Francis cannot establish causation where there is affirmative evidence that additional information would not have changed Dr. Verghese's mind.

Moreover, there is no basis for an inference or speculation that the information in the modest December 2015 update to the Taxotere labeling would have changed Dr. Verghese's decision. In December 2015, after discussions between Defendants and FDA and FDA's review of relevant safety data, the "post-marketing experiences" section of the Taxotere package insert was revised to include the following language: "[c]ases of permanent alopecia have been reported." *See* Ex. C, Taxotere Labeling, dated December 11, 2015. This change had no impact on the risk-benefit profile of Taxotere. Nor did FDA advise doctors to change their prescribing practices or avoid using the drug in certain classes of patients. Further, Dr. Verghese continues to believe that Taxotere is an effective, life-saving drug, when used as part of a chemotherapy regimen, *id*. at 128:8-12, and he still recommends to his breast-cancer patients the same Taxotere-containing regimen that he chose for Ms. Francis. *Id*. at 145:25 to 146:4. Under these circumstances, , Ms. Francis cannot meet her burden "to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Thomas*, 949 F.2d at 814.

For the foregoing reasons, Ms. Francis cannot establish causation. Summary judgment is warranted under Louisiana law in a prescription medication failure-to-warn case where, as here,

Plaintiff fail to introduce evidence that a different warning would have caused their treating physician to change her decision to prescribe the medication at issue. Courts around the country, including MDL courts, routinely grant summary judgment in prescription pharmaceutical and medical device cases where there is no evidence that a different warning would have changed the physician's prescribing decision. *See*, *e.g.*, *In re Cook Med., Inc. IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, 2018 WL 6415585, at *2 (S.D. Ind. Dec. 5, 2018);  *In re C.R. Bard, Inc.*, 2013 WL 2431975, at *7-8 (S.D. W. Va. June 4, 2013); *see also Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 2014 (5th Cir. 2008) (Texas law); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1024 (10th Cir. 2001) (Oklahoma law); *Odom v. G.D. Searle & Co*., 979 F.2d 1001, 1004 (4th Cir. 1992) (South Carolina law); *Garrison v. Novartis Pharm. Corp.*, 30 F. Supp. 3d 1325, 1335 (M.D. Ala. 2014) (Alabama law); *D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 2d 880, 891 (D. Ariz. 2013) (Arizona law); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 902351, at *2 (E.D. Pa. Apr. 2, 2009) ("even assuming the warnings are inadequate, plaintiffs must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Woulfe v. Eli Lilly & Co.*, 965 F. Supp. 1478, 1486 (E.D. Okla. 1997) (Oklahoma law). The prescribing physician's decision in such cases "breaks the causal chain as to the allegedly inadequate warnings." *Miller v. Pfizer Inc*., 196 F. Supp. 2d 1095, 1130 (D. Kan. 2002) (Kansas law).

III.    **MS. FRANCIS'S REDHIBITION CLAIM IS SUBJECT TO DISMISSAL ON ALTERNATIVE GROUNDS**

To the extent the Court finds Ms. Francis' breach of redhibition claims are not controlled by the learned-intermediary doctrine, Defendants are entitled to summary judgment on alternative grounds: Ms. Francis has no evidence of any manufacturing or design defect with respect to

Taxotere, nor is there any evidence that some "vice" rendered Taxotere "useless" or "inconvenient" under La. Civ. Code Ann. Art. 2520.

None of Ms. Francis' experts claim Taxotere is wholly or substantially useless. To the contrary, one of Ms. Francis' experts, Dr. Bosserman, believes Taxotere is highly effective and has contributed to saving lives. Ex. H, Deposition of Dr. Linda Bosserman ("Bosserman Dep.") 65:10-13;100:11-13; Dr. Bosserman also agrees it is possible Ms. Francis is alive today because she received treatment for her cancer that included Taxotere. Ex. H, Bosserman Dep. 536:1-7.

Ms. Francis also does not complain of any physical or functional failure in the Taxotere she received. Nor could she. It is undisputed that Taxotere was prescribed to Ms. Francis in order to help treat her breast cancer, and that after taking Taxotere, Ms. Francis is currently cancer-free. Ex. E, Francis PFS p. 15. Because Taxotere is demonstrably effective and worked as intended, Ms. Francis cannot establish a redhibitory defect. *E.g., In re Rezulin Prods. Liab. Litig*., 361 F.Supp.2d 268, 280 (S.D.N.Y. 2005) (granting defendant summary judgment in MDL case applying Louisiana law where plaintiffs could not demonstrate a redhibitory defect in a prescription medication because the drug was effective in treating the condition it was designed to treat).

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment on Ms. Francis' claims.

Date:  February 5, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*