# EXHIBIT C

**American Psychiatric Association Ethics Committee Opinion**

**Question:** May a psychiatrist give an opinion about an individual in the public eye when the psychiatrist, in good faith, believes that the individual poses a threat to the country or national security?

**Answer:** Section 7.3 of *The Principles of Medical Ethics With Annotations Especially Applicable to Psychiatry* (sometimes called "The Goldwater Rule") explicitly states that psychiatrists may share expertise about psychiatric issues in general but that it is unethical for a psychiatrist to offer a professional opinion about an individual based on publicly available information without conducting an examination.  Making a diagnosis, for example, would be rendering a professional opinion.  However, a diagnosis is not required for an opinion to be professional.  Instead, when a psychiatrist renders an opinion about the affect, behavior, speech, or other presentation of an individual that draws on the skills, training, expertise, and/or knowledge inherent in the practice of psychiatry, the opinion is a professional one.  Thus, saying that a person does not have an illness is also a professional opinion.  The rationale for this position is as follows:

1. When a psychiatrist comments about the behavior, symptoms, diagnosis, etc., of a public figure without consent, the psychiatrist violates the fundamental principle that psychiatric evaluation occurs with consent or other authorization. The relationship between a psychiatrist and a patient is one of mutual consent.  In some circumstances, such as forensic evaluations, psychiatrists may evaluate individuals based on other legal authorization such as a court order.  Psychiatrists are ethically prohibited from evaluating individuals without permission or other authorization (such as a court order).

2. Psychiatric diagnosis occurs in the context of an evaluation, based on thorough history taking, examination, and, where applicable, collateral information.  It is a departure from the methods of the profession to render an opinion without an examination and without conducting an evaluation in accordance with the standards of psychiatric practice.  Such behavior compromises both the integrity of the psychiatrist and of the profession itself.

3. When psychiatrists offer medical opinions about an individual they have never examined, this behavior has the potential to stigmatize those with mental illness. Patients who see a psychiatrist, especially their own psychiatrist, offering opinions about individuals whom the psychiatrist has not examined may lose confidence in their psychiatrist and/or the profession and may additionally experience stigma related to their own diagnoses.  Specifically, patients may wonder about the rigor and integrity of their own clinical care and diagnoses and confidentiality of their own psychiatric treatment.

Psychiatrists, and others, have argued against this position. We address five main arguments against this position:

a. Some psychiatrists have argued that the "Goldwater Rule" impinges on an individual's freedom of speech as it pertains to personal duty and civic responsibility to act in the interest of the national well-being. This argument confuses the personal and professional roles of the psychiatrist. The psychiatrist, as a citizen, may speak as any other citizen. He or she may observe the behavior and work of a public figure and support, oppose, and/or critique that public action. But the psychiatrist may not assume a professional role in voicing that critique in the form of a professional opinion for the reasons discussed above, those being, lack of consent or other authorization and failure to conduct an evaluation.

b. Psychiatrists have also argued that the "Goldwater Rule" is not sound because psychiatrists are sometimes asked to render opinions without conducting an examination of an individual. Examples occur, in particular, in certain forensic cases and consultative roles. This objection attempts to subsume the rule with its exceptions. What this objection misses, however, is that the rendering of expertise and/or an opinion in these contexts is permissible because there is a court authorization for the examination (or an opinion without examination), and this work is conducted within an evaluative framework including parameters for how and where the information may be used or disseminated. In addition, any evaluation conducted or opinion rendered based on methodology that departs from the established practice of an in-person evaluation must clearly identify the methods used and the limitations of those methods, such as the absence of an in-person examination.

c. Psychiatrists have further argued that they should be permitted to render professional expertise in matters of national security and that the "Goldwater Rule" prohibits this important function. While psychiatrists may be asked to evaluate public figures in order to inform decision makers on national security issues, these evaluations, like any other, should occur with proper authority and methods within the confidentiality confines of the circumstances. Basing professional opinions on a subset of behavior exhibited in the public sphere, even in the digital age where information may be abundant, is insufficient to render professional opinions and is a misapplication of psychiatric practice.

d. Some psychiatrists have argued that they have a responsibility to render an opinion regarding public figures based on *Tarasoff* duties to warn and/or protect third parties. This position is a misapplication of the *Tarasoff* doctrine. Actions to warn and/or protect a third party occur in situations in which a psychiatrist is providing treatment to or an evaluation of an individual who poses a risk to others and *Tarasoff* serves as a rationale for a limited sharing of otherwise

    confidential or privileged information.  However, for information in the public domain, law enforcement agencies that have the same, and perhaps even greater, access to information about the individual are charged with protecting the public.

e. Finally, some psychiatrists have argued that rendering an opinion based on information in the public domain without conducting an examination should be permissible because psychiatrists are often involved in psychological profiling.  However, psychological profiling differs markedly from self-initiated public comments as described in this opinion.  Psychological profiling occurs when a law enforcement or other authorized agency or authorized party engages a mental health professional to provide information about the characteristics of an individual who might have perpetrated a crime; the behavior of a suspect or other figure; other characteristics of an individual; or a prediction of future risk.  The authorization for this work derives from the requester and is not initiated by the psychiatrist.  It is also meant to be shared with the requester, and not the general public.  Finally, as this work often lacks examination of the individual and relevant data from appropriate collaterals, the psychiatrist must explicitly address the limitations of the methods used in rendering a profile, should not opine about a diagnosis, should not include a diagnostic opinion, and must clearly state the inherent limitations in making predictions about future behavior.

Nothing in this opinion precludes the psychological profiling of historical figures aimed at enhancing public and governmental understanding of these individuals.  As Opinion Q.7.a states, this profiling should not include a diagnosis and should be based in peer-reviewed scholarship that meets relevant standards of academic scholarship. Such scholarship should clearly identify the methods used, materials relied upon, and methodologic limitations, including the absence of formal evaluation of the subject of inquiry.

APA Ethics Committee
March 15, 2017