**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                              SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635;
Tanya Francis, Case No. 2:16-cv-17410;
Barbara Earnest, Case No. 2:16-cv-17144

---

**MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS'**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA PLUNKETT**

---

Defendants request that the Court exercise its gatekeeping powers to exclude or limit Dr. Laura Plunkett from offering the following opinions:

(1)     Taxotere is associated with a "greater risk" of permanent alopecia compared to "some other" chemotherapy drugs, including Taxol; and

(2)     Taxotere is "more toxic" than Taxol.

These opinions are inadmissible under Federal Rule of Evidence 702 for the following reasons.

First, Dr. Plunkett's opinion that Taxotere is associated with a "greater risk" of permanent alopecia than Taxol is unhelpful and unreliable. She cannot reliably give an opinion that involves a comparison (*i.e.* "greater risk") because she is unable to *quantify* the degree of the "greater risk" and she does not know the relevant rates necessary to offer such an opinion. If Dr. Plunkett, as Plaintiffs' expert, is unable to articulate this "greater risk," the Court should not demand a lay jury to do so for her.

Second, Dr. Plunkett's opinion that Taxotere is "more toxic" than Taxol is irrelevant. This case is about a single, alleged side effect: permanent hair loss. Loosely aggregating and comparing

unrelated "toxicities," which Dr. Plunkett premised on a study that she admits did not evaluate hair loss, does not "fit" the facts of these cases.

Finally, the Court should preclude Dr. Plunkett from providing expert opinions on topics she did not analyze (pursuant to a stated scientific methodology) in her expert report and specifically disavowed at her deposition, including: causation; regulatory opinions; promotional activities related to Sanofi and Taxotere; and Taxotere's efficacy.[1]   Those opinions are inadmissible under Federal Rules of Civil Procedure 26 and 37.

## FACTUAL BACKGROUND

Plaintiffs disclosed Dr. Laura Plunkett on November 9, 2018.  Although, Dr. Plunkett holds herself out as a "pharmacologist, toxicologist, United States Food and Drug Administration (FDA) regulatory specialist," for the past 20 years, Dr. Plunkett has worked as a full-time expert witness. Plunkett Report at 1 ¶ 1 (Ex. A); Plunkett Dep. 10:2–4 (Ex. B).  In the last five years, she has provided opinions and testimony more than 70 times.  Plunkett Report at "List of Testimony for Dr. Laura M. Plunkett" (Ex. C).  Last year alone, Dr. Plunkett estimates that she was deposed "at least" 25 times.  Plunkett Dep. 9:5–9.

Dr. Plunkett is not a medical doctor.  Plunkett Dep. 70:3–10; 80:14–81:5.  She does not diagnose or treat patients with breast cancer or who have experienced hair loss.  *Id.* at 70:3–10; 80:14–81:5.  She has never evaluated or selected a chemotherapy regimen for a breast cancer patient.  *Id.* at 80:25–81:9.  By her own admission, she has no training in, nor is she an expert in oncology, dermatology, pathology, or epidemiology.  *Id.* at 81:6–21.  Dr. Plunkett has never conducted a study, written or published any peer-reviewed literature, given a presentation, or—*at*

---

[1]   Defendants also seek to preclude Dr. Plunkett's testimony for the reasons identified the Memorandum in Support of Sanofi Defendants' Omnibus Motion to Preclude Improper Expert Testimony, filed concurrently herewith.

*least until asked to do so in this case*—provided an expert opinion on alopecia or breast cancer. *Id.* at 108:4–109:18. Despite her background, Dr. Plunkett offers the following opinions on chemotherapy and permanent hair loss: (1) Taxotere is associated with a "greater risk" of permanent alopecia than other chemotherapy drugs; and (2) Taxotere is "more toxic" than Taxol. Plunkett Report at 23 ¶ 51. Neither opinion is helpful; nor are they supported by reliable data and methodology.

## LEGAL STANDARD

Federal Rule of Evidence 702 controls the admission of expert testimony. Under Rule 702, the Court's gatekeeping function first involves determining whether the expert is qualified; then it "involves a two-part inquiry into reliability and relevance":

> First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.
>
> Second, the Court must determine whether the expert's reasoning or methodology is relevant. The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence.

*Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted).

The "reliability analysis applies to *all aspects* of an expert's testimony," including "the methodology, the *facts underlying the expert's opinion*, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (emphasis added). Importantly, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Id.* These "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000), provide that "conjecture, hypothesis, subjective belief, or unsupported

3

speculation are impermissible grounds on which to base an expert opinion." *Wehling v. Sandoz Pharm. Corp.*, No. 97-2212, 162 F.3d 1158, 1998 WL 546097, at \*5 (4th Cir. Aug. 20, 1998) (Table Decision). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

Courts also consider whether the expert's findings are litigation-driven or results-driven. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (*Daubert II*). In making this assessment, courts have considered "whether experts are 'proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.'" *Burst*, 120 F. Supp. 3d at 551 (quoting *Daubert II*, 43 F.3d at 1317)). Defendants do not bear the burden of demonstrating its inadmissibility. *See Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 534 (W.D. Pa. 2003).

As to relevance, the Court must determine whether the proffered expert testimony is sufficiently tied to the facts in issue that it will aid the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (the district court's "gatekeeping role" requires ensuring that the expert testimony "is relevant to the task at hand"). "The question here is whether the reasoning or methodology 'fits' the *facts of the case* and will thereby assist the trier of fact to understand the evidence." *Burst*, 120 F. Supp. 3d at 551 (emphasis added).

## ARGUMENT

## I.   DR. PLUNKETT'S OPINION THAT TAXOTERE IS ASSOCIATED WITH A "GREATER RISK" OF PERMANENT ALOPECIA IS INADMISSIBLE.

Dr. Plunkett concedes that numerous chemotherapies used to treat breast cancer are "associated" with permanent hair loss. Her non-exhaustive list includes cisplatin, doxorubicin, 5-

fluorouricil, cyclophosphamide, prednisone, Taxol, and Taxotere.[2]  Plunkett Dep. 24:13–25:6, 115:11–17, 116:19–117:19, 185:14–186:14 (Ex. B).  While these chemotherapies are administered in a multitude of combinations and sequences, Dr. Plunkett is unable to determine which drug in which combination could be the cause of any one particular woman's hair loss.  *Id.* at 25:11–20; 158:1–14.  Nevertheless, Dr. Plunkett's opinion is that:

> [t]he available scientific information indicates that Taxotere is associated with a ***greater risk*** of permanent alopecia as compared to some other anti-neoplastic drug products, including Taxol.

Plunkett Report at 23 ¶ 51 (Ex. A) (emphases added).  But Dr. Plunkett's "greater risk" opinion is inadmissible because she is unable to *quantify* the "greater risk"—rendering the opinion unhelpful to the jury and confirming it is not based on a reliable methodology or adequate data.

### A.     Dr. Plunkett's "greater risk" opinion is unhelpful to the trier of fact.

Rule 702 allows a qualified expert to present testimony that "will help the trier of fact" in understanding the evidence or in determining a factual issue.  Fed. R. Evid. 702.  Testimony that "would likely confuse or mislead rather than assist the jury" is not helpful and does not comport with *Daubert*.  *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1137 (D. Or. 2010); Fed. R. Civ. P. 403.  *See also In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1296 (M.D. Fla. 2007) ("When a theory has not been verified by testing, it obviously has not been peer-reviewed. Without verification, [the expert's] theory remains an educated guess.").

Here, Dr. Plunkett's "greater risk" opinion is not helpful to the jury because, as Dr. Plunkett admits, she failed to identify (and therefore could not compare) other relevant incidence rates that

---

2    Undermining her reliability, Dr. Plunkett's testimony that these chemotherapies are associated with permanent hair loss directly contradicts the opinions contained in her report.  Plunkett Report at 23 ¶ 49 ("A review of the published scientific literature and the most recent FDA labeling shows that cisplatin, fluorouracil, and doxorubicin have not been associated with a risk of irreversible alopecia.").  Such inconsistent expert opinions should not be presented to a jury. *See U.S. v. Harry*, 20 F. Supp. 3d 1196, 1241 (D.N.M. 2014).

would be necessary to offer a comparative "greater risk" opinion.  First, while Dr. Plunkett's "greater risk" opinion hinges on a direct comparison between Taxotere and other cancer drugs— namely Taxol[3]—she is unable to *quantify* the supposed "greater risk" associated with Taxotere over Taxol, whether those are given as a single agent or in combination regimens:

> Q.    Okay. But based on the evidence that you reviewed, you're not able to tell us, by percentage, the extent to which the risk for developing permanent hair loss is greater in Taxotere versus Taxol, true?
>
> A.    No, I can't—
>
> Q.    You can't give us a number?
>
> A.    I can't give you an exact number. That is true.
>
> Q.    You simply cannot quantify the difference in risk for permanent alopecia between Taxotere and Taxol both given as single agent medications, true?
>
> A.    I can't give you an exact number to quantify it.  That is true. […]
>
> Q.    And that would be true if we were to compare them as combination regimens as well, true?
>
> [objection]
>
> Q.    Can't – can't quantify this increased risk that you talk about, true?
>
> A.    I can't give you a specific number to quantify it.  That is true.

Plunkett Dep. 237:15–23; 238:23–239:10.

Second, she also could not identify (and therefore could not compare) other relevant incidence rates that would be necessary to offer a comparative "greater risk" opinion, including:

---

[3]    Before being retained, Dr. Plunkett, had never performed any comparison between these two drugs.  Plunkett Dep. 126:12–18 ("Q. Prior to your involvement with this litigation, had you done any work specifically comparing Taxotere to Taxol? A. No, I had not.  Q. Had you done any work comparing the safety or efficacy of Taxotere or Taxol?  A. No. I don't believe I had.")  Opinions developed "expressly for purposes of testifying"—such as these—should be excluded.  *Burst*, 120 F. Supp. 3d at 551.

- The rate at which she believes Taxotere is associated with permanent alopecia. Plunkett Dep. 151:10–15; 162:2–163:5.

- The rate of permanent alopecia for Taxol, either as a single therapy medication or in combination with other chemotherapies. *Id.* at 163:17–164:4.

- The rate of permanent alopecia between chemotherapies using a taxane (*i.e.*, Taxotere or Taxol) and those regimens without a taxane. *Id.* at 161:14–21.

- The rate of permanent alopecia for doxorubicin or cyclophosphamide, two drugs frequently given in combination with Taxotere and Taxol. *Id.* at 163:5–16.

- The rate of permanent alopecia when these drugs are administered either as a single agent or in combination. *Id.* at 289:12–20.

Without quantifiable incidence rates of permanent alopecia for either Taxotere or Taxol (or the bulleted incident rates above), Dr. Plunkett cannot give an opinion that involves a comparison (*i.e.* "greater risk") when she does not know the incident rates of any of the events she is comparing. Under these circumstances, her "greater risk" opinion is unreliable and unhelpful to the jury and therefore inadmissible.

Dr. Plunkett further testified that side effects (such as permanent hair loss), depend upon the type, dose, and length of the treatment. Plunkett Dep. 89:2–11. Despite that, she could not identify what administration schedule or dosing level would lead to a "greater risk" of permanent alopecia with Taxotere. *Id.* at 34:13–25; 37:15–38:19. She also admitted there are many confounding factors with permanent hair loss (including age, menopause, family history, genetics, and other medications). *Id.* at 96:5–10; 289:12–295:20. And, when given in combination, Dr. Plunkett cannot isolate which specific chemotherapy would be associated with permanent hair loss. *Id.* at 158:1–160:7. Not surprisingly, Dr. Plunkett was unable to quantify the supposed

"greater risk" associated with Taxotere over Taxol—whether given as a single agent or in combination regimens.

Dr. Plunkett, lacking any concrete data to underpin her opinion, intends to tell the jury there is some unverifiable, unquantifiable, and generalized "greater risk" of permanent hair loss with Taxotere; an opinion that, if not excluded, will be granted the Court's imprimatur of expertise. But her opinion "simply lacks the foundation and reliability necessary to support expert testimony." *Viterbo*, 826 F.2d at 424 ("Without more than credentials and a subjective opinion," an "expert's testimony that 'it is so' is not admissible."). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (citation omitted). Here, the risk of confusion—not to mention prejudice—is obvious. The jury will necessarily be required to step into Dr. Plunkett's "expert" shoes to backfill her otherwise incomplete analysis.

Put differently, jurors will have to quantify Dr. Plunkett's "greater risk" with their own, non-expert guesswork. While one juror may theorize that there is a 10,000-fold "greater risk" with Taxotere, another may assume the risk is infinitesimal. Still other jurors may speculate that Taxotere always presents a "greater risk," even though Dr. Plunkett admitted there are numerous, individualized confounding factors for permanent hair loss. Regardless, Dr. Plunkett will not be able to assist the jury in this speculative endeavor. She can only offer her best guess as to what "greater risk" means. Plunkett Dep. 237:3–6 ("I can't tell you whether that risk is twofold, threefold or tenfold. . . ."). In short, the Court should not allow the jury's speculation to serve as a substitute for the expert analysis Dr. Plunkett did not perform. Because the jury will be left to speculate and will certainly become confused, the testimony should be excluded. *See U.S. v. Allibhai*, 939 F.2d 244, 250 (5th Cir. 1991) (affirming exclusion of an expert based in part on determination that his testimony would confuse the jury); *U.S. v. Frazier*, 387 F.3d 1244, 1267

(11th Cir. 2004) (district court correctly excluded "imprecise opinion," as it "easily could serve to confuse the jury, and might well have misled it").

      **B.**     **Dr. Plunkett relies on insufficient facts and an unreliable methodology to reach her "greater risk" opinion.**

Dr. Plunkett's opinion necessarily relies on a head-to-head comparison between Taxotere and what she refers to as "some other" chemotherapies, specifically Taxol. To perform this comparison, Dr. Plunkett would need to analyze sufficiently reliable scientific data for Taxotere on one side, versus sufficient *comparable* data for similar chemotherapies on the other. Instead, Dr. Plunkett analyzed certain data for Taxotere supplied by Plaintiffs' counsel versus incomplete and incomparable data for "other" chemotherapies.[4] Such methodology is both inconsistent and unreliable. *See K.E. v. GlaxoSmithKline LLC*, No. 3:14-cv-1294, 2017 WL 440242, at *10 (D. Conn. Feb. 1, 2017) ("while Dr. Ravekes' report does not 'selectively' cite supporting science, it does present an incomplete and therefore unreliable view of the secondary literature.").

For Taxotere, the "available scientific information" Dr. Plunkett reviewed and relied on for her "greater risk" opinion included clinical trial reports, internal safety data, and company documents, all of which were made available to her by Plaintiffs' counsel because Sanofi produced them in this litigation. Plunkett Report at App. B (Ex. D). That data included: (1) the complete clinical trial results (which contain detailed safety information about ongoing alopecia) for two

---

[4] Dr. Plunkett conceded that, in arriving at her opinion, she could only state that Taxotere had a "greater risk" than some chemotherapies because not all comparisons had been done. Plunkett Dep. 39:14–16 ("So it's -- unfortunately, the reason I -- the reason I use the word 'some' is because not all comparisons have been done.").

ten-year, Sanofi-sponsored studies (TAX316[5] and GEICAM9805[6]); (2) Sanofi's internal safety analysis on hair loss and adverse event data; and (3) deposition testimony of Sanofi's employees. *Id.* Dr. Plunkett's methodology with respect to Taxotere—what she called her "deepest dive"—involved sifting through and reviewing thousands of pages of Sanofi's documents.  Plunkett Dep. 44:19–21. ("So my deepest dive or my most complete assessment was what I could find on Taxotere itself.").

By contrast, Dr. Plunkett's methodology for evaluating the risk of permanent alopecia with "other" chemotherapies was markedly different.  By her own admission, the scientific information available to her for these chemotherapies was self-selected and limited to that which she could locate publicly.  Plunkett Dep. 45:24–46:6; 47:11–14; 49:6–8; 51:3–11; 136:12–137:16; 179:2–10 ("Q. Did you perform a human health risk assessment for permanent alopecia for any other chemotherapy medications besides Taxotere?  A.  I did perform a similar assessment with what was available.  Unfortunately I didn't have access to the same level of data for some of the other compounds.  So as a result, my risk assessment there is more restricted in terms of the information that I relied on.").  For these "other" chemotherapies, Dr. Plunkett's framework consisted not of an exhaustive review of comprehensive clinical trial data and safety analyses, but rather was limited to other chemotherapy drug labels, which she admitted did not have complete safety data. *Id.* at 45:21–25 ("Q. And you would agree with me that there's clinical trial information which

---

[5]   Dr. Plunkett testified that TAX316 was one of the most important of pieces evidence to her opinion.  Plunkett Dep. 195:2–7.  Of note, this study, however, did not compare individual chemotherapies, as Dr. Plunkett attempts to do in her report.  Rather, it was a comparison between two, distinct chemotherapy regimens: TAC (Taxotere in combination with doxorubicin and cyclophosphamide) versus FAC (5-fluorouracil in combination with doxorubicin and cyclophosphamide).  Plunkett Report at 20 ¶ 46.   While she relies on this study to support her overall "greater risk" analysis, Dr. Plunkett conceded could not determine which drug in which regimen actually caused hair loss.  Plunkett Dep. 158:1–160:7.

[6]   This study is sometimes referred to as "TAX301."

would not be included in the Taxol label?  A. Oh, absolutely. I mean, I didn't have access to the Taxol NDA, for example.").

Dr. Plunkett's methodological approach for Taxol—*her primary comparator drug*—is illustrative.  In forming her "greater risk" opinion, Dr. Plunkett reviewed six FDA Taxol approval letters that she located on the FDA website and that were last updated in 1998.[7]  Dr. Plunkett also selected and reviewed two clinical studies for Taxol, neither of which analyzed nor recorded data about alopecia.[8]  Plunkett Dep. 40:8–41:23 ("Unfortunately, there has not been a long-term follow-up study that allows me to quantify the exact number as far as a percentage for Taxol versus the percentage for Taxotere.")   In sum, Dr. Plunkett did not identify or review a single Taxol clinical trial that studied or had data on permanent alopecia.  *Id.* at 45:11–20.

Dr. Plunkett has also never seen, reviewed, or tried to obtain any of the Taxol Clinical Study Reports—the very documents that would contain the comprehensive safety information for this chemotherapy.[9]  Plunkett Dep. 211:19–25, 214:3–10 ("Q. You'd agree with me that missing from your analysis are Taxol clinical study reports, true?  A. I did not have access to the confidential documents, which is the only place for me to get those clinical study reports in my

---

[7]  *See* Plunkett Report at App. B, "List of Documents Reviewed" (7.30.1992-020262 Approval Ltr (Taxol Initial Approval Ltr and Draft/Markup of initial labeling at 1–19), 7.23.1993-020262 s002 Approval Ltr (Taxol S-002 Approval Ltr and 2 page copy of PI at 20–23), 4.13.1994-020262 s004 Approval Ltr (Taxol S-004 Approval Ltr and 2 page copy of PI at 24–28), 8.16.1994-020262 s003 s004 Approval Ltr (Taxol S-003/004 Approval Ltr and 4 page copy of PI at 29–33), 04.01.1996-020262 s012 Approval Ltr (Taxol S-012 Approval Ltr and 8 page copy of PI/package label at 34–44) (Ex. D)).

[8]  While her review of Taxol is the most illustrative, Dr. Plunkett further testified that she did not review any monotherapy clinical trials that examined alopecia for all of the other chemotherapies that she says are associated with permanent hair loss, including Taxol, 5-fluorouracil, doxorubicin, cyclophosphamide, cisplatin, or prednisone.  Plunkett Dep. 77:16–78:23.

[9]  Similarly, she did not review, rely upon, or even try to obtain clinical study reports for any other chemotherapy "associated" with permanent alopecia, including cisplatin, doxorubicin, cyclophosphamide or 5-fluorouricil.  Plunkett Dep. 218:1–22.   And Dr. Plunkett did not consider any of the information on permanent alopecia contained in these reports in rendering her opinion.  *Id.* at 217:9–20.

experience of looking at many, many drugs--").  Because she did not review these studies, or even

try to obtain them, Dr. Plunkett had no idea whether they would be helpful:

> Q.    The clinical data which you looked at **for Taxotere**, did you find it helpful and informative?
>
> A.    Yes. I certainly relied on the -- on -- on several of those -- those studies, yes.
>
> Q.    And as you sit here today, you'd agree with me that it's likely that if you had had clinical trial data **for Taxol**, that that also would have been helpful and informative, true?
>
> A.    I can't answer that without having seen it. But certainly it's possible, if you want me to answer it that way. I can tell you it's possible.

*Id.* at 56:21–57:7.

Dr. Plunkett's only other analysis consisted of a review of medical literature.  Plunkett

Report at 3 ¶ 9.  "Reading up" and providing a book report of the various medical literature studies

does not meet the rigorous standard required for expert testimony.  *Rink v. Cheminova Inc.*, 400

F.3d 1286, 1291–92 (11th Cir. 2005).  *See also, Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865,

887–88 (S.D. Ohio 2010) (excluding expert's opinions as unreliable where they were "based on a

scattershot of studies and articles which superficially touch on each of the illnesses at issue" but

developed "no depth of opinion" as to the relevance of the references to plaintiffs' illnesses).  One

whose background, training, and experience is lacking on a specific subject cannot make oneself

an expert on the subject by "reading up" on it.  *See Newton v. Roche Labs., Inc.*, 243 F.Supp.2d

672, 678 (W.D. Tex. 2002); *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999).

Dr. Plunkett cannot "lump" together insufficient data to reach her conclusion that Taxotere

is associated with a "greater risk" of permanent alopecia than other chemotherapy drugs.

Numerous courts have held that individual items of evidence, which are independently insufficient,

cannot be aggregated to form a reliable foundation for expert opinion testimony.  *See Hollander*

*v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216 n.21 (10th Cir. 2002) ("To suggest that those

individual categories of evidence deemed unreliable by the district court may be added to form a reliable theory would be to abandon 'the level of intellectual rigor' of the expert in the field.") (citation omitted); *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1371 (D.N.J. 2001) ("one cannot lump together lots of hollow evidence in an attempt to determine what caused a medical harm").  That is exactly what Dr. Plunkett has done here.  Dr. Plunkett has no reliable basis to opine about the risk of permanent alopecia associated with "other chemotherapies."  There is accordingly no basis for her opinion that Taxotere comes with a greater risk, and her opinion is inadmissible.  *See Viterbo*, 826 F.2d at 424.

## II.    DR. PLUNKETT'S OPINION THAT TAXOTERE IS "MORE TOXIC" THAN TAXOL IS NOT RELEVANT.

The only side effect at issue in this litigation is permanent hair loss.  Despite that, Dr. Plunkett offers the unrelated, general opinion that: *"Taxotere is more toxic than Taxol."*  The Court should exclude her opinion because (1) a generalized comparison of unrelated or overall toxicity profiles between Taxotere and Taxol is not relevant to permanent hair loss, (2) Dr. Plunkett's opinion will confuse and mislead the jury, which will impermissibly draw a causal link between a general comparison of overall "toxicities" and that alleged by Plaintiffs, and (3) Dr. Plunkett's opinion is based on an unreliable and inadequate methodology.

### A.    Dr. Plunkett's "more toxic" opinion is not helpful to the trier of fact as it is not relevant.

Dr. Plunkett's conclusion that Taxotere is "more toxic" than Taxol does not pass *Daubert's* most basic hurdle—relevancy.  To be helpful, an expert opinion must "fit" the facts of the case in order to assist the jury in better understanding the evidence.  *See Daubert*, 509 U.S. at 597 (stating that the district court's "gatekeeping role" requires ensuring that the expert testimony "is relevant to the task at hand"); *see also id.* at 591 ("Expert testimony which does not relate to any issue in

13

the case is not relevant and, ergo, non-helpful.") (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18); *Burst*, 120 F. Supp. 3d at 551 ("The question here is whether the reasoning or methodology 'fits' the *facts of the case* and will thereby assist the trier of fact to understand the evidence.") (emphasis added).

Dr. Plunkett's opinion here is plainly not relevant.  Each MDL Plaintiff alleges she was: (1) diagnosed with breast cancer; (2) treated with Taxotere; and (3) developed permanent hair loss as a result.  No Plaintiff alleges that Taxotere caused her any *different* harm.  As a result, Dr. Plunkett's general opinion on toxicity, and her discussion of unrelated toxicities, is not helpful.

For example, in discussing her relied-upon toxicity data, Dr. Plunkett cites one study (TAX 311), which she says reported more "taxane-related" deaths and a "greater rate" of serious and non-serious adverse events with Taxotere as opposed to Taxol.  Plunkett Report at 21 ¶ 47 (Ex. A).   For another study (*Sparano*), Dr. Plunkett claims more patients on Taxotere experienced certain toxic effects, such as neutropenia and infection.  *Id.* at 22 ¶ 48.

But even if Dr. Plunkett's conclusions are accepted at face value, the cited data is of no matter to the issues in *this case*.  *See Daubert,* 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact *in issue*.'") (emphasis added).  Neither study reported data on permanent hair loss.  No Plaintiff in this MDL is alleging death, neutropenia, infection, or any other "serious" or "non-serious" side effects from taking Taxotere.  *See In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 606 (E.D. La. 2003) (*Daubert* requires the expert opinion is connected to the "pertinent inquiry."). And Dr. Plunkett, in her report or at her deposition, never draws a causal connection between her two opinions—*i.e.*, that because Taxotere is generally "more toxic" it is therefore linked to Taxotere presenting a "greater risk" of permanent hair loss.  In the most basic terms, a general

opinion about "toxicity" is not helpful to deciding any issue in this case.  *See Trout v. Milton S. Hershey Med. Ctr.*, 576 F. Supp. 2d 673, 679 (M.D. Pa. 2008) (excluding expert's cross-examination testimony about the side effects from a procedure the plaintiff *did not have* because it was not relevant under Rule 401 and it "threaten[ed] to confuse and mislead the jury by causing them to apply general information about amputation and limb salvage to [the plaintiff's] case without a sufficient medical basis for doing so."); *Bouchard v. Am. Home Prods. Corp.*, 213 F.Supp.2d 802, 811 (N.D. Ohio 2002) (excluding expert testimony that can mislead and cause the jury confusion).  Moreover, Dr. Plunkett is not giving case-specific opinions about the risk-benefits of different chemotherapy regimens.  Plunkett Dep. 82:8–13 (Ex. B).  As the oncologists for Ms. Durden, Ms. Francis, and Ms. Earnest each testified, in the real world, prescribing decisions and weighing of toxicities are determined not generally, but rather on a patient-by-patient basis.[10]

Although Dr. Plunkett's opinion need not fit the *exact* specifics of this litigation, it should at least be in the same orbit.  Such is not the case.  Dr. Plunkett's general opinion about toxicity profiles—unmoored from the specific facts—should not be presented to a jury.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 177–78 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002)  ("The issue in this case is not whether exposure to some organic solvent in some dose and for some duration can cause some effect of some duration on the CNS and/or PNS. The issue is whether exposure to xylene in the amount and for the duration alleged by plaintiffs can cause CNS and PNS symptoms of the type, magnitude, and duration allegedly suffered by [the

---

[10]  *See generally* Jancich Dep. 185:14–20 (". . . You have to assess patient by patient") (Ex. E); Carrinder Dep 84:18–21 ("Q. Are all people [going to] get the exact same side effects from taking the same chemotherapy drug? A. No.") (Ex. F); Verghese Dep. 103:11–13 ("So multiple factors go into how you react, how deep the reaction is, and how long it takes for things to turn around.") (Ex. G).

plaintiff]. . . The medical evidence on which plaintiffs' experts rely, of course, need not precisely match the specifics of this case in those respects, but it must at least be in the same ballpark.").

       **B.**     **Dr. Plunkett's "more toxic" opinion will confuse and mislead the trier of fact.**

      In addition, Dr. Plunkett's opinion will confuse and mislead the trier of fact.  *See United States v. Frazier*, 387 F.3d 1244, 1266 (11th Cir. 2004) (district court correctly excluded "imprecise opinion," as it "easily could serve to confuse the jury, and might well have misled it"). On one hand, Dr. Plunkett roundly declares that Taxotere is "more toxic" than Taxol.  Plunkett Report at 23 ¶ 51.  On the other, she testified that Taxotere and Taxol "have generally the same basic toxicity profile;" a "very similar sequence of—qualitatively similar adverse events and toxicities," and both drugs have been linked to "overall increases in adverse events as a group," including drug-induced death, neutropenic infections, alopecia, nausea and vomiting.  Plunkett Dep. 221:2–3, 220:4–9, 219:14–220:2.  Indeed, she described the two drugs as "interchangeable." Plunkett Report at 10 ¶ 24.  When asked, Dr. Plunkett could not explain what toxicities between the two drugs are meaningfully different:

> Q.    Okay. And so can you tell us, in terms of toxicities, what are the differences between [Taxotere and Taxol]?
>
> A.    That one, I'd have to pull out the -- the label to tell you specifically.
>
> Q.    Okay. And so without doing a label-by-label comparison, which of course anyone can do if they can read, you can't tell us any differences in terms of toxicities?
>
> A.    Well, they -- they have generally the same basic toxicity profile. But they -- what they may differ in is some of the rates of -- of -- of -- that are reported in the clinical studies that are shown in the labeling. I'm trying to think if there's a very specific one I would pull out that is very different. And I'd have to look at the label again to answer that for you.

Plunkett Dep. 220:18–221:10.

More importantly, Dr. Plunkett's general opinion presents the risk of misleading the jury in a meaningful way.  If Dr. Plunkett's opinion about "toxicity" is presented it will only serve to mislead a lay jury, which will draw an unsupported inference that because Taxotere is "more toxic" (as Dr. Plunkett suggests) then it must also have contributed to Plaintiffs' alleged permanent hair loss.  *See Trout*, 576 F. Supp. at 679 (excluding expert testimony where "[t]he testimony could lead jurors to draw medically unsound conclusions or to question unwarrantedly other expert testimony tied more closely to the material facts of the case.").  The risk of confusion outweighs any value to Dr. Plunkett's irrelevant and unreliable opinion.

     **C.**     **Dr. Plunkett used inadequate facts and data and unreliable methodology to support her "more toxic" opinion.**

Expert testimony must be based on "sufficient facts or data."  Fed. R. Evid. 702(b); *Daubert*, 509 U.S. at 590 ("proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known").  "The expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight*, 482 F.3d at 355.  Here, Dr. Plunkett's methodology is inadequate and unreliable to form her opinion that Taxotere is "more toxic" than Taxol.

First, Dr. Plunkett understands that all chemotherapies—including Taxotere and Taxol—have a multitude of toxicities.  Plunkett Dep. 136:7–11.  She also agreed that chemotherapies have unique risk profiles. *Id.* at 134:13–15.  And she further acknowledged that toxicities for Taxotere and Taxol are dose dependent.  *Id.* at 221:19–222:1 (". . .That's a general—general principle for these drugs.  There is dose dependent toxicities, yes.").  Nevertheless, in forming a general toxicity opinion, the only "toxicity" Dr. Plunkett actually analyzed and compared for these two drugs was permanent hair loss.

     Q.     Okay.  So did you isolate individual toxicities for Taxol and Taxotere and compare them to one another?

> A.   The isolated toxicity that I focused on was the issue of alopecia and permanent alopecia.

*Id.* at 137:17–21; *see also id.* at 138:12–17 ("Q.  Okay.  And so other than the risk of permanent alopecia, tell us what other toxicities you isolated and compared, if any, between taxol and Taxotere. A. Well, I don't think I isolated anyone as a focus.").  Dr. Plunkett described her methodology as follows:

> A.   Other than that, I looked *generally* at the profiles to see how they compared. So I didn't try to determine what the rate of infection overall was for one drug versus the other.  They both carry the risks of infection and neutropenia.  They both carry similar -- similar other endpoints of toxicity. But my focus in this was answering questions about whether or not there is a difference in -- in terms of permanent alopecia.
>
> Q.   Okay.  So you said that you were focused on the toxicity and the risk of permanent alopecia, true?
>
> A.   Yes, I was.

*Id.* at 137:23–138:11 (emphasis added).

Beyond permanent hair loss, Dr. Plunkett did not make even a rudimentary effort to assess and compare *any other* toxicity, much less rank or "weigh" their importance.  Plunkett Dep. 139:17–22; 140:13–20.  Dr. Plunkett further admitted that toxicity profiles are not general, but instead depend on the specific toxicity.  *Id.* at 227:20–23 ("When you look across it, you'll see discussions of some specific endpoints that Taxotere may be worse than Taxol and other cases, Taxol may be worse.").  When asked to compare other toxicities, Dr. Plunkett did not know:

> Q.   But do you know what the incidence rate is for peripheral neuropathy for Taxotere versus Taxol?
>
> A.   No. I'd have to go to the labeling to see if they -- if they report that.
>
> Q.   Okay. That's not something you analyzed when you did your toxicity analysis, true?
>
> A.   On specific occurrence rates' differences, no, I did not. [...]

> Q.     Okay. So do you know what the incidence rate is for neutropenia for Taxol versus Taxotere?
>
> A.     No. I know it's common in both, but I can't give you the exact incidence rate or the differential. I'd have to look at the labeling.
>
> Q.     And you also said you didn't know what the incidence rate was for potential cardiac complications, true?
>
> A.     That is true. Again, I told you I -- I would have to look at the labeling.

*Id.* at 222:8–223:6.  Although Dr. Plunkett analyzed only a *single* toxicity (*i.e*, "permanent hair loss"), she has given an umbrella opinion that purportedly accounts for and compares *all* toxicities (*i.e*., "Taxotere is more toxic than Taxol").  Dr. Plunkett's opinion—generously described as looking at one side effect and then broadly extrapolating to a general, over-arching conclusion—is not sound.

Second, Dr. Plunkett testified that the foundational evidence for her "more toxic" opinion was a clinical study known as TAX 311.  Plunkett Dep. 231:14–20 ("Q. … Your opinion is that Taxotere is more toxic than Taxol, and the primary basis for that opinion, you said, is TAX 311, true?  A. For the general comparison --  Q. Yes.  A. -- of toxicity, that is true.").  *See also id.* at 223:15–22; 226:13–228:2.  This study is inapposite to this litigation and Dr. Plunkett's own report.[11]

Dr. Plunkett admitted that TAX 311 focused on patients with metastatic breast cancer treated with a single chemotherapy and not the patient population relevant to this litigation—*i.e*., woman with early-stage breast cancer treated with combination chemotherapies.   More

---

[11]   As Dr. Plunkett stated, "[i]n the current case, the indication at issue for Taxotere use is for adjuvant treatment of early breast cancer. Therefore, the discussion of these drugs below will focus on that patient population, women with early stage breast cancer, when clinical data are being discussed and the two drugs are being compared with each other.   Plunkett Report at 7 ¶ 18.

importantly, TAX 311 (the only head-to-head study Dr. Plunkett could identify) did not examine permanent alopecia—the only toxicity Dr. Plunkett examined in rendering her opinion.

> Q.   Okay.  And with regard to a monotherapy head-to-head treatment with regard to Taxol and Taxotere, you told me about the 311 trial, correct?
>
> A.   Yes.  That's the only one that I was able to identify head-to-head.
>
> Q.   Okay.  And you agreed with me that that trial was not focused on permanent alopecia, true?
>
> A.   I did agree with you on that.

Plunkett Dep. 77:16–23.   Dr. Plunkett's analysis is based on unreliable facts and methodology and should be excluded.

## III.   DR. PLUNKETT CANNOT TESTIFY AT TRIAL REGARDING OPINIONS THAT ARE NOT IN HER REPORT AND/OR THAT SHE HAS DISCLAIMED.

At her deposition, Dr. Plunkett confirmed that she will not address causation, regulatory issues, marketing, or efficacy at trial.  Yet, Dr. Plunkett repeatedly seemed to indicate that she might do so anyway or might offer her personal opinions on these topics.  For example, Dr. Plunkett testified that she is not testifying about causation at trial—but still stated it is "biologically plausible" for Taxotere to cause permanent hair loss.  Plunkett Dep. 301:8–17 (Ex. B).  Dr. Plunkett testified that she is "not going to talk about violation of FDA regulations, those kinds of things," but still claimed she had an opinion "on what I believe the company should have been aware of" and what the company should have done in its labeling and promotion.  *Id*. at 311:17–314:12.  Dr. Plunkett further testified that she will not opine about Taxotere's efficacy.  *Id.* at 65:22–66:9.  But in the same breath Dr. Plunkett stated that "I certainly have an opinion in my report where I talk about efficacy. … But I don't believe that I have or would be asked to do an overview of that. I believe that that would probably be an oncologist that would do that."  *Id.* at 66:2–9.  Defendants

cannot be left to wonder.  Despite her hedging statements, Dr. Plunkett confirmed that she is not

providing expert testimony on the following topics:

1.   General causation. "I am not doing a causation analysis."  Plunkett Dep. 157:25.

2.   Sanofi's regulatory compliance or the adequacy of Taxotere's label.  "Q. You do not intend to give regulatory opinions?  A. That's correct."  *Id.* at 64:19–21.

3.   Sanofi's marketing and promotion of Taxotere.  "Q. You're not going to be offering any opinions on Sanofi's promotional activities related to Taxotere?  A. Yes, that's true."  *Id.* at 65:17–20.

4.   Taxotere's efficacy.  "Q. And do you intend to offer opinions concerning Taxotere's efficacy in treating breast cancer?  A. I don't believe so."  *Id.* at 65:22–25.

Dr. Plunkett's admission that she will not testify regarding these subjects precludes any testimony

about them, otherwise Defendants will suffer surprise and prejudice at trial.

Indeed, Dr. Plunkett's admission was necessary under the Federal Rules.  Federal Rule of

Civil Procedure 26 requires an expert report to contain "a complete statement of all opinions the

witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  Rule 37

states that an undisclosed opinion may not be given at trial.  Fed. R. Civ. P. 37(c)(1) ("[if] a party

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is harmless.").

Even if Dr. Plunkett mentioned causation, regulatory compliance, marketing, and efficacy

in her expert report or referenced them at her deposition, nowhere did Dr. Plunkett set forth a

specific opinion, the methodology used to reach that opinion, or any application of the data she

considered, pursuant to such methodology, showing how she reached her opinion.  *See generally*

Plunkett Report.  These failures render Dr. Plunkett's testimony inadmissible under Rule 26, 37,

and 702.  Any statement Dr. Plunkett made on these subjects was necessarily her personal opinion,

as no scientific analysis was conducted or recorded in her expert report.  Personal opinions from an expert are not admissible.  *See, e.g.*, *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (excluding an expert's testimony because "no understandable scientific basis is stated. Personal opinion, not science, is testifying here"); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (holding that "conclusions based only on personal opinion and experience do not suffice" to establish the reliability or utility of expert testimony).

## <u>CONCLUSION</u>

For the foregoing reasons, the Sanofi Defendants request the Court grant this Motion under *Daubert* and Rule 702 and exclude the opinions and testimony of Dr. Plunkett, including her opinions that:

(1)    Taxotere is associated with a "greater risk" of permanent alopecia compared to "some other" chemotherapy drugs, including Taxol; and

(2)    Taxotere is "more toxic" than Taxol.

In addition, Dr. Plunkett must be precluded from testifying on subjects not analyzed in her report, with no disclosed methodology or application of methodology to relevant data, disclaimed at her deposition, and based only on her personal opinion.

Date:  February 8, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

***Counsel for Sanofi-Aventis U.S. LLC and
Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2019, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*