UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENT RELATES TO**

Antoinette Durden, Case No. 2:16-cv-16635;
Tanya Francis, Case No. 2:16-cv-17410;
Barbara Earnest, Case No. 2:16-cv-17144

**MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS'
<u>OMNIBUS MOTION TO PRECLUDE IMPROPER EXPERT TESTIMONY</u>**

Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc. ("Sanofi") respectfully move the Court for an order precluding the following categories of inadmissible expert testimony:

1. Testimony concerning the intent, motive, or state of mind, or knowledge of Defendants or other entities, including "interpretation" of documents authored by Defendants or other entities as a basis for such testimony;

2. Testimony that merely repeats fact-witness testimony or other written evidence, in violation of the rules of evidence, including the hearsay bar; and

3. Testimony containing legal conclusions.

Such testimony is inadmissible under Rules 402, 403, 702, and 703.  In support, Sanofi has set forth below the well-established legal grounds for excluding such testimony, including examples of Plaintiffs' experts' anticipated inadmissible testimony.

**<u>LEGAL STANDARD</u>**

Under Rule 702, the Court as gatekeeper must determine whether the expert is *qualified*; then the Court's gatekeeping function "involves a two-part inquiry into *reliability* and *relevance*":

> First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.
>
> Second, the Court must determine whether the expert's reasoning or methodology is relevant. The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence.

*Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted) (emphases added).

## ARGUMENT

**I.  Plaintiff's Experts May Not Opine as to Meaning, Intent, Motivation, State of Mind, and Knowledge.**

The Court should preclude expert testimony concerning the intent, motive, state of mind, or knowledge of Defendants or other entities, including "interpretation" of documents authored by Defendants or other entities as a basis for such testimony.

In *re Rezulin*, for example, the court excluded expert opinions that the manufacturer of Rezulin, "chose" to provide "incomplete information" about the Rezulin label, that the manufacturer "decided to focus on the incomplete and inaccurate approval data and to minimize the troubling post-approval data," that "it [was] highly improbably that [the manufacturer] was unaware" of the risks of Rezulin, and that the manufacturer was "motivated by profit" to engage in obfuscation. *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 545-46, n.38, n.40 (S.D.N.Y. 2004).  Among the reasons given for excluding the testimony, the court stated "the opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise," "plaintiffs' experts propose improperly to assume the role of advocates for the plaintiffs' case by arguing as to

2

the intent or motives underlying the conduct of [defendant] or others," and [such testimony] describes "lay matters which a jury is capable of understanding and deciding without the expert's help." *Id*. at 546.

Other courts have excluded such testimony for the same or similar reasons. *See*, *e.g.*, *United States v. Cytogel Pharma, LLC*, No. CV 16-13987, 2018 WL 5777510, at *3 (E.D. La. Nov. 2, 2018) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (holding expert "could not testify as an expert that [a party] had a particular motive.") (emphasis in original); *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (stating that "expert testimony . . . [offering] opinion of dishonesty goes beyond the scope of expertise . . . . [Experts] may only assist and not replace the fact finder."); *In re Rezulin*, 309 F. Supp. 2d at 545–547 (holding inadmissible expert testimony concerning the motive, intent, and state of mind of the defendants and others, as it describes "lay matters which a jury is capable of understanding and deciding without the expert's help" and "the question of intent is a classic jury question and not one for the experts.") (quotations omitted); *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-cv-157, 2010 WL 11531436, at *5–6 (E.D. Tex. June 18, 2010) (collecting cases); *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (relying on *In re Rezulin* in granting defendant's motion to preclude an expert from testifying as to the knowledge, motivations, intent, state of mind, or purposes of the defendant, its employees, the FDA, or FDA officials).

Here, Defendants anticipate that Plaintiffs' experts will attempt to offer such inadmissible opinions in this case. But similar testimony by these experts has been excluded in prior trials. For example, multiple courts have excluded such testimony from Dr. Kessler:

- *In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 6523833, at *9 (D. Ariz. Dec. 21, 2017) ("Defendants argue that Dr. Kessler should not be allowed to opine about Bard's intent or ethics. The Court agrees. Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.");

- *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836443, at *15 (N.D. Ill. May 8, 2017) ("Dr. Kessler evaluates AbbVie's marketing materials and internal memoranda to assess whether and to what extent it was targeting persons with conditions outside of AndroGel's indicated use. He also offers a framework by which the jury can assess what AbbVie intended via its marketing. But although Dr. Kessler may walk up to this line, he may not cross it; he cannot offer an opinion or conclusion about what AbbVie intended, as that is a function properly reserved to the jury.");

- *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2014 WL 7641156, at *2 (D. Mass. Dec. 23, 2014) ("[A]lthough Dr. Kessler's years of government service may let him form good guesses about why parties petitioning FDA behave as they do, his expertise only lies on the FDA side of the regulatory process. Dr. Kessler may not speculate on why Astellas or anyone else acted as they did.");

- *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 5392995, at *6 (D. Vt. Oct. 23, 2014) (prohibiting Dr. Kessler and other experts in the case from "speculat[ing] about other individual's [sic] or entity's [sic] motives, knowledge, or intent");

- *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 628 (S.D.W. Va. 2013), *on reconsideration in part* (June 14, 2013) ("Bard's knowledge, intent, or motives are simply not appropriate subjects for expert testimony. The documents and testimony should be presented directly to the jury, not through an expert. To the extent that Dr. Kessler opines on Bard's knowledge, intent, or motives, such conclusions are factual inferences for the jury to determine, not for an expert to opine.");

- *Wells v. Allergan, Inc.*, No. CIV–12–973–C, 2013 WL 7208221, at *2 (W.D. Okla. 2013) (prohibiting Dr. Kessler from speculating about the intent or state of mind of defendant).

Courts have also prohibited Dr. Plunkett from offering similar state of mind testimony. *Kiker v. SmithKline Beecham Corp.*, No. 2:14-CV-2164, 2016 WL 8189286, at *16 (S.D. Ohio Dec. 15, 2016) ("Dr. Plunkett may testify as to what is in the documents, and the dates that information is mentioned, as such information is part of the record. To the extent that GSK seeks to preclude Dr. Plunkett from testifying about GSK's motives or state of mind, such opinions would be speculative, and are excluded. Further, only jurors may draw inferences, not witnesses."); *In re: Tylenol (Acetaminophen) Mktg., Sales Practices, & Prod. Liab. Litig.*, No.

2:12-CV-07263, 2016 WL 4039329, at *5 (E.D. Pa. July 28, 2016) (stating that Dr. Plunkett's "statements about what the defendants knew or did not know would be appropriate" but that "[t]o the extent Dr. Plunkett testifies about what the defendants intended by their actions, her testimony will be excluded").[1]

Despite repeated admonitions from federal courts across the country, Dr. Kessler attempts to offer similar testimony here. For instance, he makes broad pronouncements about what Sanofi's business goals were with respect to Taxotere:

> Well, you, certainly, have the re -- I mean, you have -- what you have is, you've made reference earlier -- if you look at the strategic plans, you made a distinction that 311 was metastatic monotherapy and the Bellwethers were adjuvant. And that wasn't applicable -- 311 wasn't applicable to that. But what you see in the strategic plans is you see the -- the -- sort of, the effort on the part of the company to bridge the superiority of Taxotere, in general.

Kessler Dep. 264:5–15 (Ex. A). Dr. Kessler's report engages in this same manner of speculation as to Defendants' intent. For instance, he states:

> Based on my review, beginning in at least 2000 and continuing thereafter, Sanofi's marketing and promotional strategy for Taxotere was to build Taxotere into "'The First' Billon Dollar Taxane Franchise in the US" by aggressively positioning Taxotere as the foundation and cornerstone of therapy for multiple types of cancer, including breast cancer.

Kessler Report at 63 ¶ 203 (Ex. B); *see also, e.g.*, *id.* at 65 ¶ 204 ("Sanofi recognized that Taxol/paclitaxel—another drug in the taxane class brought to market prior to Taxotere—was

---

[1] Defendants are aware of contrary treatment of Dr. Plunkett within this District in *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, where the court denied a *Daubert* motion seeking "to limit Dr. Plunkett's testimony regarding Xarelto labeling and the state of mind or knowledge of both Defendants and the FDA." No. MDL 2592, 2017 WL 1352860, at *2 (E.D. La. Apr. 13, 2017). However, *Xarelto* is distinguishable, as the *Xarelto* court made this ruling only after determining that Dr. Plunkett was qualified to offer an opinion on labeling and regulatory matters. *Id.* Unlike in *Xarelto*, the Plaintiffs in the instant case do not offer Dr. Plunkett as a regulatory expert.

Taxotere's primary competitor, and that Taxol/paclitaxel would become generic in 2001. Sanofi's marketing and promotional strategy focused on becoming the leader of the taxane market—given the presumed decreased economic incentive for the manufacturers of Taxol and generic paclitaxel, and differentiating Taxotere from Taxol/paclitaxel to increase market share and justify Taxotere's presumed higher price after Taxol/paclitaxel became generic.").

Dr. Kessler also offers an opinion of when Sanofi knew or should have known of the alopecia-related risks purportedly posed by Taxotere:

> 208.4. By as early as 2009, Sanofi knew or should have known that there was reasonable evidence of a causal association between Taxotere and irreversible alopecia.
>
> 208.5. By as early as 2009, Sanofi knew or should have known that patients taking Taxotere were at an increased risk of irreversible alopecia compared to alternative therapies.

Kessler Report at 88 ¶¶ 208.4–5; *id.* at 55–56 ¶ 166 ("As acknowledged by Sanofi, prior to December 2015, Sanofi's Taxotere labeling included a reference to the adverse event of alopecia, but Sanofi never disclosed the risk of irreversible alopecia in its label or in communications with patients, physicians, or United States regulatory authorities and internally determined that 'alopecia . . . should be "not important risk" in certain regulatory documents.'").[2]

Dr. Kessler seeks to also opine on Sanofi's motives for certain actions:

> Sanofi recognized that Taxol/paclitaxel—another drug in the taxane class brought to market prior to Taxotere—was Taxotere's primary competitor, and that Taxol/paclitaxel would become generic in 2001. Sanofi's marketing and promotional strategy focused on becoming the leader of the taxane market—given the presumed decreased economic incentive for the manufacturers of Taxol and generic paclitaxel, and differentiating Taxotere from Taxol/paclitaxel to increase market share and justify Taxotere's presumed higher price after Taxol/paclitaxel became generic.

*Id.* at 65 ¶ 204.

---

[2] Statements about the nature of the alopecia suffered also goes to Sanofi's argument regarding improper legal conclusions, discussed further *infra*.

6

Moreover, in his deposition, Dr. Kessler speculated about what might have motivated Sanofi to make labeling changes on alopecia in 2004, when those changes were actually made by the FDA before it would approve the medicine for its new indications. *See* Kessler Dep. 54:11–57:22. Notably, his speculative inference has been decidedly disproven. *See* Victoria Report at 54 (discussing FDA's deletion of Sanofi's proposed labeling as evidenced by the Track Changes authored by FDA's Ann Staten) (Ex. C).

To the extent that a jury could find such information helpful to the resolution of this case, it should come from fact witnesses and documentary evidence, not experts. Therefore, to prevent exposing the jury to such inadmissible evidence, the Court should grant Defendants' motion.

## II.     Plaintiff's Experts May Not Serve as a Mere Conduit for Fact Testimony.

"While an expert must of course rely on facts or data in formulating an expert opinion, *see* Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (citations omitted). Indeed, "[a] district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *U.S. v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994).

Courts "must recognize the inherent power of expert testimony in determining whether to allow an expert to summarize documents that the jury could just as easily summarize itself." *Pritchett*, 2012 WL 1059948, at *7. The tendency to believe a purported fact merely because it was stated by an expert creates "'a tilt favoring [the] litigant'" on whose behalf the expert is testifying and "hinders impartial adjudication of the merits instead of promoting it." *Id.* (quoting *In re Prempro Prods. Liab. Litig.,* 554 F.Supp.2d 871, 887 (E.D. Ark. 2008)); *see Viterbo v. Dow*

*Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) ("Dr. Johnson has admitted that Viterbo's symptoms could have numerous causes and, without support save Viterbo's oral history, simply picks the cause that is most advantageous to Viterbo's claim. Indeed, *Dr. Johnson's testimony is no more than Viterbo's testimony dressed up and sanctified as the opinion of an expert.*") (emphasis added).

Additionally, such expert testimony is inadmissible because it runs afoul of the prohibition against hearsay evidence. *See* Fed. R. Civ. P. 801. "Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013)) (citations and quotations omitted); *see In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 608 ("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded.") (quotations and citations omitted).

Moreover, because such testimony does not have its basis in the expert's area of knowledge, it does not comply with the clear requirements of Rule 702. *See, e.g.*, *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-cv-512, 2017 WL 1319553, at *3, 9–10 (E.D. Tex. Apr. 10, 2017) (collecting cases and stating that the expert's "testimony . . . is inadmissible because it simply parrots deposition evidence and exhibits produced during the pretrial process" and "because her opinions on that topic are not the product of her expertise") (citation omitted).

As other courts have done, the Court here should enter an order excluding such testimony. *See*, *e.g.*, *In re Bard IVC Filters*, 2017 WL 6554163, at *3 ("Experts will not be permitted to engage in lengthy factual narratives that are not necessary to the jury's understanding of their opinions, nor will they be permitted to gratuitously comment on factual evidence or present what

are essentially lawyer arguments with regard to factual testimony.").

Based on expert report and deposition testimony in this case, Defendants anticipate Dr. Kessler is likely to spend a great deal of his time on the stand summarizing the factual record in this case. *See, e.g.*, Kessler Report at 54–87 (discussing Sanofi's communications with the FDA, marketing plans, and studies of the drug going back to the early days of Taxotere). Sanofi recognizes that the Rules of Evidence contemplate that an expert will spend some of his time on the stand summarizing the record. *See* Fed. R. Evid. 703; *id.* 1006. However, this manner of testimony is only allowed insofar as is necessary to provide the basis for the expert's opinion.

Dr. Kessler's statements, as well as the history of cases in which he has been an expert, make clear that he is likely to cross the line. *See id.; In re Prograf, supra*; *Drake, supra*, 2014 WL 5392995, at *6 (barring all experts, including Dr. Kessler, from "regurgitate[ing] facts in a way that crosses the line into closing argument territory"); *Wells*, 2013 WL 7208221, at *2.

Dr. Madigan's testimony is also filled with unnecessary references to the facts of the case and hearsay evidence. Madigan Dep. 240:9–244:5 (discussing the research conducted by Drs. Palatinsky and Hangai and the number of adverse reports serving as their bases) (Ex. D); Madigan Report at 18 ¶ 44–46 (same) (Ex. E). Dr. Plunkett's expert report raises similar concerns. *See* Plunkett Report at 19 ¶¶ 43–45 (recounting deposition testimony of Dr. Palatinsky, Dr. Gustavson, and Kimberly Bassi and discussing and opining on documents and information referenced therein) (Ex. F). If allowed, Plaintiffs' experts' testimony will violate the prohibition against regurgitative testimony. Therefore, it is inadmissible.

**III.    Plaintiffs' Experts Should Be Prohibited from Offering Legal Conclusions.**

"[A]n expert may never render conclusions of law." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *Snap–Drape, Inc. v. Comm'r,* 98 F.3d 194, 198 (5th Cir.1996)); *C.P. Interests, Inc. v. Cal. Pools, Inc.,* 238 F.3d 690, 697 (5th Cir. 2001) (stating that neither Rule

9

702 nor Rule 704 "permit[] expert witnesses to offer conclusions of law") (citing *Owen v. Kerr McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983)).

Inadmissible legal conclusions include testimony that Defendants "failed to adequately disclose adverse risks" or "failed to warn on its label." In evaluating the admissibility of Dr. Kessler's testimony, for example, one district court stated:

> Dr. Kessler's expert report seeks to draw various legal conclusions, which is properly the jury's role. For example, Section IX is entitled "Bard *failed to adequately disclose* adverse risks associated with their products," and subsection D states that "Bard *failed to warn on its label* . . . ." Section XVI is entitled "Bard's Avaulta products *were 'not reasonably safe*.'" Such statements draw legal conclusions from facts. The questions of whether Bard's Avaulta products were not reasonably safe, for example, or whether Bard failed to warn, are questions for the jury, not for Dr. Kessler.

*In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 629 (citations omitted); *see also In re Bard IVC Filters*, 2017 WL 6523833, at *8 ("[N]o expert, including Dr. Kessler, will be permitted to give ultimate legal opinions on state law claims."); *see also Tsao v. Ferring Pharm., Inc.*, No. 4:16-CV-01724, 2018 WL 3649714, at *13 (S.D. Tex. Apr. 19, 2018) ("Dr. Plunkett's opinions that the Bravelle was 'misbranded' or 'adulterated' are inadmissible legal conclusions.").

Further, courts often exclude opinions regarding compliance with FDA regulations. *See Bard*, 948 F. Supp. 2d at 629 ("Dr. Kessler may not testify that Bard violated FDA regulations—such testimony would be drawing legal conclusions."); *Kiker v. SmithKline Beecham Corp.*, 2016 WL 8189286, at *15 ("Dr. Plunkett may explain, without offering opinion, the process by which a drug is approved for marketing under FDA regulations. She may also describe the regulations regarding labeling requirements, inasmuch as these are technical, rather than opinion matters. She may not, of course, offer legal conclusions."); *Tyree v. Bos. Sci. Corp.*, No. 2:12-CV-08633, 2014 WL 5486694, at *28 (S.D.W. Va. Oct. 29, 2014) ("[T]he only basis for Dr. Pence's opinions on the adequacy of BSC's product labeling is violation of the FDCA and FDA regulations. . . .

10

[A]sserting a violation of the FDCA is a legal conclusion, not an expert opinion."); *contra In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 6302287, at *12 (S.D. Ill. Dec. 16, 2011) (prohibiting Dr. Kessler from testifying on law governing causes of action but allowing him to testify regarding FDA regulations).

In this case, Dr. Kessler's report contains legal conclusions. He concludes that "[b]y as early as 2009 and continuing through at least 2015, ***Sanofi's Taxotere labeling failed to adequately warn*** that there was reasonable evidence of a causal association between Taxotere and irreversible alopecia." Kessler Report at 88 ¶ 208.8 (emphasis added). He also opines that "***Sanofi's marketing and promotional efforts to differentiate Taxotere versus Taxol/paclitaxel using 'unsubstantiated' and 'misleading' claims*** about Taxotere's efficacy, safety, and tolerability and Taxotere's superiority versus Taxol/paclitaxel misled physicians and doctors and put patients at an increased risk of harm[.]" *Id.* 208.11 (emphasis added).[3]

Similarly, Dr. Ellen Feigal's deposition indicates a likelihood that she might attempt to offer opinions of both the law governing Plaintiffs' claims and Sanofi's compliance with FDA regulations:[4]

> [Q:] I want to know what the source is so that if I'm a company and I want to comply with this standard, I want to know what the standard says. Where can I go to find the standard?
>
> A[:] I think --
>
> [. . .]
>
> *I think there's certainly case precedent for that*, but as I said, there's obviously language about companies, the timing of what the expectations are for that and

---

[3] These conclusions also opine on Sanofi's knowledge and parrot Plaintiff's facts and theory of the case.

[4] Even if the court determines that expert testimony of FDA compliance is admissible, Dr. Feigal is a physician and clinical researcher, not a regulatory expert. She is not qualified to offer on opinion on FDA regulations. *See* Feigal Report at 4 ("I am not offering regulatory opinions about FDA requirements.")

11

> physicians and patients are aware of that expectation. So I can't point you to a single regulation. I can't point you to a single reference. I can see if I can find something, but it's definitely an expectation that companies should share – it's their responsibility to share information about risk to physicians. That's very expected by physicians and patients.

Feigal Dep. 112:3–21 (emphasis added) (Ex. G); *see also id.* 105:15–106:9, 111:6–10.

The experts in this case are not qualified to opine as to legal conclusions, and such testimony is prohibited under Fifth Circuit law. *See Goodman*, 571 F.3d at 399. Further, these conclusions, if offered, would be instructions to the jury on what conclusions it should reach. To the extent Plaintiff's experts will attempt to offer legal conclusions, this testimony should be excluded.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order excluding the following testimony:

1. Testimony concerning the intent, motive, or state of mind, or knowledge of Defendants or other entities, including "interpretation" of documents authored by Defendants or other entities as a basis for such testimony;

2. Testimony that merely repeats fact-witness testimony or other written evidence, in violation of the rules of evidence, including the hearsay bar; and

3. Testimony containing legal conclusions.

Date:  February 8, 2019

                                            Respectfully submitted,

                                             /s/ *Douglas J. Moore*
                                            Douglas J. Moore (Bar No. 27706)
                                            **IRWIN FRITCHIE URQUHART & MOORE LLC**
                                            400 Poydras Street, Suite 2700
                                            New Orleans, LA  70130
                                            Telephone: 504-310-2100
                                            Facsimile:  504-310-2120
                                            dmoore@irwinllc.com

                                            Harley Ratliff
                                            Adrienne L. Byard
                                            **SHOOK, HARDY & BACON L.L.P.**
                                            2555 Grand Boulevard
                                            Kansas City, Missouri 64108
                                            Telephone: 816-474-6550
                                            Facsimile:  816-421-5547
                                            hratliff@shb.com
                                            abyard@shb.com

                                            ***Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.***


### CERTIFICATE OF SERVICE

      I hereby certify that on February 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                            /s/ *Douglas J. Moore*