# EXHIBIT R

Page 1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE              )
(DOCETAXEL) PRODUCTS         )
LIABILITY LITIGATION         )
                             )    MDL No. 2740
This Document Relates To:    )
                             )    SECTION: H
Antoinette Durden, Case      )
No. 2:16-cv-16635            )
                             )
Tanya Francis, Case          )
No. 2:16-cv-17410;           )
                             )
Barbara Earnest, Case        )
No. 2:16-cv-17144            )
```

**********************************************************
              ORAL VIDEOTAPED DEPOSITION OF
                 LAURA PLUNKETT, PH.D.
                   DECEMBER 10, 2018
**********************************************************

    ORAL VIDEOTAPED DEPOSITION OF LAURA PLUNKETT, PH.D., produced as a witness at the instance of the Defendants and duly sworn, was taken in the above-styled and numbered cause on the 10th day of December, 2018, from 9:21 a.m. to 5:22 p.m., before Stephanie Barringer, Certified Realtime Reporter (CRR), Registered Professional Reporter (RPR), and Certified Shorthand Reporter (CSR) in and for the State of Texas, reported by stenographic means at the offices of Fleming, Nolen & Jez, LLP, 2800 Post Oak Blvd., Suite 4000, Houston, Texas  77056, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Job No. NJ3152742

Page 25

1  being given to a patient to treat cancer?
2              MR. MICELI:  Object to the form.
3       A.   Yes.  It's the same answer as you
4  originally you asked, that I was looking -- I was
5  talking about the individual drug.  But certainly
6  in combination, there have been case reports.
7       Q.   (BY MS. SASTRE)  Do you understand what
8  adjuvant chemotherapy is?
9       A.   I have a definition for it, yes.  I don't
10  know what your definition is.  But...
11       Q.   And do you understand that all of the
12  plaintiffs in this case received adjuvant
13  chemotherapy?
14       A.   Yes.  That's my understanding for the way
15  the drug was -- and I believe I described that in
16  my report.
17       Q.   And you would agree with me that for
18  adjuvant chemotherapy, multiple chemotherapies are
19  given to a patient?
20       A.   Yes.  That's correct.
21       Q.   And that's true for all the plaintiffs in
22  this matter, correct?
23       A.   Well, I don't know -- I'm not case
24  specific, so I can't answer you for every
25  plaintiff.  But I know certainly that was the issue

Page 158

1  Q. Okay. So when you look at Taxotere being
2  provided in the combination setting, which it was
3  in the studies that you relied upon, you do not
4  have an opinion as to whether it was the Taxotere,
5  the Adriamycin or the cyclophosphamide which was
6  the cause of any specific individual patient's hair
7  loss.
8          You've not done that analysis,
9  true?
10  A. For specific patients, no. But I do have
11  an opinion that I've expressed in my report about
12  the issue of the way to interpret the data, for
13  example, in the 316 study. And I think I have
14  expressed that.
15          But I believe that the
16  information in that study allows you to conclude
17  that Taxotere shows an increased risk of that event
18  as compared to the comparator arm of the study.
19  Q. But you did not specifically do a
20  causation analysis with regard to Taxotere, true?
21          MR. MICELI: Object to the form.
22  A. I answered that. I'm not the -- it's --
23  I am not the causation expert in these cases. It's
24  my understanding of that that that is not my role.
25  Q. (BY MS. SASTRE) And, likewise, Doctor,

Page 159

1  you did not do a causation analysis with regard to
2  Adriamycin, correct?
3              MR. MICELI:  Same objection.
4     A.   Yes.  That is true.  Again, I am not a
5  causation expert in this litigation.
6     Q.   (BY MS. SASTRE)  And you didn't do a
7  causation analysis with cyclophosphamide, true?
8     A.   Not in the --
9              MR. MICELI:  Same -- excuse me.
10  Same objection.
11     A.   That is true.  Not in the context of what
12  I would consider a causation analysis.  That is
13  true.  I do that sometimes.  But that is not what I
14  was asked to do here.
15     Q.   (BY MS. SASTRE)  You -- you could do it,
16  right?
17              MR. MICELI:  Object to the form.
18     A.   I have done that in other cases I've
19  worked on.  But I have not been asked to do that
20  here.
21     Q.   (BY MS. SASTRE)  Okay.
22     A.   And it was not something that I started
23  out to do even at the beginning of my work.
24     Q.   And when we say causation analysis, just
25  to be clear, we're talking about you have not

Page 160

1  specifically analyzed causation in terms of
2  Taxotere, Adriamycin and cyclophosphamide being the
3  cause of permanent alopecia, true?
4              MR. MICELI: Object to the form.
5      A.   That is correct. Because there, you're
6  talking about specific individuals. And I have not
7  done that.
8      Q.   Okay.
9              MS. SASTRE: Let's go ahead and
10 take a break.
11             MR. MICELI: Okay.
12             MS. SASTRE: Thanks.
13             THE VIDEOGRAPHER: We're off the
14 record at 12:14.
15             (Recess taken.)
16             THE VIDEOGRAPHER: We're back on
17 the record at 12:55.
18     Q.   (BY MS. SASTRE) Thank you. Welcome back
19 from lunch.
20             All right. Dr. Plunkett, before
21 we broke, I was asking you whether you reviewed
22 clinical trials that looked at Taxotere and Taxol
23 in the single drug setting and analyzed a rate for
24 permanent alopecia.
25             Do you recall that question?