**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)      **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                  **SECTION "N" (5)**

THIS DOCUMENT RELATES TO
*Cantwell v. Sanofi U.S. Services Inc., et al.*,
**Nos. 2:18-cv-11657; 2:19-cv-00201**

---

**DEFENDANTS SANOFI U.S. SERVICES INC. AND SANOFI-AVENTIS U.S. LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFF DEBRA CANTWELL'S MOTION TO
QUASH OR MODIFY DOCUMENT SUBPOENA TO NON-PARTY AND FOR
PROTECTIVE ORDER**

---

Defendants Sanofi U.S. Services Inc. and sanofi-aventis U.S. LLC (collectively "Sanofi"),

by and through counsel, submit this Response in Opposition to Plaintiff Debra Cantwell's Motion

to Quash or Modify Document Subpoena to Non-party and for Protective Order, and respectfully

request this Court to deny Plaintiff Cantwell's motion and order the production of the subpoenaed

documents immediately.

**INTRODUCTION**

Over four months ago, Sanofi served a subpoena to Plaintiff Debra Cantwell requesting

production of (1) Taxotears ESI and (2) preservation communications with counsel. Despite this

Court's orders, Ms. Cantwell has withheld from production nearly all of her Taxotears ESI, and

she has refused to produce to Sanofi her preservation communications. Sanofi seeks a complete

production of documents responsive to its subpoena without further delay.

In her motion to quash, Ms. Cantwell argued that she should not have to produce e-mail

messages from the Taxotears Google Group and posts from the Taxotears Facebook Group

because she was not a party to the MDL. She argued that, instead, the MDL Plaintiffs should have to produce this ESI. Since filing this motion to quash, Ms. Cantwell became one of those MDL Plaintiffs, and therefore, by her own admission, she must produce this ESI. But she has not done so. Ms. Cantwell has stated that she has 50,000 pages of ESI from the Taxotears Google Group, but she has produced only 112 pages. She also stated that she has hundreds of posts from the Taxotears Facebook Group, but she has produced only 60 post threads. Further, Ms. Cantwell did not produce any of her ESI in a proper format with the associated metadata.

Additionally, before she filed her lawsuit and while she was asserting her non-party status, Ms. Cantwell handed over to Bachus & Schanker LLC—who did not represent her at the time—communications between herself and her original attorney and his staff. Ms. Cantwell has therefore waived any privilege with respect to those communications and documents. Further, because Ms. Cantwell deleted relevant ESI in response to her original attorney's request, those communications from her original attorney are not privileged due to the crime/fraud exception. They should be produced. As this Court has previously recognized, counsel's preservation communications might be relevant and producible where a party has deleted ESI in response to a preservation instruction from counsel.

Significantly, this issue of failing to preserve or actively deleting relevant ESI appears to be a pattern among many MDL Plaintiffs. Defendants have identified deficiencies in nearly every Taxotears Plaintiffs' ESI productions—these plaintiffs either have produced no Taxotears ESI whatsoever or have produced an incomplete production of Taxotears ESI. Plaintiffs' counsel have not explained this widespread issue of missing ESI. More than one of these Taxotears Plaintiffs appear to have deleted Taxotears ESI based on their understanding of an instruction from counsel.

## BACKGROUND

On October 8, 2018, Sanofi issued a subpoena ("Subpoena") to Plaintiff Cantwell, seeking (1) electronically stored information ("ESI") from the Taxotears Google Group and the Taxotears Facebook Group and (2) documents or communications related to Plaintiff Cantwell's Facebook post about deleting comments at the request of her counsel. Cantwell Subpoena (Oct. 8, 2018), attached as **Exhibit A**. This Court has a long history of addressing discovery issues related to Plaintiffs' failure to produce ESI, including ESI from the Taxotears groups, as well as issues related to the concealment and destruction of such ESI.

On March 10, 2017, this Court ordered every MDL Plaintiff to provide a Plaintiff Fact Sheet, which calls for the production of ESI. *See* Pretrial Order No. 22 (Mar. 10, 2017) (Doc. 279). When it became apparent that Plaintiffs were not producing the court-ordered ESI, Sanofi raised this issue with the Court on October 22, 2017. *See* Status Conf. Tr. (Oct. 27, 2017). Of the 1,179 Plaintiffs who had submitted a PFS at that time, only 21 had produced ESI. Sanofi's Memo. in Supp. of Mot. to Compel Production of ESI at 3 (Oct. 10, 2017) (Doc. 918-1). This Court therefore issued Pretrial Order No. 71A, which requires MDL Plaintiffs to (1) search specified ESI sources; (2) conduct a reasonably diligent search with Plaintiffs' counsel taking an active role in identifying, preserving, collecting, reviewing, and producing ESI; (3) use certain identified search terms in their searches; (4) produce in a proper format with associated metadata; and (5) provide a Rule 26(g) certified statement signed by Plaintiffs and Plaintiffs' counsel, identifying all ESI sources and identifying any ESI that was lost or destroyed. *See* Pretrial Order No. 71A (Jan. 26, 2018) (Doc. 1531).

The production deficiencies that led to the entry of Pretrial Order No. 71A also exist for ESI from the Taxotears Google Group and the Taxotears Facebook Group. This Court has

addressed deficient ESI productions from both Taxotears groups during at least ten separate status conferences over the course of the past nine months, including at the most recent status conference on January 18, 2019. *See* Status Conf. Tr. at 13:8–15:4 (Jan. 18, 2019). The Taxotears production deficiencies initially came to light when Plaintiffs' counsel admitted on April 18, 2018 that they were in possession of e-mail messages from the Taxotears Google Group that Plaintiffs had not produced to Sanofi. *See* Oot Letter to Judge North at 2 (Apr. 20, 2018). In response, Sanofi sought disclosure of the Taxotears Google Group membership and production of all ESI from the Taxotears Google Group. *Id.* at 5.

"[T]o accomplish the objective of achieving a complete production of the ESI from the Taxotears group," this Court therefore issued a discovery order, requiring Plaintiffs' counsel to identify all past and current members of the Taxotears group and to update the PFSs to disclose Taxotears membership. *See* Status Conf. Tr. at 2:20–3:2 (May 8, 2018); Discovery Order at 1–2 (May 9, 2018) (Doc. 2522). This Court also specifically ordered Plaintiffs:

> to retain and preserve any and all materials to which they have access through the Taxotears group and to refrain from any efforts to dispose of or delete any emails, posts or other electronic information sent or received by them or accessible to them by virtue of their membership in that group.

Discovery Order at 2 (May 9, 2018) (Doc. 2522).

In response to the discovery order, one plaintiff revealed yet another source of responsive ESI when she produced posts from the Taxotears Facebook Group. Oot Letter to Judge North at 4–5 (June 8, 2018). On December 12, 2018, the PSC disclosed to Sanofi 18 Plaintiffs who are members of the Taxotears Facebook Group. Menzies Letter to Harley V. Ratliff at 1–2 (Dec. 12, 2018). None of those plaintiffs has produced a complete production of ESI from the Facebook Group.

Further, despite the discovery order, nearly all of the 34 Plaintiffs who are members of the Taxotears Google Group have still produced little or no Taxotears ESI. Moreover, none of these 34 Plaintiffs has produced anywhere near the complete amount of Taxotears ESI as disclosed by Plaintiff Cantwell. *See* Cantwell Decl. at ¶ 4, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-2) ("50,000 pages" of ESI from the Taxotears Google Group), attached as **Exhibit B**; Cantwell Mot. to Quash at 8, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1) ("A conservative estimate . . . is fifty thousand pages" of ESI from the Taxotears Google Group); Cantwell Aff. at ¶ 4, MDL No. 2740 (J.P.M.L. Dec. 12, 2018), attached as **Exhibit C**.

The Taxotears ESI is highly relevant to this litigation, and Plaintiffs have still produced very little of it. It is relevant not only to Plaintiffs' medical history, what drugs they were taking, and what they believed caused their hair loss, but the Taxotears ESI also goes squarely to the timing of Plaintiffs' lawsuits. Ms. Cantwell's Taxotears ESI is the very ESI that the other MDL Plaintiffs have not been able to produce or have otherwise failed to produce.

### A. Ms. Cantwell's Taxotears ESI

#### 1. Incomplete Productions

On February 11, 2019, Ms. Cantwell produced an incomplete set of her Taxotears ESI in an improper format without the associated metadata. There is a stark contrast between Ms. Cantwell's sworn statements regarding how much Taxotears ESI she has versus the amount of Taxotears ESI she actually produced:

| CANTWELL DECLARATION (NOV. 6, 2018) | "As a member of the Taxotears support groups via Google and Facebook, thousands of messages have been sent and received (there are **thousands of messages in the Taxotears Google Group and hundreds in the Taxotears Facebook Group**). I have in excess of 5,000 emails just from the Google Taxotears listserve, each of which may be threaded and several pages long; I estimate that in total this could be around **50,000 pages**. . . . I declare under penalty of perjury |
|---|---|

| | under the laws of the United States that the foregoing is true and correct." <br><br> Cantwell Decl. at ¶ 4, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-2) (**Ex. B**). |
|---|---|
| **CANTWELL MOTION TO QUASH (NOV. 6, 2018)** | "Ms. Cantwell estimates she has in excess of five thousand emails just from the listserve, each of which may be threaded and several pages long. . . . **A conservative estimate** of the materials necessary to copy these emails **is fifty thousand pages** – or 100 reams of paper." <br><br> Cantwell Mot. to Quash at 8, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1). |
| **CANTWELL AFFIDAVIT (DEC. 12, 2018)** | "I, Debra Cantwell, being of lawful age and competent to testify, do hereby aver and swear as follows under penalty of perjury: . . . Based on my review of my inbox, I estimate that I have between **5,000 – 10,000 emails** from the Taxotears Google Group. **Many of these emails are several pages long**." <br><br> Cantwell Aff. at ¶ 4, MDL No. 2740 (J.P.M.L. Dec. 12, 2018) (**Ex. C**). |
| **CANTWELL ESI PRODUCTION (FEB. 11, 2019)** | Taxotears Google Group <br> Produced 112 of the 50,000 pages <br><br> Taxotears Facebook Group <br> Produced 60 of the hundreds of post threads |

Beyond her own sworn statements, Ms. Cantwell's production deficiencies are also evident by comparing her ESI productions with other Taxotears Plaintiffs' ESI productions. For example, see the following comparison regarding the Taxotears Google Group:

| Plaintiff | Date Joined | # of Years as a Member | Pages of Taxotears Google Group ESI Produced |
|---|---|---|---|
| Debra Cantwell | 04/01/2010 | Nearly 9 years | 112 pages |
| Kelly Gahan | 02/14/2014 | 5 years | 6,948 pages |

In the Taxotears Google Group, every member receives the same e-mail messages upon joining the group. In other words, Ms. Cantwell received those 6,948 pages of e-mail messages that Ms.

Gahan produced. Ms. Cantwell just did not produce them. Further, Ms. Cantwell has also been a member of the group nearly twice as long as Ms. Gahan. Therefore, her production should include many more pages of ESI from the Taxotears Google Group than Ms. Gahan's production. Instead, Ms. Cantwell has produced roughly 1.5% of what Ms. Gahan has produced.

The same deficiency by comparison is evident for Ms. Cantwell's production of ESI from the Taxotears Facebook Group:

| Plaintiff | Post Threads from Taxotears Facebook Group Produced |
|---|---|
| Debra Cantwell | 60 post threads |
| All other Plaintiffs who are Taxotears Facebook Group members | At least 275 post threads |

Unlike the Google Group, the amount of ESI for each Plaintiff who is a member of the Facebook Group should be the same regardless of the date they joined the group. Once a Plaintiff joins the Facebook Group, she has access to all of the post threads in the group. That said, Ms. Cantwell appears to have created the Taxotears Facebook Group, which is all the more reason she should have provided a complete production:



As the group's creator, she appears to have had administrative rights to the group, including the ability to make other members administrators:



This information is at odds with Ms. Cantwell's statement that she "was a member of both the Taxotears Facebook and Google Groups, but was not an 'administrator' of either." Memo. in Supp. of Mot. to Vacate CTO 46, MDL No. 2740 at 3 (J.P.M.L. Dec. 11, 2018), attached as **Exhibit D**.

### 2. Improper Production Format

In addition to providing incomplete productions, Ms. Cantwell also produced her ESI in an improper format without the associated metadata. For the Taxotears Google Group, she produced computer screenshots of her e-mail messages pasted together within a single 112-page PDF that did not contain the appropriate metadata—*see, e.g.*:



Likewise, for the Taxotears Facebook Group, Ms. Cantwell pasted together 60 post threads into a single PDF, which is not the proper format and does not include the associated metadata. Also, many of the posts end in an ellipsis and then say "See More," so it is impossible to see the

entire post. Her production also includes indications that someone replied to a comment, but Ms.

Cantwell did not produce the reply—*see, e.g.*:



### B. Counsel's Request for Ms. Cantwell to Delete ESI

On November 22, 2015, Plaintiff Cantwell posted the following within the Taxotears

Facebook Group:



*See* Cantwell Subpoena at Exhibit 1 (Oct. 8, 2018) (**Ex. A**). At the time of this post and the related

deletion of ESI, Ms. Cantwell was anticipating litigation in that she was intending to file a lawsuit.

*See* Kreider Decl. at ¶ 5, No. 2:16-md-02740-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-3).

According to the PSC, the "someone" who "requested" that Plaintiff Cantwell "[d]elet[e] [her]

comments regarding the hair product [she] used" was Robert Weinberger, an attorney representing

Plaintiff Cantwell at the time. *See* Barrios Letter to Judge North at 2 (Oct. 11, 2018), attached as **Exhibit E**.

On November 6, 2018, Ms. Cantwell produced a one-page PDF without metadata that appears to be a screenshot of her Facebook "Edit History," showing two posts. *See* Cantwell Edit History, attached as **Exhibit F**. Apparently, the first of these posts is the comment she deleted in response to her communication with counsel. *Id.* The second post is her aforementioned post referencing her counsel's request to delete the comment. *Id.* Because this second post resides in her Facebook "Edit History," that seems to indicate that she deleted that post, as well. It is unclear whether this production captures all of the relevant Taxotears ESI that Ms. Cantwell has deleted.

This is the second instance of a Taxotears Plaintiff deleting or instructing others to delete relevant ESI at the instruction of counsel. It is the third instance of MDL Plaintiffs obfuscating evidence of hair regrowth. For instance, Plaintiff Kimberly Free sent the following e-mail message within the Taxotears Google Group:



*See* Order at 2 (Aug. 22, 2018) (Doc. 3927). Your Honor said you understood how Sanofi's counsel "could read Ms. Free's email and let's say be concerned about what it says," recognizing that the e-mail message could be relevant to "some issue like the ones that you all were having with the ESI." Status Conf. Tr. at 19:9–17 (Aug. 7, 2018). This Court therefore ordered that Plaintiff Free produce the communication from Bachus & Schanker for *in camera* review. *See* Minute Entry at

¶ 3 (Aug. 7, 2018) (Doc. 3709). Plaintiff Free's counsel then sought reconsideration of the Court's order. Schanker Letter to Judge North (Aug. 20, 2018). This Court denied that request, stating, "There is ample cause to order the document's production for *in camera* review, based upon the contents of the Free email of April 8, 2017." Order at 3 (Aug. 22, 2018) (Doc. 3927). To date, Plaintiff Free has still produced no ESI whatsoever from the Taxotears Google Group.

This Court also sanctioned another MDL Plaintiff who is a Taxotears member—Plaintiff Kelly Gahan—in response to concealment of relevant information. *See* Order & Reasons (Aug. 22, 2018) (Doc. 3917). Plaintiff Gahan had failed to produce relevant ESI, including Taxotears ESI, as required by the court-ordered Plaintiff Fact Sheet. Only after this Court entered Pretrial Order No. 71A did Plaintiff Gahan produce 18,000 pages of highly relevant e-mail messages, including some e-mail messages from the Taxotears Google Group. *See id.* at 2. Within this belated ESI production were e-mail communications showing that she had failed to disclose a physician who treated her alleged hair-loss injury, had instructed that physician to withhold records from Sanofi, encouraged custodians of other third-party records to evade Sanofi's requests for information, and had withheld hundreds of photographs of her hair regrowth. *Id.* at 2–6.

This Court stated it was "troubled by [Plaintiff Gahan's] conduct." *Id.* at 8. This Court therefore sanctioned Plaintiff Gahan, ordering that she pay Sanofi's attorneys' fees and expenses incurred as a result of her failure to comply with her discovery obligations, including costs associated with the litigation of the sanctions motion. *Id.* at 9–10. This Court concluded its decision with the following warning:

> The Court will allow this sanction to serve as a warning to [Plaintiff Gahan and to any other plaintiff who might be considering adopting evasive tactics like those discussed in this opinion. If the Court learns that any other plaintiff has intentionally withheld relevant information that should have been produced in a PFS or in response to a request by Defendants, the Court will impose severe sanctions, which may include dismissal with prejudice. The Court specifically cautions [Plaintiff

Gahan] that any additional withholding of information will result in the dismissal of her case.

*Id.* at 9. This Court recently upheld its decision, denying Plaintiff Gahan's motion for reconsideration. *See* Order & Reasons (Dec. 20, 2018) (Doc. 5618).

The tie that binds Plaintiffs Cantwell, Free, and Gahan is that Robert Weinberger represented all of them before his merger into Bachus & Schanker, LLC before retirement. Robert Weinberger was Ms. Cantwell's original attorney who made the request that led her to delete relevant Taxotears ESI.

According to the PSC, Ms. Cantwell sought legal advice from Robert Weinberger and then later retained Bachus & Schanker for claims related to her use of Taxotere. *See* Kreider Decl. at ¶ 5, No. 2:16-md-02740-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-3). Mr. Weinberger did not enter into an of counsel relationship with Bachus & Schanker until after he and his staff made the request to Ms. Cantwell that led her to delete relevant Taxotears ESI. *See id.*; *see also* Barrios Letter to Judge North at 2 (Oct. 11, 2018) (**Ex. E**).

Sometime between October 5 and 11, 2018, "Bachus & Schanker reached out to Ms. Cantwell, and Ms. Cantwell provided documentary evidence of communications between herself and Mr. Weinberger and his staff, providing important context with respect to why she deleted her comments." Barrios Letter to Judge North at 2 (Oct. 11, 2018) (**Ex. E**). The PSC stated, on behalf of Bachus & Schanker, that Bachus & Schanker did not represent Ms. Cantwell at the time she provided them her communications with Mr. Weinberger. *Id.* at 2 ("She is no longer a client of Bachus & Schanker."). Ms. Cantwell said the same thing. Cantwell Decl. at ¶ 2, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-2) ("Furthermore, I am no longer represented by my Colorado attorney.") (**Ex. B**). In fact, Bachus & Schanker had not represented her for quite some time. *See* Cantwell E-Mail to Taxotears (Apr. 5, 2018) ("I'm so disappointed!!! Our

champions at Bachus & Schenker [sic] just wrote to tell me they won't be representing me in the class action against SA because although I had 3 doses of Taxotere, I also had one dose of Taxol."), attached as **Exhibit G**.

On November 28, 2018, Ms. Cantwell filed a complaint in the Taxotere MDL. *See* Compl., No. 2:18-cv-11657-JTM-MBN (E.D. La. Nov. 28, 2018) (Doc. 1). On January 7, 2019, the Judicial Panel for Multi-district Litigation transferred Plaintiff Cantwell's Motion to Quash to this Court for coordinated pretrial proceedings in the Taxotere MDL pursuant to 28 U.S.C. § 1407. Order Lifting Stay of CTO, No. 2:19-cv-00201-JTM-MBN (E.D. La. Jan. 15, 2019) (Doc. 15).

## ARUGMENT

A person moving to quash a subpoena bears the burden of establishing the legal and factual grounds for quashing the subpoena. *See Sines v. Kessler,* 325 F.3d 563, 565 (E.D. La. 2018) (finding the person who moves to quash or modify a subpoena has the burden of proof to demonstrate that compliance would cause an undue burden or expense); *Diamond State Ins. Corp. v. Rebel Oil Co.*, 157 F.R.D. 691, 698–700 (D. Nev. 1994) (placing burden on movant under Rule 45(c)(3)(A)(iv))); 9 *Moore's Federal Practice* § 45.04[3][a] (Supp. 2003).

### A. Sanofi is Entitled to a Complete Production of Ms. Cantwell's Taxotears ESI in a Proper Format with the Associated Metadata

Ms. Cantwell needs to provide a complete production of her Taxotears ESI in a proper format with associated metadata. Ms. Cantwell has approximately 5,000 to 10,000 e-mail messages from the Taxotears Google Group (her "conservative estimate" is that 5,000 e-mail messages amounts to approximately 50,000 pages) and hundreds of posts from the Taxotears Facebook Group. Cantwell Decl. at ¶ 4, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-2) (**Ex. B**); Cantwell Aff. at ¶ 4, MDL No. 2740 (J.P.M.L. Dec. 12, 2018) (**Ex. C**); Cantwell Mot. to Quash at 8, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1) ("A

conservative estimate of the materials necessary to copy these emails is fifty thousand pages—or 100 reams of paper."). She initially produced just two pages of ESI and refused to produce the tens of thousands of pages on the basis that she was not an MDL Plaintiff.

But since becoming an MDL Plaintiff, Ms. Cantwell has recognized that she is obligated to produce her Taxotears ESI. As she has stated: the "tens of thousands of emails on the Taxotears Google Group, and many Taxotears Facebook Group posts, . . . can be obtained from . . . the numerous women who are actually parties to the underlying litigation[.]" Memo. in Supp. of Mot. to Vacate CTO 46, MDL No. 2740 at 12 (J.P.M.L. Dec. 11, 2018), attached as **Exhibit D**. Ms. Cantwell has also acknowledged that "[u]nder the [MDL] Court's Orders concerning preservation and production of electronically stored information ('ESI'), members of these groups who are plaintiffs in the MDL are required to produce relevant Taxotears posts/emails[.]" *Id.* at 3.[1] But the problem is that Ms. Cantwell has not produced tens of thousands of e-mail messages, nor has she produced hundreds of Facebook posts that she stated she has. Instead, she has produced a paltry

---

[1] Ms. Cantwell has stated many times that the MDL Plaintiffs must produce this Taxotears ESI—see, e.g.:
- The Taxotears e-mail communications "ought to be sought directly from the Plaintiffs in the MDL." Cantwell Mot. to Quash at 2, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1).
- The Taxotears e-mail communications are "obtainable from the Taxotear [sic] member who is part of the MDL." *Id.* at 7.
- "To the extent that members of the Facebook Group have brought claims related to Taxotere, Sanofi can seek the communications from such parties—all of whom have equal access and ability to copy the materials as Ms. Cantwell possesses." *Id.*
- "Notably, Sanofi already has the right to obtain a Plaintiff's communications and ESI related to their membership in either Taxotears group, as part of a Plaintiff's discovery/disclosures obligations in the MDL." *Id.* at 8.
- Sanofi "is authorized in the MDL to obtain such communications from Plaintiffs who may have been a member." *Id.* at 9.
- "Sanofi can obtain [the Taxotears ESI] from the relevant party in the MDL[.]" *Id.* at 12.
- Sanofi "could get [the Taxotears ESI] from a party[.]" E-Mail from Elizabeth J. McLafferty, Counsel for Plaintiff Cantwell, to Jeremiah S. Wikler, Counsel for Sanofi (Nov. 13, 2018), attached as **Exhibit H**.
- "You should be asking one of the 10,000+ plaintiffs to do [sic] produce their documents and information." Elizabeth J. McLafferty, Counsel for Plaintiff Cantwell, to Jeremiah S. Wikler, Counsel for Sanofi (Nov. 14, 2018) (**Ex. H**).
- The Taxotears ESI "could be just as easily obtained from Plaintiffs in the MDL." Cantwell Response to Mot. to Stay at 1, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 21, 2018) (Doc. 10).
- The Taxotears ESI "can more readily be obtained from other members of the Taxotears groups who are parties to the underlying litigation[.]" *Id.* at 5.

112 of the available 50,000 pages of ESI from the Taxotears Google Group and only 60 of the hundreds of post threads from the Taxotears Facebook Group.

Further, the ESI she has produced is not in a proper format with the associated metadata. Pretrial Order No. 71A requires that "Plaintiffs shall produce all responsive ESI in a manner that preserves any metadata." PTO 71A at ¶ 5 (Jan. 26, 2018) (Doc. 1531). But Ms. Cantwell copied and pasted Facebook posts into a single PDF, stripping them of their original metadata. She also produced her Taxotears e-mail messages in a combined PDF without the metadata and as screenshots from her computer, instead of a proper format. The ESI Guidance notes that collecting and producing ESI in this manner violates PTO 71A because it is not a proper format and leads to loss of metadata, which Plaintiffs are required to produce. *See* PTO 71A at Exhibit A at 3 (Jan. 26, 2018) (Doc. 1531-1).

Ms. Cantwell voluntary joined the Taxotere MDL with an understanding that she would be obligated to produce her Taxotears ESI. The Subpoena simply seeks this information to which Sanofi is entitled, and therefore Sanofi respectfully requests that this Court order the immediate and complete production of Ms. Cantwell's Taxotears ESI in a manner that preserves any metadata.

### B.  Sanofi is Entitled to Ms. Cantwell's Documents and Communications Related to the Facebook Post about Deleting Comments at the Request of Her Counsel

Ms. Cantwell has also failed to produce the requested communications regarding preservation of documents and ESI, which are not protected by the attorney-client privilege. The attorney-client privilege is waived when an individual voluntarily provides otherwise confidential documents or communications to a third party. When such waiver occurs, a requesting party is entitled to actual production of those documents or communications, not merely an *in camera* production.

For instance, in *In re Santa Fe International Corp.*, the Fifth Circuit denied the defendant's petition for writ of mandamus where the district court had properly directed defendant to produce documents to the plaintiffs. 272 F.3d 705, 705 (5th Cir. 2001). In particular, the district court had ruled that the defendant waived the attorney-client privilege when it provided otherwise confidential documents to a third party. *Id.* at 708. In its petition to the Fifth Circuit, the defendants argued that the production should have been limited to an *in camera* review. *Id.* at 707 n.3. The Fifth Circuit disagreed. The Fifth Circuit held that because the plaintiffs intended to seek discovery of the documents, not merely an *in camera* review, the district court correctly ordered their production in full. *Id.*

Here, Ms. Cantwell stated in a post within the Taxotears Facebook Group, "Deleting my comments regarding the hair product I used as requested by someone we're not supposed to talk about." *See* Cantwell Subpoena (Oct. 8, 2018) (**Ex. A**). The PSC identified that "someone" as Robert Weinberger and his staff. Barrios Letter to Judge North at 2 (Oct. 11, 2018) (**Ex. E**). While Ms. Cantwell argues that the communications between herself and Mr. Weinberger are protected by the attorney-client privilege, she waived any such privilege when she provided these documents to a third party—Bachus and Schanker. Notably, it was Bachus & Schanker that reached out to Ms. Cantwell to request that she provide them with the communications between herself and her former attorney Mr. Weinberger. *Id.* Both Bachus & Schanker and Ms. Cantwell agree that Bachus & Schanker were not her attorneys at the time. *Id.*; Cantwell Decl. at ¶ 2, No. 2:19-cv-00201-JTM-MBN (E.D. La. Nov. 6, 2018) (Doc. 1-2). Because Ms. Cantwell provided these otherwise confidential communications to a third party, they are therefore no longer privileged, and Sanofi is entitled to their full production, not merely an *in camera* review by the Court. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 705 (5th Cir. 2001). Bachus & Schanker should not be permitted to

review the documents and communications between Ms. Cantwell and Robert Weinberger while withholding them from Sanofi.

If this Court finds that Ms. Cantwell waived the attorney-client privilege with respect to these communications, the communications should be produced to Sanofi regardless of their content. Sanofi makes this point because Ms. Cantwell has argued that Mr. Weinberger's instructions were appropriate. Of course, Ms. Cantwell interpreted the communications as a request to delete relevant ESI, relayed that request to numerous MDL Plaintiffs, and then deleted relevant ESI that she should have been preserving in anticipation of litigation. So something went wrong. Nevertheless, the appropriateness of the instructions does not impact whether they should be produced due to waiver.

Alternatively, Plaintiff Cantwell cannot assert attorney-client privilege over the requested communications due to the crime/fraud exception. "[T]he crime/fraud exception extends to materials or communications created for planning, or in furtherance of spoliation." *See, e.g.*, *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 284 (E.D. Va. 2004); *see also, e.g.*, *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983) (stating that crime/fraud exception applies to work product created as a result of lawyer's "unprofessional conduct"); *In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982) (holding crime/fraud exception applicable to "other type of misconduct fundamentally inconsistent with the basic premises of the adversary system"); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996) (holding crime/fraud exception applicable to communications made in furtherance of "bad faith litigation conduct"); *In re St. Johnsbury Trucking Co. v. Bankers Trust Co.*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995) (holding crime/fraud exception applicable to communications or other work product created "in furtherance of some sufficiently malignant purpose"); *Int'l Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60

17

F.R.D. 177, 180 (M.D. Fla. 1973) (holding crime/fraud exception applicable "not only where fraud or crime is involved, but also where there are other substantial abuses of the attorney-client relationship").

According to Ms. Cantwell's Facebook post, Mr. Weinberger requested that she delete relevant Facebook comments. "[Plaintiff] Cantwell admits that she edited her Facebook post as a result of communications with her attorneys." Memo. in Supp. of Mot. to Vacate CTO 46, MDL No. 2740 at 4–5 (J.P.M.L. Dec. 11, 2018) (**Ex. D**). Based on Ms. Cantwell's Facebook "Edit History," it is apparent that she not only edited posts, but she also deleted posts. Cantwell Edit History (**Ex. F**). Because Ms. Cantwell interpreted her communications with her counsel Mr. Weinberger as a request to delete relevant ESI, those communications are not protected by the attorney-client privilege due to the crime/fraud exception.

Further, this Court has concluded that communications like these may be relevant to issues of ESI preservation. *See* Status Conf. Tr. at 19:9–17 (Aug. 7, 2018).

> THE COURT: Well, look, I understand how you all as lawyers could read Ms. Free's e-mail and let's say be concerned about what it says. I understand that. I am just not prepared right now one way or another to say—before I start looking at something, **I've got to decide that it's relevant to** a claim or defense or **some issue like the ones that you all were having with the ESI**, and I haven't made that decision. And all I am saying is that if I do make that decision, what steps, what the incremental steps will be going forward.

*Id.* (emphasis added).

In her motion to quash, Ms. Cantwell argued that preservation communications are not relevant because she is a non-party who cannot be guilty of spoliation. But Ms. Cantwell is now a plaintiff in the MDL, which makes this argument moot.

According to the PSC, these communications provide "important context with respect to why she deleted her comments." Barrios Letter to Judge North at 2 (Oct. 11, 2018) (**Ex. E**). Sanofi

is entitled to the documents responsive to its subpoena, whether they better contextualize poor (or worse) instructions on retention obligations or not.

### C.  Rule 45 Subpoenas are Not Restricted to Non-Parties.

Ms. Cantwell cannot avoid Sanofi's discovery request now that she has joined the MDL. Federal Rule of Civil Procedure 45(a) states that a subpoena may command a "person" to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody or control." The text of Rule 45(a) itself reveals that there is no express limitation on the type of person who may be subject to the rule, as its language describes the individual upon whom a Rule 45 subpoena may be served simply as a "person" rather than a "non-party." *Mortgage Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 565 (W.D.N.C. 2010) ("Nowhere in the text of the rule or the Advisory Committee Note is it stated that any provision of Rule 34 is intended to restrict the scope of Rule 45"). This district and other courts have therefore held that Rule 45 may be used to subpoena any person—party or non-party. *See, e.g.*, *Pettit v. Heebe*, No. 15-3084, 2016 WL 1089351, at *2 (E.D. La. 2016) ("A subpoena under Rule 45 may be served upon both party and non-party witnesses.") (emphasis in original); *Mortgage Info. Servs., Inc.*, 210 F.R.D. at 565–66; *First City, Texas–Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 n.5 (S.D.N.Y. 2000), *aff'd*, 281 F.3d 48 (2d Cir. 2002); *Badman v. Stark*, 139 F.R.D. 601, 603 (M.D. Pa. 1991); *McLean v. Prudential Steamship Co.*, 36 F.R.D. 421, 425 (E.D. Va. 1965); *see also* James Wm. Moore, 7 *Moore's Federal Practice* § 34.02[5][c] (3d ed. 1997) (Rule 45 "may be used to subpoena any person—party or non-party—to produce books, documents, or tangible things at trial"; James Wm. Moore, 9 *Moore's Federal Practice* § 45.03[1] (noting that "[s]ubpoenas under Rule 45 may be issued to parties or non-parties"); Federal Procedure, Lawyers

Edition 26:464 (1994) ("FRCP 45, unlike FRCP 34(a) and (b), applies to non-parties as well as parties").

At the time Sanofi issued its Subpoena, Ms. Cantwell was a non-party to this litigation. Now that Ms. Cantwell has joined the Taxotere MDL, she still has an obligation to complete her discovery obligations, including complying with this subpoena. Ms. Cantwell's status change from a non-party to an MDL plaintiff does not affect this subpoena because Rule 45 subpoenas are not limited to non-parties. Therefore, Sanofi respectfully requests the immediate production of the subpoenaed documents immediately.

## CONCLUSION

For the foregoing reasons, Sanofi respectfully requests this Court to deny Ms. Cantwell's motion to quash in full and to order Ms. Cantwell to produce the requested documents within five days of the Court's Order.

Respectfully submitted,


/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*