# EXHIBIT D

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

In Re:  TAXOTERE (DOCETAXEL)                    **MDL No. 2740**
PRODUCTS LIABILITY LITIGATION

**THIS DOCUMENT RELATES TO:**

*In Re Cantwell Subpoena*
No. 2:18-MC-00112-RSL – United States District Court for the Western District of
Washington

## DEBRA CANTWELL'S BRIEF IN SUPPORT OF MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER (CTO-46)

Debra Cantwell, through her attorneys of record, Schroeter Goldmark & Bender, pursuant

to 28 U.S.C. § 1407 and Rule 7.4(d) of the Rules of Procedure of the United States Judicial Panel on

Multidistrict Litigation, moves to vacate Conditional Transfer Order 46 (CTO-46) entered

November 19, 2018.  This action consists solely of Ms. Cantwell's motion to partially quash a

subpoena duces tecum served on her by Sanofi-Aventis U.S. LLC and Sanofi U.S. Services, Inc.

("Sanofi"), in connection with the Taxotere (Docetaxel) Products Liability Litigation, MDL No.

2740, pending in the United States District Court for the Eastern District of Louisiana.

### Introduction

As a non-party to the underlying litigation and resident of the Western District of

Washington, Ms. Cantwell has a right to have the validity of Sanofi's overbroad and unduly

burdensome subpoena, seeking irrelevant, privileged and highly personal documents, determined in

her home forum.  To the extent that Sanofi's subpoena seeks privileged documents tangentially

relevant to Sanofi's claim that her former attorneys in the MDL counseled her to "destroy" evidence

through editing a Facebook post, Ms. Cantwell has attempted to meet Sanofi's needs by authorizing

her former attorneys to produce the privileged communications to the MDL Court for *in camera* review by the magistrate – an offer Sanofi has repeatedly refused. To the extent Sanofi is attempting to compel Ms. Cantwell to produce thousands of pages of personal email communications with other women who, like her, experienced chemotherapy induced permanent hair loss after utilizing Sanofi's product, compliance with Sanofi's subpoena has already imposed a massive financial and emotional burden, which would be greatly exacerbated if she were also forced to defend her rights in a foreign jurisdiction.

This Panel is permitted to transfer civil actions to an MDL docket when transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the actions." 28 U.S.C. § 1407(b). Here, the inconvenience and burden to Ms. Cantwell in protecting her privileged and personal emails in a foreign jurisdiction outweighs any other considerations, and CTO-46 should be vacated.

## Factual Summary

A. <u>The Underlying Case</u>

The MDL currently pending in the Eastern District of Louisiana involves allegations by a group of female cancer survivors that Sanofi and other pharmaceutical companies marketed and sold a chemotherapy agent, docetaxel (marketed by Sanofi under the brand name Taxotere) – but concealed a side effect of which it knew or should have known – that use of docetaxel presented a significant risk of persistent or permanent hair loss, or alopecia.

Ms. Cantwell is a cancer survivor who was treated with docetaxel and experienced on-going or permanent alopecia. Although she did retain counsel to determine whether she could pursue claims against Sanofi for her injuries, she has not yet filed such a case and is not a party to the underlying litigation. Bachus & Schanker, the law firm Ms. Cantwell initially retained to represent

her, and whose communications Sanofi seeks, no longer represents her for claims related to her use of Taxotere.

B. The Taxotears Social Media Groups

As the number of women who failed to regrow their hair after treating with docetaxel increased, they began to find one another through on-line networking. As relevant here, many of these survivors communicated with one another through social media under the umbrella term "Taxotears." A "Taxotears" private group was established on Facebook, and a "Taxotears" Google Group was formed, which essentially functions as a list-serve, where members received communications from the group via e-mail. Members of these social media groups communicated with each other concerning the emotional impact of unexpected permanent hair loss, remedies they used in attempts to regrow their hair, and ultimately the various forms of redress they might pursue against Sanofi and other manufacturers of docetaxel for their injuries. Taxotears members were instrumental in lobbying the FDA to require Sanofi to change the label of Taxotere to more accurately identify the risk of permanent alopecia. Ms. Cantwell was a member of both the Taxotears Facebook and Google Groups, but was not an "administrator" of either. She has no special access to the documents/emails/posts that exist on these social media platforms.

In the underlying litigation, Defendants sought discovery from the individual plaintiffs with respect to membership in a Taxotears social media group. Under the Court's Orders concerning preservation and production of electronically stored information ("ESI"), members of these groups who are plaintiffs in the MDL are required to produce relevant Taxotears posts/emails, under a Plaintiff Fact Sheet protocol jointly developed by the parties and approved by the Court. Sanofi has also issued a subpoena to Google, requiring Google to produce "non-content" data related to communications between members of the Taxotears Google Group.

C. Sanofi's Subpoena to Ms. Cantwell

3

On October 8, 2018, Sanofi served Ms. Cantwell with a subpoena duces tecum under Rule 45 of the Federal Rules of Civil Procedure.[1]  The subpoena identified nine categories of documents to be produced.  The documents sought by Sanofi fall into two distinct categories.  Categories 3-7 seek all documents related to an entry Ms. Cantwell posted to the Taxotears Facebook Group on November 22, 2015, and subsequently edited on December 17, 2015.



Even though Ms. Cantwell is not a party to this MDL, Sanofi is seeking these documents because it believes the "request" to delete comments came from her attorney, reflecting a general "conspiracy" between counsel for plaintiffs in the MDL and their clients to destroy relevant ESI.[2]  This alleged "conspiracy" is the only asserted basis for relevance of Ms. Cantwell's Facebook post.  Although Ms. Cantwell admits that she edited her Facebook post as a result of a communication

---

[1] **Exhibit 1**.
[2] **Exhibit 2**, Sanofi's October 15, 2018 Response letter to Magistrate North, p.3.

4

with her attorneys, she denies that her attorneys directed her to delete or otherwise edit the Facebook post.

Categories 1 & 2 of Sanofi's subpoena are substantially broader and more burdensome. Category 1 requires her to produce all documents reflecting communications between herself and any "plaintiff" in the MDL.[3] Category 1 also requires her to produce all communications with any attorney who represents any plaintiff in the MDL. Putting aside the issue of how Ms. Cantwell is to identify all of the attorneys who may represent the 10,000+ women seeking redress in the MDL, Sanofi's request for these materials facially requires her to produce her communications with her own previous attorneys – thus implicating her attorney-client privilege.

Category 2 of Sanofi's subpoena requires Ms. Cantwell to produce "all documents or communications between, among, to of from you and any member of the Taxotears Facebook Group and the Taxotears Google Group." In its filings to date, Sanofi has proffered no reason why Ms. Cantwell should be required to produce thousands of pages of emails and social media – which she "possesses" only because of her membership in these groups – when these documents can more readily be obtained from other members of the Taxotears groups who are parties to the underlying litigation – or from Google or Facebook. Sanofi is treating Ms. Cantwell as if she is the custodian of these records, when in fact she is nothing more than an incidental possessor. Ultimately, Ms. Cantwell's *individualized* possession, receipt, or knowledge of these materials is not relevant to the claims of any party to the litigation.

### Procedural History

Sanofi served its subpoena on Ms. Cantwell on October 8, 2018. Prior to serving the subpoena, Sanofi gave notice to the parties in the underlying litigation. The Plaintiffs Steering

---

[3] How Ms. Cantwell is to identify who is a plaintiff in the MDL is unknown, and ascertaining this knowledge is itself an undue burden.

Committee and Ms. Cantwell's former counsel raised its concerns regarding the scope and relevance of the subpoena to Magistrate Michael B. North in the Eastern District of Louisiana in a case management conference on October 16, 2018.[4] In that proceeding, Ms. Cantwell's former attorney represented to the Court that Ms. Cantwell had authorized them to produce the communications that led her to edit her Facebook post to the Court for in camera review, so that the Court could satisfy itself that her attorneys had not counselled her to destroy evidence – the only relevant basis asserted by Sanofi. Magistrate North declined to hear arguments on the relevance of the subpoena at that time and extended the return date of the subpoena an additional two weeks.

On November 6, 2018, pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, Ms. Cantwell filed a partial motion to quash in the Western District of Washington.[5] Ms. Cantwell again offered to submit her communications with her counsel related to the Facebook post to the Court for *in camera* review. Otherwise, Ms. Cantwell moved to quash the subpoena on the basis that her emails with other cancer survivors, Taxotears members, and attorneys she may have communicated with were privileged and confidential, irrelevant to the claims in the underlying action, and that producing those documents presented an undue burden and substantial expense.

On November 15, 2018, Sanofi simultaneously moved in the Western District of Washington to Stay the Proceedings related to Ms. Cantwell's Motion and to transfer the proceedings to the Eastern District of Louisiana pursuant to Rule 45(f). Sanofi concurrently identified Ms. Cantwell's action to this Panel as a "tag-along" action pursuant to 28 U.S.C. § 1407. On November 29, 2018, the Western District of Washington entered a stay of proceedings pending resolution of Sanofi's tag-along designation in this forum.

## LAW AND ARGUMENT

---

[4] **Exhibit 3**, October 11, 2018 Plaintiff Steering Committee submission to Magistrate North, p.2.
[5] Ms. Cantwell produced the edited Facebook post to Sanofi's attorneys on the same date.

A. Federal Rule of Civil Procedure 45(d)(3)(A) Affords Ms. Cantwell a Substantive Presumption in Favor of Her Home Forum – the Western District of Washington

In 2013, Rule 45 of the Federal Rules of Civil Procedure was amended to add subsection (f), governing transfer of subpoena related motions. Prior to 2013, the issuing court was the only proper forum for challenging a subpoena for documents or deposition. The 2013 amendment fundamentally altered the rules related to deciding such subpoenas, requiring the party seeking to quash the subpoena to initiate an action in the district where compliance is required, and permitting the compliance court to transfer the motion to the issuing forum only "if the person subject to the subpoena consents or if the [compliance] court finds exceptional circumstances." Fed R.Civ. P. 45(f).

The committee comment explaining the change is clear that the amendment is not merely technical, but was intended to confer a significant, substantive presumption in favor of the forum of the subpoenaed party:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. **The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions.** In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

Fed. R. Civ. P. 45 (2013 Amendment) Comm. Comments; *See also* Judicial Watch, Inc. v. Valle Del Sol, Inc. 307 F.R.D. 30, 34 (D.D.C., 2014)(citing standard of committee as legal standard). Furthermore, the committee explained that Rule 45(f) "applies to all motions under this rule." Fed. R. Civ. P. 45 (2013 Amendment) Comm. Comments. Therefore, the standards and policies underlying Rule 45 governs all motions to transfer a subpoena propounded pursuant to Rule 45,

regardless of whether alternative statutory authority (such as 28 U.S.C. § 1407) might also provide a substantive basis for transferring a subpoena. Such a conclusion is reinforced by the historical protections afforded to non-party deponents outside the district where the action is pending. See <u>In re Sealed Case,</u> 141 F.3d 337, 342 (D.C. App. 1998)(noting the "territorial protection" afforded non-party deponents under the rules).

> B. <u>Ms. Cantwell's Motion to Quash Does Not Involve Common Questions of Fact to the Underlying Litigation</u>

Under 28 U.S.C. 1407, this panel is authorized to transfer actions "involving one or more common questions of fact." <u>28 U.S.C. 1407(a)</u>. No such commonality exists here. Admittedly, the Eastern District of Louisiana determined that the social media posts of *parties* in the Taxotears groups could include information relevant to the claims of the plaintiffs. But the issue in Ms. Cantwell's action relates the relevance of the emails and social media posts *she possesses*. While the emails and social media posts she can access may be "relevant" in the abstract (as containing relevant information posted by *parties*) there is simply no relevance to Ms. Cantwell's possession of those social media posts and emails. The "fact" that must be demonstrated in order move into the realm of "commonality" is whether Ms. Cantwell's individualized possession of the documents is somehow relevant to the claims or defenses of the parties in the underlying action. No such showing has been made or even suggested by Sanofi. Sanofi is not seeking these documents from Ms. Cantwell because her possession of them is somehow relevant. Rather, Sanofi is attempting to coerce Ms. Cantwell into producing these documents as some sort of *de facto* custodian of the Taxotears social media groups – which she is not.

Secondly, to the extent that Sanofi is seeking to compel Ms. Cantwell to produce her communications with her attorneys related to the November 2015 Facebook post – whether or not Ms. Cantwell's former attorneys advised Ms. Cantwell to alter her social media post (which they did not) has no commonality with Sanofi's generalized speculation in the underlying action that Ms.

Cantwell's previous attorneys failed to properly advise actual *parties* to that action with respect to their duties to preserve their social media posts, or have actively conspired with clients to destroy or not produce relevant ESI.[6] The communications between Ms. Cantwell and her attorney were individualized. The communications occurred before the first lawsuits related to Taxotere were even filed. Thus, even if Ms. Cantwell's attorneys outright (and theoretically) advised her to destroy her social media posts, such a fact would not establish "commonality" with respect to whether her attorneys generally advised *actual parties* to the litigation to alter their social media, in contravention of Court preservation orders.[7] If a contrary rule were established, it is difficult to conceive where it's reach might end. Presumably, Sanofi would thereafter be entitled to seek attorney-client communications from any client or former client of Bachus & Schanker (and consolidate its request in the MDL) on the basis that a "common question of fact" relating to the attorney's advice related to preservation of ESI was presented. Nothing in law or experience suggests that the doctrine of "commonality" under Section 1407 can or should be stretched so far.

C. The Equities Weigh in Favor of Non-Transfer

Under Section 1407, transfers are appropriate when it "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Under Rule 45(f), however, discovery motions related to a subpoena may be transferred only in "exceptional circumstances" without the consent of the party subject to the subpoena. Fed R.Civ. P 45(f). Exceptional circumstances may be present "in order to avoid disrupting the issuing court's

---

[6] **Exhibit 2.**

[7] Importantly, Ms. Cantwell has already authorized her attorneys to submit the disputed communications to Magistrate North, and Ms. Cantwell's former attorneys have no objection to doing so. To the extent that the Eastern District of Louisiana has jurisdiction over the conduct of attorneys practicing in that Court related to compliance with Court orders regarding preservation of ESI, Ms. Cantwell has already consented to the Court exercising its jurisdiction over her former attorneys, but not her. The Eastern District of Louisiana can resolve the issue of whether Ms. Cantwell's attorneys acted improperly through *in camera* review of the communications obtained from the attorneys.

management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 (2013 Amendment) Comm. Comments. Factors to consider "include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." Judicial Watch, Inc. v. Valle Del Sol, Inc., 307 F.R.D. at 34. These factors must be weighed against the undue burden or cost to the non-party in forcing litigation of the motion in a foreign forum, as well as the non-party's inchoate interest in obtaining resolution in her home forum.

The undue burden and expense of forcing Ms. Cantwell to litigate her motion in the Eastern District of Louisiana cannot be overstated. More than 2,000 miles separate her home in Washington from the Eastern District of Louisiana. Ms. Cantwell is a person of limited means. In forcing her to retain an attorney to protect her rights, Ms. Cantwell has already been exposed to enormous expense. If her attorney were forced to acclimate herself to the local rules and peculiarities of the Eastern District of Louisiana, that expense would be increased. In stark contrast, Sanofi's attorneys have offices in Seattle, and are competently represented by a large firm whose attorneys are already intimately familiar with the rules and nuances of that forum. Additionally, Sanofi is an international pharmaceutical company with billions of dollars of annual revenue. Having randomly plucked Ms. Cantwell from the numerous non-party members of Taxotears to subject to an invasive subpoena, Sanofi should be forced to bear the burden and expense to litigate in a forum convenient to its target.

Additionally, this Panel should not underestimate Ms. Cantwell's inchoate interests in having this dispute resolved in her home forum, by a Court who can truly and independently weigh her interests in not being compelled to comply with an overly burdensome subpoena. While Ms. Cantwell has no doubt that the judicial officers in the Eastern District of Louisiana are fair and

impartial, the fact remains that those officers are also burdened by the desire to move the underlying litigation forward and to solve problems with that goal in mind, and thus may not fully weigh her interests as a non-party with the same neutrality as an officer in a forum not so encumbered. This risk is exacerbated by the fact that Sanofi's attorneys in the Eastern District of Louisiana have developed working relationships with the judicial officers responsible for overseeing the litigation, while Ms. Cantwell's attorney is a complete stranger in that forum. Ultimately, the "territoriality" principles underlying Rule 45, as well as fundamental principles of federal judicial power (such as diversity) reflect a preference and presumption in favor of "home field advantage" for the person involuntarily subjected to judicial authority – even though the specific advantage to be gained is often difficult to fully articulate. In this case, that person is Ms. Cantwell.

D. <u>Permitting the Western District of Washington to Rule on Ms. Cantwell's Motion Will Not Impair Determination of the Underlying Litigation</u>

As set forth above, Sanofi's subpoena can be reduced to two general categories: (1) the documents related to her Facebook post, ostensibly related to Sanofi's speculative concerns that Ms. Cantwell's former attorneys improperly advised clients to alter ESI; and (2) its demand for the entirety of Ms. Cantwell's communications with (a) her attorneys; (b) every plaintiff in the MDL; and (c) every member of the Taxotears social media groups.

Only the first category presents issues that can fairly be categorized as "complex" or unique to the underlying litigation. Ms. Cantwell has offered to mitigate the risk of complexity inherent in this issue by authorizing her former attorneys to produce the privileged communications relevant to the Facebook post to the Louisiana court for *in camera* review. After all, Sanofi's avowed purpose for requesting those communications does not pertain to her (as a non-party she is free to alter her Taxotears posts in any manner she desires), but to Sanofi's mistaken speculation that her former attorneys advised her to alter the Facebook post. The alleged wrongdoing, if any, is her attorneys, and the Louisiana Court has jurisdiction over wrongdoing by attorneys related to their conduct of

the underlying litigation.  The Louisiana court does not need Ms. Cantwell to produce her communications – she has no objection to her attorneys producing those communications for *in camera* review.

There is nothing complex about the second category of documents sought by Sanofi.  The issues are simple – can Sanofi compel her to incur the enormous expense and burden of ascertaining the identity of every plaintiff in the MDL, every attorney representing a plaintiff in the MDL, and compel her to produce her privileged and confidential communications with those individuals, without even a threshold demonstration of the relevance?  Is Ms. Cantwell to be involuntarily imposed upon as a *de facto* custodian of the tens of thousands of emails on the Taxotears Google Group, and many Taxotears Facebook Group posts, when those materials can be obtained from Google, Facebook, or the numerous women who are actually parties to the underlying litigation that presumably have the same access to those materials as she does?  These are big picture issues related to fundamental fairness and equity.

Sanofi has already taken action in the underlying litigation to obtain these materials, and in fact already has tens of thousands of pages of Taxotears emails.  It has issued a subpoena to Google for data identifying all Taxotears Google Group communications.  At the same time that Sanofi is harassing Ms. Cantwell to incur the enormous expense of identifying, reproducing, and producing these documents, it is haranguing the Court and plaintiffs in the underlying action concerning the plaintiffs alleged failure to produce the same documents, and seeking court intervention to compel a Taxotears plaintiff or their attorneys to provide it unfettered access to both social media groups.[8]

---

[8] **Exhibit 4**, Sanofi's April 20, 2018 Letter Submission to Magistrate North, pp. 3-5.  Interestingly, in its submission to Magistrate North, Sanofi concedes that party plaintiffs "need not produce non-responsive ESI from Taxotears – e.g. posts where non-plaintiff members are simply discussing their breast cancer or other personal information having nothing to do with Taxotere or hair loss."  *Id.* at p. 5.  But Sanofi's subpoena to Ms. Cantwell requires her to produce <u>all</u> Taxotears Facebook posts

The issues underlying Ms. Cantwell's motion to quash are not complex, and do not pose a threat of conflicting orders or obligations on anyone.  The Louisiana Court can and has determined the extent to which Sanofi is entitled to these materials.  The issue underlying Ms. Cantwell's motion is who is to be imposed upon to produce those documents – her or the parties to the underlying litigation to whom the materials relate?  Sanofi cannot be permitted to simply short-cut whatever limitations the Louisiana court has imposed on its ability to obtain these materials from plaintiffs by imposing that obligation on Ms. Cantwell.  The only "exceptional circumstance" present in this case is the astonishing overbreadth and abusiveness of Sanofi's subpoena to a non-party, combined with its stubborn intransigence in refusing to reduce the scope of its subpoena.[9]  The Western District of Washington – Ms. Cantwell's home forum – is the appropriate and required forum to determine these issues.

REQUEST FOR RELIEF

For the foregoing reasons, Ms. Cantwell respectfully requests that the Panel grant her Motion and enter an order (1) vacating the conditional transfer order (CTO-46) with respect to this cause of action, and (2) granting Ms. Cantwell such additional relief to which she may be entitled and which the Panel deems just and proper.


Dated:  December 11, 2018                    Respectfully Submitted,

                                             SCHROETER GOLDMARK & BENDER

                                             /s/ Elizabeth J. McLafferty

---

and all Google Group emails, regardless of content.  Sanofi thus burdens Ms. Cantwell with obligations beyond what it would impose on the plaintiffs.  This is unconscionable.

[9] Ms. Cantwell fully intends to seek attorney fees and costs under Rule 45(d)(1) for Sanofi's refusal to take reasonable steps to protect her from undue burden and expense – most notably its refusal to accept her willingness to permit Bachus & Schanker to submit the disputed communications for *in camera* review in the Eastern District of Louisiana.  Ms. Cantwell believes that such a motion would be more neutrally considered in a forum where no preexisting working relationship exists between Sanofi's counsel and the Court.

Elizabeth J. McLafferty
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Ste. 500
Seattle WA 98104
Phone: (206)622-8000
Fax:    (206)682-2305
mclafferty@sgb-law.com