# EXHIBIT E

BARRIOS KINGSDORF & CASTEIX, L.L.P.
ATTORNEYS AT LAW

DAWN M. BARRIOS
BRUCE S. KINGSDORF
BARBARA TREUTING CASTEIX
ZACHARY L. WOOL*

EMMA KINGSDORF SCHWAB

JOSEPH I. GIARRUSSO III†
    OF COUNSEL

*ADMITTED IN NY & LA
†ADMITTED IN TX & LA

701 POYDRAS STREET, SUITE 3650
NEW ORLEANS, LA 70139-3650
TELEPHONE (504) 524-3300
FACSIMILE (504) 524-3313
WWW.BKC-LAW.COM

October 11, 2018

**VIA EMAIL SUBMISSION**

The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street, Room B419
New Orleans, Louisiana 70130

  Re: *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740
    PSC's Submission for Status Conference on October 16, 2018

Dear Magistrate Judge North,

The PSC presents the following issues the Plaintiffs will raise in next Tuesday's status conference:

  1. Interrogatories to 505(b)(2) Defendants

In accordance with CMO No. 7 (Rec. Doc. 915), the PSC has served discovery on Hospira, Inc., Sandoz, Inc., and Accord Healthcare, Inc.—the three 505(b)(2) Defendants identified as manufacturers of the docetaxel product prescribed to second round Trial Plaintiffs. The PSC served detailed Requests for Production on these 505(b)(2) Defendants on or about December 7, 2017. The 505(b)(2) Defendants served initial responses on or about March 7, 2018. During subsequent meet and confers regarding the adequacy of these responses, the 505(b)(2) defendants suggested that many of the requests would be better suited for interrogatories.

On August 1, 2018, the PSC propounded 36 interrogatories on each of the 505(b)(2) defendants, at least in part to supplement the Requests for Production, as suggested during the meet and confers. On or about October 1, 2018, Defendants provided initial responses to interrogatories 1-25 but each refused to answer interrogatories 26-36 on the same grounds that the interrogatories exceeded the number allowable under Fed. R. Civ. P. 33(a)(1) and CMO 7, Section 4(b) (Rec. Doc. 915). *See, e.g.,* Exhibits A-C, Defendant Accord Healthcare, Inc.'s Answers to First Set of Interrogatories, Defendant Hospira Worldwide, LLC's Response and Objections to Plaintiffs' First Set of Interrogatories, and Defendant Sandoz Inc.'s Answers and Objections To Plaintiffs' First Set of Interrogatories. The parties met and conferred on this issue without resolution.

October 11, 2018
Honorable Michael B. North
Page 2

The propounded interrogatories seek critical information about each of the 505(b)(2) Defendants'
decision to manufacture/label/market/distribute/track each's docetaxel injection product, the
process by which each Defendant obtained approval to market docetaxel in the United States, and
the extent to which each Defendant should have known about docetaxel and permanent alopecia.
This information is relevant and necessary to the litigation.

Accordingly, the PSC respectfully requests that it be granted to leave to exceed the number of
interrogatories allowable under Rule 33(a)(1), and that the Court order the 505(b)(2) defendants
identified above to respond to 11 additional interrogatories, numbers 26-36.

> 2.   Sanofi's subpoena to Ms. Debbie Cantwell

On behalf of Bachus & Schanker, the PSC provides the following:

Sanofi's subpoena to a third party (Exhibit D) seeks documents related to posts Ms. Debbie
Cantwell made on the Taxotears Facebook page in November 2015.  Ms. Cantwell is not a plaintiff
in this MDL. Ms. Cantwell previously sought legal advice from Robert Weinberger, and ultimately
retained Bachus & Schanker for claims related to her use of Taxotere. She is no longer a client of
Bachus & Schanker.

According to a Facebook post Sanofi has obtained, Ms. Cantwell posted she was "deleting my
comments regarding the hair product I used as requested by someone we're not supposed to talk
about."  After receiving Sanofi's subpoena, Bachus & Schanker reached out to Ms. Cantwell, and
Ms. Cantwell provided documentary evidence of communications between herself and Mr.
Weinberger and his staff, providing important context with respect to why she deleted her
comments.

Sanofi's subpoena also requests that Ms. Cantwell produce "[a]ll documents or communications
between, among, to or from you and the plaintiffs or plaintiffs' counsel in any Taxotere case." Ms.
Cantwell's communications with Mr. Weinberger and Bachus & Schanker are protected by the
attorney-client privilege, and Ms. Cantwell does not intend to waive this privilege.

Ms. Cantwell will consent to an *in camera* review of the attorney-client communications that
spurred her decision to remove that post.  Bachus & Schanker believes the documentary evidence
will unequivocally demonstrate that the information is privileged, and that the content of the
original post is completely irrelevant to any claim or defense of *any* party.

We close by repeating that Ms. Cantwell is not a party to any lawsuit against Sanofi; her
communications with counsel are privileged and her personal opinions and her Facebook posts are
irrelevant to any claims or defenses in any action in this MDL; and this line of inquiry is entirely
misdirected and unnecessarily consuming judicial resources that should be devoted to the
preparation of the Trial Plaintiffs' cases.

October 11, 2018
Honorable Michael B. North
Page 3

      3.  <u>PSC's objection to Sanofi's Motion for Issuance of Letters of Request for International Judicial Assistance</u>

Per Your Honor's Order of October 11, 2018 (Rec. Doc 4591), the PSC submitted its objection on October 12, 2018.

Very Truly Yours,

Dawn M. Barrios
On Behalf of the Plaintiffs' Steering Committee

Enclosures:
Exhibit A, Defendant Accord Healthcare, Inc.'s Answers to First Set of Interrogatories
Exhibit B, Defendant Hospira Worldwide, LLC's Response and Objections to Plaintiffs' First Set of Interrogatories
Exhibit C, Defendant Sandoz Inc.'s Answers and Objections To Plaintiffs' First Set of Interrogatories
Exhibit D, Sanofi's Subpoena to Debbie Cantwell

Cc:   Doug Moore
      John Olinde

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 2740 SECTION "H" (5) |
| THIS DOCUMENT RELATES TO ALL CASES | : : : : | |

**DEFENDANT ACCORD HEALTHCARE, INC.'S
ANSWERS TO FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Accord Healthcare, Inc. ("Accord") submits the following Answers and Objections to these Interrogatories in accordance with Case Management Order No. 7 (Doc. 915) and the Protective Order entered in MDL 2740 (Pretrial Order No. 50, Doc. 612).

Accord objects to the "DEFINITIONS" set forth in Nos. 1 through 18 to the extent such definitions exceed the scope of applicable discovery as set forth in the Federal Rules of Civil Procedure and are not proportional to the needs of this litigation with respect to Accord. Further, certain definitions do not encompass terms utilized in the regular course of Accord's business and thus, Accord's answers are based upon its interpretation and use of such terms. Also the "Relevant Time Period," defined as back to January 1, 2006 to the present, is unreasonable and not consistent with the claims set forth in this litigation with respect to Accord. The definition of the terms "Alopecia" and "Hair Loss" are objectionable to the extent they are not consistent with the claims alleged by the plaintiffs in this MDL litigation, overbroad in scope, and vague.

Accord further objects to the definitions of the terms "You," "Your," and "Defendant" to include "all parents, subsidiaries, affiliates, partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors, or other representatives, including all

corporations and affiliated entities" and will limit its responses to Defendant, Accord Healthcare, Inc., consistent with the applicable law. Also, Accord objects that the definition of "COMMUNCATION" is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection. Moreover, any documents identified in Accord's Answers have been or will be produced according to the ESI Protocol set forth in Pretrial Order No. 49 (Doc. 611).

As to the "INSTRUCTIONS" set forth by the plaintiffs directed to defendants, Accord objects to the extent the plaintiffs seek knowledge from Accord's attorneys as protected by the work-product doctrine and/or attorney-client privilege. As to any withholding of information on the grounds of privilege, Accord refers plaintiffs to the ESI protocol detailed above as negotiated by the parties and entered by the Court.

Accord provides the following background information in support of its Objections and Answers stated herein. Accord is a licensed pharmaceutical company focused on generic pharmaceutical formulations. On December 21, 2009, Accord submitted a New Drug Application ("NDA") pursuant to Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("Act") for Docetaxel, which was approved by the Food and Drug Administration ("FDA") for use as recommended in the agreed-upon product labeling. In its Section 505(b)(2) application, Accord advised FDA that since the proposed formulation submitted for Docetaxel was identical to the Reference Listed Drug (Taxotere®), and both products were intended for intravenous administration and contain the same active ingredients in the same concentration, it intended to rely upon the FDA's previous findings of safety and effectiveness for the Reference

Listed Drug.  Accord received approval from the FDA on June 8, 2011.  Therefore, the Answers

stated below are based upon Accord's status as a Section 505(b)(2) NDA holder of Docetaxel.

## ANSWERS TO INTERROGATORIES

1.  Identify and describe the circumstances under which YOU became aware of TAXOTERE
    and its potential as a BLOCKBUSTER TAXANE and the potential financial viability of
    DOCETAXEL under FDCA Section 505(b)(2).

**ANSWER:** Objection to the use of the term "BLOCKBUSTER TAXANE" as not being used in
the regular course of business and therefore ambiguous in the context of this Interrogatory.
Accordingly, Accord is unable to provide a responsive answer as to its relationship to the
potential financial viability of Docetaxel.

2.  Describe in detail the circumstances and process by which YOU considered and decided to
    enter the market for the manufacture or sale of DOCETAXEL, including considerations of
    whether to market DOCETAXEL as 505(b)(2) or as a generic.

**ANSWER:** Objection to the overbroad and burdensome nature of this Interrogatory and the
relevancy of the circumstances considered to enter the market for any particular pharmaceutical
product including Docetaxel, to the claims in this litigation.  Accord further objects to this
Interrogatory because it is not proportional to the needs of this litigation with respect to Accord.
Notwithstanding, in general, Accord considers some of the following factors in deciding whether
to enter the market for the manufacture and sale of any pharmaceutical product:  the size of the
commercial market, whether Accord has the internal capabilities to manufacture the product both
from a research and development as well as capacity standpoint, and intellectual property
considerations.  Accord would have chosen to pursue a 505(b)(2) application to take into account
any patent issues.

3.  Identify each product YOU currently have and historically have had approval through the
    505(j) process and through the 505(b)(2) process.

**ANSWER:** Objection on the basis that such information is irrelevant to the claims being made in
this litigation and not proportional to the needs of this litigation with respect to Accord.
Notwithstanding, Accord refers the PSC to its publicly available website as well as the FDA's
publicly available website, which are equally accessible to plaintiffs, for its pharmaceutical
products and the statutory basis for such approval.

4.  Identify every person, department, unit, affiliated entity, and third party involved with or for
    YOU or on YOUR behalf in the consideration or decision making to enter the market for the
    sale of DOCETAXEL.

**ANSWER:** Objection on the basis that such information is irrelevant to the claims being made in
this litigation and not proportional to the needs of this litigation with respect to Accord.

3

Notwithstanding, departments involved in making the decision to enter the market for the manufacture of any pharmaceutical product would include manufacturing, research and development, regulatory, and marketing and portfolio.

5.  State YOUR total expense and financial investment (cost to market) from the time YOU considered entry into the DOCETAXEL market to the time YOU entered that market.

**ANSWER:** Objection on the basis that such information is irrelevant to the claims being made in this litigation and not proportional to the needs in the litigation with respect to Accord. Notwithstanding, Accord does not maintain such information in the regular course of business as to any one product, but rather maintains such information on an aggregate basis. Further, certain costs in bringing a product to market would not be reflected in standard aggregate compilations.

6.  Itemize and describe in detail the breakdown of each element of YOUR cost to market identified in response to Interrogatory No. 5 above.

**ANSWER:** See answer to No. 5 above.

7.  Identify all COMMUNICATIONS, agreements, or payments between YOU and SANOFI regarding DOCETAXEL, both before submission of your NDA and thereafter.

**ANSWER:** As to any communications after submission of the NDA, objection to the extent this Interrogatory seeks communications subject to protection under the work-product doctrine, attorney-client privilege, or other applicable privilege. Notwithstanding, as to any communications prior to the submission of the NDA, Accord would have made the required regulatory notification to Sanofi as the Reference Listed Drug holder pursuant to 21 C.F.R. § 314.52(a)(2). Accord is not aware of any agreements it has entered into nor any exchange of payments with SANOFI regarding Docetaxel.

8.  Identify all COMMUNICATIONS between YOU and any other party in this litigation regarding DOCETAXEL, both before submission of your NDA and thereafter.

**ANSWER:** As to any communications after submission of the NDA, objection to the extent this Interrogatory seeks communications subject to protection under the work-product doctrine, attorney-client privilege, or other applicable privilege. Notwithstanding, as to any communications prior to the submission of the NDA, in general Accord does not communicate in the regular course of business with its competitors.

9.  Describe in detail YOUR knowledge of SANOFI's finances or financial success with respect to TAXOTERE during YOUR decision-making process with regard to entering the DOCETAXEL market.

**ANSWER:** Objection to this Interrogatory as phrased, which assumes the "financial success" of Sanofi is factored into such decision-making process. See Answer to No. 2 above. Accordingly, Accord is unable to provide a responsive answer.

10. Identify and describe the circumstances and source under which YOU became aware of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA, including temporary and persistent.

**ANSWER:** Objection as vague and ambiguous as to the meaning of "persistent." Notwithstanding, alopecia is a commonly known side effect of Docetaxel, as with numerous other chemotherapeutic medications, that has been well documented in clinical trials performed and documented in the NDA submitted by the Reference Listed Drug manufacturer for Taxotere®, as well as the product labeling since Taxotere® was approved in 1996. As stated above, Accord advised the FDA in submitting its NDA that it intended to rely upon the FDA's previous findings of safety and effectiveness for the Reference Listed Drug. These sources form the basis for Accord's awareness of the link between Docetaxel use and alopecia.

11. Describe in detail every way YOU COMMUNICATED the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA to YOUR customers, and the users (patients and physicians) of DOCETAXEL.

**ANSWER:** Accord communicated the risk of alopecia with the use of Docetaxel to physicians and patients through its Full Prescribing Information and Patient Information, which was initially approved by the FDA in conjunction with its review and approval of the NDA submitted by the Reference Listed Drug manufactured for Taxotere® and incorporated into Accord's NDA application pursuant to 505(b)(2). Accord's Full Prescribing Information and Patient Information have previously been produced to the PSC in an electronic, searchable format and is also publicly available on the FDA's website.

12. Describe in detail every COMMUNICATION of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA with FDA or a FOREIGN REGULATORY BODY.

**ANSWER:** Objection as any communications with a foreign regulatory body are irrelevant to Plaintiffs' claims, who allegedly received their Docetaxel in the United States. Notwithstanding, Accord is not involved with any foreign regulatory body communications.

13. Identify the PERSONS involved and describe in detail YOUR compliance with 21 CFR 314.80(b).

**ANSWER:** Objection as vague and ambiguous as to the meaning of "describe in detail YOUR compliance." In addition, this Interrogatory is overbroad as it is not limited to pharmacovigilance for Docetaxel. Notwithstanding, Sabita Nair, Senior Director of Regulatory Affairs, is involved with Accord's pharmacovigilance compliance. The details of Accord's

pharmacovigilance compliance with FDA regulations are set forth in Accord's pharmacovigilance standard operating procedures ("SOPs"), which have been produced in response to the Request for Production of Documents, and the burden of deriving or ascertaining the answer to this Interrogatory will be substantially the same for the PSC as it is for Accord. Accord's pharmacovigilance SOPs were produced to Plaintiffs' counsel in an electronic and searchable format. Examples of such documents include ACC.00005817-ACC.00005913 and ACC.00005922-ACC.00006097.

14. Describe in detail and identify all agreements by which responsibility for compliance with a part of the regulation identified in Interrogatory No. 13 is outsourced and delegated.

**ANSWER:** Accord is ultimately responsible for pharmacovigilance compliance related to its marketed products. Accord does contract with Lambda Therapeutic Ltd., a clinical research organization, for certain pharmacovigilance activities, including literature surveillance, case processing, aggregate reporting, signal detection, and risk evaluation. Many of the pharmacovigilance activities are shared between Accord and Lambda.

15. Identify the PERSONS involved and describe what YOU did in response to the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA, including contacting SANOFI or other DOCETAXEL manufacturers, initiation of independent studies, literature searches (national or worldwide), adverse events databases, third party data, research, FOIA requests, risk management, notice to customers, notice to the public, and other follow up.

**ANSWER:** Objection to the extent this Interrogatory seeks information about Accord's attorneys' efforts to direct an investigation of the claims made by plaintiffs in Docetaxel lawsuits, as such efforts and investigations are protected by the work-product doctrine and attorney-client privilege. Notwithstanding, alopecia is a commonly known side effect of chemotherapeutic medications such as Docetaxel that has been well documented in the medical literature. Consistent with its regulatory responsibilities pursuant to 505(b)(2), Accord also reported adverse events relating to alopecia along with any other adverse events reported with Docetaxel use.

16. Identify and describe in detail the factual and medical basis for every alternative cause of HAIR LOSS that YOU may offer at a hearing or trial of this matter.

**ANSWER:** Objection to the extent this Interrogatory seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege. Notwithstanding, at this time, Accord has not made any specific contention as to alternative causes as such information can only be obtained through the work-up of an individual case. Pursuant to FRCP 8(c), Affirmative Defenses must be stated in response to an initial pleading and may be later withdrawn or amended as to any individual action as applicable.

17. Identify and describe in detail the factual and medical basis for every alternative cause of HAIR LOSS suffered by Christine Kinderdine that YOU may offer at a hearing or trial of this matter.

**ANSWER:** Objection to the extent this Interrogatory seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege. Further responding, the factual and medical bases for any alternative causes specific to Plaintiff Christine Kinderdine are subject to expert discovery, thus making this Interrogatory premature. Notwithstanding, at this time, Accord has not made any specific contention as to alternative causes related to Plaintiff Christine Kinderdine as such information can only be obtained through the work-up of her individual case, which is still in progress. Pursuant to FRCP 8(c), Affirmative Defenses must be stated in response to an initial pleading and may be later withdrawn or amended as to any individual action as applicable.

18. Describe in detail the date, source, and your knowledge, understanding, reliance, tracking, or suspicion of adverse events, studies (including TAX316 and GEICAM 9805), or other pharmacovigilance with respect to TAXOTERE and ALOPECIA after receiving YOUR NDA approval.

**ANSWER:** Accord objects to this Interrogatory as phrased as it is vague and confusing. Notwithstanding, as a 505(b)(2) applicant Accord sought approval to market Docetaxel under the Hatch-Waxman Amendments to the Food, Drug & Cosmetic Act.  The primary purpose of the Hatch-Waxman Amendments was to bring drugs to market at a lower cost by permitting 505(b)(2) applicants to rely on information already known, including information from clinical trials, by the NDA holder for the Reference Listed Drug.  Studies such as TAX316 and GEICAM 9805 were completed as to the Reference Listed Drug, Taxotere®, before Accord's 505(b)(2) application for Docetaxel.  In addition, as a 505(b)(2) applicant, Accord is not required to conduct pharmacovigilance activities for adverse events that were reported to specifically involve "TAXOTERE" as defined by Plaintiffs in their definitions to these Interrogatories. Following NDA approval, Accord complied with its post-marketing pharmacovigilance responsibilities pursuant to the applicable FDA regulations and the SOPs identified in response to Interrogatory No. 13.

19. Identify the studies and published scientific and medical literature on which YOU relied in entering the DOCETAXEL market and the due diligence YOU conducted to verify the validity of each such study in placing such reliance.

**ANSWER:** Objection as overbroad and implying that Accord had a duty to "verify the validity" of any study; rather, as a 505(b)(2) applicant Accord sought approval to market Docetaxel under the Hatch-Waxman Amendments to the Food, Drug & Cosmetic Act.  The primary purpose of the Hatch-Waxman Amendments was to bring drugs to market at a lower cost by permitting 505(b)(2) applicants to rely on information already known, including information from clinical trials, by the NDA holder for the Reference Listed Drug.  Any efforts to verify the validity of

clinical studies already completed would require needless clinical trials and risk to patients in contravention of the stated policy reasons and FDA guidance.   In its Section 505(b)(2) application, Accord advised the FDA that the proposed formulation submitted for Docetaxel was identical to the Reference Listed Drug, Taxotere®, and that both products were intended for intravenous administration and contain the same active ingredients in the same concentration. *See* ACC.00003736-ACC.00003737. In accordance with 21 C.F.R. § 320.22(b)(1), Accord requested that FDA waive the requirement that Accord conduct any in vivo bioequivalence studies of its Docetaxel Injection because the active ingredient, route of administration, dosage form, and strength of the drug were the same as those of the Reference Listed Drug, and the FDA granted Accord's request.

20. In addition to the above, identify every STUDY that YOU commissioned, participated in, or are aware of with respect to the efficacy, safety, or side effects of DOCETAXEL, or the comparison between DOCETAXEL and paclitaxel, during the time that YOU were considering entering the market and thereafter.

**ANSWER:** Objection as overbroad, vague, and confusing, in implying that Accord had a duty to perform safety and efficacy studies for Docetaxel; rather, as a 505(b)(2) applicant Accord sought approval to market Docetaxel under the Hatch-Waxman Amendments to the Food, Drug & Cosmetic Act.  The primary purpose of the Hatch-Waxman Amendments was to bring drugs to market at a lower cost by permitting 505(b)(2) applicants to rely on information already known, including information from safety studies and other clinical trials, by the NDA holder for the Reference Listed Drug.  Any efforts to re-do safety and efficacy studies already completed would require needless clinical trials and risk to patients in contravention of the stated policy reasons and FDA guidance.

21. Describe in detail YOUR knowledge, understanding, or awareness of foreign labeling with respect to DOCETAXEL, including label changes, and the reasons behind such labeling or change in labeling.

**ANSWER:** Objection as Plaintiffs' claims in this MDL relate to Docetaxel use in the United States and thus, such knowledge or awareness is irrelevant and not proportional to the needs of this litigation with respect to Accord.  Notwithstanding, Accord is not involved in foreign labeling in the regular course of business.

22. At the time YOU decided to and then actually entered the market for the sale of DOCETAXEL, describe in detail YOUR knowledge of any suspected connection, relationship, or link between permanent or persistent ALOPECIA and the use of TAXOTERE.

**ANSWER:** Objection as vague and ambiguous as to the meaning of "persistent." Notwithstanding, Accord markets Docetaxel as a 505(b)(2) applicant, and as such, derived information about safety from the Reference Listed Drug, Taxotere®.  Accord was accordingly

"aware" during the relevant time period of the medical literature and clinical trials for Taxotere®, some of which involved reports of alopecia with use of Taxotere® either alone or in combination with other drugs.

23. At the time YOU decided to and then actually entered the market for the sale of DOCETAXEL, describe in detail YOUR knowledge of a suspected connection, relationship, or link between any form of ALOPECIA and the use of TAXOTERE.

**ANSWER:** Accord objects to this Interrogatory as vague and ambiguous as to the meaning of "any form of alopecia." Notwithstanding, Accord markets Docetaxel as a 505(b)(2) applicant, and as such, derived information about safety from the Reference Listed Drug, Taxotere®. Accord was accordingly aware during the relevant time period that alopecia is a commonly known side effect of Docetaxel that has been well documented in clinical trials performed before Taxotere® was approved by FDA and continued thereafter, the medical literature, as well as the labeling for Docetaxel since Taxotere® was approved in 1996.

24. Describe how YOU define or have defined ALOPECIA during the Relevant Time Period, stating the location and use of each such definition.

**ANSWER:** Accord objects to this Interrogatory as vague. Notwithstanding, Accord does not define and has not defined alopecia during the Relevant Time Period in its Full Prescribing Information or Patient Information. Pursuant to Accord's pharmacovigilance obligations, reports of hair loss and/or alopecia are interpreted consistent with the Medical Dictionary for Regulatory Activities (MedDRA).

25. Describe in detail your awareness of marketing, sales, physician, patient or nurse brochures or other information regarding TAXOTERE at the time that YOU entered the DOCETAXEL market and the use YOU made of such material.

**ANSWER:** Accord objects to this Interrogatory as vague regarding its "awareness" of the information described. Notwithstanding, as to "use", Accord – a Section 505(b)(2) NDA holder – does not market, advertise, promote, or provide promotional materials directly to healthcare providers. As such, Accord did not "use" any marketing, sales, physician, patient or nurse brochures or other information regarding Taxotere® at the time it entered the Docetaxel market. Further responding, Accord refers the PSC to its NDA, previously produced in an electronic and searchable format, that contains the "information" regarding Taxotere® that Accord relied upon in submitting its NDA pursuant to 505(b)(2).

26. Describe in detail how YOU offered or marketed DOCETAXEL for sale to YOUR customers or potential customers during the Relevant Time Period.

9

**ANSWER:** Pursuant to CMO 7 Section 4(b) and Federal Rules of Civil Procedure 33(a)(1), a party is limited to no more than 25 written interrogatories and accordingly, no Answer is required to Nos. 26 through 36.

27. Identify YOUR customers for DOCETAXEL.

**ANSWER:** See Answer to Interrogatory No. 26.

28. Identify and describe YOUR contracts with each customer for DOCETAXEL.

**ANSWER:** See Answer to Interrogatory No. 26.

29. Identify whether and describe how YOU represented YOUR DOCETAXEL as beneficial over TAXOTERE.

**ANSWER:** See Answer to Interrogatory No. 26.

30. Identify YOUR employees or representatives who attended a San Antonio Breast Cancer Symposium or ASCO symposium or conference between 2006 and 2017.

**ANSWER:** See Answer to Interrogatory No. 26.

31. Identify every PERSON involved in the initial labeling decision and those involved in decisions to request or change YOUR label for DOCETAXEL from its initial release to the present.

**ANSWER:** See Answer to Interrogatory No. 26.

32. Identify and describe all co-promotions in which YOU have participated regarding DOCETAXEL.

**ANSWER:** See Answer to Interrogatory No. 26.

33. Identify and describe in detail the process by which YOU are notified or become aware of adverse events or reports for DOCETAXEL manufactured by YOU, the process by which YOU are notified or become aware of adverse events or reports for DOCETAXEL manufactured by others.

**ANSWER:** See Answer to Interrogatory No. 26.

34. Describe in detail YOUR pharmacovigilance for DOCETAXEL and for TAXOTERE, whether manufactured by YOU or by others.

**ANSWER:** See Answer to Interrogatory No. 26.


35. Explain all actions taken by YOU to investigate the connection, relationship, or link between DOCETAXEL and ALOPECIA.

**ANSWER:** See Answer to Interrogatory No. 26.


36. Identify and describe the factors and process that led to YOUR label change or proposed label change of YOUR DOCETAXEL product.

**ANSWER:** See Answer to Interrogatory No. 26.


Accord is continuing to investigate many of the matters sought in the Interrogatories and therefore, the answers are believed to be accurate based upon the current information and materials available.  Accordingly, Accord reserves the right to amend, supplement, modify, or change its Answers as investigation and discovery continue, should same be warranted.


Dated: October 1, 2018                              Respectfully submitted,


                                                    */s/ Julie A. Callsen*
                                                    Julie A. Callsen (0062287)
                                                    Brandon D. Cox (0089815)
                                                    TUCKER ELLIS LLP
                                                    950 Main Avenue, Suite 1100
                                                    Cleveland, Ohio  44113-7213
                                                    Telephone:  216-592-5000
                                                    Facsimile:  216-692-5009
                                                    julie.callsen@tuckerellis.com
                                                    brandon.cox@tuckerellis.com

                                                    *Attorneys for Defendant*
                                                    *Accord Healthcare, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on counsel for Plaintiffs'

Liaison Counsel via electronic mail this 1ˢᵗ day of October, 2018.

/s/*Julie A. Callsen*
Attorney for Accord Healthcare, Inc.

12

**VERIFICATION**

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

      Emily M. King, being first duly sworn, deposes and says:

      I am the Vice President & General Counsel of Accord Healthcare, Inc., a defendant in the above-entitled action.   The foregoing Answers to Interrogatories were prepared with the assistance and advice of counsel for Accord Healthcare, Inc., upon whose advice Accord Healthcare, Inc. and I relied.   Further, it was necessary to obtain information to prepare the answers from various sources.   Many of the Interrogatories are vague and ambiguous and reasonably susceptible to numerous interpretations.   Accordingly, Accord Healthcare, Inc. reserves the right to supplement its answers.   Subject to these qualifications, the foregoing answers are true and correct to the best of my knowledge, information and belief.

                                              _____
                                              Emily M. King

Dated:  October 1, 2018

Sworn to and subscribed before me this _1st_ day of October, 2018.

_____
Notary Public

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                               SECTION "H" (5)

THIS DOCUMENT RELATES TO
ALL CASES

<u>**DEFENDANT HOSPIRA WORLDWIDE, LLC'S RESPONSE AND OBJECTIONS TO**</u>
<u>**PLAINTIFFS' FIRST SET OF INTERROGATORIES**</u>

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Hospira Worldwide, LLC ("Hospira"), through undersigned counsel, hereby provides objections and responses to Plaintiffs' First Set of Interrogatories to Defendant Hospira Worldwide, LLC, f/k/a Hospira Worldwide, Inc.

Hospira notes that it provides these responses voluntarily at this time in the spirit of cooperation.  Hospira is not subject to general discovery under CMO 7 because it is not a defendant in a case identified in a trial scheduling order.  Plaintiff Lisa Sylvest dismissed her case with prejudice on September 21, 2018.  Hospira reserves all rights to object to any additional discovery requests.

Hospira incorporates herein by reference the Preliminary Statement set forth in The Hospira Defendants' and Pfizer's Responses and Objections to Plaintiffs' First Set of Requests for Production, which Hospira served on February 8, 2018 ("Hospira's RFP Responses").

In responding and objecting to the requests herein, Hospira does not waive its right to challenge: (A) All questions as to the competency, relevance, materiality, privilege, and admissibility of any information as evidence for any purpose in any subsequent proceeding or in the trial of this or any other action; (B) The right to object to the use of any of these responses, or the subject matter thereof, in any subsequent proceeding or in the trial of this or any other action;

and (C) The right to elicit appropriate evidence, beyond these responses, regarding the subjects referred to in response to any discovery request.

Hospira believes the responses herein to be accurate as of the date made and based upon the information and materials currently available. Hospira reserves the right to amend, supplement, modify, or change its responses as its investigation and discovery continue.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Hospira objects to the "Instructions" in the Interrogatories on the grounds and to the extent that they seek to impose obligations beyond those set out in the Federal Rules of Civil Procedure and/or the orders governing discovery in this litigation and are therefore unduly burdensome, oppressive, and not proportional to the needs of the case.

Hospira objects to Instruction 1 to the extent it "calls for" Defendant's "knowledge," including "all knowledge that is available to [Hospira's] agents . . . ." This instruction is overly broad, not proportional to the needs of the case, renders the requests for information unduly burdensome, and imposes on Hospira obligations beyond those set out in the Federal Rules of Civil Procedure.

Hospira objects to Instruction 2 to the extent that it seeks to impose obligations beyond those set out in the Federal Rules of Civil Procedure, as it would require explanation of Hospira's inability to respond to any of the Interrogatories.

Hospira objects to Instruction 3 to the extent that it seeks to impose obligations beyond those set out in the Federal Rules of Civil Procedure, as it would require an ongoing obligation to respond to the Interrogatories.

2

Hospira objects to Instruction 4 to the extent that it seeks to require information outside the "Relevant Time Period."  Hospira further objects to the definition of the "Relevant Time Period," as described below.

Hospira objects to Definition 4 ("BLOCKBUSTER TAXANE") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure.  The taxane class of products includes several medications and types of treatment, and requests regarding products other than Taxotere and Docetaxel are neither relevant nor proportional to the needs of the case.

Hospira objects to Definition 6 ("ALOPECIA" or "HAIR LOSS") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure.

Hospira objects to Definition 7 ("YOU," "YOUR," and "DEFENDANT") to the extent that it purports to impose on Hospira obligations beyond those set out in the Federal Rules of Civil Procedure.  Hospira interprets the defined term to refer to Hospira, consistent with applicable law.  Hospira further objects that the definition is overly burdensome, as it requires Hospira to provide information not within its possession and to solicit responses to these Interrogatories by all individuals falling within Plaintiffs' definition.

Hospira objects to Definition 8 ("COMMUNICATION") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure or orders of the Court.  Hospira further objects to this definition to the extent that it requires Hospira to retrieve data that is inaccessible or would require extraordinary costs and efforts to retrieve.  In addition, Hospira has produced or

3

will produce relevant documents according to the ESI Protocol, which dictates the scope, format, and manner of production.

Hospira objects to Definition 9 ("RELATING TO") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure.  This definition fails to reasonably identify the information or materials sought by type and category, and seeks information tangentially implicating subjects without regard to relevance or proportionality.

Hospira objects to Definition 10 ("STUDY") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure.  This definition lacks geographic and temporal limitations and calls for information regarding incomplete studies.

Hospira objects to Definition 11 ("TEST") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure.  This definition lacks relevant geographic and temporal limitations, fails to reasonably identify the information or materials sought by type and category, and seeks information tangentially implicating subjects without regard to relevance or proportionality.

Hospira objects to Definition 12 ("FDA") on the ground that it is overly broad.  Hospira interprets the defined term to refer to the U.S. Food & Drug Administration or to an employee of the U.S. Food & Drug Administration acting as a representative thereof.

Hospira objects to Definition 13 ("FOREIGN REGULATORY BODY") on the ground that it is overly broad and to the extent it purports to demand production of information related to

foreign governmental agencies or otherwise seek information without limitation to the geographic location of Plaintiffs and their claims.

Hospira objects to Definition 14 ("IDENTIFY" or "IDENTITY") on the ground that it is overly broad and ambiguous and to the extent that this definition purports to impose obligations beyond those set out in the Federal Rules of Civil Procedure, as it would require recovery of data that is inaccessible or would require extraordinary costs and efforts to retrieve.

Hospira objects to Definition 18 ("RELEVANT TIME PERIOD"), which is defined as "January 1, 2006 to the present," as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and rules.

## OBJECTIONS APPLICABLE TO MORE THAN ONE REQUEST

1.     Privilege or Work Product.  Hospira objects to each Interrogatory that seeks, in whole or in part, information protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege, immunity, or protection afforded by applicable law.

2.     No Limitation in Subject-Matter Scope.  Several of the Interrogatories seek information pertaining generally to Taxotere and Hospira's Docetaxel without any limitation to the claims of a risk of alopecia or other hair loss as alleged in these actions.  As set forth in the Preliminary Statement to Hospira's RFP Responses, Hospira will be producing documents and information dealing, irrespective of Plaintiffs' claims of a risk of alopecia, with the development, testing, monitoring, evaluation, and labeling of Hospira's Docetaxel over a period spanning multiple years.  To the extent that any request demands information generally related to Taxotere and Hospira's Docetaxel without any limitation in subject-matter scope and encompassing issues that have no reasonable connection to the claims made in this lawsuit seeks, Hospira objects on

the grounds that the request is overly broad, not proportional to the needs of the case, and unduly burdensome and oppressive.

       3.     <u>No Limitation to Relevant Period</u>.  Several of the Interrogatories seek information without any limitation to the period before or during the alleged use of Taxotere and Hospira's Docetaxel in this action.  Hospira objects to each such request on the grounds that, because it fails to limit the demanded discovery to a relevant period (*e.g.*, Hospira's Docetaxel was not approved for marketing until March 2011), the request is overly broad, seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case and is unduly burdensome and oppressive.

       4.     <u>No Limitation to Relevant Geographic Scope</u>.  Several Interrogatories seek information without any limitation to the geographic location of Plaintiffs and their claims.  Such requests seek information neither relevant to any claim or defense in this action nor proportional to the needs of the case, nor proportional to the needs of the case, and are unduly burdensome and oppressive.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify and describe the circumstances under which YOU became aware of TAXOTERE and its potential as a BLOCKBUSTER TAXANE and the potential financial viability of DOCETAXEL under FDCA Section 505(b)(2).

**ANSWER**

For the reasons specified in Objections 1 (Privilege) and 2 (No Limitation in Subject Matter), Hospira objects on the grounds that this Interrogatory seeks privileged information and information neither relevant to any claim or defense in this action nor proportional to the needs of the case.  Any awareness by Hospira of whether Taxotere was a "blockbuster taxane" or assessment of Docetaxel's financial viability are not relevant to the claims and defenses in this case, which involve Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's FDA-approved Docetaxel.  Plaintiffs have not challenged FDA's approval of the NDA for Hospira's Docetaxel.

Subject to and without waiver of the foregoing objections, to the extent this Interrogatory seeks information regarding Hospira's development of and actions leading to FDA approval of Docetaxel, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621, 5 (Custodial Files) at HOS01400000001–HOS01400265803, and 7 (Records of Contact) at HOS01000000001–HOS01000002354.

**INTERROGATORY NO. 2:**

Describe in detail the circumstances and process by which YOU considered and decided to enter the market for the manufacture or sale of DOCETAXEL, including considerations of whether to market DOCETAXEL as 505(b)(2) or as a generic.

**ANSWER**

For the reasons specified in Objections 1 (Privilege) and 2 (No Limitation in Subject Matter), Hospira objects on the grounds that this Interrogatory seeks privileged information and information neither relevant to any claim or defense in this action nor proportional to the needs of the case, which involves Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's FDA-approved Docetaxel.  Hospira obtained FDA approval for its Docetaxel through the 505(b)(2) process, and Plaintiffs have not challenged the FDA's approval.

Subject to and without waiver of the foregoing objections, to the extent this Interrogatory seeks information regarding Hospira's development of and actions leading to FDA approval of Docetaxel, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621, 5 (Custodial Files) at HOS01400000001–HOS01400265803, and 7 (Records of Contact) at HOS01000000001–HOS01000002354.

**INTERROGATORY NO. 3:**

Identify each product YOU currently have and historically have had approval through the 505(j) process and through the 505(b)(2) process.

**ANSWER**

For the reasons specified in Objections 2 (No Limitation in Subject Matter) and 3 (No Limitation to Relevant Period), Hospira objects on the grounds that this Interrogatory seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case.  Whether Hospira has or has ever had other, unrelated products approved for marketing through the 505(j) or 505(b)(2) process is not relevant to Plaintiffs' claims regarding Hospira's Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira refers Plaintiffs to publicly available information about its approved products, including on the FDA's website.

**INTERROGATORY NO. 4:**

Identify every person, department, unit, affiliated entity, and third party involved with or for YOU or on YOUR behalf in the consideration or decision making to enter the market for the sale of DOCETAXEL.

**ANSWER**

For the reasons specified in Objections 1 (Privilege) and 2 (No Limitation in Subject Matter), Hospira objects on the grounds that this Interrogatory seeks privileged information and information neither relevant to any claim or defense in this action nor proportional to the needs of the case, which involves Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's FDA-approved Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira states that personnel within various departments, including regulatory, commercial, medical, research and development, and legal, were involved in actions leading to Hospira's development of and FDA's approval of its Docetaxel.  Hospira further refers Plaintiffs to the documents identified in and

produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621 and 5 (Custodial Files) at HOS01400000001–HOS01400265803.

**INTERROGATORY NO. 5:**

State YOUR total expense and financial investment (cost to market) from the time YOU considered entry into the DOCETAXEL market to the time YOU entered that market.

**ANSWER**

For the reasons specified in Objection 2 (No Limitation in Subject Matter), Hospira objects on the grounds that this Interrogatory seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case.  The expense of entering the Docetaxel market is not relevant to the claims and defenses in this case, which involves Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's Docetaxel.

**INTERROGATORY NO. 6:**

Itemize and describe in detail the breakdown of each element of YOUR cost to market identified in response to Interrogatory No. 5 above.

**ANSWER**

Hospira refers Plaintiffs to and incorporates by reference its answer to Interrogatory No. 5.

**INTERROGATORY NO. 7:**

Identify all COMMUNICATIONS, agreements, or payments between YOU and SANOFI regarding DOCETAXEL, both before submission of your NDA and thereafter.

**ANSWER**

For the reasons specified in Objections 1 (Privilege), 2 (No Limitation in Subject Matter), and 3 (No Limitation to Relevant Period), Hospira objects on the grounds that this Interrogatory is overly broad and seeks privileged information and information neither relevant to any claim or defense in this action nor proportional to the needs of the case, as this Interrogatory is not limited to communications regarding Hospira's Docetaxel and any connection with hair loss.

Subject to and without waiver of the foregoing objections, Hospira states that it provided regulatory notification to Sanofi pursuant to 21 C.F.R. § 314.52(a)(2) and, other than communications that may have taken place between counsel for Hospira and Sanofi in connection with patent litigation regarding Hospira's Docetaxel that is unrelated to this litigation, Hospira is not aware of communications responsive to this Interrogatory.  Hospira further states that it did not enter into any agreements with or make any payments to Sanofi regarding Docetaxel.

**INTERROGATORY NO. 8:**

Identify all COMMUNICATIONS between YOU and any other party in this litigation regarding DOCETAXEL, both before submission of your NDA and thereafter.

**ANSWER**

Hospira refers Plaintiffs to and incorporates by reference its answer to Interrogatory No. 7. Other than the communications identified therein, Hospira is not aware of communications responsive to this Interrogatory.

**INTERROGATORY NO. 9:**

Describe in detail YOUR knowledge of SANOFI's finances or financial success with respect to TAXOTERE during YOUR decision-making process with regard to entering the DOCETAXEL market.

11

**ANSWER**

For the reasons specified in Objections 1 (Privilege) and 2 (No Limitation in Subject Matter), Hospira objects on the grounds that this Interrogatory seeks privileged information and information neither relevant to any claim or defense in this action nor proportional to the needs of the case.  Sanofi's finances are not relevant to the claims and defenses in this case, which involves Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Category 5 (Custodial Files) at HOS01400000001–HOS01400265803.

**INTERROGATORY NO. 10:**

Identify and describe the circumstances and source under which YOU became aware of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA, including temporary and persistent.

**ANSWER**

Hospira states that it recognizes alopecia as a common potential side effect of Docetaxel and other chemotherapy medications and that it was aware of such information as to Docetaxel based on Sanofi's FDA-approved prescribing information for Taxotere, which reflected Sanofi's NDA submission for Taxotere, including clinical trial and safety information relating to reports of alopecia.  Hospira relied on that information in its 505(b)(2) NDA for Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira further refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to

Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621, 2 (AERs) at HOS00400000001–HOS00400002123, 5 (Custodial Files) at HOS01400000001–HOS01400265803, 6 (Minutes) at HOS01100000001–HOS01100110081, 7 (Records of Contact) at HOS01000000001–HOS01000002354, and 8 (PSURs) at HOS00600000001–HOS00600002176.

## INTERROGATORY NO. 11:

Describe in detail every way YOU COMMUNICATED the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA to YOUR customers, and the users (patients and physicians) of DOCETAXEL.

## ANSWER

Hospira states that it communicated a possible connection between Docetaxel and alopecia to its customers and physicians through the FDA-approved U.S. professional prescribing information and package inserts, commonly referred to as "labeling," for Hospira's Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Category 4 (Labeling) at HOS00100000001–HOS00100000165 and HOS01300000001–HOS01300028807.

## INTERROGATORY NO. 12:

Describe in detail every COMMUNICATION of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA with FDA or a FOREIGN REGULATORY BODY.

13

**ANSWER**

For the reasons specified in Objection 4 (No Limitation to Relevant Geographic Scope), Hospira objects on the grounds that this Interrogatory seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case, as all Plaintiffs allege they received treatment with Docetaxel in the United States.

Subject to and without waiver of the foregoing objections, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621, 2 (AERs) at HOS00400000001–HOS00400002123, and 8 (PSURs) at HOS00600000001–HOS00600002176.

**INTERROGATORY NO. 13:**

Identify the PERSONS involved and describe in detail YOUR compliance with 21 CFR 314.80(b).

**ANSWER**

Hospira interprets this Interrogatory to request the identities of the persons involved and details regarding Hospira's compliance with 21 C.F.R. § 314.80(b) with respect to Hospira's Docetaxel.

Hospira states that employees within Hospira's and Pfizer's safety departments have been involved with compliance with 21 C.F.R. § 314.80(b) for Docetaxel.  Hospira further states that the following individuals have been involved: Monina Llagas Ramos, Nicholas Manuel Gonzales, Claudio Rodrigues, Juergen Schmider, Famina Hamani, Pinal Modi, Robynn Michelson, Tariq Mir, and George Pajovich.

Hospira further states that Hospira and Pfizer promulgated policies and procedures to ensure compliance with 21 C.F.R. § 314.80(b), including the following policies, which have been produced as part of Hospira's production of SOPs at HOS01200000001–HOS01200008934: "Reconciliation of Serious Adverse Events between Global Product Safety and Complaints Safety Database" (HOS01200000433), "Management of Serious Adverse Events in Clinical Trials" (HOS01200000862), "Process for Investigating and Reporting Adverse Events" (HOS01200001978), "Procedure for Investigating and Reporting Serious Adverse Events to IND" (HOS01200002000), "Process for Investigating and Reporting Literature Post Marketing Adverse Events" (HOS01200002009), "Post Market Event Reporting Procedure" (HOS01200002193), "Signal Management" (HOS01200002223), "Process for Submission of Expedited Safety Reports to the FDA" (HOS01200002405), and "Product Complaint and Post Marketing Surveillance Policy" (HOS01200005532).

Hospira further refers Plaintiffs to the Hospira Integration into Pfizer's Pharmacovigilance System and Processes (HOS01200001388; HOS01200007061), a document mapping the Hospira policies and procedures in this area to Pfizer's (HOS01200005744), and Pfizer's policies and procedures in this area, including: "Pfizer Safety Profile Surveillance of Marketed Products" (HOS01200008271), "Pfizer Adverse Event Monitoring System" (HOS01200006898), "Suspected Unexpected Serious Adverse Reaction (SUSAR) Reporting to Investigators and Independent Ethics Committees" (HOS0120000878), and "Special Safety Concerns" (HOS01200008367).

Hospira further refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain additional information responsive to this Interrogatory, including Categories 1 (NDA) at

HOS00200000001–HOS00200031621, 2 (AERs) at HOS00400000001–HOS00400002123, 5 (Custodial Files) at HOS01400000001–HOS01400265803, and 7 (Records of Contact) HOS01000000001–HOS01000002354.

**INTERROGATORY NO. 14:**

Describe in detail and identify all agreements by which responsibility for compliance with a part of the regulation identified in Interrogatory No. 13 is outsourced and delegated.

**ANSWER**

Hospira interprets this Interrogatory to refer to Hospira's compliance with 21 C.F.R. § 314.80(b) with respect to Hospira's Docetaxel.  Hospira states that it may have had contracts for the preparation of certain medical assessments in connection with its safety and pharmacovigilance compliance activities.  Hospira's investigation is ongoing and it will supplement this response to the extent it identifies additional responsive information.

**INTERROGATORY NO. 15:**

Identify the PERSONS involved and describe what YOU did in response to the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA, including contacting SANOFI or other DOCETAXEL manufacturers, initiation of independent studies, literature searches (national or worldwide), adverse events databases, third party data, research, FOIA requests, risk management, notice to customers, notice to the public, and other follow up.

**ANSWER**

Hospira states that it recognizes alopecia as a potential common side effect of Docetaxel and other chemotherapy medications.  Hospira has included appropriate information about this potential risk in its FDA-approved prescribing information and reported adverse events and safety information for Hospira's Docetaxel pursuant to its regulatory obligations.

16

Hospira further states that the following individuals were involved in Hospira's compliance with 21 C.F.R. § 314.80(b) and safety-related activities: Monina Llagas Ramos, Nicholas Manuel Gonzales, Claudio Rodrigues, Juergen Schmider, Famina Hamani, Pinal Modi, Robynn Michelson, Tariq Mir, George Pajovich, Xing Min Qiu, Erin Wierzbicki, and Tricia Racanelli.

Hospira further refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain additional information responsive to this Interrogatory, including Categories 1 (NDA)  at HOS00200000001–HOS00200031621, 2 (AERs) HOS00400000001– – HOS00400002123, 5 (Custodial Files) at HOS01400000001–HOS01400265803, 6 (Minutes) at HOS01100000001–HOS01100110081, 7 (Records of Contact) at HOS01000000001–HOS01000002354, and 8 (PSURs) HOS00600000001–HOS00600002176.

## INTERROGATORY NO. 16:

Identify and describe in detail the factual and medical basis for every alternative cause of HAIR LOSS that YOU may offer at a hearing or trial of this matter.

## ANSWER

Hospira objects for the reasons specified in Objection 1 (Privilege) as this Interrogatory seeks privileged information.  Hospira further objects on the grounds that the information this Interrogatory requests will depend on the facts and circumstances of individual cases and this Interrogatory is premature, as it requests information that falls within the scope of expert discovery that has not yet taken place.

**INTERROGATORY NO. 17:**

Identify and describe in detail the factual and medical basis for every alternative cause of HAIR LOSS suffered by Lisa Sylvest that YOU may offer at a hearing or trial of this matter.

**ANSWER**

Hospira objects on the ground that Plaintiff Lisa Sylvest dismissed her case with prejudice on September 21, 2018.

**INTERROGATORY NO. 18:**

Describe in detail the date, source, and your knowledge, understanding, reliance, tracking, or suspicion of adverse events, studies (including TAX316 and GEICAM 9805), or other pharmacovigilance with respect to TAXOTERE and ALOPECIA after receiving YOUR NDA approval.

**ANSWER**

Hospira states that as set forth in its NDA for Docetaxel, approved by the FDA and produced to Plaintiffs, it relied for approval of its Docetaxel on the nonclinical and clinical studies and other safety and efficacy information submitted in connection with the NDA for Sanofi's Taxotere and on the FDA's findings of safety and efficacy based on Sanofi's Taxotere NDA submissions, including those relating to TAX316 and GEICAM 9805.  Since approval of its NDA for Docetaxel, Hospira has also reported adverse events and safety information for Docetaxel to the FDA, including such reports and information relating to alopecia.

Subject to and without waiver of the foregoing objections, Hospira further refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621, 2 (AERs)

at HOS00400000001–HOS00400002123, 5 (Custodial Files) at HOS01400000001–HOS01400265803, 6 (Minutes) at HOS01100000001–HOS01100110081, 7 (Records of Contact) at HOS01000000001–HOS01000002354, and 8 (PSURs) at HOS00600000001–HOS00600002176.

**INTERROGATORY NO. 19:**

Identify the studies and published scientific and medical literature on which YOU relied in entering the DOCETAXEL market and the due diligence YOU conducted to verify the validity of each such study in placing such reliance.

**ANSWER**

For the reasons specified in Objection 2 (No Limitation in Subject Matter), Hospira objects on the grounds that this Interrogatory is overly broad, vague, and unduly burdensome and oppressive and seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case, which involves Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's FDA-approved Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira states that as set forth in its NDA for Docetaxel, approved by the FDA and produced to Plaintiffs, it relied for approval of its Docetaxel on the nonclinical and clinical studies and other safety and efficacy information submitted in connection with the NDA for Sanofi's Taxotere and on the FDA's findings of safety and efficacy based on Sanofi's Taxotere NDA submissions.

Subject to and without waiver of the foregoing objections, Hospira further refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 1 (NDA) at HOS00200000001–HOS00200031621, 5

(Custodial Files) at HOS01400000001–HOS01400265803, 6 (Minutes) at HOS01100000001–HOS01100110081, and 7 (Records of Contact) at HOS01000000001–HOS01000002354.

**INTERROGATORY NO. 20:**

In addition to the above, identify every STUDY that YOU commissioned, participated in, or are aware of with respect to the efficacy, safety, or side effects of DOCETAXEL, or the comparison between DOCETAXEL and paclitaxel, during the time that YOU were considering entering the market and thereafter.

**ANSWER**

Hospira refers Plaintiffs to safety and efficacy information, including nonclinical studies, submitted to the FDA as part of its NDA for Docetaxel, which has been produced to Plaintiffs, and further states that based on the reasonably diligent inquiry conducted thus far, it is not aware of clinical studies for Hospira's Docetaxel conducted by Hospira.  Hospira further refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 5 (Custodial Files) at HOS01400000001–HOS01400265803 and 7 (Records of Contact) at HOS01000000001–HOS01000002354.

**INTERROGATORY NO. 21:**

Describe in detail YOUR knowledge, understanding, or awareness of foreign labeling with respect to DOCETAXEL, including label changes, and the reasons behind such labeling or change in labeling.

**ANSWER**

For the reasons specified in Objections 2 (No Limitation in Subject Matter), 3 (No Limitation to Relevant Period), and 4 (No Limitation to Relevant Geographic Scope), Hospira

objects on the grounds that this Interrogatory seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case, as all Plaintiffs allege they received treatment with Docetaxel in the United States and allege the injury of permanent or persistent hair loss due to the use of Hospira's FDA-approved Docetaxel.

Subject to and without waiver of the foregoing objections, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including Categories 4 (Labeling) at HOS00100000001–HOS00100000165 and HOS01300000001–HOS01300028807, 5 (Custodial Files) at HOS01400000001–HOS01400265803, and 8 (PSURs) at HOS00600000001–HOS00600002176.

**INTERROGATORY NO. 22:**

At the time YOU decided to and then actually entered the market for the sale of DOCETAXEL, describe in detail YOUR knowledge of any suspected connection, relationship, or link between permanent or persistent ALOPECIA and the use of TAXOTERE.

**ANSWER**

Hospira refers Plaintiffs to and incorporates by reference its answer to Interrogatory No. 10.

**INTERROGATORY NO. 23:**

At the time YOU decided to and then actually entered the market for the sale of DOCETAXEL, describe in detail YOUR knowledge of a suspected connection, relationship, or link between any form of ALOPECIA and the use of TAXOTERE.

21

**ANSWER**

Hospira refers Plaintiffs to and incorporates by reference its answer to Interrogatory No. 10.

**INTERROGATORY NO. 24:**

Describe how YOU define or have defined ALOPECIA during the Relevant Time Period, stating the location and use of each such definition.

**ANSWER**

Hospira states that it interprets reports of hair loss or alopecia consistently with the Medical Dictionary for Regulatory Activities ("MedDRA").

**INTERROGATORY NO. 25:**

Describe in detail your awareness of marketing, sales, physician, patient or nurse brochures or other information regarding TAXOTERE at the time that YOU entered the DOCETAXEL market and the use YOU made of such material.

**ANSWER**

For the reasons specified in Objections 2 (No Limitation in Subject Matter), 3 (No Limitation to Relevant Period), and 4 (No Limitation to Relevant Geographic Scope), Hospira objects on the grounds that this Interrogatory seeks information neither relevant to any claim or defense in this action nor proportional to the needs of the case, which involves Plaintiffs' alleged injury of permanent or persistent hair loss due to the use of Hospira's FDA-approved Docetaxel. Further, Hospira has not marketed its Docetaxel to prescribing healthcare providers or to patients.

Subject to and without waiver of the foregoing objections, Hospira refers Plaintiffs to the documents identified in and produced consistent with the Preliminary Statement to Hospira's RFP Responses, which Hospira believes contain information responsive to this Interrogatory, including

22

Categories 5 (Custodial Files) at HOS01400000001–HOS01400265803 and 9 (Marketing Materials) at HOS00700000001–HOS00700000102.

**INTERROGATORY NO. 26:**

Describe in detail how YOU offered or marketed DOCETAXEL for sale to YOUR customers or potential customers during the Relevant Time Period.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories. Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 27:**

Identify YOUR customers for DOCETAXEL.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories. Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 28:**

Identify and describe YOUR contracts with each customer for DOCETAXEL.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories. Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 29:**

Identify whether and describe how YOU represented YOUR DOCETAXEL as beneficial over TAXOTERE.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories.  Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 30:**

Identify YOUR employees or representatives who attended a San Antonio Breast Cancer Symposium or ASCO symposium or conference between 2006 and 2017.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories.  Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 31:**

Identify every PERSON involved in the initial labeling decision and those involved in decisions to request or change YOUR label for DOCETAXEL from its initial release to the present.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories.  Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

24

**INTERROGATORY NO. 32:**

Identify and describe all co-promotions in which YOU have participated regarding DOCETAXEL.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories. Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 33:**

Identify and describe in detail the process by which YOU are notified or become aware of adverse events or reports for DOCETAXEL manufactured by YOU, the process by which YOU are notified or become aware of adverse events or reports for DOCETAXEL manufactured by others.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories. Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 34:**

Describe in detail YOUR pharmacovigilance for DOCETAXEL and for TAXOTERE, whether manufactured by YOU or by others.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories. Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

25

**INTERROGATORY NO. 35:**

Explain all actions taken by YOU to investigate the connection, relationship, or link between DOCETAXEL and ALOPECIA.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories.  Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

**INTERROGATORY NO. 36:**

Identify and describe the factors and process that led to YOUR label change or proposed label change of YOUR DOCETAXEL product.

**ANSWER**

Hospira objects on the grounds that the Federal Rules of Civil Procedure and CMO 7 authorize Plaintiffs to serve on Hospira no more than 25 interrogatories.  Accordingly, Hospira is not required to respond to Interrogatories 26 through 36.

26

Dated: October 1, 2018

*/s/ John F. Olinde*
John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com
rotolo@chaffe.com

*/s/ Mara Cusker Gonzalez*
Mark S. Cheffo
Mara Cusker Gonzalez
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
mark.cheffo@dechert.com
maracusker.gonzalez@dechert.com

*Counsel for Defendant Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc.*

*Counsel for Defendant Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, this 1st day of October, 2018, I served a true and correct copy of the foregoing Hospira Worldwide, LLC's Response and Objections to Plaintiffs' First Set of Interrogatories on the following via electronic mail:

**Dawn Barrios**
Email: barrios@bkc-law.com

**M. Palmer Lambert**
Email: plambert@gainsben.com

**Karen Barth Menzies**
Email: kbm@classlawgroup.com

**Christopher L. Coffin**
Email: ccoffin@pbclawfirm.com

**David F. Miceli**
Email: dmiceli@miceli-law.com

**J. Kyle Bachus**
Email: kyle.bachus@coloradolaw.net

**Andrew Lemmon**
Email: andrew@lemmonlawfirm.com

_/s/_ Mara Cusker Gonzalez

28

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: TAXOTERE (DOCETAXEL) | : | MDL NO. 2740 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION "N" (5) |
| _____ | : | |
| | : | HON. JANE T. MILAZZO |
| THIS DOCUMENT RELATES TO ALL | : | |
| CASES | : | |

## DEFENDANT SANDOZ INC.'S ANSWERS AND OBJECTIONS
## TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 for the Federal Rules of Civil Procedure, Defendant Sandoz Inc. ("Sandoz") provides the following Answers and Objections to Plaintiffs' First Set of Interrogatories. As discovery in this matter is ongoing, Sandoz reserves the right to amend, supplement, modify or change its Answers.

## PRELIMINARY STATEMENT

Plaintiffs' Interrogatories arise from product liability cases consolidated in MDL 2740 for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407, before the Honorable Jane T. Milazzo in the United States District Court for the Eastern District of Louisiana. The action involves FDA-approved prescription chemotherapy medications known by the brand name, Taxotere®, or the generic name docetaxel - the active ingredient in Taxotere. The entity that holds the original New Drug Application (NDA) for Taxotere is Sanofi-Aventis U.S. LLC ("Sanofi"). Sanofi's NDA for Taxotere, NDA No. 020449 was approved by the FDA on May 14, 1996.

Plaintiffs allege that they were prescribed docetaxel by their physicians to treat breast cancer, and that they subsequently sustained "persistent," "irreversible" and/or "permanent" hair loss. (S*ee generally* Master Long Form Compl.) Plaintiffs do not allege that docetaxel was

ineffective in their treatment of breast cancer. Nor do they claim that Defendants, including Sandoz, failed to disclose the risk of hair loss, which is a well-known and common side effect of docetaxel. Plaintiffs allege only that they were not told that hair loss might persist, be irreversible and/or be permanent.

Sandoz is a licensed pharmaceutical company that specializes in generic and biosimilar medicines. Pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (the "Act"), Sandoz submitted NDA No. 201525 for Docetaxel Injection. Section 505(b)(2), which was added to the Act through the Drug Price Competition and Patent Term Restoration Act of 1984 (commonly known as the Hatch-Waxman Amendments), provides a unique pathway for FDA approval of a new drug. Section 505(b)(2) expressly permits an applicant to submit an NDA that relies, in part, on information or data that was not developed by or for the applicant. Thus, pursuant to section 505(b)(2), in approving an NDA, the FDA is permitted to rely on literature or studies submitted in an application for another drug and on the FDA's own findings of safety and efficacy for a previously approved drug product.

In seeking FDA approval of docetaxel through this abbreviated pathway, Sandoz indicated to the FDA in its NDA No. 201525 for Docetaxel Injection that it intended to rely on nonclinical and clinical studies conducted for and submitted with the NDA for Sanofi's Reference Listed Drug ("RLD"), Taxotere, and to rely on the FDA's findings of safety and effectiveness for that drug. As described in its NDA, Sandoz did not perform any nonclinical or clinical studies for Docetaxel Injection, as Sandoz was expressly permitted to rely on the information collected for the RLD in obtaining section 505(b)(2) approval. Sandoz further advised the FDA that the RLD used for the basis of its 505(b)(2) NDA submission was "Taxotere® (docetaxel) Injection Concentrate, NDA No. 020449, marketed by Sanofi-Aventis" and that the "active ingredient, route of administration,

and indications for Sandoz' Docetaxel Injection, are the same" as the RLD. Sandoz' NDA for Docetaxel Injection was approved by the FDA on June 29, 2011, for use as recommended in the agreed-upon product labeling. As a section 505(b)(2) NDA holder, and in contrast to an RLD holder, Sandoz does not employ sales representatives to market or promote Docetaxel Injection based on its features or therapeutic benefits. Rather, Sandoz offers contracts, based purely on pricing, for a portfolio of products, one of which is Docetaxel Injection, to the procurement offices of hospital pharmacies or the corporate offices of pharmacies and has utilized its Institutional Generic Sales Force for this purpose since late 2015. Sandoz does not advertise, promote or share promotional materials for its Docetaxel Injection and does not sell directly to health care providers or oncology clinics.

## **RESERVATION OF RIGHTS**

In responding to these Interrogatories, Sandoz does not waive the right to challenge the relevancy, materiality, and admissibility of the information or materials provided, or to object to the use of the information or materials in any subsequent proceeding or trial in this action. Sandoz is engaged in the continuing investigation of the matters inquired about in the Interrogatories. The Answers herein are believed to be accurate as of the date made and are based upon information and materials presently available. Accordingly, Sandoz reserves the right to amend, supplement, modify, or change its Answers as investigation and discovery continue, should additional responsive information or materials be discovered during its investigation. Further, any Answers Sandoz provides to these Interrogatories does not waive Sandoz' rights to assert additional objections as necessary

## SPECIFIC OBJECTIONS ON SCOPE OR FORM

Sandoz hereby asserts the following Specific Objections on Scope or Form which are incorporated in and made a part of each Answer as set forth below.  The assertion of the same, similar or additional objections in the specific Answers to these Interrogatories does not waive any of Sandoz' objections as set forth below.

1. Sandoz objects to Plaintiffs' Interrogatories (including subparts) to the extent they exceed the numerical limitations set forth in Rule 33 of the Federal Rules of Civil Procedure.

2. Sandoz objects to each Interrogatory as overly broad, unduly burdensome, and in violation of Rule 26(g)(1)(B), including but not limited to Interrogatories that seek "any", "every" and "all" information that refers, relates to, or concerns a particular Interrogatory. Plaintiffs' request for "any", every" and "all" information on an issue is unduly burdensome, and Sandoz' discovery obligations are limited by principles of reasonableness and proportionality. *See, e.g.*, *Braun v. Medtronic Sofamor Danek, Inc.,* 2013 WL 30155, at * 13 (D. Utah Jan. 2, 2013) (court deemed Plaintiff's interrogatory requesting "any and all" agreements with physicians regardless of the medical device at issue as overbroad).

3. Sandoz objects to these Interrogatories to the extent they seek information or materials prepared in anticipation of litigation or protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities. Inadvertent production or revelation of any protected information or documents will not constitute a waiver of any privilege or any other ground for objection to discovery of the protected information contained therein and will not waive the right of Sandoz to object to the use of the information or documents during any proceeding in this action.

4.   Sandoz objects to these Interrogatories to the extent they are more appropriately addressed by way of deposition testimony. *See Natural Resource Defense Council, et al. v. Zinke, et al.*, 2018 WL 1899609, at *16 (E.D. Cal. Apr. 20, 2018) (deposition testimony is superior to interrogatories and is a more appropriate way to understand the opinions and factual analysis relevant to the issues in the case); *Dibb v. AllianceOne Receivables Mgmt.*, 2015 U.S. Dist. LEXIS 129046, at *12 (W. D. Wash. Sept. 21, 2015) (interrogatories that require research and compilation of data and information not readily known are improper).

## OBJECTIONS TO DEFINITIONS

1.   Sandoz objects to any "definition" that attempts to expand or alter its obligations in responding to discovery.

2.   Sandoz objects to the term "Blockbuster Taxane" to be defined as "a taxane that might become a highly-prescribed chemotherapy drug in the taxane family whose annual sales exceed a billion dollars" as being vague, ambiguous and overly broad to the extent it leaves Sandoz to guess what taxanes Plaintiffs intend to include in their Interrogatories. Sandoz further objects that products other than generic Taxotere® are (1) not relevant to the claims and defense of a party and/or (2) not proportional to the needs of the case. Moreover, Sandoz objects to this Interrogatory to the extent it seeks information regarding products Sandoz did not manufacture.

3.   Sandoz objects to the definition of the terms "Alopecia" and "Hair Loss" to be defined as "the loss of human hair, whether temporary, permanent or unknown (unless a difference in apparent in context of a particular interrogatory), on a part of the body and includes terms used to identify, describe, or quantify the diminution, impairment, or loss of hair." This definition is vague and ambiguous, and seemingly involves alopecia and/or hair loss attributable to other causes besides chemotherapy. It also explicitly includes temporary hair loss (hair loss

5

is a common, well-known side effect of chemotherapy treatment) and labeled terms not cognizable as a legal injury. It is also far from clear what other "terms used to identify, describe or quantify the diminution, impairment or loss of hair" Plaintiffs intend to include in their Interrogatories. Finally, Plaintiffs here also do not define the term "permanent" In this context leaving Sandoz to guess at their meaning.

4.      Sandoz objects to the definitions of the terms "You," "Your," and "Defendant" to be defined as "Sandoz Inc. as well as all parents, subsidiaries, affiliates, partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors, or other representatives, including all corporations and affiliated entities." Where the terms, "You," "Your," or "Defendant" are used in these Interrogatories, Sandoz will limit its Answers to the party-Defendant, Sandoz Inc. consistent with the applicable law.  In addition, Sandoz objects to these definitions to the extent that it would call for Sandoz to provide information not within its knowledge. Sandoz objects that the definition is unduly burdensome in purporting to require it to inquire of all the individuals encompassed in the definitions in answering these Interrogatories. In addition, Sandoz objects to these definitions to the extent they seek information or material protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

5.      Sandoz objects to the definition of the term "Communication" to be defined as "any oral, written, spoken, or electronic transmission of information including meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences or seminars or any other exchange of information between YOU and any other person or entity" to the extent it seeks discovery that is inconsistent with or enlarges

the scope of permissible discovery authorized by applicable law. Sandoz also objects to the definition to the extent it would require Sandoz to extract or recover electronic or magnetic data that is inaccessible or would require extraordinary costs and efforts to retrieve. Sandoz further objects that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection. Moreover, any documents identified in Sandoz' Answers have been or will be produced according to the ESI Protocol, which dictates various aspects of the scope, format, and manner of production.

6. Sandoz objects to the definitions of the terms "Relating to," "relate to," "relating, "referring to," "refer to," "regarding," "concerning," or "concern" to be defined as "evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, RELATING TO, referring in any way or manner, or in any way logically or factually connecting with the matter described in the interrogatory or paragraph of these interrogatories, including documents attached to or used in the preparation of or concerning the preparation of the documents" to the extent they seek discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law, fail to reasonably identify the information or material sought by type and category, and seek information tangentially implicating subjects without regard to relevance and proportionality.

7. Sandoz objects to the definition of the term "Study" to be defined as "research, analysis or examination, inspection or investigation (including clinical investigations), or other activity by which data or information is acquired for the purpose of analysis or understanding,"

and " is intended to include studies that have been completed and studies still in progress regardless of whether such activity took place within or outside the United States," which "should include information and data acquired from such STUDY regardless of the stated or original purpose of the STUDY" as unduly burdensome and overbroad. This definition fails to reasonably identify the information or material sought by type or category, lacks relevant geographic or temporal limitation, and explicitly includes studies (or "examinations" or "inspections") never actually completed. Sandoz further objects that the definition is overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

8.      Sandoz objects to the definition of the term "TEST" to be defined as "every kind of examination, experiment, scientific analysis, or other inquiry or undertaking seeking to develop or acquire information or data" including "information and data acquired from such TESTS regardless of the stated or original purpose of the TEST." Sandoz further objects that the term "is intended to include TESTS that have been completed and TESTS still in progress regardless of whether such activity took place within or outside the United States." In addition, Sandoz objects that "a request for information concerning a TEST or STUDY should be construed as including information from the following documents: the protocol for the conduct of the TEST or STUDY;  a statement of the condition under which the TEST or STUDY was intended to be conducted; a statement of the conditions under which the TEST or STUDY was actually conducted; documents requesting that the TEST or STUDY be performed; documents ordering that the TEST or STUDY be performed; documents containing the original raw TEST or STUDY data; documents containing the written TEST or STUDY report and all attachments

thereto; documents containing the TEST or STUDY specifications, including the pass-fail criteria; every summary, abstract, analysis, compilation, including evaluation or interpretation of the TEST or STUDY; and all investigators or entities, universities, and laboratories involved in the testing." These definitions seek discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law, fail to reasonably identify the information or materials sought by type and category, lack relevant geographic or temporal limitations, and seek information tangentially implicating subjects without regard to relevance and proportionality. Sandoz objects to the definition of the term "FDA" to be defined as "the United States Department of Health & Human Services, United States Food & Drug Administration, any Committee, subcommittee, or advisory committee thereto, and any person, employee, or agent acting as a representative thereof," to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law. The term "FDA," for example, would never reasonably implicate a purported "agent" of a subcommittee or any member of FDA's outside advisory committees, nor does such definition allow Sandoz to identify responsive information or materials.

9.      Sandoz objects to the definition of the term "Foreign Regulatory Agency" to be defined as "any organization, including regulatory bodies or authorities, in any country (or other jurisdictional entity such as the European Union) other than the United States that regulates prescription drugs such as TAXOTERE" to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery authorized by applicable law and is not proportional to the needs of the case. Sandoz further objects that conduct occurring outside the United States, which is not where Plaintiffs' alleged they were diagnosed, treated, and allegedly injured with docetaxel, is not relevant to this litigation.

10.     Sandoz objects to the definitions of the terms "Identify" or "Identity" which when referring to natural persons or entities is to be defined as "the person's or entity's full name, present or last known address, telephone numbers, and email addresses. When referring to a natural person, the present or last known place of employment should also be provided. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person" and when referring to STUDIES is to be defined as "the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s); (v) its present location; (vi) the name and address of its custodian; (vii) for documents stored electronically, such as in a computer, PDA, or other type of portable electronic device, provide the location of the electronic device on which the document is located, the computer program by which the document was created, and the computer program on which the document currently exists; and (viii) the Bates stamp number assigned to such document" as being overly broad to the extent these definitions are inconsistent with or enlarge the scope of permissible discovery under the applicable law and/or applicable local rules, and to the extent the definitions would require Sandoz to extract or recover data that is inaccessible or would require extraordinary costs and efforts to retrieve. Sandoz further objects that the definitions are overly broad to the extent it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

11.     Sandoz objects to the definition of the term "Person" to be defined as "a natural person, as well as any business, corporate, legal, or governmental entity or association," to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible

10

discovery authorized by applicable law. In addition, Sandoz objects to this definition to the extent that it would call for the Sandoz to provide information not within its knowledge. Sandoz objects that the definition is unduly burdensome in purporting to require it to inquire of all encompassed in the definitions in answering these Interrogatories. In addition, Sandoz objects to this definition to the extent that it seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection.

12.     Sandoz objects to the definition of the terms "and" and "or" as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

13.     Sandoz objects to the use of the singular including the plural and vice versa as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

14.     Sandoz objects to the "Relevant Time" being defined as "January 1, 2006 to the present," as unduly burdensome and overbroad to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules. Moreover, discovery from 2006 is unreasonable and not consistent with Plaintiffs claims with respect to Sandoz as Sandoz did not submit its NDA #201-525 for Docetaxel Injection for its generic Taxotere® until September 2010.

## OBJECTIONS TO INSTRUCTIONS

1.     Sandoz objects to Instruction No. 1 to the extent that it purports to require it to inquire of its "employees, representatives, agents, and attorneys." The instruction renders

these Interrogatories overly broad and unduly burdensome.  Sandoz also objects to the extent that this instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any other applicable privilege or protection. As indicated above, where the terms, "You" and "Defendant," are used in these Interrogatories, Sandoz will limit its Answers to the party-Defendant consistent with the applicable law.

2.      Sandoz objects to Instruction No. 2, which purports to require explanation of any inabilities to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

3.      Sandoz objects to Instruction No. 3, which purports to require a continuing obligation to respond, to the extent that it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the applicable law and/or applicable local rules.

4.      Sandoz objects to Instruction No. 4, which purports to require information or materials outside the so-called "Relevant Time Period," as set forth in Sandoz' objection to the definition of the same term.

5.      Sandoz objects to Instruction No. 5 to the extent that it purports to require it to identify information withheld on the grounds of privilege.  The instruction renders these Interrogatories overly broad and unduly burdensome.  Sandoz also objects to the extent that this instruction seeks information or material that is protected from disclosure by the attorney-client privilege, work-product doctrine, consulting expert privilege or protection, or any   other applicable privilege or protection. To the extent that Plaintiffs' Instruction is inconsistent  with or beyond the scope of the ESI Protocol, Sandoz objects and defers to the ESI Protocol.

## SPECIFIC ANSWERS AND OBJECTIONS

**Interrogatory No. 1:**

Identify and describe the circumstances under which YOU became aware of TAXOTERE and its potential as a BLOCKBUSTER TAXANE and the potential financial viability of DOCETAXEL under FDCA Section 505(b)(2).

> **ANSWER:**

> **Sandoz objects to this Interrogatory because the term "BLOCKBUSTER TAXANE" is not a term used in Sandoz' regular course of business and is therefore ambiguous in the context of this Interrogatory. Sandoz further objects to this Interrogatory because the information sought is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs have not challenged the means by which Sandoz sought FDA approval for it Docetaxel Injection and Plaintiffs' claims, relating to alleged injury of permanent or persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to the information and circumstances Sandoz may have considered to enter the market. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities. Finally, Sandoz objects to this Interrogatory to the extent it is more appropriately addressed by way of deposition testimony.**

> **Subject to and without waiver of its objections, Sandoz refers Plaintiffs to previously produced custodial files at SANDOZ-TAXO-00000001 — SANDOZ-TAXO-00090091, which may contain information responsive to this Interrogatory.**

**Interrogatory No. 2:**

Describe in detail the circumstances and process by which YOU considered and decided to enter the market for the manufacture or sale of DOCETAXEL, including considerations of whether to market DOCETAXEL as 505(b)(2) or as a generic.

**ANSWER:**

Sandoz objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope because the information sought is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs have not challenged the means by which Sandoz sought FDA approval for it Docetaxel Injection and Plaintiffs' claims relating to alleged injury of permanent or persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to the information and circumstances Sandoz considered in its decision to enter the market for the manufacture and sale of its Docetaxel Injection. Sandoz also objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities.

Subject to and without waiver of its objections, Sandoz refers Plaintiffs to previously produced custodial files at SANDOZ-TAXO-00000001 — SANDOZ-TAXO-00090091, which may contain information responsive to this Interrogatory.

**Interrogatory No. 3:**

Identify each product YOU currently have and historically have had approval through the 505(j) process and through the 505(b)(2) process.

**ANSWER:**

Sandoz objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs have not challenged the means by which Sandoz sought FDA approval for it Docetaxel Injection. Further Plaintiffs' claims, relating to alleged injury of permanent or

14

persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to other Sandoz products that have been approved by the FDA either through the 505(j) or 505(b)(2) processes.

Subject to and without waiver of its objections, Sandoz refers Plaintiffs to its publicly available website as well as the FDA's website which are equally available to Plaintiffs, for a list of its pharmaceutical products and the statutory basis for each.

**Interrogatory No. 4:**

Identify every person, department, unit, affiliated entity, and third party involved with or for YOU or on YOUR behalf in the consideration or decision making to enter the market for the sale of DOCETAXEL.

**ANSWER:**

In general, personnel within various groups at Sandoz, including regulatory, development, portfolio, commercial sales and marketing, manufacturing, and legal, are involved in the decision to enter the market for the sale of a new drug. Sandoz refers Plaintiffs to previously produced custodial files at SANDOZ-TAXO-00000001 — SANDOZ-TAXO-00090091, which may also contain information responsive to this Interrogatory.

Beyond this, Sandoz objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs' claims relating to alleged injury of permanent or persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to the information and circumstances Sandoz considered in its decision to enter the market for the manufacture and sale of its Docetaxel Injection. Sandoz further objects to this Interrogatory to the extent it seeks information or materials protected by the

attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities. Finally, Sandoz objects to this Interrogatory to the extent it is more appropriately addressed by way of deposition testimony.

**Interrogatory No. 5:**

State YOUR total expense and financial investment (cost to market) from the time YOU considered entry into the DOCETAXEL market to the time YOU entered that market.

   **ANSWER:**

   Sandoz does not maintain the information sought by this Interrogatory in the regular course of business as to any one product but instead, to the extent such information is maintained, it is on an aggregate basis.

   Beyond this, Sandoz objects to the Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs' claims relating to alleged injury of permanent or persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to its financial investment made by Sandoz in bringing its Docetaxel Injection to market. Sandoz further objects to this Interrogatory because the information sought is only relevant, if at all, after a prima facie case for punitive damages has been made and there has been no showing that this information should be made available at this stage of the litigation. Further, Plaintiffs may not recover punitive or exemplary damages in products liability lawsuits in Louisiana, among others. Finally, Sandoz objects to this Interrogatory to the extent it is more appropriately addressed by way of deposition testimony.

**Interrogatory No. 6:**

Itemize and describe in detail the breakdown of each element of YOUR cost to market identified in Answer to Interrogatory No. 5 above.

    **ANSWER:**

    **Sandoz incorporates by reference its Answer to Interrogatory No. 5.**

**Interrogatory No. 7:**

Identify all COMMUNICATIONS, agreements, or payments between YOU and SANOFI regarding DOCETAXEL, both before submission of your NDA and thereafter.

    **ANSWER:**

    **Sandoz provided the required regulatory notification to Sanofi as the RLD holder pursuant to 21 C.F.R. 314.52(a)(2). *See e.g.,* SANDOZ-TAXO-NDA-00000387 — SANDOZ-TAXO-NDA-00000388, SANDOZ-TAXO-NDA-00003788 — SANDOZ-TAXO-NDA-00003792; SANDOZ-TAXO-NDA-00003808 — SANDOZ-TAXO-NDA-00003818, and SANDOZ-TAXO-NDA-00003834 — SANDOZ-TAXO-NDA-00003838. Beyond communications relating to this 21 C.F.R. 314.52(a) certification, and the related patent litigation referenced in these documents, Sandoz is not aware of additional communications, agreements or payments between Sandoz and Sanofi regarding docetaxel.**

    **Beyond this, Sandoz objects to the Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs' claims relating to alleged injury of permanent or persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to any communications, agreements or payments between Sandoz and Sanofi regarding docetaxel. Sandoz further objects to this Interrogatory to the extent it seeks**

information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities.

**Interrogatory No. 8:**

Identify all COMMUNICATIONS between YOU and any other party in this litigation regarding DOCETAXEL, both before submission of your NDA and thereafter.

 **ANSWER:**

 Beyond communications relating to this litigation, Sandoz is not aware of additional communications between Sandoz and any other 505(b)(2) defendant in this litigation regarding docetaxel. Sandoz directs Plaintiffs to its Answer to Interrogatory No. 7 relating to communications with Sanofi.

 Beyond this, Sandoz objects to the Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs' claims relating to alleged injury of permanent or persistent hair loss due to the use of Sandoz' Docetaxel Injection and the warnings concerning that risk, are wholly unrelated to any communications regarding docetaxel with any other party to this litigation. Sandoz further objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities.

**Interrogatory No. 9:**

Describe in detail YOUR knowledge of SANOFI's finances or financial success with respect to TAXOTERE during YOUR decision-making process with regard to entering the DOCETAXEL market.

 **ANSWER:**

 Sandoz incorporates by reference its Answer to Interrogatory No. 2.

**Interrogatory No. 10:**

Identify and describe the circumstances and source under which YOU became aware of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA, including temporary and persistent.

**ANSWER:**

**Hair loss, or alopecia, is a well-known and common side effect of chemotherapeutic medications generally, including docetaxel. Instances of alopecia relating to docetaxel are well documented in clinical trials conducted for and submitted with Sanofi's NDA No. 020449 for Taxotere® as well as the product labeling for Taxotere® since its approval by FDA in 1996. In seeking FDA approval of its Docetaxel Injection, Sandoz relied on these clinical studies and labeling for Taxotere® (which Sandoz was expressly permitted to do pursuant to 505(b)(2)) and these sources form the basis for Sandoz' awareness of the link between alopecia and the use of Taxotere® and docetaxel, either alone or in combination with other drugs. Sandoz refers Plaintiffs to the previously produced NDA No. 201525 at SANDOZ-TAXO-NDA-00000001 — SANDOZ-TAXO-NDA-00016805. Sandoz subsequently became aware of reports of "persisting" alopecia as reflected in its Periodic Adverse Drug Experience Reports (at SANDOZ-TAXO-NDA- 00000001 – SANDOZ-TAXO-NDA-00016805), Periodic Safety Update Reports (at SANDOZ-TAXO-PSUR-00000001 — SANDOZ-TAXO-PSUR-00002436), labeling (at SANDOZ-TAXO-LABELING -000001 — SANDOZ-TAXO-LABELING-000373), and other adverse event reporting data that has been or will produced to Plaintiffs.**

**Beyond this, Sandoz objects to this Interrogatory as vague and ambiguous as references to the "source under which YOU became aware of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA" and to 'persistent" are unclear.**

**Interrogatory No. 11:**

Describe in detail every way YOU COMMUNICATED the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA to YOUR customers, and the users (patients and physicians) of DOCETAXEL.

**ANSWER:**

Sandoz communicated the possible or suspected connection between docetaxel and alopecia to physicians through its FDA-approved labeling, including the full Prescribing Information, for Sandoz' Docetaxel Injection. Sandoz does not provide warnings to patients directly nor it is required to do so. Sandoz further refers Plaintiffs to the previously produced NDA No. 201525 at SANDOZ-TAXO-NDA-00000001 — SANDOZ-TAXO-NDA-00016805 which include the labeling approved by the FDA as well as labeling found at SANDOZ-TAXO-LABELING -000001 — SANDOZ-TAXO-LABELING-000373.

**Interrogatory No. 12:**

Describe in detail every COMMUNICATION of the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA with FDA or a FOREIGN REGULATORY BODY.

**ANSWER:**

Sandoz refers Plaintiffs to the previously produced NDA No. 201525 for Docetaxel Injection and related Periodic Adverse Drug Experience Reports (at SANDOZ-TAXO-NDA-00000001 – SANDOZ-TAXO-NDA-00016805) and Periodic Safety Update Reports (at SANDOZ-TAXO-PSUR-00000001 — SANDOZ-TAXO-PSUR-00002436), and other adverse event reporting data that has been or will produced to Plaintiffs which contain communications with FDA regarding any link between docetaxel and alopecia and information regarding adverse events relating to Sandoz' Docetaxel Injection.

Beyond this, Sandoz objects to the Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that

20

is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. All the Plaintiffs in this litigation allegedly were treated in the United states with Taxotere or docetaxel subject to FDA approved labeling.

**Interrogatory No. 13:**

Identify the PERSONS involved and describe in detail YOUR compliance with 21 CFR 314.80(b).

**ANSWER:**

Employees within the Novartis Patient Safety function perform aspects of Sandoz' pharmacovigilance compliance program.  Certain related processes may be performed by outsourced vendors at various points in time. Previously, personnel within Sandoz's Pharmacovigilance and Risk Management group were charged with ensuring compliance with Sandoz' pharmacovigilance obligations pursuant to 21 C.F.R. 314.80(b). Sandoz has previously identified Laura Pethick and Tony De Sousa as persons involved with Sandoz' pharmacovigilance compliance. Representative standard operating procedures and policies promulgated by Sandoz to ensure Sandoz' pharmacovigilance compliance have been or will be produced to Plaintiffs.

Beyond this, Sandoz objects to the Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case insofar as it seeks information relating to Sandoz' pharmacovigilance compliance either for docetaxel or other drugs marketed Sandoz products. Finally, Sandoz objects to this Interrogatory to the extent it is more appropriately addressed by way of deposition testimony.

**Interrogatory No. 14:**

Describe in detail and identify all agreements by which responsibility for compliance with  a part of the regulation identified in Interrogatory No. 13 is outsourced and delegated.

> **ANSWER:**

> **Sandoz incorporates by reference its Answer to Interrogatory No. 13.**

**Interrogatory No. 15:**

Identify the PERSONS involved and describe what YOU did in response to the possible or suspected connection, relationship, or link between DOCETAXEL and ALOPECIA, including contacting SANOFI or other DOCETAXEL manufacturers, initiation of independent studies, literature searches (national or worldwide), adverse events databases, third party data, research, FOIA requests, risk management, notice to customers, notice to  the public, and other follow up.

**ANSWER:**

> **Hair loss, or alopecia, is a well-known and common side effect of chemotherapeutic medications generally including docetaxel. Instances of alopecia relating to docetaxel are well documented in the medical literature.  Consistent with its obligations as a 505(b)(2) NDA holder, Sandoz, through the personnel described in its Answer to Interrogatory No. 13, reports adverse events, including those relating to alopecia and its Docetaxel Injection, to the FDA.  Sandoz refers Plaintiffs to its previously produced NDA No. 201525 and related Periodic Adverse Drug Experience Reports (at SANDOZ-TAXO-NDA- 00000001 — SANDOZ-TAXO-NDA-00016805), as well as Periodic Safety Update Reports (at SANDOZ-TAXO-PSUR-00000001 — SANDOZ-TAXO-PSUR- 00002436), and other adverse event reporting data that has been or will produced to Plaintiffs,  which contain communications with FDA regarding any link between docetaxel and alopecia and information regarding adverse events relating to Sandoz' Docetaxel Injection. Further, Sandoz periodically updated its labeling to reflect additional information relating to the "possible or suspected connection,**

relationship, or link between DOCETAXEL and ALOPECIA." *See e.g.,* SANDOZ-TAXO-LABELING -000001 — SANDOZ-TAXO-LABELING-000373.

Beyond this, Sandoz objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities. Finally, Sandoz objects to this Interrogatory to the extent it is more appropriately addressed by way of deposition testimony.

**Interrogatory No. 16:**

Identify and describe in detail the factual and medical basis for every alternative cause of HAIR LOSS that YOU may offer at a hearing or trial of this matter.

**ANSWER:**

Sandoz refers Plaintiffs to the broad body of publicly available scientific and medical literature which contains information regarding alternative causes of hair loss. It is commonly known, based on such widely available literature, that hair loss may be caused by several factors or conditions, including, but not limited to, age, genetics, hormones, dietary or vitamin deficiencies, stress, trauma, autoimmune disorders, infection or bacteria, illness or disease, hair care or treatment, various medications including other chemotherapy drugs, as well as other medical conditions. Sandoz further responds that alternative causes may be identified in individual cases based upon the medical records and testimony obtained in those cases. Further, to the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery.

Beyond this, Sandoz objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities.

23

**Interrogatory No. 17:**

Identify and describe in detail the factual and medical basis for every alternative cause of HAIR LOSS suffered by Keri Bland that YOU may offer at a hearing or trial of this matter.

**ANSWER:**

**Sandoz has not yet made any specific contentions regarding the factual and medical basis for any alternative cause of hair loss suffered by Keri Bland and such information is the subject of ongoing discovery in Ms. Bland's individual case. Sandoz further refers Plaintiffs to all medical records produced to date in Ms. Bland's case and Ms. Bland's deposition testimony dated September 18, 2018, which include information relating to alternative causes for Ms. Bland's alleged hair loss. Sandoz also refers Plaintiffs to its Answer to Interrogatory No. 16.**

**Beyond this, Sandoz objects to this Interrogatory as premature since discovery in Ms. Bland's case is ongoing.  Further, to the extent this Interrogatory seeks discovery into matters calling for expert opinions, additional documents and information responsive to this Interrogatory may be adduced in expert discovery. Sandoz further objects to this Interrogatory to the extent it seeks information or materials protected by the attorney-client privilege, the attorney work product doctrine or other applicable privileges and immunities.**

**Interrogatory No. 18:**

Describe in detail the date, source, and your knowledge, understanding, reliance, tracking, or suspicion of adverse events, studies (including TAX316 and GEICAM 9805), or other pharmacovigilance with respect to TAXOTERE and ALOPECIA after receiving YOUR NDA approval.

**ANSWER:**

**In seeking FDA approval of its Docetaxel Injection through the 505(b)(2) abbreviated pathway, Sandoz indicated to the FDA that it intended to rely on nonclinical and clinical studies conducted for and submitted with the NDA for Sanofi's RLD Taxotere®, and to rely**

24

on the FDA's findings of safety and effectiveness for that drug. As described in its NDA, Sandoz did not perform any nonclinical or clinical studies for Docetaxel Injection, as Sandoz was expressly permitted to rely on the information collected for the RLD in obtaining section 505(b)(2) approval. All studies conducted for and submitted with Sanofi's Taxotere NDA (including TAX316 and GEICAM 9805) were completed before Sandoz' NDA for Docetaxel Injection was submitted to FDA. Consistent with its obligations as a 505(b)(2) NDA holder, since approval of its NDA for Docetaxel Injection Sandoz has also reported adverse events, including those relating to alopecia, and its Docetaxel Injection to the FDA.  Sandoz refers Plaintiffs to its previously produced NDA No. 201525 and related Periodic Adverse Drug Experience Reports (at SANDOZ-TAXO-NDA- 00000001 — SANDOZ-TAXO-NDA-00016805), as well as Periodic Safety Update Reports (at SANDOZ-TAXO-PSUR-00000001 — SANDOZ-TAXO-PSUR-00002436), and other adverse event reporting data that has been or will produced to Plaintiffs, which contain communications with FDA regarding any link between docetaxel and alopecia and information regarding adverse events relating to Sandoz' Docetaxel Injection.

Beyond this, Sandoz objects to this Interrogatory as vague and ambiguous.

**Interrogatory No. 19:**

Identify the studies and published scientific and medical literature on which YOU relied in entering the DOCETAXEL market and the due diligence YOU conducted to verify the validity of each such study in placing such reliance.

**ANSWER:**

In seeking FDA approval of its Docetaxel Injection through the 505(b)(2) abbreviated pathway, Sandoz indicated to the FDA that it intended to rely on nonclinical and clinical studies conducted for and submitted with the NDA for Sanofi's RLD Taxotere®, and to rely on the FDA's findings of safety and effectiveness for that drug. As described in its NDA,

**Sandoz did not perform any nonclinical or clinical studies for Docetaxel Injection, as Sandoz was expressly permitted to rely on the information collected for the RLD in obtaining section 505(b)(2) approval. Sandoz refers Plaintiffs to its previously produced NDA No. 201525 at SANDOZ-TAXO-NDA-00000001 — SANDOZ-TAXO-NDA-00016805.**

**Beyond this, Sandoz objects to this Interrogatory to the extent it implies that Sandoz had any duty to "verify the validity" of any study relating to Taxotere® or docetaxel.**

**Interrogatory No. 20:**

In addition to the above, identify every STUDY that YOU commissioned, participated in, or are aware of with respect to the efficacy, safety, or side effects of DOCETAXEL, or the comparison between DOCETAXEL and paclitaxel, during the time that YOU were considering entering the market and thereafter.

**ANSWER:**

**In seeking FDA approval of its Docetaxel Injection through the 505(b)(2) abbreviated pathway, Sandoz indicated to the FDA that it intended to rely on nonclinical and clinical studies conducted for and submitted with the NDA for Sanofi's RLD Taxotere®, and to rely on the FDA's findings of safety and effectiveness for that drug. As described in its NDA, Sandoz did not perform any nonclinical or clinical studies for Docetaxel Injection, as Sandoz was expressly permitted to rely on the information collected for the RLD in obtaining section 505(b)(2) approval. Sandoz refers Plaintiffs to its previously produced NDA No. 201525 at SANDOZ-TAXO-NDA-00000001 — SANDOZ-TAXO-NDA-00016805.**

**Beyond this, Sandoz objects to this Interrogatory to the extent it implies that Sandoz had any duty to conduct its own studies relating to the safety, efficacy or side effects of docetaxel.**

**Interrogatory No. 21:**

Describe in detail YOUR knowledge, understanding, or awareness of foreign labeling with respect to DOCETAXEL, including label changes, and the reasons behind such labeling or change in

26

labeling.

**ANSWER:**

**Sandoz objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably limited in time or scope, because it seeks information that is neither relevant to any party's claims or defenses as to Sandoz nor proportional to the needs of the case. Plaintiffs were treated, and allegedly injured, in the United States therefore making information relating to conduct outside the United States irrelevant.**

**Interrogatory No. 22:**

At the time YOU decided to and then actually entered the market for the sale of DOCETAXEL, describe in detail YOUR knowledge of any suspected connection, relationship, or link between permanent or persistent ALOPECIA and the use of TAXOTERE.

**ANSWER:**

**Sandoz incorporates by reference its Answer to Interrogatory No. 10.**

**Interrogatory No. 23:**

At the time YOU decided to and then actually entered the market for the sale of DOCETAXEL, describe in detail YOUR knowledge of a suspected connection, relationship, or link between any form of ALOPECIA and the use of TAXOTERE.

**ANSWER:**

**Sandoz incorporates by reference its Answer to Interrogatory No. 10**

**Interrogatory No. 24:**

Describe how YOU define or have defined ALOPECIA during the Relevant Time Period, stating the location and use of each such definition.

**ANSWER:**

**Pursuant to its pharmacovigilance obligations, Sandoz' reports of hair loss and/or alopecia are interpreted consistent with the Medical Dictionary for Regulatory Activities (MedDRA).**

**Interrogatory No. 25:**

Describe in detail your awareness of marketing, sales, physician, patient or nurse brochures  or other information regarding TAXOTERE at the time that YOU entered the DOCETAXEL market and the use YOU made of such material.

**ANSWER:**

As a section 505(b)(2) NDA holder, and in contrast to an RLD holder, Sandoz does not market or promote Docetaxel Injection based on its features or therapeutic benefits nor does it advertise, promote or share promotional materials for its Docetaxel Injection or sell directly to health care providers or oncology clinics. Thus, at the time it entered the market with its Docetaxel Injection, Sandoz did not "use" such materials as it interprets this Interrogatory.  Since FDA approval of NDA No. 201525, Sandoz has used non-promotional materials relating to its Docetaxel Injection including labeling and certain materials submitted to the OPDP.  Sandoz refers Plaintiffs to SANDOZ-TAXO-LABELING -000001 — SANDOZ-TAXO-LABELING-000373 as well as custodial files produced at SANDOZ-TAXO-00000001 — SANDOZ-TAXO-00090091 which may contain information responsive to this Interrogatory.

Beyond this, Sandoz objects to this Interrogatory as vague and ambiguous.

**Interrogatory No. 26:**

Describe in detail how YOU offered or marketed DOCETAXEL for sale to YOUR customers or potential customers during the Relevant Time Period.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

**Interrogatory No. 27:**

Identify YOUR customers for DOCETAXEL.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

**Interrogatory No. 28:**

Identify and describe YOUR contracts with each customer for DOCETAXEL.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26. **Interrogatory No. 29:**

Identify whether and describe how YOU represented YOUR DOCETAXEL as beneficial over TAXOTERE.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

**Interrogatory No. 30:**

Identify YOUR employees or representatives who attended a San Antonio Breast Cancer Symposium or ASCO symposium or conference between 2006 and 2017.

**ANSWER:**

**Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.**

**Interrogatory No. 31:**

Identify every PERSON involved in the initial labeling decision and those involved in decisions to request or change YOUR label for DOCETAXEL from its initial release to the present.

**ANSWER:**

**Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.**

**Interrogatory No. 32:**

Identify and describe all co-promotions in which YOU have participated regarding DOCETAXEL.

**ANSWER:**

**Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.**

**Interrogatory No. 33:**

Identify and describe in detail the process by which YOU are notified or become aware of adverse events or reports for DOCETAXEL manufactured by YOU, the process by which YOU are notified or become aware of adverse events or reports for DOCETAXEL manufactured by others.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

**Interrogatory No. 34:**

Describe in detail YOUR pharmacovigilance for DOCETAXEL and for TAXOTERE, whether manufactured by YOU or by others.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

**Interrogatory No. 35:**

Explain all actions taken by YOU to investigate the connection, relationship, or link between DOCETAXEL and ALOPECIA.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

**Interrogatory No. 36:**

Identify and describe the factors and process that led to YOUR label change or proposed label change of YOUR DOCETAXEL product.

**ANSWER:**

Sandoz objects to this Interrogatory pursuant to CMO 7, Section 4(b) and the Federal Rules of Civil Procedure 33(a)(1) which limits a party to no more than 25 written interrogatories. Accordingly, Sandoz is not obligated to respond to Interrogatories 26-26.

Dated:  October 1, 2018

Respectfully submitted,

/s/_____

Lori G. Cohen
R. Clifton Merrell
Evan Holden
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-2100
Facsimile: 678-553-2100
Email: CohenL@gtlaw.com
Email: merrellc@gtlaw.com
Email holdene@gtlaw.com

Deborah B. Rouen
E. Paige Sensenbrenner
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: 504-581-3234
Facsimile: 504-566-0210
debbie.rouen@arlaw.com
paige.sensenbrenner@arlaw.com

***Counsel for Defendant Sandoz Inc.***

32

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 1st day of October, 2018, the foregoing **<u>DEFENDANT SANDOZ INC.'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES</u>** was electronically transmitted to lead and liaison counsel in the captioned matter.

                          */s/ Lori G. Cohen*

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

**This Document Relates To:**

ALL CASES

**MDL No. 2740**

**SECTION:  N**

**JUDGE MILAZZO**

**MAG. JUDGE NORTH**

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR**
**OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:     Debra "Debbie" L. Cantwell
        1211 166th Ave. SE
        Bellevue, WA 98008

        (*Name of person who whom this subpoena is directed*)

        ☒ *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth
below the following documents, electronically stored information, or objects, and to permit
inspection, copying, testing, or sampling of the material:

**Please see the enclosed Schedule A.**

Place:  Shook, Hardy & Bacon L.L.P.
        701 Fifth Ave., Suite 6800
        Seattle, WA 98104

        Or at an agreed upon location or in an agreed upon manner.

Date and Time:  October 23, 2018 9:00 am

        ☐ *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated
premises, land, or other property possessed or controlled by you at the time, date, and location set
forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample
the property or any designated object or operation on it.

Place: _____     Date and Time: _____

The following provisions of Fed. R. Civ. P. 45 are attached.  Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____10/8/2018_____

*CLERK OF COURT*

OR

_____          _____/s/ Adrienne L. Byard_____
*Signature of Clerk or Deputy Clerk*                   *Attorney's Signature*

The name, address, e-mail address, and telephone number of the attorney representing (*name of party*)  sanofi-aventis U.S. LLC and Sanofi US Services Inc., who issues or requests this subpoena, are:

Adrienne L. Byard
Shook, Hardy & Bacon, LLP
2555 Grand Blvd.
Kansas City, MO 64108
816-474-6550
abyard@shb.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

Civil Action No. – MDL No. 2740

## PROOF OF SERVICE
*(This section should not be filed with the Court unless required by Fed. R. Civ. P. 45)*

I received this subpoena for (*name of individual and title, if any*) _____

_____ on (*date*) _____ .

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____ .

My fees are $_____ for travel and $_____ for services, for a total of $__0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____          _____

                                                                                    *Server's signature*


                                                                       _____

                                                                                    *Printed name and title*


                                                                       _____

                                                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection astrial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications,or tangible things in a manner that, without revealing informationitself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose theinformation until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt aperson who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DOCUMENTS TO BE PRODUCED BY DEBRA "DEBBIE" L. CANTWELL

**A.**    **Definitions**

1.    "You" or "Your" means the answering party, Debra "Debbie" L. Cantwell.

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, social-media posts, social-media comments, text messages, messaging-application communications, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, agendas and other records of communications.

3.    "Concern" or "concerning" means referring to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "Document" is used in the broadest sense consistent with the terms of the Federal Rules of Civil Procedure, and includes, without limitation, every writing, record, photograph, piece of electronically stored information, and tangible thing of every type and description, however produced or reproduced, whether written, printed, typed, recorded, taped or electronically or magnetically recorded or stored, or recorded upon any tangible thing, or stored in any retrievable form, by any means of communication, representation or data generation or retention, including without limitation: writings; correspondence; records; tables; charts; graphs; reports; notes; telegrams; telexes; telefax transmittals; telecopy, facsimile or fax transmittals or transmissions; cables; messages; e-mails; electronic messages; electronically stored or transmitted documents; diaries; diary entries; invoices; canceled checks; memoranda, including without limitation intra- and inter-office memoranda; intra- and inter-office communications; accounts; financial statements; papers; brochures; articles; statements; letters; memoranda, notes or jottings of telephone conversations, other conversations, discussions, agreements, acts, meetings, conferences or activities of any kind or nature; log books; computer tapes; computer disks or printouts; tape recordings; books; accounting records; work papers; minutes; affidavits; contracts; opinions; evaluations; analyses; studies; summaries; notices; agreements; microfilms; microfiches; records kept by any photographic, mechanical, magnetic or electronic means; any notes, summaries, or drafts relating to any of the foregoing; and any and all other tangible things or media containing information or from which information can be obtained. The term "documents" as used herein further means and includes the original and every non-identical or non-exact copy of such documents of whatever date; copies containing any commentary or notations of any kind that do not appear in the original; drafts; revisions; handwritten and typed versions; and earlier or later versions.

4

5. "Taxotears" means the moniker used by various groups of women who have allegedly been injured by Taxotere.

**B.    Categories of Documents to be Produced**

1. All documents or communications between, among, to or from you and the plaintiffs or plaintiffs' counsel in any Taxotere case.

2. All documents or communications between, among, to or from you and any member of the "Taxotears" Facebook Group and the "Taxotears" Google Group.

3. All documents or communications concerning **Exhibit 1**.

4. The deleted comments identified in your Facebook post attached as **Exhibit 1**.

5. The request identified in your Facebook post attached as **Exhibit 1**.

6. All documents and communications that identify by name the "someone" identified in your Facebook post attached as **Exhibit 1**.

7. All Facebook comments to your Facebook post attached as **Exhibit 1**.

8. All documents or communications concerning the request identified in your Facebook post attached as **Exhibit 1**.

9. All documents or communications concerning the deleted comments identified in your Facebook post attached as **Exhibit 1**.

# EXHIBIT 1



**Debbie Funk Cantwell** ▶ Taxotears
Nov 22, 2015 · 🌡

Deleting my comments regarding the hair product I used as requested by someone we're not supposed to talk about. 🤐



6 Comments



Crossing my fingers you see more growth soon 😊

▶ Taxotears
May 24, 2017 · 🌡

Has anyone had any correspondence from the attorneys?  Back in February I talked to one of the attorneys who said I should be getting a package of information to fill out...

11 Comments

