UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In Re Cantwell Subpoena | No. 2:18-mc-0112 RSL<br><br>MS. CANTWELL'S MOTION TO QUASH OR MODIFY DOCUMENT SUBPOENA TO NON-PARTY AND FOR PROTECTIVE ORDER<br><br>**NOTE ON MOTION CALENDAR: NOVEMBER 23, 2018** |

## I. RELIEF REQUESTED

Debra Cantwell seeks relief from this Court under Federal Rule of Civil Procedure 45, to quash or modify a subpoena duces tecum served on her by Sanofi-Aventis, U.S. (hereinafter "Sanofi"). Sanofi's subpoena issues from the U.S. District Court for the Eastern District of Louisiana, where Sanofi is a Defendant in the Taxotere (docetaxel) Product Liability MDL. Approximately 10,000 injured plaintiffs have consolidated cases against Sanofi and other manufacturers of docetaxel in the Eastern District of Louisiana. Ms. Cantwell is *not* one of those plaintiffs.

Sanofi's subpoena duces tecum, on its face, requires Ms. Cantwell, a non-party to the underlying litigation, to produce documents protected by her attorney-client privilege, as well as tens of thousands of pages of emails between her and other individuals who believed they were injured by Sanofi's product. Sanofi's subpoena to Ms. Cantwell is a massive overreach and imposes substantial costs and burdens on Ms. Cantwell. Ms. Cantwell cannot be compelled to waive her attorney-client privilege to satisfy Sanofi's suspicions related to whether her former counsel properly advised other clients to preserve evidence. Nor should Ms. Cantwell be forced to incur the substantial expense to produce emails that, to the extent relevant, ought to be sought directly from the Plaintiffs in the MDL. Accordingly, Sanofi's subpoena must be quashed or modified.

This request is overly broad on its face, not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome on this non-party, and invades attorney-client privilege. For these reasons, Ms. Cantwell respectfully requests a protective order to quash or modify Sanofi's document subpoena pursuant to Fed. R. Civ. P. 45 and 26(c).

MS. CANTWELL'S MOTION TO QUASH OR MODIFY DOCUMENT SUBPOENA TO NON-PARTY AND FOR PROTECTIVE ORDER– 1

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

## II. EVIDENCE RELIED UPON

Plaintiff relies upon:

(1) the Declaration of Elizabeth McLafferty in Support of Ms. Cantwell's Motion to Quash or Modify Document Subpoena to Non-Party and for Protective Order (the "McLafferty Decl.");

(2) the Declaration of Debra Cantwell in Support of Ms. Cantwell's Motion to Quash or Modify Document Subpoena to Non-Party and for Protective Order (the "Cantwell Decl."); and

(3) the Declaration of Scot Kreider in Support of Ms. Cantwell's Motion to Quash or Modify Document Subpoena to Non-Party and for Protective Order (the "Kreider Decl.").

## III. STATEMENT OF FACTS

This Motion to Quash is in response to a subpoena duces tecum served by Sanofi-Aventis, U.S (hereinafter "Sanofi), under the authority of the United States District Court for the Eastern District of Louisiana, in the Taxotere (Docetaxel) Products Liability Litigation, No. 16-CV-2740. McLafferty Decl. ¶1. Approximately 10,000 women have brought claims against Sanofi and other manufacturers of docetaxel – a chemotherapy agent widely used to treat breast cancer. Kreider Decl. ¶2. The Plaintiffs' claims arise generally from the manufacturers' alleged failure to warn of a significant risk of permanent or persistent hair loss (alopecia) likely to result from the use of docetaxel (marketed by Sanofi under the brand name "Taxotere"). *Id.*

Sanofi's subpoena duces tecum is directed to Debra Cantwell, a resident of Washington domiciled in the Western District of Washington. McLafferty Decl. ¶2. Ms. Cantwell experienced persisting alopecia after using Taxotere. Cantwell Decl. ¶1.

Sanofi's subpoena to Ms. Cantwell results from her association with a social media group called "Taxotears" – a loosely organized group of women from all over the world who experienced permanent alopecia after using Taxotere. *Id.* at ¶3. "Taxotears" women organized a Facebook page, and also formed a Google Group – a listserve where individuals

who experienced hair loss after using Taxotere communicated with one another through email. *Id*. There is no formal "Taxotears" organization. *Id*. The membership in the Taxotears Facebook group and Taxotears Google group overlaps but is not co-extensive. *Id*. Some members belong to one or the other, or both. *Id*. Ms. Cantwell is an active subscriber/"member" of both groups, but she is not an administrator or organizer of either group. *Id*. She is simply a woman seeking emotional support from similarly situated women related to the premature and permanent loss of her hair. *Id*.

Some Taxotears women were active in lobbying the FDA to require Sanofi to modify the Taxotere label to more accurately describe the risk of permanent alopecia. Kreider Decl. ¶3. Taxotears members also actively discussed the possibility of bringing suit against Sanofi for their damages. *Id.* at ¶4. A member of the Taxotears Google Group in Colorado was the first to find an attorney willing to explore the viability of these women's claims, and many members of Taxotears ultimately sought legal advice from the same attorney with respect to their own claims – and communicated with each other on the Taxotears forums related to their efforts to obtain legal advice and the viability of their possible legal claims. *Id.*

In November 2015, Ms. Cantwell formed an attorney-client relationship with Weinberger Law Offices, LLC, and Bachus & Schanker, LLC, in Denver, Colorado, to explore the viability of her potential claims against Sanofi. Kreider Decl. ¶5. Robert Weinberger became an employee of Bachus & Schanker on December 1, 2015, while also winding down his practice at Weinberger Law Offices through the balance of 2015. *Id.* Ms. Cantwell executed a retainer agreement with Bachus & Schanker on January 1, 2016. *Id.*

On November 22, 2015, Ms. Cantwell posted pictures of her head on the Taxotears Facebook page, seeking feedback on the efficacy of a hair product she was using to address

her on-going alopecia. McLafferty Decl. ¶3. On December 17, 2015 Ms. Cantwell edited that comment, noting she was "Deleting my comments regarding the hair product I used as requested by someone we're not supposed to talk about." *Id.* at ¶3 and Exhibit A. Ms. Cantwell's Facebook post and decision to edit that post is the reason Sanofi served her a subpoena.

Although Ms. Cantwell retained an attorney to explore the possibility of pursuing claims against Sanofi, she has brought no such claims. Cantwell Decl. ¶2. She is not a Plaintiff in the MDL or any other proceeding related to her use of Taxotere, and is not currently represented by any law firm to bring such claims. *Id.*

On October 8, 2018, Sanofi issued a subpoena to Debra Cantwell, demanding nine categories of documents:

    1.    All documents or communications between, among, to or from you and the plaintiffs or plaintiffs' counsel in any Taxotere case.
    2.    All documents or communications between, among, to or from you and any member of the "Taxotears" Facebook Group and the "Taxotears" Google Group.
    3.    All documents or communications concerning Exhibit 1.
    4.    The deleted comments identified in your Facebook post attached as Exhibit 1.
    5.    The request identified in your Facebook post attached as Exhibit 1.
    6.    All documents and communications that identify by name the "someone" identified in your Facebook post attached as Exhibit 1.
    7.    All Facebook comments to your Facebook post attached as Exhibit 1.
    8.    All documents or communications concerning the request identified in your Facebook post attached as Exhibit 1.
    9.    All documents or communications concerning the deleted comments identified in your Facebook post attached as Exhibit 1.

McLafferty Decl. at Exhibit A. The deadline to object or comply with the subpoena was October 23, 2018. *Id.* However, on October 18, 2018, Magistrate Judge North in the Eastern District of Louisiana extended the deadline for Ms. Cantwell to respond to or move to quash the subpoena to November 6, 2018. *Id.* at ¶4.

On November 5, 2018, Ms. Cantwell advised Sanofi that she would produce documents responsive to Category Nos. 4 and 7. McLafferty Decl. ¶5. The parties were unable to reach agreement as to the remaining categories.

### IV. ISSUE PRESENTED

Whether the Court should issue a protective order quashing or modifying Defendant Sanofi's document subpoena directed at Debra Cantwell when the documents sought are privileged, highly personal, create an undue burden on this nonparty, can be sought from other sources, and are irrelevant to the case?

### V. ARGUMENT

**A. The Western District of Washington is the proper forum for this motion.**

Under Fed. R. Civ. P. 45(3)(A), the proper forum for a motion to quash or modify a subpoena is "the court for the district where compliance is required . . ." The Western District of Washington is the district in which compliance is required. Specifically, Debra Cantwell has been subpoenaed to produce documents at 701 Fifth Ave., Suite 6800, Seattle, WA 98104. As a result, the Western District of Washington is the proper forum for this Motion.

**B. Sanofi's subpoena imposes a substantial burden and expense on Ms. Cantwell.**

The Federal Rules of Civil Procedure provide for broad factual discovery. A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). This same broad scope of discovery applies to discovery sought pursuant to a subpoena under Rule 45. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

A subpoena "must" be quashed if it subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). When considering the issue of undue burden, courts weigh the burden imposed on a subpoenaed party against the value of the information the subpoena seeks. *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 637 (C.D. Cal. 2005). Courts give special consideration to the burden imposed on non-parties. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980). "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp*. 300 F.R.D. at 410. *Cascade Yarns, Inc. v. Knitting Fever, Inc*. (1st Cir. 2014) 755 F.3d 55, 58-59 (court applied limitations in FRCP 26(b)(2) and considered third party had no stake in litigation); *XTO Energy, Inc. v. ATD, LLC* (D NM 2016) 2016 WL 1730171, *17-20, 27-31 (undue burden warranted quashing subpoena seeking opposing counsel's documents).

1. **Category 1: All documents or communications between, among, to or from you and the plaintiffs or plaintiffs' counsel in any Taxotere case.**

Category 1 is unduly burdensome because it requires Ms. Cantwell to identify individuals or entities involved in *any* Taxotere case. Over 10,000 cases against Taxotere have been consolidated in the MDL, but those cases are not the entire universe of cases that may have been brought against Sanofi related to Taxotere – either in the United States or worldwide – all of which are implicated by Sanofi's overbroad request. Further, even if the subpoena were limited to plaintiffs in the MDL, Ms. Cantwell has no idea which individuals she is acquainted with – solely through common membership in a loosely organized social media group – may have actually brought claims against Sanofi.

Nor does Ms. Cantwell know what attorneys or law firms might represent individuals in *any* Taxotere case – other than the attorneys she retained to represent her. To the extent Sanofi is seeking her communications with her attorneys, Ms. Cantwell does not agree to

MS. CANTWELL'S MOTION TO QUASH OR
MODIFY DOCUMENT SUBPOENA TO NON-
PARTY AND FOR PROTECTIVE ORDER– 6

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

waive her attorney-client privilege with respect to those communications. Although Rule 45 authorizes her to generate a privilege log identifying her attorney-client communications, preparing a privilege log is itself a substantial burden, requiring her to incur substantial attorney fees. Before Ms. Cantwell should be forced to incur this expense at all, Sanofi should substantiate why *her* communications with *her* counsel are relevant to any fact at issue in the MDL, when she has brought no claims against Sanofi or arising out of her use of Taxotere.

> **2. Category 2: All documents or communications between, among, to or from you and any member of the "Taxotears" Facebook Group and the "Taxotears" Google Group.**

Category 2 is unduly burdensome because it will impose an enormous expense on Ms. Cantwell and requires her to produce thousands of private and confidential communications that are either (a) completely irrelevant to the claims or defenses in the MDL; or (b) obtainable from the Taxotear member who is part of the MDL. There are thousands of messages in the Taxotears Google Group and hundreds in the Taxotears Facebook Group. Ms. Cantwell is not an administrator of the Taxotears Facebook page and has no special access that would permit her to copy or reproduce all the communications on the page. To the extent that members of the Facebook Group have brought claims related to Taxotere, Sanofi can seek the communications from such parties – all of whom have equal access and ability to copy the materials as Ms. Cantwell possesses. Perhaps Sanofi can request these documents from Facebook itself.

Similar concerns arise from Sanofi's request for Ms. Cantwell's communications with the Taxotear's Google Group. The Taxotears Google Group is a listserve. Ms. Cantwell has thousands of emails from the list – in addition to private emails she has sent/received from

MS. CANTWELL'S MOTION TO QUASH OR
MODIFY DOCUMENT SUBPOENA TO NON-
PARTY AND FOR PROTECTIVE ORDER– 7

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

other cancer survivors who may or may not be members of the Group. Ms. Cantwell estimates she has in excess of five thousand emails just from the listserve, each of which may be threaded and several pages long. Cantwell Decl. ¶4. A conservative estimate of the materials necessary to copy these emails is fifty thousand pages – or 100 reams of paper. *Id*. Ms. Cantwell cannot even estimate the time it would require her to individually download or copy each individual Taxotears email, much less to identify and copy all the individual emails between herself and other members of either group that did not go through the listserve.

Finally, many of the Taxotears communications do not involve women who are part of the Taxotere MDL. Ms. Cantwell is not a plaintiff in the Taxotere MDL. Many of these communications contain highly personal and sensitive communications these women are sharing amongst themselves – discussing their cancer survival and emotional reactions to learning they will not regrow their hair. While the fact that these individuals put *some* of these communications on a listserve of mutual survivors mitigates against a "legal" conclusion that such communications are private or were made with an expectation of privacy – there can be no dispute that compelling Ms. Cantwell to produce these sensitive emails en masse to Sanofi is traumatizing to her. Furthermore, Ms. Cantwell possesses many individual communications between herself and other members of Taxotears – in which she does have a reasonable expectation of privacy or confidentiality.

Notably, Sanofi already has the right to obtain a Plaintiff's communications and ESI related to their membership in either Taxotears group, as part of a Plaintiff's discovery/disclosures obligations in the MDL. Furthermore, Sanofi has served a subpoena on Google, seeking the metadata on all communications posted through the Taxotears

Google Group listserve. McLafferty Decl. ¶6. Google has sent notice to all members of the listserve on October 10, 2018, notifying them it intended to comply with the subpoena in the absence of formal objection. Cantwell Decl. Exhibit A.  Ms. Cantwell has not objected. *Id.* at ¶5. Thus, Sanofi is already obtaining information metadata related to communications between Taxotears members, and is authorized in the MDL to obtain such communications from Plaintiffs who may have been a member.

Ms. Cantwell is not the records custodian for Taxotears. Cantwell Decl. ¶3.  Sanofi's subpoena treats her as if she is.  Ms. Cantwell is not Google or Facebook. Sanofi's subpoena treats her as if she is.  There is simply no reason why Ms. Cantwell should be forced to shoulder the substantial burdens – financial and emotional – of producing every document or communication in her possession related to her fellow cancer survivors in these two social media groups.

> **3. Categories 3-9: Request the following concerning Exhibit 1: all documents and communication (No. 3), the deleted comments (No. 4), "the request identified in your Facebook post" (No. 5), all documents and communications that identify the "someone" referred to in the post (No. 6), all Facebook comments (No. 7), all documents and communications concerning "the request identified in your Facebook post" (No. 8), and all documents or communications concerning the deleted comments (No. 9).**

Categories 3-9 of Sanofi's subpoena seek information related to Ms. Cantwell's edited November 22, 2015 Facebook post – which reads "Deleting my comments regarding the hair product I used as requested by someone we're not supposed to talk about." Ms. Cantwell admits that she edited the posts after a conversation with her legal representatives, but denies that her attorney directed or advised her to delete a post on social media.  As such, the documents requested in Categories 3, 5, 6, 8, and 9 call for the production of attorney-client communications.  Ms. Cantwell does not wish to waive her entire attorney/client

MS. CANTWELL'S MOTION TO QUASH OR
MODIFY DOCUMENT SUBPOENA TO NON-
PARTY AND FOR PROTECTIVE ORDER– 9

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

privilege in order to demonstrate the inconsistency between what she posted on Facebook and the actual content of the advice she received from her legal representative.  Forcing Ms. Cantwell to produce these privileged documents with respect to this one issue potentially waives her past and future privileges with respect to any attorney-client communications she may have with respect to claims against Sanofi.  Forcing Ms. Cantwell to make this choice is an undue burden.

Sanofi contends that the attorney-client communications related to Ms. Cantwell's Facebook post are relevant and discoverable because the post evidences a directive to Ms. Cantwell to destroy evidence[1].  McLafferty Decl., Exhibit E.  Sanofi thus implicitly suggests that Ms. Cantwell's attorney-client communications are discoverable because those communications fall within the "crime/fraud" exception to the attorney/client privilege.  Putting aside the issue of whether Ms. Cantwell can be guilty of spoliation of evidence when she has never filed a claim, Sanofi's relevance claim clarifies that it seeks Ms. Cantwell's communications as evidence of "wrongful conduct" by Ms. Cantwell's attorneys- completely unrelated to anything done by Ms. Cantwell.  Put bluntly, Sanofi is seeking this discovery to grind its axe in furtherance of a belief that Ms. Cantwell's attorneys have counseled other clients (i.e. those with actual claims in the MDL) to destroy social media evidence.

Sanofi's axe grinding on this theory is not new.  Sanofi previously sought an order compelling another Taxotears party in the MDL to produce correspondence from Ms. Cantwell's former attorney, also based on a social media post by the party purportedly reflecting an attorney directive to destroy evidence.  The Court ordered Ms. Cantwell's

---

[1] The other post in Exhibit 1, dated May 24, 2017, states "Has anyone had any correspondence from the attorneys?  Back in February I talked to one of the attorneys who said I should be getting a package of information to fill out…"

MS. CANTWELL'S MOTION TO QUASH OR
MODIFY DOCUMENT SUBPOENA TO NON-
PARTY AND FOR PROTECTIVE ORDER– 10

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

former attorney to produce the correspondence at issue for *in camera* review. McLafferty Decl. ¶7-8. The Court determined that the correspondence did not constitute a directive to destroy evidence, and in fact "comports completely with the law and with all relevant professional and ethical standards." *Id*. at Exhibit F.

Because Sanofi's subpoena sought the attorney-client communications of a non-party, the discovery Magistrate in the Eastern District of Louisiana did not order Ms. Cantwell's former counsel to produce for *in camera* review the communications Sanofi contends evidences misconduct by her attorneys. This Court has authority to conduct *in camera* review of the disputed communications to determine whether evidence of misconduct exists. *U.S. v. Zolin*, 491 U.S. 554, 570, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). If the Court determines that the communications preceding Ms. Cantwell's Facebook post do not evidence attorney misconduct, then no basis would exist to produce the communications to Sanofi.

Finally, in the absence of evidence demonstrating some sort of misconduct by Ms. Cantwell's former attorneys, no Rule 26 basis exists to compel Ms. Cantwell to respond to any of Sanofi's document incredibly broad and intrusive demands for all communications with all Plaintiffs or all her correspondence with other members of Taxotears. In *Dominguez v. Corporation of Gonzaga Univ.*, No. 2:17-cv-00286-SAB, 2018 WL 3338181, *2, the Plaintiff sought information from a non-party, which the Court found was information that could have been "easily obtained from Defendant itself. The *Dominguez* court further found that there was "no indication that Plaintiff served discovery requests on Defendant seeking the information identified in the subpoena." *Id*. As a result, the *Dominguez* court granted the Defendant's Motion to Quash. *Id*. Just like the Plaintiff in *Dominguez,* Sanofi seeks

information from a non-party, information which could be easily obtained from Taxotere MDL Plaintiffs themselves.

## VI. CONCLUSION

For the foregoing reasons, Ms. Cantwell respectfully requests this Court grant her Motion to Quash and/or Modify Sanofi's subpoena duces tecum to Debra Cantwell, as follows:

1. Request No.1 should be quashed in its entirety as overbroad and unduly burdensome, as Ms. Cantwell is without knowledge of who might be Plaintiffs or Plaintiff's counsel in "any" Taxotere case. To the extent Request No. 1 encompasses correspondence between Ms. Cantwell and her prior attorney, the request should be quashed as seeking documents protected by the attorney client privilege.
2. Request No. 2 should be quashed as overbroad, unduly burdensome, and not having any relationship to the claims or defenses of any party in the MDL. To the extent these documents are relevant, Sanofi can obtain them from the relevant party in the MDL, or through subpoena to the service provider with actual custody of the emails. Ms. Cantwell cannot respond to this request without incurring significant expense and time disproportionate to any relevance established by Sanofi.
3. Request No. 3 should be quashed as seeking information protected by the attorney-client privilege. The Court can conduct an *in camera* review of such documents to ascertain whether they contain evidence of improper advisement by Ms. Cantwell's attorneys to destroy relevant evidence.
4. Ms. Cantwell will produce the Facebook post requested in Request No. 4 as it existed prior to her December 17, 2015 edit.
5. Request No. 5 should be quashed as seeking information protected by the attorney client privilege. No *in camera* review of the document is needed as the post does not present a prima facie indication of attorney misconduct.
6. The documents responsive to Request No. 6, related to Ms. Cantwell's December 17 post, will be produced to the Court for *in camera* review.
7. Ms. Cantwell will produce the comments to the Facebook post in Request No. 7.
8. Request No. 8 should be quashed as seeking information protected by the attorney client privilege. No in camera review of the documents are needed as the post does not present a prima facie indication of attorney misconduct.
9. No such documents exist responsive to this request.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

    Respectfully submitted this 6th day of November, 2018.

    *s/ Elizabeth J. McLafferty*
ELIZABETH J. MCLAFFERTY, WSBA #45291
Counsel for Debra Cantwell
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA  98104
Phone:  (206) 622-8000
Fax:  (206) 682-2305
Email: mclafferty@sgb-law.com

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2018, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system and that I served a copy of the documents via messenger to the following non CM/ECF participant:

Adrienne L. Byard
SHOOK, HARDY & BACON, LLP
2555 Grand Blvd.
Kansas City, MO 64108
Phone: 816-474-6550
Email: abyard@shb.com

Dated this 6th day of November, 2018, at Seattle, Washington.

*s/ Alder Burgess*
ALDER BURGESS, Paralegal
Schroeter, Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Phone: (206) 622-8000
Email: burgess@sgb-law.com