UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)      *     16-MDL-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *
                                  *     Section H
                                  *
Relates To All Cases              *     February 20, 2019
                                  *

*******************************************************************
                REPORTER'S OFFICIAL TRANSCRIPT OF THE

                            HEARING

          BEFORE THE HONORABLE MICHAEL NORTH,
             UNITED STATES MAGISTRATE JUDGE.

*******************************************************************

**APPEARANCES:**

**For the Plaintiffs:**

Darin Schanker, Esq.                Karen Menzies,Esq.
Palmer Lambert, Esq.                Zachary Wool, Esq.
Dawn Barrios, Esq.                  David Miceli, Esq.
Kyle Bachus, Esq.                   Andre Mura, Esq.
Andre Mura, Esq.                    Chris Coffin, Esq.
Rand Nolen, Esq.                    Daniel Markoff, Esq.
Jessica Perez Reynolds, Esq.        Larry Centola, Esq.
Zachary Woods, Esq.                 Lauren Stevens, Esq.
Christopher Elliott, Esq.           Lee Ann Gartland, Esq.


**For the Defendants:**

Douglas Moore, Esq.                 Cliff Merrell, Esq.
Jeremiah Wikler, Esq.               Kelly Brilleaux, Esq.
Patrick Oot, Esq.                   John Olinde, Esq.
John Strongman, Esq.                Mara Cusker Gonzalez, Esq.
Geoffrey Coan, Esq.                 Julie Callsen, Esq.
Suzanne Marinkovich, Esq.           Deborah Rouen, Esq.



**REPORTED BY:**      Mary V. Thompson, RMR, FCRR
                      500 Poydras Street, Room B-275
                      New Orleans, Louisiana  70130
                      (504)589-7783

**OFFICIAL TRANSCRIPT**

**P R O C E E D I N G S**

2                         (Call to order of the court.)

3          THE COURT:  Good afternoon.

4          So we don't really have anything on the regular agenda,

5   right?

6          MR. OOT:  One issue, Your Honor.

7          THE COURT:  Okay.

8          MR. OOT:  The issue that we have is notice period for

9   providing dates of depositions for the treater depositions.

10  We're approaching the Phase 2 trial preparation deadline that

11  Judge Milazzo set on March 14th.

12          Fourteen days is not going to cut it when we're this

13  close.  Plaintiffs are refusing to provide us with dates.  They

14  are saying that they're entitled to this 14-day period.  We don't

15  believe they need the full 14 days.  And it's going to roll

16  things into Mardi Gras, and you can imagine the problems that

17  will happen there.

18          So we would like to propose a three- or four-day

19  identification of date period for this.  We're approaching trial

20  and we think it's reasonable.

21          MR. LAMBERT:  Judge, Palmer Lambert on behalf of the

22  plaintiffs.

23          We have been discussing, for about a week now, an

24  agreed adjustment of the schedule of Phase 2 discovery in order

25  to relieve some of this pressure.  Unfortunately because of the

01:08:14
01:08:30
01:08:48
01:09:03
01:09:19

**OFFICIAL TRANSCRIPT**

1    travel schedule and the Presidents Day holiday, we don't have an
2    agreement yet, but we're supposed to talk this afternoon.
3         We do agree that an expedited schedule is fine for
4    noticing the depositions, but I believe there are four or five
01:09:38   5    that they are trying to fit in within the next week, and it's a
6    little unrealistic to have us do that with all the conferences
7    going on at the same time.
8         THE COURT:  Why don't you-all discuss that when we are
9    finished, and if you still think you need relief, just get on the
01:10:08   10   phone or e-mail me and let me know what you think you need from
11   me.  Okay?
12        MR. OOT:  Thank you, Your Honor.
13        THE COURT:  Okay.
14        MR. LAMBERT:  Thank you.  One more issue before we get
01:10:17   15   to the call docket.  I believe Ms. McGartland is on the phone for
16   Ms. Cantwell.
17        The defendants filed an opposition to the motion to
18   quash, and I believe she wanted to ask Your Honor for a deadline
19   for a reply brief.
01:10:33   20        THE COURT:  I just filed -- I just signed an order
21   setting that for hearing, but I don't remember when I set it.
22   I'll find out before you-all leave.
23        MR. LAMBERT:  Okay.
24        THE COURT:  The reply is going to be due -- so the
01:10:49   25   hearing -- I don't know when I set it.  I don't remember which

**OFFICIAL TRANSCRIPT**

1    Wednesday, but it will be on a Wednesday, so the reply would be

2    due -- I'm going to say by the Monday before the hearing.

3         MR. LAMBERT:  Thank you.

4         THE COURT:  I might have set it for next week, but I

01:11:04

5    don't think I did.  I just signed it and I didn't look at the

6    date.  But the reply would be due -- and she needs to file a

7    motion for leave so it doesn't get rejected.

8         THE LAW CLERK:  March 13th.

9         THE COURT:  March 13th.

01:11:19

10        So actually let's make it the Friday before March 13th,

11   because she's got sufficient time.  So the reply will be due.

12   And she ought to file the motion for leave so it doesn't get

13   kicked back by the clerk's office.

14        MR. LAMBERT:  Thank you, Your Honor.

01:11:35

15        MS. MCGARTLAND:  Thank you, Your Honor.

16        THE COURT:  As for the call docket, I don't know what I

17   can get done today.  I've had something else come up on a

18   criminal docket that I have to attend to.  And, frankly, I'm -- I

19   don't feel prepared to start this process because I'm really not

01:11:57

20   sure what it is that you-all envision -- how you-all envision

21   this show cause hearing going.

22        I know at the last conference I was talking to

23   Ms. Brilleaux about it.  I had asked if I could get some plan for

24   how this was going to go down, and you-all were going to send me

01:12:17

25   something before we met and I never got anything.  I got an

**OFFICIAL TRANSCRIPT**

1   e-mail from Dawn and company that basically said we're going to

2   do what Judge Milazzo does, but I don't go to those meetings so I

3   don't know what Judge Milazzo does.

4           So why don't we talk about what your expectations are

5   as far as how these hearings are going to be conducted.  I mean,

6   I've got a spreadsheet with -- and this is not to be critical --

7   with sort of a sparse explanation for what the shortcomings --

8   the perceived shortcomings are.  I imagine we're going to have to

9   go through each one of these individual plaintiffs and talk in

10  detail about what those shortcomings are.  Is that right?

11          MS. BARRIOS:  Yes, Your Honor.  Dawn Barrios for the

12  plaintiffs.

13          I apologize for not giving you any more detail.  When

14  we spoke with Judge Milazzo last, she said she was going to talk

15  to you so I improperly assumed that you were going to talk about

16  the call docket.

17          THE COURT:  We didn't really talk about this procedure.

18          MS. BARRIOS:  The procedure, Your Honor --

19          And Kelly, do you want to...

20          Kelly does it for Sanofi.

21          And Julie, do you want to...

22          Julie does it for the 505s.  So I think all three of us

23  would be best to tell you.

24          MR. MOORE:  One of the things that I thought would be

25  worthwhile addressing sort of at the beginning is we made a

**OFFICIAL TRANSCRIPT**

1    submission along with the chart originally, and it had fairly

2    detailed information about some of the things that we were

3    identifying as deficiencies as it relates to the cases.  We read

4    PTO 85 as authorizing us to make a letter submission on that

01:14:01    5    because there's references to a letter submission coming with the

6    identified deficiencies.  Their side pointed to the part of

7    PTO 85 that said there is no briefing.

8              THE COURT:  Right.

9              MR. MOORE:  So rather than get in a fight over that

01:14:17    10    over the weekend, we just revised our submission and submitted

11    that, a revised submission, that was much -- had much less

12    information in it in light of their issue they raised as to the

13    no-briefing rule.

14              But we thought that -- since PTO 85 does reference a

01:14:34    15    letter submission, we thought it might be helpful for us to lay

16    out in writing in advance, when we make the deficiency

17    submissions, about what the issues are.  Not a brief and not a

18    legal argument, but just an explanation in writing as to what the

19    deficiencies are and why they have been identified.

01:14:49    20              MS. BARRIOS:  Your Honor, our reading of PTO 85 when it

21    references the letter, that's --

22              THE COURT:  It's attached.

23              MS. BARRIOS:  That's the usual letter that comes to --

24              THE COURT:  Yes.

01:14:58    25              So here's the thing.  No more so than any other judge

**OFFICIAL TRANSCRIPT**

1  or magistrate judge that sits up here, I really do like to be as

2  prepared as possible when I come into the courtroom to talk to

3  you-all about substance, and I don't know how I can be prepared

4  on the basis of the pretty sparse descriptions that I've got.  I

01:15:21  5  really do think that it would be helpful to me to have a little

6  bit more detail for each of these plaintiffs so that I can --

7  again, so that I can be prepared to address them and know what

8  questions I want to ask.

9       And, again, I'm not being critical, but I can't really

01:15:40  10  pick up anything.  They are all the same.  All of these

11  deficiencies are the same.  Some have more than others, but they

12  are very generic descriptions.  And I think that if I was going

13  to work off a descriptive list like this, we would be in here for

14  a very long time.

01:15:58  15       MS. BARRIOS:  Your Honor, I understand.  This is just

16  how we did it with Judge Milazzo, so we just carried it over.  No

17  offense intended.  We didn't want to cut you off from the

18  information.

19       But if the defendants give a written submission, then

01:16:10  20  the plaintiffs are going to want to give a written submission.

21       THE COURT:  I think that I'm going to be okay with

22  that.

23       Do you-all have -- does anybody have what you-all were

24  going to submit originally?

01:16:22  25       MS. BRILLEAUX:  Yes.

**OFFICIAL TRANSCRIPT**

1    MS. BARRIOS:  I have the original.

2    MS. BRILLEAUX:  And I have a copy of it, too.

3    THE COURT:  Can I just take a look at what you-all were

4    thinking?

01:16:28  5    MS. BRILLEAUX:  The amended submission is first and

6    then our original submission is right here.

7    THE COURT:  Okay.

8    MR. OOT:  And, Your Honor, the submission wasn't a

9    recital for every single plaintiff in the case.  It was kind of

01:17:02  10   high-level identifying what some of the deficiencies are.

11   I think, big picture, what Sanofi and probably the

12   505s, too, will be looking at is we'll be looking at remedies

13   under the rules.

14   So Rule 26(g)(3), for example, for improper

01:17:17  15   certification after order after order after order.  We're still

16   getting materials produced to us as early as an hour ago that we

17   have no time to assess.  I was handed a series of declarations

18   that were signed yesterday passed to me just ten minutes ago that

19   I have no time to look at.

01:17:38  20   I guess we're at a point, how many times does the Court

21   have to order something and how many failures do we need to get

22   to until we are at 26(g)(3) where we get the remedies --

23   THE COURT:  That's a fair question.

24   You know, you're talking to Judge Milazzo, I know, on

01:17:51  25   the dispositive issues that she looks at.  It sounds to me like

**OFFICIAL TRANSCRIPT**

1  she sort of breaks things down into pretty -- larger categories,
2  and in some cases she gives someone 15 days to cure whatever
3  defect may be present.  And if that doesn't happen, then the case
4  gets dismissed.

01:18:14
5           I mean, am I oversimplifying how she's doing it?
6           MS. BARRIOS:  No, Your Honor, that's fairly accurate at
7  what she does.
8           But what I've personally found is that having the call
9  docket actually gives the plaintiffs the incentive to hit the
01:18:32
10 order.
11          THE COURT:  Yeah.  I mean --
12          MS. BARRIOS:  You know, I understand that they should
13 obey the order.
14          THE COURT:  I appreciate your candor.
01:18:39
15          MS. BARRIOS:  Look, Code of Professionalism
16 (indicating).
17          And so the call docket does actually serve a great
18 purpose.
19          We put it in this chart form for Judge Milazzo.  If
01:18:55
20 you'd like it in words, we can do it that way.
21          MS. BRILLEAUX:  If I could just make a comment.  For
22 Judge Milazzo, we provide the list to her the night before.  And,
23 respectfully, I don't think that there's a whole lot of
24 preparation on the Court's side in advance.  It really is the
01:19:11
25 defendants come to the Court, make the representation that we've

**OFFICIAL TRANSCRIPT**

1  given notice in advance, we've had a meet-and-confer, and this is

2  where we stand today, and the Court hears our presentation and

3  the plaintiffs' presentation.

4          And we certainly understand your need to have all the

01:19:25    5  information before you, but I think it's more procedural rather

6  than a substantive issue.

7          THE COURT:  Well, the problem is even though she's

8  dealing with, you know, questions of disposition of these cases,

9  I think that the inadequacies that we heard to dispose of those

01:19:47   10  cases are pretty straightforward.  They had either done something

11  or they hadn't.

12          I'm a little bit more concerned about what we're doing,

13  because we're talking about the adequacy of discovery which is a

14  matter of debate and the remedies are different.

01:20:06   15          I'm not sure that I can address these individual

16  plaintiffs' alleged deficiencies in the same manner without

17  digging, to some extent, down into exactly what they have

18  produced, and why, for instance, Sanofi thinks there's more.

19  Because they've found -- I'm assuming because they found more

01:20:31   20  from Taxotears or in other searches.  I mean, that's the

21  impression I'm getting.

22          So my concern is that there's going to have to be a

23  little bit more of an individualized inquiry into the responses

24  of each one of these individual plaintiffs.  Maybe more so than

01:20:50   25  even what Judge Milazzo's doing, because, like I said, I think

**OFFICIAL TRANSCRIPT**

1  what she's doing is pretty straightforward.  They've either

2  complied with a requirement in the PFS or they haven't, in which

3  case they're out.

4           MS. BARRIOS:  We understand, Your Honor, and we can

5  talk about that and make that happen for you.

6           And I appreciate in PTO 85 -- the big difference with

7  this order than PTO 22-A is that it requires an individual

8  meet-and-confer, the defendants with the individual plaintiffs,

9  because it would be too difficult for the Plaintiff Steering

10  Committee to do.  So if you are asking for a detailed explanation

11  from the defendants, then we just need to build in some time for

12  the plaintiffs to be able to respond.

13           We can try electronically to set you up on Centrality

14  to be able to see what is there.  We'll do anything to make it

15  easy for you.

16           THE COURT:  That is probably a good idea.  I think that

17  would be helpful.

18           MS. BARRIOS:  It's just that this process -- we've been

19  dealing with Taxotears for over a year and it's gotten us nowhere

20  so far, and this is just asking for more time and more time and

21  more time.

22           THE COURT:  What do you-all -- what would you-all

23  anticipate -- if we're doing this every 60 days, what are the

24  numbers going to look like from docket to docket?

25           MR. OOT:  Your Honor, I don't have a projection for

01:21:04
01:21:23
01:21:40
01:21:53
01:22:06

**OFFICIAL TRANSCRIPT**

1   that, but we have 30 this time around.  I think --

2          THE COURT:  And this is the first one so --

3          MR. OOT:  This is the first one.

4          THE COURT:  -- I'm wondering is it ever going to get

01:22:18   5   any worse than this?

6          MR. OOT:  I'm hoping -- I would agree with Dawn that

7   the process itself will facilitate production of the materials.

8          And we're not just talking about the Taxotears.  We're

9   talking wholesale discovery deficiencies.

01:22:29   10          THE COURT:  Right.  I understand.

11          MR. OOT:  We're talking failed certifications under

12   26(g)(3).  And at the end of this -- you know, as part of this

13   process, we're going to seek costs.  This is a very expensive

14   process.  To not -- after three orders -- after preservation

01:22:45   15   orders -- I think it's CMO 1 or PTO 1 where there is a

16   specification order around preservation that these failures

17   happen, we have to follow this process to get to this place.

18          So that is going to be a major theme of these hearings

19   going forward.  And I hope we do get to a point where we are not

01:23:03   20   having these any longer and we are actually getting the

21   materials.  That's the whole point of it.

22          MS. BARRIOS:  On our side, Your Honor, we're dealing

23   with generally elderly women who have no idea what electronically

24   stored information is.  We have firms who have hired --

01:23:20   25          THE COURT:  Sit down.

**OFFICIAL TRANSCRIPT**

1        MS. BARRIOS:  Yes, sir.

2        THE COURT:  No, no, no.  I don't want everybody popping

3   up and down while you're talking.  I wasn't directing that to

4   you.  I'm sorry.  They're all jumping up and down while you are

01:23:31   5   in the middle of a sentence.

6        MS. MENZIES:  We're always here for you.

7        MS. BARRIOS:  That's the problem that we're dealing

8   with.  And we're trying our best.

9            Firms are hiring ESI consultants to the tune of $500 a

01:23:42   10   plaintiff, and we are doing the best that we can.  And we're not

11   near a point of having costs assessed against us.  We're doing

12   our best.  We have 1200 people that we're trying to get this

13   done.  Not everybody has Taxotears information by --

14        THE COURT:  I understand your respective positions on a

01:24:01   15   large scale.

16        MS. BARRIOS:  Thank you.

17        MS. MENZIES:  Karen Menzies for the plaintiff.

18            Just to add in to it, I think there's an underlying

19   theme that there are a lot of deficiencies here, and, frankly,

01:24:12   20   I'm involved in this myself and we have given everything.  We

21   have completely complied with the order.

22            We appreciate that you recognize that each individual

23   plaintiff needs to show you that, because we actually think, you

24   know, there's some claimed deficiencies that are itself wasting

01:24:28   25   the Court's time because it should have been put to rest.  It was

**OFFICIAL TRANSCRIPT**

1  complied with, but yet we're still having to deal with it and
2  spend time and money and arguments and meet-and-confers.
3       So it goes both ways.
4       THE COURT:  This is a substitute for normal motion
01:24:48
5  practice or motions to compel.  I mean, each one of these
6  plaintiffs -- each one of the discussions that we have about them
7  in these call dockets is a miniature motion to compel.
8       I don't know how else -- I don't know how else to judge
9  the adequacy of someone's discovery responses unless I know what
01:25:11
10  they are and why you think they're inadequate.  And to hear that
11  for the first time, without any background, in the courtroom, I
12  don't think is going to lead to -- I'm not comfortable that I'm
13  going to be able to come to the right decisions.
14       MR. OOT:  Your Honor, we agree that we provide a
01:25:33
15  written narrative of what the deficiencies are.
16       I would argue, Your Honor, that -- it's our position
17  that we are beyond a motion to compel.  These orders have
18  happened over and over again.
19       THE COURT:  This is my protocol.  This is what we've
01:25:46
20  agreed to do, and that's how I view it.  So you can disagree with
21  me, but that's how I see this.
22       MR. OOT:  Okay.  Well, could a component --
23       THE COURT:  Because if you tell me that something is
24  missing, and I agree with you that something is missing, I'm
01:25:59
25  going to give them a short period of time to produce it.  That's

**OFFICIAL TRANSCRIPT**

1  how this is going to work.

2      And if it doesn't happen, then what is likely to happen

3  is the individuals who I have determined have failed to produce

4  information that they should have produced and have been given

01:26:19    5  seven or fourteen or fifteen days to remedy that, and it doesn't

6  happen, I will probably move them to Judge Milazzo's call docket.

7      MR. OOT:  Your Honor, just a point of clarity.

8      71-A requires 26(g)(3) -- 26(g) certification.

9      THE COURT:  Right.

01:26:36   10      MR. OOT:  These certifications have already happened.

11      So 26(g)(3) has a specific requirement that the Courts

12  must apply the appropriate remedies when there is a failure of

13  the certification.  Our argument and our position is that the

14  failure of these certifications -- certifications that they were

01:26:53   15  supposed to do a very long time ago --

16      THE COURT:  Well, you are having a conversation now in

17  the abstract because I don't know who or what you're talking

18  about.  You do, but I don't.  I haven't been presented with any

19  of that evidence.

01:27:05   20      MR. OOT:  So as part of our submissions, Your Honor,

21  we'll provide the why and -- the what and the why.  That probably

22  will be helpful in resolving the issues.

23      MS. BARRIOS:  Your Honor, I just propose that I work --

24  we work with each other to figure out a deadline; how many days

01:27:21   25  in advance of the hearing they have to send something and then

**OFFICIAL TRANSCRIPT**

 1  how many days in advance of the hearing we would reply.  Is that

 2  acceptable?

 3          THE COURT:  Yes.

 4          Look, I'm not looking for a long letter on each

 5  plaintiff.  I mean, it just has to be a little bit more than what

 6  I've got.  The what and the why.  And I want a preview of what

 7  we're going to talk about when we actually come to court.

 8          And I think that it would be helpful if someone can

 9  figure out how to get me access to the individual plaintiff's

10  productions --

11          MS. BARRIOS:  We can do that, Your Honor, very easily.

12          THE COURT:  -- so I can look at those whenever I think

13  that it's appropriate.

14          MS. BARRIOS:  Right.

15          And, Your Honor, when we talk to the defendants, we're

16  also going to want to hit page limits because we -- you don't

17  want to read ten pages from --

18          THE COURT:  No.  It shouldn't even take a page per

19  plaintiff.  It should be a half a page.  You-all ought to be able

20  to fit both of your arguments on one page.

21          MS. BARRIOS:  And each plaintiff will get an

22  opportunity, individual counsel, to reply?

23          THE COURT:  Yes.

24          MS. MENZIES:  May I ask a point of clarification,

25  Your Honor?

01:27:34
01:27:59
01:28:06
01:28:22
01:28:32

**OFFICIAL TRANSCRIPT**

1    THE COURT:  Yes.

2    MS. MENZIES:  If I'm understanding you correctly, you

3  want specific information about each plaintiff from both sides.

4  General kind of argument -- this is sort of a general submission

01:28:42    5  with a few examples here and there?

6    THE COURT:  Let me say without having really read it

7  but just having skimmed what Kelly gave me, I think this is

8  helpful and maybe it won't have to be repeated beyond the first

9  time.  It's helpful for me to understand generally what --

01:29:01   10  because a lot of these issues are applying to all of these

11  plaintiffs.

12    So a general description -- an overview is helpful, but

13  I want to know what's going on with each individual.

14    MS. MENZIES:  Then I think we'll need to work in -- the

01:29:14   15  PSC -- because this is very general.  This is a brief, really.

16  And so the PSC will need to do a general response.  Because this

17  gives history and otherwise, and then individual plaintiff

18  lawyers will address each plaintiff.

19    THE COURT:  Yeah.  So if you-all want to submit this,

01:29:30   20  which is -- well, the more lengthy submission you were going to

21  submit before the PSC objected.  If you-all want to submit this

22  along with some description of your issues with each plaintiff,

23  that's fine.

24    And you-all can respond to both.

01:29:48   25    The individual lawyers for the individual plaintiffs

**OFFICIAL TRANSCRIPT**

1  who are on this list will respond to the individual issues.

2       MS. MENZIES:  Right.

3       And then the way we've been doing the submissions where

4  there's a reply the day before the hearing -- because we've got

5  to track down the plaintiff lawyers too.  So you are going to

6  work in a schedule that we can make sure the other plaintiffs'

7  lawyers have time to respond?

8       THE COURT:  Yes.

9       MR. OOT:  Your Honor, some of these responses, as I

10  pointed out earlier, we're hearing for the first time ten minutes

11  ago.  We would like the opportunity to send a reply if they are

12  also filing both a general submission and a specific submission

13  for each individual plaintiff so we don't -- we have no clue what

14  some of their responses are.  They've really held the line in the

15  meet-and-confers and said that they're not giving us any more

16  information.

17       So a lot of these materials are new, these declarations

18  that I just got are new, and we would like the opportunity to

19  reply.

20       THE COURT:  Reply to what?

21       MR. OOT:  Reply to their submissions.  So handling it

22  the very same way that we handle the CMO 2 submissions.

23       THE COURT:  This process is different.  This process

24  begins with the defendants identifying deficiencies in the ESI

25  production.  You notify the PSC.  They notify the individual

*01:30:04*
*01:30:13*
*01:30:32*
*01:30:41*
*01:30:58*

**OFFICIAL TRANSCRIPT**

1  plaintiff lawyers.  You-all make an attempt to resolve those

2  issues.  When they are not resolved, you-all put those people on

3  a list.

4       How this is going to work is the defendants are going

01:31:16  5  to describe for me, in brief fashion, half a page, specifically

6  what's wrong with Karen Rowan's ESI production.

7       Karen Rowan's lawyer is going to give me a half a page

8  as to why you're wrong and their production is adequate.

9       And that's what I'm going to read.

01:31:41  10      You-all are going to go first.  The plaintiffs are

11  going to respond to your argument as to why the production is

12  inadequate.  That's it.

13      As to the -- I'm referring to what Ms. Brilleaux gave

14  me a little while ago, this kind of sort of general overview.

01:31:56  15  You can give me that.  And the PSC is going to give me their

16  response, and that's going to be it.

17      MR. OOT:  Thank you, Your Honor.

18      MR. MOORE:  Should we pick a date?

19      THE COURT:  Yeah.  I've got some dates.

01:32:18  20      MR. LAMBERT:  Palmer Lambert for the plaintiffs.

21      Do you want these specific hearings to be in connection

22  with the general discovery hearing or separate, since,

23  Your Honor, as you mentioned, they're probably going to be

24  somewhat lengthy if we're arguing 30 different cases at the same

01:32:35  25  time?

**OFFICIAL TRANSCRIPT**

 1          THE COURT:  I just don't like to make y'all have to
 2   come twice.  It really -- today would have worked because we
 3   didn't have anything else on the agenda -- well, it wouldn't
 4   work from -- well...

01:32:53
 5          What do you-all suggest?
 6          MR. OOT:  Your Honor, maybe for the first few we --
 7          THE COURT:  Stand alone.
 8          MR. OOT:  -- start with an accelerated call docket.  It
 9   might make sense.

01:33:09
10          And if, as Ms. Barrios pointed out, things start to
11   slow down, so to speak, maybe we can tie those to the docket with
12   Judge Milazzo.
13          THE COURT:  That makes sense.
14          And I'm hopeful that maybe whatever information --

01:33:28
15   whatever information was given to Mr. Oot and others today,
16   declarations and such, maybe that will moot some of these.  I
17   don't know.  You-all have to take a look and see whether some of
18   these issues might be resolved.
19          But we've got to -- we've sort of got to -- we have got

01:33:43
20   a finite set of plaintiffs right now on this list.  Why don't we
21   work on this list.  You-all give me the additional information
22   for each of these plaintiffs and come back.
23          The best time that I'm seeing right now is March 27th
24   at 1:00.  I know that's not real soon, but I've got the whole

01:34:50
25   afternoon open.

**OFFICIAL TRANSCRIPT**

1        MR. OOT:  That works, Your Honor.

2        THE COURT:  And if you-all need -- I mean, I really

3 don't want you-all to do this because I don't know how long these

4 are going to take, but if there are a few extras that you want to

01:35:02  5 include, we'll get through whatever we get through.

6        MR. OOT:  One other point, Your Honor.  Can we decide

7 on a cutoff of when materials are supposed to be provided for

8 that hearing?  We can't -- we have no way to assess what is being

9 produced to us the day of or the day before when we are

01:35:20  10 traveling.

11        THE COURT:  Well, I don't know the utility of a cutoff.

12        I would rather you get information, even if it's the

13 day of the hearing, and you just tell me that you have no idea

14 what it is.  I don't want to encourage someone not to produce

01:35:34  15 information to you even if it is untimely.

16        You see what I'm saying?

17        MR. OOT:  Okay.  We're trying --

18        THE COURT:  I'd rather them give you a Banker's Box

19 full of documents the day of the hearing and have you say, I just

01:35:45  20 got a Banker's Box full of documents and I don't know what it is,

21 but at least you have it.

22        If I give them a cutoff and they don't make it, you are

23 not going to get the information.

24        MR. OOT:  Also we want to avoid getting materials late

01:35:56  25 so we're not working up our --

**OFFICIAL TRANSCRIPT**

1        THE COURT:  That's the second time that happened today.

2        MR. OOT:  -- working up the issues on the call docket

3   when we don't need to work them up.  So, again, we're how many

4   orders in on this --

01:36:11    5        THE COURT:  Look, that's reasonable.  The problem is

6   we're dealing with a pretty disparate group of plaintiffs and

7   lawyers all around the country.  I can give them a deadline.  I

8   just don't know practically what that's going to mean.

9        You ultimately want the information.  Or maybe you just

01:36:34   10   want me to punish them for not giving it to you before the

11   deadline.

12        MR. MOORE:  Well, 28 of the 32, Judge, on this list are

13   the same firm.

14        THE COURT:  Right.

01:36:43   15        MR. MOORE:  But would it be appropriate for us to at

16   least get a deadline for our submission and their submission in

17   advance of the 27th?  Like what would the schedule of that be?

18        THE COURT:  Yes.  Let's have -- all right.  How much

19   time do you think you-all need, Palmer, to respond?  They are

01:37:16   20   going to be short.  How much time are you going to need?

21        MR. LAMBERT:  Your Honor, with this first set,

22   obviously the parties have already conferred and they understand

23   the issues.  I would suggest maybe two weeks before Sanofi

24   provides their general brief and their half page.

01:37:32   25        THE COURT:  That's what I was going to suggest.  I was

**OFFICIAL TRANSCRIPT**

|   |   |
|---|---|
| | 1 |

1 going to say Sanofi provide their submission by the 11th.

2             MR. LAMBERT:  And then plaintiffs perhaps --

3             THE COURT:  By the 18th.

4             MR. LAMBERT:  That sounds great.

01:37:46   5             THE COURT:  That will give me sufficient time to go

6 through everything.

7             MR. OLINDE:  John Olinde.  There are a few 505(b)

8 standalone cases, so we would have the same dates?

9             THE COURT:  Right.  All of this is going to apply to

01:38:01  10 you-all as well, John.

11             MS. MENZIES:  Some of them are combos so will there be

12 a joint submission on behalf of all defendants for each plaintiff

13 or are we going to get hit with -- in my case I've got three

14 defendants going after us.

01:38:13  15             THE COURT:  Y'all are going to do that jointly.

16             MR. OOT:  That's right.

17             MR. OLINDE:  Right.

18             THE COURT:  Okay.  So we will do the first call docket

19 on March 27th.

01:38:24  20             Sanofi will make their submission on the 11th.

21             And the 505s will make their submissions as well.

22             The PSC will respond on the 18th.

23             And I'll see y'all on the 27th.

24             We'll see how this works out.  I'm just trying to make

01:38:43  25 this as efficient as possible.  We'll see how successful I am

**OFFICIAL TRANSCRIPT**

 1  and --

 2          MR. MOORE:  We'll be here on March 13th for Cantwell?

 3          THE COURT:  Yes.

 4          So to the extent that you-all want to raise any, you

 5  know, exigent issues that day -- I don't know who's coming for

 6  that hearing, but if there are any issues that pop up that

 7  you-all want to address, I'll try to help you-all resolve them as

 8  long as you give me a little bit of notice.

 9          In other words, I would take advantage of the fact that

10  some of you will be here on the 13th if you need assistance with

11  something else.

12          MR. MOORE:  Hopefully we won't.  Thank you for the

13  offer.

14          THE COURT:  I think we probably -- well, so y'all are

15  coming on the 13th for Cantwell and you are coming on the 27th

16  for the call docket.  Do we need to set another discovery status

17  conference?

18          MR. MOORE:  I don't think so.  From Sanofi's

19  perspective, we don't think we do.

20          MR. COFFIN:  Why don't we figure out whether we think

21  we need one.  We haven't even talked about it.

22          But for Cantwell, it's not a PSC issue.

23          THE COURT:  Right.  Somebody is going to be here from

24  the PSC, I would imagine.

25          MR. COFFIN:  I'm sure someone will be.

**OFFICIAL TRANSCRIPT**

01:40:10

1      THE COURT:  All I'm saying is the PSC and we have

2 Sanofi and we have 505s.  If you-all have any other global issues

3 you want to raise, we can do it that day.  We just won't have 50

4 people in the courtroom.

5      MR. COFFIN:  That sounds great.

6      THE COURT:  Let's try to do it that way.

7      MS. MENZIES:  Thank you, Your Honor.

8      THE COURT:  All right.  Thank you.

9                          (Proceedings adjourned.)

10

11                  *  *  *  *

12                 CERTIFICATE

13

14      I hereby certify this 22nd day of February, 2019, that

15 the foregoing is, to the best of my ability and understanding, a

16 true and correct transcript of the proceedings in the

17 above-entitled matter.

18

19                          /s/ Mary V. Thompson

01:40:15  20      _____

                          Official Court Reporter

21

22

23

24

25

**OFFICIAL TRANSCRIPT**