UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)      *       16-MD-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *       Section H
                                  *
Relates to:  All Cases            *       February 21, 2019
                                  *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


TRANSCRIPT OF PROCEEDINGS BEFORE
THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:


For the Plaintiffs:          Barrios Kingsdorf & Casteix, LLP
                             BY:  DAWN M. BARRIOS, ESQ.
                             701 Poydras Street, Suite 3650
                             New Orleans, Louisiana 70139


For the Defendants:          Irwin Fritchie Urquhart
                               & Moore, LLC
                             BY:  KELLY E. BRILLEAUX, ESQ.
                             400 Poydras Street, Suite 2700
                             New Orleans, Louisiana 70130


For the Defendants:          Tucker Ellis, LLP
                             BY:  JULIE A. CALLSEN, ESQ.
                             950 Main Avenue, Suite 1100
                             Cleveland, Ohio 44113


Also Participating:          The Honorable James F. Hyland
                             Jonathan R. Mencel, Esq.
                             Lowell W. Finson, Esq.
                             Denae Benton, Esq.

```
Also Participating:          Bradley Morris, Esq.
                             Melissa B. Ephron, Esq.
                             Leslie LaMacchia, Esq
                             Kristie Fischer, Esq.
                             Rachel L. Shkolnik, Esq.
                             T. Christopher Pinedo, Esq.
                             David C. Bonnin, Esq.
                             Steven D. Davis, Esq.
                             Charles G. Orr, Esq.
                             J. Christopher Elliott, Esq.


Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                             500 Poydras Street, Room B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7778




Proceedings recorded by mechanical stenography using
computer-aided transcription software.
```

### **INDEX**

| | Page |
|---|---|
| Claims and Case Inventory | 4 |
| Federal/State Coordination | 5 |
| Pretrial Orders | 5 |
| Case Management Orders | 5 |
| Counsel Contact Information Form | 6 |
| Master Complaint and Short Form Complaint | 6 |
| Plaintiff and Defendant Fact Sheets | 7 |
| Service on Defendants | 10 |
| Product Identification Order | 10 |
| Preservation Order | 10 |
| Protective Order | 10 |
| Electronically Stored Information Discovery | 10 |
| Discovery of Defendants and Trial Case Discovery | 11 |
| Motion Practice | 11 |
| Special Master for Plaintiffs' Time and Expenses | 12 |
| Next Status Conference | 12 |
| Call Docket | 14 |

<u>**PROCEEDINGS**</u>

**(February 21, 2019)**

1   **THE COURT:**  Please be seated.

2       I know we have people still signing in.  Is
3   everyone ready?

4       Do we have any judges on the line?  Do we have
5   any judges on the line?

6       **JUDGE HYLAND:**  Yes.  Judge Hyland is here from
7   New Jersey.

8       **THE COURT:**  Judge Hyland, thank you for joining us.
9   Welcome.

10      We are here for our monthly status conference.
11  Ms. Barrios, are we ready to proceed?

12      **MS. BARRIOS:**  Yes, ma'am.  Good morning, Your Honor.
13  I would like to welcome Judge Hyland.  He extended some very
14  nice hospitality to Mr. Lambert and myself at his last status
15  conference and we appreciate it.

16      **THE COURT:**  Great.

17      **MS. BARRIOS:**  Your Honor, I'm presenting for the MDL
18  Joint Report 15 at the status conference today.  It was filed
19  last evening, so everyone should have a copy.

20      As of February 18, there are approximately
21  11,412 cases pending in your MDL, with approximately 1,392
22  cases that have been closed, dismissed, or remanded since the
23  MDL was created.

10:27   1          With regard to the federal/state coordination,
         2   of course, we have Judge Hyland on the phone from New Jersey,
         3   and there are other state court cases pending in California and
         4   Delaware.
         5          In the MDL, the attorney general for the State
         6   of Mississippi has filed an action.  It is now pending before
         7   the JPML and pleadings have been closed.  There will be no oral
         8   argument on the matter, and the JPML will decide whether the
         9   remand is proper or whether it should come to Your Honor.
        10          I have a little update on the number of
        11   New Jersey cases, and I got this from New Jersey counsel.
        12   Currently, there are 193 cases in New Jersey that comprise 197
        13   actual users.
        14          The pretrial orders that have been entered since
        15   our last status conference in January are Pretrial Order 92
        16   (Rec. Doc. 6016), which sets the status conference for today
        17   and provides a call-in number, and PTO 93, which I express our
        18   appreciation to the Court because you reappointed all of the
        19   plaintiffs' leadership.  We appreciate that.
        20          For everybody's edification, Appendix A.15 is
        21   attached that has all the pretrial orders that have ever been
        22   entered in the MDL.
        23          As for case management orders, there was one
        24   that was Rec. Doc. 6017.  In that Case Management Order 16,
        25   Your Honor selected as the primary plaintiff for the second

10:29

1    trial Cynthia Thibodeaux and Ms. Sheila Crayton as the

2    alternate.

3                   I'm not going to review the counsel contact form

4    information that should be in PTO 7 because everyone seems to

5    be complying and everyone should know about that right now.

6                   As for the master complaint and short form

7    complaint, the second amended master long form complaint

8    attached to Pretrial Order 82 and the exemplar short form

9    complaint (Rec. Doc. 1463-1) are the effective and operative

10   complaints for the plaintiffs.  However, the exemplar short

11   form complaint was amended on January 14 to reflect that

12   Your Honor has the MDL, and Judge Engelhardt's name was

13   removed.  Counsel can find that under the Court's website under

14   the tab "Forms."

15                  A reminder to all plaintiffs who wish to file an

16   amended complaint, the Court has Local Rule 7.6 requiring a

17   meet-and-confer with the defendants.

18                  Additionally, in Pretrial Order 15, dismissals

19   with prejudice -- I'm sorry.  Case Management Order 12A.

20   Dismissals with prejudice of those defendants whose product was

21   not used -- and that envisions plaintiff going through the

22   whole process of obtaining the manufacturer identification --

23   they can dismiss the defendants who are not manufacturers under

24   a form attached to Rec. Doc. 3492.

25                  On November 27, Your Honor entered PTO 87, which

10:31  1   orders procedures for the dismissal with prejudice of any

2   nontrial pool plaintiffs as to the entire action.  I understand

3   that several plaintiffs have not utilized this term, and just a

4   reminder to counsel that PTO 87 has the form.  You can find

5   that at Rec. Doc. 5363-1.

6           Turning to Item 7, the plaintiff and defendant

7   fact sheets, PTO 18 (Rec. Doc. 236) is the current defendant

8   fact sheet, and the current plaintiff fact sheet is PTO 55

9   (Rec. Doc. 688).

10           A reminder that PTO 22A describes the show cause

11   process for the plaintiff fact sheet deficiencies in

12   Your Honor's court and reminding counsel that there is a

13   separate order for Judge North.  We will be providing more

14   information to counsel through liaison counsel's emails because

15   Judge North tweaked the procedure just a bit yesterday.

16           As of February 18, 2019, the plaintiffs have

17   served 9,787 plaintiff fact sheets and 1,482 are in process.

18   The joint report actually gives all the numbers broken down per

19   defendant.

20           I want to remind counsel that they have to be

21   very familiar with PTO 68 with regard to the requirements of

22   representative dated photographs taken closest in time to

23   starting treatment and in no event earlier than five years

24   before then.

25           This is very important.  I know, Your Honor, we

10:32

1    had a prior conference on it.  I don't know if you wanted to
2    express your concerns about it now or --
3              THE COURT:  I can do that now, very frankly.  During
4    the course of our call docket that has occurred after every
5    status conference, we had a request that certain cases -- well,
6    as you all know, part of the requirement of the plaintiff fact
7    sheet is to provide representative photographs.  We have had
8    multiple plaintiffs that have indicated that they have no
9    photographs.
10             At our recent meeting, it was brought to my
11   attention that a certain plaintiff represented that she had no
12   photos.  It was discovered that she had photos on her Facebook
13   page, multiple photos on her Facebook page, that took about a
14   five-minute search.  This tells me, as I suspected, that
15   plaintiffs are abusing the system that we have established.
16             At first, it began when we had one plaintiff who
17   lost everything in a house fire, so I accepted her explanation
18   that she had no photos.  Then we had a number of plaintiffs
19   saying that they had no photos.  I found it, very frankly, hard
20   to believe, and I did express my skepticism that so many people
21   had absolutely no photos.
22             In light of the recent developments, I am no
23   longer going to accept a vague declaration of no photos without
24   some kind of explanation as to why no photos exist.  Should a
25   plaintiff need to submit a declaration of no photos, it should

10:34

1   be a formal declaration with some specificity, not a

2   one-sentence handwritten note.

3            I believe this started off as an accommodation

4   for people that truly had no photographs, and they provided the

5   Court with an affidavit.  I gave the parties 30 days to provide

6   that.  At every show call meeting since then, the presence of

7   people without photos has exponentially grown.

8            I'm not buying it.  I don't believe it.  What I

9   said at our meeting was everybody has a godchild that got

10  married or a cousin that's gotten married that there is a

11  photograph somewhere.  I believe what's occurred is this has

12  become a placeholder, which will no longer be acceptable.

13           Now, if there's some reasonable explanation,

14  i.e., that your photos were destroyed in the floods of Katrina

15  or a house fire, that might be acceptable, but it's going to

16  have to be some reasonable explanation that satisfies this

17  question.

18           **MS. BARRIOS:**  Thank you, Your Honor.  Mr. Lambert and

19  myself will certainly spread the word via email in explicit

20  detail.

21           **THE COURT:**  Thank you.

22           **MS. BARRIOS:**  Consistent with Pretrial Order 22A, the

23  defendants submitted their 14-day notice of noncompliance

24  cases.  Although the joint report indicates that the list

25  identifies 188 plaintiffs, I think all counsel who deal with

10:36

1  the call docket are very happy to report to Your Honor that we

2  really only have 48 for today.

3       THE COURT:  I can assure you, Ms. Barrios, not as

4  happy as I am.

5       MS. BARRIOS:  Item 8 is the service on the

6  defendants.  They have streamlined service procedures for each

7  defendant that are reflected in the joint report.  The PTOs and

8  record doc. numbers are also reflected on there.

9            Item 9 is the product identification order

10  that's Pretrial Order 12A.  We have talked about that at every

11  status conference, and this is a critical point in the MDL.  If

12  any counsel is out there who doesn't understand it, who has a

13  question, I ask that they please contact Mr. Lambert or myself

14  because it is of utmost importance.

15            Item 10 is the preservation order, which was

16  entered in PTO 1 (Rec. Doc. 4) regarding the preservation of

17  evidence by all parties, including plaintiffs.

18            The protective order was entered by Judge North

19  on July 5 at PTO 50.

20            Item 12 is the electronically stored information

21  discovery.  There's a protocol for that.  Pretrial Order 71A is

22  important for every plaintiff's counsel to know because that

23  sets forth in explicit detail plaintiff's responsibility in

24  providing the ESI.

25            On November 13, Judge North entered Pretrial

10:37

1    Order 85, which is the protocol for defendants and plaintiffs
2    to bring issues regarding ESI as well as privilege log
3    deficiencies before the judge.  As I said earlier, Judge North
4    has tweaked that a bit.  We will be prepared to provide
5    everybody with his new instructions and, of course, ask
6    Judge North to actually amend the order so everybody can see
7    it.

8              **THE COURT:**  Judge North and I have met about this
9    issue.

10             **MS. BARRIOS:**  Thank you, Your Honor.  For everyone's
11   knowledge, all the cases that were on Judge North's call docket
12   as of yesterday will be on his call docket for March 27 at
13   1:00 p.m.  Again, liaison counsel will be in touch to provide
14   the information.

15             Item 13 covers the discovery of the defendants
16   and the trial case discovery.  Trial case discovery is set
17   forth in detail.  In a summary fashion, the case discovery for
18   *Francis*, who is the primary plaintiff for the first trial, and
19   *Earnest*, the alternate plaintiff for the first trial, concluded
20   on November 7, 2018.  Discovery is ongoing in the trial pool
21   cases available for subsequent trials as set forth in CMO 14A.
22   I believe the parties will be discussing some issues regarding
23   trial pool case deadlines.

24             As Your Honor knows, there's been a flurry of
25   motion practice, particularly with regard to the first trial

10:39

1    up.  Your Honor ruled on February 7, denying plaintiff's

2    motion, and Antoinette Durden was removed as a bellwether.

3              The Sanofi defendants filed motions for summary

4    judgment with regard to three plaintiffs' cases:  Kelly Gahan,

5    Jacqueline Mills, and Deborah Johnson.  Sanofi also filed

6    motions for summary judgment on causation, learned

7    intermediary, and statute of limitation with regard to

8    Antoinette Durden, Barbara Earnest, and Tanya Francis.

9              Sanofi has been very busy.  They also filed the

10   following motions:  a motion to exclude -- I'll summarize it --

11   all the plaintiffs' experts under *Daubert* and a motion for

12   summary judgment based upon preemption.  Those record doc.

13   numbers, in case anyone would like to review them, are

14   reflected in the joint report.

15             The plaintiffs filed the following motions:  a

16   *Daubert* motion against David Spiegel, a motion to exclude

17   Vivian Fonseca, and a motion to exclude testimony that relies

18   on Dr. Kopreski.

19             As indicated in CMO 14, opposition and reply

20   briefing will continue between now and March 15.

21             Moving to Item 15, the special master,

22   Your Honor appointed Mr. Kenneth DeJean as our special master,

23   and I believe he is in court today.

24             **THE COURT:**  He is, and we have a meeting later today.

25             **MS. BARRIOS:**  Our last item, Your Honor, is the next

10:41

1   status conference.  I believe that perhaps we will skip a

2   formal status conference for the month of March, considering

3   all the trial work that has to be done, and we will be

4   communicating with everybody whenever a new date is selected or

5   any other court date is selected.

6           **THE COURT:**  I think we can report at this time that

7   oral argument, on those motions that will have oral argument,

8   will occur the week of April 1.  We have moved that time.  I

9   think it's April 2 and April 4 in the morning.  Once a

10   determination is made as to which motions will be set for oral

11   argument, that will be presented.  In light of the fact that

12   the Court has oral argument that week and a great deal of work

13   to do on the pending motions, we elected to forego the next

14   status conference.

15           **MS. BARRIOS:**  Yes, Your Honor.  That concludes the

16   joint report.  If Your Honor has any questions, we will be

17   happy to address them.

18           **THE COURT:**  I have no questions.

19                Judge Hyland, do you have any questions or any

20   comments?

21           **JUDGE HYLAND:**  No, only that we have a case

22   management conference on February 27.  I'll send Samantha the

23   contact information in case either you or she wish to listen

24   in.  We are working on an ESI order.  We are trying to mirror

25   as close as possible Magistrate Judge North's order so that we

are on the same page.

        THE COURT:  That would be great.  I can tell you,
Judge Hyland, Judge North would be delighted to talk to you
about this.

        JUDGE HYLAND:  Oh, good.

        THE COURT:  I will send him a note today and tell him
that you might contact him.  I will ask Samantha to provide you
his phone number.

        JUDGE HYLAND:  Thank you very much.

        MS. BARRIOS:  Thank you, Your Honor.

        THE COURT:  Thank you.  Anything further?  Anything?
        We are ready to proceed to the call docket.

        JUDGE HYLAND:  I'm going to hang up.  Thank you.

        THE COURT:  Thank you, Judge Hyland.

        (Off the record.)

        THE COURT:  The phone lines are open.  I'm going to
ask everyone to please put your call line on mute.  When we get
to your case, you can please take it off, and I will ask you to
speak at that time.  Since I'm not hearing anything, I think it
worked.  Thank you.

        Before we begin the call docket, at our last
session it was brought to my attention that there was a concern
about the deficiency notices being filed late.  I was given
correspondence to explain what the concern was.

        Very frankly, I thought that meant the

10:52

1    deficiency notices were significantly late and that, because of

2    the untimeliness, the plaintiffs did not have enough time to

3    address the deficiencies before the deadline.  However, I'm

4    realizing that the deficiency notices, while being technically

5    late, were not significantly late.

6              Very frankly, at the end of the day under any

7    circumstances, the information requested in the plaintiff fact

8    sheet has to be provided.  So while the deficiency notice might

9    have been presented technically late by the defendants, that's

10   hardly dispositive because the information must necessarily be

11   required.

12             In the future, plaintiffs should not expect an

13   indefinite extension based on a deficiency notice that is

14   merely a day or two late or even a couple of weeks late.

15   Defense counsel has explained to me how difficult it is to

16   identify deficiencies given the numerous plaintiffs in the MDL

17   and given the cross-checking that is required by CM/ECF and MDL

18   Centrality.

19             While their initial deficiency notice might have

20   been filed technically late, that is not cause for it to have

21   been waived.  That information is necessary to conduct the MDL,

22   and so that is not a cause for a waiver.  We are going to still

23   proceed, frankly, as I indicated.

24             My concern was that the notice was filed late

25   and that the plaintiff was given insufficient time to cure any

10:53

1   deficits.  That's not what the complaint was.  Having had an

2   opportunity to review it, plaintiffs must comply with their

3   obligations under the plaintiff fact sheets.

4           Now, before we begin the actual call docket,

5   declarations have been provided in multiple cases, and I

6   appreciate and request that the parties continue to use these

7   declarations.  It makes everyone's life easier.  As a result,

8   these cases are going to be dismissed with prejudice.

9           Do you have the itemization of those cases?

10          **MS. BRILLEAUX:**  Yes.

11          **THE COURT:**  I have gone through the declarations, but

12  I don't have the actual list.

13          **MS. BRILLEAUX:**  We do, Your Honor.  My name is Kelly

14  Brilleaux for the Sanofi defendants.

15          **MS. CALLSEN:**  Julie Callsen for the 505(b)(2)

16  defendants.

17          **MS. BRILLEAUX:**  We have three lists that we submitted

18  last night in addition to the fourth list, which was the show

19  cause call docket.  The first is the declarations list.  As

20  Your Honor is familiar, that is a list of plaintiffs who have

21  submitted declarations that they have made attempts to contact

22  their clients that have been unsuccessful.  The second is the

23  noncompliance statement list, which is a statement of no

24  defense to the deficiency.  The third is the noncompliance

25  dismissal list, which are cases that were on the noncompliance

10:55

1   list, and plaintiffs subsequently filed stipulations of

2   dismissal into the record dismissing the cases.  We can read

3   some or all three lists into the record, if you prefer, or we

4   can provide the list to you.

5           THE COURT:  I think we can provide the list to file.

6           MS. BRILLEAUX:  I did have one caveat, Your Honor.

7           THE COURT:  Yes.

8           MS. BRILLEAUX:  On the dismissal list, which has 19

9   plaintiffs on there, there are two in which counsel did file

10  stipulations but did not file the proper form under PTO 85 that

11  you ordered.  We would ask that Your Honor order that these be

12  refiled with the proper form.  The two plaintiffs are:  No. 10,

13  Tamisha Johnson, 17-14609; and then also No. 18, Fay Williams,

14  17-14668.  Both plaintiffs are represented by the Law Offices

15  of A. Craig Eiland.

16          THE COURT:  So ordered.

17          MS. BRILLEAUX:  Thank you, Your Honor.

18          THE COURT:  We will just file these.

19          MS. CALLSEN:  The first on our awesome list of only

20  48 noncompliance plaintiffs to hear is Sandra Wiggins, who is

21  represented by the McSweeney/Langevin Law Firm.  There was no

22  PFS submitted.

23          THE COURT:  Is there anyone on the phone for -- wait.

24  I'm on the wrong page, I think.

25          MS. CALLSEN:  I have a Jonathan Mencel.

10:57

1    **MR. MENCEL:**  Good morning, Your Honor.  Jonathan
2    Mencel from McSweeney/Langevin.
3        **THE COURT:**  Thank you.  Mr. Mencel, we have no PFS
4    submitted for Ms. Wiggins.
5        **MR. MENCEL:**  That is correct.  Recently, as of last
6    week, Ms. Wiggins had represented to our firm that she mailed
7    the plaintiff fact sheet back to our office.  We have not yet
8    received it.  As the Court probably is aware, Monday was a
9    holiday, and we also have been having inclement weather in
10   Minneapolis.  I would respectfully ask the Court to grant us an
11   additional 15 days to submit this PFS.
12       **THE COURT:**  The Court is going to grant 15 days to
13   submit the plaintiff fact sheet.  Mr. Mencel, stay warm.  I'm
14   just glad I'm not there.
15       **MR. MENCEL:**  Thank you, Your Honor.
16       **THE COURT:**  The next one.
17       **MS. BRILLEAUX:**  The next case is Sherry Taylor
18   represented by the Finson Law Firm.  This is for a not
19   substantially complete PFS.  The deficiencies are no proof of
20   use of docetaxel, no before photos, and no after photos.
21       **THE COURT:**  Mr. Finson, are you on the phone?
22       **MR. FINSON:**  I am, Your Honor.  Thank you.  Good
23   morning.
24       **THE COURT:**  Good morning.
25       **MR. FINSON:**  I will respond, if you would like,

10:58   1   Judge, because I think it's going to be simple.

2              THE COURT:  Please.

3              MR. FINSON:  In this case, just recently we had

4   finally found the mother.  She said she would assist in getting

5   in compliance.  After many, many letters and calls, we have had

6   no response whatsoever.

7              THE COURT:  I'm not sure I understand.  Are you in

8   touch or are you -- did you recently get in touch?

9              MR. FINSON:  Excuse me, Your Honor.  Yes.  The mom

10  called us, only the mother, and at that time she said she would

11  try to get ahold of her daughter.  That was about three weeks

12  ago or so.  We kept on trying, and we just didn't have a chance

13  to actually dismiss the case.  We have tried desperately in

14  this case, Your Honor.

15             MS. BRILLEAUX:  Your Honor, respectfully, this sounds

16  like a declaration case, where counsel has made multiple

17  efforts but hasn't been able to reach the plaintiff.

18             THE COURT:  The Court is going to dismiss this case

19  with prejudice.  It appears that the law firm has carried out

20  their obligations but without compliance from his client.  This

21  matter is dismissed.

22             MR. FINSON:  Thank you very much, Your Honor.

23             THE COURT:  Thank you.

24             MS. BRILLEAUX:  Thank you, Your Honor.  The next case

25  is Mattie Sanders represented by The Goss Law Firm. This is a

10:59

1   PFS not substantially complete, and we have no proof of use of

2   docetaxel.

3          **MS. BARRIOS:**  Your Honor, Dawn Barrios.  I have been

4   asked to read a statement into the record.  The statement is

5   fairly long, so I'm going to take the liberty of just

6   summarizing it.

7            The person has tried on numerous occasions to

8   get the records.  They hired a records company, and the records

9   company made over 70 contacts with the provider.  They keep

10   getting inconsistent answers.  He has issued a subpoena, and we

11   just ask that you let the subpoena process run.

12          **THE COURT:**  The Court is going to grant an

13   opportunity for the subpoena process to run.  Of course, I'm

14   going to order that the law firm contact the defendants with

15   any information provided, whether it's a refusal to comply with

16   the subpoena, just any information.

17          **MS. BARRIOS:**  Yes, Your Honor.

18          **MS. BRILLEAUX:**  Thank you, Your Honor.  The next case

19   is Jennifer Weinstein represented by Baron & Budd.  This is a

20   PFS not substantially complete and also no PTO 71A.  We have

21   after photos that are not dated and no before photos.

22          **THE COURT:**  I think I have Ms. Benton on the phone.

23          **MS. BENTON:**  Yes.  This is Danae Benton on behalf of

24   Ms. Weinstein.  We had lost contact with our client, but we

25   were able to recently locate her father, who informed us

11:01

recently that Ms. Weinstein passed away.  We requested time from the defendants to work through the probate process once we were notified of her death.  We didn't get a response on that. As such, we are requesting additional time to move through the probate process on this matter, to get the information from the father, hopefully.

MS. BRILLEAUX:  Your Honor, this case has been pending since December of 2017.  We would like to just know when plaintiff passed away.

THE COURT:  Do you have that information, Ms. Benton?

MS. BENTON:  Yes.  The father gave us a general date of August of 2018.  We don't have the specific date.  We are requesting the death certificate and the supporting documentation as far as next of kin information.

THE COURT:  This is what I'm going to do, Ms. Benton. I'm going to grant you 60 days to do that.

MS. BENTON:  Okay.  Thank you, Your Honor.

THE COURT:  You should proceed with this diligently. If for some reason you run into problems, you should contact defense counsel.

MS. BRILLEAUX:  Thank you, Your Honor.

MS. BENTON:  Thank you, Your Honor.

THE COURT:  Thank you.

MS. CALLSEN:  The next one is Tawni Brooks.  She is represented by The Maher Law Firm.  This case has been pending

11:02   1    since September of 2018, and we still have no PFS submitted

2    through MDL Centrality.

3              THE COURT:  Mr. Morris, are you on the phone?

4              MR. MORRIS:  Yes, ma'am.  Yes, Your Honor, I'm on the

5    phone.  I talked to defense counsel this morning and I talked

6    to plaintiffs' counsel.  This fact sheet was, indeed,

7    submitted.  I think there's a technical error going on.

8    BrownGreer, I think, is the company that's handling this on

9    Centrality.  We filed it on December 5, 2018.  I ask for seven

10   days to get this technical issue resolved.

11             THE COURT:  So ordered.

12             MS. CALLSEN:  Just to respond, we have looked every

13   which way and haven't --

14             THE COURT:  I think you all, obviously, need to meet

15   and confer about this, but I'm going to grant seven days.

16             MS. CAULSEN:  Thank you.

17             MS. BARRIOS:  Your Honor, just for the record, we can

18   see the plaintiff fact sheet.  We have the docket number.  My

19   paralegal, Kate, spoke with BrownGreer, and they are trying to

20   work it out.  We don't understand --

21             THE COURT:  We will get this straight.  Thank you.

22             MR. MORRIS:  Thank you, Your Honor.

23             MS. BRILLEAUX:  The next case is Phyllis Fernandez

24   represented by Reich & Binstock.  The only deficiency is an

25   undated PFS declaration, which is the signature verifying the

11:03

1   PFS.  We would ask for compliance within seven days.

2            **THE COURT:**  Okay.  Ms. Ephron, are you on the phone?

3            **MS. EPHRON:**  Yes, Your Honor.

4            **THE COURT:**  Seven days.

5            **MS. EPHRON:**  Ms. Fernandez has actually put the

6   signed declaration in the mail.  We have a tracking number.  It

7   should be arriving to our office hopefully today.

8            **THE COURT:**  The Court is going to grant seven days to

9   get this completed.

10            **MS. EPHRON:**  Thank you, Your Honor.

11            **THE COURT:**  I believe the next one must be you as

12   well, Lorrie Whitenight.

13            **MS. BRILLEAUX:**  Yes, Your Honor.  Lorrie Whitenight,

14   it's a similar issue.  We have photos undated and no HIPAA

15   authorization uploaded, so we would also ask for compliance

16   within seven days.

17            **MS. EPHRON:**  Your Honor, these deficiencies were

18   actually cured.  The photo declaration was uploaded to MDL

19   Centrality on 2/12.  The authorizations were uploaded on 2/13.

20            **THE COURT:**  Okay.  I'm going to grant seven days for

21   the defendants to confirm that.  If there's a problem, I'm

22   going to request defendants contact Ms. Ephron.

23            **MS. BRILLEAUX:**  Thank you, Your Honor.  Our records

24   don't show that, but we will go back and check.

25            **THE COURT:**  Sure.

11:04

1      **MS. BRILLEAUX:**  Thank you.  The next one is Delores

2  Golston represented by Pulaski Law Firm.  This is no proof of

3  use of docetaxel and undated before photos.

4      **MS. LAMACCHIA:**  Your Honor, this is Leslie LaMacchia

5  of the Pulaski Law Firm.  We filed a stipulation of dismissal

6  on December 18, 2018.

7      **THE COURT:**  So this matter is dismissed with

8  prejudice.

9      **MS. BRILLEAUX:**  Thank you, Your Honor.  We did not

10  have notice of that before today.

11      **THE COURT:**  Okay.  Was there no declaration?

12      **MS. BARRIOS:**  No, ma'am.

13      **THE COURT:**  I'm going to ask the parties to please

14  use the forms because it's helping us in moving this process

15  forward.  Thank you.

16          Ruth Hargraves.

17      **MS. BRILLEAUX:**  This is also for the Pulaski Law

18  Firm, a no proof of use of docetaxel.

19      **MS. LAMACCHIA:**  Your Honor, this client is deceased.

20  The letters of administration have been granted.  We had the

21  dual administrators both sign the authorizations.  Records have

22  been ordered on February 6, 2019, so we are waiting on records.

23      **THE COURT:**  I'm going to grant 60 days.  If you have

24  some problem, Ms. LaMacchia, you should contact the defendants,

25  if you are unable to comply with that within 60 days.

11:06

1          **MS. LAMACCHIA:**  Thank you, Your Honor.

2          **MS. BRILLEAUX:**  The next case is Carla Ingram

3    represented by Canepa Riedy Abele.  This is no proof of use of

4    docetaxel and no before photos within five years of treatment.

5          **MS. FISCHER:**  Good morning, Your Honor.  Kristie

6    Fischer on behalf of plaintiff Carla Ingram.  We submit that

7    neither of the alleged deficiencies provides a basis to dismiss

8    this case.

9               First, with regard to the photographs, MDL

10   document 184163 was uploaded on June 14, 2018, and is a

11   properly dated before photograph.  The first time that we

12   learned that defendants had an objection to the timing of the

13   photograph was yesterday afternoon, when I finally received a

14   response to multiple attempts to meet and confer with

15   defendants.  So I will, in light of that, attempt to get

16   additional before photographs, but it is not accurate that

17   there are no before photographs for this case, which is what we

18   had previously been notified of.

19               Second, with regard to the allegation that

20   there's no proof of use, defendants in this case have used this

21   Court's pretrial orders as a shield to deprive Ms. Ingram of a

22   meaningful opportunity to conduct discovery on the issue of

23   products ID and thereby proof of use.  First, defendants hide

24   behind PTO 22, refusing to submit a defendant fact sheet

25   because plaintiff has not provided proof of use.

11:07

1        THE COURT:  Ma'am.  Ma'am.  Do you have proof that

2   she used docetaxel?

3        MS. FISCHER:  We do not, but we have --

4        THE COURT:  Okay.  What steps have you taken to get

5   that information?

6        MS. FISCHER:  Ms. Ingram underwent chemotherapy in

7   2008.  We submitted a request to her provider and were informed

8   that they do not have records because it's been more than

9   10 years.

10        We also obtained some billing records from her

11   health insurance company which do support her contention that

12   she was treated by Dr. Elyse Lower, and the amounts of those

13   payments at the time seem very consistent with what we have

14   seen from other plaintiffs who were treated with Taxotere.

15        Likewise, we have issued a subpoena which again

16   resulted in a no records response, and so we issued some

17   discovery requests to defendants.  First we sent them a request

18   for production and then we sent them an interrogatory.  They

19   refused to respond to those, alleging that the discovery was

20   not authorized under CMO 12 because they are not distributors.

21   Although they acknowledge that plaintiffs are allowed to

22   conduct discovery to the distributors, they refused to respond

23   to our interrogatory asking them to identify the distributors

24   who would have been authorized to distribute Taxotere at the

25   time in the area where Ms. Ingram underwent chemotherapy.  So

11:09

1   until Ms. Ingram has a meaningful opportunity to conduct

2   discovery with regard to the proof of use, we do not believe

3   that it is proper to dismiss her case.

4           MS. BRILLEAUX:  Your Honor, just to respond, this

5   suit was filed in 2017, which is less than 10 years from when

6   the treatment would have been if the treatment occurred in

7   2008.  This is the very reason why the records should be

8   requested at the time of filing suit and not later than that.

9           Also, to respond to plaintiff's comment about

10  the written discovery, as you know, written discovery to the

11  defendants is not permitted under our pretrial orders,

12  specifically PTO 1.  If there's no proof of use, there's no

13  proof of use.

14          MS. CALLSEN:  Can I address that as well?

15          THE COURT:  Wait.  Yes.

16          MS. FISCHER:  Your Honor, to clarify, the records

17  were requested prior to filing suit.  Records were requested

18  first September 28, 2017.  The response that we received

19  stating that the records are only stored for up to 10 years was

20  received December 29, 2017.  Then we again submitted a request

21  February 8.  We submitted a different request to another

22  location March 6, 2018.  July 10, 2018, was when we received

23  the billing summary reports from the health insurance company.

24          THE COURT:  Let me just ask this question.  Does the

25  billing summary indicate docetaxel?

11:10

1        **MS. FISCHER:**  It doesn't identify any drugs by name.
2   It just has the provider, the claim number, and the amount that
3   was paid.  We still are trying to work with the health
4   insurance provider to see if they have more details to back up
5   what's on the billing records.  I just don't believe that
6   defendants don't have the type of patient level information
7   that would answer this question.
8             At the very minimum, they could provide us with
9   the identity of their distributors who would have been
10  authorized to distribute Taxotere at the time in the state
11  where Ms. Ingram underwent chemotherapy.  If we had that, we
12  could issue subpoenas directly to those distributors in
13  accordance with CMO 12.  So defendants are standing behind
14  CMO 12 --
15            **THE COURT:**  Okay.  All right.
16            Ms. Barrios, do you have something to say?
17        **MS. BARRIOS:**  Yes, Your Honor.  What I would suggest
18  to counsel is to issue a 30(b)(6) and a subpoena against the
19  facility, against the medical insurer, against any party that
20  you can think of.  We have found that once subpoenas are issued
21  things magically appear.
22        **MS. FISCHER:**  We have issued a subpoena in this case.
23  The problem is --
24            **THE COURT:**  A 30(b)(6)?
25        **MS. FISCHER:**  -- that we don't know the identity of

11:11    1    the distributors, so we can't subpoena that --

2        **MS. CALLSEN:**  Can I please address this because this

3    firm has issued numerous -- this is Julie Callsen on behalf of

4    the 505(b)(2)s.  We have gotten numerous rounds of requests for

5    production and rogs from this firm.  We have told them over and

6    over and over we do not maintain patient level data.  We just

7    don't.  I cannot produce what I don't have.

8        Further, the billing records usually do have NDC

9    codes in there.  They may not say "Taxotere" or "docetaxel,"

10    but I would encourage plaintiffs maybe to use Ms. Barrios or

11    Mr. Palmer to educate them on the medical records.  They

12    generally will have NDC codes because they need something in

13    order to bill the companies with.

14        We are not using CMO 12 as a shield or a sword

15    or anything.  We simply don't have that data, and we have told

16    this firm over and over again.

17        **THE COURT:**  Is this the same issue for both Ruth

18    Hargraves and Carla --

19        **MS. BRILLEAUX:**  Carla Ingram and there's Lue

20    Marshall, which is also a no proof of use.

21        **THE COURT:**  Okay.  It's the same firm?

22        **MS. BRILLEAUX:**  Yes.

23        **THE COURT:**  I'm going to ask, Ms. Fischer, that you

24    talk to Mr. Lambert and Ms. Barrios.  They may give you some

25    guidance.  I'm not sure that the manufacturer is going to have

1   end user information actually at patient level.  They may know

2   who they distribute to.

3              Very frankly, there is no discovery going to the

4   defendants.  That's part of the plaintiff fact sheets, the

5   defendant fact sheets.  I think perhaps I'm going to pass this

6   one temporarily and ask you to please speak to one of the

7   members of plaintiffs' liaison counsel to give you some

8   guidance.  It is the plaintiff's burden to show that you used

9   the product in question.

10        **MS. BRILLEAUX:**  Your Honor, for Ms. Ingram, which is

11   the first one we addressed, we would ask for 15 days to cure

12   the photo issue.

13        **THE COURT:**  So ordered.

14        **MS. FISCHER:**  Your Honor, two things, if I may.  With

15   regard to the discovery that we propounded, the interrogatory

16   merely asks defendant to identify the name, address, and

17   telephone number for all third-party entities and/or

18   individuals that they authorize to sell, distribute, or

19   otherwise disseminate Taxotere from the time period beginning

20   January 1, 2006, and ending December 31, 2010, in the

21   geographical location encompassing U.C. Barrett Cancer Center

22   and/or University of Cincinnati Medical Center, currently

23   located at 234 Goodman Street, Cincinnati, Ohio.  That is not a

24   burdensome request for defendants to respond to, and so at the

25   very minimum I would ask that we be allowed --

11:15

1       **THE COURT:**  Ma'am.  Ma'am.  I think I told you what
2  to do, which is you should have a conversation with members of
3  plaintiffs' liaison counsel.  I'm not going to rewrite CMO 1
4  today.  I understand your concerns.  I think that plaintiffs'
5  liaison counsel and steering committee have been working
6  through these very issues from the beginning.  With that in
7  mind, I'm asking you to do what I'm asking you to do, but I'm
8  not going to rewrite CMO 1 right now.  Okay?
9       **MS. BRILLEAUX:**  Thank you, Your Honor.
10      **THE COURT:**  I'm going to pass this.  I'm going to
11  give you 15 days on the photo issue.  I'm going to pass this to
12  the next call docket, after you have an opportunity to visit
13  with plaintiffs' liaison counsel.  Okay?
14          Let's go to the next one.
15      **MS. BRILLEAUX:**  Thank you, Your Honor.  That's for
16  both Carla Ingram, other than the photos, and also Lue
17  Marshall, correct?
18      **THE COURT:**  Yes, ma'am.
19      **MS. BRILLEAUX:**  Thank you.  The next is Ruby Williams
20  represented by Napoli Shkolnik, no PFS submitted.
21      **THE COURT:**  Okay.  Who do we have?
22      **MS. SHKOLNIK:**  Good morning, Your Honor.
23      **THE COURT:**  Yes, ma'am.
24      **MS. SHKOLNIK:**  This is Rachel Shkolnik from the
25  Napoli Shkolnik law firm.  Ruby Williams, she is deceased, and

11:16   1   we found out in 2018.  We have been trying to figure out who

2   the next of kin is.  Actually, I found out this week the next

3   of kin who we have been trying to get in touch with is actually

4   also deceased.  I found this out this week, so now we are

5   trying to find a new next of kin.  We request 15 days to locate

6   a new next of kin.  If we can't get in touch, then --

7       **THE COURT:**  Yes, ma'am.  I'm going to grant 15 days

8   for you to find the next of kin.  If you do and they wish to

9   proceed and you have to do certain probate work, we will

10   address that, but I will give you 15 days to find the next of

11   kin.  Okay?

12       **MS. SHKOLNIK:**  Thank you, Your Honor.

13       **MS. BRILLEAUX:**  Thank you, Your Honor.  To clarify,

14   if next of kin is not found within 15 days, we would ask that

15   the case be dismissed with prejudice.

16       **THE COURT:**  So ordered.

17       **MS. BRILLEAUX:**  Thank you.  The next case is also

18   with Napoli Shkolnik, Rebecca McCombs, no PFS submitted.

19       **MS. SHKOLNIK:**  We filed a stipulation of dismissal in

20   January, and I don't believe it was correctly filed.  I just

21   found this out last night, so it was too late to refile a new

22   stipulation to dismiss.

23       **THE COURT:**  Okay.  This matter is dismissed with

24   prejudice.  Thank you, ma'am.

25       **MS. SHKOLNIK:**  Thank you, Your Honor.

11:17

1   **MS. BRILLEAUX:**  Thank you, Your Honor.  The next case
2   is Felecia Goins.  She is represented by Hilliard Martinez
3   Gonzales.  This is a PFS not substantially complete due to no
4   PFS declaration -- that's the signature page verifying the
5   PFS -- no before photos, no after photos.
6         **THE COURT:**  Who do we have, Mr. Pinedo?
7         **MR. PINEDO:**  Yes, Your Honor.  Chris Pinedo for
8   Felecia Goins.  We talked to the client last week.  She said
9   she would get it to us.  She has not gotten it to us.  We have
10  also reached out to her this week.  We have not gotten a
11  response from her.
12        **THE COURT:**  The Court is going to grant seven days.
13        **MR. PINEDO:**  Thank you, Your Honor.
14        **THE COURT:**  You need to get this information in.
15        **MS. BRILLEAUX:**  Thank you, Your Honor.  The next
16  case, represented by the same firm, is Denese Knowles.  This is
17  no PFS declaration, no before photos, no after photos, and no
18  PTO 71A certification for ESI search and production.
19        **MR. PINEDO:**  Your Honor, Chris Pinedo on behalf of
20  Denese Knowles.  We reached out to this client.  We talked to
21  her last week.  There was a death in the family.  She informed
22  us she did not want to talk.  I have called her again this
23  week, and there has been no response.  I would ask for 15 days
24  for her to complete her mourning so we can try to get this
25  done.

1    **THE COURT:**  So ordered.

2    **MS. BRILLEAUX:**  Thank you, Your Honor.  The next case

3    is Tessa Robinson, no proof of use of docetaxel.

4    **MR. PINEDO:**  Your Honor, Chris Pinedo for Tessa

5    Robinson.  I went through the records again and it appears,

6    despite our representations from the client, that she took a

7    different chemotherapy agent.

8    **THE COURT:**  This matter is dismissed with prejudice.

9    **MS. BRILLEAUX:**  Thank you, Your Honor.  The next case

10    is Tamisha Johnson.  This is the Law Offices of Craig Eiland.

11    I believe this is actually one that was dismissed in an

12    improper form, so we would ask that the proper stipulation of

13    dismissal be filed under PTO 85.

14    **THE COURT:**  Okay.

15    **MS. BRILLEAUX:**  That's also the same for No. 19 on

16    the call docket, Fay Williams.  A stipulation was filed but not

17    with the proper form, so we would ask that the correct form be

18    filed.

19    **THE COURT:**  Do we need the form or can we just take

20    care of it?

21    **MS. BRILLEAUX:**  Oh, yes, that's fine too.

22    **THE COURT:**  Tamisha Johnson.  Who is on the phone for

23    Mr. Eiland?  David Bonnin?  Are you on the phone, Mr. Bonnin?

24    **MR. BONNIN:**  This is David Bonnin representing both

25    of those clients, and I apologize for the use of the incorrect

11:20

1   form.  We will refile using the proper form.

2          THE COURT:  Mr. Bonnin, let me just take care of that

3   for you.  This matter is dismissed with prejudice as well as --

4   is it Fay Williams?

5          MS. BRILLEAUX:  Yes, Your Honor.

6          MR. BONNIN:  That's correct, Your Honor.

7          THE COURT:  That matter is dismissed with prejudice.

8             Now let's speak to Francine Moffett.

9          MS. BRILLEAUX:  Thank you, Your Honor.  Francine

10   Moffett has no PFS submitted and has been pending since

11   December of 2017.

12          MR. BONNIN:  Sure.  Again, this is David Bonnin

13   representing Ms. Moffett.  I think what we have here is an MDL

14   Centrality technical error.  We filed Ms. Moffett's case in

15   duplicate back in December 2017 by mistake.  Realizing this

16   error almost immediately, we reached out to the Court, and they

17   agreed not to post the second filing.  Somehow in the interim,

18   I believe, both cases made it onto MDL Centrality.  So the case

19   numbered 17-14827 simply, I believe, needs to be removed from

20   MDL Centrality.

21          THE COURT:  Do you know the other case number,

22   Mr. Bonnin?

23          MR. BONNIN:  Yes.  Yes.  The other case number for

24   the case that's still standing for Ms. Moffett is 17-14566.

25          THE COURT:  Okay.

11:21

1      **MS. BRILLEAUX:**  Your Honor, per our discussion in

2  chambers, we would ask that 17-14827 be dismissed with

3  prejudice with no effect on the other suit.

4      **MR. BONNIN:**  Okay.  The only thing is I think when

5  you go to do that, there's probably not going to be a case

6  number in the Court's docket for that case.

7      **THE COURT:**  Of course, this is the day that

8  Ms. Mouledoux is not here.  I'm going to ask for seven days for

9  this to get coordinated between my case manager and docket

10  clerk and MDL Centrality, because what I don't want to occur is

11  for me to dismiss the wrong number.  Let's make sure that the

12  surviving number has all of the information necessary.

13      **MS. BRILLEAUX:**  Thank you, Your Honor.

14      **THE COURT:**  I'm going to grant seven days for this,

15  and I'm going to request that --

16      **MS. BARRIOS:**  Your Honor, Dawn Barrios.  I will be

17  glad to contact Mr. Woody today and get the ball rolling.

18      **THE COURT:**  Thank you.

19      **MS. BRILLEAUX:**  We will coordinate with the Court as

20  well.  Thank you, Your Honor.

21      **THE COURT:**  Okay.  Great.  Thank you very much.

22      **MR. BONNIN:**  Thank you, Your Honor.

23      **MS. CAULSEN:**  The next plaintiff is Joanne Boots, and

24  she is represented by Marc J. Bern & Partners.  There is a PFS

25  deficiency in that everything that needs a signature is

11:23

1    missing, no authorizations, no declaration.  Further, we have

2    no proof of use, no proof of injury, and the certifications for

3    71 and CMO 12 are also missing.

4            **THE COURT:**  Who do I have on the phone for Marc Bern?

5            **MR. KESSLER:**  Good morning, Your Honor.  Gordon

6    Kessler, Marc J. Bern & Partners.  Ms. Boots' case was

7    dismissed in the last hearing on January 18.

8            **MS. CAULSEN:**  Oh.

9            **THE COURT:**  Okay.  All right.

10           **MS. CALLSEN:**  Okay.

11           **THE COURT:**  Thank you.  The next one is --

12           **MS. CALLSEN:**  Davida Deaton.  As of 9:23 a.m. this

13   morning, it was cured, so we can remove that from the docket.

14           **THE COURT:**  Okay.

15           **MS. CALLSEN:**  The next case is Jesse Myers.  Similar

16   to the one before, everything that needs a signature was

17   missing from the PFS, no declaration, no authorizations.  We

18   have no proof of injury or proof of use.

19           **MR. KESSLER:**  We agree to dismiss this matter.

20           **THE COURT:**  This matter is dismissed with prejudice.

21           **MS. CALLSEN:**  Thank you.  There is one Sanofi case

22   that's Bridget --

23           **THE COURT:**  Hotobah During.

24           **MS. CAULSEN:**  You go for it.

25           **MS. BRILLEAUX:**  Hotobah During, that's what we will

11:24

1    go with.  This is a PFS that's not substantially complete.  We

2    have no PFS declaration verifying the PFS, no before photos, no

3    after photos, and no PTO 71A declaration regarding ESI searches

4    and production.

5            **MR. KESSLER:**  An amended plaintiff fact sheet was

6    uploaded to MDL Centrality last night.  All the outstanding

7    documents, signed and verified, were uploaded this morning.

8            **THE COURT:**  The Court is going to grant seven days to

9    confirm that and ask you all to meet and confer if there's any

10   outstanding issue.

11           **MS. BRILLEAUX:**  Thank you, Your Honor.  The next one

12   is Aqua Thomas, no proof of use of docetaxel.

13           **MR. KESSLER:**  We had some issues.  We requested

14   Ms. Thomas' medical records a couple of times.  We have

15   recently learned that she had a few previous names, different

16   last names, and that her first name is Aquanetta and not Aqua.

17   The client has gone to the facility where she received Taxotere

18   and is in the process of obtaining those records, so we request

19   30 days to obtain those records.

20           **THE COURT:**  So ordered.

21           **MS. BRILLEAUX:**  Thank you, Your Honor.

22           **MR. KESSLER:**  Thank you.

23           **MS. CALLSEN:**  The next couple of plaintiffs are with

24   the TorHoerman law firm.  The first one is Kathleen Osthoff, no

25   PFS submitted.

11:25

1          **MR. DAVIS:**  Your Honor, Steven Davis for Ms. Ostoff.

2    We submitted her PFS this morning.

3          **THE COURT:**  Okay.  The Court is going to grant seven

4    days for the defendants to confirm.

5          **MS. CALLSEN:**  The next one is Edith Haffner, same

6    thing, no PFS submitted.

7          **MR. DAVIS:**  Again, Your Honor, we submitted that this

8    morning.

9          **THE COURT:**  Seven days.

10          **MS. CALLSEN:**  Okay.  Thank you.

11          **MS. BRILLEAUX:**  The next one is Lori Kingery, no PFS

12    submitted.

13          **MR. DAVIS:**  We submitted her PFS yesterday afternoon.

14          **THE COURT:**  Seven days to confirm.

15          **MS. BRILLEAUX:**  Rhonda Pederson, no PFS submitted.

16          **MR. DAVIS:**  That was submitted this morning.

17          **THE COURT:**  Seven days.

18          **MS. BRILLEAUX:**  Carol Wearing-Williamson, no PFS

19    submitted.

20          **MR. DAVIS:**  Your Honor, that was submitted yesterday.

21    Also, unrelated to that case -- I believe that's all that y'all

22    have up for my firm -- I did file a declaration in one case

23    where we had had no contact for the last several months, where

24    the plaintiff reached out to us last night and said she had

25    been dealing with a long illness and that she is recovered and

11:26

1  able to participate.  If Your Honor is interested, I would ask

2  for a short time period to get her PFS completed and submitted

3  also.

4          **THE COURT:**  Was that declaration filed today?

5          **MR. DAVIS:**  No.  It was filed earlier this week.

6          **THE COURT:**  It was dismissed today?  What's the

7  plaintiff's name?

8          **MR. DAVIS:**  Deborah Poirier, P-O-I-R-I-E-R.  It's

9  18-CV-8926.

10          **MS. BRILLEAUX:**  Counsel, how long ago was the

11  declaration filed?

12          **THE COURT:**  This week.

13          **MR. DAVIS:**  Earlier this week.

14          **MS. BRILLEAUX:**  It's not on our list.

15          **MR. DAVIS:**  Probably Tuesday.

16          **THE COURT:**  It may not have made it to the final

17  list.

18          **MR. DAVIS:**  Okay.

19          **THE COURT:**  Wait, wait, wait.  It did?

20          **MS. BRILLEAUX:**  Yes.  There it is.  It is on the

21  list, Your Honor.  Apologies.  It's No. 8, Deborah Poirier,

22  18-8926.

23          **MR. DAVIS:**  Yes.

24          **THE COURT:**  Okay.  I'm going to grant you 15 days.

25  We'll remove it from the list of actions to be dismissed.

11:28   1          **MR. DAVIS:**  Thank you, Your Honor.

2          **THE COURT:**  Thank you.

3                 We have only three from the Mulligan firm.  Why

4     are they last on the list?

5          **MS. BRILLEAUX:**  Your Honor, they are last because

6     they were moved from the last call docket, so we agreed that we

7     would go through today's call docket and address the Mulligan

8     firm's last.  If Your Honor would like to take them up prior to

9     Bachus & Schanker --

10         **THE COURT:**  Well, there are only three.  Is Mr. Orr

11    on the phone?

12         **MR. ORR:**  Yes, Your Honor.  Good morning.

13         **THE COURT:**  Good morning.  Mr. Orr, I reviewed your

14    submission, and I believe you heard my thoughts.  While their

15    deficiency might have been late, it does not relieve you of the

16    obligation to complete the plaintiff fact sheets, so we need to

17    proceed with these now.  That would be Emma Brown.

18         **MS. BRILLEAUX:**  Yes, Your Honor.  For Emma Brown, we

19    have a PFS not substantially complete.  We have no proof of

20    use, no before photos, no after photos, and authorizations not

21    dated.  We did have contact with Mr. Orr regarding a statement

22    of no defense, but Mr. Orr was apparently unable to file it,

23    and we are unsure why.

24         **THE COURT:**  Mr. Orr.

25         **MR. ORR:**  Yes, Your Honor.  I heard your thoughts

11:29

1    about the late deficiency issue.  I appreciate your careful

2    consideration of that issue.  There were several plaintiffs

3    that were carried over from that and we, of course, took care

4    of the deficiency issues where we were able to.

5           For our three cases on the docket today, we have

6    no basis to oppose.  The reason I was unable to file anything

7    to that effect is because I'm out of the office and just had to

8    make myself available for this call.

9           **THE COURT:**  Okay.

10          **MR. ORR:**  I was unable to coordinate with my office

11   getting anything filed.

12          **THE COURT:**  Okay.  I understand.  Just so that I'm

13   clear, as to Emma Brown, Marisol Quintero Mojica, and Deborah

14   Younkins, there is no basis for you to object to dismissal?

15          **MR. ORR:**  Yes, Your Honor, that's correct.

16          **THE COURT:**  Those three matters are dismissed with

17   prejudice.

18          **MS. BRILLEAUX:**  Thank you, Your Honor.

19          **THE COURT:**  Thank you.  Now we can take up the Bachus

20   & Schanker cases.  We might get out of here before noon.

21          **MS. BRILLEAUX:**  Thank you, Your Honor.  The first

22   case that we have for Bachus & Schanker is Ami Dodson, no PFS

23   submitted.

24          **THE COURT:**  What about Joyce Chapman?

25          **MS. BRILLEAUX:**  Oh, I'm sorry.  I skipped ahead one.

11:30

1    It is Joyce Chapman.  That's also no PFS submitted.

2            **MR. ELLIOTT:**  We have attempted to reach her, and it

3    has not been successful.

4            **THE COURT:**  Okay.  This matter is dismissed with

5    prejudice.  You could have done a declaration.  You know that?

6            **MR. BACHUS:**  Some of these we keep trying to reach

7    them up and through the end.

8            **THE COURT:**  Okay.

9            **MS. BARRIOS:**  Your Honor, might I have just a moment

10   with Mr. Elliott?

11           **THE COURT:**  Yes.

12           **MS. BARRIOS:**  Thank you, Your Honor.  Sorry for the

13   interruption.

14           **THE COURT:**  Okay.  Ami Dodson.

15           **MR. ELLIOTT:**  This is a duplicate case.  Actually,

16   her actual case number is 16-15282.  That case is in good

17   standing.  We have filed a plaintiff fact sheet in Ami Dodson's

18   case in that case number.  We ask that this case be removed,

19   dismissed.

20           **MS. BRILLEAUX:**  Yes.  We ask that it be dismissed

21   with prejudice with no effect on the other case.

22           **THE COURT:**  Okay.  17-16979 is dismissed with

23   prejudice.

24           **MS. BRILLEAUX:**  Thank you, Your Honor.  JoAnn

25   Hickman, no PFS submitted.

11:31

1          **MR. ELLIOTT:**  This was filed on February 19.

2          **THE COURT:**  Okay.  Seven days.

3          **MS. BRILLEAUX:**  Thank you.  Thank you, Your Honor.

4          **MS. CALLSEN:**  The next one is Judith Houston, and we

5     still have no proof of injury.  We do have numerous pages of

6     records.  They are not concurrent with the dates of treatment,

7     which are listed as X/X/2013.  All the records we have are

8     follow-up, from 2014, 2016, and none indicate that Taxotere or

9     docetaxel were administered.  That's the main thing.  Also, we

10    don't have any photos, etc.

11         **MR. ELLIOTT:**  It looks like we have issued subpoenas.

12    We did a due diligence packet, CMO 12A, to the facility to try

13    to get the proof of use, to try to get the product ID.

14         **THE COURT:**  What about the photos?

15         **MR. ELLIOTT:**  Before photos were uploaded on 2/19,

16    and they are within the five years.

17         **THE COURT:**  I'll grant seven days as to the photo

18    issue.  Proof of use, I'm going to let him work through CMO 12.

19         **MS. CALLSEN:**  Have you issued a subpoena?

20         **MR. ELLIOTT:**  I understand that we have.

21         **MS. CALLSEN:**  Like I said, we have gotten records

22    from 2014 to 2016, but none with respect to the treatment in

23    2013 that show docetaxel.

24         **MR. ELLIOTT:**  Give me one second.

25              I just was texted that the due diligence packet

11:33

1    was sent on October 15, and we have also issued a subpoena to

2    the facility.  We would like to go through that process, take a

3    deposition if we need to.

4            MS. CALLSEN:  So it was issued on October 15, and you

5    don't have anything from those records yet?

6            MR. ELLIOTT:  We don't have it yet, no.

7            MS. CALLSEN:  Okay.

8            THE COURT:  Okay.  So where are we?

9            MS. CAULSEN:  Yes.  Where?

10           MR. ELLIOTT:  Where are we?  I think we are at this

11   point where we get to the stage of doing a deposition of the

12   facility.

13           THE COURT:  Okay.  Photos you have seven days to

14   cure.

15               I'm going to allow him to work through CMO 12

16   for proof of use.

17           MS. CALLSEN:  Okay.  Keep us updated.

18           THE COURT:  Yes.

19           MS. CALLSEN:  Thank you.

20           THE COURT:  Deborah Jasper.

21           MS. BRILLEAUX:  This is no PFS submitted.

22           MR. ELLIOTT:  It was submitted February 19.

23           THE COURT:  Seven days.

24           MS. BRILLEAUX:  Thank you, Your Honor.  Lemon

25   Jenkins.  This is an undated PFS declaration and no before

11:34   1   photos and no after photos.

2          **MR. ELLIOTT:**  Before photos were uploaded on

3   February 20, within five years of treatment.  After affidavit

4   was uploaded 2/20/19.

5          **THE COURT:**  Okay.  What does the affidavit say?

6          **MR. ELLIOTT:**  I don't have it in front of me, so I

7   don't know.

8          **THE COURT:**  I have to tell you.  I'm not doing that

9   anymore.

10         **MR. ELLIOTT:**  I do want to raise, Your Honor, that

11   there was some misunderstanding.  I believe Tawonna Powell was

12   brought up at the February 13 hearing, and the facts weren't

13   quite accurate.

14              The declaration that was actually given to you

15   was from a completely different plaintiff.  If defense counsel

16   had went into Ms. Powell's case, they would have been able to

17   see that we uploaded before, after, and present day photos.

18   There were photos in there.

19              There is an affidavit from Ms. Powell that says

20   that she doesn't have any photos during treatment, so we did

21   file an affidavit to that effect, but the affidavit that was

22   shown to you, Your Honor, was for Dorothy Robinson, a

23   completely different plaintiff.

24         **MS. BRILLEAUX:**  Your Honor, to speak to that, we did

25   bring you records.  I was at the meeting with Ms. Bieri.  We

 1    showed you two separate cases which we thought were odd.  The

 2    handwritten statements that we gave to you were on behalf of

 3    Dorothy Robinson.  The Tawonna Powell Facebook photos --

 4          **THE COURT:**  All right.  That is what I want to do.

 5    I'm going to talk to you about the photo issue at the end, but

 6    we have a whole bunch of these with no PFS submitted.

 7          **MR. ELLIOTT:**  Okay.

 8          **THE COURT:**  Then we are going to deal with the

 9    photograph issue.  This is my problem.  I'm just not buying it.

10    I'm just not buying that large swaths of people have no

11    photographs.  Like I said, if it was Hurricane Katrina, I get

12    that.  People go to weddings, people go to high school

13    graduations, and even if you don't want to be photographed --

14          **MR. ELLIOTT:**  Your Honor, the two cases that were

15    presented to you, made examples of, were clients of mine.  It

16    would be untrue that -- Ms. Robinson actually had photos

17    uploaded to MDL Centrality, as did Ms. Powell, so I just don't

18    think that was a fair example.

19          **THE COURT:**  Maybe not, but I have to tell you.  At

20    the last hearing I was voicing the same skepticism.  I think

21    there has to be some effort beyond:

22                "Where are the photographs?"

23                "I don't have any."

24                "Oh, okay."

25          **MR. ELLIOTT:**  I can tell Your Honor that my firm

11:37   1   tries to go onto Facebook to look them up.  Sometimes
       2   there's --
       3        THE COURT:  Okay.  Let's get through these, and then
       4   we will talk about photographs.
       5        MR. ELLIOTT:  Sounds good.
       6        THE COURT:  Okay.
       7        MR. ELLIOTT:  Yes.
       8        MS. BRILLEAUX:  Yes.
       9        THE COURT:  We are at Tena Johnson, no PFS.
      10        MS. BRILLEAUX:  No, I don't think we resolved Lemon
      11   Jenkins.  Your Honor, I just wanted to note one thing.  I know
      12   we are not going to discuss the photograph issue, but I do
      13   think one thing that was very clear when we spoke in your
      14   chambers is that any declaration filed or any affidavit filed
      15   has to be ordered by Your Honor and should not be submitted
      16   preemptively as a substitute for after photos or before photos.
      17        THE COURT:  Right.
      18        MS. BRILLEAUX:  Thank you.  So here we have no before
      19   photos, no after photos -- I know you said the before photos
      20   were uploaded -- and an undated declaration.
      21        MR. ELLIOTT:  We have a declaration that was signed
      22   and dated and uploaded on February 20.
      23        THE COURT:  Seven days.
      24        MR. ELLIOTT:  The after affidavit and the before
      25   photos were also uploaded on the same day.

11:38

1          **THE COURT:**  Why can't we get a picture of her now?

2          **MR. ELLIOTT:**  We have present day.  So you have an

3    after -- which is within, I think, six months -- and then you

4    have the present day photos.  We have the present day.  The

5    time after the chemotherapy is what she doesn't have.  That is

6    what she has represented to us.

7          **THE COURT:**  Okay.  Seven days.  I think we talked

8    about a form that people would fill out similar to the ESI form

9    so that it's not just these handwritten notes.

10          **MR. ELLIOTT:**  Okay.

11          **THE COURT:**  Let's get through these.

12          **MR. ELLIOTT:**  Okay.

13          **MS. BRILLEAUX:**  Okay.

14          **THE COURT:**  We will go back because I want to talk

15    about this whole photo issue.

16          **MS. BRILLEAUX:**  Thank you, Your Honor.

17          **THE COURT:**  Tena Johnson.

18          **MS. BRILLEAUX:**  Tena Johnson, no PFS submitted.

19          **MR. ELLIOTT:**  She does not wish to participate.

20    Actually, she hired another law firm, though.  They filed a

21    case for her in 18-02446 by David Hodges Law Firm.

22          **THE COURT:**  So we will dismiss 17-8680 with

23    prejudice.

24          **MS. BRILLEAUX:**  Thank you, Your Honor.  Delois Jones,

25    no PFS submitted.

11:39

1        **MR. ELLIOTT:**  Submitted on 2/19.

2        **THE COURT:**  Seven days.

3        **MS. BRILLEAUX:**  Sophia Knight, no PFS submitted.

4        **MR. ELLIOTT:**  We got this case referred to us,

5   Your Honor, and we believe that we have the incorrect address.

6   We sent someone to the address.  We would like 15 days to --

7        **THE COURT:**  I'm going to grant 15 days.

8        **MS. BRILLEAUX:**  Diann Lambert, no PFS submitted.

9        **MR. ELLIOTT:**  This is another duplicate case.

10        **THE COURT:**  So we dismiss this one with prejudice?

11        **MR. ELLIOTT:**  Okay.  Yes, this case should be

12   dismissed.

13        **THE COURT:**  Okay.

14        **MR. ELLIOTT:**  The other case is 18-01223 that we are

15   actively working.

16        **THE COURT:**  All right.  So we will dismiss 18-8769

17   with prejudice.

18            Marilyn Moss.

19        **MS. BRILLEAUX:**  No PFS submitted.

20        **MR. ELLIOTT:**  This is another one where we think we

21   have a wrong address.  We would like 15 days.  We sent an

22   investigator.

23        **THE COURT:**  This was filed in 2017.

24        **MR. ELLIOTT:**  So, unfortunately, some of them we

25   don't get notice of the deficiency.  I agree with you,

11:40

1   Your Honor, that it's an old case.  It was filed, but sometimes

2   we have to play defense; and then when it shows up, we go out

3   there.  If they are not there --

4           **THE COURT:**  If you don't have an address on somebody

5   who filed a case in 2017, this matter is dismissed with

6   prejudice.

7           **MR. ELLIOTT:**  Okay.

8           **MS. BRILLEAUX:**  Thank you, Your Honor.  The next

9   case --

10          **THE COURT:**  Mia Paris.

11          **MS. BRILLEAUX:**  -- is Mia Paris, no PFS submitted.

12          **MR. ELLIOTT:**  Actually, Your Honor, this case was

13  just filed in the fall.

14          **MS. BRILLEAUX:**  It was still ripe, Your Honor, for

15  the --

16          **THE COURT:**  Marilyn Moss?

17          **MR. ELLIOTT:**  Mia Paris.

18          **MS. BRILLEAUX:**  Yes.  We just dismissed Marilyn Moss,

19  which was filed in 2017.

20          **MR. ELLIOTT:**  Oh, Moss is good to go.  She is the one

21  that was the duplicate.

22          **MS. BRILLEAUX:**  No.

23          **MR. ELLIOTT:**  I'm just confused now.

24          **MS. BRILLEAUX:**  Yes.  Diann Lambert was the one that

25  you told us was a duplicate --

11:41

1          **MR. ELLIOTT:**  Oh, no, no, no, no.

2          **MS. BRILLEAUX:**  -- and we dismissed 18-8769.

3          **MR. ELLIOTT:**  Oh, no, no, no, no.  We got this

4     confused.  I'm sorry.

5          **THE COURT:**  Okay.  Mia Paris.

6          **MR. ELLIOTT:**  Can we go back?

7          **MS. BRILLEAUX:**  I think we need to go back because I

8     think we --

9          **THE COURT:**  Marilyn Moss, I dismissed it with

10    prejudice over your objection because you told me you didn't

11    think you had the right address.

12         **MS. BRILLEAUX:**  Your Honor, I think we need to go

13    back to Diann Lambert.  I think counsel represented that that

14    was a duplicate, and it may not be.

15         **MR. ELLIOTT:**  I think I got ahead of myself.  This is

16    the case, Diann Lambert, where we had a co-counsel, and we

17    think we got the wrong address.  You gave us 15 days for that.

18    That's what I thought.

19         **THE COURT:**  That was Sophia Knight.

20         **MR. ELLIOTT:**  Oh, shoot.  I messed this up.  Sophia

21    Knight, her PFS was filed on 2/19.

22         **MS. BRILLEAUX:**  That's what you said for Delois

23    Jones.

24         **MR. ELLIOTT:**  I don't have a Delois Jones.

25         **THE COURT:**  All right.  I'm going to take a 10-minute

11:42

1    recess.

2         MR. ELLIOTT:  Sorry.

3         THE COURT:  My son is here.  He wants to take me to

4    lunch.  I can't go, but I'm going to tell him hi.

5         MR. ELLIOTT:  Sorry about that.

6         THE COURT:  Ten minutes.  Go figure out what you need

7    to do, and I'll be right back.

8         (Recess.)

9         THE COURT:  Where are we?

10        MS. BRILLEAUX:  I think we need to back up.  I think

11    Tena Johnson was the last one we did correctly.

12        MR. ELLIOTT:  Correct.

13        MS. BRILLEAUX:  That was dismissed with prejudice,

14    and then we had a discrepancy.

15        MR. ELLIOTT:  We got out of order.

16        MS. BRILLEAUX:  We got out of order.  I don't know

17    procedurally if you need to vacate the rulings that have been

18    made.

19        THE COURT:  Vacate the rulings as to Delois Jones,

20    Sophia Knight, Diann Lambert, and Marilyn Moss.

21             Let's start with Delois Jones.

22        MS. BRILLEAUX:  Thank you, Your Honor.  No PFS

23    submitted.

24        MR. ELLIOTT:  It was filed on February 20.

25        THE COURT:  I will grant seven days for the

11:54

1    defendants to verify.

2              **MS. BRILLEAUX:**  Thank you, Your Honor.  Sophia

3    Knight.

4              **MR. ELLIOTT:**  Sophia Knight was filed on 2/19.

5              **THE COURT:**  Seven days to verify.

6              Diann Lambert.

7              **MS. BRILLEAUX:**  No PFS submitted.

8              **MR. ELLIOTT:**  This is the one we got from co-counsel

9    where you gave a 15-day extension due to the address issue.

10             **THE COURT:**  Fifteen days.

11             **MS. BRILLEAUX:**  Thank you, Your Honor.  Marilyn Moss.

12             **MR. ELLIOTT:**  This is a duplicate.  This one needs to

13   be dismissed and the case continue under case 18-01223.

14             **THE COURT:**  So ordered.

15             **MS. BRILLEAUX:**  Thank you, Your Honor.  I think now

16   we are caught up.

17             Mia Paris, no PFS submitted.

18             **MR. ELLIOTT:**  She was filed in September.  Again, we

19   would like time to send -- we got the wrong address, and we

20   would like our investigator to do a little more digging.  We

21   would ask for 15 days.

22             **THE COURT:**  Fifteen days.

23             Karen Smith.

24             **MS. BRILLEAUX:**  Thank you, Your Honor.  No PFS

25   submitted.

11:55

1        **MR. ELLIOTT:**  Submitted on 2/19.

2        **THE COURT:**  Seven days.

3        **MS. BRILLEAUX:**  Margaret Stubenhofer.  This is no

4    proof of use of docetaxel.

5        **MR. ELLIOTT:**  It says we uploaded the proof of use on

6    2/7, treatment dates 5/1 through 7/3/2006.

7        **MS. BRILLEAUX:**  Does it establish proof of use of

8    docetaxel?

9        **MR. ELLIOTT:**  Let's see.

10        **THE COURT:**  Seven days.

11        **MS. BRILLEAUX:**  Thank you, Your Honor.  Teresa

12    Taylor, no PFS submitted.

13        **MR. ELLIOTT:**  This is another address one.  We are

14    just asking for 15 days to confirm the address.

15        **THE COURT:**  It was filed in 2018.  I will give you

16    15 days.

17              Gwendolyn Washington.

18        **MS. BRILLEAUX:**  No PFS submitted.

19        **MR. ELLIOTT:**  Filed on 2/20.

20        **THE COURT:**  Seven days.

21        **MS. BRILLEAUX:**  We did want to note that for

22    Gwendolyn Washington, we have a PFS was uploaded for another

23    Gwen Joan Washington.  We didn't know if there was some mixup

24    here.  So the case for Gwendolyn Washington, as represented on

25    the call docket, is 18-08773.  The PFS that we have that we

11:56  1   reviewed is for a Gwen Joan Washington, 17-10652.

2           **THE COURT:**  Seven days to figure if that's one and

3   the same or different or a duplicate number or whatever the

4   issue is.

5           **MR. ELLIOTT:**  We will figure it out.

6           **THE COURT:**  I think we are done for the call docket.

7           (Proceedings adjourned.)

8                             * * *

9                         <u>CERTIFICATE</u>

10          I, Toni Doyle Tusa, CCR, FCRR, Official Court

11  Reporter for the United States District Court, Eastern District

12  of Louisiana, certify that the foregoing is a true and correct

13  transcript, to the best of my ability and understanding, from

14  the record of proceedings in the above-entitled matter.

15

16

17                         <u>/s/ Toni Doyle Tusa</u>
                           Toni Doyle Tusa, CCR, FCRR
18                         Official Court Reporter

19

20

21

22

23

24

25