UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENTS RELATES TO
*Jacqueline Mills*
Case No. 17-2689

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

In her opposition, Plaintiff concedes that, under the learned-intermediary doctrine, Defendants' duty to warn runs only to her doctor (Dr. Shah) and that proving causation requires Plaintiff to come forward with evidence that an additional or different warning would have changed Dr. Shah's decision to prescribe Taxtotere. With those legal principles in mind, summary judgment is warranted because there is no genuine factual dispute on causation. First, there is an absence of necessary evidence; Plaintiff's opposition identifies no evidence that an additional or different warning would have changed Dr. Shah's decision to prescribe Taxtotere. Second, there is undisputed evidence negating causation; Dr. Shah testified that, at the time of Plaintiff's treatment, she would have recommended the exact same Taxotere-based course of treatment to Plaintiff, even if Taxotere carried a risk of permanent and total hair loss. These undisputed facts foreclose a triable issue on causation.

Plaintiff attempts to avoid the straight-forward application of the learned-intermediary doctrine by pointing to two irrelevant facts: (1) Plaintiff now claims that if *she* had been informed of cases of permanent hair loss, she would have chosen an "alternative effective treatment" without a risk of permanent hair loss; (2) in 2018, there are alternative treatments available for the type of

breast cancer Plaintiff had in 2014. But what Plaintiff claims she—and not her doctor—would have wanted has no bearing on the causation analysis in pharmaceutical cases. *Porter*, 2008 WL 544739, at *13 (holding that plaintiff could not establish proximate cause for her causes of action of negligence, negligence per se, and strict liability because a different warning would not have impacted the treater's prescribing decision). Plaintiff does not dispute that ***in December of 2014*** her doctor would have continued to prescribe the Taxotere regimen even if she assumed Plaintiff would be interested in different treatments because, at the time, other effective alternatives were not available. Moreover, Plaintiff does not even attempt to show that there was any "alternative effective treatment" without a risk of permanent hair loss that her doctor could have prescribed in 2014.

Without evidence that a <u>different</u> warning would have resulted in a different prescribing decision, Plaintiff cannot prove that any alleged failure to warn proximately caused her alleged permanent alopecia – i.e., Plaintiff cannot establish the essential element of causation. And where, as here, there is no genuine factual dispute concerning this break in the chain of causation, Defendants are entitled to summary judgment on all of Plaintiff's claims. Because Plaintiff cannot establish causation on any of her claims, this Court should grant Defendants' motion for summary judgment.

## **BACKGROUND**

It is uncontroverted that Taxotere has never been removed from the market and oncologists continue to prescribe Taxotere to treat potentially life-threatening forms of breast cancer. *See, e.g.*, Pl.'s Opp. & Response to Defs.' Statement of Undisputed Facts, at ¶ 4. Plaintiff also does not dispute that, in December 2014, Dr. Shah recommended a chemotherapy regimen called TCH,

which included docetaxel (T),[1] carboplatin (C), and Herceptin (H), because of Plaintiff's HER2 positive diagnosis. *Id.* at ¶ 6. Dr. Shah had no doubt that the TCH regimen was "the go-to regimen" for her diagnosis. *Id.* Plaintiff also does not dispute that she relied on Dr. Shah's judgment in recommending the best chemotherapy regimen in order to give Plaintiff the best chance of survival. *Id.* at ¶ 8.

Plaintiff does not dispute that Dr. Shah continues to use the TCH regimen and would still consider it for HER2 positive patients, like Plaintiff, today because "it's standard of care in this setting." *Id.* at ¶ 15.[2] Plaintiff elicited no testimony from Dr. Shah on whether Dr. Shah would have recommended another chemotherapy regimen if a different warning had been provided by Defendants in December 2014.

As to the two most crucial facts, Plaintiff claims she disputes them but her contrary evidence does not actually put either fact into dispute. As Defendants demonstrated in their motion and supporting facts:

- While Dr. Shah did note that she might also consider a new regimen today if requested by a patient, she would not have recommended it for Plaintiff because it was not, at the time of Plaintiffs' treatment, the "standard of care" for her cancer type. *Id.* at ¶ 17.

---

[1] Docetaxel is the generic version of Taxotere. For ease of reference, Defendants use Taxotere interchangeably.

[2] Plaintiff does not dispute that it is Taxotere is the "standard of care." Rather Plaintiff seems to allege—without evidence—that this standard of care recommendation is predicated on false and misleading promotion. But Plaintiff provides no evidence to support such an allegation. Nor does she support the implied allegation that the standard of care would change with additional information. Such a claim would be especially difficult given that any purported misleading communication ended in 2010 and was made public with FDA warning letters in 2009. *See* Second Am. Master Compl. ¶¶ 212-213.

3

- Dr. Shah would have still made her recommendation for the TCH regimen even if she assumed that Taxotere had a risk of permanent and total hair loss and she assumed that Ms. Mills would be interested in different treatments. *Id.* at ¶ 18.

Plaintiff "dispute[s]" these facts by noting that two immaterial facts: (1) Dr. Shah "would advise [Ms. Mills] of both options [TCH and weekly paclitaxel] *today*"; (2) Dr. Shah would have counseled her patient about the risk of irreversible or permanent hair loss if she had been warned of that risk. *Id.* at ¶¶ 17-18. But Plaintiff does not dispute that the weekly paclitaxel regimen was not an acceptable regimen when Plaintiff was treated nor does she dispute that Dr. Shah would have made the same treatment decision even if she assumed that Taxotere had a risk of permanent and total hair loss and she assumed that Ms. Mills would be interested in different treatments.

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE-TO-WARN CLAIMS

Plaintiff acknowledges that the learned-intermediary doctrine is a settled doctrine in cases involving prescription medications in Georgia. Pl.'s Opp. at 8-9 (citing *Presto v. Sandoz Pharm. Corp.*, 226 Ga. App. 547, 548 (1997)). Plaintiff also acknowledges that Georgia does not recognize a "heeding" presumption so it is her burden to "put forth evidence that [Dr. Shah] would have changed [her] course of conduct had an adequate warning been provided." *Id.* at 11. Plaintiff incorrectly suggests that she can meet this burden with testimony that the prescriber "would have communicated the adequate warning to plaintiff." *Id.* at 11-12 (emphasis omitted). As set out fully in Defendants' motion, this is not the law. *Porter*, 2008 WL 544739, at *13 (holding that plaintiff could not establish proximate cause for her causes of action because a different warning would not have impacted the treater's prescribing decision); *Hawkins v. Richardson-Merrell, Inc.*, 147 Ga. App. 481, 483 (1978) ("Prescription drugs are likely to be

4

complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative.") (internal quotation omitted); *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) (holding that "pharmaceutical companies have a duty to warn only the physicians who will be prescribing the drug to their patients because the physicians are the ones with the expert medical knowledge regarding the safety and proper use of a particular drug").

Nor do any of the cases cited by Plaintiff stand for this proposition. In *Courson v. Wright Medical Tech., Inc.*, 2013 WL 559973, at *9-10 (M.D. Ga. Oct. 11, 2013), the court granted summary judgment on a failure to warn claim related to one medical device because the plaintiff's doctor testified that "even if he was warned that the extraction device was a prototype, he would have proceeded with the same course of conduct" but denied the motion as to the hip implant because the plaintiff provided an affidavit that the doctor would not have used the implant if he would have had the warning suggested by the plaintiff. Similarly, in *Weilbrenner v. Teva Pharmaceuticals USA, Inc.*, 696 F. Supp. 2d 1329, 1341-42 (M.D. Ga. 2010), the court denied summary judgment because the plaintiff had provided a signed affidavit from her doctor that he "most likely" would not have prescribed the medication if he had the additional information suggested by plaintiff. Finally, in *In re Aredia and Zometa Products Liab. Litig.*, 2010 WL 5136148, at *2-3 (M.D. Tenn. Dec. 7, 2010), that court denied summary judgment because the prescribing physician would have taken "a different course of conduct" with the new information including gathering more information on additional risk factors from the patient.

All of the cases cited by Plaintiff hinge on what the prescribing physician would have done with the additional information that the plaintiff suggested was necessary. And, here, it is undisputed that Dr. Shah would have made the same treatment decision even if she assumed that Taxotere had a risk of permanent and total hair loss and she assumed that Ms. Mills would be interested in different treatments. Pl.'s Opp. & Response to Defs.' Statement of Undisputed Facts ¶ 18. It is also undisputed that Dr. Shah would not have prescribed the possible alternative treatment suggested by Plaintiff (i.e., weekly treatments with paclitaxel) at the time of her treatment because it was not "standard of care" at the time. *Id.* at ¶ 17. Moreover, the journal article suggesting that such a regimen was even possible had not been published when Dr. Shah recommended and prescribed Plaintiff's chemotherapy plan. *Id.* at ¶ 16. Accordingly, under the case law cited by both Plaintiff and Defendants, Plaintiff has not met her burden of establishing a material dispute on causation.

Plaintiff's proffered testimony on whether Dr. Shah would have counseled Plaintiff on a risk of permanent and total hair loss is completely irrelevant to causation as a matter of law. Plaintiff's preference for another effective alternative without similar risks also fails to raise a factual dispute for three reasons. First, Dr. Shah testified that she would have continued to prescribe Plaintiff with Taxotere at the time even if she assumed that Ms. Mills would be interested in different treatments. *Id.* at ¶ 18. Second, Plaintiff provided no evidence that there was any other effective alternative available at the time she was treated. Third, Plaintiff provided no evidence that there was any other effective alternative without similar risks of permanent hair loss.

To survive summary judgment, Plaintiff must adduce evidence that a different warning would have changed the course of care with a medicine that would have also eliminated her cancer. Plaintiffs, like Ms. Mills, who have not established the same in discovery may not proceed with

6

their suits as a matter of law. *See Porter*, 2008 WL 544739, at *13; *see also Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1130 (D. Kan. 2002) (prescribing physician's decision "breaks the causal chain as to the allegedly inadequate warnings."). Accordingly, the Court should grant Defendants summary judgment on Plaintiff's claims for failure to warn under strict product liability and negligence.

## II.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S ADDITIONAL CLAIMS

### A.  All of Plaintiff's Claims Must be Dismissed for Lack of Causation Evidence.

Under Georgia law, the "'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs." *Catlett*, 379 F. Supp. 2d at 1381. Plaintiff recognizes this as a correct statement of law but then tries to avoid the application of this principle by noting that, in *Catlett*, the court was dealing with claims against sales representatives, not the drug manufacturer. But Plaintiff does not dispute that the learned intermediary doctrine applies to the causation analysis in the pharmaceutical context. Just as the testimony of Plaintiff's prescribing physician breaks the causal chain on her failure to warn claims, so to does this testimony break the causal chain for her negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, fraud and deceit, and breach of express warranty claims. Nothing in *Catlett* suggests the contrary.

### B.  Plaintiff Has Abandoned Her Fraudulent or Negligent Misrepresentation Claims.

Plaintiff no longer intends to pursue her negligent and fraudulent misrepresentation claims. Pl.'s Opp. at 19-20. Because summary judgment is not opposed, it should be granted on these two counts.

C.  **Plaintiff's Fraud-Based Claims Should Also Be Dismissed Because There Is No Evidence of a Fraudulent Representation or Reliance on Any Representations.**

Plaintiff asserts causes of action for fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. Each of these causes of action requires the plaintiff to prove, among other elements, that Defendants made a misrepresentation to Plaintiff and Plaintiff relied on that representation. "A plaintiff asserting a fraud claim under Georgia law must establish five elements: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff, and (5) damage to the plaintiff." *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1340 (N.D. Ga. 2016).

Plaintiff is correct that the manufacturer's duty was to her prescribing physician. But Plaintiff still cannot show the required representation or reliance. Plaintiff points to no statement provided to Dr. Shah that was "false" and made with the intent to induce Dr. Shah from acting. Nor is there any evidence that Dr. Shah relied on any such statement. Indeed, Dr. Shah testified that she would have made the same decision at the time even assuming that a risk of permanent and total hair loss. Pl.'s Opp. & Response to Defs.' Statement of Undisputed Facts ¶ 18. Defendants are entitled to summary judgment on Plaintiff's fraudulent misrepresentation, fraudulent concealment, and fraud and deceit claims.

D.  **Plaintiff Has Not Established the Elements of Her Express Warranty Claim.**

To maintain a claim for breach of express warranty, Plaintiff must prove (1) the existence of a warranty, (2) material breach of the warranty, (3) the breach caused the damages. *U.S. Faucets, Inc. v. Home Depot U.S.A. Inc.*, No. 1:03-cv-1572-WSD, 2006 WL 1518887, at *10 (N.D. Ga. May 31, 2006). An express warranty is an "affirmation of fact or promise" relating to the goods that became "part of the basis of the bargain." O.C.G.A. § 11-2-313(1)(a). Plaintiff's breach of express warranty claim fails because, as discussed above, Plaintiff cannot satisfy the causation

8

requirement. Nor is there any evidence that Defendants made any express that became "part of the basis of the bargain." Plaintiff provides no argument in her opposition on express warranty. Because Plaintiff has waived any argument on this claim, this Court should grant summary judgment on Plaintiff's breach of express warranty claim.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment on all of Plaintiff's claims.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*