UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                                SECTION "N" (5)

**THIS DOCUMENT RELATES TO**
*Cantwell v. Sanofi U.S. Services Inc., et al.,*
*Nos. 2:18-cv-11657; 2:19-cv-00201*

**PLAINTIFF CANTWELL'S REPLY TO DEFENDANT SANOFI U.S. SERVICES, INC. AND SANOFI-AVENTIS U.S. LLC'S RESPONSE IN OPPOSITION TO MS. CANTWELL'S MOTION TO QUASH OR <u>MODIFY DOCUMENT SUBPOENA AND FOR PROTECTIVE ORDER</u>**

      Plaintiff Debra Cantwell, by and through counsel, submits this Reply to Defendant Sanofi U.S. Services, Inc. and Sanofi-Aventis U.S. LLC's Response in Opposition to Ms. Cantwell's Motion to Quash or Modify Document Subpoena and for Protective Order and respectfully requests this Court enter a Protective Order limiting the scope of discovery.

      As set forth in detail hereinbelow, Plaintiff Cantwell does not contest she is required to produce all relevant documents within the scope of discovery set out in Rule 26 of the *Federal Rules of Civil Procedure*, including the specific discovery requirements ordered by this Court through its Pretrial Orders and Court-approved Plaintiff's Fact Sheet. Plaintiff Cantwell seeks protection only for the following general categories of documents:

      (1) documents protected by the attorney-client privilege, and

      (2) emails, including document attachments, of third-parties in which Plaintiff Cantwell was not a sender and/or recipient for which third-parties have a "personal right or privilege" in their private information contain the requested documents.

1

I.     **PROCEDURAL BACKGROUND**

On October 8, 2018, Sanofi U.S. Services, Inc. and Sanofi-Aventis U.S., LLC (hereinafter "Sanofi") issued a subpoena to Debra Cantwell under the authority of the U.S. District Court for the Eastern District of Louisiana.[1] At the time of service of the subpoena, Ms. Cantwell was not a party to the MDL litigation. Consequently, she challenged the jurisdiction of the MDL Court and sought protection from the subpoena by filing a Motion to Quash or Modify Document Subpoena to Non-Party and for Protective Order in her home district and the forum designated for compliance - the U.S. District Court for the Western District of Washington – on November 6, 2018, through attorney Elizabeth McLafferty of Schroeter, Goldmark & Bender.

Subsequently, Ms. Cantwell retained the undersigned counsel and a Complaint was filed on her behalf on November 29, 2018. (Doc. 1.) Based on her newly-acquired status as an MDL Plaintiff, Ms. Cantwell's counsel withdrew her challenge to the jurisdiction of the MDL Court and her Motion to Quash or Modify Document Subpoena was transferred to this Court and docketed on January 28, 2019. (Doc. 16.) Pursuant to this Court's instructions at its January 18, 2019, hearing, Sanofi filed its Opposition to Cantwell's Motion to Quash or Modify Document Subpoena on February 15, 2019. (Doc. 6222). Elizabeth McLafferty withdrew her representation as counsel for Plaintiff Cantwell by order entered February 26, 2019. (Doc. 6345.)

II.    **RESPONSIVE DOCUMENTS IN PLAINTIFF CANTWELL'S POSSESSION**

Following the withdrawal of Ms. Cantwell's previous counsel on the subpoenaed documents issue, Elizabeth McLafferty, the undersigned counsel retained the services of Meta-e Discovery to obtain all documents in Ms. Cantwell's possession in compliance with the production

---

[1] Exhibit A – Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action.

requirements of Pretrial Order No. 71A Governing Plaintiffs' Responsibilities Relevant to ESI.[2]

The following table generated by Meta-e Discovery sets out the universe of responsive documents provided by Plaintiff Cantwell:[3]

| **Total documents** | **5,152**[4] | |
|---|---|---|
| | | |
| **Total parent emails** | 4,408 | These are all emails identified as parent emails by the processing software. This does not include three emails that are attachments to other emails. |
| **Cantwell emails** | 1,766 | These emails include the terms debbie.cantwell@gmail.com or debbie.cantwell in the header or body of the email. |
| **Non-Cantwell emails** | 2,642 | These emails do not include the terms debbie.cantwell@gmail.com or debbie.cantwell in the header or body of the email. |
| | | |
| **Total attachments and stand-alone documents** | 744 | |
| **Attachments** | 418 | These are all documents identified as attachments to emails, including three emails. |
| **Stand-alone documents** | 326 | These are files that are not attached to any email. |

Meta e-Discovery has estimated these 5,152 individual documents total approximately 10,500 pages.

---

[2] Meta-e Discovery is the vendor which employs "Plaintiffs' ESI Consultant Paul McVoy" referenced on page 2 of PTO 71A.
[3] See Exhibit B o – March 7, 2019, email from Adam Magazine of Meta-e Discovery.
[4] Some of these documents have been previously produced by Plaintiff Cantwell as part of her PFS discovery obligations – though admittedly not formatted in compliance with PTO 71A. These previously-produced documents will be produced by Meta-e Discovery in compliance with PTO 71A and the Court's ruling in this matter.

### III. ARGUMENT

**A. Sanofi's Subpoena Exceeds the Scope of Discovery**

"Subpoenas issued for discovery purposes, such as those at issue here, are subject to the discovery limitations outlined in Rule 26(b)."[5] Under Rule 26,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b).

As set forth below, this subpoena seeks information which is (1) protected by the attorney-client privilege; and (2) unrelated to the claims and defenses in Cantwell's case, the burden is not proportionate to any purported need for the information; and (3) violates the personal interest and privileges of the Third-parties whose information is sought.

**B. Sanofi is Not Entitled to Documents and Information Protected by the Attorney-Client Privilege**

 1. <u>Cantwell's Attorney-Client Privilege Has Not Been Waived</u>

Defendant Sanofi takes the position it is entitled to communications between Plaintiff Cantwell and her counsel because she allegedly "waived" her attorney-client privilege. (Doc. 6222 at p. 15-19.) Defendants argue a "waiver" occurred when Plaintiff Cantwell contacted the firm of Bachus & Schanker in October 2018 – with whom she had an attorney-client relationship regarding her potential Taxotere claim - after being served with the subpoena now at issue. Defendants' waiver argument does not attempt to dispute that Cantwell's communications with her counsel Robert Weinberger in 2015 were, in fact, privileged. Instead, Defendants speculate about the

---

[5] *Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D.Tex.2003).

content and purpose of the October 2018 communications between Ms. Cantwell and counsel at Bachus and Shanker and unilaterally conclude a waiver of the attorney-client privilege occurred. However, this position is supported by neither the facts nor the applicable law.

Well-established Fifth Circuit law has defined attorney-client privileged communications as: 1) confidential communications; 2) made to a lawyer or his subordinate; 3) "for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."[6] The attorney-client privilege can be waived in two ways: voluntarily disclosing privileged communications or by inadvertently disclosing the communication.[7] "Waiver is a fact-specific question that should be addressed on a case-by-case basis."[8]

Without the benefit of being privy to the communications between Plaintiff Cantwell, Defendant Sanofi presumes to know the full extent and purpose of her communications with counsel at Bachus & Schanker in October 2018 after being served with this subpoena.[9] However, determination of whether a waiver of attorney-client privilege "is highly fact-specific" and cannot be merely presumed.[10]

Plaintiff Cantwell asserted her attorney-client privilege over the requested documents produced an Affidavit on this issue stating:

> ¶5. Sanofi's request for all of my communications with any and all attorneys I have consulted also constitutes a significant burden. I do not wish to produce all communications with my attorneys, because those communications include confidential information I believe would be protected by the attorney client privilege. I do not wish to generally waive my privilege. I am willing, however, to provide the Court the email communications between myself and

---

[6] *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).
[7] *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cr. 1993).
[8] *Id.* at 1434.
[9] Defedants' assertion that no attorney-client privilege attached to the October 2018 communication between Cantwell and representatives of Bachus & Schanker based on her 11/6/18 Declaration is baseless. The Cantwell Declaration was provided in support of her Motion to Quash filed in U.S. District Court in the State of Washington by her newly-retained counsel, Elizabeth McLafferty. Nothing about the retention of Ms. McLafferty in any way precludes attorney-client protection over Cantwell's October 2018 communications with Bachus & Shanker.
[10] *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978).

5

>    Robert Weinberger, my attorney, and Mr. Weinberger's paralegal, Robert
>    Rabicoff, related to the Facebook post I edited on December 17, 2015, in order
>    to dispel any accusations that I did so at the direction of my attorneys.

Affidavit of Debra Cantwell dated Dec. 11, 2018, and attached as Exhibit C.

Consequently, Plaintiff Cantwell moves the Court to conduct an *in camera* review of the October 2018 communications between Cantwell and counsel at Bachus & Shanker. Upon review, Plaintiff prays the Court will enter a Protective Order quashing Defendants' request for attorney-client privileged discovery including subpoena categories B.1., 3., 5., 6., 8., and 9.

   2.   The "Crime-fraud" Exception is Inapplicable

Alternatively, Defendants argue the "crime-fraud" exception applies to Cantwell's communications with her then-counsel Robert Weinberger in which he allegedly "requested that she delete relevant Facebook comments." (Doc. 6222 at p.18.) Defendants argue Mr. Weinberger's alleged "request" resulted in spoliation of evidence. Again, Defendants' assumptions concerning the communications between Cantwell and her attorneys is incorrect. Furthermore, Defendants do not even argue they have not been provided with all posts previously Facebook comments deleted by Cantwell. Instead, the attempt to apply a blanket exception to attorney-client protected materials by incorrectly assuming some nefarious actions occurred.

Cantwell has previously provided a Declaration stating

>    I edited my November 22, 2015, Facebook post after a conversation with
>    my legal representatives. However, <u>my attorney did not direct or advise me
>    to delete a post on social media.</u>

Exhibit D – Declaration of Debra Cantwell in Support of Motion to Quash dated 11/6/18 (emphasis added). Additionally, she has produced all comments deleted from her Facebook page on which Defendants' base their spoliation argument.

Should the Court have concerns as to whether some misconduct has taken place which might invoke the "crime/fraud" exception to her attorney-client privilege, Plaintiff Cantwell prays

the Court will conduct an *in camera* review of the communications between Cantwell and her counsel concerning her November 2015 deletion of Facebook posts.  Upon review, Plaintiff prays the Court will enter a Protective Order quashing Defendants' request for attorney-client privileged discovery including subpoena categories B.1., 3., 5., 6., 8., and 9.

**C. Request for Third-Party Documents Sought by Sanofi Should be Quashed**

The remaining category of discovery sought by Defendants for which Cantwell seeks the Court's protection is comprised of emails of third-parties in which Plaintiff Cantwell was not a sender and/or recipient for which the third-parties involved have a "personal right or privilege" in the private information contained in the requested documents.  According to Meta e-Discovery, 2,642 e-mails of the 4,408 total parent email documents do not reflect Ms. Cantwell as either the recipient and/or sender.  However, if Ms. Cantwell did appear later in any email strings, they would be captured and produced as relevant to the claims and defense in her case.

1. <u>Third-Party Emails are Unrelated to Claims and/or Defenses of Cantwell's Claim for Permanent Hair Loss, and Therefore, Non-discoverable</u>

"The determination whether information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action."[11]  "Under Rule 26(b)(1) the Court must focus on the claims and defenses involved in the action."[12]

Plaintiff Cantwell's claims arise from her permanent hair loss as the result of her use of Taxotere produced by Defendants herein.  While Cantwell agrees she has placed into controversy all information relevant to her claims and any defenses thereto, she cannot agree the third-party email communications in which she was neither the sender nor recipient, and she has no knowledge of their content, have any bearing on her claims or Sanofi's defenses to same.  Ms. Cantwell's total

---

[11] *Amtax Holdings 2001-VV, LLC v. Warren Homes, LLC*, 2015 WL 222369 at *2 (E.D. La. Jam. 14, 2015) *citing* FED. R. CIV. P. 26(b)(1) Advisory Committee's Notes, 2000.
[12] *Id.*

lack of relation to these third-party emails, by definition, make them beyond the scope of discovery.

2. Requests for Third-party Emails are Facially Overbroad and Present an Undue Burden

"A Court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."[13]  Categories 1 and 2 of Sanofi's subpoena are wholly unrestricted as to timeframe; subject matter, privilege; relation to claims asserted by Cantwell or defenses thereto; or burden imposed.  Sanofi's subpoena expressly seeks production of:

1. All documents or communications between, among, to or from you and the plaintiffs or plaintiff's counsel in any Taxotere case;
2. All documents or communications between, among, to or from you and any member of the "Taxotears" Facebook Group and the "Taxotears" Google Group.

*See* Ex. A.

The Fifth Circuit has held,

> [t]o determine whether the subpoena presents an undue burden, we consider the following factors:  (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (6) the particularity with which the party describes the requested documents; and (6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In the instant case, all six (6) factors weigh in favor of a finding of undue burden for categories 1 and 2 of the subpoena as they relate to the 2,642 Third-party emails in Ms. Cantwell's possession:

- Cantwell was neither a sender or recipient of the emails, nor is there any evidence she is even aware of their content.  Therefore, they are not relevant to her claims or Sanofi's defenses;
- Sanofi has no need of these Third-party emails to present any defense to Cantwell's claim for permanent hair loss resulting from Taxotere usage;
- These categories of the subpoena are not limited to any connection whatsoever to issues raised by the Taxotere lawsuits.  They seek "all documents and communications" between

---

[13] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

a group of women – regardless of whether those documents relate to any claim or defense in Cantwell's – or any other – pending lawsuit;
- These categories contain absolutely no time restriction;
- The requests are not particularized. Instead, they seek "all documents or communications" regardless of subject matter, including documents protected by the attorney-client privilege; and
- The burden imposed on Ms. Cantwell is enormous. She has already spent many hours securing these documents. She, and her counsel, should not be required to review some 2,642 emails in which she had no involvement and have no relevance to her claim. Further, as to Category 1, Cantwell has no personal knowledge as to who may, or may not, be a Plaintiff in this MDL litigation.

Based on the application of the Fifth Circuit's *Wiwa* six-factor analysis to the express language of categories 1 and 2 of Sanofi's subpoena, the requests are facially overly broad, and therefore, present an undue burden on Plaintiff Cantwell and should be quashed. Cantwell prays the Court will enter a Protective Order limiting the scope to production under these categories to only those emails in which Cantwell was involved and which relate to claims and defenses presented in the instant case.

3. <u>Requests for Third-party Emails Violate Personal Rights and Privileges of Third-parties</u>

Lastly, Sanofi's demand for production of Third-party emails violates the personal rights and privileges of those involved. As set out hereinabove, the Third-party emails at issue do not involve Plaintiff Cantwell as either a sender and/or recipient, and therefore, are outside the scope of discovery pursuant to Rule 26.

The Third-parties involved in these emails have a personal right to their personal information remaining private. Taxotears Facebook and Google groups are not public forums. They are forums limited to breast cancer survivors and in some cases very specific, personal, private and medical issues are discussed. Consequently, these participants possess a "personal right or privilege" in having their communications remain private. This "personal right or privilege" with regard to documents sought via subpoena is well-recognized in this Circuit and has

been consistently upheld as a basis to confer standing to quash a subpoena issued to a third-party. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979).

The Third-parties whose email information is sought by the subject subpoena have no knowledge their private information is being sought from Cantwell. However, Sanofi has previously issued a subpoena for identical information to Google. (Ex. E attached hereto.) Google provided notice to each member of the Google Taxotears group, allowing for motions to quash and/or formal objections and directed all questions to defense counsel Irwin Fritchie Urquhart & Moore, LLC. (Ex. F attached hereto). Plaintiff Cantwell has no knowledge of what motions to quash or formal objections have been raised and should not be forced to forfeit the "personal rights and privileges" of these Third-parties through the production of their private information which is clearly irrelevant to the issues and defense presented in the instant litigation.

### IV. CONCLUSION

Based on the foregoing, Plaintiff Cantwell prays the Court will conduct an *in camera* review and enter a Protective Order prohibiting the production of attorney-client protected information as included in Categories 1, 3, 5, 6, 8 and 9; and further, quash Defendants' request for production of Third-Party emails and documents as outside the scope of discovery and in violation of the interests and property rights of others as included in Categories 1 and 2.

Dated this 8th day of March, 2019.

Respectfully submitted by:

/s/ *Michael P. McGartland*
Michael P. McGartland
MS Bar No. 100487
McGartland Law Firm, PLLC
University Centre I, Suite 500
1300 South University Drive
Fort Worth, Texas 76107
Telephone: (817) 332-9300
Facsimile: (817) 332-9301
mike@mcgartland.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

Dated this 8th day of March, 2019.

/s/ *Michael P. McGartland*
Michael P. McGartland