1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3       IN RE: TAXOTERE (DOXETAXEL)      16-MDL-2740

4       PRODUCTS LIABILITY LITIGATION    SECTION "H"

5                                        MARCH 13, 2019

6

7
                 TRANSCRIPT OF THE PROCEEDINGS BEFORE
8                  THE HONORABLE MICHAEL B. NORTH,
                   UNITED STATES MAGISTRATE JUDGE
9

10      APPEARANCES:

11

        For the Plaintiffs:
12

13      Dawn M. Barrios, Esq.

14      (by telephone)
        Lee McCartland, Esq.
15      Michael McCartland, Esq.
        Emily Jeffcott, Esq.
16

17      For the Defendants:

18      Jeremiah S. Wikler, Esq.
        Patrick Oot, Esq.
19      Douglas J. Moore, Esq.
        John F. Olinde, Esq.
20
        (by telephone)
21      Geoffrey Coan, Esq.
        Kimberly Beck, Esq.
22      Matthew P. Lambert, Esq.

23

24      Reported By: SANDRA T. MINUTILLO, CCR
                      500 Poydras Street
25                    New Orleans, LA 70130
                      (504) 589-7781

```
 1                    THE CASE MANAGER:  MDL 16-2740.  In Re:
 2      Taxotere Products Liability litigation.
 3                    Counsel, please make your appearances for
 4      the record.
 5                    MR. MOORE:  Douglas Moore on behalf of
 6      Sanofi.
 7                    MR. OOT:  Patrick Oot on behalf of
 8      Sanofi.
 9                    MR. WIKLER:  Jeremy Wikler on behalf of
10      Sanofi.
11                    MS. BARRIOS:  Dawn Barrios, plaintiff
12      liaison counsel.
13                    MR. OLINDE:  And John Olinde as liaison
14      for 505(b)(2) defendants.
15                    THE COURT:  All right.  Who is handling
16      the motion for the PSC?
17                    MS. BARRIOS:  Your Honor, with regard to
18      the PSC motion, the McGartlands are on the line.
19                    THE COURT:  Okay.  And who is it on the
20      line that's handling the motion?
21                    MS. MCGARTLAND:  Your Honor, you have
22      both Mike and Lee McGartland on behalf of plaintiff
23      Debra Cantwell.
24                    THE COURT:  Okay.  As to Category One,
25      let me ask a question, Sanofi.  How many plaintiffs
```

1    are there in this litigation right now?

2              MR. WIKLER:  Your Honor, there are

3    roughly 12 thousand plaintiffs in this litigation, I

4    think, at this time.

5              THE COURT:  All right.  That's what I

6    thought.  About 12 thousand.  Probably more than 12

7    thousand plaintiffs.

8              How am I to require one of those 12

9    thousand plaintiffs to produce communications with

10   anyone else who might be another one of those 12

11   thousand plaintiffs and/or their lawyers?

12             MR. WIKLER:  Your Honor, we've had some

13   -- this is Jeremy Wikler on behalf of Sanofi.  We've

14   had some conversations with Ms. Cantwell's former

15   counsel.

16             THE COURT:  I'm listening.  I'm just

17   trying to turn up the volume.

18             MR. WIKLER:  That's fine.  I can turn up

19   the volume, too, if you need me to.

20             We've had some communications with

21   Ms. Cantwell's former attorneys about this issue of

22   what the subpoena says versus, you know, breaking it

23   down to what we're really getting at and what we want.

24             Essentially, the information that we were

25   seeking is the relevant and discoverable information

1    that's required by the plaintiffs fact sheet and, you

2    know, PTO 71 and your Taxotere discovery order.  It's

3    the same information.

4            So as far as her having to go identify

5    who's a plaintiff, I understand that entirely, that

6    position they're taking, and we're not asking for

7    that.  If she, you know, takes the search terms from

8    PTO 71 and runs those across her email accounts and

9    other places that she might have electronically-stored

10   information, that's what we're looking for, which is

11   the same thing she'd be required to produce under the

12   PFS.

13           At the time that we made the request, she

14   was a non-party.  Now, she's a party.  Essentially, as

15   far as that electronically-stored information is

16   concerned, that's what we're seeking.

17           THE COURT:  All right.  For the PSC, I

18   mean there's really no justification for her not

19   complying with the requirements that are already in

20   the litigation for individual plaintiffs.  Right?

21   Whether it's ESI protocol, the plaintiffs fact sheets,

22   what have you.

23           If we're not talking about this more

24   overbroad discovery, I don't know why we're even

25   talking.  Somebody on the phone want to address that?

1          MS. MCGARTLAND:  Yes, sir, your Honor.
2    Lee McGartland for Ms. Cantwell.  It was my
3    understanding that they were seeking -- Based on
4    language in the subpoena, they were seeking all
5    communications on all issues for all times with both
6    the plaintiff and/or any of their counsel that might
7    be in the possession of Ms. Cantwell by virtue of
8    being an administrator -- one of the administrators of
9    this google group.
10          THE COURT:  That's how the subpoena was
11   written, so I understand why you would think that.
12          Here's what I'm going to do.  I'm simply
13   going to issue an order confirming that she's subject
14   to the requirements that are already set forth in any
15   number of orders; whether it's my Taxotere order, the
16   ESI protocol, or the requirements of the plaintiffs
17   fact sheet.
18          Now to the extent that Ms. Cantwell has
19   produced information already that is not in the
20   appropriate format, I'm going to order her to go back
21   and do that.  There are requirements as to the format
22   of these productions.  Screen shots, printed-out
23   copies of facebook posts, are not appropriate.
24          So to the extent that she has not done
25   that, I'm going to order her to go back and produce

1    the information consistent with the requirements of

2    the various pretrial orders and orders of the court

3    that are already in the record.  All right.

4              MS. MCGARTLAND:  Yes, sir.

5              MR. WIKLER:  Your Honor, just to seek

6    some clarification, if I may.  In the most recent

7    brief from Ms. Cantwell, in her reply brief, she said

8    that she -- from the Taxotears group, was producing

9    only emails that she responded to.  Not emails she

10   received by virtue of being in the group, but didn't

11   respond to.

12             THE COURT:  Well, my appreciation of what

13   that means, and I could be wrong -- But I'm going to

14   cut through that because I'm not going to make her

15   stand in the shoes of the custodian of the entirety of

16   the emails that go across the ether from all of these

17   people that are in this group.

18             Okay.  I'm going to require her to do

19   that which is required of all the plaintiffs in this

20   litigation and no more.

21             MR. WIKLER:  And if I may.  The other

22   plaintiffs who are members of the Taxotears group are

23   producing all the communication they receive from the

24   Taxotears at googlegroups.com email account because,

25   when they join the group, they then are part of that

1  distribution list just like if there was an Eastern

2  District of Louisiana judges distribution list and you

3  were on it.  Then you would receive those emails and

4  those emails would be directed to you.

5              So all the plaintiffs who are members of

6  this group are producing those emails because they

7  received them.

8              THE COURT:  So you're just asking her to

9  produce the same thing that's been produced now

10 multiple times?

11             MR. WIKLER:  No, no.  Each of the

12 individual plaintiffs are producing different messages

13 they received because of the deficiencies in the

14 production and she's been in the group a lot longer

15 than most of the plaintiffs.

16             So she joined, I believe, in April of

17 2010.  She would have been receiving email messages.

18 Whether she responded to that message or not, those

19 emails are in her possession, custody, or control; and

20 if they're discoverable under the PTO 71 --

21             THE COURT:  I am going to require her to

22 comply with the requirements that apply to the

23 plaintiffs in this litigation.  It's that simple.

24 Okay.

25             MR. WIKLER:  Okay.  And I apologize.  I'm

1    not trying to --
2                THE COURT:  I don't know what she's going
3    to do once I order her to do that.
4                MR. WIKLER:  Right.
5                THE COURT:  If do you think her
6    production, after I order her to do that, is
7    defective, then you can bring it to my attention at
8    one of our many discovery conferences.
9                MR. WIKLER:  Okay.  Based on what she had
10   said in her brief about not producing email messages
11   if she didn't respond --
12               THE COURT:  Well, she was also responding
13   in her brief to a subpoena that was far broader than
14   what we're talking about right now.
15               MR. WIKLER:  Understood, your Honor.
16               THE COURT:  And when you all narrow the
17   issues on these discovery disputes, I would appreciate
18   it if somebody would let me know they've been
19   narrowed, so I'm not digging through and reading a
20   bunch of briefing that no longer applies to the true
21   dispute at hand.
22               MR. WIKLER:  Understood, your Honor.
23               THE COURT:  Okay.  Now, as to the issue
24   of attorney/client privilege.  I am not going to find
25   that Ms. Cantwell waived her attorney/client privilege

1   with Weinberger or with Bachus and Schanker based on

2   what I consider to be highly technical arguments that

3   you all are making.

4           She clearly has or has had

5   attorney/client relationships with Mr. Weinberger,

6   Bachus and Schanker, either/or, both at one time, and

7   I'm simply not going to order that she has waived her

8   privilege by sending documents between her and

9   Weinberger to Bachus and Schanker for some period of

10  time before she hired them.  I'm not going to wade

11  into when they were enrolled in this case.  None of

12  that is important to me.

13          If she's communicating with those lawyers

14  with whom at some point she has had an attorney/client

15  relationship, those communications are privileged and

16  she's not waived them by sending them back and forth

17  just to those lawyers.

18          The exception to that is that I will look

19  in camera at whatever communications were had between

20  Weinberger and her regarding this facebook comment

21  deletion issue just as I did with Ms. Free (spelled

22  phonetically).

23          I've not seen those emails.  I understand

24  the argument why you want me to look at them or it.  I

25  don't know what's involved.  But I'm going to order

1   that email to be produced to me for in-camera review

2   and I will handle it just as I did with -- I think

3   it's "Kelly."  Kelly Free.  Is that her first name?

4                    MR. WIKLER:  Kimberly, I believe.

5                    THE COURT:  Well, with Ms. Free.  I'm

6   going to handle it the same way as I did with her.

7                    MS. MCGARTLAND:  Your Honor, Lee

8   McGartland.  We had pulled those exhibits to have

9   submitted to you by hand today.  Unfortunately, we

10  weren't able to get there.  Do you want those emailed

11  to your office or would you prefer those overnighted?

12                    THE COURT:  You can email them.  That's

13  fine.  How many documents are we talking about?

14                    MS. MCGARTLAND:  I would say less than 20

15  pages.  Seven documents, which includes her affidavit

16  and declaration, and then a handful of emails

17  regarding that communication.

18                    THE COURT:  Okay.  So you can send those

19  to me by email.

20                    As to the remainder of the request in the

21  subpoena, I noticed in -- it looked like the order,

22  the proposed order that plaintiff's counsel had

23  submitted to the court in Washington, there was a

24  suggestion that Ms. Cantwell still had access to both

25  the facebook post and the comments that predated her

1    editing of that post in December of 2015, because that

2    proposed order was directing Ms. Cantwell to produce

3    that information.

4              So is that information still accessible

5    to her?

6              MS. MCGARTLAND:  Yes, sir, and I believe

7    it was produced by her previous counsel.  If defense

8    counsel has some objection as to the form it was

9    produced in, then we can certainly address that.  But

10   it was my understanding that those two categories had

11   been satisfied.  I believe that was category four and

12   seven.

13             THE COURT:  Yes, four and seven.  So I'm

14   going to order her to produce that information again

15   to the extent that it has not been produced as

16   required with the associated metadata and what not.

17   That information will be subject to my order that it

18   be produced as required.  I think that's everything.

19             MR. WIKLER:  I think so.  And just

20   clarification based on some conversations we'd had

21   about what would be presented to you in camera.

22             We'd heard, I think some from

23   Ms. Cantwell's counsel, the use of the word

24   "exemplars" and we just want to be sure that like the

25   totality of the communications that led to her comment

1    that she was deleting ESI --

2                    THE COURT:  The order will be

3    appropriately worded, so that they're required to

4    produce to me all of that information.

5                    MR. WIKLER:  Thank you.

6                    MR. OOT:  Your Honor, can I make a final

7    suggestion?  We have not received a log for any of the

8    information that has been withheld.

9                    THE COURT:  I can't hear you.

10                   MR. OOT:  I'm sorry, your Honor.  We've

11   not received a log for any of the information that's

12   being withheld and I think, in this particular

13   circumstance where we have indication that somebody is

14   deleting information, I think that a privilege log

15   would be warranted; especially at least for the

16   information that's being produced to you in camera and

17   perhaps for anything else they're withholding.

18                   THE COURT:  All right.  All I'm going to

19   do is this.  In connection with -- This is to

20   Ms. Cantwell's counsel on the phone.

21                   In connection with your production of

22   documents to me for in-camera review, as to those

23   documents, you should supply a privilege log to

24   Sanofi's counsel.  Just as to those documents.

25                   MS. MCGARTLAND:  Yes, sir.

1          THE COURT:  I'm not going to make them
2    put together a log of all the other attorney/client
3    communication she has had over time with Weinberger
4    and Bachus and Schanker.  I'm not going to do it.
5          MR. OOT:  Thank you, your Honor.
6          THE COURT:  All right.  Thank y'all.  I
7    guess I'll see you in a couple of weeks.
8          *      *      *      *      *      *      *      *
9                  C E R T I F I C A T E
10
11
12          I, Sandra T. Minutillo, hereby certify this
13    14th day of March, 2019, that the foregoing transcript
14    is a true and correct transcript to the best of my
15    understanding of the proceeding in 16-MDL-2740,
16    Taxotere Products Liability litigation, before the
17    Honorable Michael B. North, Magistrate Judge for
18    United States District Court for the Eastern District
19    of Louisiana.
20
21
22                    /s/ Sandra T. Minutillo
23                    _____
                      SANDRA T. MINUTILLO, CCR
                      Official U.S. Court Reporter
24
25