UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO:

*Kathleen Gabriel*, Case No. 2:16-cv-16788

**OPPOSITION TO PLAINTIFF'S MOTION FOR
VOLUNTARY DISMISSAL WITH PREJUDICE**

> *Courts must be exceedingly wary of mass litigation in which plaintiffs are unwilling to move their cases to trial. Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with h[er] own suit, if so selected.*

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 628 F.3d 157, 163 (5th Cir. 2010).

Plaintiff Kathleen Gabriel's sudden desire to dismiss her case two-and-a-half years after filing her lawsuit biases the trial pool in the MDL Plaintiffs' favor. Ms. Gabriel vaguely avers – without elaboration – that it is "impossible" for her to go any further in the litigation "given personal, family and health-related issues." Pl.'s Br. at 1 (Rec. Doc. 6496-1). But she does not explain how these issues affect her ability to testify going forward or why they did not affect her <u>until</u> she was selected as a bellwether and had "the obligation to proceed." The basis of Ms. Gabriel's desire to dismiss are facts to which Sanofi – and the Court – are entitled. This is particularly true when Ms. Gabriel is one of thousands of Plaintiffs without discernable hair loss who, when selected by the defense as a bellwether, then abruptly seeks to abandon her claims.

Sanofi has incurred substantial costs over the past two-and-a-half years responding to Ms. Gabriel's discovery, collecting and reviewing thousands of medical records, vetting her case for trial, and responding to this motion. Sanofi requests that Ms. Gabriel proceed with her case, which is representative of thousands of MDL cases. In the alternative, Sanofi requests that the Court order: (1) Ms. Gabriel to appear personally before Your Honor and detail the reasons for her sudden dismissal, and (2) Ms. Gabriel to pay Sanofi's costs in defending this action.

## BACKGROUND

Ms. Gabriel filed her lawsuit against Sanofi on December 1, 2016. She alleges permanent hair loss and, as a result, that she "struggled to return to normalcy, even after surviving cancer because an integral element of [her] identit[y], [her] hair, never returned." Am. Master Compl. ¶ 6 (Rec. Doc. 689). She claims that she is "stigmatized with the universal cancer signifier—baldness" and that it acts as a permanent reminder that she is a cancer victim. *Id.*

Ms. Gabriel further answered in her Plaintiff Fact Sheets, verified subject to penalty of perjury, questions on nine different categories of information.[1] On June 16, 2017, Ms. Gabriel produced the first PFS; she amended it four times on January 9, 2018; March 20, 2018; May 3, 2018; and July 13, 2018. In all *five* of these PFSs, Ms. Gabriel alleged that from 2010 until present she has suffered "Persistent ***total alopecia – No hair growth*** on [her] ***head or body*** after six (6) months of discontinuing Taxotere or Docetaxel treatment." *See* PFS Excerpts, **Exhibit A**.

Ms. Gabriel continued to participate in discovery and on March 23, 2018, certified that she had complied with PTO 71A. *See* Statement Required by PTO 71, **Exhibit B**. PTO 71A requires her to search various sources of electronically stored information, including email, electronic

---

[1] *See* Plaintiff Fact Sheet, Background (§I), personal information (§II), product identification (§III), medical information (§IV), cancer diagnosis and treatment (§V), claim information (§VI), hair loss information (§VII), record holder identification (§VIII), and document requests (§IX) (Rec. Doc. 673-2).

2

devices, hardware, social media, websites, and cloud storage for responsive documents and photographs. *See* Pretrial Order 71A (Rec. Doc. 1531), at ¶ 2. That Order requires her to run at least 15 search terms on these sources (where feasible) to identify responsive information. *Id.* at ¶¶ 3–4. Both Ms. Gabriel and her attorney certified that she had done such a search. *See* **Ex. B**.

On November 1, 2018, Sanofi selected Ms. Gabriel's case for further discovery for Trial III. Two-and-a-half months later, on January 21, 2019, Ms. Gabriel informed Sanofi of her desire to dismiss her case. Ms. Gabriel's request to dismiss comes at the same time that two other Plaintiffs in Sanofi-selected cases are also refusing to continue: Shelia Crayton and Diana Warren. The same thing has happened in cases selected by other defendants. In fact, in ***seven*** cases selected by the defense, the plaintiff has refused to continue. Yet ***no plaintiff*** in a PSC-selected case has done the same. If Plaintiffs' requests for dismissal or removal from the trial pool are sustained, the drop-off rate for defense-trial-pick cases in this MDL will be over 42%.

## ARGUMENT

To dismiss a case after a defendant has answered, Federal Rule of Civil Procedure 41 requires either (1) the consent of all parties, or (2) a court order on terms that the court considers proper. *See* Fed. R. Civ. P. 41(a)(1–2). The Rule recognizes that a defendant who has answered a complaint and spent time and money defending a lawsuit has a right to understand the basis for the dismissal. *See, e.g.*, *Camacho v. Mancuso*, 53 F.3d 48, 51 (4th Cir. 1995) ("A defendant has a strong interest in the resolution of an action, especially after he has taken the time and spent the money to file a responsive pleading."); *see also Duke Progress Energy LLC v. 3M Co.*, Nos. 5:08-CV-460, 5:08-CV-463, 2015 WL 5603344, at *1 (W.D.N.C. Sept. 23, 2015) ("Rule 41's procedural hurdles safeguard … the defendant's interest in the cause of action and the court's interest in judicial efficiency….[it] serves to: preclude a plaintiff from dismissing a case without

the defendant's consent…") (quotations omitted). This is a concept already recognized by this Court in entering PTO 87, which requires even non-trial Plaintiffs to provide a basis for their dismissal. *See* PTO 87 (Rec. Doc. 5363).

Sanofi has not only answered Ms. Gabriel's complaint, it has also reviewed and responded to five Plaintiff Fact Sheets, collected and reviewed thousands of medical records, and vetted her case for trial over the past two-and-a-half years. Sanofi is thus entitled to more than a vague statement by Ms. Gabriel about why she wants to dismiss her case. She should, instead, justify her dismissal at this late stage with some level of detail, including an explanation for why she is unable to proceed now when she was more than willing to do so before her case was selected; what it is about further discovery that she is unable or unwilling to do; what specific family or health-related issues affect her ability to proceed; and whether she was paid by anyone to dismiss her case. The answers to these questions will inform the broader issue and assist the Court in finding a solution for dealing with the non-meritorious cases being filed in this MDL. *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2016 WL 4705827, at *1–*2 (M.D. Ga. Sept. 7, 2016) (imploring fellow MDL courts to "consider approaches that weed out non-meritorious cases early, efficiently, and justly" because "[s]ome lawyers seem to think that their case will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeded as a separate individual action.").

This MDL is particularly susceptible to filings by Plaintiffs that have little to no discernable injury because they are not required to provide medical corroboration for their alleged injury. Instead, Plaintiffs provide photographs before, during, and after chemotherapy. But this documentation – assuming it is produced – only shows that there is some baseline difference in a

plaintiff's hair (attributable to any number of causes) between one date and time and another. Not all Plaintiffs produce such photographs, however, and many that do produce photographs showing that their hair in fact regrew after chemotherapy ended.

The low bar to enter the litigation (no medical corroboration required) means that thousands of cases end up in this MDL that would never be filed if they had to stand on their own merit. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 06-1789, 2012 WL 5877418, at *2–*3 (S.D.N.Y. 2012) ("[G]iven that cases are more likely to result in dismissal once discovery focuses on issues related to causation, the Court has reason to believe that spurious or meritless cases are lurking in the some 1,000 cases on the MDL docket.").

In many, Plaintiffs never meet their minimal discovery obligations and the Court is required to spend hours sifting through them and issuing show cause orders. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1252 (9th Cir. 2006) (affirming the dismissal of individual MDL cases for failing to comply with discovery case management orders, and recognizing that the individual plaintiff's failure harms all parties—it harms "plaintiffs with meritorious claims whose progress toward resolution is bogged down by others who will neither put up nor shut up; defendants who do not know against whom or what they are defending and so can neither conduct case-specific discovery, seek an early exit by summary adjudication, nor assess the potential value of the plaintiffs' claims for settlement; and the public, whose access to the courts is impeded when judicial resources are diverted from the proper administration of justice to dealing with recalcitrant parties.").

The PSC seems to be avoiding these cases as bellwethers – even though they are "representative" of the MDL – through selective and strategic dismissals. Within a matter of weeks, Plaintiffs have sought to dismiss three Sanofi-selected cases. In all these cases, the women

have little-to-no discernable hair loss:

  

**Sheila Crayton**     **Kathleen Gabriel**[2]     **Diana Warren**

Ms. Gabriel's only justification for her dismissal is "personal, family, and health-related issues" and the "incredible toll arising from extensive discovery." Pl.'s Br. at 1 (Rec. Doc. 6496-1). But Ms. Gabriel has already completed much of the "extensive" discovery by completing the PFSs and searching her devices for documents. All that is left is for her to be questioned about her claims and the statements made in her PFS – like the claim that she has had total, complete alopecia (no hair growth on her head or body) since 2010.

In November 2017, after Plaintiffs' first unilateral dismissal of a defense-pick bellwether case, the Court recognized that Plaintiffs' strategic dismissals can bias the trial pool in their favor and agreed to consider the issue again if further dismissal occurred: [3]

> …the Court recognizes Defendants' argument that a unilateral dismissal of cases Defendants believe are more appropriate for trial (or even more favorable for the defense) *might be subject to abuse*,

---

[2] All "after-chemo" photographs produced by Ms. Gabriel are attached as **Exhibit C**.
[3] Even in opposing Defendants' 2017 request to address strategic dismissals, the PSC never disputed that such dismissals would occur. Instead, the PSC seemed to agree that such dismissals were forthcoming. *See* Pls.' Opp. to Mot. for Substitution Protocol (Rec. Doc. 975), at 2 ("the Court can issue an Order based upon a definite and concrete dispute in consideration of the particular facts concerning dismissal and the status of trial preparations."). The time for such an Order is now.

6

> since each plaintiff (and her counsel) control whether and how far to pursue such claims. The Court denies Defendants' motion without prejudice, ***in the event further unilateral dismissals occur which could potentially compromise the pool of potential trial cases.***

Order and Reasons (Nov. 22, 2017) (Rec. Doc. 1136) (emphasis added).

MDL courts have broad authority to craft solutions to address plaintiff manipulation of the bellwether process through voluntary dismissal. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April, 20, 2010*, MDL No. 2179, 2011 WL 1464908, at *4 (E.D. La. Apr. 15, 2011). This often requires imposing obligations, procedures, or limitations on dismissals that "do not exist in ordinary cases." *Id.* at *5. Plaintiffs' pattern of using voluntary dismissals to manipulate the bellwether process justifies such a solution and remedy here; namely, examination by Your Honor and payment of Sanofi's costs. This is "consistent with the theory underlying Rule 41 as explained by the Fifth Circuit…that after the defendant becomes 'actively engaged' in the suit's defense, the defendant is entitled to have the case adjudicated…" *Id.*

## CONCLUSION

Ms. Gabriel's decision to dismiss her case after selection as a trial plaintiff brings to light some of the most distressing obstacles in MDLs generally, and in this MDL in particular. *In re Mentor Corp. Obtape*, 2016 WL 4705827, at *1 (MDLs have "produced incentives for the filing of cases that otherwise would not be filed if they had to stand on their own merit as a stand-alone action."). This is an issue that needs to be dealt with on an MDL-wide basis, which is the subject of a different proposal before this Court. In the meantime, examining Ms. Gabriel personally about the circumstances of her lawsuit filing, and now the basis of her decision to dismiss, will inform the Court as to how to handle the issue going forward. An award of reasonable costs and fees will deter additional Plaintiffs from withdrawing from the trial pool. *In re FEMA Trailer*

7

*Formaldahyde Prods. Liab. Litig.*, 628 F.3d at 163 (plaintiffs in mass litigation do not have the right to avoid being bellwethers); *see also Ritchey v. Ledoux*, No. 94-cv-2433, 1996 WL 337221, at *2 (E.D. La. June 18, 1996) (finding awarding attorney's fees and reasonable costs to defendants an appropriate remedy for plaintiff twice filing dismissal of his federal claims).

Respectfully submitted:

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-310-2100
Facsimile:  504-310-2120
E-Mail:  dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone:  816-474-6550
Facsimile:  816-421-5547
E-Mail:  hratliff@shb.com

***Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore