UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO | |
| *Sheila Crayton* | HON. JANE TRICHE MILAZZO |
| Case No. 17-5923 | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT MOTION TO REMOVE SHEILA CRAYTON FROM THE SECOND BELLWETHER TRIAL PLAINTIFF POOL**

Plaintiff, Sheila Crayton, respectfully moves this Court for her removal from the second bellwether trial pool as her declining health now prevents her from meaningfully participating in the trial.

## INTRODUCTION

Ms. Crayton was selected by the Court as alternate trial plaintiff in Case Management Order No. 16, Record Doc. 6017. Prior to this designation, Ms. Crayton had completed her Plaintiff Fact Sheet and appeared for two separate depositions, despite requiring constant daily care in her home and taking 12 separate prescriptions simultaneously.[1] Ms. Crayton's first deposition ended in the afternoon when, unable to continue without her medication, Ms. Crayton took her prescribed medication and shortly thereafter became unable to provide responses to further questions. Ms. Crayton's second deposition was interrupted when she again took her medication in order to address growing pain and discomfort but then could not speak clearly and needed to immediately lie down. Ms. Crayton is trapped in a catch-22; she cannot clearly

---

[1] *See* Exhibit A, Deposition of Shelia Crayton, Vol. I, Sept. 19, 2018, pp. 10-20, listing and describing all medications.

1

understand and respond fully to questioning, nor even sit alertly and upright, for very long with taking her medication, but the combined effects of her medication make it impossible for her to clearly understand and respond fully to questioning. Despite these issues, Ms. Crayton soldiered on and eventually completed all discovery demanded of her.

In recent weeks, however, Ms. Crayton's already shaky health status has deteriorated further and she has become entirely unable to sit upright and remain un-medicated for any length of time, both of which would be required of her at trial as a bellwether plaintiff and *de facto* representative of thousands of women with claims pending in this MDL. She also remains on the same strong medications that make her unable to understand and respond to questioning, and her primary care provider has indicated that she cannot stop taking this medication without further adverse impact to her health.

Ms. Crayton is a secondary plaintiff only, potentially a trial bellwether only in the event Ms. Thibodeaux is unable to proceed to trial. Due to the significance of these initial bellwether trials, however, the court should have available a true secondary trial plaintiff that is ready and able to go to trial as ordered. Through no fault of her own, Ms. Crayton simply cannot be that plaintiff.

## **RELEVANT BACKGROUND FACTS**

Sheila Crayton was diagnosed with breast cancer in 2007. Even before her bout with breast cancer, Ms. Crayton had been an ill woman, fighting lupus and depression for many years. (*See* Exh. A, Sheila Crayton Dep., Vol. I, Sept. 19, 2018, pp. 39-40, 209-210.) Years before her lawsuit, in 2010, a psychiatrist evaluating Ms. Crayton for potential Social Security disability benefits concluded that:

> Ability to maintain attention and perform simple repetitive tasks for two hour blocks of time would likely be poor. Ability to sustain effort and persist at a normal pace over the course of a routine 40 hour work week would likely be poor.  Ability to understand, remember, and follow simple commands would likely be fair, if instructions are repeated. Ability to tolerate the stress/pressure associated with day to day work activity and demands would likely be poor.

(*See* Exhibit B, Psychiatric Evaluation by Dr. Donna M. Mancuso, 1960-CRAYTON,SHELIA – Social Security Administration 00355-00360.)[2] In the intervening years, Ms. Crayton's physical and mental health have failed to improve.

Ms. Crayton filed her suit on June 19, 2017, alleging that her exposure to Taxotere caused her to experience permanent hair loss.  She was selected as a discovery pool plaintiff and underwent additional discovery, including responding to interrogatories and requests for production, and participating in two depositions on September 19, 2018 and November 6, 2018. During her depositions, as well as during preparation sessions with attorneys, she was attended to by a full-time caretaker, and she noted in her deposition testimony that she has a full-time caregiver, is overseen by a social worker, and is otherwise attended to by family members. (Exh. A, Crayton Dep., Vol. I, pp. 26-27, 37-38, 173-174.)

While she was able to testify about her exposure to Taxotere and subsequent hair loss during her first deposition, by the afternoon, Ms. Crayton began to experience significant pain and noted that she had not taken her medication that morning. (Exh. A, Crayton Dep., Vol. I, pp. 187-189.) Shortly thereafter Ms. Crayton took her daily pills and was unable to continue with the deposition. (Exh. A, Crayton Dep. Vol. I, pp. 254-258; see p. 256, "Ms. Godshall: My client needed to take some medication that was necessary for her health. And we spoke off the record and this will impair her ability to understand and clearly communicate her answers. Such that we

---

[2] Exhibit B will be filed under seal and a Motion for Leave to file same under seal will be filed in conjunction with this Motion.

are going to end the deposition for today, but we are keeping it open.").

At her second deposition, Ms. Crayton testified as to the impact her medication has on her ability to testify:

> Q    Oh, Ms. Crayton, just one more housekeeping matter that I forgot to ask you at the beginning. Are you on any medication today that would impact your ability to remember?
>
> A    Yes.
>
> Q    What medication is that?
>
> A    I can't remember the name, but I brought the medicine.
>
> Q    Do you want to take a minute and find the medication that you think affects your memory?
>
> A    Yes.
>
> Q    Does it negatively impact your memory?
>
> A    I don't understand. What you mean "negative"?
>
> Q    So do you -- the question I'm trying to get at is do you -- do any of the medications that you take that you've taken today, will they negatively impact your memory, your ability to remember?
>
> A    Yes, they would, causing me not to. . . . .
>
> Q    Ms. Crayton, we took a short break to see if you had in your bag the medication that you thought negatively impacted your memory; but is it fair to say that you don't have that with you?
>
> A    Right. And it's more than one that affect my ability, which is amitriptyline.
>
> Q    It's your -- when did you last take amitriptyline?
>
> A    Last night.
>
> Q    And did you take one pill or two?
>
> A    Two.
>
> Q    And you haven't taken it since then?
>
> A    Right. I haven't taken it since then.
>
> Q    And is it your opinion that taking two -- forgive my reach -- 25-milligram tablets of amitriptyline last night before bed is causing you not to be able to remember?
>
> A    Yes.

(Exhibit C, Deposition of Sheila Crayton, Vol. II, Nov. 6, 2018, pp. 294-297.)

Later Ms. Crayton again took a break in order to take her medication. Shortly thereafter,

she explained that she was no longer able to testify:

> Q    You're able to testify truthfully, accurately, and completely?
> A    No, I'm not. No, I'm not. I'm sorry.
> Q    Why are you not able to?
> A    Because I'm starting to shake and my tongue, it's like it's -- it's like it's -- I have the shakes, and my tongue is like gets stuck.
> Q    And so you aren't feeling well?
> A    This is what happens when I take my medication, so that's why I have to lie down when I take my medication. That's why I have a personal caregiver.
> Q    And if you lie down for a little bit, will you feel better?
> A    Yes. But I'm going to try, so I can get through with it.
> …
> Q    Do you think if you laid down for a moment you would feel better and you could continue?
> A    Yes.
> Q    Okay. Do you want to do that?
> A    Yes.

(Exh. C, Crayton Dep. Vol. II, pp. 319-321.)

Following her deposition, Ms. Crayton's health continued to deteriorate and she underwent surgery to remove her port-a-cath device as the recommendation of her cardiologist due to growths around the device. (*See* Exhibit D, Deposition of Dr. Carlos Rodriquez-Fierro, Feb. 26, 2019, pp.68-69, 83.) Since then, counsel for Ms. Crayton began to express concern about her ability to withstand the pressures involved in a multi-week trial and raised these concerns with liaison counsel for Sanofi. (*See* Exhibit E, Letter from Richard Root to Douglas Moore, Feb. 27, 2019; Exhibit F, Email from Richard Root to Jordan Baehr, March 13, 2019.) Most recently, Ms. Crayton's doctor sent counsel a note immediately following his most recent visit with her, stating that "I do not feel that she would be able to participate in a high stress situation such as a plaintiff in a federal jury trial and ask that she be excused from same."

(Exhibit G, Letter from Dr. Long, March 12, 2019.)[3]

Dr. Long's concerns are echoed by counsel for Ms. Crayton, as undersigned counsel has found that our client's ability to communicate has become more impaired in recent weeks. As officers of the court, we are concerned that our client's present state has made her unable to assist her counsel in the preparation of her trial. We have sought information from her regarding potential witnesses and to aide in trial preparation and she has been unable to provide the requested information or even to recall that we previously called to request it. (*See* Exhibit H, Affidavit of Betsy J. Barnes.)

Ms. Crayton has met her duty as a plaintiff in this litigation in fully complying with all aspects of discovery and providing all information in her possession. She has sat through two depositions at a cost to her own health because of her strong belief that she has been injured by this product. She does not want to dismiss her claim, nor delay the second bellwether trial, but she does hope that she can be removed from the bellwether trial pool for the second trial, in the understanding that at this time she physically cannot undertake this burden on behalf of the entire body of plaintiffs.

## **LAW AND ARGUMENT**

The question of ordering proceedings and potentially continuing trials for specific plaintiffs is one of judicial discretion. As stated by Judge Jolivette Brown in *Parish of Jefferson v. Exxon Mobil Corp.*, No. CV 18-5257, 2018 WL 2873805, at *3 (E.D. La. June 11, 2018),

> In *Landis v. North American Co.*, the Supreme Court recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." The Supreme Court noted that "how this can best

---

[3] Exhibit G will be filed under seal and a Motion for Leave to file same under seal will be filed in conjunction with this Motion.

> be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Therefore, a district court has "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.

*Id.*, citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

The question of changing the order and timing of proceedings in order to accommodate a party's ability to attend and fully participate in the proceedings falls under that *Landis* umbrella of judicial discretion. *See, e.g., Alvis v. Kimbrough*, 455 F.2d 922, 923 (5th Cir. 1972) ("The test for determining error in the failure to grant a continuance is whether an abuse of discretion appears on the part of the district court. We think the fact of appellant's confinement and resultant inability to testify and possibly contradict the testimony of the only witness against him . . . amounts to an abuse of discretion."). This principle has frequently been recognized as applicable where the continuance is claimed because of the alleged ill health of a party in a civil action. 68 A.L.R.2d 470. As stated in 68 A.L.R. 470, *Continuance of civil case because of illness or death of party*, "It is implicit in most of the cases that one seeking a continuance because of ill health must act diligently and in good faith and that the relief will be denied where it appears that the application is made merely to delay the trial for the applicant's convenience."

Here, counsel has consistently raised Ms. Crayton's health status as a concern for her potential as a trial plaintiff since the conclusion of her second deposition in which her physical weakness and inability to function without her medication (and concurrent inability to respond to questions when on her medication) became starkly apparent. In Ms. Crayton's depositions, she testified that her memory was adversely affected by her medication; her cardiologist echoed this as well. *See* Exh. C, Crayton Dep. Vol. II, pp. 294-295; Exh. D, Rodriquez-Fierro Dep. p. 87. The many issues that a bellwether plaintiff is supposed to raise and resolve will not be furthered by a total lack of memory.  It is unfair to both parties to have key plaintiff testimony affected by

7

a plaintiff's medication-related inability to recall, or on the effects of brain-fogging medication.

Since her health condition has concerned to deteriorate, counsel has reiterated these concerns with counsel for Sanofi. Ms. Crayton tried valiantly to overcome her issues in order to complete her depositions, but her own physician has now stated that she cannot participate in a trial. She is not seeking a delay of the bellwether trial itself, but merely her exclusion from that potential trial in order that she can retain her claim for a later date.

Using Ms. Crayton's recorded deposition testimony in lieu of live testimony is one potential solution to the problem caused by her specific health concerns, but not a fundamentally fair solution to either of the parties in this instance. Bellwether trials are especially significant in multidistrict litigation such as this, and an absent plaintiff who can neither speak for herself nor be questioned by the defendants before the jury would not fairly reflect the body of plaintiffs. "If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." Manual for Complex Litigation, Fourth, §22.315 (2004); *see also In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1020-21 (5th Cir. 1997) (ruling that cases selected for a bellwether trial need to be representative of all cases, focusing on the issue of "fundamental fairness" when evaluating bellwether plaintiffs).

Moreover, any bellwether plaintiff should be able to provide full and complete assistance to her counsel over a two-week trial. Undersigned counsel believes that Ms. Crayton is simply unable to provide that assistance, which is a fairness concern entirely separate and apart from her ability or inability to withstand the physical stress of trial.

An alternative to outright dismissal or appearance via video-taped deposition exists that does meet the "fundamental fairness" burden. Ms. Crayton could be removed from her place as

alternate trial plaintiff for the second bellwether trial, leaving Ms. Thibodeaux in place and ready to move forward with the second trial. Simply waiting and hoping that Ms. Crayton's physical and mental health improves between now and the second trial date, however, would significantly prejudice all parties, as a failure to achieve any positive change would leave both sides with a potentially absent and certainly unrepresentative bellwether plaintiff at trial.

Such an exercise of this Court's discretion would also allow Ms. Crayton to preserve her claim for another day, in case of any future improvement in her mental and physical health. Additionally, it would present Ms. Crayton with a shorter, more streamlined trial following resolution of the MDL in which all MDL-level issues have already been resolved, which could be more in line with her physical abilities as a plaintiff.

In conclusion, Plaintiff, Sheila Crayton, respectfully moves this Court for her removal from the second bellwether trial pool as her physician has stated that she cannot participate in the trial and evidence of her declining health reflects and supports his medical opinion.

Respectfully submitted,

*/s Richard L. Root*
Richard L. Root La# 19988
Betsy Barnes La# 19473
Lauren Godshall La# 31465
Morris Bart, LLC
601 Poydras Street
24th Floor
New Orleans, LA 70130
Phone: (504) 525-8000
Fax: (504) 599-3392
Email: rroot@morrisbart.com
Bbarnes@morrisbart.com
lgodshall@morrisbart.com

*Attorneys for Plaintiff Shelia Crayton*

10