UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORAH JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>SANOFI US SERVICES, INC., formerly known as SANOFI-AVENTIS U.S. Inc., and SANOFI-AVENTIS U.S. LLC,<br><br>    Defendants. | Civil Action No. 2:16-cv-15607 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS**

Plaintiff Deborah Johnson's claims are prescribed under the one-year statute. She filed her claims more than four years too late. By her own testimony, Ms. Johnson had concluded by June 2011 that her hair was not coming back, and that it was due to her chemotherapy treatment. In this regard, nothing changed in Ms. Johnson's knowledge between June 2011 and her lawsuit filing in 2016, as confirmed by her deposition testimony in 2017. As an ordinary plaintiff, in other words, the basis for her suit today is such that it could have been and should have been filed by June 2012. Louisiana law does not suspend prescription where, as here, Plaintiff made no effort to investigate a conspicuous injury, its cause, or any potential claim for some five years before filing suit. As set forth in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (Rec. Doc. 5734) ("Memo"), summary judgment is warranted.

In her Response in Opposition to Defendants' Motion for Summary Judgment (Rec. Doc. 6536) ("Opp."), Plaintiff does not dispute the essential facts set forth in Sanofi's Memo. In fact, Plaintiff notably does not:

- Cite record evidence that she was <u>not</u> aware of her potential claims by June 2011;
- Cite record evidence showing her claims accrued at any time other than June 2011;
- Dispute that she did <u>not</u> investigate her injury at any time prior to filing suit;

1

- Dispute that she did <u>not</u> investigate its potential cause at any time prior to filing suit; or
- Cite any Louisiana case holding that prescription is suspended when a plaintiff <u>took no action</u> to timely investigate her injury or potential claims.

In short, Plaintiff's Opposition does not identify any factual or legal grounds to avoid summary judgment. As such, the Court should grant Sanofi's Motion.

### I. Ms. Johnson's complaint is facially untimely

Deborah Johnson filed her lawsuit on October 14, 2016, claiming the injury of "[p]ermanent, irreversible and disfiguring alopecia" beginning in June 2011.[1] Article 3492 of the Louisiana Civil Code provides that actions like Ms. Johnson's "are subject to a liberative prescription of one year" that "commences to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492; *see also Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 344–45 (5th Cir. 2010). Ms. Johnson filed her lawsuit more than five years after the date she alleges her injury and damages were sustained. Accordingly, Ms. Johnson's suit is untimely on its face and subject to summary judgment.

It is a well-settled principle of Louisiana prescription law that where a plaintiff's petition is prescribed on its face, that plaintiff bears the burden of showing that her action is not prescribed. *See, e.g.*, *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1017 (La. 2012); *Titus v. IHOP Rest., Inc.*, 25 So. 3d 761, 764 (La. 2010); *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 256 (La. 2010); *see also, e.g.*, *Bartucci v. Jackson*, 246 F. App'x 254, 257 (5th Cir. 2007); *LaShip, L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 323 (5th Cir. 2017). Here, Plaintiff has not met that burden: her complaint contains no factual allegations showing she was unaware of her injury

---

[1] *See* D. Johnson Amended Short Form Complaint ("SFC") at ¶ 12, 10 (No. 2:16-cv-15607, Rec. Doc. 8); Second Amended Master Long Form Complaint ("AMC") (Rec. Doc. 4407) at ¶ 181. Unless otherwise specified, all cited record documents are attached to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Based On The Statute Of Limitations (Rec. Doc. 5734) ("Memo").

2

or of Taxotere as a potential cause in June 2011,[2] and tellingly, Plaintiff's Opposition is bereft of factual record citations in support of any exception.

Plaintiff's invocation (and misquotation)[3] of *Bailey v. Khoury*, 891 So. 2d 1268 (La. 2005) is unhelpful to her. *Bailey* makes clear that a petition filed more than a year after the alleged injury will be facially prescribed unless "it is brought within one year of <u>the date of discovery</u> and <u>facts alleged with *particularity* in the petition show that the patient was unaware</u> of the malpractice[4] prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient." *Bailey*, 891 So. 2d at 1275 (emphases added). Ms. Johnson does not and cannot argue that she brought her petition within one year of her "date of discovery" because neither her petition nor her Opposition identify any date of discovery other than June 2011. Similarly, Ms. Johnson does not and cannot point to facts alleged with *particularity* in her petition showing she was unaware of injuries or potential claims because neither the Master Complaint nor her case-specific Short Form Complaint allege any facts whatsoever regarding Ms. Johnson's particular awareness of potential claims. Allegations about defendant's conduct are not facts that speak to a plaintiff's awareness of claims.[5] And Plaintiff has not alleged particular facts

---

[2] On the contrary, Plaintiff's complaint states her injury was "disfiguring," that she had a "heightened awareness" of it, and that she associated it with cancer treatment on a daily basis. *See* SFC at ¶ 12; AMC at ¶¶ 6, 173, 215-217.

[3] On page 11 of her Opposition, Plaintiff misquotes *Bailey* as repeating and emphasizing a sentence from *Campo v. Correa*, when *Bailey* contains no such repetition or emphasis.

[4] Unlike Ms. Johnson's delictual action governed by article 3492 of the Louisiana Civil Code, medical malpractice actions in Louisiana are governed by section 9:5628 of the Louisiana Revised Statutes, which expressly permits such actions to be filed "within one year from the date of discovery of the alleged act, omission, or neglect." La. Rev. Stat. § 9:5628. Thus, the malpractice cases on which Plaintiff chiefly relies in her Opposition—including *Bailey*, *Campo*, *Young v. Clement*, 367 So. 2d 828 (La. 1979), and *Griffin v. Kinberger*, 507 So. 2d 821 (La. 1987)—offer little to no guidance here. First, prescription under section 9:5628 runs from discovery of the *defendant's conduct*, whereas under article 3492 the clock starts with the *plaintiff's injury*. Second, as part of the statutory text of section 9:5628, the malpractice "discovery rule" is appropriately considered in assessing whether a *malpractice* petition is facially timely. The same is not true where article 3492 applies and a plaintiff invokes the doctrine of *contra non valentem*. That doctrine is "a judicial exception to the statutory rule of prescription" which Louisiana courts must strictly construe. *See Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000). Even if Ms. Johnson had pleaded late discovery with particularity in her petition (which she did not), that could make her claim *facially* timely under article 3492.

[5] For this reason, references to Sanofi documents in Plaintiff's Opposition are a red herring. Plaintiff does not—and cannot—claim that she learned of her claims by or because of such documents, produced through discovery in this

3

showing her specific failure to investigate was not willful, negligent, or unreasonable. Consistent with well-settled Louisiana law, *Bailey* confirms Plaintiff's claims are facially prescribed.

## II. The evidentiary record thoroughly confirms Ms. Johnson's claims are untimely

The evidence adduced through discovery—including Plaintiff's verified Fact Sheet,[6] medical records, and deposition testimony—confirms that:

- Before and after receiving Taxotere, Ms. Johnson was made aware of hair loss associated with chemotherapy by medical professionals multiple times, and she understood hair loss to be a risk of chemotherapy prior to treatment. *See* Memo at 7-8.

- Ms. Johnson lost all of her hair on the night she first received Taxotere in 2010. *See id.*

- When her hair did not grow back after treatment, Ms. Johnson became very concerned that it would not grow back. By the time she finished her radiation treatment in 2010, she concluded that her hair was not going to grow back anymore, and became "devastated and depressed." *See id.* at 8-9.

- From 2010 to the present, she has continually experienced "Permanent/Persistent Hair Loss on Scalp," "[d]iffuse thinning of hair: total scalp (on the top, back, sides, and temples)," and "[s]ignificant thinning of the hair on her head after six (6) months of discontinuing Taxotere or Docetaxel treatment, with visible bald spots on her head no matter how she styles her hair." *See id.* at 6.

- Ms. Johnson has never attributed her hair loss to anything other than chemotherapy. At the time of her deposition in November 2017—more than a year after filing suit—Ms. Johnson did not know which of the chemotherapy drugs she received had caused her hair loss, and had done nothing to investigate potential causes of her hair loss. *See id.* at 9-10.

Tellingly, Plaintiff's Opposition does not cite to her own fact sheet, medical records, or

---

litigation. Without belaboring discussion of irrelevant documents, Sanofi notes that Exhibits A and B to Plaintiff's Opposition are provided with no context whatsoever, including the testimony of some 9 Sanofi witnesses whom Plaintiffs found it important to depose regarding these documents. Though likewise irrelevant to Plaintiff's awareness of her claims, that testimony does not support Plaintiff's self-serving mischaracterizations of the documents. Similarly, Plaintiff concedes that the December 2015 Taxotere product label did not put her on notice of potential claims. *See* Opp. at 7, n.6 ("Plaintiff is not suggesting that the December 11, 2015 product label warning put her on notice."). Plaintiff must concede this, because there is no evidence that she read any version of the Taxotere label at any time, including in advance of her own treatment. There is simply no evidence that Ms. Johnson ever saw any of these documents, ascertained their contents, or even knew of their existence prior to filing suit. One must infer that Plaintiff's references to the documents are meant only to distract from the clear record evidence that Ms. Johnson had ample notice of her potential claims by June 2011 at the latest. *See* Memo at 6-10.

[6] PFS references are to Deborah Johnson's Fifth Amended Plaintiff Fact Sheet.

deposition testimony as to her awareness of her alleged injury or its potential cause. In fact, the clearest assertion on that subject—the conclusory statement that "Ms. Johnson was unaware of the Defendants' conduct prior to the alleged date of discovery, and any delay in her filing suit was not due to the willful, negligent, or unreasonable action of Ms. Johnson"—cites ***nothing***. Thus, despite completing phase I discovery as one of the first plaintiff-selected trial pool cases in this MDL, the only record evidence Plaintiff cites to substantively oppose summary judgment is the inapposite testimony of her prescribing oncologist, Dr. Brian Lewis, that he *did not know* whether he warned patients like Ms. Johnson of permanent hair loss with Taxotere at the time of her treatment in 2010:

> Q. Maybe you would say it could be permanent today?
> A. Right. As a result of the exposure of this.
> Q. Do you know whether you would have said that in 2010?
> A. **I don't know**.

*See* Pltf's Opp. at 13; Lewis Depo. Tr. 84:18-23 (emphasis added).[7]

This testimony is not helpful to Ms. Johnson. Quite clearly, the possibility that Dr. Lewis warned Ms. Johnson of a risk of permanent hair loss in 2010 is fatal both to her arguments that she lacked notice for prescription purposes and to her failure-to-warn claims—another area where Ms. Johnson bears the burden of proof. Ms. Johnson cannot meet either burden with such testimony.

Further, Dr. Lewis's testimony indicating that he may have warned Plaintiff of potential permanent hair loss *before* treatment also suggests the possibility that he was aware of such a risk *after* her treatment and would have informed her if asked.[8] This testimony—again, the only record

---

[7] *See also* Lewis Depo. Tr. at 83:22-84:6 ("Q. Was it your practice to tell someone that there [*sic*] hair loss would be temporary? A. Uhmm, I don't know. I mean -- I don't know. I don't know if I had told her that it would grow back or that there was a chance it wouldn't. I mean, I'm not sure; I can't remember. I don't know."). The detriment to posed by "lost evidence" and "fading memories" as reflected in Dr. Lewis's testimony is one of the primary policies underlying prescription. *See Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 232 (5th Cir. 1984).

[8] Though hardly relevant in light of Ms. Johnson's own pleadings, testimony, and other record evidence, Dr. Lewis did not testify that he learned of a potential link from lawsuit advertisements, but that he would "maybe" *warn* patients about permanent hair loss today because of the commercials and associated "exposure". *See* Lewis Depo. Tr. 84:20. Plaintiff does not point to any record evidence that Ms. Johnson herself learned of the alleged link through TV advertisements. As such, Plaintiff's line of argument regarding lawsuit commercials as factually irrelevant as it is legally misplaced. *See also infra* n.14.

evidence Plaintiff offers to substantively oppose summary judgment—does not support any argument that something suspended the prescriptive period.[9]

### III. No exception to prescription saves Ms. Johnson's case

Ms. Johnson's attempted legal argument rests heavily on a purported distinction between what she *should* or *could* have learned if she had investigated her injury or potential causes when aware of them in June 2011. *See, e.g.*, Opp. at 17-23. Fortunately, this Court need not consider this abstract distinction or speculate about the results of a hypothetical investigation. Under Louisiana law, no exception to prescription applies to Ms. Johnson's case because she simply made *no effort to investigate whatsoever*—despite concluding that her hair would not return, suffering damages including a "heightened awareness" of her appearance, and attributing all of this to a Taxotere-based chemotherapy regimen for over five years before filing suit. *See, e.g.*, *Eastin v. Entergy Corp.*, 865 So. 2d 49, 56 (La. 2004) ("[p]laintiffs may not simply sit on their hands and do nothing to investigate their [injury] and expect their actions to be deemed reasonable."); *Causby v. Perque Floor Covering*, 707 So. 2d 23, 27 (La. 1998) (finding it unreasonable for a plaintiff "to sit on [her] rights indefinitely until an attorney tells [her s]he is actually entitled to benefits."); *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, No. 15-4790, 2017 WL 4517287, at *2-3 (E.D. La. Oct. 10, 2017) (a plaintiff need not "be informed by an attorney or physician of a possible claim before prescription begins to run."). Without such investigatory efforts, the doctrine of *contra non valentem* simply does not apply. *See, e.g.*, *Eastin*, 865 So. 2d at 57.

The cases Plaintiff relies on do not say otherwise. In *Young*, a malpractice case, the plaintiffs did take prompt steps both to ascertain the cause of the alleged injury and to treat it, but

---

[9] Plaintiff's failure to point to meaningful record evidence indicates that she has no meaningful facts for a jury to consider. Under such circumstances, there can be no genuine dispute of material fact. Furthermore, the absence of discovery evidence from Ms. Johnson's Opposition aptly demonstrates that timeliness determinations in MDL 2740 can be made on the pleadings or with at most, very limited discovery.

6

nevertheless did not suspect malpractice until being informed by a treating doctor some two years later. *See Young*, 367 So. 2d at 829. Likewise in *Griffin*, another malpractice case, the plaintiff promptly investigated the alleged injury when it manifested, but was consistently misinformed by doctors that the injury was a natural symptom of necessary treatment. *See Griffin*, 507 So. 2d at 823. And again in *Hoerner v. Wesley-Jensen*, 684 So. 2d 508 (La. App. 4 Cir. 11/20/96), the plaintiff promptly saw a doctor about and received treatment for her alleged injury, but the Louisiana Court of Appeals court found that the doctor "probably would **not** have addressed" causation with the plaintiff because he testified that he did not like to "find blame" for an ailment; he just liked to treat it. *See Hoerner*, 684 So. 2d at 512 (emphasis in original).

Here, in sharp contrast, Ms. Johnson both had reason to and did in fact suspect the cause of her injury immediately, yet did not inquire of a doctor or seek treatment for over five years. *See* Johnson Dep. Tr. at 307:13–309:14; 313:1–314:15. Consequently, a more analogous and instructive case is *Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345 (5th Cir. 2010). There, as here, as the plaintiff used a medical product (there, the nasal spray Zicam) and experienced an undesired effect (pain and sensory loss) the same day. *See Carter*, 391 F. App'x at 344. She promptly identified a few potential causes of her injury (allergies or Zicam). *Id.* When consulted, her physician stated "he was unaware that Zicam caused such problems, but he did suggest that Carter's injury may have been caused by her allergies." *Id.* Nevertheless, the U.S. Court of Appeals for the Fifth Circuit reasoned:

> From the very outset, Carter suspected and attributed her injury to Zicam, and she never wavered in that belief. That she did not possess an affirmative and conclusive medical opinion supporting this belief on that day, or even a week later when she consulted her physician, is of no moment. [….] It is true that her doctor initially expressed ambivalence about whether it was the Zicam or Carter's allergies that were causing her injury [….]  It is not the rule in Louisiana, however, that the prescriptive period does not begin until conclusive, dispositive proof of a causal connection between the suspected injury and the putative tortfeasor is established. Therefore, the prescriptive period began running on February 23 (February 24 at the latest). Thus, the Carters' filing was at least five days late.

7

*Carter*, 391 F. App'x at 345–46 (5th Cir. 2010).[10]

In her Opposition, Plaintiff does not dispute that she did not investigate her alleged injuries or their potential causes. She does not dispute that she suspected chemotherapy, including Taxotere, from the outset. Instead, Plaintiff argues that prescription was suspended because she herself is not a doctor and could not have understood the complex medical and scientific evidence required to prove her claim. But Plaintiff is still not a doctor, and has still never consulted one regarding the bases of her claims. *See* Johnson Dep. Tr. at 313:22–314:15 ("Q. Has any doctor ever told you that your hair loss was caused by Taxotere?  A. No.").

Moreover, the medical issues Plaintiff claims to have lacked notice of in 2011 are in fact fundamental issues disputed in this litigation—not questions resolved before Ms. Johnson filed suit in the first place.[11]  In her Opposition, Plaintiff conflates *inquiry notice* with knowledge sought through litigation discovery. In so doing, she suggests that stronger evidence is needed for a claim to accrue than for that claim to be filed in court—inviting an absurd result. Plaintiff's reasoning implies that her claim has *still* not accrued and will be tolled until a jury renders a verdict.

For example, Plaintiff argues that she lacks the medical expertise to deduce that her hair loss was permanent herself. She adds that the record lacks "any witness who would have advised Ms. Johnson that her seemingly temporary hair loss was permanent" in 2011. *See* Opp. at 6; 17. But the record lacks evidence of any witness who has so advised Ms. Johnson *at any time*, including in 2015, 2016, or the years since she filed suit. On the record to date, Ms. Johnson has still never been diagnosed with permanent hair loss—much less before filing her lawsuit. The

---

[10] Of course, the *Carter* plaintiff's inquiry and her physician's response make the five-day delay in filing that case eminently more reasonable than Ms. Johnson's five-year delay here.  The same outcome is warranted.

[11] The fact that a defendant disputes causation and other elements of a plaintiff's claim cannot render that plaintiff unable to investigate and bring claims. Disputing causation also does not constitute fraudulent misrepresentation, concealment, or deceit, concepts alluded to but not actually argued in Plaintiff's Opposition. Likewise, Plaintiff makes no argument under the third prong of *contra non valentem* that Sanofi directly intervened to prevent Plaintiff from filing suit. All arguments to the effect that Sanofi actively prevented Plaintiff from filing suit have been waived.

evidence required for a claim to accrue cannot exceed the evidence required *to actually file suit*.

Similarly, Plaintiff argues that she could not have known in 2011 that "the cause of her permanent hair loss was Taxotere, to the exclusion of any other chemotherapy drug, non-chemotherapy drug, genetic condition, or environmental factor." Opp. at 6. But again, Plaintiff *still* does not know that Taxotere exclusively caused her hair loss. She did not testify that she now has such knowledge. And again discovery reveals no medical diagnosis or record attributing her permanent hair loss to Taxotere and ruling out other causes, before or after her lawsuit was filed. To the contrary, as noted in Sanofi's Memorandum—but not discussed in Plaintiff's Opposition—Ms. Johnson expressly testified that at the time of her deposition in November 2017, she had not investigated and still did not know which of the chemotherapy drugs she received had caused her alleged injury. *See* Johnson Dep. Tr. at 313:22–314:15. This uncertainty did not prevent Plaintiff from filing suit, and cannot have delayed or prevented her claim from accruing.

Likewise, Plaintiff argues that she could not have "figured out the complex pharmacological and epidemiological questions in her use of Taxotere" prior to the date her claim accrued. But yet again, Plaintiff cannot claim to have answered these questions since filing her suit—much less before. In defense of her claims and their timeliness, Plaintiff insists that *permanent* hair loss is a completely distinct injury unrelated and not even reasonably associated—even by a medical professional such as Dr. Lewis—with the well-known and warned-of side effect of *temporary* hair loss.[12] Yet more than two years after filing suit, Plaintiff offers no evidence or explanation for *how* Taxotere allegedly causes this permanent hair loss—other than the fact that it causes temporary hair loss. She certainly has not offered pharmacological or epidemiological evidence on this issue. Such evidence cannot have been necessary for her claim to accrue.

---

[12] Plaintiff attempts to draw this distinction despite Dr. Lewis' testimony that he did not know whether he warned her of permanent hair loss. Since Taxotere was FDA approved in 1996, all versions of its label have warned of hair loss and none have characterized it as "temporary." *See, e.g.*, Memo Ex. H at 58, 61.

9

Under such circumstances, to suggest that Plaintiff lacked constructive notice of her claims would require more evidence for a claim to accrue than for a Plaintiff to file suit, which is untenable.[13] If Sanofi were to move for summary judgment on the ground that Plaintiff had failed to prove that her hair loss was permanent, to show Taxotere as the exclusive cause, or to establish the biological mechanism by which Taxotere allegedly caused her permanent hair loss, there is little doubt that Plaintiff would oppose judgment on the grounds that such proof is not required of her at this stage of proceedings. There can be no question, then, that such certain and specific knowledge is not prerequisite for claim accrual—as well-settled by Louisiana courts. *See, e.g.*, *Oil Ins. Ltd. v. Dow Chem. Co.*, 977 So. 2d 18, 21, 23–24 (La. App. 2007), *writ denied*, 976 So. 2d 1284 (La. 2008) ("certitude is not a prerequisite to the commencement of prescription.").

The fact is that Plaintiff's Opposition does not identify from record evidence a single relevant fact of which Plaintiff is now aware that she was not aware of in 2011. When Plaintiff eventually filed suit in 2016, she did so with no more medical, scientific, pharmacological, or epidemiological expertise than she had five years earlier. Plaintiff's arguments under *contra non valentem* are thus inadequate and unable to save her claims from summary judgment.

Plaintiff's claims are facially untimely, and the evidence adduced through discovery confirms that they are time-barred. Plaintiff's failure to investigate her claims renders the doctrine of *contra non valentem* inapplicable here, and Plaintiff's attempts to invoke it lack support in record evidence. Plaintiff's claims are time-barred under Louisiana law.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion.

---

[13] To the extent Plaintiffs suggest—again without citation to record evidence—that such information was supplied by counsel prior to filing (whether in person or through TV ads), that has no bearing on prescription. *See Xarelto*, 2017 WL 4517287, at *2-3 (a plaintiff need not "be informed by an attorney or physician of a possible claim before prescription begins to run."); *Causby*, 707 So. 2d at 27 (finding it unreasonable for a plaintiff "to sit on [her] rights indefinitely until an attorney tells [her s]he is actually entitled to benefits.").

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* <br> Douglas J. Moore (Bar No. 27706) <br> **IRWIN FRITCHIE URQUHART & MOORE LLC** <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA 70130 <br> Telephone: 504-310-2100 <br> Facsimile: 504-310-2120 <br> dmoore@irwinllc.com | Harley Ratliff <br> Adrienne L. Byard <br> **SHOOK, HARDY & BACON L.L.P.** <br> 2555 Grand Boulevard <br> Kansas City, Missouri 64108 <br> Telephone: 816-474-6550 <br> Facsimile: 816-421-5547 <br> hratliff@shb.com <br> abyard@shb.com <br><br> ***Counsel for sanofi-aventis U.S. LLC*** |