12:45:17
12:46:07

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


    ****************************************************************

IN RE:  TAXOTERE
(DOCETAXEL) PRODUCTS
LIABILITY LITIGATION

                            CIVIL ACTION NO. 16-MD-2740 "H"
                            NEW ORLEANS, LOUISIANA
                            WEDNESDAY, MARCH 27, 2019, 1:00 P.M.

THIS DOCUMENT RELATES TO:
ALL CASES

    ****************************************************************

        TRANSCRIPT OF STATUS/DISCOVERY CONFERENCE PROCEEDINGS
          HEARD BEFORE THE HONORABLE MICHAEL NORTH
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:        BARRIOS KINGSDORF & CASTEIX
                           BY:  DAWN M. BARRIOS, ESQ.
                                ZACHARY WOOL, ESQ.
                           701 POYDRAS STREET, SUITE 3650
                           NEW ORLEANS, LOUISIANA 70139


                           GAINSBURGH BENJAMIN DAVID
                           MEUNIER & WARSHAUER
                           BY:  M. PALMER LAMBERT, ESQ.
                                1100 POYDRAS STREET, SUITE 2800
                           NEW ORLEANS, LOUISIANA 70163


                           GIBBS LAW GROUP
                           BY:  KAREN B. MENZIES, ESQ.
                           400 CONTINENTAL BOULEVARD
                           6TH FLOOR
                           EL SUGUNDO, CALIFORNIA 90245

                    *OFFICIAL TRANSCRIPT*

1     APPEARANCES CONTINUED:

2

3                                 BACHUS & SCHANKER
                                  BY:   J. CHRISTOPHER ELLIOTT, ESQ.
4                                       MELANIE SULKIN, ESQ.
                                  1899 WYNKOOP STREET
5                                 SUITE 700
                                  DENVER, COLORADO 80202

6

7

      FOR Sanofi S.A.:            IRWIN FRITCHIE URQUHART & MOORE
8                                 BY:   DOUGLAS J. MOORE, ESQ.
                                        KELLY E. BRILLEAUX, ESQ.
9                                 400 POYDRAS STREET, SUITE 2700
                                  NEW ORLEANS, LOUISIANA 70130

10

11

12                                SHOOK, HARDY & BACON
                                  BY:   HARLEY V. RATLIFF, ESQ.
13                                      ADRIENNE BYARD, ESQ.
                                  2555 GRAND BOULEVARD
14                                KANSAS CITY, MISSOURI 64108

15

16                                SHOOK, HARDY & BACON
                                  BY:   PATRICK OOT, ESQ.
17                                1155 F STREET NW
                                  SUITE 200
18                                WASHINGTON, DC 20004

19

20                                SHOOK, HARDY & BACON
                                  BY:   JEREMIAH W. WIKLER, ESQ.
21                                2555 GRAND BOULEVARD
                                  KANSAS CITY, MO 64108

22

23    FOR ACTAVIS PHARMA, INC.:   ULMER & BERNE
                                  BY:   KIMBERLY L. BECK, ESQ.
24                                600 VINE STREET
                                  SUITE 2800
25                                CINCINNATI, OHIO 45202

*OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR SANDOZ, A NOVARTIS
      DIVISION:                    GREENBURG TRAURIG
 4                                 BY:  R. CLIFTON MERRELL, ESQ.
                                        BETH K. TOBERMAN, ESQ.
 5                                 TERMINUS 200
                                   3333 PIEDMONT ROAD, NE
 6                                 ATLANTA, GEORGIA 30305

 7

 8    FOR PFIZER, INC., AND
      HOSPIRA WORLDWIDE,
 9    LLC:                         QUINN EMANUEL URQUHART & SULLIVAN
                                   BY:  MARAC GONZALEZ, ESQ.
10                                 51 MADISON AVENUE, 22ND FLOOR
                                   NEW YORK, NEW YORK 10010
11

12

13    FOR HOSPIRA, INC.,
      HOSPIRA WORLDWIDE, LLC,
      FORMERLY DOING BUSINESS
14    AS HOSPIRA WORLDWIDE,
      INC., AND PFIZER INC.:       CHAFFE MCCALL
15                                 BY:  JOHN F. OLINDE, ESQ.
                                        PETER J. ROTOLO, ESQ.
16                                 2300 ENERGY CENTRE
                                   1100 POYDRAS STREET
17                                 NEW ORLEANS, LOUISIANA 70163

18

19    FOR SUN PHARMACEUTICAL
      INDUSTRIES, LTD:             HINSHAW & CULBERTSON
20                                 BY:  GEOFFREY M. COAN, ESQ.
                                   28 STATE STREET
21                                 24TH FLOOR
                                   BOSTON, MASSACHUSETTS 02109
22

23
      ALSO PRESENT:                JENNIFER HECK, ESQ.
24                                 CLAIRE BERG, ESQ.
                                   LAUREN STEVENS, ESQ.
25
```

*OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3    ALSO PRESENT VIA
      TELEPHONE:                BRANDON COX, ESQ.
 4                              BRIAN HAZEN, ESQ.
                                ROBERT BUPHHDZ, ESQ.
 5                              ANDRE MURA, ESQ.
                                ANY ZEMAN, ESQ.
 6                              ALEXANDRA ROBERSTON, ESQ.
                                MATTHEW MCCLARLEY, ESQ.
 7

 8

 9    OFFICIAL COURT REPORTER:  CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
10                              REGISTERED MERIT REPORTER
                                500 POYDRAS STREET, ROOM B-275
11                              NEW ORLEANS, LOUISIANA 70130
                                (504) 589-7779
12                              Cathy_Pepper@laed.uscourts.gov

13

14    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
      PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

15

16

17

18

19

20

21

22

23

24

25
```

***OFFICIAL TRANSCRIPT***

**P-R-O-C-E-E-D-I-N-G-S**

A F T E R N O O N   S E S S I O N

WEDNESDAY, MARCH 27, 2019

(COURT CALLED TO ORDER)


THE COURT:  Afternoon, everyone.  Y'all have a seat.

All right.  So, I've reviewed the submissions of the parties and the pages and pages of argument and exhibits related to these 33, hereinafter referred to, *non-bellwether plaintiffs*' ESI productions.

The complaints about the adequacy of these productions fall into, as I count them, basically five categories:  That there has been ESI produced without associated metadata; that some plaintiffs have failed to produce every single e-mail available to them through the Taxotere Google Group; some plaintiffs have failed to produce entire Facebook posts, including comments and posts liked by them; that certain Rule 26(g) certifications were made after incomplete productions; and that some plaintiffs have produced information with inappropriate redactions.

I've gone through all of the deficiencies notices and the various complaints about those productions, and I find that I can make the following rulings that are applicable to all of these plaintiffs, all of the plaintiffs' ESI that is in

*OFFICIAL TRANSCRIPT*

01:06:14  1    this group, and that a plaintiff-by-plaintiff analysis, at

01:06:19  2    least at this session, is unnecessary.

01:06:21  3              Having reviewed the individual deficiencies and

01:06:25  4    responses, I think that it's appropriate that these rulings

01:06:30  5    apply across the board.  I've not located any particular

01:06:33  6    plaintiff in this group that has idiosyncratic deficiencies

01:06:38  7    that needed to be addressed individually; so, I'm going to

01:06:41  8    address these matters sort of in the categories that I've

01:06:45  9    described, and if there is any one or more individuals that you

01:06:49 10    all think need to be addressed individually when I'm done, we

01:06:52 11    can discuss that.

01:06:53 12              Before we start, I do want to make this

01:06:57 13    observation:  I had certain expectations of what I was going to

01:07:00 14    receive from you all after the last hearing.  Those

01:07:04 15    expectations did not include another letter brief arguing why I

01:07:08 16    should sanction these plaintiffs.

01:07:10 17              We discussed that at some length at the last

01:07:12 18    hearing, and I thought I had made it clear that any such

01:07:15 19    request at this point was premature for the very reason that

01:07:18 20    this deficiency process had not yet been employed by the Court,

01:07:23 21    and that identification and resolution of any deficiencies by

01:07:26 22    me was a condition precedent to the discussion or imposition of

01:07:30 23    sanctions.

01:07:30 24              I specifically said that if I find a production

01:07:35 25    deficient, I'll give the plaintiff a brief time to correct it

*OFFICIAL TRANSCRIPT*

01:07:38  1   and note that with regard to certain of these categories that's

01:07:43  2   what I'm going to do.

01:07:45  3           I said that in the face of an express request

01:07:48  4   that I forego what I called at the time these *mini motions to*

01:07:51  5   *compel* and begin imposing sanctions on the plaintiffs then, and

01:07:56  6   now I've got another letter brief saying that I should do it

01:07:59  7   now before we've undertaken this process.

01:08:01  8           I don't know why I keep getting arguments and

01:08:05  9   letter briefs reurging and rearguing issues that I've already

01:08:09 10   ruled on, but I'm tired of it, and I'm not going to entertain

01:08:13 11   them anymore.  If I get another letter brief or another request

01:08:18 12   revisiting something that's already been resolved, I'm very

01:08:22 13   likely to sanction the person who is responsible for it.

01:08:27 14           I'm just tired of having to replow old ground in

01:08:30 15   this case.  So, that having been said, I'm going to turn to

01:08:35 16   these various categories.

01:08:36 17           As to each of the non-bellwether plaintiffs in

01:08:41 18   this group, one of the requirements of Pretrial Order 71 is

01:08:45 19   that ESI be produced with associated metadata or that the

01:08:51 20   metadata be preserved.  Of course, production of metadata

01:08:55 21   depends upon that metadata being accessible to a particular

01:08:58 22   plaintiff.

01:08:58 23           It's clear to me, based on the statements that

01:09:02 24   have been made by counsel for Sanofi and the other defendants,

01:09:08 25   that at least some of these plaintiffs have produced e-mails

*OFFICIAL TRANSCRIPT*

01:09:11 1   without associated metadata, and to the extent that a plaintiff

01:09:15 2   has done that and particularly has made no effort to obtain

01:09:19 3   that metadata or preserve it, that's got to be done.

01:09:23 4          So, I'm going to order each of these 32

01:09:26 5   plaintiffs, to the extent that they produced e-mails or will be

01:09:31 6   ordered to produce any additional e-mails, that those

01:09:34 7   productions shall take place within the next 21 days, and that

01:09:38 8   any e-mail production, past or future, be accompanied by its

01:09:43 9   associated metadata.

01:09:45 10         If, for any reason, metadata is not produced --

01:09:50 11  let me go back and say this as to the metadata that is

01:09:54 12  produced, that applies both to e-mails that have already been

01:09:59 13  produced and to any e-mails that I ordered to be produced in

01:10:02 14  the future.

01:10:03 15         If, for some reason, e-mail metadata is not

01:10:09 16  available to a particular plaintiff and cannot be produced or

01:10:13 17  is not produced, that plaintiff is to provide -- and again,

01:10:16 18  this goes for past productions as well as future productions --

01:10:20 19  that plaintiff is to provide the defendants a declaration,

01:10:23 20  pursuant to Rule 26(g), explaining the efforts that were

01:10:27 21  undertaken to preserve and obtain that metadata and why it is

01:10:32 22  not available to them.

01:10:34 23         Based on those Rule 26 statements, if the

01:10:38 24  defendants believe that it's appropriate, they can bring any

01:10:42 25  additional insufficiency as regards the efforts of that

*OFFICIAL TRANSCRIPT*

01:10:46  1    plaintiff or any actual spoliation concerns to me as part of

01:10:53  2    this deficiency process in the future.  Okay.  That's going to

01:10:57  3    be based on the information provided by that plaintiff in the

01:11:00  4    Rule 26(g) declaration.

01:11:03  5              As to the Taxotere's Facebook Group, which is a

01:11:10  6    topic that is raised as to many of these plaintiffs, I'm going

01:11:16  7    to decline to order non-bellwether plaintiffs who are not

01:11:19  8    administrators of that group to produce metadata for that

01:11:23  9    entire Facebook Group.  I think that would be wasteful and

01:11:27  10   unnecessary, and I think it's wholly disproportionate to the

01:11:32  11   needs of the case.

01:11:32  12             Now, to the extent that a plaintiff has produced

01:11:37  13   social media ESI that involves them specifically, for instance,

01:11:44  14   posts that they have made, posts that they have replied to and

01:11:48  15   those replies or Facebook messages involving them, the entirety

01:11:54  16   of those posts and replies must be produced.

01:11:57  17             There are numerous complaints as to various

01:12:01  18   plaintiffs who have produced, and I've seen the productions, of

01:12:06  19   strings of comments that are cut off and the like.  To the

01:12:09  20   extent that a plaintiff has participated in social media

01:12:13  21   activity as a poster or a replying or sending and receiving

01:12:20  22   Facebook messages, the entirety of those strings need to be

01:12:24  23   produced.

01:12:25  24             To the extent that a plaintiff has merely liked a

01:12:29  25   social media post, even if that social media is on the Taxotere

*OFFICIAL TRANSCRIPT*

01:12:34  1   Facebook page, I'm not going to require the entire post to be

01:12:38  2   produced unless the plaintiff also replied to it.  I think that

01:12:42  3   requiring such production would, again, be disproportionate to

01:12:45  4   the needs of the case.

01:12:46  5          All right.  Next.  This is an issue that I think

01:12:51  6   applies to every one of these 32 plaintiffs.  I am not going to

01:12:57  7   order every non-bellwether plaintiffs or each of these

01:13:02  8   non-bellwether plaintiffs to produce every since e-mail that

01:13:05  9   they viewed or that was available to them as part of the

01:13:08 10   Taxotere Google Group, even if some of the plaintiffs have done

01:13:11 11   that already.

01:13:14 12          A plaintiff is going to be required to produce

01:13:17 13   e-mails on which they were the sender or a named recipient with

01:13:22 14   the metadata associated with those e-mails.  That is what I'm

01:13:26 15   going to require in terms of ESI from the Taxotere's e-mail

01:13:31 16   group.

01:13:31 17          Requiring the production of every e-mail that

01:13:35 18   someone has simply viewed or could have viewed is of

01:13:40 19   questionable relevance, is cumulative of what has already been

01:13:44 20   produced by other individuals in the case and is otherwise

01:13:47 21   disproportionate to the needs of the case, if, for no other

01:13:51 22   reason, than it could be obtained from other sources such as

01:13:54 23   Google, if it has not already been obtained from that source.

01:13:57 24          To the extent that any prior order of this court

01:14:01 25   or minute entry of this court or any protocol or pretrial order

**OFFICIAL TRANSCRIPT**

01:14:05  1   entered by the Court can be read to require such an expansive

01:14:10  2   production, that is, the production of e-mails that are simply

01:14:13  3   available to be viewed by members of the Taxotere Google Group,

01:14:18  4   this ruling is going to supersede any such order or reading of

01:14:21  5   that order.

01:14:22  6           It's become clear to me in dealing with those

01:14:25  7   issues over the past few months and in reviewing these

01:14:29  8   deficiency notices and the responses to those deficiency

01:14:32  9   notices that any potential relevance or usefulness of that

01:14:34 10   information is far outweighed by the effort and/or expense

01:14:38 11   that's required of these individual plaintiffs to receive this

01:14:42 12   particular cache or until we retrieve this particular cache of

01:14:46 13   information.

01:14:46 14           Notwithstanding Sanofi's arguments about the

01:14:50 15   insufficiency of correctness previously issued of Rule 26(g)

01:14:55 16   statements, to the extent that plaintiffs have not already done

01:14:57 17   so, each of these 32 plaintiffs is ordered to issue

01:15:02 18   supplemental Rule 26(g) statements to accompany any

01:15:06 19   supplemental responses that were previously made and/or

01:15:12 20   supplemental responses that are going to made pursuant this

01:15:17 21   order.

01:15:17 22           So one of the complaints that has been made as to

01:15:21 23   a number of these plaintiffs is that after making Rule 26(g)

01:15:25 24   statements about the completeness of their production and after

01:15:28 25   meet and confers between counsel as to the adequacy of those

*OFFICIAL TRANSCRIPT*

01:15:34 1   productions, additional productions have been made, and the

01:15:36 2   argument is that that renders the previous Rule 26(g)

01:15:40 3   statements untrue, inaccurate, incomplete, what have you.

01:15:44 4           While I understand that that may be the case,

01:15:48 5   this system is set up to address deficiencies in production

01:15:54 6   through a meet and confer process.  It is set up to expect that

01:15:59 7   supplemental productions will be made as a result of that

01:16:02 8   process, and to penalize litigants on either side from making

01:16:08 9   supplemental productions after they've issued a Rule 26(g)

01:16:12 10  statement is contrary to both a system that we've set up and, I

01:16:16 11  think, the spirit of the rules, and I'm not going to do that.

01:16:19 12  We will reach a point where that argument may be well taken.

01:16:22 13  We're not there yet.

01:16:24 14          As I said, this entire process is built to assure

01:16:29 15  that the production of these non-bellwether plaintiffs is

01:16:34 16  complete.  Once we have been through this process and the

01:16:38 17  productions are made pursuant to any order that I issued, I

01:16:41 18  expect Rule 26(g) statements to be provided, and at that point

01:16:45 19  if it's discovered that there is additional information that

01:16:49 20  hasn't been provided, I would expect the defendants to bring

01:16:52 21  that to my attention, and at that point I will entertain

01:16:57 22  arguments about consequences at that point for what is likely

01:17:01 23  to have been too incomplete or inaccurate statements.

01:17:06 24          Finally, as to redactions, Sanofi is correct that

01:17:11 25  in this litigation redactions have to state the basis of the

*OFFICIAL TRANSCRIPT*

01:17:15 1   redaction actually on the face of the redaction itself.  To the
01:17:19 2   extent that plaintiffs here have redacted information that
01:17:22 3   merely identifies or concerns third parties, whether they may
01:17:28 4   be plaintiffs in this matter or not, those are not appropriate
01:17:32 5   materials to be redacted.  Any such redactions should be
01:17:37 6   unredacted.  That information should be produced in the
01:17:41 7   litigation, and it can be marked *confidential* and made subject
01:17:44 8   to the protective order in this case.
01:17:46 9          The only proper redactions, really, that I can
01:17:49 10  envision would be around the attorney-client privilege;
01:17:56 11  although, I don't know how in this sort of document or these
01:18:00 12  sorts of files that an attorney client privilege or privileged
01:18:07 13  information is being discussed is not going to result in a
01:18:10 14  waiver of that privilege, but to the extent that a plaintiff
01:18:14 15  believes that there is information in documents that are
01:18:18 16  otherwise discoverable that should be redacted for purposes of
01:18:23 17  privilege, the normal rules apply.
01:18:25 18          The redaction has to indicate the reason that
01:18:31 19  it's being redacted, a privilege log needs to be provided, and
01:18:37 20  the information needs to be given to the defendants so they
01:18:40 21  have what they need to traverse that claim, and in all
01:18:43 22  likelihood -- I hate to use these words, as always -- in all
01:18:46 23  likelihood I would have to look at that information in camera
01:18:49 24  to determine whether it is privileged and whether any privilege
01:18:53 25  has been waived based on the circumstances of how that

*OFFICIAL TRANSCRIPT*

01:18:57  1   information is being communicated.

01:19:00  2          If, too, plaintiffs are talking about what

01:19:02  3   lawyers told them in social media posts or that, there is going

01:19:05  4   to be questions of waiver, obviously, so I would have to look

01:19:08  5   at those.

01:19:08  6          Okay.  Keeping in mind what I said earlier about

01:19:14  7   beating dead horses, is there anything that you all want to

01:19:18  8   discuss as to the rulings that I've just described?

01:19:24  9          MR. LAMBERT:  Your Honor, Palmer Lambert --

01:19:25 10          THE COURT:  Mr. Lambert can go first since he was the

01:19:27 11   first to jump out of his chair.

01:19:27 12          MR. LAMBERT:  Thank you, Your Honor.  Palmer Lambert,

01:19:30 13   plaintiffs' liaison counsel.

01:19:31 14          Your first bullet point of order was to produce

01:19:39 15   metadata within 21 days from these 32 plaintiffs.  We would

01:19:44 16   request that that be extended to 30 days.  Typically Sanofi is

01:19:49 17   given 30 days to respond.

01:19:50 18          THE COURT:  That's fine.

01:19:53 19          MR. WIKLER:  If it's okay -- Jeremy Wikler for Sanofi.

01:19:59 20   While we're on the point of the metadata, to tie a bow on that,

01:20:00 21   you probably saw a couple of the plaintiffs were saying that

01:20:03 22   they had provided an e-mail which had essentially most of the

01:20:07 23   information that would be in the metadata anyway.  Just to be

01:20:10 24   clear, that's not the metadata.  There is additional

01:20:13 25   information in the metadata, so those plaintiffs as well need

*OFFICIAL TRANSCRIPT*

01:20:16 1    to produce with their metadata.

01:20:18 2         THE COURT:  Right.  I mean, there should not be any

01:20:21 3    confusion on the part of the PSC.  I know you all have to

01:20:23 4    communicate these orders to the various lawyers, not only with

01:20:28 5    regard to these 32 plaintiffs but plaintiffs down the road what

01:20:33 6    metadata is, what it means to preserve it, and what it means to

01:20:36 7    produce it because it's been done, obviously, with many, many

01:20:40 8    plaintiffs in the case; so, taking screen shots of what they

01:20:44 9    believe to be metadata and that sort of thing is not going to

01:20:47 10   be appropriate.

01:20:47 11        I do believe there are going to be cases where

01:20:50 12   you're going to hear and I'm going to hear that a particular

01:20:54 13   plaintiff for some reason can't produce it.  I don't know what

01:20:56 14   those circumstances will be, but I think that I've made

01:21:00 15   provisions for that, if there are such cases, that the

01:21:06 16   defendants are entitled to an explanation for why that is, and

01:21:09 17   then we can deal with those as they come.

01:21:12 18        MR. WIKLER:  Thank you, Your Honor.

01:21:14 19        MR. WOOL:  Your Honor, Zachary Wool from Dawn Barrios'

01:21:14 20   office for the PSC.

01:21:15 21        We continue to help individual counsel who have

01:21:19 22   issues.  One of the issues that's been a little bit recurring

01:21:22 23   is when they contact me about their individual meet and confer

01:21:25 24   with Sanofi.  One of the things that they hear is that you

01:21:28 25   haven't produced metadata, and they are not getting

**OFFICIAL TRANSCRIPT**

01:21:31  1    specifically what Sanofi believes is missing from what has been

01:21:34  2    produced.

01:21:35  3            Obviously, some counsel, I mean, they may have

01:21:37  4    produced an e-mail that's got the to/from date, the entire

01:21:41  5    contents of the e-mail.  If there is specific information that

01:21:44  6    Sanofi sees missing, if they just let the counsel know in the

01:21:47  7    meet and confer, I believe that will cut through, rather than

01:21:49  8    just keep telling counsel to say, "Metadata needs to be

01:21:53  9    produced."

01:21:53 10            THE COURT:  That's a reasonable request.  If you all

01:21:55 11    can come up with talking points, some sort of simple set of

01:21:59 12    bullet points where, when you're speaking with these individual

01:22:02 13    lawyers, to tell them exactly what's missing and maybe even how

01:22:05 14    they can find it, that would be helpful.

01:22:07 15            MR. WIKLER:  I think, I mean, we said that in our

01:22:10 16    paper.  It's not even appropriate under Rule 34 to take an

01:22:13 17    e-mail, turn it into a PDF --

01:22:16 18            THE COURT:  Just do what I'm asking.

01:22:17 19            MR. WIKLER:  Exactly, Your Honor.

01:22:19 20            THE COURT:  Look, you all have been doing fine.  You're

01:22:22 21    cooperating on this, but just continue to cooperate.  When

01:22:26 22    you're talking to these individual lawyers who aren't here all

01:22:29 23    the time and you're having these one-on-one meet and confers,

01:22:33 24    you're going to be dealing, unfortunately, with people who

01:22:38 25    don't know what you're talking about.  To the extent you can

*OFFICIAL TRANSCRIPT*

01:22:40  1   walk them through what it exactly is that you need, it's going

01:22:43  2   to behoove you in the end, and it certainly will behoove me.

01:22:46  3          MR. OOT:  Your Honor, one point of clarification.

01:22:52  4   Patrick Oot for Sanofi.

01:22:55  5               Part of your order suggested that plaintiffs that

01:22:58  6   are a recipient of the Taxotere Google Group e-mail send their

01:23:04  7   inbox.  If they weren't a named sender or a named recipient

01:23:08  8   that they do not have to produce it.  You also suggested that

01:23:11  9   we could obtain that from Google.

01:23:14 10               So, you might remember in our status conference

01:23:16 11   maybe several months ago, I talked about how we handled this

01:23:20 12   with Judge Ogden in the Southern District of New York when I

01:23:23 13   was at the SEC.  He ordered the plaintiffs in that -- sorry,

01:23:26 14   the defendants in that case to agree to -- in that case it was

01:23:32 15   Bloomberg's production of that material to the SEC.

01:23:36 16               The problem that we're dealing with here,

01:23:38 17   Your Honor, is there is a very large volume of information

01:23:42 18   particularly around the contacting the authors of clinical

01:23:48 19   studies that may or may not be sent or received by one of these

01:23:56 20   plaintiffs.  So, the information is extremely relevant.  It

01:23:59 21   goes to the specific claims and our defenses, so we need that

01:24:03 22   information.

01:24:04 23               So, we would either need the Court's assistance

01:24:07 24   to get this information from Google or, alternatively, you

01:24:11 25   know, we would be open to having discussions with the PSC or

**OFFICIAL TRANSCRIPT**

01:24:16  1    having to appoint some, you know, third-party or some plaintiff

01:24:20  2    that has the sort of most amount of this information because

01:24:25  3    we're missing it.

01:24:26  4             You know, we're seeing bits and pieces of it as

01:24:29  5    it's coming in, and I don't think it's fair to say that just

01:24:31  6    because somebody didn't send or receive it and it's still in

01:24:34  7    their inbox, they're still in the custody of this, that Sanofi

01:24:39  8    isn't entitled to it.

01:24:39  9             If you want to talk about proportionality,

01:24:43 10    downloading this information is very simple.  It doesn't cost

01:24:45 11    any money.  You can download it with Outlook.  For $9.99 you

01:24:45 12    can go online with Microsoft and get a month of Microsoft

01:24:50 13    Outlook to download this information.

01:24:55 14             So, the cost and burden of getting this is --

01:24:57 15        THE COURT:  I have looked at this.  I've spent a lot of

01:25:00 16    time thinking about it, and I am not going to order individual

01:25:05 17    plaintiffs across the demographic spectrum who happen to be

01:25:12 18    members of this group to go and find and produce every single

01:25:16 19    e-mail that everyone ever sent in this group.

01:25:18 20             It's disproportionate as to those individuals.

01:25:21 21    It's disproportionate to the needs of their case.  You're

01:25:26 22    telling me that Sanofi, for reasons that are not related to an

01:25:33 23    individual plaintiff, believes that it needs this universe of

01:25:36 24    information.

01:25:36 25        MR. OOT:  Correct.

**OFFICIAL TRANSCRIPT**

01:25:37  1        THE COURT:  I'm not insensitive to that position, and

01:25:40  2   to the extent that I can help you obtain it from Google, I

01:25:44  3   will.  I don't know what you need from me to, other than a

01:25:48  4   subpoena, to obtain that information.

01:25:51  5        You just need to bring it to my attention, and I

01:25:55  6   will do what I can, but to require every individual plaintiff,

01:26:00  7   particularly non-bellwether plaintiffs, to make that production

01:26:04  8   is beyond the line, I think.

01:26:07  9        So, while I'm not arguing that you might be

01:26:12 10   entitled to the information overall, asking individual

01:26:19 11   non-bellwether plaintiffs to be the people who give it to you,

01:26:22 12   I think, is not the way to get it.

01:26:24 13        If you want to have discussions with the PSC

01:26:26 14   about another method for obtaining it, that's fine.  I would

01:26:29 15   encourage you all to do that, or, I don't know, I thought you

01:26:35 16   had sent a subpoena to Google.

01:26:36 17     MR. OOT:  We did.  They have not produced anything to

01:26:39 18   us.  They have refused to produce it, barring -- we've talked

01:26:43 19   about getting consent.

01:26:44 20        We also instructed them on what the process that

01:26:48 21   we're following here, and their position is, shockingly, that

01:26:52 22   you should go and get it from the individual parties in the

01:26:56 23   case, not bother Google for it.

01:26:58 24        So, those that have filed a case in this

01:27:01 25   litigation, have filled out a fact sheet, are much more likely

*OFFICIAL TRANSCRIPT*

01:27:04 1 to bear the burden of this than, you know, some third party

01:27:08 2 like Google, and that's the position they've taken.

01:27:10 3       So, here --

01:27:11 4       THE COURT:  File a motion to compel compliance with the

01:27:14 5 subpoena that you sent, and I will sign an order directing

01:27:17 6 Google to comply --

01:27:19 7       MR. OOT:  Okay.

01:27:20 8       THE COURT:  -- and then we'll go from there.

01:27:21 9       MR. OOT:  Thank you, Your Honor:

01:27:24 10       THE COURT:  Okay.  All right.  On these matters, is

01:27:24 11 there anything else?

01:27:26 12       Are you trying to tell him no, because that would

01:27:33 13 be great.

01:27:34 14       MR. RATLIFF:  Yeah, Your Honor, maybe this is something

01:27:37 15 we can address with the PSC.  I think what Mr. Oot was talking

01:27:42 16 about is the difficulty of enforcing a subpoena against Google

01:27:45 17 who has certain broader business interests.  I'm not responding

01:27:47 18 to those.

01:27:48 19       I think one of the things that might alleviate

01:27:50 20 some of these issues as it relates to this specific group is

01:27:51 21 getting the consent of the individual plaintiffs to collect it

01:27:54 22 from Google, which might help ease that process.

01:27:57 23       THE COURT:  I can't think of any reason under the

01:28:01 24 circumstances that any plaintiff in this case would not give

01:28:04 25 that consent.

*OFFICIAL TRANSCRIPT*

01:28:05  1      MR. RATLIFF:  Okay.

01:28:07  2      THE COURT:  I mean, I would be inclined to order them

01:28:10  3  to sign an authorization.  What I'm trying to do is I'm trying

01:28:15  4  to essentially protect each of these individuals from the task

01:28:18  5  of having to go gather it themselves, and I would think that in

01:28:23  6  return for that accommodation by the Court, that they would at

01:28:27  7  least sign an authorization to allow Google to produce it

01:28:34  8  pursuant to a subpoena.  So, with that, why don't you all look

01:28:38  9  work on that.

01:28:38 10      MR. RATLIFF:  Thank you, Your Honor.

01:28:41 11      THE COURT:  Okay.  So, let me make clear that, I mean,

01:28:47 12  I think that you all probably understand this, the rulings that

01:28:50 13  I just made that will go into the minute entry are going to

01:28:53 14  apply, obviously, prospectively to additional plaintiffs.

01:28:57 15          So, to the extent that you all want to bring

01:28:59 16  another group of deficiencies to me, I suggest that you hold

01:29:05 17  off and give whoever is next on the list 30 days to comply with

01:29:13 18  sort of this clarification on what they have to do and then see

01:29:18 19  where that puts us, okay?

01:29:21 20      MR. WIKLER:  Your Honor, just because there is kind

01:29:24 21  of -- I think, PTO 85 provides a 60-day time frame for the call

01:29:29 22  docket conferences, if we could get one set up, not necessarily

01:29:31 23  for these same issues which you just said will be addressed by

01:29:35 24  your upcoming minute entry for, but potentially for other

01:29:38 25  issues that we have been trying to address as well.

*OFFICIAL TRANSCRIPT*

01:29:40  1          We tried to select a group that had a

01:29:44  2  relationship for this one, but there are other plaintiffs where

01:29:45  3  we have other separate issues that we need addressed as well;

01:29:48  4  so, if we could get that set for 60 days, that would be great.

01:29:52  5          THE COURT:  All right.  Hold on a second.

01:30:03  6          MR. WOOL:  Your Honor, if I may.

01:30:03  7          THE COURT:  Yes.

01:30:04  8          MR. WOOL:  The only issue we may run into if this

01:30:08  9  ruling applies prospectively to everybody, we have another

01:30:12 10  hearing in 30 days, you're going to have, all of a sudden, one

01:30:14 11  plaintiff on two tracts with different deadlines --

01:30:16 12          THE COURT:  We're not having that.  He asked me for a

01:30:18 13  hearing in 60 days.

01:30:19 14          MR. WOOL:  (Speaking simultaneously) I believe there is

01:30:21 15  one deficiency per plaintiff in the way that the process that

01:30:24 16  the order is set out, so we just don't want to be in a process

01:30:28 17  where the plaintiffs are coming back multiple times.

01:30:30 18          THE COURT:  No, I expect if y'all bring a plaintiff

01:30:32 19  you're going to give me everything that they've got.  You're

01:30:35 20  going to identify every deficiency you perceive as to that

01:30:39 21  plaintiff at that particular time.  I don't want to see their

01:30:45 22  names pop up again unless I've ordered them to do something and

01:30:48 23  then they haven't done it, right?

01:30:50 24          Okay.  How about May 28th?  Look, I'm going to

01:30:57 25  put that on the docket for the next one of these sessions at

*OFFICIAL TRANSCRIPT*

01:31:02  1    10:00 a.m.  Call docket.  If, for some reason, that needs to

01:31:12  2    change, you all can bring that to my attention and we'll change

01:31:15  3    it.

01:31:15  4         MR. WIKLER:  Thank you, Your Honor.

01:31:19  5         THE COURT:  Now, is everything copacetic with the

01:31:22  6    issues that you all discussed on these slides with

01:31:24  7    Judge Milazzo?  Is there a plan of action?  Do I need to

01:31:27  8    address anything?

01:31:28  9         MR. MOORE:  One of the things, Judge, we talked about

01:31:30  10   with Judge Milazzo was the -- there was materials information

01:31:38  11   videos, communications that they have withheld on consulting

01:31:44  12   expert privilege and haven't produced to us as it relates to

01:31:49  13   Curtis Thompson.

01:31:50  14        Curtis Thompson's deposition is now going to be

01:31:54  15   Wednesday.  The judge has asked him to pen a letter, which I

01:31:58  16   understand is going to come in today.  Then we're going to take

01:32:01  17   his deposition Wednesday, and then she'll have the benefit of

01:32:03  18   that information by Wednesday before deciding some of the other

01:32:07  19   issues that we raised with her in terms of motion practice and

01:32:10  20   other things.

01:32:11  21        But Palmer astutely raised the issue of getting a

01:32:16  22   decision on the materials as it relates to Dr. Thompson prior

01:32:21  23   to his deposition so that we don't have to do it twice.  I know

01:32:26  24   that Your Honor is out of town tomorrow and Friday, and his

01:32:29  25   deposition is next Wednesday, so I don't even know if that is

**OFFICIAL TRANSCRIPT**

01:32:32   1    feasible.

01:32:33   2               Mr. Lambert represented to the Court that they

01:32:36   3    would able to produce those materials to the Court for

01:32:40   4    in camera review whenever you wanted them.  Our only request

01:32:45   5    was to get a log of what they were producing to you so that we

01:32:48   6    could --

01:32:48   7          THE COURT:  So, is this individual -- I mean, I only

01:32:51   8    know -- everything I know about this issue is just from

01:32:54   9    conversations with Judge Milazzo.  Is this individual providing

01:33:00  10    testimony or a report on any other issue beyond what you all

01:33:04  11    are discussing right now?

01:33:07  12          MR. LAMBERT:  Your Honor, Paul Lambert again on behalf

01:33:10  13    of plaintiff.  These particular pathology slides, which were

01:33:14  14    stained with cytokeratin and Ki-67, were stained back in April

01:33:18  15    of 2018.  He did not rely upon the information in those slides.

01:33:24  16    None of his reports --

01:33:25  17          THE COURT:  That's what this deposition is about.

01:33:27  18          MR. LAMBERT:  Right.

01:33:28  19          THE COURT:  What is his role in this litigation?

01:33:30  20          MR. LAMBERT:  He is a dermatopathology expert.

01:33:33  21          THE COURT:  Is he going to testify?

01:33:34  22          MR. LAMBERT:  He is going to testify.  He issued a

01:33:37  23    report in the case.  Their dermatopathologist issued a report

01:33:41  24    subsequent to that and subsequent to knowing that these types

01:33:45  25    of pathology slides had been stained.

                                     *OFFICIAL TRANSCRIPT*

01:33:48  1          THE COURT:  On what basis do you withhold information
01:33:51  2     from a testifying expert?
01:33:54  3          MR. LAMBERT:  Okay.  The e-mails between counsel and
01:34:01  4     our testifying expert that talk about scheduling phone calls
01:34:06  5     and about strategy and about potential theories in the case,
01:34:11  6     those are not data or information that is not available to the
01:34:17  7     other side and that that expert is relying upon.
01:34:20  8               When we discussed this with Judge Milazzo,
01:34:25  9     Her Honor asked Mr. Moore whether he logged his communications
01:34:28 10     with his experts, which he responded that he does not.  The
01:34:33 11     judge also explained that all counsel have conversations with
01:34:40 12     their experts about potential theories of the case, about what
01:34:43 13     they think information might lead to in terms of what they are
01:34:49 14     looking at in formulating their opinions and creating a expert
01:34:54 15     report in the case.
01:34:58 16               So, we have a letter prepared to you to enclose
01:35:02 17     the in camera production that Mr. Moore referenced.  We don't
01:35:07 18     think that a log is necessary, and we think that the Court will
01:35:12 19     satisfy itself that these e-mail communications are protected
01:35:17 20     under Rule 26.
01:35:18 21          THE COURT:  So, is this essentially communications
01:35:21 22     between counsel and the expert?
01:35:23 23          MR. LAMBERT:  Yes, Your Honor.
01:35:23 24          THE COURT:  Okay.
01:35:23 25          MR. MOORE:  Well, we don't know what they are,

**OFFICIAL TRANSCRIPT**

01:35:26  1   Your Honor.  What I said to Judge Milazzo was, when she asked

01:35:29  2   me, do you usually log communications between you and your

01:35:34  3   terrifying expert that might reveal your mental impressions,

01:35:39  4   what I said to Her Honor was no, not normally, but if I

01:35:43  5   communicate facts to that expert, if it constitutes data or

01:35:47  6   facts considered, not replied upon, data or facts considered

01:35:52  7   that are given to the expert, that becomes discoverable.

01:35:54  8            If I --

01:35:54  9       THE COURT:  I'm going to look at it.  You don't need a

01:35:57 10   log.  He just told you what it is.

01:35:59 11       MR. MOORE:  Well, there is a piece of it, though,

01:36:01 12   that's not mentioned.  I think it's important.  I think that's

01:36:04 13   why it makes this issue so much bigger than just communications

01:36:07 14   with a testifying expert.

01:36:08 15            What happened here is that these slides related

01:36:13 16   to some of the trial plaintiffs.  They were stains to determine

01:36:18 17   whether or not the presence of stem cells were in the hair

01:36:22 18   follicles, the theory being that the biological mechanism by

01:36:27 19   which Taxotere might create prolonged or persistent alopecia

01:36:31 20   has something to do with the stem cells.  We heard about that

01:36:35 21   on science day, and it's been mentioned in some of the

01:36:38 22   scientific evidence in the case.

01:36:39 23            These stem cell slides were apparently either

01:36:48 24   provided to or discussed with a consulting expert who designed

01:36:55 25   a stem cell study.  We believe that the purpose of the stem

**OFFICIAL TRANSCRIPT**

01:37:01  1    cell study was to use plaintiffs in the litigation to fill an

01:37:05  2    evidentiary gap for the biological mechanism that they need to

01:37:09  3    prove to prove their case.

01:37:10  4              So, we believe that in this circumstance, to the

01:37:15  5    extent that there is a consulting expert, and what Mr. Lambert

01:37:19  6    represented to Judge Milazzo was, that this consulting expert

01:37:23  7    was planning a study.  We know that this consulting expert had

01:37:29  8    some form of communication with the testifying expert about the

01:37:33  9    study design, the validation of the study design.  We've seen

01:37:35 10    that in what they've already given us.

01:37:37 11              But this consulting expert apparently was on a

01:37:40 12    video.  The video was provided to the testifying expert, and we

01:37:47 13    believe it was the purpose of creating evidence upon which the

01:37:50 14    testifying expert was going to rely.  So, we want to be able to

01:37:54 15    be --

01:37:54 16              THE COURT:  You believe this based on what?

01:37:55 17              MR. MOORE:  Based on the information that we already

01:37:58 18    had.  It's not the first time that -- the same thing happened

01:38:00 19    in *Propulsid* where they took nine plaintiffs in the litigation,

01:38:05 20    attempted to create a study.  They did create a study.

01:38:09 21              They intended to treat it like it was just some

01:38:11 22    other piece of scientific literature that their expert was

01:38:14 23    going to rely on.  We wanted to pop the hood on it.  We wanted

01:38:17 24    to know if those people in that study were actually plaintiffs

01:38:19 25    in the litigation, Judge.  They refused to tell us.  They

**OFFICIAL TRANSCRIPT**

01:38:19  1    refused to produce the medical records.

01:38:21  2           Judge Fallon ordered that they do, and at the end

01:38:24  3    of the day, what Judge Fallon determined was that it was

01:38:29  4    litigation-driven, created junk science, and threw it out, and

01:38:34  5    it eviscerated the vast majority of that MDL.

01:38:38  6           So, it would not be the first time that you, you

01:38:42  7    know, resourceful lawyers recognized a gap in their scientific

01:38:46  8    case and attempted to use the litigation plaintiffs to create a

01:38:51  9    study to fill it.

01:38:51 10           We want to able to discover that.  But even to

01:38:55 11    able to talk about whatever it is they are going to give you,

01:38:58 12    we would simply want to see a log for that.

01:39:01 13       THE COURT:  Let me ask Mr. Lambert a question.  I ask

01:39:06 14    specifically if the only information and documents that we're

01:39:08 15    talking about are communications between lawyers and this one

01:39:12 16    expert, is there additional information along the lines of what

01:39:15 17    Mr. Moore is talking about?

01:39:18 18       MR. LAMBERT:  What Mr. Moore is talking about is a lot

01:39:21 19    of supposition on his part based on the limited information

01:39:24 20    that we acknowledge that he doesn't have all the information.

01:39:27 21    There is no study.

01:39:29 22           There were these stained slides, I believe eight

01:39:35 23    of them, that we acknowledged should have been produced.

01:39:38 24    Immediately upon recognizing that our expert had not produced

01:39:42 25    them, we had them produced to the other side.

                           *OFFICIAL TRANSCRIPT*

01:39:44  1          We agreed on a four-month continuance of the

01:39:48  2   trial so that they could do some additional discovery on those

01:39:51  3   particular slides and what was seen with respect to those

01:39:55  4   slides.

01:39:56  5          I think you were copied, Your Honor was copied on

01:39:58  6   the letters that went in on Friday.  There is obviously a

01:40:03  7   difference of opinion, a large difference of opinion as to what

01:40:06  8   the scope of that additional discovery should be.

01:40:09  9          But I think Mr. Moore is putting the cart before

01:40:13 10   the horse.  We have a letter penned to you to enclose the

01:40:17 11   e-mails and the videos so that Your Honor can see them.  There

01:40:22 12   was no study done.  There is no data or information relative to

01:40:28 13   the trial plaintiffs that is provided by anybody to --

01:40:35 14          THE COURT:  All right.  Here is what we're going to do,

01:40:36 15   because time is of the essence, so I want this stuff submitted

01:40:40 16   to me immediately.  You know what you're submitting to me.  So,

01:40:44 17   submit it to me now, put together a log, and I will tell you

01:40:50 18   whether you need to produce the log before the deposition to

01:40:55 19   Mr. Moore's client.

01:40:56 20          MR. LAMBERT:  We'll do that, Your Honor.

01:40:56 21          THE COURT:  I just finished doing this in another case.

01:40:59 22   I got an ex parte submission for impeachment.  I looked at it.

01:41:04 23   I ordered the lawyer who sent it to me to log it and send it to

01:41:08 24   the other side.

01:41:09 25          I want you to make the log now, and I will look

**OFFICIAL TRANSCRIPT**

01:41:13  1   at the information, and if I think it's appropriately logged

01:41:17  2   and sent to you, then I'm going to order them to do it before

01:41:21  3   the deposition.

01:41:21  4        MR. LAMBERT:  Your Honor, we would like for you to also

01:41:24  5   be able to consider Dr. Thompson's letter that he's sending to

01:41:29  6   Judge Milazzo at the same time as you're reviewing our

01:41:32  7   in camera submission.

01:41:34  8        THE COURT:  Give me everything you've got now and send

01:41:37  9   me the letter when you get it.

01:41:39 10        MR. LAMBERT:  We should be able to do that no later

01:41:41 11   than tomorrow.  We'll try to get it today.

01:41:45 12        THE COURT:  Okay.  The deposition is Wednesday?

01:41:48 13        MR. MOORE:  Your Honor, we believe -- and to put a

01:41:51 14   finer point on it, the reason the study was stopped -- and

01:41:54 15   Mr. Lambert shared this with us on Monday -- the reason the

01:41:59 16   study with the consulting expert was stopped was because of

01:42:03 17   your rulings on the discoverability of pathology and to any

01:42:06 18   person who touches that is not a consulting expert.  They are

01:42:09 19   like, it becomes discoverable, so that's why it was stopped.

01:42:12 20        We believe, from the communications that we've

01:42:15 21   seen, that there was a study protocol or a study design, some

01:42:19 22   communications about how they were going to do this study.

01:42:23 23        Obviously, we think it's significant because of

01:42:26 24   the fact that they were doing this is virtually an admission

01:42:29 25   that there is a lack of a biological mechanism upon which this

**OFFICIAL TRANSCRIPT**

01:42:33  1    medicine can be established to cause permanent persistent

01:42:39  2    alopecia.

01:42:39  3              So, it's obviously important for us to have as

01:42:42  4    much knowledge about what happened, how far it went, what it

01:42:45  5    showed, why they stopped, so that we can be able to present

01:42:50  6    that to to the Court.

01:42:51  7         THE COURT:  You are going to take a deposition of this

01:42:53  8    doctor and ask him all those questions, right?

01:42:55  9         MR. MOORE:  Of the testifying expert, yes, on

01:42:58 10    Wednesday.

01:42:58 11         THE COURT:  Right.  Okay.  You're talking about a

01:43:04 12    different expert.

01:43:05 13         MR. MOORE:  No.  No, no.  Dr. Thompson.  But as it

01:43:09 14    relates to the study design that the testifying expert

01:43:13 15    apparently see and confirm as appropriate, validated, or

01:43:16 16    whatever it was.  We just want to know whatever that stuff is.

01:43:18 17         THE COURT:  There is a consulting expert out there, and

01:43:21 18    there is Dr. Thompson; is that right?

01:43:27 19         MR. LAMBERT:  That's correct.  This consulting expert

01:43:28 20    has never seen those particular slides and has not touched or

01:43:32 21    seen the plaintiffs or touched their pathology or seen their

01:43:35 22    pathology.

01:43:35 23         THE COURT:  I get that.

01:43:36 24         MR. LAMBERT:  So, we do believe that the pathology

01:43:42 25    slides should have been turned over.  That was our expert's

*OFFICIAL TRANSCRIPT*

01:43:45 1    mistake.  We acknowledge that and we tried to move on, and the

01:43:49 2    solution is already in with the defense, but since Mr. Moore

01:43:55 3    has already gone into so much detail, I feel compelled to

01:43:59 4    explain a little bit more.

01:44:00 5         THE COURT:  Aren't you going to do that in the letter

01:44:03 6    you're writing?

01:44:04 7         MR. LAMBERT:  I will, Your Honor, but it won't be on

01:44:08 8    the record.

01:44:08 9         THE COURT:  But I'm going to read the letter.  That's

01:44:11 10   okay.  Go ahead.

01:44:11 11        MR. LAMBERT:  The stem cell theory related to hair loss

01:44:14 12   has been around since the '90s.  They have experts, both

01:44:17 13   consulting and testifying, that have been on literature related

01:44:21 14   to stem cell theory and hair loss.

01:44:23 15             Okay.  They produced expert reports in this case

01:44:29 16   after they knew that we had stained tissue with these two IHC

01:44:39 17   substances, cytokeratin and Ki-67 stains.  They were provided

01:44:51 18   well before that unstained tissue and tissue blocks from which

01:44:58 19   they could cut additional slides.  They could have done their

01:45:01 20   own stem cell slide testing review with the materials that they

01:45:08 21   had.

01:45:09 22             Their experts, subsequent to that --

01:45:12 23        THE COURT:  But they are entitled to know what your

01:45:14 24   expert did, just as you're entitled to know what their expert

01:45:17 25   did.

*OFFICIAL TRANSCRIPT*

01:45:18 1    MR. LAMBERT:  Yes, and they've already asked him that,

01:45:21 2  actually.  In his subsequent deposition they asked about his

01:45:25 3  invoices which described in some detail what he did with those

01:45:29 4  slides, and they asked Dr. Thompson what he did with those and

01:45:33 5  whether he relied on them, and he already answered those

01:45:37 6  questions.

01:45:37 7    So, we do appreciate that you're going to read

01:45:43 8  our submission.  We think that our submission on Friday is also

01:45:47 9  relevant to this discussion.  Their experts --

01:45:52 10    THE COURT:  Give it all to me and I will get you a

01:45:55 11  decision before the deposition.

01:45:56 12    MR. LAMBERT:  Thank you, Your Honor.

01:45:58 13    MR. MOORE:  Thank you, Judge.

01:45:59 14    THE COURT:  Let's talk about when we next get back

01:46:06 15  together.

01:46:08 16    MR. RATLIFF:  Your Honor, I guess -- Harley Ratliff on

01:46:12 17  behalf of Sanofi.

01:46:14 18    I guess what is difficult for us is not having a

01:46:16 19  mechanism.  We're also not going to see the letter that's going

01:46:19 20  to be submitted.  We understand the material is going to be

01:46:21 21  submitted in camera, a log is going to be submitted in camera.

01:46:24 22    I guess my concern is --

01:46:25 23    THE COURT:  No, hold on.  The materials and the letter

01:46:29 24  are going to be submitted in camera.  I have ordered them to

01:46:31 25  prepare a log now.  I'm not going to get a log.

*OFFICIAL TRANSCRIPT*

01:46:35 1          I want the information now because the deposition

01:46:37 2     is on Wednesday.  The only issue is what they give me and

01:46:41 3     whether I think you're entitled to get a log, and if I do, I'm

01:46:44 4     going to tell them to give you a log.

01:46:46 5          MR. RATLIFF:  Understood, Your Honor.  I guess my

01:46:48 6     concern is, the letter submission that's going to go with it

01:46:52 7     that I presume the defendants will not be able to see.

01:46:55 8          THE COURT:  No.  No.  They are going to be explaining

01:46:59 9     to me what they are giving me, and why it's -- in this

01:47:03 10    situation, the answer is no.

01:47:04 11         MR. RATLIFF:  Okay.  Thank you, Your Honor.

01:47:07 12         THE COURT:  All right.  Okay.  How about April 23rd at

01:47:16 13    10:00 or 3:00 for our regular status conference?  Good?

01:47:28 14         MR. RATLIFF:  Your Honor, someone from Sanofi will be

01:47:34 15    here.

01:47:35 16         THE COURT:  We'll do it at 10 o'clock.  April 23rd at

01:47:37 17    ten o'clock.

01:47:42 18              Yes?

01:47:42 19         MR. RATLIFF:  Sorry, Your Honor.  One last thing.  The

01:47:45 20    deposition on April 3rd is going to go forward, and the

01:47:48 21    deposition on April -- there is another deposition on April 8th

01:47:51 22    of their dermatologist and the scheduling of two additional

01:47:54 23    depositions.

01:47:54 24         I just wanted to alert you to those dates.  I

01:47:57 25    know you know about the April 3rd date but also the April 8th

*OFFICIAL TRANSCRIPT*

01:48:00  1    date, in the event that the attorneys cannot work out maybe

01:48:03  2    some differences that occur during those depositions.

01:48:05  3              THE COURT:  They are going to try very hard.

01:48:08  4              MR. RATLIFF:  We will but I wanted you to know that

01:48:11  5    there is a potential for phone calls.

01:48:14  6              THE COURT:  You know, I usually solve those problems in

01:48:17  7    about 30 seconds, so they can't be that difficult to solve.

01:48:21  8              MR. RATLIFF:  Understood, Your Honor.

01:48:23  9              MR. LAMBERT:  Your Honor, we will try to work out any

01:48:26 10    issues with defense from those.  We understood from

01:48:28 11    Judge Milazzo that Her Honor will be in consultation with

01:48:32 12    Your Honor determining the scope of any additional discovery

01:48:36 13    beyond Curtis Thompson's deposition next Wednesday.

01:48:42 14              THE COURT:  All right.  Thank you all.

         15              VOICES:  Thank you, Your Honor.

         16              (WHEREUPON, at 1:48 p.m., the proceedings were

         17    concluded.)

         18                         *    *    *

         19

         20

         21

         22

         23

         24

         25

*OFFICIAL TRANSCRIPT*

1                          REPORTER'S CERTIFICATE

2

3          I, Cathy Pepper, Certified Realtime Reporter, Registered

4    Merit Reporter, Certified Court Reporter in and for the State

5    of Louisiana, Official Court Reporter for the United States

6    District Court, Eastern District of Louisiana, do hereby

7    certify that the foregoing is a true and correct transcript to

8    the best of my ability and understanding from the record of the

9    proceedings in the above-entitled and numbered matter.

10

11                              *s/Cathy Pepper*
                               _____

12                              Cathy Pepper, CRR, RMR, CCR
                                Certified Realtime Reporter
13                              Registered Merit Reporter
                                Official Court Reporter
14                              United States District Court
                                Cathy_Pepper@laed.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25

                          ***OFFICIAL TRANSCRIPT***