UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635;
Barbara Earnest, Case No. 2:16-cv-17144;
Tonya Francis, Case No. 2:16-cv-17410.

---

**SANOFI DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT VIVIAN FONSECA, M.D.**

---

It is Plaintiffs' burden to prove what caused their hair loss and to rule out potential causes of their alleged hair loss through a differential diagnosis. Defendants do not have to prove that the alleged hair loss experienced by Ms. Durden, Ms. Earnest, or Ms. Francis was caused by another factor. Rather Defendants may demonstrate that Plaintiffs have not met their burden because Plaintiffs' experts did not appropriately rule out likely causes of these Plaintiffs' purported hair loss.

Plaintiffs' specific causation experts concede that changing hormone levels (including through breast cancer hormone treatments) can cause or worsen alopecia. And as Dr. Fonseca, a well-regarded endocrinologist, opines, Ms. Durden, Ms. Earnest, and Ms. Francis all have hormone-related issues that Plaintiffs cannot rule out as potential causes of their purported hair loss. Dr. Fonseca is well-qualified to diagnose hormone-related issues and assess the side-effects that accompany these issues, including hair loss. Dr. Fonseca's opinion that Plaintiffs cannot rule

out hormone-related issues is relevant to the jury's assessment of whether Plaintiffs met their burden on causation and is reliably supported by his review of each Plaintiffs' medical records.

Plaintiffs incorrectly twist the burden of proof and argue that Dr. Fonseca cannot prove that these hormone-related issues *caused* the alleged hair loss of Ms. Durden, Ms. Earnest, and Ms. Francis. Dr. Fonseca does not need to prove causation—that is Plaintiffs' burden. Defendants are entitled to refute Plaintiffs' specific causation expert evidence (if any exists) with contradictory information and potential alternative causes for Plaintiffs' alleged hair loss. Plaintiffs' motion to exclude Dr. Fonseca's limited, narrow opinion should be denied.

## ARGUMENT

### I. DR. FONSECA IS WELL-QUALIFIED TO DISCUSS THE HORMONE PROBLEMS FACED BY PLAINTIFFS DURDEN, EARNEST, AND FRANCIS

Dr. Vivian Fonseca, an endocrinologist, is a Professor of Medicine, Chief of the Section of Endocrinology, and Assistant Dean for Clinical Research at Tulane University Health Sciences Center. *See* Dr. Fonseca Expert Rpt. at 1 (Ex. A). Approximately 50% of his work is clinical practice focusing on patients with endocrine disorders (hormone problems), diabetes, pre-diabetes, and obesity. *Id.* The rest of his work is spent conducting research and clinical trials in the field of diabetes and endocrinology. *Id.* at 1-2. In his clinical practice treating hormone disorders, diabetes, menopause, and obesity, Dr. Fonseca treats patients with varying degrees of hair loss. *Id.* at 5; Fonseca Dep. 76:17-18 ("I do see a lot of patients with androgenic hormonal imbalances that relate to hair loss.") (Ex. B); *id.* 283:10-25.

Dr. Fonseca's extensive experience diagnosing patients with endocrine disorders, diabetes, and obesity makes him well-qualified to assess these conditions in Ms. Durden, Ms. Earnest, and Ms. Francis. As Plaintiffs concede, Dr. Fonseca diagnoses and treats patients with hair loss related

2

to their "androgenic hormonal imbalances." Pls.' Mot. at 7; *accord* Fonseca Dep. 77:20-23 ("Hair loss is associated with endocrine disorders, and I'm an expert in the endocrine treatment of the patient, which would include the management of their hair loss that is endocrine related.") (Ex. B). But Plaintiffs still claim that Dr. Fonseca cannot assess either these Plaintiffs' hormonal imbalances or the ability of Plaintiffs' experts to rule out those imbalances as a cause or contributor to Plaintiffs' hair loss because he is not a hair loss specialist. Such an about-face defies both common sense and the *Daubert* qualification standard. *Huss v. Gayden*, 571 F.3d 442, 453-56 (5th Cir. 2009) (holding that doctor who treated patients with similar conditions could rebut the plaintiff's expert causation opinion and rejecting trial court's decision that an expert could only testify if they were board certified in particular specialties); *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) (allowing physicians to testify about areas that they see in their daily practice). It is also contrary to the testimony of Dr. Tosti, Plaintiffs' specific causation expert, who testified that with certain types of alopecia, she will also have an endocrinologist see her hair loss patients. Dec. 4, 2018 Tosti Dep. Tr. 99:3-9 (Ex. C).

The cases cited by Plaintiffs are not to the contrary. In *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 884 (W.D. La. 2001), the court found expert testimony inadmissible when the expert had never investigated a case involving listerosis. Here, Dr. Fonseca has extensive experience treating and diagnosing endocrine disorders, menopause, and diabetes including associated symptoms like hair loss. *Tanner v. Westbrook*, 174 F.3d 542, 549 (5th Cir. 1999) has no application here because it only examines the evidentiary support necessary for a specific causation opinion. Dr. Fonseca is not offering a specific causation opinion—that is Plaintiffs' burden.

3

## II.   DR. FONSECA'S OPINIONS ARE RELEVANT AND RELIABLE

Plaintiffs "bear[] the burden of proving by a preponderance of the evidence a causal relationship between [] her injury and the . . . use of the product" in question. *Kemp v. Metabolife Int'l, Inc.*, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004). A defendant's expert can call into question a plaintiff's specific causation evidence by pointing to likely alternatives that were not reasonably ruled out. *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 609 (D.N.J. 2002).

Here, Plaintiffs' specific causation expert Dr. Tosti concedes that hormone levels and treatments can be responsible for hair loss in women. Tosti Expert Rpt. at 20, 24, 27 ("Endocrine therapy can cause androgenetic alopecia.") (Ex. D); Dec. 4, 2018 Tosti Dep. Tr. 175:17-175:21 ("Q. There's a peak of androgenetic alopecia seen after menopause? A. There are two peaks. One after delivery, so young women around their 30s. One after menopause.") (Ex. C); *id.* 230:8-13 (Q. And in endocrine therapy, like tamoxifen and aromatase inhibitors, can cause alopecia with a pattern similar to female pattern hair loss due to the miniaturization of the hair follicle, right? . . . A. Yes, I agree."); *id.* 230:15-230:19 ("And you've seen articles that say that hormonal therapy like tamoxifen or aromatase inhibitors can cause permanent alopecia, haven't you? . . . A. There are a few reports, yes."). Dr. Tosti also concedes that it is possible that hormone therapies worsened any hair loss that was caused by chemotherapy in Ms. Durden, Ms. Earnest, and Ms. Francis:

> Q.   Ms. Durden, Ms. Francis, and Ms. Earnest all could have had preexisting hair loss that was made worse by their hormonal therapy, right?
>
> . . .
>
> A.   Let's -- they had a very, very severe hair loss at the end of

4

>   chemotherapy, and their hair did -- didn't grow.  And then I cannot say if the hormonal therapy worsened the problem.  It's impossible to know.
>
>   Q.   So, in other words, it's possible that the hormonal therapy they take worsened their alopecia?
>
>   A.   It's possible that it worsened a situation that was already -- already.  They had a very severe alopecia to all that.  So if any worsen didn't change and after the -- the problem, if you already have almost no hair and you take something that can worsen the problem, you still have -- there is not a big difference.
>
>   Q.   I'm trying to understand your answer. Really all I'm asking is:  Is it possible that for Ms. Durden, Ms. Earnest, and Ms. Francis the hormonal therapy they took has caused some degree of their hair loss, right?
>
>   . . .
>
>   A.   I don't know.  I don't know.  But I think the main problem was the chemotherapy.
>
>   Q.   So you're saying you don't know, you cannot rule out the possibility that some proportion of Ms. Durden, Ms. Earnest, and Ms. Francis's hair loss was caused by their hormonal therapy, correct?
>
>   A.   I think it's unlikely.  In my opinion, it's very unlikely, but I cannot say no, nobody can.

Dec. 4, 2018 Tosti Dep. Tr. 267:4-268:13 (Ex. C).  Despite conceding that it is impossible to rule out hormonal therapies as a cause of Plaintiffs' hair loss, Dr. Tosti does just that in her expert report. Tosti Expert Rpt. 20 (noting that Ms. Durden had been on endocrine therapy since 2012 but ruling it out as a cause because "androgenetic alopecia from endocrine therapy is mild to moderate, rarely very severe, and Ms. Durden's clinical course is distinct from androgenetic alopecia") (Ex. D); *id.* at 24 (noting that Ms. Francis had been on endocrine therapy since 2012 but ruling it out as a cause because "Ms. Francis's clinical presentation and course is distinct from androgenetic alopecia"); *id.* at 27 (noting that Ms. Earnest had been on endocrine therapy since

5

2011 but ruling it out as a cause because "Ms. Earnest's clinical course is distinct from androgenetic alopecia" and "[a]ndrogenetic alopecia does not cause such a diffuse and severe alopecia"); *see also* Sanofi Defs.' Mot. to Exclude Expert Test. on Specific Causation (Dkt. No. XXX).  Dr. Fonseca's testimony is relevant to demonstrating that Dr. Tosti did not reasonably rule out hormone therapies as a cause of Plaintiffs' hair loss.

Dr. Fonseca's determination that Ms. Durden, Ms. Earnest, and Ms. Francis suffered from different hormone disorders that could not be ruled out as the cause of their alleged hair loss is also relevant to rebut Plaintiffs' specific causation evidence.  Fonseca Expert Rpt. at 8 ("From an endocrinological perspective, Ms. Durden's post-menopausal status, obesity, and long term use of Letrozole, an aromatase inhibitor, cannot be ruled out as factors which contributed to her hair loss.") (Ex. A); *id.* at 9 ("Ms. Francis has many factors in her medical history that cannot be ruled out in causing her hair loss from an endocrinology perspective. These include, but are not limited to, morbid obesity, possible insulin resistance related to her obesity, menopause, metabolic syndrome and long-term treatment with Tamoxifen and Arimidex."); *id.* at 10 ("Mrs. Earnest has many factors in her medical history that that cannot be ruled out in causing her hair loss from an endocrinology perspective. These include, but are not limited to, morbid obesity, possible insulin resistance related to her obesity, metabolic syndrome, postmenopausal status, and having fatty liver syndrome. In addition, she has been on long-term endocrine therapy with Arimidex.").

Dr. Fonseca's testimony is also based on reliable data used by practicing physicians to assess whether a plaintiff is suffering from a medical condition.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994) (concluding that "evaluation of the patient's medical records, like performance of a physical examination, is a reliable method of concluding that a patient is ill even

6

in the absence of a physical examination"); *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1138 (D. Or. 2010) (allowing defendants' experts to testify about potential factors that should be considered in a differential diagnosis based on a review of the medical records, medical literature, and clinical experience).

Plaintiffs do not dispute that Ms. Durden, Ms. Earnest, and Ms. Francis all have risk factors for hormone- and/or endocrine-based hair loss.  Instead of adequately explaining why those risk factors can be ruled out, Plaintiffs attempt through this motion to shift the burden to Dr. Fonseca to ***disprove*** specific causation by definitively establishing a different cause to these Plaintiffs' alleged alopecia.  Plaintiffs' tactic is contrary to their burden of proof.  Dr. Fonseca's testimony is helpful to the jury on specific causation and is based on reliable data and methods.  Plaintiffs' motion should be denied.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Exclude Dr. Fonseca must be denied.

Date:  March 29, 2019

                                                Respectfully submitted,

                                                */s/ Douglas J. Moore*
                                                Douglas J. Moore (Bar No. 27706)
                                                **IRWIN FRITCHIE URQUHART & MOORE LLC**
                                                400 Poydras Street, Suite 2700
                                                New Orleans, LA  70130
                                                Telephone: 504-310-2100
                                                Facsimile:  504-310-2120
                                                dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*