UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)             MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                              SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635;
Barbara Earnest, Case No. 2:16-cv-17144;
Tonya Francis, Case No. 2:16-cv-17410.

---

**SANOFI DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT DAVID SPIEGEL, M.D.**

---

Plaintiffs invite the Court to exclude Dr. Spiegel's psychiatric opinions solely because he did not conduct an in-person evaluation of Plaintiffs Durden and Earnest. The Court should decline that invitation; first, the case law provides that an examination of Plaintiff's medical records and other relevant written information is a sufficient basis for a psychiatrist to offer a reliable opinion. Second, Plaintiffs fail to cite to the Court the portion of the American Psychological Association Code that expressly permits a psychiatrist to offer an opinion based on a paper-only review, provided the expert explains this and the sources of information on which the opinion is based. Dr. Spiegel's case-specific opinions conform to these requirements and are therefore admissible.

Further, Dr. Spiegel's general opinions satisfy all Rule 702 requirements, including assisting the trier of fact, and are therefore admissible. Dr. Spiegel specializes in research and treatment for patients with breast cancer and has treated hundreds of cancer patients to help them with the emotional consequences and physical symptoms associated with the disease and its

treatment. Plaintiffs' psychological experts do not focus their practices on women with breast cancer, Dr. Spiegel does. Dr. Spiegel also reviewed volumes of medical records and depositions in forming his case-specific opinions on these women's cases. Plaintiffs' psychological experts did not. These stark distinctions were drawn when Sanofi deposed Plaintiffs' expert psychologists. Plaintiffs developed no such challenges to Dr. Spiegel, choosing instead 48 hours before his deposition to forego deposing him. If Plaintiffs' criticisms of Dr. Spiegel were well-founded, they would have explored them in an examination on the record. They should not ask the Court to substitute in for them to carry the burden of thoughtful discovery on this well-credentialed, and well-prepared, breast cancer patient expert.

Plaintiffs' motion should be denied.

## ARGUMENT

Federal Rule of Evidence 702 states "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:"

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Plaintiffs do not dispute Dr. Spiegel's qualifications. Instead, they claim his case-specific opinions must be excluded because he did not perform an in-person evaluation of Plaintiffs. This argument has no basis in the law or the American Psychological Association *Ethical Principles of Psychologists and Code of Conduct*.

## I. DR. SPIEGEL'S CASE-SPECIFIC OPINIONS ARE RELIABLE AND ADMISSABLE

Plaintiffs cite to the American Psychological Association *Ethical Principles of Psychologists and Code of Conduct*. Pltfs.' Mot. at 5-6.[1] They argue that because Dr. Spiegel did not conduct an in-person examination of Mrs. Earnest or Ms. Durden, his opinions are unreliable. *See id.* at 7-9. It should be noted that "[t]he Ethics Code is intended to provide *guidance* for psychologists." *Ethical Principles of Psychologists and Code of Conduct*, AMERICAN PSYCHOLOGICAL ASSOCIATION, https://www.apa.org/ethics/code/ (last visited Feb. 19, 2019) (emphasis added). Not surprisingly, Plaintiffs pick and choose certain parts of the Code that appear to support their argument. Section 9.01 Bases for Assessments states in full:

> **9.01 Bases for Assessments**
>
> (a) Psychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, *on information and techniques sufficient to substantiate their findings*. . . .
>
> (b) Except as noted in 9.01c, psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions. When, despite reasonable efforts, such an examination is not practical, psychologists document the efforts they made and the result of those efforts, clarify the probable impact of their limited information on the reliability and validity of their opinions, and appropriately limit the nature and extent of their conclusions or recommendations. . . .
>
> (c) *When psychologists conduct a record review or provide consultation or supervision and an individual examination is not warranted or necessary for the opinion, psychologists explain this and the sources of information on which they based their conclusions and recommendations.*

---

[1] Dr. Spiegel is not a psychologist – he is a psychiatrist and medical doctor.

3

*Id.* (emphasis added).

Here – unlike Plaintiffs' own experts Drs. Kevin Bianchini and John Thompson – Dr. Spiegel conducted a complete and thorough review of the medical records and deposition testimony in both Mrs. Earnest and Ms. Durden's cases before reaching his opinions and issuing his reports. *See* Dr. Spiegel Durden Case-Specific Rpt., Exhibit B – Sources Relied On (Ex. A); Dr. Spiegel Earnest Case-Specific Rpt., Exhibit B – Sources Relied On (Ex. B). Both of his case-specific reports immediately and clearly state "I have not conducted an in-person evaluation." *See* Dr. Spiegel Durden Case-Specific Rpt. at 1 (Ex. C); Dr. Spiegel Earnest Case-Specific Rpt. at 1 (Ex. D). Why Dr. Spiegel determined an individual examination was not warranted or necessary for his opinions would have been a good question to ask at his deposition – if Plaintiffs had not canceled it less than forty-eight hours before it was set to begin. Regardless, Dr. Spiegel's respective case-specific reports respond to objective medical records, sworn deposition testimony, and the expert reports of Drs. Bianchini and Thompson, which contain summaries of their interviews with Plaintiffs. Thus, even assuming that the APA Ethical Principles cited by Plaintiffs (1) are even applicable, and (2) are more than the guidelines they purport to be, Dr. Spiegel complied with such principles, further proving the reliability of his case-specific expert opinions.

Moreover, paper review is recognized as a reliable methodology. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994) ("we think that generally, a doctor only needs one reliable source of information showing that the plaintiff is ill and either a physical examination or medical records will suffice—but the doctor does need at least one of these sources"); *Jama v. Esmor Corr. Servs., Inc.*, No. 97-3093 DRD, 2007 WL 1847385, at *36 (D.N.J. June 25, 2007)

4

("Given the extensive psychological illnesses that the Plaintiffs are suffering from, in order to be reliable, any opinion by Dr. Grassian as to causation would have to be as the result of a thorough examination of the Plaintiffs or their medical records.").

As an example, Plaintiffs claim that Dr. Spiegel's opinion that "Ms. Durden's hair was not a serious concern in relation to her sexuality," was based on an "inability to find statements in the records to the contrary." Pltfs.' Mot. at 8. This misrepresents Dr. Spiegel's expert report, which cites to objective medical evidence that "Ms. Durden confided in her primary care physician, Dr. Velu, that she was ready to resume sexual intercourse with her partner: 'She wants to resume sexual intercourse with partner since undergoing abdominal surgery with Dr. St. Hillaire.'" Dr. Spiegel Durden Case-Specific Rpt. at 9 (Ex. C). In fact, this objective evidence is evidence Dr. Thompson testified would have been important for him to know prior to reaching his opinions and issuing his report in terms of assessing Ms. Durden's social functioning. Thompson Dep. 246:25-247:6 (Ex. E). Thus, Dr. Spiegel's opinion is not based on an "absence of evidence," but rather concrete evidence that contradicts Ms. Durden's deposition testimony and further supports Dr. Spiegel's opinion that Ms. Durden may be inclined to respond in such a way that her symptoms seem worse than they are.

Sanofi is entitled to dispute the diagnoses of Plaintiffs' experts. Dr. Spiegel did not need to examine Ms. Durden or Mrs. Earnest to know that information they conveyed in their respective interviews with Drs. Bianchini and Thompson were contradicted by information in their respective medical records and/or sworn deposition testimony. Plaintiffs' position that because their experts

5

spent some time (albeit very little)[2] with each Plaintiff – and despite the fact that those experts failed to review all relevant, unbiased information prior to reaching their opinions and issuing their reports – makes their opinions reliable, but Dr. Spiegel's opinions unreliable is untenable.

## II. DR. SPIEGEL'S GENERAL OPINIONS ASSIST THE TRIER OF FACT AND ARE RELEVANT AND ADMISSIBLE

There should be no question that Dr. Spiegel's general report satisfies all of the requirements of Federal Rule of Evidence 702. Dr. Spiegel has "scientific, technical or other specialized knowledge" in the topics in which he is offering expert opinions. *See* FED. R. EVID. 702. He has been practicing psychiatry for nearly fifty years and focuses specifically on the "psychiatric and psychological aspects of coping with cancer and its treatment." Dr. Spiegel General Expert Rpt. (Ex. F). Further, he specializes in "research and treatment involving patients with breast cancer." *Id.* He has "treated hundreds of cancer patients to help them with the emotional consequences and physical symptoms associated with the disease and its treatment." *Id.*

Dr. Spiegel's general report discusses how breast cancer patients assess the risks and benefits of treatment at the time of their diagnosis, how their awareness of treatment side effects changes over time, and how they reassess risks and benefits after a period of longer-term survival. *See generally id.* All of these general opinions are relevant to Plaintiffs' individual cases. How a breast cancer patient thinks and feels during her diagnosis, treatment, and in the follow-up period and how treatment choices impact a breast cancer patient's view of self and treatment after survival

---

[2] Dr. Bianchini spent approximately one hour and fifteen minutes with Ms. Durden and one hour and forty minutes with Mrs. Earnest. Bianchini Dep. 190:14-19; 191:13-18 (Ex. G). Dr. Thompson spent approximately two hours with Ms. Durden and two hours with Mrs. Earnest. Thompson Dep. 146:5-10; 150:15-23 (Ex. E).

are certainly relevant to a specific plaintiffs' claimed emotional damages.  Dr. Spiegel's experience treating numerous breast cancer patients should not be discounted as Plaintiffs suggest.  Moreover, these general opinions are both incorporated by reference and are tied to each Plaintiffs' case more specifically in their case-specific reports.  *See* Dr. Spiegel Durden Case-Specific Rpt. (Ex. C); Dr. Spiegel Earnest Case-Specific Rpt. (Ex. E).  It is relevant why each Plaintiff chose her specific breast cancer treatment.  For example, it is relevant that Ms. Durden chose the most aggressive surgical treatment option, even though there was no additional survival benefit.  It is also relevant that Mrs. Earnest chose to receive treatment with doxorubicin even though she had a family and personal history of heart issues.  Dr. Spiegel's general report speaks to these issues on a higher, more general level and will certainly help the trier of fact to understand the evidence or determine a fact in issue.  *See* FED. R. EVID. 702.

      Dr. Spiegel's general testimony is also "based upon sufficient facts or data," as evidenced by the numerous references he cited and his vast experience on this topic.  *See* Dr. Spiegel General Expert Rpt. (Ex. F).  Finally, he "reliably applied the principles and methods to the facts of the case," by using his expertise of treating breast cancer patients with emotional symptoms to offer opinions on plaintiffs who were breast cancer patients alleging emotional symptoms.  Dr. Spiegel's general opinions offer guidance on emotional issues breast cancer patients face irrespective of their participation in a lawsuit.  His general expert opinions should be in admitted in their entirety.

## III.    DR. SPIEGEL'S REBUTTAL OPINIONS ARE RELEVANT AND ADMISSABLE

      Finally, Plaintiffs argue that "Dr. Spiegel mischaracterizes or ignores the facts gathered by Plaintiffs' experts, Drs. Thompson and Bianchini, during their in-person examinations of Ms.

Durden and Ms. Earnest." Pltfs.' Mot. at 10. What Drs. Thompson and Bianchini "gathered" during their in-person examinations of Plaintiffs cannot be defined as "facts." Instead, they are subjective representations of what each Plaintiff told each expert hired for the purposes of litigation. That is not to discount Plaintiffs' feelings, but rather to point out that there are various statements in these interviews that are indeed contradicted by objective evidence in medical records or sworn deposition testimony. Rather than relying on a Plaintiffs' subjective description of her emotional symptoms, Dr. Spiegel relied upon objective facts in the record after a comprehensive review. Moreover, Dr. Bianchini, Dr. Thompson, and Dr. Spiegel all agree that patients presenting in a medicolegal context may be inclined to exaggerate their symptoms.

Further, a review of the DSM-5 criteria for an adjustment disorder does in fact show that neither Dr. Bianchini nor Dr. Thompson properly applied the criteria to either Ms. Durden or Mrs. Earnest. Sanofi does not find it necessary to again discuss why Plaintiffs' experts failed to properly apply the DSM-5 criteria here, as that is thoroughly discussed in Dr. Spiegel's case-specific reports, as well as in Sanofi's Motion to Exclude Expert Testimony of Dr. Kevin Bianchini (Rec. Doc. 6151) and Motion to Exclude Expert Testimony of Dr. John W. Thompson Jr. (Rec. Doc. 6141). Dr. Spiegel has extensive experience treating breast cancer patients with emotional symptoms. *See* Dr. Spiegel General Expert Rpt. (Ex. F). It is not unreasonable or unreliable for Dr. Spiegel to opine that Plaintiffs' experts failed to properly apply the criteria for an adjustment disorder.

Plaintiffs' briefing contradicts their own experts' testimony. For example, Plaintiffs claim that Dr. Spiegel "contests the evaluation by Plaintiffs' experts" by "asserting that Ms. Durden and

Mrs. Earnest's response to their permanent hair loss is not out of proportion to expected reactions." Pltfs.' Mot. at 12. Yet Plaintiffs own experts testified that Plaintiffs' responses were not out of proportion to the severity of the stressor. Thompson Dep. 231:23-232:3 (Ex. E) ("I didn't see [Ms. Durden] had marked distress that was out of proportion to severity of the stressor because I think she probably has distress that's consistent with the severity of the stressor."); 345:24-346:1 (Ex. E) ("I think [Mrs. Earnest's] distress is consistent with the severity of the stressor as I said in Ms. Durden."); Bianchini Dep. 297:20-298:3 (Ex. G) (Q. All right. Now, you agree that the symptoms reported by Ms. Durden are not out of proportion to the severity or intensity of the stressor that she has; correct? A. Yes. Q. And you agree that the symptoms reported by Ms. Earnest are not out of proportion to the severity or intensity of the stressor that she has; correct? A. Yes.). Moreover, Plaintiffs state their "experts learned from their examinations that both women have been socially impacted by their hair loss," and that Dr. Spiegel discounted this information. Pltfs.' Mot. at 12. Dr. Spiegel merely contradicts this evidence based on his review of sworn testimony from all of the collateral witnesses – witnesses Plaintiffs identified as persons who would testify about how their respective hair loss has impacted their lives. Plaintiffs own experts had not reviewed these depositions prior to reaching their opinions and issuing their reports. Indeed, during Dr. Thompson's deposition, his opinion on Mrs. Earnest's social functioning changed based on new information he had received. *See* Thompson Dep. 340:2-10 (Ex. E) (Q. And [Mrs. Earnest's] on the lower end of meeting the criteria for an adjustment disorder; correct? A. Yes. I think based on -- certainly based on the recent interviews and depositions of her family members where they are reporting that she functions at maybe a higher level than I was able to get when I

interviewed her.").

It is clear that Dr. Spiegel did not ignore obvious facts as Plaintiffs claim. Instead, he reviewed the entire record – including the interviews of Plaintiffs, as well as all of the medical records and depositions in both cases – before reaching his opinions in both cases. His case-specific rebuttal opinions are thus both reliable and relevant and are admissible.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Exclude Dr. Spiegel must be denied.

Date:  March 29, 2019

>Respectfully submitted,
>
>*/s/ Douglas J. Moore*
>Douglas J. Moore (Bar No. 27706)
>**IRWIN FRITCHIE URQUHART & MOORE LLC**
>400 Poydras Street, Suite 2700
>New Orleans, LA  70130
>Telephone: 504-310-2100
>Facsimile:  504-310-2120
>dmoore@irwinllc.com
>
>Harley Ratliff
>Adrienne L. Byard
>**SHOOK, HARDY & BACON L.L.P.**
>2555 Grand Boulevard
>Kansas City, Missouri 64108
>Telephone: 816-474-6550
>Facsimile:  816-421-5547
>hratliff@shb.com
>abyard@shb.com
>
>***Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*