UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)              MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635;
Tanya Francis, Case No. 2:16-cv-17410;
Barbara Earnest, Case No. 2:16-cv-17144

**MEMORANDUM IN OPPOSITION TO SANOFI'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ALAN BAUMAN, M.D.**

In its exuberance to exclude all of Plaintiffs' experts, Sanofi again ignores the basic tenets of *Daubert*, this time seeking to bar Dr. Alan J. Bauman, Plaintiffs' hair loss and hair restoration expert, by raising issues that are appropriate for the factfinder. Sanofi likewise oversimplifies and mischaracterizes Dr. Bauman's opinions, cherry picking his testimony to minimize the complex effects on women's health and well-being when unexpectedly faced with permanent hair loss. By hinting these women's reactions to permanent hair loss are an *emotional* response to a circumstance more common with men and hence "within the knowledge and experience of the average layperson," Sanofi's insensitivity is on full display. But the sly suggestion that these women are frail and emotional is not well taken—and in fact underscores why expert testimony is needed: Societal norms regarding hair, appearance, and health are real to some but not obvious to all. With over twenty-years' experience in the field, Dr. Bauman is fully qualified to opine on the effect of permanent hair loss on women, as well as potential medical remedies (a Capelli Naturail a Contratto ("CNC") prosethetic device) and their associated costs,

1

and his testimony about the health effects of permanent hair loss on women is needed medical education.

## LEGAL STANDARD

*Daubert* provides this Court with an analytical framework to determine the admissibility of expert testimony pursuant to Rule 702 of the Federal Rules of Evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Acting as gatekeepers, courts must ensure that the proffered expert testimony is both relevant and based on reliable methodologies. *Daubert*, 509 U.S. at 589; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007); *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). While the "gatekeeper" role is essential, it is not intended to supplant the adversary system or the role of the jury.

Courts have broad latitude to determine whether expert testimony is sufficient. *See Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42, 153 (1999). While many factors identified in *Daubert* bear on admissibility, the courts' inquiry is "flexible" in nature; "the factors . . . may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone*, 288 F.3d at 245.

## ARGUMENT

### I.   DR. BAUMAN'S EXPERT OPINIONS ON SOCIETAL VIEWS OF FEMALE ALOPECIA ARE ADMISSIBLE

Contrary to Sanofi's claims, and as explained below, Dr. Bauman is qualified to offer testimony regarding the interpersonal views of permanent alopecia. As a medical doctor, specialist in hair loss, and cosmetic industry educator, Dr. Bauman has specialized knowledge, skill, experience, and training to opine on the interpersonal effects of female alopecia. His

opinions are based on his clinical experiences with patients, as well as his professional relationships with other experts in the field, and will assist the trier of fact in recognizing this psychological impact. The effects of severe permanent alopecia in women—a condition not commonly seen or expected in women—embody certain psychological and societal features that are often not recognized nor well understood by lay observers. This issue is beyond the "common knowledge" of the average lay person and is therefore suitable for explanation through Dr. Bauman's expert testimony.

### A. Dr. Bauman is Well-Qualified to Offer Reliable Expert Opinions on Societal Views of Female Alopecia.

Under *Daubert*, the Court's gatekeeping obligation is straightforward—to ensure that proffered expert testimony is both relevant and based on a reliable methodology. *See* 509 U.S. at 589. As emphasized by the Supreme Court, the factors identified in *Daubert* "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142, 150 (1999). Proffered testimony may be drawn by an expert from a set of observations based on extensive and specialized experience. *Id.* at 156; *see Pipitone*, 288 F.3d at 247 (holding admissible an expert's testimony that was based mainly on his personal observations, professional experience, education and training).

The Court's responsibility, therefore, is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152; *Pipitone*, 288 at 244. The focus of the Court's inquiry must be based solely on the expert's principles and methodology, and not the conclusions generated. *Id.* at 595. Although the mere

*ipse dixit* of an expert is inadmissible, it is not the Court's task to decide whether an expert's opinions are correct. *See id.*; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Sanofi cherry picks portions of Dr. Bauman's testimony in order to suit their narrative. Despite their efforts, Dr. Bauman's opinion concerning the interpersonal effect of hair loss on women is well-grounded in his professional experience. With over twenty years in the industry, Dr. Bauman is one of the world's leading experts on female hair loss[1] and restoration. (Exhibit A, Bauman Rpt. at 2). He is board certified by the American Board of Hair Restoration Surgeons (ABHRS), a member of the International Alliance of Hair Restoration Surgeons (IAHRS), and a designated Fellow of the International Society of Hair Restoration Surgery (FISHRS). (Exhibit B, Dr. Alan J. Bauman Curriculum Vitae (hereinafter "Bauman CV")). Recognized as a sought-after cosmetic industry educator, Dr. Bauman was the first hair-transplant surgeon to be accepted by the Intercoiffure Canada America (ICA) as an industry partner.[2] In this role, Dr. Bauman works with ICA members to help inform and educate the cosmetic industry about hair loss and restoration opportunities. Dr. Bauman has appeared in numerous media outlets for his expertise on hair loss and its effect on woman, having been frequently featured in magazine interviews, radio programs and television appearances.[3] (Exhibit C, Bauman Dep., 54:25-55:4).

Dr. Bauman has specialized knowledge, skill, experience, and training to opine on the societal effects of female alopecia. As a medical doctor and specialist in hair loss and restoration,

---

[1] *International Hair Loss Expert Dr. Alan Bauman to Reveal New Hair Loss Treatments on The Balancing Act TV Show July 24*, BAUMAN MEDICAL, *available at* https://www.baumanmedical.com/international-hair-loss-expert-dr-alan-bauman-reveal-new-hair-loss-treatments-balancing-act-tv-show-july-24/.

[2] *Top Salon Association Intercoiffure Officially Accepts Dr. Alan Bauman as Its First-Ever Hair Surgeon Industry Partner*, BAUMAN MEDICAL, *available at* https://www.baumanmedical.com/press-release-top-salon-association-intercoiffure-officially-accepts-dr-alan-bauman-first-ever-hair-surgeon-industry-partner/.

[3] *See, e.g.*, Siggins, Corey, *Boca Hair Loss Clinic Treating Large Number Of Women*, BOCA RATON NEWS (January 15, 2006); Bauman, Alan J., *Hair Loss has Deep Rooted Effects on Women*, SOUTH FLORIDA'S HEALTH & WELLNESS MAGAZINE (April 2016). Dr. Bauman has been featured in, and has been a contributor for, ELLE (Rentmeester, Katherine Kluznik, *Six Ways to Thicken and Lengthen Your Hair* (October 2014) and O: The Oprah Magazine. He was also interviewed on several television programs, including The Dr. Oz Show and The Doctors, regarding hair loss problems affecting women.

Dr. Bauman based his opinions on his clinical experiences with patients, as well as his professional relationships with other experts in the field. (Exhibit C, Bauman Dep., 250:17-24; 118:13-18; Exhibit A, Bauman Rpt. at 2). He is well-tied to the fashion and cosmetic industry, often attending conferences, interacting with professionals and speaking in public forums to answer questions related to hair loss. (*See* Exhibit C, Bauman Dep., 174:12-23 ("I think it's more than just my experience in the clinic, there, and, yes, my experience also outside of the clinic as well interacting with other professionals as well as the general public.")). In addition to his experience, and contrary to Sanofi's arguments, Dr. Bauman relied on several published studies to develop his opinion. According to his testimony, Dr. Bauman read and reviewed the items and articles listed in the additional reference list, Exhibit 7 to his deposition testimony—all of which support his opinions as reflected in his report. (*See* Exhibit C, Bauman Dep., 94:7-8; 252:14-20). The studies cited have found a "cause-and-effect relationship between the perception of having 'bad hair' and experiencing negative psychological consequences." (Exhibit A, Bauman Rpt. at 2; Exhibit C, Bauman Dep., 178:7-179:21).

Dr. Bauman is therefore fully qualified to offer an opinion based on his professional experience. Sanofi's contentions over his qualifications and the reliability of his opinions are better suited as arguments against the weight of his testimony, rather than its admissibility. *See Williams v. Monitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018); *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

**B. Dr. Bauman's Expert Opinions On Societal Views of Female Alopecia Are Relevant And Helpful To The Trier Of Fact.**

For testimony to be admissible pursuant to Federal Rule of Evidence 702, an expert's opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone*, 288 at 245 (quoting *Daubert*, 509 U.S. at 590). Accordingly, the testimony must be

5

"relevant to the task at hand" and not fall within the common knowledge of the ordinary lay person. *See Jacobs v. Northern King Shipping Co.*, 1998 U.S. Dist. LEXIS 721 *3 (E.D. La. 1998). Yet there is no requirement that expert testimony address matters entirely "beyond the jury's sphere of knowledge"; in fact, such a test was rejected by the original drafters of Rule 702. *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 279 (3d Cir. 1983)  Thus, "[e]ven when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have specialized knowledge to bring to bear on the same issue which would be helpful." 3 Weinstein & Berger, Weinstein's Evidence § 702[02], at 702-15 to 702-16 (1989); *see In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d at 279; *Specht v. Jensen*, 853 F.2d 805, 813-14 (10th Cir. 1988).

The effects of severe alopecia embody certain psychological and societal features that are not well understood by lay observers. Currently, there are approximately 46 million American women suffering from some form of hair loss. (Exhibit C, Bauman Dep., 72:6-14). Despite its prevalence, however, "there is an undeniable societal stigma"[4] associated with female alopecia:

> [I]t is a recognized fact in our society that it is more acceptable for a man to be bald than a woman. . . . Yet while many bald men do nothing whatsoever to alter their appearance, society does not permit women to enjoy the same luxury. To function well in society, a woman must both feel and appear "normal."

*Irion v. Prudential Ins. Co.*, 765 F. Supp. 337, 340 (N.D. Tx. 1991), *rev'd on other grounds by* 964 F.2d 463 (5th Cir. 1992); *see* Exhibit A, Bauman Rpt. at 2 ("There is no socially-acceptable option for women with extensive hair loss. In simple terms, a bald man is socially acceptable, but a bald woman is not."). A full head of hair is often seen as an outward visible sign of youth or health, indelibly linked to a woman's femininity, sexuality, identity, and well being. (Exhibit A, Bauman Rpt. at 2). Research has shown, consequently, that extensive loss of hair can have wide-

---

[4] Bauman, Alan J., *Hair Loss has Deep Rooted Effects on Women*, SOUTH FLORIDA'S HEALTH & WELLNESS MAGAZINE (April 2016).

ranging effects on those women afflicted—stemming from loss of confidence and diminished self-esteem to depression and anxiety.[5] Dr. Bauman is proffering an opinion on societal views of female hair loss based on over twenty years of professional experience. (Exhibit A, Bauman Rpt. at 2). Moreover, Dr. Bauman's testimony will assist the trier of fact in recognizing the psychological impact on women caused by these societal views. He has clinically treated thousands of female patients and has witnessed first hand the psychological toll on women prior to restoration. (*See* Exhibit A, Bauman Rpt. at 2 ("I have developed a clear view of the potentially devastating psychological impact of thinning hair and hair loss (alopecia) in women, as well as the mental 'healing' effect of hair restoration can have on a woman's quality of life and well-being.")).

Jurors may feel inclined to dismiss Plaintiffs' emotional distress, believing hair loss to be a trivial matter when compared to surviving cancer.[6] However, no juror can truly understand the psychological devastation of severe hair loss unless he or she experienced the same—or received medical education on the matter. Society places great emphasis on hair and its role in making women feel young, healthy, and beautiful, and this has effects on self-esteem, relationships, and professional growth. (*See* Exhibit A, Bauman Rpt. at 2). This issue is beyond the "common knowledge" of the average lay person and is therefore suitable for explanation through expert testimony.

## II.    DR. BAUMAN'S EXPERT OPINIONS CONCERNING THE POTENTIAL PSYCHOLOGICAL IMPACT OF FEMALE ALOPECIA ARE ADMISSIBLE

Dr. Bauman offers opinions regarding the psychological impact permanent alopecia in women—opinions he is qualified to offer based on his education, his many years of clinical experience, his professional experience in the industry, and his knowledge of the pertinent

---

[5] *Id.*
[6] *Id.* ("[H]air loss is often falsely thought of as merely a cosmetic problem.").

7

medical literature. His opinions on hair loss in general, and the potential resultant psychological damage, likewise rest on a reliable foundation based on Dr. Bauman's qualifications and an established methodology of assessing the psychological condition of his patients derived from personal one-on-one consultations. Therefore, and as explained in further detail below, Sanofi's claims regarding the inadmissibility of Dr. Bauman's opinions are meritless.

### A. Dr. Bauman is Qualified to Offer Expert Opinions on the Psychological Impact of Permanent Alopecia in Women.

The threshold inquiry in any *Daubert* assessment is whether a particular expert is qualified to testify through "knowledge, skill, experience, training or education." *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Courts have wide discretion when navigating the expert-qualification process. *See Williams*, 898 F.3d at 625; *Roman v. Western Mfg.*, 691 F.3d 686, 692 (5th Cir. 2012); *see also United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010). So long as there is "sufficient indicia" that an individual will "provide a reliable opinion" on a subject, courts may qualify that individual as an expert. *Huss v. Gayden*, 571 F.3d 442, 455-56 (5th Cir. 2009); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) ("As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function.").

Even if the subject of his testimony is outside his area of specialty, a physician's general knowledge, training, and education in the fields of medicine will be sufficient predicate to allow him to testify. *McClain v. Cain*, 2015 U.S. Dist. LEXIS 96849 *57 (E.D. La. May 26, 2015); *United States v. Viglia*, 549 F.2d 335, 337 (5th Cir. 1977). "Under the general principles of evidence law, [a physician] is qualified to give a medical opinion as to [a person's] mental state . . . ." *McClain*, 2015 U.S. Dist. LEXIS 96849 at *57 (quoting *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987)). As made clear under *Daubert*, any critique regarding the substance of the physician's testimony and conclusions will go to the weight of the testimony, and not its admissibility. *See United States v. Valencia*, 600 F.3d at 421. To the extent Sanofi seeks to challenge the common understanding of hair and hair loss with Dr. Bauman, it will have a full and fair opportunity to do so on cross examination.

Dr. Bauman is proffering an opinion on the observed psychological impact of female alopecia. Although not a psychologist or psychiatrist, Dr. Bauman is a medical doctor and specialist on hair loss and restoration, with a Bachelor of Science degree in psychobiology. (Exhibit B, Bauman CV). He is board certified by the American Board of Hair Restoration Surgeons (ABHRS), a member of the International Alliance of Hair Restoration Surgeons (IAHRS), and is a designated Fellow of the International Society of Hair Restoration Surgery (FISHRS). (Exhibit B, Bauman CV). Considered one of the world's leading experts on female hair loss,[7] Dr. Bauman has practiced for over twenty years in the industry and has been credited with introducing revolutionary hair restoration techniques[8] to North America. (Exhibit A, Bauman Rpt. at 2). He has treated over twenty thousand patients, roughly half of whom are female. (*Id.* at 2). Although various circumstances may negatively impact a person's mental state, Dr. Bauman's patients specifically seek his expertise in treating alopecia and the psychological trauma associated with significant hair loss. (*See id.* at 3 ("Restoring a woman's hair gives her . . . a boost of well-being and vitality, a new outlook, and renewed self-image and improved self-esteem.")).

---

[7] *International Hair Loss Expert Dr. Alan Bauman to Reveal New Hair Loss Treatments on The Balancing Act TV Show July 24*, BAUMAN MEDICAL, *available at* https://www.baumanmedical.com/international-hair-loss-expert-dr-alan-bauman-reveal-new-hair-loss-treatments-balancing-act-tv-show-july-24/.

[8] Christine Von Kantor, *Alan J. Bauman, M.D., Microsurgical Hair Restoration Specialist Beautifying South Florida Professionals One Hairline at a Time*, M.D. NEWS (2000).

Sanofi erroneously claims that Dr. Bauman's opinions are based *solely* on "anecdotal reporting" by his patients. (Def. Motion, at 9). However, Dr. Bauman specifically testified that his opinions were formed based on the "sum total" of his clinical experience and research efforts. (Exhibit C, Bauman Dep., 124:17-22; 124:23-125:4 (stating that there are "hundreds of papers" on the impact of alopecia in men and women, including articles focused on the psychological impact from hair loss); 178:7-179:21 (quoting an article by Thomas Cash: "Body image is a psychological concept that refers to one's perceptions, thoughts, feelings, and behaviors related to one's physical appearance. For many people, hair is a physical attribute that expresses individuality and is central to feelings of attractiveness or unattractiveness")). Additionally, Dr. Bauman relied on his personal experience working with industry professionals to formulate his opinions:

> [M]y opinion is based on my experience in treating patients, and my experience in collaborating with other professionals in the field, whether they be psychiatrists, psychologists, hair restoration physicians, dermatologists and others who also treat alopecia patients. Listening to them, talking to them, reading their clinical research and learning from their experiences as well.

(*Id.* at 186:12-22). Dr. Bauman's opinions therefore are an extension of his extensive professional experience in treating hair loss. (*Id.* at 91:10-18; 92:1-3).

### B. Dr. Bauman's Expert Opinions on The Psychological Impact of Female Alopecia are Reliable and Admissible.

When assessing the admissibility of expert testimony under the *Daubert* standard, courts must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. To assist federal judges in determining admissibility, *Daubert* presents non-exhaustive guiding factors. *Id.* at 593-94. However, as a general matter, each *Daubert* factor need not be satisfied in order to demonstrate that an expert's testimony is reliable. *United States v. Simmons*, 470 F.3d

1115, 1123 (5th Cir. 2006); *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004); *see also Daubert*, 509 U.S. at 594-95 (emphasizing that the courts' gatekeeping function is "a flexible one").

Often described by courts as a "soft" social science, psychology is an area of expertise "in which research, theories, and opinion cannot have the exactness of hard science methodologies." *Simmons*, 470 F.3d at 1123 (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)). For example, naturally occurring circumstances, such as emotional distress suffered as a result of severe hair loss, may preclude ideal experimental conditions and controls. *See Simmons*, 470 F.3d at 1123. As a result, courts are given broad discretion to determine reasonable measures of reliability in each particular case. *Kumho Tire,* 526 U.S. at 153. "In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations." *Simmons*, 470 F.3d at 1123; *see Pipitone v.*, 288 F.3d at 247 (finding expert's testimony reliable under *Daubert* since his opinions were "based mainly on his personal observations, professional experience, education and training."). To that end, the Court's focus must be on the expert's principles and methodology, rather than the conclusions generated. *See Daubert*, 509 U.S. at 595; *Konrick v. Exxon Mobil Corp.*, 2016 U.S. Dist. LEXIS 13478 *14-15 (E.D. La. Feb. 4, 2016) ("A court cannot exclude expert testimony simply because it disagrees with the expert's conclusions.").

Sanofi's argument is fundamentally flawed.[9] Dr. Bauman's opinions are reliable as they are based on his personal professional observations and professional experience in clinically treating alopecia patients. In his practice, Dr. Bauman is reminded each day of the stress and

---

[9] Sanofi presents a circular argument. Dr. Bauman cannot offer an opinion specifically on alopecia patients who do not seek treatment, because he hasn't personally consulted with them. But, that is not to say that hair loss in general does not affect these individuals. For example, many potential patients may not be able to afford treatments or, since severe alopecia is heavily damages follicles, hair restoration options may be contraindicated.

11

psychological issues that plague those suffering from alopecia. (*See* Exhibit A, Bauman Rpt. at 3; Exhibit C, Bauman Dep., 131:23-132:1 (stating that he deals with the psychological impact of hair loss every day)). Based on his daily observations and interactions with his female patients, he witnesses the effects that hair loss has on their personal and professional relationships. (*See* Exhibit A, Bauman Rpt. at 3). Women entering his office for a consultation report lowered self-esteem, social insecurity, and a diminished sense of self-worth. (Exhibit C, Bauman Dep., 184:12-22; Exhibit A, Bauman Rpt. at 2 ("Many patients with significant alopecia have reported to me that there is an ongoing feeling of loss, which can be equated to coping with the grieving process following bereavement.")). These women suffering from hair loss frequently report higher levels of anxiety, which may lead to social isolation:

> So in my experience in treating women with hair loss, when women have a significant amount of hair loss regardless of the cause, they often reach a level of debilitation that does not allow them to engage in social activities. Many of them are restricted to home. Many of them experience anxiety and depression related to the hair loss situation.

(Exhibit C, Bauman Dep., 131:7-19; *see* Exhibit A, Bauman Rpt. at 2 (Hair loss is often seen as a type of "disfigurement," and "can trigger high levels of anxiety and depression, detrimentally affecting a person's sense of self and identity.")). Furthermore, women increasingly associate hair with their identity and personality. (Exhibit C, Bauman Dep., 140:1-12; 169:11-21. Having treated thousands of female patients, Dr. Bauman has observed that notions of femininity and sexuality are negatively impacted by hair loss. *See id.* at 160:8-17; 167:2-7; Exhibit A, Bauman Rpt. at 2 ("Femininity, sexuality, attractiveness and personality are linked to a woman's hair – more so than for a man.")). As a result, women who suffer hair loss will develop feelings of embarrassment and self-consciousness. (*See id.* at 2).

Dr. Bauman's established methodology of assessing the psychological condition of his patients is derived from personal one-on-one consultations. (Exhibit C, Bauman Dep., 187:13-188:19 ("Consultations typically take an hour-and-a-half. So much of that time is spent, not only discussing the physical issues of the hair loss situation, but also the impact it's having psychologically.")). During the course of the treatments, Dr. Bauman engages with his patients, getting to know them "beyond the physical disfigurement." (*Id.* at 190:3-19; 191:5-13 (his "rapport with patients goes beyond what is reflected in the medical records.")). This allows him to become intimately familiar with his patients' feelings, elucidating and learning from them over the many months and years it takes to treat their hair loss. (*Id.* at 190:20-25. ("For those with more extensive hair loss, the psychological trauma can run deep and is long lasting."); Exhibit A, Bauman Rpt. at 2).

Based upon his personal observations and clinical interactions with thousands of patients suffering severe alopecia, Dr. Bauman's testimony is sufficiently reliable and, therefore, should be admitted into evidence.

### C. **Dr. Bauman's Expert Opinions On The Psychological Impact Of Hair Loss, In General, Are Admissible.**

Sanofi contends that Dr. Bauman's testimony is inadmissible and hinges its argument on the fact that he does not offer an opinion on the specific Plaintiffs' injuries. Of particular importance to Sanofi is the fact that Dr. Bauman did not review any of the Plaintiffs' medical records, nor personally consult with the Plaintiffs prior to rendering his opinion. Again, Dr. Bauman is providing general testimony on the demonstrated psychological effects in women suffering alopecia, and experts are routinely permitted to testify on generalized matters in order to assist jurors in areas outside the common knowledge of an ordinary lay person. *See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 612 n.30 (D.N.J. 2002); FED. R.

EVID. 702 advisory committee notes (describing the use of expert testimony to educate the factfinder on general principles as a "venerable practice"); *see also Powell v. Tosh*, 942 F. Supp. 2d 678, 715 n.11 (W.D. Ky. 2013). As observed by the Advisory Committee, "[i]t might . . . be important in some cases for an expert to educate the factfinder about general principles, ***without ever attempting to apply these principles to the specific facts of the case***." FED. R. EVID. 702 advisory committee notes (emphasis added). Experts will therefore be permitted to proffer a generalized testimony, provided that: (1) the expert is qualified; (2) the expert's testimony addresses a subject matter on which the factfinder can be assisted; (3) the testimony is reliable; and (4) the testimony "fits" the facts of the case. *Id.*

Dr. Bauman's testimony is being offered to assist the jury in understanding female alopecia and the psychological impact severe hair loss can have on women. His opinions on hair loss in general, and the potential for resulting psychological damage, rests on a reliable foundation based on Dr. Bauman's qualifications and extensive professional experience. (Exhibit C, Bauman Dep., 250:17-24.) He has clinically treated thousands of female patients and has witnessed first hand the psychological toll on women prior to restoration. (*See* Exhibit A, Bauman Rpt. at 2). Although he did not personally consult or treat Plaintiffs in this litigation, his testimony "fits" the facts of this case. Plaintiffs in this litigation are alleging emotional distress as a direct result of their severe alopecia. As a world-renowned expert in female hair loss and restoration, Dr. Bauman's testimony will serve to educate jurors on the devastating impact hair loss can have on a woman and how it can affect her overall quality of life and emotional well-being. Utilizing his testimony, the jury will be better suited to recognize and comprehend the extent of Plaintiffs' injuries as a related to hair loss. Further, despite Sanofi's contentions, any

argument against the sufficiency of the information relied upon by Dr. Thompson is a question for the jury regarding the weight of his testimony rather than its admissibility.

### III. DR. BAUMAN'S EXPERT OPINIONS ON HAIR RESTORATION AND TREATMENT ARE RELEVANT TO THE FACTS OF THIS CASE AND ADMISSIBLE

For women with extensive hair loss, restoration provides an escape from mental and physical isolation; "[r]estoring a woman's hair gives her back something vital that she has lost,[10] including, but not limited to, a boost of well-being and vitality, a new outlook and renewed self-image and improved self-esteem." (Exhibit A, Bauman Rpt. at 3). Both Ms. Earnest and Ms. Francis testified as to the impact of their loss, including the impact to their self worth and general appreciation of life. (*See, e.g.,* Exhibit D, Francis Dep., 283:4-285:7, Dec. 13, 2017; Exhibit E, Earnest Dep., 292:5-293:19, Dec. 21, 2017). They likewise testified that they wished their hair would return. (*See* Exhibit D, Francis Dep. 192:14-18; Exhibit E, Earnest Dep. 78:6-12). With this predicate, Dr. Bauman's testimony explains the general options available for treating hair loss—opinions that do not require an evaluation of Ms. Earnest and Ms. Francis to be relevant and reliable.

As indicated in his report, and due to the severity of damage to the scalp, not many options are available for women with extensive hair loss; "When hair follicle density is severely depleted, traditional treatments that improve hair follicle function such as powerful prescription topical medications, FDA-cleared laser therapy devices and so forth, have a limited effect." (Exhibit A, Bauman Rpt. at 3). Severe alopecia, as suffered by the three Plaintiffs in this case, is not amenable to other therapies. (Exhibit C, Bauman Dep., 195:1-5; Exhibit A, Bauman Rpt. at 3 ("If the 'supply/demand ratio' is low—meaning that if there are not enough viable healthy hair follicles around the sides and back of the scalp for microsurgical redistribution via

---

[10] Hair restoration is an attempt to restore a person's "golden ratio." *See* Bauman Depo., 255:3-256:3.

transplantation—then hair restoration surgery is contraindicated.")). Traditional lace- or mesh-based hair replacement systems, such as wigs, offer cheaper, temporary solutions but are often limited by activity and lifestyle methods of attachment. (*See id*.). In contrast, advanced technology, such as 3D-printing, and sophisticated attachment methods have paved the way for manufacturers to create scalp prosthetics. (*See id*.). Although revolutionary treatment options for hair restoration, these prosthetics are costly and unrealistic for the average alopecia patient. (*See id*.). Nevertheless, for women suffering from severe alopecia and damage to their scalp, non-surgical prosthesis is the only feasible option to achieve restoration. (*See id*.).

## IV. DR. BAUMAN'S EXPERT OPINION REGARDING THE COST OF THE CNC PROSTHETIC SCALP DEVICE IS RELIABLE AND ADMISSIBLE

As a pioneering hair-transplant surgeon, Dr. Bauman was the first physician in North America[11] to offer the CNCprosthetic scalp device for patients suffering severe hair loss. This prosthesis allows for a seamless, functional hair restoration utilizing new technology and non-surgical attachment methods.[12] While the CNC device provides a life-changing solution for permanent chemo-induced alopecia, the product is cost prohibitive for most candidates. (*See* Exhibit A, Bauman Rpt. at 4 (costing $12,091 on average per year)).[13] However, for women with severe permenant alopecia, prosthesis is the only viable option for complete restoration. (*See id.* at 3). Dr. Bauman's opinion regarding the costs and utilizity of this treatment is based on his expertise experience in surgically implanting the CNC device, and his testimony will assist the trier of fact in understanding the treatment options, and associated costs, available to those suffering from severe alopecia.

---

[11] *Non-Surgical Hair Replacement CNC 3D Printed Hair System*, BAUMAN MEDICAL *available at* https://www.baumanmedical.com/non-surgical-hair-replacement/.
[12] *See id.*
[13] Overall, nearly $15 billion is spent each year on hair care and hair products alone. (*See* Exhibit C, Bauman Dep., 181:22-182:20).

Sanofi claims that since Dr. Bauman is unaware of the specific costs for the CNC device, he cannot offer a reliable opinion. This argument is meritless. Dr. Bauman readily admits he is unfamiliar with the costs of the CNC product, since he himself does not deal with calculating the estimates. (Exhibit C, Bauman Dep., 235:22-25). Instead, he reasonably relies on his trichologist and cosmetologist, who has been specially trained on the maintenance and service of the CNC devices, to provide cost estimates to his patients. (*Id.* at 212:7-23; 235:9-13). Further, Sanofi argues that the pricing provided in Dr. Bauman's expert report is inconsistent to what he offers his patients. This pedantic argument ignores that Dr. Bauman, through his trichologist, provides an *average* price for the CNC device, which differs for each patient. For example, Dr. Bauman lists in his expert report that the device can cost anywhere between $8,000 (for shorter-length hair) to $15,000 (for longer-length hair), with a mean of $11,500. (*See* Exhibit A, Bauman Rpt. at 4; Exhibit C, Bauman Dep., 216:16-217:5). However, he willingly admits that these prices are only estimates and may fluctuate depending on the patient. (*See id.* at 217:6-18).[14]

Sanofi also unreasonably takes issue with the estimated lifespan of the CNC device. In his expert report, Dr. Bauman states that the average lifespan of the CNC device could last between 2.5 to 3.5 years.[15] (*See* Exhibit A, Bauman Rpt. at 4). However, he testified that the device could easily last longer,[16] or shorter, depending on a patient's lifestyle factors. (Exhibit C, Bauman Dep., 223:16-224:6). According to Sanofi, Dr. Bauman's estimates in his expert report are inaccurate, since he has on previous occasions advised clients that the CNC could last between four to five years on average. However, Sanofi's argument that Dr. Bauman used an incorrect estimate in his report is misleading. Sanofi fails to mention that, as clarified by Dr.

---

[14] It is not abnormal for a future medical procedure to have a range, much in the way a future back surgery cannot be predicted to certainty given routine varience in encounters during such procedures and recovery therefrom.
[15] Having two systems is preferred, as it extends the life of the systems. *See* Exhibit C, Bauman Dep., 221:5-12.
[16] According to Dr. Bauman, there is only one system that he is aware of that lasted for fifteen years. *See* Exhibit C, Bauman Dep., 223:21-224:6.

17

Bauman, the four to five year estimate used in previous promotions was an older estimate from when the product was first launched. (*See id.* at 224:7-231:9). The information in his expert report is based on current industry knowledge of how long the CNC will last. (*See id.* at 226:24-227:7). As such, Dr. Bauman's testimony is admissible since his opinions are based on sufficiently reliable facts and data.

## CONCLUSION

Dr. Bauman is qualified to offer testimony based upon his professional experience, education, training, and observations as a hair loss and restoration specialist. For the forgoing reasons, Plaintiffs' respectfully request that this Court deny Sanofi's motion to exclude Dr. Bauman's testimony.

Dated: March 29, 2019                    Respectfully submitted,

*/s/ Christopher L. Coffin*               */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)           Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.         Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505          GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163             6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                    Los Angeles, California 90045
Fax: (504) 355-0089                      Telephone: 510-350-9700
ccoffin@pbclawfirm.com                   Facsimile: 510-350-9701
*Plaintiffs' Co-Lead Counsel*            kbm@classlawgroup.com
                                         *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*                   */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)               Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                 701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street  New Orleans, LA 70139
New Orleans, LA 70163-2800               Phone: 504-524-3300
Phone: 504-522-2304                      Fax: 504-524-3313
Fax: 504-528-9973                        barrios@bkc-law.com
plambert@gainsben.com                    *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Anne Andrews<br>Andrews Thornton Higgins Razmara, LLP<br>2 Corporate Park, Suite 110<br>Irvine, CA 92606<br>Phone: (800) 664-1734<br>aa@andrewsthornton.com | Daniel P. Markoff<br>Atkins & Markoff Law Firm<br>9211 Lake Hefner Parkway, Suite 104<br>Oklahoma City, OK 73120<br>Phone: (405) 607-8757<br>Fax: (405) 607-8749<br>dmarkoff@atkinsandmarkoff.com |
| J. Kyle Bachus<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>kyle.bachus@coloradolaw.net | Abby E. McClellan<br>Stueve Siegel Hanson LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>Phone: (816) 714-7100<br>Fax: (816) 714-7101<br>mcclellan@stuevesiegel.com |
| Lawrence J. Centola, III<br>Martzell, Bickford & Centola<br>338 Lafayette Street<br>New Orleans, LA 70130<br>Phone: (504) 581-9065<br>Fax: (504) 581-7635<br>lcentola@mbfirm.com | Karen Barth Menzies<br>Gibbs Law Group LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Phone: 510-350-9700<br>Fax: 510-350-9701<br>kbm@classlawgroup.com |
| Christopher L. Coffin<br>Pendley, Baudin & Coffin, L.L.P.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com |
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT