UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** <br><br> **This Document Relates To: Barbara Earnest, Case No. 2:16-cv-17144** | **MDL No. 2740** <br><br> **SECTION: H** <br><br> **JUDGE MILAZZO** <br><br> **MAG. JUDGE NORTH** |

### PLAINTIFF BARBARA EARNEST'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE LEARNED INTERMEDIARY DOCTRINE

Defendants' Motion for Summary Judgment based on the learned-intermediary doctrine artfully avoids grappling with critical facts which readily dispose of its motion. Dr. James Carinder, Plaintiff Barbara Earnest's prescribing physician, *would not* have prescribed Taxotere to Plaintiff if the Sanofi Defendants had provided an adequate warning that Taxotere causes permanent har loss. *See* Ex. A, Deposition of Dr. James Carinder (January 11, 2018) ("Carinder Dep.")138:6-11. Instead, Dr. Carinder would have used an alternative treatment regimen. *Id.*

Sanofi's reliance on authority construing various states' law similarly misses the mark. Applying Louisiana law, courts in this district have denied learned-intermediary summary judgment motions where a warning "would have changed the doctor's actions and avoided or lessened Plaintiffs' injuries." *Frischertz v. SmithKline Beecham Corp.*, 2012 WL 2952427, at *2-3 (E.D. La. July 19, 2012); *In Re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 1393480, at *3 (E.D. La. April 17, 2017).

This Court should follow the decisions applying Louisiana law in *In Re: Xarelto* and *Frischertz* and deny Sanofi's motion, because evidence that Dr. Carinder would have prescribed

1

an alternative treatment, had he known that Taxotere can cause permanent hair loss, more than suffices to defeat Sanofi's summary judgment motion.

## Facts

Plaintiff has responded to the Statement of Undisputed Facts submitted by Defendants. *See* Plaintiff's Response to Defendants' Statement of Undisputed Facts. While a few of Defendants' stated "facts" are accurate, many are inaccurate, incomplete, misleading, taken out of context, or irrelevant to the controversy before the Court.  Where necessary, Plaintiff has attempted to set the record straight by denying that certain facts are undisputed and by citing relevant facts in support of Plaintiff's opposition.  The following factual summary should also prove helpful in assisting the Court in deciding this motion:

Plaintiff's prescribing physician, Dr. Carinder, is board certified in Hematology and Oncology. *Id.* at 51:12. Dr. Carinder is a member of multiple professional medical organizations, including: American Society of Clinical Oncology, American Society of Hematology, American College of Physicians, American Medical Association, American Osteopathic Association, Louisiana Medical Society. *Id.* at 52:11–15. Dr. Carinder warns his patients of all common side effects of chemotherapy drugs. *Id.* at 87:8–16. Ms. Earnest presented to Dr. Carinder in 2011 with ER-positive, PR-positive, and HER-2-negative breast cancer. *Id.* at 74:15-18.

If Dr. Carinder had received notice from Sanofi (or sales representatives who visited him) about a risk of permanent hair loss associated with the use of Taxotere in significant patient populations, he would have reviewed it; he would have taken it seriously; and he would have advised his patients (including Ms. Earnest) about the risk. *Id.* at 162:25–164:14, 171:15–172:2.

But Dr. Carinder did not advise Ms. Earnest of the potential risk of permanent hair loss because Sanofi failed to warn him of that risk. *Id.* at 165:21–166:10. Had Dr. Carinder known

about the risk of permanent hair loss, he would have told Ms. Earnest about other available treatment options and let Ms. Earnest choose the treatment regimen she preferred. *Id.* at 166:19–167:18.

Further, Dr. Carinder testified that if Ms. Earnest presented to him today with her same form of breast cancer, he would *not* prescribe Taxotere but "would give her paclitaxel." Ex. A, Carinder Dep. 138:6-10.

Dr. Carinder has since learned about cases of permanent hair loss associated with Taxotere from an email sent by the American Society of Oncology. He now warns his breast cancer patients about the possibility of permanent hair loss. *Id.* at 119:15–20 ("I get these updates from ASCO and various sites, and they had said that there was now -- some evidence had surfaced that there were cases where patients were not getting their hair back.").

## Legal Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.,* 655 F. 3d

435,439 (5th Cir. 2011). This Court, however, must "refrain from making credibility determinations or weighing the evidence…" *Devon Enterprises, LLC v. Arlington Independent School Dist.,* 541 Fed. Appx. 439, 441(5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's concern is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Argument

### I.     Ample Record Evidence Precludes Summary Judgment Under the Learned Intermediary Doctrine.

In products liability claims involving prescription drugs, Louisiana applies the learned-intermediary doctrine, which permits a drug manufacturer to discharge its duty to warn consumers by adequately warning physicians. "The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician*." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 268 (5th Cir. 2002) (original emphasis). Thus, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient." *Id*. at 267 (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999).

Under the learned intermediary doctrine, to maintain a failure-to-warn claim, the plaintiff must show two things:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) physician of a risk associated with the product that was not otherwise known to the physician.

> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

4

*Id.* at 265-66.

Sanofi believes that Ms. Earnest cannot make either showing. But the evidence is squarely to the contrary. At a minimum, the evidence is such that the learned-intermediary doctrine cannot be resolved on summary judgment in this case.

### A.    Plaintiff's Evidence Shows Sanofi Failed to Warn Dr. Carinder of the Risk of Permanent Hair Loss Associated with Taxotere

The LPLA defines an adequate warning in the following manner:

 "Adequate warning" means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.

La. R.S. 9:2800.53. Sanofi admits, as it must, that in 2011, when Ms. Earnest was treated, the Taxotere label contained *no* "adequate warning" of the risk of permanent hair loss. Despite this, Sanofi argues that evidence is lacking that Dr. Carinder would have read an adequate warning had it been provided. While Defendants attempt to create the impression that any warning would have been futile, their incomplete, misleading, and largely irrelevant citations to Dr. Carinder's deposition just ignore Dr. Carinder's unequivocal testimony that he would have heeded an adequate warning had it been provided.

For example, Dr. Carinder testified that:

- The "main reason" he now prescribes paclitaxel instead of Taxotere to patients with Ms. Earnest's type of breast cancer is the risk of permanent hair loss associated with Taxotere. Ex. A, Carinder Dep. 129:7 – 130:22.

- If Ms. Earnest presented to him today with the same kind of breast cancer, he "would give her paclitaxel." *Id.* at 138:6 – 10.

- He was unaware of the risk of permanent hair loss associated with Taxotere at the time he prescribed Taxotere to Ms. Earnest. And if he had been aware, he

would have warned Ms. Earnest about the risk: "if you're aware of that [the risk of permanent hair loss], you have to, I think, inform patients of that. We weren't aware of that at the time we were -- this lady was treated. We were aware that there was po- -- hair loss was a definite. Okay? But there was nothing that had been made known to me that she potentially would not get her hair back, you know." *Id.* at 137:8–17.

Such testimony is far closer on the summary judgment continuum to demonstrating *Plaintiff*'s causation case as a matter of law. Any arguably conflicting testimony Sanofi points to (assuming such testimony is even arguably inconsistent) presents a fact issue for the jury.

Thus, far from being futile, a timely, adequate warning of the risk of permanent hair loss before Dr. Carinder prescribed Taxotere to Ms. Earnest would have altered Dr. Carinder's decision to prescribe Taxotere. That the December 2015 label included information on permanent hair loss is entirely irrelevant to the issue of whether a label change would have altered his prescribing decision in 2011.

Equally irrelevant for purposes of this motion is Dr. Carinder's one-time experience with another breast cancer patient who experienced persistent hair loss after undergoing Taxotere infusions. Sanofi wrongly equates such an experience with an adequate warning by the drug manufacturer. Even assuming such conflation is sound (it is not), Dr. Carinder testified repeatedly that, despite his one-time experience in 2005 with a patient who received a chemotherapy regimen including Taxotere and who suffered long-term hair loss, he was unaware of the risk of permanent hair loss in significant patient populations. *See e*.g., Ex. A, Carinder Dep. 137:8–17; 162:25–163:12. Sanofi cites no authority for the proposition that a treating physician's one-time anecdotal experience puts the treating physician on sufficient notice to break the causal chain flowing from

6

the drug manufacturers' failure to warn. (The argument is more than ironic, since Sanofi elsewhere vehemently disagrees that a single adverse event would suffice to put *it* on notice.) Besides, Dr. Carinder expressly testified that he was unaware of the risk and *if he had it to do over, he would not have prescribed Taxotere to Ms. Earnest. Id*. at 138:6-10

For these reasons, Sanofi cannot meet its summary judgment burden, because more than sufficient evidence exists to raise a question of material fact as to the inadequacy of Sanofi's warning.

**B.    Plaintiff Evidence Shows Sanofi's Failure to Warn Was Both the Cause in Fact and Proximate Cause of Plaintiff's Injury**

As discussed, Mrs. Earnest must also show that a drug company's failure to warn was the cause in fact and proximate cause of the plaintiff's injury. *Jenkins v. Bristol-Myers Squibb, et al.,* 2015 WL 501230, at *3 (E.D. La. Aug. 21, 2015) (quoting *Stahl*, 283 F.3d at 266).   Sanofi incorrectly suggests that the only way to establish causation is through evidence that Plaintiff's prescribing physician would not have used or prescribed the drug had he received a stronger warning.  This is one method to establish causation; it is not, however, the exclusive means to do so.

Causation can also be established by showing that, if properly warned, a plaintiff's treating physician would have acted differently such that the injury alleged by the plaintiff could be avoided.  *In re: Xarelto*, 2017 WL 1393480, at *3. To assist in easing the cause-in-fact burden on a plaintiff, Louisiana recognizes the "heeding presumption." This presumption assumes that if an adequate warning had been provided, that warning would have been followed and the plaintiff would not have been injured. *Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987); *In re: Xarelto*, 2017 WL 1393480, at *3; *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 797 (E.D. La. Aug. 24, 2011). This presumption may be rebutted with evidence showing that an adequate warning

7

would have been futile under the circumstances. *Bloxom*, 512 So.2d at 850.

As previously explained, had an adequate warning been provided to Dr. Carinder, such a warning would not have been futile.  To the contrary, Plaintiff has introduced affirmative evidence that Dr. Carinder would have altered his decision to prescribe Taxotere to Plaintiff had he been warned of the risk of permanent hair loss. Plaintiff is therefore entitled to the benefit of the heeding presumption under Louisiana law.

## II.     Sanofi's Cramped Construction of Causation Does Not Align with Precedent Concerning the Learned-Intermediary Doctrine

Citing *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991) and *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 18, 2018), Sanofi argues that Plaintiff must demonstrate causation here not only by showing that a proper warning would have changed Dr. Carinder's prescribing decision, but also by showing that Dr. Carinder would have declined to prescribe Taxotere had he received a proper warning.[1]  Louisiana federal courts, however, are not so narrow in their analysis of causation; instead, courts examine whether the plaintiff's physician would have acted differently in response to an adequate warning such as to avoid the plaintiff's injuries.  *See In re: Xarelto*, 2017 WL 1393480, at *3 (denying summary judgment due to genuine issues of fact regarding whether plaintiffs' doctors were adequately warned and whether a different warning "would have changed the doctors' actions and avoided or lessened Plaintiffs' injuries"); *Frischertz*, 2012 WL 2952427, at *2-3 (denying summary judgment where the prescriber testified that, although he still prescribed the drug, he would have disclosed the stronger warning to his patients and deferred to the patient's wishes on whether to take the drug, and the patient submitted an affidavit that she would have refused the drug had she been properly warned); *cf. Harris v.*

---

[1] Plaintiff has, in fact, demonstrated that Dr. Carinder would not have prescribed Taxotere to Plaintiff had he been adequately warned of its risk of permanent hair loss in 2011.  Ex. A, Carinder Dep.  137:8–17; 138:6-10.

*Merck & Co., Inc.*, 2012 WL 5384720, at *6 (W.D. La. Nov. 1, 2012) (denying Rule 12(b)(6) motion to dismiss allegations that prescribing physician would have been deterred from prescribing an 80 milligram dose had an adequate warning of the dangers associated with that dose been provided).

Here, Dr. Carinder unequivocally testified that, had he received an adequate warning of the risk of permanent hair loss, he would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen. Ex. A, Carinder Dep. 166:19–167:18. If Ms. Earnest presented to her treating physician Dr. Carinder today with the same kind of breast cancer, Dr. Carinder would prescribe an alternative treatment regimen without Taxotere. *Id*. at 138:6-13. This testimony easily satisfies the causation element of the learned-intermediary doctrine, and at the very least creates a genuine dispute of fact.

### A.   Objective Evidence also Supports the Conclusion that Plaintiff has Satisfied the Causation Element of the Learned-Intermediary Doctrine

As Judge Fallon has recognized, under Louisiana law, subjective testimony from the treating physician on causation may be "supplement[ed] … with objective evidence of how a reasonable physician would have responded to an adequate warning." *Allgood v. GlaxoSmithKline PLC,* 2008 WL 483574, at n.6 (E.D. La. Feb. 20, 2008) (internal quotations and citations omitted); *See also*, *Grenier v. Medical Engineering Corp*., 243 F. 3d 200, 208 n. 4 (5th Cir. 2001)("a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded.") (internal quotations and citations omitted). Here, Plaintiff has supplemented Dr. Carinder's testimony with evidence that a reasonable physician would have altered his or her prescribing practices had he or she been adequately warned of the risk of permanent hair loss by Defendants. *See* Ex. B, Dr. Linda Bosserman Dep., Ex. 9, pp.20; 49-50; 52-53. Like Dr. Carinder,

a reasonable doctor would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of those risks. *Id*. Accordingly, the existence of both objective and subjective evidence of causation precludes the entry of the summary judgment under the learned-intermediary doctrine.

> **B.** **Plaintiff Has Established Causation Under the Learned-Intermediary Doctrine Because If Dr. Carinder Had Known of the Risk of Permanent Hair Loss in 2011, He Would Have Changed His Prescribing Decision**

Sanofi's bold claim that Plaintiff elicited "no testimony" from Dr. Carinder that "the allegedly non-disclosed risk of permanent hair loss was sufficiently high that it would have changed the [sic] Dr. Carinder's decision to prescribe Taxotere" is flatly contradicted by Dr. Carinder's testimony. As noted, Dr. Carinder was unwavering in his testimony that, had he been made aware of the risk of permanent hair loss associated with Taxotere in 2011, he would have discussed it with Plaintiff and if Plaintiff had chosen not to use Taxotere in her treatment regimen, he would have respected that decision as the ultimate decision on treatment rests with the patient. Ex. A, Carinder Dep. 166:19–167:18. And Dr. Carinder was equally unwavering in his testimony that Sanofi never warned him of that risk and if they had, he would have reviewed that information, taken it seriously and would have advised his patients (including Plaintiff) of such. *Id*. at 163:2-164:14.   Accordingly, in view of Dr. Carinder's testimony, Plaintiff has more than adequately sustained her burden of proving that an adequate warning would have changed her physician's actions in prescribing Taxotere.  Irrespective of case law from other jurisdictions, Plaintiff has satisfied her burden under Louisiana law.

**III.** **Plaintiff's Redhibition Claim is also Not Subject to Dismissal**

Sanofi asserts that Plaintiff's redhibition claim is controlled by the learned-intermediary doctrine and fails for the same reasons. Sanofi is mistaken, and in fact the only case it cites in

support of this argument is *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), a case decided under Texas law—not Louisiana redhibition law or the LPLA.[2]

Sanofi also argues that it is entitled to summary judgement on the redhibition claim because Plaintiff cannot show that Taxotere was useless or inconvenient. But redhibition, properly understood, requires no such thing. Louisiana redhibition law allows proof that the plaintiff would not have used the drug had she known of the undisclosed risk. *Pipitone v. Biomatrix, Inc*., 288 F. 3d 239, 251 (5th Cir. 2002); *Guidry v. Janssen Pharmaceuticals, Inc*., 206 F. Supp. 3d 1187,1200 (E.D. La. August 29, 2016); and *In re Vioxx Products Liability Litigation*, 2010 WL 11570867, at *10 (E.D. La. March 31, 2010).  Here, Dr. Carinder's testimony that Ms. Earnest would not have taken Taxotere had the risk of permanent hair loss been disclosed, Ex. A, Carinder Dep. 138:6-11, forecloses summary judgment on her redhibition claim.

Sanofi ignores the great weight of this case law and instead cites *In Re: Rezulin Prods. Liab. Litig*., 361 F. Supp. 2d 268, 280 (S.D.N.Y. 2005). The plaintiff in *Rezulin*, however, raised no redhibition claim. *Id.* at 280. The court's passing statement about what redhibition requires is *dictum*. What's more, this *dictum* is contrary to the standard of proof required by federal and state courts in Louisiana.

---

[2] Of course, if the redhibition claim is controlled by the learned-intermediary doctrine, then Sanofi's argument fails for the reasons already discussed.

## CONCLUSION

For these reasons, the Sanofi Defendants have failed to meet their burden to show entitlement to summary judgment on Plaintiff's failure to warn and redhibition claims. Accordingly, summary judgment should be denied.

Dated: March 29, 2019                           Respectfully submitted,


*/s/ Christopher L. Coffin*                          */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)               Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.    Andre Mura (CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505              GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                 6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                            Los Angeles, California 90045
Fax: (504) 355-0089                                Telephone: 510-350-9700
ccoffin@pbclawfirm.com                        Facsimile: 510-350-9701
                                                          kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                                          *Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*                            */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                 Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID          BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC           701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street   New Orleans, LA 70139
New Orleans, LA 70163-2800                  Phone: 504-524-3300
Phone: 504-522-2304                             Fax: 504-524-3313
Fax: 504-528-9973                                 barrios@bkc-law.com
plambert@gainsben.com
                                                          *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews                                       Daniel P. Markoff
Andrews Thornton Higgins Razmara, LLP   Atkins & Markoff Law Firm
2 Corporate Park, Suite 110                    9211 Lake Hefner Parkway, Suite 104
Irvine, CA 92606                                   Oklahoma City, OK 73120
Phone: (800) 664-1734                           Phone: (405) 607-8757
aa@andrewsthornton.com                       Fax: (405) 607-8749
                                                          dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk

of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel

of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS