UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION

This Document Relates To:
Barbara Earnest, Case No. 2:16-cv-17144

MDL No. 2740

SECTION: H

JUDGE MILAZZO

MAG. JUDGE NORTH

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.2, Plaintiff, Barbara Earnest, submits the following Response to Defendants' Statement of Facts in Support of their Motion for Summary Judgment:

1. Admitted.

2. Admitted. However, it was not until December 2015 that the Taxotere label made any mention of permanent hair loss being associated with use of the drug. Defendants' Statement of Facts No. 3.

3. Admitted.

4. Admitted but for the most part irrelevant. Taxotere's efficacy as a chemotherapy drug is not at issue in this motion and there were equally effective treatment options available to Ms. Earnest in 2011, as readily evidenced by the fact that Dr. Carinder *would not* have prescribed Taxotere to Ms. Earnest if he had known that Taxotere causes permanent alopecia. Ex. A, Carinder Dep. 138:6-11; *See* Ex. C, NCCN Clinical Practice Guidelines in Oncology, Breast Cancer V.2. 2011, BINV-K, pp.1-5, Ex.5 to Carinder Dep.

5. Admitted.

1

6. Admitted except that Plaintiff's PFS reflects her diagnosis on February 7, 2011 rather than February 2, 2011.

7. Admitted.

8. Admitted but irrelevant to the controversy presently before the Court.

9. Admitted but only to the extent that Ms. Earnest's goal was to survive her cancer diagnosis. However, to the extent Defendants imply that Ms. Earnest would still have taken Taxotere if Defendants had provided an adequate warning that Taxotere causes permanent alopecia., she would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. Ex. A, Carinder Dep. 138:6-11.

10. Admitted but only to the extent that Dr. Carinder told Ms. Earnest the names of the drugs he was prescribing to her, including Adriamycin. As to use of the term "red devil," Plaintiff objects that the colloquial name of a chemotherapy drug is not relevant to Plaintiff's claim or to the instant motion. Plaintiff also disputes this statement to the extent Defendants imply that she would still have taken Taxotere if she had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. *Id*. at 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. *See* Ex. D, Barbara Earnest Deposition (December 21, 2017) ("Earnest Dep."), 191:10–25.

11. Admitted but only to the extent that Dr. Carinder so testified. However, it is completely irrelevant to the controversy presently before the Court and disputed to the extent Defendants imply that Ms. Earnest would still have taken Taxotere if she had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have

taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. Ex. A, Carinder Dep. 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep. 191:10–25.

12. Disputed. Dr. Carinder actually testified that he informs his patients of "the most common side effects . . ." Ex. A, Carinder Dep. 86:19–87:15. The statement is further disputed to the extent Defendants imply that Ms. Earnest would still have taken Taxotere if she had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. *Id.* at 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep. 191:10–25.

13. Admitted but only to the extent that Dr. Carinder testified Taxotere is a "good drug" and that he has prescribed it since it came on the market. However, the remainder of the statement is disputed and irrelevant. Plaintiff objects that Taxotere's purported efficacy is not relevant to Plaintiff's claim or Defendant's motion. It is also disputed that Ms. Earnest would still have taken Taxotere if she had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. Ex. A, Carinder Dep. 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep.191:10–25.

14. Disputed. Dr. Carinder testified that "At the time that Mrs. Earnest was treated … you have two taxanes that you're – basically two taxanes you could use. You had paclitaxel or

3

docetaxel. At that time, I used docetaxel more because you had less risk of infusion reactions, and you had less neuropathy. And the efficacy was very similar." Ex. A, Carinder Dep. 25:21-26:8 (emphasis added). It is also disputed that Ms. Earnest would still have taken Taxotere if Defendants had provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. *Id.* at 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep.191:10–25.

15. Admitted but only to the extent that Dr. Carinder testified the only time he read the package insert was when Taxotere came on the market. However, the remainder of the statement is disputed, irrelevant, and incomplete. It is disputed that Ms. Earnest would still have taken Taxotere if Dr. Carinder had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. Ex. A, Carinder Dep. 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep.191:10–25. It is further disputed that the package inserts were the only way Defendants could have warned Dr. Carinder. Dr. Carinder today warns his breast cancer patients about the possibility of persistent or permanent hair loss after receiving notification about cases of permanent alopecia associated with Taxotere via an email from American Society of Oncology. Ex. A, Carinder Dep. 119:15–20 ("I get these updates from ASCO and various sites, and they had said that there was now -- some evidence had surfaced that there were cases where patients were not getting their hair back."). Dr. Carinder also testified that had he received notice

4

from Defendants about a risk of permanent alopecia associated with the use of Taxotere, he would have reviewed it; he would have taken it seriously; and he would have advised his patients (including Ms. Earnest) about the risk. *Id.* at 162:25–164:14.

16. Disputed. Dr. Carinder was unaware of the risk of permanent alopecia associated with Taxotere at the time he prescribed Taxotere to Ms. Earnest. And if he had been aware, he would have warned Ms. Earnest about the risk: "if you're aware of that [the risk of permanent alopecia], you have to, I think, inform patients of that. We weren't aware of that at the time we were -- this lady was treated. We were aware that there was po- -- hair loss was a definite. Okay? But there was nothing that had been made known to me that she potentially would not get her hair back, you know." *Id.* at 137:8–17.

17. Admitted but only to the extent that Taxotere was part of the NCCN approved regimen in 2011 and Dr. Carinder followed those guidelines in 2011 with Ms. Earnest's treatment. However, it is disputed that Ms. Earnest would still have taken Taxotere if Dr. Carinder had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. *Id*. at 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep.191:10–25. Dr. Carinder was unaware of the risk of permanent alopecia associated with Taxotere at the time he prescribed Taxotere to Ms. Earnest. And if he had been aware, he would have warned Ms. Earnest about the risk: "if you're aware of that [the risk of permanent alopecia], you have to, I think, inform patients of that. We weren't aware of that at the time we were -- this lady was treated. We were aware that there was po- -- hair loss was a definite. Okay? But there was nothing that had been made known to me

that she potentially would not get her hair back, you know." Ex. A, Carinder Dep. 137:8–17. It is further disputed that the NCCN guidelines in 2011 would still have recommended Taxotere as part of the approved regimen (or recommended Taxotere without disclosure of the risk of permanent alopecia) if prior to that date Defendants had disclosed the risk of permanent alopecia in significant patient populations.

18. Admitted but only to the extent that Dr. Carinder testified that his 2005 patient "never got her hair back," "no hair, none." However, the statement is disputed to the extent that Dr. Carinder had only one patient who did not get her hair back after taking a chemotherapy regimen which included Taxotere and that such one-time anecdotal experience somehow constitutes an adequate warning to Dr. Carinder or Ms. Earnest. It is further disputed that Ms. Earnest would still have taken Taxotere if Dr. Carinder had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. *Id.* at 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep.191:10–25. Dr. Carinder was unaware of the risk of permanent alopecia associated with Taxotere at the time he prescribed Taxotere to Ms. Earnest. And if he had been aware, he would have warned Ms. Earnest about the risk: "if you're aware of that [the risk of permanent alopecia], you have to, I think, inform patients of that. We weren't aware of that at the time we were -- this lady was treated. We were aware that there was po- -- hair loss was a definite. Okay? But there was nothing that had been made known to me that she potentially would not get her hair back, you know." Ex. A, Carinder Dep. 137:8–17.

19. Admitted but only to the extent that Dr. Carinder has prescribed Taxotere to treat his breast cancer patients throughout his career. It is disputed that Ms. Earnest would still have taken Taxotere if Dr. Carinder had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder would not have prescribed it due to the risk of permanent alopecia. Ex. A, Carinder Dep. 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep.191:10–25. Dr. Carinder was unaware of the risk of permanent alopecia associated with Taxotere at the time he prescribed Taxotere to Ms. Earnest. And if he had been aware, he would have warned Ms. Earnest about the risk: "if you're aware of that [the risk of permanent alopecia], you have to, I think, inform patients of that. We weren't aware of that at the time we were -- this lady was treated. We were aware that there was po- -- hair loss was a definite. Okay? But there was nothing that had been made known to me that she potentially would not get her hair back, you know." Ex. A, Carinder Dep. 137:8–17. Dr. Carinder now warns his breast cancer patients about the possibility of persistent or permanent hair loss after receiving notification about cases of permanent alopecia associated with Taxotere via an email from American Society of Oncology. *Id.* 119:15–20 ("I get these updates from ASCO and various sites, and they had said that there was now -- some evidence had surfaced that there were cases where patients were not getting their hair back.").

20. Admitted but only to the extent that Dr. Carinder has prescribed Taxotere to treat his cancer patients throughout his career. Plaintiff objects to the extent that Taxotere's efficacy and whether it is a "good" chemotherapy drug are irrelevant to Plaintiff's claim and to the instant motion. It is also disputed that Ms. Earnest would still have taken Taxotere if Dr.

7

Carinder had been provided an adequate warning that Taxotere causes permanent alopecia. She would have not have taken Taxotere because Dr. Carinder wouldn't have prescribed it due to the risk of permanent alopecia. *Id*. at 138:6-11. In fact, Dr. Carinder told Ms. Earnest that if she lost her hair, it would grow back and could come back curly and thick. Ex. D, Earnest Dep. 191:10–25. Dr. Carinder was unaware of the risk of permanent alopecia associated with Taxotere at the time he prescribed Taxotere to Ms. Earnest. And if he had been aware, he would have warned Ms. Earnest about the risk: "if you're aware of that [the risk of permanent alopecia], you have to, I think, inform patients of that. We weren't aware of that at the time we were -- this lady was treated. We were aware that there was po- -- hair loss was a definite. Okay? But there was nothing that had been made known to me that she potentially would not get her hair back, you know." Ex. A, Carinder Dep. 137:8–17. Dr. Carinder now warns his breast cancer patients about the possibility of persistent or permanent hair loss after receiving notification about cases of permanent alopecia associated with Taxotere via an email from American Society of Oncology. *Id.* 119:15–20 ("I get these updates from ASCO and various sites, and they had said that there was now -- some evidence had surfaced that there were cases where patients were not getting their hair back.").

21. Admitted but only to the extent that Ms. Earnest took a chemotherapy regimen including Taxotere in late 2011 and is alive today. However, whether anyone can say with certainty whether or not Plaintiff would be alive today had she opted for a Taxotere-free treatment regimen amounts to nothing more than rank speculation and is entirely irrelevant to the matters currently before the Court.

8

22. Admitted but only to the extent that it is within the realm of metaphysical possibility that Ms. Earnest's hair could be in the same condition if she had opted for a Taxotere-free treatment regimen instead of Taxotere. However, this statement calls for nothing more than rank speculation and is entirely irrelevant to the matters currently before the Court.

23. Denied as written. Whether any of Plaintiff's experts claim Taxotere is wholly or substantially useless is entirely irrelevant as, for reasons explained in Plaintiff's Memorandum in Opposition, this is not the correct standard for determining the existence of a redhibitory defect under Louisiana law. And whether it is "possible" Plaintiff is alive today due to her treatment with Taxotere amounts to nothing more than rank speculation. While anything may be possible, the Court should be concerned with probabilities, not possibilities.

Dated: March 29, 2019                               Respectfully submitted,

*/s/ Christopher L. Coffin*                          */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                       Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                     Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505                      GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                         6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                                Los Angeles, California 90045
Fax: (504) 355-0089                                  Telephone: 510-350-9700
ccoffin@pbclawfirm.com                               Facsimile: 510-350-9701
                                                     kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                                     *Plaintiffs' Co-Lead Counsel*

| | |
|---|---|
| */s/M. Palmer Lambert* | */s/Dawn M. Barrios* |
| M. Palmer Lambert (#33228) | Dawn M. Barrios (#2821) |
| GAINSBURGH BENJAMIN DAVID | BARRIOS, KINGSDORF & CASTEIX, LLP |
| MEUNIER & WARSHAUER, LLC | 701 Poydras Street, Suite 3650 |
| 2800 Energy Centre, 1100 Poydras Street | New Orleans, LA 70139 |
| New Orleans, LA 70163-2800 | Phone: 504-524-3300 |
| Phone: 504-522-2304 | Fax: 504-524-3313 |
| Fax: 504-528-9973 | barrios@bkc-law.com |
| plambert@gainsben.com | |
| | *Plaintiffs' Co-Liaison Counsel* |
| *Plaintiffs' Co-Liaison Counsel* | |

## PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Anne Andrews | Daniel P. Markoff |
| Andrews Thornton Higgins Razmara, LLP | Atkins & Markoff Law Firm |
| 2 Corporate Park, Suite 110 | 9211 Lake Hefner Parkway, Suite 104 |
| Irvine, CA 92606 | Oklahoma City, OK 73120 |
| Phone: (800) 664-1734 | Phone: (405) 607-8757 |
| aa@andrewsthornton.com | Fax: (405) 607-8749 |
| | dmarkoff@atkinsandmarkoff.com |
| | |
| J. Kyle Bachus | Abby E. McClellan |
| Bachus & Schanker, LLC | Stueve Siegel Hanson LLP |
| 1899 Wynkoop Street, Suite 700 | 460 Nichols Road, Suite 200 |
| Denver, CO 80202 | Kansas City, MO 64112 |
| Phone: (303) 893-9800 | Phone: (816) 714-7100 |
| Fax: (303) 893-9900 | Fax: (816) 714-7101 |
| kyle.bachus@coloradolaw.net | mcclellan@stuevesiegel.com |
| | |
| Lawrence J. Centola, III | Karen Barth Menzies |
| Martzell, Bickford & Centola | Gibbs Law Group LLP |
| 338 Lafayette Street | 6701 Center Drive West, Suite 1400 |
| New Orleans, LA 70130 | Los Angeles, California 90045 |
| Phone: (504) 581-9065 | Phone: 510-350-9700 |
| Fax: (504) 581-7635 | Fax: 510-350-9701 |
| lcentola@mbfirm.com | kbm@classlawgroup.com |
| | |
| Christopher L. Coffin | David F. Miceli |
| Pendley, Baudin & Coffin, L.L.P. | David F. Miceli, LLC |
| 1100 Poydras Street, Suite 2505 | P.O. Box 2519 |
| New Orleans, Louisiana 70163 | Carrollton, GA 30112 |
| Phone: (504) 355-0086 | Phone: (404) 915-8886 |
| Fax: (504) 355-0089 | dmiceli@miceli-law.com |
| ccoffin@pbclawfirm.com | |

10

| | |
|---|---|
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS