UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Tanya Francis*; Civil Case No.: 2:16-cv-17410 | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE LEARNED-INTERMEDIARY DOCTRINE

**INTRODUCTION**

Dr. Cherian Verghese has testified that, in 2009, he did not know that Taxotere could cause permanent hair loss. So when he discussed the risks and benefits of a Taxotere regimen with Plaintiff Tanya Francis, he could not educate his patient about the risk of permanent hair loss. Had Dr. Verghese known of this risk, he would have warned Plaintiff Francis. And if she did not want Taxotere because of this risk, Dr. Verghese would have prescribed another chemotherapy regimen. After all, the ultimate decision rests with the patient—here, Plaintiff Francis.

That testimony resolves this motion. It shows that a timely and adequate warning of permanent hair loss would have altered Dr. Verghese's decision to prescribe Taxotere to Plaintiff Francis. The Sanofi Defendants, therefore, are not entitled to summary judgment based on the learned-intermediary doctrine.

**FACTS**

Plaintiff Francis's prescribing physician, Dr. Verghese, is board certified in hematology and oncology. Ex. A, Dr. Cherian Verghese Deposition ("Verghese Dep.") 24:13-14. When he

1

treated Plaintiff in 2009, he was on the faculty of Tulane University, completing a fellowship in oncology. *Id.* at 20:11-15. Plaintiff was 38 years old and had been diagnosed with Type PR-negative, ER-positive and HER2-negative breast cancer. Sanofi's Ex. E, PFS at p.11-12.

Dr. Verghese has testified about the process for determining a course of treatment for cancer. He follows the National Comprehensive Cancer Network guidelines, which provide approved treatment protocols and material side effects for treating various cancers. Ex. A, Verghese Dep. at 29:8-20. He reviews labels or package inserts, among other materials, and if a patient is concerned about a particular side effect mentioned there, but which may not be mentioned in papers or the textbooks, he will look for other treatment options. *Id.* at 41:21-42:9. In addition, if the patient expresses a concern about a particular side effect and that side effect is not discussed in a paper or textbook, Dr. Verghese will revisit the prescribing information in the label or package insert. *Id.* at 43:10-16; 54:13-20.  Lastly, if Dr. Verghese is aware of a *permanent* risk, his practice is to disclose that risk to the patient. *Id.* at 48:19-23.

When Plaintiff Francis sought treatment in 2009, she had options. There were numerous chemotherapy regimens appropriate for her type of breast cancer; in fact, several did not include Taxotere. *Id.* at 85:12-87:8; Ex. B, NCCN Clinical Practice Guidelines in Oncology, Breast Cancer V.I. 2009, BINV-5 and BINV-J, pp.14, 39-43, Ex.6 to Verghese Dep.

Dr. Verghese proposed Taxotere and reviewed potential side effects with Plaintiff Francis. *Id.* at 91:1-95:7. A patient's knowledge of potential side effects, Dr. Verghese explained, is critical to his or her ability to make an informed decision about treatment. *Id.* at 96:4-10. Hair loss is always discussed, he said, because the patient inevitably brings it up. *Id.* at 96:21-97:8.

But in 2009, Dr. Verghese had no reason to believe that *permanent* hair loss was a risk with Taxotere; he thought, instead, that only temporary hair loss would occur. *Id.* at 105:24-106:5. And

for good reason. In 2009, no studies reporting permanent hair loss from Taxotere had been made known to him, *id.* at 112:20-113:19, and Taxotere's label made no mention of hair loss. And a few years earlier, in October 2006, Sanofi issued a handout to the oncology nursing staff stating that hair loss or thinning of hair was a "common, yet temporary, side effect of some cancer medicines." *Id.* at 101:1-102:21.

Dr. Verghese first became aware of the association between Taxotere and permanent hair loss in 2014. *Id.* at 107:2-6; 116:21-117. After learning of this risk, Dr. Verghese began to educate his patients about it. *Id.* at 110:13-19. This is consistent with medical guidelines and his practice. As he explained, patients should be active participants in treatment, *Id.* at 119:3-8, and doctors should communicate side effects so the patients can make educated decisions. *See id.* at 120:7-10.

Dr. Verghese would have had this same conversation with Plaintiff Francis—had Sanofi warned him. Further, he acknowledged that he would have proposed an alternative chemotherapy regimen if Plaintiff Francis did not want to assume Taxotere's risk of permanent hair loss. *Id.* at 122:20-123:16.[1]

## LEGAL ARGUMENTS AND AUTHORITIES

### I. Legal Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts

---

[1] Plaintiff Francis has testified that, had she known in 2009 that Taxotere caused permanent, rather than temporary hair loss, she would have asked Dr. Verghese to investigate further and "find another drug that I can take." Ex. C, Tanya Francis Deposition ("Francis Dep.") of 12/13/17, 287:13-17.  If Dr. Verghese had then refused to find a Taxotere-free regimen, Plaintiff would have gone to someone else for treatment. *Id.* at 289:5-9.

showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.,* 655 F. 3d 435,439 (5th Cir. 2011). This Court, however, must "refrain from making credibility determinations or weighing the evidence…" *Devon Enterprises, LLC v. Arlington Independent School Dist.,* 541 Fed. Appx. 439, 441(5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's duty is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**II.     Evidence Exists to Preclude Summary Judgment Under the Learned-Intermediary Doctrine.**

In products liability claims involving prescription drugs, Louisiana applies the learned-intermediary doctrine," which permits a drug manufacturer to discharge its duty to warn consumers by adequately warning physicians. "The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician*." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 268 (5th Cir. 2002) (original emphasis). Thus, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient." *Id*. at 267 (quoting *McCarthy v. Danek Med.,*

4

*Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999)).

Under the learned intermediary doctrine, to maintain a failure-to-warn claim, the plaintiff must show two things at trial:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.
>
> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

*Id.* at 265-66.

Sanofi believes that Plaintiff Francis cannot make either showing. But the evidence is squarely to the contrary. At a minimum, the evidence is such that the learned-intermediary doctrine cannot be resolved on summary judgment in this case.

### A. The Evidence Shows Sanofi Failed to Warn Dr. Verghese of the Risk of Permanent Hair Loss Associated with Taxotere

The LPLA defines an adequate warning in the following manner:

> "Adequate warning" means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.

La. R.S. 9:2800.53. Sanofi admits, as it must, that in 2009, when Ms. Francis was treated, the Taxotere label contained *no* "adequate warning" of the risk of permanent hair loss. Despite this, Sanofi argues that evidence is lacking that Dr. Verghese would have read an adequate warning had it been provided. While Sanofi attempts to create the impression that any warning would have been futile, Sanofi's incomplete, misleading, and largely irrelevant citations to Dr. Verghese's deposition ignores his unequivocal testimony that he would have heeded an adequate warning had it been provided.

For example, Dr. Verghese testified that:

5

- He periodically receives "updates on labeling changes" but cannot remember the dates or specifics of Taxotere's label changes.  Ex. A, Verghese Dep.139:11-23,

- Although he does not recall the last time he reviewed the Taxotere label, he was glad Sanofi updated the label to note the risk of permanent hair loss in December, 2015.  *Id*. at 117:9-23.

- When he prescribed Taxotere to Plaintiff in 2009, he had never been informed by Sanofi and was unaware that Taxotere carried with it the risk of permanent hair loss.  *Id*. at 105:24-106:3; 106:20-25.

- He first became aware of the association between Taxotere and permanent hair loss approximately four years prior to his deposition.  *Id*. at 107:2-6; 116:21-117:2.

- If he had been made aware of the risk of permanent hair loss associated with Taxotere in 2009, he would have discussed it with Plaintiff and if Plaintiff had decided not to use Taxotere in her treatment regimen, he would have respected that decision to use an alternate drug as the ultimate decision rests with the patient.  *Id*. at 122:14-18, 123:10-16.

Thus, rather than being futile, a timely, adequate warning of the risk of permanent alopecia prior to Dr. Verghese prescribing Taxotere to Plaintiff would have unquestionably altered Dr. Verghese's decision to prescribe Taxotere and, ultimately would have resulted in Plaintiff not receiving Taxotere infusions.  That Dr. Verghese did not recall the specific dates Sanofi updated its label or when the Taxotere label first included information on permanent hair loss is entirely irrelevant to the issue of whether a label change would have altered his prescribing decision.

Accordingly, Sanofi has failed to meet their summary judgment burden to show there is no genuine issue of material fact as to the adequacy of their warning. *Patrick v. Tractor Supply Co.*, 2017 WL 396301, at *2 (E.D. La. Jan. 30, 2017) ("A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact."). There is more than sufficient evidence here to raise a question of material fact as to the learned intermediary doctrine.

### B. Plaintiff's Evidence Shows Sanofi's Failure to Warn was both a Cause in Fact and the Proximate Cause of Plaintiff's Injury

As discussed, Plaintiff Francis must also show at trial that a drug company's failure to warn was the cause in fact and proximate cause of the plaintiff's injury. *Jenkins v. Bristol-Myers Squibb, et al.*, 2015 WL 501230, at *3 (E.D. La. Aug. 21, 2015) (quoting *Stahl,* 283 F.3d at 266). Sanofi incorrectly suggests that the only way to establish causation is through evidence that Plaintiff's prescribing physician would not have used or prescribed the drug had he received a stronger warning.[2] This is one method to establish causation; it is not, however, the exclusive means to do so.

Causation can also be established by showing that, if properly warned, a plaintiff's treating physician would have acted differently such that the injury alleged by the plaintiff could be avoided. *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, 2017 WL 1393480, at *3(E.D. La. April 17, 2017). To assist in easing the cause-in-fact burden on a plaintiff, Louisiana recognizes the "heeding presumption." This presumption assumes that if an adequate warning had been provided, that warning would have been followed and the plaintiff would not have been

---

[2] With Plaintiff's testimony that she would have refused Taxotere had she been properly warned of permanent hair loss, Ex. C, Francis Dep. 287:13-16, Plaintiff has demonstrated that Dr. Verghese would not have administered Taxotere to Plaintiff had he been adequately warned.

7

injured. *Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987); *In re: Xarelto*, 2017 WL 1393480, at *3; *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 797 (E.D. La. Aug. 24, 2011). This presumption may be rebutted with evidence showing that an adequate warning would have been futile under the circumstances. *Bloxom*, 512 So.2d at 850.

As previously explained, had an adequate warning been provided to Dr. Verghese, such a warning would not have been futile. To the contrary, Plaintiff has introduced affirmative evidence that Dr. Verghese would have altered his decision to prescribe Taxotere to Plaintiff had he been warned of the risk of permanent alopecia. Ex. A, Verghese Dep. 122:14-18; 123:10-16. Plaintiff is therefore entitled to the benefit of the heeding presumption afforded by Louisiana law.

### 1. Sanofi's Narrow Interpretation of Causation Does Not Align with Precedent Concerning the Learned-Intermediary Doctrine

Citing *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991) and *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 18, 2018), Sanofi argues that Plaintiff must demonstrate causation here not only by showing that a proper warning would have changed Dr. Verghese's prescribing decision, but also by showing that Dr. Verghese would have declined to prescribe Taxotere had he received a proper warning. Louisiana federal courts, however, are not so narrow in their analysis of causation; instead, courts examine whether the plaintiff's physician would have acted differently in response to an adequate warning such as to avoid the plaintiff's injuries. *See In re: Xarelto*, 2017 WL 1393480, at *3 (denying summary judgment due to genuine issues of fact regarding whether plaintiffs' doctors were adequately warned and whether a different warning "would have changed the doctors' actions and avoided or lessened Plaintiffs' injuries"); *Frischertz*, 2012 WL 2952427, at *2-3 (denying summary judgment where the prescriber testified that, although he still prescribed the drug, he would have disclosed the stronger warning to his patients and deferred to the patient's wishes on whether to take the drug, and the patient submitted

an affidavit that she would have refused the drug had she been properly warned); *cf. Harris v. Merck & Co., Inc.*, 2012 WL 5384720, at *6 (W.D. La. Nov. 1, 2012) (denying Rule 12(b)(6) motion to dismiss allegations that prescribing physician would have been deterred from prescribing an 80 milligram dose had an adequate warning of the dangers associated with that dose been provided).

Here, Dr. Verghese unequivocally testified that, had he received an adequate warning of the risk of permanent hair loss, he would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen. Ex. A, Verghese Dep. 122:14-18; 123:10-16. Taken together, Dr. Verghese's testimony and Plaintiff's equally unequivocal testimony that she would have refused to use Taxotere had she been adequately warned of its risk of permanent hair loss, Ex. C, Francis Dep. 287:4-16; 289:5-9, easily satisfies the causation element of the learned-intermediary doctrine.

### 2. Objective Evidence also Supports the Conclusion that Plaintiff has Satisfied the Causation Element of the Learned-Intermediary Doctrine

As Judge Fallon has recognized, under Louisiana law, subjective testimony from the treating physician on causation may be "supplement[ed] … with objective evidence of how a reasonable physician would have responded to an adequate warning." *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at at n.6 (E.D. La. Feb. 20, 2008) (internal quotations and citations omitted); *See also*, *Grenier v. Medical Engineering Corp.*, 243 F. 3d 200, 208 n. 4 (5th Cir. 2001)("a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded.") (internal quotations and citations omitted). Here, Plaintiff has supplemented Dr. Verghese's testimony with evidence that a reasonable physician would have altered his or her prescribing practices had he or she been adequately warned of the risk of

9

permanent hair loss by Defendants. *See* Ex. D, Dr. Linda Bosserman Dep., Ex. 9, pp.20; 49-50; 52-53. Like Dr. Verghese, a reasonable doctor also would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks. *Id*. Accordingly, the existence of both objective and subjective evidence of causation precludes the entry of the summary judgment under the learned-intermediary doctrine.

> **3. Plaintiff Has Established Causation Under the Learned-Intermediary Doctrine as had Dr. Verghese Known of the Risk of Permanent Hair Loss in 2009 he would have Changed his Actions in Prescribing Taxotere**

Sanofi's bold claim that Plaintiff elicited "no testimony" from Dr. Verghese that the risk of permanent alopecia was not sufficient to change his decision to prescribe Taxotere[3] is flatly contradicted by Dr. Verghese's testimony. As noted, Dr. Verghese was unwavering in his testimony that, had he been made aware of the risk of permanent hair loss associated with Taxotere in 2009, he would have discussed it with Plaintiff and if Plaintiff had chosen not to use Taxotere in her treatment regimen, he would have respected that decision as the ultimate decision on treatment rests with the patient. *Id*. at 122:14-18, 123:10-16. And despite his expectation that all taxanes would have the same impact on hair loss, he testified he was unaware of any information which would support the conclusion that permanent hair loss associated with Taxotere is also associated with Taxol. *Id*. at 109:17-25. Moreover, while Taxotere may be a lifesaving drug and

---

[3] Sanofi also argues that Dr. Verghese was already aware of Taxotere's risk of permanent hair loss at the time he prescribed Taxotere to Plaintiff. However, this shaky premise built upon Dr. Verghese's practice of advising his patients to make a wig of their own hair prior to chemotherapy, *id.* at 103:22-24, and his acknowledgement that he never tells his patients their hair loss will be temporary since when it comes back it may look totally different, *id*. at 103:3-18, is completely undermined by Dr. Verghese's unequivocal testimony that in 2009 he had no reason to believe Plaintiff would have experienced anything other than temporary hair loss from her use of Taxotere, *id*. at 106:1-5, and that he only became aware of the potential association between Taxotere and permanent hair loss approximately four years prior to his January 2018 deposition. *Id*. at 107:2-6.

Dr. Verghese continues to prescribe Taxotere to his patients, other equally effective lifesaving chemotherapy drugs which do not carry the risk of permanent hair loss were also available to Dr. Verghese and could have been prescribed had Plaintiff elected to utilize a different regimen. *Id.* at 85:12-23; Ex. B, NCCN Clinical Practice Guidelines in Oncology, Breast Cancer V.I. 2009, BINV-5 and BINV-J, pp.14, 39-43, Ex.6 to Verghese Dep. Accordingly, in view of Dr. Verghese's testimony that had he known of the risk of permanent hair loss in 2009, he would have disclosed that risk to Plaintiff and would have respected Plaintiff's decision to utilize an alternate chemotherapy regimen, Plaintiff has sustained her burden of proving that an adequate warning would have changed her physician's actions in prescribing Taxotere. Irrespective of what courts around the country may have done in applying different facts to other states' laws, this Court is bound by the facts of this case and Louisiana law and Plaintiff has satisfied her burden.

### III. Plaintiff's Redhibition Claim is also Not Subject to Dismissal

Sanofi asserts that Plaintiff's redhibition claim is controlled by the learned-intermediary doctrine and fails for the same reasons. Sanofi is mistaken, and in fact the only case it cites in support of this argument is *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), a case decided under Texas law—not Louisiana redhibition law or the LPLA.[4]

Sanofi also argues that it is entitled to summary judgement on the redhibition claim because Plaintiff cannot show that Taxotere contained a vice rendering it useless or inconvenient. But redhibition, properly understood, requires no such thing. Louisiana redhibition law allows proof that the plaintiff would not have used the drug had she known of the undisclosed risk. *Pipitone v. Biomatrix, Inc.*, 288 F. 3d 239, 251 (5th Cir. 2002); *Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F. Supp. 3d 1187,1200 (E.D. La. August 29, 2016); and *In re Vioxx Products Liability Litigation*,

---

[4] Of course, if the redhibition claim is controlled by the learned-intermediary doctrine, then Sanofi's argument fails for the reasons already discussed.

11

2010 WL 11570867, at *10 (E.D. La. March 31, 2010). Here, Ms. Francis's testimony that she would not have taken Taxotere had the risk of permanent hair loss been disclosed, Ex. C, Francis Dep. 287:4-16, forecloses summary judgment on her redhibition claim.

Sanofi ignores the great weight of this case law and instead cites *In Re: Rezulin Prods. Liab. Litig.*, 361 F. Supp. 2d 268, 280 (S.D.N.Y. 2005). The plaintiff in *Rezulin*, however, raised no redhibition claim. *Id.* at 280. The court's passing statement about what redhibition requires is *dictum*. What's more, this *dictum* is contrary to the standard of proof required by federal and state courts in Louisiana.

## CONCLUSION

For these reasons, the Sanofi Defendants have failed to meet their burden to show entitlement to summary judgment on Plaintiff's failure to warn and redhibition claims. Accordingly, summary judgment should be denied.

Dated: March 29, 2019                                Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

12

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

| | |
|---|---|
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>       */s/ Dawn M. Barrios*
>       DAWN M. BARRIOS