UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO
Barbara Earnest, Case No. 2:16-cv-17144

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.2, Plaintiff, Barbara Earnest, submits the following Response to Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment on Statute of Limitations Grounds:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied. While Dr. Marie Celeste Lagarde testified that she provided Ms. Earnest with a Breast Cancer Treatment Handbook in February 2011 (Lagarde Dep. at 59:5-61:1), Ms. Earnest testified that she was unsure of when and where she acquired the Cancer Treatment Handbook. Earnest Dep. at 97:12-100:22, 303:5-304:6.

8. Denied. While Exhibit H to Defendants' Motion is a true and correct copy of the Cancer Treatment Handbook produced by Ms. Earnest, Ms. Earnest testified that she was unsure

of when and where she acquired the Cancer Treatment Handbook. *Id*. at 97:12-100:22, 303:5-304:6.

9. Admitted. However, Dr. Lagarde testified that she does not require her patients to read the entire Breast Cancer Treatment Handbook. Lagarde Dep. at 62:24-63:7. Rather, Ms. Earnest would have been directed to the chapter on pathology and the section on the pros and cons of lumpectomy versus mastectomy. *Id.* at 62:6-21. Dr. Lagarde further testified that no one in her office would have directed Ms. Earnest to any section on chemotherapy drugs and side effects "[b]ecause at this time we didn't know what the patient was going to be receiving." *Id.* at 63:18-64:8. Moreover, Ms. Earnest testified that she did not read the entire Breast Cancer Treatment Handbook. Earnest Dep. at 304:7-18.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted. However, Dr. James Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Deposition of James Carinder ("Carinder Dep.") at 96:22-97:5, 165:21-166:10.

15. Admitted. However, Mr. Ralph Earnest explained that he understood Dr. Carinder communicated that Ms. Earnest's hair would grow back, but that it could grow back with a different texture. Exhibit I, Deposition of Ralph Earnest at 148:11-149:18. Moreover, Dr. Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Carinder Dep.at 96:22-97:5, 165:21-166:10.

16. Admitted.

17. Admitted. However, the chemotherapy consent form did not state that permanent hair loss is a side effect of Taxotere. (see Exhibit E to Defendants' Motion). Moreover, Dr. Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Carinder Dep.at 96:22-97:5, 165:21-166:10.

18. Admitted. However, the chemotherapy consent form did not state that permanent hair loss is a side effect of Taxotere. (see Exhibit E to Defendants' Motion). Moreover, Dr. Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Carinder Dep.at 96:22-97:5, 165:21-166:10.

19. Admitted.

20. Admitted. However, the chemotherapy consent form did not state that permanent hair loss is a side effect of Taxotere. (see Exhibit E to Defendants' Motion). Moreover, Dr. Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Carinder Dep.at 96:22-97:5, 165:21-166:10.

21. Admitted. However, the chemotherapy consent form did not state that permanent hair loss is a side effect of Taxotere. (see Exhibit E to Defendants' Motion). Moreover, Dr. Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Carinder Dep.at 96:22-97:5, 165:21-166:10.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.  However, it was not until December 2015 that the Taxotere label made any mention of permanent hair loss being associated with use of the drug.

28. Admitted.

29. Admitted.  However, Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016.  Earnest Dep. at 65:15-66:11, 79:20-80:9,195:24-196:6.  It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.  *Id.* at 23:7-18, 71:10-23.

30. Admitted. However, Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016.  *Id.* at 65:15-66:11, 79:20-80:9,195:24-196:6.  It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.  *Id.* at 23:7-18, 71:10-23.

31. Admitted. However, Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016.  *Id.* at 65:15-66:11, 79:20-80:9,195:24-196:6.  It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.  *Id.* at 23:7-18, 71:10-23.

32. Admitted. However, Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016.  *Id.* at 65:15-66:11, 79:20-80:9,195:24-196:6.  It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had

not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016. *Id.* at 23:7-18, 71:10-23.

33. Admitted. However, Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016. *Id.* at 65:15-66:11, 79:20-80:9,195:24-196:6. It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016. *Id.* at 23:7-18, 71:10-23.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Denied. While Ms. Earnest's injuries were not latent, her injuries were hidden. Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016. *Id.* at 65:15-66:11, 79:20-80:9,195:24-196:6. It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016. *Id.* at 23:7-18, 71:10-23.

39. Admitted. However, Ms. Earnest testified that Dr. Carinder then advised her to keep waiting for her hair to grow back. *Id*. at 81:2-82:24.

40. Admitted. However, Mr. Ralph Earnest testified that he relied on Dr. Carinder who told them that Ms. Earnest's hair would probably grow back. Exhibit I, Deposition of Ralph Earnest at 136:5-17.

41. Admitted.  However, Ms. Earnest believed her hair loss was temporary and caused by the entire chemotherapy regimen prescribed to her.  Earnest Dep. at 82:25-84:1, 91:16-92:25.

42. Admitted.

43. Denied.  Ms. Earnest asked Dr. Carinder about her lack of hair regrowth prior to filing this lawsuit.  See Defendants' Statement of Undisputed Material Facts No. 39.

44. Denied.  Ms. Earnest did not seek treatment for her hair loss after filing this lawsuit. *See* PFS § VI.6.

45. Admitted. However, it was not until December 2015 that the Taxotere label made any mention of permanent hair loss being associated with use of the drug.

46. Admitted.  However, Plaintiffs, including Ms. Earnest, did not have constructive notice that their hair loss was permanent and caused by Taxotere through the publications cited in their Second Amended Master Complaint ("AMC").  Allegations in the AMC concerning public discussions linking Taxotere and permanent hair loss between 2006 and 2010, made with the benefit of hindsight, support the contention that Defendants knew (but did not disclose) their drug could cause permanent alopecia at the time that Ms. Earnest was prescribed Taxotere infusions.

47. Admitted.  However, Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016.  Earnest Dep. at 65:15-66:11, 79:20-80:9,195:24-196:6.  It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.  *Id.* at 23:7-18, 71:10-23.

48. Denied as written.  Ms. Earnest filed suit against Defendants on December 12, 2016.  Ms. Earnest was unaware that she suffered from permanent hair loss as a result of Taxotere until 2016.  *Id.* at 65:15-66:11, 79:20-80:9,195:24-196:6.  It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.  *Id.* at 23:7-18, 71:10-23.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE**

Plaintiff provides the below statement of material facts in dispute that are pertinent to the Defendants' motion.  These disputed material facts are not intended to exclude any other additional facts cited in Plaintiff's concurrently filed memorandum in opposition.

1. It was not known to Ms. Earnest that her hair loss was permanent, much less why her hair had not returned, until her brother told her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.  Earnest Dep. at 23:7-18, 71:10-23.

2. Whether a duty to investigate was ever triggered prior to her brother informing her about an advertisement that he had seen linking Taxotere with permanent hair loss in approximately 2016.

3. Ms. Earnest believed her hair loss was temporary and caused by the entire chemotherapy regimen prescribed to her.  *Id.* at 82:25-84:1, 91:16-92:25.

4. As a layperson, Ms. Earnest does not know the dermatological definition of permanent alopecia.

5. The duty of inquiry was not and could not have been triggered by the mere awareness of hair loss because Ms. Earnest had still not perceived her injuries. *Id.* at 65:15-66:11, 79:20-80:9, 195:24-196:6.

6. The allegations concerning the definition of "permanent" alopecia adopted by Ms. Earnest from the PSC's Second Amended Master Complaint ("AMC") are based on facts known to the PSC at the time of filing the AMC with the benefit of hindsight.

7. Ms. Earnest did not have constructive notice that her hair loss was permanent and caused by Taxotere through the publications cited in the PSC's AMC.

8. The chemotherapy consent form did not state that permanent hair loss is a side effect of Taxotere (docetaxel). *See* Exhibit E to Defendants' Motion.

9. Ms. Earnest did not learn that Taxotere was associated with permanent hair loss through a Breast Cancer Treatment Handbook because she did not read the section about the side effects of Taxotere. Lagarde Dep. at 62:6-21, 62:24-63:7, 63:18-64:8; Earnest Dep. at 304:7-18.

10. When and where Ms. Earnest acquired the Cancer Treatment Handbook. Earnest Dep. at 97:12-100:22, 303:5-304:6.

11. Dr. Carinder did not discuss the risk of permanent hair loss with Ms. Earnest. Earnest Dep. 200:17-203:25; Carinder Dep. at 96:22-97:5, 165:21-166:10.

12. Ms. Earnest was not warned of the risk of permanent chemotherapy-induced alopecia nor was she warned, more specifically, that Taxotere was known to cause permanent chemotherapy-induced alopecia. Carinder Dep. at 165:21-166:10; Earnest 2017 Dep. at 200:21-201:7. 203:9-25.

13. Dr. Carinder tells his patients that their hair loss will only be temporary based on his experience with other patients.  Carinder Dep. at 96:22-97:3

14. Dr. Carinder did not testify that he tells his patients anything about Taxotere causing permanent hair loss because he did not know that was a potential side effect.  *Id.* at 93:5-21, 116:1-14, 165:21-166:10.  Dr. Carinder was not aware that Taxotere could cause permanent hair loss at the time he prescribed Taxotere to Ms. Earnest.  *Id.* at 27:4-9, 41:5-11, 165:21-166:3.

15. Dr. Carinder's experience with one patient that he treated with Taxotere in 2005 who did not regrow her hair did not lead him to believe that Ms. Earnest would not regrow her hair following her use of Taxotere.  *Id*. at 85:1-22, 137:2-21.

16. Dr. Carinder never learned of the potential risk of permanent hair loss associated with Taxotere from Sanofi.  *Id.* at 171:6-11.

17. Because Sanofi did not warn Dr. Carinder of the association of Taxotere and permanent hair loss, Dr. Carinder was prevented from being able to discuss this risk of irreversible disfigurement with Ms. Earnest in their discussion of the risks and benefits of chemotherapy treatment using a Taxotere regimen.  *Id*. at 166:12-167:22, 169:2-5.

18. Even if Ms. Earnest had been excited (sufficiently under the Louisiana Supreme Court's interpretation in *Campo*) to inquire about her persistent hair loss while treating with Dr. Carinder, she would not have learned sufficient information to alert her to bring a products liability action against the manufacturers of Taxotere.  *Id*. at 119:15-120:23, 137:2-17.

19. Ms. Earnest asked Dr. Carinder about her lack of hair regrowth prior to filing this lawsuit.  See Defendants' Statement of Undisputed Material Facts No. 39.

20. Dr. Carinder advised Ms. Earnest to keep waiting for her hair to grow back. Earnest Dep. at 81:2-82:24.

21. Ms. Earnest's husband understood that Dr. Carinder informed them that his wife's hair would grow back, but that it could grow back with a different texture. Exhibit I, Deposition of Ralph Earnest at 148:11-149:18.

22. Mr. Earnest relied on Dr. Carinder who told them that Ms. Earnest's hair would probably grow back. *Id.* at 136:5-17.

23. Ms. Earnest did not seek treatment for her hair loss after filing this lawsuit. *See* PFS § VI.6.

24. If a duty to investigate was triggered, when such a duty arose.

25. If a duty to investigate was triggered, whether such an investigation would have been futile considering Sanofi's concealment and representations regarding Taxotere.

26. Whether Sanofi was aware that the administration of Taxotere carried a risk of permanent hair loss.

27. Whether Sanofi failed to warn doctors and patients that the administration of Taxotere carried a risk of permanent hair loss.

28. Whether Sanofi concealed its knowledge that administration of Taxotere carried a risk of permanent hair loss.

29. Whether Sanofi's failure to provide a warning of the risk of permanent or irreversible hair loss would have prevented discovery of the cause of Ms. Earnest's injuries, rendering any duty to inquire futile.

30. Whether Sanofi's acts to conceal the risk of permanent or irreversible hair loss would have prevented discovery of the cause of Ms. Earnest's injuries, rendering any duty to inquire futile.

Dated: March 29, 2019                              Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com
*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com
*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com
*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT