UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)      MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Diana Warren, et al., Case No. 2:17-cv-13380.

---

**OPPOSITION TO PLAINTIFF'S MOTION FOR
VOLUNTARY DISMISSAL WITH PREJUDICE**

---

Silent in Plaintiff's Motion is the reason for her case's dismissal: the case proceeding would entail supporting unfounded allegations made in her signed lawsuit Complaint. Ms. Warren sued Sanofi alleging:

- her hair "never returned" after chemotherapy;

- she is stigmatized by her "baldness"; and

- that this permanent change constitutes a severe and debilitating injury. *See* Am. Master Compl. (MDL Rec. Doc. 689) at ¶ 6; *see also* Short Form Compl. (Doc. 1) at ¶ 13.

Yet—in a sea of Plaintiffs much like her—the post-chemotherapy photographs tell a different story:

  

This MDL is particularly susceptible to filings by Plaintiffs that have little-to-no discernable injury without requirement of medical corroboration of their alleged injury. Plaintiffs provide photographs before, during, and after chemotherapy to show only some baseline difference in a plaintiff's hair (attributable to any number of causes) between one date and time and another. Not all Plaintiffs produce such photographs, however, and many that do produce photographs showing that their hair in fact regrew after chemotherapy ended. The low bar to enter the litigation (no medical corroboration required) means that thousands of cases end up in this MDL that would never be filed if they had to stand on their own merit. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 06-cv-1789, 2012 WL 5877418, at *2–*3 (S.D.N.Y. 2012) ("[G]iven that cases are more likely to result in dismissal once discovery focuses on issues related to causation, the Court has reason to believe that spurious or meritless cases are lurking in the some 1,000 cases on the MDL docket.").

Plaintiffs are able to avoid these cases as bellwethers—even though they are "representative" of the MDL—through selective dismissals. Within a matter of weeks, Plaintiffs have sought to dismiss three Sanofi-selected cases. In all these cases, the women have little-to-no discernable hair loss:





**Sheila Crayton**          **Kathleen Gabriel**          **Diana Warren**

At the same time, Plaintiffs *like* Mss. Warren, Crayton, and Gabriel continue to file cases

2

in this MDL in large numbers. *See* Compilation of Post-Chemo Photographs Produced by Plaintiffs, attached as **Exhibit A**.[1] Yet when selected for trial work-up, and subject to scrutiny, they refuse to proceed. *See In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2016 WL 4705827, at *1–*2 (M.D. Ga. Sept. 7, 2016) ("[s]ome lawyers seem to think that their case will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeded as a separate individual action.").

It is with that backdrop—one that Plaintiffs' Motion conspicuously ignores—that their request to dismiss should be considered. Sanofi requests that Plaintiff proceed with her case, which is representative of thousands of MDL cases. In the alternative, Sanofi requests that the Court: (1) order Ms. Warren to appear personally before Your Honor and detail the reasons for her dismissal, and (2) order Ms. Warren to pay Sanofi's costs in defending this action.

## ARGUMENT

To dismiss a case after a defendant has answered, Federal Rule of Civil Procedure 41 requires either (1) the consent of all parties, or (2) a court order "***on terms that the court considers proper***." *See* Fed. R. Civ. P. 41(a)(1–2) (emphasis added). The Rule recognizes that a defendant who has answered a complaint and spent time and money defending a lawsuit has a right to understand the basis for the dismissal. *See, e.g.*, *Camacho v. Mancuso*, 53 F.3d 48, 51 (4th Cir. 1995) ("A defendant has a strong interest in the resolution of an action, especially after he has taken the time and spent the money to file a responsive pleading."); *see also Duke Progress Energy LLC v. 3M Co.*, Nos. 5:08-cv-460, 5:08-cv-463, 2015 WL 5603344, at *1 (W.D.N.C. Sept. 23,

---

[1] There are hundreds more Plaintiffs just like those in **Exhibit A**. For the sake of space, Sanofi compiled 10 pages of post-chemotherapy photographs produced by Plaintiffs.

3

2015) ("Rule 41's procedural hurdles safeguard … the defendant's interest in the cause of action and the court's interest in judicial efficiency….[it] serves to: preclude a plaintiff from dismissing a case without the defendant's consent…") (quotations omitted).  This is a concept already recognized by this Court in entering PTO 87, which requires even non-trial Plaintiffs to provide a basis for their dismissal.  *See* PTO 87 (Rec. Doc. 5363).

In MDLs, the concern for prejudice caused by voluntary dismissals—with or without prejudice—is particularly acute.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 628 F.3d 157, 163 (5th Cir. 2010) ("Courts must be exceedingly wary of mass litigation in which plaintiffs are unwilling to move their cases to trial.  Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with h[er] own suit, if so selected.").  For that reason, MDL courts have broad authority to craft solutions addressing plaintiff manipulation of the MDL process through voluntary dismissal.  *See, e.g.*, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April, 20, 2010*, MDL No. 2179, 2011 WL 1464908, at *4 (E.D. La. Apr. 15, 2011).  This often requires imposing obligations, procedures, or limitations on dismissals that "do not exist in ordinary cases."  *Id.* at *5.  Plaintiffs' pattern of using voluntary dismissals justifies such a solution and remedy here; namely, examination by Your Honor and payment of Sanofi's costs. This is "consistent with the theory underlying Rule 41 as explained by the Fifth Circuit…that after the defendant becomes 'actively engaged' in the suit's defense, the defendant is entitled to have the case adjudicated…" *Id.*

Plaintiff downplays the importance of Sanofi's interests in Ms. Warren's case, and in the thousands of cases just like it, with their no-harm-no-foul argument. Pls.' Br. (Rec. Doc. 6530-1), at 3 (arguing that dismissal "before significant work-up has begun on the case" is not prejudicial to Sanofi).  The problem, of course, is that meritless lawsuit filings *do* cause significant harm to

4

Defendants (multiply the so-called "minimal" work-up by 11,500 cases) and the integrity of the MDL process. *See* Advisory Comm. on Civil Rules, *MDL Subcommittee Report* 170 ("Several other factors also confound the useful information coming from bellwether trials. First, plaintiffs will often voluntarily dismiss proposed bellwethers that might prove adverse to them, thus skewing any sample towards greater recoveries than average.").[2]

At almost 70 years old, Ms. Warren is typical of a significant portion of MDL Plaintiffs whose hair, like hers, covers the entire scalp. *See* **Ex. A**. Given the numerous causes of hair loss and thinning in post-menopausal women, it is essential that the parties litigate cases like Ms. Warren's to determine fundamental questions related to causation and liability (*i.e.*, Is such hair loss a compensable injury? On what basis would plaintiffs reliably premise liability and causation?).

Ms. Warren all but admits that the answer to these questions is no. She claims that she decided to "cease pursing any claims" because of the "new, additional knowledge" provided by "the work-up and development of the litigation by the Plaintiffs' Steering Committee." Pls.' Br. (Rec. Doc. 6530-1), at 4. But Plaintiff has not identified which new, additional knowledge led her to dismiss her claim. She has not identified why that information lead her to believe that her claim is not worth pursuing. The only other justification Plaintiff offers for her dismissal is that Ms. Warren does not remember many of the facts about her case. Her lack of memory about her cancer treatment—which was almost 9 years ago—makes her even more representative of the MDL population treated with Taxotere long ago who delayed filing a lawsuit until formation of this MDL. Meanwhile, the Steering Committee seems to agree with the conclusion that cases like Ms.

---

[2] *See* Advisory Comm. on Civil Rules, *MDL Subcommittee Report* 145 (Nov. 1, 2018, Washington D.C.) (noting that one harm caused by meritless filings is that "[f]or some medical products, there is a requirement of making an adverse incident report for each reportedly adverse incident, and it appears that making a claim in litigation often is treated as triggering a requirement to report.")


Warren's are meritless—***seven*** Plaintiffs in defense-selected cases have chosen to dismiss ***after*** being selected for further work up. Thus, the insights about the basis of Plaintiff's dismissal, on elucidation by the Court, could provide strict guidance to the overall inventory of cases.

At bottom, Sanofi is entitled to some justification for Ms. Warren dismissing her case at this late stage. Her justification should include some level of detail, including an explanation for why her memory issues did not impede her ability to prosecute her case until her case was selected for trial work-up; what new information she has acquired from the PSC that led her to seek dismissal; and whether she was paid by anyone to dismiss her case. The answers to these questions will inform the broader issue and assist the Court in finding a solution for dealing with the non-meritorious cases being filed in this MDL. *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 4705827, at *1–*2 (imploring fellow MDL courts to "consider approaches that weed out non-meritorious cases early, efficiently, and justly").

## **CONCLUSION**

Ms. Warren's decision to dismiss her case after selection as a trial plaintiff brings to light obstacles in MDLs generally, and in this MDL in particular. *In re Mentor Corp. Obtape*, 2016 WL 4705827, at *1 (MDLs have "produced incentives for the filing of cases that otherwise would not be filed if they had to stand on their own merit as a stand-alone action."). This is the subject of a different proposal before this Court for case-wide management. In the meantime, examining Ms. Warren about the circumstances of her lawsuit filing, and now the basis of her decision to dismiss, will inform the Court on how to handle the issue going forward. An award of reasonable costs and fees will deter additional Plaintiffs from withdrawing from the trial pool. *In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d at 163 (plaintiffs in mass litigation do not have the right to avoid being bellwethers); *see also Ritchey v. Ledoux*, No. 94-cv-2433, 1996 WL

337221, at *2 (E.D. La. June 18, 1996) (finding awarding attorney's fees and reasonable costs to defendants an appropriate remedy for plaintiff twice filing dismissal of his federal claims).

Dated: April 2, 2019

Respectfully submitted:

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-310-2100
Facsimile:  504-310-2120
E-Mail:  dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone:  816-474-6550
Facsimile:  816-421-5547
E-Mail:  hratliff@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*