# EXHIBIT A

January 4, 2019

Via E-Mail: Samantha_schott@laed.uscourts.gov
Honorable Jane Triche Milazzo
United States District Court Eastern District of Louisiana
500 Poydras Street, Room C-206
New Orleans, LA 70130
In re: MDL – 2740 Taxotere (Docetaxel) Products Liability Litigation

Dear Judge Milazzo:

Pursuant to Case Management Order 14 (Rec. Doc. 3064), the Plaintiffs' Steering Committee ("PSC") respectfully submits its nomination and ranking of CMO 14 trial pool Plaintiffs[1] as the second bellwether trial Plaintiff and two alternates.

In the setting of a MDL, the use of bellwether trials provides meaningful information and experience to the parties, the attorneys, and the Court. As this Court has indicated, a bellwether Plaintiff should be "representative," and, while cases are tried with standalone Plaintiffs or in small representative groups, the bellwether trial should give the parties "an appreciation of all of the vexations of the case." See March 17, 2017 Steering Committee Status Conference Transcript pp. 37-38. A Plaintiff who is disparate or an outlier on key, meaningful issues will frustrate the purposes of a bellwether trial which is to shed as much light on the merits of the case as possible. Trial of an outlier Plaintiff will have little or no probative value. See, generally, Eldon E. Fallon, Jeremy T. Grabill & Robert Pitard Wynne, Bellwether Trials in Multidistrict Litigation, 82 TUL. L. REV. 2323 (2008).

To assist the Court in evaluating the representativeness of these nominations, we reference certain MDL Centrality data from Plaintiff Fact Sheets ("PFS") provided to the PSC by Brown Greer.[2] This data was compiled by carefully selecting Plaintiff Fact Sheets' ("PFS") pertinent questions and answers that would provide meaningful information about the Plaintiff and treatment profile of MDL Plaintiffs. The data points relied on by the PSC include: number of cancer diagnoses; tumor size; and the hormone receptor status of the Plaintiff's cancer (HER2, Estrogen Receptor (ER), and Progesterone Receptor (PR)). These are the cornerstones a prescribing physician evaluates to decide what treatment a Plaintiff should receive. Another important factor to inform treatment plan decision-making is the Plaintiff's age at diagnosis of breast cancer; however this question was not asked on the PFS. The question that gives us the best estimate of age at diagnosis on the PFS is "age at injury."

---

[1] The eligible trial pool was reduced in part to the Court's removal of the Plaintiff selections due to Defendants refusal to waive *Lexecon*. Thus the pool is limited to the remaining cases from Round 1 and the two Defense picks from Round 2. All cases are against Defendant Sanofi/Winthrop. The total pool is 8 cases.

[2] The MDL Centrality Census data was compiled by Jake Woody at Brown Greer. At the suggestion of Defendants we only used the answers from completed PFSs' questions and did not count any "unknown" or "blank" answers into the census data.

In addition to the MDL Centrality data, we also reviewed the photos of each Plaintiff and have included a few before Taxotere and a few after Taxotere photos as an exhibit to this submission.[3] The PFS has **over 19 different questions** about Plaintiffs' injuries and many of the questions lack definitions or descriptions which makes it difficult to evaluate hair loss on a consistent basis for all Plaintiffs just using the data points. For example, there are two questions about bald areas – one says "small" and the other "large." These sizes are undefined and open to interpretation by the Plaintiff. Another ambiguous question asks if the Plaintiff has multiple bald spots; is the use of "bald spots" different than "bald area"? These ambiguous questions in the PFS combined with the absence of any definitions create a situation which virtuously eliminates using any data point from answers on the PFS to provide meaningful information on the extent of a Plaintiff's injuries.   To determine injuries that are representative, we reviewed the CMO 14 Plaintiffs' photographs on MDL Centrality, compared these to a review of a large number of MDL Plaintiff photographs on MDL Centrality, and used this collective knowledge to determine if the photographs demonstrate injuries that are consistent or representative of the Plaintiffs in the litigation.

After evaluation of the discovery completed thus far for each Plaintiff, the comparison of the CMO 14 Plaintiffs' PFS data based on direct answers to the MDL Centrality PFS census data, and the photographs of each CMO 14 Plaintiff, the PSC nominates and ranks the second bellwether trial Plaintiffs as follows: (1) Barbara Earnest; (2) Cynthia Thibodeaux; and (3) Elizabeth Kahn.   As ordered, we set forth our reasoning for this selection and ranking and also provide an explanation as to why the remaining Plaintiffs in CMO 14 are not representative Plaintiffs and, therefore, should not be selected for phase two discovery and trial.

## I.   Plaintiff Nominations (Ranked in Order of Representativeness)

### 1. Barbara Earnest 2:16-cv-17144

Ms. Earnest was selected by this Court as a second alternate for the first bellwether trial and has already completed the phase two discovery. A selection of Ms. Earnest would limit the amount of resources needed to be expended by the parties and the Court to prepare this case for trial and would serve the intent of the original order: to get Plaintiffs ready for trial that can move from one trial group to the other if not tried. It would also ensure the deadlines to prepare a case trial ready by September would be met without delay.

Echoing our first submission, the PSC believes that Ms. Earnest is the most representative Plaintiff. Ms. Earnest first experienced a lack of hair regrowth after Taxotere/Docetaxel treatment in 2011 at age sixty (60). The majority of Plaintiffs (88%) experienced their injury between the ages of 40-69. Ms. Earnest was diagnosed with cancer only once, which is consistent with 80% of the Plaintiffs. Ms. Earnest had a size T1 tumor. Approximately 79% of the Plaintiffs in the census were diagnosed with either a T1 tumor (39%) (which is only 2 cm or smaller than a T2 tumor) or a T2 tumor (40%). Her specific breast cancer diagnosis was HER2 negative (60% - most common of all Plaintiffs), ER positive (64% - most common of all Plaintiffs) and PR positive (54% - most common of all Plaintiffs). Ms. Earnest has had a lack of hair regrowth on her scalp as well as on

---

[3] Exhibit A includes before and after photos of each of CMO 14 Plaintiff.

her eyebrows and elsewhere on her body after Taxotere/Docetaxel infusions.  She wears wigs or turbans to cover her scalp daily. Her injury is representative of other women in this MDL.

Ms. Earnest is Caucasian and Caucasian is the most common race in this litigation. The current trial pick, Ms. Durden, is African-American which is the second most common race in this litigation. A trial of Ms. Durden for the first trial and a second trial of Ms. Earnest would ensure the most common races are represented as bellwether trials and will allow any theories about the correlation between race and Plaintiff's injuries to be tested at trial.

### 2. Cynthia Thibodeaux 2:16-cv-15859

Similar to Ms. Earnest, Ms. Thibodeaux's injury and treatment are representative of a large majority of Plaintiffs in this litigation. The PSC recommends Ms. Thibodeaux as the first alternate for the second trial. Ms. Thibodeaux first experienced lack of hair regrowth after Taxotere treatment in 2008 at age sixty-two (62). The majority of Plaintiffs in the MDL (88%) experienced their injury between the ages of 40-69.  Ms. Thibodeux was diagnosed with cancer only once, which is consistent with 80% of the other Plaintiffs. Ms. Thibodeaux had a size T2 tumor. Approximately 79% of the Plaintiffs in this MDL were diagnosed with either a T1 (39%) or T2 (40%) tumor. Her specific breast cancer diagnosis was HER2 negative (60% - most common of all Plaintiffs), ER positive (64% - most common of all Plaintiffs) and PR positive (54% - most common of all Plaintiffs). Defendants have argued that Ms. Thibodeaux's participation in a clinical trial involving the drug Avastin prevents her from being representative; however, as a participant in a clinical trial Ms. Thibodeaux would have been subject to greater follow up observation and care, and this alone makes her case an excellent choice for the bellwether process.  Every Plaintiff brings a unique constellation of pre-existing medical conditions and concomitant medications. The use of Avastin is simply one factor, not dissimilar to any other medication taken by any other Plaintiff.   Further, Avastin is not associated with an increased risk of the failure of hair to regrow[4], and therefore supports Ms. Thibodeaux as a trial Plaintiff.  Ms. Thibodeaux has had a lack of hair regrowth on her scalp as well as on her eyebrows. She wears a wig daily to cover her scalp. Her injury is representative of other women in this MDL.

### 3. Elizabeth Kahn 2:16-cv-17039

The PSC recommends Ms. Kahn as the second alternate for the second trial. Ms. Kahn first experienced lack of hair regrowth after Taxotere treatment in 2008 at age fifty (50). The majority of women (88%) experienced their injury between the ages of 40-69.  Ms. Kahn was diagnosed with cancer only once, which is consistent with 80% of the other Plaintiffs. Ms. Kahn had a size T2 tumor. Approximately 79% of the plaintiffs were diagnosed with either a T1 (39%) or T2 (40%) tumor. Her specific breast cancer diagnosis was HER2 negative (60% - most common of all Plaintiffs), ER positive (64% - most common of all Plaintiffs) and PR positive (54% - most common of all Plaintiffs). Similar to Ms. Thibodeaux, Defendants have argued that Ms. Kahn's participation in a clinical trial involving Avastin prevents her from being representative; however, as stated above, her Avastin use is not a factor that makes Ms. Kahn unrepresentative.  Ms. Kahn

---

[4] The allegations in this case are not about temporary hair loss due to chemotherapy drugs, but rather the permanent lack of hair regrowth as a result of Taxotere/docetaxel use.

has a lack of hair regrowth on her scalp, eyebrows and eyelashes. Her injury is representative of other women in this MDL.

## II.   Non-Representative Plaintiffs

For the reasons set forth below, the following CMO 14 plaintiffs should not proceed to phase two of discovery at this time.

### Deborah Johnson 2:16-cv-15607

During the last submission pursuant to CMO 3 (Rec. Doc. 669) to select and rank the Plaintiffs for the first trial, both parties agreed that Ms. Johnson was not a representative Plaintiff and should not be selected. The PSC renews its argument (which the Defendants joined in previously) that Ms. Johnson is not representative. Ms. Johnson is disabled after complications from her surgery and radiation and the PSC is concerned that the parties would not gain meaningful value from trying her case as a bellwether. Defendants in the last submission were concerned that Ms. Johnson and her oncologist have "especially poor recollection of her care, making her case ill-suited to test the viability of Plaintiffs' allegations."  The PSC agrees the lack of recollections makes it difficult to test allegations and paired with her complications after surgery and subsequent disability, make her non-representative.  No factor has changed for Ms. Johnson since both parties agreed that she was not representative.

### Tanya Francis 2:16-cv-17410

Although Ms. Francis is the first alternate in trial group 1; she is an outlier, which will frustrate the purposes of a bellwether trial.  Ms. Francis is not a representative Plaintiff primarily due to her young age at the time of her cancer diagnosis. Ms. Francis was diagnosed with breast cancer and experienced lack of hair regrowth after Taxotere use at the age of thirty-eight (38). An overwhelming 92% of Plaintiffs were forty (40) or older at the time of injury.

### Shelia Crayton 2:17-cv-05923

Ms. Crayton is not representative due to her mental and physical disabilities. Ms. Crayton is currently on a number of medications, one of which (amitriptyline) has side effects which affect her cognition and would make it difficult for her to testify or stand trial. Ms. Crayton is mostly homebound and requires a caregiver to assist her with the activities of daily living. Additionally, prior to her cancer diagnosis she was diagnosed with lupus, a relatively rare autoimmune disorder among the Plaintiffs[5] and which has confounding factors regarding her injuries. Similar to Defendant's concern about Ms. Johnson's recollection; Ms. Crayton has a very poor recollection about her medical conditions and care which would make it difficult to test the viability of her allegations.

---

[5] Only 94 Plaintiffs in the entire MDL of approximately 10,000 have been diagnosed with lupus.

**June Phillips 2:16-cv-15397**

Ms. Phillips is not representative due to her age at injury and type of cancer. Ms. Phillips was 75 at the time of injury. Only 4% of Plaintiffs were in Ms. Phillips' age range of 70-79 at time of injury, which is well outside the majority of Plaintiffs aged 40-69 (88%) during time of injury.  In addition to her advanced age at injury, Ms. Phillips was HER2 positive which affects only 40% of MDL Plaintiffs compared to 60% of HER2 negative MDL Plaintiffs.[6] Ms. Phillips' advanced age at injury and uncommon cancer type does not make her a suitable bellwether Plaintiff.

**Della Martin 2:16-cv-15678**

Ms. Martin is also unrepresentative due to her recurrence of breast cancer, her type of cancer, and a lack of records about her first breast cancer diagnosis.  Della Martin was diagnosed the first time with breast cancer in 1990 at the young age of thirty-four (34). She received chemotherapy and radiation treatment at that time. She was diagnosed again with breast cancer in December 2005 at the age of forty-nine (49). Only 20% of plaintiffs were diagnosed with *any type of cancer* more than once, and even fewer plaintiffs were diagnosed with *breast cancer more than once*. Additionally, Ms. Martin is more atypical as her medical records for her first cancer were unavailable to her prescribing doctor, who had to guess how to treat her recurrence. Compounding these problematic issues, Ms. Martin had triple negative cancer which means the three most common types of receptors (HER2, ER, and PR) known to fuel most breast cancer growth were not present in her second cancer tumor. Triple negative breast cancer occurs in less than 20% of all women diagnosed with breast cancer.

## III.   Conclusion

For the reasons set forth above, the PSC respectfully requests entry of an Order directing that the following Plaintiffs should proceed to phase two of CMO 14, ranked in the following order:
1. Barbara Earnest – Trial Plaintiff
2. Cynthia Thibodeaux – Alternate #1
3. Elizabeth Kahn – Alternate #2

At the Court's request, we are happy to share the charts and underlying data obtained from Jake Woody at Brown Greer which have informed the PSC's proposed selections.

Respectfully submitted:

*/s/ Christopher L. Coffin*
Christopher L. Coffin (LA Bar # 27902)
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, LA 70112
Telephone: 504-355-0086
Facsimile: 504-523-0699

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Gibbs Law Group LLP
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
Telephone: 510-350-9700
Facsimile: 510-350-9701

---

[6] These percentages do not include the high number of Plaintiffs who answered "unknown" (1,798) or left this question blank (590). Only 15-20% of women nationwide have HER2 positive breast cancer.

E-Mail: ccoffin@pbclawfirm.com
**Plaintiffs' Co-Lead Counsel**

E-Mail: kbm@classlawgroup.com
**Plaintiffs' Co-Lead Counsel**

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com
**Plaintiffs' Co-Liaison Counsel**

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX,
LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com
**Plaintiffs' Co-Liaison Counsel**

cc:     Douglas J. Moore, Esq. (*via e-mail: dmoore@irwinllc.com*)
        John F. Olinde, Esq. (*via e-mail: olinde@chaffe.com*)

# EXHIBIT A

# BARBARA EARNEST

Earnest Before Photos





Earnest After Photos



# CYNTHIA THIBODEAUX

Thibodeaux Before Photo



Cynthia Thibodeaux
Pre. Chemo Rain       6-1-1997

Thibodeaux Before Photo



Cynthia, Right Pre-Chemo
2004
9/5/2004

Thibodeaux After Photo



Thibodeaux After Photo



# ELIZABETH KAHN

Kahn Before Photo



7/ 2007



Kahn Before Photo



Kahn After Photo

Sent from my iPhone

8/4/2017



Kahn After Photo



# DEBORAH JOHNSON

# Johnson Before Photo



## Johnson Before Photo



Johnson After Photo



Johnson After Photo



# TANYA FRANCIS

Francis Before Photo



Francis After Photo



Francis After Photo



# SHELIA CRAYTON

Crayton Before Photo



Crayton Before Photo



Crayton After Photo



Crayton After Photo



# JUNE PHILLIPS

Phillips Before Photo





Phillips Before Photo

Phillips After Photo



Phillips After Photo



# DELLA MARTIN

Martin Before Photos



2005

Martin After Photo



Martin After Photo

