UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
********************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                    Civil Action No. 16-MD-2740
                    Section "H"(5)
                    New Orleans, Louisiana
                    April 4, 2019

THIS DOCUMENT RELATES TO ALL CASES
********************************************************

                 TRANSCRIPT OF MOTION HEARING
        HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                 UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

FOR THE PLAINTIFFS:

                    *DAWN BARRIOS*
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    *MATTHEW PALMER LAMBERT*
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    *CHRISTOPHER COFFIN*
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112

                    *KAREN BARTH MENZIES*
                    GIBBS LAW GROUP
                    400 CONTINENTAL BOULEVARD
                    EL SUGUNDO, CA 90245

APPEARANCES CONTINUED

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

FOR THE PLAINTIFFS:

> *VAL P. EXNICIOS*
> LISKA EXNICIOS & NUNGESSER
> 1515 POYDRAS STREET
> SUITE 1400
> NEW ORLEANS, LA 70112
>
> *CHRISTOPHER ELLIOTT*
> BACHUS & SCHANKER
> 1899 WYNKOOP STREET
> SUITE 700
> DENVER, CO 80202
>
> *DANIEL P. MARKOFF*
> ATKINS & MARKOFF LAW FIRM
> 9211 LAKE HEFNER PARKWAY
> SUITE 104
> OKLAHOMA CITY, OK 73120
>
> *LINDSAY STEVENS*
> GOMEZ TRIAL ATTORNEYS
> 655 WEST BROADWAY
> SUITE 1700
> SAN DIEGO, CA 92101
>
> *RICHARD ROOT*
> MORRIS BART, LLC
> 601 POYDRAS STREET
> FLOOR 24
> NEW ORLEANS, LA 70130
>
> *EMILY JEFFCOTT*
> THE LAMBERT FIRM, PLC
> 701 MAGAZINE STREET
> NEW ORLEANS, LA 70130
>
> *ALYSSA WHITE*
> JOHNSON LAW GROUP
> 4440 VON KARMAN AVENUE
> SUITE 100
> NEWPORT BEACH, CA 92660

APPEARANCES CONTINUED

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

FOR SANOFI S.A.:

           *HARLEY V. RATLIFF*
           *TORREY PETERSON*
           *JORDAN BAEHR*
           SHOOK, HARDY & BACON
           2555 GRAND BOULEVARD
           KANSAS CITY, MS 64108

           *DOUGLAS MOORE*
           *KELLY E. BRILLEAUX*
           IRWIN FRITCHIE URQUHART & MOORE
           400 POYDRAS STREET
           SUITE 2700
           NEW ORLEANS, LA 70130

           *JON STRONGMAN*
           SHOOK, HARDY & BACON
           1155 F STREET NW, SUITE 200
           WASHINGTON, DC  20004

FOR HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC,
FORMERLY DOING BUSINESS AS HOSPIRA WORLDWIDE, INC.,
AND PFIZER, INC.:

           *JOHN F. OLINDE*
           CHAFFE MCCALL
           1100 POYDRAS STREET
           SUITE 2300
           NEW ORLEANS, LA 70163

FOR PFIZER, INC., AND HOSPIRA WORLDWIDE, LLC:

           *MARK S. CHEFFO*
           QUINN EMANUEL URQUHART & SULLIVAN
           51 MADISON AVENUE, 22ND FLOOR
           NEW YORK, NY 10010

FOR SANDOZ, A NOVARTIS DIVISION:

           *NICHOLAS INSOGNA*
           GREENBERG TRAURIG
           3333 PIEDMONT ROAD NE
           SUITE 2500
           ATLANTA, GA 30305

APPEARANCES CONTINUED

————OFFICIAL TRANSCRIPT————

FOR SANDOZ, A NOVARTIS DIVISION:

> *DEBORAH C. ROUEN*
> ADAMS & REESE
> 701 POYDRAS STREET
> SUITE 4500
> NEW ORLEANS, LA 70139

FOR ACTAVIS PHARMA, INC.:

> *MICHAEL J. SUFFERN*
> ULMER & BERNE
> 600 VINE STREET
> SUITE 2800
> CINCINNATI, OH 45202

FOR ACCORD HEALTHCARE, INC.:

> *BRENDA A. SWEET*
> TUCKER ELLIS
> 950 MAIN AVENUE
> SUITE 1100
> CLEVELAND, OH 44113

FOR SUN PHARMACEUTICAL:

> GEOFFREY M. COAN
> HINSHAW & CULBERTSON, LLP
> 28 STATE STREET
> FLOOR 24
> BOSTON, MA 02109

PARTICIPATING VIA PHONE:

> KRISTIE FISCHER
> SARAH DOLES
> AMY GABRIEL
> DONALD GREEN
> CANDICE MCNABB
> BRIA HANLON
> LOWELL FINSON
> CHARLES ORR
> JENNIFER DOMER
> DANAE BENTON
> CHARLOTTE GULEWICZ
> GORDON KESSLER

OFFICIAL TRANSCRIPT

```
Official Court Reporter:      Nichelle N. Drake, RPR, CRR
                              500 Poydras Street, B-275
                              New Orleans, Louisiana 70130
                              (504) 589-7775


    Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

OFFICIAL TRANSCRIPT

**1**      <u>**P R O C E E D I N G S**</u>

11:08:58AM  **2**      (Call to order of the court.)

11:08:58AM  **3**      MR. RATLIFF:  Good morning, Your Honor, Harley

11:09:00AM  **4**  Ratliff on behalf of sanofi.

11:09:01AM  **5**      You know, we talk about this litigation being an

11:09:06AM  **6**  exceptionally complex litigation and it being a complex MDL

11:09:10AM  **7**  with complex procedures.  But when you look at the individual

11:09:12AM  **8**  cases, when you boil down each of the individual cases like

11:09:15AM  **9**  Mrs. Mills' case, what you'll find is they're actually very

11:09:19AM  **10**  simple, very straightforward failure-to-warn cases.  That's

11:09:22AM  **11**  what these individual cases are about.

11:09:25AM  **12**      And for a plaintiff to prove up a failure-to-warn

11:09:28AM  **13**  case, they've got to prove up proximate cause, meaning they

11:09:31AM  **14**  must show "but for" the alleged inadequate warning, the

11:09:35AM  **15**  plaintiff's injury would not have occurred.  So to put it

11:09:38AM  **16**  more specifically in this context, "but for" the alleged

11:09:42AM  **17**  inadequate warning about permanent hair loss, Ms. Mills'

11:09:48AM  **18**  permanent hair loss injury would not have occurred.

11:09:50AM  **19**      Now, in a normal failure-to-warn case, in a consumer

11:09:55AM  **20**  product case, the duty runs from the manufacturer to the end

11:09:58AM  **21**  user.  This is not one of those types of cases.  This is a

11:10:01AM  **22**  prescription pharmaceutical product.  It is a chemotherapy

11:10:05AM  **23**  drug prescribed by oncologists, administered by medical

11:10:05AM  **24**  professionals.

11:10:09AM  **25**      What that means, that in Georgia, like almost every

11:10:12AM   **1**    state in the union, the learned-intermediary doctrine

11:10:15AM   **2**    applies, meaning the manufacturer's duty runs to the

11:10:18AM   **3**    learned-intermediary, the prescriber, and not to end user.

11:10:22AM   **4**    It's the effect on the prescriber, not the effect on the end

11:10:26AM   **5**    user, the rationale, of course, being, the doctor is in the

11:10:29AM   **6**    best position to weigh the risks, the benefits, and decide

11:10:33AM   **7**    what medication is best to treat the disease of their

11:10:37AM   **8**    particular patients.

11:10:38AM   **9**         THE COURT:  This is a question I have about this

11:10:41AM  **10**    argument.  I read every page of the doctor's deposition very

11:10:48AM  **11**    carefully, and I know -- and she clearly said, "My

11:10:54AM  **12**    recommendation would have been this regime under any

11:11:01AM  **13**    circumstances, even knowing the potential of permanent hair

11:11:04AM  **14**    loss."  Are you telling me that her opinion is the only one

11:11:08AM  **15**    that matters?

11:11:09AM  **16**         Because what she also says is, "I would have told my

11:11:12AM  **17**    patient and I would have followed the advice of" -- "I would

11:11:18AM  **18**    have required informed consent from my patient.  If my

11:11:21AM  **19**    patient said, no --

11:11:23AM  **20**         MR. RATLIFF:  So, Your Honor --

11:11:24AM  **21**         THE COURT:  So, to me, that's the crux of this.

11:11:27AM  **22**         And I know whether or not you're going to -- to

11:11:31AM  **23**    prescribe Prozac, the -- you know, in the *Porter* case, it

11:11:33AM  **24**    doesn't even look like he told Mr. Porter that there's a risk

11:11:37AM  **25**    of suicide in this because he didn't think he was at risk.

| | | |
|---|---|---|
| 11:11:40AM | 1 | But in this case, she said, "I would have told her." |
| 11:11:42AM | 2 | MR. RATLIFF:  You're right, Your Honor. |
| 11:11:44AM | 3 | THE COURT:  So tell me how -- |
| 11:11:46AM | 4 | MR. RATLIFF:  Exactly. |
| 11:11:47AM | 5 | So I think what you're talking about is -- well, one, |
| 11:11:49AM | 6 | it is -- I think for the learned-intermediary the first step |
| 11:11:56AM | 7 | is, what is the opinion of the doctor, what would the doctor |
| 11:11:59AM | 8 | have done. |
| 11:11:59AM | 9 | THE COURT:  Right. |
| 11:12:00AM | 10 | MR. RATLIFF:  It would not have changed Dr. Shah's -- |
| 11:12:00AM | 11 | THE COURT:  She made it very clear. |
| 11:12:00AM | 12 | MR. RATLIFF:  -- prescribing opinion. |
| 11:12:05AM | 13 | I think what plaintiffs have tried to do is sort of |
| 11:12:05AM | 14 | turn the learned-intermediary doctrine upside down or inside |
| 11:12:10AM | 15 | out and shift that focus, not from the doctor, but to the |
| 11:12:13AM | 16 | patient and the patient's decision, turning it from a |
| 11:12:19AM | 17 | learned-intermediary analysis to an informed-consent |
| 11:12:21AM | 18 | analysis. |
| 11:12:21AM | 19 | And I agree with you.  That is what her testimony is. |
| 11:12:24AM | 20 | She said, "If I had been told about this, I presume I would |
| 11:12:27AM | 21 | have told the patient." |
| 11:12:28AM | 22 | Here is, I think, the problem with that and where |
| 11:12:32AM | 23 | that takes us on this sort of informed-consent type of |
| 11:12:38AM | 24 | fantasy land.  Because what it does is, it assumes -- well, |
| 11:12:42AM | 25 | there's a lot of unsupported assumptions out there, which is, |

OFFICIAL TRANSCRIPT

11:12:44AM  1   one, that there was a viable alternative chemotherapy that

11:12:49AM  2   Ms. Mills could have taken, that there was an alternative

11:12:52AM  3   chemotherapy that was as safe as the Taxotere one that she

11:12:58AM  4   took, that there was an alternative chemotherapy out there

11:13:02AM  5   that she could have taken that was as effective as the

11:13:06AM  6   Taxotere regimen that she would have taken, and that Dr. Shah

11:13:13AM  7   would have been willing to prescribe a less safe, a less

11:13:16AM  8   effective chemotherapy to Ms. Mills.

11:13:18AM  9        THE COURT:  But does the fact that her course of -- I

11:13:23AM  10  know I'm messing up your slides.

11:13:26AM  11       Does the fact that her course of conduct would have

11:13:28AM  12  changed, which is, I would have told you this, I would have

11:13:31AM  13  had -- you know, to me, when she says, "I would have required

11:13:36AM  14  -- you know, I would have told you, and if you told me that

11:13:38AM  15  was not an option" -- she says, "look, I would have marked my

11:13:44AM  16  file all over, that this is against my best -- my

11:13:49AM  17  recommendation."

11:13:49AM  18       But are you telling me that learned-intermediary just

11:13:55AM  19  completely takes the patient out of the picture?  Because it

11:13:58AM  20  sounds to me that that's what you're saying.

11:14:00AM  21       MR. RATLIFF:  That's actually not what I'm saying.  I

11:14:02AM  22  think you have to deal with it on a case-by-case basis.

11:14:05AM  23       So, for example, one of the cases they talk about was

11:14:08AM  24  -- I think the plaintiff talks about in their opposition was

11:14:10AM  25  the In Re: *Aredia* and *Zometa* case where the court held that

| | | |
|---|---|---|
| 11:14:16AM | **1** | the doctor said she would have given a different warning, she |
| 11:14:19AM | **2** | still would have prescribed the product, and, therefore, that |
| 11:14:22AM | **3** | changed the course of conduct. |
| 11:14:23AM | **4** | The difference though, Your Honor, in that particular |
| 11:14:25AM | **5** | case, was that the change in the course of conduct, that she |
| 11:14:29AM | **6** | would have inquired as to whether there were dental |
| 11:14:32AM | **7** | procedures that were going on with that patient, which would |
| 11:14:34AM | **8** | have then been the marker, she would have been more likely to |
| 11:14:40AM | **9** | have the side effect of the drug in question.  But, here, if |
| 11:14:44AM | **10** | you were to deny this motion, any plaintiff could come in |
| 11:14:47AM | **11** | and, say, "Well, I would have just done something different." |
| 11:14:49AM | **12** | And that would have totally undermined the rest of the |
| 11:14:53AM | **13** | learned-intermediary doctrine because each one of these |
| 11:14:55AM | **14** | plaintiffs would come back -- it would be very easy for a |
| 11:14:58AM | **15** | plaintiff to come back 10 years later with hindsight and say, |
| 11:15:03AM | **16** | "Well, ten years ago when I was facing cancer and I was |
| 11:15:07AM | **17** | scared to death and all I wanted to do was survive, well, if |
| 11:15:07AM | **18** | I had been told this, I would have changed my entire course |
| 11:15:07AM | **19** | of action." |
| 11:15:11AM | **20** | This isn't like prescribing an anti-cholesterol drug |
| 11:15:14AM | **21** | or a prescription seasonal allergy medication.  This is |
| 11:15:20AM | **22** | talking about picking what is the preferred best chemotherapy |
| 11:15:25AM | **23** | regimen that's going to give this patient the best chance at |
| 11:15:29AM | **24** | survival.  And that's what Dr. Shah testified that she did. |
| 11:15:30AM | **25** | She said, "This regimen, this Taxotere regimen, this |

11:15:32AM    1    is the preferred one."

11:15:35AM    2         THE COURT:  So I give you that.  And what I would

11:15:37AM    3    have done in a doctor's office -- I kind of have an idea of

11:15:44AM    4    what I would do.  But is this not a fact for the jury to

11:15:49AM    5    determine, that what -- what this plaintiff -- and for them

11:15:53AM    6    to test it?

11:15:54AM    7         Because what she says is, "I would have told her."

11:15:54AM    8         MR. RATLIFF:  Right.

11:15:57AM    9         THE COURT:  And then the plaintiff says, "And I would

11:16:00AM   10    not have followed that course of conduct."

11:16:03AM   11         MR. RATLIFF:  Well, I think you also raise another

11:16:05AM   12    interesting point, Your Honor, because in the plaintiff's

11:16:08AM   13    opposition, what they say is, there's a declaration from

11:16:11AM   14    Ms. Mills.  And what does Ms. Mills say?

11:16:14AM   15         She says, "If I had been told this, I would have

11:16:17AM   16    never taken Taxotere.  I would have sought a second opinion.

11:16:21AM   17    I would have taken another course of treatment."  I guess

11:16:27AM   18    assuming that all treatments are equal in terms of their

11:16:27AM   19    safety and efficacy, "but for" this one issue of permanent

11:16:31AM   20    hair loss.  That's what's in her declaration after the close

11:16:34AM   21    -- after the close of all of the discovery and after her

11:16:35AM   22    deposition.

11:16:36AM   23         I'm going to go forward --

11:16:36AM   24         THE COURT:  Good.  Yeah.

11:16:39AM   25         MR. RATLIFF:  -- almost --

11:16:39AM 1         THE COURT:  Because I read all of this.

11:16:39AM 2         MR. RATLIFF:  -- to the very end.

11:16:41AM 3         Well, now you see, this is why my associate told me

11:16:45AM 4 not to do it with the slide.

11:16:47AM 5         I hear her laughing.

11:16:57AM 6         THE COURT:  He did it again, huh?

11:17:00AM 7         MR. RATLIFF:  There we go.

11:17:00AM 8         THE COURT:  Okay.

11:17:02AM 9         MR. RATLIFF:  So you read her declaration.  It's very

11:17:04AM 10 clear, crystal clear.  What it says is, "If I had been told

11:17:06AM 11 about permanent hair loss, I would have never taken Taxotere.

11:17:10AM 12 I would have taken an alternative treatment.  This changed my

11:17:13AM 13 life.  I would have never suffered this injury."

11:17:16AM 14         Your Honor, when we deposed Ms. Mills, that was not

11:17:18AM 15 her testimony.  Her testimony was:  Well, if you had known

11:17:21AM 16 that there was a small percentage chance of permanent hair

11:17:24AM 17 loss with taking Taxotere, would you have done something

11:17:28AM 18 different?

11:17:28AM 19         Her testimony was:  I don't know.

11:17:29AM 20         Are you saying 100 percent you would not have taken

11:17:32AM 21 Taxotere?

11:17:32AM 22         I don't know what I would have done.  I don't know

11:17:34AM 23 what I would have said.  I don't know what I would have done.

11:17:37AM 24         That alone tells you that what she is saying, that my

11:17:42AM 25 course of action would have drastically changed in a

| | |
|---|---|
| 11:17:48AM **1** | declaration appended to an opposition for a summary judgment |
| 11:17:52AM **2** | motion, this is what Ms. Mills would have done, not what is |
| 11:17:56AM **3** | put into the pleadings as part of an opposition. |
| 11:17:59AM **4** | And, in fact, the Fifth Circuit has said, if you have |
| 11:18:01AM **5** | conflicting things, then the declaration -- the declaration |
| 11:18:06AM **6** | should be disregarded absent some explanation for the |
| 11:18:10AM **7** | difference. |
| 11:18:10AM **8** | So, Your Honor, what I would say is, this concept |
| 11:18:14AM **9** | that has been interjected -- and I understand why you're |
| 11:18:18AM **10** | asking, "What about the patient's choice?"  Because the |
| 11:18:21AM **11** | patient does get a choice.  But the patient doesn't get to |
| 11:18:24AM **12** | come in after the fact and create sort of a slew of endless |
| 11:18:28AM **13** | hypotheticals and assumptions that all kind of balance on |
| 11:18:31AM **14** | each one of them just to get to a single point, let's just |
| 11:18:34AM **15** | say, "I would have taken a different chemotherapy medication |
| 11:18:37AM **16** | even though I knew I was facing a high-risk triple-positive |
| 11:18:43AM **17** | very invasive type of breast cancer." |
| 11:18:46AM **18** | You know, I think we have to think about also the |
| 11:18:49AM **19** | context, about what type of medication we're talking about, |
| 11:18:50AM **20** | and what type of decisions are being made by that doctor and |
| 11:18:53AM **21** | what type of decisions realistically would be made by the |
| 11:18:58AM **22** | plaintiff.  And the only thing we have from her saying that |
| 11:19:01AM **23** | she would have changed her course of action is a declaration |
| 11:19:05AM **24** | submitted after the fact. |
| 11:19:05AM **25** | And so what -- I guess the other part of this, Your |

OFFICIAL TRANSCRIPT

Page 13

11:19:09AM  1   Honor, is, what Ms. Mills has not done is not provided any

11:19:14AM  2   evidence that there was a medically acceptable, viable, safe,

11:19:20AM  3   and effective cancer treatment without a risk of hair loss in

11:19:26AM  4   2014.  The only one that they have proffered is that there

11:19:31AM  5   was -- is that Dr. Shah now -- that Dr. Shah now does

11:19:33AM  6   recommend or does offer her patients a non-Taxotere regimen.

11:19:39AM  7   She offers that today.  But what she said was, she would not

11:19:43AM  8   have offered that then because, one, it wasn't available,

11:19:45AM  9   and, two, it was not the standard of care.

11:19:47AM  10  So, you know, when you get back to Dr. Shah or --

11:19:50AM  11  Dr. Shah recommended TCH, Taxotere, carboplatin, Herceptin,

11:19:56AM  12  because it was the standard of care.  She rejected the other

11:20:01AM  13  alternatives because of safety reasons, one, because of heart

11:20:04AM  14  failure, two, because of efficacy, because it was an old,

11:20:11AM  15  outdated chemotherapy regimen.  Even with knowing a different

11:20:16AM  16  warning, she still would have recommended the exact same TCH

11:20:20AM  17  regimen in 2014, even knowing now what she was told at the

11:20:22AM  18  deposition by the plaintiff's attorney.

11:20:26AM  19  And what she testified to, Your Honor, is, if

11:20:27AM  20  Ms. Mills walked into her office today with the same type of

11:20:31AM  21  high-risk triple-positive breast cancer, what she would

11:20:38AM  22  recommend to Ms. Mills would be the Taxotere, carboplatin,

11:20:44AM  23  Herceptin chemotherapy regimen.

11:20:44AM  24  And so I think the question isn't, you know, whether

11:20:45AM  25  the label is adequate or inadequate.  It's would Dr. -- Dr.

—— OFFICIAL TRANSCRIPT ——
Page 14

| | | |
|---|---|---|
| 11:20:49AM | 1 | Shah's course of conduct, would she have -- if she had a |
| 11:20:52AM | 2 | different warning, would she have prescribed a different |
| 11:20:55AM | 3 | product. And the answer to that is clearly, no, Your Honor. |
| 11:20:57AM | 4 | It's no. It was no in 2014, and it's no in hindsight and |
| 11:21:00AM | 5 | it's no now. |
| 11:21:00AM | 6 | So, Your Honor, I am happy to walk through the rest |
| 11:21:03AM | 7 | of these slides. |
| 11:21:04AM | 8 | THE COURT: You don't need to walk through the |
| 11:21:06AM | 9 | slides. I mean, I've really read everything. You know, I |
| 11:21:10AM | 10 | kind of got the slides. |
| 11:21:11AM | 11 | What is bothersome to me is -- I understand that her |
| 11:21:19AM | 12 | recommendation would never have deviated. |
| 11:21:19AM | 13 | MR. RATLIFF: Right. |
| 11:21:23AM | 14 | THE COURT: But she did say, "I would tell it and |
| 11:21:28AM | 15 | then I require informed consent from my -- from my patients." |
| 11:21:34AM | 16 | And if my patient chose something else -- she did make -- she |
| 11:21:38AM | 17 | said, "I would -- it would be all over my file because I |
| 11:21:41AM | 18 | would be very concerned about her not following advice." |
| 11:21:46AM | 19 | But, I mean -- |
| 11:21:46AM | 20 | MR. RATLIFF: She said -- I think she said, "I would |
| 11:21:47AM | 21 | strongly recommend any other" -- |
| 11:21:49AM | 22 | THE COURT: Without question. She was clear. But I |
| 11:21:53AM | 23 | don't know if necessarily we can factor the patient out of |
| 11:22:00AM | 24 | that equation. |
| 11:22:03AM | 25 | MR. RATLIFF: And, you know, Your Honor -- |

11:22:04AM  1    THE COURT:  And that's -- and that's -- and I feel

11:22:07AM  2    it's to some degree that's what you're asking me to do,

11:22:11AM  3    because all of us have had -- you know, doctors say, "I

11:22:14AM  4    recommend this."  And it's like, "I'm not ready to do that."

11:22:17AM  5    Maybe we should do something else after you have had an

11:22:21AM  6    opportunity to weigh the risk that the doctor advises you.

11:22:24AM  7    MR. RATLIFF:  Yeah.  And, I mean, Your Honor, I think

11:22:28AM  8    you're right in terms of the idea that there's some component

11:22:31AM  9    of that into that learned-intermediary doctrine.

11:22:32AM  10   I guess as I sort of articulated earlier, the concern

11:22:36AM  11   to me is that you can walk in now and just say, "I would have

11:22:39AM  12   done something different" and without proffering -- or

11:22:43AM  13   putting forth any evidence at the time you would have done

11:22:46AM  14   something different, so you told -- you know, you told the

11:22:48AM  15   doctor --

11:22:48AM  16   THE COURT:  If you weren't told that, I don't

11:22:51AM  17   think -- my guess is the percentage of people that begin

11:22:58AM  18   chemotherapy and don't understand that there would be a great

11:23:07AM  19   likelihood of temporary hair loss, I think that's a zilch.

11:23:14AM  20   And I just can't imagine -- I think it's so well-known that

11:23:17AM  21   people anticipate a temporary.  But for me to say, how could

11:23:21AM  22   you say at that time if I had known when you -- who would you

11:23:24AM  23   have told that -- a risk that you didn't know existed --

11:23:29AM  24   MR. RATLIFF:  See, Your Honor, I -- that assumes --

11:23:31AM  25   that assumes into evidence, that assumes that the other

OFFICIAL TRANSCRIPT

Page 16

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:23:34AM | 1 | chemotherapy options that were available to her had the exact |
| 11:23:38AM | 2 | same safety profile, "but for" this -- |
| 11:23:42AM | 3 | THE COURT: The hair loss, right. |
| 11:23:44AM | 4 | MR. RATLIFF: -- theoretical hair loss. And there is |
| 11:23:47AM | 5 | no evidence that that is the case, Your Honor. And this is |
| 11:23:49AM | 6 | not -- it is not -- I guess the way I look at, Your Honor, |
| 11:23:51AM | 7 | is, I don't walk in and the doctor says, "Well, do you want |
| 11:23:53AM | 8 | to be on antibiotics or do you not want to be on |
| 11:23:57AM | 9 | antibiotics?" That's not what we're talking about. We're |
| 11:24:00AM | 10 | talking about chemotherapy regimens that have -- each one of |
| 11:24:04AM | 11 | them have distinct and individualized risk profiles that are |
| 11:24:07AM | 12 | often patient specific. |
| 11:24:09AM | 13 | THE COURT: Oh, I -- I understand that. I just -- |
| 11:24:17AM | 14 | but you're at summary judgment stage, and it seems that it |
| 11:24:21AM | 15 | requires me to make -- but I'm listening. And maybe I need |
| 11:24:27AM | 16 | to carefully go through her deposition again. |
| 11:24:31AM | 17 | MR. RATLIFF: Well -- and I think, Your Honor -- I |
| 11:24:32AM | 18 | mean, one of the things that Dr. Shah did say -- and this is |
| 11:24:35AM | 19 | what's on the slide right now -- is she makes no guarantees |
| 11:24:39AM | 20 | or promises about hair loss. So, yeah, maybe she will talk |
| 11:24:41AM | 21 | about that your hair will come back or that it will be |
| 11:24:45AM | 22 | temporary. So maybe she would have communicated -- I think |
| 11:24:48AM | 23 | her testimony -- since you've read the whole deposition, I've |
| 11:24:50AM | 24 | now read the whole deposition -- is that she presumes she |
| 11:24:53AM | 25 | would have told them or she says, "I assume I would have told |

OFFICIAL TRANSCRIPT

Page 17

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:24:56AM | 1 | my patients about this." |
| 11:24:57AM | 2 | But she also testified that she doesn't make |
| 11:24:59AM | 3 | guarantees about hair loss, she doesn't make guarantees it's |
| 11:25:02AM | 4 | going to grow back.  She sees patients every single day whose |
| 11:25:07AM | 5 | hair comes back -- not every single day.  She has seen |
| 11:25:10AM | 6 | patients whose hair comes back thinner, markedly thinner; |
| 11:25:13AM | 7 | hair that comes back in different texture, and in rare |
| 11:25:15AM | 8 | occasions, she has seen patients who have lost 70 to |
| 11:25:18AM | 9 | 80 percent of their hair that did not come back.  And so I |
| 11:25:21AM | 10 | think the idea that she would have to give this particular |
| 11:25:23AM | 11 | warning would change the course of treatment, without some |
| 11:25:27AM | 12 | type of evidence from the plaintiffs that there was a viable |
| 11:25:30AM | 13 | alternative that could have been used without the risk of |
| 11:25:33AM | 14 | hair loss, I think that is, to me, the missing component of |
| 11:25:37AM | 15 | this, Your Honor. |
| 11:25:43AM | 16 | Thank you, Your Honor. |
| 11:25:44AM | 17 | THE COURT:  Thank you. |
| 11:25:51AM | 18 | MS. STEVENS:  Good morning, Your Honor. |
| 11:26:04AM | 19 | May it please the Court, Lindsay Stevens on behalf of |
| 11:26:12AM | 20 | plaintiffs Jacqueline and Victor Mills. |
| 11:26:14AM | 21 | Your Honor, I am more than happy to address any |
| 11:26:15AM | 22 | questions that the Court may have after hearing what |
| 11:26:19AM | 23 | Mr. Ratliff had to say, but with the Court's permission, I |
| 11:26:21AM | 24 | would just like to take a few minutes to lay out some points |
| 11:26:24AM | 25 | to guide our discussion. |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:26:24AM | 1 | First, the controlling Eleventh Circuit court law on |
| 11:26:27AM | 2 | this issue is clearly set forth in the appellate court |
| 11:26:31AM | 3 | decision of *Toole versus McClintock* and states that when a |
| 11:26:35AM | 4 | prescribing doctor indicates that they still would have |
| 11:26:37AM | 5 | prescribed the drug, even if they had been adequately warned, |
| 11:26:40AM | 6 | but would have changed their counselling practice or warned |
| 11:26:44AM | 7 | the patient differently, there is a triable issue of material |
| 11:26:49AM | 8 | fact as to proximate causation. |
| 11:26:51AM | 9 | Second, the defendants improperly relied solely on an |
| 11:26:55AM | 10 | unreported lower court decision, *Porter versus Eli Lilly*, |
| 11:26:59AM | 11 | whose facts are distinguishable to the present case. |
| 11:27:01AM | 12 | Finally, Your Honor, I will discuss that when the law |
| 11:27:04AM | 13 | is applied to the facts of Ms. Mills' case -- |
| 11:27:06AM | 14 | THE COURT:  Wasn't there a viable alternative? |
| 11:27:12AM | 15 | MS. STEVENS:  Your Honor, in -- I did read the entire |
| 11:27:14AM | 16 | deposition transcript and in that transcript, Dr. Shah was -- |
| 11:27:16AM | 17 | THE COURT:  I didn't think it -- it really wasn't |
| 11:27:17AM | 18 | clear.  There was one that was dangerous and she said that -- |
| 11:27:21AM | 19 | MS. STEVENS:  If you are a cardiac risk and there |
| 11:27:24AM | 20 | were no indications in any of Ms. Mills' records that she was |
| 11:27:28AM | 21 | a cardiac risk. |
| 11:27:30AM | 22 | My co-counsel, John Gomez, did confront Dr. Shah with |
| 11:27:35AM | 23 | three different alternate treatments that Ms. -- Dr. Shah |
| 11:27:38AM | 24 | conceded were all within this -- medically acceptable under |
| 11:27:42AM | 25 | the NCCN guidelines. |

| | | |
|---|---|---|
| 11:27:44AM | 1 | And, Your Honor, we agree with what you were alluding |
| 11:27:48AM | 2 | to earlier that this is a question of fact that will be |
| 11:27:51AM | 3 | discussed at length by plaintiffs' experts at trial. |
| 11:27:55AM | 4 | So if I may. |
| 11:27:57AM | 5 | THE COURT:  Yes, proceed. |
| 11:27:59AM | 6 | But what do I do with this declaration?  And I need |
| 11:28:04AM | 7 | to very frankly go through Ms. Mills' depositions again |
| 11:28:08AM | 8 | because I have to tell you, I focused a great deal on her |
| 11:28:13AM | 9 | declaration. |
| 11:28:13AM | 10 | MS. STEVENS:  Sure. |
| 11:28:14AM | 11 | THE COURT:  But if there is an inconsistency, you |
| 11:28:19AM | 12 | understand that that's problematic.  And what does Ms. Mills |
| 11:28:22AM | 13 | say in her deposition? |
| 11:28:24AM | 14 | MS. STEVENS:  Your Honor, as defense counsel stated, |
| 11:28:27AM | 15 | when she was presented with that issue, she did say, "I don't |
| 11:28:29AM | 16 | know.  I don't know what I would have done."  But I think |
| 11:28:31AM | 17 | what is important to do is to look to Ms. Mills' other |
| 11:28:33AM | 18 | conduct, the other action that she took throughout her |
| 11:28:38AM | 19 | medical treatment. |
| 11:28:38AM | 20 | This -- I represent over 100 women in this |
| 11:28:42AM | 21 | litigation, and I can tell you that this plaintiff in |
| 11:28:45AM | 22 | particular was extremely actively involved in her healthcare |
| 11:28:47AM | 23 | -- |
| 11:28:47AM | 24 | THE COURT:  I know she chose the lumpectomy versus |
| 11:28:50AM | 25 | the mastectomy. |

OFFICIAL TRANSCRIPT

Page 20

| | |
|---|---|
| 11:28:53AM | 1 |
| 11:28:56AM | 2 |
| 11:29:00AM | 3 |
| 11:29:03AM | 4 |
| 11:29:06AM | 5 |
| 11:29:06AM | 6 |
| 11:29:12AM | 7 |
| 11:29:14AM | 8 |
| 11:29:18AM | 9 |
| 11:29:22AM | 10 |
| 11:29:26AM | 11 |
| 11:29:28AM | 12 |
| 11:29:33AM | 13 |
| 11:29:36AM | 14 |
| 11:29:39AM | 15 |
| 11:29:45AM | 16 |
| 11:29:48AM | 17 |
| 11:29:51AM | 18 |
| 11:29:55AM | 19 |
| 11:29:58AM | 20 |
| 11:30:01AM | 21 |
| 11:30:06AM | 22 |
| 11:30:11AM | 23 |
| 11:30:11AM | 24 |
| 11:30:13AM | 25 |

MS. STEVENS:  Right.  She declined the last cycle of her chemotherapy treatment, even though Dr. Shah had recommended that, because she couldn't deal with the side effects.  She was concerned with her physical appearance and didn't want to appear one-sided, which is why she elected the lumpectomy, the more conservative lumpectomy, over mastectomy.  We also know from her deposition testimony that the only question she recalls asking Dr. Shah was whether she was going to lose her hair when she was initially going through her chemo consult.  And that was just at that time to her a temporary consideration.

She knew that -- other people she knew that had gone through chemotherapy had lost their hair but had come back.  And that's discussed at length in her deposition, Your Honor.

So in their motion for summary judgment and their reply, defendants are silent on the Eleventh Circuit law set forth in the *Toole* case and centered their argument instead on *Porter versus Eli Lilly*, a non-binding case unreported out of the Northern District of Georgia.  Your Honor, if they had a decision that was on point and binding on this Court, they would have led with it.  We do have a controlling appellate decision on point, the *Toole* case, which I'll discuss in more detail.

It's not surprising that the defendants didn't address the *Toole* case, a case that directly addresses the

11:30:16AM  1    issue before the Court, the reason likely being that it's

11:30:20AM  2    dispositive on this issue.  However, even if the Court wants

11:30:23AM  3    to consider *Porter's* holding, I submit to Your Honor that

11:30:26AM  4    *Porter* is not inconsistent with plaintiff's statement of the

11:30:29AM  5    law as to proximate causation under learned-intermediary.

11:30:33AM  6         In *Porter*, the prescribing doctor unequivocally

11:30:36AM  7    testified that even had he known of the suggested warning, he

11:30:40AM  8    would not have treated his patient in a different manner and

11:30:43AM  9    would not have changed his counselling of the patient in the

11:30:47AM  10   face of a stronger warning.  In *Porter*, summary judgment was

11:30:50AM  11   granted because the prescribing doctor testified he still

11:30:54AM  12   would have prescribed the drug and would not have issued an

11:30:57AM  13   additional warning to his patient.

11:30:58AM  14        Now, Your Honor, if that were the case here and

11:31:01AM  15   Dr. Shah testified that she would not have changed her

11:31:04AM  16   warning to Ms. Mills about the risk of permanent hair loss,

11:31:08AM  17   then I understand that the Court may be inclined to grant

11:31:11AM  18   summary judgment because how could my client be given the

11:31:13AM  19   same set of facts and make a different decision.  But this is

11:31:16AM  20   not the case.  Dr. Shah testified in her deposition that she

11:31:19AM  21   would have changed her warning to Ms. Mills, that she would

11:31:22AM  22   have changed her risk discussions with Ms. Mills because she

11:31:26AM  23   understands that hair loss is a big deal to some patients.  I

11:31:29AM  24   submit that this is the kind of change in the prescriber's

11:31:32AM  25   course of conduct to which the *Toole* case and its progeny

11:31:36AM  **1**   refer.

11:31:37AM  **2**          In *Toole*, proximate cause was not found to be

11:31:40AM  **3**   suffered by the learned-intermediary doctrine because the

11:31:43AM  **4**   jury heard evidence from which it could reasonably conclude

11:31:47AM  **5**   that a different warning would have caused the patient

11:31:50AM  **6**   (verbatim) to warn the plaintiff of the product inherent

11:31:52AM  **7**   risks.

11:31:53AM  **8**          Your Honor, it isn't our preference to cite to lower

11:31:56AM  **9**   court decisions, but since defendants in their reply and

11:31:59AM  **10**  argument say that plaintiffs are misstating the law on the

11:32:01AM  **11**  issue or trying to create new law, I brought copies of five

11:32:04AM  **12**  lower court decisions in the Eleventh Circuit that interpret

11:32:07AM  **13**  *Toole* in this manner and provide some guidance.

11:32:10AM  **14**         For example, in *Fields versus Eli Lilly*, the Middle

11:32:16AM  **15**  District of Alabama, the court held that it was bound by

11:32:19AM  **16**  *Toole*, stating that under the learned -- under

11:32:23AM  **17**  learned-intermediary, causation can be demonstrated by

11:32:26AM  **18**  proving that a physician's stronger warning about a side

11:32:30AM  **19**  effect of a drug would inform the patient of the risk and the

11:32:33AM  **20**  warning could result in a different outcome for the patient.

11:32:36AM  **21**         Your Honor, I have four other court decisions from

11:32:40AM  **22**  lower courts that interpret the *Toole* standard in the same

11:32:43AM  **23**  way.  And I can go through them in more detail later.

11:32:45AM  **24**         Okay.  Your Honor, to summarize though, courts in the

11:32:50AM  **25**  Eleventh Circuit do not focus solely on a doctor's decision

OFFICIAL TRANSCRIPT

Page 23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | |
|---|---|
| 11:32:54AM 1 | to still prescribe a drug in the face of an adequate warning, |
| 11:32:57AM 2 | but instead look at whether the doctor would have changed his |
| 11:33:00AM 3 | or her course of conduct, as he said, including providing |
| 11:33:04AM 4 | their patient with additional warning. |
| 11:33:05AM 5 | I submit to you, Your Honor, that Dr. Shah testified |
| 11:33:08AM 6 | she would have prescribed or she would have provided |
| 11:33:10AM 7 | Ms. Mills with a warning regarding permanent hair loss had |
| 11:33:14AM 8 | she received an adequate warning from defendants. So there |
| 11:33:18AM 9 | is a triable issue of material fact on this issue. |
| 11:33:22AM 10 | And we know what effect Dr. Shah's warning would have |
| 11:33:27AM 11 | had on Ms. Mills. We don't need to speculate. She did after |
| 11:33:32AM 12 | being deposed for the first deposition she's ever |
| 11:33:36AM 13 | participated in and considering questions that were asked, |
| 11:33:38AM 14 | she did rectify in her mind that she would have inquired |
| 11:33:43AM 15 | about other effective alternate treatments and would have |
| 11:33:46AM 16 | declined docetaxel in favor of an alternate treatment. |
| 11:33:50AM 17 | THE COURT: But does it matter, the efficacy of the |
| 11:33:56AM 18 | alternative treatment? |
| 11:33:58AM 19 | MS. STEVENS: Certainly, the efficacy would matter, |
| 11:34:01AM 20 | but, again, looking back at Ms. Mills, her deposition |
| 11:34:05AM 21 | testimony states that when she was considering losing her |
| 11:34:09AM 22 | hair and beating cancer, she didn't think that beating cancer |
| 11:34:12AM 23 | was necessarily more important than losing her hair. She |
| 11:34:15AM 24 | testified that these were both important considerations to |
| 11:34:17AM 25 | her. |

| | | |
|---|---|---|
| 11:34:18AM | 1 | So she did have a triple-positive form of breast |
| 11:34:24AM | 2 | cancer and was HER2-positive, which defendants classify as |
| 11:34:29AM | 3 | high risk.  But going through Dr. Shah's deposition |
| 11:34:32AM | 4 | testimony, you can clearly see Ms. Mills had Stage I breast |
| 11:34:37AM | 5 | cancer.  Dr. Shah classified it as early stage disease.  She |
| 11:34:42AM | 6 | had clear margins after lumpectomy.  So maybe she didn't need |
| 11:34:48AM | 7 | the strongest, you know, course of treatment that there was |
| 11:34:51AM | 8 | out there if she was looking to preserve her quality of life |
| 11:34:55AM | 9 | down the line. |
| 11:34:56AM | 10 | Your Honor, defendants are trying to get rid of |
| 11:34:59AM | 11 | Ms. Mills' case with an unreported lower court decision.  The |
| 11:35:03AM | 12 | *Porter* case, a case where the doctor said he would not have |
| 11:35:07AM | 13 | changed his warning to the plaintiff had he been adequately |
| 11:35:08AM | 14 | warned, and the case is simply inapplicable to our facts. |
| 11:35:13AM | 15 | Outside of the *Porter* case, the defendants cite to |
| 11:35:15AM | 16 | cases with distinguishable facts or not binding -- or are not |
| 11:35:18AM | 17 | binding lower authority because they're from lower court |
| 11:35:21AM | 18 | decisions from different circuits. |
| 11:35:23AM | 19 | Finally, Your Honor, Dr. Shah's testimony is super |
| 11:35:29AM | 20 | clear.  She would have given Ms. Mills an additional warning. |
| 11:35:32AM | 21 | Ms. Mills is equally clear through her sworn declaration that |
| 11:35:37AM | 22 | she would have asked about other treatment options and would |
| 11:35:41AM | 23 | have declined Taxotere in favor of an alternate treatment. |
| 11:35:44AM | 24 | I submit to Your Honor that the law, the facts, and |
| 11:35:47AM | 25 | the evidence, when viewed in a light most favorable to the |

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

```
11:35:50AM   1    plaintiff, clearly create a triable issue of material fact

11:35:53AM   2    and summary judgment shouldn't be granted.

11:35:56AM   3           Thank you, Your Honor.

11:35:57AM   4           MR. RATLIFF:  Your Honor, may I address some of those

11:35:59AM   5    very briefly?

11:36:01AM   6           THE COURT:  Sure.

11:36:03AM   7           MR. RATLIFF:  Your Honor, I heard a lot about the

11:36:12AM   8    Toole case, and I think that actually is a very illustrative

11:36:16AM   9    case of why that case is different than the case here as it

11:36:20AM  10    relates to the concept of just providing a different warning

11:36:23AM  11    being enough to get over the learned-intermediary doctrine.

11:36:26AM  12           One of the things Ms. Stevens said was the jury heard

11:36:32AM  13    evidence about a different warning and different treatment

11:36:35AM  14    options.  We have seen nothing here, any type of evidence

11:36:39AM  15    presented to them, that there was a viable, safe, and

11:36:41AM  16    effective alternative treatment to treat Ms. Mills' cancer.

11:36:45AM  17    That remains missing today.  It remains missing in their

11:36:48AM  18    pleadings.  It remains missing from Ms. Stevens' argument.

11:36:52AM  19           She said that hair loss was as important as beating

11:36:57AM  20    cancer to Ms. Mills.  Take that on its face.

11:37:01AM  21           Here's the deposition testimony of Ms. Mills:  Did

11:37:05AM  22    you ever tell Dr. Shah that hair loss was more important to

11:37:09AM  23    you than the survival -- than survival and beating the breast

11:37:14AM  24    cancer?

11:37:14AM  25           No, I did not.
```

OFFICIAL TRANSCRIPT

| | | |
|---|---|---|
| 11:37:15AM | 1 | Did you talk to Dr. Shah about other possible |
| 11:37:19AM | 2 | chemotherapy -- you did not talk to Dr. Shah about other |
| 11:37:21AM | 3 | possible chemotherapy regimens? |
| 11:37:24AM | 4 | Did not. |
| 11:37:24AM | 5 | And so at the time there, at the time she was in the |
| 11:37:28AM | 6 | actual moment, you know, she did not seek a second opinion. |
| 11:37:32AM | 7 | She did not ask about other chemotherapy. She did not say |
| 11:37:35AM | 8 | that hair loss was more important. In fact, what Ms. Mills |
| 11:37:39AM | 9 | testified to was that she wanted whatever it would take to |
| 11:37:44AM | 10 | beat cancer. |
| 11:37:45AM | 11 | And so when you get back to the *Toole* case, when we |
| 11:37:46AM | 12 | talk about the difference between -- |
| 11:37:48AM | 13 | THE COURT: I'm sorry. I'm just listening. She |
| 11:37:49AM | 14 | didn't ask those questions, but she wasn't told of the risk |
| 11:37:54AM | 15 | of permanent hair loss, which I think -- |
| 11:37:57AM | 16 | MR. RATLIFF: I think -- the way I read that |
| 11:37:59AM | 17 | testimony, Dr. Shah's testimony is she would give that |
| 11:38:03AM | 18 | counselling information now, but that was not information she |
| 11:38:07AM | 19 | would give then. And I think one of the reasons is that |
| 11:38:18AM | 20 | Dr. Shah -- since we've now both read the entire deposition |
| 11:38:22AM | 21 | -- was asked if she had looked at the Taxotere package |
| 11:38:26AM | 22 | insert, the label, where the warning would be, the plaintiffs |
| 11:38:29AM | 23 | say should have been communicated -- |
| 11:38:30AM | 24 | THE COURT: Was this after the label changed and |
| 11:38:33AM | 25 | referenced permanent hair loss? |

11:38:34AM 1        MR. RATLIFF:  Correct.  She said, "I have not

11:38:37AM 2    reviewed a Taxotere label in five years."

11:38:41AM 3        And so we're again kind of getting into a bunch of

11:38:44AM 4    assumptions that she would have read the label, that she

11:38:46AM 5    would have given this warning, that this warning would have

11:38:49AM 6    triggered a different result --

11:38:50AM 7        THE COURT:  So it's now that we have to -- you know,

11:38:52AM 8    if a doctor says, "I don't read labels," then --

11:38:54AM 9        MR. RATLIFF:  I think -- I think that had something

11:38:56AM 10   to be taken into account if we're going to talk about turning

11:39:00AM 11   the learned-intermediary, expanding it into a patient

11:39:03AM 12   counselling discussion, that if the doctor says, "Well" -- in

11:39:06AM 13   a deposition from an attorney -- from the attorney asking a

11:39:08AM 14   question, "Well, if you had read this in the label, would you

11:39:12AM 15   have provided this information to your patients?"

11:39:14AM 16       "I assume so."

11:39:15AM 17       But that same doctor also testified, "I don't read a

11:39:20AM 18   label and I haven't read it in the last five years."

11:39:22AM 19       So it wouldn't have mattered if the information on

11:39:26AM 20   permanent alopecia had been in the label in 2014, 2015, 2016,

11:39:30AM 21   you know, during the time -- during the key time period when

11:39:33AM 22   she was prescribing Taxotere regimen to Ms. Mills.

11:39:38AM 23       And I guess the last point I would get back to, Your

11:39:42AM 24   Honor, as it relates to the *Toole* case, because it seems to

11:39:45AM 25   be a case that they think is very important that, frankly, we

| | |
|---|---|
| 11:39:48AM 1 | didn't address because we don't think it's all that |
| 11:39:51AM 2 | important, which is the difference between the concept of |
| 11:39:53AM 3 | alternative choices. And so here, we've talked about this |
| 11:39:56AM 4 | and I won't belabor the point, talking about choosing a |
| 11:40:02AM 5 | chemotherapy. Which one's the best? And there are different |
| 11:40:05AM 6 | chemotherapies for different types of cancers. It's not a |
| 11:40:07AM 7 | simple decision. |
| 11:40:08AM 8 | The *Toole* case dealt with a cosmetic surgery, an |
| 11:40:12AM 9 | elective cosmetic surgery, a breast augmentation. And so the |
| 11:40:16AM 10 | warning there is, you got two options: Either you do it or |
| 11:40:19AM 11 | you don't do it. We're not talking about something that is a |
| 11:40:23AM 12 | life-saving, life-altering decision as it relates to |
| 11:40:25AM 13 | chemotherapy. So I think you have to look at each one of |
| 11:40:27AM 14 | these cases in terms of what was happening in those cases |
| 11:40:30AM 15 | versus what is happening in this particular case. |
| 11:40:33AM 16 | And, once, again, the last thing that I'll say is, |
| 11:40:35AM 17 | the only thing that we know of that says I would have changed |
| 11:40:38AM 18 | my course of conduct is a declaration that was submitted with |
| 11:40:41AM 19 | her opposition to the summary judgment, which is |
| 11:40:43AM 20 | fundamentally different than what she testified when she was |
| 11:40:48AM 21 | actually asked in the moment at her deposition. And so I |
| 11:40:50AM 22 | think without that evidence there's nothing to say that she |
| 11:40:52AM 23 | would have taken any different course other than the words of |
| 11:40:56AM 24 | her attorney. |
| 11:40:57AM 25 | So thank you, Your Honor. |

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:41:01AM | 1 | THE COURT:  Thank you. |
| 11:41:01AM | 2 | MS. STEVENS:  If I may, Your Honor, just address one |
| 11:41:03AM | 3 | thing? |
| 11:41:05AM | 4 | THE COURT:  I don't usually do this, but one thing. |
| 11:41:08AM | 5 | And I've got one finger up. |
| 11:41:12AM | 6 | MS. STEVENS:  I'm sorry? |
| 11:41:12AM | 7 | THE COURT:  One thing. |
| 11:41:13AM | 8 | MS. STEVENS:  Sure. |
| 11:41:14AM | 9 | I just want to point out the fact that the reason why |
| 11:41:17AM | 10 | *Toole* had -- the *Toole* case was a verdict after JNOV, after |
| 11:41:21AM | 11 | the presentation of evidence.  I just -- but I just want to |
| 11:41:24AM | 12 | remind the Court that this case had not completed Phase I |
| 11:41:28AM | 13 | discovery when it was taken out of the bellwether track and |
| 11:41:31AM | 14 | so that this -- the question as to alternate treatments is a |
| 11:41:35AM | 15 | question of fact. |
| 11:41:35AM | 16 | Thank you, Your Honor. |
| 11:41:39AM | 17 | THE COURT:  Thank you. |
| 11:41:42AM | 18 | You all can sit down.  We need to open up the lines |
| 11:41:44AM | 19 | at this point. |
| 11:41:44AM | 20 | You all, unless you're staying for our call docket, |
| 11:41:56AM | 21 | you may leave.  If you want to take five minutes and gather |
| 11:42:00AM | 22 | items, please do so.  I'm going to just do some housekeeping |
| 11:42:06AM | 23 | up here.  So don't worry about me. |
| | 24 | * * * * |
| | 25 | (WHEREUPON, the proceedings were adjourned.) |

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

1                              * * * *

2                        REPORTER'S CERTIFICATE

3            I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
4  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
5  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

6

7                         /s/ Nichelle N. Drake
                          Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                         OFFICIAL TRANSCRIPT