```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
****************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 16-MD-2740
                         Section "H"(5)
                         New Orleans, Louisiana
                         April 4, 2019

THIS DOCUMENT RELATES TO ALL CASES
****************************************************************

                   TRANSCRIPT OF MOTION HEARING
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:


                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    MATTHEW PALMER LAMBERT
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    CHRISTOPHER COFFIN
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112

                    KAREN BARTH MENZIES
                    GIBBS LAW GROUP
                    400 CONTINENTAL BOULEVARD
                    EL SUGUNDO, CA 90245



APPEARANCES CONTINUED
```

OFFICIAL TRANSCRIPT

FOR THE PLAINTIFFS:

        *VAL P. EXNICIOS*
        LISKA EXNICIOS & NUNGESSER
        1515 POYDRAS STREET
        SUITE 1400
        NEW ORLEANS, LA 70112

        *CHRISTOPHER ELLIOTT*
        BACHUS & SCHANKER
        1899 WYNKOOP STREET
        SUITE 700
        DENVER, CO 80202

        *DANIEL P. MARKOFF*
        ATKINS & MARKOFF LAW FIRM
        9211 LAKE HEFNER PARKWAY
        SUITE 104
        OKLAHOMA CITY, OK 73120

        *LINDSAY STEVENS*
        GOMEZ TRIAL ATTORNEYS
        655 WEST BROADWAY
        SUITE 1700
        SAN DIEGO, CA 92101

        *RICHARD ROOT*
        MORRIS BART, LLC
        601 POYDRAS STREET
        FLOOR 24
        NEW ORLEANS, LA 70130

        *EMILY JEFFCOTT*
        THE LAMBERT FIRM, PLC
        701 MAGAZINE STREET
        NEW ORLEANS, LA 70130

        *ALYSSA WHITE*
        JOHNSON LAW GROUP
        4440 VON KARMAN AVENUE
        SUITE 100
        NEWPORT BEACH, CA 92660

APPEARANCES CONTINUED

OFFICIAL TRANSCRIPT

FOR SANOFI S.A.:

        *HARLEY V. RATLIFF*
        *TORREY PETERSON*
        *JORDAN BAEHR*
        SHOOK, HARDY & BACON
        2555 GRAND BOULEVARD
        KANSAS CITY, MS 64108

        *DOUGLAS MOORE*
        *KELLY E. BRILLEAUX*
        IRWIN FRITCHIE URQUHART & MOORE
        400 POYDRAS STREET
        SUITE 2700
        NEW ORLEANS, LA 70130

        *JON STRONGMAN*
        SHOOK, HARDY & BACON
        1155 F STREET NW, SUITE 200
        WASHINGTON, DC  20004

FOR HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC,
FORMERLY DOING BUSINESS AS HOSPIRA WORLDWIDE, INC.,
AND PFIZER, INC.:

        *JOHN F. OLINDE*
        CHAFFE MCCALL
        1100 POYDRAS STREET
        SUITE 2300
        NEW ORLEANS, LA 70163

FOR PFIZER, INC., AND HOSPIRA WORLDWIDE, LLC:

        *MARK S. CHEFFO*
        QUINN EMANUEL URQUHART & SULLIVAN
        51 MADISON AVENUE, 22ND FLOOR
        NEW YORK, NY 10010

FOR SANDOZ, A NOVARTIS DIVISION:

        *NICHOLAS INSOGNA*
        GREENBERG TRAURIG
        3333 PIEDMONT ROAD NE
        SUITE 2500
        ATLANTA, GA 30305

APPEARANCES CONTINUED

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

```
FOR SANDOZ, A NOVARTIS DIVISION:

                    DEBORAH C. ROUEN
                    ADAMS & REESE
                    701 POYDRAS STREET
                    SUITE 4500
                    NEW ORLEANS, LA 70139

    FOR ACTAVIS PHARMA, INC.:

                    MICHAEL J. SUFFERN
                    ULMER & BERNE
                    600 VINE STREET
                    SUITE 2800
                    CINCINNATI, OH 45202

    FOR ACCORD HEALTHCARE, INC.:

                    BRENDA A. SWEET
                    TUCKER ELLIS
                    950 MAIN AVENUE
                    SUITE 1100
                    CLEVELAND, OH 44113

    FOR SUN PHARMACEUTICAL:

                    GEOFFREY M. COAN
                    HINSHAW & CULBERTSON, LLP
                    28 STATE STREET
                    FLOOR 24
                    BOSTON, MA 02109

    PARTICIPATING VIA PHONE:

                    KRISTIE FISCHER
                    SARAH DOLES
                    AMY GABRIEL
                    DONALD GREEN
                    CANDICE MCNABB
                    BRIA HANLON
                    LOWELL FINSON
                    CHARLES ORR
                    JENNIFER DOMER
                    DANAE BENTON
                    CHARLOTTE GULEWICZ
                    GORDON KESSLER
```

OFFICIAL TRANSCRIPT

```
Official Court Reporter:        Nichelle N. Drake, RPR, CRR
                                500 Poydras Street, B-275
                                New Orleans, Louisiana 70130
                                (504) 589-7775
```

Proceedings recorded by mechanical stenography,
transcript produced via computer.

OFFICIAL TRANSCRIPT

**1**          **P R O C E E D I N G S**

10:16:51AM  **2**          (Call to order of the court.)

10:16:51AM  **3**          MR. MOORE:  Your Honor, we are prepared to proceed on

10:16:54AM  **4**  the two motions for summary judgment that Your Honor has

10:16:58AM  **5**  scheduled for oral argument this morning.

10:17:00AM  **6**          If it is all the same to Your Honor, we would prefer

10:17:03AM  **7**  to start with the statute of limitations motion in the

10:17:10AM  **8**  *Johnson* case, which Mr. Strongman will be arguing, and then

10:17:16AM  **9**  turn to the learned-intermediary motion which Mr. Ratliff

10:17:16AM  **10**  will be arguing, if that's okay with Your Honor.

10:17:18AM  **11**          THE COURT:  That would be fine.  Let me just get my

10:17:18AM  **12**  hands on --

10:17:18AM  **13**          MR. MOORE:  Erin, we're on the VGA.

10:20:15AM  **14**          It's only takes three lawyers.

10:20:35AM  **15**          MR. STRONGMAN:  Are you ready to proceed, Your Honor?

10:20:41AM  **16**          THE COURT:  Please, proceed.  Yes.

10:20:41AM  **17**          MR. STRONGMAN:  May it please the Court, Jon

10:20:44AM  **18**  Strongman on behalf of sanofi-aventis.

10:20:48AM  **19**          Your Honor, Ms. Johnson filed her lawsuit more than

10:20:52AM  **20**  four years too late.  The material facts are undisputed and

10:20:56AM  **21**  the application of Louisiana law is straightforward here.

10:20:58AM  **22**          Ms. Johnson completed her Taxotere-based chemotherapy

10:21:03AM  **23**  treatment in 2010.  By 2011, Ms. Johnson had concluded that

10:21:10AM  **24**  her hair loss was permanent.  It wasn't coming back.  Those

10:21:14AM  **25**  are her own words.

| | | |
|---|---|---|
| 10:21:15AM | 1 | And by 2011, Ms. Johnson had concluded that her |
| 10:21:19AM | 2 | permanent hair loss was caused by chemotherapy.  Those are |
| 10:21:24AM | 3 | undisputed facts.  But Ms. Johnson waited until 2016, more |
| 10:21:30AM | 4 | than five years later, to file this suit while taking |
| 10:21:34AM | 5 | absolutely no action in the interim. |
| 10:21:37AM | 6 | Ms. Johnson's claims are prescribed under the |
| 10:21:42AM | 7 | one-year prescription period under 3492 and no exception can |
| 10:21:46AM | 8 | save her case.  Under Louisiana law, Article 3492, plaintiff |
| 10:21:53AM | 9 | has one year to file their product liability claim.  And this |
| 10:21:57AM | 10 | prescription begins to run from the day of the injury or |
| 10:22:01AM | 11 | damage, and that is the critical issue in this case. |
| 10:22:05AM | 12 | It is undisputed that Ms. Johnson's injury or damage |
| 10:22:11AM | 13 | manifested itself with certainty in 2011.  And under |
| 10:22:14AM | 14 | Louisiana law, all that's required is that the injury |
| 10:22:22AM | 15 | manifest itself with sufficient certainty. |
| 10:22:24AM | 16 | When you're dealing with an injury that the |
| 10:22:26AM | 17 | plaintiffs here have described as disfiguring and an injury |
| 10:22:30AM | 18 | that the plaintiffs here in their complaint and in their |
| 10:22:34AM | 19 | pleadings have described as one that's inextricably linked to |
| 10:22:38AM | 20 | the emotional impact that it has on a plaintiff, the social |
| 10:22:41AM | 21 | awareness of the injury itself is part of the injury and the |
| 10:22:45AM | 22 | damage, and that is immediately apparent and it is obvious. |
| 10:22:50AM | 23 | So the prescription period begins to run as soon as |
| 10:22:53AM | 24 | Ms. Johnson determines or has constructive knowledge that her |
| 10:22:57AM | 25 | hair loss is permanent.  And here there's no dispute that |

OFFICIAL TRANSCRIPT

10:23:00AM **1**  that was in 2011.

10:23:02AM **2**  With regard to the burden of proof in this case,

10:23:07AM **3**  normally on a prescription argument, the burden is on the

10:23:12AM **4**  defendant.  But under Louisiana law, when a complaint reveals

10:23:16AM **5**  on its face that the prescription period has lapsed, the

10:23:21AM **6**  plaintiff bears the burden of establishing the suspension or

10:23:22AM **7**  interruption of the prescription period --

10:23:22AM **8**  THE COURT:  Does it matter at all whether or not this

10:23:24AM **9**  plaintiff had any idea if anyone did anything wrong?

10:23:28AM **10**  MR. STRONGMAN:  Well, Your Honor, there's two answers

10:23:32AM **11**  to that question.

10:23:32AM **12**  THE COURT:  Good.  Give me both.

10:23:34AM **13**  MR. STRONGMAN:  First, Ms. Johnson has to be on

10:23:37AM **14**  notice -- once she determines that something is wrong, that

10:23:41AM **15**  may not alone be enough under Louisiana law.

10:23:41AM **16**  THE COURT:  Right.

10:23:45AM **17**  MR. STRONGMAN:  But Louisiana law is also very clear

10:23:47AM **18**  that as soon as a plaintiff determines that something is

10:23:51AM **19**  wrong, they must take steps to try to determine who the

10:23:57AM **20**  tortfeasor may be.  So, here, even assuming that Ms. Johnson

10:24:02AM **21**  may not have known somebody did something wrong, she clearly

10:24:05AM **22**  was on notice to take some action to find out.  And --

10:24:05AM **23**  THE COURT:  Well, you know --

10:24:08AM **24**  MR. STRONGMAN:  -- she did not.

10:24:08AM **25**  THE COURT:  -- her testimony was, "I just thought I

OFFICIAL TRANSCRIPT

10:24:12AM  1   was in a -- an unlucky one."

10:24:15AM  2       Should she at that point begun investigating whether

10:24:20AM  3   or not sanofi or some other entity had done something wrong

10:24:23AM  4   in the -- what should she have done?

10:24:28AM  5       Because what I've read is, she says, "I thought I was

10:24:32AM  6   one of the unlucky ones."

10:24:35AM  7       Should she have any reason to believe that any of the

10:24:37AM  8   manufacturers actually did anything wrong, or is that

10:24:41AM  9   something that is not required?

10:24:43AM  10      MR. STRONGMAN:  Well, I believe that Ms. Johnson was

10:24:46AM  11  on constructive notice to take some action, so I believe that

10:24:50AM  12  that is first and foremost the requirement.  And when she

10:24:54AM  13  took no action, that ends the inquiry.  However, if you think

10:25:01AM  14  that's not enough and you have to ask the question about

10:25:04AM  15  whether she had sufficient information about the tortious act

10:25:11AM  16  if you will, the reality is, she did.  Because in 2011, Ms.

10:25:14AM  17  Johnson knew her hair loss was permanent and that that was

10:25:17AM  18  not expected.

10:25:17AM  19      THE COURT:  How is that different from *Griffin versus*

10:25:17AM  20  *Kinberger*?

10:25:20AM  21      When the family says, "My premature baby's blind.  I

10:25:27AM  22  didn't know it had to do with whether or not there was too

10:25:34AM  23  much oxygen given to me at that time."

10:25:37AM  24      And I'm just wondering, how do we distinguish that?

10:25:38AM  25  Because it seems to me, what they're saying in that case is,

10:25:41AM **1**   "I just didn't know anybody did anything wrong.  I just

10:25:44AM **2**   thought we were one of the unlucky ones whose child ends up

10:25:50AM **3**   with this disability."

10:25:52AM **4**        MR. STRONGMAN:  Well, first of all, with regard to

10:25:54AM **5**   *Griffin*, there are a couple of things.  That is not a latent

10:25:59AM **6**   developing injury or this is not.  In there, what you're

10:26:01AM **7**   dealing with is a medical malpractice claim.  So the medical

10:26:05AM **8**   malpractice statute is different in the first place than the

10:26:09AM **9**   product liability one under 3492.

10:26:12AM **10**       So the first issue there is that when you're dealing

10:26:14AM **11**  with a medical malpractice action, the language in the

10:26:17AM **12**  statute itself talks about knowledge of the -- the specific

10:26:22AM **13**  words are "the act, omission, or neglect."  That's the

10:26:27AM **14**  medical malpractice statute.

10:26:28AM **15**       When you're looking at 3492, the language is much

10:26:31AM **16**  different.  It's just injury or damage.

10:26:33AM **17**       So there are decisions made by the legislature when

10:26:41AM **18**  they put out those two statutes to, in 3492, look at the

10:26:45AM **19**  injury or damage, but under the medical malpractice statue,

10:26:48AM **20**  to look at the defendant's conduct as part of it.

10:26:50AM **21**       THE COURT:  Isn't the medical malpractice statue a

10:26:52AM **22**  bit -- it's a *contra non valentem* argument built into the

10:26:57AM **23**  medical malpractice statute.

10:26:59AM **24**       MR. STRONGMAN:  Correct.  Correct.  But when you look

10:27:01AM **25**  at what, in fact, the plaintiff must have constructive

OFFICIAL TRANSCRIPT

10:27:05AM **1**  knowledge of under the built-in discovery rule, under the

10:27:08AM **2**  medical malpractice statue, it's focused on the doctors or

10:27:12AM **3**  the medical defendant's conduct, not injury or damage, which

10:27:14AM **4**  is the express language in 3492.

10:27:18AM **5**  And when you look at what Ms. Johnson knew,

10:27:21AM **6**  Ms. Johnson believed, according to her testimony, that --

10:27:25AM **7**  that hair loss would be temporary.  That was her

10:27:29AM **8**  understanding.  She had friends who had taken chemotherapy.

10:27:33AM **9**  And so as she progressed through her radiation treatments and

10:27:38AM **10**  through her post-chemotherapy life, she saw that her hair

10:27:41AM **11**  wasn't growing back as she believed it would.  So she knew at

10:27:47AM **12**  that point that she had been provided information, according

10:27:49AM **13**  to her testimony, the hair loss was temporary.  But what she

10:27:54AM **14**  was experiencing was different.

10:27:59AM **15**  So that alone calls into question, did you know

10:28:01AM **16**  something was wrong in terms of the warnings and information

10:28:04AM **17**  you were provided?  So she did know based at least on her

10:28:07AM **18**  testimony and the allegations that there was something amiss

10:28:11AM **19**  in terms of the tortious conduct as well.

10:28:17AM **20**  So the question is, is that conduct of your doctor?

10:28:20AM **21**  Is it conduct of the manufacturer?  These are the kinds of

10:28:22AM **22**  things that a reasonable person, when you've determined you

10:28:26AM **23**  have a permanent disfiguring injury and you know why -- she

10:28:28AM **24**  knew why.  She knew it was chemotherapy.  She didn't ask the

10:28:31AM **25**  question of anybody.  So she knew the information she had

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

10:28:35AM  1   been provided, warned of, was different than what she was

10:28:38AM  2   experiencing.  So there was knowledge of some tortious act

10:28:42AM  3   that she was on notice of doing something about and she

10:28:46AM  4   didn't.

10:28:47AM  5       And, again, this also goes back to the burden part.

10:28:51AM  6   When you're in a situation here where you have an injury that

10:28:58AM  7   on the complaint itself manifested in 2011 and there's a

10:29:02AM  8   five-year delay between that and the filing of the complaint,

10:29:05AM  9   you have a claim that is barred on the face of the complaint.

10:29:08AM  10  That turns the burden to Ms. Johnson.

10:29:08AM  11      THE COURT:  Right.

10:29:11AM  12      MR. STRONGMAN:  So Ms. Johnson has done nothing to

10:29:13AM  13  satisfy this burden here.  She's pled no facts and she has

10:29:19AM  14  done no investigation, nor has she pled that she did any

10:29:23AM  15  investigation.  And that's required under Louisiana law and

10:29:26AM  16  she didn't do it.

10:29:27AM  17      In some ways, this case is somewhat analogous at

10:29:37AM  18  times on this issue to the decision that Your Honor just

10:29:40AM  19  issued in the last four or five months in the *Rivera* case

10:29:47AM  20  where a wrongful death claim was barred on the face of it

10:29:53AM  21  involving asbestos and that the plaintiffs then tried to come

10:29:54AM  22  up with an exception and Your Honor held that they couldn't.

10:29:57AM  23  And Your Honor cited this language, this same language, from

10:30:00AM  24  various Louisiana Supreme Court decisions, saying that when

10:30:03AM  25  you are trying to put forward the discovery rule, as the

OFFICIAL TRANSCRIPT

Page 12

| | | |
|---|---|---|
| 10:30:06AM | 1 | plaintiff is here, the standard is exceedingly stringent |
| 10:30:10AM | 2 | and should be -- |
| 10:30:10AM | 3 | THE COURT:  Now, you know -- |
| 10:30:10AM | 4 | MR. STRONGMAN:  -- only applied -- |
| 10:30:10AM | 5 | THE COURT:  -- that case was really -- |
| 10:30:10AM | 6 | MR. STRONGMAN:  -- in exceptional circumstances -- |
| 10:30:10AM | 7 | THE COURT:  -- different. |
| 10:30:13AM | 8 | MR. STRONGMAN:  I do.  I do. |
| 10:30:13AM | 9 | THE COURT:  Because the plaintiffs -- the plaintiff |
| 10:30:15AM | 10 | actually had the death certificate in her hand, just never |
| 10:30:20AM | 11 | opened the envelope that said mesothelioma. |
| 10:30:26AM | 12 | MR. STRONGMAN:  Yes.  With regard to -- |
| 10:30:26AM | 13 | THE COURT:  So it was a little bit -- |
| 10:30:26AM | 14 | MR. STRONGMAN:  With regard to the *Rivera* case, the |
| 10:30:28AM | 15 | actual facts about the constructive notice are one issue. |
| 10:30:28AM | 16 | Whether the case was barred on its face and whether the |
| 10:30:31AM | 17 | plaintiff had the burden, that's the analogous. |
| 10:30:34AM | 18 | THE COURT:  Right.  Right.  Right.  No, I get it. |
| 10:30:34AM | 19 | MR. STRONGMAN:  I think as Your Honor -- Your Honor |
| 10:30:37AM | 20 | used the word, I think, extreme circumstances in that case, |
| 10:30:39AM | 21 | extreme, exceptional, those types of circumstances simply do |
| 10:30:44AM | 22 | not apply here. |
| 10:30:45AM | 23 | And even if the discovery rule did apply, as Your |
| 10:30:50AM | 24 | Honor knows, that only goes until the plaintiff is on |
| 10:30:56AM | 25 | constructive or actual notice.  And under Louisiana law, |

10:31:01AM 1 constructive knowledge is notice enough to incite curiosity,

10:31:06AM 2 excite attention, or put a reasonably-minded person on guard

10:31:10AM 3 for an inquiry.

10:31:13AM 4 As we've cited on the slide here in the *Mason* case,

10:31:16AM 5 the plaintiffs -- this is a medical device case -- the

10:31:18AM 6 plaintiff's symptoms in that case were enough to certainly

10:31:25AM 7 incite curiosity and excite attention, and the exact same is

10:31:29AM 8 true here, especially when you look at the specific testimony

10:31:33AM 9 that the plaintiff offered in this case.

10:31:34AM 10 So these are the undisputed facts as it relates to

10:31:39AM 11 her specific testimony. Ms. Johnson believed her hair loss

10:31:44AM 12 was permanent by 2011 at the latest. And when you read her

10:31:48AM 13 testimony, she reiterated this fact a number of times. And

10:31:54AM 14 what she said was -- she mentioned the other individuals that

10:31:59AM 15 she saw that experienced chemotherapy. She mentioned her

10:32:02AM 16 radiation treatment, and she really had tied in a lot of ways

10:32:07AM 17 her determining it was permanent to the end of her radiation

10:32:10AM 18 treatment.

10:32:10AM 19 In her testimony, she says it was in 2010. We know

10:32:13AM 20 from the records it was February 2011. Same -- same

10:32:15AM 21 difference.

10:32:16AM 22 And she was asked this question, straightforward

10:32:19AM 23 question: So you believe by 2011 your hair wasn't coming

10:32:22AM 24 back and you were unlucky and there was nothing you could do

10:32:26AM 25 about it?

| | | |
|---|---|---|
| 10:32:27AM | 1 | And her answer was: Right. |
| 10:32:29AM | 2 | There's no ambiguity. There's no uncertainty. |
| 10:32:36AM | 3 | And by 2011, Ms. Johnson believed her hair loss was |
| 10:32:40AM | 4 | caused by her Taxotere-based chemotherapy regimen, and, |
| 10:32:47AM | 5 | again, this is something she was asked on more than one |
| 10:32:49AM | 6 | occasion and she answered in a very straightforward |
| 10:32:52AM | 7 | unambiguous way. She never thought anything other than |
| 10:32:56AM | 8 | chemotherapy caused her hair loss. That was at all times |
| 10:33:01AM | 9 | from 2010 until today. She's never wavered from that belief. |
| 10:33:07AM | 10 | And Ms. Johnson knows that her chemotherapy treatment |
| 10:33:12AM | 11 | included Taxotere. |
| 10:33:12AM | 12 | She testified that when she put these two facts |
| 10:33:16AM | 13 | together, the permanency, the causation, that she was very |
| 10:33:20AM | 14 | concerned, that she was depressed, and that she was |
| 10:33:23AM | 15 | devastated. And those are her words from her deposition. |
| 10:33:27AM | 16 | And when you have a situation where you've determined |
| 10:33:30AM | 17 | that you have an injury and you've determined its cause, you |
| 10:33:35AM | 18 | certainly, if not -- if you don't have actual knowledge, you |
| 10:33:37AM | 19 | certainly have constructive knowledge, certainly enough to |
| 10:33:40AM | 20 | put yourself into a position where your attention has been |
| 10:33:45AM | 21 | noted and excited and that you certainly need to take steps |
| 10:33:50AM | 22 | to do some sort of investigation, to do an inquiry. But |
| 10:33:55AM | 23 | despite knowing that chemotherapy was the cause of her |
| 10:33:58AM | 24 | injury, she took no affirmative action to investigate her |
| 10:34:02AM | 25 | claim whatsoever. That's undisputed. |

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

| | | |
|---|---|---|
| 10:34:06AM | 1 | Ms. Johnson has never tried to determine which |
| 10:34:09AM | 2 | chemotherapy agent caused her hair loss.  Again, her |
| 10:34:14AM | 3 | testimony's unambiguous. |
| 10:34:16AM | 4 | Did you ever try? |
| 10:34:17AM | 5 | No. |
| 10:34:19AM | 6 | That was true in 2010.  It was true in 2011, and it's |
| 10:34:23AM | 7 | true today. |
| 10:34:26AM | 8 | In fact, not only did she not try to figure out which |
| 10:34:29AM | 9 | chemotherapy agent caused the hair loss, she did nothing in |
| 10:34:33AM | 10 | terms of trying to figure out any other information about her |
| 10:34:37AM | 11 | injury.  She never talked to her doctor.  She never did any |
| 10:34:43AM | 12 | research.  She simply didn't do anything. |
| 10:34:48AM | 13 | And the plaintiffs have not cited nor can they cite |
| 10:34:55AM | 14 | one single case any -- anywhere that I'm aware of, but |
| 10:34:59AM | 15 | certainly under Louisiana law where a court found that a |
| 10:35:02AM | 16 | plaintiff's total failure to investigate a known injury was |
| 10:35:06AM | 17 | reasonable.  And that's the standard.  There is no case |
| 10:35:09AM | 18 | because a failure to investigate in any way a known injury is |
| 10:35:16AM | 19 | simply not reasonable. |
| 10:35:17AM | 20 | And as the Louisiana courts have held multiple times, |
| 10:35:21AM | 21 | a plaintiff may not simply sit on their hands and do nothing |
| 10:35:25AM | 22 | to investigate their claim and expect their actions to be |
| 10:35:25AM | 23 | deemed reasonable.  This is a well-reasoned and a regularly |
| 10:35:35AM | 24 | repeated tenant of Louisiana law and it applies here. |
| 10:35:39AM | 25 | Now, in 2016, Ms. Johnson finally filed her lawsuit, |

OFFICIAL TRANSCRIPT

10:35:44AM 1  and the plaintiffs make a few arguments that I want -- I want

10:35:47AM 2  to touch on.

10:35:49AM 3       The first one is that the plaintiffs argue in their

10:35:52AM 4  brief that Ms. Johnson may not have known which of the

10:35:56AM 5  chemotherapies caused her hair loss.  She knew it was

10:36:00AM 6  chemotherapy, but which one.

10:36:00AM 7       THE COURT:  Right.

10:36:01AM 8       MR. STRONGMAN:  So that was one of their first

10:36:03AM 9  arguments.  But what we know is that when Ms. Johnson finally

10:36:07AM 10 filed her lawsuit in 2016, she still didn't know which

10:36:11AM 11 chemotherapy caused her hair loss.

10:36:15AM 12      Her testimony on that is also unambiguous:  As you

10:36:19AM 13 sit here today, do you know today -- this was in 2017.

10:36:23AM 14      As you sit here today in 2017, do you know which of

10:36:26AM 15 the chemotherapeutic agents you believe caused your hair

10:36:31AM 16 loss?

10:36:32AM 17      No.

10:36:32AM 18      So you think it could have been one, two, or all

10:36:35AM 19 three of them?

10:36:35AM 20      Right.

10:36:36AM 21      So this is in 2017 after her lawsuit is filed.

10:36:39AM 22      So it begs the question, can you really require more

10:36:44AM 23 to start a prescription period than it takes to actually file

10:36:48AM 24 your lawsuit?  And the answer to that is no.  Ms. Johnson was

10:36:52AM 25 on notice that she needed to do something and she didn't.

| | | |
|---|---|---|
| 10:36:56AM | 1 | The second argument the plaintiffs make that I want |
| 10:36:59AM | 2 | to address deals with the 2015 label change, and there's a -- |
| 10:37:07AM | 3 | there's a paragraph on page 7 of the plaintiff's brief that |
| 10:37:09AM | 4 | states that Ms. Johnson's case was timely filed because it |
| 10:37:12AM | 5 | was filed within one year of the 2015 label change.  Then |
| 10:37:18AM | 6 | there's a footnote, and the footnote says what's on here: |
| 10:37:22AM | 7 | Plaintiff is not suggesting that the December 11, 2015, |
| 10:37:26AM | 8 | product label warning put her on notice. |
| 10:37:28AM | 9 | These two things are at odds.  There is no way that |
| 10:37:31AM | 10 | the 2015 label change is relevant to Ms. Johnson when it |
| 10:37:36AM | 11 | didn't put her on notice.  She still to this day knows |
| 10:37:40AM | 12 | nothing. |
| 10:37:40AM | 13 | THE COURT:  Right.  And I understand -- what I |
| 10:37:43AM | 14 | understand plaintiff is saying is sanofi hadn't even |
| 10:37:49AM | 15 | addressed the label change, so what would her investigation |
| 10:37:56AM | 16 | have produced, but -- |
| 10:37:57AM | 17 | MR. STRONGMAN:  Well -- |
| 10:37:57AM | 18 | THE COURT:  -- that's neither here nor there but I |
| 10:37:57AM | 19 | understand. |
| 10:37:57AM | 20 | MR. STRONGMAN:  But if you think about that a second |
| 10:37:59AM | 21 | -- |
| 10:37:59AM | 22 | THE COURT:  But then my question is, when does |
| 10:38:01AM | 23 | prescription run? |
| 10:38:01AM | 24 | MR. STRONGMAN:  The prescription in this case -- |
| 10:38:03AM | 25 | THE COURT:  You know, that would be -- |

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

10:38:05AM  1    MR. STRONGMAN:  In this case, the prescription ran

10:38:10AM  2  one year from June 30th, at the latest, 2011, so that would

10:38:14AM  3  be June 30, 2012, which is why the case is more than four

10:38:18AM  4  years too late.

10:38:20AM  5    And if you think about -- think about plaintiff's

10:38:22AM  6  argument on the label change for a minute.  If Ms. Johnson

10:38:29AM  7  had decided that she had permanent hair loss and that her

10:38:33AM  8  hair loss was caused by chemotherapy, she knew, gosh, what I

10:38:38AM  9  was told isn't what's happening to me.

10:38:42AM 10    If she went and she looked at the Taxotere warning,

10:38:46AM 11  A, it says hair loss.  It does say hair loss.  It doesn't say

10:38:50AM 12  temporary hair loss, but it says hair loss.  But if it said,

10:38:55AM 13  like the plaintiffs say, the 2015 label change changed every

10:38:58AM 14  -- she wouldn't have a claim in the first place.  Right?

10:39:00AM 15    So if she looks at the label, which as a lay person

10:39:03AM 16  she's not going to do --

10:39:03AM 17    THE COURT:  Right.

10:39:05AM 18    MR. STRONGMAN:  -- but if she does, she's going to

10:39:06AM 19  see in her mind a disconnect between what she's experiencing

10:39:11AM 20  and what the warning is, which is what the claim in the case

10:39:14AM 21  is all about.

10:39:15AM 22    So the fact that the 2015 label change was within one

10:39:18AM 23  year of Ms. Johnson's suit is totally irrelevant to the

10:39:22AM 24  prescription in this case.  It started well before 2015.

10:39:26AM 25    And I believe that under Louisiana law you can't

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

10:39:29AM 1  re-trigger, if you will, the prescription period.  It started

10:39:33AM 2  when she knew she had permanent hair loss and she knew it was

10:39:36AM 3  caused by chemotherapy, and that was back in 2011.  It

10:39:40AM 4  doesn't start over again in 2015.

10:39:46AM 5       Ultimately, plaintiff decided to file lawsuit because

10:39:50AM 6  she saw a TV ad from a lawyer.  She passively waited until a

10:39:56AM 7  lawyer told her she may be able to receive compensation.

10:40:01AM 8  Those are the facts of the case.

10:40:03AM 9       But we know that under Louisiana law it is

10:40:06AM 10 unreasonable for the plaintiff to think that you can sit on

10:40:10AM 11 your hands, you can sit on your rights indefinitely until a

10:40:14AM 12 lawyer comes and tells you that you may actually be entitled

10:40:17AM 13 to benefits.  It simply doesn't pass the test under Louisiana

10:40:21AM 14 law.

10:40:21AM 15      And I believe, again, while some of the underlying

10:40:26AM 16 facts, like the death certificate, are very different, Your

10:40:30AM 17 Honor dealt with a lawyer advertisement in the *Rivera* case as

10:40:34AM 18 well.  And, Your Honor, concluded that there had been

10:40:36AM 19 sufficient notice, sufficient constructive notice, to put the

10:40:40AM 20 plaintiffs on guard well before that attorney advertisement

10:40:44AM 21 and the same is true here.

10:40:45AM 22      It simply cannot be the case that a plaintiff is not

10:40:50AM 23 on notice until attorneys decide through filing cases and

10:40:55AM 24 through a mass tort that it's significant enough to invest

10:41:00AM 25 their money to put television advertisements up.  It simply

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

10:41:03AM **1**  can't be the standard, particularly when you're dealing with

10:41:05AM **2**  an injury that is open and obvious and when you're dealing

10:41:09AM **3**  with a plaintiff that knew why the injury occurred and that

10:41:13AM **4**  being her chemotherapy.

10:41:14AM **5**       And in the end, the discovery rule, the *contra non*

10:41:21AM **6**  *valentem* rule, cannot save her claim.  That rule was meant to

10:41:25AM **7**  protect a plaintiff when the injury or damage is unknowable.

10:41:28AM **8**  That's not the case here.  Her injury was knowable.  It was

10:41:32AM **9**  open.  It was obvious.  A disfiguring injury, as the

10:41:36AM **10**  plaintiffs have labeled it in their pleadings, cannot be

10:41:39AM **11**  undiscoverable and unknowable.

10:41:41AM **12**       It's meant to protect individuals when the facts or

10:41:45AM **13**  circumstances do not excite attention.  Again, that is not

10:41:48AM **14**  the case here.  Ms. Johnson knew her injury.  She knew its

10:41:52AM **15**  cause, and she was distressed and devastated by it in 2011.

10:41:56AM **16**       It's meant to protect people that take diligent

10:42:00AM **17**  efforts to investigate.  That did not happen here.

10:42:04AM **18**  Ms. Johnson took no steps.

10:42:06AM **19**       And it is meant to protect individuals that are

10:42:10AM **20**  effectively prevented from filing the lawsuit.  There was

10:42:12AM **21**  nothing preventing Ms. Johnson from filing her lawsuit

10:42:16AM **22**  earlier, nothing.  In fact, as we saw, she had the same

10:42:20AM **23**  knowledge in 2016 when she filed the lawsuit that she had in

10:42:24AM **24**  2011.

10:42:24AM **25**       Plaintiff's claims were filed years outside of the

10:42:29AM  **1**   prescription period, and the plaintiff cannot meet the burden

10:42:31AM  **2**   that she has here to provide any exception and her claims

10:42:35AM  **3**   must be dismissed.

10:42:43AM  **4**        THE COURT:  Thank you.

10:42:51AM  **5**        MR. ROOT:  Good morning, Your Honor, Richard Root on

10:42:58AM  **6**   behalf of Deborah Johnson.

10:42:58AM  **7**        Defense counsel says that nothing prevented her from

10:43:03AM  **8**   filing her lawsuit earlier.  What prevented her from filing

10:43:05AM  **9**   her lawsuit earlier, Your Honor, is that the defendant did

10:43:08AM  **10**  not notify Ms. Johnson, nor her medical providers, that their

10:43:14AM  **11**  product caused permanent alopecia.  They essentially say,

10:43:20AM  **12**  "We're finding fault for you for not inquiring.  When you

10:43:20AM  **13**  would have inquired, you would have found nothing."  And she

10:43:22AM  **14**  would not have found anything because there was no mention of

10:43:26AM  **15**  permanent alopecia given to her physicians at the time she

10:43:29AM  **16**  agreed to take the chemical.

10:43:32AM  **17**       The document we submitted to the Court under seal

10:43:34AM  **18**  gave some information about their thought process or lack

10:43:39AM  **19**  thereof on the year she supposedly would have been looking

10:43:43AM  **20**  for this information.  It was simply not disclosed.

10:43:45AM  **21**       And why that's important, Your Honor, is because

10:43:48AM  **22**  there are many cases --

10:43:48AM  **23**       THE COURT:  But didn't the warning say hair loss?

10:43:52AM  **24**       MR. ROOT:  Hair loss, but not permanent hair loss.

10:43:55AM  **25**       THE COURT:  How is that different from what was

OFFICIAL TRANSCRIPT

10:43:57AM 1  happening in the *Xarelto* case where Judge Fallon found that

10:44:03AM 2  this person had a bleed?  When he -- when he looked at the

10:44:07AM 3  label and it said may cause bleeding, how is that different?

10:44:12AM 4       MR. ROOT:  Well, the purpose of Xarelto is to thin

10:44:18AM 5  your blood and cause your -- you not to have a clotting

10:44:23AM 6  mechanism that could cause strokes and embolisms.  You know,

10:44:27AM 7  the purpose of the drug is to thin your blood, and bleeding

10:44:30AM 8  was mentioned throughout the Xarelto label many, many times

10:44:34AM 9  in many, many places.

10:44:35AM 10       What plaintiffs are told when they take Taxotere in

10:44:38AM 11  chemotherapy is that they will have temporary hair loss.  In

10:44:41AM 12  fact, in the record, in the deposition, which is actually

10:44:43AM 13  Exhibit C to defendant's motion -- it's Document 5734-5,

10:44:51AM 14  which is the entire deposition -- Ms. Johnson explains what

10:44:56AM 15  the conversation was with her physician.

10:44:59AM 16       And who was that discussion with?

10:45:02AM 17       My doctor.  He told me I would be receiving temporary

10:45:05AM 18  hair loss.

10:45:05AM 19       And when you say "your doctor," you mean Dr. Lewis?

10:45:09AM 20       Yes.

10:45:09AM 21       When you say Dr. Lewis told you you would receive

10:45:12AM 22  temporary hair loss, you remember Dr. Lewis saying those

10:45:15AM 23  words exactly?

10:45:16AM 24       Yes.

10:45:17AM 25       Ms. Johnson, like everyone else, was told, they would

10:45:20AM   1   have temporary hair loss.  That's analogous to one of the

10:45:23AM   2   cases we provided the Court, which is the *Hoerner* decision, a

10:45:26AM   3   Fourth Circuit decision where defendant said, "You knew

10:45:29AM   4   contact lenses can cause an infection.  And so you should

10:45:32AM   5   have known that your long-term contact lenses caused your

10:45:36AM   6   infection."  And the Court said no, indeed.  She did not know

10:45:39AM   7   that until she later read, I believe, in a *Reader's Digest*,

10:45:42AM   8   about the link between long-term contacts and this type of

10:45:46AM   9   infection.

10:45:47AM   10   THE COURT:  But Ms. Johnson said that she thought --

10:45:47AM   11   MR. ROOT:  Well --

10:45:50AM   12   THE COURT:  -- that this was caused by her

10:45:53AM   13   chemotherapy, and she -- she anecdotally related it to the

10:46:01AM   14   chemotherapy, but there seemed to be no doubt in her mind

10:46:06AM   15   that the permanent hair loss was a result of the

10:46:08AM   16   chemotherapy.

10:46:09AM   17   MR. ROOT:  Well, she certainly thought it didn't come

10:46:10AM   18   back and she was unlucky.  But the case law as we understand

10:46:14AM   19   it, Your Honor, says that -- not just notice that something

10:46:17AM   20   might be wrong, it talks about -- here's -- here's my quote

10:46:18AM   21   -- the plaintiff have actual or constructive knowledge of the

10:46:23AM   22   tortious act, the resulting injury, and the causal connection

10:46:26AM   23   between the two.

10:46:27AM   24   She has no idea whether Taxotere or some other agent

10:46:31AM   25   caused it or whether it's her genetics in combination with it

10:46:35AM  **1**   or -- she -- she doesn't have that knowledge.

10:46:36AM  **2**        But what's important we think, Your Honor, is

10:46:39AM  **3**   actually there was a Fifth Circuit case that was submitted in

10:46:42AM  **4**   the reply brief.  It was not designated for publication, but

10:46:46AM  **5**   -- and shame on me for missing the case it referred to

10:46:50AM  **6**   several times.  That's the *Sharkey* case.

10:46:54AM  **7**        It's a products liability case out of the First

10:46:57AM  **8**   Circuit where in that case it goes straight to the heart of

10:47:00AM  **9**   your first question to defendants.  And that's what happens

10:47:03AM  **10**  when you don't have information to give the plaintiffs to put

10:47:06AM  **11**  her on notice.

10:47:07AM  **12**       And in that case, they cite the Louisiana Supreme

10:47:12AM  **13**  Court in *Jordan* that says:  Prescription will not begin to

10:47:14AM  **14**  run at the earliest possible indication that a plaintiff may

10:47:15AM  **15**  have suffered some wrong.  Prescription should not be used to

10:47:18AM  **16**  force a person who believes he may have been damaged in some

10:47:21AM  **17**  way to rush to file suit against all parties who may have

10:47:25AM  **18**  caused that damage.

10:47:26AM  **19**       But more importantly, Your Honor, they say -- and I

10:47:28AM  **20**  will swap plaintiff for defendant rather than using the names

10:47:32AM  **21**  of the parties if I may.

10:47:32AM  **22**       We note at the outset, as did the trial court, that

10:47:36AM  **23**  defendant's contention that this action as prescribed is

10:47:39AM  **24**  greatly undermined by its own contention that the cause of

10:47:44AM  **25**  Reye's Syndrome is unknown.  If the cause is unknown for

10:47:46AM 1 purposes of defendant's liability, then plaintiff can

10:47:51AM 2 hardly -- a defendant can hardly argue that it was known to

10:47:54AM 3 plaintiff for more than one year.

10:47:55AM 4     If the defendants argue, no, our product doesn't

10:48:00AM 5 cause permanent alopecia, as they argue, as they have in --

10:48:04AM 6 in 148 and 149 of the answer to their master complaint, they

10:48:09AM 7 say, "No, we're denying what you're saying about permanent

10:48:12AM 8 hair loss." And the documents we submitted under seal say

10:48:15AM 9 they certainly never admitted to the public or the doctors

10:48:19AM 10 that their product caused permanent hair loss.

10:48:21AM 11     So if -- Ms. Johnson had gone to her doctor, who says

10:48:26AM 12 in the deposition, "I don't recall if I would have told you

10:48:29AM 13 about any hair loss but temporary."

10:48:32AM 14     She says, "No. You told me temporary."

10:48:34AM 15     He said, "But I might have said it now because I saw

10:48:37AM 16 the TV ads," the same TV ads that she saw.

10:48:40AM 17     So if you think about it, Your Honor, they're saying,

10:48:42AM 18 "Dismiss your case. You should have gone to Dr. Lewis."

10:48:45AM 19     Well, what would have Dr. Lewis said?

10:48:47AM 20     Nothing. I didn't know until I saw the same TV ad

10:48:50AM 21 she saw.

10:48:50AM 22     *Contra non valentem* is an equitable argument that

10:48:52AM 23 says if the plaintiff does not have enough information for a

10:48:55AM 24 reasonable person of her intelligence and background to

10:48:59AM 25 connect the dots on the causation and the tortious act, then

| | | |
|---|---|---|
| 10:49:03AM | 1 | when you do receive information about that at a subsequent |
| 10:49:07AM | 2 | time and you do connect the dots, then it's timely if it's |
| 10:49:10AM | 3 | within a year of that knowledge.  And what she saw, |
| 10:49:14AM | 4 | Ms. Johnson -- |
| 10:49:14AM | 5 | THE COURT:  So is that test when she sees the |
| 10:49:18AM | 6 | commercial? |
| 10:49:19AM | 7 | MR. ROOT:  The commercial was her first knowledge |
| 10:49:22AM | 8 | that Taxotere might be related to permanent hair loss, and |
| 10:49:25AM | 9 | that's absolutely true, that I'm sure the legal community |
| 10:49:28AM | 10 | said, oh, now we got a change in the label.  Now we know |
| 10:49:31AM | 11 | there's permanent hair loss.  That often leads to an |
| 10:49:34AM | 12 | increased interest in the plaintiff bar in products |
| 10:49:36AM | 13 | liability. |
| 10:49:37AM | 14 | But if, in fact, the defendant is denying to the -- |
| 10:49:43AM | 15 | to the healthcare providers who would give her the |
| 10:49:46AM | 16 | information, they keep saying she failed to talk to her |
| 10:49:50AM | 17 | healthcare provider.  And had she asked a healthcare |
| 10:49:52AM | 18 | provider, they would not have said, "Oh, yes, permanent |
| 10:49:55AM | 19 | alopecia is a problem with Taxotere, because we know this |
| 10:49:57AM | 20 | from the product warning label." |
| 10:49:59AM | 21 | So they're simply -- we think there's a logical |
| 10:50:03AM | 22 | presumption, as the Court said in *Sharkey*, that the |
| 10:50:06AM | 23 | presumption is you would find something.  The *Hoerner* Court, |
| 10:50:09AM | 24 | actually the contact lens case, that Court said specifically: |
| 10:50:12AM | 25 | We do not find had she looked she would have found |

OFFICIAL TRANSCRIPT

10:50:16AM  1   information that told her that the long-term contact lens

10:50:20AM  2   caused the infection.

10:50:21AM  3         So the Louisiana Supreme Court and its appellate

10:50:26AM  4   court say there's a certain predicate amount of knowledge

10:50:29AM  5   that must be available to a plaintiff before you can say that

10:50:31AM  6   plaintiff failed to act, because failing to act on that which

10:50:34AM  7   is unknowable is an illogical presumption in an equitable --

10:50:42AM  8   equitable -- a defense to filing untimely.

10:50:45AM  9         Now, it's also important, Your Honor, I think to say

10:50:48AM  10  as to the burden of proof, if a well-pled complaint says on

10:50:53AM  11  its face that the plaintiff has filed within a year of their

10:50:57AM  12  obtaining knowledge in discovery, then the burden is on the

10:51:02AM  13  defendant.  And we argue that the well-pled allegations of

10:51:04AM  14  the plaintiffs' complaint and the master complaint, with all

10:51:08AM  15  those allegations of concealment and misrepresentation and as

10:51:14AM  16  abetted by the sealed documents we gave the Court, but

10:51:18AM  17  certainly there's well-pled allegations that -- that until

10:51:22AM  18  the defendant told the world that permanent alopecia can be a

10:51:29AM  19  result of their product -- although it was a very weak

10:51:31AM  20  warning they did in December -- it was unknown -- you know,

10:51:35AM  21  unknown complaints in unknown amounts.  But at least there's

10:51:38AM  22  a first knowledge of alopecia.

10:51:42AM  23        So it's true that the master complaint says you

10:51:45AM  24  withheld this from the public, the providers, and the

10:51:48AM  25  plaintiffs until such time as you changed your warning label

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

10:51:51AM 1   in 2015.  So we believe that our complaint is well-pled and

10:51:56AM 2   says the exception for *contra non valentem* which is, in this

10:52:02AM 3   particular case, filing October 14th of 2016 is certainly

10:52:06AM 4   within a year of her knowledge of the TV ads.  It was within

10:52:11AM 5   months, and, quite honestly, it was within a year of the

10:52:14AM 6   label change even though as a person who fortunately did not

10:52:17AM 7   have cancer again, she did not have chemo again, so she

10:52:21AM 8   wouldn't have learned of the updated label.

10:52:24AM 9        But even under -- if you use that arbitrary date of

10:52:26AM 10  when they finally told the world in their warning labels,

10:52:28AM 11  she's within a year of that, Your Honor.  So the question

10:52:30AM 12  really is, should we blame her for hearing about temporary

10:52:35AM 13  hair loss and not permanent hair loss and thinking she's

10:52:40AM 14  unlucky and just going on with her life and dealing with a

10:52:45AM 15  mastectomy and the loss of some of her hair because of the

10:52:48AM 16  permanent hair loss when there's a dearth of scientific

10:52:50AM 17  information in the medical community that tells them about

10:52:54AM 18  this, that we have to pin this on you, you should have

10:52:57AM 19  figured this out, even though there's no information for you

10:52:59AM 20  to find?

10:52:59AM 21       And, Your Honor, we think the cases we've cited, that

10:53:02AM 22  both the *Hoerner* case with the contact lenses and the case we

10:53:06AM 23  cited involving the -- several of the malpractice complaints

10:53:11AM 24  where they say they don't know about a link until sometime

10:53:14AM 25  later, the question is the ultimate reasonableness of their

OFFICIAL TRANSCRIPT

10:53:17AM 1    actions in light of what they knew.

10:53:19AM 2         And in this case, she knew what Dr. Lewis knew.  And

10:53:23AM 3    Dr. Lewis says, "I saw that on the TV ad.  I guess I'd go

10:53:27AM 4    back and say it now because I see these TV ads."

10:53:31AM 5         Well, if the doctor wouldn't have done anything

10:53:33AM 6    differently, I don't think we should hold Ms. Johnson to a

10:53:36AM 7    higher standard than her treating provider.  And that's in

10:53:39AM 8    this case certainly.  I don't know, maybe other physicians in

10:53:41AM 9    other cases will have a different answer in their deposition.

10:53:45AM 10   But in this case, Your Honor, her physician says, "I guess

10:53:51AM 11   knowing what I know now from the TV commercials, I would

10:53:54AM 12   maybe warn in the past."  And so that is what we know.  And

10:53:58AM 13   they said in their reply memo that the fact that the doctor

10:54:02AM 14   says that I don't recall is a bad thing for Ms. Johnson in

10:54:07AM 15   this case.

10:54:09AM 16        In a summary judgment motion, we're looking for

10:54:12AM 17   genuine issues of material fact.  If they say, "I don't

10:54:16AM 18   remember means he told her it could be permanent," and she

10:54:16AM 19   says, "He absolutely told me it was temporary," then that is

10:54:22AM 20   a genuine issue of material fact that perhaps is more suited

10:54:23AM 21   to the jury to find, who do we believe when you told her and

10:54:26AM 22   what you told her.  But we believe in any event that as to

10:54:30AM 23   things like reasonableness in a situation where the facts as

10:54:34AM 24   in this case are -- are unclear that maybe a jury would be

10:54:39AM 25   better to decide that issue, because this is not like the

OFFICIAL TRANSCRIPT

Page 30

10:54:43AM  1   *Carter* case.

10:54:44AM  2       The *Carter* case was a Zicam case they quoted in that

10:54:46AM  3   Fifth Circuit decision.  The instant she used it,

10:54:51AM  4   excruciating, blinding pain.  Didn't go into work the next

10:54:54AM  5   day, said, "I think it's Zicam."

10:54:55AM  6       And, actually, in the *Carter* case, they said as a

10:54:59AM  7   wrap-up of what she knew that -- from the very outset, she

10:55:08AM  8   suspected and contributed her injury to Zicam and she never

10:55:09AM  9   wavered in that belief.

10:55:11AM  10      Ms. Johnson never knew.  She thought she was unlucky.

10:55:13AM  11  She didn't know which drug it could be or why it was.  It's

10:55:17AM  12  true that shading the facts in the reasonableness inquiry can

10:55:21AM  13  come up to different -- different results and certainly a

10:55:23AM  14  result where instantly --

10:55:25AM  15      THE COURT:  I think that -- you know, isn't it the

10:55:28AM  16  inquiry?  It's not that she had to know and she knew at that

10:55:31AM  17  moment.  I mean, I know her testimony is, "I lost all of my

10:55:35AM  18  hair on the first day and I thought when everything resolved,

10:55:40AM  19  radiation and everything resolved, it would grow back and

10:55:43AM  20  that never occurred."

10:55:47AM  21      Or are you telling me that there's no obligation to

10:55:50AM  22  at least inquire?  Is it -- or what you're telling me is, the

10:55:56AM  23  inquiry would have showed nothing, so I have to make that

10:56:01AM  24  determination as to what it would have revealed had she?

10:56:04AM  25      MR. ROOT:  Well, the other Louisiana courts did in

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

| | | |
|---|---|---|
| 10:56:07AM | 1 | those cases, that the predicate of there has to be |
| 10:56:10AM | 2 | information out there for her to discover, that's why it's |
| 10:56:13AM | 3 | unreasonable not to go ask and see.  But it presumes a |
| 10:56:16AM | 4 | predicate. |
| 10:56:16AM | 5 | If you -- if you neglected to find what was there for |
| 10:56:22AM | 6 | you to find, shame on you.  But for a reason you can't find |
| 10:56:25AM | 7 | that information, because the defendants hid it, then the |
| 10:56:28AM | 8 | defendant should not be able to say, "See, you waited too |
| 10:56:31AM | 9 | long to find the thing we hid from you."  Because that is not |
| 10:56:34AM | 10 | equity, Your Honor, and we don't believe that's the proper |
| 10:56:36AM | 11 | application of the Louisiana Supreme Court cases that deal |
| 10:56:39AM | 12 | with these issues of discovery after the fact. |
| 10:56:44AM | 13 | Because the contact lens case was not a latent injury |
| 10:56:47AM | 14 | case.  She had an infection after she used her contact lens |
| 10:56:50AM | 15 | cases (verbatim).  It was only much later she found out there |
| 10:56:52AM | 16 | was a link between long-term lenses and the infection. |
| 10:56:56AM | 17 | So, quite honestly, the fact that people know that |
| 10:56:59AM | 18 | there can be a link to -- to -- to temporary hair loss does |
| 10:57:02AM | 19 | not mean you know about permanent hair loss.  So we think |
| 10:57:07AM | 20 | that -- that, essentially, because there's no way she could |
| 10:57:15AM | 21 | have known about the link to hold her to knowledge that |
| 10:57:20AM | 22 | didn't exist is simply bad law and an improper application of |
| 10:57:24AM | 23 | Louisiana law. |
| 10:57:24AM | 24 | THE COURT:  Thank you. |
| 10:57:27AM | 25 | MR. STRONGMAN:  May I respond briefly, Your Honor? |

OFFICIAL TRANSCRIPT

| | | |
|---|---|---|
| 10:57:29AM | 1 | THE COURT:  Sure. |
| 10:57:31AM | 2 | MR. STRONGMAN:  Thank you. |
| 10:57:32AM | 3 | Your Honor, there's several points I want to respond |
| 10:57:34AM | 4 | to and I'll do so briefly. |
| 10:57:37AM | 5 | The first where Mr. Root just left off was his |
| 10:57:40AM | 6 | discussion on the total absence of information, and yet I |
| 10:57:42AM | 7 | would ask the Court to look at our statement of material |
| 10:57:46AM | 8 | facts and look at the allegations in the master complaint |
| 10:57:49AM | 9 | about all of the information that was publicly available in |
| 10:57:51AM | 10 | 2010 and before.  So there was readily available information |
| 10:57:55AM | 11 | if you did research. |
| 10:57:57AM | 12 | If you were to believe Mr. Root, there would never be |
| 10:58:03AM | 13 | a running of the prescription until lawyer advertisements |
| 10:58:07AM | 14 | started.  The prescriptions started running in cases years |
| 10:58:11AM | 15 | and years ago where there was no such thing as lawyer |
| 10:58:14AM | 16 | advertisements.  So, clearly, lawyer advertisements are not |
| 10:58:18AM | 17 | what's required and neither is an admission of liability by |
| 10:58:21AM | 18 | the defendant -- |
| 10:58:21AM | 19 | THE COURT:  I got that.  I didn't think that was the |
| 10:58:24AM | 20 | case. |
| 10:58:24AM | 21 | MR. STRONGMAN:  The next point is, essentially, the |
| 10:58:26AM | 22 | way I would characterize Mr. Root's argument was one of |
| 10:58:31AM | 23 | futility.  So if, if Ms. Johnson did something, it would have |
| 10:58:35AM | 24 | been futile.  But futility -- and there's no case that would |
| 10:58:39AM | 25 | say that futility is an exception to the duty to investigate. |

OFFICIAL TRANSCRIPT

| | | |
|---|---|---|
| 10:58:45AM | 1 | And, in fact, if you look at the law, it actually |
| 10:58:48AM | 2 | holds the opposite.  And I would point the Court to the |
| 10:58:53AM | 3 | *Bartucci* decision, which was a Fifth Circuit decision, and |
| 10:58:55AM | 4 | that was a case where the plaintiff alleged that he had |
| 10:59:00AM | 5 | repressed memories so he didn't file a case for |
| 10:59:04AM | 6 | 20-some years.  And the Court found that the plaintiff never |
| 10:59:07AM | 7 | took any action to try to recover his memories in the |
| 10:59:11AM | 8 | 20 years, and as a result, the case was time-barred. |
| 10:59:15AM | 9 | And there's a footnote in the Bartucci case that says |
| 10:59:19AM | 10 | we don't know if Mr. Bartucci had taken any action to try to |
| 10:59:24AM | 11 | recover his memories, whether it would have worked.  We don't |
| 10:59:27AM | 12 | know.  But we know he didn't even try.  And so the futility |
| 10:59:34AM | 13 | argument that Mr. Root put forward has been rejected under |
| 10:59:37AM | 14 | Louisiana law including in the *Bartucci* case. |
| 10:59:39AM | 15 | And I want to also talk about briefly the *Hoerner* |
| 10:59:42AM | 16 | case, the contact lens case.  That case is certainly |
| 10:59:46AM | 17 | distinguishable from this one, again, for the same reason |
| 10:59:50AM | 18 | that the plaintiff in the *Hoerner* case actually did do |
| 10:59:56AM | 19 | investigation.  And so under Louisiana law, constructive |
| 11:00:00AM | 20 | notice starts when you have something that excites your |
| 11:00:06AM | 21 | attention. |
| 11:00:06AM | 22 | What happened in the *Hoerner* case is that the |
| 11:00:08AM | 23 | plaintiff, who had an eye infection, went to her doctor and |
| 11:00:13AM | 24 | did ask the doctor.  And her doctor actually told her it was |
| 11:00:17AM | 25 | something else.  So not only was the plaintiff's |

| | | |
|---|---|---|
| 11:00:22AM | 1 | investigation quashed, under the law, it actually tamped down |
| 11:00:28AM | 2 | her inquiry. It's very different circumstances. |
| 11:00:33AM | 3 | And, again, when plaintiff takes no action to |
| 11:00:36AM | 4 | investigate -- and I think that is undisputed. Mr. Root |
| 11:00:40AM | 5 | never disputed that. When there is no action to investigate, |
| 11:00:42AM | 6 | you simply cannot be found to have acted reasonably under |
| 11:00:47AM | 7 | Louisiana law. |
| 11:00:47AM | 8 | I also wanted to point out one other case to Your |
| 11:00:56AM | 9 | Honor, and that is the *Fontenot* case. It's a Louisiana |
| 11:01:00AM | 10 | Supreme Court case. And Mr. Root was arguing about the |
| 11:01:05AM | 11 | difference between permanary -- permanent -- pardon me -- and |
| 11:01:09AM | 12 | temporary. |
| 11:01:10AM | 13 | And in the *Fontenot* case, the plaintiff argued that |
| 11:01:14AM | 14 | the doctor in that case told the plaintiff that the condition |
| 11:01:19AM | 15 | was temporary and not permanent. And the Louisiana Supreme |
| 11:01:24AM | 16 | Court held or stated that plaintiff's contention that |
| 11:01:27AM | 17 | Dr. Bertuccini's failure to inform that Ms. Fontenot's |
| 11:01:33AM | 18 | condition was permanent versus temporary is of no consequence |
| 11:01:37AM | 19 | to whether or not the statute of limitations had started or |
| 11:01:40AM | 20 | whether the constructive notice had started. So that issue |
| 11:01:44AM | 21 | has also been dealt with under Louisiana law. |
| 11:01:47AM | 22 | And, finally, I know Mr. Root also made a point again |
| 11:01:51AM | 23 | about the burden of proof. In the plaintiff's briefs, |
| 11:01:54AM | 24 | there's no actual argument about any kind of exception under |
| 11:01:58AM | 25 | Louisiana law other than the discovery rule. And what we |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DEBORAH JOHNSON

11:02:01AM 1  know is that when you actually look at the complaints, there

11:02:04AM 2  is not one fact pled specific to Ms. Johnson about what she

11:02:09AM 3  did to investigate, because we know she didn't, and about

11:02:13AM 4  what she found and about what put her on notice.  There's not

11:02:16AM 5  one pled fact.  So the burden is on Ms. Johnson, and she

11:02:20AM 6  can't meet that burden.

11:02:22AM 7          THE COURT:  Thank you.

11:02:39AM 8          MR. STRONGMAN:  Your Honor, would you like to take a

11:02:41AM 9  quick break?

11:02:42AM 10          THE COURT:  I would.  Five minutes.

11                              *  *  *  *

12          (WHEREUPON, the proceedings were adjourned.)

13                              *  *  *  *

14                      REPORTER'S CERTIFICATE

15          I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
16  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
17  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

18

19                    /s/ Nichelle N. Drake
                    Official Court Reporter

20

21

22

23

24

25