UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | |

**Barbara Earnest, Case No. 2:16-cv-17144.**

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

Plaintiff Barbara Earnest's claims are prescribed under the one-year statute. Ms. Earnest admits that by May 2012, her hair had not regrown as she had expected, and that she was "painfully aware" of this fact from that day forward, but did not file suit until 2016. Opp. at 8. She also admits that she possessed information associating "rare reports of permanent hair loss" with Taxotere in May 2012. *Id.* at 10. In other words, by May 2012, Ms. Earnest had all of the notice required by Louisiana law for her claim to accrue. Louisiana law does not suspend prescription where, as here, Plaintiff made no effort to investigate a conspicuous injury, its cause, or any potential claim for some four years before filing suit. As set forth in Defendants' Memorandum (Rec. Doc. 6079) ("Memo"), summary judgment is warranted.

In her Opposition (Rec. Doc. 6611) ("Opp."), Plaintiff does not dispute the essential facts set forth in Sanofi's Memo. In fact, Plaintiff notably:

- Admits that she has been "painfully aware" of her alleged injury since May 2012;

- Admits that she possessed a Breast Cancer Treatment Handbook that associated "rare reports of permanent hair loss" with Taxotere by May 2012;[1]

- Admits that she has always attributed her injury to chemotherapy including Taxotere;

- Identifies <u>no</u> effort to investigate her injury from May 2012 to December 2016; and

---

[1] Whether Ms. Earnest received the book in February 2011 or during her treatment later in 2011, *see* Opp. at 10, is immaterial for purposes of prescription. In either case she possessed the book at least five years before filing suit.

4851-4445-1474 v1

- Cites <u>no</u> Louisiana case holding that prescription is suspended when a plaintiff <u>took no action</u> to timely investigate her injury or potential claims.

Because Plaintiff's Opposition does not identify any factual or legal grounds to avoid summary judgment, the Court should grant Sanofi's Motion.

## I.  MS. EARNEST'S COMPLAINT IS FACIALLY UNTIMELY

Barbara Earnest filed her lawsuit on December 12, 2016, claiming the injury of "[d]isfiguring permanent alopecia" beginning in May 2012. Under Louisiana's one-year prescription statute for delictual actions, Ms. Earnest's suit is untimely on its face and subject to summary judgment. La. Civ. Code. Art. 3492; *see also Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345 (5th Cir. 2010) (finding medical product liability claims prescribed).

Plaintiff appears to argue that her claims are not facially untimely because she did not know about them at the time of her alleged injury in May 2012. *See, e.g.*, Opp. at 6 ("Importantly, the allegations of this AMC were not alleged to have been known by Ms. Earnest at the time of her infusion."). Plaintiff misconstrues article 3492 and Louisiana law. <u>Facial timeliness</u> turns on the plain text of article 3492. Neither incorporates concepts of *contra non valentem*, a judicially-created <u>exception</u> to article 3492. Article 3492 does not require knowledge of injury, cause, or any aspect of a plaintiff's asserted claim for prescription to commence.[2] Rather, article 3492 measures prescription "from the day injury or damage is sustained." Here, Plaintiff has alleged that date was by May 2012, at the latest. *See* SFC at 10, 12, AMC at 181; Opp. at 7-8 ("her injuries occurred […] in or around February 2012"; "Ms. Earnest likewise does not dispute that her hair

---

[2] Article 3492 thus contrasts with statutes which *do* date prescription from a defendant's conduct, or a plaintiff's discovery thereof. *Compare* La. Civ. Code. Art. 3492 (measuring prescription from "the day injury or damage is sustained") *with, e.g.*, La. Stat. Ann. § 9:5628 (measuring prescription from "the date of the alleged act, omission, or neglect, or […] the date of discovery of the alleged act, omission, or neglect"); La. Stat. Ann. § 6:787 (same for actions against financial directors and officers); La. Stat. Ann. § 35:200 (same for actions against notaries). "Laws on the same subject matter must be interpreted in reference to each other," and differences between them are presumed intentional. *See* La. Civ. Code Ann. art. 13; *Borel v. Young*, 989 So. 2d 42, 59-60, *on reh'g* (La. 2008).

did not grow back as she hoped it would in May 2012. Ms. Earnest has been painfully aware of her hair loss since that time."). There is no question that Plaintiff's claim is facially untimely, and Plaintiff accordingly bears the burden of showing that her action is not prescribed. *See, e.g.*, *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1017 (La. 2012); *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 256 (La. 2010); *Bartucci v. Jackson*, 246 F. App'x 254, 257 (5th Cir. 2007); *LaShip L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 323 (5th Cir. 2017).

## II. PLAINTIFF FAILED TO PROVE AN EXCEPTION TO THE FACIAL PRESCRIPTION OF HER CLAIMS

In order to save her claims from their facial untimeliness under article 3492, Plaintiff was required to prove an exception to prescription under the doctrine of *contra non valentem*. Plaintiff has not demonstrated—as the doctrine requires—that she lacked knowledge sufficient to excite the attention of a reasonable person to inquire into whether she had a cause of action. *See Marin*, 48 So. 3d at 249-50. To the exact contrary, Plaintiff admits that:

1. Before and after receiving Taxotere, Ms. Earnest was made aware of hair loss associated with chemotherapy by medical professionals multiple times, and she understood hair loss to be a risk of chemotherapy before and after treatment. *See* Memo at 9-10; SOF at ¶ 9, 15, 17-18 (all admitted).

2. Ms. Earnest's husband testified that when Dr. Carinder discussed Ms. Earnest's hair prior to chemotherapy, "[h]e said it was possible it would never grow back." *See* Memo at 9; SOF at ¶ 15 (admitted); Ralph Earnest Dep. 147:18-148:2.

3. Ms. Earnest testified that the hair on the top of her head never grew back following chemotherapy treatment, and has remained the same since 2012. *See* Opp. at 8.

4. From 2012 to present, she allegedly has continually experienced "Permanent/Persistent Hair Loss on Scalp," "[s]ignficiant thinning of the hair on [her] head after (6) months of discontinuing Taxotere," and "visible bald spots on [her] head no matter how [she] styles [her] hair." *See* Memo at 14; SOF at ¶¶ 31-32 (admitted).

5. Ms. Earnest has been "painfully aware" of her injuries since May 2012. Opp. at 8.

3

6. Ms. Earnest has never attributed her hair loss to anything other than chemotherapy. *See* Opp. at 9; SOF at ¶ 41 (admitted).

7. Ms. Earnest did nothing to investigate her claim from May 2012, until she learned of an advertisement for this litigation in 2016. *See* Opp. at 8-9.

No exception to prescription applies where, as here, a plaintiff makes no effort to investigate a known, unexpected injury. *See, e.g.*, *Bartucci v. Jackson*, 246 F. App'x 254, 258 n.3 (5th Cir. 2007) (plaintiff's "failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription."). Still, Ms. Earnest argues it was "reasonable" for her not to investigate her claim—for a *full four years*—because (1) she thought her injury was temporary and not permanent, and (2) she did not know she was the victim of a tort. *See* Opp. at 9, 12. Neither argument prevails under the facts or law.

A. **Belief that an injury is temporary is immaterial under Louisiana law**

Ms. Earnest's professed belief that her hair loss was temporary, rather than permanent, cannot support a claim of *contra non valentem*. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422 (5th Cir. 2016) ("The Louisiana Supreme Court has determined that the fourth category [of *contra non valentem*] **does not apply where the only contention is that the Defendants failed to inform the Plaintiffs that a condition was permanent**.") (citing *Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996)) (emphasis added). Such information pertains to the extent or duration of an injury, and is immaterial to prescription. *See id.*; *Fontenot*, 674 So. 2d at 964 ("Plaintiffs' contention that Dr. Bertuccini's failure to inform them that Mrs. Fontenot's condition was permanent versus temporary is of no consequence. Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription."). Notice of an allegedly temporary injury is sufficient notice of a permanent injury for prescription. This is a legal question squarely answered by the Louisiana

4

Supreme Court, not a fact question subject to Plaintiff's perceptions or testimony. *See id.*[3]

Yet Ms. Earnest argues that her claims have not prescribed because of: (1) her own testimony that she believed her hair loss was temporary until she heard about an attorney's lawsuit approximately *four years after completing chemotherapy*; and (2) the testimony of her prescribing oncologist, Dr. James Carinder, that he tells patients that their hair loss will be temporary based solely on his "experience with other patients." *See* Opp. at 9-10; Carinder Dep. 96:22-97:5.

**B.     Record evidence shows Plaintiff had notice of her incomplete hair regrowth**

Besides being irrelevant under Louisiana law, *see Smith*, 827 F.3d at 422; *Fontenot*, 674 So. 2d at 964, Ms. Earnest's reported belief that her hair loss was temporary for four years is unreasonable and unsupported by record evidence in this case. Plaintiff admits that by May 2012, one of her treating physicians had provided her with a Breast Cancer Treatment Handbook that noted "rare reports of permanent hair loss" associated with Taxotere. Possession of documents evidencing a potential claim constitutes constructive notice for prescription to run, whether or not the claimant has read the documents.[4] *See Rivera v. Huntington Ingalls, Inc.*, No. CV 18-6795, 2018 WL 6326451, at *3-4 & n.60 (E.D. La. Dec. 3, 2018) (finding wrongful death claims knowable to plaintiff when she possessed decedent's death certificate, despite testimony that plaintiff did not read the certificate until after viewing lawsuit advertisement, and collecting cases); *In re Mann*, No. AP 06-05221-RBK, 2009 WL 10702299, at *11 (W.D. Tex. Sept. 28, 2009) (holding that receipt and possession of a document, even though it was placed in a drawer and not seen for years, commenced the relevant statute of limitations period under Texas's equivalent of

---

[3] Contrary to Plaintiff's claim, *see* Opp. at 9, no Taxotere label has ever characterized hair loss as "temporary," including the label in effect during Ms. Earnest's treatment. *See* Sanofi_000628, attached **Exhibit 1** at 1, 57.

[4] Here, Ms. Earnest has not testified that she did not read the handbook statement reporting cases of permanent hair loss in 2012 or the subsequent four years before filing suit. That she did not read the book "cover to cover" certainly does not comprise such testimony.

5

Louisiana's discovery rule) (*as construed in Rivera*, 2018 WL 6326451, at *4 n.60).

Dr. Carinder's awareness of permanent versus temporary risks is likewise irrelevant under Louisiana law. *See In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. 15-4790, 2017 WL 4517287, at *1 (E.D. La. Oct. 10, 2017) (rejecting plaintiff's argument that "Defendant's failure to properly instruct Plaintiff's physicians" interrupted prescription); *Fontenot*, 674 So. 2d at 964 ("[…] Dr. Bertuccini's failure to inform them that Mrs. Fontenot's condition was permanent versus temporary is of no consequence."); *Smith*, 827 F.3d at 422. Accordingly, even assuming, *arguendo*, that Dr. Carinder was unaware of incomplete hair regrowth as a possible risk of chemotherapy—a dubious proposition on the record[5]—that would have no bearing on the timeliness of Ms. Earnest's claims. *See, e.g.*, *Carter*, 391 F. App'x at 344-46 (finding claims prescribed despite testimony that plaintiff's physician "was unaware that Zicam caused such problems, but he did suggest that Carter's injury may have been caused by her allergies.").[6]

Yet even though Ms. Earnest was experiencing a conspicuous, unexpected injury by May 2012, she took no action for four additional years and made no inquiry related to her condition. *See, e.g.*, PFS § VI.6-8 (reporting no hair loss diagnosis, treatment, or discussion on causation); *see also* Opp. at 8; AMC at ¶¶ 6, 215–17. During those four years of inaction, Ms. Earnest's injury *did not change*. At some point during the four years in which Ms. Earnest experienced incomplete

---

[5] As Plaintiff admits, Dr. Carinder testified that he warned patients about hair loss based solely "on experience with other patients," and that he had had at least one patient "who never got her hair back" after receiving the "exact same regimen" as Ms. Earnest in 2005—several years before Ms. Earnest's treatment. *See* Carinder Dep. 96:22-97:5; 85:10-86:6. Consistent with this, Ms. Earnest's husband Ralph testified that Dr. Carinder warned the Earnests that "it was possible [her hair] would never grow back." Ralph Earnest Dep. at 147:18–148:2. Dr. Carinder's testimony that he was not aware of permanent hair loss after Taxotere use "in significant patient populations" does not contradict this—and does not suggest he was unaware of incomplete hair regrowth as a *possible* risk for chemotherapy patients. *See also* Earnest Dep. at 202:22-203:1 ("Q. You never had a conversation with Dr. Carinder where he said, I didn't know that [persistent hair loss] was a possibility? A. No. I never had a conversation with him like that.").

[6] Similarly, Plaintiff's claim that she asked Dr. Carinder about hair loss after completing chemotherapy and was told that regrowth "takes time," *see* Opp. at 11 n.3, cannot save her claim. *See id.*; *Fontenot*, 674 So. 2d at 964 ("[…] Dr. Bertuccini's failure to inform [plaintiffs] that Mrs. Fontenot's condition was permanent versus temporary is of no consequence.").

6

hair growth that did not change, a reasonable person would have investigated to see if her hair loss was permanent.  Her failure to investigate was unreasonable under the undisputed facts of this case, and renders the doctrine of *contra non valentem* inapplicable under Louisiana law.  *Eastin v. Entergy Corp.*, 865 So. 2d 49, 56 (La. 2004) ("[p]laintiffs may not simply sit on their hands and do nothing to investigate their [injury] and expect their actions to be deemed reasonable.").

Plaintiff's suggestion that any attempt to investigate her potential claims would have been futile must also fail.  *See* Opp. at 12.  Futility is not an exception to a Plaintiff's duty to investigate a known injury and potential causes.  *See, e.g.*, *Bartucci*, 246 F. App'x at 258 n.3 ("We do not know if Bartucci could have uncovered his memories had he attempted to do so in 1984; however, <u>his failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription</u>.") (emphasis added); *Lennie v. Exxon Mobil Corp.*, 251 So. 3d 637, 648 n.6 (La. App. 2018) (rejecting plaintiff's argument that "even if they had asked Mr. Lennie's doctors about the cause of his lung cancer, it would not have mattered," noting that "[t]his *ex post facto* argument is made in apparent recognition that reasonable persons in the Lennies' positions would have made some inquiry into the cause of Mr. Lennie's illness.").  Further, as cannot be disputed, even the minimal investigatory step of reading the Taxotere entry in her Breast Cancer Treatment Handbook would have alerted Plaintiff to "rare reports of permanent hair loss" associated with Taxotere.  *See* Memo Ex. H.

### C.     <u>Ms. Earnest knew the relationship between her injury and the product</u>

Plaintiff's vague allusion to unknown tortious acts does not alter the notice needed for a product liability claim to accrue.  *See* Opp. at 12-13.  In the context of a product liability suit, notice of an injury caused by a product *is* notice of a possible tort.  Indeed, as Plaintiff acknowledges, prescription in a product case requires only that a plaintiff is "aware of her injuries"

7

and of "their causal relationship to" a product. *See* Opp. at 3, 12. Here, Plaintiff had ample notice of the "causal relationship" between the product and her alleged injury years before filing suit—no other notice is needed or relevant.[7]

Judge Fallon of this Court clearly articulated the standard of notice needed to trigger prescription for a product liability claim in *Xarelto*:

> The doctrine of *contra non valentem* states that prescription begins to run when a plaintiff has actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A review of the applicable cases compels the conclusion that this occurs when the plaintiff has actual or constructive knowledge of a **causal relationship between the object or product and the injury**. The plaintiff does not need to be aware of exactly which legal claims and theories will be used in his case in order to be put on inquiry notice. There is no requirement that a patient be informed by an attorney or physician of a possible claim before prescription begins to run.

*In re: Xarelto*, 2017 WL 4517287, at *2 (internal cites and quotes omitted). Plaintiff has admitted that she's known since 2012 that her hair loss was caused by chemotherapy, and that is sufficient as a matter of law. *See id.*; *see also* Earnest Dep. 83:14-20. There is no requirement that (1) an attorney, a doctor, or the defendant confirms that a cause of action exists, or that (2) Plaintiff know the precise parameters and details of her possible legal theories.

Plaintiff asks this Court to hold that her cause of action did not accrue until she learned of attorney advertisements regarding this litigation in 2016—an argument that Louisiana law flatly rejects. *See In re: Xarelto*, 2017 WL 4517287, at *2; *Breaux*, 1999 WL 64929, at *6; *see also*

---

[7] Where multiple potential products or causes are implicated, prescription does not wait for a plaintiff to be told which possible cause is most likely. *See Mason v. Danek Med., Inc.*, No. 95-cv-3481, 1998 WL 774176, at *1 (E.D. La. Oct. 30, 1998) (finding claims prescribed where plaintiff "should have known by exercising reasonable diligence that there was a reasonable possibility that his problem was caused by" one of several medical products involved in treatment); *Carter*, 391 F. App'x at 344–45 (finding claims prescribed where plaintiff suspected injuries caused by either allergies or Zicam from outset, despite physician's suggestion that allergies may have been to blame). Instead, "a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury." *Carter*, 391 F. App'x at 345.

*Rivera*, 2018 WL 6326451, at *3–4 (rejecting plaintiff's argument that claim accrued when she saw TV advertisement); *Causby v. Perque Floor Covering*, 707 So. 2d 23, 27 (La. 1998) (plaintiff may not "sit on [her] rights indefinitely until an attorney tells [her s]he is actually entitled to benefits."). Nor do advertisements excuse Plaintiff's failure to inquire, given that she knew her injury had not changed for years before she learned of the ads and she assumed chemotherapy was the cause. *See Rivera*, 2018 WL 6326451, at *3–4; *Breaux*, 1999 WL 64929, at *5.

Plaintiff also does not need to know the precise parameters of her potential legal cause of action. That is, she did not need to know that Sanofi allegedly failed to warn her of the risk of permanent alopecia to trigger a duty to investigate.[8] That argument conflates *reasonable inquiry notice* with the detailed averments made once ultimately filing a lawsuit. The purpose of inquiry notice is to gather facts in order to determine either that no cause of action exists or that a lawsuit is warranted. Inquiry is not triggered *after* the facts have been gathered. To agree with that logic would effectively write the inquiry period out of the law, because the trigger for inquiry and the trigger for lawsuit filing would be exactly the same.[9]

Seeking to obscure the fact that she has had notice of her potential claims since 2012, but failed to investigate them, Plaintiff advances the spurious allegation that discovery has "supplied

---

[8] Though of course, the operative Taxotere product label and all hair loss warnings it did and did not provide were readily available to plaintiff at all times during and after her treatment. She might have concluded she was not adequately warned of the hair loss she experienced—as she now alleges—at any time had she investigated. *See Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 393 (M.D. Pa. 2004) ("Plaintiff might have ascertained that the original label was inadequate on the basis of his injuries, if indeed the label has anything to do with his negligence and fraud claims."). Information related to permanent alopecia was also available in the public domain. *See* Memo at 3 n.7, 13-14.

[9] Plaintiff mischaracterizes what constitutes constructive notice of her cause of action under Louisiana law. Louisiana law does ***not*** require, nor does Sanofi does contend, that Ms. Earnest needed to know the "dermatological definition of permanent alopecia," *see* Opp. at 11, the "complex pharmacological and epidemiological questions associated with linking permanent alopecia to Taxotere use," *see* Opp. at 14, nor that Taxotere caused her alleged hair loss "to the exclusion of any other chemotherapy drug, non-chemotherapy drug, genetic condition, or environmental factor," *see* Opp. at 12, for prescription to run. By these standards, Plaintiff's claims would still not have accrued—which would be an absurd result. *See, e.g.*, *Oil Ins. Ltd. v. Dow Chem. Co.*, 977 So. 2d 18, 21, 23–24 (La. App. 2007), *writ denied*, 976 So. 2d 1284 (La. 2008) ("certitude is not a prerequisite to the commencement of prescription.").

evidence" suggesting Sanofi engaged in a campaign that "prevented" Dr. Carinder and similar oncologists from "learning of the association between Taxotere and permanent hair loss." *See* Opp. at 12-13.[10]  Plaintiff cites no record evidence for this proposition, and what evidence does exist suggests the opposite: Dr. Carinder testified that he had not read the Taxotere package insert since the product came on the market, that he warned about hair loss based solely "on experience with other patients," and that he had a patient "who never got her hair back" after treatment including Taxotere several years before Ms. Earnest.  *See* Carinder Dep. 119:3-14; 96:22-97:5; 85:10-86:6.

Even if substantiated, however, this argument would fail under Louisiana law, as Plaintiff's allegations about Sanofi's conduct are not facts that speak to her awareness of claims or duty to investigate.  *See In re: Xarelto*, 2017 WL 4517287, at *1 (rejecting plaintiff's argument that "Defendant's failure to properly instruct Plaintiff's physicians" interrupted prescription); *Breaux*, 1999 WL 64929, at *6 ("Whether his doctor or the defendant notified plaintiff of the causal connection between his injury and the [medical product] is of no moment."); *see also supra* at 7 (futility does not relieve plaintiff's duty to investigate).[11]  And as noted above, any distinction between notice of a temporary versus permanent injury is irrelevant to prescription.  *See Smith*, 827 F.3d at 422; *Fontenot*, 674 So. 2d at 964.  Under the facts and applicable law, Ms. Earnest cannot establish an exception to prescription, and her claims are barred by article 3492.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion.

---

[10] That a defendant disputes causation and other elements of a plaintiff's claim has no bearing on prescription. Disputing causation also does not constitute fraudulent misrepresentation, concealment, or deceit, concepts alluded to but not actually argued in Plaintiff's Opposition. Likewise, Plaintiff makes no argument that Sanofi directly intervened to prevent Plaintiff from filing suit. Accordingly, all such arguments have been waived.

[11] For these reasons, the internal documents Plaintiff cites as Exhibits D through H are inapposite.  Sanofi notes that the documents are provided with no context, nor – most importantly – any evidence that Ms. Earnest ever saw any of these documents or relied upon them in determining whether to investigate or file her claim.  One must infer that Plaintiff's references to these documents are meant only to distract from the clear record evidence and the law.

Date: April 16, 2019

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* | Harley Ratliff |
| Douglas J. Moore (Bar No. 27706) | Adrienne L. Byard |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | **SHOOK, HARDY & BACON L.L.P.** |
| 400 Poydras Street, Suite 2700 | 2555 Grand Boulevard |
| New Orleans, LA 70130 | Kansas City, Missouri 64108 |
| Telephone: 504-310-2100 | Telephone: 816-474-6550 |
| Facsimile: 504-310-2120 | Facsimile: 816-421-5547 |
| dmoore@irwinllc.com | hratliff@shb.com |
| | abyard@shb.com |

*Counsel for Sanofi-Aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who are ECF participants.

/s/ *Douglas J. Moore*