UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635;
Tanya Francis, Case No. 2:16-cv-17410;
Barbara Earnest, Case No. 2:16-cv-17144.

---

**REPLY IN SUPPORT OF SANOFI DEFENDANTS'
MOTION TO EXCLUDE EXPERT TESTIMONY OF ALAN BAUMAN, M.D.**

---

Dr. Bauman's three basic opinions are inadmissible under Rule 702.

<u>First</u>, his opinion concerning social norms and female hair loss are within the common understanding of the jurors and cannot help the trier of fact, as required by Rule 702.

<u>Second</u>, his generic testimony on the "potential psychological impact" of female hair loss is not a topic he is qualified to address in any detail, and the basic level at which does offer such testimony, is within the common understanding of the jurors. Such testimony fails to provide any expert evidence relevant to the psychological condition of any named plaintiff; worse though, such testimony poses the risk of conflating the individualized circumstances of the named plaintiffs with those of whichever of his unnamed patients Dr. Bauman chooses to use at trial as examples of women suffering "psychological impact."

<u>Third</u>, because he gathered no information about Mss. Francis, Earnest, or Durden – or any other plaintiff – Dr. Bauman's opinions about appropriate hair-restoration treatments are not based on any facts or data, rendering them irrelevant, unreliable and inadmissible. None of this testimony

1

can be justified under the guise of educating the jury about "general principles."

I.   **Dr. Bauman's opinions on "societal views" of female alopecia are inadmissible under Rule 702 because they are within the common understanding of the jury.**

Societal views on hair loss – including how such norms differ between men and women – are well within the common understanding of the jury. Bauman Dep. Tr. 170:2–6 ("Q: What research have you done to determine what is socially acceptable? A: *I've lived 48-and-a-half years, and observed the world*."). Plaintiffs' Opposition (at page 6) confirms this by quoting a nearly three-decade old opinion by the Honorable David Belew Jr., a federal judge in Fort Worth, Texas:

> Furthermore, *it is a recognized fact in our society that it is more acceptable for a man to be bald than a woman*. Cranial prostheses/wigs for men have not been in style since the colonial days of George Washington, and likely will not resurface as the latest fad in the near or distant future. *Yet while many bald men do nothing whatsoever to alter their appearance, society does not permit women to enjoy the same luxury*. To function well in society, a woman must both feel and appear "normal."

*Irion v. Prudential Ins. Co. of Am.*, 765 F. Supp. 337, 340 (N.D. Tex. 1991), rev'd, 964 F.2d 463 (5th Cir. 1992). The *Irion* court issued that opinion – following a one-day bench trial involving an insurance dispute arising from the insurer's denial of the Plaintiff's claim for reimbursement for her full cranial prosthesis/wig – without the benefit of any expert testimony on societal norms on female hair loss. *Id*. at 339-40. The only witnesses were the plaintiff, the owner of "Oliver's Hair Replacements," and a claims consultant for the defendant insurance company. *Id*.

Here, as in *Irion*, the fact finder does not need an "expert" like Dr. Bauman to explain societal norms. Because such norms are "recognized" in our society and within the jury's common understanding, Dr. Bauman's opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702, and will invade the province of the jury. *See Jarrow v. Cupit*, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) ("[E]xpert testimony on

2

matters which a jury is capable of understanding and deciding without an expert's help should be excluded.").

Furthermore, the substance and purpose of the owner of "Oliver's Hair Replacements" testimony underscores why Dr. Bauman's testimony has no place in these cases. The business owner who sold the prosthesis/wig was not offered as an expert witness in that case – the Court made clear such testimony was not needed to assist the trier of fact. *Id.* at 340. Instead, the owner testified as a relevant fact witness. He described the cranial prosthesis/wig plaintiff had actually purchased. *Id.* at 339. Here, in contrast, none of the named Plaintiffs know Dr. Bauman or the treatments he offers; nor have any expressed interest in purchasing his products.

Under Rule 702, Dr. Bauman's opinions are inadmissible as unhelpful and irrelevant.

**II.     Dr. Bauman's generic opinions on the "potential psychological impact" of female alopecia are inadmissible.**

   **A.     Treating female patients with hair loss does not qualify Dr. Bauman as an expert in psychology or on the psychological impact of female hair loss.**

In the Fifth Circuit, "an M.D. degree ... alone is not enough to qualify [an expert] to give an opinion on every conceivable medical question. This is because the inquiry must be into actual qualification—sufficient to assist the trier of fact." *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1112–13 (5th Cir. 1991).

Here, Dr. Bauman lacks any actual qualifications; he is not a psychologist or psychiatrist and has no scholarly publications in the field of psychology or on the subject of the psychological impact of female hair loss. Bauman Dep. Tr. 69:25–70:3; 132:2–5. Plaintiff attempts to qualify Dr. Bauman based on his experience "treating hair loss" and "working with industry professionals" during which time he witnessed "the observed psychological impact of female alopecia." (Pl. Opp. at 9-10) While he is certainly capable of observing in a lay sense whether his patients are distressed

by hair loss, there is no dispute that Dr. Bauman does not diagnose or treat any of his patients for psychiatric disorders or prescribe them medications for such conditions.

### B. Dr. Bauman cannot reliably render any opinions concerning the named Plaintiffs' psychological conditions.

Plaintiff's Opposition identifies Dr. Bauman's methodology as follows: "Dr. Bauman's established methodology of assessing the psychological condition of his patients is derived from personal one-on-one consultations. . . . . During the course of the treatments, Dr. Bauman engages with his patients, getting to know them 'beyond the physical disfigurement.'" (Pl. Opp. at 13).

The problem with this purported methodology (aside from the lack of any authority that a one-on-one patient consultation by a hair-restoration surgeon is a reliable methodology to diagnose psychological injury) is that Dr. Bauman never applied this methodology to Mss. Francis, Earnest, Durden, or any other named plaintiffs. In other words, he did not apply his "established methodology" of a personal one-on-one consultation to any of the named plaintiffs in rendering his psychological opinions. Under Rule 702, when experts fail to apply their own methodologies in rendering their opinions, the court should exclude such opinions as unreliable. *See Disabled in Action v. City of New York*, 360 F. Supp. 3d 240, 247 (S.D.N.Y. 2019) (noting that expert "failed to follow his own chosen methodology" and concluding that expert's opinions, "which are the results of a methodology that he acknowledges he did not follow, are therefore unreliable and inadmissible under Rule 702"); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) (affirming exclusion of expert's opinion under Rule 702 where expert "failed to apply his own methodology reliably"); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 458 (E.D.N.Y. 2011) (excluding expert testimony where the expert did not follow his own methodology).

4

Dr. Bauman not only failed to apply his *own* methodology – he failed to apply *any* methodology. He did not, for example, review Plaintiffs' health and family history, punch biopsy photographs and slides, pathology reports, follicle count, trichoscopy results, photographs, or deposition testimony. Bauman Dep. Tr. 98:22–104:11 (reviewed no documents or records regarding Ms. Durden); 104:13–110:17 (reviewed no documents or records regarding Ms. Earnest); 110:18–115:2 (reviewed no documents or records regarding Ms. Francis). Dr. Bauman reviewed no medical records and, as he admits, does not even know if Mss. Francis, Earnest and Durden have hair loss – much less how or whether it has affected them and how they might be treated. *Id.* Dr. Bauman also did not rely on any studies or literature in developing his opinions. Instead, he picked a few articles *after* drafting his report, which he believes support his opinion:

> Q: But you didn't rely on their literature or the findings to issue.
>
> A: Correct.
>
> Q: -- your expert opinions?
>
> A: That is correct.
>
> Q: You just believe that these support your opinions.
>
> A: That is correct.
>
> Q: Did you review the materials that are listed in Exhibit 7 in preparation of your report?
>
> A: No, the reverse.
> …
> Q: In connection with preparing your opinions in your report in this case, did you review the materials listed on Exhibit 7?
>
> A: No.

Bauman Dep. Tr. 96:7–97:17.

Dr. Bauman did not apply a reliable methodology in developing his opinions. He did not apply one at all. As such, his opinions are unreliable and should be excluded.

### C. Generic opinions unconnected to Mss. Francis, Earnest or Durden will not "help the trier of fact."

Dr. Bauman's testimony concerning the generic "potential psychological impact" of female hair loss is inadmissible because it is a subject within the common understanding of the jury. Plaintiff seeks to justify the introduction of such generic testimony under the guise of "educating the fact finder about general principles." But unlike complex scientific or mechanical issues, where "generalized" testimony might be more appropriate, a jury does not need expert testimony to understand that hair loss *could* affect someone psychologically – as Dr. Bauman admits:

> Q: And you agree that or would you say that it's pretty common knowledge that hair could affect someone psychologically?
>
> A: Yes.

Bauman Dep. Tr. at 241:23–242:1. In short, the jury does not need an expert to tell them that women who lose their hair might "potentially" experience emotional distress.[1]

Further, his generic opinions are irrelevant to any actual issue the jury may need to decide. One such issue (if the jury finds in plaintiff's favor on liability) is whether and to what extent Mss. Francis, Earnest or Durden suffered damages in the form of psychological injury or emotional distress. Deciding that issue will require plaintiff-specific evidence, including testimony from Plaintiffs as to the psychological impact of their hair loss. Dr. Bauman's generic testimony

---

[1] Indeed, the *Irion* court - which noted social norms concerning female hair loss were a "recognized fact" – also observed that "substantial cosmetic and psychological benefits" were associated with female hair-restoration treatment. *Irion*, 765 F. Supp. at 340. That a judge would write such a statement nearly 30 years ago and without the benefit of expert testimony suggests that Dr. Bauman's generic testimony on this score is within the common understanding of the jury and therefore inadmissible.

concerning the "potential psychological impact" of hair loss on other women (but not Plaintiffs) is entirely irrelevant and will not "help the trier of fact" (as required by Rule 702) because his opinions are unrelated to any specific plaintiff. As such, Dr. Bauman's opinions are inadmissible.

> **D.   Generic opinions carry a significant risk of conflating the circumstances of other women with those of Mss. Francis, Earnest and Durden.**

Dr. Bauman's generic testimony concerning the "potential psychological impact" of female hair loss also carries a significant risk of confusing or misleading the jury. It invites the jury to conflate Plaintiffs' circumstances with those of whichever unnamed patients Dr. Bauman choses to discuss under the guise of "educating the fact finder about general principles" and "providing general testimony on the demonstrated psychological effects in women." (Pl. Opp. at 13-14)   For example, consider these photos of Plaintiff Tanya Francis, the first Plaintiff that will go to trial:

 

Dr. Bauman has never met her, seen a photograph of her, or reviewed her medical records. Bauman Dep. 111:1–4 (never spoke or met with her); 111:9–10 (never seen a photograph of her); 111:11–12 (never evaluated her); 112:2–4 (never reviewed medical records).   He does not even know her name. *Id.* 110:18–19.   And he certainly does not know whether she has "severe" alopecia

7

or whether the CNC system would be an option for her. *Id.* 115:17–116:1. Nor does he know how hair loss has affected her life (if at all) and whether her hair could respond to other forms of treatment. Indeed, it is entirely possible that Dr. Bauman could evaluate Ms. Francis and determine that her hair loss does not meet his definition of "severe" and that she is not an appropriate candidate for the CNC system. *See* Bauman Dep. Tr. 201:3–7 ("Whether, you know, if she has hair to weave it into or if she doesn't, that may play a big role as to whether she would be a candidate for cranial prosthesis, or some other type of hair replacement option."); 115:17–116:1 ("Q: And you agree that you can't offer and won't offer any testimony about Ms. Francis's hair loss, or how her hair loss may have impacted Ms. Francis? A: Not for those particular people in specific. Q: Right because you— A: Because I— Q: Have no basis? A: Right, never evaluated them.").

Yet Plaintiffs would have Dr. Bauman come to trial and opine about the potential devastating psychological impact that "severe" alopecia can have on a woman anyway. He wants to testify that "there is no socially-acceptable option for women with *extensive* hair loss" and that "a bald man is socially acceptable, but a ***bald*** woman is not." Bauman Rpt., at 2. On the false premise that Plaintiff is bald, he will opine that the costly CNC system is the only option. Plaintiffs cleverly kept Dr. Bauman from Plaintiffs so that he could offer these opinions regardless of a Plaintiffs' particular hair loss or life circumstance.

Dr. Bauman's generic testimony ignores significant differences among women who suffer hair loss. There are varying degrees of severity with hair loss;[2] there are also many types of treatments[3] and each person may be affected differently by their hair loss depending on a variety of factors. For example, Dr. Bauman opines that the CNC system is the only hair restoration option

---

[2] Plaintiffs use the term "severe" alopecia or hair loss 17 times in their brief without defining it.
[3] Bauman Rpt. at 3.

8

for women whose "hair follicle density is severely depleted" because the hair follicles may not respond to other treatments, and that hair redistribution via transplantation is contraindicated in women with "not enough viable healthy hair follicles around the sides and back of the scalp." *See* Bauman Rpt. at 3. Women with more follicles and less-severe hair loss, on the other hand, have more options, including the many types of other treatments he offers. *Id.* Yet, Dr. Bauman's opinions allow Plaintiff to gloss over these important, individualized considerations and focus the jury only on "severe" hair loss and the potential for a "devastating" psychological impact. The Court should exclude his opinions on this score because they needlessly carry the risk for juror confusion.

### III. Dr. Bauman's generic opinions concerning the most expensive hair-restoration treatment are inadmissible.

Because Dr. Bauman has <u>no information</u> concerning Mss. Francis, Earnest or Durden, or their circumstances, he cannot give a reliable opinion concerning an appropriate hair-restoration treatment for them. Bauman Dep. 115:3–116:1. Indeed, he cannot even say whether the CNC system is appropriate or desired by Plaintiffs. *Id.* He also underreports the life-span of the CNC system and inflates the price. (Def. Mot. at 16–19). And this is to say nothing of the fact – which Plaintiffs concede – that he has no idea how the cost of the CNC is calculated or estimated. (Pl. Opp. at 17). Under Rule 702, his opinion is neither reliable nor relevant and therefore inadmissible.

### CONCLUSION

The Court should grant Defendants' motion and exclude Dr. Bauman's testimony.

Date: April 16, 2019

Respectfully submitted,

9

| | |
|---|---|
| */s/ Douglas J. Moore*<br>Douglas J. Moore (Bar No. 27706)<br>**IRWIN FRITCHIE URQUHART & MOORE LLC**<br>400 Poydras Street, Suite 2700<br>New Orleans, LA 70130<br>Telephone: 504-310-2100<br>Facsimile: 504-310-2120<br>dmoore@irwinllc.com | Harley Ratliff<br>Adrienne L. Byard<br>**SHOOK, HARDY & BACON L.L.P.**<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108<br>Telephone: 816-474-6550<br>Facsimile: 816-421-5547<br>hratliff@shb.com<br>abyard@shb.com<br><br>*Counsel for Sanofi-Aventis U.S. LLC* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who are ECF participants.

/s/ *Douglas J. Moore*