UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635;
Tanya Francis, Case No. 2:16-cv-17410;
Barbara Earnest, Case No. 2:16-cv-17144.

## REPLY MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LINDA BOSSERMAN

Dr. Linda Bosserman's "informed consent" opinions amount to nothing more than cherry-picked deposition testimony, highlighted to fit a preconceived narrative, which she has packaged as "expert" opinion. By her own testimony, Dr. Bosserman admits these case-specific opinions "are based on, essentially, just summarizing what [she] read in the depositions." Bosserman Dep. 538:10-15. Dr. Bosserman's attempt to offer speculative hypotheticals regarding the decisions of Plaintiffs or their prescribing oncologists is unhelpful to the trier of fact, and precisely the type of testimony that is inadmissible under Rules 702 and 703. *See* Defendants' Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of Dr. Linda Bosserman (Doc. 6130) ("Memo").

In Plaintiffs' Response in Opposition to Sanofi's Motion to Exclude Testimony of Dr. Linda Bosserman (Doc. 6608) ("Opp"), Plaintiffs largely ignore the limited issues raised in Sanofi's Memo. Instead, Plaintiffs reframe Sanofi's arguments and argue against exclusion of Dr.

Bosserman's high-level background opinions on "oncology, the treatment of cancer and Taxotere." *See* Opp. at 2. However, Sanofi has not challenged either Dr. Bosserman's qualifications or the admissibility of those general, high-level opinions. *See* Opp. 2; *See* Memo at 1 ("Instead, outside of high-level background opinions on breast cancer [that Defendant does not challenge], Dr. Bosserman's role is to offer "informed consent" opinions.").

Setting aside Plaintiffs' irrelevant strawman arguments, Plaintiffs do not address—and therefore concede—the essential arguments set forth in Sanofi's Memo. Plaintiffs notably:

- Fail to address Sanofi's argument that Dr. Bosserman's "informed consent" opinions, found on pages 29 through 50 of her Report, are—as Dr. Bosserman admits—improper recitations of the deposition testimony of Plaintiffs and their prescribing oncologists, in violation of Rule 702 and 703. *See* Opp. at 4-6; *See* Bosserman Dep. 538:10-15.

- Fail to address Sanofi's argument that Dr. Bosserman's "informed consent" opinion concerning what actions *Plaintiff* would have taken had she been adequately warned is irrelevant in light of the learned-intermediary doctrine. *See* Opp. at 8-10.

- Fail to address Sanofi's argument that Dr. Bosserman's "informed consent" opinion regarding what chemotherapy these Plaintiffs might have chosen or been offered in retrospect is inherently speculative. *See* Opp. at 11-12.

Plaintiffs additionally admit that, if Dr. Bosserman's "informed consent" opinions only repeat and summarize the depositions of Plaintiffs and their prescribing physicians, "it is conceivable that her testimony could be in jeopardy." *See* Opp. at 4. Plaintiff's admission, together with the multiple arguments they ignore, require the exclusion of Dr. Bosserman's "informed consent" opinions.

**I.   Dr. Bosserman's "informed consent" opinions are not proper expert testimony and are highly speculative.**

Plaintiffs' Opposition largely ignores, and therefore concedes, that Dr. Bosserman's "informed consent" opinions[1] are recitations of fact-witness testimony, under the guise of "expert

---

[1] Pages 29 through 50 of Dr. Bosserman's Report include "observations about the cases [of Ms. Durden, Ms. Francis, and Ms. Earnest] based on the medical records of the patients, the deposition testimony of the medical oncologists

2

opinion," subject to no testable methodology or expertise. Rather than respond directly, Plaintiffs focus on Dr. Bosserman's opinions regarding the "medical science" of cancer, the development of various treatment plans, and the general "decision-making" process of oncologists and patients. *See* Opp. at 5. But Sanofi is not challenging those opinions. Instead, Sanofi is challenging Dr. Bosserman's decision to present cherry-picked testimony from Plaintiffs and their prescribing oncologists as "expert opinion," subject to no methodology. These "informed consent" opinions, as Dr. Bosserman admits, "are based on, essentially, just summarizing what [she] read in the depositions." Bosserman Dep. 538:10-15.

It is well-settled law that an expert merely "repeating hearsay evidence without applying any expertise whatsoever" is not giving an expert opinion. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir.). Although Plaintiffs suggest the cases cited by Sanofi would not exclude the *high-level background opinions* given by Dr. Bosserman, that is not the proposition for which Sanofi cited them. Rather, each supports the argument Sanofi made—that Dr. Bosserman's recitation of cherry-picked deposition testimony is unhelpful to the jury and subject to exclusion.[2] *See, e.g.*, *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990) (excluding testimony of an expert who parroted facts that a jury could otherwise understand and digest "based upon [their] common sense and [their] knowledge of the world."); *Jarrow v. Cupit*, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) (holding "[e]xpert testimony on matters which a jury is capable of understanding and deciding without an expert's help should be excluded."); *Factory Mut. Ins. Co.*

---

who provide systemic chemotherapy and the testimony of the patients." *See* Bosserman Report at 29. It is these "informed consent" opinions Sanofi seeks to exclude, as set forth in its Motion, not the "medical science" opinions repeatedly referenced in Plaintiffs' Opposition. *See* Memo at 1.

[2] Dr. Bosserman admitted that she cherry-picked the deposition testimony she wanted—she "**extracted,** [she] **thought, the relevant parts**." Bosserman Dep. at 461:11-14. When an expert selectively chooses facts that "theoretically support her opinion while ignoring those that do not," her opinion is rendered unreliable. *See In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.* (No. II), 341 F. Supp. 3d 213, 296 (S.D.N.Y. 2018).

*v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (allowing testimony because the expert "did more than just repeat information gleaned from external sources."); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (holding "the expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials," not merely repeat material from other sources). Plaintiffs cite no cases suggesting Dr. Bosserman's summaries of deposition testimony as "expert opinion" is admissible, nor could they. Here, as in *Peters*, *Jarrow*, *Factory Mutual*, and *Mejia*, the jury does not need Dr. Bosserman's testimony to repeat the testimony of Plaintiffs or their prescribing physicians regarding the risks and benefits of chemotherapy.[3]

Further, Dr. Bosserman's attempted interpretation of, and extrapolation from, discussions held between Plaintiffs and their prescribing physicians is highly speculative and inadmissible. Dr. Bosserman testified, as she must, that she does not know what decision Plaintiffs would have reached had they received a different warning regarding hair loss and Taxotere. *See, e.g.*, Bosserman Dep. 136:12-15 ("I don't know what they would have decided, but they clearly were willing to weigh information provided in making their final decision with their oncologist.");[4] *id.* 137:10-11 ("We don't know what her decision would have been"). Yet, Dr. Bosserman still offers *her* opinion that, had they been warned of the risk of permanent alopecia, each Plaintiff would have selected an alternative chemotherapy regimen. Dr. Bosserman makes this baseless prediction even though none of those alternative regimens were offered to Plaintiffs in reality and even though those alternative regimens presented significant risks including loss of efficacy. *See* Bosserman

---

[3] Even Dr. Bosserman admitted as much. "Q. I understand that. **And what I'm saying is we don't need Dr. Bosserman to summarize what Dr. Carinder said to figure out what Dr. Carinder said, correct? A. Sure.**" *See* Bosserman Dep. 542:4-543:5 (emphasis added).

[4] Plaintiffs suggestion that Sanofi did not provide the entirety of this quote is patently false. *See* Opp. at 10; *cf.* Memo at 8.

Dep. 134:22-25, 464:9-13, 474:16-19; Bosserman Report at 44, 47. In support of these "informed consent" opinions, Dr. Bosserman does not (and *cannot* given the speculative nature of the exercise) cite independent research, medical literature, case studies, clinical trials, or even her own experience. Instead, Dr. Bosserman relies entirely on her own selective interpretation of Plaintiffs' and their prescribing oncologists' deposition testimony.[5] These "informed consent" conclusions, unconnected to any recognized methodology, are the very height of speculation and must be excluded. *Burst v. Shell Oil Co.*, 120 F. Supp.3d 547, 550 (E.D. La. 2015).

II. **Dr. Bosserman's "informed consent" opinions concerning what actions Plaintiffs would have taken with a different warning are legally irrelevant under the learned-intermediary doctrine.**

Dr. Bosserman's opinions regarding Plaintiffs' hypothetical actions had they received a different (and undefined) warning, are also legally irrelevant in light of the learned-intermediary doctrine. *See* Memo at 4-6. The duty to warn runs only to the prescribing physician—the jury will not be asked to assess what *Plaintiffs* would have done with different information. *Grenier v. Medical Engineering Corp.,* 243 F.3d 200, 205, n.4 (5th Cir. 2001) ("[I]n medical device cases, the manufacturer's duty to warn is owed to the physician, not the patient.").

Sanofi also challenged Dr. Bosserman's speculations about what actions *Dr. Bosserman* and each *Plaintiff's prescribing physician* would have recommended in light of a different warning. Plaintiffs suggest *Grenier v. Medical Engineering Corp.* does not stand for the propositions for which it was cited—that "expert" opinions about what the expert or the prescribing physician might have done are inadmissible. *See* Memo at 4-5. In *Grenier*, the court determined that the testimony of a "plastic surgeon (who was not [the plaintiff's] treating

---

[5] Dr. Bosserman admits that her "informed consent" opinions rested squarely on her interpretation of deposition testimony. *See, e.g.*, *See* Bosserman Dep. 537:18-538:15.

physician) who stated that he would not have recommended [the procedure] if [the manufacturer] had warned about the possible dangers" was "*irrelevant to the learned intermediary analysis*." *Grenier*, 243 F.3d 200, at n.4 (5th Cir. 2001) (emphasis added). The court held, to be admissible, that information should have come from the prescribing physician "*the person who the inquiry must revolve around.*" 99 F. Supp. 2d 759, 766 (emphasis added). Here, as in *Grenier*, Dr. Bosserman's subjective opinions about what *she* would have recommended had each Plaintiff received a different warning or what *she believes* each prescribing oncologist would have recommended are unnecessary and improper. *See* Opp. at 9-10.

**V.      Dr. Bosserman's opinions regarding certain online tools, and references to cold cap therapy, are irrelevant.**

The online oncology tools, including "ONCO assist" and PredictUK 2.0," relied on by Dr. Bosserman are irrelevant and her opinions relying on their data should be excluded. These tools were not available at the time Plaintiffs were treated, Plaintiffs' oncologists did not testify that they consulted these tools when developing regimens for Plaintiffs, and the current models – used by Dr. Bosserman in her Report – rely on data that was *not available* during Plaintiffs' treatment. *See* Bosserman Report at 16-17. Dr. Bosserman's "informed consent" opinions, which were developed in reliance on these tools and data collected after Plaintiffs' treatment, should be excluded.

Similarly, Dr. Bosserman's hypothesis that a specific Plaintiff could have used cold caps to prevent hair loss do not fit the facts of the cases and are irrelevant. There is no evidence that any of the prescribing physicians in these cases offered cold cap therapy – nor was the use of cold caps FDA-approved in 2009 or 2011. Regardless, Dr. Bosserman hypothesizes that, had some risk of permanent hair loss been *knowable* at the time of Plaintiffs' treatment (which she admits she is not

testifying), and had the prescribing oncologists had access to a non-FDA approved cold cap in 2009 or 2011, Plaintiffs might have considered their use. This testimony is irrelevant and inadmissible and should be excluded.

## CONLUSION

In light of the foregoing, Defendants respectfully request that this Court exclude the proposed expert testimony by Dr. Bosserman.

Date: April 16, 2019

Respectfully submitted,

| | |
|---|---|
| /s/ Douglas J. Moore | Harley Ratliff |
| Douglas J. Moore (Bar No. 27706) | Adrienne L. Byard |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | **SHOOK, HARDY & BACON L.L.P.** |
| 400 Poydras Street, Suite 2700 | 2555 Grand Boulevard |
| New Orleans, LA 70130 | Kansas City, Missouri 64108 |
| Telephone: 504-310-2100 | Telephone: 816-474-6550 |
| Facsimile: 504-310-2120 | Facsimile: 816-421-5547 |
| dmoore@irwinllc.com | hratliff@shb.com |
| | abyard@shb.com |

*Counsel for Sanofi-Aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who are ECF participants.

/s/ Douglas J. Moore