UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE LEARNED-INTERMEDIARY DOCTRINE

Plaintiff attempts to avoid the straight-forward application of the learned-intermediary doctrine by raising three irrelevant facts: (1) if Dr. Carinder had received notice from Defendants about a risk of permanent hair loss "in a significant patient population," Dr. Carinder would have considered it and advised his patients, including Plaintiff; (2) if Plaintiff asked for a regimen without Taxotere, Dr. Carinder would have respected Plaintiff's decision; and (3) Dr. Carinder would prescribe Plaintiff Taxol *today* instead of Taxotere. None of these facts, however, has any bearing on causation in a pharmaceutical case where the plaintiff has the burden of demonstrating that a proper warning would have changed her treating physician's decision *to use or prescribe the product*. E.g., *Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) ("This causation requirement means that the plaintiff must show that 'a proper warning would have changed the decision of <u>the treating physician</u>, i.e., that but for the inadequate warning, the treating physician <u>would not have used or prescribed the product</u>.'") (emphasis added).[1]

---

[1] Defendants attach the full deposition transcripts of Dr. Carinder as Exhibit A, and Ms. Earnest *in globo* as Exhibit B.

Here, summary judgment is warranted because there is no genuine factual dispute on causation:

First, Plaintiff does not dispute that Dr. Carinder has not read the Taxotere package insert since at least 2000. Plaintiff is not entitled to a heeding presumption when the facts show the physician would not have read the alleged non-disclosed information. Absent the presumption, Plaintiff cannot prove that a different warning would have changed Dr. Carinder's decision to prescribe Taxotere. *See* Defs.' Br. at 6. (For the same reason, Plaintiff cannot show a different warning would have caused Dr. Carinder to change his counseling or discussions with Plaintiff either.)

Second, Plaintiff gets no meaningful benefit from the heeding presumption (assuming it even applies here) because she does not identify an "additional risk" (i.e. a quantifiable risk) that should have been disclosed. With no evidence of a quantifiable "additional risk" of permanent alopecia, Plaintiff cannot meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision" – including his decision (1) whether to communicate the additional non-disclosed information to the Plaintiff, and (2) whether to prescribe Taxotere to the Plaintiff. The Court need not consider whether Plaintiff would have asked for a regimen without Taxotere if Plaintiff has no evidence that Dr. Carinder would have discussed an unquantified risk with her in the first instance.

Finally, Plaintiff identifies no evidence that a different warning would have changed Dr. Carinder's decision to prescribe Taxotere *in 2011* (Defs.' Br. at 8-9); instead, Plaintiff relies on testimony that Dr. Carinder would prescribe Plaintiff Taxol *today* instead of Taxotere. But Plaintiff's argument ignores one crucial fact: Dr. Carinder testified that, in 2011, he specifically

chose Taxotere and rejected Taxol because Taxol was not an effective alternative treatment for Plaintiff at the time. These undisputed facts foreclose a triable issue on causation.

## BACKGROUND

It is uncontroverted that Taxotere has never been removed from the market and oncologists continue to prescribe Taxotere to treat potentially life-threatening forms of breast cancer. Pl.'s Opp. & Response to Defs.' Statement of Undisputed Facts, at ¶ 4. Plaintiff also does not dispute that, in 2011, Dr. Carinder recommended a chemotherapy regimen with Adriamycin, Cytoxan, and Taxotere, *id.* ¶ 7, or that Dr. Carinder informed Plaintiff that she would be taking Taxotere and Plaintiff told Dr. Carinder "I'm in your hands. Whatever you tell me I have to do, I'll do." *Id.* ¶ 9.

Plaintiff does not dispute that Dr. Carinder has been prescribing Taxotere for breast cancer throughout his entire career, and he does so today because it "works" and it is "effective" and a "good drug." *Id.* ¶¶ 19-20. Plaintiff elicited no testimony from Dr. Carinder on whether he would have prescribed another chemotherapy regimen if a different warning had been provided by Defendants in 2011, which, in this jurisdiction is the threshold issue.

As to the three most central facts, Plaintiff claims she disputes them but her contrary evidence does not put any fact actually in dispute. As Defendants demonstrated in their motion and supporting facts:

- Dr. Carinder testified that the *only time* he read the Taxotere prescribing information was "when it first came on the market" (which he estimated was in 1999 or 2000), and that he has *never read it since*. *Id.* ¶ 17. Where, as here, Plaintiff's treating physician testifies they would not have read or seen an adequate warning, Plaintiff cannot establish causation as a matter of law. *See* Defs.' Br. at 6.

- After 2005, if patients on Plaintiff's specific chemotherapy regimen asked Dr. Carinder about the possibility of permanent hair loss, Dr. Carinder "always told" those patients about the "one lady . . . who still hasn't recovered her hair yet." *Id.* ¶ 18. Thus, at the time of Plaintiff's treatment in 2011, Dr. Carinder was already aware of and advising patients about

3

>permanent hair loss potentially associated with Taxotere. Plaintiff therefore cannot establish causation. Defs.' Br. at 7-8.

>- Plaintiff has elicited no testimony from Dr. Carinder to meet her burden to show that the allegedly non-disclosed risk of permanent alopecia was "sufficiently high" that it would have changed Dr. Carinder's *decision to prescribe Taxotere*. Defs.' Br. at 8-10.

Plaintiff attempts to dispute these material facts by noting two immaterial facts from Dr. Carinder: (1) "if [Dr. Carinder had] received an adequate warning of the risk of permanent hair loss, he would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen"; (2) "if Plaintiff presented to her treating physician Dr. Carinder today with the same kind of breast cancer, Dr. Carinder would prescribe an alternative treatment regimen without Taxotere." Pl.'s Br. at 9. These facts, however, do not create a genuine issue of material fact precluding summary judgment. First, the cited testimony does not establish or create an inference that Dr. Carinder would not have prescribed Taxotere to Plaintiff in 2011. Second, the cited testimony does not dispute that Dr. Carinder *rejected* using Taxol in 2011 for several reasons, including because Taxol could not be used weekly whereas Taxotere could; nor does it dispute that Dr. Carinder would have made the same decision to prescribe Taxotere to Plaintiff in 2011 even if he assumed Plaintiff would be interested in different treatments.[2]

---

[2] Plaintiff suggests that had Dr. Carinder been aware of the risk of permanent hair loss, "he would not have prescribed Taxotere to Ms. Earnest." Pl.'s Br. at 7 (citing Carinder Dep: 138:6-10). This is misleading because it suggests Dr. Carinder testified that a different warning would have altered his decision to prescribe Taxotere. The cited testimony is in response to the question of "Would you prescribe [Taxotere] to Miss Earnest again. . . If she presented to you *today*?" Carinder Dep. 137:22-138:16 (emphasis added). Dr. Carinder never testified that a different warning would have altered his decision to prescribe Taxotere in 2011.

4

I.     **PLAINTIFF CANNOT ESTABLISH CAUSATION.**

Plaintiff acknowledges that the learned-intermediary doctrine is settled doctrine in cases involving prescription medications in Louisiana. Pl.'s Br. at 4 (citing, among others, *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002)). Plaintiff argues, however, that causation can be presumed under Louisiana's "heeding presumption" in the event she can prove Defendants' warning was inadequate. Pls. Br. at 7. Louisiana law does not support that argument.

At the outset, the heeding presumption is a rebuttable presumption. Here, Plaintiff does not dispute that Dr. Carinder has not read the Taxotere package insert since at least 2000. Plaintiff is not entitled to a heeding presumption when the facts show the physician would not have read the non-disclosed information. Absent the presumption, Plaintiff cannot prove that a different warning would have changed Dr. Carinder's decision to prescribe Taxotere. *See* Defs.' Br. at 6.

Even if Plaintiff were given the benefit of the heeding presumption, its application provides Plaintiff no meaningful benefit in this case. In *Thomas v. Hoffman-LaRoche, Inc.*, the Fifth Circuit distinguished between preventable risk warnings, which are commonly associated with mechanical products, and unavoidable risk warnings, which are often associated with prescription drugs or devices. 949 F.2d 806, 814 (5th Cir. 1992). In the former category, a warning, if heeded, would diminish or eliminate the risk. *Id.* In the latter context, however, an adequate warning "means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus. *The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.*" *Id*. (emphasis added). Thus, under Louisiana's heeding presumption, Plaintiff is entitled to the presumption that Dr. Carinder would have "incorporated the 'additional' risk into his decision calculus." *Id.* Plaintiff, however, still has the burden of

demonstrating "that the additional non-disclosed risk was sufficiently high that it would have changed [Dr. Carinder's] decision <u>to prescribe the product</u> for the plaintiff." *Id.* (emphasis added)

Plaintiff gets no meaningful benefit from the heeding presumption in this case because the additional non-disclosed information (e.g., "cases of permanent alopecia have been reported" or there is a "risk" in a "significant patient population") does not identify an "additional risk" (i.e. a quantifiable risk). No expert identified by Plaintiff has offered an opinion (and certainly not a reliable one) quantifying the alleged risk of permanent alopecia associated with Taxotere. With no evidence of a quantifiable "additional risk" of permanent alopecia, Plaintiff cannot meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision" – including his decision (1) whether to communicate the additional non-disclosed information to the plaintiff, and (2) whether to prescribe Taxotere to the Plaintiff. There are at least two additional undisputed facts preclude Plaintiff from meeting her burden here:

<u>First</u>, while Dr. Carinder testified that he <u>would have</u> advised patients <u>had he been</u> informed of a "risk of permanent hair loss in ***significant patient populations*** with the use of Taxotere," Dep. 162:20-164:14 (emphases added), the necessary predicate is missing: Plaintiff has no evidence that permanent alopecia actually occurs in a "significant patient population" (or even what that phrase means), nor does Plaintiff identify any experts who will testify there is a risk of permanent alopecia in "significant patient populations." Dr. Carinder's testimony on this point is essentially nothing but an honest attempt to answer a vague, counterfactual hypothetical posed by Plaintiff's counsel. His testimony – absent any reference to a quantifiable, "additional risk" – does nothing to help Plaintiff meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision."

6

Second, the cases recognize that the physician, in the role of learned intermediary, will discuss the "cost-benefit ratio" with the patient, if "necessary." *McNeil v. Wyeth*, 462 F.3d 364, 373 (5th Cir. 2006) ("The doctrine of the 'learned intermediary' presupposes that the physician will act as an intermediary. This function includes discussing the cost-benefit ratio with the patient *if necessary*."). Here, Dr. Carinder specifically testified he would not warn a patient about "every single side effect, regardless if it happened to one person" because that would be "daunting" and risk "overwhelming" the patient or losing them as a patient altogether (i.e., "You're going to lose them.").Carinder Dep. 88:21-89:6 (discussing which side effects he does and does not discuss with patients). Given that Plaintiff cannot place a numerical value on the additional non-disclosed risk of Taxotere and permanent alopecia, she cannot meet her burden to show Dr. Carinder would have conveyed such information to Ms. Earnest. In fact, his testimony is that he would not convey such information.

Plaintiff has no evidence to meet her burden to show the risk was sufficiently high such that Dr. Carinder would have changed his decision to prescribe Plaintiff Taxotere. *See Willett*, 929 F.2d at 1099 (plaintiff entitled to presumption, but holding that "we do not find reasonable the inference that a less than one percent increase (from four percent to 4.03 percent per annum) in the risks associated with the valve replacement would have changed Dr. Gibson's decision."). The same is true here. Indeed, Dr. Carinder testified in 2011 there were only two taxanes he could prescribe: Taxol or Taxotere. Carinder Dep. 25:21-25. Dr. Carinder testified that, in 2011, he used Taxotere instead of Taxol because Taxol was not used for weekly-dose dense use in 2011, and Taxol carried serious side effects that Taxotere does not, including neuropathy and severe infusion reactions. Defs.' Statement of Undisputed Facts, at ¶ 14.

It is undisputed that: (1) there is no evidence Dr. Carinder would have changed his decision to prescribe Taxotere in 2011, and (2) Plaintiff testified she would have followed any recommendation Dr. Carinder provided in 2011, Defs.' Statement of Undisputed Facts, at ¶ 9. Summary judgment is warranted even if the Court assumes Dr. Carinder would have conveyed information concerning an unquantified risk of permanent hair loss to Plaintiff in 2011, as there is *no admissible expert evidence quantifying that risk and no evidence a reasonable patient would have rejected Taxotere in 2011 if presented with such information.*[3]

Plaintiff relies on preventable-risk (i.e. instructional) warning cases, not unavoidable-risk warnings cases like here. *In re Xarelto*, for example, involved allegations that defendants failed to adequately instruct doctors regarding an available PT test "and their use to help evaluate a patient's risk of bleeding on Xarelto." 2017 WL 1393480 (E.D. La. April 17, 2017). In denying defendant's motion for summary judgment, Judge Fallon held: "In this case, the Court presumes that Plaintiffs' doctors would have followed the label's instructions and administered a PT test if so instructed, and Defendants fail to overcome that presumption at this juncture. Both doctors testified in their depositions that they would have administered PT tests if the label so instructed." *Id.* at *3. Similarly, *Bloxom v. Bloxom* was a products liability case in which the plaintiff alleged an inadequate warning relating to "the catalytic converter-exhaust system's incendiary propensity," which caused a fire and destruction of the plaintiff's barn. 512 So.2d 839 (La. 1987) (affirming

---

[3] *See Hondroulis v. Schuhmacher*, 553 So.2d 398, 412 (La. 1988) ("There must be a causal relationship between the doctor's failure to disclose material information and material risk of damage to the patient. . . . Because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed."); *Ryder v. Manuel*, 2015 WL 463661, at *5 (La. Ct. App. Feb. 4, 2015) ("'Some' expert testimony is necessary to establish this aspect of materiality [concerning informed consent] because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence.").

judgment for defendant because even if adequate warning had been provided, warning would have been futile because driver did not read owner's manual). Finally, in *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771 (E.D. La. Aug. 24, 2011), the plaintiff alleged that Exxon Mobil's warning label on Varsol was inadequate because it "should have been expanded to discuss benzene and the risks of blood disorders." These cases are inapplicable because they deal with labeling <u>instructions</u>, not unavoidable-risk warnings like here.

Plaintiff argues Defendants' interpretation of Louisiana's heeding presumption is too narrow. Pl.'s Br. at 8. But as set forth in Defendants' motion, court after court in Louisiana has required evidence that the physician would have *changed his prescribing decision in order to prove causation*. *See Willett*, 929 F.2d at 1099 (Plaintiff has the burden to prove causation with evidence that "a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Pellegrin*, 2018 WL 3046570, at *4 (same); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) (same); *Rhodes v. Bayer Healthcare Pharm. Inc.*, 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) (same); *Dykes v. Johnson & Johnson,* 2011 WL 2003407, at *5 (E.D. La. May 20, 2011) (same).

Plaintiff cites *Frischertz v. Smithkline.*, in support of her argument. However, the holding in *Frischertz* appears to be the only outlier decision in Louisiana supporting her argument. Regardless, the Court should decline to follow *Frischertz* because it is contrary to binding Louisiana and Fifth Circuit precedent. *See Willett*, 929 F.2d at 1099.

Finally, Plaintiff argues she may prove causation with evidence "that a reasonable physician would have altered his or her prescribing practices had he or she been adequate warned of the risk of permanent hair loss by Defendants." Pl.'s Br. at 9. This is wrong. <u>First</u>, as explained

9

above, Louisiana law does not allow "objective" evidence as a substitute for testimony from Plaintiff's prescribing physician. The court in *Grenier* rejected the same argument as contrary to Louisiana law. *Grenier*, 99 F.Supp.2d at 766. The court held that the plaintiffs could not meet their burden under the learned-intermediary doctrine by submitting an expert affidavit of what a reasonable doctor would have done because it did not come from plaintiff's doctor—"the person who the inquiry must resolve around." *Id.* Second, in *Allgood*, Judge Fallon noted "it would *appear* that in this Circuit a plaintiff *may be able* to *supplement* such 'subjective' testimony with 'objective evidence of how a reasonable physician would have responded to an adequate warning.'" *Id.* (emphasis added). The court in *Allgood* made this statement relying on the Fifth Circuit's decision in *Thomas* discussing Mississippi law. *Id.* (citing *Thomas*, 949 F.2d at 812).

Plaintiff was required to adduce evidence that a different warning would have resulted in the prescribing physician prescribing a different medication that would have also eliminated her cancer. Plaintiffs, like Ms. Earnest, who have not established this in discovery may not proceed with the claims as a matter of law. *See, e.g., Grenier*, 99 F.Supp.2d at 766.

## **CONCLUSION**

For these reasons, the Court should grant Defendants' motion for summary judgment on Plaintiff's claims.

Respectfully submitted,

| | |
|---|---|
| */s/ Douglas J. Moore* <br> Douglas J. Moore (Bar No. 27706) <br> **IRWIN FRITCHIE URQUHART & MOORE LLC** <br> 400 Poydras Street, Suite 2700 <br> New Orleans, LA  70130 <br> Telephone: 504-310-2100 <br> Facsimile:  504-310-2120 <br> dmoore@irwinllc.com | Harley Ratliff <br> Adrienne L. Byard <br> **SHOOK, HARDY & BACON L.L.P.** <br> 2555 Grand Boulevard <br> Kansas City, Missouri 64108 <br> Telephone: 816-474-6550 <br> Facsimile:  816-421-5547 <br> hratliff@shb.com <br> abyard@shb.com <br><br> *Counsel for Sanofi-Aventis U.S. LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who are ECF participants.

/s/ *Douglas J. Moore*