**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                    **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                               **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

**Tanya Francis, Case No. 2:16-cv-17410.**


**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE**
**LEARNED-INTERMEDIARY DOCTRINE**

Plaintiff attempts to avoid the straight-forward application of the learned-intermediary doctrine by raising three irrelevant facts: (1) if Dr. Verghese had received notice from Defendants about a "potential" risk of permanent hair loss, Dr. Verghese would have considered it and advised his patients, including Plaintiff; (2) if Plaintiff asked for a regimen without Taxotere, Dr. Verghese would have respected that decision; and (3) Dr. Verghese would have prescribed Plaintiff an alternative chemotherapy regimen if Plaintiff did not want to take Taxotere. None of these facts, however, has any bearing on causation in a pharmaceutical case where the plaintiff has the burden of demonstrating that a proper warning would have changed her treating physician's decision to use or prescribe the product. *E.g., Willett v. Baxter Intern., Inc*., 929 F.2d 1094, 1099 (5th Cir. 1991); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) ("This causation requirement means that the plaintiff must show that 'a proper warning would have changed the

decision of <u>the treating physician</u>, i.e., that but for the inadequate warning, the treating physician <u>would not have used or prescribed the product</u>.'") (emphasis added).[1]

Here, summary judgment is warranted because there is no genuine factual dispute on causation:

<u>First</u>, Plaintiff does not dispute that Dr. Verghese has never read the Taxotere package insert in its entirety; nor could he recall the last time he actually reviewed the Taxotere labeling. Plaintiff is not entitled to a heeding presumption when the facts show the physician would not have read the alleged non-disclosed information. Absent the presumption, Plaintiff cannot prove that a different warning would have changed Dr. Carinder's decision to prescribe Taxotere. *See* Defs.' Br. at 6-7. (For the same reason, Plaintiff cannot show a different warning would have caused him to change his counseling or discussions with Plaintiff either.).

<u>Second</u>, Plaintiff gets no meaningful benefit from the heeding presumption (assuming it even applies here) because she does not identify an "additional risk" (i.e. a quantifiable risk) that should have been disclosed. With no evidence of a quantifiable "additional risk" of permanent alopecia, Plaintiff cannot meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision" – including his decision (1) whether to communicate the additional non-disclosed information to the Plaintiff, and (2) whether to prescribe Taxotere to the Plaintiff. The Court need not consider whether Plaintiff would have asked for a regimen without Taxotere if Plaintiff has no evidence that Dr. Verghese would have discussed an unquantified risk with her in the first instance.

---

[1] Defendants attach the full deposition transcripts of Dr. Verghese as Exhibit A, and Ms. Francis *in globo* as Exhibit B.

<u>Finally</u>, Plaintiff identifies no evidence that a different warning would have changed Dr. Verghese's decision to prescribe Taxotere in 2009. In fact, Dr. Verghese testified that the TAC regimen he prescribe was "the most commonly used regimen across the country," and he predicted alternative treatments, like Taxol, contained the same risk of permanent hair loss. *See* Defs.' Br. at 9-10. These undisputed facts foreclose a triable issue on causation.

## BACKGROUND

It is uncontroverted that Taxotere has never been removed from the market and oncologists continue to prescribe Taxotere to treat potentially life-threatening forms of breast cancer. Pl.'s Opp. & Response to Defs.' Statement of Undisputed Facts, at ¶ 4. Plaintiff also does not dispute that, in 2009, Dr. Verghese recommended a chemotherapy regimen with Adriamycin, Cyclophosphamide, and Taxotere, *id.* ¶ 7, or that Dr. Verghese got additional opinions from his hospital's board of ten trained oncologists on the best chemotherapy regime for Ms. Francis because of the complications that arose before the start of chemotherapy. *Id.* ¶ 13.

Plaintiff does not dispute that Dr. Verghese has been prescribing Taxotere for breast cancer throughout his entire career, and he does so today because it is an effective, life-saving drug. *Id.* ¶¶ 10, 17. Plaintiff elicited no testimony from Dr. Verghese on whether he would have recommended another chemotherapy regimen if a different warning had been provided by Defendants in 2009.

As to the three most crucial facts, Plaintiff claims she disputes them but her contrary evidence does not put any fact in dispute. As Defendants demonstrated in their motion and supporting facts:

- Dr. Verghese testified that he has never read the Taxotere label in its entirety and cannot recall when he last reviewed the label at all. Defs.' Br. at 6-7.

3

- In Dr. Verghese's clinical experience, he never discusses hair loss from taxanes (like Taxotere and Taxol) as "temporary." While almost 100% of his patients lose their hair during chemotherapy, Dr. Verghese estimated approximately 80-90% of his patients have their hair grow back. *Id.* ¶ 11. Because of the possibility that the hair loss might be "permanent," Dr. Verghese counsels his patients to make a wig. *Id.* at 8.

- Plaintiff has elicited no testimony from Dr. Verghese to meet her burden to   show that the allegedly non-disclosed risk of permanent alopecia was sufficiently high that it would have changed Dr. Verghese's *decision to prescribe Taxotere*. *Id.* at 9-10.

Plaintiff attempts to dispute these material facts by noting two immaterial facts from Dr. Verghese:  (1) if Dr. Verghese had received the alleged adequate warning of the risk of permanent hair loss, he would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen; (2) if Plaintiff requested a different treatment regimen, Dr. Verghese would have prescribed Taxol. Pl.'s Br. at 9. These facts, however, do not create a genuine issue of material fact precluding summary judgment. First, the cited testimony does not establish or create an inference that Dr. Verghese would not have prescribed Plaintiff Taxotere in 2009. Second, the cited testimony does not dispute that Dr. Verghese considered the Taxotere regimen to be the "most commonly used regimen across the country," and was part of the National Comprehensive Cancer Network's preferred regimens for Ms. Francis's specific cancer type. Nor does it dispute that Dr. Verghese would have made the same decision to prescribe Taxotere to Plaintiff in 2009, even if he assumed Plaintiff would be interested in different treatment, because Dr. Verghese would have warned Plaintiff that Taxol carried the same alleged risk of permanent hair loss as Taxotere. Verghese Dep. at 123:1-12.

I.     **PLAINTIFF CANNOT ESTABLISH CAUSATION.**

Plaintiff acknowledges that the learned-intermediary doctrine is settled doctrine in cases involving prescription medications in Louisiana. Pl.'s Br. at 4 (citing, among others, *Stahl v.*

*Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002)). Plaintiff argues, however, that causation can be presumed under Louisiana's "heeding presumption" in the event she can prove Defendants' warning was inadequate. Pl.'s Br. at 7. Louisiana law does not support that argument.

At the outset, the heeding presumption is a rebuttable presumption. Here, Plaintiff does not dispute that Dr. Verghese has never read the Taxotere label in its entirety and cannot recall when he last reviewed the label at all. Defs.' Br. at 6-7. Plaintiff is not entitled to a heeding presumption when the facts show the physician would not have read the non-disclosed information. Absent the presumption, Plaintiff cannot prove that a different warning would have changed Dr. Verghese's decision to prescribe Taxotere. *See* Defs.' Br. at 6.

Even if Plaintiff were given the benefit of the heeding presumption, its application provides Plaintiff no meaningful benefit in this case.  In *Thomas v. Hoffman-LaRoche, Inc.*, the Fifth Circuit distinguished between preventable risk warnings, which are commonly associated with mechanical products, and unavoidable risk warnings, which are often associated with prescription drugs or devices. 949 F.2d 806, 814 (5th Cir. 1992). In the former category, a warning, if heeded, would diminish or eliminate the risk. *Id.* In the latter context, however, an adequate warning "means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus. *The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.*" *Id.* (emphasis added). Thus, under Louisiana's heeding presumption, Plaintiff is entitled to the presumption that Dr. Verghese would have "incorporated the 'additional' risk into his decision calculus." *Id.* Plaintiff, however, still has the burden of demonstrating "that the additional non-disclosed risk was sufficiently high that it would have changed [Dr. Verghese's] decision <u>to prescribe the product</u> for the plaintiff." *Id.* (emphasis added).

Plaintiff gets no meaningful benefit from the heeding presumption in this case because the additional non-disclosed information (e.g., "cases of permanent alopecia have been reported" or there is a "risk" in a "significant patient population") does not identify an "additional risk" (i.e. a quantifiable risk). No expert identified by Plaintiff has offered an opinion (and certainly not a reliable one) quantifying the alleged risk of permanent alopecia associated with Taxotere. With no evidence of a quantifiable "additional risk" of permanent alopecia, Plaintiff cannot meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision" – including his decision (1) whether to communicate the additional non-disclosed information to the plaintiff, and (2) whether to prescribe Taxotere to the Plaintiff. There are at least two additional undisputed facts preclude Plaintiff from meeting her burden here:

First, while Dr. Verghese testified that he would have advised patients had he been informed of a "potential" risk of permanent hair loss with the use of Taxotere," Dep. 121:21-123:12 (emphases added), neither Dr. Verghese nor any of Plaintiff's experts identify how high the "potential" must be in order to advise patients there is a risk of permanent alopecia. Dr. Verghese's testimony on this point is essentially nothing but an honest attempt to answer a vague, hypothetical posed by Plaintiff's counsel. His testimony – absent any reference to a quantifiable, "additional risk" – does nothing to help Plaintiff meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision."

Second, the cases recognize that the physician, in the role of learned intermediary, will discuss the "cost-benefit ratio" with the patient, if "necessary." *McNeil v. Wyeth*, 462 F.3d 364, 373 (5th Cir. 2006) ("The doctrine of the 'learned intermediary' presupposes that the physician will act as an intermediary. This function includes discussing the cost-benefit ratio with the patient

*if necessary*."). Here, given that Plaintiff cannot place a numerical value on the additional non-disclosed risk of Taxotere and permanent alopecia, she cannot meet her burden to show Dr. Verghese would have conveyed such information to Ms. Francis.[2]

Plaintiff has no evidence to meet her burden to show the risk was sufficiently high such that Dr. Verghese would have changed his decision to prescribe Plaintiff Taxotere. *See Willett*, 929 F.2d at 1099 (plaintiff entitled to presumption, but holding that "we do not find reasonable the inference that a less than one percent increase (from four percent to 4.03 percent per annum) in the risks associated with the valve replacement would have changed Dr. Gibson's decision."). The same is true here. Indeed, Dr. Verghese testified that the TAC regimen he prescribed was "the most commonly used regimen across the country," and he predicted alternative treatments, like Taxol, contained the same risk of permanent hair loss. *See* Defs.' Br. at 9-10.

Plaintiff relies on preventable-risk (i.e., instructional) warning cases, not unavoidable-risk warnings cases like here. *In re Xarelto*, for example, involved allegations that defendants failed to adequately instruct doctors regarding an available PT test "and their use to help evaluate a patient's risk of bleeding on Xarelto." 2017 WL 1393480 (E.D. La. April 17, 2017). In denying defendant's motion for summary judgment, Judge Fallon held: "In this case, the Court presumes that Plaintiffs' doctors would have followed the label's instructions and administered a PT test if so instructed, and Defendants fail to overcome that presumption at this juncture. Both doctors testified in their

---

[2] There is no admissible expert evidence quantifying any such risk and no evidence a reasonable patient would have rejected Taxotere in 2009 if presented with such information. *See Hondroulis v. Schuhmacher,* 553 So.2d 398, 412 (La. 1988) ("There must be a causal relationship between the doctor's failure to disclose material information and material risk of damage to the patient. . . . Because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed.") (internal citations omitted); *Ryder v. Manuel,* 2015 WL 463661, at *5 (La. Ct. App. Feb. 4, 2015) ("'Some' expert testimony is necessary to establish this aspect of materiality [concerning informed consent] because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence.").

depositions that they would have administered PT tests if the label so instructed." *Id.* at \*3. Similarly, *Bloxom v. Bloxom* was a products liability case in which the plaintiff alleged an inadequate warning relating to "the catalytic converter-exhaust system's incendiary propensity," which caused a fire and destruction of the plaintiff's barn. 512 So.2d 839 (La. 1987) (affirming judgment for defendant because even if adequate warning had been provided, warning would have been futile because driver did not read owner's manual). Finally, in *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771 (E.D. La. Aug. 24, 2011), the plaintiff alleged that Exxon Mobil's warning label on Varsol was inadequate because it "should have been expanded to discuss benzene and the risks of blood disorders." Each of these cases is inapplicable because they deal with labeling <u>instructions</u>, not unavoidable-risk warnings like here.

Plaintiff argues Defendants' interpretation of Louisiana's heeding presumption is too narrow. But as set forth in Defendants' motion, court after court in Louisiana has required evidence that the physician would have *changed his prescribing decision in order to prove causation*. *See Willett*, 929 F.2d at 1099 (Plaintiff has the burden to prove causation with evidence that "a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Pellegrin*, 2018 WL 3046570, at \*4 (same); *Huffman v. Squibb*, 2016 WL 6024532, at \*2 (E.D. La. Oct. 14, 2016) (same); *Rhodes v. Bayer Healthcare Pharm. Inc.*, 2013 WL 1282450, at \*4 (W.D. La. Mar. 28, 2013) (same); *Dykes v. Johnson & Johnson,* 2011 WL 2003407, at \*5 (E.D. La. May 20, 2011) (same).

Plaintiff cites *Frischertz v. Smithkline Beecham Corp.*, in support of her argument. However, the holding in *Frischertz* appears to be the only outlier decision in Louisiana supporting

Ms. Francis' argument. Regardless, the Court should decline to follow *Frischertz* because it is contrary to binding Louisiana and Fifth Circuit precedent. *See Willett*, 929 F.2d at 1099.

Finally, Plaintiff argues she may prove causation with evidence "that a reasonable physician would have altered his or her prescribing practices had he or she been adequate warned of the risk of permanent air loss by Defendants." Pl.'s Br. at 9-10. This is wrong.

First, as explained above, Louisiana law does not allow "objective" evidence as a substitute for testimony from Plaintiff's prescribing physician. The court in *Grenier* rejected the same argument as contrary to Louisiana law. *Grenier v. Med. Eng'g Corp.*, 99 F.Supp.2d 759, 766 (W.D. La. 2000). In *Grenier*, the court held that the plaintiffs could not meet their burden under the learned-intermediary doctrine by submitting an expert affidavit of what a reasonable doctor would have done because it did not come from plaintiff's doctor—"the person who the inquiry must resolve around." *Id.* Second, in *Allgood*, Judge Fallon noted "it would *appear* that in this Circuit a plaintiff *may be able* to *supplement* such 'subjective' testimony with 'objective evidence of how a reasonable physician would have responded to an adequate warning.'" *Id.* (emphasis added). The court in *Allgood* made this statement and relied on the Fifth Circuit's decision in *Thomas* discussing Mississippi law. *Id.* (citing *Thomas*, 949 F.2d at 812).

Plaintiff was required to adduce evidence that a different warning would have changed the course of care with a medication that would have also eliminated her cancer. Plaintiffs, like Ms. Francis, who have not established the same in discovery may not proceed with the claims as a matter of law. *See, e.g., Grenier*, 99 F.Supp.2d at 766.

## II.   PLAINTIFF'S REDHIBITION CLAIM FAILS.

Plaintiff argues her redhibition claim survives because Plaintiff testified she would not have taken Taxotere had the risk of permanent hair loss been disclosed. But the authority Plaintiff relies on is inapposite or proves summary judgment is appropriate. In *Pipitone v. Biomatrix*, the

plaintiff appealed the district court's finding that "their redhibition claim was limited to economic only." 299 F.3d 239, 250 (5th Cir. 2002). The Fifth Circuit held that the district court properly construed the LPRA and redhibition law to restrict redhibition claims to recovery of economic loss only. *Id.* at 250-51.The court also reversed the district court's order granting summary judgment on plaintiff's product liability and redhibition claims, after finding that genuine issues of fact existed as to whether the defendant deviated from FDA-approved procedures in manufacturing the syringe at issue. *Id.* at 249-50. The Fifth Circuit made no mention of whether a plaintiff may defeat summary judgment simply because she claims she would have not used the drug had she known of an undisclosed risk. The court in *Guidry* denied a motion to dismiss a redhibition claim after first finding that the plaintiff had sufficiently pled claims for design defect and failure to warn, reasoning that "those alleged defects are doctrinally redhibitiory as well." 206 F.Supp.3d 1187, 1200 (E.D. La. 2016). *Guidry* is remarkable because it supports Defendants' argument that Plaintiff's breach of redhibition claim is controlled by the learned-intermediary doctrine. *See id.*

Plaintiff criticizes Defendants reliance on *In re Rezulin.*, arguing that the plaintiffs in *Rezulin* did not raise a redhibition claim, so any statements about the redhibition claim are *dictum*. This is partly accurate. While the plaintiffs did not allege a redhibition claim in their complaints, they attempted to survive summary judgment by raising a redhibition claim *in their summary judgment brief*. Even if the court construed plaintiffs' brief as a motion to amend the complaints, the court said, it would have been futile because plaintiffs' experts did not support the plaintiffs' contention that Rezulin was wholly or substantially useless. The court granted summary judgment because, like here, the drug was effective in treating the condition it was designed to treat. The district court's actual holding cannot be *dictum*. *E.g. McDaniel v. Sanchez*, 452 U.S. 130, 141 (1981) (dicta is a statement "unnecessary to the decision").

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment on Plaintiff's claims.


Respectfully submitted,


/s/ Douglas J. Moore                         Harley Ratliff
Douglas J. Moore (Bar No. 27706)             Adrienne L. Byard
**IRWIN FRITCHIE  URQUHART & MOORE LLC**     **SHOOK, HARDY & BACON L.L.P.**
400 Poydras Street, Suite 2700               2555 Grand Boulevard
New Orleans, LA  70130                       Kansas City, Missouri 64108
Telephone: 504-310-2100                      Telephone: 816-474-6550
Facsimile:  504-310-2120                     Facsimile:  816-421-5547
dmoore@irwinllc.com                          hratliff@shb.com
                                             abyard@shb.com

                                             *Counsel for Sanofi-Aventis U.S. LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who are ECF participants.

/s/ Douglas J. Moore