UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
       PRODUCTS LIABILITY
       LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
*Durden v. Sanofi S.A., et al.*, 16-16635
*Francis v. Sanofi S.A., et al.*, 16-17410
*Earnest v. Sanofi S.A., et al.*, 16-17144

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT VIVIAN FONSECA, M.D.

Dr. Vivian Fonseca's opinion is that he "cannot rule out" endocrine issues as contributing to or causing Plaintiffs' hair loss. That opinion is meaningless since Dr. Fonseca's complete lack of knowledge regarding hair and hair loss is fatal to the reliability, the relevance, and ultimately, the admissibility of his testimony.

It is Sanofi's burden, as the proponent, to establish that Dr. Fonseca's testimony is relevant and reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). Yet, Sanofi does not attempt to rebut that Dr. Fonseca: (1) knows nothing about diagnosing potential causes of hair loss; (2) provides no methodology for his opinions; (3) failed to conduct any diagnostic tests that Sanofi's hair-loss experts consider necessary for determining the cause of hair loss; (4) draws conclusions that are unfounded and often contrary to his relied-upon literature; and (5) does not understand the rudimentary vocabulary of hair in the medical literature. His opinions must be struck. *See Determination Corp. v. Eltec Instruments, Inc.*, Civ. A. No. 02-405-D-M1, 2005 WL 6011237, at *2 (M.D. La. Aug. 5, 2005) (striking expert where the proponent's "brief in opposition fails to address any of the Defendant's grounds for exclusion").

Although Sanofi tacitly concedes that Dr. Fonseca is unqualified to testify regarding any aspect of hair loss, it nonetheless argues that he should be allowed to testify on two niche topics: (1) critiquing that Plaintiffs' experts did not reasonably rule out hormone issues as the cause of each Plaintiff's hair loss, and (2) opining that each Plaintiff may suffer from hormone disorders. Even if limited to these narrow issues, Sanofi still fails to establish the admissibility of his testimony. *First*, Sanofi offers Dr. Fonseca to rebut Plaintiffs' expert, Dr. Tosti; but he has neither reviewed nor read Dr. Tosti's report, or looked at her dermatascope images which are a basis of Dr. Tosti's opinions. And, Dr. Fonseca never read depositions of Dr. Thompson or any treating oncologist. *Second*, Dr. Fonseca's lack of knowledge of Plaintiffs' expert's methodology of ruling out androgenetic (hormone-related) alopecia bars him from offering a rebuttal opinion. Dr. Fonseca is unaware of diagnostic tools to differentiate androgenetic and chemotherapy-induced hair loss. *Third*, Sanofi fails to show that Dr. Fonseca's testimony on endocrine conditions is relevant absent some link between the specific hair-loss symptoms experienced by each Plaintiff and those conditions. Dr. Fonseca has never examined any Plaintiff or any Plaintiffs' tissue.

Because Sanofi failed to meet its burden to establish the relevance and reliability of Dr. Fonseca's testimony, the Court is obligated under *Daubert* to strike it.

I.   **DR. FONSECA DOES NOT OFFER A REBUTTAL OPINION, AND REGARDLESS IS WHOLLY UNQUALIFIED TO OPINE ON DR. TOSTI'S DIAGNOSTIC PROCEDURE.**

In grasping for something to tether Dr. Fonseca's opinions to this case,[1] Sanofi suggests that his testimony may be relevant to suggest that Dr. Tosti did not adequately rule out hormonal

---

[1] Of course, given Dr. Fonseca's complete lack of knowledge of hair loss, there is a significant question regarding why Sanofi would continue to push to admit his testimony at trial. While beyond the scope of the present motion, the tone of Dr. Fonseca's report strongly suggests that he will prejudice the jury by suggesting that because Plaintiffs

2

causes for Plaintiffs' hair loss. How can Dr. Fonseca offer an opinion on Dr. Tosti's opinions when he has never read her report? More importantly, Dr. Fonseca never discusses or mentions Dr. Tosti's opinion in his Report, Ex. B to Pls.' Mot. to Exclude Defs.' Expert Vivian Fonseca, M.D., ("Fonseca Rpt."), and should be struck for that reason alone, Fed. R. Civ. P. 26(a)(2)(B). Contrary to Sanofi's suggestion, Dr. Fonseca is not offering a focused, rebuttal opinion. In fact, he never reviewed any expert reports in this case. Ex. A to Pls.' Mot. to Exclude Defs.' Expert Vivian Fonseca, M.D., ("Fonseca Tr.") at 34:17-22. Rather, he intends to testify that obesity, metabolic syndrome, endocrine therapy, and menopause cannot be ruled out as "the cause" of Plaintiffs' hair loss. Fonseca Rpt. at 8, 9, 10. He has no basis for such an opinion, and it is anathema to the diagnostic process used by Sanofi's own dermatology and hair-loss experts in this case. *See* Mem. in Supp. of Pls.' Mot. to Exclude Defs.' Expert Vivian Fonseca, M.D. ("Pls.' Mem."), Doc. 6147-1 at 10-12. Further, if the Court limited him to the issue of whether Dr. Tosti "reasonably ruled out" hormonal imbalances as the cause of Plaintiffs' hair loss, Dr. Fonseca still is unable to render a reliable opinion as he has never read Dr. Tosti's report, fails to articulate her methodology, and, lacks the knowledge and experience to do so.

    **A.**     **Dr. Fonseca's opinions are not a narrowly-tailored rebuttal, as Sanofi suggests.**

Sanofi cites *Magistirini v. One Hour Martinizing Dry Cleaning*, 224 F.3d 402 (5th Cir. 2000), to support the non-controversial proposition that an expert "can call into question a plaintiff's specific causation evidence by pointing to likely alternatives that were not reasonably ruled out." Sanofi Defs.' Opp'n to Pls.' Mot. to Exclude Defs.' Expert Vivian Fonseca, M.D. ("Defs.' Opp'n"), Doc. 6593 at 4. But Dr. Fonseca's proposed testimony fails to offer any alternative cause Dr. Tosti has not considered. Further, Dr. Fonseca cannot address Dr. Tosti's

---

are obese, for example, they are somehow to blame for their reaction to Taxotere. Such testimony should be excluded under Rule 403.

3

reasonableness of ruling out hormone imbalances as the cause of Plaintiffs' hair loss because he never read her report. Indeed, *Magistrini* supports exclusion of Dr. Fonseca's expert testimony since "[t]he expert engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes *and* the expert offered no good explanation as to why his or her conclusion remained reliable." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 609 (D.N.J. 2002), *aff'd,* 68 F. App'x 356 (3d Cir. 2003). Here, Dr. Fonseca used zero diagnostic techniques, offers no explanation why his conclusion that hormone imbalances caused Plaintiffs' hair loss is reliable, never reviewed biopsies or biopsy reports, or personally examined any Plaintiff.

Similarly, in *Huss v. Gayden* the Defendant's expert merely pointed out an inferential leap from Plaintiff's expert that was unsupported by his review of the relevant literature. 571 F.3d 442, 455 (5th Cir. 2009) ("Dr. Reddix's training and experience as a medical professional qualify him to tell the jury why the literature does not establish a causal link."). This is a far cry from Dr. Fonseca's opinions which are not based on his methodology (as he has none), and he lacks understanding of Dr. Tosti's and Dr. Thompson's methodology because he failed to review their reports or depositions. Dr. Fonseca has no basis on which to render an opinion. Further, Sanofi's decision not to address Plaintiffs' argument that Dr. Fonseca's opinions are almost uniformly unsupported by the literature he cites is a tacit concession that Sanofi agrees with Plaintiffs' argument. *See* Pls.' Mem., Doc. 6147-1 at 13-21. Additionally, Sanofi avoids explaining how Dr. Fonseca performed a reliable literature review regarding endocrine-related hair loss as he remains wholly ignorant of the basic anatomy of hair. *See id.*

**B.     Dr. Fonseca lacks the knowledge and experience to provide a differential diagnosis or rebut Dr. Tosti's diagnostic procedure.**

Sanofi admits that "Plaintiffs do not dispute that [Plaintiffs] all have risk factors for hormone- and/or endocrine-based hair loss." Defs.' Opp'n, Doc. 6593 at 7. Dr. Tosti exhaustively considered androgenetic alopecia in her differential diagnosis. Ex. D to Defs.' Opp'n, Doc. 6593-4, Tosti Rpt. at 8-9 (discussing androgenetic alopecia's key features, including follicle miniaturization and hair loss limited to specific areas of the scalp); *id.* at 18-20, 23-24, 27 (noting that each Plaintiff's hair loss is inconsistent with androgenetic alopecia due to symptoms such as non-patterned hair loss, loss of follicles, its sudden onset, and thinning eyebrows and eyelashes). Dr. Fonseca would know Dr. Tosti's differential diagnosis had he read her report. Dr. Fonseca's lack of knowledge of the diagnostic tools and symptoms that Dr. Tosti used to rule out androgenetic hair loss bars him from rebutting any of Dr. Tosti's expert opinions.

Sanofi relies on two cases to justify allowing an expert with no hair-loss expertise to testify about hair-loss causation: *Holbrook v. Lykes Bros. Steamship Co.*, 80 F.3d 777 (3d Cir. 1996) and *McClellan v. I-Flow.*, 710 F. Supp. 2d 1092, 1138 (D. Or. 2010). Neither case has precedential value nor supports allowing Dr. Fonseca's testimony.

In *Holbrook* the court determined that the Plaintiff's treating physician, who routinely relied on pathology reports in his practice, could testify regarding his diagnosis of the Plaintiff despite his reliance on a pathology report and lack of expertise in pathology. 80 F.3d at 781-82. In contrast, Dr. Fonseca admits he never reviewed the biopsy slides or Dr. Thompson's pathology report. And, he admits never diagnosing or treating hair loss as a primary condition: "I'm an endocrinologist. I focus on the hormonal aspects and not the dermatological or psychological aspects of these cases." Fonseca Tr. at 39:9-12. Similarly, he disclaims ever diagnosing the cause of a patient's hair loss: "I see patients who have alopecia. I do not have . . .

5

recollection of whether I made a diagnosis or not as to the cause." *Id.* at 113:4-6. This lack of knowledge or experience in the causes of alopecia is fatal to the admissibility of Dr. Fonseca's proposed testimony. *See Tsao v. Ferring Pharm., Inc.*, No. 4:16-CV-01724, 2018 WL 3649714, at *7 (S.D. Tex. Apr. 19, 2018) (excluding testimony where doctor "failed to demonstrate that her work as a clinical and academic oncologist involves, in any way, the treatment, diagnosis, or assessment of the issues for which she has designated herself as an expert.").

Sanofi attempts to rationalize Dr. Fonseca's "methodology" by citing to the thinly analyzed *McClellan*, suggesting Dr. Fonseca's opinions are based on reliable data simply because he is a practicing physician who reviewed Plaintiffs' medical records. Defs.' Opp'n, Doc. 6593 at 4. But this case is not analogous, as the expert in *McClellan* was an orthopedic surgeon who had extensive experience preforming the surgery that caused the plaintiff's injury. Dr. Fonseca admitted he has no experience diagnosing different types of hair loss and has no experience ruling out other causes of hair loss (like permanent chemotherapy induced alopecia).

Indeed, to the extent Dr. Fonseca has any discernable methodology for diagnosing hair loss, it is limited to simply assuming it must be endocrine-related:

> Q. Take us through your differential diagnosis.
>
> A. So very often, the patient is coming -- comes to me because they have been referred for an endocrine abnormality, of which -- think of common ones, thyroid disease, both hyper- and hypothyroid disease. Hair loss is a very common symptom of these conditions. And I focus on treating the thyroid disease, and when I do successfully, the hair -- hair loss improves.
>
> Q. Why does the hair loss improve, Doctor?
>
> A. Because you're treating the underlying condition.
>
> Q. What type of hair loss, in the hypothetical you gave us, did the patient suffer from?
>
> A. I'm not sure what you mean.

6

> Q. What classification of hair loss or type did the patient suffer from if they had a particular thyroid disorder which resulted in some hair loss?
>
> A. I did not go into the classification of hair loss because I think it's totally unnecessary.
>
> Q. The fact is you don't know the classification or type of hair loss; isn't that fair?
>
> A. I think it is unnecessary.
>
> Q. Doctor, do you know the classification or type of hair loss in the hypothetical that you described to me? Yes or no?
>
> A. My treatment of the patient with the underlying disorder corrects the problem. That's what's important to me and my patients."

Fonseca Tr. at 132:2-133:15 (objections omitted). Dr. Fonseca's explanation might be reasonable for an endocrinology specialist who sees only patients with endocrine disorders, but it is unreliable methodology in assessing the cause of hair loss in patients who have undergone chemotherapy. Similarly, he concedes he lacks the expertise to diagnose permanent chemotherapy-induced alopecia:

> Q. And how would you rule in or rule out chemotherapy-induced alopecia -- or permanent chemotherapy-induced alopecia, Doctor?
>
> A. I think this is a very gray area in medicine that's not very well described, from my reading of it, so I don't know.
>
> Q. Right. You don't have the expertise to do that, correct?
>
> A. Yes.

*Id.* at 181:11-22 (objections omitted). In fact, Dr. Fonseca concedes that he would defer to a hair-loss specialist, like Dr. Tosti, in such a situation:

> Q. Is it fair to say that if an individual presented to you who had undergone chemotherapy that you very well may not be able to distinguish between and diagnose between androgenic alopecia or chemotherapy-induced alopecia because of the limitations in your expertise on a follicular level? Correct?
>
> A. Yes

>   Q. And you would defer to someone with expertise in that area correct?
>
>   A. Yes.

*Id.* at 145:9-22 (objections omitted).  In short, Dr. Fonseca is lacking the knowledge, experience, and training to critique Dr. Tosti's differential diagnosis or provide one of his own.

## II. DR. FONSECA'S HORMONE-IMBALANCE OPINIONS HAVE NO RELEVANCE ABSENT A SUFFICIENT LINK TO PLAINTIFFS' SPECIFIC HAIR-LOSS SYMPTOMS.

Sanofi's suggestion that Dr. Fonseca should be allowed to "assess . . . these Plaintiffs' hormonal imbalances," Defs.' Opp'n, Doc. 6593 at 3, misses the mark. Dr. Fonseca is well-qualified to discuss hormonal issues, particularly in his specialty of diabetes, but endocrinology testimony is simply irrelevant for the present cases absent an established link to the hair-loss symptoms suffered by Plaintiffs. Dr. Fonseca lacks the ability to explain a nexus between endocrine issues and the specific permanent hair-loss symptoms suffered by Plaintiffs. Moreover, even if some Plaintiffs have conditions or take medications that may impact hormones, such as obesity, menopause, estrogen-blockers, and metabolic syndrome, these conditions are not "facts of consequence" because they are not linked to the relevant injury, which is Plaintiffs' permanent hair loss. Fed. R. Evid. 401.

Dr. Fonseca provides no methodology for his conclusions beyond identifying potential endocrine issues in Plaintiffs' medical records. He intends to rebut opinions he never read or reviewed about Plaintiffs he never examined. He performed no tests, and reviewed only a portion of Plaintiffs' medical records.  Fonseca Tr. at 31:17-32:13, 273:12-24. From this flimsy foundation, he leaps to a wholly unsupportable conclusion that Plaintiffs' hair loss *may* be caused by endocrine issues. He fails to consider the timing of the hair loss and lack of regrowth (immediately after Taxotere treatment), the specific hair-loss symptoms of Plaintiffs (non-patterned follicle loss), and the hair-loss symptoms that typically present with androgenetic

alopecia (patterned miniaturization of hair follicles). *See* Pls.' Mem., Doc. 6147-1 at 12-23. Dr. Fonseca is unable to articulate the difference in the clinical presentation of androgenic alopecia vs. permanent chemotherapy induced alopecia at the follicular level and how to distinguish the two. Because Sanofi fails to establish a base from which he can surmise a link between Plaintiffs' symptoms and Dr. Fonseca's endocrinology generalized opinions, Sanofi cannot meet its burden to show that the endocrine testimony has any relevance.

## CONCLUSION

Dr. Fonseca is the perfect example for the necessity of the Court's gatekeeper role: an impeccably credentialed expert who is wholly unreliable on the specific issues in this case. His proposed testimony is a red herring and is not relevant or reliable. He candidly admits that he knows next to nothing about hair-loss symptoms and diagnosing the cause of hair loss, yet that is precisely the issue on which he seeks to testify. The mere fact that hormonal issues can sometimes cause a particular type of hair loss (androgenetic) fails to qualify him to opine on Plaintiffs' specific hair-loss symptoms and Dr. Tosti's diagnosis. Because Dr. Fonseca has never seen the Plaintiffs, conducted any testing on the Plaintiffs and reviewed only a portion of their medical records, he should be disqualified from testifying. Also, because he cannot provide any methodology—much less a reliable one—establishing a nexus between the permanent hair-loss symptoms at issues and the hormone issues he suggests are to blame, the Court must strike Dr. Fonseca's testimony in its entirety.

Dated: April 16, 2019                                  Respectfully submitted,

*/s/ Christopher L. Coffin*                            */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                         Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                       Andre Mura (CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505                        GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                           6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                                  Los Angeles, California 90045
Fax: (504) 355-0089                                    Telephone: 510-350-9700
ccoffin@pbclawfirm.com                                 Facsimile: 510-350-9701
                                                       kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                                       *Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*                                 */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                             Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                              BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                               701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street                New Orleans, LA 70139
New Orleans, LA 70163-2800                             Phone: 504-524-3300
Phone: 504-522-2304                                    Fax: 504-524-3313
Fax: 504-528-9973                                      barrios@bkc-law.com
plambert@gainsben.com
                                                       *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews                                           Daniel P. Markoff
Andrews Thornton Higgins Razmara, LLP                  Atkins & Markoff Law Firm
2 Corporate Park, Suite 110                            9211 Lake Hefner Parkway, Suite 104
Irvine, CA 92606                                       Oklahoma City, OK 73120
Phone: (800) 664-1734                                  Phone: (405) 607-8757
aa@andrewsthornton.com                                 Fax: (405) 607-8749
                                                       dmarkoff@atkinsandmarkoff.com


J. Kyle Bachus                                         Abby E. McClellan
Bachus & Schanker, LLC                                 Stueve Siegel Hanson LLP
1899 Wynkoop Street, Suite 700                         460 Nichols Road, Suite 200
Denver, CO 80202                                       Kansas City, MO 64112
Phone: (303) 893-9800                                  Phone: (816) 714-7100
Fax: (303) 893-9900                                    Fax: (816) 714-7101
kyle.bachus@coloradolaw.net                            mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS