**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                              SECTION "H" (5)

THIS DOCUMENT RELATES TO
ALL CASES

**PLAINTIFFS' OPPOSITION TO SANOFI'S MOTION FOR REVIEW**
**OF DISCOVERY ORDER REGARDING THE PSC'S IN CAMERA**
**CORRESPONDENCE AND VIDEOS**

Sanofi has conjured an elaborate story of lawyer manufactured evidence allegedly abandoned by the PSC in a bold attempt to recast this litigation. This is a story of fiction. Indeed, to put this issue to bed, the PSC countered all of the "decisive points" that Sanofi claimed supported its "stem cell study" narrative in its April 5, 2019 letter to the Court.[1]  Sanofi has chosen to ignore the facts presented to the Court and has continued to parade baseless accusations that suggest the PSC is lying to the Court.  Enough is enough.

Sanofi's entire argument is premised on its assertion of a "stem cell study" being conducted, and then halted, by the Plaintiffs. (*See* Mot. at 14.) It is further premised on the inaccurate statement to Judge North that "Plaintiffs are advancing a stem cell theory." Both are baseless allegations that Sanofi has created after learning in December 2018 of the April 2018 staining of six pathology slides with Cytokeratin 15 and Ki-67.

Sanofi represents several items as fact in its present motion that simply have no evidentiary support.  Sanofi states, "Plaintiffs' decision to stop the stem cell study is just as relevant to Sanofi's

---

[1] Sanofi devotes a sizeable portion of its brief to repeating its stem cell study story and colors its argument with similar unsupported statements, such as the PSC's theory of causation is based on stem cell markers  (Mot. at 10) and the PSC was "developing a larger [stem cell] study." (*Id.*)  Rather repeat, again, the inaccuracies in Sanofi's narrative, the PSC respectfully refers the Court to its Letter Submission dated April 8, 2019 and attached as Exhibit 1.

defense as the results of any stem cell study that had moved forward." (*See* Mot. at 14.)  Inherent in this statement are three supposed facts: a) that a stem cell study exists, b) that it was stopped, and c) that it was stopped at Plaintiffs direction.  None of these supposed "facts" are established by the current evidence, or any reasonable inference that can be drawn from the evidence.   Sanofi requested the reconvening of the depositions of four of the PSC's experts: Curtis Thompson, Antonella Tosti, Ellen Feigal and Laura Plunkett.  These depositions have concluded, and there is still no testimony or evidence that the "stem cell study" (which Sanofi continues to represent exits) ever occurred. It did not, and the depositions of Drs. Thompson, Tosti, Feigal and Plunkett made that abundantly clear.

Undeterred, Sanofi continues the allegations and attacks on the PSC, insinuating that the PSC has engaged in "litigation driven science," when there is no evidence to support such an accusation. (*See* Mot. at 14 (Sanofi states, "litigation-driven study, financed by the Plaintiffs' bar, and medical intervention on plaintiffs amidst their cases, has become a lightning-rod in mass tort fraud and abuse, evidence of which the jury is entitled to hear. *See, e.g., In re Propulsid Prods. Liab. Litig. v. Johnson & Johnson, et al.*, 261 F. Supp. 2d 603 (E.D. La 2003).)  These are serious, and in this case spurious, allegations of impropriety and should not dismissed lightly.  This is not an instance of parties viewing evidence from a different perspective; it is an outright allegation that the PSC is participating in a fraud on this Court.

Sanofi has not, and cannot, establish the necessary facts that underlie its allegations.  It cannot:

1)  Establish that a stem cell study exists;

2)  That a stem cell study was planned and carried out to any degree by the PSC's experts; and

3)  That the PSC halted a stem cell study.

But these are not the only things that Sanofi has chosen to ignore. In seeking reconsideration of Magistrate Judge North's decision, Sanofi ignores that the Federal Civil Rules were amended in 2010 to "provid[e] work product protection against discovery regarding … attorney-expert communications." Fed. R. Civ. Proc. 26(a)(2)(B), Adv. Comm. Notes.  Sanofi further ignores its own exchanges with Magistrate Judge North during a subsequent hearing in which Sanofi sought to re-assert this same issue (and to inappropriately pre-argue Daubert and *in limine* issues, while at the same time mischaracterizing the scientific causation standard).  There, he explained in detail that, based on his *in camera* review, the materials withheld from Sanofi—emails and videos—constituted protected attorney-expert communications.  Sanofi's decision to ignore relevant law and facts simply because they are unhelpful does not obviate their binding precedence. As shown below, once the facts and law are fully considered, it is clear that Magistrate Judge North applied the correct legal standard and that his decision should remain in place.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(l)(A), a magistrate judge is authorized to rule directly on a non-dispositive pretrial motion. However, when objections are raised to such a ruling, a district court must consider them and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Castillo v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995).

District courts in the Fifth Circuit have noted the "clearly erroneous" standard applies to the factual components of the magistrate judge's decision. *See, e.g., Lebron v. ENSCO Offshore Co.*, No. CIV.A. 12-1901, 2013 WL 3967165, at *2 (W.D. La. July 31, 2013)*; Lahr v. Fulbright & Jaworski, LLP.,* 164 F.R.D. 204, 208 (N.D. Tex. 1996). However, the legal conclusions of the magistrate judge are reviewable *de novo,* and the district judge reverses if the magistrate judge erred in some respect in his legal conclusions, making them "contrary to law." *Id.*; *see also Spillers*

*v. Chevron USA Inc.,* 2013 WL 869387, at *3 (W.D. La. Mar. 6, 2013); *United States S.E.C. v. Commonwealth Advisors, Inc.*, 2016 WL 1364141, at *5 (Apr. 6, 2016, M.D. La.).  Finally, "the abuse of discretion standard governs review of 'that vast area of . . . choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.'" *Lebron,* 2018 WL 3967165, at *2; *Spillers,* 2013 WL 869387, *3.

## ARGUMENT

In 2010, amendments to the Federal Rules of Civil Procedure added Rule 26(b)(4)(C) in order to make "explicit" that attorney-expert communications "whether oral, written, electronic, or otherwise" are protected from discovery except where the communications:

(i)     relate to compensation for the expert's study or testimony;

(ii)    identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii)   identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C).[2]

Prior to the 2010 amendments, courts routinely interpreted Rule 26(a) as requiring the production of *all* attorney-expert communications, which had an "undesirable effect" by impeding a party's ability to effectively and efficiently communicate with its experts.  Accordingly, Rule 26(b)(4)(C) was added "to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery."

Here, Magistrate Judge North properly determined that communications between the PSC and its experts—in email and video format—are privileged based on the 2010 amendments adding

---

[2] The discovery authorized by Fed. R. Civ. P. 26(b)(4)(C) is limited to these specific topics.  If a communication contains both excepted and protected content, the protection afforded by Fed. R. Civ. P. 26(b)(4) applies to all aspects of the communication other than the content falling into one of the excepted topics.

Rule 26(b)(4)(C). Sanofi's Motion ignores these amendments, applying instead an outdated and incorrect legal standard in an attempt to obtain privileged attorney-expert communications that Sanofi itself has never produced for its own experts.

### A. Magistrate Judge North Applied the Correct Legal Standard in Evaluating the PSC's Communications with its Experts

Sanofi claims that *any* material provided to an expert for consideration in forming his or her opinions, regardless whether it contains attorney mental impressions, is discoverable. (Mot. at 12.) This is not correct and reflects the legal standard prior to the 2010 amendments that added Rule 26(b)(4)(C). As noted above, the proper legal inquiry shields all attorney-expert communications from discovery except under three limited circumstances, including communications that "identify facts or data" provided by the party's attorney and considered by the expert in forming his opinions. Fed. R. Civ. P. 26(b)(4)(C)(ii).

Magistrate Judge North applied this legal standard in evaluating the materials produced *in camera,* explaining its legal rationale to Sanofi during an April 11, 2019 hearing in which Sanofi sought reconsideration of this issue. With respect to the videos, Magistrate Judge North explained:

> Because these are videos. They're videos of consulting experts in a room talking to lawyers. That's what they're videos of. By providing that video to a testifying expert is no different than putting the testifying expert in the room with the lawyers and the consulting expert, and you're not entitled to discovery of what happens in that meeting because it's with the lawyers. That's what these videos are and that's why they're not discoverable. They're experts meeting with counsel in the litigation.

(April 11, 2019 transcript, p. 15, ll.16-24). In response to Sanofi's argument that science described in the video is discoverable, Magistrate Judge North stated: "I am not buying it. This is a meeting of an expert with the lawyers that was simply sent to the other expert." (*Id.* at p. 16, ll. 10-11).

With respect to the emails reviewed *in camera*, Magistrate Judge North explained to Sanofi that they were not relevant and protected as work product:

> The only thing I looked at involved the attorneys. And the documents were -- they were not relevant really to anything. They were setting up meetings and phone calls and making introductions. There was nothing relevant in any of those documents, which is why I said they didn't need to be logged.

(*Id.* at p. 17, ll. 13-17).  The emails and videos contained no facts or data considered by Dr. Thompson in formulating his opinions—indeed, the videos and related discussions took place *after* Dr. Thompson completed his pathology reports.

Sanofi conveniently ignores this rationale articulated by Magistrate Judge North, preferring instead to assume that the emails and video contain facts and data considered by Dr. Thompson in forming his opinion. (Mot. at 10-11.) There is simply no evidence to support this assumption. Sanofi has already been provided with the materials considered by Dr. Thompson, including the biopsy slides, emails between the PSC and Dr. Thompson providing facts and data, invoices referencing stem cell work, etc.—all that is left is attorney-work product.

In evaluating communications with experts similar to those at issue, courts have consistently found them privileged. *See, e.g., D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, at *7 (W.D. Tex. Apr. 7, 2017) (finding privileged attorney-expert communications that do not fit within three enumerated exceptions to Rule 26(b)(4)(C)); *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584 (2016) (finding privileged expert's spreadsheets, graphs, and analyses because they "are interpretations of data that reflect counsel's mental impressions and result from the expert's and counsel's collaborative efforts to organize, marshal, and present data"); *United States v. Veolia Environment N. Am. Operations, Inc.*, No. CV 13-MC-03-LPS, 2014 WL 5511398, at *6 (D. Del. Oct. 31, 2014) (finding privileged communications between a party's attorney and its experts containing the attorney's mental impression and theories); *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, No. A-09-CA-711 LY, 2011 WL 840976, at *2 (W.D. Tex. Mar. 3, 2011) (extending work product protection to email

communications involving testifying and non-testifying experts where no "facts or data" were communicated and relied upon by the testifying expert).

Not surprisingly, Sanofi cannot offer any applicable caselaw to support its incorrect legal standard—in fact, the caselaw and Advisory Committee Note cited by Sanofi pertain to the pre-2010 amendments to Rule 26.  Indeed, Magistrate Judge North noted this in an order denying a Motion to Compel[3] filed by Sanofi a mere 30 minutes after filing the Motion presently at issue. (Rec. Doc. 6805 at n. 1, attached hereto as Exhibit 2.) These two motions largely mimic each other, including identical legal analyses (*id.* at 1), and if there is any ambiguity as the legal standard applied by Magistrate Judge North, his order denying the Motion to Compel makes clear that he properly applied Rule 26(b)(4)(C):

> In arguing that this Court should essentially reconsider its prior rulings concerning certain materials, including videos, sent to Dr. Thompson by the PSC, Sanofi cites numerous cases that are said to stand for the proposition that Rule 26 requires "disclosure of any materials a testifying expert considers, even where that information comes from an attorney or non-testifying expert whose work product generally is not subject to discovery." (Rec. doc. 6745-1 at p. 7). Problematically, every single case cited in support of this proposition predates the 2010 amendments to Rule 26, particularly Rule 26(a)(2)(B) and (b)(4), which are of particular concern here.

The advisory committee notes to that amendment state, in pertinent part, as follows:

> Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by the witness in forming" the opinions to be offered, rather than the "data or other information" disclosure prescribed in 1993. This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports. The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications.

---

[3] Because the PSC detailed what evidence exists in its opposition memorandum to the motion to compel, the PSC incorporates that pleading by reference. (Rec. Doc. 6783.)

… Suffice it to say here that the Court's own review of the Rule, comments, and post-amendment caselaw confirm its view that it has correctly decided these matters.

(*Id.* at 2-3.).   Accordingly, the PSC respectfully requests that the Court reject Sanofi's claim that Magistrate Judge North applied an incorrect legal standard in determining that the *in camera* production of certain communications between the PSC and Dr. Thompson are privileged.

### B.   Sanofi Has Failed to Identify Exceptional Circumstances that Would Entitle it to Privileged Communications Between the PSC and its Experts

The PSC has produced all non-privileged materials related to this alleged stem cell issue.[4] Nonetheless, Sanofi claims that it *needs* to review the PSC's privileged work product in what the PSC anticipates will be an effort to inflame the jury with unfounded claims (outside the bounds of any expert's report) that this litigation is lawyer driven and based on manufactured evidence. (Mot. at 14.)   Such unsubstantiated arguments are highly inappropriate for trial and certainly do not justify divulging attorney work product.

However, Rule 26(b)(4)(C) applies to trial preparation—indeed this Rules is aptly titled "Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses."   Sanofi's claim that it likewise needs the privileged emails and videos for purposes of rebutting general causation incorrectly implies that plaintiffs must utilize stem cell testing to prove the "mechanism of action" in order to establish causation. This is not accurate. (See Exhibit 1 at

---

[4] Magistrate Judge North summarized the current state of discovery on this topic in his April 24, 2019 Order denying Sanofi's Motion to Compel:

> To the extent that Sanofi seeks additional documents on the "stem cell" topic that have not already been addressed by the Court, the PSC's brief indicates that they either do not exist (*e.g.*, documents related to Dr. Thompson's decision not to test Ms. Tuyes' biopsy samples and the "summary memo" referenced in his invoice) or they were already produced (*e.g.*, documents regarding the "videos" and "telephone stem cell study" referenced in Dr. Thompson's invoices). (Rec. doc. 6783 at pp. 3-4). Accordingly, there is nothing additional to compel.

(Rec. Doc. 6805 at 3.)

2-3.) Furthermore, Sanofi received several unstained biopsy slides and the remaining tissue block in early November 2018 from which additional slides could have cut or sectioned for additional dermatopathology testing but its expert, Chandra Smart, M.D., decided that was unnecessary.  In her own words, Dr. Smart did not do so because there would be no benefit to doing other analyses.[5] Finally, and most importantly, Sanofi has all materials derived from staining of slides on each plaintiff. There is no other factual information or documents to obtain—all that remains is work product that should remain protected.

## **CONCLUSION**

For the reasons above, the PSC respectfully requests that this Court uphold the decision of Magistrate Judge North finding that the PSC's *in camera* production of certain emails and videos are privileged.

Dated: April 30, 2019                                      Respectfully submitted,


*/s/ Christopher L. Coffin*                              */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                   Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.       Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505                 GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                    6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                               Los Angeles, California 90045
Fax: (504) 355-0089                                   Telephone: 510-350-9700
ccoffin@pbclawfirm.com                           Facsimile: 510-350-9701
                                                                kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                                                *Plaintiffs' Co-Lead Counsel*

---

[5] *See* Deposition of Chandra Smart, MD, p. 13:18 – 14:16 ( " . . .  I didn't do anything, just because the   diagnostic - - there was diagnostic material on the original [H&E] stain slides that were sent to me, and that's all I needed to do to review and make a diagnosis.  Q.  All right.  Did you have an opportunity with the additional pathology material to make additional slides for further study?   A.  I did have the opportunity, yes.  Q.  Okay.  Would there have been some benefit to you in terms of your analysis in making additional slides from the additional material that you were provided?  A.  I don't think so.")

9

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT