**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:  TAXOTERE (DOCETAXEL)**<br>**PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates To:**<br><br>**Kathleen Gabriel, Case No. 2:16-cv-16788;**<br>**Diana Warren, Case No. 2:17-cv-13380;**<br>**Barbara Earnest, Case No. 2:16-cv-17731;**<br>**Cynthia Thibodeaux, Case No. 2:16-cv-15859**<br>**Sheila Crayton, Case No. 2:17-cv-05923.** | **MDL No. 2740**<br><br>**SECTION:  "H" (5)** |

**SANOFI'S REPLY IN SUPPORT OF ITS**
**NOTICE OF DE-DESIGNATION PURSUANT TO CMO NO. 14C**

Sanofi's Notice of De-Designation Pursuant to Case Management Order No. 14C (Doc. 6807) ("Notice") was proper and reasonable, and this Court should confirm removal of the *Earnest* and *Thibodeaux* cases from Trial Pool proceedings in MDL 2740.

**I.       At Least Two Strikes are Necessary to Re-Balance the Trial Pool**

When this Court entered Case Management Order No. 14C on April 23, 2019, Plaintiffs had voluntarily dismissed or were seeking voluntarily dismissal of **six** defense-selected trial pool cases from MDL 2740, compared to **zero** plaintiff-selected cases.  The same six-case disparity remains today.  The result is an imbalanced trial pool heavily skewed in favor of Plaintiffs' preferred cases—both in number and in substance.[1]

As Plaintiffs acknowledge, CMO No. 14C recognized the need to correct this discrepancy and resulting trial pool imbalance, and provided two mechanisms to do so:

---

[1] Because Plaintiffs alone choose which cases are voluntarily dismissed—rather than cases becoming ineligible due to external factors such as product ID—Plaintiffs' selective dismissals leave the trial pool both with *more* plaintiff selected-cases and with unduly *misrepresentative* plaintiff-selected cases.

1.   Paragraph 1 of the order provides defendants **four** additional trial pool selections as "replacements for cases Plaintiffs dismissed from those selected by Defendants on November 1, 2018." CMO No. 14C, ¶ 1(a).[2]

2.   Paragraph 2 of the order provides that under certain circumstances (currently applicable in **two** cases, *Gabriel* and *Warren*), "Defendants may de-designate a Plaintiff from the Trial Pool." CMO No. 14C, ¶ 2(d).

Far from rendering the trial pool unbalanced as Plaintiffs suggest, *see* Opp. at 3, Sanofi's two de-designations are necessary to correct the current imbalance created by, and in favor of, Plaintiffs. Moreover, the de-designations are particularly appropriate given that Sanofi bears the brunt of the present imbalance, with only three defense-picked Sanofi cases currently consenting to prosecute their own claims, compared with six plaintiff-selected cases:

| **Defense-selected Sanofi cases** | **Plaintiff-selected Sanofi cases** |
|---|---|
| Tanya Francis | Tonia Collins |
| Della Martin | Barbara Earnest |
| June Phillips | Elizabeth Kahn |
| | Deborah Johnson |
| | Cynthia Thibodeaux |
| | Sharon Stevenson |

Even with two de-designations, Plaintiffs will maintain an advantage over Sanofi[3]—but the de-designations are a necessary step in the right direction. Further, Plaintiff's proffered solution—substituting new defense-pick cases to begin discovery from scratch—would not bring balance to a trial pool comprised primarily of cases that Plaintiffs have selected and had months

---

[2] Two of these additional selections took place on April 30, 2019, per agreement of the parties. *See* CMO No. 14C, ¶ 2, n.1. The remaining two will take place on June 19, 2019. *Id.* at ¶ 1(a).

[3] As noted in Sanofi's Notice, Plaintiff Crayton's request to withdraw from the trial pool without dismissing her claims is not authorized by CMO No. 14C. Accordingly, although a third defense de-designation may be necessary to fully balance the trial pool if *Crayton* is de-designated at Plaintiffs' request, Sanofi does not seek relief related to the *Crayton* withdrawal through its Notice or this briefing. *See* Notice at 4.

or years to work up.  Plaintiffs' suggestion that their comparatively greater time and opportunity to work up the cases they selected counsels *against* de-designation epitomizes circular logic. Plaintiffs have had that opportunity precisely because they dismissed or withdrew three of five first-round Sanofi selections (*Ray*, *Chetta*, and *Tuyes*), and are now seeking dismissal or withdrawal in three of four second- and third-round Sanofi picks (*Warren*, *Gabriel*, and *Crayton*).[4] Plaintiffs have done so without regard for wasted discovery efforts, and opposed contemporaneous substitutions that would have better balanced the pool and reduced the present disparity.  Now that the scale of the imbalance has compelled a remedial mechanism—de-designation under CMO No. 14C—Plaintiffs argue that mechanism cannot be applied to cases *currently seeking dismissal* because, in effect, that would undo the imbalance they succeeded in creating.  In other words, Plaintiffs argue that CMO No. 14C cannot be applied to remedy the precise problem that necessitated its entry.  This argument should be roundly rejected.

CMO No. 14C provides for de-designation under the circumstances presented by the *Warren* and *Gabriel* dismissals for good reason, and the Court should not depart from this clear and appropriate remedy.

## II.    The Plain Terms of CMO No. 14C Provide For Two Defense Strikes

Paragraph 2 of CMO No. 14C—which provides for de-designations—expressly applies "to any Plaintiff <u>seeking voluntary dismissal</u> or withdrawal from the Trial Pool after the date of this Order."  CMO No. 14C, ¶ 2 (emphasis added).  Plaintiffs Gabriel and Warren were seeking voluntary dismissal of their cases on and after the date of CMO No. 14C.  They continued seeking voluntary dismissal as of the date of Sanofi's Notice, and they are still seeking voluntary dismissal

---

[4] In their Opposition, Plaintiffs suggest they might yet seek to dismiss trial 1 primary plaintiff Tanya Francis as well.  *See* Opp. at 3 ("If Ms. Francis' health deteriorates and her case is unable to proceed, or Sanofi settles it, no case is ready for trial.").

today.  The dismissals they seek are governed by the plain terms of CMO No. 14C(2), and the result under CMO No. 14C(2)(d) is defense de-designations.  *See id.*

Plaintiff's attempt to rewrite CMO No. 14C, paragraph 2 to apply only to Plaintiffs *who first sought* voluntary dismissal after entry of the Order must fail.  In addressing its scope of applicability, paragraph 2 does not refer to the discreet event when a Plaintiff first sought to dismiss her case, but to the ongoing status of a Plaintiff <u>seeking dismissal</u> after entry of the order.  *See id.* In notable contrast, subparagraph (2)(d) *does* speak of the discreet event when a Plaintiff "elects" to voluntarily dismiss her case—in relation to when that case was selected for trial pool discovery. *See* CMO No. 14C(2)(d) ("If after the 14-day period, a Trial Pool case selected by Defendants <u>elects</u> to voluntarily dismiss his or her case without good cause, Defendants may de-designate a Plaintiff from the Trial Pool.") (emphasis added).[5]  Had the Court used similar language to describe the applicability of paragraph 2 (for example, stating that it applies "to any Plaintiff *who elects* to voluntarily dismiss or withdraw from the Trial Pool after the date of this Order") Plaintiff's urged misreading might be plausible.  As it is, the reference to a Plaintiff's continuous status of "seeking dismissal" draws the *Warren* and *Gabriel* cases squarely within the ambit of CMO No. 14C(2).

Moreover, contrary to Plaintiffs' argument, each Plaintiff and her counsel control whether she is "seeking dismissal" from MDL 2740 at any time.  The Court did not require Plaintiffs to continue seeking dismissal after entry of CMO No. 14C—nor, certainly, did Sanofi.  That the Order was negotiated, agreed, and submitted by the parties to the Court well before it was entered underscores that Plaintiffs Gabriel and Warren had ample time to stop seeking dismissal had they

---

[5] Plaintiffs' suggestion that applying the plain terms of paragraph 2 would somehow disrupt application of subparagraph (2)(d), *see* Opp. at 2-3, is accordingly misplaced.  The provisions use different language, and the difference is presumed meaningful.

desired to do so.[6]  They did not, and they remain Plaintiffs "seeking voluntary dismissal […] after the date of [CMO No. 14C]" by their own choice.[7]

Plaintiffs do not dispute that Mss. Gabriel and Warren elected to voluntarily dismiss their cases more than 14 days after their selection for trial pool discovery.  *See* Notice at 1-2; Opp. at 2, n.2 (confirming dates dismissal was first sought).  Likewise, Plaintiffs do not dispute that Mss. Gabriel and Warren are seeking voluntary dismissal without good cause.  *See* Notice at 2; Opp. at 3 (arguing only that Ms. Crayton seeks removal from the trial pool for good cause).  Accordingly, there can be no dispute that CMO No. 14C(2)(d) governs the *Gabriel* and *Warren* dismissals, and authorizes Sanofi to de-designate one Plaintiff from the Trial Pool for each case.  *See* CMO No. 14C(2)(d).

### III.    De-Designation of Earnest and Thibodeaux is Reasonable and Appropriate

CMO No. 14C(2)(d) does not impose any conditions on the cases a Defendant may de-designate in response to the voluntary dismissal of a trial pool case.  This is entirely appropriate: Plaintiffs have exclusive control over which defense-selected cases they seek to voluntarily dismiss, and Defendants control which cases they de-designate in response.  Further, Plaintiffs' incentive to voluntarily dismiss the strongest defense cases is balanced by Defendant's authority

---

[6] Plaintiffs argue Mss. Gabriel and Warren might not have sought dismissal if a CMO had "informed them or the PSC that Defendants could then de-designate any Plaintiffs' pick."  Opp. at 4-5 (emphasis added).  Besides being implausible in light of their decision to continue seeking dismissal before and after entry of CMO No. 14C, this argument removes any doubt that these dismissals are strategic and designed to skew the trial pool in plaintiffs' favor.

[7] Contrary to Plaintiff's argument, the statement in footnote 1 of CMO No. 14C that the Crayton, Warren and Gabriel cases "are not part of [a] separate agreement [between Plaintiffs and Defendants Sandoz and Accord] and those will be dealt with through the pending motions" does not exclude Sanofi cases seeking dismissal after entry of the order from the application of CMO No. 14C.  The statement plainly excepts such cases only from application of the separate agreement, to which Sanofi is not a party.  Plaintiff's suggestion that the Court should nonetheless require the same resolution as that agreed to by other Defendants in distinct individual cases not eligible for trials 1 or 2, *see* Opp. at 5, is therefore puzzling.

to de-designate plaintiff outliers, and the strike process tends to winnow the trial pool to more representative cases.

Nevertheless, Plaintiffs argue that Sanofi's de-designations are wasteful and "inefficient." *See* Opp. at 4.  These arguments fall flat in the face of Plaintiffs' **six** voluntary dismissals (and two withdrawals) of trial pool cases in the midst of discovery, including two trial alternates in which phase II discovery is essentially complete.  Plaintiffs should not be heard to decry inefficiency after seeking to dismiss or withdraw **two out of every three cases** selected by Sanofi over the first three rounds of trial pool discovery.[8]

Moreover, as a trial alternate, all discovery efforts in *Earnest* have been undertaken with the expectation that the case would not proceed to trial.  These efforts were duplicative and "inefficient" by design, and de-designation of the case would in no way disrupt the parties' or counsels' expectations or trial plans.  Indeed, de-designating *Earnest* at this point provides a useful disincentive against Plaintiffs pursuing their hinted dismissal or withdrawal of *Francis* at this late date.

Admittedly, de-designation of the *Thibodeaux* case could disrupt plans for trial 2, but this disruption is the product of Plaintiffs' continued and largely successful effort to bias the trial pool in their favor—including especially withdrawal of *Crayton*.  Instead of de-designation as provided by CMO No. 14C, Plaintiffs suggest that Sanofi "substitute another Trial Pool case in place of Ms. Crayton as the alternate for the second trial."  Opp. at 5.  But with any such substitute, Sanofi would be at an inherent disadvantage—having only a matter of months to begin and complete all

---

[8] In inappositely arguing that cases other than *Earnest* and *Thibodeaux* might be more appropriate for de-designation, Plaintiffs falsely state that Sanofi has not obtained or uploaded any discovery documents in the *Stevenson* and *Collins* cases.  In fact, Sanofi has obtained, reviewed and uploaded more pages of medical records in the *Stevenson* case alone (19,479) than in *Earnest* (11,776) and *Thibodeaux* (7,674) combined.

phase II and expert discovery in advance of a January 2020 trial setting, and in the midst of the *Francis* trial.  If such a condensed process is to take place, it should at least apply to both trial 2 cases.  If *Crayton* is indeed de-designated at Plaintiffs' request, de-designation of the *Thibodeaux* case would put the parties in equal position to prepare for and conduct trial 2.

By its Notice, Sanofi applies the simple and straightforward remedy provided by CMO No. 14C and expressly applicable to Plaintiffs seeking dismissal after entry of the Order, like Mss. Warren and Gabriel.  This remedy is reasonable and appropriate, and the Court should confirm the de-designation of the *Earnest* and *Thibodeaux* cases.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2019, a true and correct copy of Sanofi's Reply in Support

of Its Notice of De-Designation Pursuant to CMO 14C was served upon the following by E-mail:

Samuel M. Wendt
Wendt Law Firm, P.C.
1100 Main Street, Suite 2610
Kansas City, MO 64105
Telephone: (816) 531-4415
Fax: (816) 531-2507
Email: sam@wendtlaw.com
*Attorney for Plaintiff Gabriel*

Carasusana B. Wall
Michelle L. Kranz
Zoll & Kranz, LLC
6620 W. Central Avenue, Suite 100
Toledo, OH 43617
Telephone: (419) 841-9623
Fax: (419) 841-9719
Email: cara@toledolaw.com
Email: michelle@toledolaw.com
*Attorney for Plaintiff Warren*

J. Kyle Bachus
J. Christopher Elliott
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone: (303) 893-9800
Fax: (303) 893-9900
Email: kyle.bachus@coloradolaw.net
Email: celliott@coloradolaw.net
*Attorney for Plaintiff Earnest*

Richard L. Root
Betsy Barnes
Lauren Godshall
Morris Bart, LLC
601 Poydras Street 24th Floor
New Orleans, LA 70130
Telephone: (504) 525-8000
Fax: (504) 599-3392
Email: rroot@morrisbart.com
Email: bbarnes@morrisbart.com
Email: lgodshall@morrisbart.com
*Attorneys for Plaintiffs Thibodeaux and Crayton*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
One Shell Square
701 Poydras St.
Suite 3650
New Orleans, LA 70139-3650
Phone: (504) 524-3300
Email: barrios@bkc-law.com
*Plaintiffs' Liaison Counsel*

Matthew Palmer Lambert
Gainsburgh, Benjamin, David, Meunier & Warshauer
Energy Centre
1100 Poydras St.
Suite 2800
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Email: plambert@gainsben.com
*Plaintiffs' Liaison Counsel*

John Francis Olinde
Chaffe McCall LLP
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
Phone: (504) 585-7000
Email: olinde@chaffe.com
*Attorney for Defendants*