**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

This Document Relates To:
ALL CASES

MDL No. 2740

SECTION:  "H" (5)

### REPLY IN SUPPORT OF MOTION FOR REVIEW OF DISCOVERY ORDER REGARDING PSC'S *IN CAMERA* CORRESPONDENCE AND VIDEOS

Facts and data conveyed to a testifying expert are discoverable.  *See* Fed. R. Civ. P. 26. Based on this tenet, Sanofi has asked Plaintiffs to answer a simple question: have facts or data provided to Plaintiffs' testifying expert been withheld, or been the subject of instructions to a witness not to answer?  If they have, the discoverability of those documents and the propriety of answering those questions must be litigated.  Rather than address the specific issues raised in Sanofi's Motion, however, Plaintiffs hinge their Opposition on a question not before the Court: whether the fact of a stem cell study is "made up," and whether Sanofi is entitled to attorney communications regarding the same.  By strawman argument, Plaintiffs have evaded answering Sanofi's basic requests—specifically: what facts and data were provided to Plaintiffs' testifying experts, what facts and data have been withheld, and was everything withheld provided to Magistrate Judge North for *in camera* review?

Following additional communication with Plaintiffs, Sanofi now knows the answer to those questions for at least one document—a September 3, 2018, email from testifying expert Dr. Curtis Thompson regarding "normal hair samples for stem cell study"—which has not been located, was not produced, and was not provided to Magistrate Judge North.  *See* Email from Counsel for Sanofi

1

to Counsel for Plaintiffs (May 2, 2019) (Ex. A).  Thus, it is impossible for the parties to litigate this issue—or accept any characterizations made about the significance or relevance of this evidence—without accountability in terms of an inventory or privilege log of the discovery at issue.

## I.      Sanofi is Not Targeting Attorney Communications Sheltered by the 2010 Amendments

Where it is most apparent that this issue is not being decided on the basis of a complete record is in the denial of Sanofi's Motion to Compel based on the 2010 amendments to the Federal Rules of Civil Procedure.  In 2010, the expert discovery provisions of Rule 26 were changed to clarify the scope of discoverable information.  Specifically, Rule 26(a)(2) was changed to amend the information an expert's report must disclose from "the *data or other information*  considered by the witness in forming them" to "the *facts or data* considered by the witness in forming them." *See* Fed. R. Civ. P. Rule 26(a)(2) (emphasis added).  As the Advisory Committee Notes explain, this change was made to "alter the outcome in cases that [relied on the previous language] in requiring disclosure of all attorney-expert communications and draft reports." *See* Fed. R. Civ. P. 26 (2010 Comments).  Limiting the disclosure to "facts or data," rather than "other information," was made to more clearly protect the attorney work-product privilege.  However, the word "considered" was retained—and the Advisory Committee Notes from the 2010 amendment urge that the phrase "'facts or data' be interpreted broadly to <u>require disclosure of any material considered by the expert, from whatever source</u>, that contains factual ingredients."  *See id.* (emphasis added).

Sanofi is not requesting discovery of Plaintiffs' attorneys' mental impressions in contravention to the Federal Rules. Sanofi does not seek draft revisions or reports from Plaintiffs' experts.  Sanofi is not centrally interested in attorney communications with consulting experts.

Here, the issue is only that Plaintiffs paired their consulting expert with their testifying expert –
and facts and data were exchanged between the two. The sharing of information between experts
rendered what was supplied to Plaintiffs' testifying expert discoverable.

The August 6, 2018 video referenced in Dr. Thompson's invoices exemplifies this
distinction. Sanofi has not seen the video, and it has not been logged. If the consulting expert in
the video relayed facts and data to Dr. Thompson, the video is discoverable. If attorneys relayed
facts or data then viewed by Dr. Thompson, the video is likewise discoverable. If, in contrast, the
video merely consists of attorneys communicating their mental impressions on lawsuit strategy to
Dr. Thompson, it may not be discoverable. However, such a finding is vastly inconsistent with
how Dr. Thompson initially reacted to the video and later generally described its contents.

On August 6, 2018, Dr. Thompson's invoices indicate he reviewed "videos of
[REDACTED]" and prepared a "summary memo" regarding the same. *See* Thompson Dep. Vol.
III, Ex. 13 (Rec. Doc. 6744-5). After reviewing this video, Dr. Thompson sent an email to
Plaintiffs referencing proposed "validation and testing of stem cells on the biopsy samples," and
stating;

> I don't know if [the redacted researcher] had access to my data on this, but I already
> did this for cytokeratin 15 on these samples. Perhaps I need to meet with him and
> share this data. As the cytokeratin 15 was still positive in the 'basaloid bodies' in
> the pCIA cases, I did not pursue this further.

Thompson Dep. Vol. III, Ex. 14 (Rec. Doc. 6744-5).

In his deposition, Dr. Thompson confirmed the video was sent "to introduce a stem cell
researcher giving a lecture," and described the video as "proposing a project. No [stem cell marker]
testing had been done at that point. It was just saying this is how it will be done." *See* Thompson
Dep. Vol. III 490:7-13 (Rec. Doc. 6744-5). However, when Dr. Thompson was asked about the
substance of the video —e.g., the facts and data relayed to him by the "researcher" on the video

regarding the proposed stem cell "project"—Dr. Thompson was instructed not to answer based on the attorney work-product privilege:

> Q: So there's an entry on August 6, 2018, review of vides of redacted and prep of summary memo. That video that you reviewed, did it have anything to do with stem cell research?
>
> A: Yes.
>
> Q: What did it have to do with stem cell research?
>
> [Plaintiffs' Counsel]: Objection; form. I think we've already had a ruling on this that the video is work product. And so any discussion about that – it's nothing that Dr. Thompson did or didn't do. So – and I think you've got an email that we have disclosed that may get you there, but I'm going [to] instruct him not to answer the work product protected area.
>
>      . . . .
>
> Q: So plaintiffs sent you a video about a stem cell researcher giving a lecture?
>
> A: Yes.
>
> [Plaintiffs' Counsel]: Objection; form. And objection, protected work product. Please don't testify further about any of [the] contents.
>
>      . . .
>
> Q: Is that what this researcher did, they validated the antibody to make sure it worked?
>
> [Plaintiffs' Counsel]: Objection. You're asking what a researcher did. That has been ruled to be a work product protected consultant. So what the researcher did is - - I won't let him answer, but the general discussion I don't object to.

*See* Thompson Dep. Vol. III, 457:20-458:9; 458:17-22; 485:21-487:2 (Rec. Doc. 6744-5).

It is clear from Dr. Thompson's reaction and testimony that the video sent by Plaintiffs contained facts and data regarding some form of proposed stem cell marker testing, which is directly relevant to the issues in dispute in this litigation. This video included the exchange of facts and data between a consulting expert and testifying expert. Without further review, or a

privilege log from Plaintiffs, it is not clear whether this video actually falls within "attorney work-product" protection contemplated by the 2010 amendments to Federal Rule of Civil Procedure 26(a)(2), or if the video is in fact discoverable. Similarly, without a privilege log of the documents and communication withheld from Sanofi, along with a list of the documents provided to Magistrate Judge North for *in camera* review, it is impossible to move forward with a complete understanding of the facts and data provided to Plaintiffs' testifying experts.

## II.     Sanofi is Entitled to the Facts or Data Considered by Plaintiffs' Testifying Experts in Forming Their Opinions

### A. The Facts or Data Considered by Plaintiffs' Testifying Experts Are Discoverable.

Rule 26(a)(2)(B)(ii) requires a testifying expert to disclose the "facts or data considered" by the expert in forming his opinions.  Courts have "embraced an objective test that defines 'considered' as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed."  *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016) (citing *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 05-cv-80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007)).  In those instances where there "is at least an ambiguity as to whether the materials informed the expert's opinion," courts have ordered disclosure.  *U.S. v. Dish Network, LLC*, 297 F.R.D. 589, 595 – 95 (C.D. Ill. 2013); *see also Gereke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 326 (D. Or. 2013) (ordering additional disclosure of communications including "materials and communications [the expert] considered, which include any materials he reviewed or received even if he did not rely upon them in reaching his opinions," and citing pre-2010 cases for this position).

Courts have also ordered the disclosure of all materials given to an expert to review in preparation for testifying, "even if in the end he does not rely on them in formulating his expert

opinion, because such materials often contain effective ammunition for cross-examination." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, 840 F. Supp. 2d 1072, 1080 (N.D. Ill. 2012) (citing *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercty. Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005)). This disclosure extends to communications that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed," which are "not protected," because "documents that are 'reviewed' are documents that an expert 'considered.'" *Johnson v. City of Rockford*, No. 15-cv-50064, 2018 WL 1508482, at *2 (N.D. Ill. Mar. 27, 2018).

As the Tenth Circuit has explained, "[c]ontrary to [the party's] assertion that [the 2010 amendments to Rule 26] were intended to have wide-ranging effects, the revisions appear to alter only the outcome of cases either allowing discovery of draft reports or attorney-expert communications." *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1186 (10th Cir. 2013). "The comments [to Rule 26] reinforce the strong preference for broad discovery of expert materials: '[T]he intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert , from whatever source, that contains factual ingredients.'" *Id.* at 1187; *see also U.S. v. Mix*, No. CRIM.A. 12-171, 2013 WL 3874900, at *4 (E.D. La. July 25, 2013) (finding that Rule 26(b)(4)(C) "extends work product protection to communications between a party's attorney and that party's testifying experts except to the extent such communications (1) relate to the experts compensation, (2) identify facts or data provided by the party's attorney and considered by the expert in forming his opinions, or (3) identify assumptions provided by the party's attorney and relied on by the expert in forming his opinions.").

Sanofi is entitled to the facts and data considered by Plaintiffs' testifying experts, including, but not limited to, the documents and communications referenced in Dr. Thompson's invoices related to stem cell marker testing.

### B.      Whether the Stem Cell Study Contemplated by Plaintiffs Actually Occurred is Irrelevant to Sanofi's Request and is a Distraction by Plaintiffs

The issue before the Court is not whether a stem cell study actually moved forward or whether Sanofi can "prove" a larger stem cell study occurred.  Nor is the issue the discoverability of attorney work-product, draft expert reports, or attorney communications regarding the drafting of such reports, as Plaintiffs' Opposition suggests.  Instead, Sanofi is requesting that Plaintiffs produce—and that their testifying expert answer questions about—the complete facts and data considered by that expert in forming his opinions in this litigation, as required by Federal Rule of Civil Procedure Rule 26(a).  As set out in its original Motion, Sanofi respectfully believes the wrong legal standard was applied in the discovery court ruling that certain materials and videos submitted for *in camera* review by the PSC constitute protected work product not subject to discovery. *See* Memo in Support at 1 (Rec Doc 6744-1).  Thus, Sanofi is seeking reconsideration of the April 1, 2019 Order (Rec. Doc. 6616). Given Plaintiffs' ever-shifting position on this topic, and in particular repeated inconsistency surrounding what data was actually provided to Dr. Thompson, Sanofi also requests Plaintiffs provide a privilege log of documents withheld, to be compared against Dr. Thompson's invoices and the documents provided to Magistrate Judge North.

Plaintiffs initially represented to Sanofi that Dr. Thompson conducted the stem cell staining on his own, and that the PSC had no knowledge of the testing.  *See* Email to Sanofi Counsel from Plaintiffs' Counsel (Feb. 28, 2019) ("the leadership was entirely unaware of the additional slides made by Dr. Thompson until preparing him for his latest deposition on 2/26/19.") (Ex. B).

Plaintiffs then confirmed that nothing related to the stem cell theory considered by their testifying experts would be withheld.  *See* Email to Sanofi Counsel from Plaintiffs' Counsel (Mar. 1, 2019) (Ex. C) ("We will be withholding nothing."); Email to Sanofi Counsel from Plaintiffs' Counsel (Mar. 4, 2019) (Ex. B) (Sanofi: "6. You have disclosed testifying experts in this litigation. The information, documents, or evidence that they reviewed or created related to this theory is discoverable." Plaintiffs' Response: "The PSC agrees with Sanofi on this point. To the extent the PSC's testifying experts have reviewed or created information, documents or evidence related to this stem cell theory, all materials reviewed and relied upon by those experts has been properly identified in the respective disclosures. However, without waving any objections concerning admissibility, we intend to produce two emails (with redactions) later today.").  Plaintiffs then represented to Sanofi that, even if the PSC was aware of Dr. Thompson's initial testing, there was no additional stem cell work conducted beyond these March 2018 discussions. *See* Email to Sanofi Counsel from Plaintiffs' Counsel (Mar. 15, 2019) ("And beyond those slides, no further slides or investigation was done to assess stem cell activity.") (Ex. D).

Dr. Thompson's August 6, 2018, communications plainly contradict this.  Dr. Thompson, together with a consulting expert, continued to explore options for further stem cell testing well after his stem cell staining in March 2018. *See* Thompson Dep. Vol. III, Ex. 14 (Rec. Doc. 6744-5).  Dr. Thompson testified (before Plaintiffs stopped the examination on claims of work-product privilege), that the August 6, 2018 video discussed proposed additional stem cell work with specificity, including potential methods to validate the "immunohistochemical antibodies," to "show that [the antibody] really works as purported to."  *See* Thompson Dep. Vol. III 486:13-20 (Rec. Doc. 6744-5).  They explored the possibility of "collaborating with [redacted]" on the testing of "more stem cell markers."  *See* Thompson Vol. III, Ex. 14 (Rec. Doc. 6744-5).  Dr. Thompson

sent the August 6, 2018 email referencing his own testing of stem cell markers to stop Plaintiffs from redoing "something that didn't need to be redone," or recreating "the wheel" with the stem cell work proposed in the video. *See* Thompson Dep. Vol. III 484:4-14 (Rec. Doc. 6744-5).

Plaintiffs insist in their letter to the Court that there was *never* additional stem cell work – claiming "no results exist because there was no study," and that the only reason why biopsies were sent to AIVITA Biomedical—the possible employer of the researcher on the August 6, 2018 video—was for "the sole purpose of utilizing a reliable facility to safely and properly store the biopsy material." *See* Opp. Ex. 2, at 2 (Rec. Doc. 6852-1).

As this discovery continues to unravel, we now know more, including that on August 15, 2018, Dr. Thompson spent time "planning a stem cell study at CTA Labs." *See* Thompson Dep. Vol. III, Ex. 13 (Rec. Doc. 6744-5). On September 3, 2018, he sent an "email regarding normal hair samples for stem cell study," an email which has been lost or destroyed. *See* Email from Sanofi Counsel to Plaintiffs' Counsel (May 2, 2019) (Ex. A). We know that on October 24, 2018, Plaintiffs' punch biopsy slides were shipped to yet another dermatologist (Email to Sanofi Counsel from Plaintiffs' Counsel (Apr. 24, 2019) (Ex. E)), only to curiously be returned unopened (*id.*) with supposedly no documentation existing or provided for Magistrate Judge North's *in camera* review, for the sum total of months between August 6, 2018 to October 24, 2018. Email from Sanofi's Counsel to Plaintiffs' Counsel (May 2, 2019) (Ex. A); *see also* Thompson Dep. Vol. III, Ex. 16 (Rec. Doc. 6744-5).

These shifting representations regarding the extent of the stem cell work *actually conducted* by Dr. Thompson or various other experts mystify Sanofi's otherwise simple question: have Plaintiffs disclosed all the facts and data considered by their testifying experts in forming their opinions in this case? What has been withheld? Was everything withheld turned over to the

9

Court for *in camera* review?  The record is clear that they have not.  On the basis of what has been lost alone there are grounds for an adverse inference instruction, which might be taken up in pretrial proceedings upon identification of the full scope of discoverable documents and answered questions.

## **CONCLUSION**

In sum, the issue before the Court is not whether a larger stem cell study did, or did not, occur.  The issue is that without basic accountability for inventorying the facts and data provided to Dr. Curtis Thompson, including what has been withheld and what has (or has not) been provided to Magistrate Judge North, Plaintiffs are able to make ever-shifting representations about what did or did not take place.  Thus, Sanofi urges that reconsideration of the April 1, 2019 Order necessarily entails providing a privilege log, matched against Dr. Thompson's invoices, for the Court's consideration in review of the materials themselves.  Gaps in the documentation must be assessed alongside review for the discoverability of the materials.

Respectfully submitted,

/s/ Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
IRWIN FRITCHIE  URQUHART & MOORE LLC
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
SHOOK, HARDY& BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-aventis U.S. LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 6, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

<u>*/s/ Douglas J. Moore*</u>