UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | * * * * * | 16-MDL-2740 |
| | | Section H |
| Relates To All Cases | * | May 21, 2019 |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

REPORTER'S OFFICIAL TRANSCRIPT OF THE
**SHOW CAUSE HEARING**
BEFORE THE HONORABLE JANE TRICHE MILAZZO,
UNITED STATES DISTRICT JUDGE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPEARANCES:**

**For the Plaintiffs:**

Dawn Barrios, Esq.                    Claire Berg, Esq.
Palmer Lambert, Esq.                  Amy Gabriel, Esq.
Trevor Rockstad, Esq.                 Ryan Perdue, Esq.
Lisa Joyce, Esq.                      Kyle Benkie, Esq.
Mark Niemeyer, Esq.                   Leslie LaMacchia, Esq.
Ryan Browne, Esq.                     John Foley, Esq.
Charles Orr, Esq.                     Alyssa White
Sam Wendt, Esq.                       Peter Goss, Esq.
Steven Davis, Esq.                    Jennifer Nolte, Esq.
Kristie Fischer, Esq.                 Jennifer Domer, Esq.
Lynn Seithel, Esq.                    Lauren Godshall, Esq.
Melissa Ephron, Esq.                  Aaron Johnson, Esq.
Gordon Kessler, Esq.

**For the Defendants:**

Kelly Brilleaux, Esq.                 Julie Callsen, Esq.
Nick Insogna, Esq.

**REPORTED BY:**        Mary V. Thompson, RMR, FCRR
                       500 Poydras Street, Room B-275
                       New Orleans, Louisiana  70130
                       (504)589-7783

**OFFICIAL TRANSCRIPT**

**P R O C E E D I N G S**

THE COURT:  Okay.  Court is in session.

I'm going to ask all of those people that are on the line, if we're not talking to your firm just yet, please put it on mute so that we can hear.

We're going to proceed and go through the show cause list.

All right, are we ready to proceed?

MS. BRILLEAUX:  Yes, Your Honor.  Kelly Brilleaux for the Sanofi defendants.

Your Honor, we understand that you have a hard stop today.

THE COURT:  I do.

MS. BRILLEAUX:  And so for the sake of efficiency, we have four lists that we submitted to you yesterday evening.  We have the show cause docket which has 228 cases on it.

Then we have a list of dismissed cases which has 44 cases on it; a list of counsel who have filed declarations that they made attempts to reach their clients and have been unsuccessful, and that has 42 cases on it; and finally a list of plaintiffs who have filed statements that they have no defense to dismissal of the case, and that has 37.

We're going to hand those lists to the court reporter for entry and not read those in today.

OFFICIAL TRANSCRIPT

1     THE COURT:  Those matters are dismissed with prejudice.

2     I will tell all of the lawyers on the phone, and those

3 that are present, that there is a mechanism in place that if

4 there is no defense, if you are unable to comply with this, that

10:05:23
5 you are to sign declarations and those cases are dismissed.

6     It is inefficient, and, very frankly, just a failure to

7 comply with the directions of the Court.  So those things should

8 be taken care of before we get here, and I am going to have very,

9 very little patience with anybody that takes this time to

10:05:55
10 stipulate that they have no defense to dismissal.  I mean, that

11 should have been done ahead of time by declaration.

12     MS. BRILLEAUX:  Thank you, Your Honor.

13     One other point, just to make super briefly, is that we

14 have instituted a cutoff which we've agreed to with liaison

10:06:07
15 counsel.  And we understand that liaison counsel has worked very

16 hard to enforce this, but yet we're continually getting

17 statements, declarations, and dismissals up until right now,

18 which frustrates the process a little bit further.

19     THE COURT:  It does.

10:06:23
20     Let's proceed.

21     MS. BERG:  Good morning, Your Honor.  Claire Berg for

22 the plaintiffs.

23     We asked that counsel for Bachus & Schanker leave since

24 we're going to do their plaintiffs on another day.

10:06:40
25     THE COURT:  We are going to have to do you-all on

**OFFICIAL TRANSCRIPT**

1  another day.  You have a hundred so I would suggest that you

2  take --

3                              (Telephonic interruption.)

4          THE COURT:  I'm going to have to do Bachus & Schanker

10:07:00  5  another day.  There are over 100 people on the list.

6          And I want to caution you that if there are

7  declarations to be signed, that they be signed.  For me to have

8  to go through each of these cases and fumble through files on the

9  show cause docket is an egregious waste of the Court's resources.

10:07:21  10          So take care of your business and come prepared, and

11  we'll set that for another day.  And maybe you can talk to Sam

12  about getting another date to do this.

13          MS. BRILLEAUX:  Thank you, Your Honor.

14          MS. BERG:  Thank you, Your Honor.

10:07:36  15          MR. INSOGNA:  The first case on the list is Ruth Brooks

16  with Gori Julian & Associates.  It is on the list for no

17  plaintiff fact sheet submitted.

18          A plaintiff fact sheet was submitted.  I have a copy

19  for Your Honor.  It's almost entirely blank.  It has the

10:07:50  20  plaintiff's contact information, counsel's contact information,

21  and nothing else.

22          THE COURT:  Ms. Gabriel, are you on the phone?

23          MS. GABRIEL:  Yes, Your Honor.  Good morning.

24          Your Honor, we had reached out to defense counsel, and

10:08:03  25  the situation is such, with regard to Ms. Brooks, sadly, that she

**OFFICIAL TRANSCRIPT**

1  had her cancer return and had talked to my paralegal in the fall
2  letting her know that it had come back and that it spread to her
3  brain.

4          We had filed her case.  Unfortunately, the timing was
5  such that we were trying to get a PFS at least on file for her,
6  but had not heard back from her, frankly, Your Honor.  And so we
7  were trying to get ahold of her and found out that she had passed
8  away.

9          She has family that we have located, a daughter that
10  I've talked to, to try and see if they have any interest in
11  continuing on with this case.  But she has not sent me the
12  personal representative paperwork yet, and so I'm in a spot where
13  I'd just ask if I can have an additional amount of time to try
14  and find that out from the family.  And I'll ask the Court for a
15  dismissal if I'm not able to get any sort of assurance or
16  paperwork from them.

17          But that's where we are, Your Honor.  And I apologize
18  that we're taking up your time on this docket for this issue.

19          THE COURT:  I'm going to ask that this one be passed to
20  the next date, and that gives you an opportunity to find and
21  speak to her daughter.  The Court is going to pass this.

22          MS. GABRIEL:  I appreciate it.  Thank you so much,
23  Your Honor.

24          THE COURT:  Deborah Hutchinson.  That is Davis & Crump.
25          MS. BRILLEAUX:  Yes, Your Honor.  This is a Sanofi

10:08:23
10:08:40
10:09:01
10:09:16
10:09:27

**OFFICIAL TRANSCRIPT**

1  case.  We have no "before" photos from within five years of

2  treatment.

3         And I do want to note for the record, when we initially

4  compiled this list we thought we may be at an agreement for the

10:09:39  5  no-photos certification issue.  I understand that that was a

6  subject of discussion at the lead liaison counsel meeting this

7  morning so we defer to Your Honor on how that is handled.

8         THE COURT:  Mr. Rockstad, where are the "before"

9  photos?

10:09:53  10        MR. ROCKSTAD:  Your Honor, this is Trevor Rockstad.

11        Ms. Hutchinson's photographs were in a storage unit.

12  In 2010 her husband died.  The storage unit was in his name and

13  he owed back rent on it.  She was unable to pay for the back rent

14  and so the storage facility confiscated and I guess auctioned off

10:10:16  15  the contents of that storage unit.  This was before -- I guess

16  two or three months before she began her chemotherapy treatment.

17  So all of her photographs were in that storage unit from --

18        THE COURT:  She didn't have any photographs in her

19  phone or anywhere else?  She has no relatives that have

10:10:34  20  photographs of her?

21        MR. ROCKSTAD:  She claims she does not.  She had one

22  picture that we produced from December 1999, but nothing else

23  within really the 10 years before her chemotherapy.

24        THE COURT:  When did she have chemotherapy?

10:10:53  25        MS. BRILLEAUX:  So the 1999 photo, Your Honor, is from

**OFFICIAL TRANSCRIPT**

1    12 years before chemo.

2        MR. ROCKSTAD:  But all her photographs were in that

3    storage unit and they do not exist anymore.

4        THE COURT:  Mr. Rockstad, I think your client,

10:11:10   5    Ms. Hutchinson, is going to have to make -- contact family

6    members and she is going to have to contact friends to see if

7    somebody has a photograph of her.  It's generally -- you attend a

8    wedding or something.  People have photographs out there that's

9    not in your personal possession.

10:11:32   10       So I'm going to give you 30 days to do -- have her do a

11    search of family and friends and find a photograph within five

12    years.

13        MR. ROCKSTAD:  Your Honor, we have done that.  We'll

14    ask her again and encourage her and tell her that you have

10:11:47   15    instructed her to do that.

16        THE COURT:  Yes.  It's critical.

17        MR. ROCKSTAD:  Is there any further guidance you can

18    give on the future for the case if there is not -- if that

19    doesn't yield any results?

10:12:04   20       THE COURT:  We're going to have to -- as a matter of

21    fact, that was the subject of the meeting today.  We reviewed

22    that because we think this has become a crutch for many people to

23    rely on, and that's not going to be acceptable.  There has to be

24    proof of her condition prior to chemotherapy.

10:12:30   25       And so it's going to be incumbent upon all of the

**OFFICIAL TRANSCRIPT**

1  members of this action to find photographs or submit some other

2  evidence of the condition of her hair prior to chemotherapy.

3         So I would caution anybody that's on the phone that's

4  listening to this, you need to contact family members and friends

*10:12:52*  5  and see what you can provide.  But most people attend a function

6  or somewhere where there's a photograph of them, and you need to

7  find those photographs.

8         MR. ROCKSTAD:  Your Honor, this is Trevor Rockstad

9  again.  What about affidavits from friends and family regarding

*10:13:13*  10  the state of her hair?

11         THE COURT:  Friends and family need to start looking

12  for photographs.  When you get that affidavit -- when you talk to

13  friends and family, I think they should be looking for

14  photographs.  Okay?

*10:13:27*  15         MR. ROCKSTAD:  Okay.  Thank you, Your Honor.

16         THE COURT:  I'm going to give you 30 days to do that.

17         MR. ROCKSTAD:  All right.  Thank you, Your Honor.

18         THE COURT:  Thank you.

19         Guyann Peterson.  That's Fernelius Simon.

*10:13:36*  20  Ryan Perdue -- Mr. Perdue, are you on the phone?

21         MR. PERDUE:  Yes, Your Honor, this is Ryan Perdue.

22         MS. BRILLEAUX:  Your Honor, this deficiency is also no

23  "before" photographs.

24         THE COURT:  Mr. Perdue?

*10:13:49*  25         MR. PERDUE:  Yes, Your Honor.  Ms. Peterson passed away

**OFFICIAL TRANSCRIPT**

1  a couple -- about a year ago, and her son is the personal

2  representative of her estate.  He was able to locate eight

3  "after" photos in his possession, which we uploaded last week.

4  But despite his good-faith attempts to find photos of his mom

5  prior to her chemotherapy treatment in 2012, he was unable to do

6  so.

7         We would ask for the opportunity to either submit a "no

8  photo" affidavit or -- like the last case, we can go back to him

9  and stress the importance again of --

10        THE COURT:  I think you need to stress the importance

11 that he has to find some before photographs.  And I'm going to

12 give you 30 days to do that, Mr. Perdue, but he has to contact

13 family and friends and just see what can be done.

14        MR. PERDUE:  Yes, Your Honor.  He has done that, but

15 we'll ask him to do so again.

16        THE COURT:  Thank you.  Maybe if you tell him that

17 we've had this discussion, it might help.

18        MR. PERDUE:  Yes.

19        MS. BRILLEAUX:  Thank you, Your Honor.

20        I just wanted to clarify for the record that it's our

21 understanding that no plaintiffs should be submitting affidavits

22 until you have ordered them to do so.  Is that correct?

23        THE COURT:  That's correct.  I'm not accepting

24 affidavits until we've had an opportunity to question counsel and

25 perhaps plaintiffs.

10:14:13
10:14:34
10:15:02
10:15:10
10:15:28

**OFFICIAL TRANSCRIPT**

1        Kathleen Malzewski.

2        MS. BRILLEAUX:  I think, Your Honor, that is a Sanofi

3   case, and that is -- "before" photos are not dated and also no

4   PTO 71A certification.  That's the certification they have done

10:15:48   5   the ESI production and search.

6        THE COURT:  That's Ms. Joyce.  Are you on the phone?

7        MS. JOYCE:  Yes, Your Honor.  This is Lisa Joyce.

8        We were able to speak with the client yesterday and

9   work with her to clarify the dates on the "before" photos.  Those

10:16:09   10   have been amended in MDL centrality.

11        Also this morning we were able to get her signed ESI

12   statement which was also uploaded into MDL centrality.

13        THE COURT:  I'm going to grant seven days for the

14   defendants to verify.  Thank you.

10:16:22   15        MS. JOYCE:  Thank you, Your Honor.

16        THE COURT:  Sandra Holmes.  That's from Kirkendall

17   Dwyer.

18        MR. INSOGNA:  Yes, Your Honor.  It appears that dated

19   photographs were submitted early this morning.  I would like

10:16:34   20   seven days just to confirm.

21        THE COURT:  Seven days.

22        Gwendolyn Davis.  That's Kirtland & Packard.

23        MR. BENKIE:  Good morning, Your Honor.  Kyle Benkie

24   with Kirtland & Packard.

10:16:48   25        Our deficiency was two of the photos are not dated, two

**OFFICIAL TRANSCRIPT**

1   of the "before" photos.  This plaintiff has been very compliant.

2   We'd just ask for a short amount of time just to confirm the

3   dates of the two "before" photos that were uploaded last week.

4           MS. BRILLEAUX:  Your Honor, for Gwendolyn Davis I have

5   the deficiency as no "before" photos from within five years of

6   treatment.

7           THE COURT:  Do you know, Mr. Benkie, when the photos

8   were taken?

9           MR. BENKIE:  I believe one of them was dated about a

10  dozen years or so ago, but I believe we have to confirm the other

11  two.  They weren't dated.

12          THE COURT:  They need to be within five years.

13          MS. BRILLEAUX:  Correct.

14          THE COURT:  So what I'm going to do, Mr. Benkie, is

15  give you 15 days to get into compliance, and that's to confirm

16  that the photos are within five years before and that they are

17  properly dated.

18          And is that it?

19          MR. BENKIE:  That's fine, Your Honor.  Thank you.

20          THE COURT:  Thank you.

21          Eloise Farrior.

22          MS. BRILLEAUX:  Yes, Your Honor.  No "before" photos

23  from within five years of treatment.

24          MR. NIEMEYER:  Good morning, Your Honor.  This is

25  Mark Niemeyer on behalf of the plaintiff.

10:17:06 (line 5)
10:17:24 (line 10)
10:17:37 (line 15)
10:17:53 (line 20)
10:18:05 (line 25)

**OFFICIAL TRANSCRIPT**

1        I won't bore you with the whole saga unless you would

2   like to hear it --

3        THE COURT:  I don't.

4        MR. NIEMEYER:  -- but this morning we were able to

10:18:14   5   upload a photo from 2006 and her chemo was in 2008.

6        THE COURT:  Okay.  Thank you.  I'm going to grant seven

7   days for defendants to confirm compliance.

8        MS. BRILLEAUX:  Your Honor, just to clarify for that,

9   we would like to ask that if a plaintiff has submitted it after

10:18:29   10   the agreed-upon deadline, that they e-mail us within seven days

11   identifying the document number on MDL centrality so that we can

12   confirm based on their representation.

13        THE COURT:  Great.

14        Can you e-mail them within this week so that they can

10:18:43   15   confirm?

16        MR. NIEMEYER:  Happy to do so, Your Honor.  Thank you.

17        THE COURT:  Thank you.

18        Janet Eosco, and that's the Pulaski Law Firm.

19        MR. INSOGNA:  Yes, Your Honor.  No plaintiff fact sheet

10:18:56   20   submitted.

21        THE COURT:  No plaintiff fact sheet.  Ms. LaMacchia?

22        MS. LAMACCHIA:  Yes, Your Honor.

23        I think we're going to have to end up filing a

24   declaration in this matter.  We've attempted over the last couple

10:19:06   25   of weeks.  Like it's hit and miss with her.  Her husband just

**OFFICIAL TRANSCRIPT**

1  passed away in April.  I tried again this morning.  So I think

2  ultimately we're going to have to file a declaration.

3          THE COURT:  Okay.  Why don't we just do that right now?

4          MS. LAMACCHIA:  Okay.

5          THE COURT:  The Court is going to dismiss this case

6  with prejudice.

7          MS. LAMACCHIA:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          Cardella Rankins.  And that's the Reyes Browne Reilley

10  group.

11          Mr. Browne?

12          MR. BROWNE:  Yes, Your Honor.  Hi.  Ryan Browne here.

13          So could I ask for a quick point of clarification on

14  something?  This is our first time appearing on this docket.  We

15  sent an e-mail last week, you know, providing all this

16  information about any of the deficiencies.  We uploaded

17  everything.  We set a time to meet and confer.  We didn't hear

18  back from the other side.  Nobody attempted to contact us on the

19  meet-and-confer.  And so is that the way that this works or are

20  we expected to meet and confer prior to the hearing with the

21  other side?

22          THE COURT:  Why don't you --

23          MR. INSOGNA:  Sure, Your Honor.  I don't -- I don't

24  know what e-mail that was sent to or to whom it was directed.

25          The issue with this case is that the --

**OFFICIAL TRANSCRIPT**

1          MR. BROWNE:  It was sent to noncompliance@shb.com and
2     502bliaison@chaffe.com and taxotere@bkc-law.com.
3          THE COURT:  Why don't we do this.  Why don't we find
4     out where the problem is.  Why don't you give them directions to
10:20:39
5     where -- the e-mail address that those inquiries should be
6     forwarded.
7          MR. INSOGNA:  If I may, Your Honor, there's an e-mail
8     address that we supply to liaison counsel each month that goes
9     directly to me for any meet-and-confer e-mails.  None of those
10:20:53
10    accounts are listed.  I'm happy to provide it again.
11         MS. BERG:  Your Honor, I can get with plaintiff's
12    counsel and intervene and help facilitate the meet-and-confer.
13         MS. CALLSEN:  The other thing, I just want to ask, too,
14    on behalf of the defendants is if they're late in complying --
10:21:08
15    you know, it's less than a week before the hearing -- Nick and I
16    are traveling here.  It would also be helpful, if they want to
17    get off this hearing, if they could e-mail us directly rather
18    than just these global e-mails.
19         If it's -- not routinely across the board, but just if
10:21:24
20    we are past the cutoff or if it's late, they really want to try
21    to e-mail someone directly rather than the big global boxes.
22         MR. BROWNE:  Happy to do whatever, but if we can get
23    those e-mails from liaison counsel or y'all directly, that would
24    be wonderful.  My e-mail is ryan@reyeslaw.com.  All one word,
10:21:49
25    reyeslaw.

**OFFICIAL TRANSCRIPT**

1    THE COURT:  Okay.  So what was the deficiency for?

2    MR. INSOGNA:  Your Honor, the only "before" photos are

3 from 1982 and '99 so not within five years of treatment.

4    THE COURT:  Okay.  Mr. Browne, do you have "before"

5 photos?

6    MR. BROWNE:  We do.  We're looking at them now to see

7 what the actual dates are.  And it looks like 19 -- I think you

8 are probably right, 1982 and '99.

9    THE COURT:  So you need to get us something within five

10 years.  And Ms. Berg will be able to help you go through this

11 process.

12    So I'm going to ask liaison counsel to work with

13 plaintiffs.  Thank you.

14    MS. BERG:  That's fine.

15    Your Honor, before I move on, the firm of Fears

16 Nachawati has 45 plaintiffs on the list.  Should we move that to

17 another day as well so they can drop off the call?

18    THE COURT:  Yes.  Because I am not going to have -- who

19 is on the phone for Fears Nachawati?

20    MS. GULEWICZ:  Hi, Your Honor.  This is

21 Charlotte Gulewicz at Fears Nachawati.

22    THE COURT:  You have 45 matters on this call docket.

23 Have you reviewed the declaration process?

24    I mean, it's an attempt for us to streamline this.  And

25 having people that have 45 -- and other people that have

**OFFICIAL TRANSCRIPT**

10:22:24

10:22:37

10:22:59

10:23:21

10:23:38

1  100 cases -- makes me think that you're not working through the

2  declaration process.

3          MS. GULEWICZ:  Yes, Your Honor.  We started with more

4  than 350 cases, and we've -- we were able to get down to

*10:23:57*  5  310 cases so we only have 45 now, you know, and so we just -- we

6  have been working as efficiently as possible.  Unfortunately, we

7  just weren't able to get through all of them.

8          We were going to ask if you could give us seven days to

9  meet-and-confer with defense counsel, so that way we can narrow

*10:24:18*  10  it down further and really only talk about the cases that need to

11  be discussed.

12          THE COURT:  Well, this is what -- because there are so

13  many, and I have a very -- I'm supposed to be done in five

14  minutes, but I'm going to be a little bit later than that.  I'm

*10:24:34*  15  going to set you up for a different time.

16          So what I'm going to ask, ma'am, is that you talk --

17  call back my case manager, Ms. Mouledous, sometime this afternoon

18  and get a new date for us to go through this process.  Okay?

19          MS. GULEWICZ:  Okay.

*10:24:57*  20          THE COURT:  So you can drop off the call and call back

21  Ms. Mouledous this afternoon.

22          MS. GULEWICZ:  Thank you, Your Honor.

23          THE COURT:  All right.  Let's go.

24          MS. BRILLEAUX:  Barbara Falk with Simmons Hanly Conroy.

*10:25:10*  25  No "before" photos within five years of treatment.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  Mr. Foley, are you on the line?

2          MR. FOLEY:  Yes, I am, Your Honor.

3          We have got two photos.  One is dated 15 years before

4   treatment.  The other is 12 years before treatment.  We have had

10:25:30  5   numerous conversations with the plaintiff regarding the need for

6   "before" photos from within five years of her treatment.  She has

7   expressed that she has done a search and talked to family members

8   and friends, and this is -- those two photos are the only ones

9   that she has been able to locate.

10:25:52  10          THE COURT:  I'm going to give you 30 days, but she

11   needs to contact friends and family and find a photo within five

12   years prior to treatment.

13          MR. FOLEY:  Thank you, Your Honor.

14          THE COURT:  Pamela Green.  And that's with the Mulligan

10:26:07  15   Law Firm.

16          MR. INSOGNA:  No PFS submitted.

17          THE COURT:  No PFS submitted.  Mr. Orr?

18          MR. ORR:  Good morning, Your Honor.  This is

19   Charles Orr from the Mulligan Law Firm.

10:26:17  20          We resolved all of our other cases through the

21   declaration process.  This one, we had contact with Ms. Green

22   most recently on April 16th of this year.  We reasonably believed

23   that she was going to timely complete and submit a PFS.  We,

24   therefore, did not pursue the declaration process.

10:26:37  25          She apparently has lost her job and moved and so our

**OFFICIAL TRANSCRIPT**

1  current contacts are no longer valid so we are -- if the Court

2  grants us additional time, which is my request, we will employ a

3  private investigator to attempt to locate her.  We don't ask for

4  any more grace than a 30-day period.  We understand the need to

5  provide the PFS.

6          THE COURT:  All right.  This matter was filed in

7  December of 2018.  I'm going to give them the 30 days.

8          MR. ORR:  Thank you, Your Honor.

9          MS. BRILLEAUX:  Diane Bullock with the Wendt Law Firm.

10  No PFS submitted.

11          MR. WENDT:  Yes, Your Honor.  This is Sam Wendt with

12  the Wendt Law Firm.

13          We recently found out, within the last handful of

14  weeks, that Ms. Bullock passed away in October of 2018.  We have

15  engaged an investigator and tracked down her next of kin which

16  are two daughters, and they wish to pursue a claim.

17          Unfortunately, just within the last two or three weeks,

18  we have made contact with them but we have not had an opportunity

19  to get an estate open, and also have reached out to them about

20  the plaintiff fact sheet.  But we certainly intend to cure the

21  deficiency of the fact sheet not being able to be --

22          THE COURT:  Mr. Wendt, you said she died in October,

23  but you filed the claim in December.  How did you have

24  authorization to file a lawsuit if the patient is deceased?

25          MR. WENDT:  Judge, I would have to look at the file

10:26:58
10:27:13
10:27:27
10:27:46
10:28:09

**OFFICIAL TRANSCRIPT**

1   materials.  I just have here in the notes from my office that

2   it's October of 2018 is when she passed.  And when she informed

3   us of her -- of when her children informed us of her passing was

4   just recently.  Certainly prior to October 2018 she engaged our

5   law firm and asked us to pursue a claim on her behalf.

6       MS. BRILLEAUX:  Your Honor, defendants take the

7   position that you cannot file on behalf of a deceased plaintiff

8   who has been deceased for --

9       THE COURT:  I think that's accurate.

10      This is what I'm going to do.  I'm going to give two

11  weeks to -- for this to be uncovered.  But, Mr. Wendt, I don't

12  know how you had authorization to file this complaint if the --

13  you know, if Ms. Bullock was deceased.

14      So I'm going to give you two weeks to confer with

15  liaison counsel and maybe you-all can ferret through this and

16  find out what occurred.

17      MR. WENDT:  Okay, Your Honor.

18      MR. LAMBERT:  Thank you, Your Honor.  Palmer Lambert,

19  co-liaison counsel for plaintiffs.

20      On the plaintiffs' side I'm not sure that the day

21  before you file a complaint you actually check with your client

22  to make sure they are still alive.  I mean, usually you have a

23  prescription calendar and you file suit on a certain date.  You

24  have their authority prior to that.

25      So we will, Your Honor.  We will talk with counsel.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  You have two weeks, Mr. Lambert.

2          MR. LAMBERT:  Thank you.

3          MS. BRILLEAUX:  Thank you, Your Honor.

4          Lisa Axtell with the Johnson Law Group.  No "before"

5   photos within five years of treatment.

6          MS. WHITE:  Good morning, Your Honor.  Alyssa White

7   with the Johnson Law Group.

8          We have no defense for dismissal on Ms. Axtell.  We

9   gave her a firm deadline to submit photos.

10          THE COURT:  This matter is dismissed with prejudice.

11          MS. BRILLEAUX:  Thank you, Your Honor.

12          Leanette Owens also with Johnson Law Group.  No

13   "before" photos.

14          MS. WHITE:  Good morning.  Ms. Owens sent us 15

15   photographs this morning.  Her chemotherapy was in early 2015 and

16   the photographs she sent are from 2010 to 2015 so I anticipate

17   being able to cure that today.

18          THE COURT:  I'm going to grant 15 days for you to cure

19   it and give an opportunity for defense to review it.  I'm going

20   to ask that you send an e-mail as previously requested.

21          MS. BRILLEAUX:  We would ask -- I think your earlier

22   ruling was seven days to send the e-mail.  If they claim they

23   already cured it --

24          THE COURT:  She said she is going to do it today.  I

25   just want to give them an opportunity to get it filed and then

**OFFICIAL TRANSCRIPT**

10:29:48 (line 5)
10:30:00 (line 10)
10:30:13 (line 15)
10:30:31 (line 20)
10:30:45 (line 25)

1  you look at it, so we have 15 days.

2       MS. BRILLEAUX:  Thank you, Your Honor.

3       MR. INSOGNA:  Your Honor, Pamela Arthur with the Goss

4  Law Firm.  No PFS submitted.

10:30:57
5       MR. GOSS:  Yes, Your Honor.  Peter Goss with the Goss

6  Law Firm.

7       There is no defense for dismissal on this one.

8       THE COURT:  This matter is dismissed with prejudice.

9       MS. BRILLEAUX:  Thank you, Your Honor.

10:31:06
10       Donna Erario.  No PFS submitted.  Also with the Goss

11  Law Firm.

12       MR. GOSS:  Similar on this one, Your Honor.  No defense

13  for dismissal.

14       THE COURT:  Mr. Goss, next time you can file the

10:31:16
15  declaration and we would have taken care of you before.

16       MR. GOSS:  Thank you, Your Honor.

17       THE COURT:  Christine Curtis.

18       MS. BRILLEAUX:  Yes, Your Honor.  This is no "before"

19  photos from within five years of treatment.  And this is

10:31:29
20  TorHoerman Law.

21       MR. DAVIS:  Good morning, Your Honor.  Steven Davis for

22  TorHoerman Law.

23       And I can give you the story if you want it, but our

24  understanding is that her photos are inbound from a health care

10:31:42
25  provider that did not previously provide them even though they

**OFFICIAL TRANSCRIPT**

1   were requested.  So we expect to be able to cure that in the very

2   near future.

3          THE COURT:  Wait.  What?  Photos?

4          MR. DAVIS:  Yes.

5          THE COURT:  She needs photos from five years before

6   treatment.

7          MR. DAVIS:  Right.  Your Honor, she is total adversed,

8   and has been since before her chemo, but she purported to us that

9   her oncologist took "before" photos knowing that hair loss might

10  be an issue and so we sent a request for any and all records, but

11  they didn't show up so now we are looking for them so we can --

12         THE COURT:  Okay.  I understand.  Her oncologist took

13  photos.

14                          (Telephonic interruption.)

15         THE COURT:  You know what?  You cannot make this up.

16         Okay.  Mr. Davis, I'm going to give you 30 days to cure

17  that after you receive the response from the oncologist.

18         MR. DAVIS:  Thank you, Your Honor.

19         MS. BRILLEAUX:  Deborah Curtis, also with the

20  TorHoerman law firm.  "Before" photos are not dated.

21         MR. DAVIS:  Your Honor, my understanding was that they

22  were.  Can we have seven days to work on that?  I believe we have

23  the dates for the photos and they comply with the time frame so

24  can we just have a week to get that nailed down?

25         THE COURT:  Okay.  This is what I'm going to do.  I'm

**OFFICIAL TRANSCRIPT**

1    going to grant 15 days so that you have seven days to do what

2    needs to be done to the photographs to cure that deficiency and

3    then defendants will have seven days.

4            I'm going to ask you, please, too, Mr. Davis, submit an

5    e-mail after you have cured that deficiency.  Thank you.

6            MR. DAVIS:  Okay.  Thank you.

7            MS. BRILLEAUX:  Next we have Cynthia Miller with

8    Allen & Nolte.  No PFS submitted.

9            MS. NOLTE:  Good morning, Your Honor.  This is

10   Jennifer Nolte for the plaintiff, Cynthia Miller.

11           We submitted a plaintiff fact sheet yesterday,

12   Doc ID 363199.

13           THE COURT:  Okay.  The Court is going to grant seven

14   days to defense counsel to review it.

15           MS. BRILLEAUX:  And, Your Honor, we would ask that

16   counsel e-mail it to us with that document number that she just

17   referenced on the record.

18           THE COURT:  Ms. Nolte, please send an e-mail.

19           MS. NOLTE:  We'll do that, Your Honor.

20           MS. BRILLEAUX:  Next is also Allen & Nolte.

21   Helen Brown.  This is no "before" photos from within five years

22   of treatment.

23           MS. NOLTE:  Yes.  This is Jennifer Nolte again on

24   behalf of Helen Brown.

25           I was able to speak with her last week, and she was

**OFFICIAL TRANSCRIPT**

10:33:19 (line 5)
10:33:33 (line 10)
10:33:45 (line 15)
10:33:56 (line 20)
10:34:08 (line 25)

1 able to track down a photo from her daughter from 2008.  We

2 submitted that yesterday.  And her chemo was in 2010.

3          THE COURT:  Okay.  The Court is going to grant seven

4 days for defense counsel to review.  Please send an e-mail to

10:34:23  5 defense counsel.

6          MS. NOLTE:  Yes, Your Honor.

7          THE COURT:  And Sheryl Jones.

8          MS. BRILLEAUX:  Yes, Your Honor.  This is also with

9 Allen & Nolte.  No "before" photos from within five years.

10:34:34  10          MS. NOLTE:  Yes, Your Honor.  Jennifer Nolte again.

11          We were again able to track down a photo from our

12 client over the weekend.  The photo is from 2006.  Her chemo was

13 in 2009.  And we submitted that photo yesterday.

14          THE COURT:  The Court is going to grant seven days to

10:34:49  15 defense counsel.

16          MS. BRILLEAUX:  Thank you, Your Honor.

17          Next we have Rojoan Cole.  No PTO 71A certification,

18 and that is the ESI production and search certification.

19          MS. FISCHER:  Good morning, Your Honor.

10:35:04  20 Kristie Fischer with Canepa Riedy Abele on behalf of Ms. Cole.

21          When we first received the deficiency notice, there

22 were a few other things on here.  Ms. Cole has been working with

23 us.  She has gotten everything cured except the PTO 71A

24 statement.  And the reason for that is she does have

10:35:20  25 electronically stored information on a Facebook account and she

**OFFICIAL TRANSCRIPT**

1    is just not having a very easy time getting that downloaded.

2           We have provided her instructions and asked her to have

3    a family member help her.  She indicated that her daughter was

4    trying to help her with that so that she can get that information

5    downloaded and to us, so we'd ask for some additional time for

6    her.

7           THE COURT:  The Court is going to grant 30 days to cure

8    that deficiency.

9           Rebekkah McKnight.

10          MS. BRILLEAUX:  That's also the same firm, Canepa Riedy

11   Abele.  And this is no present-day "after" photos.

12          MS. FISCHER:  Your Honor, Ms. McKnight had provided us

13   with photos that -- I think she was a little bit confused about

14   the dates.  She has some memory issues following chemotherapy.

15   But on May 9th we were able to upload several additional photos.

16          And then just yesterday, because -- when we uploaded

17   the photos on May 9th, we went over the dates that she had

18   provided for the previously uploaded photos, and that's when it

19   became apparent that she had been confused about the dates.  We

20   realized that when we corrected the dates, there were no "before"

21   photos.

22          She provided us with three "before" photos, two of

23   which are within five years prior to her first chemotherapy

24   treatment, and there are --

25          THE COURT:  But the problem is present-day photos.

**OFFICIAL TRANSCRIPT**

1    MS. FISCHER:  Those where the ones that we uploaded on
2    May 9th, present-day photos taken after the complaint was filed.
3        THE COURT:  Okay.
4        MS. FISCHER:  We believe the deficiency has been cured.
5        THE COURT:  I'm going to grant seven days and ask that
6    you send an e-mail to defense counsel advising them.
7        MS. BRILLEAUX:  I just want to clarify that this is not
8    for -- because my notes show her photos are from 2012.  I want to
9    clarify they should be her hair as it exists at the present day,
10   so 2019 photos, just to the extent that isn't clear.
11       MS. FISCHER:  There are now present-day 2019 photos.
12       MS. BRILLEAUX:  Thank you.
13       MS. FISCHER:  Your Honor, can I have the e-mail to send
14   that to?  Because the one that I have that I received an e-mail
15   from plaintiffs' liaison counsel was noncompliance@shb.com.
16       THE COURT:  Okay.  I'm going to ask that you send that
17   to the plaintiffs' steering -- plaintiffs' liaison counsel.
18   Claire Berg is here representing liaison counsel, and she -- you
19   can communicate with her.
20       MS. FISCHER:  Okay.
21       MS. BRILLEAUX:  Thank you.
22       Polly Rodgers is the next one.  This is no proof of use
23   and no "before" photos.
24       MS. FISCHER:  Good morning, Your Honor.  Kristie
25   Fischer again on behalf of Ms. Rodgers.

**OFFICIAL TRANSCRIPT**

1       With regard to the photos, Ms. Rodgers is a woman who
2   is in her 70s.  She has lived in poverty a great deal of her
3   life.  Her children are in various states of homelessness.  She
4   has been through several periods of homelessness herself.

10:38:24
5       She has reached out to family members to try to locate
6   photos, and, in fact, she provided me with a notarized statement
7   that she believed she had some photographs that were stored at
8   her mother's home.  Unfortunately, her mother moved out of the
9   home and her sister, Lela Ball [phonetic], took possession of
10:38:45
10  whatever contents of the home she felt she wanted.  She has told
11  Ms. Rodgers that she does not have -- that she didn't save any
12  photos of Ms. Rodgers when she cleaned out the mother's home.

13      And so I believe that she has exhausted her efforts to
14  contact family and friends who may have photos from before
10:39:05
15  chemotherapy.

16          THE COURT:  What about her proof of use?

17          MS. FISCHER:  With regard to proof of use, she was
18  treated by Dr. Suhail Obaji who, since treating her, has joined
19  the West Cancer Center.  We have another client who was also
10:39:23
20  treated by a doctor who later joined the West Cancer Center, and
21  it has been quite a battle between the former and the current
22  facility to get records.

23      Just yesterday, through the process of issuing a
24  deposition -- 30(b)(6) deposition notice and subpoena for the
10:39:42
25  other client, we received records from general counsel for West

**OFFICIAL TRANSCRIPT**

1  Cancer Center for the other client.  And so I responded to him
2  and said, you know, we received the same response for
3  Ms. Rodgers, and I asked him to double check.  Because after
4  receiving several "no records" responses for our other client,
5  yesterday we received an inch and a half of records which do
6  contain proof of use.

7         So yesterday afternoon he responded and told me he
8  would look into the issue for Ms. Rodgers as well, so I just ask
9  for some additional time on that issue.

10        THE COURT:  I'm going to grant some time on this one.
11 I'm going to grant 30 days.  And then we'll just report back in
12 at the next show cause hearing if this is not cured at that time.

13        MS. BRILLEAUX:  Thank you, Your Honor.  And we would
14 ask that it's 30 days on both the photo issues and the proof of
15 use.

16        THE COURT:  Okay.

17        MS. BRILLEAUX:  Thank you.

18        THE COURT:  Can we take a quick, brief break.

19        MS. FISCHER:  Your Honor, I had one question.

20        THE COURT:  Yes, ma'am.

21        MS. FISCHER:  Is it all right if I upload the statement
22 from Ms. Rodgers regarding her efforts to obtain photographs?

23        THE COURT:  Yes, ma'am.  You can upload it and we'll
24 just see what we're going to do with it.

25        I need to take a five-minute recess.  And it might be

**OFFICIAL TRANSCRIPT**

1  good news for everybody, because I think I'm being told that the

2  interstate is out so I can't make it to grandparents' day.  I'm

3  going to take a brief recess.

                                    (A recess was taken.)

5                          **AFTER THE RECESS**

6                                    (Call to order of the court.)

7          THE COURT:  I'm sorry to all of you on the phone.  I

8  was rushing out to try to get to grandparents' day, but it looks

9  like the interstate is not cooperating so I won't make it.

10         Let's go to the next one.

11         MS. BRILLEAUX:  Yes, Your Honor.  That is

12  Tavawyaha Batts.  And this is with the law firm of -- Cutter Law.

13  No PFS submitted.

14         MS. DOMER:  Hi, Your Honor.  Jennifer Domer from Cutter

15  Law.

16         THE COURT:  Ma'am, what's your last name again?

17  Jennifer what?

18         MS. DOMER:  Domer, D-o-m-e-r.

19         THE COURT:  Thank you.  Ms. Domer, please.

20         MS. DOMER:  We were just -- we were originally going to

21  submit a declaration, and then she called us informing us her

22  husband had passed away and she's been trying to deal with those

23  matters so she hasn't been able to comply with the PFS, but we

24  told her we would work with her on it.  I think if we could get a

25  little bit more time, I think we would be able to help her.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  The Court is going to grant you 30 days.

2          MS. DOMER:  Thank you, Your Honor.

3          THE COURT:  Angela Bufford.

4          MS. BRILLEAUX:  Yes, Your Honor.  This is also no PFS

5     submitted with Cutter Law.

6          MS. DOMER:  Hi.  Yes, Your Honor.

7          We also submitted this on Friday, 5-17.  We received a

8     notice from MDL centrality that it was submitted.  And then I

9     double-checked this morning, Your Honor, and it said it was not

10    submitted even though all of the documents were up there.  So we

11    went ahead and just hit "submit" again.  I'm not really sure what

12    happened.  Now we have two notices from MDL centrality.

13         MS. BRILLEAUX:  We have the same -- we received notice

14    that they had uploaded it, but on MDL centrality we did not see

15    it.

16         THE COURT:  The Court is going to grant seven days for

17    you-all to clear this up one way or the other.

18         MS. BRILLEAUX:  And we would ask the plaintiff's

19    counsel to e-mail us copies with the MDL centrality numbers.

20         THE COURT:  Thank you.

21         MS. DOMER:  Thank you.

22         THE COURT:  Then we had Mary Warren.

23         MR. INSOGNA:  Also no PFS submitted.

24         MS. DOMER:  We also discovered that Ms. Warren had

25    passed away.  We filed a suggestion of death on 5-15.  We've also

**OFFICIAL TRANSCRIPT**

```
 1  prepared a motion to substitute her son, who is a personal
 2  representative.  He has agreed that he wants to continue on
 3  behalf of his mother.  We sent that motion to substitute to
 4  defense counsel on the 16th, and I believe we'll be filing that
 5  today, as we have not received an objection, in which case he can
 6  go ahead and sign all the authorizations and get that fact sheet
 7  submitted.
 8             MS. CALLSEN:  We advised them no objection.
 9             THE COURT:  So there has been an advisement of no
10  objection.  I'm going to grant you 30 days to comply with the
11  deficiency.
12             MS. DOMER:  Thank you, Your Honor.
13             MS. BRILLEAUX:  The next case that we have is
14  Victoria Frye with Seithel Law, LLC.  This was no PFS submitted.
15             We received note this morning that they wish to dismiss
16  the case.  We would like to obviously move to dismiss it with
17  prejudice, but remind counsel that it would be a lot more
18  efficient to file the dismissals in advance of the hearing.
19             THE COURT:  This matter is dismissed with prejudice.
20             MS. BRILLEAUX:  Kathrine Willett.  No PFS submitted.
21  Also with Seithel.
22             THE COURT:  Ms. Seithel, are you on the phone?
23             (No response.)
24             THE COURT:  Katherine Willett.
25             MS. SEITHEL:  I'm sorry.  This is Lynn Seithel for
```

10:44:50
10:45:03
10:45:19
10:45:36
10:45:51

**OFFICIAL TRANSCRIPT**

1    Seithel Law, LLC for Ms. Frye.

2         THE COURT:  No -- well, I thought -- that matter has

3    been dismissed with prejudice, right?

4         MS. SEITHEL:  Oh, we -- I'm sorry.  I had a phone

*10:46:14*    5    difficulty.  I apologize.

6         This case has a duplicate filed case and we're amenable

7    to the Seithel Law, LLC complaint being dismissed, and we'll

8    notice appearance on the prior case filed.

9         THE COURT:  So that is -- that's Victoria Frye or

*10:46:36*    10   Katherine Willett?

11        MS. SEITHEL:  I'm sorry, I thought we were on

12   Victoria Frye.

13        THE COURT:  That matter has been dismissed with

14   prejudice, right?

*10:46:45*    15        MS. BRILLEAUX:  As of this morning, yes, Your Honor.

16        THE COURT:  Now let's talk about Katherine Willett.

17        MS. BRILLEAUX:  No PFS submitted, Your Honor.

18        MS. SEITHEL:  We submitted a PFS for -- a complete PFS

19   for Ms. Willett yesterday on MDL centrality, and it is

*10:47:04*    20   Document ID 363950.

21        MS. BRILLEAUX:  We would ask that counsel e-mail a copy

22   of the documents uploaded with the reference numbers within seven

23   days.

24        THE COURT:  I'm going to grant seven days to defense

*10:47:18*    25   counsel to review the same.

**OFFICIAL TRANSCRIPT**

1        MS. BRILLEAUX:  Thank you.

2        Also with Seithel Law, Mary Meadows.  This is undated

3    photographs and no PTO 71A ESI certification.

4        MS. SEITHEL:  And so -- in the *Meadows* case, when

10:47:40  5    Ms. Meadows originally contracted with Seithel Law, she provided

6    us with photographs but she passed away prior to our filing suit.

7    And her children did the probate paperwork, and we submitted the

8    PFS and the photographs that Ms. Meadows had supplied to us.

9        We have been working on the dates, but the children

10:48:16  10    were unfamiliar with the photograph other than general time

11    frame.  I do not have photographs -- I do not have dates of the

12    "before" photograph.

13        The "after" photograph, I believe we supplied a date,

14    but I can supply a date on that because she submitted that to us.

10:48:38  15    She took those pictures that day and sent them to us.

16        THE COURT:  So I think what I'm hearing is her children

17    can give you general parameters about the dates, but cannot give

18    you a very specific date?  Can they give us years?

19        MS. SEITHEL:  I can give a specific -- or a relatively

10:49:07  20    specific date for the "after" photograph because she took a

21    selfie and sent that to my law firm that day.  But for the before

22    photographs, they were in a general time period.

23        THE COURT:  What does "general time period" mean?

24    "This looks like it's probably 2012"?  Or "this was at a -- I

10:49:31  25    don't know, bat mitzvah or somebody's wedding, and that was

**OFFICIAL TRANSCRIPT**

1  sometime in 2011"?  Can they do that?  Or is it that they just

2  have no idea?

3        MS. SEITHEL:  I was asking them more about specific

4  dates, so if we could have 30 days, we can try to narrow that

10:49:53  5  down because I --

6        THE COURT:  All right.  I'm going to grant 30 days, but

7  the other thing is the 71A.  Did she have a social media -- I

8  think -- this is what I would suggest, ma'am, is that you talk to

9  liaison counsel, because I think, as to the electronic -- the

10:50:18  10  social media postings, or whatever, and that 71A certification,

11  perhaps liaison counsel can help you navigate that area in light

12  of your -- the patient's death.

13        MS. BERG:  Your Honor, this is Claire Berg.  I can

14  reach out to her to help her with that.

10:50:44  15        MS. BRILLEAUX:  We would ask for 30 days to cure both

16  deficiencies.

17        THE COURT:  Sure.

18        MS. BERG:  Your Honor, may I go back to 28,

19  Victoria Frye.  I just want to make sure that any dismissal will

10:50:55  20  not affect the duplicate case.

21        THE COURT:  As I appreciate it, there are two cases,

22  and this would reserve any rights in the duplicate case.

23        MS. BERG:  Thank you, Your Honor.

24        MS. BRILLEAUX:  Your Honor, the next case that I have

10:51:09  25  is Daisy Lawson with Morris Bart, LLC.  This is no proof of use

**OFFICIAL TRANSCRIPT**

1   and no "before" photos.

2          MS. GODSHALL:  Good morning, Your Honor.  This is

3   Lauren Godshall for Morris Bart.

4          With Ms. Lawson we did get a text from her sister this

5   morning.  We uploaded that to MDL centrality.  I brought a copy

6   with me.  So we do have a photo before.

7          As to proof of use, we've been working with University

8   Health Conway.  They promised us today, unfortunately, instead of

9   yesterday.  They promised us the pharmacy would send records.  If

10  I could get seven days, I think I could cure this.

11         THE COURT:  I'm going to grant 15 days so that you have

12  the seven days to cure it and then defense counsel has an

13  opportunity to review that.

14         Would everyone please put your phone on mute until we

15  call your client.

16         MS. BRILLEAUX:  Your Honor, we would also ask, just

17  consistent with your prior rulings, that we get e-mailed a copy

18  with the document reference once it's uploaded.

19         THE COURT:  Yes.

20         MS. BRILLEAUX:  The next case is Patsy Rice.  No

21  "before" photos.

22         MS. GODSHALL:  Your Honor, Lauren Godshall again for

23  Ms. Rice.

24         We submitted "before" photos.  We got a "before" photo

25  sent from her sister as well -- thank goodness for sisters --

**OFFICIAL TRANSCRIPT**

1    yesterday, and we submitted that to MDL centrality.  I'm happy to

2    e-mail that.

3            THE COURT:  I'll grant seven days for defendants.

4            MS. BRILLEAUX:  I just want to confirm on the record

10:52:41  5    for this case, and also for Ms. Lawson, that these are within

6    five years of treatment.

7            MS. GODSHALL:  Yes.

8            MS. BRILLEAUX:  Joann Spurlock.  No "before" photos.

9            MS. GODSHALL:  Ms. Spurlock's son -- again, Lauren

10:52:57  10   Godshall for Ms. Spurlock.

11           Ms. Spurlock's son sent us photos.  We got several

12   within five years of her treatment.  We submitted them to MDL

13   centrality yesterday, and we can e-mail those to liaison counsel

14   and defense counsel.

10:53:11  15           THE COURT:  The Court is going to grant seven days.

16           MS. BRILLEAUX:  Thank you, Your Honor.

17           And then the last one for Morris Bart is Daisy Ware.

18   This is no PTO 71A certification.

19           MS. GODSHALL:  We did get a PTO 71A from her signed.

10:53:26  20   We did upload it yesterday, and I'm happy to again e-mail it to

21   everyone.

22           THE COURT:  The Court is going to grant seven days to

23   confirm compliance.

24           MS. GODSHALL:  Thank you.

10:53:38  25           MR. INSOGNA:  Your Honor, the next case is Marie Lewis

**OFFICIAL TRANSCRIPT**

1    with the Reich and Binstock firm.  This is no PFS submitted.

2              THE COURT:  Okay.  Who do we have?  Ms. Ephron, are you

3    on the phone?

4              MS. EPHRON:  Yes, Your Honor, this is Melissa Ephron

10:53:54    5    for Reich and Binstock.

6              This is a dual rep issue.  Ms. Lewis signed with

7    Fears Nachawati.  We are fine with --

8              THE COURT:  I'm having trouble hearing you, ma'am.

9              MS. EPHRON:  I apologize.

10:54:04   10              This is a dual rep issue.  This client is also

11    represented by Fears Nachawati.  We're fine with dismissal of our

12    case so long as that does not affect the filing she has with

13    Fears Nachawati.

14              THE COURT:  So this is a dual representation issue and

10:54:21   15    this client is represented by Fears Nachawati?

16              MS. EPHRON:  Yes, Your Honor.

17              THE COURT:  You are okay with dismissing this case with

18    prejudice as long as her rights in the other case are preserved.

19    Is that correct?

10:54:40   20              MS. EPHRON:  Yes, Your Honor.

21              THE COURT:  This matter is dismissed with prejudice.

22              MS. BRILLEAUX:  The next case I have with Reich and

23    Binstock is Doreen Doye.  This is no "before" photos and no

24    CMO 12A process has been instituted for the purpose of

10:55:00   25    determining product ID.

**OFFICIAL TRANSCRIPT**

1    MS. EPHRON:  Your Honor, we uploaded her PTO 71A --

2  basically her deficiencies -- most of them with -- all of them

3  have been cured.  We uploaded "before" and "after" photos with

4  the photo declaration on 4-3-19.  We also made a CMO 12A

10:55:21    5  submission on 3-29-19.

6    MS. BRILLEAUX:  Your Honor, we had checked at 5:00 p.m.

7  yesterday.  We have no "before" photos and no proof that the

8  CMO 12A process has been initiated.

9    THE COURT:  So we have no "before" photos.  Now, when

10:55:37   10  did you say you uploaded "before" photos?

11    MS. EPHRON:  4-3-19.  And I checked MDL centrality this

12  morning and they are there.

13    THE COURT:  Okay.

14    MS. BERG:  Your Honor, I can set up a meet-and-confer

10:55:51   15  and figure out what the issue is.

16    MS. BRILLEAUX:  I appreciate it.  If plaintiff's

17  counsel is taking the position that they are there and were

18  uploaded some time ago, we would ask that they just send an

19  e-mail with the document number.  And that way, if it's there, we

10:56:05   20  can find it.  If it's not, we can work it out.

21    THE COURT:  The Court is going to grant seven days for

22  defense counsel to review this.  I'm going to ask you, ma'am --

23  Ms. Ephron, that you send an e-mail today.

24    MS. BRILLEAUX:  Your Honor, the other deficiency, too.

10:56:22   25  We have no evidence that they have initiated the product ID

**OFFICIAL TRANSCRIPT**

1   determination process under 12A.

2           MS. EPHRON:  I can reforward that e-mail as well.  That

3   was done on 3-29-19.

4           THE COURT:  Okay.

10:56:35
5           MS. BRILLEAUX:  Counsel, if you could please send that

6   to liaison counsel for the plaintiffs and also defense counsel,

7   and we can take it from there.

8           MS. EPHRON:  Okay.

9           MS. BRILLEAUX:  That is seven days, Your Honor?

10:56:45
10          THE COURT:  Seven days.

11          MS. BRILLEAUX:  Thank you.

12          The next case I have is Sandra Crump with Summers &

13  Johnson.  This is undated photographs.

14          THE COURT:  Mr. Summers?

10:56:56
15          MR. JOHNSON:  Actually it's Aaron Johnson for the

16  plaintiff, Your Honor.

17          We have cured that deficiency.  We've dated the

18  photographs, and I just need to e-mail defense counsel so they

19  can confirm that.

10:57:11
20          THE COURT:  The Court is going to grant seven days to

21  confirm compliance, but you are going to send the e-mail today,

22  please.

23          MR. JOHNSON:  Yes, Your Honor.

24          THE COURT:  All right.

10:57:20
25          MS. BRILLEAUX:  Thank you, Your Honor.

**OFFICIAL TRANSCRIPT**

1          Ruth Fuggins.  This is "before" photos are not dated.

2          MR. JOHNSON:  Your Honor, Aaron Johnson again.

3          The same issue with this client.  This is my first

4    experience with the deficiency process, and I did not know that I

5    needed to e-mail defense counsel of the cure.  That is all I need

6    to do in this case also.

7          MS. BRILLEAUX:  Your Honor, we did check as of 5:00

8    yesterday evening, and the deficiency had not been cured as we

9    are able to view it on MDL centrality.

10          MR. JOHNSON:  Perhaps I need some clarification, then.

11    Maybe we can do it off the hearing on how we date these

12    photographs, because we followed what we believe the protocol

13    was.  But we can provide the dates.

14          THE COURT:  Okay.  Mr. Johnson, this is what -- I'm

15    going to ask that you contact liaison counsel, Ms. Berg, who is

16    here, and I think she'll be happy to work with you so that you

17    can clarify exactly how that process needs to take place.

18          But if they are loaded onto MDL centrality and it's a

19    matter with just working with the -- you know, uploading the

20    date, I'm going to grant seven days for this process to work

21    through.  And I ask that you send an e-mail today.

22          Then we have Angela Harris with your firm.

23          MS. BRILLEAUX:  Same issue, Your Honor.

24          THE COURT:  Dating photos?

25          MS. BRILLEAUX:  Correct, "before" photo not dated.  We

**OFFICIAL TRANSCRIPT**

1   checked last night and it's still not there.  This may be a

2   technical issue that we can resolve within seven days.

3           THE COURT:  Is that the same issue, Mr. Johnson?

4           MR. JOHNSON:  That is, Your Honor.  We believe the

10:59:02   5   photographs are there.

6           THE COURT:  Okay.  I'm going to grant seven days.  If

7   this is what's happening, it sounds like it is more of a

8   technical problem.

9           MS. BRILLEAUX:  Yes, Your Honor.

10:59:09   10          And I'll represent to you, Your Honor, just for

11  expediency, the next three cases, Georgia James, "before" photo

12  not dated; Marilyn Kennedy, "before" photo not dated; and Gale

13  Sheppard, photos are not dated.

14          THE COURT:  Mr. Johnson, I'm just going to ask you is

10:59:25   15  your answer the same as to all of these?

16          MR. JOHNSON:  Yes, Your Honor.

17          THE COURT:  I'm going to grant you seven days.  Please

18  get with liaison counsel and send an e-mail today to defense

19  counsel.

10:59:36   20          MR. JOHNSON:  Judge, can you tell me liaison counsel's

21  name who was there today?

22          MS. BERG:  Sure.  It's Claire Berg.

23          THE COURT:  Claire Berg.

24          MR. LAMBERT:  And this is Palmer Lambert.  Claire Berg

10:59:51   25  is an associate at my firm.

**OFFICIAL TRANSCRIPT**

1    But for Mr. Johnson, you can e-mail

2  taxotere@bkc-law.com, and that e-mail goes to both Ms. Barrios's

3  office and to my office.

4    MR. JOHNSON:  All right.  Thank you all.

5    THE COURT:  Thank you, Mr. Johnson.

6    MS. BRILLEAUX:  Thank you, Your Honor.

7    The next case is with Marc J. Bern & Partners.  It is

8  Sharon Anthony.  No PFS submitted.

9    MR. KESSLER:  Good morning, Your Honor.  Gordon Kessler

10  with Marc J. Bern & Partners.

11    A plaintiff fact sheet was submitted yesterday.

12  Yesterday afternoon an e-mail was sent to the defense stating as

13  much.

14    THE COURT:  Okay.  The Court is going to grant seven

15  days for defense counsel to confirm.

16    MS. BRILLEAUX:  Thank you, Your Honor.

17    Yvonne Irvine.  Same issue, no PFS submitted.  Same

18  firm.

19    MR. KESSLER:  Your Honor, this is a matter that I

20  suppose we should have submitted a declaration on.  We have a

21  private investigator searching for Ms. Irvine but have not heard

22  back.

23    THE COURT:  This matter is dismissed with prejudice.

24    MS. BRILLEAUX:  Thank you, Your Honor.

25    Elizabeth Reed.  No PFS submitted.

11:00:11 (line 5)
11:00:28 (line 10)
11:00:36 (line 15)
11:00:49 (line 20)
11:00:59 (line 25)

**OFFICIAL TRANSCRIPT**

1    MR. KESSLER:  Your Honor, in the interest of time, the

2    next three plaintiffs, Ms. Reed, Ms. Spates, and Ms. Swan White,

3    have all had plaintiff fact sheets submitted within the last

4    week.  We e-mailed defense counsel -- we did not e-mail defense

5    counsel on these.  They were uploaded in the last 24 hours.

6    THE COURT:  Okay.  The Court is going to grant seven

7    days to confirm those.

8    MS. BRILLEAUX:  Which cases?

9    THE COURT:  That's Elizabeth Reed, Marta Spates, and

10   Karmen Swan White.

11   MR. INSOGNA:  Your Honor, the next case also with

12   Marc J. Bern & Partners is Shara Troutman.  No PFS submitted.

13   MR. KESSLER:  Your Honor, this is one we should have

14   submitted a declaration on.

15   THE COURT:  This matter is dismissed with prejudice.

16   MS. BRILLEAUX:  Thank you, Your Honor.

17   Debra Tucker.  No PFS submitted.

18   MR. KESSLER:  There is a dual representation issue with

19   this matter.  We just got it resolved over the last few days so

20   this case can be dismissed.

21   THE COURT:  This matter is dismissed with prejudice.

22   MS. BRILLEAUX:  Thank you, Your Honor.

23   Sheryl Weldon.  No PFS submitted.

24   MR. KESSLER:  A plaintiff fact sheet was submitted

25   yesterday in this matter as well as the next plaintiff, which is

11:01:18
11:01:30
11:01:45
11:02:00
11:02:11

**OFFICIAL TRANSCRIPT**

1  Elizabeth Yancey.

2          THE COURT:  The Court is going to grant seven days on

3  those and request that you send an e-mail.

4          As to -- let me go back to Ms. Debra Tucker.  I

5  understand this is dual representation.  I'm going to dismiss

6  this case with prejudice but certainly reserve all rights in the

7  companion case -- or the other case.

8          MS. BRILLEAUX:  Thank you, Your Honor.

9          Barbara Anderson also with Marc J. Bern & Partners.

10  This is no authorizations for the release of records, no CMO 12A

11  process initiated, and no PTO 71A certification.

12          MR. KESSLER:  "Before" and "after" photos and an

13  amended plaintiff fact sheet were uploaded on May 17th.

14          Regarding the authorization, the declaration page, and

15  things that require signatures, Ms. Anderson is blind and it is

16  kind of taking a little bit of time.  She told us that she mailed

17  them back.  We have not received them yet.

18          THE COURT:  I'm going to grant 30 days.  It seems that

19  you might need to visit with her.

20          MS. BRILLEAUX:  Thank you.

21          Just to revisit the CMO 12A deficiency, we show that

22  plaintiff's counsel has not started that process of determining

23  product ID, and that deficiency also needs to be cured.

24          THE COURT:  Mr. Kessler, have you started that process?

25          MR. KESSLER:  I believe we have, but if it was not

**OFFICIAL TRANSCRIPT**

1   done, it was in error and we'll get on that today.

2          THE COURT:  Thank you.  You have 30 days.

3          MS. BRILLEAUX:  Thank you, Your Honor.

4          MR. INSOGNA:  The next case also with Marc J. Bern is

*11:03:45*

5   Hope Brownewell.  The plaintiff fact sheet is not substantially

6   complete.

7          The issue was no proof of injury.  Some photos were

8   uploaded, I believe yesterday, but the only photos we have are

9   within six months of chemotherapy so we need photos at present

*11:04:02*

10   day.

11          MR. KESSLER:  Your Honor, the issue here -- we e-mailed

12   defense this morning.  I believe it was raised earlier in the

13   hearing.  Ms. Brownewell passed away about two months before this

14   case was initiated.  We had refiled the case earlier today as a

*11:04:22*

15   separate survivalship action on behalf of her husband, so we ask

16   defense to dismiss the case without prejudice.

17          THE COURT:  But I think the issue is current

18   photographs.  And I understand that she is now deceased, but we

19   need photographs outside of the six-months after she completed

*11:04:44*

20   chemotherapy.

21          MR. KESSLER:  Your Honor, I request additional time to

22   go through the photos and ask Ms. Brownewell's widower if he does

23   have any photos available additionally or if he has any family

24   members that do.

*11:04:59*

25          THE COURT:  I'm going to grant 30 days.

**OFFICIAL TRANSCRIPT**

<pre>
      1              MS. BRILLEAUX:  Thank you, Your Honor.

      2              The next case is Carol Flanagan.  This is no signed

      3     authorizations, no signed PTO 71A certification, and also no

      4     CMO 12A process has been initiated by counsel.

11:05:17   5              MR. KESSLER:  This is another one we should have

      6     submitted a declaration on, Your Honor.  I'm sorry.  In the

      7     future we will submit them.

      8              THE COURT:  This matter is dismissed with prejudice.

      9              MS. BRILLEAUX:  Thank you, Your Honor.

11:05:26  10              Deena Frazier.  No authorizations and no PTO 71A

     11     certification.

     12              MR. KESSLER:  Your Honor, we've made multiple attempts

     13     to get the missing documents from Ms. Frazier.  She told us she

     14     e-mailed them back to us and that she was going to fax them to

11:05:43  15     us, and as of today she said she was going to fax them again.  We

     16     have not received them.  We ask for an additional 15 days to get

     17     these documents.

     18              THE COURT:  I'm going to give you seven days to get the

     19     documents and seven days for defense counsel to review.

11:05:57  20              MR. KESSLER:  Thank you.

     21              MS. BRILLEAUX:  Jennifer Jennings also with Marc J.

     22     Bern.  Counsel has not started the CMO 12A process.

     23              THE COURT:  That's the same thing for Jennifer

     24     Jennings, Romona Jimenez, and Gennell King?

11:06:13  25              MS. BRILLEAUX:  Yes, exactly.
</pre>

**OFFICIAL TRANSCRIPT**

1    MR. KESSLER:  Yesterday we sent CMO 12A e-mails in for

2  Jennings and King, and on May 17th we sent a CMO 12A e-mail for

3  Ms. Jimenez.

4    MS. BRILLEAUX:  Counsel, can you tell me the dates you

*11:06:36*  5  sent those e-mails?

6    MR. KESSLER:  Jennings was yesterday, May 20th.  King

7  was yesterday, May 20th.  And Jimenez was May 17th.

8    MS. BRILLEAUX:  Okay.  Has anything been uploaded to

9  MDL centrality?

*11:06:53*  10    MR. KESSLER:  I would have to check, but we can upload

11  it.

12    MS. BRILLEAUX:  Thank you, Counsel.  That is the way

13  that we monitor these.  So if you are alleging that you cured

14  deficiencies, if you could also upload it to MDL centrality and

*11:07:06*  15  e-mail defense counsel advising that you have cured.

16    THE COURT:  I'm going to order that that be done within

17  seven days, the e-mail and uploading that to MDL centrality.

18    MS. BRILLEAUX:  Thank you, Your Honor.

19    The last one that we have for Marc J. Bern is

*11:07:24*  20  Denise Lozada.  This is no signed authorizations, no PTO 71A

21  certification, and no CMO 12A process initiated.

22    MR. KESSLER:  Your Honor, this is another one we should

23  have submitted a declaration in.  We've made multiple attempts to

24  contact the client.

*11:07:42*  25    THE COURT:  Wait.  What?

**OFFICIAL TRANSCRIPT**

1        MS. BRILLEAUX:  Declaration.

2        THE COURT:  You had --

3        MR. KESSLER:  The declaration of attempt.  No defense.

4        THE COURT:  This matter is dismissed with prejudice.

11:07:57  5        Okay.  I believe that's it because I have sent Fears

6   Nachawati --

7        MS. BRILLEAUX:  Would it be possible to get Fears back

8   on the phone and knock these out or would you rather reset them

9   for another day?

11:08:10  10        MS. BERG:  Your Honor, we tried to get in contact with

11  them to get back on the phone and have been unable to reach them

12  so maybe it would just be best to push it to another day.

13        THE COURT:  All right.  Thank you.  We can hang up the

14  phone now.

11:08:22  15        And if we can -- you tried, Claire?

16        MS. BERG:  Yes.

17        MR. INSOGNA:  Your Honor, just to the extent that the

18  Bachus & Schanker and Fears Nachawati plaintiffs -- I believe you

19  heard there were many hundreds before today, and it is now down

11:08:40  20  to 100 and some.  To the extent that they have submitted

21  declarations or statements of no defense to dismissal before

22  today's conference, we just want to confirm that they can't

23  retract those.

24        THE COURT:  No.

11:08:53  25        MR. INSOGNA:  It sounds crazy, Your Honor.

**OFFICIAL TRANSCRIPT**

```
 1              MS. CALLSEN:  It has happened.
 2              MR. INSOGNA:  It has happened.
 3              THE COURT:  Okay.  Is Bachus & Schanker -- where did
 4    they go?
 5              MS. BARRIOS:  Your Honor, unfortunately we released
 6    them because we thought your time was limited.
 7              And I did talk -- I did speak with Chris Elliott about
 8    some observations that we had in chambers, and explained the law
 9    to him.  And so he is hopeful that when he appears the next time
10    before Your Honor -- perhaps telephonically -- to do a show cause
11    hearing, that at least half of the cases will be taken care of by
12    using the dismissal and our various forms.
13              MS. BRILLEAUX:  Just to confirm, we are not able to get
14    them back to finish up today?
15              MS. BARRIOS:  They left for the airport.
16              THE COURT:  Let's see if we can --
17              MS. BRILLEAUX:  Because we have hearings tomorrow, I
18    wanted to double-check that counsel may be --
19              THE COURT:  If they are available, I'm available.
20              MS. BRILLEAUX:  It would be easier than flying
21    everybody back for another date.
22              THE COURT:  Why don't you see if you can get ahold of
23    them.
24                            (A pause in the proceedings and
                               then adjournment.)
25
```

11:09:07 (line 5)
11:09:25 (line 10)
11:09:44 (line 15)
11:09:55 (line 20)

**OFFICIAL TRANSCRIPT**

1                      *  *  *  *

2                     CERTIFICATE

3

4        I hereby certify this 22nd day of May, 2019, that the

5   foregoing is, to the best of my ability and understanding, a true

6   and correct transcript of the proceedings in the above-entitled

7   matter.

8

9                                   /s/ Mary V. Thompson

10                            _____
                                 Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**