UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  TAXOTERE (DOCETAXEL)      MDL No. 2740
PRODUCTS LIABILITY LITIGATION

    SECTION: "N" (5)

THIS DOCUMENT RELATES TO:

*JULIE CLARK*
Case No.: 18-07024

## SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF OF COURT'S ORDER DISMISSING PLAINTIFF'S CLAIM WITH PREJUDICE FOR FAILURE TO COMPLY WITH THE JANUARY 18, 2019 SHOW CAUSE ORDER

Plaintiff should have submitted a Plaintiff Fact Sheet ("PFS") at any time in the nearly nine months her case was pending.  She failed to do so with multiple notices of deficiency from Defendants and an Order to Show Cause from this Court.  It was not until May 3, 2019 – 105 days after the Show Cause hearing, 281 days after filing her lawsuit, and only *after* her case was dismissed – that Plaintiff first produced a PFS in this litigation.  Counsel confusion in the few days surrounding the January 18, 2019 Show Cause hearing does not warrant granting Plaintiff's Motion.  This is particularly true where:

- At no time in the months after Bachus & Schanker entered its appearance did Plaintiff submit a PFS or otherwise prosecute her action; and

- Plaintiff has materially failed to comply with her other discovery obligations and to disclose the existence of discoverable information.

For these reasons, and because Plaintiff has failed to show: the Motion corrects manifest error of fact or law, that newly discovered evidence was previously unavailable, or that intervening change in the controlling law exists, Plaintiff's Motion for Reconsideration should be denied.

I.     **BACKGROUND**

Plaintiff filed her case on July 26, 2018.  Because Ms. Clark failed to submit a PFS as

required by Amended PTO 22, Sanofi identified Plaintiff as deficient on the November 20, 2018 Notice of Non-Compliance.  *See* 11/20/18 e-mail from Bieri to Barrios and Lambert, attached as **Exhibit A**.  Plaintiff did not submit a PFS in response to the Notice, and her case was identified on the Notice of Non-Compliance filed with this Court on January 4, 2019 (Rec. Doc. 5706.)  Again, she took no action, and her case was heard at the January 18, 2019 Show Cause hearing.

At the January 18, 2019 Show Cause hearing, Ms. Clark was granted 15 additional days to comply with her PFS obligation:

> [MS. BRILLEAUX]: The next one I have is Julie Clark, also with the TorHoerman law firm.
>
> MR. DAVIS:  Your Honor, Ms. Clark has hired new counsel.  I have agreed to a substitution.  I believe they filed a motion to substitute counsel, but I don't have any authority in this case.  **New counsel is aware of the pending status today, and I believed they were handling it.**
>
> MS. BARRIOS:  Do you know who new counsel is?
>
> MR. DAVIS:  I'm sorry, Your Honor?
>
> MS. BARRIOS:  This is Dawn Barrios.  Do you know who new counsel is?
>
> MR. DAVIS:  I'm sorry, Your Honor, I did not think this was up today, so I did not double-check that information.  I can find it in the next few minutes, but I don't have it off the top of my head.  I apologize.
>
> THE COURT:  **Okay.  I'm going to grant 15 days because under any circumstance, this should have been done, and new counsel needs to know that.**

January 18, 2019 Show Cause Hr'g Tr. at 18:4-21 (emphasis added), relevant portions attached as **Exhibit B**.  Plaintiff did not comply.

On April 12, 2019, consistent with the practice agreed to by liaison counsel and custom in this litigation, Sanofi requested the Court dismiss Plaintiff's case for failure to submit a PFS in compliance with the Court's Show Cause Order.  *See* 4/12/19 e-mail from Brilleaux to Schott, attached as **Exhibit C**.  On April 23, 2019, Plaintiff's case was dismissed with prejudice. (Rec.

2

Doc. 6802) Ten days later, on May 3, 2019, Plaintiff first uploaded a PFS to MDL Centrality. (*See* Rec. Doc. 7106-1, Ex. 1) On May 17, 2019, Plaintiff filed the instant Motion for Reconsideration.

## II. LEGAL STANDARD

"The Fifth Circuit favors denial of Rule 59(e) motions to amend or alter." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 1782841, at *5 (E.D. La. Apr. 12, 2018) (citing *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2. F.3d 606, 610-11 (5th Cir. 1993); *In re Self*, 172 F. Supp. 2d 813 (W.D. La. 2001)). Rule 59(e) motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). The Fifth Circuit has stated repeatedly that "Rule 59(e) relief is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2011 WL 6130788, at *3 (E.D. La. Dec. 7, 2011) (citing *Schiller v. Physicians Res. Grp Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Marseilles Homeowners Condo. Ass'n Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008)). "In exercising its discretion under Rule 59(e), the court 'must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts.'" *Id.* at *4 (quoting *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993)). In balancing these interests, courts consider the following factors: "'(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was [previously] available to plaintiffs . . . , and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened.'" *Id.* (quoting *Ford v. Elsbury*, 32 F.3d 931, 937-38 (5th Cir. 1994)). Under Rule 59(e), a "'[c]ourt's

3

reconsideration of a prior order is an extraordinary remedy which should be used sparingly.'" *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 1782841 at *5 (quoting *Flynn v. Terrebonne Par. Sch. Bd.*, 348 F. Supp. 2d 769, 771 (E.D. La. 2004)). Plaintiff has not demonstrated she is entitled to relief under Rule 59(e). Plaintiff's Motion should be denied.[1]

## III.  ARGUMENT

### A. Substitution Counsel Was On Notice Of The Deficiency And Failed To Cure

Plaintiff failed to submit a PFS at any time in the nine months her case was pending despite: (1) being notified of the deficiency by Defendants on two separate occasions before the January 18 Show Cause hearing,[2] (2) a Show Cause Order of this Court mandating compliance within 15 days; and (3) the passage of more than three months after her new counsel entered an appearance.

Less than a week after Ms. Clark was identified as subject to the upcoming Show Cause hearing,[3] Bachus & Schanker discussed the case with TorHoerman Law.[4] Consistent with such a

---

[1] In the alternative, Plaintiff argues that if Federal Rule of Civil Procedure 60(b) applies, Plaintiff's case should be reinstated. As an initial matter, Rule 60 does not apply. *Gonzalez v. Aztex Advantage*, 547 F. App'x 424, 427 n.4 (5th Cir. 2013) (all postjudgment motions that call into question the correctness of the judgment and are served within twenty-eight days of judgment's entry are treated as FED. R. CIV. P. 59(e) motions). Even if it does, however, Plaintiff has certainly not met the standard to allow relief. This Court has denied previous motions to reconsider under Rule 60(b) when a plaintiff failed to comply because "Plaintiff [] was on notice that her case could be dismissed if she failed to fulfill her obligations related to the Plaintiff Fact Sheet." *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL 2740, 2019 WL 250860, at *3 (E.D. La. Jan. 17, 2019). Moreover, the Fifth Circuit has stated courts "should only grant Rule 60(b)(6) motions if extraordinary circumstances are present. . . . **Missing a deadline, however, is not an extraordinary circumstance**." *Rayford v. Karl Storz Endoscopy Am., Inc.*, 740 F. App'x 435, 437 (5th Cir. 2018) (internal quotations and citations omitted) (emphasis added).

[2] There is an undercurrent in Plaintiff's Motion that Sanofi failed to provide notice to Plaintiff and her counsel. This is simply inaccurate. Sanofi followed the PTO 22 and PTO 22A process.

[3] The January 4, 2019 Notice of Non-Compliance listed plaintiffs alphabetically and without specification of counsel. (Rec. Doc. 5706-1 at 4)

[4] (*See* Rec. Doc. 7106-4 at 1 ("On January 10, 2019, Bachus & Schanker learned that there was issue with dual representation. . . . Melanie Sulkin, attorney at Bachus & Schanker, LLC contacted TorHoerman Law, LLC on January 10, 2019, to tell them that Plaintiff wished to remain a client of Bachus & Schanker, LLC.")).

4

discussion, TorHoerman Law advised the Court at the January 18, 2019 Show Cause hearing that "[n]ew counsel is aware of the pending status today . . . ."[5]  *See* January 18, 2019 Show Cause Hr'g Tr. at 18:9-10, relevant portions attached as **Exhibit B**.  The Court granted Plaintiff and her new counsel fifteen (15) days to cure the deficiency.  *Id.* at 18:19-21.  Just three days later, Bachus & Schanker formally moved to appear in Plaintiff's case. (Rec. Doc. 5966)  The Motion was granted the next day. (Rec. Doc. 5971)

Plaintiff now argues her case should be reopened because counsel confusion existed in the few days surrounding the January 18, 2019 Show Cause hearing. (Rec. Doc. 7106-4 at 1-2)  Counsel confusion (for the period of a few days) does not justify reopening Plaintiff's case under the circumstances presented.

The facts show (1) Plaintiff had been on notice of non-compliance just days earlier; (2) that new counsel was aware of the deficiency; and (3) that new counsel was present at the show cause hearing.  Further, Plaintiff now admits new counsel had a "completed Plaintiff Fact Sheet" "well in advance of the [January 18, 2019] show cause hearing." (Rec. Doc. 7106-4 at 2)  If true, the PFS should have been submitted to Defendants when received or, at the latest, during the fifteen-day compliance period.[6]  However, Plaintiff did not provide a PFS until May 3, 2019 – 101 days after Bachus & Schanker substituted as counsel – and only after her case was dismissed.  Even giving Plaintiff the utmost benefit of the doubt, she failed to comply with this Court's Order.

Defendants, particularly in the context of an MDL, will suffer unfair prejudice if the case is reopened.  The information called for in the PFS is basic to Plaintiff's case.  Without it, Plaintiff

---

[5] In fact, "new counsel" – Bachus & Schanker – was present at the January 18, 2019 Show Cause hearing. *See* January 18, 2019 Show Cause Hearing Transcript at 24:10-13, relevant portions attached as **Exhibit B** ("Chris Elliott for Bachus & Schanker").

[6] Despite that Plaintiff's compliance period ended on February 4, 2019, Sanofi waited more than three months, until April 12, 2019, to seek dismissal for post-hearing compliance.

5

4836-9652-0343

cannot establish her claim against Defendants. Moreover, Plaintiff's failures substantially prejudice Defendants in evaluation of Plaintiff's claim and unreasonably hamper the defense of this litigation. *In re Phenylpropanolamine Prod. Lib. Litig.*, 460 F.3d 1217, 1235-37 (9th Cir. 2006) ("Failing to produce documents as ordered is considered sufficient prejudice. . . . The law also presumes prejudice from unreasonable delay."); *see also In re Guidant Corp. Defibrillators Prod. Liab. Litig.*, 496 F.3d 863, 867-68 (8th Cir. 2007) (affirming district court's refusal to set aside dismissal with prejudice for failure to serve PFSs as required by court order). Defendants have been prejudiced, and would be further prejudiced if this Court were to grant Plaintiff relief. *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2011 WL 5547876, at *9 (E.D. La. Nov. 15, 2011) ("The PFS process was established to lessen the burden of initial discovery while providing the defendants with basic information about each plaintiff and his or her claim. . . . Dismissal of those who do not comply with these obligations is necessary to effectively administer this litigation. Without this dismissal procedure, which has been part of the agreed case-management structure from the beginning . . . it would take decades to litigate these claims.").

Plaintiff relies on *Lavespere v. Niagara Mach. & Tool Works, Inc.*, in support of her argument that her case should be reopened. 910 F.2d 167 (5th Cir. 1990), *abrogated by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). *Niagara* is distinguishable. First, *Niagara* is a single-plaintiff case rather than a case adjudicated in an MDL. As this Court has recognized:

> [A]dministering cases in multidistrict litigation is different from administering cases on a routine docket, so the lens through which the district court . . . view[s] transgressions, and sanctions, is different as well." Multidistrict litigation is a "special breed of complex litigation where the whole is bigger than the sum of its parts," and the district court "needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line." It makes sense then that an MDL court may consider "the importance of sanctions as a deterrent to noncompliance by the thousands of other plaintiffs in the litigation.

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL 2740, 2019 WL 250860, at *1 (E.D. La. Jan. 17, 2019) (internal citations omitted).  The *Niagara* court also determined that the defendant did not allege it was "injured or prejudiced in any way as a result of the district court's reopening the case to consider [the] deposition." *Id.*  Here, Defendants are prejudiced by plaintiffs who continue to fail to comply with court-ordered deadlines as it slows down the entire adjudication of this MDL.  And while the *Niagara* court affirmed the district court's decision to "rescue [plaintiff's] case from the peril created by his attorney's blunder," it stated:

> It would be a mistake to infer from our decision that attorneys practicing in this circuit may now ignore deadlines for the submission of evidence with impunity. Our decision means only that a district court faced with circumstances analogous to those present here *may* reopen the case; it does not mean that a district court faced with such circumstances *should* or *must* do so.

*Id.*  The circumstances of Plaintiff's case are not analogous to those in *Niagara*.  Relief under Rule 59(e) is not warranted.

### B. Plaintiff Failed To Comply With Discovery Obligations and Disclose The Existence Of Discoverable Information

Plaintiff claims she "has now fully satisfied her obligations in this litigation." (Rec. Doc. 7106-4 at 4)  But it is not so.  *Absolutely nothing* was produced to Defendants until *after* Plaintiff's case was dismissed.  Even now, she is in material noncompliance with the Court's discovery orders.  Online research reveals that Plaintiff, a sophisticated businesswoman with a substantial online footprint,[7] has withheld scores of photographs, videos, e-mails, and other electronically

---

[7] Ms. Clark created the children's brand "Baby Einstein," eventually selling the company to The Walt Disney Company.  *See* Cathy Garrard, *Big Idea: Meet the Creator of Baby Einstein*, PARENTS (March 2009), https://www.parents.com/baby/development/intellectual/baby-einstein-creator/.  She has appeared on Oprah, Today Show, Good Morning America, Fox News, The View and the CBS Nightly News, and has been published about in USA Today, The New York Times, The Wall Street Journal and People Magazine.  *See Baby Einstein: $20 million within 5 years & 2 time Cancer Assassin – with Julie Clark [Inspiration]*, https://www.inspiredinsider.com/julie-clark-babyeinstein-interview/ (last visited May 24, 2019).

stored information mandated by this Court's Orders, and did not answer PFS questions addressing the topic.

On simple search, Sanofi identified dozens of photographs, articles, and videos of Ms. Clark that depict her hair and depict her speaking about her breast cancer experience – none of which have been produced by Plaintiff:



See ChannelMom, *Victory over Breast Cancer*, YouTube (Sep. 18, 2012), https://www.youtube.com/watch?v=bmOAXABg2nU&app=desktop (full video of interview at link).[8]

On one of Ms. Clark's websites, mommymade.com, she posted numerous photographs and videos discussing her cancer diagnosis and treatment, and provided links to articles discussing her cancer experience and, specifically, **hair loss**. See Mommy Made, *Julie Aigner Clark*, https://www.mommymade.com/ (last visited May 24, 2019); *see also* Debra Melani, COLORADO HEALTH & WELLNESS, *Raising 'Baby Einsteins'*, (July 19, 2015),

---

[8] *See, e.g.,* TEDx Talks, *TEDxDetroit 2011 – Julie Aigner Clark – You Are the Best Medicine*, YouTube (Mar. 8, 2012), https://www.youtube.com/watch?v=QVPs-A7rA6A; Kristen Bason, COLORADO HEALTH & WELLNESS, *Lessons in Survival with Julie Aigner-Clark*, (Feb. 1, 2013), http://www.healthwellnesscolorado.com/lessons-in-survival-with-julie-aigner-clark/;ANTI-CANCER CLUB, *Baby Einstein Inventor Beats the Cancer Odds Twice*, (July 22, 2015), https://anticancerclub.com/news-and-info/baby-einstein-inventor-beats-the-cancer-odds-twice/; *Baby Einstein: $20 million within 5 years & 2 time Cancer Assassin – with Julie Clark [Inspiration]*, https://www.inspiredinsider.com/julie-clark-babyeinstein-interview/.

8

http://www.healthwellnesscolorado.com/raising-baby-einsteins/ (link available from https://www.mommymade.com/public-speaking).

Thus, virtually all categories of electronically stored information on the public internet, including many photographs have **not been produced**.  Take, for example, the photograph on the left (the only "after" photograph submitted by Ms. Clark), compared to the photograph on the right (which was NOT disclosed by Plaintiff but publically available since 2013):



| Produced by Plaintiff | Not produced by Plaintiff [9] |

The undisclosed photograph on the right was, in fact, taken much closer in time to her 2009-2010 cancer treatment.  Further, Taxotears email reveals that Ms. Clark has e-mailed with her oncologist, Dr. Borges, discussing her hair regrowth and hair care practices, and provided treatment recommendations:

---

[9] *See* Kristen Bason, COLORADO HEALTH & WELLNESS, *Lessons in Survival with Julie Aigner-Clark*, (Feb. 1, 2013), http://www.healthwellnesscolorado.com/lessons-in-survival-with-julie-aigner-clark/.

4836-9652-0343

First, you need enough hair on your head for the stylist to braid. But believe me, it doesn't have to be much. When I started wearing extensions, my hair was about two inches long and was (and still is) extremely thin and sparse. As long as there is *something* there, she can pretty much work a miracle.

She takes the client's hair and braids some longer fake hair into it so that client ends up with corn rows that are all over the head. Then she sews a sort of net onto the perimeter of those corn rows.

Next, she sews these long lengths of hair called wefts onto the net. This way, the client's hair isn't pulled on. Here is wha wefts look like:



The 'seam' at the top of the weft is what is sewn to the net. To get a better idea of how the whole process works, there are tons of youtube videos. Here's one: https://www.youtube.com/watch?v=BEnGXN5OUZk

This is a method that the African American community has been doing for YEARS.

The weave lasts for about ten weeks.

The hair itself is one purchase that has to be made, but good hair should last for a year or more. You'd have to talk with Bianca about what she charges for hair. I would trust the hair that she sells rather than ordering something online or buying hair from a beauty supply store.

After you own the hair, the cost for a full weave in (which includes the braiding and sewing, and the cut) from Bianca is $350. So this is a cost that happens about every ten weeks. Before I lost my hair, I spent approximately $150 every eight weeks for color and trim. Not too much more for the extensions.

The reality is that the extension hit is SO MUCH better than the hair I had before losing it that I'm happy. Would I rather have my own hair? Of course. But this is a great solution that protects the hair that I do have and allows me to swim and wash my hair, itch free. I hate wigs now! This is so much more comfortable.

The woman who does my hair is Bianca. Her web site is here: http://bloncvirginhair.com
She's in Cherry Creek. Most of her clients are African American women, but I have felt SO comfortable with her and I really love what she does. Bianca is truly an artist.

Ginger, please let your patents who are suffering the same issues that I have faced know that they can call me. I've been dealing with this issue for five years, and feel like I've been down a lot of roads. For me, this has been the best one.

xxx
*Julie Clark*



*http://www.mommymade.com*

*See* 3/13/14 e-mail from Clark to Borges, attached as **Exhibit D**. This 2014 email also was not produced by Plaintiff.

Nonetheless, in her untimely PFS, Plaintiff selectively chose not answer questions related to e-mail use and social media or internet posts:

10

| Type of Document(s) | Yes | No | If No, who has the document(s)? |
|---|---|---|---|
| Social media or internet posts to or through any site (including, but not limited to, Facebook, MySpace, LinkedIn, Google Plus, Windows Live, YouTube, Twitter, Instagram, Pinterest, blogs, and Internet chat rooms/message boards) relating to Taxotere® or Docetaxel or any of your claims in this lawsuit. | ☐ | ☐ | |

**Computer Use**

18. Apart from communications to or from your attorney, have you communicated via email, visited any chat rooms, or publicly posted a comment, message or blog entry on a public internet site regarding your experience with or injuries you attribute to Taxotere®, other chemotherapies, or alopecia/hair loss during the past ten (10) years? You should include all postings on public social network sites including Twitter, Facebook, MySpace, LinkedIn, or "blogs" that address the topics above.
Yes ☐ No ☐

19. If yes, please state the following:

| Forum Name | Screen Name or User Handle | Date of Post | Substance of Post |
|---|---|---|---|
| | | --/--/---- | |

*See* Clark PFS at 5, 26, excerpts attached as **Exhibit E**. And**, despite not identifying or producing any ESI in this litigation**, Plaintiff attests to having conducted a search for electronically stored information to identify and collect potentially responsive ESI for counsel review" **and that her search "yielded no additional ESI to produce**." *See* Statement Required by PTO 71A (no additional ESI found) (emphasis added), attached as **Exhibit F**.

Plaintiff's ongoing discovery deficiency also supports denying the instant Motion.[10] This Court has already issued a "warning to other plaintiffs" represented by this counsel. (Rec. Doc. 3917 ("If the Court learns that any other plaintiff has intentionally withheld relevant information that should have been produced in a PFS or in response to a request by Defendants, the Court will impose severe sanctions, which may include dismissal with prejudice."))

---

[10] PTO 71A states:

> **Rule 26(g) certification**. Any statement, declarations or certifications made by a plaintiff or her attorney regarding information and documents produced in discovery in this litigation, including the PFS declaration and the disclosure required under ¶ 5 of this Order, shall be subject to Rule 26(g)(3).

Further, Plaintiff's Motion represents that she has provided her "medical records" to Defendants. In reality, Plaintiff produced a total of two (2) pages of medical records. The medical records provided indicate they are part of a larger (unproduced) set and were printed in October 2018 –months ago:



See **Exhibit G**. The two (2) pages of records that were uploaded were *highlighted*. The metadata indicates the highlighting was performed by Bachus & Schanker on December 5, 2018, at 10:06 pm – long before the Show Cause hearing and almost six months before produced to Defendants.



*Id.* Plaintiff (and her counsel) have failed to comply with discovery obligations and to disclose discoverable information that should have been produced with her late PFS. For this additional reason, her Motion for Reconsideration should be denied.

4836-9652-0343

IV. **CONCLUSION**

Plaintiff was on notice that this case could be dismissed if she failed to fulfill Court-Ordered obligations long before April 23, 2019. *See* Am. PTO 22 at ¶ 5. The failure to do anything (and then produce selective discovery) should not be rewarded by allowing Plaintiff's dismissed claims to now proceed. As Judge Englehardt recognized:

> To be effective, the dismissal procedure requires predictability regarding the Court's orders. Lightly vacating Orders, in the absence of unusual or compelling circumstances (which are not present here), would undermine the process and lead to further delay. If cases of extreme neglect such as the movants' cannot be dismissed (and remain dismissed), then the Court's orders would lose all credibility. The message sent would be that compliance with the Court's deadlines is optional.

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2011 WL 5547876 at *9. Plaintiff's Motion for Reconsideration should be denied.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne Byard
Kelly Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com
***Counsel for Sanofi U.S. Services Inc. and sanofi-aventis U.S. LLC***

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

4836-9652-0343