# EXHIBIT F

LAW OFFICES
## GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.

2800 ENERGY CENTRE
1100 POYDRAS
NEW ORLEANS 70163-2800

TELEPHONE
(504) 522-2304

TELECOPIER
(504) 528-9973

ROBERT J. DAVID
GERALD E. MEUNIER
IRVING J. WARSHAUER
MICHAEL J. ECUYER
WALTER C. MORRISON IV*
M. PALMER LAMBERT
RACHEL M. NAQUIN
CLAIRE E. BERG
BRITTANY R. WOLF

OF COUNSEL
STEVAN C. DITTMAN

*ALSO ADMITTED IN MISSISSIPPI

SAMUEL C. GAINSBURGH
(1926-2003)

JACK C. BENJAMIN
(1927-2018)

NEW ROADS OFFICE:
143 EAST MAIN STREET
SUITE 3
NEW ROADS, LA 70760
TELEPHONE: (225) 638-8511

JACKSON OFFICE:
240 TRACE COLONY PARK DR.
SUITE 100
RIDGELAND, MS 39157
TELEPHONE: (601) 933-2054

REPLY TO NEW ORLEANS OFFICE

March 22, 2019

**Via Electronic Mail**
The Honorable Jane Triche Milazzo
United States District Court for the Eastern District of Louisiana
500 Poydras Street, Room C206
New Orleans, Louisiana 70130

      RE:    MDL 2740 – 3/25/19 Liaison Counsel Meeting with the Court

-----

Dear Judge Milazzo:

The major issue raised at the last Liaison Counsel meeting was the necessity to adjust the trial schedule and move the May trial until September. The PSC and Sanofi worked cooperatively together and have agreed on a schedule which was attached to Sanofi's position paper.

All that would have happened had Sanofi timely received these two slides of pathology material (per trial plaintiff) is it would have questioned Plaintiffs' experts about them just as it did the other slides timely produced and included their own experts' views about the slides in their reports. That is all that should happen now that all slides have been produced.

Supplementation means Sanofi gets to do the work it has already done on pathology slides and ask the types of questions it has asked about the other slides. Supplementation is not free reign for Sanofi to mint new stem cell theories it never pursued (that were not pursued nor relied upon by the Plaintiffs' experts), despite knowing about stem cell science but choosing not to develop affirmative evidence based on it.

Sanofi's insistence that it must be allowed wide latitude to pursue stem cell science that Plaintiffs' experts never pursued would likely require another postponement of trial so that both parties can essentially redo expert reports and start anew on stem cell theories that no party has pursued to date. That is completely unnecessary. What's more, Sanofi's insistence that it must now probe into the work product of the PSC with respect to a stem cell theory that never made it past an embryonic stage is also completely unnecessary. That inquiry would have been inappropriate even if the stem cell slides were produced on time.

Page 1 of 6

**GAINSBURGH, BENJAMIN,
DAVID, MEUNIER & WARSHAUER, L.L.C.**

Keeping in mind that the untimely disclosure was certainly not Sanofi's fault, the PSC has sought to work cooperatively to resolve issues regarding the schedule, what issues to brief now as opposed to after supplementation, and the scope of discovery. The parties are in agreement on a schedule but cannot agree on which motions must be briefed before or after supplementation, nor can the parties agree on the inextricably intertwined issue of the scope of supplemental discovery.

The parties' disagreement about the number of hours that Sanofi is entitled for depositions, and the scope of subsequent expert supplemental reports, also reflects a deep division over what supplementation means. Again, the PSC does not mean to quibble over an hour or two of deposition time, and has been more than cooperative by agreeing to change the trial date. But the PSC's inability to reach an agreement is not simply about an hour or two but rather its concern that Sanofi is attempting to overreach and unnecessarily augment the supplemental discovery.

For the reasons that follow, the Court should accept the PSC's position regarding which briefs should be filed after supplementation, and it should limit Sanofi to a scope of discovery that is limited to the withheld slides, what was done with them, who observed them, and what (if anything) the PSC's testifying experts relied upon in relation to said slides. Accordingly, the PSC's proposal on the scope of discovery and deposition time, which reflects that understanding, should be accepted.

For the majority of Daubert and Summary Judgment motions pending before the Court, the parties have reached agreement as to oppositions to be filed next week[1] and which postponed to completion of limited discovery on recently produced stained stem cell slides[2]. Despite extensive efforts, the parties have been unable to reach agreement on the impact of the discovery on the following, and thus, the due date for the oppositions on Sanofi's: (1) Motion for Summary Judgment on Preemption (R. Doc. 6186), (2) Daubert Motion to Exclude Statistician Dr. David Madigan (R. Doc. 6144), and (3) Daubert Motion to Exclude former FDA Commissioner Dr. David Kessler (R. Doc. 6148), (4) Motion to Exclude Improper Expert Testimony (R. Doc. 6158), and (5) Motion to Exclude Expert Testimony of Javid Moslehi (R. Doc 6138).

The PSC believes consideration of motions (1) through (3) should be delayed until the Court considers Sanofi's Motion to Exclude Expert Testimony on General Causation, because as explained below, these motions contain overlapping arguments that, if disclosed, will give Sanofi an unfair advantage. Moreover, given the overlapping nature of Sanofi's arguments, the PSC believes efficiency is best served if these motions are considered together. Doing so will minimize the number of times the Court must consider similar arguments and avoid the need for either party to file motions to reconsider rulings made on these overlapping arguments. The Court will benefit from considering the entirety of the disputes regarding substantive science and causation expert briefing simultaneously, rather than piecemeal. The other motion, (4) Sanofi's Motion to Exclude

---

[1] The PSC will file oppositions to Sanofi's Motion to Exclude Expert Testimony of Alan Bauman, MD (R. Doc. 6153), Motion to Exclude Expert Testimony of Dr. Linda Bosserman (R. Doc. 6130), Motions for Summary Judgment Based on the Statute of Limitations for Tanya Francis and for Barbara Earnest (R. Docs. 6081 and 6079), Motions for Summary Judgment Based on the Learned Intermediary Doctrine for Tanya Francis and for Barbara Earnest (R. Docs. 6080 and 6078).

[2] The PSC's opposition to Sanofi's Motions to Exclude Expert Testimony by Dr. Laura Plunkett and Ellen Feigal, MD (R. Docs. 6149 and 6155) will not be filed next week as Sanofi is re-deposing them. Since depositions unrelated to the stem cell issue have not been completed for Dr. Bianchini and Dr. John Thompson (R. Docs. 6151 and 614.

**GAINSBURGH, BENJAMIN,
DAVID, MEUNIER & WARSHAUER, L.L.C.**

Improper Expert Testimony, should also be delayed because it pertains to experts, such as Dr. Plunkett and Dr. Feigal, who will be subject to additional discovery. Finally, Sanofi's motion on Dr. Moslehi (5) is moot as the PSC has withdrawn him as a witness.

Sanofi's preemption motion asserts that "Plaintiffs cannot identify any evidence of a causal association between Taxotere and permanent alopecia from the relevant time period that was new, undisclosed, and of a greater risk" and that adverse event reports are insufficient to establish a causal association. This argument is similar to those in both Sanofi's general and specific causation motions, which Sanofi agrees should be delayed until the limited discovery regarding the two additional biopsy slides is complete. Additionally, Sanofi's preemption motion includes a lengthy statement of material facts that requires a PSC response identifying evidence relevant to demonstrating a causal association. As a result, if the PSC is required to respond to Sanofi's preemption motion and statement of material facts next week, the PSC will prematurely reveal the argument and evidence it will make in responding to Sanofi's causation motions. This will provide Sanofi an unfair advantage in two respects. First, Sanofi will be able to supplement its general causation motion to counter the arguments that the PSC intends to raise in response to Sanofi's preemption motion. Second, Sanofi will surely use (and should be prevented from doing so) the additional discovery period to gather evidence to counter the PSC's arguments made in its opposition regarding causal association. A motion such as preemption, which trains on what Sanofi knew or could have known about Taxotere induced permanent hair loss, is directly impacted by its supplementation of causation motions, which likewise concerns what Sanofi knew or could have known about Taxotere induced permanent hair loss.

Sanofi's Daubert Motion to Exclude Dr. David Madigan, Statistician, contains arguments that are repetitive of and overlap with Sanofi's general causation motions, which as noted above, Sanofi agrees should be delayed. Specifically, Sanofi's argues that Dr. Madigan's general causation testimony should be excluded as it is unreliable, irrelevant, and that Dr. Madigan is unqualified to offer such testimony. Sanofi repeats these themes in its Daubert motion against Dr. Madigan—although strangely, Sanofi does not claim that Dr. Madigan is unqualified in its Daubert motion. Regardless, if the PSC is required to file it opposition to Sanofi's Daubert motion against Dr. Madigan, Sanofi will be privy to the arguments that the PSC intends to raise in responding to Sanofi's general causation motions, which by agreement isn't due until the close of supplemental discovery.

Sanofi's Daubert Motion to Exclude Dr. David Kessler, former Commission of the FDA, claims that his testimony concerning "causal association" would be confusing to the jury because causal association is different than causation. Sanofi additionally argues that Dr. Kessler's opinions on causal association are unreliable. These arguments are intertwined with arguments also raised by Sanofi's causation motions. There, Sanofi claims that none of the PSC's experts provide reliable and qualified opinions on causation. In response to Sanofi's Daubert motion, the PSC intends to raise arguments that overlap with its opposition to Sanofi's causation motions. As noted above, the PSC believes that this will unfairly prejudice the PSC by providing Sanofi an opportunity to preview the PSC's arguments, develop evidence, and then refile or supplement a motion that counters the PSC's arguments.

Sanofi's Motion to Exclude Improper Expert Testimony – This motion seeks to exclude expert testimony from, among others, Dr. Plunkett and Dr. Feigal, experts Sanofi will depose

**GAINSBURGH, BENJAMIN,
DAVID, MEUNIER & WARSHAUER, L.L.C.**

pursuant to the parties' agreement on limited, additional discovery on the two recently produced stem cell slides. The PSC believes that it is inappropriate to resolve this motion until this limited discovery is complete.

Supplemental Discovery on Stem Cell Slides

The Court's recent continuance of the first bellwether trial was occasioned by the PSC's pathology expert, Curtis Thompson, MD, not providing 2 stained stem cell pathology slides (per trial Plaintiff) to Sanofi after expert discovery, despite being instructed to the contrary. Dr. Thompson did not share these additional slides with any other expert, and to be clear, neither Dr. Thompson nor any other Plaintiffs' expert conducted a stem cell study, although Dr. Tosti was copied on one email concerning the staining of slides with cytokeratin 15.[3] Dr. Thompson did not rely upon recently produced slides or consider stem cell pathology in forming his opinions, as stem cell pathology is not generally accepted by the scientific community for diagnosing permanent alopecia.[4] When the non-disclosure of the additional slides was brought to the PSC's attention, we immediately forwarded the slides to Sanofi and began good faith discussions on what further discovery was necessary.

The PSC consistently assures Sanofi that no other experts reviewed the stem cell slides (or photographs of the slides), and that Dr. Thompson did not discuss the additional pathology slides with any other experts. Thus, no expert relied upon the additional pathology slides or a stem cell theory in forming their opinions; no report was ever made from the additional pathology slides or based on a stem cell theory. The PSC offered to re-produce Dr. Thompson for a limited deposition of 4 hours to confirm the above and satisfy Sanofi that no "stem cell study" was ever conducted.[5] Despite this, Sanofi has steadfastly demanded 8 hours of depositions of three additional experts: Drs. Feigal, Plunkett and Tosti.[6] To cooperate and be solution oriented, the PSC agreed to these depositions limited in scope to the recently disclosed pathology slides, and the existence or nonexistence of any supposed stem cell study for a total of 6 hours.[7]

Sanofi instead insists on deposing all four experts on any issue related to stem cells. Such broad discovery is an incongruous remedy for the late disclosure two pathology slides per plaintiff

---

[3] See Ex. A, April 16, 2018, from Dr. Curtis Thompson to Lauren Davis (PSC Counsel), and cc'ing, among others Dr. Tosti. As the court can see, this email was authored prior to the staining of slides and does not discuss any results. Cytokeratin 15 is a pathology stain for stem cell markers.

[4] Insert Ex. B, C. Thompson depo (vol. 2) p. 338:3-15 ("It doesn't have any application to interpretation, pathological interpretation, treatment, anything in the clinical hair loss alopecia world."); Dr. Thompson testified in his deposition that the science on stem cell staining is theoretical, and did not form a basis of his opinion. Id.

[5] Since the issue of stem cell slides arose, Sanofi's counsel has attempted to create a narrative of a "stem cell study" that simply does not exist. But if a stem cell pathology study were conducted, it would have been conducted by Dr. Curtis Thompson. Thus, any inquiry into the mythical stem cell study should begin with Dr. Thompson, and end there if no such study was conducted.

[6] Sanofi has already had full opportunity to cross-examine Drs. Feigal, Plunkett and Tosti on their reliance material and existing science, including stem cell science, in each experts' respective Rule 26 reports. The requested experts never relied upon or even saw the stem cell slides. Because these experts have already been deposed on their reports, and considering they never saw the stem cell slides, or any slides, allowing limited depositions for Sanofi to satisfy itself that they were not part of a "stem cell study" that never occurred is a reasonable offer.

[7] The PSC has offered to produce Dr. Curtis Thompson for four hours, and Drs. Feigal, Plunkett and Tosti for two hours each.

Page 4 of 6

**GAINSBURGH, BENJAMIN,
DAVID, MEUNIER & WARSHAUER, L.L.C.**

and allows Sanofi to exceed its discovery opportunities under the FRCP without justification. It is ironic that Sanofi argues it needs wide latitude in discovery, but at the same time urging that most of the motions it filed is/will be unaffected or unimpacted by the new discovery. Additionally, it will amount to an unfair advantage, expend valuable time unnecessarily and waste resources. Each expert has been produced for depositions on their reports. The current issue concerning the additional pathology slides amounts to a single point of evidence, albeit evidence that no expert relied upon in forming their opinions, yet Sanofi seeks nearly a full day with Dr. Thompson – the only expert to see the slides – and it seeks nearly a half day with experts that never saw the slides.

Sanofi's insistence that it must be allowed wide latitude to pursue stem cell science that Plaintiffs' experts never pursued has the potential to require another postponement of trial so that both parties can essentially redo expert reports and start anew on theories that no party has pursued to date. That is completely unnecessary to address the fact that two stem cell slides were not produced.

The theory of stem cell involvement, and its recognition as a plausible mechanism for permanent chemotherapy induced alopecia (pCIA), is not a new theory. The theory that certain chemotherapy agents can affect the hair growth cycle, including causing pCIA, has appeared in the scientific literature for over a decade. See. Ex. C As the sampling of literature in Exhibit C demonstrates, the theory of stem cell involvement in a biologically plausible mechanism leading to permanent alopecia has existed for a very long time, and Sanofi had a full and fair opportunity to examine the experts on the existing science concerning stem cells and permanent hair loss.[8] In fact, Sanofi's counsel did question several of the requested experts on mechanism of action and stem cells, or chose not to do so.[9] Further still, Sanofi's own retained experts have authored papers, and cited sources, concerning the theory of stem cell involvement in causing pCIA.[10] The stem cell theory as a biologically plausible mechanism for pCIA is not a new theory to Sanofi, or its experts.

Because Sanofi's request is based on a false assumption that a stem cell study was performed, when one was not; that experts collaborated on such a study, which they clearly did not; and because this is not a new theory that came as a surprise to Sanofi, the PSC requests the court deny Sanofi's unreasonable request for extensive additional discovery. Instead the court should limit the reconvened depositions to the pathology slides recently produced, allow Sanofi to satisfy itself that a stem cell study performed by Plaintiff's experts does not exist, and limit the time of the depositions as requested by the PSC.

---

[8] Sanofi's request to question experts beyond the recently produced pathology slides is an unjustified attempt to exceed the FRCP's seven-hour limit on expert depositions. A common means of attacking and challenging an expert's opinions under FRE 702 is to demonstrate that they did not consider all relevant evidence. Sanofi had that opportunity in the initial depositions concerning all experts on any topics, including stem cell involvement in pCIA. It should not get a second full bite at that apple with four experts because a single expert produced a few slides late.

[9] See. Ex. D, Feigal depo. pp. 148:1- 150:15 and 220; 1-7; Ex. E, Tosti depo pp. 26:6 – 27:23; and Ex. F, C. Thompson depo pp. 337:5 – 338:24.

[10] See. Ex. G, Tallon, et al. (co-author, Lynne Goldberg, MD, Sanofi's retained expert) Permanent chemotherapy-induced alopecia: Casereport and review of the literature, J Amer Ac Derm. (2010), and Ex. H, Freites-Martinez, et al. (co-author, Jerry Shapiro, MD, Sanofi's retained expert), CME Part 2: Hair disorders in cancer survivors Persistent chemotherapy-induced alopecia, persistent radiotherapy-induced alopecia, and hair growth disorders related to endocrine therapy or cancer surgery, 10.1016/j.jaad.2018.03.056.

**GAINSBURGH, BENJAMIN,
DAVID, MEUNIER & WARSHAUER, L.L.C.**

<u>Sanofi's Demand for Additional Disclosure of PSC's Communications with its Experts</u>

The parties disagree whether some communications between the PSC and its experts are discoverable and whether a privilege log is required. Sanofi believes both are required and the PSC believes neither is required. Sanofi's insistence that it must now probe into the work product of the PSC with respect to a stem cell theory that never made it past an embryonic stage is completely unnecessary. Such an inquiry has no bearing on whether the stem cell stained slides were produced timely. Further, the PSC has never received a privilege log from the Defendants regarding their communications with their experts. The PSC therefore respectfully suggests submitting these communications to Magistrate Judge North for an expedited in camera review, at the Court's earliest convenience.

Respectfully submitted,

/s/*M. Palmer Lambert*
M. Palmer Lambert
Plaintiffs' Co-Liaison Counsel
On behalf of the MDL 2740 PSC

cc (via email):    Hon. Magistrate Judge North      Dawn M. Barrios, Esq.
                   Harley Ratliff, Esq.              Douglas Moore, Esq.
                   John Olinde, Esq.                 Christopher Coffin, Esq.
                   Karen Menzies, Esq.               Adrienne Byard, Esq.