# EXHIBIT L

April 8, 2019

**<u>Via Email Only</u>**
The Honorable Jane Triche Milazzo
United States District Judge
500 Poydras Street, Room C206
New Orleans, Louisiana 70130

**<u>Via Email Only</u>**
The Honorable Michael B. North
United States District Judge
500 Poydras Street, Room B419
New Orleans, Louisiana 70130

RE:   In re: *Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740
-------------------------------------------------------------------------------------------------

Dear Judge Milazzo and Magistrate Judge North,

Sanofi's submission on Friday, suggesting that the PSC intentionally hid the existence of a stem cell study and that Judge North abused his discretion in rejecting Sanofi's request to turn over protected work product, contains numerous inaccuracies and lacks support for all of the inferences it draws. Sanofi's submission is also remarkable for what it doesn't say: Not *once* does Sanofi quote from last Wednesday's deposition transcript of Dr. Curtis Thompson. Not a single citation.

Sanofi demanded a third deposition of Dr. Thompson. But now that Dr. Thompson's latest testimony—like his earlier testimony and his letter to the Court—does not fit Sanofi's storyline that the PSC buried a "study," Sanofi draws wild inferences and conclusions based on selective excerpts from documents.

As explained below, nothing from Dr. Thompson's third deposition should disturb Judge North's determination that the *in camera* production of certain PSC communications with its experts are privileged. Moreover, Sanofi has created a narrative to claim that the PSC employed a laboratory "for the express purpose of creating a scientific study upon which the litigation would be based," further characterizing it as a "deliberate effort to manufacture science." Sanofi's Letter, at 1. These are strong accusations that must be addressed.

Consider the following claims made in Sanofi's letter to the Court:

- "In April 2017, Dr. Thompson published a hypothesis about stem cell death with chemotherapy causing permanent hair loss, and the capability of the staining technique (the same technique that he performed in this case) to test pathology specimens." Sanofi's Letter, at 1.

Not so. Dr. Thompson testified that he and a colleague published a "Letter to the Editor" in April 2017 that expressly disclaimed the utility of this staining technique in diagnosing chemotherapy induced permanent hair loss. *See* Exhibit A, Thompson Dep. 409:06-410:11, April 3, 2019; *see also* Exhibit B, Thompson Dep. Ex. 6, at 1 ("We wish our research letter would be considered as concluding remark concerning the limited value of bulge stem cell marker immunostaining …").

Sanofi then represents:

- "Plaintiffs' expert dermatologist, Dr. Antonella Tosti, recruited pathologist Dr. Curtis Thompson on the premise of taking scalp biopsies for Pathology and "stem cell markers." Sanofi's Letter, at 1.

Again, this is inaccurate. Sanofi here quotes from a March 2018 email exchange in which Dr. Thompson agreed to provide his dermatopathological expertise and laboratory for use in this litigation. Dr. Tosti introduced the PSC to Dr. Thompson.[1] Drs. Tosti and Thompson, however, had minimal, if any, discussions about stem cell markers, and Dr. Thompson believes that Dr. Tosti mentioned "stem cell markers" to peak his interest and entice him into doing expert work, which he had been reluctant to do.[2] Exhibit A, Thompson Dep. 423:01-426:01; 444:25-445:25. Thompson's testimony resolves this, which may be why Sanofi ignores it: "[I]t became clear to me pretty quickly that my utility was going to be in properly processing these biopsies and providing a diagnoses on them without this immunohistochemical [stem cell marking]. So it didn't -- it never went into the larger investigation that Dr. Tosti was kind of proposing." *Id.* at 451:15-24.

Sanofi continues with this statement:

- After biopsies were taken from the Plaintiffs' scalps, the very first place that they were sent was a stem cell research laboratory, which is the same group later working with Dr. Thompson on a "stem cell study." Sanofi's Letter, at 1.

False. Sanofi selectively quotes from a single invoice, ignoring its own questioning about this exhibit, which revealed that Dr. Thompson did *not* offer "any guidance or any thoughts on the study" and was unaware of the results of the study. Exhibit A, Thompson Dep. 464:01-465:10. In fact, no results exist because there was no study. Further, as noted in the attached declaration affidavit, the biopsies were sent to the facility, AIVITA Biomedical, for the sole purpose of utilizing a reliable facility to safely and properly store the biopsy material. Exhibit D, Poole Decl.

Sanofi next states:

- "Dr. Thompson and the PSC discussed in April 2018 that if his stem cell staining did not 'add to the information' then he would 'issue [his] reports without that information.' See Thompson Dep. Ex. 10, at 1, Apr. 3, 2019;" "In the slides of three trial plaintiffs' scalp biopsies, however, the stem cells remained present and proliferating;" and "The slide results were inconsistent with the theory of Taxotere causing permanent alopecia by destroying stem cells in the hair follicle." Sanofi's Letter, at 1-2.

---

[1] It is not uncommon for experts to introduce attorneys to other potential experts. Indeed, one of Sanofi's experts testified that she was introduced to Sanofi by way of another expert. *See* Exhibit C, Smart Dep. 30:19-31:07.

[2] Because the PSC has nothing to hide, it agreed to a limited deposition so Sanofi can ask questions about an email like this.

2

This is incorrect. Sanofi ignores basic stem cell science and Dr. Thompson's testimony. As explained by Dr. Thompson, there is no staining that definitively marks the stem cells in the hair follicle, and staining of nearby cells or even antigens in dead cells can produce what are essentially false positives for the presence of stem cells in the hair follicle. Exhibit A, Thompson Dep. 397:11-400:24. Thus, while a negative stem cell result is evidence that the hair follicle is dead, a positive result does not necessarily mean the hair follicle is alive. Indeed, Dr. Thompson testified he was not looking to see whether stem cells were preserved in the bulge region of the follicle. *Id.* at 397:05-10. More importantly, however, individual plaintiffs do not need proof of hair follicle death in order to establish causation. Contrary to Sanofi's suggestions otherwise, proving the mechanism of action of an injury is not a required element of causation – indeed, a *proposed* mechanism of action is sufficient to "'lend[ ] credence to an inference of causality' drawn from other, more substantial evidence." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1344 (N.D. Fla. 2018) (quoting Reference Manual on Scientific Evidence at 604). Finally, these statements by Sanofi describing the science of the case are inappropriate. The status of the science shouldn't be dictated by lawyers, and Sanofi offers no expert or other factual support for its incorrect conclusions. Indeed, if this alleged study could be used to prove that plaintiffs' hair loss is not permanent, then why hasn't Sanofi conducted the study itself—it has had the opportunity to do so since November.

Sanofi next states:

- "Plaintiffs now criticize the scientific reliability (lack of FDA approval) for this very expensive testing that they performed and which—regardless of whether it would have been admissible—was their most advanced theory of causation (mechanism of action)." Sanofi's Letter, at 2.

Again, false. The PSC does not "now" criticize the reliability of the staining; Dr. Thompson's April 2017 letter to the editor, discussed above, confirms as much. Further, it is well-established that plaintiffs are not required to prove the causal mechanism of action. *See, e.g.*, *Drake v. Allergan, Inc.*, 2014 WL 5392995, *7 (D. Vt. Oct. 23, 2014) ("[I]t is not necessary for an expert to know the exact mechanism of how a drug causes an injury in order for her opinion on causation to be reliable and admissible."); *In re Chantix (Varenicline) Prod. Liab. Litig.*, 889 F. Supp. 2d 1272, 1301–02 (N.D. Ala. 2012) ("Absent is any argument that the plaintiff must prove the biological means of injury, because no such requirement exists."); *In re Traylsol Prod. Liab. Litig.*, 2010 WL 4102247, *4 (S.D. Fla. 2010) ("[B]iological plausibility is a factor to be considered in making this determination, and that a causal relationship can be established even when the mechanism of action is unknown."); *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 183 (S.D.N.Y. 2009) ("That the mechanism remains unknown does not mean that the one proposed by the PSC's experts is not widely accepted as plausible."); *In re PPA Prods. Liab. Litig.*, 289 F. Supp. 2d 1230, 1247 (W.D. Wash. 2003) ("The fact that the mechanism remains unclear does not call the reliability of the opinion into question.").[3]

---

[3] As it has before, Sanofi uses its letter to the Court as a soap box in which to challenge plaintiffs' evidence and raise issues more appropriate for analysis under Fed. R. Evid. 702. Here, Sanofi inaccurately claims that plaintiffs must provide the biological mechanism of injury in order to establish causation. In another letter submitted to the Court last month, Sanofi claimed that Dr. Kessler has disclaimed offering an opinion on causal association. To the

3

Sanofi continues with this next point:

- "Dr. Thompson reviewed validation and testing for another, different stem cell study by another plaintiff expert at the stem cell research laboratory, but in doing so questioned whether the expert had been made aware that his slide results were positive for stem cells, which is why he did "not pursue this further." *See* Thompson Dep. Ex. 14, at 1, Apr. 3, 2019." Sanofi's Letter, at 2.

Not accurate. Sanofi not only ignores Dr. Thompson's sworn testimony but also misstates the referenced exhibits. Specifically, Dr. Thompson did not state that the biopsy slide results "were positive for stem cells." Rather, Dr. Thompson stated that the staining was positive in the "basaloid bodies," which are not stem cells. Exhibit A, Thompson Dep. 407:01-11; 491:22-493:19; *see also* Exhibit E, Thompson Dep. Ex. 14, at 1. Sanofi's speculative conclusion as to why a study was not pursued has no bearing on the matters of privilege, as no such study was ever done.

Sanofi continues:

- "The decision not to conduct another stem cell study supports Sanofi's defenses about the reasonableness of its actions, and the state of scientific understanding about whether Taxotere is capable of causing permanent hair loss, compared to other chemo medicines and other established factors." Sanofi's Letter, at 2.

Again, untrue. There was not one, let alone multiple studies. Moreover, Sanofi has not demonstrated a substantial need for any internal work product between the PSC and its experts. The PSC has never received any emails between Sanofi and its experts or non-testifying consultants about theories Sanofi's attorneys may have asked about but not developed, including any theories related to stem cells. This is because the work product protection exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

Sanofi then represents:

- "It is still not clear whether Plaintiffs conducted another, different stem cell study; whether that study was conducted on specimens from other plaintiffs besides these three; or whether that study was conducted some other way, i.e., through a tissue bank. When confronted with this question, Plaintiffs' response is continually tied back to further study on these slides, which is not responsive to the question of whether other, discoverable information not exclusive to this set of slides has been withheld." Sanofi's Letter, at 2.

---

contrary, Dr. Kessler has comprehensively walked through the Bradford Hill causation criteria, which parallel FDA Guidance for establishing causal association.

4

False. The PSC has repeatedly and consistently told Sanofi—and the Court—that it did not conduct any stem cell studies. The fact of the matter is there is no need for the PSC to conduct any such study. The data from Sanofi's own clinical trial program, Sanofi's own analysis of the data, and the scientific literature all demonstrate causality.

All in all, the "decisive points" that Sanofi claims demonstrate the PSC's intention to "manufacture" junk science are completely unsupported. Worse, Sanofi's claims have not only been refuted, but ignored: Sanofi demanded the deposition of Dr. Thompson to investigate this very issue and then cited *none* of his testimony.

Dr. Thompson did not rely on the results of the CK15/Ki-67 staining in issuing his opinions. Exhibit F, Thompson Letter at 1-2. Furthermore, Dr. Thompson never shared these stained slides with any other expert—consulting or testifying; Dr. Thompson never collaborated with anyone about these slides; Dr. Thompson never authored a report regarding these slides. Indeed, Sanofi's insistence on re-deposing Drs. Feigal and Plunkett because of this alleged stem cell study is completely unsupported—in reality, Dr. Thompson briefly spoke to Dr. Feigal before Science Day on a matter unrelated to stem cells, and Dr. Thompson has never spoken to Dr. Plunkett and does not even know who she is. *Id.*

Sanofi relates this to the *Propulsid* MDL, but the facts in that case could not be more different. In *Propulsid*, the drug had been taken off the market and limited data existed regarding the injury at issue to support causation. Because it would have been unethical to study the drug, one of the *Propulsid* plaintiffs' experts developed a study using nine-plaintiffs selected by that PSC, and then relied upon the study in forming their opinions. Here no study was conducted, no expert relied on the recently produced biopsy slides, and no expert addressed the slides in their reports. Nor would any expert need to do such a study in this case—as will be shown, the available data is more than sufficient for causation.

Finally, it should not go unremarked that Sanofi's latest submission—and its willingness to bend facts—disserves the Court, which is understandably trying to get to the bottom of the matter. That is why Dr. Thompson's third deposition was allowed. But then it was ignored by Sanofi, as was Dr. Thompson's letter to Your Honor, because the facts were inconvenient to Sanofi's narrative.

While the PSC has been more than accommodating in terms of agreeing to a four-month continuance of the trial date to allow reasonable supplemental discovery, it cannot sit idly as Sanofi attacks its members and attempts to unnecessarily augment this supplemental discovery.

The PSC consists of appointed counsel who are officers of the court and well-respected in this district and elsewhere, and we take our obligations of candor to this Court very seriously. We have consistently represented the truth to Sanofi and this Court concerning Sanofi's suspicion of a stem cell study. These representations are supported by the evidence and testimony. If these insinuations of malfeasance continue, the PSC will seek sanctions.
For the reasons discussed, there is no basis to find that Judge North abused his discretion in rejecting Sanofi's request to invade the PSC's work product.

5

Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

6

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Andre M. Mura *(on the brief)*
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com
amm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com