UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**

Barbara Earnest, Case No. 2:16-cv-17144.

---

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF SANOFI DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. KEVIN BIANCHINI

---

Dr. Bianchini's opinions are inadmissible for the reasons set forth in Sanofi's February 8, 2019 Motion to Exclude Expert Testimony of Kevin Bianchini, Phd (Rec. Doc. 6151). Since the filing of that Motion, on May 14, 2019, Dr. Bianchini sat for a supplemental deposition during which he testified that he considered new information following his January 8-9, 2019 deposition, including thousands of pages of medical records and deposition testimony, a second interview of Mrs. Earnest on April 4, 2019, and a third interview of Mrs. Earnest the morning of his May 14, 2019 supplemental deposition. While Dr. Bianchini does not believe any of the new information he considered warrants a supplemental expert report, the testimony he gave at his supplemental deposition provides additional reasons why Dr. Bianchini's opinions are inadmissible.

First, regarding his lack of qualifications to testify about Mrs. Earnest's psychological condition, Dr. Bianchini's supplemental deposition revealed that he conducted a second and third interview of Mrs. Earnest because he did not know (and had not thought to inquire) about issues critical to his diagnosis, which were raised by Sanofi's counsel at his January 8-9, 2019 deposition and the April 17, 2019 supplemental deposition of Dr. John W. Thompson. The fact Dr. Bianchini

lacked answers to important diagnostic questions until after a lawyer brought them to his attention plainly demonstrates his lack of expertise to opine on the alleged psychological symptoms and disorder at issue in this case.

Second, Dr. Bianchini's supplemental deposition confirmed his opinions are unreliable. Dr. Bianchini failed to apply his own stated standards of forensic practice to his review of the new information. Although Dr. Bianchini opined that his "opinions are subject to change" upon learning at his first deposition that he had not been provided with a substantial amount of relevant information, his admittedly uninformed opinions did not change, despite review of substantial conflicting evidence. Rather, he cherry-picked facts and ignored information, including medical records and psychological test results, that was contrary to his original opinion and diagnosis, and he failed to ascertain that the interview statements he relies on for his opinion and diagnosis directly contradict Mrs. Earnest's sworn deposition testimony. Such opinions are inadmissible under Rule 702.

For these additional reasons, the Court should grant Sanofi's Motion and exclude the expert testimony of Dr. Bianchini.

## ARGUMENT

### I. DR. BIANCHINI'S OPINIOINS ARE INADMISSIBLE BECAUSE THEY ARE OUTSIDE HIS AREA OF EXPERTISE

Dr. Bianchini's supplemental deposition revealed that he conducted a second interview of Mrs. Earnest on April 4, 2019 because he did not know (and had not thought to inquire) about issues critical to his diagnosis, which were first raised by Sanofi's counsel at his January 8-9, 2019 deposition. At his supplemental deposition, Dr. Bianchini testified that he wanted to "clarify some of the issues related to the diagnosis" he had already made – namely, "the issue of how the symptoms were impacting her [ ] socially" because the question was raised in his first deposition

2

and the deposition of Dr. Thompson. Bianchini Dep. Vol III. 92:7-93:14 (May 14, 2019) ("Bianchini Dep. III") (attached as Exhibit A).  Simply put, it was necessary to interview Mrs. Earnest a second time to determine if her reported symptoms met the second DSM-5 diagnostic criteria for an adjustment disorder – whether they were clinically significant, showed marked distress out of proportion to the severity or intensity of the stressor, and caused significant impairment in social functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") at 286-87 (5th ed. 2013).

Dr. Bianchini once again realized he had no information, and had not inquired, about matters critical to his diagnosis when he read the April 17, 2019 supplemental deposition of Dr. Thompson the day before his own supplemental deposition. Bianchini Dep. III at 35:2-36:8. The unanswered question of why Mrs. Earnest had never sought treatment for her hair loss if in fact she was suffering from the significant emotional symptoms she reported to him required that Dr. Bianchini conduct the third interview of Mrs. Earnest.  Indeed, the first very question he asked Mrs. Earnest as reflected in his notes was – "Why no treatment for alopecia?" – because it was an "important question" and a "cause for concern." Bianchini Dep. III at 56:7-57:10; 123:22-124:3; 125:18-22; Exhibit 28 to Bianchini Dep. III (Ex. B). It was a cause for concern because "it raises the question that [  ] her complaints about alopecia and even her emotional complaints about alopecia arose entirely in the context of the lawsuit. And that would mean that they were – that would raise suspicions about the validity of those symptoms." Bianchini Dep. III at 125:18-126:4.

Further, Dr. Bianchini conceded he had no information and had never inquired about when Mrs. Earnest's diagnosed adjustment disorder began, and whether Mrs. Earnest met the first DSM-5 adjustment disorder criteria – *i.e.*, development of symptoms within 3 months of the identifiable stressor (in this case, the realization that her alleged hair loss was permanent).  DSM-5 at 286-87;

3

Bianchini Dep. III at 50:25-53:1; 53:8-54:3. Indeed, Dr. Bianchini testified that he only "had an idea about that – that the symptoms began sometime after the hair loss. . ." Bianchini Dep. III at 52:18-53:1.  In order to answer those questions he both consulted Dr. Thompson because he "wanted to know what he had found out about that," and asked Mrs. Earnest during the third interview when she thought her alleged hair loss was permanent and when her symptoms began. Bianchini Dep. III at 50:25-53:1; 53:8-54:3.

Not only did Dr. Bianchini fail to ascertain that Mrs. Earnest's responses to his questions directly contradicted her sworn deposition testimony (*see infra*, Section II C), but the fact Dr. Bianchini did not ask, and, therefore, had no answers to issues that caused him to question the validity of her reported symptoms until after a lawyer brought them to his attention – even though the answers are directly relevant to the applicable DSM-5 criteria and are required for an adjustment disorder diagnosis – demonstrates his lack of expertise to opine on the alleged psychological symptoms and disorder at issue in this case.  This Court should exclude his opinions under Rule 702.  *See, e.g., Mancuso v. Consol. Edison Co. of New York,* 967 F. Supp. 1437, 1445 (S.D.N.Y. 1997) (excluding expert based on lack of qualifications, including "his inability to answer basic questions" about the subject matter of his opinion).

## II.     DR. BIANCHINI'S OPINIONS ARE INADMISSIBLE BECAUSE THEY ARE UNRELIABLE

Dr. Bianchini "cherry-picked" certain facts and ignored others that contradicted or failed to support his original opinion and diagnosis. Courts have consistently excluded expert opinions that "cherry pick" facts and fail to explain results that contradict their conclusions. *See, e.g., Burst v. Shell Oil Co.*, 2015 WL 3755953, at *13 (E.D. La. 2015), aff'd, 650 F. App'x 170 (5th Cir. 2016) (excluding expert's opinion because, *inter alia,* he "cherry-picks data from studies in several

significant instances and fails to explain contrary results in a manner that belies the reliability of his methodology"); *Konrick v. Exxon Mobil Corp.*, 2016 WL 439361, at *13 (E.D. La. Feb. 4, 2016), aff'd, 670 F. App'x 222 (5th Cir. 2016) (excluding expert's opinions because, *inter alia*, she "cherry-picks data and fails to explain results that contradict her conclusion"; noting such failure "casts doubt on the reliability of her methodology"); *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 296 (S.D.N.Y. 2018) (excluding opinion because the expert's "cherry-picking approach is at odds with principles of sound science"); *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) ("Because in formulating his opinion Dr. Hynes cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact.'"). Such is the case with Dr. Bianchini's opinions:

### A. Dr. Bianchini ignored collateral objective evidence that was inconsistent with Mrs. Earnest's reported symptoms and diagnosis

Dr. Bianchini admits he "did not base" the opinions stated in his report and original deposition "on a totality of the data." Bianchini Dep. III at 146:23-147:1. As his deposition testimony made clear—and as his subsequent actions have underscored—his opinions are not informed by sufficient relevant evidence and are based almost exclusively on his May __, 2018 interview of Mrs. Earnest. *See* Bianchini Earnest Rep. (Ex. C) At the beginning of his deposition on January 9, 2019, Dr. Bianchini testified:

> So I should also say that **I have discovered now that despite requesting all of the information, I was not provided with all the information. So, you know, my opinions are now subject to some change** once I review additional information, and so my answers are going to have to be couched based on current information and subject to change based on review of additional information.

Bianchini Dep. Vol. II at 167:4-167:11 (Jan. 9, 2019) ("Bianchini Dep. II") (Ex. D). But his

5

admittedly uninformed opinions have not changed, despite review of substantial conflicting evidence.  This is particularly remarkable considering that although he claims to have reviewed thousands of additional pages of medical records and depositions, Dr. Bianchini's opinions continue to be based solely on interview statements made to him by Ms. Earnest, which are contradicted by the evidence he claims to have reviewed. It is apparent that either Dr. Bianchini did not in fact review the additional evidence he has identified, or he has cherry-picked the interview statements and ignored facts that contradict the opinions in his report, or both.

Dr. Bianchini considers "multiple data points when making a diagnosis: "What the person says; the medical records and history; the test data; the reports of collaterals." Bianchini Dep. III at 63:15-64:1. However, Dr. Bianchini concedes that in his review of all of the thousands of pages of Mrs. Earnest's medical records, he found no corroborating evidence of the symptoms Mrs. Earnest reported to him. Bianchini Dep. III at 101:21-102:4.  Instead of considering that fact (*i.e.*, the absence of any evidence in the medical records that Mrs. Earnest reported or sought out care for her emotional distress) in forming his opinions, he ignored it and instead decided to go solely with Mrs. Earnest's version of events regarding her alleged emotional symptoms.  Such cherry-picking of facts and data renders his opinion inadmissible.

Dr. Bianchini likewise ignored the results of Mrs. Earnest's psychological testing, despite his opinion that the MMPI (which he administers to most every patient he evaluates) is a "reliable method" to determine emotional symptoms and assess "social-emotional functioning." Bianchini Dep. III at 61:2-18; 88:8-23.  Dr. Bianchini conceded that the results of Mrs. Earnest's psychological testing show no impaired social functioning and no "elevated levels of emotional, psychological symptoms": no depressive or anxious features, no anxiety, and no symptoms of social avoidance, social introversion, social discomfort, low self-esteem, self-consciousness,

6

antisocial attitudes or antisocial behavior. Bianchini Dep. III at 69:5-70:7; 74:7-77:24. 78:20-79:2. Further, the testing shows no minimization of symptom complaints. Bianchini Dep. III at 82:25-83:5. Therefore, to reach and maintain his diagnosis of Adjustment Disorder with Anxiety, Dr. Bianchini had to ignore the very psychological test results that he normally relies on to inform his opinions, and rely instead on Ms. Earnest's subjective statements in her interviews. Such cherry-picking of facts and data renders his opinion inadmissible.

Because Dr. Bianchini failed to consider contrary objective evidence and failed to follow his guidelines and those set forth in the psychiatric community, his opinions are unreliable and should be excluded.

**B. Dr. Bianchini's opinion is premised on "facts" directly refuted by Mrs. Earnest's own sworn deposition testimony**

Mrs. Earnest's sworn deposition testimony directly contradicts the very interview statements on which Dr. Bianchini now relies for his opinions and diagnosis. The fact that Mrs. Earnest never sought treatment for her hair loss and did not complain of hair loss until after she filed the lawsuit was an issue of serious concern to Dr. Bianchini (after he was questioned at deposition by counsel for Sanofi). Bianchini Dep. III at 56:7-57:10; 123:22-124:23; 125:18-22. Indeed, he opined that it was an "important question" and it caused him to question whether Mrs. Earnest's complaints about her hair "and even her emotional complaints about alopecia arose entirely in the context of the lawsuit," which "would raise suspicions about the validity of those symptoms." Bianchini Dep. III at 125:18-126:4; 137:14-23. Dr. Bianchini testified that he resolved some of that concern based on what Mrs. Earnest told him during his third interview the morning of his supplemental deposition. Bianchini Dep. III at 123:21-125:8; 126:10-13. In response to his direct question reflected in his notes – "Why no treatment for alopecia?" – Mrs. Earnest told him that she "was attributing it to this other drug, the Arimidex." That was her

7

explanation for the ongoing hair loss and why she didn't seek treatment: "because she had something to attribute it to." Bianchini Dep. III at 122:10-17; 126:14-127:10. However, Dr. Bianchini conceded he does not know whether Mrs. Earnest testified about reasons for not seeking treatment or whether Arimidex could be the cause of her hair loss in either of her depositions, and he made no inquiry to determine if Mrs. Earnest's statements were consistent with her sworn testimony. Bianchini Dep. III 130:12-22; 132:19-133:14. If he had, his concern would not have been resolved. Rather, his "suspicions about the validity" of her symptoms would have been completely validated.

Mrs. Earnest's sworn deposition testimony directly contradicts both her statement that she knew Arimidex can cause hair loss and that she did not seek treatment because she thought her hair loss may be due to Arimidex:

```
                            288
    23 Q.  Mrs. Earnest, did any doctor ever talk to
    24 you about the risks or benefits of Arimidex?
    25 A.  Not that I recall.
                            289
     1 Q.  Do you remember anybody telling you about
     2 side effects of Arimidex?
     3 A.  They could have. I don't know what they
    are right now.
    . . .
                            291
    1 Q.  Have you ever thought it possible that
    2 Arimidex is contributing to the condition, the
    3 current condition of your hair?
    4 A.  No.
    5 Q.  But you've never done any research on it
    6 either, correct?
    7 A.  No.
    8 Q.  You've always thought the condition of
    9 your hair was related to chemotherapy, correct?
    10 A.  Correct.
```

Earnest Dep. at 288:23-289:3; 291:1-10 (Ex. E).

8

Dr. Bianchini's reliance on Mrs. Earnest's interview statements in order to maintain his original opinions and diagnosis of an adjustment disorder is not the product of reliable principles and methods and should be excluded. *See* FED. R. EVID. 702(c)-(d).

## CONCLUSION

For the foregoing additional reasons, the Sanofi Defendants respectfully request that the Court exclude the opinions and testimony of Kevin Bianchini, Phd in their entirety from the above-captioned case.

Date: June 4, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ Douglas J. Moore