**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                      SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Francis v. Sanofi S.A., et al.*, 16-17410
*Earnest v. Sanofi S.A., et al.,* 16-17144

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE DR. SHAPIRO'S AND DR. SMART'S STEM CELL OPINIONS

### INTRODUCTION

Dr. Shapiro, a dermatologist, and Dr. Smart, a dermatopathologist, are two persons Sanofi believes are qualified to opine on stem cells and stem-cell staining, as these matters relate to diagnosing permanent hair loss. But Sanofi stands alone in this regard. Even Dr. Shapiro and Dr. Smart do not believe that they are so qualified. In fact, both are now on record disclaiming expertise on stem cells and stem-cell staining:

- Dr. Shapiro: "I'm a dermatologist. Not a stem cell expert. I'm not a stain expert. This is not what I do."

- Dr. Smart:  Q: "Now, do you consider yourself to be an expert in stem cells in the hair follicle?"   A:  "No."

Because Dr. Shapiro and Dr. Smart lack expertise in follicular stem cells,[1] neither can establish a methodology to tie their assumed facts to their respective opinions. Neither even bothers

---

[1] Exhibit A, Shapiro Dep. 216:9-11, May 19, 2019; Exhibit B, Smart Dep. 156:23-157:1, May 23, 2019.

to try. Dr. Shapiro and Dr. Smart cite no scientific authority whatsoever to support their supplemental opinions.[2]

Worst of all for Sanofi, Dr. Shapiro and Dr. Smart are now on record *admitting* that they do not know whether a positive result from stem cell staining tells us anything about whether a chemotherapy patient's permanent hair loss was caused by chemotherapy.[3]

- Dr. Shapiro: Q: "[D]o you consider yourself sufficiently expert to say what that cytokeratin staining, positive or negative, means?" A: "I would have to defer to a dermatopathologist, really. I'm a dermatologist. Not a stem cell expert. I'm not a stain expert. This is not what I do. I have never ordered that test in over three decades."

- Dr. Smart: "[T]here's no established evidence in the literature to state whether or not – you know, what the mechanism of action, whether or not the stem cells being present or absent have anything to do with PCIA."

Having disclaimed expertise in stem cells and without any scientifically valid basis to offer testimony about stem cells and stem-cell staining as a diagnostic tool, the Court should exclude the testimony of Dr. Shapiro and Dr. Smart under *Daubert*.[4]

## STANDARD

A qualified expert's testimony is only admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

---

[2] Exhibit C, Materials Reviewed by Dr. Shapiro for Supplemental Expert Report; Exhibit D, Materials Reviewed by Dr. Smart for Supplemental Expert Report.

[3] Exhibit A, Shapiro Dep. 215:24-216:12; Exhibit B, Smart Dep. 159:10-21; 160:13-23.

[4] These opinions, which clearly lack any reliability, also are excludable under Rule 702 and Rule 403 because such unsupported testimony would only confuse the issues and/or mislead the jury

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The party offering the expert testimony bears the burden of establishing each of these elements by a preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). And the trial judge is obligated to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Expert testimony is inadmissible when "the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 136 F.3d 935, 937 (5th Cir. 1999). Similarly, an expert's testimony should be excluded where it "go[es] beyond the scope of his expertise in giving his opinions." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)).

Additionally, testimony is not admissible unless "the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case." *Tripkovich v. Ramirez*, No. 13-6389, 2015 WL 3849392, at * (E.D. La. June 22, 2015) (citing *Daubert*, 509 U.S. at 593). Likewise, testimony should be stricken as irrelevant when there is "too great an analytical gap" between the data or facts considered and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, opinion evidence is inadmissible if it is only tethered to existing facts through the *ipse dixit* of the expert. *Id.*

## **ARGUMENT**

Dr. Shapiro and Dr. Smart offer the same speculative opinion on stem cells: Because Dr. Thompson's stem cell staining of scalp biopsies produced "positive" results, plaintiffs do not suffer

3

from permanent hair loss.[5]  But neither Dr. Shapiro nor Dr. Smart possess the expertise to render

such an opinion, and their stem cell opinions lack any indicia of reliability.

## I.      DR. SHAPIRO AND DR. SMART ARE UNQUALIFIED TO OFFER ANY OPINIONS REGARDING STEM CELLS

Sanofi's dermatologist, Dr. Shapiro, acknowledged in his deposition that while he "knows"

about stem cells, he is not a stem cell expert,[6] he has never published an article about stem cells,

he has never ordered the stem cell staining used by the PSC's expert dermatopathologist on

plaintiffs' biopsy slides (cytokeratin-15 or Ki-67),[7] and he is not an expert in these staining

techniques.  In fact, when asked whether he possessed the expertise to interpret a positive or

negative result from stem cell staining, Dr. Shapiro said he would have to defer to a

dermatopathologist:

> Q.      If you were to be presented with a slide with cytokeratin-15 staining one way or another, do you consider yourself sufficiently expert to say what that cytokeratin staining, positive or negative, means?
>
> A.      I would have to defer to a dermatopathologist, really. I'm a dermatologist. Not a stem cell expert. I'm not a stain expert. This is not what I do. I have never ordered that test in over three decades. I can only see somebody ordering it if they're looking for stem cells. One would have to ask a dermatopathologist what they thought. I am not an expert.[8]

But Sanofi's expert dermatopathologist, Dr. Smart, also concedes that she lacks the

expertise to say whether a positive or negative staining result means anything in terms of a patient's

---

[5] Exhibit E, Supplemental Expert Report of Dr. Shapiro at 4 ("This evidence [slides stained with Cytokeratin 15 and Ki-67] does not support a finding and description of permanent  alopecia after chemotherapy."); Exhibit F, Supplemental Expert Report of Dr. Smart at 6 ("Additionally, because the stem cells are present, they do not have permanent hair loss.").

[6] Exhibit A, Shapiro Dep. 209:20-23.

[7] Exhibit A, Shapiro Dep. 210:3-14.

[8] Exhibit A, Shapiro Dep. 215:24-216:17.

permanent chemotherapy induced hair loss.[9]  She also does not consider herself to be an expert in stem cells of the hair follicle.[10] She likewise has never published on the subject of follicular stem cells, she has never worked with any stem cell stains that have any bearing on the hair follicle, and she has likewise never done work characterizing stem cells in the hair follicle.[11]

Simply put, neither Dr. Shapiro nor Dr. Smart are qualified to render opinions about stem cells and their implications in this case.  Both doctors admit—properly so—that they are not qualified to opine as to the meaning of a positive or negative stem cell stain in terms of whether hair loss is permanent.  Without this necessary foundation, it is axiomatic that Dr. Shapiro and Dr. Smart are unqualified to offer any opinion regarding the stem cell staining done on plaintiffs in this litigation, including any interpretation of the results and implication to the hair loss.

## II.   DR. SHAPIRO'S AND DR. SMART'S OPINIONS ARE UNSUPPORTED AND UNRELIABLE

It is well established that reliance on incorrect assumptions and mere scientific theory renders am expert's opinion unreliable. *See Moore*, 151 F.3d at 276; *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 887 (W.D. La. 2001). Here, Dr. Shapiro and Dr. Smart's opinion that plaintiffs' hair loss is not permanent because of the positive stem cell staining is unreliable because they reach this opinion using no discernable methodology and because it rests on multiple incorrect assumptions: specifically, that (1) Ki-67 and Cytokeratin 15 staining is a reliable method for identifying stem cells in the bulge of the hair follicle, and (2) the presence of stem cells in this region means that hair loss is not permanent.

---

[9] Exhibit B, Smart Dep. 156:23-157:14.

[10] Exhibit B, Smart Dep. 156:23-157:1.

[11] Exhibit B, Smart Dep. 151:18-157:8.

At his deposition, Dr. Shapiro acknowledged that he does not know if stem cell staining is reliable, stating "I know amongst hair people, it is considered a stain for stem cells. That's all I can say. I don't know how reliable it is."[12] Dr. Smart similarly conceded that Ki-67 is not a reliable test for the presence of stem cells,[13] and while she claimed at her deposition that Cytokeratin-15 is generally reliable in detecting stem cells, she acknowledged that she has never worked with Cytokeratin-15 and that her report contains no reference to any scientific literature that supports the reliability of using Cytokeratin-15 in identifying follicular stem cells.[14]  Dr. Smart likewise conceded that cells other than follicular stem cells can be stained positive with Cytokeratin-15 and Ki-67[15] and that neither type of staining, as done in this case, adds important information to her analysis of plaintiffs' hair loss.[16]

Next, both Dr. Shapiro and Dr. Smart admit they do not know whether the presence or absence of stem cells has anything to do with permanent chemotherapy induced alopecia.  Dr. Shapiro testified he did not perform any literature searches on this topic and expressly denied any expertise on this topic.[17]  While Dr. Smart did perform literature searches, she could not locate any literature to support the theory that the absence of stem cells in the follicular bulge means that hair loss is permanent.[18]

---

[12] Exhibit A, Shapiro Dep. 212:24-213:03; *see also* 211:17-212:6; 217:17-219:21.

[13] Exhibit B, Smart Dep. 182:11-18.

[14] Exhibit B, Smart Dep. 183:5-19.

[15] Exhibit B, Smart Dep 172:2-7.

[16] Exhibit B, Smart Dep. 155:12-20; 156:5-19.

[17] Exhibit A, Shapiro Dep. 211:17-212:6.

[18] Exhibit B, Smart Dep 159:10-21; 160:13-23.

Rather, to support their opinion, Dr. Shapiro and Dr. Smart rely on testimony from Dr. Tosti's deposition in which she explained how the mechanism of action between Taxotere and permanent hair loss is biologically plausible. This theoretical discussion was just that: theory. Dr. Tosti acknowledged this remains only theory in her most recent deposition[19]—testimony ignored in Dr. Shapiro and Dr. Smart's report.[20] And scientific theory cannot serve as the basis to a reliable opinion. *Moore*, 151 F.3d at 276 ("[T]he law cannot wait for future scientific investigation and research. We must resolve cases in our courts on the basis of scientific knowledge that is currently available.").

When pressed about this opinion during her deposition, Dr. Smart disclaimed it, stating "there's no established evidence in the scientific literature to state whether or not – you know what the mechanism of action, whether or not the stem cells being present or absent have anything to do with PCIA."[21] Dr. Shapiro similarly testified that the mechanisms of action for most forms of alopecia are still largely unknown.[22] This is entirely consistent with the literature cited by both Dr. Shapiro and Dr. Smart in their initial reports or included in their "Materials Reviewed" provided with their initial Expert Reports.[23]

---

[19] Exhibit G, Tosti Dep. 521:1-524:25, April 8, 2019.

[20] Dr. Smart's Supplemental Expert Report also includes a section in which she describes the purported motivations behind the stem cell staining done by plaintiffs' expert, Dr. Thompson. Exhibit F, Supplemental Expert Report of Dr. Smart at 4-7. This type of narrative is inappropriate for multiple reasons. Dr. Thompson's testimony and that of any other any other expert of the PSC speaks for itself, and Dr. Smart's interpretation, which is largely based off of supposition from a few emails and testimony, is unreliable and irrelevant to the opinion she offers in her supplemental report—namely, that plaintiffs' hair loss is not permanent.

[21] Exhibit B, Smart Dep. 159:14-19; 162:8-19.

[22] Exhibit A, Shapiro Dep. 105:15-106:10; Shapiro Dep. 101:24-102:13.

[23] Both Dr. Shapiro and Dr. Smart either cite to or list the following scientific articles that support the position that stem cell involvement in chemotherapy-induced permanent alopecia is biologically plausible, but presently theoretical: Kluger, et al., Annals of Oncology, [insert title], vol. 23, no. 11, p. 2882. "The pathophysiology of this

Thus, one can only ask: given that Dr. Shapiro and Dr. Smart have conceded that the mechanism of injury described by Dr. Tosti, while biologically plausible, remains theoretical, how can these experts offer these supplemental opinions to a reasonable degree of medical probability that plaintiffs have not suffered permanent hair loss based on the same theoretical position?  It is a valid question, and one that should only be answered with the exclusion of the unsupported and scientifically unreliable opinions they now attempt to offer.  Indeed, because their opinions are unsupported, and the experts admit to their lack expertise in the necessary area, the entirety of their supplemental opinions regarding stem cells must be excluded under Rule 702.

## **CONCLUSION**

For the foregoing reasons, Dr. Shapiro and Dr. Smart should be precluded from testifying about stem cells generally and specifically as it relates to this litigation, including interpreting any stem cell staining performed on plaintiffs' pathology slides, and any stem cell study Sanofi alleges was conducted by the PSC.

---

permanent alopecia remains unknown, with the hypothesis involving toxic damage to stem cells. . ."; Miteva, et al., Am J Dermatopathol Volume 33, Number 4 (June 2011), Permanent Alopecia After Systemic Chemotherapy: A Clinicopathological Study of 10 Cases.  "Another hypothesis includes reduction of the stem cells' population in the bulge or papilla. It has been suggested that after the acute damage of the matrix keratinocytes by the chemotherapy, the keratinocytes die in the hypodermis and the remnants of the hair matrix fail to reestablish a contact with underlying dermal papilla." [citing Tran, D, et al.; Austral J Dermatol., 2000;41: 106-108.]; and Tallon, et al., J Amer Ac Derm. (2010); REV 5.0 DTD; YMJD6393_proof; 10 May 2010. "It is postulated that permanent damage to the hair follicle may result from direct toxicity of high-dose chemotherapy on stem cells or hair matrix cells, or separation of the matrix cells from the dermal papilla." It is worth mentioning that Dr. Lynne Goldberg is a co-author on the Tallon, et al. article, and that Dr. Goldberg is a non-testifying, consulting expert for Sanofi.  So, while Sanofi's current testifying experts admit to their separate and respective lack of qualifications to offer the opinions included in their supplemental reports, Sanofi's non-testifying expert's published work supports the PSC's position that stem cell involvement in permanent alopecia, while recognized as a biologically plausible mechanism, remains largely theoretical.

Dated: June 4, 2019

Respectfully submitted:

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT