UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br>Antoinette Durden, Case No. 2:16-cv-16635 | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

**PLAINTIFF ANTOINETTE DURDEN'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE LEARNED INTERMEDIARY DOCTRINE**

**INTRODUCTION**

Dr. Sophy Jancich, Plaintiff Antoinette Durden's prescribing physician, testified that, in late 2011 and early 2012 when Ms. Durden received chemotherapy, she did not know that Taxotere could cause permanent hair loss. Consequently, when she discussed the risks and benefits of a Taxotere chemotherapy regimen with Ms. Durden, she could not educate her patient about the risk of permanent hair loss. Had Dr. Jancich known of this risk, she would have warned Ms. Durden, and if Ms. Durden did not want Taxotere because of this risk, Dr. Jancich would have prescribed another chemotherapy regimen. After all, the ultimate decision rests with the patient—here, Ms. Durden.

That testimony resolves this Motion. It shows that a timely and adequate warning of permanent hair loss would have altered Dr. Jancich's decision to prescribe Taxotere to Ms. Durden. The Sanofi Defendants, therefore, are not entitled to summary judgment based on the learned-intermediary doctrine.

**FACTS**

Ms. Durden presented to Dr. Jancich in 2011 with PR-negative, ER-positive and HER2-positive breast cancer. Ex. A, Dr. Jancich Deposition ("Jancich Dep.") at 10:21-25; Sanofi's Ex. E, Fourth Amended Plaintiff Fact Sheet "PFS" at p. 11-12. Dr. Jancich testified about the process she uses to recommend a course of treatment for breast cancer. She follows the National Comprehensive Cancer Network ("NCCN") guidelines, which provide approved treatment protocols and material side effects for treating various cancers. Ex. A, Jancich Dep. at 187:18-24.

Dr. Jancich initially proposed that Ms. Durden enroll in a clinical trial with an Adriamycin-containing chemotherapy regimen. *Id.* at 104:4-22. But after considering whether to enroll in the clinical trial, Ms. Durden concluded that she did not want therapy with an Adriamycin-containing regimen due to potential side effects, and she refused to enter the clinical trial . *Id.* at 201:21-202:18. Dr. Jancich then prescribed a Taxotere-containing chemotherapy regimen. *Id.* at 202:19-25. However, when Ms. Durden sought treatment in 2011, she had options other than Taxotere. There were numerous chemotherapy regimens appropriate for her type of breast cancer; in fact, several did not include Adriamycin or Taxotere. *Id.* at 193:7-21, 240:4-242:11, 242:25-243:22; Ex. B, NCCN Clinical Practice Guidelines in Oncology, 2011.

Dr. Jancich first became aware of the association between Taxotere and permanent hair loss in approximately 2016. Ex. A, Jancich Dep. at 253:11-19, 263:10-13. After learning of this risk, Dr. Jancich altered how she counsels her patients to include the risk of permanent hair loss associated with Taxotere. *Id.* at 207:4-208:5, 209:8-210-10. Specifically, Dr. Jancich testified: "It leads to longer discussions, especially with our younger breast cancer patients, where the potential for permanent hair loss is a significant concern." *Id.* at 229:10-13. This is consistent

with medical guidelines and her practice. As she explained, she communicates risks and benefits of drugs so that patients, like Ms. Durden, can make educated decisions. *Id.* at 255:14-256:1.

Dr. Jancich would have had this same conversation with Ms. Durden – had Sanofi warned her. *Id.* at 254:9-17, 265:5-21, 268:1-6, 278:7-279:3. Dr. Jancich testified that Ms. Durden was concerned about side effects of chemotherapy, including hair loss. *Id.* at 175:12-24. Dr. Jancich acknowledged that she would have honored Ms. Durden's wishes and proposed an alternative chemotherapy regimen if Ms. Durden did not want to assume Taxotere's risk of permanent hair loss. *Id.* at 254:23-255:2, 257:6-10, 259:7-14, 279:5-9. In fact, Dr. Jancich similarly honored Ms. Durden's wishes to avoid Adriamycin due to potential side effects. *Id.* at 256:3-9.

## LEGAL ARGUMENTS AND AUTHORITIES

### I.     Legal Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.,* 655 F. 3d 435, 439 (5th Cir. 2011). This Court, however, must "refrain from making credibility

determinations or weighing the evidence…" *Devon Enterprises, LLC v. Arlington Independent School Dist.,* 541 Fed. Appx. 439, 441 (5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's duty is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## II. Evidence Exists to Preclude Summary Judgment Under the Learned-Intermediary Doctrine.

In products liability claims involving prescription drugs, Louisiana applies the learned-intermediary doctrine, which permits a drug manufacturer to discharge its duty to warn consumers by adequately warning physicians. "The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician*." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 268 (5th Cir. 2002) (original emphasis). Thus, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient." *Id*. at 267 (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999)).

Under the learned intermediary doctrine, to maintain a failure-to-warn claim, the plaintiff must show two things at trial:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.
>
> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

*Id.* at 265-66.

Sanofi believes that Ms. Durden cannot make either showing.  But the evidence is squarely to the contrary. At a minimum, the evidence is such that the learned-intermediary doctrine cannot be resolved on summary judgment in this case.

### A. Sanofi Failed to Warn Dr. Jancich of the Risk of Permanent Hair Loss Associated with Taxotere.

The LPLA defines an adequate warning in the following manner:

> "Adequate warning" means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.

La. R.S. 9:2800.53. In late 2011 and early 2012, when Ms. Durden was treated, the Taxotere label contained *no* "adequate warning" of the risk of permanent hair loss.  Despite this, Sanofi now argues that evidence is lacking that Dr. Jancich would have read an adequate warning had it been provided. While Sanofi attempts to create the impression that any warning would have been futile, Sanofi's incomplete, misleading, and largely irrelevant citations to Dr. Jancich's deposition ignore her unequivocal testimony that she would have heeded an adequate warning had it been provided.

For example, Dr. Janchich testified that:

- She is familiar with the prescribing information for Taxotere, including label and packet information on adverse reactions, post-marketing experiences, patient counseling information, and highlights of prescribing information.  Ex. A, Jancich Dep. at 260:15-20, 261:5-8, 261:12-262:13, 263:18-264:1, 265:25-267:1, 268-16-23.

- She first became aware of the association between Taxotere and permanent hair loss in approximately 2016 or 2017.  *Id*. at 253:11-19, 263:10-13.

- She was unaware of the risk of permanent hair loss associated with Taxotere at the time she prescribed Taxotere to Ms. Durden. And if she had been aware, she would have warned Ms. Durden about the risk. *Id.* at 254:9-17, 265:5-21, 268:1-6, 278:7-279:3.

- If Ms. Durden had decided not to use Taxotere in her treatment regimen, she would have respected that decision to use an alternate drug as the ultimate decision rests with the patient. *Id*. at 254:23-255:2, 257:6-10, 259:7-14, 279:5-9.

- Today, it is per practice to inform patients considering treatment with Taxotere that the drug is associated with permanent hair loss. *Id.* at 259:22-260:1.

- Today, it is her practice to give her patients the choice as to whether they accept a chemotherapy regimen that includes Taxotere. *Id.* at 260:2-5.

- Because she now knows Taxotere is associated with a risk of permanent hair loss, she now recommends Taxol to her patients instead of Taxotere. *Id.* at 228:20-229:4.

Based on this testimony, more than sufficient evidence exists to raise a question of fact as to causation in this case. Any arguably conflicting testimony Sanofi points to (assuming such testimony is even arguably inconsistent) presents a fact issue for the jury.

Thus, rather than being futile, a timely, adequate warning of the risk of permanent alopecia prior to Dr. Jancich prescribing Taxotere to Plaintiff would have unquestionably altered Dr. Jancich's decision to recommend Taxotere and, ultimately would have resulted in Ms. Durden not receiving Taxotere infusions. That Dr. Jancich did not recall the specific dates she read the Taxotere label in its entirety is irrelevant to the issue of whether a label change, or any of the

various other methods Sanofi could have used to warn, would have altered her prescribing recommendation.  Equally irrelevant for purposes of this motion is that Dr. Jancich relied on third-party resources like UpToDate for information on Taxotere because those resources are updated along with revisions to the prescription drug labeling.  *Id.* at 119:19-120:11, 124:23-125:5, 126:6-127:10.

Accordingly, Sanofi failed to meet its summary judgment burden to show there is no genuine issue of material fact as to the adequacy of its warning.  *Patrick v. Tractor Supply Co.*, 2017 WL 396301, at *2 (E.D. La. Jan. 30, 2017) ("A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.").  There is more than sufficient evidence here to raise a question of material fact as to the learned intermediary doctrine.

**B.  Sanofi's Failure to Warn Was Both a Cause in Fact and the Proximate Cause of Plaintiff's Injury.**

As discussed, Ms. Durden must also show at trial that a drug company's failure to warn was the cause in fact and proximate cause of her injuries.  *See Jenkins v. Bristol-Myers Squibb, et al.*, 2015 WL 501230, at *3 (E.D. La. Aug. 21, 2015) (quoting *Stahl,* 283 F.3d at 266).  Sanofi incorrectly suggests that the only way to establish causation is through evidence that Ms. Durden's prescribing physician, Dr. Jancich, would not have used or prescribed Taxotere had she received a stronger warning.[1]  This is one method to establish causation; it is not, however, the exclusive means to do so.

---

[1] With Plaintiff's testimony that she would have refused Taxotere had she been properly warned of permanent hair loss, Ex. C, Durden Depo at 213:25-215:23; 355:22-357:12, Plaintiff has demonstrated that Dr. Jancich would not have administered Taxotere to Plaintiff had she been adequately warned.  See Ex. A, Dr. Jancich Depo at 254:9-256:23.

Causation can also be established by showing that, if properly warned, a plaintiff's treating physician would have acted differently such that the injury alleged by the plaintiff could be avoided. *See In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, 2017 WL 1393480, at *3(E.D. La. April 17, 2017). To assist in easing the cause-in-fact burden on a plaintiff, Louisiana recognizes the "heeding presumption." This presumption assumes that if an adequate warning had been provided, that warning would have been followed and the plaintiff would not have been injured. *Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987); *In re: Xarelto*, 2017 WL 1393480, at *3; *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 797 (E.D. La. Aug. 24, 2011). This presumption may be rebutted with evidence showing that an adequate warning would have been futile under the circumstances. *Bloxom*, 512 So.2d at 850.

As previously explained, had an adequate warning been provided to Dr. Jancich, such a warning would not have been futile. To the contrary, Plaintiff has introduced affirmative evidence showing that Dr. Jancich would have altered her decision to prescribe Taxotere to Ms. Durden had she been warned of the risk of permanent alopecia. Ex. A, Jancich Dep. at 254:9-255:2, 278:7-279:9. Plaintiff is therefore entitled to the benefit of the heeding presumption under Louisiana law.

       **1.**    **Sanofi's Narrow Interpretation of Causation Does Not Align with Precedent Concerning the Learned-Intermediary Doctrine.**

Citing *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991), and *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 18, 2018), Sanofi argues that plaintiff must demonstrate causation here not only by showing that a proper warning would have changed Dr. Jancich's prescribing decision, but also by showing that Dr. Jancich would have declined to prescribe Taxotere had she received a proper warning. Louisiana federal courts, however, are not so narrow in their analysis of causation; instead, courts examine whether the plaintiff's physician would have acted differently in response to an adequate warning such as to avoid the plaintiff's

injuries.  *See In re: Xarelto*, 2017 WL 1393480, at *3 (denying summary judgment due to genuine issues of fact regarding whether plaintiffs' doctors were adequately warned and whether a different warning "would have changed the doctors' actions and avoided or lessened Plaintiffs' injuries"); *Frischertz*, 2012 WL 2952427, at *2-3 (denying summary judgment where the prescriber testified that, although he still prescribed the drug, he would have disclosed the stronger warning to his patients and deferred to the patient's wishes on whether to take the drug, and the patient submitted an affidavit that she would have refused the drug had she been properly warned); *cf. Harris v. Merck & Co., Inc.*, 2012 WL 5384720, at *6 (W.D. La. Nov. 1, 2012) (denying Rule 12(b)(6) motion to dismiss allegations that prescribing physician would have been deterred from prescribing an 80 milligram dose had an adequate warning of the dangers associated with that dose been provided).

Here, Dr. Jancich unequivocally testified that, had she received an adequate warning of the risk of permanent hair loss, she would have counseled plaintiff on the risk involved and would have respected plaintiff's decision to select a different treatment regimen.  Ex. A, Jancich Dep. at 254:9-255:2, 278:7-279:9.  Taken together, Dr. Jancich's testimony and plaintiff's equally unequivocal testimony that she would have refused to use Taxotere had she been adequately warned of its risk of permanent hair loss, Ex. C, Durden Dep. 213:25-215:23; 355:22-357:12, easily satisfies the causation element of the learned-intermediary doctrine, and at the very least creates a genuine dispute of fact.

> **2. Objective Evidence also Supports the Conclusion that Plaintiff has Satisfied the Causation Element of the Learned-Intermediary Doctrine.**

As Judge Fallon has recognized, under Louisiana law, subjective testimony from the treating physician on causation may be "supplement[ed] … with objective evidence of how a

reasonable physician would have responded to an adequate warning." *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at at n.6 (E.D. La. Feb. 20, 2008) (internal quotations and citations omitted); *see also*, *Grenier v. Medical Engineering Corp.*, 243 F. 3d 200, 208 n. 4 (5th Cir. 2001)("a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded.") (internal quotations and citations omitted). Here, plaintiff has supplemented Dr. Jancich's testimony with evidence that a reasonable physician would have altered his or her prescribing practices had he or she been adequately warned of the risk of permanent hair loss by Defendants. *See* Ex. D, Dr. Linda Bosserman Dep., Ex. 9, pp.20; 49-50; 52-53. Like Dr. Jancich, a reasonable doctor also would not have prescribed Taxotere for a patient like Ms. Durden without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of the risks. *Id*. Accordingly, the existence of both objective and subjective evidence of causation precludes the entry of the summary judgment under the learned-intermediary doctrine.

> **3. Plaintiff Has Established Causation Under the Learned-Intermediary Doctrine Because Had Dr. Jancich Known of the Risk of Permanent Hair Loss in 2011, She Would Have Changed Her Prescribing Decision.**

Sanofi's sweeping and unsubstantiated claim that there is "no testimony" from Dr. Jancich that the risk of permanent hair loss was not sufficient to change her decision to prescribe Taxotere is flatly contradicted by Dr. Jancich's testimony. As noted, Dr. Jancich was unwavering in her testimony that, had she been made aware of the risk of permanent hair loss associated with Taxotere in 2011, she would have discussed it with Ms. Durden, and if Ms. Durden had chosen not to use Taxotere in her treatment regimen, she would have respected that decision as the ultimate decision on treatment rests with the patient. Ex. A, Jancich Dep. at 254:9-255:2, 278:7-279:9.

Moreover, regardless of whether Taxotere may be an effective drug, other equally effective chemotherapy drugs that do not carry the risk of permanent hair loss were also available to Dr. Jancich and could have been prescribed had plaintiff elected to utilize a different regimen. Ex. B, NCCN Clinical Practice Guidelines in Oncology, 2011.  Had Sanofi warned Dr. Jancich of the risk of permanent hair loss, Ms. Durden would have made an informed decision regarding which treatment option she would choose.  Clearly, Dr. Jancich would have honored Ms. Durden's choice and recommended other, equally effective options. Ex. A, Jancich Dep. at 193:7-21, 240:4-242:11, 242:25-243:22, 257:6-10.

Accordingly, in view of Dr. Jancich's testimony that had she known of the risk of permanent hair loss in 2011, she would have disclosed that risk to Ms. Durden and would have respected Ms. Durden's decision to utilize an alternate chemotherapy regimen, Ms. Durden has sustained her burden of proving that an adequate warning would have changed her physician's actions in recommending  Taxotere.

### III. Plaintiff's Redhibition Claim is Also Not Subject to Dismissal.

Sanofi asserts that Plaintiff's redhibition claim is controlled by the learned-intermediary doctrine and fails for the same reasons. Sanofi is mistaken, and in fact the only case it cites in support of this argument is *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), a case decided under Texas law—not Louisiana redhibition law or the LPLA.[2] Sanofi also argues that it is entitled to summary judgement on the redhibition claim because Plaintiff cannot show that Taxotere contained a vice rendering it useless or inconvenient. But redhibition, properly understood, requires no such thing. Louisiana redhibition law allows proof that the plaintiff would not have used the drug had she known of the undisclosed risk. *Pipitone v.*

---

[2] Of course, if the redhibition claim is controlled by the learned-intermediary doctrine, then Sanofi's argument fails for the reasons already discussed.

*Biomatrix, Inc.*, 288 F. 3d 239, 251 (5th Cir. 2002); *Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F. Supp. 3d 1187,1200 (E.D. La. August 29, 2016); and *In re Vioxx Products Liability Litigation*, 2010 WL 11570867, at *10 (E.D. La. March 31, 2010). Here, Ms. Durden's testimony that she would not have taken Taxotere had the risk of permanent hair loss been disclosed, Ex. C, Durden Dep. 213:25-215:23; 355:22-357:12, forecloses summary judgment on her redhibition claim.

Sanofi ignores the great weight of this case law and instead cites *In Re: Rezulin Prods. Liab. Litig.*, 361 F. Supp. 2d 268, 280 (S.D.N.Y. 2005). The plaintiff in *Rezulin*, however, raised no redhibition claim. *Id.* at 280. The New York court's passing statement about what redhibition requires is *dictum*. What's more, this *dictum* is contrary to the standard of proof required by federal and state courts in Louisiana.

## CONCLUSION

For these reasons, the Sanofi Defendants have failed to meet their burden to show entitlement to summary judgment on Plaintiff's failure to warn and redhibition claims. Accordingly, summary judgment should be denied.

Dated: June 11, 2019                                Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
Jessica A. Perez (#34024)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>  */s/ Christopher L. Coffin*
>  CHRISTOPHER L. COFFIN