## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In Re: TAXOTERE (DOCETAXEL)**               **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGATION**

                                             **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

**Antoinette Durden, Case No. 2:16-cv-16635.**

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR
### SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

Plaintiff Antoinette Durden's claims are prescribed under the one-year statute. Ms. Durden admits that by September 2012, her hair had not regrown as she had expected, and that she was "painfully aware" of this fact from that day forward, but did not file suit until 2016. Opp. at 8. Ms. Durden testified that her allegedly disfiguring, incomplete hair growth has not changed since 2012—and that she attributed this ongoing condition to Taxotere as early as 2013. Moreover, Ms. Durden's prescribing oncologist Dr. Sophy Jancich testified that she informed Ms. Durden that her hair was not going to grow back, and that this incomplete regrowth was due to chemotherapy, as early as 2012—more than three years before Ms. Durden filed suit. In other words, by 2012, Ms. Durden had substantially more notice than required by Louisiana law for her claim to accrue. Louisiana law does not suspend prescription where, as here, Plaintiff fails to file suit based on a known injury and cause for as many as three years. As set forth in Defendants' Memorandum (Rec. Doc. 6077) ("Memo"), summary judgment is warranted.

In her Opposition (Rec. Doc. 7372) ("Opp"), Plaintiff does not dispute the essential facts set forth in Sanofi's Memo. In fact, Plaintiff notably:

- Admits that her alleged injury occurred in September 2012 or earlier;

- Admits that she has been "painfully aware" of her alleged injury since September 2012;

- Admits that as early as 2012, she discussed her lack of hair regrowth with Dr. Jancich (who informed her "that if it's not coming back, it's likely not going to come back," and "[t]hat

the reason she had both lost her hair and the reason it wasn't coming back was because of the chemotherapy");

- Refers to her own deposition testimony that "when [her] hair hadn't grown back a year after chemotherapy," she thought "it was because of the Taxotere";

- Identifies <u>no</u> effort to investigate her injury from 2013 to 2016;

- Cites <u>no</u> Louisiana case holding that prescription is suspended when a plaintiff was aware of her alleged injury and its cause for as many as three years prior to filing suit, and simply failed to take legal action.

Because Plaintiff's Opposition does not identify any factual or legal grounds to avoid summary judgment, the Court should grant Sanofi's Motion.

## I.     MS. DURDEN'S COMPLAINT IS FACIALLY UNTIMELY

Antoinette Durden filed her lawsuit on November 29, 2016, claiming the injury of "[p]ermanent, irreversible and disfiguring alopecia" beginning in September 2012.   Under Louisiana's one-year prescription statute, Ms. Durden's suit is untimely on its face and subject to summary judgment.  La. Civ. Code. Art. 3492; *see also Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345 (5th Cir. 2010) (finding medical product liability claims prescribed).

Plaintiff appears to argue that her claims are not facially untimely because she did not know about them at the time of her alleged injury in September 2012.  *See, e.g.*, Opp. at 5 ("Importantly, the allegations of this AMC were not alleged to have been known by Ms. Durden at the time of her infusion.").  Plaintiff misconstrues article 3492 and Louisiana law.  <u>Facial timeliness</u> turns on the plain text of article 3492.  Neither incorporates concepts of *contra non valentem*, a judicially-created <u>exception</u> to article 3492.  Article 3492 does not require knowledge of injury, cause, or any aspect of a plaintiff's asserted claim for prescription to commence.[1]  Rather, article 3492

---

[1] Article 3492 thus contrasts with statutes that *do* date prescription from a defendant's conduct, or a plaintiff's discovery thereof.  *Compare* La. Civ. Code. Art. 3492 (measuring prescription from "the day injury or damage is sustained") *with, e.g.*, La. Stat. Ann. § 9:5628 (measuring prescription from "the date of the alleged act, omission, or neglect, or […] the date of discovery of the alleged act, omission, or neglect"); La. Stat. Ann. § 6:787 (same for actions against financial directors and officers); La. Stat. Ann. § 35:200 (same for actions against notaries).  "Laws

measures prescription "from the day injury or damage is sustained." Here, Plaintiff has alleged that date was in September 2012. *See* SFC at 10, 12, AMC at 181; SOF ¶¶ 8, 10-12, 15-16 (admitting that "Ms. Durden has suffered from hair loss from September 2012 to the present"); Opp. at 8 ("Ms. Durden likewise does not dispute that her hair did not grow back as she hoped it would in September 2012. Ms. Durden has been painfully aware of her hair loss since that time.").[2] There is no question that Plaintiff's claim is facially untimely, and Plaintiff accordingly bears the burden of showing that her action is not prescribed. *See, e.g.*, *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1017 (La. 2012); *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 256 (La. 2010); *Bartucci v. Jackson*, 246 F. App'x 254, 257 (5th Cir. 2007); *LaShip L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 323 (5th Cir. 2017).

## II.   PLAINTIFF FAILED TO PROVE AN EXCEPTION TO THE FACIAL PRESCRIPTION OF HER CLAIMS

In order to save her claims from their facial untimeliness under article 3492, Plaintiff was required to prove an exception to prescription under the doctrine of *contra non valentem*. Plaintiff has not demonstrated—as the doctrine requires—that she lacked knowledge sufficient to excite the attention of a reasonable person to inquire into whether she had a cause of action. *See Marin*, 48 So. 3d at 249-50. To the contrary, the record shows that:

1.   Before and after receiving Taxotere, Ms. Durden was made aware of hair loss associated with chemotherapy by medical professionals multiple times, and she understood hair loss to be a risk of chemotherapy before and after treatment. *See* Memo at 7-8, 16; Opp. at 9; *see also* Durden Dep. 249:24-257:21 (noting warnings and info binder provided in August 2011, before chemo); Jancich Dep. 132:1-135:25 (noting that binder stated "[i]n most cases, hair grows back after chemo," and that she may have told Plaintiff that "most hair grows back." (emphases added).

---

on the same subject matter must be interpreted in reference to each other," and differences between them are presumed intentional. *See* La. Civ. Code Ann. art. 13; *Borel v. Young*, 989 So. 2d 42, 59-60, *on reh'g* (La. 2008).

[2]   While criticizing Sanofi's reference to Plaintiff's own allegation that her injury occurred six months after chemotherapy in September 2012, Plaintiff identifies the same or even earlier dates for all injuries she alleges. *See, e.g.*, Opp. at 6-8; PFS § VI.5 (dating all alleged injuries to March 2012); SOF ¶ 8 (admitting that "Ms. Durden has suffered from hair loss from September 2012 to the present.").

2.   Ms. Durden experienced hair loss during chemotherapy, her hair did not regrow as she expected and she testified that from 2012 to 2016, she was "completely bald." Opp. at 8; Durden Dep. 25:21-27:8.

3.   From 2012 to present, Ms. Durden allegedly has continually experienced "Persistent total alopecia – No hair growth on [her] head or body after six (6) months of discontinuing Taxotere," "Permanent/Persistent Hair Loss on Scalp," "[d]iffuse thinning of hair: total scalp (top, sides, temples)," and "visible bald spots on [her] head no matter how [she] style[s her] hair." Memo at 6; Opp. at 6.

4.   Ms. Durden has been "painfully aware" of her injuries since September 2012. Opp. at 8.

5.   As early as 2012, and in any event prior to October 22, 2015, Dr. Jancich and Ms. Durden "discussed that if [her hair was] not coming back, it's likely not going to come back." Jancich Dep. at 92:25-93:21 (Jan. 12, 2018); *see also* 147:10–23 (Feb. 2, 2018) (Dr. Jancich's last contact with Ms. Durden was October 22, 2015).

6.   As early as 2012, and prior to October 2015, Dr. Jancich informed Ms. Durden that "the reason she had both lost her hair and the reason it wasn't coming back was because of the chemotherapy." *See* Jancich Dep. at 93:13–95:5; 147:10–23.

7.   Ms. Durden testified that by February 2013, "when [her] hair hadn't grown back a year after chemotherapy," she thought "it was because of the Taxotere." Durden Dep. at 32:6-32:13.

No exception to prescription applies where, as here, a plaintiff fails to file suit based on a known injury that she attributed to the alleged cause three years before filing suit. *See, e.g.*, *Carter*, 391 F. App'x at 344–45 (finding claims prescribed where plaintiff suspected injuries were caused by either allergies or Zicam at least one year and five days before filing suit). Still, Ms. Durden argues it was "reasonable" for her not to file suit—for a *full three years*—because (1) she thought her injury was temporary and not permanent, and (2) she did not know she was the victim of a tort. *See* Opp. at 9, 12. Neither argument prevails under the facts or law.

A.   **Belief that an injury is temporary is immaterial under Louisiana law.**

Ms. Durden's professed belief that her hair loss was temporary, rather than permanent, cannot support a claim of *contra non valentem*. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422

(5th Cir. 2016) ("The Louisiana Supreme Court has determined that the fourth category [of *contra non valentem*] **does not apply where the only contention is that the Defendants failed to inform the Plaintiffs that a condition was permanent**.") (citing *Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996)) (emphasis added).  Such information pertains to the extent or duration of an injury, and is immaterial to prescription.  *See id.*; *Fontenot*, 674 So. 2d at 964 ("Plaintiffs' contention that Dr. Bertuccini's failure to inform them that Mrs. Fontenot's condition was permanent versus temporary is of no consequence. Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription.").  Notice of an allegedly temporary injury is sufficient notice of a permanent injury for prescription.  This is a legal question squarely answered by the Louisiana Supreme Court, not a fact question subject to Plaintiff's perceptions or testimony.[3]  *See id.*

### B.    Record evidence shows Plaintiff had notice of her incomplete hair regrowth.

Besides being irrelevant under Louisiana law, *see Smith*, 827 F.3d at 422; *Fontenot*, 674 So. 2d at 964, Ms. Durden's reported belief that her hair loss was temporary for more than four years is unreasonable and unsupported by record evidence in this case.  Contrary to Plaintiff's claim, *see* Opp. at 9, no Taxotere label has ever characterized hair loss as "temporary," including the label in effect during Ms. Durden's treatment.  *See* Sanofi_000690, at 1, 57.

Moreover, Dr. Jancich testified that in the months following Ms. Durden's treatment, she explicitly told Ms. Durden that her hair was unlikely to grow back, *and that this lack of regrowth was due to chemotherapy*:

> Q.   Well, did -- and just so we're clear on timeframe, after her chemotherapy,  did  you  have  a  discussion  with  her  about

---

[3]  For this reason, Ms. Durden's argument that she was "hopeful" her hair would return is irrelevant.  Indeed, Ms. Durden testified that on the date of her deposition she remained "hopeful that my hair can come back."  Durden Dep. 211:22-212:1.  Putting aside the questions this raises about her allegations of "permanent" hair loss, such hope clearly did not prevent Ms. Durden from perceiving injury and filing suit—and cannot have suspended prescription.

chemotherapy being the reason her hair had not regrown?

A.  Yes.

Q.  Tell me about that discussion.

A.  Again, she did not have the hair regrowth, as we had discussed. And I think it past two months -- it was past two months of the postchemotherapy, and she mentioned her hair wasn't coming back. **And then we had discussed that if it's not coming back, it's likely not going to come back**.

***

Q.  […]in the context of your discussions with Ms. Durden and her hair loss, it was your opinion that the reason both for her hair loss during chemotherapy and the reason it wasn't coming back was because of chemotherapy, correct?

A.  Yes.

Q.  And is that what you told Ms. Durden?

A.  Told her that her hair wasn't coming back because of chemo?

Q.  That the reason she had both lost her hair and the reason it wasn't coming back was because of the chemotherapy?

A.  I'm pretty certain we had that discussion, that it was discussed at one of her visits.

Jancich Dep. 93:8-21; 94:13-95:4 (emphasis added).  Dr. Jancich's last visit with Ms. Durden was October 22, 2015, and the two have not had any contact since.  Jancich Dep. 147:10–23.  Thus, this conversation necessarily took place more than a year before Ms. Durden filed suit on November 209, 2016—and likely many years.  Dr. Jancich's testimony flatly contradicts Plaintiff's arguments that prior to 2016, she lacked notice that her alleged hair loss might be permanent.  *See e.g.*, Opp. at 9.  Rather than try to dispute or deny this testimony, Ms. Durden simply ignores it.[4]

---

[4] Plaintiff's arguments regarding Dr. Jancich state only that the doctor was unaware of permanent hair loss as a potential risk of chemotherapy at the time she prescribed Taxotere for Ms. Durden in 2011.  *See, e.g.*, Opp. at 9-10, 12.  Plaintiff does not address or deny Dr. Jancich's account that after Ms. Durden's chemotherapy in 2012—or in any event by October 2015—she directly told Ms. Durden that her hair was unlikely to grow back.  *See* Jancich Dep. 93:8-21.  Thus no dispute of fact can exist on this issue.

Further, Dr. Jancich's testimony refutes Plaintiff's suggestion that any attempt to investigate her potential claims would have been futile. *See* Opp. at 11-12. Such argument is misplaced under the facts of this case, where Plaintiff duplicitously argues that she *did* investigate her injury in 2013, *see* Opp. at 12-13, and undisputed testimony establishes that Dr. Jancich advised Ms. Durden of her potential injury and cause as early as 2012. In addition, the argument is legally misplaced. Futility is not an exception to a Plaintiff's duty to investigate a known injury and potential causes. *See, e.g.*, *Bartucci*, 246 F. App'x at 258 n.3 (plaintiff's "failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription."); *Lennie v. Exxon Mobil Corp.*, 251 So. 3d 637, 648 n.6 (La. App. 2018) (rejecting plaintiff's argument that "even if they had asked Mr. Lennie's doctors about the cause of his lung cancer, it would not have mattered").

Refuted by fact and law, Plaintiff's arguments cannot establish an exception to prescription, and summary judgment is warranted.

**C.**   **Ms. Durden knew the relationship between her injury and the product.**

Plaintiff's vague allusion to unknown tortious acts does not alter the notice needed for a product liability claim to accrue. *See* Opp. at 4, 14. In the context of a product liability suit, notice of an injury caused by a product *is* notice of a possible tort. Here, Plaintiff has admitted that she attributed her incomplete hair regrowth *exclusively* to Taxotere as early as February 2013:

> Q.   Well, when your hair hadn't grown back a year after chemotherapy, did you think it might be because of the other drug you took?
>
> A.   No.
>
> Q.   Did you think it was because of the Taxotere?
>
> A.   Yes.

Durden Dep. 31:24-32:13. Plaintiff had ample notice of the causal association between the product

and her injury years before filing suit—no other notice is needed or relevant.

Judge Fallon of this Court clearly articulated the standard of notice needed to trigger prescription for a product liability claim in *Xarelto*:

> The doctrine of *contra non valentem* states that prescription begins [….] when the plaintiff has actual or constructive knowledge of a **causal relationship between the object or product and the injury**. The plaintiff does not need to be aware of exactly which legal claims and theories will be used in his case in order to be put on inquiry notice. There is no requirement that a patient be informed by an attorney or physician of a possible claim before prescription begins to run.

*In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017) (internal cites and quotes omitted).  Plaintiff's argument that the injury in *Xarelto—internal bleeding*—was more open and obvious than her disfiguring hair loss (of which she was "painfully aware") is unavailing.  Opp. at 8, 10.  Plaintiff admitted she has thought since 2013 that her hair did not regrow because of Taxotere.  That is sufficient as a matter of law.  *See id.*  There is no requirement that (1) an attorney, a doctor, or the defendant confirms that a cause of action exists, or that (2) Plaintiff know the precise parameters and details of her possible legal theories.

Plaintiff asks this Court to hold that her cause of action did not accrue until she saw counsel's advertisement regarding this litigation in "approximately" 2016—an argument that Louisiana law flatly rejects.  "There is no requirement that a patient be informed by an attorney or physician of a possible [claim] before prescription begins to run."  *Breaux v. Danek Med., Inc.*, No. CIV. A. 95-1730, 1999 WL 64929, at *6 (E.D. La. Feb. 4, 1999); *see also Rivera v. Huntington Ingalls, Inc.*, No. CV 18-6795, 2018 WL 6326451, at *3–4 (E.D. La. Dec. 3, 2018) (rejecting plaintiff's argument that claim accrued when she saw TV advertisement); *Causby v. Perque Floor Covering*, 707 So. 2d 23, 27 (La. 1998) (plaintiff may not "sit on [her] rights indefinitely until an attorney tells [her s]he is actually entitled to benefits.").  Nor do advertisements excuse Plaintiff's

failure to file suit, given that she knew her injury had not changed for years before she saw the ads and she believed Taxotere was the cause.  *See Rivera*, 2018 WL 6326451, at *3–4; *Breaux*, 1999 WL 64929, at *5.

Plaintiff also does not need to know the precise parameters of her potential legal cause of action.  That is, she did not need to know that Sanofi allegedly failed to warn her of the risk of permanent alopecia to trigger a duty to investigate and file suit.  That argument conflates *reasonable inquiry notice* with the detailed averments made in a legal filing.  The purpose of inquiry notice is to gather facts in order to determine either that no cause of action exists or that a lawsuit is warranted.  Inquiry is not triggered *after* the facts have been gathered.  To agree with that logic would effectively write the inquiry period out of the law, because the trigger for inquiry and the trigger for lawsuit filing would be exactly the same.[5]

Seeking to obscure the fact that she has had notice of her potential claims since at least 2013, but failed to bring suit, Plaintiff advances the spurious allegation that discovery has "supplied evidence" suggesting Sanofi engaged in a campaign that "prevented" Dr. Jancich and similar oncologists from "learning of the association between Taxotere and permanent hair loss." *See* Opp. at 13-14.  But the record evidence suggests the opposite: Dr. Jancich directly informed Ms. Durden that her hair was unlikely to grow back as early as 2012, and that the cause of this lack of regrowth was chemotherapy.  *See* Jancich Dep. 93:8-21; 94:13-95:4.  Plaintiff herself believed that her hair did not regrow because of Taxotere as early as 2013.  That Dr. Jancich did not tell

---

[5] Plaintiff mischaracterizes what constitutes constructive notice of her cause of action under Louisiana law. Louisiana law does ***not*** require, nor does Sanofi does contend, that Ms. Durden needed to know the "dermatological definition of permanent alopecia," *see* Opp. at 10, the "complex pharmacological and epidemiological questions associated with linking permanent alopecia to Taxotere use," *see* Opp. at 14, nor that Taxotere caused her alleged hair loss "to the exclusion of any other chemotherapy drug, non-chemotherapy drug, genetic condition, or environmental factor," *see* Opp. at 11, for prescription to run.  By these standards, Plaintiff's claims would still not have accrued—which would be an absurd result.  *See, e.g.*, *Oil Ins. Ltd. v. Dow Chem. Co.*, 977 So. 2d 18, 21, 23–24 (La. App. 2007), *writ denied*, 976 So. 2d 1284 (La. 2008) ("certitude is not a prerequisite to the commencement of prescription.").

Plaintiff that her hair loss was caused by Taxotere alone is legally irrelevant—Ms. Durden already believed that to be true. *See Carter*, 391 F. App'x at 344–45 (finding claims prescribed where plaintiff suspected injuries caused by either allergies or Zicam, despite physician's suggestion that allergies may have been to blame); *Breaux*, 1999 WL 64929, at *6 ("Whether his doctor or the defendant notified plaintiff of the causal connection between his injury and the [medical product] is of no moment.").

Even if substantiated, however, this argument would fail under Louisiana law, as Plaintiff's allegations about Sanofi's conduct are not facts that speak to her awareness of claims or duty to investigate. *See In re: Xarelto*, 2017 WL 4517287, at *1 (rejecting plaintiff's argument that "Defendant's failure to properly instruct Plaintiff's physicians" interrupted prescription); *Breaux*, 1999 WL 64929, at *6 ("Whether his doctor or the defendant notified plaintiff of the causal connection between his injury and the [medical product] is of no moment."); *see also supra* at 6-7 (futility does not relieve plaintiff's duty to investigate). The internal documents Plaintiff cites as Exhibits C and F through I are accordingly inapposite. Sanofi notes that the documents are provided with no context, nor – most importantly – any evidence that Ms. Durden ever saw any of these documents or relied upon them in determining whether to investigate or file her claim. Under the facts and applicable law, Ms. Durden cannot establish an exception to prescription, and her claims are barred by article 3492.

Ms. Durden's failure to file suit was unreasonable under the undisputed facts of this case, and renders the doctrine of *contra non valentem* inapplicable under Louisiana law. *Carter*, 391 F. App'x at 345-46 ("From the very outset, Carter suspected and attributed her injury to Zicam, and she never wavered in that belief. [...]Thus, the Carters' filing was at least five days late.").

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion.

Date: June 19, 2019

Respectfully submitted,

/s/ Douglas J. Moore

Douglas J. Moore (Bar No. 27706)

**IRWIN FRITCHIE  URQUHART & MOORE LLC**

400 Poydras Street, Suite 2700

New Orleans, LA  70130

Telephone: 504-310-2100

Facsimile:  504-310-2120

dmoore@irwinllc.com

Harley Ratliff

Adrienne L. Byard

**SHOOK, HARDY & BACON L.L.P.**

2555 Grand Boulevard

Kansas City, Missouri 64108

Telephone: 816-474-6550

Facsimile:  816-421-5547

hratliff@shb.com

abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2019, I electronically filed the foregoing with the Clerk of

the Court using the ECF system which sent notification of such filing to all counsel of record who

are ECF participants.

/s/ Douglas J. Moore