UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION
                                               SECTION "H" (5)
THIS DOCUMENT RELATES TO:

Antoinette Durden, Case No. 2:16-cv-16635.

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT ON CAUSATION BASED ON THE
LEARNED-INTERMEDIARY DOCTRINE

Plaintiff attempts to avoid the straight-forward application of the learned-intermediary doctrine by raising three irrelevant facts: (1) if Dr. Jancich had received notice from Defendants about a "potential" risk of permanent hair loss, Dr. Jancich would have considered it and advised her patients, including Plaintiff; (2) if Plaintiff asked for a regimen without Taxotere, Dr. Jancich would have respected that decision; and (3) Dr. Jancich would have prescribed Plaintiff an alternative chemotherapy regimen if Plaintiff did not want to take Taxotere. None of these facts, however, has any bearing on causation in a pharmaceutical case where the plaintiff has the burden of demonstrating that a proper warning would have changed her treating physician's decision to use or prescribe the product. Here, summary judgment is warranted because there is no genuine factual dispute on causation:

First, Plaintiff does not dispute that Dr. Jancich has never read the Taxotere package insert in its entirety; in fact, Dr. Jancich could not recall the last time she actually reviewed the Taxotere labeling. Plaintiff is not entitled to a heeding presumption when the facts show the physician would not have read the alleged non-disclosed information. Absent the presumption, Plaintiff cannot prove a different warning would have changed Dr. Jancich's decision to prescribe Taxotere.

Second, Plaintiff gets no meaningful benefit from the heeding presumption (assuming it even applies here) because she does not identify an "additional risk" (i.e. a quantifiably greater

risk of permanent hair loss with Taxotere as compared with a hypothetical alternative) that should have been disclosed. With no evidence of a quantifiable "additional risk" of permanent alopecia, Plaintiff cannot meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision" – including her decision (1) whether to communicate the additional non-disclosed information to the Plaintiff, and (2) whether to prescribe Taxotere to the Plaintiff.

Third, because Plaintiff has no evidence that Dr. Jancich would have discussed an unquantified risk with her in the first instance, the Court need not consider whether Plaintiff would have asked for a regimen without Taxotere. But even assuming Dr. Jancich would have discussed an unquantified risk, Plaintiff still cannot establish causation because she has failed to put forward any evidence that a *reasonable* patient under those circumstances would have rejected Taxotere when presented with such information.

Finally, Plaintiff identifies no evidence that a different warning would have changed Dr. Jancich's decision *to prescribe* Taxotere in 2011. In fact, Dr. Jancich testified that (1) Ms. Durden refused Adriamycin-containing regimens and (2) under the NCCN "Preferred Adjuvant Regimens" the only non-Adriamycin regimens included Taxotere. These undisputed facts foreclose a triable issue on causation.

## BACKGROUND

It is uncontroverted that Taxotere has never been removed from the market and oncologists continue to prescribe Taxotere to treat potentially life-threatening forms of breast cancer. Pl.'s Opp. & Response to Defs.' Statement of Undisputed Facts, at ¶ 4. Plaintiff also does not dispute that, in 2011, Dr. Jancich recommended a chemotherapy regimen with Cyclophosphamide and Taxotere, *id.* ¶ 7, or that Ms. Durden and her daughter admittedly refused receiving an Adriamycin-

2

containing regimen. *Id.* ¶ 13. Plaintiff does not dispute that Dr. Jancich has been prescribing Taxotere for breast cancer throughout her entire career, and continues to do so today. *Id.* ¶¶ 14, 15. Plaintiff elicited no testimony from Dr. Jancich on whether she would have <u>prescribed</u> another chemotherapy regimen if a different warning had been provided by Defendants in 2011.

As to the three most crucial facts, Plaintiff claims she disputes them but her contrary evidence does not put any fact in dispute. As Defendants demonstrated in their motion and supporting facts:

- Dr. Jancich testified that she has never read the Taxotere label in its entirety and cannot recall when she last reviewed the label at all. Defs.' Br. at 6-7.

- Dr. Jancich testified that, in 2011, there were only two preferred chemotherapy regimens "she would have selected from" to treat Ms. Durden. The first was as Taxotere regimen, which included Cyclophosphamide. The second was a Taxol regimen, which included Adriamycin. And Dr. Jancich chose the Taxotere regimen and rejected the Taxol regimen because Ms. Durden (and her daughter) "were adamant about not wanting to receiving an Adriamycin-containing regimen" due to potential life-threatening side effects specific to that regimen. *Id.* at 7-8.

- Plaintiff has elicited no testimony from Dr. Jancich to meet her burden to show that the allegedly non-disclosed risk of permanent alopecia was sufficiently high that it would have changed Dr. Jancich's *decision to prescribe Taxotere*. *Id.* at 8-10.

Plaintiff attempts to dispute these material facts by noting two immaterial facts: (1) if Dr. Jancich had received the alleged adequate warning of the risk of permanent hair loss, she would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen; (2) if Plaintiff requested a different treatment regimen, Dr. Jancich may have offered an NCCN <u>non-preferred</u> regimen. Pl.'s Br. at 9. These arguments, however, do not create a genuine issue of material fact precluding summary judgment. First, the testimony does not establish or create an inference that Dr. Jancich would not have prescribed Plaintiff Taxotere in 2011. Second, the testimony does not support an inference that a different

product warning would have caused Dr. Jancich to depart from her practice of selecting from the two NCCN-preferred regimens for Ms. Durden's specific cancer type, of which the Taxotere regimen that Ms. Durden received was the only non-Adriamycin containing option.[1]

I.   **PLAINTIFF CANNOT ESTABLISH CAUSATION.**

Plaintiff acknowledges that the learned-intermediary doctrine applies in cases involving prescription medications in Louisiana. Pl.'s Br. at 4 (citing, among others, *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002)). Plaintiff argues, however, that causation can be presumed under Louisiana's "heeding presumption" so long as she proves Defendants' warning was inadequate. Pl.'s Br. at 7-8. Louisiana law does not support that argument.

At the outset, the heeding presumption is a rebuttable presumption. Here, Plaintiff does not dispute that Dr. Jancich has never read the Taxotere label in its entirety and cannot recall when she last reviewed the label at all. Defs.' Br. at 6-7. As Plaintiff acknowledges, she is not entitled to a heeding presumption when the facts show the physician would not have read the non-disclosed information. *See* Pl.'s Br. 8 (citing *Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987) (court found if the warning would not have been read then the presumption is rebutted because any "adequate warning" would have been futile)). *See also, Hall v. Sinn, Inc.*, 102 F. App'x 846, 849 (5th Cir. 2004)). Absent the presumption, Plaintiff cannot prove that a different warning would have changed Dr. Jancich's decision to prescribe Taxotere. *See* Defs.' Br. at 6.

Even if Plaintiff were given the benefit of the heeding presumption, its application provides Plaintiff no meaningful benefit in this case. In *Thomas v. Hoffman-LaRoche, Inc.*, the Fifth Circuit

---

[1] *See* Ex. A, Jancich Dep. 257:18-258:21 (Q. If Ms. Durden did not want to receive Adriamycin or docetaxel, were there other regimens that you could have prescribed? A. At that time, that would have been my choice, those two. Q. And are there other regimens that you could have allowed Ms. Durden to take if she decided she did not want a regimen including Adriamycin or docetaxel? A. Those are the regimens that I would have selected from [....] The preferred regimens.")

distinguished between preventable-risk warnings, which are commonly associated with mechanical products, and unavoidable-risk warnings, which are often associated with prescription drugs or devices.  949 F.2d 806, 814 (5th Cir. 1992).  In the former category, a warning, if heeded, would diminish or eliminate the risk.  *Id.*  In the latter context, however, an adequate warning "means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus.  *The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.*"  *Id.* (emphasis added).  Thus, under Louisiana's heeding presumption, Plaintiff is entitled to the presumption that Dr. Jancich would have "incorporated the 'additional' risk into [her] decision calculus."  *Id.*  Plaintiff, however, still has the burden of demonstrating "that the additional non-disclosed risk was sufficiently high that it would have changed [Dr. Jancich's] decision to prescribe the product for the plaintiff."  *Id.* (emphasis added).

Here, the additional non-disclosed information (e.g., "cases of permanent alopecia have been reported" or there is a "risk" in a "significant patient population") does not identify an "additional risk" (i.e. a quantifiable risk).  With no evidence of a quantifiable "additional risk" of permanent alopecia, Plaintiff cannot meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision."  There are at least two additional undisputed facts that preclude Plaintiff from meeting her burden here:

First, neither Dr. Jancich nor any of Plaintiff's experts identify how high the potential risk must be in order to advise patients there is a risk of permanent alopecia.  Dr. Jancich's testimony – absent any reference to a quantifiable, "additional risk" – does nothing to help Plaintiff meet her burden to show "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision."  Given that Plaintiff cannot place a numerical value on the

additional non-disclosed risk of Taxotere and permanent alopecia, she cannot meet her burden to show Dr. Jancich would have conveyed such information to Ms. Durden.

Second, Plaintiff has no evidence to meet her burden to show the risk was sufficiently high that Dr. Jancich would have changed her decision to prescribe Plaintiff Taxotere. *See Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991) (plaintiff entitled to presumption, but holding that "we do not find reasonable the inference that a less than one percent increase (from four percent to 4.03 percent per annum) in the risks associated with the valve replacement would have changed Dr. Gibson's decision."). In fact, the evidence suggests Dr. Jancich would not have changed her prescription. Dr. Jancich testified that if Ms. Durden presented to her with the same cancer today, Taxotere and Cyclophosphamide would remain one of her recommendations. Ex. A, Jancich Dep. 240:4-241:11. When asked if there was another regimen she might consider, Dr. Jancich testified that she couldn't "say for absolute certain there's not another regimen." *Id.* This is far from sufficient record evidence to carry Plaintiff's burden of proving that a different warning would have changed Dr. Jancich's prescription.

Moreover in her Opposition, Plaintiff relies on preventable-risk (i.e., instructional) warning cases, not unavoidable-risk warnings cases like this one. *In re Xarelto*, for example, involved allegations that defendants failed to adequately instruct doctors regarding an available PT test "and their use to help evaluate a patient's risk of bleeding on Xarelto." 2017 WL 1393480 (E.D. La. April 17, 2017). Similarly, in *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771 (E.D. La. Aug. 24, 2011), the plaintiff alleged that Exxon Mobil's warning label on Varsol was inadequate because it failed to note, *e.g.*, that "prolonged or repeated inhalation of [benzene] vapors in low concentrations was associated with blood disorders." These cases are inapplicable because they

deal with labeling instructions regarding *how* a product with avoidable risks is used, not *whether* a product with allegedly unavoidable risks is used at all – the decision Dr. Jancich faced here.

Further, even if this was a preventable-risk case, there is no admissible expert evidence quantifying any such risk and no evidence that a **reasonable** patient would have rejected Taxotere in 2011 if provided such information. *See Hondroulis v. Schuhmacher*, 553 So.2d 398, 412 (La. 1988) ("There must be a causal relationship between the doctor's failure to disclose material information and material risk of damage to the patient. . . . Because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed.") (internal citations omitted). Plaintiff has identified no evidence that an objective patient would have chosen a less efficacious medication with different, and potentially more life-threatening, risks if warned of the possibility of permanent hair loss.

While Plaintiff has provided no evidence of an objective patient, further still, the evidence shows Ms. Durden refused the only NCCN-preferred alternative regimen, including Adriamycin, which Ms. Durden called the "Red Devil". *See* Ex. B, Durden Dep. 252:25-253:15, 267:22-268:6; Jancich Dep. 167:17-168:3 ("She didn't want to get the Red Devil. That's all I can tell you."). Dr. Jancich concluded, "Therefore, [Ms. Durden] will receive TC, Docetaxel and Cytoxan 21 days times six." *See* Jancich Dep. 202:10-25. Ms. Durden accepted this, despite being informed that "[i]n most cases, hair grows back after chemo." Jancich Dep. 131:24-135:25 (emphasis added).[2]

---

[2] Furthermore, Ms. Durden accepted this recommendation despite having a niece who had received Taxotere previously and allegedly suffered permanent hair loss. *See* Durden Dep. 70:2-25; 81:8-20 ("Q. Well, when you were getting ready to have chemotherapy, did it worry you that your niece had had chemotherapy and her hair had not grown back? A. It never crossed my mind because at that time when I was diagnosed with breast cancer and doing chemo and all of that, you don't have time to think about somebody else or what I thought about them.").

Thus, any contention that Ms. Durden would have refused Taxotere if she had known of a permanent hair loss risk is unsupported by the record—Ms. Durden accepted the treatment with full notice of the alleged risk.

Plaintiff argues Defendants' interpretation of Louisiana's heeding presumption is too narrow.  But as set forth in Defendants' motion, court after court in Louisiana has required evidence that the physician would have *changed his prescribing decision* in order to prove causation.  *See Willett*, 929 F.2d at 1099 (Plaintiff has the burden to prove causation with evidence that "a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) (same); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) (same); *Rhodes v. Bayer Healthcare Pharm. Inc*., 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) (same); *Dykes v. Johnson & Johnson,* 2011 WL 2003407, at *5 (E.D. La. May 20, 2011) (same).

Plaintiff cites *Frischertz v. Smithkline Beecham Corp.*, in support of her argument.  However, the holding in *Frischertz* appears to be the only outlier decision in Louisiana supporting Ms. Durden's argument.  The Court should decline to follow *Frischertz* because it is contrary to binding Louisiana and Fifth Circuit precedent.  *See Willett*, 929 F.2d at 1099.

Finally, Plaintiff argues she may prove causation with evidence "that a reasonable physician would have altered his or her prescribing practices had he or she been adequate warned of the risk of permanent air loss by Defendants."  Pl.'s Br. at 9-10.  This is wrong.  Both cases Plaintiff cites for this notion cite to *Thomas v. Hoffman-LaRoche*, which applies Mississippi law.  Pl.'s Br. at 9-10 (citing *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at *6 n.6 (E.D. La. Feb. 20, 2008) and *Grenier v. Medical Engineering Corp.*, 243 F. 3d 200, 208 n.4 (5th Cir. 2001)).

As the Fifth Circuit has recognized, this objective standard is specific to Mississippi. *See Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 212 n. 15 (5th Cir. 2008). Louisiana law does not allow "objective" evidence as a substitute for testimony from Plaintiff's prescribing physician. The lower court in *Grenier* rejected the same argument as contrary to Louisiana law. *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 766 (W.D. La. 2000). The court held the plaintiffs could not meet their burden by submitting an expert affidavit of what a reasonable doctor would have done because it did not come from plaintiff's doctor—"the person who the inquiry must resolve around." *Id.*

While the causation analysis regarding if the patient would have given informed consent applies an objective reasonable patient standard in Louisiana, the causation analysis regarding what the physician would have done looks only to the testimony of the prescriber or treating physician of the plaintiff. *Hondroulis*, 553 So.2d at 412; *Grenier*, 99 F. Supp. 2d at 766.

Plaintiff was required to adduce evidence that a different warning would have changed the course of care with a medication that would have also eliminated her cancer. This Plaintiff cannot do. A plaintiff, like Ms. Durden, who has not established the same in discovery may not proceed with the claims as a matter of law. *See, e.g., Grenier*, 99 F. Supp. 2d at 766.

## II.   PLAINTIFF'S REDHIBITION CLAIM FAILS.

Plaintiff argues her redhibition claim survives because Plaintiff testified she would not have taken Taxotere had the risk of permanent hair loss been disclosed. But the authority Plaintiff relies on is inapposite or proves summary judgment is appropriate. In *Pipitone v. Biomatrix*, the plaintiff appealed the district court's finding that "their redhibition claim was limited to economic only." 299 F.3d 239, 250 (5th Cir. 2002). The Fifth Circuit held that the district court properly construed the LPRA and redhibition law to restrict redhibition claims to recovery of economic loss

only. *Id.* at 250-51. The court also reversed the district court's order granting summary judgment on plaintiff's product liability and redhibition claims, after finding that genuine issues of fact existed as to whether the defendant deviated from FDA-approved procedures in manufacturing the syringe at issue. *Id.* at 249-50. The Fifth Circuit made no mention of whether a plaintiff may defeat summary judgment simply because she claims she would have not used the drug had she known of an undisclosed risk. The court in *Guidry* denied a motion to dismiss a redhibition claim after first finding that the plaintiff had sufficiently pled claims for design defect and failure to warn, reasoning that "those alleged defects are doctrinally redhibitiory as well." 206 F.Supp.3d 1187, 1200 (E.D. La. 2016). *Guidry* is remarkable because it supports Defendants' argument that Plaintiff's breach of redhibition claim is controlled by the learned-intermediary doctrine. *See id.*

Plaintiff criticizes Defendants' reliance on *In re Rezulin*, arguing that the plaintiffs in *Rezulin* did not raise a redhibition claim, so any statements about the redhibition claim are *dictum*. While the plaintiffs did not allege a redhibition claim in their complaints, they attempted to survive summary judgment by raising a redhibition claim *in their summary judgment brief*. The Court noted that even if it construed plaintiffs' brief as a motion to amend the complaints, it would have been futile because plaintiffs' experts did not support the contention that Rezulin was wholly or substantially useless. Summary judgment was granted because, like here, the drug was effective in treating the condition it was designed to treat. The district court's actual holding cannot be *dictum*. *E.g. McDaniel v. Sanchez*, 452 U.S. 130, 141 (1981) (dicta is a statement "unnecessary to the decision"). Summary judgment on Plaintiff's redhibition claim is likewise appropriate.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment on Plaintiff's claims.

Date: June 19, 2019

Respectfully submitted,

/s/ Douglas J. Moore                        Harley Ratliff
Douglas J. Moore (Bar No. 27706)            Adrienne L. Byard
**IRWIN FRITCHIE  URQUHART & MOORE LLC**     **SHOOK, HARDY & BACON L.L.P.**
400 Poydras Street, Suite 2700              2555 Grand Boulevard
New Orleans, LA  70130                      Kansas City, Missouri 64108
Telephone: 504-310-2100                     Telephone: 816-474-6550
Facsimile:  504-310-2120                    Facsimile:  816-421-5547
dmoore@irwinllc.com                         hratliff@shb.com
                                            abyard@shb.com

                                            *Counsel for Sanofi-Aventis U.S. LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who are ECF participants.

/s/ Douglas J. Moore