UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO ALL CASES | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH DISCOVERY ORDER REGARDING 30(b)(6) DEPOSITIONS**

MAY IT PLEASE THE COURT:

Pursuant to this Court's Order dated February 6, 2019, the Plaintiffs' Steering Committee ("PSC") respectfully moves the Court for an order directing Sanofi to produce a witness to adequately address communications between Sanofi and Taxotere patients relating to the possibility of legal action concerning ongoing alopecia. Despite a lengthy and clear record on the issue, Defendant Sanofi continues to refuse to produce witnesses to testify on key areas of inquiry, contrary to the requirements of Rule 30(b)(6) and this Court's Order specifically permitting the inquiry.

Sanofi's 30(b)(6) designee testified within the bounds of an arbitrary limitation placed by Sanofi on the scope of these communications to (1) *only* those that occurred after a case was referred to Sanofi's Risk Management Department, (2) *only* communications between Sanofi and patients in the United States, and (3) *no communications* from Taxotere patients that were referred directly to Sanofi's Legal Department. Sanofi's position violates the Court's Order regarding the subject matter and purpose of this deposition, the parties' Stipulation regarding the discovery of foreign sources (Rec. Doc. 1072), and the scope of discovery as permitted by the federal rules. Plaintiffs seek relief from the Court that (1) directs that Sanofi may not unilaterally limit the scope of a 30(b)(6) deposition by preparing its witness to make his own scope objections and (2) directs

1

Sanofi to prepare and produce a corporate representative to answer all topics set forth in the PSC's notice of deposition that this Court specifically authorized to proceed.

## I.   BACKGROUND

On November 15, 2018, Plaintiffs served discovery under Rule 30(b)(6), including subject matter related to communications between Sanofi and Taxotere patients related to possible legal action for ongoing hair loss. The notice included Topic 5: "COMMUNICATIONS between YOU and TAXOTERE patients relating to the "possibility of legal action" for ongoing alopecia similar to those identified in Sanofi_05442744, and any reviews, investigations, reports of cases or incidents related to ongoing alopecia by 'Risk Management' as noted in Sanofi_05442744." Sanofi refused to present a witness. In its January 11, 2019 submission requesting this discovery be permitted, the PSC explained:

> As the Court knows, there are communications between Taxotere patients and Sanofi in which such patients threatened litigation. Plaintiffs are entitled to inquire about such communications and Sanofi's response. These communications are relevant to Sanofi's notice and pharmacovigilance, among other matters. (Exh. A, PSC 1-11-19 Submission, p. 7.)

In Sanofi's January 28, 2019 opposition letter, it stated this request was an attempt at discovering deficiencies in its retention policies. (Exh. B, Sanofi 1-28-19 submission, 11-12.) Sanofi devoted five paragraphs of their opposition to this request. Sanofi did not raise any objections to the scope of the deposition topic – not about which Sanofi department was involved in the communications related to the possibility of legal action, nor as it relates to the geographical origination of the communications. Both areas include relevant, responsive information about which Sanofi now refuses to prepare their witness and allow testimony.

Having considered the positions of the parties, this Court entered an order on February 6, 2019 Minute Entry (Rec. Doc. 6100) regarding the requested 30(b)(6) depositions. This Order,

which is nearly identical to the language in the PSC's original notice, permits Plaintiffs to take the 30(b)(6) deposition of Sanofi relating to Topic 5, now entitled Topic 2, specifically:

> Communications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia similar to those identified in Sanofi_05442744, and any reviews, investigations, reports of cases or incidents related to ongoing alopecia by "Risk Management" as noted in Sanofi_05442744. Questions concerning retention policies for such documents are outside the scope of this order. (Rec. Doc. 6100)

This Order did not limit the scope of the deposition, aside from excluding retention policies themselves, and specifically did not exclude the initial communications, communications sent directly to the Legal Department or departments other than Risk Management, nor limit said complaints to specific geographical areas. Yet Sanofi has inserted these limitations.[1]

On June 7, 2019, Sanofi produced Michael Corrigan as the 30(b)(6) witness to speak on behalf of the company. The parties agreed to continue the deposition on June 18, 2019, after which the PSC suspended the deposition in order to address the dispute regarding Sanofi's limiting the scope of preparation and testimony.

## II.     SANOFI'S ARBITRARY, UNILATERAL DEPOSITION LIMITATIONS

Instead of presenting a witness prepared with adequate knowledge of the facts and issues Ordered by the Court, Sanofi used both the exemplar letter referenced in the notice, which is from Sanofi to the Taxotere patient, and the reference to "Risk Management" to justify and severely limit the scope of the deposition. Sanofi inappropriately restricted the preparation of the witness

---

[1] During the deposition, Sanofi cited to the Court's May 30, 2019 hearing and Order to justify its after-the-fact attempt to limit the scope of the court-ordered deposition. This Order and hearing related to the "additional documents from Sanofi related to the Shirley Ledlie's French CRCI claim." At the hearing, the Court even noted the "personal nature of what's been requested." (Rec. Doc. 7276 and 5-30-19 Transcript, 6:21 – 10:13.) There was not a discussion regarding limiting the scope of this deposition beyond the requested additional documents regarding Ms. Ledlie's French claim. To the extent this Order was interpreted by Sanofi to further limit the PSC's discovery, as Sanofi has asserted, the PSC has sought review pursuant to Rule 72.

to only communications between Sanofi employees within the Risk Management department in the U.S. and patients within the United States.

Sanofi's unilaterally-imposed limited scope excludes communications between Sanofi and Taxotere patients that occurred *before* the case was referred to Risk Management (including the very important *initial* communications from/to the patient), as well as those that involved other departments at Sanofi (e.g., Medical Information, Legal or any others), and *any* communications involving patients outside the United States.

    A.  <u>Initial Communications, Including Communications Directly to Legal Department</u>

First, Sanofi did not prepare Mr. Corrigan to cover, and he was unprepared to answer, questions regarding initial communications with Sanofi by US patients related to the possibility of legal action and ongoing alopecia, as well as any such communications that involved departments, including Medical Information and Legal. Rather, Sanofi and Mr. Corrigan restricted his testimony to only those communications that were referred to US Risk Management[2], and that occurred *after* Sanofi internally referred the claim to US Risk Management - once US Risk Management began communicating with the patient. Sanofi takes the position that the initial contact, communications with and referrals to other departments, and the internal discussions leading to the referral to Risk Management or other departments are outside the scope of the Order.[3] Mr. Corrigan even went so far as to determine what this Court would find relevant or not.

> Question: So the initial contact by Pam Kirby, for example, in your testimony would not be relevant to the court's order in the deposition testimony?

---

[2] Risk Management is sometimes referred to herein as "RM."
[3] Knowing these scope objections followed by instructions not to answer would potentially incur your Honor's disapproval, Sanofi prepared Mr. Corrigan to "object" to the scope of the deposition, rather than Sanofi's attorneys. Mr. Corrigan used the word "scope" more than 100 times during his deposition. He testified repeatedly about **his conclusion** of this Court's Order and **his understanding** of the scope.

4

> Answer: It appears that Judge North would determine that it is not relevant. (Exh. C, Deposition Transcript 6/7/2019; 215:16-21.)

Any "investigation" of a claim by Risk Management undoubtedly included a review of the initial contact from the patient and any internal Sanofi discussions regarding the claim, prior to its referral to Risk Management, or those sent to the Legal department. In fact, Sanofi's own SOPs set forth the procedure: "Inquiries involving potential or threatened litigation are referred to Risk Management/Legal department." (Exh. C Deposition Transcript, 6-7-19, 156:25-157:7, and Exh. D, Exhibit 8 to 6-7-19 Deposition.) But Mr. Corrigan was not prepared to testify about Sanofi's SOPs, nor was he prepared to testify to Sanofi's search for these documents reflecting the referrals, reviews or investigations of these claims.

Mr. Corrigan admitted on re-cross that that he was not prepared to cover pre-Risk Management communications to Sanofi by US patients.

> Question: Are you prepared today to discuss internal Sanofi communications regarding notices Sanofi received from US patients alleging Taxotere caused permanent alopecia that predate Sanofi's referral of such notices to Sanofi's US risk management department?
>
> Answer: No. (Exh. E Deposition Transcript (rough) 6/18/19; 65:12-18.)[4]

Additionally, Sanofi's witness testified that any communications between Sanofi and Taxotere patients related to ongoing alopecia that were referred to Sanofi's Legal Department, as opposed to its Risk Management Department, are "outside the scope" of what the Court ordered.

> Question: Do you know whether the risk management department is a part of the Sanofi legal department?
>
> Answer: The Sanofi risk management department is not a direct – I don't know for certain. So I don't want to debate semantics about what department is when there is a bit of a gray area there.

---

[4] A final transcript for the 30(b)(6) deposition was not available at the time of filing, but the PSC will substitute the references and final transcript as soon as available.

> What I can confirm to you is that if a patient suggests that they have sought legal counsel, they will be referred to legal, Sanofi U.S. legal, and that is the out of the domain of Sanofi U.S. risk management. (*Id.*, at 66:2-14.)
>
> * * *
>
> Question: I don't understand what you mean. If a claim went directly to the legal department, would you be prepared to testify about it today?
>
> [Objection]
>
> Answer: No, I would not.
>
> Question: Because that's outside the scope.
>
> Answer: Correct.
>
> Question: So you are unable to testify today whether there were any claims that reached the legal department that had not come through risk management?
>
> [Objection]
>
> Answer: What I -- what I can -- what I can testify to is that within the evidence that I was provided guidance and that I prepared to review is that every claim that was made that *didn't involve* a patient seeking counsel or initiating legal proceedings against Sanofi was referred to Sanofi U.S. risk management. (*Id.*, at 67:7 through 68:4, emphasis added.)

The purpose of the deposition was to discover information related to possible legal claims by Taxotere regarding ongoing alopecia; yet, Mr. Corrigan testified that he was prepared to review only claims that *didn't involve* a patient seeking counsel or initiating legal proceedings against Sanofi because those who did would not be referred to US Risk Management. Sanofi's imposed scope limitation frustrates the purpose of this Court-Ordered deposition.

Mr. Corrigan testified that he was not prepared to testify about any communications Legal may have had with patients who did not first come through Risk Management.

6

> Question: So you don't know how many claims against Sanofi alleging permanent hair loss made their way to Sanofi's US legal department without first coming through risk management, do you?
>
> Answer: No, I don't. (Exh. E Deposition Transcript (rough) 6/18/19; 68:6-10.)

In response to questions about Medwatch forms on which Sanofi's Legal Department provided input, he could not testify about why Legal was providing input and could not testify about any potential US or non-US claims that Legal handled without any RM involvement. (*Id.*, at 69:22 through 72:18.) He testified that he does not know anything about AERs being referred directly to Legal.

> Question: As part of your preparation to provide deposition testimony in this case, did you become aware that Sanofi referred adverse event reports directly to the legal department?
>
> Answer: No. (*Id.* 6/18/19; 71:8-12.)

The purpose of this Rule 30(b)(6) deposition is to allow the PSC to inquire about communications between Sanofi and Taxotere patients related to possible legal action, as well as Sanofi's reviews, investigations and reports of cases or incidents of ongoing alopecia. While some of the content of the internal documents may be privileged, the fact that the communications occurred, including when and with whom, is discoverable, which is what the Court already determined and Ordered. Sanofi's attempt to avoid this discovery is both inappropriate and contrary to the duties and requirements of Rule 30(b)(6) and spirit of this Court's Order.

B. <u>Geographical Restrictions</u>

Second, Sanofi did not prepare Mr. Corrigan to cover, and he was unprepared to answer, questions regarding communications with Sanofi by non-US patients complaining that Taxotere caused permanent alopecia, even though he had reviewed documents that included such information.

> Answer: I have reviewed documents that did include information with respect to any kind of accusation against Sanofi from a foreign source and location, **but I do not believe that it is within the scope of the order given by Judge North for discussion today**, so I could only provide limited information with respect to it. (Exh. C Deposition Transcript 6/7/2019; 28:25 through 29:6.)

Sanofi and Mr. Corrigan repeatedly took the position that, because Risk Management is a US department, communications with Sanofi by non-US patients fell outside the scope of the Court's Order. However, we know from both Sanofi's internal documents, including those used in Ms. Malia's and other witnesses' depositions (some of which were referred to in the PSC's January 11, 2019 submission to the Court requesting this deposition, pp. 7-9) and the references to the Taxotears women, that Sanofi was hearing from women outside of the U.S. about Taxotere and permanent alopecia. Nothing in the Court's Order limits the scope of the deposition to U.S. patients. Whether it was the US Risk Management Department or a non-US department serving the equivalent function of "risk management," the communications regarding and the investigation into the claim is discoverable and within the scope of this Court's Order.

Mr. Corrigan testified that he was not prepared to cover any communications to Sanofi by non-US patients.

> Question: Are you prepared today to discuss notices Sanofi received from patients outside the US of claims alleging Taxotere caused permanent alopecia?
>
> Answer: No, I'm not. (Exh. E Deposition Transcript (rough) 6/18/19; 63:19-23.)

Further, Sanofi's after-the-fact objections and efforts to block the PSC's discovery that comes from foreign sources and locations outside the U.S. violates the Stipulation of Terms Related to Defendants, Sanofi and Aventis Pharma S.A., Nov. 3, 2017 (Rec. Doc. 1072).

### III.     ARGUMENT

The courts have been clear concerning the responsibilities of corporations when designating a Rule 30(b)(6) deponent. The most basic authority informing the question of scope is Rule 30(b)(6), which states that the notice must "describe with reasonable particularity the matters for examination" and that "[t]he persons designated must testify about information known or reasonably available to the organization." In the most basic sense, Mr. Corrigan and Sanofi violated this requirement by not allowing testimony on topics listed in the Notice and outlined in the Order.

Along these lines, courts have found that "[a] corporation has a duty to prepare the witness to provide responsive, complete information on all the matters of examination." *QBE Ins. Corp. v Jorda Enterprises, Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012). The witness must be prepared to provide all facts that the corporation knows. *Wilson v. Lakner*, 228 F.R.F. 524, 529 (D. Md. 2005). "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006). In this instance, Mr. Corrigan was clearly not prepared to provide responsive and complete information, nor was he prepared to provide all facts that the corporation knows on the matters within the scope of the Court's February 6, 2019 Order and therefore Sanofi has failed to provide a witness on these matters. *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about

relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.").

Importantly, courts have held that Rule 30(b)(6) cannot be used to limit the scope of what is asked of a designated witness at a deposition. *King v. Pratt & Whitney*, 161 F. R.D. 475, 475 (S.D. Fla. 1995), aff'd sub nom. *King v. Pratt & Whitney*, 213 F. 3d 646 (11th Cir. 2000). Specifically, the court found in *King* that if a designated deponent cannot answer questions based on the topics contained in the 30(b)(6) notice, "then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc. The corporation has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are "known or reasonably available" to the corporation." *Id.* at 476. This is an affirmative duty which was not complied with in this case.

In addition to the established case law discussed below, the parties entered an agreement which was filed with the Court on November 3, 2017, which Sanofi cannot now attempt to ignore. The stipulated agreement stated, in part, "Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. ("Defendants") will include foreign sources and locations when responding to discovery propounded by the Plaintiffs' Steering Committee…." Stipulation of Terms Related to Defendants, Sanofi and Aventis Pharma S.A., Nov. 3, 2017 (Rec. Doc. 1072). Inconsistent with the Stipulation, Mr. Corrigan testified that he was aware of this stipulation and intended to follow it – but within the scope of this Court's Order as limited by Sanofi and the witness. For Sanofi to now act in a manner directly contrary not only to established case law but also to the French Entity Stipulation that they agreed to, and on which the PSC has relied, is egregious.

## IV. CONCLUSION

Particularly in light of the Court's recent directive to both Sanofi and the PSC that no party can unilaterally limit the scope of a deposition under Rule 30 without seeking the Court's interference, Sanofi cannot unilaterally limit the scope of a Court-Ordered deposition, based on objections not previously raised. The subject matter of this deposition is narrow and clear: Communications between Sanofi and Taxotere related to ongoing alopecia, and investigations, reviews, investigations, reports of incidents or cases done by Risk Management. The scope of the 30(b)(6) deposition was already decided by the Court as reflected in its Order. It is inappropriate for a witness to object to the scope of the questions to indirectly obfuscate Sanofi's discovery obligations in this manner.

For the foregoing reasons, the PSC respectfully requests this Court grant its Motion to Compel requiring Defendant to prepare and produce a witness who can testify on behalf of Sanofi about the relevant inquiries in Topic 2 of the Court's February 6, 2019 Order.

Dated: June 25, 2019

Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650

2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056

Phone: (713) 522-3529  
Fax: (713) 495-2331  
adwyer@kirkendalldwyer.com  

Emily C. Jeffcott  
Morgan & Morgan  
700 S. Palafox Street, Suite 95  
Pensacola, Florida 32505  
Phone: (850) 316-9074  
Fax: (850) 316-9079  
ejeffcott@forthepeople.com  

Andrew Lemmon  
Lemmon Law Firm, LLC  
P.O. Box 904  
15058 River Road  
Hahnville, LA 70057  
Phone: (985) 783-6789  
Fax: (985) 783-1333  
andrew@lemmonlawfirm.com  

Phone: (713) 621-7944  
Fax: (713) 621-9638  
rand_nolen@fleming-law.com  

Hunter J. Shkolnik  
Jennifer Liakos (on the brief)  
Napoli Shkolnik PLLC  
360 Lexington Avenue, 11th Floor  
New York, NY 10017  
Phone: (212) 397-1000  
hunter@napolilaw.com  

Genevieve Zimmerman  
Meshbesher & Spence Ltd.  
1616 Park Avenue South  
Minneapolis, MN 55404  
Phone: (612) 339-9121  
Fax: (612) 339-9188  
gzimmerman@meshbesher.com  

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*  
M. Palmer Lambert