

January 11, 2019

**VIA EMAIL SUBMISSION**
The Honorable Michael B. North
United States Magistrate Judge
500 Poydras Street, Room B419
New Orleans, LA 70130

    **Re:** *In re: Taxotere (Docetaxel) Products Liability Litigation,* **MDL No. 2740**

Dear Judge North:

    The Plaintiffs' Steering Committee writes to provide its reasoning for timely requesting Rule 30(b)(6) testimony from Sanofi. At the outset, the PSC notes that it is willing to narrow certain topics and drop others so that it can prioritize the development of testimony to be presented to the jury. This testimony will allow the jury to contextualize documents that have already been produced, some of which bear on Sanofi's standard operating procedures related to retention.

    The Rule 30(b)(6) deposition seeks testimony from Sanofi regarding discrete topics for three related reasons. First, no Rule 30(b)(1) witness has been able to testify as to certain documents produced in discovery because these fact witnesses lack personal knowledge or can no longer recall. Second, certain company legacy files have been produced for which there is no identifiable custodian. Efforts to ask fact witnesses about these legacy files have been fruitless. Again, the fact witnesses do not recall or lack personal knowledge. In these instances, the witnesses sometimes acknowledge that the *company* would know the answer to the PSC's questions, but they themselves cannot answer. Third, to the extent that no such documents have been retained, the PSC is entitled to present documents which Sanofi has produced regarding standard operating procedures related to retention to a company witness, so that the company's position can be memorialized for presentation to the jury.

    As things stand, Plaintiffs are in the prejudicial position of having relevant documents that they may want to show the jury, but they are impeded from doing so because they lack substantive corporate witness testimony about the documents. The PSC is entitled to oral testimony from a witness who can state, on the record, what Sanofi's position is regarding the document, how it came about, what it means, among other things. But to date, as to the topics and documents identified in the Rule 30(b)(6) notice, Sanofi's fact witnesses cannot answer basic questions about relevant documents or provide substantive testimony; the witnesses merely read the documents into the record and acknowledge that the documents say what they say. As for legacy files, there is no associated custodian to examine. Lastly, Sanofi has produced documents concerning the company's position regarding standard operating procedures for retention. But Sanofi's explanation of those documents is memorialized in letters from counsel—not corporate witness testimony under oath which may be presented to a jury.

www.ClassLawGroup.com
505 14th Street, Suite 1110, Oakland, CA 94612
T. 510 350 9700    F. 510 350 9701

Date:   January 11, 2019
Page:   2 of 9

The solution is Rule 30(b)(6) testimony. The rule's purpose is to streamline discovery. *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). Rule 30(b)(6) testimony is particularly useful "to curb any temptation a corporation might have to shunt a discovering party from 'pillar to post' by presenting deponents who each disclaims knowledge of facts clearly known to someone in the organization." *Federal Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986). And it is especially appropriate here because "individual officers [are] disclaim[ing] knowledge of facts clearly known to the corporation." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008).

The parties and the Court have been here before. As Your Honor will recall, Sanofi refused to designate and prepare a corporate witness to testify about adverse event reports. Sanofi emphasized that it has produced all relevant documents, and it argued that the reports were too many and spanned too great a time period. Rather than prepare a company witness, Sanofi offered to answer Plaintiffs' questions through interrogatories prepared by Sanofi's attorneys.

The Court rejected that offer and ordered Sanofi to designate and prepare a Rule 30(b)(6) witness:

> The fact that you have produced documents in this case is not going to relieve you of the obligation to produce a witness to talk about the documents or the issues that the documents pertain to. Simply saying "we've given them everything" without giving them a witness to talk about what's in those documents is not going to work.

Hearing Tr. 18:9-14 (July 18, 2018). The Court also recognized that Plaintiffs were entitled to the company's position, not simply a fact witness who would read the documents into the record:

> [T]hey've given you the information that they want to ask. You need to prepare you witness to testify about those things. Not to read them into the record – not to read a list of people into the record, but to testify about that list. What does that mean? What did you do about it? What did you not do about it? Why? Those sorts of things. They're topics.

*Id.* at 25:17-24.

The same result should follow here. To give an example, Sanofi has produced a document from its legacy files that appears to be a Sanofi reference book that describes characteristics of Taxotere as follows: "*Alopecia* (loss of hair)—occurs in 80% of patients, but is *fully reversible* after therapy has ended." Ex. A, Sanofi_00858566 (second emphasis added). There is no good basis to deny Plaintiffs the opportunity to ask a corporate witness about this document or other legacy documents.

Sanofi's objections to the deposition notice are meritless. Once more, Sanofi incants the phrase "discovery on discovery," as if the phrase is a talisman that can ward off a legitimate inquiry. Specifically, Sanofi argues that such deposition testimony would be "discovery on discovery" because it is *further* discovery on documents already produced—and in the case of follow-up call

logs and letters—discovery on documents Sanofi has never produced. To the contrary, this is not discovery *on discovery*. It is discovery *simpliciter*. And the mere fact that Sanofi has produced documents does not "relieve [it] of the obligation to produce a witness to talk about the documents or the issues that the documents pertain to." Hearing Tr. 18:9-12. This includes documents concerning Sanofi's standard operating procedures for retention.

Sanofi's objection based on PTO 49 is largely forfeited. The objection is raised as a general objection. But the Court has repeatedly warned the parties that it does not entertain general objections, only specific objections to specific discovery requests. For topics 1-4 in the Rule 30(b)(6) notice, *no* specific objection is raised with respect to PTO 49. The objection, then, has not been preserved and need not be considered.

For topic 5, a specific objection based on PTO 49 is raised. But the objection fails because in topic 5 Plaintiffs are asking about documents already produced—not any supposed deficiency in ESI or the like. Therefore, as to the only topic for which PTO 49 is specifically raised, the objection is off point and should be overruled.

For legacy files, Sanofi objects to certain (but not all) sub-topics based on PTO 49. But Plaintiffs have narrowed their deposition to 22 legacy files. And while Plaintiffs are concerned about the retention of legacy files writ large, for purposes of this Rule 30(b)(6) deposition, Plaintiffs are willing to forgo that line of inquiry in this particular deposition. As such, the dispute concerning PTO 49 and legacy files is moot.

The objection based on PTO 49 is also meritless. PTO 49 essentially addresses deficiencies with ESI. But Plaintiffs are using their Rule 30(b)(6) depositions to ask about documents Sanofi has produced, so that they may be contextualized for the jury. In any event, even if PTO 49 were pertinent, which it is not, Plaintiffs have met and conferred countless times for months. There can be no unfair surprise, and Sanofi's insistence that it lacks knowledge of "deficiencies" is pure deflection.

Sanofi's objection that a Rule 30(b)(6) deposition is burdensome also fails. A Rule 30(b)(6) deposition, far from being burdensome, "is designed to ensure efficient discovery with corporate entities. A notice followed by the organization designating a representative avoids floundering depositions of agents who lack authority over the matter, or knowledge about the matter." *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552, 558 (D. Mont. 2009) (citations omitted). If there has been any inefficiency to date, it is a consequence of Sanofi's insistence that fact witnesses testify based on personal knowledge, when in reality such witnesses state they do not know or remember but the company itself would know.

Lastly, Sanofi objects that Plaintiffs have been dilatory in raising these issues. Not so. Plaintiffs served a Rule 30(b)(6) deposition notice before the close of discovery. The notice is therefore timely. Sanofi's refusal to designate and prepare any corporate witness to testify on any of the topics in the notice is the reason why the parties and the Court are still grappling with this issue after the close of discovery. While the PSC can understand that topics in a deposition notice may be limited in some fashion by agreement of the parties or by order of the Court, it is highly

unusual for a party to outright refuse to prepare *any* corporate witness to testify about *any* topic in a timely served notice.

The PSC has nonetheless done its best to limit its own notice. As for topic 1, it is willing to ask Sanofi's employee, Ms. Fierro, who is already scheduled to be deposed as a fact witness, questions related to this topic, provided she can testify to such matters. As for topic 3, the PSC is willing to dispense with this topic in its entirety in this deposition. And, as for the company legacy files, the PSC here identifies by bates number *only* 22 documents on which they would like a Rule 30(b)(6) deponent to testify.[1] This is a significant compromise; after all, there are 1,516 legacy files.

As for the other topics, they are narrow and seek relevant testimony, and there is no legitimate objection to them. Consequently, the deposition should go forward on such topics without revision.

Having provided that background, the PSC now turns to the individual topics in the notice, in order to explain why a Rule 30(b)(6) deposition is warranted.

**Topic 1 regarding Medical Information Services call logs.**

During a meet and confer on this topic, counsel for Sanofi suggested that the PSC question an upcoming fact witness, Leslie Fierro, regarding the MIS call logs. In response, the PSC requested that Sanofi designate Ms. Fierro as a 30(b)(6) witness, which would allow Ms. Fierro's responses to be those of the company with respect to these documents. *See Resolution Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993). Sanofi, however, refused to designate Ms. Fierro as a 30(b)(6) witness.

In an effort to the narrow the dispute before the Court, Plaintiffs are agreeable to asking Ms. Fierro about the MIS call logs. However, should Ms. Fierro be unable to recall information related to MIS call logs, or should Sanofi object to the foundation of the MIS call logs, the PSC respectfully requests a 30(b)(6) witness on this topic.

Because the deposition of Ms. Fierro is scheduled for January 17, the PSC will update the Court in a supplemental submission before the February hearing regarding the status of this issue.

**Topic 2 regarding the retention of Individual Case Safety Reports regarding Taxotere and Hair Loss**

Plaintiffs deposed Michael Kopreski, a Sanofi employee designated as a Rule 30(b)(6) witness to discuss adverse event reports. Plaintiffs also asked him about individual case safety reports (ICSRs). Mr. Kopreski testified that when a doctor or patient submits a case safety report to Sanofi

---

[1] Sanofi_00762616; Sanofi_00749971; Sanofi_00773282; Sanofi_00740523; Sanofi_00752001; Sanofi_00776253; Sanofi_00776159; Sanofi_00739377; Sanofi_00759820; Sanofi_00858563; Sanofi_00742162; Sanofi_00859760; Sanofi_00739320; Sanofi_00772367; Sanofi_00744433; Sanofi_00739772; Sanofi_00744351; Sanofi_00748267; Sanofi_00745133; Sanofi_00749850; Sanofi_00750776; Sanofi_00775529.

indicating that a Taxotere patient has experienced hair loss for a lengthy period, Sanofi is obligated to follow up with the doctor or patient. If the doctor or patient responds, then, according to Kopreski, evidence of a response could be in a standard pharmacovigilance form, called CIOMS.

Kopreski further testified that Sanofi has an obligation to follow up, but, according to him, the CIOMS form records whether the doctor or patient responds—not whether Sanofi followed up in the first instance. Relevant here, the deposition testimony indicated that in many (if not all) instances the CIOMS form recorded no response from the doctor, pharmacist, or patient who submitted an ICSR. For example, Mr. Kopreski was asked if Sanofi followed up after receiving this alarming report: "We have six patients receive [sic] Taxotere for breast cancer and experienced permanent alopecia. About a year or so out from therapy, they have had no hair regrowth or very thin hair. . . . Please call me for follow-up regarding this." Ex. B, Kopreski Dep. 122:16-25, Dec. 12, 2018. Mr. Kopreski could not answer whether Sanofi followed up and was left to speculate: "I did not see any follow-up for this -- for this case, but I would not interpret that to mean that there was no follow-up." *Id.* at 123:19-22. Despite admitting that "there was an obligation on the part of the company pursuant to its own standard operating procedures to have archived *indefinitely* all information regarding ICSRs," Mr. Kopresi could only state: "It tells us that -- that I have not received the follower -- the follow-up documents. It doesn't tell us that there is no follow-up, and it doesn't tell us that no follow-up was -- was performed." *Id.* at 195:23-196:4 (emphasis added). Ultimately, Mr. Kopreski could do little more than "disclaim knowledge of facts clearly known to the corporation." *Great Am. Ins.*, 251 F.R.D. at 538. In the end, however, Mr. Kopreski conceded that he simply could not answer: "The company knows. I, as a representative of the company, cannot answer that question." Ex. C, Kopreski Dep. 601:10-19, Oct. 11, 2018.

As such, a corporate witness still needs to testify about Sanofi's follow up to ICSRs—otherwise Sanofi may present the CIOMS reports to the jury as evidence that no doctor or patient responded to Sanofi, when in reality it may be that Sanofi never followed up with any doctor or patient complaining about long-term hair loss. This is a legitimate line of inquiry, and if Sanofi can prepare a witness to testify about this follow up, as substantiated by documentary evidence rather than conjecture, then Plaintiffs do not need to inquire about retention. But if not, Plaintiffs are entitled to ask about Sanofi's retention of such documents, because Sanofi is producing only the CIOMS form, but not other documentation such as call logs that could shed light on the nature of these injuries, what Sanofi knew, and when it knew it. This line of inquiry is critical because CIOMS reports, standing alone, do not establish Sanofi's pharmacovigilance *because* there is no evidence that Sanofi followed up when it received ICSRs.[2]

For this topic, Plaintiffs took care to identify specific documents by bates number that support Mr. Kopreski's testimony that the retention of documents evidencing Sanofi's follow up is indefinite, and that are pertinent to ICSRs. Plaintiffs' identification of such documents will assist Sanofi in preparing a witness to testify about its practices in the event that such documents were not retained.

---

[2] The PSC is also seeking additional time to depose Mr. Kopreski on adverse event reports, in part because Sanofi produced documents at midnight the night before the deposition. The parties are continuing to confer on this issue.

Date:  January 11, 2019
Page:   6 of 9

**Topic 3 regarding TAX311**

The PSC is willing to forgo this topic as part of this Rule 30(b)(6) notice.

**Topic 4 regarding FDA contact reports from 2004 related to the label supplement in the adjuvant breast cancer setting**

On August 11, 2004, FDA proposed revisions to the draft label for Taxotere, including the editing of many paragraphs related to the interim analysis of TAX316. Among the many edits proposed by FDA included the deletion of following language containing the interim TAX 316 results for other persisting reactions:

> ~~Other persistent reactions~~
> ~~The following events were observed to be ongoing in TAC-treated patients at the median follow-up time of 55 months: alopecia (22/687), amenorrhea (133/233), neurosensory (9/73) and peripheral edema (18/112). These events were also observed in the FAC-arm during the follow-up period: alopecia (9/642), amenorrhea (101/186), neurosensory (2/15) and peripheral edema (3/19).~~

Ex. D, Sanofi_00548479 at 34.

Through its fact and expert witnesses, Sanofi assigns great significance to this act by FDA, claiming that because FDA struck this language, Sanofi was under no obligation to subsequently update the Taxotere label with a warning for persisting alopecia. *See, e.g.,* Ex. E, Childs Dep. 318:15-319:20; Ex. F, Arrowsmith (Defense Expert) Report at 36 ("Given the consistency of the TAX 316 data, I agree that it was reasonable and appropriate for FDA and Sanofi not to update the alopecia information in the Taxotere USPI, especially since FDA had struck a similar proposed label change in 2004.")

In doing so, Sanofi assumes as fact that FDA struck the language because FDA believed the language to be unhelpful or otherwise insignificant. This assumption cannot be verified because the document that could presumably explain FDA's reasoning for the deletion is missing.

Specifically, an "Regulatory Authority Contact Report" or RACR, which is a form used by Sanofi to memorialize calls or voicemails between itself and regulatory authorities as they occur, (Ex. G, Gustavson Dep, 172:24-173:11), is missing for a call that took place between Sanofi and FDA on August 12, 2004 regarding FDA's proposed labeling changes. Sanofi has produced other RACRs, including those for calls that took place in August before the August 12, 2004 call. *See, e.g.* Ex. H, Sanofi_00553474; Ex. I, Sanofi_00559177.

Accordingly, the PSC timely requested a 30(b)(6) deposition to obtain testimony about Sanofi's communications with FDA regarding the 2004 labeling changes, including the existence of this RACR, what information would have been documented in this RACR, why this RACR went missing, and what attempts have made to locate it. A 30(b)(6) deposition is an appropriate

Date:   January 11, 2019
Page:   7 of 9

vehicle in which to obtain this information as it avoids the "floundering depositions of agents who lack authority over the matter, or knowledge about the matter." *Pioneer* Drive, 262 F.R.D. at 558 (D. Mont. 2009) (citing Advisory Committee's Note on Fed. R. Civ. P. 30.). Further, as noted by the Fifth Circuit, "Rule 30(b)(6) streamlines the discovery process. It places the burden of identifying responsive witnesses for a corporation on the corporation" *Resolution Tr. Corp.*, 985 F.2d at 197.

Finally, this request does not seek "discovery on discovery." Given the likelihood that Sanofi will present evidence of the FDA strikethrough at trial, such evidence is necessary to minimize potential prejudice caused by the lack of an explanation from FDA for the strikethrough and any implication by Sanofi, whether indirect or otherwise, that FDA struck the language because it is unhelpful or insignificant. Accordingly, the PSC respectfully requests that they be permitted to gather this evidence through a timely requested 30(b)(6) deposition notice.

**Topic 5 regarding COMMUNICATIONS between YOU and TAXOTERE patients relating to the "possibility of legal action" for ongoing alopecia similar to those identified in Sanofi_05442744, and any reviews, investigations, reports of cases or incidents related to ongoing alopecia by "Risk Management" as noted in Sanofi_05442744.**

As the Court knows, there are communications between Taxotere patients and Sanofi in which such patients threaten litigation. Plaintiffs are entitled to inquire about such communications and Sanofi's response. These communications are relevant to Sanofi's notice and pharmacovigilance, among other matters.

Far from "discovery on discovery," this is merely discovery on documents produced in litigation and an effort to contextualize them. When Sanofi sought to claw back these communications, because they were in part attorney-client privileged and confidential, the Court denied the request and authorized Plaintiffs to ask fact witnesses about such documents.

Plaintiffs then asked Sanofi employees Mark Gaydos and Madeline Malia about such correspondence. In a nutshell, neither could remember anything of substance. *See generally* Ex. J, Gaydos Deposition Tr. 417:3-428:4.

Below is a summary of Malia's deposition as it pertains to this topic:

- Malia states that she remembers Shirley Ledlie by name but says "I don't know" when asked if she remembers that there were other women (reporting permanent hair loss) as well. She does not remember Pam Kirby. Ex. K, Malia Dep. 68:22-24, 69:1-14
- In reference to the 2009 e-mail from Pam Kirby on the "goal" of a "class action suit" and the other women involved, Malia says that she cannot comment on anything more than what the sentence says. *Id.* at 159:19-21
- When questioned about Pam Kirby's "class action suit" e-mail, Malia explains that her role at Sanofi in this situation would be to monitor the internet for any mentions of this

Date:  January 11, 2019
Page:  8 of 9

- issue; however, she does not remember if she actually did this in 2009 when receiving the e-mail. *Id.* at 164:16-24, 165:1-5.
- Malia still does not recall who Pam Kirby is, after being shown e-mails where Malia comments on Pam Kirby's contact with the company reporting 100 women permanently bald. *Id.* at 219:4-6
- Malia agrees that Pam Kirby, through her contact with the company, made sure that Sanofi was aware that Pam Kirby herself knew of 100 women that took Taxotere, had breast cancer, and were permanently bald. *Id.* at 220:10-16
- Malia agrees that she, with Sanofi's approval, posted something online in response to Shirley Ledlie's post. 226:9-21. **PSC has asked for these documents from Sanofi, but Sanofi has not provided the documents.**
- The March 13, 2010 communication plan, drafted by Malia, with respect to the permanent alopecia/social media monitory, states "in light of pending litigation, the strategy for engaging media and bloggers will be reactive only." Malia testifies that she does not recall any litigation hold during this time period and does not recall why the communication plan was written in such a way as to reference pending litigation. *Id.* at 367:15-24, 368:1-15

Sanofi should be required to designate and prepare a witness who can answer these types of questions on behalf of the company.

Sanofi's objects that Plaintiffs have been dilatory in pursuing this issue. But that is wrong. Plaintiffs timely served this Rule 30(b)(6) deposition notice. In any event, the PSC has hardly been dilatory. As the Court knows, the parties have been working at a fever pitch to take all these depositions, review documents, and prepare for trial. There is no basis to deny this fair-minded discovery at this stage of the litigation.

Sanofi also objects to this topic based on PTO 49. But the objection fails because in topic 5 Plaintiffs are asking about documents already produced. Plaintiffs should be permitted to explore with a witness how Sanofi handled these communications and to put them in context, so that a jury can understand them.

**Company Legacy Files**

Sanofi has produced 1,516 "Company Legacy Files"—or documents that are not linked to any custodial file. Plaintiffs are willing to narrow this request substantially, to only 22 legacy files.

The relevance of these legacy files is plain. Consider, for example, a Sanofi reference book that describes characteristics of Taxotere as "*Alopecia* (loss of hair)—occurs in 80% of patients, but is *fully reversible* after therapy has ended." Ex. A (second emphasis added). Plaintiffs should not be denied the opportunity to ask a corporate witness about this document.

Consider next a legacy file that appears to be part of an Aventis (pre-Sanofi) breast cancer oncology sales representative training binder. It instructs: "Embellish the response rate data

Date: January 11, 2019
Page: 9 of 9

compared to Taxol." Ex. L, Sanofi_00772367. Plaintiffs have asked fact witnesses about this statement, but fact witnesses lack personal knowledge.

Though Sanofi claims that such documents are older, and it will be difficult for it to designate and prepare a witness, it made the same arguments respecting adverse event reports, and such arguments were rejected. They should be rejected here as well.

\* \* \*

The PSC has endeavored to explain why a Rule 30(b)(6) deposition is necessary on these topics. The PSC has also sought to narrow its own request. The Court has not asked for briefing on all possible objections, but the PSC has nonetheless provided the Court with a forecast of the PSC's position. The PSC is willing to provide further briefing should the Court require it, but it is quite apparent that Sanofi has no legitimate basis to refuse to designate and prepare *any* corporate witness to discuss *any* of these topics.

The PSC has also worked to narrow their Rule 30(b)(6) notice in order to prioritize the discovery they will need to present to a jury. (They have done so despite serious concerns with Sanofi's retention, concerns that the parties have discussed for months.) So narrowed, the Court should order the parties to select dates for this deposition and to meet and confer as necessary on any remaining objections to the notice.

For these reasons, the Court should allow Plaintiffs to proceed with the Rule 30(b)(6) deposition.

Respectfully Submitted,

Karen Barth Menzies
On behalf of the Plaintiffs' Steering Committee

CC:
Harley V. Ratliff, Esq. (via email)
Douglas J. Moore, Esq. (via email)
John F. Olinde, Esq. (via email)