1

1          M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2               UNCERTIFIED ROUGH DRAFT
3              UNEDITED TRANSCRIPTION DISCLAIMER
4
5
6               The following transcript of proceedings
7    is being delivered unedited and uncertified by the
8    court reporter.  This is an unofficial transcription
9    which should not be relied upon for purposes of
10   verbatim citation of testimony.
11                   This transcription has not been
12   proofread.  It is a draft transcript, not a certified
13   transcript.  As such, it may contain
14   computer-generated mistranslations of stenotype or
15   electronic transmission errors.  Corrections will be
16   made in the preparation of the certified transcript
17   resulting in differences in content, page and line
18   numbers, punctuation, and formatting.
19
20
21
22
23
24

25

2

```
1         M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2                THE VIDEOGRAPHER:  Good afternoon,
3    we're going on the record at 2:05 p.m. on June 18,
4    2019.  Please note that the microphones are
5    sensitive and may pick up whispering, private
6    conversation and cellular interference.  Please
7    turn off all cell phones or place them away from
8    the microphones because they can interfere with
9    the deposition audio.
10               Audio and video recording will continue
11   to take place until all parties agree to go off
12   the record.  This is media unit No. 1 of the video
13   recorded deposition of Michael Corrigan in the
14   matter of Taxotere Products Liability Litigation,
15   filed in the United States District Court, Eastern
16   District of Louisiana.
17               This deposition is being held at
18   Sheehan Phinney Bass & Green, 1000 Elm Street,
19   17th floor, in Manchester, New Hampshire, 30101.
20               My name is Josh Swan, and I am the
21   videographer.  The court reporter is Pamela Carle.
22   I am not authorized to administer and oath, I am
23   not related to any party in this action, nor am I
```

```
24        financially interested in the outcome.
25                Counsel and all present in the room and
```

3

```
 1           M. CORRIGAN - 06/18/19 - ROUGH DRAFT
 2    everyone attending remotely will now state their
 3    appearances and affiliations for the record.  If
 4    there are any objections of this proceeding please
 5    state them at the time of your appearance,
 6    beginning with the noticing attorney.
 7              MR. GRIFFIN:  Sam Griffin for the PSC.
 8              MR. MCCULLY:  Robert J. McCully, Shook
 9    Hardy Bacon, for defendant Sanofi-Aventis.
10              MR. DEPAZ:  Matt Depaz with Shook Hardy
11    Bacon for Sanofi.
12              MR. OOT:  Patrick Oot with Shook Hardy
13    Bacon for Sanofi.
14              MR. MCCULLY:  Can we get those on the
15    phone to enter appearances, please, for the
16    record.
17              MR. COAN:  This is Jeff Coan for Sun
18    Pharmaceutical.
19              MR. HOUSEAL:  Timothy Houseal of Young
20    Conaway Stargatt & Taylor on behalf of McKesson.
21              MS. GUMEROVE:  Lauren Gumerove on
22    behalf of the Hospira and Pfizer Defendants.
```

20      attorneys who are present here today?
21          A.   I did.
22          Q.   For how long?
23          A.   It would have been for about -- in
24      terms of meaningful discussion, for about an hour
25      and a half, and then after that we went to lunch

                                                          63

1           M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2       and kind of made small talk.
3           Q.   Did you review any documents other than
4       the documents that you've been asked about today?
5           A.   No.
6           Q.   Did you have any discussions with
7       anyone other than Sanofi's attorneys since your
8       June 7th deposition?
9           A.   No, I did not.
10          Q.   Did you review the rough draft of your
11      deposition transcript from June 7th?
12          A.   No, I did not, and didn't have access

13    to it.
14         Q.    Did Sanofi provide you with any
15    additional documents between the June 7 deposition
16    and today other than those documents that have
17    been marked today or were marked on June 7?
18         A.    No.
19         Q.    Are you prepared today to discuss
20    notices Sanofi received from patients outside the
21    US of claims alleging Taxotere caused permanent
22    alopecia?
23         A.    No, I'm not.
24         Q.    Are you prepared today to discuss
25    notices Sanofi received from US patients alleging

64

1          M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2     Taxotere caused permanent alopecia that predate
3     Sanofi's internal referral of such notices to
4     Sanofi's US risk management department?
5               MR. MCCULLY:  Object to form.
6          A.    I'm prepared to discuss the
7     communications between Sanofi U.S. risk management
8     and patient -- and US patients.  I -- I believe
9     that the other part of your question that predate
10    that is beyond the scope of Judge North's order, so
11    I'll have to check.
12    BY MR. GRIFFIN:

13        Q.    And you're not a lawyer?

14        A.    I'm not.

15        Q.    And you don't have any legal training?

16        A.    No, I don't.

17        Q.    And you're relying on Sanofi's legal

18   interpretation of the order to testify today?

19              MR. MCCULLY:  Object to form.

20        A.    Yes.

21              MR. GRIFFIN:  Can you read back my

22   third or fourth question that he didn't answer?

23              MR. MCCULLY:  Object to the side bar.

24              MR. GRIFFIN:  Can you read back my

25   prior question?

                                                          65

1         M. CORRIGAN - 06/18/19 - ROUGH DRAFT

2               Strike that, I'll read it again.

3    BY MR. GRIFFIN:

4         Q.    Are you prepared to discuss today

5    notices Sanofi received from US patients alleging

6    Taxotere caused permanent alopecia that predate

7    Sanofi's internal referal of such notice the

8    Sanofi's US risk management department?

9               MR. MCCULLY:  Object to form.

10        A.    No.

11   BY MR. GRIFFIN:

12          Q.    Are you prepared today to discuss
13     internal Sanofi communications regarding notices
14     Sanofi received from US patients alleging Taxotere
15     caused permanent alopecia that predate Sanofi's
16     referral of such notices to Sanofi's US risk
17     management department?
18          A.    No.
19                MR. MCCULLY:  Object to form.
20     BY MR. GRIFFIN:
21          Q.    Do you know whether any such internal
22     communications exist?
23                MR. MCCULLY:  Object to form.
24          A.    No, I don't.
25     BY MR. GRIFFIN:

                                                        66

 1           M. CORRIGAN - 06/18/19 - ROUGH DRAFT
 2          Q.    Do you know whether the risk management
 3     department is a part of the Sanofi legal
 4     department?
 5          A.    The Sanofi risk management department
 6     is not a direct -- I don't know for certain.  So I
 7     don't want to debate semantics about what
 8     department is when there is a bit of a gray area
 9     there.
10                What I can confirm to you is that if a
11     patient suggests that they have sought legal

12       counsel, they will be referred to legal,

13       Sanofi U.S. legal, and that is the out of the

14       domain of Sanofi U.S. risk management.

15            Q.    To prepare for your deposition, did you

16       investigate whether there were any claims that

17       made their way to the legal department without

18       coming from risk management?

19               MR. MCCULLY:  Object to form.

20            A.    I need that one repeated one more time,

21       sir.

22               MR. GRIFFIN:  Would you please read

23       that back.

24               (Question read.)

25            A.    In the documents that I reviewed to be

                                                          67


1            M. CORRIGAN - 06/18/19 - ROUGH DRAFT

2        prepared for this case within the scope of

3        Judge North's order, there was no evidence of such.

4        So I investigated what was in the scope of what

5        Judge North's order stipulated.

6        BY MR. GRIFFIN:

7             Q.    I don't understand what you mean.  If a

8        claim went directly to the legal department, would

9        you be prepared to testify about it today?

10               MR. MCCULLY:  Object to form.

11            A.    No, I would not.

12   BY MR. GRIFFIN:

13        Q.    Because that's outside the scope.

14        A.    Correct.

15        Q.    So you don't know whether there were

16   claims made at all directly -- strike that.

17              So you are unable to testify today

18   whether there were any claims that reached the

19   legal department that had not come through risk

20   management?

21              MR. MCCULLY:  Object to form.

22        A.    What I -- what I can -- what I can

23   testify to is that within the evidence that I was

24   provided guidance and that I prepared to review is

25   that every claim that was made that didn't involve

68

1          M. CORRIGAN - 06/18/19 - ROUGH DRAFT

2    a patient seeking counsel or initiating legal

3    proceedings against Sanofi was referred to

4    Sanofi U.S. risk management.

5    BY MR. GRIFFIN:

6         Q.    So you don't know how many claims

7    against Sanofi alleging permanent hair loss made

8    their way to Sanofi's US legal department without

9    first coming through risk management, do you?

10        A.    No, I don't.

11       Q.    Did you ask either of the two witnesses
12   that you interviewed about that?
13             MR. MCCULLY:  Object to form.
14       A.    What I did ask about was protocol; how
15   things were handled and what was supported.  And
16   through the eight hours of discussion we had during
17   the deposition on, I think it was June 7th, and
18   today, the protocol stated, as I just mentioned a
19   minute ago, that legal proceedings, patients
20   seeking coun -- that has sought counsel will be
21   referred to Sanofi US legal'.  A patient with a
22   claim will be referred to Sanofi U.S. risk
23   management.
24       Q.    Does that mean the answer to my
25   question is no?

                                                      69

1         M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2        A.    Repeat the question, then.
3              MR. GRIFFIN:  Could you read back the
4    question, please.
5              THE WITNESS:  Please.
6              (Question read.)
7        A.    About what?
8    BY MR. GRIFFIN:
9        Q.    Did you ask either of the two witnesses
10   that you interviewed about whether they were aware

```
11      of claims Sanofi received from US patients that

12      made their way to the legal department without

13      first coming through the risk management

14      department?

15              MR. MCCULLY:  Object to form.

16         A.   No, I didn't ask that particular

17      question.

18  BY MR. GRIFFIN:

19         Q.   Do you know where -- strike that.

20  (Corrigan Exhibit 44 was marked for identification.)

21  BY MR. GRIFFIN:

22         Q.   Let me show you what we've marked as

23      Exhibit 44 to your deposition.  Let me ask you if

24      you've seen this document before.

25         A.   No, I -- I have not seen this document
```

                                                              70
```
 1           M. CORRIGAN - 06/18/19 - ROUGH DRAFT

 2      before.

 3         Q.   Do you know what a MedWatch report is?

 4         A.   I couldn't elaborate on what a MedWatch

 5      report is.

 6         Q.   Let me refer you to the third page of

 7      Exhibit 44.

 8         A.   Okay.

 9         Q.   Near the middle of the page it says,

10      additional -- it says, "Ad info received from
```

11     medical report from legal on June 7, 2011."  Do
12     you see that?
13          A.   Okay, ad info received from medical
14     report from legal on -- yes, I'm right there.  I'm
15     tracking with you.
16          Q.   Do you know how a MedWatch report would
17     have made its way to the legal department?
18          A.   No.
19               MR. MCCULLY:  Object to form.
20   BY MR. GRIFFIN:
21          Q.   Do you know why legal would be
22     providing commentary in a MedWatch report?
23               MR. MCCULLY:  Object to form.
24          A.   No, I don't.
25   BY MR. GRIFFIN:

                                                    71

1           M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2           Q.   Do you have any information about which
3     patient is being discussed in Exhibit 44?
4                MR. MCCULLY:  Object to form.
5           A.   This is the first time I've seen it,
6     so, no.
7    BY MR. GRIFFIN:
8           Q.   As part of your preparation to provide
9     deposition testimony in this case, did you become
10    aware that Sanofi referred adverse event reports

```
11      directly to the legal department?
12          A.   No.
13               MR. MCCULLY:  Object to form.
14          A.   I didn't.
15  BY MR. GRIFFIN:
16          Q.   And do you believe that communications
17     from Sanofi's legal department to a patient who
18     has made a claim against Sanofi alleging permanent
19     alopecia, that came directly to the legal
20     department and did not go through risk management,
21     is outside the scope of what you're prepared to
22     testify about?
23               MR. MCCULLY:  Object to form.
24          A.   This -- this whole -- I'll just -- I'll
25     just state this.  This is the first time I've seen
```

                                                                72

```
 1          M. CORRIGAN - 06/18/19 - ROUGH DRAFT
 2     this MedWatch report.  I don't even know if this
 3     report is on a patient that's -- that is directly
 4     correlating to this -- this trial or this
 5     deposition.  I would have to only take your word
 6     for it.  I'd have to assume so.
 7               One thing that stands out to me, just
 8     glancing at the MedWatch report, is that this
 9     patient received Taxotere plus radiation therapy,
10     and as a result of that therapy had no recurrence,
11     no evidence of recurrence, which I'm very grateful
```

12     for.  And that's part of the reason why we are very
13     proud to have had brought Taxotere to market, for
14     those sorts of results.
15             In terms of any kind of internal, why a
16     MedWatch report was referred to legal, I'm not
17     prepared to comment on that.  It's not within the
18     scope of the order.
19             MR. GRIFFIN:  Move to the strike to the
20     extent nonresponsive.  My question does not relate
21     to this MedWatch report, and I'm not making any
22     representations to you whatsoever about the
23     MedWatch report.
24             THE WITNESS:  Okay.
25             MR. GRIFFIN:  Could you read back my

73

1       M. CORRIGAN - 06/18/19 - ROUGH DRAFT
2     question.
3             (Question read.)
4             MR. MCCULLY:  And my objection is to