UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: Tanya Francis, Case No. 2:16-cv-17410; Barbara Earnest, Case No. 2:16-cv-17144 | |

**MEMORANDUM IN OPPOSITION TO SANOFI'S
OMNIBUS MOTION TO PRECLUDE IMPROPER EXPERT TESTIMONY**

**I.    INTRODUCTION**

Sanofi's Motion to Preclude "improper" Expert Testimony from Plaintiffs' experts bears no resemblance to a proper Federal Rule of Civil Procedure 702 or *Daubert* motion. Instead of focusing on the admissibility of expert testimony, Sanofi asks the Court to rule *in limine*—specifically, to exclude evidence as irrelevant or lacking foundation.

Sanofi's motion is premature and may be denied without prejudice. As an initial matter, objections to relevancy and lack of foundation are best handled in trial in the context of evidence presented. Moreover, the Court has twenty-odd summary judgment and *Daubert* motions pending. The submission date for motions *in limine*, by contrast, is months away. Sanofi offers no good reason to deviate from the Court's carefully crafted schedule to now entertain Sanofi's impulsive and premature motion.

More importantly, though, Sanofi's motion also fails on the merits. Testimony that Sanofi seeks to bar—knowledge and narrative testimony, and testimony about legal conclusions—is not excludable in the circumstances presently before the Court. Thus, in the event the Court takes up the motion at this time, it should be denied with prejudice as well.

1

II.   ARGUMENT

    A.   Testimony as to "Meaning, Intent, Motivation, State of Mind, and Knowledge"

Contrary to Sanofi's suggestions, the Federal Rules of Evidence do not categorically "preclude expert testimony concerning … intent, motive, state of mind, or knowledge" of a party. (*See* Defs' Mot. at 2.)  Rather, Rule 702 bars an expert's *speculation* as to those matters. *See, e.g.*, *Drake v. Allergan, Inc.*, No. 13-cv-234, 2014 WL 5392995, at *6 (D. Vt. Oct. 23, 2014) (expert may not "speculate about other individual's or entity's motives, knowledge, or intent"); *see also Wells v. Allergan, Inc.*, No. CIV-12-973-C, 2013 WL 7208221, at *2 (W.D. Okla. 2013) (prohibiting expert speculation about intent or state of mind but permitting testimony about facts from which the jury could infer intent). Courts routinely permit several types of testimony that Sanofi seeks to exclude, including (1) testimony regarding a party's knowledge, (2) testimony explaining a party's potential motivations, and (3) any other testimony about a party's state of mind so long as it is supported in the record.

First, experts like Drs. Kessler and Plunkett are free to testify as to a defendant's *knowledge*, as opposed to its intent or motivation, when that knowledge is demonstrated in the record. Sanofi itself notes the admissibility of such testimony in its brief when citing *In re Tylenol*, where Dr. Plunkett, facing a similar challenge, was permitted to offer "statements about what the defendants knew or did not know," as opposed to inappropriate testimony regarding "what the defendants intended by their actions." *In re Tylenol Mktg Sales Practices & Prod. Liab. Litig.*, 13-md-02436, 2016 WL 4039329, at *5 (E.D. Pa. July 28, 2016); *see also Shults v. Int'l Flavors & Fragrances, Inc.*, No. C 11-4077, 2014 WL 12603223, at *3 (N.D. Iowa July 18. 2014) ("To the extent that an expert adequately demonstrates a basis for an opinion about what the defendants

2

knew or should have known from such information that was within the defendants' possession, then such an opinion may be admissible at trial, if the proper foundation is laid.").

Second, expert witnesses are free to testify to factors or conditions that may have motivated a party to take (or not take) a certain action, so long as such testimony does not speculate definitively as to the party's motive. For instance, in the widely-cited appellate opinion in *DePaepe v. General Motors Corp.* (also cited by Sanofi), the court ruled that while plaintiff's expert could not give opinion testimony that GM had a *particular* motive when it designed a vehicle part, "[h]e could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason)." 141 F.3d 715, 720 (7th Cir. 1998); *accord Neuharth v. NACCO Materials Handling Grp., Inc.*, No. CIV. 01-4034, 2002 WL 34700601, at *5 (D.S.D. Dec. 17, 2002) (expert may testify as to financial motivations but may not speculate as to motive). Likewise, it is acceptable for an expert to describe economic conditions in defendant's industry and explain market factors impacting defendant's choices because such testimony "seeks to articulate why there existed economically rational, independent business reasons" for decisions made, which is easily distinguishable from characterizing defendant's mental state, attitude, or corporate intent. *In re: Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2016 WL 4385843, at *3 (E.D. Pa. Aug. 15, 2016); *see also Retractable Techs. Inc. v. Abbott Labs., Inc.*, 05-CV-157, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010) (allowing testimony on the sources of pressure on working capital, the effect of marketing decisions on sales, and other financial concerns, finding them to be "issues of sufficient complexity to warrant expert testimony") (citing *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120–21 (5th Cir. 1980)). Contrary to Sanofi's position,

"[a]lthough Dr. Kessler cannot testify as to intent, Dr. Kessler can testify about facts from which the jury can infer intent." *Wells*, 2013 WL 7208221, at *2 (quoting *DePaepe*, 141 F.3d at 720).

Third, and relatedly, the experts' experiences and qualifications permit them to understand and testify to other complex issues, like regulations or marketing, especially where they intersect with potential economic motivations. *See In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 09-md-02100, 2011 WL 6302287, at *14 (S.D. Ill. Dec. 16, 2011) ("Dr. Kessler's experience in enforcing the FDCA, working with DDMAC, and advising drug companies provides sufficient experience and expertise to understand defendant's marketing scheme and to opine as to its economic purpose. Dr. Kessler's report provides extensive support for his opinions surrounding this matter."); *see also In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 11-MD-2244, 2016 WL 9560113, at *7 (N.D.Tex. Oct. 3, 2016) (expert may apply "specialized knowledge in the discipline of marketing, including the areas of marketing codes, regulations, and guidelines, to analyze voluminous specific marketing representations made by defendants, and this testimony is helpful to the factfinder" because this would be an "application of … expertise to documents and their contents, not speculation as to [defendant's] state of mind"). Likewise, experts are permitted to testify as to meaning and context of "technically worded communications or documents that the jury will not necessarily understand without [expert] assistance." *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-CV-01541, 2018 WL 571877, at *3 (D. Colo. Jan. 26, 2018).

As for Sanofi's examples of Dr. Kessler's allegedly "improper" testimony or opinions in the instant case,[1] Plaintiffs respectfully submit that none of them fall into the categories proscribed by Rule 702. For example, Dr. Kessler's opinions on Sanofi's marketing do not speculate about

---

[1] While it is true Dr. Kessler's and other witnesses' testimonies have been circumscribed in advance of other trials, Sanofi fails to show that Dr. Kessler has ever been "admonished" by a federal court. (Defs' Mot. at 5.)

4

the company's intent, but instead fairly describe its strategy, as demonstrated in the record, and quote Sanofi itself on its stated goal: building "The First Billion Dollar Taxane Franchise in the US." (Defs' Mot. at 5 (quoting Kessler Report 63 ¶ 203).)  Elsewhere in his report, Dr. Kessler discusses, just as experts in the case law have, factors surrounding Taxotere marketing efforts, and he characterizes those efforts appropriately and accurately in the record: (1) "that Taxol / paclitaxel … was Taxotere's primary competitor, and that Taxol/paclitaxel would become generic in 2001"; and (2) that Sanofi's strategy in response was to use the "decreased economic incentive for the manufacturers of Taxol and generic paclitaxel" to "differentiat[e] Taxotere from Taxol/paclitaxel to increase market share and justify Taxotere's presumed higher price." This kind of testimony regarding a party's known strategy does not involve speculation, only simple references to the record.  (Ex. B to Defs' Mot., Rec. Doc. 6158-2, Kessler Report ¶ 204.)

Likewise, Dr. Kessler's opinions regarding Sanofi's knowledge as early as 2009 of a risk of irreversible alopecia or of evidence of a causal association is proper under FRE 702 (*Id.* at ¶¶ 208.4 – 208.5), so long as there is a proper foundation for this testimony at trial.  *See Shults*, 2014 WL 12603223, at *3. Sanofi's other objections to Dr. Kessler's opinions are to passages that simply do not contain speculation at all:

> As acknowledged by Sanofi, prior to December 2015, Sanofi's Taxotere labeling included a reference to the adverse event of alopecia, but Sanofi never disclosed the risk of irreversible alopecia in its label or in communications with patients, physicians, or United States regulatory authorities and internally determined that "alopecia . . . should be 'not important risk'" in certain regulatory documents.

(Defs' Mot. at 6 (citing Kessler Report 54-55 ¶ 166).) Moreover, the deposition testimony cited, but not quoted, in Sanofi's memorandum comes nowhere close to the line of exclusion. (*See id.* (inaccurately claiming speculation "about what might have motivated Sanofi to make labeling changes on alopecia in 2004") (citing Kessler Dep. Tr. 54:11 – 57:22).)

5

Sanofi would have this Court believe that Dr. Kessler cannot opine on Sanofi's actions as they relate to those governing regulations and as they are presented in the contemporaneous internal documents that he reviewed. Sanofi is incorrect as these are the types of documents commonly relied upon by experts. Drawing conclusions and supporting opinions with internal company documents is within the province of experts operating in their field. This is especially true when what Sanofi knew or should have known directly bears on the central issue in this case – whether Sanofi failed to provide an adequate Taxotere warning. Indeed, Dr. Kessler was permitted to reach similar conclusions in the recent Actos litigation. In those cases, Dr. Kessler testified that the defendant had "sufficient information and thus, the obligation" to provide prescribing physicians with warnings about the increased risk of bladder cancer associated with Actos as of a certain date. Dr. Kessler's opinion was based on a review of a "plethora of documents." *See In re Actos Prods. Liab Litig.*, MDL No. 6:11-md-2299, 2014 WL 4364832 at *9-10 (W.D. La. Sept. 2, 2014). Dr. Kessler is permitted to use internal document (and others) to support his expert opinion that Abbott could have, and should have, had warning with respect to the risk of permanent hair loss with Taxotere. Sanofi has cited no actual example of Dr. Kessler opining on Sanofi's "bad motives" or simply reading evidence into the record without any analysis. At best, any such objections must be ruled upon at trial. *See, e.g.*, *In re Yasmin*, 2011 WL 6302287, at *12; *see also In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant*, 2016 WL 9560113, at *7 ("Any alleged speculation within [expert's] report is not properly the subject of this *Daubert* analysis and should be addressed to the Court in the context of the presentation of evidence at trial."); *see also In re DePuy Orthopedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 11-MD-2244, 2014 WL 3557345, at *8 (N.D. Tex. July 18, 2014) ("The admission of [expert's] alleged speculation and narrative testimony, however, is not properly the subject of this Court's

gatekeeping function under *Daubert*. It implicates this Court's discretion over the presentation of evidence at trial and should be taken up there.").

### A. "Narrative" Factual Testimony is Routinely Permitted at Trial, and Objections to Such are More Properly Addressed at Trial

Courts have also repeatedly denied requests to preclude factual "narrative" testimony, including specifically as to Dr. Kessler. *See, e.g.*, *In re Yasmin*, 2011 WL 6302287, at *13 ("[T]he Court has broad discretion over the mode and order of examining witnesses and presenting evidence and may allow testimony in narrative form at trial if the Court finds that it would [be] helpful to the jury."); *see also In re DePuy Orthopedics, Inc. Pinnacle Hip Implant*, 2014 WL 3557345, at *8 ("The admission of Dr. Abramson's alleged speculation and narrative testimony, however, is not properly the subject of this Court's gatekeeping function under *Daubert*. It implicates this Court's discretion over the presentation of evidence at trial and should be taken up there."); *In re Actos Prods. Liab. Litig.*, No. 12-cv-00064, 2014 WL 120973, at *10 (W.D. La. Jan. 10, 2014) ("The objection that testimony is 'narrative' is an objection as to form, foundation, or responsiveness, and must be presented at trial."); *see also Wells*, 2013 WL 7208337, at *3 (same); *In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641, 2017 WL 6523833, at *8 (D. Ariz. Dec. 21, 2017) (whether narration "will be proper during any part of Dr. Kessler's testimony must be determined at trial").

"There is [. . .] nothing particularly unusual, or incorrect, in a procedure of letting a witness relate pertinent information in a narrative form as long as it stays within the bounds of pertinency and materiality." *In re Yasmin*, 2011 WL 6302287, at *13 (quoting *United States v. Garcia*, 625 F.2d 162, 169 (7th Cir. 1980)); *see also In re Bard IVC Filters*, 2017 WL 6523833, at *8 ("Furthermore, the Court notes that narrative testimony is appropriate in some circumstances.") (citing *Yasmin*, 2011 WL 6302287, at *13); *Wells*, 2013 WL 7208337, at *3 ("To the extent the

7

facts relied on by [expert] in forming her opinions are relevant and not cumulative, [she] may include them in her testimony"); *In re: Tylenol (Acetaminophen) Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2:12-CV-07263, 2016 WL 4538621, at *8 (E.D. Pa. Aug. 31, 2016) ("A narrative may be admissible, however, if an expert's explanation of complicated facts can help a jury better understand them."); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836443, at *15 (N.D. Ill. May 8, 2017) ("AbbVie contends that Dr. Kessler's testimony amounts to an improper factual narrative with a 'spin' that requires no specialized knowledge. It contends that this amounts to improper advocacy that would invade the 'fact-finding province of the jury.' The Court disagrees. Dr. Kessler's testimony will assist the jury in determining its ultimate conclusions, and it presents no danger of invading the jury's province.").

Here, Sanofi speculate that Dr. Kessler and Dr. Madigan may spend "a great deal of time" summarizing the factual record. But in this same breath, Sanofi admits that this testimony is permitted "insofar as is necessary to provide the basis for the expert's opinions." (Defs' Mot. at 9.) In other words, Sanofi seeks to preclude testimony that does not support Dr. Kessler or Dr. Madigan's opinions without identifying what that testimony or evidence is. For this reason alone, Sanofi's Motion should be denied. This is because, as courts have noted, these "generalized arguments" in motions that "identify no specific testimony that the Court should exclude" make "line drawing … not possible." *In re Bard IVC Filters*, 2017 WL 6554163, at *3 (defendants citing "to a few paragraphs in the doctors' 115-page expert report, but otherwise make no specific request regarding testimony to be excluded").

Not only is this type of objection premature, but Sanofi provides no specific basis, *i.e.* relevance, foundation, etc. in which Plaintiffs can properly and specifically respond to. The only

8

objection loosely raised by Sanofi to factual narrative testimony is hearsay, and Sanofi fails to provide any specifics regarding what evidence is considers hearsay. (Defs' Mot. at 8.) Regardless, an expert may rely on inadmissible evidence, including hearsay, if it is consistent with the ordinary practices of an expert of that type—a point not mentioned by Sanofi but supported in the case law it cites. *Factory Mutual Insurance Co. v. Alon USA, L.P. et al.* 705 F.3d 518 (5th Cri. 2013); *see also United States v. Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008). Sanofi does not claim that the evidence relied upon by Dr. Kessler or Dr. Madigan is not of the sort normally considered by experts in their respective fields—nor should they—Dr. Kessler and Dr. Madigan have both been permitted to testify in numerous courts relying on the similar types of evidence as they relied upon in this case.

Finally, Sanofi's Motion takes special aim at Dr. Kessler, claiming that he has a tendency to "cross the line" in his testimony. But Sanofi's cited authorities do not show any tendency of the sort as these cases do not delineate what objectionable testimony would look like in this regard. In fact, the *Drake* case cited by Sanofi as an instance of a court's "barring" of Dr. Kessler's narrative testimony ruled only that he "may testify about the facts on which he relies in forming his opinions assuming they are relevant and non-cumulative." *Drake*, 2014 WL 5392995, at *6 ("At trial, counsel for either party may object if an expert's testimony crosses the line … The Court is necessarily limited in its ability to make specific findings because drawing the line between acceptable and unacceptable testimony in these categories inherently depends on the nature of the actual testimony."). For these reasons, the Court should deny Sanofi's motion and instead reserve any rulings on specific objections (including hearsay) for trial, in light of the usefulness, relevance, and admissibility of the testimony offered.

### B. Testimony Containing Legal Conclusions

Sanofi's challenge regarding "legal" conclusions conflates two schemes at play in these cases: (1) the federal regulatory framework governing manufacture, marketing, and sale of prescription drugs in this country and (2) the state tort law governing the cases, which the jury will be instructed on before deciding whether Sanofi failed to adequately warn prescribing physicians. Contrary to Sanofi's arguments, courts allow a qualified expert to offer testimony on FDA regulations, including whether a party complied with such regulations, as well as the relevant duty of care under state law. *See In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016) ("expert testimony regarding Bayer's compliance with FDA regulations therefore will not usurp the Court's role in explaining the law to the jury, but will assist the jury in determining whether Bayer acted as a reasonably prudent pharmaceutical manufacturer") (internal quotations omitted) (citing *Wells*, 2013 WL 7208221, at *1; *In re Yasmin*, 2011 WL 6302287, at *25; *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 191 (S.D.N.Y. July 27, 2009)); *see also In re Bard IVC Filters*, 2017 WL 6523833, at *8 (expert permitted to offer opinions concerning the FDA regulatory process and drug-maker's compliance). Dr. Kessler's relevant experience with FDA—he led the agency twice—makes him eminently qualified to testify as to the state law duty of care for drug makers:

> Moreover, as the Commissioner of the FDA, Dr. Kessler enforced the FDCA that applied to drug companies' conduct throughout the country. He received a law degree from the University of Chicago and has taught food and drug law at Columbia University Law School, as well as written "amicus briefs on the "interaction between State and federal law." Furthermore, he advises drug companies on how to meet their legal obligations. While Dr. Kessler has never sat for the bar exam and is not licensed to practice law in any particular state, his past experience qualifies him to testify about a drug company's duty of care under state law.

*In re Yasmin*, 2011 WL 6302287, at *14.

Further, plaintiffs' experts may permissibly share expert opinion "that embraces an ultimate issue, to the extent that it may be relevant and assist the jury." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d, 589, 629 (S.D.W.Va. 2013), *on reconsideration in part* (June 14, 2013). As the Court in *In re C.R. Bard, Inc.* explained:

> Under Federal Rule of Evidence 704, an opinion is not objectionable just because it embraces an ultimate issue [. . . .] The best way to determine whether opinion testimony contains legal conclusions is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. Thus, Dr. Kessler may not offer an expert opinion, for example, Bard's Avaulta products were "not reasonably safe" or that Bard "failed to warn." Dr. Kessler may, however, offer a more general expert opinion, using terms that do not have a separate, distinct, and specialized meaning in the law.

*Id.*; *see also Raley v. Hyundai Motor Co.*, No. CIV-08-0376-HE, 2010 WL 528420, at *3 (W.D. Okla. Feb. 11, 2010) ("As with plaintiff's other experts, Dr. Batzer will not be permitted to offer opinions which are essentially legal conclusions. For example, he will not be permitted to testify that defendants' [actions] constituted 'negligence.'") To the extent Dr. Kessler's conclusions implicate the state tort law, courts have determined such conclusions to be an appropriate "application of the facts, as he believes them to be, to the law as he understands it and as will be instructed by the [c]ourt." *In re Actos Prods. Liab Litig.*, MDL No. 6:11-md-2299. 2014 WL 120973 at *12 (W.D. La. Jan. 10, 2014).

Here, Plaintiffs anticipate offering Dr. Kessler to address the following areas: the FDA's regulatory scheme in general, FDA practices and procedures, the FDA's relationship with pharmaceutical companies, the standard of care for the pharmaceutical industry based on his training and experience, and Sanofi's compliance with FDA regulations and industry standards (including the facts from which the jury could infer intent and relevant, non-cumulative facts Dr. Kessler relied upon in forming his opinion). These are all areas that Dr. Kessler has been routinely

11

permitted to testify. *See, e.g., Drake,* 2014 WL 5392995, at *6; *Wells,* 2013 WL 7208221, at *1–2*; In re C.R. Bard, Inc.,* 948 F. Supp. 2d at 628-32; *Georges v. Novaritis Pharm. Corp.,* No. CV 06–5207 SJO (VBKx), 2012 WL 9064768, at *9-10 (C.D. Cal. Nov. 2, 2012); *Fosamax,* 645 F. Supp. 2d. at 192. Indeed, Dr. Kessler offered similar opinions in the litigation concerning the pharmaceutical drug Actos. *In re Actos*, 2014 WL 120973 at *9. The Actos defendants made the same challenges Sanofi makes here. The MDL court (the U.S. District Court for the Western District of Louisiana) held that Dr. Kessler's opinions did not constitute impermissible legal conclusions. *Id.* Indeed the Actos court held that "Dr. Kessler, by virtue of his experience as a former Commissioner of the FDA an as Chair of the compliance committees in tow companies that are currently regulated by the FDA is sufficiently qualified to pass the gatekeeper's evaluation as to *Daubert* and the evidence contained within those opinions, on their face, are likely relevant *to the legal issues presented by the application of [state] law of tort." Id.* at 12 (emphasis added).

Dr. Kessler's report contains no opinions regarding Sanofi's obligations under state law nor have Plaintiffs sought to introduce such opinions. In its Motion, Sanofi selectively quotes from Dr. Kessler's report, selecting clauses that contain phrases that Sanofi claims to be conclusions of law. (Defs' Mot. at 11.) For instance, Sanofi claims that Dr. Kessler improperly opines that "[b]y as early as 2009 and continuing through at least 2015, Sanofi's Taxotere labeling failed to adequately warn that there was reasonable evidence of a causal association between Taxotere and irreversible alopecia." (*Id*.) But closer inspection of this opinion reveals that Dr. Kessler is addressing Sanofi's failure to address the risk of permanent alopecia in Section 5 of the label, which is label's "Warnings" section. (Kessler Report at 54-63.) This is a permissible opinion. *See generally In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 6523833, at *7 (D. Ariz. Dec. 21, 2017) ("Dr. Kessler may, however, offer opinions concerning

the FDA regulatory process and Bard's compliance with the process."); *Drake*, 2014 WL 5392995, at *6 (permitting Dr. Kessler to "testify about the FDA's regulatory scheme in general, FDA practices, and procedures, [the defendant's] compliance with FDA regulations, the FDA's relationship with pharmaceutical companies, and the standard of care for the pharmaceutical industry based on his training and experience."). Sanofi's criticisms of Dr. Kessler's marketing opinions are also negated upon closer inspection—simply because an opinion contains the word "substantial" and "misleading" does not render it a legal conclusion.

This is not a case like those cited by Sanofi where an expert sought to offer legal opinions that would determine the outcome of a case. (Defs' Mot. at 9 (citing *In re Prograf Antitrust Litig.*, No. 11-MD-02242, 2014 WL 7641156 (D. Mass. Dec. 23, 2014).) For example, the *Prograf* court was deciding an antitrust claim (obviously different issues than those presented here) and determined that Dr. Kessler could testify about the standard practice for petition certifications, but could not opine that the requested (not implemented) label change would have constituted fraud on the FDA. The crux of the ruling was that Dr. Kessler could not testify about what *would* have been legal or illegal, or the law of fraud "more generally." Such opinions are not at issue here as Dr. Kessler opines about actual labeling information and actions taken by Sanofi in the time leading up to Plaintiffs' conception and resulting injury.

Sanofi also complains that Dr. Feigal purports to offer testimony regarding legal conclusions. But Dr. Feigal has made clear in her deposition that she offers no opinions whether Sanofi "did or did not meet FDA requirements." (Ex. G to Defs' Mot., Rec. 6158-7, Feigal Dep. Tr. Vol. I, 109:1-5.) Neither will she testify regarding the case law on failure to warn at trial, to which Sanofi objects here. Even so, Dr. Feigal is certainly qualified to testify as to industry standards and expectations regarding the communication of safety risks to doctors and patients, as

13

she had been leading up to the passage of her deposition to which Sanofi objects. (Defs' Mot. at 11–12 (citing Feigal Dep. Tr. Vol. I, 112:3-21).)

Accordingly, Sanofi's request to exclude testimony from Dr. Kessler and Dr. Feigal regarding purported legal conclusions should be denied.

## CONCLUSION

For the foregoing reasons, Sanofi's Omnibus Motion to Preclude Improper Expert Testimony should be denied.

Dated: June 26, 2019                                        Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

15

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

<i>/s/ M. Palmer Lambert</i><br>
M. PALMER LAMBERT