# EXHIBIT A

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
****************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 16-MD-2740
                         Section "H"(5)
                         New Orleans, Louisiana
                         April 4, 2019

THIS DOCUMENT RELATES TO ALL CASES
****************************************************************

                  TRANSCRIPT OF MOTION HEARING
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

                    *DAWN BARRIOS*
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    *MATTHEW PALMER LAMBERT*
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    *CHRISTOPHER COFFIN*
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112

                    *KAREN BARTH MENZIES*
                    GIBBS LAW GROUP
                    400 CONTINENTAL BOULEVARD
                    EL SUGUNDO, CA 90245

APPEARANCES CONTINUED

━━━━━━━━━━━OFFICIAL TRANSCRIPT━━━━━━━━━━━

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

FOR THE PLAINTIFFS:

*VAL P. EXNICIOS*
LISKA EXNICIOS & NUNGESSER
1515 POYDRAS STREET
SUITE 1400
NEW ORLEANS, LA 70112

*CHRISTOPHER ELLIOTT*
BACHUS & SCHANKER
1899 WYNKOOP STREET
SUITE 700
DENVER, CO 80202

*DANIEL P. MARKOFF*
ATKINS & MARKOFF LAW FIRM
9211 LAKE HEFNER PARKWAY
SUITE 104
OKLAHOMA CITY, OK 73120

*LINDSAY STEVENS*
GOMEZ TRIAL ATTORNEYS
655 WEST BROADWAY
SUITE 1700
SAN DIEGO, CA 92101

*RICHARD ROOT*
MORRIS BART, LLC
601 POYDRAS STREET
FLOOR 24
NEW ORLEANS, LA 70130

*EMILY JEFFCOTT*
THE LAMBERT FIRM, PLC
701 MAGAZINE STREET
NEW ORLEANS, LA 70130

*ALYSSA WHITE*
JOHNSON LAW GROUP
4440 VON KARMAN AVENUE
SUITE 100
NEWPORT BEACH, CA 92660

APPEARANCES CONTINUED

—OFFICIAL TRANSCRIPT—

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

FOR SANOFI S.A.:

          *HARLEY V. RATLIFF*
          *TORREY PETERSON*
          *JORDAN BAEHR*
          SHOOK, HARDY & BACON
          2555 GRAND BOULEVARD
          KANSAS CITY, MS 64108

          *DOUGLAS MOORE*
          *KELLY E. BRILLEAUX*
          IRWIN FRITCHIE URQUHART & MOORE
          400 POYDRAS STREET
          SUITE 2700
          NEW ORLEANS, LA 70130

          *JON STRONGMAN*
          SHOOK, HARDY & BACON
          1155 F STREET NW, SUITE 200
          WASHINGTON, DC  20004

FOR HOSPIRA, INC., HOSPIRA WORLDWIDE, LLC,
FORMERLY DOING BUSINESS AS HOSPIRA WORLDWIDE, INC.,
AND PFIZER, INC.:

          *JOHN F. OLINDE*
          CHAFFE MCCALL
          1100 POYDRAS STREET
          SUITE 2300
          NEW ORLEANS, LA 70163

FOR PFIZER, INC., AND HOSPIRA WORLDWIDE, LLC:

          *MARK S. CHEFFO*
          QUINN EMANUEL URQUHART & SULLIVAN
          51 MADISON AVENUE, 22ND FLOOR
          NEW YORK, NY 10010

FOR SANDOZ, A NOVARTIS DIVISION:

          *NICHOLAS INSOGNA*
          GREENBERG TRAURIG
          3333 PIEDMONT ROAD NE
          SUITE 2500
          ATLANTA, GA 30305

APPEARANCES CONTINUED

————OFFICIAL TRANSCRIPT————

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

FOR SANDOZ, A NOVARTIS DIVISION:

                *DEBORAH C. ROUEN*
                ADAMS & REESE
                701 POYDRAS STREET
                SUITE 4500
                NEW ORLEANS, LA 70139

FOR ACTAVIS PHARMA, INC.:

                *MICHAEL J. SUFFERN*
                ULMER & BERNE
                600 VINE STREET
                SUITE 2800
                CINCINNATI, OH 45202

FOR ACCORD HEALTHCARE, INC.:

                *BRENDA A. SWEET*
                TUCKER ELLIS
                950 MAIN AVENUE
                SUITE 1100
                CLEVELAND, OH 44113

FOR SUN PHARMACEUTICAL:

                GEOFFREY M. COAN
                HINSHAW & CULBERTSON, LLP
                28 STATE STREET
                FLOOR 24
                BOSTON, MA 02109

PARTICIPATING VIA PHONE:

                KRISTIE FISCHER
                SARAH DOLES
                AMY GABRIEL
                DONALD GREEN
                CANDICE MCNABB
                BRIA HANLON
                LOWELL FINSON
                CHARLES ORR
                JENNIFER DOMER
                DANAE BENTON
                CHARLOTTE GULEWICZ
                GORDON KESSLER

—OFFICIAL TRANSCRIPT—

```
Official Court Reporter:      Nichelle N. Drake, RPR, CRR
                              500 Poydras Street, B-275
                              New Orleans, Louisiana 70130
                              (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

OFFICIAL TRANSCRIPT

**1**          **P R O C E E D I N G S**

11:08:58AM **2**          (Call to order of the court.)

11:08:58AM **3**          MR. RATLIFF:  Good morning, Your Honor, Harley

11:09:00AM **4**   Ratliff on behalf of sanofi.

11:09:01AM **5**          You know, we talk about this litigation being an

11:09:06AM **6**   exceptionally complex litigation and it being a complex MDL

11:09:10AM **7**   with complex procedures.  But when you look at the individual

11:09:12AM **8**   cases, when you boil down each of the individual cases like

11:09:15AM **9**   Mrs. Mills' case, what you'll find is they're actually very

11:09:19AM **10**  simple, very straightforward failure-to-warn cases.  That's

11:09:22AM **11**  what these individual cases are about.

11:09:25AM **12**         And for a plaintiff to prove up a failure-to-warn

11:09:28AM **13**  case, they've got to prove up proximate cause, meaning they

11:09:31AM **14**  must show "but for" the alleged inadequate warning, the

11:09:35AM **15**  plaintiff's injury would not have occurred.  So to put it

11:09:38AM **16**  more specifically in this context, "but for" the alleged

11:09:42AM **17**  inadequate warning about permanent hair loss, Ms. Mills'

11:09:48AM **18**  permanent hair loss injury would not have occurred.

11:09:50AM **19**         Now, in a normal failure-to-warn case, in a consumer

11:09:55AM **20**  product case, the duty runs from the manufacturer to the end

11:09:58AM **21**  user.  This is not one of those types of cases.  This is a

11:10:01AM **22**  prescription pharmaceutical product.  It is a chemotherapy

11:10:05AM **23**  drug prescribed by oncologists, administered by medical

11:10:05AM **24**  professionals.

11:10:09AM **25**         What that means, that in Georgia, like almost every

————OFFICIAL TRANSCRIPT————

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | |
|---|---|
| 11:10:12AM 1 | state in the union, the learned-intermediary doctrine |
| 11:10:15AM 2 | applies, meaning the manufacturer's duty runs to the |
| 11:10:18AM 3 | learned-intermediary, the prescriber, and not to end user. |
| 11:10:22AM 4 | It's the effect on the prescriber, not the effect on the end |
| 11:10:26AM 5 | user, the rationale, of course, being, the doctor is in the |
| 11:10:29AM 6 | best position to weigh the risks, the benefits, and decide |
| 11:10:33AM 7 | what medication is best to treat the disease of their |
| 11:10:37AM 8 | particular patients. |
| 11:10:38AM 9 | THE COURT:  This is a question I have about this |
| 11:10:41AM 10 | argument.  I read every page of the doctor's deposition very |
| 11:10:48AM 11 | carefully, and I know -- and she clearly said, "My |
| 11:10:54AM 12 | recommendation would have been this regime under any |
| 11:11:01AM 13 | circumstances, even knowing the potential of permanent hair |
| 11:11:04AM 14 | loss."  Are you telling me that her opinion is the only one |
| 11:11:08AM 15 | that matters? |
| 11:11:09AM 16 | Because what she also says is, "I would have told my |
| 11:11:12AM 17 | patient and I would have followed the advice of" -- "I would |
| 11:11:18AM 18 | have required informed consent from my patient.  If my |
| 11:11:21AM 19 | patient said, no -- |
| 11:11:23AM 20 | MR. RATLIFF:  So, Your Honor -- |
| 11:11:24AM 21 | THE COURT:  So, to me, that's the crux of this. |
| 11:11:27AM 22 | And I know whether or not you're going to -- to |
| 11:11:31AM 23 | prescribe Prozac, the -- you know, in the *Porter* case, it |
| 11:11:33AM 24 | doesn't even look like he told Mr. Porter that there's a risk |
| 11:11:37AM 25 | of suicide in this because he didn't think he was at risk. |

OFFICIAL TRANSCRIPT

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:11:40AM | 1 | But in this case, she said, "I would have told her." |
| 11:11:42AM | 2 | MR. RATLIFF:  You're right, Your Honor. |
| 11:11:44AM | 3 | THE COURT:  So tell me how -- |
| 11:11:46AM | 4 | MR. RATLIFF:  Exactly. |
| 11:11:47AM | 5 | So I think what you're talking about is -- well, one, |
| 11:11:49AM | 6 | it is -- I think for the learned-intermediary the first step |
| 11:11:56AM | 7 | is, what is the opinion of the doctor, what would the doctor |
| 11:11:59AM | 8 | have done. |
| 11:11:59AM | 9 | THE COURT:  Right. |
| 11:12:00AM | 10 | MR. RATLIFF:  It would not have changed Dr. Shah's -- |
| 11:12:00AM | 11 | THE COURT:  She made it very clear. |
| 11:12:00AM | 12 | MR. RATLIFF:  -- prescribing opinion. |
| 11:12:05AM | 13 | I think what plaintiffs have tried to do is sort of |
| 11:12:05AM | 14 | turn the learned-intermediary doctrine upside down or inside |
| 11:12:10AM | 15 | out and shift that focus, not from the doctor, but to the |
| 11:12:13AM | 16 | patient and the patient's decision, turning it from a |
| 11:12:19AM | 17 | learned-intermediary analysis to an informed-consent |
| 11:12:21AM | 18 | analysis. |
| 11:12:21AM | 19 | And I agree with you.  That is what her testimony is. |
| 11:12:24AM | 20 | She said, "If I had been told about this, I presume I would |
| 11:12:27AM | 21 | have told the patient." |
| 11:12:28AM | 22 | Here is, I think, the problem with that and where |
| 11:12:32AM | 23 | that takes us on this sort of informed-consent type of |
| 11:12:38AM | 24 | fantasy land.  Because what it does is, it assumes -- well, |
| 11:12:42AM | 25 | there's a lot of unsupported assumptions out there, which is, |

—OFFICIAL TRANSCRIPT—

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:12:44AM | 1 | one, that there was a viable alternative chemotherapy that |
| 11:12:49AM | 2 | Ms. Mills could have taken, that there was an alternative |
| 11:12:52AM | 3 | chemotherapy that was as safe as the Taxotere one that she |
| 11:12:58AM | 4 | took, that there was an alternative chemotherapy out there |
| 11:13:02AM | 5 | that she could have taken that was as effective as the |
| 11:13:06AM | 6 | Taxotere regimen that she would have taken, and that Dr. Shah |
| 11:13:13AM | 7 | would have been willing to prescribe a less safe, a less |
| 11:13:16AM | 8 | effective chemotherapy to Ms. Mills. |
| 11:13:18AM | 9 | THE COURT:  But does the fact that her course of -- I |
| 11:13:23AM | 10 | know I'm messing up your slides. |
| 11:13:26AM | 11 | Does the fact that her course of conduct would have |
| 11:13:28AM | 12 | changed, which is, I would have told you this, I would have |
| 11:13:31AM | 13 | had -- you know, to me, when she says, "I would have required |
| 11:13:36AM | 14 | -- you know, I would have told you, and if you told me that |
| 11:13:38AM | 15 | was not an option" -- she says, "look, I would have marked my |
| 11:13:44AM | 16 | file all over, that this is against my best -- my |
| 11:13:49AM | 17 | recommendation." |
| 11:13:49AM | 18 | But are you telling me that learned-intermediary just |
| 11:13:55AM | 19 | completely takes the patient out of the picture?  Because it |
| 11:13:58AM | 20 | sounds to me that that's what you're saying. |
| 11:14:00AM | 21 | MR. RATLIFF:  That's actually not what I'm saying.  I |
| 11:14:02AM | 22 | think you have to deal with it on a case-by-case basis. |
| 11:14:05AM | 23 | So, for example, one of the cases they talk about was |
| 11:14:08AM | 24 | -- I think the plaintiff talks about in their opposition was |
| 11:14:10AM | 25 | the In Re: *Aredia* and *Zometa* case where the court held that |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

11:14:16AM  1    the doctor said she would have given a different warning, she

11:14:19AM  2    still would have prescribed the product, and, therefore, that

11:14:22AM  3    changed the course of conduct.

11:14:23AM  4        The difference though, Your Honor, in that particular

11:14:25AM  5    case, was that the change in the course of conduct, that she

11:14:29AM  6    would have inquired as to whether there were dental

11:14:32AM  7    procedures that were going on with that patient, which would

11:14:34AM  8    have then been the marker, she would have been more likely to

11:14:40AM  9    have the side effect of the drug in question.  But, here, if

11:14:44AM  10   you were to deny this motion, any plaintiff could come in

11:14:47AM  11   and, say, "Well, I would have just done something different."

11:14:49AM  12   And that would have totally undermined the rest of the

11:14:53AM  13   learned-intermediary doctrine because each one of these

11:14:55AM  14   plaintiffs would come back -- it would be very easy for a

11:14:58AM  15   plaintiff to come back 10 years later with hindsight and say,

11:15:03AM  16   "Well, ten years ago when I was facing cancer and I was

11:15:07AM  17   scared to death and all I wanted to do was survive, well, if

11:15:07AM  18   I had been told this, I would have changed my entire course

11:15:07AM  19   of action."

11:15:11AM  20       This isn't like prescribing an anti-cholesterol drug

11:15:14AM  21   or a prescription seasonal allergy medication.  This is

11:15:20AM  22   talking about picking what is the preferred best chemotherapy

11:15:25AM  23   regimen that's going to give this patient the best chance at

11:15:29AM  24   survival.  And that's what Dr. Shah testified that she did.

11:15:30AM  25       She said, "This regimen, this Taxotere regimen, this

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:15:32AM | 1 | is the preferred one." |
| 11:15:35AM | 2 | THE COURT:  So I give you that.  And what I would |
| 11:15:37AM | 3 | have done in a doctor's office -- I kind of have an idea of |
| 11:15:44AM | 4 | what I would do.  But is this not a fact for the jury to |
| 11:15:49AM | 5 | determine, that what -- what this plaintiff -- and for them |
| 11:15:53AM | 6 | to test it? |
| 11:15:54AM | 7 | Because what she says is, "I would have told her." |
| 11:15:54AM | 8 | MR. RATLIFF:  Right. |
| 11:15:57AM | 9 | THE COURT:  And then the plaintiff says, "And I would |
| 11:16:00AM | 10 | not have followed that course of conduct." |
| 11:16:03AM | 11 | MR. RATLIFF:  Well, I think you also raise another |
| 11:16:05AM | 12 | interesting point, Your Honor, because in the plaintiff's |
| 11:16:08AM | 13 | opposition, what they say is, there's a declaration from |
| 11:16:11AM | 14 | Ms. Mills.  And what does Ms. Mills say? |
| 11:16:14AM | 15 | She says, "If I had been told this, I would have |
| 11:16:17AM | 16 | never taken Taxotere.  I would have sought a second opinion. |
| 11:16:21AM | 17 | I would have taken another course of treatment."  I guess |
| 11:16:27AM | 18 | assuming that all treatments are equal in terms of their |
| 11:16:27AM | 19 | safety and efficacy, "but for" this one issue of permanent |
| 11:16:31AM | 20 | hair loss.  That's what's in her declaration after the close |
| 11:16:34AM | 21 | -- after the close of all of the discovery and after her |
| 11:16:35AM | 22 | deposition. |
| 11:16:36AM | 23 | I'm going to go forward -- |
| 11:16:36AM | 24 | THE COURT:  Good.  Yeah. |
| 11:16:39AM | 25 | MR. RATLIFF:  -- almost -- |

————OFFICIAL TRANSCRIPT————

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:16:39AM | 1 | THE COURT:  Because I read all of this. |
| 11:16:39AM | 2 | MR. RATLIFF:  -- to the very end. |
| 11:16:41AM | 3 | Well, now you see, this is why my associate told me |
| 11:16:45AM | 4 | not to do it with the slide. |
| 11:16:47AM | 5 | I hear her laughing. |
| 11:16:57AM | 6 | THE COURT:  He did it again, huh? |
| 11:17:00AM | 7 | MR. RATLIFF:  There we go. |
| 11:17:00AM | 8 | THE COURT:  Okay. |
| 11:17:02AM | 9 | MR. RATLIFF:  So you read her declaration.  It's very |
| 11:17:04AM | 10 | clear, crystal clear.  What it says is, "If I had been told |
| 11:17:06AM | 11 | about permanent hair loss, I would have never taken Taxotere. |
| 11:17:10AM | 12 | I would have taken an alternative treatment.  This changed my |
| 11:17:13AM | 13 | life.  I would have never suffered this injury." |
| 11:17:16AM | 14 | Your Honor, when we deposed Ms. Mills, that was not |
| 11:17:18AM | 15 | her testimony.  Her testimony was:  Well, if you had known |
| 11:17:21AM | 16 | that there was a small percentage chance of permanent hair |
| 11:17:24AM | 17 | loss with taking Taxotere, would you have done something |
| 11:17:28AM | 18 | different? |
| 11:17:28AM | 19 | Her testimony was:  I don't know. |
| 11:17:29AM | 20 | Are you saying 100 percent you would not have taken |
| 11:17:32AM | 21 | Taxotere? |
| 11:17:32AM | 22 | I don't know what I would have done.  I don't know |
| 11:17:34AM | 23 | what I would have said.  I don't know what I would have done. |
| 11:17:37AM | 24 | That alone tells you that what she is saying, that my |
| 11:17:42AM | 25 | course of action would have drastically changed in a |

—OFFICIAL TRANSCRIPT—

| | | |
|---|---|---|
| 11:17:48AM | 1 | declaration appended to an opposition for a summary judgment |
| 11:17:52AM | 2 | motion, this is what Ms. Mills would have done, not what is |
| 11:17:56AM | 3 | put into the pleadings as part of an opposition. |
| 11:17:59AM | 4 | And, in fact, the Fifth Circuit has said, if you have |
| 11:18:01AM | 5 | conflicting things, then the declaration -- the declaration |
| 11:18:06AM | 6 | should be disregarded absent some explanation for the |
| 11:18:10AM | 7 | difference. |
| 11:18:10AM | 8 | So, Your Honor, what I would say is, this concept |
| 11:18:14AM | 9 | that has been interjected -- and I understand why you're |
| 11:18:18AM | 10 | asking, "What about the patient's choice?"  Because the |
| 11:18:21AM | 11 | patient does get a choice.  But the patient doesn't get to |
| 11:18:24AM | 12 | come in after the fact and create sort of a slew of endless |
| 11:18:28AM | 13 | hypotheticals and assumptions that all kind of balance on |
| 11:18:31AM | 14 | each one of them just to get to a single point, let's just |
| 11:18:34AM | 15 | say, "I would have taken a different chemotherapy medication |
| 11:18:37AM | 16 | even though I knew I was facing a high-risk triple-positive |
| 11:18:43AM | 17 | very invasive type of breast cancer." |
| 11:18:46AM | 18 | You know, I think we have to think about also the |
| 11:18:49AM | 19 | context, about what type of medication we're talking about, |
| 11:18:50AM | 20 | and what type of decisions are being made by that doctor and |
| 11:18:53AM | 21 | what type of decisions realistically would be made by the |
| 11:18:58AM | 22 | plaintiff.  And the only thing we have from her saying that |
| 11:19:01AM | 23 | she would have changed her course of action is a declaration |
| 11:19:05AM | 24 | submitted after the fact. |
| 11:19:05AM | 25 | And so what -- I guess the other part of this, Your |

| | | |
|---|---|---|
| 11:19:09AM | 1 | Honor, is, what Ms. Mills has not done is not provided any |
| 11:19:14AM | 2 | evidence that there was a medically acceptable, viable, safe, |
| 11:19:20AM | 3 | and effective cancer treatment without a risk of hair loss in |
| 11:19:26AM | 4 | 2014.  The only one that they have proffered is that there |
| 11:19:31AM | 5 | was -- is that Dr. Shah now -- that Dr. Shah now does |
| 11:19:33AM | 6 | recommend or does offer her patients a non-Taxotere regimen. |
| 11:19:39AM | 7 | She offers that today.  But what she said was, she would not |
| 11:19:43AM | 8 | have offered that then because, one, it wasn't available, |
| 11:19:45AM | 9 | and, two, it was not the standard of care. |
| 11:19:47AM | 10 | So, you know, when you get back to Dr. Shah or -- |
| 11:19:50AM | 11 | Dr. Shah recommended TCH, Taxotere, carboplatin, Herceptin, |
| 11:19:56AM | 12 | because it was the standard of care.  She rejected the other |
| 11:20:01AM | 13 | alternatives because of safety reasons, one, because of heart |
| 11:20:04AM | 14 | failure, two, because of efficacy, because it was an old, |
| 11:20:11AM | 15 | outdated chemotherapy regimen.  Even with knowing a different |
| 11:20:16AM | 16 | warning, she still would have recommended the exact same TCH |
| 11:20:20AM | 17 | regimen in 2014, even knowing now what she was told at the |
| 11:20:22AM | 18 | deposition by the plaintiff's attorney. |
| 11:20:26AM | 19 | And what she testified to, Your Honor, is, if |
| 11:20:27AM | 20 | Ms. Mills walked into her office today with the same type of |
| 11:20:31AM | 21 | high-risk triple-positive breast cancer, what she would |
| 11:20:38AM | 22 | recommend to Ms. Mills would be the Taxotere, carboplatin, |
| 11:20:44AM | 23 | Herceptin chemotherapy regimen. |
| 11:20:44AM | 24 | And so I think the question isn't, you know, whether |
| 11:20:45AM | 25 | the label is adequate or inadequate.  It's would Dr. -- Dr. |

-OFFICIAL TRANSCRIPT-

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:20:49AM | 1 | Shah's course of conduct, would she have -- if she had a |
| 11:20:52AM | 2 | different warning, would she have prescribed a different |
| 11:20:55AM | 3 | product.  And the answer to that is clearly, no, Your Honor. |
| 11:20:57AM | 4 | It's no.  It was no in 2014, and it's no in hindsight and |
| 11:21:00AM | 5 | it's no now. |
| 11:21:00AM | 6 | So, Your Honor, I am happy to walk through the rest |
| 11:21:03AM | 7 | of these slides. |
| 11:21:04AM | 8 | THE COURT:  You don't need to walk through the |
| 11:21:06AM | 9 | slides.  I mean, I've really read everything.  You know, I |
| 11:21:10AM | 10 | kind of got the slides. |
| 11:21:11AM | 11 | What is bothersome to me is -- I understand that her |
| 11:21:19AM | 12 | recommendation would never have deviated. |
| 11:21:19AM | 13 | MR. RATLIFF:  Right. |
| 11:21:23AM | 14 | THE COURT:  But she did say, "I would tell it and |
| 11:21:28AM | 15 | then I require informed consent from my -- from my patients." |
| 11:21:34AM | 16 | And if my patient chose something else -- she did make -- she |
| 11:21:38AM | 17 | said, "I would -- it would be all over my file because I |
| 11:21:41AM | 18 | would be very concerned about her not following advice." |
| 11:21:46AM | 19 | But, I mean -- |
| 11:21:46AM | 20 | MR. RATLIFF:  She said -- I think she said, "I would |
| 11:21:47AM | 21 | strongly recommend any other" -- |
| 11:21:49AM | 22 | THE COURT:  Without question.  She was clear.  But I |
| 11:21:53AM | 23 | don't know if necessarily we can factor the patient out of |
| 11:22:00AM | 24 | that equation. |
| 11:22:03AM | 25 | MR. RATLIFF:  And, you know, Your Honor -- |

————OFFICIAL TRANSCRIPT————

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:22:04AM | 1 | THE COURT:  And that's -- and that's -- and I feel |
| 11:22:07AM | 2 | it's to some degree that's what you're asking me to do, |
| 11:22:11AM | 3 | because all of us have had -- you know, doctors say, "I |
| 11:22:14AM | 4 | recommend this."  And it's like, "I'm not ready to do that." |
| 11:22:17AM | 5 | Maybe we should do something else after you have had an |
| 11:22:21AM | 6 | opportunity to weigh the risk that the doctor advises you. |
| 11:22:24AM | 7 | MR. RATLIFF:  Yeah.  And, I mean, Your Honor, I think |
| 11:22:28AM | 8 | you're right in terms of the idea that there's some component |
| 11:22:31AM | 9 | of that into that learned-intermediary doctrine. |
| 11:22:32AM | 10 | I guess as I sort of articulated earlier, the concern |
| 11:22:36AM | 11 | to me is that you can walk in now and just say, "I would have |
| 11:22:39AM | 12 | done something different" and without proffering -- or |
| 11:22:43AM | 13 | putting forth any evidence at the time you would have done |
| 11:22:46AM | 14 | something different, so you told -- you know, you told the |
| 11:22:48AM | 15 | doctor -- |
| 11:22:48AM | 16 | THE COURT:  If you weren't told that, I don't |
| 11:22:51AM | 17 | think -- my guess is the percentage of people that begin |
| 11:22:58AM | 18 | chemotherapy and don't understand that there would be a great |
| 11:23:07AM | 19 | likelihood of temporary hair loss, I think that's a zilch. |
| 11:23:14AM | 20 | And I just can't imagine -- I think it's so well-known that |
| 11:23:17AM | 21 | people anticipate a temporary.  But for me to say, how could |
| 11:23:21AM | 22 | you say at that time if I had known when you -- who would you |
| 11:23:24AM | 23 | have told that -- a risk that you didn't know existed -- |
| 11:23:29AM | 24 | MR. RATLIFF:  See, Your Honor, I -- that assumes -- |
| 11:23:31AM | 25 | that assumes into evidence, that assumes that the other |

OFFICIAL TRANSCRIPT

Page 16

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:23:34AM | 1 | chemotherapy options that were available to her had the exact |
| 11:23:38AM | 2 | same safety profile, "but for" this -- |
| 11:23:42AM | 3 | THE COURT:  The hair loss, right. |
| 11:23:44AM | 4 | MR. RATLIFF:  -- theoretical hair loss.  And there is |
| 11:23:47AM | 5 | no evidence that that is the case, Your Honor.  And this is |
| 11:23:49AM | 6 | not -- it is not -- I guess the way I look at, Your Honor, |
| 11:23:51AM | 7 | is, I don't walk in and the doctor says, "Well, do you want |
| 11:23:53AM | 8 | to be on antibiotics or do you not want to be on |
| 11:23:57AM | 9 | antibiotics?"  That's not what we're talking about.  We're |
| 11:24:00AM | 10 | talking about chemotherapy regimens that have -- each one of |
| 11:24:04AM | 11 | them have distinct and individualized risk profiles that are |
| 11:24:07AM | 12 | often patient specific. |
| 11:24:09AM | 13 | THE COURT:  Oh, I -- I understand that.  I just -- |
| 11:24:17AM | 14 | but you're at summary judgment stage, and it seems that it |
| 11:24:21AM | 15 | requires me to make -- but I'm listening.  And maybe I need |
| 11:24:27AM | 16 | to carefully go through her deposition again. |
| 11:24:31AM | 17 | MR. RATLIFF:  Well -- and I think, Your Honor -- I |
| 11:24:32AM | 18 | mean, one of the things that Dr. Shah did say -- and this is |
| 11:24:35AM | 19 | what's on the slide right now -- is she makes no guarantees |
| 11:24:39AM | 20 | or promises about hair loss.  So, yeah, maybe she will talk |
| 11:24:41AM | 21 | about that your hair will come back or that it will be |
| 11:24:45AM | 22 | temporary.  So maybe she would have communicated -- I think |
| 11:24:48AM | 23 | her testimony -- since you've read the whole deposition, I've |
| 11:24:50AM | 24 | now read the whole deposition -- is that she presumes she |
| 11:24:53AM | 25 | would have told them or she says, "I assume I would have told |

OFFICIAL TRANSCRIPT

| | | |
|---|---|---|
| 11:24:56AM | 1 | my patients about this." |
| 11:24:57AM | 2 | But she also testified that she doesn't make |
| 11:24:59AM | 3 | guarantees about hair loss, she doesn't make guarantees it's |
| 11:25:02AM | 4 | going to grow back.  She sees patients every single day whose |
| 11:25:07AM | 5 | hair comes back -- not every single day.  She has seen |
| 11:25:10AM | 6 | patients whose hair comes back thinner, markedly thinner; |
| 11:25:13AM | 7 | hair that comes back in different texture, and in rare |
| 11:25:15AM | 8 | occasions, she has seen patients who have lost 70 to |
| 11:25:18AM | 9 | 80 percent of their hair that did not come back.  And so I |
| 11:25:21AM | 10 | think the idea that she would have to give this particular |
| 11:25:23AM | 11 | warning would change the course of treatment, without some |
| 11:25:27AM | 12 | type of evidence from the plaintiffs that there was a viable |
| 11:25:30AM | 13 | alternative that could have been used without the risk of |
| 11:25:33AM | 14 | hair loss, I think that is, to me, the missing component of |
| 11:25:37AM | 15 | this, Your Honor. |
| 11:25:43AM | 16 | Thank you, Your Honor. |
| 11:25:44AM | 17 | THE COURT:  Thank you. |
| 11:25:51AM | 18 | MS. STEVENS:  Good morning, Your Honor. |
| 11:26:04AM | 19 | May it please the Court, Lindsay Stevens on behalf of |
| 11:26:12AM | 20 | plaintiffs Jacqueline and Victor Mills. |
| 11:26:14AM | 21 | Your Honor, I am more than happy to address any |
| 11:26:15AM | 22 | questions that the Court may have after hearing what |
| 11:26:19AM | 23 | Mr. Ratliff had to say, but with the Court's permission, I |
| 11:26:21AM | 24 | would just like to take a few minutes to lay out some points |
| 11:26:24AM | 25 | to guide our discussion. |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:26:24AM | 1 | First, the controlling Eleventh Circuit court law on |
| 11:26:27AM | 2 | this issue is clearly set forth in the appellate court |
| 11:26:31AM | 3 | decision of *Toole versus McClintock* and states that when a |
| 11:26:35AM | 4 | prescribing doctor indicates that they still would have |
| 11:26:37AM | 5 | prescribed the drug, even if they had been adequately warned, |
| 11:26:40AM | 6 | but would have changed their counselling practice or warned |
| 11:26:44AM | 7 | the patient differently, there is a triable issue of material |
| 11:26:49AM | 8 | fact as to proximate causation. |
| 11:26:51AM | 9 | Second, the defendants improperly relied solely on an |
| 11:26:55AM | 10 | unreported lower court decision, *Porter versus Eli Lilly*, |
| 11:26:59AM | 11 | whose facts are distinguishable to the present case. |
| 11:27:01AM | 12 | Finally, Your Honor, I will discuss that when the law |
| 11:27:04AM | 13 | is applied to the facts of Ms. Mills' case -- |
| 11:27:06AM | 14 | THE COURT:  Wasn't there a viable alternative? |
| 11:27:12AM | 15 | MS. STEVENS:  Your Honor, in -- I did read the entire |
| 11:27:14AM | 16 | deposition transcript and in that transcript, Dr. Shah was -- |
| 11:27:16AM | 17 | THE COURT:  I didn't think it -- it really wasn't |
| 11:27:17AM | 18 | clear.  There was one that was dangerous and she said that -- |
| 11:27:21AM | 19 | MS. STEVENS:  If you are a cardiac risk and there |
| 11:27:24AM | 20 | were no indications in any of Ms. Mills' records that she was |
| 11:27:28AM | 21 | a cardiac risk. |
| 11:27:30AM | 22 | My co-counsel, John Gomez, did confront Dr. Shah with |
| 11:27:35AM | 23 | three different alternate treatments that Ms. -- Dr. Shah |
| 11:27:38AM | 24 | conceded were all within this -- medically acceptable under |
| 11:27:42AM | 25 | the NCCN guidelines. |

————OFFICIAL TRANSCRIPT————

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | |
|---|---|
| 11:27:44AM 1 | And, Your Honor, we agree with what you were alluding |
| 11:27:48AM 2 | to earlier that this is a question of fact that will be |
| 11:27:51AM 3 | discussed at length by plaintiffs' experts at trial. |
| 11:27:55AM 4 | So if I may. |
| 11:27:57AM 5 | THE COURT:  Yes, proceed. |
| 11:27:59AM 6 | But what do I do with this declaration?  And I need |
| 11:28:04AM 7 | to very frankly go through Ms. Mills' depositions again |
| 11:28:08AM 8 | because I have to tell you, I focused a great deal on her |
| 11:28:13AM 9 | declaration. |
| 11:28:13AM 10 | MS. STEVENS:  Sure. |
| 11:28:14AM 11 | THE COURT:  But if there is an inconsistency, you |
| 11:28:19AM 12 | understand that that's problematic.  And what does Ms. Mills |
| 11:28:22AM 13 | say in her deposition? |
| 11:28:24AM 14 | MS. STEVENS:  Your Honor, as defense counsel stated, |
| 11:28:27AM 15 | when she was presented with that issue, she did say, "I don't |
| 11:28:29AM 16 | know.  I don't know what I would have done."  But I think |
| 11:28:31AM 17 | what is important to do is to look to Ms. Mills' other |
| 11:28:33AM 18 | conduct, the other action that she took throughout her |
| 11:28:38AM 19 | medical treatment. |
| 11:28:38AM 20 | This -- I represent over 100 women in this |
| 11:28:42AM 21 | litigation, and I can tell you that this plaintiff in |
| 11:28:45AM 22 | particular was extremely actively involved in her healthcare |
| 11:28:47AM 23 | -- |
| 11:28:47AM 24 | THE COURT:  I know she chose the lumpectomy versus |
| 11:28:50AM 25 | the mastectomy. |

—OFFICIAL TRANSCRIPT—

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:28:53AM | 1 | MS. STEVENS:  Right.  She declined the last cycle of |
| 11:28:56AM | 2 | her chemotherapy treatment, even though Dr. Shah had |
| 11:29:00AM | 3 | recommended that, because she couldn't deal with the side |
| 11:29:03AM | 4 | effects.  She was concerned with her physical appearance and |
| 11:29:06AM | 5 | didn't want to appear one-sided, which is why she elected the |
| 11:29:06AM | 6 | lumpectomy, the more conservative lumpectomy, over |
| 11:29:12AM | 7 | mastectomy.  We also know from her deposition testimony that |
| 11:29:14AM | 8 | the only question she recalls asking Dr. Shah was whether she |
| 11:29:18AM | 9 | was going to lose her hair when she was initially going |
| 11:29:22AM | 10 | through her chemo consult.  And that was just at that time to |
| 11:29:26AM | 11 | her a temporary consideration. |
| 11:29:28AM | 12 | She knew that -- other people she knew that had gone |
| 11:29:33AM | 13 | through chemotherapy had lost their hair but had come back. |
| 11:29:36AM | 14 | And that's discussed at length in her deposition, Your Honor. |
| 11:29:39AM | 15 | So in their motion for summary judgment and their |
| 11:29:45AM | 16 | reply, defendants are silent on the Eleventh Circuit law set |
| 11:29:48AM | 17 | forth in the *Toole* case and centered their argument instead |
| 11:29:51AM | 18 | on *Porter versus Eli Lilly*, a non-binding case unreported out |
| 11:29:55AM | 19 | of the Northern District of Georgia.  Your Honor, if they had |
| 11:29:58AM | 20 | a decision that was on point and binding on this Court, they |
| 11:30:01AM | 21 | would have led with it.  We do have a controlling appellate |
| 11:30:06AM | 22 | decision on point, the *Toole* case, which I'll discuss in more |
| 11:30:11AM | 23 | detail. |
| 11:30:11AM | 24 | It's not surprising that the defendants didn't |
| 11:30:13AM | 25 | address the *Toole* case, a case that directly addresses the |

-OFFICIAL TRANSCRIPT-

| | |
|---|---|
| 11:30:16AM | 1 |
| 11:30:20AM | 2 |
| 11:30:23AM | 3 |
| 11:30:26AM | 4 |
| 11:30:29AM | 5 |
| 11:30:33AM | 6 |
| 11:30:36AM | 7 |
| 11:30:40AM | 8 |
| 11:30:43AM | 9 |
| 11:30:47AM | 10 |
| 11:30:50AM | 11 |
| 11:30:54AM | 12 |
| 11:30:57AM | 13 |
| 11:30:58AM | 14 |
| 11:31:01AM | 15 |
| 11:31:04AM | 16 |
| 11:31:08AM | 17 |
| 11:31:11AM | 18 |
| 11:31:13AM | 19 |
| 11:31:16AM | 20 |
| 11:31:19AM | 21 |
| 11:31:22AM | 22 |
| 11:31:26AM | 23 |
| 11:31:29AM | 24 |
| 11:31:32AM | 25 |

issue before the Court, the reason likely being that it's dispositive on this issue.  However, even if the Court wants to consider *Porter's* holding, I submit to Your Honor that *Porter* is not inconsistent with plaintiff's statement of the law as to proximate causation under learned-intermediary.

In *Porter*, the prescribing doctor unequivocally testified that even had he known of the suggested warning, he would not have treated his patient in a different manner and would not have changed his counselling of the patient in the face of a stronger warning.  In *Porter*, summary judgment was granted because the prescribing doctor testified he still would have prescribed the drug and would not have issued an additional warning to his patient.

Now, Your Honor, if that were the case here and Dr. Shah testified that she would not have changed her warning to Ms. Mills about the risk of permanent hair loss, then I understand that the Court may be inclined to grant summary judgment because how could my client be given the same set of facts and make a different decision.  But this is not the case.  Dr. Shah testified in her deposition that she would have changed her warning to Ms. Mills, that she would have changed her risk discussions with Ms. Mills because she understands that hair loss is a big deal to some patients.  I submit that this is the kind of change in the prescriber's course of conduct to which the *Toole* case and its progeny

————OFFICIAL TRANSCRIPT————

| | | |
|---|---|---|
| 11:31:36AM | 1 | refer. |
| 11:31:37AM | 2 | In *Toole*, proximate cause was not found to be |
| 11:31:40AM | 3 | suffered by the learned-intermediary doctrine because the |
| 11:31:43AM | 4 | jury heard evidence from which it could reasonably conclude |
| 11:31:47AM | 5 | that a different warning would have caused the patient |
| 11:31:50AM | 6 | (verbatim) to warn the plaintiff of the product inherent |
| 11:31:52AM | 7 | risks. |
| 11:31:53AM | 8 | Your Honor, it isn't our preference to cite to lower |
| 11:31:56AM | 9 | court decisions, but since defendants in their reply and |
| 11:31:59AM | 10 | argument say that plaintiffs are misstating the law on the |
| 11:32:01AM | 11 | issue or trying to create new law, I brought copies of five |
| 11:32:04AM | 12 | lower court decisions in the Eleventh Circuit that interpret |
| 11:32:07AM | 13 | *Toole* in this manner and provide some guidance. |
| 11:32:10AM | 14 | For example, in *Fields versus Eli Lilly*, the Middle |
| 11:32:16AM | 15 | District of Alabama, the court held that it was bound by |
| 11:32:19AM | 16 | *Toole*, stating that under the learned -- under |
| 11:32:23AM | 17 | learned-intermediary, causation can be demonstrated by |
| 11:32:26AM | 18 | proving that a physician's stronger warning about a side |
| 11:32:30AM | 19 | effect of a drug would inform the patient of the risk and the |
| 11:32:33AM | 20 | warning could result in a different outcome for the patient. |
| 11:32:36AM | 21 | Your Honor, I have four other court decisions from |
| 11:32:40AM | 22 | lower courts that interpret the *Toole* standard in the same |
| 11:32:43AM | 23 | way.  And I can go through them in more detail later. |
| 11:32:45AM | 24 | Okay.  Your Honor, to summarize though, courts in the |
| 11:32:50AM | 25 | Eleventh Circuit do not focus solely on a doctor's decision |

| | | |
|---|---|---|
| 11:32:54AM | 1 | to still prescribe a drug in the face of an adequate warning, |
| 11:32:57AM | 2 | but instead look at whether the doctor would have changed his |
| 11:33:00AM | 3 | or her course of conduct, as he said, including providing |
| 11:33:04AM | 4 | their patient with additional warning. |
| 11:33:05AM | 5 | I submit to you, Your Honor, that Dr. Shah testified |
| 11:33:08AM | 6 | she would have prescribed or she would have provided |
| 11:33:10AM | 7 | Ms. Mills with a warning regarding permanent hair loss had |
| 11:33:14AM | 8 | she received an adequate warning from defendants.  So there |
| 11:33:18AM | 9 | is a triable issue of material fact on this issue. |
| 11:33:22AM | 10 | And we know what effect Dr. Shah's warning would have |
| 11:33:27AM | 11 | had on Ms. Mills.  We don't need to speculate.  She did after |
| 11:33:32AM | 12 | being deposed for the first deposition she's ever |
| 11:33:36AM | 13 | participated in and considering questions that were asked, |
| 11:33:38AM | 14 | she did rectify in her mind that she would have inquired |
| 11:33:43AM | 15 | about other effective alternate treatments and would have |
| 11:33:46AM | 16 | declined docetaxel in favor of an alternate treatment. |
| 11:33:50AM | 17 | THE COURT:  But does it matter, the efficacy of the |
| 11:33:56AM | 18 | alternative treatment? |
| 11:33:58AM | 19 | MS. STEVENS:  Certainly, the efficacy would matter, |
| 11:34:01AM | 20 | but, again, looking back at Ms. Mills, her deposition |
| 11:34:05AM | 21 | testimony states that when she was considering losing her |
| 11:34:09AM | 22 | hair and beating cancer, she didn't think that beating cancer |
| 11:34:12AM | 23 | was necessarily more important than losing her hair.  She |
| 11:34:15AM | 24 | testified that these were both important considerations to |
| 11:34:17AM | 25 | her. |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | |
|---|---|
| 11:34:18AM | **1** |
| 11:34:24AM | **2** |
| 11:34:29AM | **3** |
| 11:34:32AM | **4** |
| 11:34:37AM | **5** |
| 11:34:42AM | **6** |
| 11:34:48AM | **7** |
| 11:34:51AM | **8** |
| 11:34:55AM | **9** |
| 11:34:56AM | **10** |
| 11:34:59AM | **11** |
| 11:35:03AM | **12** |
| 11:35:07AM | **13** |
| 11:35:08AM | **14** |
| 11:35:13AM | **15** |
| 11:35:15AM | **16** |
| 11:35:18AM | **17** |
| 11:35:21AM | **18** |
| 11:35:23AM | **19** |
| 11:35:29AM | **20** |
| 11:35:32AM | **21** |
| 11:35:37AM | **22** |
| 11:35:41AM | **23** |
| 11:35:44AM | **24** |
| 11:35:47AM | **25** |

So she did have a triple-positive form of breast cancer and was HER2-positive, which defendants classify as high risk.  But going through Dr. Shah's deposition testimony, you can clearly see Ms. Mills had Stage I breast cancer.  Dr. Shah classified it as early stage disease.  She had clear margins after lumpectomy.  So maybe she didn't need the strongest, you know, course of treatment that there was out there if she was looking to preserve her quality of life down the line.

Your Honor, defendants are trying to get rid of Ms. Mills' case with an unreported lower court decision.  The *Porter* case, a case where the doctor said he would not have changed his warning to the plaintiff had he been adequately warned, and the case is simply inapplicable to our facts.

Outside of the *Porter* case, the defendants cite to cases with distinguishable facts or not binding -- or are not binding lower authority because they're from lower court decisions from different circuits.

Finally, Your Honor, Dr. Shah's testimony is super clear.  She would have given Ms. Mills an additional warning.  Ms. Mills is equally clear through her sworn declaration that she would have asked about other treatment options and would have declined Taxotere in favor of an alternate treatment.

I submit to Your Honor that the law, the facts, and the evidence, when viewed in a light most favorable to the

─────────OFFICIAL TRANSCRIPT─────────

11:35:50AM   **1**    plaintiff, clearly create a triable issue of material fact

11:35:53AM   **2**    and summary judgment shouldn't be granted.

11:35:56AM   **3**        Thank you, Your Honor.

11:35:57AM   **4**        MR. RATLIFF:  Your Honor, may I address some of those

11:35:59AM   **5**    very briefly?

11:36:01AM   **6**        THE COURT:  Sure.

11:36:03AM   **7**        MR. RATLIFF:  Your Honor, I heard a lot about the

11:36:12AM   **8**    *Toole* case, and I think that actually is a very illustrative

11:36:16AM   **9**    case of why that case is different than the case here as it

11:36:20AM   **10**    relates to the concept of just providing a different warning

11:36:23AM   **11**    being enough to get over the learned-intermediary doctrine.

11:36:26AM   **12**        One of the things Ms. Stevens said was the jury heard

11:36:32AM   **13**    evidence about a different warning and different treatment

11:36:35AM   **14**    options.  We have seen nothing here, any type of evidence

11:36:39AM   **15**    presented to them, that there was a viable, safe, and

11:36:41AM   **16**    effective alternative treatment to treat Ms. Mills' cancer.

11:36:45AM   **17**    That remains missing today.  It remains missing in their

11:36:48AM   **18**    pleadings.  It remains missing from Ms. Stevens' argument.

11:36:52AM   **19**        She said that hair loss was as important as beating

11:36:57AM   **20**    cancer to Ms. Mills.  Take that on its face.

11:37:01AM   **21**        Here's the deposition testimony of Ms. Mills:  Did

11:37:05AM   **22**    you ever tell Dr. Shah that hair loss was more important to

11:37:09AM   **23**    you than the survival -- than survival and beating the breast

11:37:14AM   **24**    cancer?

11:37:14AM   **25**        No, I did not.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:37:15AM | 1 | Did you talk to Dr. Shah about other possible |
| 11:37:19AM | 2 | chemotherapy -- you did not talk to Dr. Shah about other |
| 11:37:21AM | 3 | possible chemotherapy regimens? |
| 11:37:24AM | 4 | Did not. |
| 11:37:24AM | 5 | And so at the time there, at the time she was in the |
| 11:37:28AM | 6 | actual moment, you know, she did not seek a second opinion. |
| 11:37:32AM | 7 | She did not ask about other chemotherapy.  She did not say |
| 11:37:35AM | 8 | that hair loss was more important.  In fact, what Ms. Mills |
| 11:37:39AM | 9 | testified to was that she wanted whatever it would take to |
| 11:37:44AM | 10 | beat cancer. |
| 11:37:45AM | 11 | And so when you get back to the *Toole* case, when we |
| 11:37:46AM | 12 | talk about the difference between -- |
| 11:37:48AM | 13 | THE COURT:  I'm sorry.  I'm just listening.  She |
| 11:37:49AM | 14 | didn't ask those questions, but she wasn't told of the risk |
| 11:37:54AM | 15 | of permanent hair loss, which I think -- |
| 11:37:57AM | 16 | MR. RATLIFF:  I think -- the way I read that |
| 11:37:59AM | 17 | testimony, Dr. Shah's testimony is she would give that |
| 11:38:03AM | 18 | counselling information now, but that was not information she |
| 11:38:07AM | 19 | would give then.  And I think one of the reasons is that |
| 11:38:18AM | 20 | Dr. Shah -- since we've now both read the entire deposition |
| 11:38:22AM | 21 | -- was asked if she had looked at the Taxotere package |
| 11:38:26AM | 22 | insert, the label, where the warning would be, the plaintiffs |
| 11:38:29AM | 23 | say should have been communicated -- |
| 11:38:30AM | 24 | THE COURT:  Was this after the label changed and |
| 11:38:33AM | 25 | referenced permanent hair loss? |

————OFFICIAL TRANSCRIPT————

| | | |
|---|---|---|
| 11:38:34AM | 1 | MR. RATLIFF:  Correct.  She said, "I have not |
| 11:38:37AM | 2 | reviewed a Taxotere label in five years." |
| 11:38:41AM | 3 | And so we're again kind of getting into a bunch of |
| 11:38:44AM | 4 | assumptions that she would have read the label, that she |
| 11:38:46AM | 5 | would have given this warning, that this warning would have |
| 11:38:49AM | 6 | triggered a different result -- |
| 11:38:50AM | 7 | THE COURT:  So it's now that we have to -- you know, |
| 11:38:52AM | 8 | if a doctor says, "I don't read labels," then -- |
| 11:38:54AM | 9 | MR. RATLIFF:  I think -- I think that had something |
| 11:38:56AM | 10 | to be taken into account if we're going to talk about turning |
| 11:39:00AM | 11 | the learned-intermediary, expanding it into a patient |
| 11:39:03AM | 12 | counselling discussion, that if the doctor says, "Well" -- in |
| 11:39:06AM | 13 | a deposition from an attorney -- from the attorney asking a |
| 11:39:08AM | 14 | question, "Well, if you had read this in the label, would you |
| 11:39:12AM | 15 | have provided this information to your patients?" |
| 11:39:14AM | 16 | "I assume so." |
| 11:39:15AM | 17 | But that same doctor also testified, "I don't read a |
| 11:39:20AM | 18 | label and I haven't read it in the last five years." |
| 11:39:22AM | 19 | So it wouldn't have mattered if the information on |
| 11:39:26AM | 20 | permanent alopecia had been in the label in 2014, 2015, 2016, |
| 11:39:30AM | 21 | you know, during the time -- during the key time period when |
| 11:39:33AM | 22 | she was prescribing Taxotere regimen to Ms. Mills. |
| 11:39:38AM | 23 | And I guess the last point I would get back to, Your |
| 11:39:42AM | 24 | Honor, as it relates to the *Toole* case, because it seems to |
| 11:39:45AM | 25 | be a case that they think is very important that, frankly, we |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

11:39:48AM   1   didn't address because we don't think it's all that

11:39:51AM   2   important, which is the difference between the concept of

11:39:53AM   3   alternative choices.  And so here, we've talked about this

11:39:56AM   4   and I won't belabor the point, talking about choosing a

11:40:02AM   5   chemotherapy.  Which one's the best?  And there are different

11:40:05AM   6   chemotherapies for different types of cancers.  It's not a

11:40:07AM   7   simple decision.

11:40:08AM   8        The *Toole* case dealt with a cosmetic surgery, an

11:40:12AM   9   elective cosmetic surgery, a breast augmentation.  And so the

11:40:16AM  10   warning there is, you got two options:  Either you do it or

11:40:19AM  11   you don't do it.  We're not talking about something that is a

11:40:23AM  12   life-saving, life-altering decision as it relates to

11:40:25AM  13   chemotherapy.  So I think you have to look at each one of

11:40:27AM  14   these cases in terms of what was happening in those cases

11:40:30AM  15   versus what is happening in this particular case.

11:40:33AM  16        And, once, again, the last thing that I'll say is,

11:40:35AM  17   the only thing that we know of that says I would have changed

11:40:38AM  18   my course of conduct is a declaration that was submitted with

11:40:41AM  19   her opposition to the summary judgment, which is

11:40:43AM  20   fundamentally different than what she testified when she was

11:40:48AM  21   actually asked in the moment at her deposition.  And so I

11:40:50AM  22   think without that evidence there's nothing to say that she

11:40:52AM  23   would have taken any different course other than the words of

11:40:56AM  24   her attorney.

11:40:57AM  25        So thank you, Your Honor.

─────OFFICIAL TRANSCRIPT─────

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

| | | |
|---|---|---|
| 11:41:01AM | 1 | THE COURT:  Thank you. |
| 11:41:01AM | 2 | MS. STEVENS:  If I may, Your Honor, just address one |
| 11:41:03AM | 3 | thing? |
| 11:41:05AM | 4 | THE COURT:  I don't usually do this, but one thing. |
| 11:41:08AM | 5 | And I've got one finger up. |
| 11:41:12AM | 6 | MS. STEVENS:  I'm sorry? |
| 11:41:12AM | 7 | THE COURT:  One thing. |
| 11:41:13AM | 8 | MS. STEVENS:  Sure. |
| 11:41:14AM | 9 | I just want to point out the fact that the reason why |
| 11:41:17AM | 10 | *Toole* had -- the *Toole* case was a verdict after JNOV, after |
| 11:41:21AM | 11 | the presentation of evidence.  I just -- but I just want to |
| 11:41:24AM | 12 | remind the Court that this case had not completed Phase I |
| 11:41:28AM | 13 | discovery when it was taken out of the bellwether track and |
| 11:41:31AM | 14 | so that this -- the question as to alternate treatments is a |
| 11:41:35AM | 15 | question of fact. |
| 11:41:35AM | 16 | Thank you, Your Honor. |
| 11:41:39AM | 17 | THE COURT:  Thank you. |
| 11:41:42AM | 18 | You all can sit down.  We need to open up the lines |
| 11:41:44AM | 19 | at this point. |
| 11:41:44AM | 20 | You all, unless you're staying for our call docket, |
| 11:41:56AM | 21 | you may leave.  If you want to take five minutes and gather |
| 11:42:00AM | 22 | items, please do so.  I'm going to just do some housekeeping |
| 11:42:06AM | 23 | up here.  So don't worry about me. |
| | 24 | * * * * |
| | 25 | (WHEREUPON, the proceedings were adjourned.) |

————OFFICIAL TRANSCRIPT————

Page 30

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JACQUELINE MILLS

```
1                        *  *  *  *

2                  REPORTER'S CERTIFICATE

3          I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
4  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
5  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

6

7                    ___/s/ Nichelle N. Drake___
                        Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

────────────OFFICIAL TRANSCRIPT────────────

Page 31