UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | |
| Tanya Francis, Case No. 2:16-cv-17410; Barbara Earnest, Case No. 2:16-cv-17144 | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SANOFI'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF ELLEN FEIGAL, M.D.**

### I.     INTRODUCTION

Breast cancer, its various stages, the different treatment options at each stage, the risks and benefits associated with the varying treatment options, what information is relevant to an objective physician, and how that information is generally presented to a patient—is complicated and confusing. Plaintiffs offer Dr. Ellen Feigal to assist the trier of fact in breaking it all down. Defendants claim that Dr. Feigal is unqualified to do so, and even if qualified, her opinions are unhelpful and unreliable. This is simply not the case. Dr. Feigal, is a board certified internist and oncologist with decades of experience in clinical practice; oncology research; design and development of clinical trials; pharmacovigilance; and she teaches the ethics and principles of informed consent. Dr. Feigal is more than qualified to render opinions regarding informed consent discussions and how that discussion would have been impacted oncologists' discussions with patients had Sanofi properly warned about Taxotere and permanent hair loss. Further, Dr. Feigal served as the Deputy Director and later Acting Director of the National Cancer Institute, Division of Cancer Treatment and Diagnosis from 1997 – 2004. She is eminently qualified and her opinions are not only relevant but are necessary to overcome potential juror bias and skepticism regarding whether permanent hair loss is something that should be considered in the risk/benefit discussion

1

between a physician and her patient—a skepticism enhanced by Defendants' repeated assertion that these plaintiffs could very well be dead if not for Taxotere. Dr. Feigal bases these opinions on her decades of experience and involvement in the informed consent process—as such, the reasoning supporting her opinions is sound, and Sanofi's complaints go to the weight of her testimony, not its admissibility. As further explained below, Defendants' Motion to Exclude Dr. Feigal's informed consent opinions should be denied.

## II.     LEGAL STANDARD

A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipaitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). In order to allow an expert's testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 592-93 (1993) 592–93. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Id*. at 594.

The purpose of a *Daubert* inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 150. "[W]hether an expert's testimony is reliable is a fact-specific inquiry." *Burleson v. Texas Dep't of Criminal Justice,* 393 F.3d 577, 584 (5th Cir. 2004) (citation omitted).

Additionally, testimony is admissible when "the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case." *Tripkovich v. Ramirez*, No. 13-6389, 2015 WL 3849392, at * (E.D. La. June 22, 2015) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993)). Expert testimony can be classified as relevant if "the reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence." *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted).

### III. ARGUMENT
#### A. Dr. Feigal is Qualified to Offer Her Informed Consent Opinions

Educated at the University of California, Davis and Stanford, Dr. Feigal is a board certified internist and oncologist with over twenty years of clinical experience and with over thirty years of experience in the fields of clinical trial design and investigation, pharmacological product development, pharmacovigilance, and medical literature research and review. (Ex. F to Defs' Mot., Rec. Doc. 6149-6, "Feigal Expert Report" at I.) Dr. Feigal has worked for multiple major pharmaceutical companies, the National Institute of Health, and the National Cancer Institute, among other organizations focused on the development of treatments for cancer and other major diseases. Dr. Feigal actively practiced as a clinician for over twenty years, treating cancer patients throughout her residency and fellowship years, and while at NIH (National Institute of Health). (*See generally* Ex. A to Defs' Mot., Rec. Doc. 6149-1, Feigal CV. *See also* Ex. A, Feigal Dep. Vol. 1 71:23-73:19.) Dr. Feigal remains engaged with patients through her involvement with patient groups, including patient advocacy groups, survivor groups, and breast cancer patient advocacy groups. (Ex. A, Feigal Dep. Vol. 1 73:7-12, *see also* Ex. B, Feigal Dep. Vol. 2 298:11-17.)

As a practicing oncologist, she had informed consent discussions with her patients. While at the National Cancer Institute (1992-2004), Dr. Feigal was involved with investigational treatments as well as treatments that were commercially available and did prescribe Taxane chemotherapy regimens to cancer patients. (*Id.* at 80:14-21.) Moreover, Dr. Feigal develops clinical trials and designs informed consent forms for patients participating in those trials. (Ex. B, Feigal Dep. Vol. 2 279: 17-23.) Additionally, during her years as a practicing clinician, Dr. Feigal participated on physician-led tumor boards, in order to make informed decisions about patient treatment.

Dr. Feigal has served on the faculty of major universities including the University of California, San Francisco, and the University of California, San Diego. (*Id.* at 2. *See also* Feigal Report at 1.) Dr. Feigal has been involved in multiple presentations that include informed consent. (Ex. A, Feigal Dep. Vol. 1. 94:12-19.) Currently, Dr. Feigal is a Partner at NDA Partners LLC and is on the Adjunct Faculty at the Sandra Day O'Connor College of Law, Arizona State University where she teaches Medical Research Ethics and Law, including a course on human subject research and ethics – "a good part of that is teaching about informed consent and the principles behind that." (*Id.*)

Defendants' reliance on *In re Bard IVC Filters Prods. Liab. Lit.*, No. 15-2641, 2018 WL 495187 (D. Ariz. Jan. 22, 2018), is distinguishable. There, the Court did not let an expert cardiologist testify about his personal views as to the defendant's obligations to warn, his personal views as to the meaning of the defendant's internal documents, his personal views on the defendant's intent, and how his personal views shaped what physicians should have been told about the defective device. (*Id.* at *3). Defendants' reference to *Nelson v. Biogen Idec, Inc.*, No. 12-cv-7317, 2018 WL 1960441 (D.N.J. Apr. 26, 2018), is similarly unpersuasive to refute Dr.

Feigal's qualifications to speak to informed consent in this case.[1]  The expert in the *Nelson* case, whose opinion was found to be unreliable, was not a medical doctor and had never prescribed any sort of drug to any patient. (*Id.* at *12-13).

Having straddled the private and public sectors, Dr. Feigal has a keen understanding of the responsibilities of a pharmaceutical company in drug development and the comparative needs of a patient in understanding the risks and benefits of a proposed treatment path—an understanding that has only been enhanced by her role as an educator.  Indeed, it is this cumulative effect of these experiences that makes her exceptionally and uniquely qualified to render opinions regarding the standards of care guiding discussions between a physician and patient regarding the risks and benefits of drugs as well as the methods for evaluating the cause of an adverse event as it relates to a specific pharmaceutical drug.[2]

### B. Dr. Feigal's Opinions on Informed Consent are Reliable

In order to offer reliable testimony as to standards for informed consent communications, it is not necessary that Dr. Feigal's experience be specific to breast cancer, as "the principles behind informed consent [are] not uniquely different in breast cancer patients than [they are] in many other aspects of oncology." (Ex. A, Feigal Dep. Vol. 1. 94:20-24.) Further, and contrary to Defendants' suggestion, Dr. Feigal did review the Taxotere label.  However, Dr. Feigal is not offering opinions as to whether specific language in the label is sufficient or whether language should be added to a different section of the label, etc. Instead, Dr. Feigal opines in her expert

---

[1] Doc. 6149 at 5. Defendants' memorandum summarizes this case as "finding plaintiffs' expert unqualified to opine as to the adequacy of a prescription drug warning where he never prescribed the drug to a patient, never counseled patients on the risks and benefits of the drug, and declared that he was 'not going to comment on the labeling'" of the drug." (Internal citations omitted).

[2] Sanofi elected to file two *Daubert* motions against Dr. Feigal.  The present motion relates to Dr. Feigal's informed consent opinions whereas the other motion (Rec. Doc. 6163) relates to her general causation opinions as well as the general causation opinions offered by other Plaintiffs' experts.  Accordingly, Plaintiffs do not address Sanofi's arguments related to general causation in this brief beyond this statement.

5

report regarding what a reasonable physician would have said regarding Taxotere and permanent alopecia. She offers her opinion regarding this standard of care based on her experience of over 30 years.  As she noted during her deposition, "I should be able to comment that since physicians get information from prescribing information, if the prescribing information does not have that type of safety information, then they can't have an informed discussion with their patient." (Ex. A, Feigal Dep. Vol. 1 101:14-19.) Dr. Feigal opines that a benefit-risk conversation between physician and patient is "about sharing the information that's known about [an] adverse event, because it's the totality of the conversation that's important." (*Id*. at 251:5-8.) Contrary to defendants' suggestion, this opinion is guided by her knowledge of the applicable NCCN and ASCO guidelines and standards put forth in the published medical literature. (Feigal Report at 32.) Dr. Feigal's Expert Report makes the importance of hair loss to female patients clear: "47% of female patients consider hair loss the most traumatic aspect of chemotherapy and 8% would decline chemotherapy because of fear of hair loss.  The perspectives on permanent, not just transient and reversible, alopecia might be anticipated to be higher." (Feigal Report at 35, (citing Ralph M. Trueb, *Chemotherapy-Induced Alopecia*, 4(4) CURR. OPIN. SUPPORT. PALLIAT. CARE 281-284 (2010)).)  Further, whether there are risks with other treatment options is not at issue nor relevant to her opinions—Dr. Feigal is opining as to the informed consent process with respect to Taxotere.  Whether other treatment options carry the risk of permanent alopecia, which is disputed, is fodder for cross examination.  *See Daubert*, 509 U.S. at 596. In sum, Dr. Feigal's professional knowledge and experience regarding informed consent is instructive as to the standards for informed consent in this context, and her opinions are based on her sound reasoning and experience.

### C.  Dr. Feigal's Opinions on Informed Consent are Relevant

Dr. Feigal's opinions as to what a reasonable physician would do with information regarding the causative relationship between permanent alopecia and Taxotere, as it relates to informed consent, are relevant in this case under Fifth Circuit law. Dr. Feigal opines that a reasonable or objective physician "would have included, had they known, of the risk of permanent chemotherapy-induced alopecia in their benefit-risk discussion of treatment options with their patients with early-stage breast cancer, to allow for more informed decisions." (Feigal Report at 1; *see also* Ex. C, Feigal Dep. Vol. 3 592:18-593:10.) Defendants cite to non-binding caselaw from the Third and Tenth Circuits that hold that only subjective opinions as to the Plaintiff's specific treating physician are relevant under the learned intermediary doctrine.[3]

However, the Fifth Circuit's treatment of the learned intermediary doctrine does not preclude Plaintiffs from offering evidence through Dr. Feigal's expert testimony of how a reasonable physician would have responded to an adequate warning about the causal association between Taxotere and permanent alopecia. In *Thomas v. Hoffman-LaRoche, Inc.*, the Fifth Circuit noted:

> To satisfy the burden of establishing warning causation, **a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning**, or subjective evidence of how the treating physician would have responded.

949 F. 2d 806 (5th Cir. 1992) (emphasis added). Other courts have interpreted the *Hoffman* case, stating "the Fifth Circuit has indicated that a plaintiff in some circumstances might be allowed to supplement the treating physician's testimony with objective evidence of how a reasonable physician would have responded to an adequate warning." *Sauls v. Wyeth Pharmaceuticals, Inc.*, 846 F. Supp. 2d 499, 503-504 (D.S.C. 2012).[4]

---

[3] Doc. 6149 at 6-7.
[4] The *Hoffman* "reasonable physician" opinion standard has been applied in other Fifth Circuit decisions: *See, e.g., Hermes v. Pfizer, Inc.*, 8484 F. 2d 66, 68-69 (5th Cir. 1988) ("The plaintiff. . .has the burden of proving by a

7

Those "circumstances" are present here because of potential juror bias and skepticism regarding whether permanent hair loss is something that should be considered in the risk/benefit discussion between a physician and her patient. Defendants have repeatedly asserted that, absent Taxotere, these plaintiffs may not have survived their breast cancer diagnosis. Faced with this assertion, jurors may find it unbelievable that a physician or patient would consider a warning of permanent hair loss. Accordingly, Dr. Feigal's opinions on informed consent are relevant under Fifth Circuit law. Therefore, Plaintiffs respectfully submit that her credentials and accompanying opinions satisfy the *Daubert* standards and Rule 702.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Exclude the Expert Testimony of Ellen Feigal, M.D.

Dated: June 26, 2019                                    Respectfully submitted,

/s/ Christopher L. Coffin                               /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                          Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                        GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2505                         6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                            Los Angeles, California 90045
Phone: (504) 355-0086                                   Telephone: 510-350-9700
Fax: (504) 355-0089                                     Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                                  kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                           *Plaintiffs' Co-Lead Counsel*

---

preponderance of the evidence, one, that her taking of [the drug at issue] caused in fact the injury complained of an, two that the warning, if any, given by [defendant drug manufacturer] to plaintiff's prescribing physician was inadequate and, three, that had an adequate warning been given, ***a reasonably prudent physician*** would not have prescribed [the drug].") (emphasis added); *Allgood v. GlaxoSmithKline PLC*, No. CIV.A. 06-3506, 2008 WL 4483574, at *6 (Feb. 20, 2008), ("And while it would appear that in this Circuit a plaintiff may be able to supplement such "subjective" testimony with "objective evidence of how a reasonable physician would have responded to an adequate warning," the Plaintiffs have produced no such additional evidence in this case.") (internal citations omitted).

8

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

| | |
|---|---|
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT