# EXHIBIT L



March 27, 2019

**Via Email**
The Honorable Jane Triche Milazzo
United States District Judge
500 Poydras Street
Room C206
New Orleans, Louisiana 70130

Re: Requested Letter; Taxotere MDL

Dear Judge Milazzo,

Please accept this letter explaining my actions regarding stem cell investigations. As an expert witness of hair loss pathology in this case, I was initially asked to investigate permanent chemotherapy-induced alopecia (pCIA) in any way possible. As an anatomic pathologist and an expert in hair loss pathology who had never provided legal expert opinion before, I identified any possible tool available for further investigation of pCIA, including immunohistochemical (IHC) stains.

Of note, IHC is the primary molecular tool used in routine pathology diagnostics, however, there is little practical application of IHC at this time in hair loss pathology. At this time, there is no known utility of assessing follicular stem cells for diagnostic purposes, and there is no accepted mechanism of follicular stem cell damage or death related to the variety of hair loss diseases. Evaluation of biopsies for hair loss is currently limited to standard sectioning and traditional staining with H&E-stained level sections. The same protocol is followed for all biopsies received for pathological evaluation of hair loss.

Before any biopsies were received, I proposed to the attorneys to use two of the IHC stains, cytokeratin 15 (CK15) and Ki-67, to further investigate pCIA. CK15 and Ki-67, however, do not have any known utility for diagnostic purposes in hair loss pathology. Positive or negative staining by both of these antibodies is not known to support or refute any particular hair loss diagnosis.

When biopsies from the four patients with possible pCIA were received by my laboratory, the biopsies were processed in the usual manner for diagnostic purposes, including the preparation of 9 unstained slides for each biopsy. The unstained slides were prepared for possible use by an expert for the defense or for further stains needed for diagnostic or investigational purposes.  For each biopsy, two of these unstained slides were used for the CK15 and Ki-67 (IHC) stains. These stains were prepared at the same time as the H&E slides were prepared.  The IHC took only a few hours to perform.

The biopsies were assessed for diagnostic purposes at the same time that the two IHC slides were also reviewed. In assessing the findings of the H&E slides and preparing the reports which I issued for each biopsy, I determined that the CK15 and Ki-67 were of no utility for diagnostic purposes, either in supporting or refuting a particular pathological diagnosis in all eight of the biopsy slides from the four





patients. As noted above, neither CK15 nor Ki-67 is used diagnostically in hair loss pathology. In assessing the CK15 and Ki-67, I did not take notes and did not issue a report.

I notified the attorneys that I did not believe that the CK15 and Ki-67 had any diagnostic or investigational utility in any way in this case, and we decided to stop any further investigation using IHC and to simply issue traditional pathology reports based upon my interpretation as an expert in hair loss pathology. At this time follicular stem cell damage or death has no known utility in hair loss pathology. The presence of absence of staining with CK15 and Ki-67 may not be used as definitive evidence of follicular stem cell damage or death.

I do not know who Drs. Laura Plunkett or Dr Ellen Feigal are and have no recollection of speaking with them. Based upon my invoices in this case, I did relay the pathological findings to Dr. Feigal by telephone on June 25, 2018, however, I do not recall this call or any pertinent discussion. Dr. Antonella Tosti was cc'd on an email that I sent to the attorneys explaining my assessment that the IHC stained slides had no utility in the case, however, I did not ever discuss the IHC slides with Dr. Tosti.

Several months after completing my pathology reports on the biopsied specimens from this case, I reviewed videos from a follicular stem cell researcher that were sent to me by attorney Anne Andrews. Anne sent me these videos prior to introducing this researcher to me. Please note that review of these videos did not have any impact on the interpretation of either H&E slides or the IHC stains in this case. I had already issued the pathology reports for all of the biopsies from this case long before I viewed the videos, and the reports were never altered.  After reviewing the videos, I had a single phone call with the stem cell researcher, however, the discussion was limited to agreeing to provide archived scalp biopsy tissue from cases of hair loss not related to this legal case to the researcher for his own investigations. As required by CLIA regulations, my laboratory maintains an archival tissue bank. My proposal was to only provide the archival tissue for the researcher's own investigations. This tissue was not going to be from any biopsies taken in this particular legal case. The researcher never contacted me to request the tissue, and no tissue was ever sent.

I hope that this summary provides clarification of my performance of CK15 and Ki-67 IHC studies on the biopsies in this legal case. Of note, I have provided all of these IHC studies and unstained slides to the defense counsel.

Thank you very much,

**Curtis T. Thompson, MD**
Medical Director and Dermatopathologist, CTA Lab
Affiliate (Clinical) Professor of Dermatology and Pathology, OHSU
T: 503.906.7300 | C: 503.997.8920 | F: 503.245.8219
E: curtisinportland@gmail.com



12254 SW Garden Pl., Tigard OR 97223
www.cta-lab.com

PHONE: (503) 906-7300
FAX: (503) 245-8219