## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                     SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Tanya Francis, Case No. 2:16-cv-17410;
Barbara Earnest, Case No. 2:16-cv-17144

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE
### DR. LOVE'S STEM CELL OPINIONS

### INTRODUCTION

Sanofi offers a supplemental report of Dr. Porcia Bradford Love, a dermatologist, as it believes she is qualified to opine on stem cells and the import of stem cell staining, in relation to the diagnoses of permanent hair loss. But Sanofi stands alone in its belief. Consistent with the supplemental opinions advanced through Dr. Shapiro and Dr. Smart, even Dr. Love does not believe that she is qualified as an expert in stem cells or stem cell staining.[1,2]

Dr. Love lacks expertise in follicular stem cells and admits that she will not testify regarding causation of permanent chemotherapy-induced alopecia based upon the staining of pathology slides with cytokeratin-15 or Ki-67.[3] Dr. Love offers nothing more than a paraphrased

---

[1] See Ex. A, Shapiro Dep. 216:9-12 (Dr. Shapiro: "I'm a dermatologist. Not a stem cell expert. I'm not a stain expert. This is not what I do."); see also id. at 209:20-23; 211:3-9; see Ex. B, Smart Dep. Vol. II 156:23-157:1 (Dr. Smart: Q: "Now, do you consider yourself to be an expert in stem cells in the hair follicle?" "A: No.").

[2] See Ex. C, Love Dep. Vol. III 390:20-22; 392:10-24.

[3] See id. at 396:14-397:3 ("Q: So I already know what Dr. Smart says, and I know that you adopt what she says in her supplemental surgical pathology report as your opinion, but I want to make sure that I'm very clear for the judge that you don't have the education, training, or experience to offer opinions concerning the causation of permanent

recitation of Dr. Smart's pathology report findings, with no further application of those findings to render an opinion.[4]

Finally, and damning for Sanofi, like Dr. Shapiro and Dr. Smart, Dr. Love *admits* that based on what little she does know about the staining performed by Dr. Curtis Thompson, positive staining with cytokeratin-15 and Ki-67 does not show that *follicular stem cells* are present, as stated in her report. Rather, her sworn testimony is quite the opposite:

> Q.    Okay. But we've already agreed that Ki-67 will react to any cells proliferating, and, so, that doesn't have to be follicular stem cells; right?
>
> A.    Correct.
>
> Q.    Okay. So if Ki-67 tests positive, that doesn't mean that stem cells are proliferating. It could mean derma cells are proliferating; correct?
>
> A.    Correct.
>
> Q.    So Ki-67, we can agree, then, tells us nothing simply by the fact that it shows cells proliferating; right?
>
> A.    Correct.[5]

Likewise, Dr. Love admits that she is not an expert concerning cytokeratin-15, or even familiar with its use.[6]  What she does know, however, is that Ki-67 is a stain that will show

---

chemotherapy-induced alopecia based upon the staining of slides with cytokeratin 15 and Ki-67 immunohistological stains. Correct? *A. I will not be testifying on the use of stains in alopecia, no. Not general use of stains in alopecia, no, I will not. I will not.*" [Italics added].

[4] *See id.* at 396:2-13, 422:12-18 ("Q. You haven't done any work to determine or come up with this fact. It's simply just a restatement of what another expert has said; right? [MR. McRAE: Object to the form.] *A. Correct.*" [Italics added]).

[5] *Id.* at 434:11-435:4 (Form objections omitted; emphasis added.); *see also id.* at 453:1-8 (Dr. Love agreed that because of this fact "we know that the Ki-67 stained slide doesn't give us any useful information about proliferation of follicular stem cells because it reacts to all cells.").

[6] *See id. at* 393:1-5; 398:25-399:2; 436:15-18; 438:17-439:6; *see also id.* at 452:1-6 (Dr. Love conceded during her deposition that there are multiple sources of stem cells on the scalp, other than the hair follicle.).

proliferation of <u>all cells</u>, not just stem cells.[7] Dr. Love further conceded that if cytokeratin-15 stains stem cells on a scalp biopsy slide it "does not mean that it is only reacting to follicular stem cells."[8] As a result, Dr. Love's admissions render her sworn testimony in direct conflict with what is stated in her supplemental expert report, and it conflicts with Sanofi's continued representations to the Court that the cytokeratin-15 and Ki-67 stains are specific to stem cells in the hair follicle.[9]  Dr. Love further conceded that she conducted a PubMed literature search for relevant peer reviewed journal articles to support her supplemental opinions and could find nothing to support them.[10]  As a result, and despite the above cited testimony and conceded scientific facts, what Dr. Love offers is her otherwise unsupported restatement of Dr. Smart's pathology findings paraded as "[her] opinion."[11]

Having disclaimed any expertise in stem cells or stem cell staining, and without any scientifically valid basis to offer testimony about stem cells and stem cell staining as a diagnostic tool, the Court should exclude the testimony of Dr. Love under its gatekeeping role set forth by the Supreme Court in *Daubert*.[12]  Dr. Love's opinion is nothing more than an *ipse dixit* restatement

---

[7] *See id.* at 417:23-418:1 ("Q. And Ki-67 only shows proliferation of cells, not just stem cells; right? A. Correct**.**").

[8] *See id.* at 453:23-454:8.

[9] *See* Rec. Doc. 7316, p. 7, ("[P]ositive stains [with cytokeratin-15 and Ki-67] contradict that theory because present and growing cells were detected."); *see also* Ex. D,  Record Transcript, 4/11/2019, before Magistrate Judge North, p. 6:4-11 (Ms. Byard: "One of the theories, amongst many that's advanced in the literature about this medicine supposedly causing this unique harm, is perhaps it's causing damage to the stem cell in the hair follicle. But what the testing on plaintiffs' biopsies actually revealed was that those stem cells remained present and that they were proliferating, that they were growing, and they are in specimens." For what it is worth, the "theory" argued by Sanofi in the quoted record is *not* being advanced by the PSC; the PSC has never raised a causation theory based on stem cell staining, nor has it ever attempted to do so.).

[10] *See* Ex. C, Love Dep. Vol. III 450:13-451:5.

[11] *See id.* at 434:11-437:16.

[12] These opinions, which clearly lack any reliability, also are excludable under Rule 702 and Rule 403 because such unsupported testimony would only confuse the issues and/or mislead the jury.

of Dr. Smart's April 30, 2019 pathology report, which likewise should be excluded consistent with the PSC's previous motion and memorandum regarding the stem cell opinions of Drs. Shapiro and Smart. (*See* Rec. Doc. 7322.)

## STANDARD

A qualified expert's testimony is admissible only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The party offering the expert testimony bears the burden of establishing each of these elements by a preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). And the trial judge is obligated to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Expert testimony is inadmissible when "the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 136 F.3d 935, 937 (5th Cir. 1999). Similarly, an expert's testimony should be excluded where it "go[es] beyond the scope of [her] expertise in giving [her] opinions." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)).

Additionally, testimony is not admissible unless "the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case." *Tripkovich v. Ramirez*, No. 13-6389, 2015 WL 3849392, at * (E.D. La. June 22, 2015) (citing *Daubert*, 509 U.S. at 593). Likewise, testimony should be stricken as irrelevant when there is "too great an analytical gap" between the data or

facts considered and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, opinion evidence is inadmissible if it is only tethered to existing facts through the *ipse dixit* of the expert. *Id.*

Dr. Love's supplemental opinions are just the sort of unqualified and unreliable expert testimony opinions that must be excluded. Respectfully, she is not qualified to render the opinions she offers. She is admittedly unqualified to speak to any stem cell analysis or staining, and she offers no scientific evidence and employs no reliable methodology to support her opinion.

## ARGUMENT

Dr. Love offers the same speculative and unsupported opinion on stem cells as Dr. Shapiro and Dr. Smart, i.e., that because Dr. Thompson's stem cell staining of scalp biopsies produced "positive" results, plaintiffs do not suffer from permanent hair loss.[13] Dr. Love does not possess the expertise to render such an opinion, and her stem cell opinions lack any indicia of reliability. Even more, her sworn testimony stands in direct conflict with the opinion stated in her supplemental report, which raises concerns over the authorship and veracity of the two and one-half page report that lacks a single scientific reference. It is apparent that Dr. Love was presented with a report that makes bold and conclusory statements about Ms. Francis' pathology slides stained with cytokeratin-15 and Ki-67, and yet she was unable to maintain those bold opinions under oath. In fact, Dr. Love's testimony directly contradicts and impeaches the opinions stated in her written report.

---

[13] *See* Ex. E, Supplemental Expert Report of Dr. Shapiro at 4 ("This evidence [slides stained with cytokeratin-15 and Ki-67] does not support a finding and description of permanent alopecia after chemotherapy.") (redacted for personal identifying information); *see also* Ex. F, Supplemental Expert Report of Dr. Smart at 6 ("Additionally, because the stem cells are present, they do not have permanent hair loss.").

## I.    DR. LOVE IS UNQUALIFIED TO OFFER THE SUPPLEMENTAL OPINIONS SHE MAKES REGARDING STEM CELLS

Sanofi's dermatologist, Dr. Love, acknowledged in her deposition that she has limited knowledge, at best, about Ki-67 and cytokeratin-15. She worked with Ki-67 before training to be a dermatologist, and she has no experience with cytokeratin-15.[14] She does not hold herself out to be a stem cell expert, and only offers a restatement of another expert's opinion.[15] Dr. Love has never researched stem cells and has never ordered the stem cell staining used by the PSC's expert dermatopathologist on plaintiffs' biopsy slides (cytokeratin-15 or Ki-67).[16]

Dr. Love offers nothing more than a paraphrased regurgitation of the findings by Sanofi's expert dermatopathologist, Dr. Smart, in her April 30, 2019 pathology report.[17] Dr. Love concedes that she has not—and could not—publish the opinions stated in her report in a scientific journal without proper scientific references, or findings from her own testing, neither of which she provided here.[18] Dr. Love's application of a lower standard (a completely unsupported opinion) violates one of the guideposts of the Court's *Daubert*/FRE 702 analysis—that she apply the same level of diligence in rendering her opinions as she would in her practice, or publishing in this case. Dr. Love understands the importance—or imperative—of properly supporting her opinion, and

---

[14]  *See* Ex. C, Love Dep. Vol. III 410:25-412:10.

[15]  *See id.* at 390:20-22, 391:5-13, 392:10-15, 394:16-17, 396:2-13, 422:2-18 (Dr. Love simply restates Dr. Smart's opinion as her own.)

[16]  *See id.* at 390:23-393:15, 435:7-437:16.

[17]  *See id.* at 422:2-18. Sanofi produced Dr. Love's time/billing records that reveal a time entry for Dr. Love's review of Dr. Smart's surgical pathology report on April 20, 2019, an incredible ten days prior the documents creation on April 30, 2019.  Something is simply not right with the picture painted by the Love's testimony, her billing records and the surgical pathology report signed by Dr. Smart on April 30, 2019.  *See also* Ex. G, Dr. Love's time/billing record. *See also* Ex. F, Supplemental Report of Dr. Smart and its exhibit B (redacted for personal identifying information).

[18]  *See* Ex. C, Love Dep. Vol. III 402:24-403:15, 423:6-424:21.

she admits that she tried to find support, but totally failed in her efforts, instead agreeing to just give "her opinion."[19] And as a result Dr. Love agrees with Dr. Smart that "there is no established evidence in the literature to state whether or not a mechanism of action exists that can explain whether stem cells being present on a slide stained with cytokeratin 15 or Ki-67 have anything to do with permanent chemotherapy-induced alopecia."[20]

Dr. Love is simply not qualified to render opinions about stem cell staining and its implications in this case. Likewise, her fatal admissions make it clear that the cytokeratin-15 and Ki-67 stained slides created by Dr. Curtis Thompson can offer no useful information to a trier of fact. Dr. Shapiro and Dr. Smart admitted—properly so—that they are not qualified to opine as to the meaning of a positive or negative stem cell stain in terms of whether hair loss is permanent. Indeed, Dr. Love takes the additional step of conceding that because the stains react to a broader set of cells than previously represented by Sanofi's counsel, the evidence on the slides stained with cytokeratin-15 and Ki-67 "doesn't give us any useful information" in assessing the cause of permanent chemotherapy-induced alopecia, let alone singling out useful information of a particular source of stem cells.[21] As a result, Dr. Love's admitted lack of qualifications and inability to articulate how the cytokeratin-15 and Ki-67 stained slides can differentiate between stem cells and non-stem cells, or among multiple sources of stem cells, leaves her both unqualified and unable to offer any opinion regarding the stem cell staining done on plaintiffs in this litigation, and most particularly any interpretation of the results and implications to Ms. Francis' hair loss.[22]

---

[19] *Id.* at 403:3-5, 417:12-19, 420:15-421:7.

[20] *Id.* at 431:15-25.

[21] *See id.* at 453:1-454:8.

[22] *See id.* at 453:1-8; 453:20-454:8.

## II.        DR. LOVE'S OPINIONS ARE UNSUPPORTED AND UNRELIABLE

It is well understood that any expert opinion must be supported by education, training experience, and based on a sound methodology. Routinely such methodology includes reliance on upon published, peer-reviewed scientific literature.  In the present instance Dr. Love admits to being unable to find *any* scientific support for her opinions; she explained the efforts employed to locate such support, but could find none for her opinions.[23] In her report, Dr. Love expresses an opinion that Tanya Francis' hair loss is not permanent because of the positive stem cell staining, but then impeaches these statements with clear admissions about precisely what Ki-67 and cytokeratin-15 can show. Given Dr. Love's admissions, any statement that the staining results indicate active and proliferating follicle stem cells is unreliable because it lacks any discernable methodology or scientific basis whatsoever. In fact, Dr. Love admits to not applying any methodology and simply adopting Dr. Smart's pathology findings as her own "opinion" and admitting to her inability to locate any scientifically valid support.[24]

Because Dr. Love's methodology was simply to parrot Dr. Smart's findings, it is worth pointing to Dr. Smart's admitted deficiencies as an expert in this area. Dr. Smart conceded that Ki-67 is not a reliable test for the presence of stem cells,[25] and while she claimed at her deposition that cytokeratin-15 is generally reliable in detecting stem cells, she acknowledged that she has never worked with cytokeratin-15 and that her report contains no reference to any scientific literature that supports the reliability of using cytokeratin-15 in identifying follicular stem cells.[26]

---

[23] *See id.* at 417:12-19.

[24] *See id*. at 396:2-13, 422:2-18, 402:24-30.

[25] *See* Ex. B, Smart Dep. 182:11-18.

[26] *See id.* at 183:5-19.

Dr. Smart likewise conceded that cells other than follicular stem cells can be stained positive with cytokeratin-15 and Ki-67[27] and that neither type of staining, as done in this case, adds important information to her analysis of plaintiffs' hair loss.[28] Dr. Smart's testimony in this regard is entirely consistent with Dr. Love's sworn testimony on the very same subjects.

 Dr. Love agreed with Dr. Smart that "there's no established evidence in the scientific literature to state whether or not – you know -- what the mechanism of action, whether or not the stem cells being present or absent have anything to do with PCIA."[29]

In the end, as with Dr. Shapiro and Dr. Smart, given the concessions and admissions by Dr. Love, how can this expert offer the supplemental opinions concerning cytokeratin-15 and Ki-67 staining to a reasonable degree of medical probability that she did, yet disavow them so clearly in her sworn testimony? It is a valid question, and one that should only be answered with the exclusion of the unsupported and scientifically unreliable opinions she attempts to offer. Indeed, because Dr. Love's opinions are unsupported, and she admits to her lack expertise in the necessary area, the entirety of her supplemental opinions regarding stem cells must be excluded under Rule 702.

## **CONCLUSION**

For the foregoing reasons, Dr. Love should be precluded from testifying about stem cells generally and specifically as it relates to this litigation, including interpreting any stem cell

---

[27] *See id.* at 172:2-7.

[28] *See id.* at 155:12-20, 156:5-19.

[29] *Id.* at 159:14-19, 162:8-19; *see* also Ex. C, Love Dep. Vol. III 431:15-25.

staining performed on plaintiffs' pathology slides, and any stem cell study Sanofi alleges was

conducted by the PSC.[30]

Dated: July 3, 2019

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH   BENJAMIN   DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

Respectfully submitted,

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*


*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*


### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

---

[30] Plaintiffs asked Sanofi to withdraw the supplemental reports of Dr. Love, but Sanofi refused, making this motion
to exclude unavoidable. *See* Ex. H, June 4, 2019, email exchange.

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT