UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO EXCLUDE EXPERT TESTIMONY OF DR. KEVIN BIANCHINI**

The arguments presented in Plaintiff's Opposition to Sanofi's Motion to Exclude Expert Testimony of Dr. Kevin Bianchini (Rec. Doc. 7481) are largely nonresponsive to Sanofi's Memoranda (Rec. Docs. 6151 and 7320) and do not establish the admissibility of Dr. Bianchini's opinions under Rule 702. The Court should exclude Dr. Bianchini's testimony because he is not qualified to opine on emotional distress from hair loss, and because his opinions are not the product of reliable methods reliably applied to the facts of Ms. Earnest's case.

## ARGUMENT

### I. DR. BIANCHINI LACKS EXPERTISE IN EMOTIONAL DISTRESS RELATED TO HAIR LOSS

Dr. Bianchini admitted that his diagnoses of Ms. Earnest and another plaintiff (Ms. Durden) with adjustment disorder resulting from hair loss are the first and only such diagnoses that he can identify in his career. *See* Bianchini Dep. I at 48:5-17; 79:7-18 (Jan. 8, 2019) (Memo Ex. C). He admitted that he lacks "targeted expertise" in emotional symptoms related to hair loss. *See id.* at 42:15-43:1. He failed to cite a single experience treating a patient with emotional symptoms due

to hair loss from cancer treatment as "a major presenting symptom." *See id.* at 48:5-17; *see also* Memo at 5. This alone should end the inquiry.

Plaintiff, however, ignores Dr. Bianchini's admitted lack of expertise with the subject matter (*i.e.* emotional injury due to hair loss from chemotherapy), and instead points to Dr. Bianchini's experience in *other* areas of psychology such as neuropsychology and with "chemotherapy-related cognitive issues" like "chemo brain" and "chemo fog." *See* Opp. at 6. But Ms. Earnest is not claiming a neuropsychological injury or chemotherapy-related cognitive issue like "chemo brain." Plaintiff cites no authority holding that a licensed neuropsychologist is *per se* qualified to opine on any emotional injury, regardless of the cause or context. Much less can Plaintiff find support for Dr. Bianchini's attempt to offer, as an expert witness, a diagnosis he admits he has never made in practice.[1] What precedent there is speaks sharply to the contrary. *See, e.g.*, *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1112-13 (5th Cir. 1991) (concluding that an "M.D. degree . . . alone is not enough to qualify [an expert] to give an opinion on every conceivable medical question"); *Thompson v. U.S.*, No. 4:17-cv-63, 2019 WL 149553, at *4 (S.D. Ga. Jan. 9, 2019); *see also* Memo 4-6.

Nor does Dr. Bianchini have expertise with the relevant subject matter (*i.e.*, emotional injury due to hair loss from chemotherapy) due to general "clinical experience with cancer patients" or "research on mental disorder in patients with serious medical issues." *See, e.g.*, Opp. at 7. Those two aspects of expertise—separately, or in combination—do not establish the necessary qualifications here, as Plaintiff suggests. First, Dr. Bianchini has treated "probably" less

---

[1] To the extent Plaintiff argues that Dr. Bianchini is qualified to offer expert testimony regarding adjustment disorder generally, rather than adjustment disorder related to hair loss specifically, *see* Opp. at part III.A ("Dr. Bianchini is Well Qualified to Offer Expert Testimony Regarding Adjustment Disorder"), such arguments counsel in favor of limiting Dr. Bianchini's testimony in this case to the subject of adjustment disorder generally, without reference to hair loss.

2

than twenty patients with psychological symptoms related to a cancer diagnosis over the course of his career.  *See* Memo at 5; Bianchini Dep. I at 48:22-49:4.  Second, Ms. Earnest does not claim psychological damages related to a cancer diagnosis—in fact, the gravamen of her claim (and of Dr. Bianchini's purported diagnosis) is that her cognizable emotional damages do *not* stem from her cancer diagnosis or life-or-death battle with the disease, but from alleged permanent hair loss which she ascertained at some unidentified point within the five years that followed.  Thus, even assuming *arguendo* that Dr. Bianchini possesses expertise in assessing emotional damages from *cancer* that would not qualify him to opine on the emotional effects of *hair loss* in Ms. Earnest's life.  On that issue Dr. Bianchini has admittedly disclaimed expertise, and is unqualified.  *See* Memo at 4-6.

II.     **DR. BIANCHINI'S OPINIONS ARE UNRELIABLE**

    **A.  Dr. Bianchini's opinions are not based on sufficient facts or data**

Dr. Bianchini expressly testified that he reached the conclusions set forth in his November 9, 2019 report without reviewing, considering, or having access to a large volume of relevant medical records and depositions, which he requested and considered necessary to his evaluation.  *See, e.g.*, Bianchini Dep. II at 167:4-167:11 ("I have discovered now that despite requesting all of the information, I was not provided with all the information."), 169:12-15 (opinions therefore "rendered conditionally") (Jan. 9, 2019) (Memo Ex. C); Memo at 6-7, 12-14, 19-22.  These conclusions have not changed.  In other words, by his own account, the opinions stated in Dr. Bianchini's expert report and which he intends to offer as testimony at trial were not based on sufficient facts or data when formed.  This arguably renders the testimony inadmissible under the plain terms of Rule 702: "A witness who is qualified as an expert […] may testify in the form of an opinion or otherwise if: […] (b) the testimony is based on sufficient facts or data."  Fed. R. Evid. 702.

3

Further, the record does not support any inference that Dr. Bianchini has since gone back and considered sufficient facts or data to support the opinions he previously formed. *See* Supp. Memo (Rec. Doc. 7320) at 5-7.  Notably, Plaintiff does not make such an argument in her Opposition.  Instead, Plaintiff wholly ignores the fact that Dr. Bianchini was not provided essential, relevant information before issuing his report and that the opinions were therefore "rendered conditionally," and cites his November report and January testimony as his operative opinions. *See, e.g.*, Opp. at 8-9, 12-13.  Consequently, Plaintiff fails to assert (much less support with record evidence) that Dr. Bianchini's opinions are no longer "conditional" but are offered to a "reasonable medical probability," as required by Lousiana law.  *See Galjour v. Gen. Am. Tank Car Corp.*, No. CIV. A. 87-5003, 1990 WL 9867, at *7 (E.D. La. Jan. 23, 1990) (citing *Creel v. S.A. Tarver & Son Tractor Co.*, 537 So. 2d 752, 754 (La. Ct. App. 1988)).[2]

### B. Dr. Bianchini's opinions are not the product of reliable methods reliably applied to the facts of Ms. Earnest's case

As to the facts and data he did actually consider, Dr. Bianchini did not reliably apply a reliable methodology to form his opinions.  First, investigating the facts necessary to form an opinion *after forming the opinion* is not reliable methodology—Plaintiff neither argues nor cites any legal or scientific authority suggesting that it is.  Thus, even if Dr. Bianchini *had* reviewed facts or data sufficient to form reliable opinions *after forming his opinions in this case*, that could not make his opinions retroactively reliable.

Second, Plaintiff cannot establish the reliability of the methodology that Dr. Bianchini did employ by asserting and then knocking down straw-man arguments.  Sanofi never argued that psychology or neuropsychology are "junk science" lacking reliable principles and methods on

---

[2] Dr. Bianchini's report does not state that his opinions are offered to a reasonable degree of medical probability.  *See* Memo Ex. B.

4

which admissible expert testimony could be based. *See* Opp. at 2, 8. Rather, Sanofi argues that Dr. Bianchini failed to apply these accepted principles and methods in evaluating Ms. Earnest. *See* Memo at 6-7, 18-19; Supp. Memo 6-7. In her Opposition, Plaintiff fails to address the litany of professional and ethical standards which Dr. Bianchini agreed guide reliable neurological evaluation, yet failed to adhere to in assessing Ms. Earnest. *See* Bianchini Dep. I at 85:7-23, 86:13-88:9; Memo at 6-7. Plaintiff fares no better in attempting to explain Dr. Bianchini's failure to apply the DSM-5 definition for adjustment disorder or to account for MMPI test results in his diagnosis.

Dr. Bianchini testified that the DSM-5 criteria are necessary for a diagnosis of adjustment disorder. Bianchini Dep. II at 292:7-292:9 ("Q. And are these DSM criteria necessary for making a diagnosis? A. Yes. They're -- they're -- yes."). Both Sanofi's Memo and Plaintiff's Opposition set forth the DSM-5 criteria for "Adjustment Disorder," including: "[t]he development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s);" and "[s]ignificant impairment in social, occupational, or other important areas of functioning." *See* Memo at 15; Opp. at 12-13. It is undisputed that Dr. Bianchini did not set forth or cite these DSM-5 criteria in his expert report on Ms. Earnest. *See* Bianchini Dep. II at 242:14-20. Nevertheless, Plaintiff argues that Dr. Bianchini "did in fact" use the criteria. *See* Opp. at 13. But neither Dr. Bianchini's report nor his testimony (nor Plaintiff's Opposition, for that matter) make any attempt to specify:

- the "identifiable stressor(s)" in response to which Ms. Earnest developed reported symptoms;

- the date (or year) of "the onset of the stressor(s)";

- the date (or year) of the "development of emotional or behavioral symptoms"; or

5

- the nature of the significant impairment and the area of functioning affected.

In fact, Dr. Bianchini—and Plaintiff—duplicitously present, and rely on, two conflicting theories of the "stressor" which led to Ms. Earnest's symptoms. On one hand Plaintiff argues that the "identifiable stressor" was "hair loss." *See* Opp. at 13-14 (arguing that symptoms need not begin within three months of onset because hair loss was "ongoing"). Elsewhere, however, Plaintiff states that the "stressor" was the discrete and relatively recent conclusion that her hair loss was permanent—hence the absence of any reported emotional symptoms in years of Ms. Earnest's medical records. *See* Opp. at 8 ("it was not until she realized her hair was not growing back after she completed her chemotherapy that she began to experience psychological complications.").

Moreover, Dr. Bianchini—and Plaintiff in support of his opinions—has never identified any timeline of stressor *or* symptom onset under either of these theories. Tellingly, while Plaintiff makes the conclusory statement that Dr. Bianchini "already had enough information previously to determine the timeline, but he wanted some additional information to further support his opinions," *see* Opp. at 15, she makes no attempt to cite or set out any such timeline, nor what "additional information" offered "further support." This deficiency is exacerbated by the contradiction between Ms. Earnest's clear testimony that she has "always thought the condition of [her] hair was related to chemotherapy" and not Arimidex, and Dr. Bianchini's belief that "she was attributing [her hair loss] to other things" including Arimidex for "five years or so" before filing suit. *Compare* Earnest Dep. at 291:1-10 *with* Bianchini Dep. III at 122:10-17; 126:14-127:10 (May 14, 2019) (Supp. Memo Ex. A). No timeline can plausibly account for this gap of five years, so Plaintiff simply does not offer one.

Plaintiff's discussion of MMPI data is similarly unavailing. On the one hand, Plaintiff states that Dr. Bianchini incorporated Ms. Earnest's MMPI results into his diagnosis of adjustment disorder.[3] *See* Opp. at 10. On the other hand, Plaintiff argues that "the MMPI testing method may not be specific enough to reflect the symptoms Mrs. Earnest suffers from," *see* Opp. at 11—suggesting that MMPI testing itself is not an appropriate and reliable methodology to produce the opinion Dr. Bianchini offers.

Ultimately, Dr. Bianchini's opinions are not the product of reliable psychological methodology reliably applied to the facts of Ms. Earnest's case, but are simply a repackaging of Ms. Earnest's self-reported symptoms contradicted by objective evidence. By his own testimony, Dr. Bianchini is not an expert in emotional symptoms related to hair loss, and has never made the diagnosis he offers here outside of this litigation. As such, Dr. Bianchini's testimony adds nothing to Ms. Earnest's own account, and would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Accordingly, his testimony is inadmissible under Rule 702 and should be excluded from Ms. Earnest's case.

## CONCLUSION

For the foregoing reasons, Sanofi respectfully requests that the Court exclude the opinions and testimony of Kevin Bianchini, PhD in their entirety from the above-captioned case.

Date: July 12, 2019

---

[3] Of course, neither Plaintiff nor Dr. Bianchini explains *how* the results—which show no evidence of impaired social functioning or elevated levels of emotional symptoms—are incorporated into his report, which reaches a contrary conclusion.

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **July 12, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore