# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)               MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                          SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

_____

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF ELLEN FEIGAL, M.D.

_____

Plaintiffs' Response fails to show why Dr. Feigal should be permitted to offer her "expert" opinions on what treating physicians "would have" done if they had been presented with different risk information.  The party offering expert testimony bears the burden of establishing its admissibility.  *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted).  Plaintiffs have not satisfied their burden with respect to Dr. Feigal's expert opinions.  Most importantly, Plaintiffs' Response is generally *non-responsive* to the arguments set forth in Defendants' motion.  Indeed, Plaintiffs ignore the vast majority of Defendants' arguments as to why Dr. Feigal's opinions should be excluded.  And the arguments Plaintiffs do articulate fail to establish the admissibility of Dr. Feigal's informed consent opinions.  Specifically:

- Plaintiffs do not acknowledge that Louisiana law does not permit "objective physician" testimony offered by retained experts to be presented in lieu of testimony from the prescribing physician on the issue of proximate causation.  Instead, Plaintiffs rely solely on dicta from an inapposite case decided under Mississippi law.  *See* Pls. Opp. 7-8 (Rec. Doc. 7474).

- Plaintiffs do not rebut Defendants' position that Dr. Feigal's informed consent opinions are inherently speculative.  Feigal Daubert 10-12 (Rec. Doc. 6149).

- Plaintiffs fail to identify a reliable methodology that Dr. Feigal utilized in forming her informed consent opinions.  Pls. Opp. 5-6 (Rec. Doc. 7474).

- Plaintiffs concede that Dr. Feigal did not consider the known risks and side effects associated with alternate treatment options in reaching her informed consent opinions regarding Taxotere.  Feigal Daubert 12-13 (Rec. Doc. 6149).

- Plaintiffs argue that Dr. Feigal is well-credentialed in fields *underlined* to the treatment of breast cancer and the use of Taxotere to treat the disease, while ignoring that she has not treated a single breast cancer patient in 28 years and has never prescribed Taxotere (or Taxol) to a breast cancer patient.  Feigal Daubert 4-5 (Rec. Doc. 6149).

Thus, the Court should grant Defendants' motion and exclude Dr. Feigal's informed consent opinions.

## I.    DR. FEIGAL'S OPINIONS REGARDING WHAT AN OBJECTIVE PRESCRIBER WOULD ALLEGEDLY DO ARE IRRELEVANT AND UNHELPFUL TO THE FACT-FINDER.

Plaintiffs' reliance on a Fifth Circuit decision suggesting, in dicta, that "objective physician" evidence might be able to supplement the testimony of the prescribing physician in certain circumstances is inapposite because that case (and the decision it relied upon) were decided under ***Mississippi law***, not ***Louisiana law***.[1]  *See* Rec. Doc. 7474, Pls. Opp. 7-8 (citing *Thomas v. Hoffman-La Roche, Inc.*, 949 F.2d 806 (5th Cir. 1992) (applying Mississippi law); *Hermes v. Pfizer, Inc.*, 848 F.2d 66, 68-69 (5th Cir. 1988) (same)).  Notably, Plaintiffs have not pointed to any authority permitting the admission of such "objective physician" evidence under Louisiana law.

Whatever may be said about Mississippi law, and *Thomas* and *Hermes*, pursuant to Louisiana law, the only relevant question is whether *Plaintiffs' treating physicians* would have

---

[1]     It is unclear whether the Fifth Circuit correctly stated what type of evidence would be relevant under Mississippi law.  The defendant in *Hermes* did not challenge the causation statement in the jury instructions but rather the sufficiency of the evidence to support a verdict on that instruction.  848 F.2d at 68.  Moreover, in *Thomas*, the Fifth Circuit recognized that the Mississippi Supreme Court had subsequently indicated that a plaintiff "had the burden of showing that an adequate warning would have altered [the treating physician's] conduct."  949 F.2d 806, 812 (5th Cir. 1992) (quoting *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988)).  As the court in *Sauls* recognized, "[n]o other jurisdiction that adheres to the learned intermediary doctrine has followed the approach" set out in *Thomas*.  *Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 504 (D.S.C. 2012).

changed their prescribing decisions if *they* were provided different risk information.  Information related to what Dr. Feigal believes an "objection physician" would do has no bearing on Plaintiffs' claims and would only serve to confuse jurors as to Plaintiffs' burden of proof.  *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (determining expert admissibility on relevance requires the court to consider whether the reasoning fits the facts of the case and will assist the trier of fact understand the evidence).  Thus, Dr. Feigal's opinions as to what an "objective" or "reasonable" physician would do with different risk information are irrelevant, unhelpful, and therefore, inadmissible.

Noticeably, Plaintiffs do not dispute that, to prove but-for causation under Louisiana law, as recognized by the Fifth Circuit, they must do so with evidence specific to their own ***treating physicians***.  *See Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991) (holding, under Louisiana products liability law, that "the plaintiff must show that a proper warning would have changed the decision of ***the treating physician***, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product") (emphasis added); *Pellegrin v. C.R. Bard*, No. 17-cv-12473, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) (same) (citing *Willett*, 929 F.2d at 1099); *Huffman v. Squibb*, No. 16-cv-3714, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) ("To demonstrate causation under Louisiana law, the plaintiff must ultimately show that ***the doctor*** would not have prescribed [the drug] had the doctor received a proper warning."); *Rhodes v. Bayer Healthcare Pharm. Inc.*, No. 10-cv-1695, 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) ("Plaintiffs bear the burden to show that a proper warning would have changed the decision of [***their treating physician***], i.e., that but for the inadequate warning, he would not have used or prescribed Avelox.") (emphases added).  Louisiana law does not allow "objective physician" evidence to replace the prescribing physician's testimony.  *Grenier v. Med Eng'g*

*Corp.*, 99 F. Supp. 2d 759, 766 (W.D. La. 2000). In *Grenier*, the court held that plaintiffs could not meet their burden by submitting an expert affidavit regarding what an objective physician might have done because it did not come from the plaintiff's own doctor—"the person who the inquiry must revolve around." *Id.*; *see also* Feigal Daubert 7 n.9 (Rec. Doc. 6149).

Plaintiffs have not met their burden of proving that Dr. Feigal's testimony will help the trier of fact. They cannot do so because her testimony is legally irrelevant under Louisiana law.

## II.  DR. FEIGAL'S INFORMED CONSENT OPINIONS ARE NOT RELIABLE.

In addition to being irrelevant, any testimony from Dr. Feigal regarding what some "objective" physician would have done with different risk information is not reliable. Plaintiffs ignore these issues—thus definitively failing to meet their burden of proof. *See* Feigal Daubert 8-13 (Rec. Doc. 6149).

### A.  Dr. Feigal's Opinions Are Speculative.

Plaintiffs do not challenge Sanofi's argument that Dr. Feigal's "informed consent" opinions are inherently speculative and therefore inadmissible. Nor do they address Dr. Feigal's testimony that: (1) she cannot speak for other physicians; (2) she cannot guarantee that any particular physician would even review additional information or include it in her risk-benefit discussions with patients; (3) she has no idea whether physicians would have updated their risk-benefit discussions based on the 2015 label change advising physicians about reported cases of permanent hair loss; and (4) she recognizes that prescribing decisions for any particular physician could remain the same even with new information. Feigal Daubert 10-11 (Rec. Doc. 6149). Plaintiffs likewise provide no counter to the caselaw excluding similar testimony as speculative and unreliable. *See In re Diet Drugs*, 2001 WL 454586, at *18 (excluding expert opinion on "whether or not physicians would have prescribed or patients would have taken [the prescription

drugs at issue] had certain adverse event information been discussed in the drugs' labeling" because these opinions were "purely speculative and not based on scientific knowledge"). Plaintiffs' failure to challenge the inherently speculative nature of Dr. Feigal's opinions justifies exclusion of Dr. Feigal's testimony.

      **B.**     **Dr. Feigal's Opinions Are Not Based on a Reliable Methodology.**

      Although unclear, Plaintiffs seem to argue that Dr. Feigal's opinions are based on a reliable methodology because (1) "Dr. Feigal did review the Taxotere label," and (2) her opinions are "guided by her knowledge of the applicable NCCN and ASCO guidelines and standards put forth in the published medical literature." Pls. Opp. 5-6 (Rec. Doc. 7474). Neither contention is supported by the factual record, nor sufficient to establish the reliability of her so-called methodology.

      First, Plaintiffs offer no citation to the record to establish that Dr. Feigal actually reviewed a Taxotere label. *See* Pls. Opp. 5 (Rec. Doc. 7474). Nor do they specify (1) which version of the Taxotere label she supposedly reviewed; (2) what risk information the label actually contained; or (3) how such information is relevant to Plaintiffs' claims with respect to date and substance. *Id.* Instead, Plaintiffs ask the Court to simply believe their unsubstantiated representation that Dr. Feigal reviewed some undisclosed version of the Taxotere label. *See* Feigal Daubert 8-10 (Rec. Doc. 6149). But even if Dr. Feigal did review an applicable Taxotere label (which she did not), Plaintiffs cite no authority showing that such review, alone, serves as the basis of a reliable methodology for assessing the adequacy of risk disclosures.

      Similarly, Plaintiffs offer no citation to the record establishing which so-called "applicable NCCN and ASCO guidelines and standards put forth in the published medical literature" Dr. Feigal reviewed and based her opinions upon, much less when such guidelines and standards were issued

or what they actually say.  *See* Pls. Opp. 6 (Rec. Doc. 7474).  In their Opposition, Plaintiffs point

to page 32 of Dr. Feigal's report, which generically states (in pertinent part):

> Physicians learn from many sources of information about treatment options,
> enabling an informed discussion with their patient about her treatment
> options.  Therese sources include prescribing information, scientific and
> medical publications; presentations and publications of clinical trials;
> professional meetings; their own experience as well as colleagues; NCCN
> Guidelines; other Guidelines, including ASCO, and company sources such
> as labeling, promotional material, advertising, and sales representatives.

Ex. F to Feigal Daubert, Feigal Report at 32 (Rec. Doc. 6149-6).  Defendants and the Court are

left to speculate as to which guidelines and/or sources Dr. Feigal considered and followed as a

basis for her methodology in forming her opinions.  At her deposition, Dr. Feigal could not identify

a single guideline or standard.  *See* Feigal Daubert 9-10 (Rec. Doc. 6149).

Dr. Feigal's "informed consent" opinions should be excluded because they lack a reliable

methodology and are based solely on her personal, subjective views.  *See* Feigal Daubert 8-10

(Rec. Doc. 6149).  Neither Plaintiffs nor Dr. Feigal have articulated a recognized, objective

methodology for reaching her opinions.  *Id.*  As such, Plaintiffs fail to meet their burden of proving

admissibility.

## C.    Dr. Feigal's Opinions are Based on Cherry-Picked Data.

Plaintiffs argue that the risks associated with other treatment options (including the risk of

permanent hair loss) "is not at issue nor relevant to [Dr. Feigal's] opinions" because her opinions

are unique to Taxotere.  Pls. Opp. 6 (Rec. Doc. 7474).  The fact that Dr. Feigal artificially limited

her opinions on "informed consent" discussions to just Taxotere does not make them any more

reliable.  Indeed, Dr. Feigal's opinions are unreliable and unhelpful to the trier of fact because she

reached them in a vacuum, without considering the risks and side effects associated with potential

alternative treatments and how those might impact an informed consent discussion involving

6

Taxotere. *See* Feigal Daubert 13 (Rec. Doc. 6149) (showing that Dr. Feigal knows there are risks associated with alternative therapies—including the risk of alopecia). All chemotherapies and chemotherapy regimens have different, individualized efficacy and risk profiles. For non-Taxotere treatment options, these include the risk of permanent hair loss, cardiac, neuropathy, leukemia, and greater chance of death. Dr. Feigal acknowledges that each chemotherapy drug carries its own set of risks, including life-threatening and potentially permanent risks. *See* Ex. G to Feigal Daubert, Feigal Dep. Vol. II 9:12-21, 10:7-11:7, 22:13-23 (Rec. Doc. 6149-7). But Dr. Feigal did not review the risk information that would need to be included for those other regimens in an informed consent discussion about options for treatment, nor does she discuss that risk information within her report. *Id.* 9:12-21, 10:7-11:7, 22:13-23.

Dr. Feigal's opinions on the hypothetical informed consent discussions are not only speculative but they are based on incomplete information. Opinions based on cherry-picked data are subject to exclusion. *Konrick v. Exxon Mobil Corp.*, 2016 WL 439361, at *13 (E.D. La. Feb. 4, 2016), *aff'd*, 670 F. App's 222 (5th Cir. 2016). Plaintiffs cite *Daubert* in response and argue only that "[w]hether other treatment options carry the risk of permanent alopecia [] is fodder for cross examination." Pls. Opp. 6 (Rec. Doc. 7474). But "vigorous cross-examination" is only appropriate "where the basis of scientific testimony meets the standards of Rule 702." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). "The fact that an expert witness was 'subject to a thorough and extensive examination' does not ensure the reliability of the expert's testimony; such testimony must still be assessed before it is presented to the jury." *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017) (quotation omitted). The availability of cross-examination at trial does not obviate Plaintiffs of their burden to prove that Dr. Feigal's opinions are based on something more than unreliable speculation and incomplete, cherry-picked information. Because

Plaintiffs have not met their burden on admissibility, the Court should exclude Dr. Feigal's opinions as unhelpful and unreliable.

## III.   DR. FEIGAL IS NOT QUALIFIED TO OPINE ON THE ADEQUACY OF RISK/BENEFIT DISCUSSIONS INVOLVING TAXOTERE.

Plaintiffs devote half their brief to arguing that Dr. Feigal is well-credentialed in fields *unrelated* to the treatment of breast cancer and the use of Taxotere to treat the disease.  Pls. Opp. 1-5 (Rec. Doc. 7474).  In doing so, Plaintiffs fail to address that Dr. Feigal lacks the specialized knowledge and experience needed to opine – in Plaintiffs' words – "regarding informed consent discussions and how that discussion would have been [sic] impacted oncologists' discussions with patients had Sanofi properly warned about Taxotere and permanent hair loss." *Id.* at 1.  Notably, Plaintiffs do not challenge the fact that Dr. Feigal has:

- Never prescribed Taxotere (or Taxol) to treat a breast cancer patient;

- Never counseled a breast cancer patient on the risks and benefits of Taxotere;

- Never published or presented on Taxotere to treat early stage breast cancer;

- Never been involved in a clinical study with Taxotere to treat early stage breast cancer;

- Never "done any presentations, slides, handouts, or posters regarding [Taxotere] and alopecia; and

- Never treated a breast cancer patient who complained of permanent hair loss.

Feigal Daubert 4-5 (Rec. Doc. 6149).  Plaintiffs also do not dispute that Dr. Feigal has not treated a single breast cancer patient for more than 28 years.  Pls. Opp. 1-5 (Rec. Doc. 7474).

Plaintiffs' attempt to distinguish *In re Bard IVC Filters* is unfounded.  *See* Pls. Opp. 4 (Rec. Doc. 7474).  In *Bard*, the plaintiffs' expert was a practicing cardiologist who (1) regularly treated patients with the condition at issue, and (2) had dealt with patients who had been implanted with

8

the product at issue.  2018 WL 495187 at *1 (D. Ariz. Jan. 22, 2018).  But like Dr. Feigal, the expert in *Bard* never used the product at issue himself, never researched the product prior to becoming retained in the litigation, and yet still sought to opine "about what other physicians would think and do with certain information about [the product]."  *Id.* at *4.  The *Bard* court held that the expert "lack[ed] the specialized knowledge and experience needed to opine about how IVC-filter physicians would respond to facts at issue in this case."  *Id.  Bard* is directly on point and the same result of exclusion is warranted here.  Moreover, Plaintiffs have not cited a single decision where a court has permitted a similarly unqualified expert to opine about treatment decisions they have never made themselves.  Plaintiffs accordingly fail to carry their burden.

## CONCLUSION

For the foregoing reasons, as well as the arguments set out in Defendants' opening memorandum, the Court should grant Defendants' motion and exclude Dr. Feigal's opinions and testimony.

Date:  July 12, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and*
*Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **July 12, 2019**, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of

record who are CM/ECF participants.

*/s/ Douglas J. Moore*
Douglas J. Moore