UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                   MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA PLUNKETT**

The party offering expert testimony bears the burden of establishing its admissibility. *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted). In response to Sanofi's Motion to exclude Dr. Plunkett's "greater risk" and "more toxic" opinions, Plaintiffs admit or ignore the vast majority of Sanofi's arguments. More specifically:

- Plaintiffs admit Dr. Plunkett did not examine comparable data between Taxotere and the other chemotherapies she compared for either her "greater risk" or her "more toxic" opinions. (Rec. Doc. 7465) ("Pls.' Opp.") at 8.

- Plaintiffs admit Dr. Plunkett was unable to quantify the alleged "greater risk" associated with Taxotere. Pls.' Opp. at 10–11.

- Plaintiffs ignore that Dr. Plunkett testified: "I can't tell whether the risk is twofold, threefold or tenfold;" rendering her "greater risk" opinion not only irrelevant, but also prejudicial. (Rec. Doc. 6155) ("Defs.' Br.") at 8–9.

- Plaintiffs ignore that, while Dr. Plunkett identifies a list of chemotherapy medications associated with permanent alopecia, she is unable to determine which drug in which combination is the cause of any woman's permanent alopecia. Defs.' Br. at 4–5.

- Plaintiffs ignore Dr. Plunkett's testimony that permanent alopecia, and other side effects associated with these drugs, are dependent upon the type and length of treatment; however, she could not identify what type or length of treatment resulted in a "greater risk" of permanent alopecia. Defs.' Br. at 7–8.

- Plaintiffs ignore that the foundational study for Dr. Plunkett's "toxicity" opinion—TAX311—did not track permanent alopecia and instead evaluated patients with metastatic breast cancer. Defs.' Br. at 19–20.

- Plaintiffs finally ignore the opinions Dr. Plunkett disclaimed, thus confirming that she is not permitted to testify about those subjects at trial. Defs.' Br. at 20–22.

Instead, Plaintiffs appear to rest their argument on Dr. Plunkett's qualifications. Sanofi, however, did not challenge Dr. Plunkett's qualifications generally as a toxicologist or pharmacologist. Plaintiffs failed to meet their burden of proving Dr. Plunkett's testimony is "relevant and reliable," and her opinions should accordingly be excluded. *Tsao v. Ferring Pharm., Inc.*, No. 4:16-cv-01724, 2018 WL 3649714, at *11 (S.D. Tex. Apr. 19, 2018) (Concluding Dr. Plunkett was generally qualified as a toxicologist/pharmacologist, but excluding her testimony in part as unreliable.).

## ARGUMENT

### I. DR. PLUNKETT'S TESTIMONY THAT TAXOTERE CARRIES A "GREATER RISK" OF PERMANENT ALOPECIA IS INADMISSIBLE.

#### A. Dr. Plunkett's "greater risk" opinion is unhelpful to the trier of fact.

An unquantified opinion that there is an alleged "greater risk" of permanent alopecia associated with Taxotere is unhelpful and will confuse and mislead the jury. Defs.' Br. 5–8. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). Further, Rule 403 "permits the exclusion" of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." This concern is all the more important with expert testimony because "[e]xpert evidence can be both powerful and quite misleading." *Id*. at 595 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)). This is true here. Dr. Plunkett's unquantified "greater risk" opinion demands the jury to guess as to exactly what the

2

risk might be. In response, Plaintiffs' argue that Dr. Plunkett's "inability to quantify the increased risk" is grounds for cross-examination. Pls.' Opp. at 11. Plaintiffs, however, cite no support for their position, thus failing to meet their burden to prove admissibility. *Burst*, 120 F. Supp. 3d at 550. *See also*, *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. ... These conventional devices ... are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702.").

Alternatively, Plaintiffs assert that Dr. Plunkett "does quantify the risk, just not in a numerical fashion. Dr. Plunkett quantified the risk as "increased."" Pls.' Opp. at 10. Plaintiffs argue that Dr. Plunkett does not have to provide a precise number for her "greater risk" opinion to be admissible. Pls.' Opp. at 10. While Dr. Plunkett did not opine to a specific "greater risk" number, she could not offer even a general range for the alleged increase. Defs.' Br. at 8. Further, Dr. Plunkett's inability to quantify the "increase" makes it impossible to determine if the increase is significant, as would be necessary for admissibility. *See* Exhibit B to Motion to Exclude Testimony of Plunkett (Rec. Doc. 6155-2), Plunkett Dep. 237:3–6. *See In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1367 (N.D. Fla. 2018) (excluding statistically insignificant data because it would "tend to confuse the issues and mislead the jury."). Plaintiffs rely on *In re Roundup* to support admission of Dr. Plunkett's vague and imprecise opinion. Pls.' Opp. at 11 (citing *In re Roundup Prod. Liab. Litig.*, 358 F. Supp. 3d 956, 961–62 (N.D. Cal. 2019)). Their reliance is misplaced. In that case, plaintiffs' expert testified that some of the epidemiological studies found a *statistically significant* increased risk. *In re Roundup Prod. Liab. Litig.*, 3:16-md-02741, Rec. Doc. 647, p. 19 (N.D. Cal. Oct. 27, 2017). Dr. Plunkett's failure to

find a statistically significant increased risk, or quantify the alleged "increase" in any meaningful way, warrants its exclusion.

Dr. Plunkett's "greater risk" opinion is also likely to confuse and mislead the jury because she cannot quantify the dose or length of treatment leading to an alleged greater risk and cannot quantify the risk of Taxotere over comparator drugs, which are given in different doses and schedules. While Dr. Plunkett admits that risks are dose and length dependent, Plaintiffs argue—with no authority—that Dr. Plunkett need not identify a dosing schedule. Pls.' Opp. at 11. Fifth Circuit caselaw is to the contrary. *See Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir.1996) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."); *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1114–1115 (5th Cir.1991) (en banc), *cert. denied*, 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992) (holding that the district court did not abuse its discretion in excluding an expert's opinion that was based on insufficient data regarding the dosage of a harmful substance and the duration of exposure to that substance). Dr. Plunkett likewise concedes that numerous other chemotherapies used to treat breast cancer are "associated" with permanent hair loss, including cisplatin, doxorubicin, 5-fluorouricil, cyclophosphamide, prednisone, and Taxol. Plunkett Dep. 24:13–25:6, 115:11–17, 116:19–117:19, 185:14–186:14 (Rec. Doc. 6155-2). But Dr. Plunkett, again, cannot articulate the alleged risk of Taxotere verse these comparator drugs—nor could she considering Taxotere, as in the case of Ms. Francis and Ms. Earnest, is almost always given in combination with other chemotherapies. Plaintiffs make no attempt to address this issue, failing to carry their burden of proof.

### B. Dr. Plunkett relies on insufficient facts and an unreliable methodology to reach her "greater risk" opinion.

Dr. Plunkett's sweeping opinion that Taxotere is associated with a "greater risk" of permanent alopecia is unsupported because she articulated no reliable methodology and admittedly lacked complete data to make a comparative analysis.

Plaintiffs argue Dr. Plunkett's "weight of the evidence" assessment allows her to surpass *Daubert* and makes her "greater risk" opinion reliable. However, to ensure that an expert's "weight of the evidence" standard "is truly a methodology, rather than a mere conclusion-oriented selection process…there must be a scientific method of weighting that is used and explained." *In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 247 (S.D.N.Y. 2018) (quoting *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 796 (3d Cir. 2017) (quotation marks omitted); *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F.Supp.2d 584, 607 (D.N.J. 2002) (same), a*ff'd*, 68 F. App'x 356 (3d Cir. 2003)). "An expert can theoretically assign the most weight to only a few factors, or draw conclusions about one factor based on a particular combination of evidence," *In re Zoloft*, 858 F.3d at 796, so a detailed articulation of a scientific methodology is required. Plaintiffs did not meet that burden.

Dr. Plunkett testified: "In my report, I talk about I use the weight of the evidence, and I've laid out for you all of the different pieces of information that I have reviewed and relied upon." Plunkett Dep. 155:10–13 (attached as Ex. A). Dr. Plunkett's explanation included a review of Taxotere and Taxol labels, select regulatory submissions, and cherry-picked medical literature, and then she "considered the evidence as a whole in [her] assessment." *See* Exhibit A to Motion to Exclude Testimony of Plunkett (Rec. Doc. 6155-1), Plunkett Report at 4 ¶ 11. Such a threadbare summary does not satisfy Plaintiffs' burden of proving and explaining Dr. Plunkett's "scientific method of weighting." *See In re Mirena (No. II)*, 341 F. Supp. 3d at 247, 257-58 (excluding Dr.

Plunkett where she did "not explain the weights she places on the various" factors in her analysis, and her method was "virtually standardless").

It is clear that Dr. Plunkett did not use any objective, scientific method of weighting. While Dr. Plunkett analyzed multiple sources of information related to Taxotere (though none of it relates to Taxotere alone), Dr. Plunkett admitted that she lacked information to be able to conduct a full evaluation of comparator drugs. Plunkett Dep. 179:1–180:13 (Ex. A) ("Unfortunately I didn't have access to the same level of data for some of the other compounds… like I said, unfortunately, yes, that's true. I don't have the same level of data."). That said, Dr. Plunkett's review of <u>publicly available</u> documents was as follows:

- Taxotere – 118 documents;
- Taxol – 6 documents;
- Cisplatin – 0 documents;
- Doxorubicin – 0 documents;
- 5-fluorouracil – 0 documents;
- Cyclophosphamide – 0 documents; and
- Prednisone – 0 documents.

Plunkett Report, List of Documents Reviewed, p. 49–52 (Rec. Doc. 6155-1). Dr. Plunkett instead relied on self-selected medical literature. Defs.' Br. 10. *See also*, *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1047 (D. Minn. 2007) (excluding an opinion on drugs comparative safety where the expert relied upon medical literature and spontaneous adverse event reports because "comparative toxicity cannot be made on the basis of AER data"). Without comparable data for the comparator drugs, there could be no objective, scientific weighting, and Plaintiffs cited no authority holding that Dr. Plunkett's analysis met that standard.

## II. DR. PLUNKETT'S TESTIMONY THAT TAXOTERE IS "MORE TOXIC" THAN TAXOL IS INADMISSIBLE.

Plaintiffs summarily assert that Dr. Plunkett's opinion on toxicity is reliable. Pls.' Opp. at 13–14. Plaintiffs claim that Dr. Plunkett reached her conclusions as part of her "overall analysis," using "the standard methods she applies in all of her work as a pharmacologist and toxicologist." Pls.' Opp. at 13. Plaintiffs do not identify exactly what that methodology was, nor do they cite any case law supporting their argument that Dr. Plunkett's testimony is reliable and admissible. *Burst*, 120 F. Supp. 3d at 550.

Plaintiffs address only one of Sanofi's reliability arguments—that Dr. Plunkett did not isolate more than one toxicity. Plaintiffs claim that Dr. Plunkett "took them all [other toxicities] into account." Pls.' Opp. at 14. Dr. Plunkett, however, explicitly testified that she focused solely on permanent alopecia and only looked "more generally" across the toxicity profiles of Taxotere and Taxol. Defs.' Br. at 18. Dr. Plunkett admitted that she did not know or investigate any specific incidence rate for any other toxicity. Defs.' Br. at 18. Without any other comparator, Dr. Plunkett has no basis to testify reliably that Taxotere is generally "more toxic" than Taxol. Indeed, Dr. Plunkett admitted that Taxotere and Taxol have "the same basic toxicity profile," a "very similar sequence of—qualitatively similar adverse events and toxicities," and both drugs have been linked to "increases in overall adverse events as a group." Defs.' Br. at 16. Plaintiffs made no effort to explain how Dr. Plunkett reliably reached her broad conclusion given these concessions.

Plaintiffs also ignore Sanofi's argument that the key basis for Dr. Plunkett's toxicity opinion—TAX311—cannot reliably support her analysis, because TAX311 *did not track permanent alopecia*. Defs.' Br. at 19–20. Setting that issue aside, the TAX311 data indicated Taxotere was more toxic than Taxol for select toxicities but that Taxol was more toxic with respect to other toxicities. Plunkett Dep. 227:20–23 (Rec. Doc. 6155-2). Plaintiffs made no effort to

7

address these facts in their Opposition. *See Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp.2d 1007, 1066 n.60 (E.D. Cal. 2011) ("[A] reliable expert would not ignore contrary data, misstate the findings of others, make sweeping statements without support, and cite papers that do not provide the support asserted.").

Plaintiffs finally argue that Dr. Plunkett's toxicity opinion is relevant, *but only if* Sanofi argues at trial that "there is no alternative to Taxotere."[1] Pls.' Opp. at 14. Sanofi, however, has never claimed that there is no alternative to Taxotere—only that Taxotere is recognized as one of "the most efficacious, safe and cost-effective medicines for priority conditions."[2] Regardless, a general opinion that Taxotere is allegedly more toxic than Taxol has no relevance to these Plaintiffs'—or any other specific individual's—claim. Plaintiffs' treating physicians testified that prescribing decisions and weighing of toxicities are determined not generally but on a patient-by-patient basis. Defs.' Br. at 15, n.15. Indeed, Ms. Earnest's treating physician specifically testified that he rejected Taxol because it was not approved for weekly dose-dense use in 2011 and because it carries risks of neuropathy and severe infusion reactions. (Rec. Doc. 6078 at 9). Dr. Plunkett's generic opinion that Taxotere is allegedly "more toxic" than Taxol has no relevance to the actual risk-benefit decisions for these Plaintiffs, which were made at the time of treatment based on Plaintiffs' cancer type and medical history. Because Dr. Plunkett's opinion is not relevant, it should be excluded so as not to confuse the jury. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3

---

[1] Plaintiffs seem to assert that prescribers would have elected to use Taxol over Taxotere if Taxotere carries both a "greater risk" of permanent alopecia and is "more toxic." Pls.' Opp. at 14. Dr. Plunkett, however, was not asked to opine on what a prescribing physician would have done if presented with this information, nor did she provide such an opinion. *See* Plunkett Report generally.

[2] World Health Organization, WHO Model List of Essential Medicines, http://www.who.int/medicines/publications/essentialmedicines/EML_2015_FINAL_amended_NOV2015.pdf?ua=1 (amended November 2015) (*See* Exhibit E to Motion to Exclude Testimony on General Causation (Rec. Doc. 6163-5)).

8

Weinstein & Berger ¶ 702[02], p. 702–18). Plaintiffs failed to meet their burden of proving otherwise.

## CONLUSION

In light of the foregoing, Defendants respectfully request that this Court exclude the proposed expert testimony by Dr. Plunkett.

Date: July 12, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on **July 12, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                /s/ *Douglas J. Moore*
                                                Douglas J. Moore