UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                                   MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                             SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.


REPLY IN SUPPORT OF SANOFI DEFENDANTS'
OMNIBUS MOTION TO PRECLUDE IMPROPER EXPERT TESTIMONY

Procedurally, this motion is not premature[1] and substantively, Plaintiffs' experts may not

offer: 1) opinions on knowledge, meaning, intent, motive, or state of mind; 2) narrative testimony;

or 3) legal conclusions. The Court should grant this motion in full.

ARGUMENT

A.  Experts may not testify to a party's knowledge, intent, or motive.

Plaintiffs' Opposition concedes that experts may not testify to a party's "intent or

motivation," Pls.' Opp. at 2, but insists that an expert may testify to a defendant's *knowledge*, so

long as the expert can point to evidence in the record in support of that opinion. That distinction,

though, ignores the rule that expert testimony regarding corporate knowledge is inadmissible under

Rule 702.  *See*, *e.g.*, *Clinton v. Mentor Worldwide LLC*, No. 4:16-cv-00319, 2016 WL 7491861,

---

[1] Courts regularly address arguments such as those raised herein on a *Daubert* motion. *See, e.g.*, *In re Bard IVC Filters Prod. Liab. Litig.*, No. 15-md-02641, 2017 WL 6523833, at *9 (D. Ariz. Dec. 21, 2017) (stating, in motion governed by Rule 702 and *Daubert*, that Dr. Kessler may not testify as to motive or intent because those topics "lie outside the bounds of expert testimony"); *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, No. 11-cv-5468, 2015 WL 5145546, at *12 (N.D. Ill. Aug. 31, 2015) (ruling on *Daubert* motion that raised objection to expert's narrative testimony); *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (disposing of *Daubert* motions that asserted, *inter alia*, that experts improperly engaged in narrative testimony and opined on the knowledge, motivations, intent, state of mind, or purposes of the defendant, its employees, the FDA, or FDA officials).

at *11 (E.D. Mo. Dec. 30, 2016) ("The question of corporate motive, intent, knowledge or state of mind is one for the jury, not for an expert."); *In re Levaquin Prods. Liab. Litig.*, No. 08-md-1943, 2010 WL 11470977, at *1 (D. Minn. Nov. 10, 2010) ("Courts have routinely excluded expert testimony regarding corporate knowledge, motivations, and intent, as irrelevant and inadmissible under Rule 702.") (citing *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1069 (D. Minn. 2007)). To the extent there is evidence of Defendant's corporate knowledge, such evidence should be presented through corporate witnesses and fact witnesses – not repackaged and passed through Plaintiffs' expert as a conduit to merely repeat fact testimony under the guise of expert opinion.

Both the text of Rule 702 and the authority interpreting it make clear that expert testimony on matters like a party's knowledge is inadmissible because such testimony is little more than an impressively-credentialed individual giving his best guess on a matter that is outside his area of expertise and on which a juror is just as well-equipped to reach a conclusion. *See* Fed. R. Evid. 702; *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (excluding expert's opinion that person was dishonest because such an opinion "goes beyond the scope of expertise" and violates the principle that expert testimony "may only assist and not replace the fact finder"); *U.S. v. Cytogel Pharma, LLC*, No. 16-cv-13987, 2018 WL 5777510, at *3 (E.D. La. Nov. 2, 2018) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-cv-157, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010) ("Dr. House's testimony [regarding Abbott's beliefs, intent, or knowledge] has no basis in his body of expertise and describes lay matters which a jury is capable of understanding and deciding without the expert's help.") (quotations and citation omitted).

Plaintiffs' own argument about why Dr. Kessler should be allowed to testify on these matters illustrates the impropriety of such testimony. For instance, they state:

> As for Sanofi's examples of Dr. Kessler's allegedly "improper" testimony or opinions in the instant case, Plaintiffs respectfully submit that none of them fall into the categories proscribed by Rule 702. For example, Dr. Kessler's opinions on Sanofi's marketing do not speculate about the company's intent, *but instead fairly describe its strategy, as demonstrated in the record, and quote Sanofi itself on its stated goal*. . . Elsewhere in his report, Dr. Kessler discusses, just as experts in the case law have, factors surrounding Taxotere marketing efforts, and he characterizes those efforts appropriately and accurately in the record. . . This kind of testimony *regarding a party's known strategy* does not involve speculation, only simple references to the record.

Pls.' Opp. at 4-5 (footnote omitted) (emphases added).  In essence, Plaintiffs' position appears to be that the underlying facts about which Dr. Kessler will testify are so straightforward and supported by the record that there is no basis to exclude them.  But this conclusion (which is only tenable if the Court accepts Plaintiffs' incomplete statement of the law) gets the analysis completely backwards.  It is in part *because* the documents and testimony upon which the jury will decide these questions are so straightforward that these topics are inappropriate for expert testimony.  Plaintiffs hope to tip the scales in their favor by attempting to cause the jury to believe that only an expert is capable of explaining to them evidence that Plaintiffs themselves warrant is fairly easily understood. This is not allowed by the law governing expert witnesses. *See, e.g.*, *In re Prempro Prods. Liab. Litig.,* 554 F.Supp.2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?").[2]

**B. An expert may not merely narrate facts.**

---

[2] This testimony is also inappropriate as a prohibited regurgitation of the factual record.

Plaintiff conflates the type of "narrative" testimony that Sanofi seeks to exclude (i.e. when an expert merely repeats fact testimony under the guise of expert opinion) with the "narrative" evidentiary objection that applies when counsel asks an improperly broad question or a witness provides an inappropriately long answer. The former type of testimony, at issue here, raises *Daubert* issues that are appropriate for resolution on a Rule 702 motion:

> Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. Mere narration thus fails to fulfill *Daubert's* most basic requirements. In addition, narration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion.

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-cv-681, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) (citations omitted); *see In re Trasylol Prods. Liab. Litig,* 709 F.Supp.2d 1323, 1346 (S.D. Fla. 2010) (finding that expert's testimony "will not assist trier of fact," where testimony "mostly consists of a factual narrative of [drug's] regulatory history and summaries of [pharmaceutical defendant's] internal documents"); *In re Prempro Prods. Liab. Litig.,* 554 F.Supp.2d at 886.

Further, though Plaintiffs state that their experts' testimony on corporate knowledge is part of explaining the basis of their opinions, much of this testimony has little to no bearing on the ultimate conclusions reached by Plaintiffs' experts.

## C. Experts may not offer legal conclusions.

With respect to legal conclusions, Plaintiffs concede that their experts will not offer opinions as to whether Sanofi violated its duties under Louisiana state tort law, *see* Pls.' Opp. at 12-13, and that Dr. Feigal is not qualified to offer opinions on FDA regulation, *see id.* at 13-14. Plaintiffs maintain that Dr. Kessler may testify as to Sanofi's compliance with FDA regulations; but that type of testimony, too, is an inadmissible legal conclusion. *See, e.g.*, *Tyree v. Bos. Sci.*

*Corp.*, No. 2:12-cv-08633, 2014 WL 5486694, at \*28 (S.D.W. Va. Oct. 29, 2014) ("[T]he only basis for Dr. Pence's opinions on the adequacy of BSC's product labeling is violation of the FDCA and FDA regulations. . . . *[A]sserting a violation of the FDCA is a legal conclusion, not an expert opinion*." (emphasis added)); *Tsao v. Ferring Pharm., Inc.*, No. 4:16-cv-01724, 2018 WL 3649714, at \*14 (S.D. Tex. Apr. 19, 2018) ("Because they are inconsistent with the FDA regulations which she purports to interpret, Dr. Plunkett's opinions that Bravelle was out of specification, adulterated, and misbranded are unreliable and should be excluded. In addition, her opinions that Bravelle was adulterated, misbranded, or false and misleading under the FDA regulations should be excluded as inadmissible legal conclusions.").

Moreover, Plaintiffs' attempt to draw a clear line of demarcation between testimony about state tort law and FDA compliance fails. *See, e.g.*, Pls.' Opp. at 12-13 (stating, inter alia, "Sanofi's criticisms of Dr. Kessler's marketing opinions are also negated upon closer inspection—simply because an opinion contains the word 'substantial' and 'misleading' does not render it a legal conclusion."). An expert's statement that Sanofi violated federal law, even if the expert disclaims any opinion on state tort law and the Court instructs the jury not to consider it as controlling on the latter, would carry undue weight. Indeed, due to the ease with which jurors can conflate these matters, courts are concerned about the possibility of "confusion about the legal duties of the defendants" that might result through such testimony. *In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2:12-cv-07263, 2016 WL 4039329, at \*9 (E.D. Pa. July 28, 2016). And courts often "exclude[] expert testimony that employs terminology with legal import." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1325 (M.D. Fla. 2015).

The terminology used by Plaintiffs' experts carries legal import. An expert's claim that, for instance, the Taxotere label was "misleading" and "failed to adequately warn,"[3] would very likely confuse and mislead the jury. Indeed, the lengthy, broad testimony[4] that Plaintiffs seek to offer though their experts regarding Sanofi's failure to comply with FDA obligations is couched in language one would use to describe a party's liability under Louisiana tort law. The Court should therefore exclude testimony concerning Sanofi's alleged non-compliance with FDA regulations.

### D. Dr. Kessler's stature requires heightened vigilance on the above matters.

Given the great weight that jurors tend to ascribe to *any* expert, the danger presented by allowing Dr. Kessler to testify in this manner is especially evident. In addition to the academic credentials and other professional experience likely to impress jurors, he is the former commissioner of one of the best-known federal agencies—an agency charged with enforcing rules governing drug approval and safety. Allowing him to come before a jury and testify on matters within the provinces of both the Court (the legal framework by which the Plaintiffs' claims should be decided) and jury (finding facts) presents a danger not presented by most experts. Sanofi respectfully submits that the Court take the heightened danger presented by Dr. Kessler into consideration in rendering its decision.

**CONCLUSION**

For the foregoing reasons, the Court should enter an order excluding the following testimony:

---

[3] *See* Kessler Report at 88 ¶¶ 208.8, 208.11 (Ex. B to Sanofi's Omnibus Motion (Rec. Doc. 6158-2)).

[4] Plaintiffs identify at least five broad categories of legal compliance in their Response. *See* Pls.' Resp. at 11.

1. Testimony concerning the intent, motive, state of mind, or knowledge of Defendants or other entities, including "interpretation" of documents authored by Defendants or other entities as a basis for such testimony;

2. Testimony that merely repeats fact-witness testimony or other written evidence; and

3. Testimony containing legal conclusions.

Date:  July 12, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC*
*and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **July 12, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore

7