# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

---

## SANOFI DEFENDANTS' REPLY MOTION TO EXCLUDE
## EXPERT TESTIMONY ON SPECIFIC CAUSATION

---

To survive *Daubert*, Plaintiffs bore the burden of proving that their expert's specific causation opinions are reliable as to underlying data, methodology, and their link to her opinions. *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (quoting Fed. R. Evid. 702)). Instead of meeting that burden, Plaintiffs demonstrate that the opinions of their specific causation expert—now limited to dermatologist Dr. Antonella Tosti—posses the tri-fecta of unreliability:

- **Unreliable Data**: Dr. Tosti's opinions that chemotherapy caused Plaintiffs' alleged injuries are based on punch biopsies taken from Plaintiffs' scalp under parameters imposed by *Plaintiffs' counsel*, as opposed to accepted dermatopathological procedure, Claiborne Dep. 20:17–22:2, 48:1–24, Ex. A.

- **Unreliable Methodology:** As part of her differential diagnosis, Dr. Tosti failed to disclose or explain that Plaintiffs' biopsies were tested for stem cells and that the results were inconsistent with Plaintiffs' theory that chemotherapy caused Plaintiffs' injuries. Tosti Dep. Vol. III 539:22–540:1, 557:8–14, Ex. B.

- **Impermissible Link:** Most fundamentally, Dr. Tosti's ultimate opinion that Taxotere specifically—and not one of the other, co-administered chemotherapies (or any other factor)—caused Plaintiffs' alleged injuries is based *exclusively on medical literature*, without any clinical link to these individual Plaintiffs. Tosti Dep. Vol. II 485:12–19, Ex. C. Plaintiffs cite not one case where counting case reports in medical literature was deemed a reliable manner for differentially diagnosing an individual patient, because it is a methodology that does not exist. Dr. Tosti cannot reliably make the leap from case reports in the medical literature to the conclusion that Taxotere alone caused these Plaintiffs' harm, and no authority supports eliminating or "ruling out" alternative causes in this way.

Any one of these issues is grounds for excluding Plaintiffs' specific causation opinions. *Kumho*

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

In this case, Plaintiffs have always faced two essential hurdles on specific causation. First, because of their age, post-menopausal status, and years of hormone suppression treatment, both Plaintiffs face numerous risk factors for many different kinds of persistent alopecia, all of which are unrelated to their chemotherapy. *See* Rec. Doc. 6162 at 3. Thus, Plaintiffs must produce admissible expert testimony that Plaintiffs' alopecia was caused by ***their chemotherapy***, and not the multitude of other likely causes. They have not met that burden. *See infra* Parts I and II.

*Second*, even if Plaintiffs could produce admissible expert testimony that Plaintiffs' alopecia was specifically caused by chemotherapy, each Plaintiff received multiple administrations of more than one chemotherapy. *See* Rec. Doc. 6162 at 19. Therefore, Plaintiffs must ***also*** produce admissible expert testimony that Taxotere—***and not one of their other chemotherapy drugs***— caused her hair loss. Plaintiffs have not cleared this second hurdle. *See infra* Part III. As Dr. Tosti said on her first day of deposition, no one can rule out the other drugs as causes: "Q. And in your report, you do not attribute the hair loss to any specific chemotherapy drug, right? [Objection] A. ***I cannot say which drug is causing the–the hair loss, of course***. You can never make these diagnosis for any type of drug-induced hair loss[.]" Tosti Dep. Vol. I 297:24–298:6, Ex. D (emphasis added). Dr. Thompson (and every other expert in this litigation) agrees. Thompson Dep. Vol. I 50:24–51:3, Ex. E. Try as they must to overcome this dispositive problem, Plaintiffs cannot do so—the evidence simply does not exist.

## I.     THE PUNCH BIOPSIES WERE IMPERMISSIBLY LITIGATION-DRIVEN.

Plaintiffs argue that the punch biopsies taken by Dr. Claiborne (relied on by both Drs. Thompson and Tosti) were reliable for a variety of reasons, none of which meets Plaintiffs' burden of proving admissibility. *Burst*, 120 F. Supp. 3d at 550.

Dr. Tosti agreed that pathology—not trichoscopy—is the "gold standard" for diagnosing alopecia. Tosti Dep. Vol. I 65:14–16; 90:5–8 (Dr. Tosti "always wants" a biopsy to confirm a diagnosis), Ex. D.   Dr. Tosti accordingly needed reliable biopsies to reach her conclusions. Plaintiffs claim that Dr. Claiborne "ultimately" decided where to take the biopsies. They miss the defense's point.  In the real world, Dr. Claiborne would analyze a full clinical history and conduct a physical exam—which would influence his decision regarding where to biopsy. Claiborne Dep. 20:17–21:18; 41:14–45:16; 47:4–25, Ex. A.  In this case, Plaintiffs' lawyers prohibited him from doing either. *Id.*  Instead, Plaintiffs' counsel directed Dr. Claiborne to take two biopsies, one from an area that looked "normal" (whatever that means) and one from an area that looked "abnormal" (whatever that means).  Claiborne Dep. 48:1–13, Ex. A.  While Dr. Claiborne ultimately took the biopsies, he only did so *within the parameters dictated by Plaintiffs' counsel* and without following his standard practices.  Claiborne Dep. 20:17–22:2, 48:1–50:2, Ex. A.   Dr. Thompson's reading of Dr. Claiborne's pathology slides was likewise divorced from routine clinical information about the patients, rendering his ultimate diagnoses unreliable. Thompson Dep. Vol. I 45:5–16, 48:15–50:20, Ex. E.

Emblematic of these problems is that Dr. Thompson admitted that Ms. Earnest's punch biopsies have features consistent with hair loss caused by tamoxifen or aromatase inhibitors (endocrine therapies), but also admitted that *he does not know whether she takes these medications* (she does).  Thompson Dep. Vol. I 252:19–253:10, 148:19–23, Ex. E; *see also* Rec. Doc. 6162 at 3.  Plaintiffs respond that Dr. Thompson is not their causation expert.  Opp. at 10.  Dr. Tosti, however, relied on Dr. Thompson's pathology diagnoses to reach her causation conclusions, Tosti Report at 13, Ex. F, and the unreliability of Dr. Claiborne's biopsies runs to Dr. Thompson's diagnoses, and, thus, to Dr. Tosti's conclusions.

Dr. Claiborne also admitted he does not know if there are other diseases present on the women's scalps outside of where he was told to biopsy. Claiborne Dep. 48:14–18, Ex. A. Plaintiffs argue that other diseases would "necessarily appear within the sampled area, which represents the 'worst' of the alopecic condition." Opp. at 7. This is attorney guesswork, not medical judgment, which is why Plaintiffs tellingly cite no support. Plaintiffs have not met their burden of proving that Dr. Claiborne's punch biopsies were reliable. *Burst*, 120 F. Supp. 3d at 550. Because Dr. Thompson and Dr. Tosti both relied on the biopsies for their opinions, their conclusions are likewise inadmissible. *See Soden v. Freightliner Corp.*, 714 F.2d 498, 505 (5th Cir. 1983).

## II.     DR. TOSTI'S DIFFERENTIAL DIAGNOSIS WAS NOT RELIABLE.

Plaintiffs are relying on Dr. Tosti ***alone*** to opine that Taxotere caused Plaintiffs' alleged permanent alopecia. Opp. at 10. Plaintiffs spend pages of their opposition arguing that Dr. Tosti performed an appropriate differential diagnosis "ruling out other forms of alopecia" for Plaintiffs. Opp. at 18–24; Tosti Report at 22–28, Ex. F. Notably absent, however, is the undisclosed stem cell testing that delayed the current briefing schedule. *See* Sanofi's Supplement in Support of its Motion to Exclude Expert Testimony on Specific Causation, Rec. Doc. 7317. As Sanofi explained in its supplemental briefing, Dr. Tosti was required to disclose that the testing had been conducted and explain why the positive stem cell results did not undermine her conclusion. *Id.* Her failure to do so renders her opinion unreliable and inadmissible. *Konrick v. Exxon Mobil Corp.*, No. 14-524, 2016 WL 439361, at *10 (E.D. La. Feb. 4, 2016) (excluding expert who "exhibit[ed] a willingness to disregard contrary or inconsistent results").

Also absent from Dr. Tosti's purported differential diagnosis is any consideration of the relative doses of Taxotere each Plaintiff received—despite testifying that she "think[s] the literature indicates there is a dose" of Taxotere specifically associated with PCIA. *See* Tosti Report

at 22–28, Ex. F; Tosti Dep. Vol. II 346:16–25, Ex. C.  In fact, none of Plaintiffs' experts have addressed how Plaintiffs' chemotherapy dosages might have contributed to her alleged risk of permanent alopecia following chemotherapy as compared to each Plaintiffs' other risk factors.  This is particularly problematic with Ms. Earnest, whose risk factors for alopecia include being post-menopausal, long-term endocrine therapy treatment, and who began losing her hair on Adriamycin and Cyclophosphamide, before she ever took Taxotere.  *See* Rec Doc. 6162 at 3; Carinder Dep. 57:25–58:3, Ex. G.  Indeed, Dr. Tosti revealed she did not know what dosages Ms. Earnest received—testifying that she believed Ms. Earnest and Ms. Durden received the same dose of Taxotere (they did not).  Tosti Dep. Vol. II 323:12–17, 346:21–25, Ex. C; *See* Slidell Memorial Hospital Taxotere Infusion Records (Earnest's Dosing), Ex. H; Ochsner Health System (Durden's Dosing), Ex. I.  As the Fourth Circuit acknowledged, "[D]ose matters."  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 892 F.3d 624, 639–40 (4th Cir. 2018) (affirming district court's exclusion of testifying expert who failed to demonstrate that each particular *dose* of the medicine was capable of causing diabetes).  Dr. Tosti's failure to account for how dosage might contribute to Ms. Earnest's alleged risk further underscores the unreliability of her differential diagnosis.

## III.   DR. TOSTI FAILED TO RULE OUT OTHER CHEMOTHERAPY DRUGS AS CAUSING PLAINTIFFS' ALLEGED INJURY.

Even assuming that Dr. Tosti's differential diagnosis was reliable, at its conclusion, she was only able to conclude that Plaintiffs suffer from "permanent alopecia after systemic *chemotherapy*."  Tosti Report at 28 (emphasis added), Ex. F; Opp. at 18–20.  Dr. Tosti was not able to conclude that ***Taxotere***, rather than Adriamycin or Cyclophosphamide, specifically caused Plaintiffs' alleged injuries.  This is particularly notable for Ms. Earnest, who fully lost her hair after taking Adriamycin and Cyclophosphamide, but before ever receiving Taxotere.  Carinder

Dep. 57:25–58:3, Ex. G; Earnest Dep. 222:23–25, Ex. J.  Dr. Tosti's differential diagnosis accordingly does not meet Plaintiffs' burden to single out Taxotere among the other chemotherapy drugs.  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 150 F. Supp. 3d 644, 659 (D.S.C. 2015) ("If a patient's 'symptoms could have numerous causes,' the expert cannot 'simply pick[] the cause that is most advantageous to [the plaintiff's] claim.'") (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).

### A.    Reviewing Medical Literature Is Not An Accepted Methodology For Diagnosing The Specific Cause Of An Individual's Injury.

Because her purported differential diagnosis admittedly could not link Taxotere, as opposed to chemotherapies generally, as the specific cause of these Plaintiffs' injuries, Dr. Tosti relied on the "weight of the medical literature":

> Q: So what steps could you take here, and have you taken here, to rule out persistent chemotherapy-induced alopecia being caused by either Adriamycin or cyclophosphamide? [Objection] A. You know, the–the data in the literature, everything together is what the evidence is for docetaxel.

Tosti Dep. Vol. II 485:12–19, Ex. C; *see also id.* at; 457:21–25 ("I think [Ms. Earnest's] condition is caused by docetaxel because of literature evidence, because of my personal experience with patients that I've seen in my practice, and because of some publications I did on this topic in the past");[1] Opp. at 12–16.  But generic medical literature reporting cases of permanent alopecia in other patients cannot tell a doctor that Taxotere caused *these Plaintiffs'* injuries—much less meet Plaintiffs' burden of proof.  Plaintiffs cite no law to support their position.

Plaintiffs fail to recognize that case reports in the medical literature—reports about ***other***

---

[1] Dr. Tosti presumably refers to the publication she co-authored in 2011, "Permanent Alopecia After Systemic Chemotherapy: A Clinicopathological Study of 10 Cases," Ex. K.  The publication summarizes 10 individual case reports of permanent alopecia after systemic chemotherapy (four of the ten patients neither suffered from breast cancer nor were treated with Taxotere).  In other words, Dr. Tosti's "personal experience" and her "publication" are still nothing more than case reports about other individuals with other medical histories and risk factors.

*individuals*, with *other medical histories*, and *other risk factors*—are not a reliable basis for determining *specific* causation, which asks whether "a substance caused a *particular individual's* injury." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (emphasis added) (citation omitted). Yet, Dr. Tosti ultimately relies on nothing else besides the medical literature to conclude that Taxotere is specifically causing these Plaintiffs' injuries. *E.g.*, Tosti Dep. Vol. II 485:12–19, Ex. C; Opp. at 12–16.

Case reports in medical literature (to the extent they are relevant at all) are potentially relevant only to *general causation*, or "whether a substance *is capable* of causing a particular injury or condition *in the general population*." *Knight*, 482 F.3d at 351 (emphasis added) (citation omitted). Indeed, cases across the Fifth Circuit examining the reliability of case reports do so in the context of determining whether Plaintiffs have adduced reliable *general* causation evidence. *See, e.g.*, *id.* at 352–55 (affirming exclusion of expert testimony because the case controlled studies on which the expert relied for his *general causation testimony* were unreliable); *Burst*, 120 F. Supp. 3d at 552–54 (excluding expert's *general causation* testimony in part because the medical literature on which he relied was unreliable); *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 800–803 (E.D. La. 2011) (examining studies and medical literature in the context of *general causation*); *see also In re Lipitor*, 150 F. Supp. 3d at 653 (identifying "studies indicating risk" as "general causation" evidence) *aff'd* 892 F.3d 624, 642 (4th Cir. 2018).

Still, in that context, case reports are at the bottom of the scientific hierarchy because they are often confounded (*see* Rec. Doc. 6163 at 4–5) and may be considered only for "hypothesis generating" but not hypothesis testing. *Id.* (citing Pharmacoepidemiology 21-25 & Table 2.4 (Brian L. Strom ed., 4th ed. 2005)). "Hypothesis generating" evidence cannot provide a scientifically reliable basis on which to form a general causation opinion—much less an opinion

about the cause of a *specific* individual's injury.  Plaintiffs' own experts recognize that case reports are not reliable evidence of causation.  Dr. Tosti, when asked during her deposition about case reports in which Adriamycin and Cyclophosphamide (the other drugs given to Ms. Earnest) were reported with permanent alopecia, was quick to emphasize: "Case reports [are] different from evidence."  Tosti Dep. Vol. II 488:1, Ex. C.  Dr. Tosti is correct.  Plaintiffs' biostatistician (Dr. Madigan) also rejects medical literature and case reports as evidence of causation because they are not reliable.  Madigan Dep. 272:23–273:10 (explaining that he does not review published medical literature on permanent alopecia because there are only case reports in the literature, and "case reports are sort of distant, you know, whatever, contributor to any causal assessment."), Ex. L.

Even setting these reliability concerns aside, there simply is no permissible method to leap from case reports in the literature—pertaining to unknown individuals with different risk factors and medical histories—to an opinion that these two Plaintiffs suffer from permanent alopecia caused by Taxotere, as opposed to other chemotherapy drugs (or other likely causes).  *See Comardell v. Penn. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015) (excluding specific causation testimony where expert leapt from the conclusion that because there was no known safe level of asbestos exposure, if the plaintiff had been exposed at all, the asbestos necessarily caused his cancer); *see also Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 563–64 (E.D. La. 2015); *In re Lipitor*, 150 F. Supp. 3d at 653 (excluding specific causation expert testimony where she "offer[ed] no data or facts to make the leap from a possibility to a probability" that the substance caused the injury).[2]  Plaintiffs do not cite a single case where tabulating case

---

[2] Plaintiffs also argue that "[f]or this alternative causation to be valid, Sanofi would have to demonstrate that Dr. Tosti overlooked reliable evidence that cyclophosphamide and/or Adriamycin are casually associated with PCIA when administered without Taxotere."  Opp. at 14.  But the burden is on Plaintiffs, not Sanofi.  *Burst*, 120 F. Supp. 3d at 550.  Regardless, Plaintiffs ignore that Cyclophosphamide and Adriamycin—as their own experts have acknowledged— have reported cases of permanent alopecia.  *See e.g.* Opp. at 14 n.8 (citing cases of permanent alopecia in patients on Adriamycin and Cyclophosphamide without Taxotere); Plunkett Report at 20, 23 Ex. O.

reports in the literature was deemed an appropriate method for diagnosing the cause of a patient's illness compared to other causes also reported in the same medical literature.  With no such support, Plaintiffs fail to carry their burden.

### B.      Dr. Tosti's Conclusions Based On The Medical Literature Constitutes An Impermissible One-Size-Fits-All Approach.

Not only are case reports an impermissible basis to assess specific causation, they provide no basis to conclude that Taxotere—and not Adriamycin or Cyclophosphamide—caused Plaintiffs' injuries.  Dr. Tosti admitted on the first day of her deposition that no one can rule out the other drugs as possible causes:  "Q. And in your report, you do not attribute the hair loss to any specific chemotherapy drug, right? [Objection] A. *I cannot say which drug is causing the–the hair loss, of course*.  You can never make these diagnosis for any type of drug-induced hair loss[.]"  Tosti Dep. Vol. I 297:24–298:6, Ex. D (emphasis added).  Plaintiffs try, but fail, to overcome this decisive admission.  They cannot do so, because her admission is correct.

Plaintiffs acknowledge that in most of the literature cited by Dr. Tosti, "alopecia [also] appeared in non-Taxotere regimens."  Opp. at 14; *see also* Opp. at 14 n.8 (citing literature cases of permanent alopecia reported in patients who received Adriamycin and Cyclophosphamide regimens without Taxotere).  Indeed, in Dr. Tosti's most recent publication (published after initial motion deadlines), she discusses reports of permanent alopecia reportedly caused by endocrine therapy *after* chemotherapy as opposed to the chemotherapy itself—including reports of endocrine therapy-induced alopecia after chemotherapy (EIAC) associated with the same therapy Ms. Earnest has been taking for the last eight years.  *See* Freites-Martinez at 3 (reporting 21 cases of EIAC with Anastrozole, the generic name for Arimidex), Ex. M, Earnest PFS§ VII.8, Ex. N.  Plaintiffs contend that Dr. Tosti's Taxotere opinion is nevertheless reliable because there is a "disproportionate incidence" of alopecia with Taxotere regimens in the literature.  Opp. 14.

Notably, Dr. Tosti failed to consider or mention her recent publication, which reported higher incidences of PCIA following treatment with Paclitaxel (Taxol) than with Taxotere.  *See* Freites-Martinez at 3, Ex. M (Paclitaxel (47/98), Taxotere (31/98)).   Regardless, this is another impermissible leap.  Dr. Tosti cannot reliably conclude that simply because she believes there are ***more*** cases of permanent alopecia purportedly associated with Taxotere, ***these Plaintiffs*** suffer from permanent alopecia caused by Taxotere.  *See Comardell*, 76 F. Supp. 3d at 634; *see also Vedros*, 119 F. Supp. at 563; *In re Lipitor*, 150 F. Supp. 3d at 653.  Dr. Tosti is making a "blanket specific causation opinion [that] is not based on or tied to the specific facts and circumstances of" Plaintiffs' case.  *Comardell*, 76 F. Supp. 3d at 634.  Indeed, per Dr. Tosti's methodology, no specific causation analysis is necessary for any future Plaintiff—if the Plaintiff complains of permanent alopecia and the Plaintiff received a Taxotere-containing regimen, according to Dr. Tosti, Taxotere alone was the cause.  Dr. Tosti provides no principled, clinical basis to distinguish these Plaintiffs from those reported in the literature to have lost their hair while taking only an Adriamycin/Cyclophosphamide regimen.  "[S]uch a one-size-fits-all approach" is not reliable expert testimony accepted in this Court.  *Id.*  Plaintiffs again cite no legal support for their position.

## CONCLUSION

Plaintiffs failed to carry their burden to prove that their experts' specific causation opinions are admissible.  As stated in Sanofi's Motion to Exclude Expert Testimony on Specific Causation, Rec. Doc. 6162, and Supplement, Rec. Doc. 7317, the Court should exclude the expert opinions of Dr. Thompson and Dr. Tosti under the Federal Rules of Evidence and *Daubert*.

 Date: July 12, 2019

Respectfully submitted,


*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and*
*Sanofi U.S. Services Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on **July 12, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.


/s/ *Douglas J. Moore*
Douglas J. Moore