UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Earnest v. Sanofi S.A., et al., 16-17144

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE DR. SHAPIRO'S AND DR. SMART'S STEM CELL OPINIONS

No expert in this MDL believes that stem cell staining, positive or negative, has "anything to do with PCIA."[1] There is simply "no established evidence in the literature" to support such an opinion.[2]

Sanofi's opposition brief cannot come to grips with that reality. Sanofi instead argues that its experts Dr. Smart and Dr. Shapiro have experience looking at tissue stains to see if stem cells are present. But Dr. Smart stated in no uncertain terms that the presence of stem cells has nothing do to with PCIA.[3] And Dr. Shapiro stated that he would defer to Dr. Smart because he does not know whether the presence or absence of stem cells tells you anything about whether permanent hair loss was caused by Taxotere.

Sanofi's opposition brief is blind to reality in another way. Sanofi contends that Plaintiffs' experts believe that stem cell staining can "validate" the cause of Plaintiffs' permanent hair loss, and that is why these experts stained Plaintiffs' tissue. This is not true. After

---

[1] Exhibit B to Mot., Rec. Doc. 7322-3, "Smart Dep.," 159:10-21, 160:13-23; Exhibit A to Mot., Rec. Doc. 7322-2, "Shapiro Dep." 211:17-213:23, 215:24-216:12, 217:17-219:21.

[2] Id.

[3] Id.

1

postponing the trial date for six months for additional discovery, the record is unequivocal that the presence of stem cells has nothing do to with PCIA, and no stem cell "study" was undertaken trying to prove otherwise.

In the final analysis, whether stem cells are present or absent has no bearing on causation because no expert is willing to testify that "stem cells being present have anything to do with PCIA." Id.  Testimony about stem cell staining thus is not relevant to causation. Further, there is no basis to conclude that the presence or absence of stem cells reliably shows anything about causation. For these and the additional reasons discussed in Plaintiffs' motion to exclude the testimony of Dr. Shapiro and Dr. Smart—namely, lack of methodology, prejudice, and confusion—the Court should grant the motion.

## ARGUMENT

Sanofi's experts' opinions are irrelevant, not based on reliable science and do not address any fact in issue. Both Dr. Smart and Dr. Shapiro fail to articulate *any* methodology for reaching their opinions. As a result, the analytical gap between the facts and data and the experts' is too great to survive FRE 702 scrutiny. Since Dr. Shapiro and Dr. Smart are not qualified to render the opinions expressed in their supplemental reports, and their stem cell opinions lack any indicia of reliability, their supplemental opinions should be excluded in their entirety.

### I. Dr. Shapiro's and Dr. Smart's Testimony Does Not Make Any Fact More or Less Probable and Thus Is Irrelevant and Excludable.

In *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002), a Plaintiff who contracted salmonella sued a drug manufacturer claiming that the infection was caused by its drug. An orthopedist testified as Plaintiff's expert on causation. The Fifth Circuit affirmed the exclusion of this expert under *Daubert* because the doctor's testimony was "perfectly equivocal"; he could

2

not conclude that it was more likely than not that the drug caused Plaintiff's infection. *Id*. at 245. "A perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence." *Id*. (footnote omitted).

Similar to *Pipitone*, Dr. Shapiro has testified that he cannot offer an opinion on what stem cell staining, positive or negative, means and that he must rely on Dr. Smart.[4] And Dr. Smart has testified that stem cell staining, positive or negative, does not have anything to do with PCIA.[5] These opinions do not make any fact about causation more or less probable and thus their testimony about stem cell staining is irrelevant and should be excluded.

**II.    Dr. Shapiro and Dr. Smart Are Not Qualified to Render the Opinions Offered**

As stated in Plaintiff's initial memorandum, Dr. Shapiro and Dr. Smart both admit that they are not experts in follicular stem cells.[6] Neither establishes any methodology to tie any facts to their respective opinions, and they cite no scientific authority to support their supplemental opinions.[7] And Dr. Shapiro and Dr. Smart's reports do not address the known limitations with stem cell staining, although they do concede to the limitations in their depositions.[8] Instead Sanofi contends its experts are offering opinions that the stem cell staining does not support "Plaintiffs' stem-cell theory." A key problem with Sanofi's argument is that Plaintiff is not

---

[4] Shapiro Dep. 215:24-216:12, 211:17-213:23, 217:17-219:21.

[5] Smart Dep. 162:8-19.

[6] Shapiro Dep. 209:20-23; 211:3-9; Smart Dep. 156:23-157:1.

[7] Exhibit C to Mot., Rec. Doc. 7322-4, "Materials Reviewed by Dr. Shapiro for Supplemental Expert Report;" Exhibit D to Mot., Rec. Doc. 7322-5, "Materials Reviewed by Dr. Smart for Supplemental Expert Report." Smart Dep. 159:10-21; 160:13-23.

[8] Exhibit E to Mot., Rec. Doc. 7322-6, "Shapiro Supplemental Report" at 4-5; Shapiro Dep. 212:20-214:10; Exhibit F to Mot., Rec. Doc. 7322-7, "Smart Supplemental Report" at 3, 7 and Exhibit B, Surgical Pathology Reports of Dr. Smart;" Smart Dep. 172:2-7.

advancing a "stem-cell theory" of causation. Regardless, Dr. Shapiro and Dr. Smart admit that it is unknown whether a positive result from staining with cytokeratin 15 and Ki-67 has any bearing on a patient's permanent chemotherapy induced hair loss.[9]

Dr. Shapiro clearly and unambiguously admits he is not qualified to offer any opinions about the pathology slides stained with cytokeratin 15 and Ki-67.[10] Sanofi's expert dermatopathologist, Dr. Smart, concedes that she lacks the expertise to say whether a positive or negative staining result means anything in terms of a patient's permanent chemotherapy induced hair loss.[11] She also does not consider herself to be an expert in stem cells of the hair follicle.[12]

Dr. Shapiro and Dr. Smart do not possess scientific, technical or other specialized knowledge that would assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. They are unqualified to offer any opinion regarding the stem cell staining done on Plaintiffs in this litigation, including any interpretation of the results and its relation to Plaintiff's hair loss. And again, none of Plaintiff's experts will testify that stem cell damage is the basis for any causation theory.[13]

---

[9] Shapiro Dep. 211:17-212:6; Smart Dep. 159:10-21; 160:13-23.

[10] Shapiro Dep. 215:24-216:17. ("I would have to defer to a dermatopathologist, really. I'm a dermatologist. Not a stem cell expert. I'm not a stain expert. This is not what I do. I have never ordered that test in over three decades. I can only see somebody ordering it if they're looking for stem cells. One would have to ask a dermatopathologist what they thought. I am not an expert")

[11] Smart Dep. 162:8-19 ("[Y]ou do not have an opinion about whether the positive staining that you read, either on the CK15 or the Ki67, has any implications in the diagnosis of whether or not these patients have PCIA. Correct? A. So that is correct because there isn't any established mechanism in the literature.").

[12] Smart Dep. 156:23-157:1.

[13] The biologically plausible theory of stem cell involvement has been a theory commented upon in the scientific literature for over a decade, and while Plaintiff's experts recognize this theory is set out in the scientific literature they also, like Sanofi's experts, recognize it has not risen to the level of a proven fact through scientific study. In fact, both Dr. Shapiro and Dr. Smart either cite to or list the following scientific articles that support the position that stem cell involvement in chemotherapy-induced permanent alopecia is biologically plausible, but presently

### III.    Dr. Shapiro and Dr. Smart's Opinions are Unsupported and Unreliable

Dr. Shapiro and Dr. Smart do not articulate any methodology whatsoever for how they arrived at their opinions, or whether their opinions are supported by any scientifically recognized authority, such as medical textbooks or scientific/medical journal articles. Dr. Shapiro testified he did not perform any literature searches and he expressly denied any expertise on this topic.[14] While Dr. Smart did perform PubMed searches, however, she could not locate any peer-reviewed literature looking at cytokeratin 15 staining or Ki67 staining and its association with PCIA.[15]

Dr. Shapiro states in his report:

> "It is my opinion to a reasonable degree of medical probability that the biopsy slides stained by Cytokeratin 15 and Ki-67, as described in the Surgical Pathology Report below, showed present and proliferating <u>stem cells in the hair follicle bulge</u> and do not support a finding of permanent alopecia after systemic chemotherapy, as described by Dr. Tosti."[16] (underline added)

---

theoretical: Kluger, et al., Annals of Oncology, Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel: a prospective study of 20 patients, vol. 23, no. 11, p. 2882. "The pathophysiology of this permanent alopecia remains unknown, with the hypothesis involving toxic damage to stem cells. . ."; Miteva, et al., Am J Dermatopathol Volume 33, Number 4 (June 2011), Permanent Alopecia After Systemic Chemotherapy: A Clinicopathological Study of 10 Cases. "Another hypothesis includes reduction of the stem cells' population in the bulge or papilla. It has been suggested that after the acute damage of the matrix keratinocytes by the chemotherapy, the keratinocytes die in the hypodermis and the remnants of the hair matrix fail to reestablish a contact with underlying dermal papilla." [citing Tran, D, et al.; Austral J Dermatol., 2000;41: 106-108.]; and Tallon, et al., J Amer Ac Derm. (2010); REV 5.0 DTD; YMJD6393_proof; 10 May 2010. "It is postulated that permanent damage to the hair follicle may result from direct toxicity of high-dose chemotherapy on stem cells or hair matrix cells, or separation of the matrix cells from the dermal papilla." It is worth mentioning that Dr. Lynne Goldberg is a co-author on the Tallon, et al. article, and that Dr. Goldberg is a non-testifying, consulting expert for Sanofi. So, while Sanofi's current testifying experts admit to their separate and respective lack of qualifications to offer the opinions included in their supplemental reports, Sanofi's non-testifying expert's published work supports the PSC's position that stem cell involvement in permanent alopecia, while recognized as a biologically plausible mechanism, remains largely theoretical.

[14] Shapiro Dep. 211:17 – 212:6

[15] Smart Dep. 160:13 – 161:3; 183:5-19.

[16] Shapiro Supplemental Report, par. 6

However, when pressed on this opinion in his deposition, he acknowledged that he does not know if stem cell staining is reliable, stating he is a dermatologist, not a stem cell expert, and that he would defer to a dermatopathologist.[17] He offers no explanation in his report or deposition to tie his opinion to any methodology or scientific authority.

While Dr. Smart clearly testified that "there's no established evidence in the literature to state whether or not – you know, what the mechanism of action, whether or not the stem cells being present or absent have anything to do with PCIA," she later testified thusly:

> Q. Have you seen peer-reviewed literature that discusses that cytokeratin 15 is a reliable stain to determine if stem cells are present in the bulge region of the hair follicle?
> A. Yes.[18]

Yet, when asked why she did not include any of that supporting authority in her supplemental report, she conceded there was "not actually a good reason for that. I mean, I did like a quick literature search, and, I mean, I looked up articles, but when I was -- there's no good reason for me not citing in the report."[19]

Sanofi has made no attempt to supplement its experts' failures, which is telling. Importantly for both Dr. Smart's testimony, and Dr. Shapiro's reliance on Dr. Smart's supplemental surgical pathology report, Dr. Smart's supplemental report does not state that any staining performed by Dr. Thompson identified active stem cells in the hair follicle bulge.[20] Dr. Shapiro's opinion as stated in his supplemental report goes beyond Dr. Smart's pathology findings, and is otherwise completely unsupported. Further, although Dr. Smart had access to

---

[17] Shapiro Dep. 215:24 – 216:12.

[18] Exhibit E to Defs' Opp, Rec. Doc. 7473-5, "Smart Dep. Vol. II" 181:21 – 182:1.

[19] Smart Dep. 183:5 – 19.

[20] Smart Supplemental Report and Exhibit B, Surgical Pathology Reports of Dr. Smart.

the Plaintiff's pathology material since November 9, 2018 – including cut but unstained slides and more than 50% of the Plaintiffs' raw pathology material – she never suggested staining with cytokeratin 15 or Ki-67, "[b]ecause there's no proven mechanism or literature that states, okay, this is the exact cause of this permanent chemotherapy-induced alopecia. *So, if it's not proven in the literature, doing the stains wouldn't really add or, you know, subtract from my initial H&E diagnosis.*"[21]

On the one hand, when asked by Plaintiff's counsel, Dr. Smart tellingly explained that she did not suggest stem cell staining because there is no reliable methodology in the literature; yet, on the other, when being led by Sanofi's counsel, she agrees to "having seen" peer-reviewed literature directly relevant to this issue. But Dr. Smart has no excuse for not including critical support for the opinions in her supplemental report, or at her deposition, and Sanofi has made no attempt to do so since. And Dr. Smart's failure, without any attempt to correct it, renders her opinion nothing more than *ipsi dixit*, without any basis for offering her opinion.

Dr. Shapiro's and Dr. Smart's opinions that Plaintiffs' hair loss is not permanent because of the positive stem cell staining is unreliable because they reach this opinion using no discernable methodology. Without proper expertise, and without a discernable methodology, neither expert can adequately apply any methodology to the facts to render an opinion. This is a clear example of experts offering opinions without *any* scientific basis for doing so. Sanofi bears the burden of establishing its experts are qualified to render the opinions offered, and that the experts applied a sound methodology. Sanofi fails to do either, and the Court's inquiry should stop here.  Sanofi's argument that Plaintiff's challenge is to the experts' "specialization" is

---

[21] Smart Dep. 155:12 – 156:4 (italics added)

simply incorrect. The challenge is to the experts' total lack of qualifications, and the absence of any recognized methodology.

Sanofi's argument at p. 5 of its opposition that Dr. Thompson's staining of pathology slides is "good grounds based on what is known," and somehow evidences Sanofi's experts' reliability, misses the mark for which Sanofi references the testimony. *See. Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 590 (1993). First, Sanofi quotes only five words of a twelve-line answer offered by Dr. Thompson. Even a generous reading of Dr. Thompson's testimony does not lead to the conclusion that he concedes that cytokeratin 15 and Ki-67 are reliable methods for detecting stem cell damage in the hair follicle, as Sanofi argues.[22] Sanofi seeks to stretch Dr. Thompson's testimony beyond any reasonable bounds to make an improper argument. A fair reading of Dr. Thompson's testimony demonstrates that the stem cell staining was purely academic, and any usefulness would only lead to further study, not to a diagnosis of PCIA.[23] It is equally clear that Dr. Thompson's investigation was not to test for the presence or absence of follicle stem cells, as Sanofi continues to argue.[24]

Sanofi further conflates reference to *stem* cells to be synonymous with *follicular stem cells*. This is scientifically improper. In this regard Sanofi fails to recognize the limitations of the stains at issue, but fortunately its experts do. Dr. Smart concedes that cells other than follicular

---

[22] Exhibit B to Defs' Opp., Rec. Doc. 7473-2, "Thompson Dep. Vol. III" and Exhibit C, C. Thompson Dep. (III), 452:1 – 453:4.

[23] Exhibit C, C. Thompson Dep. (III), 492:10 – 494:15. ("So if the Cytokeratin tested negative in the pathology samples for [Plaintiffs], why would've you pursued it further? Because it needs to be investigated in a controlled study with positive and negative controls. You can't publish something off of six biopsies from three patients. It's quite a bit more complicated than that. Q. And in doing that additional research, would've you been seeking to confirm your hypothesis for why chemotherapy may cause ongoing alopecia after the completion of chemotherapy? It could eventually lead to that, but my initial investigation, which would probably take years, would be to turn it into a diagnostic tool.")

[24] Exhibit C, C. Thompson Dep. (III), 410:13 – 412:1.

stem cells can appear as "positive" when stained with Cytokeratin-15.[25] She also concedes that Ki-67 is not a reliable marker for stem cells.[26] Both of these concessions are entirely consistent with Dr. Thompson's testimony.[27] Because neither stain is specific to the hair follicle bulge, neither adds important, relevant, or probative information to her analysis of Plaintiffs' hair loss.[28]

Finally, the fact that Dr. Feigal recognizes that the scientific community has postulated on the involvement of stem cell destruction or interruption in the scientific literature for over a decade is of no consequence to Dr. Shapiro or Dr. Smart's ability to offer the opinions they attempt to offer. *See, footnote 11, infra*. There is a world of difference between Plaintiff's expert recognizing a biologically plausible theory repeated in peer reviewed, scientific literature and Sanofi offering experts in an attempt to mislead the factfinder, and seeking to allow experts to testify outside of their expertise, and offering opinions that are unsupported by any scientific authority. Particularly where Sanofi's own experts agree with Plaintiff's experts on the limitations of the available science on staining with cytokeratin 15 and Ki-67.[29]

Neither Dr. Shapiro nor Dr. Smart are qualified to offer to opine on stem staining and its evidentiary value in diagnosing PCIA. Neither Dr. Shapiro nor Dr. Smart have articulated any methodology to apply to the facts in this case that would render their opinions reliable. Because

---

[25] Smart Dep. and Exhibit A, Smart Dep. (II) 171:21 – 172:7.

[26] Smart Dep. 182:11-18 Exhibit D, Love Dep. (III) 434:11 – 435:4.

[27] Exhibit C, C. Thompson Dep. (III), 398:2 – 400:24. (Cytokeratin 15 is "not a definitive stem cell marker. It stains other cells" and "Ki-67 hits any cell that's growing.")

[28] Smart Dep. 155:12-20; 156:5-19; see also, Exhibit D, Love Dep. (III) 453:1 – 454:8.

[29] Dr. Thompson, Dr. Smart and Dr. Love all agree that cytokeratin 15 will stain cells other than follicular stem cells, and that Ki-67 will show any cell that is growing – including non-stem cells. *See.* Exhibit C, C. Thompson Depo. (III) 398:2 – 400:24; Smart Dep. and Exhibit A, Smart Dep. (II) 171:21 – 172:7 and Smart Dep. 182:11-18; and Exhibit D, Love Dep. (III) 434:11 – 435:4. Dr. Shapiro offers no opinion concerning either of the stains, instead deferring to Dr. Smart.

their opinions are unsupported, and considering the experts admit to their lack expertise in this area, their opinions must be excluded under Rule 702.

## **CONCLUSION**

For the foregoing reasons, Dr. Shapiro and Dr. Smart should be precluded from testifying about stem cells generally and specifically as it relates to this litigation, including interpreting any stem cell staining performed on Plaintiffs' pathology slides, and any stem cell study Sanofi alleges was conducted by the PSC.

 Dated: July 12, 2019

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

Respectfully submitted:

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

# PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                         */s/ Dawn M. Barrios*
                                                        DAWN M. BARRIOS