**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                     SECTION "H" (5)
THIS DOCUMENT RELATES TO
ALL CASES

<u>REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
COMPLIANCE WITH DISCOVERY ORDER REGARDING 30(b)(6) DEPOSITIONS</u>

MAY IT PLEASE THE COURT:

Sanofi attempts to redefine and summarily limit the subject matter of Topic 2[1] in spite of the Court's February 6, 2019 Order (Rec. Doc. 6100) defining its scope. In its Opposition, Sanofi prefers to ignore the Court's approved language of the Notice, i.e., all communications regarding "possibility of legal action for ongoing alopecia;" instead, Sanofi cites the modifier for the second clause of the Court-Ordered topic, i.e., "Risk Management," and repeats the bates number of the exemplar document, in a tortured effort to prevent discovery of all communications related to potential or threatened litigation. In fact, apart from one forced reference in its first sentence when Sanofi cites to the language in the Notice, the rest of the entire Opposition ignores the "possibility of legal action for ongoing alopecia" language. Sanofi's counsel improperly prepared its designee to do exactly the same in his preparation and testimony during the deposition.

This Court has already ruled on the discoverability of this Topic. In both the hearing on February 6, 2019 and in the Court's Order on the same date, this Court stated that "communications between Sanofi and patients is also appropriate subject matter for 30(b)(6) testimony including

---

[1] (2)  Communications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia similar to those identified in Sanofi_05442744, and any reviews, investigations, reports of cases or incidents related to ongoing alopecia by "Risk Management" as noted in Sanofi_05442744. Questions concerning retention policies for such documents are outside the scope of this order.

1

whether and how they were documented."[2]  Contrary to Sanofi's argument, the Court did not limit the communications to only those within the U.S. Risk Management.[3]

Sanofi blocked discovery of any and all incoming communications from patients related to the possibility of legal action (even those that went *to* Risk Management) claiming that Your Honor found them to be outside the scope and "not relevant".[4]  Further, Sanofi frustrated the purpose of this deposition by deliberately excluding from the witness' preparation all documents related to patient communications that were referred directly to Sanofi's Legal Department.

Sanofi never filed a Motion for Protective Order, a Motion for Reconsideration, or an Appeal pursuant to Rule 72 regarding the Court's February 6, 2019 Order.  Instead, Sanofi argues that an Order denying the production of additional Ledlie documents (issued nearly four months later) severely limited the scope of the February 6th Order.[5] In the May 30, 2019 Order, this Court found that "additional documents concerning *this foreign non-party's claim*" were outside the scope for reasons clearly specific to Shirley Ledlie.  (*See* Rec. Doc. 7276 (emphasis added)).

Because Sanofi ignores the clear language in the Court-authorized deposition regarding communications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia, and improperly construes the "Risk Management" modifier in the second clause of the scope defined in Topic 2, the PSC's motion to compel should be granted.

I.     **Sanofi's Interpretation of the Scope of the Deposition contradicts the Record, given the Clarifications made by the Court during the February 6, 2019 Hearing.**

---

[2] Ex. A, 2-6-19 Hearing Transcript, 5:12-14.
[3] The Court correctly recalled one email from a patient threatening litigation and noted that we do not know if there are more. (Feb. 6, 2019 Transcript, 8:9-12.)  During the April 18, 2018 telephonic hearing, the Court allowed discovery related to a patient communication to the company about Taxotere and permanent alopecia (who at Sanofi received it, when and how it was it handled) over Sanofi's objection and attempt to claw back the document.
[4] Ex. B, 6-7-19 Transcript, 198:6-21, and 214:8-219:2.
[5] In so doing, Sanofi also violates its responsibilities to cooperate with production of Foreign source discovery under the November 3, 2017 Stipulation of Terms Related to Defendants, Sanofi and Aventis Pharma S.A. (French Entities) (Rec. Doc. 1072)

Sanofi cannot now claim it did not understand Topic 2. During the February 6, 2019 hearing, the Court provided extensive clarification and examples of the subject matter permitted. There was no limitation placed on communications that occurred only after a case was referred to Sanofi's Risk Management Department. Further, no limitation was placed on communications that were reported from the United States as opposed to any other country.

It has taken more than seven months to conduct the incremental discovery the Court anticipated[6] and approved, yet Sanofi remains steadfast in blocking even the Ordered steps of this discovery, which was clearly explained by the Court:

> To be clear, I think that it is appropriate to ask a 30(b)(6) designee about those communications and how they were handled, but not about the retention policies, forms, or other sorts of documentation that would have been created as a result of those communications. (*Id.* At 5:21-23.)
> . . .
> Now, it may be that after asking these witnesses questions about any of these topics, the PSC may actually identify documents they think should exist and no longer exist or haven't been produced, in which case the procedures of PTO 49 would be triggered.
> The issue there is Sanofi continues to complain that the PSC has not identified particular documents they think are missing or have been destroyed when they shouldn't have been or been destroyed when they should have been but still weren't around.  This is the only way – or at least the most appropriate way that I can think of – to allow [the PSC](sic) to conduct discovery on the substance of these matters to determine how they would have been documented and whether those documents should still exist.
> I think without that context and without the ability to ask about how these matters were handled, it's not possible for a lawyer to know what they are missing.  If they don't know what should have existed in the first place, they can't come to you and tell you it's missing, which is why you keep having these conversations amongst the lawyers that we think we don't have everything, and Sanofi's response is, Well, you have to tell us exactly what you don't have.  They don't know what they don't have.  And I don't know where this process goes from here, but I think these are subject matters that they are entitled to ask prepared corporate designees about. (*Id.* at 6:5-7:4.)

---

[6] Ex. C, Dec. 19, 2018 Hearing Transcript, 11:9-14 "THE COURT:  I've read it all.  We've been down this road. And there – there is perhaps an incremental approach to what discovery is going to be allowed based on what's happening with the discovery that I've already ordered or allowed to take place.  There are benchmarks they can hit that will cause me to allow them to do additional discovery."

Instead of following the discovery process ordered by the Court, Sanofi claims (again) this is "discovery on discovery" and that Sanofi is "not aware of any communications with the legal department" that would trigger a duty to preserve.  (Opposition pp. 3-4.)  In fact, 10 of the 13 cases Sanofi cites in its Opposition are in a footnote and cited to support its argument that these communications (that have yet to be identified, much less produced) did not put Sanofi on notice of potential litigation that would trigger the duty to preserve. (*Id.*, fn 3, pp. 3-4.)  This argument puts the cart before the horse.  Sanofi skips the discovery step ordered by the Court and again attempts to use its legal argument and strained interpretation to thwart Court-Ordered discovery.

The Court was well within its discretion to order Sanofi to respond to discovery about what the company did to search for responsive documents. In a similar case, the defendant argued "discovery about discovery" was irrelevant and that counsel's representations addressed any concerns about whether they made a good faith effort to locate and produce all relevant communications. *Ruiz-Bueno v. Scott*, 2013 WL 6055402, *1, at *5-6 (S.D. Ohio Nov. 15, 2013). The court found that the dispute could not be "discussed intelligently either between counsel or by the Court in the absence of shared information about the nature of the search." (*Id.* at *7.) The court further considered the defendant's privilege argument, finding that discovery about what a party has done to search for and produce ESI does not "ordinarily or necessary entail revealing confidential client communications."  (*Id.* at *8.)

The Court has already ordered that arguments about trigger date evidence and objections to discovery related to the conduct of the legal department are premature.  (Ex. A, 2-6-19 Hearing Transcript, 10:25-12:11.)  The Court's response was clear:

> I don't know if there are additional communications beyond that which has already been identified. All I'm saying is if there is, it's an appropriate topic for discovery. (*Id.* 12:1-4.)

. . .
THE COURT:  I think that they're entitled to – they're entitled to conduct that basic discovery.  We're not – if they want to argue about trigger dates and legal holds and the decision of the legal department, that's going to come down the road and we're not there yet.  I hope that I made that clear.
MR. OOT:  Okay. So just for clarity, Your Honor, the fact issues around the emails associated with the possibility of litigation –
THE COURT:  Who saw them, what do you remember about them, what did you do in response, who did you talk to – all of those things.  I mean, that is basic discovery that I think they are entitled to obtain.  (*Id.* at 13:6-18.)

Despite the Court's clarifications on the record and its Order, Sanofi argues the language of the Topic was unclear and that the PSC had the responsibility to designate the topic with "painstaking specificity."  To support that contention, Sanofi cites to *LLOG Exploration v. Fed. Flange, Inc*., No. 17-02323, 2018 WL 6326449, at 3* (E.D. La. Dec. 4, 2018).  Sanofi's reference to this case however, is misplaced.  *LLOG Exploration* involved a disagreement between the parties with respect to the time period a witness should be prepared to testify about, which was resolved by the Court.  In this case, the Court considered the notice and clearly explained the scope of the deposition, including examples of areas of inquiry permitted during the status conference on February 6, 2019, and issued its subsequent Order restating the subject matter of the deposition.

Further, Sanofi has failed its obligations under Rule 30(b)6) as described in the same sentence Sanofi cites from *LLOG Exploration*: "The responding party must make a conscientious, good-faith endeavor to designate the persons having knowledge of the matters sought and to prepare those persons in order that they can answer fully, completely, and in a non-evasive manner, the questions as to the relevant subject matters. [Citation omitted.]"  *Id.* at 6*.  The Court clearly explained the process of discovery ordered to go forward, and Sanofi failed to prepare a witness to provide the factual evidence known to the company on the subject matter ordered by the Court.

Sanofi also argues that its May 28, 2019 submission opposing the production of additional Ledlie documents revealed Sanofi's interpretation of how Topic 2 was limited, and that the Court

5

agreed.[7] This is simply not true. Communications between Sanofi and other Taxotere patients relating to the possibility of legal action for ongoing alopecia were not at issue in May.  Nor was there was discussion during the February 6, 2019 hearing about these limitations, and they are absent from the Court's Order and Notice. Sanofi's internal documents include evidence of other women from other countries communicating about Taxotere and permanent hair loss, including women in Canada, Australia, Germany, not just Ms. Ledlie in France. These communications between Sanofi and patients outside the U.S. relating to the possibility of legal action for ongoing alopecia are highly relevant and discoverable under Fed. R. Civ. Proc. 26(b)(1), 30(b)(6) and this Court's Order.  The Court's May 30, 2019 Order denied the PSC's request for additional Ledlie-specific documents. This discreet ruling denying additional documents related to *this foreign non-party's claim* does not amend previous Orders and Stipulations entered in this litigation.[8]

## II.   Sanofi's Refusal to Provide Facts Establishing Its Knowledge of Patient Communications Involving Potential or Threatened Litigation, and How Sanofi Handled Them, Violates the Court's February 6 Order.

Sanofi argues in its footnote 4 that the PSC went outside of the Court's Order by questioning the witness about excerpts from its SEIBEL database because it withdrew the "MIS topic" from the PSC's original Rule 30(b)(6) Notice served in November 2018.  As noted in its January 11, 2019 submission, the PSC had yet to obtain dates for Sanofi's witness from the Medical Information Services (MIS) department and advised of its willingness to narrow the Notice if (1) the witness (Leslie Fierro) could answer questions about MIS (including the SEIBEL call logs) and (2) Sanofi would not object to the foundation of the call logs.[9]  However, the PSC

---

[7] Sanofi Opposition at page 7.

[8] The PSC initially filed a Rule 72 Motion (Rec. Doc. 7403) out of an abundance of caution, because of Sanofi's stretched interpretation of the May 30 Order (Rec. Doc. 7276) but withdrew it on July 2, 2019 because, on closer review, it has no effect on the scope of the 30(b)(6) topic approved by this Court in its February 6 Order and this dispute is now squarely before the Court for resolution.

[9] Sanofi refused the PSC's proposal that Ms. Fierro, the Associate Vice President of the MIS Department, be designated as a Rule 30(b)(6) witness. An undesignated fact witness does not satisfy a party's obligation to provide

did not withdraw the Topic related to communications between Sanofi and patients related to the possibility of legal action for ongoing alopecia, obviously – and at least some of these communications come into the MIS department per the SOPs.  In fact, in preparation for this Rule 30(b)(6) deposition, Sanofi's counsel showed excerpts from the SEIBEL database to the witness – but did not prepare the witness to testify whether the patient reflected in the excerpt threatened legal action.  (See Ex. B, 6-7-19 Transcript, 233:10-236:10, and Ex. D, SEIBEL Excerpts from Defense Counsel, Exhibits 14 and 15 to 6-7-19 Deposition.)

The SEIBEL database per Sanofi is "the company's call center database which tracks customer service calls questions and complaints – this is the record of incoming communications." (Sanofi's 9-22-17 Disclosures.)  In response to discovery requests, Sanofi produced a report from the SEIBEL database of communications to the company related to Taxotere and ongoing alopecia. Sanofi also produced the company's internal standard operating procedures for how the employees are to handle inquiries to the company, including to which department to refer them. These SOPs consistently provide that "inquiries involving potential or threatened litigation are referred to Risk Management/Legal Department", as confirmed by Mr. Corrigan.  (See PSC's Motion to Compel, Ex. D (Exhibit 8 to 6-7-19 Deposition) and Ex. B, 6-7-19 Transcript, 135:3-18.)

During the deposition, plaintiffs' counsel did not ask about the communications recorded in SEIBEL generally.  The PSC focused only on communications involving potential or threatened litigation and whether any of communications recorded in SEIBEL were referred to Risk Management/Legal per the SOPs.  While both plaintiff and defense counsel showed the witness excepts and reports from Sanofi's SEIBEL database, it became clear that Sanofi's designated witness had not been prepared to testify about which of these communications involved potential

---

all facts known to the company pursuant to Rule 30(b)(6). (*See, Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008).

or threatened litigation - the very subject matter of the deposition. The witness wasn't sure what SEIBEL was, and he was not prepared to answer questions about which of these communications involved potential or threats of litigation or whether any were referred to either Risk Management, Legal, or both pursuant to Sanofi's SOPs. (*Id.* at 120:8-121:25 and 183:4-236:10.)

The witness had no idea what steps were taken, if any, by Sanofi to investigate communications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia; he only knows that he was provided with documents relating to two claims handled by Risk Management, one of which relates to the exemplar document in the Notice (patient Pam Kirby). (Ex. B, 6-7-19 Transcript, 105:22 – 110:23.) He has no idea how or why Sanofi found some additional documents related to these two claims (provided to counsel two days before the deposition). (*Id.* at 113:15-115:10.) He had no idea whether there are other similar claims beyond these two, or whether Sanofi's attorneys investigated whether there were additional letters from risk management to patients related to Taxotere and ongoing alopecia. (*Id.* at 167:20-171:20.)

The designee doesn't know the answer to these questions, but Sanofi does. Sanofi should be compelled to prepare a witness who can provide the following facts known to the company:

1) What Sanofi did to investigate communications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia;
2) Which of the patients' communications related to ongoing alopecia were referred to the Legal Department;
3) Which of the patients' communications related to ongoing alopecia were referred to Risk Management;
4) Which patients' communications that were referred to Risk Management were later referred to Legal.

This is Sanofi's protocol for processing these communications per it's SOPs. We do not know whether this protocol was followed for any communications reflected in the SEIBEL database or elsewhere, other than for two patients. We don't know how many patients were referred to Risk Management/Legal per the SOPs; we don't know whether the patients'

communications threatened litigation; we don't know even how or if Sanofi investigated for relevant documents. This step of discovery was clearly ordered by the Court and Sanofi should be compelled to comply.

## III. Sanofi Failed to Properly Prepare Its Designee for the Court-Ordered Subject Matter and the PSC Appropriately Preserved This Dispute for Resolution by the Court.

Sanofi attempts to justify its own disregard of the Court's Order by blaming the PSC for not stopping the deposition to seek the Court's resolution when the PSC realized the witness was improperly prepared. Yet early in the deposition, the witness testified that he was prepared on the company's protocols on how to handle these types of communications.[10] Counsel for the parties discussed the dispute regarding the ex-U.S. limitation, defense counsel stated he would not instruct the witness not to answer unless privileged, and plaintiffs' counsel agreed to go ahead to get "at least get the information that he has." (*Id.* at 45:2-49:24.)[11]

Despite testifying early on that he was prepared to testify about communications that came into the company from patients related to ongoing alopecia and to discuss how the company processed these claims through the various departments, including Legal, Mr. Corrigan did not reveal that he believed that the Court ruled the initial communications from the patients are not relevant until more than four ½ hours into the deposition. (Ex. B, 6-7-19 Transcript, 214:8-216:24.) Upon learning of this improper limitation, plaintiffs' counsel preserved the issue for resolution by the Court. (*Id.* at 218:9-219:2.) Plaintiffs did not seek the Court's intervention at

[10] Mr. Corrigan described his preparation efforts with one of Sanofi's former employees, which included "the legal process" for "various departments". (Ex. B, 6-7-19 Transcript, 75:8-14 and 76:1-8.) Further, During the first hour, when questioned whether he was aware of and willing to follow the Stipulation regarding discovery sources from Sanofi's French Entities, the witness responded that he had reviewed some documents from "a foreign source and location", but because it was outside the scope he could only provide limited information. (*Id.*at 27:10-32:23).

[11] Counsel for the parties also discussed the limitation during the first break and it became clear that the witness had not been prepared to provide facts known to the company about communications with patients outside the U.S., so calling the Court at that time would have been futile. After the first break, plaintiffs' counsel restated for the record that they would continue the deposition to get the information the witness was prepared to give and submit the dispute for Court resolution at a later time. (*Id.* at 54:20-55:10.)

that point because it had become clear that Sanofi's preparation of this witness had been severely limited and the dispute regarding the Orders of this Court and the scope of this deposition needed resolution with full briefing.  Indeed, the PSC notified the Court of the pending issue with this deposition between the designee's first and second sitting. (See PSC's Motion to Compel, Certificate of Compliance with Rule 37(a)(1). (Rec. Doc. 7463).

Finally, Sanofi's claim that plaintiffs should not have continued with the deposition ignores the breadth of discovery the parties were attempting to conduct in one day, which included both Topics 2 and 3 from the Court's February 6, 2019 Order and, even with Sanofi's severe limitations, the parties entered 46 exhibits into the record.  The PSC raised concerns ahead of time about the possibility of completing both Topics 2 and 3 within one day of testimony even with an extra hour, but agreed to do their best to complete it and, if more time was needed, to confer per CMO 9.D.1. (Ex. E, 5-5-19 Email Menzies to Ratliff.)  In the conferral conducted on June 25, 2019, the parties were unable to resolve the dispute regarding the scope and the PSC was unable to estimate the additional time needed because we don't know the number of patients whose communications and other relevant documents have been excluded under Sanofi's limitations.

## CONCLUSION

The scope of the 30(b)(6) depositions was already decided by the Court as reflected in the Record.  For the foregoing reasons, Plaintiff respectfully requests this Court grant its Motion to Compel requiring Defendant to produce and/or make available for deposition a witness who can provide the facts known to Sanofi about Topic 2.

Dated: July 15, 2019                          Respectfully submitted,


/s/ Christopher L. Coffin                      /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                 Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.               Andre Mura ((CA Bar # 298541) (on the brief)

1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*
*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400

11

New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

<div style="text-align: right">

*/s/ M. Palmer Lambert*
M. Palmer Lambert

</div>