# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)      *    16-MDL-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *    Section H
                                  *
Relates To All Cases              *    February 6, 2019
                                  *
*********************************************************************

                  REPORTER'S OFFICIAL TRANSCRIPT OF THE

                               HEARING

            BEFORE THE HONORABLE MICHAEL C. NORTH,
                 UNITED STATES MAGISTRATE JUDGE.

*********************************************************************



APPEARANCES:

For the Plaintiffs:

Emily Jeffcott, Esq.              Karen Menzies, Esq.
Palmer Lambert, Esq.              Zachary Wool, Esq.
Dawn Barrios, Esq.                David Miceli, Esq.
Kyle Bachus, Esq.                 Andre Mura, Esq.


For the Defendants:

Douglas Moore, Esq.               Beth Toberman, Esq.
Jeremiah Wikler, Esq.             Kelly Brilleaux, Esq.
Patrick Oot, Esq.                 John Olinde, Esq.




REPORTED BY:       Mary V. Thompson, RMR, FCRR
                   500 Poydras Street, Room B-275
                   New Orleans, Louisiana  70130
                   (504)589-7783
```

OFFICIAL TRANSCRIPT

```
11:24:12

11:24:31

11:24:50

11:25:15

11:25:33
```

1  forward on the nature of the follow-ups that Sanofi has already
2  testified would have occurred.
3       That deposition may include questions concerning how
4  far such follow-ups would have or should have been documented.
5       It will not concern the retention policy for those
6  documents.
7       And as I ordered at the last status conference, to the
8  extent that the PSC plans to question a witness about particular
9  ICSRs, they must identify them in advance so the witness can be
10 properly prepared to testify about the follow-ups on those
11 documents.
12      I think the communications between Sanofi and patients
13 is also an appropriate subject matter for 30(b)(6) testimony
14 including whether and how they were documented.  But, again,
15 questions about the retention policies of such documents are not
16 appropriately within the scope of that deposition.
17      Sanofi's concern seems to be that that topic, while it
18 does not specifically address retention policies, is included in
19 a deposition notice that overall and generally refers itself to
20 retention policies.
21      So to be clear, I think that it is appropriate to ask a
22 30(b)(6) designee about those communications and how they were
23 handled, but not about retention policies of any documents,
24 forms, or other sorts of documentation that would have been
25 created as a result of those communications.

OFFICIAL TRANSCRIPT

```
 1              Finally, I think that questions regarding the substance
 2   of the ten identified legacy files is also appropriate.  But,
 3   again, questions regarding the retention policies of those
 4   documents are not.
 5              Now, it may be that after asking these witnesses
 6   questions about any of these topics, the PSC may actually
 7   identify documents they think should exist and no longer exist or
 8   haven't been produced, in which case the procedures of PTO 49
 9   would be triggered.
10              The issue there is Sanofi continues to complain that
11   the PSC has not identified particular documents they think are
12   missing or have been destroyed when they shouldn't have been or
13   been destroyed when they should have been but still weren't
14   around.  This is the only way -- or at least the most appropriate
15   way that I can think of -- to allow Sanofi to conduct discovery
16   on the substance of these matters to determine how they would
17   have been documented and whether those documents should still
18   exist.
19              I think without that context and without the ability to
20   ask about how these matters were handled, it's not possible for a
21   lawyer to know what they are missing.  If they don't know what
22   should have existed in the first place, they can't come to you
23   and tell you it's missing, which is why you keep having these
24   conversations amongst the lawyers that we think we don't have
25   everything, and Sanofi's response is, Well, you have to tell us
```

Timestamps: 11:25:52, 11:26:12, 11:26:40, 11:26:56, 11:27:12

OFFICIAL TRANSCRIPT

```
 1  exactly what you don't have.  They don't know what they don't
 2  have.  And I don't know where this process goes from here, but I
 3  think these are subject matters that they are entitled to ask
 4  prepared corporate designees about.
 5          So that's how I intend to handle the request.
 6          MR. MOORE:  Your Honor, just a couple of points of
 7  clarification.
 8          I understand that you don't want to hear from us that
 9  the discovery that they are seeking now is something that should
10  have been done earlier, and I'm not going to do that.  But I will
11  ask Your Honor for a couple of clarifications, because the
12  arguments that were advanced in their papers didn't really line
13  up with the deposition notices that we were here on.
14          THE COURT:  I don't disagree with that entirely --
15          MR. MOORE:  Okay.
16          THE COURT:  -- but I am looking at the arguments that
17  are being advanced in the papers.
18          MR. MOORE:  Okay.  And so --
19          THE COURT:  I have looked at the deposition notices,
20  and what I'm trying to do is cut through the minutiae of the
21  notices and tell you-all generally what I think they are entitled
22  to ask your witness about.
23          MR. MOORE:  Okay.  And that was sort of my question.
24          As it relates to Topic No. 5, when Your Honor made your
25  statements on the record, you referred to "communications with
```

OFFICIAL TRANSCRIPT

```
 1  patients."
 2          THE COURT:  That may by the wrong terminology.  It
 3  was --
 4          MR. MOORE:  Well, no, that's what it says.
 5          THE COURT:  -- patients -- there is a -- I guess there
 6  is a -- some testimony that's developed and documents that have
 7  been produced that indicate that --
 8          MR. MOORE:  There was an e-mail, yeah.
 9          THE COURT:  There was one e-mail.  I don't know if
10  there's more than one e-mail.  I seem to recall that there have
11  been multiple communications between individuals and the company
12  over time.
13          MR. MOORE:  Right.  And so -- but Topic No. 5 was
14  "communications between you and Taxotere patients relating to the
15  possibility of legal action," and so "communications with
16  Taxotere patients" is a much broader subject than "communications
17  with Taxotere patients regarding legal action."
18          THE COURT:  I intend to limit it to as it is drafted in
19  the notice.
20          MR. MOORE:  Okay.  Right.  Understood.
21          THE COURT:  My point being -- and, of course, as I do
22  in all these situations, it's going to be reduced to writing.
23  All of this is going to be in a minute entry.
24          My intention is to make clear that I think the subject
25  matter is appropriate, but I still do not believe that a
```

OFFICIAL TRANSCRIPT

|   |   |   |
|---|---|---|
|  | 1 | to research that issue and respond to it, whether it's Kopreski |
|  | 2 | or someone else. |
|  | 3 | THE COURT:  Yes. |
|  | 4 | MR. OOT:  So a preview issue on that, Your Honor, is we |
| 11:31:29 | 5 | are currently negotiating with the plaintiffs on the time to get |
|  | 6 | those follow-ups.  In your last order, Your Honor gave us seven |
|  | 7 | days upon identification of the follow-ups.  I think we went from |
|  | 8 | 500 to 400, and to both track down and prepare a witness on 400 |
|  | 9 | follow-ups is going to be difficult. |
| 11:31:49 | 10 | THE COURT:  Okay. |
|  | 11 | MR. OOT:  So a preview for a topic that may be a topic |
|  | 12 | for the 20th is that we're going to ask for more time. |
|  | 13 | THE COURT:  I don't have a problem with that.  You |
|  | 14 | know, we have gone back and forth in this litigation with time |
| 11:32:04 | 15 | being a major problem to not being a major problem to maybe it |
|  | 16 | becomes a major problem again. |
|  | 17 | But what I don't want to have is another round of |
|  | 18 | argument about what information the PSC could not get from a |
|  | 19 | 30(b)(6) witness because they weren't prepared to answer specific |
| 11:32:24 | 20 | questions.  They've got to be -- they've got to have time to |
|  | 21 | prepare the witness to be able to answer the questions that |
|  | 22 | you-all have.  And if they need more time to do that, I'm going |
|  | 23 | to give it to them because I don't want to have to keep going |
|  | 24 | through this. |
| 11:32:37 | 25 | MR. OOT:  Your Honor, finally on Topic No. 5 related to |

|   |   |
|---|---|
| 11:32:54 | 1  the possibility of legal action, we addressed this.  They were<br>2  supposed to brief a trigger issue back in March which they never<br>3  did.<br>4      So now we've put up a witness that actually is speaking<br>5  about the document that said a possibility of legal action, or<br>6  whatever it said, and we're kind of at a loss that they didn't<br>7  sort of follow Your Honor's procedure to go file their motion on<br>8  the trigger issue so we would have a consistent idea of what that<br>9  trigger date is. |
| 11:33:11 | 10     So I think that it's plaintiffs' position that there<br>11 was this early trigger date based upon a call into a call center<br>12 and maybe an unrelated French administrative proceeding.  I don't<br>13 think that that opens the door to discovery on discovery related<br>14 to litigation hold triggers.  And I think that that's a problem |
| 11:33:31 | 15 to put up another witness that wouldn't be associated with<br>16 this --<br>17     THE COURT:  I don't know -- I don't know the extent to<br>18 which there is any information available on that topic beyond<br>19 that which has already been testified about.  I don't know.  I'm |
| 11:33:47 | 20 looking at a topic, and I'm telling you that that subject matter<br>21 is appropriate for discovery.<br>22     You're telling me there's been some discovery already.<br>23 I don't recall what was supposed to happen in March.  You'll have<br>24 to forgive me.  It's almost March of 2019 now.  I do not have a |
| 11:34:10 | 25 memory of what should have happened in the past.  I don't know |

OFFICIAL TRANSCRIPT

```
              1  if -- I don't know if there are additional communications beyond
              2  that which has already been identified.
              3          All I'm saying is if there is, it's an appropriate
              4  topic for discovery.
11:34:24      5          MR. OOT:  So our point is that at the point that it
              6  moves into a decision of the legal department of when they are
              7  issuing a legal hold or, you know, when we're sending out a
              8  litigation hold, we've already gone through that, Your Honor.  We
              9  have already tread that ground, and we are going to object to the
11:34:39     10  sort of discovery related to the conduct of the legal department
             11  in this case.
             12          THE COURT:  Well, what's left to ask about?
             13          MS. MENZIES:  You said it precisely -- and I know he
             14  wants to keep going back to this argument of whether there's
11:34:51     15  trigger or not and then we are trying to establish the
             16  spoliation, but we are not.  We actually are trying to get it --
             17  and you said it exactly right, that we don't know what's missing
             18  or whether anything is missing until we have an opportunity to
             19  talk to these people about that.
11:35:03     20          We tried to do that with two of the witnesses.  There
             21  are -- I think there are around 14 or 15 people on this one
             22  e-mail, two of whom I asked about this, and they don't remember.
             23          So now we're at a point where again, as Your Honor
             24  pointed out, this is within our limits of discovery of depos.
11:35:19     25  You set a time limit.  We need follow-up discovery on that.
```

OFFICIAL TRANSCRIPT

```
 1            Whether we ever get into spoliation stuff or whatever,
 2   I think is well down the path.  I mean, as you just said, we
 3   don't even know what we're missing.  So whether we're missing
 4   anything or not -- you know, if it looks like we are and it was
 5   inappropriate, then maybe we'll go down that path.
 6            THE COURT:  I think that they're entitled to -- they're
 7   entitled to conduct that basic discovery.  We're not -- if they
 8   want to argue about trigger dates and legal holds and the
 9   decision of the legal department, that's going to come down the
10   road and we're not there yet.  I hope that I made that clear.
11            MR. OOT:  Okay.  So just for clarity, Your Honor, the
12   fact issues around the e-mails associated with the possibility of
13   litigation --
14            THE COURT:  Who saw them, what do you remember about
15   them, what did you do in response, who did you talk to -- all of
16   those things.  I mean, that is basic discovery that I think they
17   are entitled to obtain.
18            MR. OOT:  And we're going to cut off at the sort of
19   privileged communications?
20            THE COURT:  Well, yeah.  I mean, when you start asking
21   about talking to lawyers, yeah.
22            MR. OOT:  Thank you, Your Honor.
23            MR. MOORE:  And then one more observation, Judge.
24            That there are 12,000 plaintiffs in this case, and at
25   the end of last year we had a big run-up of filings because of
```

OFFICIAL TRANSCRIPT