# EXHIBIT C

## Page 1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

****************************************************************
IN RE: TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                    Civil Action No. 16-MD-2740
                              Section "N"
                        New Orleans, Louisiana
                      December 19, 2018 at 11:40 a.m.

THIS DOCUMENT RELATES TO ALL CASES
****************************************************************

                TRANSCRIPT OF STATUS CONFERENCE
         HEARD BEFORE THE HONORABLE MICHAEL B. NORTH
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:
                    J. KYLE BACHUS
                    DARIN SCHANKER
                    BACHUS & SCHANKER
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202

                    CHRISTOPHER COFFIN
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112

                    KAREN BARTH MENZIES
                    GIBBS LAW GROUP
                    400 CONTINENTAL BOULEVARD
                    EL SUGUNDO, CA 90245

                    LARRY CENTOLA
                    338 LAFAYETTE STREET
                    NEW ORLEANS, LA 70130
```

## Page 2

```
FOR THE SANOFI DEFENDANTS:

         PATRICK OOT
         SHOOK HARDY & BACON
         1155 F STREET NW
         SUITE 200
         WASHINGTON, DC 20004

         HARLEY RATLIFF
         SHOOK HARDY & BACON
         2555 GRAND BOULEVARD
         KANSAS CITY, KS 64108

ALSO PRESENT:   VAL EXNICIOS
                ANDREW LEMMON
                JESSICA PEREZ
                ANDRE MURA
                JOHN OLINDE
                MICHAEL SUFFERN
                GEOFFREY COAN
                DOUGLAS MOORE
                PETER ROTOLA
                MARA CUSKER GONZALEZ

PARTICIPATING VIA PHONE:

                DANIEL MARKOFF
                DAVID MICELI
                ALEXANDER DWYER
                LAUREN DAVIS
                TREVOR WHITE
                PALMER LAMBERT
                ZACHARY WOOL
                BETH TOBERMAN
                SUZY MARINKOVICH
                ADRIENNE BYARD

Official Court Reporter:  Nichelle N. Drake, RPR, CRR
                          500 Poydras Street, B-275
                          New Orleans, Louisiana 70130
                          (504) 589-7775

Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

## Page 3

PROCEEDINGS

(Call to order of the court.)

THE COURT: First item on the agenda are documents subpoenaed from third parties. I'm advised that that issue has been resolved.

MR. CENTOLA: Not correct, Your Honor.

THE COURT: Okay. Why am I hearing that it's not been resolved today for the first time? I mean, you got a letter yesterday that told me that it's been resolved. Why didn't I hear from you?

MR. CENTOLA: I apologize, Your Honor. I was trying to work it out with counsel. They sent an e-mail saying that they think it's resolved. We sent another e-mail saying, no, we have to talk about this, and we've got no response. And it is not a resolved issue --

THE COURT: What is left unresolved?

MR. CENTOLA: The third parties are producing documents to Sanofi first, and they have that absolute right. We understand that. At the meet and confer in September, which they unilaterally set and we went forward with, we had an agreement and we want to know what the volume of documents are so we can work out a schedule, and they will have the opportunity to do it and produce it.

THE COURT: I know all that.

MR. CENTOLA: We have suggested a schedule, and they

## Page 4

say, no, no how, no way. There's nothing we're going to do. We don't have an issue. We've produced to you everything that we have. And that's it. That's final.

We got production today. There are more third-party documents that are being produced and going forward. We want to have a protocol going forward. We think we can work with them on the timing. But they don't even think a protocol is necessary, and it is causing delay in production of documents to the plaintiffs. We understand they have the right. We just want it to be done in a timely fashion.

THE COURT: All right. You all need to work out a -- you all need to work this out for productions going forward.

MR. RATLIFF: Your Honor, may I address that --

THE COURT: Yes.

MR. RATLIFF: -- very, very briefly?

We had agreed with plaintiffs' counsel that in the few instances where we get, I guess, what they call preview documents from the third parties so we can do a quick privilege review that we'll notify them when we received them, what the volume of documents are, what we think they look like in terms of kind of general categories and how long we think we can get through those or how long it will take us to get through those depending on the size.

I sent Mr. Centola I believe a couple of days ago -- we had just received a preview -- our preview production from

## Page 9

1  guidance? I mean -- and you're right. We just did the last
2  Wednesday and Thursday a second piece of that 30(b)(6) and
3  what happens is that in that testimony, the witness that
4  they're presenting says, "I can't answer your questions.
5  Because although there should be documents of communications
6  with adverse event reporters, I can't answer your questions
7  because the company hasn't prepared me to answer those
8  questions." And --
9       THE COURT: So put that in your submission.
10       MR. BACHUS: Okay. So that's --
11       THE COURT: You got to convince me why I should order
12  them to put a person up as a 30(b)(6) designee on these
13  topics and I've not been convinced.
14       MS. MENZIES: Right. And I understand what you're
15  saying.
16       MR. BACHUS: I think we can do that.
17       MS. MENZIES: Well, the topics, just so you're aware,
18  the difference is rather than general retention policies,
19  what we've done is narrow down where we see holes in missing
20  information, missing documents. Either it never existed or
21  it was destroyed, and we're trying to get answers on that.
22  That's what we're trying to focus on, and so we will as
23  you've requested go through that more specifically.
24       THE COURT: I don't want to make a -- I'm not going
25  to make a decision without knowing what the specific basis of

OFFICIAL TRANSCRIPT

## Page 10

1  their request is.
2       I read everything you gave me, Mr. Oot. I understand
3  your position. All I'm saying is, I'm going to give them the
4  opportunity to make their case, and then I'll give you an
5  opportunity to respond to it.
6       MR. OOT: Sure, Your Honor.
7       MS. MENZIES: Thank you.
8       MR. OOT: But I'd like to point out that PTO 49 sets
9  out the procedure for how they get discovery on discovery.
10  They first have to come to us, not to you, and seek a meet
11  and confer on the deficiency and provide us with the
12  opportunity to cure that deficiency.
13       THE COURT: I'm hearing that that's in process.
14       MR. OOT: That has not happened.
15       THE COURT: Well, it's going to happen. I mean,
16  Ms. Menzies just got through telling me that there's things
17  you haven't talked about yet. And to the extent that the PTO
18  49 requires you all to talk about the deficiencies that
19  you're going to highlight to me, you all need to talk about
20  it, right?
21       MS. MENZIES: Yes. And we've been talking for a good
22  eight months now, but along these specifics, we'll talk more.
23  Thank you.
24       MR. COURT: Very good.
25       MR. OOT: And for over a year, we've said that these

OFFICIAL TRANSCRIPT

## Page 11

1  are outside the scope of discovery, even the cases that
2  they've cited in their own papers.
3       THE COURT: I get that. So they're probably thinking
4  that the meet and confer is not really going to come to
5  anything, but they're going to have it anyway, right?
6       MR. OOT: Well, I think we're still -- we're still
7  going to be in the same position, Your Honor, that we've been
8  in the past is that, you know, 26(b)(1) still applies.
9       THE COURT: I've read it all. We've been down this
10  road. And there is -- there is perhaps an incremental
11  approach to what discovery is going to be allowed based on
12  what's happening with the discovery that I've already ordered
13  or allowed to take place. There are benchmarks they can hit
14  that will cause me to allow them to do additional discovery.
15  I don't know if they can hit them, but I need to know where
16  we are. I need to be able to assess the request in context
17  and the context is -- I don't know what the context is right
18  now. That's all I'm asking for. I'm not -- I'm not trying
19  to preview what's going to happen. I just need to know why
20  I'm even being asked to do this.
21       MR. OOT: Yeah, we're past the discovery deadline.
22  So --
23       THE COURT: I get it.
24       MR. OOT: What's happening now is, they sent us this
25  last-minute discovery-on-discovery deposition notice, skipped

OFFICIAL TRANSCRIPT

## Page 12

1  over the PTO 49 requirements, and now we're here having to
2  defend against discovery on discovery without the case --
3  without it properly worked out.
4       THE COURT: And that may at the end of the day be
5  dispositive.
6       MR. OOT: Thank you, Your Honor.
7       THE COURT: I need to know what's going on. I don't
8  want to make decisions without knowing what's going on --
9  what's actually going on in the background.
10       MR. OOT: Okay. Thank you, Your Honor.
11       THE COURT: All right. The bellwether plaintiffs'
12  discovery responses, everybody get out your No. 2 pencils.
13  You want to tell me what's been resolved already? Is that
14  what you're here --
15       MR. RATLIFF: I wish that's what I was here to say,
16  Your Honor.
17       THE COURT: See all these notes, I've already decided
18  what's going to happen. That's why I said get out your
19  sharpened No. 2 pencils.
20       I've gone through every disputed response and every
21  request, and I've gone through them -- and some of them are
22  disputed in multiple areas. And I've gone through them in
23  the way in which Sanofi sort of grouped them in their
24  submission in the five categories. So I'm going to address
25  that -- I'm going to address that here. And I've spent a

OFFICIAL TRANSCRIPT