# EXHIBIT C

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3
 4     IN RE TAXOTERE (DOCETAXEL)        )
       PRODUCTS LIABILITY LITIGATION )   MDL NO. 2740
 5                                       )
       THIS DOCUMENT RELATES TO:     )   SECTION: H
 6                                       )
       ANTOINETTE DURDEN,                )
 7     CASE NO. 2:16-cv-16635            )
       TANYA FRANCIS,                    )
 8     CASE NO. 2:16-cv-17410;           )
       BARBARA EARNEST,                  )
 9     CASE NO. 2:16-cv-17144            )
                                         )
10     _____)
11
12          VIDEOTAPED DEPOSITION OF ELLEN FEIGEL, M.D.
13                 FRIDAY, DECEMBER 7, 2018
14
15
16
17
18     JOB NO. 3151489
19
20     REPORTED BY STEPHANIE J. COHEN,
21     CSR NO. 7920
22
23
24
25     Job No. NJ3151489
```

1      MR. THORNTON: Objection; form.
2      THE WITNESS: Let me approach it a
3  different way rather than regulatory.
4      I think there's an ethical responsibility.
5  If you -- if the company is aware of side effects to
6  communicate that so each -- regardless of regulatory
7  issues, there's ethical responsibilities to do that
8  because part of having an informed discussion
9  between physicians and patients is to have the full
10 balanced information about benefits and potential
11 risk.
12 BY MR. KAUFMAN:
13    Q   Are you offering an opinion that Sanofi
14 violated federal regulations with respect to the
15 Taxotere prescribing information?
16    A   Oh, I am not offering that opinion, no.
17    Q   Are you offering -- strike that.
18        You are not offering opinion regarding
19 Sanofi's compliance with FDA regulations or
20 requirements with respect to Taxotere.
21        Fair?
22        MR. THORNTON: Objection; form.
23        Could you please reread the question. We
24 are getting technical here.
25        MR. KAUFMAN: I don't think it's that hard.

1   She says right in her report that she is not
2   offering regulatory opinions.
3           MR. THORNTON:  I understand.  I didn't
4   think it was hard either, but you have asked several
5   questions about it so you seem to have --
6           THE WITNESS:  Did you want her to reread
7   it?
8           THE REPORTER:  "You are not offering
9   opinion regarding Sanofi's compliance with FDA
10  regulations or requirements with respect to
11  Taxotere.  Fair?"
12          THE WITNESS:  I would be willing to offer
13  opinions on the responsibility of the company to
14  communicate risk to the FDA, but in terms of
15  violating regulatory requirement, no.  I'm not
16  offering any regulatory opinions on that.
17  BY MR. KAUFMAN:
18     Q    I understand you might have opinions that
19  go beyond the scope of the report.  Lots of people
20  in this room probably have opinions on a lot of
21  different topics.
22          I am interested in the opinions that you
23  intend to offer the jury at trial in this case.
24  Okay?
25          MR. THORNTON:  Objection; form.

Page 104

1       THE WITNESS:  I understand your question.
2   I actually don't think what I am saying is outside
3   the scope of my report.
4   BY MR. KAUFMAN:
5       Q    You are commenting on ethical requirement.
6   Putting aside FDA requirement, correct, if that's
7   what you were just discussing?
8       MR. THORNTON:  Objection --
9       THE WITNESS:  Let me -- I'm just trying to
10  understand because I obviously have opinions about
11  communicating risk and the communication of risk
12  does go through the FDA, so physicians have to get
13  that information somehow.
14      So I am offering from the context of
15  communications of risk need to be -- need to be
16  conducted.  I'm not going to comment on violation of
17  regulatory law, no, or regulations.
18      I hope that answers your question.
19  BY MR. KAUFMAN:
20      Q    Your report says you are not offering
21  regulatory opinion about FDA requirements, correct?
22      A    Yes, that's correct, about FDA
23  requirements.
24      Q    So you are not offering any opinions about
25  any requirements that were in place with respect to

1   Sanofi or Taxotere, correct?
2           MR. THORNTON:  Objection; form.
3           THE WITNESS:  What I am trying to get at --
4   sorry to go back and forth so much, but maybe we're
5   from two different cultures, legal and medicine.
6           But what I am trying to get across is
7   communication is a responsibility of the company
8   about risk.  There is no other way.  The company is
9   the best entity to know everything about their
10  product.
11  BY MR. KAUFMAN:
12     Q   Who establishes the responsibility of the
13  company?
14          MR. THORNTON:  Objection; form.
15          THE WITNESS:  The company has inherent
16  principles about how they decide to communicate
17  information and the FDA does have regulatory
18  requirements.
19  BY MR. KAUFMAN:
20     Q   So the company's inherent principles and
21  then the FDA requirements.  That's who governs
22  company conduct in this regard?
23          MR. THORNTON:  Objection; form.
24          THE WITNESS:  If you're saying is that
25  all-encompassing, I can't answer that question.  I

1    A    Oh, I can't comment on other standards or
2    principles, but I can certainly say I offer no
3    opinions about whether they did or did not meet FDA
4    requirements, which is consistent with what I did
5    have in my report.
6    Q    And when you say you can't talk on other
7    standards or principles, that means that you don't
8    have any opinions as to whether Sanofi complied with
9    those standards or principles?
10   A    That is not what I said.
11        What I said is I couldn't agree not to have
12   an opinion.  What I'm saying is -- I guess we'll go
13   back.  We can agree that, as stated in my report,
14   that I do not have an opinion on the interactions
15   between Sanofi and the FDA.  I didn't review that.
16        I have no reason to have an opinion there
17   and I will not comment on anything regarding their
18   FDA requirements.
19   Q    Okay.
20   A    Is that -- I think --
21   Q    I think we just made some progress.
22   A    Okay.
23   Q    Good.  I have a different question.
24   A    Okay.
25   Q    As it pertains to Sanofi's communications

1  to doctors, is it your opinion that Sanofi failed
2  some obligation, principle or standard in
3  communicating to physicians about Taxotere?
4      A    I think there was definitely no information
5  about permanent alopecia communicated by the company
6  in any way whether it was to the FDA or directly to
7  doctors or patients.
8      Q    Where is that opinion set forth in your
9  report?
10     A    I set forth that physicians were not aware
11 of any of this, even though there were randomized
12 clinical trials showing those adverse events, even
13 though there were case studies coming in since 2001,
14 even though there were over 2,100 cases of permanent
15 or irreversible alopecia that the company was
16 looking at.
17          So I am basing my opinion on the fact that
18 there was information that wasn't communicated.  I'm
19 not going to opine on what FDA law they did or did
20 not follow.
21     Q    Is there a single standard you can point me
22 to or principle that Sanofi did not meet, satisfy or
23 comply with?
24     A    I think there's certainly precedent that
25 there's expectation that the company, when they

```
 1   BY MR. KAUFMAN:
 2        Q    That answers a prior question.
 3        A    Well, good.
 4        Q    So we are making more progress.
 5        A    Good.
 6        Q    So the record is clean, you are not
 7   opining -- strike that.
 8             You do not intend to opine as to adequacy
 9   of any Taxotere label; is that correct?
10        A    I will not opine on adequacy of the
11   Taxotere label.
12        Q    In terms of Sanofi's obligations to
13   communicate to doctors, where can Sanofi go to
14   identify those obligations to make sure it complies?
15   What's the source?
16             MR. THORNTON:  Objection; form.
17             THE WITNESS:  The problem -- I am going to
18   get back to the problem.  My issue is communication
19   of risk is something -- is a responsibility of the
20   company.
21             Are you saying because it's all -- it's
22   only an FDA requirement and there are no other
23   expectations outside the FDA?  I mean, that's what
24   I'm having difficulty saying.
25             A company has their own ethical principles
```

Page 117

1  that don't necessarily -- there are legal
2  requirements, but then there are ethics and
3  principles that companies have about sharing
4  information with physicians and with patients.
5          So I'm not here -- as I said, I will not
6  opine on the specifics of inadequacy of a label, but
7  I do have an opinion about whether or not
8  communication of relevant information to physicians
9  was done.
10 BY MR. KAUFMAN:
11     Q    And as long as you don't consider that a
12 regulatory opinion, I think we can be in agreement.
13         Would you agree that's your personal
14 opinion?
15         MR. THORNTON:  Objection; form.
16         THE WITNESS:  That is my opinion based on
17 my years of experience in clinical medicine and
18 oncology and in product development and having
19 worked inside companies.
20         So I have worked with them so I know what
21 these issues are, but so it's based on -- yes, my
22 personal universe of experiences have helped inform
23 my opinion on that.
24 BY MR. KAUFMAN:
25     Q    When you are in that role based on that

Page 237

1  BY MR. KAUFMAN:
2      Q    I don't think that is responsive to my
3  question.
4           Would you like me to ask it again?
5      A    I think the scope was implied that I would
6  be able to talk to general causation, but it wasn't
7  specifically limited to general causation.
8      Q    You agree that the scope of your report
9  does not specifically or expressly state that you
10 would be providing an analysis on general causation
11 between Taxotere and permanent alopecia?
12     A    I think it was --
13          MR. THORNTON:  Objection; form.
14          THE WITNESS:  I think it was implied in my
15 interactions with counsel that would be part of what
16 I would be able to do.
17 BY MR. KAUFMAN:
18     Q    But you would agree with me that is not
19 expressly stated in the section entitled, "Scope of
20 This Report"?
21          MR. THORNTON:  Objection; form.
22          THE WITNESS:  I do agree that phrase is not
23 in this report.
24 BY MR. KAUFMAN:
25     Q    I would like to focus on -- let's go back