UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | |
| Barbara Earnest, Case No. 2:16-cv-17144. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
SECOND OMNIBUS MOTIONS IN LIMINE (NOS. 15, 16, 17, 18, 19, AND 20)**

Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc. ("Sanofi") hereby submit the following Memorandum in Support of Their Second Omnibus Motions in Limine pursuant to Case Management Order 14B:

**15. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING WHAT TREATMENT DR. CARINDER WOULD PRESCRIBE TO PLAINTIFF TODAY.**

Sanofi anticipates Plaintiff will seek to present testimony from her prescribing oncologist, Dr. James Carinder, as to what chemotherapy treatment regimen he would prescribe Plaintiff (or a similarly-situated patient) if he were to make the decision *today*. *See* Carinder Dep. 138:6–10 (testifying he would prescribe a different regimen to Plaintiff today) (attached **Ex. A**). Such evidence should be excluded as legally irrelevant because (1) the treatment Dr. Carinder would prescribe to Plaintiff today was not an option for him at the time he treated Plaintiff in 2011, and (2) the probative value of such evidence, if any, is substantially outweighed by the danger of unfair prejudice, misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 401-403.

> **A.   Evidence Concerning The Chemotherapy Treatment Dr. Carinder Would Prescribe To Plaintiff Today Is Irrelevant Because Such Treatment Was Not An Option For Him At The Time He Treated Ms. Earnest in 2011.**

Plaintiff should be precluded from eliciting testimony from Dr. Carinder regarding which chemotherapy treatment regimen he would prescribe to Plaintiff *today* because, to Dr. Carinder, such regimen was not an option at the time he treated Ms. Earnest. *See* Carinder Dep. at 127:25-130:7 (**Ex. A**). Specifically, Dr. Carinder testified:

- "At the time Miss Earnest was being treated, paclitaxel was given on an every-two-week schedule at a high dose, and the neuropathy was -- was daunting in a lot of those patients, and plus the infusion reactions because it was a pretty sizeable dose of drug. Now 12 weeks at a small dose, you don't have the -- the infusion complications really, and you don't – the neuropathy is not as severe." *Id.* at 129:24-130:7

- He currently prescribes paclitaxel to breast cancer patients who present like Plaintiff: "instead of using paclitaxel at a high dose every two weeks or three weeks, we do the 12 weeks of a smaller dose, and the neuropathy tends to be less severe." Carinder Dep. at 129:13-23.

Stated otherwise, the smaller dose paclitaxel regimen Dr. Carinder prescribes today was not an option when Ms. Earnest required treatment in 2011. *Id.* at 129:13-130:7. As such, evidence regarding the chemotherapy regimen Dr. Carinder would prescribe Plaintiff *today* is legally irrelevant and does not make any fact at issue more or less probable. *See* Fed. R. Evid. 401; *see also Cross v. Forest Labs.*, 102 F. Supp. 3d 896, 903 (N.D. Miss. 2015) (explaining that data that was unavailable at the time of prescription could not have affected the prescriber's decision); *Thibodeaux v. ENSCO Offshore Co.*, No. 13-cv-02784, 2016 WL 4803179, at *1 (W.D. La. Sept. 9, 2016) (excluding evidence that did not exist at the time of the accident in question as irrelevant). Such evidence should be excluded as irrelevant.

**B.     Testimony Regarding The Treatment Regimen That Dr. Carinder Would Prescribe Plaintiff Today Is Prejudicial, Unhelpful, and Misleading.**

In addition to being legally irrelevant, evidence regarding which treatment regimen Dr. Carinder would prescribe to Plaintiff *today* would serve only to mislead the jury and prejudice Sanofi. *See* Fed. R. Evid. 403. While a *high dose* paclitaxel regimen was an option to Dr. Carinder in 2011 (the regimen Dr. Carinder associated with "daunting" neuropathy), a *low dose* paclitaxel regimen was not an option to Dr. Carinder at the time Plaintiff needed treatment. *See supra* at 1.A. As such, the admission of this evidence would not help the jury decide any material issue in the case and, instead, would serve only to confuse and mislead the jury regarding (1) which treatment options Dr. Carinder would have used in 2011, (2) the risk profiles associated with such options, and (3) whether Dr. Carinder *might* have prescribed a *low dose* paclitaxel regimen to Plaintiff in 2011—resulting in significant and unfair prejudice to Sanofi. *See* Fed. R. Evid. 403. For these reasons, evidence regarding which treatment Dr. Carinder would prescribe Plaintiff today should be excluded.

**16.   MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING WHAT PLAINTIFF WOULD HAVE DONE DIFFERENTLY IF SHE HAD BEEN GIVEN DIFFERENT RISK INFORMATION BY HER PRESCRIBING ONCOLOGIST.**

Sanofi anticipates Plaintiff will seek to present evidence that she would have selected a different treatment option if she had known about the alleged risk of permanent hair loss.[1] Such evidence should be excluded as irrelevant for three reasons. First, it is legally irrelevant under state law. The only legally relevant inquiry is whether the alleged risk would have changed the prescribing physician's decision to prescribe Taxotere in this case. *See Ferguson v. Proctor & Gamble Pharm., Inc.*, 353 F. Supp. 2d 674, 678–79 (E.D. La. 2004) ("In failure-to-warn cases involving prescription drugs, Louisiana courts apply the learned intermediary doctrine," which requires the plaintiff to "show that the defendant failed to warn (or inadequately warned) *the physician* of a risk associated with the product that was not otherwise known to the physician" and "that this failure to warn *the physician* was both a cause in fact and the proximate cause of the plaintiff's injury.") (emphasis added).[2] Second, evidence about what Plaintiff would have done differently is irrelevant because it constitutes hypothetical conjecture and improper lay witness testimony. *See* Fed. R. Evid. 701; *see also Howard v. Offshore Liftboats, LLC*, No. 13-4811, 13-6407, 14-1188, 2016 WL 316716, at *4 (E.D. La. Jan. 26, 2016) (precluding lay witness from testifying on "various speculative, hypothetical questions" about "how the incident could have been prevented"). Third, because Plaintiff's conjectural testimony lacks any

---

[1]   *See, e.g.*, Barbara Earnest Dep. Vol. I 203:20–25 (testifying that if Dr. Carinder had known about the alleged risks of hair loss associated with Taxotere, she "maybe" would have "had the opportunity" to ask if there was "another drug to take.") (attached **Ex. B**); Plaintiff's Opp. to Defendants' Motion for Summary Judgment on Causation Based on the Learned Intermediary Doctrine (Rec. Doc. 6606).

[2]   *See also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002) ("The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician.* The treating physician's knowledge is thus the focus of the inquiry.") (emphasis in original).

4

probative value, it should be excluded due to its propensity to confuse the issues and mislead the jury.  Fed. R. Evid. 401-403.

> **A.     Evidence Regarding What Plaintiff Would Have Done Differently Is Legally Irrelevant Under The Learned Intermediary Doctrine.**

Evidence as to what Plaintiff would have done differently if she knew of the alleged risk of permanent hair loss is legally irrelevant under Louisiana's learned intermediary doctrine.  To prevail on her failure to warn claim in Louisiana, Plaintiff must show (i) that the manufacturer failed to warn the *physician* of the alleged risk associated with the product, and (ii), that such failure was the cause in fact and proximate cause of the Plaintiff's alleged injury.  *See Stahl*, 283 F.3d at 265–66; *see also Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 765 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001).  Evidence regarding what Plaintiff would have done differently if she had known different risk information is not pertinent to this analysis.  *See Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991) (The issue is whether "a proper warning would have changed the decision of *the treating physician* . . . [and] that but for the inadequate warning, the *treating physician* would not have . . . prescribed the product." (emphasis added)); *see also Stahl*, 283 F.3d at 268 ("The treating physician's knowledge is thus the focus of the inquiry.").  Stated differently, the relevant inquiry is the effect of the potential warning on the physician's prescribing choice, not the Patient's post-hoc testimony.  *See, e.g.*, *Brown v. Glaxo, Inc.,* 790 So. 2d 35, 38 (La. Ct. App. 2000) (The manufacturer's duty to warn "is fulfilled when the prescribing doctor is informed of the potential risks from the drug's reasonably anticipated use so that the *physician* may intelligently decide on its use with the particular patient.") (emphasis added); *Carnes v. Eli Lilly and Co.*, No. 0:13-591,2013 WL 6622915, at *5 (D.S.C. Dec. 16, 2013) (applying the learned intermediary doctrine in South Carolina:  "Once again, Plaintiffs attempt to shift focus to the patient's decision to take the

prescription drug, despite the learned intermediary doctrine, which requires the court to focus on the physician's decision to prescribe the drug."). Because it is not legally relevant, evidence or argument about what Plaintiff "would have done" should be excluded pursuant to Rule 401.

> **B.   Evidence Regarding What Plaintiff Would Have Done Differently Should be Excluded as Speculative, Hypothetical Conjecture and Improper Lay Witness Opinion Testimony.**

Evidence or argument about what Plaintiff "would have done differently" should also be excluded because it constitutes speculative, self-serving conjecture based solely upon the benefit of hindsight. Indeed, Louisiana Courts have recognized the "likelihood of a patient's bias in testifying in hindsight on this hypothetical matter," and thus "have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment . . . had the material information and risks been disclosed." *See Hondroulis v. Schuhmacher*, 553 So. 2d 398, 412 (La. 1998).

Plaintiff is now cancer-free and no longer faces the uncertainty associated with her breast cancer diagnosis. Earnest Dep. Vol. I 63:20–25 (**Ex. B**); Earnest PFS § VI.2 (attached **Ex. C**). This type of after-the-fact evidence—offered in the context of having defeated cancer following treatment with a Taxotere-containing regimen—is detached from the reality in which her original treatment decision was made and the degree of risk she was willing to accept in that critical moment. Even Plaintiff's experts concede there is no way to know what Plaintiff or her prescribing physician would have done if provided with different information about the alleged risk of permanent hair loss. *See* Bosserman Dep. 136:8–15 (attached **Ex. D**); Feigal Dep. Vol. II 29:12–31:4 (attached **Ex. E**).

This is particularly true given that the purported alternate treatment option—a paclitaxel-containing regimen—was only available through Dr. Carinder in a *high dose* setting at the time

6

and carried with it the risk of "daunting" neuropathy, a condition that Plaintiff currently suffers from, and the increased risk of which, she admitted, would have influenced her treatment decision.  *See* Carinder Dep. at 129:24–130:7 (**Ex. A**); Earnest Dep. Vol II 110:5–112:15 (admitting neuropathy is "very painful" and that "if the [hypothetical] other drug had an increased risk of neuropathy" it would have "influence[d] her decision.") (**Ex. F**).  As such, any evidence or argument that Plaintiff would have chosen a different treatment regimen in this context lacks reliability and amounts to nothing more than self-serving conjecture and speculation.  As such, it should be excluded at trial pursuant to Rule 701.  *See Howard*, 2016 WL 316716, at *4 ("[The witness] may not speculate or give his opinion with respect to how his actions, or the actions of other individuals involved in the incident, would have been different under different factual scenarios.").

      **C.**      **The Admission of Such Irrelevant and Speculative Evidence Risks Confusing and Misleading the Jury.**

Not only does this type of evidence lack any probative value, it also carries a real danger of confusing the issues and misleading the jury.  Fed. R. Evid. 403.  As noted above, the only legally relevant inquiry here is whether knowledge of the alleged risk would have changed the prescribing physician's decision to prescribe Taxotere in this case.  *See Ferguson*, 353 F. Supp. 2d at 678–79; *Stahl*, 283 F.3d at 268.  The admission of this type of evidence risks confusing the jury on issues that are legally irrelevant and speculative, and prejudicing the jury against Sanofi.  Indeed, Plaintiff has not identified what specific language would constitute an adequate warning and she should not be permitted to mislead the jury with conjecture about what she would have done if she had been given a purportedly adequate (yet, unspecified) warning.  For these reasons, any evidence regarding what Plaintiff "would have done differently" if she had been provided different risk information should be excluded.

**17.   MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING SANOFI PROMOTIONAL AND/OR MARKETING MATERIALS NOT POSSESSED OR RELIED ON BY PLAINTIFF OR HER PRESCRIBING PHYSICIAN.**

Plaintiff should be precluded from introducing evidence or argument related to materials that (1) promote, advertise, and/or market Taxotere, and (2) were neither in Plaintiff's possession, nor reviewed or relied upon by Plaintiff and/or her prescribing physician, on grounds that such evidence is irrelevant and will serve only to mislead the jury, confuse the issues, and prejudice Sanofi.  *See* Fed. R. Evid. 401-403; *see also In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, No. 14-2720, Order and Reasons (Regarding Motions In Limine), Doc. No. 6254 at 3 (E.D. La. Apr. 18, 2017) (excluding evidence and argument concerning marketing, advertising, or promotional materials not relied upon by plaintiff's prescribing physician) (attached **Ex. G**).

Here, there is no evidence that Plaintiff or her prescribing physician possessed or reviewed (much less relied upon) any materials that promoted, advertised, or marketed Taxotere. *See* Earnest Dep. Vol. I at 70:11–20 (testifying that she never saw "visual or print materials on television or advertisements related to Docetaxel or Taxotere[.]").  Dr. Carinder unequivocally testified that he relies upon his own judgment, not Sanofi, in forming treatment decisions for his patients.  *See* Carinder Dep. at 145:7–11 ("I rely on my own decision."), 145:19–25 ("All my practice decisions are evidence based; based on published guidelines, published literature, peer-reviewed trials. . . . What a drug rep comes in and says might fit that.  Sometimes what they bring in winds up in the trash.  So, you know, I still rely on published data.") (**Ex. A**).

Courts across the country have routinely rejected the argument that marketing evidence is relevant absent proof of reliance. *In re Norplant Contraceptive Prod. Litig.*, 165 F.3d 374, 379 (5th Cir. 1999) (declining to find that marketing materials could create a genuine issue of

8

material fact for summary judgment purposes in the "absence of any evidence on the record that [Plaintiff] actually saw, let alone relied, on any marketing materials issued…"); *accord In re Norplant Contraceptive Prod. Liab. Litig.*, No. MDL 1038, 1997 WL 81092, at *1 (E.D. Tex. Feb. 21, 1997) ("Absent evidence that the physicians were exposed to the above listed materials, the court finds that the promotional and advertising materials are not relevant evidence."); *see also In re Viagra Prod. Liab. Litig.*, 658 F. Supp. 2d 950, 966–67 (D. Minn. 2009) (excluding marketing material evidence in the absence of any evidence that the plaintiffs or their prescribing physicians relied on the materials). The same result is warranted here.

Moreover, the admission of such evidence would function only to mislead the jury, confuse the issues, waste time, and prejudice Sanofi. *See* Fed. R. Evid. 403. Given that these materials have not connection to the facts of the case, their use would be limited to painting Sanofi as a "bad actor" and advancing a slanted narrative that Sanofi over-promoted the benefits of Taxotere and/or minimized its risks. As such, the probative value of these materials, if any, is substantially outweighed by the risk of unfairly prejudicing Sanofi, confusing the issues, and wasting time*. See* Fed. R. Evid. 403. Such evidence should be excluded pursuant to Rule 403.

**18.   MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING NON-EXPERT CAUSATION TESTIMONY.**

Plaintiff may seek to introduce evidence from lay witnesses at trial concerning issues that properly fall within the purview of expert evidence, particularly with respect to causation. Indeed, in deposition, some fact witnesses offered improper opinions regarding the cause of Plaintiff's alleged hair loss.[3] Such testimony should be excluded because (1) it exceeds the scope of Rule 701 and (2) does not meet the requirements of Rule 702. *See Rodgers v. Hopkins Enterprises of Ms., LLC*, No. CV 17-6305, 2018 WL 3104288, at *5 (E.D. La. June 21, 2018) (excluding lay testimony as to the diagnosis or causation of plaintiff's injuries); *see also Kie v. Williams*, No. 3:15-CV-02304, 2016 WL 6208692, at *1 (W.D. La. Oct. 23, 2016) (permitting lay witness opinion based on personal observations of the plaintiff but not on the cause or extent of plaintiff's medical condition, " . . . which require[s] specialized medical knowledge within the scope of Rule 702."); *Spencer-Martin v. Exxon Mobil Corp.*, No. CV 16-789-SDD-RLB, 2018 WL 3015759, at *5 (M.D. La. June 15, 2018) (same).

   **A.   Lay Witness Testimony Regarding The Medical or Legal Cause of Plaintiff's Alleged Hair Loss Falls Outside the Scope of Rule 701.**

Federal Rule of Evidence 701 bars fact witnesses from offering testimony unless it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) ("*any* part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not

---

[3]   *See e.g.*, Ralph Earnest Dep. 16:24–17:5 (testifying that "all [he] know[s]" about Taxotere "is it created [] hair loss for" Plaintiff), 48:25–2 (asserting that Taxotere caused his wife's hair loss) (attached **Ex. H**); Jules LeBlanc Dep. 10: 14 – 22 (discussing Taxotere and how it "cause[d Earnest] to lose [her] hair."), 44:12 – 16 (same), 71:23–25 (attached **Ex. I**).

10

Rule 701.") (emphasis added).  Here, lay witness testimony on this issue of causation between Taxotere and Plaintiff's alleged injury is precisely the type of "scientific" or "other specialized knowledge" that is outside the permissible testimony from any lay witness.  As such, Plaintiff should be precluded from offering such evidence at trial.

    **B. Lay Witness Testimony Regarding The Cause of Plaintiff's Alleged Hair Loss Does Not Satisfy the Requirements of Rule 702.**

Lay witness opinion testimony is inadmissible to prove causation and should be excluded pursuant to Rule 702.  Fifth Circuit case law is clear that expert testimony is required to prove causation when the nexus between the injury and alleged cause is not obvious to the lay juror. *See Gowdy v. Marine Spill Response Corp.*, No. 17-41198, 2019 WL 2223610, at *2 (5th Cir. May 23, 2019); *see also Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 524 (E.D. La. 2002) (". . . when the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required to prove causation.").  Rule 702 requires that testifying experts are qualified "knowledge, skill, experience, training or education.  *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 623 (5th Cir. 2018) (quoting Fed. R. Evid. 702).  Here, the nexus between Plaintiff's alleged injury and the purported cause is not within common knowledge of any lay juror.  Expert testimony on the issue is required and Plaintiff should be precluded from offering such evidence through lay witnesses at trial.

**19. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S MOTIVE AND/OR MENTAL STATE.**

Plaintiff should be precluded from offering evidence from witnesses other than herself regarding her motives or mental state.[4] Such evidence should be excluded for lack of foundation and improper speculation. *See* Fed. R. Evid. 602.

Federal Rule of Evidence 602 "limits a witness's testimony to that within his or her personal knowledge." *Doctor's Hosp. of Jefferson, Inc. v. S.E. Med. All., Inc.*, 878 F. Supp. 884, 887 (E.D.La. 1995). In this case, the only person with the requisite personal knowledge to testify about Plaintiff's motives and mental or emotional state is Plaintiff herself. Fed. R. Evid. 602. Testimony from her friends and family about what Plaintiff may or may not have been feeling before, during, or after chemotherapy is merely speculation, and "a lay opinion witness may not testify based on speculation." *Howard v. Offshore Liftboats, LLC*, 2016 WL 316716, at *4 (E.D. La. Jan. 26, 2016) (quotation omitted). Therefore, the Court should exclude fact witness testimony about Plaintiff's motives or mental states.

---

[4] *See, e.g.*, Ralph Earnest Dep. 21:3–11 (testifying that his wife's hair loss is a "constant reminder to her" that she stands out because of her cancer) (**Ex. H**), Michael Earnest Dep. 22:24 – 23:14 (testifying that he "know[s] how [his] mother feels" and that his "mother doesn't feel like a woman anymore without her hair"), 46: 5–15 (speculating that his mom "doesn't feel like herself"), 112:1–15 (testifying that while his mom has not "explained anything," but he "can tell . . . that she doesn't feel like a woman.") (attached **Ex. J**); Jules LeBlanc Dep. 64:15–66:3 (testifying that he gets the "general feeling" from Plaintiff that her hair loss affects her life) (**Ex. I**); Ronald LeBlanc Dep. 67:3–24 (speculating that he does not "think" Plaintiff likes to wear a turban "all the time.") (attached **Ex. K**).

**20. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING SANOFI SALES REPRESENTATIVES.**

Defendants anticipate that Plaintiff may attempt to introduce evidence from or about sales representatives with respect to the promotion of Taxotere. *See* Plaintiff Witness List (identifying former Sanofi sales representative Ruth Avila as a potential trial witness). Such evidence should be excluded because (1) it is not relevant to Plaintiff's claims, and (2) the probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury and wasting time. *See* Fed. R. Evid. 401–403.

### A. Evidence Regarding Sanofi Sales Representatives Is Irrelevant Because Dr. Carinder Did Not Rely on Sales Representatives In Exercising His Medical Judgment In This Case.

Plaintiff's prescribing physician, Dr. Carinder, unequivocally testified that he does not rely on information from sales representatives in determining treatment decisions for his patients. Carinder Dep. at 145:4-11(stating he would never substitute his own judgment for that of a sales representative in determining treatment for his patients and adding, "I rely on my own decision"); 145:12-25 (explaining that all his practice decisions are "evidence based; based on published guidelines, published literature, peer-reviewed trials" and adding that "[w]hat a drug rep comes in and says might fit that. Sometimes what they bring in winds up in the trash.") (**Ex. A**). As such, evidence regarding Sanofi's sales representatives, including Ruth Avila, does not make any material fact in this case more or less probable. Such evidence is therefore irrelevant. *See* Fed. R. Evid. 401.

### B. The Probative Value of Such Evidence, If Any, is Substantially Outweighed by Danger of Confusing the Issues and Wasting Time.

Evidence regarding Sanofi sales representatives should also be precluded because it is likely to confuse and mislead the jury. Regardless of the action (or inaction) of any Sanofi sales

13

representative, such conduct had no bearing on the treatment decision made by Dr. Carinder in this case. The admission of such evidence will therefore serve only to mislead and confuse the jury about the central issues to be decided. *See* Fed. R. Evid. 403.

Further, if Plaintiff is allowed to introduce sales representative evidence, a mini-trial will result—Sanofi will be forced to spend time explaining why the actions of its sales representatives were appropriate and/or not relevant to the case. The presentation of such evidence would serve only to waste valuable judicial time and resources. Thus, the probative value of such evidence, if any, is substantially outweighed by the risk of unfairly prejudicing Sanofi, confusing the issues, and wasting time. The Court should therefore exclude such evidence under Rule 403. *See Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1122 n.92 (D. Kan. 2002) (The Court previously had excluded marketing materials not relied on by the prescribing physician "because they were irrelevant and unfairly prejudicial"), *aff'd*, 356 F.3d 1326 (10th Cir. 2004); *see also Cross v. Wyeth Pharms. Inc.*, No. 8:06-cv-429-T-23AEP, 2011 WL 2517211, at *5 (M.D. Fla. June 23, 2011) (excluding notes from sales representatives who did not call prescriber as irrelevant and prejudicial); *Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *18 (N.D. Ill. Mar. 29, 2013) (excluding marketing and promotional materials because the evidence had "such limited probative value").

Date: July 16, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY& BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile: 305-358-7470
hsastre@shb.com

***Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on **July 16, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore