UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**

**Barbara Earnest, Case No. 2:16-cv-17144.**

### DEFENDANTS' MOTION IN LIMINE NO. 25:
### MOTION TO PRECLUDE EVIDENCE AND ARGUMENT THAT "ONGOING ALOPECIA" DATA OBSERVED IN THE TAX316 AND GEICAM 9805 CLINICAL TRIALS REPRESENTS EVIDENCE OF "PERSISTENT," "PERMANENT," OR "IRREVERSIBLE" ALOPECIA

Sanofi anticipates that Plaintiff will seek to introduce evidence and argument at trial that "ongoing alopecia" data collected during the TAX316 and GEICAM 9805 clinical trials represents data on the rate of "persistent," "permanent," or "irreversible" alopecia associated with Taxotere. *See, e.g.*, Kessler Report at ¶¶ 11 n.4, 96.2, 123, **Ex. A**; Feigal Report at 33-34, **Ex. B**; Madigan Dep. at 293:18–23, **Ex. C**. Such use would be inaccurate and misleading because the "ongoing alopecia" data collected from these studies merely identifies alopecia that existed at a given moment in time (the patient's last follow-up visit)—not alopecia medically-determined to be "permanent" or alopecia that continues to "persist" even today. Thus, evidence and argument conflating these terms and data should be excluded because (1) it misrepresents and mischaracterizes the data that was actually collected during those studies; and (2) its admission at trial would serve only to mislead and confuse the jury, waste time, and unfairly prejudice Sanofi. *See* Fed. R. Evid. 403.

A.     **Background on the TAX316 and GEICAM 9805 Clinical Studies.**

TAX316 was a multicenter Phase III randomized clinical trial comparing two different chemotherapy regimens in the adjuvant treatment of node positive breast cancer: (1) Taxotere in combination with doxorubicin and cyclophosphamide ("TAC"), against (2) a combination of 5-fluorouracil, doxorubicin, and cyclophosphamide ("FAC"). Arrowsmith Report ¶ 108, **Ex. D**. Similarly, GEICAM 9805 was a multicenter Phase III randomized clinical trial comparing TAC versus FAC as adjuvant treatment of high risk, operable breast cancer patients with negative axillary lymph nodes. *Id.* at ¶ 127. The primary objective of the studies was a comparison of disease-free survival after adjuvant treatment with either TAC or FAC among patients with high risk, operable breast cancer and negative axillary lymph nodes. *Id.* at ¶¶ 109, 128. The secondary objectives were to compare overall survival, toxicity, and quality of life between the two groups, and to evaluate pathologic markers for predicting efficacy. *Id.*

As part of these studies, investigators recorded the occurrence of adverse events observed during the administration of chemotherapy and at subsequent follow up visits, including alopecia. *See, e.g.*, Kopreski Dep. (Dec. 13, 2018) at 552:22–556:12, **Ex. E**. Both studies were designed to follow participants for up to 10 years after chemotherapy treatment, although some patients prematurely withdrew or discontinued follow up for various reasons. *See*, *e.g.*, Kopreski Dep., Ex. 13 (Dec. 13, 2018), **Ex. F**. In TAX316, investigators studied the occurrence of 69 different types of adverse events. Sanofi_00724262, at Sanofi_00724298–99, **Ex. G**. With respect to alopecia, the final clinical study report showed that 29 patients in the TAC group (and 16 patients in the FAC group) had "ongoing alopecia" at the time of their last follow up visit. Arrowsmith Report ¶ 113, **Ex. D**. In GEICAM 9805, investigators studied the occurrence of 40 different types of

adverse events.[1]  Sanofi_00724381, at Sanofi 00724490, **Ex. H**. With respect to alopecia, the final clinical study report showed 3 TAC patients (and 1 FAC patient) had "ongoing alopecia" at the time of their last follow up visit.  Arrowsmith Report ¶ 131, **Ex. D**.  It is this "ongoing alopecia" data from both studies that is the subject of the instant Motion in Limine.

> **B. Misrepresentations About The Meaning of "Ongoing Alopecia" Data From These Clinical Trials Will Mislead the Jury, Confuse the Issues, and Unfairly Prejudice Sanofi.**

At trial, Plaintiff will seek to use the terms "persistent," "irreversible," "permanent" and "ongoing" interchangeably with respect to the occurrence of alopecia in patients that received a Taxotere-containing regimen in these clinical studies[2]—but these terms are not synonymous. While there is no agreed-upon or generally accepted medical definition for "irreversible" or "permanent" alopecia, at a basic level it means that an individual's hair will *never* regrow.  *See, e.g.*, Kessler Dep. 142:22–25 ("if it regrows . . . it's, obviously, not irreversible."), **Ex. I**.  Likewise, there is no medically accepted definition of "persistent alopecia," but the term generally describes hair loss for some duration of time following chemotherapy (e.g., 3 days, 30 days, 3 months, 6 months, etc.) and carries with it the potential for hair regrowth to occur.[3]

In the context of the TAX316 and GEICAM 9805 clinical trials, "ongoing alopecia" refers to patients that had alopecia at the time of their last follow-up visit, whenever that visit may have been.  The studies considered patients to have ongoing adverse events either (1) at the completion

---

[1] Collectively, a vast number of potential adverse events were reported and monitored in both studies, including alopecia, resulting in over 10,000 pages of patient records logged.

[2] *See, e.g.*, Kessler Report at ¶ 123 (incorrectly stating that TAX316 and GEICAM 9805 "identified reports of irreversible alopecia following Taxotere treatment."), **Ex. A**.

[3] For purposes of 30(b)(6) depositions in this litigation, Magistrate Judge North defined "persistent alopecia" as alopecia remaining six months after chemotherapy ended and without resolution.  Order (Rec. Doc. 3473) (July 18, 2018).  This definition is also consistent with the injury complained of in Plaintiffs' First Amended Master Long Form Complaint and Demand for Jury Trial. Pl. (Rec. Doc. 689) at ¶¶ 179-80 (July 25, 2017).

of the study, or (2) when the patient left study early for any reason (e.g., a patient died, a patient removed informed consent, a patient left the study protocol, a patient had recurrence of cancer requiring new or additional treatment, etc.). *See* Kopreski Dep. 560:10-21 (Dec. 13, 2018), **Ex. E**; *see also* Mancini Dep. 161:3-22 (Mar. 23, 2018), **Ex. J**; Gupta Dep. 175:25-178:14 (Apr. 10, 2018), **Ex. K**. "Ongoing alopecia" as used in these studies therefore includes patients who were lost from participation in the trial—some even before 6 months of time had lapsed from the last date of treatment—and were never re-evaluated to determine whether their alopecia resolved. Indeed, plaintiffs acknowledged this fact when successfully requesting to depose Sanofi representatives over reports of alopecia less than six months after treatment. *See* Hr'g Tr. July 18, 2018 Status Conference Before Judge North at 11:22-12:1 (Mr. Bachus: "for instance, somebody makes a report four months after. They say their hair has not grown back. If there is no follow-up report, did that get better in the next two months or is that something that went on for three, five, or seven years?"); 13:15-16 (arguing against conflating "persistent alopecia" as defined by the Court for 30(b)(6) purposes and described in Plaintiffs' Master Complaint with other instances of alopecia, citing the example of a potential plaintiff "who has filed a case who had alopecia that persisted for six months and [then] got better"); 14:18-15:6 (parties and Court discussing distinction between "permanent" and "persistent" alopecia in context of 30(b)(6) depositions).

Importantly, "ongoing alopecia" data from these studies does not imply that the alopecia was unanticipated or that it continued (or was expected to continue) for any duration of time. Rather, it is merely the recording of a condition existing at a particular moment in time. Indeed, of the 69 types of adverse events reported and monitored in the TAX316 clinical trial, the majority had at least some patients with adverse events recorded as "ongoing" under the same standard as patients who were recorded as having "ongoing" alopecia. *See* Sanofi_00724262, at

Sanofi_00724298-99 (for example, at the 10-year follow up, 10 patients had on going nausea, 4 had ongoing nail disorders, 2 had ongoing headaches), **Ex. G**.  Similarly, many type of adverse events reported and monitored in GEICAM 9805 were also recorded as "ongoing."  *See* Sanofi_00724381, at Sanofi 00724490 (for example, 2 patients had ongoing pain), **Ex. H**.  There has been no suggestion that any of these adverse events are "permanent."

Moreover, there is no evidence any of the "ongoing alopecia" patients from these studies were ever formally diagnosed with "permanent" or "irreversible" alopecia, or whether they even have alopecia today.  Citing "ongoing alopecia" data as evidence of "permanent" or "irreversible" alopecia is thus akin to suggesting that a high school classmate who was last seen ten years ago at graduation with acne currently constitutes a case of "permanent acne."

Plaintiff should be precluded from using or characterizing the "ongoing alopecia" data from these studies as evidence of "persistent," "irreversible" or "permanent" alopecia because such representations are misleading, will confuse the jury, and will result in unfair prejudice to Sanofi.  *See* Fed. R. Evid. 403.  The "ongoing alopecia" data does not reflect patients with diagnoses of irreversible alopecia caused by chemotherapy, nor does it even identify patients who experienced alopecia for an extended period.  Instead, the data simply reflects alopecia during a snapshot in time (the last follow up visit), which in some cases occurred very early in the follow up period (*i.e.* less than six months after the completion of chemotherapy).[4]  *See* Kopreski Dep.  560:1-21 (Dec. 13, 2018) (discussing documentation of ongoing adverse events in the TAX316 clinical trial), **Ex. E**.  The mischaracterization of this data will serve only to mislead and confuse the jury regarding

---

[4]  For example, Patient 15002—one of the twenty-nine patients with ongoing alopecia from TAX316—withdrew from the TAX316 clinical trial because she experienced a gastrointestinal adverse event.  Kopreski Dep.  576:7-578:21 (Dec. 13, 2018), **Ex. E**.  *See also* Kopreski Dep., Ex. 27 (Dec. 13, 2018), **Ex. L**.  She only attended one follow up visit less than three months after her first administration of Taxotere.  *Id*.  Because she had alopecia at that time and because there were no subsequent follow up visits, the study recorded her alopecia as ongoing.  *Id*.

5

what can reasonably be concluded from this data, thereby prejudicing Sanofi. *See* Fed. R. Evid. 403. Accordingly, Plaintiff should be precluded from introducing evidence or argument that "ongoing alopecia" data in the TAX316 and GEICAM 9805 studies represents evidence of "persistent," "permanent," or "irreversible" alopecia.

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile: 305-358-7470
hsastre@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on **July 16, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore
