UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

---

SANOFI DEFENDANTS' REPLY MOTION TO EXCLUDE
EXPERT TESTIMONY ON GENERAL CAUSATION

---

No replicated, controlled clinical trial data exists demonstrating that Taxotere causes permanent alopecia. Without that "gold standard" evidence, Plaintiffs arbitrarily (1) argue that clinical trials that did not isolate Taxotere or permanent alopecia are nevertheless dispositive; (2) highlight admittedly less reliable forms of data; and (3) try to manipulate their burden of proof. Plaintiffs' two general causation experts have not met their burden of demonstrating reliable opinions, reached pursuant to reliable methodologies, based on sufficient facts and data.

## I. PLAINTIFFS MISSTATE THEIR BURDEN OF PROOF AND FAIL TO IDENTIFY ANY RELIABLE CAUSATION METHODOLOGY.

Plaintiffs admit that the only two experts they have offered to opine on general causation are Dr. Madigan, a biostatistician with no medical training, and Dr. Feigal, a non-practicing oncologist, not an epidemiologist. Rec. Doc. 7513 at 1-2. To establish general causation in the Fifth Circuit, Dr. Madigan and Dr. Feigal must proffer reliable testimony that meets a well-recognized two-part test:

- *First*, the expert must identify a statistically significant association between exposure to the substance and the injury. *Burst v. Shell Oil Co.*, 2015 WL 3755953, at *5 (E.D. La. June 16, 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 2016).

- *Second*, the expert must consider whether the statistically significant association "reflects a true cause-effect relationship" through the use of a reliable methodology, like the Bradford-Hill criteria. *Burst*, 2015 WL 3755953, at *5.

Plaintiffs cannot meet these requirements. Instead, Plaintiffs incorrectly claim that (1) statistical significance is not required, and (2) application of the Bradford-Hill criteria is not necessary. Relying on inapposite out-of-circuit caselaw, Plaintiffs argue that the "totality of the evidence" may be considered to meet their burden. Rec. Doc. 7513 at 2, 6, 9, 16-17, 25.

For their claim that statistical significance is not required, Plaintiffs cite a Colorado environmental nuisance case in which the plaintiffs claimed diminished property value but no personal injuries. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006). The

defendant challenged the expert testimony assessing the risk (but not the cause) of disease based on an ecological study that failed to find statistical significance. *Id.* at 1087-88, 1095-97. The court rejected the defendant's challenge because the plaintiffs' burden was only to prove risk resulting in lower property values, not medical causation. *Id.* at 1096-97. The Tenth Circuit recognizes that in personal injury cases, on the other hand, statistical significance is required. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 887 (10th Cir. 2005) (affirming exclusion of expert, holding that "[w]e cannot allow the jury to speculate based on an expert's opinion which relies only on clinical experience in the absence of showing a consistent, statistically significant association"). *Cook* has no application here.

For their claim that a purported evaluation of the "totality of the evidence" may demonstrate causation, Plaintiffs cite a single Illinois case in which the court allowed its use "provided that the expert … *explains how the weight of the various pieces of evidence led him to his conclusion.*" *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 2017 WL 1833173, at *9 (N.D. Ill. May 8, 2017) (internal citations omitted, emphasis added). Without rigorous explanation, the "weight of the evidence" standard is unreliable and "unacceptably manipulable." *In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 247 (S.D.N.Y. 2018) (internal quotation omitted); *Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1273 (N.D. Ala. 2017) (finding weight-of-the-evidence methodology unreliable because expert did not adequately describe the process used or steps taken). Here, Dr. Feigal's report does not attempt to describe the processes she purportedly undertook in weighing the totality of the evidence. Indeed, her report does not even mention the "totality" or "weight" of the evidence. At her deposition, Dr. Feigal testified only that she "triangulat[ed]" data. Ex. A. Feigal Dep. Tr. Vol. III 549:6-20 (attached hereto) ("What I did is look at the triangulation of issues across the

2

controlled clinical studies, the published papers and the pharmacovigilance data."). That *ipse dixit* is insufficient under any standard.

Plaintiffs finally suggest that, because their two experts' methodologies are allegedly based on "the methodologies that FDA" utilizes, and are supposedly consistent with Sanofi's 2015 regulatory overview to FDA, Plaintiffs have necessarily met their burden. Rec. Doc. 7513 at 1. That argument, however, conflates the lower burden for regulatory rule-setting with the higher burden for legal causation. The former utilizes a "lower burden of proof" to "reduce public exposure to harmful substances," *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996), and is, therefore, "*not a tool for establishing causal attributions between products and adverse events*," *Wells v. SmithKline Beecham Corp.*, 2009 WL 564303, at *12 (W.D. Tex. Feb. 18, 2009) (internal quotation omitted), *aff'd*, 601 F.3d 375 (5th Cir. 2010). Indeed, in 2015, the FDA recognized that "*it's impossible to determine whether the permanence of alopecia was due to docetaxel*," Ex. B to Motion for Summary Judgment on Preemption (Rec. Doc. 6131-5), Victoria Rpt. 69-70 (emphasis added), and the FDA reviewer commented that the approved label change—"permanent cases have been reported"—was the only statement possible "given the *tremendous limitations* of the available data." *Id.* 71-72 (emphasis added). While the "tremendous[ly]" limited data may have warranted a label change in 2015 under FDA's lower burden, it is insufficient as a matter of law to prove general causation.

## II. PLAINTIFFS RECOGNIZE, BUT CANNOT SATISFY, THE SCIENTIFIC HIERARCHY OF EVIDENCE.

Plaintiffs appear to recognize the hierarchy of scientific evidence as a "fundamental principle of evidence-based medicine." Rec. Doc. 6163 at 4-6. Plaintiffs acknowledge that epidemiology is the "gold standard," and that courts and scientists consider randomized controlled clinical trials the best evidence of causation. *Id.* at 10, 23 (stating randomized trials … 'are at the

Case 2:16-md-02740-JTM-MBN   Document 7681   Filed 07/17/19   Page 5 of 12

top of the heap in terms of … shedding light on causal questions.'"); *see also Brock v. Merrell Dow Pharm., Inc.,* 874 F.2d 307, 311 (5th Cir. 1989) ("Undoubtedly, the most useful and conclusive type of evidence in a case such as this is epidemiological studies.").

Plaintiffs also concede, as they must, that adverse event reports and case reports (like those found in the FAERS database and Sanofi's internal database, as well as those discussed in the literature) are "not terribly useful" or reliable sources of data for purposes of evaluating medical causation. Rec. Doc. 7513 at 12-13. Courts and scientists recognize this as well. *See* Ex. A to Motion to Exclude Expert Testimony on General Causation (Rec. Doc. 6163-1), Federal Judicial Center, *Reference Manual on Scientific Evidence* at 723–25 (3d ed. 2011) (discussing "hierarchy of medical evidence" and noting that case reports "are at the bottom of the evidence hierarchy."); *Burst*, 2015 WL 3755953, at *8 (recognizing that "[c]ase reports … cannot establish general causation because they simply describe [] reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation") (internal quotation omitted). Plaintiffs claim, however, that because Dr. Madigan's and Dr. Feigal's opinions are "largely" based on clinical trial data, they can still rely on admittedly less reliable forms of data to "strengthen" their opinions. Rec. Doc. 7513 at 10.

Plaintiffs fail to recognize, though, that *there is no consistent and replicated controlled clinical trial data demonstrating that Taxotere causes permanent alopecia*. In other words, the "gold standard" does not exist. None of the TAX clinical trials analyzed whether Taxotere causes permanent alopecia, and Plaintiffs' attempts to overcome that fact fail. Without relevant epidemiological data on which to ground their opinions, Dr. Madigan's and Dr. Feigal's opinions are based on pieced-together evidence that Plaintiffs admit is less reliable, rendering their opinions

necessarily subject to exclusion under *Daubert*.

## III. DR. MADIGAN'S OPINIONS ARE INADMISSIBLE.

### A. Dr. Madigan's "General Causation" Opinion is Unsupported.

Plaintiffs continue to insist that Dr. Madigan will opine not just on his statistical analyses but will also offer a causation opinion. Rec. Doc. 7513 at 3-4. Dr. Madigan is not qualified to assess epidemiological evidence for causal purposes, as other courts have found. *See In re Abilify*, 299 F. Supp. 3d 1291, 1361 (N.D. Fla. 2018) (prohibiting Dr. Madigan from offering a general causation opinion because he lacked "the medical knowledge and experience" necessary).[1]

Further, Dr. Madigan admittedly did not apply the Bradford-Hill criteria, Rec. Doc. 7513 at 16, or even the "totality of the evidence" standard Plaintiffs claim is an appropriate methodology to opine on general causation. Instead, Dr. Madigan claims he applied the methodology used "at the FDA when they convene an advisory committee to look at a safety issue … that may … shed light on a causal question." Rec. Doc. 7513 at 4. As explained above, the methodology employed by the FDA to assess a safety issue utilizes a lower burden of proof that is insufficient to establish medical causation. *Allen*, 102 F.3d at 198. Any "general causation" opinion Dr. Madigan intends to offer is not supported by a reliable methodology and must be excluded.

### B. Dr. Madigan's Statistical Analyses are Insufficient and Unreliable.

At most, relying on the TAX clinical trial data and other "not terribly useful" data to "strengthen" his opinion, Dr. Madigan claims to have found a statistically *insignificant* association

---

[1] Plaintiffs' claim that Dr. Madigan has been repeatedly approved to testify regarding general causation is incorrect. In each of the cited cases save one Dr. Madigan was permitted to testify solely regarding a statistical analysis. In the other, Dr. Madigan's ability to testify regarding general causation was not challenged. *See In re Actos (Pioglitazone) Prod. Liab. Litig.*, 2013 WL 6796461, at *15 (W.D. La. Dec. 19, 2013).

5

between Taxotere-containing treatment regimens and alopecia. That opinion is insufficient to meet Plaintiffs' burden.

First, Dr. Madigan's analysis is inadmissible because statistical significance was admittedly not found. Plaintiffs claim, citing a Massachusetts Title VII case, that an expert is "allowed to rely on their own professional judgment when determining the level of trust they will extend to one statistical analysis versus another." Rec. Doc. 7513 at 17. That is not the law in the Fifth Circuit, however, where "studies that do not represent statistically significant results may not provide a reliable foundation for an epidemiologist's general causation opinion … ." *Burst*, 2015 WL 3755953, at *6 (quoting *LeBlanc ex rel. Estate of LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 99 (5th Cir. 2010) (affirming rejection of expert's general causation testimony based on "the studies [that] do not represent statistically significant results")); *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 380 (5th Cir. 2010) ("[T]his court has frowned on causative conclusions bereft of statistically significant epidemiological support.").

Second, Dr. Madigan is not permitted to pool clinical trial results together to find statistical significance. His pooled results included data from GEICAM9805/TAX301, a clinical trial which Dr. Madigan roundly criticized as unreliable and which Dr. Madigan, in his own words, admitted garnered results that were "not statistically very impressive." Ex. S, Madigan Dep. 254:23–255:11; 256-14-15 (Rec. Doc. 6163-19). Meta-analyses cannot be used to find statistical significance where it does not otherwise exist. *In re: Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 2015 WL 7776911, at *15 (E.D. Pa. Dec. 2, 2015), *aff'd* 858 F.3d 787 (3d Cir. 2017). Plaintiffs cite no authority permitting a meta-analysis under these circumstances.

Third and most fundamentally, even if Dr. Madigan's analysis resulted in admissible statistical significance, Dr. Madigan's opinion is still unreliable because neither clinical trial

6

isolated either Taxotere or permanent alopecia. Plaintiffs' counsel speculates that, because the only "differing factor" between the TAC and FAC arms of the studies was the presence of Taxotere, Taxotere is the only substance "that could ostensibly account for the increased incidence" of disease. Rec. Doc. 7153 at 15. Lawyer speculation is not scientific analysis, nor is it consistent with Dr. Madigan's conclusion that *TAC* (not Taxotere) was associated with an increased risk of disease over FAC. Ex. S, Madigan Dep. Tr. 305:18-23 (Rec. Doc. 6163-19). Dr. Madigan admitted that his analysis could not isolate Taxotere as the cause of permanent hair loss: "Q. You can't rule out other chemotherapies as causes of irreversible alopecia? … A. I can't rule out -- I do not know, one way or another, whether other chemotherapy agents cause irreversible alopecia."[2]  *Id.* 284:4-12. That it, the "gold standard" of replicated epidemiological evidence analyzing *Taxotere and permanent alopecia specifically* does not exist. Dr. Madigan's ultimate conclusion regarding TAC versus FAC is irrelevant to the question of whether *Taxotere* causes permanent alopecia and would likewise be irrelevant to the many MDL plaintiffs (including Ms. Earnest) who received a regimen containing something other than TAC.[3]

Without any way to demonstrate statistical significance based on relevant epidemiological data, the other evidence Dr. Madigan cites is of little value, as Plaintiffs admit. Rec. Doc. 7153 at 12-13. The case reports searched for in the FAERS and Sanofi databases are admittedly "not

---

[2] Despite these admissions, when discussing Dr. Madigan's opinions, Plaintiffs exhibit a troubling habit of ignoring the other drugs administered in both arms of each clinical study—the "A" and "C." "Dr. Madigan's meta-analysis found a significantly increased risk of permanent alopecia for patients who received *Taxotere* rather than FAC (the other drug combination involved in Sanofi's studies)." Rec. Doc. 7513 at 18. Those statements both misrepresent Dr. Madigan's conclusions and the evidence.

[3] Ironically, Plaintiffs claim that clinical trial data related to individuals who received TAC is sufficient to prove that Taxotere alone caused Plaintiffs' permanent alopecia. But they also claim that Sanofi cannot argue that Taxotere saved Plaintiffs' lives—in particular Ms. Earnest's—because it was given to her after she had surgery "to remove the cancer in conjunction with radiation *and other chemotherapy agents*." Rec. Doc. 7660 at 3 (emphasis added).

7

terribly useful." *Id*. 13.  And any reliance on Sanofi's 2015 submission to the FDA has been disclaimed by Dr. Madigan for these purposes:  "Dr. Madigan's reliance on the Clinical Overview is clearly limited to Sanofi's failure to take certain actions sooner," not to causation.  *Id.* 14.  Dr. Madigan's opinions are not supported by sufficient data or reliable methodology.

**IV.    DR. FEIGAL'S OPINIONS ARE INADMISSIBLE.**

      **A.    Dr. Feigal's "General Causation" Opinion is Unsupported.**

Plaintiffs claim Dr. Feigal offered a general causation opinion by stating "[p]ermanent chemotherapy-induced alopecia is a known adverse event of Taxotere-containing regimens." Rec. Doc. 7513 at 4.  But an "adverse event" is not causation and "Taxotere-containing regimens" are not Taxotere.  Regardless, any causation opinion offered by Dr. Feigal must be based on a study finding statistical significance: "studies that 'do not represent statistically significant results' may not provide a reliable foundation for an epidemiologist's general causation opinion in a toxic torts case." *Burst*, 2015 WL 3755953, at *6 (quoting *LeBlanc*, 396 F. App'x at 99).  Dr. Feigal did not find—or look for—statistical significance, and neither did Dr. Madigan (nor did Dr. Feigal review his work).  Ex. U, Feigal Dep. Tr. Vol. I 204:7-16 (Rec. Doc. 6163-21); Ex. I, Feigal Dep. Tr. Vol. III 165:14-166:7 (Rec. Doc. 6163-9); Ex. B, Feigal Dep. Tr. Vol. I 67:24-68:1 (attached hereto). Dr. Feigal's general causation opinion is inadmissible.

      **B.    Dr. Feigal's General Causation Opinion Is Unreliable.**

Even if Plaintiffs had proven a statistically significant association, they still must prove that it is causal.  Plaintiffs alternatively claim that Dr. Feigal applied certain of the Bradford-Hill criteria <u>and</u> that application of the Bradford-Hill criteria was not necessary because Dr. Feigal was permitted to evaluate the "totality of the evidence" in assessing causation.  Rec. Doc. 7513 at 20-21, 25-26.  Plaintiffs cite no Fifth Circuit caselaw in support, but regardless, in her report Dr. Feigal

8

(1) referenced only one of the Bradford-Hill criteria, Ex. T, Feigal Rpt. (Rec. Doc. 6163-20), and (2) never mentioned the "totality" or "weight" of the evidence, much less the steps she took, the factors she assessed, or the weight she ascribed to each of those factors. Upon questioning, Dr. Feigal claimed only that she "triangulated" data from the TAX clinical trials, the literature, and Sanofi's 2015 submission to the FDA, placing the most emphasis on the clinical trials. Ex. A. Feigal Dep. Tr. Vol. III 549:6-20 (attached hereto); Rec. Doc. 7513 at 23. Dr. Feigal articulated no further (let alone "rigorous") explanation demonstrating a "scientific method of weighting" rather than "a mere conclusion-oriented selection process." *In re Mirena*, 341 F. Supp. 3d at 247. Dr. Feigal's vague "triangulation" is exactly the type of "virtually standardless" and "unacceptably manipulable" "methodology" that courts have held fails to satisfy *Daubert*. *Id.*

The standardless nature of Dr. Feigal's methodology is exemplified by her opinion on biological plausibility—that Taxotere causes permanent alopecia by damaging the stem cells. Dr. Feigal claims she analyzed biological plausibility, Rec. Doc. 7513 at 5, 26, but never explained what evidence supported it, what weighting she applied, or how the abandoned stem cell testing impacted her conclusion. Plaintiffs' argument regarding the stem cell testing—and what positive stains were capable or incapable of indicating—misses the point. *Id.* at 27-31. Plaintiffs' failure to disclose the testing and their experts' failure to consider or explain the results when reaching their opinions, render their methodologies unreliable. Rec. Doc. 7316. Such is the case with Dr. Feigal's failure to explain how the testing results weigh against other alleged evidence supporting her position on stem cells and biological plausibility.

Dr. Feigal's opinion is also unreliable and inadmissible because it is based on insufficient facts and data. No expert found a valid, statistically significant association based on the TAX clinical trials. Dr. Feigal's analysis of the results also did not isolate either Taxotere or permanent

9

alopecia, nor could it. Dr. Feigal does not address the fact that the clinical trials did not analyze permanent alopecia, but she claims that she did not need to rule out the "A" or the "C" to rely on the results. Rec. Doc. 7513 at 23-24. Plaintiffs cite no caselaw holding such an arbitrary declaration scientifically acceptable—they cite only Dr. Feigal's say so. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert testimony based on *ipse dixit* need not be admitted). Dr. Feigal's analytical leap from data regarding TAC and FAC, without ruling out the "A" or the "C," to her conclusion that the trials show "meaningful evidence of *Taxotere's* causative properties" is a leap too far and is inadmissible. *Burst*, 2015 WL 3755953, at *7, 11 (citing *LeBlanc*, 396 F. App'x at 99)) (stating that studies that only analyze exposure to a combination of substances can be disregarded in assessing general causation of one of those substances).

With no admissible grounding in epidemiology, Dr. Feigal's opinion rests solely on case reports in the literature and Sanofi's 2015 submission to the FDA. But Dr. Feigal admitted her literature search was insufficient "standing alone" to prove causation. Rec. Doc. 7513 at 23. And Dr. Feigal articulated no replicable, scientific methodology for her approach—rather, she claimed she chose or rejected literature based on her "good judgment," which is *per se* unreliable. Rec. Doc. 7513 at 20; *Joiner*, 522 U.S. at 146. Finally, Sanofi's 2015 submission to the FDA was conducted pursuant to a "lower burden of proof" and does not prove causality. *Allen*, 102 F.3d at 198. Dr. Feigal also ignores FDA's statements that the data presented was "tremendous[ly]" limited and made it impossible to determine causation based on Taxotere. Victoria Rpt. 69-70 (Rec. Doc. 6131-5). Dr. Feigal's opinions are not appropriately supported and should be excluded.

## CONCLUSION

For the reasons stated and set out in Defendants' motion, the Court should exclude the expert testimony of Dr. Madigan and Dr. Feigal on general causation under Rule 702.

Date: July 17, 2019

---

Date: July 17, 2019

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **July 17, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore