**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                              SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

**DEFENDANT SANOFI'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON PREEMPTION**

In 2015, after lobbying by Plaintiffs and their counsel, including counsel for Barbara

Earnest, FDA commanded Sanofi to make only a modest change to the Taxotere labeling to

describe that cases of permanent alopecia have been reported.  In the lawsuits, Plaintiffs argue for

a change the FDA refused to adopt: Plaintiffs' rely on their expert, Dr. David Kessler, who opines

that, as early as 2009, the label's Warnings and Precautions section should have stated that

Taxotere causes permanent hair loss.  Since **December 14, 2015,** the FDA repeatedly has told

Plaintiffs, "No."  Two subsequent decisions and correspondence among Plaintiffs, their lawyers,

and the FDA make the law and record incontrovertible that the FDA did not permit the Plaintiffs'

proposed labeling change.

> **I.** **Supplemental Authority Construing *Albrecht* Demonstrates That Ms.**
> **Earnest's Warnings Claim Is Preempted.**

In her Opposition to Sanofi's Motion for Summary Judgment Based on Preemption (Rec.

Doc. 7512), Plaintiff misconstrued *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668

(2019) and *In re Zofran (Ondansetron) Products Liability Litigation*, 368 F. Supp. 3d 94 (D. Mass.

2019), arguing that a manufacturer presenting a preemption defense must prove that FDA had

refused—through some formal, public, notice-and-comment-type process—a label change

proposed by the manufacturer and using the very phrasing advanced by the plaintiffs.  *See* Opp. at 2.  In its Reply in support of its motion filed July 12, 2019, Sanofi addressed Plaintiffs' misreading of *Albrecht* and noted that the *Zofran* Court was then reconsidering its decision in light of *Albrecht*.  Reply at 1.

Supplemental authority decided since Sanofi's Reply makes clear that:

(1) Agency action disproving a label change may entail any action "taken pursuant to FDA's congressionally delegated authority," which includes a broad range of agency actions beyond notice-and-comment rulemaking, *see Albrecht*, 139 S. Ct. at 1679 (providing several examples of official FDA acts that could preempt state-law failure-to warn claims, including not only "disapproval of a warning by means of notice-and-comment rulemaking," but also "formally rejecting" a warning label in a complete response letter, denial of an New Drug Application because of a false or misleading label, or label changes requested by the agency).

(2) Preemption flows from FDA's rejection of proposals by third parties, *e.g*., denial of a Citizen's Petition, not just FDA's response to manufacturers' requests for label changes;

(3) The FDA need not reject precise label change verbiage proposed by plaintiffs for its decision to preempt a failure-to-warn claim.

Specifically, after Sanofi filed its Reply, in *Zofran*, Judge F. Dennis Saylor, IV vacated his prior denial of defendant's motion for summary judgment:

> On February 5, 2019, the Court issued a Memorandum and Order denying GSK's motion for summary judgment based on federal preemption. In that memorandum and order, the Court concluded, among other things, that the issue of FDA federal preemption was a question of fact to be decided by the jury, not a question of law to be decided by the Court. On May 20, 2019, in *Merck [v. Albrecht]*, the Supreme Court ruled that **the issue of FDA federal preemption is a question of law, not fact**. In light of that decision, the relevant portions of the Court's February 5, 2019 Memorandum and Order […] are hereby VACATED.

*In re Zofran*, No. 15-md-2657, Rec. Doc. 1580, at 1 (D. Mass. July 16, 2019) (emphasis added), attached as **Ex. A**.  As in *Taxotere*, the *Zofran* Court recognized that the preemption motions were filed before *Albrecht* and the significance of the decision is apparent from what the MDL did next: it continued the first trial date from September 16, 2019, to a date to later be set by the Court, and permitted the defendant to file a renewed summary judgment motion on preemption.  The court in *Zofran* recognized that, although the question before the court is a legal one, it requires the court's due consideration of labeling changes the Agency did or would have rejected based on the regulatory history.  And the *Zofran* Court recognized the importance of getting that legal question right by entertaining requests from the parties to invite amicus participation by FDA.  *See id.* at 2. The issue here commands this Court's same due consideration.

Also since Sanofi's Reply, on July 22, 2019, Judge James S. Hill of the South Central Judicial District of North Dakota issued an order construing *Albrecht*.  *See State of North Dakota Ex Rel. Wayne Stenehjem v. Purdue Pharma et al.*, No. 8:18-cv-01300, Order Denying Plaintiff's Rule 60(b) Motion for Relief from Judgment at ¶ 10 (So. Cen. Jud. Dist. N.D. July 22, 2019), attached as **Ex. B**.  The Court denied the State of North Dakota's motion for reconsideration of its prior ruling granting summary judgment on preemption grounds and rejected as "nonsensical" the Plaintiffs' proposal here that "impossibility" preemption requires a manufacturer to prove that *it* proposed and the FDA rejected the label change advanced by the lawsuit plaintiffs:

> This Court does not read *Merck* so narrowly.  The State's argument ignores the *Merck* Court's explicit warning that "[t]he question of disapproval 'method' is not now before us."  ... The Merck Court certainly did not decide whether other agency actions, such as the denial of a Citizen Petition, would be sufficient.
>
> Moreover, this Court finds the State's narrow interpretations of *Wyeth* and *Merck* to be nonsensical.  Where the FDA has already rejected a proposed label or warning change, as it did in this case, there is no reason why the "impossibility" of a subsequent change would depend on whether the earlier change was proposed by the manufacturer as opposed to a third party or the FDA itself.  Regardless of who

submitted the proposed warning or labeling change, the FDA has already decided that the relevant evidence and policies do not meet the standard to justify a change.

… This Court concludes that under *Merck*, *Wyeth* preemption applies anytime the applicable statutes, regulations, or constitutionally permitted actions of the FDA show that the FDA would not have approved a change to a pharmaceutical manufacturer's labeling or advertising.

… The Complaint contains no new allegations of newly acquired information that could provide a basis for Purdue to change its labeling, warnings, or marketing without prior FDA approval. … Instead, consistent with the United States Supreme Court's decisions in *Wyeth* and *Merck*, there is "clear evidence" that the FDA would not have approved changes to Purdue's labels, marketing, or warnings to comport with the State's claims.

… This Court concludes that state law claims asserted by the State are preempted in this matter by federal law."

*Id.* at ¶¶ 12-13, 15, 17-18, attached as **Ex. B**.

*Zofran* and *Purdue* directly support Sanofi's pending Motion and its showing that *Albrecht* allows summary judgment where, as here, there is evidence that the FDA declined—via an action within the scope of its authority—to adopt Plaintiffs' proposed changes to a medication's labeling.

**II.    FDA's Actions With Respect To Taxotere's Label Not Only Show That FDA Would Not Have Approved Plaintiffs' Proposed Change to The Medicine's Label, But Actually Considered and Rejected Their Proposal**

The FDA considered Plaintiffs' and their lawyers' proposal for a warning that Taxotere causes permanent hair loss and rejected it.  Rather than approve the Plaintiffs' proposed label, the FDA directed Sanofi to provide FDA with Sanofi's analysis of the issue, directed Sanofi to make changes to specific sections of the medicine's labeling, and FDA approved the labeling change as directed.  During the relevant time, FDA repeatedly communicated to Plaintiffs and their lawyers about the basis and scope of its decision, and rejected Plaintiffs' calls for the labeling changes they propose in this litigation.

To be clear, the FDA made repeated decisions that foreclose Plaintiffs' proposed alopecia label, and which therefore preempt Plaintiffs' claim:

- The FDA's pre-approval changes to the 2004 Taxotere labeling, which omitted alopecia from the list of persistent reactions (Def. Br. at 7);

- FDA's 2011 determination to relieve Sanofi of its postmarketing study obligations on the basis of the 10-year TAX316 data and after Sanofi's submission of its 2011 Clinical Overview, without a labeling change (*id.* at 8-10);

- The 2011 FDA Guidance document, identifying alopecia with cancer treatment as an exemplar, non-serious adverse reaction (*id.* at 24); and

- Its 2015 determination to update the Taxotere labeling in Section 6.2 Postmarketing Experience, and in Section 17 Patient Counseling Information (*id.* at 10-12).

Communications between the FDA and directly with Plaintiffs themselves and their lawyers confirms that the FDA considered and rejected the labeling change that Plaintiffs' claims demand – a warning about permanent alopecia.[1]  This correspondence includes the following:

**Ex. C -** Emails among Deborah Miller, Kelly Gahan, and Taxotears group members (March 10, 2015), reflecting the involvement of Plaintiffs in FDA's inquiry to Sanofi, which culminated in the December 2015 labeling change;

**Ex. D –** Emails among Deborah Miller, Kelly Gahan, and Taxotears group members  (April 14, 2015), reflecting Plaintiffs' talking points for their conference with the FDA the next day and including requests for the labeling changes now advanced in the litigation here, based on the same allegations here;

**Ex. E** – Letter from FDA to Sanofi (Oct. 2, 2015), directing Sanofi to update Section 6.2 (Postmarketing Experience) and to Section 17 (Patient Counseling Information) of the Patient Package Insert (PPI) for Taxotere.

**Ex. F** – Emails among Deborah Miller, Sherri Jo McLemore, and Taxotears group members (Dec. 14, 2015), reflecting that FDA specifically determined to include information on

---

[1] Sanofi is not arguing that this *correspondence* is entitled to preemptive effect but offers how the correspondence makes clear the intent of FDA's formal determination on listing permanent alopecia in the medicine's labeling.

permanent or irreversible alopecia in Section 6.2 (Postmarketing Experience) and to Section 17 (Patient Counseling Information) of the Patient Package Insert (PPI) for Taxotere on December 11, 2015, based on the input of Plaintiffs (and their and Ms. Earnest's counsel);

**Ex. G** – Email from Bob Weinberger to Taxotears (Dec. 17, 2015), soliciting plaintiffs in the litigation based in part on his involvement (as counsel for Ms. Gahan, other plaintiffs, and with the firm representing Ms. Earnest) in the conferrals with FDA that culminated in the 2015 labeling change: "As you may be aware I am Kelly Gahan's attorney.  Dr. Gahan contacted my former law firm (Weinberger Law Offices) well over a year ago to explore the possibility of bringing litigation regarding the use of Taxatere and the resulting alopecia. **I was also involved in the call with the FDA, in which each of you were participants.  I am in receipt of Deborah Miller of the FDA's email of December 14 advising that they have required Sanofi to warn of the risk of permanent/persistent alopecia**. . . . As you may also be aware, I am now with Bachus and Schanker, LLC. (B&S).".

**Ex. H** – Exhibit B to Sanofi's Reply (Rec. Doc. 7634) shows that on January 28, 2018, Plaintiff Kelly Gahan wrote FDA describing permanent alopecia as a "major and life altering complication" with a "high incidence" and asking FDA to give it more "prominence" in the label:

From: bluermedic@gmail.com [mailto:bluermedic@gmail.com]

Sent: Sunday, January 28, 2018 8:23 PM

To: Miller, Deborah <Deborah.Miller@fda.hhs.gov>

Cc: Pazdur, Richard <Richard.Pazdur@fda.hhs.gov>

Subject: Black box warning

Hi Deb,

I hope you are well. I don't know if you can help me with this but I am still upset
there is not a black box warning for taxotere and permanent hair loss. As a physician
myself I know that I try hard to go over any black box warnings with my patients.
Massive permanent disfigurement would seem to qualify. Cancer is becoming much
more of a chronic condition than a death sentence. As such if a drug may leave you
looking like a freak for the rest of your life you would think that possibility would
be highlighted. I have never spoken with a woman who this has happened to who
hasn't had persistent and prolonged suicidal ideation because of it. Several members
of our group have been hospitalized for suicide attempts. If there are black boxes for
suicidal thoughts why isn't there a black box for something that makes you suicidal.
I also feel frustrated with the FDA. Despite the FDAs role as a watchdog the FDA
missed that this was happening for almost 2 decades. Then it took 8 months to get a
label change during which time numerous women were permanently disfigured. I
feel the FDA is in cahoots with Sanofi. The label change seemed coordinated with
the FDAs approval for cold caps. The cold cap study was funded by Sanofi and was
many years in the making. They knew they had a big problem and their multi billion
dollar dug was in danger of being rejected by consumers. It seems rather convenient
for them that the FDA didn't make them change the label until the cold caps were
ready to go.  We now have 7,000 cases filed in the multi district litigation and will
probably get many thousands more. This is a major life altering complication with a
high incidence. It deserves prominence on the warning label. Thank you for your
time and all your help with this issue.

Kelly

The FDA responded the next day and explained that the lead plaintiff's requested warning
was not consistent with FDA guidelines and that FDA had already considered whether and how
information about permanent alopecia should be included in the labeling for Taxotere:

7

On Jan 29, 2018, at 1:01 PM, Miller, Deborah <Deborah.Miller@fda.hhs.gov> wrote:

Hi Kelly,

Thank you for your email. In 2011, FDA issued final guidelines for the content and formatting of boxed warnings, as well as other types of labeling. Please see:

https://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM075096.pdf .

See page 11 for the situations where a boxed warning is deemed appropriate for a drug label. Boxed warnings are most likely used to provide warnings to the prescribing physician when there are observed serious adverse reactions, and in instances, when a boxed warning based on an anticipated adverse reaction would be appropriate. The boxed warning is used in situations where a serious adverse event (e.g., life-threatening adverse reaction) outweighs the potential benefit of the drug.

FDA officials determined that the appropriate place for the possible permanent alopecia is in Section 6.2 Postmarketing Experience, and in Section 17 Patient Counseling Information of the Taxotere label.

In doing so, FDA in 2018 confirmed that:

> **FDA officials determined that the <u>appropriate place</u> for the possible permanent alopecia is in Section 6.2 Postmarketing Experience, and in Section 17 Patient Counseling Information of the Taxotere label.**

*Id.* (emphasis added).  FDA's 2018 communication confirms that its 2015 agency action – the approval of Sanofi's labeling change to add a reference to cases of permanent alopecia in Sections 6.2 and 17 of the labeling – reflects its consideration of the same information on which Plaintiffs' experts rely and its determination that the information did not warrant a label change to include Taxotere causing permanent alopecia as a Warnings and Precautions.

## CONCLUSION

In sum, federal law preempts a state tort law claim by Plaintiffs that in 2009, Sanofi should have added a Warning and Precaution that Taxotere causes permanent hair loss when FDA repeatedly rejected that proposal even on six years of additional information, in 2015, and on another nine years of information in 2018.

The only concrete claim advanced by expert testimony is that Sanofi should have given a ***warning*** that Taxotere causes permanent hair loss.  FDA considered and rejected that option before these lawsuits were even filed in 2015 and a position it confirmed again in its 2018 communication with Plaintiff Gahan.  Plaintiff Earnest offers no expert opinion on a warnings theory that is not preempted by FDA's official determinations to the contrary.

Accordingly, for the foregoing reasons and those set forth in its prior briefing, Sanofi respectfully submits that the Court should grant their Motion for Summary Judgment Based on Preemption.


Date:  July 23, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

***Counsel for Sanofi-Aventis U.S. LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on **July 23, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Douglas J. Moore*
Douglas J. Moore