## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

---

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR FIRST OMNIBUS MOTIONS IN LIMINE (NOS. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, AND 14)

---

Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc. ("Sanofi") hereby submit the following Memorandum in Support of Their Omnibus Motions in Limine pursuant to Case Management Order 14B:

**1. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE PURPORTED MORAL OR ETHICAL DUTIES OF PHARMACEUTICAL DRUG MANUFACTURERS.**

Some of Plaintiff's experts have offered improper personal opinions regarding the moral and/or ethical duties governing how pharmaceutical drug companies should conduct themselves and whether Sanofi complied with those purported duties.[1] Such evidence is inadmissible because (1) it is not relevant to any element of Plaintiff's claims, and (2) any probative value from these opinions is substantially outweighed by the danger of unfair prejudice, confusing the issues,

---

[1] *See e.g.*, Kessler Report at 9 ¶ 33–37 (opining that a drug company owes duties to consumers outside those implemented by FDA regulations), **Ex. A**; Plunkett Dep. 311:21–313:2 (explaining that while she has not been asked to opine on Sanofi's conduct, she has an opinion "based on what [she] believe[s] the company should have been aware of."), **Ex. B**; Feigal Dep. Vol. I at 102:4–16 ("I think there's an ethical responsibility"), 116:12-117:9 ("A company has their own ethical principles that don't necessarily -- there are legal requirements, but then there are ethics and principles that companies have about sharing information with physicians and with patients. . . . I will not opine on the specifics of inadequacy of a label, but I do have an opinion about whether or not communication of relevant information to physicians was done."), **Ex. C**.

misleading the jury, and wasting time.  *See* Fed. R. Evid. 401–403; *see also In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, No. 14-2720, Order and Reasons (Regarding Motions In Limine), Doc. No. 6254, at 14 (E.D. La. Apr. 18, 2017) (excluding evidence and argument concerning the moral or ethical duties of pharmaceutical manufacturers), **Ex. D.**

### A.    Opinions Regarding Moral or Ethical Duties Are Irrelevant.

The law—not subjective perspectives on morality or business ethics—governs this case. Evidence concerning moral or ethical duties of drug manufacturers (separate and apart from their duties under the law) does not make any material fact in this case more or less probable.  Such evidence is therefore irrelevant and inadmissible.  *See In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at 14 (sustaining motion *in limine* to exclude evidence concerning the moral or ethical duties of pharmaceutical manufacturers), **Ex. D**; *see also In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 6740391, at *12 (S.D. Ill. Dec. 22, 2011) (precluding plaintiffs from asking defense witnesses whether they believed the defendant had acted "morally or with decency or in an ethical manner"); *Riley v. Ford Motor Co.*, No. 2:09-cv-148, 2011 WL 3273592, at *6 (S.D. Miss. July 29, 2011) (granting motion *in limine* excluding "evidence or argument concerning Defendants' moral or ethical obligations"); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp.2d 531, 543–45 (S.D.N.Y. 2004) (excluding expert testimony on ethics because it was an irrelevant and unreliable personal opinion); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp.2d 1029, 1053–54 (D. Minn. 2007) (excluding an expert's personal views as to whether the defendant acted ethically, irresponsibly, or recklessly).[2]

---

[2]  *See also In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-1700, 2010 WL 7699456, at *24–25 (N.D. Ohio June 4, 2010) (excluding expert testimony that defendants acted unethically because "the ethical standards [identified by the witness] [were] different from the legal standards" that applied in the case; "the critical question for [the] jury [was] whether the

## B.     The Unfair Prejudice Substantially Outweighs The Probative Value.

Evidence and argument about a manufacturer's moral or ethical duties is also inadmissible under Fed. R. Evid. 403.  *See, e.g.*, *In re Rezulin*, 309 F. Supp. 2d 531, 545 (excluding expert testimony about a manufacturer's moral or ethical duty because it would unfairly prejudice the defendant and confuse the trier of fact); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *9 (E.D. Pa. Feb. 1, 2001) (excluding medical ethics expert opinions as "marginally relevant" to defendant's conduct in manufacturing and marketing the drugs).  Testimony from Plaintiff's experts on moral and ethical standards serves no purpose other than to paint Sanofi as a bad actor as judged by the subjective moral and ethical standards of Plaintiff's expert witnesses— not the legal standards that govern Plaintiff's claims.  Moreover, the presentation of such evidence would serve only to waste valuable judicial time and resources.

---

defendant corporations did what the law *required* them to do, not whether, from a societal perspective, they did what an 'ethical corporation' *should have done*.") (emphasis in original); *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013) ("[The Fifth Circuit has] long held that 'without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.'"); *In re Prempro Prods. Liab. Litig.*, No. MDL 4:03-cv-1507, 2010 WL 5576305, at *2 (E.D. Ark. June 29, 2010) (excluding expert's testimony that "could only be a subjective opinion on what [the expert] believe[s] Defendants *could have done* rather than what industry or governmental standards *require* them to do") (emphasis in original).

2.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PURPORTED LEGAL DUTIES AND CONCLUSIONS.**

Based on the deposition testimony of Plaintiff's treating physicians and retained experts, Plaintiff will likely attempt to introduce evidence that Sanofi had a *legal duty* to inform doctors about the purported risk of permanent alopecia associated with Taxotere. *See, e.g.*, Feigal Dep. Vol. I at 109:25-110:20 (Dec. 7, 2018) (discussing pharmaceutical company's duty to inform doctors of risks), **Ex. C**. However, only the Court may instruct the jury on a party's legal duty. Neither Plaintiff's experts nor lay witnesses may offer opinions or conclusions as to Sanofi's legal duties. Such evidence and argument should therefore be excluded pursuant to Fed. R. Evid. 704 and 403.

A.     **Lay and Expert Witnesses May Not Assert Legal Conclusions Under the Guise of Opinion Testimony.**

To avoid misleading and confusing the jury, the Court must prevent all witnesses in this case from testifying about any legal duty Sanofi allegedly owed to prescribing oncologists. Such testimony improperly exceeds the scope of Federal Rule of Evidence 704.

Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," but the rule "does not open the door to all opinions." *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, Civil Action No. 13-0366, 2016 WL 9414347, at *11 (E.D. La. May 13, 2016) (internal quotation and citation omitted). "[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *Juawei Tech. Co. Ltd. v. T-Mobile US, Inc.*, Case No. 2:16-CV-00055-JRG-RSP, 2017 WL 4619791, at *4 (E.D. Tex. Oct. 16, 2017) (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). Consistent with this understanding of Rule 704, the Fifth Circuit has held that witnesses may not offer legal conclusions under the guise of opinion testimony. *See Askanase v.*

4

*Fatjo*, 130 F.3d 657, 673 (5th Cir. 2014) ("However, it must be posited as an a *priori* assumption that there is one, but only one, legal answer for every cognizable dispute.  There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." (internal quotations omitted)); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Moreover, allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").[3]  Accordingly, this Court should preclude any testimony that purports to state a legal duty or legal conclusion.

### B. The Probative Value of Legal Conclusions by Plaintiff's Witnesses Does Not Outweigh the Testimony's Prejudicial Effect.

Any alleged duty that Sanofi may owe has a specialized legal meaning and, therefore, must be defined by the Court, not Plaintiff's witnesses.  Indeed, the Court must be the jury's sole source of law.  To permit any witness to offer such testimony to the jury would most certainly mislead and confuse the jury—and risk that the jury may mistakenly and improperly rely on such testimony as the law governing the issues in the case.  As such, the prejudicial effect of a witness opining about legal conclusions or a legal standards necessarily outweighs its probative value.  *See* Fed. R. Evid. 403.

Accordingly, testimony from any witness at trial that purports to state a legal duty or conclusion should be excluded.

---

3   *See also Tajonera*, 2016 WL 9414347, at *12 ("*Askanase* is clear that an expert witness may not merely tell the jury what a defendant's duty was, how they breached it, and how the damages resulted from that breach."); *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (explaining that the role of the court is to distinguish opinion that embraces the ultimate issue of fact from opinion that states a legal conclusion, that is, specialized legal meaning); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) ("'A witness cannot be allowed to give an opinion on a question of law. . . .  To allow anyone other than the judge to state the law would violate the basic concept.  Reducing the proposition to a more practical level, it would be a waste of time if witnesses or counsel should duplicate the judge's statement of law, and it would intolerably confound the jury to have it stated differently.'" (quoting Stoebuck, *Opinions on Ultimate Facts: Status, Trends, and a Note of Caution*, 41 Den. L. Cent. J. 226, 237 (1964)).

3.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING OTHER LAWSUITS, CLAIMS, OR INVESTIGATIONS AGAINST DEFENDANTS AND/OR OTHER SANOFI ENTITIES.**

The Court should preclude evidence and argument about other lawsuits, claims, and/or investigations involving Sanofi and its products, including but not limited to (i) the thousands of plaintiffs in this MDL proceeding and related state court actions, and (ii) the False Claims Act suit brought in the Eastern District of Pennsylvania entitled *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504 (E.D. Pa. 2015).  Evidence or argument concerning litigation beyond the lawsuit at issue should be excluded because (1) it is not relevant to any element of Plaintiff's claims, (2) it constitutes inadmissible hearsay, and (3) any perceived probative value is substantially outweighed by the significant undue prejudice to Sanofi, confusion of the issues, and waste of judicial time and resources.  *See* Fed. R. Evid. 401-403, 802; *see also In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at 14-15 (sustaining motion *in limine* to exclude "evidence and argument concerning Defendants' other litigation"), **Ex. D**.

A.     **Evidence of Other Lawsuits, Claims, or Investigations is Irrelevant.**

Pleadings or allegations from other lawsuits, claims, or investigations do not establish or disprove any fact relevant to this matter but instead invite the jury to draw improper speculative inferences.  Here, Plaintiff's alleged injuries must be weighed and considered in the context of a multitude of individual factors, including their prior medical histories, medical conditions, risk factors, and their prescribing physicians' treatment decisions, among others.  Evidence of other lawsuits, claims, or investigations consisting of allegations of unrelated events occurring under circumstances entirely different from those at issue in this case have no "tendency to make a fact more or less probable than it would be without the evidence" and should be excluded as irrelevant.  Fed. R. Evid. 401(a); *see, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 458 (5th Cir. 2009) (holding that

"anecdotes detailing individual patients' experiences when taking the drug . . . fall short of providing scientifically reliable evidence applicable to all other patients"); *Jorden v. Dolphin Towing, LLC*, No. Civ.A. 03-222, 2004 WL 602777, at *5 (E.D. La. Mar. 23, 2004) ("Evidence of other personal injury claims has no relevance to any issue in this lawsuit.").[4] This is particularly true for products liability litigation. *See Huss*, 571 F.3d at 458; *Rushing v. Wells Fargo Bank, N.A.*, No. 8:10-cv-1572-T-24-AEP, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012) ("evidence of other lawsuits is not normally relevant and not permitted"); *Skibniewski v. Am. Home Prods. Corp.*, No. 99-cv-0842, 2004 WL 5628157, at *4 (W.D. Mo. Apr. 1, 2004) ("Simply, evidence relating to different drugs, different injuries, different people and different conditions have no bearing on this case."). Such evidence is irrelevant and should be excluded.

### B.    Evidence of Other Lawsuits, Claims, and/or Investigations Constitutes Inadmissible Hearsay.

Pleadings from other lawsuits and allegations related to other claims and investigations are also inadmissible to prove the truth of their content because they constitute inherently unreliable hearsay. *See* Fed. R. Evid. 801-02; *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (noting that an attempt to "introduce a brief summary of claims, lawsuits, and complaints . . . amounts to nothing more than a summary of allegations by others which constitute hearsay."); *Roberts v. Harnischfeger Corp.*, 901 F.2d 42, 45 (5th Cir. 1989) (excluding summaries of pending litigation as hearsay); *Smith v. E-backgroundchecks.com, Inc.*, No. 1:13-CV-02658-RGV, 2015 WL 11233453, at *1 (N.D. Ga. June 4, 2015) ("[e]vidence of other lawsuits is generally

---

[4]    *See also Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *2–3 (S.D. Miss. Apr. 11, 2006) (concluding in a toxic tort case that "evidence of other lawsuits, claims, and injuries is irrelevant to this case and therefore inadmissible"); *In re Safety-Kleen Bondholders Litig.*, No. 3:00-1145-17, 2005 WL 6075368 (D.S.C. Feb. 4, 2005) (holding that the existence of "any other litigation against PwC," "widely-publicized accounting scandals" and "cease and desist orders of the S.E.C." were not relevant to the plaintiff's allegations that the defendants violated the Securities and Exchange Act).

considered to be inadmissible hearsay") (collecting cases).  In addition, pleadings from other lawsuits may contain hearsay-within-hearsay, thereby requiring Plaintiff to show that an exception applies to each level of hearsay in any given pleading—which she cannot do because pleadings from other lawsuits are inherently unreliable and consist of mere allegations of the parties.  *See* Fed. R. Evid. 805.

### C.      Evidence of Other Lawsuits, Claims, or Investigations is Unduly Prejudicial.

There is no probative value to any allegations set forth in other lawsuits, claims, or investigations, and any perceived probative value of such unsubstantiated allegations is substantially outweighed by (i) the danger of unfair prejudice to Sanofi, and (ii) potential for jury confusion.  *See, e.g.*, *Compaq Comput. Corp. v. Ergonome Inc*., 387 F.3d 403, 408–09 (5th Cir. 2004) (finding no abuse its discretion where district court excluded evidence of prior lawsuits against defendant because any probative value "was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation"); *Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242–43 (5th Cir. 1974) (affirming exclusion of evidence of prior lawsuits against defendant because evidence was "of such faint probative value and high potential for unfair prejudice"); *Comardelle v. Sears, Roebuck & Co.*, No. 95-1371, 1996 WL 673971, *3 (E.D. La. Nov. 20, 1996) (excluding evidence where "the probative value of these other accidents is substantially outweighed by the danger of unfair prejudice to Defendants"); *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, No. 05-CV-1887, 2009 WL 3754170, at *9 (D.N.J. Nov. 5, 2009) (excluding evidence of prior and/or collateral litigation because it would result in unfair prejudice, confusion and undue delay).  Such evidence should therefore be excluded at trial on this basis.

Allowing evidence of this nature would also likely lead to a series of "mini-trials" in which Sanofi would be forced to distinguish other lawsuits and claims from those made here.  *See Kelly v. Bowing Petroleum Servs.*, *Inc.*, 61 F.3d 350, 357 (5th Cir. 1995) (affirming exclusion of evidence that would result in a "mini-trial" over each allegation); *Osler v. Codman Research Group*, *Inc.*, 241 F.3d 91, 96 (1st Cir. 2001) (same); *Stubblefield v. Suzuki Motor Corp.*, No. 3:15-CV-18-HTW-LRA, 2018 WL 4762739, at *6 (S.D. Miss. Sept. 30, 2018) (same); *Smith*, 2015 WL 11233453, at *2 (same).  As such, the Court should exclude all evidence of prior or existing litigation against Sanofi.

4.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING COMPLAINTS AND LAWSUITS AGAINST OTHER MANUFACTURERS OF DOCETAXEL.**

The Court should preclude evidence and argument regarding complaints and lawsuits against other manufacturers of docetaxel to show that (i) the drug causes permanent or persistent alopecia, or (ii) Sanofi knew or should have known that docetaxel may cause permanent or persistent alopecia.  Such evidence should be excluded as irrelevant, unfairly prejudicial, and because it will confuse and mislead the jury and waste time and resources.  *See Eghnayem v. Boston Scientific Corp.*, No. 2:13-cv-07965, 2014 WL 5465741, at *8 (S.D. W. Va. Oct. 28, 2014) (precluding evidence of lawsuits filed against other manufacturers of pelvic mesh products in pelvic mesh MDL proceedings) (citing *Lewis v. Ethicon, Inc.*, No. 2:12-cv-4301, 2014 WL 505234, at *6 (S.D. W. Va. Feb. 5, 2014)).

   A.   **Lawsuits or Complaints, Including Adverse Event Reports, Related to Other Docetaxel Manufacturers are Irrelevant.**

Complaints and/or lawsuits against other docetaxel manufacturers are irrelevant and should be excluded.  Fed. R. Evid. 401.  Claims against other docetaxel manufacturers differ in numerous, meaningful ways (*e.g.*, date of use, dosage, and patient-specific factors such as age, medical history, and complications).  Accordingly, lawsuits and complaints against other docetaxel manufacturers do not make any fact of consequence in these cases any more or less probable, and evidence of such should be excluded as irrelevant.

**B.      Lawsuits or Complaints, Including Adverse Event Reports, Against Other Docetaxel Manufacturers should be Excluded Because Any Probative Value is Outweighed by the Potential for Delay, Confusion, and Undue Prejudice.**

Even if lawsuits and complaints had some *de minimis* relevance, which they do not, this Court should still exclude such evidence because any relevance is substantially outweighed by the danger of unfair prejudice and the strong likelihood of confusing and misleading the jury and wasting time.  *See* Fed. R. Evid. 403; *Eghnayem*, 2014 WL 5465741, at *8.  In *Eghnayem*, the pelvic mesh MDL court held that:

> [e]vidence of lawsuits is generally considered inadmissible hearsay . . . Further, evidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403.  Although other lawsuits may ultimately show that the [product] is defective, the jury must still find that the [product] caused [the plaintiff's] injuries.  Evidence of other lawsuits is likely to confuse and mislead the jury from that task, and it is highly prejudicial to [the defendant]. . . .  Even assuming evidence about lawsuits brought against other manufacturers [had] some relevance to the present case, the relevance is dwarfed by the risk of unfair prejudice posed by requiring [Defendants] to attest for lawsuits in which [they] were not involved.

2014 WL 5465741, at *8 (quoting, in part, *Lewis v. Ethicon, Inc.*, No. 2:12-cv-4301, 2014 WL 505234, at *6 (S.D. W. Va. Feb. 5, 2014)).  The same reasoning applies here.

Moreover, the introduction of such evidence will lead to mini-trials on tangential issues and serve only to waste the court's time and cause undue delay.  *See Wilson v. Maricopa County*, No. CV-04-2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007) (precluding evidence of other lawsuits and granting defendants' motion *in limine* regarding same because "[I]f evidence of these prior lawsuits was admitted, [d]efendants would be compelled to present rebuttal evidence concerning the nature and outcome of those lawsuits.  The case would devolve into a series of mini-trials concerning the relevancy and outcome of these other cases, resulting in an unnecessarily lengthy trial for the parties, the Court, and the jury."); *United States v. Insaulgarat,*

378 F.3d 456, 466 (5th Cir. 2004) (holding that the district court did not abuse its discretion by excluding evidence that was cumulative and would result in undue delay or waste of time).

For these reasons, Sanofi requests the Court to prohibit Plaintiff from presenting evidence or argument concerning lawsuits and complaints against other docetaxel manufacturers.

5. **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ADVERSE EVENT REPORTS OR OTHER COMPLAINTS INVOLVING PATIENTS OTHER THAN PLAINTIFF.**

Sanofi anticipates that Plaintiff may attempt to offer evidence at trial of Adverse Event Reports (AERs) or other complaints involving patients other than Plaintiff who reported experiencing hair loss after Taxotere (docetaxel) treatment to establish causation and/or notice.[5] The Court should exclude such evidence because it: (1) constitutes inadmissible hearsay; (2) is irrelevant to causation and notice; and, (3) serves only to promote confusion, delay, and unfair prejudice.

A. **FDA Adverse Event Reports Generally.**

Federal regulations require pharmaceutical manufacturers to submit AERs—sometimes referred to as "case reports"—to the Food and Drug Administration ("FDA").  *See* 21 C.F.R. § 314.80.  As a regulatory matter, AERs are merely anecdotal reports of a correlation or association between the use of a drug and some adverse event, "*whether or not considered drug related*"— *i.e.*, regardless whether the drug caused the event.  21 C.F.R. § 314.80.

FDA regulations state that AERs do not demonstrate "that the drug caused or contributed to an adverse effect."  21 C.F.R. § 314.80(l).  To the contrary, the FDA acknowledges that the information in AERs "has not been scientifically or otherwise verified," and that "there is no certainty that the suspected drug caused the reaction," as the "event . . .  may have occurred by

---

[5]   Plaintiff's deposition of Sanofi's Rule 30(b)(6) witness focused exclusively on these types of reports.  *See, e.g.*, Plaintiff's Second Notice of Videotaped Deposition of Sanofi U.S. Pursuant to Fed. R. Civ. P. 30(b)(6), **Ex. E**, Plaintiff's Second Amended Notice of Deposition of Sanofi U.S. Pursuant to Fed. R. Civ. P. 30(b)(6), **Ex. F** (noticing a 30(b)(6) deposition on "[r]eports of any kind. . .  regarding persisting alopecia being associated and/or related in any way with the use of Taxotere (alone or in combination) . . .).  Moreover, there has been pervasive attorney advertising that has likely artificially inflated and impacted AERs for Taxotere.  *See, e.g.*, Presentation of Data by Rustin Silverstein, Esq., "Data and Analysis of Television Advertisements Related to Taxotere Product Liability Claims, June 2016–May 2017," (June 2017), **Ex. G**.

chance at the same time the suspected drug was taken." FDA, AER System, Office of pharmacoepidemiology and Statistical Science, *Brief Description with Caveats of System* at 4 (July 18, 2005), **Ex. H.**

### B. AERs And Other Complaints Constitute Inadmissible Hearsay.

To the extent Plaintiff intends to use AERs or other complaints to prove the truth of the matter asserted—that Taxotere caused the reported adverse event—such use constitutes classic, inadmissible hearsay. *See* Fed. R. Evid. 801–02 (rendering hearsay evidence inadmissible); *see also Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2012 WL 38694, at *2 (E.D. Penn. Jan. 9, 2012) ("AERs are inadmissible hearsay when offered to prove the truth of the matter asserted."); *Goldstein v. Centocor, Inc.*, 310 F. App'x 331, 332 n.1 (11th Cir. 2009) (case reports submitted by doctors who observed possible reactions to a drug "are hearsay and do not fall within any of the exceptions to the hearsay rule.").[6] Therefore, any AERs or other complaints offered for the truth of the matter asserted must be excluded pursuant to Fed. R. Evid. 802.

### C. AERs And Other Complaints Are Not Relevant To Causation.

Evidence of AERs should also be excluded as irrelevant to the issue of medical causation. *See* Def. MSJ on General Causation, Rec. Doc. 6163. FDA regulations make clear that AERs are simply anecdotal reports of "[a]ny adverse event *associated* with the use of a drug,"—*i.e.*,

---

[6] *See also Bartlett v. Mut. Pharm. Co., Inc.*, No. 08-cv-358-JL, 2010 WL 3092649, at *1 (D. N.H. Aug. 2, 2010) ("[Adverse event] reports are indeed hearsay 'if offered to prove the truth of the matter[s] asserted' in them[.]" (internal quotation marks and citations omitted); *Appleby v. Glaxo Wellcome, Inc.*, Civ. No. 04-0062, 2005 WL 3440440, at *3 (D.N.J. Dec. 13, 2005) (AERs are hearsay and do not fall within the public-records exception in Fed. R. Evid. 803(8)); *Skibniewski v. Am. Home Prods. Corp.*, Civ. No. 99-0842, 2004 WL 5628157, at *9 (W.D. Mo. Apr. 1, 2004) (granting a motion *in limine* to exclude AER evidence as hearsay); *Saari v. Merk & Co.*, 961 F. Supp. 387, 398 (N.D.N.Y. 1997) (explaining that an AER "was simply a report of what plaintiff told [the doctor] . . . and by making that report [the doctor] was neither confirming nor denying that there is any relationship between [the] symptoms and the vaccine."); *Cosgrove v. Merrell Dow Pharm., Inc.*, 788 P.2d 1293, 1298 (Idaho 1989) ("observations and information" in event reports "are clearly hearsay"); *Muilenberg v. Upjohn Co.*, 320 N.W.2d 358, 364–65 (Mich. Ct. App. 1982) (holding that event reports were hearsay and that no hearsay exception applied).

regardless of whether the drug caused the adverse event.  21 C.F.R. 314.80(a) (emphasis added);

*see also In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213,

228 (S.D.N.Y. 2018) ("A case report is a report of an individual incident or episode, generally

keyed to a specific user of a drug, that serves to bring attention to a *possible* problem or condition.")

(internal citation omitted) (emphasis added).  As explained above, AERs and other complaints do

not demonstrate "that the drug caused or contributed to an adverse effect."  21 C.F.R. 314.80(l);

*see also Burst v. Shell Oil Co.*, No. 14-109, 2015 3755953, at *8 (E.D. La. 2015) (explaining that

reports "which anecdotally describe an occurrence . . . cannot establish general causation because

they simply describe [] reported phenomena . . . do not isolate and exclude potentially alternative

causes; and do not investigate or explain the mechanism of causation.") (internal quotation marks

and citations omitted).  Given these limitations, courts have recognized that AERs are "one of the

least reliable sources to justify opinions about both general and individual causation."  *See Rhodes*

*v. Bayer Healthcare Pharms, Inc.*, No. 10-1695, 2013 WL 1289050, at *5 (W.D. La. Mar. 26,

2013) (quoting *McClain v. Metabolife Int'l*, 401 F.3d 1233, 1250 (11th Cir. 2005) (holding that

trial court erred in admitting expert testimony based on AERs to establish general causation

because "such anecdotal reports do not prove causation.")); *see also Soldo v. Sandoz Pharm. Corp.*,

244 F. Supp. 2d 434, 537, 539 (W.D. Pa. 2003) ("adverse event reporting system data are not a

legitimate basis for causation opinions involving pharmaceutical products.").[7]

---

[7]   *Accord, e.g.*, *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 53 (1st Cir. 2008) ("[T]he receipt of an adverse report does not in and of itself show a causal relationship between [a drug] and the illness mentioned in the report."); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 325 (S.D.N.Y. 2016) ("Case reports are not reliable evidence of causation . . . ."); *In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1298 (M.D. Fla. 2007) (Case reports "are unreliable as proof [of] causation because, in general, the events were not observed in such a way as to rule out coincidence or other potential causes."); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1411 (D. Or. 1996) ("[C]ase reports and case

There is a legion of cases rejecting the view that AER-based testimony can be used to demonstrate medical causation.  *See, e.g.*, *Burst*, 2015 WL 3755953, at \*8 (excluding testimony from expert who relied in part on case reports to form his opinion);  *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 41 (2d Cir. 2000) ("[T]he receipt of an adverse report does not in and of itself show a causal relationship between [the drug] and the illness mentioned in the report."); *Goldstein v. Centocor, Inc.*, 310 F. App'x 331, 332 (11th Cir. 2009) (affirming exclusion of expert general causation testimony based on "case reports submitted by doctors who observed possible reactions to [a prescription drug] but made without medical controls or scientific assessment").[8]

### D.    AERs And Other Complaints Are Not Relevant To Notice.

AERs and other complaints are not relevant to show whether Sanofi knew of the alleged risk of permanent hair loss that Plaintiff contends is associated with Taxotere. To be probative of notice, Plaintiff would be required to establish that the incidents reported in the AERs or other complaints (1) were reported prior to the date of Plaintiff's treatment, and (2) involved facts

---

studies are universally regarded as an insufficient scientific basis for a conclusion regarding causation because case reports lack controls.").

[8] *See also Gibson v. Sanofi-Aventis U.S., LLC*, Civ. No. 3:07-CV-192, 2009 WL 3490454, at \*7 (W.D. Ky. Oct. 27, 2009) (rejecting as inadmissible expert opinion based on review of case reports); *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 694 (N.D. Ga. 2006) (AERs "do not establish causation"); *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1133 (D. Ariz. 2001) (AERs "are merely compilations of occurrences, and have been rejected as reliable scientific evidence supporting an expert opinion"); *Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) (AERs lack "scientific analysis with the safeguards of a controlled experiment," and are merely "compilations of reported phenomena"); *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1164 (S.D. Fla. 1996), *aff'd*, 158 F.3d 588 (11th Cir. 1998) (AERs "contain raw information that has not been scientifically or otherwise verified as to cause and effect" and therefore cannot serve as a basis for expert testimony (citation omitted)); *Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224, 227–28 (N.D. Miss. 1989) (rejecting expert testimony based in part on AERs), *aff'd*, 949 F.2d 806 (5th Cir. 1992); *Reynolds v. Warthan*, 896 S.W.2d 823, 828 (Tex. Ct. App. 1995) (rejecting AER evidence because it failed to "establish a causal link" between the drug and alleged injuries but instead "created a suspicion without any medical proof," and adding that "any probative value attributable to the documents was outweighed by the danger of undue prejudice").

16

substantially similar to those at issue here. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 413860, at *3 (E.D. La. Feb. 9, 2012) (excluding evidence of other incidences where the plaintiff failed to demonstrate any substantial similarity between the prior incidents and the incident at issue); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 964 (D. Minn. 2009) (expert's references to AERs for conditions other than that of the plaintiff were "irrelevant"). Plaintiff here cannot make such a showing. Indeed, a host of the reports Plaintiff's experts have relied on post-date Plaintiff's chemotherapy treatment. *See, e.g.*, Madigan Report at 13–16 (Plaintiff was treated in 2011, but Dr. Madigan includes AERs through 2017 in his expert analysis), **Ex. I**; Kessler Report at 39–41 (Relying on Dr. Madigan's analysis of reports through 2017 in reaching his conclusions), **Ex. A**. Post treatment AERs and other complaints are irrelevant to the issue of notice, thus any reliance on AERs or other complaints, should be cut off, at minimum, at the date of Plaintiff's treatment. However, even AERs or other complaints that pre-date Plaintiff's treatment should be excluded as irrelevant because the conditions described in other AERs and other complaints differ from Plaintiff's condition with respect to a host of potentially-contributing patient specific factors that are difficult, if not impossible to control—*e.g.*, age, menopausal status, type of breast cancer diagnosis, stage of cancer at diagnosis, chemotherapy regimen, chemotherapy dosage, endocrine therapy, health history, health condition, family history, hair care practices, vitamin deficiencies, and degree, duration and locations of the hair loss, among other factors. Accordingly, absent some showing that the circumstances surrounding a given unverified AER or other complaint are sufficiently similar to those present in this case, such AERs and other complaints should be excluded as

irrelevant to the issue of notice—particularly when such evidence post-dates the date of Plaintiff's treatments.[9]

### E.       The Risk of Unfair Prejudice Far Outweighs Any Probative Value.

Presenting information on AERs or other complaints at trial serves no legitimate purpose and will only serve to confuse and prejudice the jury.  *See* Fed. R. Evid. 403; *see also Jones v. Ford. Mo. Co.*, 294 F. App'x 280, 285 (4th Cir. 2006) (excluding collection of 2,900 unsworn customer complaints of vehicle malfunctions received by defendant to establish causation and notice).  Admitting AERs or other complaints into evidence would create a "suspicion" of liability—simply because a patient using Taxotere experienced an adverse reaction—"without any medical proof" that Taxotere actually caused the event in question.  *Reynolds v. Warthan*, 896 S.W.2d 823, 828 (Tex. Ct. App. 1995) (affirming trial court's exclusion of incidence reports because their "marginal relevance was outweighed by the danger of confusing and misleading the jury").  Sanofi would be unfairly prejudiced by the admission of statements made by other patients without the opportunity to examine them, especially where there is a high likelihood that the jury would be confused and misled by the reports.  As such, evidence of AERs or other complaints involving patients other than Plaintiff should be excluded pursuant to Fed. R. Evid. 402 and 403.

---

[9]     *See also* Defendant's Motion in Limine No. 27 to Preclude Evidence and Argument Regarding Company Conduct That Post-Dates Plaintiff's Chemotherapy Treatment (filed concurrently herewith).

6.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE PRESENCE, ABSENCE, OR IDENTITY OF DEFENDANTS' CORPORATE REPRESENTATIVE AT TRIAL.**

Any reference to the presence, absence, or identity of any corporate representative at trial would be inappropriate because (1) it is not relevant to any element of Plaintiff's claims, and (2) any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 401–403; *see also In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at 14 (sustaining motion *in limine* to exclude references to the presence, absence, or identity of a corporate representative at trial), **Ex. D**.

A.   **The Presence, Absence, or Identity of Sanofi's Corporate Representative at Trial is Irrelevant to Plaintiff's Claims.**

There is "no requirement that a party or a corporate representative be present at trial." *Ray v. Ford Mo. Co.*, No. 3:07-cv-175, 2011 WL 6183099, at *6 (M.D. Ala. Dec. 13, 2011). More importantly, "[t]he presence, absence, or identity of Defendants' corporate representatives is wholly irrelevant to Plaintiff's claims." *Riley v. Ford Mo. Co.*, No. 2:09-cv-148, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011) (granting a motion in limine to exclude any reference to the presence or absence of the defendant's corporate representative); *see also Ray*, 2011 WL 6183099, at *6 (granting motion in limine to exclude any reference to the presence or absence of defendant's corporate representative because it would "not make the existence of any fact necessary to the Plaintiff's claims any more or less probable, and is therefore irrelevant," and because any possible probative value would be "substantially outweighed by the danger of unfair prejudice and jury confusion . . . ."). Therefore, any references to the presence, absence, or identity of Defendant's Corporate Representative at trial should be excluded.

**B.      Evidence Regarding The Presence, Absence, or Identity of Sanofi's Corporate Representative at Trial Offers No Probative Value.**

Any reference to the presence, absence, or identity of a corporate representative should also be excluded under Fed. R. Evid. 403 because such references would suggest to the jury that it base its decision on the improper inference that Sanofi does not take Plaintiff's claims sufficiently seriously, which is false and has nothing to do with Plaintiff's claims, Sanofi's conduct, or any other issue in the case.  If Plaintiff's counsel were to mention the presence, absence, or identity of the corporate representative during trial, a mini-trial would result—Sanofi would have to spend time explaining to the jury why a corporate representative is not present, why the representative who is present is an appropriate representative, or why the identity of the corporate representative does not support any adverse inference concerning any material fact.  *See Ray*, 2011 WL 61830099, at \*6 (explaining that any probative value from reference to the presence or absence of a corporate representative in the courtroom is outweighed by risk of unfair prejudice and jury confusion).  The Court should therefore preclude any reference to the presence, absence, or identity of a corporate representative at trial.  *See* Fed. R. Evid. 401–403; *see also In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at, **Ex. D**.

7.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' EXECUTIVE AND/OR EMPLOYEE COMPENSATION.**

Plaintiff may attempt to introduce evidence concerning Sanofi's executive or employee compensation, but such evidence should be excluded because (1) it is not relevant to any element of Plaintiff's claims, and (2) the probative value of such evidence, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  *See* Fed. R. Evid. 401-403.

### A.     Evidence of Executive and Employee Compensation is Irrelevant.

Evidence related to the compensation of Sanofi executives and employees has no bearing on any material issues in this case.  Indeed, this Court has excluded such evidence in both the *Vioxx* and *Xarelto* litigations.  *See In re Vioxx Prod. Liab. Litig.*, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005) (granting motion to exclude evidence relating to the compensation and financial decisions of the defendant's employees, subject to the right of the Plaintiff to introduce such evidence to rebut good-motive testimony from the defendant); *see also* Order and Reasons, *In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at 14 (granting defendants' motion to exclude evidence and argument concerning executive compensation), **Ex. D**.  The same ruling is warranted here.

### B.     Evidence of Executive and Employee Compensation Should Be Excluded Because the Risk of Undue Prejudice Outweighs Any Probative Value.

Evidence or argument concerning executive and employee compensation should also be excluded under Rule 403 because is serves to inflame a juror's prejudices against Sanofi.  Such use is plainly improper, particularly where the effect is to divert the juror's attention towards collateral matters.  *See, e.g.*, *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 CIV 10014, 2009 WL 3111766, at *6 (S.D.N.Y. Sept. 28, 2009) (even if evidence of executive compensation were relevant, "any limited probative value of this information is outweighed by its

21

potential to bias the jury under Rule 403").  For this additional reason, the Court should preclude evidence of employee compensation at trial.

8.    **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE COST OF TAXOTERE OR PRESCRIPTION DRUG PRICING GENERALLY.**

The Court should exclude evidence or argument pertaining to (i) the cost of Taxotere or (ii) prescription drug pricing generally – including phrases like "big pharma," "drug costs are too high," "cost of medication crisis," or related language – because it is not relevant to the claims at issue and would cause unfair prejudice, risk confusing and misleading the jury, and waste the Court's time. [10]

A.    **Prescription Drug Pricing is Not Relevant to Any Matters at Issue.**

Evidence or argument relating to prescription drug pricing or the cost of Taxotere has no bearing on any element of Plaintiff's personal injury claims.  The price of Taxotere (or other medicine) is not relevant to whether the Taxotere warnings were adequate or whether it caused Plaintiff's alleged injuries.  *See In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at 14 (excluding evidence and argument concerning defendants' prescription drug pricing), **Ex. D**.

B.    **Evidence or Argument Related to Prescription Drug Pricing is Substantially More Prejudicial than Probative.**

Plaintiff may attempt to use unnecessarily inflammatory statements about prescription drug pricing, or the cost of Taxotere, to induce a favorable verdict based on widely publicized and hot-button topic issues regarding the pharmaceutical industry, rather than the merits of Plaintiff's claims.  Using evidence or argument intended to inflame the prejudices of the jury in this manner would be improper, particularly where doing so will direct the jury's attentions away from the facts of the case and toward unrelated, collateral matters.  *See* Fed. R. Evid. 403; *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1334-35 (9th Cir. 1985) (Evidence is properly excluded where

---

[10]   To the extent Plaintiff attempts to introduce evidence or argument on Sanofi's prescription drug pricing to show profitability, such evidence should also be excluded for the reasons set forth in Defendants' Motion in Limine No. 9 to Preclude Evidence or Argument Concerning Sanofi's Finances or Employment Decisions.  *Infra* at 25.

"it does nothing but generally show [a party] in a bad light.").  This jury will not be asked to determine whether prescription drug prices are too high and, therefore, Plaintiff should not be allowed to introduce such evidence or argument to the jury.  Indeed, the only purpose such evidence would serve would be to bias the jury and encourage a favorable verdict on an improper basis.

The introduction of such evidence at trial would also waste time and judicial resources.  If permitted, Sanofi would be forced to rebut such evidence by presenting evidence regarding all of the economic and market factors that impact prescription medication pricing generally, and the price of Taxotere specifically.  The resulting "mini-trials" will confuse the issues in this case, and waste judicial resources.  Accordingly, such evidence should be excluded.  *See* Fed. R. Evid. 403; *United States v. Insaulgarat,* 378 F.3d 456, 466 (5th Cir. 2004) (holding that the district court did not abuse its discretion by excluding evidence that was cumulative and would result in undue delay or waste of time).

9.    **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE FINANCES OR EMPLOYMENT DECISIONS.**

Sanofi anticipates that Plaintiff may offer evidence or argument relating to the company's finances (e.g., company sales, pricing, profits, net worth) and employment decisions (e.g., hiring, layoffs, termination, compensation).  Such evidence and/or argument should be excluded because it is not relevant to the claims and defenses at issue.  Allowing this type of evidence would risk jury confusion and unfair prejudice to Sanofi.  As such, evidence of Sanofi's finances and employment decisions should be excluded.

A.    **Evidence of Sanofi's Finances and Employment Decisions are Irrelevant.**

Evidence or argument relating to Sanofi's sales, profitability, market share, net worth, and actual or anticipated profits from Taxotere has no bearing on any element of a failure to warn claim.  *See In re: Xarelto*, MDL No. 2592, No. 14-2720, Doc. No. 6254, at 14 (granting defendants' motions to exclude evidence and argument concerning: (1) defendants' actual or anticipated profits from the sale of Xarelto; (2) defendants' overall sales, profitability, and market share; and (3) defendants' prescription drug pricing), **Ex. D**; *see also In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2005 WL 3164254, at *1 (E..D. La. Nov. 21, 2005) (granting defendants' motion to exclude evidence relating to the assets and profitability of the defendant, subject to the right of the plaintiffs to introduce such evidence to rebut good-motive testimony from the defendant).[11]   This is

---

[11]   *Accord, e.g.*, *Gray v. Energy XXI GOM LLC*, Civ. No. 12-165, 2013 WL 4011990, at *6 (M.D. La. Aug. 5, 2013) ("No reference may be made to any party's financial status, including the wealth or poverty of a party, or the ability to pay a verdict.  The financial statuses and abilities of the parties are irrelevant under Federal Rule of Evidence 401."); *Fabre v. Royal Freight, LP*, Civ. No. 11-800, 2013 WL 3821478, at *4 (M.D. La. July 23, 2013) (excluding evidence regarding financial condition as irrelevant); *Okuda v. Wyeth Pharm., Inc.*, Civ. No. 1:04-cv-80, 2012 WL 12337860, at *3 (D. Utah July 24, 2012) (granting a motion *in limine* "to exclude reference to and evidence of Defendant's wealth, profit margins for hormone therapy and/or alleged 'profit motive,'" because "Defendant's wealth has no relevance to this case, except to the extent Defendants might argue that they were financially unable to complete any necessary testing").

particularly true where, as here, Plaintiff may not recover punitive damages.  *See Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770 (W.D. La. 2007) (noting that the Louisiana Product Liability Act does not permit punitive damages) (citing, *inter alia*, *Cantu v. C.B. Fleet Holding Co.*, No. 2:06CV2168, 2007 WL 689566, at *2 (W.D. La. Mar. 1, 2007) ("Punitive damages are not recoverable under the LPLA.").

Numerous courts have reached this same conclusion in failure to warn cases.  *See, e.g.*, *Bunch v. Pacific Cycle, Inc.*, Civ. No. 4:13-cv-0036, 2015 WL 11622952, at *10 (N.D. Ga. Apr. 27, 2015) (granting a motion *in limine* and precluding the plaintiffs from introducing "evidence or argument concerning the profit margin of the [product] at trial"); *Cross v. Wyeth Pharm Inc.*, Civ. No. 8:06-cv-429, 2011 WL 2517211, at *6 (M.D. Fla. June 23, 2011) (granting motions *in limine* to preclude the plaintiffs from presenting evidence of the defendants' profit margins and wealth); *In re Norplant Contraceptive Prods. Liab. Litig.*, MDL No. 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997) (granting the defendant's motion *in limine* because "evidence of profit margin . . . is not relevant to any failure to warn issue").

Plaintiff may also argue that Sanofi's net worth or profits are relevant to demonstrate improper "motive" in Sanofi's development, labeling, and marketing of Taxotere.  But such a contention is meritless and irrelevant to any element of a failure to warn claim.  *See Gray v. Hoffman-LaRoche, Inc.*, 82 F. App'x 639, 651 (10th Cir. 2003) (defendant's "alleged motive for failing to issue a stronger warning is immaterial to any element of [the plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case").

## B.   The Prejudicial Effect of Introducing Evidence of Sanofi's Finances and Employment Decisions Substantially Outweighs the Probative Value.

Plaintiff may also use evidence of corporate finances and employment decisions to induce the jury to render a verdict influenced by knowledge that Sanofi is a large pharmaceutical company

with significant resources.  Consistent with the jurisprudence of this Court and others, evidence and argument related to Sanofi's finances and employment decisions should be excluded under Federal Rule of Evidence 403 because "its probative value is substantially outweighed by . . . unfair prejudice."  Moreover, excluding this evidence will help ensure that Sanofi's right to trial by a fair and impartial jury is not impaired.  *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 416 (1994) ("[E]vidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses.").

The admission of evidence related to corporate finances and employment decisions is outweighed by its inevitable tendency to inflame or prejudice the jury against Sanofi.  The only possible reason Plaintiff would introduce this evidence is to prejudice the jury against Sanofi by painting it as a bad corporate actor improperly motivated by profit.  Indeed, such evidence has a high probability of misleading the jury into believing Sanofi somehow profited from Plaintiff's conditions or the conditions of others and that Sanofi's net worth or profits justify compensating Plaintiff regardless of the merits of her claim.  Fed. R. Evid. 403; *see also State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses[.]").[12]  This District Court has previously precluded plaintiffs from making these arguments under similar circumstances:

> Defendant moves to exclude any reference at trial to its "size, wealth, revenue, profits, or any other financial information" because it is irrelevant and prejudicial.  This Court agrees and finds that the prejudice that would result from the admission of evidence relating to Defendant's wealth or resources outweighs its probative value.  Plaintiff cites this Court to cases

---

[12]  *See also Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955) ("It is the general rule that . . . the admission of evidence concerning the wealth of a party litigant constitutes error . . . . [S]uch evidence tends to inject . . . a foreign, diverting, and distracting issue which may effectuate prejudicial results.") (citations omitted); *Geddes v. United Financial Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (same); *Fabre*, 2013 WL 3821478.

in which the wealth of the party was relevant in assessing punitive damages. In this matter, however, Louisiana Revised Statutes §§ 22:1973 and 18:1892 provide for specific damage calculations after a finding of liability. The jury would not, therefore, be called upon to calculate damages based upon the resources of the Defendant. Accordingly, this request is GRANTED, and Plaintiff is barred from referring to Defendant's financial position at trial.

*F.H. Paschen, S.N. Nielsen & Assocs. LLC v. Hiscox, Inc.*, No. CV 13-5843, 2015 WL 13532830, at *2 (E.D. La. Nov. 25, 2015) (citations omitted).[13]

Furthermore, if Plaintiff presented evidence of Sanofi's finances or employment decisions at trial, Sanofi would be forced to present its own rebuttal evidence, placing its profitability and employment decisions in context, thus wasting time on collateral issues. For all of the foregoing reasons, the Court should exclude all argument and evidence of Sanofi's finances or employment decisions.

---

[13] *See also, e.g.*, *In re Norplant*, 1997 WL 80526, at *1 (excluding profit evidence under Rule 403); *La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994) (holding that evidence of manufacturer's profits were inadmissible at retrial because likely prejudice outweighed any probative value); *Gray*, 82 F. App'x at 651 (affirming the trial court's exclusion of profit evidence as "more prejudicial than probative"); *Draper v. Airco, Inc.* 580 F.2d 91, 95 (3d Cir. 1978) (ordering a new trial after, among other improprieties, "[c]ounsel repeatedly made reference to the wealth of the defendants in contrast to the relative poverty of the plaintiff"); *Foster v. Crawford Shipping Co., Ltd.*, 496 F.2d 788, 792 (3d Cir. 1974) (noting that court does not sanction "appeals to juror prejudice by virtue of disparity of financial resources"); *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-J-33TEM, 2007 WL 2696791, at *2 (M.D. Fla. Sept. 12, 2007) ("As punitive damages are not an issue in this case, this Court finds that it would be inappropriate, and unfairly prejudicial to Defendant, to allow the Plaintiff to refer to Defendant's net worth, revenues, profits, and financial condition.").

10.  **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING EXPERT OPINIONS THAT EXCEED THE SCOPE OF PLAINTIFF'S EXPERTS' RULE 26 EXPERT DISCLOSURES.**

During depositions, some of Plaintiff's experts strayed beyond the scope of their Rule 26 disclosures and offered additional, undisclosed opinions.[14]  Defendants anticipate that Plaintiff may improperly attempt to elicit, or Plaintiff's experts may improperly attempt to offer, opinions that were not adequately disclosed in their respective expert reports.  Plaintiff's experts should be precluded from introducing any opinions at trial which were not properly disclosed in their Rule 26 expert reports.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *see also* Fed. R. Civ. P. 37(c)(1).

Rule 26(a)(2)(B)(i) requires a retained expert to provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them."  This rule makes good sense.  "The purpose of requiring disclosure of expert reports is to notify opposing parties of the scope and content of the expert's proposed testimony."  *Williams v. Am. Strategic Ins. Corp.*, No. 13-5411, 2014 WL 1246846, at *3 (E.D. La. Mar. 25, 2014) (citation omitted).  If a party fails to provide information required in a Rule 26 expert report, "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

---

[14]  *See, e.g.*, Def. MSJ on General Causation, Rec. Doc. 6163 at 9–11 (neither Dr. Madigan nor Dr. Feigal addressed general causation in their expert reports); Madigan Dep. at 62:5–63:6 ("Q. And these are the four things you were asked to investigate or research in this case; correct? A. Correct. . . Q. You were not asked, for example, to investigate whether docetaxel causes irreversible alopecia? A. Not specifically."), **Ex. J**; Feigal Dep. Vol. I at 237:18–23 ("Q. But you would agree with me that [general causation] is not expressly stated in the section [of your report] entitled 'Scope of This Report'? [objection] A. I do agree that phrase is not in this report."), **Ex. C**; Tosti Report at 28 (concluding that Plaintiff is "affected by permanent alopecia after systemic chemotherapy," without concluding which specific chemotherapy drug caused her injury) **Ex. K**; Tosti Dep. Vol. I at 297:17–298:6 ("Q. And in your report, you do not attribute the hair loss to any specific chemotherapy drug, right? . . . A. I cannot say which drug is causing the—the hair loss, of course. You can never make these diagnosis for any type of drug-induced hair loss, even for telogen effluvium."), **Ex. L**; Tosti Dep. Vol. II at 453:14–21 (later changing her testimony by stating that it is her opinion that Plaintiff is affected by persistent alopecia after chemotherapy specifically caused by docetaxel), **Ex. M**.

Plaintiff has not offered any justification for her experts' testifying at deposition beyond the scope of their Rule 26 reports, and there is no justification for admitting such testimony at trial. Defendants would be prejudiced by revelations of new opinions during trial, having had no opportunity to test those opinions or take discovery on their purported bases. Therefore, the Court should exclude any opinion that was not described in the expert's Rule 26 report. *See Sobrino-Barrera v. Anderson Shipping Co., Ltd.*, 495 F. App'x 430, 432–33 (5th Cir. 2012) (per curiam) (district court did not abuse its discretion in excluding an expert affidavit that presented new, previously undisclosed opinions); *Williams*, 2014 WL 1246846, at *2 (striking an expert's supplemental report and any evidence obtained pursuant to testing after the original report was disclosed). *Peña v. Hawes*, No. cv-12-0622, 2014 WL 11512593, at *2 (D. N.M. Apr. 30, 2014) (granting a motion *in limine* to exclude expert opinion testimony beyond the opinions disclosed in the expert report).

11.    **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE INTENT, MOTIVES, OR STATE OF MIND.**

The Court should exclude all evidence and argument regarding Sanofi's corporate intent, motives, and/or state of mind, including evidence and argument suggesting that it had a financial motive to downplay potential risks associated with Taxotere.[15]  Such evidence is (1) irrelevant to Plaintiff's claims; (2) speculative and beyond the scope of Plaintiff's experts' knowledge and expertise; and (3) unduly prejudicial, serving only to confuse the jury and waste judicial time and resources.  *See* Fed. R. Evid. 401-403.

A.    **Motive, Intent, and State of Mind Evidence is Irrelevant.**

Evidence of a party's intent, motives, or state of mind is irrelevant to a determination of liability in a product liability action.  *See, e.g.*, *La Plante v. Am. Honda Motor Co., Inc.*, 27 F.3d 731, 739 (1st Cir. 1994) ("A defendant's motive for its action or inaction is, generally speaking, immaterial to the question of whether the defendant acted negligently."); *Gray v. Hoffman-La Roche*, 82 Fed. App'x 639, 651 (10th Cir. 2003) (defendant's "alleged motive for failing to issue a stronger warning is immaterial to any element of [plaintiff's] . . . causes of action, and is therefore inconsequential to the determination of the case.").

Nothing about *why* Sanofi acted (or not) has any bearing on whether Taxotere caused the alleged injuries in this case; nor do Sanofi's motives, intent, or state of mind have any bearing on the prescribing physicians' decisions to use a Taxotere-containing regimen to treat Plaintiff in these cases.  Thus, any proffer of evidence or argument as to Sanofi's corporate intent, motives, or

---

[15]   A review of Plaintiff's expert reports and deposition testimony indicates that Plaintiff may seek to offer testimony on Sanofi's corporate intent, motive, or ethics.  *See, e.g.,* Kessler Dep. 264:5–15 (discussing Sanofi's business goals with respect to Taxotere), **Ex. N**; Feigal Dep. Vol. I 102:4–7 ("I think there's an ethical responsibility. If . . . the company is aware of side effects to communicate that so each -- regardless of regulatory issues, there's ethical responsibilities to do[.]."), 102–105, 116–17 (discussing Sanofi's claimed ethical responsibilities with respect to notice about alleged risks of Taxotere), **Ex C**.

state of mind should be excluded as irrelevant to the claims at issue in this case.  *See* Fed. R. Evid. 401.

### B.  Motive and Intent Evidence is Inherently Speculative and Unreliable.

Evidence of a party's intent, motives, and/or state of mind should also be precluded because it is inherently speculative and unreliable.  No witness (including Plaintiff's experts) is qualified to reliably opine as to Sanofi's alleged corporate intent, motives, and/or state of mind.  *See United States v. Cytogel Pharma, LLC*, No. CV 16-13987, 2018 WL 5777510, at *3 (E.D. La. Nov. 2, 2018) ("Expert opinions may not be based on subjective belief or unsupported speculation. Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."") (internal citations and quotations omitted); *see also First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (stating that "expert testimony . . . [offering] opinion of dishonesty goes beyond the scope of expertise . . . . [Experts] may only assist and not replace the fact finder.").

Federal courts across the country have made similar determinations. *See, e.g.*, *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 5392995, at *6 (D. Vt. Oct. 23, 2014) (prohibiting expert witnesses from speculating about individual or entity motives, knowledge, or intent); *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-cv-157, 2010 WL 11531436, at *5–6 (E.D. Tex. June 18, 2010) (collecting cases); *In re Rezulin*, 309 F. Supp. 2d 531, 545–547 (S.D.N.Y. 2004) (precluding expert testimony on the motive, intent, and state of mind of the defendants and others because it describes "lay matters which a jury is capable of understanding and deciding without the expert's help" and noting that "the question of intent is a classic jury question and not one for the experts.") (quotations omitted).  The same result is warranted here.  All evidence

regarding Sanofi's corporate intent, motives, and/or state of mind should be precluded as inherently speculative and unreliable.

### C.     Motive and Intent Evidence is Prejudicial, Unhelpful to the Jury, and Will Waste Judicial Time and Resources.

If permitted, the admission of state of mind evidence would serve only to prejudice and confuse the jury, and lengthen the trial.  Fed. R. Evid. 403.  Sanofi would then be forced to spend time rebutting and contextualizing such evidence on issues that have no bearing on the claims in the case.  *See In re C.R. Bard Pelvic Repair Sys. Prod. Liab. Litig.*, 948 F. Supp. 2d 589, 611 (S.D. W.Va. June 4, 2013), *on reconsideration in part* (June 14,2013) ("knowledge, state of mind, alleged bad acts, failures to act, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury").  For these additional reasons, evidence of Sanofi's motives, intent, and state of mind should be excluded from trial.

12.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE INTEGRITY AGREEMENTS, GOVERNMENT INVESTIGATIONS OR SETTLEMENTS, OR ANY OTHER ALLEGED "BAD ACTS" UNRELATED TO TAXOTERE.**

The Court should exclude all evidence and argument regarding Corporate Integrity Agreements ("CIAs"), government investigations, warning letters, settlements, and any other alleged "bad acts" involving Sanofi that are not related to Taxotere.

Plaintiff may attempt to portray Sanofi as a bad actor and make this trial a referendum on its corporate conduct by introducing, among other things, evidence of CIAs, government investigations, settlements, or other purported "bad acts" unrelated to Taxotere. Such evidence should be excluded at trial because it (1) is irrelevant to Plaintiff's claims; (2) is substantially more prejudicial than probative; and (3) constitutes improper propensity evidence. Additionally, evidence of settlements violates Fed. R. Evid. 408 (compromise offers and negotiations).

A.   **Evidence of "Bad Acts" Unrelated to Taxotere is Not Relevant.**

Sanofi's corporate conduct regarding other products is not relevant to any material issue in this case—and courts across the country have routinely excluded such "other product" evidence. *See*, *e.g.*, *In re Seroquel Prods. Liab. Litig.*, Civ. No. 6:06-md-1769, 2009 WL 223140, at *7 (M.D. Fla. Jan. 30, 2009) ("a party's agreement as to a particular standard of care for a completely different medication, used to treat a completely different condition [] is irrelevant to Plaintiff's claims in this case"); *Rheinfrank v. Abbott Labs., Inc.*, Civ. No. 1:13-cv-144, 2015 WL 5258858, at *4 (S.D. Ohio Sept. 10, 2015) (excluding settlement and CIA evidence from a different case because such evidence "ha[d] no relevance in this case"); *In re Depakote*, Civ. No. 14-CV-847, 2015 WL 4775937, at *2 (S.D. Ill. Feb. 20, 2015) (excluding evidence of a prescription drug manufacturer's civil settlement and CIA because the evidence had "no relevance in this case").

34

**B.    Evidence of "Bad Acts" Unrelated to Taxotere is Substantially More Prejudicial than Probative.**

Evidence or argument concerning "bad acts" unrelated to Taxotere also should be excluded under Rule 403 because it would unfairly prejudice Sanofi.  *See Rheinfrank*, 2015 WL 5258858, at *4 (concluding that the probative value of a settlement and CIA was "outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time").  As this District Court has recognized, evidence of this nature would require mini-trials to provide the appropriate context for the jury.  *See Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, Civ. No. 09-3418, 2010 WL 1817768, at *5 (E.D. La. Apr. 30, 2010) (Fallon, J.) ("introduction of this evidence is likely to unfairly prejudice the jury by leading them to draw conclusions about the Defendants' actions in this case based on their past conduct. This danger substantially outweighs the probative value of the challenged evidence.").

Whatever probative value the other alleged "bad acts" might possess (which is minimal), the admission of such evidence would result in trials within a trial, prejudicing Sanofi, confusing the issues, misleading the jury, and wasting time.  *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence that would require "mini-trials" of "other acts" because it "would amount to needless waste of judicial resources"); *Coursen v. A.H. Robins, Co.*, 764 F.2d 1329, 1334–35 (9th Cir. 1985) (affirming exclusion of "innuendos of collateral misconduct" by a medical device manufacturer as unduly prejudicial and confusing under Rule 403); *In re Seroquel Prods. Liab. Litig.*, 2009 WL 223140, at *7 (evidence of a party's agreement as to a particular standard of care for a completely different medication, used to treat a completely different condition wastes time, will confuse the jury, and is more prejudicial than probative); *In re Depakote*, 2015 WL 4775937, at *2 (noting that even if evidence of a CIA "had

minimal probative value, any probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and/or wasting time").

### C.     This Evidence is Inadmissible Character or Propensity Evidence.

Evidence of CIAs, investigations, settlements, or other "bad acts" unrelated to Taxotere is not admissible to prove Sanofi's character or propensity to engage in purported misconduct.  *See* Fed. R. Evid. 404(b)(1); *see also In re Vioxx Prods. Liab. Litig.*, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005) (Fallon, J.) (excluding evidence of alleged misconduct unrelated to Vioxx pursuant to Rule 404(b)).  Plaintiff may not present evidence of unrelated "bad acts" to paint Sanofi as a bad corporate citizen or to argue that it was more likely to engage in misconduct with respect to Taxotere just because it was purportedly involved in other, prior alleged misconduct involving different products.  *See Landrieu*, 2010 WL 1817768, at *5 (excluding "evidence of other crimes, wrongs, or acts" under Rule 404(b)).

13.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING SPECIFIC LITIGATION CONDUCT.**

The Court should preclude Plaintiff from proffering evidence or argument concerning specific litigation conduct in this MDL (or related proceedings), specifically: (1) Sanofi's designation of documents or testimony as confidential and/or any suggestion that such designations were improper or made in an attempt to keep certain information secret; (2) Sanofi's document production generally; (3) the parties' motions and Court rulings on issues in this litigation; and (4) all references to settlement negotiations. Such evidence and argument should be excluded as irrelevant to the claims at issue and because its probative value, if any, is substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 401-403.

A.     **The Legitimate Litigation Act of Designating Documents and Testimony as "Confidential" is Irrelevant.**

Plaintiff should not be permitted to present evidence or argument of Sanofi's litigation-based designation of documents and testimony as "confidential" to suggest that Sanofi concealed information, acted improperly, or is otherwise blameworthy in some way. *See* Fed. R. Evid. 401-403. Sanofi's designation of documents and/or testimony as "confidential" pursuant to the Protective Order entered in this MDL has nothing to do with the issues in this case and should be precluded. *See In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-4301, 2014 WL 505234, at *7 (S.D.W. Va. Feb. 5, 2014) ("Whether a party designates a document as confidential during the litigation process is *absolutely irrelevant*.") (emphasis added). The act of designating documents and testimony in litigation is neither improper nor relevant, and should be precluded from use by Plaintiff at trial. *See* Fed. R. Evid. 401-403.

### B.   Evidence or Argument About Sanofi's Document Production in Litigation is Irrelevant.

Plaintiff should be prohibited from presenting evidence or argument suggesting that Sanofi or its counsel refused or failed to produce any document, report, statement, material, or other information that is privileged or the production of which was not required by the Court.  *See* Fed. R. Evid. 401-403.  Plaintiff should also be precluded from submitting evidence or argument regarding any request for production that was specifically overruled and denied by the Court, or that was objected to by Sanofi.  *Id.*

### C.   Evidence or Argument Regarding the Parties' Motions, Sanofi's Objections, or Court Rulings is Irrelevant.

The Court should exclude evidence and argument regarding the parties' litigation conduct in the form of motions filed, objections asserted, and rulings issued because such conduct is not relevant to the claims at issue in this case.  *See* Fed. R. Evid. 401-403.  Specifically, evidence or argument concerning Sanofi's objections—including those made in pleadings, discovery responses, depositions, and hearings, as well as Sanofi's refusal to answer questions to which objections were made—should be precluded as irrelevant and unfairly prejudicial.  *See* Fed. R. Evid. 401-403.  The fact that Sanofi made or filed objections and refused to answer questions until such objections were brought to the Court for a ruling on their validity is meaningless, irrelevant, and immaterial to any issue in this case; and would serve only to prejudice the jury against Sanofi. *See* Fed. R. Evid. 401-403; *Sw. Louisiana Convention & Visitors Bureau v. Employers Mut. Cas. Co.*, No. 06-2006, 2009 WL 1787680, at *2 (W.D. La. June 22, 2009) ("The Court has reviewed

the law and the evidence and rules that any correspondence of counsel related to discovery disputes, motions to compel and/or other discovery issues will be excluded.").

Likewise, any reference to rulings made by this Court should also be precluded because they too are irrelevant and do not tend to make the existence of any fact of consequence more or less probable.  *See* Fed. R. Evid. 401.  Furthermore, such references could mislead and prejudice the jury, and confuse the issues.  *See* Fed. R. Evid. 403; *Harris v. Q&A Assocs., Inc.*, No. 2:16-CV-46, 2018 WL 3084709, at *8 (N.D. W. Va. June 22, 2018) (precluding any mention of the court's pre-trial rulings and any other rulings made outside of the presence of the jury).

### D.   Evidence or Argument Relating to Settlement Negotiations is Irrelevant.

Any question, statement, or reference to settlement discussions, including failure to settle, or any reference to mediation, negotiation, or compromise should be precluded because it is not relevant.  Fed. R. Evid. 401.  Moreover, such evidence is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408; *see also See King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 720 (5th Cir. 2011) ("Dr. King's reliance on settlement negotiations to prove liability would be a paradigmatic Rule 408(a) violation. Dr. King's argument on this issue has no merit."); *Mailly v. Park Place Entm't Corp.*, 114 Fed. App'x 602, 603 (5th Cir. 2004) ("The evidence in question comes exclusively from a settlement conference and thus falls squarely within the protection granted by Rule 408 of the Federal Rules of Evidence. . . . Therefore, the district court did not abuse its discretion by excluding the evidence."); *Marine Power Holding, L.L.C. v. Malibu Boats, LLC*, No. CV 14-912, 2016 WL 4218217, at *3–4 (E.D. La. Aug. 8, 2016) (excluding evidence under Rule 408).

14.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ALLEGED FRAUD ON THE FDA.**

Sanofi anticipates that Plaintiff may argue that Sanofi withheld information from, misled, and/or committed fraud on the FDA.  *See, e.g.*, Kessler Report at ¶ 190, **Ex.** A.  Such arguments are improper and run contrary to the Supreme Court's decision in *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 343 (2001), which precludes the admission of evidence, testimony or argument concerning any alleged fraud on the FDA.  Furthermore, the probative value of such evidence, if any, is substantially outweighed by the unfair prejudice Sanofi would suffer and the extreme likelihood that the evidence would mislead and confuse the jury.

FDA is charged with investigating potential violations of the Federal Food, Drug and Cosmetic Act ("FDCA").  21 U.S.C. § 372.  In *Buckman*, the Supreme Court held that the FDCA preempted state law causes of action that sought to supplant the FDA's role in policing fraud on the agency, which was a power Congress exclusively granted to it in the FDCA. *Buckman*, 531 U.S. at 350.[16]  The Court also noted that the "FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" of its provisions. *Id.* at 349 n.4; *see also* 21 U.S.C. § 337(a) (barring all private enforcement of the FDCA).

The Fifth Circuit has held that claims alleging that a manufacturer committed fraud on the FDA are preempted.  *See, e.g.*, *Morris v. PLIVA, Inc.*, 713 F.3d 774, 777 (5th Cir. 2013) ("a claim that [defendant] breached a federal labeling obligation sounds exclusively in federal (not state)

---

[16]   Courts applying *Buckman*, which involved a manufacturer of a federally regulated medical device, have uniformly applied *Buckman*'s reasoning to manufacturers of regulated pharmaceuticals.  *See Dawson ex rel. Thompson v. Ciba-Geigy Corp.*, 145 F. Supp. 2d 565 (D.N.J. 2001); *Globetti v. Sandoz Pharm. Corp.*, No. CV98-TMP-2649-S, 2001 WL 419160 (N.D. Ala. Mar. 5, 2001).

law, and is preempted"); *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 380 (5th Cir. 2012) ("In cases like this, where the FDA has not found fraud, the threat of imposing state liability on a drug manufacturer for defrauding the FDA intrudes on the competency of the FDA and its relationship with regulated entities.  Under such circumstances *Buckman* found a violation of the Supremacy Clause.").

Courts interpreting *Buckman* have specifically rejected efforts to turn prescription drug cases into sideshows about regulatory compliance.  In *Bouchard v. American Home Products Corp.*, 213 F. Supp. 2d 802, 813 (N.D. Ohio 2002), the federal court precluded the plaintiff from introducing the very type of evidence that Plaintiff propose to introduce here.  In *Bouchard*, the court held:

> Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was *intentionally concealed from the FDA*.  Exclusion of further evidence may be necessary to prevent confusion of the jury as to the nature of Bouchard's claims; to the extent that is the case, further objections may be made at trial.

*Id*. at 812 (emphasis added).

Similarly, in *Flynn v. American Home Products Corp.*, 627 N.W.2d 342, 346-49 (Minn. Ct. App. 2001), the Minnesota Court of Appeals stated that, "[a]s in *Buckman*, the existence of state-law claims against applicants for, and recipients of, FDA drug approval for alleged violation of FDA regulations conflicts with the FDA's authority to consistently police fraud within the agency's powers."  *Id.* at 349.  Other courts likewise have excluded evidence of alleged fraud on the FDA.[17]  The reasoning of these cases applies here.

---

[17]   *See Dawson ex rel. Thompson v. Ciba-Geigy Corp. USA,* 145 F. Supp. 2d 565 (D.N.J. 2001) (recognizing that fraud-on-the-FDA claims are preempted); *Globetti v. Sandoz Pharms. Corp.*, No. CV98-TMP-2649-S, 2001 WL 419160 (N.D. Ala. Mar. 5, 2001) (plaintiff's claims for fraud-on-the-FDA were dismissed).

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401.  Here, any evidence, testimony, or argument regarding alleged inadequacies or deficiencies in Sanofi's correspondence or disclosures to FDA would only be relevant to show fraud-on-the-FDA, which is preempted under *Buckman*.  *See*, *e.g.*, Kessler Report at ¶ 190, **Ex. A**.

Moreover, evidence and argument that Sanofi withheld information from the FDA would serve to mislead and confuse the jury on collateral issues, while unfairly prejudicing Sanofi.  *See* Fed. R. Evid. 403.  For this additional reason, such evidence should be excluded.

Date:  July 16, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile:  305-358-7470
hsastre@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and*
*Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **July 16, 2019**, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of

record who are CM/ECF participants.

*/s/ Douglas J. Moore*
Douglas J. Moore