UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| THIS DOCUMENT RELATES TO: | SECTION "H" (5) |
| Barbara Earnest, Case No. 16-cv-17144<br>Jacqueline Mills, Case No. 17-cv-2689 | |

**MEMORANDUM OF DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI US SERVICES INC. IN SUPPORT OF THEIR MOTION PURSUANT TO 28 U.S.C. § 1292(b) TO CERTIFY THE COURT'S JULY 9, 2019 SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL AND ADJOURN THE *EARNEST* TRIAL PENDING THE APPEAL**

## INTRODUCTION

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. ("Sanofi") seek certification of an interlocutory appeal of this Court's July 9, 2019 Order and Reasons (Rec. Doc. 7571) to resolve a controlling issue of law—the appropriate standard for applying the learned-intermediary doctrine to determine proximate causation under Louisiana and Georgia law.

Ms. Earnest brought a pharmaceutical warnings case against Sanofi, alleging inadequate warnings under Louisiana's Products Liability Act, LSA-RS 9:2800.57. Ms. Mills and her husband have four Georgia-law claims pending, including failure to warn and negligence. (Rec. Doc. 7571, at 10-11, 18.) On July 9, 2019, this Court denied summary judgment in both cases, finding genuine issues of fact existed as to proximate causation because of the legal standard the Court adopted. (Rec. Doc. 7571, at 15-18, 21.) Ms. Earnest's case is now scheduled to be the first trial of the MDL. Ms. Mills's case initially was also selected as a potential trial case.

1

In its summary judgment order, this Court recognized that under the learned-intermediary doctrine, "the manufacturer of a prescription drug 'has no duty to warn the patient [about an alleged risk], but need only warn the patient's physician.'"  (Rec. Doc. 7571, at 19-20 (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).)  Then, "to prove causation, 'the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product.'"  (*Id.* at 20 (quoting *Willett*, 929 F.2d at 1099).)

The Court did not, however, apply that proximate causation standard here.  The Court found that the learned-intermediary doctrine applies differently in this case "[b]ecause the chemotherapy decision-making process is unique."  (*Id.* at 16; *see also id.* at 20.)  The Court held:

> The question is not simply "what would the doctor have prescribed" but whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, whether the patient would have inquired about other options, what the doctor would have recommended, and what decision the plaintiff would have ultimately made. . . . While a doctor may testify that his or her recommendation would not have changed, *the issue is whether the plaintiff's ultimate decision would have changed.*

(*Id.* at 16 (emphasis added).)  Applying this formulation of the learned-intermediary doctrine, the Court held that the absence of evidence that Ms. Earnest's prescribing oncologist would have changed his decision to prescribe Taxotere for Plaintiff was not dispositive and that "testimony . . . that Earnest had a viable alternative to Taxotere" defeated summary judgment: "The jury will need to hear the testimony at trial and decide whether Earnest would have chosen paclitaxel despite her neuropathy or whether she would have still chosen Taxotere knowing of its risk of permanent alopecia."  (*Id.* at 21.)  Similarly, the Court found there was a question for the jury on whether Ms. Mills "would have followed the recommendation of Dr. Shah" to take the Taxotere regimen.  (*Id.* at 17.)

2

Sanofi seeks certification of an interlocutory appeal of the July 9, 2019 summary judgment order to the U.S. Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. § 1292(b), so that the Fifth Circuit can address the controlling question of whether, under Louisiana and Georgia's learned-intermediary doctrine, a plaintiff can establish the proximate causation element of a failure-to-warn claim based on evidence that the plaintiff may have chosen to receive a different chemotherapy treatment even if the evidence established that the treating oncologist would not have changed his or her prescribing decision.

Immediate appellate guidance on this important legal question will help the parties and this Court efficiently proceed with the first trials in this MDL and also advance their efforts to resolve the broader litigation, in which the same question is expected to arise in a significant portion of the other cases coordinated here. A determination of this essential issue not only will determine whether Ms. Earnest's case should proceed to trial, but also will instruct the similar cases pending in the MDL. This determination should be made before this Court presides over the first round of trials. The trials test legal and factual theories and may assist the parties in resolving the larger MDL. That purpose is only served if the cases tried pose genuine factual disputes as to the essential elements of the claim and the jury is properly instructed on the elements of the cause of action. Resolution of the learned-intermediary question on interlocutory appeal, before the *Earnest* trial proceeds, will therefore enable efficient management of the MDL.

This Court should accordingly certify its July 9, 2019 summary judgment order to the Fifth Circuit to decide the learned-intermediary causation issue. The Court should further order a limited adjournment of the *Earnest* trial pending a decision by the Fifth Circuit on whether to accept an interlocutory appeal and, if accepted, until resolution of that appeal.

**ARGUMENT**

**I.    AN INTERLOCUTORY APPEAL IS APPROPRIATE**

This Court should certify its learned-intermediary ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Although the denial of summary judgment is not a final order,[1] this Court has discretion to certify an interlocutory appeal. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress . . . chose to confer on district courts first line discretion to allow interlocutory appeals."). Certification of an issue for appeal is a procedural mechanism that promotes judicial economy and speeds justice for the parties. *See In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 507 (5th Cir. 2010); *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961) ("[O]rderly administration is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of . . . law . . . upon which in a realistic way the whole case or defense will turn.").

Pursuant to Section 1292(b), this Court may certify an order for appeal where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal may materially advance the litigation. 28 U.S.C. § 1292(b). Each factor is met here. Sanofi therefore respectfully asks this Court to certify for immediate interlocutory appeal its summary judgment order to the Fifth Circuit to consider the controlling issue of learned-intermediary causation and to adjourn the *Earnest* September 16, 2019, trial date pending resolution of the appeal.

---

[1] This Court's Order and Reasons is not appealable under 28 U.S.C. §§ 1291 or 1292(a). *See Blake v. Lambert*, 921 F.3d 215, 219-20 (5th Cir. 2019) (district court's order denying motion for summary judgment generally does not constitute final judgment).

A. **The Proper Legal Standard for Causation Under the Learned-Intermediary Doctrine Is a Controlling Question of Law**

The standard for causation under the learned-intermediary doctrine qualifies as a controlling question of law because it determines an essential element of plaintiffs' failure-to-warn claims. A controlling question of law is "one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95-96 (D.D.C. 2003); *see also* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3930 (3d ed. Apr. 2019 update). The Fifth Circuit has found certification of an interlocutory appeal appropriate where the case presented "serious questions of Louisiana law." *R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 778 (5th Cir. 1963); *see also Katrina Canal Breaches*, 613 F.3d at 509.

The Court's interpretation of the learned-intermediary doctrine was dispositive of its summary judgment rulings in *Mills* and *Earnest*. Ms. Mills' physician, Dr. Shefali Shah, testified that a label change would not have affected her decision to prescribe Taxotere because it is "the standard of care in this setting" and testified that she had no doubt that the regimen "was the right choice for Mills's aggressive form of cancer." (Rec. Doc. 7571, at 12, 16.) Dr. Shah added that the alternatives posited were not available at the time of Ms. Mills's treatment in 2014. (Rec. Doc. 6347-6, Shah Dep. at 103:2-9; 109:1-21; 110:25-112:4.) In any event, Ms. Mills herself testified that she did not know whether she still would have taken the chemotherapy regimen that her doctor recommended, over a small risk that it may cause permanent hair loss, if it was her "best chance of survival." (Rec. Doc. 6347-5, Ex. 3, Mills Dep. at 64:8-13; 101:5-7; 102:7-23; 110:10-23; 254:23-255:15.) The Court held that this fact was not sufficient for summary judgment in the context of chemotherapy prescribing decision-making (Rec. Doc. 7571, at 16) and that the jury

5

should be permitted to determine whether Ms. Mills "would have followed the recommendation of Dr. Shah." (*Id.* at 17.)

As to Ms. Earnest, Dr. Carinder testified that he deliberately chose to prescribe Ms. Earnest Taxotere rather than Taxol (paclitaxel) because at that time Taxol was not available at dosages with an acceptable side effect profile for her.[2] (Rec. Doc. 6078-5, Ex. D, Carinder Dep. 26:2-4; 26:23-25; 69:15-19; 130:14-131:12; 139:7-140:1.) Ms. Earnest elicited no testimony showing that Dr. Carinder would have changed his decision to prescribe Taxotere if the label had warned him of a risk of permanent alopecia *at the time it was prescribed*. Ms. Earnest—even with the benefit of hindsight—admitted that she could not say how her own decision would have changed if she had been advised of the risk of permanent alopecia. (Rec. Doc. 6753-2, Ex. B, Earnest Dep. II at 103:16-112:9; 113:16-24.) The Court nonetheless denied summary judgment because it determined that the jury should decide whether Ms. Earnest "would have still chosen Taxotere knowing of its risk of permanent alopecia." (Rec. Doc. 7571, at 21).[3]

---

[2] Dr. Carinder testified, "We didn't have paclitaxel approved for using it weekly back in the day when Miss Earnest was treated." He continued: "I used docetaxel more because you had less risk of infusion reactions, and you had less neuropathy . . . if I can avoid the neuropathy and the infusion reactions, of course I'm gonna use that." (Rec. Doc. 6753-1, Ex. A, Carinder Dep. at 130:14-16; 26:2-4; 26:23-25.)

[3] The Court did not address the prescribing physicians' failure to read the Taxotere label before prescribing it to plaintiffs, which should break the chain of proximate causation. (Rec. Doc. 6753-1, Ex. A, Carinder Dep. at 119:3-14 (Dr. Carinder's testimony that he had not read the label since 1999 or 2000—a decade before his prescribing decision.); Rec. Doc. 6347-6, Ex. 4, Shah Dep. at 31:14-18 (Dr. Shah's testimony that she did not recall referring to the Taxotere package insert in the last five years).) Under controlling precedent, any heeding presumption is rebutted by the manufacturer's showing that the user failed to read the existing labeling. *See, e.g.*, *Pustejovsky v. PLIVA, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) ("Dr. Collini did not recall ever reading the package insert for the drug or consulting the Physician's Desk Reference. Her lack of memory, of course, does not preclude the possibility that she had read these materials, but neither can sustain [plaintiff]'s burden."); *accord Bloxom v. Bloxom*, 512 So. 2d 839, 841 (La. 1987); *Felice v. Valleylab, Inc.*, 520 So. 2d 920, 927 (La. Ct. App. 1987).

6

If the *Earnest* or *Mills* cases proceed to trial, the learned-intermediary question would still present a controlling issue of law by affecting how the jury determines this essential element. Under Sanofi's understanding of the causation standard, the jury should determine whether the *physician*'s prescribing decision would have changed in light of the modified warning. But under the standard applied by this Court, plaintiffs might argue that the jury should decide whether "the *plaintiff*'s ultimate decision would have changed." (Rec. Doc. 7571, at 16) (emphasis added).) The legal standard will determine the relevant causation evidence presented at trial and whether the plaintiff may hypothesize about the effect of a warning on her treatment choices.[4]

In analogous cases, the Fifth Circuit has endorsed certifying determinative legal questions, including controlling questions of state law. The Fifth Circuit has found that the affirmative defense of federal law preemption "certainly falls within the ambit of 28 U.S.C. § 1292(b)." *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015). Similarly, in *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978 (D. Ariz. 2015), *aff'd*, 881 F.3d 750 (9th Cir. 2018) (per curiam), the court determined that loss causation was a controlling legal issue, in part, because "a costly and complex trial" would not be necessary if the circuit court disagreed with the district court about which line of precedent governed the causation standard. *Id.* at 992. For example, the Fifth Circuit has also found that an issue of state law may be controlling and worthy of Section 1292(b) certification. *See, e.g.*, *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461 (5th Cir.

---

[4] To decide summary judgment, this Court evaluated Ms. Earnest's and Ms. Mills's own testimony to determine whether each plaintiff would have followed her physician's prescription of Taxotere if advised of the risk of permanent alopecia. (Rec. Doc. 7571, at 16-71, 21.) Nonetheless, "because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter," courts have rejected such subjective testimony and instead have "adopted an objective standard of causation, i.e., whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed." *See Brandt v. Engle*, 791 So. 2d 614, 620 (La. 2001) (internal quotation marks omitted); *see also* Rec. Doc. 6753, Def. Reply Br. 8 n.3.

7

2005). These cases make clear that the learned-intermediary issue presents a controlling issue of law.

### B. A Substantial Ground for Difference of Opinion Exists Regarding This Court's Application of the Learned-Intermediary Doctrine

Application of the learned-intermediary doctrine in this context creates a substantial ground for a difference of opinion because it is a legal "question about which reasonable jurists can . . . debate," *see Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010), and because the Court's decision "conflicts with decisions of several other courts," *APCC Servs.*, 297 F. Supp. 2d at 97-98. For example, Judge Fallon certified for appeal a threshold jurisdictional issue in an MDL because, although he disagreed with the defendant manufacturer's position, he agreed that the position was "not insubstantial." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2012 WL 4928869, at *7 (E.D. La. Oct. 16, 2012), *Fifth Circuit noting that it accepted interlocutory appeal in* 753 F.3d 521, 528 (5th Cir. 2014).

Louisiana and Georgia both follow the learned-intermediary doctrine in prescription drug cases. *Willett*, 929 F.2d at 1098 (applying Louisiana law); *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70, 73 (Ga. Ct. App. 1997). Under that doctrine, the plaintiff must show: (1) the plaintiff was not warned of a risk; (2) the physician did not know of that risk; (3) and that the failure-to-warn the physician was the cause of the injury, which is shown by demonstrating that the warning "would have changed the decision of the treating physician." *Willett*, 929 F.2d at 1099; *see also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265-66 (5th Cir. 2002); *Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 734 (Ga. Ct. App. 2003) (Andrews, J., concurring specially). At issue here is the last element: causation.

Numerous courts agree that, under Louisiana law, each plaintiff must prove causation with evidence specific to her treating physician: "the plaintiff must show that a proper warning would

have changed the decision of *the treating physician*, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett*, 929 F.2d at 1099 (emphasis added); *Pellegrin v. C.R. Bard*, No. 17-12473, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018) (same); *Brown v. Glaxo, Inc.*, 790 So. 2d 35, 38 (La. Ct. App. 2000) ("[The duty to warn] is fulfilled when the prescribing doctor is informed of the potential risks from the drug's reasonably anticipated use *so that the physician may intelligently decide* on its use with the particular patient." (emphasis added)); *Huffman v. Bristol-Myers Squibb*, No. 16-3714, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) ("To demonstrate causation under Louisiana law, the plaintiff must ultimately show that *the doctor* would not have prescribed [the drug] had the doctor received a proper warning." (emphasis added)); *Rhodes v. Bayer Healthcare Pharm. Inc.*, No. 10-1695, 2013 WL 1282450, at *4 (W.D. La. Mar. 28, 2013) ("Plaintiffs bear the burden to show that a proper warning would have changed the decision of *Dr. Chandler*, *i.e.*, that but for the inadequate warning, he would not have used or prescribed [the drug]." (emphasis added)).

Similarly, Georgia courts have recognized the learned-intermediary doctrine as a settled canon in cases involving prescription medications. *Presto*, 487 S.E.2d at 73. Under Georgia law, a drug manufacturer's duty to warn runs to the prescribing physician, not to the patient or to the general public. *See Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) (holding that under Georgia law "pharmaceutical companies have a duty to warn only the physicians who will be prescribing the drug to their patients because the physicians are the ones with the expert medical knowledge regarding the safety and proper use of a particular drug"); *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1321 (N.D. Ga. 2002). "As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers[.]

9

Pharmaceutical companies then are required to warn *only the prescribing physician*." *Singleton v. Airco, Inc.*, 314 S.E.2d 680, 682 (Ga. Ct. App. 1984) (ellipses omitted and emphasis added).

The learned-intermediary doctrine requires a manufacturer to warn only the physician, not the patient, because health-care professionals best appreciate the relative advantages and disadvantages, as well as significance of those benefits and risks, of prescription-based therapy. The Fifth Circuit in *Reyes v. Wyeth Laboratories* explained this policy as follows: "As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of the patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative." 498 F.2d 1264, 1276 (5th Cir. 1974); *see also Hill v. Searle Labs.*, 884 F.2d 1064, 1070 (8th Cir. 1989) ("[S]everal arguments support[] the application of this exception to prescription drug products. First, medical ethics and practice dictate that the doctor must be an intervening and independent party between patient and drug manufacturer. Second, the [risk] information . . . is often too technical for a patient to make a reasonable choice."); *Hawkins v. Richardson-Merrell, Inc.*, 249 S.E.2d 286, 288 (Ga. Ct. App. 1978) ("We agree with the sound reasoning of the Fifth Circuit Court of Appeals in *Reyes*[.]").

In its summary judgment ruling, this Court held that, when it comes to cases involving chemotherapy medications, causation turns on whether "patient choice . . . would have steered the conversation and the ultimate prescribing decision." (Rec. Doc. 7571, at 20.)  The Court did not rely on controlling authority from the Fifth Circuit, and other district courts have rejected the argument that a patient's decision should be the focus of the causation analysis. *See, e.g.*, *Carnes v. Eli Lilly & Co.*, No. 13-591, 2013 WL 6622915, at *5 (D.S.C. Dec. 16, 2013) (granting summary judgment under South Carolina's learned-intermediary doctrine and rejecting "Plaintiffs['] attempt

10

to shift focus to the patient's decision to take the prescription drug, despite the learned intermediary doctrine, which requires the court to focus on the physician's decision to prescribe the drug" ).

An interlocutory appeal would allow the Fifth Circuit to provide guidance on whether the learned-intermediary doctrine applies differently in the chemotherapy context and whether a jury should be permitted to find causation based on evidence that a plaintiff may have subjectively chosen a different medication, even if her physician would not have changed his or her prescribing decision.  In light of the countervailing case law cited above, the governing causation standard is one about which reasonable jurists can debate.  Substantial grounds thus exist for difference of opinion on this issue.

### C. An Interlocutory Appeal Will Materially Advance This Litigation

An interlocutory appeal will materially advance a matter where it "would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed." *APCC Servs.*, 297 F. Supp. 2d at 100; *see also Johnston v. Multidata Sys. Int'l Corp.*, No. 06-313, 2007 WL 3998804, at *1 (S.D. Tex. Nov. 14, 2007) (granting motions to certify for interlocutory appeal because of "vastly expensive discovery and litigation phases" that were on the horizon, "fairness to the parties," and avoidance of "unnecessary delay and expense"). "Review under § 1292(b) is available where [the] decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal."  *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970).

The materiality analysis is even more straightforward in the context of an MDL trial because such trials are expected to help establish the legal ground rules for many cases and enable the parties to better evaluate their exposure and liability.  *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) (Bellwether trials are designed "to achieve [a] value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the

universe of claimants[.]"). Courts across the nation thus recognize that certifying legal issues that arise in an MDL can materially advance the litigation. *See, e.g.*, *In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992); *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, No. 11-md-2226, 2015 WL 4385926, at *2 (E.D. Ky. July 14, 2015).[5]

The Fifth Circuit has taken a practical approach to analyzing whether an immediate appeal will materially advance the litigation. For example, the Fifth Circuit has accepted interlocutory appeals where a significant number of litigants will be impacted by the appeal's resolution. In *Katrina Canal Breaches*, the trial court certified a Louisiana insurance-law question to the Fifth Circuit for an immediate interlocutory appeal. 613 F.3d at 507. The Circuit accepted the appeal and, in turn, certified the state-law question to the Louisiana Supreme Court because the legal question was case dispositive and affected thousands of homeowners who suffered losses after Hurricane Katrina. *Id.*; *see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (leave to appeal granted because, among other things, "determination was likely to have precedential value for a large number of other suits").

Ms. Earnest's case is the first scheduled to be tried among more than 11,400 cases in this MDL. Clarity for the Court and the parties on the causation standard will impact a significant

---

[5] *See also Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 94 (2d Cir. 2004) (interlocutory appeal in MDL case); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-CV-20000, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018) (certifying question for interlocutory appeal where parties would otherwise have to "present to multiple juries in separate bellwether trials issues that would not be in play" if the court of appeals disagreed with the district court's analysis); *In re Sugar Antitrust Litig.*, 588 F.2d 1270, 1271 (9th Cir. 1978) (merits decision in certified appeal relating to "a massive multidistrict treble damage antitrust litigation involving several hundred plaintiffs").

12

number of cases in this MDL.[6]  An appeal will clarify the cases subject to summary judgment on causation grounds, the Court will be able to apply the correct standard for the learned-intermediary doctrine at trial, and the parties will have an opportunity to present evidence that is tailored to the governing law.  Conversely, if this legal question is not certified for interlocutory review, there is the possibility that massive time and expense could be consumed proceeding against Sanofi, only to have the Fifth Circuit eventually reverse the learned-intermediary ruling.  Therefore, allowing the Fifth Circuit to review this Court's order now would materially advance this litigation and avoid potential waste of enormous time and resources.

This Court should certify its July 9, 2019 Order and the controlling legal issue presented above for interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

## II. THE *EARNEST* TRIAL SHOULD BE BRIEFLY ADJOURNED PENDING APPEAL

Ms. Earnest's case is the first case scheduled to be tried in the MDL, beginning on September 16, 2019.  Entering an order for limited adjournment of the *Earnest* trial pending the Fifth Circuit's decision on this interlocutory appeal will serve the interests of judicial economy because the causation analysis under the learned-intermediary doctrine is not limited to Ms. Earnest's case.  Rather, the doctrine will apply to each plaintiff asserting a failure-to-warn claim under Louisiana or Georgia law and the law of other jurisdictions that have the same or similar doctrine.  Given the potentially dispositive impact of the learned intermediary and causation analysis in the *Earnest* and *Mills* cases and thousands of others, deferring trial pending appellate direction will allow the Court, the jury, and the parties to save the time and resources that are required to try a legally and factually complex case such as this one.  As other courts have recognized, this tremendous expense is a real concern and weighs in favor of such a limited

---

[6] More than 1,000 cases in MDL 2740 have been brought by residents of Georgia or Louisiana, with approximately 500 filed by residents of each state.

continuance of these proceedings. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002).

In addition, Plaintiffs have indicated that they intend to take an appeal from the Court's July 9, 2019 order as to the statute-of-limitations issues. The fact that Plaintiffs plan to appeal from the same order provides a further basis for the requested continuance of the proceedings. It would be efficient for the learned-intermediary issues to be taken up together with the Plaintiffs' statute-of-limitations appeal since the Fifth Circuit's review of those questions will also potentially impact the trial standards and evidence.

As such, if this Court grants the present motion for certification for interlocutory appeal, Sanofi respectfully requests that the Court grant a limited adjournment of the *Earnest* trial until the Fifth Circuit makes a determination on whether to accept an interlocutory appeal and, if accepted, pending the Fifth Circuit's decision on the certified question.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Sanofi's motion pursuant to 28 U.S.C. § 1292(b) to certify for interlocutory appeal the Court's July 9, 2019 Order on the issue of whether the learned-intermediary doctrine applies in the context of chemotherapy, and should briefly adjourn the *Earnest* trial pending a certification decision by the Fifth Circuit and its resolution of the interlocutory appeal.

Date: July 30, 2019

        Respectfully submitted,

        */s/ Douglas J. Moore*
        Douglas J. Moore (Bar No. 27706)
        **IRWIN FRITCHIE URQUHART & MOORE LLC**
        400 Poydras Street, Suite 2700
        New Orleans, LA 70130
        Telephone: 504-310-2100
        Facsimile: 504-310-2120
        dmoore@irwinllc.com


        Harley Ratliff
        Adrienne L. Byard
        **SHOOK, HARDY & BACON L.L.P.**
        2555 Grand Boulevard
        Kansas City, Missouri 64108
        Telephone: 816-474-6550
        Facsimile: 816-421-5547
        hratliff@shb.com
        abyard@shb.com

        ***Counsel for sanofi-aventis U.S. LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

        */s/ Douglas J. Moore*