# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| **This document relates to:** Barbara Earnest, 16-17144 | ) ) | |

## ORDER AND REASONS

Before the Court is the Sanofi Defendants' Motion to Exclude Expert Testimony of Dr. Linda Bosserman (Doc. 6130). The Court heard oral argument on May 22, 2019. For the following reasons, the Motion is **GRANTED IN PART**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

The first bellwether trial of Plaintiff, Barbara Earnest, is set to begin September 16, 2019. At trial, Plaintiff intends to introduce the expert testimony of Dr. Linda Bosserman. Dr. Bosserman is a board-certified

---

[1] Docetaxel is the generic version of Taxotere.

specialist in internal medicine and oncology.[2] She has worked with hundreds if not thousands of newly diagnosed breast cancer patients.[3] The Sanofi Defendants have filed the instant Motion seeking to exclude Dr. Bosserman's opinion on how the medical community's informed consent standards apply to the facts of Earnest's case.[4]

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.[5]

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*[6] and *Kumho Tire Co. v. Carmichael*.[7]

---

[2] Doc. 6608 at 1.
[3] *See id.*
[4] Defendants' Motion addresses Dr. Bosserman's testimony with respect to two other Plaintiffs in addition to Barbara Earnest. These are Plaintiffs Antoinette Durden and Tanya Francis. Plaintiff Durden was removed from the trial pool, and Plaintiff Francis's case was dismissed on summary judgment. Accordingly, to the extent Defendants' Motion addresses these Plaintiffs, their Motion is moot.
[5] Fed. R. Evid. 702.
[6] 509 U.S. 579 (1993).
[7] 526 U.S. 137 (1999).

The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the requisite qualifications.[8] After defining the permissible scope of the expert's testimony, a court next assesses whether the opinions are reliable and relevant.[9] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[10]

First, to assess reliability, a court assesses whether the reasoning or methodology underlying the expert's testimony is valid.[11] The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[12] Courts should exclude testimony based merely on subjective belief or unsupported speculation.[13] Courts must, however, give proper deference to the traditional adversary system and the role of the jury within that system.[14] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[15] After assessing reliability, a court assesses relevance.[16] In doing so, a court must determine whether the expert's reasoning or

---

[8] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[9] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010). *See also* Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881–82 (5th Cir. 2013).
[10] *Wellogix*, 716 F.3d at 881.
[11] *See Daubert*, 509 U.S. at 592–93.
[12] *See* Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).
[13] *See Daubert*, 509 U.S. at 590.
[14] *See id.* at 596.
[15] *Id.*
[16] Burst v. Shell Oil Co., 120 F. Supp. 3d 547, 551 (E.D. La. June 9, 2015).

methodology "fits" the facts of the case and will thereby assist the trier of fact in understanding the evidence.[17]

## LAW AND ANALYSIS

At the outset, Defendants raise no objection to Dr. Bosserman's qualifications or credentials nor to her testimony regarding diagnoses or treatment options. Sanofi has no objection to Dr. Bosserman opining on Earnest's diagnosis and what it means, for example, when a cancer has the presence or absence of certain "receptors." The only opinion at issue is Dr. Bosserman's case-specific informed consent opinion. Defendants argue that this opinion would not be helpful to the jury.

Defendants' argument is grounded in the learned intermediary doctrine, which provides that a manufacturer has no duty to warn a plaintiff but instead only a duty to warn the treating physician. Defendants assert that the learned intermediary doctrine turns on the testimony of a plaintiff's prescribing physician, not the testimony of a retained expert speculating about the decision-making process. Defendants argue that the jury must "hear it from the horse's mouth"—from the prescribing physician and the patient. Based on such testimony, the jury can make inferences about whether an inadequate label caused Plaintiff's injury or whether she would have taken Taxotere regardless of whether Defendants warned of the risk of permanent hair loss associated with the drug. In response, Plaintiff avers that Dr. Bosserman's opinions provide insight on how a reasonable physician should have navigated the decision-making process with her patient. Plaintiff argues that under the learned intermediary doctrine, subjective or objective evidence is appropriate.

---

[17] *Id.*

Because Plaintiff's treating physician, Dr. James Carinder, is available to testify, Dr. Bosserman will not be allowed to opine on the facts of Earnest's case. Dr. Carinder can testify about how he would have responded to an adequate warning from Defendants.[18] Dr. Bosserman, therefore, can testify about the guidelines from the National Comprehensive Cancer Network and what they require, and she can testify about the standard of care for physicians for informing patients through the decision-making process; she cannot, however, testify about the application of these principles to Earnest's case.

Defendants also argue that Dr. Bosserman cherry-picks the facts that support her opinion and ignores those that do not, making her opinion unreliable. Defendants rely on *Konrick v. Exxon Mobil Corporation*,[19] and the Court finds this reliance misplaced. In *Konrick*, the court held that the experts mischaracterized the studies they cited.[20] Defendants make no showing that Dr. Bosserman mischaracterizes the contents of her sources the way the experts did in *Konrick*.

Defendants raise one argument that is comparable to *Konrick*. They aver that Dr. Bosserman ignored reports of permanent alopecia associated with non-Taxotere regimens. Dr. Bosserman testified, however, that she reviewed articles comparing hair loss associated with different chemotherapy drugs. She indicated that her report focused on Taxotere while other experts will focus on non-Taxotere chemotherapy regimens. Thus, she did not purport to be an expert on non-Taxotere chemotherapy regimens. She did not mischaracterize any materials as in *Konrick* but instead admitted the reasonably limited scope

---

[18] The Court makes no finding as to the admissibility of this evidence in a case where the treating physician is unavailable.
[19] 2016 WL 439361 (E.D. La. Feb. 4, 2016).
[20] *See id.* at *7, *13.

5

of her expertise. Therefore, the Court rejects the notion that she ignored the findings of permanent alopecia associated with non-Taxotere regimens.

Lastly, Defendants argue that two categories of Dr. Bosserman's opinions do not fit the facts of the case. First, Defendants aver that in forming certain opinions, Dr. Bosserman relied on "online predictive tools" that estimate the benefits of different chemotherapy treatments. Defendants argue that certain versions of these tools—specifically, "PredictUK 2.0" and "ONCOassist"—are irrelevant as they were not available at the time Plaintiff underwent chemotherapy and could not have played a role in the decision for Plaintiff Earnest.

In her report, Dr. Bosserman generally discusses the benefit of using online tools in the creation of a treatment plan. Such general testimony is permissible, although for reasons discussed herein, Dr. Bosserman will not be permitted to testify about the use of these tools in connection with Earnest's case. On cross-examination, Defendants will have the opportunity to clarify that PredictUK 2.0 and ONCOassist were not available in 2011, and Defendants can illuminate any limitations associated with using online predictive tools.

Second, Defendants take issue with Dr. Bosserman's opinion on the use of cold caps to prevent hair loss. Defendants aver that Dr. Bosserman relies on a 2018 study to make this point and Plaintiff underwent treatment years before 2018. This argument falls flat. Dr. Bosserman is permitted to rely on information produced after the date of Plaintiff's treatment. The publication date of an article says little about the reliability or relevance of the content within it. The Court will permit Dr. Bosserman to offer general testimony on

cooling caps, and on cross-examination, Defendants can highlight that the FDA did not approve cooling caps until 2017.

## **CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Sanofi Defendants' Motion to Exclude Expert Testimony of Dr. Linda Bosserman (Doc. 6130) is **GRANTED IN PART.**

New Orleans, Louisiana this 5th day of August, 2019.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE