UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                  MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**
Barbara Earnest, Case No. 2:16-cv-17144.

**SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 5 TO PRECLUDE TESTIMONY AND EVIDENCE REGARDING "STEM CELL" STAINING**

Evidence regarding Plaintiff's stem cell staining is relevant and admissible for two reasons. First, such evidence is relevant to show Plaintiff's inability to establish the existence of a mechanism of action in this case—the scientific process by which Taxotere purportedly causes permanent alopecia. The fact that the results of such staining did not support Plaintiff's sole mechanism of action theory therefore tends to make this fact at issue *less* probable and, therefore, admissible. *See* Fed. R. Evid. 401.

Second, stem cell staining evidence is also relevant to impeach the credibility of Plaintiff's specific causation experts because neither considered, explained, nor disclosed the unfavorable results from the stem cell staining in their expert reports or at deposition. Plaintiff's expert's failure to consider results that did not support their theory renders their opinions less credible, and the jury must be permitted to assess the expert's credibility. *See* Fed. R. Evid. 702; *see also See Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1069 (5th Cir. 1993). For these reasons, the Court should deny Plaintiff's motion.

      **A.**      **Stem Cell Staining Evidence is Relevant to Showing the Lack of Any Reliable Mechanism of Action.**

1

Several of Plaintiff's experts have opined or testified that they believe the mechanism of action by which Taxotere causes permanent hair loss is through damaged stem cells in the bulge region of the hair follicle.[1] To test this theory, Plaintiff's counsel funded an effort to conduct stem cell staining on Plaintiff's scalp biopsies. *See* Thompson Dep. Vol. III at 467:15–468:1, **Ex. A**. Although the results ultimately did not support this theory, that fact does not render the results irrelevant and inadmissible. *See id.* at 492:7–12. To the contrary, the stains represent Plaintiff's only attempt to prove their sole theory regarding the mechanism by which Taxotere allegedly causes permanent alopecia. The fact that the results did not support Plaintiff's lone theory therefore tends to make a fact at issue in this case *less* probable, and therefore admissible under Federal Rule of Evidence 401.[2]

### B. Stem Cell Staining Evidence is Relevant to the Credibility of Plaintiff's Specific Causation Experts.

---

[1] *See, e.g.*, Tosti Report at 11 ("The precise anatomical process [of permanent alopecia after chemotherapy] is not known; however, it is likely due to the destruction of the hair follicle or dermal papilla stem cells."), **Ex. B**; Tosti Dep. Vol. I 27:10–17 ("It's not been established, but we've–there is a way we think [chemotherapy drugs cause persistent alopecia], okay? And what we think is that the stem cells . . . may be damaged by the chemotherapy. That's what, for instance, the researcher in the field of hair suggests."), **Ex. C**; Tosti Dep. Vol. III 544:16–19 ("I still believe that stem cells are a part of this problem"), **Ex. D**; Thompson Dep. Vol. III 402: 5–12, 404:2–10 (Dr. Thompson hypothesized in a paper that the "theoretical mechanism of action for why a chemotherapy drug would result in ongoing hair loss after the completion of chemotherapy is that there would be some toxicity of the drug that would harm the follicular stem cell."), **Ex. A**; Feigal Dep. Vol. I 148:1–149:1, 149: 10–24, 150:7–12, 219:21–220:7, **Ex. E**.

[2] In fact, Sanofi's experts have opined that the pathology of the slides tested for stem cells indicates that there are follicle stem cells present and proliferating on Plaintiff's scalp, which does not support a finding of permanent alopecia. Shapiro Supplemental Report at 4 (The stain results are "inconsistent with the hypothetical biological mechanism of action referenced by Dr. Tosti" and "does not support a finding and description of permanent alopecia after chemotherapy for [Plaintiff].") **Ex. F**; Smart Supplemental Report at 6 ("[B]ecause the stem cells are present, [Plaintiff does] not have permanent hair loss."), **Ex. G**.

Stem cell staining evidence is also relevant to attack the credibility of Plaintiff's experts.[3] *See Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1069 (5th Cir. 1993) ("Where . . . the district court has not excluded expert evidence as inadmissible, it ordinarily is the province of the jury to gauge the expert witnesses credibility and the reliability of his data."); *U.S. v. Harper*, 450 F.2d 1032, 1037 (5th Cir. 1971) ("it is the jury's function to assess the credibility of the expert witnesses and the weight to be given to their testimony"). Despite testing Plaintiff's scalp biopsies for stem cells before issuing their reports in this case, neither Dr. Thompson nor Dr. Tosti weighed or considered the results of such staining when forming their opinions. *See generally* Exhibit D to Tosti's Report, Materials Considered, **Ex. H**; Thompson Report at 9, **Ex. I**. Indeed, neither expert disclosed in their Rule 26 reports, or at deposition, that such stem cell staining even took place. *See* Thompson Report, **Ex. I**; Thompson Dep. Vol. III 498:10–23, 425:22–426:1, 446:12–447:1, **Ex. A**; Tosti Report, **Ex. B**; Tosti Dep. Vol. III 534:23–25, 539:22–540:1, 540:18–20, **Ex. D**. Failing to consider or disclose contrary results is not a reliable expert witness methodology. *See Burst v. Shell Oil Co.*, No. 14-109, 2015 WL 3755953, at *10 (E.D. La. June 16, 2015). Thus, evidence that Drs. Thompson and Tosti failed to weigh and disclose the results of such stem cell staining is relevant and admissible for the purpose of permitting the jury to assess their credibility. *See Takersley v. Harvey*, No. 13-cv-4019, 2015 WL 12567256, at *3 (N.D. Tex. Oct. 20, 2015) (permitting the admission of evidence that an expert's methodology did not meet industry standards because it was relevant to the expert's credibility).

C.     **Stem Cell Staining Evidence is Reliable and Admissible.**

---

[3]   *See also* Sanofi Motions to Exclude Expert Testimony on Specific Causation and Supplement on the same. *See* Docs. Rec. 6162, 7317, 7612.

Plaintiff's arguments that stem cell stains are unreliable, and thus inadmissible, are without merit.  It was *Plaintiff's* dermatopathology expert Dr. Thompson who selected the specific Ki-67 and Cytokeratin 15 stains used on Plaintiff's biopsies.  Thompson Dep. Vol. III 401:12–13, 434:5–8, **Ex. A**.  And, Dr. Thompson testified that he and his colleagues had to specially validate the stains in his lab to ensure they "work[ed] as purported to." Thompson Dep. Vol. III 486:4–17, 467:21–468:1 ("you have to take them and do assessment of them in your own laboratory before you put it on any tissue[.]"), 433:13–434:8 ("you have to prove in your own lab with internal controls that it's as billed that it's doing what it's saying."), **Ex. A**.  Dr. Thompson also specifically testified that he chose Cytokeratin 15 because "it works" and it is "all we have" to assess stem cell damage in the hair follicle.  Thompson Dep. Vol. III 434:5–8, 452:6–9, **Ex. A**.

Moreover, both Drs. Thompson and Tosti admitted that negative stains would support the theory that chemotherapy damaged Plaintiffs' stem cells and is causing their persistent alopecia. Thompson Dep. Vol. III 400:16–401:7, **Ex. A**.  Positive stains necessarily contradict Plaintiffs' theory.  The stains tested positive.  Thompson Dep. Vol. III 492: 7–12 ("Q: You wrote because it tested positive you did not pursue this further, right? A. Yes. Q. If it tested negative, would've you pursued it further? A. Yes."), **Ex. A**; Tosti Dep. Vol. III Errata Sheet ("[M]y understanding of how the staining is proposed to work; it is to stain positive for stem cells."), **Ex. J**.  The stains are therefore reliable and admissible to (1) establish that the results did *not* support Plaintiff's theory and (2) assesse witness credibility.  For all these reasons, the Court should deny Plaintiff's Motion *in Limine* No. 5 and permit evidence and argument at trial regarding Plaintiff's failed attempt to prove a mechanism of action through stem cell staining.

Date: August 6, 2019

          Respectfully submitted,

          /s/ *Douglas J. Moore*
          Douglas J. Moore (Bar No. 27706)
          **IRWIN FRITCHIE URQUHART & MOORE LLC**
          400 Poydras Street, Suite 2700
          New Orleans, LA 70130
          Telephone: 504-310-2100
          Facsimile: 504-310-2120
          dmoore@irwinllc.com

          Harley V. Ratliff
          Adrienne L. Byard
          Kelly Bieri
          **SHOOK, HARDY& BACON L.L.P.**
          2555 Grand Boulevard
          Kansas City, Missouri 64108
          Telephone: 816-474-6550
          Facsimile: 816-421-5547
          hratliff@shb.com
          abyard@shb.com
          kbieri@shb.com

          *Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on **August 6, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

          /s/ *Douglas J. Moore*
          Douglas J. Moore