# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE: VIOXX PRODUCTS         *   MDL DOCKET NO. 1657
LIABILITY LITIGATION          *
                              *
                              *
THIS DOCUMENT RELATES TO      *   SEPTEMBER 21, 2006, 8:45 A.M.
                              *
                              *
ROBERT G. SMITH V. MERCK      *   CASE NO. 05-CV-4379-L
  & CO., INC.                 *
* * * * * * * * * * * * * * * *
```

VOLUME X
JURY TRIAL BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
FOR THE PLAINTIFF:        WATTS LAW FIRM
                          BY:  MIKAL WATTS, ESQ.
                          TOWER II BUILDING, 14TH FLOOR
                          555 NORTH CARANCAHUA STREET
                          CORPUS CHRISTI, TEXAS 78478

FOR THE PLAINTIFF:        WILLIAMS BAILEY LAW FIRM
                          BY:  JOHN T. BOUNDAS, ESQ.
                               STEVEN J. KHERKHER, ESQ.
                          8441 GULF FREEWAY, SUITE 600
                          HOUSTON, TEXAS  77017

FOR THE DEFENDANT:        BARTLIT BECK HERMAN
                            PALENCHAR & SCOTT
                          BY:  PHILIP S. BECK, ESQ.
                               ANDREW L. GOLDMAN, ESQ.
                               CARRIE A. JABLONSKI, ESQ.
                          54 W. HUBBARD STREET, SUITE 300
                          CHICAGO, ILLINOIS 60601
```

DAILY COPY

Page 2505

1   MR. WATTS: YES
2   MR. GOLDMAN: JUDGE, WE OBJECT ON RELEVANCE GROUNDS
3   AFTER WITHDRAWAL. JUST OBJECT ON RELEVANCE GROUNDS AND 403
4   MR. WATTS: SLICING AND --
5   THE COURT: WAIT JUST A MINUTE. I OVERRULE THE
6   OBJECTION AND I'LL ALLOW IT.
7   BY MR. WATTS:
8   Q. INSIDE OF MERCK -- AGAIN, THERE'S A LOT OF FUNNY E-MAILS
9   OVERALL, THIS IS REALLY GOOD. "DINNER IS DEFINITELY IN ORDER.
10  WE'LL HAVE SLICED AND GRILLED GRAHAM." WHICH YOU RESPOND,
11  "REALLY GOOD. I MUST BE CRAZY TO SAY YES." IS THAT RIGHT?
12  A. THAT IS WHAT I WROTE.
13  MR. WATTS: DR. REICIN, I'M OUT OF TIME. THANK YOU
14  VERY MUCH. IT'S GOOD TO MEET YOU.
15  MR. GOLDMAN: YOUR HONOR, CAN WE APPROACH? I ALSO
16  NEED A MINUTE TO SET UP, BUT I CAN BE READY IN A MINUTE.
17  THE COURT: OKAY.
18  (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT
19  THE BENCH.)
20  MR. BECK: YOUR HONOR, IN LIGHT OF THE
21  CROSS-EXAMINATION OF DR. REICIN, WE ASK THAT WE BE ALLOWED TO
22  ASK HER WHETHER SHE TOOK VIOXX FOR PERSONAL USE. WE THINK IT
23  IS RELEVANT TO HER CREDIBILITY. THERE'S BEEN A DIRECT ATTACK
24  ON HER CREDIBILITY. IN FACT, MOST OF IT HAS BEEN AN ATTACK ON
25  CREDIBILITY. SO WE ASK TO BE ALLOWED TO ASK HER IF SHE TOOK

Page 2506

1   VIOXX.
2   MR. WATTS: JUDGE, NUMBER 1, YOU RULED ON THIS IN
3   PRETRIAL, AND WE WILL RELY UPON THAT RULING. NUMBER 2, WE DID
4   NOT COME CLOSE TO APPROACHING THIS ISSUE.
5   MR. BECK: I DIDN'T SAY --
6   MR. WATTS: THE FATHER AND THE FACT SHE DOESN'T TAKE
7   ASPIRIN, WE APPROACHED THE BENCH AND STAYED AWAY FROM IT.
8   MR. BECK: I DIDN'T ARGUE. HE OPENED THE DOOR. I
9   SAID HE ATTACKED THE CREDIBILITY, AND THE REASON I'M
10  APPROACHING NOW IS BECAUSE YOU DID RULE ON IT BEFORE, AND
11  THAT'S WHAT THE MOTION IN LIMINE IS. I CAN'T RAISE IT UNLESS I
12  ASK.
13  MR. WATTS: MY CROSS IS NOW OVER, NUMBER 1, AND I DID
14  CROSS IN A CERTAIN WAY SO IT WOULD NOT COME UP. NUMBER 2, IT
15  SHOULDN'T BE ALLOWED TO COME UP FOR THE FIRST TIME NOW BECAUSE
16  IT PREJUDICES ME AND THE WAY -- I HAVE COMPLETED CROSS ON THIS
17  IF I HAD KNOWN ABOUT IT --
18  MR. BECK: JUDGE, WE HAVE BEEN TALKING ABOUT IT SINCE
19  BEFORE THE CASE, AND THE MOTION IN LIMINE SAYS WE CAN'T RAISE
20  IT UNLESS WE COME UP. YOUR HONOR SAID THAT'S A CREDIBILITY
21  ISSUE AND I HAVE TO WAIT UNTIL AFTER THE CROSS. THIS IS AFTER
22  THE CROSS.
23  MR. WATTS: THE CROSS DIDN'T COME CLOSE TO IT.
24  THE COURT: I UNDERSTAND THE ISSUE. I'LL ALLOW A
25  COUPLE QUESTIONS ON THAT.

Page 2507

1   MR. WATTS: DO I GET TO CROSS-EXAMINE HER ABOUT IT?
2   THE COURT: NO. THAT'S IT.
3   (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD IN
4   OPEN COURT.)
5   THE COURT: RECROSS ON ONE ISSUE, AND I WOULD LIKE IT
6   TO BE DONE IN A QUESTION OR TWO.
7   MR. GOLDMAN: YES. REDIRECT.
8   THE COURT: I'M SORRY. REDIRECT.
9           REDIRECT EXAMINATION
10  BY MR. GOLDMAN:
11  Q. DR. REICIN, DID YOU USE VIOXX YOURSELF?
12  A. YES, I DID; OFTEN FOR PROLONGED PERIODS OF TIME.
13  Q. DR. REICIN, I WANT TO START OFF TOWARD THE END OF
14  MR. WATTS' EXAMINATION ON THIS WITHDRAWAL AND THE ESMB ISSUE.
15  CAN YOU EXPLAIN HOW THE WITHDRAWAL HAPPENED AND WHAT, IF ANY,
16  RELEVANCE THE ESMB AND THE FDA COMMUNICATIONS HAD TO THAT?
17  A. WELL, THE FDA COMMUNICATION HAD NO RELEVANCE. AS YOU
18  COULD SEE THIS MORNING, I DIDN'T EVEN REMEMBER THAT REQUEST
19  FROM THEM. BASICALLY WHAT HAPPENED IS THE ESMB MET. THEY SAW
20  THAT THERE WAS AN INCREASED RISK OF CARDIOVASCULAR EVENTS ON
21  VIOXX COMPARED WITH PLACEBO IN THE APPROVE STUDY BEGINNING
22  AFTER 18 MONTHS. IT'S MY UNDERSTANDING THEY REACHED OUT TO THE
23  ADMINISTRATIVE COMMITTEE, WHICH IS LIKE THE STEERING COMMITTEE
24  THAT OVERSEES THE STUDY. THEY SHARED THE DATA WITH THEM. THEY
25  RECOMMENDED THAT THE STUDY BE PREMATURELY TERMINATED. THE ESMB

Page 2508

1   AGREED WITH THAT RECOMMENDATION AND CONTACTED THE MEDICAL
2   MONITOR AT MERCK, KEVIN CORGAN (PH.) AND TOLD HIM ABOUT THE
3   DATA AND THEIR RECOMMENDATION.
4   Q. DR. REICIN, I'M GOING TO TRY TO NOW TOUCH ON SOME OF THE
5   TOPICS THAT MR. WATTS TOUCHED ON. THE FIRST WAS ABOUT THE
6   VICTOR MEETING THAT WAS HELD IN 2005. DO YOU REMEMBER THAT?
7   A. YES, I DO.
8   Q. HE ASKED YOU ABOUT WHETHER THERE WAS A VOTE CONCERNING THE
9   POTENTIAL CARDIOVASCULAR RISKS ASSOCIATED WITH VIOXX AND
10  CELEBREX. DO YOU REMEMBER THAT?
11  A. I BELIEVE HE ASKED ABOUT VIOXX, BUT IT WAS A VOTE ON
12  CELEBREX, AS WELL.
13  Q. WHAT WAS THAT VOTE?
14  A. I CAN'T REMEMBER WHAT THE EXACT NUMBERS WERE, BUT THE
15  MAJORITY VOTED THAT CELEBREX WAS ALSO ASSOCIATED WITH AN
16  INCREASED RISK BASED ON THE DATA PRESENTED.
17  Q. DID THE ADVISORY COMMITTEE IN 2005 AFTER VIOXX HAD ALREADY
18  BEEN WITHDRAWN VOTE ON WHETHER THE BENEFITS OUTWEIGHED THE
19  RISKS FOR VIOXX?
20  A. YES, THEY DID.
21  Q. WHAT DID THE MAJORITY SAY?
22  A. THE MAJORITY SAID THE BENEFITS DID OUTWEIGH THE RISKS. I
23  CAN'T REMEMBER EXACTLY WHAT THE EXACT WORDS OF THAT QUESTION
24  WERE.
25  Q. YOU WERE ASKED QUESTIONS ABOUT THE FACT THAT VIOXX HAS

52 (Pages 2505 to 2508)

DAILY COPY