**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Barbara Earnest, Case No. 2:16-cv-17144.

**SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 9**
**TO EXCLUDE EVIDENCE OF UNRELATED MEDICAL CONDITIONS, FAMILIAL**
**MEDICAL HISTORY OF CANCER, AND UNRELATED MEDICATION USAGE**

Plaintiff's motion to exclude evidence regarding Plaintiff's "unrelated" medical conditions,

family history of cancer, and medication use should be denied as vague and premature.  Indeed, a

blanket exclusion of all evidence Plaintiff deems to fall within the scope of this undefined motion,

absent necessary context, is premature and would result in unfair prejudice to Sanofi.  For these

reasons, Plaintiff's Motion should be denied or, at minimum, reserved for ruling at trial when its

admissibility can be fully considered in light of the purpose for which it is offered.

A.     **Evidence of Plaintiff's Medical History and Use of Medication is Relevant and**
       **Probative to Issues in This Case.**

Evidence of Plaintiff's medical history and her use of medications is highly relevant to the

facts at issue in this case.  *See* Fed. R. Evid. 401.  First, Plaintiff's medical conditions and her use

of medications is relevant to causation, which Plaintiff must prove to prevail on her claim.  *See*

*Jacobsen v. Wyeth, LLC*, No. 10-cv-0823, 2012 WL 3575293, at *5–6 (E.D. La. August 20, 2012)

(to establish liability under the Louisiana Products Liability Act, the Plaintiff must prove . . . "that

the plaintiff's damages were proximately caused by a characteristic of the product[.]"); *Seaman v.*

*Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008), *aff'd* 326 F. App'x 721 (5th Cir.

2009) ("the plaintiff must present admissible expert testimony to establish general causation as

1

well as specific causation . . .   Specific causation is whether a substance caused a particular individual's injury.") (citations omitted); *Burst v. Shell Oil Co*, No. 14-cv-109, 2015 WL 3755953, at *1 (E.D. La. 2015) ("[P]laintiff must show . . . specific causation—that defendants' products caused" the alleged injury).

Plaintiff's consulting dermatologist, Dr. Cole Claiborne testified (1) that "about ninety-something percent" of women "will have hair loss issues during their lifetime", and (2) that alopecia has many potential causes and contributors, including age, postmenopausal status, iron deficiencies, vitamin deficiencies, liver disease, kidney disease, hormonal issues, anemias, thyroid problems, certain hair care practices, drugs and medications, stress, surgery, and weight.  Claiborne Dep. 38:6–13; 52:1–53:20, **Ex. A**.  Plaintiff's expert dermatologist and dermatopathologist, Drs. Anotenlla Tosti and Curtis Thompson, also testified that different medical conditions and medications can cause alopecia.  *See, e.g.*, Tosti Dep. Vol. I 173:8–11 ("[t]here are two, you know, there are two main peak for androgenetic alopecia. One main peak is after first pregnancy . . . And the other one is after menopause,"), 229:20–23 ("Q. And drugs that have androgenetic effects include tamoxifen and aromatase inhibitors, right? [objection]   A. Definitely aromatase inhibitor."), 234:2–4 ("I agree iron deficiency cause telogen effluvium."), **Ex. B**; Thompson Dep. Vol. I 55:18–21 ("Q. Because age is a significant risk factor for hair loss? A. And people are living longer, and longer, and longer. Yes."), 59:10–18 ("Q. So there's many different forms of alopecia, correct? A. Yes. Q. And there's many different causes of alopecia? A. Yes. Q. And the cause of alopecia can be multifactorial, right? A. Yes."), 64:24–65:17 (admitting risk factors for alopecia include the patient's medical history, family history of hair loss, illnesses, eating habits, medications, and endocrine abnormalities), **Ex. C**.

Sanofi's experts have opined that Plaintiff suffers from many factors in her medical history that cannot be ruled out in causing her hair loss. *See, e.g.*, Fonseca Report at 9–10 ("[Plaintiff] has many factors in her medical history that that cannot be ruled out in causing her hair loss from an endocrinology perspective. These include, but are not limited to, morbid obesity, possible insulin resistance related to her obesity, metabolic syndrome, postmenopausal status, and having fatty liver syndrome."), **Ex. D**; Shapiro Report at 1, 3–4 (opining that Plaintiff's use of "Arimidex likely has caused or contributed to her hair loss"), **Ex. E**; Shapiro Dep. 99:9–19 ("If there's some kind of metabolic disturbance or a medication or some deficiency in anything, malnutrition, whatever, These things can make the hair come out.") **Ex. F**; Smart Report at 2–3 ("There are many forms of alopecia and many causes of alopecia."), 7–8 ("Ms. Earnest has many risk factors for alopecia, including health conditions, age, being postmenopausal, medications, vitamin deficiencies, and use of Aromatase Inhibitors."), **Ex. G**.

Second, Plaintiff's medical conditions are relevant to the prescribing decisions in this case. *See, e.g.*, Carinder Dep. 75:23–76:14, 69:15–19 (testifying that certain health conditions, such as "horrible diabetes," are factors he considers when coming up with a treatment plan for his patients, and that the time he treated Plaintiff, he "gravitated more toward using docetaxel" because of the reduced risk of neuropathy), **Ex. H**; Miletello Report at 5–6 ("Women who are obese, pre-diabetic, diabetic, or have heart issues should not be given Taxol-containing regimens because they put them at risk of neuropathy and cardiac toxicity."), **Ex. I**; Glaspy Report at 43–44 (opining that "Dr. Carinder made an appropriate decision in recommending docetaxel over paclitaxel for Ms. Earnest" because Ms. Earnest was at a "higher risk of developing permanent neuropathy" due to her "previous history with shingles, and a significant family history of diabetes[.]"), **Ex. J**.

Given that alopecia has so many potential causes, evidence concerning alternate causes of Plaintiff's alleged injury—medical conditions and use of medication, in part—thus bear directly on causation. And, because a patient's medical conditions are relevant to the treatment decisions made in her case, Plaintiff's medical conditions and medication usage are relevant to key issues in this case. Because of the high probative value of evidence relating to Plaintiff's medical conditions and use of medication, it does not meet the standard for exclusion excluded under Rule 403.

**B.      Plaintiff's Family History of Cancer is Relevant and Probative to the Issues in this Case.**

Similarly, evidence regarding Plaintiff's family history of cancer is relevant to notice, her awareness of the risks associated with the disease and different treatments, and her willingness to accept certain risks to treat the disease. *See* Earnest Dep. Vol. I 109:22–110:4 (Plaintiff's mother was diagnosed with either ovarian or uterine cancer), **Ex. K**; Bosserman Dep. Vol. II 383:6–11 ("I certainly have seen patients like this at age 60 with a family history . . . that feel very strongly about their worry about getting a second breast cancer[.]"), 387:10–25 (Dr. Bosserman always takes a family history when she sees a patient for breast cancer, because, for patients with family history "there may be a risk of a second breast cancer or ovary cancer or other cancers."), **Ex. L**; *see also Rideau v. Lafayette Health Ventures, Inc.*, 2019 WL 2849528, at *3 (W.D. La. July 1, 2019) (denying motion to exclude Plaintiff's family history of breast cancer because it was relevant to the plaintiff's decisions in a Family and Medical Leave Act case). Plaintiff's family history of breast cancer is therefore relevant to notice, Plaintiff's awareness of the risks associated with cancer and cancer treatment, and her willingness to accept certain risks to treat the disease.

**C.**     **Plaintiff's Motion Should be Denied or Reserved for Ruling at Trial Because it is Premature and Seeks to Exclude an Undefined Scope of Evidence.**

Plaintiff's motion for a blanket exclusion of evidence that she deems is "unrelated" to the

case is improper and should be denied as premature and because it lacks the factual specificity and

context required for the Sanofi and the Court to make a reliable determination.  Plaintiff's Motion

should therefore be denied or, at minimum, reserved for ruling at trial when its admissibility can

be fully considered in light of the purpose for which it is offered.

Date: August 6, 2019

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

5

## CERTIFICATE OF SERVICE

I hereby certify that on **August 6, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore