**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                      SECTION "H" (5)

THIS DOCUMENT RELATES TO
Barbara Earnest, Case No. 2:16-cv-17144

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' FIRST OMNIBUS**
**MOTIONS *IN LIMINE* (NOS. 1-14)**

Local rules and custom contemplate that parties will meet and confer to narrow disputes.

That practice is especially critical for motions *in limine*, as oftentimes the disagreements are at the

margins. And so it is here. Many of Sanofi's motions *in limine* are objectionable because of their

sweeping nature. A meet and confer could have narrowed the issues, but Sanofi refused to meet

despite multiple requests by Plaintiff. As a result, Plaintiff has been forced to respond to the

arguments in full despite knowing that many of these disputes could have been narrowed or

altogether resolved. Plaintiff respectfully requests that the Court remind Sanofi of its obligation to

act in good faith and attempt resolution on issues such as this without having to waste judicial

resources.

1.      **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR**
        **ARGUMENT CONCERNING THE PURPORTED MORAL OR ETHICAL**
        **DUTIES OF PHARMACEUTICAL DRUG MANUFACTURERS**

Sanofi requests that this Court exclude testimony by Plaintiff's experts regarding duties

imposed not by law, but by "subjective perspectives on morality or business ethics," which Sanofi

characterizes as impermissible judgments by Plaintiff's experts regarding "moral or ethical

duties." First and foremost, Sanofi's motion is vague and fails to provide even one example of this

alleged improper testimony proffered by a single one of Plaintiff's experts. The testimony cited by

1

Sanofi does not contain opinions regarding moral and ethical duties, and Plaintiff's experts do not intend to testify about an ethical or moral duty *per se*. Instead, they will offer their professional opinions about typical customs and practices within the pharmaceutical industry, which they are aptly qualified to do. This is by no means a subjective inquiry, but rather an informed observation about what should be considered the applicable standard of care in this case, and Plaintiff's experts should not be prevented from offering opinions in this regard.

## A.    ARGUMENT

Plaintiff's experts do not intend to offer opinions about Sanofi's "moral and ethical" duties to consumers. Rather, Plaintiff's experts will opine as to industry standards guiding and dictating the pharmaceutical industry, including the basis for those industry standards. Sanofi's vague motion fails to identify how this type of testimony could be construed as "moral and ethical" or otherwise objectionable particularly given that qualified experts are routinely permitted to opine as to applicable industry standards. *See In re Xarelto (Rivaroxaban) Prod. Liab. Litig.,* No. MDL 2592, 2017 WL 1352860, at *2-3 (E.D. La. Apr. 13, 2017); *see also In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings,* No. 14 C 1748, 2017 WL 1836443, at *15 (N.D. Ill. May 8, 2017); *In re: Tylenol (Acetaminophen) Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2:12-CV-07263, 2016 WL 4039329, at *5 (E.D. Pa. July 28, 2016); *In re Actos (Pioglitazone) Prod. Liab. Litig.*, No. 12-CV-00064, 2014 WL 120973, at *11-12 (W.D. La. Jan. 10, 2014). The lack of any specificity in this regard leave Plaintiff guessing as to the basis of Sanofi's motion. However, with that said, the absence of any specific testimony also casts doubt on Sanofi's allegations, and in fact supports that Plaintiff's experts do not stray beyond the traditionally permissible bounds of expert testimony.

It is clear that the opinions of Plaintiff's experts speak to Sanofi's duty to create a safe product and their breach of that duty, as well as Sanofi's failure to create an adequate warning

label for Taxotere, *none of which* constitute improper personal opinions regarding the moral and/or ethical duties of a pharmaceutical drug company, like Sanofi. By means of example, since Sanofi neglected to discuss any of Plaintiff's experts specifically, Dr. David Kessler, as former FDA Commissioner, is more than qualified to opine on drug regulations and prevailing industry standards, which will inform jurors about the pharmaceutical industry and Sanofi's obligations, while bearing on the reasonableness of Taxotere's labeling. Likewise, Laura Plunkett's opinions are wholly appropriate, as they are objective assessments of Sanofi's behavior in light of industry standards. Lastly, Dr. Feigal is certainly qualified to testify as to industry standards and expectations in the clinical trial process and in the communication of safety risks to doctors and patients. This testimony proffered by Plaintiff's experts is critical because it establishes that Sanofi did not act in accordance with applicable industry safety practices to create a product that was reasonably safe in its labeling.

In addition, Sanofi argues that Rule 403 counsels against admission of evidence concerning prevailing industry standards. Such evidence, however, is highly probative, and the suggestion that pharmaceutical companies should not be accountable for standard industry practices is nothing short of remarkable. This evidence is by no means unfairly prejudicial. Plaintiff's experts are presenting informed opinions, and the presentation of such expert testimony will not confuse the issues or mislead the jury. In fact, this testimony does not contain any concepts that Sanofi does not already plan to counter with their own evidence. This expert testimony will clarify Plaintiff's arguments and assist the jury in understanding the case. The fact that it may take time to cover these issues does not mean that the time will be wasted, because this evidence is relevant to and highly probative of Plaintiff's claims.

### B.    CONCLUSION

For these reasons, Sanofi's motion should be denied. Not only is it vague, but it is baseless. Plaintiff's experts will offer their professional opinions about the pharmaceutical industry, which is by no means a subjective inquiry, but rather an informed observation about what should be considered the applicable standard of care. Therefore, Plaintiff's experts should not be prevented from offering opinions in this regard.

## 2.    PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PURPORTED LEGAL DUTIES AND CONCLUSIONS

Sanofi's motion is lacks specificity such that it is virtually impossible for Plaintiff to meaningfully respond. Notwithstanding, Sanofi's motion fails on the merits by masquerading under the guise of yet another improper *Daubert* motion. As Plaintiff explained in her Opposition to Sanofi's Omnibus Motion to Preclude Improper Expert Testimony, qualified experts are allowed to offer testimony on FDA regulations, as well as the relevant duty of care under state law. Sanofi should not be allowed to conflate the issues by painting a picture with the Court that allowing such testimony, *albeit the fact that it does not constitute improper legal conclusions*, will somehow usurp the Court's role in explaining the law to the jury.

### A.    ARGUMENT

Notwithstanding the vague nature of Sanofi's motion, which calls into question the veracity of the argument, Sanofi should not be allowed a second bite at the apple by filing yet another improper *Daubert* motion along these same lines. As enumerated by Plaintiff in her Opposition to Sanofi's Motion to Preclude Improper Expert Testimony (Rec. Doc. 7464), which is incorporated herein as if restated in full, Sanofi confuses the issue by conflating two schemes at play in these cases: (1) the federal regulatory framework governing manufacture, marketing, and sale of

prescription drugs in this country; and (2) the state tort law governing the cases, which the jury will be instructed on before deciding whether Sanofi failed to adequately warn prescribing physicians. Contrary to Sanofi's arguments, courts allow a qualified expert to offer testimony on FDA regulations, including whether a party complied with such regulations, as well as the relevant duty of care under state law. *See In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016) ("expert testimony regarding Bayer's compliance with FDA regulations therefore will not usurp the Court's role in explaining the law to the jury, but will assist the jury in determining whether Bayer acted as a reasonably prudent pharmaceutical manufacturer") (internal quotations omitted) (*citing Wells*, 2013 WL 7208221, at *1); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 09-md-02100, 2011 WL 6302287, at *25 (S.D. Ill. Dec. 16, 2011); *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 191 (S.D.N.Y. July 27, 2009)); *see also In re Bard IVC Filters*, 2017 WL 6523833, at *8 (expert permitted to offer opinions concerning the FDA regulatory process and drug-maker's compliance).

It is clear that none of the opinions of Plaintiff's experts constitute improper legal conclusions. By means of example, since Sanofi neglected to discuss any of Plaintiff's experts, Dr. David Kessler, as former FDA Commissioner, is more than qualified and able to testify as to the state law duty of care for pharmaceutical manufacturers, and in fact, other Courts expressly agree. *See In re Yasmin*, 2011 WL 6302287, at *14 ("[Dr. Kessler's] past experience qualifies him to testify about a drug company's duty of care under state law."); *In re Actos Prods. Liab. Litig.*, MDL No. 6:11-md-2299, 2014 WL 120973 at *12 (W.D. La. Jan. 10, 2014) (finding Dr. Kessler's conclusions implicating the state tort law to be an appropriate "application of the facts, as he believes them to be, to the law as he understands it and as will be instructed by the [c]ourt."). As for Dr. Feigal, she is certainly qualified to testify as to industry standards and expectations

regarding the communication of safety risks to doctors and patients, and she made clear that she intends to offer no opinions as to whether Sanofi did or did not meet FDA requirements. (Plf. Opp. Mot. Exclude Improper Expert Testimony, Rec. Doc. 7464 at 13-14.)

In addition, Sanofi argues that Rule 403 counsels against admission of evidence concerning any legal duty Sanofi allegedly owed to prescribing oncologists. Such evidence, however, is highly probative, and the suggestion that pharmaceutical companies should not be accountable for complying with FDA regulations and adhering to standard industry practices is nothing short of remarkable. This evidence is by no means unfairly prejudicial. Plaintiff's experts are presenting informed opinions, the presentation of which will not confuse the issues or mislead the jury. In fact, this testimony does not contain any concepts that Sanofi does not already plan to counter with its own evidence. Such expert testimony will clarify Plaintiff's arguments and assist the jury in understanding the case, and the fact that it may take time to cover these issues does not mean that time will be wasted, because this evidence is relevant to and probative of Plaintiff's claims.

## B.    CONCLUSION

For these reasons, Sanofi's motion should be denied. Not only is it vague, but it is without merit. Clearly, Plaintiff's experts offer no opinions constituting improper legal conclusions. Rather, they intend to offer testimony on FDA regulations, including whether Sanofi complied with such regulations, as well as the relevant duty of care under state law, all of which are within the appropriate confines of expert testimony.

## 3.    PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING OTHER LAWSUITS, OR INVESTIGATIONS AGAINST DEFENDANTS AND/OR OTHER SANOFI ENTITIES

Sanofi seeks to exclude any evidence of other lawsuits or investigations involving Sanofi and its products, without limitation.  Apart from the False Claims Act suit brought in the Eastern

District of Pennsylvania and the thousands of plaintiffs in this MDL and related state court actions, Sanofi does not identify which specific evidence of which specific lawsuits, claims and/or investigations that it seeks to exclude.   Plaintiff therefore opposes such a blanket exclusion. Evidence of other lawsuits and investigations against Sanofi is relevant to the present litigation as it goes directly to the issue of Sanofi's notice that its product is unreasonable dangerous because of an inadequate warning.

### A.   ARGUMENT

Evidence of other lawsuits and investigations is relevant, indeed crucial, to Plaintiff's claim that Sanofi provided an inadequate warning after it had knowledge that Taxotere causes permanent hair loss. *See* La. R.S. 9:2800.57(C).   That Sanofi knew or should have known that Taxotere causes permanent hair loss through other claims, but failed to warn of that risk, is highly probative to a fact at issue in this case – whether Sanofi was on notice of a hazard associated with its product. (*See also*, discussion of Adverse Event Reports, *infra*).   It should be noted that, when offered for purposes of notice, hearsay is not an issue, as the evidence of other claims and/or investigations is not being offered for the truth of the matter asserted, but rather to demonstrate what Sanofi was aware of an issue with its product.   *See Sears, Roebuck & Co. v. Kunze*, 996 S.W.2d 416, 427 (Tex. App. 1999).

Additionally, should Sanofi open the door through argument or presentation of evidence pertaining to other claims, lawsuits, and/or investigations, Plaintiff should not be hamstrung in her response to such argument or evidence by any blanket *in limine* order.   Plaintiff can foresee at least two circumstances under which Sanofi could make such evidence relevant.   First, if Sanofi presents evidence or argument that no persons other than Plaintiff have been affected by permanent hair loss as a result of using Taxotere, then Plaintiff should be free to introduce evidence of the thousands of similar complaints that have been brought alleging similar claims.   Second, should

7

Sanofi introduce evidence of fees paid to experts testifying on behalf of Plaintiff, suggesting that they are exorbitant for a single claim, Plaintiff should be permitted to introduce evidence that the experts' testimony was developed for the benefit of thousands of similarly situated individuals. Additionally, such evidence may be offered for impeachment purposes should Sanofi's witnesses suggest that they were not aware of any complaints of permanent hair loss involving Taxotere.

Plaintiff submits that a blanket *in limine* ruling barring any evidence of other lawsuits, claims or investigations is both overbroad and premature. *See A.K.W. by and through Stewart v. Riddell, Inc.*, 2012 WL 13018753, at *1 (S.D. Miss. Oct. 1, 2012). Unless and until the Court can evaluate the circumstances under which such evidence is offered, and/or the particular evidence that Plaintiff seeks to introduce, any blanket attempt to exclude any and all such evidence is inappropriate. Faced with a substantially similar motion *in limine* to exclude evidence regarding other incidents, claims, and lawsuits, the *Stewart* court denied the motion without prejudice as premature, allowing the defendant to re-urge the motion after the plaintiff had been given the opportunity to lay the foundation for specific evidence of other incidents, claims and lawsuits during the trial. *See Stewart*, 2012 WL 13018753, at *1.

Alternatively, if the Court grants Sanofi's motion *in limine,* Plaintiff requests that Sanofi be precluded from arguing or alleging the following themes: lawyer-driven litigation, litigation crisis, lawsuit crisis, lawsuit abuse. If Plaintiff is unable to use other lawsuit and investigations for purposes of notice, Sanofi should be disallowed from suggested at trial that the Taxotere litigation is lawyer-driven, fabricated, or exaggerated.

### B.    CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Motion *in Limine* No. 3, or alternatively, should the court exclude evidence of other lawsuits or investigations involving Sanofi and its products , Plaintiff respectfully request that Sanofi be precluded from

offering argument or evidence that the Taxotere litigation is lawyer-driven, fabricated, or exaggerated.

**4.      PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING LAWSUITS, INVESTIGATIONS, OR FORMAL COMPLAINTS AGAINST OTHER MANUFACTURERS OF DOCETAXEL**

Plaintiff has no intention to—and agrees not to—offer evidence or argument at trial concerning lawsuits, investigations, or formal complaints against other manufacturers of docetaxel. However, Plaintiff is concerned that such an *in limine* ruling, as written, may be overly broad, and could be construed to exclude highly pertinent evidence regarding adverse event reporting (AERs). AERs or other documentation of AEs that may relate to docetaxel, the bioequivalent of Taxotere, cannot and need not be segregated and excluded from the evidence considered by Plaintiff's experts on the issues of causation and notice.

First, as AERs relate purely to notice, they are relevant insofar as generic docetaxel provided essentially the same safety signal to Sanofi as its own brand-name product. This would include all reports of generic-related AEs that may happen to appear in the FDA's FAERs database or Sanofi's internal databases.

Second, case studies and AERs involving generic docetaxel are unquestionably probative evidence on the issue of causation. To the extent Plaintiff's general causation experts have relied on reports from the medical literature that happen to involve generic docetaxel, Sanofi may easily and effectively cross-examine the experts on those cases to the extent they are actually and appreciably distinguishable.

Barring *any* evidence of lawsuits, investigations, or formal complaints against other manufacturers of docetaxel, as proposed by Sanofi, could be construed to preclude admission of this highly probative evidence. Sanofi's overbroad motion on this topic makes offers no

countervailing reason why this type of evidence would be irrelevant or prejudicial and accordingly should be denied.

5.    **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ADVERSE EVENT REPORTS OR OTHER COMPLAINTS INVOLVING PATIENTS OTHER THAN PLAINTIFF**

Plaintiff is under no illusion that *individual* adverse event reports (AERs) are admissible at trial as evidence of causation, or otherwise for the truth of their contents—for instance, if a report claims that Taxotere caused that individual's permanent or irreversible alopecia.  However, "there are at least two ways the AERs may be introduced in this case: 1) through Plaintiff's experts and 2) not for their truth." *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 12717875, at *2 (D.Vt. Oct. 23, 2014).  To the extent Plaintiff's experts have relied in part on the body of collective adverse event reporting in reaching their opinions on causation or safety signaling, such reliance is completely permissible—indeed common—and not subject to a separate attack on grounds of hearsay or relevance under FRE 802 and 401, respectively.

Further, individual AERs are widely accepted as admissible evidence on the issue of a drug maker's notice of a safety issue so far as they predate her injury, a limitation to which Plaintiff intends to adhere at trial.  This very standard use of AERs has routinely survived Rule 403 challenges, as federal courts have found this type of evidence so highly probative on the issue of notice as to outweigh the potential for confusion or waste.  For these reasons, Sanofi's motion to exclude AERs should be denied.

A.    **ARGUMENT**

1.    ***Experts Are Permitted to Rest Their Opinions on Otherwise Inadmissible Facts or Data.***

As its motion relates to causation, Sanofi is essentially taking a second swing at excluding expert testimony that it does not want the jury to hear: that the collective weight of the AERs

corroborates the strong evidence for causation found in the clinical studies and medical literature. However, FRE 802 provides no basis for such exclusion.  Rule 703 provides that experts may rely on otherwise inadmissible facts or data so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  Fed.R.Evid. 703; *see Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *15 (N.D.Ill. Mar. 29, 2013) ("[E]xpert opinions that rely on AERs are admissible under Rule 703"); *Drake*, 2014 WL 12717875, at *2.

"Standing alone," these AERs "might not be permissible as evidence to make the causal link between the plaintiffs' injuries" and a pharmaceutical product.  *In re Levaquin Prod. Liab. Litig.*, No. 08-1943 JRT, 2010 WL 4676973, at *4 (D. Minn. Nov. 9, 2010).  "However, they are commonly used by experts in the field to determine causation in correlation with *other evidence*."  *Id.* (citing *In re Viagra Prod. Liab. Litig.*, 658 F.Supp.2d 950, 961–62 (D.Minn.2009)); *Drake*, 2014 WL 12717875, at *1 ("It may be inappropriate in some instances for a court to admit AERs as the sole evidence of causation.  However, AERs may be relevant corroborative evidence, particularly when there is other evidence of causation such as a peer-reviewed epidemiological study connecting the drug at issue and the plaintiff's alleged injury as is the case here.") (citing *In re Fosamax Products Liability Litig.*, 645 F. Supp. 2d 164, 184 (S.D.N.Y. 2009)); *Brown v. Johnson & Johnson*, No. CV 12-4929, 2015 WL 12834346, at *2 (E.D. Pa. Aug. 28, 2015) (AERs "are contributory evidence of causation that forms the basis of an expert opinion."); *Wolfe v. McNeil-PPC, Inc.*, No. CIV.A. 07-348, 2012 WL 38694, at *3 (E.D. Pa. Jan. 9, 2012) ("The Court reiterates its conclusion that, because plaintiff's experts did not solely rely on case reports in forming their opinions on causation but used them to supplement their extensive review of other evidence, such testimony is admissible.") (citation and quotations omitted).

Further, even if these AERs would be otherwise admissible, their existence may be disclosed to the jury at trial because "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed.R.Evid. 703. This is on account of "the accepted theory that a vast number of reports contribute to the plausibility of causation." *Drake*, 2014 WL 12717875, at *2 (citing *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 451 (E.D.N.Y. 2011) ("Dr. Marx does not cite un-reviewed AE reports for their truth, but rather for the accepted theory that a vast number of reports contributes to the plausibility of causation.")). Accordingly, the Court should reject Sanofi's objections to experts' use of AERs as but one factor supporting their opinions on general causation.

### 2.    *AERs Are Relevant and Admissible Non-Hearsay on the Issue of Notice*

Sanofi does not seem to contest that AERs generally constitute admissible non-hearsay on the issue of a drug maker's notice of a safety issue. Indeed, this use of AERs is well-recognized in the case law. *See In re Levaquin Prod. Liab. Litig.*, No. 08-1943 JRT, 2010 WL 4676973, at *4 (D. Minn. Nov. 9, 2010); *accord. Brown v. Johnson & Johnson*, No. CV 12-4929, 2015 WL 12834346, at *2 (E.D. Pa. Aug. 28, 2015); *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 12717875, at *3 (D. Vt. Oct. 23, 2014); *In re Depakote*, No. 14-CV-847-NJR-SCW, 2015 WL 4775937, at *3 (S.D. Ill. Feb. 20, 2015). Sanofi's objection rather is that the AERs that might be proffered by Plaintiff are either too dissimilar to be relevant or post-date her chemotherapy. However, Sanofi has not singled out any AERs as violative of Rule 401. Rather, Sanofi attempts to distract the Court with a veritable buffet of possible, non-Taxotere causes for those reported AEs (*See* Defs' Br. 17, Rec. Doc. 7655-3.) This strategy should be rejected not only (1) because it fails to identify any specific AERs or dissimilarities; but also (2) because it fully misses the point of notice evidence—what *actually* caused the reported AE in a Taxotere user is less important than

the fact that the AE was reported at all.  Absent concrete objections from Sanofi, the Court should reject this argument and deny its motion.

Likewise, Sanofi fails to show any attempt by Plaintiff to introduce individual AERs into evidence that arose after her chemotherapy.  Instead, Sanofi points only to the fact that Plaintiff's expert biostatistician, Dr. Madigan, included all available AERs in his various FAERS analyses.  However, Sanofi's objection to this is unclear as his analyses track the emergence of safety signals *on a timeline* that is easily applicable to Ms. Earnest's historical use of Taxotere.  (*See* Ex A., Madigan Rep. at 11-16.)  Again, Plaintiff's experts are afforded wide latitude to consider data that is otherwise not independently admissible.  *See* Fed. R. Evid. 703.  Should any of Plaintiff's experts attempt to offer at trial an *opinion* that is irrelevant to the facts of this case, Sanofi may certainly (and duly) object at that time.

Finally, notice evidence in the form of AERs pose little risk for confusion, waste, or prejudice under FRE 403.  "The risk of prejudice is low and the cure for any unwarranted potential suspicion of causation they might create is cross-examination and competing testimony rather than exclusion."  *Drake*, 2014 WL 12717875, at *3 (rejecting arguments that the AERS "could improperly create suspicion of causation without any medical proof").  Further, the "objections required to address AERs" that Sanofi may "contend[] are insufficiently similar will not unduly lengthen the trial."  *Id.*  Defendants' Rule 403 arguments are without merit.

**B.    CONCLUSION**

For these reasons, Sanofi's motion should be denied. Plaintiff's expert has properly relied on adverse event reporting in reaching their opinions on causation or safety signaling and individual AERs are widely accepted as admissible evidence on the issue of a drug maker's notice of a safety issue so far as they predate her injury.

6.     **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR
       ARGUMENT CONCERNING THE PRESENCE, ABSENCE, OR IDENTIFY OF
       DEFENDANT'S CORPORATE REPRESENTATIVE AT TRIAL**

Plaintiff does not object to this Motion *in Limine*, and only requests that the Court preclude

defense counsel from creating the impression that Sanofi is present at trial or otherwise improperly

vouching for Sanofi by stating that defense counsel is part of Sanofi or by implying the same by

using terms such as "we" or "us" when referring to Sanofi.

A.     **ARGUMENT**

For reasons similar to those articulated by Sanofi with respect to this Motion, it is irrelevant

whether defense counsel is part of Sanofi.  More importantly, it is inaccurate to suggest such and

is highly prejudicial in that it would create the false impression that Sanofi is in fact present during

trial or that defense counsel has personal knowledge of the facts.  The jury may also incorrectly

believe defense counsel is being sued, which may elicit unwarranted sympathy from the jurors.

Plaintiff's concerns are far from speculative.  During the oral arguments on Daubert

motions, counsel for Sanofi referred to Sanofi as "we" and Taxotere as "our drug" numerous times,

for example:

- "He has been our [Sanofi] corporate representative three times." Ex. B, Daubert Hr'g Tr. 12:04-09, July 25, 2019 (Rec. Doc. 7797).

- "He was a statistician at our company, Sanofi, for 15 years, a pharmacovigilance scientist, so he is dealing with safety data. *Id.* at 12:15-17.

- "That's the best we [Sanofi] knew, but we continued to count her.  We say she is ongoing into the follow-up period.  We count her." *Id.* at 15:08-10.

- "I wish we [Sanofi] would have known when we were working on TAX316 that this is how this data would be misconstrued. *Id.* at 15:19-20.

- "When you actually look at what the FDA said about our [Sanofi's] 2015 clinical overview, this is what they said: 'It is impossible to determine whether the permanence of alopecia was due to docetaxel.'" *Id.* at 76:21-77:1.

14

This type of improper vouching has been excluded in other litigations.  For example, this specific issue was recently addressed in *In Re: Xarelto Prods. Liab. Lit., Cooney v. Janssen Pharms., et. al.,* No. 2012 (Pa. Com. Pl. Phila. Cty.) (Sarmina, J.).  There, the court "barred" defense counsel from referring to defendants Bayer and Janssen as "we" or "us" after repeatedly doing so in prior trials.  *See* Ex. C, Order in *Cooney v. Janssen*).  Similarly, Chief Judge Sargus in the Southern District of Ohio considered this issue and explicitly recognized the danger of prejudice involved in allowing Defendant's counsel to refer to Defendant DuPoint using the terms "we" and "us." The court stated that this is "a pretty serious issue and oftentimes it leads to mistrials because you don't have an individual as a client" and that counsel should "avoid this at all costs." (Ex. D, Order in *Moody v. DuPont* at 75:20-77:0-4)

### B.    CONCLUSION

For these reasons, Plaintiff respectfully requests that if Plaintiff is to be precluded from making any reference to a lack of a corporate representative at the trial of this matter, then Sanofi must likewise be precluded from unfairly creating a false impression that defense counsel are themselves a corporate representative.

### 7.    PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' EXECUTIVE AND/OR EMPLOYEE COMPENSATION

Sanofi seeks to preclude all evidence and argument concerning its executive and/or employee compensation. Plaintiff does not necessarily disagree that in certain circumstances such evidence should not be presented at trial; however, it would be premature at this stage to exclude such evidence without the benefit of context at trial. For example, if Defendants are permitted to introduce evidence that their employees or employees' relatives use Taxotere in an effort to bolster their credibility in defending the product, then Plaintiff should be allowed to explore all other

reasons why the witness would be defending the product, including financial incentives enjoyed through that product promotion. As Plaintiff explained in her Motion *in Limine* No. 6,[1] which is incorporated herein as if restated in full, Sanofi cannot use its business practices as both a sword and a shield, so if such evidence is offered at trial, it would certainly open the door to Plaintiff's use of contrary evidence to demonstrate proof of bias in rebuttal

## A.    ARGUMENT

As the United States Supreme Court has stated, "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *U.S. v. Abel*, 469 U.S. 45, 52 (1984). "The partiality of a witness is subject to exploration at trial, and is always relevant to discrediting the witness and affecting the weight of his testimony." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Indeed, it is well-established that bias is one of the principal subjects for cross-examination. *See, e.g., Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984) ("[C]ross-examination concerning the partiality of a witness is always relevant."); *U.S. v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978) ("Because of the importance of evidence of bias or interest, inquiry into the area is never collateral."); *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) ("The motivation of a witness in testifying, including her possible self-interest and any bias or prejudice against the defendant, is one of the principal subjects for cross-examination.").

In fact, the Fifth Circuit has long-recognized that the employment of a witness by a party is relevant to the possible bias or interest of the witness. *See, e.g., Central Truck Lines, Inc., v. Lott*, 249 F.2d 722, 724 (5th Cir. 1957) ("The interest of a witness in the result of the suit may always be considered in passing on his credibility; and [t]he fact that a witness is an employee of

---

[1] *See* Plaintiff's Motion *in Limine* No. 6 to Preclude Testimony and Evidence regarding Other Individuals' Personal Use of Taxotere and Personal Experience with Cancer, Rec. Doc 7661.

one of the parties is a proper matter to be considered by the jury in passing upon his credibility."); *Arnall Mills v. Smallwood*, 68 F.2d 57, 59 (5th Cir. 1933) ("Employment or other relationship of a witness may be considered on the point of his credibility in weighing his against opposing evidence."). This would undoubtedly include evidence of the employee's compensation, because it is the fact of compensation that creates the bias or interest, and the amount of compensation that , in turn, impacts the degree of bias or interest. It is beyond dispute that Sanofi's employees have profited, some extensively, from Sanofi's sales of Taxotere, and certain employees may have compensation packages that include performance-based incentives implicitly designed to encourage prioritization of sales. As such, evidence of employee compensation is relevant and admissible to evaluate the veracity of the employee's testimony in order to explore potential bias and issues affecting credibility.

For these reasons, courts in other pharmaceutical cases have ruled that the admission of such evidence regarding employees' compensation is proper for this purpose. For example, in the *Vioxx* MDL, the ruling was reserved because the court noted that it may be relevant to explain the defendant's actions or inactions, or to show motive. *See* Ex. E, *In re: Vioxx Prods. Liab. Litig. (Barnett)*, MDL No. 1657, Order, at 9 ¶ 1 (E.D. La. June 28, 2006). Likewise, in the *Tylenol* MDL, the court deemed compensation evidence was admissible for both former and current employees because compensation can create bias or a conflict of interest. *See In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 294 (E.D. Pa. 2016).

Sanofi argues that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. Simply put, Sanofi is wrong. Sanofi's argument *entirely* ignores the probative value of this evidence, claiming that it is not relevant to any issue. As demonstrated

above, however, evidence of an employee-witness's compensation is clearly relevant to showing bias, interest, or motive – and courts across the country agree.

### B.   CONCLUSION

For these reasons, it would be premature at this stage for the court to preclude all evidence and argument concerning Sanofi's executives and employees' compensation. While Plaintiff does not necessarily disagree that in certain circumstances such evidence should not be presented at trial, if Sanofi is permitted to introduce evidence of its support for the product – for example, by means of touting personal use of Taxotere – then Plaintiff should certainly be permitted to offer evidence of the employees' compensation in rebuttal, as such information is clearly relevant to the employee-witnesses' credibility and bias.

### 8.   PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE COST OF TAXOTERE OR PRESCRIPTION DRUG PRICING GENERALLY

In principle, Plaintiff does not oppose exclusion of evidence or argument regarding the cost of prescriptions in general or Taxotere in particular.  However, Plaintiff is concerned that such an *in limine* ruling, as written, may be overly broad, and could be construed to exclude highly pertinent testimony regarding Sanofi's motivations and state of mind in making key decisions regarding the labeling of Taxotere.

Excluding *any* reference to the price of Taxotere could inadvertently result in the exclusion of relevant evidence regarding Sanofi's motives with respect to labeling of Taxotere.  An important consideration for the jury will be whether Sanofi's fear of competition from the cheaper generic Taxol influenced decisions with respect to providing adequate warnings regarding the risk of permanent hair loss.  While Plaintiff agrees that neither side should be allowed to inflame the jury with arguments about high prescription drug prices, or that Taxotere specifically is costly, the jury

should be able to consider how competition with cheaper alternative therapies may have influenced Sanofi's decisions with respect to the labeling of Taxotere.

Barring *any* evidence of the price of Taxotere, as proposed by Sanofi, could be construed to preclude admission of this highly probative evidence. Plaintiff does not object to the granting of this motion barring argument or evidence regarding the high price of prescription drugs in general or Taxotere specifically, provided Plaintiff is not barred from presentation of the specific issue of Sanofi's aim to compete with lesser priced generic alternatives and the potential impact of such competition on labeling decisions.

9.   **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE FINANCES OR EMPLOYMENT DECISIONS**

Sanofi's sweeping attempt to exclude evidence related to finances and employment decisions is unnecessarily broad. Sanofi's status as a large, multinational pharmaceutical corporation with significant industry expertise and resources—financial, human, and physical—is relevant because the evidence demonstrates the capability to improve the Taxotere label and provide the necessary information about Taxotere to the public, the FDA, and the medical community as well as Ms. Earnest and her treating physicians. Further, the balancing test mandated by Federal Rule of Evidence 403 weighs in favor of the admission of evidence related to the resources available to Sanofi. The probative value is considerable because the evidence demonstrates that Sanofi had the wherewithal to create a safer product. *See CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assoc.*, 411 B.R. 591, 604-605 (N.D. Ill. 2009) (testimony of size, wealth, revenues, profits, and resources of the defendants may be admitted to show reasonableness, but not to suggest "deep pockets.")*; see also Kammerer v. Wyeth*, 8:04CV196, 2012 WL 13033732, at *3 (D. Neb. Jan. 31, 2012) (evidence of profit margins is

germane to questions of reasonableness and claims of failure to warn even without a claim for punitive damages). The prejudicial effect is minimal considering that much of the information regarding Sanofi is publicly available and jurors are already aware that big companies often have extensive resources at their disposal.

Moreover, to the extent that Sanofi makes motive or resources an issue, then corporate finances and employment decisions would be proper material for rebuttal. *See also In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005) (finances and employment decisions are relevant for impeachment purposes when evidence of good motive is presented); *Okuda v. Wyeth*, No. 1:04-cv-90 DN, 2012 WL 12337860, at *3 (D. Utah July 24, 2012) (if the defendants argue financial inability to act, then evidence of wealth would be pertinent).

Finally, Plaintiff does not object to excluding argument or evidence of Sanofi's employment decisions so long as Sanofi is similarly precluded. In particular, Sanofi should not be allowed to introduce evidence or argument related to the termination of Sanofi sales representative, Ruth Avila, R.N. and her lawsuit against Sanofi.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion *in Limine* No. 9 with respect to corporate finances.

10.  **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING EXPERT OPINIONS THAT EXCEED THE SCOPE OF PLAINTIFF'S EXPERTS' RULE 26 EXPERT DISCLOSURES**

Sanofi moves pursuant to Rule 37(c)(1) to exclude experts' "opinions at trial which [sic] were not properly disclosed in their Rule 26 expert reports." (Defs' Br. 29, Rec. Doc. 7655-3.) This motion seeks only general relief without identifying to which opinions it pertains—*i.e.*, which undisclosed opinions will cause it to suffer prejudice at trial. Without conceding that Plaintiff's

experts have offered or will offer opinions undisclosed in their reports (they have not), Plaintiff respectfully submits that Sanofi's motion should be denied for the sole reason that it lacks any specificity or context that would allow the Court to apply Rule 37 and make a ruling.

## A.  ARGUMENT

Under Rule 37(c)(1), "opinions not properly disclosed [ . . .] may be excluded 'unless the failure was substantially justified or is harmless.'"  *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 432–33 (5th Cir. 2012).  In evaluating whether a new opinion is harmless, the Court must consider: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.'"  *Bailey v. Shell W. E & P, Inc.,* 609 F.3d 710, 729 (5th Cir.2010).  Where a movant fails to identify, as Sanofi does here, which opinion evidence the non-movant has failed to disclose and now offers in support of her claims, the movant's argument fails and its motion must be denied.  *Id.*

To the extent Sanofi attempts to justify its generalized motion with its "anticipation" of improper testimony at trial, it cites to instances where Plaintiff's experts' deposition testimony allegedly strayed from their Rule 26 reports.  However, these references offer nothing beyond the same misrepresentations made in Sanofi's *Daubert* briefings—for instance that Dr. Fiegal's report must contain the exact phrase "general causation" in order to disclose a general causation opinion, and that Dr. Tosti's report does not opine that Taxotere caused Ms. Earnest's permanent, chemotherapy-induced alopecia.  (Defs' Br. 29 n. 14; Rec. Doc. 7655-3) Plaintiff has addressed these untenable arguments in their general and specific causation *Daubert* oppositions, including why—even if the reports were somehow lacking—Sanofi's extensive questioning at deposition would render opinions outside of the four corners of the Rule 26 reports completely harmless.  (*See*

Pl's Opp. to Sanofi's General Causation Daubert Motion 4-5, Rec. Doc. #7513; Pl's Opp. to Sanofi's Specific Causation Daubert Motion 19-20, Rec. Doc. 7486).

### B.     CONCLUSION

Notwithstanding any of that, Sanofi's motion points to no evidence sought to be improperly introduced at trial, let alone any that would cause it prejudice, and for that reason alone it should be denied.

### 11.   PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE INTENT, MOTIVES, OR STATE OF MIND

Sanofi's motion to exclude all evidence and argument regarding Sanofi's intent, motives, and/or state of mind masquerades under the guise of yet another improper *Daubert* motion. As Plaintiff explained in their Opposition to Sanofi's Omnibus Motion to Preclude Improper Expert Testimony, experts cannot *speculate*; however, experts *can* offer testimony as to a party's knowledge, potential motivations, or state of mind *so long as it is supported factually in the record.* Thus, contrary to Sanofi's blanket assertions, Plaintiff's experts' testimony is within the confines of appropriate expert testimony, and their opinions should not be excluded as such.

### A.     ARGUMENT

Sanofi should not be allowed a second bite at the apple by filing yet <u>another</u> improper *Daubert* motion along these lines. As enumerated by Plaintiff in her Opposition to Sanofi's Omnibus Motion to Preclude Improper Expert Testimony,[2] which is incorporated herein as if restated in full, *and contrary to Sanofi's suggestion*, the Federal Rules of Evidence *do not* categorically preclude such testimony. Plaintiff's experts are free to testify regarding a party's knowledge, potential motivations, or state of mind so long as it is demonstrated in the record.

---

[2] *See* Plaintiff's Memorandum in Opposition to Sanofi's Omnibus Motion to Preclude Improper Expert Testimony, ECF No. 7464.

Contrary to Sanofi's assertion, Dr. David Kessler *is* able to testify regarding the business goals of Sanofi with respect to Taxotere – because such testimony in no way speculates definitively as to the party's motive. Indeed, in the widely-cited appellate opinion in *DePaepe v. General Motors Corp.*, the court ruled that while plaintiff's expert could not give opinion testimony that GM had a *particular* motive when it designed a vehicle part, "[h]e could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason)." 141 F.3d 715, 720 (7th Cir. 1998); *accord Neuharth v. NACCO Materials Handling Grp., Inc.*, No. CIV. 01-4034, 2002 WL 34700601, at *5 (D.S.D. Dec. 17, 2002) (expert may testify as to financial motivations but may not speculate as to motive). *DePaepe* makes clear that the expert can go as far as the evidence takes them.

Likewise, it is acceptable for Dr. Kessler to describe economic conditions in Sanofi's industry and explain market factors impacting its choices because such testimony "seeks to articulate why there existed economically rational, independent business reasons" for decisions made, which is easily distinguishable from characterizing defendant's mental state, attitude, or corporate intent. *In re: Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2016 WL 4385843, at *3 (E.D. Pa. Aug. 15, 2016); *see also Retractable Techs. Inc. v. Abbott Labs., Inc.*, 05-CV-157, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010) (allowing testimony on the sources of pressure on working capital, the effect of marketing decisions on sales, and other financial concerns, finding them to be "issues of sufficient complexity to warrant expert testimony") (*citing Bauman v. Centex Corp.*, 611 F.2d 1115, 1120–21 (5th Cir. 1980)).

Dr. Kessler's opinions on Sanofi's marketing do not speculate about the company's intent, but instead fairly describe its strategy, *as demonstrated in the factual record*, and even incorporate

and quote Sanofi itself on its stated goal: positioning "Taxotere as the cornerstone of therapy for breast, lung, prostate, ovarian, head/neck and gastric cancers." (Ex. F, Kessler Rep. ¶ 203.4) Elsewhere in his report, Dr. Kessler discusses factors surrounding Taxotere's marketing efforts, and he characterizes those efforts appropriately and accurately in the record: (1) "that Taxol / paclitaxel … was Taxotere's primary competitor, and that Taxol/paclitaxel would become generic in 2001"; and (2) that Sanofi's strategy in response was to use the "decreased economic incentive for the manufacturers of Taxol and generic paclitaxel" to "differentiat[e] Taxotere from Taxol/paclitaxel to increase market share and justify Taxotere's presumed higher price." This kind of testimony regarding a party's known strategy does not involve speculation; rather, it simply references to the record. (Ex. F, Kessler Rep. ¶¶ 203-205.)

In addition to lodging complaints about Dr. Kessler, Sanofi also complains that Dr. Feigal purports to offer testimony regarding legal conclusions; but as Plaintiff has made clear, Dr. Feigal will not testify regarding the case law on failure to warn at trial. But Dr. Feigal is certainly qualified to testify as to industry standards and expectations regarding the communication of safety risks to doctors and patients—all of which is relevant under Louisiana's learned intermediary doctrine.

Finally, Sanofi argues that Rule 403 counsels against admission of such evidence. Not only is such evidence highly probative, but it is by no means unfairly prejudicial nor will it confuse the jury or waste time. Rather, this expert testimony will clarify Plaintiff's arguments and prove helpful to the jury's understanding of the case. The fact that it may take time to cover these issues does not mean that the time will be wasted, because this evidence is relevant to and probative of Plaintiff's claims.

## B.     CONCLUSION

For these reasons, Sanofi's motion should be denied. Contrary to Sanofi's suggestion, the Federal Rules of Evidence *do not* categorically preclude such testimony. Instead, Plaintiff's experts are free to testify regarding a party's knowledge, potential motivations, or state of mind so long as it is demonstrated in the record, and Plaintiff's experts should not be prevented from offering opinions in this regard at trial.

## 12.     PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE INTEGRITY AGREEMENTS, GOVERNMENT INVESTIGATIONS OR SETTLEMENTS, OR ANY OTHER ALLEGED "BAD ACTS" UNRELATED TO TAXOTERE

Sanofi seeks to preclude all evidence and argument concerning its corporate integrity agreements, government investigations or settlements, and any other alleged "bad acts" unrelated to Taxotere. Plaintiff does not necessarily disagree that in certain circumstances such evidence should not be presented at trial; however, it would be premature to preclude the evidence now without the benefit of context at trial. For example, if Sanofi is permitted to introduce evidence of its "good" character (*i.e.,* charitable contributions, reputation, good acts such as claiming that it is "saving lives" by virtue of its products), then Plaintiff should be permitted to offer evidence of Defendant's "bad" character in rebuttal.

## A.     ARGUMENT

As Plaintiff explained in their Motion *in Limine* No. 1 to Preclude Evidence regarding Defendant Sanofi's Corporate Character and Good Acts,[3] Sanofi cannot use its business practices as both a sword and a shield. If evidence of its "good" character is offered at trial, it would certainly

---

[3] *See* Plaintiff's Motion *in Limine* No. 1 to Preclude Evidence regarding Defendant Sanofi's Corporate Character and Good Acts, ECF No. 7643.

open the door to Plaintiff's use of contrary evidence to show the jury the "bad acts." Simply put, the jury must be shown the other side of the coin.

Nothing about this evidence would be unfairly prejudicial to preclude presentation under Rule 403. Sanofi claims otherwise; however, such an argument completely ignores the fact that the evidence would be presented *only if* Sanofi touts its "good acts" to the jury. If Sanofi opens the door to such evidence, any prejudice caused by the presentation of contrary evidence in rebuttal would by no means be unfair.

In addition, Sanofi claims that the evidence should be precluded under Rule 404, which prohibits the presentation of evidence of a crime, wrong, or other act to prove a person's character in order to show the person acted in accordance with that character on the questioned occasion. Sanofi cites to *Vioxx* in support of its position that such evidence should be excluded under Rule 404; however, such reliance is misplaced. In *Vioxx*, the court did not preclude the evidence on that ground. Rather, that ground was merely suggested by Defendants, along with irrelevance and prejudice, as a potential basis for precluding the evidence. *See In re Vioxx Prods. Liab. Litig.*, 2005 WL 3164254, at *1 ¶16. (E.D. La. Nov. 21, 2005) Additionally, the court in *Vioxx* noted that the evidence could be presented if "it becomes an issue of cross-examination," which is consistent with Plaintiff's potential use of this evidence at trial. *Id.*

B.    **CONCLUSION**

For these reasons, it would be premature at this stage for the court to preclude all evidence and argument concerning Sanofi's corporate integrity agreements, government investigations or settlements, and any other alleged "bad acts" unrelated to Taxotere. If Sanofi is permitted to introduce evidence of its "good acts" as described above, then Plaintiff should certainly be permitted to offer evidence of Defendant's "bad acts" in rebuttal to show the jury the other side of the coin.

13.   **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING SPECIFIC LITIGATION CONDUCT**

Sanofi seeks to preclude evidence or argument concerning specific litigation conduct on an array of different topics, spanning from the voluntary designation of their own internal documents as "confidential" to settlement negotiations between the parties. While Plaintiff finds no issue with Sanofi's request pertaining to settlement negotiations (as such is aligned with a similar motion *in limine* filed by Plaintiff), Plaintiff takes issue with the remaining requests for the reasons detailed below.

A.   **ARGUMENT**

1.   ***Designation of Documents and Testimony as "Confidential"***

Sanofi argues that the designation of documents or testimony as confidential, or any suggestion that such designations were improper or made to keep certain information secret, should be excluded. Sanofi chose to mark a huge number of its documents as being confidential and should have to live with that decision.  Sanofi should not be allowed to use its confidentiality designation as both a sword and a shield. If documents are produced during the course of the litigation by Sanofi and designated as "confidential," and not identified as privileged on an appropriate privilege log, then the documents should be disclosed in the same manner to the jury, including with the same confidentiality designations as stamped and produced by Sanofi.

If the documents are shown to the jury without the confidentiality designations as stamped, the jury would be led to believe that all of the documents displayed and presented during the trial are publicly available, and thus there was no "hiding the ball" by Sanofi in terms of the information and risks presented to doctors and the public. Such an adverse inference would be troublesome for a multitude of reasons, including Plaintiff's failure-to-warn claims. If Sanofi desires for all documents and testimony to be perceived by the jury to be non-confidential, then Sanofi is free to

de-designate all documents and testimony as non-confidential so that such a perception is in fact a reality. This would mean that Plaintiff would be free to disseminate the documents and testimony freely in the public sphere without concerns of violating the agreement with counsel to keep documents and testimony designated as confidential as, just that, *confidential*. Otherwise, the documents designated as "confidential" should be displayed as is to the jury in order to avoid incorrect assumptions and negative inferences to the detriment of Plaintiff's claims at issue.

### 2. *Evidence or Argument about Sanofi's Document Production & Parties' Motions, Sanofi's Objections, or Court Rulings*

Sanofi's motion is so vague and non-specific that Plaintiff cannot meaningfully respond. The motion fails to identify any specific examples of the type of evidence or argument it alleges would be improper regarding Sanofi's document production or the parties' motions, objections, or rulings.

Notwithstanding the vagueness of Sanofi's motion, Plaintiff agrees that in certain circumstances some such evidence should not be presented at trial; however, Plaintiff disagrees with Sanofi's request to the extent that it usurps the Court's express power to *sua sponte* address previously filed motions and rulings with the jury. *See Shea v. Bonutti Research, Inc.*, 2013 U.S. Dist. LEXIS 76102 (S.D. Ohio May 30, 2013). For example, the Court may determine that it is necessary to inform the jury of certain rulings to properly instruct the jury from the outset of the trial of its role in making certain determinations. The Court in *Shea* stated that it would not "hamstring itself" with such a ruling *in limine*. *Id*. at *6. Likewise, this Court should not "hamstring itself" by limiting what could be relevant, probative, and instructive pre-trial motions and rulings. Therefore, it would be premature at this stage to exclude such evidence.

### 3. Settlement Negotiations

As for Sanofi's request to preclude evidence of settlement negotiations, Plaintiff agrees. In fact, such a request is aligned with Plaintiff's Motion *in Limine* No. 8, wherein Plaintiff requested that the Court preclude any comments, references, testimony, or evidence regarding settlement negotiations, or any conduct or statements made in reference or during settlement negotiations." [4] Therefore, Plaintiff has no objection to the preclusion of such evidence and testimony at trial in this regard.

### B.   CONCLUSION

For these reasons, it would be improper for the Court to preclude all evidence and argument regarding the voluntary designation by Sanofi of its own documents as "confidential," that is unless Sanofi wishes to actually de-designate the confidentiality of its documents and testimony. Further, it would be premature at this stage for the Court to preclude all evidence and argument concerning Sanofi's document production and the parties' motions, objections, or court rulings, so as not to "hamstring itself" with such a ruling *in limine* in the event that the Court deems certain instructions to the jury necessary at trial.

### 14.   PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ALLEGED FRAUD ON THE FDA

Sanofi's motion is again vague and fails to identify any specific examples of the type of evidence Plaintiff may allegedly argue regarding Sanofi withholding information from, misleading, and/or committing fraud on the FDA, making it extremely difficult, if not impossible, for Plaintiff to meaningfully respond. Notwithstanding this, Sanofi's motion is without merit by misapplying a preemption standard to evidentiary issues and by failing to recognize that certain

---

[4] *See* Plaintiff's Motion *in Limine* No. 8 to Preclude Defense Counsel from Commenting On or Discussing Certain Matters in the Presence of the Jury or Potential Jurors, ECF No. 7648-1, at 2.

matters that may be considered fraudulent in nature are clearly relevant to and highly probative of Plaintiff's failure-to-warn claims.

### A.     ARGUMENT

Sanofi's motion fails to identify specific examples of the type "fraud on the FDA" evidence that Sanofi seeks to exclude, making it exceptionally difficult to respond absent "guessing" at the type of evidence Sanofi may find questionable. Moreover, Sanofi's claim that evidence regarding Sanofi's regulatory compliance would result in a preemption sideshow misses the point.  Plaintiff is not pursuing a fraud-on-the-FDA claim and therefore does not implicate the Supreme Court's decision in *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 343 (2001).  As the *Actos* court explained in addressing an almost identical argument raised by Takeda:

> Again, this Court notes, one must not lose sight of the actual clams made by Plaintiffs that will be pursued at trial. Plaintiffs will not be litigating a "fraud-on-the-FDA claim" as Defendants' argument implies. Thus, *Buckman* does not, by its own terms, apply to this case and Defendants' reliance upon it is misplaced. Moreover, additionally, even the Buckman Court acknowledged there are certain types of state law claims *based upon violations of the Federal Food, Drug, and Cosmetic Act* ("*FDCA* ") that are not preempted, and distinguished the surviving claims by noting that pre-empted claims were based entirely *on alleged violations* of FDCA disclosure requirements;[25] that is not the factual scenario at play in the instant case. In light of this distinction, *Buckman* does not govern, and, therefore, does not preclude any and all evidence of FDCA reporting violations, but in *Buckman* pre-empted *claims* based solely on those alleged violations. … Again, whether such evidence in the manner presented might or might not be otherwise admissible is not the inquiry now before the Court and is better reserved until trial, however, the evidence is *relevant* to the issues inherent within the "failure to adequately warn" claim made by Plaintiffs and not precluded *by law* as Defendants argue. Thus, Defendants' reliance on *Buckman,* is, in and of itself, misguided as to the actual legal question before the Court.

*In re Actos (Pioglitazone) Prod. Liab. Litig.*, No. 12-CV-00064, 2014 WL 120973, at *5 (W.D. La. Jan. 10, 2014) (original emphasis); *see also In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 14 C 1748, 2017 WL 1836443, at *7–8 (N.D. Ill. May 8, 2017) ("*Buckman* does not mean plaintiffs cannot bring state law claims based on conduct that violates the FDCA."); *In*

re: Tylenol (Acetaminophen) Mktg., Sales Practices, & Prod. Liab. Litig., No. 2436, 2016 WL 4039286, at *11 (E.D. Pa. July 28, 2016 ("Buckman preempts 'fraud on the FDA' claims, not evidence."); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 6301625, at *12 (S.D. Ill. Dec. 16, 2011) ("The Supreme Court made clear in *Wyeth* that federal law does not prevent judges and juries in failure to warn cases from considering a drug companies compliance with FDA regulations."). Tellingly, Sanofi omits this and other similar caselaw.

Sanofi's argument is also troublesome because it fails to recognize that certain matters that may be considered fraudulent in nature are entirely proper to present at trial. For example, it would be ill-conceived to blanketly assert that AEs not shared with the FDA should be excluded on that basis alone, especially when there are other reasons for presenting such evidence, most importantly being the *notice* on the part of the manufacturer—which is clearly relevant to Plaintiff's failure-to-warn claims.[5] Indeed, the requirements for a manufacturer, like Sanofi, to report AEs is an integral part of the FDA's ability to monitor the safety of pharmaceutical drugs. The FDA relies heavily upon post-marketing reports, such as AEs, to track safety issues and require label changes.

Similarly, pharmaceutical companies, like Sanofi, utilize AEs to provide "pharmacovigilance" signals of potential and actual reactions to marketed drugs, which could prompt further studies, testing, changes to warnings, and/or the ultimate withdrawal of the product from the market. Not only would Sanofi's reporting of AEs, or lack thereof, to the FDA be relevant, but it is entirely proper to use AEs to show that Sanofi had *notice* of adverse events of the type

---

[5] This type of evidence is also addressed in Sanofi's Motion *in Limine* No. 5 to Exclude Evidence Concerning Adverse Events Not Involving Plaintiff (Rec. Doc. 7655-3 at 13); in Sanofi's Motion *in Limine* No. 26 to Exclude Evidence Related to Third-Party Advocacy Groups (Rec. Doc. 7670) and in Sanofi's Motion *in Limine* No. 28 to Exclude Evidence or Argument Related to 2011 FDA Warning Letter and Related Communications (Rec. Doc. 7673). Plaintiff's opposition to these MILs, when reviewed together, demonstrate the relevancy of AEs in general as opposed to reviewing them piecemeal (or independently) as Sanofi has done.

suffered by Plaintiff – and, in fact, courts across the country in pharmaceutical cases agree. *See, e.g., In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, 956 F. Supp. 2d 809, 815 (N.D. Ohio 2013), *aff'd sub nom. Decker v. GE Healthcare Inc.*, 770 F.3d 378 (6th Cir. 2014); *In re Heparin Prods. Liab. Litig.*, 803 F. Supp. 2d 712, 726-27, 730, 745, 754 (N.D. Ohio 2011); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 817 F. Supp. 2d 535, 549 n.79 (E.D. Pa. 2011).

In addition, Sanofi argues that Rule 403 counsels against admission of any evidence or argument that Sanofi withheld information from the FDA on the basis that it would "mislead and confuse the jury on collateral issues, while unfairly prejudicing Sanofi." Such evidence, however, is highly probative, and the suggestion that pharmaceutical companies should not be accountable for complying with FDA regulations by properly reporting AEs is nothing short of remarkable. This evidence is by no means unfairly prejudicial, nor is it misleading or confusing. By not disclosing facts to the contrary, the jury is left with the impression that the manufacturer complied with FDA regulations and properly reported all AEs. This would certainly be misleading and confusing. The jury must be told the truth, especially when such evidence points to notice and is relevant to and probative of Plaintiff's failure-to-warn claims. The fact that it may take time to cover these issues does not mean that such evidence will be misleading or confusing, and it should not be excluded as such.

### B.   CONCLUSION

For these reasons, Sanofi's motion should be denied. Not only is it vague, but it is without merit. It would be premature at this point to blanketly preclude evidence falling under Sanofi's definition of "withholding information from the FDA," especially without the benefit of context at trial.

Dated: August 6, 2019

Respectfully submitted,

/s/ Darin L. Schanker
Darin L. Schanker
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
dschanker@coloradolaw.net

Counsel for Plaintiff, Barbara Earnest
Trial Counsel for the PSC

/s/ Rand P. Nolen
Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Trial Counsel for the PSC

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Plaintiffs' Co-Lead Counsel

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

Plaintiffs' Co-Lead Counsel

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN
DAVID MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

Plaintiffs' Co-Liaison Counsel

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

Plaintiffs' Co-Liaison Counsel

### PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT