UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Barbara Earnest, Case No. 2:16-cv-17144.

### SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 11 TO PRECLUDE TESTIMONY AND EVIDENCE REGARDING OTHER CHEMOTHERAPY MEDICATIONS OR MEDICAL CONDITIONS THAT PURPORTEDLY MAY CAUSE PERMANENT HAIR LOSS

Plaintiff seeks a blanket exclusion of any alternate causation evidence by improperly arguing that Sanofi must affirmatively prove—to a medical certainty—that something other than Taxotere caused Plaintiff's claimed permanent hair loss. This is one of many motions *in limine* filed by Plaintiff that seeks to exclude expert testimony and data upon which Sanofi's experts reasonably relied, without having properly filed *Daubert* challenges. Not being able to challenge Sanofi's experts on the well-defined standards applicable to the Court's gatekeeping function, Plaintiff would ask for evidence and testimony to be excluded on more nebulous grounds or as a matter of discretion. The Court should resist such an attempt.

Because it is Plaintiff who bears the burden to prove causation, evidence of other potential causes of her claimed permanent hair loss is undeniably relevant to the claims and defenses in this case. The Court should deny Plaintiff's request, which would impermissibly relieve Plaintiff of her burden of proof and hinder Sanofi's experts from disagreeing with Plaintiff's theory of causation in this case.

1

I.      **Plaintiff Improperly Seeks to Shift an Inapplicable Burden of Proof to Sanofi.**

Plaintiff bears the burden to prove causation in this case—that her alleged permanent alopecia was caused by Taxotere. *See Hebert v. Miles Pharm.*, No. 92-cv-4290, 1994 WL 10184, at *1 (E.D. La. Jan. 13, 1994) ("This being a products liability action against the manufacturer under Louisiana law, the plaintiff bears the burden of proving defendant['s] fault, if any, and that the defendant's product caused her injuries…."); *Wright v. Revco Indust. Inc.*, 228 F. Supp. 3d 749, 753 (W.D. La. 2017) (Under the Louisiana Products Liability Act "plaintiff has the burden of proving causation"). Plaintiff tries to avoid her burden and tie the defense's hands at trial by arguing that Sanofi cannot challenge Plaintiff's theory that Taxotere caused Plaintiff's claimed permanent hair loss. Specifically, Plaintiff contends Sanofi should not be permitted to introduce evidence of Plaintiff's other medications or medical conditions that cause permanent hair loss— on nothing more than say so and without accompanying expert challenges— because Sanofi does not establish that such conditions or medications caused her alleged permanent hair loss "to a reasonable degree of medical certainty." Pltf.'s Mem. at 1. Beyond that, Plaintiff fails to cite any authority for her novel position that Sanofi has the burden to prove Plaintiff's alleged injury *was not* caused by Taxotere—to a "reasonable degree of medical certainty" or otherwise—or to articulate the correct standard for admissible expert testimony in Louisiana.[1]

---

[1] In Louisiana, Plaintiff has the burden to prove her case to a "reasonable medical probability." *See Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993) (explaining that in Louisiana tort cases, Plaintiff bears the burden to prove "every essential element of [her] case, including the cause-in-fact of damage, by a preponderance of the evidence," and that using the term "reasonable medical certainty" is problematic); *Cormier v. CITGO Petroleum Corp.*, 228 So. 3d 770, 773 (La. Ct. App. 2017) (noting that "the trial judge further stated . . . 'All of the Plaintiffs were examined by Dr. Robert Looney, and his opinion based on a reasonable medical probability is that all of the Plaintiff's [sic] symptoms were a result of their exposure.'"); *Anthony v. Georgia Gulf Lake Charles, LLC*, 146 So. 3d 235, 249 (La. Ct. App. 2014) ("Dr. Levy found the exposure the plaintiffs endured was sufficient to cause the injuries claimed and expressly found causation based on a reasonable medical probability."). While Sanofi does not bear the burden of proof in this case,

2

Under Louisiana law, it is Plaintiff who must eliminate "alternative causes with reasonable certainty." *Gomez v. St. Jude Med. Daig Div., Inc.*, 442 F.3d 919, 936 (5th Cir. 2006). The defendant may suggest alternative causes, and then it is Plaintiff who ultimately must prove why the alternative cause was not the sole cause. *See Porte v. Illinois Cent. R.R. Co.*, No. 17-cv-5657, 2018 WL 4404063, at *3 (E.D. La. Sept. 14, 2018) ("The alternative causes suggested by a defendant affect the weight that the jury should give the [the plaintiff's] expert's testimony and not the admissibility of that testimony, unless the [the plaintiff's] expert can offer no explanation for why he or she has concluded [an alternative cause offered by the [the plaintiff's] expert] was not the sole cause.") (internal citations omitted); *see also Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 808 (3d Cir. 1997) ("In attacking the differential diagnosis performed by the plaintiff's expert, the defendant may point to a plausible cause of the plaintiff's illness other than the defendant's actions. It then becomes necessary for the *plaintiff's* expert to offer a good explanation as to why his or her conclusion remains reliable.") (emphasis added). Proving the causation allegation is squarely Plaintiff's burden. Evidence regarding potential alternative causes of Plaintiff's claimed permanent alopecia is critical to this case as this evidence goes directly to Plaintiff's burden of proving that Taxotere caused her hair loss. And, as importantly, Sanofi's experts have offered their opinions about alternative causes and other risk factors for the Plaintiff's hair loss to a reasonable degree of medical probability. Plaintiff has not challenged those experts' opinions, and may not through a backdoor do so now.

---

Sanofi's experts offer their causation opinions to a reasonable degree of medical probability. *See, e.g.*, Shapiro Report at 1, **Ex. C**; Smart Report at 1, **Ex. I**.

## II.     Plaintiff's Medications and Medical Conditions are Relevant to Causation.

It is undisputed that Plaintiff received two chemotherapy medications—Adriamycin and Cytoxan—before receiving Taxotere. *See, e.g.*, Earnest PFS § V. 11–12, **Ex. A**. It is also undisputed that Plaintiff lost her hair while taking these medications, before ever receiving Taxotere. Carinder Dep. 57:25–58:3, **Ex. B**. Sanofi's expert witnesses have proffered opinions to a reasonable degree of medical probability regarding the association between these medications and permanent hair loss, and Plaintiff's inability to attribute Plaintiff's hair loss to Taxotere in light of their use.[2] *See, e.g.,* Shapiro Report at 5 ("Cytoxan and Adriamycin have both been reported with cases of ongoing alopecia. Plaintiff's hair fell out after she took these chemotherapies and before she took Taxotere. If some portion of Plaintiff's alopecia was caused or aggravated by chemotherapy, it would be impossible to rule out Cytoxan and/or Adriamycin."), 1 ("It cannot be determined what portion if any of her present hair loss is associated with a particular chemotherapy. Plaintiff received several chemotherapies and lost her hair after receiving Adriamycin and Cytoxan, and before receiving Taxotere. No hair loss can be specifically attributed to Taxotere."), **Ex. C**. Indeed, Plaintiff's own experts acknowledge that Adriamycin and Cytoxan are associated with permanent alopecia. *See, e.g.,* Tosti Dep. Vol. II 487:22–488:18 (acknowledging case reports where persistent chemotherapy induced alopecia was caused by an Adriamycin and Cytoxan (AC) regimen), **Ex. D**; Feigal Dep. Vol. III 600:16–601:17 (acknowledging case reports of permanent alopecia with patients who received an Adriamycin

---

[2] Plaintiff failed to assert a *Daubert* challenge to the expert opinions offered by Dr. Shapiro or Dr. Smart in February when the parties' *Daubert* motions were due. Plaintiff's instant motion appears to be an improper backdoor attempt at a late *Daubert* challenge using *in limine* motions rather than the standards governing the admission of expert evidence. Plaintiff's efforts to circumvent *Daubert* should be rejected.

regimen without Taxotere), **Ex. E**; Bosserman Dep. Vol. II 480:22–481:3 (acknowledging cases of permanent alopecia associated with Adriamycin regimens), **Ex. F**.[3]

Similarly, it is undisputed that Plaintiff has taken a hormone blocking anti-cancer medication called Arimidex (anastrozole) daily since 2011. *See* Earnest PFS § VII.8, **Ex. A**. Sanofi's expert witnesses have opined to a reasonable probability of medical probability that Arimidex cannot be excluded as a cause of Plaintiff's permanent hair loss. *See, e.g.*, Shapiro Report at 1, 3, 4 ("After chemotherapy, [Plaintiff] was prescribed Arimidex, which I understand she continues to take. Arimidex is associated with alopecia and cannot be ruled out as a factor in [Plaintiff's] hair loss.") ("It is also my opinion that [Plaintiff's] long-term use of Arimidex has caused or contributed to her hair loss.") ("Many years of reduced follicular inactivity from the use of Arimidex may have accelerated [Plaintiff's] androgenetic process or reduced her ability to regrow hair."), **Ex. C**.[4] Further, the testimony of and literature authored by Plaintiff's own experts recognizes that Arimidex (anastrozole) is associated with permanent alopecia. *See e.g.*, Freites-Martinez, "Assessment of Quality of Life and Treatment Outcomes of Patients With Persistent Postchemotherapy Alopecia," at 3 (Dr. Tosti 2019 publication discussing reports of permanent alopecia associated with anastrozole), **Ex. G**.

The fact that Plaintiff has been exposed to other chemotherapy drugs and other medications that are associated with the alleged injury in this case is relevant to the issue of causation, and

---

[3] *See also* Plunkett Dep. Vol. I 115:1–8 ("Q. And you agree that there are cases of permanent alopecia that are associated with chemotherapy agents besides Taxotere, true? [objection] A. Yes. I have seen that. Q. For what medications? A. I mentioned in my report there are some reports for cyclophosphamide."), 116: 19–24 ("Q. So you told us about cyclophosphamide . . . the combination therapy FAC, which is 5-FU, Adriamycin and cyclophosphamide as all being chemotherapy that have all cases of permanent alopecia associated with them, correct? A. Those are ones that I've identified[.]"), **Ex. H**.

[4] *See also* Smart Report at 8 ("[Plaintiff] also takes other medications that are known to cause alopecia"), **Ex. I**.

therefore admissible. Sanofi does not believe that, in light of Plaintiff's own expert testimony, Plaintiff can demonstrate that these chemotherapy medications are not causal explanations for her claimed hair loss. But that is her burden.

The same is true with respect to certain of Plaintiff's medical conditions, which are known risk factors for hair loss. Sanofi's experts have opined that Plaintiff has several medical conditions associated with hair loss. *See* Shapiro Report at 1–2 (opining that Plaintiff has many factors associated with alopecia including ". . . vitamin B12; vitamin D and iron deficiencies; morbid obesity . . . Metabolic Syndrome; age; and being post-menopausal."), **Ex. C**; Smart Report at 8 (same), **Ex. I**. Plaintiff's own experts also have admitted that these medical conditions are risk factors for alopecia. Claiborne Dep. 2:1–53:20 (Plaintiff's consulting dermatopathologist testifying that age and menopausal status are risk factors for alopecia); **Ex. J**; Tosti Report at 7 ("Frontal Fibrosing Alopecia typically affects postmenopausal women."), **Ex. K**. As such, evidence of Plaintiff's medical conditions is also relevant and admissible on the issue of causation.

**III.    The Probative Value of Alternative Causation Evidence Significantly Outweighs the Minimal Prejudicial Effect, If Any.**

Plaintiff's contention that alternative causation evidence should be excluded on Rule 403 grounds because "Sanofi did not proffer any expert witness who will testify" that these alternative causes actually caused Plaintiff's hair loss fails for the following reasons: (1) as stated above, causation is not Sanofi's burden, (2) Plaintiff has failed to cite a single case that supports her position, and (3) Sanofi's experts *have* opined that Plaintiff's hair loss is due to causes other than Taxotere and/or opined that these potential causes cannot be reliably excluded, with Plaintiff's own experts admitting that Plaintiff has been exposed to other medications with the potential to cause her alleged injury. *See supra* Part II.

6

"As the Fifth Circuit has made clear, 'unfair prejudice' in the context of Rule 403 'is not to be equated with testimony simply adverse to the opposing party ... [t]he prejudice must be 'unfair.'" *In re M&M Wireline & Offshore Servs.*, LLC, No. 15-cv-4999, 2017 WL 485985, at *8 (E.D. La. Feb. 6, 2017) (citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). There is nothing unfairly prejudicial about the evidence Plaintiff seeks to preclude through this motion. Evidence and argument concerning potential alternative causes and risk factors is undeniably relevant to whether Plaintiff has carried her burden to show causation under Louisiana law, and Plaintiff's motion to prohibit such evidence and argument should be denied.

## CONCLUSION

For these reasons, testimony, argument and evidence relating to other medications and conditions as potential alternative causes are both relevant and admissible, and the Court should deny Plaintiff's motion.

Date: August 6, 2019

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **August 6, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore