UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

**THIS DOCUMENT RELATES TO:**
Barbara Earnest, Case No. 2:16-cv-17144.

### SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 12 TO PRECLUDE ANY COMMENT OR ARGUMENT THAT TAXOL WOULD HAVE ENHANCED THE SEVERITY OF PLAINTIFF'S NEUROPATHY

Plaintiff's motion to preclude comment or argument that Taxol might have enhanced the severity of Plaintiff's neuropathy should be denied because it flies in the face of this Court's summary judgment ruling which found, in relevant part, that:

> The jury will need to hear the testimony at trial and decide whether Earnest would have chosen paclitaxel despite her neuropathy or whether she would have still chosen Taxotere knowing of its risk of permanent alopecia.

(Rec. Doc. 7571 at 21). While Sanofi has requested certification of this Court's ruling as it turns on the patient decision, the comparative risk of neuropathy posed by paclitaxel over docetaxel is dispositive of this case under routine application of the learned intermediary doctrine, and thus most certainly admissible. Going further, Sanofi has demonstrated that the unavailability of Taxol for weekly use (and accompanying daunting risk of neuropathy associated with its available dosing every three weeks) was the reason why Dr. Carinder would not and could not have changed his prescribing decision for Ms. Barbara Earnest *at the time he prescribed her docetaxel*. (Rec. Doc. 7783-1, at 6 n.2 (citing, *e.g.*, Carinder Dep. 26:2–4 ("I used docetaxel more because you had less risk of infusion reactions, and you had less neuropathy . . . if I can avoid the neuropathy and the infusion reactions, of course I'm gonna use that."), 26:23–25, 69:15–19, 130:14–131:12 ("We didn't have paclitaxel approved for using it weekly back in the day when Miss Earnest was

1

treated."), 139:7–140:1). Thus, evidence relating to Plaintiff's neuropathy—and the increased risk of neuropathy associated with Taxol—is inextricably part of the testimony on why Dr. Carinder still would have prescribed Taxotere to Plaintiff even if he were provided different risk information concerning the risk of permanent alopecia, as well as the broader risks and benefits of each treatment that would have been available to Plaintiff.

> **A.     The Risk of Neuropathy was a Significant Consideration in Determining Which Chemotherapy Regimen Plaintiff Should Receive.**

The increased risk of severe neuropathy associated with Taxol is highly relevant to why Plaintiff's treating physician testified he would not have changed his prescribing decision in this case at the time of treatment. Plaintiff's oncologist, Dr. Carinder, testified that neuropathy is something he always considers when making prescribing decisions.

> *Q.  So what factors do you consider when you're coming up with your treatment plan and what chemotherapy drugs you're gonna use?*
>
> *A.  Well, . . . if it were someone that had horrible diabetes with neuropathy, okay, a lot of our chemo drugs that we use . . . cause neuropathy and aggravate neuropathy. And if you already have existing neuropathy, you're gonna make things worse. . . . you have to look at who's in front of you."*

Carinder Dep. 75:23–76:14, **Ex. A**. And, according to Dr. Carinder, Taxol has been more often associated with neuropathy.

> *Q. Do you agree with me that while docetaxel and paclitaxel are structurally similar, they are not the same drug?*
>
> *A.  They're not the same drug.*
>
> *Q.  They carry different risks and benefits. Do you agree with that?*
>
> *A.  Yes. Their side effect profiles are slightly different. . . .*
>
> *Q.  Has one been associated with neuropathy more?*
>
> *A. Paclitaxel.*

*Id.* at 139:7–140:1; *see also* Sparano, "Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer," at 1163 ("Grade 2, 3, or 4 neuropathy was more frequent with weekly paclitaxel than with paclitaxel every 3 weeks."), 1169 ("In comparison with the group receiving standard therapy, the group receiving weekly paclitaxel had significantly more moderate-to-severe neuropathy[.]"), **Ex. B**.  Indeed, Dr. Carinder testified that at the time of Plaintiff's treatment, he prescribed docetaxel, as opposed to paclitaxel, *because* of the risk of neuropathy associated with the only available and approved paclitaxel regimen.

- At that time, I used docetaxel more because you had less risk of infusion reactions, and you had less neuropathy.  And the efficacy was very similar.  And so in order to avoid infusion reactions and–and persistent neuropathy, which is daunting for many people we take care of, at that time, I used more docetaxel.  Carinder Dep. 26:2–8, **Ex. A**.

- And at the time, like I said, both drugs were proven to have pretty much equivocal . . . efficacy.  And if I can avoid the neuropathy and the infusion reactions, of course I'm gonna use [docetaxel].  *Id.* at 26:21–25.

- . . . I gravitated more toward using docetaxel [at the time Plaintiff was treated] because you didn't lose efficacy but you reduced . . . the daunting neuropathy that a lot of patients get.  *Id.* at 69:15–19.

- We didn't have paclitaxel approved for using it weekly back in the day when [Plaintiff] was treated. . . . And the—the neuropathy the patients got from that was long-lasting in lot of cases[.]  *Id.* at 130:13–22.

Therefore, the increased risk of neuropathy associated with Taxol was central to Dr. Carinder's prescribing decision in this case.

Plaintiff herself testified that if the side effects from another drug had increased her risk of neuropathy, it would have influenced her decision on whether to take it:

> Q.   *And if this other drug, this hypothetical other drug, came with an increased risk of neuropathy, is that something that you would have taken into consideration?*
>
> [objection]
>
> A.   Um, I don't know . . . .

> *Q.     Or it caused increased severity of neuropathy, is that something you would have wanted to take into consideration?*
>
> *[objection]*
>
> *A.     I can't answer that.*
>
> *Q.     That's not something that you would care about either way?*
>
> *[objection]*
>
> *A.     No. I do care about it because it's very painful.*
>
> *Q.     So that could—that would potentially influence your decision?*
>
> *A.     Yes.*

Earnest Dep. Vol. II 111:4–112:15, **Ex. C**; *see also id.* at 110:20–111:3 (Plaintiff testified that the neuropathy she suffers from today causes her to have trouble sleeping). Such testimony was important even in the Court's ruling (that the patient decision may supply proximate causation notwithstanding the learned intermediary doctrine), acknowledging that neuropathy would be important for the jury to address in makings its findings at trial. (Rec. Doc. 7571 at 21). Thus, the record supports that evidence about increased risks of neuropathy associated with Taxol use are highly relevant to a fact at issue in this litigation.

### B.     Plaintiff' Attack on Sanofi's Experts is Irrelevant and Misinformed.

Plaintiff contends that such evidence should be excluded because Sanofi's experts testified there is no way to know whether the use of a Taxol regimen (in lieu of a Taxotere regimen) would have increased the severity of Plaintiff's neuropathy. *See* Pltf. Mem. at 2. As indicated, this is an inaccurate characterization of the expert testimony. That said, and as noted above, both the treating oncologist and Plaintiff testified that the risk of neuropathy was a significant consideration in selecting Plaintiff's treatment course. *See supra* Part A. Moreover, Sanofi's expert oncologists

have testified based on their clinical experience about the risks associated with different chemotherapy regimens, including the potential for severe neuropathy. Dr. Miletello testified consistent with his 33 years of clinical experience treating over a thousand women with breast cancer that he sees "minimal neuropathy with Taxotere," and "lots of neuropathy with Taxol." Miletello Dep. 75: 8–14, 237:10–25, **Ex. D**; *see also id.* at 235:20–236:5 (testifying that a Taxotere-containing regimen was appropriate for Plaintiff over a Taxol regimen *because* of the increased risk of neuropathy associated with Taxol). And, in his expert report, Dr. Glaspy also opined that the risk of severe neuropathy is much lower with Taxotere than with Taxol, that "women who are obese, pre-diabetic, diabetic, or have heart issues may be suboptimal candidates for Taxol containing regimens" because of the risk of neuropathy, and that Taxol more likely would have worsened Plaintiff's neuropathy. Glaspy Report at 14, 15, 43–44, **Ex. E**. Sanofi's expert oncologists have not been challenged. There is nothing that would bar them from testifying, based on their clinical experience, practice, and education, about the risks associated with different chemotherapy options, including the potential for severe neuropathy, in the context of their informed consent discussions with patients.

      **C.**    **The Probative Value of Plaintiff's Risk of Neuropathy Substantially Outweighs Its Minimal Prejudicial Effect, If Any.**

Plaintiff contends that evidence concerning Plaintiff's risk of neuropathy would be unduly prejudicial and would waste the jury's time, but she fails to explain how such evidence—which, according to Dr. Carinder is highly relevant to the prescribing decisions in this case—would result in undue prejudice or delay. *See* Pltf. Mem. at 2. Moreover, "the Fifth Circuit has made clear, [that] 'unfair prejudice' in the context of Rule 403 'is not to be equated with testimony simply adverse to the opposing party ... [t]he prejudice must be 'unfair.'" *In re M&M Wireline & Offshore Servs.*, LLC, No. CV 15-4999, 2017 WL 485985, at *8 (E.D. La. Feb. 6, 2017) (citing *Dollar v.*

5

*Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)).  Here, both Dr. Carinder and Plaintiff testified that an increased risk of neuropathy associated with a different chemotherapy drug would have impacted their decisions in this case.  Carinder Dep. 75:23–76:14, 26:2–8, 26:21–25, 69:15–19, 130:13–22, **Ex. A**; Earnest Dep. Vol. II 111:4–112:15, **Ex. C**.  The increased risk of neuropathy associated with Taxol is thus highly relevant, and the Court should deny Plaintiff's Motion.  Sanofi indeed urges that the issue is dispositive of the case due to the unavailability of Taxol in an administration frequency/dose where the side effect profile was acceptable to Plaintiff's doctor at the time of Ms. Earnest's treatment.

Date: August 6, 2019

        Respectfully submitted,

        /s/ *Douglas J. Moore*
        Douglas J. Moore (Bar No. 27706)
        **IRWIN FRITCHIE URQUHART & MOORE LLC**
        400 Poydras Street, Suite 2700
        New Orleans, LA 70130
        Telephone: 504-310-2100
        Facsimile: 504-310-2120
        dmoore@irwinllc.com

        Harley V. Ratliff
        Adrienne L. Byard
        Kelly Bieri
        **SHOOK, HARDY& BACON L.L.P.**
        2555 Grand Boulevard
        Kansas City, Missouri 64108
        Telephone: 816-474-6550
        Facsimile: 816-421-5547
        hratliff@shb.com
        abyard@shb.com
        kbieri@shb.com

        *Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on **August 6, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ <i>Douglas J. Moore</i><br>Douglas J. Moore