**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**In Re: TAXOTERE (DOCETAXEL)**          **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGATION**

                                        **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO**
**ALL CASES**

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND OMNIBUS**
**MOTION *IN LIMINE* (NOS. 15-20)**</u>

Plaintiff respectfully submits this response in opposition to Sanofi's Second Omnibus

Motion *in Limine* (Nos. 15-20).

**15.    <u>PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR
        ARGUMENT CONCERNING WHAT TREATMENT DR. CARINDER WOULD
        PRESCRIBE PLAINTIFF TODAY</u>**

The learned intermediary doctrine requires that we consider what Dr. Carinder would

have prescribed to Ms. Earnest had Sanofi provided an adequate warning that Taxotere causes

permanent hair loss.  Dr. Carinder's prescribing practices today, knowing that Taxotere causes

permanent hair loss, are highly relevant to that inquiry under Fed. R. Evid. 401.  Sanofi's

arguments to the contrary would result in the exclusion of a well-established line of hypothetical

questions related to learned intermediary and proximate cause analysis in prescription drug

failure-to-warn cases.

**A.    ARGUMENT**

Plaintiff Barbara Earnest presented to oncologist Dr. Carinder in 2011 after a breast

cancer diagnosis.  Dr. Carinder prescribed Taxotere to Ms. Earnest in 2011.  At that time, Dr.

Carinder did not advise Ms. Earnest that Taxotere carried the risk of permanent hair loss because

Sanofi failed to warn him of that risk.  (*See* Ex. A, Carinder Dep. 165:21-166:10, Jan. 11, 2018.)

Moreover, had Sanofi adequately warned that Taxotere causes permanent hair loss, Dr. Carinder's prescribing conduct would have changed—he would have informed Plaintiff Earnest of the increased risk of permanent hair loss and prescribed paclitaxel (Taxol).  (*Id.* at 138:6-10, 166:12-168:16.)   Indeed, Dr. Carinder made clear that he would prescribe paclitaxel precisely because of the risk of permanent alopecia:

> A.   In – in a setting like Miss Earnest where you've got estrogen hormone receptor-positive disease, HER2-negative disease, where you're not using a trastuzumab-based regiment, I typically will give them the dose-dense AC; **but now I use paclitaxel.  And part of the reason I use paclitaxel is because of the risk for the permanent alopecia.**  But we now – instead of using paclitaxel at a high dose every two weeks or three weeks, we do the 12 weeks of a smaller dose, and neuropathy tends to be less severe.
>
> …
>
> Q.   You said, I think, that part of the reason that you are now using paclitaxel has to do with the – the possibility of permanent hair loss.  What else?
>
> **A.   That's – that's the main reason.  That's the main reason.**  We didn't have paclitaxel approved for using it weekly back in the day when Miss Earnest was treated.  And like I said, it was approved for using a dose every fift- -- 14 days, but it was a high dose.  And the – the neuropathy the patients got from that was long-lasting in a lot of cases, and that's – that's bothersome for people, and plus the infusion reactions were severe.

(*Id.* at 129:13-130:22 (emphasis added)).   A paclitaxel treatment regimen was available at the time of Ms. Earnest's prescription—indeed, it was listed as a preferred regimen under the applicable NCCN guidelines.  (*See* Ex. B, NCCN Guidelines, Version 2.2011.)  The fact that a low dose paclitaxel regimen was not specifically indicated at the time that Ms. Earnest was prescribed Taxotere is a red herring.   Taxol was available in low dose format, and Dr. Carinder unequivocally testified that he would have used an alternative treatment regime had he known that Taxotere causes permanent hair loss.  (*See* Ex. A, Carinder Dep. at 138:6-11.)  Sanofi has concocted issues concerning what treatment regimens were available in 2011 and the risk

profiles associated with those treatment regimens—but the reality is, as mentioned before, Dr. Carinder clearly stated he would have used low-dose Taxol.

Sanofi's reliance on *Cross v. Forest Laboratories* and *Thibodeaux v. ENSCO Offshore Co.* are distinguishable.  For example, in *Cross*, the prescribing physician testified that he would have performed further research if certain data on suicide in SSRI-treated patients compared to patients receiving other antidepressants had been available. 102 F. Supp. 3d 896, 904 (N.D. Miss. 2015).  But that data was not published until two years after the physician prescribed the drug to the plaintiff.  *Id.*  Additionally, there was no evidence that had the data been available and had the prescribing physician done further research, the prescribing physician's conduct would have changed.  *Id.*  As such, the court determined that the data published in 2006 could not have affected the prescribing physician's decision two years prior in 2004.  *Id.*  The *Thibodeaux* case is likewise inapplicable—the data sought to exclude post-dated the injury at issue and no other basis existed to permit its admissibility. No. 13-cv-02784, 2016 WL 4803179, at *1 (W.D. La. Sept. 9, 2016) 2016 WL 4803179, at *1.

Finally, Plaintiff anticipates that Sanofi will present testimony from Dr. Carinder that he prescribes Taxotere today to suggest that Taxotere remains safe and effective because physicians continue to prescribe Taxotere every day. (*See* Ex. A to Defs' Mot., Rec. Doc. 7657-2, Carinder Dep. at 127:25-129:12.) If Plaintiff is precluded from introducing evidence of what Dr. Carinder would prescribe Ms. Earnest (or a similar-situated patient) today, Sanofi should likewise be precluded from introducing evidence that Dr. Carinder still prescribes Taxotere today.

## B.    CONCLUSION

Because the treatment that Dr. Carinder would have prescribed Ms. Earnest today was available in 2011, his testimony is relevant for purposes of establishing viable treatment alternatives for Ms. Earnest—as this Court has previously recognized.  (Rec. Doc. 7571, at 21

("The testimony [from Dr. Carinder and Ms. Earnest] shows that Earnest had a viable alternative to Taxotere.")) Thus, Plaintiff respectfully requests that the Court deny Defendants' Motion *in Limine* No. 15.

16. **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING WHAT PLAINTIFF WOULD HAVE DONE DIFFERENTLY IF SHE HAD BEEN GIVEN DIFFERENT RISK INFORMATION BY HER PRESCRIBING ONCOLOGIST**

    A. **ARGUMENT**

        1. *Plaintiff's testimony regarding whether she would have agreed to take Taxotere if Sanofi had provided an adequate warning is relevant to the causation analysis.*

Sanofi continues to misstate the standard for causation under Louisiana's learned intermediary doctrine despite this Court's rulings on Defendants' motions for summary judgment on causation based on the learned intermediary doctrine. (Rec. Doc. 7571).

To maintain a failure-to-warn claim under the learned intermediary doctrine, the plaintiff must show two things:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.

> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265-66 (5th Cir. 2002). Sanofi incorrectly suggests that the only way to establish the second prong is through evidence that Plaintiff's prescribing physician, Dr. Carinder, would not have prescribed Taxotere had he received a warning about the risk of permanent hair loss. This is but one method to establish causation. It is not the exclusive means to do so.

Causation can also be established by showing that, if properly warned, a plaintiff's treating physician would have acted differently such that the injury alleged by the plaintiff could be avoided.  *See In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 1393480, at *3 (E.D. La. April 17, 2017).  The injury here could have been avoided here by various means, such as the physician unilaterally deciding not to recommend the drug or the physician passing along information to the patient and the patient declining to take the drug.  Indeed, this Court has recognized that "the chemotherapy decision-making process is unique."  (Rec. Doc. 7571, at 20). Specifically, "[t]he Court must consider not only whether an oncologist would have warned his or her patient of the risk of permanent alopecia but also how patient choice then would have steered the conversation and the ultimate prescribing decision."  *Id.*

Accordingly, the focus of the learned intermediary doctrine is not solely on the conduct of the prescribing physician, but also what the prescribing physician should disclose to the patient in order for the patient to participate in the decision-making process.  As acknowledged by Dr. Carinder, it is the patient's ultimate decision that controls.  (*See* Ex. A, Carinder Dep. 167:7-18 ("My job is to give [patients] information so they can make an informed decision")).

Here, Dr. Carinder testified that Sanofi never warned him of the risk of permanent hair loss, and if they had, he would have received that information, taken it seriously, and advised his patients (including Ms. Earnest) of such.  (*Id.* at 162:25-164:14, 171:15–172:2.)  Dr. Carinder further testified that had he received an adequate warning of the risk of permanent hair loss associated with Taxotere, he would have counseled Ms. Earnest on the risk involved and would have respected Ms. Earnest's decision to go with a different treatment regimen.  (*Id.* at 166:12-168:16.) In light of Dr. Carinder's testimony, evidence of Ms. Earnest's ultimate decision to take Taxotere is relevant and admissible for the purposes of causation.

### 2. *The learned intermediary doctrine necessarily involves speculative testimony where no warning information was conveyed by the drug manufacturer.*

As set forth in Plaintiff's Opposition to Defendants' Motion *in Limine* No. 15, Sanofi attempts to exclude hypothetical testimony that is routinely admitted under the learned intermediary doctrine. Sanofi contends that evidence of what Ms. Earnest would have done differently had she been warned that Taxotere causes permanent hair loss is speculative and bias. (*See* Defs. Br. at 6.) However, during the oral arguments on Defendants' motions for summary judgment on causation based on the learned intermediary doctrine, counsel for Sanofi similarly argued:

> One of the things, Your Honor, that you mentioned previously or we talked about previously was the idea that a patient now 10 years out from taking chemotherapy can look back in hindsight and say, "Well, if I had known this, accepting all of these risks, that would have changed my mind. This one risk would have changed my mind," the benefit of hindsight bias. But Louisiana has articulated – and certainly this isn't a med mal situation – that you have to use an objective standard. You have to use a reasonable patient standard.
>
> …
>
> It's not necessarily what the patient says 10 years down the road when they are cancer free and they can look back at the risks and say, "That would have changed my mind." It's what would an objective patient do at the time when presented with all these risks…"

(Ex. C, Oral Argument Tr. 47:14-48:4, May 22, 2019.) This Court responded "Is that something to be decided at summary judgment? I understand what you are saying, and that's a really good argument to make at trial of this matter. But if I have testimony from someone saying, 'I would have done something different. I would have sought a second opinion.'" (*Id.* at 48:5-9.) Further, this Court ultimately determined that "[t]he jury will need to hear the testimony at trial and decide whether Earnest would have chosen paclitaxel despite her neuropathy or whether she would still have chosen Taxotere knowing of its risk of permanent alopecia." (Rec. Doc. 7571, at 21). As such, evidence concerning what Ms. Earnest would have done if Dr. Carinder had

informed her that Taxotere causes permanent hair loss should not be replaced with objective evidence nor precluded from the trial of this matter.

        **3.**      ***Neither Fed. R. Evid. 701 nor Fed. R. Evid. 403 warrant the preclusion of evidence concerning what Plaintiff would have done differently if she had been given different risk information by her prescribing oncologist.***

Fed. R. Evid. 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Ms. Earnest testified that if she had known Taxotere causes permanent baldness, she would have asked if there was another drug that could cure her cancer that did not cause permanent baldness. (*See* Ex. D, Earnest Dep. 102:22-103:12, Nov. 5, 2018.) Ms. Earnest further testified that "had I been given that opportunity, I would have took another drug is what I'm trying to get people to understand that." (*Id.* at 106:3-6.) Ms. Earnest's testimony is based on her firsthand knowledge and helpful to determining a fact in issue – that the failure to warn was both the cause in fact and proximate cause of her injury.

Also, evidence of what Ms. Earnest would have done differently had she been informed of the risk of permanent hair loss is not based on scientific, technical or other specialized knowledge. In fact, Ms. Earnest's testimony confirms that she would have relied on her oncologist for scientific information on alternative treatments. For example, Ms. Earnest testified that she would have relied on Dr. Carinder to inform her whether another drug would be as effective as Taxotere. (*Id.* at 108:13-109:5.) Ms. Earnest also testified that she would have wanted to know about the side effects of the alternative drug, including the severity, likelihood, and permanence of those side effects. (*Id.* at 108:7-18.) Finally, the probative value of the

evidence at issue outweighs any potential danger of unfair prejudice or jury confusion under Fed. R. Evid. 403.

### B.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion *in Limine* No. 16.

**17.   PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING SANOFI PROMOTIONAL AND/OR MARKETING MATERIALS NOT POSSESSED OR RELIED ON BY PLAINTIFF OR HER PRESCIRBING PHYSICIAN**

Plaintiff does not intend trial to introduce Sanofi's promotional materials as evidence of Sanofi's marketing efforts.[1]   However, Plaintiff anticipates that Sanofi will argue that the Taxotere label warned doctors of permanent hair loss with the single word "alopecia" prior to 2015. To counter this argument, Plaintiff intends to utilize an informational brochure created by Sanofi in 2006 that identifies alopecia has a "common, **yet temporary**, side effect." (*See* Ex. E, Sanofi_01038470 at 5 (emphasis added)). It is unclear if Sanofi utilized this brochure as a marketing tool—regardless, this evidence is relevant to impeach Sanofi's claims that it warned of permanent hair loss prior to 2015 with the world "alopecia." Accordingly, Plaintiff should be permitted to introduce company-written materials that show that Sanofi knew "alopecia" warned only of temporary hair loss if Sanofi contends that "alopecia" means both temporary and permanent alopecia.

**18.   PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING NON-EXPERT CAUSATION TESTIMONY**

Plaintiff does not intend to illicit specific causation testimony from the witnesses identified in Sanofi's Motion—namely, Ralph Earnest and Jules LeBlanc.  To the extent that

---

[1] Plaintiff does intend to introduce testimony from a Sanofi sales representative, Ruth Avila, and Dr. Carinder, as described below in Plaintiff's Opposition to MIL No. 20.

Sanofi seeks to exclude such testimony from Plaintiff's prescriber or any other witness not identified in Sanofi's motion, Plaintiff opposes as overbroad.  Indeed, it is virtually impossible to respond without further information as to the witnesses Sanofi claims are unqualified to offer testimony.

Moreover, to the extent that Sanofi is seeking to exclude general causation testimony from non-expert witnesses, which presumably would include Sanofi witnesses, Plaintiff again opposes as overbroad, and as above, Sanofi offers no basis for their exclusion.  Multiple Sanofi witnesses have testified that Taxotere causes permanent hair loss, including but not limited to:

- Leslie Fierro, Pharm.D., Sanofi Head of Medical Information Services – Ex. F, Fierro Dep. 89:22-90:01 ("Q. … As a pharmacist, do you understand today that Taxotere can cause permanent hair loss? A.  Correct, yes.")

- Nanae Hangai, M.D., Sanofi Global Safety Officer – Ex. G, Hangai Dep. 17:22-18:02 ("Q. And you believe that Taxotere is causally associated with permanent hair loss, correct? A. Docetaxel/Taxotere may cause permanent hair loss, but it's case-by-case.");

- Amy Freedman, M.D., Sanofi Global Safety Officer – Ex. H, Freedman Dep. 195:20-196:02 ("Q. … [B]ased upon your knowledge at Sanofi in 2006, Sanofi knew that Taxotere could cause irreversible alopecia in 2006, correct? A. Yes.")

This and other similar testimony from Sanofi witnesses is relevant to Plaintiff's case, and excluding *any* evidence of non-expert causation testimony, as proposed by Sanofi, could be construed to preclude admission of this highly probative evidence.  Sanofi's overbroad motion on this topic makes offers no countervailing reason why this type of evidence would be irrelevant or prejudicial and accordingly should be denied.

19.    **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S MOTIVE AND/OR MEDICAL STATE**

Sanofi seeks to prohibit any fact witness other than Ms. Earnest from offering evidence regarding her motive and/or mental state on the basis of lack of foundation and improper

speculation.[2]   The testimony referenced by Sanofi is that of Ms. Earnest's husband, Ralph L. Earnest, Sr., her son, Michael Paul Earnest, and her brothers, Jules John LeBlanc and Ronald Joseph LeBlanc, although the motion does not appear limited to those potential fact witnesses or their testimony.   Sanofi's assertion that Ms. Earnest is the only person with the requisite foundation to testify regarding her motive and/or mental state is incorrect.   The testimony of other persons familiar with Ms. Earnest including her family and friends with information based on personal knowledge and opinions derived from perception is relevant, probative, and admissible.

A.   **ARGUMENT**

A lay witness may testify as to matters within his or her personal knowledge. Fed. R. Evid. 602.  Under Federal Rule of Evidence 701, opinion testimony of a lay witness is also permissible to the extent, "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701.  A lay witness, "must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Mississippi Chemical Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002).

Courts permit witness testimony "as to their firsthand observations of the mental anguish or emotional distress suffered by parties…." *Eubanks v. St. Tammany Parish Hosp., Serv. Dist. No. 1*, No. Civ.A. 03-2878, 2004 WL 1403403, at *2 (E.D. La. June 22, 2004).[3]   Similarly, a

---

[2] Sanofi seeks to exclude evidence offered by certain fact witnesses related to Ms. Earnest's motive and/or mental state and not expert testimony so Plaintiff has not addressed the admissibility of expert testimony on the same subject matter.

[3] *See also Frazier v. Ind. Dept. of Labor*, IP 01-198-C-T/K, 2003 WL 21254567, at *2 (S.D. Ind. Mar. 24, 2003) ("Plaintiff's lay witnesses may testify about their firsthand observations of his emotional distress and mental anguish and any physical manifestations attributed to such distress and anguish."); *Watson v. Allen Cty. Sheriff's Officers*, No. 1:12-CV-55, 2013 WL 4540597, at *4-5 (N.D. Ind. Aug. 27, 2013) (Lay witness testimony regarding

person acquainted with the behavior and disposition of another person would be competent to testify regarding general demeanor and any changes in demeanor such as unhappiness, anguish, distress, and unrest.[4]  *Burke v. City of Santa Monica*, Case No. CV 09-02259 MMM (PLAx), 2011 WL 13213593, at *19-21 (S.D. Ca. Jan. 10, 2011).

In *Howard v. Offshore Liftboats, LLC*, the issue was whether a lay witness would be allowed to offer opinion testimony involving hypothetical and speculative questions about what might or could have been done in other situations. *Howard v. Offshore Liftboats, LLC*, Civil Action No. 13-4811 c/w 13-6407 & 14-1188, 2016 WL 316716, at *4-5 (E.D. La. Jan. 26, 2016). The fact witnesses in this case are not going to be asked to speculate based on hypothetical scenarios having to do with Ms. Earnest's motive and/or mental state.  The fact witnesses (particularly those close family members identified by Sanofi) have personal and intimate knowledge of the mental and physical condition of Ms. Earnest gleaned through observations over time and opinions formed based on personal experience.

Ms. Earnest is seeking damages for mental anguish; emotional distress; mental pain, suffering, and discomfort; and loss and impairment of the quality and enjoyment of life.  The testimony of others regarding the severe and debilitating mental anguish and emotional distress as well as diminished quality of life suffered by Ms. Earnest is an important component of proof related to damages.

---

knowledge and understanding of physical and mental health of the plaintiff before and after incident is admissible.); and *Maremont v. Susan Fredman Design Group, Ltd.*, No. 10 C 7811, 2014 WL 812401, at *7 (N.D. Ill. Mar. 3, 2014) (The testimony of the plaintiff, her husband, and her father related to "observations of her mental health before and after the incident in question constitute proper lay opinion testimony.")

[4] *See Cole v. U.S.*, 327 F.2d 360, 361 (9th Cir. 1964) ("As to opinion, a witness need not be an expert in order to draw a conclusion that a person is distraught who has suddenly grown pale and is shaking."); and *Ishee v. Fed. Nat. Mortg. Ass'n*, 2014 WL 6686705, at *1-2 (S.D. Miss. Nov. 26, 2014) (The daughter of the plaintiff who witnessed events as well as the plaintiff's mental and emotional state could testify regarding  personal knowledge and opinion, "One does not need a medical degree to observe another person and discern whether they are upset."). *See also Lillie v. ManTech Int'l. Corp.*, Case No. 2:17-cv-02538-CAS-SSx, 2018 WL 6323076, at *5-6 (C.D. Ca. Dec. 3, 2018) ("Plaintiff's wife may similarly testify regarding her perceptions of plaintiff's emotional state.")

### B.   CONCLUSION

Plaintiff should not be barred from presenting evidence from other fact witnesses related to her motive and/or mental state because the testimony is beneficial to the fact-finding process and admissible pursuant to Rule 602 and 701.   Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Motion *in Limine* No. 19.

### 20.   PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING SANOFI SALES REPRESENTATIVES

Sanofi attempts to bar inherently relevant evidence concerning the marketing and promotion of Taxotere.   As this Court is aware, pharmaceutical companies like Sanofi execute marketing and sales strategies through its sales representatives that pay visits to thousands of physicians in this county. In this case, the information disseminated by sales representatives is a reflection of what Sanofi chose to share with prescribing physicians about Taxotere and directly bears on whether Sanofi provided adequate warnings about Taxotere. Accordingly, Sanofi's Motion should be denied for three key reasons:

First, the evidence in this case demonstrates the efforts of Sanofi's marketing department and its sales representatives reached Dr. Carinder.   Indeed, Dr. Carinder specifically recalls being visited by Ruth Avila, the Sanofi sales representative who has provided testimony in this case. Ex. A, Carinder Dep. 170:4-171:2.   Dr. Carinder recalls having dinner with her and recalls her regional supervisor, Michael Gillespie.   *Id.* at 172:10-173:3; 178:11-16. Although Dr. Carinder did not recall Ms. Avila providing him information about hair loss and Taxotere, he would have considered any information she provided.   *Id.* at 171:6-19.   Dr. Carinder has a high opinion of Ms. Avila and views her as a knowledgeable sales representative (as opposed to others) because she is a former oncology nurse.   *Id.* at 173:13-174:4. Dr. Carinder also served on a Taxotere

advisory board comprised of other physicians who prescribed Taxotere and was related to Sanofi's efforts to market Taxotere. *Id.* at 176:1-17.

Second, Ms. Avila recalls providing Dr. Carinder and/or his nurse with written Sanofi materials about alopecia. Ex. I, Avila Dep. 442:14-19.  Information Ms. Avila provided to Dr. Carinder and other prescribing physicians was given to her by Sanofi. Ms. Avila was never told about a risk of permanent hair loss associated with Taxotere and therefore never relayed such a warning to Dr. Carinder or other prescribers. *Id.* at 83:13-21.

Third, information regarding Sanofi's marketing and sales activities, particularly what its sales force relayed to prescribing physicians like Dr. Carinder, directly bears on whether Sanofi provided an adequate warning about the risk of permanent hair loss associated with Taxotere. Other federal courts have recently rejected efforts to bar such evidence. For example, the U.S. District Court for the Southern District of Ohio rejected the same argument Sanofi advances here:

> Defendants seek an order precluding Plaintiffs from presenting evidence of Abbott's promotional activities, distribution of promotional materials, and sales and marketing practices related to Depakote. Defendants argue this evidence is not relevant because Dr. Lemus, who prescribed Depakote during Plaintiff Rheinfrank's pregnancy, does not recall any Abbott sales representative or Depakote-related promotional activities.
>
> Plaintiffs need not demonstrate reliance upon the promotional materials and marketing documents  in order for such evidence to be relevant in a failure to warn case. *Morales v. American Honda Motor Co.*, *Inc.* 151 F.3d 500, 517 (6th Cir. 1998) (finding the district court did not abuse its discretion in admitting an advertisement into evidence despite the fact that there was no established reliance upon the advertisement). Regardless of whether Dr. Lemus can recall whether she relied upon promotional materials made by Abbott, evidence of promotional activities, distribution of promotional materials, and sales and marketing practices relating to Depakote are relevant to the issue of what Abbott knew about Depakote's risks and Depakote's proper use for women of childbearing years. The evidence may also be relevant to the content of the label itself.  *See Kaleta v. Abbott Laboratories, Inc.*, No. 14-cv-847-NJR-SCW, slip op at *18 (S.D. Ill. Feb. 20, 2015) (admitting evidence of promotional materials); *In re Yasmin & Yaz*

*(Drospirenone) Mktg., Sales Practices & PMF Prods. Liab. Litig.*, 3:09-md-2100-DRH, 2011 WL 6740391, at *10 (S.D. Ill. Dec. 22, 2011) ("evidence about sales goals is certainly relevant particularly when it may impact decision making regarding labeling").

*See Rheinfrank, et al. v. Abbott Laboratories, Inc., et al.*, No. 13-cv-144, Dkt. 275, 2015 U.S. Dist. LEXIS 120581, at *16-17 (S.D. Ohio Sept. 10, 2015). Other courts presiding over cases involving Depakote similarly held and admitted information about sales representatives and sales activities. *See e.g.* Order, *Z.H., et al., v. Abbott Laboratories, Inc.,* No. 14-cv-176, 2017 U.S. Dist. LEXIS 3437, at *6 (N.D. Ohio Jan. 10, 2017) ("The Court agrees that Abbott's pre-1996 Depakote promotional, marketing and sales activities and materials are relevant to what Abbott knew, when Abbott knew it, what was communicated to the medical community and how Abbott's labeling decisions were impacted."); *see also E.R.G., et al., v. Abbott Labs., Inc.* (In re Depakote), No. 15-cv-702-NJR-SCW, 2017 U.S. Dist. LEXIS 74475, *19 (S.D. Ill. May 16, 2017).

Contrary to Sanofi's assertion, the introduction of such evidence would not require a minitrial and would not otherwise confuse the jury.  Rather, the jury is perfectly capable of weighing the evidence and must be afforded the opportunity to consider what information Sanofi was providing to prescribing physicians in resolving whether the company provided adequate warnings about Taxotere.

Accordingly, Sanofi's Motion *in Limine* No. 20 to Preclude Evidence or Argument Regarding Sanofi Sales Representatives should be denied.

Dated: August 6, 2019                            Respectfully submitted,

*/s/ Darin L. Schanker*                          */s/ Rand P. Nolen*
Darin L. Schanker                                Rand P. Nolen
Bachus & Schanker, LLC                           Fleming, Nolen & Jez, L.L.P.
1899 Wynkoop Street, Suite 700                   2800 Post Oak Blvd., Suite 4000
Denver, CO 80202                                 Houston, TX 77056
Phone: (303) 893-9800                            Phone: (713) 621-7944
Fax: (303) 893-9900                              Fax: (713) 621-9638
dschanker@coloradolaw.net                        rand_nolen@fleming-law.com

*Counsel for Plaintiff, Barbara Earnest*         *Trial Counsel for the PSC*
*Trial Counsel for the PSC*

*/s/ Christopher L. Coffin*                       */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                    Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                  GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2505                   6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                      Los Angeles, California 90045
Phone: (504) 355-0086                             Telephone: 510-350-9700
Fax: (504) 355-0089                               Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                            kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                     *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*                            */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                        Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN                               BARRIOS, KINGSDORF & CASTEIX, LLP
DAVID MEUNIER & WARSHAUER,                        701 Poydras Street, Suite 3650
LLC                                               New Orleans, LA 70139
2800 Energy Centre, 1100 Poydras Street           Phone: 504-524-3300
New Orleans, LA 70163-2800                        Fax: 504-524-3313
Phone: 504-522-2304                               barrios@bkc-law.com
Fax: 504-528-9973
plambert@gainsben.com                             *Plaintiffs' Co-Liaison Counsel*

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS