# EXHIBIT C

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)      *      16-MD-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *      Section H
                                  *
Relates to:  All Cases            *      May 22, 2019
                                  *
                                  *      10:00 a.m.
* * * * * * * * * * * * * * * * * *


                        ORAL ARGUMENT BEFORE
                 THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE
```

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Barrios Kingsdorf & Casteix, LLP<br>BY:  DAWN M. BARRIOS, ESQ.<br>701 Poydras Street, Suite 3650<br>New Orleans, Louisiana 70139 |
| For the Plaintiffs: | Pendley Baudin & Coffin, LLP<br>BY:  CHRISTOPHER L. COFFIN, ESQ.<br>1515 Poydras Street, Suite 1400<br>New Orleans, Louisiana 70112 |
| For the Plaintiffs: | Morgan & Morgan, P.A.<br>BY:  EMILY C. JEFFCOTT, ESQ.<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32502 |
| For the Plaintiffs: | Bachus & Schanker, LLC<br>BY:  DARIN L. SCHANKER, ESQ.<br>1899 Wynkoop Street, Suite 700<br>Denver, Colorado 80202 |

11:19

1  would have done or what she did do.  She said, "I was going to
2  do whatever I was told.  I would do whatever Dr. Carinder told
3  me to do."  She was not asking follow-up questions.  "If you
4  tell me I'm taking this, if you tell me I'm doing radiation, if
5  you tell me I'm doing chemotherapy, I'm doing what Dr. Carinder
6  tells me to do."
7  These are the risks that Ms. Earnest consented
8  to when she took Taxotere.  She knew it could cause death.  She
9  knew it could cause paraplegia.  She knew it could cause brain
10  damage, cause bleeding.  It could cause damage to vital organs.
11  She accepted all of those risks when she took Taxotere.  She
12  knew they were significant, she accepted them, and she went
13  forward with Taxotere.
14  One of the things, Your Honor, that you
15  mentioned previously or we talked about previously was the idea
16  that a patient now 10 years out from taking chemotherapy can
17  look back in hindsight and say, "Well, if I had known this,
18  accepting all of these risks, that would have changed my mind.
19  This one risk would have changed my mind," the benefit of
20  hindsight bias.  But Louisiana has articulated -- and certainly
21  this isn't a med mal situation -- that you have to use an
22  objective standard.  You have to use a reasonable patient
23  standard.
24  That's something to be thinking about both in
25  this case and in the *Francis* case.  It's not necessarily what

11:20   1  the patient says 10 years down the road when they are cancer
        2  free and they can look back at the risks and say, "That would
        3  have changed my mind."  It's what would an objective patient do
        4  at the time when presented with all these risks --
        5           **THE COURT:**  Is that something to be decided at
        6  summary judgment?  I understand what you are saying, and that's
        7  a really good argument to make at trial of this matter.  But if
        8  I have testimony from someone saying, "I would have done
        9  something different.  I would have sought a second opinion" --
       10           **MR. RATLIFF:**  Your Honor, this is just a cherry on
       11  top of my argument right here.  So this is what Ms. Earnest
       12  actually testified to:  She said she was concerned about
       13  neuropathy, which is what Dr. Carinder testified was a worry
       14  with Taxol; she did not seek a second opinion for chemotherapy
       15  treatment; and she does not know that she would have taken an
       16  alternative chemotherapy, even if presented with the option,
       17  based on the side effects of that drug.
       18           The answer she gave was:  "I don't know what I
       19  would have done.  I don't know if I would have taken a
       20  different drug."  That's the missing element of the one case
       21  they rely on in this district that says a change in the
       22  counseling will get you over the hump as long as you have a
       23  change in what the patient would do.
       24           **THE COURT:**  Right.
       25           **MR. RATLIFF:**  So anyways, Your Honor, I would say