**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                       SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Deborah Johnson, 2:16-cv-15607
Tanya Francis, 2:16-cv-17410


**PLAINTIFF DEBORAH JOHNSON'S AND PLAINTIFF TANYA FRANCIS' MOTION**
**FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR**
**CLARIFICATION/AMENDMENT OF JUDGMENTS (DOCS. 7697 AND 7698) BASED**
**ON ORDER AND REASONS (DOC. 7571)**


        NOW INTO COURT, come Plaintiffs, Deborah Johnson and Tanya Francis, through the

Plaintiffs' Steering Committee ("PSC"), who respectfully seek the Court's reconsideration of the

Judgments (Docs. 7697 & 7698) dismissing their cases with prejudice based on the Court's

Order and Reasons ("Order") (Doc. 7571) granting Sanofi's motions for summary judgment

based on the statute of limitations. Alternatively, Plaintiffs seek clarification and/or amendment

of the Order because, as it is currently worded, it seems to adopt Sanofi's mischaracterization of

the Administrative Master Complaint,[1] and it fails to consider Plaintiffs' education and

intelligence and Sanofi's actions when analyzing the application of contra non valentem. For the

reasons set forth in the attached supporting memorandum, the Court should (1) reconsider and

deny the motions for summary judgment and, alternatively, (2) amend and clarify its Order of

July 9, 2019 and related Judgments, declaring that the issues are individualized based upon each

Plaintiff's record, and not based on a hindsight definition in AMC paragraph 181.

        The PSC is cognizant of the Court's hesitation to revisit the Order at issue in this motion;

however, just two weeks ago, the PSC's concerns related to the wording of the Order and the

---

[1] Second Amended Master Long Form Complaint ("AMC") (Doc. 4407)

issue of prescription for Ms. Johnson and Ms. Francis were heightened when the Court questioned Sanofi's counsel about the timing of when the essential permanent/irreversible element of Plaintiffs' claimed injury occurs.  The timing is tied to whether either Plaintiff knew or should have known her hair would not re-grow.

In *Daubert* arguments presented to this Court on July 25, 2019, Sanofi spoke out of both sides of its mouth: on the one hand, it argued that Plaintiffs' claims have prescribed, and on the other hand, it clearly admitted that the timing of permanency is difficult to determine and is subject to numerous interpretations.

During the arguments, the Court learned from Sanofi that the question of when hair loss becomes permanent after use of Taxotere has not been firmly established through the existing science.  Consequently, permanency likely occurs at different times from Plaintiff to Plaintiff. When asked by the Court about when hair loss can be determined to be permanent, Sanofi's counsel could not provide an answer:

> THE COURT: So are those cases that were dismissed because of statute of limitations - - I'm just trying to figure out when we figure out when is it permanent. If they can regrow, what - - go ahead. To me it's a bit of a difficult place that we find ourselves because what I'm hearing is six months post we consider that persistent, not permanent. If there are stem cells present, then it's not permanent. How long is this claim open for and when do we decide it's permanent? Do we have to test for stem cells and as long as there's any stem cells--
> MR. SEARS: Hair loss is very multifactorial, so it's difficult to say when hair loss is permanent. . . .

*See* Ex. A, Transcript of Plaintiff's Motion to Exclude Dr. Shapiro's and Dr. Smart's Stem Cell Opinions Hrg. dated July 25, 2019 at 30:1-12.

In a later *Daubert* argument that same day, Plaintiffs' counsel, Ms. Emily Jeffcott, highlighted Sanofi's own inconsistency in defining the term "permanent" when discussing hair loss internally and with government authorities:

> Dr. Kessler looked at multiple sources for the definition of permanent alopecia, and here we start with the medical literature. The medical literature, based on Dr. Kessler's review, was consistent to show that six months equated with permanent alopecia. But <u>as Sanofi correctly pointed out in their reply brief, there is other medical literature out there that says a year, two years is, in fact, sufficient for that determination of permanent alopecia.</u> Among all the definitions present, Dr. Kessler went with six months from the medical literature. However, he also looked at the <u>definitions provided by Sanofi internally, and that was four years by Dr. Palatinsky, which is Sanofi's global safety officer. In addition, Sanofi reported in their safety report -- which I believe was provided to multiple regulatory agencies -- that alopecia is persistent at 12 months, and then in 2015 Sanofi used two years.</u> So Dr. Kessler considered multiple definitions.

Ex. B, Transcript of Motion to Exclude Expert Testimony of David Z. Kessler, M.D., J. D. Hrg. dated July 25, 2019 at 61:18-62:9 (emphasis added). Ms. Jeffcott then described the various time periods advanced as to when the hair re-growth condition becomes permanent:

- Sanofi's Global Safety Officer, Dr. Emanuel Palatinsky- reasonable to consider alopecia permanent if the alopecia lasted for more than four years following treatment with Taxotere.[2]

- Sanofi's Periodic Safety Update Report (2011)- alopecia not recovered after 12 months from the end of a docetaxel chemotherapy regime.[3]

- Sanofi's response to request by FDA (2015)- irreversible alopecia is alopecia lasting more than 2 years in cases associated with Taxotere use.[4]

- Medical literature- complete loss of growth or partial regrowth at least 6 months after chemotherapy.[5]

---

[2] Ex. A to Sanofi Defendants' Motion to Exclude Expert Testimony of David A. Kessler, M.D., J.D., Kessler Report at 21, ¶83
[3] Kessler Report at 21, ¶84
[4] Kessler Report at 21, ¶85

The Order appears to set a bright-line timing of actual or constructive notice of onset of permanency at 6 months following the completion of chemotherapy, relying on Sanofi's interpretation of a scientific definition in paragraph 181 of the AMC.  As both the inconsistent time periods advanced by Sanofi and the dialogue between the Court and Sanofi demonstrate, there is no magic date to declare "permanency."   Based on Sanofi's admission in open Court and the multiple definitions Sanofi itself has used to define permanent hair loss, the Order improperly pinpoints actual or constructive notice of permanent hair loss in Ms. Johnson and Ms. Francis as having begun at 6 months post chemotherapy.

Additionally, the Court's reliance on paragraph 181 of the AMC as fact is contrary to the accepted classification of an AMC as administrative in nature, done for efficiency. Neither Plaintiff's short form complaint ("SFC") alleges their hair's failure to grow began 6 months after chemotherapy, nor does the AMC.[6] Moreover, there are material facts in dispute over when Plaintiffs individually developed their permanent injury (and when they had sufficient notice thereof).

Further, the Court seemed to overlook evidence of each Plaintiffs' education and intelligence as well as Sanofi's conduct in not revealing the true risk associated with Taxotere until 2015. The facts of the Plaintiffs' backgrounds and Sanofi's actions must be examined to determine the application of the longstanding equitable/jurisprudential doctrine of contra non valentem which discusses  these concepts.  At the very least, inferences from facts presented in

---

[5] Kessler Report at 20, ¶81.  Here, Dr. Kessler refers to numerous scientific publications, some of which use "at least 6 months after chemotherapy" for purposes of analyzing the data, another refers to a case report where the patient was 13 months after chemotherapy, and then an internal Sanofi document discussing various definitions to be considered when analyzing the data including "more than 2 years" and ">6 months" (SANOFI_01021777).

[6] Docs. 5734-4 (Johnson SFC) & 6081-2 (Francis SFC). As set forth in the attached supporting memorandum, the medical literature and documents produced by Sanofi show that "permanent alopecia" may not even be knowable until 4 years beyond chemotherapy.  The SFC allegations of each Plaintiff in section 12 do not say exactly when these Plaintiffs *were aware of the* permanent injury they claim; rather, the exemplar form only asks for *approximate date of onset*.

both Ms. Francis' and Ms. Johnson's cases may be drawn in their favor such that a jury can make factual determinations before the Plaintiffs receive the death knell of a finding that liberates Sanofi from responsibility.

Rule 59(e) of the Federal Rules of Civil Procedure permits any party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." "The Fifth Circuit recognizes that a motion to reconsider a dispositive pre-trial motion, including a motion to dismiss, is analogous to a motion to 'alter or amend the judgment' under Rule 59(e) of the Federal Rules of Civil Procedure or a motion for 'relief from judgment' under Rule 60(b)."[7] A motion filed under Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[8] Under Rule 59(e), a district court enjoys "considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration."[9]

Because of the potential prejudice to the thousands of other women who also are Plaintiffs in this MDL, in light of Sanofi's admission that there is no precise time to determine permanency, and in order to correct certain factual errors, the PSC is compelled to respectfully seek reconsideration and/or clarification or amendment of the Order and denial of Sanofi's motions for summary judgment.

[7] In re Ford Motor Co. Bronco II Prod. Liab. Litig., 909 F. Supp. 400, 409 (E.D. La. 1995) (citing Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994); Charles L.M. v. Ne. Indep. Sch. Dist., 884 F.2d 869 (5th Cir. 1989)).
[8] Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (citations omitted); *see also* Advocare Int'l LP v. Horizon Labs., Inc., 524 F.3d 679, 691 (5th Cir. 2008).
[9] *Lavespere*, 910 F.2d at 174.

Dated: August 6, 2019

Respectfully submitted,

/s/ Richard L. Root
Betsy J. Barnes # 19473
Richard Root #19988
Morris Bart, LLC
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Phone: (504) 525-8000
Fax: (504) 599-3392
bbarnes@morrisbart.com
rroot@morrisbart.com

*Counsel for Plaintiff, Deborah Johnson*

/s/ T. Aaron Stringer
T. Aaron Stringer (UT #12681)
LOWE LAW GROUP
6028 S. Ridgeline Dr., Suite 200
Ogden, UT 84405
Phone: (385) 298-0175
Fax: (801) 656-0997
aaron@lowelawgroup.com

*Counsel for Plaintiff, Tanya Francis*

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN
DAVID MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ Dawn M. Barrios
DAWN M. BARRIOS