# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  TAXOTERE (DOCETAXEL)      *       16-MD-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *       Section H
                                  *
Relates to:  16-CV-17144          *       July 25, 2019
                                  *
                                  *       10:00 a.m.
* * * * * * * * * * * * * * * * *
```

ORAL ARGUMENT BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE

Appearances:

For the Plaintiffs:    Barrios Kingsdorf & Casteix, LLP
                       BY:  DAWN M. BARRIOS, ESQ.
                       701 Poydras Street, Suite 3650
                       New Orleans, Louisiana 70139

For the Plaintiffs:    Pendley Baudin & Coffin, LLP
                       BY:  CHRISTOPHER L. COFFIN, ESQ.
                       1515 Poydras Street, Suite 1400
                       New Orleans, Louisiana 70112

For the Plaintiffs:    Morgan & Morgan, P.A.
                       BY:  EMILY C. JEFFCOTT, ESQ.
                       700 S. Palafox Street, Suite 95
                       Pensacola, Florida 32502

For the Plaintiffs:    Gainsburgh Benjamin David Meunier
                         & Warshauer, LLC
                       BY:  M. PALMER LAMBERT, ESQ.
                       1100 Poydras Street, Suite 2800
                       New Orleans, Louisiana 70163

Case 2:16-md-02740-JTM-MBN Document 7857-3 Filed 08/06/19 Page 3 of 4

61

11:39  1  data -- the TAX316, TAX301 -- the pooled analysis done by
2  Dr. Madigan, as well as the FAERS and the internal
3  pharmacovigilance databases that Dr. Madigan also reviewed.
4  All of those have pre-2011 data that establish a relationship,
5  that causal association between Taxotere and permanent
6  alopecia.
7           Sanofi also takes issue with Dr. Kessler's
8  definition.  Your Honor, quite frankly, I was a little bit
9  confused by Sanofi's argument.  In their original brief, Sanofi
10 seemed to complain that Dr. Kessler didn't apply a consistent
11 definition, that he had multiple definitions going on, and then
12 in their reply brief -- and Mr. Ratliff kind of cleared this
13 up -- it's more about the six-month definition.
14          I think what I'm going to start out with is
15 there isn't really a Dr. Kessler definition, and I think what
16 would be good is to look really at how he defined it in his
17 report.  I'll zoom in.
18          Dr. Kessler looked at multiple sources for the
19 definition of permanent alopecia, and here we start with the
20 medical literature.  The medical literature, based on
21 Dr. Kessler's review, was consistent to show that six months
22 equated with permanent alopecia.  But as Sanofi correctly
23 pointed out in their reply brief, there is other medical
24 literature out there that says a year, two years is, in fact,
25 sufficient for that determination of permanent alopecia.

11:40

1                 Among all the definitions present, Dr. Kessler
2     went with six months from the medical literature.  However, he
3     also looked at the definitions provided by Sanofi internally,
4     and that was four years by Dr. Palatinsky, which is Sanofi's
5     global safety officer.  In addition, Sanofi reported in their
6     safety report -- which I believe was provided to multiple
7     regulatory agencies -- that alopecia is persistent at
8     12 months, and then in 2015 Sanofi used two years.  So
9     Dr. Kessler considered multiple definitions.
10                 In fact, in his analysis of the incidence rates
11    of permanent alopecia, he didn't just apply six months.  He
12    considered these multiple definitions to ensure that the
13    reliability of his analysis was consistent no matter how you
14    defined it, and that's the point.  When he looked at it using
15    six months, a year, two years, 55 months, eight years,
16    ten years, it all came back to a sufficient incidence rate to
17    warrant inclusion of a warning of permanent alopecia in the
18    Taxotere label.
19                 Now, there's one final point I would like to
20    make, Your Honor.  Ms. Byard brought this up in her initial
21    arguments regarding whether or not Dr. Kessler had the
22    capability to look at each individual case report to assess
23    whether or not it should have been included, but the reality is
24    under a proper methodology you don't do that.
25                 Specifically, FDA guidance says when you are