UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| THIS DOCUMENT RELATES TO: | SECTION "H" (5) |
| Barbara Earnest, Case No. 16-cv-17144 | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
<u>MOTION TO CONTINUE TRIAL</u>**

As stated by the Honorable Eldon E. Fallon, "[t]he ultimate purpose of holding bellwether trials . . . [is] not to resolve the thousands of related cases pending in [an] MDL in one 'representative' proceeding, *but instead to provide meaningful information and experience to everyone involved in the litigations*." Eldon E. Fallon et. al., <u>Bellwether Trials in Multidistrict Litigation</u>, 82 Tul. L. Rev. 2323, 2332 (2008) (emphasis added).  Trial of the *Earnest* matter is just over one month away.  As one of the first bellwether cases in MDL 2740, *Earnest* is the vehicle by which significant legal and evidentiary issues are being decided.  The PSC concedes that the Court's rulings in the bellwether trial pool cases impact thousands of other plaintiffs[1] and provide the framework from which the remainder of this MDL will be litigated.

Following oral argument on August 8, 2019, the Court discussed with the parties the Court's ability to issue both rulings and memorandum opinions in the outstanding dispositive and *Daubert* motions prior to trial. Those motions are as follows:

Motion to Exclude John Thompson (Rec. Doc. 6141);

Motion to Exclude David Madigan (Rec. Doc. 6144);

---

[1] Rec. Doc. No. 7857 - Plaintiff's Motion for Reconsideration of the dismissal of the *Francis* and *Johnson* matters.

    Motion to Exclude David Kessler (Rec. Doc. 6146);

    Motion to Exclude Ellen Feigal (Rec. Doc. 6149);

    Motion to Exclude Kevin Bianchini (Rec. Doc. 6151);

    Motion to Exclude Alan Bauman (Rec. Doc. 6153);

    Motion to Exclude Laura Plunkett (Rec. Doc. 6155)

    Omnibus Motion to Preclude Improper Expert Testimony (Rec. Doc. 6158);

    Motion to Exclude Expert Testimony of Specific Causation (Rec. Doc. 6162);

    Motion to Exclude Expert Testimony of General Causation (Rec. Doc. 6163);

    Motion for Summary Judgment based on Preemption (Rec. Doc. 6186);

    Motion to Exclude David Spiegel (Rec. Doc. 6140);

    Motion to Exclude Vivian Fonseca (Rec. Doc. 6147);

    Motion to Exclude Testimony that relies on Dr. Michael Kopreski (Rec. Doc. 6160);

    Motion to Exclude Dr. Shapiro's and Dr. Smart's Stem Cell Opinions (Rec. Doc. 7322);

    Motion to Strike Supplemental Report of Dr. David Spiegel (Rec. Doc. 7863).

There are also pending before the Court motions by both parties for post-judgment relief related to the Court's prior summary judgment rulings on the issues of Statute of Limitations and the Learned Intermediary Doctrine. Specifically, Sanofi has filed a Motion seeking certification of the learned intermediary decision for interlocutory appeal under 28 U.S.C. § 1292. (Rec. Doc. No. 7783). This Motion will be submitted to the Court for decision on August 14, 2019. Sanofi has sought oral argument on the Motion. (Rec. Doc. 7883) Further, Plaintiffs have filed a Motion to reinstate the *Francis* case as the primary bellwether plaintiff by asking the Court to reconsider its statute of limitations ruling. (Rec. Doc. No. 7857). This Motion will not be ripe for submission until August 28, 2019.

In addition to the above, there are currently 42 Motions *in limine* pending that relate to the admissibility of central evidence in this case. And to further compress matters, the Court advised the parties that, on August 19, 2019, it commences with a criminal trial of former DEA agent Chad Scott in *United States vs. Scott*, No. 17-181, Sec. "H", (E.D. La. 2019). Thus, a significant portion of the final month before the *Earnest* trial will be necessarily committed to another important case on the Court's docket.

The Court deserves the opportunity to carefully consider and make reasoned, thorough rulings on these complex legal and evidentiary issues. All litigants in MDL 2740 are entitled to a robust and comprehensive evaluation of the pending pretrial issues. The parties also need to have the ability to review and understand the rulings prior to preparing their cases to be presented to the jury, should those respective cases not be dismissed. And despite the best efforts of the parties and the Court, there is simply insufficient time for that to happen in light of the volume and complexity of the remaining issues, as well as the other demands of the Court's docket. Therefore, Sanofi respectfully requests a brief continuance of the trial in the *Earnest* matter to permit the Court sufficient time to adequately and appropriately issue written rulings to resolve the complex legal, evidentiary, and post-judgment issues pending before the Court. As explained herein, good cause exists for a continuance and a brief adjournment of the *Earnest* trial will not prejudice the parties.

## **LAW ARGUMENT**

Trial continuances should be granted where good cause is shown. *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997); Fed. R. Civ. P. 16(b)(4). To determine "good cause," courts evaluate four factors: (1) "the explanation for the requested extension," (2) the importance of the requested extension, (3) the possibility of prejudice and (4) "the availability of a continuance to cure the prejudice." *Wade v. Donahoe*, No. 13-cv-5442, 2015 WL 151455 at *1 (E.D. La. Jan. 9, 2015)

(citing *Fahim v. Marriot hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)). Courts must also assess the totality of the circumstances, "including such factors as **_the amount of time available_**, the moving party's role in shortening the time needed, **_the likelihood of prejudice from denial of the motion_**, the facts of the particular case, **_the complexity of the case_**, and all of **_the demands on counsel's time and the court's_**." *Wade*, 2015 WL 151455 at *1 (citing *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009) (emphasis added)).

These factors, when considered against the facts and circumstances presently existing in this MDL, establish good cause for a brief continuance of the *Earnest* trial. It is no one's fault that this MDL is complex or that numerous significant motions remain pending before the first trial date. The parties and the Court have worked hard to significantly advance this MDL and prepare for the first *bellwether* trial. Notwithstanding those efforts, though, more time is needed to complete pretrial work. More time is needed because of the volume of the remaining issues. More time is need because of the complexity of the remaining issues – one of which must now be decided by the Court as opposed to the jury. More time is needed to allow the parties to understand the rulings and prepare their cases for trial. More time is needed to allow the Court to determine whether post-judgment relief should be permitted to either side, which may place the *Earnest* case in the Fifth Circuit, or reinstate the *Francis* case as the first bellwether. And there is simply no reason not to take more time when it is needed.

### A. THERE IS INSUFFICIENT TIME TO MEANINGFULLY RESOLVE THE REMAINING PRETRIAL MOTIONS.

As the Court is well aware, the *Taxotere* MDL is a legally and scientifically complex matter which includes a number of scientific and regulatory components that have required lengthy briefing. As of the date of this Motion—which is 39 days before the currently scheduled start of the *Earnest* bellwether trial—there are presently 16 dispositive and *Daubert* Motions pending

before this Court. This is in addition to the 42 Motions *in Limine* that must be resolved regarding the admissibility of evidence at trial. These 58 Motions must necessarily be decided before both Sanofi and Plaintiff are able to meaningfully prepare their respective cases for trial due to the nature of the outstanding legal issues in this matter—including the pending Motion for Summary Judgment on Preemption, Motion to Exclude Expert Testimony of Specific Causation, and Motion to Exclude Expert Testimony of General Causation. The outcome of the Court's rulings on these pending Motions will determine how the parties: (1) complete deposition designations for a total of 32 fact and company witnesses, (2) choose and prepare their trial witnesses, (3) address evidentiary and admissibility issues with over 3,600 exhibits (with plaintiffs alone having listed some 2,250 exhibits) and (4) generally prepare for trial. Indeed, there is a voluminous amount of meaningful work that must be completed before the start of trial—work that requires the careful review and analysis of the Court's pending orders. Thus, for purposes of trial preparation alone, a continuance is necessary to address all pending dispositive and pre-trial motions before the Court.

      Furthermore, consideration should be given to the fact that the *Earnest* case in not only an MDL bellwether case, but *the first bellwether case* to be tried in MDL No. 2740. As stated above, "[t]he ultimate purpose of holding bellwether trials . . . [is] not to resolve the thousands of related cases pending in [an] MDL in one 'representative' proceeding, ***but instead to provide meaningful information and experience to everyone involved in the litigations***." Eldon E. Fallon et. al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2332 (2008) (discussing the "modern informational approach" to MDL bellwether trials and the purpose and utility of holding bellwether jury trials in the *In re Vioxx* and *In re Propulsid* MDLs) (emphasis added). As opposed to the early "binding approach" of MDL bellwether trials—in which bellwether decisions were binding on related claimants in a manner similar to class action adjudications—the purpose of

bellwether trials in the so-called "modern" era is for "informational purposes and for testing various theories and defenses in a trial setting." *Id.* at 2337. And while the specific outcomes of bellwether trials in the modern era are no longer binding on similarly situated MDL claimants, the pretrial orders, memorandum rulings, and other decisions pertaining to each bellwether trial plaintiff made by the MDL Court nonetheless profoundly inform, shape, and influence the larger MDL. As Judge Fallon has noted: "perhaps more importantly, bellwether trials can precipitate and inform settlement negotiations by indicating future trends, that is, by providing guidance on how similar claims may fare before subsequent juries." *Id.* at 2338.

The purpose of the first bellwether case in the *Taxotere* MDL is the same. The resolution of the pending dispositive and *Daubert* Motions, as well as the Motions *in Limine*, in the *Earnest* matter will provide important and meaningful guidance to the parties that will necessarily shape the course of the larger MDL. For this reason, it is imperative that these motions are meaningfully considered and fully resolved and that the parties have adequate time to fully analyze and implement the Court's rulings on each motion in the preparation of their respective cases for the first bellwether trial. No parties benefit and justice is not advanced if the Court is rushed or overburdened in the consideration of these complex legal and evidentiary issues. Because there is insufficient time for the Court to make rulings and issue memorandum opinions on these important motions, good cause exists for a continuance of the current trial date.

### B. THE NEW STANDARD IMPOSED BY *ALBRECHT* REQUIRES A CONTINUANCE.

When Sanofi filed its Motion for Summary Judgment based on Preemption under the Supremacy clause of the United States Constitution, the Supreme Court had not yet issued its decision in *Merck Sharp & Dohme Corp. v. Albrecht,* 139 S. Ct. 1668 (2019). Sanofi's original Motion was presented under the governing rules for granting summary judgment when there exists

00625616                                6

no genuine issue of material fact. Since the *Albrecht* decision was issued, however, the parties have filed numerous pleadings and supplements related to the preemption issue. And while the parties disagree about the impact on the substance of the preemption issue conferred by the *Albrecht* decision, there can be no dispute as to the impact on the procedural manner in which preemption must now be resolved in pharmaceutical products liability cases - preemption is a legal issue that must be resolved by the Court. Thus, no longer may a court simply defer the issue of preemption to the jury on the grounds that both sides have presented evidence and made compelling arguments such that there exists material factual disputes. Instead, this Court must decide preemption. As explained by the *Albrecht* Court, the question of preemption "often involves the use of legal skills to determine whether agency disapproval fits facts that are not in dispute." *Id.* at 1679. "Judges, rather than lay juries, are better equipped to evaluate the nature and scope of an agency's determination, and are better suited to understand and to interpret agency decisions in light of the governing statutory and regulatory context." *Id.* And, "[w]hile contested brute facts will sometimes prove relevant to a court's legal determination about the meaning and effect of an agency decision, such factual questions are subsumed within an already tightly circumscribed legal analysis…" *Id.*

Therefore, this Court must evaluate the evidence and make a legal determination of whether there exists clear evidence that FDA made an affirmative decision to preserve the alopecia language as it did after it fully informed the FDA of the justifications for the warning plaintiffs urge as required by state law. As Sanofi argued, there can be no clearer evidence than the fact that FDA refused in 2015 to implement the label change that Plaintiffs claim should have been made in 2009, that it included a thorough analysis of this precise risk to the Agency in 2011, and that the Agency, multiple times between 2011 and before 2015, preserved the label language on alopecia

as is. However, the submissions for the preemption issue are legion and it will require significant review and analysis in order to make a reasoned decision.

Confronted with the altered landscape imposed by *Albrecht*, at least one other MDL judge has continued the first bellwether trial in order to have time to properly take up and resolve the preemption question. In the *Zofran* MDL, the Honorable F. Dennis Saylor had issued a ruling denying the defendants' Motion for Summary Judgment based on preemption prior to the *Albrecht* decision. *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 368 F. Supp. 3d 94 (D. Mass. 2019). The Court determined that there existed a factual dispute that should be resolved by the jury. *Id.*

However, after *Albrecht*, Judge Saylor recognized that the Court and not the jury must now make the determination based on significant and conflicting evidence and arguments presented by the parties. Therefore, on July 16, 2019, Judge Saylor issued an order continuing the first bellwether trial in the Zofran MDL so that the issue of preemption could properly be determined by the Court, as opposed to being deferred to the jury on the grounds that a factual dispute exists. That bellwether trial was scheduled to commence on September 16, 2019 – the exact same trial date as *Earnest*. Notably, in connection with its continuance, the Court requested the parties to provide proposed language to invite FDA to file an amicus brief on the preemption issue. Thus, recognizing its obligation to make a determination on the significance of certain agency actions, Judge Saylor decided to invite the FDA to answer the questions directly.[2]

This Court should exercise its discretion in the same deliberate manner as Judge Saylor. *Albrecht* now requires a completely different approach to the resolution of preemption in

---

[2] Consideration has also been given to courts holding *Markman*-type evidentiary hearings in the wake of *Albrecht*, which is due exploration here too. *See Albrecht*, 139 S. Ct. at 1679 (citing *Markman v. Westview Instruments, Inc.*, 517 U. S. 370, 388, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).

pharmaceutical cases. That approach simply cannot be accomplished on the schedule currently pending in this MDL.

### C. THE PENDING POST-JUDGMENT MOTIONS SUPPORT A BRIEF CONTINUANCE

Defendants' Motion Pursuant to 28 U.S.C. § 1292 to Certify the Court's July 9, 2019 Summary Judgment Order for Interlocutory Appeal and Adjourn the *Earnest* Trial Pending Appeal remains pending before the Court. (Rec. Doc. 7783). The Motion seeks appellate review of a controlling issue of law relevant to this litigation and will be submitted to the Court for decision on August 14, 2019. This is in addition to Plaintiffs' Motion for Reconsideration of the Court's Orders Dismissing Tanya Francis and Deborah Johnson, which is not ripe for review until August 28, 2019. (Rec. Doc. 7857).

In its Motion to Certify for Interlocutory Appeal, Sanofi seeks certification of the July 9, 2019 summary judgment order to the U.S. Court of Appeals for the Fifth Circuit so that it can address the controlling question of whether, under Louisiana's learned-intermediary doctrine, a plaintiff can establish the proximate causation element of a failure-to-warn claim based on evidence that the plaintiff may have chosen to receive a different chemotherapy treatment even if the evidence established that the treating oncologist would not have changed his or her prescribing decision. (*See* Rec. Doc. 7783-1, at p. 3). Significantly, a determination by the Fifth Circuit of this issue not only will determine whether Ms. Earnest's case should proceed to trial, *but also will instruct other similar cases pending in the MDL. Id.* As discussed both above and in Sanofi's Motion to Certify, MDL bellwether trials serve the function of (a) testing legal and factual theories and (b) informing and shaping the larger MDL, and therefore are intended to assist the parties in resolving the larger MDL. *See id.* (citing *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) (bellwether trials are designed "to achieve [a] value ascertainment function for settlement

purposes or to answer troubling causation or liability issues common to the universe of claimants[.]")). Accordingly, this determination should be necessarily be made *before* this Court presides over the *Earnest* trial.

With this in mind, Sanofi's Motion to Certify also prayed that the Court adjourn the *Earnest* trial pending the Fifth Circuit's decision on the proposed interlocutory appeal, noting that such an adjournment will serve the interests of judicial economy because the causation analysis under the learned-intermediary doctrine is not limited to this case alone; rather, the doctrine will apply to each plaintiff asserting a failure-to-warn claim under Louisiana law and the law of other jurisdictions that have the same or similar doctrine. *Id.* Thus, the Fifth Circuit should have the opportunity to address this critical issue before the Court proceeds with a bellwether trial in this MDL, and thus this constitutes good cause for the continuance of the *Earnest* trial.

Additionally, Plaintiffs have filed a Motion for Reconsideration of the Court's July 9, 2019 Order Dismissing Tanya Francis and Deborah Johnson. (Rec. Doc.7857). Amongst the Reconsideration Motion's inventory-wide impacts, Plaintiffs suggest they *still* remain unable to define the injury alleged in this years-old litigation and all-but make the case for the Court in favor of a "bight-line" medical diagnosis order for basic corroboration of the fact and cause of permanent alopecia in these women (all assuming such a diagnosis can even be reliably made). On the basis of the Court's ruling, Plaintiffs' Liaison Counsel indicates that Plaintiffs intend to amend the Master Complaint—which was adopted by Court Order on July 25, 2017 and is the applicable Rule 8 pleading in the *Barbara Earnest* case. The fact that Plaintiffs have moved for reconsideration of the same Order as is at issue in Sanofi's Motion to Certify for Interlocutory Appeal provides a further basis for the continuance of the *Earnest* trial. As noted in Sanofi's Motion to Certify, it would be efficient for the learned-intermediary issues to be taken up together

with the Plaintiffs' statute-of-limitations appeal since the Fifth Circuit's review of those questions will also potentially impact the trial standards and evidence. (Rec. Doc. 7783-1).

Furthermore, if Plaintiffs' Motion for Reconsideration is granted as to the claims of Tanya Francis, Ms. Francis' case will be reinstated and Tanya Francis will once again become the first bellwether trial plaintiff in MDL No. 2740. And like Sanofi's Motion to Certify for Interlocutory Appeal on the appropriate application of the learned intermediary doctrine to plaintiffs' MDL claims, the Court's decision on the application of the statute of limitations to claims similar to those of Ms. Francis impacts the larger inventory of plaintiffs in this MDL.  Thus, the motions for post-judgment relief filed by both Sanofi and Plaintiffs warrant a continuance of the *Earnest* trial is warranted.  The outcome of those motions could dramatically alter the procedural status of both *Earnest* and *Francis* and the Court should take the time to thoroughly consider and rule upon the issues presented by the parties.

### D. THE PLAINTIFF'S NEW FAILURE TO WARN THEORY REQUIRES A CONTINUANCE

If the *Earnest* trial is to proceed on September 16, 2019, it will require that the Court deny Sanofi's Motions based on preemption and as to the admissibility of the opinions of Dr. David Kessler.  As argued by Sanofi, Dr. Kessler intends to testify that a "W"arning that Taxotere *causes* permanent or persistent alopecia should have been included in "Warnings and Precautions" section of the Taxotere label as early as 2009, even though in 2015 the FDA required no such alteration to the label and instead only added "cases of permanent alopecia have been reported" to the Adverse Events section of the label.

Perhaps recognizing the fault in their ways, Plaintiff's counsel announced during oral argument that Dr. Kessler would, instead, testify that FDA's 2015 label change should have been given earlier. That is not contained in the conclusions of Dr. Kessler's report and is not an opinion

that has been expressed in this case.  It is not an opinion that Sanofi has discovered and it is not a theory of the case that Sanofi has prepared to defend.  Thus, if instead of dismissing the *Earnest* lawsuit outright (as it should) the Court were to permit the Plaintiffs to avoid preemption by allowing Plaintiffs to offer a different labeling theory one month away from trial, then Sanofi must have time to discover and defend the theory that Plaintiffs claim that Dr. Kessler will now offer.

### E.  BECAUSE *EARNEST* WAS SLATED AS THE THIRD (ALTERNATE) TRIAL, THERE IS STILL DISCOVERY TO COMPLETE BEFORE TRIAL

With the parties' attention on *Durden* and then *Francis*, both sides mutually agreed to conserve resources and prioritize certain discovery over others.  Defendant's experts Drs. Jerry Shapiro and David Spiegel are two examples.  Plaintiffs in June deferred taking the deposition of Dr. Jerry Shapiro on his case-specific expert opinions in *Earnest*, recognizing it would not be the first trial case.  Plaintiffs still have not taken the deposition.  Dr. Shapiro is Sanofi's general and specific dermatology expert and its counterpart to Dr. Antonella Tosti.  Plaintiffs never deposed Defendant's expert psychologist Dr. David Spiegel.  Dr. Spiegel offers case-specific opinions on Ms. Earnest based on, among other things, his review of Barbara Earnest's medical records and Plaintiffs' Experts' interviews of Ms. Earnest.  Plaintiffs' experts initially did not review Ms. Earnest's medical records, then supplemented their reports, were re-deposed, and all along the way continued conducting interviews with Barabara Earnest.  On review of the several months of supplemental discovery by Plaintiffs' experts, Dr. Spiegel likewise supplemented his report, which Plaintiff now seeks to strike.  Plaintiff intends to depose Dr. Spiegel now (after determining not to depose him before and when the *Earnest* case was third in line) should the Court deny their Motion to Strike.  All of this discovery must now be addressed beyond the other demands of the motion practice and trial preparation, which was not able to be completed earlier.

### F. A BRIEF CONTINUANCE WILL NOT PREJUDICE THE PARTIES OR IMPACT THE REMAINDER OF THE MDL SCHEDULE

There is simply no articulable basis to suggest that prejudice will flow from the Court taking the necessary time to make reasoned and complete rulings in the first bellwether trial in an MDL. A brief continuance will not harm the parties and it will not delay the ultimate resolution of this MDL. The second bellwether trial is not scheduled to occur until March of 2020. Thus, there is more than ample time for a brief continuance of the *Earnest* trial without disrupting the remaining MDL schedule.

### CONCLUSION

As stated above, the Court deserves the opportunity to carefully consider and make reasoned, thorough rulings on the complex legal and evidentiary issues pending in this MDL. All litigants are entitled to a robust and comprehensive evaluation of the pending pretrial issues and the parties should have the ability to review and understand the rulings prior to presenting their cases to the jury, should those respective cases not be dismissed. And despite the best efforts of the parties and the Court, there is simply insufficient time for that to happen in light of the volume and complexity of the remaining issues, as well as the other demands of the Court's docket. Therefore, Sanofi respectfully requests a brief continuance of the trial in the *Earnest* matter to permit the Court sufficient time to adequately and appropriately issue written rulings to resolve the complex legal, evidentiary, and post-judgment issues pending before the Court. Good cause exists for a continuance and a brief adjournment of the *Earnest* trial will not prejudice the parties.

Respectfully submitted,

_/s/ Douglas J. Moore_
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
Kelly Bieri
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi US Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

_/s/ Douglas J. Moore_