UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2740** |
| **THIS DOCUMENT RELATES TO:** | **SECTION "H" (5)** |
| Barbara Earnest, Case No. 16-cv-17144<br>Jacqueline Mills, Case No. 17-cv-2689 | |

**REPLY BRIEF OF DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI US SERVICES INC. IN SUPPORT OF THEIR MOTION PURSUANT TO 28 U.S.C. § 1292(b) TO CERTIFY THE COURT'S JULY 9, 2019 SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL AND ADJOURN THE *EARNEST* TRIAL PENDING THE APPEAL**

**INTRODUCTION**

This Court should certify its learned-intermediary decision in *Earnest* and *Mills* to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b). Immediate appellate review of this controlling legal issue meets each of the prongs of the interlocutory appeal standard: it presents a dispositive question of law, on which courts substantially differ, and resolution of the standard for proximate causation will materially advance this litigation, in which the same legal question is expected to arise in thousands of cases in the MDL.

Plaintiffs' opposition to sanofi-aventis U.S. LLC's and Sanofi US Services Inc.'s ("Sanofi's") Motion for Interlocutory Appeal is premised on three incorrect assertions. *First*, Plaintiffs incorrectly claim that genuine factual disputes preclude review of the Court's learned-intermediary decision. Plaintiffs' argument misstates the legal issue proposed for review, which does not turn on disputed facts. Sanofi seeks interlocutory review to decide a controlling legal

1

question: whether, under Louisiana's and Georgia's learned-intermediary doctrine, a plaintiff can establish the proximate causation element of a failure-to-warn claim based on evidence that the plaintiff may have chosen to receive a different chemotherapy treatment even if the evidence established that the treating oncologist would not have changed his or her prescribing decision. The Court found a factual dispute with respect to proximate causation only *because of* its legal ruling that, in the chemotherapy context, the learned-intermediary doctrine required the jury to determine whether a warning would have changed the *patient's* treatment choice.  No dispute exists, however, that the *oncologists'* treatment decision would have remained unchanged, which is the relevant factual issue under the normal operation of learned-intermediary principles.

*Second*, without citation to law or evidence, Plaintiffs incorrectly claim that no difference of opinion among courts exists as to the standard for proximate causation under the learned-intermediary doctrine.  Plaintiffs do nothing to rebut Sanofi's explanation of how this Court's legal proximate causation standard diverges from the standard adopted by Louisiana, Georgia, and federal courts that have found a physician's prescribing decision to be dispositive under the learned-intermediary doctrine.

*Third*, Plaintiffs misrepresent Sanofi's request for a brief adjournment of the *Earnest* trial by incorrectly claiming that Sanofi seeks to "stay this entire MDL."  (Rec. Doc. 7850 ("Pls.' Opp."), at 2.)  To the contrary, Sanofi requests only that the *Earnest* trial be adjourned until the Fifth Circuit decides whether to accept certification of this interlocutory appeal, and if accepted, until resolution of that matter.  No stay of other MDL proceedings is required or requested.  That modest delay of a single bellwether trial is warranted to resolve the controlling legal question presented, which will materially advance the MDL as a whole.

This Court accordingly should certify the learned-intermediary question presented in *Earnest* and *Mills* to the Fifth Circuit, and should order a brief and limited stay of the *Earnest* trial.

## ARGUMENT

### I. PLAINTIFFS IGNORE THE DISPOSITIVE LEGAL QUESTION

Sanofi requests certification of an interlocutory appeal of the controlling legal issue of whether proximate causation is determined by a warning's effect on the physician's treatment decision or, in the case of chemotherapy, whether the Plaintiffs' potential rejection of a physician's decision may establish proximate causation. Resolution of that issue would be determinative not only of the *Earnest* and *Mills* cases—where both oncologists testified that they would have prescribed and recommended Taxotere even if a permanent alopecia warning had been provided— but also may help dispose pretrial of a large number of similar cases in this MDL. By contrast, in *Mills* and *Earnest*, a factual dispute only arose because the plaintiffs testified that a warning may have potentially changed their treatment decisions.[1] The legal question proposed for appellate review is therefore controlling and dispositive because a ruling in Sanofi's favor "would require reversal" and would "materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95-96 (D.D.C. 2003); *see also* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Jurisdiction* § 3930 (3d ed. Apr. 2019 update).

It is telling that the learned-intermediary doctrine—the core legal issue upon which the Court's summary judgment decision in *Earnest* and *Mills* hinged—is not once referenced in

---

[1] Sanofi continues to maintain that no genuine issue of fact was presented because, under an objective standard, no reasonable patient would have rejected an oncologist's recommendation of chemotherapy options based on a small risk of permanent alopecia. In neither *Earnest* nor *Mills*, moreover, did the respective oncologist testify with certainty that a warning would have changed their treatment decisions.

3

Plaintiffs' response brief. Rather, Plaintiffs focus on a red herring: the Court's determination that a genuine dispute of material fact exists. But the Fifth Circuit has held that it has jurisdiction to hear an interlocutory appeal in situations, like this one, where the appeal "presents a legal issue antecedent to the determination of whether there are genuine issues of material fact." *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996). Here, the Court's legal interpretation of the learned-intermediary doctrine was the necessary predicate to its finding that any factual dispute existed. If the Court had ruled in Sanofi's favor on the learned-intermediary doctrine, there would have been no material factual dispute because Mills's and Earnest's oncologists testified that they would have still prescribed Taxotere even if a permanent alopecia warning had been on the label. (Rec. Doc. 7783-1 ("Sanofi Memo."), at 5-6.)

The cases upon which Plaintiffs rely are inapposite because each involved challenges to factual determinations not legal questions. For example, the *Reyes* court found that a police officer's immunity "appeal amount[ed] to a challenge to the sufficiency of the evidence" rather than a legal dispute. *Reyes v. City of Richmond, Tex.*, 287 F.3d 346, 351 (5th Cir. 2002); *see also Goffney v. Carr*, 78 F. App'x 974, 975 (5th Cir. 2003) (per curiam) (also a qualified immunity case where the defendants contested factual allegations). Similarly, this case is distinguishable from *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 276 (S.D.N.Y. 2009), where the court declined to certify an interlocutory appeal from the denial of summary judgment predicated on disputed issues of fact, rather than a controlling issue of unsettled and disputed law.

The cases cited in *In re Facebook, Inc., IPO Securities & Derivative Litigation*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014) ("*Facebook IPO*"), also do not apply. In the *Facebook IPO* litigation, the challenged motion-to-dismiss rulings "were intensely fact-specific," and based on a record that was "undeveloped," "uncertain," and "incomplete." *Id.* at 534, 537. Sanofi, by

4

contrast, proposes immediate review of a discrete legal question, which will determine the appropriate legal standard for proximate causation under the learned-intermediary doctrine. The question Sanofi presents for interlocutory appeal is a "pure" legal question, not "a mixed question of law and fact." *Cf. id.* at 536. And, unlike the interlocutory appeal proposed in the *Facebook IPO* litigation, this question is one the Fifth Circuit "could answer quickly and clearly without having to study the record" in each case. *Id.* (internal quotation marks omitted).

## II. PLAINTIFFS IGNORE THE SUBSTANTIAL DIFFERENCE OF OPINION REGARDING THE STANDARD FOR PROXIMATE CAUSATION UNDER THE LEARNED-INTERMEDIARY DOCTRINE

Plaintiffs fail to refute the existence of a substantial difference of opinion regarding the legal standard for proximate causation under the learned-intermediary doctrine. Whereas this Court's decision hinged on how a warning might have changed the Plaintiffs' choice of chemotherapy treatment, Sanofi's Motion cites the many Louisiana and Georgia courts that have held that a plaintiff must prove proximate causation by demonstrating that "a proper warning would have changed the decision of **the treating physician**, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991) (emphasis added); *see* Sanofi Memo. at 8-9 (citing Louisiana, Georgia, and Fifth Circuit cases with similar holdings). This Court's opinion acknowledged that its decision diverged from this well-established rule, because it found that the learned-intermediary doctrine applies differently in the "unique" context of chemotherapy. (Rec. Doc. 7571, at 20.) That decision marks a crucial legal question affecting the disposition and trial of cases in this MDL, and about which reasonable jurists may certainly differ.

Plaintiffs' *ipse dixit* approach is to assert, without citation, that there is no substantial ground for a difference of opinion as to the governing legal standard. (Pls.' Opp. at 7.) Sanofi's Motion for Interlocutory Appeal marched through court decisions that reached different

conclusions than this Court about the applicable legal standard for proximate causation under the learned-intermediary doctrine, demonstrating this is a legal question "about which reasonable jurists can . . . debate." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010). Courts have even found a substantial ground for difference of opinion based on "a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," *APCC Servs.*, 297 F. Supp. 2d at 97, which is a much lower bar than the clear difference of opinion presented here.

### III. AN INTERLOCUTORY APPEAL OF THE LEARNED-INTERMEDIARY QUESTION WILL MATERIALLY ADVANCE THE MDL

An interlocutory appeal of the learned-intermediary question will materially advance this litigation. Contrary to Plaintiffs' assertion, waiting until final judgment in the *Earnest* case to resolve this legal issue would not be the most efficient option for this MDL. (Pls.' Opp. at 4.) Rather, as demonstrated by Sanofi's Motion, resolution of the learned-intermediary standard will decide not only whether Ms. Earnest's case should proceed to trial, but also will enable the first-round of trials to test the parties' legal and factual theories and will assist the parties in resolving the larger MDL. Interlocutory appeal of this legal issue, before the *Earnest* trial proceeds, will therefore materially advance both the MDL and the individual cases asserting claims under Louisiana and Georgia law and similar state laws.

Plaintiffs rely on *David v. Signal International, LLC*, 37 F. Supp. 3d 836 (E.D. La. 2014), to oppose interlocutory appeal, observing that the court in that case found it would not advance the litigation to certify an interlocutory appeal from a protective order that precluded one party from obtaining discovery about plaintiffs' immigration status. (*See* Pls.' Opp. at 4.) *David* is entirely distinguishable. The court in *David* rejected the request for an interlocutory appeal from the protective order because "[a]s a non-dispositive order, the reversal or affirmance of a discovery

order would seldom (if ever) eliminate the need for trial. Nor would a decision from the Fifth Circuit simplify the issues for trial or reduce the burden of discovery. If anything, vacatur[] of the protective order would make discovery even more onerous and unwieldy." 37 F. Supp. 3d at 839. In contrast to *David*, here, the Court's learned-intermediary ruling was dispositive of summary judgment in *Earnest* and *Mills*. Thus, reversal would eliminate the need for a trial, and the issue affects not only a single case, but the potential resolution of similar matters pending in the MDL. Unlike in *David*, moreover, a determination of the learned-intermediary question would not increase the burden of discovery.

Moreover, Sanofi's request for interlocutory appeal does not merely seek "[early] review of [a] difficult ruling[]," as Plaintiffs suggest. (Pls.' Opp. at 4 (first set of brackets in original) (quoting *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam).)[2] Rather, Sanofi seeks immediate appeal to determine the legal standard for an essential element of the failure-to-warn cases in this MDL. An interlocutory appeal therefore "might avoid protracted and expensive litigation." *Wright*, 359 F.2d at 785; *see also Mills*, 771 F. Supp. 2d at 273 (same). That is because resolution of this issue in Sanofi's favor would enable the Court to dispose, pretrial, of cases like *Earnest* and *Mills* in which the physician's prescribing decision would have been unchanged by a permanent alopecia warning and the only proof of proximate causation is the Plaintiffs' own assertion that a different chemotherapy treatment would have been chosen if warned of the permanent alopecia risk.

---

[2] Plaintiffs cite *Wright*, a 1966 *per curiam* opinion from the Ninth Circuit. Short of explaining the legal standard for interlocutory appeal, the panel in *Wright* offered no explanation of the underlying facts that illustrate why it found an appeal would not materially advance that litigation. As Sanofi's Motion and this Reply demonstrate, the standard for interlocutory appeal is met here.

**IV.	PLAINTIFFS MISREPRESENT SANOFI'S REQUEST FOR AN ADJOURNMENT**

Sanofi requests a brief adjournment of the *Earnest* trial pending review by the Fifth Circuit. (Sanofi Memo. at 13-14.) Sanofi explained the types of discovery and coordination among the parties that will continue should such a limited adjournment be granted. (*Id.*) Plaintiffs are incorrect that Sanofi requested a stay of the "entire MDL." (Pls.' Opp. at 2, 5.) A brief delay of the *Earnest* case to allow the Fifth Circuit to consider and resolve the learned-intermediary and causation standard will allow the Court, the jury, and the parties to save the time and resources that are required to try a legally and factually complex case such as this one.

Plaintiffs, moreover, do not deny that they seek to take their own appeal from this Court's July 9, 2019 Summary Judgment Order, and they have requested that the Court reconsider that Order. (Rec. Doc. 7857.) It would be efficient and proper for the Fifth Circuit to take up the learned-intermediary question at the same time as the Plaintiffs' appeal.

## CONCLUSION

This Court should accordingly certify its July 9, 2019 Summary Judgment Order to the Fifth Circuit to decide the learned-intermediary causation issue. The Court should further order a limited adjournment of the *Earnest* trial pending a decision by the Fifth Circuit on whether to accept an interlocutory appeal and, if accepted, until resolution of that appeal.

Date: August 12, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

8

>Harley Ratliff
>Adrienne L. Byard
>**SHOOK, HARDY & BACON L.L.P.**
>2555 Grand Boulevard
>Kansas City, Missouri 64108
>Telephone: 816-474-6550
>Facsimile: 816-421-5547
>hratliff@shb.com
>abyard@shb.com
>
>
>Ilana H. Eisenstein
>Rachel A.H. Horton
>**DLA PIPER LLP (US)**
>1650 Market St., Suite 5000
>Philadelphia, PA 19103
>Telephone: (215) 656-3351
>Facsimile: (215) 606-3351
>Ilana.Eisenstein@dlapiper.com
>Rachel.Horton@dlapiper.com
>
>*Counsel for sanofi-aventis U.S. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

>*/s/ Douglas J. Moore*