**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)            **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                  **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

**Barbara Earnest, Case No. 2:16-cv-17144.**

**REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 27:
MOTION TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING COMPANY
CONDUCT THAT POST-DATES PLAINTIFF'S CHEMOTHERAPY TREATMENT**

In her Opposition, Plaintiff describes affirmatively using post-2011 remedial measures to meet her burden of proof on her failure to warn claim, under the guise of impeachment or feasibility. Plaintiff's described purposes are plainly barred by Rule 407. Likewise, Plaintiff does not identify any "issues of the litigation" to which such evidence is relevant or probative, other than those for which the evidence is expressly inadmissible under Rule 407. Actions taken *after* Plaintiff underwent Taxotere treatment and suffered her alleged injury are barred by Rule 407. They are factually irrelevant to her case, unduly prejudicial, and should be excluded. *See* Rules 401–403; 407.

    **A.**    **No Exception To Rule 407 Applies Here.**

Plaintiff suggests that she will use evidence of Sanofi's post-2011 remedial measures, including its internal analysis and published label changes, to show:

- "that Sanofi could and should have modified the Taxotere label prior to Plaintiff's chemotherapy" (Plf's Opp. at 1);

- "that the company misrepresented its Taxotere safety profile and minimized significant risks associated with the drug" (Plf's Opp. at 2);

- "Sanofi's failures in 2011" (Plf's Opp. at 3);

- Proof on "the issue of notice and failure to warn" (Plf's Opp. at 3);

- "the company's knowledge of the adverse event" (Plf's Opp. at 4);

- "that Defendants knew or should have known […] that patients taking Taxotere were at an increased risk of irreversible alopecia" (Plf's Opp. at 4); and

- "that the warnings on the Taxotere label were [in]adequate at the time of Plaintiff's chemotherapy treatment" (Plf's Opp. at 5).

Plaintiff suggests that these purposes constitute impeachment or establish feasibility. This is incorrect. These uses suggest negligence, culpable conduct, product defect, and a need for a warning or instruction—uses expressly barred by Rule 407. In other words, these are issues on which Plaintiff bears the burden of proof at trial (not matters of impeachment or feasibility which arise in rebuttal to a defendant's arguments) and Rule 407 expressly forbids Plaintiff from relying on such evidence as affirmative proof of her claim.

There are no impeachment or feasibility purposes for this evidence. Sanofi has not and will not at trial contradict the statements made in the 2015 or 2018 labels that "cases of permanent hair loss have been reported" following use of Taxotere, and that alopecia "persisting into the follow-up period" (*i.e.*, 30 days post-treatment) or "ongoing" alopecia (*i.e.*, as of the last follow up visit) were reported for certain numbers of patients who received TAC or FAC as part of the TAX316 study. Nor will Sanofi allege, for example, that it submitted label language stating that "cases of permanent hair loss have been reported" or including the TAX316 data to FDA in 2011. However, whether such a warning was *feasible* and whether it was *needed* are two different questions, as made clear by the plain language of Rule 407.

Sanofi's defense that it has always adequately warned of Plaintiff's alleged injury does not open the door to evidence of subsequent remedial measures barred by Rule 407. *See Relf v. Wal-Mart Stores, Inc.*, 49 F.3d 728 (5th Cir. 1995) ("a defendant does not open the door to evidence of

subsequent remedial measures merely by arguing that it was not negligent or that a dangerous condition did not exist. In fact, to hold otherwise would eviscerate Rule 407, as evidence of subsequent remedial measures would then be admissible whenever a defendant contested its culpability."); *Blythe v. Bumbo Int'l Tr.*, 634 F. App'x 944, 950 (5th Cir. 2015) ("district courts should guard against the improper admission of evidence to prove prior negligence under the guise of impeachment") (internal quotes omitted); *Ponds v. Force Corp.*, No. 16-cv-1935, 2017 WL 3866142, at *2 (E.D. La. Jan. 10, 2017) ("a line must be drawn between the sort of universal I-was-acting-reasonably-at-the-time-of-the-accident defense witness testimony which always surfaces at trial and testimony which is specifically and directly contradicted by the post-accident repair."); *see also Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1171 (5th Cir. 1996) ("The labels were properly excluded for the purpose of impeachment because they stated nothing more than that concentrated, prolonged inhalation causes brain damage, which Henry did not deny."); *Werner v. Upjohn Co.*, 628 F.2d 848, 855 (4th Cir. 1980) ("[defendant] argues that the 1974 warning was adequate given the knowledge it had at that time. This defense simply does not raise an issue of feasibility.").

The three cases cited by Plaintiff on the applicability of Rule 407 are inapposite. None of the three involve pharmaceutical products, and two were decided before the Rule was amended to bar use "to prove […] a need for a warning or instruction." *See* Note on 1997 Amendment, Fed. R. Evid. 407 (eff. Dec. 1, 1997); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201 (5th Cir. 1993); *Scurlock Marine v. W. W. Patterson Co.*, 1997 U.S. Dist. LEXIS 14044, at *1 (E.D. La. Sep. 12, 1997). The only case decided after that amendment did not involve a warning of any kind. *See Kirkland v. Marriott Int'l, Inc.*, 416 F. Supp. 2d 480 (E.D. La. 2006).

Moreover, the purposes suggested by Plaintiff underscore that even if theoretically admitted for a permissible purpose, such evidence would unavoidably implicate issues for which it may not

be considered.  Under such circumstances the prejudice to Sanofi would far outweigh any nominal probative value, and the evidence should be excluded under Rule 403.  *See id.* at 853 (finding that admission of subsequent label change purportedly to show feasibility led to inference of culpability, notwithstanding limiting instruction, and thus was reversible error).

In addition, contrary to Plaintiff's unsupported (and inconsistent) suggestion, the post-treatment actions identified in the parties' briefing all constitute inadmissible subsequent remedial measures.  *See, e.g.*, *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 271 n.10 (5th Cir. 2002) (noting that pharmaceutical label change constitutes subsequent remedial measure); *Blythe*, 634 F. App'x at 951 (noting that safety modification, warning and related investigative analysis and communications all constitute subsequent remedial measures).

### B.     The Evidence is Not Relevant To or Probative Of Any Issue Not Covered By Rule 407.

Plaintiff argues that certain of Sanofi's subsequent remedial measures cited or were based only on data available prior to 2011.  This is factually inaccurate—Sanofi's post-treatment analysis and label change, as well as Dr. Kessler's analysis, incorporated data (including case and adverse event reports) that did not exist in 2011.  Such data is irrelevant to Plaintiff's claim that she was not warned of her alleged injury in 2011.  *See, e.g.*, *Relf*, 49 F.3d 728 (evidence of remedial measures after the allege injury "is not probative of whether [defendant] should have been aware" of such dangers prior to the injury); *Adams v. Chevron USA, Inc.*, 383 F. App'x 447, 452 (5th Cir. 2010) (Rule 407 "also seeks to ensure that negligence is properly determined according to what the defendant knew or should have known prior to the accident, not what the defendant knew as a result of the accident.") (internal quotes omitted).

Even if certain subsequent remedial measures did cite pre-treatment data—and even if such data were admissible[1]—that would not make the measures (including, *e.g.*, analyses and communications created after Plaintiff's treatment) admissible.  Pre-treatment data stands alone from post-treatment analysis and action.  To the extent that such underlying pre-treatment data is admissible, it may be used directly to argue what Sanofi knew or should have done in 2011.  To the extent it is inadmissible, then its inclusion in subsequent remedial analyses and communications certainly cannot make those materials admissible.  The Motion should be granted.

 Date:  August 16, 2019

---

[1] Such evidence is itself largely unreliable and nonprobative, warranting exclusion.  *See* Sanofi's MIL No. 5 (Rec. Doc. 7665-3) at 13 and Sanofi's MIL No. 25 (Rec. Doc. 7668).

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile:  305-358-7470
hsastre@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and*
*Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **August 16, 2019**, I electronically filed the foregoing with the Clerk

of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel

of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore