UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

    SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

___

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
SECOND OMNIBUS MOTIONS IN LIMINE (NOS. 15, 16, 17, 18, 19, AND 20)

___

Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. ("Sanofi") hereby submit the following Reply Memorandum in Support of Their Second Omnibus Motions in Limine pursuant to Case Management Order 14B:

**15. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING WHAT TREATMENT DR. CARINDER WOULD PRESCRIBE TO PLAINTIFF TODAY.**

Testimony from Dr. Carinder on what he would prescribe Plaintiff *today* is irrelevant because, as Dr. Carinder testified, the regimen he would prescribe Plaintiff today was not an option to him at the time of her treatment, and therefore has no bearing on any fact at issue in the case. Fed. R. Evid. 401–402. And, any minimally probative value from this evidence is substantially outweighed by Rule 403 concerns.

The relevant inquiry in a failure to warn case is how a different warning would have changed the prescriber's decision *at the time of prescription*. *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 266 (5th Cir. 2002) ("the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician" and that the "failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury."). In opposing Sanofi's motion, Plaintiff contends that because Dr. Carinder testified he would prescribe Plaintiff a low dose, weekly

1

paclitaxel regimen *today*, this evidence is relevant to the decisions he would have made in 2011 if he had been given a different warning. Plf's Opp., Rec. Doc. 7855, at 2. However, Dr. Carinder's own testimony contradicts this position: "We didn't have paclitaxel approved for using it weekly back in the day when [Plaintiff] was treated." Carinder Dep. 130:14–16 (**Ex. A** to Rec. Doc. 7657-1); *see also id.* at 129:13–130:7. Testimony about what Dr. Carinder would prescribe *today* with regimens that were not an option to him in 2011 is irrelevant to whether a different warning would have changed his prescribing decision in this case.

Plaintiff also contends that, contrary to Dr. Carinder's testimony, paclitaxel *was* available in a low dose format in 2011. However, Plaintiff fails to cite any testimony or authority to support her position. And, if a low dose formulation existed in 2011, Dr. Carinder had no knowledge of it, and it therefore had no effect on his decisions. *See* Carinder Dep. 129:13–130:7 (**Ex. A** to Rec. Doc. 7657-1). Admitting testimony that Dr. Carinder would prescribe a low dose paclitaxel regimen to Plaintiff *today* that was not an option to him back in 2011 will not help the jury decide a material issue in the case, and will serve only to confuse the jury and waste time. Therefore, evidence regarding which treatment Dr. Carinder would prescribe Plaintiff today should be excluded under Rules 401–403.

**16. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING WHAT PLAINTIFF WOULD HAVE DONE DIFFERENTLY IF SHE HAD BEEN GIVEN DIFFERENT RISK INFORMATION BY HER PRESCRIBING ONCOLOGIST.**

Evidence about what Plaintiff would have done differently should be excluded as biased, hypothetical conjecture. *See Howard v. Offshore Liftboats, LLC*, No. 13-4811, 13-6407, 14-1188, 2016 WL 316716, at *4 (E.D. La. Jan. 26, 2016) (precluding lay witness from testifying on "various speculative, hypothetical questions" about "how the incident could have been prevented."). Plaintiff has not identified a single case where testimony from a *Plaintiff* about what the *Plaintiff* would have done if given different information was deemed relevant or admissible under Louisiana's Learned Intermediary Doctrine. *See* Plfs's Opp., Rec. Doc. 7855, at 4–8. Indeed, Louisiana recognizes the "likelihood of a patient's bias in testifying in hindsight on this hypothetical matter," and thus has adopted an "objective standard" in informed consent cases— asking whether "a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed." *Snider v. Louisiana Med. Mut. Ins. Co.*, 130 So. 3d 922, 930 n.7 (La. 2013). Plaintiff, who no longer faces the risks and uncertainties associated with her cancer diagnoses, should not be permitted to offer biased, post-hoc testimony speculating about how her actions might have been different under different factual scenarios. *Id.*; *see also Howard*, 2016 WL 316716, at *4. To the extent the Court deems it relevant to consider "patient choice" in "steer[ing] the conversation and ultimate prescribing decision," (Rec Doc. 7571 at 20), it should permit the same as it pertains to Louisiana's **objective** patient standard. *See Snider*, 130 So. 3d at 930 n.7. Biased testimony from Plaintiff, with the benefit of hindsight on this matter, should be excluded.

**17. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING SANOFI PROMOTIONAL AND/OR MARKETING MATERIALS NOT POSSESSED OR RELIED ON BY PLAINTIFF OR HER PRESCRIBING PHYSICIAN.**

The issue here is whether the Court will allow misleading and irrelevant marketing evidence that Plaintiff and her doctor never saw. Promotional or marketing material not possessed or relied on by Plaintiff or her prescribing physician is irrelevant to her claims under Rule 401, inadmissible under Rule 402, and unduly prejudicial under Rule 403—as such, it should be excluded from Plaintiff's case. *See* Sanofi's Motion *in Limine* No. 17, Rec. Doc. 7657-1, at 8–9.

In opposing Sanofi's motion, Plaintiff does not argue that Plaintiff or her prescribing physician did, in fact, possess or rely on any such material, or that it in any way influenced their treatment decisions or <u>any fact of consequence in her case</u>. Thus, it is inadmissible. *See* Rule 401–402. Instead, Plaintiff identifies a single marketing document which she intends to introduce to "impeach" Sanofi.[1] *See* Plf's Opp., Rec. Doc. 7855, at 8. But Plaintiff admits not only that she and her prescribing doctor never viewed this document, but that "it is unclear if Sanofi utilized this brochure as a marketing tool" with any doctor or patient ever. *Id.* In other words, there is no evidence that this document was ever finalized, published, or used for any purpose—defeating Plaintiff's argument that it represents a Company statement or position on the meaning of the word alopecia, which the parties agree encompasses all types and durations of hair loss. *See, e.g.*, Feigal Report at 32 ("Alopecia is defined as partial or complete absence of hair from any area of the body where it normally grows.") (**Ex. 1**, attached hereto); Feigal Dep. II 35:2–3 ("I didn't make up the definition. That is the definition."); 37:8-25 (Q: "does the term indicate if someone's hair will grow

---

[1] As in other memoranda opposing Sanofi motions *in limine*, Plaintiff here uses the term "impeach" incorrectly to describe use of evidence to meet her burden of proving Company knowledge and a failure to warn. Plaintiff does not identify any testimony, document, or other evidence to which the identified brochure would be proper impeachment evidence, nor suggest that she would refrain from offering the document in her case in chief.

4

back? [….] A: It doesn't say anything to me other than hair loss.") (**Ex. 2,** attached hereto); Shapiro Report at ¶ 34 ("The term 'alopecia' in medical use, includes all durations and degrees of hair loss.") (**Ex. 3**, attached hereto).

      Moreover, any Company statement regarding alopecia that Plaintiff and her doctor never viewed could not possibly bear on whether they were adequately warned of the injury she claims. This is because, without having possessed or relied on the brochure, it could not have affected <u>Plaintiff and her doctor's</u> understanding of what "alopecia" means, nor the bases and sources of such understanding. On the other hand, admitting this document would threaten to give the jury the false impression that it influenced Plaintiff or her doctor's treatment decisions or understanding of the word "alopecia." As such, the danger of confusing or misleading the jury to Sanofi's prejudice substantially outweighs any nominal probative value this or similar marketing material may have, and it should be excluded. Rule 403.

## 18. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING NON-EXPERT CAUSATION TESTIMONY.

The issue here is whether the Court permits misleading and unqualified opinions from fact witnesses (*e.g.*, third parties, former or current employees, family members and friends) about whether Taxotere causes permanent hair loss. It is well settled that testimony based on "scientific, technical, or other specialized knowledge" is governed by Rule 702, no matter who offers that testimony. *See* Rule 701; *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008). Testimony that exceeds the scope of Rule 701, but does not meet the requirements of Rule 702, is inadmissible. *See* Sanofi's Motion *in Limine* No. 18, Rec. Doc. 7657-1 at 10–11; *Rodgers v. Hopkins Enterprises of Ms., LLC*, No. 17-cv-6305, 2018 WL 3104288, at *5 (E.D. La. June 21, 2018). All such evidence or argument is to be excluded, regardless of who offers it. *Id.*

Tellingly, Plaintiff's opposition does not cite or refer to Rule 701, 702 or any other authority in arguing that the Court should admit medical "causation testimony from non-expert witnesses." Plf's Opp., Rec. Doc. 7855, at 9. Plaintiff's argument is without legal basis, and must fail. Medical causation testimony is here governed by Rule 702 and, if offered by an unqualified witness, must be excluded. The three examples of "non-expert causation testimony" Plaintiff cites are impacted by the Federal Rules of Evidence in the same manner as the two which Plaintiff admits are inadmissible.[2]

Whether such testimony is offered by witnesses Sanofi has produced at Plaintiff's request is of no moment. Plaintiffs are no more entitled to present unreliable medical causation testimony from unqualified fact witnesses associated with Sanofi than they would be entitled to present

---

[2] Moreover, two of the three excerpts of testimony cited are further inadmissible as they refer to knowledge or understanding developed after Plaintiff's treatment, and therefore utterly irrelevant to causation in her case. *See* Plf's Opp., Rec. Doc. 7855, at 9 (citing testimony of one witness's "understanding today" regarding medical causation, and another witness's current belief regarding causation); *see also* Sanofi's Motion *in Limine* No. 27, Rec. Doc. 7671.

unreliable medical causation testimony from unqualified fact witnesses produced by Plaintiff at Sanofi's request (*e.g.*, Plaintiff's family or friends). Indeed, causation testimony offered by either party's designated experts is likewise subject to Rule 702—and must be excluded if the witness is not qualified. Notably, none of Plaintiff's general causation experts relied on the testimony cited in Plaintiff's brief. Dr. Madigan did not, and Dr. Feigal did not review any testimony from witnesses produced by Sanofi. Besides running afoul of Rule 702, unqualified expert testimony is without foundation and unhelpful, confusing, and misleading to the jury. *See* Rule 403.[3] Nor is Sanofi's Motion *in Limine* No. 18 "overbroad" as Plaintiff suggests. The requested relief applies to all evidence or argument presented to establish medical causation. It is not difficult to ascertain which witnesses and testimony are offered for that purpose. All such testimony is governed by Rule 702, and inadmissible if not qualified thereunder.

---

[3] Any suggestion that such testimony constitutes statements of party opponents is, of course, inapposite. Hearsay exceptions under Rule 801 have no bearing on the admissibility of scientific, technical or specialized testimony governed by Rule 702.

**19. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S MOTIVE AND/OR MENTAL STATE.**

Sanofi rests on its Memorandum in Support of its Motion No. 1 to Preclude Evidence or Argument Concerning the Purported Moral or Ethical Duties of Pharmaceutical Drug Manufacturers, (Rec. Doc. 7657-1) at 1 (July 16, 2019).

**20.   MOTION TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING SANOFI SALES REPRESENTATIVES.**

Sanofi marketing evidence or testimony is irrelevant, misleading, and prejudicial, where the sales representative, Ms. Ruth Avila, and Plaintiff's prescribing physician, Dr. Carinder, both testified they did not discuss persistent hair loss following chemotherapy, and where Dr. Carinder affirmatively testified that he did not rely on Ms. Avila's statements when making prescribing decisions. Dr. Carinder's limited recollection of a dinner he had with Ms. Avila, who did not "ever advise [him] or provide [him] with information concerning . . . permanent hair loss in association with Taxotere," does not make any material fact in this case more or less probable. Carinder Dep. at 171:6-11 (**Ex. A** to Rec. Doc. 7855). Nor does testimony from Dr. Carinder that he had a favorable opinion of Ms. Avila, or testimony from Ms. Avila that she may have distributed written handouts to Dr. Carinder's nurses. *See* Pl.'s Opp., Rec. Doc. 7855, at 12–13. In short, Dr. Carinder testified that Sanofi's marketing efforts, including his conversations with Ms. Avila, had no effect on his decision to prescribe Taxotere for Ms. Earnest. *See* Carinder Dep. 145:4–11; 145:12–25 (**Ex. A** to Rec. Doc. 7657-1). As such, evidence that Sanofi's sales representatives, or Ms. Avila in particular, "reached" Dr. Carinder is irrelevant. *See* Fed. R. Evid. 401.

Plaintiff cites a case from the *Depakote* litigation to support her contention that Ms. Avila's limited, irrelevant communications with Dr. Carinder are admissible. However, in *Rheinfrank*, the Court was faced with the absence of any prescriber testimony regarding reliance on company marketing, and in that vacuum held that evidence from a sales representative might be construed as circumstantial evidence. *Rheinfrank, et al. v. Abbott Laboratories, Inc., et al.*, No. 13-cv-144, 2015 WL 5258858, at *5 (S.D. Ohio Sept. 10, 2015). Here, in contrast, Ms. Avila and Dr. Carinder both testified that they did discuss Taxotere, and that they did not discuss persistent hair loss following chemotherapy. *See, e.g.*, Carinder Dep. at 171:6-11 (**Ex. A** to Rec. Doc. 7855); Avila

9

Dep. at 277:17–278:3 (**Ex 4**, attached hereto). Further, Dr. Carinder affirmatively testified that he remembered and respected Ms. Avila, but did not rely on her statements or marketing materials regarding Taxotere when making prescribing decisions. *See* Carinder Dep. 145:4–11; 145:12–25 (**Ex. A** to Rec. Doc. 7657-1). Instead, Dr. Carinder relied solely on "evidence based; . . . published guidelines, published literature, peer-reviewed trials," and not materials provided by Sanofi. *See* Carinder Dep. 145:12-25 (**Ex. A** to Rec. Doc. 7657-1).

The introduction of marketing evidence that Dr. Carinder confirms he affirmatively did not rely on or reference in his treatment of Ms. Earnest, risks unfairly prejudicing Sanofi, confusing the issues, and wasting judicial time and resources. The irrelevant communications between Dr. Carinder and Ms. Avila, as well as the limited "marketing" materials Ms. Avila may have provided to Dr. Carinder's nurses, are so limited that any probative value is far outweighed by the risk of substantial prejudice, confusion of the issues, and wasting judicial time and resources.

 Date:  August 16, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile: 305-358-7470
hsastre@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **August 16, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore

11