UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NUMBER: 2740
PRODUCTS LIABILITY
LITIGATION

SECTION: "H"(5)

THIS DOCUMENT RELATES TO
ALL CASES

**ORDER AND REASONS ON MOTION TO COMPEL**

Before the Court is the PSC's "Motion to Compel Compliance with Discovery Order Regarding 30(b)(6) Depositions." (Rec. doc. 7463). Sanofi has filed an opposition memorandum (rec. doc. 7566) and the PSC has filed a reply brief. (Rec doc. 7633). The Court heard oral argument on the motion at the recent regularly scheduled discovery status conference on August 8, 2019 and took the matter under advisement. (Rec. doc. 7985). Having thoroughly considered the briefs and arguments of the parties, the Court grants in part and denies in part the motion.

In the present motion, the PSC complains that Sanofi's counsel failed to adequately prepare its designee, Michael S. Corrigan ("Corrigan"), to testify consistent with this Court's Order of February 6, 2019 (rec. doc. 6100) regarding the scope of the aforementioned Rule 30(b)(6) deposition. After a hearing regarding the notice of said deposition on February 6, 2019, the Court narrowed the scope of one of the proposed topics as follows:

> Communications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia similar to those identified in Sanofi_05442744, and any reviews, investigations, reports of cases or incidents related to ongoing alopecia by "Risk Management" as noted in Sanofi_05442744. Questions concerning retention policies for such documents are outside the scope of this order.

1

(*Id.*).

The current dispute concerns the parties' competing interpretations of the language of this order. Sanofi reads the order narrowly, taking the position that the scope of this topic is "expressly limited to communications with the risk management department" and that the "outer bounds of Plaintiffs' Topic is apparent on its face: communications with Risk Management." (Rec. doc. 7566 at p.4). Relatedly, because it believes the topic is limited to communications only with "Risk Management," a department Sanofi claims is exclusively within the ambit of Sanofi-Aventis U.S., the deposition should not include inquiry regarding communications from foreign sources, even if those communications relate to the possibility of legal action for ongoing alopecia.

On the other hand, the PSC believes the language of the order envisions a somewhat broader scope, including inquiry into communications from Taxotere patients that were directed to the Legal Department or "Medical Information Services" ("MIS") or routed to one of those departments by Sanofi.[1] The PSC also believes that the Court intended to allow for examination (and thus have a Sanofi witness prepared to testify) about communications from individuals or sources outside the United States relating to potential legal action.

So this is a simple dispute about what the Judge meant when he wrote what he thought was a simple and straightforward paragraph. As every single lawyer in this case should know by now, a simple phone call to my chambers for an on-the-record status conference <u>before</u> the deposition would have definitively solved this conundrum, but the

---

[1] This would include inquiry into whether communications recorded in Sanofi's "SEIBEL" system were referred to Risk Management/Legal per Sanofi's standard operating procedures ("SOPs"). (*See* rec. doc. 7633 at pp. 6-8).

2

experienced MDL practitioners in this case all decided that elevating this issue to full-blown motion practice was a better approach. It was not.

The PSC's motion is granted in part. It was and remains the Court's intention to allow the PSC to question a Rule 30(b)(6) designee about <u>all</u> "[c]ommunications between Sanofi and Taxotere patients relating to the possibility of legal action for ongoing alopecia. . . ," regardless of which department received that communication initially and regardless of how the communication was routed. It was never the Court's intention to impose the artificial restriction that such communications were only within the scope of its order it they were made to the "Risk Management" department. The Court's reference to communications "similar to those identified in Sanofi_05442744" meant exactly that – "similar to." If I had intended to limit the communications to those with Risk Management I would have written just that.

As for communications from foreign sources "relating to the possibility of legal action for ongoing alopecia," if those communications were received by and/or routed through any department of Sanofi-Aventis U.S., they are discoverable under the Court's orders of February 6 and this order and, to that extent, the PSC's motion is granted. The motion is denied to the extent the PSC seeks to question a designee about communications received by Sanofi entities outside the United States, unless they were routed through or to Sanofi-Aventis U.S., in which case whatever happened from that point forward is discoverable.

The PSC will be allowed an additional four hours on the record to complete the 30(b)(6) deposition on these issues. However, that deposition shall not be reconvened until after the conclusion of the first bellwether trial currently scheduled to begin September 16, 2019. The Court finds the additional deposition testimony provided for herein is not

3

necessary for the upcoming bellwether trial and I will not allow the parties' trial preparation to be compromised by the taking of said deposition.

A final couple of observations are in order here. The way this particular issue has been managed by both sides is very disappointing. Inexplicably, both sides thought it would be a better idea to conduct two deposition sessions in New Hampshire without seeking guidance on this dispute from the Court. Instead, four days before the second deposition session was to take place, the PSC sent the Court a puzzling email seeking to "alert" me to "a dispute concerning the scope of the Rule 30(b)(6) deposition" without ever telling me what the issue was or asking me to weigh in on it. Rather, they informed me that they planned to brief the issue after the deposition.

Sanofi's counsel followed up with their own email setting forth a vigorous six-point objection to the PSC's email, yet still failing to tell me what it was they were all fighting about. I fail to comprehend why anyone thought this was the way to handle what is a straightforward dispute about the meaning of a single paragraph. To be clear, this is not how this Court expects disputes of this nature to be addressed by the parties in the future.

Finally, in its briefing, the PSC complained of one aspect of Sanofi's apparent deposition strategy:

> Knowing these scope objections followed by instructions not to answer would potentially incur your Honor's disapproval, Sanofi prepared Mr. Corrigan to "object" to the scope of the deposition, rather than Sanofi's attorneys. Mr. Corrigan used the word "scope" more than 100 times during his deposition. He testified repeatedly about his conclusion of this Court's Order and his understanding of the scope.
> (Rec. doc. 7463-1 at p. 4, n.3).

Having reviewed the almost 500-page deposition transcript, I agree with the PSC that Sanofi employed a strategy to avoid instructing the witness not to answer questions by preparing the witness to interpret my order himself. It is not acceptable in these circumstances to cede the interpretation of court orders to a national account executive (and presumably non-lawyer) and if instances of a similar strategy are brought to my attention in the future the consequences will likely be harsh.

New Orleans, Louisiana, this 19th day of August, 2019.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE