UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  TAXOTERE (DOCETAXEL)            MDL No. 2740
PRODUCTS LIABILITY LITIGATION

                                        SECTION: "N" (5)

THIS DOCUMENT RELATES TO:

*Kelly Gahan*
Case No.:2:16-cv-15283

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER RESPONSE IN OPPOSITION TO SANOFI'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kelly Gahan submits the foregoing Memorandum of Law in Support of Her Response in Opposition to Sanofi's Motion for Summary Judgment:

### INTRODUCTION AND SUMMARY OF THE ARGUMENT

Sanofi's Motion for Summary Judgment based on the "learned intermediary" doctrine fails because the learned intermediary doctrine addresses duty, not proximate cause. A learned intermediary is one who has been adequately advised of a drug's risks, and application of the doctrine requires a finding that the drug label adequately advised a physician of the risk associated with Plaintiff's injuries (i.e. that the manufacturer complied with its *duty* as a matter of law). In this case, the Taxotere label included no warning of the risk of permanent alopecia at the time Dr. Borges recommended the TCH regimen to Dr. Gahan in November 2013. Because the learned intermediary doctrine focuses on the adequacy of the warning label (i.e. the manufacturer's actions), the doctrine is inapplicable even where, as here, Dr. Borges had some independent knowledge of the drug's relevant risks prior to recommending it to Dr. Gahan.

Instead, Dr. Borges' prior knowledge of the risk of permanent alopecia associated with Taxotere, and Dr. Gahan's pre-chemotherapy knowledge of that same risk, must be considered

1

under the broader rubric of proximate cause.  Under Colorado law, a drug manufacturer may be held responsible for a failure to warn when the failure "may have contributed" to plaintiff's injuries, and  demonstrating "[w]hat the doctor might or might not have done had he been adequately warned is not an element plaintiff must prove as part of her case." Hamilton v. Hardy, 549 P.2d 1099, 1109-10 (Colo. App. 1976)(overruled on other grounds by State Bd. Of Medical Examiners v. McCrosky, 880 P.2d 1188, 1194 (Colo. 1994)).  Because Sanofi's motion is factually premised on the incorrect assumption that Dr. Borges' prescribing decision is the beginning and end of the inquiry, their motion for summary judgment fails to even meet their initial burden of production for summary judgment.

Even if Sanofi has met its initial burden of production, the factual record in this case is more than sufficient to require trial under Colorado's broad and lenient proximate cause framework.  While both Dr. Borges and Dr. Gahan knew of anecdotal evidence suggesting a possible link between Taxotere and permanent alopecia, this information was scientifically insufficient for Dr. Borges to either change her recommendation of TCH, or for Dr. Gahan to disregard her physician's recommendation of TCH as the best regimen for her cancer.  The evidence in this case indisputably demonstrates that Dr. Gahan agonized over choosing between TCH and ACTH, and ultimately acquiesced in Dr. Borges recommendation of TCH because she could not adequately "substantiate the risk" of permanent alopecia to justify over-riding Dr. Borges' preference for TCH.  Under these circumstances, a rational jury could conclude that *any* label warning of permanent alopecia by Sanofi would have led Dr. Gahan to choose ACTH as her chemotherapy regimen.

## LAW AND ARGUMENT

I.    Standards

2

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(a). To satisfy this initial burden, the movant must inform the court of the basis of the motion and identify the portions of the record that show the absence of a genuine issue of material fact. Celotex Corp. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must go beyond the pleadings and present affirmative evidence demonstrating a genuine issue for trial. Id. at 324-25. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court is to determine whether "there is a genuine issue for trial." Id at 249.

> II. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Strict Liability Failure to Warn and Negligence Claims
>
> **A. Because the Learned Intermediary Doctrine is Focused on a Manufacturer's Duty and the Adequacy of Warnings, the Doctrine is an Inappropriate Framework for Determining Issues of Proximate Cause**

With respect to product liability law, the Colorado Supreme Court has generally conformed to the principles outlined in Section 402A of the Second Restatement of Torts. Anderson v. Heron Engineering Co., Inc., 604 P.2d 674, 677 (Colo. 1979). "A product which is free of manufacturing and design defects may nonetheless be defective and unreasonably dangerous if not accompanied by adequate instructions and warnings." Id. "Although the nature of the defects may vary, the underlying theory of strict liability remains the same…..[a] manufacturer who places products into the stream of commerce must assume the risk and responsibility for injuries and damages proximately caused by those products when they turn out to be defective." Id.

3

Although the Colorado Supreme Court has not formally adopted the learned intermediary doctrine in failure to warn claims, the Colorado Court of Appeals has recognized the doctrine as applying to claims arising out of defective medical devices and drugs. See O'Connell v. Biomet, Inc., 250 P.3d 1278, 1281-82 (Colo. App. 2010). "[W]here prescription drugs are concerned, the manufacturers duty has been limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." Id. at 1280. "The physician is trained to assess the risks and benefits of the drug as applied clinically to a particular patient."

Importantly, however, the "learned intermediary" doctrine is applicable only in situations where the manufacturer has provided some warning to the physician of the danger that caused the plaintiffs injury. See id. at 1281-82 ("the doctor is in a position to reduce the risks of harms *in accordance* with the instructions or warnings"); In re Nuvaring Litigation, 2013 WL 1874321 at *25 ( N.J. Super. L. Div., Apr. 18, 2013)(applying Colorado law)("Under the learned intermediary doctrine, defendant need only have adequately warned the prescribing physician in order to be discharged of its duty"); Eck v. Parke, Davis & Co., 256 F.3d 1013 1018 (10th Cir. 2001) (applying Oklahoma law) ("Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprize the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient."); Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 853 (10th Cir., 2003)(applying Wyoming law)("physicians become learned intermediaries only when they have received adequate warnings from the drug manufacturer").

In this case, at the time Dr. Borges prescribed Taxotere to Dr. Gahan, there is no dispute that the label for Taxotere included no warning related to permanent alopecia. (Def. Ex. B). Rather, the label warned generally of the very common side effect of "hair loss." Id. Dr. Borges

4

interpreted this warning on the label as indicating temporary hair loss, a very common side effect with most active chemotherapy agents. (**Ex. 3** Depo. Dr. Borges, Vol.II; 201:11-22).  The Court, however, need not decide on the adequacy of the Taxotere label, because Defendants have not asserted or provided evidentiary support for the proposition that that the Taxotere label was adequate.  Rather, their motion is based on the premise that – despite the lack of a permanent alopecia warning – Dr. Borges was a "learned intermediary" because she was independently aware of certain materials linking Taxotere with permanent alopecia and prescribed it anyway.

Defendants attempt to shoehorn the learned intermediary doctrine in this context is inappropriate.  The learned intermediary doctrine focuses on a manufacturer's duty – and cases decided pursuant to this doctrine are usually premised on the assertion of the manufacturer that their drug warning was adequate as a matter of law. See Caveny v. CIBA-Geigy Corp., 818 F. Supp. 1404, 1406 (entering summary judgment because plaintiff failed to demonstrate inadequacy of warning); In re Nuvaring Litigation, 2013 WL 1874321 at *25-26 (denying summary judgment on adequacy of warning under learned intermediary doctrine, but granting summary judgment as to causation).  Defendants motion raises no such issues. Defendants motion is more appropriately determined under the broader rubric of proximate cause (i.e. that no warning of permanent alopecia would have prevented Dr. Borges from prescribing the TCH regimen).  This is the thrust of Defendants motion.  If the Defendant wishes to seek summary judgment under the learned intermediary doctrine on the basis that its label warning was adequate as a matter of law, it should do so explicitly and with evidentiary support.

The Colorado Court of Appeals explored the scope of a plaintiff's obligation to demonstrate proximate cause in a drug manufacturer failure to warn product liability action in Hamilton v. Hardy; 549 P.2d 1099, 1109-10 (Colo. App. 1976)(overruled on other grounds by State Bd. Of Medical Examiners v. McCrosky, 880 P.2d 1188, 1194 (Colo. 1994)).  In Hamilton,

5

the manufacturer contended testimony by the plaintiff's treating physician that he would have taken her off the manufacturer's birth control pills if he had been apprized of her headaches broke the causal chain between the manufacturer's inadequate warnings and plaintiff's injuries. Id. The Court of Appeals rejected the proposition that a physician's choice to continue prescribing a drug with knowledge of dangerous symptoms could constitute an "intervening cause" completely exonerating the manufacturer of liability for its inadequate warnings. "Even if a physician's carelessness may have taken a form not specifically anticipated, [manufacturer] should not escape liability as long as its failure to give an adequate warning may have contributed thereto." Id. at 1109. The court concluded:

> Consequently, we hold that where an ethical (i.e. prescription) drug manufacturer puts a drug on the market without adequate warning, the prescribing doctor's conduct may not insulate the manufacture from liability where the inadequacy of the warning may have contributed to plaintiff's injury. **What the doctor might or might not have done had he been adequately warned is not an element plaintiff must prove as part of her case.**

Id. (emphasis added). The Hamilton decision informs this Court's determination of Defendants' motion in two ways. First, the plaintiff must present evidence demonstrating proximate cause between Sanofis' failure to warn and plaintiff's injuries (not just Dr. Borges' ultimate prescribing decision). Secondly, the plaintiff's burden is relatively lenient (i.e. "may have contributed to").

The Colorado Court of Appeals formulation of plaintiff's proximate cause burden is consistent with the standard adopted by this Court in its previous summary judgment adjudications:

> The question is not simply "what would the doctor have prescribed" but whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, whether the patient would have inquired about other options, what the doctor would have recommended, and what decision the plaintiff would have ultimately made. The Court will consider these questions with the goal being to assess what the doctor and the patient would have decided together. While a doctor may testify that his or her recommendation would not have changed, the issue is whether the plaintiff ultimate decision would have changed.

6

Doc. 7571 at 16.  Evidence of what the plaintiff's physician would have done is not irrelevant under this formulation. But it is not exclusively determinative of proximate cause.

This Court's formulation of the appropriate inquiry is also in accordance with the salutary purposes identified by the Court of Appeals in Hamilton, wherein the court held that the duty to warn the physician was for the benefit of the patient, and the patients agency in making informed treatment decisions could not be divorced from the manufacturers obligation to adequately warn the physician:

> And, although the drug manufacturer's duty, owed to the public, is the duty to warn the medical profession, it is for the benefit of the patient. It is not unlikely that a properly warned physician would discuss such risks with the patient…..The warning thus achieves two purposes: (1) It will alert the doctor to premonitory symptoms of the side effect; and (2) it will enable the patient to evaluate the relative advantages and disadvantages of taking the drug.

Hamilton v. Hardy, 549 P.2d at 1110 (internal citations omitted).  This Court's previous formulation of the proximate cause inquiry is well-tailored to decide the same issues under Colorado law.

> **B. Because Defendants Failed to Articulate the Appropriate Causation Test, Their Motion for Summary Judgment Fails to Meet Their Initial Burden of Production**

Because Defendants' motion fails to articulate the appropriate causation test under Colorado law, the facts they marshal in support of their motion are simply insufficient to demonstrate entitlement to summary judgment.  Defendants seek summary judgment based entirely on Dr. Borges testimony that she would have continued to recommend the TCH regimen, regardless of whether the label advised her of the risk of permanent alopecia. But demonstrating "[w]hat the doctor might or might not have done had he been adequately warned is not an element plaintiff must prove as part of her case." Id.

"The burden of production imposed by Rule 56 requires the moving party to make a *prima facie* showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986)(Brennan, J., dissenting).  When the non-moving party (Dr. Gahan in this case) bears the burden of persuasion at trial, the moving party may meet its burden of production by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim."  Id.  Sanofi has failed to meet its initial burden of production because its motion focuses exclusively on what Dr. Borges would have done, but Colorado law is clear that Plaintiff need not prove what Dr. Borges would have done if properly warned of the risk of permanent alopecia. Consequently, Sanofi's motion for summary judgment should be denied for failure to establish a *prima facie* showing it is entitled to such judgment.

### C. Whether Kelly Gahan Would Have Made a Different Choice of Chemotherapy Regimens if Advised of the True Risk of Permanent Alopecia Presents a Genuine Issue of Material Fact for Trial

Even if Defendants' motion establishes a *prima facie* case purportedly showing that Dr. Borges and Dr. Gahan would have "decided together" to still use the TCH regimen, the record is replete with facts that raise a genuine issue for trial. In determining a motion under Rule 56, the Court must "view the factual record and draw all reasonable inferences therefrom in the light most favorable to the nonmovant." Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. Id.(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Id.  Combining the summary judgment analytical framework with the substantive proximate cause framework established by the Colorado Court of Appeals in Hamilton, summary judgment is inappropriate in this case if plaintiff demonstrates facts from which a rational trier of

8

fact could conclude that Sanofi's failure to warn of the risk of permanent alopecia "may have contributed" to Dr. Gahan's decision to use the TCH regimen instead of ACTH. Hamilton v. Hardy, 549 P.2d at 1109.

Dr. Gahan posits that the following favorable inferences may be drawn from the record, and require that Sanofi's motion for summary judgment be denied:

- Dr. Borges' recommendation of the TCH regimen was conditional. Dr. Borges recommended TCH because it was based on work done by Dr. Dennis Slamon at UCLA, whom she professionally admired. (Plaintiff's Statement of Facts ["PFOS"], ¶15) Although Dr. Borges personally preferred TCH, she believed TCH and ACTH were equivalent in efficacy. (PFOS,¶15). Dr. Borges had previously administered ACTH in her practice and would have done so for Dr. Gahan if Dr. Gahan had decided and informed her that she wanted ACTH. (PFOS, ¶31)

- Although she was aware of anecdotal instances of patients experiencing permanent alopecia after being administered Taxotere, Dr. Borges continue to recommend TCH because there was no scientifically compelling evidence that Taxotere was the cause. (PFOS, ¶21). Although Dr. Borges advised Dr. Gahan of her anecdotal knowledge of Taxotere and permanent hair loss during their initial consultation, her advisement was qualified by her belief that the evidence linking Taxotere and permanent alopecia (her clinical experience with three patients and the Scot Sedlacek study) was not scientifically compelling. (PFOS,¶ 21).

- If Dr. Borges had been aware of the rate of permanent alopecia associated with Taxotere demonstrated in Sanofi's clinical trials (TAX 316 and TAX 301), she would have shared that rate with her patients when discussing risks and benefits of various chemotherapy regimens. (PFOS, ¶31). Despite her attempt to find a rate for permanent alopecia, Dr.

9

Borges was never able to find the data from Sanofi's clinical trials, which are not publicly available.

- Because of Dr. Borges advisement regarding her anecdotal experience and Dr. Gahan's own research, Dr. Gahan closely weighed her decision between TCH and ACTH. (PFOS,¶¶ 33-37). This research included reviewing the label for Taxotere, which did not include any warning regarding permanent alopecia. (PFOS,¶ 35). Because of the lack of warning on the label and Dr. Borges' belief that the anecdotal evidence linking Taxotere and permanent hair loss should not influence Dr. Gahan's choice of treatment regimens, Dr. Gahan did not feel comfortable contradicting Dr. Borges recommendation of TCH. (PFOS,¶ 38).

- Dr. Gahan would have been comfortable embracing the differential risks associated with taking ACTH instead of TCH. (PFOS,¶¶ 36-37). She did not believe the increased risk of cardiomyopathy associated with ACTH appropriately weighted the true risk to younger women without previous heart related health issues. (PFOS,¶ 37).

- While making choices regarding her cancer treatment, Dr. Gahan balanced her interests in preventing re-occurrence of her cancer against her post-cancer quality of life. (PFOS,¶36). When choosing to undergo bilateral mastectomy, she chose the cosmetically beneficial nipple sparing option, despite a minimal chance of re-occurrence associated with that option. (PFOS,¶36). Similarly, she chose to preserve her eggs for future IVF, despite the fact that the chemotherapy delay and estrogen therapy required to do so presented a minimal risk of worsening her cancer. (PFOS,¶ 36).

- Dr. Gahan actively involved herself in researching her chemotherapy options. (PFOS,¶ 10). She also wanted to give due deference to Dr. Borges' recommendations because Dr. Borges warned her against being her own physician. (PFOS,¶33, 37-39). Because of this advisement, Dr. Gahan was hesitant to assert her preference for ACTH in the absence of

compelling scientific data linking Taxotere with permanent alopecia. (PFOS,¶36-38). The lack of any warning on the Taxotere label contributed to her reluctance to reject Dr. Borges' recommendation of TCH. She would have felt comfortable expressing her preference if Dr. Borges had been able to advise her of the rate of permanent alopecia demonstrated in Sanofi's own clinical trials. (PFOS,¶40). Ultimately, Dr. Gahan went along with Dr. Borges' preference for TCH because she simply could not muster a definitive reason not to.

From this factual record, a rational jury could conclude that, despite both Dr. Borges' and Dr. Gahan's knowledge of anecdotal evidence linking Taxotere and permanent alopecia, Sanofi's failure to warn of that risk on its label or otherwise advise of the connection "may have contributed" to Dr. Gahan's acquiescence to Dr. Borges' recommendation of TCH as her chemotherapy regimen. If Dr. Borges had been advised by Sanofi, through the label or otherwise, of Sanofi's then existing knowledge of (a) a causal link between Taxotere regimens and permanent alopecia; and (b) an incidence rate in excess of 1%, she would have advised Dr. Gahan of those facts, and Dr. Gahan would have been able to make an informed choice between the risk of permanent disfigurement or future health threats.

The factual record also demonstrates that Dr. Gahan was agonizing over the decision between TCH and ACTH, based Dr. Borges' anecdotal warning about the risk of permanent alopecia, the anecdotal evidence on the Taxotears website, and the Sedlacek Abstract. Dr. Gahan testified in her deposition that any type of scientifically reliable evidence demonstrating a link between TCH and permanent alopecia would probably have caused her to insist upon ACTH despite Dr. Borges' recommendation. Collectively, a jury question on proximate cause is presented by Dr. Borges testimony concerning how she would have advised Dr. Gahan if properly warned and Dr. Gahan's testimony regarding what choice she would have made if properly

11

warned.  Defendants' motion for summary judgment on Counts I and III of Plaintiff's complaint should be denied.

### D.  Summary Judgement is not Warranted on Plaintiff's Fraud Based Claims

To establish a claim for fraudulent concealment, a plaintiff must prove (1) the concealment of a material existing fact that in equity and good conscience the defendant should have disclosed; (2) knowledge on the defendant's part that such a fact was being concealed; (3) ignorance of that fact on the plaintiff's part; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP, 2018 420 P.3d 223, 234 (Colo. 2018).

The elements of fraud include: (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it is false; (3) ignorance on the part of the one to whom the representation is made of the falsity; (4) representation made with intention that it be acted upon; (5) representation resulting in damage. Kinsey v. Preeson, 746 P.2d 542, 550 (Colo. 1987)

Defendant seeks summary judgment on the basis that the learned intermediary doctrine precludes a fraudulent concealment claim because Sanofi had no duty to speak directly to the plaintiff, but only to Dr. Borges.  Even assuming the applicability of the learned intermediary doctrine, Sanofi's duty to speak to Dr. Borges only exists in furtherance of Dr. Borges' duty to advise the Plaintiff.  See Hamilton v. Hardy, 549 P.2d at 1110 ("although the drug manufacturer's duty, owed to the public, si the duty to warn the medical profession, it is for the benefit of the patient").  Dr. Gahan's reliance on Sanofi's misrepresentations and omissions can be established through Dr. Borges reliance on Sanofi's misrepresentations and omissions. DeVries v. Taylor, 1993 WL 331001, at *6 (D. Colo. June 28, 1993).

This Court has already judicially noticed Defendants' admission that, "while the Taxotere label has since its inception warned of hair loss, it did not warn of permanent hair loss until December of 2015." (**Rec. Doc. 7571**, p.19). In this case, Plaintiff has produced evidence demonstrating that Dr. Borges was still relying on the accuracy of Sanofi's label and the lack of any warning regarding permanent hair loss at the time she was recommending treatment to the Plaintiff, even though she was advising certain patients of her anecdotal experience with three patients whose hair did not grow back after treating with TCH:

> Q. Did you trust that Sanofi – back in 2013, did you trust that Sanofi was providing you with the information that they had concerning the risk of permanent chemotherapy-induced alopecia?
>
> Mr. Sears: Objection to form.
>
> A. I trusted Sanofi that they were providing me updated and accurate information about the risks of the drugs I was prescribing.

(**Ex. C**; 225:24 – 226:7). This reliance specifically manifested itself with respect to Dr. Gahan through Dr. Borges' downplaying the reliability of the safety signal demonstrated by the Sedlacek Abstract – which in retrospect identified a rate of permanent alopecia within the range of the rate demonstrated by Sanofi's own clinical trials. In the Court's decision regarding Jaclyn Mills, the Court found reliance because the physician, due to the lack of any warning in the Taxotere label, did not inform her patient of the risk of permanent alopecia. (Rec. Doc. 7571, p.19). While Dr. Borges detrimental reliance was different, it arises from the same non-disclosure by Sanofi. Rather than simply not warning her patient about the risk of permanent alopecia, Dr. Borges warned Dr. Gahan of her anecdotal experience while simultaneously downplaying the reliability of that experience. A jury could reasonably conclude that if Sanofi had not intentionally concealed the well-demonstrated link between TCH and permanent alopecia it knew about in 2013, Dr. Borges

13

would not have minimized the importance of her own clinical observations or the Sedlacek abstract when communicating with Dr. Gahan about chemotherapy risks.

E. **Plaintiff Does Not Oppose Dismissal or Summary Judgment on Counts II, IV and VIII**.

Plaintiff need not oppose Defendants motion for summary judgment on Count II – Strict Products Liability for Misrepresentation, or Count VIII – Breach of Express Warranty, as these claims were previously dismissed pursuant to Pre-Trial Order 61 (Rec. Doc. 877), entered on September 27, 2017.

Plaintiff does not oppose summary judgment on Count IV – Negligent Misrepresentation, on the basis that Colorado law restricts such claims to pecuniary losses in a business transaction. W. Cities Broad., Inc. v. Schueller, 849 P.2d 44, 49 (Colo. 1993).

## CONCLUSION

WHEREFORE, Plaintiff Kelly Gahan respectfully requests this Honorable Court DENY Defendants' Motion for Summary Judgment so that a jury may hear and determine Plaintiff's claims I, III, V, VI, and VII and render a verdict on the disputed issues.

Respectfully Submitted,

/s/ *Darin L. Schanker*
Darin L. Schanker
Scot C. Kreider
BACHUS & SCHANKER, LLC
1899 Wynkoop Street
Ste. 700
Denver, CO 80202
(303)899-9800
F: (303)893-9900
d.schanker@coloradolaw.net
scot.kreider@coloradolaw.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/Darin L. Schanker