**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                              MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                         SECTION "H" (5)
THIS DOCUMENT RELATES TO:

Barbara Earnest, Case No. 2:16-cv-17144.

_____

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR FIRST OMNIBUS
MOTIONS IN LIMINE (NOS. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, AND 14)**
_____

Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc. ("Sanofi") hereby

submit the following Reply Memorandum in Support of Their Omnibus Motions *in Limine*

pursuant to Case Management Order 14B:

**1.     MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE
         PURPORTED MORAL OR ETHICAL DUTIES OF PHARMACEUTICAL DRUG
         MANUFACTURERS.**

Sanofi rests on its Memorandum in Support of its Motion No. 1 to Preclude Evidence or

Argument Concerning the Purported Moral or Ethical Duties of Pharmaceutical Drug

Manufacturers, (Rec. Doc. 7655-3) at 1 (July 16, 2019).

## 2.   MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PURPORTED LEGAL DUTIES AND CONCLUSIONS.

Sanofi rests on its Memorandum in Support of its Motion No. 2 to Preclude Evidence or Argument Concerning Purported Legal Duties and Conclusions, (Rec. Doc. 7655-3) at 4 (July 16, 2019).

3.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING OTHER LAWSUITS, CLAIMS, OR INVESTIGATIONS AGAINST DEFENDANTS AND/OR OTHER SANOFI ENTITIES.**

As a threshold matter, Plaintiff does not challenge and has effectively conceded Sanofi's Rule 403 argument that evidence and argument about other lawsuits, claims, and/or investigations involving Sanofi and its products beyond the lawsuit at issue should be excluded because any perceived probative value is substantially outweighed by the significant undue prejudice to Sanofi, confusion of the issues, and waste of judicial time and resources. *See Robertson v. Gautreaux*, 2017 WL 690542, at \*6 & n.48 (M.D. La. Feb. 21, 2017) ("failure to address Defendants' failure to train arguments . . . results in abandonment of these claims" (citing *Barlow v. Safety Nat'l Cas. Corp.*, 2014 WL 1327922, at \*5 n.7 (M.D. La. Mar. 31, 2014))); *Masoodi v. Lockheed Martin Corp.*, 2011 WL 837150, at \*16 (E.D. La. Mar. 3, 2011) (dismissing the plaintiff's age and race discrimination claims because plaintiff failed to address defendant's arguments in opposition to motion to dismiss). For this reason alone, the Court should exclude evidence of other lawsuits, claims, and investigations pursuant to Rule 403.

Plaintiff's attempts to circumvent the relevancy and hearsay issues that plague evidence of other lawsuits, claims, and investigations also fail. Plaintiff does not address the numerous courts that have held that evidence of other lawsuits is irrelevant and not permitted, especially in products liability litigation. *See* Rec. Doc. 7655-3 at 6–7 (collecting cases). Instead, she contends that such evidence is "crucial" to her "claim that Sanofi provided an inadequate warning after it had knowledge that Taxotere causes permanent hair loss," because it purportedly is probative of "whether Sanofi was on notice of a hazard associated with its product." Plf's Opp., Rec. Doc. 7847-2, at 7. Even if other lawsuits, claims, or investigations were relevant to notice, they would be relevant only to the extent they pre-date Plaintiff's treatment. Notwithstanding Plaintiff's

3

contentions to the contrary, though, her goal is not to show notice of an alleged hazard. Plaintiff seeks to parade evidence of other lawsuits and claims in front of the jury to curry favor and evoke a negative emotional response toward Sanofi. If demonstrating notice were Plaintiff's goal, there are less prejudicial categories of evidence to attempt to accomplish that goal. Additionally, "even when it is offered solely to show notice, the proponent of such evidence must establish reasonable similarity." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 580 (5th Cir. 1993) (citation omitted); *see also Beane v. Utility Trailer Mfg. Co.*, No. 2:10 CV 0781, 2013 WL 837155, at *2 (W.D. La. Mar. 6, 2013) (holding that plaintiff failed to show the similarity required to admit evidence of other incidents to prove notice).[1] Plaintiff did not offer any explanation of the alleged "reasonable similarity" between other lawsuits and this one. She therefore failed to meet her burden.

Plaintiff simply ignores the fact that evidence of *unrelated events occurring under circumstances entirely different* from those at issue in Plaintiff's case has no "tendency to make a fact more or less probable than it would be without the evidence," rendering such evidence irrelevant. Plaintiff's alleged injuries must be weighed and considered in the context of numerous *individual* factors, such as prior medical history, risk factors, treatment decisions, and so on. The same is true for plaintiffs in other lawsuits, claims, or investigations. For that reason, courts often exclude evidence of other lawsuits, claims, and investigations in product liability cases. *See* Rec. Doc. 7655-3 at 6–7 (collecting cases).

Finally, Plaintiff sets up a false choice: deny Sanofi's motion or prohibit Sanofi from arguing or alleging that the litigation is "lawyer driven, litigation crisis, lawsuit crisis, [or] lawsuit abuse." *See* Plf's Opp., Rec. Doc. 7847-2, at 8. Plaintiff's characterization of the Court's options as either one or the other, with no other possibilities, is incorrect. Moreover, Plaintiff has filed a

---

[1] This Court granted a similar motion in *Hunt v. McNeil Consumer Healthcare*, No. 2:11-cv-00457 (Mar. 12, 2014) (**Exs. 1 and 2**, attached hereto).

separate motion *in limine* directed to lawyer advertisements.  That is the proper vehicle for addressing this issue, not Plaintiff's opposition to a motion *in limine* that bears no relationship to the issue.  The Court should reject Plaintiff's invitation to engage in logical fallacies and exclude evidence of other lawsuits, claims, and investigations.  For this and the reasons more fully set forth in Sanofi's Motion i*n Limine* Nos. 4 (Motion to Preclude Evidence or Argument Concerning Complaints and Lawsuits Against Other Manufacturers of Docetaxel) and 5 (Motion to Preclude Evidence or Argument Concerning Adverse Event Reports or Other Complaints Involving Patients Other Than Plaintiff), Rec. Doc. 7655-3 at 10–18, such evidence or argument should be excluded.

4.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING COMPLAINTS AND LAWSUITS AGAINST OTHER MANUFACTURERS OF DOCETAXEL.**

Although Plaintiff notes that she will not offer any evidence or argument at trial concerning lawsuits, investigations, or formal complaints against other manufacturers of docetaxel, she seeks to introduce evidence regarding wholly irrelevant adverse event reporting. Adverse Event Reports (AERs) involving patients other than Plaintiff bear no relevance to issues of causation or notice. Indeed, irrelevant AERs will improperly prejudice Sanofi, confuse the issues of this case, and cause delays in an already lengthy trial.

Arguments regarding the inadmissibility of AERs are more fully set forth in Defendants' Motion to Preclude Evidence or Argument Concerning Adverse Event Reports or Other Complaints Involving Patients Other Than Plaintiff (Rec. Doc.7655-3 at 5) and Defendants' Reply to Plaintiff's opposition on the same. Arguments regarding the inadmissibility of AERs as they pertain to medical causation are also briefed more extensively in Defendants' Motion for Summary Judgment on General Causation (Rec. Doc. 6163). Sanofi incorporates the arguments set forth in these Motions by reference.

Nothing could be more emblematic of the grounds for Sanofi's instant Motion *in Limine* than the fact that some of the AERs replied upon by Plaintiff constitute lawsuits—the merits of which are in dispute and subject to their own discovery and trial—or reports identifying other manufacturers' drugs, that were not necessarily known to Sanofi or notice of anything. Thus, introduction of evidence involving lawsuits, investigations, claims, or AERs by patients other than Plaintiff is plainly irrelevant. Indeed, such evidence would confuse the issues of this case and

waste judicial time and resources by forcing Sanofi to litigate issues that are wholly unrelated to Plaintiff's specific claims.[2]

---

[2] This Court granted a similar motion in *Hunt v. McNeil Consumer Healthcare*, No. 2:11-cv-00457 (E.D. La. Mar. 12, 2014) (Rec. Doc. 437) (**Exs. 1 and 2**, attached hereto).

5.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ADVERSE EVENT REPORTS OR OTHER COMPLAINTS INVOLVING PATIENTS OTHER THAN PLAINTIFF.**

In opposing Sanofi's motion, Plaintiff contends that adverse event reports (AERS) are admissible through Plaintiff's experts and not for their truth.  Plf's Opp., Rec. Doc. 7847-2, at 10.  However, that experts in this case unreliably depend on AERs to form their opinions does not render the underlying AERs admissible.  Federal Rule of Evidence 703 provides that an expert's underlying facts or data are admissible "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]"  This Court has specifically noted that AERs are not a reliable basis for expert causation opinions.  *See Burst v. Shell Oil Co.*, No. 14-cv-109, 2015 WL 3755953, at *8 (E.D. La. 2015) (explaining that reports "which anecdotally describe an occurrence . . . cannot establish general causation because they simply describe[] reported phenomena . . . do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation.") (internal quotation marks and citations omitted).  Indeed, "the FDA requires [a manufacturer] to submit all adverse events reported to it without regard to whether there is any proven causal connection to" the drug.  *In re Norplant Contraceptive Prods. Liab. Litig.*, MDL No. 1038, 1997 WL 80527, at *1 (E.D. Tex. Feb. 19, 1997) (emphasis added).  For this very reason, in the pharmaceutical drug context and in MDLs particularly, court-after-court rejects such evidence.  *See, e.g., Rhodes v. Bayer Healthcare Pharm., Inc.*, No. 10-1695, 2013 WL 1289050, at *5 (W.D. La. Mar. 26, 2013) (excluding expert opinion based on AERs because "uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation") (citation omitted);  *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051, 2015 WL 392021, at *32 (S.D. Fla. Jan. 28, 2015) (case reports and adverse event reports are both "insufficient to show general

causation."); *In re Accutane Prods. Liab.*, 511 F.Supp.2d 1288, 1298 (M.D. Fla. 2007) (excluding expert opinion because AERs "are unreliable as proof of causation because, in general, the events were not observed in such a way as to rule out coincidence or other potential causes.").[3]

Additionally, Rule 703 provides that facts or data underlying an expert's opinion may be admitted to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." AERs have minimal probative value, but the risk of confusing the jury—who "already [has] to bear the responsibility of considering the medical histor[y] of the [] bellwether Plaintiff[]"—is great. *In re Norplant Contraceptive Prods. Liab. Litig.*, 1997 WL 80527, at *1. And, "introduction of the reports may waste time because [Sanofi] then would have to have an opportunity to rebut the significance of the adverse reports." *Id.* For these reasons, courts routinely exclude adverse event reports given that the probative value attributable to them is outstripped by the danger of prejudice they pose. *See In re Accutane Prods. Liab.*, No. 8:04-md-2523, 2007 WL 1288354, at *6 (M.D. Fla. May 2, 2007) (excluding evidence of adverse events as more prejudicial than probative because "simply because a person takes drugs and then suffers an injury does not show causation. Drawing such a conclusion from temporal relationships leads to the blunder of *post hoc ergo propter hoc* fallacy."); *In re Norplant Contraceptive Products Liab. Litig.*, 1997 WL 80527, at *1 (excluding adverse event reports because of the risk of confusion and time required for Defendants to present evidence to rebut

---

[3] *See also In re Meridia Products Liability Litigation*, 328 F. Supp.2d 791, 807–08 (N.D. Ohio 2004) (Meridia); *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1211 (10th Cir. 2002) (Parlodel); *Smith v. Pfizer Inc.*, No. 3:05–0444, 2010 WL 1754443, at *5 (M.D. Tenn. Apr. 30, 2010) (Neurontin); *Lopez v. Wyeth-Ayerst Laboratories*, Inc., No. 97-15143, 1998 WL 81296, at *1 (9th Cir. 1998) (flu vaccine).

their significance).   Admission of adverse event reports pose the risk of "trials within the trial," disputing causality between the event and medicine with respect to each individual report.

Plaintiff also suggests that these reports are admissible as "notice" of a safety issue that ought to have been acted on differently or sooner.  But where Plaintiff intends to use these out of court statements to prove the truth of the matter asserted—that Taxotere caused the reported hair loss—they are classic hearsay.  *See Klein v. TAP Pharm. Products, Inc.*, 518 F. App'x 583, 584 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 800, 187 L. Ed. 2d 612 (U.S. 2013) *reh'g denied*, 134 S. Ct. 1055 (2014) (excluding adverse event reports as hearsay of "uncertain reliability, lacking information relevant to causation.");  *see also Hendricks v. Ford Motor Co.*, No. 4:12-cv-71, 2012 WL 4478308, at *1 (E.D. Tex. Sept. 27, 2012) ("A party cannot circumvent the hearsay rules [] by arguing that the hearsay is offered not to show the truth of the matters asserted but rather to show the opposing party's knowledge of the truth of the matters asserted.");  *Goldstein v. Centocor*, No. 05-cv-21515, 2007 WL 7428597, at *1–4 (S.D. Fla. May 14, 2007) (adverse event reports are inadmissible hearsay);  *Appleby v. Glaxo Wellcome, Inc.*, No. 04-cv-0062, 2005 WL 3440440, at *3 (D.N.J. Dec. 13, 2005) ("compilations of information or recommendations submitted by outsiders to the FDA, including adverse event reports" are inadmissible hearsay).[4]

Adverse event reports are not admissible to prove "notice" because they intrinsically pose a rhetorical question: notice of what?  *Goldstein*, 2007 WL 7428597, *2–3 ("Defendants cannot

---

[4] Where adverse event reports are made by healthcare providers under 21 U.S.C. § 360i(b), federal law prohibits the use of such reports in any civil action: "[N]o report made under [section 360i(b)(1)] by (A) a device user facility, (B) an individual who is employed by or otherwise formally affiliated with such a facility, or (C) a physician who is not required to make such a report, shall be admissible into evidence or otherwise used in any civil action involving private parties unless the facility, individual, or physician who made the report had knowledge of the falsity of the information contained in the report."  Courts have held that this language renders such reports inadmissible. *See In re Medtronic, Inc.*, 184 F.3d 807, 811–12 (8th Cir. 1999) (information "contained in or gleaned from" reports not discoverable by mandate of federal law); *Adcox v.*

be considered to have manifested an adoption or belief in the truth of the reports to the extent that it may have forwarded them to FDA under a legal duty to do so."); *see also See Stupak v. Hoffman-La Roche, Inc.*, 326 Fed. Appx. 553, 560 (11th Cir. 2009) (holding that case reports were insufficient to establish notice of causation); *Moon v. Advanced Med. Optics, Inc.*, No. 4:08-cv-0021, 2010 WL 11500832, at *8, n.3 (N.D. Ga. Dec. 29, 2010) ("Plaintiffs might not be able to use the case reports to prove notice."); *Wolf v. Proctor & Gamble Co.*, 555 F. Supp. 613, 622 (D.N.J. 1982) (finding that complaints from a few patients our of thousands of users was "not very probative of the fact that defendants were put on notice of the defect at issue in this case"). In this case, Plaintiff has "other evidence, i.e., clinical trials, to submit at trial on the issue of 'notice.'" *In re Norplant Contraceptive Prods. Liab. Litig.*, 1997 WL 80527, at *1. Any probative value to be gleaned from admitting the reports as evidence of "notice" would be substantially outweighed by the prejudicial effect. *See In re Accutane Prods. Liab.*, 2007 WL 1288354, at *6 ("to admit the causality assessments for the purpose of establishing notice would be more prejudicial than probative, and would inevitably confuse the jury.").

Moreover, the AERs relied on by experts in this case cannot be probative of notice because many of the reports upon which Plaintiff's experts have relied post-date Plaintiff's chemotherapy treatment. *See, e.g.*, Madigan Report at 13–16 (Plaintiff was treated in 2011, but Dr. Madigan includes AERs through 2017 in his expert analysis) (**Ex. I** to Rec. Doc. 7655-3); Kessler Report at 39–41 (relying on Dr. Madigan's analysis of reports through 2017 in reaching his conclusions) (**Ex. A** to Rec. Doc. 7655-3). And, AERs that predate Plaintiff's treatment are confounded by a host of potentially-contributing patient specific factors—*e.g.*, age, menopausal status, type of

---

*Medtronic, Inc.*, 131 F. Supp. 2d 1070, 1072, 1075–76 (E.D. Ark. 1999) (reports and information contained therein not discoverable under federal statute).

breast cancer diagnosis, stage of cancer at diagnosis, chemotherapy regimen, chemotherapy dosage, endocrine therapy, health history, health condition, family history, hair care practices, vitamin deficiencies, and degree, duration and locations of the hair loss, among other factors. A prerequisite for reports to constitute legal "notice" is substantial similarity—these reports are not substantially similar with the patient's distinct medical histories, regimens, cancer diagnoses, and differences in hair loss, and Plaintiff has failed to make any showing to the contrary. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, MDL No. 2179, 2012 WL 413860, at *3 (E.D. La. Feb. 9, 2012) (excluding evidence of other incidences where the plaintiff failed to demonstrated any substantial similarity between the prior incidents and the incident at issue); *Crappell v. Boh Bros. Constr. Co., LLC*, No. 06-1315, 2010 WL 11549530, at *2 (E.D. La. Dec. 21, 2010) (prior accident was neither substantially nor reasonably similar to the accident at issue, thus precluding admission of the prior accident to show notice); *LaForge v. ECC Operating Servs.*, No. 07-523, 2009 WL 10679833, at *2–3 (E.D. La. Sept. 11, 2009) (granting defendant's motions to preclude evidence of prior accidents because plaintiff failed to show requisite similarity); *Pierson v. Ford Motor Co.*, No. 06-cv-6503, 2008 WL 7084522, at *6 (N.D. Cal. Aug. 1, 2008) (excluding evidence of other accidents that are not substantially similar to the subject crash); *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) (excluding evidence of subsequent incidents to show notice of a defect); *Rutledge v. Napco, Inc.*, 992 F.2d 1217, at *1–2 (6th Cir. 1993) (excluding other accidents involving the defendant's electroplating machines based on a lack of substantial similarity). If these reports are not sufficiently reliable to show a causal link, the reports are similarly not sufficiently reliable to serve as notice. As such, evidence of AERs or other complaints involving patients other than Plaintiff should be excluded.

6.    **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE PRESENCE, ABSENCE, OR IDENTITY OF DEFENDANTS' CORPORATE REPRESENTATIVE AT TRIAL.**

Sanofi rests on its Memorandum in Support of its Motion No. 6 to Preclude Evidence or Argument Concerning Presence, Absence, or Identity of Sanofi's Corporate Representative at Trial, (Rec. Doc. 7655-3) at 19 (July 16, 2019).

13

**7.    MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' EXECUTIVE AND/OR EMPLOYEE COMPENSATION.**

Sanofi rests on its Memorandum in Support of its Motion No. 7 to Preclude Evidence or Argument Concerning Defendants' Executive and/or Employee Compensation, (Rec. Doc. 7655-3) at 21 (July 16, 2019).

8.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE COST OF TAXOTERE OR PRESCRIPTION DRUG PRICING GENERALLY.**

Plaintiff implies that she does not oppose exclusion of evidence or argument regarding the cost of prescription medications, generally, or the price of Taxotere, specifically.   However, Plaintiff then states that she seeks to admit evidence of the price of Taxotere to demonstrate "Sanofi's motives with respect to labeling of Taxotere."   *See* Plf's Opp., Rec. Doc. 7847-2, at 18. Attempting to use the price of Taxotere as evidence that Sanofi improperly competed with lower-priced generic Taxol manufacturers requires a bold departure from the facts of this case. The price of Taxotere is irrelevant to this litigation, and any probative value associated with the cost of the medication is substantially outweighed by its prejudicial effect.   Indeed, such an argument would cause confusion and waste the Court's time and resources.

This Court has rejected evidence related to prescription medicine pricing in the past. *See, e.g.*, *In re Xarelto Prods. Liab. Litig.*, MDL No. 2592, No. 14-cv-2720, Rec. Doc. 6254, at *14 (E.D. La. Apr. 18, 2017) (granting defendants' motions to exclude evidence concerning defendants' prescription drug pricing).   Similar to this Court's prior ruling, the price of Taxotere has nothing to do with whether the warnings for Taxotere were adequate or whether Taxotere caused Plaintiff's injuries.   Indeed, evidence concerning the price of Taxotere will not make any material fact more or less probable in this litigation and thus, it is not admissible at trial.   In particular, Plaintiff Earnest was administered *generic* docetaxel *after* the end of Sanofi's patent exclusivity.   She took the medicine as manufactured under Sanofi's generic branding "Winthrop." There is not, and has never been, any testimony or evidence fairly developed or disclosed in discovery about the comparative price of generic docetaxel versus paclitaxel.   Nor is there any evidence that Dr. Carinder relied on any Sanofi marketing whatsoever—let alone drug pricing—

in deciding to prescribe docetaxel to Ms. Earnest. *See* Sanofi Motion *in Limine* Nos. 17 and 20, Rec. Doc. 7657-1 at 8–11.

Regardless, evidence concerning the price of Taxotere should be excluded under Federal Rule of Evidence 403 because any marginal probative value would be substantially outweighed by the near certainty of unfair prejudice and jury confusion. Such evidence would also delay trial and waste the Court's time by forcing Sanofi to present rebuttal evidence detailing the economic and market factors that impact prescription medication pricing. Accordingly, evidence related to the price of Taxotere should be excluded from trial.

9.      **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE FINANCES OR EMPLOYMENT DECISIONS.**

Plaintiff asserts that Sanofi's Motion is overly broad but fails to present any proper basis (or persuasive authority) upon which evidence of Sanofi's finances (e.g., company sales, pricing, profits, net worth) or employment decisions (e.g., hiring, layoffs, termination, compensation) should be permitted at trial.

Although Plaintiff points to decisions from the federal courts in Illinois, Nebraska, and Utah, this Court has ruled that evidence and argument related to a company's profitability, sales, market share, or prescription medicine pricing should be excluded from trial. *See In re Xarelto Prods. Liab. Litig.*, MDL No. 2592, No. 14-cv-2720, Rec. Doc. 6254, at *14 (E.D. La. Apr. 18, 2017) (granting defendants' motions to exclude evidence and argument concerning: (1) actual or anticipated profits from the sale of Xarelto; (2) defendants' overall sales, profitability, and market share; (3) prescription medicine pricing; and (4) executive compensation); *F.H. Paschen, S.N. Nielson & Assocs. LLC v. Hiscox, Inc.*, No. 13-cv-5843, 2015 WL 13532830, at *2 (E.D. La. Nov. 25, 2015) ("This Court . . . finds that the prejudice that would result from the admission of evidence relating to Defendant's wealth or resources outweighs its probative value.").[5]  Indeed, other courts from this Circuit have similarly ruled that "evidence of profit margin is not admissible because the

---

[5] Plaintiff cites to *In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005), and states this Court has held that "finances and employment decisions are relevant for impeachment purposes when evidence of good motive is presented." Plf's Opp., Rec. Doc. 7847-2, at 20. However, the Court in *In re Vioxx* actually granted defendant's motion *in limine* to exclude evidence of motive and evidence relating to the assets and profitability of Merck or the compensation and financial decisions of its employees. In its opinion, the Court simply noted that this evidence "*may* have some relevance in cross-examination if Defendant's witness [sic] introduce good motive in some fashion." *In re Vioxx*, 2005 WL 3164254, at *1. Additionally, the Court's more recent jurisprudence from *In re Xarelto* suggests a shift towards precluding this type of evidence altogether. Accordingly, this Court should apply its ruling from *In re Xarelto*, and grant Sanofi's Motion *in Limine* without exception.

evidence is not relevant to any failure to warn issue." *In re Norplant Contraceptive Prods. Liab. Litig.*, MDL No. 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997).

As admitted by Plaintiff in her opposition, Plaintiff intends to use evidence of Sanofi's corporate finances and employment decisions solely to demonstrate that Sanofi is "a large, multinational pharmaceutical corporation with significant industry expertise and resources." Plf's Opp., Rec. Doc. 7847-2, at 19–20. However, as this Court has ruled in similar litigations, such evidence should excluded as substantially more prejudicial than probative. *See In re Xarelto*, MDL No. 2592, No. 14-cv-2720, Rec. Doc. 6254, at *14; *F.H. Paschen,* 2015 WL 13532830, at *2; Fed. R. Evid. 403. Indeed, even the Supreme Court has recognized this inherent risk of prejudice, noting that "evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses." *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (citing *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 416 (1994)).

Accordingly, evidence of Sanofi's corporate finances or employment decisions should be excluded from this litigation. Such evidence is irrelevant to Plaintiff's claim, and would only serve to confuse the jury and waste judicial time and resources.

10.   **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING EXPERT OPINIONS THAT EXCEED THE SCOPE OF PLAINTIFF'S EXPERTS' RULE 26 EXPERT DISCLOSURES.**

Sanofi rests on its Memorandum in Support of its Motion No. 10 to Preclude Evidence or Argument Concerning Expert Opinions that Exceeded the Scope of Plaintiff's Experts' Rule 26 Expert Disclosures, (Rec. Doc. 7655-3) at 29 (July 16, 2019).

11.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE INTENT, MOTIVES, OR STATE OF MIND.**

Plaintiff concedes that she intends to elicit improper testimony from her expert witnesses concerning Sanofi's "potential motivations, or state of mind" but downplays the impropriety of such testimony by focusing on the supposed reliability—not the relevance—of her experts' proposed testimony.[6]   Plaintiff also distorts her principal authority, *DePaepe v. General Motors Corp. See* 141 F.3d 715, 720 (7th Cir. 1998). Contrary to Plaintiff's assertions, *DePaepe* does not give expert witnesses *carte blanche* to testify about a litigant's motives.   *See id.*   Exactly the opposite: *DePaepe* held that the plaintiff's expert "could not testify *as an expert* that GM had a particular motive." *Id.* (emphasis in original).   *DePaepe* stands only for the unremarkable proposition that expert witnesses may present *scientific evidence* designed to rebut a litigant's explanation of certain events or decisions.   *DePaepe* therefore is consistent with decision-after-decision, from courts around the country, holding testimony concerning a company's motives, intent, or state of mind is both irrelevant and improper.   *See La Plante v. Am. Honda Motor Co., Inc.,* 27 F.3d 731, 739 (1st Cir. 1994) ("A defendant's motive for its action or inaction is, generally speaking, immaterial to the question of whether the defendant acted negligently."); *see also* Rec. Doc. 7655-3 at 31-32 (collecting cases).

Moreover, assuming *arguendo* that Sanofi's motive or intent were relevant in this case, expert testimony would not assist the jury in determining Sanofi's motive or intent.   The jury is perfectly capable of hearing the facts and making that determination for itself.   *See In re Rezulin,*

---

[6] For instance, Plaintiff argues that "Dr. Feigal is certainly qualified to testify as to industry standards and expectations regarding the communication of safety risks to doctors and patients—all of which is relevant under Louisiana's learned intermediary doctrine." Industry standards and expectations regarding communication of safety risks, however, is not at all relevant to the issue raised in Motion *in Limine* No. 11. Further, to the extent that Dr. Feigal seeks to offer opinions regarding those standards and expectations, Sanofi refers the Court to its Memorandum in Support of Sanofi Defendants' Motion to Exclude Expert Testimony of Ellen Feigal, M.D. (Rec. Doc. 6149).

309 F. Supp. 2d at 545–57; *In re C.R. Bard Pelvic Repair Sys. Prod. Liab. Litig.*, 948 F. Supp. 2d 589, 611 (S.D. W.Va. June 4, 2013), *on reconsideration in part* (June 14, 2013) ("expert testimony [on knowledge, state of mind, and intent] will not assist the jury"). Nevertheless, Sanofi's motives, intent, and/or state of mind have no bearing on whether Taxotere caused the alleged injuries in this case; nor do they have any bearing on the prescribing physicians' decisions to use a Taxotere-containing regimen to treat Plaintiff Earnest.

Finally, even if Plaintiff had established the relevance or propriety of testimony concerning Sanofi's motive, intent, or state of mind, Plaintiff failed to present any substantive response to Sanofi's Rule 403 arguments, instead relying only on conclusory statements that "such evidence is highly probative," "by no means unfairly prejudicial," and "will [not] confuse the jury or waste time." Plf's Opp., Rec. Doc. 7847-2, at 24. Without more, Plaintiff's unfounded, conclusory statements are insufficient to meet her burden to rebut Sanofi's Rule 403 concerns. The Court therefore should exclude all evidence and argument regarding Sanofi's corporate intent, motives, and/or state of mind, including evidence and argument suggesting that it had a financial motive to downplay potential risks associated with Taxotere. For these and the reasons more fully set forth in Sanofi's Memorandum in Support of Sanofi Defendants' Omnibus Motion to Preclude Improper Expert Testimony, Rec. Doc. 6158, the Court should exclude such evidence or argument.

12.  **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING DEFENDANTS' CORPORATE INTEGRITY AGREEMENTS, GOVERNMENT INVESTIGATIONS OR SETTLEMENTS, OR ANY OTHER ALLEGED "BAD ACTS" UNRELATED TO TAXOTERE.**

Sanofi rests on its Memorandum in Support of its Motion No. 12 to Preclude Evidence or Argument Concerning Defendants' Corporate Integrity Agreements, Government Investigations or Settlements, or any other Alleged "Bad Acts" Unrelated to Taxotere, (Rec. Doc. 7655-3) at 34 (July 16, 2019).

**13.     MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING SPECIFIC LITIGATION CONDUCT.**

Plaintiff concedes that she "finds no issue with Sanofi's request [to preclude all references to settlement negotiations]." *See* Plf's Opp., Rec. Doc. 7847-2, at 27. Accordingly, the Court should preclude Plaintiff from proffering evidence or argument that references settlement negotiations.

**Document Production and Confidentiality.** Regarding document confidentiality, Plaintiff cites no authority to support her position. The confidentiality stamp is a litigation marker to preserve documents as confidential pursuant to a protective order—not a substantive piece of evidence. Moreover, once documents are admitted into evidence, they become part of the public record. As such, they lose their confidentiality. Leaving the confidentiality designations on documents risks confusing the jury regarding the source of those designations, *i.e.*, jurors may erroneously conclude that Sanofi—not its lawyers—designated those documents confidential in the normal course of business. This, however, risks the jury improperly basing its verdict on its reaction to those designations, rather than the substance of the documents themselves.

Moreover, Sanofi simply asks the Court to preclude Plaintiff from proffering evidence or argument that Sanofi's designation of documents or testimony as "confidential," or its document production generally, *was improper. See* Rec. Doc. 7655-3 at 37–38. In other words, Sanofi seeks to preclude Plaintiff from offering evidence or arguing that Sanofi was, to use Plaintiff's words, "hiding the ball" because it designated confidential information as "confidential." Yet that is exactly what Plaintiff intends to do. *See* Plf's Opp., Rec. Doc. 7847-2, at 27 (incorrectly arguing that precluding Plaintiff from suggesting that Sanofi is "hiding the ball" amounts to "an adverse inference [that] would be troublesome for a multitude of reasons, including Plaintiff's failure-to-warn claims.").

23

**The Parties' Motions, Sanofi's Objections, and Court Rulings.** Plaintiff also distorts Sanofi's argument concerning the parties' motions, Sanofi's objections to discovery, and the Court's rulings on those issues. *See* Rec. Doc. 7655-3 at 38–39; Plf's Opp., Rec. Doc. 7847-2, at 28. While Plaintiff concedes that "some such evidence should not be presented at trial," she "disagrees with Sanofi's request to the extent that it usurps the Court's express power to *sua sponte* address previously filed motions and rulings with the jury."[7] *Id.* (emphasis in original). Sanofi does not ask the Court to "hamstring itself" in this manner. *See* Plf's Opp., Rec. Doc. 7847-2, at 28. Rather, Sanofi simply asks the Court to "exclude *evidence and argument* regarding the parties' litigation conduct [and the Court's rulings] . . . because [they are] not relevant to the claims at issue in this case." Rec. Doc. 7655-3 at 38 (emphasis added); *see also id.* (collecting cases). Indeed, evidence or argument concerning the parties' motions, Sanofi's objections, or the Court's rulings could mislead and prejudice the jury, and confuse the issues—a fact Plaintiff concedes by failing to address it in her Opposition. *See* Fed. R. Civ. P. 403; *Harris*, 2018 WL 3084709, at *8; *see also Robertson v. Gautreaux*, 2017 WL 690542, at *6 & n.48 (M.D. La. Feb. 21, 2017) ("failure to address Defendants' failure to train arguments . . . results in abandonment of these claims" (citing *Barlow v. Safety Nat'l Cas. Corp.*, 2014 WL 1327922, at *5 n.7 (M.D. La. Mar. 31, 2014)). The Court therefore should exclude all evidence and argument regarding the parties' litigation conduct in the form of motions filed, objections asserted, and rulings issued.

---

[7] Notably, Plaintiff never identifies the extent to which she believes Sanofi's motion has this effect.

24

14.     **MOTION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ALLEGED FRAUD ON THE FDA.**

Sanofi rests on its Memorandum in Support of its Motion No. 14 to Preclude Evidence or Argument Concerning Alleged Fraud on the FDA, (Rec. Doc. 7655-3) at 40 (July 16, 2019).

Date:  August 16, 2019

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile: 305-358-7470
hsastre@shb.com

***Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on **August 16, 2019**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ *Douglas J. Moore*
Douglas J. Moore