UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

**THIS DOCUMENTS RELATES TO**
*Kelly Gahan*
Case No. 2:16-cv-15283

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
### FOR SUMMARY JUDGMENT AGAINST PLAINTIFF KELLY GAHAN

Colorado, like Louisiana, recognizes that the learned-intermediary doctrine requires a plaintiff in a prescription-drug warnings case to prove *causation—i.e.*, "had the warning been adequate, the treating physician would not have prescribed that drug[.]" *Lynch v. Olympus Am., Inc.*, 2019 WL 2372841, at *14 (D. Colo. June 5, 2019) (quoting with approval *Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008)). "Such a showing requires that the plaintiff 'demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.'" *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1019 (10th Cir. 2001) (quoting *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 813 (5th Cir. 1992)). Summary judgment is warranted here for three reasons:

**1. Dr. Borges had independent knowledge of the allegedly non-disclosed risk.**

First, Plaintiff cannot establish causation because Dr. Borges had independent knowledge of the allegedly non-disclosed risk (i.e. a potential risk of permanent alopecia associated with Taxotere) *before* she prescribed Taxotere to Plaintiff. Plaintiff's Opposition confirms that the following facts are admitted or undisputed:

- *Before* she prescribed Taxotere to Plaintiff, Dr. Borges had "knowledge of three prior patients who experienced permanent hair loss after treatment with TCH," (Pl.'s Opp. Factual Stmt. at ¶ 25);

- Also before, Dr. Borges "disclosed" and "advised" Plaintiff about her experience with those three prior patients, *id*. at ¶¶ 14, 21, and explained that those patients had taken a TCH regimen and "had not had their hair grow back years into the future." *See* 8/1/2019 Dep. of Dr. Virginia Borges at 192:8-11 ("the way I was able to describe it to her is that I had seen it in three patients [a]nd it was a concern because those three patients had gotten the TCH regimen"); *id*. at 224:23-25 ("I had conveyed to [Plaintiff] that the three patients . . . had not had their hair grow back years into the future.") (Ex. 1); and

- Dr. Borges had also warned other patients about the risk of permanent alopecia associated with Taxotere prior to her treatment of Plaintiff (Pl.'s Opp. Factual Stmt. at ¶ 20).

Where, as here, Plaintiff's prescribing physician had "independent knowledge" of the allegedly non-disclosed risk, Plaintiff cannot meet her burden to establish causation. *See Eck v. Parke, Davis & Co*., 256 F.3d 1013, 1022-24 (10th Cir. 2001) (collecting cases and affirming district court's grant of summary judgment based on lack of causation where "[Plaintiff's prescribing physician] testified about her independent knowledge of the risk of the potential interaction between the two drugs, and indicated that if presented with even a higher risk, she would have prescribed [the drug in question]").

**2. Dr. Borges testified that she still would have prescribed Taxotere to Plaintiff.**

Second, Plaintiff cannot establish causation because Dr. Borges testified unequivocally that, in 2013, she still would have prescribed a TCH regimen to treat Plaintiff's breast cancer—even knowing what she knows today:

2

> Q. If you had access to all those materials back in 2013 when making a recommendation for Dr. Gahan, would you have still recommended she take TCH?
>
> A. What I recommended to her then and what I would recommend to her now is that she takes TCH and uses the cold caps.
>
> Q. *And no matter what label change that might have happened for the Taxotere label would not have changed your recommendation?*
>
> A. *Not for the use of that chemotherapy regimen.*

Ex. D to Defs.' Mot. at 107:5-22 (Rec. Doc. 5730-6) (emphasis added). Dr. Borges recently underscored why; namely, she believes Taxotere is "a great drug" and "one of [her] favorite breast cancer drugs since [she] started using it" during her fellowship, and that "never in a million years would [she] have stopped giving women this drug" because it is so effective. *See* Ex. 1, 8/1/2019 Borges Dep. at 217:6-11. In light of Dr. Borges's testimony, Plaintiff cannot meet her burden to "demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Eck*, 256 F.3d at 1019.

Plaintiff attempts to avoid summary judgment by relying on the standard this Court applied in deciding a similar motion in *Earnest* (Rec. Doc. 7571) and identifying facts concerning what *Plaintiff*, not Dr. Borges, might have done differently if provided additional information.[1] (*See* Rec. Doc. 8062 at 8-11.) Plaintiff's reliance on the *Earnest* Order is misplaced because that order involved application of Louisiana law. In any event, Colorado law applies here, and federal courts

---

[1] Plaintiff also erroneously contends that the learned-intermediary doctrine applies only when an adequate warning is given. Courts that have addressed this issue, however, have made clear that the analytical framework for the learned-intermediary doctrine in the context of causation assumes that the warning is *inadequate*, and then examines whether the physician's decision would have changed with an *adequate* warning. *See Stahl v. Novartis Pharmas. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002) ("The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician*. (emphasis in original)).

3

in the District of Colorado have predicted that the Colorado Supreme Court would hold that the actions of the *treating physician* are the relevant consideration in determining causation in a warnings case like this. *See Lynch*, 2019 WL 2372841, at *14 (noting that one of the "the applicable elements" of a failure to warn claim is "had the warning been adequate, the ***treating physician*** would not have prescribed that drug") (emphasis added); *Lynch*, 2018 WL 5619327, at *11 ("The learned intermediary doctrine recognizes that a medical professional stands between the patient and the product, and ***thus the failure to warn is evaluated in the context of warning the medical professional, not the patient***." (emphasis added)); *see also id.* at *13 ("Plaintiff's claim fails because she does not allege the failure to warn as applied to her physician [as opposed to plaintiff herself]"); *Eck*, 256 F.3d at 1019.

That said, Plaintiff's claims still do not survive when applying the decision in *Earnest*, which stated that "[t]he question [is] whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, whether the patient would have inquired about other options, what the doctor would have recommended, and what decision the plaintiff would have ultimately made." (Rec. Doc. 7571 at 16.) Plaintiff still cannot establish causation because, before choosing Taxotere, ***she knew the recommended TCH regimen carried risk of permanent alopecia***. Dr. Gahan is a "sophisticated plaintiff," Rec. Doc. 3917 at 8, who not only received advice from her treating physician but independently researched the risk of permanent hair loss before undergoing chemotherapy treatment. For instance, Dr. Borges advised Plaintiff that three of Dr. Borges's patients had experienced permanent alopecia after undergoing a TCH chemotherapy regimen. (Pl.'s Opp. Factual Stmt. at ¶ 25.) Moreover, Plaintiff does not dispute that both she and Dr. Borges were aware of, and discussed, Dr. Scot Sedlacek's 2006 abstract regarding the risk persistent or permanent alopecia following the use of Taxotere. (Pl.'s

4

Opp. Factual Stmt. at ¶ 21.)  Indeed, Plaintiffs in this MDL, including Plaintiff Gahan, expressly rely on the Sedlacek abstract to support their claim that Sanofi knew the risk of permanent alopecia with Taxotere and that only Taxotere causes this alleged injury.[2]  Plaintiff also conducted her own research on the risks of permanent alopecia from chemotherapy regimens using Taxotere.  As part of that research, Plaintiff reviewed medical literature, case studies, articles, and posts on the "Taxotears" website about the risk of permanent hair loss and weighed that risk against the risks associated with other chemotherapy regimens, such as a Taxol (i.e., ACTH) regimen.  *See* Ex. E to Defs.' Mot. at 23:2-14, 23:24-31:25 (Rec. Doc. 5730-7); *see also* Pl.'s Opp. Factual Stmt. at ¶¶ 10-11.  In fact, Plaintiff testified that she weighed the risk of permanent hair loss against the risks associated with ACTH because "[she] had read the social media posts about permanent hair loss, and [she] had felt like [she] couldn't go on living if that happened to [her]."  Ex. 2, Deposition of Kelly Gahan at 118:8-12, 122:22-123:8.  As such, both Dr. Borges and Plaintiff knew and weighed the risk of permanent hair loss before ultimately deciding on a TCH regimen to treat Plaintiff's breast cancer.

Plaintiff attempts to create a genuine issue of material fact where one does not exist by suggesting she would have requested a different chemotherapy regimen, such as ACTH, had Dr. Borges known in 2013 and relayed to Plaintiff what she knows today.  First, Dr. Gahan and Dr. Borges considered and rejected the ACTH regimen in favor of the Taxotere regimen, despite knowing the potential risk of permanent hair loss.  Second, because of a plaintiff's potential bias

---

[2] *See* Am. Long Form Master Compl. ¶¶ 149, 183 (Rec. Doc. 689): "Dr. Sedlacek's 2006 study, as described above, further demonstrates that Taxotere causes permanent hair loss. His study divided patients he treated from January of 1994 to December of 2004 into three groups. The first group, which contained 258 patients, received Doxorubicin. None suffered permanent alopecia. The second group, which contained 126 patients, received Doxorubicin and Taxol. Again, none suffered permanent alopecia. The third group contained 112 patients who received Doxorubicin and Taxotere. Of those patiens, 6.3 percent suffered permanent alopecia with hair regrowth of less than 50 percent of the amount before chemotherapy."

5

when testifying based on hindsight, "such testimony is to be regarded with skepticism." *Niblack v. United States*, 438 F. Supp. 383, 389 (D. Colo. 1977) (explaining that Colorado courts apply a "reasonable patient" standard, "i.e. that a reasonable plaintiff would not have objected to such treatment had full disclosure been made" (citations omitted)); *see also Hondroulis v. Schuhmacher*, 553 So.2d 398, 412 (La. 1988) ("Because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure that the material information and risks been disclosed."). Here, Plaintiff's potential for hindsight bias in this case is particularly high, as evidenced by the fact she "instructed the VA Center not to release her [employment] records" and "encouraged at least one other potential witness to be less than forthcoming in this litigation." (Rec. Doc. 3917 at 8.) Putting aside Plaintiff's hindsight bias, the undisputed facts show that both Plaintiff and Dr. Borges weighed the risk of permanent hair loss before ultimately deciding to go forward with a TCH regimen to treat Plaintiff's breast cancer. Even under the standard this Court applied in *Earnest*, Plaintiff's claims therefore fail.

     Plaintiff reliance on *Hamilton v. Hardy*, 549 P.2d 1099 (Colo. App. 1976) also is misplaced. The statement in *Hamilton*, "[w]hat the doctor might or might not have done had he been adequately warned is not an element plaintiff must prove as a part of her case," is limited to the facts of *Hamilton* and not applicable here. *Hamilton* is a 43-year-old decision in which the Colorado Court of Appeals considered whether a physician's negligence (in continuing to prescribe oral contraceptive Ovulen to the plaintiff upon learning that her headaches had become more severe and frequent while taking that drug) could constitute an intervening cause that negated the element of causation on an inadequate warnings claim against the drug manufacturer. *Id*. at

6

1102, 1109. The *Hamilton* court's holding—that "the prescribing doctor's conduct may not insulate the manufacturer from liability where the inadequacy of the warning may have contributed to plaintiff's injury"—has been significantly clarified and limited by subsequent Colorado state and federal authorities. *See*, *e.g.*, *Peterson v. Parke Davis & Co.*, 705 P.2d 1001, 1003 (Colo. App. 1985) (citing *Hamilton* for the proposition that, "[w]here, as here, an attending physician, in prescribing and in supervising the use of a drug, disregards the manufacturer's warnings and instructions, it is that conduct which renders the product unreasonably dangerous, and thus defective, and the adequacy of the warnings and instructions are not relevant."); *Fraley v. Am. Cyanamid Co.*, 589 F. Supp. 826, 828 n.2 (D. Colo. 1984) (discussing *Hamilton* and concluding, "[n]evertheless, a defendant drug manufacturer may show that a physician's negligence was an intervening cause of a defendant's injury to rebut the plaintiff's prima facie showing that failure to warn was a proximate cause"). In light of these subsequent authorities, *Hamilton* cannot be read to eliminate or relax the legal requirement that Plaintiff has a prima facie burden to show *causation*—*i.e.*, "had the warning been adequate, the treating physician would not have prescribed that drug[.]" *Lynch*, 2019 WL 2372841, at *14.

In sum, Plaintiff cannot establish causation on her warnings claims. By itself, Dr. Borges's knowledge regarding the risk of permanent alopecia before treating Plaintiff breaks the chain of causation, *see Eck*, 256 F.3d at 1019, as well as Dr. Borges' testimony that, had she known in 2013 what she knows today, she still would have prescribed Taxotere to treat Plaintiff's breast cancer. Colorado law therefore compels summary judgment in Defendants' favor.[3]

---

[3] Courts routinely grant summary judgment where, as here, a plaintiff fails to introduce evidence that a different warning would have caused her treating physician to change her decision to prescribe the medication at issue. *See* Defs.' Mem. of Law In Support of Their Mot. for Summ. J. at 9-10 (Rec. Doc. 5730-2) (collecting cases).

7

### 3. Plaintiff failed to raise a genuine issue of material fact on her fraud-based claims.

<u>Third</u>, for her fraud-based claims, Plaintiff bears the burden of establishing that Defendants made a representation to Plaintiff and that she relied on that representation or omission to her detriment.  *See Brody v. Bock*, 897 P.2d 769, 775-76 (Colo. 1995).

There is no dispute that Defendants made no representations to Plaintiff directly.  Thus, Plaintiff relies on *Hamilton* and *DeVries v. Taylor*, No. 92-B-409, 1993 WL 331001, at \*6 (D. Colo. June 28, 1993), for the proposition that Plaintiff can establish reliance "through Dr. Borges['s] reliance" on Sanofi's alleged representations or omissions.  (Rec. Doc. 8062 at 12-13.)  But Plaintiff cannot establish the reliance in this manner, because, as explained above, there is no dispute that Dr. Borges had independent knowledge of the information that Plaintiff claims was omitted or concealed.  *See* Jury Charge, *Dedrick (In Re Vioxx Prod. Liab. Litig.)*, Case No. 2:05-md-01657-EEF-DEK (E.D. La. Dec. 13, 2006) (Doc. 9443 at 12) ("If the Plaintiff's physician was aware of the omitted facts, the Plaintiff cannot recover under [a theory based on misrepresentation] because his physician could not have relied on the misrepresentation or omission."); *see also Mullen v. Allstate Ins. Co.*, 232 P.3d 168, 173 (Colo. App. 2009) (identifying ignorance of the allegedly concealed or misrepresented fact as an essential element of a plaintiff's claim).  Without reliance, Plaintiff cannot establish causation.

Further, Defendants had no duty to communicate directly with Plaintiff and thus Plaintiff's reliance on *DeVries*—a case involving securities-based claims relating to the *investment in and operation of* a prescription drug company—is misplaced.  Colorado law is clear: a prescription drug manufacturer's duty to warn extends *only* to the prescribing physician.  *O'Connell*, 250 P.3d at 1280-81 (holding that "where prescription drugs are concerned, the manufacturer's duty to warn has been limited to an obligation to advise the prescribing physician of any potential dangers that

8

may result from the drug's use" and affirming the trial court's grant of summary judgment in defendants' favor based on the learned-intermediary doctrine). Moreover, *O'Connell* also cites *Hamilton* in reaching its holding but nevertheless concludes that manufacturers' duties extend only to prescribing physicians. *Id.* at 1281. As such, *Hamilton* cannot support Plaintiff's attempt to circumvent application of the learned-intermediary doctrine to her fraud-based claims. *See id.*; *see also Caveny v. Ciba-Geigy Corp.*, 818 F. Supp. 1404, 1406 (D. Colo. 1992).

Because there is no genuine dispute as to causation, Defendants therefore are entitled to summary judgment on Plaintiff's fraudulent misrepresentation, fraudulent concealment, and fraud and deceit claims.

## CONCLUSION

The Court should grant Defendants' motion for summary judgment on Plaintiff's claims.[4]

---

[4] Plaintiff concedes that Count IV (Negligent Misrepresentation) is subject to summary judgment (Rec. Doc. 8062 at 14), so Defendants' Reply does not address that Count.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com


Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*