UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO
Deborah Johnson, 2:16-cv-15607
Tanya Francis, 2:16-cv-17410

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF DEBORAH JOHNSON'S AND PLAINTIFF TANYA FRANCIS'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION/AMENDMENT OF JUDGMENTS (DOCS. 7697 AND 7698) – BASED ON ORDER AND REASONS (DOC. 7571)**

MAY IT PLEASE THE COURT, Plaintiffs Deborah Johnson and Tanya Francis, through the Plaintiffs' Steering Committee ("PSC"), submit this reply memorandum in support of their Motion for Reconsideration and respectfully request that Sanofi's motions for summary judgment based on the statute of limitations (Docs. 5734 and 6081) be denied on reconsideration.

ARGUMENT

A. **Sanofi conceded in open court that six months of alopecia following chemotherapy does not equal "permanence."**

First, Plaintiffs have met the requisite standard for granting reconsideration, given the Court's comments and Sanofi's admissions at the July 29, 2019 hearing on the parties' various *Daubert* motions. Though these comments are excerpted in Plaintiffs' opening brief, they warrant repeating because they are directly relevant to the issues addressed by the Court in, and temporaly came after, the Order and Reasons granting summary judgment against Plaintiffs Johnson and Francis:

> THE COURT: So are those cases that were dismissed because of statute of limitations - - I'm just trying to figure out when we figure out when is it permanent.

1

> If they can regrow, what - - go ahead. To me it's a bit of a difficult place that we find ourselves because what I'm hearing is six months post we consider that persistent, not permanent [. . . .]
>
> MR. SEARS: Hair loss is very multifactorial, so it's difficult to say when hair loss is permanent.

(Ex. A to Pls' Mot. for Reconsideration of Judgments, Rec. Doc. 7857-2, Aug. 6, 2019, Tr. of Pl's Mot. to Exclude Dr. Shapiro's & Dr. Smart's Stem Cell Opinions, dated July 25, 2019, at 30:1-12.) For this reason alone, Plaintiffs have met the requisite standard for granting reconsideration or in the alternative for clarification/amendment of the Order. Sanofi's acknowledgment regarding permanency also independently justifies denial of Sanofi's motions for summary judgment.

### B. The mere passage of time after chemotherapy and initial hair loss does not put Plaintiffs on notice of permanent alopecia, a separate injury.

Plaintiffs' opening brief extensively sets forth why there is no proper basis for imposing one of several durational definitions of what constitutes "permanent" alopecia retroactively and indiscriminately to every MDL Plaintiff on the question of notice of this condition.[1] Sanofi, itself, has used various periods of time to determine whether alopecia is permanent. Another important reason is that a patient's initial hair loss after chemotherapy is a distinct event, separate and apart from the changes caused by chemotherapy that prevent hair from later regrowing.

Sanofi continues to muddle this important distinction before the Court, most notably when playing the videotape deposition testimony of Dr. Tosti, Ms. Francis' specific causation expert,

---

[1] Plaintiffs do not contest that the injury at issue in this litigation should be and is cognizable and definable. However, that injury (known by leading clinicians and researchers as "permanent chemotherapy-induced alopecia," or PCIA) is not cognizable—let alone diagnosed—simply by counting the number of months after cessation of chemotherapy without hair regrowth. To the contrary, its diagnosis most crucially hinges on clinical presentation: *e.g.*, the diffuseness of the alopecia, the lack of regrowth of hair throughout body, the absence of (versus shrinking of) hair follicles. To argue, as Sanofi does here, that without a *durational* definition, the MDL Plaintiffs' cases fall apart for lack of cognizable injury is deceptive and false. While permanent alopecia might sometimes be defined in terms of time, it is nonetheless a distinct condition with an accepted and unique presentation, and is diagnosable by the use of a dermatoscope.

who testified that she does not know which chemotherapy agent causes hair to fall out. She said "hair loss" but clearly intended (when the other portions of the testimony are properly taken into account) to mean what causes the hair to fall out. She distinguishes that from what specifically causes the hair not to regrow and describes that as the condition permanent chemotherapy induced alopecia (PCIA). The condition at issue in this litigation, however, is a different and discrete occurrence: the inability or failure to regrow hair as a result of Taxotere.

Sanofi's argument that the passage of a set amount of time after the first type of injury (initial hair loss) constitutes uniform notice of the second type of injury (inability to regrow the hair) is an erroneous conflation of two distinct conditions. Just because Mrs. Johnson and Mrs. Francis knew that their hair fell out temporarily with chemotherapy does not mean that they were after an ambiguous period of time passed put on notice that they had suffered permanent follicular changes as well, especially where these two conditions present identically to the naked eye.

Neither Ms. Francis nor Ms. Johnson have degrees or experience in medical science to know or suspect the distinction between the two conditions. More importantly, neither woman had any reason to believe early on in their permanent alopecia that she had been victim to a tort. As Dr. Tosti testified, the two conditions of initial "hair loss" and "permanent alopecia" may very well have different causes. Temporary hair loss after chemotherapy and the passage of an ambiguous period of time (that neither of their physicians knew) that their hair hasn't regrown does not equate to notice that Taxotere may have caused permanent disfigurement. For instance, Sanofi has posited in its causation-related Rule 702 briefings that individual Plaintiffs' permanent alopecias were attributable to any number of naturally occurring changes in their bodies, like age or "post-menopausal status." Accordingly, inquiry notice that Taxotere may have been responsible for the alopecias at issue here was never triggered in the way claimed by Sanofi—by the mere

3

passage of a time period that is unknown after the very distinct injury of initial chemotherapy-induced hair loss.

### C. *Contra non valentem* prevents the running of prescription in these cases while Sanofi concealed the full risk of permanent alopecia in the United States.

Moreover, assuming *arguendo* that these Plaintiffs' duties to make an inquiry about the cause of their permanent alopecia had been triggered, Sanofi's continuing tortious concealment of the risk of permanent alopecia associated with Taxotere is of the type that is the very hallmark of the doctrine of *contra non valentem*. As set forth in Plaintiffs' opening brief in support of its motion for reconsideration, Louisiana law requires consideration of the reasonableness of plaintiff's action or inaction in light of "the nature of the defendant's conduct." *Campo v. Correa*, 828 So.2d 502, 511 (La. 2002); *Carter v. Haygood*, 892 So.2d 1261 (La. 2005). In this case, Sanofi concealed the risk of permanent alopecia associated with Taxotere from U.S. consumers, prescribers, and regulators until December 2015 *at the very earliest* when it was finally forced to include the complete safety picture from the relevant Taxotere clinical trial in its U.S. labeling which set forth the risk of permanent alopecia. (*See, e.g.*, Ex. B to Johnson Opp, Rec. Doc. 6536-1, Nov. 9, 2015 Polizzano Email ("Well this is going to be fun submitting > 4 year old labeling changes to the FDA now.").) Accordingly, even if Plaintiffs' inquiry duty had been triggered as early as Sanofi argues, under Louisiana law the drug maker's own actions prevent the running of prescription until, at the very earliest, the change in labeling language in December 2015.

### D. Sanofi's arguments for a "Lone Pine" order are procedurally inappropriate and otherwise meritless.

Defendants' using Plaintiffs' reconsideration motion as a vehicle for again requesting a "Lone Pine"-style order requiring medical diagnoses for all non-trial MDL Plaintiffs is patently

improper procedurally and should be disposed of on those grounds alone. The Court clearly addressed this request and allowed Sanofi to brief the issue *after* the first trial.

But that notwithstanding, the argument is wholly devoid of merit. Nowhere have Plaintiffs ever argued that "stem cell testing" is necessary to prove the permanence of a plaintiff's alopecia. To the contrary, Plaintiffs have time and again explained that experimental stem-cell staining techniques *have absolutely no diagnostic use at this time*. (*See* Pls' Opp. to Sanofi's Mot. to Exclude Expert Testimony on General Causation 27–30, Doc. 7513, July 1, 2019.) Moreover, neither this stem cell issue, nor alleged deficiencies in the "vetting" of MDL Plaintiffs' claims have any relevance to the issue of timeliness of Mrs. Johnson and Mrs. Francis's actions against Sanofi. If anything, to the extent Sanofi's opposition highlights the challenges in diagnosing PCIA before it updated Taxotere's label in 2015 to reflect the true prevalence of the condition, its argument actually supports Plaintiffs' position—that Sanofi's concealment of risk data prevented Plaintiffs from discovering their Taxotere-related causes of action.

For these reasons, Sanofi's improper request for a "Lone Pine" order should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Sanofi's motions for summary judgment based on the statute of limitations (Docs. 5734 and 6081) be denied on reconsideration.

Dated: August 27, 2019

Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

6

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 27, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                             */s/ Dawn M. Barrios*
                                             DAWN M. BARRIOS