UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO | |
| *Deborah Johnson* | HON. JANE TRICHE MILAZZO |
| Case No. 16-15607 | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TAX COSTS [REC. DOC. 7952] IN THE MATER DEBORAH JOHNSON V SANOFI**

Plaintiff Deborah Johnson, a breast cancer survivor, filed her products liability Complaint against mover-Defendants Sanofi-Aventis U.S., LLC and Sanofi US Services, Inc. ("Sanofi") in the instant MDL, eventually being selected as a potential Bellwether case. Ms. Johnson underwent Phase I discovery, was deposed, and answered discovery pleadings.

Defendant Sanofi filed a Motion for Summary Judgment alleging that plaintiff's case had prescribed. The matter was briefed, and oral argument was held. This Court held that Ms. Johnson had filed her case untimely, and granted a dismissal of her case. A motion for reconsideration was filed by Ms. Johnson, and is currently pending.

Because the Defendant prevailed in the original hearing, Defendant filed a Motion to Tax Costs, and now seeks the sum of $7,697.17. $7,677.17 of that sum is the total of four depositions purported to be costs recoverable by Defendant as the prevailing party.

Plaintiff objects to the awarding of costs in this matter.

1

## Law and Argument

In *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006), the Fifth Circuit noted "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party", including: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.

Here, the Defendant does not assert that Ms. Johnson brought her suit in bad faith.  To be sure, good intent on its own is not justification to deny the awarding of costs to a prevailing party. ''[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant.'' *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir.1999).

But when every one of the *Pacheco* factors cited above are present, this Court may deny or reduce costs.  The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S.560, (2012).

First, Deborah Johnson is not a wealthy woman.  As she testified in her deposition, she is on Social Security Disability.   Her 2017 statement indicates that she received $880 dollars a month income from her disability award[1], a sum that places her below the 2017 U.S. government income poverty level.  She is ill equipped to pay costs in an amount almost equal to that which encompasses her yearly income.

Second, while the exact parameter of the conduct which comprises "misconduct of the prevailing party" is not well defined by the jurisprudence, but there are some analogies here.  The issue in Deborah Johnson's prescription question involved a weighing of the Ms. Johnson's efforts to find out about her hair loss when seen in light of the defendant's withholding of that

---

[1] See Exhibit "A"

information from doctors and patients.    Ms. Johnson's efforts to find the cause of her alopecia[2] were deemed insufficient.   But there was no finding in the order dismissing plaintiff's case that the Defendant had warned of the risk of permanent alopecia to Ms. Johnson's treating oncologist or her other doctors.   The records shows that a warning of that risk was only added to the FDA approved label in 2015, years after Johnson took the drug.     So while this Honorable Court found the degree of Ms. Johnson's efforts to get an explanation of her hair loss to be lacking, the reason for that failure to obtain information about her hair loss was because none existed in the public sphere at the time she was inquiring.   The Defendant failed to disclose risks that it knew to be associated with its product despite a duty to warn of those very risks.   And while that fact alone was insufficient to save plaintiff's case from dismissal, it can be fairly said that the primary reason Ms. Johnson never received proper warnings was due to Sanofi's misconduct in not advising her Oncologist, Dr. Lewis, of the risk of permanent hair loss arising from Taxotere use.

Third, this was a close and difficult legal issue.   There was arguably case law on both sides supporting a dismissal or a denial.   Indeed, there is a Motion for Reconsideration pending. This was not a case where the result was crystal clear.   There is a dearth of cases that address on all fours the issue of the application of *contra non valentem* when a defendant is hiding information from an alleged late filing plaintiff, and that plaintiff did not search hard enough for information alleged to be unavailable due to the defendant's misconduct.   And while this Court found for the Defendant and dismissed plaintiff's case, it was a close and difficult ruling.

Fourth, Ms. Johnson's case provided a substantial benefit conferred to the public.   As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off" case.  As a potential bellwether, Ms. Johnson and her action provided guidance to the parties and the Court on issues relevant to the entire MDL.   The discovery aided the parties in defining

---

[2] Ms. Johnson's attempts to find out about her side effects consisted of speaking with Dr. Lewis and seeking medical records from two social workers.   When her initial attempts to get records failed, she gave up.  (Exhibit B")

3

issues pertinent to the MDL as a whole.

This can be seen when reviewing some of the alleged individual costs in the Johnson case, as set forth in Record Doc 7952-3, the affidavit of Harley Ratliff.[3]  Among the depositions listed are two that should be more accurately described as common to the entire MDL, rather than Deborah Johnson depositions.  They are depositions of Sanofi marketing representatives, and the depositions appear to not be limited to just one case.  If they are to be attributed solely to Deborah Johnson, then Sanofi should readily agree to the re-deposing of the reps in as many other cases as apply to the institutions to which they marketed.  That could be hundreds or even thousands of cases.  If Sanofi opposes future depositions of their marketing employees due to the adequacy of the depositions taken and their applicability to other cases, it would appear unfair to Ms. Johnson to require her to pay for the common benefit deposition costs out of her case alone.  (Plaintiff notes that $1952.40 in costs related to the Bushi deposition appear unrelated to Ms. Johnson's case, her name and case number not being referenced in the deposition transcript.[4])

As to the assessment of costs in this, a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides some guidance.  This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures.  Section 11:443 states:

"Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs. "

---

[3] Exhibit "C"
[4] Exhibit "D"

Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:

- the specificity of the discovery requests;
- the likelihood of discovering critical information;
- the availability of such information from other sources;
- the purposes for which the responding party maintains the requested data;
- the relative benefit to the parties of obtaining the information;
- the total cost associated with the production;
- the relative ability of each party to control costs and its incentive to do so; and
- the relative resources available to each party;

Here, Deborah Johnson subjected herself to the burdens of bellwether discovery not experienced by over 99% of the MDL plaintiffs, while cooperating fully with the Court and its orders.  Many of the eight factors referenced above also apply to issues of cost allocation in an MDL.  For example, the PSC felt it appropriate to conduct the deposition of Patricia Knight (a Sanofi sales and marketing employee) in the Johnson case.  Undersigned counsel's firm did not file the notice of deposition, nor participate in the taking of the deposition.  That was a PSC led and implemented decision  And so, while neither the Morris Bart firm or Ms. Johnson in any way disagree with the fact that the marketing representative depositions were taken, the timing and decision to take the deposition was made by the PSC.  This fact is mentioned only to underscore the reality that the costs in Deborah Johnson's case were not expended solely for the benefit of her individual case by her local counsel.  Rather, Ms. Johnson was one case among a

handful of bellwether cases selected to represent the issues and facts of similarly situated plaintiffs in MDL-2740, with an express purpose of utilizing those bellwether selections to and identify and resolve common questions of law and fact pertaining to the MDL.

It is respectfully suggested that ordering a financially challenged and disabled Deborah Johnson to personally bear the full and sole costs of discovery, when that discovery participation was entered into in order to aid everyone in the MDL, would be inequitable.  As the Manual for Complex litigation states in section 22:315:

"**22.315 Test Cases**

If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases.

<u>Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.…</u>"

Deborah Johnson was selected to act as a bellwether to assist the Court and the Parties in the resolution of those common issues.  Among those issues common to the MDL are issues of statute of limitation and learned intermediary defenses as applied to the facts of the several

representative bellwether cases. This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources. This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is financially challenged.

Fifth, the last *Pacheco* factor, the prevailing party's enormous financial resources, is self-evident. Sanofi will not be unduly burdened by the amount of costs expended in this matter.

## **CONCLUSION**

The fact that there is a motion for reconsideration of the prescription decision currently pending in this case suggests that a ruling on the instant costs assessment motion should be put off until the Court rules on the reconsideration. Judicial economy would be well served.

Here, Deborah Johnson filed her case in good faith. The non-prevailing plaintiff's personal financial resources places her income below the poverty level; the prevailing Defendant has vast financial resources. In addition, the legal issue on reconsideration was close and difficult. Plaintiff Deborah Johnson, by virtue of her bellwether representative discovery efforts, conferred a substantial benefit to the public and the MDL. This Court is vested with the discretion to allocate costs fairly and equitably. This Court's discretion is extra wide in a matter such as this by virtue of its status as an MDL Transferor Court, a Court charged with resolving many complex issues of law and fact in an MDL context.

It would be an arguably unwise policy to encourage prospective MDL bellwethers to participate in bellwether discovery, at least when their reward for accepting is that they alone among the thousands of MDL plaintiffs will suffer personal financial hardship as a result of that MDL assisting participation.

Given the totality of the circumstances, it is respectfully suggested that this Court: 1) allocate the costs of the non-prevailing party Deborah Johnson as MDL Common Benefit costs; and/or 2) disallow any costs in the Johnson matter that serve to resolve the common issues of the MDL; and/or 3) disallow any deposition costs not attributed to plaintiff's individual case; and 4) that this Court use its equitable powers and vast discretion to reduce the assessed costs to an amount that does not approach the Plaintiff's yearly income, nor pose a personal financial hardship on Plaintiff Deborah Johnson.

Respectfully submitted,

/s Richard L. Root
Richard L. Root La# 19988
Betsy Barnes La# 19473
Morris Bart, LLC
601 Poydras Street
24th Floor
New Orleans, LA 70130
Phone: (504) 525-8000
Fax: (504) 599-3392
Email: rroot@morrisbart.com
bbarnesl@morrisbart.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

/s/Richard L. Root