## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In Re: TAXOTERE (DOCETAXEL)**
**PRODUCTS LIABILITY LITIGATION**

**MDL NO. 2740**

**SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**
**Barbara Earnest, Case No. 2:16-cv-17144**

### <u>FINAL PRETRIAL ORDER</u>

**Date of Final Pretrial Conference**

1) The date of the Final Pretrial Conference is August 30, 2019 at 8:30 a.m.

**Appearance of Counsel**

2) The following counsel appeared at the Pretrial Conference[1]:

   a) Representing the Plaintiff:

| | |
|---|---|
| Darin L. Schanker<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>dschanker@coloradolaw.net<br><br>*Counsel for Plaintiff, Barbara Earnest*<br>*Trial Counsel for the PSC* | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com<br><br>*Trial Counsel for the PSC* |

---

[1] John Olinde was present for the 505(b)(2) Defendants.

| | |
|---|---|
| Karen Barth Menzies<br>GIBBS LAW GROUP LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com<br><br>*Trial Counsel for the PSC and*<br>*Plaintiffs' Co-Lead Counsel* | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com<br><br>*Trial Counsel for the PSC* |
| J. Kyle Bachus<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>dschanker@coloradolaw.net<br><br>*Counsel for Plaintiff, Barbara Earnest*<br>*Plaintiffs' Executive Committee* | Christopher L. Coffin (#27902)<br>PENDLEY, BAUDIN & COFFIN, L.L.P.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com<br><br>*Plaintiffs' Co-Lead Counsel* |
| M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN<br>DAVID MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com<br><br>*Plaintiffs' Co-Liaison Counsel* | Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com<br><br>*Plaintiffs' Co-Liaison Counsel* |

b)  Representing the Defendants:

| | |
|---|---|
| Hildy Sastre<br>Shook, Hardy & Bacon LLP<br>201 Biscayne Boulevard, Suite 3200<br>Miami, FL 33131<br>Phone: (305) 358-5171<br>Fax: (305) 358-7470<br>hsastre@shb.com<br><br>*Trial Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* | Jon A. Strongman<br>Shook, Hardy & Bacon LLP<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Phone: (816) 474-6550<br>Fax: (816) 421-5547<br>jstrongman@shb.com<br><br>*Trial Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* |
| Harley V. Ratliff<br>Shook, Hardy & Bacon LLP<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Phone: (816) 474-6550<br>Fax: (816) 421-5547<br>hratliff@shb.com<br><br>*Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* | Douglas J. Moore<br>Irwin Fritchie Urquhart & Moore LLC<br>400 Poydras Street, Suite 2700<br>New Orleans, LA 70130<br>Phone: (504) 310-2100<br>Fax: (504) 310-2120<br>dmoore@irwinllc.com<br><br>*Liaison Counsel for Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.* |

**Description of the Parties**

3) Parties:

   a) The Plaintiff is Barbara Earnest.

   b) The Defendants are:

      i) Sanofi-Aventis U.S. LLC; and

      ii) Sanofi US Services Inc.

**Jurisdiction**

4) Jurisdiction is based on a complete diversity of citizenship of all parties:

   a) Plaintiff: The plaintiff is a citizen of Louisiana.

   b) Defendants:

      i) Sanofi US Services Inc. is a Delaware corporation with its principal place of business located in New Jersey, and, therefore, is a citizen of New Jersey and Delaware.

3

ii) Sanofi-Aventis U.S. LLC is a Delaware limited liability company with its principal place of business located in New Jersey.  Sanofi-Aventis U.S. LLC is a single-member LLC and its sole member is Sanofi US Services Inc. Thus, Sanofi-Aventis U.S. LLC is a citizen of New Jersey and Delaware.

c) The amount in controversy, exclusive of interest and costs, exceeds $75,000.

**Pending/Contemplated Motions and Special Issues**

5) Motions:

a) The following *Daubert* motions are pending:

i) Sanofi's Omnibus Motion to Preclude Improper Expert Testimony (Doc. 6158) (Deferred; Rec. Doc. 8142)

b) The following Motions in Limine are pending:

i) Filed by Plaintiff:

(1) Motion in Limine to Preclude Evidence Regarding Sanofi's Corporate Character And Good Acts (Motion In Limine No. 1).

(2) Motion in Limine to Exclude Evidence of Healthcare Costs And Insurance As A Collateral Source (Motion In Limine No. 2).

(3) Motion in Limine to Preclude Testimony And Argument That Plaintiff's Experts Have Not Publicized/Published Or Submitted Their Opinions To The FDA Or Any Other Organization (Motion In Limine No. 3).

(4) Motion in Limine to Preclude Testimony And Argument Regarding Plaintiff Counsel Advertisements (Motion In Limine No. 4).

(5) Motion in Limine to Preclude Testimony And Evidence Regarding "Stem Cell" Staining (Motion In Limine No. 5).

(6) Motion in Limine to Preclude Testimony And Evidence Regarding Other Individuals' Personal Use Of Taxotere And Personal Experience With Cancer (Motion In Limine No. 6).

(7) Motion in Limine to Preclude Any Comment Or Argument That Dr. Carinder Is Responsible For Plaintiff's Condition (Motion In Limine No. 7).

(8)     Motion in Limine to Preclude Defense Counsel From Commenting On Or Discussing Certain Matters In The Presence Of The Jury Or Potential Jurors (Motion In Limine No. 8).

(9)     Motion in Limine to Preclude Evidence Of Unrelated Medical Conditions, Familial Medical History Of Cancer, And Unrelated Medication Usage (Motion In Limine No. 9).

(10)    Motion in Limine to Preclude Testimony And Evidence Regarding Instances Of Permanent Alopecia Among Those Prescribed Taxotere By Sanofi's Experts (Motion In Limine No. 10).

(11)    Motion in Limine to Preclude Testimony And Evidence Regarding Other Chemotherapy Medications Or Medical Conditions That Purportedly Cause Permanent Hair Loss (Motion In Limine No. 11).

(12)    Motion in Limine to Preclude Any Comment Or Argument That Taxol Would Have Enhanced The Severity Of Plaintiff's Neuropathy (Motion In Limine No. 12).

(13)    Motion in Limine to Plaintiff's Motion In Limine Excluding Improper Arguments Or Suggestions Regarding FDA Approval (Motion In Limine No. 13).

(14)    Motion in Limine to Exclude Testimony And Argument That Taxotere Has Saved Lives (Motion In Limine No. 14).

(15)    Plaintiff filed a motion in limine regarding exclusion of certain testimony related to the withdrawal of psychiatry experts beyond the original motion in limine deadline. Sanofi has consented to this late filing and reserves its right to oppose such motion.

ii)  Filed by Defendants:

(1)     Omnibus Motion in Limine #1 - Motion To Preclude Evidence Or Argument Concerning The Purported Moral Or Ethical Duties Of Pharmaceutical Drug Manufacturers.

(2)     Omnibus Motion in Limine #2 - Motion To Preclude Evidence Or Argument Concerning Purported Legal Duties And Conclusions.

(3)     Omnibus Motion in Limine #3 - Motion To Preclude Evidence Or Argument Concerning Other Lawsuits, Claims, Or Investigations Against Defendants And/Or Other Sanofi Entities.

(4)     Omnibus Motion in Limine #4 - Motion To Preclude Evidence Or Argument Concerning Complaints And Lawsuits Against Other Manufacturers Of Docetaxel.

(5)     Omnibus Motion in Limine #5 - Motion To Preclude Evidence Or Argument Concerning Adverse Event Reports Or Other Complaints Involving Patients Other Than Plaintiff.

(6)     Omnibus Motion in Limine #6 - Motion To Preclude Evidence Or Argument Concerning The Presence, Absence, Or Identity Of Defendants' Corporate Representative At Trial.

(7)     Omnibus Motion in Limine #7 - Motion To Preclude Evidence Or Argument Concerning Defendants' Executive And/Or Employee Compensation.

(8)     Omnibus Motion in Limine #8 - Motion To Preclude Evidence Or Argument Concerning The Cost Of Taxotere Or Prescription Drug Pricing Generally.

(9)     Omnibus Motion in Limine #9 - Motion To Preclude Evidence Or Argument Concerning Defendants' Corporate Finances Or Employment Decisions.

(10)    Omnibus Motion in Limine #10 - Motion To Preclude Evidence Or Argument Concerning Expert Opinions That Exceed The Scope Of Plaintiff's Experts' Rule 26 Expert Disclosures.

(11)    Omnibus Motion in Limine #11 - Motion To Preclude Evidence Or Argument Concerning Defendants' Corporate Intent, Motives, Or State Of Mind.

(12)    Omnibus Motion in Limine #12 - Motion To Preclude Evidence Or Argument Concerning Defendants' Corporate Integrity Agreements, Government Investigations Or Settlements, Or Any Other Alleged "Bad Acts" Unrelated To Taxotere.

(13)    Omnibus Motion in Limine #13 - Motion To Preclude Evidence Or Argument Concerning Specific Litigation Conduct.

(14)    Omnibus Motion in Limine #14 - Motion To Preclude Evidence Or Argument Concerning Alleged Fraud on the FDA.

(15)    Second Omnibus Motion in Limine #15 - Motion To Preclude Evidence Or Argument Concerning What Treatment Dr. Carinder Would Prescribe To Plaintiff Today.

(16)    Second Omnibus Motion in Limine #16 - Motion To Preclude Evidence Or Argument Concerning What Plaintiff Would Have Done Differently If She Had Been Given Different Risk Information By Her Prescribing Oncologist.

(17)    Second Omnibus Motion in Limine #17 - Motion To Preclude Evidence Or Argument Concerning Sanofi Promotional And/Or Marketing Materials Not Possessed Or Relied On By Plaintiff Or Her Prescribing Physician.

(18)    Second Omnibus Motion in Limine #18 - Motion To Preclude Evidence Or Argument Concerning Non-Expert Causation Testimony.

(19)    Second Omnibus Motion in Limine #19 - Motion To Preclude Evidence Or Argument Concerning Plaintiff's Motive And/Or Mental State.

(20)    Second Omnibus Motion in Limine #20 - Motion to Preclude Evidence or Argument Regarding Sanofi Sales Representatives.

(21)    Motion in Limine #21 - to Preclude Evidence or Argument Concerning Correspondence between DDMAC and Sanofi by Defendant.

(22)    Motion in Limine #22 - to Preclude Evidence or Argument Referring to Sanofi as a "French" or "Foreign" Company.

(23)    Motion in Limine #23 - to Preclude Evidence or Argument that the Alleged "High Toxicity" of Taxotere Causes or is Associated with Alopecia.

(24)    Motion in Limine #24 - to Preclude Evidence or Argument Regarding Foreign Labeling and Regulatory Actions.

(25)    Motion in Limine #25 - to Preclude Evidence and Argument that "Ongoing Alopecia" Data Observed in the Tax316 and GEICAM 9805 Clinical Trials Presents Evidence of "Persistent," "Permanent," or "Irreversible" Alopecia.

(26)    Motion in Limine #26 - to Preclude Evidence and Argument Regarding Shirley Ledlie and Any "Taxotears" or Other Third Party Advocacy or Communications Group or Group Members.

(27)    Motion in Limine #27 - to Preclude Evidence and Argument Regarding Company Conduct that Post-Dates Plaintiff's Chemotherapy Treatment.

(28)    Motion in Limine #28 - to Preclude Evidence or Argument Concerning FDA's January 2011 Warning Letter and Corresponding 483 Inspection.

c)   The following contemplated motions and special issues are appropriate for determination in advance of trial on the merits:

i)   Plaintiff intends to request authority to submit a bench memorandum in support of the use of demonstrative aids during trial per FRE 611.

ii)   Defendants would like the Court to determine the scope of Dr. Kessler's opinion regarding the content and location of any purported additional information that he believes should be in the Taxotere labeling in light of the representations of Plaintiff's counsel at the preemption hearing.

iii) Order of presentation of videotaped testimony:

7

(1) Plaintiff's position is that the presentation of videotaped deposition testimony to the jury be done in a manner that is consistent with the ordinary presentation of evidence in a party's case-in-chief. This is impacted, of course, by the Defendant's decision not to bring their witnesses live to trial. Sanofi has not identified which witnesses, if any, they will call live. The party presenting the evidence should determine how their case is presented. That is, the party offering the testimony plays its direct exam cuts, then the opposing party plays its counter (cross examination) designations limited in scope to the direct testimony, followed by any redirect clips.

For witnesses called by Plaintiff, Defendants should be required to use their own case-in-chief to play testimony that is unrelated to the Plaintiff's direct exam.

(2) Defendants' position is that the presentation of videotaped deposition testimony to the jury include, in one video cut, all designations asserted by both parties (to the extent they withstand objections) that plays chronologically in the order the deposition was taken.  Defendants believe the jury should hear all of the video testimony from a witness the same way they would if the witness were presented live – at one time as opposed to splitting between plaintiff's case and then days later in defense case

iv) Impeachment materials for cross examination:

(1) The parties may introduce impeachment evidence consistent with paragraph IX.10.b. of the Court's standard Pre-Trial Notice.  The parties would appreciate an opportunity to discuss the Court's procedure in this regard.

v) Disclosure of testifying witnesses:

(1) The parties have disclosed witnesses who will or may be called to testify at trial. By September 3, 2019, the parties shall amend their witness lists to limit to witnesses they reasonably expect to call and disclose whether they intend to present their witnesses live or by video deposition designation.

(2) All parties shall disclose their testifying witnesses no later than 36 hours in advance of the witness' appearance at trial, including those offered by deposition designation. Objections to deposition designations shall be addressed with the Court no later than 5:30 p.m. the day before the presentation of such testimony to the jury to minimize technology issues, avoid last-minute editing, and to make efficient use of the Court's time.  Final run reports of deposition testimony to be played to the jury shall be provided to opposing counsel by 9:00 p.m. CT the day before such testimony is presented to the jury.

vi) Disclosure of opening statement demonstratives:

     (1)    The Court has previously indicated that the parties shall disclose their opening statement demonstratives no later than noon CT on Friday, September 13, 2019.

     (2)    Regardless of the time of disclosure, the objecting party shall provide opposing counsel with their written objection to the proposed demonstratives within a reasonable period of time.

vii) Disclosure of direct examination exhibits and demonstratives:

     (1)    Direct examination exhibits and demonstratives shall be disclosed no later than 8:00 p.m. CT the night before the presentation of such information to the jury. Objections to such materials shall be submitted to the opposing party in writing within three (3) hours of receipt to minimize interruption of trial with the jury present.

viii)    Time limits and timekeeping procedure at trial:

     (1)    To complete the trial within 10 working days, Plaintiff proposes she be allotted 35 hours of evidence, considering she has the burden of proof, and that Defendant be allotted 25 hours of evidence. These time limitations include opening statement, presentation of case, counter-designations, cross examination, and closing argument. Objections made by the opposing party will not be counted against the party presenting their case.

     (2)    Defendants propose 20 hours of evidence per side to allow for the completion of trial (e.g. opening statement, presentation of evidence, closing argument) and adequate time for the jury to deliberate such that a verdict may be reached by the end of the day on Friday, September 27, 2019.  Regardless of the total amount of time allowed by the Court, the Defendants propose that it be divided equally among the parties.

ix) Rule of Sequestration

     (1)    Plaintiff proposes that expert witnesses not be subject to sequestration.

     (2)    Defendants propose that the sequestration rule apply to expert witnesses, meaning that the parties' expert witnesses are not permitted to attend trial, review trial testimony, or otherwise become aware of the evidence presented at trial.

**Brief Summary of Material Facts**

6)  A brief summary of the material facts claimed by:

     **Plaintiff:**

The law in Louisiana required Sanofi to use reasonable care to provide an adequate warning of permanent/irreversible hair loss to physicians and patients of Taxotere. Mrs. Earnest contends that Sanofi failed to disclose to physicians and patients a common risk of permanent hair loss. This is not a case about Mrs. Earnest's hair falling out after chemotherapy. This is a case about the failure of Mrs. Earnest's hair to regrow after being infused with Taxotere.

Barbara Leblanc Earnest was born on November 20, 1950, married Ralph Earnest in 1972, became a housewife and reared their 2 sons. The Earnests lived, worked, and raised their family in Chalmette, Louisiana, but due to Hurricane Katrina they relocated to Slidell, Louisiana where they have resided for over thirteen years.

In January 2011, at the age of 60, Barbara Earnest observed a lump in her left breast. A mammogram revealed a mass and a biopsy proved she had early stage breast cancer. Mrs. Earnest's then oncologist recommended a double mastectomy.

A second oncologist advised that all the surgery she needed was a lumpectomy. She opted for the lumpectomy with sentinel node excision performed by Dr. Richard Karlin, in March 2011.

Following her surgery, Mrs. Earnest met with New Orleans oncologist, Dr. James Carinder to discuss chemotherapy. Dr. Carinder recommended that Mrs. Earnest undergo adjuvant chemotherapy consisting of 4 cycles of dose-dense Doxorubicin (Adriamycin or "A") and cyclophosphamide (known as "C") followed by 4 cycles of Taxotere (known as "T"), as well as radiation after chemotherapy, and followed by hormone therapy treatment. In discussing the potential side effects that Mrs. Earnest might experience as a result of her chemotherapy treatment, Dr. Carinder cautioned Mrs. Earnest that her hair would likely fall out during the course of receiving chemotherapy, but that her hair may grow back a different color or texture. At no time did Dr. Carinder inform Mrs. Earnest that her hair would not regrow or that her hair loss could be permanent.

At the time Dr. Carinder prescribed Taxotere to Mrs. Earnest, he was unaware that Taxotere carried a risk of permanent hair loss. Dr. Carinder learned that Taxotere could cause permanent hair loss in approximately 2015, and thereafter changed his prescribing habits after learning of this risk.

Had Dr. Carinder known of the risk, he would have disclosed it to Mrs. Earnest. Had Mrs. Earnest been advised of the risk of permanent hair loss, she would have asked for alternative treatment options. Other equally effective treatment options were available to Mrs. Earnest, other than Taxotere.

Mrs. Earnest's hair never regrew on her scalp, eyebrows, eyelashes (partial growth), arm pits and genitals. Mrs. Earnest has been diagnosed with Taxotere induced permanent hair loss.

**Defendants:** Defendants deny these allegations. Defendants deny that Louisiana law, which applies the learned intermediary doctrine, imposes a duty on a pharmaceutical manufacturer to provide any warning directly to a patient. They contend that Taxotere's warnings to Mrs. Earnest's prescribing physician, Dr. James Carinder, were adequate.

They also contend that any alleged inadequacy in the warning did not cause Mrs. Earnest's alleged injury. Additionally, Defendants contend that Taxotere did not cause Mrs. Earnest's hair loss as evidenced by the fact that Mrs. Earnest lost her hair before she ever received Taxotere. Further, Defendants contend that the Taxotere label was approved by the FDA and has always contained accurate, science-based information enabling doctors like Dr. Carinder to make an informed decision about the benefits and risks of prescribing Taxotere to patients like Mrs. Earnest within its approved indication.

Defendants object to Plaintiff's "Brief" Summary of "Material" Facts on grounds that such assertions are incorrect, mischaracterize the evidence, and/or are not relevant to the claims at issue in this case.

**Uncontested Material Facts**

7) A single listing of all uncontested material facts:

   a) sanofi-aventis U.S. LLC engages in the labeling, advertising, marketing, promotion, sale and distribution of Taxotere/docetaxel.

   b) sanofi-aventis U.S. LLC and Sanofi US Services Inc. will not assert that non-party Sanofi entities (including indirect French parent entities, Sanofi S.A. and Aventis Pharma S.A.) are necessary or proper Defendants for purposes of trial.

   c) Defendants are the "manufacturer" of docetaxel administered to Mrs. Earnest within the meaning of the Louisiana Products Liability Act.

   d) Taxotere (docetaxel) is a prescription chemotherapy drug indicated for treatment of certain cancers, including breast cancer.

   e) Taxotere was first approved by the U.S. Federal Food and Drug Administration ("FDA") for use in the United States in 1996.

   f) Taxotere was approved by FDA for use in the adjuvant treatment of early stage breast cancer in 2004.

   g) Plaintiff Barbara Earnest is a 68-year-old resident of Slidell, Louisiana.

   h) On February 2, 2011, Mrs. Earnest was diagnosed with left breast high grade invasive ductal carcinoma, Stage IIA, T1cN1aM0, ER/PR positive, HER2 negative, with one sentinel node positive. This was medically considered early stage breast cancer.

   i) On March 31, 2011, Mrs. Earnest's oncologist, Dr. James Carinder, prescribed Mrs. Earnest an adjuvant chemotherapy regimen that included four cycles of Adriamycin and Cytoxan followed by four cycles of docetaxel. That same day, Mrs. Earnest signed an informed consent, consenting to her chemotherapy treatment.

j) On April 18, 2011, Ms. Earnest began chemotherapy treatment with Adriamycin and Cytoxan.

k) Within 3-4 weeks of starting her Adriamycin/Cytoxan chemotherapy—and prior to any treatment with docetaxel—Mrs. Earnest's hair fell out.

l) From June 22, 2011 to August 24, 2011, Ms. Earnest underwent chemotherapy treatment with docetaxel manufactured by Sanofi/Winthrop.

m) Upon completion of chemotherapy, Mrs. Earnest received radiation therapy to the chest wall and axilla, completed on November 21, 2011.  She was also placed on hormone therapy (Arimidex) by Dr. Carinder, which she still takes.

n) Mrs. Earnest has never undergone treatment for her alleged permanent hair loss.

o) Ms. Earnest is currently cancer-free.

**Contested Issues of Fact**

8) A single listing of the contested issues of fact.

The inclusion of "fact" by either party in this section does not constitute an admission by the other party that the fact is material or relevant to a claim or defense in the case.

a) Whether Sanofi failed to use reasonable care to provide an adequate warning of permanent/irreversible hair loss to physicians and patients who used Taxotere.

b) Whether Taxotere is unreasonably dangerous by failing to include adequate warnings of risks not otherwise known to the Plaintiff's prescribing physician.

   i) Whether at the time of sale, Taxotere had a characteristic that may cause damage;

   ii) Whether this characteristic was known or knowable by Sanofi at the time of sale;

   iii) Whether Defendants failed to use reasonable care to provide an adequate warning of that characteristic and its potential danger to Mrs. Earnest's prescribing physician, Dr. Carinder;

   iv) Whether this characteristic and its potential danger was not otherwise known to Dr. Carinder.

   v) Whether the prescription of Taxotere to Mrs. Earnest by Dr. Carinder was a reasonably anticipated use of the product.

c) Whether the terms "alopecia," "hair loss," or "hair generally grows back" adequately warn of the risk of permanent alopecia.

d) Whether, under the Federal Food, Drug, and Cosmetic Act (FDCA) and the FDA's regulations, Sanofi bears the sole responsibility for the content of its products' labels (also known as prescribing information or package inserts), including the Taxotere label, at all times.

i) Whether Sanofi acquired new information not previously submitted to FDA related to a greater risk of permanent alopecia with Taxotere before Mrs. Earnest's Taxotere treatment.

ii) Whether Sanofi ignored safety signals impacting the adequacy of the Taxotere label prior to the time Mrs. Earnest was prescribed Taxotere.

iii) Whether Sanofi could unilaterally change its labeling under FDA's CBE regulation.

iv) Whether Sanofi retained and exercised control over all material matters relating to safety and efficacy of Taxotere, including conducting and publishing the results of clinical trials, reporting to the FDA, collecting and reporting of adverse events recognizing safety signals and distributing warnings and other safety information through various channels to physicians about Taxotere's safety.

v) Whether the deletion of a section in the Taxotere label regarding other persistent reactions in 2004 was not a final agency action precluding sanofi from warning of permanent/irreversible hair loss.

vi) Whether Sanofi had the authority and ability to strengthen the warnings in the Taxotere label prior to the time Mrs. Earnest was administered Taxotere.

vii) Whether, in spite of any action on the part of the FDA, Sanofi retained responsibility for the safety of Taxotere and the adequacy of the Taxotere label at all times.

viii)    Whether May 2010 label for Taxotere was the operative label in effect at the time Mrs. Earnest was administered Taxotere.

ix) Whether, in 2011, the European Medicines Agency (EMA) instructed Sanofi to change the Taxotere label to include a warning that permanent/irreversible hair loss is causally associated with Taxotere.

x) Whether Sanofi had the responsibility to strengthen the warnings in its Taxotere label prior to the time Mrs. Earnest was prescribed Taxotere.

xi) Whether the FDA-approved labeling for Taxotere has always included hair loss ("alopecia") as one of the drug's side effects.

xii) Whether the labeling for Taxotere has never included the words "permanent", "irreversible" or "persistent" when describing hair loss or alopecia.

13

xiii)   Whether the labeling for Taxotere has never included an explanation of the expected duration or severity hair loss or alopecia.

xiv)   Whether the U.S. Federal Food and Drug Administration does not test any prescription drug, including Taxotere, for safety or efficacy.

xv) Whether Sanofi's Company Core Data Sheet uses the CIOMS rating scale to discuss the frequency with which adverse events occur. Adverse events that occur >1% and <10% of the time are deemed to be common.

e) Whether at the time Dr. Carinder prescribed Taxotere to Mrs. Earnest, Dr. Carinder was aware that Taxotere was associated with a risk of permanent hair loss.

i)   If Dr. Carinder had known of the risk, whether he would have disclosed such risk to Mrs. Earnest.

ii)   Whether the absence of evidence that Dr. Carinder would have changed his decision to prescribe Taxotere for Mrs. Earnest is dispositive of Plaintiff's failure to warn claim under the learned intermediary doctrine.

iii) Whether evidence concerning what Mrs. Earnest would have done with different risk information is relevant and admissible pursuant to the learned intermediary doctrine.

f) Whether Dr. Carinder applied the same knowledge, professional expertise, and good judgment that a reasonable physician would apply in using the product.

g) If Mrs. Earnest had been advised of the risk of permanent hair loss, whether she would have chosen an alternative treatment option, notwithstanding differences in efficacy and/or side effect profiles of such alternatives.

i)   Whether equally effective and safe treatment options were available to Mrs. Earnest, other than Taxotere-containing treatment options.

ii)   Whether the risk profile of any alternate treatment option would have prevented Plaintiff from utilizing such option in her cancer treatment.

h) Whether Taxotere can medically cause permanent hair loss.

i)   Whether a statistically significant association exists between Taxotere and permanent hair loss.

ii)   Whether additional evidence establishes that a statistically significant association "reflects a true cause-effect relationship."

14

    iii) Whether, by the time Mrs. Earnest was administered Taxotere, Sanofi knew that the drug could cause permanent/irreversible hair loss?

    iv) Whether Adriamycin does not cause permanent hair loss.

    v)  Whether Cytoxan does not cause permanent hair loss.

    vi) Whether Taxol does not cause permanent hair loss.

i)  Whether Mrs. Earnest sustained injuries, and if so, the nature of the injuries?

    i)  Whether Ms. Earnest experienced permanent chemotherapy-induced hair loss (PCIA).

    ii) Whether Mrs. Earnest's hair loss can reliably be deemed "permanent" in the absence of treatment for such injury.

    iii) Whether Mrs. Earnest's hair loss can be deemed "permanent" while she continues to take hormone therapy.

    iv) Whether Mrs. Earnest suffered severe permanent hair loss following treatment with Taxotere.

j)  Whether Taxotere caused Mrs. Earnest's alleged permanent hair loss and caused her to sustain other damages.

    i)  Did Sanofi's failure to warn of the risk of permanent/irreversible alopecia or hair loss cause or substantially contribute to Mrs. Earnest's permanent/irreversible alopecia or hair loss?

    ii) Whether Ms. Earnest would not have experienced permanent hair loss but for taking Taxotere.

    iii) Whether Mrs. Earnest's alleged permanent hair loss is attributable to some other cause or causes.

k)  Whether Ms. Earnest's alleged permanent hair loss was proximately caused by Defendants' alleged failure to provide an adequate warning of permanent hair loss.

    i)  Whether the risk of permanent hair loss was sufficiently high that it would have changed the prescribing physician's decision to use Taxotere, *i.e.* that but for the inadequate warning, the prescribing physician would not have used or prescribed Taxotere to Plaintiff and Plaintiff's injury would not have occurred.

l)  Whether Defendants' alleged failure to warn of the risk of permanent hair loss caused Mrs. Earnest to incur general and/or special damages.

m) Whether, as of eight (8) years following her chemotherapy, Mrs. Earnest continues to suffer from almost complete lack of hair regrowth on her head, eyebrows, eyelashes, armpits and pubic area.

n) Whether Sanofi concealed the risk of permanent/irreversible hair loss from physicians?

o) Whether Sanofi fraudulently concealed the risk of permanent/irreversible hair loss?

**9) A single listing of the contested issues of law:**

a) Whether Mrs. Earnest's claims are preempted by federal law.

   i) Whether there is "clear evidence" that FDA would not have approved Plaintiff's desired warning.

   ii) Whether the Taxotere label was adequate as a matter of law at the time of its FDA approval in 2004.

   iii) Whether the Taxotere label was adequate in light of FDA's approval in 2004.

   iv) Whether Sanofi was not prohibited from adding stronger language to the US Taxotere label before Mrs. Earnest's treatment in 2011.

b) Plaintiff objects to the Defendants including federal preemption as a contested issue of fact or law. The law of the case is this Court's Order denying Sanofi's motion for summary judgment on preemption.

c) Whether Mrs. Earnest's claims are time-barred by the applicable statute of limitations.

d) Plaintiff objects to the Defendants including liberative prescription as a contested issue of fact or law. The law of the case is this Court's Order denying Sanofi's motion for summary judgment.

**Exhibits**

10) A list and description of the exhibits that each party may introduce at trial, and the corresponding objections, are attached as *Appendix 1* (Plaintiff) and *Appendix 2* (Defendants) to this Pretrial Order. Pursuant to paragraph IX.10.c., the parties' listing of exhibits is made subject to the MDL Protective Order. As such, the parties will discuss exhibits alleged to be privileged or confidential at the pretrial conference.

**Deposition Testimony**

11) A list of all deposition witnesses that each party intends to offer into evidence at trial is attached as *Appendix 3* (Plaintiff) and *Appendix 4* (Defendants) to this Pretrial Order.

**Demonstratives**

12) A list and brief description of any charts, graphs, models, schematic diagrams, and similar objects which, although not to be offered in evidence, respective counsel intend to use in opening or closing arguments:

a) The parties may use physical demonstratives and easels, boards, a writing pad, computer projection, monitors/screens, elmo and/or courtroom technology specialists to display (1) blowups of admissible testimony, documents, and things identified on the Exhibit List, and (2) demonstratives that the parties will pre-disclose to each other pursuant to an agreed-upon procedure whereby the opposing party may assert objections prior to its use at trial. Demonstratives may be created during examination.

**Witnesses**

13) Witnesses:

a) A list of witnesses for all parties, and an indication in good faith of those who will be called in the absence of reasonable notice to opposing counsel to the contrary. Pursuant to 5(c)(v)(i), on September 3, 2019, the parties will exchange lists that include the names, addresses, and statement of the general subject matter of their testimony (it is not sufficient to designate the witness simply "fact," "medical," or "expert").

    i)  Plaintiff's Witness List (*Appendix 5*)

    ii)  Defendants' Witness List (*Appendix 6*)

b) Witnesses have been identified in accordance with Rule 26 Pretrial Disclosures and CMO 14B, the Federal Rules of Civil Procedure and prior court orders. No other witnesses shall be allowed unless agreeable to all parties and their addition does not affect the trial date. This restriction will not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated.

c) In the case of expert witnesses, counsel certifies that they have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders. Expert witnesses whose reports have not been furnished to opposing counseled shall not be permitted to testify nor shall experts be permitted to testify to opinions not included in the reports timely furnished.

d) Except for good cause shown, the Court will not permit any witness to testify unless with respect to such witness there has been complete compliance with all provisions of the pre-trial order and prior court orders.

e) Counsel shall not be allowed to ask questions on cross-examination of an economic expert which would require the witness to make mathematical calculations in order to frame a

response unless the factual elements of such questions shall have been submitted to that expert witness not less than three full working days before trial.

**Jury Trial**

14) This is a jury case.

    a)  Proposed jury instructions, special jury interrogatories, and voir dire shall be electronically filed with the Court at the time the Court directs; the parties have provided a jointly proposed Juror Questionnaire which has been authorized by the Court.

**Issues To Be Tried Together**

15) The issue of liability will not be tried separately from that of quantum.

**Other Matters That May Expedite The Proceedings**

16) Other matters that might expedite the disposition of the case:

    a)  Procedure and timing for resolving objections to demonstratives, direct examination exhibits, and deposition video designations.

**Trial Date**

17) Trial shall commence on September 16, 2019 at 8:30 AM. The Court has limited the trial to no more than ten (10) working days.

**Joint Submission**

18) This pretrial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**Settlement**

19) Possibility of settlement of this case was considered.

It is understood and agreed by the parties that the purpose of this Final Pretrial Order is to provide information as requested by the Court.   The parties have drafted this order with the understanding that it will not be presented or read to the jury in this case.  The parties have further agreed that the inclusion of issues as uncontested, or the failure of a party to directly respond to any issue listed by the other party, is not an admission of any kind and cannot be argued or introduced against either side in support or opposition of any pretrial issue including, but not limited to, jury

instructions, jury interrogatories, evidentiary objections, and/or the verdict form.  The parties agree to use good faith efforts to meet all deadlines set forth in this order.

New Orleans, Louisiana, this 3rd day of September, 2019.

/s/Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Jon Strongman
Harley Ratliff
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
jstrongman@shb.com
hratliff@shb.com

Hildy Sastre
**SHOOK, HARDY& BACON L.L.P.**
201 S. Biscayne Blvd., Suite 3200
Miami, Florida 33131
Telephone: 305-358-5171
Facsimile:  305-358-7470
hsastre@shb.com

**Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.**

| | |
|---|---|
| Darin L. Schanker<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>dschanker@coloradolaw.net<br><br>*Counsel for Plaintiff, Barbara Earnest*<br>*Trial Counsel for the PSC* | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com<br><br>*Trial Counsel for the PSC* |
| Karen Barth Menzies<br>GIBBS LAW GROUP LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com<br><br>*Trial Counsel for the PSC and*<br>*Plaintiffs' Co-Lead Counsel* | David F. Miceli<br>David F. Miceli, LLC<br>P.O. Box 2519<br>Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com<br><br>*Trial Counsel for the PSC* |
| J. Kyle Bachus<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, CO 80202<br>Phone: (303) 893-9800<br>Fax: (303) 893-9900<br>dschanker@coloradolaw.net<br><br>*Counsel for Plaintiff, Barbara Earnest*<br>*Plaintiffs' Executive Committee* | Christopher L. Coffin (#27902)<br>PENDLEY, BAUDIN & COFFIN, L.L.P.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com<br><br>*Plaintiffs' Co-Lead Counsel* |

| | |
|---|---|
| */s/M. Palmer Lambert*<br>M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN<br>DAVID MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com<br><br>*Plaintiffs' Co-Liaison Counsel* | */s/Dawn M. Barrios*<br>Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com<br><br>*Plaintiffs' Co-Liaison Counsel* |

HON. JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE