UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOERE (DOCETAXEL)     MDL NO. 2740
       PRODUCTS LIABILITY
       LITIGATION

SECTION "N" (5)

**THIS DOCUMENT RELATES TO:**

*Tanya Francis v. Sanofi S.A., et al.*
Case No. 2:16-cv-17410

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TAX COSTS [REC. DOC. 7953]

Within several months after the United States Judicial Panel on Multidistrict Litigation ("JPML") issued its Transfer Order and created this Taxotere (docetaxel) Products Liability MDL, Plaintiff Tanya Francis filed her Complaint against mover-Defendants Sanofi-Aventis U.S., LLC and Sanofi US Services, Inc. ("Sanofi"). After complying with this Court's various discovery and production orders, Ms. Francis' case was selected, by Defendants, as a potential Bellwether case. Ms. Francis then continued to comply with various requirements of Phase I discovery, was deposed, and answered discovery pleadings.

Defendant Sanofi filed a Motion for Summary Judgment alleging that plaintiff's case had prescribed. The matter was briefed, and oral argument was held. This Court held that Ms. Francis had filed her case untimely and granted a dismissal of her case. A motion for reconsideration was filed by Ms. Francis and is currently pending.

Because the Defendant prevailed in the original hearing, Defendant filed a Motion to Tax Costs, and now seeks the sum of $43,393.35. Of that amount, $24,223.35 is the total of seventeen depositions purported to be costs recoverable by Defendant as the prevailing party. $19,150.00 of the total sought by Defendant is for the expert costs of one expert, Dr. Portia

Love.

Plaintiff objects to the awarding of costs in this matter.

## Law and Argument

### I.  Costs are Inequitable in Context of MDL

In its Transfer Order which established this MDL, the JPML found that "[a]ll parties agree that centralization is warranted . . ." and that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *See* 220 F.Supp.3d 1360 (J.P.M.L. 2016). It is clear from these statements by the JPML that two of the main reasons for administering cases within the structure of an MDL are to avoid duplicative discovery and, and as a direct result thereof, conserve resources of the parties. This is especially vital in a case where each individual Plaintiff, without exception, has suffered through at least one battle with cancer, thus not only draining their health and wellbeing, but also their bank accounts.

Their present Motion to Tax Costs in the amount of $43,393.35 does not, in any way, reflect Defendants' agreement that an MDL is warranted and its consent to participate therein. As stated above, the very purpose of an MDL is to conduct discovery efficiently so that the information can be used for the majority of the cases and so that the costs can be shared by all parties involved.

As to the assessment of costs in an MDL setting, there is some guidance in the Manual for Complex Litigation (Fourth Edition, 2004) regarding the Court's discretion in an MDL setting. This Court's power to allocate costs is discussed in Chapter 11, governing Pre-trial procedures. Section 11:443 states:

> "Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the

> parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs.
>
> Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:
> - the specificity of the discovery requests;
> - the likelihood of discovering critical information;
> - the availability of such information from other sources;
> - the purposes for which the responding party maintains the requested data;
> - the relative benefit to the parties of obtaining the information;
> - the total cost associated with the production;
> - the relative ability of each party to control costs and its incentive to do so; and
> - the relative resources available to each party;"

Here, Tanya Francis subjected herself to the burdens of discovery not experienced by 99% of the MDL plaintiffs. She cooperated with the Court and its orders. Many of the eight factors referenced above pertain to issues of cost allocation in this MDL. The Plaintiffs' Steering Committee ("PSC") felt it appropriate to conduct certain depositions in the Francis case. Undersigned counsel's firm neither filed the notice of deposition, nor participated in the taking of the deposition. That was a PSC-led determination. And so, while neither Ms. Francis nor her individual counsel in <u>any</u> way disagree with the fact that the depositions were taken, the timing and decision to take the deposition was made by the PSC. This fact is mentioned only to underscore the reality that the costs in Tanya Francis' case were not expended solely for her benefit. Rather, she was one of a handful of bellwether cases selected to represent the issues and facts of similarly situated MDL plaintiffs, with an express purpose of using those bellwether selections to identify and resolve common questions of law and fact pertaining to the MDL.

In addition, it should be noted that Ms. Francis has fully complied with all the Court's various orders and discovery requests made by Defendants before and after her case was identified as a bellwether. During that same time period, hundreds of other MDL cases have been dismissed due to their non-compliance. Whether by agreement of the parties or by determination of this Court, those non-compliant cases have not been forced to incur costs. The only difference between those non-compliant cases and that of Ms. Francis is that she fully complied with her duties as a Plaintiff in this MDL and was chosen by Defendants as a bellwether, thus requiring additional compliance and effort on her part.

It is respectfully suggested that ordering an individual to personally bear the full costs of discovery, when that discovery was designed to aid everyone in the MDL, would be inequitable. As the Manual for Complex litigation states in section 22:315:

> "**22.315 Test Cases**
>
> If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases.
> <u>Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.</u> The more representative the test cases, the more reliable the information about similar cases will be."

Tanya Francis' case was selected, by the defendants, to act as a bellwether to assist the Court and the Parties in the resolution of those common issues. This Court has the power to allocate the costs to common benefit or other sources, and to not let that load fall solely on any individual's shoulders.

## II.     District Court has Discretion to Withhold Costs

In *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006), the Fifth Circuit noted "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party", including: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.

But when every one of the *Pacheco* factors cited above are present, this Court may deny or reduce costs. The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S.560, (2012).

First, Tanya Francis is undoubtedly of limited financial resources. Ms. Francis has a job serving food and beverages at a New Orleans casino where she most likely makes minimum wage or less than minimum wage plus tips. She is ill equipped to pay costs of any amount, much less in an amount of $43,393.35, which is greater than the median income for a New Orleans household in 2017.[1] Pinning these costs on Ms. Francis would certainly render her insolvent.

Second, while the exact parameter of the conduct which comprises "misconduct of the prevailing party" is not well defined by the jurisprudence, there are some analogies here. The issue in Tanya Francis's prescription question involved a weighing of Ms. Francis' efforts to find out about her hair loss when seen in light of the defendant's withholding of that information from doctors and patients. Ms. Francis' efforts to find the cause of her alopecia were deemed insufficient. But there was no finding in the order dismissing plaintiff's case that the Defendant had warned of the risk of permanent alopecia to Ms. Francis' treating oncologist

---

[1] *See* United States Census Bureau Quickfacts; New Orleans city, Louisiana, https://www.census.gov/quickfacts/fact/table/neworleanscitylouisiana#, (last visited August 31, 2019).

or her other doctors. The records show that a warning of that risk was only added to the FDA approved label in 2015, six years after Francis took the drug. So, while this Honorable Court found Ms. Francis' efforts to get an explanation of her hair loss wanting, the reason she could not find any information about her hair loss was that *none existed* in the public sphere when she was inquiring. The Defendant did not disclose the risks that it knew to be associated with its product despite being required to warn of those very dangers. And while that truth alone was insufficient to save her case from being dismissed, it can fairly be said that the primary reason she never received that information was due to Sanofi's misconduct in not advising her Oncologist, Dr. Verghese, of the possibility of permanent hair loss arising from Taxotere use.

Third, this was a close and difficult legal issue. There was arguably case law on both sides supporting a dismissal or a denial of the Motion for Summary Judgment. Indeed, there is a Motion for Reconsideration pending. No party can argue with a straight face that the answer under these facts was crystal clear. There is a dearth of cases that address the issue of the application of *contra non valentem* when the defendant is hiding information from the alleged late filing plaintiff, and that plaintiff does not search hard enough for information that is admittedly unavailable to her due to defendant misconduct. And while this Court found for the Defendant, it was a close and difficult ruling.

Fourth, Ms. Francis' case provided a substantial benefit conferred to the public. As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off" case. As a potential bellwether, Ms. Francis and her action provided guidance to the parties and the Court on issues relevant to the entire MDL. The discovery aided the parties in defining issues pertinent to the MDL as a whole.

This can be seen when reviewing some of the alleged individual costs in the Francis

case, as set forth in Record Doc 7953-3, the affidavit of Harley Ratliff. Among the depositions listed is one that should be more accurately described as common to the entire MDL, rather than Tanya Francis depositions. It is a deposition of a Sanofi representative John Hamm, and the deposition is not reasonably limited to just one case. If it is to be attributed solely to Tanya Francis, then Sanofi should readily agree to the re-deposing of the reps in as many other cases as apply to the institutions to which they marketed. That could be hundreds or thousands of cases. If Sanofi opposes multiple depositions of their employees due to the adequacy of the depositions and their applicability to other cases, then it hardly seems fair to Ms. Francis to pay for the common benefit deposition costs out of her case alone. Defendants also seek to charge transcript costs of Dr. Love's deposition, who was retained by *Defendants* as an expert, even though she reviewed at least one other Plaintiff's case.

The fifth *Pacheco* factor, the prevailing party's enormous financial resources, is self-evident. Sanofi will not be burdened by the amount of costs expended in this matter.

### III. Expert Costs are Unreasonable and Unsupported by Evidence

Regarding the costs claimed by Defendants for the expert, Dr. Portia Love, Plaintiff objects to these costs because they are duplicative, not reasonable, and not necessary for the proceedings leading to dismissal of Plaintiff's case, or even the trial.[2]

Defendants claim expert costs in the total amount of $19,150.00. Of that total, they claim $9,000 for "[r]eview of medical records, literature and reports (18 hours)" and another $8,400.00 for "[d]eposition preparation (16.8 hours)." It is unreasonable to believe that Dr. Love actually spent, much less needed to spend, a total of 34.8 hours reviewing the records of an individual plaintiff in this case. Also, if she spent 18 hours reviewing Ms. Francis' case

---

[2] Interestingly, Defendants recently agreed that they would not call Dr. Love as an expert in the Earnest trial. *See* Rec. Doc. 8136.

once, it is unreasonable to need an additional 16.8 hours to prepare for a deposition which would presumably only address Ms. Francis' case. Without an itemized invoice provided by Defendants, which would document how Dr. Love spent her time, it is impossible to know how much time, if any, was dedicated to reviewing Ms. Francis' records. In addition, any information the expert obtained by reviewing "literature" would be applicable to all cases in the MDL, so the resulting cost should not be borne by Ms. Francis alone.

Finally, Defendants provide no legal authority for taxing its expert costs against Ms. Francis. While 28 U.S.C. § 1920(6) provides that a court may tax costs for "[c]ompensation of *court* appointed experts" (emphasis added), it does not mention compensation for experts retained by individual parties. Defendants cited no other authority for taxing these expert costs. For the reasons stated above, Plaintiff objects to all expert costs and requests the court disallow them entirely or, in the alternative, find that the expert costs are more appropriately allocated to the common benefit fund.

## CONCLUSION

The fact that there is a motion for reconsideration currently pending in this case is sufficient reason in and of itself to delay assessing and allocating costs in this matter, and Plaintiff suggests that the consideration of this motion be deferred until that ruling.

Plaintiff Tanya Francis filed her case in good faith. Ms. Francis has minimal income and the prevailing Defendant entity has vast financial resources. The legal issue on reconsideration was close and difficult.  Plaintiff Tanya Francis, by virtue of her bellwether representation efforts, which required her to miss work and travel, conferred a substantial benefit to the public and the MDL. This Court is vested with the discretion to allocate costs fairly and equitably. This Court is also granted a wide latitude of discretion by virtue of its status as an MDL

Transferor Court, charged with resolving many complex issues of law and fact in an MDL. It would be an arguably unwise policy to encourage MDL prospective bellwethers to participate in bellwether discovery, at least when their reward is that they alone among the thousands of MDL plaintiffs will suffer personal financial hardship as a result of that participation.

Based on the arguments above it is respectfully suggested that the Court disallow the costs claimed by Defendants as excessive, unnecessary, and overburdensome; or, in the alternative, allocate the costs of the non-prevailing party as an MDL Common Benefit cost.

Dated: September 3, 2019

Respectfully submitted,

 /s/T. Aaron Stringer
T. Aaron Stringer
Zachary P. Lowe
Nathan Buttars
LOWE LAW GROUP
6028 S. Ridgeline Drive, Suite 200
Ogden, UT 84405
Phone: (801) 917-8500
Fax: (801) 917-8484
aaron@lowelawgroup.com
pete@lowelawgroup.com
nate@lowelawgroup.com

*Counsel for Plaintiff, Tanya Francis*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September, 2019, a true and correct copy of the foregoing was served upon the following by e-mail:

Douglas J. Moore
Irwin Fritchie Urquhart & Moore, LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Email: dmoore@irwinllc.com
*Co-Liaison Counsel for Defendants*

Harley Ratliff
Adrienne L. Byard
Kelly G. Bieri
Shook Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
hratliff@shb.com
abyard@shb.com
kbieri@shb.com
*Counsel for Defendants, Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.*

>  /s/T. Aaron Stringer
>  T. Aaron Stringer