13:32:53

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
******************************************************************

IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION
                                    Docket No. 16-MD-2740
                                    Section "H"
                                    New Orleans, Louisiana
                                    Wednesday, May 29, 2019

[THIS DOCUMENT RELATES TO:
ALL CASES]
******************************************************************

               TRANSCRIPT OF MOTION TO SHOW CAUSE
          HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:          BARRIOS KINGSDORF & CASTEIX
                             BY:  DAWN M. BARRIOS, ESQ.
                             701 Poydras St., Suite 3650
                             New Orleans, LA 70139

                             GAINSBURG BENJAMIN DAVID
                             MEUNIER & WARSHAUER
                             BY:  M. PALMER LAMBERT, ESQ.
                                  CLAIRE E. BERG, ESQ.
                             1100 Poydras St., Suite 2800
                             New Orleans, LA 70163

                             FEARS NACHAWATI
                             BY:  CHARLOTTE GULEWICZ, ESQ.
                             5473 Blair Rd.
                             Dallas, TX 75231
                             (BY TELEPHONE)

                             BACHUS & SCHANKER
                             BY:  J. CHRISTOPHER ELLIOTT, ESQ.
                             1899 Wynkoop St., #700
                             Denver, CO 80202

```
 1    FOR SANOFI S.A.:              IRWIN FRITCHIE URQUHART & MOORE
                                    BY:  KELLY E. BRILLEAUX, ESQ.
 2                                  400 Poydras St., Suite 2700
                                    New Orleans, LA 70130
 3
                                    SHOOK, HARDY & BACON
 4                                  BY:  KELLY G. BIERI, ESQ.
                                    2555 Grand Blvd.
 5                                  Kansas, City MO 64108
                                    (BY TELEPHONE)
 6

 7
      FOR SANDOZ, A NOVARTIS
 8    DIVISION:                     GREENBURG TRAURIG
                                    BY:  NICHOLAS A. INSOGNA, ESQ.
 9                                  One International Place, Ste. 2000
                                    Boston, MA 02110
10                                  (BY TELEPHONE)

11

12    FOR ACCORD HEALTHCARE, INC.:  TUCKER ELLIS
                                    BY:  JULIE A. CALLSEN, ESQ.
13                                  950 Main Ave., Suite 1100
                                    Cleveland, OH 44113
14                                  (BY TELEPHONE)

15

16    Official Court Reporter:      Karen A. Ibos, CCR, RPR, CRR, RMR
                                    500 Poydras Street, B-275
17                                  New Orleans, Louisiana 70130
                                    (504) 589-7776
18

19

20       Proceedings recorded by mechanical stenography, transcript
      produced by computer.
21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

(WEDNESDAY, MAY 29, 2019)

(MOTION TO SHOW CAUSE)

13:10:39   (OPEN COURT.)

13:10:39             THE DEPUTY CLERK:  Court's in session.  You may be
13:10:39   seated.

13:32:54             MS. BARRIOS:  Good afternoon, your Honor.

13:32:54             THE COURT:  Good afternoon.  Okay.

13:33:04             MS. BERG:  Good afternoon, your Honor.

13:33:06             THE COURT:  Good afternoon.  I am just trying to see how
13:33:09   many we have from which law firms.  We have 18 from Bachus &
13:33:18   Schanker and only one or two from Fears?

13:33:22             MS. BRILLEAUX:  I don't believe so, your Honor.

13:33:26             THE COURT:  Maybe I have the wrong list.  All right.  So
13:33:34   I see that I have 16 from Fears.  All right.  Let's go with that
13:33:38   first.

13:33:39             All right.  Are we ready to proceed?

13:33:44             MS. BRILLEAUX:  Yes.  Your Honor, just for the record, so
13:33:47   we submitted the list to your Honor last night, the list of
13:33:51   dismissal statements of no defense to dismissal and then also
13:33:57   declarations of attempts.

13:33:58             THE COURT:  I think I was looking at the wrong list.

13:34:00             MS. BRILLEAUX:  I think you might have been.

13:34:02             So we are going to read those into the record as we have

13:34:05  1  before.  We can just submit the list of dismissed cases to your

13:34:08  2  Honor.

13:34:08  3       Before we get started, though, I just want to mention, as

13:34:11  4  I'm sure you recall at the hearing last week, Bachus & Schanker had

13:34:16  5  123 cases on the show cause list for dismissal; Fears Nachawati had

13:34:20  6  46.  Fortuitously for plaintiffs' counsel, none of these cases were

13:34:26  7  addressed at the hearing.  Since then, Fears Nachawati has filed

13:34:28  8  two dismissal and six statements; Bachus & Schanker has filed 20

13:34:32  9  dismissals, 16 declarations, and 4 statements for a total of

13:34:36 10  40 cases.

13:34:37 11       It's unclear to defendants why this wasn't done in

13:34:39 12  advance of the May 21st hearing, but we identify on the attached

13:34:44 13  list for your Honor the 22 cases that were dismissed, 16 cases that

13:34:47 14  have declarations submitted, and 10 that have statements of no

13:34:50 15  defense to dismissals.

13:34:52 16       And just to address briefly for your Honor, as to

13:34:54 17  purported cures, which was not really the intent of defendants,

13:34:59 18  Bachus & Schanker has advised of 55 purported cures since the

13:35:04 19  May 21st conference.  We received 35 purported cures on Sunday

13:35:09 20  evening of Memorial Day weekend.  Defendants did as much as we

13:35:15 21  could to analyze those and assess those.  As to the ones that we

13:35:17 22  received yesterday afternoon, we were not able to look at.

13:35:20 23       We did our best to reduce the list for your Honor to make

13:35:23 24  this a more efficient process, but when working with cures less

13:35:27 25  than 24 hours before the hearing, we were only able to do so much

13:35:32  1    as to assess the validity of whether those deficiencies were cured

13:35:35  2    or not.

13:35:36  3         THE COURT:  Okay.  And I am going to say it again.  We

13:35:41  4    discussed this at the last conference.  To be perfectly blunt,

13:35:48  5    these two law firms, Bachus & Schanker and Fears Nachawati, this

13:35:54  6    has been an ongoing problem with failure to promptly cure, and I

13:36:01  7    have no doubt that what I will hear from plaintiffs' counsel in

13:36:05  8    both of these law firms is, well, there was a great deal for us to

13:36:10  9    do.

13:36:11  10        Very frankly, I am not sure that's my problem.  These

13:36:16  11   were Plaintiff Fact Sheets that were submitted blank in most cases

13:36:21  12   and some cases just woefully incomplete.  That should be handled on

13:36:28  13   the front end and not on the back end.  And so these cures need to

13:36:34  14   be taken care of promptly.  There are deadlines in place that have

13:36:38  15   not been recognized.  Additionally, the declarations that are part

13:36:44  16   and parcel of this process are to hopefully expedite this hearing.

13:36:50  17   I expect this not to be an ongoing issue, and we are here today

13:36:56  18   only because of failure to comply with the process that's in place.

13:37:01  19        So with that, let's proceed.

13:37:03  20        MS. BRILLEAUX:  Thank you, your Honor.

13:37:09  21        THE COURT:  If you're on the telephone, please put it on

13:37:13  22   mute until we ask you to because it becomes very noisy.

13:37:20  23        MS. BRILLEAUX:  Thank you, your Honor.  We can give to

13:37:23  24   the court reporter the list of dismissals.  I think at the last

13:37:27  25   hearing we also handed over the list of statements and the

13:37:30  1   declarations, we can do that again if your Honor's okay with that.

13:37:33  2           THE COURT:  Let's proceed in that manner.

13:37:47  3           MS. BRILLEAUX:  Thank you, your Honor.

13:37:48  4           And just to continue on my point before, it's really come

13:37:51  5   to defendant's attention that plaintiffs are waiting until the

13:37:55  6   absolute last minute to do this, we were still getting dismissals

13:37:58  7   this morning for today's hearing; and defendants do believe that

13:38:01  8   there should be some sort of consequences for plaintiff's continued

13:38:04  9   failure to address the notice deficiencies with the deadlines

13:38:08  10  imposed by the Court and by the agreement of counsel.

13:38:11  11          Thank you, your Honor.

13:38:16  12          Okay.  The first case that we have for Fears Nachawati is

13:38:22  13  Josephine Armstrong, no PFS submitted.

13:38:27  14          THE COURT:  Ma'am, you're going to have to tell me how to

13:38:29  15  pronounce your name.  Are you on the phone?

13:38:34  16          MS. GULEWICZ:  Yes, this is Charlotte Gulewicz -- I'm

13:38:39  17  sorry, I'm having trouble hearing.

13:38:41  18          THE COURT:  How do you pronounce your last name, ma'am?

13:38:41  19          MS. GULEWICZ:  Gulewicz.

13:38:41  20          THE COURT:  Gulewicz.

13:38:41  21          MS. GULEWICZ:  Yes, your Honor.

13:38:54  22          THE COURT:  Okay.  Thank you, ma'am.  All right.

13:38:54  23  Ms. Josephine Armstrong, I see no PFS submitted.

13:38:58  24          MS. GULEWICZ:  Yes.  Your Honor, I see that we submitted

13:39:00  25  the --

13:39:00 1          THE COURT:  When?

13:40:01 2      (WHEREUPON, THE CONFERENCE CALL WAS DISCONNECTED.)

13:40:01 3          THE COURT:  Ms. Gulewicz, can you tell me when you

13:40:04 4  submitted this plaintiff fact sheet?  Hello?

13:40:07 5          MS. GULEWICZ:  I'm sorry, I missed the conversation.

13:40:09 6          THE COURT:  We were talking about Josephine Armstrong and

13:40:12 7  there is no plaintiff fact sheet submitted.  Can you tell me when

13:40:15 8  that was submitted?

13:40:17 9          MS. GULEWICZ:  Oh, yes, your Honor.  It was submitted May

13:40:18 10 the 17th.

13:40:21 11         MS. BRILLEAUX:  Your Honor, we do have a Plaintiff Fact

13:40:26 12 Sheet, almost completely blank Plaintiff Fact Sheet.  I have a copy

13:40:29 13 of it for your Honor to review.  And, your Honor, if you take a

13:40:35 14 look at the Plaintiff Fact Sheet that was submitted, it's virtually

13:40:39 15 blank, it doesn't include anything with regard to cancer treatment

13:40:45 16 or diagnosis, there's no claim information, no information about

13:40:48 17 hair loss.  I mean, if you flip through it, it is basically just a

13:40:52 18 shell blank Plaintiff Fact Sheet.

13:40:57 19         THE COURT:  Ms. Gulewicz, submitting a blank Plaintiff

13:41:02 20 Fact Sheet is not what we're looking for, and it is -- I mean, I

13:41:05 21 see we filled out information that she was married and has an

13:41:13 22 address.

13:41:16 23         MS. BERG:  Your Honor, we don't have a copy, but is it

13:41:21 24 substantially complete or is it --

13:41:23 25         MS. BARRIOS:  Substantially complete would be proof that

13:41:27  1   she took docetaxel, the injury which would be photographs, and she

13:41:32  2   would have signed the back of the form.

13:41:36  3        THE COURT:  I am going to let you see this.  It's

13:41:42  4   virtually empty.

13:41:43  5        MS. BRILLEAUX:  I'm sorry for not bringing more copies,

13:41:46  6   but we were obviously --

13:41:48  7        THE COURT:  We have page 23 requests -- why don't you

13:42:02  8   show this.  Ms. Gulewicz.

13:42:08  9        MS. GULEWICZ:  Yes, your Honor.  We submitted what the

13:42:12 10   client gave us, you know.  Our clients often sometimes leave stuff

13:42:19 11   blank, they don't read something or they forget to flip to the back

13:42:24 12   page.  Like I said, we submitted what we could.  But if we can get

13:42:28 13   time, we can certainly cure all of the issues that we have here.

13:42:36 14   But we submitted what the client gave us, and the client tries to

13:42:39 15   be compliant but sometimes they just miss things.

13:42:41 16        THE COURT:  Do you all look at these at all before you

13:42:43 17   submit them?

13:42:46 18        MS. GULEWICZ:  Yes, your Honor, we do.

13:42:49 19        MS. BRILLEAUX:  And, your Honor, it's defendant's

13:42:50 20   position that, and we've addressed this before, that plaintiffs'

13:42:56 21   counsel is effectively filing nearly blank PFSs to avoid dismissal

13:43:00 22   at these kinds of hearings and they don't have any substance that

13:43:04 23   we can use to proceed with the claims.

13:43:06 24        THE COURT:  Does liaison counsel have anything that they

13:43:09 25   would like to?

13:43:11  1          MS. BARRIOS:  Yes, ma'am, I would like to look at it.  I

13:43:15  2  did notice that she had checked that she was treated with name

13:43:17  3  brand Taxotere, so that would have been her proof of use.

13:43:20  4          MS. BRILLEAUX:  I did see that.

13:43:23  5          MS. BARRIOS:  And then I am not aware of if she has

13:43:27  6  photographs.  I'm sure if she didn't have photographs Ms. Brilleaux

13:43:32  7  would tell us that.  If she signed the verification, the

13:43:37  8  declaration, which actually, I do not see signed on page 25.

13:43:43  9          MS. BRILLEAUX:  It's my understanding, your Honor, that

13:43:46 10  this is the only thing that has been submitted, that we do not have

13:43:48 11  photographs, that we don't have authorizations.  I mean, we

13:43:52 12  essentially just have this document, which is, as you can see, a

13:43:57 13  di minimus attempt at submitting a Plaintiff Fact Sheet for the

13:44:00 14  purposes of avoiding dismissal at this hearing.

13:44:04 15          MS. BARRIOS:  Your Honor, I just would like to add.  I

13:44:06 16  know from my office that many times the verification is uploaded

13:44:09 17  separately.  Ms. Gulewicz, did you upload a separate verification

13:44:15 18  or declaration, that would be page 25, of the Plaintiff Fact Sheet?

13:44:20 19          MS. GULEWICZ:  Yes, we uploaded a separate verification

13:44:22 20  and photos.

13:44:24 21          MS. BARRIOS:  Did you upload authorizations?

13:44:28 22          MS. GULEWICZ:  Yes, authorizations.

13:44:31 23          THE COURT:  When were those uploaded?

13:44:36 24          MS. GULEWICZ:  The authorizations were uploaded on the

13:44:39 25  18th as well as the photographs.

13:44:42  1          THE COURT:  Do we have any --

13:44:48  2          MS. BARRIOS:  Your Honor, liaison counsel will take this

13:44:51  3  over and work with her and work with Ms. Brilleaux to iron it out.

13:44:54  4          THE COURT:  I think because there are too many unanswered

13:44:57  5  questions, I don't know what has been uploaded.  I am going to pass

13:45:05  6  this to the next hearing.

13:45:07  7          MS. BRILLEAUX:  And, your Honor, just to let you know, we

13:45:10  8  have several on the list that are like this, this is not the only

13:45:12  9  one.

13:45:13  10          THE COURT:  Well, do we know if the other ones uploaded

13:45:16  11  photos and authorizations and those different things?

13:45:20  12          MS. BRILLEAUX:  I would appreciate for plaintiffs'

13:45:22  13  counsel, because basically what defendants are looking at is, as

13:45:25  14  you've seen, almost a completely blank PFS.  So when defendants are

13:45:29  15  looking at what the deficiencies are, really none of the questions

13:45:34  16  in the PFS have been answered.  So even if we have photographs,

13:45:37  17  we're still not getting answers to what's the heart of the case,

13:45:42  18  which is the Plaintiff Fact Sheet.

13:45:43  19          THE COURT:  Right.  And I understand that, but I think if

13:45:45  20  they've sent you authorizations to get medical records and that

13:45:47  21  sort of thing --

13:45:52  22          MS. BRILLEAUX:  Right.  Your Honor, I do understand your

13:45:55  23  question.  I don't have broken down for me what exactly has not

13:45:58  24  been submitted and what has, I just have the copies of the PFSs,

13:46:03  25  which as you've seen, are basically blank.  And I understand, you

13:46:08  1   know, submitting authorizations, but if we don't have the most

13:46:11  2   basic questions from the PFS answered, we don't know how we can

13:46:15  3   proceed with the case and we think it should be dismissed.

13:46:18  4           THE COURT:  Okay.

13:46:19  5           MS. BARRIOS:  Your Honor, again, Dawn Barrios, I'm sorry

13:46:21  6   to interrupt.

13:46:22  7           But it was our working understanding with all of the

13:46:25  8   defendants that the deficiencies that would be brought would be

13:46:29  9   only for substantial completeness.  And what I understand

13:46:33 10   Ms. Brilleaux's arguing now is for other deficiencies that may be

13:46:38 11   there on the Plaintiff Fact Sheet but do not render it

13:46:42 12   substantially incomplete.

13:46:45 13           THE COURT:  I understand that, Ms. Barrios.  It is a bit

13:46:50 14   disconcerting, though, to see that there is nothing -- I think

13:46:56 15   there needs to be more of an attempt to provide information as to

13:47:01 16   where treatment was rendered, by whom, and the dates so that

13:47:06 17   appropriate -- when you get a release that you can do something

13:47:09 18   with it.

13:47:09 19           MS. BRILLEAUX:  Thank you, your Honor.

13:47:10 20           THE COURT:  But again, I am not -- I don't know

13:47:14 21   photographs -- what I am hearing is medical authorizations were

13:47:18 22   uploaded, photographs were uploaded.  I am going to pass this one

13:47:23 23   and next month if we've not made some progress in learning where

13:47:29 24   treatment was rendered, by whom, when, that's going to become

13:47:36 25   problematic.

13:47:38  1          MS. BARRIOS:  I understand, your Honor, and I'll work

13:47:39  2   with both of the firms to see if we can have this resolved totally

13:47:43  3   by next status conference.

13:47:44  4          THE COURT:  Thank you.  Let's go to Renee Dilorenzo.  We

13:47:50  5   have both Sanofi and 505s.  Who is going to handle that?

13:47:54  6          MR. INSOGNA:  Yes, your Honor, this is Nick Insogna for

13:47:56  7   the 505 defendants.  I'll handle some of these joint cases, if

13:48:00  8   that's all right with the Court.

13:48:01  9          THE COURT:  Okay.  Thank you.

13:48:03 10          MR. INSOGNA:  Are you all able to hear me?

13:48:04 11          THE COURT:  I am.

13:48:05 12          MR. INSOGNA:  Okay.  This is a similar situation with

13:48:08 13   Ms. Dilorenzo where on May 8th she submitted a Plaintiff Fact Sheet

13:48:13 14   that's almost entirely blank after Section I.

13:48:16 15          I would just point out to your Honor, and this one

13:48:23 16   doesn't even have the plaintiff's address in it, we don't have

13:48:25 17   treatment dates, none of the information that goes into cancer

13:48:28 18   staging, we don't have the medical history, list of medical

13:48:31 19   providers.  And the reason that I think this is such a concern for

13:48:35 20   the defendants is it doesn't allow us enough information to even do

13:48:40 21   analysis for bellwether selection.

13:48:42 22          And so where we have these cases where it's submitted

13:48:46 23   after a show cause hearing, it's going to be three months later

13:48:51 24   than we were entitled to before we have this information to even

13:48:55 25   work these up for bellwether selection.

13:48:59  1          THE COURT:  Well --

13:48:59  2          MS. GULEWICZ:  Your Honor --

13:49:02  3          THE COURT:  Ms. Gulewicz, I am listening.

13:49:06  4          MS. GULEWICZ:  For this point it was a clerical error.

13:49:09  5  It looked like we did upload a blank Plaintiff Fact Sheet on May

13:49:13  6  the 8th, but it was simply an error of selecting the wrong document

13:49:17  7  when uploading into MDL Centrality.  And we didn't know that this

13:49:25  8  was blank until I spoke with defense counsel at the phone call that

13:49:30  9  we had last week and they let me know that this was blank.  And at

13:49:34 10  that point I realized it was a clerical error and I cured it.  So I

13:49:39 11  apologize for that.  It was not on purpose, it was certainly a

13:49:45 12  mistake.

13:49:48 13          MR. INSOGNA:  Can I just clarify?  Is counsel telling us

13:49:51 14  that an amended Plaintiff Fact Sheet has been uploaded now?

13:49:56 15          MS. GULEWICZ:  Yes.

13:49:57 16          MR. INSOGNA:  And when was that done?

13:50:00 17          MS. GULEWICZ:  5/28.

13:50:04 18          MR. INSOGNA:  Your Honor, I think we just need some time

13:50:07 19  then to establish yesterday's submission.

13:50:07 20          THE COURT:  Mr. Insogna, I am going to grant seven days

13:50:11 21  for you to verify.

13:50:13 22          MR. INSOGNA:  Thank you, your Honor.

13:50:14 23          MS. GULEWICZ:  Thank you.

13:50:15 24          THE COURT:  Twanda Dunbr.

13:50:19 25          MR. INSOGNA:  Your Honor, this is another Sanofi and 505

13:50:21 1   case.  We have a similar situation.  We don't have proof of use or

13:50:28 2   proof of injury submitted.  We also don't have plaintiff's prior

13:50:31 3   medical history, cancer markers, chemo treatment dates, hair loss

13:50:36 4   or hair treatment history, medical providers, prior medications,

13:50:41 5   you know, basics like height, weight, smoking history.

13:50:45 6          THE COURT:  There is no proof of use?

13:50:49 7          MR. INSOGNA:  Correct.  Just to be clear, your Honor, the

13:50:51 8   deficiency notice was failure to submit a PFS.  You asked

13:50:57 9   previously whether some of the other ancillary documents have been

13:51:00 10  submitted and in this case they have not been.  We do have a

13:51:05 11  declaration and authorizations.

13:51:07 12         MS. GULEWICZ:  For this one the client has been

13:51:12 13  unresponsive.  The only thing she submitted was a substantially

13:51:16 14  complete Plaintiff Fact Sheet.  We submitted to the Court what we

13:51:20 15  thought was right to submit when the client submitted it over to

13:51:25 16  us, and we are requesting more time to get the documents because

13:51:33 17  the client has been hard to contact.  And like I said, the only

13:51:39 18  thing she's given us is this substantially complete Plaintiff Fact

13:51:44 19  Sheet and the authorizations.

13:51:47 20         THE COURT:  I have to go back and look at the record.

13:51:50 21         MR. INSOGNA:  Your Honor, I believe Ms. Brilleaux has a

13:51:52 22  copy of this fact sheet if it would help you to see.

13:51:55 23         THE COURT:  Right.  So what I am showing is

13:51:57 24  noncompliance, there's no Plaintiff Fact Sheet, and there is some

13:52:01 25  information on here.  She has not indicated -- there's no proof of

13:52:06 1   use.  On page 6, it's just unknown.  Wait a minute.  No, that's

13:52:23 2   not -- I don't go through these as quickly as you do.  Dawn, come

13:52:28 3   up here.  Product ID is missing.  Where is proof of use?

13:52:37 4          MR. INSOGNA:  Your Honor, typically proof of use is

13:52:40 5   submitted as a separate medical record that reflects chemotherapy

13:52:43 6   with Taxotere.

13:52:52 7          THE COURT:  I guess I am confused.  Are you telling me

13:52:57 8   that there's no medical records are attached, is that the concern,

13:53:03 9   or that medical authorizations have not been attached?

13:53:06 10         MR. INSOGNA:  Typically, your Honor, what we receive is

13:53:10 11  separate submissions that reflect proof of use, photographs, proof

13:53:15 12  of injury, authorizations, the declaration, and then the Plaintiff

13:53:21 13  Fact Sheets.  Originally this case was noticed for absence of any

13:53:26 14  Plaintiff Fact Sheet.  Subsequently, on May 21st plaintiff provided

13:53:29 15  the fact sheet that you have, which we think does not have even

13:53:33 16  enough factual information to allow bellwether analysis.  We have

13:53:37 17  received a signed declaration and authorization, we have not

13:53:41 18  received any proof of use documentation or proof of injury

13:53:44 19  documentation.

13:53:45 20         THE COURT:  Okay.  Ms. Gulewicz, I am looking and I am

13:53:50 21  having to go through this Plaintiff Fact Sheet.  What she says is

13:53:54 22  she didn't know if she was treated with any of these, and there are

13:53:59 23  no records indicating she was treated with docetaxel.  So what

13:54:04 24  information do you have that this lady actually treated with

13:54:07 25  Taxotere or docetaxel?

13:54:11  1          MS. GULEWICZ:  We filed this lawsuit just to make sure we

13:54:16  2     didn't miss any statute of limitations.  We don't have proof of use

13:54:21  3     documentation.  And because the client was missing for so long, we

13:54:25  4     didn't have the proper authorization until recently.  We have

13:54:29  5     submitted a request but we don't have records back as of today, so

13:54:34  6     I haven't been able to get those records.

13:54:40  7          MS. BRILLEAUX:  And, your Honor, also just on behalf of

13:54:42  8     both defendants, there's also a great deal missing.  I mean,

13:54:46  9     there's no information about the cancer treatment or diagnosis.

13:54:49  10         THE COURT:  All right.  I guess what I am asking, ma'am,

13:54:52  11    are you telling me you're filing lawsuits with no idea if your

13:54:56  12    client took the drug?  Ma'am?

13:55:02  13         MS. GULEWICZ:  We believe she did.  She did --

13:55:05  14         THE COURT:  Based on what?

13:55:06  15         MS. GULEWICZ:  -- but we don't have any medical records

13:55:08  16    showing, so we're in the process of obtaining that.  But she's been

13:55:12  17    very difficult to get a hold of.

13:55:13  18         THE COURT:  Ma'am, based on what?  Do you believe because

13:55:18  19    she fills out?  I don't know.

13:55:22  20         MS. GULEWICZ:  Right.

13:55:28  21         MR. ELLIOTT:  Your Honor, from my experience, when they

13:55:30  22    call the firm, they think they took Taxotere.  We're not going to

13:55:35  23    sign it up unless they represent to us that they took it.  So the

13:55:39  24    client representing to the lawyer that they took Taxotere is, you

13:55:43  25    know, should be some proof.

13:55:46  1          THE COURT:  Well, you would think that they might check

13:55:49  2  that off.

13:55:50  3          MR. ELLIOTT:  I agree with you.

13:55:55  4          THE COURT:  I'm sorry, this case -- Mr. Lambert, do you

13:56:00  5  have something to contribute?

13:56:01  6          MR. LAMBERT:  I'm sorry, your Honor.  Palmer Lambert,

13:56:06  7  co-liaison counsel for plaintiffs.

13:56:08  8          I understand Ms. Brilleaux's frustration and the Court's

13:56:11  9  frustration, but I believe we're trying to take two steps at one

13:56:15 10  time.  And I am not aware whether this is a Fifth Circuit case or

13:56:19 11  not if it's even eligible for bellwether treatment, but if the

13:56:23 12  deficiency is no PFS submitted, if they make some effort to submit

13:56:29 13  a PFS, then there's got to be a second deficiency issued by the

13:56:33 14  defendants.  And I understand Mr. Insogna's and Ms. Brilleaux's

13:56:39 15  frustration with that.  That's the process that we have in place.

13:56:42 16          If the Court wants us to discuss with defendants liaison

13:56:46 17  counsel a more expedited process to deal with fact sheets that are

13:56:52 18  not substantially complete submitted in response to a deficiency,

13:56:57 19  then maybe we can talk about that.  But I do -- these appear to

13:57:04 20  have been filed on December of last year.

13:57:12 21          THE COURT:  Oh, I agree, Mr. Lambert.  I understand that

13:57:14 22  they were filed in December of last year and would generally give

13:57:17 23  them some time.  But when you have a Plaintiff Fact Sheet that

13:57:20 24  says, "I don't know."  I don't know if I took -- even if the

13:57:26 25  plaintiff said, "it is my belief that I took Taxotere," fine.  Then

13:57:30  1    run down the records.  But to just say unknown.

13:57:36  2         Is there an argument you want to make about that?

13:57:39  3         MR. LAMBERT:  Your Honor, I am making a general statement

13:57:42  4    about the process --

13:57:43  5         THE COURT:  Right, right.

13:57:44  6         MR. LAMBERT:  -- that's in place for deficiencies.  I am

13:57:47  7    not defending this particular --

13:57:50  8         THE COURT:  I agree.  I agree.  The deficiency was no

13:57:53  9    Plaintiff Fact Sheet submitted, no Plaintiff Fact Sheet has been

13:57:55 10    submitted.  And one has been submitted, it's just doesn't -- and I

13:58:01 11    think, Ms. Brilleaux, we've been doing this every month for some

13:58:06 12    time, and we have treated these differently, it's plaintiff

13:58:10 13    substantially completed, this is what's missing and we give them an

13:58:13 14    opportunity to cure it.

13:58:14 15         And just so I can tell you the frustration from the

13:58:17 16    Court's point of view is, then I am looking at what has been

13:58:21 17    submitted and it's not much benefit to anybody.

13:58:30 18         But Ms. Gulewicz, I am going to give you about 15 days to

13:58:37 19    determine, show some proof of use and the photographs.  And that's

13:58:44 20    on Ms. Dunbar's case.

13:58:47 21         MS. GULEWICZ:  Your Honor?

13:58:49 22         THE COURT:  Yes.

13:58:51 23         MR. INSOGNA:  Your Honor, if I may.  There will be a

13:58:54 24    number of cases that are like this with the Fears Nachawati firm so

13:59:00 25    that may expedite things slightly.  And I understand what the Court

13:59:02  1    is saying that typically it would need a deficiency notice to deal

13:59:07  2    with these types of issues.  Our concern is when the plaintiff

13:59:11  3    submits this incomplete fact sheet at or after the hearing, it sets

13:59:18  4    the process back.

13:59:19  5         THE COURT:  Oh, I agree.  I agree.  But we're going to

13:59:26  6    have this conversation a little bit later.  Let me get through this

13:59:30  7    list, but I think -- I will tell you my guess is, Ms. Gulewicz, and

13:59:35  8    I know Mr. Elliott, unless you have no ability to read body

13:59:39  9    language, or hear frustration, I am about done.  And so everybody's

13:59:49 10    got to up their game.

13:59:52 11         And frankly, these two law firms have been problematic.

14:00:00 12    And so it is my sincere hope that next time I am not having to go

14:00:05 13    through this empty blank Plaintiff Fact Sheets, that while they

14:00:09 14    have been submitted, provide no information, that you work

14:00:15 15    diligently to cure these ongoing problems.

14:00:18 16         Okay.  Let's get to Linda Hall.

14:00:21 17         MS. BRILLEAUX:  Yes, your Honor.  For Linda Hall this was

14:00:25 18    another no PFS submitted, and we did get a mostly blank one later.

14:00:33 19    There was a discrepancy with plaintiffs' counsel about plaintiff

14:00:37 20    apparently being incapacitated and being unable to fill it out and

14:00:43 21    then later we got a half blank one.

14:00:45 22         THE COURT:  Do you have proof of use?

14:00:47 23         MS. BRILLEAUX:  So, your Honor, I don't think here we

14:00:51 24    have made a separate determination of what else is lacking because

14:00:54 25    of the half blank PFS.  Defendants took the position that this is

14:00:59  1  not a complete PFS, it doesn't answer the questions, so we did not

14:01:03  2  do a separate look at those specific aspects.

14:01:07  3        THE COURT:  Ms. Gulewicz.

14:01:09  4        MS. GULEWICZ:  Yes, your Honor.  This is a client who is

14:01:14  5  incapacitated.  Her daughter is filing for guardianship and has a

14:01:19  6  guardianship hearing on June the 13th.  So her daughter filled out

14:01:24  7  the Plaintiff Fact Sheet that we submitted.  We submitted something

14:01:29  8  so that the Court could see that we are attempting to comply with

14:01:34  9  the obligations, but we are dealing with the daughter of the

14:01:38 10  injured.

14:01:39 11        And like I said, she's incapacitated so we're doing what

14:01:43 12  we can to make sure we're compliant, but we do need more time,

14:01:47 13  specifically because the daughter won't have the guardianship

14:01:51 14  hearing until June the 13th in order to --

14:01:53 15        THE COURT:  I am going to give you until July 13th,

14:01:59 16  that's a month after the guardianship hearing.

14:02:08 17        Kim Hatchew.

14:02:11 18        MS. GULEWICZ:  Kim Hatchew is deceased, she passed away

14:02:15 19  on the April 21st, so we are dealing with her husband to try to

14:02:21 20  move forward with the case.

14:02:24 21        THE COURT:  Okay.  I am going to continue this one for

14:02:26 22  60 days.

14:02:28 23        Angela Hicks.

14:02:32 24        MR. INSOGNA:  Yes, your Honor.  This is a similar

14:02:33 25  situation where we received a substantially blank or largely blank

14:02:39 1  Plaintiff Fact Sheet on May 20th.  So understanding the court's

14:02:41 2  position, we would just ask that a substantially complete Plaintiff

14:02:46 3  Fact Sheet be unloaded in 15 days or whatever your Honor thinks is

14:02:50 4  appropriate.

14:02:50 5          THE COURT:  Ms. Gulewicz, is there something

14:02:53 6  extraordinary about this particular plaintiff?

14:02:55 7          MS. GULEWICZ:  No, your Honor.

14:02:57 8          THE COURT:  Fifteen days.

14:03:01 9          Katherine Johnson.

14:03:02 10         MS. BRILLEAUX:  This is no before photos within five

14:03:07 11 years of treatment.

14:03:08 12         THE COURT:  Ms. Gulewicz.

14:03:11 13         MS. GULEWICZ:  Before photos were submitted on the 21st.

14:03:15 14         MS. BRILLEAUX:  Your Honor, it's for no before photos

14:03:19 15 from within five years of treatment.

14:03:21 16         THE COURT:  Are they within five years of treatment?

14:03:26 17         MS. GULEWICZ:  Five years, let me see.  So the treatment

14:03:28 18 was from 2001 to 2008, and the photos -- I have one photo from 2001

14:03:38 19 submitted and that's within the five years.

14:03:43 20         MS. BRILLEAUX:  Your Honor --

14:03:45 21         THE COURT:  I am going to give you seven days to confirm.

14:03:48 22         MS. BRILLEAUX:  And, your Honor, just to confirm with

14:03:51 23 these time periods, it's defendant's understanding that if these

14:03:55 24 are not cured, they're ripe for dismissal.

14:03:57 25         THE COURT:  That's correct.

14:03:57  1          MS. BRILLEAUX:  Thank you.

14:04:00  2          THE COURT:  Shirley Johnson.

14:04:02  3          MR. INSOGNA:  Yes, your Honor.  This is another where we

14:04:07  4  received a substantially blank Plaintiff Fact Sheet on May 21st, so

14:04:09  5  we would ask for that to be completed within 15 days.

14:04:13  6          THE COURT:  Is there anything out of the ordinary with

14:04:16  7  Ms. Johnson?

14:04:19  8          MS. GULEWICZ:  No, your Honor.

14:04:20  9          THE COURT:  All right.  15 days.

14:04:24 10          Carla Lee.

14:04:25 11          MS. BRILLEAUX:  Yes, your Honor.  These are before photos

14:04:27 12  that are not dated.

14:04:35 13          MS. GULEWICZ:  The before photographs, I have a date of a

14:04:40 14  before photograph from December of 2009 submitted.

14:04:47 15          THE COURT:  When did she receive treatment?

14:04:49 16          MS. GULEWICZ:  2010.

14:04:56 17          MS. BRILLEAUX:  Counsel, did you upload the date to MDL

14:05:00 18  Centrality?  We're seeing the photo but they're not dated on MDL

14:05:05 19  Centrality.

14:05:05 20          MS. GULEWICZ:  MDL Centrality -- we uploaded -- it looks

14:05:11 21  like there was a before photo that wasn't dated submitted the day

14:05:15 22  of, but we cured that deficiency earlier today.  We apologize for

14:05:20 23  that misunderstanding -- it just looks like -- when we received

14:05:24 24  your notice this morning that it wasn't dated, we went ahead and

14:05:28 25  dated it.

14:05:29  1          THE COURT:  Okay.  Seven days for you to determine.

14:05:33  2          MS. BERG:  We'll work with counsel to make sure it's on

14:05:37  3   MDL Centrality.

14:05:39  4          THE COURT:  Thank you, Ms. Berg.  Stephanie Mullery.

14:05:43  5          MS. BRILLEAUX:  Yes, your Honor.  This is no after

14:05:45  6   photos.  And I actually have a photo, which I can put up on the

14:05:49  7   ELMO just to save time.  It's just plaintiff with a cap on, so it's

14:05:58  8   not an after photo that we feel like is representative of

14:06:02  9   plaintiff's current level of hair regrowth.

14:06:06 10          THE COURT:  Ms. Gulewicz.

14:06:09 11          MS. GULEWICZ:  It looks like we submitted after photos on

14:06:11 12   the 20th.

14:06:13 13          THE COURT:  They've showed me the photo and it looks like

14:06:18 14   a headband that's basically covering her hair.  How many did you

14:06:23 15   submit?

14:06:24 16          MS. GULEWICZ:  We submitted one after photo.

14:06:28 17          THE COURT:  All right.  I think you need an after photo

14:06:30 18   with her hair where you can actually see her hair.  So I am going

14:06:35 19   to give you 15 days to cure that, but it's not appropriate to have

14:06:41 20   a photo with some sort of covering on her hair.

14:06:47 21          MS. GULEWICZ:  Okay, your Honor.

14:06:50 22          THE COURT:  Nancia Pantoja.

14:06:58 23          MR. INSOGNA:  Yes, your Honor, Nancia Pantoja.  This case

14:07:00 24   is another where we have a Plaintiff Fact Sheet that's largely

14:07:02 25   incomplete.  We don't have a date of diagnosis, cancer markers,

14:07:06  1    treatment date, number and frequency of cycles, chemo medication,

14:07:10  2    prescribing physician or facility, any of that critical information

14:07:17  3    to develop an analysis.

14:07:21  4              THE COURT:  Ms. Gulewicz.

14:07:22  5              MS. GULEWICZ:  Yes, your Honor.  This is one of those

14:07:24  6    Plaintiff Fact Sheet that we submitted which the plaintiff gave us

14:07:27  7    photographs, authorizations, we did our best to submit what we

14:07:32  8    could.  And because the deficiency is no PFS, we just ask for 15

14:07:36  9    days so we can submit a substantially complete.

14:07:39  10             THE COURT:  I am going to grant 15 days.

14:07:43  11             Zelma Redden.

14:07:46  12             MR. INSOGNA:  Yes, your Honor.  Zelma Redden, we

14:07:49  13   received -- actually, this is a case where received a Plaintiff

14:07:53  14   Fact Sheet on May 7th, but then it appears earlier today that the

14:07:58  15   case was dismissed because the plaintiff was actually treated Taxol

14:08:02  16   and not Taxotere.

14:08:04  17             THE COURT:  Okay.

14:08:06  18             MR. INSOGNA:  So I think we just need to confirm the

14:08:09  19   dismissal on this case.

14:08:09  20             MS. GULEWICZ:  It's confirmed.  I realized that I didn't

14:08:13  21   dismiss it earlier and I went ahead and dismissed it.

14:08:16  22             THE COURT:  Okay.  Thank you.  Daphne Sherlock.

14:08:22  23             MS. BRILLEAUX:  Yes, your Honor.  No before photos from

14:08:25  24   within five years of treatment.

14:08:26  25             THE COURT:  Ms. Gulewicz.

14:08:29  1          MS. GULEWICZ:  This is one where the plaintiff has had a

14:08:34  2   hard time finding photos within five years.  We're just asking your

14:08:39  3   Honor for additional time so we can ask the friends and family

14:08:41  4   members and try to exhaust all avenues so we can get those before

14:08:45  5   photos.

14:08:47  6          THE COURT:  You know this has been filed for every a

14:08:49  7   year?  It was filed in April of 2018.  I am going to give you seven

14:08:55  8   days, but that's -- there should have been ample opportunity to

14:09:01  9   cure this deficiency.

14:09:04  10          Wanda Vaughan.

14:09:07  11          MS. BRILLEAUX:  Yes, your Honor.  This was another

14:09:10  12   substantially incomplete PFS.  We received a PFS on May 13 for a

14:09:16  13   plaintiff with this name but it doesn't identify the case number or

14:09:19  14   the filing date, so defendants can't confirm whether it's actually

14:09:24  15   the appropriate plaintiff.  And the PFS is also nearly entirely

14:09:29  16   blank.

14:09:29  17          THE COURT:  Okay.  Ms. Gulewicz.

14:09:34  18          MS. GULEWICZ:  Well, the deficiency was no PFS submitted,

14:09:37  19   so we took the stance that we did submit a Plaintiff Fact Sheet.

14:09:46  20   We can go back in and cure the issues, but we just needed to

14:09:51  21   show --

14:09:51  22          THE COURT:  I'm going to give you 15 days.

14:09:56  23          MS. BRILLEAUX:  And that's for the complete Plaintiff

14:09:58  24   Fact Sheet, your Honor?

14:09:59  25          THE COURT:  Substantially complete.  I mean, there may be

14:10:01  1   some things that you can't have.

14:10:05  2           MS. BRILLEAUX:  Thank you, your Honor.

14:10:05  3           THE COURT:  Candace Williams.

14:10:06  4           MS. BRILLEAUX:  Sorry.  Candace Williams, no PFS.

14:10:11  5           THE COURT:  Ms. Gulewicz.

14:10:13  6           MS. GULEWICZ:  For Candace Williams?

14:10:17  7           THE COURT:  Yes, ma'am.

14:10:18  8           MS. GULEWICZ:  I see that we did submit a Plaintiff Fact

14:10:23  9   Sheet on May the 14th for Candace Williams.

14:10:28 10           THE COURT:  I am going to grant seven days for defense to

14:10:31 11   confirm.

14:10:32 12           MS. BRILLEAUX:  Your Honor, I'm just looking at my notes

14:10:34 13   on this one.  We have a PFS that doesn't identify the case number

14:10:38 14   or filing date.  We would request that that be cured within

14:10:42 15   24 hours.

14:10:49 16           THE COURT:  Well, you have the case number here on my

14:10:51 17   list, so I'm curious.

14:10:53 18           MS. BRILLEAUX:  The PFS has been uploaded for a plaintiff

14:10:56 19   with this name but it doesn't have any of the identifying

14:11:00 20   information so that we can verify that it is assigned to the

14:11:03 21   correct plaintiff.

14:11:03 22           THE COURT:  Okay.  All right.  Look, just within seven

14:11:08 23   days cure that information, that is the docket number and -- what

14:11:16 24   else was it?  The date the complaint was filed?

14:11:19 25           MS. BRILLEAUX:  It has neither the case number or the

14:11:21  1    filing date of the case.

14:11:22  2         THE COURT:  Okay.  Make sure that's done, Ms. Gulewicz,

14:11:25  3    within 24 hours.  I am going to give defendant seven days to

14:11:29  4    determine if it's been cured.

14:11:30  5         And then we have Patricia Zarcone.

14:11:34  6         MS. BRILLEAUX:  Yes, your Honor.  This is after photos

14:11:37  7    that are not dated and then no initiation of the CMO 12A process.

14:11:43  8         MS. GULEWICZ:  Yes, your Honor.  This is a case where the

14:11:45  9    client has passed away and we're dealing with her husband.  She

14:11:51  10   died December 7th and we recently got in contact with him last

14:11:56  11   month, and he's doing his best to try to work with us on this case.

14:12:01  12        THE COURT:  All right.  I'm going to give you 60 days on

14:12:04  13   that one.

14:12:05  14        Ms. Gulewicz, I think we've completed the Fears Nachawati

14:12:16  15   listing, so you certainly can get off the line.  Let me just again

14:12:24  16   caution you that when there's no PFS submitted, it's not enough to

14:12:29  17   put a name on a piece of paper and file it and say, well, now a PFS

14:12:33  18   has been submitted.  There's got to be some effort made to complete

14:12:36  19   the Plaintiff Fact Sheet.

14:12:40  20        And additionally, I am going to advise again that a great

14:12:47  21   deal of this information could have been handled ahead of time.

14:12:49  22   The deadlines mean something, and so when these corrections should

14:12:55  23   take place, they need to be done timely.

14:12:57  24        Additionally, the declaration process was designed in

14:13:05  25   order to avoid having to take so long in these, so I am going to

14:13:09  1    caution you that you need to take -- to participate in the process

14:13:14  2    in a way that it was designed to take place.  Okay.  Thank you,

14:13:20  3    ma'am.

14:13:20  4             MS. GULEWICZ:  Thank you, your Honor.  Thank you.

14:13:21  5             THE COURT:  You can get off the phone now.

14:13:24  6             All right.  Bachus & Schanker.

14:13:33  7             MR. ELLIOTT:  Good afternoon, Judge, Chris Elliott.

14:13:35  8             THE COURT:  Good afternoon.  Let's go.  Susan Campbell.

14:13:41  9             MR. ELLIOTT:  We filed a dismissal yesterday.

14:13:44 10             MS. BRILLEAUX:  Your Honor, our records show that it was

14:13:46 11    filed last night at 9:51 P.M.

14:13:49 12             THE COURT:  This matter is dismissed with prejudice.

14:13:52 13             Joann Charnock.

14:13:55 14             MR. INSOGNA:  Yes, your Honor.  This is a no Plaintiff

14:14:00 15    Fact Sheet, at least as of 10:42 yesterday morning.

14:14:03 16             MR. ELLIOTT:  We got word that the plaintiff passed away.

14:14:06 17    We would ask for 30 days.  Next of kin does wish to participate, so

14:14:10 18    we expect to be able to get that all completed within 30 days, or

14:14:15 19    60 days would be great.

14:14:16 20             THE COURT:  When did you find out that she passed away?

14:14:19 21             MR. ELLIOTT:  We didn't find that out until this month,

14:14:23 22    and we just got the obituary, we found the next of kin on the

14:14:27 23    obituary, so we've discovered -- anyway.

14:14:31 24             THE COURT:  You didn't answer my question.  When did you

14:14:33 25    find this out?

14:14:34  1           MR. ELLIOTT:  Within the last week.

14:14:40  2           THE COURT:  I am going to give you 45 days.

14:14:45  3           MR. INSOGNA:  Your Honor, I'm sorry, I am not able to

14:14:48  4      hear Mr. Elliott.  Is it possible to move a microphone or

14:14:51  5      something?

14:14:51  6           THE COURT:  I am going to ask him to do that now.  They

14:14:54  7      found out within the last week that Ms. Charnock died, so I am

14:14:58  8      going to give him 45 days to get everything in order.

14:15:03  9           MR. INSOGNA:  Thank you, your Honor.

14:15:05 10           THE COURT:  Hattie Coleman.

14:15:08 11           MS. BRILLEAUX:  Yes, your Honor.  This is no proof of

14:15:09 12      use, no before photos, and no initiation of the CMO 12 process.

14:15:14 13           MR. ELLIOTT:  Actually, we have gone through the CMO 12

14:15:17 14      process, your Honor, except for the deposition.  We issued a

14:15:20 15      subpoena duces tecum to Dr. Dozier's office.  He stated that he

14:15:26 16      switched companies and that right now he is looking through his

14:15:30 17      system to see if we could get the evidence we need to move forward

14:15:35 18      with her case.

14:15:37 19           THE COURT:  Okay.

14:15:38 20           MR. ELLIOTT:  We do have photos, we have a signed

14:15:41 21      declaration, we have authorizations in there, ESI.  We've done

14:15:45 22      everything else that's required in this litigation.  We just ask

14:15:48 23      for more time so Dr. Dozier can check his records.

14:15:52 24           MS. BRILLEAUX:  Your Honor, to reiterate, we have no

14:15:53 25      proof of use, no proof of use of docetaxel, and no before photos.

14:15:59  1          Just to clarify, our records show that she's produced,

14:16:04  2   plaintiff has produced photos labeled as before, but they're

14:16:08  3   actually dated after her claims to chemotherapy treatment per her

14:16:14  4   PFS.

14:16:15  5          MR. ELLIOTT:  We can clarify that, your Honor.  I don't

14:16:17  6   have that in front of me right now.

14:16:18  7          THE COURT:  All right.  I am going to grant seven days.

14:16:22  8          MR. ELLIOTT:  Well, your Honor, with the POU issue, I'd

14:16:26  9   ask for a little more time with Dr. Dozier, because he is going

14:16:29 10   through his system to backtrack and see what he can find us.  It

14:16:33 11   may take more than seven days.

14:16:34 12          THE COURT:  I understand that, I am talking about the

14:16:36 13   photos.  But the 12A process, so you have started that.

14:16:45 14          MR. ELLIOTT:  Yeah, we did that, we're at the deposition

14:16:47 15   stage.  We actually subpoenaed the doctor, and he said rather than

14:16:52 16   take his deposition, he is going to look through the system to see

14:16:57 17   if he can get us what he needs.  I just don't know how much longer

14:17:00 18   it's going to take him to do that.  I would assume within the next

14:17:02 19   30 days we would have that information.

14:17:08 20          MS. BRILLEAUX:  Is that for proof of use or for CMO 12?

14:17:11 21          THE COURT:  For proof of use, do you have any information

14:17:13 22   that she took Taxotere?

14:17:16 23          MR. ELLIOTT:  We have our client's representations to the

14:17:19 24   law firm that she took it, and we have the proof that she lost her

14:17:24 25   hair, we have the proof of injury.  And so, you know --

14:17:30  1          MS. BRILLEAUX:  Respectfully, your Honor --

14:17:31  2          MR. ELLIOTT:  We sent a subpoena to Dr. Dozier's office.

14:17:35  3   Like I said, he doesn't have the records available --

14:17:38  4          THE COURT:  No, I understand that.  So it's not --

14:17:43  5          MR. ELLIOTT:  It's not really the product ID CMO 12.

14:17:47  6          THE COURT:  It's not a product ID issue, it's we don't

14:17:49  7   have proof that she took Taxotere or docetaxel.

14:17:54  8          MS. BRILLEAUX:  Or chemotherapy.

14:17:59  9          THE COURT:  And I guess my question is, so on page 5 and

14:18:06 10   6 of the Plaintiff Fact Sheet --

14:18:13 11          MR. ELLIOTT:  If I had it in front of me --

14:18:15 12          THE COURT:  That's just where she checks -- oh, it's just

14:18:18 13   you have to show records demonstrating.  So the fact that she

14:18:29 14   doesn't have records in hand?

14:18:30 15          MS. BRILLEAUX:  We don't have any -- as we discussed

14:18:34 16   before, it's not a product ID issue under CMO 12, it's an issue

14:18:38 17   that she took any docetaxel at all and we don't have that.

14:18:43 18          THE COURT:  You don't have the records.

14:18:44 19          MS. BRILLEAUX:  Right.  So we have nothing other than

14:18:47 20   Mr. Elliott's representation that the plaintiff has represented to

14:18:50 21   the firm, which I think is the representation of every plaintiff in

14:18:54 22   this case.  So we just don't have any proof of use that she took

14:18:56 23   any docetaxel or Taxotere.

14:18:59 24          MR. ELLIOTT:  Your Honor, I think I am confused here

14:19:01 25   because their noncompliance says no CMO 12A.  So they told us that

14:19:07  1   that was the noncompliance, so we went through and went through

14:19:12  2   that process.  I mean, that's their noncompliance description is no

14:19:17  3   CMO 12A.

14:19:20  4          THE COURT:  Listen.

14:19:27  5          MR. ELLIOTT:  I can't as I sit here right now say that --

14:19:34  6   anyway, I would just like more time for Dr. Dozier to go through

14:19:38  7   his records.  I think within the next 15 to 30 days he would have

14:19:42  8   that back.

14:19:43  9          THE COURT:  Why would I think that's different?  I mean,

14:19:45 10   it was filed in 2017, so it's been 18 months.

14:19:47 11          MR. ELLIOTT:  Yeah, we file these sometimes because of

14:19:49 12   the label chain.  We're just concerned on how the Court might rule

14:19:53 13   on a statute of limitations issue here.  So some of these we had to

14:19:56 14   file based on our client's representation that they took Taxotere.

14:19:59 15   And then we go through the process.  We did order the records, they

14:20:02 16   come back, and sometimes they say records destroyed or sometimes

14:20:06 17   they come back and they just don't have them.

14:20:08 18          But we've gone through a step further and it looks like

14:20:11 19   Dozier may be able to find something for us, because the client --

14:20:15 20   we wouldn't have filed the case but for our client telling us that

14:20:18 21   she took the Taxotere and we have the proof of injury.

14:20:21 22          MS. BRILLEAUX:  And our records show that there's no

14:20:23 23   reference to chemotherapy at all, just that she had surgery.  She

14:20:26 24   had a left breast cancer mastectomy post chemo, so we don't have

14:20:33 25   really any -- I'm sorry, history of left breast cancer post

14:20:38 1  mastectomy.  So we don't have any even reference to chemotherapy

14:20:42 2  treatment at all, much less docetaxel or Taxotere.

14:20:45 3          MR. ELLIOTT:  I think we have some evidence, your Honor,

14:20:48 4  to keep moving with the case.  I just would like Dozier's -- if he

14:20:54 5  comes back and says I can't find anything, then I am okay

14:20:57 6  dismissing the case.  But at this point --

14:21:00 7          THE COURT:  When did you last speak to Dr. Dozier?

14:21:03 8          MR. ELLIOTT:  I don't have the dates on here.  These are

14:21:09 9  notes from 5/20.  Says we've gone through the CMO 12 process except

14:21:14 10 for the deposition.  After issuing a subpoena duces tecum to

14:21:18 11 Dr. Dozier's office, wrote and stated that they have switched EMR

14:21:20 12 companies, and if the records exist, they would be on that system

14:21:22 13 as the client treated prior to 2008.  So it would be a Sanofi case.

14:21:27 14 Dr. Dozier's office is in touch with the EMR system and are trying

14:21:31 15 to retrieve the records, which would show both CMO 12 and POU.

14:21:34 16 They are also giving me a contact from the EMR service so I can

14:21:40 17 request documents from them, so we're doing our due diligence --

14:21:41 18         MS. BRILLEAUX:  And, your Honor, we have received some

14:21:43 19 medical records but none of them reference chemotherapy treatment

14:21:47 20 at all.  They reference a mastectomy but not chemotherapy.

14:21:53 21         THE COURT:  I am going to come back to this one.

14:21:59 22         MR. ELLIOTT:  Okay.

14:21:59 23         THE COURT:  Kimberly Coombs.  I'm hoping to get something

14:22:01 24 that's easy.

14:22:01 25         MR. ELLIOTT:  We filed a Plaintiff Fact Sheet on 5/27,

14:22:04  1   it's cured, your Honor.

14:22:05  2          MS. BRILLEAUX:  Your Honor, this is one that we got over

14:22:07  3   the Memorial Day weekend, and so we have not checked.  We would ask

14:22:12  4   for 24 hours to confirm that the deficiency has been cured and that

14:22:17  5   it would be ripe for dismissal if it has not.

14:22:19  6          MR. ELLIOTT:  And --

14:22:20  7          THE COURT:  Well, wait a minute.  I am not -- I mean,

14:22:26  8   what bothers me is I am giving 15 days to cure certain things.

14:22:31  9   Ms. Brilleaux, what bothers me in this circumstance, I give you 24

14:22:34 10   hours to look at it and you decide that it's not enough.  I am not

14:22:37 11   prepared to allow you to dismiss cases based upon your review.

14:22:44 12          I am going to give you seven days, and you all work it

14:22:47 13   out to confirm that a Plaintiff Fact Sheet has been filed.  And

14:22:51 14   then if it's not in compliance, then we'll deal with it.  But it's

14:22:58 15   hard for me to operate in the dark when I don't know -- what's not

14:23:02 16   going to be acceptable is a Plaintiff Fact Sheet with a name and a

14:23:06 17   date.  But I would have to -- seven days.

14:23:10 18          Pamela Crawford-Burno.

14:23:14 19          MR. ELLIOTT:  Same.

14:23:15 20          MR. INSOGNA:  Yes, your Honor.  This is another case

14:23:17 21   where we were advised yesterday of a cure, so I think we just need

14:23:20 22   seven days to assess.

14:23:22 23          THE COURT:  So ordered.  Jo Ann Dannenfelser.

14:23:28 24          MR. INSOGNA:  Same, your Honor.

14:23:29 25          MR. ELLIOTT:  She passed away.  We're asking for a longer

14:23:33 1   extension than seven days.

14:23:35 2         THE COURT:  When did she pass away?

14:23:37 3         MR. ELLIOTT:  Let's see.  Client died actually in August

14:23:40 4   of 2018, we were trying to reach her and that's not why we know

14:23:45 5   that she's passed away.  So unfortunately, these didn't show up on

14:23:50 6   a noncompliance until 30, 45 days ago.  We did make diligent

14:23:55 7   attempts to figure out and then we discovered that she's passed

14:23:58 8   away, so we would ask for time to talk with the family and see if

14:24:02 9   they want to participate -- actually it says we spoke with the

14:24:06 10  father Eric -- anyway, we're asking for more time.

14:24:12 11        THE COURT:  We need to come back to this one because this

14:24:15 12  is a suit that was filed three months after she died.

14:24:19 13        MR. ELLIOTT:  Yes.  Okay.  We can come back to that.

14:24:27 14        THE COURT:  We'll come back to that.

14:24:28 15        MR. LAMBERT:  Your Honor, this issue came up at the

14:24:31 16  hearing last week on a different case, and liaison counsel are

14:24:37 17  conferring with that counsel.  We'll do the same with Mr. Elliott.

14:24:42 18  I think --

14:24:42 19        THE COURT:  And I understand that that can happen --

14:24:50 20  let's just pass for right now.  Let's just pass it for right now

14:24:54 21  and we'll have a conversation after this.

14:24:55 22        MR. LAMBERT:  There may be a need for a separate case to

14:24:59 23  be filed with the survival claim.

14:25:01 24        MR. ELLIOTT:  And we can amend to pursue the right of

14:25:05 25  survivorship.

14:25:06  1            THE COURT:  Let's just talk about this one later.

14:25:06  2            MR. ELLIOTT:  Okay.

14:25:11  3            THE COURT:  Lois Haworth.

14:25:12  4            MS. BRILLEAUX:  Yes, your Honor.  This is no proof of

14:25:13  5   use.

14:25:14  6            MR. ELLIOTT:  I am showing that we have proof of use.

14:25:17  7            MS. BRILLEAUX:  We have a one-page record, it's a

14:25:20  8   pre-2011 treatment, but we have a one-page record that's a

14:25:24  9   consultation note post an abnormal mammogram that talks about the

14:25:28 10   findings.  But again, no evidence or even mention of chemotherapy

14:25:33 11   treatment.

14:25:33 12            MR. ELLIOTT:  Not according to my records, your Honor.

14:25:35 13   Says received a recommendation for Taxotere, so there's some record

14:25:41 14   in there that she took Taxotere.

14:25:44 15            MS. BRILLEAUX:  But that's a recommendation and not --

14:25:44 16            MR. ELLIOTT:  So this is my notes.  My staff did a rush

14:25:48 17   request for correct dates on 5/10.  We believe this will produce

14:25:52 18   the Taxotere proof of use.  Right now we believe we have enough

14:25:56 19   evidence to move forward because we have some records saying she

14:25:58 20   got a recommendation for Taxotere and the client saying she took

14:26:01 21   Taxotere.

14:26:01 22            We're getting the records, they will be here any day.  We

14:26:04 23   have an appointment this week to get any further missing

14:26:08 24   information from the client and this will be cured, I mean, as soon

14:26:13 25   as we get those records.  So we ask for at least 30 days until we

14:26:16 1   get the records back.  We did put a rush request in to the

14:26:20 2   facility.

14:26:20 3          MS. BRILLEAUX:  Your Honor, this was a case that was

14:26:22 4   filed in March of 2018.

14:26:26 5          THE COURT:  Mr. Elliott, I know you're frustrated.  But

14:26:29 6   let me tell you what's frustrating to me.  It looks like there's no

14:26:33 7   effort to get the information until you get on the list.

14:26:34 8          MR. ELLIOTT:  We do.  No, we do make effort.  I can tell

14:26:37 9   your Honor, before we file every case we have to have some proof,

14:26:41 10  there's these exceptional circumstances, anomalies like the one

14:26:43 11  where we file it because of the statute of limitations, but those

14:26:46 12  are few and far between.  We don't file -- we don't file them

14:26:49 13  unless we have a Rule 11 basis, we have some record proof; and this

14:26:50 14  one we do, she had a recommendation for Taxotere.  That was the

14:26:53 15  basis for the filing and her representations to us.  We think we'll

14:26:57 16  get more to validate that in the coming days, so.

14:27:02 17         THE COURT:  I am going to give you 15 days.  This has

14:27:05 18  been pending since March of last year.

14:27:08 19         Faith Hernandez.

14:27:10 20         MS. BRILLEAUX:  Yes, your Honor.  This is no PFS

14:27:11 21  submitted.

14:27:12 22         MR. ELLIOTT:  We submitted it yesterday.

14:27:17 23         THE COURT:  Seven days.

14:27:23 24         MS. BRILLEAUX:  The next one is Lee Jones.  I believe

14:27:26 25  that's a 505(b)(2) case.

14:27:28 1              MR. ELLIOTT:  Same, we just --

14:27:29 2              MR. INSOGNA:  Sorry, your Honor.  Lee Jones, we were

14:27:31 3    advised last night that there was a Plaintiff Fact Sheet submitted,

14:27:35 4    so we'd request seven days to check.

14:27:36 5              THE COURT:  So ordered.

14:27:40 6              Dorothy Kuykendall.

14:27:46 7              MR. INSOGNA:  Your Honor, this is a case where there has

14:27:49 8    been no Plaintiff Fact Sheet submitted.  One was submitted on

14:27:54 9    May 26th, there are a significant number of blanks.  I think this

14:27:59 10   is similar to the Fears Nachawati circumstance, so --

14:27:59 11             MR. ELLIOTT:  No, no -- I'm sorry, your Honor, can I

14:28:03 12   speak to that?  I personally went in to look at these Plaintiff

14:28:07 13   Fact Sheets.  I have an example of what we're doing.  We're not

14:28:12 14   filing blank Plaintiff Fact Sheets.  I don't want to be lumped in

14:28:15 15   with the Fears Nachawati situation.

14:28:21 16             I can give you an example.  I will tell you we have

14:28:22 17   difficulty from clients getting certain things like all of their

14:28:28 18   health insurance information, identifying each pharmacy drugstore,

14:28:33 19   you know.  And what we do is we'll put something there that says

14:28:37 20   discovery continues.

14:28:38 21             MS. BRILLEAUX:  This is yours.

14:28:39 22             MR. ELLIOTT:  So it's just -- you can see that we do go

14:28:46 23   through these Plaintiff Fact Sheets.  All of the basic identifying

14:29:05 24   information is in there.  All of the appropriate -- I mean, it's my

14:29:13 25   belief that all of the appropriate boxes have been checked.  These

14:29:16  1   are not blank.  They're substantially filled out, probably to the

14:29:19  2   tune of at least 70 percent.  You know, so I just -- I don't want

14:29:25  3   to be lumped in to these other situations.

14:29:28  4           THE COURT:  Mr. Insogna, you said there's no health

14:29:31  5   insurance information?  What else?

14:29:33  6           MR. INSOGNA:  No, your Honor.  The items that I've noted

14:29:35  7   are the date of cancer diagnosis, the cancer markers that go to

14:29:40  8   staging, the dates of chemotherapy treatment, the name of the

14:29:44  9   prescribing oncologist, prior medication history, and a list of

14:29:52 10   other medical providers.

14:29:53 11           THE COURT:  But do we have proof of use?

14:29:56 12           MR. INSOGNA:  Yes, your Honor, proof of use was submitted

14:29:58 13   in this case.

14:29:58 14           THE COURT:  And proof of injury?

14:30:01 15           MR. INSOGNA:  Yes, I believe so, your Honor.

14:30:08 16           THE COURT:  All right.  Then it's just some of the other

14:30:15 17   information that you don't have?

14:30:16 18           MR. INSOGNA:  Correct, your Honor.  Information that

14:30:20 19   would normally be subject to a deficiency notice.  It was just that

14:30:23 20   this was a Plaintiff Fact Sheet submitted after the last hearing

14:30:26 21   and it's still blank in significant ways.

14:30:30 22           THE COURT:  I am going give him 30 days to fill in those

14:30:33 23   things.  I think proof of use and proof of injury is more

14:30:36 24   problematic, but I am going to give him 30 days to cure these other

14:30:39 25   deficiencies.

14:30:40  1          MR. INSOGNA:  Understood, your Honor.

14:30:42  2          THE COURT:  Debra Laframboise.

14:30:48  3          MR. INSOGNA:  Yes, your Honor.  This case and the next

14:30:51  4  several are cases where we were advised of Plaintiff Fact Sheet

14:30:52  5  submission last night.

14:30:53  6          THE COURT:  Okay.  So seven days for those and let's go

14:30:55  7  through these.  Would that be Debra Laframboise, Brenda

14:31:00  8  Lampkin-Blakemore; is that seven days?

14:31:03  9          MR. INSOGNA:  Yes.

14:31:05 10          THE COURT:  Sylvia Lewis?

14:31:06 11          MR. INSOGNA:  Yes.

14:31:08 12          THE COURT:  Wanda Lopez?

14:31:10 13          MR. INSOGNA:  Correct.

14:31:12 14          THE COURT:  And Sherri McDonald?

14:31:16 15          MR. INSOGNA:  All the way through Kimberly Norwood, your

14:31:19 16  Honor.

14:31:19 17          THE COURT:  Let me read this for the record.  Sherri

14:31:22 18  McDonald, Yvonne Mitchell, Darlene Newtown and Kimberly Norwood.

14:31:27 19  As to all of those, the Court is going to grant seven days --

14:31:31 20          MR. ELLIOTT:  Actually Mitchell, your Honor.  All of

14:31:34 21  these we filed Plaintiff Fact Sheets on.  Mitchell, she's passed

14:31:37 22  away, so we would just ask for the family to be able to go through

14:31:42 23  the process.  Just more time for her we'd ask.

14:31:47 24          THE COURT:  Okay.  I am going to grant 30 days on

14:31:51 25  Ms. Mitchell.  But you filed a Plaintiff Fact Sheet, right?

14:31:53  1            MR. ELLIOTT:  Yeah, I mean we have family cooperation --

14:31:56  2    actually, Yvonne doesn't look like we filed a Plaintiff Fact Sheet.

14:32:00  3            MS. BRILLEAUX:  Yes.  I think that that was --

14:32:03  4    Mr. Insogna, that's one where we have no PFS submitted.

14:32:07  5            THE COURT:  Okay.  All right.  As to --

14:32:07  6            MR. ELLIOTT:  The others are correct, we did file

14:32:09  7    Plaintiff Fact Sheets on.

14:32:10  8            THE COURT:  The Court's going to grant seven days as to

14:32:14  9    the others, 30 days to Ms. Yvonne Mitchell.

14:32:17 10            Drema Osborne.

14:32:20 11            MS. BRILLEAUX:  This is a -- we were advised that there

14:32:24 12    was a purported cure of the no PFS deficiency yesterday afternoon.

14:32:29 13    So we would ask for 24 hours to confirm that it was uploaded as

14:32:35 14    represented.

14:32:37 15            THE COURT:  Okay.  You want seven days to go through it,

14:32:40 16    too?

14:32:41 17            MS. BRILLEAUX:  Yes, thank you.

14:32:44 18            THE COURT:  Mercy Ozuna.

14:32:46 19            MS. BRILLEAUX:  Same situation, your Honor.

14:32:48 20            THE COURT:  Seven days.

14:32:54 21            Jamie Payne.

14:32:56 22            MR. INSOGNA:  No Plaintiff Fact Sheet as of yesterday

14:32:58 23    afternoon, your Honor.

14:32:59 24            MR. ELLIOTT:  We did file it yesterday evening.

14:33:01 25            THE COURT:  You did?

14:33:02  1          MR. ELLIOTT:  Yeah.  Jamie Payne, she's been filed.

14:33:05  2          THE COURT:  I am going to grant seven days to review.

14:33:09  3          Vera Perez.

14:33:13  4          MR. INSOGNA:  No Plaintiff Fact Sheet as of yesterday

14:33:16  5  afternoon, your Honor.

14:33:16  6          MR. ELLIOTT:  As of 5/27 Vera's cancer has come back,

14:33:20  7  she's back on chemotherapy, she would like an extension, she is

14:33:24  8  going through a difficult time.  So I don't know, 60 days, I

14:33:27  9  mean --

14:33:28  10          THE COURT:  I'll give her 30 days.

14:33:28  11          MS. BIERI:  We really can't hear Chris at all.  I can

14:33:28  12  hear Kelly just fine, so I don't know what Kelly's doing.

14:33:28  13          MR. ELLIOTT:  Must be something wrong with this

14:33:44  14  microphone, or maybe I just need to speak fuller.

14:33:44  15          THE COURT:  You're not talking into the microphone.

14:33:44  16          MR. ELLIOTT:  Okay.  I'll just speak much closer.  Sorry

14:33:44  17  guys.

14:33:44  18          THE COURT:  Linda Quarles.

14:33:45  19          MS. BRILLEAUX:  Your Honor, this is no PFS submitted.  We

14:33:48  20  see that we were advised yesterday of a purported cure, so we would

14:33:52  21  ask for seven days.

14:33:53  22          THE COURT:  Court's going to grant seven days.

14:33:55  23          Paula Quill.

14:33:58  24          MR. INSOGNA:  No Plaintiff Fact Sheet as of yesterday

14:34:01  25  afternoon, your Honor.

14:34:02  1          MR. ELLIOTT:  We did discover she did pass away and that

14:34:05  2  was after the filing of her lawsuit.  We would ask for 30 days to

14:34:09  3  consult.

14:34:09  4          THE COURT:  The Court's going to grant 30 days.

14:34:13  5          Sophia Richards.

14:34:15  6          MR. INSOGNA:  Your Honor --

14:34:15  7          THE COURT:  Yes.

14:34:15  8          MR. INSOGNA:  Sorry.  May I ask, for the plaintiffs who

14:34:18  9  have passed away is the 30 days to substitute a representative or

14:34:21 10  to provide a Plaintiff Fact Sheet?

14:34:23 11          THE COURT:  Well, hopefully both.  But I will tell you

14:34:26 12  that if it requires additional time, that's not with anyone sitting

14:34:33 13  on hair hands, the Court will entertain a request to extend it.

14:34:39 14  Because -- it just depends on your jurisdiction.  Some

14:34:41 15  jurisdictions you can get a representative appointed immediately,

14:34:45 16  others it may take some time.

14:34:47 17          I am granting 30 days hopefully to have -- I don't know

14:34:52 18  if the paperwork has been started on the representative and so this

14:34:57 19  is already in the pipe, but if not, it may take some time and I

14:35:04 20  would expect everyone to extend professional courtesies if

14:35:10 21  someone -- because these case that I am looking at, this case was

14:35:13 22  filed December 2018, she died after the filing, that means that, I

14:35:19 23  am guessing, it was earlier this year, so it may take some time.  I

14:35:23 24  would expect you all to extend personal courtesies, but I am giving

14:35:27 25  you 30 days today.

14:35:29  1            MR. ELLIOTT:  Thank you.

14:35:29  2            MR. INSOGNA:  Of course, understood, your Honor.  I just

14:35:30  3  wanted to confirm what our follow-up obligations are.

14:35:33  4            THE COURT:  Sure.  Ms. Berg.

14:35:34  5            MS. BERG:  Your Honor, just to be consistent.  For the

14:35:39  6  plaintiffs that have been deceased and need to find a substitute,

14:35:44  7  you've been giving 60 days.  There's a few that were given 45 or

14:35:50  8  30 days, and we just ask the circumstance where it may take a very

14:35:54  9  long time to work through that those get 60 days.

14:36:03 10            THE COURT:  Which one?

14:36:04 11            MS. BERG:  That's Nos. 5 --

14:36:06 12            THE COURT:  I tell you what, No. 5, she died last month.

14:36:09 13            MS. BERG:  That was 60.

14:36:10 14            THE COURT:  That's why I granted 60 days.  These

14:36:13 15  others --

14:36:15 16            MS. BERG:  No. 16 was 60 days, 18 was 45 days.

14:36:23 17            THE COURT:  I think, very frankly, in my view I was

14:36:42 18  considering the fact that the woman just died, which is why I gave

14:36:46 19  60 days, and that they'd made contact, but it was a month ago.

14:36:53 20            Some of the others, what I'm hearing is, "She's deceased.

14:36:56 21  I'm in contact, I've been talking to her son."  Well, I'm assuming

14:36:59 22  things are already progressing.  But if indeed it becomes

14:37:04 23  problematic, then we'll deal with it.  But I don't want to give

14:37:08 24  anybody any opportunity to sit on their hands.

14:37:13 25            And so the reason of 60 days was because I did mark that

14:37:17 1   she died last month.  Okay?

14:37:19 2          MS. BERG:  Thank you, your Honor.

14:37:20 3          THE COURT:  But thank you, Ms. Berg.

14:37:22 4          Sophia Richards.

14:37:25 5          MS. BRILLEAUX:  Yes, your Honor, no PFS submitted.

14:37:31 6          MR. ELLIOTT:  We actually have a representative going to

14:37:33 7   her home this week and hope to have -- we would ask for seven days.

14:37:38 8   We made contact, so we need -- we'd like the notary to be able to

14:37:44 9   get to the home and her to fill everything out and get it back to

14:37:47 10  us.  I realize it's --

14:37:48 11         THE COURT:  You have no information at all from this

14:37:50 12  lady?

14:37:50 13         MR. ELLIOTT:  The issue is, your Honor, we actually just

14:37:53 14  discovered her new address.  Sometimes our clients move, we have to

14:37:56 15  skip trace them, and we find their address --

14:37:59 16         THE COURT:  I am going to give you seven days.  Don't

14:38:04 17  take eight.

14:38:04 18         MR. ELLIOTT:  Yes.  Yes, your Honor.

14:38:08 19         Bridget Robinson.

14:38:10 20         THE COURT:  And that's only because the suit was filed in

14:38:13 21  December.  Bridget Robinson.

14:38:16 22         MR. INSOGNA:  Yes, your Honor.  No Plaintiff Fact Sheet

14:38:18 23  submitted.

14:38:19 24         MR. ELLIOTT:  This is the same situation.  We have,

14:38:21 25  actually, an appointment today at 8 P.M. she'll have her documents.

14:38:24  1          THE COURT:  Seven days.

14:38:27  2          MS. BRILLEAUX:  The next one, your Honor, Sarah Rundell

14:38:30  3   is no before photos.

14:38:33  4          MR. ELLIOTT:  We've uploaded a before photo on 5/27

14:38:37  5   (VERBATIM), I'm told it's within five years.  So I think we've

14:38:41  6   cured that.

14:38:41  7          MS. BRILLEAUX:  So our notes show that it is dated summer

14:38:47  8   2002, but that the, according to the PFS, chemo treatment took

14:38:54  9   place in March through May of 2002, so this would actually be an

14:38:59 10   after photograph rather than a before.

14:39:01 11          MR. ELLIOTT:  I need to run that around, your Honor.  My

14:39:03 12   understanding is that we cured this, so I fully expect that that's

14:39:07 13   within the five.  But I'll -- if you give me seven days, I can get

14:39:10 14   that.

14:39:11 15          THE COURT:  The Court's going to grant seven days.  Did

14:39:14 16   you look at the photo today?

14:39:16 17          MS. BRILLEAUX:  I mean, I personally did not.  But -- we

14:39:21 18   have the photo was uploaded on May 7th, 2019 and that it's dated

14:39:27 19   summer 2002, which doesn't align with the chemo treatment dates.

14:39:32 20          THE COURT:  I thought you said -- when did you upload the

14:39:35 21   photo, Mr. Elliott?

14:39:36 22          MR. ELLIOTT:  5/7, May 7th.

14:39:41 23          THE COURT:  Y'all go figure this out.  Seven days.

14:39:44 24          Carrie Rupert.

14:39:46 25          MS. BRILLEAUX:  Yes, your Honor.  This is for -- this is

14:39:50  1   a similar issue, no before photos.  We have that the only photo

14:39:55  2   that is labeled before is dated after chemotherapy treatment.  It's

14:40:00  3   dated January 15th, 2013, and the treatment dates in the PFS are

14:40:05  4   June 2012 through August 2012.

14:40:09  5        MR. ELLIOTT:  I have notes here we've uploaded all of her

14:40:13  6   core documents, her photos, declaration signature page, medical

14:40:17  7   records, authorizations, proof of use.  We're also waiting to go

14:40:20  8   through the CMO 12 process to gather the results so we can confirm

14:40:24  9   the manufacturer.  That's all I have.  I have everything else being

14:40:27 10   compliant.

14:40:28 11        THE COURT:  I am going to give you seven days to figure

14:40:30 12   this out.

14:40:33 13        Louise Sena.

14:40:35 14        MS. BRILLEAUX:  Yes, your Honor.  This is no before

14:40:37 15   photos, similar issue.  The only photo labeled before is dated

14:40:41 16   after chemo.

14:40:47 17        MR. ELLIOTT:  We uploaded before photos on 5/27.  We

14:40:52 18   spoke with her Ms. Sena at the time to let her know she needs to

14:40:54 19   gather any other information for her PFS, but it looks like we've

14:40:58 20   uploaded Plaintiff Fact Sheet, authorizations, photos, proof of

14:41:02 21   use, and CMO 12 product ID has been identified.  So I am not sure.

14:41:09 22   I would ask for seven days, I guess.

14:41:12 23        MS. BRILLEAUX:  Your Honor, again, the issue is that the

14:41:14 24   photo labeled before is dated with a date that is inconsistent with

14:41:19 25   it being a before.

14:41:20  1            THE COURT:  I understand that.

14:41:21  2            MR. ELLIOTT:  I can get that clarified in seven days.

14:41:24  3            THE COURT:  Let's get that.  Seven days.  Something about

14:41:28  4     this is not making sense.

14:41:31  5            Imogene Seymore.

14:41:33  6            MS. BRILLEAUX:  Yes, your Honor.  This is no before

14:41:34  7     photos from within five years of treatment.

14:41:36  8            MR. ELLIOTT:  Before photos we uploaded on 4/22; however,

14:41:39  9     they are not within five years, she is correct.  However, we did

14:41:44 10     have her sign a written statement that the rest of her photos were

14:41:48 11     lost in a house fire, this is an exceptional circumstance where she

14:41:52 12     lost --

14:41:52 13            THE COURT:  How far out was her before photos?

14:41:55 14            MR. ELLIOTT:  I don't have that information -- oh,

14:41:57 15     actually, this one might have been like eight years and it's not

14:42:01 16     within five.

14:42:02 17            MS. BRILLEAUX:  My notes show from 12 years, 12 years

14:42:05 18     before chemo.

14:42:06 19            MR. ELLIOTT:  Might be thinking of a different one.  We

14:42:09 20     do have a statement from her that her photos were lost in a house

14:42:13 21     fire.

14:42:13 22            THE COURT:  Nobody else in her family has a photo of her?

14:42:16 23     I mean, where did the 12-year photo come from?

14:42:18 24            MR. ELLIOTT:  I mean, we go to their house, you know, we

14:42:20 25     do everything we can to get the before photos.  We know how

14:42:24 1  important that is to the Court and the litigation.  If you give me

14:42:29 2  seven days, I can try to see if there's any others.  But at the end

14:42:33 3  of the day, if that's the only before photo she has and she lost

14:42:37 4  the rest in a house fire, then I think we've cured the deficiency.

14:42:40 5       THE COURT:  Well, I know you think that.  What's been

14:42:44 6  frustrating to me, as I indicated last time, is this crutch that

14:42:48 7  it's become.  And I just wonder where the 12-year photo came from.

14:42:54 8  If all of the photos were lost, where did this one come from?  She

14:42:59 9  didn't have a driver's license from before?

14:43:02 10      MR. ELLIOTT:  I'll try all of this.  I'll personally call

14:43:06 11  her myself this week and see what we can do, what we come up with.

14:43:10 12      MS. BRILLEAUX:  Your Honor, just for the purposes of

14:43:12 13  consistency, it's defendant's understanding that no statements are

14:43:15 14  supposed to be submitted unless and until you order them to be.

14:43:20 15  And that is my understanding of how that's been instructed to the

14:43:23 16  rest of the plaintiffs in this litigation.

14:43:25 17      THE COURT:  And that's why -- I didn't say I was going to

14:43:28 18  accept it.

14:43:34 19      MR. ELLIOTT:  We don't generally have these situations

14:43:37 20  where -- we know how important it is these days to make sure we

14:43:44 21  have the within five before photos.  My staff is very clear on what

14:43:48 22  they're supposed to be getting.  But this one, unfortunately, this

14:43:51 23  is what we have.

14:43:53 24      If you give me seven days, I can try to clarify if that's

14:43:57 25  it.  But if it's it, we would ask that it not be dismissed.

14:44:13  1                    THE COURT:  Why would I do that, Mr. Elliott?

14:44:16  2                    MR. ELLIOTT:  I'm sorry?

14:44:16  3                    THE COURT:  Why would I do that?

14:44:18  4                    MR. ELLIOTT:  Why would you not dismiss it?

14:44:21  5                    THE COURT:  Yeah.  This is where I am.  This case was

14:44:26  6      filed in March of last year, so that's been pending for now over

14:44:33  7      14 months.

14:44:33  8                    MR. ELLIOTT:  Right.

14:44:36  9                    THE COURT:  And you were on notice that there was this

14:44:38 10      deficiency and now -- but now if today you give me another seven

14:44:44 11      days, I think I can probably cure this.

14:44:46 12                    MR. ELLIOTT:  Well, no.  My position is we've cured it.

14:44:49 13      We've uploaded the before photo that we have and we have a written

14:44:52 14      statement from the client saying that the rest were lost in a house

14:44:56 15      fire.  I am representing to the Court what we're told by our

14:44:59 16      clients.  And so I think we've met our obligations.

14:45:09 17                    If a client -- if that's all they have, I can't see why

14:45:11 18      the case would be dismissed.  I think your Honor even stated before

14:45:15 19      if it was Katrina, or something like that, but why is a house fire

14:45:18 20      any different than Katrina?  It's the same kind of catastrophic

14:45:22 21      situation where you lose valuable things.

14:45:25 22                    So I think this could be one of these unique

14:45:27 23      circumstances, at least that's what she's represented to us.

14:45:30 24                    But again, if you'd like, I can go back and ask her, are

14:45:35 25      you 100 percent sure, did you look under every stone to make sure

14:45:39  1    there's not another within five.

14:45:42  2         THE COURT:  I think part of the problem was, what I

14:45:43  3    indicated is that I would have to talk to the plaintiff to satisfy

14:45:46  4    myself that there is some legitimacy to this claim.

14:45:46  5         MR. ELLIOTT:  Okay.

14:45:51  6         THE COURT:  And I don't know if she is an only child that

14:45:53  7    has never had a relative and never attended any function outside of

14:45:56  8    her home, but it's very hard for me to believe that anybody cannot

14:46:00  9    get hold of a picture from five years prior to treatment.  And I am

14:46:05  10   not trying to be difficult, but I am going to give you seven days,

14:46:09  11   but -- and then if you come back and say there was a house fire and

14:46:15  12   it burned everything that anybody, everybody was storing everything

14:46:20  13   at her house, I will have to question her --

14:46:23  14        MR. ELLIOTT:  Okay.  That's fine.

14:46:25  15        THE COURT:  -- before I am satisfied.

14:46:28  16        MR. ELLIOTT:  Okay.

14:46:29  17        THE COURT:  Before I will accept an affidavit.

14:46:31  18        MR. ELLIOTT:  We will do what we can to get her on the

14:46:33  19   phone to satisfy your Honor.

14:46:35  20        THE COURT:  Uh-huh.  There is something you wanted to

14:46:42  21   say, Ms. Barrios?

14:46:44  22        MS. BARRIOS:  Your Honor, I was going to offer as an

14:46:48  23   officer of the court to be the one to speak with the plaintiff

14:46:52  24   about the availability of photos so you didn't have to do that.

14:46:57  25   I'm happy to do that, your Honor.

14:46:59  1          THE COURT:  Okay.  Thank you.

14:47:02  2          MS. BARRIOS:  And we'll report back to you.

14:47:03  3          THE COURT:  I just think my concern has been because I

14:47:09  4  did that in one case and then it opened this flood gate and it was

14:47:14  5  easier to say I don't have photographs than to say -- and even when

14:47:21  6  people have a house fire where you may lose everything in your

14:47:25  7  home, very few people don't have somebody somewhere.

14:47:30  8          MS. BARRIOS:  Everybody has a niece's wedding.

14:47:33  9          THE COURT:  I told you that, that it's either graduated

14:47:35  10  from high school, that has gotten married, or there's a baby

14:47:38  11  shower.  There is something somewhere where there is a photograph.

14:47:42  12  Or you might have a job and you have to take a picture to get into

14:47:47  13  the building.

14:47:48  14          MS. BARRIOS:  That's a great idea.

14:47:50  15          THE COURT:  People are going to have driver's licenses.

14:47:53  16          MS. BARRIOS:  I believe Mr. Elliott is going to be in

14:47:54  17  town for a couple of days, and I will make sure that he and I speak

14:47:58  18  with the client and I will do a report to the defendants and to

14:48:01  19  your Honor.

14:48:02  20          THE COURT:  It's not enough to say I looked under my sofa

14:48:04  21  and I didn't have any.

14:48:05  22          MS. BARRIOS:  I totally understand, your Honor.

14:48:07  23          THE COURT:  Okay.  Thank you.

14:48:10  24          Deborah Short.

14:48:11  25          MS. BRILLEAUX:  Yes, your Honor.  No PFS.

14:48:20  1          MR. ELLIOTT:  Oh, we made contact with Ms. Short.  We

14:48:24  2   have a representative going to the home to get her documents is my

14:48:27  3   understanding.  So we would ask for seven days.

14:48:40  4          THE COURT:  I am going to give you seven days only

14:48:42  5   because this was filed in December.  But, gosh, you had notice

14:48:46  6   before.  This is beyond frustrating.

14:48:49  7          MR. ELLIOTT:  Your Honor, just so you know, my office, I

14:48:52  8   sent letters to the clients preemptively before the lawsuits are

14:48:56  9   filed, we do that, we send them their blank PFS so they can get it

14:49:00 10   back to us in a timely fashion.  Just some folks are just harder to

14:49:04 11   reach than others unfortunately.  But it's not for a lack of effort

14:49:08 12   on my office's part, I can tell you that for sure.

14:49:13 13          THE COURT:  Lisa Simpson.

14:49:14 14          MR. ELLIOTT:  We dismissed that on 5/21.

14:49:17 15          MS. BRILLEAUX:  5/21?

14:49:19 16          MR. ELLIOTT:  That's what I have here.

14:49:20 17          MS. BRILLEAUX:  We don't have a record of that dismissal.

14:49:23 18          THE COURT:  It's dismissed with prejudice.

14:49:25 19          MS. BRILLEAUX:  Thank you, your Honor.

14:49:26 20          THE COURT:  Carol Smith.

14:49:31 21          MR. ELLIOTT:  We had a bad address for her, so we were

14:49:34 22   sending her letters.  It looks like now we have made contact with

14:49:37 23   her, she wishes to participate.  We'd ask for another seven days.

14:49:42 24          THE COURT:  Seven days.

14:49:44 25          Raelynn Smith.

14:49:45  1          MS. BRILLEAUX:  No PFS submitted.

14:49:47  2          MR. ELLIOTT:  Submitted on -- submitted yesterday.

14:49:51  3          MS. BRILLEAUX:  We don't have -- was that in the list of

14:49:54  4  cures that you sent?

14:49:55  5          MR. ELLIOTT:  I am not sure.  It may have been submitted

14:49:58  6  last night, but it says filed on 5/28.

14:50:03  7          THE COURT:  Seven days, Ms. Brilleaux, for you to

14:50:06  8  confirm.

14:50:06  9          MS. BRILLEAUX:  Thank you, your Honor.

14:50:07 10          THE COURT:  Addie Smith.

14:50:09 11          MS. BRILLEAUX:  Before photos not dated.

14:50:15 12          THE COURT:  Date your photos within seven days.

14:50:17 13          MR. ELLIOTT:  Seven days, okay.

14:50:19 14          MS. BRILLEAUX:  Christine Smith, I think Mr. Insogna's on

14:50:25 15  the line for that one.

14:50:26 16          THE COURT:  Mr. Insogna?

14:50:29 17          MR. INSOGNA:  Your Honor, Christine Smith is no before

14:50:34 18  photos for proof of injury.

14:50:37 19          MR. ELLIOTT:  We did upload before photos within five --

14:50:42 20  correctly dated within five, I have notes here on 5/27.

14:50:45 21          THE COURT:  I am going to grant you seven days to

14:50:48 22  confirm.

14:50:49 23          MR. INSOGNA:  Thank you, your Honor.

14:50:51 24          THE COURT:  Chantel Southern.

14:50:53 25          MR. INSOGNA:  No Plaintiff Fact Sheet submitted.

14:50:56 1              MR. ELLIOTT:  Filed yesterday, your Honor.

14:50:59 2              THE COURT:  Seven days to confirm.

14:51:02 3              Tammy Strong.

14:51:03 4              MR. ELLIOTT:  Same, filed yesterday.

14:51:05 5              THE COURT:  Seven days to confirm.

14:51:13 6              Judy Sublette.

14:51:15 7              MS. BRILLEAUX:  Your Honor, for this one we have a

14:51:17 8    similar issue that we discussed before.  We have a photo labeled as

14:51:19 9    a before photo but the dates do not match up, and our records show

14:51:24 10   that it's actually from after treatment.

14:51:26 11             MR. ELLIOTT:  I show that we fixed that, your Honor.

14:51:29 12             THE COURT:  I am going to give you all seven days to work

14:51:32 13   through that.

14:51:33 14             MS. BRILLEAUX:  Thank you, your Honor.

14:51:36 15             THE COURT:  Nomindari Sukhee.

14:51:37 16             MS. BRILLEAUX:  No PFS submitted.

14:51:39 17             MR. ELLIOTT:  Another one we have an appointment at her

14:51:42 18   home to get the documents.  We would ask for seven days.

14:51:45 19             THE COURT:  Seven days because it was filed in December.

14:51:48 20             Jill Sweeden.

14:51:50 21             MR. INSOGNA:  No Plaintiff Fact Sheet, your Honor.

14:51:53 22             MR. ELLIOTT:  Filed yesterday.

14:51:54 23             THE COURT:  Seven days to confirm.

14:51:56 24             Ruby Tate.

14:51:57 25             MS. BRILLEAUX:  No PFS submitted, your Honor.

14:51:58  1        MR. ELLIOTT:  We discovered she passed away.  I don't

14:52:01  2   have any details on dates of when she passed, but we would ask for

14:52:04  3   more time to reach the family.

14:52:08  4        THE COURT:  So you haven't talked to anybody in the

14:52:10  5   family?

14:52:11  6        MR. ELLIOTT:  Actually, I misread that, it says family

14:52:13  7   wishes to participate, so we have made contact with the family.

14:52:18  8        THE COURT:  I am going to give you 45 days.

14:52:24  9        Rhonda Treash.

14:52:25 10        MR. ELLIOTT:  Same, Plaintiff Fact Sheet was filed

14:52:27 11   yesterday.

14:52:28 12        THE COURT:  Seven days to confirm.

14:52:31 13        Marta Vargas.

14:52:33 14        MR. ELLIOTT:  Filed yesterday.

14:52:34 15        THE COURT:  Seven days for defense counsel to confirm.

14:52:41 16        Hope Vidal.

14:52:42 17        MR. ELLIOTT:  Filed yesterday.

14:52:47 18        THE COURT:  Seven days to confirm.

14:52:49 19        Teresa Whitlock.

14:52:50 20        MS. BRILLEAUX:  Your Honor, no before photos from within

14:52:53 21   five years of treatment.

14:52:54 22        MR. ELLIOTT:  We have before photos were dated and

14:52:57 23   properly uploaded on March 30th, those are my notes.  Present day

14:53:01 24   photos were properly dated and uploaded on the same day.  So it's

14:53:05 25   our belief that we have cured this.

14:53:09  1          MS. BRILLEAUX:  None within five years of treatment.

14:53:11  2          MR. ELLIOTT:  Says dated properly.  We can clarify that

14:53:14  3  if you give us seven days.

14:53:16  4          THE COURT:  Seven days to work this out.

14:53:21  5          Debra Williams.

14:53:23  6          MS. BRILLEAUX:  No PFS submitted.

14:53:26  7          MR. ELLIOTT:  Filed yesterday.

14:53:31  8          THE COURT:  Seven days to confirm.

14:53:33  9          Donna Wood.

14:53:34 10          MS. BRILLEAUX:  No before photos from within five years

14:53:38 11  of treatment.

14:53:44 12          MR. ELLIOTT:  I asked her and she says she only has 1999

14:53:48 13  photos, son lives in another state.  We asked for other family

14:53:52 14  members, she does not have any of her.  She does not like photos.

14:53:57 15  And so that was her excuse as to why she can't get us any photos

14:54:01 16  within five, all she has is a 1999 picture.

14:54:03 17          THE COURT:  She doesn't have a driver's license?

14:54:05 18          MR. ELLIOTT:  I think the issue, her treatment was, you

14:54:09 19  know, long ago, so she wouldn't have a copy of the driver's license

14:54:13 20  within five.  That's the issue.  It's not a new treatment.  The

14:54:19 21  photos we have is the 1999.

14:54:25 22          When was this filed?  This was filed in March, but that's

14:54:27 23  her -- she understands, I mean, we had the conversation with her.

14:54:34 24  She knows that you could dismiss her case, she understands that,

14:54:38 25  but she says that's all she's got.

14:54:40  1          THE COURT:  Ms. Barrios, do you have something to say?

14:54:43  2          MS. BARRIOS:  Yes, ma'am.  Your Honor, I will be happy to

14:54:46  3   extend the same offer I extended before as an officer of the court,

14:54:49  4   I'll get together with Mr. Elliott, we'll call the client and

14:54:52  5   report to defense counsel and your Honor the substance of the

14:54:56  6   conversation.

14:54:59  7          MR. ELLIOTT:  I think in these situations, your Honor, we

14:55:01  8   could technically call a friend, you know, if they're on trial or

14:55:08  9   something and say, "What did her hair look like before her

14:55:10 10   chemotherapy?  Was it full?  Was it thick?"  We could have witness

14:55:14 11   testimony that was spent time with her, co-workers and stuff like

14:55:18 12   that.  If there is, in fact, no pictures, there's other ways to

14:55:22 13   prove it up is my point.

14:55:23 14          So I just hate to see these kind of cases get thrown out

14:55:28 15   if we've done our due diligence and they've gotten us the best

14:55:32 16   photo that they can get us.  That's just my two cents.  Anyway.

14:55:39 17          THE COURT:  Go ahead, Mr. Lambert, you're halfway up.

14:55:42 18          MR. LAMBERT:  Your Honor, I'm sorry.  Palmer Lambert

14:55:45 19   again.

14:55:46 20          We have had this conversation in prior show cause

14:55:50 21   hearings, and it's the PSC's position that there are many different

14:55:55 22   ways to potentially prove your case.  And we're not at the stage of

14:56:01 23   evaluating the sufficiency of the evidence regarding the

14:56:08 24   pre-commission and the post commission and whether or not the hair

14:56:13 25   loss was caused by a particular use of the defendant's product.

14:56:19  1          So at this stage, we're only evaluating what your Honor

14:56:23  2   had asked us to evaluate, which is does the plaintiff have

14:56:27  3   photographs in their possession that are responsive to the PFS.  If

14:56:31  4   they don't have them, they need to make some sort of verification

14:56:34  5   as to why they don't have them and it has to be a good reason, I

14:56:38  6   think is what your Honor said before, and it has to be signed and

14:56:43  7   certified under penalty of perjury.

14:56:51  8          But I do think Mr. Elliott is correct, the fact that a

14:56:53  9   single photograph exists more than five years before is not a valid

14:56:59  10  basis for dismissal at this stage.

14:57:04  11          MS. BRILLEAUX:  And just for the purposes of the record,

14:57:07  12  the PFS and the following pretrial orders are clear that a photo

14:57:12  13  within five years of chemo is a requirement under the PFS.

14:57:17  14          MS. BARRIOS:  Your Honor, Dawn Barrios.  The PFS actually

14:57:20  15  says if you have it in your possession, it's limited to possession.

14:57:24  16  But to shortcut the argument, I am happy again to --

14:57:28  17          THE COURT:  I am going to grant seven days to give

14:57:31  18  Ms. Barrios an opportunity to see what she can do.

14:57:34  19          Ramona Young.

14:57:36  20          MR. INSOGNA:  No Plaintiff Fact Sheet, your Honor.

14:57:38  21          MR. ELLIOTT:  We just filed it, ask for seven days.

14:57:42  22          THE COURT:  When?

14:57:42  23          MR. ELLIOTT:  And the same thing with Zupko, the last

14:57:45  24  one, the PFS was filed.

14:57:47  25          THE COURT:  I am going to grant the defendants seven days

14:57:50  1    to review.

14:57:53  2                MS. BRILLEAUX:  Thank you, your Honor.  Are there some

14:57:53  3    that we need to revisit?

14:57:58  4                THE COURT:  Yes, we have two we have to go back to.

14:58:01  5                MS. BERG:  I think 19 and 21 -- or 22, 19 and 22.

14:58:16  6                THE COURT:  Hattie Coleman.

14:58:16  7                MR. ELLIOTT:  This is the doctor -- where their

14:58:18  8    noncompliance description was no CMO 12A, so we go through that

14:58:22  9    process.  We got to the deposition stage of Dr. Dozier, he was

14:58:25 10    willing to take a deposition, but he said, hey, let me check in my

14:58:27 11    own records and see if I can get you what you need.  So we're

14:58:31 12    asking for at least 15 days just so that Mr. -- Dr. Dozier can see

14:58:37 13    if he can get the docetaxel proof and the manufacturer for us; and

14:58:40 14    if not, the case will get dismissed.  I mean, I'm fine with that.

14:58:44 15                THE COURT:  I am going to grant 15 days.

14:58:47 16                The thing that bothered me about this case is it was

14:58:50 17    filed in 2017, so we're 18 months out.

14:58:55 18                MS. BRILLEAUX:  And, your Honor, just again for the

14:58:57 19    record and I just want to be very clear, we have received medical

14:59:00 20    records in this case and none of them indicate even chemotherapy

14:59:04 21    cycle.

14:59:05 22                THE COURT:  I understand that.

14:59:06 23                MS. BRILLEAUX:  Thank you.

14:59:06 24                THE COURT:  And then Jo Ann Dannenfelser, that was number

14:59:13 25    22 and she passed away, the best I can tell --

14:59:15  1          MR. ELLIOTT:  Before her lawsuit was filed, that was one

14:59:17  2   of those --

14:59:17  3          THE COURT:  -- 8/28.  And what's the story there?

14:59:22  4          MR. ELLIOTT:  I don't think -- we were filing these

14:59:29  5   because of the statute, you know, a lot of times.  Just so we're

14:59:34  6   compliant with that.  So not necessarily we can always talk to

14:59:37  7   these folks, and so a lot of our clients are not quite responsive

14:59:41  8   to us in the first place.  I have to actually send investigators to

14:59:44  9   their house, knock on the door to get their cooperation.  And so

14:59:49 10   it's not haven't heard of that a client wouldn't call us back

14:59:55 11   before.

14:59:56 12          If I have the Rule 11 basis to file their suit, that's

14:59:57 13   what we're going to do.  And unfortunately, we didn't discover that

15:00:01 14   she had passed away until she showed up on a deficiency.  And now,

15:00:04 15   I guess, we've made contact with her father Eric and it looks like

15:00:09 16   he wishes to participate.  So we ask for some time.

15:00:12 17          THE COURT:  Has Eric started -- did they do a succession?

15:00:19 18          MR. ELLIOTT:  I don't have those details if he started in

15:00:22 19   the state or if he's done any kind of probate paperwork.  All I

15:00:27 20   have is he wishes to participate, so.

15:00:32 21          THE COURT:  Okay.  Do you have something, Mr. Lambert?

15:00:34 22          MR. LAMBERT:  Yes, your Honor.  We're happy to discuss,

15:00:37 23   as we were discussing with the other counsel from the first part of

15:00:41 24   this hearing last week, whether or not the heirs want to pursue the

15:00:48 25   appropriate survival action under whatever state law is applicable

15:00:51  1    to their claim, we're happy to discuss that and report back at the

15:00:55  2    next conference.

15:00:56  3            THE COURT:  Why don't we just pass this for 30 days until

15:01:03  4    we see what we're going to do.  Okay.

15:01:07  5            MR. ELLIOTT:  I believe that concludes it.

15:01:11  6            MR. LAMBERT:  Before Mr. Insogna leaves the phone, can we

15:01:15  7    wish him a happy birthday?

15:01:17  8            THE COURT:  It's your birthday?

15:01:17  9            MR. INSOGNA:  It is, thank you.

15:01:21  10           THE COURT:  Happy birthday.

15:01:22  11           MS. BRILLEAUX:  Happy birthday, Mr. Insogna.

15:01:25  12           MR. INSOGNA:  Thank you everyone.

15:01:26  13           THE COURT:  I will not ask you how old you are.

15:01:35  14           MS. BARRIOS:  The plaintiffs would like to tell

15:01:38  15   Ms. Bieri, who was in a tornado shelter last night, but yet

15:01:43  16   nonetheless got us the list, how much we appreciate her efforts.

15:01:47  17           THE COURT:  Oh, my goodness.

15:01:48  18           MS. BRILLEAUX:  And staff as well.  But, yes, Ms. Bieri

15:01:51  19   was literally driving to take shelter from a tornado and we still

15:01:55  20   got the list last night.

15:01:56  21           THE COURT:  Ms. Bieri, are you okay?

15:01:59  22           MS. BIERI:  Yes, your Honor.  Everything turned out just

15:02:02  23   fine for us.  Thank you for your kind words, Ms. Barrios, and yours

15:02:06  24   as well, Judge Milazzo.

15:02:08  25           THE COURT:  Okay.  Well, I'm glad everyone is safe and

15:02:10  1   sound.  I had no idea.  We could have put this off some if that was

15:02:16  2   necessary.  I am very relieved to know you all are fine.  Thank

15:02:23  3   you.

15:02:23  4        MS. BARRIOS:  Your Honor, I'm sorry, there's just one, I

15:02:25  5   hate to say housekeeping record.  A time ago in a show cause

15:02:30  6   hearing there were three cases represented by Mr. Gordon Kessler:

15:02:35  7   Jennifer Jennings, her case number 2:18-CV-10009; second is Romona

15:02:52  8   Jimenez, No. 2:18-CV-09378; the next is Gennell King,

15:03:05  9   No. 2:18-CV-09090.  It's just really to correct the record.

15:03:10 10        The deficiency was that no CMO 12A process had begun and

15:03:17 11   the actual statement on the transcripts instructs counsel to upload

15:03:22 12   that to Centrality.  Technically, that's not uploaded to

15:03:26 13   Centrality, that is e-mailed to defense counsel.  And plaintiffs'

15:03:31 14   counsel was just very concerned that he wasn't following the orders

15:03:34 15   of the Court, but what the Court had ordered is not the usual

15:03:40 16   process.  So I just wanted to make a statement on his behalf for

15:03:43 17   the record.

15:03:43 18        THE COURT:  Okay.

15:03:44 19        MS. BARRIOS:  Thank you, your Honor.

15:03:45 20        THE COURT:  Thank you.

15:03:45 21        MS. BRILLEAUX:  Thank you.

15:03:47 22        THE COURT:  All right.  Thank you all.

15:03:52 23      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

         24

         25                    * * * * * *

1

2                      REPORTER'S CERTIFICATE

3

4        I, Karen A. Ibos, CCR, Official Court Reporter, United

5    States District Court, Eastern District of Louisiana, do hereby

6    certify that the foregoing is a true and correct transcript, to the

7    best of my ability and understanding, from the record of the

8    proceedings in the above-entitled and numbered matter.

9

10

11                      ___/s/ Karen A. Ibos_____

12                      Karen A. Ibos, CCR, RPR, CRR, RMR

13                      Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25