1      UNITED STATES DISTRICT COURT

2      EASTERN DISTRICT OF LOUISIANA

3

4

IN RE:   TAXOTERE (DOCETAXEL)      *
5         PRODUCTS LIABILITY         *   Docket No.: 16-MD-2740
          LITIGATION                 *   Section "H(5)"
6                                    *   January 18, 2019
  *This Document Relates To All Cases*   New Orleans, Louisiana
7  * * * * * * * * * * * * * * * * * * *

8              TRANSCRIPT OF SHOW CAUSE HEARING PROCEEDINGS
9         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                 UNITED STATES DISTRICT JUDGE
10

11

APPEARANCES:
12

For the Plaintiffs:          Barrios, Kingsdorf & Casteix, LLP
13                            BY:  DAWN BARRIOS, ESQ.
                              701 Poydras Street
14                            Suite 3650
                              New Orleans, Louisiana 70139
15

16

                             Gainsburgh, Benjamin, David,
17                             Meunier & Warshauer, LLC
                             BY:  PALMER LAMBERT, ESQ.
18                           2800 Energy Centre
                             1100 Poydras Street
19                           New Orleans, Louisiana 70163-2800

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

```
 1   APPEARANCES:

 2   For Sanofi S.A.:              Irwin Fritchie Urquhart
                                     & Moore, LLC
 3                                 BY:  KELLY BRILLEAUX, ESQ.
                                   400 Poydras Street, Suite 2700
 4                                 New Orleans, Louisiana 70130

 5

 6   For Sandoz, A Novartis
     Division:                     Greenburg Traurig
 7                                 BY:  NICHOLAS A. INSOGNA, ESQ.
                                   1840 Century Park East
 8                                 Suite 1900
                                   Los Angeles, California 90067
 9

10

11   For Accord Healthcare,
     Inc.:                         Tucker Ellis
                                   BY:  JULIE A. CALLSEN, ESQ.
12                                 950 Main Avenue
                                   Suite 1100
13                                 Cleveland, Ohio 44113

14

15   Also Participating:          Danae Benton, Esq.
                                   Christopher Pinedo, Esq.
16                                 Charles Orr, Esq.
                                   Richard Root, Esq.
17                                 Steven Davis, Esq.
                                   Debra Humphrey, Esq.
18                                 Charlotte Gulewicz, Esq.
                                   Christopher Elliot, Esq.
19                                 Steve Roth, Esq.
                                   Eric Newell, Esq.
20                                 Sarah Doles, Esq.
                                   Taylor Hardenstein, Esq.
21                                 John Cowart, Esq.
                                   Peter Goss, Esq.
22                                 Paige Boldt, Esq.
                                   Sara Stipkovits, Esq.
23                                 Seth Webb, Esq.
                                   Markita Hawkins, Esq.
24

25
```

OFFICIAL TRANSCRIPT

1    APPEARANCES:

2    Also Participating:          Andrew Gardner, Esq.
                                  David Bonnin, Esq.
3                                 Mark Niemeyer, Esq.
                                  Ryan Perdue, Esq.
4                                 Brannon Robertson, Esq.
                                  Jessica Perez-Reynolds, Esq.
5                                 Robin Myers, Esq.

6

7    Official Court Reporter:     Jodi Simcox, RMR, FCRR
                                  500 Poydras Street
8                                 Room B-406
                                  New Orleans, Louisiana 70130
9                                 (504) 589-7780

10

11

12   Proceedings recorded by mechanical stenography, transcript

13   produced by computer.

14

15

16

17

18

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

<div align="center">

**PROCEEDINGS**

**(January 18, 2019)**

**(MORNING SESSION)**

**\*\*\*\*\*\***

</div>

1
2
3
4
5
6          (COURT CALLED TO ORDER)

7          **THE COURT:**  Before we begin the call docket, we have
8    had a statement from various plaintiffs' counsel whose cases
9    were a notice of noncompliance to be heard today by this Court,
10   and I have received those statements.  The Court specifically
11   notes after reviewing them, that plaintiffs' counsel has made a
12   diligent effort to comply with requirements for the plaintiffs'
13   fact sheets.  Unfortunately, plaintiffs have failed to comply
14   with their obligations, and, accordingly, the following cases
15   will be dismissed with prejudice:

16              Brenda Adams, Docket No. 8426; Anna Arvan,
17   Docket 7010; Linda Blair, this is Docket No. 17427; Johannah
18   Bradley, 13984; Elsa Briones, 13532; Johnnie Burton, 06197;
19   Donna Collier, 06049; Alison Cotton, 13926; Annalis De La Cruz,
20   14079; Nelda Frank, 14855; Geraldine Gentry, 06008; Marilyn
21   Hall 07089; Cheryl Hammond, 15011; Nevena Harp-Clasquin, 07906;
22   Gloria Henderson, 05987; Lisa Herzog, 05989; Lynne Hopkins,
23   14128; Anisa Ishida, 04437; Nannette Jackson, 05970; Gertrude
24   Joffrion, 06115; Gisela Jones-Bolton, 05254; Bridgette Lucas,
25   14641; Gloria McDaniel, 06165; Tara McManus, 15249; Donna

<div align="center">

OFFICIAL TRANSCRIPT

</div>

```
1   Mouton, 07091; Gloria Smart, 14389; Lacretia Warren, 11777;
2   Lorraine Winquest, 10705; Gina Wright, 14762; Terry Yates,
3   12198; Elizabeth Hazelton, 14130; Yolanda --
4            MS. BRILLEAUX:  Your Honor, I think you may be
5   reading from a new list.
6            THE COURT:  Oh, I'm sorry.
7            MS. BRILLEAUX:  No, thank you.  We did want to note
8   for the record that before we began the hearing, two of the
9   cases on the declarations list which were submitted to the
10  Court were marked to be removed because plaintiffs have since
11  filed plaintiff fact sheets, and the defendants would request
12  15 days to review the substantially complete nature of the fact
13  sheets.
14           THE COURT:  So ordered, and that would be Lavoria
15  Jones, 00608; and Dusty Roth, 08078.
16           MS. BARRIOS:  Your Honor, the plaintiff will withdraw
17  the declarations that have previously been filed into the
18  record.
19           THE COURT:  So ordered.
20           Okay.  Now, we're ready to proceed.
21           MS. BRILLEAUX:  Your Honor, we also have the list of
22  dismissals, which I think for the past hearings, we have just
23  provided to the court reporter to attach to the transcript.  We
24  also have a new category of cases -- it's a good list.  It's a
25  good category.  It's a statement --
```

OFFICIAL TRANSCRIPT

1          Do you want to take this one, Dawn?

2          MS. BARRIOS:  Thank you.

3          It's a statement that says counsel has discussed

4  the matter with the client, explained that unless she

5  cooperates that the case would be dismissed, and the

6  plaintiff's counsel has not gotten the cooperation, and the

7  plaintiff's counsel has no valid defense to the motion to

8  dismiss.

9          THE COURT:  Okay.

10          MS. BRILLEAUX:  And we submitted that list to Your

11  Honor, too.  I can read it into the record:

12          Elizabeth Hazelton, 17-14130; Yolanda Hvizdak,

13  18-05991; Michelle Jones, 18-2148; Christine McLean, 18-5996;

14  Tammy Moore, 18-5998; Patricia Petersen, 17-14529; Vicky Sugg,

15  17-14896; Josephine Towery, 17-14742; and Michelle Williams,

16  18-06002.

17          THE COURT:  Those cases are dismissed with prejudice.

18          MS. BRILLEAUX:  Thank you, Your Honor.

19          And before we get started, I think Ms. Callsen

20  had a statement to make about the -- just a quick update on the

21  cases from the last show cause docket.

22          THE COURT:  Thank you.

23          MS. CALLSEN:  Your Honor, at the last show cause

24  docket, there were a number of cases that you ordered 15-day

25  cures, that the plaintiffs need to cure and meet and confer

1   with the defendants on what they claim to have been cures

2   and/or cure the PFS deficiencies.  There were approximately 53

3   cases that fell into that category.  The defendants met,

4   reviewed the cases, and then kind of divided up the meet and

5   confers according to who was represented.

6           We sent e-mails and/or telephone calls or had

7   meet and confer invitations out to all of those plaintiffs.  By

8   plaintiff's firms, we would list all the ones they had.  Based

9   on those meet and confers, some of them were cured, and we

10  agreed to take them off the call docket.  And that's about

11  approximately 20, 22 to 24 of them were cured by January 4th,

12  2019, which was the 16th day after the 15th day, and I remember

13  you reminding them, 16 days would be it.

14          Some counsel did engage in meet and confers, but

15  didn't completely cure the deficiencies, and so we did not

16  agree to take them off the show cause list.  However, we agreed

17  to continue to meet and confer in an attempt to cure the

18  remaining deficiencies, and the parties are still in the

19  process of doing that.

20          And then there are some 20 plaintiffs who did

21  not cure the deficiencies and/or make no effort on the meet and

22  confer, and so defendants will be submitting a report to you on

23  those cases and be seeking dismissal.

24          **THE COURT:**  Okay.

25          **MS. BRILLEAUX:**  Thank you, Your Honor.

1    Before we get started, just a couple of
2    preliminary notes on how these are organized.  The first point
3    is that to avoid some of the issues we've had before in other
4    show cause hearings, we met with Ms. Barrios and agreed that we
5    would have a hard cutoff for any cures, and the cutoff that we
6    agreed to was January 16th at 9:00 a.m.
7    So to the extent anything was submitted after
8    that cutoff, we have not reviewed it; and if it has been
9    submitted, we're going to ask -- in advance, I'll let you know,
10   we're going to ask for 15 days for an opportunity to review and
11   confirm that it is substantially complete.
12   For everything that was submitted before the
13   cutoff, and that is by 9:00 a.m. on January 16th, we have
14   reviewed it and we, you know, either have a response to it or
15   agree that it's been cured.
16   The other issue is --
17   **MS. BARRIOS:**  Excuse me, can I just address that?
18   **MS. BRILLEAUX:**  Sure.  Of course.
19   **MS. BARRIOS:**  Your Honor, Ms. Brilleaux accurately
20   states our agreement, but I read the agreement to be yesterday
21   at 9:00 a.m., but if someone files a declaration or if someone
22   files a dismissal after that time, I think they should be taken
23   off the call docket.  It's just a waste of our time.
24   And I spoke -- we've all spoken about this
25   before, and they interpret "cure" as meaning even filing

OFFICIAL TRANSCRIPT

1    dismissals.  I interpret "cure" as curing the problem.  And so

2    when we go through the list, I have just -- I'll make a note of

3    cases that have already been dismissed or otherwise taken care

4    of.

5             MS. BRILLEAUX:  Your Honor, too -- and I think I know

6    what Ms. Callsen is going to say, we had declarations still

7    coming in this morning, which kind of establishes why this

8    isn't -- why we need a hard cutoff for everything.  Because,

9    otherwise, there's no -- there's no limit to when the list

10   should be updated, and I think by establishing a cutoff is the

11   best way to do it.

12            MS. BARRIOS:  I don't object to establishing a

13   cutoff, but I think it's a waste of the Court's time if by the

14   time these are submitted to you late the night before the

15   hearing, there are dismissals that are filed and we have record

16   docket numbers.  We provided those to the defendants last

17   night.  There were 16.  We gave them the Record Doc number, but

18   they still kept them on the list.

19            THE COURT:  Cases that have been dismissed?

20            MS. CALLSEN:  Your Honor, let me -- let me -- and let

21   me explain.  We had a discussion about this, and Kelly --

22   Ms. Brilleaux, excuse me, has correctly stated it.  But we said

23   as of Tuesday at 9:00 a.m., we'd cut off, and then the

24   defendants would go about their -- was it Wednesday?

25            MS. BARRIOS:  Wednesday.

OFFICIAL TRANSCRIPT

1          **MS. BRILLEAUX:**  It was the 16th.

2          **MS. CALLSEN:**  I thought it was Tuesday -- anyway,

3    whatever that date is, we would cut off.  And then, you know,

4    there were how many -- there were 532, right, plaintiffs on the

5    call docket list initially.  And now, in front of you, there's

6    274.  So we did considerable work moving 300 plaintiffs off the

7    call docket based on us rolling up our sleeves as of 9:00 a.m.

8    and figuring it out.

9               We told them that was the cutoff.  If more

10   declarations or dismissals come in, we'll note it as we go

11   through it.  As I've told Ms. Barrios, it will take me two

12   seconds to say -- read off the name and say it's since been

13   dismissed, and then we'll move on.

14         **THE COURT:**  Okay.  This is what -- you know, I would

15   like to make myself available to the three of you, perhaps, on

16   a separate day where we can talk about the process.  Because I

17   think -- and I want to congratulate you because I am aware of

18   how hard you have worked on this process, and I believe a firm

19   hard date is appropriate so that I can get this and we know

20   that.

21              But it seems like every time we get here,

22   there's -- and what -- I think I need to perhaps better

23   understand what the problems are instead of during this process

24   trying to understand.  So if the three of you are available one

25   evening outside of all of the other lawyers.

```
 1            MS. BARRIOS:  Yes, ma'am.
 2            MS. BRILLEAUX:  We can do that.
 3            THE COURT:  -- that the four of us can sit down and,
 4   perhaps, you can explain to me so that we can just basically
 5   rock and roll.
 6            MS. BARRIOS:  That's a great idea.
 7            THE COURT:  I think that might be the better way to
 8   handle it instead of trying to explain it and talking about
 9   what we see as the problems.  But I absolutely agree, a firm
10   date is what needs to happen.
11            MS. BRILLEAUX:  Thank you, Your Honor.
12            THE COURT:  But I think that might help.
13            MS. BARRIOS:  Your Honor may have other ideas to
14   share with us that we can even more efficiently move the
15   process.
16            THE COURT:  Right.  I think, you know, when we put
17   our heads together -- and let me congratulate you because you
18   have really made this process easier with the declarations --
19   with the various declarations that have been filed because I
20   thought that took a substantial amount of time, and that
21   process has become much easier.
22            MS. BRILLEAUX:  Thank you.  And we thank Ms. Barrios.
23            THE COURT:  At the end of the day, though, I think
24   every time we come to this process, it's, well, this is what
25   we're doing.  And maybe the better thing is if we just sat down
```

OFFICIAL TRANSCRIPT

1    and just the four of us.  No offense, I don't want to invite
2    anybody else.  But I think that's the better way to handle it.
3              **MS. BARRIOS:**  No guys, that's good.
4              **THE COURT:**  No guys.
5              **MR. LAMBERT:**  I would rather not be there, Your
6    Honor.
7              **MS. BRILLEAUX:**  Your Honor, the other --
8              **THE COURT:**  And those of you on the phone, that was
9    not in any way intended to disparage the ability of men to
10   participate in this process.
11             **MS. CALLSEN:**  It just happens to be the four of us.
12             **THE COURT:**  It just happens to be... okay.
13             **MS. BRILLEAUX:**  Thank you, Your Honor.
14             **THE COURT:**  Thank you.
15             **MS. BRILLEAUX:**  The other very quick point is, just
16   so you know how the list is organized, we did put the category
17   where no PFS has been submitted first so that, hopefully, we
18   can move through that very, very quickly.
19             **THE COURT:**  I have one quick question, Ms. Brilleaux.
20   There is on the last page of mine -- and maybe this just should
21   have been noncompliance dismissal list.
22             **MS. BRILLEAUX:**  Oh, that is the list that we provided
23   to the court reporter to attach, and those are people who filed
24   stipulations of dismissal who were previously on the list.
25             **MS. BARRIOS:**  We can read them into the record, if

OFFICIAL TRANSCRIPT

1    you want.
2            **THE COURT:**  That's fine, if it's not necessary.
3    These cases that are on this noncompliance dismissal list are
4    dismissed with prejudice.
5            All right.  Now, let's proceed.
6            **MS. BRILLEAUX:**  Okay.  So we will begin, I'll
7    indicate to you -- or I'll -- oh, right.  So we have first on
8    the list, plaintiffs who have no PFS in an attempt to move
9    through those very quickly, and then we will move to plaintiff
10   fact sheets that are not substantially complete.  I will -- as
11   we go through, we will acknowledge that the deficiency is no
12   PFS, but I'm hopeful that streamlining that will make this go a
13   little bit more quickly.
14           **THE COURT:**  Okay.  And we have not organized this in
15   any way by counsel.  Okay.  Thank you.
16           **MS. BARRIOS:**  Just for the record, Your Honor, I
17   don't want to belabor the point, this is an issue I want to
18   talk to you about because what happens in placing the list like
19   this, the firms have to stay on the phone all the way until the
20   end in case they have a case at the end.
21           **MS. CALLSEN:**  Yeah, but the no PFSs should go
22   quickly.
23           **MS. BARRIOS:**  But that is for another day for us to
24   discuss.  I just wanted to make it clear for the record.
25           **THE COURT:**  Okay.

1    **MS. BRILLEAUX:**  Thank you, Your Honor.  And I will

2  let you know that they are organized by firm, just separately,

3  with no PFS and then other issues.  So other than that, they

4  are organized in order of firms with the most -- least amount

5  to most amount of plaintiffs.

6          The first case is Patrice Zephier, no PFS

7  submitted.  The law firm is Baron & Budd.

8          **MS. BARRIOS:**  Your Honor, I've been told that there's

9  been a cure from plaintiff's counsel.  Is anybody on the phone

10  for Baron & Budd?

11          **MS. BENTON:**  Yes.  Your Honor, this is Danae Benton

12  with Baron & Budd.  Our client was initially missing and

13  nonresponsive on our request for the information.  This week,

14  she contacted our office and completed the plaintiff fact

15  sheet, declaration, authorizations.  There's no excuse for the

16  delay, but we do ask that this matter not be dismissed since

17  the client is now responsive to our request, and to allow 15

18  days for us to confirm.

19          **THE COURT:**  I'm going to allow 15 days to confirm.

20          **MS. BENTON:**  Thank you, Your Honor.

21          **MS. BRILLEAUX:**  Your Honor, just to clarify, 15 days?

22          **THE COURT:**  15 days.

23          **MS. BRILLEAUX:**  Thank you, Your Honor.

24          **MS. CALLSEN:**  The next plaintiff is Nancy Newbern,

25  and she is represented by Hilliard, Munoz, and Gonzales.

OFFICIAL TRANSCRIPT

1  Again, no PFS.

2          **THE COURT:**  Is anybody on the phone?

3          **MR. PINEDO:**  Yes, Your Honor.  Chris Pinedo for Nancy

4  Newbern with the Hilliard law firm.  We had difficulty in

5  getting full contact with this client, but we were able to

6  reach her late on Wednesday, and we submitted a fact sheet

7  yesterday morning.  I'd ask for 15 days.

8          **THE COURT:**  The Court's going to grant 15 days to

9  confirm compliance.

10          **MS. BRILLEAUX:**  The next one is Gail Hall with

11  Mulligan law firm.

12          **THE COURT:**  Is anybody on the phone?

13          **MS. CALLSEN:**  I think Chris -- or Chip Orr is here.

14          **MR. ORR:**  Your Honor, Charles Orr, Mulligan law firm.

15  We have no basis to oppose dismissal in this case.

16          **THE COURT:**  This matter is dismissed with prejudice.

17          **MS. CALLSEN:**  The next one is Angelia Carr, and she's

18  represented by Pendley, Baudin & Coffin.

19          **MS. PEREZ-REYNOLDS:**  Good morning, Your Honor.

20  Jessica Perez-Reynolds on behalf of Ms. Carr.  My notes reflect

21  that Ms. Carr did, in fact, submit a cure and submitted a full

22  PFS with a declaration on the 16th.  I think it may have just

23  happened past the 9:00 a.m. deadline.

24          **THE COURT:**  The Court's going to grant 15 days to

25  review.

OFFICIAL TRANSCRIPT

1    MS. PEREZ-REYNOLDS:  Thank you.

2    MS. CALLSEN:  It was submitted at 4:55 p.m.  That's

3  how exact my notes are.

4    MS. BRILLEAUX:  Your Honor, the next case that I have

5  is Linda Smith, represented by the Mulligan law firm.

6    MR. ORR:  Your Honor, this case was dismissed with

7  prejudice on November 15th, 2018.  The Docket No. is 17-16413.

8  The dismissal is Docket No. 8, just for the Court's reference.

9    THE COURT:  Okay.  It's been dismissed.  Okay.

10    MS. BRILLEAUX:  Thank you, Your Honor.

11    The next case that I have is Rose Bybee, the

12  Tracey & Fox law firm, no PFS submitted.

13    MS. BARRIOS:  Your Honor, a declaration was filed on

14  January 17th, 2019, Record Doc 5950.  The declaration would

15  indicate that plaintiff's counsel could not contact the client.

16    THE COURT:  Okay.  This matter is dismissed with

17  prejudice.

18    MS. BRILLEAUX:  Thank you, Your Honor.

19    The next one I have is Barbara Martin, Morris

20  Bart, and that's no PFS submitted.

21    MR. ROOT:  Good morning, Your Honor.  Richard Root

22  from Morris Bart, representing Ms. Martin.

23    THE COURT:  Good morning.

24    MR. ROOT:  Unfortunately, Ms. Martin has passed away.

25  We do not have material to satisfy the PFS, nor do we have a

1  client, nor do we have contact with heirs.  So we just feel --
2  we felt it inappropriate to voluntarily dismiss the case in
3  light of the fact we don't have that client, but that's the
4  status.
5        **THE COURT:**  This matter is dismissed with prejudice.
6        Thank you.
7        **MS. BRILLEAUX:**  Thank you, Your Honor.
8        Jamie Archer, no PFS submitted, the TorHoerman
9  law firm.
10       **MR. DAVIS:**  Good morning, Your Honor.  My name is
11 Steven Davis.  I represent Ms. Archer.  We had been -- had no
12 contact with Ms. Archer.  We were able to reestablish contact
13 and last spoke to her in early December.  At that point, she
14 did provide information that allowed us to complete a PFS,
15 however, she did not return a declaration.  We have not been
16 able to contact her since then despite our efforts.
17       We did upload this morning the non-verified PFS
18 so at least the defense will have that information.  But
19 because we've had contact semi-recently, we'd still like to try
20 and have an opportunity, so I would ask that the judge give us
21 until the next show cause hearing; and if we haven't had
22 contact by that date, then I'll file a declaration of no
23 contact.
24       **THE COURT:**  Mr. Davis, you're going to get 15 days.
25       **MR. DAVIS:**  Thank you, Your Honor.

OFFICIAL TRANSCRIPT

1       **THE COURT:**  Not 16, 15.

2       **MR. DAVIS:**  Understood.

3       **MS. BRILLEAUX:**  Hank you, Your Honor.

4             The next one I have is Julie Clark, also with

5   the TorHoerman law firm.

6       **MR. DAVIS:**  Your Honor, Ms. Clark has hired new

7   counsel.  I have agreed to a substitution.  I believe they

8   filed a motion to substitute counsel, but I don't have any

9   authority in this case.  New counsel is aware of the pending

10  status today, and I believed they were handling it.

11      **MS. BARRIOS:**  Do you know who new counsel is?

12      **MR. DAVIS:**  I'm sorry, Your Honor?

13      **MS. BARRIOS:**  This is Dawn Barrios.  Do you know who

14  new counsel is?

15      **MR. DAVIS:**  I'm sorry, Your Honor, I did not think

16  this was up today, so I did not double-check that information.

17  I can find it in the next few minutes, but I don't have it off

18  the top of my head.  I apologize.

19      **THE COURT:**  Okay.  I'm going to grant 15 days because

20  under any circumstance, this should have been done, and new

21  counsel needs to know that.

22      **MS. BARRIOS:**  Thank you.

23      **MS. BRILLEAUX:**  Thank you, Your Honor.

24      **MS. CALLSEN:**  Marc Bern has the next several cases,

25  that law firm.  The first one is Cynthia Grant.

OFFICIAL TRANSCRIPT

1          **MS. HUMPHREY:**  Your Honor, Debra Humphrey for Marc J.
2    Bern & Partners for plaintiff Cynthia Grant.  This case was
3    dismissed on April 20th by Judge Engelhardt.
4          **THE COURT:**  Okay.  Thank you.
5          **MS. CALLSEN:**  Okay.  Thank you.
6               The next one is Marcia Heath.
7          **MS. HUMPHREY:**  We had reached out via every means
8    possible, phone calls, e-mails, letters, certified mail, to
9    reach the client -- well, they've reached the client with no
10   response.  We would ask for time to try.
11         **THE COURT:**  No.  This matter is dismissed with
12   prejudice.  The Court notes that plaintiff's counsel has done
13   what they could to contact the client, but the plaintiff has
14   failed to comply with her obligation.
15         **MS. CALLSEN:**  The next case is Savonia Mitchell.
16         **MS. HUMPHREY:**  This is a case that we'd like to offer
17   dismissal.
18         **THE COURT:**  This matter is dismissed with prejudice.
19         **MS. CALLSEN:**  The last case with this firm is Katrina
20   Reynolds.
21         **MS. HUMPHREY:**  Katrina Reynolds, we uploaded the --
22   we started the PFS -- the verified PFS, medical records, and
23   authorizations were all uploaded to MDL Centrality earlier this
24   week, so...
25         **THE COURT:**  Okay.  Court's going to grant 15 days to

1  confirm.  Thank you.

2          MS. CALLSEN:  The next one, I can just say this

3  because it's Lashaun Golden, and there was a dismissal filed

4  after the cutoff date.

5          THE COURT:  Thank you.

6          MS. BARRIOS:  And we can go through Barbara Hogan,

7  dismissal was filed, Record Doc 5921.

8          THE COURT:  Thank you.

9          MS. BARRIOS:  Debra Huckey, dismissal filed, 5919.

10          THE COURT:  Thank you.

11          MS. BARRIOS:  Tamerlane Hyde, dismissal -- I'm sorry,

12  declaration filed, Record Doc 5920.

13          THE COURT:  Was that on the list?

14          MS. BRILLEAUX:  These were all filed after the

15  cutoff, Your Honor.

16          THE COURT:  Okay.  This matter is dismissed with

17  prejudice.

18          MS. BARRIOS:  Tamerlane Hyde, she filed a

19  declaration, Record Doc 5920.  I actually think I repeated

20  that.  I'm sorry.

21              Stephanie Kissiah, a declaration was filed,

22  Record Doc 5922.

23          THE COURT:  That matter is dismissed with prejudice.

24          MS. BARRIOS:  And Lisa Martin, a declaration was

25  filed, Record Doc 5923.

1          **THE COURT:**  That matter is dismissed with prejudice.

2          **MS. BRILLEAUX:**  Thank you, Your Honor.

3               The next one I have is -- all the ones that were

4     just read in were for Fears Nachawati.  The next one that I

5     have with that firm is Tabitha Melton, no PFS submitted.

6          **THE COURT:**  Is anyone on the phone with Fears

7     Nachawati?

8          **MS. GULEWICZ:**  Yes, ma'am.  This is -- Your Honor,

9     this is Charlotte Gulewicz, counsel for Tabitha Melton.

10         **THE COURT:**  Okay.

11         **MS. GULEWICZ:**  We submitted the plaintiff fact sheet

12    on MDL Centrality on the 16th after the firm deadline.  The

13    client reached out to us on the 16th at 6:00 p.m. stating that

14    she was in the hospital and hadn't been able to get the

15    documents to us.  However, everything was received and

16    submitted on that date.

17         **THE COURT:**  Okay.  The Court's going to grant 15 days

18    to confirm compliance.

19         **MS. BRILLEAUX:**  Your Honor, just to clarify, is the

20    15 day -- we just wanted to clarify that the 15 days was to

21    make sure that the plaintiff had fully cured the deficiency;

22    correct?

23         **THE COURT:**  Right.

24         **MS. BRILLEAUX:**  Thank you.

25         **MS. BARRIOS:**  Your Honor, the next four have had

1   dismissals or declarations.

2        THE COURT:  Well, wait.  You know what, this is --

3   there was no PFS submitted.  The 15 days confirms that the PFS

4   is submitted.  Now, if there's some technical or minor problem

5   with it, I'm not going to dismiss the case with prejudice.

6        MS. BRILLEAUX:  Of course, Your Honor.  Thank you.

7        THE COURT:  But I just -- certainly that a PFS has

8   been submitted, that's been verified --

9        MS. BRILLEAUX:  Thank you.

10       THE COURT:  Okay.  As long as we understand.

11       MS. BRILLEAUX:  Yes.

12       MS. BARRIOS:  It's always good to clarify, Your

13  Honor.

14       THE COURT:  Thank you.

15       MS. BARRIOS:  We appreciate it.

16            The next seven cases I'm going to read are from

17  the same firm.  They've either filed dismissals or

18  declarations.  The first case is Carolyn Mullins.  A dismissal

19  was filed, Record Doc 5930.

20       THE COURT:  Thank you.

21       MS. BARRIOS:  Ana Santana, declaration filed, Record

22  Doc 5924.

23       THE COURT:  The matter's dismissed with prejudice.

24       MS. BARRIOS:  Kathy Simon, declaration filed, Record

25  Doc 5942.

1        **THE COURT:**  The matter is dismissed with prejudice.

2        **MS. BARRIOS:**  Satara Stukes, dismissal filed, Record

3  Doc 5928.

4        **THE COURT:**  Thank you.

5        **MS. BARRIOS:**  Robin Vandeweghe, dismissal filed,

6  Record Doc 5927.

7        **THE COURT:**  Thank you.

8        **MS. BARRIOS:**  Lorna Williams, declaration filed,

9  Record Doc 5926.

10        **THE COURT:**  That matter is dismissed with prejudice.

11        **MR. MEUNIER:**  And the last is Julianna Willits,

12  declaration filed, Record Doc 5925.

13        **THE COURT:**  That matter is dismissed with prejudice.

14        **MS. BRILLEAUX:**  And, Your Honor, just for the record,

15  I would like to reiterate that these were all filed after the

16  cutoff date, and we would encourage plaintiffs counsel to file

17  this before so that we don't have to go through this process.

18        **THE COURT:**  Thank you.

19        **MS. BARRIOS:**  And plaintiffs' liaison counsel will

20  also encourage everybody to file them early.

21        **THE COURT:**  Please.

22        **MS. BRILLEAUX:**  Thank you, Your Honor.

23        The remaining cases that we have on the no PFS

24  submitted list are from Bachus & Schanker, and they have -- I

25  think that they are present here today.

1     **THE COURT:** Well, we have some from Reich & Binstock,
2 too.
3     **MS. BRILLEAUX:** I'm not sure -- so we have Reich &
4 Binstock, but I don't believe that those -- oh, no. Yes, you
5 are correct. You are correct. Thank you. I think we have
6 Bachus & Schanker, and then Reich & Binstock is the final firm.
7     **THE COURT:** Okay. Thank you.
8     **MS. BRILLEAUX:** Thank you for catching that, Your
9 Honor.
10     **THE COURT:** All right.
11     **MR. ELLIOTT:** Good morning, Judge.
12     **THE COURT:** Good morning.
13     **MR. ELLIOTT:** Chris Elliott for Bachus & Schanker.
14     **MS. BRILLEAUX:** The first case that I have is
15 Michelle Dula-Harris, no PFS submitted PFS.
16     **MR. ELLIOTT:** We filed the plaintiff fact sheet on
17 January 15th of 2019.
18     **THE COURT:** The Court's going to grant 15 days to
19 confirm compliance.
20     **MS. BRILLEAUX:** The next one I have is Patricia
21 Eversole, no PFS submitted.
22     **MR. ELLIOTT:** Plaintiff, we learned, has passed away.
23 We made contact with the family. We received the obituary
24 notice on the 2nd of January. We'd need 30 days to consult
25 more with the family.

1    **THE COURT:**  The Court's going to grant 30 days.

2    **MS. BRILLEAUX:**  Thank you, Your Honor.

3         The next one is Deborah Flores, no PFS

4    submitted.

5    **MR. ELLIOTT:**  We have that she has another attorney

6    now, Johnson Law Group.  The Docket No. is 17-11005.

7    **THE COURT:**  Under any circumstance, only 15 days is

8    going to be granted.

9    **MS. BRILLEAUX:**  Your Honor, if there is a separate

10   docket number pending, we would request that this one just be

11   dismissed with prejudice.

12   **MR. ELLIOTT:**  I'm fine with this one getting

13   dismissed as long as the other case stays active.

14   **THE COURT:**  Oh, there's another docket?  Oh, I'm

15   sorry.

16   **MS. BARRIOS:**  Your Honor, for the record, I don't

17   think it's proper to dismiss this with prejudice because it

18   would dismiss the other action too.  The plaintiff's causes of

19   action are dismissed.  So if it's dismissed --

20   **THE COURT:**  We've been -- we went through that last

21   time.  I'll dismiss it without prejudice, and let's put that on

22   our agenda for the meeting --

23   **MS. CALLSEN:**  Okay.

24   **THE COURT:**  -- not today.

25   **MS. BRILLEAUX:**  Okay.

OFFICIAL TRANSCRIPT

1          **THE COURT:**  We'll put that on our agenda for our

2     after-work meeting.

3          **MS. BARRIOS:**  And I'm okay for the plaintiffs for a

4     dismissal with prejudice as long as there's a reservation of

5     rights for the other case.

6          **MS. BRILLEAUX:**  I would just note, Ms. Barrios, that

7     there is language in all the stipulations that we signed that

8     dismissals are with prejudice, if we have dual rep situations

9     that dismissals of the case being dismissed are with prejudice.

10          **THE COURT:**  For today --

11          **MS. BRILLEAUX:**  Thank you, Your Honor.

12          **THE COURT:**  -- we're going to dismiss it without

13     prejudice.  We'll take that up in our after-hours meeting.

14               Okay.  Thank you.  Without prejudice.

15          **MS. BRILLEAUX:**  Beatrice Gipson, no PFS submitted.

16          **MR. ELLIOTT:**  The client no longer wants to

17     participate.

18          **THE COURT:**  Dismissed with prejudice.

19          **MS. BRILLEAUX:**  Denese Glenn, no PFS submitted.

20          **MR. ELLIOTT:**  She has another attorney with the Lowe

21     Law Group.  The same situation.  The Case No. is 18-04208.

22          **THE COURT:**  This matter is dismissed without

23     prejudice to be reurged after we meet privately.

24          **MS. BRILLEAUX:**  Karen Groff, no PFS submitted.

25          **MR. ELLIOTT:**  We'd ask for 15 days.

```
1              MS. BARRIOS:  Your Honor, a declaration was filed,
2    that's Record Doc 5956.  And this is not my client, but this is
3    the information that I have, so I'm asking the Court for at
4    least 15 days for all of us to figure out --
5              THE COURT:  A declaration was submitted that you
6    contacted --
7              MS. BARRIOS:  That's what I have in my notes, but
8    private counsel didn't have that in his notes.
9              MS. BRILLEAUX:  Are we talking about Karen Groff?
10             THE COURT:  What do you --
11             MR. ELLIOTT:  This is Karen Groff?
12             MS. BARRIOS:  Karen Groff.
13             MR. ELLIOTT:  I just have notes here that we need 15
14   days.  We made contact with the plaintiff.
15             THE DEPUTY CLERK:  There was a declaration filed
16   today.
17             THE COURT:  Dismissed with prejudice.
18             MS. BRILLEAUX:  Thank you, Your Honor.
19                  Debra Mallory, no PFS submitted.
20             MR. ELLIOTT:  The plaintiff, we've learned, has
21   passed away.  We made contact with the daughter who wishes to
22   pursue the case.  We need to get --
23             THE COURT:  The Court's going to grant 30 days.
24             MS. BRILLEAUX:  The next one I have is Joann
25   Matthews, no PFS submitted.
```

OFFICIAL TRANSCRIPT

1          **MR. ELLIOTT:**  The plaintiff fact sheet was filed on

2     the 11th of this month.

3          **THE COURT:**  15 days to confirm.

4          **MS. BRILLEAUX:**  Thank you, Your Honor.

5               Constance McKercher, no PFS submitted.

6          **MR. ELLIOTT:**  We've been trying to reach this client,

7     made many phone calls.  We haven't received any response from

8     the plaintiff.

9          **THE COURT:**  This matter is dismissed with prejudice.

10    The Court notes that plaintiff's counsel has made reasonable

11    attempts to contact the client, and the client's failed to

12    comply with her obligations.

13         **MS. BRILLEAUX:**  Thank you, Your Honor.

14              Janice Nichols, no PFS submitted.

15         **MR. ELLIOTT:**  I have one filed on the 14th, and --

16         **MS. BARRIOS:**  A declaration was filed, and if you

17    wouldn't mind double-checking it, Docket No. 5957.

18         **MR. ELLIOTT:**  That's not our case number.  That's not

19    our case.  We've -- we actually have, yeah, Janice Nichols, and

20    that's case 18-CV-05420, and we actually filed a plaintiff fact

21    sheet on January 17th, all the photos, everything has been

22    uploaded.

23         **THE COURT:**  The Court's going to grant 15 days to

24    confirm compliance.

25         **MS. BRILLEAUX:**  Thank you, Your Honor.

1          Linda Nichols, no PFS submitted.

2          **MR. ELLIOTT:**  I have record that we filed the PFS on

3  January 17th.

4          **THE COURT:**  15 days to confirm compliance.

5          **MS. BRILLEAUX:**  Sandra Osovich, no PFS submitted.

6          **MS. BARRIOS:**  Your Honor, I had earlier misspoke

7  about the plaintiff's name, stating that an earlier plaintiff

8  had a declaration filed.  If your minute clerk would check 5957

9  to see if a declaration was filed for Sandra Osovich.

10         **THE DEPUTY CLERK:**  Yes, it has.

11         **THE COURT:**  So this matter should be dismissed with

12  prejudice.  Okay.  I thought you were looking back to something

13  else.  Okay.

14         **MS. BARRIOS:**  And, Your Honor, it's the same for the

15  next plaintiff, who is Courtney Preusse, P-R-E-U-S-S-E,

16  declaration would be file No. 5955, I believe.

17         **THE COURT:**  That matter is dismissed with prejudice.

18         **MS. BARRIOS:**  Is that correct?

19         **THE DEPUTY CLERK:**  That's correct.

20         **MS. BARRIOS:**  Thank you, Your Honor.

21         **MS. BRILLEAUX:**  Thank you, Your Honor.

22         Shirley Proctor, no PFS submitted.

23         **MR. ELLIOTT:**  She sent us her photos.  We uploaded

24  them on January 14th.  She actually has mailed us her plaintiff

25  fact sheet.  And we just need more time to get everything

```
1   uploaded, is the issue right now.
2            THE COURT:  All right.  I'm really having trouble
3   hearing you.
4            MR. ELLIOTT:  I'm sorry.
5            THE COURT:  Has she uploaded her plaintiff fact
6   sheet?
7            MR. ELLIOTT:  It's not been -- it doesn't appear to
8   have been uploaded.  We've uploaded the photos, and she's
9   mailed us her plaintiff fact sheet.  So we need additional time
10  to get the rest of the documentation uploaded.
11           MS. BRILLEAUX:  And, Your Honor, just --
12           THE COURT:  You have it in your possession?
13           MR. ELLIOTT:  It says here that it's been mailed.
14               Do we have it?
15               We actually have it.
16           THE COURT:  You've got 24 hours.
17           MR. ELLIOTT:  Okay.
18           MS. BRILLEAUX:  Thank you, Your Honor.
19               Carol Reed, no PFS submitted.
20           MR. ELLIOTT:  The plaintiff fact sheet was filed,
21  Your Honor, on January 16th.
22           THE COURT:  15 days.
23           MS. BRILLEAUX:  Cordelia Ross, no PFS submitted.
24           MR. ELLIOTT:  I don't have any PFS -- it looks like
25  we made attempts, but --
```

OFFICIAL TRANSCRIPT

1          THE COURT:  Okay.  This matter is --

2          MR. ELLIOTT:  -- I'm assuming a declaration was

3   filed.

4              So this is just some confusion here, Your Honor.

5   The docket number they listed for Ms. Ross was for Ms. Nichols,

6   so we confused those two.

7              What's the situation here?

8          THE COURT:  Well, do you have a plaintiff fact sheet

9   for Cordelia Ross?

10         MS. BRILLEAUX:  Your Honor, could we check our

11   records and come back to this one at the end of the Bachus &

12   Schanker section?

13         THE COURT:  I will.  Thank you.

14         MS. BRILLEAUX:  Thank you, Your Honor.  Just for the

15   record, that's Cordelia Ross.  The Docket No. on the sheet

16   submitted to the Court is 18-5472.

17         MS. CALLSEN:  Your Honor, regardless of the docket

18   number of Cordelia Ross, she has no plaintiff fact sheet in MDL

19   Centrality.

20         THE COURT:  But that's what I just asked, is there

21   something that we --

22         MS. BRILLEAUX:  We're going to check it.

23         MS. CALLSEN:  He just did.

24         MS. BRILLEAUX:  Is that the correct docket number,

25   though?

OFFICIAL TRANSCRIPT

1          **MS. CALLSEN:**  Well, I said regardless of the docket
2     number.
3          **MS. BRILLEAUX:**  Oh, I see.  So regardless, there's no
4     plaintiff fact sheet.
5          **THE COURT:**  I understand.
6          **MR. ELLIOTT:**  I'd like 15 days to sort it out.
7          **THE COURT:**  Well, let's just skip it and we'll come
8     back to that one.
9          **THE DEPUTY CLERK:**  They're just switched.  They're
10    just flipped around.
11         **MS. BRILLEAUX:**  Oh, I see.  So --
12         **THE DEPUTY CLERK:**  Ross is listed with Nichols' case
13    number, and Nichols' case number is listed with Ross.
14         **MS. BARRIOS:**  Which Nichols?
15         **THE DEPUTY CLERK:**  Linda Nichols.
16         **MS. BRILLEAUX:**  Linda Nichols.  And we had no PFS for
17    that one.  I think Your Honor granted 15 days.
18         **THE COURT:**  Well, I thought they had one, it was --
19    they filed it.
20         **MR. ELLIOTT:**  We filed one for Linda.  Linda Nichols,
21    we filed a plaintiff fact sheet.
22         **THE COURT:**  Okay.  So Cordelia Ross, while it's the
23    different -- go look what you filed for Linda Nichols.  What is
24    it?
25         **MS. BARRIOS:**  On Linda Nichols, I believe, Your

1  Honor --

2          **MR. ELLIOTT:**  January 17th.

3          **MS. BARRIOS:**  -- January 17th.

4          **THE COURT:**  You filed it.

5          **MS. BARRIOS:**  And you gave 15 days for --

6          **THE COURT:**  To review.  But I guess my point is, if

7  just those two numbers were confused, you filed Linda Nichols,

8  so what happened to Cordelia Ross, and why should I grant 15

9  days?

10          **MR. ELLIOTT:**  I think just based on the confusion

11  with my office, the notes here, I think at least 15 days to

12  give us a chance to --

13          **THE COURT:**  When was this case --

14          **MS. BRILLEAUX:**  Respectfully, Your Honor, it's --

15          **THE COURT:**  Wait.  When was the case filed for

16  Cordelia Ross?

17          **MS. BRILLEAUX:**  May of 2018.

18          **THE COURT:**  That matter is dismissed with prejudice.

19          **MS. BRILLEAUX:**  Thank you, Your Honor.

20              The next case that I have is Vivian Sedlock, no

21  PFS submitted.

22          **MR. ELLIOTT:**  We filed a plaintiff fact sheet on

23  January 16th.

24          **THE COURT:**  15 days.

25          **MS. BRILLEAUX:**  Thank you, Your Honor.

OFFICIAL TRANSCRIPT

1              Dolores Smith, no PFS submitted.

2              **MR. ELLIOTT:**  The same thing, we filed her plaintiff

3      fact sheet on January 16th.

4              **THE COURT:**  15 days.

5              **MS. BRILLEAUX:**  Thank you, Your Honor.

6              Gloria Stocks, no PFS submitted.

7              **MR. ELLIOTT:**  Yeah, she has another attorney.  The

8      case is 17-13762.  We'd ask that this case be dismissed without

9      prejudice.

10             **THE COURT:**  I'll dismiss it without prejudice.  We

11     may come back to revisit that after we've had an opportunity to

12     clear it up.

13             **UNIDENTIFIED SPEAKER:**  Your Honor, this is the other

14     side that she is continuing with.  That's the case number that

15     we want to continue with.

16             **THE COURT:**  Your case number?

17             **UNIDENTIFIED SPEAKER:**  The 13762.

18             **MR. ELLIOTT:**  Yeah.  Our case, we ask that it be

19     dismissed without prejudice, Bachus & Schanker's case.

20             **THE COURT:**  All right.  Thank you.

21             **MS. BRILLEAUX:**  Thank you, Your Honor.

22             Monica Thompson, no PFS submitted.

23             **MR. ELLIOTT:**  We filed her plaintiff fact sheet on

24     January 16th.

25             **THE COURT:**  15 days.

1    **MS. BRILLEAUX:**  Next I have Jenny Townsend-Campbell,
2  no PFS submitted.
3    **MR. ELLIOTT:**  I don't have an explanation as to why.
4  I know we've made attempts to reach Ms Townsend.
5    **THE COURT:**  This matter is dismissed with prejudice.
6    **MS. BRILLEAUX:**  Thank you, Your Honor.
7    Linda Walker, no PFS submitted.
8    **MR. ELLIOTT:**  We're actually in the process -- she
9  filled out the plaintiff fact sheet.  There's someone going to
10  her home to pick up all her photos and her plaintiff fact
11  sheet.  We'd ask for 15 days to get it uploaded.
12    **MS. BRILLEAUX:**  Your Honor, this has been pending
13  since December of 2017.
14    **MR. ELLIOTT:**  We spoke with her -- we just made
15  contact with her on January 7th.  We've made diligent efforts,
16  but she really wants participation.  She's done everything
17  possible to comply at this point, and it's just a matter of
18  getting it uploaded.
19    **THE COURT:**  Okay.  But you understand it's been a
20  year?
21    **MR. ELLIOTT:**  I mean, I get it.  You know, sometimes
22  folks have exigent circumstances and things and, you know.  But
23  this woman does want to participate.  We'd like the opportunity
24  to receive her documents, pick them up, and get them uploaded.
25    **THE COURT:**  I'm going to give you seven days.  Not

OFFICIAL TRANSCRIPT

1  eight, seven.

2          But this is -- I think you all need to

3  understand, I mean, when something's been pending for a year,

4  it's hard for me to say there was exigent circumstances that

5  she couldn't get around to doing it.  Unless you tell me she's

6  been in chemotherapy in an infusion center and has been very

7  sick for a year, then -- but it's hard for me to, you know,

8  after 12 months, you've sought her out, sent somebody to her

9  house, and now she decides she wants to participate.  It's just

10  really, really testing my patience.

11          **MR. ELLIOTT:**  Thank you for the seven days, Your

12  Honor.

13          **MS. BRILLEAUX:**  Cynthia Williams, no PFS submitted.

14          **MR. ELLIOTT:**  We made diligent attempts to reach

15  Ms. Williams.

16          **THE COURT:**  This matter is dismissed with prejudice.

17          **MS. BRILLEAUX:**  And Valerie Wilson, no PFS submitted.

18          **MR. ELLIOTT:**  It's the same situation.  We've made

19  attempts.

20          **THE COURT:**  This matter is dismissed with prejudice.

21          Okay.

22          **MS. BRILLEAUX:**  Thank you.

23          I think that that is all of the no PFS cases for

24  Bachus & Schanker.

25          **THE COURT:**  It is.  Now we go to Reich & Binstock.

OFFICIAL TRANSCRIPT

1          **MS. BRILLEAUX:**  Correct.

2          **THE COURT:**  Is someone on the phone for Reich &

3    Binstock?

4          **MR. ROTH:**  Steve Roth with Reich & Binstock.

5          **MS. BRILLEAUX:**  The first --

6          **MR. ROTH:**  Your Honor?

7          **THE COURT:**  Yes, sir.

8          **MR. ROTH:**  I'd like to just blanket request 15 days

9    for all of our clients.  Within the last 48 hours, we've

10   received a large number of medical records that had been held

11   up.

12         **THE COURT:**  What's been the holdup?

13         **MR. ROTH:**  There were some internal issues in the

14   firm and with the vendor.

15         **THE COURT:**  But these are no PFS at all.

16         **MR. ROTH:**  Right.  And these records are going to be

17   determinative.  They're going to make or break these cases, and

18   if they don't meet the threshold, we are going to dismiss them.

19   We have -- we alerted defendants to this, albeit, just

20   yesterday because we just found out -- we just got these

21   records ourselves.  And we really think throwing some bodies on

22   this in 15 days --

23              Like I said, if it doesn't meet the core

24   requirements, we will be the first ones to dismiss it, and

25   these records are going to be really determinative for the rest

OFFICIAL TRANSCRIPT

1   of these cases.

2           MS. BRILLEAUX:  Your Honor, for the record, for the

3   no PFS alone, this is 40 cases, and these cases -- I mean, I'm

4   going through, they've all been pending since early 2018.

5           THE COURT:  I can't grant you a blanket 15 days

6   unless -- I mean, that's an individual thing, and it's got to

7   be more than -- I think we're going to have to handle these one

8   case at a time.

9           MS. BRILLEAUX:  Thank you, Your Honor.

10          MR. ROTH:  Okay.  I mean, if we --

11          THE COURT:  Sir?

12          MR. ROTH:  Okay.  Yeah.  We are in various states of

13  that, so we'll -- if you want to go through those, we'll be

14  happy to let you know the status.

15          MS. BRILLEAUX:  Thank you, Your Honor.  The first one

16  I have is Ann Abell, no PFS submitted.

17          MR. ROTH:  We've reached out to her.  She indicates

18  that she's interested.  And if we could get 15 days on her,

19  again, we can, you know, have a final determination and -- all

20  I can just say is she's expressed interest, but has been

21  unavailable to help us with this, and --

22          THE COURT:  When was this case filed?

23          MS. BRILLEAUX:  Your Honor, this case was filed in

24  July of 2018.

25          THE COURT:  I guess, Mr. Roth, you have to explain to

1   me why did you all just reach out?  I mean, when she signed
2   up --
3          MR. ROTH:  We did not just reach out.  We have sent
4   her the plaintiff fact sheet, the authorizations, and various
5   stages of follow-up.  Recently, we've initiated recent contact.
6   She actually did the -- filled out the authorizations herself,
7   got them wrong, so we have to redo those.  So --
8          MS. BRILLEAUX:  Your Honor, respectfully, I just
9   want -- we would appreciate clarification.  The first one he
10  made -- when counsel made a blanket request, the alleged issue
11  was with -- internally with the firm and with the vendor.  And
12  I don't know if there are specific cases in which he is
13  alleging that the issue is that the client has not been
14  responsive, but to me it sounds like we're unclear on this.
15         MS. CALLSEN:  This is representing the 505 -- this is
16  Julie Callsen representing the 505.  I would just like to ask
17  for these 40 plaintiffs, I mean, do you have specific examples
18  or are in specific contact with them that you can relate to the
19  Court?  You started -- and the reason I'm asking, I'm sorry, is
20  because, again, you started by making a blanket request.
21         MR. ROTH:  Sure.  Sure.  And the blanket request
22  would not apply to Ms. Abell, but I can give you the 27 clients
23  that are on this list that we do have very recent medical
24  records for that were -- so I could do it that way.  If you
25  want to do it individually, I can tell you our history of

OFFICIAL TRANSCRIPT

```
 1   contact with them, whatever your preference.
 2           THE COURT:  Well, I think we need to go one at a
 3   time.  I'm going to dismiss Ms. Abell's case with prejudice
 4   because I haven't heard a good reason why this has not been
 5   filed.  If there is something that has occurred, I'm going to
 6   grant relief.
 7           And, very frankly, at the end of the last call
 8   docket, I cautioned everyone that I had come onto the case and
 9   I was granting a great deal of flexibility, but those days were
10   over.  And the 15 days that I've granted this time were because
11   actually paperwork had been filed, and it's only 15 days to
12   confirm that the cure has been made.  But just granting 15 days
13   because we haven't gotten around to it, those days are over.
14           So let's take the next plaintiff.
15           MS. CALLSEN:  The next plaintiff is Liliana Arenas.
16           MR. ROTH:  We've reached out to her.  She has not
17   expressed interest in continuing this.
18           THE COURT:  This matter is dismissed with prejudice.
19           MS. CALLSEN:  Theresa Bolton.
20           MR. ROTH:  Another client who does not want to fill
21   out the plaintiff fact sheets and --
22           THE COURT:  This matter is dismissed with prejudice.
23           MS. CALLSEN:  The next one is Shirley Brown.
24           MR. ROTH:  I reached out to her.  She's been kind of
25   reluctant, but we still think there might be a chance that
```

OFFICIAL TRANSCRIPT

1    she's --

2            **THE COURT:**  This matter is dismissed with prejudice.

3            **MS. CALLSEN:**  Thank you.

4                    Barbara Cezair.

5            **MR. ROTH:**  We have not been able to make contact with

6    her.

7            **THE COURT:**  This matter is dismissed with prejudice.

8            **MS. CALLSEN:**  Thank you, Your Honor.

9                    Melissa Collins.

10           **MR. ROTH:**  She is working on her PFS.  I talked to

11   her two days ago, and we're expecting to receive it

12   momentarily.

13           **MS. BRILLEAUX:**  Your Honor, we'd ask for seven days.

14           **THE COURT:**  The Court's going to grant seven days.

15           **MR. ROTH:**  Thank you, Your Honor.

16           **MS. CALLSEN:**  Myria Crabtree is the next one without

17   a PFS.

18           **MR. ROTH:**  Yes, and I have not been able to make

19   contact with her.  I've tried.

20           **THE COURT:**  This matter is dismissed with prejudice.

21           **MS. CALLSEN:**  Sandra Craggette.

22           **MR. ROTH:**  We have reached out to her.  She indicates

23   she wants to continue.  She is somebody that we just received

24   medical records for.

25           **MS. CALLSEN:**  Has she made any efforts to do her PFS?

OFFICIAL TRANSCRIPT

```
 1              MR. ROTH:  She has not, no.  We're trying to get her
 2   to -- the seriousness of doing this.
 3              THE COURT:  This matter is dismissed with prejudice.
 4   She has certain obligations as well.
 5              MR. ROTH:  I understand.
 6              MS. CALLSEN:  Thank you.
 7                   Wanda Davis.
 8              MR. ROTH:  She is working on her PFS.
 9              THE COURT:  The Court's going to grant seven days.
10              MS. CALLSEN:  Valerie Dunagan.
11              MR. ROTH:  She is working on her PFS.  We have
12   received -- let me see if we have any records for her.  She's
13   working on it, and I think we can get it done in seven days.
14              THE COURT:  The Court's going to grant seven days.
15              MS. CALLSEN:  Sharon Feaster.
16              MR. ROTH:  She does not want to participate.  I
17   alerted defendants to that fact a couple days ago in an e-mail.
18              THE COURT:  That matter is dismissed with prejudice.
19              MS. BRILLEAUX:  Carrie Fitzpatrick, no PFS.
20              MR. ROTH:  Hello.
21              THE COURT:  Hello.  Carrie Fitzpatrick.
22              MR. ROTH:  Yes.  We've made attempts to reach her and
23   have not been successful.
24              THE COURT:  This matter is dismissed with prejudice.
25              MS. BRILLEAUX:  Tamara Gabrielyan.
```

OFFICIAL TRANSCRIPT

1           **MR. ROTH:**  She is working on her PFS.  We are helping
2      her with it.  I think seven days.
3           **THE COURT:**  The Court will grant seven days.
4           **MS. CALLSEN:**  Lois Gary.  I believe you --
5           **THE COURT:**  Lois Gary.
6           **MS. CALLSEN:**  I believe you indicated you wanted to
7      dismiss this one.
8           **MR. ROTH:**  Yeah.  I alerted defendants to that fact a
9      couple days ago.
10          **THE COURT:**  This matter is dismissed with prejudice.
11          **MS. BRILLEAUX:**  Thank you, Your Honor.
12               Barbara Gorski.
13          **MR. ROTH:**  We have reached out several times.  She's
14     ignored us.
15          **THE COURT:**  This matter is dismissed with prejudice.
16          **MS. CALLSEN:**  Jacquelyn Gunn.
17          **MR. ROTH:**  She is almost done with her PFS.  We're
18     helping her with it.  She's got her authorizations filled out.
19     So we're confidant --
20          **THE COURT:**  The Court will grant seven days.
21          **MS. BRILLEAUX:**  Dawn Haught.
22          **MR. ROTH:**  She also is working on her PFS.  There was
23     a mixup with her mailing address, which explains the delay on
24     this one.  She is gung ho about doing this.
25          **THE COURT:**  All right.  The Court's going to grant

 1   seven days.

 2           **MS. BRILLEAUX:**  The next one I have is Karen

 3   Headrick, and I have a note that counsel intends to dismiss

 4   this case.

 5           **MR. ROTH:**  Correct.

 6           **THE COURT:**  This matter is dismissed with prejudice.

 7           **MS. BRILLEAUX:**  And then -- I'm sorry, you go.

 8           **MS. CALLSEN:**  That's okay.  Meredith Hunt.  I'm

 9   trying to relieve Ms. Brilleaux's voice here.  Marliyn Hunt, I

10   also -- Meredith Hunt, excuse me, that you plan to dismiss

11   this?

12           **MR. ROTH:**  Correct.

13           **THE COURT:**  This matter is dismissed with prejudice.

14           **MS. BRILLEAUX:**  Susan Johnson, no PFS.

15           **MR. ROTH:**  She recently had some health issues.  She

16   is working on her PFS.  We'll see if we can help her along with

17   that.  We've had recent contact and --

18           **THE COURT:**  Well, if she's had health issues, the

19   Court's going to grant 15 days.

20           **MS. BRILLEAUX:**  Judith Kies, no PFS.

21           **MR. ROTH:**  We've reached out and talked to her.  She

22   has had lukewarm interest in this.  I could try one more time,

23   and if she's not --

24           **THE COURT:**  This matter is dismissed with prejudice.

25           **MS. CALLSEN:**  The next plaintiff is Deanna Lynn

OFFICIAL TRANSCRIPT

1  Kippes.

2          **MR. ROTH:**  I'm sorry, who?

3          **MS. CALLSEN:**  Deanna Lynn Kippes, or it's

4  K-I-P-P-E-S.  Maybe I'm pronouncing that wrong.

5          **MR. ROTH:**  Oh.  K-I-E-S?  I'm not --

6          **MS. CALLSEN:**  K-I-P-P-E-S.  The Docket No. is

7  18-08246.

8          **MR. ROTH:**  I'm not familiar with --

9          **MS. CALLSEN:**  It would have been listed with the show

10 cause order that we submitted earlier this month with -- under

11 your firm's name with the rest of them.

12         **THE COURT:**  Tell you what, I'm going to circle that

13 one.  Let's circle back to that one.  Perhaps someone in your

14 office can help, and let's go to the next one.

15         **MR. ROTH:**  Yes.

16         **MS. CALLSEN:**  Denise Lawandus.

17         **MR. ROTH:**  We've reached out to her and she has shown

18 no interest.  She's not responded.

19         **THE COURT:**  This matter is dismissed with prejudice.

20         **MS. CALLSEN:**  Vickie Leffert.

21         **MR. ROTH:**  Urgency, final warning letters, no

22 response.

23         **THE COURT:**  This matter is dismissed with prejudice.

24         **MS. CALLSEN:**  Shannon Lewis.

25         **MR. ROTH:**  The same.  We've reached out and, you

 1 │ know, not responding back.

 2 │        **THE COURT:**  This matter is dismissed with prejudice.

 3 │        **MS. CALLSEN:**  Patricia Lolakis.

 4 │        **MR. ROTH:**  The same.  We've given her urgency

 5 │ warnings and no response.

 6 │        **THE COURT:**  This matter is dismissed with prejudice.

 7 │        **MS. BRILLEAUX:**  Abigail Lopez, no PFS.

 8 │        **MR. ROTH:**  The same.  And she's kind of fallen off --

 9 │ the phone's been disconnected, has not responded to e-mail.

10 │        **THE COURT:**  This matter is dismissed with prejudice.

11 │        **MS. BRILLEAUX:**  Lenora McLamb, no PFS.

12 │        **MR. ROTH:**  She is working on it.  We've already, in

13 │ fact, loaded her authorizations, and we are helping her through

14 │ her PFS.

15 │        **THE COURT:**  The Court's going to grant seven days.

16 │        **MS. BRILLEAUX:**  Mary Milton, no PFS.

17 │        **MR. ROTH:**  She has ignored our urgency warnings,

18 │ voice mail, e-mail.

19 │        **THE COURT:**  This matter is dismissed with prejudice.

20 │        **MS. CALLSEN:**  Laurie Mounce.

21 │        **MR. ROTH:**  We've been unsuccessful getting ahold of

22 │ her.

23 │        **THE COURT:**  This matter is dismissed with prejudice.

24 │        **MS. CALLSEN:**  Thank you.

25 │        Gladys Oladehin.  Sorry if I butchered her name.

```
1             MR. ROTH:  Yeah, Oladehin.  We've reached out to her
2    and have not been able to make contact.  She's not responded.
3             THE COURT:  This matter is dismissed with prejudice.
4             MS. CALLSEN:  Judy Philbrook.
5             MR. ROTH:  The same, unsuccessful, has not gotten
6    back to us.
7             THE COURT:  This matter is dismissed with prejudice.
8             MS. BRILLEAUX:  Cheryl Reeves.
9             MR. ROTH:  Another one we've reached out to and has
10   not responded.
11            THE COURT:  This matter is dismissed with prejudice.
12            MR. ROTH:  We did get the medical records in for her,
13   and we also got some in for Gladys Oladehin.  We may be able to
14   advance those PFSs just based on that.
15            MS. BRILLEAUX:  Your Honor --
16            THE COURT:  No, I think that doesn't work.  She's got
17   to sign and verification.  Those matters are dismissed with
18   prejudice.
19            MR. ROTH:  Fair enough.
20            MS. BRILLEAUX:  Freda Schoen, no PFS.
21            MR. ROTH:  She's not responded to our attempts.
22            THE COURT:  This matter is dismissed with prejudice.
23            MS. BRILLEAUX:  The next one I have is
24   Margaret Skoog.  And, counsel, I have a note that you intend to
25   dismiss this case.
```

OFFICIAL TRANSCRIPT

```
1              MR. ROTH:  Yes.  She does not want to participate.

2              THE COURT:  That matter is dismissed with prejudice.

3              MS. BRILLEAUX:  Judy Smith, no PFS.

4              MR. ROTH:  She has not responded to us despite our

5       attempts.

6              THE COURT:  The matter is dismissed with prejudice.

7              MS. CALLSEN:  The next plaintiff is Tracey Smith

8       Scott without a PFS.

9              MR. ROTH:  She has also been unresponsive.

10             THE COURT:  This matter is dismissed with prejudice.

11             MS. BRILLEAUX:  Tina Streeter, no PFS.

12             MR. ROTH:  Another nonresponsive claimant.

13             THE COURT:  That matter is dismissed with prejudice.

14             MS. CALLSEN:  Leslie Talbott.

15             MR. ROTH:  We've not been able to make contact.  She

16      has not updated us on any new contact information and --

17             THE COURT:  This matter is dismissed with prejudice.

18             MS. CALLSEN:  Kathleen Thomason.

19             MR. ROTH:  She has sent it in the past few days.  You

20      should expect it momentarily.

21             THE COURT:  The Court's going to grant seven days.

22             MS. BRILLEAUX:  Mary Wallace, no PFS.

23             MR. ROTH:  We've been unsuccessful making contact

24      with her.  We've tried.

25             THE COURT:  This matter is dismissed with prejudice.
```

OFFICIAL TRANSCRIPT

```
1            MS. CALLSEN:  Anida Westbrook.

2            MR. ROTH:  The same.  Another nonresponsive --

3            THE COURT:  This matter is dismissed with prejudice.

4            MS. CALLSEN:  The next plaintiff is Christina York.

5            MR. ROTH:  We have reached out to her.

6            MS. CALLSEN:  And?

7            THE COURT:  And?

8            MR. ROTH:  And we have not had any success.

9            THE COURT:  This matter is dismissed with prejudice.

10               Let me go back to Deanna Kippes.

11           MR. ROTH:  Can you give us the spelling of the last

12   name?  I'm actually in Centrality right now.

13           THE COURT:  Okay.  K-I-P-P-E-S, and it's Docket

14   18-8246.

15           MR. ROTH:  Bear with us for a second.

16               Okay.  We found her.  We've reached out to her.

17   She has actually not been responsive to us, which probably

18   explains why --

19           THE COURT:  This matter is dismissed with prejudice.

20           MS. CALLSEN:  Okay.  Your Honor, that's the end of

21   the no PFSs, so we start over at the top of the list again with

22   not substantially complete.  And, again, it's from least to

23   most.

24           MS. BRILLEAUX:  That's correct, Your Honor.

25               The first case that I have is Martha Gonzales
```

1   with Brent Coon & Associates.

2           **THE COURT:** Is anyone on the phone with Brent Coon?

3           **MR. NEWELL:** Yes, Your Honor, Eric Newell.

4           **MS. BRILLEAUX:** And the deficiency for this case is

5   we do not have any after photos.

6           **MR. NEWELL:** After photos were uploaded on

7   December 6th, and an e-mail was sent to the defendants saying

8   that they've been uploaded on December 18th.

9           **MS. BRILLEAUX:** Oh, Your Honor, I have a note here.

10   I think we have -- the issue here is that the photos are from

11   over five years ago, and we don't see why a current photo of

12   the plaintiff's hair can't be uploaded.

13           **THE COURT:** Okay. I'm going to grant 15 days for you

14   to upload a current photo.

15           **MS. BRILLEAUX:** Thank you, Your Honor.

16           **MR. NEWELL:** Thank you, Your Honor.

17           **THE COURT:** Okay.

18           **MS. BRILLEAUX:** The next one that I have is Betty

19   Anderson. This is no before photos within five years of

20   treatment as ordered by PTO 68.

21           **THE COURT:** Is anyone here with Carey, Danis & Lowe?

22           **MS. DOLES:** Yes, Your Honor, this is Sarah Doles.

23           **THE COURT:** Okay.

24           **MS. DOLES:** We have uploaded a photograph that is

25   dated approximately 1990. We had notified the defense in

1  December that that was the only photo in plaintiff's

2  possession.  We also have reached -- defense attorneys again on

3  January 15th that neither the plaintiff nor her family members

4  have been able to locate any photos taken within five years

5  before treatment.

6            **MS. BRILLEAUX:**  Your Honor, defendants would request

7  a notified -- a notarized declaration to that effect, and just

8  for the record, that counsel is under an obligation to

9  supplement should any more recent photos to her treatment be

10 located.

11           **THE COURT:**  So ordered.  I'm going to ask that an

12 affidavit be filed within 30 days.

13           **MS. BRILLEAUX:**  Thank you, Your Honor.

14              The next one that I have is Donna Burdell for

15 Davis & Crump.  We have undated photos and then no signed

16 declaration, Your Honor.

17           **THE COURT:**  Okay.  I think we have someone --

18           **MR. HARDENSTEIN:**  Taylor Hardenstein for Davis &

19 Crump, Ms. Donna Burdell, Your Honor.  We were informed in

20 November that she was deficient.  We reached out to her,

21 couldn't hear from her.  Shortly before we sent our e-mail

22 pursuant to PTO 22, found out she had passed away.  We have not

23 heard from anybody.  We reached out.  Lexis returned no kin.

24 We have since heard from her brother who said she has three

25 sons.  We have not been able to reach out to the sons yet, but

1  he is trying to get us good contact information on her.  So we
2  request 120 days to substitute in a proper party once we make
3  contact.
4          **THE COURT:**  All right.  I'm not giving you 120 days.
5          **MS. BRILLEAUX:**  Your Honor, we would request --
6          **THE COURT:**  45 days.
7          **MS. BRILLEAUX:**  45.  Thank you.
8          **MR. HARDENSTEIN:**  Thank you, Your Honor.
9          **THE COURT:**  I'll give you 45 days to make contact.
10  Thank you.
11          **MS. CALLSEN:**  The next plaintiff on our list,
12  Michelle Cavallaro.  They did cure the PFS substantially
13  incompleteness after the cutoff date.  So they can be removed
14  from the docket.
15          **THE COURT:**  Thank you.
16          **MS. CALLSEN:**  And that was Fears Nachawati.
17          **THE COURT:**  All right.  So that's been satisfied.
18  Thank you.
19          **MS. CALLSEN:**  Yes.
20              The next plaintiff is Janet Starr, represented
21  by the Kirk Law Firm.  Her PFS, she still has no proof of
22  injury, and there's no documentation regarding that.  And we've
23  checked, there's nothing been submitted since August of 2018 in
24  an attempt to cure same.
25          **THE COURT:**  Is there anybody on the phone?

OFFICIAL TRANSCRIPT

1          MR. ROTH:  Steve Roth with Reich & Binstock.  We took

2     some Kirk clients.  We have reached out to Janet Starr and

3     don't honestly -- let me see what her status is here.

4          THE COURT:  What?

5          MR. ROTH:  We have not been able to make contact with

6     her so far, so I don't have anything to add to that.

7          THE COURT:  When was the last time you contacted

8     Ms. Starr?  Hello?

9          MR. ROTH:  Can I get back to you on that?

10         THE COURT:  Well, it's -- okay.  So you've lost

11    contact with Ms. Starr?

12         MR. ROTH:  I think so.

13         THE COURT:  Okay.

14         MR. ROTH:  Well, she --

15         MS. CALLSEN:  Your Honor, based on the deficiency,

16    which was there was no proof of injury, so no evidence that she

17    had ever used the product at issue, I would ask that it be

18    dismissed.

19         MR. ROTH:  For Janet Starr, we did get did -- she was

20    included in those ones that we got some medical records for.

21    We might be able to -- again, there's -- the proof of injury,

22    the proof of use, could be in there in the medical records, but

23    if not, we will dismiss this.

24         MS. CALLSEN:  It's not in there, that's why she's on

25    the list.  I'm not trying to be flippant.  I'm just saying,

OFFICIAL TRANSCRIPT

1  we've reviewed the records we've received.  There's nothing in
2  there to support proof of injury.
3          **MR. ROTH:**  We got these records just within the last
4  48 hours, so we would like a chance to take one final crack to
5  see if we can, you know --
6          **MS. CALLSEN:**  Your Honor --
7          **THE COURT:**  All right.  I guess my question is:  Are
8  you in contact with your client?
9          **MR. ROTH:**  We have reached out to her and she has not
10 been responsive since June of last year.
11         **THE COURT:**  This matter is dismissed with prejudice.
12 You know, even if it's in the records, you need a client that's
13 participating.
14         **MR. ROTH:**  I understand.
15         **THE COURT:**  Thank you.
16         **MS. BRILLEAUX:**  Thank you, Your Honor.
17             The next one that we have is Helen Love with
18 Pendley, Baudin & Coffin.  The deficiency here is no before
19 photos within five years of treatment.
20         **MS. PEREZ-REYNOLDS:**  Hi.  Good morning, Your Honor.
21 Jessica Perez-Reynolds on behalf of Ms. Love.  Ms. Love has
22 previously submitted a before photograph in the time period of
23 2001.  I believe that the time period the defendants are
24 seeking is the range of '05 to 2010.  I have discussed this
25 matter with her on several occasions, and she is adamant that

1   she does not have any photographs within this period.  We're
2   more than happy to supply a declaration if the defendants
3   request it.
4        THE COURT:  You're going to have to supply an
5   affidavit within 30 days.  And, of course, you always have a
6   continuing obligation to update.
7        MS. BRILLEAUX:  Thank you, Your Honor.
8        MS. PEREZ-REYNOLDS:  Absolutely, Your Honor.  Should
9   she locate any photographs, we'll certainly supply them.
10           As a housekeeping matter, and just for record
11   accuracy, I apologize, but Your Honor previously dismissed
12   Brenda Adams this morning based on counsel's entry of a no
13   contact declaration.  I have been advised by my office that
14   Ms. Adams did call yesterday afternoon.
15           She is aware of what's going on.  I have no
16   indication that she will be providing a plaintiff fact sheet.
17   But for housekeeping matters, and for Your Honor's preference,
18   if you would like for us to submit the second declaration which
19   states the matter's been explained to the client and they have
20   not provided the PFS, we will do that.
21        THE COURT:  Well, you know, I think on the date -- on
22   the date that you filed that declaration, those facts were
23   correct, and I think that's sufficient.
24        MS. PEREZ-REYNOLDS:  That is true, Your Honor.
25        MS. CALLSEN:  That's what I was just going to say,

OFFICIAL TRANSCRIPT

1    that's what I would ask.  Thank you.

2          MS. PEREZ-REYNOLDS:  I just wanted to make sure the

3    record was clear for the client.

4          MS. BRILLEAUX:  Thank you, Your Honor.

5              The next one that I have is Barbara Harris with

6    Shaw Cowart.  This is no before photos within five years of

7    treatment.

8          MR. COWART:  Good morning, Your Honor.  This is John

9    Cowart on behalf of Barbara Harris.  We uploaded, Your Honor,

10   some photos December 20th, a couple of photos from the 1980s.

11   She had additionally looked at her own records and never could

12   find anything and then eventually got a couple of photographs

13   from her sister.  But she's adamant that she doesn't have any

14   others.  But we can sign a declaration.

15         THE COURT:  Okay.  I'm going to ask you to sign a

16   declaration within 30 days.  And then, of course, there's an

17   ongoing obligation to supplement if any photographs should be

18   found.

19         MS. BRILLEAUX:  Your Honor, to clarify, we would

20   request a notarized affidavit.

21         THE COURT:  That's what I think we said, within 30

22   days.

23         MS. BRILLEAUX:  Thank you.

24         THE COURT:  That's part of the problem with this

25   process.

OFFICIAL TRANSCRIPT

1          **MR. COWART:**  Thank you, Your Honor.

2          **THE COURT:**  Thank you.

3          **MS. BRILLEAUX:**  The next plaintiff that I have is

4   Cynthia Gay.  The issues -- this is with the Goss Law Firm.

5   The issue is that there are no dates on the after photos.  The

6   dates are from when the photos were developed, but there is no

7   indication of when the photos were actually taken.  And we also

8   don't have any before photos within five years of treatment.

9          **MR. GOSS:**  Your Honor, Peter Goss on behalf of the

10  Goss Law Firm and Cynthia Gay.  It's my understanding that --

11  that after pictures were uploaded and have been dated.  And

12  recently a before picture was uploaded.  And defense counsel is

13  correct that they are not within the five years.  We'd be happy

14  to get a signed affidavit that the client has no other photos

15  available and cannot find any.

16         **THE COURT:**  Okay.  The Court's going to grant 30 days

17  for you to file that affidavit, and 15 days for defendant to

18  review the after photos to see if there are any further

19  problems.

20         **MS. BRILLEAUX:**  Thank you, Your Honor.  I just the --

21  I don't think that counsel responded to the issue that we

22  raised, which is we understand that the after photos have been

23  uploaded, but they aren't dated.  They all have the date that

24  they were developed or printed, but they don't have the date on

25  which they were taken.  So I think we need 15 days for counsel

1    to adequately date them on the date that they were taken.

2             **MR. GOSS:**  That's fine, Your Honor.

3             **THE COURT:**  Okay.  So ordered.

4             **MS. BRILLEAUX:**  Thank you, Your Honor.

5                   The next one I have is Ruth Harris with the

6    Murray Law Firm.  And the issue here is that the before photos

7    are not dated.  They all say pre-2005, but they don't have a

8    date on them.

9             **MS. MYERS:**  Your Honor, this is Robin Myers with the

10   Murray Law Firm.

11            **THE COURT:**  Yes.

12            **MS. MYERS:**  They do say pre-2005 because she's unable

13   to determine from the photo when it was actually taken.  So she

14   didn't want to just guess what day it was in the photo.  She

15   can't tell me when it was printed either.

16            **THE COURT:**  Okay.  The Court's going to require that

17   you file an affidavit indicating that you have not been able to

18   find any photos within the last five years, nor can you verify

19   the date of this particular photo, and, of course, you have an

20   ongoing obligation to supplement.

21            **MS. MYERS:**  Yes, Your Honor.  Thank you.

22            **MS. BRILLEAUX:**  Thank you, Your Honor.

23                   The next case that I have is Lisa Briggs with

24   Watts Guerra.  The issue here is that we do not have any before

25   photos.  We do have a statement from plaintiff saying that her

OFFICIAL TRANSCRIPT

1   photos were destroyed.  But we would, as you've ruled on the
2   other cases, ask that we have a notarized affidavit to that
3   effect.
4           **MS. BOLDT:**  Your Honor, this is Paige Boldt with
5   Watts Guerra.  Ms. Briggs' family member was actually able to
6   locate a photo this morning, and we've uploaded it to the
7   portal.  So we'd ask for 15 days for defense to review that
8   photo.
9           **THE COURT:**  So ordered.
10          **MS. BRILLEAUX:**  Thank you, Your Honor.  We would ask
11  that that also be dated.
12          **MS. BOLDT:**  Yes.
13          **THE COURT:**  I know we're still in the middle of this,
14  but I need to take about a two-minute break.
15          **MS. BRILLEAUX:**  Thank you, Your Honor.
16          **MS. BARRIOS:**  Thank you, Your Honor.
17          (WHEREUPON, the Court took a recess.)
18          **MS. BRILLEAUX:**  Did we leave off on Ruth Harris?
19          **THE COURT:**  We were on --
20          **MS. BRILLEAUX:**  Did we finish that one?
21          **THE COURT:**  I believe we were on page 9, No. 105,
22  which is Donna McFall Prince, Morris Bart's law firm.
23          **MS. BRILLEAUX:**  Your Honor, the deficiency I have for
24  this one is no signed declaration.
25          **MR. ROOT:**  I don't believe that's correct, or at

1   least it shouldn't be correct, because I know there's an e-mail
2   problem we had getting Ms. Prince's declaration.  I spoke with
3   her and exchanged e-mails, and I checked before I came over
4   here, I thought we uploaded that declaration.  I know we have
5   it, so I don't know if that's actually correct.
6           MS. BRILLEAUX:  Your Honor, the notes that I have is
7   that one was uploaded, but it wasn't signed or dated.  I don't
8   know if that was a clerical issue, but we would ask for seven
9   days.
10          THE COURT:  Seven days to go figure out where to go
11  with that.
12          MR. ROOT:  Absolutely, Your Honor.
13          MS. BRILLEAUX:  Thank you, Your Honor.
14              The next one I have is Estoria Wilson.  And this
15  is an issue with no before photos -- or deficient before
16  photos, I should say.
17          MR. ROOT:  I looked at this right as I ran over, Your
18  Honor, and I see the before photo that we have, and I'll admit
19  this is -- is not the best photo.  It's a graduation photo with
20  a graduation cap.  Obviously, that's not what we're looking for
21  here.  So we found a photo that's clearly an earlier photo than
22  her after photos where --
23          THE COURT:  Let me ask this question:  Was it within
24  the last five years?
25          MS. BRILLEAUX:  Or I guess to clarify within five

OFFICIAL TRANSCRIPT

1  years prior to treatment?

2          **MR. ROOT:**  Honestly, Your Honor, I did not know that

3  fact as I ran over to see what date was on there.  I just saw

4  that it was the graduation photo.  I assumed the date was

5  correct, but I just assumed the problem was the fact that it

6  wasn't as helpful as we wish.  So I'm more than happy to try to

7  obtain obviously better photos.

8          **MS. BRILLEAUX:**  Your Honor, we've checked our

9  records.  We do see a photo has been uploaded, but it hasn't

10 been dated.

11         **THE COURT:**  This is what -- because you haven't

12 represented to me that you have no photos, and that sometimes

13 is the problem.  What I'll tell you is, I'm going to grant you

14 30 days to do one of two things:  Get a photo that's within

15 five years of her treatment, or a signed affidavit indicating

16 that none exists to her knowledge.  And then, of course,

17 there's an ongoing obligation to supplement if that information

18 is received.

19         **MS. BRILLEAUX:**  Your Honor, just to clarify, I know

20 that you ordered a photo within five years, we would say one

21 that shows her scalp.

22         **THE COURT:**  Well, you know, if -- again, but if the

23 only photo -- because we have to be careful with the affidavit.

24 If the only photo you have is one under a cap, I agree that

25 that's probably not sufficient, so just make sure your

1  affidavit is correct.

2          **MS. BRILLEAUX:**  Is reflective of that fact.

3          **THE COURT:**  That this is the only affidavit [sic] I

4  have.  Of course, you should be able to figure out the date

5  with a graduation cap.

6          **MR. ROOT:**  That should be easily ascertainable.

7          **THE COURT:**  Because that's an ongoing issue, too,

8  what's the date?  Well, that one at least you should know.

9          **MR. ROOT:**  Thank you very much, Your Honor.

10          **MS. BRILLEAUX:**  Thank you, Your Honor.

11              The next case that I have is Patricia McNair.

12  This is with Peterson & Associates.  And then we have an issue

13  with the before photo not being within five years of treatment.

14          **MS. STIPKOVITS:**  Good morning, Your Honor.  This is

15  Sara Stipkovits with Peterson & Associates.  Ms. McNair has

16  uploaded two photographs, but they are in 2000 and 2001, which

17  is further than five years away from her treatment, but she

18  says that those are the only photographs she has.  I would like

19  the opportunity to provide an affidavit, please.

20          **THE COURT:**  All right.  30 days to file the

21  affidavit.  Thank you.

22          **MS. STIPKOVITS:**  Thank you.

23          **MS. BRILLEAUX:**  Thank you, Your Honor.

24              Andera Shelton, also with Peterson & Associates.

25  This we have photographs that are not dated, and the other

1  deficiency that we have is that PTO 71, which is the
2  confirmation of ESI, has not been uploaded, which is a category
3  of PFS deficiency.
4      MS. STIPKOVITS:  Your Honor, we have lost contact
5  with her since March of 2018.
6      MS. BRILLEAUX:  We believe this should be dismissed.
7      THE COURT:  This matter is dismissed with prejudice.
8      MS. STIPKOVITS:  Thank you.
9      THE COURT:  Thank you.
10     MS. BRILLEAUX:  The next one is June Burton.  This is
11 with the Baron & Budd law firm, and here we have no proof of
12 use and no dated photographs.
13     MS. BENTON:  Your Honor, Danae Benton with Baron &
14 Budd.  Dated photographs were uploaded to MDL Centrality, and
15 defense counsel was notified of the partial cure, and that we
16 have outstanding requests in progress for medical records.
17 It's been unfortunate that due to the infusion dates, most
18 facilities, their retention policy, it's been difficult to
19 obtain them.
20         We've placed additional orders, and we actually
21 have submitted the NDC statements to plaintiff's oncologist.
22 We're expecting that any day now, hopefully.  So we're just
23 requesting some additional time to cure that with that NDC
24 statement or additional records that come in.
25     MS. BRILLEAUX:  Your Honor, we are not here for the

1   purposes of CMO 12 today.  We're here for the issue of proof of

2   use, just proof of use of Docetaxel, no NDC codes.

3           **MS. BENTON:**  And the medical records go to that.

4           **THE COURT:**  Okay.  So you have that in your

5   possession?

6           **MS. BENTON:**  We have submitted the request.  We have

7   in possession records.  The records do not indicate the

8   Docetaxel/Taxotere usage.  The time period of when the infusion

9   was done was early 2000s, and so the facilities have purged

10  most of their records, and so that's why we've submitted that

11  NDC statement to plaintiff's oncologist as a form of getting

12  the proof of plaintiff's use of the Docetaxel/Taxotere.

13          **MS. BRILLEAUX:**  Your Honor, we would request then 15

14  days to confirm that this deficiency has been cured.

15          **THE COURT:**  So ordered.

16          **MS. BENTON:**  Thank you, Your Honor.

17          **THE COURT:**  Thank you.

18          **MS. BRILLEAUX:**  The next plaintiff I have, which is

19  also with Baron & Budd, is Jo Ellen Wade.  Here we have, again,

20  no proof of use.  I have in my notes that we have received

21  medical records, but none of the medical records indicate any

22  Docetaxel use.

23          **MS. BENTON:**  Yes, Your Honor.  And this is going to

24  be the same situation as the previous client where due to the

25  dates of infusion, the retention policy for most medical

```
 1   records has been very difficult to obtain these.  We've done
 2   the same process where we're ordering additional records.
 3   We've submitted the NDC statement over to the plaintiff's
 4   infusion center, again, to try to show proof that she was
 5   infused with it.  We would request 15 days.  If we don't have
 6   it, we'll dismiss.
 7             THE COURT:  So ordered.
 8             MS. BRILLEAUX:  Thank you, Your Honor.
 9                  The last case I have with Baron & Budd is Laura
10   White.  This is also no proof of use.  We have received medical
11   records, but none of them demonstrate Docetaxel use.
12             MS. BENTON:  This is the same situation, Your Honor.
13   Could we have 15 days?
14             THE COURT:  Have you --
15             MS. BENTON:  We have limited records that we've
16   received from the facility.  We've placed additional medical
17   record orders.  We've submitted the NDC statement, again, to
18   try to show that proof of use and proof of manufacturer to the
19   infusion center.  We're working to get that back.  We have to
20   work through their legal department, and, unfortunately, their
21   legal department doesn't speak directly to me.  You have to go
22   through a manager.  It's been a process, but we are working on
23   it.
24             THE COURT:  Okay.  I'm going to grant 15 days, but I
25   should caution you, I see that these cases were filed in 2017.
```

1          **MS. BENTON:**  Yes, Your Honor.

2          **THE COURT:**  So this is not going to be 16 days, and,

3     very frankly, these records should have been ordered a very

4     long time ago.  So it's hard for me --

5          **MS. BENTON:**  And they were.

6          **THE COURT:**  -- to find much sympathy.

7          **MS. BENTON:**  Yes, Your Honor, I understand.  And we

8     have absolutely ordered records in 2017, 2018.  It's been an

9     ongoing effort, but I understand Your Honor's admonition, and

10    we will make sure that this is addressed in 15 days.

11         **THE COURT:**  Thank you.

12         **MS. BENTON:**  Thank you, Your Honor.

13         **MS. BARRIOS:**  Your Honor, Dawn Barrios.  Just for the

14    record, this is a continuing problem --

15         **THE COURT:**  I know.

16         **MS. BARRIOS:**  -- with people in the early 2000s.  So

17    if you could -- if you could extend the 15 days if they need

18    it.  It's impossible when the facility says, "I have no

19    records," and then you have, as she said -- you know the

20    situation.

21         **THE COURT:**  I do.  I do.  But on the other hand, you

22    know, this has now been since 2017, and at some point, the

23    question is -- if I see that there has been a concerted effort,

24    and this is what we've done, and this is when we've done it,

25    and it's happened over, you know, this constant, that's one

1   thing.  But where the Court finds frustration is when it

2   appears that the efforts are expended once a show cause list

3   has been presented.

4          **MS. BARRIOS:**  Thank you, Your Honor.  Totally

5   understand.

6          **THE COURT:**  Thank you.

7          **MS. BRILLEAUX:**  The next case I have is Rhonda Lewis

8   with Brown & Crouppen.  This is another issue of no before

9   photos within five years of treatment.

10          **MR. WEBB:**  Your Honor, this is Seth Webb for

11   Ms. Lewis.  This is one of those situations where we have

12   uploaded the photos that she has.  She just simply doesn't have

13   any others.  We'd be glad to get an affidavit put together.

14          **THE COURT:**  All right.  Prepare an affidavit within

15   30 days, understanding your continuing obligation to provide.

16          **MR. WEBB:**  Thank you.

17          **MS. BRILLEAUX:**  Your Honor, just to clarify, we'd

18   like to, just for the record, state that if any photographs

19   that are found between five and ten years are located, that

20   counsel should have an obligation to supplement those as well.

21          **THE COURT:**  That's fine.

22          **MS. BRILLEAUX:**  Thank you, Your Honor.

23          Also for Brown & Crouppen, I have Hollistenie

24   Stubbs.  We have no before photos and no after photos.  We also

25   have some deficiencies with the PFS.  We have not had the

OFFICIAL TRANSCRIPT

 1  prescribing physician identified.

 2          **MR. WEBB:**  Ms. Stubbs' situation is a little bit

 3  outside the box.  She fell out of contact with us for an

 4  extended period of time.  So much so that we filed a

 5  declaration.  However, in the last week or two, her guardian

 6  has reached out to me.  Apparently, she is in need of a

 7  guardian now, and we have begun the process of figuring out how

 8  to move forward with the guardian.

 9          I would ask, hopefully, for 30 days at least

10  just so that we can figure this thing out and make sure she

11  doesn't get shortchanged for something that's obviously not her

12  fault.

13          **THE COURT:**  The Court's going to grant 30 days.

14          **MS. BRILLEAUX:**  Thank you, Your Honor.

15          **MS. CALLSEN:**  The next plaintiff is Maggie Wilson.

16  Her PFS insufficiencies include that there's no proof of injury

17  and no documentation regarding use of Docetaxel.

18          **MR. WEBB:**  The severity of those problems have been

19  conveyed to Ms. Wilson and she has not cured them.

20          **THE COURT:**  This matter is dismissed with prejudice.

21          **MS. CALLSEN:**  Thank you.

22          **MR. WEBB:**  Thank you.

23          **MS. BRILLEAUX:**  Your Honor, the next one I have is

24  Bonnie Doering with Bruno -- who is represented by Bruno &

25  Bruno.  The issue here is no before photos.

1          **MS. HAWKINS:**  This is Markita Hawkins from Bruno &
2      Bruno.

3          **THE COURT:**  Yes, ma'am.

4          **MS. HAWKINS:**  Our office uploaded photos back in
5      June 11th of 2018.  And it's dated November 29th, 2011, so this
6      was less than a year before her final treatment date.

7          **MS. BRILLEAUX:**  And, Your Honor, we have that that
8      date reflects eight months after her chemotherapy began.

9          **MS. HAWKINS:**  I can check the photo again, but it was
10     my understanding that the photo that was uploaded was less than
11     a year before her first treatment date.  Her first treatment
12     date was May 16th, 2012.

13         **THE COURT:**  I'm going to grant 15 days for you all to
14     figure this out.

15         **MS. BRILLEAUX:**  Thank you.

16         **MS. HAWKINS:**  Okay.  Thank you, Your Honor.

17         **THE COURT:**  Thank you.

18         **MS. BRILLEAUX:**  The next one for Bruno & Bruno is
19     Brenda Wells.  This is another one, as we discussed earlier,
20     with no current after photos.  The only after photo that we
21     have is from 2009, which is the same year that she underwent
22     chemotherapy.

23         **MS. HAWKINS:**  Brenda Wells' treatment dates was
24     listed as November 19th, 2008 to 2009.  Our office uploaded
25     three types of photos.  One was during, one was after, and one

```
1   was before.  Her before picture is dated 2003.  Her after photo
2   is dated 2009.  And her treatment -- during treatment was dated
3   2008.
4          THE COURT:  Okay.  We need one that's current within
5   the last year.  So why don't you get that done within 30 days.
6          MS. HAWKINS:  Thank you, Your Honor.
7          MS. BRILLEAUX:  I have Helen Esters, who's
8   represented by the Johnson Law Group.  This is a case with no
9   before photos within five years of treatment.
10         MR. GARDNER:  Good morning, Your Honor.  Andrew
11  Gardner for the plaintiff with the Johnson Law Group.  We have
12  uploaded two photos for Ms. Esters.  One from 1971, and one
13  from 1995.  Unfortunately, it appears those are the only two
14  photos in Ms. Esters' possession, so we would ask for the 30
15  days to provide an affidavit.
16         THE COURT:  So ordered.
17         MR. GARDNER:  Thank you.
18         MS. BRILLEAUX:  And just for the record, continuing
19  obligation if any more recent photos are found.
20         MR. GARDNER:  Understood.
21         THE COURT:  Yes.  Thank you.
22         MS. BRILLEAUX:  The next one with Johnson Law Group
23  is Charlotte Grieselhuber, no before photos and -- no before
24  photos.
25         MR. GARDNER:  Essentially the same issue, Your Honor.
```

OFFICIAL TRANSCRIPT

1    We have undergone a diligent search, but, unfortunately, the

2    plaintiff does not have any photos in her possession.  So we

3    would be happy to execute an affidavit.

4              **THE COURT:**  The Court's going to order a 30-day --

5    within 30 days an affidavit be uploaded to Centrality.  I just

6    caution you that there's an ongoing obligation to provide

7    discovery.

8              **MR. GARDNER:**  Thank you, Your Honor.

9              **THE COURT:**  Thank you.

10             **MS. BRILLEAUX:**  The next case is Natalie Gough, who's

11   represented by the Law Offices of A. Craig Eiland, and the

12   deficiency with this case is no before photos within five years

13   of treatment.

14             **MR. BONNIN:**  Your Honor, this is David Bonnin.  I

15   represent Natalie Gough with the Law Offices of Craig Eiland.

16   And Ms. Gough has uploaded photographs from 1997, and I

17   understand that that is well before her first treatment in

18   2008.  But she has also offered, and we have upload to MDL

19   Centrality, a signed affidavit indicating that those are the

20   only before photos she has.

21             **MS. BRILLEAUX:**  For the record, we would just want to

22   remind counsel of the continuing obligation.

23             **THE COURT:**  Of course.  There's an ongoing obligation

24   to upload any information found -- any photos found.

25             **MS. BRILLEAUX:**  Also with the Law Offices of A. Craig

1    Eiland is Toni Hendrickson.  This is another no before photos.

2            MR. BONNIN:  Yes, Your Honor.  We've been in contact

3    with Ms. Hendrickson on the issue of photos repeatedly

4    throughout the past year or so.  We have sent her -- she is

5    adamant that there are no before photos in her possession or in

6    existence that she's aware.  We had sent her an affidavit to

7    sign supporting that statement of hers.  And she is continually

8    telling us over the past couple of weeks that she's going to

9    send it in.  I expect to receive it anytime now.

10           THE COURT:  Okay.  I'll grant 30 days just to cover

11   the time.

12           MS. BRILLEAUX:  Thank you.

13               And then Deandra Solomon Fisher, also with the

14   Law Offices of A. Craig Eiland.  Again, no before photos within

15   five years of treatment.

16           MR. BONNIN:  We signed a -- or we submitted a no

17   contact declaration on Ms. Fisher.  Unfortunately, it was

18   slightly after the deadline.

19           THE COURT:  Okay.  Court's going to grant 15 days to

20   defendants to confirm.

21           MS. BRILLEAUX:  Your Honor, he said no contact

22   declaration.  Can we --

23           THE COURT:  Oh, I thought you --

24           MS. BRILLEAUX:  -- dismiss with prejudice?

25           THE COURT:  I'm sorry.  Okay.  This matter is

OFFICIAL TRANSCRIPT

1    dismissed with prejudice.

2         **MR. BONNIN:**  Thank you, Your Honor.

3         **MS. CALLSEN:**  The next couple of cases are with the

4    Hilliard, Munoz, Gonzales firm.  The first plaintiff is Joy

5    Burnett.  Her PFS deficiencies that remain outstanding are her

6    authorizations do not have the proper witness in order to be

7    usable, and her photos are undated.

8         **MR. PINEDO:**  Your Honor, Chris Pinedo on behalf of

9    Joy Burnett with the Hilliard law firm.  We loaded up some

10   authorizations on the 15th of January this year, and then we

11   also uploaded some photos on January the 16th.

12        **THE COURT:**  Court's going to grant 15 days for

13   defendants to confirm.

14        **MS. CALLSEN:**  Thank you.

15            The next plaintiff is Patricia Dempsey, again,

16   by the same firm.  We don't have any proof of injury.  There's

17   no documentation, and the authorizations are, again, not signed

18   by a witness so that we can actually use them.

19        **MR. PINEDO:**  Your Honor, Chris Pinedo here on behalf

20   of Patricia Dempsey.  We uploaded on January the 14th some

21   prior chemo photos to MDL Centrality, and have also uploaded

22   the authorizations.  I just request 15 days so we can confer

23   with defendant to make sure that -- if there's anything

24   missing.

25        **THE COURT:**  So ordered.

OFFICIAL TRANSCRIPT

1          **MS. CALLSEN:**  I didn't even raise the photos.  What I

2   raised was we're missing proof of injury.  There's no

3   documentation regarding proof of injury.  Are you referring to

4   the photos as the injury proof?

5          **MR. PINEDO:**  Yes.

6          **MS. CALLSEN:**  Okay.  15 days.  Thank you.

7          **THE COURT:**  Yes.

8          **MS. CALLSEN:**  The next plaintiff is Roxann Johnson.

9   Again, we have no proof of injury.  There's no documentation to

10  support an injury.

11         **MR. PINEDO:**  Your Honor, on January 15th of this

12  year, two photos were uploaded and medical records were also

13  uploaded -- excuse me, medical records were uploaded earlier

14  this week, January 15th, that confirm Docetaxel usage.

15         **MS. CALLSEN:**  What about photos?

16         **MR. PINEDO:**  The deficiency, as I understood, was no

17  documents provided, and we provided the medical records.  With

18  regard to photos, I can pull the file right now, but I believe

19  the photos were uploaded, Your Honor.  I need to check the file

20  to make the confirmation on that.

21         **THE COURT:**  Okay.  The Court's going to grant 15 days

22  for you to confer with defense counsel.

23         **MS. CALLSEN:**  Just for the record, we have no proof

24  of injury, which would be photos, if that's what you're using.

25  So we don't have any photos.

1          **THE COURT:**  All right.

2          **MS. CALLSEN:**  Then there's one more with your firm,

3    Robin Stoops.  Her substantial incompleteness about her PFS is

4    that we have no proof of injury, no before photos, and the

5    photos that are uploaded are undated.

6          **MR. PINEDO:**  Your Honor, on January 15th, we uploaded

7    some chemo photos, both before and after.  And we have talked

8    to the client, and we can get a certification, that we're

9    having a difficulty with getting more complete photos because

10   she had a house fire.  But she has provided some level of

11   photos, and we can provide an affidavit to the Court in that

12   regard.

13         **THE COURT:**  Court's going to grant 30 days for an

14   affidavit.  As I appreciate it, you found some photos, and then

15   some right after chemo.

16         **MS. CALLSEN:**  We need dates.  So if you could confirm

17   the dates on the photos that you have provided, and then -- you

18   know, and, again, you have a continuing obligation, and then

19   that's fine, the affidavit, for whatever you cannot provide.

20         **THE COURT:**  Thank you.

21         **MR. PINEDO:**  Understood.  And just to be clear, we

22   uploaded, on the 15th, photos afterwards with dates.  We have

23   one prior photo from 1992 that we uploaded, and this is where

24   she said she had a house fire and she doesn't have other

25   photos.  We've asked her to reach out to her son and daughter

1  and see what they can find.  But we will provide an affidavit

2  within the 30 days in that regard.

3          **THE COURT:**  Thank you.

4          **MS. BRILLEAUX:**  Your Honor, Angela Chapman with

5  Niemeyer, Grebel & Kruse.  This is no signed declaration for

6  the PFS, and then no signed authorizations, and also no PTO 71

7  certification.

8          **MR. NIEMEYER:**  Good afternoon, Your Honor.  This is

9  Mark Niemeyer on behalf of Ms. Chapman from Niemeyer, Grebel &

10  Kruse.  Ms. Chapman, we were able to confirm and prove use of

11  Winthrop Docetaxel and provided photos, proof of injury.  We

12  then lost touch with Ms. Chapman for quite some time, but we

13  did reestablish contact with her very recently.

14          We would ask for 15 days to try to cure this as

15  we did -- we used a locating service and were able to locate

16  her.  And so we just got with her in the last couple of days.

17          **MS. BRILLEAUX:**  Your Honor, just to reiterate, this

18  is a deficiency for an unsigned PFS in addition to

19  authorizations and PTO 71.

20          **THE COURT:**  I'm going to grant 15 days because they

21  did -- it was --

22          **MR. NIEMEYER:**  Thank you.

23          **THE COURT:**  Thank you.

24          **MS. BRILLEAUX:**  The next one is Betty Gallegos, also

25  with Niemeyer, Grebel & Kruse.  This is no photos within five

1   years of treatment.

2           **MR. NIEMEYER:**  And Ms. Gallegos has submitted after

3   photos.  It is true that her before photos are slightly outside

4   of that five-year time frame, so we would request the affidavit

5   procedure that you've been talking about, and certainly

6   understand our continuing obligation.

7           **THE COURT:**  Court's going to grant 30 days for an

8   affidavit.

9           **MR. NIEMEYER:**  Thank you.

10          **MS. CALLSEN:**  The next plaintiff with the same law

11   firm is Rhonda Grimes.  Ms. Grimes has not submitted her

12   declaration.  There are no authorizations submitted.  And

13   there's no documentation of proof of injury submitted.

14          **MR. NIEMEYER:**  As far as Ms. Grimes is concerned,

15   we've made extreme efforts to locate her and communicate with

16   her.  We did think we had reestablished, and that's why we

17   didn't file a declaration, but that fell through as well.  We

18   understand what the result will be.

19          **THE COURT:**  This matter is dismissed with prejudice.

20          **MS. CALLSEN:**  Thank you.

21          **MS. BRILLEAUX:**  Your Honor, the next case is Ruby

22   Pratt, also with Niemeyer, Grebel & Kruse.  Again, no signed or

23   dated declaration, no authorizations, and no PTO 71

24   certification.  Just to note for the record, the PFS has been

25   submitted, so defendants don't understand why the signed

1    authorization wasn't provided along with the PFS.

2                **MR. NIEMEYER:**  The short answer, Judge, is Ms. Pratt

3    is now deceased.  We're taking the steps necessary to

4    substitute a party for her.  We've made contact with the

5    family.  The process is undergoing right now to do the

6    application for an estate administrator.  We filed a suggestion

7    of death recently, and we just ask that that process play out,

8    but we do know who the administrator will be.  We just need to

9    get her appointed in state court in Texas.

10               So what we would ask is that she be removed from

11   the show cause docket and we allow the suggestion of death and

12   substitution procedure to play out, please.

13               **THE COURT:**  I'm hesitant to not give you a deadline.

14   I'm going to give you 45 days.  I will tell you, because I

15   think -- I want to give a deadline.  But if the defendants, if

16   there has been, you know, the appropriate paperwork filed in

17   the Texas courts and this has not -- and an order has not been

18   signed because of a judge and we're waiting for it, please

19   don't put it back on the list.

20               **MR. NIEMEYER:**  Thank you, Your Honor.

21               **THE COURT:**  If, indeed, the appropriate -- that they

22   have taken the appropriate steps and it's just we're waiting

23   for a judge to sign, because sometimes that happens.

24               **MS. BRILLEAUX:**  Thank you, Your Honor.

25               **THE COURT:**  Thank you.

1            **MS. BRILLEAUX:**  The next case that I have is Debra

2     Bassett with Fernelius Simon.  This is no before photos within

3     five years of treatment.  Is anybody on the phone for Fernelius

4     Simon?

5            **MR. PERDUE:**  Yes.  This is Ryan Perdue, and also with

6     me is Brannon Robertson, for Debra Bassett.  This week we

7     uploaded a photo from 2006, which was slightly outside of

8     her -- the five-year date range.  So we would ask for the same

9     affidavit procedure that we've been discussing.

10            **THE COURT:**  Okay.  The Court's going to grant 30 days

11     to file an affidavit, and understanding your continuing

12     obligation to provide -- to update your plaintiff fact sheet.

13            **MR. PERDUE:**  Yes, Your Honor.

14            **MS. CALLSEN:**  Alice Bell with the same law firm.  In

15     her PFS, there's no proof of injury, there's no before photos,

16     and the authorization forms are not filled out properly such

17     that we can use them to obtain medical records.

18            **MR. PERDUE:**  Proof of use records were uploaded to

19     Centrality on January 14th.  A cure e-mail was sent.  The

20     authorization that was mentioned was corrected.  That was

21     uploaded to Centrality.  A cure e-mail was sent on that as

22     well.  This plaintiff has searched for before photos.  We've

23     spoken with her several times about that.  She's confirmed that

24     she has none that predate her treatment.  So on that particular

25     issue, we would request the affidavit procedure as well.

OFFICIAL TRANSCRIPT

1      **THE COURT:**  The Court's going to grant 30 days to

2  file an affidavit, and 15 days for defendants to confirm that

3  the other information was appropriate -- was satisfied.

4      **MS. CALLSEN:**  Thank you.

5          Marlene Chioda, with the same -- from the

6  Fernelius law firm.  We have no proof of injury, and also

7  there's no CMO 12 submissions.

8      **MR. PERDUE:**  This week we uploaded seven dated photos

9  on Ms. Chioda.  Five of those photos were within five years of

10  her treatment.  And we sent a cure e-mail on those as well.  So

11  we would ask for 15 days to confirm that that satisfies

12  defendant's requests.  Regarding the CMO 12 issue, we have sent

13  subpoenas to her providers.  We sent that on June 25th of 2018.

14  Thus far, we have not received a response to these subpoenas.

15  We've been back and forth with the hospital on it.  We've

16  continued to attempt to obtain product ID information on that.

17      **MS. CALLSEN:**  Okay.  You said you're continuing to

18  attempt product ID.  We have no dates of treatment either, so

19  it's hard to put the photos in the proper context.

20      **MR. PERDUE:**  I believe that our PFS -- the treatment

21  date was from 2011, and I believe that we uploaded -- yes, we

22  uploaded an amended plaintiff fact sheet with specific dates,

23  and we did that on Wednesday of this week.

24      **MS. CALLSEN:**  Can we have -- I mean, if they've

25  already uploaded, can we just have seven days to confirm?

OFFICIAL TRANSCRIPT

1     **THE COURT:**  Yes, that's fine.  And I think the

2  problem I'm having is the CMO 12.  It sounds like -- I'm not

3  sure where we are in the process.  This is what I'd like for

4  you all to do is to spend some time because I'm -- it sounded

5  like there was a request for records that's been out there, and

6  maybe I'm -- I dozed off.

7     **MS. BARRIOS:**  Your Honor, Dawn Barrios.  If I might,

8  I see on the list that there's a couple of clients that the

9  defendants have tagged as being deficient because of CMO 12.

10  Your order, as I understand it, is that this process could be

11  used for CMO 12 only if the plaintiff took absolutely no steps;

12  but if they were trying to get the information, they shouldn't

13  be on the list for CMO 12.

14     **MS. CALLSEN:**  And I understand.  We have a laundry

15  list of all the deficiencies.  The plaintiffs are on this list

16  because their PFSs are not substantially complete.  In

17  reiterating that laundry list, sometimes you do have CMO 12 as

18  well.  But I can assure Ms. Barrios, we don't have anybody on

19  the list just because.

20     **THE COURT:**  Okay.  So we're satisfied with the rest,

21  and so you're asking for seven days.

22     Okay.  I need to take a quick break, and I'm not

23  even leaving the courtroom, but just everybody sit tight for

24  just a minute.

25     (WHEREUPON, the Court took a recess.)

OFFICIAL TRANSCRIPT

1        THE COURT:  Okay.  I'm back.

2        MS. BRILLEAUX:  Okay.  Did you read -- Ms. Barrios,

3   did you read the ones into the record that had the late cures,

4   the late dismissals?

5        MS. BARRIOS:  Not for this batch.  June Jensen filed

6   a dismissal.  The record Doc is 5944.

7        MS. BRILLEAUX:  The next case that I have is Shirley

8   Laverne, and this is photos that are not dated and no signed

9   declaration.

10        THE COURT:  Wait.  I'm sorry, Ms. Brilleaux.  I'm

11   sorry.  I don't mean to interrupt you, but what happened with

12   June Jensen?  Because my last notes -- I'm sorry.

13        MS. BARRIOS:  She filed a dismissal, and the Record

14   Doc is 5944.

15        THE COURT:  Okay.  I just needed to mark this.  Okay.

16   Thank you.

17        MS. BRILLEAUX:  Thank you.

18        THE COURT:  All right.  Shirley Laverne.

19        MS. BRILLEAUX:  Yes.  That is undated photos, no

20   signed declaration.

21        MR. PERDUE:  On this plaintiff, Your Honor, we

22   uploaded, this week, on Monday I believe, dated photos from --

23   one photo from two years prior to her treatment, one recent

24   photo.  Plaintiff indicated that those were all the photos she

25   could find.  We also uploaded a signed and dated PFS

OFFICIAL TRANSCRIPT

1    declaration.  We would just request 15 days to confirm that.
2            THE COURT:  Okay.  Court's going to grant 15 days for
3    defendants to confirm.
4            MS. BRILLEAUX:  Thank you.
5                    Jontue Perot, no before photos and no after
6    photos.
7            MR. ROBERTSON:  Yes.  Judge, we uploaded after photos
8    on Wednesday.  And we have conferred with the client several
9    times.  She says she has no before photos, and we'd just ask
10   for the same order that you've given to similar plaintiffs.
11           THE COURT:  I'm having trouble actually hearing you.
12           MR. ROBERTSON:  Yes, I'm sorry, Judge.  Let me try
13   again.  We have after photos for her that have been uploaded.
14   We do not have any before photos.  She says she doesn't have
15   any.  We're happy to give an affidavit to that effect.
16           THE COURT:  Okay.  The Court's going to grant 30 days
17   for the affidavit.
18           MS. BRILLEAUX:  And could we get 15 days to confirm
19   the after photos?
20           THE COURT:  15 days to check.  Yes.
21           MS. BRILLEAUX:  Thank you, Your Honor.
22                    Joan Simms, no before photos.
23           MR. ROBERTSON:  Yes, Judge, we've uploaded those as
24   well on January 9th, and they were dated from July 2014, which
25   is within five years of her treatment date.

1          **MS. BRILLEAUX:**  Your Honor, I have that treatment

2    began on June of 2014, so that would be just one month after

3    chemo began for the before photo.

4          **MR. ROBERTSON:**  Right.  That's correct.  I think she

5    sent it in.  It's a month before she started treatment.

6          **MS. BRILLEAUX:**  So it sounds like we only have after

7    photos, and we do not have any before photos.

8          **THE COURT:**  I think what he's saying is these are a

9    month before she started treatment.

10         **MS. BRILLEAUX:**  So my notes, counsel, show that the

11   photo is dated July 2014 and that the first chemo began on June

12   of 2014.

13         **MR. ROBERTSON:**  I've got it -- I've got it reversed.

14   I'm happy, Judge, just to move things along, confer about that,

15   and then if we need to get her a photo, we can.

16         **THE COURT:**  Why don't we do this:  I'm going to grant

17   15 days for you all to confer.

18         **MS. BRILLEAUX:**  Thank you, Your Honor.

19              Linda Vaillancourt, no before photos.

20         **MR. ROBERTSON:**  Judge, we uploaded that this week.

21   Her date of treatment was 2012, and the before photo is from

22   2009.

23         **THE COURT:**  Okay.  When were those photos uploaded?

24         **MR. ROBERTSON:**  They were uploaded -- we just got

25   them in yesterday, a hard copy from her, and so we uploaded

1  them yesterday.

2          **THE COURT:**  Grant defendants 15 days to review.

3          **MS. BRILLEAUX:**  Thank you, Your Honor.

4          **MS. CALLSEN:**  We're switching to another law firm,

5  the Marc J. Bern & Partners.  Joanne Boots is the first

6  plaintiff on their list.  We have no documents supporting proof

7  of injury, no documents supporting proof of use, the

8  declaration's not submitted, there's no authorizations, in

9  addition, there's no CMO 12 or PTO 71 sufficient.

10          **MS. HUMPHREY:**  Debra Humphrey from Marc J. Bern &

11  Partners, Your Honor.  We have tried repeatedly to get in touch

12  with our client to cure these deficiencies, called, e-mailed,

13  letters, certified mail, sent and signed, but she has not been

14  responsive.

15          **THE COURT:**  This matter is dismissed with prejudice.

16          **MS. CALLSEN:**  The next plaintiff is Orelia Castille,

17  no proof of use, no authorizations, or limited authorizations,

18  and some of what we do have are not filled out properly.

19          **MS. HUMPHREY:**  And this is Debra Humphrey again.  We

20  just uploaded for Castille this morning fully completed

21  authorizations.  And as of 11:36 eastern time, fully compliant

22  with signatures on those authorizations.  We uploaded proof of

23  use on the 15th of January, before and after photos on the 3rd,

24  and an amended plaintiff fact sheet with the verification on

25  the 15th as well.

OFFICIAL TRANSCRIPT

1          **MS. CALLSEN:**  The 15th of January?  I'm sorry, I
2     couldn't understand.
3          **MS. HUMPHREY:**  Yes.
4          **THE COURT:**  The Court's going to grant 15 days to
5     review.
6          **MS. BRILLEAUX:**  Loretta Cunningham, also with Marc J.
7     Bern & Partners, no before photos within five years of
8     treatment.
9          **THE COURT:**  Hello?
10         **MS. HUMPHREY:**  I'm sorry, this is Debra Humphrey for
11    Loretta Cunningham.  We uploaded photos on January 8th.  And
12    I'm sorry, I didn't catch counsel's remaining...
13         **MS. BRILLEAUX:**  Counsel, our notes have that the
14    photos are not within five years of treatment.
15         **MS. HUMPHREY:**  Okay.  If I could have some time to
16    confer with my client and get photos that are within five years
17    or an affidavit stating that she has none.
18         **THE COURT:**  The Court's going to grant 30 days.
19         **MS. BRILLEAUX:**  Your Honor, could we have 15 days
20    since they represent that they have some uploaded?
21         **MS. HUMPHREY:**  Well, we've already uploaded them.
22         **MS. BRILLEAUX:**  I'm sorry, 30 days for the affidavit?
23         **THE COURT:**  30 days for the affidavit.  If you want
24    to review, 15 days.
25         **MS. BRILLEAUX:**  Understood.  Thank you.

OFFICIAL TRANSCRIPT

1      **MS. HUMPHREY:**  I didn't catch if there was anything
2  else.
3      **MS. CALLSEN:**  The next plaintiff is Nancy Dannhauser,
4  no documentation of proof of use, the declaration has not been
5  submitted, nor do we have a CMO 12 submission.
6      **MS. HUMPHREY:**  We uploaded the amended plaintiff fact
7  sheet and declaration on the 18th -- oh, that's today, so this
8  morning.  And a PTO 71 statement on the 18th.  We're waiting
9  for the CMO certification from the facility, which we
10  requested.  I'd like, if possible, some time for us to get a
11  response from the facility, and if we're not able to, then get
12  the necessary declaration to counsel.
13      **MS. CALLSEN:**  Could we get 15 days, please?
14      **THE COURT:**  So ordered.
15      **MS. BARRIOS:**  Your Honor, I'd just like to point out
16  that it was mentioned that she has no CMO 12 submission, and if
17  plaintiff's counsel --
18      **THE COURT:**  That is not the reason that anything's
19  going to be dismissed, but I think it was on the...
20      **MS. BARRIOS:**  I understand.  I just wanted to say it
21  for the record for this counsel.  Thank you.
22      **THE COURT:**  Thank you.
23      **MS. CALLSEN:**  The next plaintiff is JoAnn McLeod.
24  The PFS has not -- still doesn't have any proof of use.  We
25  don't have a proof of injury.  The declaration's not been

OFFICIAL TRANSCRIPT

1    submitted.  We have no authorizations.  In addition, no CMO 12

2    and PTO 71 submissions.

3            **MS. HUMPHREY:**  Your Honor, this is Debra Humphrey

4    again.  For Ms. McLeod, we were unable to reach our client.

5    And on January 4th, we were notified by the plaintiff's son

6    that she has passed away.  So we notified counsel for

7    defendants that we weren't able to obtain the necessary

8    information and documents and that seems because she passed

9    away.  We filed a suggestion of death on the 16th and

10   respectfully ask that the suggestion of death and substitution

11   of plaintiff happen.

12           **MS. CALLSEN:**  Do you have a plaintiff representative

13   willing to step in?

14           **MS. HUMPHREY:**  We do, and I believe -- give me one

15   second -- it is --

16           **MS. CALLSEN:**  And can you also tell me when she died?

17           **MS. HUMPHREY:**  She died -- I can.  She died on -- it

18   appears she passed away October 17th, 2017, and the -- from our

19   discussion with --

20           **MS. CALLSEN:**  Your Honor, that was over a year ago.

21           **THE COURT:**  I'm not going to extend this process

22   after she's been -- you know, if she had died within the last

23   six months, that's one thing.  This matter is going to be

24   dismissed with prejudice.

25           **MS. CALLSEN:**  Thank you.

1           The next plaintiff is Linda Norvel.  We have no

2  documentation of proof of injury, the declaration's not

3  submitted, neither do we have authorizations, and she hasn't

4  complied with the other CMOs either.

5           **MS. HUMPHREY:**  And we were notified on Tuesday, the

6  15th, that this plaintiff also passed away, but the daughter

7  did advise that she does want to pursue the matter and is in

8  the process of being appointed administrator of the estate.

9  And we filed a suggestion of death and a motion to stay

10  yesterday.

11           **MS. BARRIOS:**  Your Honor, there was also a suggestion

12  of death filed on the 15th, that's Record Doc 5885.

13           **THE COURT:**  The 15th of?

14           **MS. BARRIOS:**  January.

15           **THE COURT:**  Okay.

16           **MS. CALLSEN:**  Your Honor, the one issue with this

17  that we want to flag is that she died in May of 2018, that was

18  what the suggestion of death said.  But when we looked in

19  Centrality, she submitted an amended PFS in August of 2018,

20  which we find remarkable.

21           **THE COURT:**  Okay.  I think we just need to see what's

22  going on here.  I'm going to grant 30 days to figure out what

23  on earth is going on in this file and when and if -- when the

24  plaintiff died and what actions have been taken subsequent to

25  death by family members or heirs.

1          MS. CALLSEN:  The next plaintiff with the same law

2     firm is Catherine Sites.  We have no documentation of proof of

3     injury and no authorizations.  I'm sorry, I thought that was

4     the same firm.

5          MR. GARDNER:  It is.  Your Honor, Andrew Gardner from

6     the Johnson Law Group.  We were notified on January 8th that

7     apparently the firm Murphy & Partners -- Marc Bern & Partners,

8     sorry, apparently also represents our client.  We've

9     represented this client and elected not to file her case at

10    that time.  The client had notified the firm that she was

11    working with us, and so we have not had an opportunity to

12    appear in this case or comply with the obligations of discovery

13    in this case.

14               I believe last night Marc Bern & Partners filed

15    a motion to withdraw as counsel and a motion to stay the

16    discovery while that happens so that we can step in in this

17    case and take the case forward which is in accordance with the

18    plaintiff's wishes.

19          MS. CALLSEN:  I would object to the motion to stay

20    discovery.

21          THE COURT:  I'm not going to do that, and I have not

22    allowed anybody to withdraw as counsel.  We've had motions to

23    substitute counsel.

24          MR. GARDNER:  And I think that's appropriate, Your

25    Honor.  Again, we didn't know that there was another firm that

OFFICIAL TRANSCRIPT

1   had filed this case until January 8th.  So we were kind of

2   caught flatted-footed here.  We'd be happy to take this case

3   forward, but we've not been entered into this docket, this case

4   for Ms. Sites.  So we need some time to make sure that we can

5   substitute in and begin the process of the plaintiff fact sheet

6   and everything along those lines.

7           MS. CALLSEN:  The process should have been begun

8   months ago.  We're willing to say 30 days, but, I mean,

9   everything should be in and the process should have started.

10          THE COURT:  I'm going to grant 30 days.

11          MS. CALLSEN:  Thank you.

12          MR. GARDNER:  Thank you, Your Honor.

13          MS. HUMPHREY:  Thank you, Your Honor.

14          MS. CALLSEN:  The next one I have is Iris Sosa.  In

15  this PFS, there's no documentation of proof of injury, no proof

16  of use, and the declaration has not been submitted, nor do we

17  have authorization we can use.

18          MS. HUMPHREY:  Debra Humphrey from Marc J. Bern &

19  Partners.  For Ms. Sosa, we have, again, attempted to contact

20  her to obtain the required information and documents multiple

21  times via letter and certified mail that she signed, but she

22  hasn't contacted us back.  E-mails, voice mails left, she...

23          THE COURT:  This matter is dismissed with prejudice.

24          MS. CALLSEN:  Thank you.

25              Your Honor, I need to leave so Nick is going

1   to -- Nick Insogna is going to take over for me for the rest of

2   them only.  Thank you very much.

3           THE COURT:  Thank you.

4           MS. BRILLEAUX:  I think we are moving to a new law

5   firm now, Hilliard, Martinez [sic] and Gonzales.  The first

6   plaintiff I have is Brenda Atkins, no before photos.

7           THE COURT:  Is anybody on the line for Hilliard,

8   Martinez [sic] and Gonzales?

9           MR. PINEDO:  Yeah, Your Honor, Chris Pinedo.  I have

10   Brenda Atkins with the Hilliard firm.  Yesterday we uploaded

11   some before and after photos.

12           THE COURT:  Okay.  The Court's going to grant 15 days

13   to confirm with defense counsel.

14           MS. BRILLEAUX:  Thank you, Your Honor.

15            The next one is Shaheen Hashmi, and I have no

16   proof of use, and no medical records received at all.

17           MR. PINEDO:  I have here that on the 15th medical --

18   excuse me, photos were uploaded.

19           MS. BRILLEAUX:  Counsel, this is proof of use,

20   medical records.

21           MR. PINEDO:  My understanding that the photographs

22   is -- uploaded those yesterday.  I'd like to have 15 days to

23   examine what medical records exactly were uploaded.  I was

24   prepared to talk about the photographs because I understood

25   that was the issue with regard to the deficiency, and those

 1  were just recently uploaded.
 2          **MS. BRILLEAUX:**  For Shaheen Hashmi?
 3          **MR. PINEDO:**  Yes.
 4          **MS. BRILLEAUX:**  The deficiency is for no proof of use
 5  with no medical records uploaded.
 6          **MR. PINEDO:**  The printout I had, plaintiff failed to
 7  provide proof of injury documents, photographs were not dated.
 8          **THE COURT:**  I'm going to grant 15 days for you all to
 9  confer, if there was some -- do you have the -- you don't know
10  if you have the medical records.  Do you know if you have the
11  medical records for Ms. Hashmi?
12          **MR. PINEDO:**  I have some of the file here.  Some of
13  it's electronically --
14          **THE COURT:**  I'm going to grant 15 days for you to
15  confer.
16              Okay.  Let's go to the next one.
17          **MS. BRILLEAUX:**  Johnsah Hayes.  This is undated
18  photographs, and also no signed or dated declaration, and no
19  PTO 71 declaration.
20          **MR. PINEDO:**  Chris Pinedo here.  I'd like to ask for
21  additional time for this client.  We lost contact with this
22  client last summer, then we found out in November she was
23  incarcerated.  The family would not participate, telling us
24  where she was incarcerated.  We did a search.  We found her in
25  December.  We have been in contact with her since December, but

1  her being incarcerated, no phones, we would like to ask for 30
2  days to try to clear this up.
3       MS. BRILLEAUX:  Respectfully, Your Honor, it sounds
4  like the client has not participated since she would not give
5  counsel her location.  We think it should be dismissed with
6  prejudice.
7       THE COURT:  Have you talked to her?
8       MR. PINEDO:  We have not talked to her recently.  We
9  talked to her before she was incarcerated.
10      THE COURT:  That's not recent.  Not since?
11      MR. PINEDO:  I'm sorry, Your Honor?
12      THE COURT:  Have you talked to her since her
13 incarceration?
14      MR. PINEDO:  We have not.
15      THE COURT:  This matter is going to be dismissed with
16 prejudice.  She had an obligation to keep you informed.
17      MS. BRILLEAUX:  Thank you, Your Honor.
18           The next plaintiff is Zosie Iacopetti, and this
19 is we have received before photos, but they are not dated.
20      MR. PINEDO:  Your Honor, we uploaded six photos that
21 were just -- were all dated just within the last day or two.
22      THE COURT:  The Court's going to grant defendants 15
23 days to confirm.
24      MS. BRILLEAUX:  Thank you, Your Honor.
25           And going back to Hashmi, on the proof of use,

1   can we agree that if we have not received any medical records

2   establishing proof of use that the case should be dismissed

3   within 15 days?

4           **THE COURT:**  I'm not going to do that.  I think it's

5   just going to have to get back on the call docket.  Because as

6   I appreciate it, there were records, there were not records.

7   I'm just not prepared to do that.

8           **MS. BRILLEAUX:**  Thank you, Your Honor.

9               The next one is Gracie Johnson.  There are three

10  deficiencies here, no proof of use, no before photos, and no

11  declaration.

12          **MR. PINEDO:**  Your Honor, the PTO 71 declaration was

13  cured on January the 15th.  And we also cured with regard to --

14  reached out to the client with regard to a before photo, and

15  she is searching for those, but at this time, we do not have a

16  before photo.

17          **MS. BRILLEAUX:**  Your Honor --

18          **THE COURT:**  Okay.  What about proof of use?

19          **MS. BRILLEAUX:**  Thank you.

20          **MR. PINEDO:**  Checking that right now.

21          **MS. BRILLEAUX:**  Counsel did state that he submitted a

22  PTO 71 declaration, that's not among the deficiencies listed.

23  We don't have a declaration verifying the PFS.

24          **MR. PINEDO:**  Proof of use that I'm looking at here --

25  Your Honor, this is similar in that I thought the primary issue

OFFICIAL TRANSCRIPT

1  was the photographs, and I need to review exactly what medical

2  records we have in the file.  We'd like to have 15 days on this

3  matter.

4          **MS. BRILLEAUX:**  We don't have a declaration for the

5  PFS either.

6          **THE COURT:**  Did you file a declaration for the PFS?

7          **MR. PINEDO:**  It's my understanding we did, Your

8  Honor, but I can't place my hands on it exactly at this moment.

9          **THE COURT:**  I'm going to grant 15 days.  But when you

10 all send out the deficiencies, do you say specifically what the

11 problem is?

12         **MS. BRILLEAUX:**  The deficiencies were outlined in the

13 deficiency notices.

14         **MS. BARRIOS:**  I agree.  The deficiencies are, but the

15 charts that we have don't really correspond to what's in the

16 notice of deficiency.  Because I suspect they do what I would

17 have done, they do it at the beginning when they do the notice

18 of deficiency, and then later on, they look again and add more

19 things, and that sometimes isn't conveyed.

20         **MS. BRILLEAUX:**  I think counsel is aware of the

21 deficiencies in their submissions.

22         **MR. PINEDO:**  It was not my understanding that medical

23 records were missing on this.

24         **THE COURT:**  All right.  That's going to be something

25 we're going to talk about in our afternoon meeting.  Today we

```
 1  just need to get through this never-ending list.  Okay.  I'm
 2  going to grant 15 days to just figure out what's going on.
 3          MS. BRILLEAUX:  Can we have 15 days to cure all three
 4  deficiencies?
 5          THE COURT:  Sure.
 6          MS. BRILLEAUX:  Thank you.
 7              The next is Cheryl Jones, no before photos.
 8          MR. PINEDO:  With regard to Cheryl Jones, I have that
 9  we cured that on the 16th.
10          THE COURT:  Okay.  The Court's going to grant 15 days
11  for defendants to confirm.
12          MS. BRILLEAUX:  Sheri Knight, no before photos.
13          MR. PINEDO:  So on that what I have is that on the
14  17th, just yesterday, we uploaded some photos.
15          THE COURT:  The Court's going to grant 15 days to
16  confirm.
17          MS. BRILLEAUX:  Elizabeth McCrary, no after photos.
18  To clarify, we have one from 2011, but we do not have a current
19  after photo.
20          THE COURT:  No current after photo.  Okay.
21          MR. PINEDO:  It's my understanding that we just
22  uploaded those within the last two days, Your Honor.  Could we
23  have 15 days on that?
24          THE COURT:  Yes.
25          MS. BRILLEAUX:  Your Honor, to clarify, I think we
```

OFFICIAL TRANSCRIPT

1  did receive after photos, but they weren't current.  Could we
2  have 15 days to cure that deficiency?
3          **THE COURT:**  That's what I said, 15 days.
4          **MS. BRILLEAUX:**  Thank you.
5                  Reba Y. Schlaepfer, no before photos within five
6  years of treatment.
7          **MR. PINEDO:**  Yes, Your Honor.  We have submitted a
8  photo that's more than five years prior just recently.  Our
9  client now has Alzheimer's, and they're in Washington state.
10  The husband has power of attorney.  We'd like to have 30 days
11  on that because we talked to him, and he is going to try to get
12  us some photos.  Apparently, he had some problems with the
13  weather and with the snowstorm there.  But that is recent in
14  the development of Alzheimer's and it's created an extra level
15  of --
16          **THE COURT:**  All right.  The Court's going to grant 30
17  days for either photographs or an affidavit from
18  Ms. Schlaepfer's husband.
19          **MS. BRILLEAUX:**  Thank you, Your Honor.
20          **MR. PINEDO:**  Thank you, Your Honor.
21          **MS. BRILLEAUX:**  Joanne Thompson, no before photos.
22          **MR. PINEDO:**  Your Honor, on that one, we had PTO 71
23  and after photos were uploaded.  This is another client where
24  we had difficulty.  They cannot -- they haven't been able to
25  currently locate some photos.  I'd like to have 30 days on that

1    one as well.

2              **THE COURT:**  I'll give you 30 days for the affidavit

3    or photos.

4              **MR. PINEDO:**  Thank you, Your Honor.

5              **THE COURT:**  Thank you.

6              **MS. BRILLEAUX:**  And that was the last one for

7    Hilliard Martinez [sic].  Now starting with the Mulligan firm.

8              **THE COURT:**  Yes.

9              **MS. BRILLEAUX:**  I know Mr. Orr is here.  The first

10   case that I have is Emma Brown.  Here we have no proof of use,

11   no before photos, no after photos, and no signed

12   authorizations.

13             **MR. ORR:**  The signed authorizations was cured.  As

14   for the records, we have -- and I can provide it to the Court

15   if you wish, we have ongoing efforts commencing on 12/7/2017 to

16   obtain records, follow-up 12/19/2017, 2/14/2018, 2/27/2018, and

17   so on through current.  And as of yesterday, I asked my legal

18   assistant to find out why we don't have the records and when we

19   can expect to get them.

20             She was told there is a problem with their

21   system.  The representative said there is something preventing

22   her from seeing the request and because of this, she can't give

23   me a time line.  So I don't know when we're going to get

24   records, but we have been diligently trying.

25             As for the photos, Ms. Brown is 87 years old,

OFFICIAL TRANSCRIPT

```
 1   and we have had difficulty just with the process of getting her
 2   to even understand what it is she needs to provide.  Her
 3   daughter is supposed to be working with her.  We had hoped to
 4   get photos this week, we didn't.  I would ask for 15 days to
 5   get those.
 6           MS. BRILLEAUX:  Your Honor, just to add, I do have a
 7   note that the authorizations were uploaded, but they are
 8   undated.  Can we have 15 days to cure that deficiency as well?
 9           MR. ORR:  It's already been cured.  The Document No.
10   is 287861.
11           MS. BRILLEAUX:  Okay.  Because I have both of them
12   that were submitted were undated, but we will check and
13   confirm.
14           THE COURT:  15 days.
15           MR. ORR:  If they need to be dated and I didn't do
16   that, I will date them.
17           MS. BRILLEAUX:  Thank you, counsel.
18               Florence Coukoulis.
19           MR. ORR:  No basis to oppose, Your Honor.
20           THE COURT:  This matter is dismissed with prejudice.
21           MS. BRILLEAUX:  Virginia Craft, no before photos, no
22   after photos, and no PTO 71 verification.
23           MR. ORR:  We've been here a long time, Your Honor,
24   and everybody's tired and everybody wants to go home, but I
25   have an important issue, it's procedural.  And if it please the
```

1   Court, I would like permission to hand up some paperwork

2   because I'm going to read from it and refer to it.  It will

3   make things go faster if I'm allowed to do that.

4            **THE COURT:**  Yeah.  What is it?

5            **MR. ORR:**  It concerns late deficiency notices,

6   grossly late deficiency notices.

7            **THE COURT:**  Oh.

8            **MR. ORR:**  It's a big issue, Your Honor, and I'm sorry

9   to stop things down, but we got to talk about it.

10           **MS. BRILLEAUX:**  Your Honor, I would say, as we've

11  done with the other new issues that have come up today, that we

12  move through this list and address this at the next show cause

13  hearing, especially since this was not raised to us at any time

14  prior to today.  I'm not prepared to --

15           **MR. ORR:**  That is incorrect.  I have the e-mails.  I

16  had a meet and confer, extensive meet and confers.

17           **MS. BRILLEAUX:**  And I should clarify, you didn't

18  have --

19           **THE COURT:**  Let me -- all right.  Does this cover the

20  remainder of your list, Mr. Orr?

21           **MR. ORR:**  It covers most of the remainder of my list.

22  What we can do, Your Honor, is I would love to present that

23  argument either now or later.  I'm happy to do it in writing.

24  It's an important issue, and I'm not alone.

25           **THE COURT:**  No.  That's fair enough.  What I'd like

 1  to do is let's go to those that have not been raised late, that
 2  that issue is not your issue about late raised deficiencies.
 3  Let's go to those that are not covered by that, and then I'd
 4  like to do that.  But I have to tell you, and I'm not trying to
 5  put you off, I know you have been here all day, but I have oral
 6  argument, and I haven't eaten.
 7          MR. ORR:  I have dad duty.  I have to pick up my
 8  daughter from school at 4:00, and I have to fly back to Dallas,
 9  so I'm fine with putting this off.
10          THE COURT:  Perhaps what we should do is invite
11  you -- you may be the one man invited -- to our after-work day
12  to review this.  But I'd like to --
13          MR. ORR:  Thank you.
14          THE COURT:  -- I would like -- because I want to know
15  what it is.  And perhaps the thing to do is -- I don't know if
16  I need you here, but if you would submit something in writing
17  that when we're reviewing this process, I will know.  Because
18  this is the first I'm hearing of it.  And I want to make sure
19  that I'm aware of what the issues are.
20          MR. ORR:  I would like to represent to the Court that
21  I've talked to other plaintiffs' counsel, and this is not
22  unique to my firm.  So I will provide writing.
23              Virginia Craft, if we can stay on her, we've
24  cured the deficiencies, and we just did that last night and
25  this morning, so 15 days to confer on that.

1          THE COURT:  The Court's going to grant 15 days to

2    confirm.

3          MS. BRILLEAUX:  I'm sorry, which case was that?

4          MR. ORR:  Virginia Craft, the one we're on that you

5    served a late deficiency notice.

6          MS. BARRIOS:  Your Honor, Dawn Barrios for the

7    plaintiffs' steering committee.  Mr. Orr is exactly correct.

8    This issue has been bubbling around.  The PSC had approached

9    Adrienne Byard more than a year about this, and we got nowhere.

10   So I'm here to say that Mr. Orr is correct.  We have had meet

11   and confers.  He's had meet and confers.  This is an issue that

12   we can take up at our meeting.

13         THE COURT:  But I'd like to hear --

14         MR. ORR:  Liaison counsel has been copied on the

15   e-mails, so Ms. Barrios is well acquainted with the issues.

16         THE COURT:  Right.  But I'd like to hear from you,

17   but today is not -- because I have oral argument and just...

18         MR. ORR:  Absolutely.  Absolutely.

19         MS. BRILLEAUX:  Thank you, Your Honor.  And I'm

20   certainly not disputing that someone on the defense team has

21   been made aware of it, but I have not been made aware of it.

22   Personally, I'm not prepared to respond to that today.  So

23   thank you, and I appreciate it.

24         MS. BYARD:  I happen to be on the phone too, guys.  I

25   would welcome the opportunity to continue meeting and

```
 1   conferring.  We haven't had any follow-up correspondence since
 2   I thought I had satisfactorily addressed your concerns, Dawn,
 3   almost a year ago.  So if there are still issues that you'd
 4   like to discuss, we're certainly available to talk about those
 5   before -- before bringing them to the attention of the Court,
 6   hopefully.
 7              THE COURT:  Who is this?
 8              MS. BYARD:  Ms. Byard, who Ms. Barrios had referenced
 9   as being the point of contact.
10              THE COURT:  Okay.  All right.
11              MS. BARRIOS:  Thank you, Adrienne.  I'll definitely
12   follow up with you.
13              THE COURT:  All right.  Let's go to the next one
14   that's not an issue -- that this issue is not...
15              MS. BRILLEAUX:  Sure.  Do you want to --
16              MR. ORR:  It's going to be an issue in most of them,
17   Your Honor.
18              THE COURT:  All right.  Tell me where it's not an
19   issue.
20              MS. BRILLEAUX:  Should we go through the list just so
21   that we don't miss anybody?
22              THE COURT:  Right.  Why don't we -- you know what,
23   I'm just going to read them out loud, I'm going to do it real
24   quick, and tell me timeliness is an issue, and we'll put that
25   one off.
```

OFFICIAL TRANSCRIPT

1          **MR. ORR:**  Okay.

2          **THE COURT:**  Okay.  Beverly Davis.

3          **MR. ORR:**  Timeliness is an issue.

4          **THE COURT:**  Okay.  Barbara Devine.

5          **MR. ORR:**  Timeliness is an issue.

6          **THE COURT:**  Jo Fink.

7          **MR. ORR:**  Timeliness is an issue.

8          **THE COURT:**  Angelina Hernandez.

9          **MR. ORR:**  Timeliness is an issue, Your Honor.

10         **THE COURT:**  Cathy Johnson.

11         **MR. ORR:**  I have a lot of stuff in my Cathy Johnson

12    file.  Yes, timeliness is an issue in this case, too, Your

13    Honor.

14         **THE COURT:**  Latalya Johnson Jenkins.

15         **MR. ORR:**  Timeliness is an issue in that case, but we

16    have no basis to oppose dismissal, so there's no need to keep

17    that one going.

18         **THE COURT:**  This matter is dismissed with prejudice.

19         **MS. BRILLEAUX:**  Thank you, Your Honor.

20         **THE COURT:**  Okay.  Kirsten Peterson.

21         **MR. ORR:**  I don't have timeliness as an issue -- oh,

22    wait, I'm sorry, I do, Your Honor.

23         **THE COURT:**  Marisol Quintero Mojica.

24         **MR. ORR:**  Timeliness is an issue in that one as well,

25    Your Honor.

OFFICIAL TRANSCRIPT

1          **THE COURT:**  Okay.  Those are your -- and we will take
2     those up.  I'm going to ask you to prepare something in
3     writing, and I'd like that by -- today is Friday, if I could
4     have something by next Friday.
5          **MR. ORR:**  Next Friday.
6          **THE COURT:**  I would appreciate it.
7          **MR. ORR:**  Also, Your Honor, on a lot of these, we
8     have cured the deficiencies.  So I would welcome the
9     opportunity to engage in a meet and confer with Sanofi --
10          **THE COURT:**  Absolutely.
11          **MR. ORR:**  -- so that we can resolve those where it's
12     not an issue.
13          **THE COURT:**  If you have satisfied -- well, if you
14     want to go back and do these really quickly.  I just didn't
15     want -- if there are some that you now can tell me are
16     satisfied.
17          **MR. ORR:**  I'm happy to do that, Your Honor.
18          **THE COURT:**  And then I'll give you -- the defense
19     counsel 15 days to get you...
20          **MR. ORR:**  Beverly Davis, if we can circle back to
21     her.
22          **THE COURT:**  Okay.
23          **MR. ORR:**  We were advised by the defendants that
24     photographs were not dated.  We provided dated photographs on
25     1/9/19.  Before photos within five years of treatment were not

OFFICIAL TRANSCRIPT

1    provided.  We uploaded, on 1/9/19, a before photo.  And the
2    properly signed and dated declaration, that issue was just the
3    declaration wasn't dated.  We've cured that on 12/20/18.
4              MS. BRILLEAUX:  Your Honor, our notes reflect that a
5    before photo -- a purported before photo was uploaded dated
6    December 13th, 2006, but that was more than a year after
7    treatment began in October of 2005.
8              MR. ORR:  We disagree, Your Honor.  I had an e-mail
9    that I sent.
10             THE COURT:  Okay.  Wait.  I'm going to grant you all
11   15 days to meet and confer on that issue.
12             MR. ORR:  Sure.
13             THE COURT:  Any others that --
14             MR. ORR:  Yes, Your Honor, Jo Fink.  We cured that
15   one after the time period for when -- that Wednesday morning
16   deadline, but we uploaded before photos within five years of
17   treatment on 1/17/19.  The PTO 71, we uploaded on 1/11/19.
18             THE COURT:  Okay.  Grant 15 days.
19             MS. BRILLEAUX:  Thank you, as the 1/17 was after the
20   cutoff.
21             THE COURT:  Right.
22             MR. ORR:  Kirsten Peterson is also we cured after the
23   cutoff, and we can do 15 days to meet and confer on that.
24             THE COURT:  Okay.  I'll grant 15 days.
25             MR. ORR:  Thank you, Your Honor.

1    **THE COURT:**  Thank you.

2    **MS. BRILLEAUX:**  The next set of cases we have are

3    with Reich & Binstock.  I have Cheryl Anderson, no proof of

4    use.

5    **THE COURT:**  Is someone on the phone for Reich &

6    Binstock.

7    **MR. ROTH:**  Yes, Your Honor, Steve Roth.  Cheryl

8    Anderson falls into the category that we discussed earlier this

9    morning.  We just got some medical records in from her.  We're

10    optimistic that one way or another they will be determinative

11    of whether we can provide proof of use.  So we'd ask for a

12    little bit of time to get those records reviewed.

13    **MS. BRILLEAUX:**  Your Honor, just to note for the

14    record, this case has been pending for over a year.  It was

15    filed in January of 2018.

16    **THE COURT:**  But has -- what is missing in this one?

17    **MS. BRILLEAUX:**  We have no proof of Docetaxel use

18    whatsoever, no medical records.  It's been --

19    **THE COURT:**  All right.  And you just --

20    **MS. BRILLEAUX:**  -- pending for a year.

21    **THE COURT:**  Okay.  All right.  You just received your

22    medical records?

23    **MR. ROTH:**  In the last 48 hours, yes, Judge.

24    **THE COURT:**  All right.  I'm going to give you 15 days

25    to confirm.

OFFICIAL TRANSCRIPT

1          **MR. ROTH:**  Thank you, Your Honor.

2          **MR. INSOGNA:**  Your Honor, the next case we have for

3    Reich & Binstock is Alicia Bingham.  This is no proof of injury

4    documentation.

5          **MR. ROTH:**  Your Honor, we've -- this is a homeless

6    client.  We have lost contact with her, not through lack of

7    effort, but she has -- when I talked to her, she's --

8          **THE COURT:**  Hello?

9          **MR. ROTH:**  And that may be -- that may be the extent

10   of what we're going to be able to provide on this one, to be

11   totally honest.

12         **THE COURT:**  We missed, I think, the critical part of

13   this conversation, which is:  Have you had contact with her?

14         **MR. ROTH:**  No.  We have tried to make contact with

15   her.  I have not talked to her in a while.  I've not been able

16   to -- she's homeless.

17         **THE COURT:**  Okay.  This matter is dismissed with

18   prejudice.

19         **MS. BRILLEAUX:**  The next case is Randie Bowen, no

20   proof of use, no before photos, and no after photos.

21         **MR. ROTH:**  We've reached out and requested photos to

22   her recently.  And Randie Bowen, also like Cheryl Anderson we

23   talked about a minute ago, we have just got some records in

24   from her.  It will make or break her case, so we request 15

25   days to review those.

OFFICIAL TRANSCRIPT

1          **THE COURT:**  What's with the photos?  I mean, it's

2    been --

3          **MR. ROTH:**  We've requested them, and I do not know

4    the -- if she's going to be able to have some or not.  If we

5    don't, we'll get an affidavit to that effect.

6          **MS. BRILLEAUX:**  Your Honor, this has been pending

7    since November of -- I'm sorry, December of 2017.

8          **THE COURT:**  Has the -- you know, it's really hard --

9    because I'm not sure that there was much of an effort to comply

10   with the requirements if you're now just recently reaching out

11   for photographs.  Tell me, Mr. Roth, why shouldn't I just

12   dismiss this case?

13         **MR. ROTH:**  Again, we've got some records that we were

14   hopeful will provide the proof of use.

15         **THE COURT:**  I'm not worried about that.  I'm talking

16   about the photographs.  It just doesn't seem like -- I mean,

17   it's been over a year and we're now just asking for

18   photographs.

19         **MR. ROTH:**  I think we asked for them earlier, but I

20   can't say that with certainty.  I mean, that's pretty much a

21   common theme:  We send out the plaintiff fact sheet, we ask the

22   client to send us photos.  So I honestly, I don't know.

23         **THE COURT:**  Is it just the photographs that are

24   missing?

25         **MS. BRILLEAUX:**  So we don't have any photographs,

OFFICIAL TRANSCRIPT

1  before or after, and we don't, of course, have any proof of

2  use, and it's been over a year.

3          **THE COURT:**  I'm sorry, this one's going to be

4  dismissed with prejudice.

5          **MS. BRILLEAUX:**  Thank you, Your Honor.

6                  The next case I have is Maria Cabello.  It's no

7  before photos, no after photos, and also not a signed

8  declaration verifying the PFS.

9          **MR. ROTH:**  We did Maria Cabello's plaintiff fact

10  sheet over the phone with her.  And we have requested photos

11  from her in the past, and recently, so -- as well as sent her

12  the verification page.  So we're requesting just a little more

13  time.  We think we can get Maria in good shape.

14          **MS. BRILLEAUX:**  This is from November of 2017.

15          **THE COURT:**  This matter is dismissed with prejudice.

16                  For everybody on the phone, it's one thing when

17  there's been a concerted effort to comply, but it's just --

18  what's frustrating is when just nothing's been done.

19                  Okay.  Go ahead.

20          **MS. BRILLEAUX:**  Thank you, Your Honor.

21                  Cecilia Cain.  We have no before photos and also

22  undated photos.

23          **MR. ROTH:**  Yeah, recent contact with Cecilia.  We're

24  getting dates on those photos.  There are an awful lot of

25  photos submitted for Ms. Cain.

```
1              THE COURT:  Okay.  All right.  I'll grant 15 days on
2    that since you -- just to date the photos.  If there are no
3    before photos, you should file an affidavit.
4              MS. BRILLEAUX:  The next plaintiff is Lori Cleveland,
5    no before photos.  This case has been pending since November of
6    2017.
7              MR. ROTH:  We submitted photos for Ms. Cleveland in
8    May of 2018.  She passed away this past November.  Her husband
9    is continuing her case.  We've reached out to him, and he's
10   going to be the one to provide dates for the photos.
11             MS. BRILLEAUX:  I'm sorry --
12             THE COURT:  The Court's going to grant 30 days.
13             MS. BRILLEAUX:  And, Your Honor, just to clarify, the
14   dates on those weren't the issue for -- oh, sorry.  Can you
15   remind me which case -- are we on Lori Cleveland?
16             MS. BARRIOS:  Yes.
17             MS. BRILLEAUX:  Yes.  For Lori Cleveland, it's no
18   before photos.  The dates are not the issue.
19             MR. ROTH:  If no before photos exist, we'll have her
20   surviving spouse --
21             THE COURT:  Execute an affidavit within 30 days.
22             MR. ROTH:  Sure.  Absolutely.  Thank you, Your Honor.
23             MS. BRILLEAUX:  Thank you.
24                  The next case is Arlene Cosio.  These are photos
25   that are not dated.
```

OFFICIAL TRANSCRIPT

1          **MR. ROTH:**  I've reached out to her in the last seven

2    days, and she is going to be providing dates for those photos.

3          **THE COURT:**  Okay.  Court will grant 15 days.

4          **MS. BRILLEAUX:**  Thank you, Your Honor.

5                Lula Davis.  This is no before photos, no after

6    photos, no signed declaration for the PFS, and this has been

7    pending since November of 2017.

8          **MR. ROTH:**  She's another client that we worked her

9    plaintiff fact sheet with her over the phone.  I sent her the

10   verification page six days ago and request for photos.  She's

11   been a cooperative client, so I'm not worried that 15 days

12   would be plenty of time for her to respond.

13         **MS. BRILLEAUX:**  Your Honor, like the other ones, it

14   just -- it doesn't sound like anything's been done with the

15   client in this case.  We think it should be dismissed with

16   prejudice.

17         **THE COURT:**  Is there a reason why the declaration was

18   only asked for seven days ago?

19         **MR. ROTH:**  Yeah.  We did the plaintiff fact sheet

20   with her over the phone and --

21         **THE COURT:**  When was the plaintiff fact sheet filed?

22         **MR. ROTH:**  And I don't -- and if I did, I apologize,

23   but that's an easy cure.

24         **MS. BRILLEAUX:**  Well, I mean, we're also missing

25   photos, so...

OFFICIAL TRANSCRIPT

1          **MR. ROTH:**  And we've requested those, so...

2          **UNIDENTIFIED SPEAKER:**  July 23rd, 2018 was the most

3    recent fact sheet.

4          **THE COURT:**  And the only thing was there was no

5    declaration for the fact sheet?

6          **MS. BRILLEAUX:**  And the photos.

7          **THE COURT:**  I'm going to grant 15 days.

8          **MS. BRILLEAUX:**  Vanessa De Vera, no proof of use.

9    We've received no records.  This case has been pending since

10   November of 2017.

11         **MR. ROTH:**  What do you mean you've received no

12   records?  I'm not following that.

13         **THE COURT:**  No medical records.

14         **MR. ROTH:**  I have here -- okay.  We do have some

15   medical records.  They were received, again, in the last 48

16   hours.  I did not have that down here as one of the issues.  I

17   had no proof of injury and photos not dated.  So if I --

18         **THE COURT:**  Okay.  I'm going to grant 15 days.  Since

19   you've got the records, supplement them.

20         **MR. ROTH:**  Absolutely.

21         **MS. BRILLEAUX:**  And, Your Honor, we would request

22   that the case be dismissed if there's no proof of Docetaxel use

23   in the records.

24         **MR. ROTH:**  Totally acceptable.

25         **MS. BRILLEAUX:**  Thank you.

1          The next one is Stephanie Deese, no proof of

2     use.  We have no records.

3          **MR. ROTH:**  Stephanie Deese, that's another one that

4     we just recently -- well, hold on.  Yes, we received records

5     from the oncologist.  I loaded her photos a few days ago.  The

6     records will decide whether she moves forward or not, and we

7     ask for time to review them.

8          **MS. BRILLEAUX:**  Your Honor, again, this is a case

9     that's been pending since November of 2017.  It's been well

10    more than a year.

11         **THE COURT:**  Was the plaintiff fact sheet filed?

12         **MR. ROTH:**  Yes.

13         **THE COURT:**  I'll grant 15 days.

14         **MR. ROTH:**  Thank you.

15         **MS. BRILLEAUX:**  Again, we'd ask to dismiss the case

16    if there's no --

17         **THE COURT:**  Of course.

18         **MS. BRILLEAUX:**  Thank you.

19         **MR. INSOGNA:**  Your Honor, the next case with this

20    firm is Judith Garthwaite.  I have that there's an undated

21    HIPPA authorization.  It appears to me that that has been cured

22    subsequently.  I would just ask for 15 days for us to confirm.

23         **THE COURT:**  So ordered.

24         **MR. ROTH:**  Yeah, on the 15th, I loaded her --

25         **THE COURT:**  Okay.

OFFICIAL TRANSCRIPT

1      **MR. INSOGNA:**  Also with this firm, Kathy Geiser.  We

2 have no proof of injury documentation, no plaintiff fact sheet

3 declaration, and no authorizations.

4      **MR. ROTH:**  I sent her the authorizations and

5 verification page a few days ago.  She says she does not have

6 any photos.  I've given her some suggestions of places to look.

7 If she does not have any, we're happy to do a no photo

8 affidavit.

9      **MR. INSOGNA:**  Your Honor, we also have no plaintiff

10 fact sheet declaration and no authorizations.  And nothing's

11 been uploaded since August 7th of 2018.

12      **MR. ROTH:**  Again, she's getting those to us.  We

13 worked her plaintiff fact sheet over the phone with her, I

14 believe.

15      **MR. INSOGNA:**  Your Honor, if I may, the notice of

16 noncompliance that precedes this was sent out on November 20th,

17 and then there's a further 14 days in advance of this hearing.

18 So counsel's been on notice for some time.

19      **THE COURT:**  I'm going to give you seven days to get

20 all of this in.  But, Mr. Roth, I have to tell you, for the

21 life of me, I don't understand why we're just requesting this

22 information this week.  It just doesn't --

23      **MR. ROTH:**  It may have been requested earlier and the

24 client didn't respond, so we're having to come back a second

25 time, and --

1    **THE COURT:**  Well, you know, this is why cases get
2    dismissed with prejudice because clients aren't responding.
3    And if they're not going to do it, I'm just --
4              **MR. ROTH:**  I understand.
5              **MS. BRILLEAUX:**  Your Honor, for the record --
6              **THE COURT:**  I'm very frustrated.
7              **MS. BRILLEAUX:**  To reiterate what Mr. Insogna said,
8    one of the biggest issues here is we've sent the compliance
9    list out since November 20th.  So if counsel had sent a request
10   out to their clients earlier, November 20th is the time that
11   they should be re-requesting it, not this week.
12             **THE COURT:**  I got that.
13             **MS. BRILLEAUX:**  Thank you, Your Honor.
14             **THE COURT:**  Hence my frustration.
15             **MR. ROTH:**  I understand.
16             **MS. BRILLEAUX:**  The next case that I have is Terri
17   Healy Frey.  We have no before photos, and the other photos
18   we've received are not dated.
19             **MR. ROTH:**  Yeah.  We've asked her to provide dates
20   for the photos, and that's where we're at on her right now.
21             **THE COURT:**  Photo dates is the problem?
22             **MR. ROTH:**  Yes.
23             **MS. BRILLEAUX:**  And no before photos.
24             **MR. ROTH:**  She may not have those.
25             **THE COURT:**  Okay.  I'm going to give you 15 days to

OFFICIAL TRANSCRIPT

1   cure.  I'll let you have 30 days for an affidavit.

2          MR. ROTH:  Thank you, Your Honor.

3          MS. BRILLEAUX:  Fran Herbst, no proof of use, and

4   this case has been pending since October of 2016.

5          MR. ROTH:  I have no proof of injury for her --

6   there's no proof of injury.

7          MS. BRILLEAUX:  The deficiency's for no proof of use

8   of Docetaxel.  If there's no proof of use, we think the case

9   should be dismissed with prejudice, especially since it's been

10  pending for two and a half years.

11         THE COURT:  What proof of use do you have, sir, in

12  the plaintiff fact sheet?

13         MR. ROTH:  I'm going to have to look that up.  Can we

14  revisit this one?

15         THE COURT:  No.  This matter is dismissed with

16  prejudice.

17              Oriann Holmes, let's go.

18         MS. BRILLEAUX:  I have no before photos, and no after

19  photos.

20         MR. ROTH:  We have requested photos from her, and if

21  not, we will get you an affidavit to that effect.

22         MS. BRILLEAUX:  I would ask counsel if he knows

23  whether she has photos.

24         THE COURT:  Do you know if she has before -- I mean,

25  after photos should be easy, that's --

1          **MR. ROTH:**  Yeah, just take a picture.  Sure.  Sure.

2   I do not know.  We left a voice mail for her, and I think an

3   e-mail.  So that's -- again, that's where we're at on

4   Ms. Holmes.

5          **THE COURT:**  Okay.  This one's dismissed with

6   prejudice.  If they're not responding, that's -- we're not

7   going to continue chasing them around.

8          **MR. ROTH:**  I understand.

9          **MS. BRILLEAUX:**  Thank you, Your Honor.

10          Deborah Hunkapiller, no proof of use and undated

11   photos.

12          **MR. ROTH:**  Again, we just got medical records in for

13   Ms. Hunkapiller, and so, hopefully, that will take care of the

14   proof of use.  We have requested that she give us the photo

15   dates.  If she doesn't know them, we'll file an affidavit to

16   that effect, but we do have some --

17          **THE COURT:**  I'm going to give you 15 days to file

18   those records.

19          **MR. ROTH:**  Thank you, Your Honor.

20          **MS. BRILLEAUX:**  Gena Jennett, photos not dated.

21          **MR. ROTH:**  Got those in today.  Should get them

22   loaded after this phone call.

23          **THE COURT:**  I'm going to give you 24 hours to get

24   that done.

25          **MS. BRILLEAUX:**  Thank you.

OFFICIAL TRANSCRIPT

1    **MR. ROTH:**  End of today.  Okay.  Thank you.

2    **MS. BRILLEAUX:**  Cathy Jones, no proof of use, no

3    before photos, no after photos, pending since November of 2017.

4    **MR. ROTH:**  I don't think we're going to be able to

5    move her on the proof of use.

6    **THE COURT:**  This matter is dismissed with prejudice.

7    **MS. BRILLEAUX:**  Dara Kessler, photos not dated.

8    **MR. ROTH:**  We have gotten, as you can see, an awful

9    lot of photos from Ms. Kessler.  She's going to give me a call

10   back and we're going to get dates.  She has probably more

11   photos than any of our clients.  They're really well done

12   photos, taken from the hair restoration center that she has

13   used.  So that's going to be taken care of.

14   **THE COURT:**  15 days to cure dates and whatnot.

15   **MR. ROTH:**  Perfect.  Thank you.

16   **MS. BRILLEAUX:**  Mimoza Lamorte, no proof of use, no

17   before photos, no after photos.

18   **MR. ROTH:**  We have got two sets of new records for

19   her, and we're optimistic that that will be able to move her

20   forward on the proof of use.  We've left voice mail and e-mail

21   for her regarding giving us dates on the photos.

22   **THE COURT:**  You've got 15 days.

23   **MR. ROTH:**  Thank you, Your Honor.

24   **MS. BRILLEAUX:**  Athena Mack, no before photos, no

25   after photos.  This has been pending since November of 2017.

OFFICIAL TRANSCRIPT

1          **MR. ROTH:**  Yeah, we've requested the photos from her

2     before.  She hasn't been responsive.  We've requested them

3     recently.  Would an affidavit that none exist suffice or --

4          **MS. BRILLEAUX:**  Has she responded?

5          **THE COURT:**  Has she responded?

6          **MR. ROTH:**  She has not.  She has not.

7          **THE COURT:**  This matter's dismissed with prejudice.

8          **MS. BRILLEAUX:**  Darla Majors, no proof of use, and

9     photos not dated.

10          **MR. ROTH:**  We're going to be able to take care of the

11     photos without a problem.  She's going to provide that.  As far

12     as proof of use, she is not one of the folks that we've gotten

13     records in for recently, so I don't know how we're going to --

14          **MS. BRILLEAUX:**  This has been pending since December

15     of 2017.  We believe it should be dismissed with prejudice.

16          **THE COURT:**  But this is -- why are we just getting

17     photographs from this lady?

18          **MR. ROTH:**  You've gotten photos.  She just -- it's

19     the dates that are the issue.

20          **THE COURT:**  Oh, the dates on the photos.

21          **MS. BRILLEAUX:**  Correct.  But without --

22          **THE COURT:**  And they said there's a problem with the

23     medical records.  I just want to find out if there's -- I don't

24     know, the center burned down or something.

25          **MR. ROTH:**  So far we've not been successful on the

1  medical records with her.

2          **THE COURT:**  You're going to have to help me here.

3  Can you tell me when they were requested?  What's the problem,

4  or are we just requesting medical records a year into this

5  thing?

6          **MR. ROTH:**  No, I'll have to research that one.

7          **MS. BRILLEAUX:**  Respectfully, it sounds like medical

8  records don't establish proof of use.

9          **THE COURT:**  Wait.  Let me hear -- I can't hear what

10 he's saying.

11         **MR. ROTH:**  I'm sorry.  I'll have to research that

12 one.  But I'm telling you up front, we did not get medical

13 records for her with the recent influx of the large number of

14 records that we've received.  She was not one of those.  So I'm

15 being up-front with that.

16         **THE COURT:**  No, I appreciate that.  What's bothering

17 me is I have no indication that there's a reason her records

18 weren't received, that repeated requests were made or it's

19 just...

20         **MR. ROTH:**  I'm going to have to look into that one.

21         **THE COURT:**  All right.  When we get to the -- you

22 should sent an e-mail to somebody right now and be able to

23 answer by the time we get to the end of this thing.

24         Let's to to Jerrye Marcantel.

25         **MS. BRILLEAUX:**  I have no proof of use, photos not

OFFICIAL TRANSCRIPT

1  dated, and no signed declaration for this case that's been
2  pending since January of 2018, over a year.
3          **MR. ROTH:**  Again, we've requested photo dates.  The
4  proof of use is unresolved.  We have -- she did not -- she's
5  not in that group that we just got all the medical records for.
6  And I don't know the history, but so far we've not been able to
7  come up with supporting proof of use.
8          **THE COURT:**  Okay.  This is what we're going to do.
9  I'm coming back to that one too.  So if there's somebody you
10 need to be e-mailing to tell them.  You know, if I find that
11 requests were made timely, that's one thing.  It's another
12 thing that --
13          Okay.  Let's go to Barbara Marinelli.
14         **MS. BRILLEAUX:**  Your Honor, just on Jerrye Marcantel,
15 can we inquire about the status of the declaration verifying
16 the PFS?
17         **MR. ROTH:**  That's not listed even.  Well, you know,
18 okay.  But let me -- Your Honor, I ask you this, I'm a little
19 shorthanded today.  I can get back to you today on both Darla
20 Majors and Jerrye Marcantel and tell you the record request
21 history.  I won't be able to do it before the end of this phone
22 call because we're --
23         **THE COURT:**  All right.  Right now, let's just go and
24 then we'll work out something.
25         **MS. BRILLEAUX:**  Thank you, Your Honor.

1          **THE COURT:**  Because I've got to do lots of stuff with

2     this case today.  Barbara Marinelli.

3          **MS. BRILLEAUX:**  I have no proof of use, photos not

4     dated, and no before photos.

5          **MR. ROTH:**  We have just got medical records in from

6     Ms. Marinelli.  We can get the photo dates since she did submit

7     photos or an affidavit to that effect.  Again, we ask time to

8     get through the recently received medical records.

9          **THE COURT:**  I'm going to give you 15 days, but...

10         **MR. ROTH:**  Thank you.

11         **MS. BRILLEAUX:**  Thank you, Your Honor.  And that's

12    for all the deficiencies; correct?

13         **THE COURT:**  Yes.

14         **MS. BRILLEAUX:**  Thank you.  Vivian Markle, photos not

15    dated.

16         **MR. ROTH:**  Yeah, Vivian is deceased.  She died in a

17    car accident in June.  We've had some communications with, I

18    believe it's her son, and so we just -- we need to get some

19    photo dates for her.  Can a surviving member of the family

20    provide the affidavit for photo dates or --

21         **THE COURT:**  Has he been substituted as the plaintiff?

22         **MR. ROTH:**  I do not know the answer to that right

23    offhand.  We're still trying -- I think we're just -- we've

24    requested the death certificate, and I don't know the --

25         **THE COURT:**  I'm going to give you 30 days to clear up

OFFICIAL TRANSCRIPT

1  this succession issue.

2          **MR. ROTH:**  Sure.  Sure.

3          **MS. BRILLEAUX:**  Larraine Martinez, photos not dated.

4          **MR. ROTH:**  We have reached out to her to date the

5  photos, and if not, we can certainly get an affidavit.

6          **MS. BRILLEAUX:**  The issue is with the dates.

7          **THE COURT:**  Photos that are in existence.  They want

8  to know the dates of the photos that have been filed.

9          **MR. ROTH:**  Sure.  Sure.  And we've left a voice

10  message for her in the past few days.  She's been a responsive

11  client in the past, so we can -- we'll get that or an

12  affidavit.

13          **THE COURT:**  I'm going to give you seven days to date

14  the photos that are in, that have been filed.

15          **MR. ROTH:**  Sure.  Thank you.

16          **MS. BRILLEAUX:**  Thank you, Your Honor.

17                  Michelle Meissner, no proof of use.

18          **MR. ROTH:**  We have been actively trying to get

19  records.  So has the client.  She is a client of -- she was a

20  patient of MD Anderson cancer facility here in Houston,

21  world-renowned.  We have gotten stonewalled at every step of

22  the issue.  We can provide affidavits to all the attempts that

23  we've made, not just myself, the senior lawyer working on this

24  case.  We've even thought about maybe a 30(b)(6) deposition to

25  try to bring it out that way.

1     **THE COURT:**  I'm going to give you -- okay.  I'm going

2  to give you 30 days to continue.  Remember, we have to know if

3  she took the drug.

4     **MR. ROTH:**  I totally understand.  We can provide a

5  very detailed affidavit to efforts to get it, and --

6     **THE COURT:**  All right.  I'm granting 30 days, and

7  let's see where we are.

8          All right.  Brenda Morrison.

9     **MR. ROTH:**  We have reached out to her a couple of

10  times to get her to provide the dates of the photos, and if

11  she's unable to or doesn't remember, we're happy to do an

12  affidavit to that effect.

13     **MS. BRILLEAUX:**  Your Honor, I also have no proof of

14  use for this case.

15     **MR. ROTH:**  Brenda Morrison, we've got three sets of

16  records in from her within the last 48 hours.

17     **THE COURT:**  All right.  I'm going to give you 15

18  days.

19     **MR. ROTH:**  Thank you, Your Honor.

20     **MS. BRILLEAUX:**  Drusilla Mounce, no proof of use.

21     **MR. ROTH:**  We have been unsuccessful.  I could look

22  her up when I'm looking up the other two folks to see what

23  efforts we've made.

24     **THE COURT:**  This matter is dismissed with prejudice.

25     **MS. BRILLEAUX:**  Thank you, Your Honor.

1          I don't know if this is supposed to be Paua or

2    if it's Paula Oubrahim, no proof of use, and photos not dated.

3          **MR. ROTH:**  I filed a photo ID form affidavit

4    yesterday.  She came in with records within the last 48 hours,

5    so we're -- we need a little bit of time to get through those.

6          **MS. BRILLEAUX:**  Your Honor, this has been pending

7    since November of 2017.

8          **THE COURT:**  I'm going to give him 15 days if he's got

9    the records in hand today.

10         **MS. BRILLEAUX:**  Trina Ramsey, no proof of use, photos

11   not dated.

12         **MR. ROTH:**  Okay.  She is not one that we've received

13   records from recently.  I do not know the attempts to get

14   medical records.  Obviously, they've not been successful.

15   That's something I can --

16         **THE COURT:**  Is it just medical records?

17         **MS. BRILLEAUX:**  Yeah, it's no proof of use, and also

18   undated photographs.  But if counsel doesn't even know the

19   status of getting proof of use, we think it should be dismissed

20   with prejudice.

21         **THE COURT:**  I know you do.  That's one we're coming

22   back to.

23         **MR. ROTH:**  Sure.  Okay.

24         **THE COURT:**  Magda Rendon.

25         **MR. INSOGNA:**  Your Honor, for this one, we have no

1  proof of injury documentation, no proof of use, no PFS

2  declaration, and no authorizations.

3        **MR. ROTH:**  I've sent those a few days ago.  She's one

4  we did the plaintiff fact sheet over the phone.  These are all

5  easily curable.

6        **THE COURT:**  Well, it's not curable.  It should have

7  been cured.  So I'm going to give you 15 days to clear it up.

8  Because as I appreciate it, you filed those a few days ago; is

9  what you're saying?

10        **MR. INSOGNA:**  Could I note, Your Honor, actually an

11  amended plaintiff fact sheet was submitted on December 18th.

12  So one month ago, presumably, they were in contact with the

13  client and at a minimum could have gotten a declaration signed.

14        **THE COURT:**  Well, I thought he said he did that just

15  recently.  Is that what you said?

16        **MR. ROTH:**  No, I sent her her authorization and the

17  verification page on the 11th of this month.

18        **THE COURT:**  All right.

19        **MR. ROTH:**  A week ago.

20        **THE COURT:**  I'm going to give you 15 days.

21        **MR. ROTH:**  All right.  Thank you.

22        **MS. BRILLEAUX:**  Susan Steen, photos not dated.

23        **MR. ROTH:**  We've reached out to her in the past few

24  days to get her to do that, haven't made contact, but I think

25  with 15 days, we can certainly get that.

1     **THE COURT:**  Is that the only thing --

2     **MS. BRILLEAUX:**  Your Honor, we would ask when the

3  last contact that they had was with her?

4     **THE COURT:**  Okay.  But I'm asking you, is the only

5  thing is the photos are undated?

6     **MS. BRILLEAUX:**  Correct.

7     **THE COURT:**  I'm going to give you 15 days, not 16.

8     **MR. ROTH:**  I understand.

9     **MS. BRILLEAUX:**  Elizabeth Stoneking, no before photos

10 and no after photos.

11    **MR. ROTH:**  We're going to be able to get after

12 photos.  Elizabeth was supposed to come by our office this

13 week.  I was going to take these photos.  She's here in town.

14 She is a flight attendant with Southwest.  So it's just a

15 matter of us connecting.  These are going to be --

16    **THE COURT:**  Okay.  I'm going to give you 15 days to

17 do all of that, and while she's in there taking her picture,

18 get an affidavit if she doesn't have any before photos.

19    **MR. ROTH:**  Perfect.

20    **MR. INSOGNA:**  Your Honor, next we have Betty Storman.

21 This is no proof of injury documentation, no proof of use, no

22 declaration, no authorizations.

23    **MR. ROTH:**  We've had recent contact with this client.

24 She is -- hasn't been terribly cooperative.

25    **THE COURT:**  This matter is dismissed with prejudice.

OFFICIAL TRANSCRIPT

1          **MR. ROTH:**  Fair enough.

2          **THE COURT:**  Yeah, well, that's what happens when they

3      don't cooperate.

4          **MR. ROTH:**  I understand.  I understand.

5          **MS. BRILLEAUX:**  Thank you, Your Honor.

6              Patricia Valdez, no proof of use and photos not

7      dated.  We haven't received any medical records.

8          **MR. ROTH:**  And we just got some in for her.

9          **THE COURT:**  All right.  15 days.

10         **MR. ROTH:**  Perfect.

11         **MS. BRILLEAUX:**  And for the photos as well, Your

12     Honor?

13         **THE COURT:**  Yes.

14         **MS. BRILLEAUX:**  Thank you.

15             Betty Wilson, no before photos, no after photos.

16         **MR. ROTH:**  We've reached out to her to get photos.

17     She's been cooperative in the past, but we haven't had success

18     getting to her recently.  I think the after pictures won't be

19     an issue if we can make contact with her. I do not know if

20     she's going to have before photos, but we can do an affidavit

21     to that effect.

22         **THE COURT:**  When's the last time you contacted her?

23     This has been pending since 2016.

24         **MR. ROTH:**  Yeah, the last successful contact with her

25     in the six- to eight-month range.  We did reach out in the past

OFFICIAL TRANSCRIPT

1   week and have not gotten ahold of her.

2           **THE COURT:**  This matter is dismissed with prejudice.

3           **MS. BRILLEAUX:**  Thank you, Your Honor.

4                And just so, for the record, we said we would

5   revisit Darla Majors and Jerrye Marcantel.

6           **THE COURT:**  Okay.  This is what I am going to do.

7   There are three that we're going to revisit, Darla Majors,

8   Jerrye Marcantel, and Trina Ramsey.

9           **MS. BRILLEAUX:**  Yes.

10          **THE COURT:**  Mr. Roth --

11          **MR. ROTH:**  Yes.

12          **THE COURT:**  -- you need to go figure out what

13  attempts have been made and where you are because I'm going to

14  take up another group, and so you should be prepared to be back

15  on the phone at 2:00.

16          **MR. ROTH:**  Okay.  Just stay on the call or dial back

17  in at 2:00?

18          **THE COURT:**  You can dial back in at 2:00.

19          **MR. ROTH:**  Perfect.  Thank you so much.

20          **THE COURT:**  All right.  Bachus & Schanker.  You all

21  got to give me a break.

22          **MS. BRILLEAUX:**  Do you want a break now?

23          **THE COURT:**  Yeah.  Why don't we take until about

24  2:00.  This is my problem, so let me -- I know that oral

25  argument that was supposed to occur like two hours ago, I've

1    got to eat because I can't think anymore.

2              **MS. BARRIOS:**  Your Honor, might I make a suggestion,

3    that when we come back at 2:00 -- I know you told Mr. Roth to

4    be on the phone, but maybe you could do Durden at 2:00 just to

5    give yourself a break, and then we can finish these after

6    Durden.  Just a suggestion.

7              **THE COURT:**  Are you all leaving?  Were you trying to

8    get out this afternoon?

9                        **(OFF THE RECORD)**

10                       **(LUNCHEON RECESS)**

11                      * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT

1    **AFTERNOON SESSION**

2    **(January 18, 2019)**

3    **\*\*\*\*\***

4         **THE DEPUTY CLERK:**  Mr. Roth, are you there?

5         **MR. ROTH:**  Yes.  Yes, Your Honor.

6              Okay.  Darla Majors --

7         **THE COURT:**  All right.  Hold on.  Let me -- all

8    right.  Darla Majors.

9         **MR. ROTH:**  Darla Majors, as part of our CMO 12

10   submission, we have a statement where the infusion facility

11   checked off that it was Sanofi Aventis, but did not know the

12   lot number.  That's in Centrality.  So that's -- she is -- she

13   is -- the dates of treatment, I think, were February 2011 to

14   April 2011, which would be presumptively Sanofi.  Correct?

15        **MS. BRILLEAUX:**  Counsel, we were just asking --

16        **THE COURT:**  No.  When you requested the medical

17   records, that was the issue.

18        **MR. ROTH:**  Oh.  I can tell you that.  We requested

19   medical records -- well, we received them in February of 2018

20   and March of 2018, Kaiser Permanente.  And then we followed up

21   with submitting that form to the infusion center.  And, again,

22   what we got back is uploaded on the Centrality under CMO 12

23   submission.

24        **MS. BRILLEAUX:**  We would just ask, counsel,

25   understood if it was uploaded for CMO 12, but were the records

1  also uploaded for proof of use in connection with the PFS?

2          **MR. ROTH:**  Let's take a look.  I'm in Centrality.

3  I'll be able to tell you.

4          **MS. BRILLEAUX:**  There is a separate tab for CMO 12,

5  product identification, and then a separate section of the PFS

6  for proof of use.  So we would just ask that counsel, if he has

7  it, upload it within 24 hours.

8          **THE COURT:**  So ordered.

9          **MR. ROTH:**  Okay.  Sure.  Happy to do that.

10          **THE COURT:**  Okay.  24 hours.

11          **MS. BRILLEAUX:**  Then sorry, Your Honor, also photos

12  not dated.  We would ask that the photos be dated within 24

13  hours.

14          **MR. ROTH:**  Can we have a little more time on the

15  photos?

16          **THE COURT:**  I'm going to give you 15 days on the

17  photos.

18          **MR. ROTH:**  Thank you, Judge.

19          **THE COURT:**  What about Jerrye Marcantel?

20          **MR. ROTH:**  Right.  We did a subpoena on her May 14th,

21  and we copied opposing counsel.  Unfortunately, we got back, it

22  looks like, an affidavit of no records.  Let me pull it up

23  exactly.  Marcantel.  Yeah, we subpoenaed Walter Ross Regional

24  Medical Center, again, we copied opposing counsel on this, and

25  we also got back an affidavit of no records.

1          MS. BRILLEAUX:  Your Honor, this has been --

2          THE COURT:  So you have no records showing poof of

3     use?

4          MR. ROTH:  Correct.  Correct.

5          THE COURT:  All right.  This matter is dismissed with

6     prejudice.

7          MR. ROTH:  Understood.

8          THE COURT:  And then Trina Ramsey.

9          MR. ROTH:  Trina Ramsey, I think, is also another

10    subpoena situation.

11         THE COURT:  Mr. Roth, I've been at this for hours.

12         MR. ROTH:  I understand.

13         THE COURT:  You're going to have to get me something.

14         MR. ROTH:  We subpoenaed records from her on

15    June 19th, and let me see what those showed.  I apologize, but

16    the computer is just going slow.  Okay.  And it doesn't look

17    like we've gotten anything back from them.

18         THE COURT:  Have you gotten anything -- anything to

19    say that the records are destroyed or there's something that

20    you were missing in your request for those records?

21         MR. ROTH:  It looks like they just have a no

22    response.  We've had no response to this.  And we issued that

23    on -- again, coping opposing counsel, on June 19th.

24         MS. BARRIOS:  Mr. Roth, this is Dawn Barrios,

25    co-liaison counsel.  Did you send a subpoena to the facility

1  that your plaintiff was infused at?

2          **MR. ROTH:**  Correct.  We had a service we use do that

3  and...

4          **MS. BARRIOS:**  Did you ask for billing records or just

5  medical records?

6          **MR. ROTH:**  Bear with me for a second.

7          **THE COURT:**  I'm sorry.  I missed something.

8          **MR. ROTH:**  Yeah.  We ordered records from the

9  following location.  So we -- it does not -- you know, we used

10  a service to order them.  I have the names of the facilities.

11  It looks like both medical and claims records to the Levine

12  Cancer Institute.  I've got the order number, the confirmation,

13  but it looks like they have not responded.  I don't know if we

14  can do a motion to compel.

15          **THE COURT:**  Well, the problem I have is we're over

16  six months that they were requested and there's been no

17  follow-up.  This matter is going to be dismissed with

18  prejudice.

19          **MS. BRILLEAUX:**  Thank you, Your Honor.

20          **MR. ROTH:**  Understood.

21          **MS. BARRIOS:**  Mr. Roth, this is Dawn Barrios again.

22  Could you give me a call on Monday morning so that we can

23  discuss some of the deficiencies?

24          **MR. ROTH:**  Sure.  Absolutely.

25          **MS. BARRIOS:**  Thank you.

OFFICIAL TRANSCRIPT

1          **MR. ROTH:**  Thank you, Dawn.

2               Thank you, Your Honor.

3          **THE COURT:**  Thank you.  All right.

4          **MR. INSOGNA:**  Your Honor, if it's okay, I've

5     consulted, and I think everyone else is okay with it.  There

6     are eight Bachus & Schanker 505(b)(2) cases.  My flight is

7     earlier than I thought it was.  I have a 5:00 flight.

8          **THE COURT:**  Oh, okay.  Sure.

9          **MR. INSOGNA:**  If it would be possible to just run

10    through those, I think it's fairly quick.

11         **THE COURT:**  Okay.

12         **MR. INSOGNA:**  Thank you, Your Honor.

13         **THE COURT:**  Sure.

14         **MR. INSOGNA:**  The first one is at No. 204.

15         **THE COURT:**  204.  Okay.  That's Mary Atkinson.

16         **MR. INSOGNA:**  Mary Atkinson.  That's right.  This is

17    proof of injury.  There are no after or present day photos.

18         **MR. ELLIOTT:**  Actually, we uploaded a present day

19    photo back in May of 2018.  We are missing six months after and

20    the during.  We'll get an affidavit, worst case.  We're asking

21    for 15 days.  But there's been a before photo uploaded on

22    January 7th.  There was a present day photo that was uploaded

23    in May of 2018.  We just need the during and after.  I don't

24    think she's going to have it, so we'll have to do an affidavit.

25         **THE COURT:**  I'm confused.  Is this --

OFFICIAL TRANSCRIPT

1   **MR. ELLIOTT:** During chemotherapy and then the six
2   months after, we don't have those.
3   **MR. INSOGNA:** Your Honor, the plaintiff fact sheet
4   requests photos both after, being within the six months
5   immediately following chemotherapy, and then a present day
6   photo. I believe that we don't have the present day photo, but
7   counsel is representing otherwise. So maybe 15 days to confer
8   on that.
9   **THE COURT:** So ordered.
10  **MR. INSOGNA:** The next 505 case is Velma Cole. It
11  appears to me, actually, that this one has cured after the cure
12  cutoff period. So I would just like 15 days to confirm on my
13  end.
14  **THE COURT:** So ordered.
15  **MR. INSOGNA:** The next is at 217, Zelma Foreman, and,
16  actually, this is the same. It appears to me it has been cured
17  subsequently, so I would request 15 days for me to confirm.
18  **THE COURT:** So ordered.
19  **MR. INSOGNA:** Thank you, Your Honor.
20  Next is 221, Carol Gray. We have no proof of
21  injury documentation. And separately, there's a CMO 12
22  submission that doesn't identify a manufacturer, but the proof
23  of injury is the significant issue.
24  **MR. ELLIOTT:** It looks like we cured this one, Your
25  Honor. We uploaded the present day photos on January 12th. We

1  also uploaded the six months after chemotherapy photos.  I
2  think we have sufficient proof of injury at this point, and
3  it's been cured, in our opinion.
4          THE COURT:  I'm going to grant you 15 days to
5  confirm.  Are those the photos?
6          MR. INSOGNA:  From this -- that's the after photo.
7  Okay.  I'll take 15 days, Your Honor.
8          THE COURT:  Okay.
9          MR. INSOGNA:  No. 240 on your chart, Nancy Lawson.
10 We have one undated photo that's been submitted.
11         THE COURT:  Okay.
12         MR. ELLIOTT:  We have she's looking for before
13 photos; if not, we'll have to do a statement, but we have
14 uploaded the after, present day photos.
15         THE COURT:  Are they dated?  I think that's the
16 issue.
17         MR. ELLIOTT:  Jennifer, can you pull those up?
18         THE COURT:  Okay.  There's the photos, but do we know
19 the dates on those?
20         MR. ELLIOTT:  It's dated in MDL Centrality.
21         THE COURT:  Okay.  I'm going to grant you 15 days to
22 confirm and confer.
23         MR. INSOGNA:  Your Honor, we need 30 days separately
24 if there needs to be an affidavit on before photos.
25         THE COURT:  So ordered.  Yep.

OFFICIAL TRANSCRIPT

1        **MR. INSOGNA:**  The next is at 265, Your Honor.  It is
2    Rita Smith.  We have no proof of injury documentation.  The
3    HIPAA authorization is undated, and the authorizations that
4    require a witness signature are not executed at all.

5        **MR. ELLIOTT:**  Are you sure?

6        **MR. INSOGNA:**  Did you upload on the 16th?

7        **MR. ELLIOTT:**  This one's been cured.  Everything was
8    uploaded on the 15th.

9        **THE COURT:**  On January 16th?

10       **MR. ELLIOTT:**  Yeah, and we sent a cure notification
11    as well on this one, I believe.

12       **THE COURT:**  Yeah, this is it.  Okay.  15 days to
13    confirm.

14       **MR. INSOGNA:**  Undated HIPAA authorization.

15       **MR. ELLIOTT:**  I mean, this is what happens, if you
16    date these authorizations, then they can't use them ultimately
17    because it will expire, you know, over time.  So I think --

18       **THE COURT:**  Then it seems to me that that's their
19    problem.

20       **MR. ELLIOTT:**  Can't you guys put the date in?

21       **MR. INSOGNA:**  If we date them, the facility will not
22    accept it.  We have to date them and then get a reissued one
23    after the year has expired.

24       **THE COURT:**  Oh, so you already filed one that was
25    dated?

OFFICIAL TRANSCRIPT

1    **MR. ELLIOTT:**  We filed a signed authorization.  It
2    just doesn't have a date on it.
3            **MR. INSOGNA:**  It doesn't have a date.
4            **THE COURT:**  Okay.  I know what your position is.  You
5    need to date it.  And that's going to be their problem if it --
6            **MR. ELLIOTT:**  Okay.
7            **THE COURT:**  I know.  But 15 days.  Can you get it
8    dated by then?
9            **MR. ELLIOTT:**  I would hope so.  Yes.
10           **MR. INSOGNA:**  So, Your Honor, those in the trial pool
11   cases, we've just gotten a renewed authorization when the year
12   period has expired.  It hasn't been an issue in those cases.
13   We have where they have expired, and we've gone back to
14   plaintiff's counsel and asked for a new one and gotten a new
15   one.
16           **MR. ELLIOTT:**  I will just tell you, it's our --
17           **THE COURT:**  All right.  So let me ask this question:
18   So you're getting these signed authorizations, you're not doing
19   anything with them, you're holding them for a couple of years,
20   and then you make them redo it?
21           **MR. INSOGNA:**  No.  No.  No, Your Honor.
22           **THE COURT:**  Okay.  That's what I want to know.
23           **MR. INSOGNA:**  If medical records are requested, we
24   request an update to the records we've received after the
25   authorization has expired, the facility comes back to us and

1    says, "You need a new authorization because yours is expired."
2    Or in some cases where we've had a plaintiff who submitted
3    documents a long time ago and then became a trial pool
4    plaintiff, and we're asking for updated medical records, it's
5    expired, and we've gotten a new authorization.  That's what's
6    happened.
7              THE COURT:  But I think you're going to have to date
8    them.  I know what your position is.  I get it.
9              MR. ELLIOTT:  It's our practice, like, when we sign
10   up a case, we leave it blank so that, you know, we're not -- if
11   we run into this situation, we put the date, and with our
12   client's permission.
13             THE COURT:  So you're not having to do it repeatedly.
14             MR. ELLIOTT:  Exactly.  I think that's the best
15   practice.  But if we have to keep getting authorizations with
16   new dates, it just becomes a little bit burdensome for -- I
17   mean, a lot burdensome for my law firm.  So I --
18             MR. INSOGNA:  We've had facilities kick them back if
19   they're not -- if we can't represent the date is from a
20   plaintiff.
21             THE COURT:  I think what he's saying, they want you
22   to just put the date in, but I don't think you're supposed to
23   do that.
24             MR. INSOGNA:  Correct.
25             MR. ELLIOTT:  All right.  We'll take care of it.

OFFICIAL TRANSCRIPT

1          **MR. INSOGNA:**  No. 269, Sandra Thompson.  We have no
2    proof of injury documentation.
3          **MR. ELLIOTT:**  We have a driver's license photo,
4    but -- let's see.  The only photo she has is driver's license
5    photos.  We're getting her present day photos this week.  We
6    have an investigator out to go get them.  We'd ask for 15 days
7    to upload the present day photos.
8          **THE COURT:**  I'll give you 15 days.  Because that's
9    all you're missing is present day?
10         **MR. INSOGNA:**  I have that we don't have any proof of
11   injury.
12         **MR. ELLIOTT:**  It says we uploaded a driver's license
13   photo.
14         **THE COURT:**  It's either that or an affidavit.
15         **MR. ELLIOTT:**  Okay.
16         **THE COURT:**  But you have to get that present day
17   photo in within 15 days.
18         **MR. ELLIOTT:**  15 days for that.  Okay.  Thank you.
19         **MR. INSOGNA:**  Your Honor, sorry, 15 days for a
20   present day photo, and 30 for an affidavit if there are no --
21   understood.  Thank you, Your Honor.
22              That is all of the 505(b) cases with Bachus &
23   Schanker.
24         **THE COURT:**  I hope you catch your flight.
25         **MR. INSOGNA:**  Thank you.

OFFICIAL TRANSCRIPT

1    **THE COURT:**  Good luck to you because I understand
2  that traffic is pretty awful.
3    **MR. INSOGNA:**  Thank you, Your Honor.
4    (WHEREUPON, the Court took a recess.)
5    **MS. BRILLEAUX:**  Okay.  So the final stretch.  I am
6  hopeful.
7    **THE COURT:**  All right.  If you all will just give me
8  a couple minutes.  I'm sorry, I've just got to get some things
9  signed before the end of the day, and they need to be processed
10 before the end of the day.
11    (WHEREUPON, the Court took a recess.)
12    **THE COURT:**  Okay.  Here we go.
13    **MS. BRILLEAUX:**  Okay.  Your Honor, the first one that
14 I have is Linda Battisti, and this is no before photos within
15 five years of treatment.
16    **MR. ELLIOTT:**  Those were uploaded on December 28th of
17 2018.  That's what I have, before photos.
18    **MS. BRILLEAUX:**  We have that they're not within five
19 years of treatment.
20    **THE COURT:**  That was before?  That's photos after
21 treatment.
22    **MS. BRILLEAUX:**  Right.  This is an after photo.
23 We're looking for before photos.
24    **THE COURT:**  Is that the before photo?
25    **MR. ELLIOTT:**  It looks like it, yeah.

OFFICIAL TRANSCRIPT

1      THE COURT:  Do you know when that one occurred?

2      MR. ELLIOTT:  That's the before.

3      THE COURT:  Okay.

4      MS. BRILLEAUX:  I think we've seen the date and the

5  issue is that it's not within -- I mean, it's an old photo.

6  It's not within five years of her treatment.

7      MR. ELLIOTT:  So what we'll have to do is just get an

8  affidavit that that's her only before photo she could find.

9      THE COURT:  Okay.

10     MR. ELLIOTT:  30 days we'd ask for.

11     THE COURT:  Okay.  30 days for the affidavit.

12     MS. BRILLEAUX:  Thank you, and continuing the duty to

13  supplement.

14         The next one I have is Aline Brandauer, and this

15  is no before photos.

16     MR. ELLIOTT:  I have that they were uploaded on

17  January 16th.

18     THE COURT:  Okay.  15 days for you to verify.

19     MS. BRILLEAUX:  Thank you, Your Honor.

20     THE COURT:  There it is.

21     MS. BRILLEAUX:  Gwen Burnstein.  This is no before

22  photos within five years of treatment.

23     MR. ELLIOTT:  January 5th we uploaded the before

24  photos we have.  These are the only photos she has.  She's

25  homeless.  This one was taken in 2005, so...

1        THE COURT:  When was her chemotherapy administered?

2        MS. BRILLEAUX:  Your Honor, my notes are that this is

3    about eight years before treatment.  So we would just seek an

4    affidavit.

5        THE COURT:  Can you execute an affidavit?

6        MR. ELLIOTT:  Okay.

7        THE COURT:  Can you get it in 30 days?  You said

8    she's homeless.

9        MR. ELLIOTT:  Yeah, she's homeless, so I don't know.

10   I might need a little extra time to track her down.  But, I

11   mean, she looks like she's been very cooperative with

12   everything else.

13       THE COURT:  I'm going to give you 60 days.  She's a

14   homeless person.  I mean, it's not -- you have something.

15       MS. BRILLEAUX:  Understood, Your Honor.

16            Hattie Carson, no photos within five years of

17   treatment.  My notes show that these were 22 years before

18   treatment.

19       MR. ELLIOTT:  Again, we're going to need to get an

20   affidavit that states that she --

21       THE COURT:  30 days.

22       MR. ELLIOTT:  Yes.  Exactly.

23       MS. BRILLEAUX:  Thank you, Your Honor.

24            I think we've covered Velma Cole already.

25            Louistine Coney, we have no before photos and no

1  after photos.

2          THE COURT:  That's Louistine Coney.

3          MR. ELLIOTT:  Actually, we just were able to make

4  contact with her.  We're asking for 15 days.  We have an

5  appointment to meet with her on January 22nd to get all the

6  missing photos from her.  But she's done everything else that's

7  been asked of her, plaintiff fact sheets, authorizations.

8          THE COURT:  I'll give you 15 days.

9          MS. BRILLEAUX:  Your Honor, I'll just note for the

10 record that this has been pending since July of 2017, so some

11 time has passed.

12         THE COURT:  Yeah.

13         MS. BRILLEAUX:  15 days?

14         THE COURT:  15 days.

15         MS. BRILLEAUX:  Thank you, Your Honor.

16              Joyce Cooper, no proof of use.  We have received

17 medical records, but our notes show that there's been no

18 Docetaxel use indicated in those records.

19         MR. ELLIOTT:  We sent a subpoena to the providers on

20 January 7th.  We're waiting for a response.  We'd like to see

21 what they have to say.

22         MS. BRILLEAUX:  Your Honor, this has been pending

23 since August of 2017.  We'd like to know.

24         THE COURT:  What's the problem?

25         MR. ELLIOTT:  So the process for us is we send -- we

OFFICIAL TRANSCRIPT

1   will order the records through the normal process by sending a

2   HIPAA authorization.  Sometimes we'll get a "no patient"

3   statement back or that the records are short.  On this

4   occasion, we were forced to send a subpoena.  So, you know, we

5   didn't get -- with our initial try after August, you know, we

6   didn't get what we needed, so now we have to subpoena.  So we'd

7   ask for some additional time, at least 60 days, I guess, to get

8   the records back.  That's the whole purpose of the whole CMO 12

9   process.

10          THE COURT:  Right.  Let me give you 30 days and see

11   where we stand.  If you're working through the CMO 12, I'm not

12   going to dismiss it.

13          MR. ELLIOTT:  Okay.  Thank you.

14          THE COURT:  But I don't want to lose track of these.

15          MS. BRILLEAUX:  Your Honor, the next case is Yolanda

16   Crawford.  I want to note for the record that there were

17   several deficiencies originally.  Most of them were cured, and

18   the one outstanding one and why this case is still on the list

19   is because there was no PTO 71 verification uploaded.  So

20   that's the outstanding deficiency, and that is the

21   certification that they've produced all relevant ESI.

22          MR. ELLIOTT:  It says we've spoken with her.  She is

23   searching for PTO 71 production.  She doesn't think that she

24   has any.  If she doesn't have anything, we'll upload an

25   affidavit within 15 days.

OFFICIAL TRANSCRIPT

1          THE COURT:  15 days.

2          MS. BRILLEAUX:  Thank you, Your Honor.

3               Claire Crnic, no after photos.

4          MR. ELLIOTT:  They were uploaded on January 15th.

5          THE COURT:  15 days.

6          MS. BRILLEAUX:  Thank you, Your Honor.

7               Adlean Davis, we have no before photos.

8          MR. ELLIOTT:  Uploaded January 17th.

9          THE COURT:  15 days.

10         MS. BRILLEAUX:  Cynthia Deyoung, no before photos and

11    no after photos.  Sorry, Cynthia Deyoung.  That was from the

12    previous line.

13         MR. ELLIOTT:  Uploaded January 17th.

14         THE COURT:  15 days.

15         MS. BRILLEAUX:  Thank you, Your Honor.

16              Patricia Dwight, no before photos.

17         MR. ELLIOTT:  We've been in contact with the

18    plaintiff.  She's gathering her photos at this time, and we'd

19    ask for 15 days to upload them.

20         MS. BRILLEAUX:  Your Honor, this has been pending

21    since August of 2017.

22         THE COURT:  Okay.

23         MR. ELLIOTT:  This is going to require an affidavit,

24    actually.  She produced to us after photos --

25         THE COURT:  Okay.

OFFICIAL TRANSCRIPT

 1          **MR. ELLIOTT:**  -- back in April of 2018.  It's just
 2     these before photos, she's been -- and so...
 3          **THE COURT:**  All right.  Okay.  30 days for the
 4     affidavit.
 5          **MS. BRILLEAUX:**  Thank you, Your Honor.
 6              Georgia Forte, no before photos.  I'll let you
 7     locate this and just read our notes from this.  We originally
 8     had photos that were not dated at all, and then we had
 9     plaintiff resubmit the same photo more times and date them as
10     before photos even though they were originally dated as after
11     photos.
12          **MR. ELLIOTT:**  I don't know.  It looks like we've
13     cured the problem.  Photos have been dated and uploaded as of
14     January 11th, 2019.
15          **MS. BRILLEAUX:**  And as I've stated, that it looks
16     like the same photo was marked a before photo and an after
17     photo.  Do you have those?
18          **MR. ELLIOTT:**  Well, we have an after -- what's this
19     say?  "To whom it may concern, I do not have any more photos to
20     send.  I have reported that chemo" -- I can't read that.
21          **MS. BRILLEAUX:**  They've been destroyed.  Okay.  So
22     then have they been uploaded or have they been destroyed?
23          **THE COURT:**  She doesn't have any.  That's I read, "I
24     don't have any more photos to send.  I have reported that chemo
25     messed my teeth up."

1         **MS. BRILLEAUX:**  Your Honor, just to clarify, we did

2  have photos uploaded that said before and after, but they were

3  the same photo.  So we're just trying to figure out what the

4  discrepancy is.

5         **MR. ELLIOTT:**  It says we've uploaded present day,

6  afters, and befores.

7         **MS. BRILLEAUX:**  That's the after.  Okay.  And do we

8  have a before photo?

9         **THE COURT:**  I wonder if some of these plaintiffs

10  think that the before photo has to be just of their hair.

11  Because that's just me thinking out loud.  I shouldn't do that

12  at the end of the day.  But I do sometimes wonder if they think

13  it means more than just a photo.  This is just me thinking out

14  loud.  But I think the note she said, "I have no more photos to

15  send."  So I'm going to give you 30 days to go get an affidavit

16  from her.

17         **MR. ELLIOTT:**  There it is right here.

18         **THE COURT:**  Oh, there it is.  That's before?

19         **MR. ELLIOTT:**  That's our before.

20         **THE COURT:**  Do we have a date on that?  I'm sorry I

21  can't hear you.

22         **MR. ELLIOTT:**  See, this is what's happening, we will

23  upload the photos and the description and MDL Centrality will

24  put the date typically, but we don't put the date on the actual

25  photo.

OFFICIAL TRANSCRIPT

1          THE COURT:  Right.  So I'm just saying, do you know
2     what date that is?
3          MR. ELLIOTT:  She has to go into Centrality for that.
4          MS. BRILLEAUX:  Could we have 15 days to meet and
5     confer?
6          THE COURT:  Sure.
7          MS. BRILLEAUX:  Thank you.
8          THE COURT:  15 days.  And if it's -- I will tell you
9     this, if you determine that this is outside of that five-year
10    window, you will have 30 days to get the affidavit together.
11         MR. ELLIOTT:  Okay.
12         MS. BRILLEAUX:  Thank you.  We can move on from this
13    one.
14              Maria George, no before photos and no after
15    photos.
16         MR. ELLIOTT:  We've uploaded those on January 16th.
17         THE COURT:  15 days.
18         MS. BRILLEAUX:  Before and after.
19         MR. ELLIOTT:  Yes, before, during, and after, and
20    present day, all four.
21         MS. BRILLEAUX:  Okay.  So we'll do 15 days.
22              Elizabeth Graves, no before photos.
23         MR. ELLIOTT:  The same thing.  These were all
24    uploaded on January 17th.
25         THE COURT:  15 days to confirm.

OFFICIAL TRANSCRIPT

1            MS. BRILLEAUX:  Pamela Harlan Brooks, no before
2    photos, no after photos.
3            MR. ELLIOTT:  We spoke with the plaintiff this week.
4    She's gathering her photos.  We have an appointment to go pick
5    them up on January 23rd at her house.
6            THE COURT:  Who's this photo?
7            UNIDENTIFIED SPEAKER:  This is the last client.
8    Sorry.
9            THE COURT:  All right.  So Pamela Harlan Brooks, you
10   need 15 days?
11           MR. ELLIOTT:  That would be fine.  Thank you.
12           MS. BRILLEAUX:  Again, Your Honor, just to reiterate,
13   all these cases have been pending since 2017.
14           THE COURT:  I know.  I know.  I know.  I get that
15   when I look at the case number.
16           MS. BRILLEAUX:  It's a lot to take in.
17                Margaret Harpe, no before photos.
18           MR. ELLIOTT:  All uploaded January 17th.
19           THE COURT:  15 days to confirm.
20           MS. BRILLEAUX:  Were before -- I'm sorry, I was just
21   looking at that note that was up on the screen.
22           MR. ELLIOTT:  It's an affidavit.  That one is an
23   affidavit.
24           MS. BRILLEAUX:  Okay.  That was for Harpe?
25           THE COURT:  You need an affidavit.

1    **MR. ELLIOTT:**  She doesn't have before photos, but we

2    got the affidavit.

3          **THE COURT:**  30 days for an affidavit.

4          **MR. ELLIOTT:**  If you go to the next page, it has her

5    signature page.

6          **MS. BRILLEAUX:**  And it's notarized?

7          **MR. ELLIOTT:**  Well, we're not -- I mean, that's

8    excessive, if you're going to -- we've sent someone to --

9          **MS. BRILLEAUX:**  Well, that's what we've ordered --

10   that's what the Court has ordered for every other case.

11         **MR. ELLIOTT:**  There's no --

12         **THE COURT:**  Wait.  What's the problem?

13         **MR. ELLIOTT:**  Here's the thing, like, we've sent

14   someone to the home to get -- you want to show the -- what we

15   have, which I think is absolutely sufficient.  We can state,

16   you know, that that's her signature.

17         **MS. BRILLEAUX:**  No, I understand.  But in the other

18   cases where we talked about the affidavit stating that they

19   have no other photos, the Court has ordered for every other

20   plaintiff that they need a notarized affidavit.

21         **UNIDENTIFIED SPEAKER:**  This is sufficient.  This is

22   just her saying --

23         **THE COURT:**  I can't hear.  Do I need to hear

24   anything?

25         **MR. ELLIOTT:**  This changes everything.  Because the

last hearing, we were told to get an affidavit from the clients. Okay. So we get an affidavit, and all -- most of them are not notarized. I don't think any of them that we've gotten are notarized.

So now we have to go back out to the home, have them redo it all over again. I think it's just excessive. If we have an affidavit with their signature saying that they don't have the photos, and now I have to go back and do it all over again and get a notary to do it, I think that's just excessive.

**MS. BRILLEAUX:** Your Honor, I think by definition an affidavit is notarized.

**THE COURT:** In Louisiana, you have to -- you know, an affidavit is --

**MS. BRILLEAUX:** A notarized affidavit.

**THE COURT:** -- notarized.

**MR. ELLIOTT:** But if they're signing off -- if it's their signature and they say, "I don't have the photos," or they put in a letter to us or something like that, that's evidence enough that they did their due diligence and did what they could to determine if there was photos or not.

I don't understand why the notary just validates that that much further if I can say as an officer of the court, "This is my client, this is her signature, she says she doesn't have them, here's a letter," you know. It costs our office --

1  I mean, it's the cost to go to all these homes just to get a

2  notary out there.  It's just...

3      **MS. BRILLEAUX:**  Your Honor, I just think for

4  consistency purposes this is what we have discussed on the

5  record earlier today, the other ones -- the other plaintiffs

6  that you spoke with -- or counsel for other plaintiffs were

7  ordered to submit a notarized affidavit, and that is Louisiana

8  law.

9      **MR. ELLIOTT:**  They're not notarizing their plaintiff

10  fact sheets.  They're just signing off on their plaintiff fact

11  sheets, and that's been good enough.  You know, we're not

12  getting notaries on all the auths.  If you can compare the

13  signature on the plaintiff fact sheets or the authorizations to

14  a letter with that same signature or a statement from them

15  saying, "I don't have any before photos," and that's valid.  We

16  don't need a notary for that.

17      **MS. BRILLEAUX:**  The defense position to that would be

18  the no photos affidavit is an exceptional circumstance for

19  evidence that they're expected to have in this litigation.  You

20  know, signing your plaintiff fact sheet is just verifying that

21  those are your responses.  But providing an affidavit that you

22  have no photos, that's an exceptional remedy for not having a

23  central piece of evidence in this litigation of proof of

24  injury.

25      **MR. ELLIOTT:**  Let's say we had a -- if this case went

OFFICIAL TRANSCRIPT

1    to trial, we put the person on the stand, they swear under

2    oath, "I don't have any photos, I told my lawyer, I wrote to

3    him, I said I don't have them."  "Is it your signature, ma'am,

4    you said you didn't have any photos?"  You know, that's proof.

5              **THE COURT:**  Are we done?

6              **MR. ELLIOTT:**  Yes, Your Honor.  Sorry.

7              **THE COURT:**  I just thought maybe we were -- this is

8    the deal.  I understand, and I feel your pain, but let me be

9    frank with you, I have for everybody else said get an affidavit

10   because this is part of their proof.  And I have to tell you --

11   now, you know, part of this, now outside of five years, I

12   think, is a little bit much, and I probably would not have

13   included that in here, but I'm stuck with these plaintiff fact

14   sheets.

15             But it's hard for me to believe -- it's just

16   extraordinary that people have no photographs at all of any

17   kind before their cancer.  And so we have said, send me an

18   affidavit.  Now, I never talked about whether or not this

19   affidavit needed to be notarized or not because by its very

20   nature, under Louisiana law, it's notarized.

21             Now, you know, you can -- my guess is you're a

22   notary.

23             **MR. ELLIOTT:**  I am not a notary myself.

24             **THE COURT:**  What?  And this is part of in Louisiana,

25   maybe that's it, it's every lawyer is a notary.

OFFICIAL TRANSCRIPT

1          **MR. ELLIOTT:**  Yeah.  There's a -- in Colorado,
2    there's a whole certification process for notaries.  Not all of
3    us are notaries, unfortunately.
4          **THE COURT:**  You see, it's not that -- to be perfectly
5    frank with you, it's not that big a deal in Louisiana to have
6    an -- you know, to have an affidavit, to have it notarized
7    because every lawyer is a notary, and every client can go to
8    his lawyer's office, and it's done.  But, you know, I was very
9    concerned with people that are being asked to show that they
10   have sustained this damage, and, very frankly -- very
11   frankly -- there's no evidence of what you looked like before.
12                And so if I am alleging that I have lost and now
13   suffer from alopecia because of this chemotherapy and I didn't
14   have hair before, and so you're now asking people to --
15         **MR. ELLIOTT:**  I just want to say, Your Honor, that if
16   these cases go to trial, you can have family members come and
17   testify as to whether or not the hair was present.  You know,
18   what -- but this -- it's a more likely than not standard, too,
19   you know, obviously.
20                I just think it's just overburdensome on
21   plaintiffs to -- at least in our situation at this time, if
22   they are telling us that they have looked, they've done
23   everything they could, I'm an officer of the court saying, "My
24   client doesn't have it," and she signs off on it without a
25   notary, I think that should be sufficient proof because it

1   certainly would be if we were in a trial because we could

2   through their testimony or family members and things to say --

3          THE COURT:  No.  Actually, we would put her under

4   oath at trial.

5          MR. ELLIOTT:  Yeah.  So...

6          MS. BRILLEAUX:  And, Your Honor, I mean, I think -- I

7   understand counsel's point about more likely than not, but it

8   also goes to damages, which is an important element of the

9   claim as well, you know, the extent to which the plaintiff was

10  affected.  So it is, as you understand, a very, very important

11  piece of evidence for proof of injury.

12         MR. LAMBERT:  May I -- Judge, may I suggest an

13  alternative?  I understand Mr. Elliot's problem.  He has a lot

14  of clients, and he's concerned about that.  What about

15  uploading this particular handwritten statement or signed

16  statement of their client to MDL Centrality and then having

17  them issue another declaration that their fact sheet is

18  complete and that these are all the representations?

19              It would seem that's a very similar manner of

20  attesting to the completion of the fact sheet as the affidavit

21  that has been required of other plaintiffs.  It's just a

22  potential solution to the problem.

23         MS. BRILLEAUX:  Your Honor, I would just, for the

24  defense, say that, you know, for consistency purposes, we've

25  already requested that affidavits be provided from other

1   plaintiffs and that we need to use the same solution across the

2   board.

3         **THE COURT:**  You have no idea how tired I am and how

4   much I don't want to -- you know, I do have a problem with me

5   ordering affidavits for everyone else.  But I, very frankly,

6   understand, and perhaps there's a mechanism where they declare

7   it under oath without it being in front of -- without it being

8   notarized.  So we could do that to shortcut the process of you

9   having to have a notary visit those houses with some sort of --

10  where they declare it under oath, and perhaps you need to

11  prepare a form that you send to your clients --

12        **MR. ELLIOTT:**  Okay.

13        **THE COURT:**  -- where it's a declaration under oath so

14  that you're not sending around someone --

15        **MR. ELLIOTT:**  Okay.

16        **THE COURT:**  -- a notary.

17        **MR. ELLIOTT:**  Would this need to be a court-approved

18  form or we do -- we can just draft one up saying, "I declare

19  under oath --

20        **THE COURT:**  You know, that's why --

21        **MR. ELLIOTT:**  -- and then sign it?

22        **THE COURT:**  -- that's why Dawn and Palmer are getting

23  paid the big bucks.  You all.  I don't have to approve it, but

24  I think there is a mechanism where you can declare under oath

25  that these facts are true, and it's not -- it's just some sort

1   of formal declaration.

2           **MS. BARRIOS:**  Your Honor.

3           **THE COURT:**  A bit like the declaration you or -- my

4   guess is, and I haven't looked at the declaration on the

5   plaintiff fact sheet, or certainly not that I can remember,

6   that's not -- how was that done?  Can I see the declaration?

7           **MS. BARRIOS:**  Attestation?

8           **THE COURT:**  Yes, just an attestation.

9           **MS. BARRIOS:**  It's signed by the plaintiff.  The

10  first one, I think is --

11          **THE COURT:**  That's what I'm saying, can we do

12  something like that where they attest that they have no other

13  photographs without having a notary present?  I, very frankly,

14  when we were talking about affidavits, I was not so far in the

15  weeds where I thought, "Well, this means that you have to have

16  a notary driving around."  Very frankly, I never thought about

17  it.  I just thought I needed something beyond -- beyond

18  somebody just saying, "Hey, I don't have any more photographs."

19  Well, we need something from them that they have to certify and

20  attest that they have not.  So we can do that.

21          **MS. BARRIOS:**  Your Honor, Dawn Barrios.  I think this

22  is something to put on our list for our meeting, and in the

23  meantime, whatever they have signed by the client would go up

24  to Centrality.  We'll make note --

25          **THE COURT:**  And then we'll deal with it.

OFFICIAL TRANSCRIPT

1          **MS. BARRIOS:**  -- and then we'll deal with it then.
2     And Ms. Brilleaux and I --
3          **THE COURT:**  But I'll be frank with you, at the end of
4     the day, this is the first time anybody has voiced any problem
5     with it, and I just -- to be perfectly frank, it's very
6     uncomfortable for me to say, but there's a different set of
7     rules for Bachus & Schanker.
8          **MR. ELLIOTT:**  I understand.
9          **THE COURT:**  But it is something to put on the list,
10    but I -- upload what you have, and then we'll deal with it.
11    But I don't want somebody's case -- I'm not going to dismiss
12    somebody because they didn't have a notary.
13         **MS. BRILLEAUX:**  And for the sake of consistency, can
14    we keep the affidavit ruling, and then decide that we'll
15    revisit the issue on what exactly is required for an affidavit?
16         **THE COURT:**  Yes.  I just think some certification
17    from the client.
18         **MS. BRILLEAUX:**  Thank you.
19         **THE COURT:**  That's what I was concerned with, and the
20    client needs to understand this is not -- when I have so many
21    people saying, "Well, there are no others," well, you got to
22    get something from your client to say that beyond, "She told me
23    she didn't have any more."
24         **MS. BRILLEAUX:**  Thank you, Your Honor.  And was that
25    for -- did we leave off on Harpe?

1              THE COURT:  Harpe, but I think you had something for
2      Harpe.
3              MS. BARRIOS:  I thought that was Marcia Harris.
4              THE COURT:  Marsha Harpe.
5              MS. BRILLEAUX:  Margaret Harpe.
6              THE COURT:  Margaret Harpe.
7              MS. BRILLEAUX:  Thank you, Your Honor.
8              Marcia Harris.  This is photos are not dated,
9      and that's specifically with regard to the before photos.
10             MR. ELLIOTT:  We just ask for an extension to get the
11     dates on the photos.
12             THE COURT:  I'll give you 15 days to get the dates on
13     the photos.
14             MS. BRILLEAUX:  Connie Hendrix, no before photos, no
15     after photos.
16             MR. ELLIOTT:  January 16th, they were uploaded.
17             THE COURT:  15 days.
18             MS. BRILLEAUX:  Dorothy Henson, photos not dated and
19     also no before photos.
20             MR. ELLIOTT:  This says we received present date
21     photos on the 16th of January.  They've been dated and properly
22     uploaded on January 15th.  She mailed in her before photos.
23     We're waiting for them to arrive.
24             THE COURT:  15 days.
25             MS. BRILLEAUX:  Martha Hopkins, no before photos.

OFFICIAL TRANSCRIPT

1        **MR. ELLIOTT:**  We sent someone to her last known

2    address.  She moved.  We'd ask for 15 days to get her new

3    address from her.

4        **THE COURT:**  What are we missing in this one?

5        **MS. BRILLEAUX:**  For Martha Hopkins, we have no before

6    photos, and this is a case that's been pending since December

7    of 2016.

8        **MR. ELLIOTT:**  We've done everything, Your Honor, the

9    PFS, the authorizations, ESI has been uploaded, proof of use,

10   CMO 12 has been complied with.  It looks like we did upload an

11   after photo.  We're just -- we need some type of affidavit from

12   her for the other.

13       **MS. BRILLEAUX:**  When is the last time that you had

14   contact with your client?

15       **MR. ELLIOTT:**  I can't tell you that right now.

16   That's not in my notes.

17       **THE COURT:**  The only thing we're missing are before

18   photos?

19       **MR. ELLIOTT:**  Before and during.

20       **THE COURT:**  Okay.  I'm going to give you 15 days.

21       **MR. ELLIOTT:**  Okay.

22       **MS. BRILLEAUX:**  Thank you, Your Honor.

23            Lois Howell, no before photos and no after

24   photos.

25       **MR. ELLIOTT:**  Before was uploaded on January 16th,

1   and afters were uploaded the same day.

2            **THE COURT:**  15 days.

3            **MS. BRILLEAUX:**  Barbara Hubbard, undated photos.

4            **MR. ELLIOTT:**  Looks like we uploaded them

5   January 16th.

6            **THE COURT:**  15 days.

7            **MS. BRILLEAUX:**  The dates?

8            **MR. ELLIOTT:**  Again, get on Centrality.

9            **MS. BRILLEAUX:**  The dates are?  Thank you.

10           **MR. ELLIOTT:**  On the description.

11                We'll do 15 days.

12           **MS. BRILLEAUX:**  Irene Hupp, no before photos, no

13   after photos, and also no signed declaration for the PFS.

14           **MR. ELLIOTT:**  We have an appointment with her on this

15   Saturday to get all the signatures and photos.

16           **THE COURT:**  Seven days.

17           **MS. BRILLEAUX:**  Thank you, Your Honor.

18                Sheila Jackson, no before photos.

19           **MR. ELLIOTT:**  Uploaded January 13th.

20           **THE COURT:**  15 days.

21           **MR. ELLIOTT:**  Oh, the statement.  So this is

22   something that we had her sign saying that she does not have

23   any befores, and I think that would be a sufficient form of

24   telling the Court they don't have any.

25           **THE COURT:**  All right.  We're going to take that up

1    at our next meeting.

2              **MS. BRILLEAUX:**  Thank you, Your Honor.

3                   Renee Jeffers, no declaration.

4              **MR. ELLIOTT:**  Uploaded January 17th.

5              **THE COURT:**  15 days.

6              **MS. BRILLEAUX:**  Thank you, Your Honor.

7                   Mattie Johnson, no before photos.

8              **MR. ELLIOTT:**  Uploaded January 17th -- or just --

9    usually, she puts the signatures behind that page.

10             **MS. BRILLEAUX:**  Your Honor, for the record --

11             **MR. ELLIOTT:**  We'll have to do some type of

12   affidavit.

13             **MS. BRILLEAUX:**  Could we have 15 days for a

14   declaration or an affidavit?

15             **THE COURT:**  15 days.

16             **MS. BRILLEAUX:**  Thank you, Your Honor.

17                  Pressie T. Johnson, no proof of use, undated

18   photos, and no after photos.

19             **MR. ELLIOTT:**  No proof of use.  Let's see.  All

20   photos have been dated and uploaded as of January 17th.  We did

21   a subpoena on January 7th because we haven't been able to get

22   the proof of use at this time.

23             **THE COURT:**  15 days to verify the sufficiency of the

24   photographs, and I'll give you 30 days on the other, and we'll

25   just see where that stands.

1          **MS. BRILLEAUX:**  Your Honor, if there's no evidence of
2   Docetaxel use, we would ask that the case be dismissed after 30
3   days.
4          **MR. ELLIOTT:**  Your Honor.
5          **THE COURT:**  No, I think that's part of CMO -- didn't
6   we talk about that?
7          **MS. BRILLEAUX:**  I know that counsel said he issued a
8   subpoena, but I was unclear --
9          **MR. ELLIOTT:**  They don't always get back to us within
10  30 days, and if we don't, then we ask to have the deposition.
11         **THE COURT:**  You were winning.
12         **MR. ELLIOTT:**  I know.
13         **THE COURT:**  Sometimes you got to stop talking.
14         **MR. ELLIOTT:**  Okay.
15         **THE COURT:**  I said I'm not prepared to do that.  This
16  is through the process.  We're going to let the subpoena
17  process work, but I don't want to lose track of it.
18         **MS. BRILLEAUX:**  Thank you, Your Honor.
19         **MR. ELLIOTT:**  Thank you, Your Honor.
20         **MS. BRILLEAUX:**  Deborah Jones, undated photos, and I
21  think also as an additional issue, no before photos within five
22  years of treatment.
23         **MR. ELLIOTT:**  It says that we've dated all the photos
24  and uploaded them as of January 13th.
25         **THE COURT:**  Is that -- is it just photos?

OFFICIAL TRANSCRIPT

1     **MS. BRILLEAUX:**  I think from the photos you can tell
2  that these are not within five years of treatment.
3     **MR. ELLIOTT:**  This bottom one could be.  The top one,
4  definitely not.
5     **MS. BRILLEAUX:**  He's agreeing.
6     **MR. ELLIOTT:**  Anyway...
7     **THE COURT:**  Get some dates.  You got 15 days.
8     **MR. ELLIOTT:**  There's the after.
9     **THE COURT:**  That's the after.
10    **MR. ELLIOTT:**  Those are the after pictures.  Yeah.
11    **MS. BRILLEAUX:**  Okay.  And, yeah, the issue was with
12  the before photos, so if we could get an affidavit.
13    **THE COURT:**  30 days.
14    **MS. BRILLEAUX:**  Thank you.  And obviously continuing
15  duty to supplement.
16        The next one I have is Myra Jones, no before
17  photos within five years of treatment.
18    **MR. ELLIOTT:**  Deborah Jones?  Is that who we're on?
19    **MS. BRILLEAUX:**  Myra Jones.
20    **THE COURT:**  2002 --
21    **MR. ELLIOTT:**  Before photos were uploaded on
22  December 27th.
23    **MS. BRILLEAUX:**  No, within five years.
24    **MR. ELLIOTT:**  The only photos that she has.  Do we
25  have an affidavit?  We may have to get something like that.  30

OFFICIAL TRANSCRIPT

1   days we'd ask for.

2            **THE COURT:**  Okay.  Thank you.  30 days.

3            **MS. BRILLEAUX:**  Thank you, Your Honor.

4                  Shirely Jones, photos not dated.

5            **MR. ELLIOTT:**  Before, during, after, and present days

6   have all been dated and properly uploaded as of January 17th.

7            **THE COURT:**  15 days for defense to confirm.

8            **MS. BRILLEAUX:**  Thank you.

9                  Tonia Jones, no before photos within five years

10  of treatment.

11           **MR. ELLIOTT:**  Before photo was August 2nd, 2018.

12  These are the only before photos she has in her possession.  It

13  was uploaded on August 2nd, 2018.  There's just this one in

14  2000.

15           **MS. BRILLEAUX:**  Right, so the issue is within five

16  years.

17           **MR. ELLIOTT:**  We're going to need another --

18           **THE COURT:**  You have 30 days for verification.

19           **MR. ELLIOTT:**  -- some type of affidavit.

20           **MS. BRILLEAUX:**  Thank you.

21                  Williemae Kelly-Joy, photos not dated.

22           **MR. ELLIOTT:**  Before and after photos have been dated

23  and properly uploaded as of January 16th.

24           **THE COURT:**  15 days.

25           **MS. BRILLEAUX:**  Sylvia Lewis, no before photos within

OFFICIAL TRANSCRIPT

1  five years of treatment.  My notes show that the photos are 19

2  years prior to treatment.

3           **MR. ELLIOTT:**  Again, this is the only photo she has

4  in her possession from before.  So we're going to have to get

5  an affidavit or a declaration of some kind.

6           **THE COURT:**  30 days.

7           **MS. BRILLEAUX:**  Geraldine Manigault, no photos within

8  five years of treatment.

9           **MR. ELLIOTT:**  Before was uploaded December 21st,

10 2018.

11          **MS. BRILLEAUX:**  It's not within five years of

12 treatment.

13          **MR. ELLIOTT:**  I'm not sure that's true, but okay.

14 We'd ask for 30 days.

15          **THE COURT:**  30 days.

16          **MS. BRILLEAUX:**  Sheila McDowell, photos not dated.

17          **MR. ELLIOTT:**  Photos have been dated and properly

18 uploaded as of January 17th.

19          **THE COURT:**  15 days for defendants.

20          **MS. BRILLEAUX:**  Mary McKenzie, no before photos and

21 no after photos.

22          **MR. ELLIOTT:**  We did an extension on the photos.

23 She's looking for photos from family and friends.  We have an

24 appointment with her on January 24th to pick up all the photos

25 in her possession.

1          **MS. BRILLEAUX:**  This has been pending since December

2    of 2016.

3          **THE COURT:**  15 days.

4          **MR. ELLIOTT:**  Your Honor, I just want to -- I keep

5    hearing how long the case has been pending.  But the fact of

6    the matter is, these didn't show up on a show cause until we

7    got the notice of noncompliance.  So, you know, we're working

8    diligently on all these cases, but we weren't actually notified

9    by defense counsel until much more recently than that.

10          **MS. BRILLEAUX:**  Your Honor, I mean, this is a very

11    basic part of the PFS.  It's not a surprise that they need

12    photographs for all their clients.

13          **THE COURT:**  Did I just grant 15 days, and am I just

14    going to have to keep doing this?  We don't need to argue the

15    process.

16          **MR. ELLIOTT:**  Gotcha.  Gotcha.

17          **MS. BRILLEAUX:**  Thank you, Your Honor.

18               Joann Menefee, photos are not dated, no before

19    photos.

20          **MR. ELLIOTT:**  Let's see.  Present day photos have

21    been dated and properly uploaded as of January 17th.  She's

22    sending us her before photos.  We'd ask for 15 days.

23          **THE COURT:**  15 days.

24          **MS. BRILLEAUX:**  April Miller, no before photos.

25          **MR. ELLIOTT:**  We're asking for 15 days.  We've

OFFICIAL TRANSCRIPT

1  uploaded the present day photos on January 17th, and a

2  statement of the during that she didn't have them.  She's

3  asking family and friends if she can find any before photos.

4         **THE COURT:**  Okay.  I'm going to --

5         **MR. ELLIOTT:**  We'd ask for 15.

6         **THE COURT:**  15 days.

7         **MS. BRILLEAUX:**  Rebecca Mozisek, no before photos, no

8  after photos.

9         **MR. ELLIOTT:**  The plaintiff has been responsive.  It

10  looks like we uploaded an after photo on January 17th.  She's

11  gathering the remainder of them.  We have an appointment with

12  her Thursday of next week to get all the photos.

13         **THE COURT:**  15 days.

14         **MS. BRILLEAUX:**  Lorraine Newton.  We have no proof of

15  use, no before photos, no after photos, no signed declaration

16  for the PFS, no PTO 71, and no authorizations.

17         **MS. BARRIOS:**  Your Honor, our notes indicate that

18  this is a client of Bruno & Bruno, not Bachus & Schanker.  Is

19  that correct?

20         **THE COURT:**  That's Baron & Budd or Bruno & Bruno?

21         **MS. BARRIOS:**  My notes say Bruno & Bruno.

22         **MR. ELLIOTT:**  Oh, that's correct.  We were just -- on

23  the 11th, we got an e-mail regarding this case.  It was on

24  Bruno & Bruno's noncompliance list.  We never had notice of it

25  until January 11th.  We just filed a notice of appearance on

OFFICIAL TRANSCRIPT

1    that case, so we'd ask that it be passed to the next show cause

2    hearing.

3              **THE COURT:**  Yeah.  Let's just pass that until we

4    figure out --

5              **MS. BARRIOS:**  Are you going to substitute out for

6    Bruno & Bruno?

7              **MS. BRILLEAUX:**  They already have.

8              **MR. ELLIOTT:**  It looks like we filed a notice of

9    appearance after we got it.  Yeah.

10             **THE COURT:**  Let's pass it and I'll give you an

11   opportunity to get it straight.

12             **MS. BRILLEAUX:**  Thank you.  We'll pass this to next

13   conference's list.

14                  Madeline Niles, no proof of use and no before

15   photos.

16             **MR. ELLIOTT:**  You said no what?

17             **MS. BRILLEAUX:**  No proof of use.

18             **MR. ELLIOTT:**  It says proof of use was uploaded on

19   February 19th of 2018.

20             **MS. BRILLEAUX:**  And the issue --

21             **MR. ELLIOTT:**  We uploaded another one on

22   January 13th of 2019.

23             **MS. BRILLEAUX:**  And, Your Honor, our notes reflect

24   that the records indicate a plan to use Docetaxel, but no proof

25   that it was actually ever administered.  So, basically, the

OFFICIAL TRANSCRIPT

```
1   equivalent of recommending a plan of treatment, but no evidence
2   that it was actually given to the plaintiff.
3             MR. ELLIOTT:  Again --
4             THE COURT:  Did you issue a subpoena for that?
5             MR. ELLIOTT:  We could issue a subpoena.  We have
6   not.
7             THE COURT:  Okay.  So you uploaded medical records
8   that talk about a plan for Docetaxel.
9             MR. ELLIOTT:  Docetaxel.
10            THE COURT:  Okay.
11            MR. ELLIOTT:  It looks like we did another upload,
12  though, on the 13th, and Jennifer's going to look and see if
13  that clarifies it.
14            MS. BRILLEAUX:  My notes are from the 15th.
15            MR. ELLIOTT:  Can you zoom in on that?
16            I guess we'd ask to be able to issue a subpoena
17  on this case, I guess, and if --
18            THE COURT:  Okay.  Let's just pass this one until --
19  I'm going to ask you all to meet and confer and see what you
20  need to do to get the information.
21            MS. BRILLEAUX:  Thank you, Your Honor.  Do you have a
22  time frame for the meet and confer?
23            THE COURT:  Try to talk -- you all meet and confer
24  within 30 days to see --
25            MS. BRILLEAUX:  Thank you, Your Honor.
```

OFFICIAL TRANSCRIPT

1          THE COURT:  I think if there's a plan to use it and

2    then -- what on earth is going on with my computer?

3          MS. BRILLEAUX:  Linda O'Brien, no before photos

4    within five years of treatment.

5          MR. ELLIOTT:  We uploaded photos on the 13th.

6          MS. BRILLEAUX:  I don't think they were within five

7    years of treatment.

8          MR. ELLIOTT:  It says before summer 2004.

9          MS. BRILLEAUX:  My notes show --

10         THE COURT:  30 days.

11         MS. BRILLEAUX:  Thank you.

12              Peggy O'Neill, no before photos.

13         MR. ELLIOTT:  Ask for 15 days to -- we've uploaded

14    the after photos.  We need time to either do an affidavit or

15    she can -- she needs time to look further.

16         THE COURT:  30 days for an affidavit.

17         MS. BRILLEAUX:  Luci Padron, no before photos.

18         THE COURT:  30 days.

19         MR. ELLIOTT:  She does not have any before photos in

20    her possession.  We have to do a declaration.

21         THE COURT:  30 days.

22         MS. BRILLEAUX:  Thank you, Your Honor.

23              Mattie Patterson, no before photos and no after

24    photos.

25         MR. ELLIOTT:  Plaintiff is collecting all her photos.

OFFICIAL TRANSCRIPT

1   We have an appointment on January 26th to pick all of them up.
2   We'd ask for 15 days to upload them.
3           **THE COURT:**  15 days.
4           **MS. BRILLEAUX:**  Arlene Pelfrey, no proof of use.
5           **MR. ELLIOTT:**  We've made contact with her.  She wants
6   to be cooperative, but --
7           **THE COURT:**  What's -- the proof of use is medical
8   records?
9           **MS. BRILLEAUX:**  Yes, Your Honor, proof that she was
10  administered Docetaxel.
11          **MR. ELLIOTT:**  Can we pass this one?  I need to review
12  the medical records.
13          **MS. BRILLEAUX:**  We can come back to this at the end
14  of the...
15          **THE COURT:**  Defer.
16          **MS. BRILLEAUX:**  Vicki Pigg, no before photos, no
17  after photos.
18          **MR. ELLIOTT:**  Plaintiff has gathered photos, mailed
19  them to us.  We're waiting for them.  So we spoke with her on
20  January 8th.  She told us they were in the mail.
21          **THE COURT:**  15 days.
22          **MS. BRILLEAUX:**  Marisa Pryor, no before photos, no
23  after photos.
24          **MR. ELLIOTT:**  All photos have been dated and properly
25  uploaded as of January 17th.

OFFICIAL TRANSCRIPT

1          **THE COURT:**  15 days for defendant to confirm.

2          **MS. BRILLEAUX:**  Thank you, Your Honor.

3               Deborah Rachilla, no before photos, no after

4     photos.

5          **MR. ELLIOTT:**  Rachilla, we've made numerous calls, no

6     response from plaintiff.  She's been -- she's missing.

7          **THE COURT:**  Dismissed with prejudice.

8          **MS. BRILLEAUX:**  Thank you.

9               Vicksay Richardson, no before photos within five

10    years of treatment.  My notes show that it's approximately 15

11    years before treatment.

12         **MR. ELLIOTT:**  These are the only before photos that

13    she has.  She had her chemo in 2008.  Her photos are from the

14    '90s, so we'll have to do a declaration and upload it.

15         **THE COURT:**  She had chemo in 2008?

16         **MR. ELLIOTT:**  2008, chemo.  But her photos -- her

17    before photos look like they're from the '90s, according to my

18    notes.

19         **THE COURT:**  This isn't a before photo?

20         **MR. ELLIOTT:**  Maybe this is --

21         **THE COURT:**  I'm wondering when she -- you know, I'm

22    going to give you guys 15 days to confer.  Because I'm

23    wondering, this early 2008, it might be that that was shortly

24    before chemotherapy.

25         **MR. ELLIOTT:**  Yeah, you're right.

1          **MS. BRILLEAUX:**  Well, we have -- I don't know what

2     the date is on this, but my notes show that the dated before

3     photo was dated 15 years prior to treatment.

4          **THE COURT:**  That's what he said.  They had some

5     early, and this was recently uploaded.  So I'm giving you 15

6     days to go figure this out.

7          **MS. BRILLEAUX:**  Thank you.

8          **MR. ELLIOTT:**  Thanks.

9          **MS. BRILLEAUX:**  Madis Russell, no before photos

10    within five years of treatment.

11         **MR. ELLIOTT:**  These are the only photos that she has.

12    We'll have to get a declaration.

13         **THE COURT:**  30 days.

14         **MS. BRILLEAUX:**  Kathryn Sanchez, photos not dated, no

15    photos within five years of treatment.

16         **MR. ELLIOTT:**  Provided photos, uploaded all of them

17    on January 14th.  These are the only before photos she has in

18    her possession, so we'll have to get a declaration.

19         **THE COURT:**  15 days.

20         **MS. BRILLEAUX:**  Mattie Shoemaker, no before photos

21    within five years of treatment.  I have 20 years.

22         **MR. ELLIOTT:**  Before photo is dated and uploaded on

23    January 11th.  Treatment was in 2009/2010.  Before photo's --

24         **MS. BRILLEAUX:**  The photo says 1989.

25         **MR. ELLIOTT:**  -- 1989.

1    **THE COURT:**  You might need 30 days.

2    **MR. ELLIOTT:**  This is the only photo she has in her

3    possession, according to the client, so we'll have to get an

4    affidavit or a declaration to that effect.

5    **THE COURT:**  Okay.

6    **MS. BRILLEAUX:**  Lakay Simmons, no before photos.

7    **MR. ELLIOTT:**  Same thing.  We'll have to get some

8    type of declaration for her regarding her before.  But we've

9    uploaded the after and present day photos.

10   **MS. BRILLEAUX:**  Your Honor, we'd ask for 15 days.

11   **THE COURT:**  So ordered.

12   **MS. BRILLEAUX:**  Kim Smith, no declaration for the

13   PFS.

14   **MR. ELLIOTT:**  Kim Smith?

15   **MS. BRILLEAUX:**  Yes.

16   **MR. ELLIOTT:**  We'd ask for 15 days.  She sent us her

17   electronic PFS and it does not allow for a signature.  She's

18   mailed us her declaration page.  We're just waiting for it in

19   the mail.  She put it in the mail on the 12th.  So once we get

20   it, we'll upload it.

21   **THE COURT:**  All right.

22   **MS. BRILLEAUX:**  Seven days?

23   **THE COURT:**  I'll give you 15 days.

24   **MS. BRILLEAUX:**  I'm sorry, I didn't hear, Your Honor.

25   **THE COURT:**  15 days.

OFFICIAL TRANSCRIPT

1       **MS. BRILLEAUX:**  Thank you.

2               Octavia Smith, no before photos and no PTO 71

3   ESI verification.

4       **MR. ELLIOTT:**  We weren't able to locate the case

5   number, but she says she's hired another attorney and doesn't

6   want our representation any longer.  We'd ask for a dismissal

7   without prejudice.

8       **THE COURT:**  I'm going to dismiss it without

9   prejudice.

10      **MS. BRILLEAUX:**  Thank you.

11              Beverly Spencer, no before photos.

12      **MR. ELLIOTT:**  We'd ask for 15 days.  After photos

13  were dated and uploaded on January 12th.  We have an

14  appointment to pick up her before and during photos on

15  January 22nd.

16      **THE COURT:**  So ordered.

17      **MS. BRILLEAUX:**  That was 15?

18      **THE COURT:**  15 days.

19      **MS. BRILLEAUX:**  Thank you, Your Honor.

20              Linda Steadman, no before photos, no after

21  photos.

22      **MR. ELLIOTT:**  We have an appointment, actually, on

23  the same day, January 22nd, to go pick up the photos, and we'll

24  upload them shortly thereafter.

25      **THE COURT:**  15 days.

1          **MS. BRILLEAUX:**  Teresa Terry.  Your Honor, the

2    deficiency is for no before photos, but I -- and no signed

3    declaration, no after photos, but I do have a note here that a

4    declaration of attempts to reach the client unsuccessfully was

5    filed into the record this morning.

6          **MR. ELLIOTT:**  I have here we asked for an extension.

7    We just found her new address.  And that this was updated as of

8    last night.  We spoke with her Monday.  She's been ill during

9    the past few months.  We're sending a rep to her house next

10   week to gather her photos.

11         **THE DEPUTY CLERK:**  There was one filed today.

12         **MR. ELLIOTT:**  And PTO 71.

13              Can we have 15 days just to clarify?  Because my

14   notes -- these I got last night.  These should be the most

15   current.  Maybe there was a mistake on the declaration.

16         **THE COURT:**  Wait.  They filed a declaration earlier

17   and then --

18         **MR. ELLIOTT:**  We filed it today.  Can I just make

19   sure that wasn't a mistake?  Can I have 15 days, and if so, if

20   it is correct --

21         **THE COURT:**  What do your notes -- what are we missing

22   in this one?

23         **MR. ELLIOTT:**  My notes say that we just found her new

24   address this month.  We spoke with her on Monday.  She has been

25   ill during the past few months.  We're sending a rep to her

OFFICIAL TRANSCRIPT

1  house next week to gather her photos and PTO 71.

2  **THE COURT:**  And that's the ESI and photos, that's all

3  that we're missing?

4  **MS. BRILLEAUX:**  Yes.  It's missing several things, no

5  before photos, no after photos, no declaration, no PTO 71.  But

6  that a declaration of unsuccessful attempts to contact the

7  client was filed into the record this morning.

8  **MR. ELLIOTT:**  It may have been done in error.

9  **THE COURT:**  I hate this.

10  **MR. ELLIOTT:**  Sorry about that.  I just --

11  **THE COURT:**  It's just the photos and the ESI?

12  **MS. BRILLEAUX:**  And the declaration.

13  **THE COURT:**  And the ESI declaration.

14  **MS. BRILLEAUX:**  The PFS and the ESI declaration.  The

15  PFS has not been signed.

16  **MS. BARRIOS:**  Your Honor, I may offer a suggestion,

17  is to allow them until Tuesday, because Monday is Martin Luther

18  King Day, to figure out if this is a mistake, and then if

19  it's --

20  **THE COURT:**  I'll defer it until Tuesday, but

21  understand you're going to have to send Sam a note.

22  **MS. BRILLEAUX:**  Thank you, Your Honor.

23  Cynthia Turner, photos not dated.

24  **MR. ELLIOTT:**  Photos have been dated as of

25  January 17th and uploaded.

OFFICIAL TRANSCRIPT

1      THE COURT:  15 days for defendant to confirm.

2      MS. BRILLEAUX:  Shirley Turner, no before photos.

3      MR. ELLIOTT:  We uploaded a statement, it looks like,

4  on the 14th.

5      THE COURT:  30 days for declaration or whatever.

6      MS. BRILLEAUX:  Right.  And we'll note that that was

7  not signed or notarized.

8      THE COURT:  I just said 30 days for the declaration.

9      MS. BRILLEAUX:  Thank you, Your Honor.

10          Sharon Wells, no before photos.

11      MR. ELLIOTT:  Sharon Wells?

12      THE COURT:  15 days to get the photos.

13      MR. ELLIOTT:  Okay.

14      THE COURT:  Either way.  That's the last?  Okay.  We

15  have to talk.  We're done.

16      MS. BARRIOS:  Your Honor, unfortunately, there's

17  another matter, but we could, with Your Honor's consent, just

18  do a telephone conference one day when you're --

19      THE COURT:  You all have another matter with this?

20      MS. BARRIOS:  Well, what happened, Your Honor, at the

21  last call docket, the -- Leslie LaMacchia said, "Oh, we filed a

22  declaration, you just missed the case."

23      THE COURT:  Oh, you mean -- I thought she had to

24  leave.

25      MS. BARRIOS:  Oh, no.  No.  She then found -- she

OFFICIAL TRANSCRIPT

1   then found out when she got the transcript that she was looking

2   at the wrong line, as we all know there's so many names on the

3   line, and she wanted to see if she could have that revoked and

4   have it reinstated.

5               I think Ms. Kelly Bieri is on the line.  She and

6   I spoke last night, or yesterday, and we both thought it was

7   easier to just present it to you orally than flood the record

8   with papers.  So if you don't want to do it right now.

9               **THE COURT:**  No, let's do it right now and be done

10  with it.

11              **MS. BARRIOS:**  We have to get her on the phone.

12              **THE COURT:**  What I don't want is the record --

13              **MS. BRILLEAUX:**  Do you have Ms. LaMacchia's number,

14  Erin?

15              **THE DEPUTY CLERK:**  Yes.

16              **THE COURT:**  We can go off the record for a minute.

17                          **(OFF THE RECORD)**

18              **MS. BARRIOS:**  Leslie, this is Dawn Barrios.  I had

19  briefed the judge a little bit on it.  If you could give us a

20  very brief description of your issue because we've been here

21  since 9:00 this morning.

22              **MS. LAMACCHIA:**  Sure.  I'll be very brief.  Just let

23  me know when you're ready to proceed.

24              **THE COURT:**  I'm ready.

25              **MS. BARRIOS:**  We're ready.

OFFICIAL TRANSCRIPT

1       **MS. LAMACCHIA:**  Okay.  So after I was reading the

2  last transcript, I noticed that when I got to Angela

3  Washington, one of my cases, that it had been dismissed, but I

4  definitely misspoke on the record.

5       And I was confused about my clients, and I had

6  misspoken on the record indicating that I had filed a

7  declaration of no contact.  That's incorrect.  And so the case

8  was then dismissed on the record, and I'm asking the Court or

9  seeking permission to vacate the dismissal because I don't

10  believe my client should be penalized for my error.

11       **THE COURT:**  Any objection?

12       **MS. BRILLEAUX:**  Your Honor, we don't object to

13  withdrawing the declaration because we do understand that

14  accuracy is key here.  However, Angela Washington was on the

15  list for a reason.  She has a substantive deficiency of no

16  proof of use.  It's been pending a while, and we still believe

17  that this is appropriate for dismissal because Ms. Washington

18  cannot prove that she was administered Docetaxel.

19       **THE COURT:**  Okay.  I'm going to grant 30 days.  I'm

20  going to reinstate and grant 30 days to correct the deficiency.

21       **MS. LAMACCHIA:**  Thank you, Your Honor.

22       **MS. BARRIOS:**  Thank you, Your Honor.

23       **THE COURT:**  Okay.  Court's adjourned.

24       (WHEREUPON, the proceedings were concluded.)

25               *****

OFFICIAL TRANSCRIPT

1                          **<u>CERTIFICATE</u>**

2            I, Jodi Simcox, RMR, FCRR, Official Court Reporter

3    for the United States District Court, Eastern District of

4    Louisiana, do hereby certify that the foregoing is a true and

5    correct transcript, to the best of my ability and

6    understanding, from the record of the proceedings in the

7    above-entitled and numbered matter.

8

9

10                         *s/Jodi Simcox, RMR, FCRR*
                            Jodi Simcox, RMR, FCRR
11                          Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25