1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4   IN RE:  TAXOTERE (DOCETAXEL)    *    16-MD-2740
    PRODUCTS LIABILITY LITIGATION   *
5                                   *
                                    *    Section H
6   Relates to:  Barbara Earnest    *
             16-CV-17144            *
7   * * * * * * * * * * * * * * * * *    September 25, 2019

8

9              TRANSCRIPT OF DEFENSE PROFFER
               FROM THE JURY TRIAL BEFORE
10             THE HONORABLE JANE T. MILAZZO
               UNITED STATES DISTRICT JUDGE
11

12  Appearances:

13

14  For the Plaintiffs:        Barrios Kingsdorf & Casteix, LLP
                               BY:  DAWN M. BARRIOS, ESQ.
15                             701 Poydras Street, Suite 3650
                               New Orleans, Louisiana 70139

16

17  For the Plaintiffs:        Gainsburgh Benjamin David Meunier
                                 & Warshauer, LLC
18                             BY:  M. PALMER LAMBERT, ESQ.
                               1100 Poydras Street, Suite 2800
19                             New Orleans, Louisiana 70163

20  For the Plaintiffs:        Pendley Baudin & Coffin, LLP
                               BY:  CHRISTOPHER L. COFFIN, ESQ.
21                             1100 Poydras Street, Suite 2505
                               New Orleans, Louisiana 70163

22

23  For the Plaintiffs:        Gibbs Law Group, LLP
                               BY:  KAREN BARTH MENZIES, ESQ.
24                             6701 Center Drive West, Suite 1400
                               Los Angeles, California 90045

25

1   <u>Appearances</u>:

2

3   For the Plaintiffs:          Bachus & Schanker, LLC
                                 BY:   J. KYLE BACHUS, ESQ.
                                       DARIN L. SCHANKER, ESQ.
4                                1899 Wynkoop Street, Suite 700
                                 Denver, Colorado 80202

5

6   For the Plaintiffs:          Fleming Nolen & Jez, LLP
                                 BY:   RAND P. NOLEN, ESQ.
7                                2800 Post Oak Blvd., Suite 4000
                                 Houston, Texas 77056

8

9   For the Plaintiffs:          David F. Micelli, LLC
                                 BY:   DAVID F. MICELI, ESQ.
10                               Post Office Box 2519
                                 Carrollton, Georgia 30112

11

12  For the Plaintiffs:          Morgan & Morgan, P.A.
                                 BY:   EMILY C. JEFFCOTT, ESQ.
13                               700 S. Palafox Street , Suite 95
                                 Pensacola, Florida 32502

14

15  For the Sanofi               Irwin Fritchie Urquhart
    Defendants:                    & Moore, LLC
16                               BY:   DOUGLAS J. MOORE, ESQ.
                                 400 Poydras Street, Suite 2700
17                               New Orleans, Louisiana 70130

18
    For the Sanofi               Shook Hardy & Bacon, LLP
19  Defendants:                  BY:   HARLEY V. RATLIFF, ESQ.
                                       JON A. STRONGMAN, ESQ.
20                                     ADRIENNE L. BYARD, ESQ.
                                 2555 Grand Boulevard
21                               Kansas City, Missouri 64108

22
    For the Sanofi               Shook Hardy & Bacon, LLP
23  Defendants:                  BY:   HILDY M. SASTRE, ESQ.
                                 201 Biscayne Boulevard, Suite 3200
24                               Miami, Florida 33131

25

```
 1    Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                      500 Poydras Street, Room B-275
 2                                    New Orleans, Louisiana 70130
                                      (504) 589-7778
 3

 4

 5
      Proceedings recorded by mechanical stenography, transcript
 6    produced by computer.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## DEFENSE PROFFER

### (September 25, 2019)

**MS. BYARD:**  So I think we have six areas to cover, and I apologize.  The first part is the longest part.  It's with respect to FDA evidence.

We would make a proffer of affirmative evidence excluded by the Court under its ruling on MIL 13, which is Rec. Doc. 8201, at 3 through 4.

This administrative record has been submitted directly to the Court, with its notice of manual attachment, on the motion for judgment as a matter of law filed today in the matter on the issue of preemption.  There are a volume of physically burned compact discs.  I will be making reference to the same exhibit numbers that have already been tendered to the Court with that motion.

What is established by that record, if it had been offered, is that FDA had all of the material information before it when it repeatedly rejected warning of permanent alopecia and affirmatively, instead, preserved the labeling on alopecia "as is" until 2015.  Even when the FDA ultimately accepted Sanofi's proposed alopecia label change in 2015, FDA found a lack of causal evidence between Taxotere and permanent alopecia and therefore approved only a simple statement that advised patients that cases of permanent alopecia have been reported, and not the clear and prominent warning of alopecia

sought by Mrs. Earnest through her expert Dr. David Kessler.

Evidence excluded at trial on this issue was both probative of the adequacy of the Taxotere label and on the issue of preemption, which would have shown as follows:

First, that the FDA approved the use of Taxotere for locally advanced or metastatic breast cancer in 1996. Prior to FDA's initial approval, Sanofi submitted its first proposed Taxotere labeling to the FDA on July 27, 1994.  This New Drug Application was reviewed for clinical safety and efficacy in the Division of Oncology and Pulmonary Drug Products.  It was also considered by the oncologic drugs advisory committees, or ODAC, twice before approval.

The review considered the safety profile of Taxotere along with the risk of alopecia.  The risk of alopecia was presented during the 1994 and 1995 ODAC meetings, but none of the concerns raised by ODAC included the risk of alopecia.

In addition, this evidence would show that the initial labeling approved by the FDA in 1996 included information about the risk of alopecia, listing it in a tabular reference of adverse reactions, tabular listing of adverse events.  This FDA-approved language in the patient package insert concerning hair loss was the same from the time of the initial approval in 1996 until May 2010.  It advised that Taxotere causes hair loss and noted that hair generally grows back.

04:58  1          With respect to the exhibits that I've submitted

04:58  2  for this proffer via compact disc with the motion, Sanofi would

04:58  3  specifically highlight Defense Exhibit 215, which is the FDA

04:58  4  approval letter for Taxotere from 1996, as well as Defense

04:58  5  Exhibit D-11, which is a collection of the NDA submissions,

04:58  6  including documents related to that 1994 ODAC meeting.

04:58  7          Further, the evidence, if admitted at trial,

04:58  8  would have demonstrated that on March 17, 2004, Sanofi

04:58  9  submitted a supplemental NDA to the FDA for Taxotere's use in

04:59 10  combination with doxorubicin and cyclophosphamide for the

04:59 11  treatment of patients with operable node-positive breast

04:59 12  cancer.

04:59 13          Also included in that submission were the

04:59 14  results from the TAX 316 clinical study.  The TAX 316 clinical

04:59 15  study report presented the second interim analysis of this

04:59 16  study with 55 months median patient posttreatment follow-up.

04:59 17  The TAX 316 clinical study report noted that under persistent

04:59 18  adverse reactions, 3.2 percent of the TAC-treated patients

04:59 19  showed alopecia ongoing into the follow-up period.  Further,

04:59 20  this evidence would demonstrate that with its NDA, Sanofi

04:59 21  proposed revisions to the Taxotere label to reflect the new

04:59 22  proposed indication and information from the TAX 316 clinical

04:59 23  study.  In addition to the tabular listing in the adverse

04:59 24  reactions section of the physician labeling, Sanofi further

04:59 25  proposed to add information to the adverse reactions section of

05:00 1    the label about persistent alopecia.  Its proposed labeling

05:00 2    stated:

05:00 3            "Other persistent reactions.  The following

05:00 4    events were observed to be ongoing in TAC-treated patients at

05:00 5    the median follow-up time of 55 months:  alopecia, 22 out of

05:00 6    687 patients."

05:00 7            It continues and then resumes:

05:00 8            "These events were also observed in the FAC arm

05:00 9    during the follow-up period:  alopecia, 9 out of 642 patients,"

05:00 10    and then continues with a description of other adverse

05:00 11    reactions documented in the study.

05:00 12            This evidence would also show that Sanofi

05:00 13    resubmitted this exact labeling proposal to FDA on June 23,

05:00 14    2004, August 5, 2004, and August 9, 2004, but that after an

05:00 15    extensive series of communications between FDA and Sanofi, FDA

05:00 16    sent its comments on the proposed labeling to Sanofi on

05:00 17    August 11, 2004.  In these comments the FDA reviewer deleted

05:01 18    Sanofi's proposal to add information about other persistent

05:01 19    reactions, including alopecia, to the USPI, the U.S. package

05:01 20    insert.  FDA approved the supplemental NDA on August 18, 2004,

05:01 21    without the "other persistent reactions" language that Sanofi

05:01 22    repeatedly proposed from its TAX 316 study.

05:01 23            With respect to this proffer, Sanofi would

05:01 24    specifically highlight D-75, which is an email from Mr. Michael

05:01 25    Rozycki to FDA, submitting the proposed labeling with the

1   TAC 316 sNDA and Sanofi submitting the persistent alopecia data
2   from the study.  It's a May 8, 2004, document.
3               Defendants would also specifically highlight
4   Defense Exhibit 241, which is the TAX 316 Clinical Study
5   Report - Interim Analyses submitted to the agency, as well as
6   D-400.C, which was the Proposed Package Insert; D-333, which is
7   the Adjuvant Submission Letter to the agency; D-209, which is a
8   Draft USPI U.S. Package Insert - Annotated, with a date of
9   December 3, 2004 -- I'm sorry, March 12, 2004.
10              We would highlight D-76, which is an email to
11   the FDA, submitting proposed labeling for Supplemental
12   Application 029; the TAX 316 sNDA, with the attached draft
13   label; and D-317, the Approval Letter for Adjuvant Breast
14   Cancer Indication, which is August 18, 2004.
15              Sanofi, if able to present this evidence at
16   trial, notwithstanding the Court's ruling on MIL 13, would have
17   offered Defense Exhibit 287, which is an email to FDA regarding
18   its responses to FDA's request about the proposed labeling, and
19   FDA Contact Report, D-400.D, an FDA Contact Report regarding
20   TAX 316 proposed labeling indication, indicating that the FDA
21   would be requesting redline changes to the adverse event
22   tables, with discussions and redlines.
23              Sanofi would further offer Defense Exhibit 102,
24   which is an email from Ann Staten at the FDA with the described
25   redlines to the labeling.  That email would be dated August 11,

2004; as well as D-272, which is another email from Ann Staten, with the redlines to the labeling in color, of August 13, 2004.

Finally, on this topic of the 2004 labeling and negotiations with FDA, Sanofi would have offered D-317, which is the Supplemental Approval Package for the Adjuvant Breast Cancer Indication, a document from August 18, 2004; as well as a document from August 24, 2004, the Final Label Submission, which is Defense 400.E.

The next chapter of evidence that Sanofi would have offered on its labeling negotiations with the agency, Sanofi would have offered that on November 30, 2009, Sanofi submitted to the FDA its Proposed Package Insert for GEICAM 9805, the node-negative breast cancer indication.  Enclosed with that submission were the results of GEICAM 9805, a clinical study otherwise discussed at trial in this matter.

Sanofi's submission of this data, including the data on alopecia persisting into the follow-up period, along with a proposed update to the label to reflect the number of patients with ongoing alopecia in the TAC arm, constitutes one additional exchange between FDA and Sanofi on the evidence to which Mrs. Earnest's experts point in making both their general causation and failure to warn case which FDA, in fact, had on Sanofi's submission of it.

Sanofi, in that respect, would specifically highlight Defense 45, which it would proffer, which is the

05:05 1   GEICAM 9805 submission; Defense 90, which is the Proposed

05:05 2   Package Insert dated November 30, 2009; and Defense Exhibit

05:05 3   282, which is the GEICAM 9805 Clinical Study Report, in full,

05:05 4   submitted to the agency November 30, 2009.

05:05 5              In the next iteration of these labeling

05:05 6   negotiations with the agency, Sanofi, but for the Court's

05:05 7   ruling on MIL 13, would have submitted that in May 2010, FDA

05:05 8   proposed industry-wide changes to the patient labeling in the

05:05 9   taxane therapeutic category generally and that consistent with

05:05 10  FDA proposals for other drugs in this category, the FDA

05:05 11  proposed significant revisions to the Taxotere patient

05:05 12  labeling, including:

05:05 13             Starting the patient counseling information

05:05 14  section with advice to the physician to explain to patients

05:06 15  that side effects such as nausea, vomiting, diarrhea,

05:06 16  constipation, fatigue, excessive tearing, infusion site

05:06 17  reactions, and hair loss are associated with docetaxel

05:06 18  administration.

05:06 19             Further, that in 2010, FDA rewrote the patient

05:06 20  labeling section and deleted the statement that "hair generally

05:06 21  grows back," and FDA, instead, proposed a single bullet point

05:06 22  that listed the word or phrase "hair loss" as one of the most

05:06 23  common side effects and added:  "Tell your doctor if you have

05:06 24  any side effects that bother you or do not go away."

05:06 25             Further, the evidence would have shown that on

05:06 1    May 13, 2010, FDA approved these labeling changes.

05:06 2                 Sanofi would specifically highlight Defense

05:06 3    Exhibit 400.F, which is the Pediatric Submission giving rise to

05:06 4    these labeling changes; as well as D-400.G, which was the

05:06 5    Proposed Package Insert for the Pediatric Submission; as well

05:07 6    as D-400.H, which is the Amended Submission on May 28, 2010.

05:07 7                 Sanofi would further highlight Defense Exhibit

05:07 8    23, which is a Health Authority Contact evidencing FDA's

05:07 9    removal of the language that hair generally grows back, a

05:07 10   May 3, 2010, document; as well as Defense Exhibit 152, which is

05:07 11   the Supplemental Approval from the agency, May 13, 2010.

05:07 12                Next, from 2010 to 2011, Sanofi made two

05:07 13   submissions to FDA.  First, on September 24, 2010, Sanofi

05:07 14   submitted an updated clinical study report for TAX 316,

05:07 15   containing the 10-year follow-up data to fulfill Sanofi's

05:07 16   post-marketing commitment to FDA.  That analysis showed that

05:07 17   4.2 percent of the TAC-treated patients demonstrated alopecia

05:07 18   that remained ongoing into the follow-up period.

05:08 19                The evidence would have shown that Sanofi did

05:08 20   not propose a labeling revision based on the 10-year follow-up

05:08 21   data because the 10-year follow-up data was consistent with the

05:08 22   interim data it had submitted to the agency in 2004 and that

05:08 23   the agency had deleted from the proposed labeling.

05:08 24                Sanofi would specifically highlight Defense

05:08 25   Exhibit 207, which is the PMC Final Report for the TAX 316

Submission; as well as Defense 240, which is the full TAX 316 Clinical Study Report submitted to the agency on September 24, 2010.

The second part of its submission, from 2010 to 2011, that Sanofi would have introduced turns around a January 27, 2011, submission by Sanofi to FDA of its Periodic Safety Update Report, or PSUR, for docetaxel.  There Sanofi identified persistent alopecia in the executive summary to the agency as a specific safety topic under review.

Sanofi therein identified a request by a French regulatory authority for an analysis of the Sanofi safety database and literature search for reports of persistent alopecia associated with Taxotere.  The resulting Clinical Overview Docetaxel – Persistent Alopecia was included in the PSUR to FDA and included adverse event reports and scientific literature.

This analysis of persistent alopecia, which were therein defined as cases of alopecia persisting for 12 months or more after completion of chemotherapy, was comprehensive of the Sanofi global pharmacovigilence adverse event database and augmented by a cumulative literature search.

Further, the evidence would have shown that as part of these FDA submissions, Sanofi evaluated the resulting 142 reports of persistent alopecia in its pharmacovigilence database, and Sanofi concluded that these reports did not

constitute evidence of a causal relationship between permanent
alopecia and Taxotere because the data was confounded by a
number of factors:

Co-administration of multiple anticancer agents
that are known to cause alopecia;

Multiple co-morbidities associated with the
onset of alopecia;

The time lag from the last dose of Taxotere and
the onset of alopecia being occasionally prolonged; and

The onset of alopecia occasionally predating the
administration of Taxotere.

Sanofi therefore concluded that alopecia occurs
very commonly with Taxotere, though its persistence cannot be
predicted, and the available evidence does not show that
irreversible alopecia is caused by docetaxel alone.

At trial, while introducing evidence on the 2011
clinical overview, Sanofi was deprived of the opportunity to
point out or argue its submission of this clinical overview to
the FDA before Mrs. Earnest underwent treatment with Taxotere
and was also unable to offer into evidence, based on the
Court's ruling, the absence of agency response to request a
labeling change, which was within the authority and indeed
regulatory obligation of the agency, without question of
whether Sanofi is ultimately responsible for its label as a
matter of state law.

With respect to these episodes and the
negotiations with the agency on the label language on alopecia,
Sanofi would have specifically highlighted Defense Exhibit 34,
which is its Periodic Safety Update Report, or PSUR, 27 and 28
submission to the agency; Defense Exhibit 31, which is the
entirety of PSUR 28; as well as Defense Exhibit 155, which is
the Company Core Data Sheet, Version 26, as of June 28, 2011.

One note here for the proffer is that Sanofi had
moved to exclude evidence after Mrs. Earnest's treatment with
Taxotere in 2011, which was Defendant's Motion in Limine 27,
granted at Rec. Doc. 8201, at 6.

Without waiver of Sanofi's objection to such
evidence, Sanofi does note that over the course of trial,
plaintiff was allowed to offer testimony that Sanofi ultimately
agreed with plaintiff's experts' conclusion that Taxotere
causes permanent hair loss, with plaintiff's experts relying on
an assessment by the company about reasonable evidence of a
causal association for purposes of labeling and not general
medical causation, but against which Sanofi was not able to
respond on post-2011 evidence from the agency that the agency
both agreed that medical causation could not be demonstrated
based on the very evidence relied upon by plaintiff's experts
and that the available evidence did not support a labeling
change consisting of a prominent warning of permanent alopecia,
as proposed by plaintiff's experts.

1    Accordingly, Sanofi would proffer the following
2    evidence, without waiver of its position on Motion in
3    Limine 27, simply because of the erosion of the Court's ruling
4    during the trial, and we would note conditionally only then as
5    follows:
6    That on at least six occasions over the next
7    several years, FDA formally approved Taxotere labeling changes,
8    each time preserving the alopecia labeling information as is.
9    That included the following label approvals:
10    First, on September 7, 2011, with FDA formally
11    approving Taxotere labeling changes to the highlights of
12    prescribing information, various issues with dosage and
13    administration, the full prescribing information, and
14    preparation and administration sections of the label
15    specifically for Taxotere's introduced one-vial formulation,
16    where FDA ultimately preserved the alopecia labeling language
17    as is.
18    The evidence conditionally proffered would also
19    have shown that on September 23, 2011, FDA responded to the
20    TAX 316 clinical study submission, concluding that Sanofi's
21    post-marketing commitment was fulfilled.  FDA did not request
22    any change to the Taxotere labeling based on the 10-year
23    TAX 316 data.
24    Sanofi would specifically highlight in this
25    regard Defense Exhibit 167, which is the Post-Marketing

05:14 1   Commitment release from the agency, a September 23, 2011,
05:14 2   document.
05:14 3                  Sanofi would highlight five additional agency
05:14 4   labeling changes preserving the alopecia labeling language as
05:14 5   is:
05:14 6                  First, from December 15, 2011, which was Defense
05:14 7   Exhibit 400.J, with changes to the hormone refractory prostate
05:14 8   cancer and full labeling information but nothing to alopecia.
05:14 9                  I think I missed one, the September labeling
05:14 10  change after submission of the clinical overview but preserving
05:14 11  the alopecia labeling language as is would have been proffered
05:14 12  as Defense Exhibit 400.I.
05:14 13                 Sanofi would have also offered, from April 13,
05:14 14  2011, the formal approval of FDA of Taxotere labeling related
05:15 15  to a different formulation, at 160 milligrams per 8
05:15 16  milliliters, with things changing about the extension of the
05:15 17  infusion solution and storage conditions, which would have been
05:15 18  offered as Defense Exhibit 400.K, but maintaining the alopecia
05:15 19  labeling language once again as is.
05:15 20                 Sanofi would have also offered, from June 26,
05:15 21  2013, formal FDA approval labeling changes related to the
05:15 22  highlights of prescribing information and respiratory events in
05:15 23  the adverse reactions section but once more preserving the
05:15 24  alopecia labeling language as is.  That would have been a
05:15 25  document that was dated -- a June 2013 submission, which is

05:15  1    400.Q, 400.R, 400.S, 400.T, all related to another labeling
05:16  2    change.
05:16  3              Furthermore, Sanofi would have offered, from
05:16  4    December 13, 2013, formal FDA approval of Taxotere labeling
05:16  5    changes related to warnings and precautions and of the adverse
05:16  6    events labeling sections of the prescribing information, which
05:16  7    corresponds to documents listed on Sanofi's exhibit list that
05:16  8    it would have proffered from Defense Exhibit 400.W, Defense
05:16  9    Exhibit 400.V, and Defense Exhibit 400.U.
05:16  10             Finally, Sanofi would have offered evidence
05:16  11   related to additional supplemental approvals at Defense
05:16  12   Exhibit 400.P, Defense Exhibit 400.O -- and I don't know if I
05:16  13   hit Defense Exhibit 400.9 -- as well as additional approvals
05:16  14   400.X, Defense Exhibit 400.Y, 400.Z, 400.AA, 400.BB, and
05:17  15   400.CC, some of these consisting of formal FDA approval on
05:17  16   November 14, 2014, of Taxotere labeling changes related to its
05:17  17   alcohol content, but again preserving the alopecia labeling
05:17  18   language as is.
05:17  19             Finally, with the conditional proffer based on
05:17  20   MIL 27, Sanofi would note that in March of 2015, FDA requested
05:17  21   a summary of cases and that on April 10, 2015, Sanofi submitted
05:17  22   the requested response, which included a search of its global
05:17  23   pharmacovigilence database for reports of long-standing
05:17  24   alopecia, using terms like "permanent," "persistent,"
05:17  25   "irreversible," "chronic" associated with Taxotere use,

searching as far back in time as the introduction of Taxotere to the market in 1996.

Sanofi would have shown that following FDA's review, FDA requested that Sanofi provide any additional information regarding permanent or irreversible alopecia and amend the package insert in Section 6.2, which is the post-marketing experience section of the label, as well as to the patient information, if appropriate, and that Sanofi add information on permanent or irreversible alopecia.

The evidence would have shown that on November 24, 2015, Sanofi responded to provide an updated clinical overview of docetaxel and permanent alopecia and to update the adverse reactions section of the physician insert and patient insert.  The labeling proposal from Sanofi was as simple as adding that "cases of permanent alopecia have been reported" to the post-marketing experience section of the adverse reactions section of the physician insert and that "cases of permanent alopecia have been reported" to the patient counseling information for the physician section of the label.

It also proposed a listing of hair loss in the patient labeling with the following phrase:  "In most cases normal hair growth should return.  In some cases (frequency not known) permanent hair loss has been observed."

The evidence would have demonstrated that FDA concurred with Sanofi that "it's impossible to determine

05:19 1    whether the permanence of alopecia was due to docetaxel."

05:19 2            The evidence would have shown that the FDA

05:19 3    reviewer commented, "I think the sponsor's simple statement

05:19 4    that permanent cases have been reported is all that can

05:19 5    reliably be said given the tremendous limitations of the

05:19 6    available data."

05:19 7            On December 11, 2015, FDA approved this revised

05:19 8    labeling for Taxotere with permanent alopecia labeling as an

05:19 9    adverse reaction, that there was not a causality statement in

05:19 10   the approved label, and that the post-marketing experiences

05:19 11   section was revised to include that language, as proposed; that

05:19 12   the change had no impact on the benefit/risk profile of

05:19 13   Taxotere, and that the FDA did not advise doctors to change

05:19 14   their prescribing practices or to avoid using the drug in

05:19 15   certain classes of patients.

05:19 16           With respect to this chapter in the labeling

05:19 17   negotiations with the agency on alopecia, Sanofi would have

05:19 18   highlighted Defense Exhibit 68, which is a response to the

05:19 19   agency request; Defense Exhibit 219, which is an email from FDA

05:20 20   acknowledging receipt of our submission; Defense 18, which was

05:20 21   FDA's request to add permanent alopecia to the package insert;

05:20 22   Defense Exhibit 400.DD, which is the Core Company Safety

05:20 23   Information, Version 30, a document from November 16, 2015.

05:20 24           Next, a Changes Being Effected submission,

05:20 25   Defense Exhibit 400.EE; Defense Exhibit 202, a Clinical

Overview dated November 24, 2015; Proposed Package Insert, Defense Exhibit 400.FF; a Supplemental Approval from the agency, Defense Exhibit 400.GG; the FOIA Approval Package, which includes the reviewer's comments, Defense Exhibit 475.

Next, and lastly, in March 2017, Sanofi once again resubmitted the TAX 316 study, including a proposed revision to the label to include information nearly identical to what was proposed to the FDA in 2004 and that was stricken by FDA Commander Ann Staten.  In response to Sanofi's request to include data on ongoing alopecia at that point from TAX 316, the FDA responded and questioned whether the data was meaningful to clinicians.

The FDA wrote under subpoint 2:  "We are not convinced that the data included in the newly proposed Table 7, Persistent Events in Patients Receiving Taxotere in Combination with Doxorubicin and Cyclophosphamide, TAX 316, are reliable or interpretable by clinicians.  Patients were being seen in follow-up only once per year based upon the prior study report in years 6 to 10, which will limit the reliability of adverse event reporting.  It is unclear from the table what the sample size is for the safety population at the 8-year median follow-up period; of the patients available, how many were assessed for adverse reactions; many patients have been lost to follow-up, and confounding may have been introduced by numerous post-randomization factors, including occurrence of natural

menopause, concomitant medications, new medical conditions, etc.  In addition," the agency wrote, "there is no indication of grade of the persistent AEs, which is important for patients and clinicians to judge the clinical relevance of adverse event persistence."

The evidence presented also would have shown that Sanofi responded, agreeing with FDA that there are many confounding factors that exist as it relates to patients experiencing adverse events into the follow-up period after a breast cancer clinical trial, but nevertheless requesting that such data be included in its proposed label.

Sanofi would specifically highlight Defense Exhibit 200, which is the letter to the FDA submitting the PAS; Defense 210, which is the letter from the FDA regarding the PAS status; Defense Exhibit 175, which is the email to FDA regarding the submissions; Defense Exhibit 305, which is a letter to FDA withdrawing the supplement; Defense 350, which is a letter to FDA submitting the PAS in response to agency request for information; Defense Exhibit 351, which is a response to agency request; Defense Exhibit 362, which is a letter from the FDA regarding the Supplemental Approval; Defense Exhibit 481, which is a letter from the FDA regarding Supplemental Approval also dated October 5, 2018.

Sanofi's second proffer of evidence that it would have presented at trial had evidence on the FDA not been

excluded would have been affirmatively designated deposition testimony and related exhibits that have been excluded by the Court.

The first proffer of deposition testimony is for Ms. Gina Vestea.  Ms. Gina Vestea was the senior director of regulatory affairs.  She testified as to the 2004 labeling submission and the language stricken by FDA.  She testified to the consistency of the 55-month and 10-year TAX 316 data.  She testified to Sanofi's submission of its 2011 clinical overview to FDA with PSUR 28 under her signature and to the FDA's release of Sanofi from its post-market study obligations and fulfillment of its commitment on the submission of the TAX 316 10-year data.  Sanofi therefore offers the entirety of the deposition testimony excluded by the adverse rulings as well as Deposition Exhibits 11, 13, 14, 16, 17, 18, and 19 to her deposition.

The second, and last, witness who Sanofi would have proffered affirmatively designated deposition testimony of is Ms. Linda Gustafson.  Ms. Gustafson was the head of U.S. Regulatory Affairs, who testified that in 2010 FDA, and not Sanofi, changed the label language that Dr. Kessler, up until 2006, avers adequately warned of the risk of permanent alopecia.  Sanofi, in particular, highlights Exhibits 25 and 26 to that deposition, demonstrating that FDA made the deletion of the language that hair generally grows back.  Sanofi,

therefore, would offer the entirety of the deposition testimony excluded by adverse rulings as well as those exhibits.

Third, Sanofi makes a proffer of affirmatively designated deposition testimony related to deposition exhibits and testimony excluded by the Court from its medical oncologist and 15-year employee, Dr. Michael Kopreski, an employee of Sanofi in its pharmacovigilence function, whose testimony was excluded under Rule 701, specifically and narrowly that whether Taxotere alone causes permanent alopecia and in which patients, why not in others, when and why is unknown.  This testimony, along with other testimony, was excluded by the Court in various volumes of Dr. Kopreski's depositions, both individually and on behalf of Sanofi as its corporate representative.  Sanofi therefore offers the entirety of the deposition testimony of Dr. Kopreski excluded by the adverse rulings, which were previously submitted to the Court with plaintiff's proffer.

I think we're on four, which is on stem cells. Sanofi makes a proffer of evidence of testimony and argument excluded by the Court under its ruling on Plaintiff's Motion in Limine 5, which is Rec. Doc. 8133, at pages 5 through 8.  We proffer that plaintiff's counsel and her experts abandoned further stem cell study after the results of testing on the plaintiff's own pathology were positive for the presence of stem cells and their proliferation.

1    In particular, had the same not been excluded,
2  Sanofi would have adduced evidence that plaintiff's expert
3  dermatologist solicited pathologist Dr. Curtis Thompson to the
4  litigation on interest in determining the role of stem cells in
5  supposed permanent alopecia after chemotherapy.  Sanofi would
6  have introduced evidence that Dr. Thompson shared with counsel,
7  before ever completing the testing, that he would not include
8  the results of any stem cell testing that supported their
9  theory of biological mechanism in his pathology and Rule 26
10  report unless the results helped them.
11    Sanofi would have adduced evidence that
12  Dr. Thompson, on correspondence including plaintiff's counsel,
13  discouraged further stem cell studies by another expert hired
14  by plaintiff, asking if Mrs. Earnest's pathology testing
15  results had not been shared with the other expert and
16  confirming that after the stem cell testing results were
17  positive, meaning contrary to the theory, he did not pursue it
18  further.
19    Sanofi offers that there exists reasonable
20  evidence from which a jury could conclude that the decision to
21  abandon or forego further study further corroborates the
22  absence of a causal association between Taxotere and permanent
23  hair loss in patients generally and in Mrs. Earnest
24  specifically and undermines that there were sufficiently
25  reasonable evidence of a causal association between Taxotere

and permanent hair loss, that different labeling language should have been used sooner, where these central scientific issues remain unknown hypotheses.  Specifically, Sanofi would offer Defense Exhibits 2211, 2214, 2215, and 2218 on that basis.

Five of six, clinical experience.  Sanofi makes the proffer of evidence, testimony, and argument excluded by the Court under its ruling on Plaintiff's Motion in Limine 10, which is Rec. Doc. 8198, at 1, which precluded evidence of the rates of alopecia continuing after chemotherapy in Sanofi's experts' own clinical experience treating hundreds, if not thousands, of breast cancer patients and patients with complaints about hair.

If not excluded, Sanofi would have elicited testimony from its experts that reports of permanent alopecia after breast cancer chemotherapy treatment including Taxotere in the patient population of each doctor is very, very rare and, at most, their oncologists had seen one or two cases, including patients who had never taken Taxotere.  The Court excluded such testimony and evidence while at the same time allowing evidence of the clinical experience of Dr. Antonella Tosti and Dr. James Carinder.

Sanofi was also precluded on cross-examination of Drs. Ellen Feigal and Linda Bosserman from establishing that the issue about which both women testified -- causal

05:30  1    association, importance of informed consent -- was not

05:30  2    something that either one had actually seen in her treatment of

05:30  3    breast cancer patients.

05:30  4            Finally, Sanofi would make a proffer of

05:30  5    evidence, argument, and testimony excluded by the Court

05:30  6    pursuant to its ruling on Plaintiff's Motion in Limine 14,

05:30  7    which is Rec. Doc. 8198, at 1, which is on Taxotere's efficacy

05:30  8    in improving overall survival, disease-free survival, and

05:30  9    minimizing recurrence of breast cancer in millions of patients.

05:30 10            Without admission of such testimony, in addition

05:30 11    to other evidentiary issues, individual adverse event reports

05:30 12    admitted at trial, in terms of testimony, lacked comparison

05:30 13    against the number of patients treated overall without

05:30 14    complaints about hair regrowth.

05:30 15            In addition, under FDA guidance in effect as of

05:30 16    2011, labeling prominence and inclusion must take into account

05:30 17    the benefit/risk profile of the medicine and policy

05:30 18    considerations against discouraging the beneficial use of such

05:31 19    medicine.

05:31 20            In particular, Sanofi would have elicited

05:31 21    testimony that Taxotere is a World Health Organization

05:31 22    essential medicine along with vaccines, antibiotics, and

05:31 23    malaria treatments and that as of 2011 has been used in over

05:31 24    3.5 million patients worldwide.

05:31 25            That concludes Sanofi's proffer of evidence

05:31  1   based on the evidentiary rulings at trial.  Thank you so much

05:31  2   for your time, ladies.

05:31  3                              * * *

4                           **<u>CERTIFICATE</u>**

5              I, Toni Doyle Tusa, CCR, FCRR, Official Court

6   Reporter for the United States District Court, Eastern District

7   of Louisiana, certify that the foregoing is a true and correct

8   transcript, to the best of my ability and understanding, from

9   the record of proceedings in the above-entitled matter.

10

11

12                              */s/ Toni Doyle Tusa*
                                Toni Doyle Tusa, CCR, FCRR
13                              Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25