UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

Sheila Crayton, Case No. 2:16-cv-05923,
Cynthia Thibodeaux, Case No. 2:16-cv-15859.

**DEFENDANTS SANOFI-AVENTIS U.S. LLC AND SANOFI U.S. SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL**

As bellwether plaintiffs in this MDL, Sheila Crayton and Cynthia Thibodeaux have an obligation to comply with all court-ordered discovery, as well as to respond to Sanofi's written discovery requests in compliance with the Federal Rules of Civil Procedure. *See* Order and Reasons (Rec. Doc. 1138), at 1-2 (approving individual written discovery for trial Plaintiffs and noting that the "matter has progressed well beyond the phase of counsel objecting to routine reasonable discovery requests and placing such disputes on the docket of this Court, thus impeding the progress of this MDL"). To date, Plaintiffs have neglected that obligation, leaving Sanofi without information, photographs, and other documents critical to formulating a defense ahead of the imminent March 23, 2020 trial date.

Sanofi enumerated these deficiencies in letters to Plaintiffs' counsel on October 15, 2019,[1] requesting complete responses by October 18 or availability for a meet and confer on October 21.

---

[1] Letter from Kelly Bieri to Ms. Crayton's Counsel (Oct. 15, 2019) (Ex**.** A); Letter from Kelly Bieri to Ms. Thibodeaux's Counsel dated October 15, 2019 (Ex. B). Sanofi also notified Ms. Crayton's counsel about deficiencies in her production of photographs more than a year ago. *See, e.g.*, Letter from Kelly Bieri to Dawn Barrios (Sept. 26, 2018) (Ex. C); E-mail from Kelly Bieri to Lauren Godshall (Oct. 16, 2018) (Ex. D).

1

Plaintiffs' counsel first responded on October 22, providing no responses or objections and requesting a meet and confer date one week later—two weeks after Sanofi's letter, and only one week before the discovery conference with this Court on November 6.[2]  Sanofi accepted.  After the parties met and conferred, Plaintiffs provided supplemental responses to Sanofi's outstanding discovery requests.  While several responses addressed deficiencies identified previously, others remain insufficient.  Given the upcoming conference and impending trial date, Sanofi now moves to compel responses to those requests.   In addition, Sanofi requests the opportunity to depose Ms. Thibodeaux to ask questions regarding her supplemental written discovery responses and the 82 photographs produced by Ms. Thibodeaux over the last week.[3]  For Ms. Crayton, Sanofi requests complete responses to written discovery and verifications.

## ARGUMENT

**I.    The Court Should Compel Plaintiffs to Confirm They Have Produced All Photographs to Defendants.**

Plaintiffs are obligated produce all photographs of themselves in their possession that depict Plaintiffs' hair before, during, and after chemotherapy, including photographs in the five years before and after chemotherapy, as mandated by the Court and requested by Sanofi in discovery.[4]  Plaintiffs' response to this obligation, however, has been marked by repeated assurances of completeness that have later been supplemented with additional photographs from sources that were required to be (and represented to have been) searched.  Indeed, despite their

---

[2]    E-mail from Dawn Barrios to Kelly Bieri (Oct. 22, 2019) (Ex. E).

[3]    Sanofi does not seek to depose Ms. Crayton again unless and until she becomes the primary trial plaintiff. *See* CMO 16 (designating Ms. Thibodeaux as primary plaintiff).

[4]    *See, e.g.,* PFS Section VI, Claim Information; PFS Section IX, Document Requests and Information (requiring Plaintiff to "[p]roduce **all documents in your possession**" responsive to the PFS, including all "[p]hotographs […] or any other media that show your alleged injury or its effect in your life."): PTO 71A (setting forth ESI search requirements that "govern all document requests served on Plaintiffs").

2

longstanding obligations, in the last week Ms. Thibodeaux and Ms. Crayton have produced 120 photographs of themselves from their homes, phones, and social media. As such, Sanofi has concerns that Plaintiffs' obligations remain unfulfilled, and requests the Court require Plaintiffs to affirm in writing that all photographs of themselves in their possession have been produced and require Plaintiffs' counsel to also affirm that all photographs provided to them by Plaintiffs have been produced.

For example, during her first deposition on September 19, 2018, Ms. Crayton identified the existence of several photographs that had not been produced and testified that her daughter was solely responsible for selecting the photographs initially produced to Sanofi. *See* Crayton Dep Vol. I 44:17-45:14 (identifying four recent photographs on phone); 82:17-83:4 (referencing photos from 2007); 83:23-84:8 (referencing photos taken between 2008 and 2016); 63:25-64:10; 68:16-69:8) (Ex. F) (Ms. Crayton's daughter selected photographs to be produced without Ms. Crayton's assistance). After the deposition, Ms. Crayton's counsel produced a few additional photographs and represented that all photographs of Ms. Crayton from Ms. Crayton's house had been produced. *See* E-mail from Lauren Godshall to Kelly Bieri (Oct. 17, 2018) (Ex. G). Despite this representation, Ms. Crayton's counsel produced 38 new photographs two days ago, on October 28, 2019. Ms. Crayton's counsel made clear that the photographs produced had come from a recent search of her home: "In order to comply with the discovery, counsel had to travel to Ms. Crayton's home and search for photographs. The results of that search and visit uncovered some additional before photographs, as well as current photos taken by counsel at the time of the visit [October 24, 2019]." Letter from Ms. Crayton's Counsel to Kelly Bieri (Oct. 28, 2019) (Ex. H). During the parties' telephonic meet and confer on October 28, Ms. Crayton's counsel again represented that all photographs that depict Ms. Crayton in her possession have been produced.

3

Similarly, Ms. Thibodeaux identified during deposition sources of photographs within her possession that had not been searched or produced. *See* Thibodeaux Dep. Vol. I 30:20-21, 31:21-25, 32:13-16 (referring to photographs from 2011 to present stored on mobile phone); 39:5-7, 14-15, 40:6-9 (referring to LinkedIn and Facebook profiles and noting that she did not search Facebook for photos) (Ex. I). Following her first deposition, Ms. Thibodeaux and her counsel both certified – on two separate occasions in January 2018 and April/May 2019 – compliance with PTO 71A. *See* No Additional ESI Found (Jan. 9, 2018) (also signed by Ms. Thibodeaux's counsel on Jan. 15, 2018) (Ex. J); Ms. Thibodeaux's PTO 71A Written Statement (Apr. 30, 2019) (also signed by counsel on May 3, 2019) (Ex. K). However, Ms. Thibodeaux's counsel recently admitted that (1) they searched Ms. Thibodeaux's email and Facebook account once, on September 5, 2019, and (2) searched Ms. Thibodeaux's iPhone and iPad once, on October 24, 2019. Letter from Christine Brandt to Kelly Bieri (Ex. L), at 2, ¶ 5. Both such searches occurred long after Plaintiff and her counsel submitted PTO 71A certifications attesting to a search of electronically stored photographs and documents. *See id.* (admitting searches of Ms. Thibodeaux's iPhone and iPad constitute obligations required by PTO 71A). In connection with these belated searches, Ms. Thibodeaux's counsel produced 82 responsive photographs (67 on October 24 and 25, 2019, and 15 on October 29, 2019).

Given the inconsistencies surrounding both Plaintiffs' production of photographs, Sanofi requests the Court compel Plaintiffs to affirm in writing that all photographs of themselves in their possession have been produced and require Plaintiffs' counsel to also affirm that all photographs provided to them by Plaintiffs have been produced.

> **A.   Sanofi Lacks Sufficient Photographs of Bellwether Plaintiffs to Prepare Effectively for the Imminent March 2020 Trial.**

Even if Sanofi can now take Plaintiffs' production at face value, Sanofi remains in an impossible situation. The Court has recognized the importance of discovery regarding Plaintiffs' appearance both five years before and five years after chemotherapy treatment. PFS Section VI, Claim Information; PFS Section IX, Document Requests and Information; PTO 71A; PTO 68. Sanofi, however, remains without photographs showing Ms. Thibodeaux's head or hair between the start of her chemotherapy treatment in 2008 and the filing of her lawsuit eight years later in 2016. To put it simply, Ms. Thibodeaux produced no photographs of herself from 2008-2016 without a wig. Further, Sanofi has just three (poor quality) photographs of Ms. Thibodeaux between 1998 and Ms. Thibodeaux's chemotherapy treatment a decade later in 2008. This makes three photographs in 16 years. There are similar substantial gaps in the evidence of the appearance of Ms. Crayton before and after chemotherapy. Sanofi remains without photographs of Ms. Crayton dated between 1998 and the beginning of her chemotherapy a decade later, as well as photographs of Plaintiff's head between her treatment and the filing of her lawsuit eight years later in 2016. That again makes no photographs in 16 years. As noted, Ms. Thibodeaux's and Ms. Crayton's status as trial plaintiffs makes it particularly critical that they produce <u>all</u> photographs showing Plaintiffs' head or hair. The lack of after photograph and extremely limited selection of before photographs within the relevant period prejudice Sanofi's ability to assess Plaintiffs' alleged injuries and litigate their claims.

> **B.   The Court Should Not Permit Plaintiffs' Counsel to Submit Photographs with Dates Inconsistent with Plaintiffs' Sworn Testimony.**

Plaintiffs' counsel continues to provide dates for some photographs in contravention of Plaintiffs' deposition testimony. For example, Ms. Crayton's counsel recently represented that

5

two photographs previously produced of Ms. Crayon were taken in 2011 – *after* Ms. Crayton's chemotherapy.  *See* MDL Centrality Rec. Doc. Nos. 42294, 42293 (Exs. M and N); Letter from Betsy Barnes et al. to Kelly Bieri (Ex. H).  Ms. Crayton, however, has testified that these photos were taken *during* her chemotherapy treatment involving Adriamycin and Cyclophosphamide (and just before taking Taxotere), which occurred in 2008.  Crayton Dep. Vol. I at 71:10-72:10; 73:8-18 (Ex. F).[5]

Likewise, Ms. Thibodeaux recently re-produced (as MDL Centrality Rec. Doc. 415621, dated "1978 to 1980") (Ex. O), a photograph she previously produced and testified was taken in 1980.  *See* Thibodeaux Dep. Vol. I at 239:25-240:4; 241:5-241:7; 238:3-238:14 (Ex. I).  Ms. Thibodeaux also has produced multiple versions of several photographs that she has testified—as recently as Sept. 6, 2019—were taken at a Department of Defense event for her brother before the year 2000.  *See* Thibodeaux Dep. Vol I at 244:13-22 (noting that photographs produced as MDL

---

[5]     MDL Centrality Rec. Doc. Nos. 42294, 42293 are referenced as Deposition Exhibits 12 and 13 in Ms. Crayton's deposition.  (Exs. M and N)

>   10 Q. When were Deposition Exhibit Nos. 12 and 13
>   11 taken?
>   12 A. I would say 2008.
>   13 Q. Were they taken while you were undergoing
>   14 chemotherapy?
>   15 A. Yes.
>   …
>   25 Q. Do you know where in the progression of your
>   1 cancer treatment in 2008 Deposition Exhibit Nos. 12
>   2 and 13 were taken?
>   3 A. No. I know that it was 2008 because I was
>   4 still going through chemo, but the exact months, no.
>   5 Q. Do you know if it was during the first block
>   6 of chemotherapy or the second block of chemotherapy?
>   7 A. It was the first.
>   8 Q. So during your chemotherapy with Adriamycin
>   9 and cyclophosphamide?
>   10 A. Yes.

Crayton Dep. Vol. I at 71:10-72:10. (Ex. F)

6

Centrality Rec. Doc. 46758 (Ex. V) and 9846 (Ex. W) were taken at the same function); Thibodeaux Dep. Vol. II at 494:1-21 (Ex. Y). Nonetheless, Plaintiff's counsel has repeatedly produced versions of this photographs variously dated from 1997 to 2004, including in the most recent productions of Oct. 24-25, 2019 (see MDL Centrality Rec. Doc. 415381) (Ex. X).

Accordingly, Sanofi requests the Court direct Plaintiffs to provide accurate dates for all photographs produced.

## II. Plaintiffs' Responses to Interrogatories and Requests for Production of Documents are Deficient.

### A. Plaintiffs' Supplemental Written Discovery Responses Are Incomplete and Do Not Provide the Information Requested.

On October 29, 2019, following a meet and confer on October 28, 2019, Plaintiffs served supplemental responses to Sanofi's interrogatories and requests for production.[6] However, the following responses remain deficient. Sanofi requests the Court compel Ms. Thibodeaux and Ms. Crayton to provide complete responses that specifically respond to the discovery propounded.

- **Crayton Request No. 1:** This request asks Plaintiff to produce written reports, diagnoses, statements or opinions from any of Plaintiff's treating or consulting physicians that causally relate or associate her alleged hair loss with Taxotere. Instead of directing Sanofi to specific records Plaintiff believes are responsive to this request, counsel generically refers to "all medical records" and expert reports from Plaintiff's general causation experts. Such non-specific references to "all medical records" does not provide the specificity necessary for Sanofi to identify records that plaintiff believes are responsive to this request.

    In addition to her generic reference to "medical records" and general causation expert reports, Ms. Crayton also indicates that "counsel relies upon the previously produced records of Dr. Rochon which note that Plaintiff suffers from alopecia[.]"[7] Ms. Crayton

---

[6] Plaintiff Sheila Crayton's Supplemental Responses to Defendant Sanofi-Aventis U.S. LLC's First Request for Production of Documents (Ex. P); Plaintiff Sheila Crayton's Supplemental Responses to Defendant Sanofi-Aventis U.S. LLC's First Request for Interrogatories (Ex. Q); Plaintiff Cynthia Thibodeaux's Second Supplemental Responses to Defendant Sanofi-Aventis U.S. LLC's Second Request for Production of Documents (Ex. R); Plaintiff Cynthia Thibodeaux's Second Supplemental Responses to Defendant Sanofi-Aventis U.S. LLC's Second Interrogatories (Ex. S).

[7] Ms. Crayton also lists Dr. Rochon for the first time in Requests for Production 10 and 14, and Interrogatories 5, 6 and 8.

7

states that she has already produced Dr. Rochon's records. But, Plaintiff has never produced such records (nor has Sanofi otherwise received them), and Ms. Crayton has never identified Dr. Rochon in her Plaintiff Fact Sheet as a provider. Sanofi, in fact, only became aware of Dr. Rochon when her name appeared in billing records from her insurance company for treatment of Ms. Crayton wholly *unrelated* to hair loss. Further, Plaintiff's description indicates that Dr. Rochon purportedly noted "that Plaintiff suffers from alopecia." The request does not ask whether Plaintiff has alopecia; rather, the Court should order Ms. Crayton to answer the request posed by Sanofi and provide the necessary specificity for Sanofi to determine which documents Plaintiff believes are responsive to this request.

- **Crayton Request Nos. 3–6, 15; Thibodeaux Request Nos. 2–5, 11:** These requests seek photographs that depict Plaintiffs' heads, hair or alleged injuries, including hard copy and digital photographs and photographs on Plaintiffs' telephones and social media. And in Sanofi's October 15, 2019 letters Sanofi reiterated its request for all photographs in Plaintiffs' possession that depict them. Plaintiffs represented at the parties' October 28 telephonic meet and confer that Plaintiffs have produced all photographs of both plaintiffs in their respective possession. As discussed in Section I above, Sanofi requests the Court require Plaintiffs' counsel to confirm in writing that all photographs provided or obtained by counsel that depict Plaintiffs have been produced to Sanofi.

- **Thibodeaux Request No. 7:** This request asks Ms. Thibodeaux to produce documents identified in response to Defendant's Second Set of Interrogatories. Ms. Thibodeaux generically directs Sanofi to "expert reports, documents relied upon by experts, medical records, deposition transcripts, and photographs which have previously been produced." Documents responsive to this request that Ms. Thibodeaux believes were previously produced should be identified with specificity, and in a fashion that allows Sanofi to identify them. Ms. Thibodeaux's current response does not permit identification in any manner and is thus non-responsive.

- **Crayton Request No. 9:** This request asks Ms. Crayton to produce all documents she reviewed in preparation for her deposition. The response, however, fails to indicate whether Plaintiff's counsel ever confirmed this with Ms. Crayton. Instead, the response indicates only that "[c]ounsel has reviewed Ms. Crayton's deposition testimony regarding her preparation for deposition" and does not believe any responsive documents exist. This response by counsel is improper. The Court should compel counsel to confer with Ms. Crayton, as it is her knowledge that is important to Defendants, before supplementing Plaintiff's response.

- **Crayton Request No. 10:** This request asks Ms. Crayton for a copy of documents and tangible things in her possession, custody, or control that she may use to support her claims. In expansive fashion, Plaintiff's response references the entire universe of discovery in this case, including "all medical records, photographs, and expert reports within counsel's

8

possession," as well as all material consulted and reviewed by such experts, all photographs and expert reports, and all of "Defendants' document production during the course of general liability discovery." Ms. Crayton's response, which encompasses potentially every single document in discovery, does not permit Sanofi to identify responsive documents with specificity.

- **Crayton Request No. 12:** This request asks Ms. Crayton to produce medical literature she believes supports her position on issues in this litigation. Like Request No. 10, Ms. Crayton states that "[c]ounsel relies upon the medical literature review [sic], cited, and relied upon by the experts in this case as well as all documents produced during the course of discovery by either party." Ms. Crayton's response does not permit Sanofi to identify documents Ms. Crayton believes are responsive to this request.

- **Crayton Request No. 14:** This request asks Ms. Crayton to produce document in her possession related to hair loss. Plaintiff again reference "all medical records and expert reports within counsel's possession." Plaintiff also generically refers Sanofi to Plaintiff's and her oncologist's deposition testimony. Rather than providing the requested documents, Plaintiff puts the onus on Sanofi to scour depositions—as well as all medical records and expert reports—to find the responsive documents. This response fails to comply with counsel's duty to ensure discovery is fully answered in accordance with the Federal Rules.

- **Crayton Interrogatories Nos. 6, 8; Thibodeaux Interrogatories Nos. 4–6:** These interrogatories asks Plaintiffs to identify persons with whom Plaintiffs have communicated regarding topics at the core of this litigation and to provide details regarding such communications. Specifically Sanofi seeks information regarding Plaintiffs' communications regarding:

    o treatment or potential treatment for or concerning hair loss, and requests that for each such person identified, Plaintiffs provide the date(s) and method of the communications and describe the communication (Crayton Interrogatory No. 6; Thibodeaux Interrogatory No. 4).

    o the injury Plaintiffs allege in this lawsuit, including its effect on her life, whether it is permanent or persistent, and whether it was caused or contributed to by use of Taxotere, and requests that for each person who has opined as to whether Plaintiff's alleged injury is attributed to Taxotere, to state what the person said and when where and to whom the statement was made. (Crayton Interrogatory No. 8; Thibodeaux Interrogatory No. 6).

    o Finally, Ms. Thibodeaux was also asked to identify individuals with whom she has communicated regarding this litigation and the date(s), method, and a description of the contact or communication, and last known contact information for that individual (Thibodeaux Interrogatory No 5).

Plaintiffs fail to identify all of the requested information with specificity. *Evans v. United Fire & Cas. Ins. Co.*, No. CIV.A. 06-6783, 2007 WL 2323363, at *1 (E.D. La. Aug. 9, 2007) ("It is *not* a sufficient response to an interrogatory that asks for a contention merely to dump written materials on an opposing party and then vaguely refer to them.").

Further, Ms. Crayton avers that she cannot recall the dates and substance of her consultations with her doctors. Instead, the response refers Sanofi, in part, to Ms. Crayton's and Dr. Chandrasekaran's deposition testimony, which is improper. *See Tadlock v. Arctic Cat Sales, Inc.*, No. CV 15-766-JJB-EWD, 2017 WL 1032516, at *5 (M.D. La. Mar. 17, 2017) ("Courts have interpreted [Rule 33] to means that is technically improper and unresponsive for an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories." (quoting *Kleppinger v. Tex. Dep't of Transp.*, No. 5:10-CV-124, 2013 WL 12138545, at *2 (S.D. Tex. Jan. 3, 2013))); Similarly, Ms. Thibodeaux refers Sanofi to her and her physicians' depositions. *Stiward v. United States*, No. CIV.A. 05-1926, 2007 WL 2417382, at *4 (E.D. La. Aug. 24, 2007) (directing the defendant to supplement its interrogatories after the original responses referred to depositions). Neither Ms. Crayton nor Ms. Thibodeaux's responses are sufficient, and the Court should compel supplemental responses.

Also, Plaintiffs' current responses points to non-existent information. For example, in Ms. Thibodeaux's response to Interrogatory No. 4, she lists "Catherine Valteau" as someone she "may" have had contact or communication with regarding hair loss. The response state that the "date of discussion [is] unknown," and "please see Plaintiff's deposition for only information known by Plaintiff." But, Ms. Thibodeaux's deposition reveals no conversations with Ms. Valteau. *See* Thibodeaux Vol. I Dep. 99:17-100:8 (Ex. I). Likewise, Ms. Thibodeaux lists Dr. Samuel Andrews as responsive to Interrogatory No. 5. But, Sanofi cannot rely on Dr. Andrews's deposition to discover the contents of his communications with Plaintiff—Dr. Andrews was not deposed. Nor can Sanofi rely on medical records—Sanofi has no records related to his care of Ms. Thibodeaux.

Plaintiffs should be required to provide complete answers that identify the information requested with specificity.

- **Thibodeaux Interrogatory No. 10:** This interrogatory asks Ms. Thibodeaux to identify persons from whom she has received documents or tangible things responsive to Defendant's Second Set of Request for Production, and requests she identify which documents or things were received and provide the date and a description of the document or thing. Ms. Thibodeaux responded, "Plaintiff has requested a renewed search for photographs from Frank Williams and Kenisha Thibodeaux, but no photographs have been received as of this date." Sanofi has inquired about what documents have, to date, been received. It is unclear from Plaintiff's answer if she believes any responsive documents

exist. Ms. Thibodeaux should identify, with specificity, which documents, if any, she believes are responsive to this request.

- **Crayton Interrogatory No. 13:** This interrogatory asks Plaintiff to identify persons who have information regarding her claimed injuries and damages, and to identify their contact information, relationship to Plaintiff and the nature of the information known by such persons. Ms. Crayton simply refers Sanofi to her responses to Interrogatories Nos. 5, 6, and 8. This response does not answer the question posed, particularly as Ms. Crayton's responses to Interrogatories No. 6 and 8, are also insufficient (as described above).

**B.     Counsel Refuses to Permit Sheila Crayton to Verify Her Interrogatory Responses.**

The inescapable and overarching deficiency in Ms. Crayton's interrogatory responses is that her counsel—not Ms. Crayton—answered them.[8] Under Federal Rule of Civil Procedure 33, "interrogatories must be answered *by the party* to whom they are directed" and "[t]he person who makes the answers must sign them." Fed. R. Civ. P. 33 (b)(1)(A) and (b)(5) (emphasis added). "Courts have construed the Rule 33 signing requirement rigidly." *Leleux-Thubron v. Iberia Par. Gov't*, No. 6:13-CV-00852, 2015 WL 5519231, at *3 (W.D. La. Sept. 16, 2015); *see also Entergy La., Inc. v. Nat'l Union Fire Ins. Co.*, No. CIV. A. 98-219, 1999 WL 239511, at *2 (E.D. La. Apr. 21, 1999) (finding that under Rule 33(b)(5), the party, and not the party's attorney, must sign interrogatories); *Swank v. Scottsdale Ins. Co.*, 2011 WL 1044625, at *3 (W.D. La. Mar. 21, 2011) (same). Here, Ms. Crayton failed to verify either her supplemental interrogatory responses, which were served on October 29, 2019, or her original responses, which were served more than a year

---

[8] Indeed, Plaintiff's counsel makes no secret that they are answering the interrogatories. *See, e.g.*, Pl. Sheila Crayton's Suppl. Resp. at No. 1 (providing responses "to the best of counsel's knowledge and with the best efforts of counsel"); *id.* at No. 3 (identifying materials that "[c]ounsel refers to and relies upon"); No. 8 ("to the best of counsel's knowledge Plaintiff may have communicated with the following individuals about her injuries . . . ."). Through interrogatories, Sanofi seeks verified responses from Plaintiff, not a secondhand recitation by her attorneys. Beyond the lack of probative value, absent verification by Ms. Crayton, interrogatory responses have little use during cross-examination at trial.

ago on October 18, 2018. And her counsel refuses to permit Plaintiff to do so based on Ms. Crayton's purported lack of mental capacity.[9]

Ms. Crayton filed this lawsuit, and she has participated as an MDL plaintiff for more than two years. Although she is under disability, Ms. Crayton is not legally incapacitated, nor has suit been filed on her behalf in a representative capacity. Rather, Ms. Crayton has sat for more than ten hours of deposition testimony over two days, and she has answered hundreds of questions. Plaintiff's counsel, through PSC leadership, later sought to have Ms. Crayton removed from the trial pool, citing her declining health. *See* Rec. Doc. 6559-1 at 9. In opposition, Sanofi noted that Ms. Crayton's health conditions were chronic and stable and that she was no different on that day than she was at the time she filed her lawsuit. *See* Rec. Doc. 6670 at 3. Plaintiff also refused to dismiss the case with prejudice instead seeking some sort of "pass" to remain in play for potential global resolution one day without prosecuting her own claims. As Sanofi emphasized, the Court should not allow Ms. Crayton "to keep her claim in hopes of collecting on a future settlement but avoid scrutiny of the fundamental legal and scientific questions related to causation and liability." *Id.* at 1. Judge Milazzo has already ruled upon and denied Plaintiff's request. Rec. Doc. 6935. Today the issue is selective involvement and participation by Plaintiff through her counsel.

To that end, Ms. Crayton has participated in this case as recently as July 5, 2019, when she signed authorizations permitting Sanofi to collect her medical records. *See* E-mail from Richard Root to Jordan Baehr (July 15, 2019) (Ex. T). And, after agreeing multiple times to postpone a

---

[9] *See* Correspondence from Ms. Thibodeaux's Counsel to Kelly Bieri (Oct. 28, 2019) ("counsel does not believe that Plaintiff retains the mental capacity and lucidity to properly sign and verify discovery production."). Similarly, during the parties' October 28, 2019 meet and confer conference, plaintiffs' liaison counsel also stated that she would not permit Ms. Crayton to sign interrogatory responses because Ms. Crayton is "incompetent."

supplemental deposition of Ms. Crayton pending her becoming primary plaintiff for the second bellwether trial, Ms. Crayton's counsel suggested that she be deposed as recently as *last month*, making no suggestion of incompetency at that time.  *See* E-mail from Jordan Baehr to Jennifer Greene (Sept. 3, 2019) (Ex. U).  It is wholly improper for Plaintiff to continue to maintain a lawsuit (and be slated for potential trial in March) while only selectively participating in her discovery obligations.  Plaintiff should be required to provide complete and verified interrogatory responses within seven (7) days.

**III.   Authorizations**

Lastly, Ms. Crayton has failed to provide a complete set of current (non-expired) authorizations despite requests by Sanofi and despite her obligation under Amended Pretrial Order 22 to do so.  *See* Amended PTO 22 (Doc. 325), at 2 ("Plaintiffs shall each complete and serve upon Defendants a PFS and Authorizations for Release of Records of all healthcare providers and other sources of information and records (*e.g.* pharmacies, employers, etc.) …"); *see also* PTO 38 (Doc. 326-1) (providing the Psychiatric Authorization approved by the Court).  While Ms. Crayton provided updated (non-expired) HIPPA and Health Insurance Records authorizations in July 2019, she has not provided an updated (non-expired) Psychiatric Records authorization.  This Court should compel Plaintiff to do so within seven (7) days.

## CONCLUSION

For the foregoing reasons, Sanofi respectfully requests the Court grants its Motion to Compel.

Date: October 30, 2019

                                        Respectfully submitted,

                                        <u>/s/ *Douglas J. Moore*</u>
                                        Douglas J. Moore (Bar No. 27706)
                                        **IRWIN FRITCHIE URQUHART &**
                                        **MOORE LLC**
                                        400 Poydras Street, Suite 2700
                                        New Orleans, LA 70130
                                        Telephone: 504-310-2100
                                        Facsimile: 504-310-2120
                                        dmoore@irwinllc.com

                                        Harley V. Ratliff
                                        Adrienne L. Byard
                                        Kelly Bieri
                                        **SHOOK, HARDY& BACON L.L.P.**
                                        2555 Grand Boulevard
                                        Kansas City, Missouri 64108
                                        Telephone: 816-474-6550
                                        Facsimile: 816-421-5547
                                        hratliff@shb.com
                                        abyard@shb.com
                                        kbieri@shb.com

                                        *Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

### **CERTIFICATE OF SERVICE**

      I hereby certify that on October 30, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                                                    <u>*/s/ Douglas J. Moore*</u>