# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In Re: TAXOTERE (DOCETAXEL)**
**PRODUCTS LIABILITY LITIGATION**

**THIS DOCUMENT RELATES TO**

**MDL NO. 2740**

**SECTION "H" (5)**
**HON. JANE TRICHE MILAZZO**

Sheila Crayton, Case No. 2:17-cv-5923
Cynthia Thibodeaux, Case No. 2:16-cv-15859

---

### PLAINTIFFS' OPPOSITION TO SANOFI'S MOTION TO COMPEL

---

MAY IT PLEASE THE COURT:

Plaintiffs Sheila Crayton and Cynthia Thibodeaux are currently selected as Bellwether Plaintiffs in the Second Round Trial phase of this MDL.    Ms. Thibodaux is scheduled for the March 2020 trial, with Ms. Crayton as the alternate Bellwether.

There have been extensive discovery efforts regarding both Plaintiffs, an enormous amount of medical records exchanged, and many fact and expert witnesses deposed.    Plaintiff counsel has heretofore worked with counsel for Sanofi to meet the Plaintiffs' discovery obligations, and remain committed to working out any differences of opinion.

Here, Sanofi very artfully mixes the factual circumstances in the two cases in an effort to make its point, and as a result, an accurate recital of the facts in each matter has been obscured. An example of this is Sanofi's assertion that "Plaintiffs have produced 120 photographs of themselves from homes, phones and social media", all while attributing the recent production to Plaintiff counsel's failure to seek the requested information, Plaintiffs refusal to provide the information to counsel, or insinuation that the Plaintiffs' side has had information and not produced same to mover.    None of those suppositions are correct.

1

**Ms. Thibodeaux Has Produced All Relevant Photographs Of Her Hair**

In virtually the same breath, Sanofi complains of a large number of photographs produced, and then says, "*To put it simply, Ms. Thibodeaux produced no photographs of herself from 2008-2016.*"     And that is exactly correct.   In an effort to be as forthcoming as possible with ALL photographs, even photographs which in no way depict Ms. Thibodeaux's current/post-chemotherapy hair, Plaintiff produced every photo she and her counsel could find, even photos that all parties know are beyond the scope of PTO-71 and 71A due to the fact that no hair is shown.   Sanofi knows that Ms. Thibodeaux will not be seen without her wig.

Sanofi's counsel was present at the deposition of chemotherapy Nurse Melanie Breaux, who testified that Ms. Thibodeaux always had her head covered after losing her hair, even when she was undergoing chemotherapy.    Sanofi's counsel attended Ms. Thibodeaux's deposition, where Plaintiff testified that she does not like for her husband to see her bald head, even alone in her own home, and how she hides her hair loss from her loving spouse.

Sanofi's counsel attended the deposition of Ms. Thibodeaux's husband who confirmed that fact.    In short, Sanofi has *always* been aware that Ms. Thibodeaux is adamant that she has not been photographed without a wig since losing her hair, and that the photographs of her virtually bald head previously provided by Plaintiff's counsel to Sanofi's counsel – coupled with the photographs of her virtually bald head previously provided to Sanofi's counsel by Dr. Tosti (who examined Cynthia Thibodeaux and took photographs of her scalp as part of her expert report) are the only photographs that exist of Cynthia Thibodeaux with no wig.

Now, because of the renewed request for photographs, Ms. Thibodeaux did find an old driver's license and an old identification badge from a former employer.   Plaintiffs' counsel was under the impression that the Court looked unfavorably upon those types of photographs and deemed them unsuitable for meeting PTO71 photograph requirements.   Regardless, we are

fortunate that those badge/license photographs were produced by Ms. Thibodeaux, as they appear to be the only pre-chemotherapy photographs of Ms. Thibodeaux that survived the Hurricanes Katrina and Isaac that destroyed her many possessions.

Sanofi is not prejudiced by the absence of photographs of Ms. Thibodeaux's hair post-chemotherapy, as her hair is perfectly preserved in the state it was in after chemotherapy.  She is still virtually bald.   This is not a case where a plaintiff's hair was slowly regained, albeit thinner or not uniformly returned to the pre-chemotherapy state, with an arguable claim that a change in hair over time has some diagnostic or medical import.

At the core of the issue is this: Cynthia Thibodeaux has produced every photograph that she has in a time frame before and after her chemotherapy.    We share Sanofi's wish that there was not a limited selection of photographs.   We wish that Ms. Thibodeaux's hair had regrown after her temporary alopecia.  Plaintiff understands why Sanofi would be unhappy that it cannot point a finger at a photograph of Ms. Thibodeaux's hair regrowth and say, "It was not me".   But Sanofi cannot compel that which does not exist.

**All ESI Produced For Ms. Thibodeaux**

Sanofi theorizes that no ESI investigation has taken place for Ms. Thibodeaux, and that it questions the legitimacy of the searches.   There have been numerous searches for responsive photographs and for ESI material, the more recent searches involving Plaintiff's law firm employing specific software to assist counsel and Plaintiff in finding any and all responsive information.

We remain willing to aver to the Court in any way the Court deems proper that Plaintiff and  Counsel for Plaintiff have no further production.

**Thibodeaux Discovery Response Issues**

Next, Sanofi objects to the Thibodeaux discovery response.    Sanofi complains that

Interrogatory # 10 references unknown documents from Frank Williams and Kenisha Thibodeaux.   They are unknown only because whenever Ms. Thibodeaux asks a third party if they have any photos of her, she cannot be sure if they have any.  This is especially true in this case, where both parties have been previously asked numerous times to produce any responsive photographs showing Ms. Thibodeaux's hair.   Mr. Williams was issued a subpoena for any photographs in his possession, and he complied directly to Sanofi with a photograph and an explanation.  Plaintiff counsel asked him yet again to look.  All we can do is ask folks to look, look again, and keep on looking.   Plaintiff is positive that she has no responsive documents. She cannot speak to any third party who may have documents.   All she can do is repetitively request if friends and family have photographs, and produce whatever material that *she* is provided to Sanofi.   She has done that.

As to Interrogatory Number 4, Ms. Thibodeaux's reference to Ms. Valteau perhaps should have been left off, as we are advised that Ms. Valteau is deceased.   We apologize for that confusion.

As to the remaining issues with Ms. Thibodeaux's discovery responses, she respectfully advises the Court that she is not an expert, and the questions asking her for causation related information is beyond her capacity.   Ms. Thibodeaux also reminds Sanofi and the Court that she subjected herself to two separate depositions, of approximately ten hours of questioning.   While no doubt Sanofi wants to ask those questions yet again, Plaintiff feels that she has complied with the questions and production duties in full.   And to the extent that Sanofi wants to use discovery to obtain a premature exhibit list, and to force Plaintiff to tell Sanofi which documents Plaintiff feels prove which element of the case more than other documents, Plaintiff respectfully suggest that those impressions are of a work product nature, and not appropriate at this juncture, if at all.

4

**The Problems With Ms. Crayton**

Ms. Crayton poses an entirely different problem, as Plaintiff counsel cannot ever aver that we believe that we have correct answers, or all production, or that the Plaintiff understands what PTO 71A means.    Nor can we know which of her contradictory statements are true.    As this litigation has progressed, Counsel for Plaintiff has been unable to express with sufficient urgency or eloquence the fact that is undisputed to all of her counsel – that Ms. Crayton does not have the ability to assist her counsel with her duties as a bellwether plaintiff.    To inform the Court of the medical reasons that her ability to assist counsel is severely hampered, we have submitted several exhibits, including an affidavit from Plaintiff Counsel as to the facts surrounding the recent discovery efforts (Exhibit A), a time line of her health and cognitive history (Exhibit B), and a selection of medical record excerpts documenting those health and cognitive issues (Exhibit C).

Moreover, we now advise the Court and the Parties that Counsel has been in contact with ethics counsel, who has informed us of the precarious legal issues which arise when a client without the capacity to affirm facts is placed in a position where a defendant demands that she affirm under oath that which she is unable to do, and for which her affirmation may subject her to severe sanctions, not the least of which is setting her up as a virtual punching bag on cross-examination through no fault of her own.   This is especially concerning when her contradictory statements and memory errors are not her fault, and when the witness is vulnerable to medical harm as a result of the process, the witness being certified as having long standing stress related medical issues in addition to her cognitive impairment.

Sanofi alleges that Plaintiff counsel is somehow gaming the system, asserting, "*Today the issue is selective involvement and participation by Plaintiff through her counsel.*"    Nothing

5

could be further from the truth, and we reject and resent the allegation.   We are watching a good woman's mental and physical health deteriorate virtually before our eyes over the last almost four years.   Counsel for Sanofi participated in her two (the first had to be stopped due to her frail condition and medication use) depositions.   Accordingly, counsel for Sanofi is aware of the approximately one hundred non-responsive answers to her various questions.   "I don't know" and "I don't remember" predominated.

Sanofi says that "*Ms. Crayton's health conditions were chronic and stable and that she was no different on that day than she was at the time she filed her lawsuit.*"   Undersigned Counsel and the attorneys and staff of the Morris Bart firm have an exponentially better idea of Ms. Crayton's health and capabilities, as we are the people with regular contact over the years, with a far greater appreciation of her declining health and increasing stress.   That is why we have submitted the affidavit and time line and medical records for the Court's review.

There is a huge difference between a refusal to cooperate and an inability to assist counsel.   Sanofi suggests the former, while we aver as officers of the court that the latter explanation is the source of the problems with discovery, and we welcome the Court's inquiry of these issues, and any assistance in resolving the problem.

Finally, Counsel for Plaintiffs both understands and agrees that Counsel for Sanofi should, in the normal course of litigation, be entitled to a more complete response from Ms. Crayton than has been provided.   We are not unsympathetic to the situation, and we appreciate the factual conundrum that Ms. Crayton's condition creates for all parties.   But that sympathy does not erase the medical facts, the reality of the Plaintiff's condition, the very real possibilitiy of harm to Plaintiff, nor remove the ethical obligations of counsel to the welfare of our client in this unique situation.

Respectfully submitted,


/s Richard L. Root
Richard L. Root La# 19988
Betsy Barnes La# 19473
Morris Bart, LLC
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Phone: (504) 525-8000
Fax: (504) 599-3392
Email: rroot@morrisbart.com
bbarnesl@morrisbart.com
Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2019, I electronically filed the foregoing with the Clerk of

Court using the ECF system which sent notification of such filing to all counsel of record.

/s/Richard L. Root