UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
ALL CASES

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED MASTER LONG-FORM COMPLAINT AND JURY DEMAND

The Court should deny Plaintiffs' Motion to file a Third Amended Master Long-Form Complaint and Jury Demand (Rec. Doc. 8334, "Motion"). Contrary to statements made in Plaintiffs' Motion, the proposed Third Amended Complaint does not merely "provide[] more details about the actions and inactions that form the bases of already-existing causes of action." (Rec Doc. 8334-at 1). Rather, it attempts to substantively alter and broaden Plaintiffs' definition of their alleged injuries and to skirt this Court's rulings on plainly time-barred lawsuits.

- First, in their proposed Third Amended Master Complaint, Plaintiffs fundamentally change the definition of their injury from occurring six-months following chemotherapy to lacking any "single definition," sometimes occurring "between twelve to twenty-four months following chemotherapy treatment."[1]

- Second, Plaintiffs added argumentative allegations that Defendants hid the alleged risk of permanent hair loss with Taxotere from the medical community.[2]

Plaintiffs have offered no credible justification or explanation for seeking a fourth iteration of their Master Complaint—having been granted two prior amendments—after several rounds of

---

[1] *See* Exhibit A (Redline Comparison of Plaintiffs' Second Amended Master Complaint and proposed Third Amended Master Complaint) at ¶¶ 193–198.

[2] *See id.* at ¶¶ 154, 158, 164, 167, 175, and 233–42.

1

dispositive briefing on their Second Amended Master Complaint, statute-of-limitations rulings from this Court, a first trial through jury verdict, and the close of fact discovery and amidst expert discovery for the second trial. Rather than narrow Plaintiffs' claims based on the work the parties and Court have done over the last three years, Plaintiffs seek to use the Master Complaint—a tool for streamlining pleadings early in an MDL—to expand their claims universally and to make them not only more ambiguous, but also contrary to their own sworn Plaintiff Fact Sheets, deposition testimony, and expert opinions.

If Plaintiffs are granted leave to amend, the Defendants will be entitled to another round of Rule 12 briefing. More than 11,000 cases incorporating the earlier Master Complaint in the operative Short Form Complaint—many explicitly adopting a six-month definition of each Plaintiff's injury—will need to be amended and refiled. Allowing Plaintiffs to change their injury definition at this late date will undo and reopen years' worth of expert work, based solely on a tactical, not factual, change in circumstances. Plaintiffs cite no authority that would permit them to modify and broaden their claims or an MDL in this way, much less at this late stage. To the contrary, relevant case law confirms that motions to amend the pleadings should be denied where, as here, amendment is unduly delayed and would be prejudicial to Defendants. Plaintiffs' request is contrary to the objectives of "the just and efficient conduct of" this MDL, 28 U.S.C. § 1407(a), and their Motion should be denied.

## **BACKGROUND**

The Master Complaint was intended to identify inventory-wide legal issues and factual allegations at the outset of the litigation. *See* Exhibit B, Hr'g Tr. at 33:10–21 (Nov. 10, 2016) (Engelhardt, J., presiding) (Judge Engelhardt explained that a Master Complaint is used to "tee everything up" and specifically instructed that a Master Complaint should be addressed "early on"

by liaison counsel). Counsel identified Plaintiffs' definition of their alleged injury as a key issue as long as three years ago, explaining that "how []we define" Plaintiffs' injury "will [] have a significant impact on how we are able to . . . collectively evaluate our cases[.]" *See id.* at 45:16–46:2. Since Plaintiffs' original Master Complaint filed March 31, 2017, Plaintiffs have relied on a single definition of each Plaintiff's alleged injury: "an absence of or incomplete hair regrowth **six months** beyond the completion of chemotherapy." *See* Rec. Docs. 312 at ¶ 181 (Plfs.' Master Long Form Complaint), 689 at ¶ 180 (Plfs.' First Amended Master Long Form Complaint), 4407 at ¶ 181 (Plfs.' Second Amended Master Long Form Complaint) (emphasis added).

The Court ordered Plaintiffs to make any necessary amendments to their pleadings more than a year before the first trial.[3] Magistrate Judge North utilized Plaintiffs' definition of their alleged injury in resolving discovery disputes on Plaintiffs' serial 30(b)(6) corporate representative depositions of Sanofi. Rec. Doc. 3473 at 2 (Judge North Minute Entry re Hearing on Defs.' Mot. for a Protective Order) (for the purposes of the deposition, "the term 'persistent alopecia' shall mean that which remained six months after chemotherapy ended and without resolution."). And this Court cited Plaintiffs' six-month definition in ruling on summary judgment motions based on the statute of limitations. *See* Rec. Doc. 7571 (Order and Reasons on Motion for Summary Judgment Based on Statute of Limitations Defenses) at 2 ("According to the Master Complaint, Plaintiffs' injuries—disfiguring permanent alopecia—manifested six months after the completion of chemotherapy.").

---

[3] *See* Rec. Doc. 935 (CMO 8) ("Amendments to pleadings, third-party actions, cross-claims and counter-claims shall be filed no later than June 29, 2018, in accordance with the Federal Rules of Civil Procedure and Local Rule 7.6."). Although CMO 8 was superseded by Rec. Doc. 3064 (CMO 14) shortly before the June 2018 amendment deadline, it remains obvious that the time for Amendments to the Master Complaint has long since passed.

3

Only now, after the Court granted summary judgment on statute-of-limitations grounds in the *Johnson* and *Francis* matters, do Plaintiffs seek to redefine their alleged injury from accruing six months after chemotherapy to occurring six or twelve or twenty-four or more months after chemotherapy. *See* Exhibit C, Plfs.' Proposed Third Amended Master Complaint at ¶ 194 (now alleging there is "no single definition" for Plaintiffs' alleged injury and the "scientific literature has variously referred to Permanent Chemotherapy Induced Alopecia as occurring between twelve to twenty-four months following chemotherapy treatment."). Plaintiffs also seek to add allegations that Defendants allegedly hid from the medical community and patients that Taxotere allegedly can cause permanent hair loss. *See id.* at ¶¶ 168, 233–242.

Not only are several of these allegations based on arguments excluded from the first Bellwether trial (Rec. Doc. 8201 at 5–6 (Order and Reasons precluding evidence or argument regarding foreign labeling and regulatory actions or of third party advocacy or communication groups)), Plaintiffs' fraudulent-concealment allegations have no place in the Master Complaint. *See* Exhibit D, Hr'g Tr. at 23:4–7 (Aug. 30, 2017) (Engelhardt. J., presiding) (Judge Engelhardt explained that while Plaintiffs' fraud based claims would not be dismissed, "specific allegations, particularly with respect to any allegations of fraud, should be perfected within the short form complaints filed in the individual member cases.").

Plaintiffs' motivation for these amendments is transparent. Without a clear definition of when their injury manifested, and with padded allegations of fraudulent concealment, Plaintiffs hope to muddy the record and avoid statute-of-limitations dismissals. Yet it is undisputed (i) when these Plaintiffs lost their hair, and (ii) that thousands of Plaintiffs have identified the date of their hair loss, or when their hair failed to regrow completely within six months of chemotherapy ending, as the onset date of their injury. So regardless of what allegations Plaintiffs include in the

4

Master Complaint, nothing will change the fact that thousands of Plaintiffs have filed lawsuits years out-of-time. What will happen with an amendment, instead, is administrative and procedural upheaval. Plaintiff's Motion should be denied.

## **LEGAL STANDARD**

While Rule 15 provides that "leave to amend a pleading should be given freely … when justice so requires," the "generous standard set forth in Rule 15(a) is tempered by the necessary power of a district court to manage a case." *See Lackey v. SDT Waste & Debris Servs., LLC*, No. 11-cv-1087, 2014 WL 2861819, at *2 (E.D. La. June 24, 2014) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (internal quotation marks omitted)). The Supreme Court has identified five factors to consider when assessing whether to deny leave to amend a complaint: "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment[.]'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis,* 371 U.S. 178 (1962)). All relevant factors favor denying Plaintiffs' Motion to Amend.

**I.     Granting Plaintiffs' Motion to Amend will Unduly Prejudice Defendants.**

A defendant is unduly prejudiced by granting leave to amend if the changes to the complaint would require additional discovery and the defendant to prepare a different defense. *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004); *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (defendant unduly prejudiced by plaintiff's attempt to broaden the issues, which would require additional discovery and another motion for summary judgment); *Pharr v. Wille*, No. 1:14-cv-762, 2016 WL 1448886, at *2 (W.D. Tex. Apr. 12, 2016) (denying motion to amend where the

case had entered the summary judgment stage because it would "fundamentally alter the course of [the] litigation"). Here, both would be required if Plaintiffs are granted leave to amend.

First, fact and expert discovery thus far has been conducted using Plaintiffs' definition that they were injured no later than six months after finishing chemotherapy—including discovery in trial pool cases and with respect to all Plaintiff Trial I Expert Reports, all Defense Trial I Expert Reports, and ***even all Plaintiff Trial II Expert Reports most recently produced on October 21, 2019***. *See, e.g.*, Exhibit E, Tosti October 21, 2019 Report at 14, 16 (reviewing articles where "[c]ases of alopecia lasting more than 6 months after the end of chemotherapy" were reported, which is consistent with her prior deposition testimony that in the dermatological community, "permanent alopecia, by definition, is alopecia that persists at least six months after the end of chemotherapy," Exhibit F, Tosti Dep. Vol. I at 207:21–24); Exhibit G, Feigal October 21, 2019 Report at 36 (defining PCIA as "an absence of or incomplete hair regrowth 6 months beyond completion of chemotherapy"); Exhibit H, Plunkett October 21, 2019 Report at ¶ 32 (stating that the medical literature generally recognizes permanent, irreversible alopecia as "hair that fails to regrow or substantially regrow at least by six months after treatment has ended."); Exhibit I, Kessler October 21, 2019 Supplemental Report at ¶ 1 (incorporating by reference Dr. Kessler's November 6, 2018 Report, which recognizes that "the medical literature has generally defined [irreversible alopecia] as the 'complete loss of growth or partial regrowth at least 6 months after chemotherapy.'" *See* Exhibit J, Kessler November 6, 2018 Report at ¶ 81).[4] That is, for Trial II,

---

[4] *See also* Defense Expert Reports produced for Trial I: Exhibit K, Glaspy December 14, 2018 Report at 26 (explaining that the results of TAX316 do not indicate whether Taxotere causes *permanent* alopecia under Plaintiffs' definition because "there is no documentary evidence to support any claim that [the majority of TAX316 patients reporting 'ongoing' alopecia] had alopecia more than six months after chemotherapy."); Exhibit L, Arrowsmith December 31, 2018 Report at 48–49 (same); Exhibit M, Victoria December 28, 2018 Report at 49 n.191 ("It is my

not even a month ago, Plaintiffs' experts all again proffered and relied on the same definition of permanent alopecia as Plaintiffs' earlier Master Complaint. And this was after Plaintiffs had moved to amend their allegations to change the definition of their alleged injury from manifesting six-months after chemotherapy to lacking "any single definition." *See* Exhibit C at ¶ 194. Defendants' expert reports are now due in less than one month, and there is no time for Defendants' experts to address Plaintiffs' new injury definition. *See* Rec. Doc. 7416 (CMO 14D).[5]

Likewise, all case-specific discovery in the more than 30 cases that have been selected and worked up as potential trial cases has thus far proceeded under Plaintiffs' "six months" definition of permanent alopecia. The deadline for fact discovery for Trial II has already passed, and Trial III discovery is well-underway, with selected cases proceeding into the next discovery phase. *See* Rec. Doc. 8430. All Trial I, II, and III Plaintiffs have been deposed under the theory that their alleged injury manifested six months after they finished chemotherapy. *See, e.g.*, Exhibit N, Thibodeaux Dep. Vol. I 276:3–6, 278:15–279:7 (testifying that by 2010, six months after completing chemotherapy, she was not seeing any more improvements to her hair regrowth); Exhibit O, Thibodeaux Dep. Vol. II 394:20–23 (same); Exhibit P, Thibodeaux Twelfth Amended Plaintiff Fact Sheet ("PFS") at § VI.5 (defining her injury as "[s]ignificant thinning of the hair on [her] head after six (6) months of discontinuing Taxotere or Docetaxel treatment[.]"); Exhibit Q, Crayton Fifth Amended PFS at § VI.5 (same); Exhibit R, Wanda Stewart Third Amended PFS at § VI.5 (same); Exhibit S, Alice Hughes Third Amended PFS at § VI.5 (defining her injury as "[n]o

---

understanding that the Court defined 'persistent alopecia' for purposes of the Kopreski depositions as alopecia 'that which remains six months after chemotherapy ended without resolution.'").

[5] The parties have agreed to extend the deadline for all Trial II Defendant Expert Reports, excluding pathologists and dermatologists, until December 9, 2019. Defendants' pathologists' and dermatologists' expert reports are due December 16, 2019.

7

hair growth on [her] head or body after six (6) months of discontinuing Taxotere or Docetaxel treatment," and identifying her injury as beginning August 2012, six months after she completed chemotherapy treatment in February 2012).

Similarly, significant MDL-wide discovery has been conducted using Plaintiffs' six-month definition. For example, Plaintiffs deposed Sanofi's 30(b)(6) witness, Dr. Michael Kopreski, for six days over 25 hours, all under Judge North's Order that, for the purposes of the deposition, "the term 'persistent alopecia' shall mean that which remained six months after chemotherapy ended and without resolution." Rec. Doc. 3473 at 2 (Judge North Minute Entry re Hearing on Defs.' Mot. for a Protective Order). In those depositions, Plaintiffs asked Dr. Kopreski whether patients in scores of adverse event reports did or did not have "persistent alopecia" depending on whether there was evidence that hair had not regrown six months after chemotherapy had ended. That was the examination that Plaintiffs conducted; that was the definition that Plaintiffs employed to include or exclude adverse event reports. Both Plaintiff and Sanofi then introduced Dr. Kopreski's testimony during the *Earnest* trial. *See, e.g.*, Exhibit T, Trial Tr. at 1915: 20–1916:7. Plaintiffs' attempt to now change their definition of permanent alopecia would prejudice Sanofi, who prepared its witnesses and proffered its corporate position on issues based on Plaintiffs' six-month definition. Whether and how Plaintiffs' purported new definition of their injury would impact Dr. Kopreski's testimony would undoubtedly become a subject of new and time-consuming discovery that would unfairly delay these proceedings.

Finally, Plaintiffs' six-month defined injury was the only injury alleged in the first trial, where Plaintiff Earnest's experts repeatedly asserted that permanent chemotherapy-induced alopecia is defined as incomplete hair regrowth six months beyond completion of chemotherapy. *See* Exhibit T, Trial Tr. at 986:10–14 (Dr. Tosti testified that the "classical diagnosis" of permanent

8

chemotherapy-induced alopecia is "incomplete hair regrowth six months after the end of chemotherapy."); *id.* at 321:8–17 (Dr. Kessler explained the difference between "reversible" hair loss associated with chemotherapy and permanent hair loss caused by chemotherapy as whether the hair regrows within "three or six months."); *id.* at Trial Tr. 432:4–20 (Dr. Kessler agreed that "six months with complete loss of growth or partial regrowth" is a "reasonable period of time" for defining "irreversible alopecia."); *id.* at 644:21–25 (Dr. Madigan testified that he verified that the patients in the TAX316 clinical study with "permanent hair loss" were followed for at least six months).

If Plaintiffs are permitted to file a fourth Master Complaint, the current trial schedules cannot proceed.  Defendants will be entitled to consider another round of Rule 12 briefing.  Fact and expert discovery will need to be reopened so that Defendants can explore Plaintiffs' new definition of their alleged injury, which is different than what Plaintiffs' experts have opined about to date.  Similarly, Defendants will need to explore whether to offer any new or additional expert opinions or clinical trial data analysis under Plaintiffs' new definition.  At the very least, Defendants' current experts will need additional time to evaluate Plaintiffs' injury and claims under this new definition, and to evaluate re-conducted fact discovery.  Courts have denied motions to amend where, as here, it would "impose[] additional discovery cost" and potentially require "another round of dispositive motions."  *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 238–39 (5th Cir. 2015); *see also Smith*, 393 F.3d at 596 ("A defendant is prejudiced if an added claim would require the defendant to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court.") (internal quotation marks and citation omitted); *Parish*, 195 F.3d at 764.  Where, as here, "the amendments would … affect the orderly progress of the MDL proceeding," including by "open[ing] the door to at least some additional

discovery" in cases worked up for trial, amendments "would cause undue prejudice" and leave to amend should be denied. *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2016 WL 4705620, at *3 (D. Kan. Sept. 8, 2018).

If Plaintiffs were permitted to amend, Defendants also would need time to address proposed new allegations that Defendants fraudulently concealed information from the medical community and consumers. Discovery of Sanofi closed nearly a year ago, on December 15, 2018. Rec. Doc. 762 at 7 (CMO 5) ("general liability fact discovery shall be completed by December 15, 2018"). Sanofi is currently preparing expert reports based on the existing claims and record for deadlines in just a few weeks. General company discovery involving the 505(b)(2) Defendants Sandoz, Hospira, and Accord is in its late stages, with numerous 30(b)(6) and company witness depositions already completed. *See* Rec. Doc. 915 (CMO 7). Permitting Plaintiffs to broaden their claims and raise new allegations at this stage—more than two years after filing their original Master Complaint and well into the litigation—would unduly prejudice Defendants and necessarily delay the trial schedule. That Plaintiffs purport to derive their new allegations from documents produced by Sanofi does not avoid the prejudice since Sanofi and the other Defendants "had no reason to anticipate that [they] would need to defend allegations … other than those that survived the motion to dismiss." *In re Syngenta*, 2016 WL 4705620, at *3.

## II. There is No Justification for Plaintiffs' Delay.

The Court also should deny Plaintiffs' attempt to amend their Master Complaint because the delay is not excusable. "Although Rule 15(a) does not impose a time limit 'for permissive amendment, at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Smith*, 393 F.3d at 595 (quoting *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992)). "In

such a situation, the plaintiff bears the burden of showing the delay to be 'due to oversight, inadvertence, or excusable neglect.'" *Id.*

Defendants first raised their statute-of-limitations defense in dispositive motion practice on May 26, 2017. Rec. Doc. 494-1 (Defs.' Mem. in Support of Their Mot. to Dismiss). Deferring that motion, the Court was inclined to work up the first round of trial pool cases before addressing the issue of broader disposition. *See* Rec. Doc. 1034 (Order and Reasons on Defs.' Mot. to Dismiss Claims Barred by the Applicable Statute of Limitations); *see also* Exhibit U, Hr'g Tr. at 25:8–18 (Oct. 27, 2017) (Engelhardt, J., presiding) (the Court explained that it had denied Defendants' omnibus statute of limitations motions without prejudice, believing it would be "more prudent to take the issues up after the first round of discovery," and "it's something that we'll certainly revisit."). Plaintiffs had more than a year after that ruling and before Trial I expert reports were due to amend their Master Complaint, but they failed to do so. In fact, Plaintiffs amended their Master Complaint on July 25, 2017, and again on September 27, 2018, but they never changed the definition of their alleged injury nor added the factual allegations they seek to include now. *See* Rec. Docs. 689, 4407 (First and Second Amended Master Complaints). Plaintiffs offer no explanation or excuse for their delay, asserting only that they learned new details "through discovery." Rec. Doc. 8334-1 (Motion) at 1. But fact discovery of Sanofi closed last December. If Plaintiffs believed they needed more time to amend their Master Complaint "based on the produced documents, they should … have brought the matter to the Court's attention in light of the numerous interrelated deadlines." *In re Syngenta*, 2016 WL 4705620, at *4. In any case, discovery is not the appropriate avenue to obtain the facts that form the basis of a complaint. *See e.g.*, *Netto v. Amtrack*, 863 F.2d 1210, 1216 (5th Cir. 1989) (factual allegations precede discovery); *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, No. 08-1905, 2009 WL 294353, at

11

\*2 (D. Minn. 2009) ("A plaintiff must adequately plead a claim before obtaining discovery, not the other way around.").

Moreover, many of Plaintiffs' new allegations are, on their face, based on information disclosed to Plaintiffs more than a year and up to nearly two years ago. *See, e.g.* Exhibit C , Plfs.' Proposed Third Amended Master Complaint at ¶¶ 154, 234 (referring to testimony from company witness Dr. Amy Freedman, deposed on October 26, 2018, and Sanofi's nurse tear sheet, produced on November 16, 2017); ¶¶ 235–41 (referring to Sanofi's "Voices" Facebook page, information produced to Plaintiffs on December 15, 2017); ¶165 (allegations related to the French Health Inquiry and EMA label change, information produced to Plaintiffs on December 15, 2017). Plaintiffs' claim that they have just learned "new" information is therefore incorrect. Rather, the only reasonable explanation for Plaintiffs' motion at this stage of the litigation is an attempt to avoid future dismissals. Courts do not permit amendment under these circumstances. *Quinn for CryptoMetrics, Inc. v. Scantech Identification Beams Sys., LLC*, No. 5:13-cv-834, 2017 WL 2124487, at \*2 (W.D. Tex. May 15, 2017) ("The Court finds, however, that the trustee is not seeking to merely correct an insufficiently stated claim—*i.e.,* that the adverse interest exception applies—but is instead trying to alter the facts previously pled in order to avoid dismissal. In such circumstances, leave to amend is not warranted."); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 15-md-2657, 2018 WL 2291316, at \*7 (D. Mass. May 18, 2018) (denying motion to amend where the court had already ruled on a motion to dismiss, explaining that courts are to "discourage any expectation that there will be leisurely repeated bites at the apple.") (internal quotation marks and citations omitted). There is no legitimate reason for Plaintiffs' amendments at this stage in the proceedings, and they should not be permitted.

## **CONCLUSION**

Making Plaintiffs' alleged injury more nebulous does not save the thousands of claims filed years-and-years too late in this MDL. An amended complaint would not change this Court's dismissals of the *Johnson* and *Francis* cases or the many other cases similarly situated where Plaintiffs claim an injury six months after chemotherapy ended and thereafter never saw a healthcare provider or took other action, despite excitement of their attention to the knowledge or belief that their hair had not regrown normally. The amendment is instead unsupported—even by Plaintiffs' own experts—and certain to delay proceedings and consume resources in a re-do of the pleadings stage (along with discovery that would then follow) after years of litigation. For the reasons stated above, the Court should deny Plaintiffs' Motion.

Date: November 20, 2019    Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*


*/s/ Mark S. Cheffo*
Mark S. Cheffo
Mara Cusker Gonzalez
**DECHERT LLP**
Three Bryant Park
1095 Avenues of Americas, 31st Floor
New York, New York 10036
Telephone: (212) 689-3814
Facsimile: (212) 698-3599
Mark.Cheffo@dechert.com
Maracusker.Gonzalez@dechert.com

/s/ *John F. Olinde*
John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE McCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 858-7000
Facsimile: (504) 585-7075
olinde@chaffe.com
rotolo@chafe.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc., and Pfizer Inc.*

/s/ *Lori G. Cohen*
Lori G. Cohen
R. Clifton Merrell
Evan Holden
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2100
cohenl@gtlaw.com
merrellc@gtlaw.com
holdene@gtlaw.com

/s/ *Deborah B. Rouen*
Deborah B. Rouen
E. Paige Sensenbrenner
**ADAMS AND REESE LLP**
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile:(504)-566-0210
debbie.rouen@arlaw.com
paige.sensenbrenner@arlaw.com

*Counsel for Defendant Sandoz Inc.*

/s/ *Michael J. Suffern*
Michael J. Suffern
Jennifer Snyder Heis
Jeffrey F. Peck
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: (513) 698-5064
Facsimile: (513) 698-5065
msuffern@ulmer.com
jheis@ulmer.com

*Counsel for Defendant Actavis Pharma, Inc., Actavis LLC f/k/a Actavis Inc., and Sagent Pharmaceuticals, Inc.*

/s/ *Julie A. Callsen*
Julie A. Callsen,
Brandon D. Cox
**TUCKER ELLIS LLP**
950 Main Ave., Suite 1100
Cleveland, OH 44113-7213
Telephone: (216) 696-2286
Facsimile: (216) 592-5009
Julie.Callsen@TuckerEllis.com
Brandon.Cox@TuckerEllis.com

*Counsel for Defendant Accord Healthcare Inc.*

/s/ *Stanton E. Shuler, Jr.*
Stanton E. Shuler, Jr. (Bar No. 19152)
**LEAKE & ANDERSSON LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
Telephone: (504) 585-7500
Facsimile: (504) 585-7775
sshuler@leakeandersson.com

/s/ *Geoffrey M. Coan*
Geoffrey M. Coan
Kathleen E. Kelly
**HINSHAW & CULBERTSON LLP**
28 State Street
Boston, MA 02109
Telephone: (617) 213-7000
Facsimile: (617) 213-7001
gcoan@hinshawlaw.com
kekelly@hinshawlaw.com

*Counsel for Defendant Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories, Ltd.*

/s/ *Erin M. Bosman*
Erin M. Bosman
Julie Y. Park
**MORRISON & FOERSTER LLP**
12531 High Bluff Dr.
San Diego, CA 92130-2040
Phone: 858-720-5100
Fax: 858-720-5125
ebosman@mofo.com
juliepark@mofo.com

*Counsel for Defendant McKesson Corporation d/b/a McKesson Packaging*

### CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*