UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)         *     16-MDL-2740
PRODUCTS LIABILITY LITIGATION        *
                                     *
                                     *     Section H
                                     *
Relates To All Cases                 *     December 5, 2019
                                     *

*******************************************************************

REPORTER'S OFFICIAL TRANSCRIPT OF THE

**STATUS CONFERENCE**

BEFORE THE HONORABLE MICHAEL NORTH,
UNITED STATES MAGISTRATE JUDGE.

*******************************************************************

**APPEARANCES:**

**For the Plaintiffs:**

David Miceli, Esq.                   Palmer Lambert, Esq.
Larry Centola, Esq.                  Dawn Barrios, Esq.
Chris Coffin, Esq.                   Karen Barth Menzies, Esq.
Daniel Markoff, Esq.                 Brian Abramson, Esq.



**For the Defendants:**

Harley Ratliff, Esq.                 Mara Cusker Gonzalez, Esq.
R. Clifton Merrell, Esq.             John Olinde, Esq.
Torrey Peterson, Esq.                Stephen Nichols, Esq.
Douglas Moore, Esq.                  Brandon D. Cox, Esq.
Jennifer Snyder Heis, Esq.           Peter Rotolo, Esq.
Geoffrey Coan, Esq.                  Adrienne Byard, Esq.
Julie Callsen, Esq.                  Rich Moore, Esq.
Suzanne Marinkovich, Esq.            Beth Toberman, Esq.


**REPORTED BY:**      Mary V. Thompson, RMR, FCRR
                      500 Poydras Street, Room B-275
                      New Orleans, Louisiana  70130
                      (504)589-7783

**OFFICIAL TRANSCRIPT**

<pre>
 1                P R O C E E D I N G S

 2

 3              THE COURT:  Hello, everybody.  Y'all can have a seat.

 4              All right.  So we are just talking about the Sanofi and

 5    PSC issues on the two depositions --

 6              MR. OLINDE:  We were going to put a statement on the

 7    record.

 8              THE COURT:  Right.  And the case ID number.

 9              MR. COFFIN:  Yeah.

10              THE COURT:  Do y'all want to put something on the

11    record as to the issue of the 505(b)(2) --

12              MR. OLINDE:  This has to do with Accord.

13              THE COURT:  Okay.

14              MR. COFFIN:  I'll read the e-mail so that we're not in

15    dispute.

16              Chris Coffin on behalf of the PSC, Your Honor.

17              Mr. Lemmon got caught up and couldn't be here, so he

18    asked me to indicate to the Court that we've reached an agreement

19    with Accord related to the Lambda Global Safety Database and the

20    Lambda witnesses.

21              In light of the fact that no Lambda witnesses appear on

22    Accord's preliminary witness list, we have offered a compromise

23    of not pushing the Lambda issue any further.  However, if

24    something changes and Accord lists a Lambda witness at a later

25    date, the PSC reserves the right to depose that person
</pre>

02:03:17 (line 5)
02:03:36 (line 10)
02:03:44 (line 15)
02:04:01 (line 20)
02:04:18 (line 25)

**OFFICIAL TRANSCRIPT**

1   domestically, and, if necessary, will request accommodations of

2   the trial schedule.

3           That's been agreed to by counsel for Accord.

4           THE COURT:  All right.  Do we need to put anything else

02:04:33   5   on the record as to the other --

6           MS. BARRIOS:  Yes, sir, Your Honor.  Dawn Barrios for

7   the PSC.

8           This regards the letter that Mr. Rick Root of

9   Mr. Bart's office sent you with regard to Cynthia Thibodeaux.

02:04:45   10           THE COURT:  Right.

11           MS. BARRIOS:  We don't think that's ripe for any

12   adjudication, so although you have it, we're going to try to work

13   it out.

14           THE COURT:  I just got it at like 11:30 this morning.

02:04:54   15           All right.  Thank you.

16           MS. BARRIOS:  Thank you.

17           THE COURT:  All right.  Let's talk about these

18   depositions of Dr. Madigan, Dr. Kessler, and Dr. Plunkett.

19           This is what I think, and I'll let you-all address it.

02:05:10   20           I think based on the -- and I've reviewed a good bit of

21   the testimony.  Obviously I don't have the entirety of the

22   deposition transcripts, but I have reviewed testimony from all

23   three of these witnesses.

24           I think, based on the circumstances of the disclosure

02:05:29   25   of the additional work that Dr. Kessler made regarding what

**OFFICIAL TRANSCRIPT**

1   Dr. Kessler had asked Dr. Madigan to do -- and I have reviewed
2   everyone's submissions.  I think that it is appropriate for those
3   two witnesses to be deposed for an additional two hours apiece.
4          Quite frankly, I am not in any position to be able to
02:05:59
5   delve into the PSC's heavily footnoted submission to determine to
6   what extent this additional work may or may not be relevant.  I
7   am -- there is no conceivable way that I can make that
8   determination on this record, and probably on any record, when
9   all that is at stake is the question of whether an additional two
02:06:22
10  hours per witness is allowed.
11         I think when you depose an expert and they tell you for
12  the first time in a deposition, "Yeah, I've asked for some
13  additional work to be done," the interest of justice leads me to
14  believe that asking for an additional two hours to question those
02:06:39
15  two witnesses about that work is certainly appropriate.
16         So I think that as to -- I know there was a request for
17  four hours and two hours.  I'm just going to let you-all depose
18  those two witnesses for an additional two hours.
19         MR. MICELI:  I would like to have the opportunity to
02:06:55
20  make a record, because I think under Rule 26, and in
21  Judge Milazzo's prior rulings -- I would like to have the
22  opportunity to explain to the Court why it is not necessary.  And
23  it's not --
24         THE COURT:  You have had that opportunity.  I've read
02:07:08
25  it.  I've read what you gave me.  And that's -- I mean --

**OFFICIAL TRANSCRIPT**

|   |   |
|---|---|
| 1 | MR. MICELI:  Your Honor -- |
| 2 | THE COURT:  You're not going to convince me.  If you |
| 3 | want to make a record, that's fine, but you're not going to |
| 4 | convince me that two hours of additional testimony is so |
| 5 | burdensome that I'm not going to allow them to have that time |
| 6 | with a witness who announced, in the middle of a deposition, that |
| 7 | he had asked for additional work to be done by another expert. |
| 8 | MR. MICELI:  I understand what you're saying, |
| 9 | Your Honor. |
| 10 | THE COURT:  And he said -- when asked "Are you going to |
| 11 | rely on this," he gave a conditional response. |
| 12 | MR. MICELI:  He -- Your Honor, may I approach the |
| 13 | podium? |
| 14 | THE COURT:  Yes. |
| 15 | MR. MICELI:  Thank you. |
| 16 | THE COURT:  His response was not "I will not rely on |
| 17 | this." |
| 18 | MR. MICELI:  No, Your Honor. |
| 19 | THE COURT:  It was "If challenged on the other |
| 20 | materials, I may."  So that's what I'm looking at. |
| 21 | MR. MICELI:  The issue, Your Honor -- and Judge Milazzo |
| 22 | made very clear to the parties in the first trial, and more |
| 23 | importantly after the first trial, that the experts will have to |
| 24 | stick to the opinions, the bases, and the methodology that is set |
| 25 | out in their report. |

02:07:26
02:07:37
02:07:46
02:07:52
02:08:14

**OFFICIAL TRANSCRIPT**

1          Both experts, Dr. Kessler and Dr. Madigan, set out

2   every opinion, every methodology, and every basis for their

3   opinions that they're going to offer at the next trial.

4          THE COURT:  I get all that.

02:08:30  5          MR. MICELI:  Your Honor, I just plead -- what happens

6   is there is a particular document that Sanofi has brought out

7   with every single witness since last October.  That document is

8   on our experts' materials reviewed list, but our experts make it

9   clear they do not rely upon that and they do not offer an opinion

02:08:56  10  based upon that.

11          What they do is, in a deposition, defense counsel hands

12  them the document and says, "What do you think about this?"

13          He says, "I don't think this is valid.  I do not

14  consider it.  It's not part of my opinion."

02:09:12  15          They say, "Well, are you going to offer an opinion?"

16          He says, "I have no intention of offering an opinion,

17  but, if asked, I will say this:  Because you did this in trial, I

18  anticipated you would do this in my deposition.  And I looked at

19  it, and I asked Dr. Madigan to do one calculation, and this is

02:09:31  20  what we found."

21          And as a result -- they have the opportunity to depose

22  every one of our experts about opinions, bases, and methodology.

23  What they ask about is not the opinion, not the methodology, and

24  not the basis for an opinion, but rather a preview of how my

02:09:49  25  expert will respond to their cross-examination.  What is not

**OFFICIAL TRANSCRIPT**

1   allowed under Rule 26 is the ability to get a preview of how he

2   will respond to cross-examination and then get extra time.

3   Just a week and a half ago we were here, and Your Honor

4   said you don't understand why we have to take seven-hour

02:10:09   5   depositions of experts who essentially give the same opinion.

6   You allowed it with Dr. Kessler because he added a different

7   opinion.

8   Dr. Madigan does not offer any new opinion.  He does

9   not rely upon that document.  It's not a basis.  It's not part of

02:10:26   10   his methodology.

11   Yet under Rule 26 -- they go beyond Rule 26, and as a

12   result we're going to allow them, at our expense, two additional

13   hours with these witnesses.

14   And that's all we wanted to point out with the Court.

02:10:40   15   THE COURT:  I appreciate all that, but, I mean, I've

16   got an expert, for whatever reason, who shows up in a deposition

17   and said, "I got this additional work done."

18   MR. MICELI:  But it's not to offer his opinion.  It's

19   because he anticipated --

02:10:53   20   THE COURT:  Do you want me to read three volumes of his

21   deposition to come to a decision of whether they get two more

22   hours of deposition time?

23   MR. MICELI:  No, Your Honor.

24   THE COURT:  It's going to take me more than two hours

02:11:02   25   to read the depositions.

**OFFICIAL TRANSCRIPT**

```
 1            MR. MICELI:  What I would like you to do is read his
 2   12-page supplemental -- excuse me.  Hold on.
 3            (Attorneys conferring.)
 4            MR. MICELI:  I understand.  That's the next point.
 5            THE COURT:  It is now.
 6            MR. MICELI:  No, that was going to be the next point
 7   anyhow, Your Honor, because I have a real good idea of why they
 8   want to do this, and it's not by happenstance.  There's a reason
 9   for doing everything.
10            THE COURT:  Okay.
11            MR. MICELI:  The -- but it is not a new opinion.  The
12   12-page or 14-page supplemental report of Dr. Kessler does not
13   rely upon the document they showed him, and it does not form a
14   basis for his opinion.
15            THE COURT:  I get that, David, but they get to
16   cross-examine him.
17            MR. MICELI:  Yes, they do.
18            THE COURT:  Just because he issues an opinion and says,
19   "Here's what I rely on," there's a universe of other information
20   out there that they're entitled to cross-examine experts with.
21            MR. MICELI:  Absolutely.
22            THE COURT:  And in this case it's information that he
23   had created.
24            MR. MICELI:  No, it is information he prepared for the
25   cross-examination that was anticipated.
```

02:11:17
02:11:28
02:11:46
02:11:57
02:12:06

**OFFICIAL TRANSCRIPT**

1        THE COURT:  So be it.

2        MR. MICELI:  But, Your Honor, Rule 26 makes clear the

3   information that experts have to put forth and what an expert's

4   deposition is meant to examine.

02:12:18    5        THE COURT:  Rule 26 does not prohibit the opponent from

6   using their own materials to cross-examine an expert in discovery

7   if that's what they choose to do.

8        MR. MICELI:  Absolutely.  We don't -- I have no

9   disagreement with Your Honor on that.

02:12:32   10        THE COURT:  This is not their material.  This is

11   material that was brought into creation by virtue of your

12   expert's request of another expert.  That's a fact, is it not?

13        MR. MICELI:  It is a fact that a single calculation --

14   it includes three multiplications.  Four squares -- one, two,

02:12:52   15   three, four -- it's four multiplications.  That's it.  So I guess

16   30 minutes per equation.

17        THE COURT:  I don't know.  I mean, you-all have been

18   doing this --

19        MR. MICELI:  I understand, Your Honor.  And I don't

02:13:02   20   mean to be sarcastic with the Court, but it is not the basis of

21   an opinion.  And --

22        THE COURT:  So what was the point that you were going

23   to make next about --

24        MR. MICELI:  Yes.

02:13:11   25        THE COURT:  -- you know why they want to do this?

**OFFICIAL TRANSCRIPT**

1          MR. MICELI:  Their expert reports are due Monday, and I

2    suspect, after we have this hearing, they're going to want to

3    have a meet-and-confer to say, "Well, we're not done with your

4    experts, we have to put these off."

02:13:24
5          Well, our *Daubert* motions are due January 7th.  We have

6    to conclude their experts' depositions by December 27th.  I

7    already only have 18 days to do that -- or our team only has

8    18 days to do that.

9          And right now one of my experts is in Korea -- one of

02:13:45
10   these two experts is in Korea for a period of time, and so it's

11   not going to be something that can be done even by Christmas.

12         So when -- if we're going to start allowing additional

13   deposition time because they get a preview of how they will

14   respond to a cross-examination question when it's not their

02:14:06
15   opinion --

16         THE COURT:  That's what discovery is.

17         MR. MICELI:  I understand that, Your Honor.

18         THE COURT:  They're discovering what they're going to

19   say when they ask them a certain question.

02:14:13
20         MR. MICELI:  Absolutely.  And they can discover

21   anything they want to.

22         But what we have to disclose to them -- the reason they

23   want this additional time is because they're saying we didn't

24   disclose this to them, and, therefore, it was unfair.

02:14:25
25         What we have done is we have disclosed every opinion,

**OFFICIAL TRANSCRIPT**

1  the methodology, and every single basis for their opinions.  And

2  what they're saying is they didn't anticipate this

3  cross-examination and provide this to us sooner, so, therefore,

4  we have the opportunity to get more time.  There's just not time

02:14:44  5  built into this --

6        THE COURT:  We're all on the same page about that.

7  That is exactly what they're saying.

8        MR. MICELI:  Right.  And it is not -- we did not

9  withhold anything from a disclosure.  They spent their time with

02:14:54  10  the expert as they saw fit.  If they needed more time, they could

11  have stopped the deposition, just as you have instructed us, and

12  said, how much -- let's adjourn the deposition and see how much

13  additional time you need today to do it --

14        THE COURT:  All right.

02:15:07  15        MR. MICELI:  -- or --

16        THE COURT:  That didn't happen.  I understand your

17  argument.

18        Let me say this:  I'm not going to change my mind about

19  the additional time.  No one, until just a moment ago, has

02:15:17  20  suggested that that additional time will be used to somehow make

21  an argument that the expert disclosure deadlines should be --

22        MR. MICELI:  Let's get confirmation on that today,

23  because I want to make sure I'm not dealing with that on Monday

24  when --

02:15:31  25        THE COURT:  Are we dealing with that?  Is that coming?

**OFFICIAL TRANSCRIPT**

1          MS. BYARD:  No, absolutely not.  What we'll do, if we
2    find out anything new from these depositions, we'll do a little
3    supplement.  We're going to make our disclosure deadline on
4    Monday.

02:15:43
5          MR. MICELI:  You won't hear anything else from me.  I'm
6    fine, Your Honor.

7          THE COURT:  That issue is not an issue.

8          MR. MICELI:  Okay.

9          THE COURT:  Let's move on to Dr. Plunkett.

02:15:50
10          MR. MICELI:  We still have one more with --

11          THE COURT:  I know, but I'm going to talk about the
12    depositions first.

13          I have not seen anything in what Sanofi gave me in the
14    record to lead me to believe that you-all get any more time with
02:16:03
15    Dr. Plunkett.  I got bits and pieces and snippets of answers that
16    may or may not be long-winded.  I don't know if there are even
17    objections in the record that they were nonresponsive, but what
18    I've got is simply not sufficient for me to say that you-all get
19    another bite at the apple with that witness.

02:16:23
20          So as to Dr. Plunkett, I'm not inclined to give you-all
21    any additional time.

22          MS. PETERSON:  Yes, Your Honor.  Torrey Peterson on
23    behalf of Sanofi.

24          We only had five pages so we just tried to highlight a
02:16:36
25    few examples of what Dr. Plunkett did.  She says one thing.  Two

**OFFICIAL TRANSCRIPT**

1 | pages later she says something else.

2 |     THE COURT:  That's grist for the mill when you

3 | cross-examine her at trial.

4 |     MS. PETERSON:  Sure.  Okay.  Yes, Your Honor.

02:16:46

5 |     THE COURT:  And I've read the deposition transcript

6 | excerpts that y'all gave me.  I did not see anything in there

7 | that was egregious, including the episode of showing her the

8 | pictures, and, you know, asking for that testimony.

9 |     I mean, instructing a witness not to answer those

02:17:05

10 | questions is not necessarily the right way to go.  I don't know

11 | if that happened more than once.  I only saw it happen once,

12 | because that's all I got in the exhibits.  But her inability or

13 | unwillingness to be able to diagnose or relate certain types of

14 | conditions or causes based on photographs that she is seeing for

02:17:27

15 | the first time I don't think is unreasonable, so I'm not going to

16 | let you-all have any more time with Dr. Plunkett.

17 |     MS. PETERSON:  Yes, Your Honor.  Can I just ask a

18 | clarifying question?

19 |     THE COURT:  Yes.

02:17:37

20 |     MS. PETERSON:  We weren't asking for more time based on

21 | the photographs.

22 |     THE COURT:  No, I know.

23 |     MS. PETERSON:  That's something that was objected to

24 | and we weren't going to go further on it.  But now that we've had

02:17:45

25 | the opportunity to come and talk to Your Honor, we would like the

**OFFICIAL TRANSCRIPT**

1   opportunity to use those photographs at the continuation of her

2   deposition.  She gives this opinion that there is a difference

3   between something called DIA and PCIA --

4           THE COURT:  You can use whatever you want in her

02:17:57

5   deposition, and her answers are going to be whatever her answers

6   are.  If she can't do something, that's fine, but Mr. Miceli and

7   others are not going to instruct her not to answer those

8   questions.

9           MS. PETERSON:  Yes, Your Honor.  That's what we wanted

02:18:10

10  clarification on.

11          THE COURT:  I can't predict how she will respond, but

12  whatever those responses are, they will be.

13          Now the other piece with Dr. Madigan.

14          I'm not entirely sure what to do about that request.

02:18:28

15  The objection, to the extent that it was an objection in writing,

16  was really not -- it was that Dr. Madigan doesn't produce this

17  information, I guess, as part of the report.  I'm not sure that

18  that means that a request that the doctor obtain the information,

19  when the doctor has said that the doctor can obtain the

02:18:51

20  information, is an improper request.

21          MR. MICELI:  Can I approach the podium?

22          THE COURT:  Yes.

23          MR. MICELI:  Again, Your Honor, Rule 26 says that we

24  have to produce their opinions, their methodology, and their

02:19:03

25  bases.  This has already been litigated one time before

**OFFICIAL TRANSCRIPT**

1  Judge Milazzo.

2          THE COURT:  This very specific issue?

3          MS. PETERSON:  Your Honor, no.

4          THE COURT:  Hold on.  One at a time.

02:19:11  5          MR. MICELI:  Yes, this very issue was part of the

6  discovery last -- at the last bellwether.  It was part of their

7  702 *Daubert* motion to exclude Dr. Madigan.  It was part of their

8  cross-examination at trial.

9          Our obligation is to produce opinions, the bases, and

02:19:31  10  the methodology.  The defendants cannot come to me -- us, our

11  expert, and task my expert with doing more work for their

12  benefit.  They have a biostatistician that --

13          THE COURT:  I agree with you.

14          MR. MICELI:  Okay.  And he does not pull these.  He

02:19:49  15  explained *ad nauseam*, in the first deposition and at trial -- and

16  it was argued before Judge Milazzo in the 702 *Daubert* hearing --

17  about why you don't do it.

18          So when he does a FAERS analysis -- his FAERS review

19  and disproportionality analysis, he does not pull individual case

02:20:08  20  reports or numbers.  It's not important.  In fact, he testified

21  it's antithetical to the process and methodology used.

22          THE COURT:  So just from a discovery procedure

23  standpoint, how do I order an expert to do something -- to

24  retrieve information that has not already been retrieved that he

02:20:29  25  says he won't retrieve and doesn't retrieve and isn't part of his

**OFFICIAL TRANSCRIPT**

1   report?

2        MS. PETERSON:  Your Honor, he said that he can

3   absolutely do it.

4        THE COURT:  I know.  There are a lot of things he can

02:20:35
5   do.

6        MS. PETERSON:  He said multiple times -- he was like,

7   "Yeah, no problem."

8        THE COURT:  He maybe can kick a football through the

9   goalpost.  That doesn't mean you get to ask him to do it.  Just

02:20:43
10  because he can do it doesn't mean I can require him to do it if

11  it's not part of his report and his work.

12        It's part of what you want to see, and it's a resource

13  for you to try to get information, but how am I ordering their

14  expert to be your resource?

02:21:00
15        MS. PETERSON:  Well, Your Honor, here's the issue:

16  Dr. Madigan basically invented this methodology to extract cases

17  from the FDA database.  This is not a methodology that's in any

18  published literature, et cetera.  The way that he did this to

19  capture cases of, quote, permanent alopecia, is to search for

02:21:17
20  cases of alopecia, Taxotere, and permanent or disability damage.

21        THE COURT:  But he didn't pull this information that

22  you want me to order him to pull.

23        MS. PETERSON:  He pulled the 31 cases.  He --

24        THE COURT:  And you're entitled to know that.

02:21:33
25        MS. PETERSON:  We know that there are 31 cases.

**OFFICIAL TRANSCRIPT**

1        What he didn't do is produce anything that identifies

2   the 31 cases, so what Sanofi did do is we went out and we tried

3   to find the exact cases Dr. Madigan did.

4        THE COURT:  And you said --

5        MS. PETERSON:  And --

6        THE COURT:  You said you didn't find the same ones.

7        MS. PETERSON:  You can match them up for -- he produced

8   an appendix that shows the dates of the quarter, and we matched

9   our reports up with his.  And he goes, "Well, I don't know.  This

10  might not have been introduced into the FAERS database."

11       THE COURT:  This is one of the things I'm confused

12  about.  He's testified that he reviewed 31 cases.

13       MR. MICELI:  No, he has not, Your Honor.  He

14  absolutely -- let me let her finish her argument.

15       THE COURT:  No.  I'm asking you a question.

16       MR. MICELI:  Yeah, I understand.

17       THE COURT:  This isn't the Fifth Circuit where you get

18  20 minutes of time.  I'm asking questions.

19       MR. MICELI:  I understand.

20       He did not pull 31 cases.  What he does, he writes a

21  program -- and the FDA has a database called F-A-E-R-S, Federal

22  Adverse Event Report Systems.  FAERS.

23       THE COURT:  Right.

24       MR. MICELI:  It provides this information and allows

25  you to run a number of analytics to do signal detection.

02:21:43 (line 5)
02:21:55 (line 10)
02:22:09 (line 15)
02:22:16 (line 20)
02:22:34 (line 25)

**OFFICIAL TRANSCRIPT**

1    In the FAERS analysis, the disproportionality analysis
2    he does, there are primarily three different ones that he used.
3    It produces numbers on a chart.  That's what he has done.
4    Quarters 1, 2, 3, 4 for a number of years.  From, I think, 2000
02:22:54  5    to 2018.  Every quarter has a number in it, and it's a cumulative
6    number.  So if it's 2 and then 1 more, it's 3 and so on up to 31
7    at some point in time.
8    He does not and he has never gone and said, "I'm going
9    to do a FOIA request to the FDA to get these 31 reports."
02:23:16  10    THE COURT:  But did he look at 31 reports?
11    MR. MICELI:  No, he did not.
12    THE COURT:  Okay.
13    MR. MICELI:  He looked at the product -- essentially a
14    spreadsheet, Your Honor, that has tabs for Taxotere, Taxol,
02:23:27  15    Cyto -- the different drugs, and he runs the analytics and all it
16    spits out is a number.
17    What they want to do is say, "You didn't take the next
18    step."  And this was part of their challenge to his methodology
19    where Judge Milazzo analyzed it and said his methodology passes
02:23:43  20    muster -- her words.
21    He has never pulled the 31 cases.  He does not have the
22    31 cases.  What they're asking us to do is to make him go get
23    those 31.  They have a biostatistician.
24    THE COURT:  Well, you're saying all he's looked at was
02:24:02  25    basically the statistics?

**OFFICIAL TRANSCRIPT**

1          MR. MICELI:  Was the spreadsheets.  He says that he

2   can.  As Your Honor points out, he can do a lot of things --

3   maybe juggle -- but he doesn't have to juggle for them.  And he

4   doesn't have to go and pull 31 reports for them because that's

02:24:14
5   what they want.

6          They have a biostatistician that they've retained.

7   They chose not to call him at trial.  L.J. Wei.  He can go -- we

8   have given them every program and every algorithm that he used to

9   pull this information.  They can go do that.  Maybe they have

02:24:30
10  done that.

11         MS. PETERSON:  Your Honor --

12         THE COURT:  All right.  Let me --

13         MR. PETERSON:  So a couple points of clarification.

14         We are not asking Dr. Madigan to produce the actual

02:24:37
15  MedWatch forms.  All we're asking him to produce is the

16  manufacturing control numbers, the FAERS ID numbers, et cetera,

17  that just allow us to match them up to the report.  We're not

18  asking him to issue a FOIA request.  We're just --

19         THE COURT:  Why are you asking him to do it?  It's

02:24:52
20  their expert.

21         MS. PETERSON:  Well, Your Honor, as you just stated, we

22  did go do it, and when we presented those exact reports by

23  following Dr. Madigan's methodology -- we presented them to

24  Dr. Madigan at his deposition, and he goes, "Oh, I don't know.

02:25:06
25  This report maybe never ended up in the database.  Maybe it

**OFFICIAL TRANSCRIPT**

1   wasn't coded."

2        THE COURT:  Mr. Miceli just said he didn't actually

3   review any of the reports.

4        MS. PETERSON:  But he's using them as the basis for his

02:25:16   5   general causation opinion.

6        THE COURT:  But the reports themselves he says he

7   didn't review.

8        MS. PETERSON:  The actual MedWatch reports, correct.

9        THE COURT:  Isn't that --

02:25:22   10       MR. MICELI:  That is exactly what I said.

11       THE COURT:  And so you pulled 31 MedWatch reports and

12   the showed them to him and asked him, "Are these them?"

13       MS. PETERSON:  Yes.

14       MR. MICELI:  Three.  They showed him three.

02:25:31   15       THE COURT:  Well, some number of them.

16       And he said, "I don't know."  He said:  "They might

17   be."

18       MS. PETERSON:  It's not just that he said --

19       THE COURT:  He didn't look at them.

02:25:38   20       MS. PETERSON:  But he said he doesn't know if these

21   MedWatch reports would have been captured in his statistical

22   analysis.

23       THE COURT:  Because he never looked at any MedWatch

24   reports.

02:25:47   25       MS. PETERSON:  But this is knowable information.  If he

**OFFICIAL TRANSCRIPT**

1  produces just the identifying manufacturing control number --

2         THE COURT:  All right.  I've heard enough.

3         I'm not going to order the plaintiffs' expert to do

4  additional work that he has not already done for Sanofi's

02:26:03  5  benefit.  I'm not going to do it.  So there you have it.

6         MS. PETERSON:  Yes, Your Honor.

7         THE COURT:  Maybe you-all can find somebody else to do

8  it, but it's not going to be him.

9         MS. PETERSON:  Yes, Your Honor.

02:26:14  10        THE COURT:  All right.  Anything else?

11        (No response.)

12        THE COURT:  Do we need to schedule another status

13  conference?  The day before Christmas maybe?

14        MR. MICELI:  What I would say is there are no other

02:26:28  15  topics.  I'm working with Mr. Strongman on an issue that arose in

16  a deposition that I don't want to preview for the Court.  There's

17  no need to.  We may just need a telephone call with you --

18        THE COURT:  That's fine.

19        MR. MICELI:  -- at some point.  I don't think it

02:26:41  20  requires us to be here for anything.

21        THE COURT:  We've been at this long enough.  I know in

22  the earlier days it was better to have something on the calendar.

23  I'm not sure that we need that.

24        I would just -- I would prefer, if we begin to reach a

02:26:56  25  critical mass of issues, that you-all schedule something with

**OFFICIAL TRANSCRIPT**

1    Blanca when it comes up.  And I don't really need to have

2    anything on the calendar right now.

3              MR. MICELI:  We're working -- the issue I was referring

4    to, we are working fine now with Sanofi's counsel so I think

02:27:11   5    we'll be able to resolve that.

6              THE COURT:  Does that work?

7              MS. MENZIES:  And there's an outstanding issue that I'm

8    working on with different counsel for Sanofi that is not here,

9    and we'll probably need to come and see you for that, but it

02:27:21   10   might not be for a little while.

11             THE COURT:  You can come see me.  You can call me.

12   Whatever works.

13             MS. MENZIES:  Thank you.

14             THE COURT:  All right.  Thank y'all.  Have a good

02:27:28   15   holiday.

16                              (Proceedings adjourned.)

17

18                       * * * *

19                       CERTIFICATE

20        I hereby certify this 6th day of December, 2019, that the
     foregoing is, to the best of my ability and understanding, a true
21   and correct transcript of the proceedings in the above-entitled
     matter.

22

23                              /s/ Mary V. Thompson
                         _____
24                            Official Court Reporter

25

**OFFICIAL TRANSCRIPT**