UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

**THIS DOCUMENT RELATES TO:**

**Cynthia Thibodeaux, Case No. 2:16-cv-15859.**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS**

  Plaintiff Cynthia Thibodeaux's claims are prescribed under the one-year statute. Ms. Thibodeaux admits that by January 2010, her hair regrowth had completely stopped, that she was "devastated wondering why," but, nevertheless, she did not file suit until 2016. **Ex. B**, Thibodeaux Dep. Vol. I at 27:5–15; 321:18–25, 323:14–324:5; **Ex. H**, Thibodeaux Dep. Vol. II at 550:25–551:14.[1] Ms. Thibodeaux testified that her allegedly disfiguring, incomplete hair growth—*which she has always attributed to chemotherapy*—has not changed since 2010. **Ex. B** at 276:3–6; 280:20–281:4; **Ex. H** at 394:20–23. Yet Ms. Thibodeaux made no effort to investigate her claims for the next six years. In other words, by January 2010, Ms. Thibodeaux had all of the notice required by Louisiana law for her claim to accrue. Louisiana does not suspend prescription where, as here, Ms. Thibodeaux made no effort to investigate a conspicuous injury, its cause, or any potential claim for at least six years before filing suit. As set forth in Defendants' Memorandum (Rec. Doc. 8779-2) ("Memo"), summary judgment is warranted.

  In her Opposition (Rec. Doc. 8890-1) ("Opp."), Ms. Thibodeaux does not dispute the essential facts set forth in Sanofi's Memo. In fact, Ms. Thibodeaux notably:

- Admits she was aware her hair regrowth had stopped by 2010 (Opp. at 1);

---

[1] "Exhibits" refers to Exhibits from Defendants' Memorandum of Law in Support of their Motion for Summary Judgement Based on the Statute of Limitations (Rec. Doc. 8779-2).

1

- Admits that she always attributed her hair loss to chemotherapy (Opp. at 2);
- Fails to identify any efforts to investigate her injury from January 2010 until 2016; and,
- Cites <u>no</u> Louisiana case holding that prescription is suspended when a plaintiff <u>took no action</u> to timely investigate her injury or potential claims.

Because Ms. Thibodeaux's Opposition does not identify any factual or legal grounds to avoid summary judgment, the Court should grant Sanofi's Motion.

I.   **PLAINTIFF'S COMPLAINT IS FACIALLY UNTIMELY**

Ms. Thibodeaux filed her lawsuit on October 26, 2016, claiming the injury of "[p]ermanent, irreversible and disfiguring alopecia" beginning six months after she completed chemotherapy in June 2009.  Under Louisiana's one-year prescription statute for delictual actions, Ms. Thibodeaux's suit is untimely on its face and subject to summary judgment. La. Civ. Code. Art. 3492; *see also Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345 (5th Cir. 2010) (finding medical product liability claims prescribed).

Ms. Thibodeaux first appears to argue that her claim is not facially untimely because she should not be tied to the "*de facto* six month trigger date for prescription" outlined in paragraph 181 of the Second Amended Master Complaint. Opp. at 4.  However, as this Court previously noted, "[p]resumably, Plaintiffs made an informed decision to define their injury the way they originally did"—manifesting six months after completing chemotherapy. Rec. Doc. 8702 at 5 (Order and Reasons on Plaintiffs' Motion for Leave to File Third Amended Master Long-Form Complaint and Jury Demand).  Indeed, Ms. Thibodeaux defines her injury the same way in her Plaintiff Fact Sheet ("PFS"), **Ex. C**, PFS at § VI.5, and in her testimony, **Ex. B** at 276:3–6; **Ex. H** at 394:20–23.  There is no question that Ms. Thibodeaux's claim is facially untimely, and Ms. Thibodeaux bears the burden of showing that her action is not prescribed. *See, e.g.*, *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1017 (La. 2012) ("if the petition is

prescribed on its face, the burden shifts to the plaintiff to show the action is not prescribed."); *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 256 (La. 2010) (same); *Bartucci v. Jackson*, 246 F. App'x 254, 257 (5th Cir. 2007); *LaShip L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 323 (5th Cir. 2017).

## II. PLAINTIFF FAILED TO PROVE AN EXCEPTION TO THE FACIAL PRESCRIPTION OF HER CLAIMS

In order to save her claims from their facial untimeliness, it is Ms. Thibodeaux's burden to prove an exception to prescription under the doctrine of *contra non valentem*. Ms. Thibodeaux has not demonstrated—as the doctrine demands—that she lacked knowledge sufficient to excite the attention of a <u>reasonable person</u> to inquire into whether she had a cause of action. *See Marin*, 48 So. 3d at 249–50. To the contrary, Ms. Thibodeaux admits that:

1. Ms. Thibodeaux expected her hair would regrow within a few months following chemotherapy based on other people she knew whose hair had returned following chemotherapy. Memo at 3; Opp. at 8.

2. Ms. Thibodeaux experienced some initial hair regrowth following chemotherapy, but her regrowth stalled such that she continued needing to wear wigs. Memo at 4–5, 12; Opp. at 8, 10.

3. From February 2008[2] until present, she experienced injuries including "Permanent/Persistent Hair Loss on Scalp." **Ex. C** at § VI.5.

4. Ms. Thibodeaux has always attributed her hair loss to chemotherapy. **Ex. B** at 280:20–281:4.[3]

5. Ms. Thibodeaux did nothing to investigate her claim from January 2010 until 2016 when she saw an attorney advertisement. Opp. at 10.

---

[2] In her PFS, Ms. Thibodeaux alleges her injuries manifested in February 2008, which is even earlier then the date by which she completed chemotherapy (June 2009). **Ex. C** at § VI.5; Opp. at 1 n.1. For purposes of this motion, Sanofi relies on the end of Ms. Thibodeaux's overall chemotherapy treatment, which is more generous to Ms. Thibodeaux but nevertheless fails to save her claim.

[3] Ms. Thibodeaux asserts that she was "unsure if she even had taken Taxotere" until she reached out to attorneys who investigated on her behalf. Opp. at 10. As explained in Sanofi's Memo, Ms. Thibodeaux read and initialed every page of her consent form prior to beginning chemotherapy treatment, and the consent form identified the drugs that would be administered in each clinical trial group. **Ex. D**, Clinical Trial Consent Form. Each group in the clinical trial received docetaxel.

3

No exception to prescription applies where, as here, a plaintiff makes no effort to investigate a known, unexpected injury. *See, e.g.*, *Bartucci*, 246 F. App'x at 258 n.3 (plaintiff's "failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription."). Still, Ms. Thibodeaux argues that it was "reasonable" for her not to investigate her claim—for more than six years—because (1) she was ignorant of her injuries because she believed her hair loss was temporary; (2) any investigation would have been futile; and (3) Sanofi effectually prevented Ms. Thibodeaux from availing herself of her cause of action. Opp. at 6–12, 13–18; 18–21. None of these arguments prevail under the facts or law.

### A. Belief that an injury is temporary is immaterial under Louisiana law.

Ms. Thibodeaux argues that her injuries were not reasonably known or knowable until she saw the attorney advertisement in 2016 because, until she saw the advertisement, she believed that her hair loss was temporary. Opp. at 6–8. But Ms. Thibodeaux's belief that her hair "would eventually grow back" does not equate to ignorance of her injury and cannot support a claim of *contra non valentem*. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422 n.8 (5th Cir. 2016) ("The Louisiana Supreme Court has determined that [*contra non valentem*] **does not apply where the only contention is that the Defendants failed to inform the Plaintiffs that a condition was permanent**.") (citing *Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996)) (emphasis added). Such information pertains to the extent or duration of an injury, and is immaterial to prescription. *See id.*; *Fontenot*, 674 So. 2d at 964 ("Plaintiffs' contention that Dr. Bertuccini's failure to inform them that Mrs. Fontenot's condition was permanent versus temporary is of no consequence. Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription."). Notice of an

4

allegedly temporary injury is sufficient notice of a permanent injury for prescription.  Ms. Thibodeaux testified that she expected her hair to come back "a few months" after chemotherapy because of "information from [her] doctor and knowing other people who had had chemotherapy and lost their hair." **Ex. B** 60: 3–9; 278:13–25.  When inconsistent with her own expectations and what her doctors told her, it failed to do so, **Ex. B** at 279:1–7, she was on notice of her injury and her prescription period began to run.  This is a legal question squarely answered by the Louisiana Supreme Court, not a fact question subject to Ms. Thibodeaux's perceptions.  *See Smith*, 827 F.3d at 422 n.8.[4]

Ms. Thibodeaux cites two cases as supporting her position that her failure to investigate was reasonable: *Hoerner v. Wesley-Jensen, Inc.*, 684 So. 2d 508 (La. App. 4 Cir. 1996) and *Guillot v. Daimlerchrysler Corp.*, 50 So. 3d 173 (La. App. 4 Cir. 2010).  Both are distinguishable.  As this Court recognized in the *Earnest* decision, the *Hoerner* plaintiff, who suffered an eye infection from use of extended wear contacts, "asked her doctor about the cause of her injury" and was told "it was some kind of 'bug' she caught." *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 16-2740, 2019 WL 2995897, at *3 (E.D. La. July 9, 2009) (discussing *Hoerner*, 684 So. 2d at 514).  This was the distinguishing fact for this Court in denying summary judgment against Ms. Earnest.  Like the *Hoerner* plaintiff, Ms. Earnest both "inquired with her doctor about her injury" and "was led to believe that she had no actionable injury." *Id.*  Ms. Thibodeaux, however, neither

---

[4] Ms. Thibodeaux argues her belief that her hair "would eventually grow back was not unreasonable based on the information available to her and treating physicians." Opp. at 7.  Ms. Thibodeaux refers specifically to her chemotherapy consent form. Opp. at 7–8 (asserting that her reliance on information in the consent form she signed prior to chemotherapy was not unreasonable).  Nothing in the consent form she signed before chemotherapy can be read to have led her to believe that she had no actionable injury.  If anything, Ms. Thibodeaux's consent form only would have confirmed that the lack of regrowth she was allegedly experiencing—whether temporary, long lasting, or permanent—may have been associated with her chemotherapy. *See* Opp. at 8 (highlighting that language in the consent form warned Ms. Thibodeaux that "[i]n some cases, side effects may be very serious, long lasting, or may never go away.").

5

inquired with her doctor about her injury nor relied on information from her investigation.[5]

In *Guillot*, the plaintiffs were injured when a defect in their jeep caused it to spontaneously reverse. *Guillot*, 50 So. 3d at 178–79. Despite failing to file their claim for more than two years, the court found that *contra non valentem* applied because the plaintiffs were mistakenly led to believe that *something else* caused their injuries. *Id.* at 182. Specifically, plaintiffs believed that Mr. Guillot had accidentally put the car in reverse—and "no person who investigated the accident suggested or suspected a vehicle defect." *Id.* Ms. Thibodeaux was never led to believe that something else caused her injury. She has always attributed it to chemotherapy. **Ex. B** at 280:20–281:4. Neither *Hoerner* nor *Guillot* supports applying *contra non valentem*.

### B. Futility is not an exception to Plaintiff's duty to investigate.

Ms. Thibodeaux also argues that even if she had investigated her injury, she would not have "actually *found* any information putting a reasonable person . . . on notice[.]" Opp. at 14. The allegations in Plaintiffs' Master Complaint belie this argument. As outlined in Plaintiffs' Master Complaint, a simple google search in 2010 would have revealed several articles linking Taxotere and alleged permanent hair loss. Rec. Doc. 4407 at ¶¶ 153–162 (alleging that by 2010, articles published in The Globe and Mail and by CBS, as well as several medical journals, were reporting on women claiming permanent hair loss after taking Taxotere—including reporting on a group of women who had formed an online "Taxotears" support group). Regardless, futility is not an exception to plaintiff's duty to investigate a known injury and potential causes. *See, e.g.*, *Bartucci*, 246 F. App'x at 258 n.3 ("We do not know if Bartucci could have uncovered his

---

[5] Ms. Thibodeaux states that she "expressed her disappointment" about her hair to her mother and husband, but both "expressed with confidence that her hair would regrow with time." Opp. at 1–2. Any argument that Ms. Thibodeaux can rely on statements from her mother and her husband (a real estate agent) to toll her prescription period fails. *Contra non valentem* turns on the "reasonableness" of the plaintiff's action or inaction. *In re* Taxotere, 2019 WL 2995897, at *2. "Advice to remain positive" from family members is no substitute for reasonable reliance on information obtained after inquiry from a medical professional.

memories had he attempted to do so in 1984; however, <u>his failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription</u>.") (emphasis added); *Lennie v. Exxon Mobil Corp.*, 251 So. 3d 637, 648 n.6 (La. App. 2018) (rejecting plaintiff's argument that "even if they had asked Mr. Lennie's doctors about the cause of his lung cancer, it would not have mattered," noting that "[t]his *ex post facto* argument is made in apparent recognition that reasonable persons in the Lennies' positions would have made some inquiry into the cause of Mr. Lennie's illness."). Here, Ms. Thibodeaux testified that she has always attributed her hair loss to chemotherapy, and that by January 2010, her hair was not regrowing as she expected. **Ex. B** at 280:20–281:4, 276:3–6; **Ex. H** 394:20–23. Ms. Thibodeaux thus had "enough notice to call for an inquiry several years before she did." *In re* Taxotere, 2019 WL 2995897, at *3.

      Ms. Thibodeaux cites two cases in support of her argument, both which are distinguishable. Opp. at 15–16. First, Ms. Thibodeaux relies on *Wells v. Zadeck*, which is a mineral rights case and thus largely inapplicable here. The *Wells* plaintiff filed suit against an energy company for failure to pay proceeds from ongoing drilling production. 89 So.3d 1145, 1146 (La. 2012). Despite finding that the plaintiff's claim was untimely on its face, the Louisiana Supreme Court found that *contra non valentem* applied because the undisputed facts in the record established that the plaintiff "<u>had no knowledge</u>" that drilling production was ongoing on his property. *Id.* at 1151 (emphasis added). Taking into consideration that Louisiana jurisprudence does not "require[e] the owner of a mineral servitude to continuously check the property records" to determine if new wells "are producing from the" owner's property, the Louisiana Supreme Court found that plaintiff's inaction was reasonable and *contra non valentem* applied. *Id.* at 1154. Here, unlike the plaintiff in *Wells*, Ms. Thibodeaux's injury was conspicuous. The undisputed facts establish that six months after chemotherapy Ms. Thibodeaux had "actual or constructive knowledge of a causal relationship

7

between the object or product and the injury." *In re* Taxotere, 2019 WL 2995897, at *3. Her inaction was unreasonable.

Ms. Thibodeaux also cites *In re Medical Review Panel of Gerald Lindquist*, 274 So. 3d 750 (La. App. 5 Cir. 2019). In *Lindquist*, the plaintiff brought a medical malpractice action after doctors left a metal artifact in his back during surgery. *Lindquist*, 274 So. 3d at 752–53. Despite undergoing additional MRIs and X-rays, which revealed the artifact to his physicians, and despite visiting his physicians complaining of ongoing pain and weakness, the physicians never informed the plaintiff of the artifact in his back until four years after surgery. *Id.* at 753. In holding that *contra non valentem* applied, the Louisiana Court of Appeals determined that the plaintiff was "unaware that a metal object had been left in his back" and it "defied[d] common sense" to suggest that he should have been aware and sought out his medical records to confirm as much. *Id.* at 761–62. Again, however, the focus of the Louisiana Court's analysis was "reasonableness of [the] plaintiff's action or inaction." *Id.* Due to the nature of the injury (a foreign object left after surgery) the *Lindquist* plaintiff could not have known of his injury until his physicians disclosed their mistake. His inaction was reasonable. Ms. Thibodeaux, on the other hand, was on notice of her injury no later than January 2010 when her hair stopped regrowing as expected. **Ex. B** at 276:3–6, 280:20–281:4; **Ex. H** 394:20–23; Opp. at 7. Ms. Thibodeaux's failure to investigate was thus unreasonable.

Ms. Thibodeaux also argues that *Lindquist* provides "guidance as to the application of *contra non valentem* in circumstances where a defendant has a duty to disclose information but keeps silent." Opp. at 17. But the *Lindquist* decision hinges on the duty between a patient and her physician. Ms. Thibodeaux cites no authority for the position that "fraud by silence" extends outside the patient/physician relationship such that this category of *contra non valentem* saves her claims against Sanofi. At its essence, this argument is nothing more than a futility argument

8

repackaged. Ms. Thibodeaux never inquired of her doctors about her injury, and she was never "lulled into a course of inaction" because of Sanofi's alleged failure to warn her physicians. *See Lindquist*, 274 So. 3d at 759.

### C. Sanofi did not "prevent" Plaintiff from availing herself of her cause of action.

Finally, Ms. Thibodeaux asserts that *contra non valentem* applies because Sanofi effectually prevented her from availing herself of her cause of action. Opp. at 18. Specifically, Ms. Thibodeaux contends that Sanofi "elected, on multiple occasions, not to inform the medical community and patients of the risk of permanent hair loss with Taxotere." Opp. at 18. As examples of this alleged withholding, Ms. Thibodeaux includes various misconstrued Sanofi documents and employee deposition testimony. Opp. at 18–20.[6] Ms. Thibodeaux's final argument fails for two reasons.

First, Ms. Thibodeaux's argument that "Sanofi prevented her from availing herself of her cause of action" by failing to "inform the medical community" about the alleged risk of permanent hair loss with Taxotere is, again, just a reassertion of her futility argument. Ms. Thibodeaux argues that she could not have realized the connection between her hair loss and her injury because Sanofi was allegedly withholding information from the medical community. Yet Ms. Thibodeaux points to nothing in the record suggesting that she ever investigated her injury with her medical providers or in the medical community generally. *In re* Taxotere, 2019 WL 2995897, at *3.

Second, Ms. Thibodeaux <u>cites no case law</u> in support of her argument that Sanofi's alleged "withholding" of information prevented her from availing herself of her cause of action. *See* Opp.

---

[6] It is worth noting that Plaintiffs previously tried to add each of these examples as allegations in the Master Complaint in Plaintiffs' recent Motion to Amend, which the Court denied. Rec. Doc. 8702. And, some of Plaintiff's examples were excluded from the first Bellwether trial by the Court's *in limine* orders. *See* Rec. Doc. 8201 at 5–6 (Order and Reasons precluding evidence or argument regarding foreign labeling and regulatory actions).

9

at 18–21. Indeed, this category of *contra non valentem* is applied where the defendant took some *affirmative act* against the plaintiff *specifically*. *See Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div. of Prob. & Parole*, 187 So. 3d 395, 398 (La. 11/20/15) ("In essence, this category applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies."); *Nathan v. Carter*, 372 So. 2d 560, 562 (La. 1979) (applying this category where the defendant threatened the plaintiff with termination if she tried to file suit); *F.D.I.C. v. Caplan*, 874 F. Supp. 741, 747 (W.D. La. 1995) (applying this exception where the defendant repeatedly assured the plaintiff that the relevant issues would be cured). Ms. Thibodeaux cites no support for her position that Sanofi's alleged withholding of information from the public generally effectually prevented *her* from bringing her lawsuit. Ms. Thibodeaux never inquired about her hair loss with any of her physicians, never relied on their reassurances, and never was led to believe that she had no actionable injury. **Ex. B** at 279:8–19; 321:18–322:6; **Ex. H** at 406:14–22; 418:18–21; **Ex. C** at § VI.8; **Ex. J**, Larned Dep. 103:1–8; 121:22–122:10; **Ex. I**, Danna Dep. 37:9–21; 45:1–4. *In re* Taxotere, 2019 WL 2995897, at *4. Ms. Thibodeaux's inaction was unreasonable.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion.

Respectfully submitted,

/s/ Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*