UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                        Civil Action No. 16-MD-2740
                        Section "H"(5)
                        New Orleans, Louisiana
                        January 10, 2020

THIS DOCUMENT RELATES TO ALL CASES
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF CALL DOCKET CONFERENCE
HEARD BEFORE THE HONORABLE MICHAEL B. NORTH
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

FOR THE PLAINTIFFS:

                *DAWN BARRIOS*
                BARRIOS KINGSDORF & CASTEIX
                701 POYDRAS STREET
                SUITE 3650
                NEW ORLEANS, LA 70139

                *MATTHEW PALMER LAMBERT*
                GAINSBURGH BENJAMIN DAVID MEUNIER
                & WARSHAUER
                1100 POYDRAS STREET
                SUITE 2800
                NEW ORLEANS, LA 70163

                *CHRISTOPHER COFFIN*
                PENDLEY BAUDIN & COFFIN
                1515 POYDRAS STREET
                NEW ORLEANS, LA 70112

                *KAREN BARTH MENZIES*
                GIBBS LAW GROUP
                400 CONTINENTAL BOULEVARD
                EL SUGUNDO, CA 90245

APPEARANCES CONTINUED

FOR THE PLAINTIFFS:

                    *KYLE BACHUS*
                    BACHUS & SCHANKER
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202

FOR SANOFI S.A.:

                    *HARLEY V. RATLIFF*
                    *JEREMIAH S. WICKLER*
                    SHOOK HARDY & BACON
                    2555 GRAND BOULEVARD
                    KANSAS CITY, MS 64108

PARTICIPATING VIA PHONE:

                    Andrew Geiger
                    Edward P. Bertram
                    Markita Hawkins
                    Celine Cutter
                    Trevor Rockstad
                    Jason Long
                    Russ Abney
                    Amy Zeman
                    David Friend Hissey
                    Justin E. Dunlap
                    Alexandra Robertson
                    Margarita Michaels
                    Alyssa White
                    Will Mapes
                    Sonia Lopez
                    Brian J. Leinbach
                    Pete Albanis
                    Mark Niemeyer
                    Austin Whitten Pittman
                    Leslie LaMacchia
                    Ben Black
                    Ryan Browne
                    Dana Gray
                    Julie Reynolds
                    John Foley
                    Kevin Jaklevic
                    Peter Goss
                    Clint Casperson
                    Scott Verhine
                    Sam Wendt

```
                         Cara Wall
                         David McCollum
                         Evan Fontenot
                         Lauren Stevens
                         Beth Toberman
                         Brenda Sweet
                         Kathleen Kelly
                         Mike Suffern


Official Court Reporter:     Nichelle N. Drake, RPR, CRR
                             500 Poydras Street, B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7775

    Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

1                    **P R O C E E D I N G S**

2                    (Call to order of the court.)

3          THE COURT:  I don't think I need these binders, but I

4    have them.

5          All right.  So the only thing we need to talk about

6    are the call docket issues this morning, right?

7          MR. RATLIFF:  Correct, Your Honor.

8          MR. COFFIN:  Correct, Your Honor.

9          THE COURT:  So I got a letter from I think it was

10   from Harley or it was from Sanofi's counsel that sort of laid

11   out and explained some of the PSC's or at least Sanofi's view

12   of the PSC's objections to the manner in which some of these

13   photographs and other information is being produced.  Did I

14   miss it?  Did I get a similar sort of explication from the

15   PSC?  Because what I did find rooting through one of these

16   binders was sort of a page and a half memo describing some

17   issues that they have generally with retrieving ESI.  But I

18   had to kind of dig through the binder to even find that.

19   That is the only sort of statement from the PSC that I found

20   that is directed Sanofi is making about the PSC objecting to

21   producing this information?

22         MR. LAMBERT:  Good morning, Your Honor.  Palmer

23   Lambert co-liaison counsel for the plaintiffs.

24         Your Honor was copied on a letter on Ms. Barrios'

25   letterhead.  I'm not sure if that's the right --

1          THE COURT:  To Judge Milazzo?

2          MR. LAMBERT:  To Judge Milazzo.  Yes.

3          THE COURT:  Okay.

4          MR. LAMBERT:  When we submitted our -- so under PTO

5     85, we're required to compile and submit to Your Honor all of

6     the half page statements in response to the Sanofi complaints

7     about ESI discovery, and when we did that, we sent Your Honor

8     a little blurb that referred to this particular letter.

9          THE COURT:  Okay.  I did see this.  Let me look at it

10    again.

11         Have you all talked to her recently about this issue?

12         MR. LAMBERT:  We -- yesterday, Your Honor, we had

13    lead liaison conference in which Her Honor stated that you

14    had discussed together this issue.

15         THE COURT:  Yes.

16         MR. LAMBERT:  And that Your Honor would be addressing

17    it.  And she would --

18         THE COURT:  Right.  We talked about it very

19    generally.  We didn't talk about the specifics of how I might

20    address it.

21         Let me say this:  I'm not making any changes to the

22    protocols or the pretrial orders.  We've -- we put these

23    protocols together.  We have revisited them on multiple

24    occasions, and I am not going to change the manner in which

25    the plaintiffs are required to gather this information and

1    produce it.  Having said that, obviously, we're dealing with

2    thousands and thousands of people, each of whom are going to

3    have photographs in various formats.  I need the parties to

4    understand, particularly Sanofi to understand, that they're

5    going to presented with photographs in particular that are

6    either actual photographs where there is not going to be any

7    metadata or they're going to be in a format where the

8    metadata is lost or scrambled or what have you.  I'm not

9    going to require an individual plaintiff to do something

10   that's impossible or, you know, out of proportion to the

11   needs of the case.

12        So I just need you all to work together in a

13   reasonable fashion to address, you know, plaintiff by

14   plaintiff deficiencies that you all find in these

15   productions.

16        I read -- I read this sort of memo from Kyle as to

17   his plaintiffs, including I guess a statement from one of the

18   experts that describe the expense and difficulty of

19   retrieving ESI on these photographs.  My view is that

20   generally speaking that is not difficult information.  It

21   travels with the file and I can take a picture of you all

22   right now and e-mail it to each one of you and you could

23   retrieve the ESI from that picture without even trying.  In

24   situations where for whatever reason, particularly with

25   photographs, digital photographs, photographs saved in the

1   digital format that predate the litigation, you all are just

2   going to have to work through where that information is

3   missing.  Clearly, and generally speaking, when an individual

4   plaintiff has these photographs going back years and have no

5   idea or reason to believe that they would be participating in

6   litigation, it shouldn't come to any surprise that some of

7   that information is going to be missing or not retrievable.

8   And you all do not need to engage third-party vendors to

9   spend a ton of money to retrieve that information.  It's not

10  necessary.

11          So for the time being, I'm just going to give you all

12  that guidance.  Everyone needs to -- needs to understand that

13  there are thousands upon thousands of plaintiffs in this

14  case.  I think that their lawyers are making -- most of the

15  lawyers are making a good faith effort to try to comply with

16  the lawyers that require production of this information.

17  Some of them don't do it until their clients show up on a

18  spread sheet, which I'll discuss in a minute.  But we've done

19  this three times and every time -- by the time we come into

20  court, there's almost nothing to talk about anymore because

21  the information is either being provided or there are

22  assurances it will be provided.  You all need to continue to

23  work within those parameters.

24          In 2020, the vast majority of these plaintiffs are

25  going to have digital photographs that have the metadata

1  associated with those photographs readily available.  If

2  they're produced the right way, there shouldn't be any

3  issues.  It's, you know, when plaintiffs are printing off

4  photographs and producing them in PDFs, that's not acceptable

5  unless it's just in a -- unless it's an actual photograph,

6  like a good old school photograph on paper that came out of a

7  dark room, in which case, you're going to be stuck with what

8  you got and the plaintiffs are going to have to affirm when

9  to the best of their knowledge the photo was taken, and there

10  will probably be instances because it's already been brought

11  to my attention that Sanofi or the other defendants believes

12  that that date is wrong and we will cross that bridge

13  individually when we come to it and you all can try to work

14  through why you believe a date that's been given for a

15  particular photograph is not correct.

16       I don't want to get bogged down in having motion

17  practice on three plaintiffs out of however many we have now.

18  How many plaintiffs do we have?  10,000?  13,000?

19       MR. COFFIN:  Over 12,000.

20       THE COURT:  12,000.  I don't want to have motion days

21  where I've got to decide whether plaintiff 9,150 gave the

22  wrong dates on a photograph.  So there will be a time for you

23  all to, I guess, traverse those claims, but you just got to

24  handle those as they come.

25       This is all to say that I'm not changing any of the

1    rules, but I do recognize that you will reach a point with

2    some of these plaintiffs and some of these photographs where

3    it becomes disproportionate to the needs of the case to

4    insist on retrieving information that is either lost or

5    garbled or jumbled or confused or what have you.  So for the

6    time being, I'm not going to make any changes, and I'm just

7    going to require you all to produce this information as been

8    required now for months, if not longer.  All right?

9         So generally speaking, before we talk about what to

10   do about any current deficiencies, those are my thoughts on

11   the competing positions on how burdensome this exercise is.

12   All right?  Does anybody want to address that?

13        MR. RATLIFF:  Your Honor may I address that very

14   briefly?

15        THE COURT:  Yes.

16        MR. RATLIFF:  Your Honor, we see this process largely

17   as a success, you know.  We had 700 plaintiffs on the list in

18   November.  We now have I think 250.  So roughly 500 have

19   cured during that time period.  We've received more than

20   2,000 photographs with metadata.  My colleague, Mr. Wickler

21   and his team have conducted probably hundreds of meet and

22   confers, largely cordial, cooperative.  We hear back from

23   plaintiffs' counsel.  They say okay we will -- our client

24   e-mailed this picture, our client texted us this picture.

25        And to your point about the fact that there will be

1   photographs without metadata.  We are cognizant of that.  And

2   I will you to provide you a little bit of -- maybe more

3   visibility than I'd like to into our process, we do have a

4   small team of people who are dedicated just to this.  They

5   have been on this litigation more or less since day one.  And

6   they go through the photographs and they make their best

7   educated guess of which ones -- like this is a photo that's

8   clearly as you said an old school photo, that doesn't go on

9   the list.  We take our best guess, but if we see a photo, for

10  example, like this, of a woman who's photo produced taking it

11  with her cell phone, that's something that we say that

12  clearly that exists digitally.

13          THE COURT:  I would agree that that metadata is

14  probably easily retrievable.

15          MR. RATLIFF:  And if we hear back from them and they

16  say we've done a search, here's the certification, we can't

17  locate this metadata, well, there's nothing more than we can

18  do.  We just feel like we've gone through a good faith basis

19  and by in large, for the vast majority of the individual

20  plaintiffs and the plaintiffs in this MDL, you know,

21  deadlines produce result, people get put on lists, activity

22  occurs.  And so, you know, really, it's just a small corpus

23  of firms that have a large majority of cases where this

24  becomes more of an issue because they have more plaintiffs to

25  deal with.  So we appreciate your guidance and

1    recommendation.  We will continue to work on it, but I just

2    want you to know, Your Honor, that we are not making just a

3    scatter shot.  We see all photographs.  Give us all the

4    metadata because we know that's just not going to be the

5    case.

6            THE COURT:  I know Kyle wanted to say something.

7            MR. BACHUS:  Good morning, Your Honor.

8            THE COURT:  Good morning.  I highlighted some of what

9    you told me in your letter because I agree with it.

10           MR. BACHUS:  Can I approach?

11           THE COURT:  Sure.

12           MR. BACHUS:  I wish that we held the same belief as

13   Mr. Ratliff about the process.  I disagree -- I mean, what

14   really happened here, Your Honor, is that more than 700

15   plaintiffs were put on a list represented by more than five

16   dozen law firms, and very little effort was made by Sanofi

17   before putting them on a list to in any way try to figure out

18   what was actually missing or needed.  I give you by way of

19   example, this little packet and this is -- I'm not going to

20   do this with dozens, but I just brought a couple of examples.

21   This first example that you see is not only a photograph of a

22   photograph, but it's a -- somebody went to a wedding.  It

23   says thank you for sharing our special day.  It has the date

24   on it.  This is a plaintiff that was put on the list.  And

25   the problem is --

1          THE COURT:  Was she put on the list because of this

2   picture --

3          MR. BACHUS:  Yes.

4          THE COURT:  -- or because of other pictures?

5          MR. BACHUS:  Because this document -- this document

6   was identified as one that was missing metadata.  And one of

7   the other problems, Your Honor, is that there are -- and you

8   bring up a good point.  There might be a plaintiff that has

9   produced ten photographs, all of which meet the criteria of

10  before or after, and there's one -- and there's one

11  photograph that misses metadata.  And the problem is not just

12  putting them on the list, it's once they're on the list, you

13  have all of these plaintiffs' counsel on the telephone right

14  now, why are they on the phone right now?  Because they've

15  all been noted that there's deficiencies in their cases that

16  are going to be heard by the court, that the end game of this

17  -- these are not bellwether -- for the record and I know you

18  know this, but just for the record, these are not bellwether

19  cases.  They're not in any trial pool.  They're -- they are

20  people that are going to be subject at some point to a

21  remand, but the end game here is to try to dismiss these

22  cases or find these women in some way.  That's the end game.

23  Whether that happens in this courtroom, I know that may not

24  be the end game in this courtroom, but the end game in this

25  process is to try to accomplish that.  And so that is very

1    worrisome.

2         THE COURT:  The defendants are going to want to

3    eliminate plaintiffs who don't belong in the litigation.

4    That is not a surprise to anyone.  But to suggest that

5    there's something insidious about their conducting simple

6    discovery, I'm not buying that.  Okay?

7         Part of the reason this MDL exists is to coordinate

8    discovery.  That's what this is.  This is an effort to

9    coordinate discovery and to suggest after one bellwether

10   trial, that these plaintiffs are all going to be remanded --

11   they should -- they should do their discovery later, I'm not

12   buying that.  We've got -- we spent hours and hours and hours

13   and days and weeks of time to put together a framework for

14   the parties to conduct this discovery in the MDL, and that is

15   what's going to happen.

16        Now, I'm going to say this -- I was going to say next

17   anyway because it may be germane to what you're arguing.  We

18   have a procedure where these folks are put on a list.  Then I

19   get the list, and I get these binders full of spread sheets.

20   And then you all start to talk.  And then the plaintiffs'

21   lawyers all around the country start to take action, and then

22   I get another list, and then I get another list, and then

23   yesterday I got another list.  So I'm getting these documents

24   and spread sheets that are worthless to me well in advance of

25   this call docket.  What am I supposed to do with them?

1        When a judge gets something filed or delivered to

2   their chambers, generally, the judge takes the time to set

3   aside and read it and try to decide what it is.  I'm not

4   doing that anymore because every time I go -- I try to decide

5   what it is you've given me it changes.  So that part of the

6   process is not working.

7        Now, what Harley said a minute ago, you all agree

8   with I know, because I heard it from both sides from the

9   beginning of this litigation.  If you don't have a deadline,

10  nothing happens.  If you don't have a hearing scheduled or a

11  status conference scheduled, nothing happens.  If somebody's

12  name is on a list, nothing happens.  I get that.  It's human

13  nature.  So I'm not saying that this process needs to be

14  completely revisited, but their needs to be a step inserted

15  into the process before you all start hitting me with an

16  avalanche of pages, upon pages of spread sheets to induce the

17  individual plaintiffs to start responding to their discovery

18  obligations.

19       So the way this is going to work is you all -- I want

20  Sanofi and the defendants, the other defendants, to the

21  extent that they're participating in this exercise, to

22  identify, to timely identify the shortcomings that they

23  perceive in the individual plaintiff's ESI, and then you all

24  put them on a list, give them to the PSC, give them to the

25  individual lawyers, and then have a meaningful discussion

1    about what's going on before you send me anything.  I don't

2    need the world of deficiencies that we know is going to be

3    narrowed by the time you get here.  It's a waste of your

4    time.  It's a waste of your money.  And I got binders in my

5    office that I got to recycle like you don't believe, that I

6    don't even look at, because I know that ten percent of what's

7    in that binder is what's really going to be at issue one day.

8    Okay?

9            Yes.

10           MR. WICKLER:  Just to provide a little bit more

11   optics into what occurs, Your Honor, and just using this one

12   as an example, we sent out this notice on November 15th and

13   then we immediately -- I mean, I think maybe within a few

14   days reached out to all the plaintiffs' counsel who are on

15   that list.  So Sanofi reached out to all of them and asked

16   them if they would like to have a meet and confer, telephonic

17   meet and confer.  We did have telephonic meet and confers

18   with most of the counsel on the list, the ones who responded.

19   Those who didn't, we tried to follow up and ask them if they

20   wanted to meet and confer, had any questions.  And then the

21   cure deadline under PTO 85 for this list was December 16,

22   30 days after.  So it wasn't until after the cure deadline

23   like, okay, pencils should be down on their end, we will send

24   Your Honor with what the different -- current outstanding

25   deficiencies are.  But then deficiencies get cured between

1    December 16th or December 19th even and today.  And so we

2    then provide Your Honor with an updated --

3         THE COURT:  What I want in advance of this docket is

4    three, four, five days before y'all show up, that's what I

5    want.  I want to know what it is we're going to be talking

6    about.  You can send me -- the cure after the cure deadline,

7    you can send me a letter that says X number of plaintiffs

8    have failed to do this.  We have informed every one of their

9    attorneys of the details.  I just don't need all of this.

10   And you all don't need to spend the time and money to put it

11   together to give it to me because it just sits there and

12   gathers dust.

13        MR. WICKLER:  Yeah, we're wasting trees.  You're

14   right.

15        THE COURT:  You're wasting trees.  You're wasting

16   your client's money.  You're wasting materials.  I mean --

17   and I don't need that stuff because I'm not looking at it.

18   I've learned that there's no point in me looking at it

19   because it's all -- half of it, more than half of it is going

20   to disappear by the time y'all get here.

21        So what I need is a statement from you all as to the

22   scope of the problem, how many plaintiffs we're talking

23   about, how many have cured up until the deadline, and then as

24   we get closer to the hearing, you can tell me -- give me

25   exactly what it is that we're talking about.  Okay?

1          MR. WICKLER:  Understood Your Honor.

2          MR. BACHUS:  So I hear you loud and clear.  I want

3     you to know that.  I hear what you're saying.  But for

4     purposes of making a record, I think one of our concerns is

5     that -- the original list, the first starting list is

6     completely, of course, at the subjective determination of

7     Sanofi.  There are no repercussions for them putting hundreds

8     of cases on lists that really -- we're not talking about

9     curing.  We're talking about removing them from a list after

10    somebody has gone back and done all the work that they caused

11    to occur --

12         THE COURT:  What --

13         MR. BACHUS:  Why don't they create the list?

14         THE COURT:  If they don't belong on the list, what

15    work is being done that they caused to occur?

16         MR. BACHUS:  First, you have to go and pull the case.

17    Then we have to look through all of the photographs to see

18    what photographs they're even talking about.  Then you got to

19    examine the photographs, potentially call and speak to the

20    plaintiff and do that hundreds of times.  Then get on the

21    phone and confer about whether something should be on the

22    list that they -- I mean, should that be on the list?  No.

23    You go through all the driver's licenses.  They want metadata

24    from somebody who took a photograph from their driver's

25    license.  These are things that ought to be some either

1   potential repercussions, right?  If we can come to you

2   perhaps and say, let's talk about this 700 that's been

3   success.  Maybe they removed 250 of those because they

4   shouldn't have been there in the first place.

5        THE COURT:  Well, maybe they did but this is the

6   first time anybody has raised that.

7        MR. BACHUS:  Bringing that to your attention.  Right.

8   I hear that we're talking about -- about considerations for

9   use of a process that you put in place.

10        THE COURT:  And I think that I made clear before

11   either one of you all stood up what my expectations are.

12        MR. BACHUS:  Yes, sir.

13        THE COURT:  Okay?  You don't get metadata from a

14   picture of a picture.  I'm not going to get down in the weeds

15   as to whether you all agree with the PSC's characterization

16   of why these individual pictures are on a list.  I've already

17   told y'all what I think.  We need to be rational about our

18   expectations as to what we're going to receive from these

19   individual plaintiffs.  All right?

20        MR. RATLIFF:  Understood, Your Honor.

21        THE COURT:  If that doesn't work --

22        MR. BACHUS:  We'll come see you.

23        THE COURT:  -- then you'll come see you and you'll

24   bring it to my attention.  And you'll put in front of me a

25   demand for metadata for a picture of a driver's license and

1    my head will explode.  Okay?  But that hasn't happened yet

2    and I hopefully it won't.  And if you need more time, which

3    is one of the things you asked -- you asked for, then all you

4    have to do is ask me for it.  Sure.  These are non-bellwether

5    plaintiffs, and some of the lawyers have lots and lots of

6    them.  And if -- to credit your position that some of your

7    plaintiffs are on the list that they shouldn't be and it's

8    time consuming, I understand that and I'm not going to jam

9    anybody on arbitrary deadlines if you tell me you need more

10   time, ask for it and you will get it.  Ask Sanofi for it

11   first and they will give it you because I'm suggesting that

12   that's what needs to happen.

13           MR. RATLIFF:  And we have, Your Honor.

14           MR. BACHUS:  Well, I like your idea very much that

15   before -- kind of a preview of what this would look like

16   before these are put on a list and given a deadline to work

17   through together, because there is -- there's -- I will

18   represent to you, I believe there are many, many of these

19   photographs that were not deficient at all were placed on

20   there and I think by previewing that and having the time --

21   an informal deficiency discussion --

22           THE COURT:  I think --

23           MR. BACHUS:  -- before a formal deficiency discussion

24   makes a lot of sentence.

25           THE COURT:  I think that makes a great deal of sense

1    and I'm going to ask you all to do that.

2         MR. RATLIFF:  That's fine, Your Honor.  We were just

3    operating under the process that --

4         THE COURT:  I know.  Let's do this.  Before we

5    trigger the process --

6         MR. BACHUS:  I'm going to sit down.

7         THE COURT:  -- I'm not going to change the process,

8    but I'm going to tell you all, before you issue something to

9    the plaintiffs that trigger the deadlines and the actual

10   process, have a -- have an informal exchange of the

11   information and give them some time and give you time to talk

12   about it so that the clock is not ticking on these lawyers

13   where they feel like they got to drop everything to try to

14   deal with hundreds of plaintiffs.

15        MR. RATLIFF:  Your Honor, we are perfectly fine with

16   that.  But this is not -- the implication that we're putting

17   people on lists for malicious reasons or without --

18        THE COURT:  I doubt that that's true.  There is some

19   hyperbole in the advocacy on both sides, and that goes in one

20   ear and out the other as far as I'm concerned.  I only care

21   about getting this done in an as efficient and inexpensive

22   manner as possible.

23        MR. RATLIFF:  Understood, Your Honor.  And

24   Mr. Wickler and I will talk about it afterwards and I will

25   set up a process to accomplish the goals that you want.

1        THE COURT:  Very good.  Now, what am I doing with

2   individual plaintiffs this go around?  I don't even know who

3   is left.  I can't keep track of what's going on in terms of

4   what deficiencies are left and what the suggestion is to

5   address them.

6        MR. RATLIFF:  I think, Your Honor, we would like for

7   the people who remain on that list, unless they want to have

8   individual argument on each one of them, say 30 days to cure

9   and we'll be back.

10        THE COURT:  That was my inclination.

11        MS. MENZIES:  The one concern, Your Honor -- this is

12   Karen Menzies for the plaintiffs -- I can say for my

13   plaintiffs that are left they -- we've given all the

14   metadata, everything that we have for the plaintiffs.  So

15   there's nothing more to give.  We've gone back and forth with

16   every individual plaintiff with counsel and they just said we

17   don't -- it doesn't matter.  We have to get the metadata and

18   we have given you the metadata that the plaintiff has, so for

19   us to --

20        THE COURT:  I'm going to do this -- this is how I'm

21   going to do it.  Because you're telling me as to your

22   plaintiffs you've done everything they can --

23        MS. MENZIES:  Sure.

24        THE COURT:  -- that probably does not apply across

25   the board, to the folks who are left.  And so what I'm

1    inclined to do is just -- is to say this:  In the next

2    30 days, the plaintiffs who remain on the list, understanding

3    that the list is the creation of arbitrary decisions that you

4    all believe are arbitrary or unilateral decision by Sanofi,

5    the list is the list.  And to the extent that there are

6    plaintiffs who remain on the list, who have not yet complied,

7    they are given 30 additional days to comply.  At the

8    expiration of that 30 days, to the extent that Sanofi

9    believes that there are plaintiffs on the list that still

10   belong on the list for whatever reason, you can bring them

11   specifically to my attention, with a short explanation of why

12   and then -- I mean, like a paragraph or less and counsel who

13   represent those plaintiffs, can give me -- and I'll think of

14   a timing and a frame work for all of this to happen.  But it

15   will be in advance of any other call docket that we do and

16   that the purpose for whatever next call docket, the primary

17   purpose will be for me to address for the first time, the

18   remaining people on a list that either refuse to comply or

19   say they have complied and there's nothing further for them

20   to do.  And I am going to determine at that point how I'm

21   going to deal with these issues.  I don't know yet.  I don't

22   know yet what sanction or remedy there may be for a

23   recalcitrant plaintiff because nobody has suggested to me

24   with support in the law what that should be.  And I'm just

25   going to call balls and strikes on the individuals that I

1   think have -- are put in front of me and say this is the best

2   we can do.  And I'm going to -- I will just handle it as it

3   comes up.

4        MR. RATLIFF:  Your Honor, with regard to that point

5   and I know this will need to be vetted by the PSC, but

6   perhaps for those remaining individuals, if you just want one

7   paragraph, we submit that to Ms. Barrios or Mr. Lambert with

8   our one paragraph.  We give them 7 days, they have the

9   counsel put in their one paragraph --

10       THE COURT:  They're going to have more than seven

11  days.

12       MR. RATLIFF:  14 -- whatever the time period may be

13  and that way you get one submission from the parties,

14  plaintiff's position, defendant's position.

15       THE COURT:  I'll probably -- I'm going to give them

16  30 days from today to supplement whatever needs to be

17  supplemented and, you know, Karen's going to tell you that

18  her clients are done, okay, and you may get the same thing

19  from other lawyers, whatever.  At the end of the 30 days,

20  you'll have what you have.  And during those 30 days, if you

21  get a lawyer who tells you you've got 15 or 20 plaintiffs on

22  the list that are mine and I don't have any more to give you,

23  you all take the time during those 30 days to have a

24  discussion as to whether you agree or disagree.

25       MR. RATLIFF:  Understood, Your Honor.  And in those

1   suggestions, like Ms. Menzies' situation, I think all we've

2   asked for is a certification.

3        THE COURT:  All right.  And if that's all you need --

4   look, I'm not going to -- I'm not arguing your trounce or the

5   plaintiffs.  All I'm saying is, if that's all that's left,

6   that will be done and you won't even have to show up for the

7   next call docket.

8        MR. RATLIFF:  If there's no reason to dispute it, we

9   can't make her produce things that don't exist.

10       THE COURT:  That's my whole point.  And you all are

11  going to take everything else I said at the beginning of this

12  status conference, you're going to take that to heart where

13  you're just trying to determine whether there is additional

14  information that you think you need and you're going to work

15  through all of that and you're to bring to my attention

16  actual real disputes that have not been -- that you all have

17  not already attempted to resolve.

18       MR. RATLIFF:  Understood, Your Honor.

19       THE COURT:  And if you're finished producing stuff,

20  then give them another certification and be done, right?

21       MS. MENZIES:  We've already done the certification,

22  Your Honor, and the can of worms that the certification opens

23  up is what they now want, is a supplemental PTO 71A

24  certification that metadata has now been lost or destroyed

25  because we've given them all the metadata we have.

1          THE COURT:  You give them a certification that says

2     whatever the truth is.  That's all I'm going to ever require

3     anybody to do is to certify the truth, whatever those

4     circumstances are.  They may want you to certify there's no

5     Santa Claus.  I don't care about that.  I want you to certify

6     whatever it is that limits your production or states that

7     it's complete.

8          MS. MENZIES:  Yeah, that we've given everything we

9     have.  Because we can't certify, if we have gotten pictures

10     from family members and other friends or from devices from

11     10, 20 years ago --

12          THE COURT:  I'm not going to expect you to explain --

13          MS. MENZIES:  That it was destroyed or lost.

14          THE COURT:  -- the absence of the information

15     particularly if it's not coming directly from your own person

16     --

17          MS. MENZIES:  Thank you.

18          THE COURT:  -- your own plaintiff.

19          MR. RATLIFF:  We're fine with all that.

20          THE COURT:  I want a -- just a certification that

21     this is all we have.  All right?  We have looked, we have

22     searched, this is everything we have.

23          MR. LAMBERT:  Your Honor, one more point that I

24     wanted to add, and assuming this process is going to go

25     forward with Sanofi providing more notices of photo

1    deficiencies, it would help the individual counsel if they

2    would identify the particular photo in MDL centrality that is

3    the problematic photo.

4        THE COURT:  I would expect -- that's not happening?

5        MR. LAMBERT:  Well, they agreed to do that in

6    conferrals, but on the original list that was provided, it

7    was just a plaintiff name so --

8        THE COURT:  Which is what makes people stand up and

9    say this person is on a list.  You have to identify the

10   particular photographs.

11       MR. RATLIFF:  Your Honor, we're happy to do that.

12   Sometimes just as a kind of practicality on MDL Centrality a

13   picture like that may be uploaded in a single image with

14   seven other photographs.  And so it becomes difficult for us

15   to say, well, it's this production, this -- this upload, the

16   eighth photo, you know, so that's why -- but we'll do our

17   best --

18       THE COURT:  I mean, y'all are going through there --

19   I mean, if you can identify the photo for your own purposes,

20   you can identify it for their purposes.

21       MR. LAMBERT:  It's actually to your letter --

22       MR. RATLIFF:  It would be helpful every individual

23   photo was uploaded individually, but a lot of time we

24   just get --

25       THE COURT:  I'm not going to --

1          MR. RATLIFF:  I'm not asking for that.  I'm just

2     saying, that's why sometimes a photo like that may look like

3     that's what we're asking for until we have the actual

4     individual meet and confers.  We're happy to go through that

5     process.  I think we have just been putting the list together

6     the way we had always put the list together.  This is the

7     first time we've heard this and so we're happy to --

8          THE COURT:  That's why we're here.  We're going to

9     try to make it more efficient.

10          MR. LAMBERT:  Another efficiency point is my office

11     and Ms. Barrios' office probably spent --

12          MS. BARRIOS:  Hours.

13          MR. LAMBERT:  -- hundred hours, you know, taking

14     lists, and dividing them and sending them out to individual

15     counsel and trying to keep them informed and, of course,

16     that's our job to do that, and we do it as quickly as we can.

17     But we sometimes get spread sheets that have deleted rows and

18     then we can't sort them and then we're spending hours and

19     hours.

20          THE COURT:  Either you need to talk to Jeremy and

21     company or your people need to talk to their people, but if

22     it's an IT issue, work through that.

23          MR. LAMBERT:  We'll work those out.  And one more

24     point and this is really for the benefit of the folks on the

25     phone, that the deadlines that you've set are meaningful and

1   they need to meet those deadlines.  And so my staff is

2   chasing around people trying to get, you know, responses in

3   and we -- we really would like to get those in time.  So to

4   the extent Your Honor would like to reiterate that.

5        THE COURT:  If you -- all I'm going to -- I'm going

6   to -- well, yeah, the deadlines are meaningful, but having

7   said that, I'm going to repeat what I said a little while

8   ago.  If either side in this exercise thinks that deadlines

9   are too aggressive or could be relaxed, ask me to do it and I

10  will.  This is not the most important thing that you all are

11  working on in this case.  And I get it.  But it's -- it needs

12  to be done and, you know, we're going to reach a point where

13  this is essentially finished and completed.  I would like for

14  that point to be sooner rather than later so that nobody --

15  so this is something that you don't have to worry about

16  anymore.  So that's why I want to continue to try to get it

17  completed.  All right?

18       So I'm going to issue a minute entry that addresses

19  the informal exchange of a list of perceived deficiencies

20  prior to a formal listing that will start the clock running.

21  I will -- I will give the folks who are still on the list --

22  and it's the November 15th list; is that right?

23       MR. WICKLER:  Yes, Your Honor.

24       THE COURT:  The folks who are still on the

25  November 15th list, 30 days to supplement their productions

1    to the extent that their attorneys think that it's necessary

2    to supplement and/or provide certifications that their

3    productions are complete.  I will allow thereafter for

4    counsel to identify -- I guess counsel for Sanofi to identify

5    plaintiffs, individual plaintiffs, who they think still are

6    deficient, for you all to have the opportunity to discuss

7    that with counsel for those plaintiffs, and if I need to

8    address any individuals at the next call docket, I will

9    provide in the minute entry for a procedure for you all to

10   identify them, give me one or two sentences, a short

11   paragraph, give individual plaintiffs' counsel time to submit

12   their responses.  And I will thereafter, when I see the scope

13   of the problem, which I am hopeful will not be grand, I'll

14   decide exactly how I want to handle it.

15        I may need to talk to people.  I may not.  I just

16   play make decisions based on what I read.  I'm going to wait

17   to see what that all looks like before I make a call here.

18        MR. WICKLER:  Your Honor, just a couple of points of

19   clarification and one other issue.  One, I said it was the

20   November 15th letter, but the one that we -- or the spread

21   sheet, but the one that we sent you this morning is the most

22   up to date version of that spread sheet.

23        THE COURT:  Right.  Okay.

24        MR. WICKER:  AND another is, I know we've been

25   focused a lot and understandably so on the photo metadata

1   issue, but there are other ESI deficiencies captured within

2   that spread sheets, but we addressed most of those before.

3        THE COURT:  The order is going to apply -- the e-mail

4   and the social media posts and everything.

5        MR. WICKLER:  The last point, Your Honor, I believe

6   is we have some issues with continued noncompliance with your

7   November 6th order.  It's just eight plaintiffs.  I believe

8   they had a submission that explained that e-mails that they

9   had produced in PDF format they now no longer have the

10  original version with the metadata, which we understand that

11  position, but, again, all we require and this is actually

12  something you ordered on November 6th is they provide us with

13  a 26G statement so we kind of have a period on the sentence,

14  okay, you know, next person who looks at that file is going

15  to understand why there are PDF e-mails instead of the

16  metadata with the e-mails.

17       THE COURT:  All right.  I'll include that.

18       MR. WICKLER:  Thank you, Your Honor.

19       THE COURT:  Give me one second.

20       Okay.  Anything else?

21       All right.  Very good.  I don't need those.  All

22  right.  Everybody on the phone, you all have a nice weekend.

23                         * * * *

24       (WHEREUPON, the proceedings were adjourned.)

25                         * * * *

1                         REPORTER'S CERTIFICATE

2            I, Nichelle N. Drake, RPR, CRR, Official Court
     Reporter, United States District Court, Eastern District of
3    Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
4    understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

5

6                         ___/s/ Nichelle N. Drake___
                          Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25