# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| **This document relates to:** Deborah Johnson, 16-cv-15607 Tanya Francis, 16-cv-17410 | ) ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for Reconsideration or, in the Alternative, for Clarification/Amendment of Judgments (Doc. 7857). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for March 23, 2020.

In its Order and Reasons dated July 9, 2019, the Court held that the claims of Plaintiffs Deborah Johnson and Tanya Francis were prescribed.[2] To make this decision, the Court had to consider when their injuries manifested— or when their hair loss became permanent. The Court looked to the Plaintiffs'

---
[1] Docetaxel is the generic version of Taxotere.
[2] Doc. 7571.

Master Complaint in the MDL, which alleges that permanent chemotherapy induced alopecia ("PCIA") "is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy."[3] Notably, both Johnson and Francis incorporated the allegations of the Master Complaint into their Short Form Complaints,[4] and several experts in this MDL have defined PCIA in the same way as the Master Complaint.[5] Based on this definition, the Court determined that prescription began to run six months after Plaintiffs Johnson and Francis completed chemotherapy, respectively. For purposes of contra non valentem, the Court then considered when each Plaintiff had knowledge of her injury and whether she was reasonable in waiting years to file suit. Finding that contra non valentem was not applicable to these Plaintiffs, the Court ruled that their cases were time-barred.

In the instant Motion, Plaintiffs ask the Court to reconsider its ruling. Plaintiffs argue that the Court inappropriately relied on the definition of permanent alopecia set forth in the Master Complaint and further erred in finding that contra non valentem was inapplicable to these Plaintiffs.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 59(e), a party may file a motion to alter or amend a judgment.[6] Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[7] "Manifest error is one that is plain and indisputable,

---

[3] Doc. 4407 at ¶ 181.
[4] Rec. Docs. 5734-4 and 6081-2.
[5] For example, Plaintiffs' own expert Dr. Laura Plunkett adopted this definition in her expert report, writing that the medical literature generally defines irreversible alopecia as "hair loss that is still seen six months after treatment has ended." Doc. 6155-8 at 14.
[6] Fed. R. Civ. P. 59(e).
[7] Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) (quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir.1989)).

and that amounts to a complete disregard of the controlling law."[8] "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[9]

## **LAW AND ANALYSIS**

Plaintiffs argue that the Court erroneously used the definition of PCIA set forth in the Master Complaint. Plaintiffs point to case law providing that MDL master complaints are not ordinary complaints but instead administrative devices. Plaintiffs aver that the Master Complaint does not provide individualized factual allegations, and Plaintiffs suggest that determining the point at which a plaintiff's hair loss became permanent is an individualized analysis. Plaintiffs further note that the Short Form Complaints of Plaintiffs Johnson and Francis "do not adopt a specific time when she actually or constructively knew of her injury."[10]

Plaintiffs fail to point to any manifest error in the Court's reasoning. Plaintiffs take issue with the Court's consideration of the Master Complaint and argue that the Master Complaint has no legal effect. However, as one MDL court explained, "[t]he master complaint has no legal effect, standing alone," but it does have an effect "when it is adopted by a plaintiff through the filing of an individual complaint."[11] The court wrote that each complaint in an MDL "consists of the master complaint and the individual short-form complaint, taken together."[12] Indeed, both Johnson and Francis incorporated the Master

---

[8] Guy v. Crown Equipment Corp., 394 F.3d 320, 325 (5th Cir. 2004) (internal quotations and citations omitted).
[9] *Templet*, 367 F.3d at 479 (quoting Clancy v. Employers Health Ins. Co., 101 F.Supp.2d 463, 465 (E.D.La.2000)).
[10] Doc. 7857 at 5.
[11] In re Zofran (Ondansetron) Prods. Liab. Litig., 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017).
[12] *Id.*

3

Complaint into their Short Form Complaints. Further, the definition of PCIA provided in the Master Complaint is not an arbitrary one. According to one of Plaintiffs' own experts, "the medical literature generally defines irreversible alopecia as 'hair loss that is still seen six months after treatment has ended.'"[13]

Even if the Court accepts Plaintiffs' argument that the Master Complaint has no legal effect, Plaintiffs Johnson and Francis had sufficient knowledge of their permanent hair loss six months after completing chemotherapy. The Court discussed this in its application of contra non valentem. Plaintiff Johnson testified that she finished her cancer treatments in 2010 and that same year she became very concerned that her hair may not grow back at all. Yet she did not file suit until 2016 after seeing a law firm's television ad about Taxotere.[14] Similarly, Plaintiff Francis testified that when her hair grew back months after finishing chemotherapy, it was thinner and had a different texture. Yet she did not act until 2016 when this lawsuit began. Based on the facts of these cases, the Court concluded that Plaintiffs had knowledge of their injuries years before they filed suit.

The Court will not allow Plaintiffs to avoid the application of prescription simply because their injuries are hard to define. Similarly, Plaintiffs cannot avoid prescription by being evasive in their Short Form Complaints about when their injuries occurred. Both as a general matter and for purposes of prescription, this MDL requires defining Plaintiffs' injury.[15] This Court used a definition that the medical literature has adopted and that Plaintiffs have espoused. The Court will not reconsider its ruling on this.

---

[13] Doc. 6155-8 at 14.
[14] Doc. 5734-5. Johnson testified that she saw an advertisement by the Morris Bart law firm in the summer of 2016. After seeing the ad twice, she called the law firm and then filed suit soon after contacting the firm.
[15] *See e.g.*, In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563, 621 ("In this MDL, there is no dispute that, as a general matter, . . . diagnoses [of the injuries] are relevant to plaintiffs' claims.").

Plaintiffs further argue that the Court did not properly apply the doctrine of contra non valentem. Plaintiffs argue that the Court failed to take into account Plaintiffs' education and intelligence as well as Sanofi's actions to allegedly conceal the risk of PCIA associated with Taxotere. This is not a proper argument for a Rule 59(e) motion but is instead a reiteration of Plaintiffs' original briefing. The Court already conducted an individualized analysis to determine when each Plaintiff had knowledge of her injury, and the Court found that Plaintiffs' injuries were readily apparent to them. For the reasons stated in its Order and Reasons, the Court rejects the argument that Plaintiffs were reasonable in failing to discover and investigate their injuries.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration or, in the Alternative, for Clarification/Amendment of Judgments (Doc. 7857) is **DENIED**.

New Orleans, Louisiana this 23rd day of January, 2020.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE