UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO ALL CASES | |

PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO AMEND PRETRIAL ORDER 70B

INTRODUCTION

Just like Judge Fallon and many other learned MDL judges, this Court has permitted Plaintiffs' counsel to engage in *ex parte* communications with an MDL Plaintiff's treating physician provided that certain details about that meeting are disclosed to Defendants' counsel both in advance of that physician's deposition and in advance of trial.[1] That approach makes good sense: No competent lawyer would call a witness without appropriate and thorough pre-trial interviews and discussion. What's more, attorneys owe duties of candor and cannot suborn perjury. Any concern that an attorney would break ethical duties by "woodshedding" a witness can be ferreted out through cross-examination.

---

[1] The Court first addressed interactions with an MDL Plaintiff's prescribing or treating physician in Pretrial Order No. 70 (Regarding Contact with Physicians) on November 21, 2017, in response to Sanofi-Aventis U.S. LLC and Sanofi US Services, Inc.'s Motion for Entry of a Protocol Regarding *Ex Parte* Contact with Physicians. (PTO 70, Rec. No. 1137.) The Court declined to limit Plaintiffs' counsel's *ex parte* communications with an MDL Plaintiff's prescribing or treating physician as proposed by Defendants but required disclosure of certain categories of information to defense counsel at least 48 hours before the physician's deposition. (*Id.* at ¶ 1.) On January 26, 2018, Pretrial Order No. 70A (Replacing Pretrial Order No. 70 Regarding Contact with Physicians) was issued, which contained the same language as PTO 70 as it relates to *ex parte* communications. (PTO 70A, Rec. No. 1528.). Pretrial Order No. 70B (Replacing Pretrial Order No. 70A Regarding Contact with Physicians) was entered on November 13, 2018. (PTO 70B, Rec. No. 5256.) PTO 70B provided for additional disclosures by Plaintiffs' counsel as well as clarified the timelines for disclosure and provided for *ex parte* communication after deposition through trial. (*Id.* at ¶ 1-2.) There has been no allegation that Plaintiffs' counsel has failed in their obligations under any iteration of PTO 70 – 70B. The present motion is without basis or reason, but instead is an unjustified attempt to retread old ground.

1

Despite these time-tested protective procedures, Sanofi argues *again* that this traditional approach—memorialized here in PTO 70B—must be discarded without a shred of evidence that the process is flawed or has failed the parties in this litigation. To hear Sanofi tell it, in the *Earnest* case, Plaintiff's counsel all but strong-armed Dr. Carinder (the treater) into testifying in Plaintiff's favor and manipulated Dr. Carinder's testimony. Sanofi said as much just before Dr. Carinder testified. But the Court rejected Sanofi's dim view of Plaintiffs' counsel, and both sides were permitted to explore the issue at trial. The questioning before the jury revealed no manipulation whatsoever, and the Court recognized counsel's right to meet with their witnesses prior to trial. And no reasonable person who heard Dr. Carinder testify would say with a straight face that this treater was "woodshedded."

Ordinarily, one would expect an exceedingly good reason to revisit settled orders of the Court. Yet here, Sanofi simply presses old arguments that this Court has considered and rejected. Indeed, Sanofi advances the same mischaracterization of the *Earnest* trial that failed to change the Court's mind merely months ago. Sanofi can point to nothing that has occurred since to justify revisiting settled ground.

Sanofi's motion to amend PTO 70B should be denied.

## ARGUMENT

**I. Plaintiff's Counsel's Communications With Dr. Carinder Were Authorized and Proper**

PTO 70B allows Plaintiffs' counsel to engage in *ex parte* communications with an MDL Plaintiff's prescribing or treating physician after the physician's deposition through trial subject to the requisite information being provided to counsel for Defendants at the appropriate time. (PTO 70B, Rec. No. 5256 at ¶ 2.) Ms. Earnest's counsel, Darin L. Schanker and Zachary L. Wool, met with Dr. Carinder on September 10, 2019, prior to the trial of Ms. Earnest's case for approximately

an hour and a half and paid his usual and customary rate of $1,000 an hour ($1,500 total). For more than an hour, counsel for Plaintiff discussed the applicable standard of care for early stage breast cancer and Ms. Earnest's medical treatment including the options available to her in 2011. Plaintiff's counsel also spoke with Dr. Carinder about the 2010 label and his experience with Taxotere. In connection with the meeting, Dr. Carinder was provided a copy of his deposition (taken almost two years prior on January 11, 2018), the 2010 label, the NCCN guidelines, the nurse-tear sheet describing alopecia as "temporary," and three demonstratives.[2] The aforementioned communication was fully and timely disclosed to Defendants' counsel in accordance with PTO 70B. (Ex. A to Defs' Mem. in Supp. of Mot. to Amend Pretrial Order 70B Regarding Ex Parte Contact with MDL Plaintiffs' Prescribing and Treating Physicians, Rec. No. 9109-2.)

Attorneys are expected to prepare witnesses for the rigors of giving testimony, and Plaintiff's counsel did nothing untoward or out of the ordinary by meeting with Dr. Carinder to get ready for trial. The Court echoed this exact sentiment at Ms. Earnest's trial, "**THE COURT:** The fact there were orders in place, there was nothing improper with him meeting with this witness. I'm inclined to tell the jury there's nothing improper." (Exhibit A, James Carinder, Tr. at p. 1613:7–1613:9.) The Court further noted, "I think there was an inference that there was something improper with the meeting, and there is nothing improper with meeting with a witness that you intend to call at trial." (*Id.* at p. 1614:14-1614:18.)

---

[2] It bears mentioning that before this litigation ever began, Sanofi had unfettered access to prescribing doctors through its sales representatives for years, as documented in the trial testimony of Sanofi sales representative, Ruth Avila, who visited Dr. Carinder's clinic a couple of times a month and promoted Taxotere to Dr. Carinder and his staff.

When asked whether his testimony was affected by his interactions with counsel for Plaintiff, Dr. Carinder answered in the negative:

> Q. Dr. Carinder, you were asked a whole litany of questions about meetings I had with you. My question to you is: Did I, in any way, try to influence you in any way, shape, or form in your testimony here?
> A. No.
> Q. Did any other lawyer who met with you from the plaintiff's side try to influence you in any way, shape, or form in your testimony here?
> A. No.
> Q. In this case the defense attorney had the chance to take your deposition for - - you indicated, I believe - - almost four hours?
> A. Yes.
> Q. Did you answer all of those questions honestly and truthfully?
> A. Yes.
> Q. When I met with you, did you answer all of the questions I asked you honestly and truthfully?
> A. Yes. (*Id.* at pp. 1615:23-1616:16.)

Defendants identify two lines of questioning to support the purported "woodshedding" of Dr. Carinder by Plaintiff's counsel: 1) testimony regarding Dr. Carinder's knowledge of permanent hair loss associated with the use of Taxotere; and 2) testimony related to whether Ms. Earnest was told about a former patient of Dr. Carinder that experienced persistent alopecia while taking the same chemotherapy regimen.  First, both lines of questioning concern Dr. Carinder's medical treatment of Ms. Earnest and comported with the Court's guidance as to the scope of his testimony. Second, it strains credulity to suggest that the cited testimony evidences the exertion of undue influence over Dr. Carinder by counsel for Ms. Earnest or poisoning of the well.   The Court stated so at trial, as recounted in its quoted comments above.

The questions asked of Dr. Carinder in each instance were not identical nor were his answers contradictory.  Reading a journal article published ten years prior to Dr. Carinder's treatment of Ms. Earnest about four patients having persistent hair loss after receiving the same chemotherapy regimen is hardly the equivalent of knowing that permanent hair loss is a side effect

4

of Taxotere or being warned about the risk of permanent hair loss by Defendants. Similarly, Dr. Carinder consistently stated he told other patients about the former patient when explicitly asked about the possibility of permanent hair loss and his testimony was unchanging in that respect. Nevertheless, the jury had the chance to weigh the totality of Dr. Carinder's testimony and assess his credibility.

Plaintiff's counsel did not attempt to bias or manipulate Dr. Carinder or any of Ms. Earnest's healthcare providers during the course of this case.[3] PTO 70, PTO 70A, and PTO 70B expressly permitted the communications that occurred between counsel for Ms. Earnest and Dr. Carinder. Defendants did not unearth some hidden fact that Ms. Earnest's counsel communicated with Dr. Carinder prior to the trial but received that information directly from Plaintiff's counsel in compliance with PTO 70B. Defendants have not shown any impropriety justifying modification of PTO 70B.

## II. Cross-Examination Is Sufficient to Reveal Inappropriate "Woodshedding"

Defendants propose that the following restraints be placed on Plaintiffs' counsel's communications with an MDL Plaintiff's treating or prescribing physicians:

> Defendants request that the Court preclude Plaintiffs' counsel from ex parte contact with MDL Plaintiff's prescribing or treating physician in the same manner applicable to defense counsel. Alternatively, Defendants request the Court limit Plaintiffs' counsel to a single ex parte meeting prior to that physician's deposition, during which the only documents shown or provided are the physician's medical records for that MDL Plaintiff, and the subject matter is limited to the physician's care and treatment of such Plaintiff. (Defs' Mot. to Amend Pretrial Order 70B Regarding *Ex Parte* Contact with MDL Plaintiffs' Prescribing and Treating Physicians, Rec. No. 9109 at p. 1.)

---

[3] Defendants contend that Plaintiff's counsel failed to disclose meeting with Marie Celeste Lagarde, M.D. prior to her deposition, but such a disclosure was not necessary because she is not a "prescribing physician" or "treating physician" as defined by PTO 70A in effect at the time. Dr. Lagarde did not prescribe docetaxel to Ms. Earnest or treat the injury alleged in the Plaintiff Fact Sheet. There were no restrictions on counsel for Ms. Earnest communicating with Dr. Lagarde.

5

MDL courts routinely rebuff attempts to impose the limitations suggested by Defendants and the Court has already done so in this case. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 167 F. Supp. 3d 936, 937–939 (N.D. Ill. 2016) (denying the defense motion to restrict communications with the plaintiffs' physicians, "[E]ven though some states restrict defense-to-physician communications, the Court is unaware of, and [defendant] has not identified, any such state that takes the step advocated by [defendant] here: imposition of a parallel prohibition (or some other form of restriction) on the plaintiff's attorney."); *In re Xarelto (Rivaroxaban) Prod Liab. Litig.*, 2016 WL 915288, *4-6 (E.D. La. Mar. 9, 2016) (refusing to limit the scope of *ex parte* contacts with the plaintiffs' physicians, "The Court finds that imposing restrictions on the substantive content of *ex parte* contacts between Plaintiffs' counsel and prescribing or treating physicians would be both unenforceable and unreasonable."); *In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 2016 WL 1370998, *3-6 (D.N.J. Apr. 6, 2016) (rejecting the defendants' motion to curtail the subject matter of the plaintiffs' *ex parte* communications with treating physicians, "The problem with defendants' argument is that there is no credible evidence to support it.").

Defendants' proposal is not only unwarranted but impractical. As the court in *Benicar* observed, "it will be almost impossible and certainly problematic to police the communications between plaintiffs' counsel and physicians." *In re Benicar*, 2016 WL 1370998, at *5. The *Xarelto* court likewise acknowledged that, "Defendants' request to cleanse advocacy from Plaintiffs' *ex parte* physician contacts may not be easily detectable and is not enforceable." *In re Xarelto*, 2016 WL 1370998, at *5.

In addition, Defendants misconstrue the law on sequestration and witness tampering. At the outset, it should be noted that there was no written order governing sequestration of witnesses

6

related to the Barbara Earnest trial.  The Court stated that fact witnesses should be sequestered during a telephonic conference.  Federal Rules of Evidence Rule 615 provides for the exclusion of witnesses, "so that they cannot hear other witnesses' testimony," not to prevent communication with counsel for the parties.  In fact, "[T]he relevant authorities interpreting Rule 615, including court decisions and the leading commentators, agree that sequestration orders prohibiting discussions between witnesses *should, and do, permit witnesses to discuss the case with counsel for either party.*" *United States v. Rhynes*, 218 F.3d 310, 317 (4th Cir. 2000) (en banc) (emphasis added).  One of the leading authorities cited in *Rhynes* is from the United States Court of Appeals for the Fifth Circuit, "Sequestration requires that witnesses not discuss the case among themselves or anyone else, other than the counsel for the parties." *United States v. Walker*, 613 F.2d 1349, 1354 (5th Cir. 1980) (emphasis added).

In *Rhynes*, an attorney discussed another witness's trial testimony with a witness during trial preparations. *United States v. Rhynes*, 218 F.3d 310 at 314 ("I specifically told [the witness] about that testimony and told him I was going to ask him about that, Your Honor.").  The attorney was accused of violating the sequestration order that was essentially analogous to the Rule 615. *Id.* at 316.  The court recognized that, "It is clear from the plain and unambiguous language of Rule 615 that lawyers are simply not subject to the Rule." *Id.* at 316.  The court rejected the argument that the attorney, "frustrated the purpose and spirit of sequestration." *Id.* at 318. "[L]awyers are not like witnesses," the court explained, "and there are critical differences between them that are dispositive in this case," including that lawyers are officers of the court, owe duties of candor, and cannot suborn perjury. *Id.*  The court further observed that sequestering witnesses from counsel would be inappropriate, "Thorough preparation demands that an attorney interview and prepare witnesses before they testify. No competent lawyer would call a witness without

7

appropriate and thorough pre-trial interviews and discussion." *Id.* at 318-319.  The court found no violation of the sequestration order under the circumstances and, even if there had been a violation, appropriate corrective measures included limiting the extent of the witness's testimony and comprehensive cross examination. *Id.* at 322-323.

Rather than imposing prospective restrictions on *ex parte* communications, MDL courts have instead allowed defendants to cross-examine plaintiffs' physicians regarding any contacts with counsel for plaintiffs. *See, e.g.*, *In re Benicar*, 2016 WL 1370998, at *4 ("If this occurs, the expert runs the risk of getting obliterated on cross-examination as occurred at the DePuy trial. Defendants are also protected because they are free to question plaintiffs' physicians at their depositions and at trial regarding their contacts with plaintiffs' counsel."); *In re: Zoloft Prod. Liab. Litig.*, 2013 LEXIS 190081, *14 (E.D. Pa. June 13, 2013) ("[Depositions] will also allow the defendant to explore whether the physician's testimony is the product of what it calls 'woodshedding' of the physician.").

Along these lines, *Testosterone Replacement Therapy* is informative:

> [T]he fact that abuses are possible *is not grounds to prohibit otherwise appropriate witness preparation*. Rather, the law deals with such abuses in other ways: the opposing party may question the witness about his contacts with the other side to shed light on improper attempts to influence or mislead; may, with some limitations, obtain discovery regarding those contacts; and may, if the circumstances warrant, seek sanctions.

167 F. Supp. 3d at 937 (emphasis added).

While Defendants' belief that Plaintiff's counsel improperly coached Dr. Carinder completely lacks foundation and is in fact refuted by his sworn testimony, Defendants had a full and fair opportunity to question Dr. Carinder about his meetings with counsel for Ms. Earnest in detail during his deposition and through cross-examination before the jury to remedy any perceived improprieties. (Exhibit A at pp. 1603:4-1609:6.)  The Court also provided a preliminary instruction

8

to Dr. Carinder that his testimony would be limited to the care and treatment of Ms. Earnest and medical decisions made therewith. (*Id.* at pp. 1392:22-1393:8.) These are not circumstances that warrant revisiting PTO 70B.

**III.     The Cases Relied Upon by Defendants Are Outliers or Inapplicable to the Facts**

Defendants' reliance on *Gaus v. Novartis Pharm. Corp.*, a decision from the Superior Court of New Jersey, is misplaced. Docket No. L-007014-07-MT (*In re Aredia and Zometa Litig.*, Case No. 278), 2009 N.J. Super. Unpub. LEXIS 3282 (N.J. Super. Ct. Law Div. Oct. 29, 2009). New Jersey law, unlike Louisiana law, for example, provides for equal access to non-party witnesses including *ex parte* communications with a plaintiff's physician for the purposes of discovery and trial preparation, "Although there is a general presumption in New Jersey that defendants should be permitted to initiate *ex parte* contacts with plaintiffs' treating physicians, the unique set of practical concerns presented in mass court cases should not be underappreciated." *Id.* The court determined that it lacked the resources to oversee the inevitable discovery disputes and motion practice that would arise by granting defendants' motion for *ex parte* communications with plaintiffs' physicians. *Id.* The New Jersey state court restricted the right of all parties to engage in *ex parte* contacts with plaintiffs' physicians. *Id.* New Jersey law clearly does not govern the current MDL proceedings and conflicts with the frequently accepted confidential nature of the physician-patient relationship.

The courts in *In re Ortho-Evra Products Liability Litigation* and *In re Chantix (Varenicline) Products Liability Litigation* entered orders imposing limitations on interactions with plaintiffs' physicians by plaintiffs' counsel, but little reasoning was provided by either of these courts. *In re Ortho-Evra*, 2010 WL 320064 (N.D. Ohio Jan 20, 2010); *In re Chantix*, 2011 WL 9995561 (N.D. Ala. June 30, 2011). As a result, other MDL Courts have not been persuaded

to follow the *Ortho-Evra* and *Chantix* decisions. *See, e.g., In re Testosterone Replacement Therapy*, 167 F.Supp.3d at 938-939 ("The Court is unpersuaded by [defendant's] contentions" based in part on *Ortho-Evra* and *Chantix* and is, "in agreement with those courts in MDL litigation that have similarly declined to preclude plaintiffs' attorneys from unsupervised pre-deposition contacts with their clients' treating physicians."); *In re Xarelto*, 2016 WL 1370998, at *4 (noting that neither *Ortho-Evra* nor *Chantix*, "provide an explicit rationale for excluding discussion of liability theories from *ex parte* contacts between Plaintiffs' attorneys and prescribing or treating physicians," and decisions are inconsistent with the "great weight of reasoning and persuasive authority"). Despite Defendants' assertions to the contrary, there is not some emerging trend to curtail the nature and substance of the communications that can occur between counsel for plaintiffs and plaintiffs' physicians. Instead, Sanofi is simply trying to re-litigate this issue, which has been evaluated by this Court on multiple occasions (including by Magistrate Judge North) in an attempt to persuade this Court that a remedy is needed where no violation of PTO 70B can be shown.

  Defendants cite *Miller v. Universal City Studios, Inc.* for the proposition that counsel for Ms. Earnest impermissibly violated the sequestration order of the Court by meeting with and providing documents to Dr. Carinder prior to trial. 650 F.2d 1365 (5th Cir. 1981). But in *Miller*, the expert witness received the daily copy transcript of the plaintiff's trial testimony. *Id.* at 1373. The court excluded the expert's testimony based on the violation of the sequestration order, "The opportunity to shape testimony is as great with *a witness who reads trial testimony* as with one who hears the testimony in open court…. The court properly held that *providing a witness daily copy* constitutes a violation of rule 615." *Id.* (emphasis added). Dr. Carinder was not provided with transcripts of any other witnesses' trial testimony by Plaintiff's counsel. Thus, there is no

10

basis to infer that Dr. Carinder was coached merely because he met with counsel for Plaintiff to discuss the case after the Court stated on a telephonic conference that fact witnesses should be sequestered.

## CONCLUSION

For the foregoing reasons, the Court should not modify PTO 70B to impose further limitations on Plaintiffs' counsel's communications with an MDL Plaintiff's prescribing or treating physician. There is simply no need for the Court to "level the playing field" to address some speculative, and arguably fabricated, unfair prejudice to Defendants. Defendants have had the distinct advantage of being a primary source of information regarding docetaxel since the drug's approval, and "it is disingenuous for defendants to ask to be put on an 'equal footing' with plaintiffs when to date the physicians have been subject to defendants' marketing communications which likely extolled the benefits of their drugs." *In re: Benicar*, 2016 WL 1370998, at *4.

Plaintiffs' prescribing and treating physicians are critical and uniquely important fact witnesses in this litigation whose testimony not only relates to knowledge of Plaintiffs' medical condition but is extremely probative as to what Defendants communicated about docetaxel and when. Plaintiffs' counsel should continue to be afforded the opportunity to engage in open discussions with their clients' prescribing and treating physicians. Vigorous cross-examination remains the most appropriate remedy to cure any alleged "woodshedding."

Lastly, the PSC takes umbrage at Sanofi's suggestion that the PSC's trial preparation was in any way inappropriate. A responsible litigant would not level such a weighty charge without significant evidence to back it up—and here there is none. The Court should consider admonishing Sanofi not to cast aspersions in the future.

Dated: February 7, 2020                                       Respectfully submitted,


/s/ Christopher L. Coffin                                     /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                                Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                              Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505                               GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                                  6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                                         Los Angeles, California 90045
Fax: (504) 355-0089                                           Telephone: 510-350-9700
ccoffin@pbclawfirm.com                                        Facsimile: 510-350-9701
                                                              kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                                              *Plaintiffs' Co-Lead Counsel*


/s/M. Palmer Lambert                                          /s/Dawn M. Barrios
M. Palmer Lambert (#33228)                                    Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                                     BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                                      701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street                       New Orleans, LA 70139
New Orleans, LA 70163-2800                                    Phone: 504-524-3300
Phone: 504-522-2304                                           Fax: 504-524-3313
Fax: 504-528-9973                                             barrios@bkc-law.com
plambert@gainsben.com
                                                              *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews                                                  Daniel P. Markoff
Andrews Thornton Higgins Razmara, LLP                         Atkins & Markoff Law Firm
2 Corporate Park, Suite 110                                   9211 Lake Hefner Parkway, Suite 104
Irvine, CA 92606                                              Oklahoma City, OK 73120
Phone: (800) 664-1734                                         Phone: (405) 607-8757
aa@andrewsthornton.com                                        Fax: (405) 607-8749
                                                              dmarkoff@atkinsandmarkoff.com


J. Kyle Bachus                                                Abby E. McClellan
Bachus & Schanker, LLC                                        Stueve Siegel Hanson LLP
1899 Wynkoop Street, Suite 700                                460 Nichols Road, Suite 200
Denver, CO 80202                                              Kansas City, MO 64112
Phone: (303) 893-9800                                         Phone: (816) 714-7100
Fax: (303) 893-9900                                           Fax: (816) 714-7101
kyle.bachus@coloradolaw.net                                   mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

      I hereby certify that on February 7, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                            */s/ Dawn M. Barrios*
                                            DAWN M. BARRIOS