UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Certain Cases* | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS AND PLAINTIFFS' COUNTERSTATEMENT OF FACTS**

Pursuant to Local Rule 56.2, the Plaintiff Steering Committee submits the following Response to Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment on the Claims of Plaintiffs Whose Taxotere Treatment Started Before December 15, 2006:

1. Admitted.

2. Denied. Dr. David Kessler was designated by first-round bellwether plaintiffs Antoinette Durden, Tanya Francis, and Barbara Earnest to opine on regulatory and label issues, including, "because of the date of Taxotere administration to the bellwether plaintiffs [. . .,] to specifically provide opinions about Sanofi's duty by as early as 2009." (Rule 26 Report of Dr. David Kessler (Rec. Doc. 8977-5.) Dr. Kessler was similarly designated as a general causation expert by second-round bellwether plaintiffs Cynthia Thibodeaux and Sheila Crayton. (Suppl. Rule 26 Report of Dr. David Kessler (Rec. Doc. 8977-9) p. 1, ¶ 2, Oct. 21, 2019.)

1

3. Denied. The PSC has designated no expert to opine when there "first existed" reasonable evidence of a causal association between Taxotere and irreversible alopecia. Bellwether plaintiffs have designated Dr. Kessler to opine whether evidence of a causal association existed at the time of those plaintiffs' respective treatments with Taxotere. (Rec. Doc. 8977-5 p. 3, ¶¶ 10-11; Rec. Doc. 8977-9 p. 1, ¶ 2, Oct. 21, 2019.)

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Denied. Dr. Kessler has not testified that there should have been a warning in Taxotere's label "*no earlier than* December 15, 2006." In the first round of bellwether trials, Dr. Kessler offered the opinion that "a Warning regarding irreversible alopecia was warranted by as early as 2009" (Rec. Doc. 8977-5, p. 54, ¶¶164-65.) and "probably as early as 2006" (*See* Ex. 1, *Earnest* Trial Tr. 331:3-10, Sept. 17, 2019.), and that Sanofi "should have warned about permanent hair loss as early as 2006" (*id.* at 386:9-25; *see also* Rec. Doc. 8977-9 p. 1, ¶ 4.). Sanofi's citation to Dr. Kessler's Nov. 25, 2019 deposition testimony provides no support for its assertion of fact. Further, Dr. Kessler has not been designated as an expert offering opinion in any member case purportedly subject to Sanofi's instant motion.

Plaintiffs also respectfully submit the following statement of material facts in support of their opposition:

1. The Court's Case Management Order No. 3 set the timeline for case-specific phased discovery in bellwether trial selection as follows:

      a. Feb. 16, 2018: Court's selection of one Primary Plaintiff and three alternates for trial;

      b. Apr. 6, 2018: Completion of second phase discovery and additional fact witness depositions for Primary Plaintiff and trial alternates;

      c. May 4, 2018: Deadline for submission of written reports of Plaintiffs' experts who may be witnesses.

(Case Management Order No. 3, Doc. 669, July 21, 2017, pp. 1–2, 4.)

2. Pursuant to CMO 3, Plaintiffs submitted to Defendants the written report of Dr. David Kessler, which was for express use in the cases of Barbara Earnest, Antoinette Durden, and Tanya Francis. (Rec. Doc. 8977-5 p. 3, ¶10.)

3. Dr. Kessler's report went on to specify "I have been asked [. . .] because of the date of Taxotere administration to the bellwether plaintiffs cited above, to specifically provide opinions about Sanofi's duty by as early as 2009." (*Id.* at p. 3, ¶11.)

4. For the second bellwether trial, the Court again ordered a phased discovery procedure where it would select Primary and alternate plaintiffs, then require the exchange of expert reports, and then allow for further expert discovery if case-specific opinions were being offered. (Case Management Order No. 8, Doc. 935, Oct. 11, 2017, pp. 2, 4–5.)

5. Pursuant to the Order, Plaintiffs submitted Dr. Kessler's supplemental report, which was for express use in the cases of Cynthia Thibodeaux and Sheila Crayton. (Rec. Doc. 8977-9 p. 1, ¶2.)

6. Dr. Kessler's supplemental report noted, "Both of these plaintiffs were administered Taxotere in 2008." (Id. p. 1, ¶2.)

7. Dr. Scot Sedlacek's presented his research, based on data from his own clinical oncology practice, on the risk of "persistent significant alopecia" following chemotherapy with Taxotere at the 29th Annual San Antonio Breast Cancer Symposium in San Antonio, Texas, in a presentation called "Persistent significant alopecia (PSA) from adjuvant docetaxel after doxorubicin/cyclophosphamide (AC) chemotherapy in women with breast cancer." (*See* Ex. 2, San Antonio Breast Cancer Symposium Materials, Dec. 14-17, 2006.)

8. These research findings were published concurrently in an abstract in the Journal of Breast Cancer Research and Treatment. (*Id.*)

9. Dr. Sedlacek analyzed data from the women he had treated with adjuvant chemotherapy from January 1994 through December 2004 and concluded "that when docetaxel is administered after 4 doses of AC, there is a small but significant possibility of poor hair regrowth lasting up to 7 years." (*Id.*)

10. Sanofi "had a dialogue" with Dr. Sedlacek around the time of his publication. (*See* Ex. 3, *Earnest* Trial Tr. 1314:18 – 1315:4, Sept. 20, 2019.)

11. In Sanofi's internal salesforce document entitled "Oncology Coaching Report," District Manager Perry Monaco advised Sanofi Representative Christine Muhlenhaupt as follows:

> With Dr. Sedlacek, he is bending, but not breaking. He informed you that he is no longer using dose dense for he er+ patients, but is now using traditional AC followed by Taxol. There is no reason why this should have been his regimine [sic] of choice. The excuse of permanent alopecia is a concern of his, but should not stop him from giving TAC an opportunity. He even mentioned that he had limited experience in that area. Keep your sales calls consistent with him and don't back down. He likes the confrontation and I have seen you do some of your best work when pushed up against the wall with him. Don't let him off the hook!!!!!!
> [ * * * ]
> Chris, one of the things I would like to really start work on with you is selling the data a little harder. You have excellent clinical

>knowledge and can hold your own with the most intelligent of physicians as observed with Dr. Sedlacek on Thursday.

(*See* Ex. 4, Sanofi_04633925 at 2.)

12. In a section titled "Action Steps," Monaco instructs Muhlenhaupt, "Communicate with Kara the information from Dr. Sedlacek." (*Id.* at 3.) In response, Muhlenhaupt wrote: "I have already relayed the information from Sedlacek to Kara. You are right, just when I think it is hopeless he shows a little bend even if not in the right direction. DON't [sic] give up!!!" (*Id.*)

13. In July and October 2005, Sanofi received reports of each of Dr. Sedlacek's individual cases of "PSA" in a cluster of adverse event reports ("AERs") from a nurse at Dr. Sedlacek's practice. (*See* Ex. 5, Dep. of Michael Kopreski, Dec. 12, 2018, 229:17 – 230:20 and *See* Ex. 6, Ex. 2, tabs 2, 3, 4, 5, 6, 7, 8, 9.)

14. Sanofi considered these adverse events of "permanent hair loss" and "permanent alopecia" to be "listed" in the Core Data Sheet. (*See, e.g.*, *id.* at tab 2, p. 3 ("*Permanent* alopecia [. . . is] considered listed in the Core Data Sheet for docetaxel."); *see also id.* at tab 9, p. 3 ("*Permanent hair loss* [. . . is] considered listed in the Core Data Sheet for docetaxel.").

15. Sanofi considers an adverse event to be "listed" if it appears in the drug's label. (*See* Ex. 3, *Earnest* Trial Tr. 1304:15-24, Sept. 20, 2019.)

16. On January 26, 2007, Sanofi Global Safety Officer for Taxotere, Dr. Emanuel Palatinsky, approved modifications by one of the company's clinical trial principal investigators, Dr. John Mackey, to the informed consent given to trial participants at his study site. (*See* Ex. 7, *Earnest* Pl.'s Ex. 200.)

17. Among these modifications was the addition of "permanent hair loss" as one of the "side effects" of Taxotere. (*Id.*) Dr. Palatinsky noted that the informed consent did not need to

warn of both "hair loss" and "permanent hair loss" because "permanent h[air] l[oss] is sufficient once."

18. The consent form read as follows:

> The following are the side effects of each drug used in this study. These side effects may or may not be more severe when the drugs are taken together. These are the side effects we know about at present. However, since this is a study of new treatments there may be other side effects that we do not know about yet.

(*Id.* at 6 of 19.)

19. The informed consent did not list "permanent hair loss" as a side effect for Adriamycin, Cyclophosphamide, trastuzumab, or carboplatin. (*Id.* at 9, 10, 14.)

20. Dr. Mackey had served as Chairman of Sanofi's TAX 316 clinical trial—which Sanofi used to obtain approval for use Taxotere in the adjuvant setting—and as a Principal Investigator and primary author in other published clinical studies sponsored by Sanofi and involving Taxotere. *See, e.g.,* https://www.ncbi.nlm.nih.gov/pubmed?term=(mackey%20john%5BAuthor%5D)%20AND%20docetaxel%5BText%20Word%5D

21. Dr. Mackey's study site is identified in adverse event reports by "Investigator ID: BCA0021." (*See* Ex. 8, Sanofi 04149929 at worksheet "Canada.")

22. On August 20, 2003, Sanofi received a report from Dr. Mackey's site regarding a patient in a Sanofi clinical trial (patient no. 10511) whose hair loss persisted for more than a year following completion of chemotherapy treatment with Taxotere. (*See* Ex. 9, Sanofi_06248381).

23. On September 19, 2003, Sanofi received a report from Dr. Mackey's site about patient in the clinical trial (patient no. 11158) whose hair loss had persisted since completing Taxotere chemotherapy treatment in June 2002. (*See* Ex. 10, Sanofi_06248358; *See* Ex. 11,

Sanofi_06248364.) This Sanofi document incorrectly states the date of the last cycle of Taxotere as June 26, 2003, when the correct year is 2002.  (*See* Ex. 12, *See* Sanofi_04353202_2301.)

24.  This Sanofi document incorrectly states the date of the last cycle of Taxotere as June 26, 2003.  The correct year is 2002.  (*Id.*)

25.  Sanofi entered this report into its pharmacovigilance database, noting that "the investigator has reported that [the alopecia] was likely permanent" and the "[i]nvestigator's assessment for causal relationship: [r]elated to study medication." (*Id.* at 2.) In February of 2005, Sanofi updated its pharmacovigilance database, stating that "[n]ew follow-up information received does not change the previous assessment for this case." (*Id.* at 3.)

26.  In 2003 and 2004, Dr. Mackey reported at least 15 cases of patients with permanent hair loss.  (*See* Mackey TAX-GMA-301 Reports of Permanent Alopecia, Ex. 13, Sanofi_04353203_2562; Ex. 14, Sanofi_04353202_2279; Ex. 12, Sanofi_04353202_2301; Ex. 15, Sanofi_04353202_2566; Ex. 16, Sanofi_04353203_2283; Ex. 17, Sanofi_04353203_2297; Ex. 18, Sanofi_04353203_2301; Ex. 19, Sanofi_04353203_2316; Ex. 20, Sanofi_04353203_2320; Ex. 21, Sanofi_04353203_2323; Ex. 22, Sanofi_04353203_2327; Ex. 23, Sanofi_04353203_2521; Ex. 24, Sanofi_04353203_2534; Ex. 25, Sanofi_04353203_2539; Ex. 26 Sanofi_04353203_2551; Ex. 27, Sanofi_04353203_2559.)

27.  Dr. Nabholtz preceded Dr. Mackey as the primary investigator at the site reporting these cases of persisting alopecia.  (*See* Ex. 28, Sanofi_02649521_1384.)

28.  Dr. Nabholtz reported in a 2001 publication "long lasting [hair loss] (longer than two years)" in 7.4% of metastatic breast cancer patients taking Taxotere in a Sanofi-sponsored clinical trial.  (*See* Ex. 29, Sanofi_00217666 at 318.)

29. Dr. Michael Kopreski, speaking for Sanofi at a Rule 30(b)(6) deposition and addressing this publication, testified: "[T]his is basically a publication that's a joint endeavor of Sanofi and the author, the authors, in getting this publication released and disseminating this information to the oncologic field at large. … So this -- this is essentially an example of Sanofi informing the medical community about the finding of these cases of permanent alopecia with this regimen." (*See* Ex. 30, Dep. of Michael S. Kopreski, M.D. Vol. II, 695:21 – 696:17, 697:2-8, Oct. 11, 2018.)

30. On August 13, 2003, Sanofi received a report of 61-year old female patient from Dr. Mackey's site (patient no. 10517) with "significant hair thinning" ongoing after completion of Taxotere treatment on January 30, 2002. The causality was assessed as "[p]ossibly related to study medication." Sanofi received follow-up information on October 22, 2004, confirming the patient's ongoing Grade 2 alopecia. (*See* Ex. 14, Sanofi_04353202_2279 at 1-2.)

31. On October 24, 2003, Sanofi received a report of 49-year old female patient from Dr. Mackey's site (patient no. 11293) who completed chemotherapy with Taxotere on September 2, 2002. The patient underwent a hair transplant and her alopecia was marked "recovered." Sanofi received a follow-up report on August 4, 2004, noting "the physician observed thinness of hair on top; therefore, grade 1 alopecia continues." (*See* Ex. 31, Sanofi_04353202_2316 at 1-2.)

32. On December 15, 2003, Sanofi received a report of a 60-year old female patient from Dr. Mackey's site (patient no. 10230) who continued to experience "balding [] over the back of the [] head" despite having completed Taxotere chemotherapy treatment more than two years earlier on November 1, 2001. The causality was assessed to be "[r]elated to study medication." Sanofi updated the report in 2005 and 2012, noting the patient had "not recovered" from the alopecia. (*See* Ex. 22, Sanofi_04353202_2327 at 1-2.)

33. On December 15, 2003, Sanofi received another report from Dr. Mackey's site. This report related to a 48-year old female patient (patient no. 10854) whose hair had not regrown despite completing treatment with Taxotere on June 2, 2002. The causality was assessed as "[r]elated to study medication." Sanofi updated the report in 2005 and 2012, noting the patient had "not recovered" from the alopecia. (*See* Ex. 31, Sanofi_04353202_2316 at 1-2; *see also* Ex. 32, Sanofi_06248323.)

34. On March 24, 2004, Sanofi received a report of a 61-year old female from Dr. Mackey's site (patient no. 11714) who continued to experience ongoing hair loss after completion of chemotherapy on October 2, 2002. The causality of the hair loss was assessed to be related to study medication. Sanofi updated the report in 2005 and 2012, noting the patient had "not recovered" from the alopecia. (*See* Ex. 33, Sanofi_04353202_2539 at 1-2.)

35. On July 7, 2004, Sanofi received a report of a 64-year old female from Dr. Mackey's site (patient no. 12994) who completed chemotherapy with Taxotere on May 14, 2003. The patient's alopecia did not resolve, and the causality was assessed as "related to study medication." Sanofi updated the report in 2005 and 2012, noting the patient had "not recovered" from the alopecia. (*See* Ex. 34, Sanofi_04353202_2563 at 1-2.)

36. On August 4, 2004, Sanofi received a report of a 44-year-old female from Dr. Mackey's site (patient no. 12607) who continued to experience Grade 2 alopecia after completing chemotherapy treatment with Taxotere on March 19, 2003. Dr. Mackey's site assessed the causality as "related to study medication." Sanofi likewise assessed causality as "related to study medication." Sanofi updated the report in 2005, 2012, and 2013, noting the patient had "not recovered" from the alopecia and that it remained "ongoing." (*See* Ex. 15, Sanofi_04353202_2566 at 1-2.)

37. Dr. Mackey had at least 80 patients enrolled in clinical study at his site. (TAX-GMA-301 Clinical Study Status March 31, 2005 Spreadsheet, *See* Ex. 35, Sanofi_06116366 at worksheet "IRFs status"; *See* Ex. 36, Sanofi_06116364 (cover e-mail).)

38. Plaintiffs' expert biostatistician, Dr. David Madigan, analyzed data from Sanofi's annual Safety Update Reports from the TAX316 Study, which showed that by 2004 Sanofi was witnessing persisting, unresolved alopecia occur at a 2.42 times higher rate with Taxotere than without it. (Rule 26 Report of Dr. David Madigan, p. 26 at Table 9, Oct. 20, 2019.) This rate jumped to 2.60 in 2005 and remained at 2.60 in all subsequent years. (*Id.*) When the GEICAM data were included in those numbers, the rates increase to 2.47 in 2004 and 2.63 in subsequent years. (*Id.*) Dr. Madigan's calculations for each year are all statistically significant with p-values ranging from 0.013 to 0.020. (*Id.*)

39. Plaintiff Sheena Wright, 18-cv-13183, was first treated with Taxotere in 2009. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

40. Plaintiff Elizabeth Parrish, 17-cv-06248, was first treated with Taxotere in 2008. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

41. Plaintiff Sheriba Alexander, 16-cv-17947, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

42. Plaintiff Judy Gaffney, 18-cv-01330, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

43. Plaintiff Janet Laudat, 16-cv-16898, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

44. Plaintiff Michelle Shearin, 18-cv-13577, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

45. Plaintiff Alice Gray, 17-cv-13938, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

46. Plaintiff Dawn Johnson, 18-cv-12873, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

47. Plaintiff Dorothy Tatum, 18-cv-06065, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

48. Plaintiff Monique Blacknell, 18-cv-10665, was first treated with Taxotere in 2007. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

49. Plaintiffs Mollie Diggs, 16-cv-14524, was diagnosed with cancer in 2001, 2007, and 2009, but only treated with Taxotere in 2009. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

50. Plaintiffs Elaine Rutledge, 17-cv-14521, was diagnosed with cancer in 2005, 2007, and 2015, and treated with Taxotere each time. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

51. Plaintiffs Helen Weeks, 17-cv-14521, was diagnosed with cancer in 1999 and 2009, but only treated with Taxotere in 2009. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

52. Plaintiff Marie Beauchemin, 17-cv-08763, received a course of Taxotere that included treatment both before and after December 15, 2006. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

53. Plaintiff Sylvia Hill, 18-cv-11959, received a course of Taxotere that included treatment both before and after December 15, 2006. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

54. Plaintiff Sue Nicodemus, 18-cv-12093, received a course of Taxotere that included treatment both before and after December 15, 2006. (Voluminous medical records available in MDL Centrality to be appended at the Court's request.)

55. Plaintiff Dorothy Magee pleaded the following causes of action: (I) Strict Products Liability for Failure to Warn; (II) Strict Products Liability for Misrepresentation; (III) Negligence; (IV) Negligent Misrepresentation; (V) Fraudulent Misrepresentation; (VI) Fraudulent Concealment; (VII) Fraud and Deceit; (VIII) Breach of Express Warranty; (IX) Fraud; and (X) Violations of the Louisiana Unfair Trade Practices Act. (*See* Am. Short Form Compl., May 31, 2017, Doc. No. 5, C.A. No. 2:16-cv-15850.)

56. Plaintiff Della Martin has pleaded the following causes of action: (I) Strict Products Liability – Failure to Warn; and (II) Inadequate Warning Under LSA-RS 9:2800.57. (*See* Am. Short Form Compl., Dec. 12, 2017, Doc. No. 5, C.A. No. 2:16-cv-15678.)

57. Plaintiff Sheila Griffith has pleaded the following causes of action: (I) Strict Products Liability for Failure to Warn; (II) Strict Products Liability for Misrepresentation; (III) Negligence; (IV) Negligent Misrepresentation; (V) Fraudulent Misrepresentation; (VI) Fraudulent Concealment; (VII) Fraud and Deceit; and (VIII) Breach of Express Warranty. (*See* Compl., July 27, 2017, Doc. No. 1, C.A. No. 2:17-cv-07174.)

58. Plaintiff Rebecca Mozisek has pleaded the following causes of action: (I) Strict Products Liability for Failure to Warn; (II) Strict Products Liability for Misrepresentation; (III) Negligence; (IV) Negligent Misrepresentation; (V) Fraudulent Misrepresentation; (VI) Fraudulent Concealment; (VII) Fraud and Deceit; and (VIII) Breach of Express Warranty. (*See* Compl., Oct. 16, 2017, Doc. No. 1, C.A. No. 2:17-cv-10715.)

59. Plaintiff Kyna Hunt has pleaded the following causes of action: (I) Strict Products Liability for Failure to Warn; (II) Negligence; (III) Negligent Misrepresentation; (IV) Fraudulent Misrepresentation; (V) Fraudulent Concealment; and (VI) Fraud and Deceit. (*See* Compl., Jan. 23, 2018, Doc. No. 1, C.A. No. 2:18-cv-00714.)

60. Plaintiff Kimberly Lawless has pleaded the following causes of action: (I) Strict Products Liability for Failure to Warn; (II) Negligence; (III) Negligent Misrepresentation; (IV) Fraudulent Misrepresentation; (V) Fraudulent Concealment; and (VI) Fraud and Deceit. (*See* Compl., Nov. 28, 2017, Doc. No. 1, C.A. No. 2:17-cv-13519.)

Dated: February 7, 2020

Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

<i>/s/ M. Palmer Lambert</i><br>
M. PALMER LAMBERT