# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 16-2740<br><br>SECTION: "H" (5) |
| **This document relates to:** Barbara Earnest, No. 16-cv-17144 | ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for New Trial (Doc. 8394). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

The first bellwether trial was held from September 16 through 26, 2019. According to the verdict form, the jury found that Plaintiff Barbara Earnest ("Earnest" or "Plaintiff") did not have permanent chemotherapy-induced alopecia caused by Taxotere.[2] Therefore, the jury did not award Earnest any damages. In the instant Motion, Plaintiff asks the Court to vacate the judgment against Earnest. Plaintiff avers that the Court erroneously admitted

---

[1] Docetaxel is the generic version of Taxotere.
[2] Doc. 8284.

certain evidence from Defendants' expert, Dr. John Glaspy, and that this admission violated Earnest's substantial rights.

Plaintiff takes issue with Dr. Glaspy's reliance upon a certain analysis that Dr. Michael Kopreski performed. As this Court explained in a prior ruling, Dr. Kopreski is a former employee of Defendant Sanofi.[3] Dr. Kopreski was not proffered as an expert for the Earnest trial, but Dr. Glaspy relied on Dr. Kopreski's analysis of a clinical study called the TAX 316 study.

TAX 316 was a 1997 Sanofi clinical trial testing the efficacy of Taxotere in the treatment of adjuvant breast cancer. As part of the trial, participants were followed for 10 years after their treatment with Taxotere. During this period, researchers tracked ongoing adverse events, including alopecia. The study, as reported to the FDA, concluded that roughly 4 percent of the participants experienced "ongoing alopecia." In conjunction with this litigation and in response to a 30(b)(6) deposition notice, Dr. Kopreski performed a re-analysis of the TAX 316 data as it relates to ongoing alopecia. His updated analysis reported that less than 1 percent of study patients experienced "persistent alopecia."

In the instant Motion, Plaintiff avers that because Dr. Glaspy did not independently verify Dr. Kopreski's re-analysis, the jury heard unreliable evidence on causation. Plaintiff therefore asks for a new trial.

**LEGAL STANDARD**

Rule 59 provides that on a motion filed by a party the court may "grant a new trial on all or some of the issues—and to any party—as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in

---

[3] Doc. 7974.

2

an action at law in federal court."[4] Rule 59(a) does not list specific grounds for a new trial.[5] However, the Fifth Circuit has clarified that a new trial may be warranted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[6] "A new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand."[7]

## LAW AND ANALYSIS

Plaintiff's argument centers around this Court's Order and Reasons (the "Order") denying a Motion to Exclude Expert Testimony that Relies Upon Defendants' Employee Dr. Michael Kopreski.[8] In the Order, the Court held that Defendants' experts could rely on Dr. Kopreski's re-analysis during the Earnest trial. The Court cited Federal Rule of Evidence 703 and case law establishing that experts may rely on analyses or studies conducted by others, provided such reliance is reasonable. The Court further rejected Plaintiff's characterization of Dr. Kopreski as a "Trojan horse" whose re-analysis would reach the jury without scrutiny. The Court noted that Dr. Kopreski was deposed three times over the course of six days.

In the instant Motion, Plaintiff emphasizes that Sanofi's expert Dr. John Glaspy relied on Dr. Kopreski's re-analysis at trial but testified that he "didn't

---

[4] Fed. R. Civ. P. 59(a)(1)(A).
[5] *See id.*
[6] Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985).
[7] Learmonth v. Sears, Roebuck and Co., 631 F.3d 724, 730 (5th Cir. 2011) (quoting Foradori v. Harris, 523 F.3d 477, 506–07 (5th Cir. 2008)) (internal quotations omitted).
[8] Doc. 7974.

3

do anything to validate [Dr. Kopreski's work]."[9] Instead, Dr. Glaspy testified that "if the data that's in [Kopreski's re-analysis] is incorrect, then none of my opinions are valid."[10] Plaintiff avers that this Court's Order set "ground rules" that were not followed. They argue that Defendants' experts were required to independently verify Dr. Kopreski's work, and they did not. Because of this, Plaintiff avers that a new trial is warranted.

In response, Defendants aver that the Court properly admitted Dr. Glaspy's testimony. Defendants note that in its Order this Court imposed no requirement on Sanofi to present evidence at trial that Dr. Glaspy had independently verified Dr. Kopreski's re-analysis. Defendants further aver, however, that Dr. Glaspy did in fact discuss his personal knowledge of TAX 316. Dr. Glaspy testified that he was one of the prime investigators behind the TAX 316 study, helping to plan and execute it. According to Defendants, Dr. Glaspy was aware of the study's limitations—the same limitations that were at issue in Dr. Kopreski's re-analysis.

Plaintiff has failed to show that a new trial is warranted. This Court remains convinced that Dr. Glaspy's testimony was appropriate for the jury. His reliance on Dr. Kopreski's work was reasonable under Federal Rule of Evidence 703. Dr. Glaspy testified that he was "heavily" involved in the TAX 316 study.[11] He testified that based on his own review of the TAX 316 results, the numbers were not accurate.[12] As the Court understands, the 10-year report from the TAX 316 study reported that 29 out of 744 participants experienced "ongoing alopecia."[13] However, Dr. Glaspy testified that "there were two ways

---

[9] Doc. 8394.
[10] Doc. 8394.
[11] Transcript at 1986.
[12] *See* Transcript at 2041.
[13] *See* Doc. 7471 at 6.

4

that patients could be on that list of 29 and not have permanent hair loss: one was by being lost to follow-up and actually having their hair recover and it just was never seen; or the hair recovered."[14] Accordingly, Dr. Glaspy knew that the results of TAX 316 were limited. He simply relied on Dr. Kopreski to specifically illuminate those limitations by analyzing each of the 29 cases. Dr. Glaspy was not required to check every aspect of Dr. Kopreski's work for his reliance on the work to be reasonable.[15]

Further, in its Order allowing Defendants' experts to rely on Dr. Kopreski's work, the Court wrote that Plaintiff would have the chance to show the jury that Defendants' experts relied on Dr. Kopreski's re-analysis.[16] The Court wrote that Plaintiff could ask the experts to explain why such reliance was warranted, and "the jury can decide whether to credit the experts' testimony."[17] Plaintiff had this opportunity at trial. Not only did Plaintiff cross-examine Dr. Glaspy about his reliance on Dr. Kopreski's work, but the jury saw Plaintiff's counsel ask Dr. Kopreski about his re-analysis. The jury heard Dr. Kopreski explain why he re-classified certain patients who were among the 29 listed as having ongoing alopecia. He explained, for example, that if a patient had alopecia at the time she died, her alopecia would still be considered ongoing for purposes of TAX 316.[18] The jury had a full picture of Dr. Kopreski's re-analysis and Dr. Glaspy's involvement in TAX 316. The jury could decide for itself whether to rely on the witnesses' testimony.

Lastly, even if the Court erred in allowing Dr. Glaspy to rely on Dr. Kopreski's re-analysis, Plaintiff has not shown "manifest injustice" to warrant

---

[14] Transcript at 2041.
[15] *See* Doc. 7974 ("[E]xperts are permitted to rely on analyses or studies conducted by others, provided such reliance is reasonable.").
[16] Doc. 7974.
[17] Doc. 7974.
[18] Transcript at 1929.

a new trial. Plaintiff presented extensive expert testimony to the jury from many doctors: Dr. David Kessler, Dr. David Madigan, Dr. Laura Plunkett, Dr. Antonella Tosti, Dr. Ellen Feigal, and Dr. Linda Bosserman. Plaintiff has failed to demonstrate that she suffered manifest injustice based on Dr. Glaspy's testimony. Accordingly, the Court sees no reason to grant a new trial.

## CONCLUSION

For the foregoing reasons, the Motion for New Trial (Doc. 8394) is **DENIED**;

**IT IS FURTHER ORDERED** that the Motion for Judgment as a Matter of Law at the Close of Plaintiff's Evidence (Doc. 8273) is **DISMISSED AS MOOT**;

**IT IS FURTHER ORDERED** that the Motion for Judgment as a Matter of Law on Preemption (Doc. 8274) is **DISMISSED AS MOOT**.

New Orleans, Louisiana this 13th day of February, 2020.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE