UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION: "H" (5)

THIS DOCUMENT RELATES TO:

June Phillips, Case No. 2:16-cv-15397.

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. (collectively "Defendants" or "Sanofi"), hereby submit this Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, pursuant to Local Rule 56.1:

**A. Taxotere**

1. Taxotere is a chemotherapy prescribed to treat various forms of cancer, including breast cancer. Second Am. Long Form Master Compl. ¶ 4.

2. Taxotere was first approved for use in the United States in 1996, and its FDA-approved labeling has always warned that hair loss is one of the drug's most common side effects. *Compare* 1996 Taxotere Labeling (Ex. A), *with* 2018 Taxotere Labeling (Ex. B).

3. Taxotere has never been removed from the market, and oncologists continue to prescribe Taxotere to treat potentially life-threatening forms of breast cancer. *See, e.g.*, Sonnier Dep. (Nov. 1, 2018) 59:6-8, 69:14-22 (Ex. C).

B. **Plaintiff's Breast Cancer Diagnosis and Treatment**

4. Plaintiff June Phillips is an 81-year-old resident of New Orleans, Louisiana. Phillips Dep. (Aug. 16, 2018) 8:21-22, 57:6-9 (Ex. D).

5. On October 9, 2013, Plaintiff underwent a lumpectomy to remove a tumor in her left breast; during surgery, her doctor discovered the cancer had metastasized to her lymph nodes. *Id.* 173:23-176:11; Sonnier Dep. 61:20-62:15.

6. The cancer was classified as stage IIB, ER-positive, PR-positive, and HER-2-positive. Phillips Eighth Am. Pl. Fact Sheet at 10-11 (Ex. E). Those factors—including that it had metastasized to her lymph nodes—placed Plaintiff at a "high risk of recurrence." Sonnier Dep. 36:25; 61:20-62:15.

7. Plaintiff's surgeon referred her to oncologist Dr. Scott Sonnier, who advised Plaintiff she had "an aggressive form of cancer." Phillips Dep. 182:2-4.

8. On October 29, 2013, Dr. Sonnier prescribed Plaintiff adjuvant therapy comprising a chemotherapy regimen of Taxotere, Carboplatin, and Herceptin ("TCH"); followed by radiation therapy; followed five years of hormonal therapy (to reduce the risk of recurrence by suppressing hormones that feed tumor growth). *Id.* 179:20-180:24; Sonnier Dep. 71:14-72:15.

9. Adjuvant therapy following surgery improves a patient's chance of disease-free survival and avoiding recurrence, including for patients with Plaintiff's type of breast cancer. Sonnier Dep. 63:1-23.

10. To date, Plaintiff's cancer treatment has been successful; Plaintiff has had no recurrence of her cancer. Sonnier Dep. 78:16-18; Phillips Dep. 90:16-23.

11. If Plaintiff did not receive adjuvant therapy, her risk of recurrence was 40 to 50 percent. Sonnier Dep. 63:6-15.

12. If Plaintiff's breast cancer were to recur, it would be incurable. Sonnier Dep. 62:16-19.

**C.     Dr. Sonnier's Decision to Prescribe a TCH Chemotherapy Regimen**

13. In choosing a chemotherapy regimen for Plaintiff, Dr. Sonnier specifically selected TCH to avoid the "significant cardio toxicity" posed by Adriamycin, which was present in <u>all</u> the alternative preferred chemotherapy regimens. Sonnier Dep. 36:18-37:8; 64:24-66:24.

14. As Dr. Sonnier explained, Adriamycin "is a cardio toxic agent that we wanted to specifically avoid in her case," *id*. 35:18-20, due to Plaintiff's age (75 at the time of treatment) and preexisting cardiac condition, which further increased her risk of cardiotoxicity, *id*. 64:12-66:24.

15. In Dr. Sonnier's opinion, Plaintiff was not an "ideal candidate" for any regimen with Adriamycin. *Id*. 35:14-20.

16. Dr. Sonnier's decision to prescribe a TCH regimen in Plaintiff's case was consistent with the 2013 NCCN Guidelines, which classifies the TCH regimen as a "preferred regimen, especially in those with risk factors for cardiac toxicity." NCCN 2013 Guidelines at MS-35 (Ex. F).

17. When Dr. Sonnier prescribed TCH to Plaintiff, he believed it had "the best risk benefit profile for a patient in that situation." Sonnier Dep. 70:9-13.

18. The addition of the sentence "cases of permanent alopecia have been reported" to the December 2015 labeling did not materially alter Dr. Sonnier's "risk-benefit assessment of Taxotere." *Id*. 59:9-15.

19. Dr. Sonnier offered no testimony that a different warning from Sanofi regarding permanent alopecia and Taxotere would have caused him <u>not</u> to prescribe the TCH regimen to Plaintiff.

21. Today, Dr. Sonnier believes TCH still has "the best risk benefit profile" for a patient in Plaintiff's situation, *id*. 70:14-16, and he would again make the same treatment recommendation for Plaintiff, *id*. 69:14-22 ("Q. If someone with Ms. Phillips' medical history came in to you today with the same tumor type, same medical history, would you make the same recommendation for her treatment? [objection]  A. Yes.").

22. Today, Dr. Sonnier still prescribes Taxotere.  Sonnier Dep. 59:6-8.

23. Dr. Sonnier prefers Taxotere over another taxane known as Taxol because the "neuropathic side effects of [Taxol] can be very severe and very -- can be lifelong and be very debilitating when Taxol is used compared to Taxotere." *Id.* 12:3-13:13, 55:5-13.

**D.    Dr. Sonnier's Awareness of Reports of Taxotere and Permanent Alopecia**

24. In 2013, when he treated Ms. Phillips, Dr. Sonnier knew that "[p]ermanent chemotherapy-induced alopecia is a rare but, none the less, possible side effect associated with many chemotherapy regimens." *Id*. 71:5-10.

25. Between 2008 and 2013, "[Dr. Sonnier] learned that there could have been an association with Taxotere and permanent alopecia, permanent hair loss." *Id.* 17:12-20 (during November 2018 deposition, identifying timeframe as "perhaps five, ten years ago, five to seven years ago"). He first learned of this potential association from lay press articles concerning Taxotere and reports of permanent hair loss.   *Id*. 17:2-4; 17:23-25; 21:13-21.

26. The first lay press articles concerning Taxotere and reports of permanent hair loss were published in 2010, and are identified in Plaintiff's Second Amended Master Complaint.  Rec. Doc. 4407 ¶ 153 (identifying Lisa Priest, *Women who took chemo drug say they weren't warned of permanent hair loss*, The Globe and Mail, Mar. 4, 2010, *available at* https://www.theglobeandmail.com/life/health-and-fitness/women-who-took-chemo-drug-say-they-werent-warned-of-permanent-hair-loss/article572591/); *id*. ¶ 155 (identifying Jim Edwards,

*Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald*, CBS News, Mar. 6, 2010, *available at* https://www.cbsnews.com/news/sanofis-latest-challenge-women-who-say-its-chemotherapy-left-them-permanently-bald/).

### E. Plaintiff's Awareness of the Risk of Permanent Hair Loss

27. Before starting adjuvant therapy, Dr. Sonnier meets with the patient and provides certain information, including his rationale for choosing the specific regimen, and its "benefits" and "risks," including side effects. Sonnier Dep. 23:20-25.

28. On October 29, 2013, Dr. Sonnier discussed with Plaintiff certain risks of the adjuvant treatment, including the "risk of cardiac toxicity, hematologic toxicity, GI toxicity, hair loss, and other matters." *Id.* 30:16-19.

29. At the time, Dr. Sonnier had a discussion with Plaintiff regarding the "potential risk" of "**permanent hair loss**" and Taxotere. *Id.* 31:5-10 ("I believe, and I'm fairly certain, if I can recall correctly here, that at the time of Ms. Phillips' case, that there were some reports about the concern about permanent hair loss. Certainly, we touched on that then as a potential risk."); *see also id.* 48:17-25 ("I believe we had this discussion about reports of permanent hair loss when we talked earlier in 2013.").

30. Dr. Sonnier's general practice in 2013 was to advise patients "that there were some cases that -- where there's some concern about permanent hair loss" and Taxotere, *id.* 32:2-7, based on lay press articles he saw that reported cases of permanent alopecia and Taxotere, *id.* 34:4-5.

31. In February 2014, Plaintiff reviewed and signed an "informed consent" for radiation treatment, which identified risks including "**permanent hair loss.**" Ex. 20 to Phillips Dep. at 00573, attached as Ex. G; *see also* Phillips Dep. 216:8-217:22.

32. Before she started treatment, Plaintiff made the decision, "Whatever it takes to get rid of [the cancer], let's do it." Phillips Dep. 186:15-188:13.

33. Plaintiff offered no testimony that she asked Dr. Sonnier whether there were alternatives to the TCH chemotherapy regimen that would avoid the potential risk of "permanent hair loss."

34. Plaintiff did not ask her doctors whether there were any alternatives to radiation treatment that would avoid the risk of "permanent hair loss." Phillips Dep. 214:16-218:23.

35. Plaintiff understood and accepted the risks discussed by Dr. Sonnier and identified in the informed-consent forms because she was determined to do everything she could to get rid of her cancer. *Id.* 188:5-13, 196:8-10, 201:23-202:8, 217:20-22.

36. Plaintiff also understood that there were no guarantees about her treatment: no guarantees that it would be effective, no guarantees that she would experience particular side effects, and no guarantees that her cancer would not comeback after treatment, even if the initial treatment had been effective. *Id.* 210:20-211:16.

F. **Alternatives to TCH Chemotherapy Regimen**

37. If Plaintiff had asked Dr. Sonnier for a regimen with Adriamycin, he would have had "a serious discussion about the risk of cardiac toxicity," Sonnier Dep. 38:5-6, and told her "I think that's a very risky proposal" and that "*I would not give it*," *id.* 98:3-9 (emphases added). After that discussion, if Plaintiff insisted on a regimen with Adriamycin, Dr. Sonnier "would have felt very concerned, and would have felt that [he] was placing her cardiac status at great risk," *id.* 99:17-19, a risk that was "not acceptable" to him, *id.* 102:15-16, and he would again declined to give the Adriamycin regimen.

38. Instead, Dr. Sonnier would have recommended Plaintiff a non-Adriamycin regimen, which would not have reduced Plaintiff's risk of recurrence to the same degree as TCH. *Id.* 98:10-16.

39. Plaintiff also expressed concerns about possible cardiac side effects. Specifically, Plaintiff testified that she could not say for sure whether she would have taken an alternative chemotherapy regimen that would have negatively affected her heart:

> Q. You would want to know what the effect on your heart would be from the other drug. Is that correct?
>
> A. Yeah. I would want more information.
>
> Q. Before you would agree to take that drug?
>
> A. Yes.
>
> Q. So, without that information you can't say for sure that you would have taken the other drug?
>
> A. **I can't. No. I can't say for sure what I would have done. I don't know what I would have done.**

Phillips Dep. 210:9-19 (emphasis added).

40. Plaintiff also testified that she would have refused to take an alternative chemotherapy regimen that carried a risk of permanent hair loss:

> Q. So I'm not sure I understand your answer. If the other drug had a risk of permanent hair loss, would have refused to take that drug, too?
>
> A. Yes.

Phillips Dep. 135:22-136:1.

41. Dr. Sonnier, however, testified that both Adriamycin and Taxol carried a risk of permanent hair loss, which he knew at the time he treated Plaintiff. Sonnier Dep. 41:15-43:1, 54:3-7, 71:5-10, 105:1-14.

42. There is no evidence Plaintiff would have rejected TCH in favor of a chemotherapy regimen containing Adriamycin.

43. There is no evidence Plaintiff would have rejected TCH in favor of a non-Adriamycin chemotherapy regimen.

44. A reasonable patient in Plaintiff's circumstances would not reject a TCH chemotherapy regimen in favor of an Adriamycin regimen.

7

45. A reasonable patient in Plaintiff's circumstances would not reject a TCH chemotherapy regimen in favor of a non-Adriamycin regimen.

46. A reasonable patient in Plaintiff's circumstances—with knowledge that "cases of permanent alopecia have been reported" with Taxotere—would not reject a TCH chemotherapy regimen in favor of a non-Adriamycin regimen.

47. A reasonable patient in Plaintiff's circumstances would not reject the adjuvant therapy that Dr. Sonnier prescribed in Plaintiff's case.

48. For some patients, there are no reasonable alternative chemotherapy regimens. Sonnier Dep. 25:12-13.

Date: February 14, 2020

                                              Respectfully submitted,

                                              */s/ Douglas J. Moore*
                                              Douglas J. Moore (Bar No. 27706)
                                              **IRWIN FRITCHIE URQUHART & MOORE LLC**
                                              400 Poydras Street, Suite 2700
                                              New Orleans, LA 70130
                                              Telephone: 504-310-2100
                                              Facsimile: 504-310-2120
                                              dmoore@irwinllc.com

                                              Harley Ratliff
                                              Adrienne L. Byard
                                              **SHOOK, HARDY & BACON L.L.P.**
                                              2555 Grand Boulevard
                                              Kansas City, Missouri 64108
                                              Telephone: 816-474-6550
                                              Facsimile: 816-421-5547
                                              hratliff@shb.com
                                              abyard@shb.com

                                              *Counsel for Sanofi Defendants*
                                              *Sanofi US Services Inc. and*
                                              *Sanofi-Aventis U.S. LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*