UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| THIS DOCUMENT RELATES TO: ALL CASES | SECTION "H" (5) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO AMEND PRETRIAL ORDER 70B REGARDING *EX PARTE* CONTACT WITH MDL PLAINTIFFS' PRESCRIBING AND TREATING PHYSICIANS**

Plaintiffs' Opposition relies on several flawed premises and ignores the remainder of Defendants' arguments inconvenient to their position.

First, Plaintiffs incorrectly contend Defendants are alleging Plaintiffs violated the current Order governing *ex parte* contact with prescribing and treating physicians in this litigation. Defendants have not sought to establish Plaintiffs violated PTO 70B but instead have shown that the Order insufficiently protects Defendants from the risk of prejudice when only one side in the case is permitted to meet with critical non-party witnesses.

Second, Plaintiffs argue Defendants are seeking to amend PTO 70B "without a shred of evidence that the process is flawed or has failed the parties in this litigation." (Rec. Doc. 9225, at p. 2). But Plaintiffs ignored and thus failed to address the evidence set forth in the Motion. Plaintiffs say *nothing* in response to Defendants' assertions that the documents shown to the plaintiff's prescribing physician just days before the *Earnest* trial, which were both created by the plaintiff's trial counsel and unrelated to her treatment or care, were improper.[1] Instead, Plaintiffs'

---

[1] In the *Earnest* trial, these documents included (1) product labeling never before seen by Ms. Earnest's prescribing physician, Dr. Carinder; (2) company documents; and (3) Plaintiffs' lawyer-created trial demonstratives that incorporated evidence excluded by the Court. Plaintiffs' Opposition admits counsel for Ms. Earnest showed these documents to Dr. Carinder; however, this is the only discussion about the documents contained in the Opposition. *See* Rec. Doc. 9225 at p.3.

Opposition carefully limits its discussion of *ex parte* contact to the general need to meet with a witness prior to trial, without responding to the problems raised by Defendants. That Plaintiffs do not even attempt to defend this conduct and believe they should be permitted to continue to freely engage in such one-sided efforts to influence non-party physician witnesses confirms that the current process is flawed and needs to be fixed.

Third, Plaintiffs erroneously assert that this Court already approved of their conduct in *Earnest* and foreclosed any amendment to PTO 70B. But this Court did not condone Plaintiffs' counsel's abuse of their ability to meet with Ms. Earnest's prescriber Dr. Carinder before trial and, instead, admonished Dr. Carinder regarding his role at trial immediately before he testified. Nor did the Court have an opportunity to address the broader question of whether PTO 70B adequately protects both sides' rights and the interests of fairness and justice. Moreover, Plaintiffs' Opposition, which makes clear that Plaintiffs intend to repeat their misuse of *ex parte* communications under PTO 70B, provides additional support for Defendants' Motion at this time and preclude such improper conduct before the next round of trials.

Finally, by focusing their Opposition on flawed premises and failing to respond to Defendants' position on the documents provided to the plaintiff's prescriber prior to trial, Plaintiffs avoid addressing the concern raised by Defendants: that, as written, the current Order allows for potential abuse and prejudice—as highlighted by the disclosures and subsequent trial testimony of Dr. Carinder in *Earnest*—and that a modified order should be entered to prevent such circumstances from being repeated in future MDL bellwether trials. (Rec. Doc. 9109-1.) The importance of unbiased testimony by a plaintiff's prescribing and treating physicians at trial warrants a modified order to preserve the reliability of each physician as a fact witness.

### I. The Demonstrated Potential for Abuse and Prejudice Warrants Modification of the Current Physician Contact Order.

Plaintiffs' focus on compliance with the letter of PTO 70B during the *Earnest* trial highlights the need for its modification. The current Order does, in fact, allow Plaintiffs' counsel the unfettered ability to engage in *ex parte* contact with an MDL plaintiff's prescribing or treating physician. The Order likewise includes *no language* to limit Plaintiffs' counsel's ability to provide documents unrelated to the treatment of the plaintiff to the physician.[2] Because the current Order governing *ex parte* contact with physicians does not impose any limitations on such conduct, this Court should amend PTO 70B to avoid further prejudice in future trials.

The most conspicuous instance of inappropriate contact conducted in accordance with PTO 70B was Plaintiffs' trial counsel providing Dr. Carinder with opening statement demonstratives in the days immediately prior to the *Earnest* trial, even after the Court ordered that witnesses be sequestered from trial argument and testimony. Those demonstratives include a "timeline" of contested testimony and evidence previously unknown to Dr. Carinder, which not only mischaracterizes arguments as facts, but also references evidence and testimony plainly excluded under the Court's *in Limine* rulings.[3] Plaintiffs' physicians are meant to be neutral observers providing factual testimony, not mouthpieces for a plaintiff's case theories. Plaintiffs' Opposition takes the position, however, that Plaintiffs' counsel "did not attempt to bias or manipulate Dr. Carinder or any of Ms. Earnest's healthcare providers during the course of this case." (Rec. Doc. 9225, p.5). But Plaintiffs' counsel provides no explanation as to the purpose of showing these

---

[2] In *Earnest*, these documents included: (1) product labeling never before seen by Dr. Carinder; (2) confidential company documents; and (3) various demonstratives from Plaintiff's opening statement—each of which was subject to pending objections by Sanofi at the time.

[3] These include Sanofi's alleged "Facebook monitoring" (violating Rec. Doc. 8201 at 7), "adverse event reports of hair not growing back" and "Sanofi receives 20 adverse event reports of permanent hair loss in the same month" (violating Rec. Doc. 8216), and Foreign Regulatory Actions (violating Rec. Doc. 8201 at 5).

3

demonstratives to a plaintiff's prescribing physician just days before trial if not to shape his or her testimony and align it with their case themes.

Plaintiffs' attempt to characterize their meetings as "expected" witness preparation misses the point entirely. (Rec. Doc. 9225, at p.3). The issue before the Court is not whether counsel generally should be expected to meet with witnesses, but rather how to ensure that the parties are treated fairly and equally in the specific context of communications with Plaintiffs' treating physicians, who they acknowledge are "critical and uniquely important fact witnesses." *Id.* at 11. The problem with PTO 70B, as demonstrated by the first trial, is that it is subject to abuse by allowing Plaintiff's counsel to have discussions with these physicians designed to advance their litigation positions, whereas defense counsel are prohibited from meeting with the doctors at all. This is not routine witness preparation, as Plaintiffs' suggest. It is a one-sided and plainly unfair practice, and Plaintiffs do not offer any valid reason why the Court should permit it to continue.

This Court's order sequestering trial witnesses provides additional support for modifying PTO 70B to prevent improper efforts to influence non-party witnesses. Yet, Plaintiffs make two equally unavailing arguments that fail to respond to the substance of Defendants' Motion on this point. First, in a curious effort to shift focus, Plaintiffs suggest this Court's Sequestration Order was not binding because it was made verbally, as opposed to by written order. Defendants fail to see how a verbal order of the Court is less binding than a written order. Next, Plaintiffs' Opposition argues Defendants "misconstrue the law on sequestration and witness tampering" and contend that a meeting between a fact witness and counsel for a party cannot violate a sequestration order. (Rec. Doc. 9225, pp. 10-11.) Counsel's attempt to distinguish their conduct in the *Earnest* trial from a violation of sequestration order is yet another example of shifting discussion to avoid addressing the substantive problem raised by Defendants.

4

Contrary to Plaintiffs' contention that *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981), is inapplicable because, "in *Miller*, the expert witness received the daily copy transcript of the plaintiff's trial testimony," the Fifth Circuit's language makes it clear that there is no "bright-line" test for violation of the sequestration rule that applies solely to a witness' review of trial transcripts. Rather, the purpose of the rule is to "prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion." *Id.* at 1373. The rule is violated if one side provides a sequestered witness *any document that is intended to shape trial testimony* since the witness "can thoroughly review and study" such a document while formulating his or her testimony. *Id.* Plaintiffs fail to cite a single case to support their position that their counsel is permitted to show sequestered fact witnesses lawyer-prepared, litigation-driven documents.

Further, Defendants are not simply plowing old ground in raising these concerns.[4] Defendants' Motion is the first attempt to modify the Order governing *ex parte* communications with physicians since PTO 70B was entered on November 13, 2018. (Rec. Doc. 5256). The arguments made by Defendants during the initial briefing on the Order governing *ex parte* contact with physicians, which Plaintiffs previously referred to as "unsubstantiated concerns," are now supported by specific references to documents and the transcript from the *Earnest* bellwether trial. (Rec. Doc. 976, at p.1). Plaintiffs also can no longer argue that there is "no evidence of 'woodshedding[,]'" nor can they maintain their position that Defendants are "proposing a solution

---

[4] Plaintiffs take the position that nothing has changed since PTO 70B was entered in November of 2018 and, as such, there is no basis to modify the Order. Plaintiffs claim Defendants advance "the same mischaracterization of the *Earnest* trial that failed to change the Court's mind merely months ago." (Rec. Doc. 9225, at p. 2). But the arguments made by the Sanofi regarding Plaintiffs' counsel's conduct during the *Earnest* trial were not made for the purpose of seeking modification of the Order governing *ex parte* contact with physicians—such an attempt would have been futile during the middle of the first bellwether trial. Thus, the assertion that these *Earnest*-specific arguments have already been rejected by the Court is without merit.

to a problem that does not exist" and "simply have not shown good cause to grant the . . . relief they request." *Id.* at p.3 (internal citations omitted) (emphasis added).[5] Rather, Defendants' Motion demonstrates good cause to modify the current Order governing *ex parte* communications with plaintiffs' prescribing and treating physicians.

> II. **Defendants' Proposed Modification of PTO 70B Will Remedy the Potential for Abuse and Prejudice**

Plaintiffs rely on a handful of cases to generically argue that any limitation on Plaintiff's counsel's *ex parte* contact with prescribing and treating physicians would be "impractical," "unenforceable," or "unreasonable." (Rec. Doc. 9225 at p.6) (internal citations omitted). But they do not dispute that this Court has discretion to limit such communications in the interest of justice or provide any reason that Defendants' proposals are unworkable—specific to this litigation or otherwise. And, Plaintiffs have made no attempt to explain which aspects, if any, of Defendants' alternate proposal are "impractical," "unenforceable," or "unreasonable."

In addition to Defendants' request that this Court prohibit *ex parte* contacts with a plaintiff's prescribing or treating physician—which, for the reasons set forth in the initial Memorandum in Support, Defendants maintain is the most appropriate solution—Defendants' alternative proposal is for the Court to permit a single, limited *ex parte* meeting between Plaintiffs' counsel and the physician. *See* Rec. Doc. 9109-1, p. 10. Pursuant to this alternative proposal, Plaintiffs' counsel would be allowed to hold a single *ex parte* meeting with prescribing or treating physicians of a particular plaintiff, but only *prior to* that physician's deposition. *Id.* at pp.10-13. During this meeting, the only documents that could be shown or provided to the physician are the

---

[5] Plaintiffs' Opposition ignores the fact that, when Defendants raised the issue of the meeting with Dr. Carinder, it *did* change the Court's mind. In fact, Judge Milazzo spoke to Dr. Carinder and another treating physician before their trial testimony to admonish them to provide testimony *limited to* the physician's treatment of Mrs. Earnest. (Rec. Doc. 9109-5, Tr. at pp. 1392:22-1393:8 (Judge Milazzo admonishment to Carinder).

6

medical records of the MDL plaintiff in question. *Id.* Further, the subject matter discussed would be limited to the physician's care and treatment of that Plaintiff. *Id.* Thus, even if the Court declines to implement Defendants' primary proposal, Defendants' alternative proposal would at least prevent Plaintiffs' counsel from continuing to engage in their most problematic conduct in the *Earnest* trial—one-sided discussions with non-party physicians of liability theories and the showing of plaintiff-created litigation-related documents *on the eve of trial*.

Defendants' Motion identifies well-defined and logical parameters as proposed solutions to the issues presented by the current Order governing *ex parte* contact with physicians, and Plaintiffs' Opposition fails to address them. Compliance with either of Defendants' proposals would not be any more onerous, burdensome, or "unenforceable" than the disclosure requirements set forth in the current Order. Plaintiffs have failed to offer any insight into why Defendants' proposals for a modification of PTO 70B—other than, ostensibly, the fact that Plaintiffs' counsel won't be allowed the opportunity to communicate their theories on liability and share litigation-driven documents with a plaintiff's physician prior to trial. Conversely, Defendants have established clear potential for bias and prejudice under the current Order. Accordingly, this Court should grant Defendants' Motion and enter a modified Order governing *ex parte* contact with Plaintiffs' prescribing and treating physicians at this time.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-47p4-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC*


GREENBERG TRAURIG, LLP

*/s/ R. Clifton Merrell*
R. Clifton Merrell
Evan Holden
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-2100
Facsimile: 678-553-2100
merrellc@gtlaw.com
holdene@gtlaw.com

ADAMS AND REESE LLP

/s/ *Deborah B. Rouen*
Deborah B. Rouen
E. Paige Sensenbrenner
One Shell Square
701 Poydras Street, Suite 4500 New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
debbie.rouen@arlaw.com
paige.sensenbrenner@arlaw.com

*Attorneys for Sandoz Inc.*

TUCKER ELLIS LLP

*/s/ Julie A. Callsen*
Julie A. Callsen
Brandon D. Cox
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216-592-5000
Facsimile: 216-592-5009
Julie.callsen@tuckerellis.com
brandon.cox@tuckerellis.com

*Attorneys for Accord Healthcare, Inc.*


DECHERT LLP

*/s/ Mara Cusker Gonzalez*
Mark Cheffo
Mara Cusker Gonzalez
1095 Avenue of the Americas
New York, NY 10036
Telephone: 212-698-3500
mark.cheffo@dechert.com
maracusker.gonzalez@dechert.com

9

CHAFFE McCALL, L.L.P.

/s/ *John F. Olinde*
John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No.1848)
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com
rotolo@chaffe.com

*Attorneys for Hospira, Inc., Hospira Worldwide, LLC formally d/b/a Hospira Worldwide, Inc., and Pfizer, Inc.*

HINSHAW & CULBERTSON LLP

*/s/ Geoffrey M. Coan*
Geoffrey M. Coan
Kathleen E. Kelly
53 State Street, 27th Floor
Boston, MA 02109
Telephone: 617-213-7000
Facsimile: 617-213-7001
gcoan@hinshawlaw.com
kekelly@hinshawlaw.com

*Attorneys for Sun Pharmaceuticals Industries, Inc. f/k/a Caraco Laboratories, Ltd.*

ULMER & BERNE LLP

/s/ *Michael J. Suffern*
Michael J. Suffern
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-698-5064
Telefax: 513-698-5065
msuffern@ulmer.com

*Attorneys for Defendant Actavis Pharma, Inc. and Actavis LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*
Douglas J. Moore
