# EXHIBIT D

```
                                                                    257
 1                     UNITED STATES DISTRICT COURT
 2                     EASTERN DISTRICT OF LOUISIANA
 3

 4
 5   IN RE:   TAXOTERE (DOCETAXEL)
              PRODUCTS LIABILITY           Docket No.: 16-MD-2740
 6            LITIGATION                   Section "H(5)"
                                           September 17, 2019
 7                                         New Orleans, Louisiana
 8   Relates To:  Barbara Earnest,
     Case No.: 16-CV-17144
 9
10   * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
11
                           DAY 2, MORNING SESSION
12               TRANSCRIPT OF JURY TRIAL PROCEEDINGS
             HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
13                   UNITED STATES DISTRICT JUDGE
14
15   APPEARANCES:
16   For the Plaintiffs:       Barrios, Kingsdorf & Casteix, LLP
                               BY:  DAWN BARRIOS, ESQ.
17                             701 Poydras Street
                               Suite 3650
18                             New Orleans, Louisiana 70139
19
20   For the Plaintiffs:       Gainsburgh, Benjamin, David,
                                 Meunier & Warshauer, LLC
21                             BY:  PALMER LAMBERT, ESQ.
                               2800 Energy Centre
22                             1100 Poydras Street
                               New Orleans, Louisiana 70163-2800
23
24
25
```

330

1  regard to permanent hair loss?
2  A. No.
3  Q. And you reviewed the Taxotere label, I think you told us
4  that already, correct?
5  A. Correct.
6  Q. And did you ever find a warning about permanent hair loss
7  in any section?
8  A. In the label that you've shown me.
9  Q. From a regulatory standpoint, is it your belief that that
10 should have been warned about?
11      MR. STRONGMAN: Objection. Leading.
12      THE COURT: Rephrase -- no, overruled.
13      THE WITNESS: Yes, it should have been warned -- Sanofi
14 should have warned clearly and prominently about the risks of
15 irreversible hair loss.
16 EXAMINATION BY MR. NOLEN:
17 Q. What have you reviewed in this case to come here and
18 provide opinions today?
19 A. I've reviewed, you know, thousands and thousands of pages
20 of documents. I have looked at Sanofi's pharmacovigilance
21 database. I have looked at their clinical trials. I've looked
22 at the medical literature. I've read testimony, deposition
23 testimony. I've read company internal correspondence.
24 Q. So I want to be clear about this. Is it your opinion that
25 by 2011, the time that Ms. Earnest took Taxotere, there should

331

1  have been a warning about permanent hair loss?
2  A. Yes.
3  Q. With regard to the information that you have reviewed,
4  have you made a determination about approximately when the
5  information was sufficient to put Sanofi on notice that it
6  needed to provide a permanent hair loss warning?
7  A. Yes, I have made that determination.
8  Q. When, approximately, was that?
9  A. I think not later than about 2009, and probably as early
10 as around 2006.
11 Q. We talked about this earlier, but I need to be clear. Did
12 Sanofi need FDA to tell it to make a labeling change to add
13 permanent to the alopecia warning?
14 A. No, it does not.
15 Q. I think you told us about changes being effected. How
16 does that process work?
17 A. Changes being effected is if you have evidence of a safety
18 hazard, if you have any new information that you think doctors
19 and patients should have, it's one of the ways you can get that
20 information on the label. You can go ahead and make that
21 changes -- that change to the label, even without FDA approval.
22 But then you have to come in to FDA, and FDA ultimately gets to
23 review that label.
24 Q. Okay. But the labeling change itself is not FDA
25 generated; is that correct?

332

1  A. Under a changes being effected, that would be correct.
2  Q. All right. I want to direct your attention back just for
3  a moment, if I could, to the label itself. We talked about how
4  thick this thing is. It's big. It's thick. There is a lot of
5  information here that's aimed at doctors.
6      Is there any information that is aimed towards
7  patients?
8  A. Yes.
9  Q. Where is that information found?
10 A. First -- I do want to underscore this -- I think the
11 entire label, ultimately, is about patients. It's doctors
12 conveying the information to patients.
13     But there is a special section of the label, at the
14 very end of the label, excuse me, that I believe is titled
15 Patient Counseling Information.
16 Q. If I can -- see if I can locate exactly where that starts.
17 Yes. Yes. Right here. It's page 58. 58.
18     It says, Patient Information. Do you see that? Is
19 this what you're referring to?
20 A. Correct. One thing we did when we were at FDA is we
21 encouraged drug companies to do exactly this. We call this the
22 patient package insert, the patient information section of the
23 label.
24 Q. What's the purpose of it?
25 A. Not to supplant the physician/patient discussion, that's

333

1  not the purpose, but to make sure that the patient has the
2  information that he or she would need to make a decision, do I
3  want to take this drug? Do I want to take another drug? Do I
4  want to -- what should I be looking for? What's the correct
5  dose?
6      So it gives basic information that's important --
7  that would be important to consider or to be looking out for or
8  to know about in using a drug.
9  Q. Does it include this section called What are Possible Side
10 Effects?
11 A. It does.
12 Q. That's page 60 of this label. It identifies potential
13 side effects with the drug; is that correct?
14 A. Correct.
15 Q. If we turn to page 61, which is the next page, do you see
16 a warning about hair loss?
17 A. Yes.
18 Q. Under the most common side effects of Taxotere include --
19 and we've got that list, again -- it looks like diarrhea, rash,
20 nausea and vomiting, and hair loss. Right?
21 A. Correct.
22 Q. Is there anywhere in this patient information that
23 permanent hair loss was labeled?
24 A. No.
25 Q. So we're clear, I want to be sure that we're entirely

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)   *
PRODUCTS LIABILITY LITIGATION   *   Docket No.: 16-MD-2740
                                *   Section "H(5)"
                                *   New Orleans, Louisiana
Relates to: Barbara Earnest    *   September 17, 2019
Case No.: 16-CV-17144           *
* * * * * * * * * * * * * * * *

DAY 2 - AFTERNOON SESSION
TRANSCRIPT OF JURY TRIAL BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:    Barrios Kingsdorf & Casteix, LLP
                       BY: DAWN M. BARRIOS, ESQ.
                       701 Poydras Street
                       Suite 3650
                       New Orleans, Louisiana 70139

For the Plaintiffs:    Gainsburgh Benjamin David Meunier
                       & Warshauer, LLC
                       BY: M. PALMER LAMBERT, ESQ.
                       1100 Poydras Street
                       Suite 2800
                       New Orleans, Louisiana 70163

For the Plaintiffs:    Pendley Baudin & Coffin, LLP
                       BY: CHRISTOPHER L. COFFIN, ESQ.
                       1100 Poydras Street
                       Suite 2505
                       New Orleans, Louisiana 70163

OFFICIAL TRANSCRIPT

## Page 2

APPEARANCES:

For the Plaintiffs:    Gibbs Law Group, LLP
                       BY: KAREN BARTH MENZIES, ESQ.
                       6701 Center Drive West
                       Suite 1400
                       Los Angeles, California 90045

For the Plaintiffs:    Bachus & Schanker, LLC
                       BY: J. KYLE BACHUS, ESQ.
                           DARIN L. SCHANKER, ESQ.
                       1899 Wynkoop Street
                       Suite 700
                       Denver, Colorado 80202

For the Plaintiffs:    Fleming Nolen & Jez, LLP
                       BY: RAND P. NOLEN, ESQ.
                       2800 Post Oak Boulevard
                       Suite 4000
                       Houston, Texas 77056

For the Plaintiffs:    DAVID F. MICELI, LLC
                       BY: DAVID F. MICELI, ESQ.
                       Post Office Box 2519
                       Carrollton, Georgia 30112

For the Plaintiffs:    Morgan & Morgan, P.A.
                       BY: EMILY C. JEFFCOTT, ESQ.
                       700 S. Palafox Street
                       Suite 95
                       Pensacola, Florida 32502

For the Sanofi         Irwin Fritchie Urquhart
Defendants:            & Moore, LLC
                       BY: DOUGLAS J. MOORE, ESQ.
                       400 Poydras Street
                       Suite 2700
                       New Orleans, Louisiana 70130

OFFICIAL TRANSCRIPT

## Page 3

APPEARANCES:

For the Sanofi     Shook Hardy & Bacon, LLP
Defendants:        BY: HARLEY V. RATLIFF, ESQ.
                       JON A. STRONGMAN, ESQ.
                   2555 Grand Boulevard
                   Kansas City, Missouri 64108

For the Sanofi     Shook Hardy & Bacon, LLP
Defendants:        BY: HILDY M. SASTRE, ESQ.
                   201 Biscayne Boulevard, Suite 3200
                   Miami, Florida 33131

Official Court Reporter:    Jodi Simcox, RMR, FCRR
                            500 Poydras Street
                            Room HB-275
                            New Orleans, Louisiana 70130
                            (504) 589-7780

Proceedings recorded by mechanical stenography, transcript produced by computer.

OFFICIAL TRANSCRIPT

## Page 4

I N D E X

                                                      Page

DAVID KESSLER
   Direct Examination By Mr. Nolen:            381
   Cross-Examination By Mr. Strongman:         388
   Redirect Examination By Mr. Nolen:          506

PROFFER
   Examination By Mr. Strongman:               528

PROFFER
   Examination By Mr. Miceli:                  534

OFFICIAL TRANSCRIPT

## Page 17

393

DAVID KESSLER - CROSS

1:19PM 1  to offer a case-specific opinion? You understand what that
1:19PM 2  means in the context of litigation; correct?
1:19PM 3  A.  I did go to law school. Yes, I think I understand that.
1:19PM 4  Q.  And so you're not here talking about Ms. Earnest today;
1:19PM 5  correct?
1:19PM 6  A.  Please, you're exactly correct, Counselor. Others will
1:19PM 7  testify. I'm here to talk about the framework for drug safety.
1:19PM 8  Q.  But you do know, Doctor, that Ms. Earnest is cancer-free
1:19PM 9  today? You do know that; correct?
1:19PM10 A.  Again, I'm under oath.
1:19PM11 Q.  You don't know?
1:19PM12 A.  I will leave it to her doctors to talk.
1:20PM13 Q.  Nobody told you that?
1:20PM14 A.  Again, I don't want to make any statements. People have
1:20PM15 told me. I've looked at certain things. But please have her
1:20PM16 doctors please testify. I just want to be very respectful and
1:20PM17 stay within the areas that I have studied.
1:20PM18 Q.  Right. I understand that, Doctor.
1:20PM19     But you don't you think it would have been important
1:20PM20 to know that Ms. Earnest is cancer-free today?
1:20PM21     Isn't that the kind of information you'd want to know
1:20PM22 before you come into this courtroom and offer an opinion in
1:20PM23 Ms. Earnest's case?
1:20PM24 A.  So I did ask for all the medical records. But I think, to
1:20PM25 answer the question whether Sanofi should have warned, I think

OFFICIAL TRANSCRIPT

## Page 18

394

DAVID KESSLER - CROSS

1:20PM 1  that question is independent.
1:20PM 2  Q.  So it's not important to know whether Ms. Earnest is
1:20PM 3  cancer-free? Just yes or no.
1:20PM 4      MR. NOLEN: Objection. Mischaracterizes the
1:20PM 5  testimony.
1:20PM 6      THE COURT: Overruled. I think he can answer the
1:20PM 7  question under cross-examination.
1:20PM 8      THE WITNESS: There are a lot of things that are
1:20PM 9  important in this case, but they're beyond my testimony.
1:21PM10 BY MR. STRONGMAN:
1:21PM11 Q.  Okay. Do you know who Dr. James Carinder is?
1:21PM12 A.  I believe he is the oncologist, yes.
1:21PM13 Q.  All right. And so in this case, sitting here today,
1:21PM14 you're also not offering any opinions about Dr. Carinder;
1:21PM15 correct?
1:21PM16 A.  That would be correct. That's beyond the scope of my
1:21PM17 expertise or my assignment.
1:21PM18 Q.  But what we can say for sure is that you're not coming in
1:21PM19 here offering any criticisms of Dr. Carinder for using
1:21PM20 Taxotere; correct?
1:21PM21 A.  I would not do that, no.
1:21PM22 Q.  And do you know anything about the dose that Dr. Carinder
1:21PM23 used when he treated Ms. Earnest?
1:21PM24 A.  I have some information on that. I've inquired, but
1:21PM25 again --

OFFICIAL TRANSCRIPT

## Page 19

395

DAVID KESSLER - CROSS

1:21PM 1  Q.  Not within the scope of your opinions?
1:21PM 2  A.  It depends on Your Honor -- everything is up to Your
1:22PM 3  Honor.
1:22PM 4  Q.  Okay.
1:22PM 5  A.  I mean, I would -- I'd respectfully stay away from that
1:22PM 6  and let others testify about, but I have some familiarity with
1:22PM 7  that.
1:22PM 8  Q.  Now, setting aside Dr. Carinder for a minute.
1:22PM 9      When a prescription drug like Taxotere is approved,
1:22PM10 in the label -- and we saw the label -- there are dosages and
1:22PM11 regimens specifically called out; is that correct?
1:22PM12 A.  Correct.
1:22PM13 Q.  And so when you're prescribing something on-label, so
1:22PM14 that's within the four corners of that drug label, that's using
1:22PM15 the dose that's set out in the label; correct?
1:22PM16 A.  A little more complicated than that.
1:22PM17 Q.  So let me just ask it this way: In the adjuvant breast
1:22PM18 cancer setting -- are you with me so far?
1:22PM19 A.  I am.
1:22PM20 Q.  Okay. So adjuvant breast cancer, what we're dealing with
1:22PM21 is chemotherapy treatment after there has been some sort of
1:22PM22 intervention surgically, normally; is that correct?
1:23PM23 A.  Correct. That's the definition of "adjuvant."
1:23PM24 Q.  And so we've we have a patient who's had surgery, and now
1:23PM25 they're undergoing chemotherapy; is that correct?

OFFICIAL TRANSCRIPT

## Page 20

396

DAVID KESSLER - CROSS

1:23PM 1  A.  Correct.
1:23PM 2  Q.  Okay. And you understand that Taxotere has indication in
1:23PM 3  that setting; is that correct?
1:23PM 4  A.  Yes. And that's generally where off-label attaches to. I
1:23PM 5  mean, it's for a certain type of breast cancer. That's usually
1:23PM 6  how I would use off-label. You're using "off-label" with
1:23PM 7  regard to dose.
1:23PM 8  Q.  Very good. But you know that, in the approval for
1:23PM 9  Taxotere, correct, that the regimen that was approved was T
1:23PM10 with A with C all together; correct?
1:23PM11 A.  Correct.
1:23PM12 Q.  Okay. And the dose of the T -- so that's the dose of the
1:23PM13 Taxotere -- in that regimen was approved at 75 milligrams per
1:23PM14 meter squared in the adjuvant setting; correct?
1:23PM15 A.  That's not entirely correct. Times how many doses? So
1:24PM16 that's what's key.
1:24PM17 Q.  Yeah.
1:24PM18 A.  Because you have to look at cumulative dose, right. So it
1:24PM19 gets a little more complicated than --
1:24PM20 Q.  Understood. Understood.
1:24PM21 A.  It's the dose times the number of treatments that really
1:24PM22 is key. Oncology has its own complexities, I think it's fair
1:24PM23 to say.
1:24PM24 Q.  Very good. But the dosage that was included in the
1:24PM25 label -- and we're talking about a dose that's given how many

OFFICIAL TRANSCRIPT