# EXHIBIT L

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)    *
       PRODUCTS LIABILITY      * Docket No.: 16-MD-2740
       LITIGATION              * Section "H(5)"
                               * August 8, 2019
Relates To 16-CV-17144         * New Orleans, Louisiana
* * * * * * * * * * * * * * * * *

TRANSCRIPT OF ORAL ARGUMENT
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:   Barrios, Kingsdorf & Casteix, LLP
                      BY: DAWN BARRIOS, ESQ.
                      701 Poydras Street
                      Suite 3650
                      New Orleans, Louisiana 70139

                      Gainsburgh, Benjamin, David,
                        Meunier & Warshauer, LLC
                      BY: PALMER LAMBERT, ESQ.
                      2800 Energy Centre
                      1100 Poydras Street
                      New Orleans, Louisiana 70163-2800

## Page 2

APPEARANCES:
For Plaintiffs:       Simmons Hanly Conroy
                      BY: DAVID F. MICELI, ESQ.
                      One Court Street
                      Alton, Illinois 62002

                      Gibbs Law Group, LLP
                      BY: KAREN BARTH MENZIES, ESQ.
                      400 Continental Boulevard
                      6th Floor
                      El Segundo, California 90245

                      Gibbs Law Group, LLP
                      BY: ANDRE MURA, ESQ.
                      505 14th Street, Suite 1110
                      Oakland, CA 94612

                      Morgan & Morgan, P.A.
                      BY: EMILY C. JEFFCOTT, ESQ.
                      700 S. Palafox Street
                      Suite 95
                      Pensacola, Florida 32502

                      Williams Hart Boundas Easterby,
                      BY: BRIAN A. ABRAMSON, ESQ.
                      8441 Gulf Freeway, Suite 600
                      Houston, Texas 77017

                      Bachus & Schanker, LLC
                      BY: DARIN SCHANKER, ESQ.
                      1800 Wynkoop Street
                      Suite 700
                      Denver, Colorado 80202

## Page 3

APPEARANCES:

For Sanofi S.A.:      Irwin Fritchie Urquhart
                        & Moore, LLC
                      BY: DOUGLAS J. MOORE, ESQ.
                      400 Poydras Street, Suite 2700
                      New Orleans, Louisiana 70130

                      Shook Hardy & Bacon, LLP
                      ADRIENNE L. BYARD, ESQ.
                      JON STRONGMAN, ESQ.
                      TORREY M. PETERSON, ESQ.
                      2555 Grand Boulevard
                      Kansas City, Missouri 64108

Official Court Reporter:   Jodi Simcox, RMR, FCRR
                           500 Poydras Street
                           Room B-406
                           New Orleans, Louisiana 70130
                           (504) 589-7780

Proceedings recorded by mechanical stenography, transcript produced by computer.

## Page 4

I N D E X

                                                Page

GENERAL CAUSATION                                  6

SPECIFIC CAUSATION                                55

PREEMPTION                                        79

Page 113

1  to that that we are not going to go beyond the 2015 label in
2  the Earnest case.
3         So this entire discussion about the warnings and
4  precautions and whether the label could have included a warning
5  in that section versus the adverse reaction section, which we
6  know -- I mean, there isn't any dispute about the adverse
7  reaction section. That dispute is academic. It's not
8  presented in the Earnest case.
9         That's a legal controversy that's going to come
10 up later potentially in the litigation when you have a
11 plaintiff who was administered the drug with the 2015 label.
12 Because at that point, the label says -- has language in the
13 adverse reaction section, but not in the warnings and
14 precautions section, and therefore the argument there is
15 different -- the preemption argument is quite different.
16        So you don't have to address any of these
17 arguments in the Earnest case, especially now that we've told
18 the courts that we don't plan to go beyond the 2015 label. So
19 all these arguments are -- there's no legal controversy about
20 the meaning of preemption in the Earnest case.
21        And you're essentially being asked to render an
22 advisory opinion about what the FDA might have done had sanofi
23 actually asked to change the label for the warnings and
24 precautions. It never asked the FDA or -- and it never sought
25 unilaterally through the changes being effected process to

Page 114

1  change the label to warn in the warnings and precautions. And
2  I'll talk a little bit more about that, but that's an issue
3  that's going to come up later.
4         I'm happy to answer any questions about that
5  specific point before turning --
6         THE COURT: Well, I think what I heard from sanofi is
7  that your expert's going to say that belonged in the warnings.
8         MR. MURA: And I just told you, we've represented no.
9  The experts --
10        THE COURT: Do you have expert testimony that say
11 that this label needed to be changed and we --
12        MR. MURA: Our expert testimony also concerns the
13 adverse reaction section. And so that's at Kessler paragraphs
14 109, 126, 133 to 139, 149, I believe it's 154, 164 to 65. This
15 is in our response to the notice of supplemental authority.
16 There's significant testimony from Dr. Kessler about the
17 adverse reaction section. And there really isn't any debate.
18 If you read sanofi's motion on preemption, they say, "Our issue
19 is with any plaintiff who goes beyond the 2015 label."
20        They take no -- that's on page 2. They take no
21 issue with a plaintiff who's arguing that the label was
22 inadequate because it didn't include language in the adverse
23 reaction section. So there can be no preemption -- there's no
24 preemption argument before the Court with respect to that.
25        And Dr. Kessler can testify about the adverse

Page 115

1  reaction section. He discusses it in his report. So I don't
2  think there's a legal controversy here that the Court needs to
3  address given the representation that we've made, and given the
4  nature of -- the limited nature of the preemption motion that
5  sanofi has filed.
6         THE COURT: Okay.
7         MR. MURA: But I would like to respond on the merits
8  to the arguments that the Court will see later with respect to
9  Albrecht and Wyeth v. Levine. I do think that -- I feel like
10 I'm back in 2009 in the sense that so many of the arguments
11 that sanofi made today were the exact arguments that Wyeth made
12 before the U.S. Supreme Court. They said, "Look, we're working
13 together with the FDA. We present them all the information.
14 There's no information missing. And the FDA didn't tell us to
15 make these changes to the label."
16        And what the Supreme Court said in Wyeth against
17 Levine is, "The manufacturer is primarily responsible at all
18 times for the content of the label." So you asked the
19 question, "Don't you have to do an analysis?" And the answer
20 to that is yes. And you can just look at Wyeth against Levine.
21        So what the Court said there is, okay. There
22 were about 20 incidents that presented the injury, and the
23 company was aware of this. And so the question was, you know:
24 Was it enough that Wyeth had submitted all the information over
25 time to the FDA and had worked with the FDA to change the

Page 116

1  drug's label over time?
2         And the court said, "Wyeth could have analyzed
3  the accumulating data and added a stronger warning." It just
4  didn't. And so it couldn't meet the first aspect of the Levine
5  and Albrecht tests. It couldn't show clear evidence because it
6  couldn't prove that it had actually fully informed the FDA.
7         And one of the ways you inform the FDA is
8  through a label change, by either proposing a label change
9  through the prior approval supplement process, or unilaterally
10 changing the label, and then it's up to the FDA. The FDA can
11 then reject that label. Right? And so if the FDA then rejects
12 that label through a considered and formal process --
13        THE COURT: Mr. Mura, when do you think the label
14 should have been changed?
15        MR. MURA: Well, Dr. Kessler's testified, and he gave
16 a -- I think it should have been changed as early as 2006.
17 There's evidence of that. And there's a Sedlacek report. I'm
18 happy to go through that. It's in our statement of facts. But
19 we only have to provide a case specific response based on the
20 date of administration.
21        THE COURT: Right, which is for Ms. Earnest.
22        MR. MURA: So for Ms. Earnest, certainly by 2011, and
23 that is the only opinion that Dr. Kessler needs to give with
24 respect to Ms. Earnest.
25        Sanofi has said that this is contrived because