UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                      MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                                                     SECTION "H" (5)

THIS DOCUMENT RELATES TO
Kahn v. Sanofi-Aventis, et al, Case No. 2:16-cv-17039

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.2, Plaintiff, Elizabeth Kahn, submits the following Response to Defendants' Statement of Facts in Support of their Motion for Summary Judgment:

1. Admitted.

2. Admitted.

3. Admitted insofar as Ms. Kahn elected to participate in the NSABP B-40 clinical trial. However, the use of Taxotere, in combination with doxorubicin and cyclophosphamide (AC), within NSABP B-40 was considered to be the standard of care and was not "experimental." Rather the trial sought to evaluate the addition of Avastin (bevacizumab) to "a standard treatment for breast cancer" that included Taxotere. The addition of Avastin was considered to be one of the main experimental components. Ms. Kahn was enrolled in Group 2B which meant she would receive three phases of treatment. Ex. A, Kahn NSABP Clinical Trial Consent Form at NSABP at 000022.

4. Admitted insofar as the clinical trial's consent form stated that "hair loss" was a likely side effect associated with four of the drugs she would receive, namely Taxotere, doxorubicin, cyclophosphamide, and Xeloda. However, the reference to "hair loss" was believed to be temporary in nature as the true risk of permanent hair loss posed by Taxotere was being actively concealed. Importantly, the consent form did not list "hair

1

loss" as a risk associated with the use of Avastin (bevacizumab) because hair loss is not a side effect of Avastin. Ex. A, Kahn NSABP Clinical Trial Consent Form at 000032-38. *See also* Avastin prescribing information dated 2008 and 2019, attached as Ex. B and Ex. C.

5. Disputed. The language in the consent form stating that side effects may never go away was intended to warn of potentially unknown side effects. At the time Ms. Kahn signed her consent form, the risk of permanent hair loss posed by the use of Taxotere was known to Sanofi. Rather than disclosing this information to medical professionals, so that it could be implemented into the clinical trial's informed consent forms, Sanofi actively concealed this information and failed to disclose its true knowledge of the risk to both consumers and medical professionals within the United States. Outside of the United States, information pertaining to the risk of permanent hair loss was included in informed consent forms. *See* Ex. D, Docetaxel-L-00713 Consent Form. Despite Sanofi's knowledge of the risk of permanent hair loss at the time Ms. Kahn signed her consent form (and after), Sanofi concealed this information from the U.S. medical community and consumers. *See* Ex. E, Sanofi_01035459, Ex. F, Sanofi_00792534, Ex. G, Sanofi_02645200, Ex. H, Sanofi_03336652, Ex. I, Sanofi_043353204, Ex. J, Sanofi_02540992 at 4, Ex. K, Sanofi_02983328, Ex. L, Sanofi_04864365; Ex. M, Sanofi_01112867, Ex. N, Sanofi_00837648, Ex. O, Sanofi_05207927.

6. Admitted only insofar as Ms. Kahn reviewed and initialed each page of her consent form.

7. Admitted that Ms. Kahn began her first round of cytotoxic chemotherapy on May 29, 2008 with a combination of Taxotere and Xeloda. Ms. Kahn was also given Avastin

at this time. However, Avastin is not cytotoxic chemotherapy. Avastin, as defined in the consent form, is not chemotherapy. Rather, Avastin is angiogenesis inhibitor. "Angiogenesis inhibitors and chemotherapy work in different ways. Bevacizumab [Avastin] keeps the tumor from being able to make new blood vessels. Without new blood vessels, the growth of the tumor is slowed. Chemotherapy drugs kill cancer cells more directly." Ex. A, Kahn NSABP Clinical Trial Consent Form at 000022.

8. Admitted that Ms. Kahn lost her hair in June of 2008 following her first administration of Taxotere at the end of May 2008.

9. Admitted that Ms. Kahn lost her eyebrows and eyelashes after receiving her first treatment of Taxotere.

10. Admitted that Ms. Kahn expected to have temporary hair loss as a result of undergoing chemotherapy, and she anticipated that at some point after completing chemotherapy she would re-grow a full head of hair. Ex. P, Deposition of Kahn, Dec. 7, 2017 ("Kahn Dep.") at 217:10-219:18.

11. Disputed. Ms. Kahn attributed her initial hair loss (i.e., her hair falling out) to her first round of toxic chemotherapy. However, Ms. Kahn believed her hair loss would only be temporary and expected that after finishing toxic chemo, which consisted of the first two phases and not the third phase of Avastin only, that her hair would begin to regrow. *Id.* at 228:17-290:22. Phase 1 included the cytotoxic chemotherapy agents of Taxotere (docetaxel), Xeloda (capecitabine) along with a non-cytotoxic chemotherapy angiogenesis inhibitor Avastin (bevacizumab). Phase 2 included the cytotoxic chemotherapy agents of Adriamycin (doxorubicin) and cyclophosphamide along with non-cytotoxic chemotherapy angiogenesis inhibitor Avastin (bevacizumab). Phase 1

and 2 were completed in October 2008. She then underwent surgery in December 2008. After completing surgery, she continued to receive in Phase 3 additional rounds of non-cytotoxic chemotherapy angiogenesis inhibitor Avastin (bevacizumab). Ex. A, Kahn NSABP Clinical Trial Consent Form at 000027. However, Ms. Kahn did not know what had caused of her lack of hair regrowth, as she had taken various drugs during the course of her cancer treatment, and did not attribute the lack of regrowth to Taxotere until 2016. Ex. P, Kahn Dep. at 259:1-260:14.

12. Admitted.

13. Admitted.

14. Admitted that Ms. Kahn completed treatment with Avastin in July 2009. Disputed to the extend it suggests that Avastin was chemotherapy and/or was associated with hair loss.

15. Disputed. Ms. Kahn was not in the "middle" of cytotoxic chemotherapy treatment, associated with temporary hair loss, in April of 2009. Rather, Ms. Kahn's cytotoxic chemotherapy treatments with Taxotere, Xeloda, Adriamycin, and Cyclophosphamide, which are known to be associated with chemotherapy induced temporary hair loss, ended in October of 2008. By the time Ms. Kahn visited her gynecologist, Dr. Margaret Roberie, in April of 2009 she had been off of cytotoxic chemotherapy for approximately six months. Ms. Kahn recalls asking Dr. Roberie why her hair had not fully re-grown and being advised by Dr. Roberie that her hair loss might be caused by her age. Ex. P, Kahn Dep. at 257:9-258:5. Dr. Roberie confirmed during the course of her deposition that she did not dispute such testimony, but that she did not make any differential assessment or diagnosis of Ms. Kahn's hair loss. However, Dr. Roberie did

testify that after completing chemotherapy, Ms. Kahn's hair has been noticeably thin, with her scalp visible, for an extended and prolonged period of time. Ex. Q, Deposition of Roberie, Feb. 21, 2020 ("Roberie Dep.") at 139:3-13.

16. Disputed. Ms. Kahn asked Dr. Roberie why her hair, following cytotoxic chemotherapy, looked so thin. She did not ask Dr. Roberie when it would regrow, rather she asked her treating oncologist Dr. Zoe Larned (sometime in 2009 or 2010) when her hair would fully regrow, but Dr. Larned was unable to provide her with a specific timeframe. Ex. P, Kahn Dep. at 255:8-258:5.

17. Disputed. Dr. Roberie advised Ms. Kahn that her thin hair might be in part due to her age. Ms. Kahn was shocked by this suggestion as she was only in her early 50's at the time. *Id*. at 257:9–258:5. Dr. Roberie never performed any type of differential diagnosis on the potential cause of Ms. Kahn's underlying permanent hair loss. Ex. Q, Roberie Dep. at 128:2-131:4, 141:17-142:14, 146:1-11. Ms. Kahn then followed up with Dr. Larned about when her hair would fully regrow. Dr. Larned was unable to provide a specific timeline so Ms. Kahn held out hope that over the course of time her hair would fully regrow. Ex. P, Kahn Dep. at 255:2-257:9.

18. Disputed. Ms. Kahn completed cytotoxic chemotherapy, associated with temporary hair loss, in October of 2008. At the time Ms. Kahn saw Dr. Larned in November of 2009, Ms. Kahn had not received cytotoxic chemotherapy in over a year. Although Ms. Kahn completed her infusions of Avastin in July of 2009, Avastin is not known to cause or associated with hair loss.

19. Admitted that Ms. Kahn did ask Dr. Larned when she might expect her hair to fully re-grow and Dr. Larned was unable to provide a specific timeline. Ex. P, Kahn Dep. at 255:8-258:5. This is the epitome of a disputed material fact for the jury.

20. Disputed. *See* responses to #s 4, 7, 11, 14 & 15, *supra*. Further, Ms. Kahn's inquiries with Dr. Roberie and Dr. Larned occurred six months or more after her completion of cytotoxic chemotherapy. In addition, Ms. Kahn was advised by a dermatologist in July of 2009 that she might try taking Biotin to encourage faster hair regrowth. Ex. R, Continuation Deposition of Kahn, Jan. 31, 2018 ("Kahn Dep. II") at 44:9-45:21. Ms. Kahn also testified that her doctors never suggested there was any permanent condition that she needed to treat. Ex. P, Kahn Dep. at 318:4-15. Only as a result of this litigation has Dr. Larned started warning about the potential risk of permanent hair loss with Taxotere. Ex. S, Deposition of Larned, Feb. 21, 2018 ("Larned Dep.") at 109:12-110:05.

21. Admitted that Ms. Kahn held out hope that after completing "toxic" chemotherapy her hair would fully re-grow. Ex. P, Kahn Dep. at 229:11 – 230:15.

22. Admitted that Ms. Kahn's hair has never fully regrown following toxic chemotherapy. Although her hair color and texture is the same, her overall hair density is markedly less than it was prior to her toxic chemotherapy treatments.

23. Admitted that Ms. Kahn lost her eyebrows during toxic chemotherapy with Taxotere and they have never regrown. She also admits she uses makeup to conceal this loss by drawing her eyebrows daily.

24. Admitted that Ms. Kahn lost her eyelashes during toxic chemotherapy and that she has had limited regrowth of her eyelashes.

25. Admitted insofar as Ms. Kahn regularly attended her follow up oncology appointments with Dr. Larned, and that Dr. Larned documented Ms. Kahn's thin hair.

26. Disputed. In April of 2009, approximately six months after completing cytotoxic chemotherapy in October of 2008, Ms. Kahn began making active inquiries as to why her hair had not fully regrown. From April 2009 to April 2010, Ms. Kahn made at least three separate inquiries regarding the underlying cause of her hair loss with Dr. Roberie, the timeline in which her hair might fully regrow with Dr. Larned, and potential treatments to accelerate regrowth with her dermatologist. Ex. P, Kahn Dep. at 255:2-257:9; Ex. R, Kahn Dep. II at 44:9-45:21.

27. Disputed. Ms. Kahn made at least three separate inquiries after six months post completion of toxic chemotherapy. These inquiries constitute a reasonable inquiry, or, at the very least, are genuine issues of material fact for a jury to consider the reasonableness of her investigation. However, due to Defendants active concealment of its true knowledge of the potential risk of permanent hair loss associated with Taxotere, Ms. Kahn was unable to discover that her hair loss was in fact permanent and had been caused by Taxotere until she learned of an advertisement regarding lawsuits alleging Taxotere could cause permanent hair loss. Ex. P, Kahn Dep. at 255:2-257:9; Ex. R, Kahn Dep. II at 44:9-45:21.

28. Admitted that Ms. Kahn filed a lawsuit in December of 2016, roughly six months after learning of the connection between Taxotere and permanent hair loss. This lawsuit was timely.

29. Disputed to the extent that it is suggested or implied that Ms. Kahn's infusions of Avastin constitute toxic chemotherapy that would be associated with known temporary

hair loss. As defined in the informed consent form, Avastin is not a toxic chemotherapy. In addition, Avastin is not associated with hair loss. Ms. Kahn testified in her deposition that she believed her hair would regrow following toxic chemotherapy and she clarified that Avastin itself was not considered to be a part of toxic chemotherapy treatments. Ex. P, Kahn Dep. at 177:17-178:3, 229:11-230:15.

30. Disputed. Per Ms. Kahn's own definition, her hair should have fully grown following the completion of "toxic" chemotherapy. *Id.* at 255:2-257:9; Ex. R, Kahn Dep. II at 44:9-45:21. As defined by her clinical trial consent form, Ms. Kahn's use of Avastin is not "chemotherapy." Ex. A, Kahn NSABP Clinical Trial Consent Form at 000022. In addition, the Amend Master Complaint discusses cytotoxic chemotherapy. It is the cytotoxic chemotherapies which target and destroy other rapidly dividing cells, such as hair. Avastin is not a cytotoxic chemotherapy. Therefore, in light of the Amended Master Complaint, Ms. Kahn's own understanding, and the information contained with the informed consent clearly demonstrate that Ms. Kahn completed cytotoxic "chemotherapy" in October of 2008 and her three inquires, from April 2009 to April 2010, were timely.

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN DISPUTE**

1. Whether Ms. Kahn has permanent hair loss?[1]
2. Whether Ms. Kahn suffers from permanent chemotherapy induced alopecia (PCIA)?[2]
3. Whether Taxotere can cause PCIA? *See* Doc. 961, Sanofi's Answer to First Amended Master Long Form Complaint generally denying that their products "cause Plaintiffs'

---

[1] While Sanofi has elected not to file an individual answer to Ms. Kahn's Short Form Complaint, as authorized by PTO 15 (¶ I), Plaintiff anticipates Sanofi will not admit this factual allegation.
[2] *Id.*

8

alleged injuries and damages," and denying "any wrongdoing or liability whatsoever."[3]

4. Whether Taxotere can cause permanent hair loss? *Id.*

5. Whether PCIA always manifests six months after completion of chemotherapy treatment? *See* Doc. 961, denying the Plaintiffs' allegations regarding the definition of PCIA in paragraph 180 of the First Amended Master Long Form Complaint.[4]

6. When Ms. Kahn's PCIA manifested?[5]

7. When Ms. Kahn's hair loss transitioned from temporary to permanent?[6]

8. Can Avastin (bevacizumab) cause permanent hair loss? Ex. A, Kahn NSABP Clinical Trial Consent Form at 000022, 32-38; Ex. B and Ex. C, Avastin prescribing information dated 2008 and 2019.

9. Is Avastin (bevacizumab) cytotoxic chemotherapy? *Id.*

10. Whether Ms. Kahn was on actual or constructive notice of sustaining permanent chemotherapy induced alopecia (PCIA) or permanent hair loss six months after completion of cytotoxic chemotherapy?

11. When Ms. Kahn was on actual or constructive notice of sustaining PCIA?

---

[3] By agreement, no defendant other than the Actavis defendants were required to answer the Second Amended Master Long Form Complaint, as the only changes were addition of master allegations of fact regarding Actavis and Sagent Pharmaceuticals, Inc.

[4] Paragraph 180 of the First Amended Master Long Form Complaint (Doc. 689) is the same allegation that carried forward to paragraph 181 of the Second Amended Master Long Form Complaint (Doc. 4407).

[5] Plaintiffs' expert reports are not yet due in this matter; however, Dr. Chang's expert report in the Thibodeaux matter confirms this is a patient-by-patient inquiry. *See* Ex. T, Expert Report of Ellen T. Chang, Sc.D. at 4.

[6] *Id.*

12. When Ms. Kahn was on actual or constructive notice of sustaining PCIA as a result of Taxotere?

13. When Ms. Kahn was on actual or constructive notice of sustaining PCIA as a result of a tort?

14. When Ms. Kahn was on actual or constructive notice of sustaining PCIA as a result of Sanofi's failure to warn of PCIA?

15. Whether Sanofi admits that the Taxotere label did not warn of *permanent* hair loss until December of 2015. *See* Doc. 7571 at 19, citing Doc. 5732-2 at 2.

16. Whether Sanofi concealed its knowledge of the association between Taxotere and permanent hair loss?

17. Whether Sanofi concealed its knowledge of the association between Taxotere and PCIA?

18. Whether Ms. Kahn made a reasonable inquiry to her physicians about her hair loss?

19. Whether Ms. Kahn reasonably relied on the representations of her physicians?

20. Whether Ms. Kahn acted reasonably in continuing to hope her hair would regrow?

21. Whether Ms. Kahn acted reasonably in light of Dr. Zoe Larned informing her that she could not provide a specific time period in which her hair regrowth would occur?

Dated: February 28, 2019                    Respectfully submitted,

                                            */s/ Christopher L. Coffin*
                                            Christopher L. Coffin (#27902)
                                            Jessica A. Perez (#34024)
                                            PENDLEY, BAUDIN & COFFIN, L.L.P.
                                            1100 Poydras Street, Suite 2505
                                            New Orleans, Louisiana 70163
                                            Phone: (504) 355-0086
                                            Fax: (504) 355-0089
                                            ccoffin@pbclawfirm.com

                                            *Attorneys for Plaintiff*


## FOR THE PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| */s/ Christopher L. Coffin*<br>Christopher L. Coffin (#27902)<br>PENDLEY, BAUDIN & COFFIN, L.L.P.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com<br><br>*Plaintiffs' Co-Lead Counsel* | */s/ Karen B. Menzies*<br>Karen Barth Menzies (CA Bar #180234)<br>GIBBS LAW GROUP LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com<br><br>*Plaintiffs' Co-Lead Counsel* |
| */s/M. Palmer Lambert*<br>M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN DAVID<br>MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com<br><br>*Plaintiffs' Co-Liaison Counsel* | */s/Dawn M. Barrios*<br>Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com<br><br>*Plaintiffs' Co-Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                      */s/ M. Palmer Lambert*
                                                      M. PALMER LAMBERT