UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*June Phillips*; Civil Case No.: 2:16-cv-15397 | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION**

MAY IT PLEASE THE COURT:

As this Court has acknowledged, the treatment of breast cancer is a patient-driven process, involving a discussion between a patient and her oncologist about the various treatment options and a patient's careful consideration of the risks and benefits of each treatment option. When it comes early stage breast cancer, it is undisputed that patients like Plaintiff June Phillips have various options, including those with and without Taxotere. It also undisputed that Ms. Phillips would not have elected to take Taxotere if she had been told by her oncologist, Dr. Sonnier, about Taxotere's increased risk of permanent hair loss. What is factually disputed—and therefore inappropriate for summary judgment—is whether Dr. Sonnier would have provided such a warning to Ms. Phillips prior to her treatment with Taxotere in 2013.

Sanofi ignores this factual dispute, twisting Dr. Sonnier's words as to when he learned about Taxotere's risk of permanent alopecia, about his practices in 2013 for counseling patients, and about how those practices have markedly changed since the drug's 2015 label change to include "permanent alopecia." Above all, Sanofi ignores the most important piece of evidence from Dr. Sonnier: that the decision to choose a different course of treatment belongs to the patient, Ms. Phillips, a position enshrined in Louisiana's product liability laws.

Page **1** of **13**

Testimony from Dr. Sonnier and Ms. Phillips convincingly supports that an adequate warning of permanent hair loss would have altered his safety discussions with her, which in turn would have altered her ultimate decision to receive a Taxotere-inclusive chemotherapy regimen. Because this evidence clearly establishes a fact issue for the jury under Louisiana's articulation of the "learned intermediary" doctrine, Sanofi is not entitled to summary judgment based on warnings causation, and their motion should be denied.

I.  **BACKGROUND**

Dr. Sonnier, a board-certified oncologist practicing in New Orleans, Louisiana, was June Phillips's prescribing physician in October of 2013, when she was diagnosed with stage 2-B, HER-2/neu positive breast cancer. Ex. B at 9:1-7 and 29:3-30:15. Dr. Sonnier has testified about his process for selecting and presenting treatment options to his patients. He follows standards of care, the National Comprehensive Cancer Network guidelines, clinical trials and drug labeling. *Id.* at 13:15-14:19. Dr. Sonnier makes these recommendations after consideration of these materials *in discussions with his patients*, and—importantly—in his practice, it is ultimately the patient's decision as to which treatment regimen to proceed with. *Id.* at 23:15-25:1. It was not and is not his practice to include in these discussions lay opinions not backed by science. *Id.* at 93:23-94:7.

Dr. Sonnier has testified that, when Ms. Phillips sought cancer treatment in 2013, she had various treatment options because there were several alternative chemotherapy regimens available. *Id.* at 35:21-37:14. Dr. Sonnier proposed treatment with Taxotere, Carboplatin and Herceptin. *Id.* at 35:1-20. He then had a discussion with her about hair loss and Taxotere use in which he indicated to Plaintiff that she would experience "abnormal hair regrowth," *e.g.* different texture, etc.—but he has never testified that their discussion included the risk of permanent hair loss. *Id.* at 56:17-25. He elaborated that it was his standard practice in 2013 to tell his patients that "you would lose

your hair, but it would tend to come back, but it may take on different qualities when it does come back." *Id.* at 95:17-25.

Dr. Sonnier has never testified that he knew in 2013 of a risk of permanent hair loss associated with Taxotere when he prescribed Plaintiff's chemotherapy regimen. *Id.* at 32:1-33:25, 49:8-12, 55:14-56:8 and 95:1-9. In fact, Dr. Sonnier repeatedly was unable to give an exact timeline of when he learned about the risk that would allow him to communicate that risk to Plaintiff. *Id.* It is only after the December 2015 label change that Dr. Sonnier can definitively confirm his awareness of the risk of permanent alopecia and, accordingly, a change in his patient counseling practices to disclose this risk when discussing Taxotere with his patients. *Id.* at 96:22-97:7. Dr. Sonnier confirmed that had Plaintiff come in today, he would have had the same discussion with her, and that, if she had reservations about permanent hair loss and wanted an alternative treatment, he would still leave that decision up to her. *Id.* at 37:19-38:19, 69:14-70:8, and 98:3-99:22.

Ms. Phillips testified that she had discussed options with Dr. Sonnier at their initial visit in October of 2013. Ex. C at 130:12-131:10. She also testified that had she been told about the risk of permanent hair loss and that there were other options that did not carry that risk, she would have opted for those chemotherapy drugs. *Id.* at. 135:23-136:1.

**II.     LEGAL STANDARD**

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016).

In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.*, 655 F. 3d 435, 439 (5th Cir. 2011). This Court, however, must "refrain from making credibility determinations or weighing the evidence [. . . .]" *Devon Enterprises, LLC v. Arlington Independent School Dist.*, 541 Fed. Appx. 439, 441 (5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's duty is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III.     ARGUMENT

In products liability claims involving prescription drugs, Louisiana applies the learned-intermediary doctrine," which permits a drug manufacturer to discharge its duty to warn consumers by adequately warning physicians. "The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn *the treating physician*." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002) (original emphasis). Thus, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may

intelligently decide on its use and *advise the patient*." *Id*. at 267 (emphasis added) (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999)).

Under the learned intermediary doctrine, to maintain a failure-to-warn claim, the plaintiff must show two things at trial:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.
>
> Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

*Id.* at 265-66.

Sanofi asserts that Plaintiff cannot make either showing. However, the evidence is squarely to the contrary and, at a minimum, shows that warnings causation cannot be resolved on summary judgment in this case and must be decided by the fact finder at trial.

> **A. A Factual Dispute Exists as to When Dr. Sonnier Learned of Taxotere's Risk of Permanent Hair Loss that Precludes Summary Judgment Under the Learned-Intermediary Doctrine**

In the context of learned intermediary, a plaintiff can establish causation upon a showing that, if properly warned, a plaintiff's treating physician would have acted differently such that the injury alleged could have been avoided. *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, 2017 WL 1393480, at *3 (E.D.La. Apr. 17, 2017). To assist in easing the cause-in-fact burden on a plaintiff, Louisiana recognizes the "heeding presumption." This presumption assumes that if an adequate warning had been provided, that warning would have been followed and the plaintiff would not have been injured. *Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987). The presumption can only be rebutted by showing that an adequate warning or instruction would have been futile under the circumstances.

Sanofi misleadingly alleges that there was no duty to adequately warn because Plaintiff's treating physician, Dr. Sonnier, already knew about a potential risk of permanent hair loss and Taxotere and advised of the same when he treated Plaintiff in 2013. Sanofi has taken Dr. Sonnier's testimony out of context to support a false narrative. While Dr. Sonnier testified that he knew in 2013 "permanent chemotherapy-induced alopecia" was associated with "many chemotherapy regimens," (Ex. B at 71:5-10), he also testified that he was not sure when he learned about the risk of permanent hair loss and Taxotere. Specifically, Dr. Sonnier testified: "I believe there was, again, some lay press concern about that [permanent hair loss]. I believe that preceded 2015. But exactly when, I don't know." *Id.* at 21:19-22. More importantly, Dr. Sonnier testified that these lay reports could have been *after* the label change in December 2015, and it was "hard to know exactly when all this information was transmitted and appreciated and whether or not it was transferred to her." *Id.* at 55:14-56:8, 95:1-9 (emphasis added). This testimony alone raises a question as to when Dr. Sonnier knew of Taxotere's risk of permanent hair loss.

Moreover, and contrary to Sanofi's assertions, Dr. Sonnier testified that he does not use lay reports not backed by science in his patient counseling, such as those lay reports discussed above that "may" have preceded 2015—rather, it was the Taxotere labeling update in December 2015 that influenced his patient disclosures;

> Q. Mr. Moore has asked you whether this label change has altered your risk benefit analysis related to Taxotere. Do you remember that?
>
> A. Yes, I do.
>
> Q. You mentioned that it hasn't. But you disclosed to us that it has altered the disclosures made to your patients, and that you now report to them that there can be permanent hair loss associated with Taxotere.
>
> Q. Is that right?

Page **6** of **13**

      A. Yes.

*Id.* at 96:18-97:7.

      Dr. Sonnier likewise did not state that his practice in 2013 was to advise patients about concerns about permanent hair loss and Taxotere. Dr. Sonnier specifically testified that in 2013 his "practice then would have been 'you would lose your hair, but it would tend to come back, but it may take on different qualities when it does come back.'" *Id.* at 95:17-25. This commonly observed event—hair regrowth of a different texture or color—is separate and apart from the clinically observable condition PCIA.

      As it relates to Ms. Phillips, Dr. Sonnier could not confirm that he ever discussed a risk of permanent hair loss with Ms. Phillips and, in fact, has testified that he does not know when he learned about the risk. *Id.* at 49:8-12, 55:14-56:8. Prior to the December 2015 label change, Dr. Sonnier would advise his patients receiving Taxotere that the hair loss would be temporary. *Id.* at 26:9-22. He has confirmed that his practice in 2013 was to inform them that they would lose their hair but it would potentially come back with *different qualities*. *Id.* at. 95:17-96:2. He also testified that once he learned about the December 2015 label update he changed his counseling practices to advise his patients about the risk of permanent hair loss with Taxotere. *Id.* at 91:1-92:6. Moreover, Dr. Sonnier has explained that if a patient, similar to Plaintiff, came in with concerns about hair loss that he would have a discussion about alternative treatments with her. *Id.* at 69:14-70:8.

      While Dr. Sonnier stated that he would have recommended the same chemotherapy treatment to Plaintiff, he also stated that there were alternative treatments available for him to recommend as well. *Id.* at 35:21-23. Specifically, he would have recommended a non-Anthracycline therapy in light of her concerns about permanent hair loss and his concerns about cardio toxicity. *Id.* at 98:6-16. As such, Sanofi's claim that there is no factual dispute as to

causation is simply untenable. Considering all facts in favor of Ms. Phillips, more than a question of fact exists as to causation.

**B. Sanofi Ignores the Role of Ms. Phillips in Selecting Her Breast Cancer Treatment**

Sanofi next contends that Plaintiff cannot establish causation because Dr. Sonnier testified that he would make the same decision to prescribe Taxotere having known the risk of permanent alopecia. This position ignores the sound judgment of this Court, which has previously rejected the same argument in earlier bellwether cases: "While a doctor may testify that his or her recommendation would not have changed, the issue is whether the plaintiff's ultimate decision would have changed." Rec. Doc. 7571 p. 16.

As discussed, Sanofi presents no evidence that Dr. Sonnier knew permanent hair loss was associated with Taxotere in October of 2013 or that he warned Plaintiff of such a risk. There is evidence that he would have not have prescribed the same chemotherapy regimen if Plaintiff had been warned of the permanent hair loss risk. Specifically, when asked what he would do if Plaintiff wanted an alternative regimen, Dr. Sonnier testified: "if she would have wanted to pursue an Anthracycline course, her, I think at that time, knowing what I know now, would have been going with a non-Anthracycline therapy." Ex. B at 98:6-14. Dr. Sonnier never said he would not prescribe *any* of the alternative regimens; he simply stated that he would not make the proposal to treat with a particular type of chemotherapy drug: Anthracycline.

In addition, Ms. Phillips has testified that Dr. Sonnier never warned her about the risk of permanent hair loss and that had she been warned about this risk of permanent hair loss with Taxotere, she would have changed her decision to have Taxotere as part of her chemotherapy regimen. Ex. C at 125:19-22 and 130:6-131:10. This decision, as this Court has observed, is the operative question under Louisiana law. *See* Rec. Doc. 7571 p. 16.

Moreover, and as Judge Fallon has recognized, under Louisiana law, subjective testimony from the treating physician on causation may be "supplement[ed] … with objective evidence of how a reasonable physician would have responded to an adequate warning." *Allgood v. GlaxoSmithKline PLC*, 2008 WL 483574, at n.6 (E.D. La. Feb. 20, 2008) (internal quotations and citations omitted); *see also Grenier v. Medical Engineering Corp.*, 243 F. 3d 200, 208 n. 4 (5th Cir. 2001) ("a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded.") (internal quotations and citations omitted). Here, Plaintiff has supplemented Dr. Sonnier's testimony with evidence that a reasonable physician would have altered his or her prescribing practices had he or she been adequately warned by Defendants of the risk of permanent hair loss with Taxotere. See Ex. D, Earnest Trial Transcript, September 20, 2019, at pp. 1272-1273. Like Dr. Sonnier, a reasonable doctor would not have prescribed Taxotere for a patient like Plaintiff without first counseling the patient on the risks involved and allowing the patient to make an informed decision once adequately warned of those risks. *Id.*

Defendants mistakenly argue that the reasonable patient standard is applicable. However, that standard is used in cases involving Louisiana Uniform Consent law and is inapplicable to this case.[1] Furthermore, the framework specifically discusses as the last element the decision the *Plaintiff would have made*, not what another reasonable patient would have done in similar circumstances. Here, we need not apply the "reasonable patient standard"—instead, we have evidence of what Ms. Phillips's decision would have been had she been properly informed about risks. She has testified repeatedly that she would have chosen other chemotherapy regimens that

---

[1] *Hondroulis v. Schuhmacher*, 553 So. 2d 398 (La. 1988) involved a suit brought by a patient against a medical provider and the sufficiency of the warning given in an informed consent form. The bias discussed therein is inapplicable to this case because there is no unfair risk of liability due to a plaintiff's testimony against the physician.

did not carry the risk of permanent hair loss. Ex. C at 125:19-22, 130:6-131:10 and 135:23-136:1. At the least, Ms. Phillips has introduced evidence that Dr. Sonnier would have altered—and in fact has altered—his disclosures to his patients following the 2015 label change. Accordingly, she is entitled to the benefit of the heeding presumption under the law.

In sum, the chemotherapy decision-making process is unique in that it involves more than what the doctor would prescribe. Here, Dr. Sonnier did not know in 2013 when he prescribed Plaintiff her chemotherapy regimen that permanent hair loss was a risk associated with Taxotere use, and had Plaintiff been warned about the risk she would have chosen another regimen. On these undisputed facts, including Plaintiff's cited expert testimony on the objective reasonableness of prescribing an alternative treatment, Plaintiff creates a material fact for the jury. Accordingly, this causation evidence precludes the entry of the summary judgment against Ms. Phillips under the learned-intermediary doctrine.

## IV.    CONCLUSION

As explained above, the evidence supports that had Sanofi warned about Taxotere's risk of permanent hair loss, Dr. Sonnier would have advised Plaintiff of the same. Dr. Sonnier testified that after learning about the label update in 2015 his counseling practices changed to advise his patients about the association between permanent hair loss and Taxotere. Finally—and importantly—Plaintiff testified that she would have opted for another drug that did not cause permanent hair loss if Dr. Sonnier would have advised her of the same. With this evidence, Plaintiff more than meets her evidentiary burden under this framework necessary to survive summary judgment. For these reasons, Defendants have failed to meet their burden to show entitlement to summary judgment on Plaintiff's failure to warn claims. Accordingly, summary judgment should be denied.

Dated: February 28, 2020                     Respectfully submitted,

                                             /s/Richard L. Root
                                             Richard L. Root (#19988)
                                             Betsy Barnes (#19473)
                                             Morris Bart, LLC
                                             601 Poydras Street, 24th Floor
                                             New Orleans, Louisiana 70130
                                             Phone: (504) 525-8000
                                             Fax: (504) 599-3392
                                             rroot@morrisbart.com
                                             bbarnes@morrisbart.com

                                             *Attorneys for Plaintiff, June Phillips*

### FOR THE PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| */s/ Christopher L. Coffin*<br>Christopher L. Coffin (#27902)<br>PENDLEY, BAUDIN & COFFIN, L.L.P.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com<br><br>*Plaintiffs' Co-Lead Counsel* | */s/ Karen B. Menzies*<br>Karen Barth Menzies (CA Bar #180234)<br>Andre Mura ((CA Bar # 298541) (on the brief)<br>GIBBS LAW GROUP LLP<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045<br>Telephone: 510-350-9700<br>Facsimile: 510-350-9701<br>kbm@classlawgroup.com<br><br>*Plaintiffs' Co-Lead Counsel* |
| */s/M. Palmer Lambert*<br>M. Palmer Lambert (#33228)<br>GAINSBURGH BENJAMIN DAVID<br>MEUNIER & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: 504-522-2304<br>Fax: 504-528-9973<br>plambert@gainsben.com<br><br>*Plaintiffs' Co-Liaison Counsel* | */s/Dawn M. Barrios*<br>Dawn M. Barrios (#2821)<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139<br>Phone: 504-524-3300<br>Fax: 504-524-3313<br>barrios@bkc-law.com<br><br>*Plaintiffs' Co-Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                                        */s/ M. Palmer Lambert*
                                                        M. PALMER LAMBERT