**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | **MDL No. 2740** |
| **This Document Relates To:** | **SECTION: H** |
| *June Phillips*; Civil Case No.: 2:16-cv-15397 | **JUDGE MILAZZO** |
| | **MAG. JUDGE NORTH** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.2, Plaintiff, June Phillips, submits the following Response to Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment:

   A. **Taxotere**

1. Admitted

2. Disputed. Prior to December 2015, Sanofi's labeling for Taxotere made no reference to cases of permanent alopecia having been reported. Despite years of internal knowledge, Sanofi actively concealed from plaintiff, her healthcare providers and the consuming public the true risk of permanent hair loss associated with the use of Taxotere. Instead, Sanofi defined and promoted Taxotere as causing temporary hair loss. Ex. A, Deposition of Dr. Scott Sonnier, Exhibit 13.

3. Admitted. Taxotere continues to be a cytotoxic chemotherapeutic agent, within the standard of care, prescribed by oncologist for the treatment of breast cancer.

   B. **Plaintiff's Breast Cancer Diagnosis and Relevant Treatment**

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted. Plaintiff had multiple surgical options and chemotherapy regimens available. Ex. B, Deposition of Dr. Scott Sonnier, at 35:21-23, 36:14-22, 98:6-99:11. Plaintiff testified that Dr. Sonnier told her that the Herceptin was the most important therapy being recommended at the time of her treatment in October of 2013. Ex. C, Deposition of Plaintiff, June Phillips, at 179:4-15.

9. Admitted in part. Dr. Sonnier testified that adjuvant therapy following surgery improves a patient's chance of survival. Disputed in part. Dr. Sonnier testified that surgery is the main treatment used to eliminate cancer. Ex. B at 62:24-63:5.

10. Admitted.

11. Admitted.

12. Admitted.

## C. Dr. Sonnier's Treatment Regimen in October of 2013

13. Disputed. Dr. Sonnier had other chemotherapy regimens that he could have selected for Plaintiff that would have avoided the cardio toxicity posed by regimens with Adriamycin. *Id*. at 98:6-99:11.

14. Disputed. Dr. Sonnier had other chemotherapy regimens that he could have selected for Plaintiff that would have avoided the cardio toxicity posed by regimens with Adriamycin. *Id*.

15. Admitted in part. Dr. Sonnier had concerns about cardio toxicity when providing a chemotherapy regimen for Plaintiff.  Disputed in part. She was a candidate for non-Adriamycin regimens. *Id*.

16. Disputed. There were other chemotherapy regimens that were available to Plaintiff in October of 2013 that were consistent with the 2013 NCCN Guidelines. *Id*. at 13:14-14:16.

17. Admitted.

18. Admitted in part. Dr. Sonnier's risk-benefit assessment of Taxotere was not altered by the "surprising" label change in 2015 to add that cases of permanent alopecia had been reported. *Id* at 86:13-89:21. Disputed in part. Dr. Sonnier testified that it had altered the disclosures he makes to his patients about the association between permanent hair loss and Taxotere. *Id*. at 96:18-97:7.

19. Disputed. Dr. Sonnier testified that a different warning from Sanofi regarding permanent hair loss and Taxotere did change his disclosures to patients about same. *Id*. at 96:18-97:7. Dr. Sonnier further testified that the decision ultimately lies with the patient. *Id*. at 98:6-99:22.

20. Skips to 21.

21. Admitted in part. Dr. Sonnier would make the same recommendation for Plaintiff. Disputed in part. Dr. Sonnier testified that there were other recommendations that he would make for Plaintiff. *Id*. at 35:21-37:18 and 98:17-99:1.

22. Admitted.

23. Disputed. Dr. Sonnier testifies that while he favors Taxotere over Taxol he chooses a chemotherapy regimen based upon the patient presentation, clinical trials, standards of care and guidelines. *Id*. at 13:14-20.

### D. Dr. Sonnier's Unawareness of Taxotere and Permanent Hair Loss

24. Disputed. Dr. Sonnier testified that he knew in 2013 that permanent chemotherapy-induced alopecia was a rare but, nonetheless, possible side effect associated with many chemotherapy regimens, but he never testified that he knew that when he treated Plaintiff in October of 2013. *Id*. 71:5-10. Plaintiff testified that Dr. Sonnier discussed permanent hair loss with her after she had begun treatment with Taxotere sometime in December of 2015 or January of 2016. *Id.* at 71:11-73:21.

25. Disputed. Dr. Sonnier never testified as to exactly when he learned that there could have been an association between Taxotere and permanent hair loss. *Id.* at 32:20-22 ("A. so in terms of what exactly was said and information that was exactly shared, I'm not sure.") and 49:8-25 ("Q: Do you know for sure whether or not you had a discussion with her about permanent hair loss when you were first advising her about the use of Taxotere? A: I'll say that I can't say for sure.").

26. Disputed. Dr. Sonnier never testified which lay articles he read or when he read those lay articles that concerned Taxotere and reports of permanent hair loss. *Id*. at 55:14-56:8 ("A. So its hard to know exactly when all this information was transmitted and appreciated and whether or not it was transferred to her."). Dr. Sonnier did testify that the lay articles came about around the time "legal cases" were being advertised. *Id*. at 33:12-25. The first lawsuits in this MDL were not filed until December 2015.

### E. <u>Plaintiff's Awareness of Permanent Hair Loss Risk with Taxotere</u>

27. Admitted in part. Dr. Sonnier does discuss known side effects of the chemotherapy regimens. Disputed in part. Dr. Sonnier admitted that he cannot discuss side effects that are not backed by science. *Id*. at. 93:23-94:7.

28. Admitted.

29. Disputed. Dr. Sonnier testified that he was unable to say when he learned about the potential risk of permanent hair loss and Taxotere and whether that information was ever passed on to plaintiff. *Id*. at 55:14-56:8 ("A. So it's hard to know exactly when all this information was transmitted and appreciated and whether or not it was transferred to her."). Plaintiff testified that Dr. Sonnier never told her about the risk of permanent hair loss. Ex. C at 68:18-22 and 125:19-22 ("Q: Has Dr. Sonnier told you that he was not aware of a risk, however small, of persistent hair thinning or hair loss with Taxotere? A. Yes.").

30. Disputed. Dr. Sonnier's practice in 2013 was to advise patients that they would experience hair loss but that the hair loss would return. Ex. B at 95:17-96:2 ("Q. In 2013, was that your standard to advise patients at that time, prior to the label change, that, 'Hey, you probably will lose your hair, but its going to come back'? Would that have been your practice then? A. My practice then would have been 'You would lose your hair, but it would tend to come back but it may take on different qualities when it does come back. And different texture, different color, different patterns.'").

31. Admitted. However, the informed consent form for treatment with Taxotere, the drug at issue in this case, did not identify a risk of permanent hair loss. Ex. C at 200:23-205:25.

32. Admitted.

33. Admitted in part. Plaintiff did not ask for options for other chemotherapy regimens that would avoid a risk of permanent hair loss. Disputed in part. Plaintiff was unaware when she was discussing her chemotherapy regimen options in October of 2013 that there

was a risk of permanent hair loss to that needed to be considered and/or avoided. *Id*. at 142:10-15 ("A. My opinion is that if there was a different kind of chemo other than Taxotere that hadn't caused permanent hair loss, I should have been given that option of taking that, but I wasn't given that option because the doctors didn't know that.").

34. Disputed. The alternatives to radiation treatment are not at issue in this case, nor would local radiation to Plaintiff's breast or underarm area have resulted in permanent hair loss to her scalp.

35. Disputed. While Plaintiff accepted the risks discussed by Dr. Sonnier and identified in her chemotherapy informed consent form those risks never included permanent hair loss. *Id.* at 200:23-205:25.

36. Admitted.

**F. Alternatives to TCH Chemotherapy Regimen**

37. Admitted in part. Dr. Sonnier testified that he had concerns about alternative treatment regimens that involved Adriamycin. Disputed in part. Dr. Sonnier never testified that he would not have given Plaintiff a chemotherapy regimen that included Adriamycin; He only testified that he would not give the proposal. Ex. B at 98:3-9. Dr. Sonnier testified that there were alternative chemotherapy regimens available that did not have serious risks of cardiac toxicity. *Id*. at 98:10-16. Dr. Sonnier further testified that the decision on which chemotherapy regimen to use was up to the patient. *Id*. at 98:6-99:22 ("A. it's her decision.").

38. Admitted. Dr. Sonnier could have also recommended a non-Adriamycin regimen. *Id*. at 98:10-16.

39. Admitted in part. Plaintiff expressed concerns about cardiac side effects and could not say whether or not she would have taken an alternative regimen without more information. Disputed in part. Plaintiff testified that she also had concerns about hair loss and would have wanted an alternative regimen that did not have a risk of permanent hair loss. Ex. C at 130:6-11 and 135:22-136:1.

40. Admitted.

41. Disputed. Dr. Sonnier never testified that he knew when he treated Plaintiff in October of 2013 that Adriamycin and Taxol carried a risk of permanent hair loss. Ex. B at 71:5-10.

42. Disputed. There is evidence that Plaintiff would have rejected TCH in favor of a chemotherapy regimen containing Adriamycin. Ex. C at 130:6-11 and 135:22-136:1.

43. Disputed. There is evidence that Plaintiff would have rejected TCH in favor of a non-Adriamycin chemotherapy regimen. *Id*.

44. Disputed. There is no evidence that a reasonable patient in Plaintiff's circumstances would not reject a TCH chemotherapy regimen in favor of an Adriamycin regimen. This was a regimen that was an alternative available to Plaintiff as stated by Dr. Sonnier. Ex. B at 36:14-22.

45. Disputed. There is no evidence that a reasonable patient in Plaintiff's circumstances would not reject a TCH chemotherapy regimen in favor or a non-Adriamycin regimen. This was a regimen that was an alternative available to Plaintiff as stated by Dr. Sonnier. *Id*. at 98:6-99:11.

46. Disputed. Plaintiff did not have knowledge about cases of permanent alopecia being reported at the time she was provided chemotherapy options. Ex. C at 125:19-22 and 142:10-15.

47. Disputed. There is no evidence that a reasonable patient in Plaintiff's circumstances would not reject the adjuvant therapy that Dr. Sonnier prescribed in Plaintiff's case.

48. Admitted in part. For some patients there are no reasonable alternative chemotherapy regimens. Disputed in part. Plaintiff had reasonable alternative chemotherapy regimens that Dr. Sonnier testified he could have and would have recommended. Ex. B at. 35:21-23 ("Q. Did she have any alternative treatments other than the court of treatment that – A. Yes, there were. Yes, there is."), 36:14-37:8 and 98:6-99:22.

Dated: February 28, 2020                      Respectfully submitted,

                                              */s/Richard L. Root*
                                              Richard L. Root (#19988)
                                              Betsy Barnes (#19473)
                                              Morris Bart, LLC
                                              601 Poydras Street, 24th Floor
                                              New Orleans, Louisiana 70130
                                              Phone: (504) 525-8000
                                              Fax: (504) 599-3392
                                              rroot@morrisbart.com
                                              bbarnes@morrisbart.com
                                              *Attorneys for Plaintiff, June Phillips*

**FOR THE PLAINTIFFS' STEERING COMMITTEE**

*/s/ Christopher L. Coffin*                   */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)               Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.             Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505             GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                        Los Angeles, California 90045
Fax: (504) 355-0089                          Telephone: 510-350-9700
ccoffin@pbclawfirm.com                       Facsimile: 510-350-9701
*Plaintiffs' Co-Lead Counsel*                kbm@classlawgroup.com
                                             *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ M. Palmer Lambert*
M. PALMER LAMBERT