## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**In Re: TAXOTERE (DOCETAXEL)**                              **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGATION**

                                                           **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO**
**Elizabeth Kahn, Case No. 2:16-cv-17039**

### PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND PLAINTIFF'S CONTESTED FACTS

Pursuant to Local Rule 56.2, Plaintiff, Elizabeth Kahn, submits the following Response to Defendants' Statement of Facts in Support of their Motion for Summary Judgment:

1. Admitted.

2. Disputed. Prior to December 2015, Sanofi's labeling for Taxotere made no reference to cases of permanent alopecia having been reported. Despite years of internal knowledge, Sanofi actively concealed from plaintiff, her healthcare providers and the consuming public the true risk of permanent hair loss associated with the use of Taxotere. Instead, Sanofi defined and promoted Taxotere as causing temporary hair loss. Ex. A. in globo.[1]

3. Admitted that Taxotere continues to be a cytotoxic chemotherapeutic agent, within the standard of care, prescribed by oncologist for the treatment of breast cancer.

4. Admitted.

---

[1] Ex. A-1, Sanofi_00792534; Ex. A-2, Sanofi_00837648; Ex. A-3, Sanofi_01035459, Ex. A-4, Sanofi_01038470; Ex. A-5, Sanofi_01112867; Ex. A-6, Sanofi_02540992; Ex. A-7, Sanofi_02645200; Ex. A-8, Sanofi_02983328; Ex. A-9, Sanofi_03336652; Ex. A-10, Sanofi_04864365; Ex. A-11, Sanofi_05207927; Ex. A-12, Sanofi_043353204; Ex. A-13, *Earnest* Pl.'s Ex. 200

5. Disputed.  Plaintiff was diagnosed with ER/PR positive and HER2 negative early stage breast cancer. Ex. B, Pathology Record of Elizabeth Kahn.

6. Disputed.  Plaintiff's primary goal was to survive breast cancer, but she also wanted to be as whole as possible after the conclusion of her cancer treatment.  Ex. E, Deposition of Elizabeth Kahn 12/7/2017 ("Kahn Dep.") at 156:9 – 157:5.

7. Admitted that Ms. Kahn had multiple surgical options and selected a lumpectomy because she has the same chance of survival by having a lumpectomy vs. having a mastectomy.

8. Admitted that Dr. Kardinal recommended participation in a clinical trial because clinical trials were considered standard of care or better.  Dispute use of the word "ideal".

9. Admitted that the use of Taxotere in combination with Adriamycin and Cyclophosphamide within the NSABP clinical trial was within the standard of care.

10. Admitted.

11. Admitted that the use of Taxotere followed in combination with the use of Adriamycin and Cyclophosphamide was within the standard of care for treating Ms. Kahn's early stage breast cancer.  Disputed as to Xeloda (capecitabine) not being approved to treat breast cancer by the FDA.  In fact, as the informed consent form clearly states, Xeloda had been approved for treatment of advanced breast cancer but was investigational as to its effectiveness in early stage breast cancer, which NSABP-40 sought to research.  Defs' Ex. I, Elizabeth Kahn's NSABP Consent at 2.  Ms. Kahn never received Gemzar (gemcitabine).  The use of Avastin (bevacizumab) was investigational.

2

12. Disputed.  Although not all side effects were known, the side of effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere.  However, Sanofi actively concealed the risk of permanent hair loss associated with the use of Taxotere from plaintiff, her healthcare providers, and the consuming public.  Ex. A.  Ms. Kahn's understanding, was that the side effects being assessed by the clinical trial was how the combination therapy would impact heart and recovery from surgery.  Ex. E, Kahn Dep. at 192:6 – 193:21.

13. Admitted that Ms. Kahn wrote down an exact quote of "chemotherapy is the most important" from one of her medical providers, but those words were not her own.

14. Admitted the Ms. Kahn took notes when visiting with her treating physicians who were a part of her cancer treatment.

15. Disputed.  Dr. Kardinal clearly testified that he did not regularly warn patients of a risk of permanent or persistent hair loss as in his experience, hair grew back after chemotherapy.  In addition, during the time he was practicing he did not review or become aware of any literature showing Taxotere or any other chemotherapy drug carried with it the risk of permanent alopecia.  Ex. C, Deposition of Dr. Kardinal ("Kardinal Dep.") at 87:2 – 88:17.  In addition, those patients whom Dr. Kardinal observed to have thinning hair when taking Adriamycin typically had their hair regrow.  *Id* at 24:20 – 25:18.  Dr. Kardinal testified that he regularly informed his patients that hair loss would be temporary.  Ex. C, Kardinal Dep. at 175:9-17.

16. Admitted that Dr. Kardinal did not treat Ms. Kahn after making his initial prescribing recommendation as Ms. Kahn's care was taken over by Dr. Larned in June of 2008. Dr. Larned did not make any prescribing decisions related to chemotherapy for Ms.

Kahn, as she was already enrolled and participating in NSABP-40 and had lost her hair from her first cycle of combination Taxotere therapy when Dr. Larned took over her care.  Ex. D, Deposition of Dr. Larned ("Larned Dep.") at 66:22 – 67:23; 128:23 - 130:2.  Disputed that Dr. Larned has any true knowledge of the rate or incidence of permanent alopecia associated with Taxotere compared to other chemotherapy drugs. Ex. D, Larned Dep. at 121:1-18.

17. Admitted that chemotherapy can cause changes to hair, such as texture and color and that Dr. Larned observed hair thinning in some patients following chemotherapy. Disputed that all chemotherapy drugs can cause permanent hair loss.  More importantly, Dr. Larned never reviewed the consent form with Ms. Kahn nor did she discuss potential side effects associated with Taxotere with Ms. Kahn.  *Id*. at 128:23 - 130:2.

18. Admitted that chemotherapy can cause changes to hair, such as texture and color and that Dr. Larned observed hair thinning in some patients following chemotherapy. Disputed that all chemotherapy drugs can cause permanent hair loss as Dr. Larned clinical experience is insufficient to establish causation as to the rate or incident of permanent alopecia associated with any chemotherapy drug.  More importantly, Dr. Larned never reviewed the consent form with Ms. Kahn nor did she discuss potential side effects associated with Taxotere with Ms. Kahn.  *Id* at 128:23 -130:2.

19. Admitted that Dr. Kardinal warned patients of those common side effects of which he was aware.  Denied to the extent it is implied that Dr. Kardinal warned patients that hair loss from Taxotere might be permanent because not all side effects can be known.  The side effect of permanent hair loss was known to Sanofi at the time Ms.

Kahn underwent treatment with Taxotere.  Ex. A.  Additionally, Dr. Kardinal was unaware of this risk and had he been aware he would have advised Ms. Kahn and respected her decision if she declined to move forward with treatment with Taxotere. Ex. C, Kardinal Dep. at 141:22 – 143:1.

20. Admitted that Dr. Kardinal would explain the known risks potential associated with a clinical trial.   Disputed to the extent it is implied that Dr. Kardinal warned patients that hair loss from Taxotere might be permanent because not all side effects can be known.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere. Ex. A.

21. Admitted that Dr. Larned does not discuss every possible side effect with patients. Disputed to the extent it is implied that Dr. Larned ever advised Ms. Kahn as to the potential side effects of Taxotere or that the risk of permanent hair loss was not known at the time Ms. Kahn underwent treatment with Taxotere. The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.

22. Disputed.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Dr. Kardinal did not warn Ms. Kahn of the risk of permanent hair loss because he was unaware of it at the time he prescribed Taxotere to Ms. Kahn. Ex. C, Kardinal Dep. at 141:22 – 143:1. Dr. Larned never prescribed Taxotere to Ms. Kahn.  Ex. D, Larned Dep. at 128:23 - 130:2.

23. Disputed.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Dr. Kardinal did not warn Ms. Kahn of the risk of permanent hair loss because he was unaware of it at the time he prescribed Taxotere to Ms. Kahn. Ex. C at 141:22 – 143:1.  Dr. Larned never prescribed Taxotere to Ms. Kahn.  Ex. D, Larned Dep. at 128:23 -130:2.  Had Dr. Kardinal been made aware of the risk he would have warned Ms. Kahn.  Ex. C, Kardinal Dep. at 141:22 – 143:1.

24. Disputed.  Plaintiff was not made aware of all known risks prior to starting her chemotherapy treatments.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Dr. Kardinal did not warn Ms. Kahn of the risk of permanent hair loss because he was unaware of it at the time he prescribed Taxotere to Ms. Kahn. Ex. C, Kardinal Dep. at 141:22 – 143:1  Dr. Larned never prescribed Taxotere to Ms. Kahn.  Ex. D, Larned Dep. at 128:23 -130:2.  Had Dr. Kardinal been made aware of the risk he would have warned Ms. Kahn.  Ex. C, Kardinal Dep. at 141:22 – 143:1.  Plaintiff was never warned that her use of Taxotere may result in permanent hair loss.  Ex. E, Kahn Dep. at 17:23 – 19:5.

25. Disputed.  Plaintiff was not made aware of all known risks prior to starting her chemotherapy treatments.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex.

A.  Dr. Kardinal did not warn Ms. Kahn of the risk of permanent hair loss because he was unaware of it at the time he prescribed Taxotere to Ms. Kahn. Ex. C, Kardinal Dep. at 141:22 – 143:1.  Dr. Larned never prescribed Taxotere to Ms. Kahn.  Ex. D, Larned Dep. at 128:23 -130:2.  Had Dr. Kardinal been made aware of the risk he would have warned Ms. Kahn.  Ex. C, Kardinal Dep. at 141:22 – 143:1.  Plaintiff was never warned that her use of Taxotere may result in permanent hair loss.  Ex. E, Kahn Dep. at 17:23 – 19:5.   Furthermore, Nurse Thomas, Dr. Kardinal and Dr. Larned told plaintiff her hair loss would be temporary.  *Id*. at 245:20 – 255:4.  Nurse Thomas even ensured Ms. Kahn would have a full head of hair following chemotherapy and reassured her by showing her another patient whose hair was re-growing.  *Id*. at 205:21 – 206:19.

26. Disputed.  Plaintiff was not made aware of all known risks prior to starting her chemotherapy treatments.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Plaintiff was never warned that her use of Taxotere may result in permanent hair loss.  Defs' *Id*. at 17:23 – 19:5.   Furthermore, Nurse Thomas, Dr. Kardinal and Dr. Larned told plaintiff her hair loss would be temporary.  *Id*. at 245:20 – 255:4.  Nurse Thomas even ensured Ms. Kahn would have a full head of hair following chemotherapy and reassured her by showing her another patient whose hair was re-growing.  *Id*. at 205:21 – 206:19.

27. Disputed.  Plaintiff was not made aware of all known risks prior to starting her chemotherapy treatments.  The side effect of permanent hair loss was known to

Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Plaintiff was never warned that her use of Taxotere may result in permanent hair loss.  Defs' *Id*. at 17:23 – 19:5.   Furthermore, Nurse Thomas, Dr. Kardinal and Dr. Larned told plaintiff her hair loss would be temporary.  *Id*. at 245:20 – 255:4.  Nurse Thomas even ensured Ms. Kahn would have a full head of hair following chemotherapy and reassured her by showing her another patient whose hair was re-growing.  *Id*. at 205:21 – 206:19.

28. Admitted that the consent form contained information related to various side effects. Disputed to the extent it is implied that Ms. Kahn was warned that she may suffer from permanent hair loss.  The language in the consent form stating that side effects may never go away or that some side effects could not be predicted was intended to warn of potentially unknown side effects.  At the time Ms. Kahn signed her consent form, the risk of permanent hair loss posed by the use of Taxotere was known to Sanofi.  Rather than disclosing this information to medical professionals, so that it could be implemented into Ms. Kahn's informed consent, Sanofi actively concealed this information and failed to disclose its true knowledge of the risk to both consumers and medical professionals within the United States.  Outside of the United States, information pertaining to the risk of permanent hair loss was included in informed consent forms.  Ex. A.

29. Admitted that Ms. Kahn initialed to each page of her consent form.  Disputed that Ms. Kahn agreed to the risk of permanent hair loss.

30. Disputed.   Plaintiff did not understand, in any capacity, that she was at risk for suffering from permanent hair loss from her use of Taxotere at time she elected to participate in the NSABP clinical trial.  Plaintiff was not made aware of all known risks prior to starting her chemotherapy treatments.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Plaintiff was never warned that her use of Taxotere may result in permanent hair loss.   Ex. E, Kahn Dep. at 17:23 – 19:5.    Furthermore, Nurse Thomas, Dr. Kardinal and Dr. Larned told plaintiff her hair loss would be temporary. *Id*. at 245:20 – 255:4.  Had Plaintiff been advised that the use of Taxotere might result in permanent hair loss, she would have asked for other options.  *Id*. at 301:11 – 305:13.

31. Disputed.   Plaintiff did not understand, in any capacity, that she was at risk for suffering from permanent hair loss from her use of Taxotere at time she elected to participate in the NSABP clinical trial.  Plaintiff was not made aware of all known risks prior to starting her chemotherapy treatments.  The side effect of permanent hair loss was known to Sanofi at the time Ms. Kahn underwent treatment with Taxotere, but Sanofi failed to warn Ms. Kahn, her healthcare providers, or the consuming public of such risks. Ex. A.  Plaintiff was never warned that her use of Taxotere may result in permanent hair loss.   Ex. E, Kahn Dep. at 17:23 – 19:5.    Furthermore, Nurse Thomas, Dr. Kardinal and Dr. Larned told plaintiff her hair loss would be temporary. *Id*. at 245:20 – 255:4.  Had Plaintiff been advised that the use of Taxotere might result

in permanent hair loss, she would have asked for other options. *Id* at 301:11 – 305:13.

32. Admitted that Plaintiff believed that no matter what arm of the clinical trial she ended up in enrolled in, she would receive the standard of care.

33. Admitted that Plaintiff was never warned that her use of Taxotere may result in permanent hair loss. *Id*. at 17:23 – 19:5. Furthermore, Nurse Thomas, Dr. Kardinal and Dr. Larned told plaintiff her hair loss would be temporary. *Id* at 245:20 – 255:4. Nurse Thomas even ensured Ms. Kahn would have a full head of hair following chemotherapy and reassured her by showing her another patient whose hair was re-growing. *Id*. at 205:21 – 206:19. Disputed that Plaintiff was ever warned that hair loss might be permanent or that side effects related to hair loss might be unknown.

34. Admitted that Plaintiff underwent three phases of cancer treatment. The first two phases involved cytotoxic chemotherapy which is associated with temporary hair loss. Plaintiff then underwent surgery and radiation prior to completing her third phase of treatment which involved Avastin infusions. Avastin is not cytotoxic chemotherapy. Avastin, as defined in the consent form, is not chemotherapy. Rather, Avastin is angiogenesis inhibitor. "Angiogenesis inhibitors and chemotherapy work in different ways. Bevacizumab [Avastin] keeps the tumor from being able to make new blood vessels. Without new blood vessels, the growth of the tumor is slowed. Chemotherapy drugs kill cancer cells more directly." Defs' Ex. I, Elizabeth Kahn's NSABP Consent at 2.

35. Admitted that after receiving cytotoxic chemotherapy Ms. Kahn's tumor did shrink. Disputed that the shrinkage can only be attributed Taxotere. Dr. Kardinal testified

that there is no way to determine the relative contribution of Taxotere in comparison to the other cytotoxic chemotherapies, namely Adriamycin and Cyclophosphamide, in shrinking the size of Ms. Kahn's tumor.

36. Admitted that after receiving cytotoxic chemotherapy Ms. Kahn's tumor did shrink. Disputed that the shrinkage can only be attributed Taxotere. Dr. Kardinal testified that there is no way to determine the relative contribution of Taxotere in comparison to the other cytotoxic chemotherapies, namely Adriamycin and Cyclophosphamide, in shrinking the size of Ms. Kahn's tumor.

37. Admitted.

38. Admitted.

39. Admitted that Ms. Kahn is not completely bald. Rather, Ms. Kahn's hair failed to fully regrow following cytotoxic chemotherapy with Taxotere. Her hair, as noted by Dr. Roberie, is very thin and her scalp is easily visible through it. Ex. E, Kahn Dep. at 45:12 – 49:15; Ex. F, Deposition of Dr. Roberie, 2/21/2020 ("Roberie Dep.") at 139:3-13. In addition, Plaintiff has lost her eyebrows and eyelashes. *Id*.

40. Admitted that Dr. Kardinal made said statements at the time he authored in publication in 2008. Disputed as to whether those statements remain true today.

41. Admitted that Dr. Kardinal acknowledge that Taxotere and Taxol have different side effect profiles. Disputed that Dr. Kardinal preferred Taxotere to Taxol. Rather, Dr. Kardinal testified that Taxotere and Taxol are equivalent in efficacy and he would recommend treatment with Taxol, or potentially Adriamycin and Cyclophosphamide if a patient did not wish to undergo treatment with Taxotere due to the risk of permanent hair loss. Ex. C, Kardinal Dep. at 145:11 – 146:12.

42. Admitted that Dr. Larned continues to prescribe Taxotere and that Taxotere and Taxol have different side effect profiles.  Disputed that Dr. Larned "sang Taxotere's praises" or stated that it had more serious risks than Taxol.  It is likewise disputed that Dr. Larned's prescribing practices are relevant to this inquiry as Dr. Larned never prescribed Taxotere to Ms. Kahn.

43. Admitted that Dr. Kardinal's standard practice was to review a drug's full label when it came onto the market and would then refer back to the label when something unexpected occurred.  Ex. C, Kardinal Dep. at 28:2 – 29:24.  Dr. Kardinal was also adamant that had he been warned, he would have disclosed the risk and allowed the patient to decide whether she wished to proceed with Taxotere.  *Id.* at 141:1 – 143:1.

44. Admitted.

45. Disputed.  Dr. Kardinal testified that he was unaware of the risk of permanent hair loss associated with Taxotere and had he been advised of it, he would have disclosed the risk to Ms. Kahn.  Had Ms. Kahn asked for other options aside from Taxotere, Dr. Kardinal testified he would have respected his patient's wishes and could have offered alternative choices which did not involve the use of Taxotere. *Id* at 141:1 – 145:22.

46. Disputed.   Dr. Kardinal testified that he was unaware of the risk of permanent hair loss associated with Taxotere and had he been advised of it, he would have disclosed the risk to Ms. Kahn.  Had Ms. Kahn asked for other options aside from Taxotere, Dr. Kardinal testified he would have respected his patient's wishes and could have offered alternative choices which did not involve the use of Taxotere. *Id* at 141:1 – 145:22.

47. Disputed.  A reasonable patient would reject a Taxotere regimen in favor of a Taxol regimen to avoid the elevated risk of developing permanent hair loss associated with Taxotere. Taxotere and Taxol offer equal efficacy for the treatment of Ms. Kahn's specific type of early stage breast cancer, along with other NCCN guidelines non-Taxotere regimens.

48. Disputed.  Ms. Kahn was not aware that the use of Taxotere carried with it a risk of permanent alopecia.  A reasonable patient would reject a Taxotere regimen in favor of a Taxol regimen to avoid the elevated risk of developing permanent hair loss associated with Taxotere. Taxotere and Taxol offer equal efficacy for the treatment of Ms. Kahn's specific type of early stage breast cancer, along with other NCCN guidelines non-Taxotere regimens.

49. Disputed. A reasonable patient would reject a Taxotere regimen in favor of a Taxol regimen to avoid the elevated risk of developing permanent hair loss associated with Taxotere. Taxotere and Taxol offer equal efficacy for the treatment of Ms. Kahn's specific type of early stage breast cancer, along with other NCCN guidelines non-Taxotere regimens.

50. Disputed.  Dr. Kardinal testified that he was unaware of the risk of permanent hair loss associated with Taxotere and had he been advised of it, he would have disclosed the risk to Ms. Kahn.  Had Ms. Kahn asked for other options aside from Taxotere, Dr. Kardinal testified he would have respected his patient's wishes and could have offered alternative choices which did not involve the use of Taxotere. Ex. C, Kardinal Dep. at 141:1 – 145:22.  Dr. Kardinal admitted he was not an expert in labeling and could not speak to adequacy of labeling.  *Id* at 50:10 – 52:7.  Dr. Larned's prescribing

habits are not relevant to this inquiry as she did not initially prescribe Taxotere to Ms. Kahn.

51. Admitted.

52. Disputed.  Dr. Kardinal testified that he was unaware of the risk of permanent hair loss associated with Taxotere and had he been advised of it, he would have disclosed the risk to Ms. Kahn.  Had Ms. Kahn asked for other options aside from Taxotere, Dr. Kardinal testified he would have respected his patient's wishes and could have offered alternative choices which did not involve the use of Taxotere. *Id* at 141:1 – 145:22.  Had Plaintiff been advised that the use of Taxotere might result in permanent hair loss, she would have asked for other options.  Ex. E, Kahn Dep. at 301:11 – 305:13.

53. Disputed.  Dr. Kardinal testified that he was unaware of the risk of permanent hair loss associated with Taxotere and had he been advised of it, he would have disclosed the risk to Ms. Kahn.  Had Ms. Kahn asked for other options aside from Taxotere, Dr. Kardinal testified he would have respected his patient's wishes and could have offered alternative choices which did not involve the use of Taxotere. Ex. C, Kardinal Dep. at 141:1 – 145:22.  Had Plaintiff been advised that the use of Taxotere might result in permanent hair loss, she would have asked for other options.  Ex. E, Kahn Dep. at 301:11 – 305:13.

54. Admitted that Dr. Kardinal and Dr. Larned both testified they are not experts in dermatology and therefore are not qualified to assess the underlying cause of Ms. Kahn's permanent hair loss. Ex. C, Kardinal Dep. at 50:19 – 51:8; Ex. D, Larned Dep. at 30:15-21.

55. Admitted.

56. Disputed.  Ms. Kahn clearly articulated on multiple occasions that if she would have been warned of the risk of permanent hair loss associated with Taxotere, she would have sought out other options.  Ex. E, Kahn Dep. at 301:11 – 305:13.

Dated: February 28, 2020          Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*


*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*

DAWN M. BARRIOS