**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                       **MDL NO. 2740**
**PRODUCTS LIABILITY LITIGATION**

                                                   **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO**
**Elizabeth Kahn, Case No. 2:16-cv-17039**

<u>**PLAINTIFF'S OPPOSITION TO SANOFI'S MOTION FOR SUMMARY JUDGMENT**
**UNDER THE LEARNED INTERMEDIARY DOCTRINE**</u>

        In seeking summary judgment, Sanofi ignores the patient's role in deciding the treatment

she should receive for her breast cancer.  In the context of breast cancer, as this Court has

previously recognized, a healthcare provider does not act alone—there is typically a thoughtful

discussion of various treatment options, including risks and benefits of each, and a careful

selection by the patient of which treatment option is best in consult with her oncologist.  Here,

Sanofi not only overlooks this bilateral decision-making process that occurred between Ms.

Kahn and her oncologist, Dr. Kardinal, but misconstrues the testimony of Dr. Kardinal.

        Accordingly, Sanofi's Motion for Summary Judgment based on the learned-intermediary

doctrine must be denied. Applying Louisiana law, courts in this district have denied learned-

intermediary summary judgment motions where a warning "would have changed the doctor's

actions and avoided or lessened Plaintiffs' injuries." *Frischertz v. SmithKline Beecham Corp.*,

2012 WL 2952427, at *2-3 (E.D. La. July 19, 2012); *In Re: Xarelto (Rivaroxaban) Prods. Liab.*

*Litig.*, 2017 WL 1393480, at *3 (E.D. La. April 17, 2017). In this case, it is clear that such

warning would have accomplished both. Accordingly, this Court should follow the decisions

applying Louisiana law in *In Re: Xarelto* and *Frischertz* and deny Sanofi's motion, because

Plaintiff Kahn's evidence, as detailed below, more than suffices to defeat Sanofi's summary judgment motion.

## I.      BACKGROUND

Dr. Kardinal, now-retired, was Ms. Kahn's prescribing oncologist. Dr. Kardinal testified that he did not regularly warn patients of a risk of permanent or persistent hair loss as in his experience, hair grew back after chemotherapy.[1]  In addition, during the time he was practicing he did not review or become aware of any literature showing Taxotere or any other chemotherapy drug carried with it the risk of permanent alopecia.[2] Dr. Kardinal testified that he regularly informed his patients that hair loss would be temporary.[3]  He also testified that had Sanofi warned about "permanent hair loss" in 2008, such information should have been disclosed and placed in the informed consent form.  *Id.* at 139:20-140:9.  Unfortunately, Sanofi chose to conceal this risk.  In globo Ex. A.

As it relates to Ms. Kahn, Dr. Kardinal testified that, had he received an adequate warning of the risk of permanent hair loss, he would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen. *Id*. at 141:1 – 145:22.  In that regard, Ms. Kahn testified: "If my doctor had told me that one of the side effects of Taxotere was permanent hair loss, I would have asked him what are my other options.  Just like when I was told about the surgery, about a mastectomy, I wanted to know what my other options were." Ex E, Kahn Dep. at 301:16-21.  Indeed, Ms. Kahn testified that she would have chosen a non-Taxotere treatment in order to avoid the "known" risk of permanent hair loss associated with Taxotere.  *Id.* at 301:11–305:13; 338:8-20; *see also* Ex. A-13, *Earnest* Pl.'s Ex. 200.)   Dr. Kardinal would have honored this decision. Ex. C, Kardinal Dep. at 145:11-

---

[1] Ex. C, Kardinal Dep. at 87:2 – 88:17.
[2] *Id*.
[3] *Id.* at 175:9-17.

146:12.

## II.    LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether a genuine issue of fact exists, the Court must review the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). In deciding a motion for summary judgment, a genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a rational trier of fact could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc.*, 655 F. 3d 435, 439 (5th Cir. 2011). This Court, however, must "refrain from making credibility determinations or weighing the evidence [. . . .]" *Devon Enterprises, LLC v. Arlington Independent School Dist.,* 541 Fed. Appx. 439, 441 (5th Cir. 2013) (quoting *Equal Employment Opportunity Comm'n v. WC&M Enters.*, 496 F. 3d 393, 398 (5th Cir. 2007)). Ultimately, this Court's concern is to ascertain "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**Argument**

I.      **Plaintiff Meets the Fifth Circuit's Requirements for Proving a Failure-to-Warn Claim Under the Learned-Intermediary Doctrine.**

Courts in this district, applying Louisiana law, have denied learned-intermediary summary judgment motions where there is evidence that a warning "would have changed the doctor's actions and avoided or lessened Plaintiffs' injuries." *Frischertz v. SmithKline Beecham Corp.*, 2012 WL 2952427, at *2-3 (E.D. La. July 19, 2012); *In Re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 1393480, at *3 (E.D. La. April 17, 2017). The LPLA (La. R.S. § 9:2800.53) defines an adequate warning in the following manner:

> "Adequate warning" means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.

In products liability claims involving prescription drugs, Louisiana applies the learned-intermediary doctrine, which permits a drug manufacturer to discharge its duty to warn consumers by adequately warning physicians. "The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician*." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 268 (5th Cir. 2002) (original emphasis). Thus, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient." *Id*. at 267 (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999).

Under the learned intermediary doctrine, to maintain a failure-to-warn claim, the plaintiff must show two things:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise

4

known to the physician.

Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

*Id.* at 265-66.

Sanofi believes that Ms. Kahn cannot make either showing.  However, the evidence is squarely to the contrary. At a minimum, the evidence is such that the learned-intermediary doctrine cannot be resolved on summary judgment in this case.

### A.   More Than Sufficient Evidence Exists As To Whether Ms. Kahn's Physician Would Have Acted Differently With an Adequate Warning Regarding Taxotere's Risk of Permanent Hair Loss

Louisiana federal courts examine whether the plaintiff's physician would have acted differently in response to an adequate warning such as to avoid the plaintiff's injuries.  *See In re: Xarelto*, 2017 WL 1393480, at *3 (denying summary judgment due to genuine issues of fact regarding whether plaintiffs' doctors were adequately warned and whether a different warning "would have changed the doctors' actions and avoided or lessened Plaintiffs' injuries"); *Frischertz*, 2012 WL 2952427, at *2-3 (denying summary judgment where the prescriber testified that, although he still prescribed the drug, he would have disclosed the stronger warning to his patients and deferred to the patient's wishes on whether to take the drug, and the patient submitted an affidavit that she would have refused the drug had she been properly warned); *cf. Harris v. Merck & Co., Inc.*, 2012 WL 5384720, at *6 (W.D. La. Nov. 1, 2012) (denying Rule 12(b)(6) motion to dismiss allegations that prescribing physician would have been deterred from prescribing an 80 milligram dose had an adequate warning of the dangers associated with that dose been provided).

At the time of Ms. Kahn's breast cancer treatment, Dr. Kardinal, her prescribing oncologist, was unaware of this risk, and, had he been aware, he would have advised Ms. Kahn

of the risk and respected her decision if she declined to move forward with treatment with Taxotere.[4]  Dr. Kardinal testified that he did not regularly warn patients of a risk of permanent or persistent hair loss as in his experience, hair grew back after chemotherapy.[5]  In addition, during the time he was practicing, he did not review or become aware of any literature showing Taxotere or any other chemotherapy drug carried with it the risk of permanent alopecia.[6] Dr. Kardinal testified that he regularly informed his patients that hair loss would be temporary.[7]

Sanofi claims that both Dr. Kardinal and Ms. Kahn received an "adequate" warning, citing the following underlined language (Rec. Doc. 8779-2 at10):

**What side effects or risk can I expect from being in the study?**

You may have side effects while on this study. Most of these are listed here, but there may be other side effects that we cannot predict. Side effects will very from person to person. Everyone taking part in the study will be carefully watched for any side effects. However, doctors do not know all the side effects that may happen. Side effects may be mild or very serious. Your health care team may give you medications to help lessen some of the side effects. Many side effects go away soon after you stop taking your study drugs. <u>In some cases, side effects may be very serious, long lasting, or may never go away.</u> *There is also a risk of death.*

Defs' Ex. I, Kahn Informed Consent at 10 (original italics).  This language does no such thing. It is part of a 29-page, single-spaced consent form. The form identifies *known* side effects, noting that some are temporary and some are permanent. Hair loss is called out specifically as a known side effect; indeed, it is not identified among those side effects that are permanent. *See, e.g.* Defs' *Id.* at 11, 15 ("Irregular or <u>permanent</u> stoppage of menstrual cycle" and "Severe lung problems (including shortness of breath, inflammation, and damage that could be <u>permanent</u>)"). In contrast, the catch-all paragraph that Sanofi identifies concerns *unknown* side effects— "doctors do not know all the side effects that may happen." In the form's own words, this

---

[4] *See* Ex. C, Kardinal Dep. at 141:22 – 143:1.
[5] *Id.* at 87:2 – 88:17.
[6] *Id.*
[7] *Id.* at 175:9-17.

paragraph addresses those side effects that "are [not] listed here." Nothing in this paragraph which refers to unknown side effects, then, may fairly be read to provide actual or constructive knowledge that hair loss, a known side effect—a side effect the form identifies as temporary—is in fact permanent.

Indeed, both Dr. Kardinal and Ms. Kahn, after reviewing the informed consent form, believed that any hair loss associated with Taxotere would be temporary in nature. Dr. Kardinal testified that had Sanofi warned about "permanent hair loss" in 2008, such information would have been disclosed and placed in the informed consent form. Ex. C, Kardinal Dep. at 139:20-140:9. Ms. Kahn's understanding of the unknown side effects being assessed in the clinical trial were limited to how the combination therapy would impact heart health and recovery from surgery. Ex. E, Kahn Dep. at 192:6 – 193:21. Furthermore, she has adamantly denied that any medical professional ever warned her of the potential risk when reviewing the consent form or during the course of her treatment. Instead, Ms. Kahn was consistently informed by numerous medical professionals that her hair loss would be temporary:

> Q.  First question: You told me that Nurse Thomas Told you that your hair would grow back, correct?
>
> A:  Yes, she did.
>
> Q.  Can you identify anyone else who told you specifically that your hair loss would be temporary?
>
> A.  Dr. Kardinal told me my hair loss would be temporary; Dr. Larned told me my hair loss would be temporary.

*Id*. at 254:20-255:4.

Therefore, Sanofi's assertion that Dr. Kardinal "was aware that Plaintiff's treatment carried a risk of permanent hair loss" or that Plaintiff was aware of the risk is contradicted by Dr. Kardinal's and Plaintiff's testimonies. Dr. Kardinal was unwavering in his testimony that,

Sanofi never warned him of the risk of permanent alopecia associated with Taxotere, and that, if they had warned, he would have reviewed that information, taken it seriously and advised his patients (including Plaintiff) of the same. Ex. C, Kardinal Dep. at 87:2-22; 141:1-145:22; and 175:9-17.   Dr. Kardinal was equally unwavering that had Plaintiff chosen not to use Taxotere in her treatment regimen, he would have respected that decision, as the ultimate decision on treatment rests with the patient. *Id*. Accordingly, in view of Dr. Kardinal's testimony, Plaintiff has more than adequately sustained her burden of proving that an adequate warning would have changed Dr. Kardinal's prescribing habits: Dr. Kardinal would have warned of the risk.

In addition, Plaintiff has more than adequately sustained her burden of proving that other options existed, which Dr. Kardinal was willing to prescribe, if she declined treatment with Taxotere after being advised of the risk of permanent hair loss.   Here, Dr. Kardinal unequivocally testified that, had he received an adequate warning of the risk of permanent hair loss, he would have counseled Plaintiff on the risk involved and would have respected Plaintiff's decision to go with a different treatment regimen. *Id.* at 141:1 – 145:22.   If Plaintiff declined treatment with Taxotere, Dr. Kardinal stated that other NCCN Guideline treatment options existed which would be equally efficacious including, but not limited to, treatment with AC alone, as Ms. Kahn did not have multi-node positive breast cancer, and/or Taxol containing regimens.   *Id.* at 145:11-146:12.

The totality of the evidence in Ms. Kahn's case establishes that a warning "would have changed the doctor's actions and avoided or lessened Plaintiffs' injuries," and, pursuant to *In Re: Xarelto* and *Frischertz*, more than sufficient evidence exists to deny Sanofi's motion for summary judgment.

**B.    Sanofi Ignores the Role of Ms. Kahn in Selecting Her Breast Cancer Treatment**

Sanofi incorrectly suggests that the only way to establish causation is through evidence that Plaintiff's prescribing physician would not have used or prescribed the drug had he received a stronger warning.  This is one method to establish causation; it is not, however, the exclusive means to do so.  Causation can also be established by showing that, if properly warned, a plaintiff's treating physician would have acted differently such that the injury alleged by the plaintiff could be avoided.  *In re: Xarelto*, 2017 WL 1393480, at *3. To assist in easing the cause-in-fact burden on a plaintiff, Louisiana recognizes the "heeding presumption." This presumption assumes that if an adequate warning had been provided, that warning would have been followed and the plaintiff would not have been injured. *Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987); *In re: Xarelto*, 2017 WL 1393480, at *3; *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 797 (E.D. La. Aug. 24, 2011). This presumption may be rebutted with evidence showing that an adequate warning would have been futile under the circumstances. *Bloxom*, 512 So.2d at 850.

Plaintiff has more than adequately met her burden of proving that if she had been advised of the risk she would have inquired about other available and viable options for the treatment of her breast cancer.  Ms. Kahn testified: "If my doctor had told me that one of the side effects of Taxotere was permanent hair loss, I would have asked him what are my other options.  Just like when I was told about the surgery, about a mastectomy, I wanted to know what my other options were." Ex. E. at 301:16-21.  Additionally, Plaintiff has satisfied her burden of proving that if she had been warned of Taxotere's risk, she would have chosen a non-Taxotere treatment in order to avoid the "known" risk of permanent hair loss associated with Taxotere.[8]  *Id*. at 301:11–305:13;

---

[8] Sanofi's assertion that: "There is no evidence Plaintiff inquired about other options after Dr. Kardinal and Nurse

9

338:8-20; *see also* Ex. A-13, *Earnest* Pl.'s Ex. 200.)  Despite Defendant's assertions to the contrary, a reasonable patient in Ms. Kahn's position would likewise forego treatment with Taxotere if the risk of permanent hair loss was disclosed as other options exist which can effectively treat early stage breast cancer while minimizing the unwanted risk of permanent hair loss.

As stated above, Dr. Kardinal did not warn Ms. Kahn of the risk of permanent hair loss because he was unaware of it at the time he prescribed Taxotere to Ms. Kahn.[9]  Likewise, it is disputed whether Dr. Kardinal's nurse told Ms. Kahn that she would have a full head of hair following chemotherapy and encouraged her by showing her another patient whose hair was re-growing.[10]  Had Plaintiff Kahn been advised that the use of Taxotere might result in permanent hair loss, she would have asked for other options.[11]  Had Ms. Kahn asked for other options aside from Taxotere, Dr. Kardinal testified he would have respected his patient's wishes and could have offered alternative choices which did not involve the use of Taxotere.[12]

As previously explained, had an adequate warning been provided to Dr. Kardinal, such a warning would not have been futile.  To the contrary, Plaintiff has introduced affirmative evidence that Dr. Kardinal would have altered his counseling and actions in treating Plaintiff Kahn had he been warned of the risk of permanent hair loss. Plaintiff is therefore entitled to the

---

Thomas explained the risk of the clinical trial to her, including the risk that hair loss may be 'long-lasting or may never go away,'" is inaccurate.  Plaintiff repeatedly testified that she *was never warned*—not through the informed consent form, nor by Dr. Kardinal, nor Dr. Larned, nor Nurse Thomas—Taxotere carried with it a risk of permanent hair loss.  Ex. E, Kahn Dep. at 17:2 –19:5; 27:15-28:3; 246:2-247:16; 248:7-249:3; 251:2-7; 254:20-255:4; and 260:3-14.  Although the risk of permanent alopecia was known to Sanofi at the time of Plaintiff's treatment in 2008, this risk was not disclosed to Plaintiff or her healthcare providers. Sanofi's concealment was successful as Ms. Kahn's prescribing oncologist Dr. Kardinal was likewise unaware of the risk.  Ex. C, Kardinal Dep. at 87:2-22; *Id.* at 141:1-145:22; and 175:9-17.  In turn, Plaintiff remained unaware of the risk and its causal association with Taxotere until she learned of lawsuits being filed against Sanofi for permanent hair loss in 2016.  *Id.* Indeed, Ms. Kahn was reassured repeatedly by her medical providers that her hair loss would be temporary in nature. Ex. E, Kahn Dep. at 205:21–206:19 and 254:20–255:4.

[9] Ex. C, Kardinal Dep. at 141:22 – 143:1
[10] *See* Ex. E, Kahn Dep. at 205:21 – 206:19.
[11] *Id.* at 301:11 – 305:13.
[12] *See* Ex. C, Kardinal Dep. at 141:1 – 145:22.

benefit of the heeding presumption under Louisiana law.

Accordingly, in view of her testimony, Plaintiff has more than adequately sustained her burden of proving that had she been advised of the risk of permanent hair loss she would have sought out other treatment options that did not pose such a risk. This testimony easily satisfies this Court's requirements of a patient inquiry for alternative treatment options, and at a minimum creates a genuine dispute of fact rendering summary judgment improper.

## CONCLUSION

For these reasons, the Sanofi Defendants have failed to meet their burden to show entitlement to summary judgment on Plaintiff's failure to warn claims.  Accordingly, summary judgment should be denied.

Dated: February 28, 2020                    Respectfully submitted,


*/s/ Christopher L. Coffin*                  */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)              Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.            Andre Mura (CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505            GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163               6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                       Los Angeles, California 90045
Fax: (504) 355-0089                         Telephone: 510-350-9700
ccoffin@pbclawfirm.com                      Facsimile: 510-350-9701
                                            kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                            *Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*                       */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                  Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                    BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                     701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street     New Orleans, LA 70139
New Orleans, LA 70163-2800                  Phone: 504-524-3300
Phone: 504-522-2304                         Fax: 504-524-3313
Fax: 504-528-9973                           barrios@bkc-law.com
plambert@gainsben.com
                                            *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*

DAWN M. BARRIOS