**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                                          **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                                    **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

**Elizabeth Kahn, Case No. 2:16-cv-17039.**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION**

For failure-to-warn cases involving chemotherapy drugs, this Court has articulated a framework that contemplates a vigorous, albeit hypothetical, discussion between patients and their prescribing physicians.  This analysis requires Plaintiff to come forward with evidence supporting each of four scenarios: "[1] whether and how the doctor would have advised the patient of the risk of permanent alopecia associated with Taxotere, [2] whether the patient would have inquired about other options, [3] what the doctor would have recommended, and [4] what decision the plaintiff would have ultimately made."  Order & Reasons, Rec. Doc. 7571 at 16 (numerals added).  Plaintiff's Opposition confirms there is no triable issue under the Court's previous rulings.

1.      **Plaintiff has not come forward with a legally sufficient ground to find that she would have inquired about other options.**

Even if there were a triable issue on the first element—whether and how Dr. Kardinal would have advised Ms. Kahn of the risk of permanent alopecia associated with Taxotere[1]—this

---

[1] Defendants note that the implicit premise in the first step of the Court's analysis (that the risk discussion would be different if a doctor knew of a previously unknown risk) does not apply here. Dr. Kardinal's actual counseling conversation with Plaintiff included an Informed Consent for the clinical trial, which identified that <u>any</u> side effect— one of which was hair loss—may be "long-lasting ***or may never go away.***"  DSOF ¶ 28 (emphases added).  Plaintiff contends that neither she nor Dr. Kardinal properly understood the Informed Consent's warning to apply to both "known" and "unknown" side effects despite the fact that the warning appears in a paragraph discussing predicted side effects <u>and</u> the potential for unpredictable side effects.  Plaintiff's strained interpretation of the Informed Consent

Court's analysis still requires Plaintiff to come forward with legally sufficient evidence concerning "whether [she] would have inquired about other options" and "what decision [she] would have ultimately made."  Rec. Doc. 7571 at 16.

When a plaintiff fails to testify that a different warning would have caused her to ask for *and* choose an alternative, this Court has held the plaintiff cannot meet her burden.  For example, in *Hunt v. McNeil Consumer Healthcare*, this Court held that "no reasonable jury could find that Plaintiff has established causation [including because] Plaintiff did not testify that a different warning label would have changed her decision to administer Children's Motrin to M.H., nor was she ever asked questions to this effect by counsel."  2014 WL 1779471, at *3 (E.D. La. May 5, 2014).  There, the plaintiff testified about the risk information she would have liked to have known about Motrin, but failed to testify how a different warning would have caused her to administer the drug differently (or not at all).  *See id.*  Based on this absence of proof, the Court held that no reasonable jury could find for the plaintiff as a matter of law.

Like the plaintiff in *Hunt*, Ms. Kahn offers no evidence that a different warning would have changed her decision to undergo chemotherapy with Taxotere.  Instead, she relies on four pages of her deposition (pp. 301-305) as support for the proposition that she might have asked Dr. Kardinal for alternatives (had this hypothetical discussion occurred).  The testimony, however, reveals that Ms. Kahn <u>did not know</u> whether she would have asked for—let alone chosen—an alternative chemotherapy:

> Q.    If you had been told that there was a 3 percent chance of permanent or persisting hair loss, would you have asked for other options?
>
> A.    And then that gets tricky because you can pull out the paper that talked about those damages that 3 percent or less had,

is not supported by its plain language or Plaintiff's deposition testimony on her understanding of it.  For the reasons set forth in more detail in Section 3 below, Plaintiff's efforts to distance herself from the Consent fail.

and that I signed off on.  So I can't -- when it gets down to percentages, I don't know.

Q.   So are you saying you're afraid to give me your testimony because of how it impacts the other --

A.   No.  It's just, I can't -- I don't know.  I can tell you, at 10 percent, certainly would.  When you start going down in smaller numbers, **I can't give you a definitive answer what I would have said at the time**.

DSOF ¶ 56 (emphases added).[2]  This testimony fails to satisfy Plaintiff's burden because it does not establish what she would have done in a hypothetical setting where Dr. Kardinal provided her supposedly different prescribing information.  Further, before she started treatment, Ms. Kahn decided she was going to do everything she could to survive, which included enrolling in the NSABP B-40 clinical trial because she believed it provided her with the best chance of survival.  DSOF ¶¶ 6, 31.  Taken together, Ms. Kahn's uncertainty about what she might have done on the one hand and her belief that the clinical trial gave her the best chance to beat breast cancer on the other, the *only* evidence in the record shows that Plaintiff would not have inquired about other options, much less agreed to them.[3]

**2.     Plaintiff failed to present any evidence that a different warning would have caused Dr. Kardinal to change his prescribing decision.**

The Court's recent decision in the *Gahan* case reiterated that Plaintiff still must prove that "an adequate warning would have changed her doctor's prescribing decision."  Order & Reasons, Rec. Doc. 9440 at 4 (citing Rec. Doc. 7571).  On this point, Dr. Kardinal's testimony was clear:

---

[2]  Plaintiff testified that only "[i]n hindsight, I would say I would definitely ask for other options." *Id.*  Louisiana courts, however, prohibit reliance on "hindsight" testimony in these circumstances "[b]ecause of the likelihood of a patient's bias."  *Hondroulis v. Schuhmacher*, 553 So. 2d 398, 412 (La. 1988) (adopting an objective, "reasonable patient," standard of causation); *see also Snider v. La. Med. Mut. Ins. Co.*, 2013-0579 (La. 12/10/13), 130 So. 3d 922, 930 n.7.

[3]  The time for Plaintiff to come forward with evidence to the contrary is now, but she has failed to do so.  *See In re Chantix (Varenicline) Prods. Liab. Litig.*, 881 F. Supp. 2d 1333, 1343 (N.D. Ala. 2012) ("The time to present evidence concerning an issue of material fact is now.").

> Q.      -- if the Taxotere label had said, "In most cases, normal hair growth should return.  In some cases, frequency not known, permanent hair loss has been observed," would that change your recommendation that Miss Kahn participate in NSABP B-40?
>
> A.      **No**.

Kardinal Dep. 105:18-106:1 (emphases added), Ex. G to Defs.' Mot., Rec. Doc. 9300-9.  Plaintiff repeatedly cites to testimony from Dr. Kardinal about supposed alternatives to Taxotere-containing regimens.  *See* Pl.'s Opp. at 8-11.  However, when asked by Plaintiff's counsel whether other chemotherapy drugs were adequate alternatives, Dr. Kardinal only testified they were similar *in terms of efficacy*.  He never testified that he would have *recommended or prescribed* anything other than Taxotere to treat Plaintiff:

> Q.      And Doctor . . . If I'm remembering correctly, Mr. Miceli phrased a question that if you knew -- something to the effect of if you knew that Taxotere had a risk of persistent hair loss and a patient expressed a concern about persistent hair loss, you would potentially prescribe Taxol to that patient.  Was that your testimony?
>
>                     . . .
>
> A.      **No**.

DSOF ¶ 46 (emphases added).  Plaintiff obtained <u>no</u> testimony from Dr. Kardinal about what he would have recommended if Plaintiff had refused Taxotere or about the individualized risks, benefits, or differences between a regimen with Taxotere versus one without.  Plaintiff also failed to adduce any evidence regarding how, if at all, Dr. Kardinal would have presented to her these regimen-specific risks, benefits, and differences.  Plaintiff's failure to adduce evidence that Dr. Kardinal would have recommended and prescribed an alternative regimen compels summary judgment for Defendants.  Rec. Doc. 9440 at 4; *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265-66 (5th Cir. 2002); *In re Chantix*, 881 F. Supp. 2d at 1343.

4

**3.** **Plaintiff failed to present a legally sufficient ground to find that she would have chosen a non-Taxotere regimen.**

Plaintiffs in this litigation cannot satisfy their burden to show "what decision [they] would have ultimately made" by simply declaring, in hindsight, that they would not have taken Taxotere had they known that their hair would not return exactly as it was before.

Under this Court's framework, Plaintiffs must adduce evidence that their oncologists would have changed their prescribing decision and recommended a chemotherapy without Taxotere, and, in turn, the Plaintiff would have accepted this treatment after being advised of and weighing the unique risks and benefits. This is not an inquiry that can be made in the abstract; and this Court's framework is not one that can be satisfied by declaring that the plaintiff would have used "something else."

As this Court knows, all chemotherapies have unique risks and benefits; and they must further be matched against the cancer type and the patient's health history. There is not, as Plaintiff suggests, a magical chemotherapy that is identical to Taxotere in all respects, but for the alleged risk of permanent hair loss. It is undisputed that numerous chemotherapies are associated with reports of permanent hair loss—irrespective of Taxotere.[4] Consequently, to present a triable issue of fact, Plaintiff must demonstrate: (1) which other chemotherapy regimens would have been offered by the oncologist; (2) what the oncologist would have conveyed to her about their risks and benefits during the vigorous and robust informed consent discussion; and then finally, (3) what Plaintiff would have ultimately decided after having been fully informed of the risks and benefits

---

[4] Plaintiff's expert witnesses, Dr. Ellen Feigel, Dr. Laura Plunkett, and Dr. Antonella Tosti each testified in the *Earnest* trial that the alternatives to Taxotere are associated with reports of permanent hair loss. Trial Tr. at 1236:12-22 (Dr. Feigel), Rec. Doc. 8412; Trial Tr. at 861:3-10, 873:20-874:21 (Dr. Plunkett), Rec. Doc. 8408; Trial Tr. at 1030:6-1031:16, 1057:17-1058:23, 1128:24-1129:2 (Dr. Tosti), Rec. Doc. 8411.

of whatever other chemotherapy the physician might have been willing to prescribe.  Without evidence sufficient to satisfy this, there is no triable issue of fact.

Here, Plaintiff's evidence falls far short.  Plaintiff again cites to Dr. Kardinal's testimony that certain alternatives were similar *in terms of efficacy*.  *See* Pl.'s Opp. at 8-11.  His testimony, however, says nothing about the relative safety of those alternatives in the context of Plaintiff's specific medical history.  Dr. Kardinal testified that certain alternatives—Taxol, for example— carried higher risks for severe neuropathy and infusion-site reactions.  DSOF ¶ 41.  Dr. Kardinal further testified that he preferred Taxotere over other regimens, such as Taxol, because Taxotere does not present the risk of these serious side effects.  *Id.*  Dr. Larned, who took over Plaintiff's treatment after her first infusion, also testified that Taxotere presents fewer serious side effects than alternatives such as Taxol.  DSOF ¶ 42.  And both doctors testified that they treated patients who experienced permanent hair loss on other chemotherapy drugs.  DSOF ¶¶ 15-18.[5]

Plaintiff's testimony provides no insight into what decision she would have made had Dr. Kardinal discussed these options with her.  Plaintiff was uncertain about whether she would have even asked for other options.  *See* DSOF ¶ 56.  She also offered no testimony that she considered and would have accepted the increased risks Dr. Kardinal identified, or that she would have foregone chemotherapy.  To the contrary, before she started treatment, Ms. Kahn's primary concern was survival.  DSOF ¶ 6.  Instead, Plaintiff relies on the existence of a hypothetical chemotherapy that is as effective but carries *no risk* of permanent hair loss and presents no serious

---

[5] Plaintiff contends that Dr. Kardinal was not aware of permanent alopecia by focusing on "literature showing Taxotere or any other chemotherapy drug carried" such a risk.  Pl.'s Opp. at 2, 6.  Literature, however, is not the issue: both of her oncologists testified that they learned of permanent alopecia associated with chemotherapy drugs through their *experience* treating patients.  DSOF ¶¶ 11, 15, 16, 18.

side effects that would impact her treatment decisions.  *See* Pl.'s Opp. at 9-11.  No such regimen exists.[6]

Without evidence regarding how Dr. Kardinal would have presented these comparative risks to Ms. Kahn, what questions she would have asked, the considerations she would have weighed, and whether she ultimately would have accepted these risks, Plaintiff cannot meet her burden to demonstrate that her decision would not have involved Taxotere.  *See Hunt*, 2014 WL 1779471, at *3.  Indeed, no reasonable patient would be able to say what decision she would make under the circumstances without first knowing the risks, benefits, and differences between a chemotherapy regimen with Taxotere <u>and</u> one without it.[7]

By contrast, Defendants <u>did</u> offer evidence to show that a different consent discussion would not have made a difference in Ms. Kahn's ultimate decision.  At the time she agreed to participate in the *randomized* clinical trial, Ms. Kahn consented to participating in a scientific experiment, the consent form for which disclosed that anything could happen—including unknown and unwarned-about side effects, as well as side effects that were known but could be more severe, longer in duration, or even permanent:

> Q.     Okay.  In other words, ***you understood that any side effect could be long-lasting or might not go away***, correct?
>
> . . .

---

[6] Plaintiff dismisses evidence from her doctors that alternative regimens carried risks of permanent chemotherapy-induced alopecia ("permanent alopecia" or "permanent hair loss") and serious side effects that cautioned against recommending the alternatives. For this Motion, Defendants adopt the definition of "permanent chemotherapy-induced alopecia" set forth in Plaintiff's Second Amended Long Form Master Complaint.  *See* Defs.' Mot. n.4.

[7] The Fifth Circuit also requires Plaintiff to show that another treatment regimen existed that did not pose the risk of her alleged injury.  *See Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098-99 (5th Cir. 1991); *see also* Jury Instructions, *In re Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest)*, No. 16-cv-17144, Rec. Doc. 8283 at 10 (defining "proximate cause" as "the cause without which the injury would not have occurred.").  Plaintiff failed to present evidence that another chemotherapy existed that did not pose the risk of her alleged injury.  Both Dr. Kardinal and Dr. Larned confirmed that alternative regimens present a risk of permanent alopecia.  DSOF ¶¶ 15-18; *see also* Defs.' Mot. at 8-9.  Plaintiff cannot prove she would not have sustained her alleged injury "but for" Taxotere.

      A.    ***That's what I read here***.

DSOF ¶ 30 (emphases added).  Plaintiff attempts to brush aside this testimony by contending, without basis, that she interpreted the warning as applying only to "unknown" side effects.  *See* Pl.'s Opp. at 6-7.  Ms. Kahn's testimony, however, mentions nothing about "unknown" risks. Rather, she testified she understood that **<u>any</u>** side effect could be "long-lasting or might not go away."  Further, Ms. Kahn agreed to this randomized clinical trial after an opportunity to discuss the Informed Consent with her healthcare professionals at length and have all of her questions answered—a fact she conceded during deposition.  *See* DSOF ¶ 25 (citing Kahn Dep. (Dec. 7, 2017) 188:20-190:23 ("my doctor and the nurse went over each page with me")).[8]  As such, Plaintiff has failed to carry her burden.

**4.**    **Plaintiff failed to oppose Defendants' motion concerning her redhibition claim.**

      In response to Defendants' Motion, Plaintiff does not oppose summary judgment on her redhibition claim or contradict any of the grounds for the same.  Summary judgment is appropriate.

<u>**CONCLUSION**</u>

      For these reasons, the Court should grant Defendants' motion for summary judgment on Plaintiff's claims.

---

[8]  Similarly, in support of her contention that she interpreted the term "hair loss" in the Informed Consent to mean "temporary" hair loss, Plaintiff relies on events that occurred **<u>after</u>** she signed the Informed Consent, such as an alleged incident in which her clinical trial nurse "show[ed] her another patient whose hair was re-growing."  PSOF ¶ 27; *see also* Kahn Dep. at 205:12-207:16, Rec. Doc. 9300-7 ("But it was after we had agreed to be part of the clinical trial."). However, it is logically impossible that a *later* event informed Ms. Kahn's understanding of the Informed Consent *before* she signed it.

Respectfully submitted,

/s/ Douglas J. Moore
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S., LLC and
Sanofi US Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2020, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ Douglas J. Moore