UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

         SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039.

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS AGAINST <u>PLAINTIFF ELIZABETH KAHN</u>

Plaintiff Elizabeth Kahn argues nowhere in her Opposition that she acted reasonably to investigate the cause of her injury between January 16, 2010 (when she sustained her injury) and January 16, 2011 (when the prescription period ended). On this alone, the Court should enter summary judgment in Sanofi's favor as it is Ms. Kahn's burden to prove an applicable exception to prescription under *contra non valentem*. Instead, Ms. Kahn makes two arguments. First, Ms. Kahn argues the Court should amend the judicially accepted definition of injury to alter the prescription period. Second, Ms. Kahn, repeating an unpersuasive argument raised in *Thibodeaux*, asserts that Sanofi prevented her from availing herself of her cause of action. The Court previously rejected both arguments and should do so again here

### I.   MS. KAHN'S COMPLAINT IS FACIALLY UNTIMELY.

Ms. Kahn asserts that Sanofi bases the definition of her injury on a misreading of the Master Complaint. The Court, however, has already rejected this argument because the Master Complaint defines all Plaintiffs' injury as occurring six months after the completion of chemotherapy. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 16-CV-15607, 2020 WL 375597, at *2 (E.D. La. Jan. 23, 2020) ("Both as a general matter and for purposes of prescription, this MDL requires defining Plaintiffs' injury. This Court used a definition that the medical literature has adopted and

that Plaintiffs have espoused."); Rec Doc. 9110 at 4–5; *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 16-15607, 2019 WL 2995897, at *2 n.12 (E.D. La. July 9, 2019). Ms. Kahn incorporated the Master Complaint into her own pleadings. Second Am. Master Compl. ("AMC") (Rec. Doc. 4407) ¶ 181; Ex. K, Kahn Am. Short Form Compl. 1. It is undisputed that, based on her own pleadings, Ms. Kahn sustained her injury in January 2010, six months after completing her chemotherapy treatment in July 2009. *See* AMC ¶ 181. Because Ms. Kahn waited five years after prescription had run to file, her claims are barred on their face. *In re Taxotere*, 2019 WL 2995897, at *2 n.12; Rec. Doc. 9110 at 5.

## II. MS. KAHN FAILED TO PROVE AN EXCEPTION TO THE FACIAL PRESCRIPTION OF HER CLAIMS.

Ms. Kahn must establish an exception to prescription under *contra non valentem*. But she has not shown that she lacked knowledge sufficient to excite the attention of a reasonable person to inquire into whether she had a cause of action. *See Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 249–50.

Instead, Ms. Kahn admitted the following:

1. She expected to lose her hair and expected it to regrow sometime after chemotherapy. Ex. B, Dec. 7, 2017 Kahn Dep. 217:10–218:16.

2. She lost her hair during her first round of chemotherapy in June 2008. Ex. E, Jan. 31, 2018 Kahn Dep. 13:15–24.

3. She also lost her eyebrows and eyelashes. Ex. B, Dec. 7, 2017 Kahn Dep. 46:15–23, 49:9–15.

4. When her hair did fall out, she specifically attributed her hair loss to Taxotere. *Id.* at 228:23–229:10.[1]

---

[1] Although Ms. Kahn attempts to dispute this fact, she points to nothing in the record to controvert her clear testimony that she believed Taxotere – and no other drug – caused her hair loss. *Cortez v. Depuy Orthopaedics, Inc.*, No. 15-cv-617, 2016 WL 633665, at *2 (E.D. La. Feb. 17, 2016) ("The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

2

5. Although she experienced some hair regrowth, the thickness was not the same as before. *Id.* at 45:12–46:5.

6. After chemotherapy, her eyebrows never grew back, so she has drawn on her eyebrows every morning for more than a decade. *See id.* at 46:15–23.

7. She did not file her lawsuit until December 9, 2016. Ex. A, PFS § I.4.

Given these admissions, a reasonable plaintiff would have investigated her injury within the prescription period. Ms. Kahn, however, took no such action. *See, e.g.*, *Bartucci v. Jackson*, 246 F. App'x 254, 258 n.3 (5th Cir. 2007) (plaintiff's "failure to even try to discover what happened to him demonstrates a lack of diligence which precludes him from establishing an exception to prescription").[2] To explain away her lack of investigation, Ms. Kahn makes two arguments, neither of which is compelling.

First, recognizing that she made no inquiry into her claim during the prescription period, Ms. Kahn seeks to manipulate the operative definition of her alleged injury. And contrary to the PSC's previous request to extend the injury date later (as much as two years after chemotherapy ends),[3] it now argues that Ms. Kahn suffered her injury earlier than six months after the completion of chemotherapy, focusing on when she ended "cytotoxic chemotherapy." This artifice is at odds with the Master Complaint, the Court's application of *contra non valentem*, and the undisputed

---

[2] Ms. Kahn asserts that the fact finder should resolve prescription questions. The cases cited, however, cannot bear the weight. In *Chiasson v. Medtronic Inc.*, for example, the court declined to rule on prescription at the *motion to dismiss* stage, not at the later *summary judgment* stage where this Court now has the testimony of Ms. Kahn and her doctors. *Cf.* No. 16-cv-3552, 2016 WL 4191837, at *6 (E.D. La. Aug. 9, 2016), *with* Pl's Opp. 5. Ms. Kahn's citation to *Body By Cook v. Ingersoll-Rand Co.*, also lacks context. There, the district court considered the broader question of whether *contra non valentem* generally was a question of fact or law. 39 F. Supp. 3d 827, 837 (E.D. La. 2014). In ruling it generally was the former, the corollary of this holding is that a jury *could* decide *contra non valentem*. This Court, however, is well-within its direction to decide *contra non valentem* where, like here, no genuine issue of material fact exists. *See id.* at 839.

[3] After this Court held the PSC to its pleaded definition of the injury (*i.e.*, six months after chemotherapy), the PSC moved to amend its Master Complaint to extend the six-month definition. Rec. Doc. 8334-2 at 38 ("There is no single definition for Permanent Chemotherapy Induced Alopecia[.]"). In rejecting this argument, the Court explained that it had relied on this definition for more than two years and had adopted it in summary judgment rulings on the statute of limitations. Rec. Doc. 8702 at 3–4.

3

facts in this case. The purpose, of course, is transparent: by manufacturing an earlier injury date, Ms. Kahn can shoehorn three doctor's visits into a newly defined prescription period. But Ms. Kahn's citation to her pre-injury doctor's visits make no difference – her uncontroverted testimony demonstrates that she never relied on any of her doctor's alleged statements about her hair loss. Second, Ms. Kahn contends that Sanofi effectually prevented her from availing herself of her cause of action. The Court, as it did in *Thibodeaux*, should reject this argument.

### A.     Ms. Kahn Has Failed to Show the Discovery Rule Applies.

#### 1.     Ms. Kahn sustained her injury after the completion of chemotherapy.

Plaintiff's Opposition is a calculated end-run around the well-accepted definition of permanent hair loss and this Court's existing jurisprudence. The Master Complaint has never distinguished between "cytotoxic" and "non-cytotoxic" therapies within a single chemotherapy regimen, as Plaintiff now asserts. AMC ¶ 181 (defining permanent alopecia as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy"); Rec. Doc. 8702 at 5 ("Presumably, Plaintiffs made an informed decision to define their injury the way they originally did. The Court will not allow Plaintiffs at this point in the MDL to backtrack on that decision."). The Court, in turn, has relied on the Master Complaint to define the injury as occurring six months after a Plaintiff's "overall chemotherapy treatment" because it provides Plaintiffs with a later injury date. *See* Rec. Doc. 9110 at 5 n.17. It is undisputed that Ms. Kahn's overall chemotherapy treatment began in May 2008 and ended in July 2009. Ms. Kahn's desire to change the date of her injury to September 2008 is for no reason other than to move up prescription.

The Court should reject Ms. Kahn's endeavor – not only because it is at odds with her allegations and this Court's Order – but also to prevent future litigants from relying on self-selected injury dates based on their legal benefit. Motion practice in *Thibodeaux* highlights the potential for abuse. Ms. Thibodeaux – like Ms. Kahn – participated in the exact same clinical trial, NSABP

4

B-40. Ex. O, Thibodeaux – Consent Form. And Ms. Thibodeaux – like Ms. Kahn – completed her chemotherapy with 10 cycles of Avastin.[4] Under the *same* treatment facts, the calculation of Ms. Thibodeaux and Ms. Kahn's injury dates should be the *same*. That said, for Ms. Thibodaux, the PSC agreed that she received "chemotherapy from February 2008 until June of 2009," the end date being her last treatment with Avastin. Rec. Doc. 8990 (Under Seal); *see* Ex. P at 1265–66. For Ms. Kahn, however, the PSC now tries to disregard her last treatment date to strategically save her claims.

Finally, Ms. Kahn's new definition contradicts the undisputed facts of her treatment. A decade after her treatment, Ms. Kahn now asserts that her injury occurred after cytotoxic chemotherapy and that Avastin carries no risk of hair loss. This is untrue. Ms. Kahn's treatment information warned that Avastin carried a high risk of hair loss. Indeed, before treatment, Ms. Kahn received a Chemocare sheet, which explained that Avastin is "used as part of a combination chemotherapy regimen," and that "*Hair loss*" *is a common side effect of Avastin occurring in more than 30% of patients*. Ex. R, 1018 – KAHN ELIZABETH – Avastin Chemocare (emphasis added). It is undisputed that Ms. Kahn had information warning that her hair loss was a common side effect of Avastin. Ms. Kahn's proposed definition of the injury ignores undisputed facts and puts it at odds with Ms. Kahn's own treatment.

### 2. Ms. Kahn had actual or constructive knowledge of the connection between Taxotere and her injury, but failed to reasonably investigate.

When Ms. Kahn sustained her injury she knew or should have known of the connection between Taxotere and her permanent hair loss. To this, Ms. Kahn raises no genuine issue of

---

[4] Ms. Thibodeaux's chemotherapy treatment included Taxotere, Gemzar, and Avastin; then Adriamycin, Cytoxan, and Avastin; then surgery; and then 10 cycles of Avastin after surgery. Ex. P, Thibodeaux Treatment Records. Similarly, Ms. Kahn's treatment included Taxotere, Xeloda, and Avastin; then Adriamycin, Cytoxan, and Avastin; then surgery; and then 10 cycles of Avastin after surgery. Ex. Q, Kahn Treatment Records.

5

material fact. *Supra* Part II. Indeed, nowhere does Ms. Kahn argue that she undertook a reasonable inquiry of her possible claims between January 16, 2010 (when she sustained her injury) and January 16, 2011 (when the prescription period ended). Ms. Kahn's failure to establish an exception under *contra non valentem* warrants summary judgment in Sanofi's favor.

### 3. Regardless of the prescription period, Ms. Kahn never relied on any statement by her doctors about her alleged injury.

Even if the Court permitted Ms. Kahn's *post hoc* redefinition, which Plaintiff offers only to capture doctor's visits *during* chemotherapy to toll a premature prescriptive period, the outcome would remain the same. As the Court has recognized, a doctor's visit on its own is not enough to toll prescription. In *Johnson*, for example, the Court dismissed Plaintiff's case because, as the Court explained, Ms. Johnson (unlike the plaintiff in *Hoerner v. Wesley-Jensen, Inc.*) had presented no evidence demonstrating that she (1) investigated her injury, *and* (2) relied on information she discovered from such an investigation. *In re Taxotere*, 2019 WL 2995897, at *2 (citing 95-0553 (La. App. 4 Cir. 1996), 684 So. 2d 508). This test is conjunctive, not disjunctive. *See* Rec. Doc. 9110 at 6 ("[T]his is not the same as inquiring with a physician *and*, for example, reasonably relying on his or her medical opinion that hair regrowth may take some time.") (emphasis added).

Here, Ms. Kahn's meetings with Dr. Roberie and Dr. Claiborne are inconsequential.[5] Ms. Kahn expressly dismissed Dr. Roberie's suggestion in April 2009 that age could affect her hair thinness. Ex. B, Dec. 7, 2017 Kahn Dep. 257:14–258:5, 270:24; *see also* Ex. S, Dec. 7, 2017 Kahn Dep. 273:14–274:21 (testifying that Dr. Roberie "didn't answer my question" about "hair balding"). As to her meeting with Dr. Clairborne in July 2009, Ms. Kahn asked only whether she

---

[5] All of these alleged conversations occurred before the prescription period: **January 16, 2010 to January 16, 2011**. Sanofi, nevertheless, addresses them.

6

could do anything to make her hair grow faster. Ex. T, Jan. 31, 2018 Kahn Dep. 44:9–45:21.[6]  Dr. Claiborne suggested Biotin. *Id.*  But Dr. Claiborne did not provide any alternative causes of Ms. Kahn's hair loss.  Nor did Dr. Claiborne assure her that Biotin would regrow her hair at some point in the indefinite future. *Cf. In re Taxotere*, 2019 WL 2995897, at *3 (applying *contra non valentem* to MDL Plaintiff Barbara Earnest's claims).  Indeed, Ms. Kahn testified that she does not even remember taking Biotin. Ex. T, Jan. 31, 2018 Kahn Dep. 53:11–17.

Ms. Kahn also states she met with Dr. Larned in November 2009.  But Dr. Larned gave Ms. Kahn no alternative causes, clinical diagnoses, or promises that hair growth may take longer than expected. *Cf. Hoerner*, 684 So. 2d at 514 (applying *contra non valentem* where plaintiff's doctor attributed eye injury to a "bug" and not the true cause: wearing extended-wear contacts); *Guillot v. Daimlerchrysler Corp.*, 2008-1485 (La. App. 4 Cir. 9/24/10), 50 So. 3d 173, 182–83 (plaintiffs led to believe something other than the product caused their injuries).[7]  If anything, Dr. Larned's inability to provide Ms. Kahn with *any* explanation should have prompted *more* concern. Ms. Kahn, however, never asked Dr. Larned – or any other doctor – about her hair loss until she filed her claim in 2016.

**B.     Sanofi Did Not Prevent Ms. Kahn from Availing Herself of Her Claims.**

Last, Ms. Kahn asserts that *contra non valentem* applies because Sanofi effectually prevented her from availing herself of her claims.  Ms. Kahn contends that Sanofi "elected, on multiple occasions, not to inform the medical community and patients of the risk of permanent

---

[6] Although Ms. Kahn refers to Dr. Coller-Oschner in her deposition, she met with Dr. Martin Claiborne on July 27, 2009. Ex. U, July 27, 2009 Claiborne Records (6-8).

[7] Nor was Ms. Kahn's unsupported belief that her hair would grow back for five years reasonable. *Cf. Cortez*, 2016 WL 633665, at *3 (plaintiff did not attribute injury to the product at the time of injury).  Constructive knowledge triggers prescription just the same as actual knowledge.  The undisputed facts show that Ms. Kahn lost her hair, eyebrows, and eyelashes during chemotherapy.  Her hair came back thinner and her eyebrows never returned.  And, Ms. Kahn attributed her hair loss, not just to chemotherapy in general, but to Taxotere alone.

7

hair loss with Taxotere[.]" Pl.'s Opp. 13. As examples of this alleged withholding, Ms. Kahn includes misconstrued Sanofi documents and employee deposition testimony. *Id.* at 13–15. The Court rejected this same argument in *Thibodeaux* and should do so again here. Rec. Doc. 9110.

First, Ms. Kahn's argument that "Sanofi prevented [her] from availing herself of her cause of action" by failing to "inform the medical community" about the alleged risk of permanent hair is a futility argument, which the Court has already rejected. Rec. Doc. 9110 at 7 ("The Court rejects this circular argument. Prescription cannot be tolled because the manufacturer did not issue an adequate warning."). To that end, "[i]f the manufacturer had issued an adequate warning," Ms. Kahn "would not have a failure to warn claim." *Id.* The Opposition also suggests that Ms. Kahn did not sustain her injury until she heard about a lawyer's advertisement. But Ms. Kahn's argument conflicts with the undisputed facts: Ms. Kahn knew that (1) Taxotere – and no other drug – allegedly caused her hair loss; (2) her hair should come back after chemotherapy; (3) the hair on her head came back thinner and her eyebrows did not come back at all after chemotherapy; and (4) she was not informed of this risk.[8] Contrary to the logical end of Ms. Kahn's argument, prescription applies to failure-to-warn claims.

Second, Ms. Kahn's argument fails because she *cites no case law* to support the argument that Sanofi's alleged "withholding" of information prevented her from availing herself of her cause of action. *See* Pl.'s Opp. 14–16.[9] Indeed, this category of *contra non valentem* only applies where the defendant took some *affirmative act* against the plaintiff *specifically*. *See Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div. of Prob. & Parole*, 2015-0823 (La. 11/20/15), 187 So. 3d 395,

---

[8] Ex. S, Dec. 7, 2017 Kahn Dep. 39:10–15 ("What have I told [family members]? That one of the drugs that I took during chemo has – one of the side effects is permanent hair loss, and that I was never told that, and I was always hoping my hair would grow back.").

[9] Ms. Kahn's citation to this Court's Order permitting MDL Plaintiff Jacqueline Mills to proceed with a fraud claim under Georgia law does not implicate, nor even mention, *contra non valentem*. Rec. Doc. 7571 at 18–19.

8

398 ("In essence, this category applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies."); *Nathan v. Carter*, 372 So. 2d 560, 562 (La. 1979) (same); *F.D.I.C. v. Caplan*, 874 F. Supp. 741, 747 (W.D. La. 1995) (same).

In this case, Ms. Kahn has not shown Sanofi's alleged withholding of information from the public generally effectually prevented *her* from bringing her lawsuit. *See Guerin v. Travelers Indem. Co.*, (La. App. 1 Cir. 2/21/20), --- So. 3d ---, 2020 WL 859598, at *5 (holding *contra non valentem* inapplicable where only evidence adduced at summary judgment showed plaintiff did not speak with any of defendant chemical manufacturer's employees about the product and no one from manufacturer hindered plaintiff's ability to hire a lawyer or investigate the cause of his injury). In sum, Ms. Kahn relied on no assurances from her physicians, nor was she ever led to believe that she had no actionable injury. Ms. Kahn's inaction was unreasonable, and her claims have prescribed.

## CONCLUSION

Ms. Kahn did not miss her filing deadline by a few days, or even a few months. Ms. Kahn waited more than five years after prescription had run before filing suit. Where, as here, Ms. Kahn made no reasonable inquiry *after* she suffered her injury, she cannot now invoke a new definition of her injury to save her claims. Accordingly, the Court should enter summary judgment in Sanofi's favor.

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* | Harley V. Ratliff |
| Douglas J. Moore (Bar No. 27706) | Adrienne L. Byard |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | **SHOOK, HARDY & BACON L.L.P.** |
| 400 Poydras Street, Suite 2700 | 2555 Grand Boulevard |
| New Orleans, LA 70130 | Kansas City, Missouri 64108 |
| Telephone: 504-310-2100 | Telephone: 816-474-6550 |
| Facsimile: 504-310-2120 | Facsimile: 816-421-5547 |
| dmoore@irwinllc.com | hratliff@shb.com |
| | abyard@shb.com |

*Counsel for sanofi-aventis U.S., LLC and Sanofi U.S. Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*