UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2740<br><br>*This document relates to:*<br>Dora Sanford, Case No. 2:17-cv-09417 |

**HOSPIRA'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BASED ON THE STATUTE OF LIMITATIONS**

Defendants Hospira, Inc. and Hospira Worldwide LLC (collectively, "Hospira") hereby submit this Statement of Undisputed Material Facts in Support of Hospira's Motion for Summary Judgment Based on the Statute of Limitations, pursuant to Local Rule 56.1:

### I.  Background

1. Plaintiff Dora Sanford is a 62-year-old woman. *See* Ex. 1 (PFS[1]) at -00181; Ex. 2 (Sanford Dep.) at 15:24-16:1.

2. Mrs. Sanford lived in Zachary, Louisiana from 1984 until August 2018. Ex. 2 (Sanford Dep.) at 37:19-38:16.

3. Mrs. Sanford currently resides in Baton Rouge, Louisiana. Ex. 3 (C. M. Sanford Dep.) at 28:3-4.

---

[1] "PFS" refers to Plaintiff Dora Sanford's Sixth Amended Plaintiff Fact Sheet, which is attached as Exhibit 1.

## II.     Mrs. Sanford's Cancer Diagnosis and Treatment

4.      In March 2013, Mrs. Sanford had a mammogram, which showed abnormal results. Ex. 2 (Sanford Dep.) at 107:20-108:4.

5.      Following further testing, Mrs. Sanford was diagnosed with bilateral breast cancer in June 2013. Ex. 2 (Sanford Dep.) at 107:20-108:16; Ex. 4 (OLOL Med. Recs.) at -00020; *see* Ex. 1 (PFS) at -00191.

6.      Mrs. Sanford had stage IA cancer in her left breast and stage IIIA cancer in her right breast. Ex. 2 (Sanford Dep.) at 108:13-21; Ex. 4 (OLOL Med. Recs.) at -00028.

7.      Mrs. Sanford's oncologist Dr. Patten considered her breast cancer to be "very serious" and "aggressive." Ex. 5 (Patten Dep.) at 18:19-20:17; Ex. 4 (OLOL Med. Recs.) at -00027.

8.      Dr. Patten determined that Mrs. Sanford's breast cancer had a high likelihood of metastasizing, spreading to other parts of her body, and recurring in her breasts. Ex. 5 (Patten Dep.) at 18:19-20:17; *see* Ex. 4 (OLOL Med. Recs.) at -00027.

9.      As part of Mrs. Sanford's cancer treatment, Dr. Celia Cuntz performed a double mastectomy on Mrs. Sanford on June 20, 2013. Ex. 6 (Louisiana Breast Specialist Med. Recs.) at -00212-00213; Ex. 7 (Dr. Cuntz Med. Recs.) at -00241-00242; *see* Ex. 2 (Sanford Dep.) at 111:14-17; Ex. 1 (PFS) at -00190.

10.     Following her double mastectomy, for further breast-cancer treatment, oncologist Dr. Judd Patten recommended chemotherapy after determining that it would be appropriate. Ex. 5 (Patten Dep.) at 18:19-19:15; Ex. 2 (Sanford Dep.) at 119:13-22; *see* Ex. 1 (PFS) at -00192-93.

11. Dr. Patten prescribed a sequential chemotherapy regimen for Mrs. Sanford's breast-cancer treatment involving four different chemotherapy medicines. Ex. 4 (OLOL Med. Recs.) at -00027; Ex. 2 (Sanford Dep.) at 117:15-22, 119:23-120:5.

12. Before taking chemotherapy, on August 6, 2013, a nurse provided Mrs. Sanford written and oral instructions regarding her chemotherapy. Ex. 2 (Sanford Dep.) at 86:15-89:20, 90:14-21, 96:7-22, 117:23-118:21, 130:9-25; *see* Ex. 8 (Chemo. Educ., Sanford Dep. Ex. 10).

13. The Chemotherapy Education materials:

   a. Included "Hair Loss (Alopecia)" among the "possible side affects [*sic*];"

   b. Stated that "[s]ide effects of treatment cause inconvenience, discomfort, and occasionally even fatality to patients;"

   c. Stated that patients should "[n]ever hesitate to call [the oncologist's office] for *any* problem that is important to you."

Ex. 8 (Chemo. Educ., Sanford Dep. Ex. 10), at -00737-739.

14. At the time he prescribed Mrs. Sanford's chemotherapy, Dr. Patten understood that there was a risk that she could suffer permanent hair loss from her chemotherapy treatment. Ex. 5 (Patten Dep.) at 32:19-23, 35:19-24.

15. Dr. Patten discussed hair loss as a risk of chemotherapy with Mrs. Sanford. Ex. 5 (Patten Dep.) at 32:24-33:1.

16. Dr. Patten did not tell Mrs. Sanford that her hair was guaranteed to grow back. Ex. 5 (Patten Dep.) at 33:2-4; Ex. 2 (Sanford Dep.) at 136:10-19.

17. Dr. Patten told Mrs. Sanford that it was possible that her hair may not grow back after chemotherapy. Ex. 5 (Patten Dep.) at 33:5-7, 60:2-16.

18. Although Dr. Patten could not recall his "specific discussion of permanent hair loss" with Ms. Sanford, he "did warn patients that they would have hair loss and that their hair may not grow back completely." Ex. 5 (Patten Dep.) at 42:22-43:20; 47:12-19.

19. Mrs. Sanford followed her doctors' recommended course of breast-cancer treatment. Ex. 2 (Sanford Dep.) at 107:4-8.

20. On August 6, 2013, Mrs. Sanford signed a consent form for her chemotherapy treatment after reading the form. Ex. 9 (Chemo. Consent, Sanford Dep. Ex. 9); Ex. 2 (Sanford Dep.) at 121:18-123:14, 139:19-140:9.

21. The consent form listed "material risks" that "[t]he Louisiana Medical Disclosure Panel has identified" relating to chemotherapy, including "Hair Loss." Ex. 9 (Chemo. Consent, Sanford Dep. Ex. 9), at -00751.

22. In the first phase of Mrs. Sanford's breast-cancer chemotherapy treatment, she received three cycles of Adriamycin (doxorubicin), on August 6, 2013; August 27, 2013; and September 17, 2013. Ex. 4 (OLOL Med. Recs.) at -00028, -00031, -00037-38, -00043; *see* Ex. 2 (Sanford Dep.) at 142:6-16.

23. In the next phase of Mrs. Sanford's breast-cancer chemotherapy treatment, Dr. Patten treated Mrs. Sanford with six cycles of a combination of Carboplatin, Herceptin, and Docetaxel, on October 8, 2013; October 29, 2013; November 19, 2013; December 10, 2013; December 30, 2013; and January 21, 2014. Ex. 4 (OLOL Med. Recs.) at -00052-53, -00058-59, -00063-64, -00071-72, -00076-77, -00083-84; *see* Ex. 2 (Sanford Dep.) at 148:11-15.

24. After Mrs. Sanford's "final cycle of chemotherapy" on January 21, 2014, she continued to take Herceptin, a protein blocker to prevent her cancer regrowth, until September 9,

2014. Ex. 4 (OLOL Med. Recs.) at -00083; *see id.* at -00128-29; Ex. 2 (Sanford Dep.) at 135:21-25; 137:18-22; 149:16-21.

25. Mrs. Sanford is currently breast cancer free, and has been since 2014. Ex. 2 (Sanford Dep.) at 68:2-8; *see* Ex. 1 (PFS) at -00195.

### III.    Mrs. Sanford's Lawsuit

26. Mrs. Sanford's Complaint alleges that she developed permanent alopecia, which she defines as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." Ex. 10 (2d Am. Master Compl. ("AMC") ¶ 181, ECF No. 4407); Ex. 11 (Am. Short Form Compl., ("Compl.") at 1, *Sanford v. Hospira Worldwide, LLC*, No. 2:17-cv-09417 (E.D. La. Sept. 21, 2017), ECF No. 1).

27. At the time she took chemotherapy, Mrs. Sanford understood that chemotherapy carried a risk of hair loss. Ex. 2 (Sanford Dep.) at 136:20-24.

28. Mrs. Sanford reported first experiencing hair loss during her initial treatment with Adriamycin (doxorubicin) in August 2013. Ex. 2 (Sanford Dep.) at 143:15-20; *see* Ex. 4 (OLOL Med. Recs.) at -00037-00038.

29. Mrs. Sanford claims that she lost her eyebrows, underarm hair, pubic hair, leg hair, and hair on her head during her chemotherapy. Ex. 2 (Sanford Dep.) at 144:2-14, 163:14-164:17.

30. Mrs. Sanford claims that her "hair never did grow back," and that she believed the fact that her "hair . . . [is] not the same" due to chemotherapy. Ex. 2 (Sanford Dep.) at 164:7-11; 194:19-195:6 (quoting Ex. 12 (Zachary Post Article, Sanford Dep. Ex. 13)).

31. Mrs. Sanford expected that her hair would grow back. Ex. 2 (Sanford Dep.) at 30:9-14, 31:8-11, 136:20-137:6.

32. Mrs. Sanford claims that her hair has not regrown since chemotherapy. Ex. 2 (Sanford Dep.) at 164:12-17, 166:7-12.

33. Mrs. Sanford has worn a wig daily since 2013. Ex. 1 (PFS) at -00203.

34. Mrs. Sanford's final chemotherapy treatment was on January 21, 2014. Ex. 2 (Sanford Dep.) at 149:16-21; *see, e.g.*, Ex. 4 (OLOL Med. Recs.) at -00096 ("She completed chemo[therapy,] now on Herceptin only."); *see also* Ex. 1 (PFS) at -00194.

35. After Mrs. Sanford "completed chemo[therapy]," Mrs. Sanford continued to take Herceptin, a protein blocker, monthly until September 9, 2014. Ex. 4 (OLOL Med. Recs.) at -00128-129; *see* Ex. 2 (Sanford Dep.) at 135:21-25, 137:18-22.

36. Mrs. Sanford began suffering permanent alopecia by June 2014, six months after she completed chemotherapy in January 2014. *See* Ex. 10 (AMC) ¶ 181; Ex. 2 (Sanford Dep.) at 149:16-21.

37. Mrs. Sanford saw Dr. Patten on June 17, 2014; July 29, 2014; and August 19, 2014. Ex. 4 (OLOL Med. Recs.) at -00117-18, -00123-24; -00125-26.

38. Mrs. Sanford did not seek treatment for hair loss from Dr. Patten. Ex. 5 (Patten Dep.) at 36:16-20.

39. Mrs. Sanford did not seek a diagnosis or treatment regarding hair loss from Dr. Brian Bienvenu, another oncologist she saw in Dr. Patten's office, or speak to him about hair loss. Ex. 13 (Bienvenu Dep.) at 12:10-12; 41:1-42:20.

40. Mrs. Sanford did not complain about hair loss or seek treatment for hair loss from Dr. Cuntz. Ex. 14 (Cuntz Dep. at 50:8-15).

41. Mrs. Sanford never discussed the cause of her hair loss with her dermatologist, Dr. Theunissen, who treated Mrs. Sanford for seborrheic dermatitis. Ex. 2 (Sanford Dep.) at 213:20-214:6.

42. Dr. Theunissen did not treat Mrs. Sanford for hair loss. Ex. 15 (Theunissen Dep.) at 27:11-28:10.

43. No doctor told Mrs. Sanford that her hair would definitely grow back. Ex. 2 (Sanford Dep.) at 137:11-14.

44. Mrs. Sanford was not diagnosed by any healthcare provider for her alleged hair-loss. Ex. 1 (PFS) at -00197; *see* Ex. 2 (Sanford Dep.) at 184:1-3.

45. Mrs. Sanford has never sought treatment for her alleged hair loss or sought a diagnosis for her alleged hair loss. Ex. 2 (Sanford Dep.) at 184:4-9.

46. Mrs. Sanford has never discussed with any healthcare provider whether Docetaxel caused her alleged hair loss. Ex. 1 (PFS) at --00197.

47. Mrs. Sanford believed that Docetaxel could have caused her hair loss when she saw a lawyer advertisement on television in 2016. Ex. 2 (Sanford Dep.) at 18:5-13.

48. Mrs. Sanford contacted her present attorneys at the McGartland Law Firm after seeing the attorney advertisement. Ex. 2 (Sanford Dep.) at 17:3-23.

49. On August 8, 2016, Mrs. Sanford signed a medical release form permitting her current attorneys access to her chemotherapy records. *See* Ex. 16 (Med. Auth.) at -00485.

50. Mrs. Sanford contacted her present attorneys at the McGartland Law Firm no later than August 8, 2016. *See* Ex. 16 (Med. Auth.) at -00485; Ex. 2 (Sanford Dep.) at 17:3-23, 18:5-13.

51. Mrs. Sanford filed her complaint on September 21, 2017. Ex. 11 (Sanford Compl.); *see* Ex. 1 (PFS) at -00181.

52. Mrs. Sanford filed her complaint more than 13 months after first contacting her present attorneys at the McGartland Law Firm. *Compare* Ex. 11 (Compl.), *with* Ex. 2 (Sanford Dep.) at 17:3-23; Ex. 16 (Med. Auth.) at -00485.

Dated: March 12, 2020

Respectfully submitted,

*/s/ Mark S. Cheffo*
Mark S. Cheffo
Mara Cusker Gonzalez
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
mark.cheffo@dechert.com

Heidi K. Hubbard
Richmond T. Moore
Neelum J. Wadhwani
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Phone: (202) 434-5000
Fax: (202) 434-5029
hhubbard@wc.com

John F. Olinde (Bar No.1515)
Peter J. Rotolo (Bar No. 21848)
**CHAFFE MCCALL LLP**
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 858-7000
Fax: (504) 585-7075
olinde@chaffe.com

*Counsel for Defendants Hospira, Inc., and Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc., and Pfizer Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

                                              /s/ *Mark S. Cheffo*