# EXHIBIT 13

```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA


*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION        MDL NO. 2740

This Document Relates To:            SECTION "N"(5)

Dora Sanford vs. Hospira Inc.,       JUDGE MILAZZO
Et al
No. 2:17-cv-09417                    MAG JUDGE NORTH

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *




     VIDEO DEPOSITION OF DR. BRYAN BIENVENU, M.D.,

     taken on Monday, February 3, 2020, at Louisiana

     Hematology Oncology Associates, 4950 Essen

     Lane, Toups Conference Room, Baton Rouge,

     Louisiana




     REPORTED BY:   TAMRA K. KENT   C.C.R.
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
       Court Reporters of Louisiana, LLC
        9522 Brookline Avenue, Suite 217
        Baton Rouge, Louisiana 70809
       (225)201-9650 Office * (225)201-9651 Fax
```

1    Q.   Miss Sanford has brought a lawsuit against
2    Hospira alleging injuries relative to her use of a
3    chemotherapy agent; do you understand that?
4    A.   Yes.
5    Q.   And you're being deposed as someone who may
6    have potentially relevant information today.
7    A.   Sure.
8    Q.   Have you ever been deposed in that kind of
9    context, when a patient was treated and brought a
10   suit against a manufacturer of a product?
11   A.   No, sir, this is new.
12   Q.   You understand there's been no claims made
13   against you?
14   A.   Yes.
15   Q.   And you understand that no one has alleged
16   you did anything wrong?
17   A.   Yes.
18   Q.   Now, we talked about that you had last seen
19   Miss Sanford in November of 2019.  Do you remember
20   when you had last provided care and treatment to
21   her before that period of time?
22   A.   Yes, sir, this was -- I think this is the
23   right note -- July 24, 2018.
24   Q.   The November 2019 visit that you recently
25   had with Miss Sanford, would that have been the

```
 1   last time you had spoken to her?
 2        A.   Yes, sir.
 3        Q.   When did you first learn that she had filed
 4   this lawsuit?
 5        A.   When I was asked for the deposition.
 6        Q.   Are you aware that Miss Sanford alleges
 7   permanent hair loss resulting from her use of the
 8   chemotherapy agent Docetaxel?
 9        A.   I would presume that's why we're here.
10        Q.   Have you examined or treated Miss Sanford
11   for any issues related to permanent hair loss?
12        A.   No, sir.
13        Q.   You haven't been retained as an expert in
14   this case, correct?
15        A.   No, sir.
16        Q.   And you're not here to offer any opinion
17   regarding the cause of her hair loss, are you?
18        A.   No, sir.  I'm not an expert in that.
19        Q.   Have you communicated with anyone other
20   than Miss Sanford about her care and treatment
21   since the last time you saw her?
22        A.   No, sir.
23        Q.   You said you had reviewed, I think, a few
24   medical reports in prep for your deposition today?
25        A.   Yes, sir.
```

```
 1        Q.  And you said you reviewed Dr. Patten's
 2   records?
 3        A.  Correct.  Because I have to go into a
 4   legacy system to review those because we are on a
 5   different medical record, so I wanted to see what
 6   was done before.
 7        Q.  And you all have gone to the electronic
 8   medical records --
 9        A.  Well, this is a different electronic
10   medical record.  We had our own and now we have a
11   different one.  So we have a legacy system you have
12   to go to see those records.
13        Q.  Did you review any medical literature in
14   preparation for your deposition?
15        A.  I did not.
16        Q.  Did you review any websites in preparation
17   for your deposition?
18        A.  I did not.
19        Q.  Did you review any information on Taxotere
20   or Docetaxel in preparation for your deposition?
21        A.  I did not.
22        Q.  When did you join the Louisiana Hematology
23   Oncology Associates?
24        A.  In 2000, July of 2000.
25        Q.  And since then, what percentage of your
```

```
1        Q.  Was there any evidence of any recurrence or
2    any advancement of her thyroid cancer?
3        A.  No, sir.
4        Q.  Did she have new imaging at that time?
5        A.  No, sir.
6        Q.  Do you have -- does she have a follow-up
7    visit with you doctor?
8        A.  Yes, sir.  So that would be four months
9    from the date of this visit.
10       Q.  So that should be coming up this month?
11       A.  Shortly, yes, sir.
12       Q.  And, Doctor, is it possible that we could
13   get a copy of that November 2019 record?
14       A.  Absolutely.  Do you want this copy, or do
15   you guys want another one?
16       Q.  That would be fine.  And we can attach it
17   as Exhibit #16.
18           MR. ROTOLO:
19               Is that okay with you?
20           MS. PEREZ REYNOLDS:
21               That's fine with me.
22           (Whereupon, the document was duly marked
23           for identification as "Exhibit #16" and
24           attached hereto.)
25   BY MR. ROTOLO:
```

```
 1        Q.   Doctor, from the first time you saw
 2   Miss Sanford on September 30th of 2014, had
 3   Miss Sanford experienced a recurrence of her breast
 4   cancer?
 5        A.   No.
 6        Q.   Was she cancer free with regard to her
 7   breast cancer at the time you saw her?
 8        A.   Yes.
 9        Q.   Do you consider her treatment of her breast
10   cancer to have been successful?
11        A.   Yes.
12        Q.   When you saw her for -- before she
13   reestablished care with you in November of 2019,
14   which was on July 24th of 2018, that was five years
15   out from her being cancer free from her breast
16   cancer, correct?
17        A.   Yes.
18        Q.   Is that a milestone that's important?
19        A.   Yes.
20        Q.   Miss Sanford testified at her deposition
21   that she never spoke to any of her doctors about
22   her permanent hair loss.
23             Do you have any recollection of her
24   speaking with you about her hair loss?
25        A.   No, sir, I do not.
```

```
 1         Q.  So to be clear, you don't remember her ever
 2   asking you about her hair loss during the treatment
 3   of her?
 4         A.  No, sir, I don't.
 5         Q.  Did she seek any sort of treatment from you
 6   with regard to her hair loss?
 7         A.  No, sir.
 8         Q.  Did she ask you any questions with regard
 9   to her hair loss during the period you treated her,
10   from 2014 to the present?
11         A.  Not to my recollection, no.
12         Q.  And I take it you've not prescribed any
13   medications for her hair loss?
14         A.  No, sir.
15         Q.  Not recommended any over-the-counter
16   medications for her hair loss?
17         A.  No, sir.
18         Q.  Not referred her to any other doctor with
19   regard to her hair loss?
20         A.  No, sir.
21         Q.  And, Doctor, could you briefly give us a
22   synopsis of your training and what you've done
23   since you graduated from medical school.
24         A.  I did my internal medicine residency at LSU
25   Earl K. Long.  And I did oncology fellowship at
```

```
 1                C E R T I F I C A T E
 2
 3           This certification is valid only for a
 4   transcript accompanied by my original signature and
 5   original required seal on this page.
 6
 7           I, Tamra K. Kent, Certified Court Reporter
 8   in and for the State of Louisiana, as the officer
 9   before whom this testimony was taken, do hereby
10   certify that DR. BRYAN BIENVENU, M.D., to whom the
11   oath was administered, after having been first duly
12   sworn by me upon authority of RS 37:2554, did
13   testify as hereinbefore set forth in the foregoing
14   45 pages;
15           That this testimony was reported by me in
16   stenographic machine shorthand, was prepared and
17   transcribed by me or under my personal direction
18   and supervision, and is a true and correct
19   transcript to the best of my ability and
20   understanding;
21           That the transcript has been prepared in
22   compliance with transcript format guidelines
23   required by statute or by rules of the board, and
24   that I am informed about the complete arrangements,
25   financial or otherwise, with the person or entity
```

```
 1   making arrangements for deposition services; that I
 2   have acted in compliance with the prohibition on
 3   contractual relationships, as defined by Louisiana
 4   Code of Civil Procedure Article 1434 and in rules
 5   and advisory opinions of the board; that I have no
 6   actual knowledge of any prohibited employment or
 7   contractual relationship, direct or indirect,
 8   between a court reporting firm and any party
 9   litigant in this matter, nor is there any such
10   relationship between myself and a party litigant;
11
12           That I am not related to counsel or to the
13   parties herein, nor am I otherwise interested in
14   the outcome of this matter.
15
16
17
18   Tamra K. Kent   83070
     Certified Reporter in and for
19   the State of Louisiana
20
21
22
23
24
25
```