## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) **PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2740** |
| | **SECTION "H" (5)** |
| **THIS DOCUMENT RELATES TO** | |
| *Cynthia Thibodeaux* | **HON. JANE TRICHE MILAZZO** |
| **Case No. 2:16-cv-15859** | |

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TAX COSTS [REC. DOC. 9407] IN THE MATER CYNTHIA THIBODEAUX VS SANOFI

---

Plaintiff Cynthia Thibodeaux, a breast cancer survivor, filed her products liability Complaint against mover-Defendants Sanofi-Aventis U.S., LLC and Sanofi US Services, Inc. ("Sanofi") in the instant MDL, eventually being selected as a potential Bellwether case.  Ms. Thibodeaux underwent Phase I discovery, was deposed, and answered discovery pleadings.

Defendant Sanofi filed a Motion for Summary Judgment alleging that plaintiff's case had prescribed.   The matter was briefed, and oral argument was held.   This Court held that Ms. Thibodeaux had filed her case untimely, and granted a dismissal of her case.   That matter is currently on appeal to the United States Court of Appeals for the Fifth Circuit.

Because the Defendant prevailed in the original hearing, Defendant filed a Motion to Tax Costs, and now seeks the sum of $67,607.77.    All but $20.00 of that sum is the total of nineteen (19) depositions purported to be costs recoverable by Defendant as the prevailing party.

Plaintiff objects to the awarding of costs in this matter.

**Law and Argument**

In *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006), the Fifth Circuit noted "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party", including: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.

Here, the Defendant does not assert that Ms. Thibodeaux brought her suit in bad faith. To be sure, good intent on its own is not justification to deny the awarding of costs to a prevailing party. ''[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant.'' *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir.1999).

But when every some (or all) of the *Pacheco* factors cited above are present, this Court may deny or reduce costs. The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd*., 566 U.S.560, (2012).

First, Cynthia Thibodeauxis not a wealthy woman. As she testified in her deposition, she is retired. She is ill equipped to pay costs in that amount.

Second, while the exact parameter of the conduct which comprises "misconduct of the prevailing party" is not well defined by the jurisprudence, but there are some analogies here. The issue in Cynthia Thibodeaux's prescription question involved a weighing of the Ms. Thibodeaux's efforts to find out about her hair loss when seen in light of the defendant's withholding of that information from doctors and patients.     Ms. Thibodeaux's efforts to find the cause of her alopecia[1] were deemed insufficient.   But there was no finding in the order

---

[1] Ms. Thibodeaux's attempts to find out about her side effects consisted of speaking with her husband and mother, and relying upon the medical providers who told her both orally and in writing that her hair would grow back.   See the exhibits attached to her motion in opposition to summary judgment, incorporated *en toto*

2

dismissing plaintiff's case that the Defendant had warned of the risk of permanent alopecia to Ms. Thibodeaux's treating oncologist or her other doctors.   The records shows that a warning of that risk was only added to the FDA approved label in 2015, years after Thibodeaux took the drug.     So while this Honorable Court found the degree of Ms. Thibodeaux's efforts to get an explanation of her hair loss to be lacking, the reason for that failure to obtain information about her hair loss was because the defendants failed to notify health care professionals of that risk, and so that information was not in the public sphere in the time frame that this Court felt Thibodeaux should have inquired in vain to her providers about the cause of the hair not re-growing.   The Defendant failed to disclose risks that it knew to be associated with its product despite a duty to warn of those very risks.   And while that fact alone was insufficient to save plaintiff's case from dismissal, it can be fairly said that the primary reason Ms. Thibodeaux never received proper warnings was due to Sanofi's misconduct in not advising her Oncologist, Dr. Kardinal, of the risk of permanent hair loss arising from Taxotere use.

Third, this was a close and difficult legal issue.   There was arguably case law on both sides supporting a dismissal or a denial.   Indeed, there is an appeal pending, which hopefully will result in a certified question to the Louisiana Supreme Court to resolve the issue of whether failing to more aggressively seek information admittedly not known by the very providers Thibodeaux did not contact is sufficient to deny a plaintiff the benefit of *contra non valentem*.

This was not a case where the dismissal result was crystal clear.   There is a dearth of cases that address on all fours the issue of the application of *contra non valentem* when a defendant is hiding information from an alleged late filing plaintiff, and that plaintiff did not search hard enough for information made unavailable due to the defendant's misconduct.

Fourth, Ms. Thibodeaux's case provided a substantial benefit conferred to the public.   As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off"

case.   As a potential bellwether, Ms. Thibodeaux and her action provided guidance to the parties and the Court on statute of limitation issues relevant to every Louisiana plaintiff in the MDL. Further, the discovery aided the parties in defining issues pertinent to the MDL as a whole.

This fact is buttressed by Record Doc 9407-3, the affidavit of Adrienne L. Byard. Among the depositions listed are eight (8) depositions that should be more accurately described as multiple plaintiff or common to the entire MDL, rather than Cynthia Thibodeaux.  They are depositions of Plaintiff general causation experts, and also one treating physician, Dr. Larned. Dr. Larned's deposition included much testimony about Ms. Kahn, another bellwether candidate. The very depositions (Plunkett, Kesselr, Feigal, etc.) charged to Ms. Thibodeaux will almost certainly wind up as part of the general causation trial package to be utilized by the remand plaintiffs.    It would be extremely inequitable to require Ms. Thibodeaux to pay for common benefit deposition costs out of her case alone.

As to the assessment of costs in this, a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides some guidance.   This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures. Section  11:443 states:

"Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs. "

Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:

- the specificity of the discovery requests;

- the likelihood of discovering critical information;

- the availability of such information from other sources;

- the purposes for which the responding party maintains the requested data;

- the relative benefit to the parties of obtaining the information;

- the total cost associated with the production;

- the relative ability of each party to control costs and its incentive to do so; and

- the relative resources available to each party;

Here, Cynthia Thibodeaux subjected herself to the burdens of bellwether discovery not experienced by over 99% of the MDL plaintiffs, while cooperating fully with the Court and its orders. Many of the eight factors referenced above also apply to issues of cost allocation in an MDL. Ms. Thibodeaux's case expenses were not expended solely for the benefit of her individual case by her local counsel. Rather, Ms. Thibodeaux was one case among a handful of bellwether cases selected to represent the issues and facts of similarly situated plaintiffs in MDL-2740, with an express purpose of utilizing those bellwether selections to and identify and resolve common questions of law and fact pertaining to the MDL.

Had she been a post-bellwether remand case, she would bear the cost of the "trial package" of depositions and exhibits prepared by the PSC for use in the potentially thousands of remand cases. Surely, each MDL-2740 remand trial package would not cost the $43,837.23 that defendant seeks to recover from Ms. Thibodeaux for depositions like that of Dr. Kessler.

Moreover, as an individual plaintiff in a remand cases, discovery would not have been so exhaustive and expensive as is the case of a bellwether plaintiff, who is under the microscope of a process where a single case can have ramifications costing hundreds of millions of dollars in an MDL settlement.   It is unlikely that Ms. Thibodeaux's remand case would have had so many depositions.   Nor would a single case have had so many of those depositions videotaped, raising the cost of the litigation.   Nor would they have been as long.   While PTO-9 was implemented for the purposes of the MDL bellwether process, with many valid reasons going into the approval of the order, it cannot be said to have shortened the deposition process.   Stating "object to form" simply does not stop multiple asked and answered questions.   Simply put, the very status of Plaintiff as a bellwether increased the costs associated with discovery, and those more expensive discovery plans and procedures were set up to benefit the entire MDL.   As such, all or most of the increased costs for bellwether and Common PSC/Common Defense purposes should not be assessed to one plaintiff.

It is respectfully suggested that ordering Cynthia Thibodeaux to personally bear the full and sole costs of discovery, when that discovery participation was entered into in order to aid everyone in the MDL, would be inequitable.   As the Manual for Complex litigation states in section 22:315:

"**22.315 Test Cases**

If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the

available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases.

Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis...."

Cynthia Thibodeaux was selected to act as a bellwether to assist the Court and the Parties in the resolution of those common issues. Among those issues common to the MDL are issues of statute of limitation and learned intermediary defenses as applied to the facts of the several representative bellwether cases. This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources.

Finally, the fifth the last *Pacheco* factor, the prevailing party's enormous financial resources, is self-evident. Sanofi will not be unduly burdened by the amount of costs expended in this matter. This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is not equipped to bear them financially.

## **CONCLUSION**

The fact that there is a timely appeal of the prescription decision suggests that a ruling on the instant costs assessment motion should be put off until the Louisiana Supreme Court and /or United States Fifth Circuit rules on the matter. Judicial economy would be well served, and this is not a case where the prevailing party will suffer any financial hardship by a delay.

Here, Cynthia Thibodeaux filed her case in good faith. The non-prevailing plaintiff's

personal financial is that of a retired senior citizen; the prevailing Defendant has vast financial resources.  In addition, the legal issue resulting in dismissal was both somewhat *res nova* (no case of failure to allow *contra non valentem* when the facts were concealed by defendant(s) was found).    Plaintiff Cynthia Thibodeaux, by virtue of her bellwether representative discovery efforts, conferred a substantial benefit to the public and the MDL.   This Court is vested with the discretion to allocate costs fairly and equitably.   This Court's discretion is extra wide in a matter such as this by virtue of its status as an MDL Transferor Court, charged with resolving many complex issues of law and fact in an MDL context.

It would be an arguably unwise policy to encourage prospective MDL bellwethers to participate in bellwether discovery, at least when their reward for accepting is that they alone among the thousands of MDL plaintiffs will suffer personal financial hardship as a result of that participation.

Nor is this hearing the best setting to consider these issues, or the proper time.  As many of these issues involve the common benefit questions, including those depositions in the trial package for use by remand plaintiffs, it would seem better served for the instant costs allocation to be assessed at the end of the MDL process when the PSC and all parties can address these common benefit cost issues.    Moreover, a successful appeal could moot the costs motion entirely.  And that successful appeal would not eliminate Sanofi's opportunity to recover costs. As Ms. Thibodeaux's opportunity for serving as a bellwether would likely have passed, Ms. Thibodeaux's remand case would proceed to an individual trial, utilizing the PSC supplied trial package, at that cost.  Should she lose, costs would be assessed on her *individual* case.

Given the totality of the circumstances, it is respectfully suggested that this Court: 1) allocate the costs of the non-prevailing party Cynthia Thibodeaux as MDL Common Benefit

costs at the time when those costs are paid at the conclusion of the MDL; and/or 2) disallow any costs in the Thibodeaux matter that serve to resolve the common issues of the MDL; and/or 3) disallow any deposition costs not attributed to plaintiff's individual case; and 4) that this Court use its equitable powers and vast discretion to reduce the assessed costs to an amount that considers the *Pacheco* factors, and does not pose a personal financial hardship to Plaintiff.

Respectfully submitted,


/s Richard L. Root
Richard L. Root La# 19988
Betsy Barnes La# 19473
Morris Bart, LLC
601 Poydras Street
24th Floor
New Orleans, LA 70130
Phone: (504) 525-8000
Fax: (504) 599-3392
Email: rroot@morrisbart.com
bbarnesl@morrisbart.com
Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

/s/Richard L. Root