UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  TAXOTERE (DOCETAXEL)                    MDL NO. 16-2740
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
*Sanford v. Hospira, et al.,* Case No. 2:17-cv-09417

**PLAINTIFF'S RESPONSE TO DEFENDANT HOSPIRA'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS AND**
**STATEMENT OF DISPUTED FACTS**

Pursuant to Local Rule 56.2, Plaintiff Dora Sanford, submits the following Response to

Defendant Hospira's State of Undisputed Material Facts in Support of their Motion for Summary

Judgment Based on the Statute of Limitations:

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted.

6.  Admitted.

7.  Admitted.

8.  Admitted.

9.  Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted insofar as the Chemotherapy Education materials stated "hair loss" was a potential side effect associated with three (3) of the four (4) chemotherapy drugs Mrs. Sanford received, namely Taxotere/Docetaxel, Adriamycin and Cytoxan.

    The Educational Handouts from Dr. Patton's office indicated the side effects from chemotherapy – including hair loss – "are almost always reversible and will go away after treatment is complete."  Ex. B, Taxotere Handout, and Ex. C, Adriamycin Handout.  The Chemotherapy Handout provided by Dr. Patton, stated:   "Chemotherapy can cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture." Ex. E, Chemotherapy Handout from Dr. Patton.

14. Admitted only insofar as Dr. Patton understood "permanent hair loss" referred to whether a patient's hair would regrow fully and "completely" as compared to the almost total hair loss experienced by Mrs. Sanford.  Ex. G, Deposition of Dr. Judd Patton, M.D., "Patton Dep.") February 4, 2020, 60: 8-12.  This testimony of Dr. Patton corresponds to the Chemotherapy Handout he provided to Mrs. Sanford which stated:  "Chemotherapy can cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture."  Ex. E, Chemotherapy Handout

15. Admitted only insofar as Dr. Patton understood "permanent hair loss" referred to whether a patient's hair would regrow fully and "completely" as compared to the almost total hair loss experienced by Mrs. Sanford.  Ex. G, Deposition of Dr. Judd Patton, M.D., "Patton Dep.") February 4, 2020, 60: 8-12.  This testimony of Dr. Patton corresponds to the Chemotherapy Handout he provided to Mrs. Sanford which stated:  "Chemotherapy can

cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture."  Ex. E, Chemotherapy Handout

16. Admitted only insofar as Dr. Patton understood "permanent hair loss" referred to whether a patient's hair would regrow fully and "completely" as compared to the almost total hair loss experienced by Mrs. Sanford.  Ex. G, Deposition of Dr. Judd Patton, M.D., "Patton Dep.") February 4, 2020, 60: 8-12.  This testimony of Dr. Patton corresponds to the Chemotherapy Handout he provided to Mrs. Sanford which stated:  "Chemotherapy can cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture."  Ex. E, Chemotherapy Handout

17. Admitted only insofar as Dr. Patton understood "permanent hair loss" referred to whether a patient's hair would regrow fully and "completely" as compared to the almost total hair loss experienced by Mrs. Sanford.  Ex. G, Deposition of Dr. Judd Patton, M.D., "Patton Dep.") February 4, 2020, 60: 8-12.  This testimony of Dr. Patton corresponds to the Chemotherapy Handout he provided to Mrs. Sanford which stated:  "Chemotherapy can cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture."  Ex. E, Chemotherapy Handout

18. Admitted only insofar as Dr. Patton understood "permanent hair loss" referred to whether a patient's hair would regrow fully and "completely" as compared to the almost total hair loss experienced by Mrs. Sanford.  Ex. G, Deposition of Dr. Judd Patton, M.D., "Patton Dep.") February 4, 2020, 60: 8-12.  This testimony of Dr. Patton corresponds to the Chemotherapy Handout he provided to Mrs. Sanford which stated:  "Chemotherapy can cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture."  Ex. E, Chemotherapy Handout

19. Admitted.

20. Admitted. *See* Ex. L, Patient Consent to Medical Treatment Form ("Consent Form").

21. Admitted that the Consent Form included the "material risk" of "hair loss". However, the reference to "hair loss" was believed to be temporary in nature as the true risk of permanent hair loss posed by Docetaxel was actively concealed by Defendant Hospira for over five (5) years after it was place on notice. Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8. *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; Ex. E, Chemo Handout; and Ex. F, Schmider Dep., 47-9.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Disputed. Mrs. Sanford was not aware her hair loss might be permanent until 2016. Mrs. Sanford began to suffer significant hair loss following her treatment with Adriamycin, only, prior to being administered Taxotere/Docetaxel. Mrs. Sanford believed her hair loss would only be temporary and expected that after finishing her breast cancer treatment her hair would begin to regrow. Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8: Ex. H, Sanford Aff., at ¶2. *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; and Ex. E, Chemo Handout. The Educational Handouts from Dr. Patton's office indicated the side effects from chemotherapy – including hair loss – "are almost always reversible and will go away after treatment is complete." Ex. B, Taxotere Handout, and Ex. C, Adriamycin Handout. The Chemotherapy Handout provided by Dr. Patton, stated:   "Chemotherapy can cause hair loss.  Your hair will grow

back, but it may be somewhat different in color and texture." Ex. E, Chemo Handout.  Less than one (1) month after completion of her breast cancer treatment, Mrs. Sanford was diagnosed with medullary thyroid carcinoma.  Ex. I, Our Lady of the Lake at 112-3.  She underwent a thyroidectomy and began hormone replacement therapy with the drug Synthroid.  Ex. A., Sanford Dep., 40: 8-9.  The Synthroid warnings and information provided to Mrs. Sanford by her pharmacy contained "SIDE EFFECTS: . . . Hair loss may occur during the first few months of treatment." Ex. H, Sanford Aff., ¶H, attachment 1.

27. Admitted insofar as Mrs. Sanford understood chemotherapy carried a risk of hair loss; however, Mrs. Sanford believed any hair loss she would experience would temporary in nature as the true risk of permanent hair loss posed by Docetaxel was actively concealed by Defendant Hospira for over five (5) years after it was place on notice.  Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8.  *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; Ex. E, Chemo Handout; and Ex. F, Schmider Dep., 47-9.

28. Admitted insofar as Mrs. Sanford began to experience significant hair loss following her initial treatment with Adriamycin, only.  Mrs. Sanford's hair loss following her initial Adriamycin, only, treatment was documented in her medical records of August 27, 2013, October 8, 2013, and October 29, 2013, by both Dr. Patton and Nurse Owen.  Ex. I – Collective Exhibit, Medical Records Excerpts from Our Lady of the Lake.

29. Admitted.

30. Admitted insofar as Mrs. Sanford has suffered almost complete hair loss.  Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate

whether a claim existed.  Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8.  *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; and Ex. E, Chemo Handout.

31. Admitted insofar as Mrs. Sanford believed her hair would grow back until 2016.  Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8.  *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; and Ex. E, Chemo Handout.

32. Admitted insofar as Mrs. Sanford has not experienced hair regrowth since beginning to lose her hair after her first treatment with Adriamycin.  Mrs. Sanford began to suffer significant hair loss following her treatment with Adriamycin, only, prior to being administered Docetaxel.  Mrs. Sanford believed her hair loss would only be temporary and expected that after finishing her breast cancer treatment her hair would begin to regrow.  Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8.  *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; and Ex. E, Chemo Handout. Less than one (1) month after completion of her breast cancer treatment, Mrs. Sanford was diagnosed with medullary thyroid carcinoma.  Ex. I., Our Lady of the Lake at 112-3.; Ex. A., Sanford Dep., 40: 8-9.  She underwent a thyroidectomy and began hormone replacement therapy with the drug Synthroid.  *Id.* The Synthroid warnings and information provided to Mrs. Sanford by her pharmacy contained "SIDE EFFECTS: . . . Hair loss may occur during the first few months of treatment."  Ex. H, Sanford Aff., ¶5, attachment 1.

33.  Admitted insofar as Mrs. Sanford began wearing a wig in 2013 after her first treatment with Adriamycin, only, which caused her hair to begin falling out.  Ex. H, Sanford Aff., ¶2.  Mrs. Sanford has continued to wear a wig daily since that time.  *Id.*

34.  Admitted insofar as Mrs. Sanford completed her sixth (6th), and final, administration of chemotherapy "TCH – Taxotere, Cytoxan and Herceptin" combination on January 21, 2014.  Mrs. Sanford was subsequently treated with radiation from 3/5/2014 – 5/15/2014 and then Herceptin, only, injections until 9/9/2014.  Ex. I, Our Lady of the Lake, 68-9; 107-8; 110-11; 112-3; Ex. J, Mary Bird Perkins/Dr. Levin medical record excerpt.

35.  Admitted insofar as Mrs. Sanford completed her sixth (6th), and final, administration of chemotherapy "TCH – Taxotere, Cytoxan and Herceptin" combination on January 21, 2014.  Mrs. Sanford was subsequently treated with radiation from 3/5/2014 – 5/15/2014 and then Herceptin, only, injections until 9/9/2014.  Ex. I, Our Lady of the Lake, 68-9; 107-8; 110-1; Ex. J, Mary Bird Perkins/Dr. Levin medical record excerpt.

36.  Disputed.  Mrs. Sanford began Mrs. Sanford began to suffer significant hair loss following her treatment with Adriamycin, only, prior to be administered Docetaxel.  Mrs. Sanford believed her hair loss would only be temporary and expected that after finishing her breast cancer treatment her hair would begin to regrow.  Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8.  *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; and Ex. E, Chemo Handout.  Less than one (1) month after completion of her breast cancer treatment, Mrs. Sanford was diagnosed with medullary thyroid carcinoma.  Ex. I., Our Lady of the Lake, 112-3; 00398-9.  She underwent a thyroidectomy and began hormone replacement therapy with the drug Synthroid.  *Id.* at 000832040.  The Synthroid warnings and information provided to Mrs.

Sanford by her pharmacy, CVS, contained "SIDE EFFECTS: . . . Hair loss may occur during the first few months of treatment." Ex. H, Sanford Affidavit, ¶5, attachment 1. Mrs. Sanford consistently testified that she did not know her hair loss might be permanent until – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed. Ex. A, Sanford Dep., 29: 10-4; 89: 19-20; 103: 21-2; 106: 9-12; 186: 5-8. *See also* Ex. B – D, Taxotere, Adriamycin and Cytoxan Educational Handouts, respectively; and Ex. E, Chemo Handout.

37. Admitted.

38. Admitted insofar as Mrs. Sanford did not seek treatment for her hair loss from Dr. Patton in 2014 as she believed her hair loss was temporary and it would regrow. Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed. Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

39. Admitted insofar as Mrs. Sanford did not seek treatment for her hair loss from Dr. Bienvenu as she believed her hair loss was temporary and it would regrow. Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed. Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

40. Admitted insofar as Mrs. Sanford did not seek treatment for her hair loss from Dr. Cuntz as she believed her hair loss was temporary and it would regrow. Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed. Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

41. Admitted insofar as Mrs. Sanford did not seek treatment for her hair loss from Dr. Theunissen as she believed her hair loss was temporary and it would regrow.  Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed.  Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

42. Admitted insofar as Mrs. Sanford did not seek treatment for her hair loss from Dr. Theunissen as she believed her hair loss was temporary and it would regrow.  Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed.  Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

43. Admitted only insofar as no doctor told Mrs. Sanford her hair would definitely grow back "completely".  The Educational Handouts from Dr. Patton's office indicated the side effects from chemotherapy – including hair loss – "are almost always reversible and will go away after treatment is complete."  Ex. B, Taxotere Handout, and Ex. C, Adriamycin Handout.  The Chemotherapy Handout provided by Dr. Patton, stated:   "Chemotherapy can cause hair loss.  Your hair will grow back, but it may be somewhat different in color and texture."  Ex. E, Chemotherapy Handout from Dr. Patton.  Dr. Patton testified he only warned patients "their hair may not grow back completely.  So, if you take that to mean [warning of] 'permanent hair loss' you could say yes."  Ex. G, Patton Dep., 60:8-12.  Nurse Owens testified when discussing side effects of chemotherapy, she was "talking about a likely probability of temporary hair loss . . . . not discussing a likely probability of permanent hair loss."  Ex. K, Deposition of Judy Owens ("Owen Dep."), NP, February 5, 2020, 55:7-18.

44. Admitted insofar as Mrs. Sanford was not told that she had been diagnosed by any healthcare provider with permanent hair loss. Mrs. Sanford began to experience significant hair loss following her initial treatment with Adriamycin, only. Mrs. Sanford's hair loss following her initial Adriamycin, only, treatment was documented in her medical records of August 27, 2013, October 8, 2013, and October 29, 2013, by both Dr. Patton and Nurse Owen. Ex. I – Our Lady of the Lake at 19-20; 34-5; 40-1.

45. Admitted insofar as Mrs. Sanford did not seek treatment for her hair loss as she believed her hair loss was temporary and it would regrow. Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed. Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

46. Admitted insofar as Mrs. Sanford did not discuss her hair loss with any healthcare provider as she believed her hair loss was temporary and it would regrow. Mrs. Sanford consistently testified that she did not know her hair loss might be permanent – much less attributable to Docetaxel – until 2016 when she contacted counsel and began to investigate whether a claim existed. Ex. A, Sanford Dep., 17-8: 7-13; and Ex. H, Sanford Aff., ¶3.

47. Denied. Mrs. Sanford testified that when she saw an attorney advertisement in 2016, she learned for the first time that her hair loss might be permanent. Ex. A, Sanford Dep., 103: 21-2; 106: 9-12; 186: 5-8, 18-20; 188: 5-7, 14-5; 205: 16-19. She further testified: "After I found out about the permanent hair loss on the TV, that's when I started doing research," Ex. A, Sanford Dep., 186:18-20. After seeing the ad, she called an attorney because "[she] wanted to get some information about it . . . ." *Id.* 17:9-12. She understood she had taken four (4) different chemotherapy drugs, she believed one of the drugs was "Taxotere" and

wasn't aware she was actually administered Docetaxel until she was told so by her attorney. Ex. H, Sanford Aff., ¶5

48. Admitted.

49. Admitted. *See* Ex. M, Medical Authorization executed 8/8/2016.

50. Admitted insofar as the date Mrs. Sanford contacted counsel. She testified: "After I found out about the permanent hair loss on the TV, that's when I started doing research," Ex. A, Sanford Dep., 186:18-20. After seeing the ad, she called an attorney because "[she] wanted to get some information about it . . . ." *Id.* 17:9-12. *See also* Ex. A, Sanford Dep., 103: 21-2; 106: 9-12; 186: 5-8, 18-20; 188: 5-7, 14-5; 205: 16-19. She understood she had taken four (4) different chemotherapy drugs, she believed one of the drugs was "Taxotere" and wasn't aware she was actually administered Docetaxel until she was told so by her attorney. Ex. H, Sanford Aff., ¶5

51. Admitted.

52. Admitted as to the date she contacted counsel in August 2016 and that her complaint was filed September 21, 2017. She testified: "After I found out about the permanent hair loss on the TV, that's when I started doing research," Ex. A, Sanford Dep., 186:18-20. After seeing the ad, she called an attorney because "[she] wanted to get some information about it . . . ." *Id.* 17:9-12. She understood she had taken four (4) different chemotherapy drugs, she believed one of the drugs was "Taxotere" and wasn't aware she was actually administered Docetaxel until she was told so by her attorney. Ex. H, Sanford Aff., ¶5

## **PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN DISPUTE**

1. Whether Mrs. Sanford has permanent hair loss?

2. Whether Mrs. Sanford suffers from permanent chemotherapy induced alopecia (PCIA)?

3.  Whether Docetaxel can cause PCIA?

4.  Whether Docetaxel can cause permanent hair loss?

5.  Whether PCIA always manifests six months after completion of chemotherapy treatment?

6.  When Mrs. Sanford manifested PCIA?

7.  When Mrs. Sanford's hair loss transitioned from temporary to permanent?

8.  Whether Mrs. Sanford was on actual or constructive notice of sustaining permanent chemotherapy induced alopecia (PCIA) or permanent hair loss six months after completion of treatment with Docetaxel?

9.  When Mrs. Sanford was on actual or constructive notice of sustaining PCIA?

10. When Mrs. Sanford was on actual or constructive notice of sustaining PCIA as a result of treatment with Docetaxel?

11. Whether Mrs. Sanford was on actual or constructive notice that she was administered Docetaxel instead of Taxotere?

12. When Mrs. Sanford was on actual or constructive notice of sustaining PCIA as a result of a tort?

13. When Mrs. Sanford was on actual or constructive notice of sustaining PCIA as a result of Hospira's failure to warn of PCIA?

14. Whether Hospira admits that its Docetaxel label did not warn of *permanent* hair loss until September 2017.

15. Whether Hospira concealed its knowledge of the association between Docetaxel and permanent hair loss?

16. Whether Hospira concealed its knowledge of the association between Docetaxel and PCIA?

17. Whether Mrs. Sanford reasonably relied on the information – written and verbal – supplied by her health care providers concerning the risk of temporary vs. permanent hair loss?

18. Whether Mrs. Sanford reasonably relied on the information supplied to her concerning potential side effects of Synthroid?

19. Whether Mrs. Sanford acted reasonably in continuing to hope her hair would regrow?

20. Whether Mrs. Sanford acted to conduct a reasonable investigation of her potential claim once suspecting her hair loss might be permanent?

Dated: April 9, 2020                      Respectfully submitted,


/s/ *Michael P. McGartland*
Michael P. McGartland
MS Bar No. 100487
McGartland Law Firm, PLLC
University Centre I, Suite 500
1300 South University Drive
Fort Worth, Texas 76107
Telephone: (817) 332-9300
Facsimile: (817) 332-9301
mike@mcgartland.com

*Plaintiff's Counsel*

/s/ *Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Michael P. McGartland*
MICHAEL P. MCGARTLAND