UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | |
| Elizabeth Kahn, Case No. 2:16-cv-17039. | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

In its Order and Reasons denying Sanofi's Motion for Summary Judgment Based on the Statute of Limitations (Rec. Doc. 9885), this Court determined that Sanofi's Motion should be denied under the doctrine of *contra non valentem* based on a single visit between Plaintiff Elizabeth Kahn and her gynecologist, Dr. Margaret Roberie, that occurred on April 6, 2009. Sanofi seeks reconsideration of this ruling for two reasons. First, Ms. Kahn did not rely on any statement from Dr. Roberie to invoke *contra non valentem*. Ms. Kahn – from her uncontroverted testimony – rejected Dr. Roberie's purported statement that age had contributed to her alleged injury. Second, Ms. Kahn met with Dr. Roberie within six months of completing "chemotherapy," as the Court has defined the term. By Ms. Kahn's own allegations, this meeting occurred before Ms. Kahn suffered her injury. Where, as here, no dispute of material fact exists, the Court is well within its discretion to reconsider its Order and Reasons and grant summary judgment in Sanofi's favor.

### LEGAL STANDARD

The Court's Order and Reasons denying Sanofi's Motion is interlocutory. Interlocutory orders "are not within the provisions of [Rule] 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." *McKay v. Novartis*

*Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)). This Court may revise its interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.* (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

This power is "committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders." *Id.* at 337 (quoting *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011)) (internal quotations omitted). This relaxed standard serves a useful purpose. If the district court determines it has erred, "it would be a waste of judicial resources to force it to perpetuate such error through a trial on the remaining issues, even though it believed the ultimate judgment would have to be reversed on appeal." *Zimzores*, 778 F.2d at 266; *see also Washington v. Fieldwood Energy LLC*, No. 15-cv-6615, 2018 WL 263230, at *5 (E.D. La. Jan. 2, 2018) (Milazzo, J.) (granting motion to reconsider on summary judgment ruling).

## ARGUMENT

**I.     Ms. Kahn's full deposition testimony shows that she did not rely on Dr. Roberie's statement that age may have caused her injury.**

A plaintiff who suspects something is wrong must act reasonably to discover the cause of the problem to invoke *contra non valentem*. Under this Court's framework, a plaintiff allegedly may generate a genuine issue of material fact on this issue if (1) a doctor provides an alternative cause of the injury or tells the plaintiff that she has suffered no injury, and (2) the plaintiff relies

on the doctor's statement.  *Cf. In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 16-15607, 2019 WL 2995897, at *3 (E.D. La. July 9, 2019) ("Johnson has presented no evidence . . . to show that, like the plaintiff in *Hoerner*, she relied on information she discovered from such an investigation."), *with id.* ("Relying on her doctor's statements, [Ms. Earnest] acted reasonably in waiting and remaining hopeful for her hair to return."); *see also Hoerner v. Wesley-Jensen*, 95-0553 (La. App. 4 Cir. 11/20/96), 684 So. 2d 508, 510 ("Ms. Hoerner believed that she was the unfortunate recipient of an ubiquitous germ[.]"); *Sharkey v. Sterling Drug, Inc.*, 600 So. 2d 701, 714 (La. App. 1 Cir. 1992) (plaintiff's guardian "believed that the cause of [the child's] disease was unknown, as told to him by the physicians").  As this Court has framed the issue, the plaintiff must be "lulled" into believing that no further investigation is needed.  Ex. V, Mar. 11, 2020 Hr'g Tr. 45:4–7.

Ms. Kahn was never lulled.  In reaching the opposite conclusion, this Court cited one portion of Ms. Kahn's deposition:

> Q: Have you ever asked any health care provider why they thought your hair is thinner than it was before chemotherapy?
>
> A: I talked once to my gynecologist, and her comments were back -- her comment to me was, Well, as you age, your hair gets thinner.
>
> Q: And which gynecologist was this?
>
> A: Dr. Roberie.
>
> Q: So have you considered whether the current condition of your hair is affected by the aging process?
>
> A: I was 50 at the time, and most 50-year-old's hair do not thin. You know, 80, maybe, but not 50. So when she told me that, I was a little taken aback, but -- so I dropped it.

3

Ex. B, Dec. 7, 2017 Kahn Dep. 257:14–258:5. Ms. Kahn, however, did not say that she believed Dr. Roberie. Ms. Kahn, instead, "dropped" the question because she did not believe Dr. Roberie's explanation applied to her, but to women 30 years older with a different hair condition.

This is not Sanofi's interpretation. Ms. Kahn's other testimony about her meeting with Dr. Roberie makes her meaning plain. Specifically, Ms. Kahn asserts her injury is hair balding, not hair thinning. Ex. S, Dec. 7, 2017 Kahn Dep. 272:3–4 ("I don't have hair thinning. I have hair balding."). Dr. Roberie provided no explanation – and, in turn, nothing on which Ms. Kahn could rely – about hair balding:

> Q. Well, you said Dr. Roberie thought the hair thinning was a natural part of a woman's aging, correct? Did you tell me that?
>
> A. Yes, she did say that.
>
> Q. So do you --
>
> A. But she didn't -- but she didn't explain why -- she didn't explain hair balding. She talked about hair thinning. As I said, I think those are two different things.
>
> ***
>
> Q. And she was answering a question you had about your hair when she provided that answer, correct?
>
> ***
>
> A. She didn't answer my question. . . .
>
> ***
>
> Q. Even despite what Dr. Roberie said, you don't even think it's possible. Is that your testimony?
>
> A. Yes.

*Id.* at 273:14–24; 274:6–8, 20; 276:15–21. Taken together, Ms. Kahn's testimony is clear Dr. Roberie did not address Ms. Kahn's injury (from Ms. Kahn's point of view), and Ms. Kahn did

4

not rely on any purported link between age and her perceived injury.  On these facts, *Hoerner* is distinguishable.  There, the plaintiff "believed" her doctor's diagnosis that a common germ caused her eye injury.  Ms. Kahn did not.  Accordingly, Sanofi asks the Court to reconsider its denial and grant summary judgment in Sanofi's favor.

**II.     By her own allegations, Ms. Kahn met with Dr. Roberie before suffering an injury.**

Not only did Ms. Kahn disregard Dr. Roberie's statement, but their meeting – by Ms. Kahn's own allegations – occurred before Ms. Kahn suffered her injury.  In its Order and Reasons, the Court decided that prescription began six months after Ms. Kahn completed her pre-surgery chemotherapy regimen, as opposed to her overall chemotherapy treatment.  Rec. Doc. 9885 at 6 n.17.  This timeline, however, still makes Ms. Kahn's meeting with Dr. Roberie premature.[1]  Ms. Kahn completed her pre-surgery chemotherapy regimen on October 23, 2008.  Rec. Doc. 9295-1 at 2.  Ms. Kahn met with Dr. Roberie on April 6, 2009.  Rec. Doc. 9295-2 at 11 n.6.  By Ms. Kahn's own definition of the injury – hair loss six months after chemotherapy – this meeting occurred weeks before Ms. Kahn's injury accrued.

## CONCLUSION

Ms. Kahn's deposition testimony points to the unescapable conclusion that she was not lulled by Dr. Roberie.  Dr. Roberie, according to Ms. Kahn, never "answer[ed] [her] question" about the cause of her hair balding.  Ms. Kahn, in turn, could not rely on a non-answer to invoke *contra non valentem*.  And, in any event, Ms. Kahn's meeting with Dr. Roberie occurred weeks before Ms. Kahn's injury manifested.  For these reasons, the Court should grant this Motion to Reconsider and enter summary judgment in Sanofi's favor.

---

[1] Ms. Kahn's alleged conversation with Dr. Roberie about hair loss in April 2009 remains wholly unsupported by the medical record evidence.  Ex. N, Ochsner Health System 1257–1258.

5

Respectfully submitted,
/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*