# EXHIBIT V

## Page 1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
   ******************************************************************
   IN RE:  TAXOTERE (DOCETAXEL)
   PRODUCTS LIABILITY LITIGATION
                      Docket No. 16-MD-2740
                      Section "H"
                      New Orleans, Louisiana
                      Wednesday, March 11, 2020
   [THIS DOCUMENT
   RELATES TO:
   CASE NO. 16-CV-15397 JUNE PHILLIPS
       16-CV-17039 ELIZABETH KAHN
   and ALL CASES]
   ******************************************************************

              TRANSCRIPT OF MOTION PROCEEDINGS
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                  UNITED STATES DISTRICT JUDGE

   APPEARANCES:
   FOR THE PLAINTIFFS:       MORRIS BART & ASSOCIATES
                             BY:  RICHARD ROOT, ESQ.
                             Pan American Life Center
                             601 Poydras St., 24th Floor
                             New Orleans, LA 70130

                             BACHUS & SCHANKER, LLC
                             BY:  DARIN L. SCHANKER, ESQ.
                             1899 Wynkoop St., Suite 700
                             Denver, CO 80202

                             PENDLEY BAUDIN & COFFIN
                             BY:  CHRISTOPHER L. COFFIN, ESQ.
                             2505 Energy Centre
                             1100 Poydras St.
                             New Orleans, LA 70163

                             GAINSBURG BENJAMIN DAVID
                             MEUNIER & WARSHAUER
                             BY:  M. PALMER LAMBERT, ESQ.
                             1100 Poydras St., Suite 2800
                             New Orleans, LA 70163
```

## Page 2

```
   FOR SANOFI S.A.:          IRWIN FRITCHIE URQUHART & MOORE
                             BY:  DOUGLAS J. MOORE, ESQ.
                                  KELLY E. BRILLEAUX, ESQ.
                             400 Poydras St., Suite 2700
                             New Orleans, LA 70130


                             SHOOK HARDY & BACON
                             BY:  JON A. STRONGMAN, ESQ.
                             2555 Grand Blvd.
                             Kansas City, MO 64108


   Official Court Reporter:  Karen A. Ibos, CCR, RPR, CRR, RMR
                             500 Poydras Street, B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7776


   Proceedings recorded by mechanical stenography, transcript
   produced by computer.
```

## Page 3

                          PROCEEDINGS
                  (WEDNESDAY, MARCH 11, 2020)
                     (STATUS CONFERENCE)

           (OPEN COURT.)
           THE COURT:  Good morning.  I have received your order
   that you would like to argue in and that's fine.
           Before we get started, let me just say that I have spent
   lots of time and you have read lots of opinions coming from me, and
   I think they're pretty consistent how I read contra non valentem,
   what I think learned intermediary means, and how I view causation.
   So I would hope that you don't read what I've already said back to
   me, and spend some time just telling me what the uncontested facts
   are in each of these that I should focus on.  Are we good?
           MR. MOORE:  I believe so, your Honor.  Thank you.  Good
   morning.  Douglas Moore on behalf of Sanofi.
           And thank you for your Honor's indulgence on proceeding
   in the sort of batting ordering that we proposed, starting first
   with a Motion For Summary Judgment Based on Warnings Causation in
   the June Phillips case.  And in thinking about what I would present
   to your Honor in the time that I have for this motion, I did think
   about a comment that you've made to us many times, and that is any
   time you make an important ruling, 50 percent of the litigants are
   dissatisfied.
           THE COURT:  Oh, yeah.

## Page 4

           MR. MOORE:  And certainly with respect to the learned
   intermediary doctrine, we proposed a framework to your Honor that
   was different than what your Honor ultimately imposed in the
   Earnest case, in the Mills case and in this litigation.  And so
   rather than try and convince your Honor to do something different
   than you've already done -- because we've seen that doesn't work
   very well, we tried that, both sides have learned that lesson -- I
   thought it would be more sensible to respect the framework that
   your Honor has given us and try and demonstrate to you why we think
   there is no triable issue of fact under that framework with the
   facts specific to this case.
           THE COURT:  Right.
           MR. MOORE:  And so consistent with your request, I am
   going to try and focus my comments there.
           But before I get to that point, I think it's important to
   sort of identify what our responsibilities here are under Rule 56
   in a federal court.  My job as the party who does not have the
   burden at trial is simply to demonstrate that they lack evidence on
   an essential element of their claim.  Their responsibility at that
   point is to come forward with specific evidence, specific facts.
           The evidence has to be significantly probative, can't be
   mere assertion, can't be colorable, we can't simply say that there
   is a fact issue or this is an issue that should be decided by the
   jury because there's -- it's in by its nature a fact issue.  It
   is -- there has to be evidence and they have to come forward with

Page 45

1  said in previous rulings about whether or not they made inquiries
2  to doctors.
3       Now, that testimony --
4       THE COURT: Well, but the inquiries, if the doctor says
5  and lulls them in to some belief that the hair is going to grow
6  back, sit tight. And that's what Ms. Earnest's doctor said,
7  "sometimes it takes longer." But I am not seeing that here.
8       I guess my question for you is, when she says, "I think
9  it was due to chemotherapy," didn't that incite the duty to
10 investigate?
11      MR. COFFIN: Here is the backdrop, your Honor, and
12 there's testimony about this, too. And incidentally, we would like
13 to supplement because there were three depositions taken on Monday,
14 one on Tuesday, one of the husband of Ms. Kahn, who was in the room
15 with her. So I will ask for that.
16      But the backdrop is that Ms. Kahn, and the evidence
17 shows, was instructed that your hair will grow back, this will be
18 temporary.
19      THE COURT: Right.
20      MR. COFFIN: She was instructed by her doctors. So
21 what's the question she is asking, hey, when will my hair grow
22 back? You told me it was going to. The question is, what's going
23 on with this? And the doctors, they don't know what to tell her,
24 other than, well, try this biotin, or no explanation, I am not
25 really sure what's going on with it.

Page 46

1       So, I mean, so there's no definitive answer because the
2  doctors don't even know. But the inquiries were clearly made.
3  She's clearly gone to a doctor and made an inquiry, there is no
4  doubt about that on three different occasions. And Mr. --
5       THE DEPUTY CLERK: You're over seven minutes.
6       THE COURT: Finish that sentence.
7       MR. COFFIN: Ms. Kahn's husband testified yesterday that
8  Dr. Larned specifically said that her hair would grow back. He was
9  in the room with her.
10      If I can just cite one case and then I will stop. Are
11 you okay with that, Judge?
12      THE COURT: Yes.
13      MR. COFFIN: It's not in our briefing, but I would
14 encourage the Court to look at a case that's really reflective of
15 our position here and that the court accepted in Shepherd v.
16 Johnson & Johnson from the Western District of Louisiana, the cite
17 is 2019 Westlaw 653817. This case is really on point. I don't
18 think it's been brought to your Honor's attention. It even
19 discusses the plaintiff viewing a TV ad that put her on notice that
20 she was the victim of a tort.
21      THE COURT: Okay.
22      MR. COFFIN: Thank you, your Honor.
23      THE COURT: Thank you.
24      MR. STRONGMAN: I don't have anything else, your Honor.
25      THE COURT: Okay. Thank you. Ms. Brilleaux.

Page 47

1       MR. COFFIN: Your Honor, I had mentioned supplementing
2  the record. Can we do that because of the deposition testimony
3  that was taken after these briefs were filed?
4       THE COURT: Is there an objection? Was it taken within
5  the discovery time?
6       MR. COFFIN: Oh, yes, yes. The motions were filed before
7  the end of this discovery period.
8       MR. STRONGMAN: Yeah, and they were taken as part of the
9  Phase II discovery or what not. I certainly have think it has any
10 bearing on statute of limitations, but...
11      THE COURT: That's fine. If it's within the discovery
12 period, that's fine.
13      MR. COFFIN: Okay. Thank you, your Honor.
14      THE COURT: Ms. Brilleaux. You got another PowerPoint on
15 this?
16      MS. BRILLEAUX: I thought you would be excited about it.
17      Good morning, your Honor. Kelly Brilleaux on behalf of
18 Sanofi. And on behalf of all of the defendants in this MDL, we are
19 currently seeking a modification of PTO 70B, which is the order
20 that governs ex parte communication with physicians.
21      THE COURT: How are you prejudiced? Let's cut to the
22 chase.
23      MS. BRILLEAUX: Of course.
24      THE COURT: We had this commotion during Ms. Earnest's
25 trial.

Page 48

1       MS. BRILLEAUX: Of course.
2       THE COURT: And my question is, how were you prejudiced?
3  I guess -- and I told you at that time, so I am cutting out that.
4  I don't know a case that you try where you don't talk to your
5  witnesses before you put them on the stand.
6       MS. BRILLEAUX: And that's actually the exact position
7  that defendants are in, because we would also be putting on the
8  prescribing physician. As you know, the prescribing physician is
9  the most important non-party fact witness in the case. It's
10 important to plaintiffs and it's equally important to defendants.
11 And we're put in a position where not only do we not get to talk to
12 the physician, but plaintiffs' counsel has the unlimited,
13 exclusive, and unfettered ability to talk to the same witness.
14      THE COURT: But you know exactly what -- when they met,
15 what they reviewed, how much they were paid. I got to tell you, I
16 haven't seen that in a case where a treating physician -- where the
17 plaintiff has to provide to --
18      MS. BRILLEAUX: And, your Honor, you're correct, the
19 disclosures are helpful. The real issue is and why we proposed our
20 alternate solution is that there's a wide window of time in-between
21 the deposition and trial. And in the Earnest case on essentially
22 the eve of trial and during trial, plaintiffs' counsel are having
23 continued meetings with the physicians. And while we are given a
24 disclosure list, we don't know what they're told. Dr. Carinder was
25 on the stand during Earnest for nearly five hours that day, and