UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)      MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Cases listed in Rec. Doc. 8977-3.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFFS WHOSE
TAXOTERE TREATMENT STARTED BEFORE DECEMBER 15, 2006**

The PSC has relied on one expert, Dr. Kessler, to address when Sanofi had a duty to provide stronger warnings about the alleged risk of irreversible hair loss and Taxotere between "the years 1990 to 2015." Ex. C, Kessler Rpt. ¶ 11. Dr. Kessler, in turn, has given a consistent answer, which the Court heard in the *Earnest* trial (and which Dr. Kessler has reaffirmed twice since):

> Q. With regard to the information that you have reviewed, have you made a determination about approximately when the information was sufficient to put Sanofi on notice that it needed to provide a permanent hair loss warning?
>
> A. Yes, I have made that determination.
>
> Q. When, approximately, was that?
>
> A. I think **not later than about 2009**, and probably **as early as around 2006**.

Ex. D, Sept. 17, 2019 Trial Tr. 331:3–10 (emphases added). That quotation is not a distortion or canard. And there is nothing contrived about Sanofi pointing out that the *Sedlacek* abstract (published **December 15, 2006**) is the earliest information Dr. Kessler has *ever* identified in support of his "notice" opinion. *See* Ex. E, Dec. 20, 2018 Kessler Dep. 251:20–252:1.

Dr. Kessler's opinion is significant because it serves as reliable *evidence of absence*. That opinion (and the fact Dr. Kessler formed it after a purportedly exhaustive review of thousands of pages of documents and deposition testimony, including the information the PSC cites in its Opposition without a sponsoring expert) provides the Court adequate grounds to resolve a "common factual question"[1] shared by all the actions in this MDL. Specifically, Dr. Kessler's uncontroverted opinion is that – before December 15, 2006 – there was an *absence of information*

---

[1] When the JPML created this MDL, it stated, "[a]ll the actions share common factual questions arising out of allegations that Taxotere (docetaxel), a chemotherapy drug, causes permanent hair loss, that defendants were aware of this possible side effect *and failed to warn patients*, and that defendants marketed Taxotere as more effective than other chemotherapy drugs when other drugs were equally effective without the associated permanent hair loss." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 220 F. Supp. 3d 1360, 1361 (J.P.M.L. 2016) (emphasis added).

1

sufficient to put Sanofi on notice that it needed to provide a stronger warning about permanent hair loss. As explained below, the PSC's arguments in opposition have no merit.

I.     **Dr. Kessler is a General Issues Expert Whose Opinions Apply to All MDL Plaintiffs.**

The PSC begins with the claim that Dr. Kessler is a "case-specific" expert whose opinions apply "only" to bellwether picks with treatment dates between 2008 and 2011. Pls.' Opp. at 1, 3–4 (Rec. Doc. 9231). This is false. Dr. Kessler is a generic expert whose opinions apply to all cases in this MDL.[2] As his report confirmed, Dr. Kessler addresses the general liability question of whether and when Sanofi had a duty to warn of permanent hair loss from "1990 to 2015":

> I have been asked to address Sanofi's duty to warn physicians and patients about the risks of irreversible hair loss associated with Taxotere from the years **1990 to 2015** and, because of the date of Taxotere administration to the bellwether plaintiffs cited above, to specifically provide opinions about Sanofi's duty by as early as 2009.

Ex. C, Kessler Rpt. ¶ 11 (emphasis added).[3] There are no case-specific opinions in his original or supplemental reports, and Dr. Kessler has consistently testified that, contrary to the PSC's suggestion, he is not offering any case-specific opinions.[4] Dr. Kessler's "notice" opinion has been the same in every one of his expert reports, regardless of any particular Plaintiff's treatment date. Indeed, the PSC has recently asserted that it would be "a waste of both time and resources" for

---

[2] This Court has previously recognized the duality of case-specific and general experts in this MDL. *See, e.g.*, CMO 8A at 6 (Rec. Doc. 1099) ("Any expert witness who was previously deposed in this MDL, shall not be deposed again absent good cause shown, unless such expert is offering a *case-specific* opinion or a new opinion not previously disclosed.") (emphasis added); Minute Entry (Rec. Doc. 5374) ("IT IS ORDERED that the 505(b)(2) Defendants are permitted to have two representatives attend the depositions of Plaintiffs' experts on general issues.").

[3] This statement appears in the body and within the first three pages of Dr. Kessler's report in a section titled "SCOPE OF EXPERT OPINIONS." *Id.*

[4] Ex. E, Dec. 20, 2018 Kessler Dep. 25:12–14 ("You are a non case-specific expert, is that fair? A. Correct."); Ex. D, Sept. 17, 2019 Trial Tr. 393:4–7 ("Q. And so you're not here talking about Ms. Earnest today; correct? A. Please, you're exactly correct, Counselor. Others will testify. I'm here to talk about the framework for drug safety."); Ex. F, Nov. 26, 2019 Kessler Dep. 49:15–19 ("I'm not going to give case-specific opinions with Ms. Thibodeaux. I've only done it for a context of being able to talk about the regulatory and causation aspects in a general sense.").

2

Sanofi to take Dr. Kessler's deposition in connection with the next round of trial cases (*Phillips* and *Kahn*) because he "offer[s] no case specific opinions."[5]

Nevertheless, the PSC – which hired, prepared, and paid Dr. Kessler – suggests it would be unfair to apply his general opinions to Plaintiffs with pre-2007 treatments dates because, according to the PSC, these Plaintiffs have not yet had an opportunity to present their expert testimony. Pls.' Opp. at 1. In fact, as set forth above, the PSC specifically asked Dr. Kessler to offer general, and not case-specific, opinions about Sanofi's duty to warn about permanent hair loss during the time period "1990 to 2015," which encompasses all Plaintiffs with pre-2007 treatment dates.

Further, given the scope of his opinions, the PSC does not explain how Dr. Kessler – the PSC's only expert on this issue – could reliably change his opinion consistent with *Daubert* to offer *a different* "notice" opinion. Nor does the PSC identify any authority permitting those Plaintiffs to disclose thousands of new general experts to present *different* expert testimony on the issue of "notice." Where, as here, there is a potentially dispositive "global issue" (such as notice) that does not depend on case-specific facts, MDL courts routinely address motions for summary judgment on such global issues based on general expert opinions like Dr. Kessler's. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No II)*, 892 F.3d 624, 648–49 (4th Cir. 2018) (affirming summary judgment in entire MDL based in part on exclusion of general statistical and causation opinions); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 800 (3d Cir. 2017); *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 337 n.2, 358 (S.D.N.Y. 2019) (granting omnibus summary

---

[5] *See* Ex. G, Jan. 21, 2020 Email from Mr. Miceli to Ms. Byard and Mr. Ratliff ("As Drs. Kessler, Madigan, Feigal and Plunkett offer no case specific opinions, and have no present plan to offer any additional opinions for the August 10 trial, we see re-deposing these witnesses as a waste of both time and resources for both parties, particularly at a time when we are facing other tight deadlines for necessary discovery.").

judgment across 53 jurisdictions when plaintiffs' experts failed to offer reliable admissible testimony on general causation); *see also Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 866–69 (6th Cir. 2006) (affirming district court's grant of omnibus summary judgment in MDL based on label adequacy); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 835 (E.D. Tex. 2002) (granting summary judgment against 2,960 plaintiffs in 710 cases under the learned intermediary doctrine and lack of general causation).

## II.     The PSC Cannot Uncouple Itself from Dr. Kessler's Explicit "Notice" Opinion.

The PSC next attempts to disavow Dr. Kessler's "notice" opinion (and the corresponding fencepost) by identifying information that, according to the PSC, shows Sanofi had a duty to provide a stronger warning before December 15, 2006. But the PSC does not claim to be an expert on this issue; Dr. Kessler does. And expert testimony (not counsel's unqualified determination) is the only basis to resolve an issue involving complex medical issues and the defendant's alleged awareness of the risk. *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1034 (E.D. Cal. 2011) ("Plaintiff's general assertion that the medical literature put defendants on notice of a risk of harm involves complex medical issues. As such, Plaintiff's position must be supported by expert testimony. The court cannot accept . . . counsel's unsupported determination that the medical literature triggered defendants' alleged duty to 'further investigate [the] risk or at least warn of [the] risk.'") (internal citations omitted); *see also Smith v. Glaxosmithkline Corp.*, No. CIVA 05-2728, 2008 WL 4938426, at *2 (E.D. La. Nov. 17, 2008) (requiring expert testimony in cases involving complex medical issues).

The Court should hold the PSC to Dr. Kessler's opinions. To that end, the alleged evidence cited by the PSC fails to move the needle. The question raised by the PSC is whether Sanofi should have known of the hair loss between Taxotere and permanent alopecia before December 15, 2006

4

and therefore changed its warnings. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *26 (N.D. Ohio June 4, 2010) ("[K]nowledge of a mere 'possibility of danger' does not necessarily translate to a legal warning requirement, nor does it necessarily imply liability."). What the PSC omits from their Opposition, however, is that Dr. Kessler – in forming his "notice" opinion – *already* considered each piece of information the PSC cites. In every instance, Dr. Kessler quoted or cited the information in his original or supplemental report (or considered it in his review of Dr. Michael Kopreski's 30(b)(6) deposition):

- **January 26, 2007 informed-consent revision.** *See* Ex. H, Kessler Suppl. Rpt. ¶ 63.4 n.61.

- **"Dialogue" with Dr. Sedlacek's office regarding his patients.** *See* Ex. I, Dec. 12, 2018 Kopreski Dep. 229:17–230:11.

- **October and July 2005 reports of "PSA" from a nurse at Dr. Sedlacek's practice.** *See id.* at 101:11–102:11.

- **August 2006 salesforce document.** *See* Ex. C, Kessler Rpt. ¶ 205.20 n.283.

- **2003 and 2004 reports by Dr. Mackey of "at least 15 cases of patients with permanent alopecia."** *See* Patients 48–49, 51, 53–54, 58, 62–63, 72, 74–76, and 78–80 in Table 1 of Exhibit 7 to Dr. Kopreski's first 30(b)(6) deposition (Ex. J).

- **2001 Nabholtz article.** *See* Ex. H, Kessler Suppl. Rpt., Schedule 5.

The information cited by the PSC above falls into two categories: (1) evidence related to Dr. Sedlacek's study and report, and (2) evidence from Sanofi investigators. Dr. Kessler considered both, and neither raises a genuine issue concerning the absence of evidence of information sufficient to put Sanofi on notice before December 15, 2006.

First, the PSC argues that Sanofi "knew" of case reports about Dr. Sedlacek's patients before December 2006. This is undisputed. In July 2005, Dr. Sedlacek's nurse reported to Sanofi that several of Dr. Sedlacek's patients experienced permanent alopecia while taking Taxotere in combination with other drugs. Ex. I, Dec. 12, 2018 Kopreski Dep. 100:5–102:11, 229:17–233:13.

5

Sanofi then contacted Dr. Sedlacek's office for more information. *Id*. at 229:17–230:11. Dr. Sedlacek's nurse then provided Sanofi more details on October 10, 2005. *Id*. at 101:11–103:14. Later, in August 2006, a salesforce document allegedly shows that Dr. Sedlacek shared his permanent alopecia observations with a Sanofi sales representative. Ex. K, Sanofi_04633925.

Dr. Kessler, however, considered all of this information before offering his opinion,[6] and he *never* opined that that these case reports were sufficient to justify a stronger or more specific warning before December 2006. Instead, Dr. Kessler testified that the publication of the *Sedlacek* abstract put Sanofi on notice because, in Dr. Kessler's opinion, it demonstrated a statistically significant increased risk of persistent alopecia for patients treated with Taxotere. Ex. E, Dec. 20, 2018 Kessler Dep. 250:17–252:1. According to Dr. Kessler, the *Sedlacek* abstract – *for the first time* – compared persistent alopecia in Taxotere regimens against patients treated with non-Taxotere chemotherapies. Dr. Kessler relied on this data to perform a "Fisher Exact" Test, searching for statistical significance. *Id*. Neither Dr. Kessler nor Sanofi could have performed this test using the 2005 case reports because Dr. Sedlacek's full study data was not available in 2005, and the PSC's suggestion that a handful of case reports from 2005 put Sanofi on notice is inconsistent with Dr. Kessler's reports and testimony.

Second, the PSC claims that reports of ongoing alopecia from two Sanofi investigators supported a stronger warning before December 2006.[7] The upshot appears to be that in January

---

[6] Dr. Kessler "considered . . . [c]orporate and individual depositions of Michael S. Kopreski, M.D. and all exhibits [to those depositions]." Ex. H, Kessler Suppl. Rpt., Suppl. App. C. Dr. Kessler's Report also specifically cites the sales coaching report the PSC includes in its Opposition. Ex. C, Kessler Rpt. ¶ 205.20 n.283.

[7] The PSC mentions a 2001 article published by Dr. Nabholtz, a Sanofi study investigator. The *Nabholtz* article observed four cases of partial alopecia lasting longer than two years. Dr. Kessler identified this paper in the *Earnest* trial as one he considered in forming his opinion, and he included it in Schedule 5 of his Supplemental Expert Report. In both instances, Dr. Kessler only opined that sufficient evidence warranted a stronger warning in 2006. Ex. D, Sept. 17, 2019 Trial Tr. 331:3–10; Ex. H, Kessler Suppl. Rpt. ¶ 5. Also, in May 2004, FDA considered information, including the *Nabholtz* article, when it approved Taxotere for adjuvant chemotherapy. Consistent with Dr. Kessler's opinion, FDA did not deem such information sufficient to justify a more explicit warning about permanent hair loss in May 2004. Last, the PSC currently stands in opposition not only to Dr. Kessler and FDA, but also to the PSC's

2007 – a month after the *Sedlacek* abstract – Dr. Mackey's study site proposed a revision to include permanent alopecia in Sanofi's informed consent. Pls.' Opp. at 8. This proposal, however, postdates Dr. Kessler's "notice" opinion. In any event, Dr. Kessler already considered this evidence, too. He specifically cited the informed consent proposal in support of his December 2006 opinion. Ex. H, Kessler Suppl. Rpt. ¶ 63.4 n.61. He also reviewed Dr. Kopreski's First 30(b)(6) Deposition Notice[8] – which contained all of the Mackey patients identified in the PSC's Opposition[9] – as well as Dr. Kopreski's specific testimony on these case reports.[10] In sum, the Court need not consider the effect of the above information on Dr. Kessler's "notice" opinion; Dr. Kessler already has, and his opinion never changed.

### III. The PSC's Remaining Arguments Do Not Change the Outcome.

Finally, the PSC presents a grab bag of arguments, none of which warrants denial of Sanofi's Motion.

The PSC first asserts Exhibit A contains incorrect treatment dates for 16 Plaintiffs (out of 1,370), and therefore does not reliably identify all Plaintiffs whose Taxotere treatment started before December 15, 2006. There is no good-faith basis for the PSC's assertion. Each purported instance of an "incorrect treatment date" involves one of the following: (1) a Plaintiff whose operative PFS denotes a treatment date before December 15, 2006; or (2) a Plaintiff who, following

---

earlier position at oral argument and the *Earnest* trial. Ex. L, Aug. 8, 2018 Tr. 116:13–16 (PSC counsel answering, in response to the Court's question, that the label "should have been changed as early as 2006"); Ex. M, *Earnest* Trial Exhibit (graphic used by PSC indicating that the trigger date for "Sanofi's knowledge" was 2006).

[8] Ex. H, Kessler Suppl. Rpt., Suppl. App. C. The Dr. Mackey patients cited in the PSC's Opposition are identified as patients 48–49, 51, 53–54, 58, 62–63, 72, 74–76, and 78–80 in Table 1 of Exhibit 7 to Dr. Kopreski's first 30(b)(6) deposition (Ex. J).

[9] The PSC implies that Dr. Mackey's informed consent proposal was a result of patient data he observed in 2003 and 2004 at his study cite. There is no support for this speculative opinion and, not surprisingly, the PSC offers none.

[10] Ex. N, Sept. 6, 2018 Kopreski Dep. 344:24–362:23 (patient 10517), 363:4–369:9 (patient 10511), 381:11–385:22 (patient 11158); *see also* Ex. O, Oct. 11, 2018 Kopreski Dep. 481:19–501:21 (patient 10854), 501:22–513:5 (patient 10230), 568:14–583:1 (patient 11857), 583:19–608:9 (patient 11714), 622:13–627:8 (patient 12994), 627:13–635:20 (patient 12607).

the filing of Sanofi's Motion, submitted an amended PFS changing the treatment date from some point *before* to some point *after* December 15, 2006.[11]

The PSC's approach to Exhibit A sets the tone for its remaining arguments. The PSC's attempt to draw meaningful distinctions between States' laws falls flat. As evidenced by Exhibit B, "[t]he courts are virtually uniform in imposing warning duties only as they apply to such adverse reactions or side effects of which the manufacturer knew or should have known at the time of manufacture." 2 Owen & Davis on Prods. Liab. § 19:9 (4th ed. 2019). The PSC's argument is particularly illusory given that Dr. Kessler does not tie his opinion to any one state-law standard.[12] Instead, his opinion is that Sanofi's duty issue a stronger warning arose no earlier than December 15, 2006. Accordingly, Dr. Kessler's opinion necessarily provides that the risk was not identifiable before that date, regardless of how that limitation is phrased under state law.

To that end, the PSC's reliance on *Clay v. American Tobacco Company, Inc.* is misplaced. 188 F.R.D. 483 (S.D. Ill. 1999). In *Clay*, the named plaintiffs moved for class certification for all persons who, as children, had purchased and smoked defendants' cigarettes. *Id.* at 486. Among others, the plaintiffs asserted a negligent supply claim under § 389 and a design defect claim under § 402A of the Restatement (Second) of Torts. *Id.* at 488, 497. The court reasoned that a nationwide

---

[11] Exhibit A details these inconsistencies. For example, the PSC claims Sanofi incorrectly included Plaintiff Sheena Wright in Exhibit A because she received treatment in 2009, not 2002. Pls.' Opp. at 15. The PSC ignores that on January 7, 2020 – when Sanofi filed its Motion – Ms. Wright's PFS listed her treatment date as April 2002. Not until January 31, 2020 – *after Sanofi's Motion had been on file for three weeks* – did Ms. Wright submit an amended PFS that now alleges she received treatment seven years later, in August 2009. Of greater concern, the PSC asserts that the new treatment dates find support in the "[v]oluminous medical records available in MDL Centrality to be appended at the Court's request." *See, e.g.*, Rec. Doc. 9231-1 ¶ 39. The PSC never specifies the records supporting the new treatment dates. And, in Plaintiff Sheriba Alexander's case, the records actually confirm that Ms. Alexander began her Taxotere treatment in 2006, not 2007 as she now claims. Ex. P, Medical Records_151362 at 184–85.

[12] Instead, Dr. Kessler's opinion is that Sanofi's duty to issue a stronger warning arose no earlier than December 15, 2006. Because Dr. Kessler's opinion rests on the existence of contemporaneous evidence of the risk, the fact that he has not identified such risk before December 15, 2006 aligns directly with an absence of proof sufficient (or affirmative evidence to the contrary) for the claims of Plaintiffs treated before this date to survive. The PSC also asserts that Sanofi failed to address the relevant law in Idaho, North Dakota, and South Carolina. But Sanofi has addressed those states in Exhibit B.

8

class action of those claims would be unmanageable, primarily, because of the individualized proof needed to demonstrate proximate cause and physical harm. *Id.* at 501. Neither proximate cause nor physical harm are at issue here.

The *Clay* court's remaining statements concerned (1) whether all states at issue had adopted Section 402A or had adopted a state-specific law with differing elements of proof, and (2) whether each state had adopted or rejected Section 389 or had not considered the issue at all. *Id.* at 501–02. The PSC omits the full quotation from *Clay*, which actually supports Sanofi's position: "Given these uncertainties, it would be a daunting task for this Court to determine whether to impose such liability on the defendants for conduct occurring in states that *have not considered the issue or have rejected [Section 389] altogether*." *Id.* at 502 (emphasis added). That situation is not presented here. Sanofi's Motion addresses the common requirement of a failure to warn claim – *i.e.*, that the defendant must know or should know of the risk. In contrast to the plaintiffs in *Clay*, Sanofi has shown that the states at issue *have* considered the issue and *have* adopted the reasonable limitation that drug manufacturers are liable only for risks for which they should have known.

Given that uniformity, the PSC's contention that the Court need engage in a vexing choice-of-law analysis also must fail. The concept that failure to warn claims are limited to risks of which the manufacturer should have known is a generally applicable statement of law. 2 Owen & Davis on Prods. Liab. § 19:9 (4th ed. 2019). And, "[i]t is well-settled law that, when a particular issue raised by a motion for summary judgment depends upon generally applicable statements of law, the MDL court need not engage in a choice of law analysis to resolve the summary judgment motion." *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 820 n.26 (N.D. Ohio 2004) (citing *TMJ Prods. Liab. Litig.*, 113 F.3d 1484, 1488–89 (8th Cir. 1997)), *aff'd*, 447 F.3d 861 (6th Cir. 2006); *see also Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992) (Posner,

J.) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws."). No meaningful difference exists across state laws in this case, as evidenced by Exhibit B.

Finally, the PSC frames Sanofi's Motion as one for partial summary judgment. It is not. Plaintiffs' claims rest on a simple premise: Sanofi should have more strongly warned of a risk of permanent alopecia. *In re Norplant*, 215 F. Supp. 2d at 802 ("[T]he claims of all remaining Plaintiffs are fundamentally grounded in the assertion that Defendants failed to warn them of Norplant's adverse side effects. Therefore, no matter how Plaintiffs characterize their specific claims in each individual complaint—i.e., strict products liability, negligence, fraud, misrepresentation, breach of warranty, et cetera—the court will treat Plaintiffs' claims against Defendants as failure to warn claims in analyzing these motions for partial summary judgment."). Here, the narrow issue for the Court is when, according to the expert testimony that is required on the issue of notice in this litigation, Sanofi should have known of the alleged risk of permanent alopecia. Because the PSC's expert testimony on that issue asserts that Sanofi could not have known of the alleged risk until after December 15, 2006, all of Plaintiffs' claims as to pre-2007 statements by Sanofi and thus cases involving Plaintiffs prescribed Taxotere before 2007 are subject to summary judgment.

## CONCLUSION

The PSC has known throughout 2019 that the Court would entertain "fencepost" motions, yet the only "notice" opinion that Dr. Kessler included in his reports (and reaffirmed at his recent deposition) is one generally applicable to all cases in this MDL. That opinion provides the Court with adequate grounds to grant Sanofi's Motion and dismiss the claims of those Plaintiffs whose Taxotere treatment started before December 15, 2006.

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* | Harley V. Ratliff |
| Douglas J. Moore (Bar No. 27706) | Adrienne L. Byard |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | **SHOOK, HARDY& BACON L.L.P.** |
| 400 Poydras Street, Suite 2700 | 2555 Grand Boulevard |
| New Orleans, LA 70130 | Kansas City, Missouri 64108 |
| Telephone: 504-310-2100 | Telephone: 816-474-6550 |
| Facsimile: 504-310-2120 | Facsimile: 816-421-5547 |
| dmoore@irwinllc.com | hratliff@shb.com |
| | abyard@shb.com |

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

11