12:45:17   1                    UNITED STATES DISTRICT COURT

           2                    EASTERN DISTRICT OF LOUISIANA

           3
               ******************************************************************
           4
               IN RE:   TAXOTERE
           5   (DOCETAXEL) PRODUCTS
               LIABILITY LITIGATION
           6
                                        CIVIL ACTION NO. 16-MD-2740 "H"
           7                            NEW ORLEANS, LOUISIANA
10:24:32   8                            WEDNESDAY, APRIL 22, 2020, 10:30 A.M.

           9

          10   THIS DOCUMENT RELATES TO:
               ALL CASES
          11
               ******************************************************************
          12

          13
                           TRANSCRIPT OF TELECONFERENCE PROCEEDINGS
          14            HEARD BEFORE THE HONORABLE MICHAEL NORTH
                            UNITED STATES MAGISTRATE JUDGE
          15

          16
               APPEARANCES:
          17

          18
               FOR THE PLAINTIFFS:        GAINSBURGH BENJAMIN DAVID
          19                              MEUNIER & WARSHAUER
                                          BY:  M. PALMER LAMBERT, ESQ.
          20                              1100 POYDRAS STREET
                                          SUITE 2800
          21                              NEW ORLEANS, LOUISIANA 70163

          22

          23                              SIMMONS HANLY CONROY
                                          BY:  DAVID F. MICELI, ESQ.
          24                              ONE COURT STREET
                                          ALTON, ILLINOIS 62002
          25

                               *OFFICIAL TRANSCRIPT*

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR SANOFI S.A.:            IRWIN FRITCHIE URQUHART & MOORE
                                  BY:  DOUGLAS J. MOORE, ESQ.
 4                                400 POYDRAS STREET
                                  SUITE 2700
 5                                NEW ORLEANS, LOUISIANA 70130

 6

 7                                SHOOK, HARDY & BACON
                                  BY:  HARLEY V. RATLIFF, ESQ.
 8                                2555 GRAND BOULEVARD
                                  KANSAS CITY, MISSOURI 64108
 9

10
      FOR HOSPIRA, INC.,
11    HOSPIRA WORLDWIDE, LLC,
      FORMERLY DOING BUSINESS
12    AS HOSPIRA WORLDWIDE,
      INC., AND PFIZER INC.:      CHAFFE MCCALL
13                                BY:  JOHN F. OLINDE, ESQ.
                                  2300 ENERGY CENTRE
14                                1100 POYDRAS STREET
                                  NEW ORLEANS, LOUISIANA 70163
15

16
      OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
17                                CERTIFIED REALTIME REPORTER
                                  REGISTERED MERIT REPORTER
18                                500 POYDRAS STREET
                                  HALE BOGGS BUILDING ROOM B-275
19                                NEW ORLEANS, LOUISIANA 70130
                                  (504) 589-7779
20                                Cathy_Pepper@laed.uscourts.gov

21

22    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
23

24

25
```

*OFFICIAL TRANSCRIPT*

**I N D E X**

PAGE

MR. MICELI........................................    4

MR. RATLIFF......................................    7

MR. MICELI........................................    7

MR. RATLIFF......................................    8

THE COURT........................................    9

MR. RATLIFF......................................   10

THE COURT........................................   11

MR. RATLIFF......................................   11

MR. MICELI........................................   14

MR. RATLIFF......................................   15

THE COURT........................................   17

MR. MICELI........................................   17

THE COURT........................................   17

MR. MICELI........................................   17

THE COURT........................................   18

MR. MICELI........................................   18

THE COURT........................................   19

MR. RATLIFF......................................   19

MR. MICELI........................................   19

THE COURT........................................   20

*OFFICIAL TRANSCRIPT*

| | |
|---|---|
| 1 | **P-R-O-C-E-E-D-I-N-G-S** |
| 10:24:32 2 | WEDNESDAY, APRIL 22, 2020 |
| 10:24:32 3 | (VIA TELECONFERENCE) |
| 10:24:32 4 | |
| 10:31:24 5 | THE COURT:  Good morning, everyone. |
| 10:31:27 6 | VOICES:  Good morning, Judge. |
| 10:31:28 7 | THE COURT:  So, what's up? |
| 10:31:31 8 | MR. MICELI:  This is David Miceli.  We had asked to |
| 10:31:35 9 | have this called scheduled, and it's concerning, similar to the |
| 10:31:40 10 | last time we had expert depositions with appropriate |
| 10:31:44 11 | limitations, general causation depositions. |
| 10:31:47 12 | As you recall from the last go-around in expert |
| 10:31:50 13 | discovery, the PSC took the opinion or took the position that |
| 10:31:54 14 | if an expert was not offering new opinions, then there should |
| 10:31:59 15 | not be new depositions.  If there were new limited opinions or |
| 10:32:04 16 | reference material, that depositions should be limited to those |
| 10:32:08 17 | new opinions or materials.  You had previously said -- done |
| 10:32:12 18 | this by limiting the length of the deposition. |
| 10:32:16 19 | (Inaudible) during the last one and you had |
| 10:32:17 20 | mentioned at that time, I believe, in a conversation with |
| 10:32:21 21 | Mr. Lambert and Ms. Byard that Your Honor advised that in the |
| 10:32:27 22 | next and future rounds, limitations would be appropriate if |
| 10:32:31 23 | there are no new opinions. |
| 10:32:32 24 | In the present case, we have taken some of the |
| 10:32:35 25 | experts, plaintiffs' experts' depositions.  We have two more to |

*OFFICIAL TRANSCRIPT*

10:32:41 1   go, and these two new -- these two remaining experts,

10:32:46 2   Dr. Plunkett and Dr. Kessler, Dr. Plunkett only offers edits to

10:32:53 3   four paragraphs from her previous report; although, she does

10:32:57 4   add some information on 505(b)(2) plaintiff or defendants

10:33:02 5   because it's truly a general report.  Then we have Dr. Kessler,

10:33:05 6   who does not even offer a new report.  He just accepts and

10:33:09 7   adopts his prior reports.

10:33:10 8        We have come to -- we went to Sanofi after the

10:33:14 9   deposition of Dr. Ellen Feigal.  During that deposition, less

10:33:19 10   than 15 minutes in, when asked about new opinions, the expert

10:33:25 11   said she had had no new opinions, she had three new bases for

10:33:29 12   her opinions, and her three new reference materials and one new

10:33:35 13   drug that she researched.  She was asked about that drug.  She

10:33:39 14   was never asked about her three new references, and then the

10:33:43 15   deposition went on for nearly six hours.

10:33:46 16        So, we went to the defendants and we said, "Look,

10:33:50 17   we can't do this.  We had said the last time no new opinions

10:33:54 18   should mean no new depositions."

10:33:56 19        The next deposition up was Dr. Linda Bosserman.

10:34:00 20   In that case, we conferred with Jon Strongman, Mr. Ratliff's

10:34:05 21   partner, came to a reasonable agreement of four hours for her

10:34:09 22   deposition.  It's important to note that in her deposition, she

10:34:13 23   does offer new opinions because she's partially case specific.

10:34:17 24        She reviewed an additional over 2,000 pages of

10:34:22 25   documents, some clinical trial documents and did some

*OFFICIAL TRANSCRIPT*

10:34:29  1    predictive modeling for survival of cancer.  In that particular

10:34:33  2    instance, after agreeing to a four-hour limit, we were able to

10:34:37  3    meet that.

10:34:37  4          Now, in the present case, we have -- Dr. Plunkett

10:34:41  5    has been deposed on essentially the same report; in fact,

10:34:45  6    except for four minor edits on the exact same report, she has

10:34:51  7    been deposed for over 14 hours.  Dr. Kessler, who does not give

10:34:55  8    a new report in this case this time around, has been deposed

10:34:59  9    for over 13 hours.

10:35:01 10          Now, the Court has previously ordered an

10:35:04 11    additional two hours of deposition on a calculation that

10:35:09 12    Dr. Madigan had done for him, and in Dr. Madigan's deposition,

10:35:14 13    that examination on that topic lasted less than 30 minutes.

10:35:19 14          So, we feel that the two hours previously ordered

10:35:22 15    for Dr. Kessler on that calculation, taken with the fact that

10:35:28 16    he offers no new opinions, is a generous plenty for his

10:35:34 17    deposition.  Now --

10:35:34 18          THE COURT:  So, he hasn't been deposed since I ordered

10:35:37 19    the extra two hours, correct?

10:35:39 20          MR. MICELI:  No, because the *Thibodeaux* case was

10:35:42 21    dismissed on a motion, and we agreed not to go forward with it

10:35:45 22    but that that two hours would remain if it were incorporated

10:35:49 23    into a new report or, if it wasn't, then they would still get

10:35:52 24    that two hours.  We don't -- we didn't do a new report for

10:35:57 25    Dr. Kessler, and we don't argue with Sanofi that they get that

*OFFICIAL TRANSCRIPT*

10:36:01 1    two hours.

10:36:01 2               So, our position essentially is is that MDLs are

10:36:05 3    created to prevent repetitive and duplicative discovery and to

10:36:10 4    conserve resources.  That's right out of the order setting this

10:36:13 5    MDL up.

10:36:14 6               What we see when we have no new opinions or minor

10:36:18 7    edits with four paragraphs, that what Sanofi seeks is

10:36:24 8    duplicative and wasteful, and with a prior expert that offers

10:36:27 9    no new opinions as our reference point and then taking five and

10:36:30 10   a half hours to six hours to depose her, we thought it was

10:36:33 11   appropriate to come to the Court.

10:36:35 12              Then what we saw, what history taught us was, in

10:36:39 13   the Bosserman example, when we come to a reasonable agreement,

10:36:43 14   in that case it was four hours, Sanofi was fully capable of

10:36:49 15   completing its deposition (speaking simultaneously) --

10:36:51 16        THE COURT:  Let me hear from Sanofi.

10:36:57 17        MR. RATLIFF:  Your Honor, this is Harley Ratliff for

10:36:56 18   the court reporter.

10:36:57 19              I would like to address first (speaking

10:36:58 20   simultaneously) --

10:36:58 21        THE COURT:  First of all -- first of all -- first of

10:37:01 22   all, I don't even know what y'all are arguing about yet, okay?

10:37:05 23   What exactly are we arguing about?  What do you want to do with

10:37:09 24   these two witnesses?

10:37:11 25        MR. MICELI:  Well, if I can just say what our prayer

*OFFICIAL TRANSCRIPT*

10:37:15  1    for relief is because we've discussed it, we've offered it to

10:37:19  2    Sanofi -- pardon me, Mr. Ratliff.

10:37:21  3                 This is, for the court reporter, David Miceli.

10:37:24  4                 What I was going to say, Your Honor, is what we

10:37:26  5    propose is three hours for Dr. Plunkett because she only amends

10:37:30  6    or edits four paragraphs, and for Dr. Kessler two hours.

10:37:35  7                 By the same token, as I told Mr. Ratliff in our

10:37:39  8    meet and confers, that we don't ask for anything we're not

10:37:43  9    willing to accept in return, and so they had produced -- Sanofi

10:37:47 10    has produced two expert reports, a supplemental report for a

10:37:52 11    Dr. Wei, and we've said we can take his deposition in two

10:37:56 12    hours, and then they have Dr. Chang, an epidemiologist, whose

10:38:02 13    report is substantially longer than her previous one, and she

10:38:07 14    includes an additional greater than 600 additional documents

10:38:11 15    reviewed for this report that we've said we could do hers in

10:38:15 16    five hours, but in talking with Palmer before this call, we

10:38:21 17    could say we could do hers in four hours.

10:38:23 18                 So, three hours for Plunkett, two hours for

10:38:25 19    Kessler, two hours for Dr. Wei, and we would propose four hours

10:38:31 20    for Dr. Chang.

10:38:33 21                 THE COURT:  All right.  Let me hear from Harley.

10:38:35 22                 MR. RATLIFF:  Your Honor, I have to take this in --

10:38:38 23    there is a lot to unpack here, but when we started off the

10:38:41 24    second round of these expert depositions for the trial that's

10:38:45 25    upcoming, we reached an agreement with Dave and Palmer that we

*OFFICIAL TRANSCRIPT*

10:38:49 1   would not have arbitrary time limits, that none of these

10:38:53 2   depositions would need to take place in seven hours, and the

10:38:56 3   examiners on both sides for Sanofi and for the plaintiffs would

10:38:59 4   use their best professional judgment on how long they needed to

10:39:02 5   take.

10:39:03 6              We think that's still very appropriate, so if

10:39:06 7   Doctor -- if Mr. Miceli says he needs two hours with Dr. Wei,

10:39:11 8   but it ends up taking four hours because depositions are

10:39:14 9   dynamic, that's fine with us.  If they say they need five hours

10:39:19 10   with Dr. Chang but it takes three hours, all the better.

10:39:22 11              So, we tend to think that arbitrary time limits,

10:39:25 12   particularly with experts on both sides who are professional

10:39:28 13   experts and are good at running out the clock, are unnecessary

10:39:32 14   when we're dealing with experienced MDL practitioners who are

10:39:37 15   going to use their best judgment on how to get these

10:39:41 16   depositions done in the most efficient way possible.

10:39:43 17              In so far as the three depositions (speaking

10:39:45 18   simultaneously) --

10:39:45 19              THE COURT:  Hold on.  All right.

10:39:46 20              MR. RATLIFF:  -- one that has gone two and a half, one

10:39:49 21   has gone five, and one has gone four.

10:39:53 22              THE COURT:  All right.  Harley, stop.

10:39:53 23              I'm going to make two observations.  First of

10:39:55 24   all, I only wish that what you just said was true in this case

10:39:59 25   because it would have saved me countless of these phone calls

*OFFICIAL TRANSCRIPT*

10:40:02 1   having to referee deposition time limits, so that ship sailed a

10:40:07 2   long time ago.  If you're telling me you thought you had an

10:40:10 3   agreement, obviously you don't because you're on the phone

10:40:12 4   right now arguing about time limits.

10:40:14 5        MR. RATLIFF:  Your Honor, may -- I understand,

10:40:16 6   Your Honor.  May I address --

10:40:18 7        THE COURT:  Talk to me about the two depositions that

10:40:21 8   David just talked about.

10:40:24 9        MR. RATLIFF:  Absolutely, Your Honor.

10:40:25 10        So, I'll take the first one, which I think is the

10:40:27 11   more simpler of the two, which is Dr. Kessler.  We have the two

10:40:32 12   hours with him.  We don't have a deposition date set with him.

10:40:34 13   We don't know when we're going to get a deposition date from

10:40:37 14   him due to conflicts that he has.

10:40:41 15        So, what we had proposed to the other side is we

10:40:44 16   just wanted one additional hour because the reality is that

10:40:46 17   since he was last deposed, Your Honor, there has been

10:40:49 18   regulatory developments related to the Taxotere label, and

10:40:54 19   there has been new literature.

10:40:56 20        He's a general causation expert as it relates to

10:41:01 21   Taxotere and chemotherapy-induced alopecia, so we think one

10:41:06 22   additional hour is appropriate just to go through what he knows

10:41:09 23   about Ms. Kahn and what his opinions are related to Ms. Kahn.

10:41:14 24   So, it would just be three hours.  I don't even think we would

10:41:14 25   take those three hours.

*OFFICIAL TRANSCRIPT*

10:41:16  1        THE COURT:  All right.  You're going to have to figure

10:41:17  2   out how to do what you want to do with him in the two hours

10:41:22  3   that I already gave you.

10:41:23  4             Now, talk about the other the witness.

10:41:26  5        MR. RATLIFF:  Yes.  The issue with Dr. Plunkett is

10:41:28  6   this, Your Honor, and it is fairly substantial, is she has

10:41:31  7   previously told us that she is not giving a labeling opinion.

10:41:34  8   In her new report she does exactly that.

10:41:37  9             She talks about what triggers the threshold for

10:41:40 10   triggering a label change.  She talks about where the change

10:41:43 11   should go, where the warning should go, what section it should

10:41:46 12   go on.  She opines on the fact that Sanofi did not do that, and

10:41:51 13   she opines on the meaning of Sanofi's label.  So, that's one

10:41:55 14   issue.

10:41:56 15             The second issue, Your Honor, is although she has

10:41:59 16   said she is not a general causation expert -- she has

10:42:03 17   disclaimed that repeatedly despite what Mr. Miceli just said --

10:42:06 18   in her new report she said that she has reviewed the medical

10:42:10 19   literature, and the majority of the medical literature

10:42:14 20   concludes that Taxotere causes permanent alopecia.  Now, she

10:42:17 21   doesn't reference which medical literature she's talking about.

10:42:21 22   She cites to over a hundred piece of medical literature in her

10:42:21 23   report.

10:42:25 24             So, I need to know -- it's, essentially,

10:42:28 25   Your Honor, a causation opinion via medical literature, which

*OFFICIAL TRANSCRIPT*

10:42:32  1   is brand-new to us, and that is also incredibly important to

10:42:37  2   the overall litigation.

10:42:38  3            Now, Mr. Miceli and Mr. Lambert have told us

10:42:41  4   those are just minor semantic changes, and what we have offered

10:42:44  5   to them is, as we said, "Look, if they are minor semantic

10:42:47  6   changes, if they don't change her opinion, why don't you just

10:42:49  7   remove them from the report?"

10:42:51  8            It would be easy to do.  It's removing two

10:42:53  9   paragraphs, and then all we have to do is go in and take a

10:42:57 10   fairly rudimentary deposition.  They would be like an hour long

10:43:00 11   just to find out what she knows about Ms. Kahn.

10:43:02 12            But if she is giving a labeling opinion, which

10:43:05 13   she is most certainly doing in her report, and if she is giving

10:43:07 14   a causation opinion, which she is most certainly doing in her

10:43:11 15   new report, what I told Mr. Miceli as part of our negotiations,

10:43:14 16   they want five additional hours with Dr. Chang, who they have

10:43:18 17   already deposed before, then we'll do a clean trade.  I get

10:43:22 18   five hours with Dr. Plunkett.

10:43:23 19            I don't think I'm going to use five hours with

10:43:25 20   Dr. Plunkett, but if I'm going to self-limit myself here, then

10:43:28 21   I think dealing with the two fundamental issues in this

10:43:31 22   litigation of the label, what it means, where it should go,

10:43:35 23   what triggers a labeling change, and causation, when I don't

10:43:38 24   even know what medical literature she's referring to because

10:43:42 25   there is no citation to it, it's just a statement that the

*OFFICIAL TRANSCRIPT*

10:43:44  1    majority of articles, the medical literature includes Taxotere

10:43:48  2    causes it, then I need to go through.

10:43:50  3            Frankly, Your Honor, I don't want to really have

10:43:51  4    to do that, but I'm willing to have to go through the slog of

10:43:55  5    going through the medical literature talking about each one,

10:43:59  6    how she came to the conclusion that it caused -- that these

10:44:01  7    articles concluded that Taxotere causes this condition.  I have

10:44:05  8    deposed Dr. Plunkett before.  She is a very savvy witness, to

10:44:10  9    her credit, and it will be a kind of cumbersome deposition.

10:44:17 10            Those are two fundamental issues.  If what the

10:44:20 11    PSC is telling us, that these are not important changes, that

10:44:23 12    they are just semantics or are just cleaning up the report,

10:44:27 13    then we just ask them to remove it, and that solves the issue,

10:44:31 14    but they have been steadfast in not removing, which,

10:44:35 15    Your Honor, personally suggests to me that there is a tactical

10:44:35 16    reason these new additions have been made to Dr. Plunkett's

10:44:39 17    report.

10:44:40 18        THE COURT:  Hold on.  If I'm going to limit the

10:44:42 19    deposition beyond the five hours that you all have been talking

10:44:48 20    about with the other witness, there has to be some guarantee

10:44:51 21    that those issues are not going to be -- that she's not got

10:44:56 22    testify about those things.  It's either going to be removed

10:44:58 23    from the report or she's going to have to issue some sort of

10:45:01 24    binding stipulation that she's not going to testify about those

10:45:04 25    things --

*OFFICIAL TRANSCRIPT*

10:45:04  1          MR. MICELI:   (Speaking simultaneously) Your Honor --

10:45:05  2          THE COURT:   -- in her deposition, then issue a

10:45:07  3 supplemental report that removes these what she calls *minor*

10:45:10  4 *changes* to four paragraphs.

10:45:15  5          MR. RATLIFF:   I don't want to spend any more time with

10:45:15  6 Dr. Plunkett than I have to.   If that were the case, then I

10:45:23  7 could take this deposition probably in an hour.

10:45:23  8          MR. MICELI:   Your Honor, it's David Miceli for the

10:45:23  9 court reporter.

10:45:27 10          So that I can respond -- and I'm looking at the

10:45:29 11 trial transcript on my computer screen sitting in our office

10:45:33 12 doing this -- is that the Court or Dr. Plunkett was tendered in

10:45:37 13 the last trial as an expert in pharmacology, toxicology, and

10:45:43 14 risk management, which was exactly what was in her report the

10:45:47 15 last time.

10:45:47 16          The portions of the report that Mr. Ratliff is

10:45:52 17 referring to, a majority of it was in her prior reports.   She

10:45:56 18 is going to be offered only as a pharmacology and toxicology

10:46:00 19 expert again.   She looks to the label for issues of toxicology

10:46:06 20 and pharmacology, and obviously adverse events are evidence of

10:46:12 21 toxic events.   That's what she testified to.

10:46:14 22          She is not giving a labeling opinion.   She is not

10:46:17 23 offered at the last trial and will not be offered at the next

10:46:21 24 trial, nor does she offer either regulatory or causation

10:46:26 25 opinions in the current report, and there is the training of --

*OFFICIAL TRANSCRIPT*

10:46:33  1          THE COURT:  Is there a label in her current report?

10:46:35  2   Does she talk about the label and what should be in it in her

10:46:38  3   current report?

10:46:39  4          MR. RATLIFF:  Yes, she does, Your Honor.

10:46:42  5          MR. MICELI:  You see, that's where Mr. Ratliff and I

10:46:44  6   disagree.

10:46:44  7          MR. RATLIFF:  Your Honor, this is Hartley Ratliff for

10:46:47  8   the court reporter.

10:46:48  9              I'm happy to read the language to you of what it

10:46:50 10   says.

10:46:50 11          THE COURT:  Read it to me.  I want to hear it.

10:46:52 12          MR. RATLIFF:  She says, "Importantly, if a causal" --

10:46:55 13   this is new language.  "Importantly, if a causal association

10:46:59 14   exists, that level of evidence would meet the regulatory

10:47:03 15   standard for adding information into either the *Warnings and*

10:47:06 16   *Precautions* section of the label or the *Adverse Reactions*

10:47:11 17   sections of the label for human prescription drug product.

10:47:15 18   Yet, neither Sanofi nor sponsors of docetaxel 505(b)(2) NDAs

10:47:22 19   have ever added irreversible alopecia to the *Warnings and*

10:47:25 20   *Precautions* section of the U.S. labeling and it was not until

10:47:28 21   December 2015 that Sanofi added permanent or irreversible

10:47:33 22   alopecia to the *Adverse Reaction*s section of the label."

10:47:35 23              She then goes on in a separate paragraph, and she

10:47:39 24   talks about what was added to the label, which is cases of

10:47:43 25   permanent alopecia had been reported.  She states, "Most

                        ***OFFICIAL  TRANSCRIPT***

10:47:45 1    importantly, a review of the deposition testimony of some of

10:47:48 2    these experts reveals...that a statement such as 'cases of

10:47:52 3    permanent alopecia have been reported' is not a statement

10:47:55 4    attributing a causation to any of the drugs cited."

10:47:59 5           The other part, Your Honor, that gives us great

10:48:02 6    concern is she says, "The majority of the peer-reviewed,

10:48:06 7    published medical/scientific literature that attempt to

10:48:09 8    attribute a cause for permanent chemotherapy-induced alopecia

10:48:14 9    attribute the condition to docetaxel."  No citation, no list of

10:48:21 10   what articles she's considering or which articles she is

10:48:24 11   referring to as, quote, the majority that attribute the

10:48:26 12   condition to docetaxel.

10:48:28 13          Those statements, Your Honor, while they seem

10:48:32 14   small, open up a giant window for Dr. Plunkett to come into

10:48:36 15   trial and give regulatory and labeling opinion, because

10:48:40 16   Judge Milazzo has told us repeatedly that if it's in the four

10:48:45 17   corners of the report, absent a *Daubert* ruling on it, these

10:48:49 18   witnesses can come in and testify about it.

10:48:50 19          So, Your Honor, in perfect candor, what I am

10:48:54 20   concerned about --

10:48:55 21       THE COURT:  I know what you're concerned about.

10:48:58 22       MR. RATLIFF:  -- if Mr. Miceli thinks --

10:48:58 23       THE COURT:  I know what you're concerned about.

10:48:58 24       MR. RATLIFF:  -- Dr. Plunkett thinks should be in a

10:48:58 25   label, and then giving --

*OFFICIAL TRANSCRIPT*

10:49:00  1          THE COURT:  I heard you.  I've heard enough.  I've

10:49:02  2   heard enough.

10:49:04  3          I'm fully aware and familiar with Judge Milazzo's

10:49:08  4   practices when it comes to experts, what's in their reports,

10:49:11  5   and how she limits her testimony.

10:49:13  6          David, it's this simple:  If that language

10:49:15  7   remains in her report, then Harley gets his five hours with the

10:49:19  8   witness, period.

10:49:23  9          MR. MICELI:  Okay.  If it comes out of the report,

10:49:25 10   where do we go?  Basically, confirm what her previous opinions

10:49:30 11   were and whether she knows anything about --

10:49:34 12          THE COURT:  If the language the comes out of the

10:49:37 13   report, he gets one hour.  If it doesn't come out of the

10:49:40 14   report, he gets five.

10:49:45 15          Listen, if the language of the label comes out

10:49:47 16   but not the language of the general causation, then he gets

10:49:49 17   three and vice versa.

10:49:53 18          I'm just telling y'all so we don't have another

10:49:55 19   problem.  It either comes out of the report and he gets to

10:49:58 20   depose her on those additions or it stays in the report and he

10:50:03 21   gets to depose her on what he just read to me and any related

10:50:09 22   new language, or it comes out of the report and he gets his

10:50:11 23   hour.

10:50:15 24          MR. MICELI:  Again, David Miceli for the court

10:50:16 25   reporter.

                                    *OFFICIAL TRANSCRIPT*

10:50:16 1          What I would suggest is that because Mr. Ratliff

10:50:21 2   just read those paragraphs -- Harley, if you will, highlight

10:50:24 3   those and email those to me -- I will determine whether we can

10:50:30 4   pull them out in their entirety.

10:50:32 5          The concern that I have is that adverse events

10:50:37 6   demonstrate the toxicity, so there is a certain amount of

10:50:41 7   crossover between toxicity and adverse events that are in the

10:50:45 8   label.

10:50:46 9          With regard to the first paragraph you read from,

10:50:48 10  I'm certain that we'll be pulling some of that out, but I think

10:50:53 11  what we can do is come to an agreement between one and five.

10:50:57 12  If we don't pull everything out -- if we pull everything out,

10:51:00 13  it will be one.

10:51:01 14          MR. RATLIFF:  That's right.

10:51:04 15          THE COURT:  You all ought to be able to come to an

10:51:07 16  agreement, and I understand Sanofi's concern that as long as

10:51:11 17  any suggestion of the expansion of the scope of her testimony

10:51:15 18  is supportable by the language in her report, then their

10:51:19 19  concern is that she was going to want to get on the witness

10:51:21 20  stand and to testify about it as an expert despite the fact

10:51:24 21  that you're telling me on the phone that's not your intention,

10:51:27 22  and that has doubt to be eliminated, and if it's not

10:51:30 23  eliminated, then they get to do the deposition.

10:51:36 24          MR. MICELI:  Your Honor, I hear precisely what you're

10:51:38 25  saying.  We will work with Mr. Ratliff to get the offensive to

**OFFICIAL TRANSCRIPT**

10:51:44 1   him language out, limited it to what we discussed on the phone.

10:51:47 2   I don't want to see half the report highlighted

10:51:51 3   in an hour, but we will work with Mr. Ratliff on the language

10:51:54 4   that he discussed in this -- on this call and removing it and

10:51:59 5   limiting the deposition to one hour or somewhere between.

10:52:05 6   If we can't come to that agreement, we will get a

10:52:08 7   quick call, but I think the agreement to disagree that

10:52:14 8   Mr. Ratliff and I have had has been professional, and we're not

10:52:16 9   coming in and screaming.  We'll be able to try to work this

10:52:19 10  out.  If not, we'll just have to say can we have a ball or a

10:52:23 11  strike here with Your Honor.

10:52:24 12      THE COURT:  Look, y'all have spent 15 minutes on the

10:52:26 13  phone with me already.  There is not much more I can tell you,

10:52:29 14  okay?  You all ought to be able to work this out between

10:52:33 15  yourselves without another call.

10:52:35 16      MR. RATLIFF:  Your Honor, one last thing just for

10:52:38 17  housekeeping purposes.  Mr. Miceli had suggested five hours

10:52:41 18  with our epidemiological expert, Dr. Chang, which, again, that

10:52:48 19  gets back to the five hours for Dr. Plunkett.  We're fine with

10:52:51 20  that.

10:52:52 21  The one thing, Dave, and maybe you misspoke, you

10:52:55 22  had previously in writing told us you needed two hours with

10:52:57 23  Dr. Wei.  I think I heard you say now you're asking for four

10:53:00 24  hours.  I assume that was just a mistake.  It's just two hours.

10:53:04 25      MR. MICELI:  No, that was obviously -- yeah, I'm sorry.

**OFFICIAL TRANSCRIPT**

10:53:06  1    I apologize.  Two hours with Dr. Wei.  What I did was I had

10:53:09  2    limited Dr. Chang from five back to four.  So, that's where we

10:53:17  3    were.

10:53:18  4            THE COURT:  All right.  I hope I don't have to hear

10:53:21  5    from you all again on these issues.

10:53:25  6            MR. MICELI:  Thank you, Your Honor.

10:53:26  7            MR. RATLIFF:  Thank you.

         8            (WHEREUPON, at 10:53 a.m., the proceedings were

         9    concluded.)

        10                          *    *    *

        11

        12                     REPORTER'S CERTIFICATE

        13

        14        I, Cathy Pepper, Certified Realtime Reporter, Registered
            Merit Reporter, Certified Court Reporter in and for the State
            of Louisiana, Official Court Reporter for the United States
        15  District Court, Eastern District of Louisiana, do hereby
            certify that the foregoing is a true and correct transcript to
        16  the best of my ability and understanding from the record of the
            proceedings in the above-entitled and numbered matter.

        17

        18                              *s/Cathy Pepper*
                                        Cathy Pepper, CRR, RMR, CCR
        19                              Certified Realtime Reporter
                                        Registered Merit Reporter
        20                              Official Court Reporter
                                        United States District Court
        21                              Cathy_Pepper@laed.uscourts.gov

        22

        23

        24

        25

                            **OFFICIAL  TRANSCRIPT**