```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

***************************************************************
IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 16-MD-2740
                         Section "H"(5)
                         New Orleans, Louisiana
                         May 18, 2020

THIS DOCUMENT RELATES TO ALL CASES
***************************************************************


       TRANSCRIPT OF SHOW CAUSE HEARING VIA TELECONFERENCE
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                  UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFFS:


                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    MATTHEW PALMER LAMBERT
                    CLAIRE E. BERG
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    CHRISTOPHER ELLIOTT (telephonically)
                    BACHUS & SCHANKER
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202
```

FOR SANOFI S.A.:

                    *KELLY E. BRILLEAUX*
                    IRWIN FRITCHIE URQUHART & MOORE
                    400 POYDRAS STREET
                    SUITE 2700
                    NEW ORLEANS, LA 70130

FOR SANDOZ, A NOVARTIS DIVISION:

                    *NICHOLAS INSOGNA*
                    GREENBERG TRAURIG
                    3333 PIEDMONT ROAD NE
                    SUITE 2500
                    ATLANTA, GA 30305

FOR THE DEFENDANT MCKESSON CORPORATION D/B/A MCKESSON
PACKAGING SERVICE:

                    *JULIE A. CALLSEN*
                    TUCKER ELLIS
                    233 SOUTH WACKER DRIVE
                    SUITE 6950
                    CHICAGO, IL 60606

ALSO PRESENT TELEPHONICALLY:

                    Tom Smith
                    Leslie LaMacchia
                    Peter Goss
                    Andrew Geiger
                    Vance Montgomery
                    Candice McNabb
                    Ruth Rizkalla
                    David Bonnin
                    Jason Fraxedas
                    Nicholas Clevenger
                    Ryan Hodge
                    Ben Black
                    Martin Schmidt
                    John Cowart
                    Boyd Smith
                    Travis Walker
                    Steven Davis

ALSO PRESENT TELEPHONICALLY:

                         Clint Casperon
                         Ryan Browne
                         Jennifer Domer
                         Sean McCarty
                         Jennifer Nolte
                         Jade Ruiz
                         Andrew Kagan
                         Jessica Agnelly
                         Jessica Perez Reynolds
                         Trevor Rockstad
                         Taylor Hardenstein
                         Rick Root
                         Cara Wall
                         Debra Humphrey
                         Jason Long


Official Court Reporter:      Nichelle N. Drake, RPR, CRR
                              500 Poydras Street, B-275
                              New Orleans, Louisiana 70130
                              (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.

1          **P R O C E E D I N G S**

2                    (Call to order of the court.)

3          THE COURT:  We have three plaintiffs -- and I'm going

4    to read those names real quickly -- Karen Dagostaro, Kimberly

5    Francisco, and Tamra Stickland, and this list will be

6    provided to the court reporter and be part of the record.

7          And what I understand from these is that counsel does

8    not have a defense, or this is the --

9          MS. BARRIOS:  No contact, Your Honor.

10         THE COURT:  No contact.  Okay.  I want to make sure.

11         The Court finds specifically that counsel has made

12   reasonable attempts in these cases to contact their clients

13   to bring fact sheets in compliance.  The client has failed to

14   maintain contact or failed to perform their obligations.

15   Accordingly, these cases are dismissed.

16         Then I have another list of six plaintiffs.  The

17   Court gave these persons an opportunity to cure the

18   deficiencies, and that has not taken place.  Accordingly,

19   these six cases -- and I'm just going to read the names of

20   the plaintiffs very quickly -- Christina Demetro, Ruth

21   Esterly, Sandra Leduke, Paulette Rose, Marie Sapini, and

22   Monique Webber, those cases are dismissed with prejudice.

23         Are we ready to proceed with the call docket?

24         MS. BARRIOS:  Yes, Your Honor.

25         MR. INSOGNA:  We are, Your Honor.

1          THE COURT:  Okay.  Let's proceed.

2          MR. INSOGNA:  Your Honor, the first case that we need

3    to address today is Anniea Hassan.  This case was originally

4    on the list for a lack of proof of injury photo.  Proof of

5    injury photos have since been uploaded.  They are so dark

6    that you really can't see the plaintiff at all.  We're just

7    asking for a better quality scan of those photos within 30

8    days.

9          THE COURT:  Okay.  Mr. Elliott, any objection?

10   Mr. Elliott?

11         Can you all hear me?

12         MS. BARRIOS:  Yes, we can.

13         MR. INSOGNA:  Yes, Your Honor.

14         THE COURT:  All right.  Mr. Elliott, are you on the

15   line?  Is he still on mute?

16         MS. BARRIOS:  He was.

17         THE COURT:  I know I heard him a few moments ago.

18   Can somebody please just text him?

19         MS. BARRIOS:  Doing that right now, Your Honor.

20         THE COURT:  Thank you.

21         Ms. Barrios, have you heard from Mr. Elliott?

22         MS. BARRIOS:  Not yet.

23         He got disconnected and is calling in right now.

24         THE COURT:  Okay.  Thank you.

25         MR. ELLIOTT:  This is Chris Elliott.  Something's

1    wrong with my office phone, so I'm calling from my cell

2    phone.  When I was entering the meeting ID from my office

3    phone, it said the meeting ID was inaccurate, so anyway.

4              THE COURT:  Here we are.

5              MR. ELLIOTT:  I don't know what --

6              THE COURT:  Well, we are on No. 67, Anniea Hassan.

7              MR. ELLIOTT:  Okay.  So that --

8              THE COURT:  Did you hear?

9              MR. ELLIOTT:  I did.  I looked at the -- I heard -- I

10   heard the deficiency, what was argued.  I looked.  We have

11   good present day photos.  We actually went to her home, took

12   pictures.  There's a sign with it.  You can see that the hair

13   loss -- the sign is dated --

14             THE COURT:  Wait.  Mr. Elliott.  Mr. Elliott.  Let me

15   cut you off.  I think what the defendants have requested is

16   that you resend those photographs to give a better scan in

17   30 days.  Is there any objection to that?

18             MR. ELLIOTT:  I can insist that the only photo that

19   they're having issue with is the before photo.  But we can

20   try to send something of better quality.  But I can see hair

21   in that picture.  It's not that bad, but I'm happy to see if

22   we can get something better quality for the before photo.

23   But the present days are all, you know, perfect.  There's no

24   issues --

25             THE COURT:  I don't think anybody's talking about

1    present day.  It was the before photo, and he said it was

2    just the scan, I think, was poor.  And so he requested that

3    you rescan it and send it within 30 days, and that's going to

4    be the order of the Court.

5         Okay.  Let's go to the next one.

6         MR. INSOGNA:  Thank you, Your Honor.

7         The next case is Ernia Hodges.  This is no before

8    photos submitted.

9         THE COURT:  All right.  Mr. Elliott?

10        MR. ELLIOTT:  I don't believe that -- I think this is

11   cured, the original noncompliance with CMO 12 and PFS not

12   substantially complete.  We uploaded CMO 12 proof

13   January 2020.  Hospira is the identified manufacturer, and we

14   filed an amended Plaintiff Fact Sheet April 28, 2020.  And

15   upon my review of the file --

16        THE COURT:  Mr. Elliott, what he's saying is, there

17   is no before photo.

18        MR. ELLIOTT:  Right.  But I think they're changing

19   the -- they're changing the deficiency on the day of the

20   hearing, Your Honor.

21        THE COURT:  Okay.

22        MR. ELLIOTT:  The deficiency was PFS not

23   substantially complete.

24        And let me -- give me a second because I believe this

25   photo is in there.

1          MR. INSOGNA:  And, Your Honor, the reason it was

2     identified as not substantially complete is for lack of

3     before photos.  That deficiency was identified.  And I'm

4     looking at Centrality.  There are no before photos currently.

5     They're all identified as present.

6          THE COURT:  Okay.

7          MR. ELLIOTT:  All right.  Well, that's not how the

8     deficiency was presented to me.  So I guess we'll work on

9     getting the before photo.  I'm looking at where you're

10    looking at too.  Everything else is in the file.  You're

11    right.  I don't -- all I see is present day here.

12         THE COURT:  Okay.  I'm going to give you 30 days to

13    get a before photo.

14         MR. INSOGNA:  Thank you, Your Honor.

15         The next case is Jennifer Massey.  There's no proof

16    of injury documentation.

17         MR. ELLIOTT:  We have an issue with her address.  We

18    sent someone out.  We sent letters to her home.  This case

19    was filed the end of 2019, so it's a relatively new filing.

20    We found out that she moved to Oklahoma City.  We would like

21    more time to send someone to her new identified address.

22    We've been trying to contact her through letters and phone

23    and e-mail, you know, every form of communication possible,

24    even sending someone to the location she gave us when she

25    signed up with us, but according to my notes here, she moved,

```
 1   so...

 2          THE COURT:  Okay.  I'm going to give you 30 days.  I

 3   do see that she was filed at the end of last year, but

 4   30 days should give you an opportunity to find your client,

 5   and if not, we'll address it at the next hearing.

 6          MR. ELLIOTT:  Thank you.

 7          MR. INSOGNA:  And, Your Honor, just to clarify the

 8   ruling, at the end of the 30 days, should we update the Court

 9   on the status?

10          THE COURT:  Yes.  Because if he -- if the client is

11   lost, we may find ourselves with the declaration sheet that I

12   can't contact my client.  There's an obligation that clients

13   have as well, but it was filed at the end of last year, and

14   the country -- you know, captain obvious again -- the country

15   has been in a state of flux since the end of February and so

16   -- but I want to give him an opportunity to find his client

17   and then update.  And it may be that she's lost and that's a

18   different matter, but I am going to give him an opportunity

19   to find her.

20          MR. INSOGNA:  Understood, Your Honor.  Thank you.

21          The next case is Lynda Smith, and the remaining

22   deficiency is that there are no before photos.

23          MR. ELLIOTT:  I think there may be some confusion on

24   what she -- what the objections are here because when we

25   received them, the compliance was PFS not complete, no
```

1   authorizations, no CMO 12 and no PTO 71A.  You know, we

2   filed -- this was the original deficiency we got.

3          We filed the PTO 71A on 5/7, May 7th, of this year.

4   We filed the Plaintiff Fact Sheet on March 3rd.  We filed --

5   we're still trying to get the CMO 12 proof mailed and

6   diligent fact account.  The before photos, I don't see

7   that as --

8          THE COURT:  Let me ask you --

9          MR. ELLIOTT:  -- being identified, so...

10         THE COURT:  I want to ask a question because we

11  get -- I'm seeing noncompliance categories and PFS not

12  substantially complete.  Do the plaintiffs' attorneys get

13  more information than that, or is that what they're provided?

14         MR. INSOGNA:  Your Honor, they get more information

15  in two ways:  The deficiency notice that's issued through MDL

16  Centrality identifies what's not substantially complete,

17  whether it's a lack of photos or declaration or

18  authorization, the things that make it not substantially

19  complete under PTO 22A.  Also, when we provide the list, the

20  initial list to Ms. Barrios' office, it has a description of

21  what is not substantially complete with other Plaintiff Fact

22  Sheets.

23         THE COURT:  Okay.  Mr. Elliott --

24         MR. ELLIOTT:  That's not how --

25         THE COURT:  -- are you not getting their lists?  Have

1    you received it?

2          MR. ELLIOTT:  So how I received it, exactly how I

3    said, it says PFS not substantially complete, and what we

4    believe that to mean was that -- because we had to file a

5    Plaintiff Fact Sheet in March, so we did that.  And then they

6    were specific about authorizations, they were specific about

7    CMO 12A, they were specific about PTO 71A, but nothing

8    specific to no before photos.  That wasn't the original way I

9    received the noncompliance, and, you know, if we could get a

10   little bit more detail, I mean, that would be --

11         THE COURT:  Let me ask this question:  Where do you

12   get your lists for noncompliance?  From whom?

13         MR. ELLIOTT:  Well, those -- we get them from liaison

14   counsel.  That's how they're sent to us.  I believe.  Is that

15   right?

16         THE COURT:  Well, I don't know.  That's what I'm

17   asking you.

18         Ms. Berg?

19         MR. ELLIOTT:  I'm pretty sure --

20         MS. BERG:  Your Honor, we --

21         MR. ELLIOTT:  I'm 100 percent we get them from

22   plaintiffs' liaison counsel, not directly from them.

23         MS. BERG:  That's right.  I believe they have the

24   description that Nick is describing, a more specific

25   description to search when liaison counsel sends out those

1   deficiencies.

2       THE COURT:  I want to drill down on this because if

3   what you receive is just something that you cannot narrow

4   through it's one thing, but if you are told there are no

5   before photos, we need to be prepared to discuss it.

6       MR. ELLIOTT:  We do actually get -- Your Honor, we do

7   get a noncompliance, and if it's before photos, there are

8   some on this list today that that was the deficiency that we

9   were notified about and I'm prepared to argue these, but

10  these others that we get, it will say PFS not substantially

11  complete and then, you know, we do our best to get them --

12                      (Phone ringing.)

13      THE COURT:  This is what I want.  Ms. Barrios, I want

14  you to send me the list that you forwarded to Bachus &

15  Schanker so that I can see what actually --

16      MS. BARRIOS:  I would be happy to, Your Honor.  It's

17  my understanding that the lists that originally come from the

18  defendants, the original deficiency notice does have details.

19  When they send the second list, it might not have details,

20  but we carry over what was originally declared deficient by

21  the defendant.  So every plaintiff gets everything in one

22  excel sheet and we'll send it over to you.

23      Kate, would you mind sending it to Sam right now?

24      THE COURT:  Thank you.

25      Now, let's talk about Ms. Smith.  I'm understanding

1  that the deficiency is no before photos.  Do you have the

2  before photos, Mr. Elliott?

3       MR. ELLIOTT:  Let's see.  I'm in Ms. Lynda Smith's

4  file right now.  I see everything in the file that would make

5  it substantially complete, but, you're right, but a before

6  photo.  We have all present day, but no before.  That is

7  correct.  Everything else is in there.

8       THE COURT:  All right.  I'll give you 30 days to get

9  a before photo.

10      MR. INSOGNA:  The next case, Your Honor, is Patricia

11 Thomas.  In this case, we do not have any proof of injury

12 documentation, no photos, and we're also missing a health

13 insurance, Workers' Compensation and disability

14 authorizations, and the PTO 71 certification.

15      THE COURT:  Mr. Elliott?

16      MR. ELLIOTT:  Everything -- well, not everything.  We

17 did file a Plaintiff Fact Sheet back in February.  However,

18 this is another address issue.  We sent a notary to the

19 address on file, and, unfortunately, we have not been able to

20 locate Ms. Thomas.  And so that's -- we just ask for an

21 additional bit of time, I guess, to see if we can confirm a

22 better address.

23      Before, you know, February she was cooperative and in

24 communication with us.  I don't know if it has something to

25 do with her current situation or what, but we need a new

1    address for Ms. Thomas.

2         THE COURT:  So she's not -- do you know that she's

3    moved, or do you just -- nobody's answering?

4         MR. ELLIOTT:  Well, yes.  I'm sorry.  My notes say

5    that we have a new address, and I'd like an opportunity to

6    send boots on the ground to the new address.

7         THE COURT:  All right.  I'm going to grant you

8    30 days.

9         MR. INSOGNA:  Your Honor, the next case I have is

10   Eveline Armstrong, and I have a note that the plaintiffs

11   intended to dismiss a duplicate case.  I'm not clear whether

12   this is the case to be dismissed or another.  There's

13   no Plaintiff Fact Sheet submitted for this case, Your Honor.

14        THE COURT:  Okay.  None at all?

15        MR. INSOGNA:  Correct.

16        THE COURT:  Okay.  Thank you.

17        MR. ELLIOTT:  Let's see.  This is a dual

18   representation case.  The firm that has this case is Atkins &

19   Markoff, Docket No. 17-14198.  They filed their case back in

20   2017.  I think we sent a request to dismiss this one without

21   prejudice and have this other case continue with

22   Mr. Markoff's firm, but we have not heard back.

23        THE COURT:  Why would he dismiss without prejudice?

24        MS. BRILLEAUX:  This is Kelly Brilleaux for Sanofi.

25        Mr. Elliott, you're right.  You did send us a request

1   to dismiss with prejudice, not without, and we approved that

2   back on May 6th.

3           MR. ELLIOTT:  Okay.

4           THE COURT:  So this case is dismissed.

5           MR. ELLIOTT:  So the ball is in our court to dismiss

6   at this point, right?  Because my notes here say that we did

7   not get a response on that.  Maybe we're waiting for -- this

8   is a 505 and Sanofi.  It's probably that not all defendants

9   gave us permission at this point.

10          MS. CALLSEN:  You have our permission.

11          THE COURT:  All right.  This matter is dismissed with

12  prejudice.  Case 17-14198 remains.

13          MR. INSOGNA:  Thank you, Your Honor.

14          And then we can skip Karen Dagostaro and move to

15  Jacqueline Dickens.  There is no Plaintiff Fact Sheet

16  submitted.

17          MR. ELLIOTT:  What case are we on?

18          MR. INSOGNA:  Jacqueline Dickens.

19          MR. ELLIOTT:  Her cancer came back.  My notes say

20  she's been in and out of the hospital, and we would just like

21  more time to gain her compliance.  You know, I don't know if

22  we're going to get it, what their situation is, but we're

23  going to try.

24          THE COURT:  You filed the -- have you -- and I don't

25  want to be insensitive to somebody whose cancer has returned,

1    and I want to give you an opportunity.  But there's no fact

2    sheet at all?  Have you met with her?  Has anybody talked to

3    her?

4         MR. ELLIOTT:  Let me pull that up, Your Honor, as I

5    have this here.  She is in communication with us.  We talked

6    to her on May 9th.  She called to see when we might be able

7    to get someone to her home.  My notes show that we were able

8    to reschedule with her.  She let us know her cancer came

9    back.  She's been getting IV transfusions for the past month.

10   She's taking chemo again.  So it looks like we have confirmed

11   an appointment with her, and we just ask for additional time

12   to get the documents back.

13        THE COURT:  I'll grant you 30 days because it was

14   filed end of last year.

15        MR. INSOGNA:  Thank you, Your Honor.

16        The next case is Lauren Eisiliones, also no Plaintiff

17   Fact Sheet submitted.

18        MR. ELLIOTT:  She passed away.  We sent someone to

19   her home.  A neighbor said that she passed away a few months

20   ago, and we're currently looking for next of kin to see if

21   they wish to pursue a right of survivorship claim.

22        THE COURT:  Let's pass this one and just have it --

23   keep it on the list for next month, but you all need to find

24   the next of kin.  I'm not going to let her just hang out

25   here.

1          MR. INSOGNA:  Okay.  Your Honor, the next case is

2     Tylene Finney.  This case was on for failure to submit any

3     Plaintiff Fact Sheet.  A Plaintiff Fact Sheet has been

4     submitted.  At this point, we're just missing authorizations

5     and the PTO 71A certification.  And we're just asking that

6     those be submitted within the next 30 days.

7          THE COURT:  Okay.

8          MR. ELLIOTT:  Your Honor, the original -- the

9     original notification to my office was no PFS.  We did cure

10    that.  We filed the signed verification.  I show all four

11    documents are in here.  If they wish to argue that PTO 71A is

12    deficient or, you know, these other deficiencies, then they

13    need to have brought that to my attention before today's

14    hearing.  And I think bringing it right now, I mean, the

15    proper method would be to go through the actual show cause --

16         THE COURT:  Mr. Elliott -- Mr. Elliott, can you just

17    get that signed within 30 days.  That's all he's asking.

18         MR. ELLIOTT:  Well, he -- get what, the 71A?  What

19    else was it?

20         MR. INSOGNA:  Authorizations and PTO 71A.

21         MR. ELLIOTT:  Which authorization?

22         MR. INSOGNA:  I'm showing that we do not have any

23    authorizations.

24         MR. ELLIOTT:  Your Honor, I mean, I'm happy to work

25    with them, and that's fine, you know, but just coming up with

1   a new deficiency on the day of court, it's just -- I don't

2   think it's really fair to my client, but we do have -- you're

3   right.

4        I'm looking in the file.  We do need a 71A statement

5   from her.  I will try to get those as quickly as possible.

6   For today's purposes, I mean, my argument is that we cured

7   the deficiency by uploading the Plaintiff Fact Sheet, and

8   that's what was told to me before I came to court today.

9        THE COURT:  All right.  This is what I've heard.

10  This is what I've heard from defense counsel, that the

11  original deficiency was that there was no Plaintiff Fact

12  Sheet and that that has been filed; however, the

13  authorizations and the 71A is not there.  He's asking that

14  you get it done in 30 days.

15       I have to tell you, Mr. Elliott, that doesn't seem

16  like an unreasonable request.  I know that's not what was

17  specifically on the -- I'm not hearing him ask that this case

18  be dismissed or anything else.  He's just asking that you get

19  it done in 30 days.  I don't think that's an unreasonable

20  request.

21       MR. ELLIOTT:  No, I don't --

22       THE COURT:  My guess is that for some reason,

23  legitimate reason, that you cannot get it done in 30 days, I

24  will hear you.  It will be on next month's list, but, you

25  know, I have to -- we got to get through this and saying,

1   yes, you complied, but these two things are missing, can you

2   get it for the next 30 days, does not sound unreasonable.

3   Frankly, it sounds --

4           MR. ELLIOTT:  Your Honor, I don't disagree --

5           THE COURT:  Well, then good.  Do it.

6           MR. ELLIOTT:  We'll try to get it done.

7           THE COURT:  Then do it.  Thank you.

8           Let's go to the next one.

9           MR. INSOGNA:  Thank you, Your Honor.

10          The next two cases, Arlene Lupo and Diane McDonald,

11  have been cured.

12          THE COURT:  Okay.  Thank you.

13          MR. INSOGNA:  We move to Karen Merritt, and that's no

14  PFS submitted.

15          THE COURT:  Mr. Elliott?

16          MR. ELLIOTT:  She's another one.  She's another one,

17  Your Honor, we confirmed she's been in and out of the

18  hospital.  We'd like additional time to get her documents.

19  And she was filed late last year, so she's a new file.

20          THE COURT:  Okay.  Court will grant 30 days.

21          MR. INSOGNA:  Thank you, Your Honor.

22          The next case is Amy Murray, also no Plaintiff Fact

23  Sheet submitted.

24          MR. ELLIOTT:  Murray, again, another -- we sent

25  someone out to the original address.  We sent letters.  We

1   did confirm a new address just recently.  We just need more

2   time to get back out to her new address and get the

3   documents.

4          THE COURT:  I grant 30 days.

5          Why are these people moving, but okay.

6          MR. INSOGNA:  Your Honor, the next case is Betty

7   Myers, also no Plaintiff Fact Sheet submitted.

8          MR. ELLIOTT:  Again, she's been cooperative with us.

9   We have an appointment this week to go get her Plaintiff Fact

10  Sheet.  She's been ill, in and out of the hospital, doing

11  therapy, so we ask for additional time with her as well.

12         THE COURT:  I'll grant 30 days to cure.

13                    (Screeching noise.)

14         Are you getting the same whatever that was?

15         THE COURT:  Ms. -- everybody please put your phone or

16  whatever on mute.  That might help.

17         Mr. Insogna?

18         MR. INSOGNA:  Yes, Your Honor, also no Plaintiff Fact

19  Sheet submitted.

20         MR. ELLIOTT:  Again -- well, this is a plaintiff that

21  has moved.  We confirmed her new address, and we'd like time

22  this month to go to the new home and see if we can gain her

23  compliance.  This was a relatively new filing at the end of

24  2019.

25         THE COURT:  I'll grant 30 days.

```
 1                     (Screeching noise.)

 2          Can you all hear me?

 3          MR. ELLIOTT:  I can hear you, Your Honor.

 4          THE COURT:  Now I can't hear you because I took this

 5   off.

 6          MR. INSOGNA:  I can hear you.

 7          THE COURT:  You can hear me?

 8          MR. INSOGNA:  I can hear you.

 9          THE COURT:  Mr. Insogna, would you say something,

10   please?

11          MR. INSOGNA:  Can you hear me, Your Honor?

12          THE COURT:  I can't hear you.

13          Okay.  Here we go.

14          You know, we got a lot of people on this call and

15   perhaps -- I didn't realize that there were 20 people

16   participating in one law firm.  Perhaps we can get some of

17   these people off.  That might help.

18          Let's -- let's start again.

19          THE CASE MANAGER:  This is Erin.  I can go in and

20   mute all those people.

21          THE COURT:  We will try to reboot this.  I'm going to

22   hang up.  Everybody just get right back in.  Thank you.

23          (Teleconference disconnected and reconnected.)

24          THE COURT:  Mr. Elliott?

25          MS. BARRIOS:  Can you please get Chris Elliott on the
```

1    phone?

2         THE COURT:  All right.  Mr. Elliott, we were on, I

3    believe, Garla.

4         MR. INSOGNA:  This case is another one where a

5    Plaintiff Fact Sheet has been submitted to cure deficiency.

6    We're missing the PTO 71 submission and before photo.  We ask

7    those be provided in 30 days.

8         THE COURT:  Okay.  Mr. Elliott?

9         MR. ELLIOTT:  Can I clarify?  Can I clarify?  We

10   know -- is it 30 days, or it's going on the next show cause

11   if we get Ms. Garla compliant in 30 days, or it's just going

12   to be dismissed after 30 days?  I'm not quite clear on

13   that --

14        THE COURT:  I don't think it's going to be dismissed

15   after 30 days.  He's asking you to get it done in 30 days,

16   and for some reason, it will be on the call list because I

17   understand that -- okay.  Let me see -- okay.  All right.

18   Thank you.

19        I'm looking at the deficiency notice.  Sam's bringing

20   it to me.  And I cannot go through it now, but I'm going to

21   drill down into all of that so I understand what people have

22   been informed.

23        Well, I think the deficiency notice says there was no

24   Plaintiff Fact Sheet.  What I'm hearing now is, there is,

25   indeed, a Plaintiff Fact Sheet, but there's additional

1   information that needs to be provided.  And we're going to

2   give you 30 days to do that.  If for some reason -- this is

3   not one that's going to go automatically into a dismissal,

4   however, because it's just not.  But get her to sign this and

5   get before photos in 30 days.

6             MR. ELLIOTT:  Okay.  No problem.

7             THE COURT:  And just because it's not being dismissed

8   doesn't mean you need to ignore it.

9             MR. ELLIOTT:  We won't, Your Honor.

10            THE COURT:  Okay.  Let's go to the next one.

11            MR. ELLIOTT:  Thank you, Your Honor.

12            The next case is Christian Sullivan.  This is no

13  Plaintiff Fact Sheet submitted.

14            THE COURT:  Wait.  I have that one off the list.

15            MR. INSOGNA:  Maybe that's the one I was missing

16  because my number was one off.

17            THE COURT:  How do I lower my microphone?

18            Okay.  I think I lowered it.  Thank you.

19            MR. INSOGNA:  And, Your Honor, I see Ms. Brilleaux

20  nodding that this one is off the list, so I think we can skip

21  it and move to Lillie Thrower which is no Plaintiff Fact

22  Sheet submitted.

23            MR. ELLIOTT:  We learned that the plaintiff passed

24  away.  We're working with the sister now who plans to open up

25  an estate so we can pursue a right of survivorship.  So we

1    need more time.

2         THE COURT:  All right.  Have they opened the estate?

3         MR. ELLIOTT:  No.  My notes do not reflect she's done

4    that yet, so, you know, we have to get her with an attorney

5    to help her get that done.

6         THE COURT:  All right.  I'm going to want a report on

7    progress within 30 days.  I understand some law offices are

8    not open and it may be more problematic, but I want to hear

9    progress being made in 30 days.

10         All right.  Let's go to the next one.

11         MR. INSOGNA:  Thank you, Your Honor.

12         Jeannie Vargas, no Plaintiff Fact Sheet submitted.

13         MR. ELLIOTT:  Client says she's quarantined herself

14    due to COVID.  She wouldn't allow anyone to come to her home,

15    and she doesn't leave her home to go mail things.  That's the

16    note that I have.

17         Actually, unfortunately, I do have several clients

18    like that, but I guess we just want more time with her.  She

19    --

20         THE COURT:  Have you sent her the Plaintiff Fact

21    Sheet?

22         MR. ELLIOTT:  Oh, yeah.  Absolutely.  Yeah.  No

23    question about that.  You know, we like to get someone out to

24    the home to help get things -- you know, a lot of times

25    they're not too good at getting us back in the mail what we

1    ask them to, so that's the main part of it.  And so -- and

2    she's quarantined herself due to -- can't get to the post

3    office and things, and so --

4          THE COURT:  She can't mail it at her house?  If she

5    goes to get her mail, she should be able to put this in the

6    same receptacle to get picked up.

7          MR. ELLIOTT:  I don't disagree with you, Your Honor.

8    Let me see if I have a system note.

9          THE COURT:  And I can understand what some of

10   it might -- they require you -- you can get on the phone and

11   talk to these people.  I mean, if she's got COVID, that's a

12   different matter, she's sick and she can't talk.  But if --

13         MR. ELLIOTT:  And we did e-mail her the packet, all

14   the documents as well as we mailed everything.  We need at

15   least, like, 30 days to see if we can send it out, convince

16   her to get it all filled out properly and get it back to us

17   and everything, so...

18         THE COURT:  Well, you know, again, I don't want to be

19   insensitive, but she can in her home fill it out.  And then

20   if there's difficulty, someone doesn't have to be in her

21   home.  They can do what we're doing now or visit her by

22   telephone, and then she's got a -- if she's receiving mail,

23   she can return mail, because it's the same receptacle.

24         So I'm going to give you 30 days, but it needs to get

25   done, because you can't have just complete noncompliance

1   because there's no reason for that.

2          MR. ELLIOTT:  That's -- 30 days, I appreciate that.

3          She did say she tested positive for COVID, and that's

4   been another part of the problem.  But, yes, I will --

5          THE COURT:  Well, if she's in bed sick, that's a

6   different matter.  That's not the same thing as I'm

7   self-quarantined.

8          MR. ELLIOTT:  Yeah, the notes -- I looked at them.  I

9   went back in the file.  It says that she tested positive for

10  COVID.  That would be the issue of not getting all the stuff

11  back.

12         I mean, they were sent to her previously.  I can't

13  make excuses for her in that regard, but given the situation,

14  I would just like additional time.

15         THE COURT:  Well, I'm giving you 30 days.

16         Okay.

17         MR. INSOGNA:  And, Your Honor, the last joint case,

18  Kimberly Wiloughby has been cured.  I just wanted to let

19  Mr. Elliott know that there is a duplicate case, both with

20  Bachus & Schanker, with the same social security numbers.  I

21  think one just needs to be pulled down, but the deficiency

22  has been cured.

23         THE COURT:  Okay.  Thank you.

24         MR. ELLIOTT:  We can take it down.

25         MS. BRILLEAUX:  Good afternoon, Your Honor.  This is

1   Kelly Brilleaux for the Sanofi defendants.  The rest of the

2   cases are Sanofi only.

3        The first one that remains on the list is Shirley

4   Bridges, and this is no before photos from within five years

5   of treatment.

6        MR. ELLIOTT:  This is another one.  She's asked

7   family, friends, still cannot provide a before photo.  She

8   did provide -- she did provide one.  It's just not within the

9   five years unfortunately.  We can keep trying with her.

10        THE COURT:  How close to within five years?

11        MS. BRILLEAUX:  Your Honor, it's -- in this case, the

12   plaintiff underwent chemotherapy in 2012 and the before photo

13   is from 2001.

14        MR. ELLIOTT:  Let me see.  Bridges.

15        Counsel is correct, Your Honor.  It is a 2001 photo.

16   I mean, I would hate to see her case -- she's been very

17   cooperative.  We have everything in the file but this before

18   photo.  She wishes to participate.  I mean, we can keep

19   trying, but I'm not sure.  I mean, I show my -- our follow-up

20   notes with her -- asking her, you know, family, friends --

21        THE COURT:  Does she have children?

22        MR. ELLIOTT:  -- with her --

23        THE COURT:  Does she have children?

24        MR. ELLIOTT:  I don't know if I have that note in

25   here.  I can pull it up.

1        THE COURT:  Okay.  I think you're going to have to

2   keep trying.

3        Ms. Berg, have you worked with Mr. Elliott on

4   Ms. Bridges before?

5        MS. BERG:  I don't think this specific case, but I

6   can.

7        THE COURT:  Okay.  Why don't we do that.  And

8   sometimes -- we spoke -- what's today -- Friday about other

9   areas where you might want to search, and let's do that as

10  well.

11       Okay.  Thank you.

12       MS. BRILLEAUX:  Your Honor, the next case, Christina

13  Demetro, is on the list of plaintiffs who submitted

14  statements, so we can pass over that one because that has

15  been dismissed.

16       The next case is Daisy Doucet.  This is no proof of

17  use with no medical records.

18       MR. ELLIOTT:  This one, the facility has responded

19  that her records were destroyed.  I have a note here that she

20  wants the opportunity, one more time.  She's going to go to

21  her storage unit to see one last time if she can find, you

22  know, what it was, and she's confident she has it there.  But

23  I -- this is --

24       THE COURT:  Let me ask this question:  Does she think

25  she has in her personal storage unit --

```
1              MR. INSOGNA:  Yes.

2              THE COURT:  -- proof of Taxotere use?

3              MR. ELLIOTT:  Yes, Your Honor.

4              THE COURT:  What sort of information would she have

5     in her personal storage unit that would indicate that?

6              MR. ELLIOTT:  Her records from her treatment, you

7     know.  I think she believes there may be medical record proof

8     in her storage unit.

9              THE COURT:  Okay.  Well --

10             MS. BRILLEAUX:  And, Your Honor, I just wanted to --

11    go ahead.

12             THE COURT:  Well, I'm looking.  This case was filed

13    in 2017, and my question is, when is she planning to go to

14    her storage unit?  Because now we're at three years.

15             MR. ELLIOTT:  Well, I mean -- you're right, Your

16    Honor.  It's an older case.  She treated in 2004.  She's

17    confident she took Taxotere.

18             THE COURT:  Well, I understand that.  My question is

19    --

20             MR. ELLIOTT:  I don't know --

21             THE COURT:  -- what's the plan here?

22             MR. ELLIOTT:  I would just like a little bit, maybe

23    30 days on this.  If she can't get the records, I don't know

24    what more we can do at this point other than an affidavit

25    from her, but the facility says the records were destroyed
```

 1   because it's an old case.

 2        THE COURT:  Okay.  When did the -- when did you find

 3   that out, that the facility had destroyed the records?

 4        MR. ELLIOTT:  Let me see if I can find that.  Let me

 5   pull her record in the back.  That would take me a minute,

 6   Your Honor.  I have to go into our records.

 7        THE COURT:  Is this something that you discovered in

 8   the last 30 days, or is it something that she's known for

 9   some time and this is her response?

10        MR. ELLIOTT:  I mean, we've known this -- we've known

11   this for some time.  This is the first time I think she

12   showed up on a show cause docket, so, you know, it hasn't

13   been brought to your attention before, the defense just

14   identified this.  Otherwise, you know, we would have taken

15   care of this much earlier.

16        THE COURT:  Okay.  I'm going to give her 15 days to

17   get in that storage unit and find those records.

18        MR. LAMBERT:  Your Honor, may I make a suggestion

19   too?

20        THE COURT:  I'm listening.

21        MR. LAMBERT:  This is Palmer Lambert, co-liaison

22   counsel for plaintiffs.

23        Mr. Elliott, I would suggest that you talk to or try

24   to find the doctor that prescribed the medication.  Maybe you

25   can get a statement from that doctor if it's not in the

1    storage records.

2          MR. ELLIOTT:  Thank you.  We will make that attempt

3    as well.

4          THE COURT:  Okay.  I'm going to give you 15 days.

5          MS. BRILLEAUX:  Thank you, Your Honor.

6          The next case on the list is Ruth Esterly.  That one,

7    I believe, has been -- that is also on the statement list, so

8    we can pass over that one because that one's already been

9    dismissed.

10         The next case on the deficiency list is Arlene

11   Fletcher, and this is a deficiency for no signed declaration

12   with PFS and no before photos.

13         MR. ELLIOTT:  Your Honor, we submitted the Plaintiff

14   Fact Sheet on May 13th.  We also submitted a before photo

15   within five years.

16         THE COURT:  Okay.

17         MS. BRILLEAUX:  Counsel, I apologize for any

18   confusion.  We received the PFS.  We don't have the signed

19   declaration for the PFS.

20         MR. ELLIOTT:  Okay.  Give me a second.  That may have

21   changed, and we just didn't upload it.

22         I don't want to waste Your Honor's time any further.

23   I mean, if you give us time to upload the signature page, it

24   shouldn't be a problem.

25         THE COURT:  All right.  I'll give you 15 days to get

1    that done.

2          MS. BRILLEAUX:  And, Your Honor, just to clarify, for

3    the before photos, is it the same time period, 15 days for

4    those too?

5          THE COURT:  I think he said they've already been

6    uploaded?

7          MR. ELLIOTT:  We did, Your Honor.

8          THE COURT:  We're going to give you an opportunity to

9    confirm compliance.

10         MS. BRILLEAUX:  Okay.  Thank you.

11         The next case is Kimberly Francisco, and that case

12   was on the list of plaintiffs who filed declarations, so we

13   can pass over that one.

14         THE COURT:  Okay.

15         MS. BRILLEAUX:  The next case after that is Mary

16   Gaston.  We have agreed that plaintiffs have cured that

17   deficiency after -- after Friday, it has been cured, so no

18   need to discuss it today.

19         The next case is Sally Gowens, and this is a

20   deficiency for no before photos.

21         MR. ELLIOTT:  Yes.  We were notified this one was no

22   before photos.  She cannot locate them.  Again, she's looked

23   with family and friends.  No luck.  We diligently tried to

24   get these from her.  I think this one may have showed up on a

25   docket prior.  Am I right about that?  On a show cause?

1          MS. BRILLEAUX:  And, Your Honor, counsel is correct.

2     Just for some context on this one, this was addressed at the

3     November 29th hearing.  This is a plaintiff who alleged that

4     they had had a house fire in 1987, and so the only before

5     photo was from 1983.  And we would ask at this point for

6     plaintiff to work with plaintiff's liaison counsel to locate

7     as we requested on Friday and today other sources of

8     photographs.  I mean, 1983 is a really long time ago.

9          THE COURT:  And prior to 1987 would not put you

10    within five years of her chemotherapy anyway.  So, yes, I'm

11    going to ask Ms. Berg to work with Mr. Elliott to produce

12    some form of -- something within five years before.

13         MS. BERG:  Yes, Your Honor.

14         THE COURT:  30 days.  Okay.  Thank you.

15         MS. BRILLEAUX:  Thank you, Your Honor.

16         The next is Shirley Greene, and this is for no before

17    photos within five years of treatment.  And just to sort of

18    short circuit this, chemotherapy was in 2007 and the before

19    photo that we have is from 2000.

20         MR. ELLIOTT:  Shirley Greene, let's see.  We uploaded

21    a Plaintiff Fact Sheet last week because her house burned

22    down, and due to COVID, she's also having trouble getting the

23    fire report to prove that she lost -- you know, she lost the

24    photo.  But we are trying to get some type of report from the

25    fire department as Your Honor has stated we could get

1    previously.  But she's had difficulties with that due to the

2    situation.

3         THE COURT:  Has she -- have you worked with her to

4    contact other sources where people may have photographs

5    besides what was in her personal home?

6         MR. ELLIOTT:  Yes.  Absolutely.

7         MS. BRILLEAUX:  Your Honor, I just want to clarify

8    for counsel, I'm not sure -- are we talking about the same

9    case?  Because I know Sally Gowens, which we just finished

10   with, was a plaintiff who had a house fire.  Did Shirley

11   Greene also have a house fire?

12        MR. ELLIOTT:  Yes.  It says here house burned down in

13   2011.  She lost all her belongings.  She tried to obtain the

14   fire report, but due to COVID, the fire department is not

15   doing anything about it right now.

16        THE COURT:  All right.  I'm going to give you 30 days

17   to run that down.  Hopefully -- and that's true.  I know that

18   people are unable to get that sort of communication.  But

19   let's pass this one to the next hearing date.

20        Okay.

21        MS. BRILLEAUX:  I'm sorry, Your Honor.  Was that

22   30 days or did you want to pass it?

23        THE COURT:  30 days.

24        MS. BRILLEAUX:  30 days.  Thank you.

25        THE COURT:  Probably just say pass it because if she

1  did have a fire in 2011, I think that's accurate that she

2  cannot get a report right now because people are not in

3  offices.  So let's just pass this one.

4        But in the interim, Mr. Elliott, you need to work

5  with Ms. Greene to contact other sources.

6        MR. ELLIOTT:  Yes, Your Honor, we will.

7        MS. BRILLEAUX:  Thank you, Your Honor.

8        The next case, Diane Gullette, was cured after

9  Friday's hearing, so we can proceed.

10        The next case is Carolyn Hannah-Watson, and this is

11  no PFS submitted.

12        MR. ELLIOTT:  We finally located her this month.

13  She's been in and out of the hospital since March 27th.

14  We're asking for an extension to get the document back or get

15  the Plaintiff Fact Sheet back.

16        THE COURT:  All right.  I'm going to give you

17  30 days.

18        MS. BRILLEAUX:  Thank you, Your Honor.

19        The next case is Barbara Harden, no PFS submitted.

20        MR. ELLIOTT:  She's not allowing --

21        THE COURT:  Mr. Elliott?

22        MR. ELLIOTT:  Sorry, Your Honor.  She's not allowing

23  anyone in her home.  Due to COVID, she's not cooperating.  We

24  reached -- talked to her last Monday.  She's feeling a little

25  more comfortable, having visitors.  We actually have an

1   appointment this week to go pick up the photos and more

2   documents.

3          THE COURT:  Appointment this week?  I'm going to give

4   you 15 days to get that done and uploaded.

5          MS. BRILLEAUX:  Thank you, Your Honor.

6          The next case is Gloria Harrison, no PFS submitted.

7          MR. ELLIOTT:  All court documents and photos -- let's

8   see.  I'm sorry.

9          We've located a new address for this one, and we'd

10  just like more time.  It looks like she moved.

11         THE COURT:  I'm going to give you 30 days, but, you

12  know, I got to tell you, Mr. Elliott, you have clients that

13  move more than anybody I have ever seen.

14         MR. ELLIOTT:  We also have the most cases, Your

15  Honor, and, you know, respectfully, it's a massive, massive

16  effort.  And we have thousands of cases and people all over

17  the country.  We send letters, e-mails.  We have, you know,

18  text messaging capabilities.  And we also sent people

19  notaries to their homes.  So we're really, really trying,

20  Your Honor.

21         THE COURT:  Okay.

22         MR. ELLIOTT:  And you're right.  You know, I don't

23  disagree with the address thing.  I don't know why that

24  always seems to be an issue here, but it is.

25         THE COURT:  Okay.  Let's go to the next one.

1            MS. BRILLEAUX:  Thank you, Your Honor.  The next case

2    is Jean Housel, and for the deficiency here, we don't have

3    HIPAA or psychiatric authorizations.

4            MR. ELLIOTT:  Which one was that?

5            MS. BRILLEAUX:  Jean Housel.  And, counsel, I will

6    represent to you that this is one of the cases that had

7    multiple deficiencies.  We recognize that some of those

8    deficiencies were cured, but we're asking that the remaining

9    deficiencies, which are the HIPAA and psychiatric

10   authorizations for this plaintiff, be cured.

11           MR. ELLIOTT:  We uploaded HIPAA's on 3/13 of 2020.

12           What was the other?  I mean, I show that this one is

13   cured.

14           MS. BRILLEAUX:  A HIPAA authorization and a

15   psychiatric authorization, we're still missing those.

16           MR. ELLIOTT:  Is the psychiatric authorization part

17   of something new?

18           MS. BRILLEAUX:  It's not new.

19           THE COURT:  Is it a separate authorization?

20           MS. BRILLEAUX:  Yes, Your Honor.

21           MR. ELLIOTT:  I'll look into that.  I don't know why

22   we don't have the psychiatric authorizations, so I don't know

23   -- that's the first time I've seen a deficiency on that, for

24   psychiatric.

25           THE COURT:  I'm going to give you 15 days.

1          MR. ELLIOTT:  They have a HIPAA, Your Honor, that

2     they can get any records they want from any doctor.  But,

3     yeah, I'll look for that.

4          THE COURT:  Wait.  Do you have -- are you missing two

5     authorizations, Ms. Brilleaux?

6          MS. BRILLEAUX:  Yes, Your Honor, HIPAA and

7     psychiatric.  There are two different authorizations that

8     have been approved by the board.

9          MR. ELLIOTT:  We did upload the HIPAA, Your Honor.

10    They do have that.

11         THE COURT:  Okay.  So that's already been uploaded.

12         MS. BRILLEAUX:  And Mr. Insogna who I know has MDL

13    Centrality up is indicating that it's not uploaded.

14         THE COURT:  Do you have that in your file?

15         MR. ELLIOTT:  That's not what my notes reflect.  It

16    says we have.  It says signed HIPAA 3/13, Document ID 449403.

17         THE COURT:  Mr. Insogna?

18         MR. INSOGNA:  That document has three of the

19    authorizations.  Together it does not include the HIPAA or

20    psychiatric authorizations.

21         MS. BRILLEAUX:  Thank you, Mr. Insogna.

22         THE COURT:  So there are two additional

23    authorizations that need to be uploaded.  Okay.

24         MS. BRILLEAUX:  That's correct, Your Honor.

25         THE COURT:  Let me ask you this, Mr. Insogna, since

1   you have MDL Centrality up:  Are the documents in there just

2   not executed, or are the documents not there?

3        MR. INSOGNA:  They're not there.  I know that

4   Mr. Elliott's firm typically uploads all the authorizations

5   as one single PDF together, and there is one PDF this time

6   that has three other authorizations, but not the HIPAA or

7   psych.

8        THE COURT:  Okay.  Mr. Elliott, I'm going to give you

9   30 days to get those signed and uploaded.

10       MR. ELLIOTT:  Okay.  That's no problem.

11       THE COURT:  All right.  Let's go to Ms. Darnisha

12  James.

13       MS. BRILLEAUX:  Yes, Your Honor.  Darnisha James is

14  no PFS submitted.

15       THE COURT:  Mr. Elliott?

16       MR. ELLIOTT:  We have reason to believe she passed

17  away.  We've located a few addresses for next of kin.  We

18  just -- we did get a new address.  We would like an extension

19  to go try to see if we can pursue some type of right of

20  survivorship claim here.

21       THE COURT:  Okay.  I'll give you 30 days to find this

22  person, and then we'll go from there.

23       MS. BRILLEAUX:  Thank you, Your Honor.

24       The next plaintiff is Yvonne Johnson, no PFS

25  submitted.

1          MR. ELLIOTT:  This is another one she didn't want

2     anyone coming to her home to pick up her documents.  This is

3     a COVID one where she was self-quarantining, and we need more

4     time to either get her to mail them in or what.  It doesn't

5     look like she's not cooperating.  It looks like she wants to.

6     We've spoken with her.  We just need more time to get the

7     documentation.

8          THE COURT:  All right.  I'll give you 30 days.  This

9     is a relatively new case.  It came, frankly, right before

10    COVID came to fruition.

11         MS. BRILLEAUX:  Thank you, Your Honor.

12         For Mattie Johnson, I just want to indicate that this

13    is a rollover case that we've addressed at prior hearings.

14    This is a deficiency for no before photos.

15         MR. ELLIOTT:  Yes.  We -- 2019 we actually have a

16    signed affidavit where she's stating she's done everything,

17    contacted family and friends.  We've done everything possible

18    to try to get something.  This has been rolled over a few

19    times at this point.  We just cannot get --

20         THE COURT:  Does the affidavit -- does the affidavit

21    with specificity review what she has done to search?

22         MR. ELLIOTT:  Let me see if I can pull it up here.

23         MS. BRILLEAUX:  And, Your Honor, just to interject,

24    we would also recognize that the affidavit was submitted

25    without being ordered by the Court, and what we're asking for

1   now is an update on what has been done.

2        THE COURT:  I want to find out.  Yeah.

3        MR. ELLIOTT:  I have it open here.  Proof of

4   injury... (reading).

5        I see it.  I, Mattie Johnson, made the following true

6   statements to the best of my knowledge:  I do not have any

7   photos from my chemotherapy treatment in my possession, dated

8   December 2019.

9        And this was after, you know, many attempts to get

10  it.  If you want more detail, I can probably --

11       THE COURT:  That's it?  Okay.  No.  No.  I'm going to

12  order an affidavit within the next 30 days.  An affidavit is

13  going to have to identify with specificity what she has done

14  to search for photographs, and it's not enough to say I

15  contacted friends and family.  I need to know who she

16  contacted and what she did and that she obviously didn't --

17  she must not have had a driver's license or any sort of photo

18  ID.  I mean, it's got to be with specificity.  Okay?

19       MR. ELLIOTT:  I can get that done, Your Honor.

20       THE COURT:  30 days.  And who she contacted.

21       MR. ELLIOTT:  No problem.

22       MS. BRILLEAUX:  Thank you, Your Honor.

23       The next case is Tosha Jones, no PFS submitted.

24       MR. ELLIOTT:  Tosha Jones.  We're asking for an

25  extension.  We reached the client late April.  She tested

1   positive for coronavirus in April.  She stated as of Monday

2   she tested negative.  That's this past Monday.  She's now

3   going to allow the representative to come to her house, so we

4   would ask for 30 days.  Looks like there's an appointment for

5   tomorrow.

6         THE COURT:  All right.  I'm going to grant 30 days.

7         MS. BRILLEAUX:  Thank you, Your Honor.

8         The next case is Lorna Kana, and this is no before

9   photos.

10                   (Screeching noise.)

11        MR. ELLIOTT:  Let's see.  This is an older case, but

12  it is the first time it showed up on a show cause docket, so

13  I'm surprised by that.  She is trying to locate before photos

14  from friend.  She will not allow anyone to come to her home.

15        Let's see.  She supplied us with present day photos.

16  She did upload May 4th, but we, I guess, need more time to

17  get the before photos.  I realize it's an old case, but it is

18  the first time it has showed up on a show cause docket.

19        THE COURT:  Okay.  I'll grant you 30 days to get

20  those photographs.

21        Ms. Brilleaux?

22        MS. BRILLEAUX:  Yes, Your Honor.  The next case is

23  Helen Keiser, no PFS submitted.

24        MR. ELLIOTT:  Which one?  Keiser?  Is that what you

25  said?

1          MS. BRILLEAUX:  Yes, Keiser.

2          MR. ELLIOTT:  We discovered Keiser passed away in

3    March of this year unfortunately.  Her daughter does wish to

4    continue.  We need time to get an estate set up.

5          THE COURT:  Do you know if her daughter has contacted

6    an attorney to set up the estate?

7          MR. ELLIOTT:  I do not have that in my notes, Your

8    Honor.  It just says that she wants to continue, wants time

9    to get --

10         THE COURT:  All right.  I'm going to give her 60 days

11   to get that done.

12         Okay.

13         MR. ELLIOTT:  Thank you.

14         MS. BRILLEAUX:  Thank you, Your Honor.

15         The next three -- actually, the next four cases have

16   either been cured or are on other lists, so that's Lolitta

17   Leavell, Sandra Leduke, Melinda Lopez, and Sandra Luke.

18         The next case that we need to address is Roberta

19   Matthew and this is no PFS submitted.

20         MR. ELLIOTT:  She -- made contact with her May 11th.

21   She was in the hospital from December until March.  She's

22   been ill.  Didn't want anyone in her house.  We've been

23   trying to get her compliant.

24         Let's see.  Oh, it says here she has agreed to an

25   appointment this week.  We ask for more time to get the

1    documents and photos.

2        THE COURT:  Okay.

3        MR. ELLIOTT:  This was a filing in December 2019.

4        THE COURT:  No, I got that.  I'll give you 30 days if

5    you have an appointment next week to get the information.

6        MS. BRILLEAUX:  Okay.  The next case is Dolores

7    Mcbeth, and that one was cured after the hearing on Friday,

8    so we can move on from there.

9        The next case is Debbie Morris, and this is no before

10   photos from within five years of treatment.  Chemotherapy was

11   in 2015, and the most recent before photo was from 2008.

12       MR. ELLIOTT:  Your Honor, we would ask for more time.

13   Plaintiff did provide us a photo from 2008.  Her chemo was in

14   2015.  So not that far outside of five years.  It's only two

15   years outside the required time frame.

16       We did file an amended Plaintiff Fact Sheet on

17   May 13th, so that should have been updated.  Looks like

18   everything else would be compliant, but this before photo is

19   outside two years.  And we can try again to try to get

20   something within five.

21       THE COURT:  Okay.  You know, I'm going to ask you to

22   keep trying, but I don't want this back on the list if it's

23   within seven years.  Keep trying.  Let's do that, but we

24   sometimes get bogged down.  Not sometimes, a lot of times.

25       Okay.

1          MS. BRILLEAUX:  Thank you, Your Honor.

2          The next case is Brenda Nichols, no PFS submitted.

3          MR. ELLIOTT:  She's been unwilling to let anyone come

4    to her house in March and April due to coronavirus.  We spoke

5    with her last week, and we actually have an appointment.  We

6    have an appointment on Saturday.  So we should have

7    documents --

8          THE COURT:  30 days.

9          MR. ELLIOTT:  Thank you.

10         MS. BRILLEAUX:  The next case is Linda Northlich, and

11   this is no PFS submitted.

12         MR. ELLIOTT:  Your Honor, we found out through her

13   neighbor that she passed away.  We don't have any information

14   about next of kin.  We're trying to figure that out.

15         THE COURT:  Well, if you don't have anything within

16   30 days, we're going to dismiss the case.

17         MR. ELLIOTT:  I understand.  Thank you.

18         MS. BRILLEAUX:  I'm sorry.  It was me.  It was me.  I

19   was on mute.

20         The next case is Virginia Pryce.  This was cured

21   late, so we don't have to address that one.

22         The next is Carol Reed, and this is no before photos

23   from within five years.

24         MR. ELLIOTT:  I believe we uploaded before photos

25   December of 2018, so I'm confused about that.  We have --

1    everything else on the noncompliance was cured.

2         THE COURT:  No, it's before photos within five years.

3    You're telling me you previously uploaded that.  I'm going to

4    give defendants seven days to confirm compliance.

5         MR. ELLIOTT:  There could be a disagreement over the

6    upload, but I see something was uploaded December 20, 2018.

7         THE COURT:  Is it within five years?

8         MS. BRILLEAUX:  It's not, Your Honor.

9         MR. ELLIOTT:  Says taken -- she believes it was taken

10   sometime between '97 and 2000.  The cancer was in 2004, so

11   that would still be 7 years, you know, worst case scenario,

12   but she thinks it could have been 2000.  She's just not --

13        MS. BRILLEAUX:  Your Honor, I'm just going to

14   response -- I'm just going to respond to that.  We know that

15   plaintiff did have chemo in 2004, but she didn't receive

16   Taxotere until 2008.  So her Taxotere use was in 2008 rather

17   than 2004.

18        MR. ELLIOTT:  Oh, my mistake.  Let me see.  You're

19   probably right about that.  It says August 6, 2004, to

20   September 17, 2004.

21        MS. BRILLEAUX:  Our records show that she didn't take

22   Taxotere until 2008.  So she had ANZ in 2004 and no taxane.

23        MR. ELLIOTT:  We need time to confirm that, Your

24   Honor, because then, yeah, it would not be --

25        THE COURT:  All right.  We're going to pass this one.

1    We're going to keep it on the call docket.  I'm going to ask

2    you and Ms. Brilleaux to talk through this and find out what

3    the situation is.

4            MS. BRILLEAUX:  Yes, Your Honor.

5            MR. ELLIOTT:  Okay.

6            MS. BRILLEAUX:  The next case is Dianne Rogers, no

7    PFS submitted.

8            MR. ELLIOTT:  Dianne Rogers, on the 6th we reached

9    her finally.  She's another one that tested positive for

10   coronavirus.  We need more time.  She says she has no way of

11   leaving her house right now --

12           THE COURT:  Wait.  Who?

13           MR. ELLIOTT:  Dianne Rogers.

14           THE COURT:  So she's had coronavirus?

15           MR. ELLIOTT:  Yes, Your Honor.  That's what our

16   notes confirm -- my notes say here.  She's not allowing

17   anybody to come to her house, and she says she has no way of

18   leaving her house to send mail.  I mean, I don't know.  I

19   can't buy that she can't get to her mailbox, but that's what

20   my notes reflect.  We tried to get somebody out there, but

21   obviously no one's going in her home right now.

22           THE COURT:  All right.  I'm going to give you

23   30 days, and I think you need to find out how she's receiving

24   her mail because it's hard for me to believe that people are

25   not receiving mail, and if they are, then she can get the

1   information back to you.

2   　　　　MR. ELLIOTT:  I'll confirm that, Your Honor.

3   　　　　MS. BRILLEAUX:  Thank you, Your Honor.

4   　　　　The next case is Paulette Rose, and this one we

5   have -- this is one where a statement was filed, so we can

6   move on from that one.

7   　　　　The next case to address is Deborah Rutigliano, and

8   this is a deficiency for undated before photos.  We have a

9   photo that has -- clearly has a date stamp that's cropped

10  out, and so we would like just before photos with the date

11  stamp.

12  　　　　THE COURT:  Mr. Elliott, I'm going to give you

13  15 days to cure that.  It sounds like it's more of a

14  technical issue.

15  　　　　MR. ELLIOTT:  Well, I don't think -- I think it's one

16  of these that she cut up, that she cut, like a cutout.

17  That's all.  I don't know if she can recreate this.

18  　　　　Give me a second real quick.  I think this is the one

19  where she cut out --

20  　　　　THE COURT:  She should still be able to tell you when

21  the photograph was taken.

22  　　　　MR. ELLIOTT:  Oh, it was in June of 2008.  I believe

23  we cured that part.

24  　　　　THE COURT:  Well, then what's the problem,

25  Ms. Brilleaux?

1          MS. BRILLEAUX:  So the problem is that June 2008 is

2     present, but the year is -- it looks like it's somewhat

3     deliberately cut off, and we just -- it's kind of the issue

4     that we talked about on Friday with the passports and the IDs

5     when there's a date stamp and metadata, this helps us

6     determine the accuracy of the date of the photographs.  We

7     would ask that the full photograph with the date stamp be

8     included.

9          MR. ELLIOTT:  Right.  Your Honor, I'm looking at the

10     picture right now.  She cut the original photo taken.  You

11     can see the digital where it says 6/28.  This is like a

12     cutout that she -- her and her husband are cut out, and

13     they're put, like, on some kind of, like, post card or

14     something.  And there's no other original -- she told us --

15     there's another photo here taken around the same time frame,

16     that this was taken before diagnosis on June 28, 2008.

17          THE COURT:  So there are two before photos?

18          MR. ELLIOTT:  Your Honor --

19          THE COURT:  Wait.  Wait.  Wait.  Stop.  Stop.  Let me

20     ask a question.  Are you telling me that there are two before

21     photos that have been uploaded?

22          MR. ELLIOTT:  Two before photos --

23          THE COURT:  What's the problem?  They both have cut

24     off dates?

25          MS. BRILLEAUX:  One has a date stamp that has been

1    cut off and the other one is just a cutout of her head.  And

2    the issue is the same that we talked about with the passport,

3    is that where there's clearly a date stamp, we just want to

4    see the date.

5         MR. ELLIOTT:  Your Honor, I don't believe there's any

6    way for us to recreate that, and, you know, we can't get the

7    original.  So this is what she submitted.  This is her

8    swearing to us that's when it was taken, and I think we

9    should cure this particular deficiency.

10        THE COURT:  I can't -- this is not the same as a

11   passport where you know the dates are on it, and I don't

12   understand the circumstance.  I'm not looking at it.

13        Something that can be recreated.  If it can't be

14   recreated, it is what it is and we're stuck with it.

15        MS. BRILLEAUX:  And what we would ask, Your Honor, is

16   just for counsel to ask if she has -- it's clearly a stamp

17   from a photograph where just the year has been cut out.  We

18   would just ask that counsel ask his client if she does have,

19   you know, a copy of it where the date is not obscured.

20        THE COURT:  All right.  Please ask her.

21        MR. ELLIOTT:  Your Honor, we did do that.  You know,

22   I'm just -- we did make all those attempts.  Anyway.

23        THE COURT:  Okay.  We're going to pass this one.  I'm

24   not going to -- if they've already asked her and she cannot

25   do this, then it's what we have and we're going to move on.

1          MS. BRILLEAUX:  Understood, Your Honor.

2          The next case is Marie Sapini, and this was a case in

3    which a statement was filed, so we do not need to address it.

4          The next case that we do need to address is Anita

5    Sergeant, and this is no before photos and no after photos.

6    And we also have -- we did receive a PFS, but it's basically

7    95 percent blank.

8          MR. ELLIOTT:  All right.  I think this is one where

9    she is declining to participate.  Let me --

10         THE COURT:  Well, then why wasn't it dismissed?

11         MR. ELLIOTT:  That's what I'm trying to figure out,

12   because we did all that we can that were -- the remaining,

13   but -- let's see.

14         I guess we did reach her.  She has been sick with

15   COVID it says here.  I just ask for more time on this one.

16         THE COURT:  Well, when was the --

17         MR. ELLIOTT:  Yeah, this one was --

18         THE COURT:  When was the -- I can't hear.

19         All right.  The PFS, when was it filed?

20         MS. BRILLEAUX:  My notes show that it was submitted

21   in November of 2018.

22         THE COURT:  And when did it get -- is this the first

23   time it's on the list?

24         MS. BRILLEAUX:  So this is -- this is the first time

25   we addressed it in a hearing, but it should have been on the

1    list for the hearing that we didn't have in March.

2          THE COURT:  March of this year, 2020?

3          MS. BRILLEAUX:  Correct.

4          THE COURT:  All right.  I'm going to give you 30 days

5    since she's had COVID, but this has been pending since 2017

6    and to file virtually an empty PFS is not acceptable.

7          MR. ELLIOTT:  And, Your Honor, I just want to

8    clarify, we did file, upload an amended fact sheet in June of

9    2018 with the updated declaration signature page.  We have,

10   you know, the rest of the stuff in the file, but we will get

11   everything that we can in the next 30 days from her in the

12   file in order.

13         THE COURT:  Okay.

14         MS. BRILLEAUX:  The next case is Rita Scruggs.  This

15   was cured, so we do not need to address it.

16         The next case we do need to address is Judith Serio,

17   and this is no PFS submitted.

18         MR. ELLIOTT:  She doesn't want anybody coming to her

19   house because of the coronavirus.  She's not willing to go

20   out.  This is another one that she is not cooperating due to

21   the current situation.

22         THE COURT:  Okay.  Well, these people that are not

23   cooperating, I understand not wanting somebody in your home

24   nor going out, I think that's appropriate, but I'm going to

25   order in 30 days you make telephone contact with this lady

1   and work through the process on the phone.  And you need to

2   make a determination as to how she handles her mail.  And if

3   you can send a pre-addressed postage on it, and if she's

4   sending somebody to the mail or she's going to the mail, she

5   can get the information back --

6         MR. ELLIOTT:  That sounds good.

7         THE COURT:  -- to your office.  But it's not enough

8   to say she doesn't want anybody in her house.

9         MR. ELLIOTT:  And, Your Honor, I do have an update.

10  I do have an updated note here from today at 10:28 a.m. that

11  we reached her again and states she's going to allow someone

12  to come out to her house in two weeks.  So the 30 days should

13  satisfy that time.

14        THE COURT:  Okay.  Thank you.

15        MS. BRILLEAUX:  Thank you, Your Honor.

16        The next four are late cures, and I'll just read

17  those names into the record:  Lena Shannon, Patricia Sick,

18  Sheila Snoke, and Wendy Spence.  So we don't need to address

19  any of those.

20        The next one we do need to address is Shawna Stookey,

21  and this is no PFS submitted.

22        MR. ELLIOTT:  This one I note today that she had --

23  just got a new address for her, need to get more detail.

24        THE COURT:  Look, I'm going to give you 30 days.

25        MR. ELLIOTT:  Okay.

1          MS. BRILLEAUX:  Thank you, Your Honor.

2          The next case is Darlene Stout.  This is no before

3   photos and no PTO 71A declaration.

4          And, Your Honor, I'll just --

5          THE COURT:  Okay.  I am out completely.  I'm going

6   to -- Sam, I'm going to try to sign back in.  I don't know if

7   anybody can --

8                    (Screeching noise.)

9          MS. BARRIOS:  We can see and hear you.

10         MS. BRILLEAUX:  We can hear you.

11         THE CASE MANAGER:  The fire alarm went off at the

12   courthouse and the judge had to evacuate.  I'll e-mail

13   everybody with a start time.

14                    (Recess taken.)

15         THE COURT:  Okay.  So where are we?

16         MS. BRILLEAUX:  Your Honor, so we left off with

17   Darlene Stout, and I did have an adjustment to what I said on

18   the record, if we can start over with this one.

19         Darlene Stout had a no PTO 71A deficiency that has

20   since been cured, so that is not at issue anymore.  There was

21   a before photo that was submitted, but it's still deficient

22   because it only shows plaintiff from the eyebrows up.  It

23   doesn't show her scalp, so we're trying to get a before photo

24   within five years that shows the entirety of her head.

25         THE COURT:  Okay.  Mr. Elliott?

1          MR. ELLIOTT:  I can take a look at that, Your Honor.

2    She's representing that's her head.  I think that we cured

3    the present -- I'm sorry, the before photo.

4          Is it the present day or the before photo that you

5    have the issue with?

6          MS. BRILLEAUX:  It's the before photo.  Sorry, Judge.

7          THE COURT:  It doesn't show her head.  So I'm going

8    to give you 30 days to cure that so that we can see that and

9    you can produce a photo that does show her head.

10         MR. ELLIOTT:  Okay.

11         THE COURT:  Okay.  Let's go.

12         MS. BRILLEAUX:  Yes.  The next two, Your Honor, have

13   been removed from the list for today, Rosanne Stout and Tamra

14   Strickland.

15         The next case that we need to address is Charisse

16   Terry-Deas, and that is no PFS submitted.

17         MR. ELLIOTT:  We have been trying to get in touch

18   with Charisse.  A man answered the door when we went to her

19   home and wouldn't cooperate with us.  We haven't been able to

20   get documents back from her.  I think given the current

21   situation we're just asking for another 30 days to see if we

22   can gain her compliance.

23         THE COURT:  All right.  This was filed December 2019,

24   so I'm going to grant the 30 days.

25         MS. BRILLEAUX:  The next case, Your Honor, is Arline

1  Todd, and this is a deficiency for no before photos.

2      MR. ELLIOTT:  Let me get to -- we located the client

3  last week, left documents with her godson.  We need time to

4  get those back.

5      THE COURT:  It's just the photos?

6      MR. ELLIOTT:  Yeah, I think it was more than the

7  photos.

8      MS. BRILLEAUX:  Counsel, for Arline -- this is for

9  Arline Todd, and this is the case that had been heard before.

10  We heard it at the December of 2018 hearing, and then a

11  handwritten statement was submitted afterwards.

12      MR. ELLIOTT:  I mean, it looked like we have

13  everything in the file but this before photo, and we did

14  upload a statement at some point.  You're right.  I'd ask

15  that we can do the same thing we did with the other one, to

16  see if she has made all her diligent efforts since that time,

17  have her provide us a new affidavit detailing specifically

18  why she cannot produce the before photo.

19      MS. BRILLEAUX:  And, Your Honor, I would just ask,

20  this is one where chemotherapy took place in 2014.  We

21  haven't been notified of any extenuating circumstances.  We

22  believe counsel should be assisting his client in searching

23  for photos.

24      THE COURT:  Without question.  So I'm going to order

25  within the next 30 days that a complete search take place

1    directed by counsel, that you advise her as to those places

2    she needs to look, and then if necessary, file a detailed

3    affidavit detailing what effort has been made to find photos.

4         Last week we talked about driver's licenses, ID

5    cards, medical records.  There are places where photographs

6    are taken, and I need all of those places to be searched and

7    then a detailed affidavit if those still result in no

8    photographs.  And then I'll look at it and see.

9         MS. BRILLEAUX:  Okay.  The next case, Your Honor, is

10   Tillie Todd, and this is no before photos within five years

11   of treatment.

12        THE COURT:  Mr. Elliott?

13        MR. ELLIOTT:  Yeah.  Looks like -- I thought we

14   uploaded a before photo on 5/8/2020 this month.

15        MS. BRILLEAUX:  And, Your Honor, we do have that

16   photograph.  This is a photograph that was uploaded, and it

17   was March 2007, but it clearly has a camera roll stamp of

18   1994 on it.  So we would ask that counsel double check on

19   that with his client to make sure that it is, in fact,

20   accurately dated.

21        MR. ELLIOTT:  Let me pull up that photo.

22        THE COURT:  I'm sorry.  I can't hear you.  What?

23        MR. ELLIOTT:  Sorry.  I was going to pull up the

24   photo real quick.

25        What was the issue?  It says here April 2007.

1          MS. BRILLEAUX:  Right.  If you look in the bottom

2     right-hand corner it says '94.

3          MR. ELLIOTT:  Oh, you're talking about that.  Okay.

4     I see.  Maybe -- I'll find out what that's about.

5          THE COURT:  All right.  You need to clear that

6     up before -- within the next 15 days.

7          MR. ELLIOTT:  All right.  We can do that.

8          MS. BRILLEAUX:  Thank you, Your Honor.

9          The next case is Sharon Toler, no PFS submitted.

10          MR. ELLIOTT:  Sorry.  Let me get that.

11          Sharon Toler.  And I note she has cancer again.  She

12     doesn't want anybody coming to her house given the virus.

13     She's going to chemo treatments right now.  She lives in a

14     rural area anyway.  It's going to be pretty expensive to get

15     anyone out there.  We would like for her case to continue.

16     She did not indicate she didn't want to participate anymore.

17          THE COURT:  Well -- but this is -- you have to be

18     able to communicate with people without being in their homes.

19     I'm not understanding this, and this is the same conversation

20     we've had regarding several of these plaintiffs.  You can use

21     a telephone and mail.

22          MR. ELLIOTT:  Yeah.  And we do.  We do those.  We do

23     all of those things.

24          THE COURT:  Well, then it shouldn't matter that she's

25     in a rural area.

1          MR. ELLIOTT:  Well, given that she's been sick, her

2    having to get to the post office or mail from her home, to do

3    all this heavy lifting, going through a 60-page fact sheet,

4    it's a lot for these women.  And, you know, that's why --

5    that's why we do send people to the homes to help them.  This

6    one is just much more difficult given her current

7    circumstances.  And we can't get anyone sent to her home

8    anyway.  She doesn't want anybody there.  She's vulnerable

9    with the virus, so we just --

10         THE COURT:  I'm going to give you 45 days.

11         MR. ELLIOTT:  Okay.  Thank you.

12         MS. BRILLEAUX:  The next case, Your Honor, is Keyata

13   Townsend, no PFS submitted.

14         MR. ELLIOTT:  We have an appointment with her now.

15   We actually were able to get a good address.  She's a new

16   filing --

17         THE COURT:  All right.  30 days.

18         MS. BRILLEAUX:  The next case, Your Honor, is Linda

19   Vandusen, and this is no before photos, no after photos, no

20   signed PTO 71A certification, and no signed authorizations.

21         MR. ELLIOTT:  Asking for 30 days to get all the

22   documents.  Her health is not good.  She doesn't want anybody

23   coming to her house --

24         THE COURT:  I'm going to grant 30 days.

25         MS. BRILLEAUX:  The next case, Your Honor, is

1    Patricia VanPelt, and that one has been removed from the

2    list, so we can move on.

3           The next case is Marciel Vassell, no PFS submitted.

4           MR. ELLIOTT:  This one we don't understand because

5    the number -- the phone number we had is a Canada number.  We

6    don't believe this is correct.  I don't know why we have a

7    Canadian number here.  And the address we have is bad that we

8    sent mail to.  I have a note here that this case -- we

9    skip-traced it last week.  I don't have the results back yet,

10   so I just ask for some more time to get a better address.

11          THE COURT:  What's a skip trace?

12          MR. ELLIOTT:  You know, we can get a company to help

13   get the last known address, you know, Westlaw actually has a

14   service.  There are multiple services offered to get last

15   known address --

16          THE COURT:  All right.  I'll give you 30 days.

17          MS. BRILLEAUX:  All right.  Your Honor, good news.

18   The next several up until the very last one have been cured

19   or a statement has been filed, so I'll read those into the

20   record and then we'll read the very last one:  India Waiters,

21   Clare Walker, Diana Warren, Monique Webber, Annie Wells,

22   Darlene Whitehead, Jennietta Williams, Barbara Willis, and

23   Carmen York.

24          Very last one on our list today is Theresa Angel, and

25   this is no before photos from within five years of treatment.

1    Chemotherapy took place, Your Honor, in 2005 and the before

2    photo that we have is dated 1997.

3         MR. ELLIOTT:  This is another one we tried -- I see

4    notes we've been trying to get the photos and she's saying

5    we -- you know, she's still not able to locate any.  It's an

6    older filing.  It was actually filed back in 2016.  So we've

7    been trying for a long time.  I'd ask for this case to have

8    30 days, if we can't for some reason find it, that we are

9    allowed to file a detailed affidavit of her efforts.

10        THE COURT:  I'll give you 30 days to do that.

11        MR. ELLIOTT:  Your Honor, I wanted to clear up -- I

12   think I misspoke earlier in the conference today about Anniea

13   Hassan and Ernia Hodges.  I was looking at the noncompliance

14   list from last week that was given to me, and as I look at

15   the one that was sent previously by plaintiffs' liaison

16   counsel, it does indicate a photo, proof of injury, that was

17   missing.  So I misspoke about that.  I apologize.

18        But, you know, I guess the only other thing that we

19   did take issue with is when we do file a Plaintiff Fact Sheet

20   and that is what the original noncompliance was, coming to

21   the hearing and adding stuff on, I'm fine, you know, with

22   doing 30 days and getting the PTO 71A or whatever it is, that

23   is something we take issue with.  I did misspeak about Hassan

24   and Hodges, so I apologize about that.

25        THE COURT:  Okay.  Thank you.

1          All right.  Anything further?

2          MR. ELLIOTT:  That's it, Your Honor.

3          MS. BRILLEAUX:  No, Your Honor.

4          THE COURT:  Okay.  Thank you.  Bye-bye.

5                          * * * *

6          (WHEREUPON, the proceedings were adjourned.)

7                          * * * *

8                     REPORTER'S CERTIFICATE

9          I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
10  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
11  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

12

13                  ___/s/ Nichelle N. Drake___
                    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25