UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>**This Document Relates To:**<br><br>*Certain Cases* | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

**<u>MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFFS WHOSE TAXOTERE TREATMENT STARTED BEFORE DECEMBER 15, 2006</u>**
**(Partially Redacted Pursuant to PTO 50)**

**Introduction**

Pursuant to Fed. R. Civ. P. 59(e), and, alternatively, Fed. R. Civ. P. 54(b), Plaintiffs respectfully seek reconsideration and reversal of this Court's ruling dated June 1, 2020,[1] which granted in part and deferred in part the Defendants' Motion for Summary Judgment on the Claims of Plaintiffs Whose Taxotere Treatment Started Before December 15, 2006.[2] In the Order, this Court came to the following conclusion:

> Considering Louisiana law, Plaintiffs have not created an issue of fact on whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's duty to warn. Therefore, the Court concludes that summary judgment is warranted under Louisiana law.[3]

The Court deferred ruling on any other jurisdictions at issue, directing the compilation of a 49-state compendium of law regarding the "knowledge" element of the Court's analysis.[4]

---

[1] Rec. Doc. 10487.
[2] Rec. Doc. 8977.
[3] Rec. Doc. 10487 at 9.
[4] *Id*. at 10.

There is ample evidence, through discovery, through Plaintiffs' expert reports and in expert testimony presented at trial, establishing a genuine issue regarding Sanofi's knowledge of irreversible hair loss and whether Sanofi should have drawn certain conclusions that triggered its duty to warn prior to December 15, 2006.[5] However, since the Court, in its June 1, 2020 Order, focused primarily on the reports and testimony of Plaintiffs' expert witnesses, Plaintiffs specifically request that the Court revisit certain information in Dr. David Madigan's reports and testimony, including information that the Court previously accepted in the *Daubert* and dispositive briefing stage of this MDL in advance of the first bellwether trial. In light of that information, it was improper for the Court to remove this clearly contested issue of fact from the jury, to grant summary judgment and to order dismissal of these cases.

In the Court's Order and Reasons of June 1, 2020, the Court remarked that it "studied Dr. Madigan's report from the September trial of Barbara Earnest" and "found only his tenuous conclusion that 'adequate statistical evidence supporting a causal association between Taxotere (docetaxel) and permanent/irreversible alopecia was available to Sanofi several years earlier [than 2015].'"[6] However, for the reasons discussed in greater detail below, the Court previously acknowledged that Dr. Madigan's opinions actually go much farther than that, finding that Sanofi had such safety information available to it as early as 2000 and that his testimony would be beneficial to the jury. Furthermore, Dr. Madigan's later report in the *Thibodeaux* matter, which the PSC acknowledges was inadvertently omitted from its submission but clearly intended to be included by its reference in Plaintiffs' Response to Defendants' Statement of Facts and Plaintiffs'

---

[5] *See generally*, Rec. Doc. 9231 at 6-12 (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Pre-December 15, 2006)).
[6] Rec. Doc. 10487 at 7-8.

Counterstatement of Facts,[7] provides more pointed opinion testimony in the form of a statistically significant safety signal prior to December 15, 2006. In addition, Dr. Madigan's latest report and testimony in this MDL, issued March 23, 2020 in the *Kahn* case, further support the fact that Sanofi possessed information that would have caused a reasonably prudent manufacturer to draw conclusions that would trigger its duty to warn long before December 15, 2006. For these reasons, there exists a genuine issue of material fact that cannot be adjudicated as a matter of law, and, therefore, this Court's June 1, 2020 Order should be revisited.

## Standard on Reconsideration

Under Fed. R. Civ. P. 59(e), the Eastern District of Louisiana has routinely considered the following four factors in deciding motions for reconsideration: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *See Foster v. Principal Life Ins. Co.*, 303 F. Supp. 3d 471, 479 (E.D. La. 2018).

A denial of a motion for reconsideration is reviewed for an abuse of discretion. *See ICEE Distributors, Inc. v. J&J Snack Foods Corp.,* 445 F.3d 841, 847–48 (5th Cir. 2006). The Fifth Circuit provides several factors to consider when a party seeks to upset a summary judgment by producing additional evidence: "(1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *Id. (citing Lavespere v.*

---

[7] Rec. Doc. 9231-1 at 10, Paragraph 38. Dr. Madigan's opinions are referenced in Sanofi's opening brief, Rec. Doc. 8977-2, Page 9. Although Dr. Madigan's *Thibodeaux* report was not attached to its motion, Sanofi cited Dr. Kessler's deposition testimony in the *Thibodeaux* matter which included questioning regarding Dr. Madigan's *Thibodeaux* report.

*Niagara Machine & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990)). "These factors ... are simply illustrative and not exhaustive .... Rule 59(e) motions provide the district court with 'considerable discretion.'" *Id.*

Alternatively, under Fed. R. Civ. P. 54(b), the trial court has the authority to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). As this Court's June 1, 2020 Order is interlocutory, the Order may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014). "Interlocutory orders," such as grants of partial summary judgment, "are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." *Id.* If the district court determines that it has erred in such an interlocutory order, it would be a waste of judicial resources to force it to perpetuate such error through a trial on the remaining issues, even though it believed the ultimate judgment would have to be reversed on appeal. *See Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985).

**Argument**

**I. Dr. David Madigan's reports and his opinions establish that Sanofi had constructive knowledge of the potential safety risk as early as 2000, and the Court has previously upheld Dr. Madigan's opinions under *Daubert*.**

**A. Dr. Madigan's report in the *Earnest* matter was sufficient to defeat summary judgment on the claims of Plaintiffs who treated prior to December 15, 2006; This Court's August 23, 2019 Order denying Defendants' motion to exclude Dr. Madigan's testimony is in stark contrast with this Court's June 1, 2020 ruling.**

In the June 1, 2020 ruling, this Court memorializes its review of Dr. Madigan's expert report from the *Earnest* case, a report that remains a part of the record in this MDL.[8] For ease of

---

[8] Rec. Doc. 6163-18.

4

reference, Plaintiffs attach the report herein[9] and will point out to the Court Dr. Madigan's opinions, which undoubtedly provide support for Plaintiffs' position that a triable issue exists for the jury to decide.

Dr. Madigan analyzed data from the company's annual Safety Update Reports from the TAX 316 study. Figure 1 of his *Earnest* report[10] shows that a safety signal[11] for permanent alopecia existed in 2000 using the proportional reporting ratio (PRR) analysis, and he testified accordingly as detailed below. The data further shows that by 2004 Sanofi was witnessing this adverse event occur at a 2.42 times higher rate with Taxotere than without it, which jumped to 2.60 by 2005 and remained in all subsequent years (his calculations for each year are all statistically significant with p-values ranging from 0.013 to 0.020). When including the GEICAM data in those numbers, the rates increase to 2.47 and 2.63, respectively. These rates are calculated using Sanofi's own data from 2004, 2005 and 2006.

The June 1, 2020 Order states that the Court "studied Dr. Madigan's report from the September trial of Barbara Earnest" and "found only his tenuous conclusion that 'adequate statistical evidence supporting a causal association between Taxotere (docetaxel) and permanent/irreversible alopecia was available to Sanofi several years earlier [than 2015].'"[12] Plaintiffs suspect that the Court is referring to the Conclusion found at the end of Dr. Madigan's report:

> [REDACTED PER PTO 50]

---

[9] *See* Exhibit A, Dr. Madigan's report dated November 2, 2018 in the *Earnest* matter.
[10] *See* Exhibit A, Pages 12-13.
[11] The FDA regulatory standard, found in 21 CFR 201.57(c)(6), states that "*a causal relationship need not have been definitely established*" to necessitate a label change; labeling must be revised for a clinically significant hazard as soon as there is reasonable evidence of a casual association with a drug.
[12] Rec. Doc. 10487 at 7-8.

5

[REDACTED PER PTO 50]

However, Dr. Madigan's opinions from *Earnest* are more specific than the "several years earlier" remark found at the end of the report. In Dr. Madigan's first deposition in the *Earnest* matter, he addresses his report and findings in more detail [REDACTED PER PTO 50]

---

[13] *See* Exhibit A, Page 20, Section 7, Paragraph 54.
[14] *See* Exhibit B, Deposition of Dr. Madigan dated December 7, 2018, Page 197, Lines 22-25, Page 198, Lines 1-10; Page 213, Lines 24-5, Page 214, Lines 1-18.
[15] *See* Exhibit B, Page 284, Lines 18-25, Page 285, Lines 1-25 (emphasis added).

6

[REDACTED PER PTO 50]

Further, this Court's *Daubert* opinion on Dr. Madigan is in contrast with her June 1, 2020 Order, which states, regarding Dr. Madigan:

> Rather than provide the Court with an unequivocal expert opinion that creates an issue of fact on the scope of Defendants' duty to warn, **Plaintiffs point the Court only to equivocal evidence in the record, all of which leaves the Court guessing**.[17]

---

[16] *See* Exhibit B, Page 309, Lines 2-25; Page 310, Lines 1-19 (emphasis added).
[17] Rec. Doc. 10487 at 8 (emphasis added).

By contrast, this Court's August 23, 2019 Order denying Defendants' motion to exclude Dr. Madigan states that "**Dr. Madigan's report, supplemented by his deposition testimony, leaves no guesswork for Defendants.**"[18] Specifically, this Court has previously made the following findings regarding Dr. Madigan:

- [REDACTED PER PTO 50]

- [REDACTED PER PTO 50]

- [REDACTED PER PTO 50]

- [REDACTED PER PTO 50]

- [REDACTED PER PTO 50]

---

[18] Rec. Doc. 8094 at 7 (emphasis added).
[19] *Id.* at 5-6 (citing *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291 at 1312–30, 1361–68 (N.D. Fla. 2018) (finding Madigan "amply qualified to offer biostatistical analysis" of study serving as basis for statistically significant association while at the same time finding him unqualified to offer opinion on medical causation)).
[20] *Id.* at 6-7.
[21] *Id.* at 9 (citing *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-md-2100, 2011 WL 6302573, at *17 (S.D. Ill. Dec. 16, 2011) (finding Madigan amply qualified to testify about his examination of FAERS database and the detection of safety signals; finding other experts similarly qualified, including one epidemiologist who considered data "on an aggregate scale, not on an individual scale")).
[22] *Id.* at 10 (emphasis added).

[REDACTED PER PTO 50]

Therefore, the record in this MDL, as previously noted by the Court, contains Dr. Madigan's report where he "pointed to safety signals that emerged in 2000 and 2008."[24] This finding is the "knowledge at the time the product left the manufacturer's control" regarding a causal association between Taxotere and permanent alopecia, as referenced in *Stahl v. Novartis Pharm. Corp.*, which was cited by the Court in her June 1, 2020 Order.[25] Additionally, Dr. Madigan specifically testified that his analysis shows that Taxotere causes irreversible alopecia. As the Court stated, "[Dr. Madigan] explains the statistical analysis he conducted and expressly states that he agrees with Sanofi's 2015 conclusion that the evidence supports a causal association between docetaxel and permanent alopecia."[26] Most importantly, the record supports the Court's August 23, 2019 finding that "Dr. Madigan's report, supplemented by his deposition testimony, leaves no guesswork for Defendants."[27] Whereas, this Court's June 1, 2020 finding that "[r]ather than provide the Court with an unequivocal expert opinion that creates an issue of fact on the scope of Defendants' duty to warn, Plaintiffs point the Court only to equivocal evidence in the record, all of which leaves the Court guessing"[28] is not consistent with the record or the facts in this MDL, which warrants reconsideration.

---

[23] Rec. Doc. 8094 at 10-11 (emphasis added).
[24] *Id.*
[25] Rec. Doc. 10487 at 5.
[26] Rec. Doc. 8094 at 6.
[27] *Id.* at 7.
[28] Rec. Doc. 10487 at 8.

Therefore, Dr. Madigan's prior *Earnest* report and testimony in the record provide that there exists "an issue of fact on whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's duty to warn."[29]

**B.  Dr. Madigan's reports in the *Thibodeaux* and *Kahn* cases are even more precise than the report in *Earnest*.**

The evidence just discussed is sufficient to deny Sanofi's sweeping request for summary judgment against thousands of plaintiffs. And yet, there is more. Since the first MDL trial involving Ms. Earnest, Dr. Madigan issued additional reports, which have been served on Defendants.[30] Dr. Madigan has clarified the issues even further, and his findings are more precise regarding the safety signals available to Sanofi prior to December 15, 2006.

Dr. Madigan's updated opinions provide meaningful information relevant to the issues presented in the 2006 "fencepost" motion. His opinions set forth in the *Thibodeaux* report have since been evaluated by Sanofi in two additional depositions, both parties cited to Dr. Madigan's opinions in their respective pleadings on the instant motion,[31] Plaintiffs specifically cited (but inadvertently failed to attach) his *Thibodeaux* report, and thus, the applicable factors are met and interests of fairness weigh strongly in favor of the Court allowing supplementation of the record with the report. The filing was assembled by a seasoned law firm in New Orleans, but as the Court knows, subsequently many firms in New Orleans were forced to work remotely because of a pandemic. As many firms in New Orleans adjusted to a difficult work environment, the fact that an exhibit was not attached was not something anyone realized; otherwise, the PEC would have

---

[29] Rec. Doc. 10487 at 9 (the Court's standard in the June 1, 2020 Order).
[30] *See* Exhibit C, Dr. Madigan's report dated October 20, 2019 in the *Thibodeaux* matter; *See* Exhibit D, Dr. Madigan's report dated March 23, 2020 in the *Kahn* matter.
[31] *See* Rec. Doc. 9231-1 at 10, Paragraph 38, "Plaintiffs' Response to Defendants' Statement of Facts and Plaintiffs' Counterstatement of Facts"; *See* Rec. Doc. 9231, Page 12, "Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (pre-2006)"; *See* Rec. Doc. 8977-2, Page 9, "Defendants' Memorandum of Law in Support of their Motion for Summary Judgment on the Claims of Plaintiffs' Whose Taxotere Treatment Started Before December 15, 2006."

10

immediately supplemented the record. Importantly, Sanofi addressed the report indirectly in its briefing, including in its opening papers, and it had a copy of (and deposed the witness on) the report. Sanofi did not argue that the report was missing, and it was seemingly unaware that it was missing. Sanofi, therefore, has suffered no prejudice and would suffer no prejudice from reconsideration. On reconsideration, the Court should address the report on the merits because these are not circumstances in which it would be appropriate to refuse to consider a report that the parties themselves addressed and didn't realize was not in the Court's hands, when the potential consequence is dismissal of hundreds of cases.

In his reports and depositions, Dr. Madigan testified that his analysis provides there is a causal relationship between docetaxel and permanent hair loss. Dr. Madigan further testified that as early as 2000, there was a safety signal that Sanofi should have heeded. Turning to Table 5 of his *Thibodeaux* and *Kahn* reports, Dr. Madigan specifically points out where the safety signals are. Dr. Madigan's report leaves the Court and the Defendants no guess work, as he points to specifics.

Paragraphs 47 and 48 of his *Thibodeaux* and *Kahn* reports, which were not in the *Earnest* report, together read:

> [REDACTED PER PTO 50]

---

[32] *See* Exhibit C, Pages 18-19 (*Thibodeaux* report).
[33] *See* Exhibit D, Pages 18-19 (*Kahn* report)
[34] *See* Exhibit C, Pages 18-19 (*Thibodeaux* report only).

11

[REDACTED PER PTO 50]

Thus, considering not only Dr. Madigan's findings, but the MDL's bellwether expert discovery record as a whole, the safety signals and notice prior to December 15, 2006 provide clear evidence of contested genuine issues on which a jury could find that Sanofi had sufficient knowledge to trigger its duty to warn prior to December 15, 2006.

---

[35] *See* Exhibit E, Deposition of Dr. Madigan dated November 14, 2019, Page 175, Lines 17-25, Page 176, Lines 1-2.
[36] *See* Exhibit E, Page 176, Lines 15-25, Page 177, Lines 1-6 (emphasis added).
[37] *See* Exhibit F, Deposition of Dr. Madigan dated April 9, 2020, Page 75, Lines 4-16 (emphasis added).

**II. A regulatory expert is not required for Plaintiffs to present the jury with genuine issues of material fact regarding whether Sanofi's duty to warn was triggered prior to December 15, 2006.**

Defendants' original motion and this Court's June 1, 2020 Order rely heavily on the trial testimony of Dr. David Kessler in the *Earnest* trial. Defendants' argument centers upon certain testimony of Dr. Kessler that the Defendants' duty to warn of permanent alopecia was solidified on December 15, 2006, the date of Dr. Scot Sedlacek's presentation at a major breast cancer conference. However, Dr. Kessler's testimony is not the "be-all and end-all" of the Plaintiffs' case, nor is the testimony of a regulatory expert required to defeat summary judgment on this issue. The Court's finding that Plaintiffs must "rebut Dr. Kessler's opinion"[38] is in error and warrants reconsideration. Plaintiffs are aware of no precedent binding in this District that requires testimony of a regulatory expert to establish company knowledge of an adverse event. Rather, such testimony can be offered by a biostatistician such as Dr. Madigan, supplemented by the testimony of other fact testimony regarding the underlying data that provides the basis for safety signals.[39]

The Court focuses on the *Stahl* decision, which found that a manufacturer has a duty to update warnings as new information about the risks of a product is discovered.[40] Plaintiffs must show that there is a genuine issue of material fact in dispute as to whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's duty to warn. The obligation to update a drug label is triggered when there is new safety information or analysis available to NDA holders that provides either, a) "some basis to believe there is a causal relationship" between docetaxel and the occurrence of irreversible alopecia,[41] or,

---

[38] Rec. Doc. 10487 at 7.

[39] *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 271 (5th Cir. 2002) (finding the expert testimony of a toxicologist relevant to the analysis of the adequacy of a drug label at the motion for summary judgment stage, despite not being an expert on warning labels).

[40] Rec. Doc. 10487 at 5.

[41] As provided in 21 CFR 201.57(c)(7).

b) "reasonable evidence of a causal association" between docetaxel and the occurrence of irreversible alopecia.[42] As detailed above, Dr. Madigan has provided credible testimony regarding safety signals emerging in the early 2000s. This certainly meets both the "some basis" and "reasonable evidence" standards for a sophisticated drug company, such as Sanofi, to be put on notice of the safety signal. At the very least, this question should properly be evaluated by the ultimate trier of fact.

The adequacy of a drug label is not an expert question or a legal question – it is a question of fact for the jury to decide under the laws applicable to each Plaintiff's claim.[43] Dr. Kessler's statements regarding the December 15, 2006 date, when read as a whole, clearly contemplate there may be a period of time prior to 2006. Additionally, a Plaintiff administered docetaxel sometime prior to December 15, 2006 is not required to call Dr. Kessler. Rather, said Plaintiff could call Drs. Madigan and Feigal, allowing the jury to decide "whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's duty to warn."[44]

### III. Reconsideration is both justified and warranted.

As stated previously, under Fed. R. Civ. P. 59(e), the Eastern District of Louisiana applies a four-factor analysis when considering motions for reconsideration.[45] In the present case, Plaintiffs assert that the first three factors apply and weigh in favor of granting this motion for reconsideration.

---

[42] As provided in 21 CFR 201.57(c)(6).
[43] *McNeil v. Wyeth*, 462 F.3d 364, 371, 373 (5th Cir. 2006) (reversing summary judgment order, finding it "inappropriate" as "reasonable minds can differ" on the adequacy of the drug label, and finding that defendant "Wyeth is free to argue, to a jury, its view of the proper weight to be given to these studies."
[44] Rec. Doc. 10487 at 9 (the Court's standard in the June 1, 2020 Order).
[45] *Foster*, 303 F. Supp. 3d at 479.

**A. This motion is necessary to correct a manifest error of fact or law.**

Specifically, the Court applied the following standard in her June 1, 2020 Order – the Plaintiffs are required to present "an issue of fact on whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's duty to warn."[46] It would be a manifest error of fact and law to rule that approximately 1,300 Plaintiffs have not met that burden given the Court's prior statements in its acceptance of Dr. Madigan as an expert in this MDL. As illustrated above, through both new and old expert reports and deposition testimony, Plaintiff's biostatistician, Dr. Madigan, has concluded that a safety signal emerged as early as 2000 that supported a causal association between docetaxel and permanent hair loss.

The Code of Federal Regulations requires drug manufacturers to update their drug labels when new safety information – such as the signal information that Dr. Madigan points out from prior to December 15, 2006 – becomes available establishing a causal relationship or association.[47] Dr. Madigan recognized certain safety signals in the existing data that date back to the years 2000 and 2003. A reasonably prudent manufacturer would have conducted appropriate analyses of the data, recognized the same safety signals Dr. Madigan did and drawn the conclusion that Taxotere is associated with permanent chemotherapy-induced alopecia. As a result of drawing such conclusions back in 2000 and/or 2003, a genuine issue of fact exists regarding whether the duty to warn should have triggered a change in warning.

---

[46] Rec. Doc. 10487 at 9.
[47] *See* 21 CFR 201.57(c)(6) for Warnings/Precautions, *inter alia*, "In accordance with 314.70 and 601.12 of this chapter, the labeling must be revised to include a warning about a clinically significant hazard as soon as there is reasonable evidence of a causal association with a drug; a causal relationship need not have been definitely established."; *See also* 201.57(c)(7) for Adverse Events, *inter alia,* "For purposes of prescription drug labeling, an adverse reaction is an undesirable effect, reasonably associated with use of a drug…"

15

**B. Plaintiffs present newly discovered or previously unavailable evidence.**

The second factor at the motion for reconsideration stage – "newly discovered or previously unavailable evidence" – also weighs in favor of granting Plaintiffs' motion. As detailed above, while the initial report of Dr. Madigan was available for the Court to review, which contains enough detail to create a genuine issue of material fact, Dr. Madigan's subsequent report and testimony in the *Kahn* case was not available. Dr. Madigan's report in the *Kahn* case was completed on March 23, 2020, and his deposition was taken on April 9, 2020. [REDACTED PER PTO 50]

Additionally, hundreds of Plaintiffs should not be faulted for Dr. Madigan's report being cited but inadvertently not attached to the opposition to Defendants' motion for summary judgment on Plaintiffs' pre-December 15, 2006 cases. Under extraordinary circumstances, a court may entertain a motion for reconsideration in the light of evidence not in the summary judgment record.[49] The Fifth Circuit provides several factors to consider when a party seeks to upset a summary judgment by producing additional evidence, two of which are directly pertinent, i.e., "(2) the importance of the omitted evidence to the moving party's case . . . and (4) the likelihood that

---

[48] *See* Exhibit F, Page 75, Lines 4-16 (emphasis added).
[49] *See, e.g., ICEE Distributors,* 445 F.3d at 847–48; *Durham v. Allstate Vehicle & Prop. Ins. Co.*, No. CV H-17-1752, 2019 WL 764581, at *2 (S.D. Tex. Feb. 4, 2019) (finding the non-moving party was not prejudiced by a failure of the movant to attach evidence to a motion for summary judgment, as the "summary judgment evidence was available and readily accessible on the electronic filing system").

the nonmoving party will suffer unfair prejudice if the case is reopened."[50] It is clear the failure to attach the *Thibodeaux* report, while referencing the report, was a clerical oversight on the part of counsel; however, the report is undoubtedly crucial to the claims of approximately 1,300 Plaintiffs. Counsel's administrative oversight should not result in the demise of over 1,000 Plaintiffs' cases. Such result would be patently unfair. Furthermore, these *new* opinions presented by Dr. Madigan were cited by both parties in their briefing on the 2006 fence post motion, and extensively examined through hours of deposition testimony taken by defendants, which only strengthens the opinions the Court located in the *Earnest* report and testimony of Dr. Madigan.

    **C. This motion is necessary in order to prevent manifest injustice.**

Lastly, this motion for reconsideration satisfies the third factor of preventing manifest injustice. It makes sense from an efficiency standpoint in an MDL to address these common portions of the June 1, 2020 ruling at one time, in an omnibus fashion, rather than piecemeal after individual case dismissals and final judgements contemplated by the order are entered. Additionally, in this MDL the Court evaluated significant *Daubert* and dispositive motion practice, and the Court's analysis of these very issues resulted in acceptance of expert opinion testimony that "need not pinpoint the exact date by which Sanofi should have identified a safety signal […] to be helpful to the jury."

Unlike in an individual case, the Court has entertained an omnibus motion involving approximately 1,300 MDL plaintiffs' claims under numerous states' substantive law. In doing so, there is a fairness aspect of the Court considering prior documents that are a matter of record in the MDL's bellwether process designed to evaluate common pretrial issues – such as the expert reports produced by the plaintiffs in connection with the *Earnest, Thibodeaux*, and *Kahn* matters.

---

[50] *Lavespere*, 910 F.2d 167.

**Conclusion**

While there may indeed be a "cut-off" date for Sanofi's knowledge prior to December 15, 2006 before which there are no genuine issues in dispute; however, that date is not December 15, 2006. Plaintiffs previously provided sufficient evidence demonstrating that Sanofi was aware of the results of Dr. Scot Sedlacek's work prior to publication on December 15, 2006, in addition to numerous safety signals and adverse reports. Sanofi even argued to the jury that they were warning of the risk of persistent hair loss in 2001, through the *Nabholtz* publication.

Plaintiffs further have presented sufficient and *Daubert*-satisfactory biostatistical evidence showing notice before December 15, 2006 of a safety signal for permanent alopecia with Taxotere sufficient to put the question of constructive knowledge before a jury. Specifically, Dr. Madigan's analyses presented in the *Earnest*, *Thibodeaux*, and *Kahn* bellwether matters show that, at a minimum, there is a genuine factual issue regarding what conclusions Sanofi should have drawn prior to December 15, 2006.

Accordingly, Plaintiffs respectfully request that the Court reconsider its ruling in light of the evidence set forth in the cited expert reports, testimony, and evidence and find that genuine factual disputes exist that preclude summary judgment.

Dated: June 29, 2020                                    Respectfully submitted,

*/s/ Christopher L. Coffin*                             */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                          Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                        Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505                         GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                            6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                                   Los Angeles, California 90045
Fax: (504) 355-0089                                     Telephone: 510-350-9700
ccoffin@pbclawfirm.com                                  Facsimile: 510-350-9701
                                                        kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                                    *Plaintiffs' Co-Lead Counsel*


/s/M. Palmer Lambert                                             /s/Dawn M. Barrios
M. Palmer Lambert (#33228)                                       Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                                        BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                                         701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street                          New Orleans, LA 70139
New Orleans, LA 70163-2800                                       Phone: 504-524-3300
Phone: 504-522-2304                                              Fax: 504-524-3313
Fax: 504-528-9973                                                barrios@bkc-law.com
plambert@gainsben.com
*Plaintiffs' Co-Liaison Counsel*                                 *Plaintiffs' Co-Liaison Counsel*


## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews                                                     Daniel P. Markoff
Andrews & Thornton                                               Atkins & Markoff Law Firm
4701 Von Karman Ave., Suite 300                                  9211 Lake Hefner Parkway, Suite 104
Newport Beach, CA 92660                                          Oklahoma City, OK 73120
Phone: (800) 664-1734                                            Phone: (405) 607-8757
aa@andrewsthornton.com                                           Fax: (405) 607-8749
                                                                 dmarkoff@atkinsandmarkoff.com


J. Kyle Bachus                                                   Abby E. McClellan
Bachus & Schanker, LLC                                           Stueve Siegel Hanson LLP
1899 Wynkoop Street, Suite 700                                   460 Nichols Road, Suite 200
Denver, CO 80202                                                 Kansas City, MO 64112
Phone: (303) 893-9800                                            Phone: (816) 714-7100
Fax: (303) 893-9900                                              Fax: (816) 714-7101
kyle.bachus@coloradolaw.net                                      mcclellan@stuevesiegel.com


Lawrence J. Centola, III                                         Karen Barth Menzies
Martzell, Bickford & Centola                                     Gibbs Law Group LLP
338 Lafayette Street                                             6701 Center Drive West, Suite 1400
New Orleans, LA 70130                                            Los Angeles, California 90045
Phone: (504) 581-9065                                            Phone: 510-350-9700
Fax: (504) 581-7635                                              Fax: 510-350-9701
lcentola@mbfirm.com                                              kbm@classlawgroup.com


Christopher L. Coffin                                            David F. Miceli
Pendley, Baudin & Coffin, L.L.P.                                 David F. Miceli, LLC
1100 Poydras Street, Suite 2505                                  P.O. Box 2519

| | |
|---|---|
| New Orleans, Louisiana 70163<br>Phone: (504) 355-0086<br>Fax: (504) 355-0089<br>ccoffin@pbclawfirm.com | Carrollton, GA 30112<br>Phone: (404) 915-8886<br>dmiceli@miceli-law.com |
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
M. PALMER LAMBERT