UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740<br><br>SECTION "H" (5) |
| THIS DOCUMENT RELATES TO<br>*June Phillips*<br>Case No. 2:16-cv-15397 | HON. JANE TRICHE MILAZZO |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TAX COSTS [REC. DOC. 10641] IN THE MATER JUNE PHILLIPS VS SANOFI**

Plaintiff June Phillips, a breast cancer survivor, filed her products liability Complaint against mover-Defendants Sanofi-Aventis U.S., LLC and Sanofi US Services, Inc. ("Sanofi") in the instant MDL, eventually being selected as a potential Bellwether case. Ms. Phillips underwent Phase I discovery, was deposed, and answered discovery pleadings.

Defendant Sanofi filed a Motion for Summary Judgment alleging that plaintiff's case should be dismissed (Doc. 9299). The matter was briefed, and oral argument was held. This Court held that Ms. Phillips cannot establish the essential element of causation in her case. That matter is currently on appeal to the United States Court of Appeals for the Fifth Circuit. Because the Defendant prevailed in the original hearing, Defendant filed a Motion to Tax Costs, and now seeks the sum of $31,951.14. All but $20.00 of that sum is the total of seven depositions taken in this matter - as well a seemingly unseasonably inflated amount of $14,373.31for medical records.

Plaintiff objects to the awarding of cost in this matter.

**Law and Argument**

In *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006), the Fifth Circuit noted "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party", including: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.

Here, the Defendant does not assert that Ms. Phillips brought her suit in bad faith. To be sure, good intent on its own is not justification to deny the awarding of costs to a prevailing party. ''[T]he mere fact that a suit may have been brought in good faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant.'' *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir.1999).

But when every some (or all) of the *Pacheco* factors cited above are present, this Court may deny or reduce costs. The decision whether to award costs ultimately lies within the sound discretion of the district court. See *Taniguchi v. Kan Pacific Saipan, Ltd*., 566 U.S.560, (2012).

First, June Phillips is not a wealthy woman. As she testified in her deposition, she is retired. She is ill equipped to pay costs in that amount.

Second, while the exact parameter of the conduct which comprises "misconduct of the prevailing party" is not well defined by the jurisprudence, but there are some analogies here. The issue in June Phillips' warning/causation question involved a weighing of Ms. Phillips' interactions with her oncologist - and that oncologist's opinion as to chemotherapy regimes available to her at a specific point in time, and the Court's view of the guidelines issued by the National Comprehensive Cancer Network ("NCCN"). But there was no finding in the order dismissing plaintiff's case that Plaintiff should have known of that the Court would

focus on that guideline.    So while this Honorable Court found that even with an adequate warning from Sanofi, Plaintiff and Dr. Sonnier would have decided on a Taxotere regimen to treat her cancer, the  filing of Ms. Phillips' case (and her belief that she was damaged by a drug), was based upon the unassailable truth that her filing was predicated upon the fact that the defendants failed to notify health care professionals of that risk of hair loss risk, and so that information was not in the public sphere in the time frame that Ms. Philips was advised of the risks of chemotherapy.   The Defendant failed to disclose risks that it knew to be associated with its product despite a duty to warn of those very risks.   And while that fact alone was insufficient to save plaintiff's case from dismissal, it can be  fairly  said that a  primary reason Ms. Phillips took the drug that injured her hair was due to Sanofi's misconduct in not advising her Oncologist, Dr. Sonnier, of the risk of permanent hair loss arising from Taxotere use.

Third, this was a close and difficult legal issue.  There was arguably facts and law on both sides supporting a dismissal or a denial.    This was not a case where the result was crystal clear absent expert testimony.   This was a fact-based case where the issue boiled down to the court weighing the testimony of an expert oncologist interpreting ever changing NCCN guidelines at a specific point in time.   Again, that ruling is in dispute and on appeal.

Fourth, Ms. Phillips' case provided a substantial benefit conferred to the public.  As in all bellwether situations, the benefits (and costs) of a ruling are not the same as in a "one-off"

3

case. As a potential bellwether, Ms. Phillips and her action provided guidance to the parties and the Court on issues relevant to <u>every</u> Louisiana plaintiff in the MDL. Further, the discovery aided the parties in defining issues pertinent to the MDL as a whole.

This fact is buttressed by the fact that the depositions were unusually expensive, being as they were undertaken under rules set up for bellwether candidates. As a bellwether, providers were deposed that would not have been deposed in an individual case. Moreover, absent the bellwether aspect, it is doubtful that the need to video record every provider would have been so pronounced. In a "one-off" case the attention to the minutiae of all providers would not have resulted in the expense and costs associated with a bellwether case.

As to the assessment of costs in this, a complex litigation setting, the Manual for Complex Litigation (Fourth Edition, 2004) provides some guidance. This Court's general authority to allocate costs is discussed in Chapter 11, governing Pre-trial discovery procedures. Section 11:443 states:

"Cost allocation may also be an appropriate means to limit unduly burdensome or expensive discovery. Rule 26's purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of particular discovery against its benefit. Thus, where the parties' resources are grossly disproportionate, the judge can condition discovery that would be unduly burdensome on one of them upon a fair allocation of costs. "

Considerations of cost allocation are not based on relative resources alone. Rule 26(b)(2)(iii) allows the court to allocate costs based on considerations of benefits, burdens, and overall case efficiency. Courts have articulated as many as eight factors relevant to cost allocation:

- the specificity of the discovery requests;
- the likelihood of discovering critical information;
- the availability of such information from other sources;
- the purposes for which the responding party maintains the requested data;
- the relative benefit to the parties of obtaining the information;
- the total cost associated with the production;
- the relative ability of each party to control costs and its incentive to do so; and
- the relative resources available to each party;

Here, June Phillips subjected herself to the burdens of bellwether discovery not experienced by over 99% of the MDL plaintiffs, while cooperating fully with the Court and its orders. Many of the eight factors referenced above also apply to issues of cost allocation in an MDL. Ms. Phillips case expenses were not expended solely for the benefit of her individual case by her local counsel. Rather, Ms. Phillips was one case among a handful of bellwether cases selected to represent the issues and facts of similarly situated plaintiffs in MDL-2740, with an express purpose of utilizing those bellwether selections to and identify and resolve common questions of law and fact pertaining to the MDL.

Had she been a post-bellwether remand case, she would bear the cost of the "trial package" of depositions and exhibits prepared by the PSC for use in the potentially thousands of remand cases, with far less emphasis on video depositions of her every provide. Quite simply, the incentive to spend the costs spent here would not have been present; discovery would not

have been so exhaustive and expensive as is the case of a bellwether plaintiff, who is under the microscope of a process where a single case can have ramifications costing hundreds of millions of dollars in an MDL settlement. It is unlikely that Ms. Phillips' remand case would have had so many depositions. Nor would a single case have had so many of those depositions videotaped, raising the cost of the litigation. Nor would they have been as long. While PTO-9 was implemented for the purposes of the MDL bellwether process, with many valid reasons going into the approval of the order, it cannot be said to have shortened the deposition process. Stating "object to form" simply does not stop multiple asked and answered questions. Simply put, the very status of Plaintiff as a bellwether increased the costs associated with discovery, and those more expensive discovery plans and procedures were set up to benefit the entire MDL. As such, all or most of the increased costs for bellwether and Common PSC/Common Defense purposes should not be assessed to one plaintiff.

It is respectfully suggested that ordering June Phillips to personally bear the full and sole costs of discovery, when that discovery participation was entered into in order to aid everyone in the MDL, would be inequitable. As the Manual for Complex litigation states in section 22:315:

"**22.315 Test Cases**

If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the

available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases.

<u>Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.…"</u>

June Phillips was selected to act as a bellwether to assist the Court and the Parties in the resolution of those common issues.  Among those issues common to the MDL are issues of statute of limitation and learned intermediary defenses as applied to the facts of the several representative bellwether cases.  This Court has the inherent authority to allocate MDL bellwether case costs to common benefit or other cost sources.

Finally, the fifth the last *Pacheco* factor, the prevailing party's enormous financial resources, is self-evident.  Sanofi will not be unduly burdened by the amount of costs expended in this matter.  This Court has the authority to prevent that heavy financial load of common issue costs falling solely on an individual bellwether plaintiff's shoulders, especially when that plaintiff is not equipped to bear them financially.

## **CONCLUSION**

The fact that there is a timely appeal of the prescription decision suggests that a ruling on the instant costs assessment motion should be put off until the Louisiana Supreme Court via request for certification and /or United States Fifth Circuit rules on the matter.  Judicial economy would be well served, and this is not a case where the prevailing party will suffer any financial hardship by a delay.

Here, June Phillips filed her case in good faith. The non-prevailing plaintiff's personal financial is that of a retired senior citizen; the prevailing Defendant has vast financial resources. Plaintiff June Phillips, by virtue of her bellwether representative discovery efforts, conferred a substantial benefit to the public and the MDL. This Court is vested with the discretion to allocate costs fairly and equitably. This Court's discretion is extra wide in a matter such as this by virtue of its status as an MDL Transferor Court, charged with resolving many complex issues of law and fact in an MDL context.

It would seem to be an arguably unwise policy to encourage prospective MDL bellwethers to participate in bellwether discovery, at least when their reward for accepting that task is that they alone among the thousands of MDL plaintiffs will suffer personal financial hardship in a magnitude far in excess of similarly situated plaintiffs.

Nor is this hearing the best setting to consider these issues, or the proper time. As many of these issues involve the resolution of legal issued implicating common benefit questions, it would seem better served for the instant costs allocation to be assessed <u>at the end of the MDL process</u> when the PSC and all parties can address these common benefit cost issues. Moreover, Phillips' successful appeal could moot the costs motion entirely. And that successful appeal would not eliminate Sanofi's opportunity to recover costs.

Given the totality of the circumstances, it is respectfully suggested that this Court:

1) allocate the costs of the non-prevailing party June Phillips as MDL Common Benefit

costs at the time when those costs are paid at the conclusion of the MDL; and/or 2) disallow any costs in the June Phillips matter that serve to resolve the common issues of the MDL; and/or 3) that this Court use its equitable powers and vast discretion to reduce the assessed costs to an amount that considers the *Pacheco* factors, and does not pose a personal financial hardship to plaintiff.

                Respectfully submitted,

                /s Richard L. Root
                Richard L. Root La# 19988
                Betsy Barnes La# 19473
                Morris Bart, LLC
                601 Poydras Street
                24th Floor
                New Orleans, LA 70130
                Phone: (504) 525-8000
                Fax: (504) 599-3392
                Email: rroot@morrisbart.com
                bbarnesl@morrisbart.com
                Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

                /s/Richard L. Root