UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Dora Sanford, No. 17-9417 | ) ) ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment Based on the Statute of Limitations (Doc. 9508). While the parties initially requested oral argument on the Motion, they later agreed oral argument was unnecessary given the limitations that have arisen due to the COVID-19 pandemic. For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for February 1, 2021. Plaintiff Dora Sanford is one of several "trial pool plaintiffs," meaning her case could be

---

[1] Docetaxel is the generic version of Taxotere.

selected to be tried as a bellwether. For this reason, the parties have engaged in extensive discovery to prepare her case for a possible trial.

Plaintiff Sanford was diagnosed with breast cancer in March 2013. She underwent a double mastectomy on June 20, 2013, and then she began a chemotherapy regimen. In August and September 2013, she received three infusions of a drug called Adriamycin, and she first experienced hair loss. After these initial infusions, she received a combination of three drugs, one of which was docetaxel. These combination infusions began in October 2013 and ended on January 21, 2014. After this date, she continued to take only Herceptin, a protein blocker, to prevent her cancer regrowth. She took Herceptin until September 2014.

Plaintiff alleges that her hair never grew back, and she has worn a wig daily since 2013. In 2016, she saw a television advertisement for a lawsuit against the manufacturers of Taxotere and docetaxel. After seeing the ad, she contacted the law firm. On August 8, 2016, she executed a release requesting that her chemotherapy records be provided to her attorneys. On October 10, 2016, counsel received her records. Plaintiff filed her complaint on September 21, 2017, more than one year after seeing the TV ad and executing the release.

In the instant Motion, Defendant Hospira moves for summary judgment against Sanford, arguing that her claims have prescribed. Defendant argues that Sanford took no action to investigate the cause of her hair loss until 2016. Defendant emphasizes that even after Sanford contacted counsel in 2016, another thirteen months passed, if not more, before she filed her complaint. Defendant asks the Court to dismiss her case.

Referencing Case Management Order 14C ("CMO 14C"), Defendant also asks the Court to allow Hospira to de-designate a trial pool plaintiff. Hospira

avers that the purpose of CMO 14C is to avoid spending resources on cases that are plainly ineligible for trial. In relevant part, CMO 14C provides:

> If a Trial Pool case is determined to be ineligible for the Trial Pool as a result of venue or product identification information that was known by a party but not disclosed to the other party prior to the case being selected for the Trial Pool, the party who did not receive this information may replace the case if notified of the information within thirty (30) days of selection. If notified more than thirty (30) days after selection, the party who did not receive this information may de-designate a Plaintiff from the Trial Pool.[2]

Hospira explains that upon discovering Sanford's release for records in February 2020, Hospira brought it to the attention of the Plaintiffs' Steering Committee (the "PSC"). The PSC refused to remove Sanford from the trial pool, requiring the parties to continue discovery and motions practice in Sanford's case. Hospira now argues that because the PSC had information making clear that Sanford's case was prescribed and thus ineligible for trial, Hospira should be permitted to de-designate a trial pool plaintiff of its choice.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] When

---

[2] Doc. 6789.
[3] FED. R. CIV. P. 56.
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

considering a summary judgment motion, the Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[5]

## LAW AND ANALYSIS

Under Louisiana Civil Code article 3492, the prescriptive period for products liability claims is one year.[6] Generally, the period begins to run from the day the injury or damage is sustained.[7] This Court has recognized that, on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent if it persists six months after completing chemotherapy.[8] Because Sanford finished chemotherapy with docetaxel on January 21, 2014, her injury manifested itself six months later on July 21, 2014. Sanford did not file her lawsuit until September 21, 2017, more than three years after she suffered her injury. Accordingly, on the face of her pleadings, her case is prescribed.

Hospira argues that contra non valentem does not apply here. Hospira emphasizes that beginning in 2013, Sanford began wearing a wig daily. Despite this, Sanford did nothing to investigate her claim, according to Hospira. While Sanford had conversations with her doctors about her hair loss, Defendants assert that these conversations did not concern the cause of the hair loss. Lastly, Defendants note that, per her own testimony, Sanford first believed that docetaxel could have caused her injury when she saw the

---

[5] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).
[6] LA. CIV. CODE art. 3492. *See also In re:* Xarelto (Rivaroxaban) Prods. Liab. Litig., MDL No. 2592, 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).
[7] Carter v. Matrixx Initiatives, Inc., 391 F. App'x 343, 344 (5th Cir. 2010).
[8] Doc. 9110. Notably, in her Short Form Complaint, Sanford specifically adopted the allegations of the Second Amended Master Complaint. Doc. 1 in No. 2:17-cv-9417.

attorney advertisement in 2016. Still, the evidence makes clear that she did not file suit until more than a year after seeing the ad.

In response, Plaintiff offers several reasons for why she had difficulty identifying her injury. She emphasizes that her healthcare providers warned her that Adriamycin would cause complete hair loss. Because of this, she initially attributed her hair loss to Adriamycin. Plaintiff further emphasizes that she was told her hair loss would be temporary, and she therefore kept hoping it would regrow. She points to testimony from her healthcare providers saying that they were unaware of other patients who experienced permanent alopecia from docetaxel. Additionally, Sanford notes that in September 2014, she was diagnosed with medullary thyroid cancer. On January 16, 2015, she began taking the hormone replacement drug Synthroid, which is also associated with hair loss. Lastly, Sanford testified that she joined a breast cancer survivors' group in 2015, and based on the experience of her fellow survivors, she believed her hair, too, would regrow.

Sanford argues that once she had notice of her injury in 2016, after seeing the attorney advertisement, she conducted a reasonable investigation. She called the law firm from the ad and turned the investigation over to counsel. Sanford explains that on October 10, 2016, her counsel received a response to a request for medical records, and it was on this date that they realized Sanford did in fact take docetaxel produced by Hospira.[9] According to Plaintiff, this date was "the very earliest counsel and Mrs. Sanford could have been placed on notice a claim might exist."[10] Plaintiff avers that because she filed her lawsuit within one year of this date, her claim is timely.

---

[9] Doc. 9918 at 2.
[10] *Id.* at 19.

5

"If the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred."[11] The doctrine of contra non valentem "provides some grace for those plaintiffs who are unaware that their injury was caused by a tort."[12] The doctrine states that prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[13] This occurs "when the plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury."[14]

"There is no requirement that a patient be informed by an attorney or physician of a possible [claim] before prescription begins to run."[15] Rather, prescription begins to run "when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim."[16] Accordingly, to toll prescription, a plaintiff who suspects that something is wrong must act reasonably to discover the cause of the problem; otherwise, contra non valentem will not apply.[17] "The ultimate issue is the reasonableness of the [plaintiff's] action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct."[18]

This Court agrees with Defendant Hospira that contra non valentem cannot save Sanford's claims. The Court need not address actions or lack of

---

[11] Hoerner v. Wesley-Jensen, 684 So. 2d 508, 510 (La. App. 4 Cir. 1996).
[12] *Xarelto*, 2017 WL 4517287, at *2.
[13] *Id.* (quoting Bailey v. Khoury, 891 So. 2d 1268, 1276 (La. 2005)) (internal quotations omitted).
[14] *Id.*
[15] *Id.* (quoting Breaux v. Danek Med., No. 95-1730, 1999 WL 64929, at *6 (E.D. La. Feb. 4, 1999)) (internal quotations omitted).
[16] Luckett v. Delta Airlines, Inc., 171 F.3d 295, 300 (5th Cir. 1999).
[17] *See* Chevron USA, Inc. v. Aker Mar., Inc., 604 F.3d 888, 894 (5th Cir. 2010).
[18] Campo v. Correa, 828 So. 2d 502, 511 (La. 2002).

action undertaken by Plaintiff prior to seeing the 2016 attorney advertisement. When Sanford saw the ad and executed the release for her medical records, prescription was undoubtedly running. At that time, she had more than enough notice to call for an inquiry about her claim. Still, Sanford did not file her lawsuit until more than one year after seeing the ad and executing the release.

Plaintiff argues that it was only after receiving her medical records that her counsel knew she was in fact administered docetaxel manufactured by Hospira. Because of this, Plaintiff avers that prescription began to run upon receipt of the records in October 2016. Plaintiff misunderstands the doctrine of contra non valentem. As the Court has stated, at the very latest, when Sanford saw the ad in 2016, she had notice of her claim, and this triggered her duty to investigate. After this point, the law allowed her one year to discover enough details about her claim to file her lawsuit. Indeed, roughly two months after executing her release, Sanford had the details she needed to file her claim. Under Louisiana prescription law, she then had another ten months to timely file her claim. Yet she failed to do so, and she provides no explanation for this failure. As Defendants state, the revelation Sanford had on October 10, 2016, is not a basis for extending prescription but instead part of a routine investigation for which the law accommodates.[19]

Plaintiff emphasizes that in 2018, Hospira asked the Court to dismiss any case that a plaintiff filed without first collecting production identification

---

[19] *See* Renfroe v. State ex rel. Dep't of Transp. & Dev., 809 So. 2d 947, 953–54 (La. 2002). In *Renfroe*, a car accident case, the plaintiff initially sued a state agency rather than the local entities that owned the road at issue. *Id*. at 949. The Louisiana Supreme Court held that the amended complaint naming the local entities was prescribed because "[t]he fact that the portion of the roadway was owned by some party other [than] the [state] was 'reasonably knowable' by the plaintiff within the prescriptive period." *Id*. at 954.

information. Hospira explicitly argued that "[i]n any lawsuit, Plaintiffs are obligated to determine whether a factual basis exists to sue a particular defendant prior to filing suit."[20] This Court sees no inconsistency between the stance Hospira took in 2018 and the stance Hospira takes now. Clearly, Hospira believes that, during the one-year prescriptive period, a plaintiff should undertake an investigation to determine which manufacturer(s) she should sue. There is support in the law for this position.[21]

Plaintiff argues that there is an issue of fact on whether Hospira prevented Sanford from learning of her cause of action. Indeed, where a defendant "has done some act effectually to prevent the plaintiff from availing himself of his cause of action," the doctrine of contra non valentem prevents the running of the prescriptive period.[22] The only evidence Plaintiff references, however, is the fact that Hospira did not change its label to warn of permanent hair loss until September 2017. Plaintiff avers that because Hospira delayed sharing information about permanent hair loss, Sanford was prevented from availing herself of her cause of action. Plaintiff, however, cites no law to support her proposition that prescription is tolled on a failure to warn claim until the defendant issues an adequate warning. Indeed, this Court has previously rejected this circular argument in its prior rulings.

Given that Plaintiff has not created an issue of fact on contra non valentem, the Court grants Hospira's Motion. The Court, however, denies Hospira's request to de-designate a trial pool plaintiff. The Court will not punish the PSC because Sanford would not agree to dismiss her case. Further,

---

[20] Doc. 9918 at 20.
[21] *See Renfroe*, 809 2d at 954 (finding contra non valentem does not apply where it was reasonably knowable, within the prescriptive period, which entity plaintiff should have sued).
[22] Morgan v. Entergy New Orleans, Inc., 234 So. 3d 113, 116 (La. App. 4 Cir. 2017).

8

the de-designation procedures in CMO 14C apply only when a plaintiff unilaterally attempts to remove her case from the trial pool without good cause. CMO 14C does not authorize de-designation upon the granting of a motion for summary judgment.

## CONCLUSION

Accordingly, for the foregoing reasons, the Motion for Summary Judgment Based on the Statute of Limitations (Doc. 9508) is **GRANTED**. Plaintiff Dora Sanford's case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 17th day of July, 2020.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE