**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

**THIS DOCUMENT RELATES TO:
ALL CASES**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR ENTRY OF AN ORDER REQUIRING PROOF OF DIAGNOSIS**

Every Plaintiff in this MDL claims to have permanent chemotherapy induced alopecia ("PCIA") caused by Taxotere (docetaxel). *See* Second Am. Master Compl. ¶¶ 5-7, 181, 231, 247. Among the many elements to be proven, every Plaintiff has the burden to prove a diagnosis of that specific injury by that specific cause.

Yet, nearly four years into this MDL (after the Court has decided more than a dozen *Daubert* and dispositive motions and presided over a bellwether trial with extensive expert testimony), more than 80 percent of Plaintiffs have no medical evidence of their alleged injury or causation. Indeed, of the 12,223 active Plaintiffs with fact sheets, some 10,472 admit to *never receiving a diagnosis of their claimed injury*. Those 10,472 Plaintiffs include multiple trial-pool Plaintiffs (including the next trial Plaintiff, Elizabeth Kahn), meaning significant time and resources are being spent on cases without a diagnosis. Plaintiffs' failure to provide proof of this critical piece of each of their claims after years of litigation has prevented both sides and the Court from meaningfully evaluating the case inventory and has frustrated potential resolution. Under these circumstances, the Court should exercise its authority under Rule 16(c)(2)(L) and enter an order requiring each Plaintiff to:

(1) submit evidence of a medical diagnosis of PCIA caused by Taxotere (docetaxel) (either appropriate medical records or a physician's certification), *or*

(2) state that Plaintiff does not intend to pursue such a diagnosis.

A proposed order is attached as Exhibit 1. Such order would "promote the just and efficient conduct" of cases in this MDL (28 U.S.C. § 1407), streamline the litigation, conserve judicial and party resources by avoiding additional expenditures on cases with no diagnosis, and otherwise advance efforts to resolve the cases.

## LEGAL STANDARD

Under Rule 16, the Court may "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). Consistent with the Court's discretion under Rule 16, orders requiring proof of injury and causation are "routinely used by courts to manage mass tort cases." *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000)), *aff'd*, 388 F. App'x 391 (5th Cir. 2010); *see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017); David F. Herr, Ann. Manual for Complex Lit. § 11.34 (4th ed. 2020) (noting that such orders are "widely used in mass torts to isolate spurious claims").

Although orders requiring such proof (sometimes referred to as *Lone Pine* orders) may vary in scope, they generally require plaintiffs "to make a ***prima facie showing of injury and causation*** by providing facts of an individual plaintiff's exposure to alleged toxic substances, combined with expert medical testimony supporting the claims of injury and causation by the alleged toxic substances." *Trujillo v. Ametek, Inc.*, No. 15-cv-1394, 2016 WL 3552029, at *1 (S.D. Cal. June 28, 2016) (emphases added). These orders allow litigants and courts "to identify and cull potentially meritless claims and streamline litigation in complex cases involving numerous

claimants[.]"  *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 743 (quoting *Baker v. Chevron USA, Inc.*, No. 05-cv-227, 2007 WL 315346, at *1 (S.D. Ohio Jan. 30, 2007)).

The Fifth Circuit "has looked favorably upon *Lone Pine* case management orders, recognizing they may be employed to 'handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim.'"  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2016 WL 614690, at *7 (E.D. La. Feb. 16, 2016) (citing *Acuna*, 200 F.3d at 340–41 (5th Cir. 2000)); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n.2 (5th Cir. 2006).

Such orders are particularly useful in pharmaceutical product MDLs, where the volume of claims and complexity of allegations raise formidable case-management challenges to case assessment and resolution.  *See, e.g.*, *In re Vioxx*, 557 F. Supp. 2d at 743.  Pharmaceutical MDL courts routinely enter orders requiring plaintiffs to show exposure to the drug, a medically diagnosed injury, and/or proof of medical causation:

- Judge Fallon, in ***In re Xarelto***, required plaintiffs to "provide records of proof of use and proof of injury within 90 days from the date Plaintiff's complaint was filed."  Pre-Trial Order No. 27 at ¶ 2, *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592 (E.D. La. Apr. 22, 2016).  This order was entered approximately a year and a half into the MDL.  *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1403 (J.P.M.L. 2014).

- Judge Fallon, in ***In re Vioxx***, required plaintiffs to file reports from medical experts "attesting (i) to a reasonable degree of medical probability that the Plaintiff or Claimant suffered an injury and (ii) that Vioxx caused the injury."  557 F. Supp. 2d at 743.  This Court entered that Order after the MDL had proceeded for three years.  *Id.* at 744.

- Two years into the ***In re Abilify*** MDL**,** the Northern District of Florida ordered plaintiffs to provide medical diagnosis, certification, or other records of gambling disorder allegedly caused by Abilify.  *See* Order at 1–2 and Suppl. Pl. Profile Form at § 6, *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 16-md-2734 (N.D. Fla. Aug. 31, 2018) (Docs. 986, 986-1); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 232 F. Supp. 3d 1342 (J.P.M.L. 2016).

3

- In *In re Avandia*, the court required plaintiffs to submit physician certification of Avandia usage and injury, citing as the "Court's overriding concern … the need to objectively identify which of the many thousand plaintiffs have injuries which can credibly be attributed to Avandia usage." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, MDL. No. 1871, 2010 WL 4720335, at *1 (E.D. Pa. Nov. 15, 2010). Judge Rufe entered this Order three years into the MDL. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 528 F. Supp. 2d 1339, 1341 (J.P.M.L. 2007).

- The court in *In re Rezulin* required plaintiffs to submit medical reports on the injuries that the medical expert opined were caused by Rezulin after the MDL had proceeded for more than four years. *See In re Rezulin Prod. Liab. Litig.*, MDL No. 2843, 2005 WL 1105067, at *1–2 (S.D.N.Y. May 9, 2005); *see In re Rezulin Prods. Liab. Litig.*, No. 1348, 2004 WL 1965587, at *1 (J.P.M.L. Aug. 19, 2004) (citing original unpublished transfer order entered on June 9, 2000).

- Less than three years into the *In re Baycol* MDL, Judge Davis required plaintiffs to submit case-specific expert reports that included an "explanation of the bases of the attestation that Baycol caused the plaintiff to suffer injuries or damages and a description of the specific injuries or damages suffered." *In re Baycol Prod. Liab. Litig.*, MDL No. 1431, 2004 WL 626866, at *1 (D. Minn. Mar. 18, 2004); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001).

For the same reasons recognized in these MDLs, and as previously recognized by courts in this District in *In re Xarelto* and *In re Vioxx*, the time is right for this Court to enter an order requiring the remaining Plaintiffs to submit expert proof that they have PCIA caused by Taxotere (docetaxel).

## ARGUMENT

### I. The Proposed Order Is Necessary.

This Court should enter Defendants' proposed order for three reasons. First, Plaintiffs cannot prove that they have PCIA caused by Taxotere (docetaxel) absent diagnosis from a trained medical professional. Plaintiffs' own disclosures establish that the vast majority of them have no such diagnosis, even years after filing their lawsuits. Second, the information required by the current discovery protocols is insufficient to show whether a Plaintiff even has what she alleges is PCIA caused by Taxotere (docetaxel). Rather, third, the nature of Plaintiffs' alleged injury

typically is revealed only if a case is selected for work up in the trial pool. Requiring Plaintiffs affirmatively to come forward with evidence of injury and causation will help address these gaps of proofs and significant barriers to evaluating Plaintiffs' claims.

### A. Each plaintiff must have expert evidence of a differential diagnosis finding she suffers from PCIA caused by Taxotere (docetaxel).

Among the many elements of their claims, and as this Court has previously found, every Plaintiff in this MDL has the burden to establish her alleged <u>injury</u> (*i.e.*, PCIA) and <u>medical causation</u> (*i.e.*, that Taxotere (docetaxel) caused the PCIA). Rec. Doc. 8095 at 4. In cases like these, where "complex issues of medical causation [] are beyond the realm of knowledge and experience of the ordinary juror," Plaintiff must present admissible expert testimony proving these elements. *Demouchet v. Gen. Nutrition Corp.*, No. 11-cv-1961, 2014 WL 1652518, at *4 (W.D. La. Apr. 24, 2014); *accord Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004); *see also* Rec. Doc. 8095 at 4 (recognizing in *Earnest* that specific causation must be proven with reliable expert testimony). This is uncontroversial according to Plaintiffs, who assert that "the injury at issue in this litigation should be and is cognizable and definable," and the injury is a "distinct condition with an accepted and unique presentation[.]" Reply in Supp. of Pl. Johnson's and Pl. Francis's Mot. for Recons. (Rec. Doc. 8152) at 2 n.1.

This Court also recognized previously that the "standard method for assessing specific causation is 'a differential diagnosis.'" Rec. Doc. 8095 at 4 (internal citations omitted). In performing a differential diagnosis:

> a physician begins by "ruling in" all scientifically plausible causes of the plaintiff's injury. The physician then "rules out" the least plausible causes of injury until the most likely cause remains.

*Id.* (internal citations omitted). Plaintiffs' experts also agree that a differential diagnosis is the

only way to diagnosis PCIA. Rec. Doc. 6162 at 11.[1] Given these circumstances, individual Plaintiffs should be required to come forward with a differential diagnosis, from a qualified medical professional, finding that she has PCIA and that this condition was caused by Taxotere (docetaxel).

Like orders entered in other MDLs, the proposed order ties the specific medical evidence to the specific medical injury alleged by Plaintiffs. In close parallel to this MDL, the *Abilify* plaintiffs alleged that their injury was not just gambling, but *compulsive* gambling *caused by Abilify*. *See* Master Long Form Compl. at ¶¶ 3, 42, *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 16-md-2734 (N.D. Fla. Dec. 2, 2016) (Doc. 125). Accordingly, the *Abilify* court entered an order requiring plaintiffs to produce "medical records documenting a diagnosis from a healthcare provider of pathological gambling or gambling disorder while you were taking *Abilify*." *See* Suppl. Pl. Profile Form at § VI.A, *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 16-md-2734 (N.D. Fla. Aug. 31, 2018) (Doc. 986-1).

Here, Plaintiffs allege that they experienced not just alopecia, but *permanent* alopecia *caused by Taxotere (docetaxel)*. *See* Second Am. Master Compl. at ¶ 181 (Rec. Doc. 4407). Defendants' proposed order asks that each Plaintiff submit medical records or a physician certification identifying that specific injury and that medical cause—evidence that should already exist.[2] As the court found in *In re Avandia*, the order "merely requires information which plaintiffs

---

[1] For the reasons set forth in Sanofi's Motion to Exclude Expert Testimony of Specific Causation filed in *Earnest* (Rec. Doc. 6162), Sanofi does not believe that individual Plaintiffs can meet their burdens of proof because Plaintiffs' experts cannot reliably rule out other potential causes of alopecia (such as the other chemotherapy drugs administered with Taxotere). However, regardless of whether a Plaintiff can ultimately meet her burden to prove injury and causation, she should be required to proffer objective medical evidence of the injury she alleges to proceed with her claims.

[2] In the event that no diagnosis has been made, the *Abilify* order instructs plaintiffs to submit "other records that you contend show that you experienced pathological gambling or gambling disorder." *See id.* at § VI.A. Here, in the

and their counsel should have possessed before filing their claims[.]"). 2010 WL 4720335, at *1.[3] If a Plaintiff cannot produce proof of injury and causation now, she will not be able to prevail at trial, and her claim should be dismissed (1) before the parties waste resources investigating it, and (2) to allow a realistic valuation of the remaining pool of claims.

### B. The current discovery orders do not require Plaintiffs to adequately demonstrate injury or causation.

The proposed order is necessary because the current discovery protocols do not require adequate proof of injury or causation and the information they do require is insufficient to evaluate and narrow the cases. Under PTO 18, each Plaintiff is required to submit a Plaintiff Fact Sheet, check the injuries she claims, indicate whether she has received a diagnosis for such alleged injuries, and submit medical records showing proof of diagnosis *or* photographs showing hair before and after treatment. Rec. Doc. 236.

Most Plaintiffs admit in their PFS that they have never received a diagnosis of PCIA caused by Taxotere (docetaxel). *See* Ex. 2, Kahn PFS. In fact, of the 12,223 active Plaintiffs with fact sheets, some 10,472 (more than 85%) have never been diagnosed with PCIA.[4] More than 10,770 (88%) have never sought treatment for this injury, and some 10,055 (82%) have never discussed with a healthcare provider whether Taxotere (docetaxel) caused or contributed to their alleged

---

event no pre-lawsuit diagnosis has been made, the proposed order allows a Plaintiff to seek and submit documentation of a diagnosis.

[3] Defendants' proposed order also allows a Plaintiff to certify that she does not intend to seek such a diagnosis, which will provide valuable information about the categorization of such cases.

[4] See email from Jake Woody at BrownGreer (dated July 17, 2020), attached as Ex. 21.

7

injury.[5]

Even Plaintiff Elizabeth Kahn—whose trial is scheduled for February 2021—*has yet to receive any medical diagnosis confirming that she has PCIA caused by Taxotere*. This lack of evidence jeopardizes both final expert discovery and the trial date itself. Without the proposed order, both sides will continue to invest significant time and resources on 10,472 cases without a diagnosed injury.

With no medical diagnosis, and accordingly no supporting medical records, thousands of Plaintiffs have relied solely on photographs as evidence of their alleged injury. Rec. Doc. 236. But it is undisputed that photographs cannot prove that a Plaintiff has PCIA caused by Taxotere (docetaxel). Although photographs may show changes in hair and scalp appearance over time, such changes may result from many processes, including natural ones.

In fact, Plaintiffs' dermatologist and hair loss expert, Dr. Tosti, has explained that she "cannot make [a] diagnosis [of alopecia] from pictures." Ex. 3, Tosti Dep. 119:22–120:5 (Dec. 12, 2019); *see also id.* at 181:25–182:1 ("I cannot make a diagnosis on photographs for any – anything."). Instead, Dr. Tosti needs to see the patient, talk to the patient, and run tests in order to make a differential diagnosis. *Id.* at 311:10–312:15 (describing the clinical history necessary to determine the cause of any PCIA); Ex. 4, Earnest Trial Tr. 948:13–21 ("You cannot make a diagnosis without seeing the patient and talking to the patient[.]"), 962:22–963:8 ("[W]hen you see a patient […] all the conditions that may look similar, and you have [to] -- one by one, compare and decide. [….] I see a diffuse alopecia, I have to exclude the other possible causes of diffuse

---

[5] Neither the existing CMO on pathology protocols nor the Court's rulings on the trial Plaintiffs' biopsies address the instant Motion, which requests the Court order Plaintiffs to come forward with *prima facie* evidence—in the form of medical records or a physician certification—demonstrating their injuries and their cause.

alopecia."), 1077:19–22 ("You need to look at the -- see the patient. You do not make diagnosis on pictures."). As confirmed by Plaintiffs' experts and borne out by experience in this MDL, photographs are insufficient to diagnose the alleged injury.

Finally, the submitted photographs have been rife with problems—from fraud to flood to fire—consuming an inordinate amount of the Court's time at show-cause hearings. And when Plaintiff are unable to locate photos at all, Plaintiffs' counsel has suggested on multiple occasions that the testimony of friends and family concerning a Plaintiff's hair condition might suffice to prove the claimed injury. But if photos are insufficient for an expert to make a diagnosis, then Plaintiffs certainly cannot rely on the recollection of friends and family to establish the alleged medical condition.[6] For all these reasons, an order requiring a medical diagnosis is warranted.

### C.  Experience in Trial Pool Cases Supports the Need for a Diagnosis Order.

The parties' experience selecting and working up cases for trial has confirmed that, absent an order requiring medical diagnosis and evidence of causation, the parties and Court will continue to expend resources on cases that do not involve the alleged injury.

Former trial pool Plaintiff Lisa Tuyes is a prime example. Ms. Tuyes filed suit in October 2016 alleging she suffered from PCIA caused by Taxotere. Ex. 5, Tuyes Short Form Compl. Ms. Tuyes submitted a PFS in which she admitted she had never been diagnosed with her claimed

---

[6] Plaintiffs' counsel on several occasions has suggested that Plaintiffs who cannot locate any proof-of-injury photos can introduce testimony of friends and family concerning the condition of their hair. *See*, *e.g*., 9/27/18 Hr'g Tr. at 49:22-25 ("Obviously you can prove what your hair looked like without a photograph by the testimony of family members and relatives and friends."); 1/18/19 Hr'g Tr. at 158:15-17 ("I just want to say, Your Honor, that if these cases go to trial, you can have family members come and testify as to whether or not the hair was present."); 11/7/19 Hr'g Tr. at 67:24-68:2 ("[W]ith regard to the absence of before photos, we have to make an objection for the record that the lack of any evidence in support of a claim should not be the basis for a dismissal."); 11/7/19 Hr'g Tr. at 21:24-22:2 ("THE COURT: How do you intend to prove what she looked like before she took her chemotherapy? MR. ELLIOT: I mean, her testimony and maybe her daughter. I don't know. …") (collectively, Ex. 8).

9

injury. Ex. 6, Tuyes PFS at 17.  Ms. Tuyes also submitted photographs, under PTO 18, showing no visible signs of significant hair loss.  *See* Ex. 7 (composite exhibit containing "before" and "after" photos – *filed under seal*).  On March 9, 2018, Ms. Tuyes was selected as one of four cases to proceed to the second phase of discovery for the first bellwether trial.  Rec. Doc. 1819.

Then Ms. Tuyes had a scalp biopsy, which was analyzed by Plaintiffs' expert, Dr. Curtis Thompson.  Ex. 9, Thompson Rpt.  Dr. Thompson diagnosed Ms. Tuyes not with PCIA, but with androgenetic alopecia, *see id*. at 2, a genetic form of hair loss affecting more than 40% of all women.  Ex. 10, Shapiro Rpt. at 6.  By the time her case was removed from the trial pool in September 2018, the parties had spent unnecessary time and resources collecting records for 14 months, deposing 10 witnesses, and preparing her case for trial – all of which could have been avoided had she been required to submit proof of a diagnosis at the outset.

Similarly, trial pool Plaintiff Sheila Crayton submitted a PFS stating that she had never received a diagnosis of PCIA caused by Taxotere.  Ex. 11, Crayton PFS at 16.  Ms. Crayton also submitted photographs showing no discernible hair loss.  *See* Ex. 7 (composite exhibit containing "before" and "after" photos – *filed under seal*).  Still, after she was selected for the trial pool, the parties were required to conduct extensive discovery, including collecting records for 26 months, taking 10 depositions of Ms. Crayton, her physicians and friends, and conducting expert discovery. When the day came for Plaintiff to offer a medical-causation expert, she did not and she was never examined by Plaintiffs' retained expert or any medical doctor for her alleged injury. Ultimately, Ms. Crayton's case was withdrawn from trial eligibility for other reasons, Rec. Doc. 8701, but, at the time of withdrawal, Ms. Crayton had maintained a lawsuit for two-and-a-half years without

ever obtaining a diagnosis of PCIA caused by Taxotere.[7]

In addition to lacking diagnoses of the injury they allege, many Plaintiffs' records affirmatively reveal a different diagnosis or hair loss conditions *other than* PCIA. All sides agree that there are many different types of alopecia and many different causes, including other chemotherapy medications, non-chemotherapy medications, genetics, aging, and hair treatments, to name a few.

For example, Plaintiffs Ambrosius, Gwinn, Hamilton, Hunt, and Sciurba each submitted a PFS admitting they had never been diagnosed with PCIA caused by Taxotere. Each Plaintiff also submitted biopsy results, none of which provided the requisite diagnosis. Plaintiffs Ambrosius, Gwinn, and Sciurba instead were diagnosed with scarring alopecia. Exs. 12, 13, and 14; *see also* Ex. 15, Love Rpt. at 15 (Dec. 10, 2018) ("[A] scalp biopsy showing scarring alopecia would not be chemotherapy-induced alopecia."). Plaintiff Nancy Hamilton was diagnosed with alopecia areata, an autoimmune condition that Plaintiffs' experts have opined is different from PCIA. Ex. 16. After Plaintiff Lorri Hunt's biopsy, her dermatologist concluded that "[n]o diagnostic abnormalities [were] found in the scalp biopsy." Ex. 17. Despite lacking any diagnosis of PCIA and having been diagnosed either with no hair loss or with other forms of hair loss that Plaintiffs' experts do not attribute to Taxotere, these Plaintiffs' claims remain in the MDL.

Plaintiffs' pattern of voluntary dismissals of cases selected for the trial pool also supports the need for an order requiring medical diagnoses of Plaintiffs' alleged injuries. For example, Plaintiffs Gabriel, Sylvest, and Warren all submitted PFSs stating they had received no diagnosis

---

[7] Sanofi will shortly file a Motion for Summary Judgment in Ms. Crayton's case. The Court should enter summary judgment against Ms. Crayton because she has adduced no expert medical testimony to establish her injury and its cause. The proposed diagnosis order will preserve judicial resources in future case such as Ms. Crayton's.

11

of PCIA (Exs. 18, 19, and 20) and all submitted photographs that showed no discernible hair loss. *See* Ex. 7 (composite exhibit containing "before" and "after" photos – *filed under seal*).

Rather than voluntarily dismiss their claims because they lacked merit, Plaintiffs stayed in the trial pool and were selected and subject to at least some case work-up before later voluntarily dismissing their claims with prejudice. Rec. Docs. 4243, 6935. Here too, the Court and Defendants spent time and resources on cases that should never have been filed because Plaintiffs lacked basic support for their claims. In moving to dismiss Ms. Warren's claim, Plaintiffs' counsel stated that, when they began "the more in-depth work-up process required by selection to the trial pool," they realized Ms. Warren's claim was "atypical" and should not be pursued. Rec. Doc. 6530-1 at 4.

Tellingly, 28 of the 32 Plaintiffs (87.5%) originally selected for the fourth and fifth trial pools, have been removed or dismissed—many of them voluntarily. Rec. Docs. 7772, 10461. It is not yet known how many additional Plaintiffs will dismiss their claims if selected for individual discovery, but the requested diagnosis order would identify those Plaintiffs sooner rather than later and allow the Court and parties to better assess the remaining case inventory.

**II.     The Proposed Order Is Appropriately Timed.**

Now is the time for the Court to enter the proposed Order, and there is support from the Fifth Circuit and other courts for doing so. In *Acuna*, for example, the Fifth Circuit affirmed the district court's entry of an order requiring 1,600 plaintiffs to produce expert reports on injury and causation allegedly stemming from uranium exposure, *before discovery*. 200 F.3d at 338, 340–41; *see also Steering Comm.*, 461 F.3d at 604 n.2 (characterizing *Lone Pine* orders as "pre-discovery orders"). Discovery has been ongoing in this MDL for more than three years, which is more than two years longer than in *Abilify* when the court entered its proof-of-diagnosis order and

longer than in many other MDLs when similar orders were granted. *See* Order at 1–2 and Suppl. Pl. Profile Form at § 6, *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 16-md-2734 (N.D. Fla. Aug. 31, 2018) (Docs. 986, 986-1) (two years into MDL); *see also* Order No. 27 at ¶ 2, *In re Xarelto*, MDL No. 2592 (E.D. La. Apr. 22, 2016) (two years into MDL); *In re Vioxx*, 557 F. Supp. 2d at 743 (three years into MDL); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 4720335, at *1 (three years into MDL); *In re Baycol Prod. Liab. Litig.*, 2004 WL 626866, at *1 (less than three years into MDL). In addition to preparing multiple cases for trial, 'the parties have conducted several rounds of expert discovery, dispositive motion practice, and a two-week bellwether trial. After almost four years, the Court now should require prima facie proof of injury caused by Taxotere.

Entry of this order would align this MDL with other MDLs in the Fifth Circuit where courts require that all plaintiffs produce—at the very least—objective medical proof of the injury alleged. Pre-Trial Order No. 27 at ¶ 2, *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592 (E.D. La. Apr. 22, 2016) (requiring plaintiffs to "provide records of proof of use and proof of injury within 90 days from the date Plaintiff's complaint was filed"); *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2007 WL 9653192, at *3 (E.D. La. Nov. 9, 2007) (requiring plaintiffs to produce medical expert report attesting that plaintiff suffered an injury and that Vioxx caused the injury); *In re 1994 Exxon Chem. Plant Fire*, No. 05-1639, 2005 WL 6252312, at *2 (M.D. La. Apr. 7, 2005) (requiring plaintiffs to produce an affidavit from a qualified treating or other physician because "[b]efore these suits were filed, and at least after the many years since filing them, one would expect that the remaining plaintiffs would have some concrete, factual basis to support their claims"), *modified sub nom. In re 1994 Exxon Chem. Plant Fire Litig.*, No. 94-1668, 2005 WL 6252291 (M.D. La. Apr. 29, 2005).

Finally, a medical diagnosis order is necessary now because (1) nearly four years into this MDL, nearly 10,500 Plaintiffs still have no diagnosis of PCIA caused by Taxotere (docetaxel), and (2) of the cases that have been worked up as part of the trial pool, numerous Plaintiffs' claims have been revealed to lack merit. As the Northern District of Illinois found in *In re: Zimmer,* an order requiring proof of medical injury and causation was "necessary to ensure" that cases had "sufficient merit to proceed to trial." *In re: Zimmer NexGen Knee Implant Prod. Liab. Litig.*, No. 11-cv-05468, 2016 WL 3281032, at *1 (N.D. Ill. June 10, 2016); *see also* Fed. R. Civ. P. 11(b)(3) (requiring that "the factual contentions [made in the complaint] have evidentiary support."). The same is required here. Cases still are being worked up—including Ms. Kahn's—in which no medical diagnosis of PCIA caused by Taxotere (docetaxel) has been made. Entry of Defendants' proposed order would require Plaintiffs to come forward with sufficient evidence—evidence they should have possessed before filing suit—and would accordingly save the Court and the parties the time and expense of addressing meritless claims.

## CONCLUSION

Defendants respectfully request that the Court grant this Motion and, when the Court deems it appropriate to do so in light of COVID-19, enter the proposed order (attached as Exhibit 1).

Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
dmoore@irwinllc.com

        Harley Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
hratliff@shb.com
abyard@shb.com
*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

        /s/ *Douglas J. Moore*