# EXHIBIT 8

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
*****************************************************************

IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION
                                    Docket No. 16-MD-2740
                                    Section "N"
                                    New Orleans, Louisiana
                                    Thursday, September 27, 2018

[THIS DOCUMENT RELATES TO:
ALL CASES]
*****************************************************************

                    TRANSCRIPT OF STATUS CONFERENCE
            HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                      UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFFS:          PENDLEY BAUDIN & COFFIN
                             BY:  CHRISTOPHER L. COFFIN, ESQ.
                             1515 Poydras St., Suite 1400
                             New Orleans, LA 70112


                             GAINSBURG BENJAMIN DAVID
                             MEUNIER & WARSHAUER
                             BY:  M. PALMER LAMBERT, ESQ.
                             1100 Poydras St., Suite 2800
                             New Orleans, LA 70163


                             BARRIOS KINGSDORF & CASTEIX
                             BY:  DAWN M. BARRIOS, ESQ.
                             701 Poydras St., Suite 3650
                             New Orleans, LA 70139


FOR SANOFI S.A.:             SHOOK, HARDY & BACON
                             BY:  HARLEY V. RATLIFF, ESQ.
                             2555 Grand Blvd.
                             Kansas, City MO 64108
```

1  Grebel and Kruse?

2          MR. NIEMEYER: Good morning, your Honor. Yes, Mark
3  Niemeyer on the line for Ms. Crum.

4          And, your Honor, Ms. Crum actually fully and completely
5  complied with her PFS obligations back in November of 2017. As it
6  turns out, even despite the diligent search by her and other family
7  members, she simply could not come up with any before photos, and
8  that's after us repeatedly contacting her and asking her and
9  helping her with ways to search. So what she has done is she
10 submitted a completed PFS along with medical records showing proof
11 of use, along with after photos showing hair loss. She simply
12 can't produce what she doesn't have and she doesn't have any before
13 photographs. We're confident that that's the case, and so we would
14 submit that she shouldn't be sanctioned in any fashion because she
15 has fully complied with the PFS.

16         THE COURT: Mr. Niemeyer, she absolutely has no
17 photographs before?

18         MR. NIEMEYER: I know. And in fact, you know, we do have
19 a handful of clients in the same boat, and she simply does not
20 possess any before photographs despite a diligent search.

21         MS. BARRIOS: Your Honor, Dawn Barrios for the PFS. This
22 is a substantive issue. Obviously you can prove what your hair
23 looked like without a photograph by the testimony of family members
24 and relatives and friends. So I do not think this is appropriate
25 for any dismissal.

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3
 4
    IN RE:  TAXOTERE (DOCETAXEL)       *
 5          PRODUCTS LIABILITY         *   Docket No.: 16-MD-2740
            LITIGATION                 *   Section "H(5)"
 6                                     *   January 18, 2019
    This Document Relates To All Cases *   New Orleans, Louisiana
 7  * * * * * * * * * * * * * * * * * *
 8
             TRANSCRIPT OF SHOW CAUSE HEARING PROCEEDINGS
 9         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE
10

11
    APPEARANCES:
12
    For the Plaintiffs:        Barrios, Kingsdorf & Casteix, LLP
13                             BY:  DAWN BARRIOS, ESQ.
                               701 Poydras Street
14                             Suite 3650
                               New Orleans, Louisiana 70139
15

16
                               Gainsburgh, Benjamin, David,
17                               Meunier & Warshauer, LLC
                               BY:  PALMER LAMBERT, ESQ.
18                             2800 Energy Centre
                               1100 Poydras Street
19                             New Orleans, Louisiana 70163-2800

20

21

22

23

24

25
```

OFFICIAL TRANSCRIPT

1 **MR. ELLIOTT:** Yeah. There's a -- in Colorado,
2 there's a whole certification process for notaries. Not all of
3 us are notaries, unfortunately.
4 **THE COURT:** You see, it's not that -- to be perfectly
5 frank with you, it's not that big a deal in Louisiana to have
6 an -- you know, to have an affidavit, to have it notarized
7 because every lawyer is a notary, and every client can go to
8 his lawyer's office, and it's done. But, you know, I was very
9 concerned with people that are being asked to show that they
10 have sustained this damage, and, very frankly -- very
11 frankly -- there's no evidence of what you looked like before.
12 And so if I am alleging that I have lost and now
13 suffer from alopecia because of this chemotherapy and I didn't
14 have hair before, and so you're now asking people to --
15 **MR. ELLIOTT:** I just want to say, Your Honor, that if
16 these cases go to trial, you can have family members come and
17 testify as to whether or not the hair was present. You know,
18 what -- but this -- it's a more likely than not standard, too,
19 you know, obviously.
20 I just think it's just overburdensome on
21 plaintiffs to -- at least in our situation at this time, if
22 they are telling us that they have looked, they've done
23 everything they could, I'm an officer of the court saying, "My
24 client doesn't have it," and she signs off on it without a
25 notary, I think that should be sufficient proof because it

```
                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
*****************************************************************
IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION
                                          Docket No. 16-MD-2740
                                          Section "H"
                                          New Orleans, Louisiana
                                          Thursday, November 7, 2019

[THIS DOCUMENT RELATES TO:
ALL CASES]
*****************************************************************

                    TRANSCRIPT OF MOTION TO SHOW CAUSE
              HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                       UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:              BARRIOS KINGSDORF & CASTEIX
                                 BY:  DAWN M. BARRIOS, ESQ.
                                 701 Poydras St., Suite 3650
                                 New Orleans, LA 70139

                                 GAINSBURG BENJAMIN DAVID
                                 MEUNIER & WARSHAUER
                                 BY:  M. PALMER LAMBERT, ESQ.
                                      CLAIRE E. BERG, ESQ.
                                 1100 Poydras St., Suite 2800
                                 New Orleans, LA 70163

                                 CARMEN D. CARUSO LAW FIRM
                                 BY:  JAMES C. STEVENS, ESQ.
                                 77 West Washington St., Suite 1900
                                 Chicago, IL 60602
                                 (BY TELEPHONE)

                                 JUSTINIAN & ASSOCIATES
                                 BY:  AMBER M. PANG PARRA, ESQ.
                                 6228 Bandera Rd.
                                 San Antonio, TX 78238
                                 (BY TELEPHONE)

                                 WENDT LAW FIRM
                                 BY:  SAMUEL M. WENDT, ESQ.
                                 4717 Grand Ave., Suite 130
                                 Kansas City, MO 64112
                                 (BY TELEPHONE)
```

| | | |
|---|---|---|
| 14:34:42 | 1 | suggest you call one of the members of liaison counsel and |
| 14:34:46 | 2 | understand how this process is working, because I believe -- I |
| 14:34:50 | 3 | don't know if you were on the call last time, but we had an |
| 14:34:54 | 4 | extensive conversation and here we are again and nothing has |
| 14:34:59 | 5 | changed.  And so we've got to find a way to make this work |
| 14:35:04 | 6 | efficiently.  I am managing 11,000 cases and this is not efficient, |
| 14:35:12 | 7 | nor am I going to allow information that's not accurate to proceed |
| 14:35:15 | 8 | in this case. |
| 14:35:16 | 9 | So somebody, if we can't get this done, perhaps someone |
| 14:35:21 | 10 | needs to be here at the next meeting. |
| 14:35:24 | 11 | MR. ABASSI:  Yes, your Honor. |
| 14:35:25 | 12 | THE COURT:  Okay.  Court's adjourned -- |
| 14:35:27 | 13 | MR. ABASSI:  Understood. |
| 14:35:28 | 14 | THE COURT:  Wait, whoa.  Mr. Lambert. |
| 14:35:30 | 15 | MR. LAMBERT:  This is not with regard to Mr. Abassi's |
| 14:35:33 | 16 | case in particular, but I have a PSC objection that I need to make |
| 14:35:38 | 17 | on the record. |
| 14:35:38 | 18 | THE COURT:  Okay.  I think we can let Mr. Abassi go? |
| 14:35:41 | 19 | MR. LAMBERT:  Oh, yes, he can go. |
| 14:35:41 | 20 | THE COURT:  Okay.  Thank you, Mr. Abassi, you can go. |
| 14:35:44 | 21 | MR. ABASSI:  Thank you, your Honor. |
| 14:35:45 | 22 | MR. LAMBERT:  Your Honor, this is with regard to the |
| 14:35:50 | 23 | sufficiency of a plaintiff's evidence to prove their case, and we |
| 14:35:56 | 24 | understand how your Honor feels about that; but with regard to the |
| 14:36:01 | 25 | absence of before photos, we have to make an objection for the |

```
14:36:06   1   record that the lack of any evidence in support of a claim should
14:36:12   2   not be the basis for a dismissal.  And there are other methods of
14:36:17   3   proof including dermatoscope, trichoscopy to be used as specific
14:36:22   4   causation evidence in addition to lay witness testimony.  Such a
14:36:28   5   determination in our view on the sufficiency of an individual
14:36:31   6   plaintiff's proof is an issue for the jury, or at the very least an
14:36:38   7   issue for motion for summary judgment.  Discovery dismissal on the
14:36:43   8   PFS process would be improper in our view based solely on the lack
14:36:48   9   of a before photograph.
14:36:52  10           Perhaps one of these cases could be teed up for full
14:36:56  11   motion for summary judgment briefing consistent with our fence post
14:37:01  12   motion discussion this morning, but we would just state for the
14:37:04  13   record the PSC's objection.
14:37:06  14           THE COURT:  Sure.
14:37:09  15           MR. LAMBERT:  Thank you.
14:37:11  16           THE COURT:  Why don't you all come up here.
14:45:41  17       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
          18
          19                         * * * * *
          20                   REPORTER'S CERTIFICATE
          21       I, Karen A. Ibos, CCR, Official Court Reporter, United
               States District Court, Eastern District of Louisiana, do hereby
          22   certify that the foregoing is a true and correct transcript, to the
               best of my ability and understanding, from the record of the
          23   proceedings in the above-entitled and numbered matter.
          24
                                    ___/s/ Karen A. Ibos_____
          25                        Karen A. Ibos, CCR, RPR, CRR, RMR
                                    Official Court Reporter
```

13:25:10  1                THE COURT:  I am telling you --
13:25:12  2                MR. ELLIOTT:  If you would like me to read it to the
13:25:13  3    Court what her explanation is as to why?
13:25:15  4                THE COURT:  You're going to have to explain why a 1987
13:25:18  5    fire affects her photographs.
13:25:20  6                MR. ELLIOTT:  She says here:  "I understand the court
13:25:23  7    requires photos from five years prior to my chemotherapy to be
13:25:26  8    produced, which would be from 1998 to 2002.  I do not have any
13:25:30  9    living relatives, I do not have any friends that I have
13:25:32 10    communicated with in the past 20 years, so I would not be able to
13:25:35 11    gather any photos from either.
13:25:37 12                My son was born in 1972, mentally incapacitated, so there
13:25:40 13    are no events I went to with my son that a photo would have been
13:25:44 14    taken in the '90s to present day.  My daughter was born in '74, has
13:25:49 15    a lot of issues from a family issue, and she says we do not attend
13:25:54 16    any events that a photo would have been taken.
13:25:57 17                I was in communication with my daughter since from the
13:25:58 18    time her father passed away in 1982 until 2016 when she became
13:26:03 19    clean and sober, she does not have any photos of myself either.  I
13:26:06 20    hope that you make my unfortunate circumstances -- or take my
13:26:09 21    unfortunate circumstances into account."
13:26:12 22                That's her explanation.  She simply doesn't have any.
13:26:17 23    And, you know --
13:26:19 24                THE COURT:  How do you intend to prove what she looked
13:26:24 25    like before she took her chemotherapy?

13:26:28  1            MR. ELLIOT:  I mean, her testimony and maybe her
13:26:31  2  daughter.  I don't know.  I don't know.  Have to be some type of
13:26:37  3  friend, maybe a neighbor, you know, that was there during that time
13:26:42  4  period.
13:26:43  5            I mean, it's not unheard of for someone in the late '90s,
13:26:47  6  early 2000s, there wasn't many digital cameras out there, she's
13:26:53  7  clearly indigent, so they would have only taken maybe Polaroids and
13:26:58  8  ones you would have to go get developed, so.
13:26:59  9            THE COURT:  Let's get through this.  I don't want to get
13:27:02 10  bogged down in this one issue.  Let's get through this and we're
13:27:05 11  going to come back.  But don't leave because we are going to deal
13:27:08 12  with this.
13:27:08 13            MS. BRILLEAUX:  Thank you, your Honor.  Helen -- will we
13:27:11 14  revisit Sally Gowens at the end?
13:27:14 15            THE COURT:  That's what I said, but I don't want to stop
13:27:17 16  when people are siting on the phone.
13:27:18 17            MS. BRILLEAUX:  Understood.  The next case that I have is
13:27:20 18  Helen Hallum.  This is a case that we addressed at the last
13:27:23 19  hearing, it was supposed to be heard in July and moved to August.
13:27:28 20  This was the case -- and I had the ELMO here last time, and I have
13:27:33 21  copies again -- but this was the case in which there were
13:27:37 22  photographs that were dated several times.  And I have a copy for
13:27:49 23  you, too, your Honor, so that you can take a look at it.
13:28:00 24            And just to be clear, your Honor, you've seen this
13:28:03 25  before.  This is just to refresh your recollection of where we left