# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | : : : : : | **MDL NO. 2740**<br><br>**SECTION "N"(5)**<br>**JUDGE ENGELHARDT**<br>**MAG. JUDGE NORTH** |
| CLARE GUILBAULT                          , | : : | **COMPLANT & JURY DEMAND** |
| Plaintiff(s), | : : | **Civil Action No.: 2:16-cv-17061** |
| vs. | : : | |
| Hospira Worldwide Inc., and Hospira Inc | : : | |
| Defendant(s). | : | |
| ----------------------------------------------------------- | : | |

## AMENDED SHORT FORM COMPLAINT

Plaintiff(s) incorporate by reference the Master Long Form Complaint and Jury Demand filed in the above-referenced case on March 31, 2017. Pursuant to Pretrial Order No. 15, this Short Form Complaint adopts allegations and encompasses claims as set forth in the Master Long Form Complaint against Defendant(s).

Plaintiff(s) further allege as follows:

1.   Plaintiff:

    Clare Guilbault

2.   Spousal Plaintiff or other party making loss of independent/secondary claim (i.e., loss of consortium):

    N/A

1

3.    Other type of Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

   N/A

4.    Current State of Residence:   Louisiana

5.    State in which Plaintiff(s) allege(s) injury:   Louisiana

6.    Defendants (check all Defendants against whom a Complaint is made):

    a.    Taxotere Brand Name Defendants

       ☐   A.    Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc.

       ☐   B.    Sanofi-Aventis U.S. LLC

    b.    Other Brand Name Drug Sponsors, Manufacturers, Distributors

       ☐   A.    Sandoz, Inc.

       ☐   B.    Accord Healthcare, Inc.

       ☐   C.    McKesson Corporation d/b/a McKesson Packaging

       ☒   D.    Hospira Worldwide Inc.

       ☒   E.    Hospira Inc

       ☐   F.    Sun Pharma Global FZE

       ☐   G.    Sun Pharma Global Inc.

       ☐   H.    Pfizer Inc.

       ☐   I.    Actavis LLC f/k/a Actavis Inc.

       ☐   J.    Actavis Pharma Inc.

       ☐   K.    Sagent Pharmaceuticals, Inc.

       ☐   L.    Other:

7.  Basis for Jurisdiction:

    ☒  Diversity of Citizenship

    ☐  Other (any additional basis for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):

8.  Venue:

    District Court and Division in which remand and trial is proper and where you might have otherwise filed this Short Form Complaint absent the direct filing Order entered by this Court:

    USDC for the Eastern District of Louisiana

9.  Brand Product(s) used by Plaintiff (check applicable):

    ☐  A.  Taxotere

    ☐  B.  Docefrez

    ☒  C.  Docetaxel Injection

    ☐  D.  Docetaxel Injection Concentrate

    ☐  E.  Unknown

    ☐  F.  Other:

10. First date and last date of use (or approximate date range, if specific dates are unknown) for Products identified in question 9:

    December 26, 2013 through February 27, 2014

11.     State in which Product(s) identified in question 9 was/were administered:

> Louisiana

12.     Nature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury):

> Disfiguring permanent Alopecia beginning sometime after treatment with Taxotere (Docetaxel) and continuing to present

13.     Counts in Master Complaint brought by Plaintiff(s):

- ☒ Count I – Strict Products Liability - Failure to Warn
- ☒ Count II – Strict Products Liability for Misrepresentation
- ☐ Count III – Negligence
- ☐ Count IV – Negligent Misrepresentation
- ☐ Count V – Fraudulent Misrepresentation
- ☐ Count VI – Fraudulent Concealment
- ☐ Count VII – Fraud and Deceit
- ☐ Count VIII – Breach of Express Warranty (Sanofi Defendants only)

- ☒ Other:  Plaintiff(s) may assert the additional theories and/or State Causes of Action against Defendant(s) identified by selecting "Other" and setting forth such claims below. If Plaintiff(s) includes additional theories of recovery, for example, Redhibition under Louisiana law or state consumer protection claims, the specific facts and allegations supporting additional theories must be pleaded by Plaintiff in sufficient detail as required by the applicable Federal Rules of Civil Procedure.

## Factual Allegations

1. Plaintiff, prior to undergoing chemotherapy treatment in December of 2013, discussed potential side effects with her prescribing oncologist, Dr. Theodossiou and her chemotherapy nurses Amanda and Suzzane Murray.

2. Plaintiff was instructed by Dr. Theodossiou that although she may experience hair loss during the course of her chemotherapy treatments, her hair loss would be temporary and that any hair lost would re-grow.

3. At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss.

4. Plaintiff believed that she would experience full hair re-growth following completion of her chemotherapy treatments based on conversations with her healthcare providers.

5. Plaintiff completed chemotherapy in February of 2014.

6. In April of 2014, Plaintiff asked her oncologist when her hair would return and she was instructed that it would start growing back likely within a month.

7. Unfortunately, Plaintiff's hair did not fully re-grow as anticipated. In December of 2014, Plaintiff noticed that while she had some hair re-growth her hair had not fully re-grown. Plaintiff again inquired with her oncologist as to when she might expect her hair to fully return. She was instructed by her Dr. Theodossiou to take a multi-vitamin to continue to encourage hair re-growth. At no time did her oncologist inform Plaintiff that she was suffering from permanent hair loss.

8. Plaintiff also reached out to a friend who was also cancer survivor, looking for advice on how to encourage faster hair re-growth. Her friend suggested that she take Biotin.

9. In April of 2015, during a follow-up visit with her oncologist, Plaintiff inquired again about her hair re-growth. Dr. Theodossiou suggested to Plaintiff that she consult with a dermatologist regarding her lack of hair re-growth. Dr. Theodossiou never informed Plaintiff that she may be suffering from permanent hair loss due to her use of Taxotere.

10. In May of 2015, Plaintiff was seen by a dermatologist, Dr. Deidre Hooper for a skin cancer screening. During that screening, Plaintiff inquired about her lack of full hair re-growth and was instructed by Dr. Hooper to try Rogaine. Plaintiff used Rogaine for several years but her hair never fully

re-grew.  Dr. Deidre Hooper never informed Plaintiff that she may be suffering from permanent hair loss due to her use of Taxotere.

11. In June of 2015, Plaintiff consulted with another dermatologist, Dr. Nia Terezakis, and again inquired about what treatments might be available to encourage hair re-growth.  Dr. Terezakis suggested that Plaintiff try a special hair loss treatment which Dr. Terezakis had created to be a blend of midoximil and retin-A.  Dr. Terezakis never informed Plaintiff that she may be suffering from permanent hair loss due to her use of Taxotere.

12. Plaintiff also consulted with a third dermatologist, Dr. Douglas Koppel, regarding her lack of hair re-growth during a routine visit for a mole removal.  Dr. Koppel suggested that Plaintiff might want to consult with another dermatologist regarding her hair condition.   Dr. Koppel never informed Plaintiff that she may be suffering from permanent hair loss due to her use of Taxotere.

13. Plaintiff did not suspect she may be suffering from permanent hair loss caused by Taxotere until she observed a legal advertisement in approximately May of 2016.

14. This was the first time Plaintiff suspected that her lack of full hair re-growth might actually be permanent hair loss caused by her use of Taxotere.  Plaintiff filed her lawsuit within 7 months of first learning of the connection between the use of Taxotere and permanent hair loss.

15. After filing her lawsuit, Plaintiff informed her oncologist that she believed Taxotere was the cause of her permanent lack of hair re-growth.  In response, Dr. Theodossiou indicated that he was no longer using Taxotere in his practice.

### Inadequate Warning Under LSA-RS 9:2800.57

16. Plaintiff repeats, reiterates, and re-alleges all paragraphs of the Master Long Form Complaint, with the same force and effect as if fully set forth herein.

17. Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced TAXOTERE® into the stream of commerce, and in the course of same, directly advertised or marketed TAXOTERE® to consumers or persons responsible for consumers, and therefore, had a duty to both Plaintiff directly and her physicians to warn of risks associated with the use of the product, including, but not limited to, permanent disfiguring alopecia.

18. Defendants had/have a duty to warn of adverse drug reactions, including, but not limited to, permanent disfiguring alopecia, which they knew or should have known can be caused by the use of TAXOTERE® and/or are associated with the use of TAXOTERE®.

19. The TAXOTERE® designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants was defective in that it failed to include adequate warnings regarding all adverse side effects, including, but not limited to, permanent disfiguring alopecia, associated with the use of TAXOTERE®. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia.

20. Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with TAXOTERE®, although Defendants aggressively and fraudulently promoted the product to physicians.

21. Due to the inadequate warning regarding the serious risk for disfiguring permanent alopecia, TAXOTERE® was in a defective condition and unreasonably dangerous at the time that it left the control of Defendants.

22. Defendants' failure to adequately warn Plaintiff and her prescribing physicians of the serious risk of disfiguring permanent alopecia prevented Plaintiff's prescribing physicians and Plaintiff herself from correctly and fully evaluating the risks and benefits of TAXOTERE®.

23. Had Plaintiff been adequately warned of the serious risk of disfiguring permanent alopecia associated with TAXOTERE®, Plaintiff would not have taken TAXOTERE®.

24. Upon information and belief, had Plaintiff's prescribing physicians been adequately warned of the serious risk of disfiguring permanent alopecia associated with TAXOTERE®, Plaintiff's physicians would have discussed the risks of disfiguring permanent alopecia with Plaintiff and/or would not have prescribed it.

25. As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of TAXOTERE®, Plaintiff suffered disfiguring permanent alopecia.

26. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, harms, and losses, including, but not limited to: past and future expenses; permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

14.     Name of Attorney(s), Bar Number(s), Law Firm(s), Phone Number(s), Email Address(es) and Mailing Address(es) representing Plaintiff(s):

By:   Christopher L. Coffin
      Louisiana Bar No. 27902
      Jessica A. Perez
      Louisiana Bar No. 34024
      Pendley, Baudin & Coffin, L.L.P.
      1515 Poydras Street, Suite 1400
      New Orleans, LA 70112
      Tel: (504) 355-0086
      Fax: (504) 523-0699
      ccoffin@pbclawfirm.com
      jperez@pbclawfirm.com