UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Cases identified in Exhibit A.[1]

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF MICHIGAN PLAINTIFFS

All the claims of the Michigan Plaintiffs in this MDL are barred by the Michigan Product Liability Act ("MPLA"). The MPLA provides a "complete defense" in product liability actions, such as these, when it is undisputed that the Food and Drug Administration ("FDA") approved the safety and efficacy of Taxotere, and the Taxotere administered to those 206 Michigan Plaintiffs carried the FDA-approved labeling when it left Sanofi's control. Mich. Comp. Laws Ann. § 600.2946(5).

None of the MPLA's three narrow exceptions apply. FDA has never revoked Taxotere's approval or ordered its withdrawal. Sanofi has never bribed an FDA official to gain approval for Taxotere. And FDA has never found that Sanofi gained approval for Taxotere through fraud. Because the MPLA completely forecloses all of Plaintiffs' claims, and no exception applies, the Court should enter summary judgment in Sanofi's favor.

### LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute

---

[1] Plaintiffs identified in Exhibit A ("Plaintiffs") allege that they received Taxotere in Michigan. In light of the Court's fencepost Orders, Sanofi has limited Exhibit A to Michigan Plaintiffs who received Taxotere in Michigan after December 15, 2006 and before December 11, 2015.

of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (internal citations omitted).

## ARGUMENT

I.  **Michigan Law Governs Plaintiffs' Claims.**

This Court treats cases filed directly in this MDL "as if they were transferred from a judicial district sitting in the state where the case originated." Order and Reasons (Rec. Doc. 10487) at 4 (citing *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017)); *see also* PTO No. 4 (Rec. Doc. 122) ("[Direct filing] will have no impact on choice of law that otherwise would apply to an individual case had it been originally filed in another district court and transferred to this Court pursuant to 28 U.S.C. § 1407.").

"Accordingly, the law that applies in each case will be the law of the state where the case originated, which is the state where a Plaintiff was prescribed or administered her Taxotere treatment." Order and Reasons (Rec. Doc. 10487) at 4 (citing *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 09-md-02100, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07-md-01871, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2012)).

Michigan law applies because each Plaintiff in Exhibit A was prescribed or administered Taxotere in Michigan. "Generally speaking, a tort claim filed in a Michigan court will be governed by Michigan law unless a rational reason exists to displace it." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) (quoting *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001)) (internal quotation marks omitted); *accord Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). Here, no rational reason exists to apply another

state's law considering Plaintiffs' connections to Michigan. As a result, Michigan's choice-of-law rules require application of Michigan law. When Michigan law applies, MDL and mass action courts have entered omnibus summary judgment orders against similar plaintiffs. *See generally In re Depakote,* No. 12-cv-52, 2017 WL 4348052 (S.D. Ill. Sept. 28, 2017); *In re Aredia & Zometa Prods. Liab. Litig.*, No. 06-md-1760, 2008 WL 913087 (M.D. Tenn. Apr. 2, 2008), *aff'd*, 352 F. App'x 994 (6th Cir. 2009); *In re Risperdal Litig.*, 175 A.3d 1023 (Pa. Super. Ct. 2017).

## II.     The MPLA Bars Plaintiffs' Claims.

The MPLA applies broadly to any "product liability action" and provides:

> [A] drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable, if
>
> the drug was approved for safety and efficacy by the United States food and drug administration, and
>
> the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.

Mich. Comp. Laws Ann. § 600.2946(5). In adopting this statute, "the [Michigan] Legislature has determined that a drug manufacturer or seller that has properly obtained FDA approval of a drug product has acted sufficiently prudently so that *no tort liability may lie*." *Taylor v. Smithkline Beecham Corp.*, 658 N.W.2d 127, 131 (Mich. 2003) (emphasis added).

The MPLA applies to all of Plaintiffs' claims incorporated from the Second Master Long Form Complaint.[2] The MPLA defines "product liability action" as one "based on a legal or equitable theory of liability brought for the death of a person or for the injury to a person or damage to property caused by or resulting from the production of a product." Mich. Comp. Laws Ann. § 600.2945(h). "Production," means, among other things, "warning, instructing, marketing selling,

---

[2] Here, most Plaintiffs raises a combination of these claims: (1) strict liability for failure to warn; (2) negligence; (3) negligent misrepresentation; (4) fraudulent misrepresentation; (5) fraudulent concealment; and (6) fraud and deceit.

3

advertising, packaging, or labeling." *Id.* § 600.2945(i). Because Plaintiffs premise each claim on alleged personal injuries resulting from Sanofi's "production" of Taxotere, each claim falls within the MPLA. *Trees v. Pfizer, Inc.*, No. 338297, 2018 WL 6710594, at *1 (Mich. Ct. App. Dec. 20, 2018) (finding "product liability action" encompassed the plaintiff's claims for negligence, negligent misrepresentation, failure to warn, fraud and misrepresentation, and constructive fraud), *appeal denied*, 933 N.W.2d 305 (Mich. 2019); *White v. SmithKline Beecham Corp.*, 538 F. Supp. 2d 1023, 1027 (W.D. Mich. 2008) (MPLA applies "when the plaintiff alleges fault in the standards, testing, warning, instruction, marketing, selling, advertising or labeling of the drug").

To the extent that Plaintiffs in Exhibit A assert claims beyond those pleaded in the Second Amended Master Complaint, the MPLA also bars those common law claims—*i.e.*, breach of express warranty, loss of consortium, and intentional infliction of emotional distress. *See Trees*, 2018 WL 6710594, at *1–3 (dismissing express warranty claim); *In re Risperdal Litig.*, 175 A.3d at 1026 n.6, 1033 (affirming dismissal of the plaintiffs' loss of consortium claims); *White*, 538 F. Supp. 2d at 1029 ("In order to maintain a product liability suit against a drug manufacturer under Michigan law, a plaintiff need allege more than the elements of the common law tort.").[3]

The MPLA's two substantive requirements are met: (1) FDA approved the safety and efficacy of Taxotere; and (2) Taxotere was labeled as approved by FDA when it left Sanofi's

---

[3] A few Plaintiffs assert "Violations of Applicable Law Prohibiting Consumer Fraud and Unfair Deceptive Trade Practices." *See* Ex. A. Sanofi reads this as an attempt to allege claims under the Michigan Consumer Protection Act ("MCPA"), which the MPLA does not preclude. *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at *6 (Mich. Ct. App. June 13, 2006). Such claims, however, are precluded under an exemption to the MCPA. The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws Ann. § 445.904(1)(a). "The focus of this statutory provision is not the specific misconduct alleged by a plaintiff, but whether the general transaction is authorized by law." *Duronio*, 2006 WL 1628516, at *6. In *Duronio*, for example, plaintiff asserted a claim under the MCPA based on alleged misrepresentations related to the safety and efficacy of Vioxx. *Id.* The Michigan Court of Appeals applied the MCPA exemption because the Food, Drug, and Cosmetic Act of 1938 governed "drug marketing, manufacturing, and distribution," and the "general marketing and advertising activities underlying plaintiff's MCPA claim [were] authorized and regulated under laws administered by the FDA[.]" *Id.* Plaintiffs' claims in this MDL are no different, and the Court should dismiss them.

4

control.[4]  In 1996, FDA approved Taxotere and its label for the treatment of cancer patients in the United States.  DSOF ¶ 5.  And, in 2004, FDA approved Taxotere and its label for the adjuvant treatment of patients with node-positive breast cancer.  *Id.* ¶¶ 7–8.  FDA approved each label used by Sanofi regardless of when each Plaintiff was treated.  In short, for more than 20 years, Sanofi has provided the substantive label for Taxotere as approved by FDA.  *See id.* ¶¶ 5–10.[5]  Plaintiffs cannot controvert these dispositive facts, and Sanofi is entitled to the "absolute defense" provided to drug manufacturers under Michigan law.  *Taylor*, 658 N.W.2d at 131.

**III.   No Exception Under the MPLA Saves Plaintiffs' Claims.**

Plaintiffs have no evidence to create a triable issue on any of the MPLA's three narrow exceptions, which apply only when:

> (1) the drug is sold after FDA orders the drug removed from the market or FDA withdraws its approval;
>
> (2) the manufacturer makes an illegal payment to an FDA official or employee to secure or maintain approval of the drug; or
>
> (3) the manufacturer intentionally withholds from or misrepresents information to FDA and the drug would not have been approved.

Mich. Comp. Laws Ann. § 600.2946(5)(a)–(b).  Plaintiffs do not allege that the first two exceptions apply, and no evidence supports such allegations.

---

[4] A drug is "labeled in compliance with FDA standards" when FDA approved the drug label that a plaintiff received. *Taylor*, 658 N.W.2d at 130 n.2; *Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 347 n.5 (Mich. Ct. App. 2011).

[5] Allegations of a manufacturer's noncompliance with FDA postmarketing reporting requirements do not affect the immunity analysis. *See, e.g.*, Pls.' Second Am. Master Compl. ¶ 172. "Such allegations do not fit comfortably within the statutory language requiring compliance for immunity to apply." *Marsh v. Genentech, Inc.*, 693 F.3d 546, 552 (6th Cir. 2012).  Instead, failure to adhere to postmarketing reporting requirements is an allegation of "procedural non-compliance" with FDA regulations; it is not an allegation that the drug failed to comply substantively with FDA approval.  *Id.* at 552–53; *Trees*, 2018 WL 6710594, at *4 (finding *Marsh* persuasive).  No Plaintiff alleges substantive non-compliance—*e.g.*, that Plaintiff received adulterated Taxotere or that the label on the Taxotere Plaintiff received did not comply with the FDA-approved label.  *Marsh*, 693 F.3d at 553.

The third exception—known as the fraud-on-the-FDA exception—also does not apply. Plaintiffs do allege that Sanofi withheld information from FDA both during and after the drug application process for Taxotere.[6] Federal law, however, preempts this exception except in narrow circumstances inapplicable to these cases.

Six years after the Michigan Legislature amended its product liability statute to provide for drug manufacturer immunity, the United State Supreme Court held that state common law tort claims for fraud-on-the-FDA are impliedly preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001). In *Buckman*, the plaintiff asserted that the manufacturer of orthopedic bone screws had made fraudulent representations to FDA during the approval process to market the screws. *Id.* According to the plaintiff, had the manufacturer not made these representations, FDA would not have approved the bone screws. *Id.* The Court reasoned that federal law preempted the plaintiff's state law fraud-on-the-FDA claim because the federal statutory scheme "amply empowers the FDA to punish and deter fraud against the Administration." *Id.* at 348.

Applying *Buckman*, the Sixth Circuit held that federal law impliedly preempts the MPLA's fraud-on-the-FDA exception. *Marsh*, 693 F.3d at 551 ("[S]uits against drug manufacturers under Michigan law in which the plaintiff seeks to defeat immunity by invoking the Act's fraud exceptions are equivalent to fraud-on-the-FDA claims and are thus preempted." (citing *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965–66 (6th Cir. 2004))).

In *Garcia*, the Sixth Circuit recognized one narrow instance where the fraud-on-the-FDA exception was not preempted—when FDA *itself* determines that fraud marred the regulatory approval process. *Garcia*, 385 F.3d at 966 (concluding that a state may incorporate a federal

---

[6] *See, e.g.*, Pls.' Second Am. Master Compl. ¶ 4 (alleging that Defendants failed to report the risk of permanent hair loss to FDA), ¶ 11 (alleging that Defendants misrepresented to FDA that Taxotere was free from permanent side effects).

standard into its tort law); *Cotton v. Johnson & Johnson*, No. 16-2770, 2017 WL 4857552, at *2 (6th Cir. Sept. 22, 2017) (exception applies "only if the FDA makes a formal finding of fraud"); *White*, 538 F. Supp. 2d at 1028–29 ("[W]here a plaintiff presents evidence of federal findings of bribery or fraud on the FDA, the exceptions are not unconstitutional, but where a plaintiff . . . merely alleges bribery or fraud on the FDA but offers no federal findings, the exceptions are unconstitutional."); *see also Lofton v McNeil Consumer & Specialty Pharms.*, 672 F.3d 372, 380 (5th Cir. 2012) (fraud-on-the-FDA exception to Texas's drug product liability statute preempted unless "the FDA itself has found fraud").

Plaintiffs cannot invoke the fraud-on-the-FDA exception here because FDA *itself* has not found fraud in the approval process for Taxotere. *See Zammit v. Shire US, Inc.*, 415 F. Supp. 2d 760, 768 (E.D. Mich. 2006) (explaining that *Garcia* prevents courts "from embarking upon any independent inquiry into any purported deficiencies or fraud in Defendant's submissions to the FDA"). Without this evidence, Sanofi is entitled to summary judgment. *Id.* ("Because the FDA itself has made no such findings . . . Plaintiff cannot invoke the "fraud on the FDA" exception to the immunity enjoyed by Defendant[.]"); *In re Baycol Prods. Litig.*, No. 04-3667, 2009 WL 7836091, at *4 (D. Minn. Feb. 13, 2009) (granting summary judgment where Plaintiff failed to "put forth evidence that the FDA, has, in fact, determined that Defendants committed fraud against it[.]"); *Ammend v. BioPort, Inc.*, No. 03-cv-254, 2006 WL 1050509, at *3 (W.D. Mich. Apr. 19, 2006) (same).

In sum, none of the MPLA's three exceptions apply.

## CONCLUSION

Sanofi is entitled to the "absolute defense" provided by the MPLA. FDA has approved Taxotere for safety and efficacy, and the Taxotere label has always been approved by FDA. Because no exception to the MPLA applies here, the Court should enter summary judgment in Sanofi's favor on all the claims of Plaintiffs in Exhibit A.

Respectfully submitted,
/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*