UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

Sheila Crayton, Case No. 2:17-cv-05923.

### SANOFI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF SHEILA CRAYTON

On December 12, 2019, this Court ordered that, although it is was removing plaintiff Sheila Crayton as an alternate for the second bellwether trial, it would still entertain dispositive motions in her case.[1] Sanofi now moves for summary judgment on Ms. Crayton's claims.[2]

In the three years her case has been pending, Ms. Crayton has failed to come forward with *any* legally sufficient evidence that she has the injury alleged in her complaint ("permanent chemotherapy induced alopecia" or "PCIA") or that her injury was caused by Taxotere. Instead, the PSC ignored the Court-ordered date to produce such evidence, letting the expert deadline for Ms. Crayton come and go without notice to either the Court or Sanofi.[3] As a result, Sanofi unnecessarily expended significant time and resources working up Ms. Crayton's case in pre-trial discovery (including retaining experts to review Ms. Crayton's voluminous medical records) without knowledge or forewarning that the PSC would not be submitting essential expert reports

---

[1] *See* Rec. Doc. 8701.
[2] Ms. Crayton brings claims for failure to warn and breach of warranty in redhibition. *See* Ex. A, Crayton Amended Short Form Complaint (SFC). Proving that she has been injured is essential to both of Ms. Crayton's breach of warranty and redhibition claims. *See Maurer v. Heyer-Schulte Corp.*, No. 92-3485, 2002 WL 31819160, at *5 (E.D. La. Dec. 13, 2002). Because Ms. Crayton has failed to produce evidence from which a reasonable jury could find that she has been injured, both claims fail. *See* Section I, below.
[3] It remains unclear if Ms. Crayton was ever informed that no expert reports would be submitted on her behalf.

on Ms. Crayton's behalf. Because Ms. Crayton failed to produce any evidence of injury – much less the requisite expert evidence required by Louisiana law – the Court should dismiss all of Ms. Crayton's claims and award Sanofi costs.

## **BACKGROUND**

Ms. Crayton's case – along with every other plaintiff in this MDL – is premised on the claim that she has "PCIA" and that it was caused by Taxotere, which the PSC claims is distinct from "temporary and reversible alopecia that ordinarily results from chemotherapy[.]"[4] Because PCIA and its potential causes are not "within common knowledge" of a lay juror, Louisiana law requires the plaintiff to provide expert medical testimony on the issue of causation.[5]

Ms. Crayton filed her lawsuit on June 19, 2017.[6] Five months later, the Court selected her case for initial "Phase One" discovery in anticipation of the second MDL bellwether trial.[7] During that time, Sanofi deposed Ms. Crayton and three additional fact witnesses.[8] On January 29, 2019, the Court selected Ms. Crayton's case to proceed to the second phase of discovery as an alternate for the second bellwether trial.[9]

Two months later, after "Phase Two" discovery was well underway, the PSC asked this Court to remove Ms. Crayton from the trial pool.[10] In their motion, the PSC argued that Ms. Crayton's health prevented her from meaningfully participating in the trial.[11] Absent from the PSC's motion was any assertion that Ms. Crayton's health prevented her from seeing a

---

[4] *See* Rec. Doc. 4407, Second Amended Master Compl. ("AMC") at ¶ 181; *see also* Ex. A (incorporating AMC by reference).
[5] *See infra* Section I.
[6] Ex. B, Crayton PFS § I.4.
[7] Rec. Doc. 1099 (CMO 8A).
[8] *See* Rec. Doc. 1168 (CMO 10).
[9] Rec. Doc. 6017 (CMO 16).
[10] Rec. Doc. 6559 (Plaintiff's Motion to Remove Sheila Crayton from the Second Bellwether Trial Plaintiff Pool). The PSC merely sought to have the Court remove Ms. Crayton from the trial pool and leave her case pending in the MDL.
[11] *Id.*

dermatologist and obtaining required medical expert testimony on her alleged injury.[12]  On May 7, 2019, the Court denied the PSC's motion.[13]

With the expectation that Ms. Crayton's case would proceed toward trial, Sanofi continued active discovery.  In total, Sanofi deposed 12 witnesses (including Ms. Crayton, twice), identified, collected, and reviewed 14,508 pages of medical records, and worked with retained experts on Ms. Crayton's case.  The PSC's deadline to produce expert reports for Ms. Crayton was October 21, 2019.  Although the PSC submitted case-specific expert opinions for Cynthia Thibodeaux, the primary trial plaintiff, Plaintiffs failed to submit case-specific expert opinions for Ms. Crayton.[14]  At no point before the expert deadline did the PSC request an extension for Ms. Crayton or inform Sanofi (or the Court) that no expert reports would be forthcoming.  Rather, the PSC allowed Sanofi to blindly devote significant time and resources to a case the PSC knew in advance lacked sufficient evidence to proceed to trial.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (internal citations omitted).

---

[12] *See generally* Rec. Doc. 6559-1.
[13] Rec. Doc. 6935 (Minute Entry re May 7, 2019 Telephone Status Conference with Liaison Counsel).
[14] *See* Ex. C, Tosti October 21, 2019 Report at 31–32.

**I.      SANOFI IS ENTITLED TO SUMMARY JUDGMENT ON MS. CRAYTON'S CLAIMS.**

Sanofi is entitled to summary judgment on Ms. Crayton's claims because she has failed to adduce legally sufficient evidence that she has PCIA and that Taxotere caused it. In any negligence action, it is the plaintiff's burden to prove "every essential element of [her] case, including the cause-in-fact of damage[.]" *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993); *see also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002); *Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So. 2d 70, 74. "Under Louisiana law [specifically], 'expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge.'" *Burst v. Shell Oil*, No. 14–109, 2014 WL 3893304, at *2 (E.D. La. Aug. 8, 2014) (quoting *Chavers v. Travis*, 2004-0992 (La. App. 4 Cir. 4/20/05), 902 So. 2d 389, 395).[15] Such is the case here.

According to the PSC's expert dermatologist, Dr. Antonella Tosti, PCIA is a "medical condition" that is "[a]bsolutely" diagnosable.[16] Dr. Tosti has testified that because PCIA presents similarly to other types of alopecia, a patient must be assessed by a qualified medical doctor before she can be diagnosed with this condition.[17] Indeed, Dr. Tosti diagnosed the first three bellwether Plaintiffs in this MDL – as well as bellwether plaintiff Cynthia Thibodeaux – with PCIA only after

---

[15] Substantive state law governs plaintiffs' requirements for establishing causation, and every state requires plaintiffs to produce causation testimony from an expert witness where the causal link at issue is, like here, beyond the knowledge or expertise of a lay jury. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prod. Liab. Litig.*, 227 F. Supp. 3d 452, 469–78 (D. S.C. 2017) *aff'd* 892 F.3d 624 (4th Cir. 2018) (conducting fifty state survey and concluding that "although the specific language used by courts var[ies] to some degree, all jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience.").
[16] Ex. D, Tosti Dep. 228:7–13 (Dec. 12, 2019).
[17] *Id.* at 228:14–229:12 (Dec. 12, 2019).

personally examining them with trichoscopy and reviewing pathology results from their scalp biopsies.[18]

Ms. Crayton, however, has never been diagnosed with PCIA or sought treatment for her injury – despite filing her claim three years ago and participating in two years of active pretrial discovery.[19] No dermatologist (retained for litigation or otherwise) has ever examined Ms. Crayton with trichoscopy or ordered a scalp biopsy to determine if she has PCIA.[20] In sum, under Louisiana law, there is no evidence from which a reasonable jury could conclude that Ms. Crayton suffers from the injury she alleges, let alone that her injury was caused by Taxotere. *See, e.g.*, *Stewart v. Capital Safety USA*, 867 F.3d 517, 522 (5th Cir. 2017); *see also Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) ("A plaintiff in [a toxic tort] case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation"). Because Ms. Crayton has failed to produce any evidence from which a reasonable jury could conclude she has been injured in the way she alleges, Sanofi is entitled to summary judgment on her claims.

## II.   SANOFI IS ENTITLED TO REASONABLE EXPENSES SPENT PREPARING TO DEFEND AGAINST MS. CRAYTON'S CLAIMS.

Sanofi is entitled to costs and attorney's fees spent preparing to defend against Ms. Crayton's claims at trial. Rule 37(b) provides: "If a party … fails to obey an order to provide or permit discovery … the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

---

[18] *See* Ex. E, Tosti November 2018 Report at 28; Ex. C at 31. While Sanofi disputes Plaintiffs' allegation that PCIA exists as a medical condition, or that any of the bellwether Plaintiffs suffered from PCIA, this is the injury that Plaintiffs allege and this is the theory by which their expert contends it can be diagnosed.
[19] *See* Rec. Doc. 1099 (CMO 8A, identifying plaintiffs for the second bellwether trial on November 14, 2017); *see also* Ex. B at § VI.6–7; Ex. F, Crayton Dep. Vol. II 342:13–343:2 (Nov. 6, 2018) (no doctor has ever diagnosed Ms. Crayton with hair loss or "persistent hair loss," and she has never inquired about potential treatment for hair loss).
[20] Ex. B at § VII; Ex. G, Crayton Dep. Vol. I 131:16–25 (Sept. 19, 2018).

failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A)–(C) (emphasis added). Sanctions under Rule 37 "serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986). Additionally, "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017) (quoting *Link v. Wabash R. Co*, 370 U.S. 626, 630–31 (1962)). This includes the "inherent power to sanction litigants for a wide range of abuses during litigation." *Echeverry v. Padgett*, No. CV 17-6494, 2019 WL 2524543, at *3 (E.D. La. June 19, 2019); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). "These sanctions may include monetary and injunction sanctions" as well as attorney's fees. *Echeverry*, 2019 WL 2524543, at *3; *see also Chambers*, 501 U.S. at 45–46. Finally, under 28 U.S.C. §1927, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

When the Court denied the PSC's motion to remove this plaintiff from the trial pool, Ms. Crayton remained bound by Court-ordered discovery deadlines to prepare her case for trial, including the deadline to produce expert reports.[21] The PSC's failure to submit essential case-specific expert reports for Ms. Crayton[22] – without any notice to the Court or Sanofi that it would

---

[21] Rec. Doc. 7416 (CMO 14D) (Ordering Plaintiff Expert Reports to be submitted by September 27, 2019; The deadline was later extended to October 21, 2019 pursuant to agreement between the parties).

[22] *See* Ex. C at 31–32 (offering a specific causation opinion in Ms. Thibodeaux's case). Dr. Tosti conducted an in-person examination of Ms. Thibodeaux on June 4, 2019, four months before the expert report disclosure deadline. However, Dr. Tosti never examined Ms. Crayton. In fact, Dr. Tosti testified that she did not know who Ms. Crayton is, and that she had never reviewed any of her medical records. Ex. D at 27:6–14.

not be producing this evidence – was an abuse of the judicial process that was neither substantially justified nor harmless.

The PSC would have known well in advance of the expert report deadline that Ms. Crayton's physical condition made it impossible for her to see a medical professional (even locally) and obtain a diagnosis. Indeed, Ms. Thibodeaux, the primary trial plaintiff, was examined by Dr. Tosti on June 4, 2019 – four months before expert reports were due. Yet at no point during the five months between the Court denying the PSC's request to remove Ms. Crayton and the deadline for expert report disclosures did the PSC notify the Court or Sanofi that it would not be able to identify any medical expert who could testify about Ms. Crayton's injury or its cause. Put another way, the PSC knew for months that Ms. Crayton's case would not be able to proceed to trial but failed to inform the Court or Sanofi that it had no intent of pursuing her case as a bellwether any further. It was not until December 12, 2019, after Sanofi's expert reports were due, that Ms. Crayton was officially removed from the trial pool.[23] As a result, in addition to devoting two years of resources working up Ms. Crayton's case, Sanofi spent significant time and expense having its experts review Ms. Crayton's medical records and all pertinent discovery under the false impression that her case would proceed past expert discovery.[24]

Ordering the PSC to pay the costs and fees Sanofi incurred unnecessarily defending Ms. Crayton's case is an appropriate sanction. *See Jain v. Ford Motor Credit Co.*, 174 F.R.D. 259, 263–64 (E.D.N.Y. 1997) (using inherent powers to order plaintiff's counsel to "reimburse the defendants for the expenses of trial preparation, which would not have occurred had plaintiff's counsel not withheld that the trial would not go forward."); *see also Edwards v. Gen. Motors Corp.*,

---

[23] Rec. Doc. 8701.
[24] *See, e.g.*, Ex. H, Glaspy December 9, 2019 Report at 45; *see also* Ex. I, Miletello December 9, 2019 Report; Rec. Doc. 8701 (December 12, 2019 Order that Ms. Crayton would no longer serve as the alternate plaintiff for the second bellwether trial).

7

153 F.3d 242, 246–47 (5th Cir. 1998) (affirming attorneys' fees sanction under § 1927 where the attorney knowingly kept a meritless case alive without disclosing to defendants or the court that she had decided to abandon prosecution). And, it is the only sanction that will deter similar conduct in the future. Because Ms. Crayton has still yet to produce evidence of her injury (and is no longer in the trial pool), other sanctions (such as prohibiting Ms. Crayton from introducing designated evidence or staying her proceedings) are of no value. Indeed, there is nothing (other than entry of an order requiring proof of diagnosis, *see* Rec. Doc. 10808) to prevent similar plaintiffs who are either unwilling or unable to adduce legally sufficient evidence of their injury and its cause from proceeding through selection for trial and to the summary judgment stage without ever submitting *any evidence* that they have been injured in the way they allege.

With four years of Taxotere litigation nationwide, three years of consolidated litigation in this Court, three full sets of expert disclosures, and one completed bellwether trial, neither the Court nor the parties' time, energy, and resources should be spent on plaintiffs who either cannot, or are unwilling to, provide basic evidence of their injury. Ms. Crayton's case is emblematic of this litigation as a whole. As it stands, of the 12,223 active Plaintiffs who have submitted fact sheets, some 10,472 have never been diagnosed with PCIA. More than 10,770 have never sought treatment for this injury, and some 10,055 have never discussed with a healthcare provider whether Taxotere caused or contributed to their alleged injury.[25] Because the PSC failed to timely notify the parties that it would not pursue a diagnosis of Ms. Crayton, Sanofi is entitled to costs and attorney's fees spent preparing to defend against her claims at trial. *See Chambers*, 501 U.S. at 45–46; *see also* Fed. R. Civ. P. 37(b)(A)–(C); 28 U.S.C. § 1927.

---

[25] *See* Ex. J, email from Jake Woody at BrownGreer (dated July 17, 2020).

## **CONCLUSION**

For the reasons stated above, Sanofi is entitled to summary judgment on Ms. Crayton's claims and to costs and attorney's fees spent preparing to defend against her claims at trial.

    Respectfully submitted,
/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*