## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL No. 16-2740 |
| PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION: "H" (5) |
| | ) | |
| This document relates to: | ) | |
| Antoinette Durden, 16-16635 | ) | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment on Causation Based on the Learned-Intermediary Doctrine (Doc. 6076). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more.

In the instant Motion, Defendants argue that Plaintiff Antoinette Durden cannot establish the essential element of causation in her case. Defendants therefore ask the Court to grant summary judgment in their favor, dismissing both Plaintiff's failure to warn claim and her redhibition claim. The Court will address each claim in turn.

---

[1] Docetaxel is the generic version of Taxotere.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] When considering a summary judgment motion, the Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[4]

## LAW AND ANALYSIS

### I.   Plaintiff's Failure to Warn Claim

Defendants argue that the learned intermediary doctrine mandates summary judgment on Durden's failure to warn claim. Relying on the doctrine, Defendants aver that Plaintiff has failed to introduce evidence that a different warning from Defendants would have led Plaintiff's oncologist, Dr. Sophy Jancich, to change her decision to prescribe Taxotere to Plaintiff. In other words, Defendants argue that the causation chain is broken due to Dr. Jancich's actions as an intermediary. Defendants point to testimony from Dr. Jancich saying that she never read the Taxotere label in its entirety and cannot remember the last time she read the labeling at all. A label change therefore would have had no effect on her decision to prescribe Taxotere to Plaintiff, according to Defendants. Defendants further argue that there were essentially only two chemotherapy regimens available to Plaintiff Durden at the time of her treatment—a Taxotere-containing regimen and an Adriamycin-containing

---

[2] FED. R. CIV. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).

regimen. Because Durden was strongly opposed to taking Adriamycin, Defendants aver that even considering the non-disclosed risk of permanent alopecia with Taxotere, the evidence shows that Durden would have taken Taxotere anyway.

In response, Plaintiff argues that this case raises a triable issue of fact on causation. Even though Dr. Jancich could not recall reading the Taxotere label in its entirety, she relied on third-party resources that would have alerted her about a label change. Plaintiff emphasizes that today, Dr. Jancich warns patients about Taxotere's risk of permanent hair loss, and according to Plaintiff, Dr. Jancich now recommends Taxol to her patients instead of Taxotere. Considering the evidence, Plaintiff argues that there is an issue of fact on whether Dr. Jancich would have changed her decision to prescribe Taxotere had she been warned of its risk of permanent alopecia.

Under Louisiana law, failure to warn claims involving prescription drugs are subject to the learned intermediary doctrine.[5] Under the doctrine, the manufacturer of a prescription drug "has no duty to warn the patient, but need only warn the patient's physician."[6] In other words, a manufacturer's duty runs only to the physician—the learned intermediary.[7]

The Fifth Circuit has held that there is a two-prong test governing inadequate warning claims under the Louisiana Products Liability Act ("LPLA") when the learned intermediary doctrine is applicable:

> First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician. Second, the plaintiff must show that this failure to warn the physician was

---

[5] Grenier v. Med. Eng'g Corp., 99 F. Supp. 2d 759, 765 (W.D. La. 2000) (applying Louisiana law), aff'd, 243 F.3d 200 (5th Cir. 2001).

[6] Willett v. Baxter Int'l, Inc., 929 F.2d 1094, 1098 (5th Cir. 1991).

[7] Grenier, 99 F. Supp. 2d at 766.

> both a cause in fact and the proximate cause of the
> plaintiff's injury.[8]

Regarding the second prong, the law is well established that, to prove causation, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product."[9]

As the Court has discussed in prior rulings, the chemotherapy decision-making process is unique. The Court must consider not only whether an oncologist would have warned his or her patient of the risk of permanent alopecia but also how patient choice then would have steered the conversation and the ultimate prescribing decision. As articulated by Dr. Jancich, "With each patient, we go over the potential side effects of the regimens, potential regimens. And if the patient elects not to pursue, then we don't prescribe the chemotherapy."[10]

Turning to its analysis, the Court agrees with Plaintiff that there is a triable issue of fact on causation. First, the Court is unimpressed with Defendants' assertion that Dr. Jancich did not read the Taxotere label in its entirety. Dr. Jancich testified that she is familiar with the prescribing information for Taxotere, including the listing of adverse reactions contained in the package insert.[11] She further testified that she stays informed of drug labels through several third-party sites.[12] She specifically identified a site

---

[8] Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 265–66 (5th Cir. 2002) (internal citation omitted).

[9] *Willett*, 929 F.2d at 1099. *See also* Pellegrin v. C.R. Bard, No. 17-12473, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018).

[10] Doc. 7369-1 at 30.

[11] *See id*. at 34–35.

[12] *Id*. at 7.

called UpToDate.[13] Therefore, the Court will allow a jury to weigh this competing evidence.

Next, the Court notes that after learning of Taxotere's risk of permanent alopecia, Dr. Jancich began counseling her patients about this risk.[14] She testified that "[i]t leads to longer discussions, especially with our younger breast cancer patients, where the potential for permanent hair loss is a significant concern."[15] The evidence shows, then, that Dr. Jancich would have warned Durden of Taxotere's risk; and given that Durden was specifically concerned about hair loss,[16] Dr. Jancich may have helped Durden identify an appropriate non-Taxotere regimen to take.

Notably, Defendants have highlighted strong evidence suggesting that Dr. Jancich would have chosen from only two regimens—regimens that were deemed "preferred," according to certain medical guidelines:

> Q:    If Ms. Durden did not want to receive Adriamycin or docetaxel, were there other regimens that you could have prescribed?
>
> A:    At that time, that would have been my choice, those two.
>
> Q:    And are there other regimens that you could have allowed Ms. Durden to take if she decided she did not want a regimen including Adriamycin or docetaxel?
>
> A:    Those are the regimens that I would have selected from. [. . . .] The preferred regimens.[17]

---

[13] *Id.*

[14] *See id.* at 18.

[15] *Id.* at 23.

[16] *See id.* at 13 ("[S]he had concerns about the side effects, and I know that hair loss was a concern.").

[17] Doc. 7454-1 at 14.

However, while Plaintiff admits that she was strongly opposed to Adriamycin,[18] Plaintiff has pointed to evidence suggesting that if Plaintiff had been strongly opposed to Taxotere as well, Dr. Jancich would have expanded her search for the right drug and looked beyond the preferred regimens. Indeed, as Dr. Jancich noted in her testimony, there were other regimens "listed right below" the preferred regimens in the guidelines.[19]

In her briefing, Plaintiff asserts that "[t]here were numerous chemotherapy regimens appropriate for [Durden's] type of breast cancer; in fact, several did not include Adriamycin or Taxotere."[20] Indeed, the record supports this assertion. Dr. Jancich testified as follows:

> Q:   When Ms. Durden told you that she was opposed to a chemotherapy regimen that contained Adriamycin, the only preferred adjuvant regimens that did not contain Adriamycin [was] one, TC, docetaxel and cyclophosphamide, correct?
>
> A:   There are other regimens.[21]

In addition to this, Dr. Jancich unequivocally testified that she "would have honored [Durden's] choice to decide not to take Taxotere because of a risk of permanent hair loss."[22] She testified that she "would have looked at another regimen."[23] She even specifically identified the "CMF regimen" as an option they could have considered for Durden.[24]

The evidence suggests, then, that Dr. Jancich would have warned Durden of Taxotere's risk, and she would have discussed and respected any

---

[18] Doc. 7369 at 2.
[19] *See* 7369-1 at 15.
[20] Doc. 7369 at 2.
[21] Doc. 7369-1 at 15 (objection omitted).
[22] *Id*. at 31.
[23] *Id*. at 33.
[24] *Id*. at 27.

concerns that Durden had about the risk. The Court must allow the jury to decide how this conversation would have looked and whether Dr. Jancich would have expanded her search beyond the "preferred regimens."

## II. Plaintiff's Redhibition Claim

Defendants argue that the learned intermediary doctrine is dispositive of Plaintiff's redhibition claim in addition to her failure to warn claim. Alternatively, Defendants argue that Plaintiff has no evidence to establish a "defect" or "vice" as required to prove a redhibition claim under Louisiana law. Accordingly, Defendants seek summary judgment on this claim.

Article 2520 of the Louisiana Civil Code provides that a defect is redhibitory if it "renders the thing useless" or renders its use "so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect."[25] If a defect does not render the thing totally useless, it may still be redhibitory if the defect "diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price."[26] To determine whether a defect is redhibitory, a court asks whether a reasonable person would still have purchased the thing if he had known of the defect.[27] "It is of no moment that the plaintiff buyer who files suit to rescind a sale testifies that he would not have purchased the thing if he would have known of the vice."[28]

Plaintiff Durden took Taxotere to increase her chance of survival. Given that Plaintiff is alive today, Taxotere worked and was far from being "useless." Indeed, as this Court has noted in a prior ruling, doctors still prescribe

---

[25] LA. CIV. CODE art. 2520.
[26] Id.
[27] Napoli v. Gully, 509 So. 2d 798, 799 (La. App. 1 Cir. 1987).
[28] Id.

Taxotere today.[29] Dr. Jancich testified that she still prescribes it,[30] and one of Plaintiff's experts, Dr. Linda Bosserman, testified that Taxotere has contributed to saving lives.[31] Because Taxotere is demonstrably effective and worked as intended, Plaintiffs cannot establish a redhibitory defect.[32]

## CONCLUSION

Accordingly, for the foregoing reasons, the Motion for Summary Judgment on Causation Based on the Learned-Intermediary Doctrine (Doc. 6076) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's redhibition claim is **DISMISSED WITH PREJUDICE**. Her other claims remain pending.

New Orleans, Louisiana this 22nd day of July, 2020.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[29] Doc. 7571.

[30] Doc. 6076-5 at 10.

[31] *See* Doc. 6076-9 at 5.

> Q:   You certainly would agree that it's possible that these three women are here and alive today because they received systemic treatment for their cancer that included Taxotere?
>
> A:   Yes, I would agree to that statement.

[32] *E.g.*, *In re* Rezulin Prods. Liab. Litig., 361 F. Supp. 2d 268, 280 (S.D.N.Y. 2005) (granting defendant summary judgment in MDL case applying Louisiana law where plaintiffs could not demonstrate a redhibitory defect in a prescription medication because the drug was effective in treating the condition it was designed to treat).