UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL No. 16-2740 SECTION: "H" (5) |
| This document relates to: Antoinette Durden, No. 16-16635 | | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment Based on the Statute of Limitations (Doc. 6077). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[1] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for February 1, 2021.

Plaintiff Antoinette Durden alleges that she was treated with Taxotere from October 2011 through February 2012 and began experiencing persistent alopecia in March 2012. She filed her lawsuit in November 2016, years after

---

[1] Docetaxel is the generic version of Taxotere.

she allegedly sustained her injury. In the instant Motion, Defendants move for summary judgment, arguing that her claims are prescribed.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] When considering a summary judgment motion, the Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.[4]

## LAW AND ANALYSIS

Under Louisiana Civil Code article 3492, the prescriptive period for products liability claims is one year.[5] Generally, the period begins to run from the day the injury or damage is sustained.[6] This Court has recognized that, on the basis of the allegations in the Second Amended Master Complaint, a plaintiff's hair loss becomes permanent six months after completing chemotherapy.[7] Plaintiff Durden finished chemotherapy in February 2012. Using the definition from the Master Complaint, her injury manifested itself six months later in August 2012. In her Plaintiff Fact Sheet, however, Durden

---

[2] FED. R. CIV. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).
[5] LA. CIV. CODE art. 3492. *See also In re:* Xarelto (Rivaroxaban) Prods. Liab. Litig., MDL No. 2592, 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017).
[6] Carter v. Matrixx Initiatives, Inc., 391 F. App'x 343, 344 (5th Cir. 2010).
[7] Doc. 9110. Notably, in her Short Form Complaint, Durden specifically adopted the allegations of the Second Amended Master Complaint. Doc. 7 in No. 2:16-cv-16635.

2

alleges that she suffered persistent alopecia beginning in March 2012, one month after completing chemotherapy.[8] Based on these allegations, Defendants aver that Durden's hair loss became permanent six months later in September 2012. Regardless of whether the Court uses August or September 2012 as the date of her injury, Durden did not file her lawsuit until November 2016, more than four years later. Accordingly, on the face of her pleadings, her case is prescribed.

Defendants argue that contra non valentem does not apply here. Defendants emphasize that in September 2012, Durden had enough notice to prompt an inquiry, but she did not investigate. Defendants cite Durden's deposition, in which she testified that after one year of waiting for her hair to regrow, she thought Taxotere was causing her hair loss. Defendants note that if Durden had investigated, she would have discovered the basis for her lawsuit. According to Defendants, "there has been more than a decade of public discussion about permanent hair loss and Taxotere."[9] Defendants aver that this information was readily available to Plaintiff Durden.

In response, Plaintiff avers that she did not realize the permanent nature of her hair loss until seeing a television ad in 2016. She testified that until that time, she remained hopeful that her hair would return. Since she had been told her hair loss would be temporary, she kept expecting it to regrow. She consulted with doctors and tried various treatments to encourage regrowth. Plaintiff argues because she sought solutions for her hair loss, there is an issue of fact for the jury to resolve on contra non valentem.

---

[8] Doc. 6077-3 at 15–16.
[9] Doc. 6077 at 12.

3

"If the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred."[10] The doctrine of contra non valentem "provides some grace for those plaintiffs who are unaware that their injury was caused by a tort."[11] The doctrine states that prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[12] This occurs "when the plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury."[13]

"There is no requirement that a patient be informed by an attorney or physician of a possible [claim] before prescription begins to run."[14] Rather, prescription begins to run "when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim."[15] Accordingly, to toll prescription, a plaintiff who suspects that something is wrong must act reasonably to discover the cause of the problem; otherwise, contra non valentem will not apply.[16] "The ultimate issue is the reasonableness of the [plaintiff's] action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct."[17]

---

[10] Hoerner v. Wesley-Jensen, 684 So. 2d 508, 510 (La. App. 4 Cir. 1996).
[11] *Xarelto*, 2017 WL 4517287, at *2.
[12] *Id*. (quoting Bailey v. Khoury, 891 So. 2d 1268, 1276 (La. 2005)) (internal quotations omitted).
[13] *Id*.
[14] *Id*. (quoting Breaux v. Danek Med., No. 95-1730, 1999 WL 64929, at *6 (E.D. La. Feb. 4, 1999)) (internal quotations omitted).
[15] Luckett v. Delta Airlines, Inc., 171 F.3d 295, 300 (5th Cir. 1999).
[16] *See* Chevron USA, Inc. v. Aker Mar., Inc., 604 F.3d 888, 894 (5th Cir. 2010).
[17] Campo v. Correa, 828 So. 2d 502, 511 (La. 2002).

4

Plaintiff has failed to create an issue of fact on contra non valentem. Instead, the evidence establishes that Plaintiff suspected something was wrong and yet failed to investigate its cause. Plaintiff testified that before her chemotherapy, she was told that her hair loss would be temporary. The record shows that after she finished her treatment, however, Plaintiff grew concerned.[18] She spoke to her oncologist, Dr. Sophy Jancich, about her hair loss around that time.[19] Dr. Jancich told Plaintiff that if her hair was not coming back, "it's likely not going to come back."[20] In 2013, Plaintiff spoke to her primary care physician, Dr. Priya Velu, about her hair loss.[21] Plaintiff also testified that in 2014, she "noticed that it wasn't coming back in."[22] The record shows, then, that Plaintiff had enough notice to call for an inquiry.

Critically, however, Plaintiff points to no evidence showing that she asked her doctors about the cause of her hair loss. While Plaintiff sought treatment from her doctors, this alone is insufficient. This differs from the evidence that was before the Court regarding Plaintiff Barbara Earnest. Plaintiff Earnest testified that when she grew concerned about her hair loss, she asked her oncologist about it, and he told her that "it's going to come back. It just takes time."[23] Similarly, Plaintiff Elizabeth Kahn testified that she spoke to her gynecologist who told her that "as you age, your hair gets thinner," giving Kahn a reason to believe something other than her chemotherapy treatment was causing her poor hair regrowth.[24] Unlike these plaintiffs, Plaintiff Durden presents no evidence showing that any of her doctors told her,

---

[18] *See* Doc. 7372-1 at 3.
[19] *See* Doc. 7372-1 at 5–6.
[20] Doc. 7456-1 at 4–5.
[21] Doc. 7372-1 at 26.
[22] *Id.* at 3.
[23] Doc. 7571.
[24] Doc. 9885.

after her treatment, that regrowth can take time or that something else was causing her injury. Indeed, to the contrary, Dr. Jancich told Durden that her hair was "likely not going to come back."[25]

Previously, this Court has relied on *Hoerner v. Wesley-Jensen*.[26] In *Hoerner*, the plaintiff suffered an eye infection and alleged it was from extended-wear contacts.[27] She had used the contacts in 1987 for six months before developing the severe infection, for which she received immediate treatment.[28] Unlike in the instant case, the *Hoerner* plaintiff asked her doctor about the cause of her injury, and he told her it was some kind of "bug" she caught.[29] In 1989, however, she read an article and learned that extended-wear contacts present a significant risk of severe eye infections.[30] She filed suit weeks later.[31] Applying contra non valentem, the court deemed her inaction reasonable:

> Not until Mrs. Hoerner read in the popular press in 1989 that users of extended-wear contact lenses were more likely to contract eye infections than those using daily-wear lenses did she suspect that she had been injured by another's conduct, rather than by a "bug" to which anyone could have been exposed.[32]

Unlike the plaintiff in *Hoerner*, Durden presents no evidence to show that she reasonably relied on information she discovered from an investigation.

Plaintiff argues that she did not learn of the potential association between Taxotere and permanent hair loss until she saw a television

---

[25] Doc. 7456-1 at 4–5. *See also* Doc. 6077-4 at 12 ("She was the doctor that told me that it was going to be permanent hair loss.").
[26] 684 So. 2d 508 (La. App. 4 Cir. 1996).
[27] *Id.* at 509.
[28] *Id.*
[29] *Id.* at 514.
[30] *Id.* at 509.
[31] *Id.*
[32] *Id.* at 514.

6

advertisement in 2016. Prescription, however, begins to run "when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim."[33] The record shows that from the time Plaintiff's injury began to manifest, Plaintiff attributed her hair loss to her chemotherapy.[34]

Because Plaintiff has failed to create an issue of fact on contra non valentem, the Court finds that her case was prescribed by the time she filed suit in November 2016.

## CONCLUSION

Accordingly, for the foregoing reasons, the Motion for Summary Judgment Based on the Statute of Limitations (Doc. 6077) is **GRANTED**. Plaintiff's case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 22nd day of July, 2020.

JANE TRICHE MILAZZO  
UNITED STATES DISTRICT JUDGE

---

[33] *Luckett*, 171 F.3d at 300. *See also Carter*, 391 Fed. App'x at 345–46 ("It is not the rule in Louisiana . . . that the prescriptive period does not begin until conclusive dispositive proof of a causal connection between the suspected injury and the putative tortfeasor is established.").

[34] *See* Doc. 6077-4 at 5. Plaintiff actually testified that she attributed her injury to Taxotere specifically, but the Court finds this suspect and instead interprets her testimony to mean that she attributed her injury to her chemotherapy in general.

7