UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2740** |
| | **SECTION "H" (5)** |
| **THIS DOCUMENT RELATES TO:** *Cynthia Brown*, Case No. 2:18-cv-06428 *Sandra Burks*, Case No. 2:18-cv-00686 *Angela Durden*, Case No. 2:18-cv-01544 *Juanita Greer*, Case No. 2:18-cv-11728 *Hattie Grines*, Case No. 2:16-cv-15319 *Mildred Kumar*, Case No. 2:17-cv-15311 *Minnie Moore*, Case No. 2:18-cv-12295 *Shirlon Pigott*, Case No. 2:18-cv-08673 *Melissa Roach*, Case No. 2:17-cv-07918 *Cindy Smith*, Case No. 2:18-cv-07702 *Emma Willie*, Case No. 2:18-cv-03857 | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED SHORT FORM COMPLAINTS OF BELLWETHER POOL PLAINTIFFS**

The Court should deny Plaintiffs' Motions for Leave to File Amended Short Form Complaints ("SFCs") for plaintiffs in the fourth bellwether trial pool (Rec. Docs. 10603 and 10668, collectively, "Motions") as set forth herein.[1] The Court should deny Plaintiffs' proposed amendments to their injury definitions set forth in paragraph 12 of their SFCs for the same reasons as it has rejected all previous such proposed amendments. *See* Order (Rec. Doc. 8702); Order (Rec. Doc. 8703); Order (Rec. Doc. 10465); *see also* Pre-Trial Order No. 105 (Rec. Doc. 10338); Order (Rec. Doc. 10843). The Court should also reject all proposed amendments that do not "add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical

---

[1] Plaintiff Mildred Kumar filed her Motion for Leave and proposed amended SFC on June 19, 2020 (Rec. Doc. 10603). The ten remaining trial four Plaintiffs filed their joint motion for leave and proposed amended complaints on June 29, 2020 (Rec. Doc. 10688), presenting substantially similar arguments and proposed amendments. By agreement of the parties and this Court's order, the motions will be submitted on the same date for contemporaneous consideration, and are addressed jointly herein.

1

care and treatment and/or that Plaintiff's communications with medical professionals." *See* PTO 105; Order (Rec. Doc. 10843). That is, the Court should reject all proffered allegations which are not 1) <u>factual</u>, 2) <u>particularized</u> to each Plaintiff, and 3) individual and specific to each Plaintiff's <u>medical care and treatment</u> or <u>communications with medical professionals</u>. Finally, the Court should reject allegations that are futile, including improper claims under Mississippi state law.

For the Court's convenience, a table of all trial four Plaintiffs' paragraph 12 proposed amendments is attached as Exhibit A. A table identifying Sanofi's specific objections to Plaintiffs' proposed allegations is attached as Exhibit B.

## LEGAL STANDARD

As this Court has set forth in its numerous rulings on previous proposed amendments:

> Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires."[2] However, leave to amend "is by no means automatic."[3] Instead, "decisions concerning motions to amend are 'entrusted to the sound discretion of the district court.'"[4] While leave should be freely given, "that generous standard is tempered by the necessary power of a district court to manage a case."[5] In deciding whether to grant leave, courts should consider five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[6]

Order (Rec. Doc. 10465). In addition, in its Pre-trial Order No. 105, this Court narrowly authorized Plaintiffs in MDL 2740 to amend their Short Form Complaints in response to its rulings on statute of limitations. Citing its prior rulings denying Plaintiffs' proposed Third Amended Master Complaint, *see* Order (Rec. Doc. 8702), and denying Plaintiffs' efforts to submit the same

---

[2] Fed. R. Civ. P. 15(a)(2).

[3] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir.1993).

[4] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (*quoting Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir.1998)).

[5] *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

[6] *Smith*, 139 F.3d at 595 (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

allegations through amended Short Form Complaints, *see* Order (Rec. Doc. 8703), the Court provided:

> **2. Short Form Complaint Allegations and Amendments – Statute of Limitations - Permitted.** Within the terms set forth in this Order, Plaintiffs may amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals.

PTO 105 (Rec. Doc. 10338). Rule 15(a), Fifth Circuit law, and this Court's existing orders warrant denial of many of Plaintiffs' proposed amendments, as described below.

## LAW AND ARGUMENT

### I. Plaintiffs' Attempts to Re-Define Their Injuries Through SFC Paragraph 12 Should Again Be Rejected.

The reasons to deny Plaintiffs' proposed paragraph 12 revisions are by now well settled. This Court has repeatedly and expressly denied Plaintiffs' attempts to revise their responses to SFC prompt 12, which requests the "nature and extent" (including "duration" and "date of onset") of their injuries, to avoid dismissal for untimely filing. Most recently, the Court explained that Ms. Kahn's proposed revisions to paragraph 12 of her SFC were:

> an obvious attempt by Plaintiff to distance herself from the [injury] definition provided in the Master Complaint. The Court has not permitted other Plaintiffs to make such amendments [*citing* Doc. 8702], and the Court will not permit Plaintiff Kahn to do so either. Individual Plaintiffs will be held to the definition provided in the Master Complaint.

Order (Rec. Doc. 10465). Since first filed on March 31, 2017, the Master Complaint has defined Plaintiffs' alleged injury as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." *See* Rec. Docs. 312 at ¶ 181 (Plfs.' Master Long Form Complaint), 689 at ¶ 180 (Plfs.' First Amended Master Long Form Complaint), 4407 at ¶ 181 (Plfs.' Second Amended Master Long Form Complaint) (emphasis added). In that time, among other

3

applications, Magistrate Judge North has used this definition in resolving discovery disputes,[7] and this Court has cited it in ruling on summary judgment motions based on the statute of limitations.[8]

Yet more than three years into this litigation and after full company discovery and a trial to verdict, extensive motion practice, and precedential rulings based on the injury as alleged in Plaintiffs' Master Complaint, Plaintiffs once again attempt to re-define their injuries to avoid the facial untimeliness of their complaints. By the present Motions, nine of eleven Plaintiffs[9] seek to amend paragraph 12 of their SFCs. Plaintiff Greer, for example, proposes to revise her injury description by deleting the phrase "approximately 6 months" from her paragraph 12 response—a plain departure from the Master Complaint. *Compare* Greer SFC ¶ 12 (Rec. Doc. 1 in Case No. 2:18-cv-11728) ("Permanent hair Loss approximately 6 months after discontinued use of docetaxel to present") (emphasis added) *with* Greer Proposed Amended SFC ¶ 12 (Rec. Doc. 10668-9) ("Permanent hair loss after discontinued use of docetaxel to present."). Several other Plaintiffs added the phrase "beginning sometime after treatment with Taxotere" to their descriptions, despite this Court's express rejection of such language in its *Kahn* ruling. *Compare, e.g.*, Brown SFC ¶ 12 (Rec. Doc. 1 in Case No. 18-cv-06428) ("Permanent/persistent hair loss and diffuse thinning of hair") *with* Brown Proposed Amended SFC ¶ 12 (Rec. Doc. 10668-3) ("Permanent, irreversible, and disfiguring alopecia beginning sometime after treatment with Taxotere (docetaxel) and continuing to present.") (emphasis added); *see also* Order (Rec. Doc. 10465) ("The Court will not […] permit Plaintiff to amend Question 12 of her SFC to state that her injury occurred *sometime* after her Taxotere treatment."). The Court should deny these latest amendments as it has all

---

[7]   *See* Minute Entry (Rec. Doc. 3473) at 2 (for the purposes of 30(b)(6) deposition, "the term 'persistent alopecia' shall mean that which remained six months after chemotherapy ended and without resolution.").

[8]   *See* Order (Rec. Doc. 7571) at 2 ("According to the Master Complaint, Plaintiffs' injuries—disfiguring permanent alopecia—manifested six months after the completion of chemotherapy.").

[9]   Plaintiffs Grines and Roach propose no amendments under paragraph 12 of their SFCs.

4

previous attempts. *See* Order (Rec. Doc. 10465); Order (Rec. Doc. 8703) (denying paragraph 12 amendments for trial three Plaintiffs Stewart, Sanford, and Hughes); *see also* Order (Rec. Doc. 8702) (rejecting revised injury allegations in Third Amended Master Complaint).

The Court's PTO No. 105 does not alter this analysis or result. PTO No. 105 does not authorize any amendment to the description or definition of a Plaintiff's injury through paragraph 12 of her SFC. Rather, the Order permits the addition of "factual allegations" related to a Plaintiff's medical care, treatment and communications with medical professionals. PTO No. 105. The Order directly cited the Court's previous rulings on proposed amendments (Rec. Docs. 8702 and 8703) including its denial of paragraph 12 revisions; it did nothing to alter or abrogate those prior rulings, but extended them to other pending MDL cases. Consistent with this, the Court's ruling rejecting Plaintiff Kahn's proposed paragraph 12 revisions was issued on May 27, 2020— more than two weeks after PTO 105 was issued on May 11, 2020—and cited its previous rejection of such revisions. Rec. Doc. 10465; *see also* Order (Rec. Doc. 10843) (declining to rule on Plaintiffs' objections to PTO 105, and again citing the Court's rejection of amendments to Plaintiffs' injury definition). The Court should deny Plaintiffs' proposed amendments to paragraph 12 of their SFCs for the same reason it has rejected all previous such proposals.[10]

### II. Plaintiffs' Non-Factual and Non-Particularized Allegations Should Be Stricken.

The Court should reject all non-factual and non-particularized medical allegations presented in Plaintiffs' proposed Amended SFCs. PTO 105 narrowly permits Plaintiffs to "add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." *See* PTO

---

[10] Sanofi does not substantively object to Plaintiff Pigott's proposed amendments to paragraph 12 of her SFC, which do not concern the definition, duration, or onset of her injury. *See* Exhibit A. However, because PTO 105 does not authorize such amendments, and in the interest of administrability, Sanofi submits that the Court should disallow all amendments to paragraph 12 under PTO 105 in these and future cases.

5

105.  Many of Plaintiffs' proposed amendments are improper legal conclusions not authorized by PTO 105.  Even those allegations which are "factual" are often boilerplate statements parroted across complaints with at most, different names and dates copied in.  Such amendments run afoul of the scope and the intent of PTO 105, and should be rejected.

### A.  Non-factual amendments are not authorized for good reason.

PTO 105 plainly authorizes only "factual allegations" related to Plaintiffs' particular care, treatment, and communications with medical providers.  It does not grant Plaintiffs a Short Form Complaint "do-over," allowing them to revise or re-plead any claims or allegations which they might have included in their original SFC—and it certainly does not permit appended legal conclusions on issues of general liability such as adequacy of warnings, negligence, or causation.

There are important reasons for PTO 105's narrow scope.  At the Court's direction, inventory-wide legal theories and allegations were addressed through the Master Complaint at the outset of MDL 2740.  *See* Exhibit B, Hr'g Tr. at 33:10–21 (Nov. 10, 2016) (Engelhardt, J., presiding) (Judge Engelhardt explained that a Master Complaint is used to "tee everything up" and specifically instructed that a Master Complaint should be addressed "early on" by liaison counsel). Based on these allegations, the parties have conducted all discovery against Sanofi, including dozens of depositions taken and defended around the world.  Multiple rounds of fact and expert discovery on general liability issues including warnings, causation, regulatory responsibilities, etc. have been completed, and a case tried to verdict based on this discovery and associated defenses. This Court and Magistrate Judge North have issued innumerable rulings on these discovery processes and the admissibility of various evidence and arguments based on the general claims and allegations set forth in Master Complaint.  This Court has recognized the prejudice that would result from revising such general allegations at this late date.  *See* Order (Rec. Doc. 8702) at 4 ("If

6

the Court were to allow Plaintiffs to amend at this late stage, this would negate a significant amount of the work that has been done in this MDL."). Having rejected Plaintiffs' attempt to undo this settled progress collectively through their Third Amended Master Complaint, this Court did not authorize them to do so individually through SFC amendments under PTO 105.

Yet Plaintiff Mildred Kumar's proposed amended SFC contains multiple legal conclusions not related to her care or treatment. In particular, Ms. Kumar alleges that no "notices or warnings provided by her chemotherapy drug manufacturer, or otherwise available to her upon reasonable investigation would have suggested" that negligence had occurred. Kumar Proposed Amended SFC ¶ 6 (Rec. Doc. 10603-1). She goes on to allege:

> 8. As a layperson, it was unrealistic for Plaintiff to perceive any injury at the time of the wrongful acts complained of herein, or six months thereafter or later, as she cannot reasonably be held to have knowledge of negligent acts and corresponding injuries which were known only to the manufacturer of her chemotherapy drug, and kept secret, and a few informed attorneys.
>
> 9. As a result of the actions of the Defendants as set forth herein, Plaintiff has suffered compensable injuries based on the following Counts […]

*Id.* At ¶¶ 7-9. In her Motion, Plaintiff Kumar admits that paragraph eight is "arguably not 'factual' in nature," but that she "thought it important for this Honorable Court and the Defendants to understand her position on the issue of notice and knowledge." Plaintiff Kumar's Memorandum In Support Of Motion for Leave to File an Amended Complaint (Rec. Doc. 10603-2). The same can be said of her allegations regarding what might have been suggested by notices or warnings "available to her upon reasonable investigation," the occurrence of negligence and any causal relationship to her alleged injury.

Whatever Plaintiff Kumar's thought process, non-factual assertions like Ms. Kumar's are not authorized under PTO 105. *See* Order (Rec. Doc. 10843). Moreover, such allegations are not relevant to limitations analysis under the Court's rulings which gave rise to PTO 105. The Court

7

has made clear that a defendant's alleged failure to warn does not itself delay the running of limitations in a failure to warn case. *See* Order (Rec. Doc. 10807) ("this Court has previously rejected this circular argument in its prior rulings."). Such amendments should be rejected.

### B. Boilerplate factual allegations do not satisfy PTO 105.

Again, PTO 105 permits only "factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." *See* PTO 105. Though factual, many of Plaintiffs' proposed amendments are so formulaic as to strain the meaning of *particularized*, *individual* and *specific*. Such proposed amendments should be denied.

For example, regarding her expectations of hair loss, Plaintiff Greer makes only the generic statements that:

- "Prior to administration of TAXOTERE®/docetaxel, Plaintiff was told by her healthcare providers that if any hair loss occurred it would be temporary and would come back"; and

- "Prior to Plaintiff consenting to the administration of TAXOTERE® /docetaxel, Plaintiff was NOT told that TAXOTERE® /docetaxel could cause permanent hair loss. Plaintiff believed and was told by her healthcare providers that if hair loss occurred, it was temporary and would come back."

Rec. Doc. 10668-6 at 13.a-b. Similarly, Plaintiffs Smith and Willie make identical generic allegations that:

- "Plaintiff did not receive any warnings that her use of Taxotere/Docetaxel may or would result in permanent hair loss."

Rec Docs. 10668-11 at 13.5; 10668-12 at 13.4. Plaintiffs Pigott and Roach state identically that:

- "At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss."

Rec. Doc. 10668-9 at 13.2; 10668-10 at 13.3.

These boilerplate assertions simply parrot the general allegations of the Master Complaint

8

and are not the type of particularized, specific facts called for by PTO 105. Indeed, any Plaintiff in MDL 2740 could present the same verbatim statements—as many of these Plaintiffs do. Such allegations are notably *unlike* the particularized facts citing medical communications that Ms. Kahn presented and this Court approved, and on which the above are ostensibly modeled:

> At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss. **In fact, one of Plaintiff's clinical trial nurses made a point to introduce Plaintiff to another patient whose hair was growing back to reassure Plaintiff that after chemotherapy she would have a full head of hair again**.

Kahn Amended SFC (Rec. Doc. 9166-2) at 13.3.

The language and structure of Plaintiffs' proposed amendments run in such close parallel that none can fairly be called particularized, individual, and specific as required by PTO 105. Even where dates or names of healthcare providers are plugged in, the allegations amount to boilerplate recitations that shed little light on Plaintiffs' individual cases. For example, Plaintiffs Brown, Grines, Pigott, Roach, Smith, and Willie each recite that "prior to undergoing chemotherapy treatment in [date]," she "discussed potential [chemotherapy] side effects with her prescribing oncologist, [doctor's name]." Rec. Docs. 10668-3 at ¶ 2, 10668-7 at ¶ 1, 10668-9 at ¶ 1, 10668-10 at ¶ 1, 10668-11 at ¶ 2, 10668-12 at ¶ 2.

Many of these boilerplate allegations do not concern Plaintiff's medical care, treatment, or communications at all, but Plaintiff's own personal beliefs regarding her hair. For example, Plaintiff Grines alleges that:

- "Plaintiff believed that she would experience full hair re-growth following completion of her chemotherapy treatments."

Rec. Doc. 10668-7 at ¶ 4; *see also* Brown ¶ 5 (Rec. Doc. 10668-3) (similar), Pigott ¶ 3 (Rec. Doc. 10668-9) (similar), Roach ¶ 4 (Rec. Doc. 10668-10) (same), Smith ¶ 6 (Rec. Doc. 10668-11) (similar), Willie ¶ 5 (Rec. Doc. 10668-12) (similar). Likewise, Grines alleges that:

- "Plaintiff did not suspect she may be suffering from permanent hair loss caused by Taxotere until she observed legal advertisements, in 2016."

Rec. Doc. 10668-7 at ¶ 9; *see also* Brown ¶ 10 (Rec. Doc. 10668-3) (similar), Greer ¶ g (Rec. Doc. 10668-9) (similar), Kumar ¶ 7 (Rec. Doc. 10603-1) (similar), Roach ¶ 10 (Rec. Doc. 10668-10) (similar), Smith ¶ 12 (Rec. Doc. 10668-11) (similar), Willie ¶ 8 (Rec. Doc. 10668-12) (similar). Such personal beliefs do not constitute or even reference allegations regarding medical care or communications. In fact, to the extent they reference legal advertisements, they invoke distinctly non-medical communications which this Court has repeatedly disregarded in its limitations analysis. *See* Order (Rec. Doc. 10833) at 6-7 (granting summary judgment on timeliness over Plaintiff Durden's claim she was unaware of injury and cause until viewing legal advertisement).[11]

PTO 105 grants limited authorization for addition of particularized facts regarding Plaintiffs' medical care and communications. It does not permit Plaintiffs to copy and paste generic allegations devoid of specific facts, unrelated to their medical care, and made up of whole cloth in conflict with prior sworn statements. Leave to file such amendments should be denied.

### III.    Plaintiffs' Proposed Limitations Allegations Are Futile.

Even if they fell within the limited scope of PTO 105, denying Plaintiffs leave to file amended SFCs would be warranted because their proposed amendments are futile under Mississippi law. Unlike Louisiana, Mississippi has no doctrine of *contra non valentem*. For the vast majority of injuries, Mississippi's three-year statute of limitations begins to run on the date a Plaintiff is injured, regardless of the Plaintiff's knowledge of the injury, its cause, or potential

---

[11] Moreover, even the few allegations that are both factual and particularized are often directly contradicted by Plaintiffs' own sworn responses in Plaintiff Fact Sheets. *Compare, e.g.*, Brown Proposed Amended SFC ¶¶ 8-9 (Rec. Doc. 10668-3) (reporting multiple consultations for hair loss with healthcare providers from 2011-2012, including two thyroid tests "to determine whether Plaintiff's thyroid might be causing the failure of Plaintiff's hair re-growth.") *with* Brown PFS VII.5 (reporting first discussion of hair loss with healthcare provider in 2013, more than 4 years after her treatment).

tortfeasors. *See* MISS. CODE. ANN. § 15-1-49; *see also Angle v. Koppers, Inc.*, 42 So. 3d 1, 7 (Miss. 2010) ("No provision of Section 15–1–49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations."). The only exception to the continual running of Section 15–1–49 is for actions involving "latent injury or disease"—a category comprised of discreet conditions for which Mississippi courts have concluded "it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Angle*, 42 So. 3d at 7.

It is well settled that under the Master Complaint in MDL 2740, Plaintiffs' alleged injury—permanent hair loss—is realized when a Plaintiff's hair does not grow back six months after the completion of chemotherapy. *See* Order (Rec. Doc. 7571) at 5 n.12; Order (Rec. Doc. 8702) at 2; Order (Rec. Doc. 8703) at 2; Order (Rec. Doc. 9110) at 4-5; Order (Rec. Doc. 10807) at 4. Limitations begins to run on this date and barring some exception continues until suit is filed or the limitations period expires. *See Id.* Permanent hair loss—a "disfigurement" which Plaintiffs allege "acts as a permanent reminder that they are cancer victims" and has "altered Plaintiffs' self-image, negatively impacted their relationships, and others' perceptions of them, leading to social isolation and depression" is not a latent injury which tolls the statute of limitations. *See* Second Amended Master Complaint at ¶¶ 6, 231 (Rec. Doc. 4407). Mississippi courts do not include it on their short list of latent injuries, and the heart of Plaintiffs' claims is that they cannot *avoid* perceiving their alleged injury—nor conceal it from others. Mississippi law provides no delay or interruption of limitations in such cases.

Accordingly, Plaintiffs' proposed allegations addressing the circumstances of discovery of their alleged injuries are immaterial under Mississippi law. Such amendments would therefore be futile, warranting denial of leave to amend under Rule 15 and Fifth Circuit law. *See Smith v. EMC*

*Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

## CONCLUSION

Sanofi respectfully requests that this Court deny Plaintiffs' Motions for leave to amend their Short Form Complaints, as described herein. All amendments to Plaintiffs' injury descriptions under SFC paragraph 12 should be denied under this Court's established rulings. Plaintiff Kumar's non-factual assertions, and all non-particularized allegations should be rejected under PTO 105 in accordance with the attached Exhibit B. Finally, denial of all of Plaintiffs' proposed limitations allegations as futile is warranted under Mississippi law. For these reasons and those stated in PTO 105 and the Court's previous rulings, Plaintiffs' Motions should be denied.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com


Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*