UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Cases listed in Rec. Doc. 8977-3.

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION**

  In a complex pharmaceutical warnings case like this, expert evidence addressing a company's duty to warn and FDA labeling obligations is required. Here, there is no dispute that Dr. Kessler is the PSC's only expert on that issue. Having no other expert who addressed *that* issue, the PSC invites the Court to "revisit" information already presented to it – and importantly, already considered by Dr. Kessler – to conclude that Sanofi's duty to warn arose much earlier than Dr. Kessler said it did (*i.e.*, December 15, 2006). The Court should decline this invitation; the information to be "revisited" – namely, Dr. Madigan's testimony and expert reports from *Thibodeaux* and *Kahn* – does not controvert Dr. Kessler's opinion and does not warrant reconsideration of the Court's Order.

  The PSC also faults the Court for treating the existence of Sanofi's duty to warn as a legal question and deciding it as a matter of law. But it is well-settled that the existence of a duty to warn is a legal question to be decided by courts, not juries. And, in a complex case like this, that issue requires expert evidence. The Court committed no error of law there, either. In the end, the PSC identifies no grounds sufficient for the Court to reconsider its pre-2007 "fencepost" Order. As such, the Court should affirm its ruling.

**LEGAL STANDARD**

Although this Court's Order contemplates entry of judgments on the claims of pre-2007 Louisiana Plaintiffs, the PSC seeks reconsideration before the Court has entered final judgments. *See* Rec. Doc. 10667-1 at 17.  So Rule 54(b) applies. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The PSC, however, frames its motion for reconsideration as one brought under Rule 59(e) or, alternatively, Rule 54(b). Rec. Doc. 10667-1 at 1. Although the PSC acknowledges that the June 1 Order is interlocutory, *id.* at 4, its motion applies the Rule 59(e) standard, *id.* at 14–17. This is error. *See, e.g.*, *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. MDL 16-2740, 2018 WL 6697113, at *1 n.1 (E.D. La. Dec. 20, 2018) ("Although Plaintiff seeks review of this Court's Order and Reasons under Rule 59(e), the Fifth Circuit recently explained that Rule 54(b) provides the proper standard for review of an order that does not dispose of all claims against all parties.").

The Court may consider new arguments or evidence on the merits under Rule 54(b), but can reject them "for any reason it deems sufficient." *McClendon v. United States*, 892 F.3d 775, 781–82 (5th Cir. 2018). Yet Rule 54(b) does not give the Court unlimited power to consider new arguments. Rec. Doc. 10399 at 2 (citing *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 480 (M.D. La. 2002)). "Any position is supportable by boundless arguments," but "[j]udicial economy counsels against reconsidering an issue each time someone presents a new argument." *Id.* (quoting *Livingston Downs Racing Ass'n, Inc.*, 259 F. Supp. 2d at 481). "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *Id.* (quoting *Hightower v. Grp. 1 Auto., Inc.*, No. 15-cv-1284, 2016 WL 3430569, at *3 (E.D. La. June 22, 2016)).

**ARGUMENT**

I. **The Court Should Deny the PSC's Motion for Reconsideration.**

A. **The PSC has failed to identify any evidence sufficient to warrant a different result on the merits.**

The evidence now cited by the PSC — Dr. Madigan's testimony and expert reports from *Thibodeaux* and *Kahn* – fails to controvert Dr. Kessler's expert opinion that Sanofi's duty to warn arose no earlier than December 15, 2006.

First, Dr. Madigan has never offered an opinion addressing when Sanofi had a duty to warn. As Dr. Madigan conceded, he is not a regulatory expert. Ex. A, Madigan Rpt. 9 n.23 (Nov. 2, 2018) ("Of note, I am not a regulatory expert and will not be offering opinions about the FDA's pharmacovigilance rights and responsibilities."). So no amount of "revisiting" Dr. Madigan's testimony or reports will change the fact that he has no opinion on duty to warn or FDA labeling obligations, and thus Dr. Madigan's opinions do not controvert Dr. Kessler's on that score.

Second, Dr. Madigan's role in this litigation always has been to provide statistical information requested by Dr. Kessler, who then considered that and other information to opine *when* between 1990 and 2015 Sanofi's duty to warn first arose. As a result, no matter what underlying information the PSC now asks the Court to "revisit," Dr. Kessler already considered it, including Dr. Madigan's statistical analyses and identification of safety signals. *See* Ex. B, Kessler Rpt. 40 (Nov. 6, 2018) (explaining that Dr. Kessler relied on Dr. Madigan's report in *Earnest*); Ex. C, Kessler Rpt. & Suppl. App. C (Oct. 21, 2019) (stating that Dr. Kessler considered in *Thibodeaux* the "Expert Report of David Madigan, Ph.D., dated October 20, 2019"); Ex. D, Kessler Dep. 32:10–25, 43:21–44:3 (May 8, 2020) (testifying that Dr. Kessler reviewed Dr. Madigan's report in *Kahn*).

Third, as for safety signals, the PSC suggests that Dr. Madigan's more recent reports in *Thibodeaux* and *Kahn* identify "more precise" findings about safety signals as early as 2000, and argues that such evidence is enough to dispute Dr. Kessler's December 15, 2006 opinion. But Dr. Madigan's *Earnest* report tracks his later reports in *Thibodeaux* and *Kahn*. In each, Dr. Madigan purports to identify safety signals as early as 2000. *See* Rec. Doc. 10667-1 at 4–12. Dr. Madigan, however, has never testified that such safety signals triggered Sanofi's duty to warn in 2000 – or at any other time, for that matter. And, as noted above, Dr. Kessler considered all three reports – including the safety signals – and his December 15, 2006 opinion has not changed. At oral argument, for example, this Court questioned why Plaintiffs had not submitted a supplemental affidavit from Dr. Kessler addressing Sanofi's duty to warn. Ex. E, Hr'g Tr. 11:11–16 (May 7, 2020). Even now, the PSC has submitted no supplemental affidavit from Dr. Kessler.

Finally, the PSC's argument about the "missing" *Thibodeaux* report does not warrant reconsideration. While the Court may consider new evidence under Rule 54(b), this Court should decline to consider Dr. Madigan's *Thibodeaux* report as a basis for reconsideration; one, because it does not change the outcome, and, two, because the PSC's explanation for its failure to attach the report is troubling, at best.

The PSC blames the COVID-19 pandemic for creating a "difficult work environment" that led to the inadvertent failure to attach Dr. Madigan's report. Rec. Doc. 10667-1 at 10. But the PSC submitted its Opposition on February 7, 2020 (Rec. Doc. 9231), more than a month before New Orleans reported its first presumptive COVID-19 case on March 9, and nearly 40 days before the first stay-at-home order for New Orleans went into effect on March 16. *See* Ex. F, Mayor's Proclamation (March 16, 2020). With that timeline in mind, it is hard to see how the pandemic

4

had anything to do with the PSC's ability to file documents on February 7 or to make a supplemental filing before the Court's June 1 Order, roughly four months later.

In the end, the PSC cannot upset this Court's Order with purportedly "new" evidence from Dr. Madigan. Dr. Madigan's opinions have not changed materially between *Earnest*, *Thibodeaux*, and *Kahn*. Nor is he a regulatory expert. Dr. Kessler, in turn, has considered each of Dr. Madigan's reports now cited by the PSC, yet remains consistent in his regulatory opinion that Sanofi's duty to warn arose no earlier than December 15, 2006. This Court thus should deny reconsideration.

### B. The PSC has failed to identify any error of law.

The PSC claims the Court committed a manifest error of law when it required Plaintiffs to "rebut Dr. Kessler's opinion" with expert evidence, and in deciding the duty-to-warn issue presented by Sanofi's motion as a matter of law. Rec. Doc. 10667 at 13–14.

The Court committed no such error.

First, claims involving complex medical issues require "expert medical testimony as to the applicable standard of care." *See Cooley v. Kufoy*, 2018-375 (La. App. 3 Cir. 12/6/18), 261 So. 3d 68, 73–74, *writ denied*, 2019-0036 (La. 2/25/19), 266 So. 3d 294; *see also Greenhouse v. C.F. Kenner Assocs.*, 98-0496 (La. App. 4 Cir. 11/10/98), 723 So. 2d 1004, 1008 ("Unless lay persons can infer negligence by applying common sense standard, expert testimony is required to establish the applicable standard of care. Failure to submit expert testimony to prove the standard of care is a 'fatal omission.'").

This MDL involves complex medical and scientific issues and the overlay of FDA labeling standards – all of which require expert evidence. *See In re Depakote*, No. 14-cv-847, 2015 WL 4775868, at *8 (S.D. Ill. Feb. 13, 2015) ("[D]ue to the complex nature of the drug labeling process and procedures, [] the jury will need assistance in understanding it."); *In re Fosamax Prods. Liab.*

5

*Litig.*, 647 F. Supp. 2d 265, 275 (S.D.N.Y. 2009) (assessing manufacturer's duty to warn in pharmaceutical MDL based on plaintiff's regulatory expert's testimony).[1]

Dr. Kessler is the only expert the PSC disclosed to address the standard of care for duty to warn applicable to pharmaceutical companies and labeling of their products, and to testify whether, when, and to what extent Sanofi had a duty to warn under such a standard between the years 1990 to 2015. As the Court noted, Dr. Kessler stated that Sanofi's duty to warn arose "not later than about 2009 and probably as early as around 2006" – specifically December 15, 2006, the date of Dr. Sedlacek's presentation. Rec. Doc. 10487 at 6–7.

To create a genuine dispute on the duty to warn, the PSC needed to present expert evidence to dispute Dr. Kessler's opinion on that issue. The Court correctly held the PSC failed to do so. *Id.* at 7 ("Plaintiffs had ample time and opportunity to identify and present expert evidence disputing the damaging testimony from Dr. Kessler. Yet Plaintiffs failed to do so.").

The PSC suggests that testimony from Dr. Madigan and "other fact testimony" about purported safety signals and unspecified testimony from Dr. Feigal[2] is enough to dispute Dr. Kessler's opinion and create a triable issue on the duty to warn. Rec. Doc. 10487 at 13–14. This is wrong. Drs. Madigan and Feigal did not address whether Sanofi had a duty to warn earlier than December 15, 2006, nor did they testify that safety signals can create a duty to warn at any

---

[1] To that end, a defendant may move for summary judgment to establish that it has no duty to warn as a matter of law. One way is when, as here, Plaintiffs' own expert concedes that the manufacturer should have known about an alleged risk only after Plaintiffs were injured. *See Mack v. Stryker Corp.*, 893 F. Supp. 2d 976, 987 (D. Minn. 2012) (granting summary judgment for defendant manufacturer after plaintiff's expert acknowledged that the medical community did not draw the connection between the medical device and the injury until three years after plaintiff's injury); *Meharg v. I-Flow Corp.*, No. 08-cv-184, 2010 WL 711317, at *4 (S.D. Ind. Mar. 1, 2010) (granting summary judgment for defendant manufacturer after "the Plaintiffs' own expert did not find that there was a known risk of harm at the time of [plaintiff's] surgery"); *Johnson & Johnson Talcum Powder Cases*, 249 Cal. Rptr. 3d 642, 663 (Cal. Ct. App. 2019) (finding baby powder manufacturer had no duty to warn of product's risk of ovarian cancer, in part, because plaintiff's expert acknowledged that the risk became scientifically known two decades after manufacturer ceased production).

[2] The PSC never referenced Dr. Feigal's testimony in its Opposition, *see* Rec. Doc. 9231, and the PSC's current motion does not identify any specific testimony from Dr. Feigal to dispute Dr. Kessler's testimony.

6

particular time.  Importantly, Dr. Kessler already considered the safety signals identified by Dr. Madigan when he offered his December 15, 2006 opinion, and thus safety signals do not dispute Dr. Kessler's opinion – rather, they are factored into it.  *See, e.g.*, Ex. G, Kessler Dep. 157:24–158:18 (Nov. 26, 2019) (explaining that Dr. Madigan's FAERS analysis was "one of many threads that were included and that I looked at").

Moreover, *counsel's* advocacy at the bottom of page 13 – where the PSC identifies the federal labeling standards (again, the same ones Dr. Kessler analyzed) and then asserts that Dr. Madigan's testimony about safety signals "certainly" meets those standards – is no substitute for *expert* evidence necessary to dispute Dr. Kessler's opinion.  See *Todd v. Stryker Corp.*, No. 09-cv-01509, 2012 WL 2922727, at *6 (E.D. Cal. May 1, 2012) ("[A]s many other courts have noted, counsel's bald advocacy about the significance of complex medical literature, unsupported by an admissible and sufficient expert opinion, cannot raise a genuine disputed fact issue."); *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1034 (E.D. Cal. 2011) ("Plaintiff's argument in this case fails for the same reason.  Plaintiff's opposition to defendants' motion simply provides counsel's analysis of the literature. . . .  [P]laintiff's opposition does not include any expert testimony that draws any connection between the literature and a duty to warn."); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 n.8 (9th Cir. 1995) ("[T]he examination of a scientific study by a cadre of lawyers is not the same as its examination by others trained in the field of science or medicine.").

The Court thus committed no manifest error of law when it held that the PSC had identified no expert evidence to rebut Dr. Kessler's opinion.  Rec. Doc. 10487 at 8 ("Without expert evidence, [] the Court cannot say that a reasonably prudent manufacturer should have drawn

certain conclusions from this data and effectively acquired knowledge that Taxotere is causing permanent hair loss.").

Second, the Court correctly classified the issue presented by Sanofi's motion – *i.e.*, the existence of Sanofi's *duty to warn* – as a question for the Court to decide as matter of law.  To argue the Court erred here, the PSC reframes the issue as *adequacy* instead of *duty*, and then argues the Court erred in deciding adequacy as a matter of law (since, according to the PSC, adequacy always presents a jury question).  *See* Rec. Doc. 10667-1 at 14.  The PSC's sweeping statement is both unsupported and puzzling.  In this MDL, for example, the Court recently held that the Taxotere label after December 11, 2015 was adequate as a matter of law – a determination well within its judicial discretion.  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. MDL 16-2740, 2020 WL 2747279 (E.D. La. May 27, 2020).[3]

In any event, neither Sanofi's motion nor the Court's Order addressed the adequacy of Sanofi's label.  The motion and Order focused on the existence of Sanofi's duty to warn; as the Court put it, "whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's *duty to warn*."  Rec. Doc. 10487 at 9 (emphasis added); *id*. at 6 ("Plaintiffs have failed to create an issue of fact regarding whether Defendants, under Louisiana law, had a duty to warn prior to December 15, 2006.").

As a result, the Court committed no manifest error of law when it decided the existence of Sanofi's duty to warn before December 15, 2006 as a matter of law.  *See Perez v. Michael Weinig, Inc.*, No. 304-cv-0448, 2005 WL 1630018, at *6 (W.D. La. July 7, 2005) ("Whether defendant

---

[3] As noted in Sanofi's initial briefing, transferee courts have previously issued omnibus MDL orders finding a drug label adequate as a matter of law.  Rec. Doc. 9189 at 6 (collecting cases); *see also Perez v. Brown Mfg*., No. 98-478, 1999 WL 527734, at *7 (E.D. La. July 21, 1999) (granting summary judgment on LPLA failure-to-warn claim after finding label was adequate as a matter of law); *Bealer v. Hoffman-La Roche*, *Inc*., 729 F. Supp. 43, 44 (E.D. La. 1990) (noting "[a]t least one Louisiana court has also held that the adequacy of pharmaceutical warnings can be a question of law" and citing, as example, *Kinney v. Hutchinson*, 468 So. 2d 714 (La. Ct. App. 1985)).

8

owes plaintiff a duty to warn is a question of law." (citing *Phillips v. K–Mart Corp.*, 588 So. 2d 142 (La. Ct. App. 1991))).

    C.  **No manifest injustice warrants reconsideration.**

The PSC briefly asserts under Rule 59(e) that it would be unfair for the Court to ignore earlier expert reports, presumably those from Dr. Madigan. As explained, Dr. Madigan's reports do not change the outcome. Instead, the PSC – knowing that Sanofi would file a fencepost motion on this issue – failed to counter the opinion of its own expert on the key issue of when Sanofi's duty to warn arose. Ex. E at 11:11–16 ("[W]e have talked about these motions being filed for months. Dr. Kessler has been working with the plaintiffs for at least four years in moving this litigation along. Are you telling me that he could not have looked at this and given you an affidavit that the Court can rely on?"). Under these facts, no manifest injustice exists.

## CONCLUSION

In seeking reconsideration, the PSC asks this Court to disregard the testimony of the PSC's own regulatory expert, who has stated repeatedly that Sanofi's duty to warn arose no earlier than December 15, 2006. The Court should decline this invitation. Because the PSC cannot identify any grounds sufficient for reconsideration, the Court should deny the PSC's motion.

            Respectfully submitted,
            /s/ *Douglas J. Moore*
            Douglas J. Moore (Bar No. 27706)
            **IRWIN FRITCHIE URQUHART & MOORE LLC**
            400 Poydras Street, Suite 2700
            New Orleans, LA 70130
            Telephone: 504-310-2100
            Facsimile: 504-310-2120
            dmoore@irwinllc.com

>Harley V. Ratliff
>Adrienne L. Byard
>**SHOOK, HARDY& BACON L.L.P.**
>2555 Grand Boulevard
>Kansas City, Missouri 64108
>Telephone: 816-474-6550
>Facsimile: 816-421-5547
>hratliff@shb.com
>abyard@shb.com
>
>*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

>/s/ *Douglas J. Moore*