UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Certain Cases* | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE MILAZZO<br><br>MAG. JUDGE NORTH |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFFS WHOSE TAXOTERE TREATMENT STARTED BEFORE DECEMBER 15, 2006**

Defendants, in their opposition, rely heavily on the mistaken assertion that testimony from a *regulatory expert* is required to establish the knowledge of a pharmaceutical company – i.e., what the company knew or should have known at a certain time. Moreover, Defendants are erroneous in arguing that a regulatory expert is the only type of expert who may opine on this issue of company knowledge of an association between use of a drug and adverse events. In fact, the cases cited by Defendants in their opposition further establish that Plaintiffs' claims herein do not live or die solely upon the testimony of Dr. David Kessler.

Defendants cite two medical malpractice actions from Louisiana state courts[1] to show that complex medical issues require expert medical testimony to explain to juries those issues that are more difficult to understand than "obvious negligence."[2] Plaintiffs agree with this principle. Defendants also cite federal cases from Illinois and New York to show that juries need assistance in understanding complex issues involved in the drug labeling process, and that a regulatory expert

---

[1] *Cooley v. Kufoy*, 2018-375 (La. App. 3 Cir. 12/6/18), 261 So. 3d 68, writ denied, 2019-0036 (La. 2/25/19), 266 So. 3d 294; *Greenhouse v. C.F. Kenner Assocs. Ltd. P'ship*, 98-0496 (La. App. 4 Cir. 11/10/98), 723 So. 2d 1004.
[2] *Cooley* at 73.

1

is helpful.[3] Plaintiffs also agree with this. However, a close look at the *Fosamax* case illustrates a similar issue as in this MDL, where contradictory testimony from a regulatory expert is used in conjunction with testimony from other experts, medical literature and fact witnesses in the litigation to determine a manufacturer's knowledge. In the section of the *Fosamax* opinion titled "Timing of the Duty to Warn," the Southern District of New York states:

> Merck misconstrues Dr. Parisian's expert opinion. A full reading of Dr. Parisian's expert report, her testimony at her deposition, and her testimony at the *Daubert* hearing reveals that she believes Merck's duty to warn was clear by October 2003 and may have existed as early as the mid-to late–1990s. Although Dr. Parisian repeatedly discussed October 2003 as a time by when Merck should have provided a warning, she clarified that this was the latest—not earliest—possible date that Merck's duty to warn arose. For example, at the *Daubert* hearing, she testified that Merck "definitely" should have provided a warning by October 2003, but noted that it had sufficient information to provide a warning well before then. That information came in the form of adverse event reports of exostosis in Fosamax users from the mid-to late–1990s. As Dr. Parisian explained, reports of exostosis are significant because they may represent cases of what would later be known as ONJ, a term not used before 2003.[4]

This testimony is similar to the testimony of Dr. Kessler in this MDL, where he offers certain cutoff dates, but reserves the right to revisit his opinion as new evidence comes to light. The Southern District of New York then continued:

> In fact, Dr. Michael Goldberg, Merck's former director of clinical risk management and safety, conceded that at least one of the reports of exostosis cited by Dr. Parisian could have been a case of ONJ. All of this explains why, in response to the Court's questioning, Dr. Parisian stated that, by 1999, Merck's label should have reflected these reports of exostosis. Confronted with all of this evidence, a jury could reasonably find that Merck's duty to warn arose before October 2003 and possibly as early as the mid-to late–1990s.[5]

---

[3] *In re Depakote*, No. 14-CV-847-NJR-SCW, 2015 WL 4775868 (S.D. Ill. Feb. 13, 2015); *In re Fosamax Prod. Liab. Litig.*, 647 F. Supp. 2d 265 (S.D.N.Y. 2009).
[4] *In re Fosamax Prod. Liab. Litig.,* 647 F. Supp. 2d 265, 275 (S.D.N.Y. 2009).
[5] *Id.*

2

Thus, the court in *Fosamax* found that "although Plaintiff may not argue that she developed ONJ later than September 2003, there is a genuine issue of material fact as to whether Merck's duty to warn arose before then. Summary judgment is therefore inappropriate."[6] Likewise, the Court in this case should consider the evidence that has already been presented to it, such as Dr. David Madigan's expert testimony, as well as Sanofi's internal documents commenting on permanent alopecia prior to December 15, 2006, and allow this issue to fact to be decided by a jury.

Defendants also cite a California state court case[7] in advocating that testimony from a regulatory expert is required. However, this case again illustrates the allowance of *other* evidence to be presented to a jury. Specifically, the court in *Johnson & Johnson* found that the evidence was sufficient to allow a jury to conclude that known risks of ovarian cancer from genital talc use were concrete enough that it was unreasonable for manufacturer to fail to warn consumers of them, and thus to hold manufacturer liable for negligent failure to warn.[8] Additionally, even though the evidence was not definitive or overwhelming, several epidemiological studies found a statistically significant association between genital talc use and ovarian cancer and found that talc could migrate to ovaries, and internal documents reflected the manufacturer's knowledge of studies.[9] As in *Johnson & Johnson*, the Court here should strongly consider Sanofi's internal documents prior to December 15, 2006, which discuss permanent alopecia, and further consider Dr. Madigan's expert report which found that a statistically significant safety signal arose in 2003 and has remained so.

---

[6] *Id.* at 276.
[7] *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 249 Cal. Rptr. 3d 642 (2019), *review denied (*Oct. 23, 2019).
[8] *Id.* at headnote 22.
[9] *Id*.

In order to criticize Plaintiffs' counsel's advocacy, Defendants rely on *Monroe v. Zimmer* from the Eastern District of California,[10] which could not be more supportive of Plaintiffs' position on this motion for reconsideration. In that case, the plaintiffs retained an expert biostatistician, Dr. Martin Wells, to review epidemiological and scientific literature relating to intra-articular pain pump use and its connection to glenohumeral chondrolysis.[11] Specifically, Dr. Wells conducted statistical analysis on the data reported in these studies to determine whether they reported a statistically significant causal relationship between the use of intra-articular pain pumps and the development of chondrolysis[12] The Defendants moved for summary judgment, asserting that plaintiff's claims should be dismissed because she has not demonstrated that defendants breached a specific duty of care to her.[13] The *Monroe* court stated that, "as to plaintiff's claim of negligent failure to warn, she must show that defendants 'did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have warned about.' Thus, plaintiff must provide evidence that demonstrates defendants failed to give adequate warning of a risk associated with their product that defendants knew or should have known about at the time the product was distributed."[14]

In denying the defendants' motion for summary judgment in regards to a duty to warn based on plaintiff's "testing theory," the *Monroe* court ruled:

> While Wells' and Dragoo's review of prior studies is presented in the context of demonstrating that intra-articular pain pump use can cause chondrolysis, this same testimony supports plaintiff's argument that a similar study conducted by defendants would also have found that intra-articular pain pump use can cause chondrolysis**. Though plaintiff does not provide an expert that explicitly states that defendants would have discovered a risk of**

---

[10] *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012 (E.D. Cal. 2011).
[11] *Id.*
[12] *Id.*
[13] *Id.* at 1021.
[14] *Id.* at 1033.

> **harm if they conducted the testing required for FDA approval, plaintiff's experts have created an issue of material fact whether defendants negligently breached a duty to plaintiff by failing to warn of a risk that defendants should have known about.[15]**

Similarly, the testimony of Dr. David Madigan, Plaintiffs' expert biostatistician who concluded that Sanofi had constructive knowledge of the potential safety risk of permanent alopecia as early as 2000, and further concluded that Taxotere became statistically significant in 2003, is enough to create an issue of material fact and to defeat summary judgment.

Lastly, Defendants mischaracterize what Plaintiffs said about the circumstances surrounding the missing exhibit, including as those circumstances relate to COVID-19. Plaintiffs explained the exhibit was not attached to the initial filing and "subsequently" no one caught it—including when COVID-19 had forced many to work remotely.[16] That account is all true. Indeed, by the time of the hearing, many were working remotely and using their own copies of expert reports, which explains why no one realized that a single exhibit was missing.

More importantly, the papers Plaintiffs did file included citations to this report, and Defendants had this report, addressed it in their papers, and did not realize it was not formally attached to Plaintiffs' filing, either. That is why, at this juncture, Defendants say nothing to suggest that they would be prejudiced by this Court's consideration of Dr. Madigan's more recent report. In all, this issue is too important for the Court not to rule on the merits, including consideration of Dr. Madigan's recent report, when doing so would pose no prejudice to Defendants, and when the failure of Plaintiffs to attach it was an innocent error that they simply did not catch before this Court ruled, including during the highly difficult circumstance of a pandemic.

---

[15] *Id.* at 1037 (emphasis added).
[16] Rec. Doc. 10667-1 at 10-11.

In conclusion, there is no rule of law to support the idea that the testimony of a regulatory expert is required to establish company knowledge or its duty to warn, nor is there a rule of law that a regulatory expert is the sole expert that can establish a defendant's knowledge or duty to warn in a pharmaceutical failure-to-warn case. Consequently, Defendant's assertions are not supported in law. For these reasons, and the reasons set forth in Plaintiffs' memorandum in support, Plaintiffs' motion for reconsideration should be granted, as Plaintiffs have provided sufficient evidentiary proof of genuine issues of material fact in dispute as to whether a reasonably prudent manufacturer would have drawn certain conclusions before December 15, 2006, thereby triggering Sanofi's duty to warn.

Dated: August 7, 2020

Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, LLP
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 7, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                               /s/ M. Palmer Lambert<br>
                                               M. PALMER LAMBERT