#### IN THE UNITED STATES COURT OF APPEALS
#### FOR THE FIFTH CIRCUIT

No. 19-30640

IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION

------------------------------------------------------

DOROTHY KUYKENDALL,

    Plaintiff - Appellant

v.

ACCORD HEALTHCARE, INCORPORATED; HOSPIRA, INCORPORATED; SANDOZ, INCORPORATED; SANOFI-AVENTIS, U.S., L.L.C.; SUN PHARMA GLOBAL FZE; SUN PHARMACEUTICAL INDUSTRIES, INCORPORATED, agent of Caraco Pharmaceutical Laboratories, Limited; MCKESSON CORPORATION, doing business as McKesson Packaging; HOSPIRA WORLDWIDE, L.L.C., formerly known as Hospira Worldwide, Incorporated; SANOFI U.S. SERVICES, INCORPORATED, formerly known as Sanofi-Aventis U.S., Incorporated,

    Defendants - Appellees

United States Court of Appeals
Fifth Circuit
**FILED**
July 16, 2020
Lyle W. Cayce
Clerk

Appeal from the United States District Court for the
Eastern District of Louisiana

Before CLEMENT, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

    Dorothy Kuykendall alleges that she used defendants' prescription chemotherapy drug from 2011 to 2012 and now suffers from permanent hair loss. As a plaintiff in this multidistrict litigation ("MDL"), she was required to

No. 19-30640

serve defendants with a completed fact sheet disclosing details of her personal and medical history soon after filing her short form complaint. When she failed to do so, the district court dismissed her case with prejudice. For the following reasons, we AFFIRM.

I.

Defendants are manufacturers of Taxotere, a prescription chemotherapy drug commonly prescribed to patients diagnosed with breast cancer, and Docetaxel, the generic version of Taxotere. According to plaintiffs, defendants were aware that their drugs caused hair loss yet failed to warn potential users of this negative side effect. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 220 F. Supp. 3d 1360, 1361 (J.P.M.L. 2016). In 2016, the Judicial Panel on Multidistrict Litigation consolidated all cases with similar claims and transferred them to the Eastern District of Louisiana. *Id.* As of December 2019, there were 11,971 individual actions pending in this MDL.[1]

Soon after the cases were consolidated, the district court issued several pretrial orders intended to streamline the discovery process and ensure the efficient management of plaintiffs' claims. In Amended Pretrial Order No. 22, the court ordered each plaintiff to complete a Plaintiff Fact Sheet ("PFS") within seventy-five days of the date that her case was docketed in the MDL. The PFS required each plaintiff to answer detailed questions about her race, family, medical history, cancer diagnosis, and treatment regimen. In addition to the PFS, plaintiffs were required to provide defendants with authorizations for the release of medical records.

---

[1] U.S. Judicial Panel on Multidistrict Litigation, *MDL Statistics and Report: Distribution of Pending MDL Dockets by District* (Dec. 16, 2019), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDLs_by_District-December-16-2019.pdf.

No. 19-30640

If a plaintiff failed to complete and serve the necessary disclosures by the deadline, defendants were directed to file a notice of deficiency on MDL Centrality, an electronic database. After receiving a notice of deficiency, plaintiffs had thirty days to submit a compliant PFS. If they failed to do so, defendants were permitted to serve a notice of non-compliance upon Plaintiffs' Liaison Counsel.[2] Plaintiffs were then given an additional thirty days to cure the deficiencies. If a plaintiff still failed to provide the "complete and verified disclosures" by that deadline, defendants could add the plaintiff to the court's "call docket" for the next scheduled hearing. The district court's pretrial order explicitly warned plaintiffs that their cases could be dismissed if they failed to establish good cause during the hearing for their continued discovery deficiencies.

Dorothy Kuykendall filed a short form complaint on November 29, 2018. Accordingly, her PFS was due seventy-five days later, on February 12, 2019. After she failed to file the required form by the deadline, defendants served her with a notice of non-compliance on March 26, 2019.[3] Under Pretrial Order No. 22A, the notice of non-compliance gave Kuykendall an additional thirty days, or until April 25, 2019, to serve defendants with the necessary information.

When Kuykendall again failed to cure the deficiencies, the defendants placed her name on the call docket for the next court hearing, scheduled for

---

[2] The court appointed liaison counsel for plaintiffs and defendants.

[3] There is no record that defendants served Kuykendall with a notice of deficiency before they served her with the notice of non-compliance. However, at the May 29, 2019 hearing, Kuykendall did not object to the fact that she did not receive a notice of deficiency before the notice of non-compliance, and instead admitted that she had failed to provide any PFS prior to a few days before the hearing. On appeal, she likewise does not object to the fact that she was not provided with an initial notice of deficiency before the hearing.

3

Case: 19-30640    Document: 00515519135    Page: 4    Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN   Document 10904-1   Filed 08/10/20   Page 4 of 13

No. 19-30640

May 21, 2019. Next to Kuykendall's name, the defendants included a notation stating "No PFS submitted."

The court was unable to address Kuykendall's case during the May 21 conference, so it scheduled a follow-up conference for May 29, 2019. On May 21, Kuykendall uploaded a few documents to MDL Centrality, including a signed declaration and two photographs, but she did not file a PFS. Five days later, Kuykendall finally submitted a PFS, though the document was missing responses to several important questions, including spousal information, weight and height information, and information regarding her prescribing doctor.

At the May 29 hearing, the defendants acknowledged that Kuykendall had submitted a PFS after the original hearing date but before the rescheduled hearing. However, defense counsel informed the court that Kuykendall's PFS contained "a significant number of blanks," including "the date of cancer diagnosis, the cancer markers that go to staging, the dates of chemotherapy treatment, the name of the prescribing oncologist, prior medication history, and a list of other medical providers." Kuykendall's counsel acknowledged that her PFS was incomplete, but reported that it was his belief that "[a]ll of the appropriate boxes have been checked." He further explained that any remaining blanks were caused by the "difficulty" of obtaining information from clients, including "health insurance information [and] identifying each pharmacy drugstore."

The court gave Kuykendall an additional thirty days to cure the deficiencies identified by defendants during the hearing. On July 1, 2019, after the court's extension had expired and Kuykendall had not provided an updated PFS, the defendants sent Kuykendall a notice of deficiency that identified the continued omissions and deficiencies in her PFS. Two days later, on July 3, defendants included Kuykendall on a list of plaintiffs whose cases were subject

Case: 19-30640    Document: 00515519135    Page: 5    Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN   Document 10904-1   Filed 08/10/20   Page 5 of 13

No. 19-30640

to immediate dismissal. In a short order without analysis, the district court dismissed Kuykendall's case with prejudice on July 11, 2019.

That same day, Kuykendall filed a letter in which she claimed to be "blindsided" by the list of deficiencies alleged by the defendants during the May 29 hearing. The letter faulted the defendants for seeking immediate dismissal, rather than giving Kuykendall an additional thirty days to respond to the most recent notice of deficiency. Though the letter was dated July 9, it was not filed on the docket until July 11. Just a few days before filing the letter, but several days *after* the court's thirty-day extension had expired, Kuykendall submitted a first and second amended PFS on MDL Centrality. Those forms included some previously missing information, but they continued to omit certain information, including her children's addresses and her height.

Construing Kuykendall's letter as a motion for reconsideration, the court issued a decision supplementing its dismissal order. The court explained that Kuykendall's counsel was provided with ample notice of the deficiencies in her PFS, and concluded that Kuykendall's failure to upload new documents to MDL Centrality during the thirty-day extension period demonstrated that she "made no effort to comply with the Court's order." Kuykendall filed a timely notice of appeal on August 8, 2019.

II.

We review a district court's imposition of sanctions, including the dismissal of a case with prejudice, for an abuse of discretion. *See, e.g.*, *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (per curiam); *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (per curiam). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Deepwater Horizon* (*Barrera*), 907 F.3d 232, 234 (5th Cir. 2018) (per curiam) (quoting

5

No. 19-30640

*Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 610 (5th Cir. 2006)).[4]

III.

District courts are vested with the power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). This power necessarily includes the "power . . . to control [the court's] docket by dismissing a case as a sanction for a party's failure to obey court orders." *Id.* Because of the severity of such a sanction, however, we have "limited the district court's discretion in dismissing cases with prejudice." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). "[W]e have previously deemed dismissal with prejudice to be a 'draconian remedy' and a 'remedy of last resort.'" *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (quoting *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 515 (5th Cir. 1985)).

---

[4] Defendants argue that we should review Kuykendall's arguments on appeal for plain error because she failed to raise them in the district court. We reject this argument. Kuykendall preserved her objection to the dismissal of her case when she appeared at the district court's show-cause hearing and filed a letter challenging the defendants' request for a dismissal. These actions distinguish Kuykendall's case from *Law Funder*, 924 F.3d at 759, where we reviewed a dismissal for plain error because the dismissed party "fail[ed] to oppose [plaintiff's] motion to sanction." We also review Kuykendall's argument about the appropriate legal test governing a dismissal with prejudice for an abuse of discretion. Although Kuykendall did not make this argument to the district court, it is unclear when she could have done so. *See Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993) (explaining that a district court need not make specific factual findings or articulate a specific legal test before issuing sanctions); *Oprex Surgery (Baytown), L.P. v. Sonic Auto. Emp. Welfare Benefit Plan*, 704 F. App'x 376, 378 (5th Cir. 2017) (per curiam); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) ("Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered [the applicable] factors." (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992))). In similar cases, we have reviewed the entirety of a plaintiff's challenge to a dismissal for an abuse of discretion, including the determination of the appropriate legal standard. *See, e.g.*, *Barrera*, 907 F.3d at 234–35; *In re Deepwater Horizon (Cepeda)*, 765 F. App'x 980, 981–82 (5th Cir. 2019) (per curiam). In any case, as we explain, Kuykendall's challenge to her dismissal fails under any standard of review.

No. 19-30640

Here, the parties have two primary disagreements: (1) which of two legal standards governs a district court's involuntary dismissal in the context of an MDL, and (2) whether the district court erred in applying the applicable legal standard to Kuykendall's case.

A.

Kuykendall argues that the district court's dismissal order can be affirmed only if it satisfies the fact-intensive six-factor test articulated in *Law Funder*. Under *Law Funder*, a dismissal with prejudice will be affirmed if (1) it is "just"; (2) it is "related to the particular 'claim' which was at issue in the order"; (3) the violation was willful or in bad faith; (4) "the client, rather than counsel, is responsible for the violation"; (5) the violation caused substantial prejudice to the opposing party; and (6) "a lesser sanction would not 'substantially achieve the desired deterrent effect.'" 924 F.3d at 758–59 (first quoting *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004); then quoting *Conner*, 20 F.3d at 1380–81). In contrast, defendants argue that the district court's dismissal order need only meet the two-factor test articulated by this court in the context of the *Deepwater Horizon* MDL. *See, e.g.*, *Barrera*, 907 F.3d at 235.

Our cases have used variable language to describe the appropriate test for evaluating a district court's order dismissing a case with prejudice. In one line of cases involving dismissals for discovery order violations, we have suggested that litigation-ending sanctions must meet a multi-factor, fact-intensive test. *See, e.g.*, *Conner*, 20 F.3d at 1380–81; *see also Oprex Surgery*, 704 F. App'x at 377; *Law Funder*, 924 F.3d at 758. In another group of cases involving dismissals for "docket management" purposes, we have articulated a two-factor test, affirming dismissals with prejudice as long as (1) there is a "clear record of delay or contumacious conduct by the plaintiff," and (2) "lesser sanctions would not serve the best interests of justice." *See Price v. McGlathery*,

7

Case: 19-30640      Document: 00515519135     Page: 8      Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN   Document 10904-1   Filed 08/10/20   Page 8 of 13

No. 19-30640

792 F.2d 472, 474 (5th Cir. 1986) (per curiam) (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)); *see also Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir. 2006). Even when evaluating these two factors, however, we have explained that other "aggravating" factors—such as "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct"—may also be relevant to the analysis. *Rogers*, 669 F.2d at 320 (collecting cases). In *Sealed Appellant*, we clarified the distinction between "requisite" factors and additional, or aggravating, factors. 452 F.3d at 418 & n.4. While "aggravating factors must 'usually' be found" to support a dismissal with prejudice, "we have not said that they must 'always' be found." *Id.*

We need not completely reconcile these competing standards here. *See Barrera*, 907 F.3d at 235 n.1 (observing that there have been "variations in the standard's precise language" but that "[w]e need not decide the exact parameters"). Several of our recent decisions stemming from the *Deepwater Horizon* MDL have clarified that the two-factor test articulated in *Rogers* applies to a district court's dismissal with prejudice in the unique context of an MDL. In *Barrera*, we affirmed the district court's dismissal of several plaintiffs in the *Deepwater Horizon* MDL for failure to comply with a pretrial order mandating that each individual plaintiff file a "wet-ink signature." *Id.* at 234. We upheld the district court's dismissal order after we observed that the plaintiffs had exhibited a "clear record of delay or contumacious conduct by the plaintiff" and that "lesser sanctions would not service the best interests of justice." *Id.* Citing our decision in *Sealed Appellant*, we declined to consider any "aggravating factors," such as the willfulness of the violation or the party responsible for the violation. *Id.* at 235 n.1.

Since *Barrera*, we have repeatedly applied this same two-factor test to

Case: 19-30640      Document: 00515519135     Page: 9     Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN   Document 10904-1   Filed 08/10/20   Page 9 of 13

No. 19-30640

evaluate dismissal orders that resulted from plaintiffs' failure to comply with the district court's discovery orders in the *Deepwater Horizon* MDL. *See, e.g.*, *In re Deepwater Horizon* (*Park Nat'l Corp.*), 805 F. App'x 262, 265 (5th Cir. 2020) (per curiam) (using two-factor test to affirm dismissal of several plaintiffs who failed to comply with a pretrial order mandating the submission of discovery responses); *Cepeda*, 765 F. App'x at 981–82 (same). We have explained that the complexity of managing an MDL necessitates a standard that gives district courts greater flexibility to dismiss a plaintiff for a discovery violation. *See Barrera*, 907 F.3d at 235 ("[T]here is a special deference required in the context of an MDL."); *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 248 (3d Cir. 2013) (observing that "the very purpose of the centralization before the transferee judge is the efficient progress of the cases in preparation for trial"); *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009) ("District judges must have authority to manage their dockets, especially during massive litigation such as [an MDL], and we owe deference to their decisions whether and how to enforce the deadlines they impose.").

Other circuits have echoed these principles in evaluating similar MDL dismissals in the context of missing Plaintiff Fact Sheets. *See In re PPA Prods. Liab. Litig.*, 460 F.3d at 1227  (observing that district courts must have the "'power to manage their dockets' without being subject to endless non-compliance with case management orders" (quoting *Ferdik*, 963 F.3d at 1261)); *Nwatulegwu v. Boehringer Ingelheim Pharm., Inc.*, 668 F. App'x 173, 175 (7th Cir. 2016) ("Strict adherence to case management orders is necessary to manage multidistrict litigation.").[5] The *Deepwater Horizon* two-factor test helps animate the goals of strict enforcement and efficient management by

---

[5] Though the Ninth Circuit and the Seventh Circuit each use slightly different standards than the *Deepwater Horizon* two-factor standard, both cited cases underscore the importance of giving greater flexibility to district courts to enforce their MDL pretrial orders.

No. 19-30640

making it easier for district courts to dismiss non-complying plaintiffs in MDLs. We therefore apply this two-factor test to the district court's dismissal of Kuykendall's case.

B.

The district court was not required to make specific factual findings on each of the *Deepwater Horizon* prongs before dismissing Kuykendall's case. *See Topalian*, 3 F.3d at 936; *Oprex Surgery*, 704 F. App'x at 378. Our independent review of the record confirms that both prongs are satisfied, and, as a result, the district court did not abuse its discretion in dismissing Kuykendall with prejudice.

i.

First, there is "a clear record of delay or contumacious conduct by the plaintiff." *Barrera*, 907 F.3d at 235. Despite numerous extensions and grace periods, Kuykendall consistently failed to submit a complete PFS. Her initial PFS was due on February 12, 2019, but she failed to submit any version of the required PFS—even an incomplete one—by that deadline. Under the terms of Amended Pretrial Order 22, she had until April 25, 2019 to submit a complete PFS after the defendants filed a notice of non-compliance, but she missed that deadline as well. The next deadline was May 21, 2019—the date of the original call docket hearing—but she also failed to submit a PFS to MDL Centrality before that date. Although Kuykendall eventually submitted a PFS before the rescheduled May 29 hearing, that document was incomplete, missing "readily ascertainable information like her place of birth, her current weight and height, and whether she has certain health conditions such as low iron." Even when the district court gave her an additional thirty-day extension to cure those gaps, Kuykendall failed to submit a revised document before the new

10

Case: 19-30640 Document: 00515519135 Page: 11 Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN Document 10904-1 Filed 08/10/20 Page 11 of 13

No. 19-30640

deadline expired.[6] Though she eventually submitted two amended PFSs soon *after* that deadline, those documents also were missing information, including her height and her children's addresses.

Altogether, Kuykendall failed to comply with the court's order to submit a complete PFS for nearly five months. This is similar to the plaintiffs' conduct in *Barrera*, where we held that there was a clear record of delay. *See* 907 F.3d at 234 (finding delay where plaintiffs failed to submit wet-ink signatures for several months after the deadline); *see also Park Nat'l Corp.*, 805 F. App'x at 265 (finding clear record of delay when plaintiffs were non-compliant for two months). As in *Barrera*, Kuykendall was given ample notice of the potential consequences of her failure to comply with the district court's orders. Pretrial Order No. 22A warned plaintiffs that failure to comply with the PFS requirements could lead to "possible dismissal with prejudice or other appropriate relief." Despite this warning, Kuykendall did not seek additional extensions or provide an explanation for her failure to submit a PFS. *See Barrera*, 907 F.3d at 234. And hundreds of other plaintiffs complied with the court's orders, "demonstrating it was not logistically impossible" to do so within the timeline set forth in the court's pretrial orders. *Id.* at 235.

Kuykendall argues that her delay was not nearly as long as the delay in

---

[6] We are not persuaded by Kuykendall's argument that the district court erred when it deviated from the procedures set forth in its pretrial orders and imposed a thirty-day extension for Kuykendall's PFS, rather than requiring the defendants to first provide Kuykendall with a written deficiency notice. Kuykendall did not object to these procedures during the May 29 hearing, so we review her challenge for plain error only. *See Law Funder*, 924 F.3d at 759. "We review a district court's interpretation of its own orders with deference, particularly in the MDL context." *In re Asbestos Prods. Liab. Litig.*, 718 F.3d at 243. It was not plainly erroneous for the district court to determine that the notice provided to Kuykendall during the May 29 hearing was sufficient to replace the notice typically provided in the form of a notice of deficiency. Furthermore, the procedures used by the district court here—specifically, addressing deficient cases during a monthly "call docket"—have been explicitly endorsed by the Federal Judicial Center. Margaret S. Williams et al., *Plaintiff Fact Sheets in Multidistrict Litigation Proceedings*, Federal Judicial Center and Judicial Panel on Multidistrict Litigation (2019).

Case: 19-30640 Document: 00515519135 Page: 12 Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN Document 10904-1 Filed 08/10/20 Page 12 of 13

No. 19-30640

many other cases where we have affirmed dismissal orders. Because this case involves an MDL, however, the district court was empowered to "establish [a] schedule[] with [a] *firm* cutoff date[]." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1232 (emphasis added). Though a delay of five months might be "insignificant" in some contexts, "administering cases in multidistrict litigation is different from administering cases on a routine docket." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (quoting *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1229). As a result, Kuykendall exhibited a clear record of delay sufficient to meet the first prong in the *Deepwater Horizon* test.

ii.

The record also demonstrates that lesser sanctions would not have "serve[d] the best interests of justice." *Barrera*, 907 F.3d at 236. "Lesser sanctions include assessments of fines, costs, or damages against the plaintiff[,] . . . conditional dismissal, dismissal without prejudice, and explicit warnings." *Id.* at 236 (quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013) (cleaned up)). Kuykendall was given several extensions by the district court, but she continuously failed to file a complete PFS on MDL Centrality. "Providing plaintiff with a second or third chance" is *itself* "a lenient sanction, which, when met with further default, may justify imposition of the ultimate sanction of dismissal with prejudice." *Callip v. Harris Cty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985) (per curiam) (cleaned up). Though Kuykendall provided other forms of discovery and eventually submitted a partial PFS, she consistently failed to comply with the court's initial order—to provide a complete PFS by the required deadline. Given this record, it is "unclear what lesser sanctions could have been appropriate following the district court's warnings and second chances." *Barrera*, 907 F.3d at 236. Therefore, the record also supports a showing on the second prong of

Case: 19-30640   Document: 00515519135   Page: 13   Date Filed: 08/07/2020
Case 2:16-md-02740-JTM-MBN   Document 10904-1   Filed 08/10/20   Page 13 of 13

No. 19-30640

the *Deepwater Horizon* test. *See Park Nat'l Corp.*, 805 F. App'x at 266 ("Timely responses to PTOs are necessary for long-pending cases to move toward resolution, and counsel has not identified a lesser sanction that would have effectively served this aim.").

## C.

Finally, the district court did not abuse its discretion in denying Kuykendall's motion for reconsideration. Because Kuykendall's letter was received by the court after the dismissal, the district court construed the July 11 letter as a motion for reconsideration. Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment "no later than 28 days after the entry of the judgment." The district court's denial of a Rule 59(e) motion is reviewed for an abuse of discretion. *See Midland W. Corp. v. F.D.I.C.*, 911 F.2d 1141, 1145 (5th Cir. 1990).

Kuykendall's motion did not comply with any of the requirements for a Rule 59(e) motion. She failed to identify "an intervening change in the controlling law," "newly discovered evidence that was previously unavailable," or "a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). Although Kuykendall uploaded a new PFS in between the end of the deadline and the date of the dismissal order, her late partial compliance with the court's orders failed to change the fact that she had persistently ignored the previous deadlines. Kuykendall was on notice that dismissal with prejudice was a potential consequence of her inaction, and the court did not abuse its discretion by refusing to reconsider its decision to issue a litigation-ending sanction. *See, e.g., In re Asbestos Prods. Liab. Litig.*, 718 F.3d at 248 (observing that "the very purpose of the centralization" of an MDL "is the efficient progress of the cases in preparation for trial").

## IV.

For the foregoing reasons, the district court's order is AFFIRMED.