# EXHIBIT B

**Plaintiffs' Proposed Amended Allegations That Fail to Comply with PTO 105**

| GAVIN, LULA (10817-3) | | | |
|---|---|---|---|
| Paragraph | Original SFC Allegation | Proposed Amended Allegation | Objection(s) |
| ¶ 13 | N/A | 1. Plaintiff, prior to undergoing chemotherapy treatment in November 10, 2011, discussed potential side effects with her prescribing oncologist, Dr. Shannon Penland. | Non-particularized |
| | | 2. Plaintiff was instructed by Dr. Penland that although she may experience hair loss during the course of her chemotherapy treatments, her hair loss would be temporary. | Non-particularized |
| | | 3. At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss. | Non-particularized |
| | | 6. At some time after completing chemotherapy, Plaintiff noticed that hair was not re-growing as fast or as fully as she had anticipated. | Non-particularized |
| | | 8. Plaintiff did not suspect she may be suffering from permanent hair loss caused by Taxotere until she saw a TV advertisement in 2016 that stated a chemotherapy drug called Taxotere could cause permanent hair loss. | Non-medical |
| | | 9. This was the first time Plaintiff suspected that her lack of full hair re-growth might actually be permanent hair loss caused by her use of Taxotere. | Non-medical |

| GUILBAULT, CLARE (10817-4) | | | |
|---|---|---|---|
| **Paragraph** | **Original SFC Allegation** | **Proposed Amended Allegation** | **Objection(s)** |
| ¶ 13 | N/A | 1. Plaintiff, prior to undergoing chemotherapy treatment in December of 2013, discussed potential side effects with her prescribing oncologist, Dr. Theodossiou and her chemotherapy nurses Amanda and Suzzane Murray. | Non-particularized |
| | | 2. Plaintiff was instructed by Dr. Theodossiou that although she may experience hair loss during the course of her chemotherapy treatments, her hair loss would be temporary and that any hair lost would re-grow. | Non-particularized |
| | | 3. At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss. | Non-particularized |
| | | 4. Plaintiff believed that she would experience full hair re-growth following completion of her chemotherapy treatments based on conversations with her healthcare providers. | Non-medical<br><br>Non-particularized |
| | | 8. Plaintiff also reached out to a friend who was also cancer survivor, looking for advice on how to encourage faster hair re-growth. Her friend suggested that she take Biotin. | Non-medical |
| | | 13. Plaintiff did not suspect she may be suffering from permanent hair loss caused by Taxotere until she observed a legal advertisement in approximately May of 2016. | Non-medical |
| | | 14. This was the first time Plaintiff suspected that her lack of full hair re-growth might actually be permanent hair loss caused by her use of Taxotere. Plaintiff filed her lawsuit within 7 months of first learning of the connection between the use of Taxotere and permanent hair loss. | Non-medical |

2

| HUBBARD, DEBBIE (10817-5) | | | |
|---|---|---|---|
| **Paragraph** | **Original SFC Allegation** | **Proposed Amended Allegation** | **Objection(s)** |
| ¶ 12 | Plaintiff continues to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with Taxotere (docetaxel). | Permanent, irreversible and disfiguring alopecia beginning sometime after treatment with Taxotere (docetaxel) and continuing to the present. | Non-particularized<br><br>Conflicts with Court's Orders (Docs. 8702, 8703, 10465) |
| ¶ 13 | N/A | 1. Plaintiff, prior to undergoing chemotherapy treatment on February 25, 2014, discussed potential side effects with an oncology nurse at her infusion center. The nurse indicated that, although she may experience hair loss during the course of chemotherapy treatments, her hair loss would be temporary. Plaintiff's treating oncologist (Dr. Yunus) and a nurse practitioner also indicated that hair loss during chemotherapy was "normal" or something to that effect. | Non-particularized |
| | | 9. Plaintiff did not suspect she may be suffering from permanent hair loss caused by Taxotere/Docetaxel until she saw an advertisement in 2018 that a chemotherapy drug called Taxotere could cause permanent hair loss. Plaintiff also believes she saw a Facebook posting about Taxotere lawsuits. This was the first time Plaintiff suspected her lack of full hair re-growth might actually be permanent hair loss caused by her use of Taxotere/Docetaxel. | Non-medical |

| PLAISANCE, AUDREY (10817-6) | | | |
|---|---|---|---|
| **Paragraph** | **Original SFC Allegation** | **Proposed Amended Allegation** | **Objection(s)** |
| ¶ 13 | N/A | Plaintiff's prescribing physician advised her that her hair loss would be temporary, though no indication was given as to exactly how long the regrowth would take.<br><br>Further, Plaintiff was placed on other medications, including hormonal medications, following her treatment with docetaxel. It was her understanding that these medications may impact hair regrowth[.]<br><br>As such, Plaintiff did not understand and could not have understood after multiple inquires that her hair loss was permanent. | Non-particularized |
| | | **Liability**<br>1. Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint inclusive, with the same force and effect as if fully set forth herein.<br><br>2. Plaintiff shows that the serious risk of developing disfiguring permanent alopecia and other injuries are the direct and proximate result of breaches of obligations owed by Defendants to Plaintiff, including defects in design, marketing, manufacture, distribution, instructions and warnings by Defendants, which breaches and defects are listed more particularly, but not exclusively, as follows:<br><br>a. Failing to instruct and/or warn of the risk of developing disfiguring permanent alopecia and other injuries;<br><br>b. Failing to adequately instruct and/or warn healthcare providers, including those healthcare providers who administered docetaxel to | Non-medical<br><br>Non-particularized |

Plaintiff of the serious risk of developing disfiguring permanent alopecia and other injuries;

c. Manufacturing, producing, promotion, formulating, creating, and/or designing docetaxel without adequately testing, accounting for, monitoring, and reporting persistent, permanent, and disfiguring permanent alopecia;

d. Failing to provide adequate warning of the dangers associated with docetaxel;
e. Designing, formulating, researching, developing, manufacturing, marketing, promoting and selling docetaxel when it knew or reasonably should have known of its propensity to cause disfiguring permanent alopecia and other injuries;

f. Defendants' design, development, manufacture, marketing, and sale of docetaxel which drug is defective and unreasonably dangerous for the undisclosed risk of developing disfiguring permanent alopecia and other injuries;

g. The continued production and sale of docetaxel without adding adequate warnings despite Defendants' knowledge of the association between docetaxel and disfiguring permanent alopecia and other injuries;

h. Providing inaccurate labeling and inadequate warnings and instructions;

i. Utilizing inadequate testing methods which were not accurate, sensitive, specific, and/or reproducible to track the actual rate of permanent alopecia;

j. Other breaches and defects which may be shown through discovery or at trial; and

| | | k. Failure to act with the required degree of care due and owing to plaintiff and her physician(s). | |
|---|---|---|---|