UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)            MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Sheila Crayton*, Case No. 2:17-cv-05923

PLAINTIFF'S OPPOSITION TO SANOFI'S MOTION FOR SUMMARY
JUDGMENT ON THE CLAIMS OF SHEILA CRAYTON

Sanofi's Motion for Summary Judgment on the Claims of Sheila Crayton (Rec. Doc. 10821) seeks not only dismissal of Sheila Crayton's claims, but also for the payment of costs and attorneys' fees by the Plaintiffs' Steering Committee ("PSC") for Sanofi's preparing a defense to Plaintiff's claims under Rule 37. For the many reasons set forth herein, both the motion for summary judgment and the demand for costs and attorneys' fees be denied. Both the PSC and Plaintiff's counsel, Richard Root, repeatedly warned Sanofi of Plaintiff's unsuitability for trial, a position the Court ultimately adopted, and the PSC has no obligation to share its trial strategy with opposing counsel.

I. **Salient Facts**

Sanofi nominated Sheila Crayton as a trial plaintiff and the Court did not select her for the first MDL trial. In CMO 14 (Trial Scheduling Order) (Rec. Doc. 3064) the Court noted that there were 16 plaintiffs remaining from the pool for Trial 1, and ordered the parties to each select and rank three plaintiffs by January 4, 2019 for Trial 2 with reasons for the suggested rankings, and with reasons why the other potential candidates were inappropriate trial plaintiffs.

In its January 4, 2019 submission, the PSC explained that Ms. Crayton was not representative and would be an inappropriate trial plaintiff:

> Ms. Crayton is not representative due to her mental and physical disabilities. Ms. Crayton is currently on a number of medications, one of which (amitriptyline) has side effects which affect her cognition and would make it difficult for her to testify or stand trial. Ms. Crayton is mostly homebound and requires a caregiver to assist her with the activities of daily living. Additionally, prior to her cancer diagnosis she was diagnosed with lupus, a relatively rare autoimmune disorder among the Plaintiffs and which has confounding factors regarding her injuries. Similar to Defendant's concern about Ms. Johnson's recollection; Ms. Crayton has a very poor recollection about her medical conditions and care which would make it difficult to test the viability of her allegations.

As early as the PSC's January 4, 2019 submission, Sanofi had notice of Ms. Crayton's physical condition and mental challenges which prevented her from not only being a representative plaintiff, but one who neither has the ability to "tell her story" due to her memory nor to sit through a two-week trial. However, on that same date, Sanofi nominated Ms. Crayton as the Trial 2 primary plaintiff. Sanofi's reasoning to explain its choice of Ms. Crayton for primary plaintiff never addressed her physical ability or mental capacity.

On January 29, 2019, Your Honor selected Sheila Crayton as alternate trial plaintiff for the second trial. CMO 16 Selecting Second Bellwether Trial Plaintiffs. (Rec. Doc. 6017)

On February 27, 2019, individual counsel for Ms. Crayton, Richard Root, Betsy Barnes and Lauren Godshall, wrote to counsel for Sanofi, to explain the many reasons why she could not adequately represent the thousands of other MDL plaintiffs, focusing on Ms. Crayton's mental and physical issues, her inability to communicate and participate in an MDL trial, and sought Sanofi's consent to withdraw her. (Rec. Doc. 6559-8) Mr. Root also reminded Sanofi that Ms. Crayton's first deposition had to be adjourned due to her inability to intelligently respond to questions, which is caused by the 8 medications taken daily. Evidence of her memory issues were detailed in the letter with the information that Ms. Crayton responded "I don't remember"

in her deposition more than 90 times. The letter also references her physicians' depositions attesting to ongoing physical issues. And, Dr. Mancuso, the physician who evaluated Ms. Crayton's psychiatric condition, is quoted in the letter:

> Ability to maintain attention and perform simple repetitive tasks for two hour blocks of time would likely be poor. Ability to sustain effort and persist at a normal pace over the course of a routine 40 hour work week would likely be poor. Ability to understand, remember, and follow simple commands would likely be fair, if instructions are repeated. Ability to tolerate the stress/pressure associated with day to day work activity and demands would likely be poor.

The letter request fell on deaf ears. So, on March 22, 2019, Ms. Crayton's attorneys filed Plaintiff's Motion to Remove Sheila Crayton From The Second Bellwether Trial Plaintiff Pool. (Rec. Doc. 6559). The motion relied on the following facts as reasons why Ms. Crayon should be removed as the alternative trial plaintiff:

- Ms. Crayton required a full time caretaker, is overseen by a social worker and is attended to by family members.

- Ms. Crayton took 12 prescriptions simultaneously.

- Ms. Crayton's first deposition was terminated as she was unable to provide responses to further questions after taking her medications.

- Ms. Crayton's second deposition was interrupted for her to take her medication and needed to immediately lie down.

- Since being named a trial plaintiff, Ms. Crayton's health deteriorated as she had difficulty sitting upright and remaining un-medicated for any length of time.

- Ms. Crayton has been fighting lupus and depression for many years.

- Ms. Crayton has been unable to adequately assist her counsel to prepare for trial.

By the time Ms. Crayton filed the motion, Sanofi had been formally told on three separate occasions of Ms. Crayton's condition. Presumably, Sanofi's work in discovery and review of medical records substantiated her condition as it failed to contradict any contention of

Ms. Crayton's inability to represent 12,000 MDL plaintiffs due to her mental and physical health.

Sanofi's Notice of De-Designation Pursuant to CMO NO. 14 filed April 24, 2019 (Rec. Doc. 6807) noted Ms. Crayton's counsel's request to it to allow her to withdraw her case from the trial pool, but urged that CMO 14C does not allow for Ms. Crayton's withdrawal. (Rec. Doc. 6789). Sanofi's reading of CMO 14C was wrong. "A Plaintiff selected for the Trial Pool may be removed from the Trial Pool only for good cause such as health or critical family matters." CMO 14C, Section 2a. Since January 4, 2019 Ms. Crayton has raised the issue that her health rendered her non-representative and jeopardized all other MDL plaintiffs as she could not sit through a two week trial.

The Court denied the motion to remove Ms. Crayton, without reasons, on May 7, 2019. (Rec. Doc. 6935).

After the *Earnest* trial, the parties agreed to extend the expert report deadlines for Ms. Thibodeaux and Ms. Crayton until October 4, 2019.

On October 3, 2019 the PSC was forced to seek a further extension of the expert report deadline until November 8, 2019.

After an unsuccessful conferral with Sanofi by the PSC regarding Ms. Crayton's removal from the trial pool, the parties submitted an agenda item for the Lead and Liaison Counsel conference on November 7, 2019 regarding another request from Mr. Root for removal of Ms. Crayton from the trial pool due to her very poor health condition.

As a result of discussions in this chambers conference, the Court interviewed Ms. Crayton in chambers on November 18, 2019 to determine whether Ms. Crayton's health justified

removal from the trial pool. *See* CMO 14C 2a. On December 11, 2019 the Court granted Ms. Crayton's request to be removed. Your Honor found that:

> she showed significant physical limitations and appeared to lack the stamina necessary to serve as a bellwether plaintiff in a 10-day trial. Accordingly, Ms. Crayton will no longer serve as the alternate plaintiff for the second bellwether trial. (Rec. Doc. 8701)

As this chronology proves, the PSC's January 4, 2019 statements objecting to the inclusion of Ms. Crayton in the trial pool and Ms. Crayton's counsel's recitation of her poor health were both correct. And, the Court agreed.

## II. Meritless Motion for Summary Judgment

The Sanofi Defendants seek dismissal of Ms. Clayton's claim on the basis that Ms. Crayton failed to submit an expert report supporting her permanent chemotherapy induced alopecia (PCIA) diagnosis. Ms. Crayton's removal from the trial pool lifted the obligation to provide an expert report. She is now merely one of 12,000 plaintiffs and under the Court's Order issued today deferring consideration of Sanofi's Motion for Entry of an Order Requiring Proof of Diagnosis, Ms. Crayton has no obligation to furnish a Lone Pine report. (Rec. Doc. 10908)

In the ' motion for summary judgment seeking dismissal of Ms. Crayton's claim Sanofi complains of having to defend the case, despite local counsel for Ms. Crayton doing everything within their power - as good faith officers of the Court - to notify the PSC, Defendants, and this Court that Ms. Crayton was an unsuitable bellwether candidate for her unique health reasons. Defendants, who steadfastly refused to agree to the withdrawal of Ms. Crayton from the trial pool, complain that an expert report was not submitted.

Pursuant to the facts of this case and the Court's prior rulings in this litigation governing the selection and dismissal of potential bellwether cases, Plaintiff respectfully submits that Plaintiff's claims are not yet ripe for dismissal for both safety and procedural reasons. Neither

Individual counsel nor Ms. Crayton should be punished for participating in Phase 1 and Phase 2 discovery after timely notification of the circumstances that bother Sanofi – an unrepresentative trial plaintiff who could not withstand the rigors of trial.

Plaintiff respectfully suggests that not submitting an expert report under the instant facts was prudent and responsible. Sanofi's counsel participated in discovery, personally observed Plaintiff several times, and saw (or should have seen) Ms. Crayton's unsuitability for bellwether candidacy by virtue of their interactions with Ms. Crayton. And yet, doubtless for tactical reasons, Sanofi adamantly refused to agree to withdraw Ms. Crayton as a bellwether despite several timely requests to do beginning in early 2019.

Ms. Crayton was finally removed as a bellwether. As a frail, physically and mentally challenged plaintiff she had to undergo extensive discovery that few MDL claimants have had to bear. She wishes to continue her case as her sister MDL participants and treated the same. She does not want to be singled out for special treatment and forced to produce an expert report at this perilous time of Covid-19 outbreak. The Court will not even consider the Defendants request for a Lone Pine Order until after the third MDL trial, a trial that may not occur for a year considering the pandemic. Plaintiff will adhere to any MDL wide order that may require such a diagnosis, if and when that order is issued. Hopefully if a Lone Pine order is issued, it will be at a time where there is a much safer world for people with compromised medical conditions to travel.

Finally, as to causation, Plaintiff has alleged that she did not have permanent alopecia prior to her chemotherapy, which followed her use of Taxotere in her chemotherapy regime. In *Housley v. Cerise,* 579 So. 2d 973 (1991), the Louisiana Supreme Court held that a claimant's disability is presumed to have resulted from an accident, if *before* the accident the injured person

was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

Here, Plaintiff suggests that the *Housley* presumption is substantive Louisiana law, and evidence of causation at this time sufficient to deny the requested relief – the dismissal of her case.

### III.   Sanofi's request for sanctions is frivolous.

Sanofi seeks an order against the PSC for costs and attorneys' fees under Rule 37, arguing that it conducted discovery in Ms. Crayton's case when the PSC knew Ms. Crayton had no expert report attributing Ms. Crayton's hair's failure to grow back due to her use of Taxotere. Sanofi infers the PSC acted maliciously, calculated, and in an underhanded fashion in the manner it guided Ms. Crayton and her counsel in discovery and trial preparation The PSC has never conducted itself in that manner in the MDL and is slighted by the insinuation. The PSC views Sanofi's request for costs against it as frivolous and an afterthought to the motion to dismiss.

Throughout the bellwether process the PSC encouraged Mr. Root to advise Sanofi and the Court of Ms. Crayton's many health problems, and he did. The PSC supported removal of Ms. Crayton from the trial pool due to a plethora of health reasons. Neither Ms. Crayton's counsel nor the PSC violated any order of the Court. The PSC's discussions with Ms. Crayton's counsel and the PSC's decisions related to Ms. Crayton and the other MDL plaintiffs constitute a portion of the overall litigation strategy, which is protected work product. The PSC should not be sanctioned for not disclosing litigation strategy with the opposing party, and assures the Court that in implementing its litigtion strategy, it has always acted in good faith.

Sanofi relies on Rule 37 for sanctions. Rule 37 is titled "Failure to Make Disclosure or to Cooperate in Discovery; Sanctions". Sanctions are only appropriate for violating the court's discovery orders. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). The rule covers situations where a party has failed to make a Rule 26(a) disclosure, or fails to answer discovery or answer an interrogatory under Rule 33, or fails to produce documents or permit inspection under Rule 34. The conduct Sanofi complains of- failing to share its work product and trial strategy with the opposing party - is not included in the language or spirit of Rule 37's listing of sanctionable conduct. Sanofi has not alleged, nor can it prove, that the PSC violated a Court order which mandates sanctions.

Sanofi also cites 28 USC § 1927 to support its request for attorneys' fees and costs. This statute allows sanctions against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 USC § 1927. Section 1927 sanctions require a showing of "bad faith" by the offending attorney. *Elliott v. Tilton*, 64 F.3d 313 (5th Cir. 1995). And, this statute "is to be strictly construed, and sanctions may not be imposed for mere negligence on the part of counsel." *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995). The PSC did not act in bad faith

Two cases Sanofi relies on are factually inapposite, distinguishable, and provide no authority for sanctions against a Plaintiffs' Steering Committee appointed by a Court to represent the interests of thousands of plaintiffs. In *Jain v. Ford Motor Credit Co.*, 174 F.R.D. 259 (E.D.N.Y. 1997) the Court imposed sanctions against plaintiff's counsel for failure to inform defense counsel at the final pretrial conference that his client left the country and would not be available for trial. *Id.* at 261-262. The court specifically found that "plaintiff's counsel's silence was motivated by his desire to beguile the defendants into an eleventh-hour settlement." *Id.* at

264. Sanofi also cites *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998), which involved similar attorney conduct where the plaintiff attorney pushed forward with claims counsel squarely acknowledged that would never prevail at trial or on appeal.

Sanofi learned on October 21, 2019 that Ms. Crayton did not have an expert report on specific causation. This knowledge was more than 5 months prior to the March 23, 2020 trial date. It was not on the eve of trial at the final pre-trial conference. Sanofi was relieved of doing any depositions on specific causation for Ms. Crayton's case. Not providing an expert report in October, 5 months before the trial was to begin falls very short of the factual scenarios in *Jain* and *Edwards*. And, just 3 months later on December 11, 2019 the Court removed Ms. Crayton as a trial plaintiff. Sanofi raises no conduct of the PSC which warrants sanctions, and has no factual or legal authority upon which to rely. Essentially, its complaint is that it had to pay for conducting discovery in Ms. Crayton's case, a case that Sanofi should have never picked as a "representative" case in the first place. Therefore, imposing fees and costs is not warranted.

Dated: August 11, 2020                                   Respectfully submitted,

*/s/ Richard L. Root*
Richard L. Root (LA Bar #19988)
Betsy J. Barnes (LA Bar # 19473)
Morris Bart, LLC
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Telephone: 504.52S-8000
Facsimile: 504- 599- 3392
rroot@morrisbart.com
bbarnes@morrisbart.com

*Counsel for Plaintiff*

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ Richard L. Root
RICHARD L. ROOT