**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                          **MDL NO. 2740**
PRODUCTS LIABILITY LITIGATION

                                                     **SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

**Elizabeth Kahn, Case No. 2:16-cv-17039.**

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE**
**EXPERT TESTIMONY OF DR. LAURA PLUNKETT**

---

Dr. Plunkett is offering the same two opinions as in *Earnest*, including her "more toxic" opinion, which the Court previously excluded. In addition, Dr. Plunkett now offers two new causation-based opinions, as well as new opinions on the alleged differences between drug-induced alopecia ("DIA") and permanent chemotherapy-induced alopecia ("PCIA"). For the reasons briefly summarized below, all these opinions should be excluded:

First, Dr. Plunkett again opines that Taxotere is "more toxic than Taxol," ignoring the Court's previous Order in *Earnest*, which excluded that opinion because it lacked a "fit" to this case. Dr. Plunkett again employed the same methodology here and she relies on no new evidence. Her opinion should again be excluded.

Second, Dr. Plunkett offers two new causation-based opinions, but claims they do not, in fact, relate to causation. Specifically, Dr. Plunkett intends to testify that: (1) Taxotere carries an "independent risk" of permanent alopecia; and (2) when used in combination, Taxotere is a "substantial contributing factor" to causing permanent alopecia. These are causation-based opinions that must be excluded because Dr. Plunkett admits she did not do the work necessary to

offer such opinions.  Further, Dr. Plunkett testimony regarding the "substantial contributing factor" standard should be excluded because it is irrelevant; she uses that phrase in a manner that differs significantly from the accepted legal definition of that phrase under Louisiana law.

Third, Dr. Plunkett intends to testify that PCIA is not the same as DIA.  Dr. Plunkett is not qualified to give this opinion because she has no training or expertise in the area.  Nor will Dr. Plunkett's opinion assist the jury because, when pressed, she is unable to explain the difference between these conditions or even what her own opinion means.

Finally, the Court should exclude each of Dr. Plunkett's opinions because she has failed to reliably apply her "weight-of-the-evidence" methodology in reaching them.  "Weight-of-the-evidence" is a reliable methodology *only* when the expert outlines her steps, explains the scientific reliability of those steps, and specifically describes how she weighted the evidence.  Based on Dr. Plunkett's new testimony, Sanofi now moves to exclude her opinions because Dr. Plunkett failed to undertake any of those steps.

## **FACTUAL BACKGROUND**

Dr. Plunkett's report for the *Earnest* bellwether trial contained two key opinions:  (1) Taxotere is "more toxic" than Taxol; and (2) Taxotere is associated with a "greater risk" of permanent alopecia compared to some other chemotherapy drugs.[1]  At the *Daubert* stage, the Court excluded Dr. Plunkett's "more toxic" opinion as irrelevant and unhelpful to the jury.[2]  The Court permitted only Dr. Plunkett's "greater risk" opinion.[3]  For this case, Dr. Plunkett again asserts her excluded "more toxic" opinion while offering multiple new opinions not disclosed in *Earnest*.

---

[1]    Rec. Doc. 8097 (Order and Reasons re Motion to Exclude Plunkett).

[2]    *Id.* at 6.

[3]    Because Defendants continue to believe that Dr. Plunkett's "greater risk" opinion is unreliable for reasons set forth in its previous motion in *Earnest*, Defendants incorporate those arguments here.  Rec. Doc. 6155 (Sanofi's Motion to Exclude Expert Testimony of Dr. Plunkett).  Further, Defendants assert the additional arguments made in *Earnest* against Dr. Plunkett that this Court rejected.  Rec. Doc. 8097 (Order and Reasons re Motion to Exclude

Dr. Plunkett is not a medical doctor.[4]  She does not diagnose or treat patients with breast cancer or who have experienced hair loss.[5]  She has never evaluated or selected a chemotherapy regimen for a breast cancer patient.[6]  By her own admission, she has no training in, nor is she an expert in oncology, dermatology, pathology, or epidemiology.[7]  Dr. Plunkett has never conducted a study, written or published any peer-reviewed literature, given a presentation, or—*at least until asked to do so in this MDL*—provided an expert opinion on alopecia or breast cancer.[8]

For these and other reasons, Dr. Plunkett's opinions have been excluded by numerous courts.  *See Rodman v. Otsuka America Pharm., Inc.*, No. 18-cv-03732, 2020 U.S. Dist. LEXIS 86958, 2020 WL 2525032, at *5 (N.D. Cal. May 18, 2020) (Excluding Dr. Plunkett's opinions for "extrapolat[ing] conclusions beyond the scope of her sources."); *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (Mirena II)*, 341 F. Supp. 3d 213, 260 (S.D.N.Y. 2018) (Excluding Dr. Plunkett because "there [was] too great an analytic gap between the available data and the conclusion."); *Terry v. McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prods. Liab. Litig.)*, MDL No. 2436, 2:12-cv-07263, 2016 WL 4073084, 2016 U.S. Dist. LEXIS 99175, at *29 (E.D. Pa. July 28, 2016) (Excluding Dr. Plunkett's legal opinion because it would

---

Plunkett).  *See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 8 n.4 (1st Cir. 2001) ("Circumstances change from trial to trial, and admissibility rulings may also change from judge and trial to trial.").  For purposes of the record, Sanofi incorporates its prior motion and reply in support thereof as if fully set forth here.  Rec. Doc. 6155 (Sanofi's Motion to Exclude Expert Testimony of Dr. Plunkett); Rec. Doc. 7609 (Sanofi's Reply to Exclude Expert Testimony of Dr. Plunkett).

[4]    **Ex. A**, Nov. 19, 2019 Plunkett Dep. 128:13–16.  Although Dr. Plunkett holds herself out as a "pharmacologist, toxicologist, United States Food and Drug Administration (FDA) regulatory specialist," Dr. Plunkett has worked as a full-time expert witness for the past 20 years.  **Ex. B**, Mar. 23, 2020 Plunkett Rpt. at 1 ¶ 1; **Ex. C**, Dec. 10, 2018 Plunkett Dep. 9:2–10:19.  In the last five years, Dr. Plunkett has provided opinions and testimony more than 80 times.  **Ex. D**, Mar. 23, 2020 Plunkett Rpt. List of Testimony.  In 2018 alone, Dr. Plunkett estimates that she was deposed "at least" 25 times.  Ex. C, Dec. 10, 2018 Plunkett Dep. 9:5–9.

[5]    Ex. C, Dec. 10, 2018 Plunkett Dep. 70:3–10; 80:14–81:5.

[6]    Ex. A, Nov. 19, 2019 Plunkett Dep. 127:17–128:6.

[7]    Ex. C, Dec. 10, 2018 Plunkett Dep. 81:6–21.

[8]    *Id.* at 108:4–109:18.

"not be helpful to the jury and could lead to confusion about the legal duties of the defendants in this case."); *Tsao v. Ferring Pharm., Inc*., No. 4:16-cv-01724, 2018 WL 1468265, 2018 U.S. Dist. LEXIS 49173, at *30–31 (S.D. Tex. Mar. 26, 2018) (Excluding Dr. Plunkett in part based on impermissible legal conclusions.); *Newman v. McNeil Consumer Healthcare*, No. 10-cv-1541, 2013 WL 9936293, 2013 U.S. Dist. LEXIS 113438, at *14 (N.D. Ill. Mar. 29, 2013) ("Dr. Plunkett is precluded from offering her opinion that acetaminophen is safer than ibuprofen with regard to the risk of SJS/TEN."); *Byrd v. Janssen Pharms., Inc.*, 333 F. Supp. 3d 111, 130 (N.D.N.Y. 2018) ("Simply stated, there is so great an analytical gap between the facts and/or data relied on and the general-causation opinion proffered by Dr. Plunkett as to render her opinion not 'based' on them under Fed. R. Evid. 702(b).").

## **LEGAL STANDARD**

Federal Rule of Evidence 702 controls the admission of expert testimony. Under Rule 702, the Court's gatekeeping function first involves determining whether the expert is qualified; then it "involves a two-part inquiry into reliability and relevance":

> First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.

> Second, the Court must determine whether the expert's reasoning or methodology is relevant. The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence.

*Burst v. Shell Oil Co*., 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted). Plaintiff bears the burden to proof both reliability and relevance. *Id.*

4

The "reliability analysis applies to *all aspects* of an expert's testimony," including "the methodology, the *facts underlying the expert's opinion*, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (emphasis added).  Importantly, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Id*.  These "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000), provide that "conjecture, hypothesis, subjective belief, or unsupported speculation are impermissible grounds on which to base an expert opinion." *Wehling v. Sandoz Pharm. Corp.*, No. 97-cv-2212, 162 F.3d 1158, 1998 WL 546097, at *5 (4th Cir. Aug. 20, 1998) (Table Decision).  "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

For expert testimony to be relevant, it must relate sufficiently to issues in the case to assist the trier of fact.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (the district court's "gatekeeping role" requires ensuring that the expert testimony "is relevant to the task at hand").  "The question here is whether the reasoning or methodology 'fits' the *facts of the case* and will thereby assist the trier of fact to understand the evidence." *Burst*, 120 F. Supp. 3d at 551 (emphasis added).

By "adopting an excessive level of generality in [the] gatekeeping inquiry," courts applying *Daubert* have "fatally erred by applying its criteria at a standard of meaninglessly high generality rather than boring in on the precise state of scientific knowledge in this case." *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999). "'[C]ourts have a duty to inspect the reasoning of qualified scientific experts' … including whether an expert's sources support his conclusions." *Rodriguez v. Stryker Corp.*, 680 F.3d 568, 572 (6th Cir. 2012) (citation omitted).

## ARGUMENT

I.  **DR. PLUNKETT'S OPINION THAT TAXOTERE IS "MORE TOXIC" THAN TAXOL SHOULD BE EXCLUDED AGAIN BECAUSE IT IS NOT RELEVANT.**

As she did in her *Earnest* report, Dr. Plunkett opines that "Taxotere is more toxic than Taxol."[9]  The Court excluded this opinion previously and should do so again:

> The second opinion [by Dr. Plunkett] Defendants attack is that Taxotere is "more toxic" than Taxol. Defendants argue that this opinion is irrelevant and would be unhelpful to the jury. They aver that the opinion does not "fit" the facts of this case, which is about permanent hair loss. The Court agrees. If the jury were to hear this opinion, it may assume without a sufficient basis for doing so that if Taxotere is more toxic than Taxol, Taxotere is more likely to cause permanent hair loss.[10]

Dr. Plunkett has not changed her methodology, her analysis, or the evidence she relied on from the first time she offered this opinion ("Q. Is there anything different about your Taxotere-is-more-toxic-than-Taxol opinion than what you described in your previous deposition?  A. Well, I've -- I think I've worded it a little bit differently in my report. I may have a different sentence or so in there, and I need to look at that, I think. But I wouldn't – there's no new evidence that I would point to.").[11]  At her most recent deposition, Dr. Plunkett reiterated that she made no changes to her "more toxic" opinion ("I don't believe I changed that part of my report that much.").[12]

The Court should again exclude Dr. Plunkett's "more toxic" opinion because: (1) a generalized comparison of unrelated or overall toxicity profiles between Taxotere and Taxol is not relevant to permanent hair loss; (2) Dr. Plunkett's opinion will confuse and mislead the jury, which will impermissibly draw a causal link between a general comparison of overall "toxicities" and

---

[9]   Ex. B, Mar. 23, 2020 Plunkett Rpt. at 32 ¶ 63.

[10]   Rec. Doc. 8097 at 6 (Order and Reasons re Motion to Exclude Plunkett).

[11]   Ex. A, Nov. 19, 2019 Plunkett Dep. 369:16–23.

[12]   **Ex. E**, Apr. 17, 2020 Plunkett Dep. 110:1–10.

permanent hair loss alleged by Plaintiffs; and (3) Dr. Plunkett's opinion is based on an unreliable and inadequate methodology.[13]

## II.    DR. PLUNKETT'S CAUSATION-BASED OPINIONS ARE INADMISSIBLE.

Since *Earnest*, Dr. Plunkett has added two new causation-based conclusions to her report. First, Dr. Plunkett now opines "Taxotere/docetaxel carries an independent risk" of PCIA and claims this risk is "not rare."[14]  But that is just a different way of saying that Taxotere is independently associated with PCIA—*i.e.*, Taxotere alone can cause PCIA.  Second, Dr. Plunkett also now opines that "when used in combination, Taxotere/docetaxel has been a substantial contributing factor" in PCIA.[15]  There can be no doubt this is a causation opinion considering that the Court instructed the *Earnest* jury to apply the "substantial contributing factor" test in assessing whether Plaintiff met her burden to prove causation ("Plaintiff must show that Defendants' conduct was a substantial contributing factor in bringing about the result.").[16]  Dr. Plunkett's new causation opinions must be excluded for the following reasons:

### A.    Dr. Plunkett has not done the work to provide causation opinions.

Dr. Plunkett tries to avoid exclusion of these opinions by arguing she is not offering any opinion on general or specific causation ("I'm not doing a causation analysis here.");[17] ("Q. And just so we're clear, you're not going to come in to trial and opine that Ms. Kahn's hair loss was

---

[13]    Rec. Doc.  6155 at 13–20 (Sanofi's Motion to Exclude Expert Testimony of Dr. Plunkett); Rec. Doc. 8097 at 6 (Order and Reasons re Motion to Exclude Plunkett).

[14]    Ex. B, Mar. 23, 2020 Plunkett Rpt. at 18 ¶ 38; 23 ¶ 44; 32 ¶ 63.

[15]    *Id.*

[16]    Rec. Doc. 8283–1 at 13 (*Earnest* Jury Trial – Jury Charge).

Sanofi continues to assert that this instruction does not properly state the "but for" causation test under Louisiana law.  *Nagle v. Gusman*, 61 F. Supp. 3d 609, 622 (E.D. La. 2014) (quoting *Perkins v. Entergy Corp.*, 2000-1372 (La. 3/23/01), 782 So. 2d 606, 611).

[17]    Ex. E, Apr. 17, 2020 Plunkett Dep. 138:6–7.

caused by Taxotere. Is that correct?  A. That is correct. There are others that, it's my understanding, will handle that, but it's not me.").[18]

The law, however, "does not require the District Court to take [an expert] at [her] word." *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1249 (11th Cir. 2018).  Rather, the Court may look beyond Dr. Plunkett's assertions and assess the true nature of her testimony.  *See Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1258 (N.D. Ala. 2017) (excluding expert testimony because "[d]espite her assertions to the contrary, [the expert] has implicitly provided her own causation opinion in both her report and her deposition").

In *Jones*, for example, the plaintiff's expert claimed she was not offering a causation opinion, but instead intended only to testify that the drug at issue was "linked" to a certain disease and that there was a "causal association" between the two.  *Id*. at 1257–58.  The court rejected the expert's claim, finding she was engaging in "verbal semantics" because there was no distinction between a "link," "causal association," and "medical causation."  *Id*.  The same is true here.  Dr. Plunkett is engaging in "verbal semantics" by insisting her opinions—that Taxotere is both an "independent risk" and a "substantial contributing factor" for causing PCIA—are not medical causation opinions.  That assertion is false.

In order to offer a causation opinion, Dr. Plunkett must have conducted the appropriate two-part test:  (1) assess evidence of a statistically significant association between the agent and disease, and (2) assess whether the association is truly causal through application of a recognized methodology like the Bradford-Hill criteria.[19]  Dr. Plunkett, however, admits that she conducted no such analysis ("Q. So when you were talking about the Bradford-Hill criteria that is not an

---

[18]   *Id*. at 18:17–23.

[19]   Rec. Doc. 8094 at 5 (Order and Reasons re Motion to Exclude Expert Testimony on General Causation).

analysis that you have performed in this case. Is that correct? A. That – that's correct. I have not done a full analysis.");[20] ("I am not a general causation expert, based on my understanding of what 'general causation' means, which is what I described for you a few minutes ago; it would be going through [the Bradford-Hill] analysis.");[21] ("But I'm not -- the causation – I'm not the causation person, so I haven't done that analysis.").[22]  Dr. Plunkett explains:

> Q.   Is associated in your mind equal to cause and effect?
>
> A.   It's not a full causation analysis, no… -- so it is different. When I – it's -- I try to be very careful in my report. **If I'm doing a full causation analysis, I will use** "caused" or **"can cause."**  When I use the word "associated," it's because I'm looking at sort of the understanding of what is either biologically plausible or an understanding of the mechanism and I'm looking at the data in that way.
>
> Q.   Okay.
>
> A.   But I haven't done a full Bradford Hill analysis to use the word "cause."[23]

Although Dr. Plunkett testified that she would only use the phrase "can cause" if she had done a full causation analysis, Dr. Plunkett routinely uses the phrase "can cause" when discussing Taxotere and PCIA ("Taxotere/ docetaxel **can cause** PCIA").[24]

In *Byrd*, Dr. Plunkett was excluded on almost identical grounds.  *Byrd*, 333 F. Supp. 3d at 130.  There, Dr. Plunkett "admitted to not being a causation expert," but still stated that Risperdal "can cause" gynecomastia.  *Id*. at 127.  The court concluded "there is so great an analytical gap

---

[20]   Ex. E, Apr. 17, 2020 Plunkett Dep. 20:17–24.  *See also*, *id*. at 19:13–20:24.

[21]   *Id*. at 25:20–24.

[22]   **Ex. F**, Dec. 13, 2019 Plunkett Dep. 420:17–18.  *See also*, *id*. at 419:16–18; 420:6–8; 422:18–21; 425:12–15; 440:6–12; Ex. A, Nov. 19, 2019 Plunkett Dep. 80:3–14; 240:4–8; 347:22–348:1; 354:4–5; Ex. C, Dec. 10, 2018 Plunkett Dep. 157:20–158:24; 301:18–20; 306:13–14.

[23]   Ex. A, Nov. 19, 2019 Plunkett Dep. 80:3–17 (emphasis added).

[24]   Ex. B, Mar. 23, 2020 Plunkett Rpt. at 15 ¶ 33; 18 ¶ 38–39; 22 ¶ 45; 32 ¶ 63 (emphasis added).

between the facts and/or data relied on and the general-causation opinion proffered by Dr. Plunkett as to render her opinion not 'based' on them under Fed. R. Evid. 702(b)." *Id*. at 130. Just as in *Byrd*, Dr. Plunkett admits she has not undertaken a proper causation analysis, while simultaneously opining that Taxotere "can cause" PCIA. Dr. Plunkett's veiled causation opinions are inadmissible.

  **B.** **Dr. Plunkett's "substantial contributing factor" opinion is an improper legal conclusion.**

   In addition to being an improper causation opinion, Dr. Plunkett's "substantial contributing factor" opinion is also an impermissible legal conclusion. If not excluded, Dr. Plunkett will testify to the *Kahn* jury that "when used in combination, Taxotere has been a substantial contributing factor" to PCIA.[25] That opinion would be unhelpful and invade the province of the jury. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. 07-mdl-1873, 2009 U.S. Dist. LEXIS 126556, 2009 WL 2169224, at *3 (E.D. La. July 15, 2009) ("Indeed, this Court concludes that all of Dr. Laux's opinions fail to assist the Court or Jury. She seems to play the role of an 'über-juror' rather than as an expert, offering opinions that invade the province of the jury, which can reasonably be expected to consider and evaluate testimony from actual experts who have specialized, technical knowledge on the subject matter pertinent to this litigation, such as travel trailer design and manufacture, and alleged health hazards associated with formaldehyde exposure."). Dr. Plunkett should not be allowed to render a legal conclusion to the jury, particularly considering Dr. Plunkett utilizes a different definition than the one used by this Court.

   Dr. Plunkett has been excluded numerous times for attempting to provide legal opinions. *See In re Tylenol*, 2016 U.S. Dist. LEXIS 99175, at *29 (Dr. Plunkett's legal opinion was excluded

---

[25] *Id*. at 32 ¶ 63.

because it would "not be helpful to the jury and could lead to confusion about the legal duties of the defendants in this case."); *Tsao*, 2018 U.S. Dist. LEXIS 49173, at *31 ("Plunkett's opinions that the Bravelle label was 'misbranded' or 'adulterated' are inadmissible legal conclusions."). The Fifth Circuit also has roundly rejected experts opining on legal standards or duties because they "tell the jury what result to reach." *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 n.4 (5th Cir. 1992); s*ee also id.* ("We have held that Rule 704 'does not allow an expert to render conclusions of law.'") (citing *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Huff v. United States*, 273 F.2d 56 (5th Cir. 1959).[26]

The Court identifies improper legal conclusions by determining whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *McIver*, 470 F.3d at 562. Such is the case here. Dr. Plunkett knows that "substantial contributing factor" is a legal term of art ("Q. Right. So when – you're aware that substantially contributing factor is a legal term; correct? A. I'm aware that it is, yes.").[27]

When asked to explain her opinion, Dr. Plunkett testified:

> Q.   Can you put a percentage on what constitutes something that becomes from being a contributing factor to a substantially contributing factor?
>
> A.   Well, I believe it's more likely than not that it would happen.
> …
> Q.   And more likely than not in percentages is what to you?

---

[26]   *See also United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996) (Experts "cannot testify about legal issues on which the judge will instruct the jury.") (citing *Bammerlin v. Navistar Internat'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994); *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses, to define legal terms.").

[27]   Ex. A, Nov. 19, 2019 Plunkett Dep. 105:1–4. *See also id.* at 105:5–9.

> A.    Well, in -- in the **legal cases I work on, it means the scales have tipped**, which can be more than 50 percent.
>
> …
>
> Q.    I just want to talk about the way you're using it, Dr. Plunkett.
>
> A.    Well, I'm not meaning it to be either one of those necessarily. I'm – I'm forming this opinion because I – it's my understanding that there can be confusion over -- over the fact that you could have individuals exposed to combinations of things and how you determine or whether or not you can make a statement over whether or not that -- a particular exposure is indeed a contributing factor to a condition…And -- and so in -- in my -- it is -- **it is related to my legal work because I understand that that is a standard that is often used** --.[28]

Dr. Plunkett's opinion also would confuse the jury because she attributes a different definition to the term than the Court's definition. *See In re Tylenol*, 2016 U.S. Dist. LEXIS 99175, at *29. Dr. Plunkett provided various definitions of substantial contributing factor at her deposition, including:

- "Having a relationship."[29]

- "You can see something unique about that agent that can contribute to a situation."[30]

- "More likely than not."[31]

- "More than 50%."[32]

- "The scales have tipped."[33]

- "I believe it means it's [an] independent risk."[34]

---

[28]   *Id*. at 102:6–11; 102:22–103:1; 103:6–20 (emphasis added). *See* entire discussion *id*. at 100:6–115:15.

[29]   *Id*. at 101:10–11.

[30]   *Id*. at 101:15–17.

[31]   *Id*. at 102:6–11.

[32]   *Id*. at 102:22–103:1.

[33]   *Id*.

[34]   *Id*. at 106:24–107:9.

None of these definitions were included in the jury instructions in *Earnest* ("Plaintiff must show that Defendants' conduct was a substantial contributing factor in bringing about the result. In other words, it is not necessary for Plaintiff to negate all other contributing factors or causes of Mrs. Earnest's injuries, provided they show that Defendants' failure to provide an adequate warning in the Taxotere label substantially contributed to her injuries. Where two or more possible causes for an injury are identified, Plaintiff must establish with reasonable probability that Mrs. Earnest's injury resulted from a cause for which Defendants would be liable.").[35]

The prejudice and confusion would be obvious. The Court need look no further than Plaintiff's counsel closing argument in *Earnest*:

> [P]laintiff must show that defendant's conduct was a **substantial contributing factor** in bringing about the result. In other words, it's not necessary for plaintiff to negate all other **contributing factors** or causes of Ms. Earnest's injuries provided they show that the defendant's failure to provide an adequate warning in Taxotere's label **substantially contribute**. So that's what you have to look at, did it **substantially contribute**? We believe in this case, ladies and gentlemen, that it was the sole cause, but the law doesn't require that. You must determine if it **substantially contributed**. Did Taxotere **substantially contribute**?[36]

A jury might conflate Dr. Plunkett's testimony regarding "substantial contributing factor" with the legal definition of that phrase. To prevent the risk of such confusion, the Court should preclude Dr. Plunkett from using that phrase in offering her testimony.

---

[35]  Rec. Doc. 8283–1 at 13 (*Earnest* Jury Trial – Jury Charge). Moreover, Dr. Plunkett ignores a crucial component of the Court's instruction—that to establish proximate causation, any "substantial contributing factor" must be a "cause without which the injury would not have occurred." In other words, even under the "substantial contributing factor" test, Plaintiff must still show that she would not have suffered permanent hair loss if she had not taken Taxotere. Dr. Plunkett's definitions may lead the jury to believe that Plaintiff does not need to meet this fundamental element of proximate cause.

[36]  **Ex. G**, Sept. 26, 2019 Trial Tr. 2178:22–2179:7.

III.    **DR. PLUNKETT'S ATTEMPT TO DISTINGUISH BETWEEN DIA AND PCIA IS INADMISSIBLE.**

In her *Kahn* report, Dr. Plunkett expanded her discussion of the alleged differences between DIA and PCIA,[37] and offered a new definition of PCIA—"where hair fails to regrow, or substantially regrow after exposure to the drug has ceased."[38]   These new opinions should be excluded.

### A.    Dr. Plunkett is not qualified to distinguish between DIA and PCIA.

Dr. Plunkett claims—based solely on her review of the literature—that DIA and PCIA are different conditions.  In her latest report, Dr. Plunkett explains: "PCIA is a condition where hair fails to regrow, or substantially regrow after exposure to the drug has ceased."[39] Dr. Plunkett states that PCIA is different from DIA because DIA is not "permanent."   Dr. Plunkett has never conducted a study, written or published any peer-reviewed literature, given a presentation, or—*at least until asked to do so in this MDL*—provided an expert opinion on any form of alopecia.[40]  To provide an opinion regarding the parameters of two separate medical conditions, Dr. Plunkett must have some training or expertise in the area.  *See Levitt v. Merck Sharp & Dohme Corp. (In re Vioxx Prods. Liab. Litig.),* MDL No. 1657, 2016 WL 8711273, 2016 U.S. Dist. LEXIS 127155, at *13 (E.D. La. Sep. 16, 2016) (excluding an expert's testimony and opinions that fall outside his area of expertise); *Goodman v. Harris County,* 571 F.3d 388, 399 (5th Cir. 2009) (holding that an expert

---

[37]   Dr. Plunkett had one passing reference that DIA was not the same to PCIA in her *Earnest* report.  **Ex. H**, Nov. 4, 2018 Plunkett Rpt. at 23 ¶ 51.

[38]   Ex. B, Mar. 23, 2020 Plunkett Rpt. at 32 ¶ 63.

[39]   *Id.*

[40]   Ex. C, Dec. 10, 2018 Plunkett Dep. 108:4–109:18; Ex. B, Mar. 23, 2020 Plunkett Rpt. at 32 ¶ 63.

may not "go beyond the scope of his expertise in giving his opinion."). Dr. Plunkett has neither, and her opinions accordingly should be excluded.[41]

**B.     Dr. Plunkett's opinion is unhelpful to the trier of fact because she cannot actually distinguish between DIA and PCIA.**

Dr. Plunkett's new opinions are unhelpful to the trier of fact because her definitions are so impermissibly vague that, when pressed, Dr. Plunkett cannot actually delineate between DIA and PCIA. Dr. Plunkett claims that, unlike with DIA, with PCIA there is either no hair regrowth or a substantial lack of regrowth.[42] When asked what qualifies as "substantial lack of regrowth," Dr. Plunkett could not define it:

> Q.     So when you say lack of substantial regrowth, will you define that for me?
>
> A.      Defining it as -- as recognizable, and I'm defining it based the way that the individuals in the papers do. They – that's a term that these -- these -- some of these physicians will use. And I'm just trying to put it into context with the literature. …Where not everyone that is described will be totally bald, but they certainly do not have normal hair regrowth. And there are significant -- the doctors talk about significant pattern within that lack of regrowth of -- of baldness or parts of the hair where it doesn't grow back.[43]

---

[41]   Dr. Plunkett's conclusions are based solely on her review of literature. But a purported expert's "'review of literature' in an area outside [her] field does not 'make [her] any more qualified to testify as an expert . . . than a lay person who read the same articles.'" *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002) (quoting *U.S. v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999)). *See also Wade-Greaux v. Whitehall Labs.*, 874 F. Supp. 1441, 1476 (D.V.I. 1994) ("Dr. Done's only knowledge or experience regarding the teratogenicity of sympathomimetics comes from his review, for purposes of testifying in litigation, of selected literature appearing in various publications and elsewhere. Accordingly, Dr. Done is not qualified to offer ultimate opinions as to the teratogenicity of sympathomimetics in humans."). This Court previously rejected this argument but in the context of Dr. Plunkett's risk opinions, not opinions regarding disease parameters, with which Dr. Plunkett has no experience.

[42]   Ex. B, Mar. 23, 2020 Plunkett Rpt. at 32 ¶ 63.

[43]   Ex. A, Nov. 19, 2019 Plunkett Dep. 148:21–149:20.

The lack of "normal hair regrowth" is not an appropriate scientific definition for what constitutes PCIA. Nor is Dr. Plunkett's generic claim that "the doctors are very clear that they're describing something different when they talk about permanent alopecia":

> Q.   When does something become -- go from chemotherapy-induced alopecia, where maybe it grows back with less density, to permanent chemotherapy-induced alopecia, where you say it's a lack of substantial regrowth? Where is that -- where is that bright line for me?
>
> A.   So I don't diagnose it, and I think that's a diagnosis question you're asking me. But I would say to you based on the literature that I look at that the doctors are very clear that they're describing something different when they talk about permanent alopecia.[44]

These vague descriptions are neither grounded in science nor helpful to the jury. *See In re Tylenol*, 2016 U.S. Dist. LEXIS 99175, at *29 (excluding Dr. Plunkett's opinion because it would "not be helpful to the jury").

More significantly, Dr. Plunkett's testimony reveals that she cannot actually distinguish between DIA and PCIA:

> Q.   If a person takes chemotherapy and loses their hair, and then it grows back, would that be drug-induced alopecia, or would that be permanent chemotherapy-induced alopecia?
>
> A.   That's a diagnosis, so I don't do that. I can't answer that for you. I can tell you how it's been described in the literature, and what I have relied upon, but I don't -- I can't -- I don't diagnose patients, so I can't tell you.[45]

As Dr. Plunkett is incapable of explaining the application of her *own opinion*, it must be excluded. *See Sanchez v. Bos. Sci. Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, 2014 U.S. Dist. LEXIS 137189, at *31 (S.D. W. Va. Sep. 29, 2014) (excluding an expert's opinion and holding: "If Dr.

---

[44]   *Id*. at 149:21–150:9.

[45]   Ex. E, Apr. 17, 2020 Plunkett Dep. 112:9–18.

Margolis cannot explain the basis of his opinion, I am simply unable to conclude that his opinion is reliable.").  Here, the vast majority of plaintiffs, including Ms. Kahn, did not continue to experience complete hair loss six months after chemotherapy.  Rather, their hair returned, but allegedly not as it was before.  As such, there exists an uncertain middle between a patient with some lack of hair regrowth (DIA) and one with substantial lack of hair regrowth (PCIA).  And it is in that middle that Dr. Plunkett is unable to distinguish her opinion between DIA and PCIA.  Dr. Plunkett's opinions will not help the jury and should be excluded.

## IV.   DR. PLUNKETT DID NOT RELIABLY APPLY HER "WEIGHT-OF-THE-EVIDENCE" METHODOLOGY.

In her latest report, Dr. Plunkett made clear that she employees a weight-of-the-evidence methodology for all six of her opinions ("weight-of-the-evidence indicates that it is biologically plausible that Taxotere can cause" PCIA);[46] (concluding that papers, taken together, provided evidence that PCIA in patients receiving Taxotere is not rare);[47] ("weight-of-the-evidence indicates that it is biologically plausible that Taxotere can cause PCIA when the drug is used as an adjuvant to treat early stage breast cancer, that the risk of permanent, irreversible alopecia is not rare, that Taxotere use carries an independent risk of PCIA, and that Taxotere use is associated with an increased risk as compared to other drugs used in breast cancer treatment")[48]; (explaining that PCIA versus DIA opinion relies on the literature)[49]; ("weight of the evidence that you look at . . . the TAC regimen with the Taxotere specifically is an increased risk and therefore is a substantial contributing factor")[50]; ("Again, my substantial contributing factor opinions are based on my

---

[46]   Ex. B, Mar. 23, 2020 Plunkett Rpt. at 15 ¶ 33.

[47]   *Id*. at 17–18 ¶ 38.

[48]   *Id*. at 22 ¶ 44.

[49]   Ex. A, Nov. 19, 2019 Plunkett Dep. 146:6–148:20.

[50]   *Id*. at 232:15–25.

weight of the evidence, not just one paper.").[51]  But Dr. Plunkett failed to apply that methodology reliably.

Courts recognize that a "weight-of-the-evidence" methodology is easily manipulated: "[r]ather than advancing the search for truth, these flexible methodologies may serve as vehicles to support a desired conclusion."  *In re Mirena II*, 341 F. Supp. 3d at 247.  To ensure that use of "weight-of-the-evidence" "'is truly a methodology, rather than a mere conclusion-oriented selection process ... there must be a scientific method of weighting that is used and explained.'"  *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig. (Zoloft II)*, 858 F.3d 787, 796 (3d Cir. 2017) (quoting *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 607 (D.N.J. 2002)).   An expert's bare assertion that she relied on a "weight-of-the-evidence" methodology—without more—fails the *Daubert* reliability analysis.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("The expert's assurances that [she] has utilized [a] generally accepted scientific methodology is insufficient.").   Instead, the expert must show her work in three distinct ways.

First, because this methodology involves "substantial judgment on the part of the expert, it is crucial that the expert describe each step in the process by which [she] gathered and assessed the relevant scientific evidence."  *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1311 (N.D. Fla. 2018) (citing *Zoloft II*, 858 F.3d at 795–97).

Second, the expert must "rigorously explain how they have weighted the criteria" lest the approach become "virtually standardless" and "unacceptably manipulable."  *In re Mirena II*, 341 F. Supp. 3d at 247; *In re Abilify*, 299 F. Supp. 3d at 1311 (expert must explain "how the relative weight of the various pieces of evidence led to [her] conclusion"); *Magistrini*, 180 F. Supp. 2d at

---

[51]   *Id*. at 249:12–14.

608 ("Where, as here, elements of judgment pervade the methodology, it is essential that the expert set forth the method for weighing the evidence upon which his opinion is based.").

Finally, the expert must demonstrate that her weighting method was scientifically reliable. *Id*. at 602 ("[T]he assessment or weighing of [the] evidence must not be arbitrary, but must itself be based on methods of science."); *Zoloft*, 858 F.3d at 796.  Failure to explain her work on any one of these three steps merits exclusion of the expert's resulting opinions.  *Id*.

Dr. Plunkett failed all three.  In support of each of her opinions, Dr. Plunkett selected some subset of data (without explanation for why it was selected), summarized that data, and stated her conclusion.  *Nowhere* in Dr. Plunkett's report does she describe the steps she took to gather and analyze the evidence, explain how she weighted the evidence, or explain why her weighting was scientifically valid.[52]  Dr. Plunkett, in fact, has repeatedly testified that she cannot provide a breakdown of her weighting of the evidence,[53] leaving the Court and Sanofi with no ability to assess whether the weighting methodology used was scientifically valid.  *In re Mirena II*, 341 F. Supp. 3d at 247.

The court in *Mirena II* excluded Dr. Plunkett's opinions due to these same failures, concluding that, because Dr. Plunkett "does not explain the weights she places on the various" factors in her analysis, her opinion "does not survive *Daubert* scrutiny."  *Id*. at 257–58.  Rather, as the court recognized, Dr. Plunkett's methodology was "virtually standardless" and designed to "to support a desired conclusion."  *Id*. at 247.  Other courts have excluded opinions offered by Dr. Plunkett due to similar gaps in analysis.  *See Rodman*, 2020 WL 2525032, at *5 (Dr. Plunkett's opinions were excluded for "extrapolat[ing] conclusions beyond the scope of her sources."); *In re*

---

[52]   *See* full report.  Ex. B, Mar. 23, 2020, Plunkett Rpt.

[53]   Ex. A, Nov. 19, 2019 Plunkett Dep. 206:5–13; Ex. C, Dec. 10, 2018 Plunkett Dep. 195:22–196:23.

*Mirena II*, 341 F. Supp. 3d at 260 (Dr. Plunkett was excluded because "there [was] too great an analytic gap between the available data and the conclusion."); *Byrd*, 333 F. Supp. 3d at 130 ("Simply stated, there is so great an analytical gap between the facts and/or data relied on and the general-causation opinion proffered by Dr. Plunkett.").

Here too, Dr. Plunkett's report and testimony reveal that her weight-of-the-evidence methodology was "virtually standardless" and "unacceptably manipulable." Because all of Dr. Plunkett's opinions are purportedly based on a weight-of-the-evidence methodology, all must be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude certain testimony of Dr. Plunkett under Federal Rule of Evidence 702, specifically:

(1)  Dr. Plunkett's "more toxic" opinion;

(2) Dr. Plunkett's two new causation opinions (i) Taxotere carries an independent risk of PCIA and (ii) Taxotere is a "substantial contributing factor" to PCIA;

(3) Dr. Plunkett's opinion that there is a difference between drug induced alopecia and permanent chemotherapy induced alopecia; and

(4) all six of Dr. Plunkett's opinions that rely on her weight-of-the-evidence methodology.


Respectfully submitted,

*/s/ Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Douglas J. Moore*