UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)             MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
*Kahn v. Sanofi-Aventis, et al*, Case No. 2:16-cv-17039

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES CONCERNING ALTERNATIVE CAUSES

An affirmative defense suggesting third party fault and/or an alternative cause of the plaintiff's injuries must be supported by more than mere speculation. Yet, it is abundantly clear from the written reports and testimony of Sanofi's experts that speculation alone is their vehicle for suggesting to the jury that third parties and/or alternative causes are responsible for Plaintiff Elizabeth Kahn's permanent hair loss.[1] Accordingly, for these reasons and those set forth more fully herein, partial summary judgment on Sanofi's affirmative defenses concerning alternative causes must be granted.

**I.     FACTS**

Ms. Kahn was diagnosed with early-stage breast cancer in April 2008.[2] Her treating oncologist recommended that she participate in the NSABP clinical trial for chemotherapy treatment.[3] As part of the clinical trial, Ms. Kahn underwent three phases of breast cancer treatment.[4] The first phase involved cytotoxic chemotherapy with Taxotere for four cycles

---

[1] The deadline for the disclosure of general causation expert reports passed on April 29, 2020, and Sanofi has disclosed no general causation experts for the alternative causes of Ms. Kahn's PCIA. As the Court is aware, there is a second deadline for disclosure of Defendants' specific causation experts. Should Sanofi attempt to incorporate general causation opinions into those specific causation reports, Ms. Kahn reserves her right to address those (untimely) general causation opinions then.
[2] Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment on Affirmative Defenses Concerning Alternative Causes at ¶1.
[3] *Id.* at ¶2.
[4] *Id.*

1

combined with the non-cytotoxic administration of Avastin (bevacizumab) intravenously for four cycles along with the oral use of Xeloda (capecitabine).[5] Phase two, involved cytotoxic chemotherapy with Adriamycin and cyclophosphamide for four cycles in addition to two more cycles of non-cytotoxic Avastin.[6] Cytotoxic chemotherapies, such as Taxotere, Adriamycin and cyclophosphamide are associated with hair loss and at a minimum temporary hair loss is anticipated from their use.[7] After completion of phases one and two, Ms. Kahn underwent a surgical lumpectomy and radiation treatment.[8] Following her lumpectomy and radiation treatments, she entered her final and third phase of treatment with non-cytotoxic therapy with the administration of Avastin for ten cycles.[9] Avastin is not a cytotoxic form of chemotherapy, but rather an angiogenesis inhibitor which is not associated with temporary and/or permanent hair loss.[10]

Ms. Kahn's hair failed to fully regrow following cytotoxic chemotherapy with Taxotere.[11] At the time that Ms. Kahn underwent treatment, Taxol was one of various other viable chemotherapy treatment options without the increased risk of permanent hair loss.[12] Her treating oncologist testified that Taxotere and Taxol are equivalent in efficacy and he would recommend treatment with Taxol, or other regimens including, but not limited to, Adriamycin and Cyclophosphamide if a patient did not wish to undergo treatment with Taxotere due to the risk of permanent hair loss.[13]

Sanofi pled eleven (11) affirmative defenses concerning causation in their Master Answer:

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶3
[8] *Id.* at ¶4.
[9] *Id.* at ¶2.
[10] *Id.* at ¶5.
[11] *Id.* at ¶6.
[12] *Id.* at ¶7.
[13] *Id.* at ¶8.

### FIFTEENTH AFFIRMATIVE DEFENSE

The injuries and/or damages allegedly sustained by Plaintiffs were caused or contributed to be caused by third parties for whom Sanofi Defendants are not responsible and whom Sanofi Defendants have no right to control.

### SIXTEENTH AFFIRMATIVE DEFENSE

Pursuant to state and other applicable federal and local rules and case law, if Plaintiffs suffered or sustained the loss, damage, injury, harm, expense, diminution, or deprivation alleged, which Sanofi Defendants deny, the same was caused in whole or in part or was contributed to by the negligence of Plaintiffs.

### NINETEENTH AFFIRMATIVE DEFENSE

The alleged injuries and damages of which Plaintiffs complain were not caused by any docetaxel product manufactured, sold, or distributed by Sanofi Defendants or any actions of Sanofi Defendants of any kind, but were caused by some other product, process, occurrence, event, service, and/or person over which Sanofi Defendants exercised no control or right of control.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Sanofi Defendants are liable only for damages found by the trier of fact equal to their percentage of responsibility, if any. Pursuant to Louisiana Civil Code article 2323, and any similar provisions under any applicable state law deemed to apply to the individual Plaintiffs' claims, if a person suffers injury, death, or loss as the result partly of her own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. Furthermore, liability for damages caused by two or more persons shall be a joint and divisible obligation. *See, e.g.*, La. C.C. art. 2324. Furthermore, Sanofi Defendants contend that they shall not be solely liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute, or otherwise. *See, e.g.*, *id.*

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Sanofi Defendants are barred as Plaintiffs' alleged injuries and/or damages, if any, were proximately caused by intervening and/or superseding events (including acts and/or omissions) attributable to persons, firms, or corporations other than Sanofi Defendants, and any action or omission on the part of Sanofi Defendants was not the proximate cause of the alleged injuries and/or damages.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Upon information and belief, there exists no proximate causation between any alleged act, omission, breach of duty, or breach of warranty (none being admitted) by Sanofi Defendants and Plaintiffs' alleged damages, injuries, and/or losses, and all of Plaintiffs' alleged damages, injuries, and/or losses, if any, were the result of conduct by persons other than Sanofi Defendants.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Upon information and belief, the injuries, damages and/or losses sustained by Plaintiffs, if any, were directly or proximately caused by and contributed to by Plaintiffs' own negligence and comparative fault, and therefore any recovery should be diminished, reduced, offset, or barred in accordance with the principles of comparative fault and/or contributory negligence.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged injuries and/or damages, if any, were caused by an idiosyncratic reaction, without any negligence, failure, or fault on the part of Sanofi Defendants or any defect attributable to Taxotere® and/or docetaxel.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

If any loss, damage, injury, harm, expense, diminution, or deprivation alleged by Plaintiffs were caused by any product manufactured or distributed by Sanofi Defendants, which Sanofi Defendants deny, the actions or omissions of other persons and the independent knowledge and awareness of such other persons of the risks inherent in the use of such products and other independent causes, such as idiosyncratic reactions, pre-existing or co-existing medical conditions, constitute intervening and/or superseding

4

causes between Plaintiffs' alleged injuries and any alleged acts, conduct, or omissions of Sanofi Defendants.

### NINETIETH AFFIRMATIVE DEFENSE

The injuries or damages sustained by Plaintiffs, if any, can be attributed to several causes, and accordingly, should be apportioned among the various causes according to the respective contribution of each such cause to the harm sustained.

### NINETY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' causes of action are barred, in whole or in part, and the recoverable damages, if any, should be apportioned or diminished, because the fault, negligence and culpable conduct of parties or non-parties over whom Sanofi Defendants have no control and no responsibility caused or contributed to the injuries and damages allegedly sustained.[14]

In essence, Sanofi denies that Taxotere caused Ms. Kahn's permanent hair loss and contends that other individuals and/or causes are responsible for her injuries. But Sanofi has not identified or presented any expert proof to support their affirmative defenses concerning alternative causes. As such, the Court should grant summary judgment in favor of Plaintiff on the issue of alternative causes of Plaintiff's permanent hair loss.

## II.   LAW AND ARGUMENT

### A.   Summary judgment standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists only "if the evidence is such that a

---

[14] *Id.* at ¶9.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. *See Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

**B.     There is no genuine issue of material fact as to whether any cause, other than Taxotere, caused Plaintiff's harm.**

Sanofi bears the burden of proving their affirmative defenses concerning alternative causes. While Plaintiff has put forward a wealth of evidence to support that Taxotere causes permanent chemotherapy-induced alopecia ("PCIA"), Sanofi have failed to offer any expert proof that an alternative cause is capable of causing permanent or irreversible alopecia. Specifically, none of Defendants' experts analyzed whether another drug or condition is causally related to permanent or irreversible alopecia.

6

1. **Dr. Wei**

Dr. Lee-Jen Wei, Defendants' biostatistics expert, did not offer an opinion on potential alternative causes of permanent hair loss in his expert report. Dr. Wei confirmed in his deposition that he has not researched nor been provided information on any drug that would allow him to opine that the drug may cause PCIA.[15] Dr. Wei testified that he has not provided an opinion nor reviewed any material that would give him a proper scientific basis to offer an opinion that a drug prescribed to Ms. Kahn other than Taxotere may cause PCIA, including Adriamycin, Cyclophosphamide, Xeloda, and Avastin.[16] Dr. Wei further testified that he has not provided an opinion nor reviewed any material that would give him a proper scientific basis to offer an opinion that any other drugs may cause permanent hair loss, including, tamoxifen, Taxol (paclitaxel), 5FU (5-fluorourcil), epirubicin, methotrexate, and Gemzar.[17]

2. **Dr. Miletello**

Sanofi's expert, Dr. Gerald Miletello, a practicing oncologist, was asked to analyze four specific research questions: (1) opinions on patient counseling, (2) opinions on patient treatment options, (3) opinions on prescribing decision for Elizabeth Kahn, and (4) opinions as to Plaintiff's expert reports regarding chemotherapy and breast cancer.[18] A causation analysis, including alternative causes of permanent hair loss, was not one of the items designated in his expert report. In fact, Dr. Miletello has admitted during the course of each of his three depositions in this matter that he is not prepared to offer an opinion as to causal association between any drug and permanent hair loss.[19]

---

[15] *Id.* at ¶10.
[16] *Id.* at ¶10.
[17] *Id.* at ¶10.
[18] *Id.* at ¶11.
[19] *Id.* at ¶12.

7

Nevertheless, Dr. Miletello speculates that the type of alopecia that Ms. Kahn suffers from could be caused by hormone therapy drugs such as tamoxifen, age-related hair loss, and/or a wide array of chemotherapy drugs.[20] Specifically, Dr. Miletello opines within his report that (1) chemotherapy can alter a woman's hormonal status, resulting in age-related hair loss; (2) "cases of delayed hair regrowth or incomplete hair regrowth have been reported with many chemotherapy drugs including Adriamycin, Carboplatin, Cisplatin, Taxol, Epirubicin, 5-Fluorouracil, Melphalan, Gemcitabine, Capecitabine, Busulfan, CMF, and Cyclophosphamide"; and (3) endocrine based therapies such as tamoxifen "may be responsible for a woman's hair not growing."[21] However, when pressed on this statement, Dr. Miletello confesses that his opinion is limited only to those drugs he believes he has observed delayed hair re-growth with: Taxol, 5FU (5-fluorouracil), and Adriamycin.[22]

His report cites to no scientific literature in support of his opinions on alternative causes.[23] When asked "…nowhere in your report do you actually offer an opinion on causation, causation, between any drug and permanent, irreversible hair loss," Dr. Miletello unequivocally responds that he does not.[24] This testimony is consistent with Dr. Miletello's statement that he does not offer an opinion on causal association nor does he cite to any clinical trials which support a causal association between permanent hair loss and the use of drugs, including but not limited to, Adriamycin, paclitaxel (Taxol), epirubicin, 5-Fliorouacil (5FU), cyclophosphamide, Gemzar, methotrexate, or tamoxifen, Xeloda, and Avastin.[25] Likewise, Dr. Miletello has undertaken no scientific methodology to assess whether other medical conditions Ms. Kahn may have, such as a

---

[20] *Id.* at ¶13.
[21] *Id.*
[22] *Id.* at ¶14.
[23] *Id.* at ¶13.
[24] *Id.* at ¶12.
[25] *Id.*

8

purported Vitamin D deficiency, high blood pressure, or high cholesterol, may cause hair loss and he admits he does not intend to offer such an opinion at trial.[26] Dr. Miletello's opinions on potential causes of permanent hair loss are purely based on his subjective clinical experiences and clearly do not rise to the level of proof required to support Sanofi's affirmative defenses on on alternative causes.

### 3. Dr. Glaspy

Dr. Glaspy, a practicing oncologist, states in his report that he was asked to formulate opinions regarding (1) the development, use, efficacy, and side effects of drugs used to treat women with breast cancer and (2) to assess the treatment of Ms. Kahn.[27] A causation analysis was not one of the items laid out. Yet, Dr. Glaspy boldly states that he will "offer opinions regarding types of alopecia and causes of alopecia."[28] Specifically, he opines that (1) androgenetic alopecia is the most common form of alopecia in women, (2) alopecia can be caused by various medical conditions, (3) tamoxifen use can result in persistent alopecia, and (4) permanent/persistent alopecia can be caused and/or has been seen following chemotherapy with approximately fifteen commonly used chemotherapy drugs, including: Adriamycin, Carboplatin, CMF, Cisplatin, Taxol, Epirubicin, Etoposide, 5-Flurouracil (5-FU), Bulsulfan, Gemcitabine, Idarubicin, Ifosfamide, Melpholan, Thiotepa, and Cyclophosphamide.[29]

Dr. Glaspy admits that he made no attempt to establish a causal link between any chemotherapy drug, or tamoxifen, and PCIA. The basis for his opinion that tamoxifen and/or aromatase inhibitors cause delayed and/or persistent alopecia is based entirely upon his own

---

[26] *Id.* at ¶15.
[27] *Id.* at ¶20.
[28] *Id.* at ¶16.
[29] *Id.*

9

subjective beliefs.[30] Although he states he believes there is a causal link between tamoxifen and hair loss, he admits that he provides no clinical trial data to demonstrate a causal link, and that the referenced case reports with tamoxifen do not establish causation.[31] Moreover, Dr. Glaspy readily admits there is no established causal association between PCIA and any of the fifteen chemotherapy drugs he lists in his report.[32] In fact, he cannot articulate what, if any, incidence rate exists for any drug causing PCIA.[33] Despite these admissions, Dr. Glaspy offers the opinion within his report that numerous chemotherapies can cause PCIA based solely on his subjective experience.[34]

Indeed, Dr. Glaspy readily admits, when confronted, that he has not applied any methodology by way of literature search, review of randomized clinical trial data, and/or the application of the Bradford Hill criteria or other causation analysis to investigate the relationship between any drug and PCIA.[35] This lack of effort, to explore the potential for a causal link between any chemotherapy drug and PCIA, extends to those drugs which Ms. Kahn received in addition to Taxotere as well as other commonly used early stage breast cancer chemotherapy drugs. When asked whether he implemented any methodology to determine if there is a causal association between Adriamycin, Cyclophosphamide and/or Avastin with PCIA, Dr. Glaspy admitted he did not undertake any method to address causation.[36]

It comes as no surprise, that Dr. Glaspy then failed to utilize any methodology or application of Bradford Hill criteria to investigate whether any of the other drugs he listed in his report have a causal relationship with PCIA. Dr. Glaspy admits that he did not employ any

---

[30] *Id.* at ¶17.
[31] *Id.*
[32] *Id.* at ¶18.
[33] *Id.* at ¶19.
[34] *Id.* at ¶16.
[35] *Id.* at ¶21.
[36] *Id.* at ¶22.
10

methodology by way of literature search, review of randomized clinical trial data, and/or the application of the Bradford Hill criteria to investigate the relationship between PCIA and Xeloda, Tamoxifen, Taxol (paclitaxel), 5-FU, epirubicin, methotrexate, Gemzar, or any other chemotherapy drugs.[37] Given that Dr. Glaspy has employed no methodology to assess whether a causal relationship exists between any of the fifteen drugs he cites and PCIA, and his only support for such a contention is premised exclusive upon his own speculative observations, his opinion that any chemotherapy can cause PCIA and/or persistent hair loss cannot support Sanofi's affirmative defenses concerning alternative causation.

    4.    **Dr. Chang**

Sanofi's epidemiologist, Dr. Ellen Chang, has not performed an analysis on alternative causes of permanent hair loss. Her expert report states: "I did not directly assess whether a causal relationship has been established between use of any other specific chemotherapeutic agent and irreversible or permanent alopecia. I also did not directly investigate the incidence of irreversible or permanent alopecia among breast cancer patients using chemotherapeutic agents other than docetaxel."[38] Dr. Chang further testified that in order to offer an expert opinion on whether alternative drugs cause permanent hair loss, she would need to complete a systematic literature search to assess causality.[39] Despite her testimony, Dr. Chang did not complete a systematic literature search to assess a causal relationship between any alternative drugs and permanent hair loss. Dr. Chang confirmed her deposition that she has not performed a systematic literature review to determine whether Adriamycin, cyclophosphamide, Xeloda, Avastin, tamoxifen, Taxol, 5-Fluoroucil, epirubicen, methotrexate, or Gezmar causes permanent hair loss.[40]

---

[37] *Id.* at ¶23.
[38] *Id.* at ¶24.
[39] *Id.* at ¶25.
[40] *Id.* at ¶26.

In her expert report, Dr. Chang opines that "[a] broad range of medications are known to cause alopecia, primarily in the form of telogen effluvium or anagen effluvium."[41] But when questioned about her opinion, Dr. Chang admitted that she has not performed a systematic literature review to determine whether any of the drugs listed in her expert report are causally related to permanent hair loss: "I agree that I have not done a systematic literature review on any of these drugs except for docetaxel with respect to permanent or irreversible alopecia."[42]

While Dr. Chang explained that the drugs listed in her expert report are causally linked to temporary or reversible alopecia, she makes the erroneous assumption that any drug that may cause temporary or reversible alopecia can also cause permanent and irreversible alopecia through the same biological mechanism of action.[43] Dr. Chang does not perform mechanistic studies.[44] Neither is qualified to offer expert opinions involving toxicology or pharmacology.[45] Yet, with modifiers such as "without having done the studies" and "not being a toxicologist," Dr. Chang testified she generally understands that it would biologically plausible for a drug to cause both temporary and permanent hair loss: "I don't see why it couldn't also do that for a longer period of time. Biologically it seems plausible."[46] Clearly, Dr. Chang is reaching outside her field of expertise. Indeed, she agreed that she does not intend to offer opinions about the mechanism of action and histopathology of alopecia.[47] As such, Dr. Chang cannot support Sanofi's affirmative defenses concerning alternative causes of permanent hair loss.

---

[41] *Id.* at ¶27.
[42] *Id.* at ¶28.
[43] *Id.* at ¶29.
[44] *Id.* at ¶30.
[45] *Id.* at ¶31.
[46] *Id.* at ¶29.
[47] *Id.* at ¶32.

### 5. Dr. Arrowsmith

Sanofi's regulatory expert, Dr. Janet Arrowsmith, like all of Sanofi's experts, admits that she did not implement any methodology or undertake any causation analysis to assess a potential causal relationship between PCIA and any non-Taxotere drug.[48] And like all of Sanofi's other experts, Dr. Arrowsmith agrees that "cases of permanent alopecia have been reported," or case reports alone, are insufficient to establish causation.[49] And Dr. Arrowsmith admits that she does not intend to offer testimony that valid scientific evidence demonstrates a statistically significant causal association between any chemotherapy drug (or any other drug) and PCIA.[50]

## IV. CONCLUSION

There exists no genuine issue of fact as to whether Sanofi can maintain their defenses concerning alternative causation. For the foregoing reasons, the Court should grant partial summary judgment in Plaintiff's favor on Defendants' affirmative defenses concerning alternative causation.

Dated: August 13, 2020

Respectfully submitted,

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

---

[48] *Id.* at ¶33. Dr. Arrowsmith did not perform a causation analysis to assess PCIA and any potential causal association with Adriamycin, 5-Fluorourosil, cyclophosphamide, epirubicin, paclitaxel/Taxol, Xeloda, Avastin, tamoxifen, or methotrexate.
[49] *Id.* at ¶34.
[50] *Id.* at ¶35.

/s/M. Palmer Lambert
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

/s/Dawn M. Barrios
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com


J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net


Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com


Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com


Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 13, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                        */s/ M. Palmer Lambert*
                                        M. PALMER LAMBERT