# EXHIBIT H

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE TAXOTERE (DOCETAXEL)       )
PRODUCTS LIABILITY LITIGATION    )   MDL NO. 2740
                                 )
THIS DOCUMENT RELATES TO:        )   SECTION: H
                                 )
ANTOINETTE DURDEN,               )
CASE NO. 2:16-cv-16635           )
TANYA FRANCIS,                   )
CASE NO. 2:16-cv-17410;          )
BARBARA EARNEST,                 )
CASE NO. 2:16-cv-17144           )
                                 )
_____)

VIDEOTAPED DEPOSITION OF ELLEN FEIGEL, M.D.
FRIDAY, DECEMBER 7, 2018

JOB NO. 3151489

REPORTED BY STEPHANIE J. COHEN,
CSR NO. 7920

Job No. NJ3151489

1  A  Yes.
2  Q  You would agree with me none of those
3  conclusions pertain to opinions with respect to
4  compliance with FDA regulatory requirements?
5  A  What I'm saying, I think some of the
6  opinions or conclusions, as they're called, are
7  relevant to the responsibilities of companies.  If
8  you want to -- call it what you will.  I'm just
9  saying I have experience in product development.
10  Q  What does it mean to say that you are not
11  offering regulatory opinions about FDA requirements?
12  What does that mean?
13  A  I'm not offering formal -- what that means
14  is I'm not going to offer opinions about what the
15  company knew and when they knew it and I am not
16  offering opinions on what should be in their label.
17  Q  Okay.  You are not offering an opinion with
18  respect to adequacy of the Taxotere label.  Is that
19  true?
20  A  I would -- may I rephrase your question so
21  I can answer it.
22  Q  You can answer it "yes" or "no."
23  A  Well, I can't really.
24     Can I tell you what I'm thinking?
25  Q  Sure.

1      Q    I understand that piece of it and I have
2   read your report.
3      A    Okay.
4      Q    I am not suggesting that you are not
5   allowed to use the word prescribing information.
6   That term appears in your report.  Okay.
7           Are you offering an opinion in this
8   litigation that the Taxotere prescribing
9   information, the label, is inadequate?
10          MR. THORNTON:  Objection; form.
11          THE WITNESS:  I am stating that physicians
12  didn't know about the risk of permanent chemotherapy
13  induced alopecia from Taxotere and would be happy to
14  provide my opinion that one of the key pieces of
15  information they look at is the prescribing
16  information, and if it's not there, then, yes, I
17  might conclude it's inadequate.
18  BY MR. KAUFMAN:
19     Q    I am interested in the opinions that you
20  are offering within the scope of your report that
21  you provided.
22     A    I understand that.
23     Q    Where in your report -- can you point me to
24  it?  Do you say that the Taxotere prescribing
25  information is inadequate?

1    A    That exact sentence, I don't have that
2   exact sentence.
3    Q    That opinion does not exist in your report,
4   correct?
5    A    What I was agreeing to is that exact
6   sentence doesn't exist in my report.
7    Q    Would you agree with me that the content
8   of -- strike that.
9         Would you agree with me that your report
10  does not contain any discussion about the content of
11  any Taxotere prescribing information label?
12       MR. THORNTON:  Objection; form.
13       THE WITNESS:  I'm just trying to tell you
14  that I feel that I should be able to comment that
15  since physicians get information from prescribing
16  information, if the prescribing information does not
17  have that type of safety information, then they
18  can't have an informed discussion with their
19  patient.
20       So take it as I said it.  I don't know how
21  else to respond.
22  BY MR. KAUFMAN:
23   Q    Are you offering an opinion that Sanofi did
24  not comply with FDA requirements governing
25  prescribing information?

Page 102

1         MR. THORNTON:  Objection; form.
2         THE WITNESS:  Let me approach it a
3    different way rather than regulatory.
4         I think there's an ethical responsibility.
5    If you -- if the company is aware of side effects to
6    communicate that so each -- regardless of regulatory
7    issues, there's ethical responsibilities to do that
8    because part of having an informed discussion
9    between physicians and patients is to have the full
10   balanced information about benefits and potential
11   risk.
12   BY MR. KAUFMAN:
13       Q    Are you offering an opinion that Sanofi
14   violated federal regulations with respect to the
15   Taxotere prescribing information?
16       A    Oh, I am not offering that opinion, no.
17       Q    Are you offering -- strike that.
18            You are not offering opinion regarding
19   Sanofi's compliance with FDA regulations or
20   requirements with respect to Taxotere.
21            Fair?
22            MR. THORNTON:  Objection; form.
23            Could you please reread the question.  We
24   are getting technical here.
25            MR. KAUFMAN:  I don't think it's that hard.

1  BY MR. KAUFMAN:
2      Q    That answers a prior question.
3      A    Well, good.
4      Q    So we are making more progress.
5      A    Good.
6      Q    So the record is clean, you are not
7  opining -- strike that.
8           You do not intend to opine as to adequacy
9  of any Taxotere label; is that correct?
10     A    I will not opine on adequacy of the
11 Taxotere label.
12     Q    In terms of Sanofi's obligations to
13 communicate to doctors, where can Sanofi go to
14 identify those obligations to make sure it complies?
15 What's the source?
16          MR. THORNTON:  Objection; form.
17          THE WITNESS:  The problem -- I am going to
18 get back to the problem.  My issue is communication
19 of risk is something -- is a responsibility of the
20 company.
21          Are you saying because it's all -- it's
22 only an FDA requirement and there are no other
23 expectations outside the FDA?  I mean, that's what
24 I'm having difficulty saying.
25          A company has their own ethical principles

1  that don't necessarily -- there are legal
2  requirements, but then there are ethics and
3  principles that companies have about sharing
4  information with physicians and with patients.
5       So I'm not here -- as I said, I will not
6  opine on the specifics of inadequacy of a label, but
7  I do have an opinion about whether or not
8  communication of relevant information to physicians
9  was done.
10 BY MR. KAUFMAN:
11    Q    And as long as you don't consider that a
12 regulatory opinion, I think we can be in agreement.
13      Would you agree that's your personal
14 opinion?
15      MR. THORNTON:  Objection; form.
16      THE WITNESS:  That is my opinion based on
17 my years of experience in clinical medicine and
18 oncology and in product development and having
19 worked inside companies.
20      So I have worked with them so I know what
21 these issues are, but so it's based on -- yes, my
22 personal universe of experiences have helped inform
23 my opinion on that.
24 BY MR. KAUFMAN:
25    Q    When you are in that role based on that