**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                      SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Brenda Mixon, No. 18-6581.

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF BRENDA MIXON**
**AND ENTRY OF ORDER TO SHOW CAUSE**

---

The Michigan Product Liability Act ("MPLA") bars all of MDL Plaintiff Brenda Mixon's claims.  The MPLA provides a "complete defense" in a product-liability action involving a prescription drug where, as here, the Food and Drug Administration ("FDA") approved the drug for safety and efficacy, and the drug administered carried an FDA-approved label when it left the manufacturer's control.  Mich. Comp. Laws Ann. § 600.2946(5).  There is no dispute those statutory requirements are met in Ms. Mixon's case.

There is also no dispute that the MPLA's three narrow exceptions do not apply here.  FDA has never revoked Taxotere's approval or ordered its withdrawal.  Sanofi has never bribed an FDA official to gain approval for Taxotere.  And FDA has never found that Sanofi gained approval for Taxotere through fraud.  Because the MPLA forecloses Ms. Mixon's claims and no exception applies, the Court should enter summary judgment in Sanofi's favor.

Ms. Mixon is not the only plaintiff whose claims are barred by the MPLA.  In deciding this motion as to Ms. Mixon, the Court should also enter an order requiring similarly situated plaintiffs (*i.e.*, those who were prescribed or administered Taxotere in Michigan) to show cause why the MPLA does not bar their claims.

**LEGAL STANDARD**

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

**CHOICE OF LAW**

This Court treats cases filed directly in this MDL "as if they were transferred from a judicial district sitting in the state where the case originated." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2020 WL 3487594, at *2 (E.D. La. June 1, 2020) (quoting *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017)); *id.* at *2 n.12 ("[Direct filing] will have no impact on choice of law that otherwise would apply to an individual case had it been originally filed in another district court and transferred to this Court pursuant to 28 U.S.C. § 1407.") (quoting PTO No. 4). "Accordingly, the law that applies in each case will be the law of the state where the case originated, which is the state where a Plaintiff was prescribed or administered her Taxotere treatment." *Id.* at *2 (citations omitted).

Michigan choice-of-law rules apply to Ms. Mixon's claims because Ms. Mixon was prescribed and administered Taxotere in Michigan. DSOF ¶¶ 5–6. "Generally speaking, a tort claim filed in a Michigan court will be governed by Michigan law unless a rational reason exists to displace it." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) (quoting *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001)) (internal quotation marks omitted); *accord Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich.

1997).  Here, no rational reason exists to displace Michigan law; so, the MPLA applies to Ms.

Mixon's claims.[1]

## ARGUMENT

### I.   THE MPLA BARS MS. MIXON'S CLAIMS.

The MPLA applies broadly to any "product liability action" and provides:

> [A] drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable, if
>
> the drug was approved for safety and efficacy by the United States food and drug administration, and
>
> the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.

Mich. Comp. Laws Ann. § 600.2946(5).  In adopting this statute, "the [Michigan] Legislature has

determined that a drug manufacturer or seller that has properly obtained FDA approval of a drug

product has acted sufficiently prudently so that *no tort liability may lie*." *Taylor v. SmithKline*

*Beecham Corp.*, 658 N.W.2d 127, 131 (Mich. 2003) (emphasis added).

The MPLA applies to all of Ms. Mixon's claims.[2]  The MPLA defines "product liability

action" as an action "based on a legal or equitable theory of liability brought for the death of a

person or for the injury to a person or damage to property caused by or resulting from the

production of a product."  Mich. Comp. Laws Ann. § 600.2945(h).  "Production" means, among

other things, "warning, instructing, marketing selling, advertising, packaging, or labeling."  *Id.* §

600.2945(i).  Because Ms. Mixon premises each claim on alleged personal injuries from Sanofi's

---

[1]   When Michigan law applies, MDL and mass action courts have entered summary judgment orders against similar plaintiffs.  *See generally In re Depakote*, No. 12-cv-52, 2017 WL 4348052 (S.D. Ill. Sept. 28, 2017); *In re Aredia & Zometa Prods. Liab. Litig.*, No. 06-md-1760, 2008 WL 913087 (M.D. Tenn. Apr. 2, 2008), *aff'd*, 352 F. App'x 994 (6th Cir. 2009); *In re Risperdal Litig.*, 175 A.3d 1023 (Pa. Super. Ct. 2017).

[2]   Ms. Mixon asserts six claims: (1) strict liability—failure to warn; (2) negligence; (3) negligent misrepresentation; (4) fraudulent misrepresentation; (5) fraudulent concealment; and (6) fraud and deceit.  DSOF ¶ 3.

"production" of Taxotere, each claim falls within the MPLA. *Trees v. Pfizer, Inc.*, No. 338297, 2018 WL 6710594, at *1 (Mich. Ct. App. Dec. 20, 2018) ("product liability action" encompassed the plaintiff's claims for negligence, negligent misrepresentation, failure to warn, fraud and misrepresentation, and constructive fraud), *appeal denied*, 933 N.W.2d 305 (Mich. 2019); *White v. SmithKline Beecham Corp.*, 538 F. Supp. 2d 1023, 1027 (W.D. Mich. 2008) (MPLA applies "when the plaintiff alleges fault in the standards, testing, warning, instruction, marketing, selling, advertising or labeling of the drug").

The MPLA's two substantive requirements also are met: (1) FDA approved the safety and efficacy of Taxotere; and (2) Taxotere was labeled as approved by FDA when it left Sanofi's control.[3]  In 1996, FDA approved Taxotere and its label for the treatment of cancer patients in the United States.  DSOF ¶ 7.  And, in 2004, FDA approved Taxotere and its label for the adjuvant treatment of patients with node-positive breast cancer.  *Id.* ¶¶ 9–10.  Since then, FDA has continued to review and approve supplemental applications for Taxotere and its label, including when Ms. Mixon received Taxotere in 2008.  *See id.* ¶¶ 7–14.[4]  Ms. Mixon cannot controvert these dispositive facts, and Sanofi is entitled to the "absolute defense" for drug manufacturers under Michigan law. *Taylor*, 658 N.W.2d at 131.

---

[3]  A drug is "labeled in compliance with FDA standards" when FDA approved the drug label that a plaintiff received. *Taylor*, 658 N.W.2d at 130 n.2; *Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 347 n.5 (Mich. Ct. App. 2011).

[4]  Allegations of a manufacturer's noncompliance with FDA postmarketing reporting requirements do not affect the immunity analysis.  *See, e.g.*, Pls.' Second Am. Master Compl. ¶ 172.  "Such allegations do not fit comfortably within the statutory language requiring compliance for immunity to apply."  *Marsh v. Genentech, Inc.*, 693 F.3d 546, 552 (6th Cir. 2012).  Instead, failure to adhere to postmarketing reporting requirements is an allegation of "procedural non-compliance" with FDA regulations; it is not an allegation that the drug failed to comply substantively with FDA approval.  *Id.* at 552–53; *Trees*, 2018 WL 6710594, at *4 (finding *Marsh* persuasive). Ms. Mixon does not allege substantive non-compliance—*e.g.*, that she adulterated Taxotere or that the label on the Taxotere she received did not comply with the FDA-approved label.  *Marsh*, 693 F.3d at 553.

4

## II.    NO EXCEPTION UNDER THE MPLA SAVES MS. MIXON'S CLAIMS.

Ms. Mixon has no evidence to create a triable issue on any of the MPLA's three narrow exceptions, which apply only when:

> (1) the drug is sold after FDA orders the drug removed from the market or FDA withdraws its approval;
>
> (2) the manufacturer makes an illegal payment to an FDA official or employee to secure or maintain approval of the drug; or
>
> (3) the manufacturer intentionally withholds from or misrepresents information to FDA and the drug would not have been approved.

Mich. Comp. Laws Ann. § 600.2946(5)(a)–(b).  Ms. Mixon does not allege that the first two exceptions apply, and no evidence supports such allegations.

The third exception—fraud-on-the-FDA—does not apply because federal law preempts it.[5] Six years after the Michigan Legislature amended its product liability statute to provide immunity to drug manufacturers, the United State Supreme Court held that state common-law tort claims for fraud-on-the-FDA are impliedly preempted.  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001).  In *Buckman*, the plaintiff asserted that the manufacturer of orthopedic bone screws had made fraudulent representations to FDA during the approval process to market the screws.  *Id.*  According to the plaintiff, had the manufacturer not made these representations, FDA would not have approved the bone screws.  *Id.*  The Court reasoned that federal law preempted the plaintiff's state law fraud-on-the-FDA claim because the federal statutory scheme "amply empowers the FDA to punish and deter fraud against the Administration."  *Id.* at 348.

Applying *Buckman*, the Sixth Circuit then held that federal law impliedly preempted the MPLA's fraud-on-the-FDA exception.  *Marsh*, 693 F.3d at 551 ("[S]uits against drug

---

[5]    Ms. Mixon does allege that Sanofi withheld information from FDA both during and after the drug application process for Taxotere.  *See, e.g.*, Pls.' Second Am. Master Compl. ¶ 4 (alleging that Defendants failed to report the risk of permanent hair loss to FDA), ¶ 11 (alleging that Defendants misrepresented Taxotere's side effects to FDA).

manufacturers under Michigan law in which the plaintiff seeks to defeat immunity by invoking the Act's fraud exceptions are equivalent to fraud-on-the-FDA claims and are thus preempted." (citing *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965–66 (6th Cir. 2004))).  The Fifth Circuit is in accord.  *See Lofton v McNeil Consumer & Specialty Pharms.*, 672 F.3d 372, 380 (5th Cir. 2012) (following *Garcia* to hold that *Buckman* preempted fraud-on-the-FDA exception under Texas's drug product liability statute).

The fraud-on-the-FDA exception is not preempted (and thus available) in only one instance—when FDA *itself* determines that fraud marred the regulatory approval process.  *Garcia*, 385 F.3d at 966 (concluding that a state may incorporate a federal standard into its tort law); *Cotton v. Johnson & Johnson*, No. 16-2770, 2017 WL 4857552, at *2 (6th Cir. Sept. 22, 2017) (exception applies "only if the FDA makes a formal finding of fraud"); *White*, 538 F. Supp. 2d at 1028–29 ("[W]here a plaintiff presents evidence of federal findings of bribery or fraud on the FDA, the exceptions are not unconstitutional, but where a plaintiff . . . merely alleges bribery or fraud on the FDA but offers no federal findings, the exceptions are unconstitutional."); *see also Lofton*, 672 F.3d at 380 (fraud-on-the-FDA exception to Texas's drug product-liability statute preempted unless "the FDA itself has found fraud").

Ms. Mixon cannot invoke the fraud-on-the-FDA exception here because FDA *itself* has not found fraud in the approval process for Taxotere.  *See Zammit v. Shire US, Inc.*, 415 F. Supp. 2d 760, 768 (E.D. Mich. 2006) (*Garcia* prevents courts "from embarking upon any independent inquiry into any purported deficiencies or fraud in Defendant's submissions to the FDA").  Without this evidence, Sanofi is entitled to summary judgment.  *Id.*; *In re Baycol Prods. Litig.*, No. 04-3667, 2009 WL 7836091, at *4 (D. Minn. Feb. 13, 2009) (granting summary judgment when the plaintiff failed to "put forth evidence that the FDA, has, in fact, determined that Defendants

committed fraud against it[.]"); *Ammend v. BioPort, Inc.*, No. 03-cv-254, 2006 WL 1050509, at *3 (W.D. Mich. Apr. 19, 2006) (same).[6]

In sum, none of the MPLA's three exceptions apply.

## III.   THE COURT SHOULD DIRECT THE REMAINING MICHIGAN PLAINTIFFS TO SHOW CAUSE WHY THE MPLA DOES NOT BAR THEIR CLAIMS.

The MPLA applies with equal force to the remaining MDL plaintiffs who were prescribed or received Taxotere in Michigan.  And where an MDL court enters a dispositive order in one case that would apply with equal force to other MDL plaintiffs, the Court is well within its discretion to establish a show-cause process.  *See In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 363 (S.D.N.Y. 2014) (dismissing all but a plaintiff's fraud claim as time-barred); Order No. 22A, *In re Mirena IUD Prods. Liab. Litig.*, 13-md-2434 (S.D.N.Y. Aug. 7, 2014) (entering show cause order "regarding the potential applicability of the [earlier] opinion to other actions in this MDL").[7] This Court should establish such a show-cause process here.

## <u>CONCLUSION</u>

Sanofi is entitled to an "absolute defense" under the MPLA.  FDA has approved Taxotere for safety and efficacy, and Taxotere has always carried an FDA-approved label.  Because no exception to the MPLA applies, the Court should enter summary judgment in Sanofi's favor on

---

[6]   Even if FDA finds fraud, which it has not done here, the MPLA would still bar Ms. Mixon's claims.  The fraud-on-the-FDA exception requires both that the manufacturer withholds or misrepresents information to FDA *and* FDA would not have approved or would have withdrawn the drug if the information were accurately submitted. Mich. Comp. Laws Ann. § 600.2946(5)(a).  Neither Ms. Mixon nor any other Michigan plaintiff alleges FDA would not have approved or withdrawn Taxotere.  *See generally* Rec. Doc. 4407 (Pls.' Second Am. Master Compl.); *see also* Rec. Doc. 7571 at 25 (Order and Reasons on Six Motions for Summary Judgment) ("Plaintiffs took Taxotere to increase their chances of survival.  Given that Plaintiffs are alive today, Taxotere worked and was far from being useless.").

[7]   The show cause order from *In re Mirena* is attached as Exhibit 28.  *See also In re Mirena IUD Prods. Liab. Litig.*, No. 13-cv-3383, 2015 WL 144214, at *1 (S.D.N.Y. Jan. 9, 2015) ("Under CMO 22A, Defendants are permitted to submit a letter explaining why each case should be dismissed consistent with this Court's opinion in [*Truitt*] . . . . Each Plaintiff against whom Defendants so move must then either voluntarily dismiss her case with prejudice or set forth the specific facts and/or law that distinguish her case from Ms. Truitt's."), *aff'd sub nom. Medinger v. Bayer Healthcare Pharm. Inc.*, 667 F. App'x 321 (2d Cir. 2016).

Ms. Mixon's claims and direct the remaining Michigan plaintiffs to show cause why the MPLA does not bar their claims.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART &
MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
abyard@shb.com
kbieri@shb.com

***Counsel for sanofi-aventis U.S. LLC and
Sanofi U.S. Services Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*