UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br>*Lula Gavin, Case No. 2:18-cv-11232*<br>*Clare Guilbault, Case No. 2:16-cv-17061*<br>*Debbie Hubbard, Case No. 2:18-cv-10283*<br>*Audrey Plaisance, Case No. 2:18-cv-08068* | MDL No. 2740<br><br>SECTION: H<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAG. JUDGE NORTH |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AMENDED SHORT FORM COMPLAINTS OF BELLWETHER POOL PLAINTIFFS FOR TRIAL FIVE**

Plaintiffs, through the Plaintiffs' Steering Committee, respectfully submit this Reply Memorandum in Support of their Motion for Leave to File Amended Short Form Complaints of Bellwether Pool Plaintiffs for Trial Five and submit the following:

Hospira raises three objections to Plaintiffs' proposed Short Form Complaint ("SFC") amendments: (1) the amendments attempt to revise the definition of the alleged injuries, (2) the amendments include non-cognizable legal claims, and/or (3) the amendments are non-particularized and not permitted by PTO 105.

### I. The Proposed Amendments Are Not Contrary to the Alleged Injury Definition in the Master Complaint

Hospira objects to Ms. Hubbard's proposed SFC, paragraph 12, because it is allegedly contrary to the definition in the Master Complaint.[1] Paragraph 12 of the SFC asks the following:

---

[1] Hospira also alleges that this paragraph is contrary to her PFS. However, this is not a reason to deny an amendment. In this MDL, PFSs are often amended to add newly learned and recalled information and to correct responses to ambiguous or incomplete questions. To the extent any alleged contradiction remains, Hospira will have the opportunity to question Ms. Hubbard during her deposition on such allegations or PFS responses.

1

> Nature and extent of alleged injury (including duration, **approximate date of onset (if known)**, and description of alleged injury):

*See* SFC, at ¶ 12 (emphasis added). Hospira argues the Master Complaint definitively alleges that every MDL plaintiff's injury manifested at exactly six (6) months after their particular chemotherapy treatment ends, even though the single definition in the Master Complaint says nothing about manifestation in any particular plaintiff. However, that is not how Ms. Hubbard reads or understands the allegations in the Master Complaint or paragraph 12 of the SFC. The common definitional allegation in the Master Complaint of a medical condition can reasonably be read in at least two lights, including a light favorable to Ms. Hubbard, *i.e.*, not as an individualized allegation of *manifestation* in any particular plaintiff but rather as an accepted, hindsight medical *condition* advanced by counsel in an administrative master complaint that Sanofi's own expert Dr. Ellen Chang confirms can vary in terms of onset. If the date of onset of permanent alopecia for every plaintiff in this MDL is definitively six (6) months after her last date of Taxotere use, there would be no need to ask the "approximate date of onset (if known)" in the SFC.[2] Hospira's argument would re-write the SFC to remove language, and is fatally flawed.

The approximate date of onset should be pled with specificity if a plaintiff <u>definitively</u> knows the (approximate) date of onset. Ms. Hubbard, like many others, does not definitively know the date of onset of her permanent hair loss (approximate or otherwise). Instead, Ms. Hubbard's hair fell out during her chemotherapy treatment with docetaxel and then either did not grow back or did not fully grow back. Whether "permanent" inability of certain follicles on her

---

[2] Assuming, *arguendo*, the Master Complaint definitively establishes an uncontradictory fact of manifestation of every Plaintiff's *injury* on a date certain, which is belied by both science and the experts in this MDL, Defendants should be estopped from arguing that there should be a "medical diagnosis order" to diagnose an injury. The interests of justice, fairness and equity dictate that Defendants simply cannot have it both ways.

scalp to regrow hair occurred at 14 months 21 days, 10 months 18 days, or 17 months 5 days after her last chemotherapy treatment cannot be definitively known by Ms. Hubbard at the pleading stage of this litigation nor is it germane to the overall allegations by Ms. Hubbard.

It is at best a stretch for Hospira to assert that Ms. Hubbard, a layperson who completed her chemotherapy treatment in July 2014, should know "the approximate date of onset" of ***permanent*** hair loss at a time before any Defendant changed its label to disclose permanent alopecia as a known side effect.[3] Thus, Ms. Hubbard's allegation of "Permanent, irreversible and disfiguring alopecia beginning sometime after treatment with Taxotere (docetaxel) and continuing to the present" in paragraph 12 is not only an accurate statement consistent with what she understood from her healthcare providers, but it also satisfies the pleading standards of the Federal Rules of Civil Procedure.

Hospira further argues that "[Plaintiff Hubbard's] PFS states that she experienced permanent hair loss by January 2015, six months after she stopped her docetaxel treatment." This is incorrect. Section VI, Question 5 of the PFS reads: "State the injury you allege in this lawsuit and the dates between which you experienced the alleged injury. Check all that apply." *See* Rec. Doc. 10907-3. The majority of the answers state June 2014 "(06/??/14)" as that is the timeframe Plaintiff recalls losing her hair during chemotherapy treatment and such has continued until the present.[4]

The following two questions regarding the degree of hair loss are also part of question 5 (emphasis added):

---

[3] The first defendant to change its label was Sanofi, which did not occur until December 11, 2015.

[4] Six additional questions are answered the same way on the following page, p. 17 of the Sixth Amended PFS.

3

> Significant thinning of the hair on your head **after six (6) months of discontinuing Taxotere® or Docetaxel treatment** – There are visible bald spots on your head no matter how you style your hair
>
> Moderate thinning of the hair on your head **after six (6) months of discontinuing Taxotere® or Docetaxel treatment** – There is noticeable hair loss but if you brush or style your hair, the hair loss is less evident

Since those two questions are form questions that refer to a predetermined time "after six (6) months of discontinuing Taxotere® or Docetaxel treatment," there is no way to answer such questions for any date less than at least six (6) months after a plaintiff's last Taxotere treatment. Since Ms. Hubbard's last Taxotere treatment was in July 2014, Ms. Hubbard responded with January 2015, "(01/??/15)", the first date six (6) months after Ms. Hubbard's last Taxotere treatment, to the present.

Contrary to Hospira's assertion, such a response to form written discovery is in no way alleging Ms. Hubbard experienced permanent hair loss by January 2015 (six months after she stopped her docetaxel treatment). Ms. Hubbard is merely answering the foregoing questions as asked. Nowhere in Ms. Hubbard's SFC nor in her 35-page PFS does Ms. Hubbard ever say she experienced permanent hair loss beginning on or by January 2015. That is merely Hospira's one-sided interpretation, perpetuating an incorrect narrative and argument in this litigation that must be put to an end.

## II. The Proposed Amendments State Cognizable Legal Claims

Hospira objects to the proposed Amended SFC of Plaintiffs Guilbault and Plaisance to the extent that they include claims that fall outside of the LPLA. Plaintiff Guilbault agrees to remove Count II "Strict Products Liability for Misrepresentation." Hospira also objects to Ms. Guilbault's Count I "Failure to Warn" claim. This count was plead in Ms. Guilbault's original SFC and does not change with the proposed amendment. Ms. Guilbault acknowledges her

Failure to Warn claim arises exclusively under the LPLA and notes that the elements of the "Failure to Warn" Count in the Master Complaint is virtually identical to that of the LPLA. However, the "Failure to Warn" Count is included in her SFC as Ms. Guilbault relies on the allegations in the Master Complaint on failure to warn.

With respect to Ms. Plaisance, Hospira argues her claims are limited by the LPLA. Ms. Plaisance properly identified the Northern District of Illinois as her filing venue in her original SFC, where her case would have been filed absent the direct filing order (PTO 5), and the filing venue allegation is unchanged in her proposed amended complaint. As such, Hospira's response to the Plaisance amendment is an attempt to circumvent the Court's mandate, found in CMO 14C, that the parties raise any venue objections within 14 days of selection of a case for the Trial Pool. Hospira selected Ms. Plaisance's case for inclusion in the Trial Pool and never raised an objection to her venue allegations until responding to her proposed amendment. The time for venue objections has now passed.[5]

Hospira's choice of law argument erroneously assumes that Ms. Plaisance's case is venued in the Eastern District of Louisiana and that Illinois is not the appropriate transferor venue. As such, all ensuing arguments that Hospira advances regarding Ms. Plaisance's proposed amendment are fatally flawed. Ultimately, since Ms. Plaisance's transferor venue is in Illinois, and because it is an appropriate venue where the Defendant resides, Illinois choice-of-law rules apply in this case. *See e.g. In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, *the choice of law rules of each jurisdiction in which the transferred*

---

[5] Even if Hospira had objected to the chosen venue, that objection would have been meritless, since venue is clearly appropriate in the Northern District of Illinois pursuant to 28 U.S.C. 1391 (b)(1)-(2). Hospira's assertion that Courts "routinely reject venue arguments based on the location of a corporate defendant..." is merely another attempt to object to plaintiff's venue allegation after their deadline to do so has passed.

5

*actions were originally filed must be applied*.") (emphasis added); *Kaiser v. C.R. Bard, Inc.*, 2016 U.S. Dist. LEXIS 157627 at *5 (S.D. W. Va. November 15, 2016) ("the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation"). Therefore, this case should be treated as effectively filed in Illinois and, therefore, Illinois choice-of-law rules apply.

Despite its argument that Louisiana choice-of-law rules apply, Hospira correctly acknowledges that if this case had been filed in Illinois, Illinois choice-of-law rules would apply. Hospira cites *Paulsen v. Abbott Labs* to support its contention that Illinois choice-of-law rules would require application of Louisiana state law in this case. *Paulson*, No. 15-4144, 2018 U.S. Dist. LEXIS 50256 (N.D. Ill. Mar. 27, 2018). However, *Paulson* is clear that the analysis is not as simplistic or straightforward as Hospira contends. Under Illinois choice-of-law rules, the Court must apply the "most significant relationship test," which requires a weighing of various factors. *Id.*, 2018 U.S. Dist. LEXIS 50256, at *32-33 ("In a personal injury action, Illinois focuses specifically on…the relevant policies of the forum; the relevant policies of other interested states, and the relative interests of those states in the *determination of the particular issue*; and the basic policies underlying the particular field of law.") (emphasis added). Importantly, this is an issue-by-issue analysis. For example, Illinois choice-of-law rules dictate that the imposition of punitive damages on an Illinois domiciled company by an Illinois Court is appropriate, even in a case where the injury occurred in another state. *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 747-749 (N.D. Ill. 2010); *see also Paulsen*, at *36-37 (distinguishing *I-Flow Corp* based on the fact that punitive damages were not at issue in *Paulsen*). Ultimately, this Court will need to conduct a full issue-by-issue choice-of-law analysis under Illinois choice-of-law rules. However, that analysis is unnecessary at this stage in the case, and Ms. Plaisance's

original venue selection of the Northern District of Illinois, which does not change with this amendment, should stand.

### III. The Proposed Amendments are Particularized and Permitted by PTO 105

Hospira urges that the proposed amendments in the four cases are non-particularized, non-factual, and unauthorized under PTO 105. This argument is meritless. The amendments of the bellwether Plaintiffs' SFCs are proper as they include factual allegations specific to each Plaintiff, based upon their treatment and communications with their physicians, consistent with PTO 105. Couching the amendments as non-factual and non-particularized is a veiled attempt by Hospira to prematurely brief its position on statute of limitations under an inaccurate recitation of the law. Plaintiffs will respond to any statute of limitation arguments at the appropriate time as set forth in pertinent scheduling orders.

This circuit's law is settled that leave to amend a complaint should be freely given absent undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party by virtue or allowance of amendment and futility of amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). The characterization of individual Plaintiffs' supplemental allegations in proposed amending SFCs as non-particularized is simply inaccurate, as the allegations are both Plaintiff-specific and case-specific. Hospira argues that Plaintiffs allege similar facts, but this is to be expected since these cases were centralized by the Judicial Panel for Multidistrict Litigation in part because of the common issues of fact shared amongst these Plaintiffs.

Plaintiffs disagree with Hospira's reading of PTO 105 as it relates to the scope of permissible amendments. Hospira reads PTO 105 to state that ONLY communications with

medical professionals can be pled. This is an incorrect and one-sided reading of PTO 105.[6] There is nothing that prevents a Plaintiff from including additional allegations related to Plaintiff's medical care and treatment. In fact, paragraph 2 of PTO 105 specifically states that particularized facts individual and specific to each Plaintiff's medical care and treatment may be pled.

In support of applicable state law causes of action and/or statute-of-limitations analysis – and, even if somehow these allegations are "too much," the remedy should not be denying an amendment, striking a pleading or even a paragraph in the pleading; rather, absent a stipulation, Rule 12 and 56 provide the adequate vehicle through which Hospira can later challenge such allegation. To the extent not already disclosed in discovery responses or the PFS, the bellwether plaintiffs merely included these allegations[7] to provide additional notice to Hospira, and prevent any later argument by Hospira that such allegation should have been included in an Amended SFC.

Furthermore, the bellwether Plaintiffs are permitted to add particularized facts individual and specific to each Plaintiff's treatment because such amendments in no way unfairly surprise or prejudice Defendants, are not alleged in bad faith, and are not futile. Conversely, the supplemental allegations are timely given that such cases are still at the pleadings/pre-deposition stage. Indeed, such amendments are contemplated by the language of both PTO 105 and the exemplar SFC. It would be prejudicial to deny these Plaintiffs the opportunity to allege particularized facts related to their medical care and treatment, including allegations that reflect their experiences while recovering from cancer, which are relevant to the analysis of their claims.

PTO 105 does not obviate the Court's prior Orders in PTO Nos. 15, 73, and 73A, directing Plaintiffs to use the Court-approved and agreed upon exemplar SFC, "tailor[ing] the

---

[6] *See* Rec. Doc. 10457.

[7] For example, allegations related to the dates of treatment, discussions with health care professionals regarding potential side effects prior to Taxotere treatment, and hair loss.

form to correspond to each Plaintiff's claims/allegations." *See* PTO 105 (Rec. Doc. 10338), at ¶ 2 (internal quotation omitted). Any interpretation of this language restricting Plaintiffs' ability to allege such particularized facts is contrary to law given that leave to amend should be freely permitted where such allegations merely provide more specific facts in support of the same theories of recovery of which Defendants were already aware.

If Plaintiffs' right to allege particularized facts as permitted by PTO 105 is denied, it would essentially treat statute of limitations as a common issue, which is contrary to established precedent in a prior MDL in this district. *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.,* No. 07-1873, 2012 WL 1580761, at *2 (E.D. La. May 4, 2012). Moreover, analysis of statute of limitations issues have been determined by Your Honor to be appropriate at the Rule 56 stage. *See* Rec. Doc. 10906, at 2. PTO 105 properly allows Plaintiffs to amend SFCs to advance particularized *allegations* about their injury for the record. Allegations do not establish any *entitlement* to relief, and thus PTO 105 in no way prejudices Defendants, who retain the right to challenge the allegations through depositions and cross examination. In contrast, prohibiting Plaintiffs' proposed particularized allegations that merely set forth individualized experiences and recollections of Plaintiffs is deeply prejudicial because nothing in the master long form complaint speaks to any Plaintiffs' individual experience. That is precisely why this Court established the use of individual Short Form Complaints to set forth facts particular to Plaintiffs' cases. The Short Form Complaint is the appropriate vehicle wherein each Plaintiff establishes her case-specific allegations to support her claim under applicable state law.

**IV. Conclusion**

Plaintiffs have followed the Court's requirements for short form complaint amendments under PTO Nos. 15, 73, 73A and 105. Accordingly, Plaintiffs Lula Gavin, Clare Guilbault,

Debbie Hubbard, and Audrey Plaisance respectfully request the Court grant their Motion for Leave to Amend their Short Form Complaints and enter the proposed pleadings into the record.

Dated: August 18, 2020                                            Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

10

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

| | |
|---|---|
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>　　　　　　　　　　　　　　　　　*/s /Dawn M. Barrios*
>　　　　　　　　　　　　　　　　　DAWN M. BARRIOS