```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3    ************************************************************
     IN RE: TAXOTERE (DOCETAXEL)          MDL NO. 2740
4    PRODUCTS LIABILITY LITIGATION        SECTION "H" (5)
                                          Wednesday, August 5, 2020
5    This document relates to:
     All cases
6    ************************************************************

7

8
      TRANSCRIPT OF RULE TO SHOW CAUSE HEARING VIA VIDEO CONFERENCE
9          HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                     UNITED STATES DISTRICT JUDGE
10

11

12   APPEARANCES:

13   FOR PLAINTIFFS:                Dawn M. Barrios, Esquire
                                    BARRIOS, KINGSDORF & CASTEIX
14                                  701 Poydras Street, Suite 3650
                                    New Orleans, LA 70139
15

16
                                    M. Palmer Lambert, Esquire
17                                  Claire E. Berg, Esquire
                                    GAINSBURGH, BENJAMIN, DAVID
18                                      MEUNIER & WARSHAUER
                                    1100 Poydras Street, Suite 2800
19                                  New Orleans, LA 70163

20

21

22   FOR DEFENDANTS:               Kelly E. Brilleaux, Esquire
                                    IRWIN, FRITCHIE, URQUHART & MOORE
23                                  400 Poydras Street, Suite 2700
                                    New Orleans, LA  70130
24

25

                           OFFICIAL TRANSCRIPT
```

1   APPEARANCES CONTINUED:

2

3   FOR DEFENDANTS:

                              Julie A. Callsen, Esquire
4                             Brenda Sweet, Esquire
                              TUCKER ELLIS
5                             950 Main Avenue, Suite 1100
                              Cleveland, OH 44113
6

7
                              Nicholas Insogna, Esquire
8                             GREENBURG TRAURIG
                              Terminus 200
9                             3333 Piedmont Road, NE
                              Atlanta, GA 30305
10

11

12

13  ALSO PRESENT FOR PLAINTIFFS:

14                            Vance Montgomery, Esquire
                              Markita Hawkins, Esquire
15                            Kristie Fischer, Esquire
                              Alexandra Robertson, Esquire
16                            Amber M. Pang Parra, Esquire
                              Thomas Smith, Esquire
17                            Mark Niemeyer, Esquire
                              Ryan Hodge, Esquire
18                            Joseph H. Saunders, Esquire
                              Peter Goss, Esquire
19                            Robin Myers, Esquire
                              Edward P. Bertram, Esquire
20                            Travis R. Walker, Esquire
                              Jennifer S. Domer, Esquire
21                            Jason Long, Esquire
                              Steven Davis, Esquire
22                            Meghan Hennessy, Esquire
                              J. Christopher Elliott, Esquire
23

24

25


                        OFFICIAL TRANSCRIPT

```
1  Official Court Reporter:          Alexis A. Vice, RPR, CRR
                                     500 Poydras Street, HB-275
2                                    New Orleans, LA 70130
                                     (504) 589-7777
3                                    Alexis_Vice@laed.uscourts.gov

4

5

6

7

8  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
   PRODUCED BY COMPUTER.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

OFFICIAL TRANSCRIPT

```
1                    P-R-O-C-E-E-D-I-N-G-S

2                  WEDNESDAY, AUGUST 5, 2020

3                (RULE TO SHOW CAUSE HEARING)

4

5          THE COURT: Are we ready to proceed?  We want to

6   handle first, I've been presented four names on the Non

7   Compliance Dismissal -- I'm sorry.  Just have to give me a

8   second.  This is people that -- let me look at the first, the

9   Non Compliance Declaration List.

10         MS. BRILLEAUX: I can handle them.

11         THE COURT: The four names on the Non Compliance

12  Dismissal List, so these are cases that there's no defense

13  that's been provided?  You have to help me.

14         MS. BRILLEAUX: Your Honor, this is Kelly Brilleaux on

15  behalf of the Sanofi defendants.

16         THE COURT: Yes, Ms. Brilleaux.

17         MS. BRILLEAUX: The four names on the dismissal list

18  are the plaintiffs who were on the 14-day notice to

19  subsequently file a stipulation of dismissal.  And I can read

20  those into the record:  Lisa Bogner, Karen Chingman, Debra

21  Mcauliffe, and Tudie Thomas.

22         THE COURT: All right, those matters are dismissed

23  with prejudice.

24         Okay, Ms. Brilleaux.

25         MS. BRILLEAUX: The next list, Your Honor, is the list
```

1  of declarations.  This is the list of cases in which counsel

2  has made multiple attempts to contact their client, and there

3  are 11 cases on this list.  They are Lucie Blood, Dena

4  Brinkman, Michelle Curley, Brenda Dunbar, Lilette Hickey,

5  Cynthia Jimerson, Jennifer Massey, Diane Moore, Mae Richardson,

6  Dianne Rogers, and Shellie Sider.

7         Your Honor, we have provided these lists, and I think

8  that they should be accessible to Madam Court Reporter.

9         THE COURT: Wait, I'm sorry, okay.  These matters are

10  dismissed with prejudice.  Plaintiffs' counsel, in these

11  matters, has attempted to contact their clients, and the

12  clients have failed to provide the appropriate information.

13  Thank you.

14         All right, now we have the Non Compliance Statement

15  List.

16         MS. BRILLEAUX: Yes, Your Honor.  This is the

17  statement of no defense to the deficiency.  We have 22 --

18         THE COURT: You broke up.  I'm having trouble hearing

19  you.

20         MS. BRILLEAUX: I'm sorry.  This is the list of cases

21  of counsel who have no defense to the deficiency and have

22  stated that the cases should be dismissed.

23         THE COURT: Have we received anything from them,

24  Ms. Barrios, these people on the Non Compliance Statement List?

25  Have we received any information?

OFFICIAL TRANSCRIPT

1          MS. BARRIOS: Your Honor, we did receive confirmation

2     from counsel that they filed or they have no defense to the

3     deficiencies.

4          We review these cases with the defense the day

5     before; so what Ms. Brilleaux is telling you is what is

6     correct.

7          THE COURT: Okay.  These matters are dismissed with

8     prejudice.  There are 22 cases:  Minson Anderson, Cynthia

9     Barnes, Sandra Conway, Ruth Copeland McCullum, Sandra Cueva,

10    Pam DeYoung, Hope Gunn, Carolyn Hannah-Watson, Margaret

11    Jarosch, Linda Knapp, Jacqueline Lee, Hope Motte, Alice

12    Peterson, Maria Saunders, Sharon Smith, LuAnn Spencer, Taryn

13    Stafford, Vivian Thomas-Bailey, Jo Ann Thompson, Zita Veress,

14    Renita Waters, and Lillie Williams.

15         Are we now ready to proceed, Ms. Brilleaux?

16         MS. BRILLEAUX: Yes, I believe so.  The first

17    plaintiff on the show cause call docket is Sylvia Cunningham

18    represented by Bailey & Greer, and this is for we have not

19    received the Court-approved authorizations that are attached to

20    the Plaintiff Fact sheet.

21         THE COURT: All right, Mr. Montgomery, are you on the

22    line?  Mr. Montgomery?

23         MS. BARRIOS: Maybe he's muted because he's supposed

24    to be on the line.  I can have someone --

25         THE COURT: Anyone from Bailey & Greer, if you'd

                        OFFICIAL TRANSCRIPT

1  please unmute?  Let's just skip this one and go to the next.

2          MS. BRILLEAUX: Yes, Your Honor.

3          The next case is what we've referred to as a rollover

4  case.  It is Carol Lynn Lackey represented by Bruno & Bruno.

5  This is for no proof of use, and this is a case that has been

6  addressed at a prior hearing.

7          THE COURT: Okay, Ms. Hawkins, are you on the line?

8  Ma'am, would you please unmute?

9          MS. HAWKINS: Can you hear me?

10          THE COURT: Yes, ma'am, thank you.

11          MS. HAWKINS: Okay.  Yes, this is Markita from Bruno &

12  Bruno.  Ms. Carol Lynn Lackey, we have been trying to work with

13  her to obtain proof of use for her chemotherapy, the Taxotere

14  drug.  We have tried everything that we could.  We are still

15  waiting on information from her insurance company.  Because it

16  was so long ago that she was alleged to have the Taxotere

17  treatment which is in 1999, it's taking some time.

18          THE COURT: What have you done, Ms. Hawkins, to look

19  for the proof of use, to establish that?

20          MS. HAWKINS: So what we've done is we asked her to

21  give us a list of facilities that possibly would have had them.

22  She gave us a list, and we just went down the entire list and

23  started sending out requests for medical records.  We received

24  some statements of no records, and we're just continuing to go

25  down the list.

OFFICIAL TRANSCRIPT

```
 1              We also asked her to contact her insurance company
 2     and try to help us to get those as well, and we've uploaded
 3     everything to MDL Centrality.
 4              MS. BRILLEAUX: And Your Honor, I just wanted to note
 5     that on MDL Centrality, there is a chart of pending records,
 6     and we would just ask for an update on the status of the
 7     individual records.
 8              MS. HAWKINS: That is no problem.  I can definitely
 9     submit an update today.
10              THE COURT: Okay, and let's just roll this over until
11     we see if we can find something from the insurance company.
12              MS. HAWKINS: Okay, thank you so much, Judge.
13              MS. BARRIOS: Your Honor, this is Dawn Barrios.
14              Ms. Hawkins, you might want to issue a subpoena to
15     the medical insurer for that information.
16              MS. HAWKINS: Yes, thank you so much.
17              MS. BARRIOS: Thank you.
18              THE COURT: Okay, let's go to the next matter.
19              MS. CALLSEN: Okay, hi, it's Julie Callsen.  I'm going
20     to address the next matter.  We've kind of divided these up for
21     ease.
22              Your Honor, though, before I do that, I want to just
23     introduce you to Brenda Sweet who is my colleague who is
24     somewhere on your chart.  Can you wave?
25              THE COURT: I see Ms. Sweet.  I'm pointing, but that's
```

OFFICIAL TRANSCRIPT

1  meaningless to you.

2          MS. CALLSEN: I'm having her listen in because I may

3  transition some of these activities to her since I'm going to

4  be involved in the trial coming up which we've been working on

5  which I figure might keep me a little busy.

6          So the first one I'm going to address is Ann

7  Hutchison.  She's represented by Canepa, Riedy & Abele.  I'm

8  sorry if I butchered your name.  The deficiency is the PFS is

9  not substantially complete.

10          But before we go into that, Your Honor, I do want to

11 just let you know that last night at 8:30 p.m., we did receive

12 an email from Kristie Fischer, her counsel, claiming that she

13 had cured these deficiencies.  Since that was at 8:30 p.m., and

14 this morning, I was Zooming with Your Honor and some of the

15 other people on the call, I haven't yet had time to confirm

16 that, indeed, it's cured.  So I would just ask for seven days

17 to confirm that it's cured.

18          THE COURT: So ordered.

19          MS. CALLSEN: And Your Honor, just while we're on

20 this, I just want to point out, one, this is a rather short

21 list, but there were numerous cures.  I think Kelly and Kelly

22 and Dawn and I and Nick were up until -- I don't know.  What

23 time did you resend it to them?  11:00-something p.m. last

24 night.

25          And we would just ask, again, that plaintiffs'

OFFICIAL TRANSCRIPT

1    counsel please, please just give us the courtesy and give the

2    Court the courtesy of getting any cures in or dismissals,

3    etcetera, you know, at least 48 hours before this is scheduled.

4              THE COURT: Thank you.  I will remind everybody again.

5    These cures should not take place at literally at the 11th

6    hour which apparently it was 11:00 o'clock last night.  It's

7    hard enough.  It's a very difficult process, but not giving us

8    an opportunity to review this information ahead of time makes

9    it much more difficult.

10             Okay, all right, let's go to the next one.

11             MS. BRILLEAUX: Yes, Your Honor.  The next case is

12   Virginia Squires represented by Gainsburgh Benjamin.  And the

13   deficiency here is we have photos that are not dated.  We have

14   not received a PTO 71A certification.  And we have received a

15   HIPAA authorization that is undated.

16             THE COURT: Ms. Berg.

17             MS. BERG: Your Honor, we cured everything last night.

18   I apologize for the late cure.  We are having trouble receiving

19   mail from this client.  She sent in the packet a few weeks ago,

20   but we were able to get the same information through fax.  We

21   were able to talk her through that.  It should be uploaded, and

22   Defense Counsel can just confirm that it's cured.

23             THE COURT: I'm going to grant seven days to confirm

24   the cure.  Okay.

25             MS. BRILLEAUX: Thank you, Your Honor.


                        OFFICIAL TRANSCRIPT

1          The next case is Neva Lee represented by Johnson

2    Becker, and the deficiency is undated photos.

3          THE COURT: This is Johnson Becker, Alexandra

4    Robertson.

5          MS. ROBERTSON: Can you hear me, Your Honor?

6          THE COURT: Yes, I can.

7          MS. ROBERTSON: Perfect.  This is Alex Robertson from

8    Johnson Becker.  We had served cure efforts on July 28th.  We

9    inadvertently left dated photos off of those cure efforts.

10   When we were notified of it, we did immediately serve those.

11   Unfortunately, they were this morning, though.  So we'd ask you

12   to give seven days to defendants to review.

13         THE COURT: So ordered.

14         MS. BRILLEAUX: Thank you, Your Honor.

15         The next case is Danah Garver represented by

16   Justinian & Associates, and the deficiency is for no PTO 71A

17   certification.  And just to remind Your Honor, this is the

18   certification that the ESI search has been conducted and is

19   complete.

20         THE COURT: Okay, thank you.  Is Ms. Parra on the

21   phone?  Hello?  Is there anyone for Justinian & Associates on

22   the line?

23         Well, let's pass this, and then we'll come back to

24   it.  Go to the next one.

25         MS. BRILLEAUX: The next case, Your Honor, is Annette

OFFICIAL TRANSCRIPT

1   Poirier represented by the Law Offices of Tony Seaton &

2   Associates, and this is another no PTO 71A certification.

3           THE COURT: Okay, who do I have -- is anyone on the

4   line for Tony Seaton & Associates?  Hello?  Anyone on the line

5   for Tony Seaton & Associates?

6           We're going to pass this one.  I don't even have them

7   identified on my list.  Is that Tom Smith?

8           MS. BARRIOS: Yes, ma'am.

9           THE COURT: Mr. Smith, are you on?  I mean do you have

10  him on the line?  Mr. Smith, are you on the line?

11          Let's pass it, and then we'll see where we are.

12  Okay, let's go to the next one, Deborah Allen.

13          MS. BRILLEAUX: Yes, Your Honor, Deborah Allen who is

14  represented by Niemeyer, Grebel & Kruse, this is on the list

15  for no before photos within five years of treatment.

16          THE COURT: Mr. Niemeyer, hello?

17          MR. NIEMEYER: Your Honor, Mark Niemeyer.  Can you

18  hear me now?

19          THE COURT: I can.  Thank you.

20          MR. NIEMEYER: Oh, I'm sorry, Judge.  So I think maybe

21  just as an advice to everybody, I had my phone just kind of on

22  mute.  But everybody, those that are on the line will need to

23  hit star 6 to unmute themselves, and I didn't know that, and

24  that was the delay.  So maybe just an announcement to that

25  effect.

OFFICIAL TRANSCRIPT

1          THE COURT: Thank you.  I would not have known that

2     myself.

3          MR. NIEMEYER: So that may be the issue on some of

4     these other folks.

5          With respect to Ms. Allen, Your Honor, the short

6     answer is we're not 100 percent sure one way or the other

7     whether she possesses before photos within the five years.  And

8     the reason for that is some serious health issues that she's

9     been experiencing over the last few months that have caused her

10    to be in and out of the hospital.

11         But as a bigger answer, Ms. Allen has produced really

12    everything else that's been asked of her, and by that I mean

13    after photos, a complete PFS with all the bells and whistles,

14    authorizations, etcetera.

15         And the before photos she's produced, the most recent

16    one -- she was treated in 2009.  The most recent one was 2000,

17    and she had some before that.  We were making some headway with

18    her going through some old photo albums, and we thought we

19    might have located some within the five-year period.  But then

20    she's just been difficult to reach since then.

21         So it's tough for me.  I can't represent to the Court

22    right now that there are none.  I can tell you that there are

23    none that she's been able to get to us.  And we're hopeful --

24    she's hospitalized actually currently.  We're hopeful that once

25    she gets back out, we'll get to the finish line on that.  We

OFFICIAL TRANSCRIPT

1  sent her a self-addressed stamped envelope to put anything in

2  there that might be close, and we just haven't received that

3  back.

4          So we've been working hard with her.  She has been

5  cooperative when she can be.  She just has a tough health issue

6  right now.

7          THE COURT: Okay, let's roll this one over until next

8  time.  I'm going to ask you to continue a diligent search for

9  photographs within five years.

10          MR. NIEMEYER: Yes, Your Honor.  Thank you very much.

11          THE COURT: Okay, let's go to the next one.

12          MS. BRILLEAUX: The next case is Maude Smith

13  represented by Ray Hodge & Associates, and the deficiency is no

14  before photos from within five years.

15          THE COURT: Okay, Mr. Hodge?  Star 6 to unmute.  We

16  just learned that if you're on your cell phone.

17          MR. HODGE: Did that work?  Did that work?  Can you

18  hear me?

19          THE COURT: Yes.

20          MR. HODGE: Thank you for giving me the secret

21  password.

22          THE COURT: Well, we don't know where the secret

23  password came from because no one told me about it.  But

24  anyway, any before photos for Ms. Smith, Mr. Hodge?

25          MR. HODGE: Yes, Your Honor, I apologize for not being

OFFICIAL TRANSCRIPT

1   able to notify the Court and Counsel earlier.  But we've been

2   trying to get this information from the client, and she's not

3   been able to produce it.  And she's made the decision that she

4   does not want to continue with this case.  So we will be

5   entering a dismissal on it.

6           THE COURT:  Okay.  I'm just going to dismiss it with

7   prejudice at this point --

8           MR. HODGE:  Okay.

9           THE COURT:  -- based upon what you're telling me.

10          MR. HODGE:  Yes.

11          THE COURT:  Thank you.

12          MR. HODGE:  All right, thank you, Your Honor.

13          THE COURT:  The next one, please.

14          MS. BRILLEAUX:  The next case is Eva Ferguson

15  represented by Saunders & Walker, and the deficiency is no

16  before photos from within five years of treatment.

17          THE COURT:  Okay, Mr. Saunders.

18          MR. SAUNDERS:  Good afternoon, this is Joe Saunders

19  here.  It's a pleasure to be in your court, Your Honor, by Zoom

20  here.  And I'm probably the most guilty today of the late

21  compliance.  I think a couple of hours ago, we sent pictures to

22  Defense Counsel that we got.

23          The client has been diligent all along here.  She had

24  a bad divorce, and her ex had photos and finally was able to

25  get one stamped on the front of the picture two years before

OFFICIAL TRANSCRIPT

```
 1   her chemo.  So I think that should satisfy.  If you want to
 2   give us another seven days, so that can be confirmed.
 3             THE COURT: I'm going to grant seven days to confirm
 4   compliance.  Thank you, Mr. Saunders.
 5             MS. BRILLEAUX: Your Honor, the next case is Marilyn
 6   Stillwell represented by Goss Law Firm.  This is a no after
 7   photos deficiency.  And I'll kind of try to streamline this,
 8   Your Honor.  Plaintiff's counsel has submitted photographs.
 9             THE COURT: Wait, wait.  I just lost you-all.  I don't
10   know what happened.
11             MS. BRILLEAUX: We can hear you, but you're frozen.
12             THE COURT: Oh, okay, all right.  Well, that's fine.
13   Mine froze.
14             Anyway, okay, this is for the Goss Law Firm.  That's
15   Peter Goss.
16             MR. GOSS: Yes, Your Honor.
17             THE COURT: Okay, no after photos.
18             MR. GOSS: Your Honor, we uploaded after photos on
19   June 12$^{th}$ that were taken, it looks like, May of 2020 that we
20   uploaded in June, on June 12$^{th}$.
21             MS. BRILLEAUX: And Your Honor, the issue here is that
22   all -- every single picture that we have for the after photos,
23   the plaintiff is wearing a hat.
24             MR. GOSS: Well, Your Honor, we've only claimed a loss
25   of eyebrows and eyelashes.  We haven't claimed loss of hair on
```

OFFICIAL TRANSCRIPT

1  the head.

2         MS. BRILLEAUX: And Your Honor, to the extent that

3  that is the extent of the claims, we would ask that plaintiff's

4  counsel amend the PFS because --

5         MR. GOSS: The PFS states "No" where it says small

6  bald area on head, large bald area on head.  We've clicked the

7  "No" boxes on those, on those items.

8         MS. BRILLEAUX: And Counsel --

9         MR. LAMBERT: Can I interrupt just for a second?  This

10 is Palmer Lambert, co-liaison counsel.  I don't see the judge's

11 box anymore; so I don't know that we're -- I don't know that

12 she's able to hear us.

13         THE COURT: I can hear, but I'm having difficulty.

14 Would you-all -- I'm going to ask Mr. Goss and Ms. Brilleaux to

15 continue to talk, and then I'll come in.  But maybe you can

16 pull up the Plaintiff Fact Sheet and work through it.  I'm just

17 going to try to get back into this meeting.

18         MS. BRILLEAUX: Thank you, Your Honor.

19         And Counsel, what I was trying to tell you is that

20 the Plaintiff Fact Sheet still claims a change in the texture

21 and color of her hair as an injury.  So even though the

22 baldness allegation has been unchecked, the texture and color

23 claim has not.

24         MR. GOSS: Okay.  Well, I mean -- okay.  Well, I guess

25 we're referring to the texture and the thickness of her

                        OFFICIAL TRANSCRIPT

1   eyebrows and eyelashes and nasal hair and ear hair.  I mean

2   that box isn't -- it doesn't delineate between whether it's the

3   hair on her head or her eyebrows or her eyelashes.  At least,

4   that's the way I'm reading it.

5          MS. BRILLEAUX: So the claim is for a change in

6   texture and color of her hair eyebrows and eyelashes?

7          MR. GOSS: Of the hair on her eyebrows, eyelashes, and

8   body hair, nasal hair, and ear hair that we are claiming loss

9   of.  I mean you can see in the pictures.

10         MS. BRILLEAUX: Okay.  And so just to clarify that,

11  you are not claiming any hair loss on her scalp or --

12         MR. GOSS: That's correct.

13         MS. BRILLEAUX: -- any change in color or texture?

14         MR. GOSS: That's correct, that's correct, yep.

15         MS. BRILLEAUX: Mr. Goss, I'm just waiting on the

16  judge.

17         MR. GOSS: I understand.

18         MS. BRILLEAUX: Okay, thank you.

19         THE COURT: Can you-all hear me?

20         MS. BRILLEAUX: Yes, Judge.

21         MR. LAMBERT: Yes, Judge.

22         THE COURT: Okay, all right, I'm trying to get back

23  in.

24         All right, have we resolved Ms. Stillwell?

25         MS. BRILLEAUX: Yes, Your Honor, we have.  Plaintiff's

OFFICIAL TRANSCRIPT

1  counsel has confirmed on the record that Ms. Stillwell is not
2  making any claims related to the hair on her scalp, and that
3  all of the texture and change of color claims are related to
4  her body hair and her eyebrows.  So with that understanding, we
5  can resolve this deficiency.
6            MR. GOSS: That is correct, Your Honor.
7            THE COURT: Thank you very much.
8            All right, let's proceed.  Minnie Howard, and
9  Ms. Howard is represented by The Murray Law Firm.
10           MS. BRILLEAUX: Yes, Ms. Howard is represented by The
11 Murray Law Firm, and the deficiency is for after photos not
12 dated.
13           THE COURT: Okay, Ms. Myers.
14           MS. MYERS: Yep, I'm here, Your Honor.
15           THE COURT: Okay, where are we?
16           MS. MYERS: All of the after photos were uploaded with
17 the metadata, and they were taken -- they're all in her car
18 from 4/20 of 2020.
19           THE COURT: Okay, and when were they uploaded?
20           MS. MYERS: On June 5th.
21           MS. BRILLEAUX: Counsel, I would just ask, are the
22 dates actually entered on MDL Centrality because that's what
23 we're looking for?
24           If you're able to access the date from the metadata,
25 we would ask that you enter that so that Counsel can easily

OFFICIAL TRANSCRIPT

1    view it without having to look into the metadata.

2            MS. MYERS: Where do you put that, just like in the

3    box that says that you're submitting photos that are in that

4    category?

5            MS. BRILLEAUX: I think that you can enter it when you

6    upload documents into the file name on MDL Centrality.

7            MS. MYERS: In the file name, okay.

8            MS. BRILLEAUX: Name the file.

9            And Mr. Lambert or Ms. Barrios, do either of you have

10   further insight on that?  I know that you're a little bit

11   closer to the uploads than I am.

12           THE COURT: Okay, so can we have that done within

13   ten days?

14           MS. MYERS: Yes, Your Honor.

15           THE COURT: All right, thank you.

16           Let's go to the next one which I believe is your

17   client as well, Cathy Lavender.

18           MS. MYERS: Yes, Your Honor.

19           MS. BRILLEAUX: The deficiency is no before photos

20   from within five years of treatment.

21           THE COURT: Okay.  Ms. Myers.

22           MS. MYERS: The two -- well, I guess on the

23   spreadsheet, it just says that there were no before photos.  So

24   I was just prepared to say that there were two photos that were

25   uploaded from 2003.

OFFICIAL TRANSCRIPT

```
 1              THE COURT: When did she have her chemotherapy?
 2              MS. BRILLEAUX: 2014, Your Honor.
 3              THE COURT: Okay.
 4              MS. BRILLEAUX: And Counsel is correct.  She was
 5   initially on the list for no before photos.  We do acknowledge
 6   that photos were updated, but they're not within five years.
 7              THE COURT: All right.  I'm going to give you 15 days
 8   to upload photos from within five years --
 9              MS. MYERS: Okay.
10              THE COURT: -- before chemotherapy.  Okay, thank you,
11   Ms. Myers.
12              MS. MYERS: Thank you.
13              MS. CALLSEN: The next one is Baron & Budd Law Firm,
14   Karen Ahoe.  The PFS is not substantially complete in that we
15   have no CMO 12A, no PTO 71A statement, no after photos, and no
16   before photos.  We have after photos, but they just show her
17   with a head covering.  And also, the photos need to be dated.
18              THE COURT: Mr. Bertram for Baron & Budd.
19              MR. BERTRAM: Yes, Your Honor, good afternoon.
20              THE COURT: Good afternoon.
21              MR. BERTRAM: I guess I'll address the photos first.
22   This is another one of the late cures.  We did just upload an
23   additional after photo today; so I know Defense Counsel hasn't
24   had a chance to see that yet.  So that should be sufficient.
25   We can re-upload the ones with dates.
```

OFFICIAL TRANSCRIPT

```
 1              On hers, this was a late cure.  She lives in Florida,
 2    and as a cancer survivor in the midst of the coronavirus
 3    outbreak there, she had gone to Minnesota.  So we were having
 4    trouble reaching her for a while, and so a lot of this was late
 5    submissions.
 6              THE COURT: Did you submit the authorizations?
 7              MR. BERTRAM: Yes, we submitted both authorizations
 8    yesterday.  We served six photos last week.  We served the PTO
 9    71 statement and social media findings from that, served both
10    yesterday as well.
11              THE COURT: Okay.  The Court is going to grant
12    seven days to confirm the cure.
13              MS. CALLSEN: Okay, thank you.
14              The next case is the same firm, Iraida Hernandez.
15    PFS is not substantially complete.  Again, the before photos
16    are not dated.  We have no CMO 12A or PTO 71A statements.  And
17    we also need some signed authorizations.
18              THE COURT: Mr. Bertram.
19              MR. BERTRAM: Okay, Your Honor, we believe that this
20    one has been cured as well.  Some of this was late submissions.
21    But I do believe the CMO 12 was uploaded at least last week
22    sometime.  Photos have been uploaded, employment authorization
23    yesterday.  PTO 71 statement yesterday.
24              So we would just ask for some time for Defense
25    Counsel to look at it and confirm that it has, in fact, been
```

OFFICIAL TRANSCRIPT

1   cured.  We don't see any areas left outstanding.

2           MS. CALLSEN: The employment authorization wasn't

3   signed.  Can you just confirm the one you uploaded was signed?

4           MR. BERTRAM: Yes, I can.  And it was.

5           MS. CALLSEN: Okay.

6           THE COURT: The Court is going to grant seven days to

7   confirm.

8           MS. CALLSEN: Okay.

9           THE COURT: All right, and then we have Lisa Susman.

10          MS. BRILLEAUX: Yes, Your Honor, this is also Baron &

11  Budd, and we can fast-track this one.  Counsel uploaded last

12  night, or rather, filed into the record a declaration of

13  attempts to contact.  There was, I think, an inadvertent error

14  in the filing which is why we didn't move it to the list.  I

15  will let plaintiff confirm.

16          MR. BERTRAM: Yes, that is correct, Counsel.  We saw

17  that this morning.  I apologize for that.

18          Your Honor, we can either fix -- the problem is the

19  plaintiff's name was correct in the heading; but in the body, a

20  different plaintiff's name was there.  We can refile an updated

21  one or just represent to Your Honor that all of the contact

22  attempts contained in that declaration are accurate for

23  Ms. Susman, and we have not been able to reach her and expect

24  that it would be dismissed as we don't have any defense to

25  dismissal at this time.


                        OFFICIAL TRANSCRIPT

```
 1              THE COURT: Okay, this matter is dismissed with
 2    prejudice.
 3              The next matter is Jeanette Dalfrey, and this is
 4    Travis Walker.  Mr. Walker, Ms. Brilleaux.
 5              MS. BRILLEAUX: Yes, the deficiency in this case is no
 6    before photos and no after photos.
 7              MR. WALKER: Good afternoon, Your Honor.
 8              Yes, we've been attempting several times to make
 9    contact with Ms. Dalfrey with regards to this matter.
10    Unfortunately, we have been unsuccessful in getting the
11    information necessary and obviously just at the mercy of the
12    Court with regards to whatever its consistency is.
13              THE COURT: I'm sorry, this is just not the best
14    circumstances.  I'm really having difficulty hearing.  Could
15    you repeat what you said, Mr. Walker, please?
16              MR. WALKER: Yes.  In short, Your Honor, Ms. Dalfrey
17    has been unresponsive to our intentions and our trying to get
18    in touch with her.
19              THE COURT: Okay, Mr. Walker, how long have you been
20    trying to reach her?
21              MR. WALKER: Several months, Your Honor.  I believe
22    this may be the first time that she's appeared in a hearing,
23    but we've been trying to get ahold of her for a while.
24              THE COURT: The Court is going to dismiss this matter
25    with prejudice.  Plaintiff has failed to satisfy her
```

OFFICIAL TRANSCRIPT

1  obligations.  Thank you.

2            Yolande Haughton.

3            MS. BRILLEAUX: Yes, Your Honor.  This deficiency is

4  for no before photos, no after photos, and the authorizations

5  were not the Court-approved authorizations attached to the

6  Plaintiff Fact Sheet.

7            THE COURT: Mr. Walker.

8            MR. WALKER: Yes, Your Honor.  The same type of issue.

9  Actually, we have been in touch with Ms. Haughton, but she did

10  not want to cooperate.  So we're expecting a dismissal.

11            THE COURT: Okay, this matter is going to be dismissed

12  with prejudice.  The plaintiff has failed to satisfy her

13  obligations.  Thank you.

14            Mary Mcgonigal.

15            MR. WALKER: Mcgonigal.

16            THE COURT: Thank you.

17            MS. BRILLEAUX: The deficiency for this case is no

18  before photos.

19            MR. WALKER: And Your Honor, I too, like other

20  plaintiffs' counsel, respectfully request the seven-day time

21  for Defense Counsel to review.  We did upload the photos this

22  morning, and I apologize for the timeliness of it.  But I

23  respectfully request that seven-day time period for Counsel to

24  review those photos that were uploaded today.

25            THE COURT: The Court is going to grant seven days.

                    OFFICIAL TRANSCRIPT

1       MR. WALKER: Thank you, Your Honor.

2       THE COURT: And the last one is Anita Poverud for

3   Mr. Walker.  Ms. Brilleaux.

4       MS. BRILLEAUX: Yes, Your Honor.  The deficiency here

5   is no PFS declaration, no before photos, no after photos, and

6   no Court-approved authorizations.

7       THE COURT: Mr. Walker.

8       MR. WALKER: Again, Your Honor, we attempted to make

9   contact with the client.  Unfortunately, she's been

10  nonresponsive; so I understand the Court's dismissal of this

11  action.

12      THE COURT: This matter is dismissed with prejudice.

13  Plaintiff has failed to comply with her obligations.  Okay,

14  thank you.

15      MR. WALKER: Thank you, Your Honor.

16      THE COURT: The next one is a Sarah Arnold.  That's

17  the Cutter Law Firm.  Ms. Domer, are you on the line?

18      MS. DOMER: Yes, I am, Your Honor.  Thank you.

19      MS. CALLSEN: The deficiency is it's not -- the PFS is

20  not substantially complete because you don't have proof of

21  injury.  The most recent after photo we have is just shortly

22  after her chemo treatment ended.  So we need a recent photo,

23  something after chemo.

24      MS. DOMER: Yes.  On August 3rd, so again, this goes

25  to the 48-hour problem.  So for a couple of the cases we have,

OFFICIAL TRANSCRIPT

```
 1  I apologize in advance.  She did take photos from 2020, and we
 2  uploaded those on Monday.
 3           THE COURT: The Court is going to grant seven days for
 4  defendants to confirm.
 5           MS. CALLSEN: Thank you.
 6           THE COURT: All right, then Myrtle Barnes.
 7           MS. BRILLEAUX: Yes, Your Honor, the deficiency for
 8  this case is no PTO 71A certification on ESI.
 9           THE COURT: Okay, Ms. Domer.
10           MS. DOMER: Your Honor, I'm sorry, this one is a
11  little bit more difficult.  We have been able to be in touch
12  with Ms. Barnes.  The last time we were able to reach her was
13  April 14th which was a little bit before the pandemic in
14  Florida and the lockdown.  She is 87 years old.  We are having
15  trouble locating her.  We believe she was staying in a home
16  with other senior residents, but we haven't been able to get
17  ahold of her.  So we're actually trying to track down her
18  family.
19           THE COURT: All right.  I'm going to grant -- let's
20  just roll this one over in light of the pandemic only.  Okay,
21  thank you.
22           MS. DOMER: Thank you, Your Honor.
23           THE COURT: We're going to hold this one.
24           All right, Brenda Hawkins.
25           MS. CALLSEN: Yeah, Brenda Hawkins, the PFS is not
```

OFFICIAL TRANSCRIPT

1  substantially complete.  We don't have signed authorizations,

2  particularly, the health insurance authorization, as well as

3  worker's comp, unemployment.  Also the photos are not dated,

4  and we don't have a PTO 71A statement.

5          THE COURT: Okay, Ms. Domer.

6          MS. DOMER: Yes, Your Honor.  This one is tricky.  We

7  have been updating and uploading documents for the last

8  two days.  And up until I saw certain things still listed, I

9  didn't realize that the after photo dated and the authorization

10 for the PTO 71 hadn't been uploaded.  I can confirm the PTO 71

11 was uploaded yesterday and that due to -- I don't know quite

12 frankly what happened.

13         We thought we uploaded this all at the same time.

14 The dated after photos and the three authorizations were

15 uploaded this morning.  So I apologize.  I'm not sure how one,

16 but not the others weren't uploaded.

17         THE COURT: All right, the Court is going to grant

18 seven days to confirm compliance.

19         MS. CALLSEN: Thank you.

20         MS. DOMER: Thank you, Your Honor.

21         MS. BRILLEAUX: The next case is Janice Larkin, and

22 the deficiency for this case is no PTO 71A certification.

23         MS. DOMER: Yes, this one was uploaded yesterday.  We

24 will note for the Court to make sure this was uploaded.

25         THE COURT: Okay, the Court is going to grant

OFFICIAL TRANSCRIPT

```
 1  seven days to confirm compliance.

 2          MS. DOMER: Thank you, Your Honor.

 3          MS. BRILLEAUX: Thank you, Your Honor.

 4          The next case is Sylvia Washington.  This is no PTO

 5  71A certification and also no present day, current photographs.

 6          MS. DOMER: I believe we were able to update the

 7  photos on 7/23.  I thought they were the current ones.  And we

 8  uploaded the PTO 71 on 8/4, so yesterday.

 9          MS. BRILLEAUX: Counsel, I'm not showing in my notes

10  that we have anything from 7/23.  Do you know the date of the

11  photo?

12          MS. DOMER: I am just trying to verify that currently.

13  I apologize, my system is freezing obviously the minute I need

14  it.

15          MS. BRILLEAUX: And I'll just represent for the Court

16  and for the record that, you know, obviously, we've been

17  checking over the past several days.  And anything that would

18  have been submitted on July 23rd would not have been the

19  photographs that we're looking for, the current day photos.

20          THE COURT: Okay, I have to confess I was trying to

21  get my computer back up, and so I'm here now.

22          Where are we with Ms. Washington?

23          MS. DOMER: I uploaded the PTO 71 yesterday, and

24  opposing Counsel and I were discussing, perhaps, the

25  inappropriately dated photos which I am currently unable to
```

OFFICIAL TRANSCRIPT

1   confirm.  I have no idea.  My computer is completely frozen; so
2   I can't even check MDL Centrality currently.
3           MS. BRILLEAUX: And Your Honor, the defendants --
4           THE COURT: Why don't we do this?  Why don't I grant
5   Ms. Domer seven days to clear this up?  It sounds like there
6   may have been things that just weren't uploaded that she has in
7   her possession.  Am I correct in that, Ms. Domer?
8           MS. DOMER: Yeah, I believe that to be the case.  But
9   unfortunately, I am unable to physically confirm that.
10          THE COURT: All right, I'm going to grant you
11  seven days.
12          MS. BRILLEAUX: Judge, if I could, just for the
13  record, I was able to check, and we looked at what was uploaded
14  on July 23rd which is what Counsel mentioned.  That
15  photograph is from 2012, and we're looking for present day
16  photograph, current.
17          THE COURT: Present day photograph.  All right,
18  Ms. Domer, do you have present day photographs?
19          MS. DOMER: Unfortunately, I wish I could confirm, but
20  I think I --
21          THE COURT: Oh, you don't know?
22          MS. DOMER: I have no computer.  Yeah, I've got to
23  unfreeze my computer to be able to access the file.
24          THE COURT: I'm going to grant you 15 days to get a
25  present day photograph if you don't have one in your possession

OFFICIAL TRANSCRIPT

1  and to upload it.

2         MS. DOMER: Thank you, Your Honor.

3         THE COURT: Thank you.

4         MS. BRILLEAUX: Thank you, Your Honor.

5         The next case is Sandra Atkinson represented by Fears

6  Nachawati.  And this -- the initial deficiency was for no

7  before photos.  I'll note for the record that before photos

8  have been uploaded, but they're not dated.

9         THE COURT: Mr. Long.

10         MR. LONG: Yes, Your Honor.  The before photos, I

11  think we figured out it was the description box.  They were

12  uploaded with time stamps on them previously, but we went ahead

13  and re-uploaded them this morning with dates in the description

14  box for Centrality.  My apologies, now that we understand what

15  that exactly means.

16         THE COURT: Okay.  The Court is going to grant

17  seven days for defendant to confirm compliance.

18         MS. BRILLEAUX: Thank you, Your Honor.

19         The next case is Lisa Chaney, and this is an

20  authorization issue, Your Honor, and I'll let you know what the

21  issue was.  We received a HIPAA authorization on July 24th of

22  this year.  However, it's dated May 9th of 2019.  So by the

23  time we received it, it was expired by two months.

24         THE COURT: Okay.  Mr. Long.

25         MR. LONG: Yes.  We uploaded another one this morning

OFFICIAL TRANSCRIPT

1  again with a newer date.  And so if that one doesn't work, we

2  can keep trying again.

3          THE COURT: Okay.  The Court is going to grant

4  seven days to confirm compliance.

5          MR. INSOGNA: Your Honor, the next case is Camille

6  Fennell, and this is a proof of injury issue.  We have undated

7  after photographs.

8          MR. LONG: This one is similar to Ms. Atkinson.  These

9  were originally uploaded back in May and June.  But again, we

10  re-uploaded them once again using the description box labeling

11  as we're discussing.

12          THE COURT: Okay.  The Court is going to grant

13  seven days to confirm compliance.

14          MR. INSOGNA: Thank you, Your Honor.

15          The next case is Avon Gainer.  And we've got all of

16  the photos are undated, both before and after.  And it appears

17  from looking at the before photos that they're not within

18  five years of chemotherapy; but without dates, we're not sure.

19          MR. LONG: Yes.  This one, we also uploaded the ones

20  from 2009.  It's all that she could find.  Ms. Gainer contacted

21  friends and family.  Nobody had any photos closer to around

22  2013 which is when she started her chemo.  All she had was

23  2009.  And this was also stated in the deficiency response.

24          THE COURT: Well, that's within five years, 2009.  The

25  chemo was 2013?

OFFICIAL TRANSCRIPT

1              MR. LONG: Yes.

2              MR. INSOGNA: If there are 2009 photos, that would be

3      sufficient, Your Honor.  We will just take the seven days to

4      confirm, I suppose.

5              THE COURT: Seven days to confirm, yes, thank you.

6              MS. CALLSEN: The next one is Kae Schlisman Bullis,

7      and we have PFS insufficient.  It's authorizations.  They're

8      not filed out completely.  The addressee line should be blank;

9      so they're not done as per instructions.  And there's no PTO

10     71A.

11             MR. LONG: I saw that on the list for 71A.  This was

12     uploaded last night.  It was inadvertently left off

13     accidentally.

14             As far as the authorizations, again, I didn't see it

15     in the box for this morning.  I'd have to go in and fix the

16     HIPAA and just upload them quickly.

17             THE COURT: The Court is going to grant seven days to

18     confirm compliance.  It sounds like you still have something to

19     do and then we need --

20             MR. LONG: I'm not sure.  I'd have to go back.  I'm

21     sorry.

22             MS. CALLSEN: Your Honor, all these deficiencies are

23     spelled out long before today, so.

24             THE COURT: No, I understand that.  I understand that.

25     It sounded like, though, that it was uploaded either last night

OFFICIAL TRANSCRIPT

1  or this morning.  So I'm going to grant seven days to confirm
2  compliance.
3        But I think there was -- I think I heard he needed to
4  check another box which takes, what, five minutes.
5        MR. LONG: I'm still trying to see from the deficiency
6  notice, but it's okay.  We'll jump right on it.  Sorry about
7  that.
8        THE COURT: Okay, all right.  The Court is going to
9  grant seven days to confirm compliance.
10        MS. BRILLEAUX: And before Counsel from Fears hops
11  off, I wanted to note, Counsel, is Vera Jones, that's one of
12  your cases; is that correct?
13        MR. LONG: Yes.
14        MS. BRILLEAUX: Okay.  We had an issue with this one,
15  Your Honor, that I just wanted to mention and bring up for
16  Counsel to comment on.  This was on the 14-day list, and
17  Counsel submitted -- it was on the list for failure to file a
18  PFS.  And Counsel subsequently filed a PFS, and then over a
19  week later, filed a statement of no defense.
20        And so since the actual deficiency had been cured, we
21  didn't feel like it was right to dismiss the case based on the
22  deficiency.  And just since the plaintiff didn't end up on any
23  of these lists, I wanted to go ahead and resolve that for the
24  record.
25        THE COURT: Okay, thank you, all right.

OFFICIAL TRANSCRIPT

1          MS. BARRIOS: Excuse me, Your Honor.  That resolved,
2   Mr. Long, that you're going to dismiss?
3          MR. LONG: I need to go back.  I'm not sure what my
4   staff did.  I apologize.  I don't have it in front of me.  I'd
5   like seven days to just kind of look into it, just confirm our
6   decision.
7          THE COURT: Wait.  What's the case number for that one
8   because that's not in my list anywhere?
9          MS. BRILLEAUX: That's correct, Your Honor, it is not
10  on the list.  Let me very quickly look for this document which
11  I do have.  I just need to find it.  I'm sorry, Your Honor.
12          The case number is 19-14523.
13          THE COURT: 19-145 what?
14          MS. BRILLEAUX: 19-14523.
15          THE COURT: Thank you.
16          MS. BRILLEAUX: The deficiency was no PFS.  A PFS was
17  submitted on July 21st, and then a statement or -- yes, a
18  statement of no defense was filed into the docket, and it is
19  Document No. 10866 and filed on July 29th.
20          THE COURT: Was that one of those that I had today?
21          MS. BRILLEAUX: No, Your Honor.  It was part of the
22  14-day list that we file two weeks before the hearing.  And
23  because plaintiff submitted a Plaintiff Fact Sheet and
24  technically cured the deficiency, it's not on any list.  We
25  moved it to the cured deficiency list; so it's on no list.


OFFICIAL TRANSCRIPT

1          MR. LAMBERT: Your Honor, this is Palmer Lambert.  Why

2    don't we suggest that it get rolled over to the next hearing?

3    And that way, if Counsel decides to withdraw the declaration,

4    he can do that.  If the case needs to be dismissed, it can be

5    dismissed.

6          THE COURT: Thank you.  Let's do that.

7          MS. BRILLEAUX: Thank you, Your Honor.

8          MR. LONG: Thank you.

9          THE COURT: Lynette Alston, I think Mr. Davis should

10   be on the line for TorHoerman Law.

11         MR. DAVIS: Yes, Your Honor.  Can you hear me?

12         THE COURT: Yes, I can.

13         MS. BRILLEAUX: And the deficiency, Your Honor, is no

14   PFS submitted, so no declaration, proof of injury, proof of

15   use.  We don't have anything.

16         MR. DAVIS: So Your Honor, we uploaded or attempted to

17   upload and pay for the PFS on July 30th and didn't realize it

18   hadn't actually uploaded until we saw the final list last night

19   and saw this case was still on it.  So that was uploaded this

20   morning.  I apologize for the lateness of that.  We thought

21   we'd done it on the 30th, and it just didn't finish uploading.

22         THE COURT: Seven days for defendants to confirm

23   compliance.

24         Charlena Ishmon.

25         MS. BRILLEAUX: Yes, Your Honor, this is photos are

OFFICIAL TRANSCRIPT

1   not dated.

2          MR. DAVIS: Your Honor, when we responded to the

3   deficiency, we put the date in our deficiency response, but I

4   do think we failed to date them as was discussed earlier on the

5   call or earlier in the hearing in the actual file name portion

6   of Centrality.  So I believe that's been done today.  If it

7   hasn't, I'll do it today.

8          THE COURT: The Court is going to grant seven days to

9   confirm compliance.

10          MS. BRILLEAUX: Thank you, Your Honor.

11          Donna Kamali, and this is no photos from within

12   five years -- no before photos, excuse me.  No before photos

13   from within five years of treatment.

14          THE COURT: Mr. Davis.

15          MR. DAVIS: Yes, Your Honor, we have photos uploaded.

16   I think there's one from 2005 and treatment began in 2010; so

17   it may be that we're within the calendar year, but not within,

18   you know, the five years of the day.  So I'd just like a short

19   amount of time to double-check that and confer with her.

20          I've heard Your Honor's admonition in past hearings

21   on different ways to cure photos; so I will certainly undertake

22   that in a short fashion.

23          THE COURT: Okay, Court is going to grant 15 days.

24          MR. DAVIS: Thank you, Your Honor.

25          THE COURT: Virginia Paley.


OFFICIAL TRANSCRIPT

1          MS. CALLSEN: Sorry, that's me.  Yeah, it's

2    authorizations.  This is a PFS insufficiency.  We don't have

3    authorizations.  We need CMO 12, and I believe that's about it.

4          MR. DAVIS: So CMO 12, we're working on it.  We'll

5    update defendants on that within a week.  We don't have final

6    proof yet on that.

7          As far as the authorizations go, it's been a bit of

8    difficulty with my client.  Her -- anyway, so we have had some

9    difficult communication there, but we've had communication

10   there.  So I'd just like a short amount of time; so we'll get

11   those uploaded.

12         MS. CALLSEN: With respect to the CMO 12, we don't

13   need the answer.  We just need documentation that you've

14   actually started the process.

15         MR. DAVIS: Okay, I'll double-check.

16         MS. CALLSEN: I'm not following what the issue is with

17   respect to authorizations.  I mean if we can't get signed

18   authorizations from your client, we can't collect the medical

19   records.

20         MR. DAVIS: Sure.  And so as far as the CMO 12, we'll

21   update you on that before the end of the week, probably today,

22   but before the end of the week if the Court would allow that.

23         As far as the authorizations, the list I have

24   referenced employment, worker's comp, disability, and her

25   health insurance.  With the exception of the health insurance

OFFICIAL TRANSCRIPT

1  which just needed to be witnessed, we provided a signed and

2  dated and auth, but it wasn't properly witnessed.  So we've

3  asked her to do that.

4      With regard to the rest, she's not making a claim for

5  lost wages.  She hasn't filed worker's comp.  She hasn't filed

6  disability.  So her position was that she didn't need to sign

7  any of those.  And so I don't think there's anything to be had

8  there, but if defendants want those so they can confirm there

9  was nothing done, she's agreed to provide those.  So we just

10 need a short time to actually provide them.

11      THE COURT: The Court is going to grant 15 days.

12      What's the matter, Ms. Callsen?

13      MS. CALLSEN: Thank you.

14      MR. DAVIS: Thank you, Your Honor.

15      MS. BRILLEAUX: The next case is Deborah Post also

16 with the TorHoerman Law Firm.  This, Your Honor, is a rollover

17 case.  We've actually addressed this one before at the

18 May 15th hearing.  This is no PFS submitted, including, all

19 of the attachments, and Counsel had told us last time that he

20 had contact with plaintiff in March.

21      MR. DAVIS: Yes, Your Honor.  So Ms. Post is the one

22 who in March, right around the time COVID was erupting,

23 informed us that she had pneumonia and wasn't able to complete

24 this and would follow-up with this.  Since then, you know, at

25 the last hearing, I told you we had tried to contact her

OFFICIAL TRANSCRIPT

1  multiple times, hadn't received a response, and I asked for the

2  Court to roll it over in case there were COVID complications we

3  could deal with that.

4        Now it's August.  She still hasn't responded.  We

5  have made numerous attempts.  Because I don't know about her

6  health, I would like more time to try and get that nailed down

7  one way or the other.  However, it's been many months now; and

8  if Your Honor feels like we need to move on, I certainly would

9  understand that.

10        THE COURT: I tell you what, she filed her lawsuit on

11  November 25th, 2019, shortly before COVID became a thing.  I'm

12  going to give her one more rollover, and then I'm going to

13  dismiss it if you're unable to complete this process with her

14  next time.

15        MR. DAVIS: Understood, Your Honor.  Thank you.

16        MS. BRILLEAUX: The next case, Your Honor, is

17  Francesca Cozza.  This is another rollover case.  The issue

18  here, though, is simply no CMO 12A process.

19        At the last hearing, we had the same issue, and

20  Counsel said on the record that they had sent us the initial

21  email getting the process started.  We still haven't received

22  anything, and we reached out to them specifically on this

23  issue.  There's really no reason that we should still be doing

24  this frankly.

25        THE COURT: Ms. Hennessy?  Ms. Hennessy?

OFFICIAL TRANSCRIPT

```
1          MS. HENNESSY: Can you hear me?

2          THE COURT: Yes, ma'am.

3          MS. HENNESSY: Yeah, I just realized today that it

4    looks like the email was sent to -- it was sent to all

5    defendants.  But as far as Sanofi, it looks like it might have

6    been sent to the previous email that was on CMO 12, not

7    CMO 12A.  It was updated with a different email as far as the

8    certification of our efforts to get PID.  So I can send that,

9    you know, to the correct email today.

10          And I'm not sure as far as Defense Counsel reaching

11   out to us regarding that, I'm not aware of that.

12          THE COURT: Well, it was -- you were on the list for

13   this last hearing; correct?

14          MS. HENNESSY: Yes, yes, Your Honor.  So at the last

15   hearing, we had said that we had sent the defendants an email

16   with our efforts on May 11^{th}, and Defense Counsel was going

17   to confirm that we did send that email.

18          Now it was our belief that -- because we did send

19   that email.  It just looks like it was to an incorrect, the old

20   address.  So we weren't aware that that didn't get sent or that

21   wasn't received.

22          THE COURT: Let me just stop this right here.  What is

23   the correct email address, Ms. Brilleaux?

24          MS. BRILLEAUX: Your Honor, I think that in CMO 12A,

25   the correct email is listed.  And gosh, I don't know it off the
```

OFFICIAL TRANSCRIPT

1   top of my head, but let me double-check.

2           MS. BARRIOS: We'll provide it to her, Your Honor.

3   We'll let her know.  We'll let Counsel know.

4           THE COURT: Okay, it's got to be done before 5:00

5   o'clock today.

6           MS. HENNESSY: Thank you.

7           THE COURT: And then I'm going to grant seven days for

8   the defendants to confirm compliance.

9           MS. HENNESSY: Thank you.

10          THE COURT: All right, so let's go to the next one.

11          MR. INSOGNA: Your Honor, the next case is Evelyn

12  Driggins.  We have no proof of use documentation and no CMO 12

13  documentation.

14          MS. HENNESSY: So Your Honor, we were working with the

15  client to obtain the medical records, and we had some requests

16  that came back denied.

17          However, we just recently, this week, realized that

18  or found out that the client is deceased.  She died

19  June 19th, 2020, and we just -- so I figured that out from

20  doing a Google search frankly.  So we haven't been contacted

21  by, you know, a representative of her estate.  We need to get

22  in contact with them to see how to proceed.

23          THE COURT: I'm going to grant 60 days to give you an

24  opportunity to contact the heirs and determine what their

25  wishes are and whether or not they want to continue.

                        OFFICIAL TRANSCRIPT

1          MS. HENNESSY: Thank you.

2          THE COURT: And then if they do, we need to get the

3    information filed.

4          MS. HENNESSY: Okay.

5          THE COURT: Amy Ikerd.

6          MS. CALLSEN: Yeah, this is there's no PFS.  We have

7    no PFS submitted at all.

8          MS. HENNESSY: So for Amy Ikerd, we were just recently

9    in contact with her.  She had been in the hospital for

10   six months.  She was in a bad accident.  So she was in the

11   hospital before that.  The last time we were able to get in

12   contact with her, it looks like it was May, and that's when she

13   told us that.

14         Since then, we haven't been able to get in contact

15   with her.  I don't know if it's related to the accident or

16   everything else that's going on.  But she was in the hospital

17   for six months this year, and that's been part of the --

18         THE COURT: But that was before May; right?

19         MS. HENNESSY: So we weren't able to get in contact

20   with her.  The first time we were able to get in contact with

21   her was in May, and she had been in the hospital for the past

22   six months.  After that, we had sent -- after that, we have not

23   been able to get in contact with her.

24         THE COURT: Ma'am, my question is:  When you contacted

25   her in May, was she in the hospital, or had she been

OFFICIAL TRANSCRIPT

1   discharged?

2           MS. HENNESSY: Let me double-check the note.  The note

3   I have here just says that she had been in it for the

4   six months, had been in the hospital.  So at that point, she

5   may have been.

6           MS. CALLSEN: Can I also just ask if she indicated

7   whether she wanted to pursue this lawsuit that was filed?

8           MS. HENNESSY: Yes, she did.  And she asked if we

9   could resend her the PFS to, I believe it was a different

10  address as well as the one we had sent the original one, and so

11  we re-sent the PFS.  And since, we have been contacting her,

12  following up on that, but have not been able to get in touch

13  with her.

14          THE COURT: I'm going to roll this one over just to

15  see where Ms. Ikerd's status is.

16          MS. CALLSEN: Okay.

17          THE COURT: All right.  Lisa Kelzer.

18          MS. CALLSEN: Lisa Kelzer, again, no PFS received

19  either on this plaintiff.

20          MS. HENNESSY: So Kelzer, Your Honor, we have been

21  trying to get in contact with her for quite a while and have

22  not been able to.  So we understand if this case is dismissed.

23          THE COURT: The Court is going to dismiss this case

24  for plaintiff's failure to comply.

25          Michelle Litterio.


                         OFFICIAL TRANSCRIPT

1        MS. CALLSEN: The same thing, we have no PFS.

2        MS. HENNESSY: For this client, we were in contact

3   with her as recent as May 26th, 2020, and we -- she asked

4   that we re-send her the PFS.  Since then, we have not been able

5   to get in contact with her.  I have no, you know, indication in

6   the notes of, you know, any issues or why we or know why she

7   might not be responding.

8        But as recent as May 26th, 2020, she said that she

9   did want to participate in litigation, and we resent her that

10  PFS.  But we have not been able to get in contact with her

11  since.

12       THE COURT: What attempts have you made to get in

13  touch with her?

14       MS. HENNESSY: Since May 26th, we have, it looks

15  like, left her multiple voicemails as well as have sent her

16  emails letting her know that, you know, she needed to get us

17  the PFS back.  But we have had no contact, no response.

18       THE COURT: Okay.  So then dismiss this matter with

19  prejudice.

20       MS. CALLSEN: Thank you.

21       MS. BRILLEAUX: Thank you, Your Honor.  The next case

22  is Karen Mcknight, and the deficiency here is no signed PFS

23  declaration, no proof of use, no before photos, and no after

24  photos.

25       THE COURT: Ms. Hennessy.


                    OFFICIAL TRANSCRIPT

 1          MS. HENNESSY: So for Karen Mcknight, I believe there
 2   was a PFS submitted.  I think it was marked as not
 3   substantially complete.  Is that correct, Defense Counsel?
 4          MS. BRILLEAUX: Yes.  So Counsel, the deficiency is no
 5   signed PFS declaration, no proof of use, no before photos, and
 6   no after photos.
 7          MS. HENNESSY: We've been working with this client to
 8   get medical records.  And a lot of the, I believe, deficiencies
 9   in the PFS is regarding medical record dates which once we get
10   those records, you know, that should resolve those issues.
11          The requests that we had sent, we sent them to a
12   couple different providers.  They're coming back denied.  We're
13   in contact with the providers to see what is going on.
14          And we were unable to get in touch with the client
15   for a period.  We have been in touch with her this past week.
16   She is undergoing chemo again since March.  She has said
17   we're -- she's going to try to get the records herself as well
18   as we sent another request this week to the pharmacy for the
19   providers, the specific pharmacy.  And we're hoping that that
20   may come back with some records.  But the client also is
21   contacting the providers to try to get these records herself.
22          THE COURT: What about the photographs?
23          MS. HENNESSY: The photographs, she also said that she
24   will work to get that.  She's going to get us the before
25   photographs.  That was from the conversation this week.  As far

                          OFFICIAL TRANSCRIPT

1  as current photographs, she is undergoing chemo; so she is --
2  her hair is balding currently.
3          THE COURT: All right, I'm going to give you some
4  time.  Because if she's undergoing chemo, it's going to be
5  difficult to get all of this together.  Let's roll this one
6  over to next time as well.
7          MS. HENNESSY: Thank you, Your Honor.
8          THE COURT: Okay, thank you.
9          Before we do the Bachus & Schanker, can we go back to
10 the three we passed over because maybe we just discovered how
11 to star 6 to unmute?  And that would be, the first one, Bailey
12 & Greer for Sylvia Cunningham.
13         Mr. Montgomery, are you on the line?
14         MR. MONTGOMERY: Your Honor, I am.  And I'm sorry I
15 didn't -- I called the wrong number earlier.  I really do
16 apologize.
17         THE COURT: Well, that's okay.  We thought you just
18 didn't know how to unmute your phone because we learned that
19 today.
20         Okay, Ms. Brilleaux.
21         MS. BRILLEAUX: Yes, the deficiency for this case,
22 Your Honor, is that we did not receive the Court-approved
23 authorizations that are attached to the Plaintiff Fact Sheet.
24         MR. MONTGOMERY: Those were uploaded on Monday, this
25 past Monday.

OFFICIAL TRANSCRIPT

1          THE COURT: The Court is going to grant seven days to

2     confirm compliance.  Thank you.

3          MR. MONTGOMERY: Thank you, Your Honor.

4          THE COURT: All right, No. 6 on the list is Danah

5     Garver.  That's Amber Parra with Justinian & Associates.

6     Ms. Parra, are you on the line?

7          MS. PARRA: Yes, Your Honor.  Can you hear me, Your

8     Honor?

9          THE COURT: We can.  We just needed to learn how to

10    unmute these phones.

11         MS. PARRA: Yes, ma'am.

12         THE COURT: Ms. Brilleaux.

13         MS. BRILLEAUX: Yes, the deficiency is no PTO 71A

14    certification.

15         MS. PARRA: Your Honor, we had some issues with this

16    client.  She wasn't quite sure how to do things.  We had some

17    issues getting the information.  We finally were able to get a

18    family member over there, and her daughter is working with her

19    right now.  And I do apologize that it took us so long to be

20    able to get this.  But we do anticipate being able to get that

21    done and uploaded today.

22         THE COURT: Okay, I'm going to give you seven days,

23    Ms. Parra, to get this done and then allow defendants

24    seven days to confirm compliance.

25         MS. PARRA: Thank you, Your Honor, I appreciate it.

                        OFFICIAL TRANSCRIPT

```
 1                THE COURT: Okay, and then we have Annette Poirier.
 2     This is No. 7 on the list, and it's Law Offices of Tony Seaton,
 3     and this is Mr. Smith.  Mr. Smith, are you on the line?
 4                MR. SMITH: Yes, Your Honor.  Can you hear me?
 5                THE COURT: I can.
 6                MR. SMITH: That's great.  The star 6 really messed us
 7     up; so I'm happy we got through.
 8                THE COURT: Me too.
 9                MS. BRILLEAUX: And Your Honor, the deficiency here is
10     the same, no PTO 71A declaration.
11                MR. SMITH: Yes, Your Honor.  Unfortunately,
12     Ms. Poirier, we found out subsequently, passed away in May.  We
13     have gotten in contact with her fiancé at the time, and he's
14     going through the probate process to become her representative.
15     We think that will happen pretty soon.  He provided all the
16     photographs that we recently uploaded.  So the only thing left
17     is to sign off on the PTO 71.  We think it will happen pretty
18     soon.
19                THE COURT: All right, I'm going to grant -- I tell
20     you what, I'm going to grant you 60 days just to make sure all
21     of the probate process is completed, and we'll get this done.
22                MR. SMITH: Okay, thank you, Your Honor.
23                THE COURT: Now we go to Bachus & Schanker; right?
24                MS. CALLSEN: Yes.  The first one is Carol Jean
25     Delores Henderson, and we don't have any before photos.  There
```

OFFICIAL TRANSCRIPT

1  were before photos uploaded, but they're quite dated, more than
2  like 20 years before she had chemo.

3          THE COURT: Mr. Elliott?

4          MR. ELLIOTT: Yes, Your Honor.  Chris Elliott for
5  Bachus & Schanker.  Delores Henderson, suit was filed in
6  October of 2019.  She did provide us two before photos.  We
7  realize they're not within the five years.  We were going to
8  ask for the 14 days to allow her to get with more family.

9          We did ask her if she had an old driver's license,
10 any other type of ID that she could find.  She was unable to
11 locate any of those.  But we'd just like to see if there's
12 neighbors or family that can help us.  And she's willing to
13 participate.  Otherwise, this is -- everything is in the file
14 that's needed at this time.  So it's just the before photo.

15         THE COURT: Okay.  The Court is going to grant
16 30 days.  Let's roll this one over to do a photo search.

17         All right, next one, Cheryl DiDonato.

18         MR. INSOGNA: Yes, Your Honor, Cheryl DiDonato.  In
19 this case, we have no Plaintiff Fact Sheet or any of the other
20 required documentation.

21         MR. ELLIOTT: We just recently located a new address
22 for her.  This case was filed recently.  She's a newer client.
23 This was filed in December 2019.

24         We sent a representative to the new location.  It's
25 actually a gated community.  We'd like one last attempt to send

OFFICIAL TRANSCRIPT

1  another letter to the new address to see if she responds; and

2  if not, then obviously, we file a dismissal.  But we'd just

3  like a little bit more time to try and get ahold of her given

4  that we didn't have the correct address.

5           THE COURT: Okay, we'll roll this one over until next

6  hearing.

7           MR. INSOGNA: Thank you, Your Honor.

8           MS. BRILLEAUX: The next case, Your Honor, is Daisy

9  Doucet, and this is a rollover case a couple times over.  This

10 is a case that's been pending since 2017 with no proof of use

11 and still nothing received.

12          MR. ELLIOTT: Yes.  Ms. Doucet is adamant she wants to

13 participate.  This has been on the docket several times.  She

14 says she's been wanting to go out to her storage facility, but

15 there's heavy furniture in there.  She can't get into --

16          THE COURT: Mr. Elliott, stop.  I'm really having

17 trouble understanding you.

18          MR. ELLIOTT: Sorry.  Can you hear me now?

19          THE COURT: Better, yes.

20          MR. ELLIOTT: Okay, sorry about that.  It might have

21 been because I was on speakerphone.

22          Anyway, this client wanted to go out to her storage

23 facility.  She went out there.  There was heavy furniture.  She

24 wasn't able to move it around.  She thinks there's medical

25 records in there.  I think we've done everything we can at this

1  point to get her to get the records.  We have not been
2  successful in doing such.

3          Maybe a brief extension, but I, you know, she's
4  showed up a couple times now.  We did tell her, though, given
5  she wants to participate, that I would come back up at this
6  hearing and ask for an extension of time for her.  But you
7  know, there's not much more for me to argue at this point given
8  she's been on the docket a couple times now.

9          THE COURT: Okay, okay.  What is it that's missing,
10 medical records?

11         MS. BRILLEAUX: So it's no proof of use of docetaxel
12 of any kind, nothing.

13         MR. ELLIOTT: Right, so she's -- we mailed a letter to
14 the oncologist, the facility.  They couldn't get it.  But she
15 thinks she may have some type of record.  There are medical
16 records in her storage unit which she is elderly and not able
17 to get to because of some heavy furniture.  That's the notes
18 that I have here.

19         MS. BRILLEAUX: Your Honor --

20         MR. ELLIOTT: But I do realize this has been on the
21 docket a couple times now.

22         MS. BRILLEAUX: Sorry to interrupt, Mr. Elliott.

23         I just wanted to note, Your Honor, that the plaintiff
24 submitted a statement that we received June 1st of this year
25 requesting more time to obtain proof of use.  And in that

                    OFFICIAL TRANSCRIPT

1    statement or affidavit, she stated that she received records

2    from the healthcare provider, but they were for the wrong

3    medication.  And it indicates that a record was attached, but

4    no record was uploaded.  So I'm just --

5            THE COURT: All right.  This matter is going to be

6    dismissed with prejudice.  It's been on this call docket for

7    too many times.  And unfortunately, she's got to submit proof

8    of use.

9            Okay, Cathy Estell.

10           MS. BRILLEAUX: Yes, Your Honor, this is also no proof

11   of use.

12           MR. ELLIOTT: I think this is cured.  We sent a cure

13   July 29th, 2020.  Proof of use was uploaded, 6/19/2020.  Also

14   uploaded before photos on 6/16/2020.  Let's see, chemo was in

15   2007; so we believe the photos that we uploaded did qualify.

16           MS. BRILLEAUX: Counsel, I note that you said photos.

17   This is proof of use; so we need medical records.

18           MR. ELLIOTT: Oh, I see that that was uploaded on

19   6/19/2020.  I can go into MDL Centrality and look.

20           THE COURT: Okay, I'm going to grant seven days for

21   defendants to confirm compliance.

22           MS. BRILLEAUX: Your Honor, just for the record, we've

23   received a photograph of a letter from a doctor.  And it's

24   defendant's position that medical records are required to

25   establish proof of use, and a photograph of a letter is not

OFFICIAL TRANSCRIPT

1 sufficient.

2         THE COURT: What's the letter say?  I mean it's not a

3 record?

4         MR. ELLIOTT: It's a letter from her doctor.  Let me

5 see if I can pull it up, Your Honor.

6         MS. BRILLEAUX: Your Honor, it is from a doctor who

7 is, you know, ostensibly a doctor who is treating plaintiff,

8 but it's not the doctor who treated her for cancer.  It's from

9 ten years after her chemotherapy treatment.

10         THE COURT: Mr. Elliott, is this her treating

11 oncologist that prescribed and saw that the Taxotere was

12 administered?

13         MR. ELLIOTT: So this says here, Your Honor, it's a

14 letter from Palo Alto Medical Foundation.

15         THE COURT: That's not the question.  The question is:

16 Was this her treating --

17         MR. ELLIOTT: I just wanted to read --

18         THE COURT: Let me finish, please.  Was this her

19 treating oncologist?

20         MR. ELLIOTT: I don't know the answer to that

21 question.  It says, "Cathy Estell is a patient of mine.  She

22 began chemotherapy for breast cancer December 27, 2007 with

23 Taxotere, Adriamycin, and Cytoxan.  After completing that, she

24 had five cycles of Taxotere and Cytoxan.  And after radiation

25 treatment, she took Tamoxifen for five years.  Should you have

1    any questions, please contact our office."

2              Without digging in the file further, Your Honor, I

3    couldn't tell you if this is her treating oncologist or not.

4              MS. BRILLEAUX: Your Honor --

5              THE COURT: I'm curious how he knows that if he

6    doesn't have access to her records.  And if he has access to

7    her records, that's what you need to get.

8              MR. ELLIOTT: Yes.  Yeah, we realize that.  So if you

9    would like, maybe give us more time.  This file, I mean, other

10   than this issue, this file has everything in it that they need.

11             THE COURT: No, I understand that.  I understand that.

12   But proof of whether or not she took this drug is pretty

13   critical; so you need to get the medical records.  And you

14   know, I'll give you another 30 days to show what attempts have

15   been made to retrieve the medical records and attach them.

16             MR. ELLIOTT: Okay.  Your Honor, I would just like to

17   add, I don't know if within that amount of time I can get them.

18             THE COURT: I tell you what, in that amount of time,

19   you can tell us what you have done, what steps have been

20   taken --

21             MR. ELLIOTT: Okay, that's fine.

22             THE COURT: -- to get the medical records.

23             MR. ELLIOTT: Okay.  All right, we'll do our best.

24             MS. BERG: Your Honor, Claire Berg.  May I just

25   suggest to Mr. Elliott that he request health insurance and

OFFICIAL TRANSCRIPT

1  billing records as well to help proof of use?

2          MR. ELLIOTT: Yeah, we can do that as well.  That's

3  not a problem.

4          THE COURT: They have a huge inventory of cases, and

5  this should be something that they can do, Ms. Berg.

6          All right, Joyce Glover.

7          MS. BRILLEAUX: I think next we have Virginia Gaskin.

8          THE COURT: Oh, I'm sorry, I must have passed up --

9  wait a minute.

10          Okay, what do we have for Ms. Gaskin?

11          MS. BRILLEAUX: Gaskin is no before photos and no

12  after photos.

13          THE COURT: Photos, all right.  Mr. Elliott.

14          MR. ELLIOTT: It says yesterday we did upload before

15  photos taken in the years 2007 and 2008.  Her chemo did start

16  in 2010.  So that one, we believe, is cured.

17          The after photos were uploaded August 3rd.  And a

18  First Amended Plaintiff Fact Sheet was filed the same day.  So

19  we believe that this is now cured.

20          THE COURT: Okay, the Court is going to grant

21  seven days to confirm compliance.

22          Now there's Joyce Glover.

23          MS. BRILLEAUX: Yes, Your Honor.  For Joyce Glover,

24  this is another proof of use, and another case that's been

25  pending since 2017.


                    OFFICIAL TRANSCRIPT

```
 1            THE COURT: Wait, I'm sorry, no proof of use and what?
 2            MS. BRILLEAUX: And the case has been pending since
 3    2017.
 4            THE COURT: Oh, okay.
 5            MR. ELLIOTT: My notes, Your Honor, and I'll pull it
 6    up on Centrality, is that we uploaded proof of use from Temple
 7    University Cancer Center, and it says she took Taxotere.  So I
 8    don't know what the issue is on this one.  I can pull it up on
 9    Centrality.
10            THE COURT: Do you know when that was uploaded?
11            MR. ELLIOTT: I don't have the date of that in my
12    notes, but let me see if I can pull it.
13            MS. BRILLEAUX: And Your Honor, the issue with this is
14    that the documents ostensibly constitute proof of use is a
15    consent form that was signed by a plaintiff.  It's not a
16    medical record that shows that Taxotere or docetaxel was
17    administered.  So it's defendant's position that, you know, a
18    plan of treatment is not proof of use of administration of
19    docetaxel.
20            THE COURT: Mr. Elliott.
21            MR. ELLIOTT: Yeah.  For some reason, it's not
22    opening.  I did get in Centrality.  I do see proof of use was
23    uploaded back in 2018, June of 2018.  But I cannot open the
24    document; so I don't know what she's referring to.
25            THE COURT: Okay.  Well, this is the deal.
```

1          MR. ELLIOTT: It's not letting me open it.

2          THE COURT: A prescription is not proof of use.  It's

3  proof of a prescription.  So since we don't know what the issue

4  is and then what defendants are saying and you're telling me,

5  no, we've already uploaded proof of use, I'm going to roll this

6  over since we can't get into Centrality.

7          Gwendolyn Grady.

8          MS. BRILLEAUX: Yes, Your Honor, this is no before

9  photos.

10          MR. ELLIOTT: We're going to ask for 14 days, Your

11  Honor.  Ms. Grady would like more time.  She's been looking,

12  has not been able to locate any photos to date.  And we talked

13  with her before this hearing, and she just would like at least

14  another couple weeks to see if she can come up with something.

15          THE COURT: I'll grant 15 days.

16          All right, Barbara Harnisch.

17          MS. BRILLEAUX: Yes, Your Honor.  This deficiency was

18  a PTO 71A deficiency, but a sort of unusual one.  Plaintiff's

19  counsel had uploaded in February of this year a 71A

20  certification signed by the plaintiff in December of 2019, but

21  what was missing was counsel's signature which is also a

22  required part of the order.

23          On Monday of this week or yesterday, it was

24  re-uploaded, signed by counsel and dated as signed by counsel

25  in December of 2019.  So you know, don't know why we haven't

OFFICIAL TRANSCRIPT

1    had this certification before.

2         THE COURT: Well, do you have it now?

3         MS. BRILLEAUX: We do.  We have it now.

4         THE COURT: All right.  Well, then I don't want to

5    talk about it.  If we have it, let's move on.

6         MS. BRILLEAUX: Okay.  The next case is Lofton

7    Jackson, and this is no before photos from within five years of

8    treatment.

9         THE COURT: Okay.

10        MR. ELLIOTT: My notes say that before photos dated

11   with the revised date and was uploaded on 5/26/2020.  Plaintiff

12   states that photo was taken in 1995.  Plaintiff apologizes.

13   She made a mistake in the dates of the photo.  The before photo

14   uploaded with her in the white dress to the left is the only

15   photo she can locate.

16        We ask the Court that she be allowed to provide an

17   affidavit of some kind because she's done everything else she

18   possibly can to locate a photo, a before photo within

19   five years, but that's all that she has.

20        THE COURT: Is there some reason she has no

21   photographs other than she doesn't like to take pictures?

22        MR. ELLIOTT: I don't have -- it doesn't say anything

23   about a house, you know, fire or any natural disaster or

24   anything like that as to why the only photo she has from before

25   is from '95.

OFFICIAL TRANSCRIPT

```
 1              And you know, when we get to this point of an
 2    affidavit, I mean we're beating a dead horse with her.  We've
 3    asked her, you know, every which way, where to look and who to
 4    talk with.  And so we're at the end of the road here.  She's
 5    got this one photo, and she's asking the Court if she can
 6    provide an affidavit.  That's where we're at.
 7              THE COURT: And that photo was how long before
 8    chemotherapy?
 9              MR. ELLIOTT: I can look that up.
10              MS. BRILLEAUX: Counsel, I have here that chemotherapy
11    was in 2009.
12              THE COURT: 2009, and you know when the photograph
13    was?
14              MR. ELLIOTT: '95.
15              MS. BRILLEAUX: 14 years.
16              MS. BARRIOS: Your Honor, would you like us to take a
17    shot with Mr. Elliott and deal with the plaintiff?
18              THE COURT: Please.  And roll over and see.  We'll
19    roll it over until next time.  Yes, Ms. Barrios, please try.
20              Okay, Betty Mobley.
21              MS. BRILLEAUX: Yes, Your Honor, this is no before
22    photos.
23              MR. ELLIOTT: This is the same situation, Your Honor.
24    I really hate to ask the Court this.  This is another one.
25    She's unable to locate a before photo.  She's asked family.
```

OFFICIAL TRANSCRIPT

1  She's asked friends, neighbors, I mean no driver's license

2  within five.  It's just one of those situations.  Again, we're

3  asking if we could provide an affidavit and if Ms. Barrios

4  wants to --

5          THE COURT: I'm going to send you to Ms. Barrios, and

6  they will roll it over.

7          MR. ELLIOTT: Okay, okay, sounds good.  Thank you.

8          MS. BARRIOS: Judge, the way you said that, it sounds

9  like I'm going to beat him.

10          THE COURT: You just kind of have that teacher face.

11          MR. ELLIOTT: I probably deserve it.

12          THE COURT: Okay.

13          MS. BRILLEAUX: Kristen Schroeder, Your Honor, and

14  this is no PFS submitted with no declaration, proof of injury,

15  proof of us, all of the above.

16          MR. ELLIOTT: Actually, we were able to upload a

17  Plaintiff Fact Sheet August 4th, so yesterday.  We uploaded

18  all the necessary court documents and photos as well.  So we

19  believe -- we sent a cure notice late on this one.

20          THE COURT: All right, I'm going to grant seven days

21  for defendants to confirm compliance.  Okay.

22          MS. BRILLEAUX: Okay, the next one is Sheila Stubbs.

23  This is another no proof of use.  And Counsel, I recognize that

24  something has been submitted.  But this is very similar to the

25  other cases we've discussed today, and it's not a medical

OFFICIAL TRANSCRIPT

```
 1  record.
 2           MR. ELLIOTT: Well, this one actually came from
 3  insurance showing proof.  I mean the issue in some of these
 4  cases, the facilities will destroy records, and then you got to
 5  find some other way to prove it up.  And I'd hate to have a
 6  case dismissed.  I mean this is from her insurance company
 7  showing she took the docetaxel.  So I think it's sufficient
 8  proof.
 9           MS. BRILLEAUX: And Counsel, I recognize that it's
10  from the insurance company, but it's not an insurance billing
11  record.  I would just ask if those have been requested?
12           THE COURT: What is it that you got from insurance if
13  it wasn't billing records?
14           MR. ELLIOTT: Oh, I don't -- I'd have to look back.  I
15  don't want to waste too much time.
16           THE COURT: Ms. Brilleaux, what was it?  No, I'm
17  asking Ms. Brilleaux.  What was it?
18           MR. ELLIOTT: Oh, okay.
19           MS. BRILLEAUX: It's a fax, Your Honor, from Aflac,
20  and it just has a sentence about -- which mentions docetaxel.
21  But it's just a faxed letter with, you know, no discernible
22  author and no actual, you know, a billing record that we would
23  typically see.
24           THE COURT: All right.  Mr. Elliott, I'm going to pass
25  this one over for the 30 days, and I want you to -- I think
```

OFFICIAL TRANSCRIPT

1   you're going to need to give us what efforts you've made to

2   obtain the billing, the medical records and the billing

3   records.

4           MR. ELLIOTT: Okay, that's not a problem.

5           THE COURT: Okay, thank you.

6           MS. BRILLEAUX: Thank you.

7           The last one, Your Honor, is Rosalie Watkins, and

8   this is no proof of use and no HIPAA authorization.

9           MR. ELLIOTT: No proof of use, let me see here.  Proof

10  of use was uploaded July 28th, 2020.  Before photo was taken

11  in 2007 which was within five years.  That was also uploaded in

12  July of this year.  We believe the photo does qualify.  Present

13  day photos were uploaded the 28th of July as well.  An

14  Amended Plaintiff Fact Sheet was filed yesterday.  We believe

15  it is substantially complete and now cured.  We did send a cure

16  notice on this, but it was late yesterday.

17          THE COURT: Okay, the Court is going to grant

18  seven days to confirm compliance.

19          MS. BRILLEAUX: I'm sorry, Your Honor.  The photos

20  were not at issue here.  The issue was the proof of use which

21  is the issue with the record and then no authorization, HIPAA

22  authorization.

23          THE COURT: I thought he said the authorization was

24  submitted this week?

25          MR. ELLIOTT: Yeah, we submitted a HIPAA, uploaded it

OFFICIAL TRANSCRIPT

1   August 3rd, and the proof of use was uploaded on July 28th.

2          MS. BRILLEAUX: So the proof of use, Your Honor, it's

3   a very similar issue that we've talked about today.  It's an

4   FMLA form.  It's not a medical record or an insurance billing

5   record.

6          MR. ELLIOTT: So again, yeah, we can provide our

7   efforts to obtain the proof of use through the normal channels

8   of medical records and billing and things like that.

9          THE COURT: Yeah, because I want to make sure I

10  understand what efforts have been made.  Before we look to any

11  secondary sources, that we go directly to the medical records.

12  And so, you know, we can consider other sources after we

13  have --

14          MR. ELLIOTT: Exhausted the other ones.

15          THE COURT: -- pursued every avenue.  Let me just do

16  it that way.  It doesn't mean that it's necessarily going to be

17  satisfactory, but I need to know that every effort has been

18  made.

19          MR. ELLIOTT: Yes, Your Honor.

20          MS. BRILLEAUX: And Your Honor, we did receive the

21  billing records, but they do not evidence docetaxel use.  And

22  so we're just missing any proof of use on it at this point.

23          THE COURT: Well, that can be problematic, so.

24          MR. ELLIOTT: We'll keep -- we'll show you, Your

25  Honor.


                         OFFICIAL TRANSCRIPT

```
 1              THE COURT: I think you told me that you've uploaded
 2     all of this.  I've put the ball back in defendant's hands
 3     because as I appreciate it things were uploaded within the last
 4     week.  I'm going to give you seven days to confirm compliance.
 5     If it's not in compliance, then we'll have to take it back up.
 6              MR. ELLIOTT: Okay, sounds good.  Thank you, Judge.
 7              THE COURT: Okay, all right.
 8              MR. ELLIOTT: I think that's it for Bachus.
 9              THE COURT: Thank you.  At least, the list is getting
10     smaller.
11              MS. BARRIOS: Your Honor, might I offer a suggestion
12     to even make the list smaller?  I notice there's so many people
13     who upload, say, the day before or that morning, and you have
14     to give them seven days.  I'm wondering if we can have -- I'll
15     talk with the defendants -- but we could have some little
16     proceeding without you, but with Defense Counsel, myself,
17     Mr. Lambert, Ms. Berg, and the plaintiff's lawyer so that they
18     can look before we come to you.
19              MS. CALLSEN: We don't have time.
20              THE COURT: The only problem with that, Dawn, is you
21     were up until 11:30 last night because they won't do it ahead
22     of time.
23              MS. BARRIOS: I'm just trying to take something off
24     your plate if we possibly can.
25              THE COURT: Listen, I want everything off my plate if
```

OFFICIAL TRANSCRIPT

1  we possibly can.  But I'm just trying to figure out when you

2  would do it because it just seems regardless of what we say,

3  it's all for nothing.  Off the record.

4                    (An off-the-record discussion was held.)

5           THE COURT: Thank you-all.  We should have picked

6  another date for our next status conference.  Dawn and Palmer,

7  you should get with Doug and John, and we need to put that on

8  the calendar.

9           MS. BARRIOS: Yes, ma'am.

10          THE COURT: Okay, thank you.

11                    (Whereupon this concludes the proceedings.)

12

13

14                         **CERTIFICATE**

15

16

17       I, Alexis A. Vice, RPR, CRR, Official Court Reporter for

18  the United States District Court, Eastern District of

19  Louisiana, do hereby certify that the foregoing is a true and

20  correct transcript, to the best of my ability and

21  understanding, from the record of the proceedings in the

22  above-entitled and numbered matter.

23

24                         */s/Alexis A. Vice, RPR, CRR*
                         Alexis A. Vice, RPR, CRR
25                       Official Court Reporter


                    OFFICIAL TRANSCRIPT