UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　MDL No. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO:
*Juanita Greer*, Case No. 2:18-cv-11728

**PLATINIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT
ON THE PLEADINGS BASED ON THE STATUTE OF LIMITATIONS**

MAY IT PLEASE THE COURT:

　　　　Plaintiff, Ms. Greer, timely filed her Short Form Complaint in 2018, which was within three years of discovering that her hair loss was permanent. As established in the pleadings, Ms. Greer thought her hair loss would be temporary—a common side effect of the chemotherapy she received in 2009. She reasonably believed that her hair would grow back based on continued communications with her healthcare providers and her usage of vitamins and topical ointments to encourage hair growth. It was not until May 2016 that Ms. Greer learned of the permanent nature of her hair loss caused by Taxotere from an attorney advertisement. Prior to that, and as also alleged in the pleadings, Sanofi had taken affirmative steps to fraudulently conceal the risk of permanent hair loss associated with Taxotere. Accordingly, and as explained in more detail below, two independent bases exist to support the tolling of the applicable statute of limitations and denial of Sanofi's Motion: (1) the discovery rule and (2) fraudulent concealment.

**I.　　FACTUAL BACKGROUND**

　　　　Ms. Greer filed her initial Short Form Complaint on November 29, 2018 in her individual docket.[1] In it, Ms. Greer states that she received chemotherapy treatment including brand-name

---

[1] Dkt. 2:18-cv-11728, Rec. Doc. 1.

1

Taxotere from approximately September of 2009 to October of 2009.[2] Ms. Greer goes on to state that her "permanent injuries were latent, unknown or otherwise undiscoverable as they were disguised by the anticipated temporary hair loss associated with chemotherapy treatment."[3] Ms. Greer further asserts that she "was told by her healthcare providers before and during her treatment for cancer to anticipate temporary hair loss but that her hair would grow back."[4] Ms. Greer did not know until May 2016 that chemotherapy could cause permanent hair loss, and was unaware of any definition of permanent hair loss[5]. Ms. Greer recalls consultations with her healthcare providers concerning her hair loss and regrowth, which includes conversations that occurred following six months after her completion of chemotherapy treatment,[6] and at no point did they tell her hair loss was permanent.[7]

On June 29, 2020, Plaintiffs filed a Motion for Leave to Filed Amended Short Form Complaints of Bellwether Pool Plaintiffs.[8][9] In it, Ms. Greer offered an Amended Short Form Complaint clarifying that she "first suspected that her hair may not regrow on or around May of 2016 when her daughter saw advertisements concerning Taxotere and permanent hair loss."[10] Further, Ms. Greer stated that she recalled "complaining to at least one, if not more, male

---

[2] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ 10.
[3] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ ff.
[4] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ gg.
[5] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ hh.
[6] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ kk.
[7] Master Dkt., Rec. Doc. 10668 ¶ 13 d.
[8] Master Dkt., Rec. Doc. 10668.
[9] Master Dkt. Rec. Doc. 10338. PTO 105 was filed on March 11, 2020. In PTO 105, the Honorable Judge Milazzo discusses what allegations will be permitted in amendments to the short form complaint. Namely, "Plaintiffs may amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." *Id*. Plaintiff filed her motion to amend her short form complaint prior to Sanofi's filing of the motion for summary judgement on the pleadings. While Plaintiff primarily uses information contained in the pleading of her initially filed Short Form Complaint, which is cited to herein as Dkt. 2:18-cv-11728, Rec. Doc. 1, Plaintiff additionally cites to her offered Amended Short Form Complaint, which is cited herein is as Master Dkt., Rec. Doc. 10668. Plaintiff has attempted to limit inclusion only to paragraphs of her Amended Short Form Complaint which she believes are permitted in accordance with PTO 105. To exclude such information, which Plaintiff offered as an amendment to her pleadings prior to the filing of Sanofi's motion, would unfairly and unnecessarily prejudice Plaintiff.
[10] Master Dkt., Rec. Doc. 10668-6 ¶ 13 c.

oncologists at Jefferson Medical Associates that her hair was not growing back. This conversation occurred some months after she discontinued use of Taxotere to present. The male doctor did not have any reasons as to why Plaintiff's hair was not growing back."[11] From discontinuation of Taxotere to present, Ms. Greer participated in treatment and care for her hair loss, including trying topical solutions and vitamins in order to promote hair growth.[12] Prior of May of 2016, when Ms. Greer's daughter informed her of advertising concerning Taxotere and permanent hair loss, Ms. Greer "always expected, waited and hoped her hair would re-grow."[13]

## II. LEGAL STANDARD

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Edionwe v. Bailey*, 860 F.3d 28c, 291 (5th Cir. 2017) (quoting *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (alteration in original) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "A statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), but the defense is subject to the traditional rule that the motion cannot be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Cross v. Lucius*, 713 F.2d 153, 156 (5th Cir. 1983) (quoting *Abdul-Alim Amin v. Universal Life Insurance Co.*, 706 F.2d 638, 640 (5th Cir.

---

[11] Master Dkt., Rec. Doc. 10668-6 ¶ 13 d.
[12] Master Dkt., Rec. Doc. 10668-6 ¶ 13 f.
[13] Master Dkt., Rec. Doc. 10668-6 ¶ 13 g-h.

3

1983)). In cases where there is a strong dispute over the applicability of the discovery rule, the issue should be determined by a jury. *Miss. Valley Silica Co. Inc. v. Barnett*, 227 So. 3d 1102, 1119 (Miss. Ct. App. 2016).

### III. ARGUMENT

For product liability actions, Mississippi law provides a three-year statute of limitations. Miss. Code. Ann. § 15-1-49(1). This limitations period can be tolled under Mississippi's "discovery rule" for latent injuries, which suspends the statute of limitations until the plaintiff "can reasonably be held to have knowledge of the injury or disease.'" *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (quoting *Owens–Illinois, Inc. v. Edwards*, 573 So.2d 704, 709 (Miss. 1990); Miss. Code. Ann. § 15-1-49(2). Like the discovery rule, fraudulent concealment also tolls the three-year limitations period until the claim is discovered or should have been discovered. Miss. Code. Ann. § 15-1-67.

Here, Sanofi cannot meet its burden to show that it is "beyond doubt that the plaintiff can prove no set of facts" to support tolling of the statute of limitations. The allegations set forth in Ms. Greer's Amended Short Form Complaint, when "construed … in the light most favorable to plaintiff," provide ample basis to support tolling under the discovery rule as Ms. Greer, despite her due diligence in questioning her physicians, believed her hair loss to be temporary until she became aware of an attorney advertisement in May 2016. Likewise, the claim of fraudulent concealment as set forth in the Amended Master Complaint, which the court sustained over Sanofi's prior attempt to dismiss, provides another, distinct basis to support tolling of the statute of limitations. As explained in more detail below, it is for these reasons that Sanofi's Motion should be denied.

### A. Ms. Greer Alleges Facts Sufficient to Support the Application of Mississippi's Discovery Rule for Latent Injuries

In Mississippi, "[t]he discovery rule's application has been greatly expanded over time." *Lowery*, 909 So. 2d at 50.  For product liability and negligence actions, the discovery rule should only be applied in cases involving latent injuries. *Id.* A latent injury is defined as one where the "plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question ... [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 168 (Miss. 1999); *see also Neglen v. Breazeale*, 945 So.2d 988, 991 (Miss. 2006); *Lowery*, 909 So. 2d at 50; *Punzo v. Jackson County*, 861 So. 2d 340, 346 (Miss. 2003); *Milam v. Kelly*, 282 So. 3d 682, 688 (Miss. Ct. App. 2019).

Sanofi claims that Ms. Greer's hair loss is obvious such that her injury could not be considered latent.  This ignores, however, the distinction between temporary hair loss—a common result of chemotherapy—and permanent hair loss—an unexpected, unwarned of injury that Sanofi continues to claim its product does not cause.  While both involve hair loss, it is the difference between temporary and permanency that makes her injury latent—one is expected and the other is not.  The Fifth Circuit recognized this distinction in the context of maritime injuries, stating "[w]hile the disability due to one injury may be immediately appreciated, the existence and consequences of another injury may be unknown for months or years thereafter. The claim for the unknown injury is not barred by the passage of one year." *Marathon Oil Co. v. Lunsford*, 733 F.2d 1139, 1142 (5th Cir. 1984);[14] *see also Clay v. Union Carbide Corp.*, 828 F.2d 1103, 1107 (5th Cir. 1987) (noting that a "occupational disease" could be considered a latent injury despite the injured worker having knowledge of "physical annoyances" that acted as precursors to the disease); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 230 (5th Cir.1984) (defining as a "pure latent"

---

[14] Although the *Marathon Oil Co.* case was brought under the Longshoremen's and Harbor Workers' Compensation Act which has a one year Statute of Limitations, the legal concept of an unknown injury is applicable.

injury case a "a product liability suit by a consumer of a drug or other medically related product who discovers a side effect from the use of the defendant's product"). Other courts recognize a similar distinction between injuries that are immediately discernable and those that are not. *See, e.g., Wissing v. Walgreen Co.*, 823 N.W.2d 710, 721 (Neb. 2012) (finding the statute of limitations tolled by latent injury where "it did not become apparent until years after the accident that a much more serious injury resulted … than at first supposed"); *Pooshs v. Philip Morris USA, Inc.*, 250 P.3d 181, 190–91 (Cal. 2011) (holding that, when a later-discovered disease is "separate and distinct" from an earlier-discovered disease, "the statute of limitations bar can apply to one disease without applying to the other"); *Grillo v. Speedrite Prod., Inc.*, 340 S.C. 498, 507, 532 S.E.2d 1, 6 (Ct. App. 2000) ("We do not believe the legislature intended that the statute be applied in a manner which would require one to file an action for temporary sickness or discomfort or risk the loss of a right of action for permanent injury.") (internal citation omitted); *LeBeau v. Dimig*, 446 N.W.2d 800, 802 (Iowa 1989) (holding that it would be "unfair" to "charg[e] a plaintiff with knowledge of facts which are "unknown and inherently unknowable" in cases where the plaintiff learns of a side effect long after the plaintiff ingested the product).

Sanofi points to the alleged six-month definition for permanent hair loss referenced in Plaintiffs' Amended Master Complaint as a black-and-white timeframe by which Ms. Greer should have known of her injury. But as noted by Mississippi Supreme Court, "[f]or an injury to be latent it must be undiscoverable by reasonable methods," which is not a black-and-white analysis:

> For instance this Court has noted that some plaintiffs may require access to medical records to discover the injury. While others might gain enough actual knowledge through personal observation or experience. Some injuries may be indiscernible until a medical expert notifies the plaintiff of possible negligence.

*Lowery,* 909 So. 2d at 51 (internal citations omitted).

"Because there is no bright line rule" for determining when an injury is knowable, "the specific facts of the case will determine whether the plaintiff knew or reasonably should have known that an injury existed." *Id.* at 50. Here, Ms. Greer's Short Form Complaint provides these "specific facts," and when viewed in the light most favorable to her, Sanofi cannot establish "beyond doubt that the plaintiff can prove no set of facts … which would entitle [her] to relief." *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983).

Rather, the "specific facts" alleged in Ms. Greer's Short Form Complaint reveal that she reasonably believed her hair would return. Ms. Greer's doctors told her before and during her treatment of chemotherapy that her hair loss would be temporary.[15] After treatment, Ms. Greer expected her hair to grow back and conducted herself in a manner that would lead a reasonable lay person to believe her hair loss was temporary. Ms. Greer questioned at least one of her healthcare providers about her hair regrowth who did not tell her that her hair loss was permanent. She also took supplements and applied topical solutions in an effort to promote hair growth.[16] Stated another way, Ms. Greer's behavior and understanding was that of a lay person, not an expert, who believed and hoped their hair would regrow, and it was not until May 2016 that Ms. Greer even knew chemotherapy could cause permanent hair loss.[17] Up and until then, Ms. Greer reasonably believed that her hair loss was temporary, which she stated in her Short Form Complaint filed on November 29, 2018: her "permanent injuries were latent, unknown or otherwise undiscoverable as they were disguised by the anticipated temporary hair loss associated with chemotherapy treatment."[18] Accordingly, Sanofi's Motion should be denied.

### B. The Statute of Limitations is Also Tolled by Sanofi's Fraudulent Concealment

---

[15] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ gg.
[16] Master Dkt., Rec. Doc. 10668-6 ¶ 13 d-f.
[17] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ hh.
[18] Dkt. 2:18-cv-11728, Rec. Doc. 1 ¶ ff.

Mississippi law provides that fraudulent concealment tolls the limitations period until the claim is discovered or should have been discovered. Miss. Code Ann. § 15–1–67. The fraudulent concealment doctrine "applies to any cause of action." *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000). In order to establish fraudulent concealment, the plaintiff must allege that "(1) the defendants engaged in some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of a claim, and (2) though plaintiffs acted with due diligence in attempting to discover the claim, they were unable to do so." *Doe v. Roman Catholic Diocese of Jackson*, 947 So. 2d 983, 986–87 (Miss. Ct. App. 2006) (citing *Robinson v. Cobb,* 763 So.2d 883, 887 (Miss. 2003)). Here, both prongs are met.

First, Ms. Greer specifically adopted the fraudulent concealment claim alleged in Plaintiffs' Second Amended Master Long Form Complaint. This claim contains specific factual allegations detailing Sanofi's longstanding affirmative efforts to fraudulently conceal Taxotere's risk of permanent hair loss. For example, paragraphs 149 to 169 recite, with reference to many specific examples, allegations of Sanofi's knowledge, among other things, of the propensity of their drugs to cause the injuries at issue in this MDL while concealing it from and/or failing to warn patients, health care professionals, the medical community, or the public in the U.S.[19] Second, paragraphs 191-213 spell out nearly a decade of specific actions by Defendants to misleadingly and/or fraudulently market their drugs' relative safety and efficacy, [20] laying out specific averments supporting the alleged fraud.[21] Prior to transfer of this docket to Your Honor, Sanofi sought to dismiss Plaintiffs' claim for fraudulent concealment, which the Honorable Judge Engelhardt

---

[19] Master Dkt., Rec. Doc. 4407 ¶ 149-169.
[20] Master Dkt., Rec. Doc. 4407 ¶ 191-213.
[21] Master Dkt., Rec. Doc. 4407 ¶ 259, 267, 270, 277, 284-296.

denied.[22]  As such, when viewed in the light most favorable to Ms. Greer, sufficient evidence exists to raise a claim for fraudulent concealment against Sanofi thereby meeting the first prong for tolling.

Second, the allegations in Ms. Greer's Amended Short Form Complaint describe her efforts to discover her claim.  As discussed above, Ms. Greer consulted with her doctors as to why her hair was not returning, she spoke to her beautician about her ongoing hair loss, and she tried vitamins and topical solutions in an effort to stimulate hair regrowth.[23]  It was not until May 2016 that she learned that her hair loss was permanent.[24] These allegations, also when viewed in the light most favorable to Ms. Greer, demonstrate her due diligence in trying to find an answer and a solution to her hair loss.

As such, Ms. Greer meets both prongs required to toll the statute of limitations for fraudulent concealment, rendering the filing of her case within the permissible limitations period.

## IV.    CONCLUSION

For the foregoing reasons, Sanofi's Motion for Summary Judgement on the Pleadings should be denied.

Respectfully Submitted,

/s/ Alexandra W. Robertson
Alexandra W. Robertson (Bar #395619)
Timothy J. Becker
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
(612) 436-1800 (telephone)

---

[22] Master Dkt., Rec. Doc. 877. Judge Engelhard denied Sanofi's Motion to Dismiss Plaintiffs' Original Master Complaint.  The allegations related to fraudulent concealment as outlined above have not materially changed, if at all, in subsequent amendments to the Master Complaint. *Compare* Master Dkt., Rec. Doc. 312 *with* Rec. Doc. 4407.
[23] Master Dkt., Rec. Doc. 10668-6 ¶ 13 d-f.
[24] Master Dkt., Rec. Doc. 10668-6 ¶ 13 g.

> (612) 436-1801 (facsimile)
> arobertson@johnsonbecker.com
> tbecker@johnsonbecker.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

> /s/ Alexandra W. Robertson