**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION**

**MDL NO. 2740**

**SECTION "H" (5)**

**THIS DOCUMENT RELATES TO:**

**Kahn v. Sanofi S.A., et al.,**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELLEN FEIGAL, M.D.**

**INTRODUCTION**

Defendants moved to exclude certain opinions of Ellen Feigal, M.D. ("Dr. Feigal") regarding her proposed testimony on: 1) the standard of care for informed consent or alternative treatments, 2) the dissemination of risk information regarding permanent alopecia and Taxotere, and 3) permanent chemotherapy-induced alopecia as a known adverse event of Taxotere-containing regimens.

Dr. Feigal offers her opinions in this case are as a Board Certified physician in Internal Medicine and in Medical Oncology with thirty years of specific experience in the fields of clinical trial design and investigation, pharmacological product development, pharmacovigilance, and medical literature and review, as stated in detail in her Expert Report.[1]

Dr. Feigal's opinions offered in this litigation are squarely within and based on her education and experience in Medical Oncology, clinical research, clinical trial design, product development and pharmacovigilance, medical literature research and review, as well as informed consent principles that are not plaintiff specific. Dr. Feigal spent twelve years at the National Cancer Institute, including seven years as the Deputy Director and Acting Director of the

[1] Defs' Ex. J, Expert Report of Ellen G. Feigal, M.D., at 1-7, Mar. 23, 2020.

Division of Cancer Treatment and Diagnosis. She is eminently qualified to offer opinions on whether Taxotere(docetaxel) can cause permanent chemotherapy-induced alopecia, that is general causation. Indeed, Dr. Feigal's knowledge includes an understanding of the scientific methods for evaluating evidence regarding causation of an adverse event related to a specific pharmaceutical drug, including the assessment of singling out one drug in a multi-drug regimen.

Dr. Feigal's opinions are not only relevant but are necessary to overcome potential juror bias and skepticism regarding whether permanent hair loss is something that should be considered in the risk/benefit discussion between a physician and her patient—a skepticism enhanced by Defendants' repeated assertion that these plaintiffs could very well be dead if not for Taxotere. Dr. Feigal bases her opinions on her decades of experience and involvement in and overseeing clinical trials, and her assessment of clinical trial and observational study data. Indeed, the Court previously, and based upon the same opinions provided in her current Expert Report, accepted Dr. Feigal as expert "in clinical research, clinical study design and interpretation, and general causation".[2] Additionally, Sanofi mischaracterizes Dr. Feigal's opinions and seeks the exclusion of opinions not offered by this witness. Moreover, Sanofi's complaints go to the weight of Dr. Feigal's testimony, and not its admissibility.

For the reasons set forth herein, Dr. Feigal's opinions are admissible, and the Court should deny Defendants' motion to exclude Dr. Feigal's testimony.[3]

## LEGAL STANDARD

A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.,*

---

[2] Ex. 1, Trial Tr. at 1161:18-21, Sept. 19, 2019.

[3] *See Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 590-591.

*Inc.*, 509 U.S. 579, 589 (1993). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipaitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). In order to allow an expert's testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 592-93 (1993) 592–93. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Id*. at 594.

The purpose of a *Daubert* inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 150. "[W]hether an expert's testimony is reliable is a fact-specific inquiry." *Burleson v. Texas Dep't of Criminal Justice,* 393 F.3d 577, 584 (5th Cir. 2004) (citation omitted). Additionally, testimony is admissible when "the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case." *Tripkovich v. Ramirez*, No. 13-6389, 2015 WL 3849392, at * (E.D. La. June 22, 2015) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993)). Expert testimony can be classified as relevant if "the reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence." *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (citations omitted).

## ARGUMENT

### I. THIS COURT HAS ALREADY ALLOWED DR. FEIGAL TO OFFER GENERAL INFORMED CONSENT AND RISK DISSEMINATION STANDARD OF CARE OPINIONS

Plaintiff does not intend to offer Dr. Feigal as an expert to speak on any plaintiff-specific opinions about Ms. Kahn's informed consent discussions with her treating oncologists. Dr. Feigal has testified on numerous occasions that she is not offering any case-specific opinions.[4] Contrary to Defendants' assertion, Dr. Feigal's opinions concerning informed consent, dissemination of risk/benefit information to physicians, and alternative treatment available at the time Ms. Kahn was treated are all related to the general standard of care as to those issues and are given without addressing plaintiff-specific issues. Dr. Feigal's opinions include the availability of evidence to Sanofi, including what could have been communicated to patients like Ms. Kahn and their oncologists.

In fact, the Court in *Earnest* allowed Dr. Feigal to "testify about the standard of care for physicians for informing patients though the decision making process" and to "offer general opinions on how pharmaceutical companies disseminate risk information and what alternative treatments exist for Taxotere patients" without actually applying those principles to Earnest's case.[5] Dr. Feigal's opinions in the case are the same.

Further, Dr. Feigal's opinions are not based on her own personal views. Dr. Feigal's opinions as to what a reasonable physicians would do with information regarding the causative relationship between permanent alopecia and Taxotere, as it relates to informed consent, are relevant in this case under Fifth Circuit law. The Fifth Circuit's treatment of the learned intermediary doctrine does not preclude Plaintiffs from offering evidence through Dr. Feigal's

---

[4] Defs' Ex. G, Feigal Dep. 56:15-16, April 10, 2020.

[5] Rec. Doc. 8094, at 18-19 (Order and Reasons, Sanofi's Mtn. to Exclude Expert Testimony of Ellen Feigal, M.D.). For the purposes of the record, Plaintiffs incorporate their prior response to Sanofi's challenge and reply. Rec. Doc. 6163 (Pl Opp to Defs.' Mot. To Exclude Expert Test. Of Ellen Feigal, M.D.)

expert testimony of how a reasonable physician would have responded to a warning about the causal association between Taxotere and permanent alopecia. In *Thomas v. Hoffman-LaRoche, Inc.*, the Fifth Circuit noted:

> "To satisfy the burden of establishing warning causation, a plaintiff may introduce…**objective evidence** of how a reasonable physician would have responded to an adequate warning…"[6]

One of Plaintiffs' other designated experts, Dr. Linda Bosserman, will testify as to the Plaintiff's oncologists' subjective informed consent discussions with their patient.[7] However, it is clear that the Fifth Circuit's treatment of the learned intermediary doctrine does not preclude Plaintiffs from offering evidence through Dr. Feigal's testimony on informed consent and how a reasonable physician would have responded to a warning about the causal association between Taxotere and permanent alopecia. These opinions are not speculative regarding the standard of care and what a reasonable physician would have discussed with their patient. Rather, Dr. Feigal bases her opinions upon her 30 years' experience and knowledge in the field. "I should be able to comment that since physicians get information from prescribing information, if the prescribing information does not have that type of safety information, then they can't have an informed discussion with their patient."[8] Dr. Feigal opines that a benefit-risk conversation between a physician and a patient is "about sharing the information that's known about [an] adverse event, because it's the totality of the conversation that's important."[9]

Again, the Court in *Earnest* allowed this "objective evidence" about the dissemination of risk information, and found Dr. Feigal's testimony was relevant and satisfied the standards of

---

[6] 949 F.2d 806 (5th Cir. 1992).
[7] Ex. 2, Expert Report of Linda Bosserman, M.D., FACP, FACSO, at 21-28, April 3, 2020.
[8] Ex. 3, Feigal Dep. 101:14-19, Dec. 7, 2018.
[9] Ex. 3, Feigal Dep. 251:5-8, Dec. 7, 2018.

*Dabuert* and Rule 702.[10] Defendants are attempting to resurrect arguments this Court has already rejected, without providing any new basis. The Court should not disturb its prior ruling, and again allow Dr. Feigal to offer opinions regarding appropriate objective information for inclusion in an informed consent discussion at the time of Ms. Kahn's treatment, and the dissemination of risk information and alternative treatments.

## II. Dr. Feigal's Opinions on Dissemination of Risk Information Are Reliable And Should Not Be Excluded

Defendants contend that any opinions that Sanofi failed to adequately communicate risk information to physicians should be excluded because it lacks a reliable methodology, yet Sanofi's brief never actually addresses Dr. Feigal's methodology. Instead, Sanofi makes baseless assertions that Dr. Feigal has provided contradictory testimony as support. For example, Sanofi contends that Dr. Feigal has offered contradicting testimony on whether she is providing an opinion on the adequacy of the warning, however, Dr. Feigal's assertion that she has an opinion on communication of relevant information is not contradictory nor is it an opinion on warnings adequacy and it certainly does not state how Dr. Feigal's methodology is unreliable in reaching that opinion. As stated above, this Court in *Earnest* allowed Dr. Feigal to give opinions on how pharmaceutical companies disseminate risk information and the standard of care for physicians receiving the risk information for the purpose of informing patients through the decision making process. Dr. Feigal's opinions as to what a reasonable physician could do with information regarding the causative relationship between permanent alopecia and Taxotere, as it relates to informed consent, are relevant in this case.

The *Jones* case upon which Defendants rely is unpersuasive. There, the court found that there was no way to distinguish between the expert's "casual association opinion" and a medical

---

[10] See footnote 5.

causation opinion, an issue for which she lacked expertise.[11] While Plaintiff does not agree that Dr. Feigal lacks expertise necessary to render her opinions offered, she has stated repeatedly that she is not offering specific causation opinions. Dr. Feigal's opinions include general causation, and how that opinion impacts information available for dissemination to physicians for use in an informed consent process. Other experts, like Dr. Bosserman, will then address how that dissemination works in the patient-physician relationship.

So, unlike the expert in *Jones*, Dr. Feigal does not lack expertise to offer her opinions. Dr. Feigal simply offers the opinion that "[h]ad physicians been been informed of the risk of permanent chemotherapy-induced alopecia, reasonable physicians would and could have included a discussion of the risk of PCIA in their benefit-risk interaction with patients about treatment options for their early stage breast cancer, to allow for more informed decisions."[12] Dr. Feigal is more than qualified to render opinions regarding informed consent discussions generally, and how those discussions could have been impacted based upon whether the PCIA risk information was or was not given to physicians – which does not touch on the adequacy of the risk information. The only party engaging in "verbal semantics" is Defendants by creating an implication that doesn't exist. Dr. Feigal's opinions do not opine on the adequacy of the risk information or labeling and, to the extent that Defendants disagree with Dr. Feigal's opinions, they can cross-examine her at trial.

---

[11] *Jones v. Novartis Pharm. Corp.*, 235 F.Supp. 3d 1244, 1268 (N.D. Ala. 2017) ("Dr. Parisian is not an endocrinologist and does not otherwise have the expertise to review medical literature on femoral fractures and opine on whether a correlation between a disease and an alleged injury amounts to a causal association. As another district court recently determined, Dr. Parisian is not qualified to opine 'either that the risk was clinically significant or that there was reasonable evidence of causal association'; she could 'testify as to what Defendants should have done in terms of investigation based on the post-marketing information available to them, but may not opine that information amounted to evidence of causal association sufficient to warrant a label change.' *In re Mirena*, 169 F.Supp.3d at 476 n.76.")

[12] Defs' Ex. J, Expert Report of Ellen G. Feigal, M.D., at 72, Mar. 23, 2020.

Accordingly, this Court should not preclude Dr. Feigal's testimony on informed consent and dissemination of risk information.

## III. Dr. Feigal's General Causation Opinions are Still Relevant and Reliable And Should Not be Excluded

As to general causation, Defendants erroneously assert that statements made in the Earnest trial and changes to Dr. Feigal's opinions for Ms. Kahn render those opinions irrelevant and unreliable and merit revisiting the Court's Earnest order. This is simply an attempt at taking another bite at the proverbial apple. Dr. Feigal's Expert Report and testimony clearly refute this argument as discussed herein.

Dr. Feigal employed sound scientific methodology, including a thorough review of clinical trials, pharmacovigilance data, and a scientific review and analysis of relevant and useful medical literature. Drawing upon her 30 years of experience in the field of clinical research, Dr. Feigal applied a recognized methodology for assessing the available collected data: she conducted a causation analysis using factors set out in Bradford-Hill analysis. She clearly sets out the body of evidence she considered, and the scientific basis and support for her opinions which, contrary to Defendants' assertion, have not changed since Earnest. Further, since the *Earnest* trial, Dr. Feigal has taken the additional step of setting out the various Hill factors the evidence touches upon. And Dr. Feigal has explained her opinions in through five separate depositions taken by Sanofi, three of which were taken prior to the trial of the Earnest matter. Sanofi is familiar with the methods and bases of Dr. Feigal's opinions and is likewise aware that this Court has previously scrutinized Dr. Feigal's methods and bases. Dr. Feigal has only clarified her opinions since the Earnest trial. Consequently, Sanofi's renewed challenge to Dr. Feigal's testimony on essentially the exact same grounds is due to be denied.

Dr. Feigal still opines that there is a causal association or causal relationship between Taxotere and permanent alopecia, and that the Defendants' own data led them to the conclusion that permanent chemotherapy induced alopecia is causally related to Taxotere.[13] The fact that the language changed from "cases" to "regimens" for *Kahn* is of no moment. As stated in Dr. Feigal's report and in her testimony, the chart has always included regimens containing Taxotere. And, Dr. Feigal did not ignore the anecdotal reports of permanent hair loss associated with other chemotherapy regimens including Taxol, anthracycline and cyclophosmide, in her report for *Earnest,* and she did not ignore that data in her report for *Kahn*.[14] Those reports were referenced in both of her reports. However, and again, the anecdotal reports do not rise to the level of a causal association with permanent alopecia as those of taxotere, and accordingly, do not change Dr. Feigal's opinion. In fact, Sanofi's experts (Glapsy, Wei, Arrowsmith and Chang) agree with Dr. Feigal that "cases of permanent alopecia have been reported with" a drug is not a statement of causal association.[15] Moreover, Dr. Feigal considered Sanofi's randomized, controlled clinical trials and the pharmacovigilance data from its 2015 Clinical Overview, and other evidence, to demonstrate general causation using her systematic and reliable methodology.[16] Of particular note is the Clinical Overview's conclusion that, "[t]he cumulative weighted evidence is sufficient to support a causal association between docetaxel and permanent/irreversible alopecia in the patients who received docetaxel."[17] Sanofi's conclusion is

[13] Defs' Ex. J, Expert Report of Ellen G. Feigal, M.D., at 71, Mar. 23, 2020.

[14] Defs' Ex. J, Expert Report of Ellen G. Feigal, M.D., at 68-72, Mar. 23, 2020.*See also* Rec. Doc. 6163 at 24 (Pl Opp to Defs.' Mot. To Exclude Expert Test. Of Ellen Feigal, M.D.)

[15] Ex. 4, J. Glaspy Dep. 5/13/2020, 69:11-17 and Ex. 5, Glaspy Dep. 1/9/2020, 83:7-84:19; Ex. 6, LJ Wei Dep. 12/20/2019, 84:2-14; Ex. 7, J. Arrowsmith Dep., 7/29/2020, 40:12-17; and Ex. 8, E. Chang Dep., 5/19/2020, 162:1-163:9. Dr. Chang says it most clearly: "to the extent that . . . causal attribution of permanent or irreversible alopecia in case reports, I would challenge that on methodological grounds*." Id. at* 162:13-17.

[16] Defs' Ex. J, Expert Report of Ellen G. Feigal, M.D., at 68-70, March 23, 2020.

[17] Defs' Ex. J, Expert Report of Ellen G. Feigal, M.D., at 68-70, March 23, 2020.

based on strikingly similar evidence as Dr. Feigal's, although Dr. Feigal includes a greater quantum of evidence, all of which demonstrates the same conclusion.

Ultimately, Defendants' arguments as to Dr. Feigal's general causation opinions go to the weight or credibility of her testimony, not its admissibility. As the Supreme Court said in *Daubert*, "[v]igorous-cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible." 508 U.S. at 596. This Court's reliability inquiry focuses "solely on principles and methodology, not on the conclusions they generate."[18] Dr. Feigal, using the same methodology to reach her opinions in *Earnest*, was accepted as a general causation expert and this Court should permit Dr. Feigal to offer those same general causation opinions in *Kahn*.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to Exclude the Expert Testimony of Ellen Feigal, M.D.

Dated: September 14, 2020

Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

[18] See *Daubert*, 509 U.S. at 595.

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of September, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS