# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  TAXOTERE (DOCETAXEL)     *      16-MD-2740
PRODUCTS LIABILITY LITIGATION    *
                                 *      Section H
                                 *
Relates to:  Barbara Earnest     *      September 23, 2019
             16-CV-17144         *
* * * * * * * * * * * * * * * * *
```

DAY 6 - AFTERNOON SESSION
TRANSCRIPT OF JURY TRIAL BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE

Appearances:

| | |
|---|---|
| For the Plaintiffs: | Barrios Kingsdorf & Casteix, LLP<br>BY:  DAWN M. BARRIOS, ESQ.<br>701 Poydras Street, Suite 3650<br>New Orleans, Louisiana 70139 |
| For the Plaintiffs: | Gainsburgh Benjamin David Meunier<br>  & Warshauer, LLC<br>BY:  M. PALMER LAMBERT, ESQ.<br>1100 Poydras Street, Suite 2800<br>New Orleans, Louisiana 70163 |
| For the Plaintiffs: | Pendley Baudin & Coffin, LLP<br>BY:  CHRISTOPHER L. COFFIN, ESQ.<br>1100 Poydras Street, Suite 2505<br>New Orleans, Louisiana 70163 |
| For the Plaintiffs: | Gibbs Law Group, LLP<br>BY:  KAREN BARTH MENZIES, ESQ.<br>6701 Center Drive West, Suite 1400<br>Los Angeles, California 90045 |

Page 1571

1  Q. Okay. So let me ask you this, though: There is also a
2  Breast Cancer Symposium in San Antonio, right?
3  A. Yes.
4  Q. And that's a big, well-known one too?
5  A. Yes. I have presented there before.
6  Q. When did you present there, sir?
7  A. When I was a fellow.
8  Q. So back in the --
9  A. 1996 or '97, somewhere in there.
10 Q. And do you go to that conference yearly, Dr. Carinder?
11 A. I did when I was a fellow. It's grown quite huge since
12 that time. When I went, there were probably 2,000 attendees.
13 Now they get 15,000 or 20,000, 30,000 attendees. It's really
14 grown big.
15 Q. Do you know if you went in 2006?
16 A. No. I was not going to San Antonio anymore after about
17 1998, '97.
18 Q. Let me hand you something.
19     MS. SASTRE: If I may, Your Honor?
20     THE COURT: Okay.
21     MS. SASTRE: It's very small, I know. I can share my
22 reading glasses with you, but only one of us will be able to
23 see at a time. But if you need them, really.
24     Are you able to see that?
25     THE WITNESS: Yeah -- well, I can -- I can't.

Page 1572

1  BY MS. SASTRE:
2  Q. Well, Doctor, let me ask you this: You can see this is an
3  abstract, right?
4  A. Yes.
5  Q. And are you aware that this was something that was
6  presented at the 2006 San Antonio Breast Cancer Symposium?
7  A. No, I wasn't.
8  Q. You said thousands and thousands of doctors go to these
9  symposiums, right?
10 A. Yes.
11 Q. So anyone who is at this symposium, that's thousands of
12 doctors seeing what's being presented, right?
13 A. Was this a poster?
14 Q. My understanding is that it's --
15     THE COURT: Doctor, you can't ask the questions.
16     THE WITNESS: Well, I mean, was it from the poster
17 session? Or do you know? Because poster sessions are just
18 posted up, and they are not necessarily orally presented to
19 people. And so that was why unless you stopped and looked at
20 the poster, you wouldn't be aware of it.
21 BY MS. SASTRE:
22 Q. Let me ask you a couple questions and see if we can sort
23 it out; if not, I'll move on. Okay, Dr. Carinder?
24 A. Okay.
25 Q. Let me ask you first: Have you seen this before, sir?

Page 1573

1  A. No.
2  Q. Would you think, based upon your knowledge and experience
3  in going to the San Antonio Breast Cancer Symposium, that a
4  presentation like this, whether it be an abstract or a poster,
5  would be something you could consider reasonably reliable?
6  A. Yes.
7     MS. SASTRE: Can we take a look at it, Your Honor?
8     MR. SCHANKER: Your Honor, it's an abstract, and the
9  doctor hasn't indicated -- as a matter of fact, he said he
10 wasn't even at that symposium, and there's been no evidence
11 that this has ever been presented to him by Sanofi or any other
12 source. We object.
13    THE COURT: Come back up.
14    (The following proceedings were held at the bench.)
15    THE COURT: Let me get back to the learned treatise.
16 The problem is he has not been qualified as an expert.
17    MR. SCHANKER: Right.
18    MS. SASTRE: I understand that, and I haven't been
19 talking much at the sidebars, Your Honor, because I know you
20 have been mostly engaged with Mr. Schanker. That's been fine,
21 Judge, but I do just want to say the idea is exactly what
22 you're describing.
23    I've been thinking of -- and you are saying
24 what's been out in the world -- it's sort of like this is all
25 out there in the ether. This is a doctor that's living in the

Page 1574

1  real word, interacting with colleagues. You think about the
2  sort of things that they wanted to put up in front of him --
3  they are actually asking a question whether he knows about the
4  testimony of a company witness which they know he wouldn't know
5  about, "Do you know about this internal document?"
6     THE COURT: I sustained those objections.
7     MS. SASTRE: Right. Some.
8     THE COURT: I sustained those objections.
9     MS. SASTRE: Right. This is my problem. If he
10 hasn't seen it, I just want to ask him a question or two
11 without even showing it to the jury, "You agree with me on what
12 it says," and then I don't need to show it to him. If he
13 hadn't seen it, he hadn't seen it.
14    THE COURT: I think we have already had the testimony
15 about this --
16    MR. SCHANKER: We have, Your Honor.
17    THE COURT: -- presentation.
18    MR. SCHANKER: He has indicated he wasn't there. He
19 hasn't seen it. Beyond that, I don't understand how he can be
20 asked any other questions about it. If we are going to let
21 every single shred of anything that exists in the world on
22 this, things he has never seen, that's creating a misperception
23 for the jury that this should have been all information he
24 should have had.
25    THE COURT: I think the problem is even if there was