UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF GERALD MILETELLO, M.D.**

---

Dr. Miletello is qualified to offer opinions about the risks and benefits associated with chemotherapies, hormonal therapies, and medical conditions common in women with breast cancer—including the fact that certain chemotherapies and other anti-cancer agents have been associated with persistent hair loss. The arguments the PSC make in their motion are not new, and have been considered and rejected by the Court multiple times. The Court should do the same here.

**I.    Dr. Miletello's Opinions Regarding Reasonable Alternative Explanations for Ms. Kahn's Hair Loss Are Admissible.**

As set forth in more detail in Sanofi's Opposition to Plaintiff's Motion for Partial Summary Judgment on Affirmative Defenses Concerning Alternative Causes, the PSC's challenge to Dr. Miletello's opinions regarding possible alternative explanations for Ms. Kahn's hair loss should be denied.

First, Plaintiff—not Sanofi—bears the burden of proof on proximate causation, including eliminating possible causes other than Taxotere as the cause of her alleged hair loss. *See Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct

evidence of causation must eliminate other causes); *see also Llewellyn v. Lookout Saddle Co.*, 315 So. 2d 69, 71 (La. App. 2d Cir. 1975) (same); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 n.5 (5th Cir. 2002) ("[T]he plaintiff may prove causation by establishing '*with reasonable certainty* that all other alternatives are impossible.'") (citing *Joseph v. Bohn Ford, Inc.*, 483 So. 2d 934, 940 (La. 1986) and *Todd v. State*, 96-3090 (La. 9/9/97), 699 So. 2d 35, 43).

Second, the Court already decided this issue in *Earnest*, denying the PSC's motions *in limine* to exclude evidence of other drugs and medical conditions that are associated with permanent hair loss, or "PCIA," holding Sanofi was entitled to present this evidence and question Plaintiff's experts about it.[1]  Finally, the PSC cannot prove that Sanofi's experts have no "good faith" basis for their challenges to Ms. Kahn's causation evidence.  As this Court already stated: "Plaintiffs' own experts have acknowledged that [other chemotherapy drugs taken by Ms. Kahn] are associated with permanent hair loss."[2]

Dr. Miletello is qualified to offer opinions about the risks associated with chemotherapies, hormonal therapies, and medical conditions common in women with breast cancer.  Dr. Miletello is a medical oncologist in Baton Rouge, Louisiana, with more than 30 years of experience treating breast, lung, colon, and other cancers.[3]  He is board-certified in internal medicine and medical oncology.[4]  As a clinician, Dr. Miletello has administered anti-cancer medications, including chemotherapies and hormonal therapies, to "approximately a thousand women with breast

---

[1] *See* Rec. Doc. 7651 (Pl.'s Mot. to Preclude Test. and Evid. Regarding Other Chemotherapy Medications or Medical Conditions that Purportedly May Cause Permanent Hair Loss); Rec. Doc. 8198 (Order Denying Pl.'s Mot. in Part).

[2] Rec. Doc. 10704, at 7 (Order and Reasons on Pl.'s Mot. for Partial Summ. J. on Aff. Defenses Under La. Rev. Stat. § 9:2800.59).

[3] **Ex. A**, Expert Report of Gerald Miletello, M.D., at 1 (Apr. 29, 2020).

[4] *Id.* at 1.

cancer."[5]  Dr. Miletello has had the opportunity to observe thousands of patients before, during, and after chemotherapy, radiation, and surgery.

Dr. Miletello is not, as the PSC suggests, offering opinions on general or specific causation, as that is not Sanofi's burden.  That said, Dr. Miletello is certainly qualified to offer testimony regarding the side effects of medications based on his clinical experience and the published medical literature—including the fact that, in his experience, certain anti-cancer agents, including hormonal therapies, have been associated with delayed hair regrowth or hair thinning in patients.[6]  In Dr. Miletello's clinical experience, for example, every patient he has prescribed hormonal therapy "has some degree of hair loss.  I have not seen one patient not lose some degree of hair."[7]  There is no dispute on the point, as Plaintiff's own experts have, consistent with the medical literature upon which they rely, repeatedly acknowledged that other chemotherapies (including Adriamycin and Cytoxan) and hormonal therapies (like Tamoxifen), are associated with persistent hair loss.[8]  For these reasons, and as set forth in more detail in Sanofi's Opposition to Plaintiff's

---

[5]  *Id.* at 10.

[6]  **Ex. B**, Miletello Dep. 92:18-93:5; 105:12-24 (May 21, 2020); **Ex. C**, Miletello Dep. 129:13-132:16; 133:23-134:9; 136:24-137:5; 142:7-143:9; 143:16-21; 144:20-145:7 (Dec. 19, 2019).

[7]  Ex. C, Miletello Dep. 152:25-153:16 (Dec. 19, 2019).

[8]  Rec. Doc. 10704, at 7 (Order and Reasons on Pl.'s Mot. for Partial Summ. J. on Aff. Defenses Under La. Rev. Stat. § 9:2800.59) ("Plaintiffs' own experts have acknowledged that [Adriamycin and Cytoxan] are associated with permanent hair loss."); **Ex. D**, Tosti Dep. 180:8-16; 313:24-314:8 (Dec. 12, 2019) (testifying there are reports of PCIA from Adriamycin and cyclophosphamide); **Ex. E**, Earnest Trial Tr. 1219:4–9 (Dr. Feigal testifying during the *Earnest* trial that there have been cases of permanent hair loss reported for both Cytoxan and Adriamycin); **Ex. F**, Earnest Trial Tr. 478:10-18 (Dr. Kessler testifying during the *Earnest* trial that he has seen reports of PCIA associated with both Cytoxan and Adriamycin); **Ex. G**, Earnest Trial Tr. 861:7–10, 873:20-25 (Dr. Plunkett testifying during the *Earnest* trial that she identified permanent hair loss as a hazard associated with Adriamycin and Cytoxan); **Ex. H**, Earnest Trial Tr. 1057:17–24 (Dr. Tosti testifying "what I really think is that those drugs are, you know, sometimes occasionally causing the problem. I never said they never cause. It's just a question of, likely, frequency."); *id.* at 1030:23–1031:3 (reports of PCIA with anthracyclines); *id.* at 1031:11–16 (reports of PCIA with cyclophosphamide); *id.* at 1058:9–12 (5-FU); *id.* at 1058:20–23 (FEC); *id.* at 1066:12–19 (Tosti co-authored a paper that reported 25% of patients receiving post-chemotherapy endocrine therapy experienced endocrine-induced alopecia); **Ex. I**, Bosserman Dep. at 109:2–11; 142:19–143:18 (Dec. 3, 2018); **Ex. J**, Bosserman Dep. at 417:9–17 (Dec. 10, 2018); **Ex. K**, Kessler Dep. at 238:14–22, 246:12–17, 247:8–249:9 (Dec. 20, 2018); **Ex. L**, Kessler Dep. at 347:25–348:17 (Nov. 26, 2019); **Ex. M**, Madigan Dep. at 208:18–21 (Dec. 7,

Motion for Partial Summary Judgment on Affirmative Defenses Concerning Alternative Causes, the PSC's challenge to Dr. Miletello's opinions on alternative explanations for Ms. Kahn's hair loss should be denied.

## II. Dr. Miletello's Testimony Regarding the Distinction Between Chemotherapy Regimens, Including Taxol- and Taxotere-Containing Regimens, is Admissible.

Dr. Miletello is offering the opinion that "taxane regimens play a significant role now in treating breast cancer . . . in 2009 it became standard of care . . . and that's still considered one of the best treatments for breast cancer."[9] Contrary to the PSC's suggestion, Dr. Miletello is not testifying to the "superior" efficacy of Taxotere over Taxol, but to the increased efficacy of taxane-containing regimens in general, as opposed to treatments without a taxane.[10] Dr. Miletello's opinion is that taxane-containing regimens (whether that be Taxotere or Taxol) have demonstrated efficacy over older, non-taxane-containing regimens, such as CMF (cyclophosphamide, methotrexate, and fluorouracil).[11] Dr. Miletello's clinical experience, as well as the published medical literature referenced in his Report, provides reliable basis to offer this opinion. *See* Fed. R. Evid. 702; *see, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 453-56 (5th Cir. 2009) (holding that doctor who treated patients with similar conditions could rebut the plaintiff's expert causation opinion and rejecting trial court's decision that an expert could only testify if they were board certified in particular specialties); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 1352860, at *5 (E.D. La. Apr. 13, 2017) (holding expert's reliance on clinical experience, peer-reviewed studies, and labeling was adequate to offer opinion on causation); *Holbrook v. Lykes*

---

2018); **Ex. N**, Madigan Dep. at 207:19–213:3 (Nov. 14, 2019); **Ex. O**, Plunkett Dep. at 115:1–117:16 (Dec. 10, 2018); **Ex. P**, Plunkett Dep. at 254:5–259:21; 288:20–24, 292:4–25, 297:20–24 (Nov. 19, 2019).

[9] Ex. B, Miletello Dep. 71:15-72:1 (May 21, 2020).

[10] Ex. B, Miletello Dep. 71:15-72:1; 109:3-110:21 (May 21, 2020).

[11] Ex. B, Miletello Dep. 109:3-110:21 (May 21, 2020).

*Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) (allowing physicians to testify about areas that they see in their daily practice).

Dr. Miletello also did not testify that "Taxotere was the best choice for Ms. Kahn" because Taxotere is more effective.[12] Dr. Miletello agreed with the decision to prescribe Taxotere, over Taxol, because the two taxanes have different side effects and toxicities.[13] Dr. Miletello is qualified to offer testimony on the risk/benefit analysis for Taxotere and Taxol, including the fact that each chemotherapy has a unique risk profile. Dr. Miletello discusses the risks and benefits of Taxol and Taxotere in his Report, and supports his opinions with his clinical experience prescribing both chemotherapies, the labeling, and published medical literature.[14] As the Court held in *Earnest*, the risk/benefit analysis of Taxotere as compared to alternative chemotherapies, including Taxol, is "absolutely relevant."[15] Here again, Dr. Miletello should not be precluded from offering testimony that explains why, in certain circumstances, Taxotere or Taxol may offer different advantages for a patient.

### III. Dr. Miletello's Testimony Regarding Prescribing Preferences and the Taxotere Label is Undisputedly Reliable Clinical Opinion.

First, the PSC is objecting to case-specific testimony regarding the "best regimen to treat Ms. Kahn's breast cancer" elicited on her own counsel's questioning.[16] As for his report, Dr. Miletello opines that the treatment Ms. Kahn received was appropriate and "Dr. Kardinal made

---

[12] Rec. Doc. 10919, at 7-8 (Pls. Mot. to Exclude the Causation Testimony of Dr. Gerald Miletello).

[13] Ex. B, Miletello Dep. 72:9-73:16 (May 21, 2020).

[14] Ex. A, Expert Report of Gerald Miletello, M.D., at 7-8 (Apr. 29, 2020).

[15] **Ex. Q**, Hr'g Tr. 64:20-65:3 (Sept. 5, 2019); *see also* Rec. Doc. 8201, at 2 (Order and Reasons on Mot. to Exclude Evidence of Unrelated Medical Conditions Familiar Medical History of Cancer, and Unrelated Medication Usage).

[16] Rec. Doc. 10919, at 8 (Pl.'s Mot. To Exclude the Causation Testimony of Dr. Gerald Miletello).

5

the right prescription. . . ."[17] The PSC's argument that Dr. Miletello should be precluded from offering case-specific testimony on the "best regimen" to treat Ms. Kahn is misplaced. That this local doctor with more than 30 years of experience concurs with Ms. Kahn's doctor's decision is helpful to the jury, as it challenges Drs. Feigal and Bosserman's opinions that, because of the purported risk of permanent hair loss, other options should have been explored.

Second, Dr. Miletello should be allowed to offer testimony on the chemotherapy regimens he prefers for the treatment of breast cancer, based on the risks and benefits of different anti-cancer medications. This is not a case-specific opinion—it is testimony regarding the benefit/risk profiles of the medicine and the treatment options available to women who, like Ms. Kahn, have been diagnosed with breast cancer, all pertinent to warnings causation.[18] Dr. Miletello's clinical experience provides a sufficient basis for this testimony, and the Court has previously determined its relevance. *See* Fed. R. Evid. 702; *see, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 453-56 (5th Cir. 2009) (holding that doctor who treated patients with similar conditions could rebut the plaintiff's expert causation opinion and rejecting trial court's decision that an expert could only testify if they were board certified in particular specialties); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 1352860, at *5 (E.D. La. Apr. 13, 2017) (holding expert's reliance on clinical experience, peer-reviewed studies, and labeling was adequate to offer opinion on causation); *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) (allowing physicians to testify about areas that they see in their daily practice).

---

[17]  Ex. A, Expert Report of Gerald Miletello, M.D., at 11 (Apr. 29, 2020).

[18]  *See, e.g.*, Ex. Q, Hr'g Tr. 64:20-65:3 (Sept. 5, 2019); *see also* Rec. Doc. 8201, at 2 (Order and Reasons on Mot. to Exclude Evidence of Unrelated Medical Conditions Familiar Medical History of Cancer, and Unrelated Medication Usage).

Finally, the information contained in the labeling for the medications Ms. Kahn received fits the facts of this case. Dr. Miletello's clinical understanding of the "alopecia" language in the Taxotere label fits with his decision to prescribe Taxotere in his own patients, and apprises the informed consent discussion between oncologist and patient. For this reason, Dr. Miletello's opinions regarding his understanding of the Taxotere label, should be permitted.

## CONCLUSION

For all of the reasons stated above, Ms. Kahn's Motion to Exclude the Testimony of Dr. Miletello should be denied in its entirety.

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*