# EXHIBIT E

08:48:06

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA
```

IN RE:   TAXOTERE (DOCETAXEL)
         PRODUCTS LIABILITY              Docket No.: 16-MD-2740
         LITIGATION                      Section "H(5)"
                                         September 20, 2019
                                         New Orleans, Louisiana

*Relates To*: *Barbara Earnest*,
*Case No.: 16-CV-17144*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

                       DAY 5, MORNING SESSION
              TRANSCRIPT OF JURY TRIAL PROCEEDINGS
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:        Barrios, Kingsdorf & Casteix, LLP
                           BY:  DAWN BARRIOS, ESQ.
                           701 Poydras Street
                           Suite 3650
                           New Orleans, Louisiana 70139


For the Plaintiffs:        Gainsburgh, Benjamin, David,
                             Meunier & Warshauer, LLC
                           BY:  PALMER LAMBERT, ESQ.
                           2800 Energy Centre
                           1100 Poydras Street
                           New Orleans, Louisiana 70163-2800

                          *OFFICIAL TRANSCRIPT*

**Page 1218**

MR. MICELI: Same objection, Your Honor.

THE COURT: I think we're now really going far afield of what her direct testimony was and her qualifications.

EXAMINATION BY MR. STRONGMAN:

Q. Now, Doctor, with regard to the opinions that you offered today regarding causation, you would agree with me, Doctor, that there have been cases of permanent hair loss reported with Taxol, correct?

A. Correct.

Q. You would agree with me that there have been cases of permanent hair loss reported with cyclophosphamide, correct?

A. I actually don't have isolated cyclophosphamide in here, unless it's pooled with Freites-Martinez's article. But it's captured in my table.

Q. Well, Doctor, let me just ask the question again. You would agree that there have been cases of permanent hair loss reported with cyclophosphamide, correct?

A. I can't tell from the Freites-Martinez paper, to tell you the truth, but if it was, it was in that paper.

MR. STRONGMAN: May I approach the witness, Your Honor?

THE COURT: Yes, you may.

THE WITNESS: Oh, I'm sorry. It is in the AC regimen, so yes.

EXAMINATION BY MR. STRONGMAN:

Q. So let me just ask the question again, so we have a clear

**Page 1219**

reference.

A. I'm sorry, I thought you were talking about monotherapy. So my apologies.

Q. Would you agree with me that there have been cases of permanent hair loss reported with cyclophosphamide?

A. Yes. Yes.

Q. Would you agree with me that there have been cases of permanent hair loss reported with Adriamycin?

A. Correct.

Q. Would you agree with me that there have been cases of permanent hair loss reported with the AC regimen?

A. Well, now I am a little confused. I was including the cyclophosphamide in the anthracycline answer, with combo.

Q. But you would agree with me that in the AC regimen combo, there have been cases of permanent hair loss?

A. Yes, I do agree.

Q. You would agree with me that there have been cases reported of permanent hair loss with the AC Taxol regimen, correct?

A. I believe that's captured in some of the cases I have on the --

Q. So the answer is yes?

A. Yes. I'd have to look at the specifics of the article, but I believe those were in combo.

Q. Now, you talked through a chart of literature that you

**Page 1220**

reviewed; is that correct?

A. That's correct.

Q. Okay. One of the things that you did was you searched the literature, and you came up with these articles, and then you counted the reports; is that correct?

A. Well, I reviewed the articles.

Q. Fair enough. But then you counted the reports, correct?

A. Yes. I looked at the number of events that were reported in those papers, so I accurately described what was in the papers.

Q. I think you explained that your search was -- I think you called it comprehensive, but not exhaustive; is that correct?

A. That's a correct description.

Q. You certainly remember during your deposition you were shown some articles that had reports with other drugs that you had not found during your original search, correct?

A. They handed me articles that I had not found on my original search, but I read them in realtime and, after reading them, decided one would have gone in, the others would have not. Two were actually incorrect and were corrected in the literature.

Q. I think you testified several times that the topic under consideration was Taxotere, right? That's what you've said today multiple times, correct?

**Page 1221**

A. Yes, that's my impression of why we're all here today.

Q. You were laser focused on Taxotere, correct?

A. Well, I was focused on issues relevant to Taxotere in the setting of the treatments that breast cancer patients received. So I looked at the regimens, if that's what you're asking.

MR. STRONGMAN: May I approach, Your Honor?

THE COURT: Yes, you may.

EXAMINATION BY MR. STRONGMAN:

Q. Now, Dr. Feigal, one more question. During your direct examination with Mr. Miceli, you did not offer any opinions about the overall exposure in the entire patient population for each individual drug, correct?

A. Well, I did talk about -- I thought I talked about the cumulative dose for those papers.

Q. Let me just ask it a different way. You didn't offer any opinions about how many patients worldwide were exposed to one drug or another drug or another drug, correct?

A. Worldwide?

Q. Yes.

A. No.

Q. You didn't offer any opinions about that, correct?

A. I didn't offer opinion on worldwide exposure.

Q. Now, what I've handed you is the Crown poster, correct?

A. Correct.

Q. Crown is included in your list; is it not?