UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

---

**DEFENDANTS' RESPONSES TO PLAINTIFF'S STATEMENT OF
DISPUTED MATERIAL FACTS FOR HER PARTIAL MOTION FOR
SUMMARY JUDGMENT ON THE COMPARATIVE FAULT
OF HER TREATING PHYSICIANS AND MISUSE OF TAXOTERE**

---

**PLAINTIFF STATEMENT NO. 1:** *Plaintiff was administered Taxotere manufactured by Defendants, sanofi-aventis U.S. LLC and Sanofi US Services Inc., Exhibit 1, Amended Short Form Complaint at pp. 1-4.*

**RESPONSE NO. 1:** Admitted.

**PLAINTIFF STATEMENT NO. 2:** *Plaintiff was diagnosed with breast cancer in April of 2008. Exhibit 2, Medical Records of Carl Kardinal, M.D. at p. 1.*

**RESPONSE NO. 2:** Admitted.

**PLAINTIFF STATEMENT NO. 3:** *Plaintiff began breast cancer treatment with Carl Kardinal, M.D. on April 22, 2008. Id. Dr. Kardinal recommended a course of breast cancer treatment to Plaintiff that included enrollment in the NSABP B-40 clinical trial because the clinical trial was the standard of care or better. Exhibit 2 at pp. 1-5 and Exhibit 3, Deposition of Carl Kardinal, M.D. at 99:22-100:18. Plaintiff agreed to participate in the NSABP B-40 clinical trial and was randomized to receive Taxotere, Xeloda, and Avastin. Exhibit 4, Provider Note at p. 1.*

**RESPONSE NO. 3:** Admitted that Ms. Kahn began breast cancer treatment with Carl Kardinal, M.D. on April 22, 2008. Admitted that Dr. Kardinal testified he recommended Ms. Kahn enroll in the NSABP B-40 clinical trial because it was the standard of care or better. Admitted that Ms. Kahn agreed to participate in the clinical trial and that the determination of which regimen

she received was randomized. Denied that Ms. Kahn received only Taxotere, Xeloda, and Avastin. Ms. Kahn also received Adriamycin and cyclophosphamide for four cycles during Phase II of her treatment, which she completed on October 23, 2008.[1]

       **PLAINTIFF STATEMENT NO. 4:**    *Plaintiff received Taxotere in connection with the NSABP B-40 clinical trial. Id.*

       **RESPONSE NO. 4:** Admitted.

       **PLAINTIFF STATEMENT NO. 5:**    *Zoe L. Larned, M.D. began treating Plaintiff in June of 2008. Exhibit 5, Deposition of Dr. Zoe Larned at 66:14-21. Dr. Larned did not prescribe a chemotherapy regimen for Plaintiff because of her ongoing participation in the NSABP B-40 clinical trial. Id. at 66:22-67:2 & 128:23-129:19. Dr. Larned did not prescribe Taxotere to Plaintiff or discuss the risks and benefits of Taxotere with her. Id.*

       **RESPONSE NO. 5:** Admitted.

       **PLAINTIFF STATEMENT NO. 6:**    *John A. Glaspy, M.D., an oncologist and expert witness for Defendants, testified that Plaintiff's treating physicians did nothing below the standard of care as it relates to the breast cancer treatment provided to her. Exhibit 6, May 13, 2020 Deposition of John A. Glaspy, M.D. at 56:24-58:3 & 125:8-128:9. Dr. Glaspy does not believe that Dr. Kardinal breached the standard of care in diagnosing and selecting a treatment plan for Plaintiff. Id. at 57:7-58:3 & 125:8-128:9. It is Dr. Glaspy's assessment that there was no medical malpractice on the part of Plaintiff's treating physicians. Id. at 57:14-21 & 125:8-128:9.*

       **RESPONSE NO. 6:** Admitted.

       **PLAINTIFF STATEMENT NO. 7:**    *Another defense expert and oncologist, Gerald P. Miletello, M.D., also concluded that the breast cancer treatment provided to Plaintiff was all within the standard of care. Exhibit 7, May 21, 2020 Deposition of Gerald P. Miletello, M.D. at 24:4-20.*

       **RESPONSE NO. 7:** Admitted.

       **PLAINTIFF STATEMENT NO. 8:**    *The breast cancer treatment provided to Plaintiff by Dr. Kardinal and Dr. Larned did not deviate from the applicable standard of care. Exhibit 6 at 56:24-58:3 & 125:8-128:9 and Exhibit 7 at 24:4-20.*

---

[1]   **Ex. A**, Ochsner Health System 1056–58.

**RESPONSE NO. 8:** Admitted.

**PLAINTIFF STATEMENT NO. 9:** Taxotere is often used by oncologists including Dr. Glaspy off-label. Exhibit 8, Expert Report of John Glaspy, M.D. at p. 15 and Exhibit 6 at 163:3-164:23. It is well known throughout the oncology field that oncologists follow preferred regimens for Taxotere that are either detailed in clinical trials or accepted by the NCCN Guidelines but not on-label. Exhibit 6 at 164:5-16. Dr. Glaspy does not criticize the care received by Plaintiff and will not offer an opinion that the Taxotere taken in connection with the NSABP B-40 clinical trial was an improper neoadjuvant treatment of her breast cancer. Id. at 162:11-165:5. Plaintiff was eligible for the NSABP B-40 clinical trial "and it was within the standard of care to inform Ms. Kahn about the clinical trial." Exhibit 8 at p. 41.

**RESPONSE NO. 9:** Admitted.

**PLAINTIFF STATEMENT NO. 10:** Dr. Miletello further agrees that "it was within the standard of care for Dr. Kardinal to inform Ms. Kahn about the clinical trial and recommend that regimen to treat Ms. Kahn's cancer." Exhibit 9, Expert Report of Gerald P. Miletello, M.D. at p. 2 & 16 and Exhibit 7 at 24:21-25:25. The off-label chemotherapy regimen administered to Plaintiff in the NSABP B-40 clinical trial is an approved line of treatment and within the standard of care. Exhibit 7 at 26:1-30:21. In addition, the chemotherapy dosages received by Plaintiff were appropriate. Id. at 32:14-21. The prescription of chemotherapy regimens off-label was not unusual in 2008 or today. Id. at 28:13-29:13.

**RESPONSE NO. 10:** Admitted with respect to the first sentence. Denied that "the NSABP B-40 clinical trial is an approved line of treatment," which suggests that the experimental treatment regimens studied in the clinical trial were FDA-approved. Specifically, Dr. Miletello testified that off-label use means that "[i]t's not FDA-approved as of this time for -- when they say it's off-label, it's not been FDA-approved to treat a certain type of cancer" and that the "chemotherapy regimen that Elizabeth Kahn was administered in this case by Dr. Kardinal was technically off-label."[2]

**PLAINTIFF STATEMENT NO. 11:** According to Dr. Glaspy, Plaintiff's use of Taxotere was as prescribed and in accordance with accepted prescribing practices. Exhibit 8 at p. 15, Exhibit 6 at 162:11-165:5, Exhibit 9 at p. 2 & 16, and Exhibit 7 at 24:21-30:21 & 32:14-21.

---

[2] **Ex. B**, May 21, 2020 Miletello Dep. 27:5–30:2.

3

**RESPONSE NO. 11:**  Admitted.

**PLAINTIFF STATEMENT NO. 12:**  *Sanofi's Fifteenth Affirmative Defense: The injuries and/or damages allegedly sustained by Plaintiffs were caused or contributed to be caused by third parties for whom Sanofi Defendants are not responsible and whom Sanofi Defendants have no right to control.*

**RESPONSE NO. 12:**  Defendants admit that Plaintiff has correctly stated Defendants' Fifteenth Affirmative Defense.

**PLAINTIFF STATEMENT NO. 13:**  *Sanofi's Eighteenth Affirmative Defense: If any loss, damage, injury, harm, expense, diminution, or deprivation alleged by Plaintiffs was caused by any product manufactured or distributed by Sanofi Defendants, which Sanofi Defendants deny, the same was attributable to Plaintiffs' misuse of the product, including but not limited to the following:*

  a. *failing to seek timely medical advice and care;*

  b. *failing to inform treating physicians and health care providers as to the true and complete nature of Plaintiffs' conditions;*

  c. *failing to follow medical advice and instruction;*

  d. *failing to take other medications in the manner and dosage prescribed;*

  e. *misuse or abuse of Taxotere® and/or docetaxel;*

  f. *alteration or negative use of Taxotere® and/or docetaxel;*

  g. *failing to follow the package insert and prescriber's information for Taxotere® and/or docetaxel; and*

  h. *failing to otherwise properly care for and preserve Plaintiffs' physical health.*

**RESPONSE NO. 13:**  Defendants admit that Plaintiff has correctly stated Defendants' Eighteenth Affirmative Defense.

**PLAINTIFF STATEMENT NO. 14:**  *Sanofi's Nineteenth Affirmative Defense: The alleged injuries and damages of which Plaintiffs complain were not caused by any docetaxel product manufactured, sold, or distributed by Sanofi Defendants or any actions of Sanofi Defendants of any kind, but were caused by some other product, process, occurrence, event, service, and/or person over which Sanofi Defendants exercised no control or right of control.*

**RESPONSE NO. 14:** Defendants admit that Plaintiff has correctly stated Defendants' Nineteenth Affirmative Defense.

**PLAINTIFF STATEMENT NO. 15:** *Sanofi's Twenty-First Affirmative Defense: Sanofi Defendants are liable only for damages found by the trier of fact equal to their percentage of responsibility, if any. Pursuant to Louisiana Civil Code article 2323, and any similar provisions under any applicable state law deemed to apply to the individual Plaintiffs' claims, if a person suffers injury, death, or loss as the result partly of her own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. Furthermore, liability for damages caused by two or more persons shall be a joint and divisible obligation. See, e.g., La. C.C. art. 2324. Furthermore, Sanofi Defendants contend that they shall not be solely liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute, or otherwise. See, e.g., id.*

**RESPONSE NO. 15:** Defendants admit that Plaintiff has correctly stated Defendants' Twenty-First Affirmative Defense.

**PLAINTIFF STATEMENT NO. 16:** *Sanofi's Twenty-Sixth Affirmative Defense: Plaintiffs' claims against Sanofi Defendants are barred as Plaintiffs' alleged injuries and/or damages, if any, were proximately caused by intervening and/or superseding events (including acts and/or omissions) attributable to persons, firms, or corporations other than Sanofi Defendants, and any action or omission on the part of Sanofi Defendants was not the proximate cause of the alleged injuries and/or damages.*

**RESPONSE NO. 16:** Defendants admit that Plaintiff has correctly stated Defendants' Twenty-Sixth Affirmative Defense.

**PLAINTIFF STATEMENT NO. 17:** *Sanofi's Twenty-Seventh Affirmative Defense: Upon information and belief, there exists no proximate causation between any alleged act, omission, breach of duty, or breach of warranty (none being admitted) by Sanofi Defendants and Plaintiffs' alleged damages, injuries, and/or losses, and all of Plaintiffs' alleged damages, injuries, and/or losses, if any, were the result of conduct by persons other than Sanofi Defendants.*

**RESPONSE NO. 17:** Defendants admit that Plaintiff has correctly stated Defendants' Twenty-Seventh Affirmative Defense.

**PLAINTIFF STATEMENT NO. 18:** *Sanofi's Forty-Fourth Affirmative Defense: If any loss, damage, injury, harm, expense, diminution, or deprivation alleged by Plaintiffs were caused by any product manufactured or distributed by Sanofi Defendants, which Sanofi Defendants deny, the actions or omissions of other persons and the independent knowledge and awareness of such other persons of the risks inherent in the use of such products and other independent causes, such as idiosyncratic reactions, pre-existing or co-existing medical conditions, constitute intervening and/or superseding causes between Plaintiffs' alleged injuries and any alleged acts, conduct, or omissions of Sanofi Defendants.*

**RESPONSE NO. 18:** Defendants admit that Plaintiff has correctly stated Defendants' Forty-Fourth Affirmative Defense.

**PLAINTIFF STATEMENT NO. 19:** *Sanofi's Ninety-First Affirmative Defense: Plaintiffs' causes of action are barred, in whole or in part, and the recoverable damages, if any, should be apportioned or diminished, because the fault, negligence and culpable conduct of parties or non-parties over whom Sanofi Defendants have no control and no responsibility caused or contributed to the injuries and damages allegedly sustained.*

**RESPONSE NO. 19:** Defendants admit that Plaintiff has correctly stated Defendants' Ninety-First Affirmative Defense.

## DEFENDANTS' AFFIRMATIVE STATEMENT OF FACTS

1. Dr. Kardinal recommended that Ms. Kahn participate in an experimental clinical trial (NSABP B-40), even though it fell outside of the NCCN guidelines and required that she take Taxotere and other certain investigational drugs in a manner inconsistent with the FDA-approved indication.[3]

2. Dr. Kardinal testified that he reviewed the Taxotere label at the time he first started prescribing Taxotere to patients in the late 1990s, but he has no recollection of reviewing it since.[4]

3. Random selection was used to pick which of six chemotherapy regimens participants, like Ms. Kahn, might receive in the clinical trial.[5]

4. Ms. Kahn consented to the clinical trial and initialed each page of the consent form, indicating she understood and accepted that the clinical trial posed certain side effects (specifically "hair loss") and that some side effects might be permanent.[6]

---

[3] **Ex. C**, Apr. 29, 2020 Glaspy Rpt. at 37–40 (describing NSABP B-40 clinical trial as "an experimental clinical trial" in which "the regimens were outside of the labeling and NCCN guidelines in existence at the time" and discussing the randomization of patient regimens); *see also* **Ex. D**, May 13, 2020 Glaspy Dep. 162:6–166:22 (testifying that NSABP B-40 investigated whether gemcitabine, bevacizumab, and capecitabine "added anything" to the standard of care drugs, Taxotere, Adriamycin, and cyclophosphamide).

[4] **Ex. E**, Jan. 17, 2018 Kardinal Dep. 28:2–15, 30:3–10.

[5] *Id.* at 108:22–110:11; Ex. C, Apr. 29, 2020 Glaspy Rpt. at 38 ("Participants in NSABP-40 were randomly assigned to one of three neo-adjuvant . . . treatment arms, with or without bevacizumab (Avastin), which created a total of six possible treatment arms").

[6] **Ex. F**, Dec. 7, 2017 Kahn Dep. 190:3–23, 203:4–205:10.

7

Respectfully submitted,

/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
Facsimile: 504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*