# EXHIBIT G

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

***************************************************************
IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                         Civil Action No. 16-MD-2740
                         Section "H"(5)
                         New Orleans, Louisiana
                         September 5, 2019

THIS DOCUMENT RELATES TO ALL CASES
***************************************************************


                    TRANSCRIPT OF MOTION HEARING
          HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:

                    DAWN BARRIOS
                    BARRIOS KINGSDORF & CASTEIX
                    701 POYDRAS STREET
                    SUITE 3650
                    NEW ORLEANS, LA 70139

                    MATTHEW PALMER LAMBERT
                    GAINSBURGH BENJAMIN DAVID MEUNIER
                    & WARSHAUER
                    1100 POYDRAS STREET
                    SUITE 2800
                    NEW ORLEANS, LA 70163

                    DARIN SCHANKER
                    BACHUS & SCHANKER
                    1899 WYNKOOP STREET
                    SUITE 700
                    DENVER, CO 80202

                    CHRISTOPHER COFFIN
                    PENDLEY BAUDIN & COFFIN
                    1515 POYDRAS STREET
                    NEW ORLEANS, LA 70112
```

Page 9

```
01:06:53PM  1         MS. SASTRE:  And no question is it off-label, Your
01:06:56PM  2    Honor and so --
01:06:56PM  3         THE COURT:  Okay.  So I guess then the follow-up
01:06:58PM  4    question is --
01:06:59PM  5         MS. SASTRE:  Yes.
01:06:59PM  6         THE COURT:  -- are you going to -- is there any
01:07:02PM  7    testimony that the fact that it was off-label in some way
01:07:06PM  8    caused the alopecia?
01:07:09PM  9         MS. SASTRE:  We are not going to have a witness
01:07:13PM 10    testify that the Taxotere regardless of the dosing was the
01:07:17PM 11    substantial cause of her permanent hair loss.  So --
01:07:20PM 12         THE COURT:  As I appreciate -- I'm just -- because I
01:07:21PM 13    think everybody is kind of dancing around.  I just -- is
01:07:27PM 14    there going to be evidence presented -- I think -- I will
01:07:33PM 15    tell you, I think it's appropriate to say that this is
01:07:37PM 16    off-label.  I think that's fine.  It's within the standard of
01:07:40PM 17    care.  Is that where it's going to end or is there going to
01:07:43PM 18    be some inference with no evidence to back it up that that's
01:07:47PM 19    what caused alopecia?
01:07:50PM 20         MS. SASTRE:  I mean, we don't have a witness who's
01:07:53PM 21    going to testify and say that Taxotere was the cause of her
01:07:56PM 22    hair loss, Your Honor.  Our contention is as I think the
01:07:58PM 23    court and counsel's quite aware is --
01:07:58PM 24         THE COURT:  I --
01:07:59PM 25         MS. SASTRE:  -- it's quite to the contrary.
```

Page 10

```
01:08:01PM  1         THE COURT:  So this is what I will allow you to ask
01:08:04PM  2    this witness because I'm not going to let you backdoor with
01:08:08PM  3    inferences with no evidence to back it up.  I think it's
01:08:11PM  4    appropriate for you to ask Dr. Carinder what options were
01:08:17PM  5    available, you saw those options, you had this discussion
01:08:20PM  6    with your patient, that you chose -- you recommended this
01:08:26PM  7    course of treatment which was -- which was followed.
01:08:32PM  8    Whatever.  I think you can ask him, "Is this off-label?"  But
01:08:35PM  9    it is within the standard of care, and then that's it.
01:08:40PM 10         MS. SASTRE:  Okay.
01:08:43PM 11         THE COURT:  You understand?  I don't think -- I don't
01:08:44PM 12    think you can make an argument with no evidence to back it up
01:08:47PM 13    because that's what -- what you've told me is, you've got no
01:08:52PM 14    witness to say that off-label somehow or another caused the
01:08:58PM 15    alopecia.
01:09:00PM 16         MS. SASTRE:  We don't have a witness, Your Honor,
01:09:02PM 17    who's going to say that the Taxotere caused the alopecia
01:09:08PM 18    regardless of the dosing, caused the permanent hair loss --
01:09:10PM 19         THE COURT:  Then what's the problem?
01:09:12PM 20         MS. SASTRE:  Right.  So I agree with that.  I just
01:09:15PM 21    want to make sure that's the only thing the Court is
01:09:18PM 22    excluding which is something we're not going to talk about
01:09:20PM 23    anyway.
01:09:21PM 24         THE COURT:  I think that's all they're asking for.
01:09:26PM 25    I'm not -- I guess I'm a little bit -- again, starting with
```

Page 11

```
01:09:29PM  1    question marks, I'm not sure what the plaintiff is requesting
01:09:32PM  2    in this.  I think what I first read was a motion in limine to
01:09:40PM  3    preclude you from saying that Dr. Carinder violated the
01:09:45PM  4    standard of care, which I saw nothing that I can see in
01:09:52PM  5    anything that would be an issue there.  And then the response
01:09:56PM  6    was very different, the opposition was very different from
01:10:00PM  7    the motion, so I was really struggling to determine what this
01:10:04PM  8    is.  I think it's appropriate for you to ask Dr. Carinder
01:10:07PM  9    what his options were, what recommendations he made to this
01:10:11PM 10    -- this patient, why he made those recommendations, what he
01:10:13PM 11    would have done had he been properly warned that this -- and
01:10:22PM 12    when I say properly, just -- that's the allegation of the
01:10:25PM 13    lawsuit, that he'd been warned that this medication runs a
01:10:29PM 14    risk of permanent alopecia.  I would have told her, we would
01:10:32PM 15    have had further conversation and the jury is going to make a
01:10:36PM 16    determination much beyond that.  And I think -- I believe it
01:10:41PM 17    to be appropriate for you to say, now, you were going to
01:10:46PM 18    prescribe such and such and such and such, that's off-label,
01:10:49PM 19    correct?  But I think it's fine for them to respond that's
01:10:53PM 20    within the standard of care.  So it's not -- what I'm not
01:10:57PM 21    going to allow is that inference that he prescribed off-label
01:11:04PM 22    and somehow that was beyond the standard of care and that's
01:11:13PM 23    what really caused all of this as opposed to that was within
01:11:15PM 24    the standard of care.  I think it's fine for you to say it
01:11:18PM 25    was off-label.
```

Page 12

```
01:11:18PM  1         MS. SASTRE:  Sure.
01:11:19PM  2         THE COURT:  Lots of prescriptions are prescribed
01:11:21PM  3    off-label.  And it doesn't mean that that -- that there's
01:11:26PM  4    anything wrong with it.  I think they can follow up.  I'm not
01:11:30PM  5    hearing that you want any more than that.
01:11:35PM  6         MS. SASTRE:  Well, it's plaintiff's motion, Your
01:11:36PM  7    Honor, and I think that's in part where some of the
01:11:39PM  8    disconnect comes from.  Because there was what was written in
01:11:41PM  9    the motion and then there was what counsel articulated.  The
01:11:43PM 10    motion really asked for three things, Judge.  It said that --
01:11:46PM 11    it said that defendants should be precluded from arguing or
01:11:49PM 12    admitting evidence that Dr. Carinder's responsible in this
01:11:53PM 13    case, and on that I just sort of feel like, look, we're able
01:11:56PM 14    to use everyday normal words.  He was her doctor.  He was in
01:12:01PM 15    charge of her care and treatment.  I think that's an easy
01:12:04PM 16    one.
01:12:04PM 17         And the second things they mentioned, Judge, were
01:12:06PM 18    that it should be excluded from evidence, that he prescribed
01:12:09PM 19    off-label and that he did not prescribe a preferred regimen.
01:12:13PM 20    That's all that they asked for in the written papers --
01:12:13PM 21         THE COURT:  But what I'm telling you is --
01:12:17PM 22         MS. SASTRE:  -- and on that I believe the Court has
01:12:18PM 23    denied the motion.  That's the only thing in writing.  The
01:12:22PM 24    only specific things were that he prescribed off-label and
01:12:25PM 25    that he did not prescribe a preferred regimen.  And the
```

Page 13

```
01:12:29PM  1   preferred regimen is simply within the guidelines, which I
01:12:33PM  2   believe, Your Honor, just articulated was an appropriate
01:12:37PM  3   area of inquiry along with --
01:12:37PM  4           THE COURT: Right.
01:12:37PM  5           MS. SASTRE: -- prescribing in a way --
01:12:37PM  6           THE COURT: What my concern was and the way I read
01:12:39PM  7   the motion was that there was not going to be an allegation
01:12:43PM  8   that somehow or another that Dr. Carinder committed
01:12:47PM  9   malpractice. That's very frankly how I read the motion, and
01:12:53PM 10   I don't think I read anything -- and you all have given me a
01:12:56PM 11   great deal to read -- that anybody says Dr. Carinder
01:12:59PM 12   committed any sort of malpractice. You can ask him about
01:13:03PM 13   off-label and then I think it's appropriate for them to say
01:13:07PM 14   that that's an acceptable -- it's within the standard of
01:13:10PM 15   care. I think that's fine. And then be done with it. I'm
01:13:12PM 16   not going to go -- I will not allow anybody to run down some
01:13:15PM 17   rabbit hole of malpractice. It's not at issue in this case.
01:13:19PM 18   We've got enough to cover with the issues at hand.
01:13:25PM 19           MS. SASTRE: Understood.
01:13:27PM 20           THE COURT: Okay. Any questions?
01:13:29PM 21           MR. SCHANKER: Your Honor, just -- thank you, Your
01:13:31PM 22   Honor. Just clarification. It is a factual dispute as to
01:13:34PM 23   whether it was off-label or not off-label.
01:13:36PM 24           THE COURT: I think you can ask him that.
01:13:38PM 25           MR. SCHANKER: Thank you.
```

Page 14

```
01:13:39PM  1           THE COURT: You can ask him. He can answer it. But
01:13:45PM  2   I'm not going to run -- I'm not going to allow you to run
01:13:48PM  3   down that rabbit hole with some red herring about somebody
01:13:53PM  4   violating the standard of care. So I would say that it is --
01:14:04PM  5   whew, goodness. I think it was granted in part and denied in
01:14:08PM  6   part, and my reasons articulated are sufficient for you to
01:14:15PM  7   understand what you're allowed to do.
01:14:17PM  8           Okay. Second motion is Motion in Limine to Preclude
01:14:21PM  9   Evidence of Unrelated Medical Conditions Familial Medical
01:14:27PM 10   History of Cancer and Unrelated Medication Usage.
01:14:31PM 11           MR. SCHANKER: I'm sorry, Your Honor. And you're
01:14:33PM 12   familiar obviously, you went through Fonseca, Dr. Fonseca, in
01:14:41PM 13   excluding him and without -- certainly Dr. Fonseca these --
01:14:43PM 14   what always were unrelated medical conditions are now clearly
01:14:48PM 15   unrelated medical conditions, whenever they may be, there is
01:14:52PM 16   no evidence, no testimony, no expert testimony to link any
01:14:55PM 17   health issues in this case to any allegation of permanent
01:15:00PM 18   hair loss whether it be weight, post-menopausal.
01:15:05PM 19           THE COURT: I don't remember -- and you may have to
01:15:09PM 20   help me, because some of this is -- I don't remember having a
01:15:16PM 21   Daubert motion as to -- I'm assuming the defendants have a
01:15:20PM 22   hair loss expert?
01:15:21PM 23           MR. SCHANKER: Yes, they do.
01:15:22PM 24           THE COURT: Comparable to Dr. Tosti?
01:15:27PM 25           MR. SCHANKER: Arguable whether comparable -- yes.
```

Page 15

```
01:15:31PM  1   No. I'm joking, Your Honor. Kind of.
01:15:31PM  2           THE COURT: That's a shocker.
01:15:37PM  3           MR. SCHANKER: Yes, the defense has a dermatologist,
01:15:39PM  4   yes, you're correct, to talk about hair issues. But they
01:15:42PM  5   also endorse Dr. Fonseca, an endocrinologist, who the Court
01:15:48PM  6   struck --
01:15:49PM  7           THE COURT: I think they ultimately withdrew --
01:15:49PM  8           MR. SCHANKER: Yes.
01:15:53PM  9           THE COURT: -- after I -- the representations of my
01:15:58PM 10   attitude.
01:15:58PM 11           MR. SCHANKER: So bottom line in this case is
01:16:00PM 12   that Dr. -- no Dr. Shapiro, nor Dr. Tosti, so focusing on the
01:16:07PM 13   experts in this case who could arguably offer opinions on
01:16:12PM 14   this, there is no specific opinion offered by Dr. Shapiro or
01:16:18PM 15   Dr. Tosti that any of these health issues that have been
01:16:19PM 16   brought up over and over in depositions of doctors, that any
01:16:22PM 17   of them in any way contribute in any way, shape, or form to
01:16:26PM 18   the plaintiff's alleged permanent hair loss. There's no
01:16:30PM 19   evidence linking. There's no causal link. And so similar --
01:16:33PM 20   and similar with the medications that she takes and she takes
01:16:37PM 21   a handful of medications for a variety of different things,
01:16:40PM 22   but there is no expert testimony that specifically links
01:16:45PM 23   medication X to causing Barbara Earnest's alleged permanent
01:16:51PM 24   hair loss or temporary hair loss or whatever it is that she
01:16:53PM 25   has at this point in time. And so plain and simple, simply
```

Page 16

```
01:16:55PM  1   there is no relevance and, obviously, it would be highly
01:16:57PM  2   prejudicial and misleading to the jury.
01:17:00PM  3           THE COURT: Okay. Thank you.
01:17:01PM  4           Who's arguing?
01:17:04PM  5           MS. SASTRE: Your Honor.
01:17:04PM  6           THE COURT: Yes.
01:17:06PM  7           MS. SASTRE: So what I think that I just heard in
01:17:08PM  8   combination with what I read is that the plaintiffs are
01:17:11PM  9   asking for a blanket exclusion of medical evidence or history
01:17:16PM 10   and in what is a personal injury case they deem to be
01:17:21PM 11   unrelated without the defendant even having an opportunity to
01:17:25PM 12   lay a foundation and connect the dots on why we're entitled
01:17:28PM 13   to talk about --
01:17:29PM 14           THE COURT: This would be my problem. I have to tell
01:17:31PM 15   you. And this was part of when I read Dr. Fonseca's report
01:17:38PM 16   and he said because of her weight, I think she's probably
01:17:41PM 17   insulin resistant. And what I'm not going to allow under any
01:17:48PM 18   circumstance is any evidence that would -- certainly because
01:17:51PM 19   she's this age and she weighs this much, she must be -- you
01:17:54PM 20   know, there's no medical evidence of some of these things,
01:17:59PM 21   you know, I think there's talk about fatty liver syndrome,
01:18:07PM 22   certain vitamin deficiencies. Do you all have any direct
01:18:09PM 23   evidence of these?
01:18:10PM 24           MS. SASTRE: Yes, ma'am, we do. Your Honor, I want
01:18:12PM 25   to be very clear here. These are issues that are highly
```