# EXHIBIT E

## Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)   *
PRODUCTS LIABILITY LITIGATION  *   Docket No.: 16-MD-2740
                               *   Section "H(5)"
                               *   New Orleans, Louisiana
Relates to: Barbara Earnest    *   September 18, 2019
Case No.: 16-CV-17144          *
* * * * * * * * * * * * * * * * *

DAY 3 - AFTERNOON SESSION
TRANSCRIPT OF JURY TRIAL BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:    Barrios Kingsdorf & Casteix, LLP
                       BY: DAWN M. BARRIOS, ESQ.
                       701 Poydras Street
                       Suite 3650
                       New Orleans, Louisiana 70139

For the Plaintiffs:    Gainsburgh Benjamin David Meunier
                       & Warshauer, LLC
                       BY: M. PALMER LAMBERT, ESQ.
                       1100 Poydras Street
                       Suite 2800
                       New Orleans, Louisiana 70163

For the Plaintiffs:    Pendley Baudin & Coffin, LLP
                       BY: CHRISTOPHER L. COFFIN, ESQ.
                       1100 Poydras Street
                       Suite 2505
                       New Orleans, Louisiana 70163

OFFICIAL TRANSCRIPT

## Page 2

APPEARANCES:

For the Plaintiffs:    Gibbs Law Group, LLP
                       BY: KAREN BARTH MENZIES, ESQ.
                       6701 Center Drive West
                       Suite 1400
                       Los Angeles, California 90045

For the Plaintiffs:    Bachus & Schanker, LLC
                       BY: J. KYLE BACHUS, ESQ.
                       DARIN L. SCHANKER, ESQ.
                       1899 Wynkoop Street
                       Suite 700
                       Denver, Colorado 80202

For the Plaintiffs:    Fleming Nolen & Jez, LLP
                       BY: RAND P. NOLEN, ESQ.
                       2800 Post Oak Boulevard
                       Suite 4000
                       Houston, Texas 77056

For the Plaintiffs:    DAVID F. MICELI LLC
                       BY: DAVID F. MICELI ESQ.
                       Post Office Box 2519
                       Carrollton, Georgia 30112

For the Plaintiffs:    Morgan & Morgan, P.A.
                       BY: EMILY C. JEFFCOTT, ESQ.
                       700 S. Palafox Street
                       Suite 95
                       Pensacola, Florida 32502

For the Sanofi         Irwin Fritchie Urquhart
Defendants:            & Moore, LLC
                       BY: DOUGLAS J. MOORE, ESQ.
                       400 Poydras Street
                       Suite 2700
                       New Orleans, Louisiana 70130

OFFICIAL TRANSCRIPT

## Page 3

APPEARANCES:

For the Sanofi         Shook Hardy & Bacon, LLP
Defendants:            BY: HARLEY V. RATLIFF, ESQ.
                       JON A. STRONGMAN, ESQ.
                       2555 Grand Boulevard
                       Kansas City, Missouri 64108

For the Sanofi         Shook Hardy & Bacon, LLP
Defendants:            BY: HILDY M. SASTRE, ESQ.
                       201 Biscayne Boulevard, Suite 3200
                       Miami, Florida 33131

Official Court Reporter:   Jodi Simcox, RMR, FCRR
                           500 Poydras Street
                           Room HB-275
                           New Orleans, Louisiana 70130
                           (504) 589-7780

Proceedings recorded by mechanical stenography, transcript

produced by computer.

OFFICIAL TRANSCRIPT

## Page 4

I N D E X

Page

DAVID MADIGAN
    Cross-Examination By Mr. Strongman:      670
    Redirect Examination By Mr. Miceli:      723

JEAN-PHILIPPE AUSSEL
    Videotaped deposition                    739

LAURA MASSEY PLUNKETT
    Direct Examination By Mr. Nolen:         789
    Cross-Examination By Ms. Sastre:         826
    Redirect Examination By Mr. Nolen:       916

OFFICIAL TRANSCRIPT

Page 37

702

DAVID MADIGAN - CROSS

1:32PM 1 A. Okay. If you say so.

1:32PM 2 Q. Or "irreversible."

1:32PM 3     But here's my question, Doctor: If you actually look

1:32PM 4 in TAX 316 or TAX 301, is the word "irreversible alopecia"

1:32PM 5 reported there?

1:32PM 6 A. No. They call it "ongoing."

1:32PM 7 Q. They call it "ongoing."

1:32PM 8 A. Yeah.

1:32PM 9 Q. Do you know the definition of "ongoing" as it related to

1:32PM10 TAX 316?

1:32PM11 A. Meaning the --

1:32PM12 Q. Do you know?

1:33PM13 A. Yeah. The adverse event is persistent.

1:33PM14 Q. Do you know how that term is actually defined and followed

1:33PM15 up on as the study moves on in TAX 316?

1:33PM16 A. Their protocol says that, at every follow-up, you check

1:33PM17 for if side effects have reversed or are continuing, clinical

1:33PM18 adverse events that started on treatment.

1:33PM19 Q. And I have a similar question as it relates to TAX 316 and

1:33PM20 TAX 301, those -- the 29 and the 16 in TAX 316.

1:33PM21     Are you with me?

1:33PM22 A. Yes.

1:33PM23 Q. Did you actually pull any of the clinical information on

1:33PM24 any of those patients and look at them?

1:33PM25 A. I did not. I'm doing a statistical analysis, as any

OFFICIAL TRANSCRIPT

---

Page 38

703

DAVID MADIGAN - CROSS

1:33PM 1 biostatistician would do, of the frozen, locked clinical trial

1:33PM 2 data. That's not the nature of my analysis or of any analysis

1:33PM 3 that I one would do like this.

1:34PM 4 Q. And so you didn't open the bag on any of those 29 or those

1:34PM 5 16 to look underneath and see do any of these individuals

1:34PM 6 actually have alopecia that lasted longer than six months?

1:34PM 7 A. The database says -- states that they do. It's the frozen

1:34PM 8 file. It is what happened in the clinical trial. That's what

1:34PM 9 I look at.

1:34PM10 Q. That wasn't my question.

1:34PM11 A. I thought I answered your question.

1:34PM12 Q. My question was did you actually pull the clinical

1:34PM13 information on each one of those patients and evaluate it to

1:34PM14 determine whether or not any of them --

1:34PM15     MR. MICELI: Your Honor, this has been asked and

1:34PM16 answered. Object.

1:34PM17     THE COURT: I'm going to let him finish the question

1:34PM18 because I think -- finish your question.

1:34PM19 BY MR. STRONGMAN:

1:34PM20 Q. Doctor, did you actually pull --

1:34PM21     THE COURT: Overruled.

1:34PM22 BY MR. STRONGMAN:

1:34PM23 Q. -- any of the clinical medical information that gives the

1:34PM24 narrative about each one of those individual patients in the 29

1:34PM25 or the 16?

OFFICIAL TRANSCRIPT

---

Page 39

704

DAVID MADIGAN - CROSS

1:34PM 1 A. That's not what I do. It's not what a statistician does.

1:35PM 2 It's not the nature of my analysis. It's -- I'm conducting a

1:35PM 3 statistical analysis of the locked clinical trial data.

1:35PM 4 Q. And then what you did was you did these analyses, and

1:35PM 5 Mr. Miceli talked to you about a meta-analysis; correct?

1:35PM 6 A. Sure.

1:35PM 7 Q. And you did an analysis, actually, of each of the two

1:35PM 8 studies individually; correct?

1:35PM 9 A. Sure. As part -- on the way to -- to doing a

1:35PM10 meta-analysis, which is the totality of the evidence.

1:35PM11 Q. And when you did your analysis on each individual study,

1:35PM12 you set a parameter for statistical significance, a P value;

1:35PM13 correct?

1:35PM14 A. I computed a P value. Is that what you mean? Are we

1:35PM15 agreeing?

1:35PM16 Q. Well, you know what P value .05 means; right?

1:35PM17 A. So if the P value is less than .05, typically, it's not

1:36PM18 right or wrong but, typically, call that statistically

1:36PM19 significant.

1:36PM20 Q. So, Doctor, at the end of the TAX 316 study, you ran an

1:36PM21 analysis between the 29 and the 16 to see if there was a

1:36PM22 statistically significant difference between the two at that

1:36PM23 point in time; correct?

1:36PM24 A. No. That wasn't the purpose of why I did the analysis. I

1:36PM25 did the analysis to estimate the effect size. I computed a key

OFFICIAL TRANSCRIPT

---

Page 40

705

DAVID MADIGAN - CROSS

1:36PM 1 value along the way.

1:36PM 2     The way you phrased it there is -- I'm uncomfortable

1:36PM 3 with it. You're saying I did it to see whether it was

1:36PM 4 statistically significant. No, that's not why I did it.

1:36PM 5 Q. Maybe not the why but the result. Let's talk about the

1:36PM 6 result.

1:36PM 7 A. Sure.

1:36PM 8 Q. At the end of the ten-year study, when you compared the 29

1:36PM 9 and the 16 in TAX 316 -- are you with me so far?

1:36PM10 A. Absolutely.

1:36PM11 Q. -- your analysis showed that it was a not statistically

1:37PM12 significant result; correct?

1:37PM13 A. It just missed statistical significance, .054, I think

1:37PM14 or -- but you're right, it wasn't statistically significant.

1:37PM15 Q. And with regard to TAX 301, you did the same type of

1:37PM16 analysis; correct?

1:37PM17 A. Sure.

1:37PM18 Q. And what we know is, at the end of ten years, you looked

1:37PM19 to see whether or not there's a statistically significant

1:37PM20 difference, and you didn't find one there either; correct?

1:37PM21 A. Same problem with your question. I did not do either of

1:37PM22 those to see if they were statistically significant. I

1:37PM23 couldn't care less whether they're statistically significant or

1:37PM24 not because I'm going to do a meta-analysis that looks at the

1:37PM25 totality of the evidence, and that's what I care about.

OFFICIAL TRANSCRIPT

Page 41

706

DAVID MADIGAN - CROSS

1:37PM 1  Q.  Well, Doctor, you did an analysis of TAX 316 alone; right?
1:37PM 2  A.  Sure.  But not -- the way you're characterizing it is I
1:37PM 3  did it to see if there was statistical significance.  That's
1:37PM 4  simply wrong.  I didn't do that.
1:37PM 5  Q.  Doctor, at the end of the ten-year analysis in TAX 301
1:37PM 6  alone, the Taxotere arm and the 5-FU arm were not statistically
1:38PM 7  significant in terms of the difference; correct?
1:38PM 8  A.  The P value is bigger than .05 in 301.
1:38PM 9  Q.  So the answer to my question is it is not statistically
1:38PM10  significant; correct?
1:38PM11  A.  Yeah.  I said that a couple minutes ago.
1:38PM12  Q.  Mr. Miceli also asked you some questions about my
1:38PM13  examination of Dr. Kessler yesterday on whether the 29 or the
1:38PM14  16 were actually followed for six months.
1:39PM15        Do you remember that?
1:39PM16  A.  I do.
1:39PM17  Q.  And I think you said something along the lines of you had
1:39PM18  never seen any document where Sanofi represented data to anyone
1:39PM19  consistent with the way that I asked Dr. Kessler those
1:39PM20  questions.
1:39PM21  A.  Something like that.  Yeah, I haven't seen a document like
1:39PM22  that.
1:39PM23        MR. STRONGMAN:  May I approach, Your Honor?
1:39PM24        THE COURT:  Yes, you may.
1:39PM25        MR. MICELI:  I think we need to approach the bench.

OFFICIAL TRANSCRIPT

---

Page 42

707

DAVID MADIGAN - CROSS

1:39PM 1        THE COURT:  Okay.
1:39PM 2        (WHEREUPON, the following proceedings were held at
1:39PM 3  the bench.)
1:40PM 4        MR. MICELI:  Your Honor, if I can address this -- I
1:40PM 5  need to go to page 10 of this document.  This is -- Your Honor,
1:40PM 6  this is a document that was used yesterday with Dr. Kessler.
1:40PM 7  It was not admitted.  There's no foundation for this -- to use
1:40PM 8  this with this witness.  It is also a document that if you --
1:40PM 9  that there's no foundation.
1:40PM10        THE COURT:  What is it?
1:40PM11        MR. MICELI:  I'll show you exactly what it is, Your
1:40PM12  Honor.  This is a listing of the TAX 316 adverse events for
1:40PM13  alopecia.  It's all adverse events.
1:40PM14        But if you look at the bottom here, you see this
1:40PM15  SAS string.  It ends in 2012.  Their statistician is testifying
1:41PM16  that if you see a SAS string that like that, it ends in 2012,
1:41PM17  that is an analysis he's done after 2011.
1:41PM18        If we're not allowed to put in stuff that's
1:41PM19  analyzed after 2011, the defendant should not be allowed to do
1:41PM20  so.  This is a 2012 reanalysis of --
1:41PM21        THE COURT:  Is this Dr. Kopreski?
1:41PM22        MR. MICELI:  This is not Dr. Kopreski.  But I suspect
1:41PM23  we'll learn, if he ever shows up in this courtroom, that this
1:41PM24  is where this came up with the Dr. Kopreski analysis.
1:41PM25        MR. STRONGMAN:  May I explain, Your Honor?

OFFICIAL TRANSCRIPT

---

Page 43

708

DAVID MADIGAN - CROSS

1:41PM 1        So what Dr. Madigan has said at the questioning
1:41PM 2  of Mr. Miceli is that nowhere did we ever represent that the
1:41PM 3  data meant what I asked Dr. Kessler about.
1:41PM 4        What this is, is this was a question, it was
1:41PM 5  asked, "What does 'ongoing' mean?"  The company provided the
1:41PM 6  data, and it said, "Here is the follow-up duration for the
1:41PM 7  adverse events."  And it just gives a time period.
1:41PM 8        If Mr. Miceli wants to talk -- this is the
1:41PM 9  TAX 316 data that we've been talking about all trial.  This
1:42PM10  isn't a --
1:42PM11        MR. MICELI:  This is not the TAX 316 data we've been
1:42PM12  talking about all trial.
1:42PM13        MR. STRONGMAN:  Just let me finish.
1:42PM14        MR. MICELI:  I will.
1:42PM15        MR. STRONGMAN:  So all this does it shows how long
1:42PM16  each individual patient for each adverse event was actually
1:42PM17  followed up on that adverse event.  And he has said
1:42PM18  unequivocally this didn't exist anywhere.  I feel like I -- I
1:42PM19  don't have to move it into evidence even.  I feel like I should
1:42PM20  be able to show it to him.
1:42PM21        MR. MICELI:  Your Honor, if you flip through those
1:42PM22  pages, what you're going to see is this is something that was
1:42PM23  produced in Canada.  What you told us we wouldn't be able to
1:42PM24  produce in here things from foreign countries.
1:42PM25        This is a reanalysis in 2012 of their data.

OFFICIAL TRANSCRIPT

---

Page 44

709

DAVID MADIGAN - CROSS

1:42PM 1  This is data that has never been shared with the FDA.  There's
1:42PM 2  no been no proof pushed through any deposition that this has been
1:42PM 3  provided to a regulatory agency.  This is not a statement from
1:42PM 4  Sanofi to anybody.
1:42PM 5        There's no -- there's certainly no proof of it.
1:42PM 6  There's no foundation that's been laid, and there's none that
1:43PM 7  can be laid to use this with this witness.
1:43PM 8        If this comes in, then we need to be able to
1:43PM 9  show the jury the 2015 clinical overview that analyzes
1:43PM10  partially data from before 2011.  In 2015, Sanofi is still
1:43PM11  representing 29 and 16.
1:43PM12        MR. STRONGMAN:  For ongoing.  It's just a matter of
1:43PM13  how "ongoing" is defined in this courtroom versus the actual
1:43PM14  study.
1:43PM15        MR. MICELI:  Well, Jon, it's important how they
1:43PM16  represented to the world, to the people who used the drug, and
1:43PM17  to the doctors.  This 29 and 16 is how they represented it.
1:43PM18        They're trying to create a false narrative
1:43PM19  before this jury.  And if they're going to do it, we have to
1:43PM20  have the opportunity -- if they go beyond 2011, we have to have
1:43PM21  the opportunity to do the same, Your Honor.
1:43PM22        THE COURT:  All right.
1:43PM23        MR. STRONGMAN:  Can I make just a couple of points?
1:43PM24        So, one, with regard to foreign regulatory, your
1:43PM25  order was clear that anything we say to a foreign regulatory

OFFICIAL TRANSCRIPT

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)   *
PRODUCTS LIABILITY LITIGATION   *   Docket No.: 16-MD-2740
                      *   Section "H(5)"
                      *   New Orleans, Louisiana
Relates to: Barbara Earnest   *   September 18, 2019
Case No.: 16-CV-17144   *
* * * * * * * * * * * * * * * * * *

DAY 3 - AFTERNOON SESSION
TRANSCRIPT OF JURY TRIAL BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:     Barrios Kingsdorf & Casteix, LLP
                  BY: DAWN M. BARRIOS, ESQ.
                  701 Poydras Street
                  Suite 3650
                  New Orleans, Louisiana 70139

For the Plaintiffs:     Gainsburgh Benjamin David Meunier
                  & Warshauer, LLC
                  BY:  M. PALMER LAMBERT, ESQ.
                  1100 Poydras Street
                  Suite 2800
                  New Orleans, Louisiana 70163

For the Plaintiffs:     Pendley Baudin & Coffin, LLP
                  BY: CHRISTOPHER L. COFFIN, ESQ.
                  1100 Poydras Street
                  Suite 2505
                  New Orleans, Louisiana 70163

OFFICIAL TRANSCRIPT

Page 2

APPEARANCES:

For the Plaintiffs:     Gibbs Law Group, LLP
                  BY:  KAREN BARTH MENZIES, ESQ.
                  6701 Center Drive West
                  Suite 1400
                  Los Angeles, California 90045

For the Plaintiffs:     Bachus & Schanker, LLC
                  BY: J. KYLE BACHUS, ESQ.
                       DARIN L. SCHANKER, ESQ.
                  1899 Wynkoop Street
                  Suite 700
                  Denver, Colorado 80202

For the Plaintiffs:     Fleming Nolen & Jez, LLP
                  BY:  RAND P. NOLEN, ESQ.
                  2800 Post Oak Boulevard
                  Suite 4000
                  Houston, Texas 77056

For the Plaintiffs:     DAVID F. MICELI, LLC
                  BY:  DAVID F. MICELI, ESQ.
                  Post Office Box 2519
                  Carrollton, Georgia 30112

For the Plaintiffs:     Morgan & Morgan, P.A.
                  BY:  EMILY C. JEFFCOTT, ESQ.
                  700 S. Palafox Street
                  Suite 95
                  Pensacola, Florida 32502

For the Sanofi         Irwin Fritchie Urquhart
Defendants:              & Moore, LLC
                  BY:  DOUGLAS J. MOORE, ESQ.
                  400 Poydras Street
                  Suite 2700
                  New Orleans, Louisiana 70130

OFFICIAL TRANSCRIPT

Page 3

APPEARANCES:

For the Sanofi         Shook Hardy & Bacon, LLP
Defendants:            BY:  HARLEY V. RATLIFF, ESQ.
                  JON A. STRONGMAN, ESQ.
                  2555 Grand Boulevard
                  Kansas City, Missouri 64108

For the Sanofi         Shook Hardy & Bacon, LLP
Defendants:            BY:  HILDY M. SASTRE, ESQ.
                  201 Biscayne Boulevard, Suite 3200
                  Miami, Florida 33131

Official Court Reporter:   Jodi Simcox, RMR, FCRR
                  500 Poydras Street
                  Room HB-275
                  New Orleans, Louisiana 70130
                  (504) 589-7780

Proceedings recorded by mechanical stenography, transcript

produced by computer.

OFFICIAL TRANSCRIPT

Page 4

I N D E X

|                                           | Page |
|-------------------------------------------|------|
| DAVID MADIGAN                             |      |
| Cross-Examination By Mr. Strongman        | 670  |
| Redirect Examination By Mr. Miceli:       | 723  |
|                                           |      |
| JEAN-PHILIPPE AUSSEL                       |      |
| Videotaped deposition                     | 739  |
|                                           |      |
| LAURA MASSEY PLUNKETT                      |      |
| Direct Examination By Mr. Nolen:          | 789  |
| Cross-Examination By Ms. Sastre:          | 826  |
| Redirect Examination By Mr. Nolen:        | 916  |

OFFICIAL TRANSCRIPT

## Page 193

858

LAURA MASSEY PLUNKETT - CROSS

5:22PM 1  A.  You did.

5:22PM 2  Q.  All right.  Now --

5:22PM 3      THE COURT:  The jury can make a determination whether

5:22PM 4  that was --

5:22PM 5      MS. SASTRE:  I'm sorry, Your Honor?

5:22PM 6      THE COURT:  Mr. Nolen was standing up to object, and

5:22PM 7  I overruled him before he got to say it.

5:22PM 8      MS. SASTRE:  I thought you were telling me something.

5:22PM 9  Okay.  All right.  No problem.  Thank you, Judge.

5:22PM 10  BY MS. SASTRE:

5:22PM 11  Q.  Okay.  Let's do this, Dr. Plunkett.  So let's talk about

5:22PM 12  that a little further.  Okay.

5:22PM 13      When you say that there's a group of chemotherapy

5:22PM 14  drugs and they're associated with hair loss, I'd like to make a

5:22PM 15  list with you.  Can we do that?

5:22PM 16  A.  Sure.

5:22PM 17  Q.  Okay.  Great.  So first let's start with Taxol.  Okay.  Is

5:22PM 18  Taxol associated with hair loss as a chemotherapy drug?

5:22PM 19  A.  Yes.  It is if you're -- and I assume -- but I want to

5:22PM 20  make sure we understand when I'm talking here, I'm talking

5:22PM 21  about drug-induced hair loss, which is the -- not the same as

5:23PM 22  permanent alopecia.  It's two different things.

5:23PM 23  Q.  We're going make a list.  The next thing we'll talk about

5:23PM 24  is whether those drugs with associated with persistent or

5:23PM 25  permanent alopecia.  Okay?

OFFICIAL TRANSCRIPT

## Page 194

859

LAURA MASSEY PLUNKETT - CROSS

5:23PM 1  A.  Okay.  So we're not doing just drug-induced alopecia, or

5:23PM 2  you are -- are you going to do both?

5:23PM 3  Q.  We're going to do both.  We're going to take it one step

5:23PM 4  at a time.  Okay?

5:23PM 5  A.  Okay.  That's fine.

5:23PM 6  Q.  Okay.  Very good.  So, Doctor, first, with regard to

5:23PM 7  Taxol, you would agree with me that Taxol has been associated

5:23PM 8  with alopecia; correct?

5:23PM 9  A.  Drug-induced reversible alopecia, yes, it has.

5:23PM 10  Q.  Okay.  So I'm going to write "Taxol" here.

5:23PM 11      You would agree with me that Adriamycin has also been

5:24PM 12  associated with alopecia or hair loss; correct?

5:24PM 13  A.  Yes.  It's the same drug as doxorubicin, but that's right.

5:24PM 14  Q.  Okay.  Did you know that Ms. Earnest took Adriamycin?  You

5:24PM 15  didn't; right?

5:24PM 16  A.  I didn't know her therapy.  But I assumed, if she was

5:24PM 17  taking Taxol, she was on the combination regimen, which would

5:24PM 18  include that.

5:24PM 19  Q.  Okay.  So Adriamycin is on our list.  All right.

5:24PM 20      You would agree with me that Cytoxan has been

5:24PM 21  associated with alopecia; correct?

5:24PM 22  A.  Yes, it has.  This drug-induced alopecia, yes.

5:24PM 23  Q.  And you'd also agree with me that a drug by the name of

5:24PM 24  5-FU or 5-fluorouracil has also been associated with alopecia;

5:24PM 25  correct?

OFFICIAL TRANSCRIPT

## Page 195

860

LAURA MASSEY PLUNKETT - CROSS

5:24PM 1  A.  Yes, with the reversible drug-induced, it has.

5:24PM 2  Q.  Okay.  And that's a drug that's frequently used in

5:25PM 3  combination with place and Cytoxan; correct?

5:25PM 4  A.  Yes.  It was part of the clinical trials.  The FAC was

5:25PM 5  5-FU, Adriamycin, Cytoxan.  And then the other, TAC, was

5:25PM 6  instead of 5-FU, Taxol.

5:25PM 7  Q.  Okay.  So I'll write "5-FU" here.  Okay.

5:25PM 8      And that was the as you said the first drug if one of

5:25PM 9  the arms of the TAX 316 clinical trial; correct?

5:25PM 10  A.  It was an interchangeable drug.  You took Taxol or you

5:25PM 11  took 5-FU, and the other drugs were the same.

5:25PM 12  Q.  And because it's almost 5:30 and I'm sure everyone's

5:25PM 13  tired, you would agree with me there's other drugs we could put

5:25PM 14  on that list; right?

5:25PM 15  A.  Yes.  Many drugs used to kill cancer cells will cause

5:25PM 16  drug-induced alopecia, hair loss.  It's common as reversible

5:25PM 17  side effect.

5:26PM 18  Q.  Okay.  Now, let's move on to the next step in the chart

5:26PM 19  that we're making.  Okay?

5:26PM 20  A.  Okay.

5:26PM 21  Q.  So you would agree with me that you identified permanent

5:26PM 22  hair loss as a hazard, a hazard of the Taxol; correct?

5:26PM 23  A.  There are some case reports, yes.  That's true.

5:26PM 24  Q.  Okay.  So I wrote "persistent" here.  I'm going to change

5:26PM 25  it.  I'm going to write "permanent."  Okay?

OFFICIAL TRANSCRIPT

## Page 196

861

LAURA MASSEY PLUNKETT - CROSS

5:26PM 1  A.  I think the reports would fit either definition.

5:26PM 2  Q.  Sometimes it's called one and sometimes it's called the other.

5:26PM 3  A.  Okay.  But let me just be clear.  When it came to Taxol

5:26PM 4  and the research and the work you did, you specifically

5:26PM 5  identified permanent hair loss as a hazard of Taxol; true?

5:26PM 6  A.  Within case reports, yes.  There were some case reports.

5:27PM 7  Q.  Let's talk about Adriamycin.  You identified permanent

5:27PM 8  hair loss as a hazard of Adriamycin; correct?

5:27PM 9  A.  Same answer.  There are some case reports for that as

5:27PM 10  well.  Not as many, but there are some.

5:27PM 11  Q.  But it's something you saw in the literature; correct?

5:27PM 12  A.  Yes, there are some case reports.

5:27PM 13  Q.  Okay.  And if we move to Cytoxan -- well, let me actually

5:27PM 14  stop for a moment.

5:27PM 15      Did you review the Adriamycin label?

5:27PM 16  A.  I believe that was on my reliance materials, yes.

5:27PM 17  Q.  Okay.

5:27PM 18  A.  I think I tell you that in my report, that I looked at the

5:27PM 19  labeling for the drugs that were used in combination with

5:27PM 20  Taxotere.

5:27PM 21  Q.  Okay.  And did you see that it says "reverse complete

5:27PM 22  alopecia occurs in most cases"?

5:27PM 23  A.  I don't recall the words.  I would have to pull it back

5:27PM 24  out.  But let me look at my report.  I might have it in here,

5:27PM 25  if you want me to -- I just don't recall the specific wording

OFFICIAL TRANSCRIPT

Page 205

870

LAURA MASSEY PLUNKETT - CROSS

5:49PM 1 intended to confuse the jury. It's intended to confuse the
5:50PM 2 jury. It's the May 8th, 2003. I don't know that this is the
5:50PM 3 label that would have been in existence at the time this drug
5:50PM 4 was prescribed.
5:50PM 5        THE COURT: I don't think that's the issue. I think
5:50PM 6 the issue is -- is that -- I believe the argument is Adriamycin
5:50PM 7 causes permanent alopecia. So that is -- I think it's for that
5:50PM 8 limited purpose.
5:50PM 9        MR. NOLEN: Your Honor, I would just add for the
5:50PM10 record that this is another one of those deals where you throw
5:50PM11 everything up against the wall and see what sticks. Because
5:50PM12 the reality is -- the reality is is that there is no
5:50PM13 statistically significant -- you can't prove statistically
5:50PM14 significant association between Adriamycin and permanent hair
5:50PM15 loss. We have done that research, Your Honor.
5:50PM16        THE COURT: Okay. I'm not telling you --
5:50PM17        MS. SASTRE: I don't know about it. I don't even
5:50PM18 know what that is.
5:50PM19        THE COURT: That's way past what I'm talking about
5:51PM20 here.
5:51PM21        MR. NOLEN: So you put it in, it's misleading.
5:51PM22        THE COURT: The question is whether or not this
5:51PM23 should come in. I think you questioned her about it, the
5:51PM24 document -- did she review this document?
5:51PM25        MS. SASTRE: She has three Adriamycin labels on her

OFFICIAL TRANSCRIPT

Page 206

871

LAURA MASSEY PLUNKETT - CROSS

5:51PM 1 reliance list, yes, Your Honor. She just said she reviewed
5:51PM 2 them. She reviewed them also in particular --
5:51PM 3        THE COURT: He can't help it.
5:51PM 4        MS. SASTRE: She reviewed them in particular, Your
5:51PM 5 Honor, because she also read them carefully because there's
5:51PM 6 clinical information contained within them. And a lot of her
5:51PM 7 opinions are based upon clinical information within the labels.
5:51PM 8 I mean, Judge, this case is -- Adriamycin is an issue that's
5:51PM 9 alive and well in this case in numerous respects.
5:51PM10        MR. NOLEN: Your Honor, that clinical information
5:51PM11 that all of her opinions are based on --
5:51PM12        THE COURT: Listen, I'm not going to do an assessment
5:51PM13 of whether or not -- and I think that gives you just whether or
5:51PM14 not it's relevant.
5:51PM15        MR. NOLEN: I did not elicit that testimony. And,
5:51PM16 therefore, again, it's 611. It exceeds the scope. So that's
5:52PM17 another objection.
5:52PM18        MS. SASTRE: It's a label for a drug she took, Judge.
5:52PM19 I'm just a little bit beside myself. It's a label for a drug
5:52PM20 she took.
5:52PM21        THE COURT: I don't think you need to be beside
5:52PM22 yourself.
5:52PM23        MS. SASTRE: Okay. I'm sorry. I'm tired, Judge. I
5:52PM24 apologize.
5:52PM25        THE COURT: We all are.

OFFICIAL TRANSCRIPT

Page 207

872

LAURA MASSEY PLUNKETT - CROSS

5:52PM 1        MS. SASTRE: Okay.
5:52PM 2        THE COURT: I'm going to allow it. The jury can make
5:52PM 3 a determination as to what it means.
5:52PM 4        (WHEREUPON, the following proceedings were held in
5:52PM 5 open court.)
5:53PM 6        MS. SASTRE: Your Honor, the defendant would move in
5:53PM 7 Exhibit D-388-D, then, Adriamycin labeling into evidence.
5:53PM 8        THE COURT: Over plaintiff's objection, let it be
5:53PM 9 admitted.
5:53PM10 BY MS. SASTRE:
5:53PM11 Q.   Okay. Very good.
5:53PM12        I'll just go ahead and put it up on the ELMO just
5:53PM13 because we have it right here. And so what we were talking
5:53PM14 about Dr. Plunkett is underneath the adverse reaction section,
5:53PM15 Adriamycin states "reversible complete alopecia occurs in most
5:53PM16 cases." Correct?
5:53PM17 A.   That's what is stated, which means most women will lose
5:53PM18 their hair as a result of drug, which I believe is true, that
5:53PM19 drug-induced alopecia.
5:53PM20 Q.   Okay. All right. Thank you.
5:53PM21        Now, if we go back to the chart that we're making,
5:53PM22 let's talk about Cytoxan for a moment.
5:54PM23 A.   Okay.
5:54PM24 Q.   You said that you knew or you found out recently that
5:54PM25 Mrs. Earnest took Adriamycin; correct?

OFFICIAL TRANSCRIPT

Page 208

873

LAURA MASSEY PLUNKETT - CROSS

5:54PM 1 A.   I assume. I said I assume she did based on the fact that
5:54PM 2 she was -- she was taking it for breast cancer -- well, I say
5:54PM 3 taking it, Taxotere, as an adjuvant treatment. So I assume
5:54PM 4 that she was taking Adriamycin and cyclophosphamide, but I
5:54PM 5 don't know for sure. I'm not a case-specific expert.
5:54PM 6 Q.   Okay. Well, your assumptions were right. So Cytoxan, you
5:54PM 7 just used the word "cyclophosphamide"?
5:54PM 8 A.   Yes.
5:54PM 9 Q.   And just to be clear, Cytoxan is cyclophosphamide;
5:54PM10 correct?
5:54PM11 A.   Yes. And I'm using that word because that's what's in the
5:54PM12 literature most of the time.
5:54PM13 Q.   Okay. Is it okay if we use the term "Cytoxan"?
5:54PM14 A.   That's fine.
5:54PM15 Q.   Okay. Very good.
5:54PM16        So you now know that Mrs. Earnest was also taking
5:54PM17 Cytoxan; correct?
5:54PM18 A.   If you're going to tell me that's true, I will believe
5:54PM19 that's true.
5:54PM20 Q.   Okay. All right. So with regard to, again, your work in
5:55PM21 this case, your search, your review, your analysis of the
5:55PM22 literature, you would agree with me that you identified
5:55PM23 permanent hair loss as a hazard of Cytoxan; correct?
5:55PM24 A.   In terms of case reports, yes, there are some case
5:55PM25 reports.

OFFICIAL TRANSCRIPT

## Page 1166

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY          Docket No.: 16-MD-2740
LITIGATION              Section "H(5)"
                        September 20, 2019
                        New Orleans, Louisiana
Relates To:  Barbara Earnest,
Case No.: 16-CV-17144

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DAY 5, MORNING SESSION
TRANSCRIPT OF JURY TRIAL PROCEEDINGS
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:     Barrios, Kingsdorf & Casteix, LLP
                        BY:  DAWN BARRIOS, ESQ.
                        701 Poydras Street
                        Suite 3650
                        New Orleans, Louisiana 70139

For the Plaintiffs:     Gainsburgh, Benjamin, David,
                        Meunier & Warshauer, LLC
                        BY:  PALMER LAMBERT, ESQ.
                        2800 Energy Centre
                        1100 Poydras Street
                        New Orleans, Louisiana 70163-2800

## Page 1167

1    APPEARANCES:
2    For the Plaintiffs:     David F. Micelli, LLC.
                             BY: DAVID F. MICELI, ESQ.
3                            P. O. Box 2519
                             Carrolllton, GA 30112
4
5                            Gibbs Law Group, LLP
     For the Plaintiffs:     BY: KAREN BARTH MENZIES, ESQ.
6                            6701 Center Drive West, Suite 1400
7                            Los Angeles, California 90045
8
9    For the Plaintiffs:     Pendley, Baudin & Coffin, LLP
                             BY:  CHRISTOPHER COFFIN, ESQ.
10                           1100 Poydras Street
                             Suite 2505
11                           New Orleans, Louisiana 70163
12
13   For the Plaintiffs:     Bachus & Schanker, LLC
                             BY: DARIN SCHANKER, ESQ.
14                           BY:  J. KYLE BACHUS, ESQ.
                             1899 Wynkoop Street
15                           Suite 700
                             Denver, Colorado 80202
16
17
18   For the Plaintiffs:     Fleming, Nolen & Jez, LLP
                             BY:  RAND P. NOLEN, ESQ.
19                           2800 Post Oak Boulevard
                             Suite 4000
20                           Houston, Texas 77056
21
22   For the Plaintiffs:     Morgan and Morgan
                             BY:  EMILY C. JEFFCOTT, ESQ.
23                           7010 S. Palafox Street, Suite 95
                             Pensacola, Florida 32502
24
25

## Page 1168

1    APPEARANCES:
2
     For Sanofi-Aventis U.S.,
3    LLC and Sanofi US
     Services, Inc.:        Irwin Fritchie Urquhart
4                           & Moore, LLC
                            BY:  DOUGLAS J. MOORE, ESQ.
5                           400 Poydras Street, Suite 2700
                            New Orleans, Louisiana 70130
6
7
     For Sanofi-Aventis U.S.,
8    LLC and Sanofi US
     Services, Inc.:        Shook Hardy & Bacon, LLP
9                           BY:  HARLEY V. RATLIFF, ESQ.
                            BY:  JON A. STRONGMAN, ESQ.
10                          2555 Grand Boulevard
                            Kansas City, Missouri 64108
11
12
     For Sanofi-Aventis U.S.,
13   LLC and Sanofi US
     Services, Inc.:        Shook Hardy & Bacon, LLP
14                          BY:  HILDY M. SASTRE, ESQ.
                            201 Biscayne Boulevard
15                          Suite 3200
                            Miami, Florida 33131
16
17
     Official Court Reporter:  Cathy Pepper, CRR, RMR, CCR
18                             Certified Realtime Reporter
                               Registered Merit Reporter
19                             500 Poydras Street, Room B-275
                               New Orleans, Louisiana 70130
20                             (504) 589-7779
                               Cathy_Pepper@laed.uscourts.gov
21
22   Proceedings recorded By mechanical stenography.  Transcript
     produced by computer-aided transcription.
23
24
25

## Page 1169

1              I N D E X
2
3                                         PAGE
4
5    ELLEN G. FEIGAL, MD, (CONTINUED)................... 1170
6    DIRECT EXAMINATION (CONTINUED) BY MR. MICELI........ 1170
7    CROSS-EXAMINATION BY MR. STRONGMAN.................. 1214
8    REDIRECT EXAMINATION BY MR. MICELI.................. 1243
9    LINDA BOSSERMAN, MD, FACP, FASCO.................... 1248
10   VOIR DIRE EXAMINATION BY MS. MENZIES................ 1248
11   DIRECT EXAMINATION BY MS. MENZIES................... 1259
12   CROSS-EXAMINATION BY MR. STRONGMAN.................. 1275
13   REDIRECT EXAMINATION BY MS. MENZIES................. 1284
14   LUNCHEON RECESS..................................... 1285
15
16
17
18
19
20
21
22
23
24
25

Page 1218

1    MR. MICELI:  Same objection, Your Honor.
2    THE COURT:  I think we're now really going far afield
3  of what her direct testimony was and her qualifications.
4  EXAMINATION BY MR. STRONGMAN:
5  Q.  Now, Doctor, with regard to the opinions that you offered
6  today regarding causation, you would agree with me, Doctor,
7  that there have been cases of permanent hair loss reported with
8  Taxol, correct?
9  A.  Correct.
10  Q.  You would agree with me that there have been cases of
11  permanent hair loss reported with cyclophosphamide, correct?
12  A.  I actually don't have isolated cyclophosphamide in here,
13  unless it's pooled with Freites-Martinez's article.  But it's
14  captured in my table.
15  Q.  Well, Doctor, let me just ask the question again.  You
16  would agree that there have been cases of permanent hair loss
17  reported with cyclophosphamide, correct?
18  A.  I can't tell from the Freites-Martinez paper, to tell you
19  the truth, but if it was, it was in that paper.
20    MR. STRONGMAN:  May I approach the witness, Your Honor?
21    THE COURT:  Yes, you may.
22    THE WITNESS:  Oh, I'm sorry.  It is in the AC regimen,
23  so yes.
24  EXAMINATION BY MR. STRONGMAN:
25  Q.  So let me just ask the question again, so we have a clear

Page 1219

1  reference.
2  A.  I'm sorry, I thought you were talking about monotherapy.
3  So my apologies.
4  Q.  Would you agree with me that there have been cases of
5  permanent hair loss reported with cyclophosphamide?
6  A.  Yes.  Yes.
7  Q.  Would you agree with me that there have been cases of
8  permanent hair loss reported with Adriamycin?
9  A.  Correct.
10  Q.  Would you agree with me that there have been cases of
11  permanent hair loss reported with the AC regimen?
12  A.  Well, now I am a little confused.  I was including the
13  cyclophosphamide in the anthracycline answer, with combo.
14  Q.  But you would agree with me that in the AC regimen combo,
15  there have been cases of permanent hair loss?
16  A.  Yes, I do agree.
17  Q.  You would agree with me that there have been cases
18  reported of permanent hair loss with the AC Taxol regimen,
19  correct?
20  A.  I believe that's captured in some of the cases I have on
21  the --
22  Q.  So the answer is yes?
23  A.  Yes.  I'd have to look at the specifics of the article,
24  but I believe those were in combo.
25  Q.  Now, you talked through a chart of literature that you

Page 1220

1  reviewed; is that correct?
2  A.  That's correct.
3  Q.  Okay.  One of the things that you did was you searched the
4  literature, and you came up with these articles, and then you
5  counted the reports; is that correct?
6  A.  Well, I reviewed the articles.
7  Q.  Fair enough.
8    But then you counted the reports, correct?
9  A.  Yes.  I looked at the number of events that were reported
10  in those papers, so I accurately described what was in the
11  papers.
12  Q.  I think you explained that your search was -- I think you
13  called it comprehensive, but not exhaustive; is that correct?
14  A.  That's a correct description.
15  Q.  You certainly remember during your deposition you were
16  shown some articles that had reports with other drugs that you
17  had not found during your original search, correct?
18  A.  They handed me articles that I had not found on my
19  original search, but I read them in realtime and, after reading
20  them, decided one would have gone in, the others would have
21  not.  Two were actually incorrect and were corrected in the
22  literature.
23  Q.  I think you testified several times that the topic under
24  consideration was Taxotere, right?  That's what you've said
25  today multiple times, correct?

Page 1221

1  A.  Yes, that's my impression of why we're all here today.
2  Q.  You were laser focused on Taxotere, correct?
3  A.  Well, I was focused on issues relevant to Taxotere in the
4  setting of the treatments that breast cancer patients received.
5  So I looked at the regimens, if that's what you're asking.
6    MR. STRONGMAN:  May I approach, Your Honor?
7    THE COURT:  Yes, you may.
8  EXAMINATION BY MR. STRONGMAN:
9  Q.  Now, Dr. Feigal, one more question.  During your direct
10  examination with Mr. Miceli, you did not offer any opinions
11  about the overall exposure in the entire patient population for
12  each individual drug, correct?
13  A.  Well, I did talk about -- I thought I talked about the
14  cumulative dose for those papers.
15  Q.  Let me just ask it a different way.  You didn't offer any
16  opinions about how many patients worldwide were exposed to one
17  drug or another drug or another drug, correct?
18  A.  Worldwide?
19  Q.  Yes.
20  A.  No.
21  Q.  You didn't offer any opinions about that, correct?
22  A.  I didn't offer opinion on worldwide exposure.
23  Q.  Now, what I've handed you is the Crown poster, correct?
24  A.  Correct.
25  Q.  Crown is included in your list; is it not?