UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ELLEN CHANG**

---

The PSC's motion to exclude the testimony of Sanofi's expert epidemiologist, Dr. Ellen Chang, should be denied for the following reasons:

First, Dr. Chang's opinions regarding cases of permanent alopecia in TAX 316 are reliable and admissible. Dr. Chang has conducted a more thorough review of TAX 316 than any other expert in this litigation, analyzing all available adverse-event data from the study. Her opinion that the number of permanent alopecia cases from that study is far lower than what Plaintiff's experts claim is well-grounded in that review.

Second, Dr. Chang should be permitted to offer testimony about other chemotherapies and anti-cancer agents and their association with permanent hair loss. Her opinions are based on extensive review of the available medical literature, as well as her education, training, and experience, and are supported by Plaintiff's own experts.

Finally, Dr. Chang, as an epidemiologist by education and training, should be permitted to offer her well-supported opinions regarding the types of alopecia, the risk factors for alopecia, and the frequency of alopecia.

## BACKGROUND

### I.     Dr. Chang's Qualifications

Dr. Ellen Chang is an epidemiologist specializing in cancer epidemiology.[1] She earned her Doctor of Science degree in epidemiology with a minor in biostatistics from the Harvard School of Public Health.[2] Dr. Chang also completed a postdoctoral fellowship in medical epidemiology and biostatistics at the Karolinska Institute in Stockholm, Sweden.[3]

Dr. Chang is currently a Principal Scientist at Exponent, an international science and engineering consulting company.[4] She is also a member of the Stanford Cancer Institute, and a Visiting Professor at the Sun Yat-sen University Cancer Center.[5]

Before joining Exponent, Dr. Chang was a research scientist at the nonprofit Cancer Prevention Institute of California, where she conducted original research studies on cancer epidemiology and performed cancer surveillance research at a National Cancer Institute Surveillance, Epidemiology, and End Results (SEER) population-based cancer registry.[6] Dr. Chang has also served as a Consulting Assistant Professor in the Division of Epidemiology, Department of Health Research and Policy, at the Stanford University School of Medicine.[7]

Dr. Chang's main research interests are cancer epidemiology, surveillance, and prevention. She has published several original research studies on breast cancer in addition to epidemiologic

---

[1]    **Ex. A,** April 17, 2020 Chang Rpt. at 5.

[2]    *Id.*

[3]    *Id.*

[4]    *Id.*

[5]    *Id.*

[6]    *Id.*

[7]    *Id.*

studies on a wide range of exposures in association with cancer risk and outcomes.[8]  In total, Dr. Chang has published more than 190 peer-reviewed scientific articles and 12 book chapters.[9]

## II.     Dr. Chang's Methodology and Opinions

In reaching her opinions, Dr. Chang evaluated all of the available scientific evidence on the occurrence of irreversible or permanent alopecia among breast cancer patients treated with chemotherapeutic regimens that included Taxotere.[10]  This review involved a broad set of data, including:

- <u>Clinical trial data from the TAX 316 study</u>.  Dr. Chang analyzed adverse event data for all 1,480 study participants, as well as 96,000 pages of available case report forms and the 47,000-page final TAX 316 Clinical Study Report.[11]

- <u>Medical literature relating to Taxotere and "PCIA."</u>  Dr. Chang performed an extensive search for relevant scientific literature which yielded more than 900 articles and abstracts.[12]  From this data set, Dr. Chang reviewed the full text of 228 articles and abstracts, and included a summary in her report of the 23 most relevant.[13]

After reviewing this broad data set, Dr. Chang concluded that a causal relationship <u>has not</u> been established between permanent hair loss and chemotherapeutic regimens that include Taxotere.[14]  Dr. Chang based her conclusion on the following findings:

- TAX 316, as a randomized, controlled clinical trial, provides the best available evidence to assess causation in this case.  That study does not support a causal finding because: (1) there was not a statistically significant difference in the rates of "ongoing" alopecia between the docetaxel and non-docetaxel arms of the study; and (2) the study did not specifically assess permanent or irreversible

---

[8]   *Id.*

[9]   *Id.*

[10]  *Id.* at 3.

[11]  *Id.* at 6–10.

[12]  *Id.* at 47.

[13]  *Id.* at 48–66.

[14]  *Id.* at 4.

3

- alopecia.

- When she did assess whether there were cases of permanent or irreversible alopecia in the TAX 316 study, Dr. Chang found that most patients classified as having "ongoing" alopecia did not have irreversible or even long-lasting alopecia.

- Because of well-known methodological limitations, nonrandomized studies (the "observational studies") cannot be used to evaluate reliably whether Taxotere causes irreversible or permanent alopecia.[15]

- The methodologies and analyses of Plaintiff's causation experts are fundamentally flawed. With respect to Dr. Madigan, Dr. Chang concluded that his analyses suffered from numerous deficiencies. Dr. Madigan's FAERS analysis, for example, was unreliable because it was not adequately designed to capture cases of irreversible or permanent alopecia.[16] Additionally, Dr. Madigan's purported meta-analysis of four observational studies cannot be used to support a causal conclusion because of the "major methodological weaknesses" of those nonrandomized studies.[17] Similarly, Dr. Chang concluded that Dr. Feigal's tabulation of cases of persistent alopecia with Taxotere use compared to other chemotherapies "has no scientific validity for addressing causation" due to the limitations in the underlying observational studies from which Dr. Feigal draws her numbers.[18]

The PSC challenges some, but not all, of this testimony.

## ARGUMENT

### I. Dr. Chang's Opinions Regarding TAX 316 are Admissible.

As set forth in more detail in Sanofi's Opposition to Plaintiff's Motion for Partial Summary Judgment on General Causation, Plaintiff's challenge to Dr. Chang's TAX 316 opinions must be denied.

Dr. Chang analyzed the TAX 316 data because Plaintiff's experts improperly distort its

---

[15] *Id.* at 66–67.

[16] *Id.* at 34.

[17] *Id.* at 70–71.

[18] *Id.* at 74–75.

findings. The TAX 316 study reported on "ongoing," not "permanent" or "irreversible" alopecia. As Dr. Chang states in her report, "ongoing" alopecia as defined in the TAX 316 study is not equivalent to irreversible, permanent, or even long-term alopecia.[19] The definition of "ongoing" only means that alopecia existed at the time of the last follow-up visit for the adverse event, where follow-up could have ended due to initiation of additional anticancer therapy, study drop-out, or death.[20] Plaintiff's experts inappropriately equate cases of "ongoing" alopecia to cases of "persistent" alopecia. Dr. Chang's analysis proves the fallacy of that approach.

The PSC's assertion that Dr. Chang did not review sufficient information is incorrect. Dr. Chang has conducted a more fulsome analysis of the TAX 316 adverse event data than any expert in this litigation, yet the PSC claims her assessment of potential cases of "irreversible alopecia" in TAX 316 is somehow insufficient. Not one of Plaintiff's experts reviewed the level of data analyzed by Dr. Chang. For her April 2020 report, Dr. Chang analyzed adverse event data for *all* 1,480 TAX 316 patients, including 96,000 pages of available case report forms, as well as the 47,000-page final TAX 316 Case Study Report—all of which were cited in her new report as "case specific materials reviewed."[21] If Dr. Chang's analysis is based on insufficient data, then the TAX 316 analyses undertaken or relied upon by Drs. Madigan, Feigal, and Kessler could never pass muster—not one of these purported experts looked at data for all study participants.

After her review, Dr. Chang concluded that nine patients (6 from TAC and 3 from FAC) "possibly" met the definition of irreversible alopecia during the study's follow-up period.[22] That

---

[19] *Id.* at 79.

[20] *Id.* at 80.

[21] *Id.* at 6–10.

[22] *Id.* at 92–96. Dr. Chang further stated that, if cases of "ambiguous alopecia status" were resolved in favor of a finding of "persistent alopecia," at most 12 patients fit the definition. *Id.* at 96. That would not change her opinions regarding statistical significance, however.

5

is, 0.8% of TAX 316 patients treated with TAC met the definition of having irreversible alopecia (6 out of 744) and 0.4% of TAX 316 patients treated with FAC met the definition of having irreversible alopecia (3 out of 736). Dr. Chang's TAX 316 analysis is the most comprehensive to date, and the PSC's challenges to her must be rejected.

## II.     Dr. Chang's Opinions on Possible Alternative Causes are Admissible.

As set forth in more detail in Sanofi's Opposition to Plaintiff's Motion for Partial Summary Judgment on Affirmative Defenses Concerning Alternative Causes, the PSC's challenge to Dr. Chang's testimony about other chemotherapies should be denied. It is undisputed that Ms. Kahn received five different chemotherapies—Adriamycin (doxorubicin), Avastin (bevacizumab), Cytoxan (cyclophosphamide), Taxotere, and Xeloda (capecitabine).[23] Afterward, Ms. Kahn was treated with Tamoxifen for approximately nine years.[24] Dr. Chang opines, based on the relevant literature, that permanent hair loss, or "PCIA," is associated with a multitude of chemotherapies and anti-cancer agents, including Adriamycin, Cytoxan, Taxol, and Taxotere, among others.[25] Her opinion is neither new nor novel. Indeed, Plaintiff's own dermatology expert, Dr. Antonella Tosti, conceded that chemotherapies other than Taxotere cause "PCIA," it's "just a question of . . . frequency."[26] Dr. Chang also opines, based on relevant literature, that hormonal therapies, such as Tamoxifen, have also been associated with permanent hair loss.[27] On these issues, Plaintiff's experts and Sanofi's experts agree.

---

[23]   Rec. Doc. 10928-1 at 1–2 (Pl.'s Mem. of Law in Supp. of Mot.)

[24]   *Id.*; *see also* **Ex. B,** Apr. 29, 2020 Glaspy Rpt. at 47.

[25]   Ex. A, Apr. 17, 2020 Chang Rpt. at 26–27 (explaining that "[i]n some cases, alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent," and citing several reports as support).

[26]   **Ex. C,** Sept. 19, 2019 Trial Tr. at 1057:17–24.

[27]   Ex. A, Apr. 17, 2020 Chang Rpt. at 26–27 (explaining that endocrine anti-cancer agents such as tamoxifen and aromatase inhibitors can cause alopecia).

Dr. Chang's opinion that "PCIA" is associated with a host of other medicines is the product of a sound methodology. Dr. Chang painstakingly reviewed the relevant literature, including a full text review of 228 articles and abstracts.[28] That review revealed that permanent alopecia has been reported with numerous chemotherapies—not just Taxotere. Indeed, Dr. Chang cites to 13 different articles or abstracts that support her proposition that "alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent."[29] This is a well-established fact, supported by both the medical literature and Plaintiff's own experts.[30] There is no basis to exclude Dr. Chang's testimony on this point.

### III.   Dr. Chang is Qualified to Offer Background Opinions Regarding Alopecia.

The PSC's argument that Dr. Chang, an epidemiologist by education and training, should not be permitted to offer background opinions on alopecia, its types, and frequencies, must also be rejected.[31] As an initial matter, all experts in this case agree with the general statements Dr. Chang offers in her report.[32]

More importantly, however, the PSC's argument is based on the flawed premise that an epidemiologist can only offer opinions regarding a medical condition on which the epidemiologist is also an expert. The PSC claims Dr. Chang cannot talk about background issues related to alopecia, because she is not a dermatologist.[33] Dr. Chang is an epidemiologist, and her background opinions related to alopecia stem from her epidemiological analysis of available evidence related

---

[28] *Id.* at 48–66.

[29] *Id.* at 27.

[30] *See* Sanofi's Opposition to Plaintiff's Motion for Partial Summary Judgment on Affirmative Defenses Concerning Alternative Causes, Section III.

[31] Rec. Doc. 10934-1 at 11 (Mem. in Supp. Of Pl.'s Mot. to Exclude Certain Opinions of Ellen T. Chang, Sc.D).

[32] *See, e.g.*, **Ex. D,** Nov. 2, 2018 Cole Claiborne Dep. 38:15–22 ("Q. We briefly touched upon this, but there's multiple different forms of alopecia? A. Uh-huh. Q. Is that a yes? A. Yes. Q. And there's many different causes of alopecia? A. Correct."); **Ex. E,** Nov. 30, 2018 Thompson Dep. 59:10–25 (same).

[33] Rec. Doc. 10934-1 at 12 (Mem. in Supp. Of Pl.'s Mot. to Exclude Certain Opinions of Ellen T. Chang, Sc.D).

to that disease.  Dr. Chang does not need to be a dermatologist to testify about the epidemiology of alopecia.  If that were true, no epidemiologist would be permitted to analyze a disease with respect to which she was not already an expert.  That is not true.  Even Plaintiff's expert toxicologist, Dr. Laura Plunkett, is not a medical doctor, but she provides five opinions on the same medical condition.[34]

The PSC's flawed premise runs counter to the entire field of epidemiology and has been flatly rejected by the courts.  *See, e.g.*, *Deutsch v. Novartis Pharmaceuticals Corp.*, 768 F. Supp. 2d 420, 455 (E.D.N.Y. 2011) ("[The epidemiologist] does not need to be an oncologist or a dental surgeon or any other type of medical doctor to analyze the data and studies for a relationship between a pharmaceutical drug and a disease.  As a pharmacoepidemiologist, designing, executing, analyzing, and evaluating studies on this very subject is precisely [the epidemiologist's] area of expertise."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 484 (S.D.N.Y. 2016) (noting that "an epidemiologist does not need to be an expert in a particular field to analyze the data or studies showing a relationship between a drug and a disease.").  It is not surprising then that Plaintiff does not cite to a single case to support her claim that Dr. Chang is somehow unqualified to offer background opinions about alopecia.  Dr. Chang, as an epidemiologist, is qualified to offer opinions regarding the types, frequency, causes of, and risk factors for alopecia.  Plaintiff's challenge must be denied.

## CONCLUSION

For all of the reasons stated above, Plaintiff's Motion to Exclude the Testimony of Dr. Chang should be denied in its entirety.

---

[34]   **Ex. F,** Dec. 10, 2018 Plunkett Dep. 7:20–24; **Ex. G,** Mar. 13, 2020 Plunkett Rpt. 32 ¶ 63.

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* | |
| Douglas J. Moore (Bar No. 27706) | Harley V. Ratliff |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Jon Strongman |
| 400 Poydras Street, Suite 2700 | Adrienne L. Byard |
| New Orleans, LA  70130 | **SHOOK, HARDY & BACON L.L.P.** |
| Telephone: 504-310-2100 | 2555 Grand Boulevard |
| Facsimile:  504-310-2120 | Kansas City, Missouri 64108 |
| dmoore@irwinllc.com | Telephone: 816-474-6550 |
| | Facsimile:  816-421-5547 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

9