# EXHIBIT V

Page 2141

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*******************************************************

IN RE: TAXOTERE (DOCETAXEL)          Docket No. 16-MD-2740
PRODUCTS LIABILITY LITIGATION        Section H
                    New Orleans, LA
Relates to:  Barbara Earnest      Thursday, September 26, 2019
    16-CV-17144

*******************************************************

TRANSCRIPT OF TRIAL PROCEEDINGS
HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE
DAY 9, MORNING SESSION

APPEARANCES:

FOR THE PLAINTIFF:      BACHUS & SCHANKER, LLC
                BY:  DARIN L. SCHANKER, ESQ.
                     J. KYLE BACHUS, ESQ.
                1899 Wynkoop St., Suite 700
                Denver, CO 80202

                FLEMING NOLEN & JEZ
                BY:  RAND P. NOLEN, ESQ.
                2800 Post Oak Blvd., Suite 4000
                Houston, TX 77056
                GIBBS LAW GROUP, LLP
                BY:  KAREN B. MENZIES, ESQ.
                6701 Center Drive West, 14th Floor
                Los Angeles, CA 90045

                DAVID F. MICELI, LLC
                BY:  DAVID F. MICELI, ESQ.
                P.O. Box 2519
                Carrollton, GA 30112-0046
                PENDLEY BAUDIN & COFFIN
                BY:  CHRISTOPHER L. COFFIN, ESQ.
                2505 Energy Centre
                1100 Poydras St.
                New Orleans, LA 70163

Page 2142

                BARRIOS KINGSDORF & CASTEIX
                BY:  DAWN M. BARRIOS, ESQ.
                701Poydras St., Suite 3650
                New Orleans, LA 70139

                GAINSBURGH BENJAMIN DAVID
                MEUNIER & WARSHAUER
                BY:  M. PALMER LAMBERT, ESQ.
                2800 Energy Centre
                1100 Poydras St.
                New Orleans, LA 70163
                MORGAN & MORGAN
                BY:  EMILY C. JEFFCOTT, ESQ.
                700 S. Palafox St., Suite 95
                Pensacola, FL 32502

FOR THE DEFENDANT:      SHOOK HARDY & BACON
                BY:  HILDY M. SASTRE, ESQ.
                201 Biscayne Blvd., Suite 3200
                Miami, FL 33131

                SHOOK HARDY & BACON
                BY:  JON A. STRONGMAN, ESQ.
                     HARLEY V. RATLIFF, ESQ.
                2555 Grand Blvd.
                Kansas City, MO 64108

                IRWIN FRITCHIE URQUHART & MOORE
                BY:  DOUGLAS J. MOORE, ESQ.
                400 Poydras St., Suite 2700
                New Orleans, LA 70130

Official Court Reporter:    Karen A. Ibos, CCR, RPR, CRR, RMR
                500 Poydras Street, B-275
                New Orleans, Louisiana 70130
                (504) 589-7776

    Proceedings recorded by mechanical stenography, transcript
produced by computer.

Page 2143

                            I N D E X

 1
 2
 3                                             PAGE/LINE:
 4  CLOSING ARGUMENTS
 5     By Mr. Schanker                          2157/25
 6     By Ms. Sastre                            2188/18
 7     By Mr. Schanker                          2219/9
 8
 9  JURY CHARGE                                 2227/14
10
11  VERDICT                                     2245/24
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 2144

                    P R O C E E D I N G S

 1
 2         (THURSDAY, SEPTEMBER 26, 2019)
 3            (MORNING SESSION)
 4
 5    (OPEN COURT.)
 6         THE COURT:  Mr. Coffin, you want to put a couple of
 7  things on the record or make some motions?
 8         MR. COFFIN:  Yes, your Honor.  Chris Coffin on behalf of
 9  plaintiff, Ms. Barbara Earnest.  Two issues, as we discussed in
10  chambers, your Honor.  The first one is plaintiff's move to reopen
11  the evidence for the limited purpose of establishing that
12  Ms. Barbara Earnest received a phone call from her brother in
13  February of 2016, which her brother indicated that he had seen
14  advertisements -- an advertisement about the lawsuit related to
15  Taxotere and permanent alopecia.
16         That specific testimony is in Mr. Jules LeBlanc's
17  deposition.  It's not controversial testimony.  He specifically
18  says, "QUESTION:  So you saw this phone number on TV for a lawyer
19  roughly two years ago?
20         "ANSWER:  Roughly two years ago."
21         "Do you remember the time of the year that you saw it?"
22         "ANSWER:  Say, early part of the year, somewhere around
23  February, up in that area.
24         "QUESTION:  February of what year?
25         "ANSWER:  Two years ago would have been '16."

Page 2145

1          In this courtroom, Ms. Barbara Earnest was asked,
2    "QUESTION: Now, at the time -- during the time you saw
3    Dr. Carinder when your hair wasn't growing back, did you ever ask
4    him about that?
5          "ANSWER: Oh, yes, I've asked him.
6          "QUESTION: And when did you ask him?
7          "ANSWER: I'd say it was early April I asked him about my
8    hair. And all he said, 'Honey, it's going to grow. It takes
9    time.' So that's what I kept doing. I kept waiting."
10         "That's April of 2012?"
11         "Yes."
12         And how long -- "QUESTION: And how long did you hold out
13   hope that your hair was going to grow back?
14         "ANSWER: Until I found out about this lawsuit, which was
15   when my brother called."
16         Next question, Mr. Schanker moves to a different topic.
17   The reason for that is, as the Court knows, in MIL No.3, the Court
18   precluded any testimony about lawsuits preceding Ms. Earnest's
19   treatment. Mr. Schanker, in questioning, was concerned about
20   violating that MIL, so he did not continue to ask questions about
21   when that phone call was made, you know, when she learned about
22   this other lawsuit, when she learned about the TV ads. He
23   purposely stopped in order to avoid violating the MIL.
24         The standard in the Fifth Circuit is under Garcia v.
25   Women's Hospital of Texas which is the standard for reopening the

Page 2146

1    presentation of additional evidence. There are three pillars to
2    get over; No. 1 is the importance of the probative value of the
3    evidence; No. 2 is the reason for the moving party's failure to
4    introduce the evidence earlier; and No.3 is the possibility of
5    prejudice to the non-moving party.
6          This is not a controversial issue, Judge. And the
7    deposition testimony is very clear it was February of 2016 when the
8    call came around. The reason for the moving party --
9          THE COURT: Let me ask you this, Mr. Coffin.
10         MR. COFFIN: Yes.
11         THE COURT: What does this look like?
12         MR. COFFIN: I'm sorry.
13         THE COURT: What is it you intend to do?
14         MR. COFFIN: There are multiple potential solutions.
15   First of all, I forgot to tell your Honor, we did attempt to enter
16   a stipulation with the defense letting them know this technicality
17   and they just couldn't agree to it.
18         The second thing is reading the testimony of Mr. Jules
19   LeBlanc that specifically states when he made that phone call.
20   Dr. Bianchini's deposition yesterday, or two days ago, perhaps, at
21   trial, the issue came up about whether Dr. Bianchini's note, and
22   Mr. Schanker asked under the rule of completeness to read in an
23   additional page. That additional page of Dr. Bianchini's testimony
24   establishes that he was told by Ms. Earnest that it wasn't until
25   approximately five years after her treatments that she made the

Page 2147

1    connection between her permanent hair loss and Sanofi's failure to
2    warn. So that could be read into the record.
3          So there are a couple of different solutions here, if the
4    Court were to reopen the evidence.
5          THE COURT: Okay. Mr. Strongman.
6          MR. STRONGMAN: Good morning, your Honor.
7          THE COURT: Good morning.
8          MR. STRONGMAN: Sanofi would oppose reopening of the
9    evidence in this case. I think it's clear that there was
10   absolutely nothing prohibiting this question from being asked of
11   Ms. Earnest. And, obviously, the prejudice lies in our ability to
12   cross-examine that evidence. We all know trials are dynamic
13   things, so there is simply no reason that this could not have been
14   done during the normal presentation of evidence. And had it been
15   done, it would have been something that we would have been able to
16   explore on cross-examination and test the veracity of.
17         With regard to reading the deposition, I mean, assuming
18   we even get there, there's no establishment that the witness is
19   unavailable, for example. I mean, it's just hearsay at this point.
20   And so for those reasons, we think it's inappropriate to open the
21   evidence. The evidence is closed and the plaintiffs have put on
22   the case that they have and they need to live with it. Thank you.
23         THE COURT: Thank you.
24         MR. COFFIN: Our real concern is that we don't want the
25   jury to misread that question that we've been debating on the

Page 2148

1    verdict form in light of the fact that there wasn't an actual date.
2    And really concerned that there is -- over a technicality the jury
3    may believe that Ms. Earnest actually did know earlier than that.
4    And testimony is clear from the depositions.
5          THE COURT: Well, you know, I go back to what I said in
6    chambers. There was no reason why she could not have been asked,
7    "Did you know -- when was the date you found out -- when was the
8    date you made this determination?"
9          MR. COFFIN: I understand. But we concluded and she
10   blurted out that answer, and Mr. Schanker was very concerned about
11   going into that any further because we've been trying to be careful
12   of violating --
13         THE COURT: And I appreciate that, but she blurted out
14   the answer and there was a follow-up, "And when did that call
15   occur?" And that wasn't asked. I mean, the problematic testimony
16   was already out and that -- you couldn't put that back in the bag.
17   But the question that was perfectly appropriate was, "What was the
18   date?
19         I am not going to reopen the evidence. There is no
20   reason why this should happen at this time. All right.
21         I believe there's another motion as well.
22         MR. COFFIN: Yes, your Honor. As -- the plaintiffs move
23   for a mistrial. As we've discussed multiple times at the bench,
24   there have been multiple violations of the motions in limine by the
25   defense, which I've articulated in the past. I'll make them short

Page 2149

1   here.
2         And most importantly, yesterday the testimony of Sanofi's
3   employee, a non-expert, Dr. Michael Kopreski, was let in. And the
4   Court's reasoning in Docket 6160 regarding plaintiff's motion to
5   exclude expert testimony that relies upon defendant's employee,
6   Dr. Michael Kopreski, is very important here. Because in the
7   Court's order and reasons, your Honor made it clear that
8   defendant's experts are allowed to rely on Dr. Kopreski's
9   reanalysis if, for example -- if they had did independent reviews
10  of the work. You gave an example regarding Dr. Arrowsmith, who was
11  not called by the defense. And you said Dr. Arrowsmith, for
12  example, examined patient data for two TAX316 patients and reached
13  the same conclusions as Dr. Kopreski leading her to conclude his
14  analysis was reliable; which makes some sense.
15        The problem that occurred yesterday and the prejudice to
16  the plaintiffs is Dr. Kopreski was allowed to testify about his
17  reanalysis. The defense put up the actual reanalysis, which was
18  shown to the jury, which your Honor had instructed them not to do.
19  The defense put up pictures related to an article on tamoxifen and
20  hair loss, which, as your Honor knows, the plaintiff did not take
21  in this case. That was a violation of an MIL.
22        And then Dr. Glaspy gets on the stand and -- as the
23  plaintiff predicted, Dr. Glaspy gets on the stand and he
24  specifically says that he did not independently verify the data
25  that Dr. Kopreski had put together. In fact, he looked at a chart

Page 2150

1   that Dr. Kopreski had prepared, and he didn't look at any of the
2   underlying data. As the evidence shows, Dr. Kopreski conducted
3   this analysis in 20 -- either '18 or '19, but certainly well after
4   the TAX316 data had been locked, post hoc analysis. We find it
5   very prejudicial and that there's no probative value for most of
6   the opinions that were given.
7         To be clear, we do understand that the Court instructed
8   the jury that Dr. Kopreski is not an expert. Although we
9   appreciate that, that doesn't get us over the fact of the prejudice
10  that Dr. Kopreski was allowed to bring into this courtroom; and
11  quite frankly, Dr. Glaspy couldn't validate at all.
12        Specifically, if I may quickly, your Honor, one example
13  the question that Dr. Glaspy was asked by my colleague Mr. Miceli,
14  "QUESTION: You didn't make the chart" -- referring to
15  Dr. Kopreski's chart -- "You didn't make the chart. You didn't do
16  anything to validate it either, did you?
17        "ANSWER: That's correct."
18        There are at least a few examples in Dr. Glaspy's
19  testimony that are similar to that. In addition, the multiple
20  expert opinions that Dr. Kopreski gave were improper as he was not
21  an expert as the Court clearly noted.
22        Your Honor, the standard in the Fifth Circuit is under
23  Hollybrook Cottonseed Processing v. American Guaranty and Liability
24  Insurance Company, 772 F.3d 1031. It's a Fifth Circuit 2014 case.
25  And the Court stated, "When faced with a motion for a mistrial

Page 2151

1   based on the submission of prejudicial information to the jury, the
2   district court must decide whether the error is harmless or
3   assessing whether the error did not influence the jury or have but
4   a very slight effect."
5         In this situation, your Honor, this is major testimony
6   from Sanofi that offered opinions outside of this gentleman's -- he
7   wasn't even an expert, so he was a lay person; offered multiple
8   expert opinions. And when Dr. Glaspy testified, he said he could
9   not validate the data. Wholly improper and highly prejudicial to
10  the plaintiffs.
11        In addition, I have mentioned -- I'll make this short. I
12  mentioned multiple MIL violations in the past at the bench. I
13  think the Court -- I know your Honor has recognized some of those
14  MIL violations. I'll point out just one specifically.
15        With regard to whether or not Dr. Carinder is responsible
16  for a patient's condition, that was MIL No. 7, which the Court
17  granted in part. The defendants have on multiple times violated
18  this inferring that somehow Dr. Carinder's prescription of the
19  regimen that he gave Ms. Earnest somehow caused her permanent
20  alopecia. The Court has specifically stated in that MIL ruling
21  that that type of suggestion to the jury was not to happen, and
22  it's happened multiple times, your Honor.
23        So for these multiple reasons, we move for a mistrial,
24  your Honor.
25        THE COURT: Thank you. Mr. Strongman.

Page 2152

1         MR. STRONGMAN: Your Honor, Sanofi would oppose the
2   mistrial. And, obviously, this is an issue that has been discussed
3   and debated numerous times over the last several days in terms of
4   the Dr. Kopreski analysis. So we would simply incorporate all of
5   the arguments that have been made before.
6         We think what transpired was entirely appropriate.
7   Dr. Kopreski's testimony was entirely appropriate. The video that
8   was shown was viewed and cleared by both sides days before it was
9   shown.
10        And with regard to the reliance of Dr. Glaspy relying on
11  data such as that is entirely appropriate. It's no different than
12  an expert relying on a piece of literature that -- the expert
13  didn't go through that literature and look at all of the underlying
14  data in that literature, but they can rely on the literature. So
15  this is certainly appropriate evidence, and we just simply
16  incorporate all of our responses that we had previously to this
17  issue.
18        THE COURT: When faced with a motion for mistrial, the
19  Court has various options to undertake; one, I can grant it, deny
20  it outright, or take other precautionary measures. I know both
21  prior to and following the testimony of Dr. Kopreski the Court
22  notes specifically told the jury that Dr. Kopreski was not -- had
23  not been tendered nor accepted by this Court as an expert in this
24  field. The Court gave Mr. Miceli wide latitude in cross-examining
25  Dr. Glaspy related to the testimony of Dr. Kopreski, and he did,

1	indeed, say, "I just relied on it." What you didn't answer was the
2	following answer, which was when Dr. Glaspy had to admit, "If this
3	is wrong, I am wrong, and I didn't look it and I can't verify this
4	information." I think that was fully vetted for the jury.
5	    Additionally, as to Dr. Carinder, there was some
6	intimation that he did not follow the exact dosage in the label.
7	However, Dr. Glaspy said this was all within the standard of care.
8	There was no one that said that he violated the standard of care,
9	or this was inappropriate, or not a reasonably anticipated use of
10	the product. I believe that's been clearly established that this
11	dosage was in the standard of care.
12	    There was testimony as to the cumulative dosage. I do
13	not believe that any question regarding what the label says
14	vis-a-vis the dosage in any way prejudiced anybody. I think it was
15	very clear that this was an appropriate treatment, and I don't find
16	that.
17	    For those reasons, the mistrial is denied.
18	    MR. COFFIN: Your Honor, one last thing. We just want to
19	make a proffer at some point later on; have Ms. Earnest testify
20	about when she got that phone call.
21	    THE COURT: Fine. But let's go ahead and get --
22	    MR. COFFIN: Thank you, your Honor.
23	    MR. MOORE: Your Honor, real briefly, I just raised this
24	with Sam. One of the things that we talked about on the jury
25	verdict form --

1	    THE COURT: That's my thing. Any objections to the
2	charge? Let me do that. Are there -- is there anything else?
3	    MR. MOORE: It was a typo. Remember we said we were
4	going to change the word from "had" to "lacked." Do the
5	plaintiff's bear the burden on contra non valentem...
6	    THE COURT: Right.
7	    MR. MOORE: So Sam can make that correction and
8	recirculate.
9	    THE COURT: Okay. Thank you.
10	    MR. MOORE: And very briefly, your Honor, we have the
11	plaintiff's slide deck. They are not numbered, but we have been
12	through them. I am not going to raise any individual objections to
13	them.
14	    We will simply state the objections that we have
15	previously made as appears from the slide deck that they will
16	potentially be making arguments that we failed to warn or failing
17	to include the TAX316 data in our label. There's also references
18	in the slides to labels that were changed by FDA and not by Sanofi.
19	We've, obviously, been precluded from showing that. We tried to
20	put the TAX316 data in the label and FDA took it out. There were
21	other changes made by FDA.
22	    And so, to the extent that those arguments were made, we,
23	obviously, preserve all of our objections as to those arguments.
24	    THE COURT: Okay. Let me ask, as to the --
25	    MR. STRONGMAN: I just wanted to clarify one thing. I

1	had a conversation with Mr. Schanker about one of their slides, and
2	it has a chart that goes beyond 2011. He agreed to cover it up, so
3	he's done that. He's been courteous to do that.
4	    THE COURT: Okay. Thank you. Now, charge objections.
5	Do we have any objections to the jury charge from the plaintiffs?
6	    MR. CENTOLA: Yes, your Honor. The plaintiffs object to
7	the jury charges regarding reasonably anticipated use. Those
8	charges are on page 6, page 7, and the specific heading on page 7.
9	There's no evidence in this case that the plaintiff used the drug
10	in anything other than a reasonably anticipated use, that was per
11	the NCCN guidelines and even per Dr. Glaspy's testimony.
12	    Plaintiff's object to the FDA charge on page 8 and
13	page 9. Plaintiff's propose an FDA charge in their written
14	submission prior to trial, and plaintiff's object to any charge
15	that's different from the FDA charge submitted by the plaintiffs.
16	    Plaintiff's object to the general cause burden of proof
17	language that was added to the charge on page 11. This language is
18	different from the Louisiana pattern jury charges, and it increases
19	the plaintiff's requirement because the Louisiana pattern jury
20	charges general cause is already subsumed in the specific cause and
21	adding this extra burden is improper.
22	    And plaintiff's object to any jury charge on statute of
23	limitation or prescription. This issue should not go to the jury.
24	This was a legal issue that was already decided by your Honor.
25	    And in conjunction with the objection to all of the

1	statute of limitation questions, the plaintiffs also object to
2	Question 4 on the verdict form involving the prescription, statute
3	of limitation, contra non valentem argument. Specifics of our
4	objection to Question 4, object to the overall question. In
5	addition, we object to the lack of the word "cause" or "causal
6	association" within the text of the question itself.
7	    THE COURT: Thank you, Mr. Centola. Any objection by
8	defendants?
9	    MS. EISENSTEIN: Ilana Eisenstein. Your Honor,
10	defendants object to in the learned intermediary instruction, the
11	statement that Dr. Carinder would have altered his prescribing or
12	treating decision or behavior. We believe that the proper
13	formulation would just be concluded that altered his prescribing
14	decision without the addition of "or behavior."
15	    We would also like to note for the record that in
16	conversations in chambers under the requirement of adequate warning
17	definition, it states that a manufacturer of a product shall not be
18	liable for damage proximately caused by a product if at the time
19	the product left the manufacturer's control it did not know, and in
20	light of the existing reasonably available scientific knowledge
21	could not have known of the characteristic that caused the damage
22	or the danger of such characteristics. That defendants had
23	suggested that it say, "If" -- after it says, "by characteristic of
24	the product if the manufacturer shows that at the time the product
25	left its control it did not know." And plaintiff's did not want to