# EXHIBIT W

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

***

IN RE:   TAXOTERE (DOCETAXEL)
PRODUCTS LIABILITY LITIGATION

                        Civil Action No. 16-MD-2740
                        Section "H"(5)
                        New Orleans, Louisiana
                        September 5, 2019

THIS DOCUMENT RELATES TO ALL CASES

***

```
                   TRANSCRIPT OF MOTION HEARING
         HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                   UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFFS:

        *DAWN BARRIOS*
        BARRIOS KINGSDORF & CASTEIX
        701 POYDRAS STREET
        SUITE 3650
        NEW ORLEANS, LA 70139

        *MATTHEW PALMER LAMBERT*
        GAINSBURGH BENJAMIN DAVID MEUNIER
        & WARSHAUER
        1100 POYDRAS STREET
        SUITE 2800
        NEW ORLEANS, LA 70163

        DARIN SCHANKER
        *BACHUS & SCHANKER*
        1899 WYNKOOP STREET
        SUITE 700
        DENVER, CO 80202

        *CHRISTOPHER COFFIN*
        PENDLEY BAUDIN & COFFIN
        1515 POYDRAS STREET
        NEW ORLEANS, LA 70112

```
01:40:55PM   1   because my thought is that that's not part of some study.
01:40:58PM   2   It's not part of some review.  It's anecdotal evidence.  I
01:41:02PM   3   believe it would be certainly pertinent with Dr. Carinder.
01:41:07PM   4            MR. RATLIFF:  Your Honor --
01:41:08PM   5            THE COURT:  I don't want any more argument.
01:41:08PM   6            MR. RATLIFF:  Okay.
01:41:10PM   7            THE COURT:  But I'll look at it.  Thank you.
01:41:13PM   8            7651, there is Motion in Limine to Preclude Testimony
01:41:22PM   9   and Evidence Regarding Other Chemotherapy Medications or
01:41:25PM  10   Medical Conditions That Purportedly Cause Permanent Hair
01:41:29PM  11   Loss.
01:41:29PM  12            Mr. Schanker.
01:41:31PM  13            MR. SCHANKER:  So, yes, Your Honor.  As you're well
01:41:33PM  14   aware, Barbara Earnest took Taxotere, also took A and C
01:41:38PM  15   Adriamycin and Cytoxan.  And the defense offers no expert
01:41:43PM  16   opinion in this case that A caused her permanent alopecia.
01:41:49PM  17   The defense offers no expert opinion in this case that C
01:41:53PM  18   caused Barbara Earnest's permanent alopecia.  And so simply
01:41:57PM  19   they should not be able to argue that in this case.
01:42:00PM  20            There was no Daubert motion filed on this because
01:42:02PM  21   there was no opinion elicited.  And the reason I'm presuming
01:42:06PM  22   there was no opinion elicited is because there's no
01:42:10PM  23   scientific foundation that A or C causes either from a
01:42:13PM  24   general standpoint or certainly not in a case-specific
01:42:16PM  25   standpoint here.  There are cases that have been reported,
```

01:42:20PM **1** cases of permanent alopecia --

01:42:23PM **2** THE COURT: But that would certainly be fodder for
01:42:27PM **3** cross-examination for your expert. This is what I'm
01:42:30PM **4** thinking. This is what my notes say. Plaintiff has the
01:42:33PM **5** burden of proof. You have the burden of proof on causation
01:42:36PM **6** and the defendants have to challenge that. Now, I think they
01:42:41PM **7** have to have a good faith basis for the challenge. I
01:42:47PM **8** think -- you can't throw out just speculative questions on
01:42:54PM **9** cross-examination. It's got to be a good faith basis for you
01:42:58PM **10** to question the expert, but I think they're going to have to
01:43:02PM **11** be able to question your experts about other chemotherapy
01:43:06PM **12** drugs that were prescribed to Ms. Earnest and whether or not
01:43:10PM **13** those caused permanent alopecia and I'm not going to preclude
01:43:15PM **14** them from -- from challenging your causation experts.

01:43:22PM **15** MR. SCHANKER: And, Your Honor, I think specifically
01:43:25PM **16** we're thinking about whether it be in opening statement or at
01:43:27PM **17** other times at trial to try to infer that there is some sort
01:43:31PM **18** of causation analysis that's taking place when there
01:43:35PM **19** absolutely has not been. There's no evidence in this case
01:43:37PM **20** that A or C, none presented by any expert, that A or C caused
01:43:42PM **21** it. Certainly I understand what you're saying about
01:43:45PM **22** cross-examination and, obviously, it's different. Did T
01:43:47PM **23** cause it? Did Taxotere cause it? But there does need to be
01:43:52PM **24** a good faith basis that A or C did and, obviously, we can
01:43:55PM **25** watch that closely on cross-examination. But some sort of

| | | |
|---|---|---|
| 01:43:59PM | 1 | statement in opening -- |
| 01:43:59PM | 2 | THE COURT: You're thinking opening statement it's |
| 01:44:02PM | 3 | appropriate that you're going to hear their experts are going |
| 01:44:05PM | 4 | to have to admit this drug can cause permanent alopecia as |
| 01:44:10PM | 5 | well. |
| 01:44:10PM | 6 | MR. SCHANKER: With regard to Taxotere? That we as |
| 01:44:13PM | 7 | plaintiffs? |
| 01:44:13PM | 8 | THE COURT: Yeah. I forget the names of them. But |
| 01:44:16PM | 9 | on opening statement, if they're going to say you're going to |
| 01:44:21PM | 10 | hear from their -- I don't need to give the opening |
| 01:44:24PM | 11 | statement, but that you will hear from their experts and |
| 01:44:27PM | 12 | their experts are going to have to admit this too. You think |
| 01:44:32PM | 13 | that's improper? |
| 01:44:32PM | 14 | MR. SCHANKER: Well, our expert doesn't admit that -- |
| 01:44:32PM | 15 | THE COURT: Well -- |
| 01:44:36PM | 16 | MR. SCHANKER: It admits that -- as you're well |
| 01:44:37PM | 17 | aware, Your Honor, the difference between association and |
| 01:44:38PM | 18 | causation. |
| 01:44:38PM | 19 | THE COURT: Right. Right. Okay. |
| 01:44:39PM | 20 | MR. SCHANKER: So that's really where we're drawing |
| 01:44:40PM | 21 | the line, any inference that there's any evidence whatsoever |
| 01:44:43PM | 22 | in this case with regard to A or C specifically causing and |
| 01:44:47PM | 23 | there's another plank to our argument concerning other |
| 01:44:52PM | 24 | chemotherapy drugs that plaintiff did not take -- |
| 01:44:56PM | 25 | THE COURT: Well, that doesn't -- no. |

```
01:44:57PM   1          MR. SCHANKER:  Right.  That there shouldn't be
01:45:00PM   2   evidence introduced with regard to all these other
01:45:03PM   3   chemotherapy drugs that might have -- might cause permanent
01:45:06PM   4   hair loss.  Those have not been put under the microscope so
01:45:10PM   5   to speak with any kind of causation analysis and are wholly
01:45:13PM   6   irrelevant in this case as to whether or not they can or
01:45:17PM   7   specifically do cause.  And that's really what our position
01:45:19PM   8   is that we're putting before you concerning other
01:45:20PM   9   chemotherapy drugs.
01:45:23PM  10          THE COURT:  Okay.  Thank you.  Mr. Ratliff.
01:45:26PM  11          MR. RATLIFF:  Your Honor, I can keep this short if
01:45:29PM  12   you intend to deny their motion, but would you like to hear
01:45:32PM  13   argument from me?
01:45:34PM  14          THE COURT:  You can keep it short.  But I think this
01:45:36PM  15   is -- I will tell you and maybe I don't think array of drugs
01:45:43PM  16   that are unrelated has anything to do with whether or not
01:45:46PM  17   this plaintiff was warned about this particular drug and I
01:45:49PM  18   will not allow that.  I would think as I indicated there has
01:45:54PM  19   to be a good faith basis for the question.  But I think we
01:45:59PM  20   all know the rules and that's -- you cannot just make up a
01:46:03PM  21   fact and throw it in in cross-examination to throw the stink
01:46:07PM  22   in a jury box.
01:46:09PM  23          MR. RATLIFF:  Absolutely, Your Honor.
01:46:09PM  24          So I'm going to take Mr. Schanker's argument in kind
01:46:12PM  25   of two parts.  One, our expert, our dermatology expert,
```

| | | |
|---|---|---|
| 01:46:17PM | 1 | Dr. Shapiro, he absolutely concludes that you cannot rule out |
| 01:46:17PM | 2 | Adriamycin or cyclophosphamide as potential causes or causes |
| 01:46:24PM | 3 | of Ms. Earnest's permanent hair loss. |
| 01:46:24PM | 4 | THE COURT: Okay. |
| 01:46:26PM | 5 | MR. RATLIFF: Likewise, he says you cannot rule out |
| 01:46:32PM | 6 | Arimidex, an aromatase inhibitor that she has been on for the |
| 01:46:33PM | 7 | last ten years.  He says you cannot rule that out.  Now, |
| 01:46:36PM | 8 | their expert, Dr. Tosti, says, "I did rule that out."  So, |
| 01:46:40PM | 9 | obviously, we get to -- that is fodder for our |
| 01:46:40PM | 10 | cross-examination as to whether her differential diagnosis is |
| 01:46:44PM | 11 | credible and it's certainly something that our expert, which |
| 01:46:47PM | 12 | they did not -- again, did not challenge our expert.  So all |
| 01:46:50PM | 13 | you're hearing is their characterization of his report in his |
| 01:46:52PM | 14 | deposition. |
| 01:46:54PM | 15 | THE COURT: I think -- you need any more from me? |
| 01:46:56PM | 16 | MR. RATLIFF: I guess the last thing I would say, |
| 01:46:57PM | 17 | Your Honor, that gave me a little bit of concern was when |
| 01:47:00PM | 18 | Mr. Schanker said, "Well, other medications that she did not |
| 01:47:03PM | 19 | take, other chemotherapy that she did not take, they should |
| 01:47:07PM | 20 | not be allowed to talk about those."  We absolutely have to |
| 01:47:10PM | 21 | be able to talk about those, Your Honor, because it goes to |
| 01:47:13PM | 22 | was there an alternative that was risk-free as it related to |
| 01:47:15PM | 23 | hair loss. |
| 01:47:15PM | 24 | THE COURT: Well, if all -- that's a different |
| 01:47:18PM | 25 | matter.  But if you're on -- I'm not going to allow you to |

```
01:47:23PM   1   talk about drugs that have nothing to do with this case,
01:47:28PM   2   other chemotherapy drugs unrelated to Ms. Earnest are not --
01:47:35PM   3   you're not going to be able to talk about their risk of
01:47:39PM   4   permanent alopecia.  Now, if -- if Dr. Carinder in his
01:47:44PM   5   testimony says these were the options and if she had concern
01:47:49PM   6   about it, I would have recommended these things I think, of
01:47:53PM   7   course, then the risk of permanent alopecia as to those drugs
01:47:59PM   8   would be pertinent.  What do you not understand?
01:48:02PM   9            MR. RATLIFF:  Here is, I think, the fundamental
01:48:05PM  10   concern, Your Honor, and let's talk about just one of those
01:48:07PM  11   chemotherapies, taxol.  They're going to get up in opening
01:48:12PM  12   statements and say Ms. Earnest had another choice.  She had
01:48:16PM  13   another choice.  It was taxol.  And it was risk-free and it
01:48:19PM  14   didn't have the risk of permanent hair loss.  We absolutely
01:48:24PM  15   should be able to put in evidence that taxol also has a risk
01:48:26PM  16   of permanent hair loss, which every single one of their
01:48:28PM  17   experts, Dr. Plunkett, Dr. Thompson, and Dr. Tosti --
01:48:28PM  18            THE COURT:  Didn't I just say that?
01:48:30PM  19            MS. SASTRE:  She said we could.
01:48:34PM  20            MR. RATLIFF:  Okay.  Okay.
01:48:34PM  21            THE COURT:  I just said you could.  I don't know --
01:48:36PM  22   You're not listening to me.
01:48:36PM  23            MS. SASTRE:  He's like this sometimes.  Harley, sit
01:48:40PM  24   down.
01:48:41PM  25            MR. RATLIFF:  Okay.
```

| | | |
|---|---|---|
| 01:48:41PM | 1 | THE COURT: Sit down. |
| 01:48:41PM | 2 | MS. SASTRE: You did good. |
| 01:48:41PM | 3 | THE COURT: If it's relevant, it comes in. If and |
| 01:48:44PM | 4 | only if it's relevant. How about that. Okay. |
| 01:48:53PM | 5 | So 7651, I don't know how to -- because I think I |
| 01:48:57PM | 6 | granted it in part as to those chemotherapy drugs -- poor |
| 01:49:05PM | 7 | Emmy is trying to figure this out -- as to those chemotherapy |
| 01:49:07PM | 8 | drugs that are not related to the litigation in question. |
| 01:49:11PM | 9 | But those drugs that Ms. Earnest is taking, has taken, that |
| 01:49:19PM | 10 | they can explore, the risk, the permanent alopecia, and those |
| 01:49:25PM | 11 | drugs that were presented as alternatives are certainly |
| 01:49:30PM | 12 | appropriate. |
| 01:49:32PM | 13 | MS. SASTRE: Or would have been presented as an |
| 01:49:34PM | 14 | alternative based upon Dr. Carinder's testimony. |
| 01:49:37PM | 15 | THE COURT: Right. |
| 01:49:38PM | 16 | MS. SASTRE: Understood. |
| 01:49:39PM | 17 | THE COURT: We're going to have to get in my view |
| 01:49:43PM | 18 | into that room with Dr. Carinder and Ms. Earnest and what |
| 01:49:50PM | 19 | that conversation would have looked like. |
| 01:49:53PM | 20 | Okay. 7649, which is Taxol with enhanced neuropathy. |
| 01:50:03PM | 21 | It is Motion *in Limine* to Exclude That Taxol Would Have |
| 01:50:09PM | 22 | Enhanced the Severity of Plaintiff's Neuropathy. |
| 01:50:13PM | 23 | Mr. Schanker: Yes, Your Honor. So Dr. Miletello, |
| 01:50:16PM | 24 | the defense oncologist, clearly states in the deposition that |
| 01:50:23PM | 25 | he has no idea when trying to look into a crystal ball if |