**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                    MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                               SECTION "H" (5)

**THIS DOCUMENT RELATES TO:**

**Elizabeth Kahn, Case No. 2:16-cv-17039**

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**STATEMENT OF UNDISPUTED FACTS IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON AFFIRMATIVE DEFENSES CONCERNING ALTERNATIVE CAUSES**

---

**PLAINTIFF'S STATEMENT NO. 1:**  *Ms. Kahn was diagnosed with early-stage breast cancer in April 2008.*

**RESPONSE NO. 1:**  Admitted that Ms. Kahn was "diagnosed [with a lobular] carcinoma of the left breast," which "was biopsied and was strongly estrogen receptor and progesterone receptor positive.  It was also reported to be HER-2 2+ in 30% of the cells."[1]

**PLAINTIFF'S STATEMENT NO. 2:**  *Ms. Kahn participated in the NSABP clinical trial for chemotherapy treatment. As part of the clinical trial, Ms. Kahn underwent three phases of breast cancer treatment: phase one involved cytotoxic chemotherapy with Taxotere for four cycles combined with non-cytotoxic administration of Avastin (bevacizumab) intravenously for four cycles along with the oral use of Xeloda (capecitabine); phase two involved cytotoxic chemotherapy with Adriamycin and cyclophosphamide for four cycles in addition to two more cycles of non-cytotoxic Avastin; phase three involved non-cytotoxic therapy with the administration of Avastin for ten cycles.*

**RESPONSE NO. 2:**  Admitted.  Sanofi, however, notes that Plaintiff's Statement No. 2 incorrectly suggests that Xeloda (capecitabine) is a non-cytotoxic chemotherapy.  Capecitabine is

---

[1]    *See* Pl.'s Ex. 2, Rec. Doc. 10915-4 (filed under seal).

considered in the same class of anti-neoplastic or "cytotoxic" chemotherapies as Adriamycin, cyclophosphamide, and taxanes, such as Taxotere and Taxol.[2]

**PLAINTIFF'S STATEMENT NO. 3:** *Cytotoxic chemotherapies, such as Taxotere, Adriamycin and cyclophosphamide are associated with hair loss and at a minimum temporary hair loss is anticipated from their use.*

**RESPONSE NO. 3:** Admitted that Taxotere, Adriamycin, and cyclophosphamide are associated with hair loss. Sanofi, however, notes that the type and duration of hair loss varies by patient. Sanofi further notes that Taxotere, Adriamycin, and cyclophosphamide—as well as Taxol (paclitaxel), carboplatin, trastuzumab, busulfan, thiotepa, melphalan, etoposide, Adriamycin/cyclophosphamide (AC), fluorouracil/epirubicin/cyclophosphamide (FEC), fluorouracil/Adriamycin/cyclophosphamide (FAC), and cisplatin—all have been reported or associated with permanent alopecia following use.[3]

---

2   *See* http://chemocare.com/chemotherapy/drug-info/capecitabine.aspx#:~:text=Capecitabine%20is%20the%20 generic%20name,%22cytotoxic%22)%20chemotherapy%20drug.; *see also* https://pubchem.ncbi.nlm.nih.gov/ compound/Capecitabine.

3   **Ex. 1**, Wim PM Breed et al., *Presentation, impact and prevention of chemotherapy-induced hair loss: scalp cooling potentials and limitations*, EXPERT REV. DERMATOL. 6(1), 109, 110 (2011) ("Permanent baldness has been reported with high-dose busulfan, cyclophosphamide, thiotepa, melphalan, etoposide, carboplatin, DT and paclitaxel"); **Ex. 2**, J. Crown, et al., *Incidence of Permanent Alopecia Following Adjuvant Chemotherapy in Women w/ Early Stage Breast Cancer*, J. CLIN. ONCOL. (2017) (reporting grade 2 alopecia in 8% of patients who received Adriamycin *without* Taxotere and in 13% of patients who received Adriamycin plus Taxol); **Ex. 3**, ME de Jonge et al., *Relationship between irreversible alopecia and exposure to cyclophosphamide, thiotepa and carboplatin (CTC) in high-dose chemotherapy*, BONE MARROW TRANSPL. (2002) 30, 593, 593 ("In our hospital, we have observed incomplete scalp hair regrowth and permanent hair loss in some patients undergoing high-dose chemotherapy with cyclophosphamide, carboplatin and thiotepa (CTC) with peripheral blood progenitor cell transplantation."); **Ex. 4**, Azael Freites-Martinez, MD et al., *Assessment of Quality of Life and Treatment Outcomes of Patients With Persistent Postchemotherapy Alopecia*, 155(6) JAMA DERMATOL. 724, 725–26 (2019) (eight-year, cohort study co-authored by Dr. Tosti in which more patients who were diagnosed with PCIA received Taxol than Taxotere); **Ex. 5**, Azael Freites-Martinez, MD et al., *Hair disorders in cancer survivors*, J. AM. ACAD. DERMATOL. 2019; 80:1199–1213, 1200 (PCIA "has been mostly reported in breast cancer survivors treated with taxane-based chemotherapy (paclitaxel and docetaxel) and cyclophosphamide-based chemotherapy"); **Ex. 6**, B. Guillot et al., *Mucocutaneous side effects of antineoplastic chemotherapy*, EXPERT OPIN. DRUG SAF. (2004) 3(6):579–587, 580 ("permanent alopecia has been described after treatment with cyclophosphamide"); **Ex. 7**, Gun Min Kim et al., *Chemotherapy-induced irreversible alopecia in early breast cancer patients*, BREAST CANCER RES. TREAT. (2017) 163:527–533 (AC, AC followed by taxane, fluorouracil/epirubicin/cyclophosphamide (FEC), and docetaxel); **Ex. 8**, N. Kluger et al., *Permanent scalp alopecia related to breast cancer chemotherapy by sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel: a prospective study of 20 patients*, ANNALS OF ONCOL. 23:2879–2884, 2879 (2012) ("More recently, cases of permanent alopecia after chemotherapy protocols applied for breast cancers have been

**PLAINTIFF'S STATEMENT NO. 4:**  *Ms. Kahn underwent a surgical lumpectomy and radiation following phases one and two of the clinical trial.*

**RESPONSE NO. 4:**  Admitted.

**PLAINTIFF'S STATEMENT NO. 5:**  *Avastin (bevacizumab) is not a cytotoxic form of chemotherapy, but rather an angiogenesis inhibitor which is not associated with temporary and/or permanent hair loss.*

**RESPONSE NO. 5:**  Denied.   "[I]n a phase II trial of gemcitabine/cisplatin plus bevacizumab [Avastin] or placebo in patients with mesothelioma, the authors found that adding bevacizumab to the gemcitabine/cisplatin regimen statistically significantly increased the incidence of alopecia (any grade)."[4]   Likewise, the Avastin label states that "Avastin may exacerbate these reactions when combined with chemotherapeutic agents.  Examples include . . . nail disorders or alopecia with paclitaxel."[5]

---

described, including taxanes alone, docetaxel or paclitaxel, or a regimen of docetaxel, carboplatin and trastuzumab" and reporting a case series of 20 women who developed permanent alopecia after sequential FEC and docetaxel regimen); **Ex. 9**, Pat Masidonski & Suzanne M. Mahon, *Permanent alopecia in women being treated for breast cancer*, CLIN. J. OF ONCOL. NURSING 13.1 (2009): 13 (reporting that two of the study's 13 reported cases of PCIA occurred in patients treated with the AC regimen, but not Taxotere); **Ex. 10**, Ioulios Palamaras et al., *Permanent chemotherapy-induced alopecia: A review*, J. AM. ACAD. DERMATOL. 2011; 64(3):604–606 ("Ninety case reports of CIPAL were identified in the literature. These were associated with Bu and/or cyclophosphamide (Cy)conditioning regimens used for bone marrow transplantation (BMT), taxanes (docetaxel, paclitaxel), tamoxifen for breast cancer, and alfa-2a interferon (a-2a IFN) for essential thrombocythemia"); **Ex. 11**, Vishal Saggar et al., *Alopecia with endocrine therapies in patients with cancer*, THE ONCOLOGIST 18.10 (2013): 1126–34 (a 2013 meta-analysis of studies assessing hair regrowth in patients treated with hormonal therapies following chemotherapy for breast cancer and finding that 9.3% of patients who took Tamoxifen reported alopecia and 6.4% reported grade 2 alopecia); **Ex. 12**, Ben Tallon et al., *Permanent chemotherapy-induced alopecia: Case report and review of the literature*, J. AM. ACAD. DERMATOL. 2010; 63:333–36, 334 ("Permanent CIA has been described following the use of busulphan, cyclophosphamide, thiotepa, melphalan, etoposide, carboplatin, docetaxel, and paclitaxel. Its reported incidence varies widely, ranging from 0.9% to 43%. Busulphan is the most commonly implicated agent."); **Ex. 13**, Xinyi Yang & Keng-Ee Thai, *Treatment of permanent chemotherapy-induced alopecia with low dose oral minoxidil*, AUSTRAL. J. OF DERMATOL. 2016 57, e130-e132, e130 ("PCIA is commonly associated with busulfan-containing regimens and bone marrow transplant for haematologic malignancies.  It has also been reported following the use of cyclophosphamide, melphalan, thiotepa, carboplatin, docetaxel, paclitaxel, tamoxifen and alfa-2a interferon.").

[4]   **Ex. 14**, Apr. 29, 2020 Glaspy Rpt. at 25–26 & n.41 (citing Kindler, HL, et al. Multicenter, Double-Blind, Placebo-Controlled, Randomized Phase II Trial of Gemcitabine/Cisplatin Plus Bevacizumab or Placebo in Patients with Malignant Mesothelioma, J Clin Onc., 2012;30(2):2509-15; Karrison, T. Final Analysis of a Multi-Center Double-Blind, Placebo-Controlled, Randomized Phase II Trial of Gemcitabin/Cisplatin (GC) Plus Bevacizumab (B) or Placebo (P) in Patients (Pts) with Malignant Mesothelioma (MM), J Clin Onc. 2007; 25:7526-7526.)

[5]   *Id.* at 26 & n.42 (citing Avastin Label (2014-2016)).

**PLAINTIFF'S STATEMENT NO. 6:**  *Ms. Kahn's hair failed to fully regrow following cytotoxic chemotherapy with Taxotere.*

**RESPONSE NO. 6:**  Denied.  As set forth more fully in Sanofi's Affirmative Statement of Facts, Ms. Kahn's alopecia completely resolved by January 29, 2009.[6]

**PLAINTIFF'S STATEMENT NO. 7:**  *Taxol was one of various other viable chemotherapy treatment options without the increased risk of permanent hair loss available to Ms. Kahn at the time that she underwent treatment.*

**RESPONSE NO. 7:**  Denied.  Even if Taxol were a viable alternative for Ms. Kahn at the time she underwent treatment, "Taxol therapy results in hair loss and has been associated with alopecia after the conclusion of chemotherapy.  Further in Taxol-containing regimens, patients are given Adriamycin and cyclophosphamide—both of which have been associated with alopecia after the completion of chemotherapy."[7]  Plaintiff's own experts agree that Taxol and Taxol-containing regimens pose a risk of permanent hair loss,[8] which is confirmed by the medical literature—including an eight-year cohort study co-authored by Plaintiff's expert, Dr. Tosti.[9]

**PLAINTIFF'S STATEMENT NO. 8:**  *Dr. Carl Kardinal, Ms. Kahn's treating oncologist, testified that Taxotere and Taxol are equivalent in efficacy and he would recommend treatment with Taxol, or other regimens including, but not limited to, Adriamycin and cyclophosphamide if a patient did not wish to undergo treatment with Taxotere due to the risk of permanent hair loss.*

---

[6]   *See infra* Sanofi's Affirmative Statement of Facts ¶¶ 1–10.

[7]   Ex. 14, Apr. 29, 2020 Glaspy Rpt. at 27 (Note: Dr. Glaspy identified during deposition that his report erroneously reported the year it was written as 2019 instead of 2020).

[8]   *See, e.g.*, **Ex. 15**, Dec. 3, 2018 Bosserman Dep. 142:19–143:13 (Dr. Bosserman testifying that cases of permanent hair loss have been reported with Taxol, cyclophosphamide, Adriamycin, A-C regimen, and AC-Taxol); **Ex. 16**, Dec. 4, 2018 Tosti Dep. at 19:5–9 (testifying that "[a]bsolutely, yes" there are publications that say there's persistent chemotherapy-induced alopecia with Taxol); **Ex. 17**, Dec. 12, 2019 Tosti Dep. 144:15–145:6 (testifying that there were more reports of PCIA with Taxol than Taxotere in an article she co-authored with data from Memorial Sloan Kettering hospital); **Ex. 18**, Jan. 11, 2019 Feigal Dep. at 596:2–597:9 (testifying that there have been cases of permanent hair loss reported with Taxol and AC-Taxol regimen); **Ex. 19**, Dec. 20, 2018 Kessler Dep. 247:8–25 (acknowledging that there are cases of irreversible alopecia associated with Taxol); **Ex. 20**, Dec. 10, 2018 Plunkett Dep. 117:11–16 (testifying that Taxol has been associated with permanent alopecia).

[9]   *See supra* n.2.

**RESPONSE NO. 8:** Denied as incomplete. Dr. Kardinal testified only that Taxotere and Taxol were "*fairly* equivalent" in terms of efficacy.[10] Additionally, Dr. Kardinal testified that, although he would "make a strong recommendation on what we think is best" for a patient if she declined a Taxotere regimen, the "patient doesn't describe -- do their own prescribing" and that he "was not an idle bystander" when it came to determining what course of treatment a patient ultimately received.[11]

**PLAINTIFF'S STATEMENT NO. 9:** *Sanofi pled eleven (11) affirmative defenses concerning causation in their Master Answer.*

**RESPONSE NO. 9:** Denied. Sanofi's answer to the Master Complaint was not jurisdiction-specific and included affirmative defenses that might not be applicable in every state. For instance, in some jurisdictions, even if a plaintiff meets her affirmative burden to prove causation, the defendant may still prevail by proving that a superseding cause is responsible for plaintiff's harm. In Louisiana, however, even that burden falls to plaintiff. *See Laurent v. Jolly-Wright*, 2005-1499 (La. App. 4 Cir. 1/10/07), 950 So. 2d 47, 49, *writ denied*, 2007-0283 (La. 3/23/07), 951 So. 2d 1108 ("the plaintiff has the burden of proving that [her] injuries were not the result of separate, independent and intervening causes.").

**PLAINTIFF'S STATEMENT NO. 10:** *Dr. Lee-Jen Wei, Sanofi's biostatistics expert, has not researched nor been provided information on any drug that would give him a proper scientific basis to opine that the drug may cause permanent chemotherapy induced alopecia ("PCIA"), including, but not limited to, Adriamycin, cyclophosphamide, Xeloda, Avastin, tamoxifen, Taxol, 5-Fluorourcil, epirubicin, methotrexate, and Gemzar.*

**RESPONSE NO. 10:** Denied. Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain

---

[10]   **Ex. 21**, Jan. 17, 2018 Kardinal Dep. 77:1–7; 137:7–18; 145:17–146:12 (emphases added).

[11]   *Id.* 154:1–25.

medications are associated with PCIA, which is clear from medical literature. *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge"). Experts for both parties agree to those facts.[12] Denied that Dr. Wei did not "research" whether certain drugs are associated with PCIA.

**PLAINTIFF'S STATEMENT NO. 11:** *Dr. Gerald Miletello, a practicing oncologist, was asked to provide: (1) opinions on patient counseling, (2) opinions on patient treatment options, (3) opinions on prescribing decision for Elizabeth Kahn, and (4) opinions as to Plaintiff's expert reports regarding chemotherapy and breast cancer.*

**RESPONSE NO. 11:** Denied as incomplete. With respect to (4), Dr. Miletello provides a broader statement regarding the scope of his expert report, which included providing opinions regarding the Plaintiff-specific opinions contained in Ms. Kahn's experts' reports as well as opinions regarding cancer patients generally.[13]

**PLAINTIFF'S STATEMENT NO. 12:** *Dr. Miletello testified that he does not offer an opinion as to causal association between any drug and permanent hair loss, including but not limited to, Adriamycin, Taxol, epirubicin, 5Flruorouracil, cyclophosphamide, Gemzar, methotrexate, or tamoxifen, Xeloda, and Avastin.*

**RESPONSE NO. 12:** Admitted but irrelevant. Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that

---

[12] For Sanofi's experts, *see, e.g.*, **Ex. 22**, Dec. 9, 2019 Arrowsmith Rpt. at 48; **Ex. 23**, Apr. 17, 2020 Chang Rpt. at 26–27; Ex. 14, Apr. 29, 2020 Glaspy Rpt. at 22–25 (Note: Dr. Glaspy identified during deposition that his report erroneously reported the year it was written as 2019 instead of 2020); **Ex. 24**, Apr. 29, 2020 Miletello Rpt. at 9–10. For Plaintiff's experts, *see supra* n.8; *see also, e.g.*, **Ex. 25**, Trial Tr. 1057:17–24 (Dr. Tosti testifying that other chemotherapies cause PCIA, it's just a question of frequency); *Id.* 1219:4–9 (Dr. Feigal testifying during the *Earnest* trial that there have been cases of permanent hair loss reported for both Cytoxan and Adriamycin); *Id.* 478:10–18 (Dr. Kessler testifying during the *Earnest* trial that he has seen reports of PCIA associated with both Cytoxan and Adriamycin); *Id.* 861:7–9, 873:19–21 (Dr. Plunkett testifying during the *Earnest* trial that she identified permanent hair loss as a hazard associated with Adriamycin and Cytoxan); Ex. 15, Dec. 3, 2018 Bosserman Dep. 142:19–143:13 (Dr. Bosserman testifying that cases of permanent hair loss have been reported with Taxol, cyclophosphamide, Adriamycin, A-C regimen, and AC-Taxol).

[13] Ex. 24, Apr. 29, 2020 Miletello Rpt. at 1.

certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Experts for both parties agree to those facts.[14]

**PLAINTIFF'S STATEMENT NO. 13:**     *Dr. Miletello states within his report that (1) chemotherapy can alter a woman's hormonal status, resulting in age-related hair loss; (2) "cases of delayed hair regrowth or incomplete hair regrowth have been reported with many chemotherapy drugs including Adriamycin, Carboplatin, Cisplatin, Taxol, Epirubicin, 5-Fluorouracil, Melphalan, Gemcitabine, Capecitabine, Busulfan, CMF, and Cyclophosphamide"; and (3) endocrine based therapies such as tamoxifen "may be responsible for a woman's hair not growing."*

**RESPONSE NO. 13:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Moreover, experts for both parties agree to these facts.[15]

**PLAINTIFF'S STATEMENT NO. 14:**     *Dr. Miletello testified that his opinion that "cases of delayed hair regrowth or incomplete hair regrowth have been reported with many chemotherapy drugs" is limited to those drugs he believes he has observed delayed hair re-growth with: Taxol, 5-Fluorouracil, and Adriamycin.*

---

[14]   *See supra* n.12.

[15]   *See supra* n.12; *see also* Ex. 25, Trial Tr. 1066:12–19 (Dr. Tosti co-authored a paper that reported 25% of patients receiving post-chemotherapy endocrine therapy, including Tamoxifen, experienced endocrine-induced alopecia); **Ex. 26**, Nov. 21, 2019 Feigal Dep. 241:13–17 (admitting there's a risk of persistent alopecia with endocrine therapy); **Ex. 27**, Nov. 26, 2019 Kessler Dep. 347:25–348:17 (acknowledging that there are cases of ongoing alopecia in the literature associated with hormonal therapies).

**RESPONSE NO. 14:** Denied.  Dr. Miletello testified that, *in his clinical experience*, he has only seen patients with persistent hair loss (greater than five years) after taking Adriamycin, 5-Fluorouracil, and Taxol—as a result of which, he would limit any *causation* opinions to those three drugs.[16]  With respect to Dr. Miletello's opinions regarding reports of delayed hair regrowth or incomplete hair regrowth in the literature, *i.e.*, associations between other drugs and permanent hair loss, Dr. Miletello has not limited his opinions. Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Experts for both parties agree to these facts.[17]

**PLAINTIFF'S STATEMENT NO. 15:**      *Dr. Miletello testified that he does not intend to offer an opinion on whether other medical conditions Ms. Kahn may have, such as Vitamin D deficiency, high blood pressure, or high cholesterol, may have caused her permanent hair loss.*

**RESPONSE NO. 15:** Admitted.

**PLAINTIFF'S STATEMENT NO. 16:**      *Dr. Glaspy, a practicing oncologist, states within his expert report that he will "offer opinions regarding types of alopecia and causes of alopecia." Specifically, he states that (1) androgenetic alopecia is the most common form of alopecia in women, (2) alopecia can be caused by various medical conditions, (3) tamoxifen use can result in persistent alopecia, and (4) permanent/persistent alopecia can be caused and/or has been seen following chemotherapy with approximately fifteen commonly used chemotherapy drugs, including: Adriamycin, Carboplatin, CMF, Cisplatin, Taxol, epirubicin, Etoposide, 5-Flurouracil, Bulsulfan, Gemcitabine, Idarubicin, Ifosfamide, Melpholan, Thiotepa, and cyclophosphamide.*

---

[16]   **Ex. 28**, Dec. 19, 2019 Miletello Dep. 133:1–134:5.

[17]   *See supra* n.12.

**RESPONSE NO. 16:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Moreover, experts for both parties agree to these facts.[18]

**PLAINTIFF'S STATEMENT NO. 17:**     *Dr. Glaspy testified that he is unaware of any clinical trial data to demonstrate a causal link between tamoxifen and hair loss, and that the referenced case reports with tamoxifen do not establish causation.*

**RESPONSE NO. 17:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089  (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Moreover, experts for both parties agree to these facts.[19]

**PLAINTIFF'S STATEMENT NO. 18:**     *Dr. Glaspy testified that there is no established causal relationship between PCIA and any of the fifteen chemotherapy drugs he lists in his expert report.*

**RESPONSE NO. 18:** Admitted that Dr. Glaspy testified there is no established causal relationship between PCIA and any of the chemotherapy drugs he lists in his expert report, but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to

---

[18]   *See supra* nn.12 & 15.

[19]   *See supra* n.15.

conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089  (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Specifically, when questioned whether there was valid evidence to support his opinion that "cases of persistent alopecia have been reported with" other chemotherapies, Dr. Glaspy testified, "There's valid evidence of an association there."[20]  He further testified that his opinion is a "statement of association,"[21] and that the medical literature supports such an association.[22]  Moreover, experts for both parties agree to these facts.[23]

**PLAINTIFF'S STATEMENT NO. 19:**     *Dr. Glaspy testified that he is unsure whether incidence rates exists for any of the fifteen chemotherapy drugs he lists in his expert report.*

**RESPONSE NO. 19:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v.*

---

[20]  **Ex. 29**, Jan. 9, 2020 Glaspy Dep. 83:7–84:9.

[21]  **Ex. 30**, May 13, 2020 Glaspy Dep. 69:11–17 (agreeing that the "cases reported" statement is not a "statement of causation"); *see also id.* 172:9–174:11 ("it's not causal that I conclude, it's association").

[22]  *See id.* 172:9–174:11 ("It is it for me in the literature on Cytoxan, you bet.  And it's not causal that I conclude, it's association"), 174:12–180:17 (testifying the same for other chemotherapies and Tamoxifen; *see also* Ex. 29, Jan. 9, 2020 Glaspy Dep. 78:24–81:25 (testifying that he relies on Dr. Tosti's co-authored, eight-year cohort study to demonstrate association, not causation, between PCIA and various chemotherapy and endocrine cancer treatments)

"Q  The authors of this article don't attempt to contribute [sic] cause and effect to any drug, do they?

[Objection]

THE WITNESS:  Well, I think they're reporting accurately.  This is a good journal.  And they're reporting accurately an association, not a cause and effect. . . . It may or may not be ultimately proven to be a causal relationship.  But the observational trial is to find hypotheses for associations."

[23]  *See supra* n.12.

10

*Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Moreover, experts for both parties agree to these facts.[24]

**PLAINTIFF'S STATEMENT NO. 20:**      *Dr. Glaspy states in his report that he was asked to formulate opinions regarding (1) the development, use, efficacy, and side effects of drugs used to treat women with breast cancer and (2) to assess the treatment of Ms. Kahn.*

**RESPONSE NO. 20:** Denied as incomplete.  Dr. Glaspy identifies the scope of his opinions as follows: "to analyze medical and scientific literature and to apply my training, research and clinical experience to formulate opinions regarding the development, use, efficacy, and side effects of drugs used to treat women with breast cancer. I have also been asked to review the individual case of Ms. Kahn, and to provide my opinions with respect to her individual case, ***breast cancer treatment in general and plaintiff's expert reports in this matter***."[25]

**PLAINTIFF'S STATEMENT NO. 21:**      *Dr. Glaspy testified that he has not applied any methodology by way of literature search, review of randomized clinical trial data, and/or the application of the Bradford Hill criteria or other causation analysis to investigate the relationship between any drug and PCIA.*

**RESPONSE NO. 21:** Denied as misleading to the extent Plaintiff's Statement No. 21 suggests that Dr. Glaspy testified he did not apply ***any*** methodology to investigate ***any*** relationship between "any drug and PCIA."  Dr. Glaspy testified that he did not apply any of the methodologies listed in Plaintiff's Statement No. 21 to investigate a ***causal*** relationship between any drug and PCIA; however, his report cites numerous published articles and he testified that he relied on published literature in forming his opinions regarding the ***association*** between other chemotherapy

---

[24]   *See supra* n.12.

[25]   Ex. 14, Apr. 29, 2020 Glaspy Rpt. at 2 (emphasis added).

drugs and PCIA.[26]  Plaintiff's Statement No. 21 also is irrelevant because Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Experts for both parties agree to these facts.[27]

**PLAINTIFF'S STATEMENT NO. 22:**     *Dr. Glaspy testified that he did not employ any methodology by way of literature search, review of randomized clinical trial data, and/or the application of the Bradford Hill criteria to investigate the relationship between PCIA and Adriamycin, cyclophosphamide or Avastin.*

**RESPONSE NO. 22:** Denied as misleading to the extent Plaintiff's Statement No. 22 suggests that Dr. Glaspy testified he did not apply *any* methodology to investigate *any* relationship between "any PCIA and Adriamycin, cyclophosphamide or Avastin."  Dr. Glaspy testified that he did not apply any of the methodologies listed in Plaintiff's Statement No. 22 to investigate a ***causal*** relationship between any drug and PCIA; however, his report cites numerous published articles and he testified that he relied on published literature in forming his opinions regarding the ***association*** between those chemotherapy drugs and PCIA.[28]  Plaintiff's Statement No. 22 also is irrelevant because Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163

---

[26]  *See generally* Ex. 14, Apr. 29, 2020 Glaspy Rpt.; *see also* Ex. 30, May 13, 2020 Glaspy Dep. 156:7–159:23 (testifying that any literature he found to support his opinion that cases of PCIA have been reported with Adriamycin and cyclophosphamide would be cited in his report).

[27]  *See supra* n.12.

[28]  *See supra* nn.18–22, 26.

(La. 5/22/09), 16 So. 3d 1065, 1089  (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Experts for both parties agree to these facts.[29]

**PLAINTIFF'S STATEMENT NO. 23:**      *Dr. Glaspy testified that he did not employ any methodology by way of literature search, review of randomized clinical trial data, and/or the application of the Bradford Hill criteria to investigate the relationship between PCIA and Xeloda, Tamoxifen, Taxol, 5-Fluoroucil, epirubicin, methotrexate, Gemzar, or any other chemotherapy drugs.*

**RESPONSE NO. 23:**  Denied as misleading to the extent Plaintiff's Statement No. 23 suggests that Dr. Glaspy testified he did not apply ***any*** methodology to investigate ***any*** relationship between PCIA and "Tamoxifen, Taxol, 5-Fluoroucil, epirubicin, methotrexate, Gemzar, or any other chemotherapy drugs."  Dr. Glaspy testified that he did not apply any of the methodologies listed in Plaintiff's Statement No. 23 to investigate a ***causal*** relationship between any drug and PCIA; however, his report cites numerous published articles and he testified that he relied on published literature in forming his opinions regarding the ***association*** between those chemotherapy drugs and PCIA.[30]  Plaintiff's Statement No. 23 also is irrelevant because Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019

---

[29]   *See supra* n.12.

[30]   *See generally* Ex. 14, Apr. 29, 2020 Glaspy Rpt. at 22–25; *see also* Ex. 30, May 13, 2020 Glaspy Dep. 156:7–159:23 (testifying that any literature he found to support his opinion that cases of PCIA have been reported with Adriamycin and cyclophosphamide would be cited in his report), 171:11–180:17 (responding to Plaintiff's questions regarding *causation* analyses for various drugs, and explaining "it's not causal that I conclude, it's association, and we talked about this in the last deposition and I will stand by what I said there").

Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge"). Experts for both parties agree to these facts.[31]

**PLAINTIFF'S STATEMENT NO. 24:** *Sanofi's epidemiologist, Dr. Ellen Chang, states in her expert report: "I did not directly assess whether a causal relationship has been established between use of any other specific chemotherapeutic agent and irreversible or permanent alopecia. I also did not directly investigate the incidence of irreversible or permanent alopecia among breast cancer patients using chemotherapeutic agents other than docetaxel."*

**RESPONSE NO. 24:** Admitted but irrelevant. Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature. *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge"). Moreover, experts for both parties agree to these facts.[32]

**PLAINTIFF'S STATEMENT NO. 25:** *Dr. Chang testified that in order to offer an expert opinion on whether alternative drugs cause permanent hair loss, she would need to complete a systematic literature search to assess causality.*

**RESPONSE NO. 25:** Admitted but irrelevant. Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature. *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge"). Dr. Chang's report, however, cites to numerous publications from the medical

---

[31]   *See supra* nn.12 & 15.

[32]   *See supra* n.12.

14

literature to support her opinion that "alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent";[33] and Dr. Chang testified that she based her opinion on her review of those articles and 84 randomized controlled clinical trials.[34]  Moreover, experts for both parties agree to these facts.[35]

**PLAINTIFF'S STATEMENT NO. 26:**    *Dr. Chang testified that she has not performed a systematic literature review to determine whether Adriamycin, cyclophosphamide, Xeloda, Avastin, tamoxifen, Taxol, 5-Fluoroucil, epirubicin, methotrexate, or Gezmar [sic] causes permanent hair loss.*

**RESPONSE NO. 26:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089  (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Dr. Chang's report, however, cites to numerous publications from the medical literature to support her opinion that "alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent";[36] and Dr. Chang testified that she based her opinion on her review of those articles and 84 randomized controlled clinical trials.[37]  Moreover, experts for both parties agree to these facts.[38]

---

[33]   Ex. 23, Apr. 17, 2020 Chang Rpt. at 27 (citing 13 studies).

[34]   **Ex. 31**, Jan. 7, 2019 Chang Dep. 27:17–32:8.

[35]   *See supra* n.12.

[36]   *See supra* n.33.

[37]   *See supra* n.34.

[38]   *See supra* nn.12 & 15.

**PLAINTIFF'S STATEMENT NO. 27:**      *In her expert report, Dr. Chang states that "[a] broad range of medications are known to cause alopecia, primarily in the form of telogen effluvium or anagen effluvium."*

**RESPONSE NO. 27:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Dr. Chang's report, however, cites to numerous publications from the medical literature to support her opinion that "alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent";[39] and Dr. Chang testified that she based her opinion on her review of those articles and 84 randomized controlled clinical trials.[40]  Moreover, experts for both parties agree to these facts.[41]

**PLAINTIFF'S STATEMENT NO. 28:**      *Dr. Chang testified that she has not performed a systematic literature review to determine whether any of the drugs listed in her expert report are causally related to permanent hair loss: "I agree that I have not done a systematic literature review on any of these drugs except for docetaxel with respect to permanent or irreversible alopecia."*

**RESPONSE NO. 28:** Admitted but irrelevant.  Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature.  *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089  (plaintiff without direct

---

[39]   *See supra* n.33.

[40]   *See supra* n.34.

[41]   *See supra* nn.12 & 15.

evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis for the challenge").  Dr. Chang's report, however, cites to numerous publications from the medical literature to support her opinion that "alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent"; and Dr. Chang testified that she based her opinion on her review of those articles and 84 randomized controlled clinical trials. Moreover, experts for both parties agree to these facts.[42]

**PLAINTIFF'S STATEMENT NO. 29:**     *Dr. Chang testified that she assumes that any drug that may cause temporary or reversible alopecia can also cause permanent and irreversible alopecia through the same biological mechanism of action.*

**RESPONSE NO. 29:** Denied.  Dr. Chang specifically denied that her opinions regarding biological mechanism of action were based on assumptions: "I would say it's more than an assumption because it is based on an understanding of the existing science.  So my understanding from looking at published papers, for instance, is that there's no way to distinguish histopathologically . . . under a microscope, between permanent or irreversible alopecia and irreversible alopecia, so they look the same."[43]  Dr. Chang further testified, "so it's more than a just theoretical assumption, it's based in part on . . . the lack of a standard or a separate clinical or histopathological definition for irreversible or permanent alopecia."[44]   Indeed, Dr. Chang repeatedly testified that her opinion was "not a blind assumption or a baseless assumption," emphasizing that "it has science behind it."[45]

---

[42]    *See supra* nn.12 & 15.

[43]    **Ex. 32**, May 19, 2020 Chang Dep. 145:9–25.

[44]    *Id.* 146:1–7.

[45]    *See id.*; *see also id.* 146:8–150:3.

**PLAINTIFF'S STATEMENT NO. 30:**     *Dr. Chang does not perform mechanistic studies.*

**RESPONSE NO. 30:** Denied as incomplete.   Dr. Chang admitted that she does not currently perform mechanistic studies as an epidemiologist, but she testified that she has "done biochemistry experiments and published biochemistry papers in the past."[46]

**PLAINTIFF'S STATEMENT NO. 31:**     *Dr. Chang testified that she is not qualified to offer expert opinions involving toxicology or pharmacology.*

**RESPONSE NO. 31:** Admitted but irrelevant.

**PLAINTIFF'S STATEMENT NO. 32:**     *Dr. Chang testified that she does not intend to offer opinions about the mechanism of action and histopathology of alopecia.*

**RESPONSE NO. 32:** Admitted but irrelevant.

**PLAINTIFF'S STATEMENT NO. 33:**     *Dr. Janet Arrowsmith, Sanofi's regulatory expert, testified that she did not implement any methodology or undertake any causation analysis to assess a potential causal relationship between PCIA and any non-Taxotere drug.*

**RESPONSE NO. 33:** Denied as misleading and irrelevant.   Dr. Arrowsmith testified that she "certainly discuss[ed] the methodology in the hierarchy of scientific evidence . . . and the fact that in TAX 316 there was no statistically significant difference in the rates of persistent alopecia between the FAC and the TAC populations[.]"[47]   She also testified that she did her own calculation of the TAC and FAC rates of ongoing alopecia and found there was "not a statistically significant difference" between the two.[48]   Nevertheless, Plaintiff's Statement No. 33 is irrelevant because Sanofi does not bear the burden of proof on causation, and its experts do not need to conduct a full causation analysis in order to testify that certain medications are associated with PCIA, which is clear from medical literature. *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d

---

[46]   *Id.* 140:17–25.

[47]   **Ex. 33**, July 29, 2020 Arrowsmith Dep. 41:23–42:18.

[48]   *Id.* 42:19–44:19.

1065, 1089 (plaintiff without direct evidence of causation must eliminate other causes); *see also*

Sept. 5, 2019 Hr'g Tr. at 35:2–14 (permitting Defendants to challenge Plaintiff on causation

provided they "have a good faith basis for the challenge").  Experts for both parties agree to these

facts.[49]

**PLAINTIFF'S STATEMENT NO. 34:**   *Dr. Arrowsmith agreed that "cases of permanent alopecia have been reported," or case reports alone, are insufficient to establish causation.*

**RESPONSE NO. 34:** Admitted but irrelevant.  Sanofi does not bear the burden of proof

on causation, and its experts do not need to conduct a full causation analysis in order to testify that

certain medications are associated with PCIA, which is clear from medical literature.  *Rando v.*

*Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff without direct

evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14

(permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis

for the challenge").  Moreover, experts for both parties agree to these facts.[50]

**PLAINTIFF'S STATEMENT NO. 35:**   *Dr. Arrowsmith testified that she does not intend to offer an opinion that valid scientific evidence demonstrates a statistically significant causal association between any chemotherapy drug and PCIA.*

**RESPONSE NO. 35:** Admitted but irrelevant.  Sanofi does not bear the burden of proof

on causation, and its experts do not need to conduct a full causation analysis in order to testify that

certain medications are associated with PCIA, which is clear from medical literature.  *Rando v.*

*Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089  (plaintiff without direct

evidence of causation must eliminate other causes); *see also* Sept. 5, 2019 Hr'g Tr. at 35:2–14

(permitting Defendants to challenge Plaintiff on causation provided they "have a good faith basis

---

[49]   *See supra* n.12.

[50]   *See supra* nn.12 & 15.

for the challenge").   Indeed, Dr. Arrowsmith testified that she cited literature in her report indicating that there have been reports of persistent alopecia associated with other chemotherapies, such as Adriamycin.[51]   Dr. Arrowsmith further testified that the implication a Bradford-Hill analysis could establish causation was incorrect, explaining that such analyses at best "suggest a causal association."[52]   Moreover, experts for both parties agree that other chemotherapies and hormone therapies are associated with permanent hair loss.[53]

## DEFENDANTS' AFFIRMATIVE STATEMENT OF FACTS

1.      Ms. Kahn's hair began to regrow after she completed her second phase of chemotherapy on October 23, 2008.[54]

2.      Based on her examination of Ms. Kahn on January 29, 2009, Ms. Kahn's clinical trial nurse, Melanie Zazulak, reported that Ms. Kahn's alopecia had completely "resolved."[55]

3.       Despite seeing Nurse Zazulak again on April 2, 2009, Ms. Kahn did not raise any concerns regarding alopecia or hair regrowth.[56]

4.      Ms. Kahn began Tamoxifen hormone therapy in April 2009.[57]

5.      In August 2009, Dr. Larned indicated that Ms. Kahn's response to therapy was "excellent" and that Ms. Kahn was "pleased her hair is growing back."[58]

---

[51]   Ex. 33, July 29, 2020 Arrowsmith Dep. 35:7–38:10.

[52]   *Id.*

[53]   *See supra* nn.12 & 15.

[54]   **Ex. 34**, Ochsner Health System 1056–58.

[55]   Ex. 34, Ochsner Health System 1227; **Ex. 35**, Feb. 4, 2020 Zazulak Dep. 64:19–65:9.

[56]   Ex. 34, Ochsner Health System 1245.

[57]   *Id.* at 1253–54.

[58]   *Id.* at 1294–96.

6.      During appointments in November 2009 and February 2010, Ms. Kahn again reported to Dr. Larned that her hair was continuing to grow back.[59]

7.      In May 2010, Ms. Kahn complained to Dr. Larned about "thinning hair," peripheral neuropathy, hot flashes, mood swings, memory loss, and other issues.[60]  In both August 2011 and February 2012, Ms. Kahn told Dr. Larned that her thinning hair was improving,[61] after which Ms. Kahn did not mention her hair again.[62]

8.      Ms. Kahn also visited a dermatologist in 2012, 2014, 2015, 2016, and 2018 but not once raised a concern about or sought treatment for hair loss during those appointments.[63]

9.      Ms. Kahn continued to take Tamoxifen until April 2018.[64]

10.      To date, Ms. Kahn has not received treatment for hair loss.[65]

11.      According to Sanofi's expert, Dr. John Glaspy, "there is no medically reliable way to attribute Ms. Kahn's persistent hair loss complaint to Taxotere alone. Ms. Kahn voluntarily continued to take medications, including Tamoxifen, which can cause hair loss.  She is also post-menopausal, aging, and has several other medical conditions that could contribute to her hair loss."[66]

---

[59]   *Id.* at 1325–26, 1334–35; **Ex. 36**, Feb. 21, 2018 Larned Dep. 78:24–80:20.

[60]   Ex. 34, Ochsner Health System 1414–16, 1433–35.

[61]   *Id.* at 1511–13, 1534; Ex. 36, Feb. 21, 2018 Larned Dep. 81:15–82:8.

[62]   Ex. 36, Feb. 21, 2018 Larned Dep. at 82:3–15.

[63]   **Ex. 37**, Metairie Road Dermatology 10–20, 43–46, 52–54; **Ex. 38**, Feb. 27, 2020 Coller Ochsner Dep. 31:3–23, 36:3-17, 40:11–13, 50:5–14, 51:12–23, 54:13–55:3.

[64]   Ex. 36, Feb. 21, 2018 Larned Dep. 89:24–92:12.

[65]   **Ex. 39**, Dec. 7, 2017 Kahn Dep. 318:4–24.

[66]   Ex. 14, Apr. 29, 2020 Glaspy Rpt. at 48.

12.     Ms. Kahn also received four other chemotherapies in addition to Taxotere: Adriamycin, cyclophosphamide, Avastin, and Xeloda.[67]

13.     Existing medical literature regarding PCIA confirms that other chemotherapies and Tamoxifen have been associated with permanent hair loss.[68]

14.     For instance, in a 2010 study, Tallon et al. reported "Permanent CIA has been described following the use of busulphan, cyclophosphamide, thiotepa, melphalan, etoposide, carboplatin, docetaxel, and paclitaxel. Its reported incidence varies widely, ranging from 0.9% to 43%."[69]

15.     In a 2018 study, Frietes-Martines et al. reported that PCIA "has been mostly reported in breast cancer survivors treated with taxane-based chemotherapy (paclitaxel and docetaxel) and cyclophosphamide-based chemotherapy."[70]

16.     In a 2017 study, Kim et al. reported that "Permanent alopecia following chemotherapy has been considered a rare event, and most cases have followed the use of high-dose chemotherapy and bone marrow transplantation. More recently, several case reports of CIIA after standard dose chemotherapy for breast cancer were published. Masidonski et al. reported their experience in 13 women treated for breast cancer with AC or AC followed by taxane. Kluger et al. analyzed the clinical and histological features of severe and CIIA following a sequential fluorouracil/epirubicin/cyclophosphamide (FEC) and docetaxel regimen for adjuvant breast cancer treatment in 20 patients. However, the prevalence and characteristics of CIIA remain unknown."[71]

---

[67]   *See* Pl.'s Stmt. of Fact No. 2, Rec. Doc. 10928-2.

[68]   *See supra* n.2.

[69]   *See supra* n.2.

[70]   *See supra* n.2.

[71]   *See supra* n.2.

17.     And Palamaras et al.'s 2011 study reported, "Ninety case reports of CIPAL were identified in the literature. These were associated with Bu and/or cyclophosphamide (Cy)econditioning regimens used for bone marrow transplantation (BMT), taxanes (docetaxel, paclitaxel), tamoxifen for breast cancer, and alfa-2a interferon (a-2a IFN) for essential thrombocythemia."[72]

18.     Based on his review of the medical literature, Dr. Glaspy has offered the opinion that "[c]ases of persistent alopecia have been reported with Adriamycin, Carboplatin, CMF, Cisplatin, Taxol, Epirubicin, Etoposide, 5-Fluorouracil, Busulfan, Gemcitabine, Idarubicin, Ifosfamide, Melphalan, Thiotepa, and Cyclophosphamide."[73]

19.     Dr. Glaspy further opines, "there is no significant evidence that Taxotere alone results in permanent alopecia."[74]

20.     Moreover, for "patients who were given a Taxotere-containing regimen and have substantial alopecia after the completion of chemotherapy, their alopecia could have been caused by Adriamycin or cyclophosphamide."[75]

21.     Dr. Glaspy also opines, "in cases of hormone positive early breast cancer, women are given either Tamoxifen or aromatase inhibitors, which are also known to carry a risk of alopecia.  In those situations, any alopecia or failure in hair recovery could be caused by Tamoxifen or aromatase inhibitors."[76]

---

[72]   *See supra* n.2.

[73]   Ex. 14, Apr. 29, 2020 Glaspy Rpt. at 22–25.

[74]   *Id.* at 25.

[75]   *Id.*

[76]   *Id.*

22.     Similarly, Dr. Ellen Chang, Sanofi's epidemiologist, concluded: "based on the best available scientific evidence, a causal relationship has not been established between docetaxel-containing chemotherapeutic regimens, compared to nondocetaxel regimens, and irreversible or permanent alopecia."[77]

23.     Dr. Chang also reviewed the medical literature and concluded that "[i]n some cases, alopecia in cancer patients treated with various types of chemotherapy other than docetaxel has been described as permanent" and that "case reports of irreversible or permanent alopecia in cancer patients following alkylating chemoradiotherapy or conditioning chemotherapy date back at least to the 1980s and early 1990s."[78]

24.     Sanofi's regulatory expert, Dr. Janet Arrowsmith, also has explained that "the *currently* available scientific evidence does not support an unequivocal causal role for Taxotere alone in persistent or permanent alopecia…[because] the data [is] too confounded to make such an assertion with any scientific or medical certainty."[79]

25.     Ms. Kahn's own experts also concede that other chemotherapies, including Adriamycin and cyclophosphamide, and Tamoxifen are associated with PCIA.[80]

26.     For instance, Dr. Tosti testified during the *Earnest* trial that "what I really think is that those drugs are, you know, sometimes occasionally causing the problem.  ***I never said they never cause.***  It's just a question of, likely, frequency."[81]  Dr. Tosti also has testified that PCIA is

---

[77]   Ex. 23, Apr. 17, 2020, Chang Rpt. at 4.

[78]   *Id.* at 27.

[79]   Ex. 22, Dec. 9, 2019 Arrowsmith Rpt. at 6 ¶ *i.*

[80]   *See supra* nn.12 & 15.

[81]   Ex. 25, Trial Tr. at 1057:17–24 (emphases added).

associated with Adriamycin and cyclophosphamide, among others, as well as endocrine therapy drugs, including Tamoxifen, all of which were taken by Ms. Kahn.[82]

27.     Dr. Tosti also co-authored an eight-year cohort study in 2019 in which she addressed multiple patients alleged to have PCIA or endocrine-induced alopecia after chemotherapy.  The patients could only be evaluated if they had a clinical diagnosis of PCIA.[83] The authors reported that 47 of the patients who had PCIA took a chemotherapy regimen containing Taxol; 13 patients who had PCIA took a chemotherapy regimen containing cyclophosphamide; and five took "other" chemotherapy regimens, including regimens containing Adriamycin.[84]  The authors also reported that 26 patients had permanent alopecia after taking Tamoxifen upon completion of their chemotherapy.[85]

28.     Dr. Tosti testified that the data from her eight-year study revealed more reports of PCIA with Taxol than Taxotere.[86]

29.     Plaintiff's "informed consent" expert, Dr. Bosserman, testified that there have been cases of PCIA reported with Adriamycin, cyclophosphamide, Taxol, the AC regimen, and the AC-Taxol regimen.[87]  Dr. Bosserman further testified that she believes "a rare side effect" like PCIA

---

[82]   *Id.* 1028:24–1029:2 (other drugs can cause grade 2 PCIA); 1030:23–1031:3 (reports of PCIA with anthracyclines); 1030:6–14 (reports of PCIA with Adriamycin); 1031:11–16 (reports of PCIA with cyclophosphamine); 1058:9–12 (5-FU); 1058:20–23 (FEC); 1066:12–19 (Tosti co-authored a paper that reported 25% of patients receiving post-chemotherapy endocrine therapy experienced endocrine-induced alopecia); *see also supra* nn.20 & 23; *see also* Ex. 17, Dec. 12, 2019 Tosti Dep. 64:5–9 (agreeing that "there's no test that can be used to determine which chemotherapy drug caused PCIA in any specific patient").

[83]   Ex. 4, Azael Freites-Martinez, MD et al., *Assessment of Quality of Life and Treatment Outcomes of Patients With Persistent Postchemotherapy Alopecia*, 155(6) JAMA DERMATOL. 724, 725–26 (2019) (Dr. Tosti among co-authors of the study).

[84]   *Id.*

[85]   *Id.*

[86]   Ex. 17, Dec. 12, 2019 Tosti Dep. 144:15–145:6.

[87]   Ex. 15, Dec. 3, 2018 Bosserman Dep. 142:19–143:18.

could "happen to anybody from any chemotherapy drug"[88] and "anything can happen on any regimen."[89]

30.    Plaintiff's general causation expert, Dr. Feigal, testified that there have been cases of permanent hair loss reported for Adriamycin; cyclophosphamide; Taxol; the AC regimen; the AC-Taxol regimen; and endocrine therapies, such as Tamoxifen.[90]

31.    Dr. Kessler, Ms. Kahn's regulatory and general causation expert, testified that he has seen reports of PCIA associated with Adriamycin; cyclophosphamide; Taxol; the 5-Fluorouracil-Adriamycin-cyclophosphamide regimen; and hormonal therapies, such as Tamoxifen.[91]

32.    Dr. Madigan, Ms. Kahn's biostatistics expert, testified that there have been reports of PCIA with Taxol, cyclophosphamide, and other chemotherapies.[92]

33.    Ms. Kahn's expert toxicologist, Dr. Plunkett, testified that cases of PCIA have been reported with Adriamycin, cyclophosphamide, Taxol, and the AC regimen.[93] Indeed, Dr. Plunkett testified that Adriamycin, cyclophosphamide, Taxol, and Taxotere all attack rapidly dividing cells

---

[88]   *Id.* 109:10–11.

[89]   **Ex. 40**, Dec. 10, 2018 Bosserman Dep. 417:9–17.

[90]   *See* Ex. 18, Jan. 11, 2019 Feigal Dep. 596:2–597:9; Ex. 26, Nov. 21, 2019 Feigal Dep. 241:13–17; *see also* Ex. 25, Trial Tr. 1219:4–9 (Dr. Feigal testifying during the *Earnest* trial that there have been cases of permanent hair loss reported for both cyclophosphamide and Adriamycin); 1235:22–1236:22 (testifying that of the 16 patients in the TAX 316 FAC arm who allegedly experienced permanent alopecia, either the A or C or both could have caused the patient's permanent alopecia).

[91]   Ex. 19, Dec. 20, 2018 Kessler Dep. 238:14–22, 243:22–24, 246:12–17, 247:8–249:9; Ex. 27, Nov. 26, 2019 Kessler Dep. 347:25–348:17; *see also* Ex. 25, Trial Tr. 478:10-18 (Dr. Kessler testifying during the *Earnest* trial that he has seen reports of PCIA associated with both cyclophosphamide and Adriamycin).

[92]   **Ex. 41**, Dec. 7, 2018 Madigan Dep. 208:18–21; **Ex. 42**, Nov. 14, 2019 Madigan Dep. 207:10–213:3.

[93]   Ex. 20, Dec. 10, 2018 Plunkett Dep. 115:1–117:16; **Ex. 43**, Nov. 19, 2019 Plunkett Dep. 254:5–259:21; 288:20–24, 292:4–25, 297:20–24; *see also* Ex. 25 Trial Tr. 861:7–9, 873:19–21 (Dr. Plunkett testifying during the *Earnest* trial that she identified permanent hair loss as a hazard associated with Adriamycin and cyclophosphamide).

like hair follicles.[94]  Dr. Plunkett further testified the 16 patients in the FAC arm of the TAX 316 clinical trial with "ongoing" alopecia had PCIA.[95]

Respectfully submitted,

 /s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE  URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
Facsimile:  504-310-2120
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY& BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile:  816-421-5547
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

---

[94]   Ex. 43, Nov. 19, 2019 Plunkett Dep. 142:3–143:3.

[95]   **Ex. 44**, Dec. 13, 2019 Plunkett Dep. 431:5–15.