# EXHIBIT 47

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  TAXOTERE (DOCETAXEL)      *
PRODUCTS LIABILITY LITIGATION     *      Docket No.: 16-MD-2740
                                  *      Section "H(5)"
                                  *      New Orleans, Louisiana
*Relates to:  Barbara Earnest*     *      September 19, 2019
*Case No.: 16-CV-17144*            *
* * * * * * * * * * * * * * * * *


DAY 4 – AFTERNOON SESSION
TRANSCRIPT OF JURY TRIAL BEFORE
THE HONORABLE JANE T. MILAZZO
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:


For the Plaintiffs:          Barrios Kingsdorf & Casteix, LLP
                             BY:  DAWN M. BARRIOS, ESQ.
                             701 Poydras Street
                             Suite 3650
                             New Orleans, Louisiana 70139



For the Plaintiffs:          Gainsburgh Benjamin David Meunier
                               & Warshauer, LLC
                             BY:  M. PALMER LAMBERT, ESQ.
                             1100 Poydras Street
                             Suite 2800
                             New Orleans, Louisiana 70163



For the Plaintiffs:          Pendley Baudin & Coffin, LLP
                             BY:  CHRISTOPHER L. COFFIN, ESQ.
                             1100 Poydras Street
                             Suite 2505
                             New Orleans, Louisiana 70163


OFFICIAL TRANSCRIPT

Page 9

1032

ANTONELLA TOSTI - CROSS

1:21PM 1  A.  Yes.
1:21PM 2  Q.  Okay.  So you agree that Taxol causes hair loss; true?
1:21PM 3  A.  Yes.
1:21PM 4  Q.  And you'd also agree with me there are reports of what you
1:21PM 5  call persistent chemotherapy-induced alopecia -- reports within
1:21PM 6  the literature of Taxol causing that condition; true?
1:21PM 7  A.  Yes.  But I don't call it.  It's a condition that it's
1:21PM 8  called by everyone.  It's recognized.
1:21PM 9  Q.  My question is just simply that there are reports in the
1:21PM 10  literature of Taxol causing PCIA or chemotherapy-induced
1:21PM 11  alopecia; correct?
1:21PM 12  A.  Absolutely, yes.
1:21PM 13  Q.  Okay.  Now, you understand that Mrs. Earnest first took
1:22PM 14  Adriamycin and Cytoxan as part of her regimen; correct?
1:22PM 15  A.  Yes.
1:22PM 16  Q.  Mrs. Earnest took what's known as a combination regimen;
1:22PM 17  correct?
1:22PM 18  A.  Yes.
1:22PM 19  Q.  Of multiple medications; true?
1:22PM 20  A.  True.
1:22PM 21  Q.  First Adriamycin, given at the same time as Cytoxan;
1:22PM 22  right?
1:22PM 23  A.  Yes.
1:22PM 24  Q.  And then, later, she took Taxotere; correct?
1:22PM 25  A.  Absolutely.

OFFICIAL TRANSCRIPT

Page 10

1033

ANTONELLA TOSTI - CROSS

1:22PM 1  Q.  But that was all part of her regimen; right?
1:22PM 2  A.  Yes.
1:22PM 3  Q.  Okay.  Now, we can agree that it was during the course of
1:22PM 4  Mrs. Earnest taking Adriamycin and Cytoxan which is when she
1:22PM 5  lost her hair; correct?
1:22PM 6  A.  Absolutely, yes.
1:22PM 7  Q.  And that was before she ever took her first dose of
1:22PM 8  Taxotere?
1:22PM 9  A.  Yes.  That's what happen with this regimen.  They lose
1:22PM 10  their hair with the Adriamycin and Cytoxan, and then the hair
1:22PM 11  does not regrow when they do the Taxotere.
1:23PM 12  Q.  But I just -- I need to make sure -- I don't know if I got
1:23PM 13  an answer to my question before the explanation.
1:23PM 14  THE COURT:  She said, "Absolutely, yes."
1:23PM 15  MS. SASTRE:  She did?  Okay.  Very good.
1:23PM 16  BY MS. SASTRE:
1:23PM 17  Q.  Now, after Mrs. Earnest completed her chemotherapy of
1:23PM 18  Adriamycin, Cytoxan, and Taxotere, you understand that she then
1:23PM 19  had radiation therapy; true?
1:23PM 20  A.  Yes.
1:23PM 21  Q.  And when her radiation therapy was completed and after her
1:23PM 22  chemotherapy was completed, she took a medication known as
1:23PM 23  Arimidex?
1:23PM 24  A.  Yes.  That was three months after her chemotherapy was
1:23PM 25  completed.

OFFICIAL TRANSCRIPT

Page 11

1034

ANTONELLA TOSTI - CROSS

1:23PM 1  Q.  Okay.  And Arimidex is a form of hormone therapy given to
1:23PM 2  breast cancer patients?
1:23PM 3  A.  Yes.
1:23PM 4  Q.  Sometimes called endocrine therapy; right, Doctor?
1:23PM 5  A.  Yes.
1:23PM 6  Q.  All right.  And you'd agree with me that there are reports
1:23PM 7  in the literature, which you have seen, where it's stated that
1:23PM 8  Arimidex can cause persistent hair loss; true?
1:23PM 9  A.  Yes, but a different time of persistent hair loss.
1:24PM 10  Q.  And we'll talk about that in a moment because what you
1:24PM 11  have called -- here today in court, you've called the kind of
1:24PM 12  hair loss that you believe is associated with chemotherapy --
1:24PM 13  you've called it PCIA, persistent --
1:24PM 14  MR. SCHANKER:  I'm sorry.  I didn't mean to interrupt
1:24PM 15  the question.
1:24PM 16  BY MS. SASTRE:
1:24PM 17  Q.  -- persistent chemotherapy-induced alopecia; true?
1:24PM 18  A.  Yes.
1:24PM 19  Q.  And then there's a kind of hair loss known as
1:24PM 20  endocrine-induced permanent hair loss; correct?
1:24PM 21  A.  It's not "permanent."  It's endocrine-induced hair loss,
1:24PM 22  which is different.
1:24PM 23  Q.  Okay.  And you're familiar with that; correct?
1:24PM 24  A.  Absolutely, yes.
1:24PM 25  Q.  All right.  Now, you understand -- I believe you testified

OFFICIAL TRANSCRIPT

Page 12

1035

ANTONELLA TOSTI - CROSS

1:24PM 1  that Mrs. Earnest has taken Arimidex, or this endocrine
1:24PM 2  therapy, for about eight years; true?
1:25PM 3  A.  Yes.
1:25PM 4  Q.  And it's your understanding she started taking it shortly
1:25PM 5  after her chemotherapy ended; and, as far as you know, she
1:25PM 6  continues to take it today?
1:25PM 7  A.  Yes.
1:25PM 8  Q.  Okay.  Now, we've talked about Adriamycin, Cytoxan.
1:25PM 9  Taxotere, you spoke about this morning with plaintiff's
1:25PM 10  counsel.  And we've also spoken with Arimidex.
1:25PM 11  And as you stated, with each of these drugs, there
1:25PM 12  are reports of persistent hair loss; correct?
1:25PM 13  A.  No.  There are with Adriamycin.  There are with Cytoxan.
1:25PM 14  There are with Taxotere.  But there are not persistent hair
1:25PM 15  loss with endocrine therapy.
1:25PM 16  Q.  There's not reports of persistent hair loss with endocrine
1:25PM 17  therapy?
1:25PM 18  A.  Not persistent.  There are report of hair loss.
1:25PM 19  Q.  Okay.
1:25PM 20  A.  It's not called persistent.
1:26PM 21  MS. SASTRE:  If I could just have a moment.
1:26PM 22  BY MS. SASTRE:
1:26PM 23  Q.  Dr. Tosti, you have your depositions in front of
1:26PM 24  you?
1:26PM 25  A.  Yes.

OFFICIAL TRANSCRIPT

```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2
    ******************************************************************
3
    IN RE:  TAXOTERE (DOCETAXEL)         Docket No. 16-MD-2740
4   PRODUCTS LIABILITY LITIGATION        Section H
                                         New Orleans, LA
5   Relates to:  Barbara Earnest         Thursday, September 26, 2019
                 16-CV-17144
6
    ******************************************************************
7
                    TRANSCRIPT OF TRIAL PROCEEDINGS
8          HEARD BEFORE THE HONORABLE JANE TRICHE MILAZZO
                    UNITED STATES DISTRICT JUDGE
9                      DAY 9, MORNING SESSION

10
    APPEARANCES:
11
    FOR THE PLAINTIFF:              BACHUS & SCHANKER, LLC
12                                  BY:  DARIN L. SCHANKER, ESQ.
                                         J. KYLE BACHUS, ESQ.
13                                  1899 Wynkoop St., Suite 700
                                    Denver, CO 80202
14
                                    FLEMING NOLEN & JEZ
15                                  BY:  RAND P. NOLEN, ESQ.
                                    2800 Post Oak Blvd., Suite 4000
16                                  Houston, TX 77056

17                                  GIBBS LAW GROUP, LLP
                                    BY:  KAREN B. MENZIES, ESQ.
18                                  6701 Center Drive West, 14th Floor
                                    Los Angeles, CA 90045
19
                                    DAVID F. MICELI, LLC
20                                  BY:  DAVID F. MICELI, ESQ.
                                    P.O. Box 2519
21                                  Carrollton, GA 30112-0046

22                                  PENDLEY BAUDIN & COFFIN
                                    BY:  CHRISTOPHER L. COFFIN, ESQ.
23                                  2505 Energy Centre
                                    1100 Poydras St.
24                                  New Orleans, LA 70163

25
```

Page 2237

1 manufacturers are responsible to draft the initial label for their
2 product, and they have a continuing duty to ensure that the label
3 remains adequate at all times.
4         It is a physician's duty to remain abreast of the
5 medication's characteristics and to take into account the
6 information contained in the prescription medication's label.  The
7 manufacturer may reasonably assume that the prescriber or treater
8 will apply the same knowledge or professional expertise, and good
9 judgment that a reasonable physician would apply in using the
10 product.  Providing an adequate warning to the prescribing or
11 treating doctor relieves the manufacturer of its duty to warn the
12 patient regardless of how or if the prescribe or treater warns the
13 patient.
14         In order for plaintiff to prevail on her claims, she must
15 establish that the inadequate warning was the "proximate cause" of
16 Ms. Earnest's alleged injuries.
17         Proximate cause means the efficient or direct cause.  The
18 law defines proximate cause as something that produces a natural
19 chain of events which, in the end, brings about the injury.  In
20 other words, proximate cause is the cause without which the injury
21 would not have occurred.  Proximate cause requires proof of both
22 cause cause-in-fact and legal cause.
23         Cause-in-fact is proved by establishing that a
24 plaintiff's injury would not have occurred "but for" the
25 defendant's actions.  In order to prove cause-in-fact in this case,

Page 2238

1 the plaintiff must show to a reasonable degree of medical
2 probability that Taxotere can cause permanent hair loss, that
3 Taxotere caused permanent hair loss for Ms. Earnest, and that the
4 failure to warn Dr. Carinder was the cause of Ms. Earnest's injury.
5         Legal cause is proved by establishing foreseeability.
6 The test of foreseeability is whether some injury to another is a
7 natural and probable consequence of the complained-of conduct.  The
8 law requires only reasonable foresight.  It is not necessary for
9 the plaintiff to demonstrate that the defendant should have
10 foreseen the particular event which occurred, but merely that the
11 defendant should have foreseen that its actions would probably
12 cause injury to someone.  The plaintiff proves legal cause by
13 establishing that the injury in question occurred as a natural and
14 probable consequence of the defendant's actions or inactions.
15         Proximate cause does not mean the sole cause.  The
16 defendants' conduct can be a proximate cause if it was at least one
17 of the direct, concurring causes of the alleged injury.  However,
18 plaintiff must show that defendants' conduct was a substantial
19 contributing factor in bringing about the result.  In other words,
20 it is not necessary for plaintiff to negate all other contributing
21 factors or causes of Ms. Earnest's injuries, provided they show
22 that defendants' failure to provide an adequate warning in the
23 Taxotere label substantially contributed to her injuries.  Where
24 two or more possible causes for an injury are identified, plaintiff
25 must establish with reasonable probability that Mrs. Earnest's

Page 2239

1 injury resulted from a cause for which defendants would be liable.
2 Moreover, plaintiff must proffer a competent medical expert to
3 testify to a reasonable degree of medical probability that Taxotere
4 was a proximate cause of Ms. Earnest's injuries.
5         To recover for the failure to warn claim, plaintiff must
6 prove by a preponderance of the evidence that an inadequate warning
7 itself - in addition to the medication - was the proximate cause of
8 Ms. Earnest's injury.  In other words, plaintiff must prove by a
9 preponderance of the evidence that, if an adequate warning had
10 accompanied Taxotere, then Dr. Carinder would have altered his
11 prescribing or treating decision or behavior and Ms. Earnest would
12 not have suffered her injury.
13         If you decide that the plaintiff has established the
14 other elements of her case by a preponderance of the evidence, you
15 must decide the question of whether there has been damage to
16 plaintiff and if so, the amount of that damage.  Louisiana law
17 suggests simple reparation is just and adequate compensation for
18 injuries.  Your award should be designed to fully and fairly
19 compensate the plaintiff for her injury, if you find one has
20 occurred, and should not go beyond such reparation.
21         The law recognizes the difficulty of translating personal
22 injuries into dollars and cents figures, but that is what must be
23 done if you decide plaintiff has proven her claims by a
24 preponderance of the evidence.  You must arrive at a figure that
25 will fairly and adequately compensate the plaintiff for damages she

Page 2240

1 has suffered.  In estimating such damages, you may take into
2 account the following elements:  Physical injury, pain and
3 suffering, loss of enjoyment of life, and physical (VERBATIM)
4 disability, if any.
5         Like other parts of the plaintiff's case, these damages
6 must be established by a preponderance of the evidence.  This
7 means, on the one hand, you are not entitled to award speculative
8 damages for injuries which you think the plaintiff might have
9 experienced or might experience in the future.  On the other hand,
10 it means that you may also make an effort to reasonably approximate
11 the damages which the plaintiff has proved are more probable than
12 not, even though they cannot be computed with mathematical
13 certainty.
14         You may award compensatory damages only for the injuries
15 that plaintiff prove were caused by defendants' wrongful conduct.
16 The damages you award must be fair compensation for plaintiff's
17 damages, no more and no less.  Compensatory damages are not allowed
18 as punishment and cannot be imposed or increased to penalize the
19 defendants.
20         If you decide to award compensatory damages, you should
21 be guided by dispassionate common sense.  That is to say, you
22 should not be affected by sympathy, compassion, prejudice, or bias.
23 Computing damages may be difficult, but you must not let that
24 difficulty lead you to engage in arbitrary guesswork.  On the other
25 hand, the law does not require plaintiffs to prove the amount of