UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 16-2740<br><br>SECTION: "H" (5) |
| **This document relates to:** Cynthia Brown, 18-6428<br>Sandra Burks, 18-686<br>Angela Durden, 18-1544<br>Juanita Greer, 18-11728<br>Hattie Grines, 16-15319<br>Mildred Kumar, 17-15311[1]<br>Minnie Moore, 18-12295<br>Shirlon Pigott, No. 18-8673<br>Melissa Roach, 17-7918<br>Cindy Smith, 18-7702<br>Emma Willie, 18-3857 | ) ) ) ) ) ) ) ) ) ) ) ) | |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Leave to File Amended Short Form Complaints of Bellwether Pool Plaintiffs (Doc. 10668). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs in this multidistrict litigation ("MDL") are suing several pharmaceutical companies that manufactured and/or distributed a chemotherapy drug, Taxotere or docetaxel,[2] that Plaintiffs were administered for the treatment of breast cancer or other forms of cancer. Plaintiffs allege

---

[1] Plaintiff Mildred Kumar filed a separate motion, which the Court inadvertently granted on August 11, 2020. *See* Doc. 10906. The Court now realizes that Kumar's motion was not related to Product Identification, like the other motions that were granted on August 11, 2020. Accordingly, the Court will now address Kumar's motion in this Order.

[2] Docetaxel is the generic version of Taxotere.

1

that the drug caused permanent alopecia—in other words, permanent hair loss. Plaintiffs bring claims of failure to warn, negligent misrepresentation, fraudulent misrepresentation, and more. The first bellwether trial was held in September 2019, and the second is set for February 1, 2021.

Before the first bellwether trial, the Court ruled on Defendants' summary judgment motions asserting statute-of-limitations defenses.[3] In its rulings, the Court had to decide when Plaintiffs injuries manifested and when the statute of limitations began to run.[4] The Court looked to Plaintiffs' Master Complaint, which states as follows:

> Unlike the temporary and reversible alopecia that ordinarily results from chemotherapy, Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate cause Permanent Chemotherapy Induced Alopecia, which is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy.[5]

Based on this, the Court found that generally the statute of limitations begins to run six months after a patient completes chemotherapy.[6]

On October 8, 2019, Plaintiffs filed a Motion to Amend the Master Complaint.[7] Plaintiffs wished to no longer define their injury as manifesting six months after chemotherapy.[8] Instead, the proposed amendments alleged that "[t]here is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient, including among Plaintiffs."[9] On December 11, 2019, the

---

[3] Doc. 7571.
[4] *See id.* at 5 n.12.
[5] Doc. 4407 at ¶ 181.
[6] *See* Doc. 7571 at 5 n.12.
[7] Doc. 8334.
[8] Doc. 8702 at 2.
[9] *Id.*

2

Court denied the motion, noting that the parties and the Court had been operating under Plaintiffs' original definition of their alleged injury for years.[10]

Around the time of this denial, the Court saw an influx of motions to amend short-form complaints.[11] Many Plaintiffs sought to amend their responses to Question 12 of their short-form complaints, which prompts Plaintiffs to detail the "[n]ature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury)."[12] As an example, Plaintiff Alice Hughes had originally answered Question 12 by saying, "Hair Loss and Thinning – August 2012."[13] She sought to amend her answer to read simply, "Permanent, irreversible and disfiguring alopecia," removing any reference to the date of onset for her injury.[14] The Court denied her motion, along with others, noting that "it is apparent that Plaintiffs seek to revise their allegations to buttress their claims against statute-of-limitations defenses."[15] The Court further wrote that "[t]he proposed amendments would prompt Defendants to conduct additional discovery and prepare a different statute-of-limitations defense."[16] Because of this potential for prejudice, the Court did not permit Plaintiffs to amend their pleadings.[17]

On May 11, 2020, to deal with the continuing flurry of motions, the Court issued Pretrial Order 105 ("PTO 105") to establish what kind of amendments are permissible and what kind are not. Accordingly, PTO 105 provides that "Plaintiffs may amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and

---

[10] *Id.* at 3–4.
[11] *See* Doc. 8703; Doc. 10338.
[12] *See* Doc. 8703 at 5.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See id.*

3

treatment and/or that Plaintiff's communications with medical professionals."[18] In the instant Motion, the ten Plaintiffs listed in the above caption seek leave to amend their complaints, averring that their amendments are consistent with PTO 105. Defendants oppose the Motion.

## LEGAL STANDARD

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires."[19] However, leave to amend "is by no means automatic."[20] Instead, "decisions concerning motions to amend are 'entrusted to the sound discretion of the district court.'"[21] While leave should be freely given, "that generous standard is tempered by the necessary power of a district court to manage a case."[22] In deciding whether to grant leave, courts should consider five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[23]

## LAW AND ANALYSIS

Defendants largely focus on Plaintiffs' amendments to Question 12 of their short-form complaints. As previously noted, Question 12 prompts Plaintiffs to detail the "[n]ature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged

---

[18] Doc. 10338.
[19] FED. R. CIV. P. 15(a)(2).
[20] Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir.1993).
[21] Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004) (quoting Quintanilla v. Tex. Television, Inc., 139 F.3d 494, 499 (5th Cir.1998)).
[22] Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir.2003).
[23] *Smith*, 139 F.3d at 595 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

4

injury)."[24] The Court will address each Plaintiff's proposed amendments in turn, beginning with any proposed amendments to Question 12.

## I. Plaintiff Cynthia Brown

Originally, Plaintiff Brown responded to Question 12 as follows: "Permanent/persistent hair loss and diffuse thinning of hair."[25] She seeks leave to amend to now state: "Permanent, irreversible, and disfiguring alopecia beginning sometime after treatment with Taxotere (Docetaxel) and continuing to present."[26] The Court will not permit this amendment. In its Order and Reasons dated May 27, 2020, the Court rejected Plaintiff Elizabeth Kahn's similar attempt to inject the word "sometime" into her pleadings.[27] The Court wrote that it was "an obvious attempt by Plaintiff to distance herself from the definition provided in the Master Complaint."[28]

Defendants take issue with several other amendments proposed by Plaintiff Brown, including amendments that specify the dates of her chemotherapy treatment.[29] In addition, Plaintiff Brown wishes to allege that she spoke to her prescribing doctor, John Whitecar, about her hair thinning in late 2011 or early 2012, and he told her that "it would be okay."[30] In another amendment, Plaintiff Brown explains that a doctor performed a thyroid test to determine if her thyroid might be causing the failure of her hair re-growth.[31] These are precisely the kind of particularized facts that the Court

---

[24] *See, e.g.*, Doc. 10668-3 at 5.
[25] Doc. 10861-1 at 2.
[26] *Id.*
[27] Doc. 10465.
[28] *Id.* at 4. The Master Complaint alleges that Plaintiffs' hair loss became permanent six months after the completion of chemotherapy. This Court has since held that the statute of limitations begins to run at this six-month mark unless there is reason to toll it. This ruling led to an influx of motions to amend and the issuance of PTO 105 governing the scope of permitted amendments.
[29] Doc. 10861-2 at 2.
[30] *Id.*
[31] *Id.*

contemplated when it issued PTO 105. Insofar as Defendants assert that these amendments conflict with Plaintiff's prior allegations, the Court disagrees. Accordingly, the Court will permit these amendments.

The only amendment the Court finds impermissible, in addition to the response to Question 12, is Plaintiff's allegation stating, "Plaintiff believed that her hair loss would be temporary and was uncertain as to when her hair would begin to grow back after her chemotherapy treatment."[32] This includes no particularized facts about Plaintiff's medical care, and at this late stage of the litigation, the Court will not permit this amendment.

Accordingly, Plaintiff Brown's Motion is granted in part and denied in part.

## II. Plaintiff Sandra Burks

Originally, Plaintiff Burks responded to Question 12 as follows:

> Severe and personal injuries that are permanent and lasting in nature including and [sic] economic and non-economic damages harms and losses, including, but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity, permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; and past, present and future loss and impairment of the quality and enjoyment of life.[33]

She seeks leave to amend to now state:

> Before Plaintiff was treated with Taxotere, her physician gave her a booklet that explained her hair would re-grow after chemotherapy but that it may

---

[32] *Id.*
[33] Civil Action No. 18-cv-686, Doc. 1.

6

> come back a different color or texture. She was continually re-assured her hair would return. Following chemotherapy, Plaintiff's hair did not fully return. Plaintiff continued believing her hair would grow back, as her internet searches did not reveal why her hair was not returning.[34]

This is not a response to Question 12, which asks Plaintiff to describe her injury. The Court will not permit this amendment. Accordingly, Plaintiff Burks' Motion is denied.

### III. Plaintiff Angela Durden

Like Plaintiff Burks, Plaintiff Durden originally responded to Question 12 as follows:

> Severe and personal injuries that are permanent and lasting in nature including and economic and non-economic damages harms and losses, including, but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity, permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; and past, present and future loss and impairment of the quality and enjoyment of life.[35]

She seeks leave to amend to now state:

> Before Plaintiff was treated with Taxotere, her physician gave her a booklet that explained her hair would re-grow after chemotherapy was over but that it may come back a different color or texture. She was continually re-assured her hair would return. Following chemotherapy, Plaintiff's hair did not fully

---

[34] Doc. 10668-4 at 5.
[35] Civil Action No. 18-cv-1544, Doc. 1.

7

> return. Plaintiff continued believing her hair would grow back. She still has bald spots.[36]

Given that this is nearly identical to Plaintiff Burks' response, the Court suspects that this is not particularized and specific as contemplated by PTO 105. Regardless, this is not a response to Question 12, which asks Plaintiff to describe her injury. The Court will not permit this amendment. Accordingly, Plaintiff Durden's Motion is denied.

## IV. Plaintiff Juanita Greer

Originally, Plaintiff Greer responded to Question 12 as follows: "Permanent hair loss approximately 6 months after discontinued use of docetaxel to present."[37] She seeks leave to amend to now state: "Permanent hair loss after discontinued use of docetaxel to present."[38] This amendment is impermissible for reasons this Court has made abundantly clear.[39] PTO 105 has not changed this Court's prior orders regarding such amendments.

Defendants take issue with several other amendments proposed by Plaintiff Greer. Indeed, the Court finds that the following allegations are not particularized and specific as required by PTO 105:

> Prior to administration of TAXOTERE® /docetaxel, Plaintiff was told by her healthcare providers that if any hair loss occurred it would be temporary and would come back.
>
> Prior to Plaintiff consenting to the administration of TAXOTERE® /docetaxel, Plaintiff was NOT told that TAXOTERE® /docetaxel could cause permanent hair loss. Plaintiff believed and was told by her healthcare

---

[36] Doc. 10861-1 at 2–3.
[37] Doc. 10861-1 at 3.
[38] *Id.*
[39] *See* Doc. 10465 ("Individual Plaintiffs will be held to the definition provided in the Master Complaint.").

8

> providers that if hair loss occurred, it was temporary and would come back.[40]

In addition, the Court finds the following amendments impermissible, as they are nothing more than attempts to create a favorable narrative for statute-of-limitations purposes:

> Plaintiff first suspected that her hair may not regrow on or around May 2016 when her daughter first saw advertisements concerning TAXOTERE® /docetaxel and permanent hair loss.
>
> Plaintiff first learned of any association of her hair's failure to grow back and TAXOTERE® /docetaxel on or around May of 2016 when her daughter saw advertisements concerning TAXOTERE® / docetaxel and permanent hair loss.
>
> Prior to on or around May of 2016, Plaintiff always expected, waited and hoped her hair would re-grow.[41]

Plaintiff Greer's other amendments, however, are permissible. She may allege that she recalls complaining to an oncologist about her hair loss.[42] She may similarly allege that she discussed her hair loss with family, friends, and her beautician and that she took suggestions from her beautician.[43]

Accordingly, Plaintiff Greer's Motion is granted in part and denied in part.

### V.   Plaintiff Hattie Grines

Defendants note that Plaintiff Grines has not revised her response to Paragraph 12. Defendants do object, however, to other amendments proposed by Plaintiff Grines. Indeed, the Court finds that several of her proposed

---

[40] Doc. 10861-2 at 4.
[41] *Id.*
[42] *Id.*
[43] *Id.*

9

amendments are not specific, and others are merely attempts to create a favorable narrative for statute-of-limitations purposes. For these reasons, the following amendments are impermissible:

> At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss. In fact, Plaintiff was instructed that her hair would grow back following chemotherapy.
>
> Plaintiff believed that she would experience full hair re-growth following completion of her chemotherapy treatments.
>
> Plaintiff did not suspect she may be suffering from permanent hair loss caused by Taxotere until she observed legal advertisements, in 2016.
>
> This was the first time Plaintiff suspected that her lack of full hair regrowth might actually be permanent hair loss caused by her use of Taxotere.[44]

Plaintiff's other amendments are permissible. She may allege the dates she received chemotherapy, she may allege facts about the hair re-growth she observed after chemotherapy, she may allege facts about her discussions with her prescribing oncologist, and she may allege facts about her use of Biotin.[45]

Accordingly, Plaintiff Grines' Motion is granted in part and denied in part.

## VI. Plaintiff Mildred Kumar

Originally, Plaintiff Kumar responded to Question 12 as follows: "Disfiguring permanent Alopecia beginning sometime after treatment with Taxotere (Docetaxel) and continuing to the present."[46] She seeks leave to amend to now state: "Disfiguring permanent Alopecia still present."[47] The

---

[44] *Id.* at 5.
[45] *Id.*
[46] Doc. 10861-1 at 3.
[47] *Id.*

Court will not permit this amendment. The Court sees no reason for it other than to create a favorable narrative for statute-of-limitations purposes.

Defendants take issue with several other amendments proposed by Plaintiff Kumar. Indeed, the Court finds that the following amendments are not factual allegations regarding particularized facts as required by PTO 105, and for this reason, they are impermissible:

> Plaintiff reasonably relied on the statements provided by her physician.[48]
>
> Plaintiff was never provided any information by her physician or the manufacturer of her chemotherapy drug upon which to reasonably know that negligence had occurred. Specifically, no statements made by her doctors or their staff, or contained within Plaintiff's medical records, or notices or warnings provided by her chemotherapy drug manufacturer, or otherwise available to her upon reasonable investigation would have suggested anything other than what she was informed by her doctor.
>
> Not until Plaintiff saw legal advertisements on television, did she even begin to realize her hair loss and thinning of the hair were likely permanent and the negligence which caused injury. Not until such time, did she realize the "who, when, how, and by what" had she been permanently injured.
>
> As a layperson, it was unrealistic for Plaintiff to perceive any injury at the time of the wrongful acts complained of herein, or six months thereafter or later, as she cannot reasonably be held to have knowledge of negligent acts and corresponding injuries which were known only to the manufacturer of her chemotherapy drug, and kept secret, and a few informed attorneys.

---

[48] The remainder of this allegation, regarding Plaintiff's hair growth, is permissible.

> As a result of the actions of the Defendants as set forth herein, Plaintiff has suffered compensable injuries based on the following Counts, inter alia.[49]

Plaintiff's other amendments are permissible. She may allege the dates she received chemotherapy.

Accordingly, Plaintiff Kumar's Motion is granted in part and denied in part.

## VII. Plaintiff Minnie Moore

Originally, Plaintiff Moore responded to Question 12 as follows:

> Severe and personal injuries that are permanent and lasting in nature including and [sic] economic and non-economic damages harms and losses, including, but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity, permanent disfigurement, including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; and past, present and future loss and impairment of the quality and enjoyment of life.[50]

She seeks leave to amend to now state:

> Before Plaintiff was treated with Taxotere, her physician explained that her hair would come back after she finished chemotherapy but that it may be a different color or texture. Following chemotherapy, Plaintiff's hair started slowly growing in patches, leaving Plaintiff with bald spots. Approximately one year after chemotherapy ended, as Plaintiff still had bald spots, she asked her oncologist, Dr. Wilkinson, when the bald spots would fill in. After speaking with her oncologist, Plaintiff continued believing her hair

---

[49] Doc. 10861-2 at 6.
[50] Case No. 18-12295, Doc. 1.

> would grow back, but she currently still has bald spots. Plaintiff suffered severe and personal injuries that are permanent and lasting in nature.[51]

This is not a response to Question 12, which asks Plaintiff to describe her injury. The Court will not permit this amendment. Accordingly, Plaintiff Moore's Motion is denied.

## VIII. Plaintiff Shirlon Pigott

Originally, Plaintiff Pigott responded to Question 12 as follows:

> Severe permanent alopecia in the scalp, eyebrows, eyelashes and overall body; severe and personal injuries that are permanent and lasting in nature, including economic and non-economic damages, harms and losses, including but not limited to: past and future medical expenses, psychological counseling, therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity, mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; past, present and future loss and impairment of the quality and enjoyment of life.[52]

She seeks leave to amend to now state:

> Severe permanent alopecia in the scalp, eyebrows, eyelashes and overall body; that are permanent and lasting in nature, including non-economic damages, harms and losses, including but not limited to: past and future medical expenses, mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present and future physical and mental pain, suffering and discomfort; past, present and future loss and impairment of the quality and enjoyment of life.[53]

---

[51] Doc. 10861-1 at 3.
[52] Case No. 18-cv-8673, Doc. 1.
[53] Doc. 10861-1 at 4.

13

It appears that Plaintiff Pigott has omitted her mention of certain damages, including psychological counseling, therapy expenses, and more. While this is not an amendment contemplated by PTO 105, the Court suspects no improper motive here or any potential prejudice to Defendants. Accordingly, the Court will permit this amendment.

Defendants take issue with several other amendments proposed by Plaintiff Pigott. Indeed, the Court finds that the following allegations are not particularized and specific as required by PTO 105:

> At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss.
>
> Although Plaintiff understood that her hair loss would be temporary, Plaintiff was unsure of when her hair would start to re-grow following the end of her chemotherapy.[54]

Plaintiff's other amendments are permissible. She may allege the dates she received chemotherapy, and she may allege facts about her discussions with her prescribing oncologist.

Accordingly, Plaintiff Pigott's Motion is granted in part and denied in part.

### IX. Plaintiff Melissa Roach

Defendants note that Plaintiff Roach has not revised her response to Paragraph 12. Defendants do object, however, to other amendments proposed by Plaintiff Roach. Indeed, the Court finds that several of her proposed amendments are not specific, and others are merely attempts to create a favorable narrative for statute-of-limitations purposes. For these reasons, the following amendments are impermissible:

---

[54] Doc. 10861-2 at 7.

> At no time did Plaintiff receive a warning that her use of Taxotere may result in permanent hair loss.
>
> Plaintiff believed that she would experience full hair re-growth following completion of her chemotherapy treatments.
>
> Plaintiff did not suspect that she may be suffering from permanent hair loss caused by Taxotere until she observed a legal advertisement on Facebook.
>
> This was the first time Plaintiff suspected that her lack of full hair regrowth might actually be permanent hair loss caused by her use of Taxotere.[55]

Plaintiff's other amendments are permissible. She may allege the dates she received chemotherapy, she may allege facts about her discussions with her prescribing oncologist, she may allege facts about the hair re-growth she observed after chemotherapy, and she may allege that she investigated Rogaine.

Accordingly, Plaintiff Roach's Motion is granted in part and denied in part.

## X.   Plaintiff Cindy Smith

Originally, Plaintiff Smith responded to Question 12 as follows: "Permanent/persistent hair loss and diffuse thinning of hair."[56] She seeks leave to amend to now state: "Permanent, irreversible, and disfiguring alopecia beginning sometime after treatment with Taxotere (docetaxel) and continuing to present."[57] For the reasons provided herein with respect to Plaintiff Brown, the Court finds that this amendment is impermissible.

---

[55] *Id.* at 8.
[56] Doc. 10861-1 at 5.
[57] *Id.*

15

Defendants take issue with several other amendments proposed by Plaintiff Smith. Indeed, the Court finds that several of her proposed amendments are not specific, and others are merely attempts to create a favorable narrative for statute-of-limitations purposes. For these reasons, the following amendments are impermissible:

> Plaintiff did not receive any warnings that her use of Taxotere/Docetaxel may or would result in permanent hair loss.
>
> Plaintiff believed that her hair loss would be temporary and was uncertain when her hair would begin to grow back after her chemotherapy treatment.
>
> Plaintiff continued to believe and hope that her hair would re-grow to its pre-chemotherapy-treatment thickness and body.[58]
>
> In approximately January 2016 Plaintiff saw attorney advertisements online on Facebook and on television regarding the association between Taxotere/Docetaxel and her hair's thinning and failure to re-grow as prior to her chemotherapy treatment.[59]

Plaintiff's other amendments are permissible. She may allege the dates she received chemotherapy, she may allege facts about the research she did and the products she took to prompt her hair regrowth, and she may allege facts about her discussions with her prescribing doctor and her dermatologist.

Accordingly, Plaintiff Smith's Motion is granted in part and denied in part.

---

[58] The remainder of this allegation, regarding Plaintiff's hair growth, is permissible.

[59] Doc. 10861-2 at 9–10. Regarding the final allegation listed here, Plaintiff would be permitted to simply state when she saw the advertisements. What makes this allegation impermissible is that Plaintiff suggests she did not know her hair loss was permanent until she saw the advertisements. This is a blatant attempt to defeat an anticipated statute-of-limitations argument from Defendants, and the Court will not permit it.

## XI. Plaintiff Emma Willie

Originally, Plaintiff Willie responded to Question 12 as follows: "Permanent/persistent hair loss and diffuse thinning of hair."[60] She seeks leave to amend to now state: "Permanent, irreversible, scarring, and disfiguring alopecia beginning sometime after treatment with Taxotere (docetaxel) and continuing to present."[61] For the reasons provided herein with respect to Plaintiff Brown, the Court finds that this amendment is impermissible.

Defendants take issue with several other amendments proposed by Plaintiff Willie. Indeed, the Court finds that several of her proposed amendments are not specific, and others are merely attempts to create a favorable narrative for statute-of-limitations purposes. For these reasons, the following amendments are impermissible:

> Plaintiff did not receive any warnings that her use of Taxotere/Docetaxel may or would result in permanent hair loss.
>
> Plaintiff believed that her hair loss would be temporary.[62]

Plaintiff's other amendments are permissible. She may allege the dates she received chemotherapy, she may allege facts about her discussions with her prescribing doctor and her dermatologist, and she may allege straightforward facts regarding when she saw advertisements for Taxotere lawsuits.

Accordingly, Plaintiff Willie's Motion is granted in part and denied in part.

---

[60] Doc. 10861-1 at 5.
[61] *Id.*
[62] Doc. 10861-2 at 11.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File Amended Short Form Complaints of Bellwether Pool Plaintiffs (Doc. 10668) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs may amend their short-form complaints consistent with this opinion.

New Orleans, Louisiana this 21st day of September, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**