UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                          MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                                    SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Elizabeth Kahn, Case No. 2:16-cv-17039


REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO
EXCLUDE CERTAIN OPINIONS OF ELLEN T. CHANG, Sc.D

Plaintiff, Elizabeth Kahn, offers the following in reply to Sanofi's Opposition to Plaintiff's

Motion to Exclude Certain Opinions of Ellen T. Chang, Sc.D.:

1.     **Dr. Chang cannot offer general causation testimony concerning non-Taxotere/docetaxel drugs.**

Dr. Chang begins her report as follows:

I have been asked by counsel for Sanofi to evaluate the available scientific evidence on the occurrence of irreversible or permanent alopecia among breast cancer patients using chemotherapeutic regimens containing docetaxel (Taxotere®), and to use the science of epidemiology to address whether a causal relationship has been established between docetaxel and irreversible or permanent alopecia.[1]

And Dr. Chang continues on the following page thus clearing up any confusion

regarding the parameters of her opinions:

I did not directly assess whether a causal relationship has been established between [the] use of any other specific chemotherapeutic agent and irreversible or permanent alopecia. I also did not directly investigate the incidence of irreversible or permanent alopecia among breast cancer patients using chemotherapeutic agents other than docetaxel.[2]

---

[1] Ex. 1 to Plaintiff's Memorandum in Support of Plaintiff's Motion to Exclude Certain Opinions of Ellen T. Chang, Sc.D (hereinafter "Pl's Memo"), Chang Report, 4/17/2020, p. 3. For purposes of this briefing, Plaintiff refers to "irreversible or permanent alopecia" as "PCIA" - Permanent Chemotherapy Induced Alopecia. Dr. Chang's April 17, 2020 Report is in excess of 100 pages; however, Dr. Chang sets forth a concise list of her conclusions on pages 110-111. She also submitted an expert report dated December 9, 2019 (*See* Ex. 2 to Pl's Memo), and has been deposed twice in this litigation. Ex. 3 to Pl's Memo, Chang Depo., 1/7/2020 ("Chang I"); Ex. A, Chang Depo., 5/19/2020 ("Chang II").

[2] Ex. 1 to Pl's Memo, Chang Report, 4/17/2020, p. 4; Dr. Chang has not directly assessed a causal relationship between Tamoxifen and PCIA either. Ex. A, Chang II, 5/19/2020, 122:20-123:13.

These are Dr. Chang's words – not Plaintiff's counsel's words.  They are not the product of leading cross-examination in a deposition.  These are the words that Ellen Chang, Sc. D., chose to use when describing the work she was asked to perform by Sanofi, and clearly explaining what she did not do.  Importantly, when Dr. Chang summarizes her opinions in the conclusion of her report at pp. 110 – 111, she does not mention any direct or systematic analysis to assess or investigate any non-Taxotere/docetaxel drug and a causal association to PCIA.[3]  This is abundantly clear.  And this is clear by her own words.

Despite Dr. Chang's inescapable admission  that she did "not directly assess whether a causal relationship has been established between use of any other [non-Taxotere/docetaxel] specific chemotherapeutic agent and irreversible or permanent alopecia," Sanofi now argues that Dr. Chang should be allowed to offer the opinion that PCIA is causally associated with a multitude of chemotherapies.[4]  This despite the fact that Dr. Chang admits she did not apply her own chosen methodology for assessing a causal relationship – "a full and complete systematic literature review" – between any other chemotherapeutic agent and PCIA.

Louisiana courts require expert testimony to establish both general and specific causation in a pharmaceutical products liability case.  *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008), *aff'd*, 326 F.App'x 721 (5th Cir. 2009) (citing *Knight v. Kirby*, 482 F.3d 347, 351 (5th Cir. 2007)); *See Burst v. Shell Oil Co.*, No. 14-109, 2015 WL 3755953, at *3 (E.D. La. June 16, 2015). By her own admission, Dr. Chang did not undertake any causation analysis to assess whether or not any chemotherapy drug, or hormone therapy drug (i.e., tamoxifen), can cause

---

[3] Ex. 1 to Pl's Memo, Chang Report, 4/17/2020, pp. 110-111.
[4] *See* Rec. Doc. 11100, Defendants' Opposition to Plaintiff's Motion to Exclude Expert Testimony of Dr. Ellen Chang (hereinafter "Defs' Opp"), p. 6.

PCIA.[5]  Dr. Chang's testimony is very clear.  And without such testimony, Sanofi cannot meet its burden of establishing general causation via potential alternative (e.g., non-Taxotere) causes through Dr. Chang.[6]  Sanofi's failure to establish a reliable basis for Dr. Chang offering a general causation opinion that a non-Taxotere drug can cause PCIA makes this testimony ripe for exclusion.

## 2.      Dr. Chang's opinion regarding TAX 316 and PCIA rates is unreliable.

Sanofi represents in its opposition that "Dr. Chang analyzed adverse event data for all 1,480 [TAX 316] study participants."[7]  This is simply <u>not true</u>.   In her deposition, Dr. Chang explained that she asked to receive all of the available case report forms for patients in the TAX 316 study; she received only 633 compilations of individual patient case report forms, and 100 case report form summaries, without overlap between those for whom she received forms and those for whom she received summaries.[8]  Dr. Chang did not ask for, nor was she informed about other available sources of clinical trial data other than the case report forms.[9]  She believes that she received all of the "available case report forms," but that "it appears that for some of the participants in the trial, whatever is available is not a full set of case report forms, it's a summary material."[10]  There is no evidence of who compiled the summary, or whether it is true, accurate or complete.

---

[5] Ex. A, Chang II, 132:7-133:6; *see also id.* at 138:3-18 ("If Sanofi's lawyers stand up at trial and say that Dr. Chang assessed other  chemotherapies by way of a comprehensive systematic literature search or literature review and has determined that a causal association exists between any of the drugs you've listed on pages 26 through 28 and irreversible or permanent alopecia, you and I  can agree you have not done that, correct?  A. I agree that I have not done a systematic literature review on any of these drugs except for docetaxel with respect to permanent or irreversible alopecia.  For docetaxel, I think I have done a systematic literature review, trying to find everything that's out there.").
[6] Sanofi raised the affirmative defense that some drug other than Taxotere/docetaxel is the cause of Mrs. Kahn's PCIA, and as a result carries the burden of proving both general and specific causation.  *See* Defendants' Master Answer and Affirmative Defenses to Plaintiffs' First Amended Master Long Form Complaint (Rec. Doc. 961).
[7] *See* Rec. Doc. 11100, Defs' Opp, p. 3.
[8] Ex. 1 to Pl's Memo, Chang Report, 4/17/2020, pp. 6-11; Ex. A, Chang II, 69:25-71:6.
[9] Ex. A, Chang II, 68:23-69:23.
[10] *Id.* at 77:21-78:11.

Dr. Chang was never provided the final clinical trial data on all study participants, as Sanofi represents in its opposition. Dr. Chang's materials reviewed are found at pp. 6-14 of her report, and this listing of materials does not include the final clinical study data for TAX 316, which are in Dr. Madigan's report (SA_Vol_170 and SA_Vol_208.)[11]   She only received the case report forms listed on pp. 6-11 of her report.

Before she was retained by Sanofi to testify in this MDL, Dr. Chang had no knowledge that Sanofi or its study physicians utilized a document known as a case report form.[12] Thus, the use of and provision of case report forms comes from Sanofi's counsel. Dr. Chang testified that she does not know how Sanofi stores its clinical trial data, although she noticed some of Sanofi's data is stored in electronic SAS files, but she was never provided with or reviewed Sanofi's SAS data.[13] Pierre Mancini, whose deposition Dr. Chang purportedly reviewed, explained that Sanofi's TAX 316 final clinical study is stored in the WISE database, but Dr. Chang neither requested nor was she provided with the data.[14]   This is classic cherry-picking.

Sanofi next argues that Dr. Chang analyzed the TAX 316 data because the study only reported on "ongoing" alopecia and did not address "permanent" or "persisting" alopecia. Again, this is simply incorrect. On January 22, 2013, Sanofi (through Pierre Mancini) sought to answer the following question: "Could  you please clarify the number/percentage of patients with *long term/permanent alopecia* from the pivotal breast cancer studies?"[15]   Sanofi's response was this: "By the end of the follow-up period, 29 TAC patients (4.2%) still had persistent alopecia."[16]   So, when Sanofi argues that Plaintiff's experts inappropriately equate "ongoing" with "persistent" or

---

[11] Ex. B, Madigan Report, 3/23/2020 at Footnote 50.
[12] Ex. A, Chang II, 81:6-16.
[13] *Id.* at 81:18-82:1.
[14] Ex. C, Mancini Depo., 3/23/2018 ("Mancini I"), 67:24-68:13.
[15] Ex. 9 to Pl's Memo, Sanofi_04938203, p. 3.
[16] *Id.*

4

permanent or PCIA, it is simply ignoring its own representations as to what TAX 316 demonstrates.  Sanofi's January 22, 2013 response to the European Medicines Agency[17] answered the question of whether ongoing means permanent or persistent years before this MDL was created, and years before Sanofi's lawyers asked Dr. Chang to answer a question Sanofi had already answered in 2013.

3.    **Dr. Chang is not qualified to offer opinions on the types of alopecia, risk factors, or the frequency of alopecia.**

Expert testimony is inadmissible when "the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 136 F.3d 935, 937 (5th Cir. 1999). Similarly, an expert's testimony should be excluded where it "go[es] beyond the scope of his expertise in giving his opinions." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)).

Dr. Chang is not qualified to offer opinions on the types, frequency, causes of, or risk factors for alopecia.[18]  Dr. Chang is an epidemiologist; and by her own admission, looks at and observes data from controlled and sometimes observed populations to measure disease occurrences and patterns.[19]  Dr. Chang is *not* a medical doctor with a license or ability to diagnose, treat, or prescribe treatment for patients.[20]  Dr. Chang is *not* an oncologist or dermatologist.[21]  Dr. Chang admits that because she is not a dermatologist, she has never had to distinguish between types of alopecia, such as scarring versus non-scarring.[22]

---

[17] Ex. 9 to Pl's Memo, Sanofi_04938203.
[18] Ex. A, Chang II, 88:14-89:4; 93:2-6.
[19] *Id.* at 92:3-9
[20] *Id.* at 88:4-13.
[21] *Id.* at 88:18-21, 88:25-89:4; 106:9-10.
[22] *Id.* at 93:7-13; 96:25–97:9 (She admits she is not a clinician and does not describe anything from the standpoint of an expert clinician).

Sanofi attempts to explain Dr. Chang's testimony as simply reciting background opinions on types, risk factors and frequencies of alopecia.[23]  A review of pp. 24-26 of Dr. Chang's report reveals that the opinions offered are not about her observations in the epidemiology literature reviewed, or describing background rates.[24]  Instead, she attempts to offer very specific opinions about the phases of hair growth: anagen, catagen, telogen, etc.[25]  She then attempts to discuss the medical intricacies of the various types of alopecia, down to the physiological mechanisms.[26]  She is simply not qualified to offer this type of testimony.

Dr. Chang may be able to discuss what the studies she reviewed reveal, but absent some particularized expertise, she cannot opine about what is in the studies: dermatology, cancer, pathology, etc.  Reviewing studies that measure the adverse event of alopecia does not create in Dr. Chang, who is not a medical doctor, the expertise to offer medical opinions, which is precisely what is set out in pp. 24-26 of her report.[27]  Dr. Chang's education, training and experience does not include the expertise to diagnose, differentiate between types, or explain the physiology of the various type of alopecia.[28]

Sanofi's reliance on *Deutsch v. Novartis Pharm. Corp,* 768 F. Supp. 2d 420 (2011)*,* does not apply to Dr. Chang's testimony at all.   In *Deutsch*, Novartis sought to exclude an epidemiologist because he had not published a meta-analysis study.  The expert there, however, had performed meta-analyses before, and had over three decades of experience as an epidemiologist, performing meta-analyses – an epidemiologic tool.  *Id.* at 455.  In the present case, Dr. Chang is an epidemiologist who has been asked to review data on a single adverse event, but

---

[23] *See*, Rec. Doc. 11100, Defs' Opp, p. 7.
[24] Ex. 1 to Pl's Memo**,** Chang Report, 4/17/2020, pp. 24-26.
[25] *Id.*
[26] *Id.*
[27] *Id*.
[28] *See* Ex. A, Chang II, 93:7-13.

she attempts to cross the line and explain the intricacies of the physiology and diagnoses of alopecia, and to differentiate between types of alopecia.  She simply does not possess the expertise to do so.

Dr. Chang admits that she relies on nothing more than "common knowledge" when opining about "the most common type of alopecia."[29]  But Dr. Chang is not a dermatologist, and has never studied or published on the topic of alopecia or hair cycling.   Therefore, her "general" or "common" knowledge is nothing more than subjective belief, and her testimony on alopecia should be excluded as unreliable and not relevant.  Dr. Chang has no demonstrated expertise in the area of dermatology generally, or with alopecia specifically, that would allow her to offer any of the opinions or medical discussion set out on pp. 24 -26 of her report, and these opinions fail the Rule 702 of the Federal Rules of Evidence and *Daubert* standards for admission, and should be excluded.

### CONCLUSION

Wherefore, based upon Plaintiff's prior submission, and this Reply, Plaintiff respectfully moves this Court to exclude the expert testimony of Ellen Chang, ScD, at the trial of this matter. Specifically, Plaintiff, Elizabeth Kahn, requests that the Court order the exclusion of:

1. Dr. Chang's opinions that *any* drugs other than Taxotere/docetaxel can cause PCIA because such opinions are unreliable and irrelevant.   By her own admission, Dr. Chang did not attempt to perform a systematic literature review to assess any potential relationship between any non-Taxotere/docetaxel drug and PCIA; Dr. Chang states at p. 4 of her report: "I also did not directly

---

[29] *Id.* at 101:19-102:3.

investigate the incidence of irreversible or permanent alopecia among breast cancer patients using chemotherapeutic agents other than docetaxel."[30]

2.  Dr. Chang's opinion(s) attempting to revisit the final clinical study results of TAX316 because her methodology is improper and unreliable, and attempt to contradict the clear and unambiguous statement of Sanofi on the very issue.

3.  Dr. Chang's opinions regarding types of alopecia, their risk factors, and their frequency because Dr. Chang is unqualified to render these medical opinions, and as such they are nothing more than speculation, and as a result unreliable.

Dated: September 24, 2020                          Respectfully submitted,

/s/ Christopher L. Coffin                          /s/ Karen B. Menzies
Christopher L. Coffin (#27902)                     Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                   GIBBS LAW GROUP LLP
1100 Poydras Street, Suite 2505                    6701 Center Drive West, Suite 1400
New Orleans, Louisiana 70163                       Los Angeles, California 90045
Phone: (504) 355-0086                              Telephone: 510-350-9700
Fax: (504) 355-0089                                Facsimile: 510-350-9701
ccoffin@pbclawfirm.com                             kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*                      *Plaintiffs' Co-Lead Counsel*

/s/M. Palmer Lambert                               /s/Dawn M. Barrios
M. Palmer Lambert (#33228)                         Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                          BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                           701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street            New Orleans, LA 70139
New Orleans, LA 70163-2800                         Phone: 504-524-3300
Phone: 504-522-2304                                Fax: 504-524-3313
Fax: 504-528-9973                                  barrios@bkc-law.com
plambert@gainsben.com

                                                   *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

---

[30] Ex. 1 to Pl's Memo, Chang Report, 4/17/2020, p. 4.

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS