UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LINDA BOSSERMAN**

---

Sanofi's motion and the PSC's opposition are proverbial ships passing in the night, leaving Sanofi's arguments essentially unopposed. The PSC failed to meaningfully address *any* of Sanofi's arguments for limiting three specific areas of Dr. Bosserman's testimony. Further, on page one of the PSC's opposition, *for the first time in this litigation*, the PSC announces that Dr. Bosserman will offer "general causation opinions," though she has never been disclosed to give such opinions, and is not qualified to do so in any event.[1] The Court should grant Sanofi's motion.

**I. DR. BOSSERMAN'S "GENERAL CAUSATION OPINIONS" ARE INADMISSIBLE.**

Without any explanation, the PSC asserts that "Dr. Bosserman [will offer] general causation opinions in this case as a clinical oncologist."[2] The PSC has never identified Dr. Bosserman as a "general causation" expert.[3] Dr. Bosserman has never included "general

---

[1] Rec. Doc. 11082 at 1 (Pl.'s Resp. in Opp. to Defs.' Mot. to Exclude Expert Test. of Linda Bosserman, M.D.).

[2] *Id.*

[3] In *Earnest*, the PSC only named two general causation experts—Dr. Madigan to opine on a statistically significant relationship and Dr. Feigal to opine on a true causal relationship. *See* Rec. Doc. 8094 at 6 (Order and Reasons re Motion to Exclude Expert Testimony on General Causation). Now, after losing the first trial on causation, the PSC is attempting to backdoor general causation amongst all of their experts—including those who have not even attempted a general causation analysis. *See* **Ex. K**, Mar. 23, 2020 Madigan Rpt. at 26 ¶ 68 ("docetaxel causes

causation" in any of her Rule 26 Reports for this litigation.  Dr. Bosserman consistently agrees that she is not a causation expert.[4]  In fact, when asked to provide any opinion on causation, Dr. Bosserman flatly refuses and deflects the question to the PSC's other experts.[5]  The PSC should not be permitted to backdoor in causation opinions without their experts having the proper qualifications and doing the necessary work to provide such an opinion.  As such, Dr. Bosserman should be prohibited from offering any general-causation opinions at trial.

## II.    DR. BOSSERMAN'S CASE-SPECIFIC OPINIONS ARE INADMISSIBLE.

The PSC's Opposition focuses almost entirely on the admissibility of Dr. Bosserman's "general" opinions on the diagnosis, treatment, and care of breast cancer patients.[6]  Sanofi, however, has not challenged the admissibility of such opinions.[7]  Instead, Sanofi opposes Dr. Bosserman's renewed attempt to give *case-specific* opinions – presenting cherry-picked testimony from Ms. Kahn and her treating oncologists as "expert opinion" – in violation of the Court's ruling in *Earnest*.

---

permanent/ irreversible alopecia."); Rec. Doc. 11085 at 6 (Pl.'s Memo. in Opp. to Mot. to Exclude Test. of Dr. Laura Plunkett) ("Dr. Plunkett has shown her work and should again be allowed to provide causation opinions."); **Ex. L**, Mar. 13, 2020 Plunkett Rpt. at 32 ¶ 63 ("Taxotere/ docetaxel carries an independent risk of CIPAL/ PCIA" and "Taxotere/ docetaxel has been a substantial contributing factor to CIPAL/ PCIA."); Rec. Doc. 11082 at 1 (Pl.'s Memo. in Opp. to Mot. to Exclude Test. of Dr. Linda Bosserman) ("Dr. Bosserman offers general causation opinions in this case as a clinical oncologist.").  Because these experts lack proper qualifications and have not completed any of the necessary work to provide a general causation opinion, this Court should preclude them from offering such testimony at trial.

[4]    **Ex. M**, April 17, 2020 Bosserman Dep.at 139:3-4 ("I'm not the expert talking about hair loss and causation ...");  **Ex. N**, Nov. 22, 2019 Bosserman Dep. at 96:2-20 ("Q. Where in your expert – well, let me back up.  Have you ever heard of the phrase "specific causation"?  Do you know what I'm referring to?  A. I've heard of the phrase.  I'm not an expert on that definition.  Q. Are you offering a specific causation opinion in this case as to what caused Ms. Thibodeaux's hair loss?  Yes or no?  A. I'm not the causation expert for this."  Q. And so in answer to my question, yes or no, are you offering an opinion as to the specific cause of Ms. Thibodeaux's hair loss?  A. I do not believe that's the scope of my testimony.  But I do believe the chemotherapy caused it so, you know.  Q. Do you defer to the other experts that are offering causation testimony in this case?  A. I do.").

[5]    Ex. N, Nov. 22, 2019 Bosserman Dep. at 98:18-104:22; 259:2-266:14.

[6]    Rec. Doc. 11082 at 16 (Pl.'s Resp. in Opp. to Defs.' Mot. to Exclude Expert Test. of Linda Bosserman, M.D.).

[7]    Rec. Doc. 10929-1 (Defs.' Memo. in support of Mot. to Exclude Expert Test. of Linda Bosserman, M.D.).

And although the PSC expressly states that Dr. Bosserman "does not offer any case-specific causation opinion[s],"[8] Dr. Bosserman does, in fact, offer case-specific opinions on a variety of topics. Specifically, Dr. Bosserman opines about what Ms. Kahn's treating physicians would have said and done with regard to prescribing Taxotere had they been provided unspecific information about permanent alopecia[9], what Ms. Kahn's treating physicians would have said regarding the risks and benefits of alternative, non-chemotherapy regimen,[10] and what Ms. Kahn would have decided after considering this information.[11]

The PSC offers no explanation for why this Court should revisit its ruling in *Earnest* and permit Dr. Bosserman to offer case-specific opinions in here. As in *Earnest*, Dr. Bosserman's opinions in this case were formed after reviewing Ms. Kahn, Dr. Kardinal, and Dr. Larned's deposition testimony and are thus based upon pure speculation. Because Ms. Kahn, Dr. Kardinal, and Dr. Larned have each provided sworn testimony, Dr. Bosserman's attempted interpretation of, and extrapolation from discussions held between Ms. Kahn and her treating oncologists are inadmissible.

---

[8] *Id.* at 4.

[9] Rec. Doc. 10929-9 at 6 (Ex. H, *see, e.g.*, Apr. 3, 2020 Bosserman Rpt. at 33 ("Despite these numerous conversations, as Ms. Kahn testified at her deposition, she was never warned that her use of Taxotere might result in permanent chemotherapy induced alopecia. Ms. Kahn did not receive this warning because, Dr. Kardinal, as he testified in his deposition, was unaware that Taxotere carried with it a risk of permanent chemotherapy induced alopecia at the time he prescribed Taxotere to Ms. Kahn."); *id.* at 39-40 ("Ms. Kahn's prescribing oncologist, Dr. Kardinal, stated that he was unaware of the risk of PCIA related to the use of Taxotere, and further that he would have discussed it with his patient if he had known of the risk.")).

[10] *Id.* (Ex. H, Apr. 3, 2020 Bosserman Rpt. at 55 ("The accurate communication of information concerning the risk of PCIA with the use of Taxotere, from Sanofi to Dr. Kardinal, the treating phsyicians of Ms. Kahn, via the product label, marketing pieces, correspondence and through the sales representatives that visited the doctors' offices, would more likely than not, have been included in the discussion and process of informed consent in a real and substantial way for any standard or clinical trial docetaxel based regimen. It would have allowed for a more honest, accurate and complete informed consent process and discussions between the physician, the oncology nurse, the clinical trial investigators and Ms. Kahn, and would have allowed for a decision to be made on more truthful and accurate information.")).

[11] *Id.* (Ex. H, Apr. 3, 2020 Bosserman Rpt. at 40 ("Likewise, Ms. Kahn testified that had she been advised that Taxotere carried with it a risk of permanent chemotherapy induced alopecia, she would have sought out alternative treatment options from Dr. Kardinal.")).

**III.   DR. BOSSERMAN'S CASE-SPECIFIC TESTIMONY CONCERNING ONLINE PREDICTIVE TOOLS IS INADMISSIBLE.**

The PSC argues that "Dr. Bosserman can certainly discuss the utility of online predictive tools for in [sic] the development of a patient's treatment plan."[12] The PSC does not address—and therefore concedes—that Dr. Bosserman's use of online predictive tools in connection with Ms. Kahn's case is inadmissible, consistent with this Court's ruling in *Earnest*.

In *Earnest*, this Court held that Dr. Bosserman may discuss the general benefit of using online predictive tools, like "Adjuvant! Online" and "Predict" in the creation of cancer treatment plans.[13] However, Dr. Bosserman was properly precluded from testifying "about the use of these tools in connection with [Plaintiff's] case" because Plaintiff's treating physician was available to testify.[14] The Court further explained that Plaintiff's treating physician was better positioned to offer testimony about the specifics of Plaintiff's diagnosis, treatment, and care.[15] Despite this Court's prior ruling, Dr. Bosserman devotes ten pages of her Report applying these online predictive tools to the facts of Ms. Kahn's specific case.[16] Specifically, Dr. Bosserman uses the online tools to discuss alternate treatment options and possible survival outcomes had Ms. Kahn received a different chemotherapy regimen.[17] The PSC fails to offer *any* valid reason for this Court to reverse its ruling in *Earnest*. As such, Dr. Bosserman's Plaintiff-specific opinions should be excluded.

---

[12]   Rec. Doc. 11082 at 6 (Pl.'s Resp. in Opp. to Defs.' Mot. to Exclude Expert Test. of Linda Bosserman, M.D.).

[13]   Rec. Doc. 7807, at 6 (Order and Reasons on Defs.' Mot. to Exclude Expert Test. of Dr. Linda Bosserman).

[14]   *Id.*

[15]   *See id.*

[16]   Rec. Doc. 10929-9 at 6 (Ex. H**,** Apr. 3, 2020 Bosserman Rpt. at 31-41).

[17]   *Id.* (Ex. H, Apr. 3, 2020 Bosserman Rpt. at 31-41).

## IV. DR. BOSSERMAN'S TESTIMONY ABOUT WHAT WAS "KNOWN OR KNOWABLE" BY SANOFI OR MS. KAHN'S TREATING PHYSICIANS IN 2008 ABOUT PERMANENT HAIR LOSS IS INADMISSIBLE.

Dr. Bosserman has consistently failed to provide any foundation for her opinion that "Sanofi was in fact aware of the risk of PCIA yet did not warn physicians or patients,"[18] or that "[n]either Dr. Kardinal, nor his oncology nurse, Shevonda Thomas, nor the writers of the NSABP B_40 informed-consent form, were informed about the risk of PCIA from Sanofi's adjuvant clinical trials. . . ."[19] When asked to identify the basis for those opinions, Dr. Bosserman refused to answer, directing Sanofi instead to the opinions of Dr. Ellen Feigal, Plaintiff's causation expert.[20]

Indeed, in support of Dr. Bosserman's opinions about whether and when the risk of permanent hair loss "should have been discussed with Ms. Kahn," the PSC argues that Dr. Bosserman relied on "the increased risk, general causation opinion of Dr. Ellen Feigal."[21] The PSC also points out that "[t]his Court in *Earnest* rejected the notion that one expert has to conduct the entire causation inquiry."[22] Presumably then, Dr. Bosserman's arguments only stand if Dr. Feigal made such statements in her Report. *She did not*. Dr. Feigal's Rule 26 Report[23] does not discuss what was known or knowable by Sanofi or Ms. Kahn's treating physicians at the time of

---

[18] *Id.* (Ex. H, Apr. 3, 2020 Bosserman Rpt. at 52-54).

[19] *Id.* (Ex. H, Apr. 3, 2020 Bosserman Rpt. at 52).

[20] Rec. Doc. 10929-2 at 2 (Ex. A, April 17, 2020 Bosserman Dep. at 174:10-19 ("Q. You say, "At the time Ms. Kahn entered the trial, Sanofi was, in fact, aware of the risk of PCIA, yet did not warn physicians or patients." Do you see that? A. Yes. Q. What is your authority or basis for that statement? A. I refer you to Dr. Feigal, who really addressed the trials and the studies and what was available to Sanofi and their internal documents.")); *see also id.* at 6 (Ex. H**,** *See, e.g.*, Apr. 3, 2020 Bosserman Rpt. at 53).

[21] Rec. Doc. 11082 at 8 (Pl.'s Resp. in Opp. to Defs.' Mot. to Exclude Expert Test. of Linda Bosserman, M.D.).

[22] *Id.*

[23] **Ex. O**, Mar. 23, 2020 Feigal Rpt.

her treatment. In fact, Dr. Feigal's Report never discusses whether or when the risk of "PCIA" should have been discussed with Ms. Kahn.

Because Dr. Bosserman admits that what was "known or knowable" by Sanofi or Plaintiff's treating physicians in 2008 regarding permanent hair loss is outside the scope of her expertise, and because the PSC provides no legitimate grounds for admitting these opinions, Dr. Bosserman's testimony should be prohibited on this issue.

## CONCLUSION

The PSC's arguments in support of Dr. Bosserman's testimony are summarily inadequate. Accordingly, as stated in Sanofi's Motion to Exclude Expert Testimony on Dr. Linda Bosserman, this Court should exclude the following testimony: (1) any general causation opinions; (2) Dr. Bosserman's case-specific opinions; (3) Dr. Bosserman's cases-specific testimony concerning online predictive tools; and (4) Dr. Bosserman's opinions about what was "known or knowable" by Sanofi or Ms. Kahn's treating physicians in 2008.

Respectfully submitted,

 /s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone: 504-310-2100
dmoore@irwinllc.com

Harley V. Ratliff
Jon Strongman
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
hratliff@shb.com
jstrongman@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*