UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)      MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA PLUNKETT**

---

The PSC's Opposition ignores this Court's prior rulings, mischaracterizes the opinions Dr. Plunkett has offered, and fails to cite a single case in support of the PSC's positions. It was the PSC's burden to prove that Dr. Plunkett's opinions are admissible, but they have not met that burden.

**I.  DR. PLUNKETT'S "MORE TOXIC" OPINION IS IRRELEVANT AND SHOULD BE EXCLUDED UNDER THIS COURT'S PRIOR ORDER.**

The PSC's Opposition neither addresses the fact that this Court excluded Dr. Plunkett's opinion that Taxotere is "more toxic" than Taxol in *Earnest* nor offers any new argument that would warrant a different ruling here.[1] The Court already decided that Dr. Plunkett's "more toxic" opinion (1) is "irrelevant" and "does not 'fit' the facts of this case, which is about permanent hair loss," and (2) might confuse the jury into thinking that, because Taxotere allegedly is more toxic, it is more likely to cause permanent hair loss.[2] Those same rulings should be issued in this case.

---

[1] *See* Rec. Doc. 11085-1 at 4–5 (Pl.'s Opp. to Mot. to Exclude Plunkett).

[2] Rec. Doc. 8097 at 6 (Order and Reasons on Motion to Exclude Plunkett).

Dr. Plunkett admitted that nothing about her "more toxic" opinion has changed since *Earnest*.[3] Dr. Plunkett reviewed the same materials and reached the same conclusion. The PSC highlights the TAX 311 clinical trial data, but Dr. Plunkett relied on that study previously. Further, TAX 311 focused on patients with metastatic breast cancer (which neither Ms. Kahn, nor any plaintiff in this litigation, had) who were treated with Taxotere monotherapy (which neither Ms. Kahn, nor any plaintiff in this litigation, was) and did not track long-term hair loss (which Dr. Plunkett concedes).[4] Nothing about Dr. Plunkett's reliance on that irrelevant clinical trial data makes her "more toxic" opinion now admissible.

The PSC argues that Dr. Plunkett's opinion is relevant because Sanofi's own expert, Dr. Glaspy, addressed the "overall toxicities" of Taxotere and Taxol for this case.[5] Dr. Glaspy does not offer that testimony but instead discusses issues he considers as an oncologist when making individual treatment decisions. Sanofi does not intend to present evidence about Taxotere's "overall" level of toxicity, but, regardless, the Court already reasoned that, if Sanofi "present[s]

---

[3] Rec. Doc. 10918-2 (Ex. A, Nov. 19, 2019 Plunkett Dep. at 369:16–23) ("Q. Is there anything different about your Taxotere is-more-toxic-than-Taxol opinion than what you described in your previous deposition? A. Well, I've -- I think I've worded it a little bit differently in my report. I may have a different sentence or so in there, and I need to look at that, I think. But I wouldn't–there's no new evidence that I would point to.").

[4] Rec. Doc. 11085-1 at 4 (Pl.'s Opp. to Mot. to Exclude Plunkett); Dr. Plunkett also admitted during the *Earnest* trial that TAX 311 was not focused on permanent alopecia (which Ms. Kahn, and every plaintiff in this litigation, claims to have).

> Q. Okay. And with regard to a monotherapy head-to-head treatment with
> regard to Taxol and Taxotere, you told me about the 311 trial, correct?
> A. Yes. That's the only one that I was able to identify head-to-head.
> Q. Okay. And you agreed with me that that trial was not focused on permanent
> alopecia, true?
> A. I did agree with you on that.

**Ex. I**, Dec. 10, 2018 Plunkett Dep. at 77:16–23.

[5] Rec. Doc. 11085-1 at 5 (Pl.'s Opp. to Mot. to Exclude Plunkett).

evidence about Taxotere's level of toxicity," Dr. Plunkett's "more toxic" opinion may be admissible.[6] It is not, however, affirmatively admissible, just as it was not in *Earnest*.

## II. DR. PLUNKETT'S NEW CAUSATION-BASED OPINIONS ARE UNRELIABLE.

### A. Dr. Plunkett's "Independent Risk" and "Substantial Contributing Factor Opinions" are Improper Causation Opinions.

As an initial matter, the PSC contends that the Court previously allowed Dr. Plunkett's "independent risk" and "substantial contributing" factor opinions in *Earnest*. That is incorrect—Dr. Plunkett did not offer those opinions in *Earnest*. Indeed, before the *Earnest* trial, Sanofi argued that Dr. Plunkett should be prohibited from providing a causation opinion, and the Court ruled that Sanofi's argument was moot because the PSC conceded that Dr. Plunkett *would not* be offering a causation opinion.[7] The Court's ruling in *Earnest* accordingly has no bearing on Dr. Plunkett's new causation opinions offered in *Kahn*.

Plaintiff must affirmatively prove general causation with testimony from an expert who has identified (1) "a statistically significant association between the agent and the disease" and (2) "a true causal relationship underl[ying] the association" through application of a recognized methodology like the Bradford-Hill criteria.[8] The PSC does not dispute that Dr. Plunkett *has not done the work* to offer a causation opinion:

> Q. So when you were talking about the Bradford-Hill criteria that is not an analysis that you have performed in this case. Is that correct?
>
> A. That – that's correct. I have not done a full analysis.[9]

---

[6] Rec. Doc. 8097 at 6 (Order and Reasons on Motion to Exclude Plunkett).

[7] *Id.* at 3–4 (Order and Reasons on Motion to Exclude Plunkett).

[8] *See* Rec. Doc. 8094 at 5 (Order and Reasons on General Causation) (internal quotation marks and citations omitted).

[9] Rec. Doc. 10918-6 (Ex. E, Apr. 27, 2020 Plunkett Dep. 20:17–24); *see also*, *id*. at 19:13–20:24.

> I am not a general causation expert, based on my understanding of what 'general causation' means, which is what I described for you a few minutes ago; it would be going through [the Bradford-Hill] analysis.[10]

Yet the PSC still argues that Dr. Plunkett should be permitted to use causal phrases in describing "her toxicology opinion."[11] Allowing Dr. Plunkett to testify that Taxotere "can cause" permanent alopecia or "carries an independent risk of PCIA" or is a "substantial contributing factor," however, would mislead the jury to assume that Taxotere *causes* permanent alopecia "without a sufficient basis for doing so."[12] Dr. Plunkett admits she conducted no causation analysis, and the Court should not permit her to confuse the jury with testimony that implies she did.

### B. Dr. Plunkett's "Substantial Contributing Factor" Opinion is an Improper Legal Conclusion.

Dr. Plunkett's opinion that Taxotere is a "substantial contributing factor" of PCIA also is inadmissible because it is an improper legal conclusion. The PSC argues only that Dr. Plunkett's "substantial contributing factor" opinion is appropriate because it is based in toxicology.[13] The PSC, however, never addresses why it would be proper for Dr. Plunkett to testify as to the exact phrase used in the *Earnest* jury instructions. To allow Dr. Plunkett's testimony would improperly

---

[10] *Id.* at 25:20–24.

[11] In *Earnest*, the PSC did not have a single general causation expert and instead asked Dr. Madigan to opine on a statistically significant relationship and Dr. Feigal to opine on a true causal relationship. *See* Rec. Doc. 8094 at 6 (Order and Reasons on Motion to Exclude Expert Testimony on General Causation). Now, after losing the first trial on causation, the PSC adds Dr. Kessler as a general causation expert and attempts to backdoor general causation opinions amongst other experts—including those, like Dr. Plunkett, who have not even attempted a general causation analysis. *See* **Ex. J**, Mar. 23, 2020 Madigan Rpt. at 26 ¶ 68 ("docetaxel causes permanent/ irreversible alopecia."); Rec. Doc. 11082 at 1 (Pl.'s Memo. in Opp. to Mot. to Exclude Test. of Dr. Linda Bosserman) ("Dr. Bosserman offers general causation opinions in this case as a clinical oncologist."). The PSC should not be permitted to backdoor in causation opinions without their experts having the proper qualifications and doing the necessary work to provide such an opinion.

[12] *See* Rec. Doc. 8097 at 6 (Order and Reasons on Motion to Exclude Plunkett).

[13] Rec. Doc. 11085-1 at 7 (Pl.'s Opp. to Mot. to Exclude Plunkett).

invade the province of the jury by telling it what conclusion to reach.  *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, 2009 WL 2169224, at *2 (E.D. LA. 2009) (an expert is not permitted to "invade the province of the jury, which can reasonably be expected to consider and evaluate testimony from actual experts who have specialized, technical knowledge on the subject matter pertinent to this litigation."); *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) (Rejecting experts opining on legal standards "which would merely tell the jury what result to reach") (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 n.4 (5th Cir. 1992)); *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.").  The PSC provides no legitimate argument to the contrary, and Dr. Plunkett's testimony should be excluded.

### III.  DR. PLUNKETT'S OPINIONS REGARDING "DIA" VERSUS PCIA WILL NOT HELP THE JURY UNDERSTAND A FACT AT ISSUE.

The PSC argues that Dr. Plunkett can testify about the differences between drug induced alopecia (what she calls "DIA") and PCIA because "it is within [her] expertise in pharmacology and toxicology" to do so.[14]  The PSC highlights Dr. Plunkett's testimony that she sees "drug-induced alopecia as hair loss; whereas, the issue of the persistent alopecia, irreversibility . . . it's the inability to regrow."[15]  In other words, Dr. Plunkett sees the difference between DIA and P (permanent) CIA as whether the condition is permanent.  According to the PSC, Dr. Plunkett's explanation will help the jury understand a fact at issue.[16]  They are wrong.

---

[14]  *Id.* at 8.

[15]  *Id.* at 9–10.

[16]  *Id.* at 10.

Dr. Plunkett's opinion is not required to help the jury understand the general fact that temporary hair loss and permanent hair loss are different. The question the jury must address is whether Plaintiff, who lost her hair during chemotherapy ("DIA," as Dr. Plunkett calls it), has "PCIA" at all. Dr. Plunkett cannot help the jury answer that question, as she admits that requires a diagnosis:

> Q. If a person takes chemotherapy and loses their hair, and then it grows back, would that be drug-induced alopecia, or would that be permanent chemotherapy-induced alopecia?
>
> A. That's a diagnosis, so I don't do that. I can't answer that for you. I can tell you how it's been described in the literature, and what I have relied upon, but I don't -- I can't -- I don't diagnose patients, so I can't tell you.[17]

Dr. Plunkett's general opinion about the obvious difference between DIA and PCIA (*i.e.*, permanence) will not help the jury and should be excluded.

### IV.  DR. PLUNKETT'S "WEIGHT OF THE EVIDENCE" METHODOLOGY IS NOT RELIABLE.

The PSC has not met their burden of demonstrating that Dr. Plunkett reliably applied the weight-of-the-evidence methodology. The PSC insists that Dr. Plunkett's opinions "are the product of a scientifically valid reasoning and methodology" and lists a sampling of the data Dr. Plunkett reviewed. But the "weight-of-the-evidence" methodology is easily manipulated, which is why Courts require much more than an expert's bare assertion that she reliably applied it to a set of data and reached her conclusion. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("The expert's assurances that [she] has utilized [a] generally accepted scientific methodology is insufficient."); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig. (Zoloft*

---

[17]  Rec. Doc. 10918-6 (Ex. E, Apr. 27, 2020 Plunkett Dep. at 112:9–18).

*II)*, 858 F.3d 787, 796 (3d Cir. 2017) (quoting *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 607 (D.N.J. 2002)).

Dr. Plunkett was required to "describe each step in the process by which [she] gathered and assessed the relevant scientific evidence," "rigorously explain how [she] weighted the criteria" and demonstrate that her method was scientifically reliable. *See In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1311 (N.D. Fla. 2018) (citing *Zoloft II*, 858 F.3d at 795–97); *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (Mirena II)*, 341 F. Supp. 3d 213, 260 (S.D.N.Y. 2018); *Magistrini*, 180 F. Supp. 2d at 608. The PSC's "sampling of the wide array of facts, data, and scientific literature [Dr. Plunkett] considered" only magnifies the failures in Dr. Plunkett's methodology. Dr. Plunkett could not simply list and review pieces of evidence and state her conclusion. Rather, she was required to explain *how* she gathered the evidence, *how* she weighted the evidence to reach her conclusion, and *why* her weighting and assessment of the evidence was scientifically valid. Dr. Plunkett did not do so, and the PSC's arguments do nothing to rebut the conclusion that Dr. Plunkett's methodology "virtually standardless" and "unacceptably manipulable." *In re Mirena II*, 341 F. Supp. 3d at 247.

## CONCLUSION

Plaintiff failed to carry her burden to prove that Dr. Plunkett's opinions are admissible. As stated in Sanofi's Motion to Exclude Expert Testimony on Dr. Laura Plunkett, the Court should exclude the following testimony: (1) Dr. Plunkett's "more toxic" opinion; (2) Dr. Plunkett's opinions (i) that Taxotere carries an independent risk of PCIA, and (ii) Taxotere is a substantial contributing factor to PCIA; (3) Dr. Plunkett's opinion explaining the difference between "DIA" and "PCIA;" and, (4) Dr. Plunkett's opinions that rely on her "weight-of-the-evidence" methodology.

7

Respectfully submitted,

/s/ *Douglas J. Moore*

| | |
|---|---|
| Douglas J. Moore (Bar No. 27706) | Harley V. Ratliff |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Jon Strongman |
| 400 Poydras Street, Suite 2700 | Adrienne L. Byard |
| New Orleans, LA 70130 | **SHOOK, HARDY & BACON L.L.P.** |
| Telephone: 504-310-2100 | 2555 Grand Boulevard |
| dmoore@irwinllc.com | Kansas City, Missouri 64108 |
| | Telephone: 816-474-6550 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |
| | |
| | *Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*