UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)                              MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                                         SECTION "H" (5)

THIS DOCUMENT RELATES TO
*Kahn v. Sanofi S.A., et al.*, 2:16-cv-17039

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION TO EXCLUDE TESTIMONY OF MICHAEL KOPRESKI

#### INTRODUCTION

Sanofi opposes Plaintiff's motion to exclude Michael Kopreski under Federal Rules of Evidence 702 and 703, and Federal Rules of Civil Procedure 26(a)(2)(B), 26(a)(2)(C) and 37(c)(1), in part on the grounds that the Court rejected such arguments in *Earnest*. That is not accurate. The Court previously assumed that Arrowsmith, Glaspy, and others would independently verify Dr. Kopreski's re-analysis. That did not happen at trial. Regardless, the Court now has before it a motion to exclude Dr. Kopreski which, taken on its own terms, should be granted.

**1. Michael Kopreski should not be permitted to offer expert opinions when he has not met the requirements for expert testimony, including the need to prepare an expert report.**

Michael Kopreski is a former employee of Defendant Sanofi, and worked in the pharmacovigilance department.[1] At no time during his employment with Defendant Sanofi was Dr. Kopreski involved in the analysis of TAX316 data, up to and including the submission of the final Clinical Study Report (September 9, 2010).[2] Dr. Kopreski could not state factually that he was ever involved in the review of any TAX316 clinical trial data, instead only speculated that

---

[1] Ex. 1, Curriculum Vitae of Dr. Michael Kopreski, May 2018.
[2] Ex. J to Plaintiff's Motion to Exclude Testimony of Dr. Michael Kopreski, Rec. Doc. 10938-11, Kopreski depo, 12/13/2018 at pp. 489:19 – 490:24.

Page **1** of **10**

there may have been "some review of some elements of TAX316" that he reviewed, but he could not recall any.[3]  But Dr. Kopreski did state with certainty that the analysis that he testified to in relation to TAX316 relative to this MDL was done for this litigation at the request of the attorneys at Shook, Hardy & Bacon, and that the complete basis for his conclusions was provided to him by Sanofi's attorneys in this litigation.[4]  And Dr. Kopreski cannot speak to the completeness of any of the documents her reviewed, and referred the question to "my attorneys."[5]  This is not surprising as Dr. Kopreski had no role in TAX316.

Sanofi's expert Dr. Janet Arrowsmith agrees that Dr. Kopreski's role in testifying is similar to her role as an expert in that – like her – Dr. Kopreski was provided information from Sanofi's counsel, reviewed it, and offered opinions.[6]  Dr. Arrowsmith did not, however know the limited nature of what exactly counsel provided to Dr. Kopreski, but she at least recognizes that what he was provided came through counsel.[7]  And this is, again, strikingly similar to how Sanofi's other experts received their information to review.[8]  Dr. Arrowsmith was provided over 1,100 Sanofi documents (that Sanofi represents in its Opposition exceeds 5,000 pages of TAX316 data, see p. 3 of Sanofi's Opposition), yet Dr. Arrowsmith only learned of Dr. Michael Kopreski's existence through discussions with Sanofi's lawyers.[9]  She did not testify that she identified Dr. Kopreski through her review of the volumes of TAX316 documentation she was provided. In fact, Dr. Arrowsmith recognized that Dr. Kopreski "would not have been involved in the conduct" of

---

[3] *Id. at* p. 491:20-25.
[4] *Id. at* p. 492:4-16.
[5] *Id*. at pp. 492:17 - 493:2.
[6] Ex. 2, Deposition of Dr. Janet B. Arrowsmith, 7/29/2020, at pp. 149:14 – 150:23.
[7] *Id.*
[8] *Id.* at p. 32:1-16; *see also* Ex. 3, Deposition of Ellen T. Chang, Sc.D., 5/19/2020, at pp. 65:8 – 67:9.
[9] Ex. 2, at p. 33:1-4.

TAX316.[10]  Dr. Kopreski's recruitment to perform services for Sanofi's counsel in this MDL is in line with how all of Sanofi's experts came to testify – they were recruited into service by counsel.

To borrow a phrase, if it walks like a duck, and quacks like a duck, it is a duck.  In this case, Dr. Kopreski is treated no differently *by Sanofi* than Drs. Arrowsmith and Chang, and others, and should be treated the same by the Court.

### 2. Sanofi's reliance on *U.S. v. Valencia* and *U.S. v. Kerley* is misplaced.

Sanofi relies upon two cases to support its position that Dr. Kopreski is a fact witness, and not an expert: *U.S. v. Valencia*, 600 F.3d 389 (5th Cir. 2010) and *U.S. v. Kerley*, 784 F.3d 327 (6th Cir. 2015).  The facts of both cases are distinguishable from Kopreski's position in the present matter.

In *Valencia*, two defendants were convicted of wire fraud charges related to commodities trading.  The government called as a fact witness the former chief risk officer of Dynegy, the company for whom the criminal defendants worked. The witness's duties with Dynegy included monitoring trading operations, including the very type of trades the defendants were involved in that resulted in their convictions. *Valencia*, 600 F.3d at 413.  The witness the court recognized as a lay witness (Labhart) was actually involved in responding on behalf of Dynegy to the government's initial inquiries into the questionable/violative trades. *Id.*  While Labhart did not perform all of his analyses prior to leaving his employment with Dynegy, the analyses that the government retained and requested Labhart to perform and introduce at trial were the exact same calculations he performed while employed by Dynegy, such that his testimony was "to pick up where he left off in 2004 and complete his work." *Id.*

---

[10] *Id.* at 33:5-17.  Dr. Arrowsmith attempts to throw in that Dr. Kopreski did an analysis of the presence of persistent alopecia in TAX316, but Dr. Kopreski admits that was only done for this litigation, at the request of counsel, and based only upon what Sanofi's counsel provided. *See also* Ex. J, Rec. Doc. 10938-11, at p. 492:4-16.

This is not the case with Kopreski's testimony in the present matter. Unlike Mr. Labhart in *Valencia*, Dr. Kopreski's work for Sanofi's counsel is in no way a continuation of his duties and obligations while employed by Sanofi. Despite counsel's carefully crafted argument to give Dr. Kopreski credit for the work performed by Emmanuel Palatinsky and Nanae Hangae in completing Sanofi's 2011 and 2015 Clinical Overviews, Dr. Kopreski admits that he was not involved in the analysis of TAX316 data up to and including the submission of the final Clinical Study Report (September 9, 2010).[11] The clinical overviews were not an analysis of TAX316 clinical trial data. Dr. Kopreski admits the analysis he performed in relation to TAX316 was done *for this litigation* at the request of the attorneys at Shook, Hardy & Bacon, based only upon materials provided to him by Sanofi's attorneys in this litigation.[12] There should be no mistaking, Dr. Kopreski's "analysis" of the very limited TAX316 information provided to him by counsel is in no way a continuation of his job duties while at Sanofi. This is abundantly clear by Kopreski's own testimony alone.

Similarly, the facts in *Kerley* offer no support for finding Kopreski is a fact witness. The defendants in *Kerley* were convicted of wire fraud and conspiracy to commit wire fraud effecting a financial institution. *U.S. v. Kerley*, 784 F.3d 327, 332-33 (2015). The defendants argued that two witnesses that testified for the government on the underwriting of loan transactions were not lay witnesses, but rather experts. *Id*. at 336. The court in *Kerley* pointed out that while the witnesses were not involved in underwiring the loan transactions that were the basis of the defendants' convictions, they both had personal knowledge of SunTrust's and Citizens' underwriting and lending guidelines. *Id*. at 337-338. The court noted that it is permissible to allow lay testimony where the witness is speaking to the practices and procedures and knowledge

---

[11] Ex. J, Rec. Doc. 10938-11, at pp. 489:19 – 490:24.
[12] *Id*. at p. 492:4-16.

Page **4** of **10**

acquired "from personal knowledge gained through participation in the business's day-to-day affairs." *Id.* at 337. Again, Sanofi is not offering Dr. Kopreski to explain Sanofi's analysis of TAX316 because of his experience in the day-to-day conduct of this protocol-driven clinical study; instead Sanofi is offering Kopreski to change the company's findings by arrived at by those responsible for day-to-day conducting of the TAX316 study, and analyzing its data – that is those Sanofi employees with "personal knowledge gained through participation in the []day-to-day affairs" of actually conducting and analyzing the TAX316 clinical trial data. Sanofi attempts the antithesis of what both *Valencia* and *Kerley* support concerning a former employee providing lay testimony.

Under no circumstance can Dr. Kopreski's litigation-driven analysis be seen as a continuation of his work while employed by Sanofi: "I was not personally involved with the initial data review of TAX316 at the time of submission, to the best of my recollection," and "And everything that you looked at was -- regarding TAX316 was given to you by Sanofi's attorneys in this litigation, correct? A. That's correct."[13] Sanofi's arguments to the contrary badly misstate the record and should be rejected.

3. **Dr. Kopreski has no relevant or reliable basis to contradict Sanofi's own evidence from the head of biostatistics regarding whether Taxotere may cause permanent and persistent hair loss**

The Court should not permit Dr. Kopreski to provide expert testimony that lacks any relevant or reliable basis to contradict Sanofi's own internal findings respecting Taxotere. As the company itself has acknowledged, the TAX316 study "was designed to assess whether it [alopecia] is still there after 10 years or not," and under the protocol, Sanofi "would know from the data" if

---

[13] Ex. J, Rec. Doc. 10938-11, at pp. 489:19 – 490:24 and p. 492:12-16.

a patient's alopecia is "still there at the end of the follow-up."[14] Mr. Mancini is the Global Biostatistics Head, Medical Affairs and Data Mining.[15] And Sanofi, with Mr. Mancini's statistical analysis of TAX316 clinical trial data, answered the question of permanent or persistent alopecia in TAX316 on January 22, 2013:

> <u>Could you please clarify the number/percentage of patients with long term/permanent alopecia from the pivotal breast cancer studies?</u>
>
> <u>Sanofi response:</u>
>
> <u>The MAH *provides below the following data that illustrate the frequency and incidence of patients with persistent alopecia*, respectively from the pivotal breast cancer studies T AX316 and GEICAM9805:</u>
>
> - <u>TAX316: in the TAC group, 728 (97.8%) patients experienced alopecia during the treatment period. Among those patients, alopecia persisted into the post-treatment period in 687 patients (92.3%). *By the end of the follow-up period, 29 TAC patients (4.2%) still had persistent alopecia.* In the FAC group, a total of 715 patients (97.1% ) experienced alopecia during treatment, including 645 patients (87.6%) with alopecia persisting during the follow-up period. By the end of the follow-up period, 16 FAC patients (2.5%) still had persistent alopecia.</u>[16] (emphasis added)

As can be clearly seen from Sanofi's Global Head of Biostatistics, whose department is responsible for analyzing clinical trial data – including TAX316's clinical trial data – the question Sanofi's counsel recruited Dr. Kopreski to answer for purposes of this litigation had been answered years before this MDL was created. Not only is Dr. Kopreski not qualified to offer expert or lay testimony concerning the analysis of TAX316 clinical trial data, the head of the department within Sanofi charged with analyzing the data answered the question years before counsel recruited Dr. Kopreski into service.

---

[14] Ex. C to Plaintiff's Motion to Exclude Testimony of Dr. Michael Kopreski, Rec. Doc. 10938-4, Mancini deposition, 03/23/18, at pp. 334:21 – 335:12 and pp. 335:20 – 336:1.
[15] Ex. 4, Deposition of Pierre Mancini, 03/23/18, Ex. 2.
[16] Ex. 5, Deposition of Pierre Mancini, 03/23/18, Ex. 29; *see also* Ex. 6, Deposition of Pierre Mancini, 03/23/18, at pp. 236:24 -239:25.

## CONCLUSION

When a proponent of specialized expert testimony cannot demonstrate that the testimony is based on sufficient facts, the application of a recognized methodology, and supported by appropriate validation of what is known, the expert's opinion should be excluded. See In re: Vioxx, 414 F. Supp. 2d 574, 592-593 (E.D. La. 2006). The present matter is a prime example of when exclusion is appropriate. Dr. Kopreski's opinions are based on admittedly incomplete data (limited information on just 29 of 1480 patients). Sanofi's counsel selectively funneled limited documents to Dr. Kopreski for review and asked that he offer an opinion. This is precisely what Sanofi asked of all its experts: review information and offer opinions. Dr. Kopreski was not involved in conducting TAX316, nor was he involved in the analysis of its clinical trial data until Sanofi's counsel selectively fed him limited data and sought a predetermined conclusion. Nothing about Dr. Kopreski's work as a witness in this MDL can legitimately be seen as a continuation of any day-to-day duties performed while employed with Sanofi. Dr. Kopreski admits this. As a result, he cannot be categorized as a lay witness; he can only be an expert witness. But he has no expertise in analyzing clinical trial data.

Dr. Kopreski was never disclosed as an expert pursuant to FRCP 26(a)(2)(B). Dr. Kopreski's testimony revealed both the troubling provenance of the basis for his testimony, and the lack of any demonstrated methodology plaguing his reanalysis of select and incomplete data that Sanofi provided to him. This is precisely why Rule 26(a)(2)(B) exists, and requires experts to provide detailed reports, but it may also demonstrate why a report was not provided.

For the foregoing reasons, and those set out in Plaintiff's initial briefing, the Court should prohibit Dr. Kopreski's from offering any expert opinion in this case due to Sanofi's failure to disclose Dr. Kopeski as expert under FRCP, Rule 26(a)(2)(B) or Rule 26(a)(2)(C), or, in the

alternative, because his testimony and reanalysis are unreliable and unsupported under Fed R. Evid. 702 and 703. Consequently, and in addition to the forgoing, Sanofi's remaining experts should be precluded from relying, in any way, upon Dr. Kopreski's *post hoc* re-analysis of the limited and incomplete TAX316 data provided by counsel.

Dated: September 24, 2020.                          Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura ((CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

| | |
|---|---|
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

/s/ M. Palmer Lambert
**M. PALMER LAMBERT**