**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: TAXOTERE (DOCETAXEL)                MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

                                           SECTION "H" (5)

THIS DOCUMENT RELATES TO:
Elizabeth Kahn, Case No. 2:16-cv-17039

<u>REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF JOHN GLASPY, M.D.</u>

        Plaintiff filed a motion to exclude very specific opinions, both expressed and forecasted

for future explanation ("I will discuss . . ."), which Defendants misconstrue in multiple ways. As

explained below, Dr. Glaspy lacks the qualifications to render dermatology opinions concerning

the types of alopecia, how they are differentiated from each other, and what alternate causes of

Permanent Chemotherapy Induced Alopecia (PCIA) might explain Ms. Kahn's PCIA.  Even if

he had the qualifications, Dr. Glaspy provides no established methodology for assessing alopecia

or the alternative causes of PCIA.  Likewise, Dr. Glaspy is neither qualified to render regulatory

opinions nor are his general causation opinions reliable.

**I.      Dr. Glaspy is not qualified to render opinions on the diagnosis, differentiation or
         causes of permanent alopecia and fails to apply any methodology for his
         opinions.**

        Sanofi does not even attempt to rebut—because it cannot—that Dr. Glaspy: (1) is

painfully unfamiliar with diagnosing potential causes of hair loss; (2) has never done a

differential diagnosis to rule in or rule out potential causes of hair loss; and (3) provides no

methodology for any of his opinions pertaining to alopecia.

        Dr. Glaspy does not differentiate between types of hair loss that he sees.[1]   And Dr.

Glaspy does not know the diagnostic criteria for PCIA on biopsy.[2]  Dr. Glaspy likewise does not

---

[1] Ex. A, Glaspy Dep., 1/9/2020, 199:25-200:18; 203:21-204:9; 208:21-209:5.

do differential diagnoses on women who present with hair loss as a side effect of a drug.[3]  Yet, despite Dr. Glaspy's demonstrated unfamiliarity with the specifics of diagnosing and differentiating types of alopecia, Sanofi continues to advocate that Dr. Glaspy is an expert qualified to testify about the types and cause of alopecia generally, and as to Mrs. Kahn's PCIA.

Sanofi relies on three cases to justify allowing an expert with no hair-loss expertise to testify about hair-loss causation: *Huss v. Gayden* 571 F.3d 442, 455 (5th Cir. 2009), *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 1352860 (E.D. La. Apr. 13. 2017), and *Holbrook v. Lykes Bros. Steamship Co.*, 80 F.3d 777 (3d Cir. 1996).  None of these cases support allowing Dr. Glaspy's testimony concerning different types of alopecia or the potential cause of Ms. Kahn's hair loss.

In *Holbrook*, the court determined that the plaintiff's treating physician, who routinely relied on pathology reports in his practice, could testify regarding his diagnosis of the plaintiff despite his reliance on a pathology report and lack of expertise in pathology.  80 F.3d at 781-82. In contrast, Dr. Glaspy denies that he has ever performed a differential diagnosis on any of the "thousands of women with hair loss" that he claims experienced hair loss or hair thinning as a result of using hormone therapies.[4]  In addition, Dr. Glaspy has never treated a patient for hair loss, and  does not  understand how to differentiate between various different types of hair loss.[5] This lack of any relevant experience is fatal to the admissibility of Dr. Glaspy's proposed testimony.  *See Tsao v. Ferring Pharm., Inc.*, No. 4:16-CV-01724, 2018 WL 3649714, at *7 (S.D. Tex. Apr. 19, 2018) (excluding testimony where doctor "failed to demonstrate that her

---

[2] *Id.* at 209:20-24.
[3] *Id.* at 114:15 – 115:1.
[4] *Id.* at 114:15-115:13.
[5] *Id.* at 203:21-204:9; *See also* Rec. Doc. 10924-1, Memorandum in Support of Plaintiff's Motion to Exclude Testimony of John Glaspy, M.D. (hereinafter "Pl's Memo") at 6-7.

work as a clinical and academic oncologist involves, in any way, the treatment, diagnosis, or assessment of the issues for which she has designated herself as an expert.").

Sanofi's attempt to rationalize Dr. Glaspy's nonexistent methodology by citing to *In re: Xarelto* likewise misses the mark. Judge Eldon Fallon's refusal to exclude specific expert testimony was buttressed by the fact that plaintiffs' experts applied reliable methodologies to render their opinions. The same is not true in the instant case. Here, Dr. Glaspy readily admits that he has never performed a differential diagnosis, or undertaken any recognized methodology to assess a patient's underlying cause of hair loss. His opinions pertaining to different forms of alopecia, their causes, and what type of hair loss Ms. Kahn suffers from are all based solely upon on his own subjective beliefs.[6]

Similarly, in *Huss v. Gayden,* the defendant's expert provided a limited opinion merely pointing out that an inferential leap from plaintiff's expert was not supported by his review of the relevant literature. 571 F.3d 442, 455 (5th Cir. 2009). This is unlike Dr. Glaspy's opinions here where he never reviewed Dr. Tosti's diagnostic methodology and has never bothered to analyze the reports of permanent chemotherapy induced alopecia cited within his own literature review.[7] Additionally, Sanofi does not explain how Dr. Glaspy could have performed a reliable differential diagnosis or causation analysis to assess the underlying cause of Ms. Kahn's hair loss while remaining entirely uninformed of the basic diagnostic features used to differentiate different forms of alopecia.[8]

Since Dr. Glaspy admittedly lacks the knowledge, experience, and training to perform a differential diagnosis to assess the underlying cause of a patient's alopecia, and admits to never having done so, he should be precluded from offering opinions on the potential causes of PCIA,

---

[6] *See* Rec. Doc. 10924-1, Pl's Memo at 6-7 and 1
[7] Ex. A, Glaspy Dep., 1/9/2020, 206:10-17.
[8] *Id* at 200:6-204:9.

and because he has never personally examined Ms. Kahn, he should be precluded from offering opinions as to the cause of Ms. Kahn's PCIA.

## II.    Dr. Glaspy lacks the knowledge and experience to provide a regulatory opinion in this matter.

During the *Earnest* trial, plaintiff's counsel expressed concern with Dr. Glaspy's qualifications as an expert in labeling and FDA regulation.  In response, the Court noted and Sanofi's counsel agreed, that Dr. Glaspy was not being offered as an expert in the field of FDA regulation.[9]  This aligns with Dr. Glaspy's own statements that he does not hold himself out to be a regulatory expert and does not believe he is being called to testify as to such matters.[10]

Nonetheless, Sanofi claims that Dr. Glaspy should be permitted to "comment" on the FDA regulatory practices in the *Kahn* trial.  But Dr. Glaspy should not be permitted to do so since  he has failed to set forth any methodology for offering any such opinions and he readily admits he lacks such expertise.[11] Dr. Glaspy's report clearly states that he will "discuss" the FDA regulatory process, clinical trials, and FDA drug labeling concerns without ever providing any discussion or explanation as to what his actual opinions on these topics are, or the basis upon which he has formed them.[12]  As a result, his opinions should be excluded.

## III.    Dr. Glaspy's opinions on general causation should be excluded.

Dr. Glaspy's assertion that there is no reliable scientific evidence to establish Taxotere **causes** permanent chemotherapy induced alopecia (PCIA) is in direct contradiction with his opinion that case reports associated with other chemotherapy drugs alone are sufficient to create

---

[9] See *Earnest* trial transcript, 9/25/2019, 1979:2-24
[10] Ex. A, Glaspy Dep., 1/9/2020, 199:25-200:18; 203:21-204:9; 208:21-209:5.
[11] Ex. B, Glaspy Dep., 5/13/2020, 54:8-20 (Q. You're not a regulatory expert, correct? [objection] A. I wouldn't hold myself out as an expert. Q. You wouldn't hold yourself out to be a regulatory expert, correct? A. That's correct.); *see also*  Rec. Doc. 10924-1, Pl's Memo at 8-9.
[12] *Id.*

reasonable hypotheses of **alternative causes** of Ms. Khan's hair loss.[13]  Sanofi cannot have it both ways.    Dr. Glaspy admits that "cases of persistent alopecia have been reported with" a drug is not a statement of causation.[14] Case reports cannot be deemed sufficient to establish reasonable hypotheses of alternative causation, while a Bradford Hill analysis demonstrating a causal association between PCIA and Taxotere is deemed insufficient to establish general causation.  Sanofi's justification is  that it is not offering affirmative evidence to satisfy a burden of proof, as Plaintiff's experts are, but that misses the mark.[15]   Sanofi has alleged an affirmative defense that a drug other than Taxotere caused or may have caused Mrs. Kahn's PCIA, and on that allegation Sanofi has the burden of proof.   Dr. Glaspy's admissions, as set out in Plaintiff's initial briefing clearly demonstrate that Dr. Glaspy failed to attempt to establish whether any other, non-Taxotere, drug can cause PCIA.[16]

Dr. Glaspy's recognition   that "cases have been reported" is not a statement of causation, coupled with the fact that he offers no valid, reliable scientific  support for Sanofi's affirmative defense of other drugs causing Mrs. Kahn's PCIA, he should not be permitted to conflate case reports alone with causation in order to offer opinions on alternative causation.  If Sanofi intends to introduce evidence that other chemotherapy drugs are an alternative cause of Ms. Kahn's hair loss, then Sanofi's experts must put forth scientific evidence to support such claims based upon a reliable methodology.   To date, Dr. Glaspy, by his own admission, has undertaken no effort to assess whether a causal relationship exists between PCIA and any of the other alternate causes which he has set forth.[17]

---

[13] *See* Rec. Doc. 11101, Defendants' Opposition to Plaintiff's Motion to Exclude Expert Testimony of John Glaspy, M.D. (hereinafter "Defs' Opp") at 6-7.
[14] Ex. A, Glaspy Dep., 1/9/2020, 83:7-84:9; 86:5-13.
[15] *See* Rec. Doc. 11101, Defs' Opp at 16.
[16] Ex. B, Glaspy Dep., 5/13/2020, 171:11-180:17.
[17] Rec. Doc. 10924-1, Pl's Memo at 13.

**a.  Dr. Glaspy's opinion that Taxotere does not cause PCIA is not reliable.**

Despite Sanofi's assertions to the contrary, Dr. Glaspy doesn't merely call into question the sufficiency of Plaintiff's evidence of general causation, he opines that "it is impossible to conclude that Taxotere causes permanent alopecia."[18]   This opinion is a direct attack on the general causation opinions set forth by Plaintiff's experts.

However, Dr. Glaspy's attack on general causation is not supported by any reliable methodology and is instead premised upon the impermissible litigation driven analysis of a former Sanofi employee.

**b.  Dr. Glaspy's alternate causation opinions must be excluded as they are not premised upon any reliable scientific methodology.**

This Court has previously recognized that Plaintiff's experts have set forth evidence to establish a causal link between Taxotere and PCIA which is sufficient to support general causation.  Plaintiff's general causation opinion is premised upon a statistically significant meta-analysis of clinical trials, as well as an extensive Bradford Hill analysis, which demonstrate a causal link between Taxotere and PCIA.  Needless to say, Plaintiff's general causation opinions are premised upon much more than that which Dr. Glaspy relies- mere case reports

By way of contrast, Dr. Glaspy offers numerous alternative causation theories pertaining to at least fifteen other chemotherapy drugs, without offering any support that any of the fifteen drugs are causally related to PCIA.[19]   Without evidence sufficient to establish that any of the fifteen drugs can cause PCIA, Dr. Glaspy should not be permitted to confuse the jury by insinuating that these drugs create reasonable hypotheses of alternate causation.  Dr. Glaspy's inability to rule in or rule out Taxotere, or any other chemotherapy drug as the underlying cause of Ms. Kahn's hair loss, is fatal to his ability to offer such opinions.

---

[18] Ex. A to Pl's Memo, Glaspy Report, 4/29/2020 at 25.
[19] Ex. A, Glaspy Dep., 1/9/2020, 206:10-207:11.

Furthermore, Dr. Glaspy lacks the ability to explain a nexus between Tamoxifen, other medical conditions, and the specific permanent hair-loss suffered by Plaintiff. Dr. Glaspy provides no methodology whatsoever for his conclusion that Tamoxifen can cause persistent hair loss beyond stating that he believes he has observed it in his own patient population.[20] This subjective belief is not sufficient to meet the rigors of *Daubert*, especially considering that Dr. Glaspy never performed any differential diagnosis to determine the cause of his patients purported hair loss.[21] Additionally, Dr. Glaspy opines that other medical conditions may be responsible for Ms. Kahn's hair loss, but fails to cite to any literature in support of his opinion and fails to employ any methodology to assess such causation in relation to any medical condition.[22]

Even if Dr. Glaspy could overcome the first hurdle of establishing that Tamoxifen or any of Ms. Kahn's medical conditions can cause persistent hair loss, which he demonstrably cannot do as he failed to apply any reliable methodology to assess such potential alternate causes, Dr. Glaspy would still be precluded from opining as to the specific cause of Ms. Kahn's hair loss.[23] By Dr. Glaspy's own admissions he cannot differentiate between the various forms of alopecia and therefore is incapable of performing a differential diagnosis to rule in or rule out the underlying cause of Ms. Kahn's alopecia.[24] As a result, Dr. Glaspy's opinions pertaining to alternate causation and specific causation must be stricken. Because Sanofi has failed to establish a link between Plaintiffs' symptoms and Dr. Glaspy's alternate causation and specific causation opinions, Sanofi cannot meet its burden to show that Dr. Glaspy's causation opinions are reliable.

---

[20] *See* Rec. Doc. 10924-1, Pl's Memo at 14.
[21] *Id*.
[22] *Id.* at 15.
[23] *Id.* at 10-15.
[24] *Id*.

**IV.    Dr. Glaspy should not be permitted to "discuss" opinions without offering the basis for such conclusion within his report.**

Sanofi goes to great lengths to suggest that Dr. Glaspy "will discuss" topics are well supported and referenced within his report.  However, based on his own admissions, Dr. Glaspy admits he fails to always articulate the basis of his "will discuss" opinions.[25]  Without setting forth the basis for his "will discuss" opinions and the citations upon which he relies to form such opinions, these "will discuss" topics must be excluded.[26]  The purpose of an expert report is not to provide a roadmap of what the expert's testimony on the stand might be, but rather the purpose of the report is to set forth the basis upon which opinions are founded.  When an expert fails to properly disclose his opinions under FRCP 26(a)(2)(B), such as generally stating he will discuss a topic rather than setting forth the basis for such an opinion, the unsupported opinion must be excluded under FRCP 37(c).[27]

## CONCLUSION

Despite having a wide of array of experts, ranging in specialties from FDA regulations to specific causation at its disposal, Sanofi, during the *Earnest* trial, chose to call upon one man, Dr. John Glaspy. Simply put, Dr. Glaspy serves as Sanofi's jukebox expert.  Sanofi puts in its coins and Dr. Glaspy sings whatever song Sanofi wants, even if he is not qualified to do so.   Dr. Glaspy's willingness to proffer opinions which he is not qualified to give is a perfect reason for the necessity of the Court's gatekeeper role: an impeccably credentialed expert who offers opinions on topics he is wholly unreliable to opine on such as the causation and regulatory issues presented by this case.  Because he cannot provide any methodology—much less a reliable one—to support his general causation opinions, specific causation opinions or regulatory

---

[25] Ex. B, Glaspy Dep., 5/13/2020, 74:14-79:2 (Dr. Glaspy admits that he failed to cite to information pertaining to the efficacy and side effects of older chemotherapy regimens which he says "he will discuss").
[26] *See* Rec. Doc. 10924-1, Pl's Memo at 17-20.
[27] *Id.*

opinions, his opinions on these matters must be stricken.  Furthermore, any opinions which he says he "will discuss" without setting forth the basis of his opinions must likewise be stricken. In other words, Dr. Glaspy should not be allowed to continue to play songs to which he doesn't even know the lyrics to.

Dated: September 24, 2020

Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*


*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/ Karen B. Menzies*
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*


*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

Emily C. Jeffcott
Morgan & Morgan
700 S. Palafox Street, Suite 95
Pensacola, Florida 32505
Phone: (850) 316-9074
Fax: (850) 316-9079
ejeffcott@forthepeople.com

Andrew Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Phone: (212) 397-1000
hunter@napolilaw.com

Genevieve Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
gzimmerman@meshbesher.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS