UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
IN RE:  TAXOTERE (DOCETAXEL)      *     16-MDL-2740
PRODUCTS LIABILITY LITIGATION     *
                                  *
                                  *     Section N
                                  *
Relates To All Cases              *     September 24, 2020
                                  *
```
*******************************************************************

REPORTER'S OFFICIAL TRANSCRIPT OF THE

**STATUS CONFERENCE HELD THROUGH ZOOM**

BEFORE THE HONORABLE MICHAEL NORTH,
UNITED STATES MAGISTRATE JUDGE.

*******************************************************************

**APPEARANCES:**

**For the Plaintiffs:**

| | |
|---|---|
| Dawn Barrios, Esq. | Karen Menzies, Esq. |
| Palmer Lambert, Esq. | Chris Coffin, Esq. |
| Andrew Lemmon, Esq. | Jason Fraxedas, Esq. |

**For the Defendants:**

| | |
|---|---|
| Geoff Coan, Esq. | Julie Park, Esq. |
| Kathleen Kelly, Esq. | Michael Suffern, Esq. |
| R. Clifton Merrell, Esq. | Brenda Sweet, Esq. |
| Douglas Moore, Esq. | John Olinde, Esq. |

**REPORTED BY:**    Mary V. Thompson, RMR, FCRR
500 Poydras Street, Room B-275
New Orleans, Louisiana  70130
(504)589-7783

**═ OFFICIAL TRANSCRIPT ═**

                    **P R O C E E D I N G S**

(Call to order of the court.)

THE COURT: Are we waiting on anyone?

MS. MENZIES: Don't think so. Good morning.

THE COURT: All right. Good morning. I know Andrew is going to handle this for the plaintiffs. Who is going to handle it for Sandoz?

MR. MERRELL: Cliff Merrell, Your Honor. Good morning.

THE COURT: All right. It's been a long time since I've dealt with this issue. The last time I dealt with it, I was practicing.

And I understand the plaintiffs' reaction and concern about the nature of these changes, but having read the -- all of cases and the case law that was cited to me by both sides, I think that the -- I think that the appropriate guidance or the appropriate approach that the Court should take in this case is to take the broader reading of Rule 30(e) and to allow the changes to stand in the errata sheet. Obviously -- or maybe not obviously -- those changes will be part of the record but so will the original testimony.

So to the extent that plaintiffs want to draw to the attention of either the Court or the jury inconsistencies between the original testimony and the errata sheet, they'll be able to do that.

The request was to strike the errata sheet. Nobody has

**OFFICIAL TRANSCRIPT**

1  suggested that the original testimony should be stricken and it
2  won't be.  So the record will contain both the original testimony
3  as well as the changes made in the errata sheet.  Okay?
4          Andrew, do you have anything on that?
5          MR. LEMMON:  Yes, Your Honor.  And Jason may have
6  something to add.
7          But the one point that I would like to make is that
8  these are essential issues to our expert testimony to some
9  extent, and we should be allowed to cross-examine the witness on
10 the changed answers.  Not only what the changes are specifically
11 themselves, but also the basis for the change, and really without
12 the fear of privilege.  Because obviously it's like basically
13 asking the question, then having the lawyer talk to them about
14 the answer, and then changing the answer on the record without it
15 really appearing that way.
16         So we would like to explore both of those things
17 through this witness, and I think --
18         THE COURT:  In what context?  Are you asking for an
19 additional deposition or are you talking about cross-examination
20 at trial?
21         MR. LEMMON:  I'm talking about a deposition at the
22 expense of the defendant who wants to change the record.
23         THE COURT:  I agree that you're entitled to additional
24 deposition testimony, particularly because, as I understand it,
25 this witness was presented as a 30(b)(6) witness, as the company

**OFFICIAL TRANSCRIPT**

1 itself.
2    MR. LEMMON:  That's correct.
3    THE COURT:  I think because of the nature of the
4 changes -- and they are substantive changes -- there's no doubt
5 in my mind that you're entitled to additional testimony to
6 explore why the changes were made, and that additional deposition
7 testimony should be at the expense of the party making the
8 substantive changes.
9    I guess your concern is, when you ask the witness why
10 she changed her answer, that you'll be met with a -- you'll be
11 met with an objection and an instruction not to answer because
12 she changed the answer at the instruction or the advice of
13 counsel.
14    MR. LEMMON:  That's correct.  Because I don't otherwise
15 have -- I mean, if I could cross-examine the lawyer and ask him
16 why he made those recommendations for the changes, then, you
17 know, that could cover it.  But, I mean, I think that I should --
18 there should not be a privilege attached to answering the
19 question, not only that's been on the floor and answered, but
20 this has now been transcribed and recorded and so it's
21 literally -- in a deposition you can never talk to a witness
22 while a question is pending on the floor.  This is even further
23 than that.
24    THE COURT:  Well, no one has given me any authority one
25 way or another to suggest that you can pierce the attorney-client

00:24:00 (line 5)
00:24:18 (line 10)
00:24:33 (line 15)
00:24:54 (line 20)
00:25:10 (line 25)

**OFFICIAL TRANSCRIPT**

1  privilege under these circumstances, and it may be that you
2  are -- that you are stuck with that set of circumstances and
3  that's what you have to present to the jury.
4       MR. LEMMON:  Okay.
5       THE COURT:  That a witness testified under oath
6  truthfully at a deposition, and after the deposition was finished
7  and transcribed, the lawyer advised the witness to change their
8  testimony for reasons that no one wants to explain to you.  You
9  know, you can do something with that at trial if that's what you
10 are left with.
11      But if you want to try to provide me with authority to
12 suggest sort of preemptively that I can give an instruction that
13 the witness can testify about conversations that she had with
14 counsel, you're free to give that to me.  But otherwise I'll tell
15 you that if that is the answer, "I met with the lawyers after I
16 got the deposition transcript," and that was it, I mean, you are
17 at least entitled to that information.
18      To claim the privilege, they would have to establish
19 that the witness did in fact meet with counsel, and that the
20 reasons for the changes -- or the reasons for the changes in the
21 errata sheet arose from those conversations.  They would have to
22 establish that in order to establish that there is a privilege in
23 the first instance.
24      In the absence of authority to support your position
25 that they should not be able to claim a privilege, I would

**OFFICIAL TRANSCRIPT**

1  probably stop them there, and then that's what you would be left
2  with.  You would be left with two different versions of testimony
3  given under oath and a lawyer in the middle, and you can do with
4  that whatever you will do with it at trial.
5              MR. LEMMON:  Okay.  Thank you, Your Honor.
6              THE COURT:  Unless you can find authority to give me to
7  go further than that.
8              MR. LEMMON:  We'll submit something prior to the
9  deposition.
10             THE COURT:  Okay.  That's what I would suggest.
11             All right.  Anything else from Sandoz?
12             MR. MERRELL:  May I respond, Your Honor?
13             THE COURT:  Sure.
14             MR. MERRELL:  Good to see you again, Your Honor.
15             THE COURT:  Yeah.  And I'm not wearing a tie because I
16 didn't think I was going to be on Zoom.  And I know -- I
17 appreciate everybody is all up to speed on being dressed
18 appropriately now so I apologize.
19             MR. MERRELL:  No, no, no.  It's your court so you can
20 do whatever you want.
21             THE COURT:  I don't want there to be two sets of rules
22 for everyone.
23             MR. MERRELL:  No, I don't mind wearing a suit.
24             Your Honor, I appreciate your ruling -- or your
25 decision with respect to not striking the errata.  I would just

**OFFICIAL TRANSCRIPT**

1  say that -- and we presented this in our brief -- that it's
2  really not a witness changing an answer from yes to no, it's
3  really the development or evolution of discussions with counsel
4  in determining about -- through the course of the deposition that
5  in fact some of the issues that were raised by counsel in
6  questioning were better addressed by Mr. Seitz, who was deposed
7  two weeks later and who was always going to be deposed.  And we
8  had those discussions during -- sorry.  I see you're trying
9  to interrupt and I'm going to let you do that.
10           THE COURT:  I understand that.  Normally those sorts of
11 corrections just happen in the course of a deposition and the
12 transcript will reflect those changes later in the transcript.  I
13 rarely see the situation where the errata sheet after the fact
14 comes back and substantively changes testimony that was given
15 without hesitation, because this witness did not hesitate to
16 answer those questions.
17           And while I think it's irregular, having read the cases
18 I think that the right solution is to let both the original
19 testimony and the errata sheet stand, and plaintiffs' counsel
20 can, you know, make whatever use of those two documents that they
21 can make use of.  And I also think, as I said, that the case law
22 is also clear that they're entitled to another round of
23 questioning on those changes.
24           MR. MERRELL:  Understood, Your Honor.
25           But I just wanted to explain that Mr. Seitz -- he did

**OFFICIAL TRANSCRIPT**

1  address all those questions to the plaintiffs' satisfaction in
2  the next deposition, and we clearly had topics that covered this
3  point.  And that if you look at the original deposition, at the
4  end of the deposition she clearly said that she would have to
5  defer to Mr. Seitz on several of the points.  And then Mr. Seitz
6  addressed those.
7       And there were comprehensive discussions following the
8  deposition with plaintiffs' counsel where they submitted
9  potential topics, and I provided those to Your Honor.  And the
10 very first topic was the exact issue they're raising here, which
11 is U.S. regulatory interaction communications with --
12           THE COURT:  What point are you trying to make?
13       Are you trying to talk me out of something that I've
14 already said I was going to do?
15           MR. MERRELL:  I don't know that I -- well, yes.
16       With respect to the deposition, I don't see what an
17 additional deposition would accomplish given that these answers
18 have been provided by Sandoz witnesses for the 30(b)(6) --
19           THE COURT:  The cases that you gave me very clearly
20 stand for the proposition that if a Court is going to allow
21 substantive changes to be made in an errata sheet, the Court is
22 also going to allow the questioning lawyer to question the
23 witness on those changes.
24       You didn't need to make those changes on the errata
25 sheet based on the argument that you've made to me.  The

**OFFICIAL TRANSCRIPT**

1  situation was adequately explained later in the deposition,
2  according to what you said in your letter brief as well as what
3  you just said this morning, so I question why the extra step was
4  taken to make the changes in the errata sheet.
5      But now that they've been made, they get an opportunity
6  to ask the witness why that happened.  And it may be an exercise
7  in futility, but it's going to happen.
8      MR. MERRELL:  I understand, Your Honor.  My point is
9  that, you know, the explanation was made in the errata because we
10 didn't want a record that was inaccurate.  Ms. Rau wanted the
11 opportunity to review her deposition which is permitted under the
12 rules and --
13     THE COURT:  I think if the shoe were on the other foot,
14 you'd be making the same argument that Andrew is making.  I don't
15 know a lawyer who gets an errata sheet that makes substantive
16 changes in testimony that's not going to react the same way as
17 the plaintiffs did in this case.  And I think --
18     MR. MERRELL:  Understood, Your Honor, but --
19     THE COURT:  And I think they are entitled to under the
20 circumstances.
21     MR. MERRELL:  Understood, Your Honor.
22     I was just making the point that it was clearly known
23 in the deposition what the gap in her knowledge was, and we
24 presented a witness to address those issues, so I don't really
25 know what the -- what would be gained by asking her.  She just

**OFFICIAL TRANSCRIPT**

```
 1  felt it was important to review her deposition and correct any
 2  changes where it was something where she really couldn't speak to
 3  on behalf of the company, which is actually a little different.
 4          THE COURT:  She will get to explain that to the
 5  plaintiffs in the deposition.  All right?
 6          MR. MERRELL:  Okay.  Thank you, Your Honor.
 7          MR. LEMMON:  Do we have a deadline to take the
 8  deposition since we're outside of the discovery period?
 9          THE COURT:  How are you going to do it?  Are you going
10  to do it remotely?
11          MR. LEMMON:  I mean, if everybody's remote, that's
12  fine.
13          THE COURT:  I think that's the way you ought to go.
14  This is a simple, straightforward exercise that can be done
15  remotely.  She's in Europe, isn't she?
16          MR. LEMMON:  Right.  I think she's in Germany.
17          MR. MERRELL:  I'm sorry, Your Honor.  Just to give some
18  background, the witness is actually in Europe, which is part of
19  the challenge, and certainly being live would be very
20  challenging.  Even doing it remotely is challenging, but we -- we
21  did bring her to New York to accommodate everyone, but we would
22  not be able to do that for another deposition.
23          THE COURT:  Let's aim to have it done in the next two
24  weeks and we'll try to set it up remotely.
25          MR. LEMMON:  As long as everybody's in the same place.
```

**OFFICIAL TRANSCRIPT**

1   If the defendants are going to be with her in person, then I
2   think we should be allowed to be with her.
3               THE COURT:  I said that it should be done remotely.
4   This is a question-and-answer session.  There are no documents.
5   No one needs to be present in the room with the witness to answer
6   these questions.  I anticipate it will be a short deposition.  So
7   you-all set it up remotely.  Let's try to get it done in the next
8   two weeks.
9               MR. LEMMON:  All right.  Thank you.
10              MR. MERRELL:  Your Honor, just one point of logistics.
11  I'll certainly endeavor to get the deposition scheduled as soon
12  as I can.  Ms. Rau did leave Sandoz as a company, so I have to --
13  there may be some challenge to be able to schedule it.  I wanted
14  to make Your Honor aware of that in terms of --
15              MR. LEMMON:  We'll work with you, Cliff.
16              MR. MERRELL:  Okay.  So it may not be two weeks,
17  because she works for another company now and there are
18  challenges in terms of whether she can take time away to do this,
19  but I'll do my best.
20              THE COURT:  Well, that's why I didn't order it to take
21  place in two weeks.  I said let's try to all work together to try
22  to make that happen.
23              MR. MERRELL:  Okay.  Then we will do that.
24              THE COURT:  Thank you-all.
25              Andrew, if you are going to get me some authority on

**OFFICIAL TRANSCRIPT**

```
 1  that other issue, don't wait until the day before the deposition.
 2  Okay?
 3          MR. LEMMON:  (No response.)
 4          THE COURT:  Andrew?
 5          MR. LEMMON:  I'm frozen.  Is anybody --
 6          MS. MENZIES:  We can hear you but your video is frozen.
 7          THE COURT:  Andrew, now you are muted.
 8                       (A pause in the proceedings.)
 9          THE COURT:  All right.  Will someone get to Andrew --
10          MS. MENZIES:  Sure.
11          THE COURT:  -- and let him know that I would like that
12  as well in advance of the deposition as possible?
13          MS. MENZIES:  Yes.
14          THE COURT:  All right.  Thank you-all.
15          MR. LAMBERT:  Your Honor, this is Palmer Lambert for
16  plaintiffs.
17          We did submit a second agenda item in our email
18  yesterday.  It really was a status issue.  We both submitted
19  position statements on expanding CMO-7 to include some general
20  discovery against the non-trial defendants, and those letter
21  briefs were submitted in July, I believe.
22          And so that's the reason why you have an audience here
23  from Mr. Suffern and Mr. Coan and Ms. Kelly for those defendants.
24          We're not really intending on arguing it, obviously.
25  We just wanted to remind the Court that those papers were
```

**OFFICIAL TRANSCRIPT**

1   pending.
2            THE COURT:  Okay.  You know, I do recall having a
3   conversation along those lines with Judge Milazzo.  This hasn't
4   happened very often in the last few months, but I think that that
5   matter may have slipped through the cracks on my end.  So what I
6   will do is I will go back and review those letter briefs, and
7   I'll just get you-all -- unless I have questions, I'll get
8   you-all a response as quickly as I can.
9            MR. LAMBERT:  Thank you, Judge.
10           THE COURT:  Thank you-all.
11           MR. COFFIN:  Thank you.
12           MR. LAMBERT:  Thank you.
13                             (Proceedings adjourned.)
14
15                       * * *
16                     **CERTIFICATE**
17        **I hereby certify this 25th day of September, 2020,**
18   **that the foregoing is, to the best of my ability and**
19   **understanding, a true and correct transcript of the proceedings**
20   **in the above-entitled matter.**
21
22                              */s/ Mary V. Thompson*
23                          _____
                               **Official Court Reporter**
24
25

00:35:38 (line 5)
00:35:54 (line 10)

**OFFICIAL TRANSCRIPT**