1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4    IN RE:  TAXOTERE (DOCETAXEL)     *        16-MD-2740
     PRODUCTS LIABILITY LITIGATION    *
5                                     *        Section H
                                      *
6    Relates to:  All Cases           *        October 16, 2020
                                      *
7    * * * * * * * * * * * * * * * * *

8

9                    SHOW CAUSE HEARING BEFORE
              THE HONORABLE JANE TRICHE MILAZZO
10                 UNITED STATES DISTRICT JUDGE

11

12   Appearances:

13

14   For the Plaintiffs:          Barrios Kingsdorf & Casteix, LLP
                                   BY:  DAWN M. BARRIOS, ESQ.
15                                 701 Poydras Street, Suite 3650
                                   New Orleans, Louisiana 70139

16

17   For the Plaintiffs:          Gainsburgh Benjamin David Meunier
                                     & Warshauer, LLC
18                                 BY:  M. PALMER LAMBERT, ESQ.
                                       CLAIRE E. BERG, ESQ.
19                                 1100 Poydras Street, Suite 2800
                                   New Orleans, Louisiana 70163

20

21   For the Defendants:          Irwin Fritchie Urquhart
                                     & Moore, LLC
22                                 BY:  KELLY E. BRILLEAUX, ESQ.
                                   400 Poydras Street, Suite 2700
23                                 New Orleans, Louisiana 70130

24

25

1    Appearances:

2

3    For the Defendants:          Greenberg Traurig, LLP
                                   BY:  NICHOLAS A. INSOGNA, ESQ.
                                   One International Place
4                                  Suite 2000
                                   Boston, Massachusetts 2110
5

6    For the Defendants:          Tucker Ellis, LLP
                                   BY:  BRENDA A. SWEET, ESQ.
7                                  950 Main Avenue, Suite 1100
                                   Cleveland, Ohio 44113
8

9    Also Participating:          J. Christopher Elliott, Esq.
                                   Jennifer Nolte, Esq.
10                                 Sofia E. Bruera, Esq.
                                   Markita Hawkins, Esq.
11                                 Keith Altman, Esq.
                                   Matthew Vinson, Esq.
12                                 Kaitlyn Syring Neufeld, Esq.
                                   Kyle Benkie, Esq.
13                                 Pete V. Albanis, Esq.
                                   R. Scott Pietrowski, Esq.
14                                 Stephen E. Roth, Esq.
                                   Robin Myers, Esq.
15                                 Steven D. Davis, Esq.
                                   Trevor B. Rockstad, Esq.
16                                 Travis R. Walker, Esq.
                                   Jason Long, Esq.
17                                 Jennifer S. Domer, Esq.
                                   Meghan Hennessy, Esq.
18

19   Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, Room B-275
20                                 New Orleans, Louisiana 70130
                                   (504) 589-7778
21

22

23
     Proceedings recorded by mechanical stenography using
24   computer-aided transcription software.

25

**PROCEEDINGS**

**(October 16, 2020)**

1
2
3              THE COURT:  I have three separate lists that have

4    been provided to me, the first being the Noncompliance

5    Dismissal List, which we have two names.  One is docket number

6    19-13868 and docket number 17-13784.  In those two cases, I

7    understand that the clients have stipulated to dismissal

8    pursuant to PTO 87.

9              MS. BARRIOS:  There's one more that was filed

10   yesterday.  It's Nannie Maldonado, M-A-L-D-O-N-A-D-O, record

11   doc. 11304.

12             THE COURT:  Thank you.  Those matters are dismissed

13   with prejudice.

14                  The second list I have is the Noncompliance

15   Declarations List.  In these instances the Court has been

16   informed by counsel that they were unable to reach the various

17   plaintiffs, and in these instances the Court finds that counsel

18   is unable to contact their client.  Accordingly, the Court

19   notes that these clients apparently have failed to meet the

20   obligations in this litigation to keep counsel apprised of

21   their whereabouts or to respond to counsel's inquiries.  As a

22   result, these matters are dismissed with prejudice.  I'm going

23   to go quickly through the docket numbers:

24                  20-1426; 19-14053; 19-14549; 20-00682; 18-12793;

25   20-01136; 19-13861; 17-15566; 20-00713; 20-01083; 20-00936;

11:05   1    19-13863; 19-13911; 20-01282; and last is 20-0761.

2                      These matters are dismissed with prejudice.

3              **MS. BARRIOS:**  Your Honor, we have two more to add to

4    the Noncompliance Declarations List.

5              **THE COURT:**  Okay.

6              **MS. BARRIOS:**  The first is Myrtle Barnes,

7    B-A-R-N-E-S, and the record doc. is 11299.  The last one is

8    Vera Sue Green, record doc. 11298.

9              **THE COURT:**  Those matters are dismissed with

10   prejudice for the same reasons previously articulated.

11                     The final list that's been provided to the Court

12   is the Noncompliance Statement List.  We have 17 names on that

13   list.  In these cases plaintiffs' counsel advises the Court

14   that despite repeated requests to provide information, the

15   clients have failed to do so.  Accordingly, the Court finds

16   that the clients have failed to meet their obligations in this

17   litigation and these matters dismissed with prejudice.  The

18   docket numbers for those cases are:

19                     19-12686; 18-13516; 19-14397; 19-14535;

20   20-01134; 19-14523; 19-14425; 19-14556; 18-04893; 19-09389;

21   20-00603; 17-16532; 20-01377; 17-10093; 20-01279; 17-11429; and

22   the final is 20-01159.

23                     Are there any to add to this list, Ms. Barrios?

24             **MS. BARRIOS:**  Yes, ma'am.  We have four to add.

25   First is Carolyn Young.  It's record doc. 11296.  The second is

11:08

1  Donna Addison, A-D-D-I-S-O-N, record doc. 11302.  The third is
2  Dianne Hussey, H-U-S-S-E-Y, record doc. 11294.  The last is
3  Cleola Stanberry, record doc. 11295.
4          THE COURT:  Okay.  Those matters I dismiss with
5  prejudice for the same reasons previously articulated by the
6  Court.
7              Now we will proceed to the Noncompliance List.
8  I did note that as to the Noncompliance List, number 32,
9  beginning there we have some that are just one per law firm.  I
10 think that it makes more sense that we proceed with those first
11 so that these people can be excused.  Is there any problem with
12 that?
13         MS. BERG:  I think, Your Honor, there was an
14 agreement that we would handle the Bachus & Schanker cases
15 first because that attorney has a trial that's going on, but
16 then maybe we could get to those single --
17         THE COURT:  Well, they are right after.  Okay.  It's
18 just that Bachus & Schanker always has a lot.
19         MS. BERG:  Yeah.  I think that's why that they are
20 ahead of those firms with just one single case on the list this
21 time.
22         THE COURT:  Okay.  Let's go.  Louvenia Barfield,
23 docket number 19-13730, Sanofi and 505.  Who is going to take
24 that?
25         MR. INSOGNA:  I'll take that one, Your Honor.  I'll

11:09

1    be handling the joint cases today.  This is a case where we

2    have no before photographs.

3           MR. ELLIOTT:  Your Honor, it's Chris Elliott with

4    Bachus & Schanker.  This is a case we are just asking for an

5    extension.  The client is making diligent efforts to look for

6    the pictures.  She is trying more family members.  She just

7    asked that I come to court today and ask for more time.

8           THE COURT:  I'm going to give you 15 days.

9           MS. BRILLEAUX:  Good morning.

10          THE COURT:  Mary Cooper.

11          MS. BRILLEAUX:  Yes.  This is Kelly Brilleaux for

12   Sanofi.  The next case is Mary Cooper and also no before

13   photos.

14          MR. ELLIOTT:  The same, Your Honor.  She would like

15   to request a brief extension to look for before photos.

16          THE COURT:  I'll grant 15 days.  This has been filed

17   for a year, but okay.

18              Next one, Jacqueline Dickens.

19          MS. BRILLEAUX:  Yes, Your Honor.  This is another no

20   before photos.

21          MR. ELLIOTT:  The same request, Your Honor.  She is

22   looking diligently.  She looked on old devices, asking family

23   and friends.  She is doing everything she can.  She just asks

24   for more time.  This one was filed in November.

25          THE COURT:  The Court is going to grant 15 days.

11:11

1                    Okay.  Let's go to Cheryl DiDonato.

2            **MS. SWEET:**  This is Brenda Sweet, Your Honor.  I will

3    be presenting the 505 cases today.  In this case no PFS has

4    been submitted, no declaration, no proof of use, no

5    authorizations.  This was listed on the Noncompliance List back

6    in July.

7            **THE COURT:**  I'm really having trouble hearing you,

8    Ms. Sweet.  Are you telling me nothing has been submitted?

9            **MS. SWEET:**  That's correct, Your Honor.

10           **THE COURT:**  All right.  Mr. Elliott.

11           **MR. ELLIOTT:**  We are going to concede dismissal on

12   this one, Your Honor.  We have made diligent attempts and so at

13   this point we are fine with dismissal.

14           **THE COURT:**  You know you could have filed that

15   declaration.

16           **MR. ELLIOTT:**  Yes, Your Honor.

17           **THE COURT:**  This matter is dismissed with prejudice.

18           **MR. ELLIOTT:**  That was supposed to have been done.

19   We did file many, many dismissals before today.  I apologize.

20   We are in the middle of a trial.  There's a few today that we

21   are going to go ahead and dismiss, actually, so I apologize up

22   front on that.

23           **THE COURT:**  Okay.  Endya Fitch.

24           **MS. BRILLEAUX:**  Yes, Your Honor.  This is no CMO 12A

25   process initiated.

11:12

1        **MR. ELLIOTT:**  We did initiate this process in

2  September.  We requested products ID at the facility.  We are

3  waiting on the product ID response from the facility at this

4  point.  We would like to continue with the CMO 12 process until

5  we find that there is no product ID.

6        **THE COURT:**  Okay.  I'm going to order you within

7  seven days to provide confirmation of that to defense counsel.

8        **MS. BRILLEAUX:**  Thank you, Your Honor.

9        **MR. ELLIOTT:**  Yes, Your Honor.

10        **THE COURT:**  Thank you.  Okay.  Amber Flores.

11        **MS. BRILLEAUX:**  Yes, Your Honor.  This is no before

12  photos.

13        **MR. ELLIOTT:**  The same request, Your Honor.  We

14  request --

15        **THE COURT:**  15 days.

16        **MS. BRILLEAUX:**  Your Honor, the next one is

17  Shirley Ford, also no before photos.

18        **THE COURT:**  The Court is going to grant this.  The

19  same request?

20        **MR. ELLIOTT:**  This one we are asking for 30,

21  Your Honor.

22        **THE COURT:**  Why?

23        **MR. ELLIOTT:**  Well, we think she is in the hospital,

24  so we would ask for at least 30 on her.

25        **THE COURT:**  Okay.  The Court is going to grant

11:13

1    30 days in light of plaintiff's hospitalization.  Okay.

2                    Lisa Gibbs.  Ms. Sweet.

3            **MS. SWEET:**  Your Honor, the deficiency in this case

4    is no before photos.

5            **THE COURT:**  Okay.

6            **MR. ELLIOTT:**  We are requesting 15 days.

7            **THE COURT:**  The Court is going to grant 15 days.

8            **MR. ELLIOTT:**  Your Honor, Wanda Gibson is a

9    dismissal.  She is declining as of this week to participate, so

10   we would ask for a dismissal.

11           **THE COURT:**  Okay.  This matter is dismissed with

12   prejudice.  Thank you.

13                    Joyce Glover.

14           **MS. BRILLEAUX:**  Yes, Your Honor.  This is a case that

15   was rolled over from the last hearing in August.  It's no proof

16   of use.  You rolled this over.  There was no proper

17   documentation, being a medical record or a billing record.

18           **THE COURT:**  Ms. Brilleaux, I'm really having trouble

19   hearing you.  I don't know if it's just a bad connection.

20           **MS. BRILLEAUX:**  Well, let me see if I can -- is that

21   any better?

22           **THE COURT:**  It is, actually.

23           **MS. BRILLEAUX:**  Okay.  I'll try and speak clearly.

24   There was no proof of use in the form of a medical record or a

25   billing record.  Nothing has changed since the last hearing, so

11:15  1    we think this is ripe for dismissal.

2         THE COURT:  Mr. Elliott.

3         MR. ELLIOTT:  I got muted somehow.  I think the proof

4    of use came in another form or was not a medical record.  It

5    was like a letter.  We still stand by that that would be

6    appropriate proof of use even though we don't have a medical

7    record per se.  I guess we are still opposing dismissal on this

8    one.

9         THE COURT:  Well, let me ask this:  A letter from

10   whom?  From a prescribing oncologist?

11        MR. ELLIOTT:  I'll see if I can pull it up.

12        MS. BRILLEAUX:  Your Honor, we did discuss this at

13   the last hearing.  I think Your Honor said in the transcript on

14   the record that a proof of prescription is not the same as a

15   proof that the plaintiff was actually administered the product,

16   and that's what's required.

17        THE COURT:  So is this what was submitted last time

18   in court?

19        MS. BRILLEAUX:  Yes, Your Honor.

20        MR. ELLIOTT:  It was the same argument.  It's the

21   same argument, the same proof.  There is mention from her

22   provider that she took the Taxotere.  We think that's enough.

23   I was trying to open this document in MDL Centrality so I could

24   read it to you on the record, but it's not allowing me to open

25   the document in Centrality.

11:16

1    **THE COURT:**  Okay.  Listen.  This is what I need to

2    do.  I need you to submit that to me so that I can see it.  I'm

3    not inclined to think that a letter from whoever is sufficient

4    at all.  I want that submitted to me within seven days.

5    Defendants can respond, but I will tell you I don't want

6    voluminous briefing.  A letter brief is fine from each of you,

7    and I'm telling you not more than a page.  Okay.

8            **MR. ELLIOTT:**  That's fine.  We'll get that done.

9            **MS. BRILLEAUX:**  Thank you, Your Honor.

10           **THE COURT:**  All right.  The next one is Vera Gooden.

11           **MS. SWEET:**  Yes, Your Honor.  The deficiency is that

12   the photographs are undated and the before photos appear to be

13   more than five years before chemotherapy.

14           **MR. ELLIOTT:**  Two photos were uploaded taken in 2012

15   and 2014.  She began her chemotherapy in 2015.  It's our

16   position that they are qualified.  We sent a notice on

17   October 2 to defense counsel saying it had been cured.

18           **THE COURT:**  Are they dated?  Are they dated?

19           **MR. ELLIOTT:**  It's my understanding.  It's my

20   understanding they are dated.  The note I have here is that

21   they were taken in 2012 and 2014.

22           **THE COURT:**  When were they dated?  When were they

23   dated?

24           **MR. ELLIOTT:**  Goodness.  I'm sorry, Your Honor.  I do

25   not have that information in front of me.  I apologize.

11:18

1    **MS. SWEET:**  Your Honor, one more note here.  One of

2  the photos, you cannot see the plaintiff's hairstyle clearly in

3  the photograph.

4    **MS. BARRIOS:**  Your Honor, may Ms. Berg speak with

5  counsel to try to figure it out and get back to you?

6    **THE COURT:**  Please.  I'm going to ask you to work

7  with Ms. Barrios.

8    **MR. ELLIOTT:**  No problem.

9    **THE COURT:**  Sally Gowens.

10    **MS. BRILLEAUX:**  Yes, Your Honor.  This is --

11    **MR. ELLIOTT:**  Your Honor, that's a dismissal.  She

12  declines to participate.

13    **THE COURT:**  This matter is dismissed with prejudice.

14        Okay.  Gwendolyn Grady.

15    **MS. BRILLEAUX:**  Yes, Your Honor.  This is another

16  rollover case, and this is no before photos within five years

17  of treatment.

18    **MR. ELLIOTT:**  Goodness.  I have efforts are

19  continuing to be made.  We sent a notary to the home recently.

20  I ask for 15 days on this one.  It looks like she wants to

21  cooperate on this one.  I just ask for another 15.  If we don't

22  get the photos filed before then, it will have to be dismissed.

23  Efforts are being made.

24    **MS. BRILLEAUX:**  Your Honor, just for the record, I'm

25  not sure what a notary has to do with the photographs.

11:20

1    **MR. ELLIOTT:**  Notaries can go and take photographs.

2    **THE COURT:**  I understand.  Stop.  I know.  I think

3    it's just somebody knocking at the door saying, "You have to

4    give me the photographs."  That's it.  I don't think it is

5    notarizing anything.

6        I'm going to give you 15 days to find the

7    photograph, and then we will just dismiss it if it's not filed

8    by that time.  Okay.

9    **MR. ELLIOTT:**  That's no problem.

10   **THE COURT:**  Jasamine Hall.

11   **MS. BRILLEAUX:**  This is no before photos, Your Honor.

12   **MR. ELLIOTT:**  The same request, 15 days.

13   **THE COURT:**  Photographs, 15 days.

14       Donna Jones.

15   **MR. INSOGNA:**  Yes, Your Honor.  This is another case

16   with no before photos.

17   **MR. ELLIOTT:**  The same request, Your Honor.  We are

18   asking for 15 days.

19   **THE COURT:**  The Court will grant 15 days.

20       Helen Keiser.

21   **MS. BRILLEAUX:**  This is no before photos and no after

22   photos.

23   **MR. ELLIOTT:**  We have been communicating with the

24   daughter.  Their family is asking for 30 days to get all the

25   photos together, before and after, and I will get them filed

1   within that time.

2                    Oh, she passed away.  Helen Keiser, my notes

3   show that she passed away, so now we are working with the

4   family to get that together and the photos.

5            THE COURT:  I'll grant 30 days.

6            Barbara Kolpin.

7            MS. SWEET:  Your Honor, this is a case involving no

8   PFS, but it looks as though there was a last minute cure, so we

9   request seven days to confirm.

10           THE COURT:  So ordered.

11           Angelina Lantano.

12           MR. INSOGNA:  Your Honor, this is another case where

13  it appears that there was a late submission, so we would just

14  take seven days to confirm that.

15           THE COURT:  So ordered.

16           Holly Maietta.

17           MR. INSOGNA:  Your Honor, this case is one where

18  there is no evidence of a CMO 12 process initiated.

19           MR. ELLIOTT:  I have here we did send a fax to the

20  facility recently.  We will continue to follow up with the

21  provider to get the product ID.  We can provide proof like we

22  did in the other one, seven days, of our efforts.

23           THE COURT:  I'm going to grant seven days for him to

24  submit proof to defendants of what steps he has taken within

25  that process.

11:23

1          Mary Martin.

2          **MR. INSOGNA:**  Yes, Your Honor.  In this case we have

3  no proof of use and no before photographs.

4          **MR. ELLIOTT:**  I'm looking at our efforts here.  It

5  looks like we have requested records from providers.  We

6  received a no patient statement, and we requested from another

7  provider.  Yeah, we don't have POU.  The facilities that she

8  gave us are saying they don't have her medical records.

9          I may need to ask for 30 days on this one to see

10 if we can get the correct provider from her.  Maybe she has

11 another way of getting us the proof of use.  We are definitely

12 making efforts.  We definitely requested, but the facilities

13 have responded they don't have --

14         **THE COURT:**  I'll grant 30 days.

15         Okay.  Queen Miles.

16         **MS. BRILLEAUX:**  This is no before photos from within

17 five years of treatment.

18         **MR. ELLIOTT:**  We request 15 days on this one,

19 Your Honor.

20         **THE COURT:**  I will grant 15 days.

21         Yvonne Mitchell.

22         **MS. BRILLEAUX:**  No before photos, Your Honor.

23         **MR. ELLIOTT:**  Ms. Mitchell has passed away, and the

24 family were trying to gather the photos.  That's the delay.  We

25 would ask for some more time.

16

11:24

1      **THE COURT:**  When did she pass away?

2      **MR. ELLIOTT:**  Well, our records show now she passed

3  away July 20, 2018.  We finally located the family end of last

4  year.  We have been working with the daughter to obtain all the

5  core documents and present day photos.  Her daughter states --

6      **THE COURT:**  Wait.

7      **MR. ELLIOTT:**  -- her mother was in prison.  She said

8  her mom was in prison during 2008-2010, which would have been

9  within the five, you know -- it looks like we have been trying

10 to get the photos from the daughter.

11     **THE COURT:**  Wait, wait, Mr. Elliott.  I have some

12 questions.  She passed away in July 2018 and you filed this

13 suit in December 2018?

14     **MR. ELLIOTT:**  That appears to be the case,

15 Your Honor, yes.

16     **THE COURT:**  Who have you been talking to from July to

17 December 2018?  It sounds like now you are having to find some

18 family?

19     **MR. ELLIOTT:**  Not July.  We didn't locate the

20 daughter until last year.

21     **THE COURT:**  Well, how could you file a lawsuit?

22     **MR. ELLIOTT:**  Well, we had medical records.  We had

23 proof that she was injured.  Everything else was in the file

24 but for the before photos, so we had a good faith basis, a

25 Rule 11 basis to file this case.

11:25

1          **THE COURT:**  But who was authorizing --

2          **MR. ELLIOTT:**  If you have a statute that's running,

3    you are gonna file your case if you have a good faith basis to

4    do so, and that's what we did here.  Everything is in the file

5    but these before photos, and that's what her daughter is trying

6    to get.  We may not be able to get them.

7          **THE COURT:**  Wait.  I think you're missing my

8    question, Mr. Elliott.  Who authorized you to file the suit?

9    What family member were you talking to from December 2008?

10         **MR. ELLIOTT:**  We have a contract with the client.

11         **UNIDENTIFIED SPEAKER:**  What?

12         **MR. ELLIOTT:**  We had a contract with the client.

13         **THE COURT:**  But she is dead.  Oh, okay.  So you had a

14   contract before she died in July?

15         **MR. ELLIOTT:**  Yes, ma'am.  Yes, ma'am.

16         **THE COURT:**  I'm going to grant 15 days, no more.

17              Kathy Pampkins.

18         **MS. BRILLEAUX:**  Yes, Your Honor.  This is no PFS

19   submitted including the declaration, proof of use, no before

20   photos, no after photos, no authorizations and PTO 71A

21   statement.

22         **MR. ELLIOTT:**  We filed the plaintiff fact sheet on

23   October 14.  Just recently we uploaded the signature page.  The

24   ESI was filed the end of September.  Authorizations were also

25   uploaded October 10.  We believe it's cured.

11:27

1          MS. BRILLEAUX:  What date did you file that on,
2    Counsel?
3          MR. ELLIOTT:  I can't hear.
4          MS. BRILLEAUX:  I'm sorry.  What date did you upload
5    that?
6          MR. ELLIOTT:  Let's make sure we are on the right
7    case now.  What case are we talking about?
8          THE COURT:  Kathy Pampkins.
9          MR. ELLIOTT:  Yeah, exactly.  So Kathy Pampkins I
10   said that the PFS, from my notes, was uploaded on October 14,
11   2020.  The signature page has been uploaded, the ESI, the
12   HIPAA --
13          MS. BRILLEAUX:  Okay.  So two days ago?
14          MR. ELLIOTT:  Everything is in the file.
15          THE COURT:  Okay.  I'm going to grant seven days for
16   defendants to confirm compliance.
17               Sheila Price.
18          MR. INSOGNA:  Thank you, Your Honor.  This is a case
19   with no before photos and no evidence of the CMO 12 process.
20          MR. ELLIOTT:  I think we are having difficulty
21   reaching this client at this point.  That's the main concern
22   here.  We are not getting her cooperation.  We did upload the
23   ESI, which was one of the violations, but we are having issues
24   with that CMO 12 right now.  I don't see that we have been able
25   to send a request to a facility at this point.  That's because

11:29

1    we can't get the correct provider information from the client.

2              THE COURT:  All right.  I'm going to grant you

3    15 days to at least begin that process and provide that

4    information to defense counsel and then photographs.  We will

5    just have to see if you can find your client.

6              Cheryl Sandy.

7              MS. BRILLEAUX:  Yes, Your Honor.  This is no before

8    photos.  There was a photo submitted, but the plaintiff was

9    wearing a hat.  We need a photo in which we can see the

10   plaintiff's hair.

11             MR. ELLIOTT:  I show we have a qualified photo from

12   November of 2009 that was uploaded, so maybe you guys can have

13   seven days to confirm that.

14             THE COURT:  I'm going to give you seven days to

15   confirm compliance.

16             Benita Smiley.

17             MR. INSOGNA:  Thank you, Your Honor.  This is also a

18   case with no evidence of the CMO 12 process.

19             MR. ELLIOTT:  We sent a fax.  We called the facility.

20   We actually sent a --

21             THE COURT:  Okay.  I'm going to order that she

22   provide information of steps she has taken within the CMO 12

23   process to defense counsel within seven days.

24             MR. ELLIOTT:  Okay.  We can do that.

25             MS. BRILLEAUX:  Your Honor, I just wanted to go back

11:30

1   to Cheryl Sandy for a second.  We have checked.  We do not have

2   any photographs that show the plaintiff's scalp, so we would

3   ask the plaintiff to produce that photograph within seven days.

4            **THE COURT:**  So ordered.

5            Anetta Smith.

6            **MS. BRILLEAUX:**  Yes, Your Honor.  This is no before

7   photos and no after photos.  I will just note for the record

8   that something has been submitted, but they are black-and-white

9   copies of copies of photos.  We need better quality photos than

10   those to proceed.

11            **THE COURT:**  Mr. Elliott.

12            **MR. ELLIOTT:**  Well, they are copies that shows -- we

13   think it's sufficient hair for before photos.  I think we have

14   met our burden, but we will look for color if we can get them.

15            **THE COURT:**  What I'm hearing, the larger problem is a

16   copy of a copy, and sometimes that's problematic.  I'm going to

17   give you 15 days to see if you can do something to enhance the

18   photograph that you have.  I don't know if it's a Xerox copy or

19   a photographic copy that would make a difference, but I'm going

20   to give you 15 days to see if you can do something with the

21   photograph to make it more easily visible.

22            **MR. ELLIOTT:**  If for some reason it's not,

23   Your Honor, what's --

24            **THE COURT:**  Well, if it's not within 15 days, I'm

25   going to ask you to call Ms. Barrios --

11:32

1          **MR. ELLIOTT:**  Okay.  We can do that.

2          **THE COURT:**  -- and see if she has any ideas.  Thank

3      you.

4              Sheila Stubbs.

5          **MS. BRILLEAUX:**  Yes, Your Honor.  This is another

6      case that was rolled over from the last hearing with no proof

7      of use.  It's a similar issue to the issue we have already

8      discussed, which is that plaintiff has not submitted a medical

9      record or a billing record to establish proof of use of the

10     product.  There's been no other submission since the last

11     hearing.

12         **MR. ELLIOTT:**  This is another letter that shows proof

13     that she took the Taxotere.  We believe it's sufficient.  It's

14     some evidence that she took the drug.

15         **THE COURT:**  But who is the letter from, again?

16         **MR. ELLIOTT:**  It's a letter from insurance.

17         **THE COURT:**  Oh, is it an insurance bill?

18         **MS. BRILLEAUX:**  No, Your Honor.  It's from AFLAC.

19         **MR. ELLIOTT:**  I can submit the letter and you can

20     take a look at it.

21         **THE COURT:**  I think I'm going to ask that those be

22     submitted so I can see what we are talking about and determine

23     whether or not that's sufficient to survive this dismissal

24     process.

25              Lillie Thrower.

11:34

1    **MS. BRILLEAUX:**  Your Honor, this is no CMO 12A

2  process initiated.  Just to clarify for the record, this is the

3  process where plaintiff's counsel sends an email saying that

4  they have initiated the search and either have found product ID

5  or have been --

6          **THE COURT:**  I'm really having trouble understanding

7  you.

8          **MS. BRILLEAUX:**  I'm sorry, Your Honor.  I haven't had

9  any issues with this before.  I just wanted to state for the

10  record that the CMO 12A issue is with the initiating of the

11  process where plaintiff's counsel has a certain amount of time

12  to attempt to get product ID and then email if they are unable

13  to get product ID.

14          **THE COURT:**  Thank you.

15          **MR. ELLIOTT:**  This is the same thing.  We just ask

16  for time to show proof of us having initiated the CMO 12A

17  process.

18                  Hello?

19          **THE COURT:**  I'm just trying to figure out where we

20  are.  I'm going to give you seven days to submit to them what

21  you have done within the CMO 12 process and then we will take

22  it up.

23          **MS. BRILLEAUX:**  Thank you, Your Honor.

24          **THE COURT:**  Tillie Todd.

25          **MS. BRILLEAUX:**  Yes.  This is another rollover case.

11:35

1    This is an issue of no before photos within five years of

2    treatment.  The Court allowed 15 days for plaintiff to clarify

3    an issue with the date that we discussed on the record last

4    time, and we have had no additional information submitted to

5    MDL Centrality.

6              **MR. ELLIOTT:**  Your Honor, I think we are just in

7    disagreement.  We submitted a before photo we feel like should

8    qualify.  It's from April of 2007.  We think it should --

9              **THE COURT:**  I'm really having trouble, Mr. Elliott.

10   It may be me, but I am struggling to understand.  What did you

11   say about Ms. Todd?

12             **MR. ELLIOTT:**  Okay.  I'm sorry.  I will try to talk

13   louder.

14             Yeah.  I think that we have already -- we

15   uploaded a photo from April of 2007 and we believe it

16   qualifies.  So I think there's a dispute here over whether this

17   photo qualifies or not.

18             **MS. BRILLEAUX:**  Your Honor, just for the record, we

19   discussed on the record -- it's in the transcript from the

20   August hearing.  I noted that there was a date stamp in the

21   bottom.  It's a photograph.  There's a date stamp that says

22   1994.  Mr. Elliott stated on the record that he would find out

23   what that was about.  Your Honor said, "All right.  You need to

24   clear that up within the next 15 days," and Mr. Elliott said,

25   "All right.  We can do that."  We haven't received any

1   clarification based on his representation last time.

2          THE COURT:  Mr. Elliott.

3          MR. ELLIOTT:  Yeah.  I think the issue here is that

4   she had Taxotere twice.  She had Taxotere in 2008 and 2012.

5   The photo from the first treatment was 2007, before the first

6   treatment.

7          THE COURT:  That's not the issue.  That's not the

8   issue.

9          MR. ELLIOTT:  But --

10         THE COURT:  That's not the issue.  What Ms. Brilleaux

11   says is the photograph that you submitted has a date stamp of

12   1994, and you represent that it's a photograph from 2007.  I'm

13   not really that good at math, but that's some time difference.

14   What's the explanation of the date stamp?  That's what you were

15   supposed to find out.

16         MR. ELLIOTT:  If you would give me a second,

17   Your Honor, I'm trying to confirm --

18         MS. BERG:  Your Honor, this is one that Dawn can step

19   in and try to help resolve and get to the bottom of that date

20   stamp within the next 15 days or so.

21         THE COURT:  I'm going to give you-all seven because

22   this was rolled up from last time.  So this should have been

23   taken care of, but I will give you seven days, Ms. Berg.

24         MS. BRILLEAUX:  Thank you, Your Honor.

25         THE COURT:  All right.  The final one from Bachus &

11:38

1   Schanker is Rosalie Watkins.

2          **MS. BRILLEAUX:**  Yes, Your Honor.  This is a third

3   instance of a proof of use that was rolled over from the last

4   hearing.  The plaintiffs are representing that they submitted

5   proof of use.  It's not a medical record or a billing record,

6   and it does not prove that plaintiff took the product.

7          **MR. ELLIOTT:**  Sorry.  Give me a second.

8          **THE COURT:**  No proof of use.

9          **MR. ELLIOTT:**  I guess we ask for seven days.  If we

10  can't provide the proof of use, we will have to have the case

11  dismissed.  It looks like we are making efforts.  That's all I

12  can say at this point.

13         **THE COURT:**  I'm going to give you seven days, and

14  then we will dismiss the case if you have not been able to

15  comply with it.  I believe that's all for Bachus & Schanker.

16             The next one is from the Allen & Nolte law firm.

17  We should have Ms. Nolte on the phone, and that is Pearl

18  Cherry.  Ms. Brilleaux.

19         **MS. NOLTE:**  Good morning, Your Honor.  Oh, sorry.

20         **MS. BRILLEAUX:**  Oh, thank you.  Your Honor, yes, the

21  deficiency for Pearl Cherry, this is a rollover from the last

22  hearing.  Actually, excuse me.  This is a rollover from the May

23  hearing.  It was for no before photos from within five years of

24  treatment.  At the May hearing, plaintiff's counsel asked for

25  more time to locate a photo in which plaintiff was not wearing

11:40  1    a wig from before chemotherapy treatment.  They were granted
2    30 days.
3        MS. NOLTE:  Good morning, Your Honor.  This is
4    Jennifer Nolte on behalf of Pearl Cherry.  We have been working
5    with our client and her daughter since that hearing to try to
6    locate a photo of her within five years of her treatment
7    without a wig.  After doing diligent searches, they were unable
8    to find any photos without her having a wig.  Whenever she was
9    out at any formal occasion where a photo might be taken, she
10   always wore her wig.  So we aren't able to produce any photos
11   within the five years without her wearing a wig.
12       THE COURT:  Do you have any proof of what her hair
13   looks like before chemotherapy treatment?
14       MS. NOLTE:  I mean, she has some photos, but they're
15   way before, maybe 10 or 15 years before, so they wouldn't be
16   within the five years.  Otherwise, Your Honor has discussed
17   maybe getting an affidavit from the client or from family
18   members that might suffice.
19       MS. BARRIOS:  Your Honor, it's the PSC's position,
20   stated again, that the photo is not the only way you can prove
21   what her hair looked like.  You could have testimony from
22   husband, children, aunts, uncles.  We think that a case should
23   not be dismissed, but should be given the opportunity to
24   provide this alternative proof.
25       MS. BRILLEAUX:  Your Honor, I just wanted to note

11:41

1    that this has been on the show cause list since January of this

2    year.  It's clear that there are no photos that exist, and this

3    case should be dismissed.

4          **THE COURT:**  I'm going to ask for an affidavit of some

5    alternative form of proof as to what her hair looked like prior

6    to chemotherapy.  Ms. Nolte, you are going to have to come up

7    with something.  We have got to have some idea what this lady's

8    hair looked like prior to chemotherapy so that we can assess

9    what the difference is, if you will.

10          **MS. NOLTE:**  I understand, Your Honor.  We will gather

11   that evidence in the form of affidavits if that meets with your

12   approval.

13          **THE COURT:**  Then we will just make an assessment at

14   that time.  Thank you.

15          **MS. NOLTE:**  Okay.  Thank you, Your Honor.

16          **MS. BARRIOS:**  Ms. Nolte, if you want --

17                I'm sorry, Your Honor.  I was just going to tell

18   Ms. Nolte that she can be in touch with Ms. Berg and Ms. Berg

19   can help her with that affidavit.

20          **MS. NOLTE:**  All right.  Thank you, Ms. Barrios.

21          **THE COURT:**  Carolyn Young, and that's with Atkins &

22   Markoff.

23          **MS. BRILLEAUX:**  Your Honor, I believe this is a case

24   in which a declaration was filed.

25                Ms. Barrios, is that correct?

11:43

1      **THE COURT:**  Ms. Mouledous just told me it was

2  dismissed.  Okay.

3          Deborah Thomsen from Bruera Law Firm, and I

4  should have Ms. Sofia Bruera.

5      **MS. BRUERA:**  Your Honor, this is Sofia Bruera,

6  counsel for Ms. Thomsen.

7      **MS. BRILLEAUX:**  Okay.  Your Honor, the deficiency

8  here is no proof of use and no initiation of the CMO 12A

9  process.  This is a case that's been on file since December of

10  2019.

11      **MS. BRUERA:**  Your Honor, we did submit a letter from

12  the physician assistant at Dana-Farber oncology center who was

13  responsible for providing the plaintiff with the treatment of

14  the Taxotere.  In addition, we did attempt to obtain the

15  records and the billing records from Dana-Farber.  Essentially,

16  what happened was they indicated that they did not have any

17  records.  We tried to get an affidavit of no records, and there

18  was a delay in that in part because they said because of COVID

19  delays.

20          We did end up reaching one of the head

21  custodians -- because essentially she went to a place in

22  New Hampshire, but the records are kept in Boston.  We were

23  able to reach the head custodian there, who indicated that

24  there were records.  We did get records today.  We received

25  them at, I think, 12:15 midnight, so we did upload those to

11:44

1    MDL Centrality.  Unfortunately, the records do contain all the

2    infusion pharmacy records and they do have the progress notes,

3    but they don't actually have the manufacturer.

4               We have been in contact with the custodian, who

5    said that the billing records are forthcoming, so we are

6    hopeful that those billing records are going to be able to show

7    the Taxotere treatment.  The problem is just we kept being told

8    by the custodian that they didn't have records and they did

9    have records, so that's just been the delay.  We are hopeful

10   that the billing records will show something.

11              She did also have Medicare.  We have been in

12   contact with Medicare --

13              **THE COURT:**  Ms. Bruera.  Ms. Bruera.

14              **MS. BRUERA:**  Yes.

15              **THE COURT:**  You can stop.  I'm exhausted.  Your

16   search is making we tired.  I'm going to give you another

17   30 days to see what you can unearth.

18              **MS. BRILLEAUX:**  Your Honor, can I just make a

19   statement for the record?  It sounded like a lot of the issues

20   with plaintiff's counsel's search had to do with product ID,

21   which is not at issue here.  We just need an initiation of the

22   CMO 12A process and, more importantly, proof of use.  Counsel

23   referenced a letter from a physician's assistant.

24              **THE COURT:**  Ms. Brilleaux.

25              **MS. BRILLEAUX:**  Yes.

11:46

1          **THE COURT:**  Ms. Brilleaux.  She just said she got the
2    records at midnight last night from an infusion center that
3    would show her that, so settle down.  Let's give her 30 days to
4    process all of that and get it done.
5          **MS. BRILLEAUX:**  Yes, Your Honor.
6          **THE COURT:**  Then you can talk to her about what, but
7    I'm not --
8          **MS. BRILLEAUX:**  Understood.  Thank you.
9          **THE COURT:**  Okay.  Thank you.
10         **MS. BRUERA:**  Thank you, Your Honor.
11         **THE COURT:**  Bruno & Bruno, Carol Lynn Lackey, and I
12   think I have Ms. Hawkins on behalf of Bruno & Bruno.
13         **MS. HAWKINS:**  Good morning, Your Honor.  This is
14   Markita from Bruno & Bruno.  We received the last time --
15         **THE COURT:**  Wait, wait, wait.  Whoa, whoa, whoa,
16   whoa.  What's the objection to this one?
17         **MS. HAWKINS:**  Oh, I'm sorry, Your Honor.
18         **MS. BRILLEAUX:**  Yes, Your Honor.
19             Oh, excuse me, Counsel.
20         **MS. HAWKINS:**  No, go ahead.
21         **MS. BRILLEAUX:**  The deficiency for Ms. Lackey is no
22   proof of use, and this is a rollover case.  We have heard it in
23   January 2020 and in August of 2020, and it's been on file for
24   three years.
25         **THE COURT:**  Okay.  Now Ms. Hawkins.

11:47

1       **MS. HAWKINS:**  Yes.  So we finally received the

2  records from Blue Cross/Blue Shield.  They sent us over a

3  spreadsheet that has over 500 entries of providers, and so we

4  just need at least 15 more days to go through all of them just

5  to make sure we didn't miss any requests.

6       **THE COURT:**  I'm going to grant you 15 days.

7            You know, I know there's a great deal of

8  frustration.  I can see it in your faces.  In other cases that

9  I have had over the course of this COVID nightmare, it is

10 exceedingly difficult to get a great deal of information from

11 March to the present.  Offices were closed.  These requests

12 were way down on the totem pole, just so you know.  I'm going

13 to grant the 15 days.

14      **MS. HAWKINS:**  Thank you, Your Honor.

15      **THE COURT:**  Thank you.  Marcia Coley from Excolo Law.

16 Mr. Altman, are you on the line?

17      **MR. ALTMAN:**  I am, Your Honor.  Thank you.

18      **THE COURT:**  Okay.

19      **MR. INSOGNA:**  Your Honor, the deficiencies here are

20 for no before photos, no after photos, and no evidence of the

21 CMO 12 process.

22      **THE COURT:**  Is that correct?

23      **MR. ALTMAN:**  Your Honor, yes --

24      **THE COURT:**  I'm just double-checking.  The

25 deficiencies were no CMO --

11:48

1    **MR. INSOGNA:**  No CMO 12 process and also no

2    photographs, either before or after.

3         **THE COURT:**  Okay.  Mr. Altman, I'm sorry.  I think

4    that's what you said, but I like to confirm it with defense

5    counsel.

6         **MR. ALTMAN:**  I apologize, Your Honor.  Yes.  This is

7    a relatively late-filed case.  It was filed in February right

8    before COVID hit, so obviously there are some difficulties

9    associated with COVID.  We had some difficulties getting

10   records.  We requested them.  The request was lost.  We

11   requested them again.  We have just gotten them in.

12            On top of that, Ms. Coley is 72 years old.  She

13   has a number of significant medical conditions.  She is in

14   rehab in New York right now.  She is normally responsive, but

15   we have had a hard time getting in touch with her.

16        **THE COURT:**  Mr. Altman, how much time do you need?

17   30 days?

18        **MR. ALTMAN:**  Your Honor, can we have 60 days because

19   she is still in rehab right now in New York.  We need to get

20   her out of rehab so that we can get moving in the right

21   direction.  We are working as hard as we can on this.  This is

22   not a question of lack of diligence or with a client not

23   interested.

24        **THE COURT:**  The Court is going to grant 60 days.  All

25   right.

11:50

1     MR. ALTMAN:  Thank you, Your Honor.

2     THE COURT:  Joann Tullis.  That's Mr. Vinson.  I

3  think that's right.

4     MR. VINSON:  Yes, Your Honor, I'm here.  I had

5  trouble unmuting my phone.

6     THE COURT:  Okay.  Who is this?  This is Sanofi.

7  Ms. Brilleaux.

8     MS. BRILLEAUX:  Yes.  Your Honor, the deficiency with

9  this one was that a PFS was submitted that was mostly blank.

10    THE COURT:  Mr. Vinson.

11    MR. VINSON:  Yes, Your Honor.  We do apologize for

12  the timeliness.  We were able to submit an amended fact sheet

13  yesterday morning, the 15th.  We are having some circumstances

14  with this client.  She was diagnosed with Alzheimer's.  She is

15  responsive, but getting responsive questions [sic] from her has

16  been difficult.  This week we were able to get more responses

17  from her husband and reach out to her daughter, who was able to

18  provide some more information, which we submitted yesterday

19  morning.

20    THE COURT:  The Court is going to grant seven days to

21  confirm compliance.

22        Gainsburgh, Lavern Walls.  Ms. Sweet.

23    MS. SWEET:  Your Honor, the issue in this case was

24  present day photographs, but we understand that plaintiff has

25  agreed to provide them and ask for a 30-day deadline to do so.

11:51

1    THE COURT:  So ordered.

2    MS. BERG:  Your Honor, I just want to note for the

3    record that the deficiency was that the photographs weren't

4    dated, the before and after photographs.  We did date those.

5    At that point we believe it should have come off the list.  I

6    am working with my client to provide photos after 2015.

7    Defense counsel has requested more present photos, but it's not

8    ripe for a dismissal after those 30 days.  I just want to state

9    that for the record.

10    MS. SWEET:  Your Honor, just one really quick point

11    on that.  We didn't know the timeliness because they were

12    undated.  So only after that deficiency was cured was there

13    this new one, but 30 days is fine.

14    THE COURT:  So what's the deficiency?  I kind of got

15    lost because it was -- we have photographs.  Now that they are

16    dated, that's good, but 30 days for what?

17    MS. SWEET:  30 days for a current photograph.

18    THE COURT:  Oh, okay.  All right.  So ordered.

19    Mary Brown.  Ms. Brilleaux.

20    MS. BRILLEAUX:  Yes, Your Honor.  Is counsel on the

21    line?

22    THE COURT:  Wait.  Let me see.  That should be

23    Kaitlyn Syring Neufeld.

24    MS. NEUFELD:  Yes.  This is Kaitlyn Neufeld.

25    THE COURT:  Thank you, ma'am.

11:53

1        All right.  What's the deficiency,

2  Ms. Brilleaux?

3        **MS. BRILLEAUX:**  The deficiency for this one,

4  Your Honor, is no proof of use.

5        **MS. NEUFELD:**  Yes, Your Honor.  We initially

6  submitted a sheet from a prescription pad from her oncologist's

7  office, but it was not signed by the doctor.  We have since

8  been trying to get an affidavit from her oncologist to verify

9  the authenticity of the prescription sheet and the information

10  on it.  We have also ordered billing records.  We would just

11  ask for 30 days to get that information back to us.

12        **MS. BRILLEAUX:**  Your Honor, I'm going to note for the

13  record that this has been pending since December of 2017.  A

14  lot of time has passed, and a prescription is not proof of use.

15        **THE COURT:**  No, it's not.

16        **MS. BERG:**  Your Honor, I want to suggest that counsel

17  reach out to me to work on this and try to get it resolved in

18  the next 30 days.

19        **THE COURT:**  In the next 30 days, but it's been

20  pending since 2017.  It's really difficult for me to understand

21  why it's taken this long to get medical records.  COVID is one

22  thing, but COVID becomes an issue in 2020.

23        **MS. NEUFELD:**  Yes.  Your Honor, we updated that --

24        **THE COURT:**  Ms. Neufeld, I'm going to ask you to work

25  with Ms. Berg or Ms. Barrios, but you have 30 days.

11:54

1         **MS. NEUFELD:**  Thank you, Your Honor.

2         **THE COURT:**  Darlene Scott, and that is a 505(b).

3  That should be Mr. David Hodges, I think, is on this one.

4  Ms. Sweet, what's the deficiency?

5         **MS. SWEET:**  There's been no proof of injury, there's

6  no PTO 71 statement, which you will recall is that ESI issue,

7  and authorizations not provided.

8         **MS. BERG:**  Your Honor, liaison counsel received an

9  email this morning that Ms. Scott's counsel will not be on the

10  line, but they do not have a defense to the dismissal.

11         **THE COURT:**  They do not have a consent for the

12  dismissal, but --

13         **MS. BERG:**  I'm sorry.  They do not have a defense.

14  It can be dismissed.

15         **THE COURT:**  This matter is dismissed with prejudice.

16         Ora Releford, and that's with Kirtland &

17  Packard.  Mr. Kyle Benkie.

18         **MR. BENKIE:**  Yes, Your Honor.  I'm here.

19         **THE COURT:**  Thank you.  Ms. Brilleaux.

20         **MS. BRILLEAUX:**  Yes, Your Honor.  This is photos that

21  are not dated and also we have insurance authorizations that

22  are improperly completed, which I can elaborate on if needed.

23         **THE COURT:**  Okay.  Mr. Benkie.

24         **MS. BRILLEAUX:**  Oh, and I'm so sorry, Your Honor.

25  I'm so sorry.  I also wanted to add the no CMO 12A process and

11:56   1   no PTO 71A certification.  I apologize.

2              THE COURT:  Okay.

3              MR. BENKIE:  Okay.  I'll go through those.  As of

4   yesterday we did upload the PTO 71.  Also, the CMO 12 has been

5   cured as far as the products ID information.  We did upload the

6   product ID number.  There's billing records that contain the

7   product ID as well.  Those were uploaded yesterday.

8                   As far as the PFS not substantially complete,

9   there was some insurance authorization, I believe, that was

10  filled out improperly.  We did go in and blank that out, so it

11  should be cured.  The only issue is there needs to be a

12  witness.  The client only signed the document themselves and

13  didn't have a witness, so we are trying to get just that one

14  portion handled.

15                  The photos have also been uploaded with dates as

16  well that I can prove to defense with screenshots identifying

17  information if they want to confirm.  So it's just the witness

18  signature.

19             THE COURT:  Mr. Benkie, do you think you can have

20  that done within seven days?

21             MR. BENKIE:  The witness signature, I believe so,

22  yes.  We should be able to get that done.  We are in contact

23  with the client.

24             THE COURT:  Okay.  The Court is going to grant

25  seven days for you to cure that.  I'm going to grant seven days

11:57

1  to the defendants to confirm compliance.  Thank you.

2          **MR. BENKIE:**  Thank you, Your Honor.

3          **THE COURT:**  All right.  Donna Addison.

4          **MR. INSOGNA:**  I believe this was one of the

5  dismissals.

6          **THE COURT:**  Okay.  Barbara Ballard.  This is Sanofi,

7  Ms. Brilleaux.  Let me see.  That's Morgan & Morgan, so it

8  should be Mr. Albanis.  Is that correct?

9          **MR. ALBANIS:**  That's correct.  Good morning,

10 Your Honor.

11         **THE COURT:**  Are you on the line, sir?

12         **MR. ALBANIS:**  Can you hear me?

13         **THE COURT:**  Thank you.  Yes, sir, I can.

14            Ms. Brilleaux.

15         **MS. BRILLEAUX:**  Yes, Your Honor.  This is an issue

16 that we have with the HIPAA and psychiatric authorizations.

17 They were signed back in 2018, which actually made them expire

18 before plaintiff even filed suit.  So we are unable to use

19 them, which is an issue, and we need the properly dated

20 authorizations that we can use.

21         **THE COURT:**  Okay.  Mr. Albanis, can you get that done

22 in 15 days?

23         **MR. ALBANIS:**  Yes, Your Honor.  Your Honor, we

24 actually uploaded recently signed authorizations by our client.

25 We uploaded them on October 13.  They are on MDL Centrality.  I

11:58

1   had sent an email to counsel on October 13 and October 14

2   advising them that all deficiencies had been cured.  I believe

3   all deficiencies have been cured.

4           **THE COURT:**  Okay.  The Court is going to grant

5   seven days for defense counsel to confirm compliance and then

6   ask you if there's some problem that you communicate.  Okay.

7           **MR. ALBANIS:**  Thank you, Your Honor.

8           **THE COURT:**  Felicia Thorpe.  That's Reeves &

9   Mestayer, Mr. Scott Pietrowski, and this is a 505.  Ms. Sweet,

10  what's the deficiency?

11          **MS. SWEET:**  The deficiency is that there are no

12  before photographs and no PTO 71 statement.  We note that

13  plaintiff died in 2018 and plaintiff's counsel filed a

14  suggestion of death on August 30, 2018.  This week plaintiffs

15  filed a motion to extend discovery and laid out those facts.

16  They have withdrawn that motion to address through the show

17  cause process, but it does not appear that any activity

18  occurred in this case over the past two years.

19          **THE COURT:**  Mr. Pietrowski.

20          **MR. PIETROWSKI:**  Yes, ma'am.  May it please the

21  Court.  That is true.  Ms. Thorpe passed away.  We have made

22  extremely diligent efforts to try to locate next of kin, which

23  we have done.  We finally contacted one of the children.

24  Ms. Thorpe's husband is in jail, so we have had a difficult

25  time dealing with him.

12:00

1          All we are asking for, Your Honor, is 30 more

2    days.  If we can't get you something by then, the case can be

3    dismissed.  We are doing the best we can.  We understand the

4    Court has to move forward with these matters.

5          THE COURT:  I'm going to grant 30 days.

6          Lennie Reece is a 505, and this one is by

7    Reich & Binstock, Mr. Stephen Roth.  Ms. Sweet.

8          MR. ROTH:  Correct.

9          THE COURT:  Ms. Sweet, what's the deficiency?  You

10   are on mute.

11         MS. SWEET:  Sorry about that, still on mute.  The

12   deficiency is no before photos provided.

13         THE COURT:  Okay.  Mr. Roth.

14         MR. ROTH:  This is Steve Roth, Your Honor.  Hopefully

15   you can hear me.

16         THE COURT:  Yes.

17         MR. ROTH:  In the past couple of weeks we have been

18   able to get in four after photos for Ms. Reece.  She is

19   82 years old.  She is cooperating.  We are looking for those

20   before photos.  She is working with us on that, and we have

21   given her some suggestions on how to find those.  I would like

22   15 days to complete that task.

23         THE COURT:  All right.  The Court is going to grant

24   15 days.  If you have any difficulty, you might want to call

25   Ms. Berg or Ms. Barrios.  They have been working closely with

12:02

1    individual plaintiff counsel with ideas about things that you

2    can do.  I will grant you 15 days.

3            Vicki Hagel, and this is Sanofi.  This is the

4    Murray Law Firm, Ms. Myers.

5            **MS. MYERS:**  I'm here.

6            **THE COURT:**  Okay.  Ms. Brilleaux.

7            **MS. BRILLEAUX:**  Yes, Your Honor.  The deficiency here

8    is we are missing a psychiatric authorization for plaintiff.

9            **THE COURT:**  Ms. Myers.

10           **MS. MYERS:**  Yes.  I just need an additional 10 days

11   to explain to Ms. Hagel -- she is an attorney -- why she needs

12   to submit a psychiatric authorization when she hasn't seen a

13   psychiatrist, but I think I can get it done.

14           **THE COURT:**  Okay.  I will grant you 10 days.  Again,

15   you might want to call Ms. Barrios.  She might help you with

16   that conversation.

17           **MS. MYERS:**  Thank you.

18           **THE COURT:**  Julia Mitchell, and that should be

19   Mr. Davis.

20           **MR. INSOGNA:**  The deficiencies here are for no before

21   photos, no after photos, no authorizations, no PTO 71A

22   statement, and no CMO 12 process.

23           **MR. DAVIS:**  Good morning, Your Honor.  Can you hear

24   me all right?

25           **THE COURT:**  Yes, sir.

12:03

1    **MR. DAVIS:**  Okay.  I represent Ms. Mitchell.  She had

2    been out of contact with us.  We just regained contact and were

3    able to submit the PFS last week.  The rest of everything

4    that's deficient, except for PTO 12, is in the mail to us.  We

5    have been working on the PTO 12, so I would be happy to update

6    defense counsel via email or letter.  I would ask for 14 days

7    for us to get everything in and then uploaded.

8            **THE COURT:**  I'll tell you what.  I'm going to give

9    you 15 days.

10           **MR. DAVIS:**  Thank you.

11           **THE COURT:**  Then we go to Maxine Franklin with

12   Davis & Crump, and that should be Mr. Rockstad.

13           **MR. ROCKSTAD:**  Yes, Your Honor.

14           **THE COURT:**  Ms. Brilleaux.

15           **MS. BRILLEAUX:**  Yes, Your Honor.  The deficiency for

16   Ms. Franklin is before photos not dated.  This was heard at the

17   January 2020 show cause call docket.  Your Honor gave counsel

18   15 days to date the photos, which has not been done.

19           **MR. ROCKSTAD:**  Your Honor, Trevor Rockstad for

20   Ms. Franklin.  That's correct.  We actually were going to file

21   a declaration of no contact.  We hadn't been able to get in

22   touch with Ms. Franklin over the last few months.  We ran one

23   more public records search, something we do periodically to try

24   to find clients when we can't find them.  The latest one we ran

25   last week showed that she is deceased.

12:04

1    It looks like she passed away -- it's a little

2    unclear, but in either June or July of this year.  We are

3    working on trying to find an heir right now.  We just ask for

4    an extra 30 days to see if we can find an heir to continue the

5    case.  If we can't, then I think dismissal would be

6    appropriate.

7    THE COURT:  I will grant you 30 days.

8    Karolyn Jenkins.  Ms. Brilleaux.

9    MS. BRILLEAUX:  Yes, Your Honor.  This is no current

10   after photos.  I'm just going to note we did receive one that

11   was extremely blurry.  Since it's asking for a current photo,

12   we would just ask that plaintiff supplement with a more clear

13   current photograph.

14   THE COURT:  Mr. Rockstad.

15   MR. ROCKSTAD:  Your Honor, I'm looking at the

16   pictures.  I disagree that it's not a good photo.  We have

17   asked Ms. Jenkins to give us more pictures from present day.

18   We are in contact with her.  She is working on getting them to

19   us.  She lives alone.  I'm looking at the picture.  I'll

20   concede that it's got a great picture, but it appears to be

21   taken -- it's a selfie by an elderly lady.

22   THE COURT:  I understand.  I'm going to grant

23   15 days.  See if you can get her to take another selfie.

24   MR. ROCKSTAD:  We will work on it, Your Honor.  Thank

25   you.

12:06

1      **THE COURT:**  Melanie Lee, and we have Mr. Walker and

2  Ms. Brilleaux.

3      **MS. BRILLEAUX:**  Yes, Your Honor.  I was just checking

4  to see if counsel was on the line.

5      **MR. WALKER:**  Yes.

6      **MS. BRILLEAUX:**  Great.  The deficiency for this one

7  is no before photos, no PTO 71A certification, and then we also

8  have an issue with the authorizations that were submitted

9  because they are not in the format that the Court approved in

10  PTO 18.

11      **THE COURT:**  Mr. Walker.

12      **MR. WALKER:**  Your Honor, we have been trying to work

13  with the client and get in contact with her to resolve this.  I

14  don't know if it's a COVID thing or not, but certainly we would

15  just ask for at least one more chance to get this resolved with

16  her.

17      **THE COURT:**  I'm going to grant 30 days.

18      **MR. WALKER:**  Thank you, Your Honor.

19      **THE COURT:**  Mary McGonigal.

20      **MR. INSOGNA:**  Yes, Your Honor.  This is a case that

21  was also rolled over from our August hearing.  We discussed

22  that there's what appears to be a before photo, but it's

23  clearly more than five years before chemotherapy.  It's not

24  dated, so we are not sure from when it is actually taken.

25      **THE COURT:**  Mr. Walker.

12:07

1          **MR. WALKER:**  Yes, Your Honor.  We did submit the
2    photo as we were required to at the previous hearing.  We are
3    working with her to get a before photo that has a date stamp on
4    it.  We have a photo.  I don't know for certain whether it was
5    before five years or not.  I just ask for some time because
6    everything else is in place.  All we need is another photo with
7    a date stamp on it.

8          **MR. INSOGNA:**  Your Honor, I believe at the August
9    hearing the issue was providing a date for the photo that
10   exists and counsel asked for seven days to do that.

11         **MR. WALKER:**  I don't recall that, Your Honor.  I know
12   in August we actually didn't have a photo and we submitted it,
13   but I don't recall having a conversation with regards to the
14   date on it.

15         **THE COURT:**  All right.  Mr. Walker, this is what we
16   are going to do.  You have seven days to tell the date of the
17   photo you actually have, and then I will grant you 30 days to
18   continue your quest for a photo within five years.  I think you
19   need to give them the date of the photo that you sent
20   previously.  You need to do that within 30 days.

21         **MR. WALKER:**  Yes, Your Honor.  Thank you.

22         **THE COURT:**  Thank you.  Now we are with Fears
23   Nachawati, and that's Jason Long.

24         **MS. SWEET:**  Your Honor, the deficiency is that the
25   before photographs are 17 years before chemotherapy.

12:09

1    **MR. LONG:**  Yes, Your Honor.  This is Jason Long.  We

2    spoke with Ms. Brown.  That is all she could actually find are

3    the two photos from '95 and '96.  She has checked with friends,

4    family, her own files diligently.  That's actually all she

5    could pull up.  That's all she could find.

6         **THE COURT:**  All right.  I'm going to ask you,

7    Mr. Long, to visit with Ms. Barrios or Ms. Berg and see if you

8    can get some assistance.  We have talked about a variety of

9    other places you might find photographs.  I think they have

10   been working with people, so I'm going to ask you to talk to

11   them.  We have to do something within 30 days.

12        **MR. LONG:**  Sure.  Thank you, Your Honor.

13        **THE COURT:**  Diane Hussey.  Ms. Brilleaux.

14        **MS. BRILLEAUX:**  Yes, Your Honor.  I think the next

15   two, both Dianne Hussey and Cleola Stanberry, have been

16   dismissed.

17              Is that correct, Mr. Long?

18        **MR. LONG:**  Yes, that's correct.

19        **THE COURT:**  Thank you.  The final one for this firm

20   is Ms. Tacktuck.

21        **MS. BRILLEAUX:**  Yes, Your Honor.  For this plaintiff

22   the deficiency is that the before photos are not dated.

23        **THE COURT:**  Mr. Long.

24        **MR. LONG:**  These were re-uploaded again with better

25   dates yesterday.  We finally got an answer from her.  She was

12:10

1    very slow to respond.  She was able to verify that they were

2    taken in the 2000s before her chemo, but she can't recall the

3    date exactly.  Her first chemo started August of 2010.

4            **THE COURT:**  I'm going to give you seven days to

5    confirm compliance.

6                Ms. Brilleaux, I'm going to ask that you talk to

7    Mr. Long.  I'm hoping that there's a better range than 2000,

8    but --

9            **MS. BRILLEAUX:**  Your Honor, could I request that

10   Mr. Long work with Ms. Berg and Ms. Barrios to see what they

11   have done in similar situations?

12           **THE COURT:**  Please.  All right.

13           **MR. LONG:**  Thank you.

14           **THE COURT:**  Then we go to the Cutter law firm, and I

15   think we have Ms. Domer on the line.  Let's see if we can get

16   through these.  Jessie Allen.  Mr. Brilleaux.

17           **MS. BRILLEAUX:**  Yes.  This is no before photos,

18   Your Honor.

19           **MS. DOMER:**  Hi.  Good morning, Your Honor.  This is

20   Jennifer Domer.  We did upload the before photos on 10/13, I

21   believe, with dates and everything.

22           **THE COURT:**  All right.  I'm going to grant seven days

23   to confirm compliance.

24                Myrtle Barnes.  It has no PTO 71.  Ms. Domer.

25           **MS. DOMER:**  That was actually dismissed on the record

12:12

1   this morning from Ms. Barrios.

2          THE COURT:  Thank you.  Angela Bufford.

3   Ms. Brilleaux.

4          MS. BRILLEAUX:  Yes, Your Honor.  The deficiency with

5   this one is we are missing the present day current photographs.

6          MS. DOMER:  Yes, Your Honor.  We uploaded those

7   yesterday, on 10/15.

8          THE COURT:  The Court is going to grant seven days to

9   confirm compliance.

10           Vera Sue Green.  Ms. Brilleaux.

11          MS. BRILLEAUX:  This is another one that was

12   dismissed this morning on the record.

13          THE COURT:  Okay.  Thank you.  Nannie Maldonado.

14   Ms. Brilleaux.

15          MS. BRILLEAUX:  This is another one that was

16   dismissed by stipulation.

17          THE COURT:  Thank you.  Natasha Murphy.

18          MR. INSOGNA:  Your Honor, I believe this case a late

19   cure was submitted, so we would just request seven days to

20   confirm.

21          THE COURT:  So ordered.

22           Okay.  Now we are at Marc J. Bern & Partners.

23   Ms. Hennessy, are you on the line?

24          MS. HENNESSY:  Yes, Your Honor.

25          THE COURT:  Okay.  Thank you.  Let's go to your first

12:13

1    one, Susan Blodgett.

2             Ms. Brilleaux.

3        **MS. BRILLEAUX:**  Yes, Your Honor.  The deficiency here

4    is no before photos from within five years of treatment.  I

5    just wanted to note for the record that this is a rollover

6    case.  We heard this back in May of 2020, and they were

7    previously on the call docket for undated photographs.

8        **THE COURT:**  Ms. Hennessy.

9        **MS. HENNESSY:**  Yes, Your Honor.  The photo that was

10   submitted was from 1989.  The client has been looking.  She

11   indicated that she could not find any more recent photos.  I

12   know she has moved and had some difficulties that she wasn't

13   able to find any.  She has been diligent in searching.

14            She recently did send me screenshots of photos

15   that she found that are within that five-year time frame.  They

16   are not close up and they are in a group, but I asked her to

17   send those to me.  We are just waiting for that and will upload

18   those once we get them, so if we could just get an extension.

19       **THE COURT:**  Okay.  I'm going to give you 15 days.  If

20   she is sending you photographs, they can be in a group and

21   hopefully crop the other people out, but it will be something.

22   I am going to ask you to call Ms. Berg to just confirm that

23   you're on target to get what needs to be done.  I'm going to

24   grant you 15 days and ask you to contact Ms. Berg.

25            Rosalyn Brown.  Ms. Sweet.

12:14

1    **MS. SWEET:**  Your Honor, the deficiency is that no PFS

2  has been submitted.

3    **MS. HENNESSY:**  Your Honor, I apologize.  A dismissal

4  form should have been submitted for this client.

5    **THE COURT:**  This matter has been dismissed with

6  prejudice.

7    Carol Burkhardt.  Ms. Brilleaux.

8    **MS. BRILLEAUX:**  Yes, Your Honor.  This is no before

9  photos, no after photos, no authorizations, and no PTO 71A

10  statement.

11    **THE COURT:**  Ms. Hennessy.

12    **MS. HENNESSY:**  So this client, I saw that it was

13  noted that there was no authorizations.  I wasn't aware that

14  there were no photos submitted.  We have been trying to contact

15  the client.  The phone numbers that we had on file have

16  recently been disconnected.  We conducted a public records

17  search.  I would just ask for an extension to contact some of

18  the additional numbers that we found as well as relatives to

19  figure out if the client has moved or why the contact we have

20  is disconnected.

21    **MS. BRILLEAUX:**  I just wanted to note for the record

22  that this case has been pending since April of 2019.

23    **THE COURT:**  I understand.  We are going to roll this

24  over to next time.  If you haven't made contact by then, I'm

25  going to dismiss it.

12:16

1              Sheila Davidson, no PTO 71.

2          **MS. BRILLEAUX:**  Yes, Your Honor.  That's the

3 deficiency.  It's the certification of the completion of the

4 ESI discovery search.

5          **MS. HENNESSY:**  In this case the client, she did send

6 us the PTO 71.  She did not respond to all the questions, so we

7 have reached back out to her to fill that out completely.  We

8 are in contact with her.  She is cooperative.

9          **THE COURT:**  I'm going to grant 15 days.

10            Teresa Docherty.  Ms. Brilleaux.

11          **MS. BRILLEAUX:**  Yes, Your Honor.  This is no before

12 photos.

13          **MS. HENNESSY:**  So we had submitted before photos with

14 dates October 13.

15          **THE COURT:**  I'm going to grant seven days to confirm

16 compliance by the defendant.

17            Evelyn Driggins.

18          **MR. INSOGNA:**  Thank you, Your Honor.  This case was

19 originally raised at the August 5 hearing for no proof of use,

20 and plaintiff's counsel informed us that the plaintiff was

21 deceased and they were looking for next of kin to see if they

22 wanted to participate.  We have not had any update since then

23 and no proof of use.

24          **THE COURT:**  Ms. Hennessy.

25          **MS. HENNESSY:**  Yes.  The client had just passed away

12:17

1    right before the last order to show cause hearing, and since

2    then we have gotten in touch with the next of kin.  Her son, he

3    does want to proceed with the case.  We are waiting on getting

4    HIPAA authorization forms signed by him so we can get the

5    medical records.  If we could just get some kind of extension

6    to get those authorizations from her son.

7            THE COURT:  Okay.  This is what we are going to do.

8    We are going to roll it over until next time so we can get an

9    update on the status with the son and these records.

10            Amy Ikerd.

11           MR. INSOGNA:  Thank you, Your Honor.  This is also a

12   case that was continued from the August 5 hearing.  At that

13   hearing plaintiff's counsel said that the plaintiff had been in

14   the hospital previously, and they were not sure if she wanted

15   to proceed with her case.  We do not have a plaintiff fact

16   sheet or any of the associated documentation, proof of use,

17   injury, authorizations, etc.

18           THE COURT:  Ms. Hennessy.

19           MS. HENNESSY:  Since the last hearing, we still have

20   not been able to get in touch with her.  Because she was at one

21   point responsive, we were hoping that we would be able to get

22   in contact with her, but I understand at this point --

23           THE COURT:  It sounds like there is no defense to

24   this.  The Court is going to dismiss this matter with

25   prejudice.

12:19

1          Theresa Kalsky.

2          **MS. SWEET:**  Your Honor, plaintiff has not submitted

3  proof of use or any medical records.  We note that the case

4  been pending since August of 2019.

5          **MS. HENNESSY:**  So we had submitted medical requests

6  as early as 2018.  For some reason we were having issues with

7  the medical records that we received didn't have the actual

8  chemo treatment.  We needed to submit it to a specific

9  department of the hospital.  We have resubmitted to what I

10  believe should be the correct cancer center in the hospital.

11  We sent the request back in July.  We are following up to see

12  why we still don't have the records.  I request an extension to

13  try to get these records.

14          **THE COURT:**  I'm going to ask you, Ms. Hennessy, to

15  work with Ms. Barrios.  I would like to see the dates that you

16  have ordered, what you have received when, to just to see what

17  has been coming in and what's going out so that we can monitor

18  this.  I'm going to ask that this one be rolled over until the

19  next hearing, and then we will have a better report as to what

20  came when and that sort of stuff.  Okay.

21          Is this the last one?

22          **MS. BRILLEAUX:**  We have two more, Your Honor.

23          **THE COURT:**  Karen McKnight.  Ms. Brilleaux.

24          **MS. BRILLEAUX:**  Yes, Your Honor.  The deficiency for

25  Ms. McKnight is no signed PFS declaration, no proof of use, and

12:21

1   no before photos.

2           **MS. HENNESSY:**  So this case, Your Honor, since the

3   last hearing we did receive the medical records.  However, it

4   did not indicate Taxotere use.  We are trying to get in contact

5   with the client to confirm the dates of treatment and make sure

6   that we are not missing any records, but potentially we will be

7   dismissing this case.

8           **THE COURT:**  I'm going to give you 15 days to clear

9   that up.  My guess is if you have contact with her and you

10  determine that, that we can just get a voluntary dismissal.

11          Our last one is Cathy Doyle.

12          **MS. BRILLEAUX:**  Yes, Your Honor.  The before photos

13  are not dated.

14          **MS. HENNESSY:**  In our efforts to contact this client

15  to get those dates, we became aware that she is deceased.

16  Everything else has been submitted except for just those before

17  dates.  If we could just get an extension to contact the next

18  of kin to see, one, if they would like the proceed with the

19  case and then try to get those dates from them.

20          **MS. BRILLEAUX:**  Your Honor, we would just ask when

21  the plaintiff passed away.

22          **MS. HENNESSY:**  November 4, 2019.

23          **THE COURT:**  You just found out?

24          **MS. HENNESSY:**  Yes.  The client, we had submitted

25  everything in this case a while before that point and there

12:22   1    was --

2                 THE COURT:  Okay.  The Court is going to grant

3    30 days.  See if you can get in touch with the next of kin.

4                     Is that it?

5                 MS. BRILLEAUX:  Yes, Your Honor.  Those are all the

6    cases.

7                 THE COURT:  Court is adjourned.

8                                 * * *

9                             <u>CERTIFICATE</u>

10                   I, Toni Doyle Tusa, CCR, FCRR, Official Court

11   Reporter for the United States District Court, Eastern District

12   of Louisiana, certify that the foregoing is a true and correct

13   transcript, to the best of my ability and understanding, from

14   the record of proceedings in the above-entitled matter.

15

16

17                                 <u>*/s/ Toni Doyle Tusa*</u>
                                    Toni Doyle Tusa, CCR, FCRR
18                                  Official Court Reporter

19

20

21

22

23

24

25