UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)　　　　　　　　　　MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Brenda Mixon, No. 18-6581.

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF BRENDA MIXON AND ENTRY OF ORDER TO SHOW CAUSE**

---

Ms. Mixon does not dispute the three dispositive facts that decide her case. First, Michigan law applies.[1] Second, the Taxotere administered to her was approved by FDA[2] and carried the FDA-approved labeling when it left Sanofi's control.[3] Third, FDA has never made a finding of fraud in the Taxotere approval process, and Taxotere has continuously maintained FDA-approval since it was first approved in 1996. On these facts, the Court should enter summary judgment in Sanofi's favor because Section 600.2946(5) of the Michigan Product Liability Act ("MPLA") bars Ms. Mixon's claims.

With these dispositive facts against her, Ms. Mixon instead argues for a change in the law. First, Ms. Mixon asserts that the Court should nullify Section 600.2946(5) because the MPLA's fraud-on-the-FDA exception, when limited by *Buckman Co. v. Plaintiffs' Legal Committee*, 531

---

[1] Rec. Doc. 11324-1 at 2 ¶¶ 4–6 (Pl.'s Resp. to Defs.' Statement of Undisputed Facts & Pl.'s Statement of Additional Disputed Facts in Supp of Opp. to Summ. J.) ("4. Ms. Mixon is a Michigan resident. Undisputed. 5. Ms. Mixon was prescribed Taxotere in Michigan. Undisputed. 6. Ms. Mixon was administered Taxotere in Michigan in 2008. Undisputed.").

[2] *Id.* at 2–3 ¶¶ 7, 11–12.

[3] *Id.* at 2–3 ¶¶ 12, 14.

U.S. 341 (2001), is not severable.  Every court to consider the severability issue advanced by Ms. Mixon, including the Sixth Circuit, disagrees.  Second, Ms. Mixon asserts that the Court should not apply Section 600.2946(5) because it violates her access-to-court and Equal Protection rights under the Michigan Constitution.  The Sixth Circuit has twice rejected the same access-to-court argument Ms. Mixon raises here, and no court has sided with Ms. Mixon on her Equal Protection challenge.  Finally, given the existence of statutory and decisional law specifically addressing Ms. Mixon's proposed certified questions, the Court should deny her request to certify those questions to the Michigan Supreme Court.  The Court should instead follow the Fifth and Sixth Circuits and enter summary judgment in Sanofi's favor.

## ARGUMENT

I.    **Section 600.2946(5) Is Enforceable Because Its Fraud-on-the-FDA Exception, as Limited by *Buckman*, Is Severable.**

Both the Fifth and Sixth Circuits have correctly held that, under the Supreme Court's decision in *Buckman*,[4] federal law preempts "\fraud-on-the-FDA exceptions in state products-liability statutes unless the FDA *itself* determines it was defrauded.  *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 380 (5th Cir. 2012); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004); *see also Marsh v. Genentech, Inc.*, 693 F.3d 546, 550 (6th Cir. 2012).  Applying these holdings, the MPLA's fraud-on-the-FDA exception is preempted (and unavailable to Ms. Mixon) absent evidence the FDA *itself* determined it was defrauded when it approved Taxotere—evidence Ms. Mixon does not have.

Faced with an absence of evidence to meet that narrow exception, Ms. Mixon invites the Court to disregard the Fifth and Sixth Circuit cases above and instead follow *Desiano v. Warner-*

---

[4]    In *Buckman*, the Supreme Court held that state common-law tort claims for fraud-on-the-FDA are impliedly preempted.  531 U.S. at 343.  Under the federal statutory scheme governing the approval of medical devices and drugs, FDA is "amply empower[ed] . . . to punish and deter fraud against the Administration."  *Id.* at 348.

2

*Lambert & Co.*, a Second Circuit decision holding that *Buckman* did not preempt the MPLA's fraud-on-the-FDA exception. 467 F.3d 85 (2d Cir. 2006). The Court should decline Ms. Mixon's invitation.

In *Lofton*, the Fifth Circuit considered the holdings in both *Garcia* and *Desiano* and concluded, "the Sixth Circuit's approach [in *Garcia*] is more faithful to *Buckman*," which preempted "state tort claims . . . if they 'exist solely by virtue of the [Federal Food, Drug, and Cosmetic Act] disclosure requirements.'" *Lofton*, 672 F.3d at 379–80 (citing *Buckman*, 531 U.S. at 353). The Fifth Circuit then addressed each rationale provided by the Second Circuit *for the MPLA fraud exception* and concluded that each was equally unpersuasive *for the Texas fraud exception*, as both were fraud-on-the-FDA exceptions foreclosed by *Buckman*. *See, e.g.*, *id.* at 380 ("We also disagree with the Second Circuit that statutes like [Tex. Civ. Prac. & Rem. Code Ann.] § 82.007(b)(1) and the Michigan statute do not pose the same over-disclosure problems that *Buckman* contemplated.").[5] As in *Lofton*, this Court should reject *Desiano*, apply *Garcia*'s "more faithful" interpretation, and hold that federal law preempts the MPLA's fraud-on-the-FDA exception.[6]

The MPLA's fraud-on-the-FDA exception, as limited by *Buckman*, is also severable from the rest of the MPLA. Ms. Mixon cites some cases for general statements on severability and others for general statements on the MPLA. But the cases that have addressed the specific question here—whether the fraud-on-the-FDA exception, as limited by *Buckman*, is severable from the MPLA—have unanimously held that the exception is severable. *Garcia*, 385 F.3d at 966–67; *In*

---

[5] *See also Atkinson v. Luitpold Pharm., Inc.*, 448 F. Supp. 3d 441, 449 (E.D. Pa. 2020) ("The Sixth Circuit, relying on similar reasoning [as *Lofton*], also found *Buckman* preempted the statutory fraud-on-the-FDA exception in an analogous Michigan statute.").

[6] Even if this Court declines to follow *Lofton* and its requirement that FDA *itself* find fraud in the approval process, Ms. Mixon has not identified any information intentionally withheld or misrepresented to FDA. *See, e.g.*, Rec. Doc. 11020-2 (Defs.' Statement of Uncontested Facts in Supp. of Mot. for Summ. J. on Preemption).

3

*re Depakote*, No. 12-CV-52, 2017 WL 4348052, at *7 (S.D. Ill. Sept. 28, 2017); *see also Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1175–77 (D. Ariz. 2005) (citing *Garcia* and holding that a fraud-on-the-FDA exception was severable from Arizona statute that granted immunity to drug manufacturers from punitive damage awards).

Ms. Mixon gives short shrift to the Sixth Circuit's decision in *Garcia*, yet it is directly on point. Analyzing the MPLA's preempted fraud-on-the-FDA exception under Michigan's general severability clause, the Sixth Circuit explained that the question was whether the Michigan Legislature would prefer drug manufacturers receive immunity if FDA did not find fraud *or* whether the Legislature would prefer drug manufacturers receive no immunity at all. *Garcia*, 385 F.3d at 967.

For two reasons—not one, as Ms. Mixon suggests—the Sixth Circuit concluded that the Michigan Legislature would prefer the first choice. First, in passing the immunity exception, the Legislature recognized that unlimited liability "could add substantially to the cost and unavailability of many drugs." *Id.* (citing State Fiscal Agency, Revised Bill Analysis, S.B. 344 & H.B. 4508 (Mich. 1996)). Second, severing the fraud exception would "merely place responsibility for prosecuting bribery or fraud on the FDA," as *Buckman* directs. *Id.*; *see also In re Depakote*, 2017 WL 4348052, at *7 ("Contrary to Plaintiffs' position, the Michigan Supreme Court expressly held in *Taylor* [*v. Smithkline Beecham Corp.*, 658 N.W.2d 127, 134 (Mich. 2003)] that the legislature tied the 'rebuttal mechanism' to the determinations of the FDA."). Contrary to Ms. Mixon's position, holding the fraud-on-the-FDA exception non-severable would upset the Legislature's preference to retain drug manufacturer immunity without a finding of fraud by FDA.

To that end, in the fifteen years since *Garcia* was decided, neither the Michigan Legislature nor the Michigan Supreme Court has overridden the Sixth Circuit's decisions. Michigan courts

(like the Fifth Circuit) have instead found the Sixth Circuit's MPLA decisions persuasive. *See, e.g.*, *Trees v. Pfizer, Inc.*, No. 338297, 2018 WL 6710594, at *3 (Mich. Ct. App. Dec. 20, 2018) (adopting the Sixth Circuit's decision in *Marsh*, 693 F.3d 546), *appeal denied*, 933 N.W.2d 305 (Mich. 2019); *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at *5 (Mich. Ct. App. June 13, 2006) ("Although we are not bound to follow the decision in *Garcia*, we agree with its holding that the fraud-on-the FDA exception is preempted by federal law unless the FDA itself determines that it was defrauded.") (internal citation omitted). Because FDA has never made a finding of fraud in the Taxotere approval process, this Court should hold that the MPLA bars Ms. Mixon's claims in full.

**II.    The MPLA Does Not Violate Ms. Mixon's Equal Protection Rights Under the Michigan Constitution.**

Ms. Mixon argues Section 600.2946(5) violates her Equal Protection rights in two respects: (1) it denies her access to the courts, and (2) it contains an "irrational" distinction between consumers of FDA-approved drugs and other products.[7] Neither argument has merit.

Regarding access to the courts, the Sixth Circuit has twice analyzed and rejected the very argument Ms. Mixon raises here, noting the plaintiff failed to set forth any "legally binding precedent" in support of her challenge:

> The argument that a state statute stiffens the standard of proof of a common law claim does not implicate [the right of access to the courts]. In this case, the plaintiff does not allege that she was unable to gain access to court to litigate her claim. Rather, she contends in essence that Section 600.2946(5) requires too much, and that the immunity it grants to drug manufacturers is too broad. These allegations do not constitute a claim of denial of access to the courts.

*Garcia*, 385 F.3d at 968 (applying Michigan law; affirming and quoting the district court's opinion at 265 F. Supp. 2d 825, 833–34); *Cotton v. Johnson & Johnson*, No. 16-2770, 2017 WL 4857552,

---

[7]    Rec. Doc. 11324 at 14–17 (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J.).

at *2 (6th Cir. Sept. 22, 2017) ("We have previously rejected similar right-of-access constitutional challenges to the MPLA's grant of immunity, because immunity does not constitute a denial of access to the courts."); *see also Zammit v. Shire US, Inc.*, 415 F. Supp. 2d 760, 766 (E.D. Mich. 2006) (rejecting substantially same access-to-court challenge based on *Garcia*). The fact Ms. Mixon has no evidence to meet any of the MPLA's three exceptions does not mean the MPLA violates her fundamental right to access the courts.

The MPLA's distinction between consumers of FDA-approved drugs and other products does not violate her Equal Protection rights either. Ms. Mixon agrees her challenge is subject to the "highly deferential" rational-basis test under which "courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose." *Crego v. Coleman*, 615 N.W.2d 218, 224 (Mich. 2000). Here, the legitimate government purposes underlying Section 600.2946(5) are apparent from the legislative history:

> Michigan's interest in making prescription drugs more available to its residents is supported by the legislative history of the law. Commenting on section 600.2946(5), its proponents stated that "[d]rug companies spend large sums of money and expend enormous energy getting approval for their products. Many valuable products never reach the market or are withdrawn because of successful lawsuits (or the threat of future lawsuits) even though there is no medical evidence that they are harmful." House Legislative Analysis Section to S.B. 344, at 9 (June 8, 1995).

*Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 774 (N.J. 2007). The Michigan Legislature, when considering the proposed legislation, considered that product-liability litigation could increase costs and limit access to new and beneficial drugs:

> Supporters in the Michigan State Senate recognized that "[c]onsumers . . . suffer when they are denied new products that would increase public safety or improve their quality of life. . . . [P]roduct liability litigation . . . has added substantially to the cost and unavailability of many goods and services." Senate Fiscal Agency Bill Analysis to S.B. 344 & H.B. 4508, at 10 (Jan. 1, 1996).

6

*Id.*; *see also Henderson v. Merck & Co.*, No. 04-cv-05987, 2005 WL 2600220, at *6 (E.D. Pa. Oct. 11, 2005) ("Part of the rationale behind the Michigan statutory scheme was the reduction of costs of FDA-approved pharmaceutical drugs for Michigan citizens and the encouragement of pharmaceutical companies to do business in Michigan.").

Sanofi is also unaware of any published decision addressing an Equal Protection challenge to Section 600.2946(5). The district court in *Garcia*, however, analyzed a Due Process challenge to that same section and concluded it "comfortably" met the rational-basis test:

> [I]t is not difficult to divine a rationale which may have been the basis of the state's preference of drug manufacturers over tort claimants that would comfortably fall within the wide boundaries of the rational basis test. The Court finds that the Michigan legislature acted within its authority when it granted immunity from liability to drug sellers and manufacturers who market their products after obtaining approval from the FDA.

*Garcia v. Wyeth-Ayerst Labs.*, 265 F. Supp. 2d 825, 834–35 (E.D. Mich. 2003), *aff'd*, 385 F.3d 961 (6th Cir. 2004). On this record, Ms. Mixon cannot show that classifying consumers of FDA-approved drugs differently than consumers of other products is "arbitrary and wholly unrelated in a rational way to the objective of the statute," including the objectives identified above. *Crego*, 615 N.W.2d at 224 (citation omitted).

### III. The Court Should Not Certify Any Questions to the Michigan Supreme Court.

The Fifth Circuit has identified several principles for district courts to apply when deciding whether to certify questions of law—none of which favor certification in this case.

*First*, the two issues Ms. Mixon seeks to certify do not involve genuinely unsettled matters of state law. *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997) ("[A]bsent genuinely unsettled matters of state law, we are reluctant to certify."). The issue of severability (*infra* Part I) has been analyzed by several courts, including the Sixth Circuit, and

involves the straightforward application of Michigan's severability statute, which also weighs against certification. *See Swearingen v. Owens–Corning Fiberglas Corp.*, 968 F.2d 559, 564 (5th Cir. 1992) (refusing to certify question even though state supreme court had not directly confronted issue, when "under the plain language of [the statute], [the] decisional analysis is relatively straightforward"). The access-to-court challenge (*infra* Part II) has twice been addressed and rejected by the Sixth Circuit. Finally, no court has directly addressed Ms. Mixon's Equal Protection challenge to the MPLA's distinction between consumers of FDA-approved drugs and other products (*infra* Part II), though this is likely because the argument is meritless.

*Second*, the fact Ms. Mixon filed her case in federal court weighs against certification. *See Jefferson*, 106 F.3d at 1248 ("That her electing to file in federal court might have been done in anticipation of removal by the defendants is of no moment: '[T]he court should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction.'") (quoting 17A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4248, at 176 (1988)).

*Third*, the Fifth Circuit cautions that certification should be used rarely and reluctantly, and only when there is a "compelling" reason to do so. *Jefferson*, 106 F.3d at 1247. But here, Ms. Mixon does not identify any such reason. At bottom, her request is that the Michigan Supreme Court repeal portions of the MPLA she dislikes—a request more appropriately made of the Michigan Legislature.

Accordingly, the Court should decline Ms. Mixon's invitation to certify questions to the Michigan Supreme Court and instead "decide the case as would an intermediate appellate court of the state in question if . . . the highest court of the state has not spoken on the issue or issues presented." *Jefferson*, 106 F.3d at 1247; *see also id*. ("Alone, the absence of a definitive answer

from the state supreme court on a particular question is not sufficient to warrant certification.");

*Swearingen*, 968 F.2d at 564 (denying motion to certify, stating "instead, in the absence of explicit guidance from the state courts [we] attempt to predict state law").

## **CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment in Sanofi's favor. In addition, because Ms. Mixon's claims are representative of the remaining Michigan plaintiffs in this MDL, the Court should enter an Order to Show Cause why those plaintiffs' claims should not also be dismissed.

Respectfully submitted,
/s/ *Douglas J. Moore*
Douglas J. Moore (Bar No. 27706)
**IRWIN FRITCHIE URQUHART & MOORE LLC**
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: 504-310-2100
dmoore@irwinllc.com

Harley V. Ratliff
Adrienne L. Byard
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
hratliff@shb.com
abyard@shb.com

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*