UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)               MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
*Kahn v. Sanofi S.A., et al.*, 2:16-cv-17039

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DR. AZAEL FREITES-MARTINEZ

NOW COMES plaintiff, Elizabeth Kahn, who moves this Court to exclude testimony of Dr. Azael Freites-Martinez. As will be shown, Dr. Freites-Martinez lacks the qualifications to provide expert testimony in the areas for which Sanofi has designated him as an expert. Therefore, Dr. Freites-Martinez should not be allowed to testify at trial.

### INTRODUCTION

The PSC moves this Court to exclude Dr. Azael Freites-Martinez under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms. Inc*., 509 U.S. 579 (1993).

The general rule governing the admissibility of expert witness testimony is set forth in Rule 702 of the Federal Rules of Evidence, which reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 imposes a "gatekeeping" obligation on trial courts to ensure that expert testimony is "not only relevant, but [also] reliable" in order to be admitted into evidence. 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The overriding objective of this gatekeeping role is to ensure that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Such scrutiny is required because "[e]xpert evidence **can be both powerful and quite misleading** because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (emphasis added).

When assessing a challenge to proposed expert witness testimony under Rule 702, courts first look to whether "the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting FED. R. EVID. 702). This inquiry focuses on the proposed witness's expertise in the specific subject matter in which s/he seeks to offer an expert opinion, rather than his general familiarity with a broad topic containing that subject matter. *Id.* If a proposed witness is found to lack the basic qualifications necessary to offer expert opinions on one or more subject matters, the Court should preclude that witness from testifying on those subject matters without further inquiry.

After assessing a proposed witness's basic expert qualifications, the Court must analyze whether that witness's opinions meet the standards established by the Supreme Court in *Daubert*. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). Expert testimony is only admissible "if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Daubert*, 509 U.S. at 589).

"First, the Court must determine whether the proffered expert testimony is reliable." *Howell v. Avante Services*, LLC, 2013 WL 870525, *1 (E.D. La. 3/7/2013). According to the Supreme Court, expert testimony must meet "exacting standards of reliability" to be admitted into evidence. *Weisgram v. Marley Co.*, 528 U.S. 440, 445 (2000). To satisfy *Daubert*'s reliability requirements, an expert's opinions must "be grounded in the methods and procedures of science." *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 775-76 (5th Cir. 2017) (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)). "This requires some objective, independent validation of the expert's methodology." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*); *see also Howell v. Avante Services, LLC*, 2013 WL 870525, *1 (E.D. La. 3/7/2013) ("The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid."). The Court must look closely at specific methods and procedures used by the proposed expert and "not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

"Second, the Court must determine whether the expert's reasoning or methodology is relevant in that it 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence." *Id.* "Expert testimony that relies on 'completely unsubstantiated factual assertions' is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 Fed. Appx. 513, 515 (E.D. La. 2013) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319, n.4 (5th Cir. 2007)). Moreover, "[w]hen an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." *Id.* (citing *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)).

As the proponent of Dr. Freites-Martinez as an expert witness in this case, Sanofi bears the burden of establishing that his testimony meets the foregoing standards by a preponderance of the

3

evidence. *See Chan ex rel. Estate of Brewer v. Coggins*, 2007 WL 2783355, at *3 (S.D. Miss. 9/24/2007), *aff'd sub nom. Chan v. Coggins*, 294 F. App'x 934 (5th Cir. 2008) ("The party sponsoring the expert testimony has the burden of showing that the expert's findings and conclusions are based upon the scientific method and, therefore, are reliable."); *see also Moore*, 151 F.3d at 276. As demonstrated below, Sanofi is wholly unable to meet that burden with respect to any of Dr. Freites-Martinez's proposed expert opinions in this case. Thus, the Court should exclude Dr. Freites-Martinez from testifying as an expert on any topic at trial.

## LAW AND ARGUMENT

According to Dr. Freites-Martinez, "the widespread use of systemic anticancer agents, their myriad combinations, and underreporting of hair disorders make it difficult to establish the true cause [of chemotherapy-induced alopecia]."[1] Moreover, the mechanism of Taxotere-induced alopecia is unclear because according to Dr. Freites-Martinez, damage to hair follicles by taxanes has not been elucidated.[2] Finally, Dr. Freites-Martinez believes that a full medical history must be obtained and analyzed to properly diagnose alopecia.[3]

In support of these opinions, Dr. Freites-Martinez maintains that he is a world renowned onco-dermatologist.[4] But this is simply not borne out by Dr. Freites-Martinez's experience. He only recently finished his residency in general dermatology in 2016,[5] and aside from a two-year clinical research fellowship under the supervision of Dr. Mario Lacuoture, an onco-dermatologist at Memorial Sloan Kettering Cancer Center, Dr. Freites-Martinez has less than a year of experience

---

[1] Dr. Freites-Martinez Rep. 10/9/2020 at p. 2, attached hereto as Exhibit "A".

[2] Dr. Freites-Martinez Rep. 10/9/2020 at p. 5, attached hereto as Exhibit "A".

[3] Dr. Freites-Martinez Rep. 10/9/2020 at p. 6, attached hereto as Exhibit "A".

[4] Dr. Freites-Martinez Dep., 10/20/20 at 84:2-85:13, attached hereto as Exhibit "B".

[5] Azael David Freites Martinez, M.D. Curriculum Vitae, attached hereto as Exhibit "C";

4

working as a onco-dermatologist—and only part-time at that. Specifically, it was not until January 2020 that he began working part time with a general dermatology group in Madrid where Dr. Freites-Martinez is trying to develop a part-time subspecialty in onco-dermatology.[6] Even more, Dr. Freites-Martinez has had less than three years of general dermatology practice under his belt since completing the clinical research fellowship.

Dr. Freites-Martinez's research and publications likewise do not demonstrate an independent expertise in permanent chemotherapy induced alopecia, or any toxicity caused by chemotherapy. As stated previously, Dr. Freites-Martinez completed a two-year research fellowship at Memorial Sloan Kettering, under Dr. Lacuoture. And while Dr. Freites-Martinez does have several publications that are related to onco-dermatology, including three concerning alopecia, all of these are a direct result of his research fellowship with Dr. Lacouture.[7] Stated differently, the permanent chemotherapy induced alopecia and endocrine-therapy induced alopecia publications would not have occurred if it was not for Dr. Lacouture, but they certainly would have occurred even if Dr. Freites-Martinez was not the research fellow for Dr. Lacourture. A simple review of Dr. Freites-Martinez's curriculum vitae demonstrates that Dr. Freites-Martinez has not published in the peer reviewed medical literature concerning permanent chemotherapy induced alopecia independent of his two-year research fellowship with Dr. Lacourture, and he admits as much.[8]

---

[6] Dr. Freites-Martinez Dep., 10/20/20 at 136:17-24, attached hereto as Exhibit "B".

[7] Azael David Freites Martinez, M.D. Curriculum Vitae, attached hereto as Exhibit "C"; *see also*, Dr. Freites-Martinez Dep., 10/20/20 at 59:2-9, 59:21-60:3, attached hereto as Exhibit "B".

[8] Azael David Freites Martinez, M.D. Curriculum Vitae, attached hereto as Exhibit "C"; *see also*, Dr. Freites-Martinez Dep., 10/20/20 at 71:3-12, attached hereto as Exhibit "B".

According to Dr. Freites-Martinez, Ms. Kahn suffers from "[p]ersistent alopecia with a predominant androgenetic pattern after different chemotherapies and endocrine therapy."[9] And while Dr. Freites-Martinez opines that he is unable to determine which specific chemotherapy drug is responsible for Ms. Kahn's alopecia on one hand, he opines that her "androgenetic pattern…suggests a strong tamoxifen influence" on the other hand.[10] Moreover, Dr. Freites-Martinez does not believe any cytotoxic chemotherapy caused or contributed to Ms. Kahn's alopecia because, according to Dr. Freites-Martinez, Ms. Kahn experienced androgenetic alopecia even before she was diagnosed with breast cancer.[11]

Dr. Freites-Martinez is also not qualified to render any case-specific opinions with respect to Ms. Kahn. Dr. Freites-Martinez admits that he did not attempt to apply an accepted methodology to Ms. Kahn's case as he is unfamiliar with any epidemiologic tool to isolate Taxotere as a cause.[12] Further, Dr. Freites-Martinez did not examine her—and for good reason, because he is not qualified to render medical opinions regarding her diagnosis and care. Dr. Freites-Martinez is not a licensed medical doctor in the United States.[13] His medical education occurred in Venezuela, he earned a post-graduate diploma in tropical and pediatric infectious diseases in Madrid, Spain in 2011, and then completed a 4-year dermatology residency, also in

---

[9] Dr. Freites-Martinez Rep. 10/9/2020 at p. 30, attached hereto as Exhibit "A".

[10] Dr. Freites-Martinez Rep. 10/9/2020 at p. 30-31, attached hereto as Exhibit "A".

[11] Dr. Freites-Martinez Rep. 10/9/2020 at p. 31, attached hereto as Exhibit "A".

[12] Dr. Freites-Martinez Dep., 10/20/20 at 266:3-272:14, attached hereto as Exhibit "B". By his own admission, Dr. Freites-Martinez does not offer an opinion that any chemotherapy drug demonstrates a statistically significant increased risk for permanent chemotherapy induced alopecia. *Id.* at 270:14-271:4. Indeed, Dr. Freites-Martinez conceded that his JAMA article does not provide data that would allow an incidence rate for permanent chemotherapy induced alopecia with Taxol, Taxotere, or any chemotherapy drug. *Id.* at 211:17-212:8.

[13] Dr. Freites-Martinez Dep., 10/20/20 at 40:12-15, attached hereto as Exhibit "B".

Madrid.[14] Dr. Freites-Martinez acknowledged that he has never been allowed to prescribe medication in the United States.[15] Indeed, he admits that he is not legally allowed to operate as a dermatologist in the United States,[16] and he has no intention and no interest in practicing in the United States.[17]

There is no doubt that Dr. Freites-Martinez hopes to specialize in onco-dermatology, but he is simply not there yet. He is a doctor that is three years out of his necessary training to be a dermatologist. He spent two years as a research fellow for Dr. Lacouture, a physician who does specialize in Dr. Freites-Martinez's desired subspecialty. But since completing his research fellowship, Dr. Freites-Martinez has spent his nearly three years of private practice almost exclusively in general dermatology clinics, treating general dermatology conditions.[18] He simply has not specialized in the area of onco-dermatology.[19] In fact, when Dr. Freites-Martinez provided his first Rule 26 report in this MDL on December 16, 2019, Dr. Freites-Martinez had not yet begun his part-time position with the Clinica Ruber Juan Bravo in Madrid, where he hopes to develop a subspecialty in onco-dermatology.[20]

Accordingly, Dr. Freites-Martinez is not qualified to give testimony regarding the causation of Ms. Kahn's alopecia. Such opinions must be provided by properly licensed and qualified physicians. Dr. Freites-Martinez does not meet that requirement.

---

[14] Azael David Freites Martinez, M.D. Curriculum Vitae, attached hereto as Exhibit "C".

[15] Dr. Freites-Martinez Dep., 10/20/20 at 40:12-15, 125:5-126:12, attached hereto as Exhibit "B".

[16] Dr. Freites-Martinez Dep., 10/20/20 at 125:5-126:12, attached hereto as Exhibit "B".

[17] Dr. Freites-Martinez Dep., 10/20/20 at 40:22-42:9, attached hereto as Exhibit "B".

[18] Azael David Freites Martinez, M.D. Curriculum Vitae, attached hereto as Exhibit "C"; *see also*, Dr. Freites-Martinez Dep., 10/20/20 at 82:18-83:14, 90:13-91:22, attached hereto as Exhibit "B".

[19] Dr. Freites-Martinez Dep., 10/20/20 at 82:18-83:14, 90:13-91:22, attached hereto as Exhibit "B".

[20] Azael David Freites Martinez, M.D. Curriculum Vitae, attached hereto as Exhibit "C"; *see also*, Dr. Freites-Martinez Dep., 10/20/20 at 88:19-89:2, 114:20-115:3, attached hereto as Exhibit "B".

## CONCLUSION

Dr. Freites-Martinez has minimal experience in the practice of onco-dermatology. Dr. Freites-Martinez cannot practice medicine in the United States. Dr. Freites-Martinez admits that he has never been licensed to practice medicine in the United States and has no interest in obtaining a license in the United States.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order excluding from trial any testimony of Dr. Azael Freites-Martinez in the above captioned mater.

Dated: October 27, 2020                              Respectfully submitted,

*/s/ Christopher L. Coffin*                          */s/ Karen B. Menzies*
Christopher L. Coffin (#27902)                       Karen Barth Menzies (CA Bar #180234)
PENDLEY, BAUDIN & COFFIN, L.L.P.                     Andre Mura ((CA Bar # 298541) (on the brief)
1100 Poydras Street, Suite 2505                      GIBBS LAW GROUP LLP
New Orleans, Louisiana 70163                         6701 Center Drive West, Suite 1400
Phone: (504) 355-0086                                Los Angeles, California 90045
Fax: (504) 355-0089                                  Telephone: 510-350-9700
ccoffin@pbclawfirm.com                               Facsimile: 510-350-9701
                                                     kbm@classlawgroup.com
*Plaintiffs' Co-Lead Counsel*
                                                     *Plaintiffs' Co-Lead Counsel*

*/s/M. Palmer Lambert*                               */s/Dawn M. Barrios*
M. Palmer Lambert (#33228)                           Dawn M. Barrios (#2821)
GAINSBURGH BENJAMIN DAVID                            BARRIOS, KINGSDORF & CASTEIX, LLP
MEUNIER & WARSHAUER, LLC                             701 Poydras Street, Suite 3650
2800 Energy Centre, 1100 Poydras Street              New Orleans, LA 70139
New Orleans, LA 70163-2800                           Phone: 504-524-3300
Phone: 504-522-2304                                  Fax: 504-524-3313
Fax: 504-528-9973                                    barrios@bkc-law.com
plambert@gainsben.com
                                                     *Plaintiffs' Co-Liaison Counsel*
*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton Higgins Razmara, LLP
2 Corporate Park, Suite 110
Irvine, CA 92606
Phone: (800) 664-1734
aa@andrewsthornton.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

Alexander G. Dwyer
Kirkendall Dwyer LLP
440 Louisiana, Suite 1901
Houston, TX 77002
Phone: (713) 522-3529
Fax: (713) 495-2331
adwyer@kirkendalldwyer.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

Rand P. Nolen
Fleming, Nolen & Jez, L.L.P.
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056
Phone: (713) 621-7944
Fax: (713) 621-9638
rand_nolen@fleming-law.com

| | |
|---|---|
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                                            */s/ Dawn M. Barrios*
                                            DAWN M. BARRIOS