UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
       PRODUCTS LIABILITY
       LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:
*Kahn v. Sanofi S.A., et al.,* 2:16-cv-17039

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE DR. SHAPIRO'S OPINIONS

### INTRODUCTION

Sanofi believes Dr. Shapiro, a dermatologist, is qualified to opine on general and specific causation, including dermatopathology, concerning permanent chemotherapy-induced alopecia (PCIA) and endocrine-induced alopecia after chemotherapy (EIAC).

Because Dr. Shapiro does not set out, and in fact admits he did not attempt to set out, a methodology to tie his opinions to the facts of Ms. Kahn's case his opinions must be excluded. As a result, Dr. Shapiro does not provide a scientifically valid basis to support his opinions. Dr. Shapiro cannot speculate by simply offering his "thoughts" when he admits that he "[has] not done a causation analysis."[1]

Having disclaimed any attempt to apply a recognized methodology to assess and determine causation (general or specific), or any expertise in dermatopathology to diagnose

---

[1] Exhibit A, Shapiro Dep. Oct. 18, 2020, 176:3-178:12.

1

chemotherapy-induced alopecia and/or endocrine-induced alopecia, the Court should exclude the testimony of Dr. Shapiro under *Daubert*.[2]

## STANDARD

A qualified expert's testimony is only admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The party offering the expert testimony bears the burden of establishing each of these elements by a preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). And the trial judge is obligated to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Expert testimony is inadmissible when "the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 136 F.3d 935, 937 (5th Cir. 1999). Similarly, an expert's testimony should be excluded where it "go[es] beyond the scope of his expertise in giving his opinions." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)).

Additionally, testimony is not admissible unless "the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case." *Tripkovich v. Ramirez*, No. 13-6389, 2015 WL 3849392, at * (E.D. La. June 22, 2015) (citing *Daubert*, 509 U.S. at 593). Likewise,

---

[2] These opinions, which clearly lack any reliability, also are excludable under Rule 702 and Rule 403 because such unsupported testimony would only confuse the issues and/or mislead the jury.

testimony should be stricken as irrelevant when there is "too great an analytical gap" between the data or facts considered and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, opinion evidence is inadmissible if it is only tethered to existing facts through the *ipse dixit* of the expert. *Id.*

## ARGUMENT

Dr. Shapiro offers speculative opinions on determining the causation of permanent chemotherapy-induced alopecia (PCIA) and endocrine-induced alopecia after chemotherapy (EIAC) generally, and as to Ms. Kahn specifically, and on dermatopathology. However, Dr. Shapiro does not possess the expertise to render dermatopathology opinions, and his opinions regarding causation of PCIA and EIAC lack any indicia of reliability due to Dr. Shapiro failing to set out, and admitting he did not apply, any recognized causation analysis – Bradford Hill or otherwise.[3]

### I. DR. SHAPIRO IS UNQUALIFIED TO OFFER ANY OPINIONS REGARDING DERMATOPATHOLOGY

Dr. Shapiro acknowledged in his prior deposition that he is not an expert on dermatopathology and would defer to a dermatopathologist in analyzing pathology stains.[4] Further, in his most recent deposition, Dr. Shapiro confirmed that he has "not received any further training" in the pathology of PCIA since his August 2019 deposition.[5]

---

[3] No Sanofi expert offers a valid causation analysis as countervailing evidence to Plaintiff's properly supported evidence on this issue, and thus for Dr. Shapiro to offer specific offer specific cause testimony he would likewise have to demonstrate general causation as well. But Dr. Shapiro admits to not attempting to establish general causation, or to applying a recognized methodology to do so. See Exhibit A, Shapiro Dep. Oct. 18, 2020, 288:3-5.

[4] Exhibit B, Shapiro Dep. May 19, 2019, 216:7-11.

[5] Exhibit A, Shapiro Dep. Oct. 18, 2020, 40:13-41:3.

Although he has never held himself out as an expert in dermatopathology and, in fact, has repeatedly testified that he has no such expertise, Dr. Shapiro opines on dermatopathology in his expert report in the Kahn case. Dr. Shapiro disagrees with the diagnosis of Curtis Thompson, MD, of PCIA: "I do not agree with this diagnosis. Medical literature establishes that lower follicular density, a shift in terminal/vellus ratio, as well as a decreased anagen to catagen/telogen ratio are indicative of androgenetic alopecia."[6] However, Dr. Shapiro provides no support for this conclusion. In addition, he neglects to list one of the key elements that distinguishes the diagnosis of PCIA from androgenetic alopecia: "decreased total number of follicles,"[7] which Dr. Shapiro concedes is evident in biopsy B of Ms. Kahn.

Dr. Shapiro is not qualified to render opinions about dermatopathology and its implications in this case. He admits—properly so—that he is not qualified to opine as to dermatopathology findings and causation. Without this necessary foundation, it is axiomatic that Dr. Shapiro is unqualified to offer any opinion regarding the pathology performed on plaintiffs in this litigation, including any interpretation of the results and implication to the hair loss.

II. **DR. SHAPIRO LACKS A RELIABLE METHODOLOGY FOR HIS GENERAL CAUSATION OPINIONS AND FAILS TO PROVIDE A COMPLETE STATEMENT OF HIS OPINIONS AND THE BASIS FOR SUCH OPINIONS AS REQUIRED BY RULE 26**

Any expert designated under Rule 26(a)(2)(B), must produce a report that contains "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them … ; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years … ." *Id.*

---

[6] Exhibit C, Shapiro Report Oct. 9, 2020, 48, para 137.

[7] Leonard C. Sperling et al., An Atlas of Hair Pathology with Clinical Correlations 197 (2nd ed.) (2012).

Further, it is well established that reliance on incorrect assumptions and mere scientific theory renders an expert's opinion unreliable. *See Moore*, 151 F.3d at 276; *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 887 (W.D. La. 2001). When an expert's testimony is demonstrated to be speculative and lacking of any established methodology the Court should exclude such testimony. *In re: Vioxx Prod. Liability Litigation*, 414 F. Supp.2d 574, 579 citing *Moore*, 151 F.3d at 279.

Here, Dr. Shapiro provides no methodology and instead intends to just give us his "thoughts" on PCIA based on his experience.[8] This does not comply with Rule 26 requirements that an expert provide a complete statement of his opinions and the bases supporting them. FRCP 26(a)(2)(B).

Further still, unlike Sanofi's other experts that admit that a statement of "cases of persistent alopecia have been reported with" is not a statement of causation,[9] Dr. Shapiro stands alone in his belief that "cases of permanent alopecia have been reported with" is a statement of causation.[10] He provides no support for this statement.[11]

Likewise, Shapiro's testimony demonstrates he cannot be offered as an expert in at least two critical substantive areas in his report: general causation of PCIA causation and general causation of EIAC causation.[12]

---

[8] Exhibit A, Shapiro Dep. Oct. 18, 2020, 176:3-178:12.

[9] Exhibit D, Glaspy Dep. Jan. 9, 2020, 206:5-207:11; Exhibit E, Glaspy Dep. May 13, 2020, 69:2-17.

[10] Exhibit A, Shapiro Dep. Oct. 18, 2020, 70:19-71:22; 72:1-23.

[11] *Id*.

[12] Exhibit B, Shapiro Dep. May 19, 2019, 216:7-11; Exhibit A, Shapiro Dep. Oct. 18, 2020, 75:2-3; 75:11-14; 79:20-80:19

Specifically, Dr. Shapiro acknowledged in his deposition that he has not performed a causation analysis for any particular chemotherapy drug, testifying, "I have not done a causation analysis of one particular drug."[13] Further, Dr. Shapiro acknowledged that he has not performed a causation analysis for any particular chemotherapy regimen:

> Counsel: My question was have you done a causation analysis on any particular regimen of chemotherapy agents, period?
>
> Dr. Shapiro: No.[14]

Additionally, Dr. Shapiro testified that he has not performed a causation analysis regarding tamoxifen (the endocrine therapy Ms. Kahn was prescribed) and permanent, persistent, or ongoing alopecia.

> Counsel: And you have not done a causation analysis, a full causation analysis by way of a Bradford Hill analysis or any other recognized causation analysis for tamoxifen and permanent alopecia or permanent, persistent or ongoing alopecia, correct?
>
> Dr. Shapiro: I have not done what you've just said, this Bradford analysis.
>
> Counsel: Okay. Or any other analysis, correct? Any other recognized analysis to attempt to establish a causal link between tamoxifen and persistent, ongoing, permanent alopecia, right?
>
> Dr. Shapiro: One would require special expertise to do that.
>
> Counsel: And you don't have that specialized expertise –
>
> Dr. Shapiro: No.
>
> Counsel: Correct?
>
> Dr. Shapiro: No, I don't.[15]

---

[13] Exhibit A, Shapiro Dep. Oct. 18, 2020, 75:2-3.

[14] *Id.* at 75:11-14.

[15] *Id.* at 79:20-80:19.

Notably, Dr. Shapiro testified that he is not offering an opinion regarding general causation:

> Dr. Shapiro: "I don't know what you mean by general causation. I don't do causation analysis.[16]

Dr. Shapiro's admissions demonstrate his lack of qualifications to offer opinion testimony before a jury about whether any particular drug or regimen causes PCIA or EIAC. In his own words, he does not even know what general causation means. He admits—properly so—that he is has not performed any sort of causation analysis.[17] Without this necessary foundation, and without any further explanation of the basis for his opinions, Dr. Shapiro cannot offer any opinion regarding the cause of PCIA or EIAC.

## CONCLUSION

For the foregoing reasons, Dr. Shapiro should be precluded from testifying about dermatopathology and determining causation regarding permanent chemotherapy-induced alopecia (PCIA) and endocrine-induced alopecia after chemotherapy (EIAC).

Dated: October 27, 2020

/s/ Christopher L. Coffin
Christopher L. Coffin (#27902)
PENDLEY, BAUDIN & COFFIN, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

*Plaintiffs' Co-Lead Counsel*

Respectfully submitted:

/s/ Karen B. Menzies
Karen Barth Menzies (CA Bar #180234)
Andre Mura (CA Bar # 298541) (on the brief)
GIBBS LAW GROUP LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: 510-350-9700
Facsimile: 510-350-9701
kbm@classlawgroup.com

*Plaintiffs' Co-Lead Counsel*

---

[16] *Id.* at 288:3-5.

[17] *Id.* at 75:2-3; 75:11-14; 79:20-80:19.

7

*/s/M. Palmer Lambert*
M. Palmer Lambert (#33228)
GAINSBURGH BENJAMIN DAVID
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: 504-522-2304
Fax: 504-528-9973
plambert@gainsben.com

*Plaintiffs' Co-Liaison Counsel*

*/s/Dawn M. Barrios*
Dawn M. Barrios (#2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: 504-524-3300
Fax: 504-524-3313
barrios@bkc-law.com

*Plaintiffs' Co-Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Anne Andrews
Andrews Thornton
4701 Von Karman Ave.
Suite 300
Newport Beach, CA 92660
Phone: (800) 664-1734
aa@andrewsthornton.com

Daniel P. Markoff
Atkins & Markoff Law Firm
9211 Lake Hefner Parkway, Suite 104
Oklahoma City, OK 73120
Phone: (405) 607-8757
Fax: (405) 607-8749
dmarkoff@atkinsandmarkoff.com

J. Kyle Bachus
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Phone: (303) 893-9800
Fax: (303) 893-9900
kyle.bachus@coloradolaw.net

Abby E. McClellan
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
mcclellan@stuevesiegel.com

Lawrence J. Centola, III
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Phone: (504) 581-9065
Fax: (504) 581-7635
lcentola@mbfirm.com

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Phone: 510-350-9700
Fax: 510-350-9701
kbm@classlawgroup.com

Christopher L. Coffin
Pendley, Baudin & Coffin, L.L.P.
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Phone: (504) 355-0086
Fax: (504) 355-0089
ccoffin@pbclawfirm.com

David F. Miceli
David F. Miceli, LLC
P.O. Box 2519
Carrollton, GA 30112
Phone: (404) 915-8886
dmiceli@miceli-law.com

| | |
|---|---|
| Alexander G. Dwyer<br>Kirkendall Dwyer LLP<br>440 Louisiana, Suite 1901<br>Houston, TX 77002<br>Phone: (713) 522-3529<br>Fax: (713) 495-2331<br>adwyer@kirkendalldwyer.com | Rand P. Nolen<br>Fleming, Nolen & Jez, L.L.P.<br>2800 Post Oak Blvd., Suite 4000<br>Houston, TX 77056<br>Phone: (713) 621-7944<br>Fax: (713) 621-9638<br>rand_nolen@fleming-law.com |
| Emily C. Jeffcott<br>Morgan & Morgan<br>700 S. Palafox Street, Suite 95<br>Pensacola, Florida 32505<br>Phone: (850) 316-9074<br>Fax: (850) 316-9079<br>ejeffcott@forthepeople.com | Hunter J. Shkolnik<br>Napoli Shkolnik PLLC<br>360 Lexington Avenue, 11th Floor<br>New York, NY 10017<br>Phone: (212) 397-1000<br>hunter@napolilaw.com |
| Andrew Lemmon<br>Lemmon Law Firm, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com | Genevieve Zimmerman<br>Meshbesher & Spence Ltd.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>gzimmerman@meshbesher.com |

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 27, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

                          */s/ Dawn M. Barrios*
                          DAWN M. BARRIOS