UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)     MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

## SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DR. AZAEL FREITES-MARTINEZ

This is the first time the Court has been asked to preclude the testimony of Dr. Azael Freites-Martinez, though his name is likely familiar to the Court since the parties extensively discussed and presented his work to the jury during the *Earnest* trial. Dr. Freites-Martinez is one of the world's leading dermatologists specializing in hair disorders involving cancer patients and dermatologic adverse events associated with cancer therapies ("oncodermatology"). In this case, his role is to help the jury understand hair disorders following cancer treatment, including chemotherapy and endocrine therapy, as they relate to Ms. Kahn—a role for which he is well-qualified. He has published some of the most authoritative works on permanent chemotherapy-induced alopecia ("PCIA") in the medical literature to date, including "the largest clinical and dermatology-driven blinded retrospective analysis on persistent alopecia following chemotherapy with or without subsequent endocrine therapy."[1]

---

[1]    **Ex. 1**, Oct. 9, 2020 Freites-Martinez Rpt. at 9.

In its motion, the PSC does not challenge—and appears to concede—Dr. Freites-Martinez's opinions are reliable and relevant. The PSC's only challenge is to Dr. Freites-Martinez's qualifications, essentially asking the Court to ignore his substantial experience and expertise on hair disorders in cancer patients and adverse events associated with cancer therapies simply because he is in his mid-thirties and a licensed clinician outside of the United States. But Federal Rule of 702 does not impose an age requirement or a professional-license requirement. *Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, *2 (E.D. La. Sept. 27, 1996) ("State licensing requirements do not automatically bar testimony by an expert witness in federal court -- the expertise of the witness is measured by knowledge, skill, experience, training or education.").

Dr. Freites-Martinez is eminently qualified to testify in the *Kahn* case. Indeed, his work was the subject of extensive discussion by both parties and ultimately was presented to the jury during the *Earnest* trial. Since then, the parties have cited or attached his publications in their motions, and experts for both sides have cited or relied on his work in their reports, including Drs. Tosti, Feigal, Bosserman, and Thompson for the PSC.[2] In contrast with the PSC's experts, who largely are non-clinical litigation consultants, Dr. Freites-Martinez is a practicing clinician and the only expert witness in this MDL (indeed, one of only a handful in the world) running a clinical trial regarding persistent hair loss and chemotherapy. Accordingly, the Court should deny the PSC's motion.

---

[2] *See, e.g.*, Rec. Doc. 9354 at 10 (Pl.'s Opp. to Defs.' Mot. for Summ. J. (Post Dec. 2015)); Rec. Doc. 9354-1 at 6–7 (Pl.'s Stmt. of Facts in Supp. of Opp. to Defs.' Mot. for Summ. J. (Post Dec. 2015)); Rec. Doc. 11107 at 9 & n.23 (Defs.' Opp. to Pl.'s Mot. for Partial Summ. J. on Aff. Defenses Concerning Alt. Causes); **Ex. 2**, Sept. 15, 2020 Tosti Rpt. at 12, 14–15 (relying on multiple publications by Dr. Freites-Martinez); **Ex. 3**, Mar. 23, 2020 Feigal Rpt. at 50, 56, 61–62 (relying on 2019 Freites-Martinez study); **Ex. 4**, Bosserman Reliance List (listing 2019 Freites-Martinez study among reliance materials); **Ex. 5**, C. Thompson Reference List (citing 2018 Freites-Martinez studies among references for report); **Ex. 6**, Apr. 29, 2020 Glaspy Rpt. at 20, 23–24, 27 (relying on 2019 Freites-Martinez study).

**LEGAL STANDARD**

The Court is well-versed in the standard governing expert testimony, having issued numerous orders on that issue in this MDL alone. "The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the requisite qualifications."[3] "Rule 702 embodies a liberal policy towards qualification as an expert. . . . One can have the requisite qualifications to provide expert testimony by virtue of knowledge, skill experience, training or education." *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011) (internal quotations and citations omitted).

**ARGUMENT**

The PSC asks the Court to completely exclude Dr. Freites-Martinez from testifying based on two arguments: (1) Dr. Freites-Martinez is too young to have amassed enough experience or publications to qualify him as an expert; and (2) Dr. Freites-Martinez is not qualified to offer case-specific opinions regarding Ms. Kahn because he is not licensed to practice medicine in the United States. Neither argument has merit.

**I.    DR. FREITES-MARTINEZ IS WELL-QUALIFIED UNDER RULE 702**

Dr. Freites-Martinez is a highly skilled dermatologist who specializes in treating hair disorders in cancer patients and investigating adverse events associated with cancer therapies. As is apparent from the detailed description of his qualifications below, Dr. Freites-Martinez is well-qualified and arguably substantially more qualified to testify on these topics than the PSC's own

---

[3]    Rec. Doc. 8094 (Order granting in part and denying in part Sanofi's Mot. to Exclude Expert Test. of Ellen Feigal, M.D.).

expert dermatologist, Dr. Antonella Tosti, who testified that she regards Dr. Freites-Martinez as an expert with regard to chemotherapy regimens and persistent alopecia.[4]

Dr. Freites-Martinez is a board-certified dermatologist, who currently practices in Spain and the Canary Islands. From 2016 to 2018, Dr. Freites-Martinez participated in a highly competitive and specialized clinical research fellowship at Memorial Sloan Kettering Cancer Center in New York City,[5] which focused on oncodermatology—a subspecialty of dermatology devoted to helping patients "better tolerate cancer therapies and manage transient and persistent dermatologic adverse events of anticancer therapies, including skin rashes, nail disorders, and hair loss or hair alterations attributed to anticancer therapies."[6] Memorial Sloan Kettering Cancer Center is one of only "few hospitals that specialize in the United States in oncodermatology . . . maybe five clinics in all the United States."[7] There, Dr. Freites-Martinez worked closely with and received his training from the top oncodermatologists in the world.

During this fellowship, Dr. Freites-Martinez focused entirely on hair disorders in cancer patients and cancer survivors, conducting extensive research related to (and examining) patients with hair disorders attributed to anticancer therapies.[8] Based on his research, Dr. Freites-Martinez

---

[4] **Ex. 7**, Dec. 12, 2019 Tosti Dep. 10:4–11:16 ("I think somehow, he is [an expert] because he wrote a lot on status, this topic.").

[5] Memorial Sloan Kettering Cancer Center treats approximately 2,000 new breast cancer patients with different anticancer therapies each year. Ex. 1, Oct. 9, 2020 Freites-Martinez Rpt. at 1.

[6] *Id.*

[7] **Ex. 8**, Oct. 20, 2020 Freites-Martinez Dep. 87:17–88:18. *See also* https://www.mdedge.com/hematology-oncology/article/156861/melanoma/supportive-oncodermatology-cancer-advances-spawn-new, last accessed on November 6, 2020 ("Currently in the United States, there's only a handful of dedicated supportive oncodermatology services, which can be found at major academic cancer centers such as Dana-Farber/Brigham and Women's, but the residents and fellows being trained at these centers are starting to fan out across the country and set up new services.").

[8] *See* Ex. 1, Oct. 9, 2020 Freites-Martinez Rpt. at 1; *see also* Ex. 8, Oct. 20, 2020 Freites-Martinez Dep. 48:14–49:7 (Dr. Freites-Martinez examined and diagnosed patients during his fellowship, he simply was not permitted to prescribe medications).

4

published—*as first author*—three of the leading peer-reviewed publications on persisting hair loss after treatment with docetaxel and other drugs, including endocrine therapies, in recent years.[9] Those publications reflect hundreds of examinations and diagnoses by Dr. Freites-Martinez of patients with persisting hair loss after cancer treatment.[10]

Among those publications, Dr. Freites-Martinez published the "largest clinical and dermatology-driven blinded retrospective analysis on persistent alopecia following chemotherapy with or without subsequent endocrine therapy."[11] The study "was a retrospective, multicenter cohort study over an 8-year period (January 2009 to July 2017)" that "characterized and compared pCIA and EIAC [endocrine therapy-induced alopecia after previous chemotherapy], including variables such as clinical phenotypes, impact on quality of life, and response to available hair growth-promoting agents."[12] What was special about Dr. Freites-Martinez's study—unlike the handful of case reports on persisting hair loss in patients treated with a docetaxel-containing regimen—is that this study was both blinded and contained multiple chemotherapy and endocrine therapy regimens, meaning the risk of bias due to litigation advertising on these proceedings was comparatively minimized.[13] This study included 385 potential patients, which eventually were narrowed to 192 to eliminate possible confounding factors. The study reported 18% of participants

---

[9] Rec. Doc. 11355-4 at 2–3, (Ex. C, Freites-Martinez Curriculum Vitae, listing the following publications: *Assessment of Quality of Life and Treatment Outcomes of Patients with Persistent Postchemotherapy Alopecia* (Entry No. 6, Apr. 2019); CME Parts I & II (*Hair disorders in cancer survivors*, Entry Nos. 12 & 13, May 2019); and *Endocrine Therapy-Induced Alopecia in Patients with Breast Cancer* (Entry No. 14, June 2018)).

[10] *Id.*

[11] Ex. 1, Oct. 9, 2020 Freites-Martinez Rpt. at 9.

[12] *Id.* at 2.

[13] Other study design improvements included, *e.g.*, that most of the other published case reports did not entail dermatological evaluation by a clinician and that patients were included despite differences in propensity for hair loss or confounding factors.

5

were diagnosed with PCIA after taking a chemotherapy regimen that did not include a taxane, and more cases of persistent hair loss were reported with paclitaxel (Taxol) than docetaxel (Taxotere). The study also reported cases of Grade 2 alopecia with EIAC and loss of eyebrows and eyelashes with EIAC.[14] Although the study included co-authors—including Dr. Tosti—Dr. Freites-Martinez was the **primary author**[15] of this study and examined the relevant data for each of the patients.[16]

Dr. Freites-Martinez's published articles and book chapters on hair disorders in cancer patients and adverse events associated with cancer treatment include:

- *Using the Common Terminology Criteria for Adverse Events (CTCAE - Version 5.0) to Evaluate the Severity of Adverse Events of Anticancer Therapies*, first author;[17]
- *Hair disorders in cancer survivors* (JAAD CME Part I), first author;[18]
- *Hair disorders in cancer survivors* (JAAD CME Part II), first author;[19]
- *Hair disorders. Dermatologic Reactions to Cancer Therapies*, first author;[20]
- *Endocrine Therapy-Induced Alopecia in Patients with Breast Cancer*, first author;[21]
- *Dermatologic toxicities. The MASCC Textbook of Cancer Supportive Care and Survivorship*, first author;[22] and

---

[14] Ex. 1, Oct. 9, 2020 Freites-Martinez Rpt. at 14–15, Table III.

[15] In the field of medical publication, the author with the most significant contribution (*i.e.*, the primary author) typically is listed first. The author listed last typically is referred to as the "senior author," though that title does not refer to the portion of the author's contribution to the publication. *See, e.g.*, Ex. 8, Oct. 20, 2020 Freites-Martinez Dep. 79:10–80:2; **Ex. 9**, May 19, 2019 Shapiro Dep. 181:1–25.

[16] Ex. 1, Oct. 9, 2020 Freites-Martinez Rpt. at 9–10.

[17] Rec. Doc. 11355-4 at 2 (Ex. C, Freites-Martinez CV at 2, Published in Actas Dermosifiliogr. 2020 Sept. 3:S000-7310(20)30286-6).

[18] *Id.* at 3 (Published in J. Am. Acad. Dermatol. 2019 May;80(5):1176–96).

[19] *Id.* at 3 (Published in J. Am. Acad. Dermatol. 2019 May;80(5):1199–1213).

[20] *Id.* at 4 (ISBN 9781138035539, CRC Press (2019)).

[21] *Id.* at 3 (Published in JAMA Dermatol. 2018 June 1;154(6):670–75).

[22] *Id.* at 4 (ISBN 978-3-319-90990-5 (2018)).

- *Assessment and Treatment Outcomes of Persistent Radiation-Induced Alopecia in Patients with Cancer*, sixth author.[23]

Importantly, Dr. Freites-Martinez was not involved in this litigation at the time he authored these publications. Equally important, Dr. Freites-Martinez has continued this research and is one of the only researchers in the world currently leading a clinical trial investigating persistent hair loss and chemotherapy.[24]

The PSC attempts to downplay the fact that Dr. Freites-Martinez was the first—*i.e.*, lead—author on all but one of these publications by focusing on the timing of the publications and the fact that he published them with co-authors. The reality is that Dr. Freites-Martinez led the research, examined the data, and wrote many of the articles and book chapters that ultimately were published.[25] For instance, Dr. Jerry Shapiro, who is listed as a co-author of Dr. Freites-Martinez's 2019 two-part study *Hair disorders in cancer survivors* published in the Journal of American Academy of Dermatology, testified that Dr. Freites-Martinez was the lead author and "wrote most of the article."[26]

Since completing his oncodermatology fellowship at Memorial Sloan Kettering Cancer Center, Dr. Freites-Martinez has practiced dermatology in Madrid, Ferteventura, and Las Palmas de Gran Canaria, Spain.[27] Although Dr. Freites-Martinez maintains a general dermatology practice

---

[23] *Id.* at 2 (Published in JAMA Dermatol. 2020 Aug. 5;156(9):1–10).

[24] Rec. Doc. 11355-4 at 5 (Ex. C, Freites-Martinez CV at 5: A prospective, longitudinal study of chemotherapy and hormonal therapy induced hair changes and alopecia, skin aging and nail changes in women with non-metastatic breast cancer, ClinicalTrials.gov Identifier: NCT02530177).

[25] *See, e.g.*, Ex. 8, Oct. 20, 2020 Freites-Martinez Dep. 130:12–131:5.

[26] Ex. 9, May 19, 2019 Shapiro Dep. 75:15–76:6 (Dr. Freites-Martinez wrote most of the *Hair disorders in cancer survivors* article); **Ex. 10**, Aug. 16, 2019 Shapiro Dep. 284:20–285:17 (Dr. Freites-Martinez was lead author on same article).

[27] Rec. Doc. 11355-4 at 1 (Ex. C, Freites-Martinez CV at 1).

(in which he treats patients for non-hair-related conditions), the PSC is incorrect when it suggests his practice focuses "almost exclusively" on general dermatology issues.[28] Dr. Freites-Martinez testified that he cares for cancer patients at a major Madrid hospital and also in the Canary Islands, where other doctors refer such patients to him:

> ***I'm responsible in that of the dermatology unit*** at the Hospital Ruber Juan Bravo, or Juan Bravo Hospital, in Madrid, ***where I take care of cancer patients about their adverse events on the cancer therapy, especially hair problems in cancer patients***.[29]

In addition, Dr. Freites-Martinez also is spearheading a European task force aimed at creating dedicated oncodermatology centers:

> ***I'm nowadays leading the [ENCADO][30] group, which is the European task force for adverse events on the cancer therapy working together with Dr. Vincent Sibaud[31] just to lead and organize this field in Spain and in Europe***.
>
> So we are working on that topic right now just to actually build, as it's a lacking point in dermatology, in the dermatology field, and basically the world because just -- [few] services in the United States also have oncodermatology. So what we're trying to do here is just to create that.
>
> And that what I have now based in Madrid, my oncodermatology clinic there. And we are trying to -- and what I say we, we are a group of 20 dermatologists of all Europe are working intensely on that topic just to realize and make it happen everywhere.[32]

---

[28] Rec. Doc. 11355-1 at 7.

[29] Ex. 8, Oct. 20, 2020 Freites-Martinez Dep. 32:14–33:13 (emphases added). Dr. Freites-Martinez further testified that he receives referrals from doctors in the Canary Islands for patients with hair disorders associated with cancer treatment. *See id.*

[30] "ENCADO" stands for European Network for Cutaneous ADverse events to Oncologic drugs. *See* Rec. Doc. 11355-4 at 6 (Ex. C, Freites-Martinez CV at 6).

[31] Plaintiff's expert, Dr. Laura Plunkett, lists work by Dr. Sibaud among her reliance materials. *See* **Ex. 11**, Plunkett Reliance List.

[32] Ex. 8, Oct. 20, 2020 Freites-Martinez Dep. 83:15–85:6 (emphases added).

Notably, on the very points the PSC raises in its motion, Dr. Freites-Martinez's qualifications exceed those of Dr. Tosti (who was permitted to testify in *Earnest*):

| Dr. Freites-Martinez | Dr. Tosti[33] |
|---|---|
| **First author on <u>six</u> leading publications addressing persisting hair loss after cancer treatment** | First author on <u>two</u> publications addressing persisting hair loss after cancer treatment.[34] |
| **Peer-reviewed publications reflect more than 200 examinations and diagnoses of patients with persisting hair loss after cancer treatment, including docetaxel** | Peer-reviewed publications prior to involvement in this litigation reflect approximately 10 documented diagnoses of persisting hair loss after cancer treatment, including docetaxel[35] |
| **Conducting ongoing longitudinal research into persisting dermatologic effects of cancer treatment** | No known current involvement in research on dermatologic effects of cancer treatment outside of this litigation |
| **Completed medical fellowship in the U.S. after college, medical school, and residency overseas** | Completed all medical training overseas; has never received training or education in U.S. |
| **Has not taken U.S. Medical Licensing Examination and cannot obtain medical license or practice in Louisiana** | Has not taken U.S. Medical Licensing Examination and cannot obtain medical license or practice in Louisiana[36] |

---

[33] *See generally* **Ex. 12**, Tosti CV.

[34] Dr. Tosti is listed as the sixth author on Dr. Freites-Martinez's 2019 JAMA Dermatology article, *Assessment of Quality of Life and Treatment Outcomes of Patients with Persistent Postchemotherapy Alopecia*. *See id.*

[35] *See* Ex. 12, Tosti CV (identifying Tosti, Antonella, et al., *Docetaxel and permanent alopecia.* Journal of the American Academy of Dermatology 68.5 (2013): e151; Miteva, Mariya, et al., *Permanent alopecia after systemic chemotherapy: a clinicopathological study of 10 cases.* The American Journal of dermatopathology 33.4 (2011): 345-350; Palamaras, Ioulios, et al., *Permanent chemotherapy-induced alopecia: a review.* Journal of the American Academy of Dermatology 64.3 (2011): 604-606; Tosti, Antonella, et al., *Permanent alopecia after busulfan chemotherapy.* British Journal of Dermatology 152.5 (2005): 1056-1058). It appears that the cases in Dr. Tosti's 2013 publication include earlier cases described in Miteva et al. and Palamara et al.

[36] *See* Ex. 7, Dec. 12, 2019 Tosti Dep. 152:16–153:3.

In sum, Dr. Freites-Martinez is eminently qualified to testify on hair disorders following cancer treatment including chemotherapy. He is a board-certified dermatologist and, unlike the PSC's proffered dermatologist, one of the world's leading experts in hair disorders involving cancer patients and adverse events associated with cancer treatments. The Court should reject the PSC's challenge to Dr. Freites-Martinez's qualifications.

## II. DR. FREITES-MARTINEZ IS NOT REQUIRED TO BE LICENSED IN THE UNITED STATES TO OFFER EXPERT TESTIMONY

The Court should also reject the PSC's meritless argument that Dr. Freites-Martinez may not offer case-specific medical opinions at trial because he is not licensed to practice medicine in the United States.[37] The PSC cites no legal authority for its position, and what authority does exist refutes it. *See*, *e.g.*, *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th Cir. 1984) (holding that Louisiana statute concerning unlicensed physicians' ability to testify as medical expert did not apply in federal court); *Paradise Prairie Land Co. v. U.S.*, 212 F.2d 170, 173 (5th Cir. 1954) ("The inquiry by the trial judge as to the qualifications of such a witness should be whether or not the witness possesses the special knowledge and experience to qualify him as an expert, not whether or not he has complied with the state's licensing requirements to practice that profession."); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, 2009 WL 3834128, *1 (E.D. La. Nov. 16, 2009) (denying motion to reconsider order denying motion to strike unlicensed medical expert, citing *Dawsey*); *Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, *2 (E.D. La. 1996) ("State licensing requirements do not automatically bar testimony by an expert witness in federal court – the expertise of the witness is measured by knowledge, skill, experience, training or education."); *see also Rivera v. U.S.*, No. EP-15-CV-00021-KC, 2017 WL 3393464, at

---

[37] Rec. Doc. 11355-1 at 6–7.

10

*4 (W.D. Tex. Feb. 21, 2017) (noting absence of authority "for the proposition that foreign doctors, licensed in foreign countries, treating foreign patients—in this case Plaintiffs—can never be qualified to be an expert in federal court"); *Salazar v. Seagrave*, No. CV 00-841 JP/WDS, 2004 WL 7337792, at *2 (D.N.M. June 18, 2004) (noting that "[p]ost-*Daubert* cases have held that Rule 702 does not require licensure under state law in order for an expert opinion to be admissible.") (collecting cases).

Ironically, the PSC's dermatology expert, Dr. Tosti, does not report ever taking or passing any U.S. medical licensure exam.[38] Moreover, Dr. Tosti does not report U.S. Board Certification in any area of medicine.[39] And, unlike Dr. Freites-Martinez, Dr. Tosti has never completed a fellowship or any formal medical training in the United States.[40] Nevertheless, the PSC repeatedly has proffered Dr. Tosti as a qualified expert in this MDL, including at the *Earnest* trial.

The Court should reject the PSC's brazen attempt to preclude Dr. Freites-Martinez on insinuations pro patria in this particularly international complexion of practice. Dr. Freites-Martinez is more than qualified to testify regarding Ms. Kahn's alopecia and he has set forth the reliable foundation for such testimony in his report:

> I have reviewed the clinical chart of the patient Ms. Elizabeth Kahn. . . . I have received documentation regarding relevant clinical data, including clinical images and notes of the dermatologic examinations performed on September 4, 2020 by Dr. Antonella Tosti and September 22, 2020 by Dr. Mamina Turegano, who were able to conduct in-person evaluations of the patient. I have further reviewed the expert reports of Drs. Tosti and Curtis Thompson, and testimony of Drs. Tosti and Thompson, as well as candid photographs of Ms. Kahn and her family members. . . . I base my opinions on my review of these materials, as well as relevant medical

---

[38] Ex. 7, Dec. 12, 2019 Tosti Dep. 152:16–153:3 (testifying that she has never taken the United States Medical Licensing Exam, which is required for U.S.-educated doctors to become licensed).

[39] *See* Ex. 12, Tosti CV.

[40] *See* Ex. 12, Tosti CV.

> literature and documents and my training, experience and research as a dermatologist specialist in hair disorders in cancer patients.
>
> . . .
>
> Understanding the precise medical history of the different therapies received is crucial to conducting a proper differential diagnosis for patients experiencing persistent alopecia after cancer treatment. Here, I analyzed the notes from the clinical oncology, radiotherapy, and oncologic surgery services to describe a proper clinical scenario, including the timeline of alopecia history and relevant therapies.[41]

Dr. Freites-Martinez then analyzed the photographs, clinical examination reports, and biopsy reports for Ms. Kahn to reach the following dermatologic conclusions:

- In this case, it is not possible to attribute Ms. Kahn's alopecia to any one specific cytotoxic chemotherapy.

- Alopecia similar to androgenetic type have been clearly described in breast cancer patients receiving endocrine therapies (including tamoxifen) with or without previous chemotherapy. . . . The clearly predominant androgenetic pattern alopecia in this patient suggests that tamoxifen has a strong negative impact on Ms. Kahn's hair regrowth and alopecia. Ms. Kahn's use of testosterone gel, which can also be associated with androgenetic alopecia and hirsutism, may also have contributed to her alopecia. It is possible that Ms. Kahn's hair would present as it does today even if she had never received chemotherapy.

- In my opinion, the images prior to her first chemotherapy cycle showing that she had a pre-existing androgenetic alopecia, the trichoscopic and clinical evidence of androgenetic alopecia and hirsutism described by Dr. Turegano, and the androgenetic alopecia described by Dr. Tosti, even with histological confirming features, are very relevant features that suggest multiple androgen-driven factors that could significantly interact in her alopecia, and these are factors impossible to be excluded in this case.[42]

The fact that Dr. Freites-Martinez is not licensed in the United States is irrelevant. He is qualified to offer dermatologic opinions about Ms. Kahn's alopecia, and he more than adequately set forth his methodology for reaching those opinions.

---

[41] Ex. 1, Oct. 9, 2020 Freites-Martinez Rpt. at 15–16.

[42] *Id.* at 29–30.

## CONCLUSION

For the reasons stated above, the Court should deny the PSC's motion.

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* | |
| Douglas J. Moore (Bar No. 27706) | Harley V. Ratliff |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Jon Strongman |
| 400 Poydras Street, Suite 2700 | Adrienne L. Byard |
| New Orleans, LA 70130 | **SHOOK, HARDY & BACON L.L.P.** |
| Telephone: 504-310-2100 | 2555 Grand Boulevard |
| Facsimile: 504-310-2120 | Kansas City, Missouri 64108 |
| dmoore@irwinllc.com | Telephone: 816-474-6550 |
| | Facsimile: 816-421-5547 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

13