UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: TAXOTERE (DOCETAXEL)           MDL NO. 2740
PRODUCTS LIABILITY LITIGATION

SECTION "H" (5)

THIS DOCUMENT RELATES TO:

Elizabeth Kahn, Case No. 2:16-cv-17039

---

## SANOFI'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MAMINA TUREGANO, M.D.

---

The PSC concedes that Dr. Turegano's specific-causation opinions regarding Ms. Kahn are reliable and admissible. Faced with that concession, the PSC instead argues that: (1) Dr. Turegano may not opine on general causation because she has not done a general-causation analysis; and (2) Dr. Turegano cannot testify that Taxotere did not cause Ms. Kahn's hair loss because she did not disclose that opinion. The Court should reject both arguments.

<u>First</u>, Dr. Turegano is offering a specific, not a general, causation opinion. The PSC has the burden to prove general causation, not Sanofi. Here, Dr. Turegano did not need to conduct a statistical analysis or a Bradford-Hill analysis for her opinions regarding the association of various anti-cancer agents and permanent hair loss. Dr. Turegano is a practicing dermatologist who has diagnosed and treated hundreds of patients with hair loss. She is qualified to read, reference, and rely upon the same medical literature and case reports relied upon by Plaintiff's experts to offer testimony regarding which cancer therapies are associated with persistent alopecia.

<u>Second</u>, Dr. Turegano specifically ruled out chemotherapy as playing a role in Ms. Kahn's hair loss and explained her reasons and methodology for reaching that conclusion. Moreover, she

explained that even if chemotherapy played a role, it would be impossible to *rule out* both Adriamycin and cyclophosphamide and specifically *rule in* Taxotere because: (1) there is no specific diagnostic criteria that would allow such a conclusion; and (2) Adriamycin and cyclophosphamide are independently associated with PCIA—a conclusion fully supported by the PSC's own experts. Dr. Turegano's opinions and methodology were sufficiently disclosed and are admissible.

## **BACKGROUND**

Dr. Turegano is a triple board-certified dermatologist, internist, and dermatopathologist.[1] She is a clinician who has treated hundreds of patients with alopecia-related disorders, including androgenetic alopecia, telogen effluvium, lupus, lichen planopilaris, fibrosing alopecia, and central centrifugal cicatricial alopecia.[2] There is no question that Dr. Turegano also has sufficient expertise to offer background testimony regarding the common types and causes of alopecia, as discussed in her Report—including the presentation of persistent alopecia after chemotherapy (PCIA) and endocrine therapy-induced alopecia (ETIA)—based on her extensive expertise and review of medical literature (as multiple experts in this case have done).[3] In her practice, Dr. Turegano has diagnosed the type and cause of her patient's alopecia, including by physical exams, dermoscopy, and biopsies.[4]

Here, Dr. Turegano also conducted a literature, deposition testimony, and medical record review; conducted a clinical examination of Ms. Kahn; and reviewed photographs, microphotographs, and a biopsy report, before conducting a differential diagnosis. The PSC

---

[1]  **Ex. A**, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 1.

[2]  **Ex. B**, Oct. 23, 2020 Turegano Dep. 39:18-40:15.

[3]  Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 4-12.

[4]  Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 2.

2

acknowledges that Dr. Turegano's "medical examination and diagnosis of Ms. Kahn's condition from a dermatology standpoint" satisfies the "tenents of reliability to meet *Daubert* scrutiny."[5]

## ARGUMENT

### I. Dr. Turegano is Not Offering a General-Causation Opinion.

Dr. Turegano is not offering a general-causation opinion, and the PSC acknowledges her specific-causation opinion is reliable and admissible.[6] At base, the PSC's challenge to Dr. Turegano is the same misapplication of burdens advanced in their General Causation and Alternative Causes Motions for Summary Judgment.[7] But the burden to prove both general and specific causation lies solely with the PSC, not Sanofi. *See Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (plaintiff bears the burden of proving the cause of her injury); *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (a plaintiff in a toxic tort case must prove both general and specific causation). Notably, the PSC cites *no caselaw* in support of its argument regarding Dr. Turegano's opinions.

Dr. Turegano does not purport to be an epidemiologist or to offer opinions about what medications *generally* cause PCIA based on epidemiological studies. Instead, Dr. Turegano offers the same opinion Plaintiff's experts offer—namely, that there is a well-recognized association between a range of chemotherapies and endocrine therapies and persistent alopecia.[8] Dr.

---

[5] Rec. Doc. 11357-1 at 1 (Mot. to Exclude Testimony of Mamina Turegano, M.D.).

[6] Rec. Doc. 11357-1 at 4 (Mot. to Exclude Testimony of Mamina Turegano, M.D.). Dr. Turegano is not "confused on the general meaning of general causation," she is simply not offering the opinion Plaintiff suggests, without citation, she is offering.

[7] Rec. Doc. 10928 (Pl.'s Mot. for Partial Summ. J. on Aff. Defenses Concerning Alternative Causes); Rec. Doc. 10936 (Pl.'s Mot. for Partial Summ. J. on General Causation).

[8] Rec. Doc. 10704, at 7 (Order and Reasons on Pl.'s Mot. for Partial Summ. J. on Aff. Defenses Under La. Rev. Stat. § 9:2800.59) ("Plaintiffs' own experts have acknowledged that [Adriamycin and Cytoxan] are associated with permanent hair loss."); **Ex. C**, Tosti Dep. 180:8-16; 313:24-314:8 (Dec. 12, 2019) (testifying there are reports of PCIA from Adriamycin and cyclophosphamide); **Ex. D**, *Earnest* Trial Tr. 1219:4–9 (Dr. Feigal testifying during the *Earnest* trial that there have been cases of permanent hair loss reported for both Cytoxan and Adriamycin); Ex. D, *Earnest* Trial Tr. 478:10-18 (Dr. Kessler testifying during the *Earnest* trial that he has seen

3

Turegano, as a board-certified dermatologist and dermatopathologist, need not conduct a statistical analysis or a Bradford-Hill analysis to reach these conclusions. Neither analysis is used by dermatologists to diagnose hair loss, and neither is needed to state which chemotherapies are associated with PCIA. Dr. Turegano is not offering her opinions from anything other than a "dermatology standpoint,"[9] just like the PSC's expert dermatologist Dr. Tosti.

The standard method for assessing specific causation is "'a differential diagnosis.'" *In re Taxotere*, No. 16-2740, 2019 WL 4007783, at *2 (E.D. La. Aug. 23, 2019) (citing *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011)). No Bradford Hill or other general causation methodology is required for including potential alternative causes in the differential. *Id.* If those analyses were needed, the opinions of the PSC's own specific-causation expert Dr. Tosti would be excluded for the same reason. Dr. Tosti has not performed a statistical analysis or a Bradford-Hill analysis for any drug, much less the chemotherapies used to treat Ms. Kahn. And while the PSC's experts claim to have done so only for Taxotere,[10] Dr. Tosti readily concedes that

---

reports of PCIA associated with both Cytoxan and Adriamycin); Ex. D, *Earnest* Trial Tr. 861:7–10, 873:20-25 (Dr. Plunkett testifying during the *Earnest* trial that she identified permanent hair loss as a hazard associated with Adriamycin and Cytoxan); Ex. D, *Earnest* Trial Tr. 1057:17–24 (Dr. Tosti testifying "what I really think is that those drugs are, you know, sometimes occasionally causing the problem. I never said they never cause. It's just a question of, likely, frequency."); Ex. D, *Earnest* Trial Tr. (reports of PCIA with anthracyclines); Ex. D, *Earnest* Trial Tr. 1031:11–16 (reports of PCIA with cyclophosphamide); *id.* at 1058:9–12 (5-FU); *id.* at 1058:20–23 (FEC); Ex. D, *Earnest* Trial Tr. 1066:12–19 (Tosti co-authored a paper that reported 25% of patients receiving post-chemotherapy endocrine therapy experienced endocrine-induced alopecia); **Ex. E**, Bosserman Dep. at 109:2–11; 142:19–143:18 (Dec. 3, 2018); **Ex. F**, Bosserman Dep. at 417:9–17 (Dec. 10, 2018); **Ex. G**, Kessler Dep. at 238:14–22, 246:12–17, 247:8–249:9 (Dec. 20, 2018); **Ex. H**, Kessler Dep. at 347:25–348:17 (Nov. 26, 2019); **Ex. I**, Madigan Dep. at 208:18–21 (Dec. 7, 2018); **Ex. J**, Madigan Dep. at 207:10–213:3 (Nov. 14, 2019); **Ex. K**, Plunkett Dep. at 115:1–117:16 (Dec. 10, 2018); **Ex. L**, Plunkett Dep. at 254:5–259:21; 288:20–24, 292:4–25, 297:20–24 (Nov. 19, 2019).

9   Ex. B, Oct. 23, 2020 Turegano Dep. 96:7-96:22 (Q. And we've sort of covered this already, but you're not going to testify in this case as to whether there's a statistically significant increased risk of PCIA with the use of any other chemotherapy agent? A. Yes. . . Q. I'm asking in connection with permanent or persistent chemotherapy-induced alopecia. A. Correct. Yes.").

10  The PSC commissioned a general-causation analysis of Taxotere for purposes of this litigation. In doing so, the PSC <u>deliberately</u> <u>avoided</u> conducting a general-causation analysis for any other chemotherapy. It is not Sanofi's burden to fill that gap and prove that Adriamycin and cyclophosphamide cause PCIA through Dr. Shapiro (or any other expert). *See* Rec. Doc. 11107 at 3–7 (Sanofi's Opp. to Pl.'s Mot. for Partial Summ. J. on Affirmative

4

endocrine therapies like Tamoxifen *can cause* pattern hair loss like Ms. Kahn's,[11] and that chemotherapies other than Taxotere (including Adriamycin and cyclophosphamide) *can cause* PCIA.[12] Dr. Tosti reached those conclusions based on her experience treating and diagnosing patients and on her review of medical literature. Dr. Turegano used the same methodology in forming her opinions, and those opinions are admissible.

### II. Dr. Turegano's Opinions Ruling out Chemotherapy as a Cause of Ms. Kahn's Alopecia are Admissible.

While admitting that Dr. Turegano's specific-causation opinions are reliable and admissible, the PSC also challenges her conclusions regarding Taxotere and Ms. Kahn's hair loss. The PSC's argument is two-fold: (1) that Dr. Turegano allegedly failed to disclose "any opinion" regarding Taxotere's role in Ms. Kahn's hair loss, pursuant to Rule 26(a)(2)(B); and (2) that Dr. Turegano allegedly failed to provide "any methodology" in support of her opinion that chemotherapy was not the cause of Ms. Kahn's alopecia. Setting aside the contradictory nature of the arguments, both fail.

---

Defenses Concerning Alternative Causes). Rather, it is the PSC's burden to reliably rule out other drugs as causing Ms. Kahn's hair loss. *Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089 (if plaintiff relies on circumstantial evidence to prove causation, that evidence "must exclude every other reasonable hypothesis with a fair amount of certainty."); *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 n.5 (5th Cir. 2002) ("The plaintiff need not absolutely negate all other possible causes of the injury to meet his burden on causation. . . rather the plaintiff may prove causation by establishing '*with reasonable certainty* that all other alternatives are impossible.'") (citing *Joseph v. Bohn Ford, Inc.*, 483 So.2d 934, 940 (La.1986) and *Todd v. State*, 96-3090 (La. 9/9/97), 699 So. 2d 35, 43). They cannot do so by highlighting the intentional absence of general-causation evidence for any drug besides Taxotere.

[11] **Ex. M**, Sept. 15, 2020 Tosti Report ("FPHL may be caused by hormonal therapies with androgenic effects. . . . Endocrine therapy can cause alopecia with a pattern similar to FPHL. . . .").

[12] Ex. D, *Earnest* Trial Tr. 1057:17–24 (Dr. Tosti testifying that other chemotherapies cause PCIA, it's just a question of frequency).

First, the PSC argues that Dr. Turegano "did not include an opinion as to whether the Taxotere-containing regimen caused Ms. Kahn's condition," and has therefore violated Rule 26(a)(2)(B).[13] This is incorrect. As her report makes clear:

> [I]t is my opinion to a reasonable degree of medical probability that Taxotere did not cause Ms. Kahn's alopecia and that she has a progressive form of alopecia, which is consistent with androgenetic alopecia.[14]

Contrary to the PSC's assertion, Dr. Turegano satisfied the disclosure requirements of Rule 26(a)(2)(B).

Second, the PSC argues that Dr. Turegano cannot offer opinions regarding Ms. Kahn's hair loss and chemotherapies because she has not applied "any acceptable methodology." Dr. Turegano repeatedly testified, however, that it is impossible for her to say that the "Taxotere-containing regimen of chemotherapies may have caused Ms. Kahn's PCIA," because there is not enough available scientific evidence for her reach such a conclusion.[15] As Dr. Turegano explained, based on her review of the medical literature, "there's not a scientific article that establishes monotherapy treatment of Taxotere as a cause of PCIA . . . nor is there a paper that shows an established mechanism of action for why Taxotere would cause PCIA."[16] As a result, Dr. Turegano concluded:

> [E]ven if chemotherapy played some role in Ms. Kahn's alopecia, there have been reports of persistent alopecia with Adriamycin and [c]yclophosphamide. Consequently, to the extent chemotherapy played any role in Ms. Kahn's alopecia, Adriamycin or [c]yclophosphamide cannot be ruled out as the cause.[17]

---

[13] Rec. Doc. 11357-1 at 5 (Mot. to Exclude Testimony of Mamina Turegano, M.D.).

[14] Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 14.

[15] Ex. B, Oct. 23, 2020 Turegano Dep. 110:2-111:18.

[16] Ex. B, Oct. 23, 2020 Turegano Dep. 104:17-105:2.

[17] Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 25.

Dr. Tosti agrees. Indeed, Dr. Tosti acknowledges three of the five chemotherapies Ms. Kahn received can cause PCIA, that patients "taking only Taxotere don't have the problem," and that there are no particular physical markers that distinguish Taxotere specifically, or allow a dermatologist to rule out the other chemotherapies, even using a microscope.[18] Dr. Turegano's opinion is consistent.

In addition, Dr. Turegano notes that women treated for breast cancer in the adjuvant setting also receive endocrine therapy (which Dr. Tosti has testified can cause permanent hair loss), and many have additional risk factors for alopecia including, "other medications, age, menopause, [or] another alopecia process. . . ."[19] Dr. Turegano identified multiple risk factors that would predispose Ms. Kahn to androgenetic alopecia, including:

> First, Ms. Kahn's alopecia existed before she underwent chemotherapy. Second, Ms. Kahn's hair returned to the same level after chemotherapy as it was before chemotherapy. Third, Ms. Kahn's alopecia progressively became worse after chemotherapy, which is consistent with androgenetic alopecia. Fourth, Ms. Kahn's alopecia was likely aggravated by her Tamoxifen use along with testosterone gel. Fifth, Ms. Kahn has other signs of hyperandrogenism, including facial hair, predisposing her to androgenetic alopecia. Sixth, Ms. Kahn's hair loss occurs on the androgen-dependent areas of her scalp, which is a pattern consistent with androgenetic alopecia but not persistent chemotherapy induced alopecia.[20]

Following her physical examination and related analysis, Dr. Turegano reached the conclusion that Ms. Kahn has androgenetic alopecia, and if chemotherapy played a role, it is impossible to isolate

---

[18] Ex. D, *Earnest* Trial Tr. at 1057:17–24; **Ex. N**, Sept. 29, 2020 Tosti Dep. at 198:4-8; *see also* Rec. Doc. 10704 at 7 n.27 (Order and Reasons on Pl.'s Mot. for Partial Summ. J. on Aff. Defenses Under La. Rev. Stat. § 9:2800.59); Ex. N, Sept. 29, 2020 Tosti Dep. at 197:12-16; 17–22; *see also* **Ex. O**, Sept. 23, 2020 Thompson Dep. 153:15–17 ("Well, when I read the biopsy, I'm not able to say anything about specific drugs.").

[19] Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 10.

[20] Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 25.

Taxotere from Adriamycin and cyclophosphamide.[21]  Dr. Turegano adequately explained the bases for her opinions.  The PSC's motion lacks merit and should be denied.

## CONCLUSION

For all the reasons stated above, the Court should deny the PSC's Motion to Exclude Dr. Turegano's Opinions.

Respectfully submitted,

| | |
|---|---|
| /s/ *Douglas J. Moore* | |
| Douglas J. Moore (Bar No. 27706) | Harley V. Ratliff |
| **IRWIN FRITCHIE URQUHART & MOORE LLC** | Jon Strongman |
| 400 Poydras Street, Suite 2700 | Adrienne L. Byard |
| New Orleans, LA 70130 | **SHOOK, HARDY & BACON L.L.P.** |
| Telephone: 504-310-2100 | 2555 Grand Boulevard |
| Facsimile: 504-310-2120 | Kansas City, Missouri 64108 |
| dmoore@irwinllc.com | Telephone: 816-474-6550 |
| | Facsimile: 816-421-5547 |
| | hratliff@shb.com |
| | jstrongman@shb.com |
| | abyard@shb.com |

*Counsel for sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Douglas J. Moore*

---

[21] Ex. A, Oct. 9, 2020 Mamina Turegano, M.D., Expert Report at 25.